# EXHIBIT H

# Residential Contract For Sale And Purchase
**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**

**Florida Realtors**

1. **PARTIES:** _____ Frederick and Teresa Crugnale _____ ("Seller"),
2. and _____ Noah and Shakira Silverman _____ ("Buyer"),
3. agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4. (collectively "Property") pursuant to the terms and conditions of this Residential Contract For Sale And Purchase and
5. any riders and addenda ("Contract"):
6. **1. PROPERTY DESCRIPTION:**
7. (a) Street address, city, zip: _____ 3133 Jackson Ave Coconut Grove, FL 33133 _____
8. (b) Property is located in: ___ Dade ___ County, Florida. Real Property Tax ID No: ___ 01-41-21-336-0020 ___
9. (c) Legal description of the Real Property: 3131 JACKSON STREET CONDO UNIT 3133 UNDIV 1/2 INT IN COMMON
10. ELEMENTS OFF
11. together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
12. attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded below.
13. (d) Personal Property: The following items owned by Seller and existing on the Property as of the date
14. of the initial offer are included in the purchase ("Personal Property"): (i) range(s)/oven(s), dishwasher(s),
15. disposal, ceiling fan(s), intercom, light fixtures, rods, draperies and other window treatments, garage door
16. openers, and security gate and other access devices; and (ii) those additional items checked below. If
17. additional details are necessary, specify below. **If left blank, the item below is not included:**

| | | | |
|---|---|---|---|
| ☒ Refrigerator(s) | ☒ Smoke detector(s) | ☒ Pool barrier/fence | ☐ Storage shed |
| ☒ Microwave oven | ☒ Security system | ☒ Pool equipment | ☒ TV antenna/satellite dish |
| ☒ Washer | ☐ Window/wall a/c | ☒ Pool heater | ☐ Water softener/purifier |
| ☒ Dryer | ☐ Generator | ☐ Spa or hot tub with heater | ☒ Storm shutters and |
| ☐ Stand-alone ice maker | | ☐ Above ground pool | panels |

18. The only other items of Personal Property included in this purchase, and any additional details regarding
19. Personal Property, if necessary, are: None
20.
21. Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
22. (e) The following items are excluded from the purchase: None
23.

24. **2. PURCHASE PRICE** (U.S. currency): ............................................................................. $ 659,000.00
25. (a) Initial deposit to be held in escrow in the amount of **(checks subject to COLLECTION)** $ 10,000.00
26. The initial deposit made payable and delivered to "Escrow Agent" named below
27. **(CHECK ONE):** ☒ accompanies offer or ☐ is to be made upon acceptance (Effective Date)
28. or ☐ is to be made within _____ (if blank, then 3) days after Effective Date
29. Escrow Agent Information: Name: _____ Ryan D. Gesten ESQ _____
30. Address: _____ 6824 Griffin Rd Davie FL 33314 _____ Phone: ___ 888-79' ___
31. E-mail: _____ ryan@gestenlaw.com _____ Fax: ___ 954-791 ___
32. (b) Additional deposit to be delivered to Escrow Agent within ___ 15 ___ (if blank, then 3)
33. days after Effective Date ....................................................................................... $ 20,000.00
34. (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
35. (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 ........ 629,000.00
36. (d) Other: _____ $
37. (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
38. transfer or other **COLLECTED** funds .................................................................. $ 629,000.00
39. **NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.**
40. **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
41. (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before ___ June 7
42. ___ 2013 ___ this offer shall be deemed withdrawn and the Deposit, if any, will be returned to Buyer.
43. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day
44. the counter-offer is delivered.
45. (b) The effective date of this Contract will be the date when the last one of the Buyer and Seller has signed or
46. initialed this offer or final counter-offer ("Effective Date").
47. **4. CLOSING DATE:** Unless modified by other provisions of this Contract, the closing of this transaction shall occur
48. and the closing documents required to be furnished by each party pursuant to this Contract shall be delivered
49. ("Closing") on _____ August 19, 2013 _____ ("Closing Date"), at the time established by the Closing Agent.

Buyer's Initials ___SMS___ ___NDS___        Page 1 of 11        Seller's Initials ___FTC___ ___TC___

FloridaRealtors/FloridaBar-1    Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar.   All rights reserved.

Serial#: 042242-500137-0544604

**5. EXTENSION OF CLOSING DATE:**

    (a) If Closing funds from Buyer's lender(s) are not available at time of Closing due to Truth in Lending Act (TILA) notice requirements, Closing shall be extended for such period necessary to satisfy TILA notice requirements, not to exceed 7 days.

    (b) If extreme weather or other condition or event constituting "Force Majeure" (see STANDARD G) causes: (i) disruption of utilities or other services essential for Closing, or (ii) Hazard, Wind, Flood or Homeowners' insurance to become unavailable prior to Closing, Closing shall be extended a reasonable time up to 3 days after restoration of utilities and other services essential to Closing, and availability of applicable Hazard, Wind, Flood or Homeowners' insurance. If restoration of such utilities or services and availability of insurance has not occurred within _____14_____ (if left blank, 14) days after Closing Date, then either party may terminate this Contract by delivering written notice to the other party, and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under the Contract.

**6. OCCUPANCY AND POSSESSION:** Unless otherwise stated herein, Seller shall, at Closing, have removed all personal items and trash from the Property and shall deliver occupancy and possession, along with all keys, garage door openers, access devices and codes, as applicable, to Buyer. If Property is intended to be rented or occupied beyond Closing, the fact and terms thereof and the tenant(s) or occupants shall be disclosed pursuant to STANDARD D. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to Property from date of occupancy, shall be responsible and liable for maintenance from that date, and shall be deemed to have accepted Property in its existing condition as of time of taking occupancy, except with respect to any items identified by Buyer pursuant to Paragraph 12 prior to taking occupancy which require repair, replacement, treatment or remedy.

**7. ASSIGNABILITY: (CHECK ONE)** ☐ Buyer may assign and thereby be released from any further liability under this Contract; ☒ may assign but not be released from liability under this Contract; or ☐ may not assign this Contract.

**FINANCING**

**8. FINANCING:**

    ☐ (a) Buyer will pay cash or may obtain a loan for the purchase of the Property. There is no financing contingency to Buyer's obligation to close.

    ☒ (b) This Contract is contingent upon Buyer obtaining a written loan commitment for a ☒ conventional ☐ FHA ☐ VA loan on the following terms within _____30_____ (if blank, then 30) days after Effective Date ("Loan Commitment Date") for: **(CHECK ONE):** ☐ fixed, ☐ adjustable, ☒ fixed or adjustable rate loan in the principal amount of $ ___629,000.00___ or _____% of the Purchase Price, at an initial interest rate not to exceed _____% (if blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of __30__ years ("Financing").

    Buyer will make mortgage loan application for the Financing within __15__ (if blank, then 5) days after Effective Date and use good faith and diligent effort to obtain a written loan commitment for the Financing ("Loan Commitment") and close this Contract. Buyer shall keep Seller and Broker fully informed about the status of mortgage loan application and Loan Commitment and authorizes Buyer's mortgage broker and Buyer's lender to disclose such status and progress to Seller and Broker.

    If Buyer does not receive Loan Commitment, then Buyer may terminate this Contract by delivering written notice to Seller, and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

    If Buyer does not deliver written notice to Seller of receipt of Loan Commitment or Buyer's written waiver of this financing contingency, then after Loan Commitment Date Seller may terminate this Contract by delivering written notice to Buyer and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

    If Buyer delivers written notice of receipt of Loan Commitment to Seller and this Contract does not thereafter close, the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's default; (2) Property related conditions of the Loan Commitment have not been met (except when such conditions are waived by other provisions of this Contract); (3) appraisal of the Property obtained by Buyer's lender is insufficient to meet terms of the Loan Commitment; or (4) the loan is not funded due to financial failure of Buyer's lender, in which event(s) the Deposit shall be returned to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

    ☐ (c) Assumption of existing mortgage (see rider for terms).

    ☐ (d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).

FloridaRealtors/FloridaBar-1   Rev. 8/10 © 2010 Florida Realtors® and The Florida Bar.   All rights reserved.

Serial#: 042242-500137-5544504

**CLOSING COSTS, FEES AND CHARGES**

**9.  CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**

**(a)  COSTS TO BE PAID BY SELLER:**

- Documentary stamp taxes and surtax on deed, if any
- Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)
- Title search charges (if Paragraph 9(c)(iii) is checked)
- Other: _____

- HOA/Condominium Association estoppel fees
- Recording and other fees needed to cure title
- Seller's attorneys' fees

Seller will pay the following amounts/percentages of the Purchase Price for the following costs and expenses:

(i) up to $_____ or ____1.5____% (1.5% if left blank) for General Repair Items ("General Repair Limit"); and

(ii) up to $_____ or ____1.5____% (1.5% if left blank) for WDO treatment and repairs ("WDO Repair Limit"); and

(iii) up to $_____ or ____1.5____% (1.5% if left blank) for costs associated with closing out open or expired building permits and obtaining required building permits for any existing improvement for which a permit was not obtained ("Permit Limit").

If, prior to Closing, Seller is unable to meet the Maintenance Requirement as required by Paragraph 11 or the repairs, replacements, treatments or permitting as required by Paragraph 12, then, sums equal to 125% of estimated costs to complete the applicable item(s) (but, not in excess of applicable General Repair, WDO Repair, and Permit Limits set forth above, if any) shall be escrowed at Closing.  If actual cost of required repairs, replacements, treatment or permitting exceed applicable escrowed amounts, Seller shall pay such actual costs (but, not in excess of applicable General Repair, WDO Repair, and Permit Limits set forth above). Any unused portion of escrowed amount(s) shall be returned to Seller.

**(b)  COSTS TO BE PAID BY BUYER:**

- Taxes and recording fees on notes and mortgages
- Recording fees for deed and financing statements
- Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)
- Survey (and elevation certification, if required)
- Lender's title policy and endorsements
- HOA/Condominium Association application/transfer fees
- Other: _____

- Loan expenses
- Appraisal fees
- Buyer's Inspections
- Buyer's attorneys' fees
- All property related insurance

**(c)  TITLE EVIDENCE AND INSURANCE:**  At least ____5____ (if blank, then 5) days prior to Closing Date, a title insurance commitment issued by a Florida licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be obtained and delivered to Buyer.  If Seller has an owner's policy of title insurance covering the Real Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy premium and charges for owner's policy endorsements, title search, and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set forth below **(CHECK ONE):**

☐ (i) Seller will designate Closing Agent and pay for Owner's Policy and Charges (but not including charges for closing services related to Buyer's lender's policy and endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other provider(s) as Buyer may select); or

☐ (ii) Buyer will designate Closing Agent and pay for Owner's Policy and Charges and charges for closing services related to Buyer's lender's policy, endorsements, and loan closing; or

☒ (iii) (MIAMI-DADE/BROWARD REGIONAL PROVISION):  Seller will furnish a copy of a prior owner's policy of title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence, which is acceptable to Buyer's title insurance underwriter for reissue of coverage;  (B) tax search;  and (C) municipal lien search. Buyer shall obtain and pay for post-Closing continuation and premium for Buyer's owner's policy, and  if applicable, Buyer's lender's policy.  Seller shall not be obligated to pay more than $___200.00___ (if blank, $200.00) for abstract continuation or title search ordered or performed by Closing Agent.

**(d)  SURVEY:**  At least 5 days prior to Closing, Buyer may, at Buyer's expense, have the Real Property surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.

**(e)  HOME WARRANTY:**  At Closing, ☐ Buyer  ☒ Seller  ☐ N/A will pay for a home warranty plan issued by _____AHS_____ at a cost not to exceed $_____650.00_____.  A home warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.

**(f)  SPECIAL ASSESSMENTS:**  At Closing, Seller will pay: (i) the full amount of liens imposed by a public body ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an

Buyer's Initials  _SMS_  _MS_                     Page 3 of 11                   Seller's Initials  _FSC_  _JC_

154 improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being
155 imposed on the Property before Closing. Buyer will pay all other assessments. **If special assessments may**
156 **be paid in installments (CHECK ONE):**
157* ☐ (a) **Seller shall pay installments due prior to Closing and Buyer shall pay installments due after**
158 **Closing. Installments prepaid or due for the year of Closing shall be prorated.**
159* ☒ (b) **Seller shall pay the assessment(s) in full prior to or at the time of Closing.**
160 **IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.**
161 This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district
162 (CDD) pursuant to Chapter 190 F.S. which lien shall be treated as an ad valorem tax and prorated pursuant to
163 STANDARD K.

### DISCLOSURES

165 **10. DISCLOSURES:**
166 (a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in
167 sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that
168 exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding
169 radon and radon testing may be obtained from your county health department.
170 (b) **PERMITS DISCLOSURE: Except as may have been disclosed by Seller to Buyer in a written disclosure,**
171 **Seller does not know of any improvements made to the Property which were made without required**
172 **permits or made pursuant to permits which have not been properly closed.**
173 (c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or
174 desires additional information regarding mold, Buyer should contact an appropriate professional.
175 (d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood
176 zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to
177 improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area"
178 or "Coastal High Hazard Area" and finished floor elevation is below minimum flood elevation, Buyer may
179 terminate this Contract by delivering written notice to Seller within 20 days after Effective Date, failing which
180 Buyer accepts existing elevation of buildings and flood zone designation of Property.
181 (e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure
182 required by Section 553.996, F.S.
183 (f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint rider is
184 mandatory.
185 (g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS**
186 **CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS'**
187 **ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**
188 (h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT
189 PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED
190 TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY
191 IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER
192 PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE
193 COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.
194 (i) **TAX WITHHOLDING:** If Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax
195 Act ("FIRPTA"), Buyer and Seller will comply with FIRPTA, which may require Seller to provide additional cash
196 at Closing.
197 (j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which
198 are not readily observable and which have not been disclosed to Buyer.

### PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS

200 **11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, and those repairs,
201 replacements or treatments required to be made by this Contract, Seller shall maintain the Property, including, but
202 not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("Maintenance
203 Requirement").
204 **12. PROPERTY INSPECTION AND REPAIR:**
205 (a) **INSPECTION PERIOD:** By the earlier of 15 days after Effective Date or 5 days prior to Closing Date
206 ("Inspection Period"), Buyer may, at Buyer's expense, conduct "General", "WDO", and "Permit" inspections
207 described below. If Buyer fails to timely deliver to Seller a written notice or report required by (b), (c), or (d)
208 below, then, except for Seller's continuing Maintenance Requirement, Buyer shall have waived Seller's
209 obligation(s) to repair, replace, treat or remedy the matters not inspected and timely reported. If this Contract
210 does not close, Buyer will repair all damage to Property resulting from Buyer's inspections, return Property to
211 its pre-inspection condition and provide Seller with paid receipts for all work done on Property upon its
212 completion.

**(b) GENERAL PROPERTY INSPECTION AND REPAIR:**

(i) **General Inspection:** Those items specified in Paragraph 12(b)(ii) below, which Seller is obligated to repair or replace ("General Repair Items") may be inspected ("General Inspection") by a person who specializes in and holds an occupational license (if required by law) to conduct home inspections or who holds a Florida license to repair and maintain the items inspected ("Professional Inspector"). Buyer shall, within the Inspection Period, inform Seller of any General Repair Items that are not in the condition required by (b)(ii) below by delivering to Seller either a written notice or a copy of the portion of Professional Inspector's written report dealing with such items.

(ii) **Property Condition:** The following items shall be free of leaks, water damage or structural damage: ceiling, roof (including fascia and soffits), exterior and interior walls, doors, windows, and foundation. The above items together with pool, pool equipment, non-leased major appliances, heating, cooling, mechanical, electrical, security, sprinkler, septic and plumbing systems and machinery, seawalls, and dockage, are, and shall be maintained until Closing, in "Working Condition" (defined below). Torn screens (including pool and patio screens), fogged windows, and missing roof tiles or shingles will be repaired or replaced by Seller prior to Closing. Seller is not required to repair or replace "Cosmetic Conditions" (defined below), unless the Cosmetic Conditions resulted from a defect in an item Seller is obligated to repair or replace. "Working Condition" means operating in the manner in which the item was designed to operate. "Cosmetic Conditions" means aesthetic imperfections that do not affect Working Condition of the item, including, but not limited to, pitted marcite; tears, worn spots and discoloration of floor coverings, wallpapers, or window treatments; nail holes, scrapes, scratches, dents, chips or caulking in ceilings, walls, flooring, tile, fixtures, or mirrors; and minor cracks in walls, floor tiles, windows, driveways, sidewalks, pool decks, and garage and patio floors. Cracked roof tiles, curling or worn shingles, or limited roof life shall not be considered defects Seller must repair or replace, so long as there is no evidence of actual leaks, leakage or structural damage.

(iii) **General Property Repairs:** Seller is only obligated to make such general repairs as are necessary to bring items into the condition specified in Paragraph 12(b)(ii) above. Seller will, within 5 days after receipt of Buyer's written notice or General Inspection report, either have the reported repairs to General Repair Items estimated by an appropriately licensed person and a copy delivered to Buyer, or have a second inspection made by a Professional Inspector and provide a copy of such report and estimates of repairs to Buyer. If Buyer's and Seller's inspection reports differ and the parties cannot resolve the differences, Buyer and Seller together will choose, and equally split the cost of, a third Professional Inspector, whose written report will be binding on the parties.

If costs to repair General Repair Items equals or is less than the General Repair Limit, Seller will have repairs made in accordance with Paragraph 12(f). If cost to repair General Repair Items exceeds the General Repair Limit, then within 5 days after a party's receipt of the last estimate: (A) Seller may elect to pay the excess by delivering written notice to Buyer, or (B) Buyer may deliver written notice to Seller designating which repairs of General Repair Items Seller shall make (at a total cost to Seller not exceeding the General Repair Limit) and agreeing to accept the balance of General Repair Items in their "as is" condition, subject to Seller's continuing Maintenance Requirement. If neither party delivers such written notice to the other, then either party may terminate this Contract and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

**(c) WOOD DESTROYING ORGANISM ("WDO") INSPECTION AND REPAIR:**

(i) **WDO Inspection:** The Property may be inspected by a Florida-licensed pest control business ("WDO Inspector") to determine the existence of past or present WDO infestation and damage caused by infestation ("WDO Inspection"). Buyer shall, within the Inspection Period, deliver a copy of the WDO Inspector's written report to Seller if any evidence of WDO infestation or damage is found. "Wood Destroying Organism" ("WDO") means arthropod or plant life, including termites, powder-post beetles, oldhouse borers and wood-decaying fungi, that damages or infests seasoned wood in a structure, excluding fences.

(ii) **WDO Repairs:** If Seller previously treated the Property for the type of WDO found by Buyer's WDO Inspection, Seller does not have to retreat the Property if there is no visible live infestation, and Seller, at Seller's cost, transfers to Buyer at Closing a current full treatment warranty for the type of WDO found. Seller will, within 5 days after receipt of Buyer's WDO Inspector's report, have reported WDO damage estimated by an appropriately licensed person, necessary corrective treatment, if any, estimated by a WDO Inspector, and a copy delivered to Buyer. Seller will have treatments and repairs made in accordance with Paragraph 12(f) below up to the WDO Repair Limit. If cost to treat and repair the WDO infestations and damage to Property exceeds the WDO Repair Limit, then within 5 days after receipt of Seller's estimate, Buyer may deliver written notice to Seller agreeing to pay the excess, or designating which WDO repairs Seller shall make (at a total cost to Seller not exceeding the WDO Repair Limit), and accepting the balance of the Property in its "as is" condition with regard to WDO infestation and damage, subject to Seller's continuing Maintenance Requirement. If Buyer does not deliver such written notice to Seller, then either party may terminate this

Buyer's Initials _____ SMS _____ _____

Page 5 of 11

Seller's Initials _____ FJC _____ YC _____

Serial#: 057487-700137-0298858

Contract by written notice to the other, and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

**(d) INSPECTION AND CLOSE-OUT OF BUILDING PERMITS:**

(i) **Permit Inspection:** Buyer may have an inspection and examination of records and documents made to determine whether there exist any open or expired building permits or unpermitted improvements to the Property ("Permit Inspection"). Buyer shall, within the Inspection Period, deliver written notice to Seller of the existence of any open or expired building permits or unpermitted improvements to the Property.

(ii) **Close-Out of Building Permits:** Seller will, within 5 days after receipt of Buyer's Permit Inspection notice, have an estimate of costs to remedy Permit Inspection items prepared by an appropriately licensed person and a copy delivered to Buyer. No later than 5 days prior to Closing Date, Seller shall, up to the Permit Limit have open and expired building permits identified by Buyer or known to Seller closed by the applicable governmental entity, and obtain and close any required building permits for improvements to the Property. Prior to Closing Date, Seller will provide Buyer with any written documentation that all open and expired building permits identified by Buyer or known to Seller have been closed out and that Seller has obtained required building permits for improvements to the Property. If final permit inspections cannot be performed due to delays by the governmental entity, Closing Date shall be extended for up to 10 days to complete such final inspections, failing which, either party may terminate this Contract, and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

If cost to close open or expired building permits or to remedy any permit violation of any governmental entity exceeds Permit Limit, then within 5 days after a party's receipt of estimates of cost to remedy: (A) Seller may elect to pay the excess by delivering written notice to Buyer; or (B) Buyer may deliver written notice to Seller accepting the Property in its "as is" condition with regard to building permit status and agreeing to receive credit from Seller at Closing in the amount of Permit Limit. If neither party delivers such written notice to the other, then either party may terminate this Contract and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

(e) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the Maintenance Requirement, has made repairs and replacements required by this Contract, and has met all other contractual obligations.

(f) **REPAIR STANDARDS; ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** All repairs and replacements shall be completed in a good and workmanlike manner by an appropriately licensed person, in accordance with all requirements of law, and shall consist of materials or items of quality, value, capacity and performance comparable to, or better than, that existing as of the Effective Date. Except as provided in Paragraph 12(c)(ii), at Buyer's option and cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties to Buyer.

### ESCROW AGENT AND BROKER

**13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow within the State of Florida and, subject to COLLECTION, disburse them in accordance with terms and conditions of this Contract. Failure of funds to become COLLECTED shall not excuse Buyer's performance. When conflicting demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order.

Any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder, or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or termination of this Contract.

**14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property's condition, square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate

Buyer's Initials ___ ___     Page 6 of 11     Seller's Initials ___ ___

FloridaRealtors/FloridaBar-1     Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar.   All rights reserved.

Serial#: 067487-700137-0298863

professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral, recommendation or retention of any vendor for, or on behalf of Indemnifying Party; (iv) products or services provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor. Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

## DEFAULT AND DISPUTE RESOLUTION

**15. DEFAULT:**

(a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract, including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.

(b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract, Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific performance.

This Paragraph 15 shall survive Closing or termination of this Contract.

**16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled as follows:

(a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph 16(b).

(b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules"). The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16 may be resolved by instituting action in the appropriate court having jurisdiction of the matter.

This Paragraph 16 shall survive Closing or termination of this Contract.

**17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")

**18. STANDARDS:**

**A. TITLE:**

(i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall

Buyer's Initials SMS    WJS      Page 7 of 11      Seller's Initials FJC    SM

FloridaRealtors/FloridaBar-1    Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar.   All rights reserved.

Serial#: 037407-700137-0298868

## STANDARDS FOR REAL ESTATE TRANSACTIONS (CONTINUED)

be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property, subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions, prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than 10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach addendum); provided, that, unless waived by Paragraph 12 (a), there exists at Closing no violation of the foregoing and none prevent use of the Property for **RESIDENTIAL PURPOSES.** If there exists at Closing any violation of items identified in (b) – (f) above, then the same shall be deemed a title defect. Marketable title shall be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance with law.

(ii) **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period, deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c) electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. If after reasonable diligent effort, Seller is unable to timely cure defects, and Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

B. **SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon encroach on setback lines, easements, or lands of others; or violate any restrictions, covenants, or applicable governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the preparation of such prior survey, to the extent the affirmations therein are true and correct.

C. **INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.

D. **LEASES:** Seller shall, within 5 days after Inspection Period, furnish to Buyer copies of all written leases and estoppel letters from each tenant specifying nature and duration of tenant's occupancy, rental rates, advanced rent and security deposits paid by tenant, and income and expense statements for preceding 12 months ("Lease Information"). If Seller is unable to obtain estoppel letters from tenant(s), the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit, and Buyer may thereafter contact tenant(s) to confirm such information. If terms of the lease(s) differ materially from Seller's representations, Buyer may deliver written notice to Seller within 5 days after receipt of Lease Information, but no later than 5 days prior to Closing Date, terminating this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller shall, at Closing, deliver and assign all original leases to Buyer who shall assume Seller's obligation thereunder.

E. **LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting: (i) to the absence of any financing statement, claims of lien or potential lienors known to Seller, and (ii) that there have been no improvements or repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been paid or will be paid at Closing.

F. **TIME:** Calendar days shall be used in computing time periods. Any time periods provided for in this Contract

**STANDARDS FOR REAL ESTATE TRANSACTIONS (CONTINUED)**

452
453 which shall end on a Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m.
454 (where the Property is located) of the next business day. Time is of the essence in this Contract.
455 **G. FORCE MAJEURE:** Buyer or Seller shall not be required to perform any obligation under this Contract or be
456 liable to each other for damages so long as performance or non-performance of the obligation is delayed, caused or
457 prevented by Force Majeure. "Force Majeure" means: hurricanes, earthquakes, floods, fire, acts of God, unusual
458 transportation delays, wars, insurrections, acts of terrorism, and any other cause not reasonably within control of
459 Buyer or Seller, and which, by exercise of reasonable diligent effort, the non-performing party is unable in whole or in
460 part to prevent or overcome. All time periods, including Closing Date, will be extended for the period that the Force
461 Majeure prevents performance under this Contract, provided, however, if such Force Majeure continues to prevent
462 performance under this Contract more than 14 days beyond Closing Date, then either party may terminate this
463 Contract by delivering written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer
464 and Seller from all further obligations under this Contract.
465 **H. CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's,
466 personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters described
467 in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be transferred by
468 absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this Contract.
469 **I. CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**
470 (i) **LOCATION:** Closing will take place in the county where the Real Property is located at the office of the
471 attorney or other closing agent ("Closing Agent") designated by the party paying for the owner's policy of title
472 insurance, or, if no title insurance, designated by Seller. Closing may be conducted by mail or electronic means.
473 (ii) **CLOSING DOCUMENTS:** At Closing, Seller shall furnish and pay for, as applicable, deed, bill of sale,
474 certificate of title, construction lien affidavit, owner's possession affidavit, assignments of leases, and corrective
475 instruments. Seller shall provide Buyer with paid receipts for all work done on the Property pursuant to this Contract.
476 Buyer shall furnish and pay for, as applicable, mortgage, mortgage note, security agreement, financing statements,
477 survey, base elevation certification, and other documents required by Buyer's lender.
478 (iii) **PROCEDURE:** The deed shall be recorded upon COLLECTION of all closing funds. If the Title
479 Commitment provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the
480 escrow closing procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to
481 COLLECTION** of all closing funds, disburse at Closing the brokerage fees to Broker and the net sale proceeds to
482 Seller.
483 **J. ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide
484 for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following escrow
485 and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent for a period
486 of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of Buyer, Buyer
487 shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from date of receipt
488 of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all Closing funds
489 paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and, simultaneously with
490 such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-convey the Property to
491 Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand for refund of the
492 Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect except as may be
493 available to Buyer by virtue of warranties contained in the deed or bill of sale.
494 **K. PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of
495 the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
496 (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents
497 and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable, in
498 which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required by
499 prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited to
500 Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on current
501 year's tax with due allowance made for maximum allowable discount, homestead and other exemptions. If Closing
502 occurs on a date when current year's millage is not fixed but current year's assessment is available, taxes will be
503 prorated based upon such assessment and prior year's millage. If current year's assessment is not available, then
504 taxes will be prorated on prior year's tax. If there are completed improvements on the Real Property by January 1st of
505 year of Closing, which improvements were not in existence on January 1st of prior year, then taxes shall be prorated
506 based upon prior year's millage and at an equitable assessment to be agreed upon between the parties, failing which,
507 request shall be made to the County Property Appraiser for an informal assessment taking into account available
508 exemptions. A tax proration based on an estimate shall, at either party's request, be readjusted upon receipt of
509 current year's tax bill. This STANDARD K shall survive Closing.
510 **L. ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller shall,
511 upon reasonable notice, provide utilities service and access to Property for appraisals and inspections, including a

---

Buyer's Initials  SMS  _____          Page 9 of 11          Seller's Initials  FJC  JC

FloridaRealtors/FloridaBar-1   Rev. 8/10 © 2010 Florida Realtors® and The Florida Bar.   All rights reserved.

Serial#: 037497-720137-0258858

512 **STANDARDS FOR REAL ESTATE TRANSACTIONS (CONTINUED)**

513 walk-through (or follow-up walk-through if necessary) prior to Closing.

514 **M. RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty
515 ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not
516 exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed
517 pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated
518 cost to complete restoration (not to exceed 1.5% of Purchase Price), will be escrowed at Closing. If actual cost of
519 restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase
520 Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of
521 Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the
522 Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation
523 with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

524 **N. 1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneous with
525 Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate
526 in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however,
527 cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent
528 upon, nor extended or delayed by, such Exchange.

529 **O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; COPIES:** Neither this Contract nor any
530 notice of it shall be recorded in any public records. This Contract shall be binding on, and inure to the benefit of, the
531 parties and their respective heirs or successors in interest. Whenever the context permits, singular shall include plural
532 and one gender shall include all. Notice and delivery given by or to the attorney or broker (including such broker's real
533 estate licensee) representing any party shall be as effective as if given by or to that party. All notices must be in
534 writing and may be made by mail, personal delivery or electronic (including "pdf") media. A legible facsimile or
535 electronic (including "pdf") copy of this Contract and any signatures hereon shall be considered for all purposes as an
536 original.

537 **P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement
538 of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or
539 representations shall be binding upon Buyer or Seller unless included in this Contract. No modification or change
540 in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended
541 to be bound by it.

542 **Q. WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this
543 Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or
544 rights.

545 **R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten
546 or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

547 **S. COLLECTION or COLLECTED: "COLLECTION" or "COLLECTED" means any checks tendered or received,**
548 **including Deposits, have become actually and finally collected and deposited in the account of Escrow Agent**
549 **or Closing Agent. Closing and disbursement of funds and delivery of Closing documents may be delayed by**
550 **Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.**

551 **T. LOAN COMMITMENT:** "Loan Commitment" means a statement by the lender setting forth the terms and
552 conditions upon which the lender is willing to make a particular mortgage loan to a particular borrower.

553 **U. APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State of
554 Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the county in
555 which the Real Property is located.

556 **ADDENDA AND ADDITIONAL TERMS**

557 **19. ADDENDA:** The following additional terms are included in the attached addenda and incorporated into this
558 Contract (Check if applicable):

| | | |
|---|---|---|
| ☒ A. Condominium Assn. | ☒ L. Right to Inspect/ Cancel | ☐ R. Rezoning |
| ☒ B. Homeowners' Assn. | | ☐ S. Lease Purchase/ Lease Option |
| ☐ C. Seller Financing | ☐ M. Defective Drywall | |
| ☐ D. Mortgage Assumption | ☐ N. Coastal Construction Control Line | ☐ T. Pre-Closing Occupancy |
| ☐ E. FHA/VA Financing | | |
| ☐ F. Appraisal Contingency | ☐ O. Insulation Disclosure | ☐ U. Post-Closing Occupancy |
| ☐ G. Short Sale | ☐ P. Pre-1978 Housing Statement (Lead Based Paint) | |
| ☐ H. Homeowners' Insurance | | ☐ V. Sale of Buyer's Property |
| ☐ I. FIRPTA | | |
| ☐ J. Interest-Bearing Acct. | ☐ Q. Housing for Older Persons | ☐ W. Back-up Contract |
| ☐ K. "As Is" | | ☐ X. Kick-out Clause |

| |
|---|
| ☐ Y. Seller's Attorney Approval |
| ☐ Z. Buyer's Attorney Approval |
| ☐ AA. Licensee-Personal Interest in Property |
| ☐ BB. Binding Arbitration |
| ☐ Other: _____ |
| _____ |
| _____ |
| _____ |

Buyer's Initials _SMS_ _MB_     Page 10 of 11     Seller's Initials _FSC_ _JC_

FloridaRealtors/FloridaBar-1   Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar.   All rights reserved.

Serial#: 027467-700137-0298858

**20. ADDITIONAL TERMS:**

_____

_____

_____

_____

_____

_____

_____

_____

_____

**COUNTER-OFFER/REJECTION**

☐ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and deliver a copy of the acceptance to Seller).
☐ Seller rejects Buyer's offer.

**THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE OF AN ATTORNEY PRIOR TO SIGNING.**

**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

*Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the terms and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and conditions should be negotiated based upon the respective interests, objectives and bargaining positions of all interested persons.*

AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK TO BE COMPLETED.

Buyer: _____     Date: 6-7-13

Buyer: _____     Date: 6-7-13

Seller: _____     Date: 6/7/13

Seller: _____     Date: 6/7/13

Buyer's address for purposes of notice
7900 Harbor Island Dr
North Bay Village, FL 33141

Seller's address for purposes of notice
13071 Mar St
Coral Gables, FL 33156

**BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers entitled to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct Closing Agent to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage agreements with the parties and cooperative agreements between the Brokers; except to the extent Broker has retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation made by Seller or Listing Broker to Cooperating Brokers.

Jessica H. Collins 3211134
**Cooperating Sales Associate,** if any

Coldwell Banker Residential RE
**Cooperating Broker,** if any

Frederick J. Crugnale 3256334
**Listing Sales Associate**

Keller Williams Coral Gables
**Listing Broker**

FloridaRealtors/FloridaBar-1   Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar.   All rights reserved.

Serial#: 042242-800137-0544604

formsimplicity

Comprehensive Rider to the
Residential Contract For Sale And Purchase



**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**

**If initialed by all parties,** the clauses below will be incorporated into the Florida Realtors®/Florida Bar Residential Contract
For Sale And Purchase between _____ Frederick and Teresa Crugnale _____ (SELLER)
and _____ Noah and Shakira Silverman _____ (BUYER)
concerning the Property described as 3133 Jackson Ave Coconut Grove, FL 33133 _____

_____

**Buyer's Initials**   SmS   NDS          **Seller's Initials**   FC   JC

### L. RIGHT TO INSPECT AND RIGHT TO CANCEL

1. In lieu of the Inspection Period set forth in Paragraph 12(a), Buyer shall have _____ 15 _____ (if blank, then 15) days
   from Effective Date ("Right To Inspect Period") within which to have such inspections of the Property performed as
   Buyer shall desire and utilities shall be made available by the Seller during the Right To Inspect Period. Any
   inspections permitted under Paragraph 12 which Buyer desires to make must be completed during the Right To
   Inspect Period.

2. If this Contract is terminated or the transaction contemplated by this Contract does not close, Buyer will repair all
   damage to Property resulting from Buyer's inspections, return Property to its pre-inspection condition and provide
   Seller with paid receipts for all work done on Property upon its completion. This provision shall survive termination of
   this Contract.

3. If Buyer determines, in Buyer's sole discretion, that the Property is not acceptable to Buyer, Buyer may terminate this
   Contract by delivering written notice to Seller on or before expiration of the Right To Inspect Period and the Deposit
   shall be refunded to Buyer; thereby releasing Buyer and Seller from all further obligations under this Contract, except
   as provided in Subparagraph 2, above.

4. If Buyer elects to proceed with this Contract or fails to timely terminate this Contract on or before expiration of the
   Right To Inspect Period, then this Contract will remain in effect and:
   (a) If, during the Right To Inspect Period, Buyer has conducted inspections permitted by Paragraph 12 and timely
       reports to Seller in writing within the Right To Inspect Period any items requiring repair, replacement, treatment, or
       the need to obtain and close Permits under such Paragraph 12, then Seller shall pay up to the applicable
       amounts required by Paragraph 9(a)(i),(ii), or (iii); or
   (b) If, during the Right To Inspect Period Buyer: (i) fails to conduct inspections permitted by Paragraph 12, or (i)
       conducts inspections, but fails to timely deliver to Seller a written notice or report required by Paragraphs 12 (b),
       (c), or (d), then, except for Seller's continuing Maintenance Requirement, Buyer shall have waived Seller's
       obligation(s) to repair, replace, treat or remedy the matters not inspected and timely reported.

5. If this Contract does not close, Buyer will repair all damage to Property resulting from Buyer's inspections, return
   Property to its pre-inspection condition and provide Seller with paid receipts for all work done on Property upon its
   completion.

Page _____ of Comprehensive Rider to the Residential Contract For Sale And Purchase

CR-1  Rev. 6/10  © 2010 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial#: 083950-300137-0298518

Comprehensive Rider to the
Residential Contract For Sale And Purchase
THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR

If initialed by all parties, the clauses below will be incorporated into the Florida Realtors®/Florida Bar Residential Contract
For Sale And Purchase between _____Frederick and Teresa Crugnale_____ (SELLER)
and _____Noah and Shakira Silverman_____ (BUYER)
concerning the Property described as 3133 Jackson Ave Coconut Grove, FL 33133 _____

Buyer's Initials _SMS_   _NDS_       Seller's Initials _FjC_   _JC_

## B. HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE

IF THE DISCLOSURE SUMMARY REQUIRED BY SECTION 720.401, FLORIDA STATUTES, HAS NOT BEEN
PROVIDED TO THE PROSPECTIVE PURCHASER BEFORE EXECUTING THIS CONTRACT FOR SALE, THIS
CONTRACT IS VOIDABLE BY BUYER BY DELIVERING TO SELLER OR SELLER'S AGENT OR REPRESENTATIVE
WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS AFTER RECEIPT OF THE
DISCLOSURE SUMMARY OR PRIOR TO CLOSING, WHICHEVER OCCURS FIRST. ANY PURPORTED WAIVER OF
THIS VOIDABILITY RIGHT HAS NO EFFECT. BUYER 'S RIGHT TO VOID THIS CONTRACT SHALL TERMINATE AT
CLOSING.

BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THIS DISCLOSURE.

Disclosure Summary For _3131 Jackson Street Condominium_
(Name of Community)

(a) AS A BUYER OF PROPERTY IN THIS COMMUNITY, YOU WILL BE OBLIGATED TO BE A MEMBER OF A
HOMEOWNERS' ASSOCIATION ("ASSOCIATION").

(b) THERE HAVE BEEN OR WILL BE RECORDED RESTRICTIVE COVENANTS ("COVENANTS") GOVERNING THE
USE AND OCCUPANCY OF PROPERTIES IN THIS COMMUNITY.

(c) YOU WILL BE OBLIGATED TO PAY ASSESSMENTS TO THE ASSOCIATION. ASSESSMENTS MAY BE SUBJECT
TO PERIODIC CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $_____ PER
_____. YOU WILL ALSO BE OBLIGATED TO PAY ANY SPECIAL ASSESSMENTS IMPOSED BY THE
ASSOCIATION. SUCH SPECIAL ASSESSMENTS MAY BE SUBJECT TO CHANGE. IF APPLICABLE, THE
CURRENT AMOUNT IS $_____ PER _____.

(d) YOU MAY BE OBLIGATED TO PAY SPECIAL ASSESSMENTS TO THE RESPECTIVE MUNICIPALITY, COUNTY,
OR SPECIAL DISTRICT. ALL ASSESSMENTS ARE SUBJECT TO PERIODIC CHANGE.

(e) YOUR FAILURE TO PAY SPECIAL ASSESSMENTS OR ASSESSMENTS LEVIED BY A MANDATORY
HOMEOWNERS' ASSOCIATION COULD RESULT IN A LIEN ON YOUR PROPERTY.

(f) THERE MAY BE AN OBLIGATION TO PAY RENT OR LAND USE FEES FOR RECREATIONAL OR OTHER
COMMONLY USED FACILITIES AS AN OBLIGATION OF MEMBERSHIP IN THE HOMEOWNERS' ASSOCIATION.
IF APPLICABLE, THE CURRENT AMOUNT IS $_____ PER _____.

(g) THE DEVELOPER MAY HAVE THE RIGHT TO AMEND THE RESTRICTIVE COVENANTS WITHOUT THE
APPROVAL OF THE ASSOCIATION MEMBERSHIP OR THE APPROVAL OF THE PARCEL OWNERS.

(h) THE STATEMENTS CONTAINED IN THIS DISCLOSURE FORM ARE ONLY SUMMARY IN NATURE, AND, AS A
PROSPECTIVE PURCHASER, YOU SHOULD REFER TO THE COVENANTS AND THE ASSOCIATION
GOVERNING DOCUMENTS BEFORE PURCHASING PROPERTY.

(i) THESE DOCUMENTS ARE EITHER MATTERS OF PUBLIC RECORD AND CAN BE OBTAINED FROM THE
RECORD OFFICE IN THE COUNTY WHERE THE PROPERTY IS LOCATED, OR ARE NOT RECORDED AND
CAN BE OBTAINED FROM THE DEVELOPER.

_6/4/13_
DATE                    BUYER _SO_

_6-4-13_
DATE                    BUYER

Page _____ of Comprehensive Rider to the Residential Contract For Sale And Purchase
CR-1  Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 022269-700137-0296496

Comprehensive Rider to the
Residential Contract For Sale And Purchase
THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR

If initialed by all parties, the clauses below will be incorporated into the Florida Realtors®/Florida Bar Residential Contract
For Sale And Purchase between _____ Frederick and Teresa Crugnale _____ (SELLER)
and _____ Noah and Shakira Silverman _____ (BUYER)
concerning the Property described as 3133 Jackson Ave Coconut Grove, FL 33133 _____

Buyer's Initials  SmS  NJS          Seller's Initials  FJC  JC

### A. CONDOMINIUM ASSOCIATION DISCLOSURE

1.  **CONDOMINIUM ASSOCIATION APPROVAL:**
    The Association's approval of Buyer (CHECK ONE) ☐ is ☒ is not required. If approval is required, this Contract is
    contingent upon Buyer being approved by the Association no later than _____ days prior to
    Closing. Within _____ days after Effective Date Seller shall initiate the approval process with the
    Association and Buyer shall apply for such approval. Buyer and Seller shall sign and deliver any documents required
    by the Association in order to complete the transfer of the Property and each shall use diligent effort to obtain such
    approval, including making personal appearances if required. If Buyer is not approved within the stated time period,
    this Contract will terminate and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all
    further obligations under this Contract.

2.  **RIGHT OF FIRST REFUSAL:**
    (a) The Association (CHECK ONE) ☐ has ☐ does not have a right of first refusal ("Right"). If the Association has
        a Right, this Contract is contingent upon the Association, within the time permitted for the exercise of such Right,
        either providing written confirmation to Buyer that the Association is not exercising that Right, or failing to timely
        exercise such Right pursuant to the terms of the Declaration of Condominium ("Declaration", which reference
        includes all amendments thereto).
    (b) The members of the Association (CHECK ONE) ☐ have ☐ do not have a Right. If the members do have a
        Right, this Contract is contingent upon the members, within the time permitted for the exercise of such Right,
        either providing written confirmation to Buyer that the members are not exercising that Right, or failing to
        timely exercise such Right pursuant to the terms of the Declaration.
    (c) Buyer and Seller shall, within _____ days after Effective Date, sign and deliver any documents
        required as a condition precedent to the exercise of the Right, and shall use diligent effort to submit and process
        the matter with the Association and members, including personal appearances, if required.
    (d) If, within the stated time period, the Association, the members of the Association, or both, fail to provide the
        written confirmation or the Right has not otherwise expired, then this Contract will terminate and the Deposit will
        be refunded to the Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.
    (e) If the Association or a member timely exercises its or their Right, this Contract will terminate and the Deposit will
        be refunded to Buyer (unless this Contract provides otherwise), thereby releasing Buyer and Seller from all further
        obligations under this Contract, and Seller will pay to Broker the full commission at Closing in recognition that
        Broker procured the sale.

3.  **FEES; ASSESSMENTS; PRORATIONS; LITIGATION:**
    (a) Assessments and Rents: Seller represents that the current annual assessment installments are
        $_____ per month and the current rent on recreation areas is $_____ per month. All
        annual assessments levied by the Association and rent on recreational areas, if any, shall be made current
        by Seller at Closing, and Buyer shall reimburse Seller for prepayments.
    (b) Fees: Seller will pay all fines imposed against the Unit as of Closing Date and any fees the Association charges to
        provide information about its fees on the Property, and will bring annual assessment installments and similar
        periodic fees and rents on any recreational areas current as of Closing Date.

### (SEE CONTINUATION)

## A. CONDOMINIUM ASSOCIATION DISCLOSURE (CONTINUED)

(c) Special Assessments and Prorations:

(i) Seller represents that Seller is not aware of any special or other assessment that has been levied by the Association or that has been an item on the agenda, or reported in the minutes, of the Association within twelve (12) months prior to Effective Date, ("pending") except as follows: _____

_____

(ii) If special assessments levied or pending exist as of the Effective Date are disclosed above by Seller and may be paid in installments (**CHECK ONE**): ☐ **Buyer** ☐ **Seller (if left blank, Buyer) shall pay installments due after Closing Date. If Seller is checked, Seller will pay the assessment in full prior to or at the time of Closing.**

(iii) If special assessments levied or pending exist as of the Effective Date and have not been disclosed above by Seller, then Seller shall pay such assessments in full at the time of Closing.

(iv) If, after Effective Date, the Association imposes a special assessment for improvements, work or services, which was not pending as of the Effective Date, then Seller will pay all amounts due before Closing Date and Buyer will pay all amounts due after Closing Date.

(v) A special assessment shall be deemed levied for purposes of this paragraph on the date when the assessment has been approved as required for enforcement pursuant to Florida law and the condominium documents listed in Paragraph 5.

(vi) Association assets and liabilities, including Association reserve accounts, shall not be prorated.

(d) Litigation: Seller represents that Seller is not aware of pending or anticipated litigation affecting the Property or the common elements, if any, except as follows: _____

_____

## 4. SPRINKLER SYSTEM RETROFIT:

If, pursuant to Sections 718.112(2)(l), F. S., the Association has voted to forego retrofitting its fire sprinkler system or handrails and guardrails for the condominium units, then prior to Closing Seller shall furnish to Buyer the written notice of Association's vote to forego such retrofitting.

## 5. NON-DEVELOPER DISCLOSURE:

(CHECK ONE )

☐ **(a) THE BUYER HEREBY ACKNOWLEDGES THAT BUYER HAS BEEN PROVIDED A CURRENT COPY OF THE DECLARATION OF CONDOMINIUM, ARTICLES OF INCORPORATION OF THE ASSOCIATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT MORE THAN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND LEGAL HOLIDAYS, PRIOR TO EXECUTION OF THIS CONTRACT.**

☐ **(b) THIS AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND LEGAL HOLIDAYS, AFTER THE DATE OF EXECUTION OF THIS AGREEMENT BY THE BUYER AND RECEIPT BY BUYER OF A CURRENT COPY OF THE DECLARATION OF CONDOMINIUM, ARTICLES OF INCORPORATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT IF SO REQUESTED IN WRITING. ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. BUYER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND LEGAL HOLIDAYS, AFTER THE BUYER RECEIVES THE DECLARATION, ARTICLES OF INCORPORATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT IF REQUESTED IN WRITING. BUYER'S RIGHT TO VOID THIS AGREEMENT SHALL TERMINATE AT CLOSING.**

6. **BUYER'S REQUEST FOR DOCUMENTS:**

Buyer is entitled, at Seller's expense, to current copies of the condominium documents specified in Paragraph 5, above. Buyer (CHECK ONE) ☐ requests ☐ does not request a current copy of the documents specified in Paragraph 5, above. If this Contract does not close, Buyer shall immediately return the documents to Seller or reimburse Seller for the cost of the documents.

**(SEE CONTINUATION)**

CR-1a Rev. 9/12 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 034625-500137-0311105

## A. CONDOMINIUM ASSOCIATION DISCLOSURE (CONTINUED)

**7. BUYER'S RECEIPT OF DOCUMENTS:**
(COMPLETE AND CHECK ONLY IF CORRECT)   ☐ Buyer received the documents described in Paragraph 5, above, on _____

**8. COMMON ELEMENTS; PARKING:**
The Property includes the unit being purchased and an undivided interest in the common elements and an appurtenant limited common elements of the condominium, as specified in the Declaration. Seller's right and interest in or to the use of the following parking space(s), garage, and other areas are included in the sale of the Property and shall be assigned to Buyer at Closing, subject to the Declaration:
Parking Space(s) # _____      Garage # _____      Other: _____

**9. INSPECTIONS AND REPAIRS:**
The rights and obligations arising under Paragraphs 11 and 12 of this Contract to maintain, repair, replace or treat are limited to Seller's individual condominium unit and unless Seller is otherwise responsible do not extend to common elements, limited common elements, or any other part of the condominium property.

**10. GOVERNANCE FORM:**
PURSUANT TO CHAPTER 718, FLORIDA STATUTES, BUYER IS ENTITLED TO RECEIVE FROM SELLER A COPY OF THE GOVERNANCE FORM IN THE FORMAT PROVIDED BY THE DIVISION OF FLORIDA CONDOMINIUMS, TIMESHARES AND MOBILE HOMES OF THE DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, SUMMARIZING THE GOVERNANCE OF THE CONDOMINIUM ASSOCIATION.

CR-1a Rev. 9/12 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 034825-500137-0311105

**Seller's Real Property Disclosure Statement**
FLORIDA ASSOCIATION OF REALTORS ®

NAME: _Teresa and Frederick Crugdale_

SELLER HAS ☒ HAS NOT ☐ OCCUPIED THE PROPERTY.
DATE SELLER PURCHASED PROPERTY? _Feb - 2010_
IS THE PROPERTY CURRENTLY LEASED? NO ☒ YES ☐ TERMINATION DATE OF LEASE: _____
DOES THE PROPERTY CURRENTLY HAVE HOMESTEAD EXEMPTION? NO ☐ YES ☒; YEAR _2017_

GENERAL INFORMATION ABOUT PROPERTY:
PROPERTY ADDRESS: _3133 Jackson Ave. Miami FL. 33133_
LEGAL DESCRIPTION: _Town House_

NOTICE TO BUYER AND SELLER:
In Florida, a Seller is obligated to disclose to a Buyer all known facts that materially affect the value of the property being sold and that are not readily observable. This disclosure statement is designed to assist Seller in complying with the disclosure requirements under Florida law and to assist the Buyer in evaluating the property being considered. This disclosure statement concerns the condition of the real property located at above address. It is not a warranty of any kind by the Seller or any Licensee in this transaction. It is not a substitute for any inspections or warranties the parties may wish to obtain. It is based only upon Seller's knowledge of the property condition. This disclosure is not intended to be a part of any contract for sale and purchase. All parties may refer to this information when they evaluate, market, or present Seller's property to prospective Buyers.

**The following representations are made by the Seller(s) and are not the representations of any real estate licensees.**

1. **CLAIMS & ASSESSMENTS**
   **a.** Are you aware of existing, pending, or proposed legal actions, claims, special assessments, municipal service taxing or benefit unit charges or unpaid assessments (including homeowners' association maintenance fees or proposed increases in assessments and/or maintenance fees) affecting the property? NO ☒ YES ☐ If yes, explain:
   _____

   **b.** Have any local, state, or federal authorities notified you that repairs, alterations or corrections of the property are required? NO ☒ YES ☐ If yes, explain: _____
   _____

2. **DEED/HOMEOWNERS' ASSOCIATION RESTRICTIONS**
   Are You Aware:
   **a.** of any deed or homeowner restrictions? NO ☒ YES ☐
   **b.** of any proposed changes to any of the restrictions? NO ☒ YES ☐
   **c.** of any resale restrictions? NO ☒ YES ☐
   **d.** of any restrictions on leasing the property? NO ☒ YES ☐
   **e.** If any answer to questions 2a-2e is yes, please explain:
   _____
   _____

   **f.** Are access roads private ☐ public ☒ ? If private, describe the terms and conditions of the maintenance agreement: _____
   **g.** If there is a homeowner association, is membership mandatory? NO ☐ YES ☒ , and are fees charged by the homeowner association? NO ☒ YES ☐ If yes, explain: _____

3. **PROPERTY-RELATED ITEMS**
   Are You Aware:
   **a.** if you have ever had the property surveyed? NO ☒ YES ☐ Date: _____
   **b.** if the property was surveyed, did you receive an elevation certificate? NO ☐ YES ☐ Date: _____
   **c.** of any walls, driveways, fences or other features shared in common with adjoining landowners or any encroachments, boundary line disputes, setback violations, or easements affecting the property? NO ☒ YES ☐
   **d.** of any portion of the property that is fenced? NO ☐ YES ☒
   If any answer to questions 3a-3d is yes, please explain: _Gated Driveway, Side of property_
   _and back yard_
   _____

Buyer (___) (___) and **Seller** ☒ ☒ acknowledge receipt of a copy of this page, which is Page 1 of 5 Pages.
SRPD-4   Rev. 5/09   © 2009   Florida Association of REALTORS®   All Rights Reserved

formsimplicity

**4. THE LAND:**
Are You Aware:
    **a.** of any past or present settling, soil movement, or sinkhole problems on the property or on adjacent properties? NO ☒ YES ☐
        **i.** of any sinkhole insurance claim that has been made on subject property? NO ☒ YES ☐
        **ii.** if claim made, was claim paid? NO ☐ YES ☐
        **iii.** was the full amount of the insurance proceeds used to repair the sinkhole damage? NO ☐ YES ☐
    **b.** of any past or present drainage or flood problems affecting the property or adjacent properties? NO ☒ YES ☐
    **c.** of any past or present problems with driveways, walkways, patios, seawalls, or retaining walls on the property or adjacent properties due to drainage, flooding, or soil movements? NO ☒ YES ☐
    If any answer to questions 4a-4c is yes, please explain: _____
    _____
    _____
    _____

**5. ENVIRONMENT:**
Was the property built before 1978? NO ☒ YES ☐
Are You Aware:
    **a.** of any substances, materials, or products which may be an environmental hazard, such as, but not limited to, asbestos, urea formaldehyde, radon gas, mold, lead-based paint, Chinese/defective drywall, fuel, propane or chemical storage tanks (active or abandoned), or contaminated soil or water on the property? NO ☒ YES ☐ If yes, explain: _____
    _____
        **i.** of any damage to the structures located on the property due to any of the substances, materials or products listed in subsection (a) above? NO ☒ YES ☐ If yes, explain: _____
    _____
    _____
        **ii.** of any corrosion to air conditioner or refrigerator coils, copper tubing, electrical wiring, computer wiring or other household items that have been damaged by sulfur or methane gas emitted from Chinese/defective drywall? NO ☒ YES ☐ If yes, explain: _____
    _____
    _____
        **iii.** of any clean up, repairs, or remediation of the property due to any of the substances, materials or products listed in subsection (a) above? NO ☒ YES ☐ If yes, explain: _____
    _____
    _____
    **b.** of any condition or proposed change in the vicinity of the property that does or will materially affect the value of the property, such as, but not limited to, proposed development or proposed roadways? NO ☒ YES ☐
    **c.** of wetlands, mangroves, archeological sites, or other environmentally sensitive areas located on the property? NO ☒ YES ☐
    If any answer to questions 5a-5c is yes, please explain: _____
    _____
    _____
    _____

**6. ZONING:**
Are You Aware:
    **a.** of the zoning classification of the property? NO ☐ YES ☒ If yes, identify the zoning classification *Primary Residence*
    **b.** of any zoning violations or nonconforming uses? NO ☒ YES ☐
    **c.** if the property is zoned for its current use? NO ☐ YES ☒
    **d.** of any zoning restrictions affecting additions, improvements or replacement of the property? NO ☒ YES ☐
    **e.** if there are any zoning, land use or administrative regulations which are in conflict with the existing or intended use of the property? NO ☒ YES ☐

Buyer (_____) (_____) and Seller (JC) (JC) acknowledge receipt of a copy of this page, which is Page 2 of 5 Pages.
SRPD-4   Rev. 5/09   © 2009   Florida Association of REALTORS®   All Rights Reserved

formsimplicity

**f.** of any restrictions other than association and flood area requirements affecting improvements or replacement of the property? NO ☒  YES ☐
If any answer to questions 6a-6f is yes, please explain: _____
_____
_____
_____

## 7. FLOOD:
Are You Aware:
    **a.** if any portion of the property is in a special flood hazard area? NO ☒  YES ☐
    **b.** does the property require flood insurance? NO ☒  YES ☐
    **c.** whether any improvements including additions, are located below the base flood elevation? NO ☒  YES ☐
    **d.** whether such improvements have been constructed in violation of applicable local flood guidelines? NO ☒  YES ☐
    **e.** if any portion of the property is seaward of the coastal construction control line? NO ☒  YES ☐
If any answer to questions 7a-7e is yes, please explain: _____
_____
_____
_____

## 8. TERMITES, DRY ROT, PESTS, WOOD DESTROYING ORGANISMS:
    a. Do you have any knowledge of termites, dry rot, pests or wood destroying organisms on or affecting any improvements located on the property or any structural damage to the property by them? NO ☒  YES ☐  If yes, explain: _____
_____
    b. Have you ever had the property inspected for termites, dry rot, pest or wood destroying organism?
NO ☒  YES ☐  Date of inspection_____If so, what was the outcome of the inspection? _____
_____
    c. Has the property been treated for termites, dry rot, pest or wood destroying organisms? NO ☒  YES ☐  Date and type of treatment _____
_____,Company name: _____

## 9. STRUCTURE-RELATED ITEMS:
Are You Aware:
    **a.** of any structural damage which may have resulted from events including, but not limited to, fire, wind, flood, hail, landslide, or blasting, and which materially affect the value of the property? NO ☒  YES ☐
    **b.** of any structural condition or, in the case of a homeowner association, any condition in the common elements that materially affects the value of the property? NO ☒  YES ☐
    **c.** of any improvements or additions to the property, whether by you or by others, that have been constructed in violation of building codes or without necessary permits? NO ☒  YES ☐
    **d.** of any active permits on the property which have not been closed by a final inspection? NO ☒  YES ☐
If any answer to questions 9a-9d is yes, please explain: _____
_____
_____
_____

## 10. ROOF-RELATED ITEMS:
Are You Aware:
    **a.** of any roof or overhang defects? NO ☒  YES ☐
    **b.** if the roof has leaked since you owned the property? NO ☒  YES ☐
    **c.** if anything was done to correct the leaks? NO ☐  YES ☐
    **d.** if the roof has been replaced? NO ☒  YES ☐  If yes, when: _____
    **e.** If there is a warranty on the roof? NO ☒  YES ☐  If yes, is it transferable? NO ☐  YES ☐
    **f.** If the roof been inspected within the last twelve months? NO ☒  YES ☐
If any answer to questions 10a-10f is yes, please explain: _____
_____
_____
_____

**11. PLUMBING-RELATED ITEMS:**

**a.** What is your drinking water source? Public ☒ Private Well ☐ Other Source ☐ . If your drinking water is from a well or other source, when was your water last checked for safety and what was the result of the test? _____

**b.** Do you have a water conditioning system? NO ☒ YES ☐ If yes, type:_____ Owned ☐ Leased ☐
What is the balance owed on the system? $_____

**c.** Do you have a sewer ☒ or septic system ☐ ? If septic system describe the location of each system: _____
_____

**d.** Are you aware of any septic tanks or wells on the property which are not currently being used?
NO ☒ YES ☐ If yes, explain: _____

**e.** Are you aware of any plumbing leaks since you have owned the property? NO ☒ YES ☐ If yes, explain: _____
_____
_____

**f.** Are you aware of any conditions that materially affect the value of the property relating to the septic tank/drain field, sewer lines, or any other plumbing related items? NO ☒ YES ☐ If yes, explain: _____
_____
_____

**12. POOLS/HOT TUBS/SPAS:**

**a.** Does the property have a swimming pool? NO ☐ YES ☒ Hot tub? NO ☒ YES ☐ Spa? NO ☒ YES ☐
**b.** If you answered yes to any part of 12a, was the certificate of completion received after Oct. 1, 2000 for the pool?
NO ☐ YES ☒ For the spa? NO ☐ YES ☐ For the hot tub? NO ☐ YES ☐
**c.** Check the pool safety features (as defined by Section 515.27, Florida Statutes) your swimming pool, hot tub or spa has: Enclosure that meets the pool barrier requirements ☐ Approved safety pool cover ☐
Required door and window exit alarms ☒ - Required door locks ☒ - none ☐
**d.** Are you aware of any conditions regarding these items that materially affect the value of the property?
NO ☒ YES ☐ If yes, explain: _____
_____
_____

**13. MAJOR APPLIANCES:**

Indicate existing equipment:
Range ☒ Oven ☒ Microwave ☒ Dishwasher ☒ Garbage Disposal ☒ Trash Compactor ☐ Refrigerator ☒
Freezer ☒ Washer ☒ Dryer ☒
Are any of these appliances leased? NO ☒ YES ☐ Are any of these gas appliances? NO ☐ YES ☐
Is the water heater: owned ☒ leased ☐ ; Is the water heater: electric ☒ gas ☐
Are you aware of any problems with these appliances, including whether any of the appliances have leaked or overflowed, since you have owned the property? NO ☒ YES ☐ If yes, explain: _____
_____
_____

**14. ELECTRICAL SYSTEM:**

Are You Aware:
a. of any damaged or malfunctioning switches, receptacles, or wiring? NO ☒ YES ☐
b. of any conditions that materially affect the value or operating capacity of the electrical system? NO ☒ YES ☐
If answers to questions 14a or 14b is yes, please explain: _____
_____
_____

**15. HEATING AND AIR CONDITIONING:**

Indicate existing equipment:

**Air conditioning:**
Central ☒ Window/Wall ☐ Number of units_____

**Solar Heating:**
Owned ☐ Leased ☐

**Heating:**
Electric ☒ Fuel Oil ☐ Gas ☐ Other ☐

**Wood-burning stove:** NO ☒ YES ☐
**Fireplace:** NO ☒ YES ☐ Describe fireplace equipment: _____
Are you aware of any defects, malfunctioning or condensation problems regarding these items, since you have owned the property? NO ☒ YES ☐ If yes, explain: _____
_____

Buyer (____) (____) and Seller (_JC_) (_JC_) acknowledge receipt of a copy of this page, which is Page 4 of 5 Pages.

SRPD-4   Rev. 5/09   © 2009   Florida Association of REALTORS®   All Rights Reserved

formsimplicity

**16. OTHER EQUIPMENT:**

Indicate existing equipment:

Security System: NO ☐ YES ☒, Leased ☐ Owned ☐ Connected to Central Monitor ☒ Monthly Fee $ 42.

Smoke Detectors: NO ☐ YES ☒, Number of smoke detectors?_____

Lawn Sprinkler System: NO ☒ YES ☐ Sprinkler water source:_____If well is source, is there an iron filter? NO ☐ YES ☐ Is there a timer? NO ☐ YES ☐ Is the timer automatic? NO ☐ YES ☐

Garage door openers? NO ☐ YES ☒, Number of transmitters? __2__, Humidistat? NO ☐ YES ☐ Humidifier? NO ☐ YES ☐ Electric air filters? NO ☐ YES ☐ Vent fans? NO ☐ YES ☒

Paddle fans? NO ☐ YES ☒, Number of paddle fans?___1___

**17. OTHER MATTERS:**

Is there anything else that materially affects the value of the property? NO ☒ YES ☐

If yes, explain: _____

_____

_____

_____

### ACKNOWLEDGEMENT OF SELLER

The undersigned Seller represents that the information set forth in the above disclosure statement is accurate and complete to the best of the Seller's knowledge on the date signed below. Seller does not intend for this disclosure statement to be a warranty or guaranty of any kind. Seller hereby authorizes disclosure of the information contained in this disclosure statement to prospective Buyers of the property. Seller understands and agrees that Seller will notify the Buyer in writing within five business days after Seller becomes aware that any information set forth in this disclosure statement has become inaccurate or incorrect in any way during the term of the pending purchase by the Buyer.

Seller: _Teresa Crugnale_ / Teresa Crugnale   Date: 6/3/13
      (signature)          (print)

Seller: _____ / Frederick J. Crugnale   Date: 6 - 3 - 13
      (signature)          (print)

### RECEIPT AND ACKNOWLEDGMENT OF BUYER

Seller is using this form to disclose Seller's knowledge of the condition of the real property and improvements located on the property as of the date signed by Seller. This disclosure form is not a warranty of any kind. The information contained in the disclosure is limited to information to which the seller has knowledge. It is not intended to be a substitute for any inspections or professional advice the Buyer may wish to obtain. An independent professional inspection is encouraged and may be helpful to verify the condition of the property and to determine the cost of repairs, if any. Buyer understands these representations are not made by any real estate licensee.

Buyer hereby acknowledges having received a copy of this disclosure statement.

Buyer:_____ / _____   Date:_____
     (signature)         (print)

Buyer:_____ / _____   Date:_____
     (signature)         (print)

Buyer (____) (____) and Seller (_TC_) (_FJC_) acknowledge receipt of a copy of this page, which is Page 5 of 5 Pages.

From: Jessica Collins <jessicacollins.re@gmail.com>
Subject: **Addendum to be signed.**
Date: June 22, 2013 11:45:45 PM EDT
To: terryc01@mac.com
1 Attachment, 169 KB

Hi Frederick & Teresa,
Here is the addendum for the home inspection credit and the loan commitment extenstion. Please email back to after you sign and date.

--

Thanks

*Associate Broker*

The Jills/Coldwell Banker
c 305-582-9168
f 305-397-1087
www.         .com

DocuSign Envelope ID: 06CB1F4E-EA02-4903-BD44-3B81FA03EABF

## Addendum to Contract

FloridaRealtors

Addendum No. _____ to the Contract dated _____ June 10, 2013 _____ between

_____ Frederick and Teresa Crugnale _____ (Seller)

and _____ Noah and Shakira Silverman _____ (Buyer)

concerning the property described as:

_____ 3133 Jackson Ave Coconut Grove, FL 33133 _____

(the "Contract"). Buyer and Seller make the following terms and conditions part of the Contract:

1.) Seller agrees to credit Buyer $1,000.00 at closing for Home Inspection repairs.

2.) Seller agrees to a loan commitment date of July 19th 2013

| | |
|---|---|
| Date: _____ | Buyer: _____ |
| Date: _____ | Buyer: _____ |
| Date: 6/24/13 | Seller: _____ |
| Date: 6/24/13 | Seller: _____ |

This form is available for use by the entire real estate industry and is not intended to identify the user as a REALTOR. REALTOR is a registered collective membership mark that may be used only by real estate licensees who are members of the National Association of REALTORS and who subscribe to its Code of Ethics.
The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of blank forms by any means including facsimile or computerized forms.

ACSP-2a Rev. 6/94 ©1994 Florida Association of REALTORS ® All Rights Reserved

Serial#: 041214-200737-1913433

DocuSigned by:

*Jessica H. Collins*

9C5A72AA5B1341E...

DocuSign Envelope ID: FEC6D840-D4F8-4ADA-B8DB-703C149DA7CD

**FloridaRealtors**

## Addendum to Contract

Addendum No. __2__ to the Contract dated _____ June 10, 2013 _____ between

_____ Frederick and Teresa Crugnale _____ (Seller)

and _____ Noah and Shakira Silverman _____ (Buyer)

concerning the property described as:

_____ 3133 Jackson Ave, Coconut Grove, FL 33133 _____

(the "Contract"). Buyer and Seller make the following terms and conditions part of the Contract:
The purchase price is $640,000. Buyers shall still receive the $1,000 credit as per the June 24, 2013 addendum. The Red dinning room chandelier is excluded from the sale. The loan commitment date is extended until July 29, 2013.

Date: __7/15/2013__   Buyer: _____

Date: __7/15/2013__   Buyer: _____

Date: __7-15-2013__   Seller: _____

Date: __7/15/13__   Seller: _____

This form is available for use by the entire real estate industry and is not intended to identify the user as a REALTOR. REALTOR is a registered collective membership mark that may be used only by real estate licensees who are members of the National Association of REALTORS and who subscribe to its Code of Ethics.
The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of blank forms by any means including facsimile or computerized forms.

ACSP-2 Rev. 6/94 ©1994 Florida Association of REALTORS® All Rights Reserved