UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL ) | MDL No. 2047 |
| PRODUCTS LIABILITY LITIGATION ) | |
| ) | SECTION: L |
| ) | |
| THIS DOCUMENT RELATES TO: ) | JUDGE FALLON |
| ) | MAG. JUDGE WILKINSON |
| *Payton* (09-7628) ) | |

### RESPONSE OF THE KNAUF DEFENDANTS IN OPPOSITION TO JESSIE DAVIS AND KATIE DAVIS'S MOTION TO COMPEL THE KNAUF DEFENDANTS TO CASH-OUT OPTION PAYMENT

The Knauf Defendants[1], by and through undersigned counsel, submit this response in opposition to Jessie Davis and Katie Davis's Motion to Compel the Knauf Defendants to Cash-Out Option Payment ("Motion to Compel").

As an initial point of clarification, the Knauf Defendants do not dispute that they agreed to fund the Cash-Out of the Claimants' claims as identified in the Claimants' Motion to Compel, at a point in time when the Claimants' mortgagee owned the property. However, the Cash-Out Option, set forth in Section 4.3.3 of the Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047[2] ("Knauf Class Settlement Agreement"), is no longer a viable option for the Claimants for the following reasons:

---

[1] The Knauf Defendants are: Knauf Plasterboard (Tianjin) Co, Ltd.; Knauf Plasterboard (Wuhu) Co., Ltd.; Guandong Knauf New Building Material Products Co., Ltd.; Knauf Gips KG; Gebrueder Verwaltungsgesellschaft KG; Knauf International GmbH; Knauf Insulation GmbH; Knauf UK GmbH; Knauf AMF GmbH & Co.; Knauf do Brasil Ltda.; and PT Knauf Gypsum Indonesia.

[2] All capitalized terms in this Response in Opposition have the same meanings given to them in the Knauf Class Settlement Agreement, unless otherwise noted herein.

-1-

**A. Section 4.3.5.1 of the Knauf Class Settlement Agreement is inapplicable because the Mortgagee sold the property to a subsequent purchaser prior to finalizing the Cash-Out paperwork and receiving the Cash Out funds.**

Section 4.3.5.1 of the Knauf Class Settlement Agreement [Rec. Doc. 16407-3], pertaining to Foreclosed Properties, states,

> For Foreclosed Properties, (a) the Mortgagee shall be entitled to the benefits under Sections 4.3.1, 4.3.2 or 4.3.3, except for the Other Covered Expenses, but only if the Mortgagee became the Owner after foreclosure *__and remains the Owner of the Affected Property and the Mortgagee provides a release to the Knauf Defendants and Other Releasees__*; and (b) the Owner prior to the foreclosure shall be entitled to the Lump Sum Payment under Section 4.3.1.1, but not the Delay Period Payment under Section 4.3.1.2 [emphasis added].

Here, Knauf agreed to pay the Cash-Out Option pursuant to section 4.3.5.1 of the Knauf Class Settlement Agreement only after confirmation that U.S. Bank National Association (the "Mortgagee") still remained the record owner of the property. In fact, any agreement to pay Cash-Out Option was specifically premised on the bank owning the Property, and continuing to own the property until the Cash-Out paperwork was finalized and the Cash-Out funds paid. See Exhibit "A" ("We just need to confirm that the bank still owns the home."). After counsel for the Claimants sent evidence of the Mortgagee's ownership of the property as set forth in Exhibit "5" to Claimants' Motion to Compel, the Knauf Defendants confirmed their willingness to fund the Cash-Out Option. Knauf also agreed to fund the Cash-Out Option as set forth in the Consent Judgment attached as Exhibit "2" to the Claimants' Motion to Compel rather than as set forth in Section 4.3.5.1 because it did not prejudice the Knauf Defendants at that time.

In addition, the agreement to fund the Cash-Out Option was premised on the bank signing a Homeowner Affirmation and Release as the Owner of the Property. As the Court can see from the attached email correspondence between Claimants' counsel and the Knauf

Defendants' counsel, the Knauf Defendants requested that the Mortgagee and Claimants sign the Homeowner Affirmation and Release to make sure the Knauf Defendants' interests were protected from future claims. See Exhibit "B," "C," and "D." Because the Mortgagee was no longer the lienholder, but rather the Owner of the property, the Knauf Defendants requested that the Mortgagee also sign a proper Release, rather than the Lienholder Release that it previously signed. See Exhibits "B" and "D."[3]

As stated in Claimants' Motion to Compel, on July 26, 2013, the Mortgagee sold the Property on June 26, 2013, but failed to provide any notice to any of the parties involved in the Cash-Out arrangement. Section 4.3.5.1 specifically states that the Mortgagee must **remain** the Owner of Property to be entitled to the benefits of that section. Since the Mortgagee no longer remained the Owner of the Property, the circumstances of the agreement to fund the Cash Out Option changed. Section 4.3.5.1 is now no longer applicable because it is imperative that the bank must be the record owner of the property at the time that all paperwork is finalized and submitted to the Settlement Administrator (which to date has not been finalized) and the Cash-Out funds paid to the appropriate parties.

This position follows logically with Claimants who select Options 1 ("Program Contractor Remediation") or 2 ("Self-Remediation") in conjunction with Section 4.3.5.1 of the Knauf Class Settlement. With regard to those options, the Mortgagee must remain the Owner of the Property at the time all paperwork is completed and during remediation in the same way that an Option 3 Mortgagee must remain the same Owner at the time the paperwork is finalized and payment of the Cash-Out funds is made to the Mortgagee.

---

[3] The Mortgagee has signed the Lienholder Release, but it was not the lienholder at the time of the agreement, so it would be appropriate to have had them sign an Owner Release.

Moreover, Claimants' delay claims by the Knauf Defendants are incorrect and are red herrings for the real issues identified above. Any delay was not caused by the Knauf Defendants. In August 2013, several emails were circulated about which persons/entities should sign the Homeowner Affirmation and Release. On August 14, 2013, undersigned counsel stated that both the Claimants and the bank should sign the Homeowner Affirmation since the bank was the owner of the property (which we now know that the bank was no longer the owner on that date, but failed to notify anyone.). See Exhibit "B." On August 19, 2013, Claimants' counsel sent an email to the Knauf Defendants with a revised Release which included the Mortgagee as a signatory to the Owner Release See Exhibit "C." The Knauf Defendants accepted these changes to the Release, in part because it was more appropriate for the Mortgagee (as owner) to sign an Owner Release rather than a Lienholder Release. See Exhibit "D." It was then Claimants' counsel's obligation to have the documents signed in a timely manner.

Nearly six months later, on February 4, 2014, Claimants' counsel followed up with the Knauf Defendants about finalizing the settlement. See Exhibit "E."[4] Conspicuously absent from the Claimants' Motion to Compel are the reasons that it took from August 2013 to February 2014 to attempt to finalize the claims. Attached to that email was a Release which was yet again revised to delete the Mortgagee, but there was no explanation for the change. When the Knauf Defendants determined that the Mortgagee had not signed a proper Owner Release, only a Lienholder Release, the Knauf Defendants were finally notified that the bank no longer owned the property. See Exhibit "F." The Knauf then took the position that the Cash-Out was no longer applicable to the situation.

---

[4] In that email, counsel for the Claimants attached a new Release which deleted the Mortgagee from the Release. *Id*. No explanation for the deletion of the Mortgagee was given by Claimants' counsel.

Also, had the Knauf Defendants known that the Property was sold nearly six months earlier on July 26, 2014, they would have taken the same position – that the Cash-Out Option was no longer a viable option.  Accordingly, any delay caused by any party is irrelevant to this situation.

Finally, counsel's claim that the Knauf Defendants have "reserved the Davises' Cash Out claim money" is incorrect and irrelevant to this Motion to Compel.  As set forth in the Knauf Class Settlement Agreement, the Knauf Defendants fund a Remediation Account which contains a balance of no less than $25 million at any given time.  See Section 4.2.2 of the Knauf Class Settlement Agreement.  However, the funds are not allocated or "reserved" for any specific property.  Rather, the funds are unallocated until a funding request from the Court appointed Settlement Administrator, Brown Greer, is sent to and approved by the Knauf Defendants.  Here, there has been no funding request for the Claimants' property, and thus no reservation of funds.

**B. Claimants' claims are covered by Section 4.7.1.3 ("Foreclosures") of the Knauf Class Settlement Agreement.**

In a scenario where a homeowner's home is foreclosed by a mortgage holder, and the mortgage holder does not remain the record owner of the property when all paperwork is finalized and a remediation option proceeds to conclusion, claims must be made to Section 4.7.1.3 of the Other Loss Fund created by the Knauf Class Settlement Agreement.  As previously stated, while the Cash-Out Option may have been available to Claimants prior to July 26, 2013, once the home was sold by the Mortgagee, the claims were converted to a claim to the Other Loss Fund pursuant to Section 4.7.1.3.

On March 25, 2014, Claimants' counsel emailed the Court appointed Settlement Administrator, Brown Greer, and requested that the Claimants be allowed to keep a "placeholder" for a potential Other Loss Fund claim.  See Exhibit "G."  Since this is the correct

-5-

route for the Claimants to take given the circumstances, the Knauf Defendants did not oppose the request for a placeholder. *Id.*

Under the Knauf Class Settlement Agreement, the Other Loss Fund, specifically Section 4.7.1.3 is the correct place for the Claimants' claims to be made, as the losses they have suffered are allegedly due to a foreclosure. In essence, Claimants are seeking an end-run around the applicable provisions of the Knauf Class Settlement Agreement. It would prejudice the Knauf Defendants to allow the Claimants to recover under Section 4.3.5.1 because the Mortgagee no longer owns the property, and thus does not fit within that Section of the Knauf Class Settlement Agreement. Accordingly, Knauf has no objection to any claim that the Claimants make to the Other Loss Fund in conjunction with damages related to foreclosures.

## CONCLUSION

For the reasons set forth above, this Claimants' equitable theories to compel the Knauf Defendants to pay the Cash-Out funds should be denied, and the Claimants' claims should be limited to the Other Loss Fund created by the Knauf Class Settlement Agreement.

Respectfully submitted,

By: /s/ Kyle A. Spaulding
KERRY J. MILLER (#24562)
KYLE A. SPAULDING (#29000)
FRILOT L.L.C.
1100 Poydras Street
Suite 3700
New Orleans, LA 70163
Telephone: (504) 599-8194
Facsimile: (504) 599-8145
Email: kmiller@frilot.com

*Counsel for the Knauf Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served upon Plaintiffs' Liaison Counsel by email and by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, on this 15th day of May, 2014.

                                                        /s/ Kyle Spaulding