# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  CHINESE-MANUFACTURED | * | MDL 2047 |
| DRYWALL PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to: ALL CASES | * | |
| | * | MAGISTRATE JUDGE WILKINSON |
| | * | |
| * * * * * * * * * * * * * * * * * | | |

## THE KNAUF DEFENDANT'S REPLY TO THE OPPOSITIONS TO THE KNAUF DEFENDANT'S MOTION TO CONSTRUE SETTLEMENT AGREEMENT

The Knauf Defendants[1] hereby reply to the various responses [Rec. Docs. 17631, 17658, 17668, 17671, and 17672] to the Knauf Defendants' Motion to Construe Settlement Agreement filed on April 4, 2014 [Rec. Doc. 17595].

The Commercial Owner Subclass[2] and the Residential Owner Subclass defined in the Knauf Class Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 ("Knauf Class Settlement Agreement") are as "well-defined," "clear," and "unambiguous" as the various responses in opposition suggest. Residential Owners are "all members of the Class who are owners of and reside or have resided in Affected Property." The Lump Sum Payment, which is payable to only Residential Owners, should not be paid to claimants that do not meet both prongs of the Residential Owner definition. If the Affected Property is not or was not the residence of a particular claimant, then the claimant does not meet the definition of the

---

[1] The Knauf Defendants are: Knauf Plasterboard (Tianjin) Co., Ltd., Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH, Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda., and PT Knauf Gypsum Indonesia.

[2] All capitalized terms have the same definitions as set forth in the Knauf Class Settlement Agreement unless otherwise noted herein.

Residential Owner Subclass. These claimants should, therefore, not receive the Lump Sum Payment, though the Knauf Defendants have offered a compromise of 70% of the Lump Sum Payment.

## I.     The Second Prong: "Reside or Have Resided"

The Knauf Class Settlement Agreement requires that Class Members "reside or have resided"[3] in Affected Property in order to be included in the Residential Owner Subclass. This requirement secures a Lump Sum Payment for owners whose primary residences are Affected Properties. The Plaintiffs' Steering Committee, in its response to the Motion to Construe [Rec. Doc. 17631], acknowledges that "no discussions took place regarding Lump Sum Payments for vacant, secondary residence or a vacation property" in negotiating the Knauf Class Settlement Agreement.

Vacant, secondary, and vacation properties are Commercial Properties under the Knauf Class Settlement Agreement as these properties are not the residences of the various claimants and can be sold, rented, and otherwise disposed of at will without the owners incurring alternative living expenses.

Some owners who have never stayed a night in their Affected Properties seek to rewrite the Knauf Class Settlement Agreement to eliminate the second prong that requires them to "reside or have resided." Allowing some claimants to meet the "reside or have resided" prong with a statement of their future intentions is rewriting the Knauf Class Settlement Agreement.

The opponents to the motion are truly seeking preferential treatment for a small group of property owners insofar as an owner of a vacant, secondary, or vacation home just doesn't incur

---

[3] See Section 1.1.2.1 of Knauf Class Settlement Agreement

the same expenses as the owner of a primary residence when his property is remediated; most notably, alternative living expenses are not incurred while the home is undergoing remediation. Not surprisingly, with the exception of the Silvermans, who never moved into their Affected Property, opponents to the motion have offered no proof that they incurred alternative living expenses during remediation of vacant, second, and vacation properties.

## II.    "$3.50 Per Square Foot"

The Knauf Class Settlement Agreement provides further evidence to support the Knauf Defendants' position that the Lump Sum Payment is meant for primary residences only. Section 4.3.3 demonstrates that the majority of the Lump Sum Payment amount is allocated for alternative living expenses – an expense that is not incurred for vacant, secondary, and vacation properties. If the Lump Sum Payment were also meant for vacant, secondary, and vacation properties, then a reduced Lump Sum Payment would have been written into the Knauf Class Settlement Agreement as it was for Option 3 Cash-Out properties.

For Residential Owners who select the Cash-Out Option, "the Remediation Fund will pay the KPT Property Owner a reduced Lump Sum Payment of $3.50 per square foot under Section 4.3.1.1 *because the KPT Property Owner will not incur alternative living expenses.*" (emphasis added). This validates the Knauf Defendants' position that the Lump Sum Payment is warranted only when alternative living expenses are incurred, that is when the Affected Property is a primary residence.

## III.    Different Treatment of Claims Already Processed

The argument is made, in opposition to the Motion to Construe, that the Lump Sum Eligibility Form was not previously required and that many earlier claimants were treated

3

differently because they received Lump Sum Payments for vacant, secondary, and vacation properties. The Knauf Defendants should not be penalized for providing benefits to Class Members prior to final approval and should not be penalized for some alleged small number of claimants that slipped through the cracks before the establishment of the full administrative process. This Court and the parties will recall that in the early days of the Pilot Program and Knauf Class Settlement, priority was given to hardship cases; cases where homeowners were living in trailers or crammed in with relatives. The early focus was not on second and vacation properties but on hardship cases, and the Knauf Defendants should not be penalized for recognizing this priority.

## IV.     Conclusion

The Knauf Defendants continue to implement the Knauf Class Settlement Agreement in good faith. The claimants here are trying to overreach, although they bear the burden of proving membership in their corresponding subclasses.[4] Instead of proving that they are in the Residential Owner Subclass, the claimants seek to write part of the Residential Owner definition out of the Knauf Class Settlement Agreement. They seek to receive the full Lump Sum Payment, including the majority of it that is for alternative living expenses, for properties that are not their residences. No claimant in opposition has proved they meet both prongs of the Residential Owner definition.

Penalizing Knauf for paying earlier processed claims the Lump Sum Payment for vacant, secondary, and vacation properties sets the wrong precedent and stands public policy on its head.

---

[4] See Fed. R. Civ. P. 23(c)(5) and *Feder v. Electronic Data Systems Corp.*, (La. App. 5 Cir. 9/25/07), 248 Fed.Appx. 579.

The claimants pushing for these benefits would create unfairness and a windfall for non-Residential Owners, who do not incur the expenses associated with Residential properties.

The Knauf Defendants offered and continue to offer a compromise solution, which, based on the Cash-Out Option, is very generous. Instead of the 41% and 35% Lump Sum Payments that Section 4.3.3 calls for, the Knauf Defendants have offered 70% even though it is the Knauf Defendants' position that these are not Residential Owners under the Knauf Class Settlement Agreement.

In effect, the biggest difference between Commercial and Residential Owners under the Settlement is that Residential Owners receive reimbursement for alternative living expenses, which is the bulk of the Lump Sum Payment. The opponents here wish to secure alternative living expenses for claimants that did not incur those costs and whom should be designated as Commercial Owners.

Respectfully submitted,

BY:  /s/ Kerry J. Miller
KERRY J. MILLER (#24562)
KYLE A. SPAULDING (#29000)
**FRILOT L.L.C.**
1100 Poydras Street, Suite 3700
New Orleans, LA 70163
Telephone: (504)599-8194
Facsimile: (504)599-8145
Email: kmiller@frilot.com

## <u>CERTIFICATE</u>

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, and to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the

5

foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 15th day of May, 2014.

/s/ Kerry J. Miller