UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | ) | MDL No. 2047 |
| DRYWALL PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | SECTION "L" |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | JUDGE FALLON |
| | ) | |
| | ) | MAG. JUDGE WILKINSON |
| *All cases* | ) | |
| | ) | |
| _____ | ) | |

## JASON SANTIAGO'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO COMPEL KNAUF TO PAY HIS SELF-REMEDIATION CLAIM IN FULL PER SETTLEMENT AGREEMENT

Plaintiff Jason Santiago (hereinafter "Claimant" or "Santiago"), by and through undersigned counsel, hereby files his Memorandum of Law in Support of His Motion to Compel Knauf to pay his Self-Remediation Claim In Full per Settlement Agreements. As grounds, Claimant states as follows:

### SUMMARY OF ARGUMENT

Knauf has breached the Settlement Agreement by failing to pay Santiago's Self-Remediation Claim in full.  Santiago submitted his Contractor's bid of $95,111 to Knauf. Knauf accepted Santiago's bid. Because Santiago was a class member in a related settlement, the Harrell Class Action, some of Santiago's recovery from Knauf had to be assigned to third parties, setoff and subject to a reduction.

After Knauf accepted the $95,111 bid, Undersigned Counsel was advised through Brown Greer that Santiago's Contractor's bid needed to be underlined increased to $125,690.42. Accordingly, Santiago relied on Knauf and had his Contractor's bid increased from $95,111 to $125,690.42 and entered into a binding contract with his Contractor in the amount of $125,690.42. The increased bid of $125,690.42 was submitted to Knauf and accepted by Knauf. Even after the increase to $125,690.42, Undersigned Counsel advised Knauf of the need to reduce the $125,690.42 due to the

Harrell Class Action. Nonetheless, Knauf had Brown Greer issue the first installment of the $125,690.42 to Santiago's contractor. After the payment of the first installment, Knauf realized its error and unilaterally reduced the second installment due to Santiago's Contractor. Understandably, Santiago's Contractor refused to do any further work because of the underpayment.

It was only _after_ Mr. Santiago had his Contractor's bid increased, entered into a higher binding contract with his Contractor that he was personally liable for, and his Contractor received the first installment payment that Knauf realized its error. Now, Knauf refuses to pay Santiago's full Self-Remediation Claim amount of $125,690.42, despite it having made Santiago increase his Contractor's bid amount from $95,111 to $125,690.42. Knauf only wants to pay $87,806.86; therefore, Knauf is in breach of the Settlement Agreement.

Santiago reasonably and justifiably relied on Knauf's express promises to pay the Self-Remediation Claim as detailed in the Knauf Settlement Agreement and the Release and Rider signed by Santiago, to Santiago's detriment. Knauf's breach of contract and the doctrines of detrimental reliance, promissory estoppel and equitable estoppel also apply for the Court to require Knauf to live up to its promises and pay the Claim in full. The Court has the equitable power to require Knauf to pay Santiago's Self-Remediation Claim in full, and should use that power to compel Knauf to pay the Claim in full.

## FACTUAL SUMMARY

Claimant owned a home containing defective KPT drywall and is a Class Member in the Knauf Settlement. Claimant was also a member of the Harrell Settlement Class, certified by Judge Farina in Miami-Dade County.  Santiago, notwithstanding his Claim against Knauf, made a cash recovery under the Harrell Settlement. Under the express terms of the Knauf Settlement Agreement, Claimant chose to Self-Remediate his property under the Knauf Settlement Agreement with a set-off amount to Knauf and fees under the Harrell Class Action settlement.  The terms of this option under the Knauf Settlement Agreement required extensive documentation and evidentiary support

2

before the Self-Remediation Claim could be paid, each of which were complied with by Santiago with meticulous care.  Knauf now refuses to pay Santiago's Self-Remediation Claim in full, despite being responsible for having Santiago increase his Contractor's bid and making Santiago responsible for a higher construction cost amount.

Undersigned Counsel wrote to Knauf and the Settlement Administrator on several occasions to confirm that amount requested incorporated the assignment and fee requirements of the Harrell Settlement. Santiago complied and resubmitted the bid.  The executed and effective Rider to the Release confirming Knauf's promise to pay and Claimant's willingness to settle indicated that it would cost $125,690.42 to fully remediate Claimant's home. (Exhibit "A").  A signed and executed Contract with Claimant's Contractor indicating this amount was delivered to Brown Greer and Knauf concurrently with the Release. (Exhibit  "B"). Brown Greer and presumably Knauf received the newly executed and increased contract amount on or about November 12, 2013. Undersigned Counsel even advised Knauf after the submission of the $125,690.42 Rider that the amount needed to be adjusted down. (Exhibit "F").

The process for payment of the Self-Remediation option under the settlement is a series of four "Milestone" payments. Claimant's Contractor is directly paid 30%, then 30%, then 30%, followed by a final payment of 10% of the contracted amount. Santiago does not receive the funds. The funds go directly to the Contractor.  This process was developed so that construction would continue through completion without any funding issues between the homeowner and the contractor.  Unfortunately, this type of funding issue is precisely what has happened to Santiago.

While the first Milestone was paid in full ($37,707.13) based on the $125,690.42 that Knauf agreed to and was contractually bound to pay, the second Milestone was not paid in full. Rather, the second Milestone was re-labeled an "Adjusted Payment" in the amount of $14,976.99.  After the first Milestone had been paid, and well after construction agreements were executed reflecting the contracted amount of $125,690.42, Brown Greer and/or Knauf realized an error in the Claim's calculation, leaving Santiago unable to pay his Contractor on time and in full based on the $125,690.42 contracted amount.  On or about March 17, 2014, construction was

halted on Mr. Santiago's home, leaving him with a gutted and unlivable home because the Contractor did not receive payment for the second Milestone in full from Knauf.

## FACTUAL CHRONOLOGY

1. **May 31, 2012** – Claimant's Counsel advised Knauf Counsel that several Harrell Class Members, including Jason Santiago, wanted to proceed with Knauf Settlement Options. (Exhibit "C").

2. **December 14, 2012** - Order of Final Approval of Settlement with Knauf granted in Harrell.

3. **July 30, 2013** – Original Release Rider Submitted for Santiago, indicating that Knauf will fund up to $99,122.42 of the remediation costs. (Exhibit "D").

4. **October 9, 2013** – Brown Greer instructs Claimant's Counsel to change Santiago's Release Rider to Self-Remediation to an FCE amount of $125,690.42, as follows:

   "Rider to Self-Remediation: Section IV of the Rider needs to have the FCE of $125,690.42."

   (Exhibit "E") (emphasis supplied).

5. **November 12, 2013,** Santiago's Release Rider to Self-Remediation to an FCE amount of $125,690.42 is signed by Santiago and his contractor. (Exhibit "A").

6. **December 11, 2013** –Brown Greer and Knauf again advised that Jason Santiago is a Class Member in the Harrell Settlement and that a reduction needs to be made. Specifically, via Email, Knauf and Brown Greer were informed: "Please note that this claimant is part of the Harrell Settlement. Because of this, an assignment of third party contribution is required in the amount of $28,404.00. Please make sure that Mr. Santiago's funds are reduced to reflect the required contribution prior to the transfer of any funds to his contractor." (Exhibit "F").

7. **February 5, 2014** – Brown Greer issues first Milestone payment to Jason Santiago's contractor. (Exhibit "G").

8. **February 5, 2014** – Claimant's Counsel Email to Brown Greer and Knauf's Counsel requesting confirmation that the payment was issued in compliance with the terms of the Harrell Settlement. (Exhibit "H").

9. **March 5, 2014** – Knauf's Counsel advises Brown Greer to deduct Claimant's future Milestone payments.  (Exhibit "I").

10. **April 21, 2014 –** Brown Greer indicates the correct amount to be paid to Claimant's Contractor is $87,806.86, rather than the amount stated in the Release. (Exhibit "J").

11. **April 29, 2014** –Knauf refuses to pay Santiago's contractor the agreed to and full contracted amount of $125,690.42.

## <u>MEMORANDUM OF LAW</u>

The Court has the power to remedy Knauf's breach of the Settlement Agreement and Release Rider to Self-Remediation and to enforce Knauf's promises to pay Santiago's Self-Remediation Claim in full. The equities clearly favor Santiago. The Court is well aware of the difficulties that owning a home with Chinese drywall creates for homeowners. Claimant does not have the financial ability to make up the gap between the contracted amount of $125,690.42 that Knauf agreed to and the $87,806.86 amount that Knauf now want sto pay. Santiago moved out of the Chinese drywall infected home while remediation was underway, and can no longer live in his gutted home because of Knauf's broken promises.

Santiago complied with the Knauf Settlement Agreement's requirement, and secured promises from Knauf it would pay the Self-Remediation Claim in full.  These promises by Knauf are both in the Settlement Agreement itself and the Release Rider to Self-Remediation. (Exhibit "K").  Further promises were made directly by Knauf and Brown Greer. From the outset, Santiago's Claim was timely submitted and all required documentation was provided to Brown Greer and Knauf.  This fact is not in dispute.

Knauf now seeks to renege on its promises.  Quite simply, Knauf seeks to benefit from its error, in contrast to Santiago, who justifiably relied on Knauf. Santiago will not receive any of the payments for the Self-Remediation option. Full payment of the claim is not a windfall to Santiago, the funds go directly to the Contractor.

**A. <u>Knauf breached the Settlement Agreement and Rider.</u>**

Knauf breached the Settlement Agreement by refusing to pay the contracted amount agreed to, $125,690.42. The Claim presented by Jason Santiago is simple on its face.  When an original release was signed by Claimant and Knauf for an estimated remediation cost of $99,122.42, upon information and belief it was Knauf via Brown Greer that noted an error. (Exhibit "D"). Asked to provide another release for execution in a higher amount, Claimant simply did what was asked of him and supplemented the release to include a higher remediation cost of $125,690.42. (Exhibit "A"). This fact is undisputed, and importantly, that higher amount was provided by Brown Greer, presumably via Knauf and with Knauf's authority, rather than the Claimant.

The Release included a required Rider, indicating the estimated contracted cost of the remediation.  Brown Greer required a second Rider to be submitted with a higher estimated cost of remediation, assumingly at the direction of Knauf.  The second executed Rider replaced the first executed Rider in its entirety.  With the signatures of both the Claimant and his Contractor, this Rider became effective and governs the allocation of funds under the Settlement Agreement. Pursuant to Brown Greer's request to alter the Rider, Mr. Santiago bound himself to pay a higher contract amount to his general contractor based on his understanding that Knauf would pay the entirety of the amount.  Upon information and belief, Knauf not only had an opportunity to review any claim prior to issuing funding to Brown Greer for payment, but it must also approve it.  Under the terms of this Release and associated Rider, Santiago remains entitled to the full Self-

Remediation Claim of $125,690.42, minus what has been paid in the first and second Milestone Payments.

Knauf entered into an enforceable contract with Claimant when it signed and executed the Release. (Exhibit "K"). The amount that Knauf settled for is $125,690.42. Knauf disagrees with this assessment now, but Claimant is entitled to the full amount and Knauf is in breach of this Agreement, through the Release and associated Rider.  There has been no other Release or Rider signed or executed, nor any legal challenge to the effective nature of the Release or Rider that continues to bind Claimant and Knauf.

> The executed Rider is part of the larger Release, and confirms the amount in question:
>
> Contractor and Owner acknowledge that pursuant to Section 4.3.2 of the Class Settlement Agreement, the <u>Knauf Defendants (as that term is defined in Section 1.1.l of the Class Settlement Agreement) have agreed to fund up to $125,690.42 of the cost</u> to complete the Repair Work (the "Knauf Payment") provided such work is in accordance with the Repair Work described in Paragraph III(A) above.
>
> (Emphasis supplied) (Exhibit "A").

The same Rider also includes express instructions to Knauf:

> All payments from the Knauf  Defendants shall be in accordance with the payment schedule outlined in Section 4.3.2 of the Class Settlement Agreement. Before any such scheduled payments are made, Contractor shall provide all necessary materials, described in the Contractor Milestone Payment Requirements Form (attached as Exhibit 3), for receipt of such scheduled payment, to Owner. Owner shall ensure that such materials are provided to the Settlement Administrator, as that term is defined in Section 1.67 of the Class Settlement Agreement. Contractor and Client acknowledge that only if the Settlement Administrator approves such materials as complete and sufficient, shall such scheduled payment be made to Contractor.
>
> (*Id.*).

That Rider references Section 4.3.2 of the Class Settlement Agreement.  Importantly, that section of the Settlement Agreement requires Knauf to "pay the KPT Property Owner's chosen contractor an amount equal to the higher of the Final Cost Estimate prepared by the Lead Contactor." See Property Information Sheet attached hereto as Exhibit "L."   This is precisely what

happened in this case. The Claimant submitted the Contractor's bid of $125,690.42 to Brown Greer, at Brown Greer's direction and presumably at Knauf's request or authorization. Under the terms of both the Settlement Agreement and the Release and Rider, Knauf is obligated to pay the full Self-Remediation Claim contracted for in the amount of $125,690.42 under the agreed payment schedule.

On April 21, 2014, Knauf unilaterally decided to change the settlement amount to $87,806.86, based on its error. Knauf's actions are based on its own failure to confirm the designated Self-Remediation value for Mr. Santiago, despite receiving numerous requests from Undersigned Counsel that they do so **prior** to disbursement of any funds. These new calculations were based on the impacts of payments under the Harrell settlement. Considering Knauf Defendants has been involved at every turn in this litigation and the Harrell Settlement, Knauf knew of the Harrell Settlement and the implications therein.

This change in calculations happened after the Release was executed and the first Milestone payment was made. The failure to pay the full amount of the second Milestone breaches not only the Release, but the entire Settlement Agreement, and Knauf should be compelled to pay the full second, third and fourth Milestones based on the amount agreed to in the executed release.

Santiago made this Self-Remediation Claim based on the rules imposed by Knauf and Brown Greer. Santiago followed the rules. Knauf has breached the Settlement Agreement and the Release with the associated Rider. The Claim was made in good faith, and each aspect of the Claim procedure was followed. The amount now contested by Knauf is the very number that Brown Greer provided and Knauf approved. Santiago relied on this amount, and now, due to the lack of payment based on this amount, construction has stopped on his home just after demolition, and Santiago cannot live in his home.

**B. The doctrines of detrimental reliance, promissory estoppel and equitable estoppel permit the Court to enforce Knauf's promises to pay Santiago's Self-Remediation Claim.**

The doctrines of detrimental reliance, promissory estoppel and equitable estoppel require

Knauf to fulfill its promises to pay Santiago's Self-Remediation Claim. As explained under

Louisiana law:

> The Roman maxim *venire contra factum proprium non valet,* which means 'no one can contradict his own act' or 'no one is allowed to go against the consequences of his own act' was founded on the notion that 'it is not licit to enforce a right in contradiction to one's previous conduct, when that conduct, interpreted in good faith, would justify the conclusion that the right does not exist or will not be enforced.' This civilian maxim is similar to that of equitable estoppel and has been applied in Louisiana jurisprudence. The civilian doctrine of *culpa in contrahendo*, which means "fault in contracting," performs a function similar to that of promissory estoppel and has also been applied in Louisiana jurisprudence. This civilian maxim is similar to that of equitable estoppel and has been applied in Louisiana jurisprudence. The civilian doctrine of *culpa in contrahendo*, which means "fault in contracting," performs a function similar to that of promissory estoppel and has also been applied in Louisiana jurisprudence.

*Bains v. Young Men's Christian Ass'n of Greater New Orleans*, 969 So. 2d 646, 650 (La.App. 4th Cir. 2007) (internal citations omitted).

Detrimental reliance is a legal theory that is a general part of Louisiana's Civil Law and

"springs forth from the idea that in a civil society people should keep their word." *Id.* The

elements of detrimental reliance are: (1) a representation by word or conduct; (2)

justifiable/reasonable reliance; and (3) a change in position to one's detriment because of the

reliance. *Id.* "Detrimental reliance," also known as "equitable estoppel," prevents a party from

reneging or taking a position contrary to his prior acts, admissions, representations, or silence.

*Moroux v. Toce*, 943 So.2d 1263 (La.App.3d Cir.2006).   A cause of action for detrimental

reliance does not depend upon existence of valid, enforceable contract; rather existence of

promise and reasonable reliance on that promise to one's detriment are the only requirements. *Percy J. Matherne Contractor, Inc. v. Grinnell Fire Protection Systems Co.*, 915 F.Supp. 818 (M.D.La.1995). Detrimental reliance has also been codified under Louisiana Civil Code Art. 1967.[2] All elements of detrimental reliance have been met in order for the Court to enforce Knauf's promises to pay Santiago's Self-Remediation Claim

### i. <u>Knauf made a representation by word or conduct it would pay Santiago's Self-Remediation Claim.</u>

"A representation by word" was made by Knauf on October 9, 2013 that it would pay the Self-Remediation Claim in the amount of $125,690.42. The executed Rider to the Release expressly states:

> "Contractor and Owner acknowledge that pursuant to Section 4.3.2 of the Class Settlement Agreement, the <u>Knauf Defendants (as that term is defined in Section 1.1.1 of the Class Settlement Agreement) have agreed to fund up to $125,690.42</u> of the cost to complete the Repair Work (the "Knauf Payment") provided such work is in accordance with the Repair Work described in Paragraph III(A) above."

(Exhibit "A")(emphasis supplied). This amount was not the Claimant's, nor the Claimant's Contractor, but upon information and belief came from Knauf via the Settlement Administrator. Specifically, on October 9, 2013, Brown Greer wrote to Undersigned Counsel:

> "Rider to Self-Remediation: Section IV of the Rider <u>needs</u> to have the FCE of $125,690.42."

---

[2] Louisiana Civil Code Art. 1967 provides as follows:

Cause is the reason why a party obligates himself.

A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

(Exhibit "E") (emphasis supplied).

Pursuant to that instruction, the Rider to the Release was changed to reflect the $125,690.42 amount, and the Release was signed.  Accordingly, Claimant meets the first element of detrimental reliance because of Knauf's representation by word it would pay the Self-Remediation Claim for the amount detailed in the effective Release.

### ii.  Santiago's reliance on Knauf's promises was justifiable and reasonable.

Santiago's reliance on Knauf's promises to pay the Self-Remediation Claim was both justifiable and reasonable. Courts generally look to whether reliance was reasonable under the circumstances by examining the factual circumstances; including the negotiations and/or documents the party relied upon. See *Water Craft Management, L.L.C. v. Mercury Marine,* 361 F.Supp.2d 518 (M.D.La.2004).

Santiago followed every rule established by the Settlement Administrator and Knauf.  At no time was Claimant aware that there was an error in the calculations.  In fact, the original Release and Rider included a lower amount and Claimant only requested the higher amount after being told it "needed" the change.  Knauf, through the Settlement Agreement, Release and Rider promised to pay the Self-Remediation Claim in the amount of $125,690.42.

It was reasonable for Santiago to rely upon Knauf's promises. Moreover, it was reasonable for Santiago to rely upon the Brown Greer requirement to increase the Contractor's payment when the Release was signed and executed on November 11, 2013 and the abrupt change by Knauf in the amount of funding was not made until March 5, 2014 and demolition in the home was done.

### iii.  Santiago detrimentally changed his position relying upon Knauf's promises to pay the Self-Remediation Claim.

From the outset, Santiago relied upon the Knauf Settlement Agreement as the basis for the Self-Remediation Claim. After initially submitting a bid amount of $99,122.42 by the Contractor and then being instructed to increase the amount payable to the Contractor in the Release to $125,690.42, a new contract between Santiago and his contractor was executed to reflect this higher amount. (Exhibit "B").  Santiago's change in position based on Knauf's promise to pay $125,690.42 put him in a precarious position.   Entering the revised contract with the Contractor, Santiago changed position so dramatically that he increased his personal obligation to the Contractor, and now, as a result of Knauf's failure to pay, work has stopped on the remediation of his home and additional expenses continue to arise.  Without Knauf's and Brown Greer's promises to pay the $125,690.42 amount, the Contract between Santiago and his contractor would not have been changed to reflect this higher amount, and the affected home would likely be fully remediated at this time.

All three elements of detrimental reliance, equitable estoppel and the promissory estoppel doctrines have been met under Louisiana law requiring payment of Santiago's Self-Remediation Claim by Knauf in the full amount of $125,690.42, minus payments already made by Knauf.

## CONCLUSION

Knauf breached the Settlement Agreement by refusing to pay the full amount of $125,690.42 to Santiago's contractor. Knauf should be made to live up to its promises and not benefit from its error in approving Santiago's Self-Remediation Claim. The Court also has the equitable power to require Knauf to pay Santiago's Self-Remediation Claim. All equities favor the Claimant. The rules and procedures under the Settlement Agreement were all complied with, and Claimant should recover the $125,690.42 based on the Settlement Agreement, Rider and the promises made by Knauf. Moreover, the legal doctrines of detrimental reliance, promissory

estoppel and equitable estoppel were met by the Claimant so that the Court should require Knauf Defendants to live up to its promises.

WHEREFORE, for the above reasons, Claimant respectfully requests this Honorable Court enter an Order requiring Knauf to pay the full amount due to the Claimant's contractor of $125,690.42 minus payments already made by Knauf.

Respectfully Submitted,

/s/ Patrick S. Montoya
ERVIN A. GONZALEZ, ESQ. (#500720)
PATRICK S. MONTOYA, ESQ. (#524441)
COLSON HICKS EIDSON
COLSON MATTHEWS MARTINEZ
GONZALEZ KALBAC & KANE
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax:    (305) 476-7444
*Counsel for Claimant*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail, or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 30th day of May, 2014.

/s/ Patrick S. Montoya