# EXHIBIT A

**Rider to Self-Remediation Contract Pursuant to the
Settlement Agreement Regarding
Claims against the Knauf Defendants in MDL No. 2047**

Contractor _Cali Greens Construction, Inc_

Owner _Jason Santiago_

Property _2140 SE 19 Ave. Homestead, FL_

Contractor and Owner hereby agree as follows:

I. **Scope of Rider**

  A. Notwithstanding any merger clause in the _7/30/13_ [Date] contract between Contractor and Owner (the "Contract"), Contractor and Owner expressly incorporate this Rider into the Contract.

  B. To the extent that this Rider to the Contract is in conflict with the Contract, this Rider shall control.

II. **Incorporation of Class Settlement Agreement**

  A. Contractor and Owner have had an opportunity to review, and Contractor and Owner understand, the terms of the Settlement Agreement Regarding Claims against the Knauf Defendants in MDL No. 2047 (the "Class Settlement Agreement").

  B. Contractor and Owner acknowledge, incorporate and adopt the terms of the Class Settlement Agreement, including, but not limited to Section 4.3.2.3, into the terms of the Contract.

III. **Repair Work**

  A. The repair (*i.e.*, remediation) work at the Property, which Contractor agrees to perform, is described generally in the Remediation Protocol (attached as Exhibit F to the Class Settlement Agreement and attached to this Rider as Exhibit 1), and specifically in the Schedule of Work created by Moss & Associates, LLC, the Lead Contractor under the Class Settlement Agreement (attached as Exhibit 2). Together this shall be referred to as the Repair Work.

  B. If, at any time, there are contradictions between the Remediation Protocol and the Schedule of Work, the Remediation Protocol shall control.

1

IV. **Payments to Contractor**

  A. Contractor and Owner acknowledge that pursuant to Section 4.3.2 of the Class Settlement Agreement, the Knauf Defendants (as that term is defined in Section 1.1.1 of the Class Settlement Agreement) have agreed to fund up to $ _125,690.42_ of the cost to complete the Repair Work (the "Knauf Payment") provided such work is in accordance with the Repair Work described in Paragraph III(A) above.

  B. The Knauf Defendants shall have no obligations beyond the Knauf Payment. To the extent that the cost of the Repair Work exceeds the Knauf Payment, Owner shall be responsible for all additional moneys owed to Contractor.

  C. All payments from the Knauf Defendants shall be in accordance with the payment schedule outlined in Section 4.3.2 of the Class Settlement Agreement. Before any such scheduled payments are made, Contractor shall provided all necessary materials, described in the Contractor Milestone Payment Requirements Form (attached as Exhibit 3), for receipt of such scheduled payment, to Owner. Owner shall ensure that such materials are provided to the Settlement Administrator, as that term is defined in Section 1.67 of the Class Settlement Agreement. Contractor and Client acknowledge that only if the Settlement Administrator approves such materials as complete and sufficient, shall such scheduled payment be made to Contractor.

V. **Contractor Representations**

  A. Contractor is licensed for residential construction.

  B. Contractor is insured for residential construction.

_Jerry Joseph_  11-12-13
Contractor                Date

_Jason R. Saintz_  11-12-13
Owner                     Date

2

Exhibit F

REMEDIATION PROTOCOL

I.  Scope of Work

The remediation work to be performed in a KPT Property is described generally below. In conducting the remediation work and in resolving any disputes pursuant to the dispute resolution process in the Settlement Agreement (reprinted in Paragraph V below), the KPT Property Owner and Lead Contractor or Other Assigned Contractor agree that the objective of the remediation work is to remove on a cost effective basis all drywall, problem drywall-related odors, and contamination, including, but not limited to, corrosion, tarnishing and pitting ("Contamination"); and to leave the KPT Property with the same construction quality and finishes, including remediating any damage to such quality and finishes that was caused by the drywall, as existed prior to the start of the remediation work.

A.  **Drywall Removal.** Removing and replacing all drywall in the home, including ceilings, with the exception of the following materials unless removal of such materials is required in order to complete the Remediation Work pursuant to this Scope of Work:

   1. Type X fire rated board
   2. Thicknesses other than ½"
   3. Moisture Resistant Drywall ("Green board")
   4. Sag Resistant Gypsum Board
   5. Tile Backer Board

B.  **Electrical Wiring.** Remove and replace all electrical wiring (including low-voltage wiring), switches, service panels, circuit breakers, receptacles, and all Contaminated circuit boards.

C.  **Fire Safety and Home Security Equipment.** Remove and replace all fire safety equipment, including security alarms, intercoms, smoke detectors, fire suppression sprinkler systems, and carbon monoxide alarms.

D.  **Copper gas lines.** Replace all copper gas lines and fittings. All other gas lines and fittings will be inspected for Contamination and replaced if Contamination is found.

E.  **Fixtures.** Remove, store and reinstall the following to the extent such fixtures interfere with the removal of the drywall as described in Paragraph A. Otherwise, such fixtures will remain in place with suitable protection. In the event of any

Contamination to such fixtures caused by the possible problem drywall or damage from the drywall removal and replacement, such fixtures will be replaced.[1]

1. Hot water heaters
2. Cabinets
3. Countertops
4. Doors
5. Moldings and trim as required to remove drywall as described in Paragraph A
6. Sinks
7. Toilets
8. Bathtubs, shower enclosures
9. Mirrors
10. Lighting fixtures
11. Ceiling fans
12. Plumbing fixtures
13. Exhaust Grills and Diffusers
14. Marble, granite and other natural-stone pieces
15. Doors and attached door hardware

F. **Dust Control and Removal.** Remove the drywall using methods for dust control routinely used in drywall renovation projects.

1. These control methods typically include installation of drop cloths and walk-off mats, negative pressurization of work area with exhaust fans, and cleanup of dust and debris.
2. Following the removal of all drywall as described in Paragraph A, sweep all bulk debris and remove from site.
3. Following the sweeping, vacuum all surfaces including wall cavities using vacuums equipped with drywall bags and/or, where appropriate or

---

[1] In the event that equipment, appliances or fixtures need replacement, the replacement will be with new equipment, appliances or fixtures and not with reconditioned ones.

     necessary, HEPA (high efficiency particulate air) filters, to remove
     drywall dust.

   4. Damp wipe all surfaces with water.

   5. As a final step, use Odorox® hydroxyl generators to resolve any residual indoor air problems.

G. HVAC. The following HVAC repairs will be performed by a manufacturer-qualified firm, but if such firm is not available, by a licensed HVAC technician.

   1. Remove and replace all air handler units, including the coils.

   2. Remove and replace all line sets.

   3. Replace thermostats in affected areas and control boards in affected air handling units; and otherwise clean and/or replace as needed the air handler.

   4. Replace over limit controls on electric heating coils in affected units.

   5. Remove and replace the flexible duct work.

   6. Inspect and clean the metal duct work.

   7. Remove and replace all other damaged HVAC system components.

H. Insulation. Remove and replace porous insulation and repair or replace as necessary non-porous insulation in direct contact with the drywall to be removed.

   1. Porous Insulation

     a) Fiber glass insulation

     b) Cellulose insulation

     c) Open cell foam insulation

   2. Non-Porous Insulation

     a) Closed cell foam insulation

     b) Reflective insulation

I. Carpet and Flooring. Remove and replace all carpet, carpet padding, laminate flooring and laminate padding. All other flooring will remain in place and be protected during the remediation work.

J. Plumbing.

1. Remove and replace all affected plumbing components that either show discoloring or pitting on exposed components such as faucets, and handles;

2. All other piping, fittings and components to be inspected, cleaned of any Contamination, and, if functionally unaffected, remain in place.

K. **Appliances.** Appliances shall mean refrigerators, freezers, dishwashers, washers, dryers, garbage disposals, wine coolers, ice machines, microwaves, cooktops, ovens, ranges and warming drawers.

1. For KPT Properties that are less than or equal to 3,500 square feet "under air," as determined by the Lead Contractor or Other Approved Contractor ("Under Air Area") and as set forth in the attached Sample Contractor-KPT Property Owner Agreement, remove and replace refrigerators and freezers located in the kitchen, wine coolers, ice machines, microwaves, cooktops and ovens. All other Appliances, including secondary and auxiliary refrigerators and freezers, shall be removed and replaced where the performance or appearance is compromised, for example, where there is Contamination.

2. For KPT Properties that have an Under Air Area greater than 3,500 square feet, all Appliances shall be removed and replaced where the performance or appearance is compromised.

L. **Items not Replaced.** Building materials, building systems, fixtures and Appliances that will be removed and reinstalled shall be placed in storage. Building materials, building systems, fixtures and Appliances that will be retained in place will be protected during the remediation work. Any Building materials, building systems, fixtures or Appliances that are retained, but damaged during the remediation work, will be restored to the condition that existed prior to the start of the remediation work, and where necessary, replaced.

M. **Finishing.** Finish and paint all new drywall using a primer and two coats of paint of the same color and finish (e.g. flat, eggshell, satin, semi-gloss, and glossy).

N. **Final Cleaning.** Clean the Home to pre-repair condition, which will be documented prior to the start of the remediation work.

O. **Documentation and Preservation.** In the course of remediation, the contractor will fully document the remediation work using photographic and other documentation methods, including but not limited to identification of the manufacturer and condition of the possible problem drywall on a room by room, wall by wall and board by board basis. At the option and sole expense of KPT, all possible problem drywall and fixtures, wiring, fire safety equipment, plumbing, wiring, carpets, and appliances or other items removed from the home will be maintained for scientific analysis.

P. Government Agency Access. Relevant government agencies, including but not limited to the Consumer Product Safety Commission, will be allowed to observe the remediation work and given access to the documentation materials and items described in Paragraph I (O).

II. Form of Agreement between Contractor and KPT Property Owner

The agreement by which the Lead Contractor, or Other Approved Contractor, will perform the remediation work in the KPT Property shall take the form of the attached Sample Agreement between Contractor and KPT Property Owner.

III. Contractor and Environmental Certification

A. After completion of the Drywall Removal and Dust Control and Removal pursuant to Paragraphs I (A) and (F) above, the Lead Contractor or Other Approved Contractor will provide the Settlement Administrator and KPT Property Owner with a Contractor Certification substantially in the form of Exhibit 6 to the attached Sample Agreement between Contractor and KPT Property Owner.

B. After receiving the Contractor Certification, the Settlement Administrator will assign an environmental inspector to certify the absence in the KPT Property of any remaining problem drywall-associated odors and contamination, including, but not limited to, corrosion, tarnishing, and pitting.

1. If the environmental inspector concludes the KPT Property is free of any and all KPT Chinese Drywall and Non KPT Chinese Drywall ("Problem Drywall") associated odors and contamination, the environmental inspector will provide an Environmental Certificate (in the form attached as Exhibit B to the Settlement Agreement) to the Settlement Administrator and the KPT Property Owner certifying that the home is free of any and all Problem Drywall-associated odors and contamination.

2. If the Environmental Inspector concludes the KPT Property is not free of any and all Problem-Drywall associated odors and contamination, the Lead Contractor, or Other Approved Contractor, will continue to remediate any issues identified by the environmental inspector until such time that the environmental inspector concludes the KPT Property is free of any and all Problem-Drywall associated odors and contamination, in which case the environmental inspector will provide the Environmental Certificate as specified in the above subparagraph II (B) (1).

C. The KPT Property Owner and/or his counsel, upon sufficient notice, shall have the right to be present, but not to interfere with, any environmental inspection by the environmental inspector, and to videotape, or otherwise make a record of, such inspection. The costs of the environmental inspector will be paid by the Remediation Fund.

IV. Warranty

    A. The Lead Contractor, or Other Approved Contractor, will provide the KPT Property Owner with a warranty substantially in the form of the warranty provided for in the attached Sample Agreement between Contractor and KPT Property Owner.

    B. If Lead Contractor, or Other Approved Contractor, does not perform, or is unable to perform, work required by the warranty described in subparagraph IV (A), the Remediation Fund will assume responsibility for procuring substitute performance under the warranty ("Guaranty of Warranty").

    C. The Lead Contractor, or Other Approved Contractor, is responsible for satisfaction of all material and labor liens placed on the KPT Property in connection with the remediation work.

V. Dispute Resolution (reprinted from Sections 4.5.1.2.1 and 4.5.1.2.2 of the Settlement Agreement)

    A. In the event that a dispute arises between a KPT Property Owner and the Lead Contractor or Other Approved Contractor over the Remediation Protocol for the individual KPT Property, such dispute shall be submitted to the Special Master who will resolve the dispute. The parties shall cooperate with the Special Master to resolve any disputes expeditiously and avoid, to the maximum extent possible, any delay in the remediation.

    B. Any expenses associated with a dispute between a KPT Property Owner and the Lead Contractor or Other Approved Contractor ("Mediation Expenses") as regards the Remediation Protocol, including progress and quality, and any warranties provided by the Contractor, will be jointly shared by the Knauf Defendants and the KPT Property Owner. In the event that disputes asserted by a Party, either singly or in combination, unreasonably delay the remediation or are asserted in bad faith, the Special Master may in his discretion direct that the Mediation Expenses incurred in resolving any such bad faith disputes asserted by that Party will be paid by same, regardless of whether the Special Master resolves the dispute in that Party's favor; otherwise, expenses will be shared equally by the Parties to the dispute.

VI. Ombudsmen

The KPT Property Owner shall be able to consult with an Ombudsman, as that term is defined in Section 1.42 of the Settlement Agreement, regarding matters relating to the remediation process, including, but not limited to, the actual remediation work, and, in the event that a dispute arises during the dispute resolution process described in Paragraph V above.