UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * | MDL 2047 |
| | * | SECTION "L" |
| This document relates to: *All Cases* | * | JUDGE FALLON |
| | * | MAGISTRATE JUDGE WILKINSON |

* * * * * * * * * * * * * * * * * * * * * * * * *

### ORDER AND REASONS

Pending before the Court is the Defendant Knauf's Motion to Construe the Settlement Agreement. The Court has reviewed the briefs and applicable law and now issues this order and reasons.

**I. Defendant Knauf's Motion to Construe Settlement Agreement (Rec. Doc. 17595)**

The Knauf Defendants ("Knauf") filed the present motion asking the Court to construe the Settlement Agreement to deny lump sum payments to Option 1, 2, and 3 claimants and Mixed Property Owners, Options 2 or 3, whose affected property is vacant, a secondary residence, or a vacation property. In the alternative, Knauf asks the Court to limit claims made by these classes of property owners to 70% of normal lump sum payments. (Rec. Doc. 17595 at 1). The Settlement Agreement provides for lump sum payments to claimants who are "Residential Owners," defined by the Settlement Agreement as "all members of the Class who are owners of and reside or have resided in Affected Property ('Residential Owners')." (Rec. Doc. 16407-3 at 5). Knauf argues that this definition only encompasses property that serves as a permanent home in which the claimant must dwell permanently or continuously. (Rec. Doc.

1

17595 at 1). Knauf claims that the lump sum payment is intended, at least in part, to compensate claimants for alternative living expenses and that claimants whose affected property is not their primary residence will not incur such expenses. Therefore, Knauf argues that those home owners should not be entitled to the lump sum payment. (Rec. Doc. 17595 at 2). Knauf provides exhibits, which are examples of "Lump Sum Eligibility Forms" it believes should not receive a lump sum payment. (Rec. Doc. 17595-3).

**A. The Court received five responses to this motion.**

### 1. The Plaintiffs' Steering Committee's Response (Rec. Doc. 17631)

The Plaintiffs' Steering Committee ("PSC") filed a response to Knauf's motion. According to the PSC, no discussions took place during the settlement negotiations regarding lump sum payments for vacant properties, secondary residences, or vacation properties. (Rec. Doc. 17631 at 1). The PSC insist that any money used to remediate these properties come from a source other than the capped other-loss fund. (Rec. Doc. 17631 at 1).

### 2. Plaintiffs' Counsel, Krupnick Campbell Malone's Memo in Opposition (Rec. Doc. 17658)

Counsel Krupnick Campbell Malone filed a response to Knauf's motion. Malone contends that Knauf is attempting to rewrite the settlement agreement. (Rec. Doc. 17658 at 5). Malone points out that the Settlement Agreement identifies two subclasses of property owners: 1) Residential Owners and 2) Commercial Owners. (Rec. Doc. 17658 at 3). Malone argues that the definition of the Residential Owner Subclass does not contain any restrictions on the type of residential use and does not contain a time period during which the claimant must reside at the property. (Rec. Doc. 17658 at 3).

Furthermore, Malone points out that the lump sum payment eligibility form, which mentions "vacation home" and "secondary residence," was not created and/or utilized from the

outset, but has been recently introduced. Malone argues that the late introduction of this form shows that no one at the time that the Settlement Agreement was drafted thought this information was necessary or even relevant. (Rec. Doc. 17658 at 3). Malone also emphasizes that the lump sum payment is not based on actual damages, but a compromised recovery amount. (Rec. Doc. 17658 at 4). Citing case law, Malone argues that Knauf's suggested alteration of terms could jeopardize the entire Settlement Agreement. (Rec. Doc. 17658 at 5) (citing *Chisolm ex rel. CC v. Greenstein*, 876 F. Supp. 2d 709, 716 (E.D. La. 2012)).

### 3. Individual Plaintiffs' Opposition (Rec. Doc. 17668)

Unnamed individual Plaintiffs also oppose the motion. Individual Plaintiffs explain that after the Settlement Agreement was approved by the Court, class members were given the opportunity to object or "opt-out." Individual Plaintiffs claim that while evaluating whether to participate in the settlement, they were told that if they did not fall into the "Commercial Owner Subclass" they would be considered "Residential Owners" and would be eligible to receive a lump sum payment, pursuant to Section 4.3.1.1. (Rec. Doc. 16407-3 at 17). Individual Plaintiffs claim that, to date, hundreds of claims have been processed consistent with their interpretation of the Agreement. They claim that until now, claimants whose homes are considered vacant, secondary residences, or vacation properties received the full lump sum payment. (Rec. Doc. 17668 at 3).

The individual Plaintiffs claim that Knauf is trying to re-write the Settlement Agreement. They further argue that if this Court chooses to re-write the Agreement to add a third subclass, that subclass of claimants should have the opportunity to opt-out or object to the change. (Rec. Doc. 17668 at 3).

### 4. Plaintiffs Shakira and Noah Silverman's Response in Opposition (Rec. Doc. 17671)

3

Plaintiffs Shakira and Noah Silverman filed a response in which they claim that Knauf has overlooked the unique circumstances of their case. The Silvermans explain that while they never permanently resided in their affected property, they *intended to* use it as a primary residence, and had detected the drywall before they were able to move in. The Silvermans explain that contrary to the Knauf's argument, they have incurred alternative living expenses because they were forced to renew their rental lease when they discovered the defective drywall in their home. (Rec. Doc. 17671 at 2).

> **5. Individual Plaintiffs' Opposition (Rec. Doc. 17672) (SMTM Wildcard, Ltd., Gary Palmer Sr. and Beverly Palmer; Oriole Golf & Tennis Club Condominium One E Association, Inc.; Maria Kimos and Constantine Kimos; George Manosis)**

These Plaintiffs filed a response in which they adopt and incorporate the arguments put forth by Malone. (Rec. Doc. 17672 at 2).

## B. Knauf's Reply (Rec. Doc. 17682)

Knauf reiterates that if the affected property is not the residence of the particular claimant, the claimant does not fall into the definition of the "Residential Owner Subclass." (Rec. Doc. 17682-1 at 2). Knauf denies that the Settlement Agreement is "clear" and "unambiguous." Knauf argues that because the definition is not "clear" and "unambiguous," the Court should look to other sections of the Settlement Agreement to determine the intent of the parties. Specifically, Knauf refers to section 4.3.3 of the Settlement Agreement, which pertains to claimants who select the cash-out option. Knauf points out that because these claimants will not incur alternative living expenses, they are only entitled to a reduced lump sum payment. (Rec. Doc. 17682-1 at 4). According to Knauf, this section validates its position that if the property is not a primary residence, the claimant should not receive a full lump sum payment.

Last, Knauf argues that while they may have mistakenly paid full lump sum payments to some claimants who should not have qualified for such payments, this fact should not be held against them. Knauf explains that its early focus in the formation of the Settlement Agreement was on hardship cases and not second homes and vacation properties. (Rec. Doc. 17682-1 at 6)

**II. Law and Analysis**

Section 15 of the Settlement Agreement provides that "the Court shall retain (a) continuing jurisdiction over the Litigation, the Class, the Participating Class Members, the Knauf Defendants and the Settlement for the purposes of administering, supervising, construing and enforcing the Settlement; and (b) continuing and exclusive jurisdiction over (i) the Settlement Funds and (ii) the distribution of same to Participating Class Members." (Rec. Doc. 16407-3 at 69). The Settlement Agreement further provides that it should be "construed and enforced in accordance with[] the substantive laws of the State of Louisiana." (Rec. Doc. 16407-3 at 77).

Louisiana law provides that a settlement agreement is governed by the same general rules of construction that are applicable to contracts. *Delesdernier v. Delesdernier*, 12-38 (La. App. 5 Cir. 5/31/12); 95 So.3d 588, 600. Courts have held that when a settlement agreement is reached, it serves as law between the parties and must be interpreted according to their intent and governed as a contract. *White v. Gen. Motors Corp.*, 1999-2585 (La. App. 1 Cir. 11/3/00); 775 So.2d 492, 499)) (citing *Smith v. Walker*, 96-2813 (La. App. 1 Cir. 2/20/98); 708 So.2d 797, 802)). Furthermore, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code Ann. art. 2046.

The Settlement Agreement only identifies three subclasses of Plaintiffs. It states that "'Class,' also referred to as 'Settlement Class' or 'Class Members,' shall mean members of one

of the three Subclasses . . . ." (Rec. Doc. 16407-3 at 4). These three subclasses are: (1) Residential Owner Subclass, (2) Commercial Owner Subclass, and (3) Tenant Subclass. The Settlement Agreement also provides that the Residential Owner Subclass and the Commercial Owner Subclass will collectively be referred to as the "Owner Subclasses." (Rec. Doc. 16407-3 at 5). The Settlement Agreement explains that when someone is a member of the class they are a member of one of the three subclasses. If a class member is not a tenant and does not use his property for selling or renting (the requirements of a Commercial Owner), then he is part of the Residential Owner Subclass. There is no restriction or requirement based on how long or how frequently the class member resides on the property. To inject a time or purpose requirement into the Residential Owner Subclass would require adding additional terminology which does not exist in the agreement. The agreement as written includes all residential owners without regard to the time occupied or the purpose of its use.

This interpretation does not lead to absurd consequences. Knauf may be correct that in some cases homeowners will be compensated for alternative living expenses which they do not incur. However, the lump sum payment is not solely intended to compensate for alternative living expenses. The Settlement Agreement explains that class members who are Residential Owners will be compensated for "Other Covered Expenses" with a lump sum payment. The term Other Covered Expenses is defined in the Settlement Agreement as referring to "reimbursement for all alternative living expenses, personal property damage, maintenance of the KPT Property during remediation, including, but not limited to, payment of all utility bills, insurance, property taxes and maintenance of landscaping, and moving and storage expenses, incurred as a result of the remediation of the KPT Property." (Rec. Doc. 16407-3 at 11). As contemplated by this definition of Other Covered Expenses, homeowners may incur significant expenses aside from

alternative living expenses. Moreover, homeowners whose affected property is not their main residence may still incur costs as a consequence of the remediation such as moving expenses, storage fees, maintenance costs, etc.[1] To determine that these homeowners fall into the definition of the Residential Owner Subclass and, therefore, receive the full lump sum does not lead to an absurd result or an unjust windfall to these claimants.

It is also important to note that the lump sum payment is not calculated based on the precise expenses the class member actually incurs nor does it require that the class member incur expenses in all listed categories. Instead, the lump sum payment amount is determined by multiplying the square footage of the property with some pre-determined monetary amount. This method of calculation will necessarily result in some over-payment as well as some under-payment. It is possible that a homeowner's primary residence is remediated and the homeowner incurs no moving and storage expenses because he owns very little furniture. Knauf still agrees to pay that homeowner the full lump sum payment. The homeowners in question here, who may not incur alternative living expenses, are no different.

As explained previously, Knauf's argument that the lump sum payments should be limited to primary residences rests on the premise that individuals with secondary homes will not incur "alternative living expenses" during remediation of the affected property. This is not

---

[1] Because the Court finds that the subclasses are clear and explicit and that this interpretation of the contract does no lead to absurd results, the Court does not find it necessary to look to other section of the settlement agreement to find the intent of the parties. However, it is worth noting that the Court finds Knauf's argument regarding the class members who select the cash-out option unpersuasive. Unlike the homeowners in question here, those homeowners will not incur any expenses associated with remediation, such as moving expenses and storage costs. Therefore, they are not similarly situated and the treatment of those homeowners does not offer much guidance to the Court. Furthermore, as pointed out in oral argument, there could be other reasons why homeowners who choose the cash-out option receive a reduce lump sum. For instance, Knauf could have been motivated by a desire to dissuade homeowners from choosing this option.

categorically the case since it is possible, if not likely, that many of these owners will incur alternative living expenses despite the fact that the property is not their primary residence. For example, families who purchased secondary homes as vacation homes might incur expenses if they vacation in a different location due to the fact that their usual vacation home is unavailable. Moreover, some families or individuals may not have a "primary residence," but split their time between two residences: one in the cold North and one in the sunny South. This lifestyle is particularly prevalent in Florida, a location of many affected properties (where the snowbirds flock each winter). Such a scenario should have been obvious to the parties negotiating the Settlement Agreement and yet they only created three subclass categories: tenants, commercial owners and residential owners.

Finally, to narrow the scope of the Residential Owner Subclass, and thereby add a third subclass of owners, would be to rewrite the contract. The Court is unwilling to rewrite what parties have already agreed to at this late stage in the implementation of the Settlement Agreement.

### III.  CONCLUSION

For the following reasons, the Knauf's Motion to Construe the Settlement Agreement is DENIED.

New Orleans, Louisiana, this 30th day of May, 2014.

_____
UNITED STATES DISTRICT JUDGE