# EXHIBIT 1



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

```
------------------------------------------------------------x
IN RE:  CHINESE-MANUFACTURED          :    MDL NO. 2047
DRYWALL PRODUCTS LIABILITY            :    SECTION:  L
LITIGATION                            :
------------------------------------------------------------x
THIS DOCUMENT RELATES TO:             :    JUDGE FALLON
ALL CASES                             :    MAG. JUDGE WILKINSON
------------------------------------------------------------x
```

### NOTICE OF DISPOSAL OF PHYSICAL EVIDENCE
### BY THE KNAUF DEFENDANTS

Pursuant to the requirements of Pretrial Order No. 1(I), dated January 24, 2012 [Rec. Doc. 12257], the Knauf Defendants hereby give notice of their intention to dispose of the physical evidence that they are currently preserving at a warehouse with the physical address of 5260 Northwest 10th Terrace, Fort Lauderdale, Florida.  Any person or entity wishing to inspect this physical evidence must do so within thirty (30) days of the date of this notice upon reasonable notice to the Knauf Defendants by contacting Kyle A. Spaulding by telephone at (504) 599-8249 or email at kspaulding@frilot.com.  Upon the expiration of the thirty (30) day period, the Knauf Defendants will dispose of such physical evidence.

        Respectfully submitted,

        /s/  Kyle A. Spaulding
        Kerry Miller (LA Bar No. 24562)
        Kyle A. Spaulding (LA Bar No. 29000)
        **FRILOT L.L.C.**
        1100 Poydras Street, #3700
        New Orleans, LA 70162
        Phone: (504)599-8194
        Fax: (504)599-8145
        kmiller@frilot.com

        *Counsel for the Knauf Defendants*

60228206.DOCX

**CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing pleading by email and by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, this 25th day of April, 2014.

                                                            /s/ Kyle Spaulding

# EXHIBIT 2

**From:** Spaulding, Kyle [mailto:kspaulding@frilot.com]
**Sent:** Wednesday, May 28, 2014 3:31 PM
**To:** Black, David L. (Perkins Coie)
**Cc:** L. Christopher Styron (StyronL@ag.state.la.us) (StyronL@ag.state.la.us); J. Trey Phillips (PhillipsT@ag.state.la.us) (PhillipsT@ag.state.la.us); Dysart, Danny; mdivine (mdivine@mzaconsulting.com); Miller, Kerry J.; Merino, Rene; Parish, James; Thalgott, Garrett
**Subject:** RE: Attached Notice of Disposal of Knauf Drywall Filed on April 25, 2014

David-See below and attached responses to your email from last night.

Kyle A. Spaulding
FRILOT L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, LA 70163
Telephone: 504.599.8249
Facsimile: 504.599.8137

---

**From:** Black, David L. (Perkins Coie) [mailto:DBlack@perkinscoie.com]
**Sent:** Tuesday, May 27, 2014 7:43 PM
**To:** Spaulding, Kyle; Miller, Kerry J.; Merino, Rene
**Cc:** L. Christopher Styron (StyronL@ag.state.la.us); J. Trey Phillips (PhillipsT@ag.state.la.us); Dysart, Danny; Matt Divine (mdivine@morse-associates.com)
**Subject:** RE: Attached Notice of Disposal of Knauf Drywall Filed on April 25, 2014

Kerry, Kyle and Rene,

This will confirm our conference today concerning the drywall which is the subject of the above Notice and our inspection, sampling and possible testing of that drywall.

(1) We discussed our inquiries regarding what drywall was contained in the Knauf Ft. Lauderdale warehouse. You agreed that all drywall in that warehouse was unused drywall, that is drywall that had not been installed in anyone's home. You also asserted that that was the only warehouse that Knauf was aware of which contained unused Chinese manufactured Knauf drywall. As a result of the one of a kind status of this drywall and the fact that it has not been installed in anyone's home, the State provided the May 6 email below noticing its intent to inspect and sample the drywall. The key to us is not where the warehouse is located but rather that it contains the only remaining collection of unused Knauf Chinese-manufactured drywall. As we have previously stated numerous times on behalf of Knauf, we fail to see the relevance in the State of Louisiana's ("SOL") request to

1

inspect and sample a warehouse containing drywall where Banner was the exclusive supplier. Additionally, the drywall located in the Banner warehouse was never shipped to or intended for installation in Louisiana. The SOL's claims under the LPLA and LUTPA do not otherwise make drywall located in Florida relevant to the SOL's case in Louisiana.

(2) You requested that we again put into writing our request for information concerning the drywall presently residing in the subject Ft. Lauderdale warehouse. We again request that Knauf provide the following information concerning the drywall in the warehouse: a description of what is held there; an identification of the manufacturer of the drywall; the date and place that that the drywall was manufactured (including any markings providing information concerning its production and production dates); from where the drywall was shipped; the port where the drywall was received; the identity of the recipient of the drywall or other evidence; the types and size of the drywall; and any documentation concerning such drywall, including information regarding the conditions in which the drywall was stored. You have indicated that the purchaser of the drywall was Banner. We would like to know whether the drywall in this warehouse was some or all of the drywall which was the subject of the settlement agreement between Knauf and Banner executed in December, 2006 or early 2007. You indicated that the drywall was a subject of the more recent settlement agreement with Banner. You have also indicated that most of the drywall is manufactured by KPT. As we've previously advised, we have not conducted a full blown board by board inspection of the warehouse. Matt Divine advises that there are about 375 pallets with 50,000-60,000 sheets of KPT drywall located in the warehouse. There is also apparently a small amount of non-KPT Knauf board with blue and grey endtape. Attached are two photos taken of the drywall in the warehouse to give you a sense of what's in there. You are free to inventory all of it at tomorrow's inspection. As for all of your other requests in this paragraph, those are more appropriately requested once the SOL's suit moves into the discovery phase.

(3) From a logistics standpoint, we need to know if the drywall in the warehouse is accessible by forklift and, if so, whether a forklift and operator will be present at the time of our ultimate inspection or whether we need to arrange for our own forklift and operator. Based on my earlier conference today with Matt Devine, it appears that the drywall is stacked several pallets high and crammed in the warehouse in a way that most of it is inaccessible at this time to a forklift. And that one needs to remove the drywall stack by stack to get to the drywall behind each stack. **As a result, we suggest that the actual inspection and sampling of the drywall occur as Knauf removes it from the warehouse for disposal. However, we are willing to attend Thursday morning's scheduled inspection to make our own assessment of the way that the drywall is stored and what can be determined at this time.** You will be able to determine whether a forklift can access the drywall at tomorrow's inspection. Any forklift rental will have to be coordinated between the rental company and the SOL, and the costs of the forklift at any subsequent inspection will have to be borne by the SOL. In the event the Court allows a subsequent inspection and sampling, any additional costs charged by the disposal company due to the increased time for the disposal will have to be paid by the SOL.

(4) In view of your comments to Judge Fallon before the last monthly status conference that the drywall in this warehouse had been "repeatedly tested" before, I requested copies of any test results performed on this drywall. You indicated that you were referring to CPSC testing done on Knauf drywall but added that you were not certain if the Knauf drywall tested by or for the CPSC came from this warehouse. I renew my request for any testing data in Knauf's possession of drywall from this warehouse. As I told you, the State will consider whether it needs to sample and test this drywall based in part on the nature and extent of any past testing. I understood from your comments today that you are not certain if this drywall has been tested in the past. Please confirm and provide copies of any past test results in Knauf's possession. If no past testing has been done, this is an additional reason to sample and test this one of a kind collection of unused Knauf drywall before it is disposed of. We didn't state that the drywall in the warehouse was tested by the CPSC. KPT drywall has however been extensively tested by the CPSC, the findings of which can be found on the CPSC's website. As for all of your other requests unrelated to the drywall in the warehouse, those are more appropriately requested once the SOL's suit moves into the discovery phase.

(5) You oppose the State's sampling any of this unused drywall before it is disposed of. We disagree. As a result, we will need to get Judge Fallon to decide whether we can sample and test. You and we agreed that we can submit our motion papers in a few days and that Knauf would not dispose of the drywall pending the outcome of our motion. We suggest that we submit our motion papers by Monday, June 9. We agree with this approach.

(6) Finally, we discussed your comments to Judge Fallon that KPT had stipulated in the past that its drywall was defective. You stated that KPT had done so in the *Robin* trial and would do so in our case also. Please confirm KPT's agreement to stipulate in the State's case that KPT drywall sold and used in Louisiana is/was a defective product under Louisiana law. **KPT will stipulate that the drywall was defective in manufacture under the LPLA; but that said manufacturer defect did not cause any of the SOL's alleged damages, including but not limited to revenue losses and damages or penalties potentially available under LUTPA.**

We look forward to your prompt response.

Best regards,

David Black


**From:** Spaulding, Kyle [mailto:kspaulding@frilot.com]
**Sent:** Monday, May 19, 2014 8:34 AM
**To:** Black, David L. (Perkins Coie)
**Cc:** L. Christopher Styron (StyronL@ag.state.la.us); J. Trey Phillips (PhillipsT@ag.state.la.us); Miller, Kerry J.; Dysart, Danny; Matt Divine (mdivine@morse-associates.com)
**Subject:** RE: Attached Notice of Disposal of Knauf Drywall Filed on April 25, 2014

David-We've not determined the exact number of boards, but there appears to be between 170 and 175 pallets. We estimate the board count to be between 50k and 60K.

Kyle A. Spaulding
FRILOT L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, LA 70163
Telephone: 504.599.8249
Facsimile: 504.599.8137

**From:** Black, David L. (Perkins Coie) [mailto:DBlack@perkinscoie.com]
**Sent:** Wednesday, May 14, 2014 10:27 AM
**To:** Spaulding, Kyle
**Cc:** L. Christopher Styron (StyronL@ag.state.la.us); J. Trey Phillips (PhillipsT@ag.state.la.us); Miller, Kerry J.; Dysart, Danny; Matt Divine (mdivine@morse-associates.com)
**Subject:** Re: Attached Notice of Disposal of Knauf Drywall Filed on April 25, 2014

Thanks, Kyle. We can inspect next week-- on the 19th, 20th or 21st. Do you have an inventory of what is there? Could you share it this this week? Please advise.

David

Sent from my iPad

On May 9, 2014, at 8:25 PM, "Spaulding, Kyle" <kspaulding@frilot.com> wrote:

> David-The Notice of Disposal only pertains to the drywall located in the warehouse located in Ft. Lauderdale, not to all drywall in Knauf's possession. I'm not sure why it's relevant to inspect drywall that never made it into Louisiana properties, but we can help facilitate an inspection. I'm copying Matt Divine from MZA on this email. I believe he's the appropriate person to help schedule the inspection.

3

We do intend to confirm with Judge Fallon at the monthly status conference that the drywall can be disposed of as set forth in our Notice.  If the AG doesn't want us to dispose of it after the inspection, we can discuss the AG taking over the monthly lease payment.

As for the information requested below, I'd suggest propounding formal discovery on the Knauf entities at the appropriate time.

Kyle A. Spaulding
FRILOT L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, LA 70163
Telephone: 504.599.8249
Facsimile: 504.599.8137

**From:** Black, David L. (Perkins Coie) [mailto:DBlack@perkinscoie.com]
**Sent:** Tuesday, May 06, 2014 2:16 PM
**To:** Spaulding, Kyle
**Cc:** L. Christopher Styron (StyronL@ag.state.la.us); J. Trey Phillips (PhillipsT@ag.state.la.us)
**Subject:** Attached Notice of Disposal of Knauf Drywall Filed on April 25, 2014

Dear Kyle,

The State of Louisiana hereby provides notice of its intention to inspect and sample the physical evidence and/or drywall held by or for any Knauf entity ("Knauf") at the warehouse identified in the attached notice or at any other site.  Please provide the following information regarding any such physical evidence and/or drywall held by or for Knauf:

(a)  Where the physical evidence or drywall is held;
(b)  An inventory of what is held at each location, including for each location:  a description of what is held there; an identification of the manufacturer of the drywall and other physical evidence held there; the date and place that that the drywall or other evidence was manufactured (including any markings providing information concerning its production); from where the drywall was shipped; the port where the drywall was received; the identity of the recipient of the drywall or other evidence; and the types and size of any drywall or other evidence held at each such location;
(c)  Please produce any documentation concerning such drywall or evidence so held, including information regarding the conditions in which the drywall or other evidence was stored for each location at which it was stored;
(d)  Please provide alternate dates when we can inspect the drywall or other evidence, including such dates for the drywall or other evidence held at the warehouse identified in the above notice.

Kyle, we can work with you on the dates and times of such inspections but we want to make it clear that we do not want you to dispose of the physical evidence identified in the above notice or held by or for Knauf at any other facility without notifying us first and giving us an opportunity to inspect and sample it.   Our request specifically includes, but is not limited to, any drywall held at Knauf Gips in connection with the testing that Dr. Hummel or others at Knauf Gips performed, described more fully in Dr. Scherer's recent deposition testimony.

Please let me know if you have questions.  I will be available to meet with you at the next monthly status conference on May 20 to discuss these issues and a schedule for our inspections.

Thank you.

Best regards,

David

David L. Black  |  Perkins Coie LLP
Partner

1900 16th St. Suite 1400
Denver, CO 80202
Direct:  303-291-2309
Fax:  303-291-2409
Cell: 303-886-6475
DBlack@perkinscoie.com

<image001.jpg>[parsintl.com]

---

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with Treasury Department and IRS regulations, we inform you that, unless expressly indicated otherwise, any federal tax advice contained in this communication (including any attachments) is not intended or written by Perkins Coie LLP to be used, and cannot be used by the taxpayer, for the purpose of (i) avoiding penalties that may be imposed on the taxpayer under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein (or any attachments).

* * * * * * * * * *

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

# EXHIBIT 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL NO. 2047 SECTION: L |
| THIS DOCUMENT RELATES TO: ALL CASES | ) ) ) ) | JUDGE FALLON MAG. JUDGE WILKINSON |

## DECLARATION OF JEFF CHIMENTO

1. My name is Jeff Chimento. I make this declaration based on personal knowledge. I am competent to testify to the facts declared.

2. I am an Environmental Scientist at U.S. Risk Management, LLC and have been involved in inspections and identification of corrosive Chinese drywall – including Knauf drywall – in various states, including Louisiana, since 2010. I am very familiar with the characteristics of and markings on Chinese drywall.

3. On May 29, 2014, I inspected a warehouse of primarily Chinese drywall leased by the Knauf Defendants in Ft. Lauderdale, Florida. I had not been to that warehouse before.

4. The warehouse was crammed full – floor to ceiling – with what appeared to be some 50,000 to 60,000 drywall boards. The drywall did not appear to have been used for any commercial or residential construction. The drywall boards were stacked in pallets one upon the other in stacks up to 8 pallets high (see photos attached as Exhibit A), and due to the sheer number of boards that were crammed into this warehouse, I could see only the end tape for any of them, with the exception of a few boards in small stacks at the entrance to one of the warehouse's three bays.

5. By its blue and yellow pattern, the end tape I could observe – which was on nearly 100% of the drywall – indicated that this drywall was manufactured by a Knauf entity (and I was able to confirm this for two pieces of drywall by reviewing markings on their backs). The end tape alone does not, however, identify (a) the drywall's specific manufacturer (that is, the factory in China in which it was manufactured), (b) its date of manufacture, or (c) the likelihood of drywall board corrosivity/reactivity.

6. The only way to identify the specific manufacturer, date of manufacture, and likelihood of corrosivity/reactivity is to pull up each board or a sampling of boards and inspect them, including by reviewing the manufacture date and location information that is contained on the backside of each sheet of drywall, as well as the typesetting of the printed words on the drywall boards. Given the number of boards in the Ft. Lauderdale warehouse, and the way they are organized, this will be an enormous, time-consuming task.

7. As indicated above, I have substantial experience inspecting and identifying Chinese drywall in various states, and I am very familiar with the manufacturing history of Chinese drywall, including Knauf drywall. In my experience, Chinese drywall sold in Florida by Knauf was manufactured at approximately the same time and by the same manufacturers as drywall sold by Knauf in Louisiana.

8. I declare under penalty of perjury that the foregoing is true and correct.

Executed on 6-6-14.
Date

Signature: _____

# EXHIBIT A



