UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL NO. 2047  SECTION "L" |
| THIS DOCUMENT RELATES TO: | ) ) | JUDGE FALLON |
| *Sean and Beth Payton, et al v. Knauf Gips, KG, etc., Civ. Action No. 09-7628 (E.D.La)* | ) ) ) ) | |
| *Claimants:  Bill and Elizabeth Ritter* | ) ) | |

### CLAIMANTS BILL AND ELIZABETH RITTER'S MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF MEDIATION OPINION AND DECREE

COMES NOW the Claimants, Bill and Elizabeth Ritter, by and through undersigned counsel, and files this their Memorandum in Support of Motion for Reconsideration of Mediation Opinion and Decree issued May 26, 2014, and show unto the Court as follows:

**PROCEDURAL BACKGROUND**

1.  On May 26, 2014, the Special Master erroneously found that the Knauf settlement protocol as written does not allow recovery of cabinets and wood flooring. Based upon this incorrect premises, the mediator awarded Mr. Ritter $7,000 less than Knauf's outstanding offer. (*See* Exhibit "4" attached.) The ruling is incorrect. As reflected in Exhibit "F", pp. 1-2, if these items are damaged during remediation they are explicitly covered by the agreement and must be replaced. Mr. Ritter has provided a sworn statement confirming that these items were damaged during the remediation. Knauf provided no evidence to contradict this testimony. Therefore, Mr. Ritter respectfully

requests this Court reverse the Special Master and award Claimants $150,000 as complete and full compensation for this claim.

**FACTS AND ARGUMENT**

2.  The issue in this case is whether the plaintiff is entitled to reimbursement for replacement of kitchen cabinets and wood flooring (in the main living area and dining room) which he replaced during self-remediation of his contaminated property.

3.  As the Court knows, in 2004 - 2006 drywall manufactured in China was brought to the United States and used in the construction and refurbishing of homes in the coastal areas of the country. Sometime after the installation of the Chinese drywall (CDW), homeowners began to complain of emissions and smelly gases, the corrosion and blackening of metal wiring, surfaces and objects, and the breakdown of appliances and electrical devices in their homes. Many of the homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall. Accordingly, these homeowners began to file suit in various state and federal courts against the manufacturers, suppliers, installers and retailers. An MDL was formed in 2009 and all federal cases involving Chinese drywall were consolidated for pretrial proceedings in the U. S. District Court of the Eastern District of Louisiana before this Court.

4.  In 2010, the case of *Hernandez v. Knauf Gips KP* proceeded to trial. As a result, this Court entered Findings of Fact and Conclusions of Law in April of 2010 (see attached Exhibit "1"). In general, the Court found that the Chinese drywall was defective. Relevant to the issue at hand, This Court found as follows:

### E. Everything in Front of Drywall Must be Removed & Replaced

As a practical matter, everything in front of the drywall in the Hernandez home, such as **cabinets, trim, fixtures and bathroom porcelain, needs to be removed prior to removal of the drywall**. Trial Tr. Vol. I, 67:18-168:24 (Rutila); Trial Tr. Vol. IV, 758:11-16 (Mar. 18, 2010). **Removal of these items can damage even those items deemed worth salvaging.** *Id.* **It is not worth the cost to attempt to remove, store, and replace these items, when it is likely they will be damaged and when one considers the relatively low cost of these items. Knauf's own proposed remediation protocol calls for the replacement of items damages during remediation.** *See* Def. Ex. 211. Accordingly, these items must also be replaced.

### F. Flooring May Need to be Removed & Replaced

**The wood floors in the Hernandez home may need to be removed** and replaced if they are damaged during the remediation process. This is consistent with Knauf's proposed remediation protocol. *See* Def. Ex. 211. However, the Court finds that with the proper care, the wood floors can be sufficiently protected. Trial Tr. Vol. IV, 757:9-14.

5. After the *Hernandez* Findings of Fact and Conclusions of Law were issued, Bill Ritter and his family decided they could no longer tolerate living in the contaminated home with the noxious odor of the drywall. Not knowing when a settlement would be reached with Knauf and the other defendants, Mr. Ritter, like hundreds of other victims of CDW, decided to remediate his home himself. He did so complying with the Court's Preservation Order (*See* Pre-Trial Order No. 1(B) attached as Exhibit "2"). Mr. Ritter remediated consistent with the *Hernandez* protocol above.

6. Subsequent to Mr. Ritter's remediation, Knauf entered into the current Settlement Agreement on or about December 11, 2012. The Agreement had attached to it as Exhibit A (see attached) a protocol applicable to already remediated properties, such as Mr. Ritter's. Of importance, Section D at page 4 of Exhibit "A" states as follows:

3

D. Reimbursable Costs

1. The Knauf Defendants will reimburse the Owner only for **reasonable costs that the Owner incurred in remediating the Affected Property** ("Reimbursable Costs"). In determining Reimbursable Costs, the Knauf Defendants and Owner, Special Master (where necessary) and Court (where necessary), shall employ the following criteria:

   a. **Only remediation work reasonably consistent with the Remediation Protocol shall be eligible for reimbursement.**

   b. Any upgrades made to the Affected Property are not eligible for reimbursement.

      (1) **To the extent that anything in the Affected Property was replaced, including, but not limited to, appliances, baseboards, molding, flooring, cabinets and countertops, any reimbursement owed to the homeowners for such replacement shall be limited to the replacement costs of the specific item that was in place prior to the remediation.**

7. The Knauf settlement general remediation protocol applicable to the overall Knauf settlement is set forth in Exhibit F to that Settlement Agreement (see attached) and states in portions, as follows:

   E. **Fixtures.** Remove, store and reinstall the following to the extent such fixtures interfere with the removal of the drywall as described in Paragraph A. Otherwise, such fixtures will remain in place with suitable protection. In the event of any Contamination to such fixtures caused by the possible problem drywall or <u>**damage from the drywall removal and replacement, such fixtures will be replaced**</u>...

The list of fixtures specifically includes **cabinets**. (See Exhibit F, pp. 1-2.)

8. Consistent with the above protocols, Bill Ritter by and through counsel properly submitted his claim to be reimbursed for his self-remediation expenses. The claim as submitted totaled $166,592.50. The Defendants offered $137,000.00. The Plaintiffs' bottom line to settle is $150,000.00. The difference in the numbers is Knauf's refusal to reimburse Mr. Ritter for the costs of replacing his kitchen cabinets and wood floors.

9. Bill Ritter is a well respected citizen of Birmingham, Alabama, employed for almost 11 years with Compass Bank, and at all times acted in the best interests of his family in remediating his home. He acted consistent with the protocol set forth in *Hernandez* which was the only known protocol in existence at that time. Furthermore, as stated by this Court in *Hernandez*, this was also consistent with Knauf's own remediation protocol for the replacement of cabinets and damaged flooring. *See*, this Court's Order, Exhibit "1", p. 32, ¶ E.

10. The Unsworn Declaration Under Penalty of Perjury Pursuant to 28 U.S.C. § 1746 of Bill Ritter is attached as Exhibit "3". He states that he, in good faith, followed this Court's directive. To be clear, Bill Ritter is not requesting replacement of expensive custom cabinets or any type of cabinet upgrade. Rather these are builder-grade type cabinets. Certainly Bill Ritter cannot be faulted for following this Court's Order which tracked Knauf's remediation protocol as it existed at the time.

11. The same is true with the floors replaced by Mr. Ritter. This Court's Order acknowledged that the wood floors may need to be removed and replaced if they are damaged in the remediation process and that this too is consistent with Knauf's proposed remediation protocol. (*See*, Exhibit 1, pp. 31-32.) As confirmed by the Declaration of Bill Ritter, the floors were damaged during the remediation protocol and he exercised his best

judgment consistent with the guidance set forth by the Court and replaced the floors. Again, he does not seek an exorbitant amount of money but rather the reasonable amount he incurred to replace the floor.

12. All of these actions by Mr. Ritter were reasonably consistent with remediation protocol and therefore should be eligible for reimbursement. The plain language of the Already Remediated Protocol section of the Settlement Agreement clearly contemplates that the replacement of cabinets and floors is necessary at least in some circumstances. The Agreement states on page 4 of Exhibit "A" that, **to the extent any of the affected properties was replaced and any reimbursement owed to the homeowner for such replacement, it is limited to replacement costs of that item**. As confirmed by the Declaration of Bill Ritter attached as Exhibit "3" this is exactly what he is seeking in this case.

13. Finally, the remediation protocol in Exhibit "F" also specifically contemplates that if the removal and replacement of the defective drywall results in damage to cabinets, they will also be replaced. Again, Bill Ritter confirms that the cabinets were also damaged during the remediation process. (*See* Exhibit "F" attached, p. 2.)

14. In conclusion, Bill Ritter is not someone seeking to take unfair advantage of the settlement. Indeed, he is a credible plaintiff who did the best that he could under the difficult circumstances created by the contaminated drywall. He acted completely consistent with the *Hernandez* protocols as set forth by this Court as they existed at the time of his remediation. If that were not enough, his actions were also completely consistent with Knauf's own proposed remediation protocol as it existed at that time and

the protocol specifically adopted in the current settlement.  It is completely unfair for the Defendants to now refuse to pay for these costs which were certainly reasonably incurred.  But for Knauf's manufacture of defective products, Bill Ritter would not have incurred any of these expenses.  Furthermore, **the Settlement Agreement itself dictates that these damaged items be replaced**.

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs, Bill and Elizabeth Ritter, request this Honorable Court to reverse the Special Master and award the Plaintiffs the sum of $150,000 as complete and full compensation for this claim.

RESPECTFULLY SUBMITTED, this the 10th day of June, 2014.

**BILL AND ELIZABETH RITTER, Plaintiffs**

By: /s/ James R. Reeves, Jr.
JAMES R. REEVES, JR. (MSB #9519)
Reeves & Mestayer, PLLC
P. O. Drawer 1388
Biloxi, MS 39533
Telephone: 228/374-5151
Fax: 228/374-6630
Email: jrr@rmlawcall.com

**CERTIFICATE OF SERVICE**

I, undersigned counsel, do hereby certify that the above and foregoing Motion to Appeal Mediation Opinion and Decree for Claimants Bill and Elizabeth Ritter has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S Mail and email, or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this the 10th day of June, 2014.

/s/ James R. Reeves, Jr.