# SINGLETON, PASLEY & NUCE, L.L.C.

## ATTORNEYS AT LAW

Dwayne C. Singleton
Alvah H. Pasley
D. Chad Nuce

**REPLY TO:**
1115 Zebulon Road
Griffin, Georgia 30224

Nicholas S. Granade
Adam R. Nagel
Jody L. Sellers

**Griffin**
1115 Zebulon Road
Griffin, Georgia 30224
Phone: 770-227-5300
Facsimile: 770-227-5394

**Thomaston**
103 North Center Street
Thomaston, Georgia 30286
Phone: 706-646-3200
Facsimile: 706-646-2147

**Barnesville**
25 Market Street
Barnesville, Georgia 30204
Phone: 770-358-3600
Facsimile: 770-358-3602

RECEIVED JUN 12 2014 CHAMBERS OF U.S. DISTRICT JUDGE ELDON E. FALLON

June 11, 2014

The Honorable Judge Eldon E. Fallon
U.S. District Court for the Eastern District of Louisiana
500 Poydras Street, Room C546
New Orleans, Louisiana 70130

Re: <u>Chinese Drywall Four Virginia-Based Settlements
Allocation Plan Provisions Regarding Statutes of Limitation</u>

Dear Judge Fallon,

    My name is Nicholas S. Granade, Esq., and my firm, Singleton, Pasley, & Nuce, LLC, currently represents several clients with claims stemming from the existence of Chinese drywall in four (4) affected properties with respect to the Four Chinese Drywall Virginia-based Settlements now pending in your Court. I am writing you in response to the Order to Show Cause that was issued by Your Honor on May 20, 2014 In Re: Chinese-Manufactured Drywall Products Liability Litigation, MDL No. 2047, Section L. [Please see a copy of said Order to Show Cause attached hereto as Exhibit "A".]

    The clients my firm represents are Joe Guerra, Juan Guerra, Inger Robinson-Reese, Bobby Harris, Dedrick Dodge, Nyla Dodge, Dedrick Dodge, Jr., and Marie Kernisan. The affected property addresses pertaining to said clients are 1105 Bowlin Drive, Locust Grove, Georgia 30248, 1024 Levista Drive, Locust Grove, Georgia 30248, 1109 Bowlin Drive, Locust Grove, Georgia 30248, and 1028 Levista Drive, Locust Grove, Georgia 30248.

    In addition to their filing of claims within the Virginia-based Settlements (specifically, in the Porter-Blaine Corp./Venture Supply, Inc. Settlement), the above-listed claimants and properties have all already filed claims under the Global, Banner, Inex Class Action Settlement (hereinafter referred to as the "Global Settlement") also pending in your Court. In fact, all claimants filed their respective claims in that settlement within what we believe to be the applicable statutes of limitation. Prior to filing their claims, the claimants were advised of the option to pursue independent litigation in lieu of filing said claims, and each claimant, after weighing his or her options, chose to pursue claims under the existing Global and Virginia Settlements. Additionally, each of the above-mentioned affected properties were deemed eligible under the Global Settlement, which also falls under this Court's Chinese Drywall Settlement Program, MDL 2047. [Please see a summary of the claims filed by said claimants attached

hereto as Exhibit "B", and please see the respective Eligibility Notices for each affected property attached hereto as Exhibits "C", "D", "E", and "F".] As a result, the claimants have not sought independent litigation additional to the existing settlements under which they have filed claims (including the Virginia-Based and Global Settlements).

According to the "Settlement Agreement in MDL No. 2047 Regarding Chinese Drywall Claims against the Porter-Blaine Corp. and Venture Supply, Inc., and Certain of their Insurers" (hereinafter referred to as "Venture Supply Settlement") under which the above-named claimants and affected properties have filed claims, Class Members are defined as follows:

> 1.1.1. Class. "Class," also referred to as "Settlement Class" or "Class Members," shall include all persons or entities (except for Porter-Blaine Venture Supply, Citizens Insurance Company of America and Hanover Insurance Company) together with their heirs, representatives, attorneys, executors, administrators, executives, subsequent purchasers, residents, guests, tenants, lenders, successors and assigns, with claims, known or unknown, involving Affected Property and arising from or related to actual or alleged Chinese Drywall purchased, imported, supplied, distributed, marketed, installed, used, sold or in any way alleged to be within the legal responsibility of Porter-Blaine, Venture Supply, Citizens Insurance Company of America or Hanover Insurance Company. [Please see a copy of said Venture Supply Settlement, page 2, attached hereto as Exhibit "G".]

Nowhere within the class definition are claimants put on notice that they are required to have pursued litigation independent of filing the claim in order to qualify for the Class. Moreover, the class definition does not indicate that class members will be treated differently based upon whether they had filed litigation. The Venture Supply Settlement was executed on October 11, 2012 and filed with the Court on October 21, 2012. On July 9, 2013, the Court entered a Final Approval of the Venture Supply Settlement, and contemporaneously approved the Allocation Plan along with it, which contains the Statute of Limitations provision at issue (Section 10).

The Allocation Plan in effect creates a new sub-class of non-litigation claimants that does not conform with the original definition of "Class" that was set forth in the Court's order. Members of the class, including our clients and those similarly-situated, are not receiving the benefit of the bargain that they accepted as a part of Venture Supply Settlement negotiations, as their claims (at the time of the negotiations) were not differentiated in the "Class" definition in the Venture Supply Settlement. According to the Venture Supply Settlement, p. 24, paragraph 16.1 regarding Allocation of Payments, an "Allocation Committee . . . will be appointed to make recommendations to the Court as to: (i) a fair and equitable plan of allocation of the Settlement Funds . . ." This purpose does not appear to include the power to create a sub-class of non-litigation claimants (who were represented equally with the litigation claimants under the settlement "Class" definition). The existing structure differentiates class members solely on the criteria of litigation and not with regard to the merits of their case, the result being that claimants with the exact same damages are treated differently based solely upon whether they chose to pursue litigation or participate in the settlement. [Please see a copy of said Venture Supply Settlement, page 24, attached hereto as Exhibit "H".]

Additionally, we believe that it would be inequitable to require our clients, and other similarly-situated claimants, to suffer a dramatically reduced (60%) share of their proportional

claim in the Virginia-based settlement simply because they each chose to timely participate in an existing settlement pertaining to the same MDL and for which the applicable affected property is eligible, as opposed to creating additional litigation by filing copycat suits. Construing the Statutes of Limitation Provision against these claimants would punish them for doing precisely what the MDL seemingly is seeking to obtain, i.e. streamlined litigation that efficiently, proportionately and fairly compensates said claimants for the well-documented injuries both they and their properties have sustained as a result of the Chinese drywall.

We would ask that the Court construe Section 10 of the Allocation Plan in the Four-Virginia-based Settlements such that claimants who were allegedly injured by Chinese drywall in affected properties for which claims have been previously timely filed and deemed eligible in existing settlements not fall under said provision and suffer the reduced share of their claim in the Virginia-based Settlements so as to not prejudice claimants solely because they chose to participate in the settlement and not file additional litigation.

Thank you for your time and consideration in this matter, and please do not hesitate to contact my office with additional questions or concerns.

Sincerely,

Nicholas S. Granade, Esq., For the Firm
Singleton, Pasley & Nuce, LLC.