# Plantation Group, LLC
# Greensprings Condominiums, LLC

4029 Ironbound Rd., Suite 200
Williamsburg, Virginia 23188
757-220-2874 / 757-229-2542 (fax)



The Honorable Judge Eldon E. Fallon
U.S. District Court for the Eastern District of Louisiana
500 Poydras St. Room C546
New Orleans, LA  70130

Re: Section 10 of the Allocation Plan as it relates to 6 homeowners that didn't file suit at Braemar Creek

Dear Judge Fallon,

The plaintiffs' steering committee, via Richard Serpe, originally made us aware that we had Chinese drywall at a condominium property we developed and constructed in Williamsburg, Virginia known as Braemar Creek. Prior to that time we had no complaints from our homeowners as documented by an independent warranty company that we utilized at the property. However, twenty homes (Buildings 32 and 33) were found to contain Chinese drywall (through delivery records and physical inspection). We immediately notified Nationwide Insurance and hired independent counsel to pursue a claim against Nationwide so that Nationwide would assist in the remediation of the 20 homes (attached is an email of March 16, 2010 putting Nationwide on notice of our claim for the 20 homes). We honored Nationwide's requests at every juncture which postponed remediation more than we would have liked (attached is a letter of March 29, 2010 outlining our remediation protocol and insisting that Nationwide confirm our plan to be acceptable). Nationwide issued a reservation of rights letter denying coverage. However, they did acquiesce to our plan as did the plaintiffs' steering committee which was critical to us prior to proceeding. Our primary concern was getting our homeowners back in their homes with the proper remediation but we wanted the ability to pursue Nationwide, Porter Blaine and Taishan in the future. With the advice of counsel and working closely with Mr. Serpe, the first 10 homeowners, 6 of which never filed suit, entered into a settlement agreement to have their homes fixed. A copy of one of these settlement agreements is attached (unit 3206 as an example, all were the same, the six homes are listed on Exhibit A). The homeowners assigned their real property recovery rights to us (up to a specific dollar amount) in exchange for a complete remediation of their unit.

Prior to us agreeing to the settlement with Nationwide on behalf of the class action suit (and our agreement was critical to Nationwide agreeing to fund the class action suit) we discussed with Mr. Serpe how we were to be reimbursed for our remediation efforts (otherwise we wanted to independently pursue Nationwide). Unfortunately our counsel was more versed in pursuing Nationwide than how a class action suit works which he readily admitted. Mr. Serpe assured us that he would receive the proceeds for the 14 homeowners that filed suit and we would be paid by his trust account in accordance with the settlement agreements. For the six that didn't file suit, Mr. Serpe told us that the court would

award the plaintiffs' steering committee a fee, probably 12%, for their efforts and we would receive our real property recovery from the Special Master if we assisted the homeowners in filing a proof of claim. He emphasized the importance of timely filing which we did. Mr. Serpe offered to file the claims for the six homeowners but said his "normal fee" would apply. Mr. Serpe did tell us it might be problematic that the six homeowners would receive the funds directly. However, we trusted the homeowners would turn the funds over to us per our agreement. If their recovery was to be reduced by 60% per Section 10 of the Allocation Plan, why would we not have had Mr. Serpe file their claim so they would be treated like the other homeowners? We thought we were doing the six homeowners and us a favor to handle the filing ourselves.

After spending over $1,200,000 in remediation and legal fees AND based on Mr. Serpe's representation, we elected to patiently wait for the Special Master to determine the allocation of the insurance proceeds. It was only on May 21, 2014 we learned that our claim for the six homeowners that "technically" did not file suit would be reduced by 60% per Section 10 of the Allocation Plan. While admittedly it was the first we heard of Section 10 even though it was in the Plan last year, we didn't understand its applicability to our six homeowners so we reached out to the Special Master. Nationwide has assigned a significant portion of their contribution to the suit to our general liability policy loss report, thereby increasing our future premiums. In other words we have the misfortune of paying for the remediation twice while all along our primary concern was for the homeowners. We trusted the Court would treat the homeowners fair and just if a proper proof of claim was filed. In retrospect, perhaps we should not have been so agreeable if the Court thinks it appropriate to reduce our proceeds per Section 10 of the Allocation Plan. We have no idea how Section 10 of the Allocation Plan came to be but would be very disappointed if it was inserted by the Plaintiffs' Steering Committee in direct contradiction to their representation of how our six homeowners would be treated.

Perhaps the "proof of claim" requested by the Special Master for the six homeowners that did not file suit could be met based on our claim filed with Nationwide on their behalf. The homeowners certainly put us on notice in 2010 that there was Chinese drywall in their unit, hence our claim filed with Nationwide.

Respectfully submitted,

Greensprings Condominiums, LLC
By: Greensprings Plantation, Inc. Manager

*Michele Z. Ball*
Michele Z. Ball, Vice President

Plantation Group, LLC

*Michele Z. Ball*
Michele Z. Ball, Manager and Co-Owner