# Michele Ball

| | |
|---|---|
| **From:** | Michele Ball |
| **Sent:** | Tuesday, March 16, 2010 4:16 PM |
| **To:** | 'roysted@nationwide.com'; 'oviattg@nationwide.com'; Brian Slaughter (jbslaughter@va-law.org) |
| **Cc:** | Jim Harward; Marc Sharp; Gary Werner; Frank Spadea |
| **Subject:** | Chinese Drywall at Braemar Creek / Remediation / Settlement / Attorney Client Privilege |
| **Attachments:** | 1.21.10 Letter to BC Unit Owners.pdf; 1.29.10 Letter to Bldg 32 and 33 Owners.pdf; Remediation (3) 03.16.10 clean.docx |

Denise/Gary – As you know, we have been served with seven lawsuits in regards to Chinese drywall at Braemar Creek Condominiums. Two more have been filed in Norfolk Circuit Court and we are awaiting service. We have a demand letter on another so we assume a lawsuit will follow bringing the total to 10. Attached is the communication we have had with our homeowners essentially requesting additional time while we researched any potential problem. There are 10 more homeowners with homes showing damage from Chinese drywall and we anticipate they too will file suit if we don't make an attempt to settle and resolve this damage claim. We want to mitigate our potential damages.

As such, we intend to propose the attached remediation plan to all 20 homeowners within the next week in the two buildings containing the Chinese drywall. We have inspected most of these homes and have spent much time researching remediation protocols. We are offering what we believe to be a complete remediation plan without incurring unnecessary expense. This remediation protocol is based on the expert opinions offered by the National Association of Homebuilders, their consultants and a certified environmental consultant.

We wanted to give you the opportunity to review our remediation protocol and offer any advice you might have in regards to this issue. We are not yet certain of the extent of our damages (i.e. the cost of the remediation protocol). The homeowners will clearly need a place to stay while we perform the remediation. As such, we are hoping to offer a financial incentive that will be less than actual cost of living ($3,000) while we do the work. We're not certain that this will be acceptable to our homeowners but hope that we can minimize our damages with the financial incentive. In addition, we will accept responsibility for moving, storing and reinstalling their personal belongings.

We have asked Brian Slaughter, our assigned defense attorney, to prepare a release to be executed by the homeowners to bring closure to this issue. We are awaiting the release at this time but will not proceed with remediation on an individual unit until we receive an executed release from the homeowner. Our actions are part of the mutual goal we have to settle this litigation.

If you should have any questions or comments, please do not hesitate to contact me. Thank you for your time and assistance in this matter.

*Michele Z. Ball*
*The Bush Companies*
*4029 Ironbound Rd., Suite 200*
*Williamsburg, VA 23188*
*757-220-2874 / 757-229-2542 (fax)*

**PLANTATION GROUP, LLC**
**GREENSPRINGS CONDOMINIUMS, LLC**
4029 Ironbound Road, Suite 200
Williamsburg, Virginia 23188
757-220-2874 / 757-229-2542 fax

March 29, 2010

**Via Certified Mail and Facsimile (630-795-4156)**

Gary E. Oviatt, Claims Specialist
Nationwide Indemnity
1431 Opus Place
Suite 100
Downers Grove, Illinois 60515

**Via Certified Mail and email batchej@nationwide.com**

Judith Batcheler, Claims Specialist
Nationwide Insurance
7125 Columbia Gateway Drive
Columbia, Maryland 21046

RE: Braemar Creek at Greenspring Plantation Homeowners Lawsuits
Your Insureds: Plantation Group, LLC
Franciscus Homes, Inc.
Claim Nos.: 53 45 PE 019004 01182010
53 45 PE 019243 01182010 51

Dear Mr. Oviatt and Ms. Batcheler:

We are in receipt of Mr. Oviatt's e-mail dated March 25, 2010. As explained to Nationwide in our email of March 16, 2010 the various insureds are interested in pursuing remediation of the housing units at this time. On March 24 we were contacted for the first time by Todd Fiorella explaining that he was defense counsel for the developer, Greensprings Condominiums, LLC ("GCLLC") assigned by Nationwide. Mr. Fiorella had not been in contact with Franciscus Homes or GCLLC prior to that time. As such, we were unaware that GCLLC had been assigned a different Claims Specialist than Plantation Group, LLC or Greensprings Plantation, Inc., Judith Batcheler. We had written to Nationwide on March 16 to provide an opportunity for Nationwide to review our remediation protocol and offer any advice on the proposed settlement. Having not heard from Nationwide, we contacted Mr. Oviatt Thursday, March 25, left a voice message and subsequently received the email of March 25.

Ms. Batcheler was not copied on our email of March 16. Prior to our meeting with the homeowners scheduled for March 25 we contacted Ms. Batcheler. She instructed us that we could not negotiate a settlement without Nationwide's agreement.

At that time we forwarded her the email of March 16. We explained that we had been working on a release with Brian Slaughter but that it was not finalized and would not be presented to the homeowners. Ms. Batcheler requested that we not distribute any materials at the meeting and not commit to perform any work. We honored that request.

We understand there may be some confusion among Nationwide's claims staff and claim counsel as to the stage of this process. It is critical, in your insureds' opinion, that we proceed with remediation and an acceptable settlement with as many homeowners as soon as possible to mitigate our damages. We expect those homeowners that have not yet filed suit will proceed to pursue litigation if efforts are not undertaken to remediate their homes. Additionally and most importantly we are informed that the fire suppression system may be compromised due to corrosion allegedly caused by the Chinese drywall. Thus, Nationwide should allow us, with the assistance of our assigned defense counsel, to negotiate a settlement with our homeowners due to the huge exposure for collateral risk.

We look forward to working with Nationwide to address these claims. We request that the respective adjusters contact our assigned defense counsel to discuss the specifics of having the remediation constitute a settlement of these claims. It would appear that the settlements are within coverage limits. Your insureds request permission to proceed with the remediation plan and request that Nationwide settle these claims within coverage limits through our assigned defense counsel.

Your insureds acknowledge the various receipt of the reservation of rights correspondence but do not acquiesce to it. Plantation and the other insureds reserve their rights to raise any basis of coverage and do not waive any rights or remedies possessed under the Policies or at law. We look forward to hearing how Nationwide intends to proceed in light of this opportunity to quickly resolve these claims.

Sincerely,
Plantation Group, LLC

Michele Z. Ball, Manager

Greensprings Condominiums, LLC
by, Greensprings Plantation, Inc., Manager

Marc B. Sharp

cc: Mr. Gary Werner, President, Franciscus Homes, Inc.
Brian Slaughter, Esquire
Todd Fiorella, Esquire
Collin J. Hite, Esquire

EXHIBIT A – Six Braemar Creek Homeowners

Unit 3202 Angela & Diane Young (claim # assigned by Garretson, CDW_CF_798)

Unit 3204 Dale and Sharon Miller (claim # CDW_CF_324)

Unit 3205 Philip and Annemarie Amante (claim # CDW_CF_017)

Unit 3206 Antony and Ann Antoniou (U.K. citizens that do not have a social security #; illegal for them to obtain one; CDW_CF_021)

Unit 3207 Bryon Hand (claim # CDW_CF_186)

Unit 3310 Monica Sigmon (claim # CDW_CF_416)

## GENERAL RELEASE, COVENANT NOT TO SUE, AND ASSIGNMENT OF RIGHTS

This GENERAL RELEASE, COVENANT NOT TO SUE, AND ASSIGNMENT OF RIGHTS (this "Agreement"), is executed as of September 7, 2010 by and between Greensprings Condominiums, L.L.C. (the "Developer"), a Virginia Limited Liability Company; Greensprings Plantation, Inc., a Virginia Corporation, Plantation Group, L.L.C. (the "Builder"); a Virginia Limited Liability Company; Franciscus Homes, Inc., a Virginia Corporation; Frank R. Spadea Declaration of Trust dated March 15, 2002 and any amendment thereto by Frank R. Spadea, Trustee, or his successors in Trust; Bush Construction Corporation; and Bush Construction, Inc. (a non-existent entity) (together with their successors, members, managers, stockholders, employees, agents, representatives, and assigns referred to herein as the "Released Parties"), and Antony and Ann Antoniou (together with his or her or their heirs, tenants, representatives, agents, and assigns referred to herein as the "Homeowner").

Homeowner purchased from Developer located at 3206 Arran Thistle (the "Home"). In order to construct the Home, Builder contracted with an independent drywall installation subcontractor. The subcontractor obtained the drywall materials from one or more suppliers, distributors, importers, and manufacturers (the drywall subcontractor and the suppliers, distributors, importers, and manufacturers of the drywall materials are collectively referred to as the "Responsible Parties"). The Responsible Parties manufactured, distributed, and/or installed drywall that is reported to be in a defective condition (the "Defective Drywall") and that may have damaged other property in the Home (the "Damaged Property").

Homeowner has made a legal demand against one or more of the Released Parties for claims associated with the Defective Drywall and the Damaged Property. Homeowner alleges that the cost of repair of the Defective Drywall and the Damaged Property will cost $86 per square foot. This estimate is based on the analysis of Judge Eldon Fallon in the U.S. District Court for the Eastern District of Louisiana.

Now therefore, in consideration of the terms and conditions set forth below, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Released Parties and Homeowner agree as follows:

1. Released Parties agree to pay the Homeowner $42 per square foot for a total of $59,892. In consideration of the promises and payments by Released Parties described above, Homeowner hereby releases any and all claims, demands, losses, expenses or damages for property damage, bodily injury, tort, negligence, products liability, fraud, statutory violations, breach of contract, breach of express or implied warranty, if any, whether absolute or contingent, known or unknown, matured or unmatured, and/or any other cause of action arising out of, related to, and/or resulting from the Defective Drywall and the Damaged Property (the "Claims"). Such payment to Homeowner shall be held in escrow and Homeowner agrees to retain the Released Parties to perform reasonably necessary repair work to the Home in the manner described in the attached Scope of Work ("Repair Work"), attached hereto and incorporated by reference, at the cost of $42 per square foot.

1

Initials: _____ / _____ / _____ / _____ / _____
*Homeowner / Developer / Builder / Greensprings Plantation, Inc. / Franciscus Homes, Inc.*

a.  McGuireWoods LLP, or another acceptable entity, will hold all monies in escrow for the Homeowner and Released Parties. At the commencement of Repair Work McGuireWoods LLP will release to the Released Parties the total amount as noted in Paragraph 1 to compensation in performing the Repair Work. All Parties shall be notified of a request for release of funds to commence Repair Work. Homeowner agrees to execute any necessary documents to establish the escrow account and ensure timely release of funds as outlined herein.

b.  The Builder will meet with the Homeowner to determine starting date for remediation. Homeowner acknowledges that Repair Work will be done by Builder simultaneously on all units agreeing to Repair Work. Homeowner agrees to vacate unit and remove all personal belongings from the unit prior to commencement of Repair Work, but no later than September 7, 2010.

2.  In exchange for Released Parties paying the settlement amount for the Claims, Homeowner releases and forever discharges Released Parties of and from the Claims, and all other liabilities whatsoever, past, present, or future, vested or contingent, accrued or unaccrued, now known or hereafter discovered, both at law and in equity, whether direct or indirect, foreseen or unforeseen, which Homeowner had, now has, or in the future may have that arise out of or relate to the Defective Drywall, the Damaged Property and the Repair Work.

3.  In further exchange for Released Parties performing the Repair Work, Homeowner shall dismiss with prejudice any and all pending litigation against the Released Parties. Each party is to bear its own costs and attorneys' fees incurred in relation to the Claims.

4.  The Released Parties agree to transfer their rights to indemnity and contribution against all other parties to the Homeowner for recovery related to the full cost for the Repair Work. In order to facilitate such recovery, Released Parties hereby assign to Homeowner all of their right, title, and interest in and to all demands, actions, suits, sums of money, damages, liabilities, losses, causes of action, or claims against any individual or entity, and rights to recovery, whether in equity, at law, or otherwise, direct or indirect, known or unknown, foreseen or unforeseen, existing or which may later accrue in Released Parties' favor, which arise out of or in any manner are related directly or indirectly to the Claims. Any subsequent recovery by Homeowner up to $59,892 shall be returned to the Released Parties prior to any other payment of settlement or judgment funds, including attorneys' fees. The Homeowner hereby grants a lien to the Released Parties on any recovery for the cost of the repair work.

5.  Each party agrees that the facts on which this Agreement is based may hereafter prove to be different from the facts now known by it or believed by it to be true, and that facts not now known may be later discovered, and each party agrees that all of the terms of this Agreement shall be in all respects effective and that no mistake as to such facts (whether mutual or unilateral), and no later discovery of facts not now known, will justify rescission of this Agreement or the releases provided for herein. Furthermore, this Agreement and all papers relating to it are not, and shall not be construed as, an admission by any of the parties as to the

2

Initials _____ / _____ / _____ / _____ / _____
Homeowner / Developer / Builder / Greensprings Plantation, Inc. / Franciscus Homes, Inc.

validity of the Claims, or an admission by any of the parties of any liability or wrongdoing by any of them.

6. Homeowner warrants that (a) Homeowner has not settled or compromised, or released from liability any individual or entity, in whole or in part, with respect to any of the Claims, and further warrants that it will not do so in the future without the prior written consent of Developer; and (b) all documents, records, examinations, investigations, and information relating directly or indirectly to the Claims which are discovered in the future will be furnished to Developer promptly upon their discovery..

7. The parties agree that this Agreement contains the entire agreement between the parties hereto and may not be modified except in a writing signed by all parties. The parties agree they shall not be bound by any terms, conditions, statements, warranties, or representations, oral or written, not contained herein.

8. The parties shall keep the terms of this Agreement confidential and shall not disclose its terms to any third party without the prior knowledge and written consent of all parties except:

   a) if inquiry is made of any party or any person acting for such party about the dispute or the settlement, such party or individual shall simply state that the Claims have been resolved by mutual agreement; and

   b) to the extent a party discloses such necessary information to non-party recipients of subpoenas in order to relieve them of their obligations and advises such person(s) that any information disclosed is confidential and not to be disclosed to any other person.

9. In the event that any party to this Agreement brings suit to enforce this Agreement or for damages for breach of this Agreement, or any covenant, condition, or requirement contained in this Agreement, the prevailing party shall be entitled to recover from the opposing party, in addition to its damages or other remedy, all costs and reasonable attorneys' fees. Venue for any suit under this Agreement shall be the Circuit Court of James City County.

10. The provisions of this Agreement are severable. In the event that any provision of this Agreement shall be ordered or decreed to be unenforceable, it is the intent of Homeowner and Released Parties that the remaining provisions shall nevertheless be given full force and effect.

11. Homeowner acknowledges that Homeowner has read and fully understood the provisions of this Agreement and has executed this Agreement freely and voluntarily. Homeowner acknowledges that he or she has had an opportunity to consult with legal counsel if so desired. Therefore, the language of this Agreement shall not be construed presumptively against Homeowner or Released Parties.

3

Initials _____ / _____ / _____ / _____ / _____
Homeowner / Developer / Builder / Greensprings Plantation, Inc. / Franciscus Homes, Inc.

12. This Agreement shall be binding upon and inure to the benefit of Homeowner and Released Parties and their respective predecessors, successors, assigns, subsidiary corporations, heirs, personal representatives, agents, or other representatives.

13. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia, without regard to its conflict of laws principles. Nothing in this Agreement is intended or shall be construed to give any other persons or entities any right, remedy, or claim under or by reason of this Agreement.

14. This Agreement may be executed in any number of counterparts and by facsimile or electronic mail, and each counterpart shall be deemed an original, and all counterparts, taken together, shall constitute one agreement.

By signing below, Homeowner authorizes Released Parties to perform the Repair Work and agrees to the terms of this Agreement.

[Remainder of page left blank]

4

Initials: _____ / _____ / _____ / _____ / _____
Homeowner / Developer / Builder / Greensprings Plantation, Inc. / Franciscus Homes, Inc.

**IN WITNESS WHEREOF**, we have set our hands and seals.

---

**HOMEOWNER**

By: ANTONY ANTONIOU           [signature]

Date: 16 August 2010

CITY/COUNTY OF CHESHIRE         :
ENGLAND

The foregoing instrument was acknowledged before me this 16th day of August, 2010, by ANTONY ANTONIOU.

John Driver
Solicitor and
Notary Public
Hibberts LLP
Avenue Buildings
High Street, Tarporley
CW6 0AZ

[signature]
Notary Public

My Commission Expires: ON DEATH

---

**HOMEOWNER**

By: ANN ANTONIOU            [signature] Ann Antoniou

Date: 16 August 2010

CITY/COUNTY OF CHESHIRE         :
ENGLAND

The foregoing instrument was acknowledged before me this 16th day of August, 2010, by ANN ANTONIOU.

John Driver
Solicitor and
Notary Public
Hibberts LLP
Avenue Buildings
High Street, Tarporley
CW6 0AZ

[signature]
Notary Public

My Commission Expires: ON DEATH

---

5

Initials: AA / AA / MZB / MZB / MMB / NW
*Homeowner / Developer / Builder / Greensprings Plantation, Inc. / Franciscus Homes, Inc.*

**GREENSPRINGS CONDOMINIUM, L.L.C.**

By: _Michele Z Ball Vice President_
by: Greensprings Plantation, Inc.

Title: _Manager_

Date: _9/7/10_

~~CITY~~/COUNTY OF _James City_ :

The foregoing instrument was acknowledged before me this _7th_ day of _September_, 2010, by _Michele Z. Ball_, as _Vice President of Greensprings Plantation, Inc._, _Manager_ of Greensprings Condominium, L.L.C., a Virginia limited liability company, on behalf of the company.

_Gloria M. Judah_
Notary Public

My Commission Expires: _08/31/12_

---

**GREENSPRINGS PLANTATION, INC.**

By: _Marc B. Sharp_

Title: _President_

Date: _SEPTEMBER 7, 2010_

~~CITY~~/COUNTY OF _JAMES CITY_ :

The foregoing instrument was acknowledged before me this _7TH_ day of _SEPTEMBER_, 2010, by _MARC B. SHARP_, as _PRESIDENT_ of Greensprings Plantation, Inc., a Virginia corporation, on behalf of the corporation.

_Gloria M. Judah_
Notary Public

My Commission Expires: _08/31/12_

6

Initials: _AA_, _MZB_, _MZB_, _MBS_, _[illegible]_
Homeowner / Developer / Builder / Greensprings Plantation, Inc. / Franciscus Homes, Inc.

**PLANTATION GROUP, L.L.C.**

By: _Michele Z Ball_

Title: _Manager_

Date: _9/7/10_

~~CITY~~/COUNTY OF _James City_:

The foregoing instrument was acknowledged before me this _7th_ day of _September_, 2010, by _Michele Z. Ball_, as _Manager_ of Plantation Group, L.L.C., a Virginia limited liability company, on behalf of the company.

_Gloria M. Judah_
Notary Public

My Commission Expires: _08/31/12_

**FRANCISCUS HOMES, INC.**

By: _Gary Werny_

Title: _President_

Date: _9/9/10_

CITY/~~COUNTY~~ OF _Virginia Beach_

The foregoing instrument was acknowledged before me this _9_ day of _September_, 2010, by _Gary L Werner_, as _President_ of Franciscus Homes, Inc., a Virginia corporation, on behalf of the corporation.

Notary Public

My Commission Expires: _June 30, 2013_

7

Initials: ___, ___, ___, ___, ___
*Homeowner / Developer / Builder / Greensprings Plantation, Inc. / Franciscus Homes, Inc.*

**FRANK R. SPADEA DECLARATION OF TRUST DATED MARCH 15, 2002 AND ANY AMENDMENT THERETO BY FRANK R. SPADEA, TRUSTEE**

By: _[signature]_

Title: Trustee

Date: 9/9/10

CITY/COUNTY OF Virginia Beach :

The foregoing instrument was acknowledged before me this 9 day of September, 2010, by Frank R. Spadea, as Trustee of Frank R. Spadea Declaration of Trust dated March 15, 2002 and any amendment thereto by Frank R. Spadea, Trustee.

_[Notary seal: H. LEE PATRICK, COMMONWEALTH, REGISTRATION NO. 248470, MY COMM. EXPIRES 06/30/2013, OF VIRGINIA]_

_[signature]_ Notary Public

My Commission Expires: June 30, 2013

---

**BUSH CONSTRUCTION CORPORATION**

By: Michele Z Ball

Title: Vice President

Date: 9/7/10

CITY/COUNTY OF James City :

The foregoing instrument was acknowledged before me this 7th day of September, 2010, by Michele Z. Ball, as Vice President of Bush Construction Corporation.

_[Notary seal: GLORIA M. JUDAH, NOTARY PUBLIC, COMMISSION NUMBER 183307, COMMONWEALTH OF VIRGINIA]_

_[signature]_ Gloria M. Judah Notary Public

My Commission Expires: 08/31/13

8

Initials: _AA_ / _MZB_ / _MZB_ / _MZB_ / _[initials]_
*Homeowner / Developer / Builder / Greensprings Plantation, Inc. / Franciscus Homes, Inc.*

## SCOPE OF WORK

Tentative scheduled start date for repair work is September 7, 2010.

### CHINESE DRYWALL REMEDIATION AND REPAIR GUIDELINES

Remove and discard all wall to wall carpeting and padding.

Remove all cabinets, countertops, bath fixtures, plumbing fixtures (except tubs and showers), electrical fixtures, mirrors, finish hardware, and closet shelving for later reinstallation. Replace any items showing signs of corrosion or damaged during the process. Replace all laminate countertops with new.

Remove all appliances. Replace dishwashers with electronic controls and over the stove installed microwaves. Inspect/repair for reinstallation ovens, refrigerators, and washer dryers.

Remove interior trim and interior doors.

Remove all drywall in the unit, with the exception of moisture resistant drywall behind tub walls (that was not imported from China); vacuum up small debris and construction dust using a wet/vac equipped with a drywall filter bag.

Replace all insulation.

Replace all electrical wiring and connected devices (switches and receptacles).

Clean or replace any copper plumbing connections in accordance with local permitting authority. (Plastic piping was used for plumbing, not copper).

Remove and replace all fire sprinkler heads. Remove and replace all smoke detectors.

Remove and replace HVAC air handler and replace all HVAC thermostats. Replace all duct work and HVAC line sets.

After inspection by James City County officials of the demolition and cleaning, replace drywall with domestic Gypsum, replace and/or reinstall all trim, interior doors, cabinets, countertops, plumbing fixtures (except for tubs and showers), electrical fixtures, finish hardware, bath hardware, and shelving.

Replace carpeting throughout the unit with comparable grade selected when you purchased your home.

Walls that are replaced will be repainted with the same color as what we removed (matching as closely as possible if custom paint has been applied).

\15081546.1

9

Initials: _____ / _____ / _____ / _____ / _____
Homeowner / Developer / Builder / Greensprings Plantation, Inc. / Franciscus Homes, Inc.