# EXHIBIT 1



820 O'Keefe Avenue
New Orleans, Louisiana
70113-1116

p: (504) 581-4892
f: (504) 561-6024
e: info@hhklawfirm.com

hhklawfirm.com

Harry Herman (1914-1987)
Russ M. Herman*
Maury A. Herman*
Steven J. Lane
Leonard A. Davis*
James C. Klick[1]
Stephen J. Herman
Brian D. Katz
Soren E. Gisleson
Joseph E. Cain

Jennifer J. Greene[2]
John S. Creevy
Aaron Z. Ahlquist[3]
Craig M. Robinson
Adam H. Weintraub[4]
Mikalia M. Kott[5]
Donald A. Mau
Danielle Treadaway Hufft
Patrick R. Busby[6]

Of Counsel:
Herbert A. Cade
Morton H. Katz*
Joseph A. Kott, M.D., J.D.

This Firm and its Partners Are Also
Partners in Herman Gerel, LLP

* A Professional Law Corporation
[1] Also Admitted in Texas
[2] Also Admitted in Arkansas
[3] Also Admitted in Tennessee
[4] Also Admitted in New Jersey
 & Pennsylvania
[5] Also Admitted in Colorado
[6] Also Admitted in Alabama

April 7, 2014

Honorable Eldon E. Fallon
c/o United States District Court
Eastern District of Louisiana
500 Poydras Street
Room C456
New Orleans, LA 70130

    Re:    *In re: Chinese-Manufactured Drywall Products Liability Litigation*
           **MDL 2047**
           **LOUISIANA AG – STATUS REPORT**

Dear Judge Fallon:

    You requested at the last status conference that further discussion take place regarding the Louisiana Attorney General claim. On March 25, 2014, a conference call took place wherein David Black, Christopher Styron and Trey Phillips, on behalf of the Louisiana Attorney General, Jonas Baker, on behalf of Sunrise Construction and Development, Ashley Coker on behalf of Southern Homes, Dorothy Wimberly, on behalf of the Home Builders, Kerry Miller, Defendants' Liaison Counsel, and Arnold Levin and myself on behalf of the PSC, participated.

    Prior to the conference call, the Louisiana Attorney General provided a modified Profile Form.

## POSITION OF KNAUF, THE HOME BUILDERS AND THE PSC

    In the conference call, the PSC, Kerry and Dorothy, advised that with respect to the Louisiana Attorney General's Complaint ("Complaint"), they proposed that pursuant to the MDL Court's authority and discretion to identify, define, and resolve common issues and claims in MDL-2047 in an efficient and economical manner, the proper sequential course is for the MDL Court to:

1. Require Louisiana to file an amended complaint within thirty (30 days) that is consistent with its Plaintiff Profile Form ("PPF");

2. After the filing of the amended complaint, the Court set scheduling for Rule 12/56 briefing on common MDL-2047 claims set forth in the amended complaint;

3. Provide leave for defendants to amend the Notice of Removal and set scheduling for Motion to Remand, to the extent there are remaining issues uncommon to MDL-2047; and

4. After motions and remand are determined, the Court set scheduling for discovery of remaining common MDL-2047 claims to the extent there are any.

5. In the event discovery is to take place, the PSC believes that a Confidentiality Order should be addressed.

6. Furthermore, the PSC suggests that a deadline date be established for the PSC to file a motion seeking a common benefit fee as a result of the Louisiana Attorney General's claim.

Sections 22.634, 22.36 and 20.132 of the Manual Complex Litigation make clear that an MDL Court has the authority and discretion to identify, define, and resolve common issues to the MDL and can do so by requiring a claimant to list essential elements of its cause of action and/or by encouraging voluntary abandonment of tenuous claims. The Complaint and Louisiana's March 7, 2014, Plaintiff Profile Form ("PPF") are inherently inconsistent. Examples of inconsistencies include the following:

- The Complaint includes damages arising from Chinese drywall in buildings owned by the State of Louisiana and its subdivisions whereas the PPF expressly states that Louisiana has not discovered the presence of Chinese drywall in any State or subdivision owned buildings.

- The Complaint does not specifically seek civil penalties or fines under the Louisiana Unfair Trade Practices Act ("LUPTA") whereas the PPF requests relief "concern[ing] penalties" under LUPTA.

- The Complaint identifies all state departments, division, boards, commissions, agencies and other political subdivisions as being damaged by Chinese drywall whereas the PPF identifies only five: Department of Health & Hospitals; Department of Environment Quality; Department of Insurance; Office of Community Development, and; Department of Justice.

- The Complaint asserts that the Attorney General, as *parens patriae*, is seeking relief on behalf of **all** parishes, municipalities, and other local political subdivisions of Louisiana whereas the PPF lists only eight parishes: St. Tammany; St. Bernard; Orleans; Jefferson; Ascension; East Baton Rouge; West Baton Rouge, and; Tangipahoa.

Further, the Complaint and PPF are fundamentally inconsistent with the MDL Court's prior findings and rulings. For instance, after five years of substantial pretrial proceedings and expenditure of judicial resources, the Attorney General still names suppliers and builders that have either had claims against them dismissed at trial or settled.

April 7, 2014
PAGE 3

The MDL Court is permitted to probe and define the actual claims Louisiana intends to pursue prior to conducting a remand hearing on a complaint that is overbroad and inconsistent with Louisiana's PPF. By identifying and defining the Attorney General's claims, the Court and the parties may resolve issues in the Attorney General's case that are common with MDL-2047 by (1) applying applicable MDL rulings and findings and (2) coordinating proceedings to resolve remaining common issues.

At this stage it is unclear what claims the Louisiana Attorney General is pursuing. The first step should be for the Attorney General's claims to be identified and defined. Once that is done, it is possible that the claims against the manufacturers, suppliers and builders should be dismissed. These common issues should be identified, defined, and resolved by the MDL Court. Only after this is accomplished and in due course, and only if necessary, the MDL Court may permit the defendants leave to amend the Notice of Removal and consider remand on any remaining uncommon issues.

At this stage, the PSC does not believe that discovery is appropriate. Only after it is determined what, if any, claims exist should discovery proceed. Furthermore, the PSC believes that the State of Louisiana should have information within its own custody or control at this time necessary to support any claim it is pursuing. The State of Louisiana should not need to obtain from claimants information regarding settlements when the State of Louisiana should already have in its own possession tax information and other information to support the claims that it has pursued. These discovery issues will need to be addressed at a later date, if necessary. However, if the Court believes that discovery is appropriate, all parties believe that a Confidentiality Order is appropriate.

Finally, the PSC suggests that if the Louisiana Attorney General has a claim that is being pursued, then the PSC should be given a right to file a motion to recover a common benefit fee.

INEX, L&W and USG also join in the position of Knauf, the Home Builders and the PSC.

## POSITION OF THE LOUISIANA ATTORNEY GENERAL

On March 25, counsel for the State of Louisiana participated in what we understood was a meet and confer conference regarding the PSC's reversal of position regarding the agreement that Knauf and the PSC had made at the last status conference to produce certain information regarding Louisiana claimants summarized in the attached email of February 24. Such basic information applies directly to the State's damages, including the State's claim for reimbursement of damages suffered by its agencies (including e.g., DHH and OCD), its claims for reimbursement of lost tax revenues asserted on behalf of parishes and political subdivisions, and its LUTPA claims. Our request for this information was in direct response to the Court's direction that the State provide its current view of its claims in a Profile Form modified to fit the State's claims. Because the State's claims are unlike those of any homeowner and relate to facts not common to any other plaintiff, the homeowner Profile Form could not be used.

Despite volunteering to provide the State with this basic information, the PSC and apparently Knauf now refuse to produce it and incredibly in their Position statement above criticize the State's PPF for not providing information consistent with its Complaint. The State's determination of which parishes and political subdivisions have suffered revenue losses is directly related to the information that the PSC and Knauf now refuse to produce and that the PSC has refused in the past to produce. Even though the PSC

April 7, 2014
PAGE 4

purports to represent "Plaintiffs", it has consistently opposed the State's efforts to get information regarding its claims.

The Joint Position Statement of the PSC, Knauf and the Homebuilders ("Joint Position") sets forth a proposed schedule for activity on the State's case that purports to be based on the cited sections of the Manual for Complex Litigation. Those sections, however, do not apply to the circumstances at issue in the State's case, in which the State's Complaint was removed from state court on the basis of CAFA arguments that no longer constitute the law. The cited sections of the Manual relate to cases transferred to the MDL by Panel Order (sections 20.133 and 22.36) or properly pending in federal court (Section 22.60), neither of which is the State's situation. Section 22.36 of the Manual does contain one telling statement in the context of pending remand motions before a MDL Panel order issues: "If the transferor courts have not decided remand motions before the MDL Panel order is issued, the transferee court should try to resolve the remand motions promptly because they invariably affect federal subject-matter jurisdiction, and the failure to rule on them until a case is returned to the transferor court may result in unnecessary and prejudicial delay." The State has suffered such delay in its case, made worse by the PSC's refusal to provide information regarding Louisiana claimants.

The Joint Position asserts that the State's Complaint and its PFF are inconsistent. The State disagrees. A complaint constitutes a notice pleading, not a final statement of claims.

The State agrees that it wants to amend its Complaint, particularly in view of the facts developed in the recent Scherer deposition in Germany and other discovery and rulings occurring in Florida state court. The State also agrees that in doing so it may dismiss several defendants based on developments since January 2010. But the State will not agree to do so unless the Court directs that such amendment is not a waiver of its remand rights and is without prejudice to any position set forth in its remand papers. The State requests that such amended Complaint retain its Orleans Parish caption until its remand motion is decided. The State further requests 60 days to prepare its amended Complaint.

After the State provides its amended Complaint under the conditions described above and before any motion practice, the State requests that the Court set up a briefing schedule for its long pending remand motion. As Section 22.36 of the Manual for Complex Litigation acknowledges, a remand motion raises subject- matter jurisdictional issues that must be decided before merits- based issues. *See, e.g., Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1977); *Steel Co., v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). A court cannot decide the merits of a case without first assuring it has jurisdiction. *See, e.g., Steel Co.*, 523 U.S. 83, 94-95. The word 'shall' in 28 U.S.C. 1447(c) makes the Court's consideration of the remand motion mandatory, not discretionary: "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction the case **shall** be remanded." (emphasis added.) *See also, Crockett v. R.J. Reynolds Tobacco Co.*, 436 F. 3d 529, 531 n.1 (5th Cir. 2006) ("Although it reached the correct result, the district court should not have decided to bypass the jurisdictional question presented in the motion to remand and proceed directly to merits."); *Howard v. Food Lion, Inc.*, 232 F. Supp. 2d 585 (MD. N.C. 2002); *Austin v. Am. Gen. Fin., Inc.*, 900 F. Supp. 396, 398 n.1 ( M.D. Ala. 1995).

It is the State's position that the unanimous United States Supreme Court decision in *Mississippi ex rel. Jim Hood v Au Optronics Corp., et al.*, 134 S. Ct. 736 (2014) is dispositive of each of the bases asserted for the removal of this case and this Court lacks subject matter jurisdiction to decide Rule 12 and Rule 56

motions which the PSC and the defendants apparently contemplate making.

The State requests to be present when any discussions pertaining to its case occur. The State requests to be included in any monthly status conference pre- meeting that involves the State's case, including the remand motion. The PSC acknowledged in the March 25 conference that it had not in the past, does not now, and will not in the future speak for the State with respect to the State's claims. Yet, in the Joint Position above, the PSC attempts to coordinate discovery on behalf of the State (there is no other plaintiff in the State's case), claiming, "[a]t this stage, the PSC does not believe that discovery is appropriate." During the MDL discovery period, the PSC did not discuss with the State what pretrial discovery was necessary to develop evidence for the State's claims but rather pursued discovery only related to the claims of homeowners with Chinese drywall. When the State was notified about a deposition or other discovery that could lead to evidence with respect to the State's claims, the State participated. Sometimes the State found out about discovery relevant to its claims after it had occurred. The PSC has no right to attempt to direct the procedure concerning the State's claims, and the State objects to all such attempts by the PSC to do so. As has been acknowledged by all, the State's claims are much different from the homeowners' claims which the PSC represents, and the PSC has not identified any of the State's claims that it believes are common to the homeowners. Finally, "the PSC suggests that a deadline date be established for the PSC to file a motion seeking a common benefit fee as a result of the Louisiana Attorney General's claim." It is the State's position that setting up a deadline for such a motion before the State is paid for its claims would be premature.

All parties to the conference call of March 25, 2014 have had an opportunity to review and comment on this letter, which is being submitted jointly so that the Court can address the issues. The parties hereby request that the Court convene a conference to further advise on the next steps to be taken.

Sincerely,

LEONARD A. DAVIS

LAD:lmf
cc: David Black, Esq.
     Kerry Miller, Esq.
     Dorothy Wimberly, Esq.
     Arnold Levin, Esq.
     Russ M. Herman, Esq.

# EXHIBIT 1

## Bean, Karon L. (Perkins Coie)

**To:** Black, David L. (Perkins Coie)
**Subject:** State of Louisiana Drywall case--information Regarding Louisiana Claimants

**From:** Black, David L. (Perkins Coie)
**Sent:** Monday, February 24, 2014 1:19 AM
**To:** Kerry Miller (kmiller@frilot.com); Lenny Davis (LDAVIS@hhkc.com)
**Cc:** L. Christopher Styron (StyronL@ag.state.la.us)
**Subject:** State of Louisiana Drywall case--information Regarding Louisiana Claimants

Gentlemen:

During Thursday's status conference, we discussed the State's need for information regarding all known Louisiana drywall claimants. During that conference you identified information regarding three distinct groups of claimants.

The first group consists of those Louisiana claimants who made claims regarding what you called the "original settlements". As to Knauf claimants, we understand that the information will relate to those who had filed claims as of December 9, 2011. Those claimants include homes remediated under the Pilot Program. We understand that that information can be compiled by the settlement administrator, Brown Greer. We had tried to call Brown Greer to discuss this information before the status conference. We understand that you will arrange with Brown Greer for the information.

The second group includes Louisiana claimants who have submitted claims with respect to settlements that have followed from the "original settlements". We understand that such information is available only from you and that you will be providing it to us in the same format as that utilized by Brown Greer.

The third group of Louisiana claimants are those who remediated their homes on their own and now seek reimbursement for what they spent. We also understand that such information is available only from you and that you will provide it in the same format as that utilized by Brown Greer.

You have requested that we enter into a Confidentiality agreement regarding this information. Please provide us with a draft of that agreement as soon as you can.

We request the following information in Excel spreadsheet form:

- Property owner first and last name
- Property address (street number, street name, city, and zip code)
- Drywall installer for the address/property
- Drywall distributer or supplier
- Manufacturer of drywall (single type or mixed board)
- Insurer for the property
- Name of company that performed the drywall inspection
- Inspection date
- Drywall markings
- Locations of drywall markings
- Property type (residential, commercial, etc.)
- Square footage of the property, and if less the claim relates to less than the entire property, square footage of the claim
- Category of benefits provided
- Date that Remediation was completed or, if not yet completed, status of remediation
- Any other information that would help us understand what the subject claimants received or, if the decision regarding the claim is not yet made, the status of each claimant's claim.

Thank you for your help in getting us the information.

1

Best regards,

David Black


David L. Black | Perkins Coie LLP
Partner
1900 16th St. Suite 1400
Denver, CO 80202
Direct: 303-291-2309
Fax: 303-291-2409
Cell: 303-886-6475
DBlack@perkinscoie.com


Named one of FORTUNE® Magazine's "100 Best Companies to Work For" 2012