# Exhibit A

## Already Remediated Properties Protocol

I. Objective of Protocol

This protocol creates a process by which to resolve the Remediation Claims of individual Owners who self-remediated their Affected Properties or entered into a contract to self-remediate their Affected Properties prior to the Execution Date of the Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 (the "Settlement Agreement") on an Affected-Property-by-Affected-Property basis. This process consists of: (1) the Owner's provision of documents concerning the remediation; (2) a negotiation period; (3) a non-binding mediation, if necessary; and (4) if the mediation fails, a proceeding before the Court to resolve the Remediation Claims.

II. Definitions

Unless otherwise noted in this protocol, all defined terms shall have the meanings set forth in the Settlement Agreement.

III. Materials to Be Provided by the Owner

A. Prior to scheduling a negotiation pursuant to Paragraph IV, the Owner shall submit to the Settlement Administrator the following documentation concerning remediation of the Affected Property, to the extent that such documentation is in the possession, custody or control of the Owner or any person or entity hired or otherwise used by the Owner in connection with the remediation of the Affected Property, including, but not limited to, builders, contractors, and subcontractors:

1. Photographs and/or video images of all drywall removed from the Affected Property during remediation. For those Owners with claims pending in *In re: Chinese Drywall Products Liability Litigation*, MDL No. 2047 (the "MDL"), where available, such submission shall be in the form required by MDL Pretrial Order 1B. For those Owners with claims pending in state court, the submission shall comply with the state court's rules regarding the preservation of evidence.

2. Any evidence of KPT Chinese Drywall and Non-KPT Chinese Drywall, if any, in the Affected Property prior to remediation.

3. Proof of corrosion or other evidence that the KPT Chinese Drywall was reactive.

4. Interior photographs of the Affected Property immediately prior to the commencement of, and following completion of, the remediation, including photographs and/or video images of the flooring and major components such as cabinets, moldings, doors, intercom systems, and

Exhibit A

fixtures for every room and bathroom, and, to the extent possible, security systems, appliances and audio such as surround sound.

    a.    The photographs do not need to be pictures taken specifically for the litigation. For example, family photographs or photographs taken for purposes of refinancing a mortgage are acceptable in the absence of other photographs.

5. The remediation contract and an itemization from the contractor who performed the remediation work of the materials used during the remediation, including, but not limited to, manufacturer, model number, and quantity.

6. An itemized invoice from the contractor who performed the remediation work ("Itemized Invoice").

7. Proof of payment of the Itemized Invoice and any other expenses, such as cancelled checks, credit card statements, etc.

8. A floor plan of the Affected Property with dimensions.

9. An Environmental Certificate.

10. An Owner Disclosure Affidavit in the form attached as Exhibit 1, which includes a certification that the materials provided comprise all of the available documentation regarding the following:

    a.    The drywall that was in the Affected Property prior to the commencement of the remediation; and

    b.    The scope, extent, and cost of the remediation.

IV. Procedures for Resolving Remediation Claims

    A.    Negotiation Period

        1.    Within 25 business days of receipt of the Owner Disclosure Affidavit, the Knauf Defendants and the Owner shall schedule and hold an initial negotiation session to attempt to resolve the Owner's Remediation Claims in accordance with Paragraph IV (D) and subject to the conditions set forth in Paragraph V.

        2.    The Knauf Defendants and the Owner shall have 25 business days from the date of the first negotiation session to resolve the Owner's Remediation Claims (the "Negotiation Period"). For good cause, such as scheduling issues, the Negotiation Period may be extended by mutual agreement.

B. Non-Binding Mediation

1. If at the end of the Negotiation Period, the Knauf Defendants and the Owner have not resolved the Owner's Remediation Claims, the Knauf Defendants and Owner shall submit the Owner's Remediation claims to non-binding mediation before the Special Master. The Special Master shall schedule the non-binding mediation at a mutually agreeable date with the Owner and the Knauf Defendants, but in no event shall the mediation be more than 25 business days after the last day of the Negotiation Period unless the period is mutually extended by the parties.

2. Prior to the non-binding mediation, the Knauf Defendants and the Owner shall submit a brief statement describing the issues in dispute. Such statements shall not exceed 7 type-written double-spaced pages and shall attach any relevant documentation produced pursuant to Paragraph III as exhibits or other documents that may have been generated during the Negotiation Period to support or refute the Owner's claims.

3. In mediating the Remediation Claims, the Special Master shall follow the provisions set forth in Paragraph IV(D).

4. The Remediation Fund shall pay the cost of the non-binding mediation, including, but not limited to, the Special Master's time.

5. The parties may mutually agree to use a mediator other than the Special Master.

C. Court Proceeding

1. In the event the Mediation is unsuccessful, within 20 business days, the parties shall each make a written submission to the Court with respect to the Remediation Claims. Such submission shall not exceed 7 type-written double-spaced pages and shall attach any relevant documentation produced pursuant to Paragraph III as exhibits or other documents that may have been generated during the Negotiation Period and non-binding mediation to support or refute the Owner's claim. In addition, by mutual agreement of the parties, the Special Master shall also make a submission to the Court.

    a. If there is an issue as to the KPT Percentage in the Affected Property, by mutual agreement the parties may make submissions that exceed 7 type-written double-spaced pages.

2. The scope of the Court's review shall be limited to the Reimbursable Costs set forth in Paragraph IV (D).

3. To the extent that a Remediation Claim is submitted to the Court, the Court shall resolve the claims without a jury, as participation in this settlement constitutes a waiver by all parties to a jury trial.

4. The Court's resolution of the Remediation Claims shall be final without appeal.

5. Each party shall bear its own costs in connection with any Remediation Claim submitted to the Court.

D. Reimbursable Costs

1. The Knauf Defendants will reimburse the Owner only for reasonable costs that the Owner incurred in remediating the Affected Property ("Reimbursable Costs"). In determining Reimbursable Costs, the Knauf Defendants and Owner, Special Master (where necessary) and Court (where necessary), shall employ the following criteria:

   a. Only remediation work reasonably consistent with the Remediation Protocol shall be eligible for reimbursement.

   b. Any upgrades made to the Affected Property are not eligible for reimbursement.

      (1) To the extent that anything in the Affected Property was replaced, including, but not limited to, appliances baseboards, molding, flooring, cabinets and countertops, any reimbursement owed to the homeowners for such replacement shall be limited to the replacement costs of the specific item that was in place prior to the remediation. For example, if a Owner had to replace his/her 50-gallon water heater as part of the remediation, but replaced it with a 75-gallon water heater, only the cost of replacing the 50-gallon water heater with either an identical 50-gallon water heater or, if such water heater is no longer available, one that is substantially the same in quality and capacity as that which was replaced, shall be eligible for reimbursement.

      (2) To the extent that upgrades were made to comply with building codes and regulations in effect at the time of the remediation work, the Owner will be reimbursed solely to the extent that such upgrades are related to work covered by the Remediation Protocol. For example, the Remediation Protocol includes replacement of the electrical system. Therefore, if replacement of the electrical system included upgrades to comply with building codes and regulations in effect at the time of the remediation work, the Owner will be reimbursed for those upgrades. In

4

        contrast, the Remediation Protocol does not include replacement of the roof. Therefore, if the authority with jurisdiction requires repair of the roof to secure a certificate of occupancy, the Owner will not be reimbursed for such repair.

    c.    Reimbursable Costs shall not include costs attributable to contractor double billing, waste or fraud.

2.    Any amounts received or to be received by an Owner under a settlement agreement with any person or entity other than the Knauf Defendants arising from KPT Chinese Drywall shall be subject to Sections 4.8.1 and 4.8.2 of the Settlement Agreement.

3.    The Knauf Defendants' responsibility for the Reimbursable Costs shall be limited to the KPT Drywall Percentage, subject to the following conditions:

    a.    For Mixed Properties where the Owner has provided sufficient evidence to determine the KPT Drywall Percentage, the Reimbursable Costs shall be multiplied by the KPT Drywall Percentage.

    b.    For Mixed Properties where the Owner did not provide sufficient evidence to determine the KPT Drywall Percentage, the Knauf Defendants will separately negotiate with the Residential Property Owners, or in the event of a Court proceeding pursuant to Paragraph IV (C), the Court shall resolve, on an Affected-Property-by-Affected-Property basis, an appropriate discount of the Reimbursable Costs.

4.    The Special Master and the Court will take into consideration, in determining whether to allow a claim or the amount of the claim, whether the Owner has complied with MDL Pretrial Order 1B (if the claim is pending in the MDL) or with applicable state law requirements for preservation of evidence (if the claim is pending in state court). Subject to review by the Special Master or the Court, the failure to preserve evidence as required by law will result in disallowance or reduction in the amount of the claim if the failure has been prejudicial to a determination of the claim.

5.    All monies owed by the Knauf Defendants under an agreement between the Knauf Defendants and the Owner to resolve the Remediation Claims or Court resolution shall be paid by the Remediation Fund.

    a.    For Owners of individual units in Multiple Unit Properties, prior to payment of any amounts owed by the Knauf Defendants, the

Owner must provide a release from the Multiple Unit Property Governing Body.

V. Other Covered Expenses

The Remediation Fund will pay the Residential Owner a Lump Sum Payment pursuant to the terms set forth in Section 4.3.1.1 of the Settlement Agreement, but not the Delay Period Payment under Section 4.3.1.2, and subject to the following conditions:

A. Residential Owners of Mixed Properties who have provided sufficient evidence to determine the KPT Drywall Percentage, shall be paid an amount equal to the Lump Sum Payment multiplied by the KPT Drywall Percentage.

B. For those Residential Owners of Mixed Properties who did not provide sufficient evidence to determine the KPT Drywall Percentage, the Knauf Defendants will separately negotiate with the Residential Property Owners, or in the event of a Court proceeding pursuant to Paragraph IV (C), the Court shall resolve, on an Affected-Property-by-Affected-Property basis, an appropriate discount of the Lump Sum Payment consistent with the provisions in Section 4.3.4.1 of the Class Settlement Agreement.

VI. Entitlement to Benefits of Other Loss Fund

Pursuant to Section 1.1.2 of the Settlement Agreement, Owners are Class Members and shall be entitled to benefits under the Other Loss Fund as defined in Section 1.47 of the Settlement Agreement.

VII. Miscellaneous

A. Release and Dismissal

The Owner will release the Released Parties pursuant to the terms of the Settlement Agreement. In addition, the Owner shall dismiss with prejudice all claims relating to the KPT Chinese Drywall in the Affected Property pursuant to the terms of the Settlement Agreement.

B. Attorneys' Fees and Costs

All claims for attorneys' fees and costs arising from the Owner's claims, if such negotiation and/or mediation results in a resolution of the claims, shall be governed by Section 14 of the Settlement Agreement without regard to whether the Owner reaches an agreement with the Knauf Defendants to resolve the Remediation Claims.

C. Federal Rule of Evidence 408 and State-Law Analogs

Any settlement discussions between the Knauf Defendants and an individual Owner pursuant to Paragraph IV as well as submissions to the Special Master

pursuant to Paragraph IV (B) (2) are not intended to be, nor shall they in fact be, admissible, discoverable, or relevant in any case or other proceeding against the Knauf Defendants other than the Court proceeding described in Paragraph IV (C).