# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

|  |  |  |
|---|---|---|
|  | : | **MDL NO. 2047** |
| **IN RE: CHINESE MANUFACTURED DRYWALL** | : |  |
| **PRODUCTS LIABILITY LITIGATION** | : | **SECTION:  L** |
|  | : |  |
|  | : | **JUDGE FALLON** |
|  | : | **MAG. WILKINSON** |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. : 

**THIS DOCUMENT RELATES TO** *Germano, et al. v. Taishan Gypsum Co., Ltd., et al.*, **Case No. 09-6687**

<u>**ORDER & REASONS**</u>

Before the Court is Intervening Plaintiffs' Counsel's Petition for Fees and Costs.  Rec.

Doc. No. 3248.  For the following reasons, this Petition is DENIED IN PART and REFERRED

TO THE CLERK OF COURT IN PART.

**I.      BACKGROUND**

On May 1, 2009, Michelle Germano, Dennis Jackson, Sharon Jackson, Jason Dunaway,

and Lisa Dunaway, filed a class action Complaint on behalf of themselves and all others

similarly situated in the Commonwealth of Virginia ("Plaintiffs"), in the U.S. District Court for

the Eastern District of Virginia against defendants, Taishan Gypsum Co., Ltd., f/k/a Shandong

Taihe Dongxin Co., Ltd. ("Taishan"), Tobin Trading, Inc., Venture Supply, Inc., Harbor Walk

Development, LLC, and The Porter-Blaine Corp.  Thereafter, on May 26, 2009, a First Amended

Complaint was filed.  On August 3, 2009, service of process of the First Amended Complaint

was perfected on Taishan.  On October 13, 2009, the case was transferred to the Eastern District

of Louisiana where it was consolidated with MDL 2047.  On October 30, 2009, Plaintiffs filed a

Motion to Amend the First Amended Complaint, seeking to expand the class definition as it

pertains to Taishan from a Virginia state class to a national class.  Rec. Doc. No. 396.  The Court

granted the Motion, Rec. Doc. No. 469, and the Second Amended Complaint was entered into the record. Rec. Doc. No. 470.

Since Taishan did not timely respond or enter its appearance, on November 20, 2009, the Clerk of Court issued a preliminary default against Taishan. Rec. Doc. No. 487. On November 25, 2009, the Court issued a scheduling order setting an evidentiary hearing to address the scope and extent of appropriate remediation, and the cost of this remediation. Rec. Doc. No. 502. Pursuant to the Court's scheduling order, interested parties were permitted to intervene in the proceeding. *See id.* The Court granted a motion to intervene filed by William and Deborah Morgan, Preston and Rachael McKellar, Frederick and Vanessa Michaux, J. Jerry and Inez Baldwin, Joseph and Kathy Leach, Robert and Lea Orlando, and Steven and Elizabeth Heischober (collectively referred to as "Intervening Plaintiffs"). Rec. Doc. No. 641. Additionally, the Court granted the motions to intervene filed by defendants Knauf Plasterboard (Tianjin) Co., Ltd. ("Knauf"), Rec. Doc. No. 641, and The Mitchell Company ("Mitchell"). Rec. Doc. No. 682. However, both Knauf and Mitchell withdrew as defendant intervenors on the eve of the evidentiary hearing. *See* Rec. Doc. No. 1150. Nevertheless, on February 19 and 22, 2010, the evidentiary hearing was held, *see* Rec. Doc. Nos. 1223, 1258, after which the Court issued Findings of Fact and Conclusions of Law. Rec. Doc. No. 2380.

On May 11, 2010, the Court issued a Default Judgment against Taishan and in favor of the Intervening Plaintiffs. Rec. Doc. No. 3013. The Default Judgment awarded each Intervening Plaintiff damages, plus pre-judgment interest, post-judgment interest, and costs. *Id.* The Default Judgment also provided, "Pursuant to the Virginia Consumer Protection Act ("VCPA"), Va. Code § 59.1-204(B), the Court will award attorneys' fees and court costs to Intervening Plaintiffs' counsel, the amount to be determined at a subsequent date." Rec. Doc. No. 3013. The

Court directed the Intervening Plaintiffs to file a fee petition and supporting memorandum, and shortly thereafter they filed the present Petition for Fees and Costs. Rec. Doc. No. 3248.

On June 10, 2010, Taishan entered a Notice of Appearance in the litigation, Rec. Doc. No. 3669, and a Notice of Appeal of the Default Judgment[1]. Rec. Doc. No. 3670. The Court then issued an Order directing Taishan to submit a response to the Intervening Plaintiffs' Petition for Fees and Costs. Rec. Doc. No. 3690. Taishan filed a Response in opposition to the Petition. Rec. Doc. No. 4307.

The Court has received substantial briefing regarding attorneys' fees and court costs from the parties. It will now discuss the arguments raised in these briefs, the relevant facts and the applicable law to determine whether Intervening Plaintiffs are entitled to attorneys' fees and court costs, and if so, the amount of such.

## II.    PRESENT MOTION

Intervening Plaintiffs filed the present Petition for Fees and Costs seeking an award of attorneys' fees that comports with the contingency fee agreements entered into by the Intervening Plaintiffs and their counsel for 33-1/3% of the gross recovery in each case, totaling $919,452.17, and taxation of costs in the amounts provided for by law. Intervening Plaintiffs claim that they are entitled to the contingency fees provided for in their client agreements on the basis that this percentage is reasonable under Virginia law. Intervening Plaintiffs estimate that if the Court awards their requested attorneys' fees, their counsel will receive approximately

---

[1]Taishan's Notice of Appeal does not divest this Court of jurisdiction to determine attorneys' fees or court costs. *See Bank of La. v. Sungard Availability Servs., L.P.*, 2010 WL 1189496, at *1 (5th Cir. Mar. 29, 2010); *Kira, Inc. v. All Star Maint., Inc.*, 294 Fed.App'x 139, at **2 (5th Cir. 2008); *Proctor & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 524-25 (5th Cir. 2002).

$150.00 per hour, which they allege is "low by any standard" and "certainly 'reasonable' under the circumstances." Rec. Doc. No. 3248. Intervening Plaintiffs also allege that they are entitled to taxable costs in the amounts provided for by law, including costs for: filing the complaint, perfecting service, purchasing transcripts, transcripts of expert testimony, travel for expert witnesses, and trial exhibits.

Taishan has filed a Response in opposition to Intervening Plaintiff's Petition for Fees and Costs. Taishan contends that Intervening Plaintiffs are not entitled to attorneys' fees because they failed to serve Taishan with the Motion to Intervene and the Second Amended Complaint. Alternatively, Taishan argues that Intervening Plaintiffs are not entitled to attorneys' fees under the Virginia Consumer Protection Act. However, if the Court determines that Intervening Plaintiffs are entitled to attorneys' fees, Taishan claims that the amount of fees requested is unreasonable. Finally, Taishan claims that the costs sought by the Intervening Plaintiffs are beyond the scope of what the applicable law allows.

Intervening Plaintiffs have filed a Reply refuting each of the arguments raised in Taishan's Response.

The Court will now address the following issues raised by the Intervening Plaintiffs' Petition for Fees and Costs and Taishan's Response thereto: (1) whether service on Taishan was sufficient to permit Intervening Plaintiffs attorneys' fees; (2) whether Intervening Plaintiffs are entitled to attorneys' fees under the Virginia Consumer Protection Act; (3) whether the attorneys' fees requested by the Intervening Plaintiffs are reasonable; and (4) whether the costs requested by the Intervening Plaintiffs are recoverable under the applicable law.

## III.    LAW & ANALYSIS

**A.      Whether service on Taishan was sufficient to permit Intervening Plaintiffs to recover attorneys' fees**

Taishan argues that because it was never served with the Intervening Plaintiffs' Motion to Intervene, an accompanying pleading, and the Second Amended Complaint, this Court never acquired jurisdiction over Taishan with respect to the Second Amended Complaint upon which the Default Judgment was entered and which serves the basis for Intervening Plaintiffs' Petition for Fees and Costs.  Thus, according to Taishan, this Court lacks jurisdiction to award attorneys' fees to Intervening Plaintiffs.

In response, Intervening Plaintiffs contend that they were not required to serve the Motion to Intervene on Taishan since the Intervening Plaintiffs were only requesting to participate in the already existing claims and the Motion to Intervene raised no new claims for relief.  They further contend that service of the Second Amended Complaint was satisfied since there was substantial compliance with service requirements, particularly that Taishan had actual notice when it was physically served with the Complaint via Federal Express.  Finally, Intervening Plaintiffs argue that even if service of the Second Amended Complaint was ineffective, the First Amended Complaint, which was properly served on Taishan, remains the operative complaint and confers jurisdiction to this Court over Taishan to award attorneys' fees.

The parties dispute whether the Motion to Intervene and Second Amended Complaint were required to be properly served upon Taishan in order to confer jurisdiction to this Court to award attorneys' fees as a part of the Default Judgment.  A court lacks personal jurisdiction over a defendant when that defendant has not been properly served with a complaint.  *See Trust Co. of La. v. N.N.P., Inc*., 104 F.3d 1478, 1486 (5th Cir. 1997).  With regard to parties in default, such as Taishan, Federal Rule of Civil Procedure 5(a)(2) generally does not require service of

pleadings and other papers, such as a motion to intervene or an amended complaint which does not assert additional claims, but does require that "a pleading that asserts a new claim for relief against such a party must be served on that party pursuant to Rule 4." Fed. R. Civ. P. 5(a)(2). Additionally, Federal Rule of Civil Procedure 24(c) provides, "[a] motion to intervene must be served on the parties as provided in Rule 5. The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought."

In the present matter, it is undisputed that the First Amended Complaint was properly served upon Taishan. This Complaint defines the plaintiff class as "[a]ll owners and residents of residential homes in the Commonwealth of Virginia containing defective drywall manufactured, sold, distributed, and/or supplied by Taishan...." Rec. Doc. No. 1-1(case no. 09-6687, E.D. La.). The Intervening Plaintiffs fall within this class definition. *See* Rec. Doc. No. 548, Exs. A-I (stating that Intervening Plaintiffs are owners of residential homes in the Commonwealth of Virgina containing defective Chinese drywall); Rec. Doc. No. 2380, pp. 8-12 (finding by Court that defective Chinese drywall in Intervening Plaintiffs homes was manufactured, sold, distributed, and/or supplied by Taishan). The Motion to Intervene filed by the Intervening Plaintiffs did not raise any additional claims against Taishan and indicated only that Intervening Plaintiffs had an interest in the default judgment proceedings. *See* Rec. Doc. No. 548. Under Rule 24(c), a motion to intervene is to be served on all parties as provided in Rule 5. Fed. R. Civ. P. 24(c). With regard to parties in default such as Taishan, *see* Rec. Doc. No. 487, Rule 5 only requires service of pleadings which assert a new claim for relief against the party in default. Fed. R. Civ. P. 5(a)(2). Since the Motion to Intervene filed by the Intervening Plaintiffs did not

assert any new claims for relief against Taishan, service of this Motion on Taishan in accordance with Rule 4 was not required.

The parties also dispute whether service of the Second Amended Complaint on Taishan was sufficient to bring Taishan within this Court's jurisdiction to award attorneys' fees. As discussed above, there is no dispute that the First Amended Complaint was properly served upon Taishan. Additionally, the Intervening Plaintiffs are within the class definition of the First Amended Complaint and the Default Judgment was based upon the Virginia state law claims raised within the First Amended Complaint. The Second Amended Complaint only amended the First Amended Complaint insofar as expanding the class definition against Taishan to a national class and expanding the Virginia consumer protection claims to consumer protection claims for each state involved. None of these amendments would have affected Intervening Plaintiffs' claims. Thus, the Court finds that whether or not the Second Amended Complaint was properly served upon Taishan, the Court has sufficient jurisdiction to award attorneys' fees as a result of the proper service of the First Amended Complaint since Intervening Plaintiffs' claims were properly within the First Amended Complaint. *See Annunciation v. W. Capital Fin. Servs. Corp.*, 1996 WL 534049, at \*3 (9th Cir. Sept. 19, 1996)(holding that where an amended complaint is not properly served, and only the claims of the previously served complaint are involved in the judgment, the judgment is properly considered as based upon the previous complaint.). Accordingly, at this time the Court need not determine the validity of service of the Second Amended Complaint.

> **B.      Whether Intervening Plaintiffs are entitled to attorneys' fees under the Virginia Consumer Protection Act**

Taishan argues that the Intervening Plaintiffs have failed to state a claim under the Virginia Consumer Protection Act ("VCPA"), and thus are not entitled to the attorneys' fees awarded under the Act. In response, Intervening Plaintiffs contend they properly pled their VCPA claims in the First Amended Complaint. They claim that when the Default Judgment was entered against Taishan, the factual allegations supporting the VCPA claims were deemed admitted. Accordingly, the Intervening Plaintiffs claim they are entitled to attorneys' fees under the VCPA.

As discussed above, the Court entered a Default Judgment against Taishan based upon the allegations in the First Amended Complaint which include a claim against Taishan for violation of the VCPA. This VCPA claim provides the basis for Intervening Plaintiffs request for attorneys' fees. *See* Va. Code Ann. § 59.1-204(B)(permitting a party who prevails on a VCPA claim damages plus reasonable attorneys' fees and court costs); *see also* Rec. Doc. No. 3013(Default Judgment). Taishan now attacks the entry of the Default Judgment as it pertains to Intervening Plaintiffs' VCPA claim. The Fifth Circuit has stated with regard to challenging a default judgment,

> Attempts by a defendant to escape the effects of his default should be strictly circumscribed; he should not be given the opportunity to litigate what has already been considered admitted in law. The defendant by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established. A default judgment is unassailable on the merits but only so far as it is supported by well-pleaded allegations, assumed to be true.
>
> The corollary of this rule, however, is that a defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered. As the Supreme Court states in the "venerable but still definitive case" of *Thompson v. Wooster*: a default judgment may be lawfully entered only 'according to what is proper to be decreed upon the statements of the bill, assumed to be true,' and not 'as of course according to the prayer of the bill.' The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. In short,

despite occasional statements to the contrary, a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover. *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)(internal citations omitted).

Thus, the Court must determine whether the Intervening Plaintiffs' VCPA claims against Taishan are supported by "well-pleaded allegations of fact."

It is undisputed that the First Amended Complaint contains a claim that Taishan has violated the VCPA. *See* Rec. Doc. No. 1-1 (case no. 09-6687, E.D. La.). The Complaint states that Taishan's "sales of defective drywall to the Plaintiffs and Class Members, either directly or through agents, constitute transactions by a supplier under the [VCPA]." *Id.* The Complaint alleges that Taishans' "acts and omissions as well as [its] failure to use reasonable care in this matter as alleged in this Complaint, including, but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of the defective drywall constitute a violation of the aforementioned provisions of the [VCPA]." *Id.*

The VCPA lists 51 "fraudulent acts or practices" which are unlawful when "committed by a supplier in connection with a consumer transaction." Va. Code Ann. § 59.1-200. A number of these "fraudulent acts or practices" involve certain misrepresentations by the supplier, and are alleged in the First Amended Complaint. *See id.* at (A); Rec. Doc. No. 1-1 (case no. 09-6687, E.D. La.). A "supplier" is defined by the VCPA as "a seller, lessor or licensor who advertises, solicits or engages in consumer transactions, or a manufacturer, distributor or licensor who advertises and sells, leases or licenses goods or services to be resold, leased or subleased by other persons in consumer transactions." Va. Code Ann. § 59.1-198. "Consumer transactions" are defined in pertinent part as "[t]he advertisement, sale, lease, license or offering for sale, lease

-9-

or license, of goods or services to be used primarily for personal, family or household purposes."
*Id*. "Goods" are defined as "all real, personal or mixed property, tangible or intangible." *Id*.

When a manufacturer sells a component part to be used in the construction of homes to a supplier, builder or other commercial party, which in turn installs that part into a plaintiff's home, as has occurred in the present matter, the great weight of Virginia case law holds that this sale is not covered by the VCPA. *See In re Chinese Drywall Cases*, 2010 Va. Cir. LEXIS 43, at *33-35 (Va. Cir. Ct. Mar. 29, 2010)(holding that the sale of Chinese drywall, a good intended for use as a component part in the construction of a building, between commercial parties is not a consumer transaction within the meaning of the VCPA); *see also Murray v. Dryvit Sys., Inc*., 61 Va. Cir. 643, 648 (Va. Cir. Ct. 2002)(holding that the sale of synthetic stucco to a contractor or subcontractor which installed the stucco in plaintiff's home was not a consumer transaction within the VCPA); *Bindra v. Bowman*, 58 Va. Cir. 47, 50-51 (Vir. Cir. Ct. 2001)(holding the sale of synthetic stucco material between a manufacturer and a builder did not constitute a consumer transaction under the VCPA since the material was not purchased for primarily personal, family or household purposes); *Sargeant v. Early St. Props.*, 56 Va. Cir. 168, 170 (Va. Cir. Ct. 2001)(holding that the sale of synthetic stucco, a component part installed by a subcontractor during construction of plaintiffs' homes, was not a consumer transaction under the VCPA); *MacConkey v. J.F. Matter Design, Inc*., 54 Va. Cir. 1, 2 (Vir. Cir. Ct. 2000)(holding that the sale of exterior siding by the manufacturer to the subcontractor who installed the product on plaintiff's home was outside the purview of the VCPA ); *Winchester Homes, Inc. v. Hoover Universal, Inc.*, 27 Va. Cir. 62, 63-64 (Va. Cir. Ct. 1992)(sustaining demurrer as to alleged violations of the VCPA on the basis that the sale of building materials to be used as component parts in the construction of homes from a manufacturer to a building contractor is not covered by

the VCPA since it was not primarily for personal, family or household purposes).  Nonetheless, the Court recognizes that at least one case from Virginia has declined demurrer on a VCPA claim arising from the sale of a component part of a building between commercial parties.  *See Providence Vill. Townhouse Condo. Ass'n. v. Amurcon-Loudoun Corp.*, 33 Va. Cir. 165, 1994 WL 1031006, at *5 (Va. Cir. Ct. Jan. 18, 1994).  In *Providence Vilage Townhouse Condominium Ass'n. v. Amurcon-Loudoun Corp.*, 33 Va. Cir. 165, 1994 WL 1031006, at *5 (Va. Cir. Ct. Jan. 18, 1994), the court denied demurrer of such a claim, reasoning "[c]onsistent with the broad remedial nature of the [VCPA] and the focus on promoting fair and ethical standards for suppliers, each case must be judged on its own merits.  Accordingly, this, like other inquiries raised by the various pleadings in this case, must await a further factual inquiry."  *Providence Vill. Townhouse Condo. Ass'n. v. Amurcon-Loudoun Corp.*, 33 Va. Cir. 165, 1994 WL 1031006, at *5 (Va. Cir. Ct. Jan. 18, 1994).  However, the present matter does not present an opportunity for further factual inquiry.  Rather, the facts alleged are considered admitted by the default judgment, and the Court is required to determine whether these facts support a claim under the VCPA.  *See Nishimatsu,* 515 F.2d at 1206.

Notably, Judge Mary Jane Hall of the Circuit Court of the City of Norfolk, Virginia, who presides over consolidated cases filed in Virginia state court involving allegedly defective Chinese drywall, has authored a well-written opinion regarding whether the VCPA applies to the sale of Chinese drywall between manufacturer/supplier defendants.  *See In re Chinese Drywall Cases*, 2010 Va. Cir. LEXIS 43.  In *In re Chinese Drywall Cases*, 2010 Va. Cir. LEXIS 43, at *33-35, Judge Hall sustained the demurrer filed by manufacturer/supplier defendants on homeowner plaintiffs' VCPA claims, finding that the plaintiffs, as a matter of law, failed to state a claim under the VCPA since the transactions on which plaintiffs premised their VCPA

misrepresentation claims were beyond the scope of the VCPA. *In re Chinese Drywall Cases*,

2010 Va. Cir. LEXIS 43, at *33-35. Judge Hall reasoned that,

> A sale between commercial parties of a good intended for use as a component part in the construction of a building is not a 'consumer transaction' within the meaning of the VCPA....Plaintiffs had no direct contact with any of the Manufacturer/Supplier Defendants. The transactions in Chinese drywall in which those parties participated involved builders, contractors, and developers and fall outside the VCPA definition of 'consumer transaction.' *Id.*

Similarly, in the present matter, the sale of the Chinese drywall was from Taishan to certain

supplier, homebuilder, and/or installer defendants, not to the Intervening Plaintiff homeowners

directly. *See* Rec. Doc. No. 2380. Also, the Chinese drywall in the present matter constitutes a

component part which was later used in the construction of a home. Finally, the Intervening

Plaintiffs here have similarly alleged misrepresentation claims under the VCPA against Taishan.

Accordingly, the Court agrees with Judge Hall and finds that the Chinese drywall sold by

Taishan to supplier and/or homebuilder defendants constituted a commercial transaction, which

is outside the ambit of "consumer transaction[s]" covered by the VCPA. The Court finds that the

facts alleged by Intervening Plaintiffs to support their claims under the VCPA, although they

have been admitted by virtue of the default judgment, fail to legally support a claim under the

VCPA.

Since Plaintiffs base their entitlement to attorneys' fees solely upon the legally

insufficient VCPA claim and there exists no other statutory or contractual basis entitling them to

attorneys' fees, the Court finds that, under the applicable American Rule, Intervening Plaintiffs

are not entitled to attorneys' fees in the present matter[2]. *See Galveston County Navigation Dist.*

---

[2]The Court's holding that Intervening Plaintiffs are not entitled to an award of attorneys' fees from Taishan under the VCPA has no bearing on the validity or enforcement of the contracts entered into between Intervening Plaintiffs and their counsel and the provisions therein

*No. 1 v. Hopson Towing Co.*, 92 F.3d 353, 356 (5th Cir. 1996); *see also West Square, LLC v. Comm'ns Techs., Inc.*, 274 Va. 425, 433 (Va. 2007)(applying the American Rule in Virginia). Thus, the Court need not address the issue of whether the attorneys' fees requested by the Intervening Plaintiffs are reasonable.

> **C.    Whether the costs requested by the Intervening Plaintiffs are recoverable under the applicable law.**

Intervening Plaintiffs seek taxation of costs against Taishan in the amount provided by law. Pursuant to Local Rules 54.3.1E, M, and W, the Clerk of Court is responsible for determining taxation of costs. Accordingly, the portion of Intervening Plaintiffs' Petition pertaining to costs, and Taishan's responses thereto, are to be referred to the Clerk of Court for a determination of the taxable costs in the present matter.

## IV.    CONCLUSION

For the foregoing reasons, Intervening Plaintiffs' Counsel's Petition for Fees and Costs, Rec. Doc. No. 3248, is  DENIED   IN PART and REFERRED IN PART.

New Orleans, Louisiana, this 4th day of August, 2010.

_____
UNITED STATES DISTRICT JUDGE

CC: Clerk of Court, Ms. Lorretta G. Whyte

---

providing for attorneys' fees.