**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**MEMORANDUM OF LAW IN SUPPORT OF THE PLAINTIFFS' STEERING COMMITTEE'S MOTION FOR ADDITIONAL COMMON BENEFIT ASSESSMENTS,[1] FILED PURSUANT TO PRETRIAL ORDER NO. 28[2]**

Russ M. Herman (Bar No. 6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
**HERMAN, HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, LA  70113
Phone:  (504) 581-4892
Fax:  (504) 561-6024
Ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel in MDL 2047*
*Fee Committee Co-Chair/Secretary*

Arnold Levin
Frederick S. Longer
Sandra L. Duggan
**LEVIN, FISHBEIN, SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel in MDL 2047*
*Fee Committee Chair*

---

[1]  All members of the Plaintiffs' Steering Committee ("PSC"), with the exception of Mr. Becnel, have consented to the filing of this motion.  Mr. Becnel has lodged an objection hereto, and for that reason, his name does not appear as a signatory.  This motion is joined by the Court-appointed Fee Committee ("FC").

[2]  Rec. Doc. #17379, ¶ 9.

# TABLE OF CONTENTS

**Page**

**I.**    **INTRODUCTION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**II.**   **THE IMPOSITION OF A FAIR AND REASONABLE COMMON BENEFIT ASSESSMENT IS JUSTIFIED**. . . . . . . . . . . . . . . . . . . . . . . 3

**III.**  **ARGUMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      **A.**   **This MDL Has Inherent Authority to Award Common Benefit Fees**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      **B.**   **The Present Case Is Appropriate for a Common Benefit Fee Award**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**IV.**   **CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

**Page(s)**

*Blum v. Stenson*, 465 U.S. 886 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Boeing v.Van Gemert*,  444 U.S. 472 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1885). . . . . . . . . . . . . . . . . . . . . . . . 12

*Guidant Corp. Implantable Defibulators Prod. Liab. Litig.*, 2008 WL 682174
  (D. Minn. Mar. 7, 2008).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Agent Orange Prod. Liab. Litig.,* 611 F. Supp. 1296 (E.D.N.Y. 1985),
  *mod'd on other grounds*, 818 F.2d 226 (2nd Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006 (5th Cir. 1977). . . . . . . . . .  passim

*In re Bendectin Litig.*, 857 F.2d 290 (6th Cir. 1988), *cert. denied*,
  488 U.S. 1006 (1989).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 626 F. Supp. 2d
  1346 (J.P.M.L. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 706 F. Supp. 43 2d 655
  (E.D. La. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2010 WL 1710434
  (E.D. La. Apr. 27, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.,* 2013 WL 499474
  (E.D. La. Feb. 7, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

 *In re Copley Pharmaceutical, Inc.*, MDL 1013, 158 F.R.D. 485
  (D. Wyo. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*In re Diet Drugs*, 582 F.3d 524 (3d Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Diet Drugs Prod. Liab. Litig.*, 1999 WL 124414 (E.D. Pa. Feb. 10, 1999). . . . . . . . . . 15, 18

*In re General Motors Corporation Pick-up Truck Fuel Tank Prod. Liab. Litig.*,
  55 F.3d 768 (3d Cir.), *cert. denied*, 516 U.S. 824 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re MGM Grand Hotel Fire Litig.*, 660 F. Supp. 522 (D. Nev. 1987). . . . . . . . . . . . . . . . .  14,15

*In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*,
  982 F.2d 603 (1st Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17, 18

*In re Orthopedic Bone Screw Prod. Liab. Litig.*, 1996 WL 900349 (E.D. Pa.
  Jun.17, 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

*In re Propulsid Prod. Liab. Litig.*, MDL No. 1355, PTO No. 16
  (E.D. La. Dec. 26, 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

*In re Showa Denko K.K. L-Tryptophan Products Liability Litigation II*, 953
  F.2d 162 (4th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Swine Flu Immunization Prod. Liab. Litig.*, 89 F.R.D. 695 (D.D.C. 1980). . . . . . . . . . . .  17

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire
  Litigation*, 56 F.3d 295 (1st Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Vioxx Products Liab. Litig.*, 760 F. Supp. 2d 640 (E.D. La. 2010). . . . . . . . . . . . . . 7, 15, 18

*In re Zyprexa Prod. Liab. Litig.*, 2007 WL 2340790 (E.D.N.Y. Aug. 17, 2007). . . . . . . . . . 15, 19

*Landis v. North American Co.*, 299 U.S. 248 (1936). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*MacAlister v. Guterma,* 263 F.2d 65 (2nd Cir. 1958). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970).  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Seaman v. Spring Lake Park Indep. Sch. Dist. No. 16*, 387 F. Supp. 1168
  (D. Minn. 1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Smiley v. Sincoff,* 958 F.2d 498 (2nd Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 17

*Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939).  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Trustees v. Greenough*, 105 U.S. 527 (1881).  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830 (E.D. La. 2007). . . . . . . . . . . . . . . . . . 15

*Union Asset Management Holding, A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir.),
  *cert. denied*, 133 S. Ct. 317 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*Vincent v. Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . passim

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005). . . . . . . . . . . . . . . . . . . . 14


**STATUTES**

28 U.S.C. § 1407. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16


**OTHER AUTHORITIES**

*Awarding Attorneys' Fees and Managing Fee Litigation* at p. 51 (Fed. Jud. Ctr. 1994). . . . . . . 13

Eldon E. Fallon, *Common Benefit Fees In Multidistrict Litigation*, 74 La. L.
  Rev. 371 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

MANUAL FOR COMPLEX LITIGATION (FOURTH), § 10.221. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

MANUAL FOR COMPLEX LITIGATION, FOURTH, § 14.121 (Fed. Jud. Ctr. 2004). . . . . . . . . . . . . 13

MANUAL FOR COMPLEX LITIGATION (FOURTH), § 14.215. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## I.    <u>INTRODUCTION</u>

On May 16, 2014, the PSC and the FC filed a Consolidated Joint Petition for a Global Award of Attorneys' Fees and Reimbursement of Expenses, pursuant to Pretrial Order No. 28 [Rec. Doc. #17700] ("Global Fee Petition").  The Global Fee Petition seeks, on behalf of all common benefit counsel and individually retained counsel representing class members in the various class settlements in this complex and protracted Chinese Drywall litigation, an award of attorneys' fees and reimbursement of costs from the Banner, InEx, Knauf, L&W, Global, and Virginia class Settlements approved by the Court.  This Court entered Pretrial Order No. 28 "to provide for the orderly and efficient presentation and determination of a request for the award of attorneys' fees and reimbursement of litigation expenses, ... and subsequently an allocation from such an award."[3]  The Order contemplates a multi-step process for the submission of counsel's fee requests, the determination of any fee awards, and the allocation of those awards.

The PSC makes the instant request for additional common benefit assessments from those other Chinese Drywall cases and claims that were not participating in any of the various Class Action Settlement Agreements previously addressed in the Global Fee Petition.[4]  The FC joins the PSC's request.[5]  At this time, the Court should determine the PSC's entitlement to these common benefit fees.  Later, if the Court agrees that such fees are deserved, the quantum of the common benefit assessment may be determined.

---

[3] *Id*. at 1.

[4] *Id*. ("STEP FOUR: COMMON BENEFIT REQUEST FOR OTHER CASES").

[5] Pretrial Order No. 28 dictates that the instant motion is to be filed by the PSC, nevertheless, the FC joins and agrees with the requests made herein.

The intense efforts of the PSC and common benefit attorneys working at their direction have garnered for Plaintiff property owners the results described in detail in the Global Fee Petition.[6]  Those achievements are already tangible for the thousands of property owners whose properties have been remediated or are in line for, or in the process of, being remediated.  But these landmark results more broadly, and by design, have aided in the formation of externalities that have benefitted many other property owners who did not participate in the series of unique interrelated and interdependent class action settlements providing up to $1.1 billion to the aggrieved victims of Chinese-Manufactured Drywall ("CDW" or "Chinese Drywall").[7]  In addition, Defendant manufacturers, suppliers, builders, and installers, which are not Class Members in this litigation, also were benefitted by the PSC's efforts in the Knauf and other class action settlements.  These collateral benefits are deserving of recognition by the Court, through appropriate compensation in fees for those counsel who worked to bestow such valuable common benefits upon virtually every CDW victim.

Since the inception of the MDL, the PSC has worked fiercely and tirelessly to manage the unwieldy and complex legal dynamic presented by the CDW crisis.  From bringing the battle to distant lands such as China and Germany, to directing, assisting and supporting cases taking place nearby in neighborhoods and homes across Virginia, Florida, Louisiana and other Gulf-coast states, the PSC has diligently prosecuted this widespread litigation for more than five years.  This effort has proven fruitful, and surely justifies the endorsement of a fair and reasonable fee

---

[6]  Rather than repeat at length the factual statement of the PSC's common benefit efforts, the Global Fee Petition [Rec. Doc. #17700] is incorporated herein by reference.

[7]  *See id*.

assessment to compensate the common benefit counsel, including specifically the efforts of these counsel, which benefitted the individuals and entities that are the subject matter of the instant motion.

## II. THE IMPOSITION OF A FAIR AND REASONABLE COMMON BENEFIT ASSESSMENT IS JUSTIFIED

Chinese Drywall was imported into the United States in a careless and reckless manner as a consequence of the heightened demand for building supplies in the aftermath of Hurricanes Katrina and Rita.  Once in the country, this defective drywall wreaked havoc throughout Virginia and the Gulf-coast states, where it was predominately marketed.  The corrosive environment caused by CDW's off-gassing of noxious sulfur fumes created a contagion of litigation in the United States.  Lawsuits were filed across many state and federal venues.  Numerous Defendants were named in these actions.  The federal litigation was coordinated by the Judicial Panel on Multidistrict Litigation and assigned to this Court.[8]  State court litigation ensued around the Gulf-coast in venues where major suppliers or builders were using CDW.  Recognizing the difficulties presented by the burgeoning litigation, this MDL Court promptly appointed lawyers highly experienced in such complex litigation to aid in managing and confronting this behemoth litigation and also engaged in coordination with state court litigation.

The PSC swiftly engaged in multi-tasking efforts to organize and prosecute CDW claims for litigation Plaintiffs in this Court, while facilitating such claims in other parts of the country. Pleadings were developed to foster the MDL's preeminence and gravitas.  The creation and use of  Omni Complaints brought before the Court thousands of Plaintiffs, and the myriad Defendant

---

[8] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 626 F. Supp. 2d 1346 (J.P.M.L. 2009) [Rec. Doc. #1].

3

suppliers, builders, installers and insurers, associated with these Plaintiffs' properties.  These uniquely structured federal class action Omni complaints created an efficient (albeit expensive) means to interpose the enormous number of claims of the Plaintiffs against the foreign manufacturers of CDW, as well as the domestic Defendants, in the federal judiciary, generally, and in this MDL, specifically.  But the PSC's efforts went well beyond the federal judiciary; these efforts aided, assisted and contributed substantially to the results of many state court actions, as discussed herein.

Beyond mere pleading and dispositive motions practice, the PSC delved into understanding the science of CDW's off-gassing, mastering the manner of identifying CDW and its manufacturers, working under the Court's direction to determine how to remedy this tragedy by remediation.  In addition, the PSC girded itself for a series of bellwether trials which proceeded at a virtually unprecedented pace.  This Court received its Initial Transfer Order on June 15, 2009,[9] and in short order, the PSC was preparing for trials which would take place by early 2010.  The pace with which the PSC drove itself to meet this Court's deadlines and prepare for bellwether trials was critical to alleviate the burden on Plaintiffs, but put significant pressure on the PSC.  Great strides were made to address the extensive and widespread discovery that was necessary to prepare for trial.[10]  The foreign manufacturers and domestic Defendants became the focus of discovery.  Review of Defendant Fact Sheets, document productions and depositions

---

[9]  *Id.*

[10]  *See* Exhibit 11 to the 2014 Herman-Levin Decl. to Global Fee Petition (Chart of Discovery Propounded by the PSC) [Rec. Doc. #17700-13]; Exhibit 12 to the Herman-Levin Decl. to Global Fee Petition (Chart of Discovery Responded to by the PSC) [Rec. Doc. #17700-14].

was conducted at breakneck speed.  Complex issues of structural engineering, electrical

engineering involving component and system failures, chemistry and system failures, corrosion

and metallurgy, civil engineering and building code compliance, forensic accounting,

importation, distribution, and real estate and personal property appraisal (to name just a few), all

were addressed and mastered.  Experts in these fields were retained, reports were written, and the

witnesses were prepared to testify in their areas of discipline.[11]  Having created the state of the

art, the PSC then met frequently with federal and state officials, including the CPSC and state

building coder officials, to inform governmental policy.  The PSC furnished millions of dollars

of scientific and practical data gathered at the breakneck litigation pace to a lumbering regulatory

response.

Ultimately, two bellwether trials were conducted in the first half of 2010.  The *Germano*

and *Hernandez* trials resulted in Findings of Fact and Conclusions of Law that informed the

thousands of litigants of the scope of remedial efforts that would be required to eradicate the

insults caused by CDW and to fully remediate a contaminated property.[12]  These findings proved

useful for settlement purposes as well.  The PSC and Knauf Defendants employed these trial

results to begin a dialogue about global resolution.  Beginning with the Threshold Inspection

---

[11] *See* Exhibit 18 to the 2014 Herman-Levin Decl. to Global Fee Petition (Chart of Plaintiffs' Experts) [Rec. Doc. #17700-20].

[12] *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.* (*Germano*), 706 F. Supp. 43 2d 655 (E.D. La. 2010) (Findings of Fact and Conclusions of Law)*; In re Chinese-Manufactured Drywall Prods. Liab. Litig.* (*Hernandez*), 2010 WL 1710434 (E.D. La. Apr. 27, 2010) (Findings of Fact and Conclusions of Law).

Program,[12] then the KPT Pilot Program,[13] and ultimately the Knauf class action Settlement,[14] which included provisions for already remediated homes, the PSC strove to meet the needs of clients and all victims of CDW, who were languishing with their properties impacted by CDW, and the expectations of this Court to resolve this litigation as expeditiously as possible.

These great strides and strenuous efforts ultimately paid great dividends for Plaintiffs. The interrelated and interdependent class action Settlements provide up to $1.1 billion in benefits, with no deduction from remediation benefits to satisfy claimant fee obligations.  All Settlements have received final judicial approval.[15]  As a result, the Fee Committee and the PSC (pursuant to Pretrial Order No. 28) have filed a Global Fee Petition to be compensated for their efforts in achieving these remarkable Settlements.

The instant motion also is consistent with the dictates of Pretrial Order No. 28.  The PSC submits that now is the time to have a fair and reasonable common benefit assessment imposed upon those Chinese Drywall claims that are not subject to the Global Fee Petition.  These claims include the following:

> 1)      those cases identified in the Amended Global Settlement, Sections 4.2.2 & 16.6 (*i.e.*, Castle Rock Communities, LP, Coastal Construction Group of South Florida, Inc., Devon International Industries, Inc., Gulf Coast Shelter, Inc. and Shelter

---

[12]  *See* Pretrial Order Nos. 13 [Rec. Doc. #181] and 13A [Rec. Doc. #508].

[13]  *See* Settlement Agreement for the Demonstration Remediation of Homes with KPT Drywall, at http://www.laed.uscourts.gov/Drywall/DemonstrationRemediationAgreement.pdf.

[14]  *See* Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL 2047, available at http://www.laed.uscourts.gov/Drywall/Settlements/Knauf.amended.sa.December.2012.pdf.

[15]  *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.,* 2013 WL 499474 (E.D. La. Feb. 7, 2013).

Products, Inc., RCR Holdings II, LLC, and Shoma Homes Splendido, Inc.);

2)      those cases where agreements have been reached between the handling attorneys and the PSC with regard to common benefit fees, *e.g.*, Villa Lago class settlement Letter Agreement, Exhibit 5 to the 2014 Herman-Levin Decl. to Global Fee Petition [Rec. Doc. #17700-7], or where claims have been assigned to the PSC, *e.g.*, Shoma Homes Splendido, Inc. [Rec. Doc. #15695-6];

3)      those claims described in the Major Homebuilders Settlement Agreement [Rec. Doc. #10227-6];

4)      those voluntary settlements made pursuant to this Court's April 13, 2011 Order [Rec. Doc. #8545] as of May 20, 2014, and described in Exhibit 20 to the 2014 Herman-Levin Decl. to Global Fee Petition [Rec. Doc. #17700-23, filed under seal][16]; and

5)      those remaining extant claims of other third parties benefitting from the services and efforts of the PSC, including the Louisiana Attorney General.

Fee assessments are routinely imposed in multidistrict and other complex litigations where courts appoint lead counsel to prosecute multitudinous claims and assist the court, opposing counsel and the public through their common benefit efforts.  The authority for such assessments in the Fifth Circuit, and elsewhere, is as well-established as the principles which undergird them.  *See In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006 (5th Cir. 1977); *In re Diet Drugs*, 582 F.3d 524, 547 (3d Cir. 2009); *In re Vioxx Products Liab. Litig.*, 760 F. Supp. 2d 640, 648 (E.D. La. 2010)  The specific groundwork for such an order is already present in MDL 2047.

For example, in anticipation of a common benefit fee award, on April 13, 2011 [Rec.

---

[16]  These voluntary payments were made in settlements that were not directly subject to this Court's authority.  Ordinarily, without voluntary coordination, state court litigants are not subject to the Court's authority.  *See In re Showa Denko K.K. L-Tryptophan Products Liability Litigation II*, 953 F.2d 162 (4th Cir. 1992).  Counsel's acquiescence to this Court's authority to voluntarily pay the assessment therefore demonstrates the significance of the contribution of the PSC's work-product to the outcome of these contributing sources.

Doc. #8545], the Court entered an Order establishing a procedure whereby settling parties could voluntarily set aside payments from any settlement proceeds received outside of the nine class settlements ("Voluntary Common Benefit Payments"), in order to compensate common benefit counsel "at a future date." Under this program, attorneys could deposit into the registry of the Court an amount equal to 17% of all settlement proceeds from any settlement amount for a particular property, representing 12% for common benefit fees and 5% for common costs. *Id.* (this percentage is approximately 50% of the traditional contingent fee of 33⅓ - 40% utilized in the retainer agreements of individual homeowner counsel). As of the filing of the Global Fee Petition on May 16, 2014, $970,360.82 in Voluntary Common Benefit Payments were made.[17] *See* Chart of Voluntary Common Benefit Payments into Court Registry, filed under seal and attached as Exhibit 20 to the 2014 Herman-Levin Decl. to Global Fee Petition [Rec. Doc. #17700-23].[18] Another example is Pretrial Order No. 9, which put into place administrative

---

[17] Since the filing of the Global Fee Petition, additional Voluntary Common Benefit Payments have been made and audited by the Court-appointed CPA Philip A. Garrett.

[18] These voluntary payments were made by various counsel, including: PSC member Ervin Gonzalez (and his co-counsel, Arnold Levin, Richard Lewis and Richard Serpe) in connection with several cases including the *Seifart* matter tried in Florida state court and the *Harrell* class action from Florida state court (a matter in which the PSC actively participated); Robert Josefsberg for his firm's efforts in the *Harrell* litigation; Richard Serpe (and his co-counsel, Arnold Levin, Richard Lewis and Ervin Gonzalez) in connection with several settlements occurring in Virginia state court; other PSC members for settlements they obtained in state courts (*e.g.*, Dawn Barrios, Scott Weinstein, Ben Gordon, Daniel Bryson, and Len Davis); and non-PSC member, Sidney Torres. Similarly, counsel in the *Villa Lago* litigation also agreed to voluntarily pay the assessment applicable to that settlement. *See* Letter Agreement [Rec. Doc. #17700-8]. All of these counsel agreed to pay the voluntary assessment because they recognized the significance of the contributions to their litigations provided by the work product of the PSC and common benefit counsel acting at their direction. There remains one *Harrell* counsel whose obligation is outstanding, and the collection of these common benefit fees must be pursued by the PSC.

procedures for insuring that proper time and expense records were maintained.[19]

The PSC conferred substantial benefits not only on the Plaintiffs, but on a host of other non-PSC parties, including many parties that were Defendants in the litigation. The PSC brought the manufacturing Defendants into this litigation, enabling many smaller party Defendants, such as homebuilders, to assert claims against the major tortfeasors. For example, Knauf's participation in this MDL was a function of the PSC's Omni complaints. This greatly served the needs of the homebuilders, who sought contribution from the party they considered the most responsible for their liability. Proof that the homebuilders recognized this benefit is found in the Banner Settlement itself. If the Court grants the requested 32% fee award, certain homebuilders who have actively participated in this litigation and are seeking payments from that settlement for Affected Properties they repaired, a 22% overage in attorneys' fees will be returned to them, since the Banner Settlement provides only 10% attorneys' fees to the PSC and common benefit counsel in those cases.[20]

---

[19] Of course, those Various Homebuilders that have vocally proclaimed entitlement to common benefit attorneys' fees never adhered to the requirements imposed by Pretrial Order Nos. 9 and 9(A), or any of the Court's other directions, addressing guidelines for reporting time records and expenses incurred for common benefit work. *See*, *generally*, The Fee Committee and Plaintiffs' Steering Committee's Joint Response to Various Homebuilders Objection to Consolidated Joint Petition of the Fee Committee and Plaintiffs' Steering Committee for a Global Award of Attorneys' Fees and Reimbursement of Expenses, Filed Pursuant to Pretrial Order No. 28 [Rec. Doc. #17758].

[20] A dispute over the proper fees and costs to be paid for Affected Properties that were repaired by a Defendant who actively pursued this litigation and/or whose homeowner did not actively pursue litigation remains outstanding in regards to the Global Settlement. But regardless of the quantum that results, this dispute makes it crystal clear that the Homebuilders still recognize the benefits conferred by the PSC. That Certain Homebuilders have claimed that they may be entitled to seek common benefit fees from the Knauf Attorneys' Fees & Costs funds created by the PSC and common benefit attorneys reflects a misunderstanding on their part, and

(continued...)

Other benefits that befell other parties in this litigation as a result of the PSC's efforts to prosecute their clients' claims included:  1) the concentration of litigation in this Court, which also included direct actions against the insurers of many Defendant parties, joined insurers in this litigation, which provided a unique opportunity to resolve their exposure and that of their insureds/Defendants in what ultimately became the Global settlement; 2) the ability of downstream Defendants such as suppliers, builders and installers to pursue claims against other parties and limit their expenses; and 3) limiting liability exposure of parties in a manner that preserved their ability to continue their operations rather than enter bankruptcy.

The PSC also conferred a substantial benefit on Homebuilders by establishing the science and standards supporting an appropriate remediation protocol for homebuilder remediations. These efforts began with the PSC retaining the most preeminent experts and scientists in various fields to determine not only the effects and scientific properties of the drywall, but the most prudent and safe manner to remediate properties with reactive drywall.  Through the course of this litigation, major manufacturers and homebuilders proposed half-measures for remediation from ventilation systems, special coatings and sprays to partial remediations.  These "band-aids" for remediation were tested, vetted and debunked by the PSC and their experts.  The PSC advocated and supported nothing short of complete remediation consistent with the opinions of

---

[20](...continued)
highlights their implicit acknowledgment that the PSC and common benefit attorneys were the counsel responsible for these funds becoming available to common benefit counsel in the first instance.  These Homebuilders' counsel's efforts to obtain common benefit fees for work performed by the PSC, for which Homebuilders' counsel have already been compensated, was declined to be considered by this Court during the February 24, 2014 teleconference at which competing proposed orders submitted by Various Homebuilders' counsel and the PSC were discussed.  *See* February 12, 2014 Email of Hilarie Bass [attached hereto as Exhibit A] and February 17, 2014 Email of Leonard A. Davis [attached hereto as Exhibit B].

its experts.  These efforts resulted in the Court's decision in *Germano*, which became a template for the remediation protocols established by Knauf and Homebuilders alike.

The herculean efforts of the PSC in both time and expense resulted in two monumental achievements: the Pilot Program and the Major Builder Settlement.  The Pilot Program set forth well-recognized standards for scientifically appropriate protocols for remediation.  As a result, Homebuilders were able to remediate well over 1,000 homes with contribution from Knauf, and Knauf provided those funds as a result of the PSC's efforts.  Additionally, these remediations would not have been possible and agreed upon by Knauf without the Major Builder Settlement.  [Rec. Doc. #10227-6; Rec. Doc. #11279].  The Major Builder Settlement set the standards for homebuilder remediations consistent with the scope of work of the Pilot Program.  This ensured consistency and adequacy of the remediations with the prevailing scientific knowledge.  In addition, it enabled the Homebuilders and Manufacturers to secure releases of claims by meeting the standards set out by this Court through PSC efforts.  In addition, the PSC was instrumental in orchestrating efforts by major homebuilders to work with Knauf to remediate homes to benefit Plaintiffs.  This allowed for more expeditious remediations and ensured that the remediations would meet accepted protocols.

It is therefore beyond peradventure that the PSC contributed to the Homebuilder settlements, because they relied upon the Pilot Program, KPT Settlement Agreement and Major Builder Settlement, as acknowledged by Knauf.  The PSC, through a variety of means, has never wavered in or diminished its efforts to complete the tasks assigned to it by the Court, always with the objective of resolving this litigation successfully.  With the Knauf aspects of the litigation resolved, the PSC submits that it is deserving of compensation from the Homebuilders that

benefitted from its services.

### III.   ARGUMENT

#### A.   This MDL Has Inherent Authority to Award Common Benefit Fees.

Over one century ago, in *Trustees v. Greenough*, 105 U.S. 527 (1881), the United States Supreme Court made it clear that the federal trial courts possess equity power to reach beyond the confines of formal joinder, case captions and attorney fee contracts, to ensure that all who are the beneficiaries of litigation efforts undertaken for the common good would contribute proportionately to those services.  This doctrine was further articulated and applied in a series of landmark Supreme Court decisions, including *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1885); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *Boeing v.Van Gemert*,  444 U.S. 472 (1980); and *Blum v. Stenson*, 465 U.S. 886 (1984).

 In essence, the common benefit doctrine acknowledges "the original authority" of the courts "to do equity in a particular situation" to prevent unjust enrichment.  *Sprague v. Ticonic*, 307 U.S. at 166.  As the Supreme Court has observed, "[t]o allow the others to obtain full benefit from the plaintiffs' efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiffs' expense."  *Mills v. Electric Auto-Lite*, 396 U.S. at 392.

While the common benefit doctrine is routinely invoked as the basis for the award of attorneys' fees from common funds or benefits generated in class actions, it is clear that its application is not limited to the class context.  The Supreme Court's opinion in *Sprague* illuminates this point.  *Sprague* involved a trust fund that was jeopardized when a bank went into receivership.  After the plaintiff successfully sued for a lien establishing her right to recover from

the trust, she sought reimbursement of attorneys' fees from the trust.  Although the suit was not a

class action (like the numerous cases *sub judice* that are the subject of this assessment), had only

indirectly established the rights of others, and had not created a fund, the Court held that the

plaintiff was entitled to compensation from those benefitted by her efforts:

> That the party in a situation like the present neither purported to
> sue for a class nor formally established by litigation a fund
> available to the class, does not seem to be a differentiating factor
> so far as it affects the source of the recognized power of equity to
> grant reimbursements of the kind for which the petitioner in this
> case appealed to the chancellor's discretion.  Plainly the foundation
> for the historic practice of granting reimbursement for the costs of
> litigation other than the conventional taxable costs is part of the
> original authority of the chancellor to do equity in a particular
> situation.
>
> Whether one sues representatively or formally makes a fund
> available for others may, of course, be relevant circumstances in
> making the fund liable for his costs in producing it.  But when such
> a fund is for all practical purposes created for the benefit of others,
> the formalities of the litigation - the absence of an avowed class
> suit or the creation of a fund, as it were, through stare decisis rather
> than through a decree - hardly touch the power of equity in doing
> justice as between a party and the beneficiaries of his litigation.

*Sprague*, 307 U.S. at 166.  *See also Guidant Corp. Implantable Defibulators Prod. Liab. Litig.*,

2008 WL 682174, *5 (D. Minn. Mar. 7, 2008), *citing*, *Awarding Attorneys' Fees and Managing

Fee Litigation* at p. 51 (Fed. Jud. Ctr. 1994) ("[a]lthough many common fund cases are class

actions, . . . the doctrine is not limited to class actions"); MANUAL FOR COMPLEX LITIGATION,

FOURTH, § 14.121 at 186 (Fed. Jud. Ctr. 2004) ("The common-fund exception to the American

Rule is grounded in the equitable powers of the courts under the doctrines of *quantum meruit* and

unjust enrichment.") [hereafter the "MCL"]; Eldon E. Fallon, *Common Benefit Fees In*

*Multidistrict Litigation*, 74 La. L. Rev. 371, 375 (2014) ("But this doctrine is not limited solely to

13

class actions: it has been used in complex litigation to compensate attorneys whose work benefits others similarly situated.") [hereafter "*Common Benefit Fees*"].

Courts have generally used a percentage-of-recovery methodology to determine the amount of the common benefit fee in a mass tort setting where a fund is created. *See In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litigation*, 56 F.3d 295, 308 (1st Cir. 1995) ("the court below did not err in proposing to allocate fees based on the POF method, emphasizing the attorneys' 'relative contribution' to the creation of the Fund"); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method"); *In re General Motors Corporation Pick-up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir.), *cert. denied*, 516 U.S. 824 (1995) (recognizing application of the "percentage-of-recovery method" in mass tort cases "which do not actually generate a common fund"); *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 774-75 (9th Cir. 1977); *In re MGM Grand Hotel Fire Litig.*, 660 F. Supp. 522, 526 (D. Nev. 1987) ("When calculating a fee under the 'Common Benefit Doctrine,' 'a reasonable fee is based on a percentage of the Fund.'"). The Fifth Circuit is no exception, having adopted the percentage of fund award doctrine in *Union Asset Management Holding, A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir.), *cert. denied*, 133 S. Ct. 317 (2012).

**B.    The Present Case Is Appropriate for a Common Benefit Fee Award.**

Assessments are ordinarily imposed to provide a mechanism to compensate the PSC and other common benefit attorneys for services performed and expenses incurred for MDL administration and common benefit services for cases that were being prepared for trial. Aside from the global fund created here, there is ample authority for awarding a fee to the Plaintiffs'

14

management structure appointed by the Court, payable out of the fees derived from the representation of the individual litigants whose cases are subject to coordinated pretrial proceedings in the MDL transferee court. *See Vincent*, 557 F.2d at 769; *Florida Everglades*, *supra*; *In re MGM*, *supra*; *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 1996 WL 900349 (E.D. Pa. Jun.17, 1996); *In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 606-07 (1ˢᵗ Cir. 1992); *Smiley v. Sincoff,* 958 F.2d 498, 501 (2ⁿᵈ Cir. 1992); *In re Agent Orange Prod. Liab. Litig.,* 611 F. Supp. 1296, 1317 (E.D.N.Y. 1985), *mod'd on other grounds*, 818 F.2d 226 (2ⁿᵈ Cir. 1987); *In re Diet Drugs Prod. Liab. Litig.*, 1999 WL 124414 (E.D. Pa. Feb. 10, 1999); *In re Zyprexa Prod. Liab. Litig.*, 2007 WL 2340790 (E.D.N.Y. Aug. 17, 2007); *In re Propulsid Prod. Liab. Litig.*, MDL No. 1355, PTO No. 16 (E.D. La. Dec. 26, 2001)[21]; *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 862-64 (E.D. La. 2007); *Vioxx*, *supra*. *See*, *generally*, MANUAL FOR COMPLEX LITIGATION (FOURTH), § 14.215 at 202. Such "common benefit" fee awards have, in fact, become commonplace in mass tort litigation. *Id*. Two distinct doctrinal grounds support this "assessment power" and serve to inform its exercise.

The first basis for the exercise of a district court's assessment prerogative derives from the Court's docket management powers. As the Supreme Court said nearly half a century ago, a federal court has inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). Given the pressing demands imposed on federal courts by civil litigation of increasing volume and complexity, such "[m]anagerial power is not merely

---

[21]  Available at http://propulsid.laed.uscourts.gov/Orders/order16.pdf.

desirable.  It is a critical necessity."  *Florida Everglades*, 549 F.2d at 1012.  The crucial need for

the intensive exercise of the federal court's docket management powers was explicitly

recognized by Congress when it enacted 28 U.S.C. § 1407, which created the Judicial Panel on

Multidistrict Litigation and empowered it to transfer all federal cases involving "common

questions of law or fact" to a single federal district judge for "coordinated or consolidated pretrial

proceedings."  Such a transfer would accomplish little in terms of economy or efficiency if

counsel for thousands of individual plaintiffs in the transferred cases engaged in pretrial activities

in whatever manner they saw fit.

      Therefore, the creation and appointment of a plaintiffs' leadership structure to coordinate

discovery and other pretrial activities has long been considered  an essential element in the

proper management of MDL litigation.  *See* MCL, § 10.221; *Vincent*, 557 F.2d at 774 (noting

"[t]he benefits achieved by consolidation and the appointment of general counsel, *i.e.*,

elimination of duplication and repetition and in effect the creation of a coordinator of diffuse

plaintiffs through whom motions and discovery proceedings will be channeled"); *MacAlister v.

Guterma,* 263 F.2d 65, 68 (2nd Cir. 1958) ("Certainly, overlapping duplication in motion

practices and pre-trial procedures occasioned by competing counsel representing different

plaintiffs in separate . . . actions constitute the waste and inefficiency sought to be avoided by

[the Federal Rules of Civil Procedure] . . .  An order consolidating . . . actions during the pre-trial

stages, together with the appointment of a general counsel [for the plaintiffs] may in many

instances prove the only effective means of channeling the efforts of counsel along constructive

lines and its implementation must be considered within the clear contemplation of the rule[s]");

*Smiley*, 958 F.3d at 499  ("Plaintiffs' Committee formed to avoid duplicate discovery and widely

16

varying pretrial rulings"); *Nineteen Appeals*, 982 F.2d at 605 ("Court appointed a plaintiffs'

committee to organize the plaintiffs' side of the litigation"); *In re Bendectin Litig.*, 857 F.2d 290,

297 (6th Cir. 1988), *cert. denied*, 488 U.S. 1006 (1989) ("in complex case judge may create a

plaintiffs' committee for lead counsel").  The members of such a leadership  structure assume a

quasi-public function similar to court-appointed masters, arbitrators and experts:

> To a degree, lead attorneys become officers of the court.  By
> making manageable litigation that otherwise would run out of
> control they serve interests of the court, the litigants, the other
> counsel, and the bar, and of the public at large, who are entitled to
> their chance at access to unimpacted courts.

*Florida Everglades*, 549 F.2d at 1017.

The inherent power of the federal courts to appoint a plaintiffs' management structure in

complex litigation necessarily includes the power to provide a means of compensation for the

services provided by the members of the management structure separate and apart from the

private fee arrangements with their individual clients:

> [I]f lead counsel are to be an effective tool the court must have
> means at its disposal to order appropriate compensation for them.
> The court's power is illusory if it is dependent upon lead counsel's
> performing the duties desired of them for no additional
> compensation. ***  The interests to be served are too important to
> be left to volunteers (or draftees) who are unpaid in the sense that
> they get nothing additional.  The limitations of relying upon unpaid
> lead or liaison counsel are demonstrated by...history....

*Florida Everglades*, 549 F.2d at 1016.  *Accord*, *e.g.*, *Vincent*, 557 F.2d at 774-75; *Smiley*, 958

F.2d at 499 ("Court can establish fee structure to compensate members of plaintiffs' committee

for their work on behalf of all plaintiffs"); *In re Swine Flu Immunization Prod. Liab. Litig.*, 89

F.R.D. 695, 699 n.3 (D.D.C. 1980) (court's authority to appoint and compensate steering

17

committee is "beyond question"); *Nineteen Appeals*, 982 F.2d at 607 (court may devise way to compensate steering committee); *In re Diet Drugs*, 2002 WL 32154197 at *17 ("It is now commonly accepted in complex multiparty litigation that a court can and in fact should appoint a committee such as the PMC to coordinate the litigation and ease the administrative burden on the court.  As a corollary to this appointment, the court must be permitted to compensate fairly the attorneys who serve on such a committee.").  *See also Vioxx*, 760 F. Supp. 2d at 647-48 ("MDL courts have consistently cited the common fund doctrine as a basis for assessing common benefit fees in favor of attorneys who render legal services beneficial to all MDL plaintiffs").

The second basis for the exercise of federal court power to assess recoveries by individual plaintiffs' counsel in order to compensate the members of a court-appointed management structure, derives from the equitable powers of judiciary to prevent unjust enrichment through application of the same common fund doctrine that supports the award of counsel fees in class actions.  Absent an order shifting  payment of fees to those who actually perform the work that is common to all cases in a mass tort MDL, each of the individual plaintiffs' attorneys has an "incentive to rely on others to do the needed work, letting those others bear all the costs of attaining the parties' congruent goals."  *Nineteen  Appeals*, 982 F.2d at 606.  Federal courts may properly bring the common fund doctrine to bear to remedy this "incipient free rider" problem.  *Id*. at 607 (court essentially used common fund fee award in trying to avoid free-rider problem); *Seaman v. Spring Lake Park Indep. Sch. Dist. No. 16*, 387 F. Supp. 1168, 1173 (D. Minn. 1974) (purpose of common fund doctrine is to apportion fees among beneficiaries and thereby prevent free-riding).  This procedure now has become the established practice in pharmaceutical liability litigation.  *See Vioxx*, *supra*; *Orthopedic Bone Screws*, *supra*; *Diet Drugs*, *supra*; *Propulsid*,

*supra*; *Zyprexa*, *supra*; and *In re Copley Pharmaceutical, Inc.*, MDL 1013, 158 F.R.D. 485 (D. Wyo. 1994).

Accordingly, this Court should recognize its authority to impose an appropriate percentage assessment upon those Chinese Drywall cases and claims that were not participating in any of the various Class Action Settlement Agreements that were previously addressed in the Global Fee Petition.

## IV.   CONCLUSION

The efforts of the PSC not only contributed to residential and other properties being remediated but also enabled a host of commercial entities, *e.g.*, suppliers, builders, installers and their insurers, to successfully conclude all litigation in which they were Defendants and to protect their interests into the future.  This was a significant benefit to these commercial and insurance entities for which the PSC is entitled to compensation.

For the reasons set forth above, the PSC respectfully requests that this Court grant the motion for additional common benefit assessments, filed pursuant to Pretrial Order No. 28, and recognize our entitlement to such an assessment in the following cases:

1)   those cases identified in the Amended Global Settlement, Sections 4.2.2 & 16.6 (*i.e.*, Castle Rock Communities, LP, Coastal Construction Group of South Florida, Inc., Devon International Industries, Inc., Gulf Coast Shelter, Inc. and Shelter Products, Inc., RCR Holdings II, LLC, and Shoma Homes Splendido, Inc.);

2)   those cases where agreements have been reached between the handling attorneys and the PSC with regard to common benefit fees, *e.g.*, Villa Lago class settlement Letter Agreement, Exhibit 5 to the 2014 Herman-Levin Decl. to Global Fee Petition [Rec. Doc. #17700-7], or where claims have been assigned to the PSC, *e.g.*, Shoma Homes Splendido, Inc. [Rec. Doc. #15695-6];

3)   those claims described in the Major Homebuilders Settlement Agreement [Rec. Doc. #10227-6];

4)      those voluntary settlements made pursuant to this Court's April 13, 2011 Order [Rec. Doc. #8545] as of May 20, 2014, and described in Exhibit 20 to the 2014 Herman-Levin Decl. to Global Fee Petition [Rec. Doc. #17700-23, filed under seal]; and

5)      those remaining extant claims of other third parties benefitting from the services and efforts of the PSC, including the Louisiana Attorney General.

At an appropriate time hereafter, assuming that the Court agrees that such fees are deserved, the quantum of the common benefit assessment may be determined.

Respectfully submitted,

Dated: July 9, 2014                              /s/ Russ M. Herman
                                                Russ M. Herman, Esquire (Bar No. 6819)
                                                (On the Brief)
                                                Leonard A. Davis, Esquire (Bar No. 14190)
                                                (On the Brief)
                                                Stephen J. Herman, Esquire (Bar No. 23129)
                                                HERMAN, HERMAN & KATZ, LLC
                                                820 O'Keefe Avenue
                                                New Orleans, LA 70113
                                                Phone: (504) 581-4892
                                                Fax: (504) 561-6024
                                                Ldavis@hhklawfirm.com
                                                *Plaintiffs' Liaison Counsel in MDL 2047*
                                                *Fee Committee Co-Chair/Secretary*

                                                Arnold Levin (On the Brief)
                                                Fred S. Longer (On the Brief)
                                                Sandra L. Duggan (On the Brief)
                                                LEVIN, FISHBEIN, SEDRAN & BERMAN
                                                510 Walnut Street, Suite 500
                                                Philadelphia, PA 19106
                                                Phone: (215) 592-1500
                                                Fax: (215) 592-4663
                                                Alevin@lfsblaw.com
                                                *Plaintiffs' Lead Counsel in MDL 2047*
                                                *Fee Committee Chair*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com
*Fee Committee Member*

Peter Prieto
PODHURST ORSECK, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Bruce William Steckler
STECKLER LLP
12720 Hillcrest Road - Suite 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Ervin A. Gonzalez
COLSON HICKS EIDSON
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
LEVIN, PAPANTONIO, THOMAS, MITCHELL
 ECHSNER & PROCTOR, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
LAMBERT AND NELSON
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Gerald E. Meunier
GAINSBURGH, BENJAMIN, DAVID, MEUNIER
 & WARSHAUER, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com
*Fee Committee Member*

Jerrold Seth Parker
PARKER, WAICHMAN, ALONSO, LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
MORGAN & MORGAN
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves, Jr.
REEVES & MESTAYER, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@attorneys4people.com

Christopher A. Seeger
SEEGER WEISS, LLP
77 Water Street, 26th Floor
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com
*Fee Committee Member*

Daniel K. Bryson
WHITFIELD BRYSON & MASON LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5035
dan@wbmllp.com

Richard J. Serpe
LAW OFFICES OF RICHARD J. SERPE
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com
*Fee Committee Member*

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
Kristen Ward Broz
HAUSFELD LLP
1700 K Street, NW, Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
LEMMON LAW FIRM, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Anthony D. Irpino
IRPINO LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

22

**FEE COMMITTEE MEMBER**

Michael J. Ryan
KRUPNICK CAMPBELL MALONE
BUSER SLAMA HANCOCK LIBERMAN
12 S.E. Seventh Street, Suite 801
Fort Lauderdale, FL 33301
Phone: (954) 763-8181
Fax: (954) 763-8292
*Fee Committee Member*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 9th day of July, 2014.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*
*Co-counsel for Plaintiffs*