# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  **CHINESE-MANUFACTURED** | * | **MDL 2047** |
| **DRYWALL PRODUCTS** | * | |
| **LIABILITY LITIGATION** | * | **SECTION "L"** |
| | * | |
| | * | **JUDGE FALLON** |
| **This document relates to:** | * | |
| **10-cv-0340** | * | **MAGISTRATE JUDGE WILKINSON** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## AMENDED NOTICE OF REMOVAL

**NOW INTO COURT**, through undersigned counsel, come Knauf Defendants,[1] with the consent of all Non-Taishan Defendants, who, pursuant to the Joint Scheduling Order (Rec. Doc. 17697) signed by the Court on May 20, 2014, and with a full reservation of rights,[2] hereby amend its Notice of Removal to the civil action in the Civil District Court for the Parish of Orleans, State of Louisiana, entitled "*The State of Louisiana, ex rel. James D. ("Buddy") Caldwell, the Attorney General of Louisiana vs. Knauf Gips KG; Knauf International GmbH; Knauf Plasterboard (Tianjin) Co. Ltd.; Knauf Plasterboard (Wuhu) Co. Ltd.; Guangdong Knauf New Building Material Products Co. Ltd.; Knauf Insulation, GmbH; Gebrueder Knauf Verwaltungsgesellschaft, KG; Taishan Gypsum Co. Ltd.; Taian Taishan Plasterboard Co. Ltd.; Interior Exterior Building Supply, L.P.; USG Corporation; United States Gypsum Company;*

---

[1] Knauf Plasterboard (Tianjin) Co. Ltd; Knauf Plasterboard (Wuhu) Co. Ltd.; Guangdong Knauf New Building Material Products Co. Ltd.; Knauf Insulation, GmbH.

[2] By filing this Amended Notice of Removal, Defendants do not waive their right to assert that Louisiana's Notice of Compliance  (Rec. Doc. 17796) was deficient and did not comply with the Court's May 20, 2014 Joint Scheduling Order (Rec. Doc. 17697).  Instead of filing an amended complaint as required by the Court's May 20, 2014 Joint Scheduling Order, Louisiana filed a "Notice of Compliance with Court Orders" with a "First Amended and Restated Petition" attached as Exhibit 1.

*USG Interiors, Inc.; and L&W Supply Corporation d/b/a Seacoast Supply*," (the "Caldwell Action" or "Caldwell Petition") upon showing that:

## I.     BACKGROUND

1.     The background of this case and Chinese drywall related litigation is best summarized by Judge Eldon Fallon who oversees the Chinese drywall MDL located in the United States District Court for the Eastern District of Louisiana:

> The present litigation arises from alleged property damage and personal injuries caused by the presence of Chinese drywall in homes and other buildings. Hurricanes Katrina and Rita devastated the Gulf Coast in 2005. These disasters, coinciding as they did with a boom in new housing construction, helped precipitate a shortage of drywall for the construction and reconstruction of homes in the United States. As a result, from approximately 2005 to 2008, Chinese drywall entered the United States market, changing hands in the chain of commerce, and ultimately finding its way into thousands of homes and buildings in the United States, primarily in Florida, Louisiana, Alabama, Mississippi, Texas, and Virginia. Sometime after the installation of Chinese drywall in these properties, homeowners, residents, and occupants began to notice and complain of odd odors, corrosion of metal components, failure of electronics and appliances, and in some cases, physical ailments, such as nose bleeds, skin irritation, and respiratory problems. In response to these complaints, a number of governmental agencies and special interest groups, notably the federal Consumer Products Safety Commission and the Department of Housing and Urban Development, began to investigate, conduct testing, and issue remediation protocols related to Chinese drywall.

> The present litigation commenced with the filing of law suits in 2009 in both federal and state courts by property owners and occupants damaged by the Chinese drywall installed in their residences and businesses, in addition to suits filed by some homebuilders who repaired these properties. Defendants and declaratory judgment plaintiffs include homebuilders, developers, installers, retailers, realtors, brokers, suppliers, importers, exporters, and distributors, as well as their insurers and the insurers of homeowners, who were involved with the Chinese drywall in the affected properties. Because of the commonality of facts in the various federal lawsuits, the litigation was designated as Multi–District Litigation 2047 by the Judicial Panel on Multidistrict Litigation. On June 15, 2009, the Panel transferred all federal actions alleging damages from Chinese drywall to this Court, the U.S. District

> for the Eastern District of Louisiana, for coordinated and consolidated proceedings.
>
> Since the inception of MDL 2047, approximately three years ago, numerous cases have been consolidated, containing thousands of claims; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers; it has presided over monthly status conferences, hearings, and several bellwether trials; it has issued numerous opinions, pretrial orders, and minute entries; the Court has facilitated several mediations; and over 16,000 record documents have been filed. When discovery disputes threatened to cause unreasonable delay, the Court traveled to China in order to supervise depositions. Additionally, the Court has corresponded and coordinated with a number of state and federal court judges who also preside over related Chinese drywall cases.

*In re Chinese-Manufactured Drywall Products Liability Litigation*, MDL 2047, 2013 WL 499474, at *1-2 (E.D. La. Feb. 7, 2013).

2.      The Court's efforts in MDL 2047 include a ruling that this Court has jurisdiction over the Taishan Defendants, a ruling affirmed by the United States Fifth Circuit Court of Appeals on January 28, 2014. *In re Chinese Manufactured Drywall Products Liability Litigation*, 742 F.3d 576 (5th Cir. 2014). The Court's jurisdictional ruling followed more than a year and a half of extensive discovery that was closely monitored by the Court and a multiday evidentiary hearing. *Id.* at 583.

3.      The Court's efforts in MDL 2047 also include a trial against Interior Exterior Building Supply, L.P., the Louisiana supplier of Chinese Drywall, in which the claims against it were dismissed for lack of knowledge of any defects in the Chinese drywall it distributed in Louisiana. *See* Rule 54(b) Judgment, Rec. Doc. 16409 (adopting a jury's findings and verdict that INEX was not a bad faith seller under Louisiana Civil Code article 2545).

4.      Further, Plaintiff has participated in and benefited from MDL 2047; including participating in numerous depositions, including depositions in China and Germany.

II.    **GROUNDS FOR REMOVAL**

5.      This case is removable because:

a.  To the extent the Plaintiff has any right to proceed with this lawsuit, the action is subject to diversity jurisdiction pursuant to 28 U.S.C. § 1332.

III.   **JURISDICTION BASED ON DIVERSITY JURISDICTION**

**A.  Requirements for Diversity Jurisdiction**

6.      For diversity jurisdiction to apply, the matter in controversy must exceed the sum or value of $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).  If the amount in controversy requirement is met, district courts shall have original jurisdiction of all civil actions between citizens of different States and in which citizens or subjects of a foreign state are additional parties.  28 U.S.C. § 1332(a)(3).

**B.  Amount in Controversy**

7.      The amount in controversy requirement is met in the Caldwell Action.  The suit seeks restitution, civil penalties, and monetary damages in excess of the $75,000.00 jurisdictional requirement for the State of Louisiana, its local political subdivisions, and individual citizens that were damaged by Chinese Drywall. Furthermore, the Caldwell Petition seeks attorneys' fees, and the value of any such fees may be used in determining whether the jurisdictional threshold has been satisfied.  *See, e.g., Grant v. Chevron Phillips Chemical Co.*, 309 F.3d 864, 873 (5th Cir. 2002).

### C. Party Diversity

#### i. Plaintiff is a Citizen for Diversity Purposes.

8.      The diversity requirement under 28 U.S.C. § 1332(a)(3) is satisfied as to the Plaintiff because the State of Louisiana is a citizen of Louisiana for purposes of diversity jurisdiction where the real parties in interest to the Caldwell Action are the local political subdivisions and the individual citizens affected by Chinese Drywall.

9.      Generally, "the state is not a citizen for purposes of diversity jurisdiction." *In re Vioxx*, 843 F. Supp. 2d 654, 665 (E.D. La. 2012) (*citing Melder v. Allstate Corp.*, 404 F.3d 328, 335 (5th Cir. 2005)); s*ee also Louisiana v. Union Oil Company of California*, 468 F.3d 364, 366 (5th Cir. 2006).

10.     However, in cases involving a state or state official, courts inquire into the real party in interest. *See Mississippi ex rel. Hood v. AU Optronics Corp*., 134 S. Ct. 736, 745, 187 L. Ed. 2d 654 (2014) (*citing Missouri, K & T. R. Co. v. Missouri Railroad and Warehouse Comm'rs*, 183 U.S. 53, 58-59 (1901); *see also In re Vioxx*, 843 F. Supp. 2d at 665; *see also Ohio v. GMAC Mortg. LLC*, 760 F. Supp. 2d 741, 745 (N.D. Ohio 2011) ("When a state is named as a party, federal courts must determine the real-party-in-interest, rather than simply relying on the names of the parties, to determine diversity jurisdiction.") (internal citations omitted).

11.     In the Fifth Circuit, courts consider each individual claim and remedy sought by the state to determine the real party in interest as to that specific relief. *See In re Vioxx*, 843 F. Supp. 2d. at 665 ("The Fifth considers whether a state plaintiff or its citizens are the real parties in interest with respect to each type of relief sought."); *Ohio*, 760 F. Supp. 2d at 745.

12.     The Caldwell Petition is brought on behalf of the State, its local political subdivisions, and its citizens, for the damage caused by the Defendants' conduct.  Caldwell Petition, ¶ 16.

13.     "[It is] recognized that a political subdivision of a State, unless it is simply 'the arm or alter ego of the State' is a citizen of the State for diversity purposes."  *City of Clarksdale v. BellSouth Telecommunications, Inc.*, 428 F.3d 206, 209 (5th Cir. 2005) (*citing Moor v. County of Alameda,* 411 U.S. 693, 717, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973)).

14.     Louisiana is a citizen for diversity purposes because its local political subdivisions and the individual Louisiana citizens allegedly affected by Chinese drywall are the real parties in interest to the Caldwell Action's claims and remedies sought.

15.     The Caldwell Petition alleges throughout that the injuries it seeks to remedy with injunctive relief, civil penalties, and monetary damages are the injuries suffered by local political subdivisions and individual citizens affected by Chinese drywall:

- Plaintiff filed the action, in part, on behalf of the "local political subdivisions and its citizens, for the damage caused by Defendants' conduct…." Caldwell Petition, ¶ 1.

- Plaintiff alleges that the off-gassing of Defendants' Chinese drywall is causing various health problems to individuals. Caldwell Petition, ¶ 163.

- As a result of the Defendants' drywall, Plaintiff alleges that local political subdivisions and individual citizens suffered property damages, including "the costs of inspection, testing and monitoring, the costs and expenses necessary to move, remediate and replace the defective drywall itself and also to remove or remediate its sulfur compound in migratory locations such as electrical wiring, appliances, fixtures, interior finishes, and personal property." Caldwell Petition, ¶ 172.

- Due to Defendants' drywall, Plaintiff alleges parish and municipal building permit offices are losing permit fees for the repair of homes containing Defendants' drywall. Caldwell Petition, ¶ 174.

- Plaintiff alleges that to the extent the declines in assessments on properties contaminated by Defendants' drywall are offset by increased millage rates, "the owners or property which are not contaminated are forced to assume an unfair portion of the total property tax burden." Caldwell Petition, ¶ 176.

- Plaintiff seeks all increased disposal fees incurred or to be incurred by "citizens as a result of the disposal of materials from homes with defective Chinese drywall in landfills and the resulting reduction of landfill capacity in those landfills." Caldwell Petition, ¶ 180.

- Plaintiff seeks recovery for damages, losses and injuries already caused and hereafter to be caused to its local subdivisions by reason of the presence of Defendants' drywall, including but not limited to all expenses incurred or to be incurred by a local political subdivision.  Caldwell Petition, ¶ 184.

- Under its alleged claim under the Louisiana Unfair Trade Practices Act, Plaintiff alleges that the "acts and/or practices have caused, and will continue to cause, substantial damages and injuries to Louisiana consumers."  Caldwell Petition, ¶¶ 191, 194.

- Under its alleged claim under Louisiana Civil Code Article 2315, Plaintiff alleges that the Defendants' "owed a duty to the …Local Subdivisions and citizens of Louisiana to exercise reasonable care" and "[a]s a direct and proximate cause of Defendants' acts and omissions, the State, its Local Subdivisions and citizens of Louisiana have incurred economic and other damages and are entitled to recover monetary damages." Caldwell Petition, ¶ 215.

- Under its alleged claim for fraudulent concealment, Plaintiff alleges that "Defendants fraudulently concealed the fact that their drywall was defective, unsafe, and poorly manufactured" and resulted in physical and economic damages that have been, and continue to be, incurred by the State, its Local Subdivisions and its citizens.  Caldwell Petition, ¶¶ 228, 233-34.

- Under its alleged claim for fraudulent misrepresentation, Plaintiff asserts that Defendants' alleged fraudulent representations resulted in "physical and economic damages [which] have been, and continue to be, incurred by the State, its Local Subdivisions and its citizens."  Caldwell Petition, ¶ 240.

- Under its alleged claim for negligent misrepresentation, Plaintiff alleges that as a direct consequence of Defendants' negligent misrepresentations and omissions of material facts regarding their defective drywall, the State, its Local Subdivisions and its citizens have incurred and will continue to incur physical and economic damages. Caldwell Petition, ¶ 246.

7

16.     Plaintiff's request for economic and other monetary damages for the local political subdivisions and individual citizens affected by Chinese drywall would ultimately result in a direct benefit to those that were actually harmed by the presence of Chinese drywall. *See Ohio v. GMAC Mortgage*, LLC, 760 F. Supp. 2d 741, 751 (N.D. Ohio 2011).

17.     Such variety of allegations and remedies sought demonstrate that the real parties in interest are the local political subdivisions and individual citizens residing in Louisiana. *Id.; Mississippi ex rel. Hood v. AU Optronics Corp.,* 701 F.3d 796, 800 (5th Cir. 2012) *rev'd and remanded on other grounds,* 134 S. Ct. 736, 187 L. Ed. 2d 654 (2014). *Louisiana ex rel. Caldwell v. Allstate Ins. Co.,* 536 F.3d 418, 430 (5th Cir. 2008) *abrogated sub nom on other grounds*, 134 S. Ct. 736, 187 L. Ed. 2d 654 (2014); *see also State of Cal. v. Frito-Lay, Inc.*, 474 F.2d 774, 775 (9th Cir. 1973).

18.     "A state may, for a variety of reasons, attempt to pursue the interests of a private party, and pursue those interests only for the sake of the real party in interest. Interests of private parties are obviously not in themselves sovereign interests, and they do not become such simply by virtue of the State's aiding in their achievement. In such situations, the State is no more than a nominal party." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 602 (1982).

19.     If Plaintiff only sought injunctive relief, an argument that it was the only real party in interest may be more compelling. *See Allstate Ins. Co.,* 536 F.3d at 430 *abrogated sub nom on other grounds*; *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 262 (1972) (finding that "there is a striking contrast between the potential impact of suits for injunctive relief and suits for damages").

20.     Under the Fifth Circuit individual claim approach where the State, its local subdivisions, and individual citizens are real parties in interest, the district court has jurisdiction over claims in which the citizens and local subdivisions are the real parties in interest and the discretion to retain jurisdiction over the entire case to which the State is the only real party in interest. *In re Vioxx*, 843 F. Supp. 2d. at 665; *see also Ohio*, 760 F. Supp. 2d at 746.

21.     Therefore, in light of the fact this Court has conducted extensive proceedings as an MDL Court for the same and similar claims for relief over the past five years, including discovery and liability trials on issues related to the same Chinese drywall that is the subject of the Caldwell Action, the Court should assert jurisdiction over those claims where individual citizens and local subdivisions are the real parties in interest, and exercise its discretion to retain jurisdiction over the remaining claims.

### ii.     Diversity of Properly Joined Defendants.

22.     The diversity requirement under 28 U.S.C. 1332(a)(3) is satisfied between the plaintiff, a citizen of Louisiana, and all properly-joined indispensable defendants.

23.     As alleged, the named defendants set forth in the Caldwell Petition are citizens of the following states or countries:

- Defendant GKV is a German entity owned by members of the Knauf family and is the parent of Knauf International GbmH doing business internationally, including within the State of Louisiana, with its principal place of business located at Am Bahnoff 7, 97346 Iphofen, Germany. Caldwell Petition, ¶ 17.

- Defendant Gips KG ("Gips") is a corporation organized under the laws of Germany doing business internationally, including within the State of Louisiana, with its principal place of business located at Am Bahnoff 7, 97346 Iphofen, Germany. Caldwell Petition, ¶ 18.

- Defendant Knauf International, GmbH ("Knauf International") is a corporation organized under the laws of Germany doing business internationally, including within

the State of Louisiana, with its principal place of business located at Am Bahnoff 7, 97346 Iphofen, Germany. Caldwell Petition, ¶ 19.

- Defendant Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT") is a corporation organized under the laws of China doing business internationally, including with the State of Louisiana, with its principal place of business located at North Yinhe Bridge, East Jingjin Road, RC-300400, Tianjin, P.R. China. Caldwell Petition, ¶ 21.

- Defendant Knauf Plasterboard (Wuhu) Co., Ltd. ("Knauf Wuhu") is a corporation organized under the laws of China doing business internationally, including with the State of Louisiana, with its principal place of business located at No. 2 Gang Wan Road, RC-241009, Wuhu Anhua,  P.R. China. Caldwell Petition, ¶ 22.

- Defendant Guangong Knauf New Building Material Products Co. Ltd. ("Knauf Dongguan") is a corporation organized under the laws of China doing business internationally, including with the State of Louisiana, with its principal place of business located at No. 2 Xinsha Development Zone, RC-523147, Guangdong, P.R. China. Caldwell Petition, ¶ 23.

- Defendant Knauf Insulation GmbH ("Knauf Insulation") is a corporation organized under the laws of Germany doing business internationally, including within the State of Louisiana, from its headquarters in Shelbyville, Indiana.  Caldwell Petition, ¶ 24.

- Defendant Taishan Gypsum Co. Ltd. ("TG") is a corporation organized under the laws of China doing business internationally, including within the State of Louisiana, and is a subsidiary of Beijing New Building Materials Company PLC ("BNBM"). TG's principal place of business is in Taian City, Shandong Province, China. Caldwell Petition, ¶ 27.

- Defendant Taian Taishan Plasterboard Co. Ltd. ("TTP") is a corporation organized under the laws of China doing business internationally, including within the State of Louisiana.  TTP is a wholly owned subsidiary of TG.  TTP's contact with the State can be properly imputed to TG. Caldwell Petition, ¶ 28.

- Defendant USG Corporation is a Delaware corporation with its principal place of business located at 550 W. Adams Street, Chicago, IL 60661.  At all relevant times, it was authorized to conduct business and conducted business within the State of Louisiana. Caldwell Petition, ¶ 30.

- Defendant, United States Gypsum Company, is a Delaware corporation with its principal place of business located at 550 W. Adams Street, Chicago, IL  60661.  At all relevant times, it conducted business within the State of Louisiana. Caldwell Petition, ¶ 31.

- Defendant, USG Interiors, Inc. is a Delaware corporation with its principal place of business located at 550 W. Adams Street, Chicago, IL 60661. At all relevant times, it conducted business within the State of Louisiana. Caldwell Petition, ¶ 32. [3]

- Defendant L&W Supply Corporation d/b/a Seacoast Supply ("L&W") is a Delaware corporation with its principal place of business located at 550 W. Adams Street, Chicago, IL 60661. At all relevant times it conducted business within the State of Louisiana. Caldwell Petition, ¶ 34.

### iii.    Improperly Joined Non-Diverse Defendant.

24.    The only non-diverse defendant named in the Caldwell Petition, Interior Exterior Building Supply, L.P. ("INEX"), was improperly joined.

25.    INEX is a Louisiana limited partnership with its principal place of business located at 727 S. Cortez Street, New Orleans, LA 70119. Caldwell Petition, ¶ 29.

### D. Improper Joinder

26.    INEX is the sole Louisiana defendant named in the amended Caldwell Petition and is named only to destroy diversity.

27.    Lawsuits arising under diversity jurisdiction are removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

28.    Improper joinder can be established by demonstrating the "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Menendez v. Wal-Mart Stores, Inc.*, 364 Fed.Appx. 62, 68 (5th Cir. 2010) (*citing Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (citation omitted)).

---

[3] Defendants USG Corporation, United States Gypsum Company, and USG Interiors, Inc. are sometimes referred to in the Caldwell Petition collectively as "USG" or the "USG Entities." ¶ 34.

29.     A non-diverse defendant is improperly joined when "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against [them]." *Menendez*, 364 Fed.Appx. at 69.

30.     To determine whether the plaintiff has demonstrated a reasonable possibility of recovery, the district court may (1) "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant," or (2) "in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.*

31.     The Fifth Circuit has repeatedly held that a district court may "pierce the pleadings and consider summary judgment-type evidence to determine whether joinder of a party was proper."  *Menendez*, 364 Fed.Appx. at 70 ("This court examined extensive deposition testimony and affidavits to determine whether the plaintiffs could show individual liability for any of the allegedly improperly joined defendants."); *see also In re: 1994 Exxon Chemical Fire*, 558 F.3d 378, 385-87 (5th Cir. 2009) (concluding after review of deposition testimony and affidavits that no evidence in the record showed that the non-diverse defendants were liable for the alleged tortious conduct);  *see also Kling Realty Co., Inc. v. Texaco Exploration and Production, Inc.*, 575 F.3d 510, 516 (5th Cir. 2009) (concluding from the evidence in the record that the non-diverse defendants were improperly joined because no evidence supported a reasonable possibility of recovery against them).

32.     The Caldwell Petition fails to demonstrate a reasonable possibility of recovery against INEX under the three causes of action pleaded against INEX: Breach of Louisiana Products Liability Act, La. Rev. Stat. 9:2800.51 *et. seq.* (the "LPLA") (Caldwell Petition, ¶¶

206-11); Negligence (Caldwell Petition, ¶¶ 212-17) and; Negligent Misrepresentation (Caldwell Petition, ¶¶ 243-47).[4]

33.     The Caldwell Action's liability theories against INEX relate to allegations that INEX "is in the business of distributing drywall and distributed drywall manufactured by Defendants" (Caldwell Petition, ¶ 64), and INEX's alleged purchase of Chinese drywall from Knauf entities on five occasions between October, 2005 and July, 2006 (Caldwell Petition, ¶¶ 68-73).

34.     First, INEX is not a manufacturer under the LPLA.  Rather, INEX is a seller, and does not exercise control over or influence a characteristic of the design, construction, or quality of the Chinese drywall.  La. Rev. Stat. 9:2800.53(1)(b).  Nor is INEX an alter ego of the foreign Chinese drywall manufacturers.  *Id.* at 9:2800.53(1)(d).  The Caldwell Action does not sufficiently allege  nor establish a cause of action against INEX under the LPLA.

35.     Similarly, because INEX is merely a supplier, without involvement in the design, construction, or quality of the Chinese drywall, there is no reasonable basis for recovery on claims of negligent misrepresentation and negligence.  *See Murray v. Gen. Motors, L.L.C.*, 478 F. App'x 175, 181-82 (5th Cir. 2012).

36.     Further, the three causes of action against INEX all apply a negligence standard and rest on general allegations that "all Defendants" – including INEX – "knew or should have known" of defects in the drywall:

---

[4] The Caldwell Petition also alleges causes of action against other defendants – **but not INEX** – for Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. § 51:1401 *et. seq.*, Caldwell Petition, ¶¶ 186-205, Fraudulent Concealment, Caldwell Petition,¶¶ 218-36, and Fraudulent Misrepresentation, Caldwell Petition, ¶¶ 237-42.

- "Defendants *knew or should have known* of the harmful nature of their products…." Caldwell Petition, ¶ 209 (emphasis added) (Breach of Louisiana Products Liability Act, La. Rev. Stat. 9:2800.51 *et. seq*);

- "In disseminating information regarding their drywall, all Defendants negligently caused statements to be made which they *knew or should have known* were inaccurate and untrue." Caldwell Petition, ¶ 244 (emphasis added) (Negligent Misrepresentation);

- "Defendants *knew or should have known* that their wrongful acts and omissions would result in economic, incidental, and consequential damages…" Caldwell Petition, ¶ 216 (emphasis added) (Negligence).

37.     General allegations of liability alone are insufficient to find a reasonable possibility of recovery.  *See Griggs v. State Farm Lloyd*, 181 F.3d 694, 699-700 (5th Cir. 1999) (dismissing a defendant that plaintiff named when plaintiff "fail[ed] to state any specific actionable conduct" on the part of the defendant).

38.     Importantly, several specific allegations contained in the Caldwell Petition contradict the allegations that INEX had knowledge of any defects in the Chinese drywall INEX imported.  The Caldwell Petition affirmatively alleges that INEX <u>did not</u> know that the drywall was defective and was induced into purchasing the drywall through the other defendants' false statements and fraudulent concealment:

- "…[I]t was 'unfair', 'deceptive' and 'unethical' not to share with its Louisiana customer, Interior Exterior, the information that the drywall tested was emitting sulfur." Caldwell Petition, ¶ 147.

- "Neither the Knauf Defendants nor the USG/L&W defendants provided such information to Knauf's Louisiana customer, Defendant Interior Exterior, until after litigation began, even though Knauf and USG/L&W knew that Interior Exterior had been instrumental in helping Knauf take advantage of the drywall sales opportunity presented in the aftermath of Hurricanes Katrina and Rita." Caldwell Petition, ¶ 151.

14

- "Defendants [other than INEX] unfairly, deceptively, knowingly, and fraudulently represented to the public that their drywall was safe, efficacious, well tested, of high quality and free of defects…" Caldwell Petition, ¶ 189.

- "At all relevant time, the Knauf Entities knew that the above-mention representations made to members of the public, *including Interior Exterior*, were specious, false, and fraudulent."  Caldwell Petition, ¶ 226 (emphasis added).

- "Defendants in this Cause of Action [the Knauf Entities and the USG/L&W defendants] fraudulently represented to the public, *including Interior Exterior*, that their Defendants' drywall was safe, efficacious, well tested, of high quality, and free of defects."  Caldwell Petition, ¶ 238 (emphasis added).

39.     The Caldwell Petition alleges that INEX imported Chinese drywall based on false representations from the Chinese manufacturers that the drywall was "free from defects," "in good condition" and manufactured "in accordance with ASTM C36" (Caldwell Petition, ¶¶ 219-24) and "that the entry of the defective Chinese drywall" into Louisiana "*would not have occurred but for*" false representations that "induced Interior Exterior" to purchase the drywall. Caldwell Petition, ¶ 225 (emphasis added).

40.     INEX had no knowledge of any defects in the Chinese drywall. *See* Declaration of Clayton C. Geary, attached hereto as Exhibit A.

41.     As alleged by Plaintiff, the Chinese drywall  INEX purchased was certified as being free of defects and in accordance with applicable ASTM standards.  *See* Caldwell Petition, ¶¶ 219-224; *see also* Declaration of Clayton C. Geary, attached hereto as Exhibit A.

42.     INEX had no reason to doubt these certifications and reasonably relied on them in distributing the product.  *See* Declaration of Clayton C. Geary, attached hereto as Exhibit A.

43.     Information regarding potential defects in the Chinese drywall was not known by INEX until after multiple litigations had commenced.  *See* Caldwell Petition, ¶ 151; *see also* Declaration of Clayton C. Geary, attached hereto as Exhibit A.

44.     This Court has previously held in another matter consolidated in MDL 2047 that INEX lacked knowledge of any defects in the Chinese drywall it imported.  *See* Rule 54(b) Judgment, Rec. Doc. 16409 (adopting a jury's findings and verdict that INEX was not a bad faith seller under Louisiana Civil Code article 2545, which imposes liability for redhibition on a seller who knows of a defect in something he sells but fails to declare it).

45.     While the Caldwell Petition does not state a claim for redhibition, this Court's adoption of a jury's finding that INEX had no knowledge of defects in the drywall further shows that Plaintiff will not be able to establish a cause of action against INEX and has merely named INEX as an ambit to destroy diversity.

46.     Plaintiff's general allegations that INEX knew or should have known of the defects ring hollow in light of the specific allegations, record evidence, and prior judgments that INEX not only did not know that the drywall was defective, but was induced into importing the product.  For instance, Plaintiff specifically alleges that KPT and Knauf Wuhu "falsely stated" in Certificates of Warranty, Certificates of Quantity, Quality, and Condition, and Mill Certificates that the Chinese drywall sold and shipped to INEX was:  "free from defects in materials and worksmanship" (Caldwell Petition, ¶¶ 219 and 222); "in good condition" and "in accordance with ASTM C36"  (Caldwell Petition, ¶¶ 220 and 223), and "manufactured in accordance with ASTM C36" (Caldwell Petition, ¶¶ 221 and 224).  *See* Declaration of Clayton C. Geary, attached

hereto as Exhibit A.  As stated above, INEX had no reason to doubt these certifications and reasonably relied on them in distributing the product.  *Id.*

47.      Therefore, because Caldwell cannot establish the three causes of action against INEX, INEX should be dismissed from the litigation as an improperly joined non-diverse party. *See Fall v. Novoship* (UK) Ltd., No. 07-2991, 2007 WL 2155796, *1 (E.D. La. July 26, 2007) (finding non-diverse party "was improperly joined as a defendant" based on the affidavit of the non-diverse defendant's president stating that it had no involvement in the conduct giving rise to the suit."); *see also Weigel v. Union Pac. R.R. Co.*, No. 05-6607, 2006 WL 901755, *5 (E.D. La. Apr. 4, 2006) (dismissing non-diverse defendants on the grounds that the facts plead were not supportive of a reasonable basis of recovery and did not support allegations that the non-diverse defendant owed the plaintiff the duties plead in the petition).

### E. Court's Rule 21 Discretion to Dismiss, or Alternatively Sever,  Dispensable Non-Diverse Party

48.      In the alternative, this Court has the discretion to dismiss INEX as a dispensable non-diverse party pursuant to Federal Rule of Civil Procedure 21.  Fed. R. Civ. P. 21.  *Newman-Green, Inc.  v. Alfonzo-Larrin*, 490 U.S. 826, 832-33 (1989); *see also Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 572 (2004).

49.      Rule 21 of the Federal Rules of Civil Procedure is a tool that allows courts broad discretion to monitor and police various forms of improper joinder. *Brunei v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994). The text of the rule reads "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party." Fed. R. Civ. P. 21.

50.     As such, Rule 21 grants the court authority to remove a non-required, non-diverse party, even after a judgment has been delivered. *See Newman-Green,* 490 U.S. at 832; *Applewhite v. Reichhold Chemicals, Inc.,* 67 F.3d 571, 574 (5th Cir. 1995) (stating that the district court possesses "the discretion to sever an action [under Rules 20 and 21] if it is misjoined or might otherwise cause delay or prejudice"); *Williams v. Hoyt,* 556 F.2d 1336, 1341 (5th Cir. 1977) ("The district court has broad discretion in determining the propriety of joining or continuing a particular party as a defendant.").

51.     Emphasizing this concept, the Supreme Court held "[b]y now, it is well settled that Rule 21 invests district courts with authority to allow a dispensable non-diverse party to be dropped at any time, even after judgment has been rendered." *Newman-Green,* 490 U.S. at 832-33.

52.     The concept of the court exercising discretion to remove parties to retain jurisdiction is neither new nor novel, "when objection is taken to the jurisdiction of the court by reason of the citizenship of some of the parties, whether ... they are indispensable parties, for if their interests are severable and a decree without prejudice to their rights may be made, the jurisdiction of the court should be retained and the suit dismissed as to them." *Horn v. Lockhart*, 84 U.S. 570, 578-79 (1873).

53.     "[A] prerequisite to dropping a party under Rule 21 because the party's citizenship destroys the court's subject-matter jurisdiction over the case, is that the party's presence in the action is not required by Rule 19." Wright, Miller & Kane, 7 Federal Practice & Procedure § 1685 (West).   To determine whether a non-diverse party is dispensable, and therefore dismissible, the court considers:

(1)    the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2)    the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures;

(3)    whether a judgment rendered in the person's absence would be adequate; and

(4)    whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*See* Fed. R. Civ. P. 19(b).[5]

54.    Dismissal under Rule 21 can be based on events and developments occurring after the notice of removal was initially filed, such as the jury verdict and Rule 54(b) Judgment in favor of INEX.  *See Grupo Dataflux*, 541 U.S. at 572.

55.    The third and fourth factors favor dismissal because the Caldwell Petition alleges that all defendants are solidarily liable for each of the causes of action in which INEX is currently a defendant.  Caldwell Petition, ¶¶ 211 (LPLA), 217 (Negligence), 247 (Negligent Misrepresentation).  Although Defendants strongly disagree with Plaintiff's assertion they are "solidarily liable," assuming *arguendo* this allegation true, a judgment can be rendered in INEX's absence and full recovery of the alleged damages may be obtained from any of the other allegedly "solidarily liable" defendants.

56.    Similarly, the first two factors favor dismissal because a judgment made in INEX's absence will not prejudice INEX or the other defendants because, for the reasons stated above, there is no reasonable likelihood of prevailing against INEX.  To the extent any fault is

---

[5] Fed. R. Civ. P. 19(a) applies when considering "A person who is subject to service of process *and whose joinder will not deprive the court of subject-matter jurisdiction*." (Emphasis added).

attributed to INEX, any solidarily bound defendant required to pay INEX's portion of the judgment can later seek contribution from INEX.

57. Finally, all Non-Taishan defendants consent to the removal and the dismissal of INEX.

58. Because INEX is a dispensable non-diverse party, the Court should exercise its discretion under Rule 21, dismiss INEX, and maintain subject matter jurisdiction in the Caldwell Action. In the alternative, the Court should exercise its discretion under Rule 21, sever Plaintiff's claims against INEX, and maintain subject matter jurisdiction over the claims against the diverse defendants.

### F. The Court's Rule 21 and MDL Judge Discretion to Maintain Jurisdiction and Cure Jurisdictional Defects Prior to Final Judgment

59. Alternatively, if the Court wishes to not dismiss INEX at this time, pursuant to Rule 21, the Court may retain jurisdiction and maintain the authority to remove the non-required, non-diverse party, even after a judgment has been delivered in order to cure any jurisdiction defects. *Newman–Green*, 490 U.S. at 832.

60. The Court held in *Newman–Green* that courts of appeals also have the authority to cure a jurisdictional defect by dismissing a dispensable non-diverse party. *Id.* at 837; *see also Grupo Dataflux*, 541 U.S. at 573 (*citing Newman-Green*, 490 U.S. 826).

61. Further, the Caldwell Action involves common issues and claims with the numerous cases, containing thousands of claims, already consolidated with MDL 2047. "Control over the proliferation of cases and coordination of multiple claims is crucial to the effective management of complex litigation." MANUAL FOR COMPLEX LITIGATION, 4th § 20. The degree and manner of coordination or consolidation of cases in an MDL are within the sole

discretion of the MDL judge.  *See In re Equity Funding Corp. of America Securities Litig.*, 375 F. Supp. 1378, 1384 (C.D. Cal. 1976).

62.     When government and private actions are consolidated in an MDL, the degree of coordination between government action and private actions consolidated is left to the discretion of the MDL judge.  *In re Republic National-Realty Equities Securities Litig.*, 382 F. Supp. 1403, 1405 (J.P.M.L. 1974) ("[T]he degree of coordination between [the SEC] action and the private actions is a matter to be determined by the transferee judge.").

63.     This Court, as the MDL Court, is in the best position to rule on issues common to all the cases centralized before the MDL Court in MDL 2047 including, but not limited to, issues relating to: the defects in the Chinese Drywall; the Defendants' alleged knowledge of the defects; the alleged misrepresentations made by Defendants; the duties of care owed by the Defendants; the damages resulting from the defects and the Defendants' conduct, including economic damages.

64.     For instance, after five years of substantial pretrial proceedings and expenditure of judicial resources, the Caldwell Petition still names suppliers, including INEX, that have either had claims against them dismissed at trial or settled based on issues and facts common to those alleged in the Caldwell Petition.

65.     Additionally, the Caldwell Petition includes claims against the Taishan Defendants.  The Fifth Circuit recently affirmed this Court's ruling that this Court has jurisdiction over the Taishan Defendants.  *In re Chinese Manufactured Drywall Products Liability Litigation*, 742 F.3d 576 (5th Cir. 2014).

66.     The Court's jurisdictional ruling followed more than a year and a half of extensive discovery that was closely monitored by the Court and a multiday evidentiary hearing. *Id.* at 583.

67.     It is within this Court's discretion to retain jurisdiction over the Caldwell Action to avoid inconsistent rulings in Louisiana state court that could undermine the effective management of MDL 2047, particularly in regards to important jurisdictional and enforcement issues pertaining to the Chinese companies.

68.     Further, this Court should exercise its discretion to maintain jurisdiction in light of Plaintiff's active participation in proceedings in MDL 2047, including participating in numerous depositions, including depositions in China and Germany.  Nevertheless, Plaintiff seeks remand despite the benefits it has obtained from participating in MDL 2047 proceedings and discovery.

69.     Therefore, as the MDL Court, this Court should retain jurisdiction over the Caldwell Action.

## IV.    ALL OTHER GENERAL PREREQUISITES HAVE BEEN SATISFIED

70.     The Amended Notice of Removal is timely and pursuant to the Court's May 20, 2014 Joint Scheduling Order providing Defendants to amend their Notice of Removal by July 15, 2014. (Rec. Doc. 17697).

71.     Pursuant to 28 U.S.C. § 1446(a), a copy of Louisiana's Notice of Compliance and the Caldwell Petition is attached as Exhibit B.

72.     Undersigned counsel certifies that a copy of this Amended Notice of Removal will be promptly served on the Attorney General by mailing a copy of it to his counsel of record:

James D. "Buddy" Caldwell
Louisiana Attorney General
James Trey Phillips (#19978)
Sanettria Glasper Pleasant (#25396)
L. Christopher Styron (#30747)
**Louisiana Department of Justice**
1885 North Third Street
P.O. Box 94005
Baton Rouge, LA  70804

**Usry, Weeks & Matthews, APLC**
T. Allen Usry (#12988), T.A.
John F. Weeks, II (#13309)
1615 Poydras Street, Suite 1250
New Orleans, LA  70112

**Shows, Cali, Berthelot & Walsh, LLP**
E. Wade Shows (#7637), T.A.
John C. Walsh (#24903)
628 St. Louis Street
P.O. Drawer 4425
Baton Rouge, LA 70821

**Perkins Coie, LLP**
David L. Black (PHV)
Craig M. J. Allely
1900 Sixteenth Street, Suite 1400
Denver, CO  80202

73.     No further hearings are currently scheduled in the Caldwell Action.

74.     Defendants reserve the right to amend or supplement this Amended Notice of Removal.

75.     By filing this Amended Notice of Removal, Defendants are not waiving, and reserve all rights regarding, any substantive or procedural defenses or objections that may be available pursuant to state or federal law, including but not limited to objections regarding jurisdiction, venue, sufficiency of process or the service of process, and the service of discovery

that violates the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters or otherwise.

## V.    CONSENT TO AMENDED NOTICE OF REMOVAL

76.    All Non-Taishan Defendants consent to foregoing Amended Notice of Removal.

**WHEREFORE**, Petitioners pray that this action be recognized as removed to and pending on the docket of the United States District Court for the Eastern District of Louisiana, as the law in such cases provides.

Respectfully Submitted,

**FRILOT L.L.C.**

*/s/ Kerry J. Miller*
KERRY J. MILLER (#24562), T.A.
KYLE A. SPAULDING (#29000)
1100 Poydras Street, Suite 3700
New Orleans, LA  70163
Telephone:    (504) 599-8194
Facsimile:    (504) 599-8145
Email:        kmiller@frilot.com
***Counsel for Knauf Plasterboard (Tianjin) Co. Ltd; Knauf Plasterboard (Wuhu) Co. Ltd.; Guangdong Knauf New Building Material Products Co. Ltd.; Knauf Insulation, GmbH***

## **CERTIFICATE**

**I HEREBY CERTIFY** that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, and to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 15th day of July, 2014.

*/s/ Kerry J. Miller*