**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

IN RE: CHINESE-MANUFACTURED ) 
DRYWALL PRODUCTS LIABILITY )      MDL NO. 2047 
LITIGATION ) 
                                 )         SECTION "L" 
                                 ) 
THIS DOCUMENT RELATES TO: )        JUDGE FALLON 
*Caldwell v. Knauf Gips KG et al.* ) 
                                 )   MAG. JUDGE WILKINSON 
CASE NO.: 10-CV-340 ) 
_____ )

## MEMORANDUM IN SUPPORT OF MOTION TO SEVER

Defendants USG Corporation, United States Gypsum Company, USG Interiors, Inc. (collectively "USG"), and L&W Supply Corporation d/b/a Seacoast Supply ("L&W Supply") submit this memorandum in support of their Motion to Sever the claims asserted against them by Plaintiff, The State of Louisiana *ex rel*. Buddy Caldwell.

## I. INTRODUCTION

Plaintiff has improperly joined in a single lawsuit disparate claims against multiple defendants, including a single non-diverse defendant, in an attempt to preclude this Court's jurisdiction over this action. Allowing Plaintiff to manipulate the joinder of parties in this manner would result in unnecessary delay and a tremendous waste of judicial resources after this case has been pending in this Court for over four years and Plaintiff has participated in extensive discovery efforts related to these claims. USG and L&W Supply have joined in the Amended Notice of Removal filed on July 15, 2014. As suggested in the Amended Notice of Removal, this Court should properly exercise its discretion under the Federal Rules of Civil Procedure and settled Fifth Circuit and Supreme Court precedent to dismiss or sever the claims asserted against the improperly joined non-diverse defendant named in this action, Interior Exterior Building

Supply, L.P. ("INEX").    Dismissing or severing INEX will permit the Court to retain jurisdiction over the bulk of the claims in this suit and bring this matter to a prompt and efficient conclusion.

However, in the event the Court declines to exercise its discretion to dismiss or sever the claims against INEX, Defendants USG and L&W Supply respectfully submit—*in the alternative*—that this Court may sever the claims against USG and L&W Supply and allow those claims to be litigated in a separate lawsuit over which this Court may properly retain diversity jurisdiction under 28 U.S.C. § 1332.   As discussed below in detail, the Court should grant the present Motion to Sever because the claims Plaintiff asserts against USG and L&W Supply are not linked—either legally or  logically—to the claims and allegations asserted against INEX or the other defendants, but are separate and distinct claims that can be litigated in separate actions.[1] Moreover, it is well settled that a court has "broad discretion" under Rule 21 to sever claims and parties in order to preserve the court's diversity jurisdiction, which, in this case, would avoid delay, prevent unnecessary waste of the parties' and the courts' time and resources, and ensure fundamental fairness to the diverse defendants.

## II. ARGUMENT

### A.    The Court has broad discretion to sever the claims against USG and L&W Supply in order to avoid delay, ensure judicial economy, protect fundamental fairness, and preserve the Court's jurisdiction.

Federal Rule of Civil Procedure 21 governs misjoinder of parties, providing: "On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21.   "Since Rule 21 does not provide any standards by which district courts can determine if parties are misjoined, courts have looked to

---

[1] Although this Memorandum focuses on Plaintiff's proposed "First Amended Petition," the separate and distinct claims against USG and L&W Supply which form the basis of the instant Motion to Sever are also contained within the original Petition, which is now pending in this Court.

Rule 20 for guidance." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010).  Rule 20(a) controls permissive joinder of parties in a single action and establishes a two-prong test that permits joinder of multiple defendants when:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2)(A)-(B); *see also* 7 Wright & Miller, *Federal Practice & Procedure—Civil* § 1683 (3d ed.) ("Rule 21 applies when the claims asserted by or against the joined parties do not arise out of the same transaction or occurrence or do not present some common question of law or fact.").

"However, even if this test [under Rule 20(a)] is satisfied, district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." *Acevedo*, 600 F.3d at 521 (internal citations omitted); *see also Applewhite v. Reichhold Chems*., Inc., 67 F.3d 571, 574 (5th Cir. 1995) (holding that, under Rule 21, "the district court has the discretion to sever an action if it is misjoined or might otherwise cause delay or prejudice.").  "Rule 21 grants a district court the authority to sever any claim against a party. . . . The district court has broad discretion to sever issues to be tried." *Olivier Plantation, LLC v. St. Bernard Parish*, 744 F. Supp. 2d 575, 582 (E.D. La. 2010) (holding that, in determining whether to sever parties or claims, the court may also consider "whether settlement or judicial economy would be promoted; . . . whether prejudice would be averted by severance; and . . . whether different witnesses and documentary proof are required for separate claims"); *see also In re Vioxx Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS

95097 (E.D. La. Oct. 21, 2008) (listing factors the district court may consider in determining whether claims should be severed).

Included within the court's broad discretion under Rule 21 is the authority to sever claims against parties to preserve the court's jurisdiction. *See, e.g., Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 838 (1989) (holding that the circuit court had power, even after trial court judgment, to dismiss dispensable parties whose presence would destroy diversity of citizenship jurisdiction); *Ravenswood Inv. Co., L.P. v. Avalon Correctional Services*, 651 F.3d 1219 (10th Cir. 2011) (holding that a district court can dismiss a dispensable nondiverse party to cure a jurisdictional defect at any point in the litigation, including after judgment has been entered); 4-21 *Moore's Federal Practice - Civil* § 21.05 ("The trial court thus has great discretion to restructure an action to promote the efficient administration of justice. Rule 21 gives the court tools to jettison those parties and claims that are not within its jurisdiction or that are not conveniently prosecuted together, preserving parties and claims that are properly before it."); Wright & Miller, § 1685 (noting that "[c]ourts frequently employ Rule 21 to preserve diversity jurisdiction over a case by dropping a nondiverse party"); *see also Henderson v. AT&T Corp.*, 918 F. Supp. 1059, 1061 (S.D. Tex. 1996) ("[T]he fact that the Plaintiffs are properly joined does not end the severance inquiry. While Rule 21 is titled 'Misjoinder and Non-Joinder of Parties,' the Fifth Circuit has held that the ability to sever claims under Rule 21 is not limited to curing misjoinder of parties.").

**B.**     **This Court is well within its broad discretion to sever the claims against USG and L&W Supply from this action.**

    **1.**     **Plaintiff's allegations of wrongdoing against USG and L&W Supply are separate and distinct from the allegations against the other Defendants.**

The Court need not look beyond the four corners of the Original Petition and the Amended Petition to determine that Plaintiff's claims against USG and L&W Supply are unconnected to the claims against INEX and the other Defendants.

First, the harm allegedly caused by USG and L&W Supply and the harm allegedly caused by INEX and the other defendants do not arise out of the same transaction or occurrence.  In its Amended Petition, Plaintiff has alleged two separate chains of distribution: The Knauf Entities sold drywall to INEX, which sold the drywall to its customers.  Completely separately, a Knauf Entity allegedly sold drywall to USG or L&W Supply, which sold the drywall to its customers.  There is no connection in the two chains of distribution between INEX and USG or L&W Supply.

Although the above chains of distribution are sufficiently separate to support the instant Motion, the specific allegations of the Amended Petition demonstrate even less of a connection between INEX and USG/L&W Supply.  Plaintiff specifically alleges that USG and L&W Supply imported "approximately 3,165 metric tons of drywall manufactured by Defendant Knauf Dongguan which entered the Port of New Orleans on or about June 7, 2006." (First Am. Pet. ¶ 79.)  There is no similar specific allegation that INEX or any other Defendant purchased, imported, distributed, or sold Knauf Dongguan drywall.  Indeed, Plaintiff specifically alleges that INEX purchased the drywall it sold in Louisiana from Defendants Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT") and Knauf Plasterboard (WuHu) Co., Ltd. ("Knauf Wuhu").  Thus, according to the catalogue of specific transactions identified in the Amended Petition, USG or L&W

Supply purchased drywall from a separate Knauf entity, located in a separate area of China, and distributed the drywall to its Louisiana customers entirely apart from INEX.[2]

At Paragraphs 68 through 73 of the Amended Petition, Plaintiff sets out detailed allegations about each of INEX's purchases of drywall manufactured and shipped by KPT and Knauf Wuhu, including specific information such as: the date INEX entered into purchase agreements with KPT and Knauf Wuhu; the type, size, and quantity of drywall purchased; the purchase price; the ports of origin (Port of Tianjin or Port of Shanghai); the date the shipments of KPT and Knauf Wuhu board arrived at the Port of New Orleans; and that each piece of drywall manufactured by KPT and Knauf Wuhu and sold to INEX contained a written stamp warranting that the drywall complied with ASTM C36.  Plaintiff also alleges INEX indirectly purchased drywall manufactured by Taian Taishan Plasterboard Co. Ltd. ("TTP"). (*See* First Am. Pet. ¶ 113.)

However, despite Plaintiff's specific allegations of multiple transactions between and among INEX, KPT, Knauf Wuhu, and TTP, there is no such allegation that USG or L&W Supply was a party to or otherwise involved in any of these transactions.  Therefore, to the extent Plaintiff claims L&W Supply sold drywall manufactured by any Knauf Entity in Louisiana, such claims are irrelevant to the claims against INEX or the other defendants.[3]  Similarly, it is irrelevant to the claims against USG and L&W Supply whether INEX or the other defendants manufactured, imported, distributed, or sold Knauf  Entity or TTP drywall in Louisiana.

Apparently recognizing that the claims against USG and L&W Supply bear no logical or legal connection to the claims against the other defendants, Plaintiff has added allegations to its

---

[2] It is noteworthy that, while Paragraph 51 of the Amended Petition describes a shipment of "Knauf (Wuhu)" to USG/L&W, that shipment is described as only going to the "United States" and not Louisiana.

[3] Indeed, there is no evidence or finding that Knauf Dongguan drywall is defective.

Amended Petition that USG and L&W Supply knew Knauf Chinese drywall was defective and that USG and L&W Supply "conspired" with the Knauf Entities to conceal and cover up the results of scientific testing performed by the Knauf Entities.  Plaintiff has added these allegations of "conspiracy" to its claims for violation of the Louisiana Unfair Trade Practices and Consumer Protection Law (LUTPA), fraudulent concealment, and fraudulent misrepresentation.  (*See* First Am. Pet. ¶¶ 204, 235, 241.)

As a threshold matter, courts have applied heightened scrutiny in determining whether to permit amendments that appear intended to destroy diversity jurisdiction.  *See, e.g., Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987) ("The district court, when faced with an amended pleading naming a new nondiverse defendant in a removed case, should scrutinize that amendment more closely than an ordinary amendment."); *see also Moore v. Manns*, 732 F.3d 454, 456 (5th Cir. 2013) (holding same).  In particular, courts have refused to allow plaintiffs to use loose allegations of "conspiracy" to tie together parties and claims otherwise improperly joined under Rule 20.  *See, e.g., Salley v. Wetzel*, No. 3:12-1515, 2013 U.S. Dist. LEXIS 86730 (M.D. Pa. June 20, 2013) (holding that plaintiff's allegations of a conspiracy could not be used to avoid the limits of proper joinder under Rule 20); *Jackson v. Olsen*, No. No. 3:09-CV-43, 2010 U.S. Dist. LEXIS 17879, *7-8 (E.D. Va. Mar. 1, 2010) ("Plaintiff cannot satisfy the requirements of Rule 20(a) with conclusory allegations of a  conspiracy."); *Proctor v. Applegate*, 661 F. Supp. 2d 743, 779 (E.D. Mich. 2009) ("[P]laintiff's overarching theme of a statewide 'conspiracy' does not satisfy Rules 18 and 20.").

Plaintiff's allegations of any "conspiracy" are completely false.  However, even assuming the truth of the allegations for purposes of this Motion, any purported knowledge of USG and L&W Supply concerning the results of testing performed by Knauf is irrelevant to whether any

Knauf Defendant manufactured or distributed an allegedly defective product or made misrepresentations to its customers or consumers about any defect it had discovered through its testing.  There is no particularized allegation that USG or L&W Supply made, participated in, or approved any specific representation made by any of the Knauf Entities to INEX or any other person in Louisiana.  In fact, it is noteworthy that, even if it is taken as true, the Amended Petition alleges that USG and L&W Supply learned of a possible problem in November of 2006.  (*See*  Am. Pet. ¶ 140.)  This was months after INEX purchased its drywall from KPT and Knauf Wuhu.  (*See id*. at ¶ 68 ("Interior Exerior purchased drywall from KPT and Knauf Wuhu on five occasions between October 2005, and July 2006."); ¶¶69-73.)

Furthermore, there is no recognized duty owed by USG or L&W Supply to third parties who did not purchase drywall from USG or L&W Supply and who otherwise had no involvement with or connection to any sale of drywall by USG or L&W Supply in Louisiana. USG and L&W Supply owed no duty to its competitor, INEX, who purchased drywall directly from KPT and Knauf Wuhu.[4]  Indeed, as discussed above, USG and L&W Supply were strangers to the transactions between and among INEX, KPT, Knauf Wuhu, or any customer that may have purchased their drywall.  *See, e.g., Alexander v. Toyota Motor Sales, U.S.A.*, 123 So. 3d 712, 714 (La. 2013) (defendant car dealership owed no duty to warn a subsequent purchaser about a defective airbag in the car she had purchased from a third party who had previously purchased the car from defendant dealership).  Therefore, even accepting Plaintiff's allegations of USG and L&W Supply's knowledge as true for purposes of this Motion, these allegations simply provide no tenable legal basis to connect USG and L&W Supply to the claims against any other

---

[4] It is well established that the threshold question of whether a duty exists is a question of law for the Court. *See, e.g., McLachan v. New York Life Ins. Co.,* 488 F.3d 624, 627 (5th Cir. 2007) ("Under Louisiana law, the existence of a duty, and the corollary issue of whether the duty extends to protect a particular plaintiff from a particular harm, are questions of law usually determined together, case-by-case").

defendant.  *See, e.g.  George v. Housing Auth. of New Orleans*, 906 So.2d 1282, 1286 (La. Ct. App. 4th Cir. 2005) (rejecting market share liability and holding, "The initial element a plaintiff must establish pursuant to the LPLA is that there is proximate causation, that is a link between the actions of the manufacturer and the injury causing product."); *Jefferson v. Lead Indus. Assoc., Inc.*, 106 F.3d 1245, 1247 (5th Cir. 1997) (rejecting market share liability under Louisiana law and stating, "Before liability may be imposed, under the LPLA, a plaintiff must show proximate causation, a link between the actions of a manufacturer and the injury-causing product."); *McLachan v. New York Life Ins. Co.*, 488 F.3d 624 (5th Cir. 2007) (insurer that knew of applicant's bad blood test results under no duty to inform applicant of associated dangers).

In short, Plaintiff has combined separate claims, arising from separate transactions and occurrences, against separate defendants in violation of Rule 20(a).  There can be no other reason for Plaintiff to plead in this manner than to improperly prevent this Court from exercising its diversity jurisdiction.  Were this joinder permissible, any plaintiff could defeat diversity by finding someone from Louisiana that he or she could name as a defendant and lump those claims into the same complaint with other claims against diverse defendants.  This would serve to make diversity jurisdiction and removal almost inaccessible to foreign defendants.

**2.      Severance will avoid delay, ensure judicial economy, and safeguard fundamental fairness.**

As the Fifth Circuit held in *Acevedo*, even if Plaintiff can show the Defendants are all properly joined, "district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." 600 F.3d at 521.  In the present case, severance of the claims against USG and L&W Supply will serve these ends.

If Defendants are forced to litigate this matter in a new forum, significant delay will be

9

inevitable as the new court becomes acquainted with the facts, allegations, claims, parties, counsel, and range of legal issues related to the Chinese drywall litigation.  This Court is well versed on all of these matters and will not need to delay moving forward promptly with this litigation.

Similarly, severance will ensure efficient and effective use of judicial resources and fairness to all parties.  During the time this case has been pending in federal court as part of the MDL, the parties have conducted extensive discovery, including numerous depositions in the United States and abroad and multiple productions of voluminous documents by the parties. This Court has also heard and ruled on several critical legal issues in the litigation.  The efficiencies gained from this Court's background and its experience with the allegations, claims, and parties will be lost if this matter is sent to another forum.

## III. CONCLUSION

For the reasons set forth above, USG and L&W Supply respectfully submit that, should this Court decline to exercise its discretion to dismiss or sever the claims against the non-diverse defendant, INEX, as suggested in Defendants' Amended Notice of Removal, the Court should, in the alternative, sever the claims against USG and L&W Supply pursuant to Federal Rule of Civil Procedure 21.

[*Signature block appears on the following page*.]

Respectfully submitted,

*/s/ W. David Conner*

_____

W. David Conner (SC Bar # 66358; Fed. # 5986)
Email: dconner@hsblawfirm.com
Moffatt G. McDonald (SC Bar # 3784; Fed. # 2805)
Email: mgmcdonald@hsblawfirm.com
Charles Sprinkle (SC Bar # 70630; Fed. # 9712)
Email: csprinkle@hsblawfirm.com
Christopher B. Major (SC Bar # 72872; Fed. # 9382)
Email: cmajor@hsblawfirm.com

HAYNSWORTH SINKLER BOYD, P.A.
P.O. Box 2048
Greenville, SC  29602
Telephone: (864) 240-3226
Facsimile: (864) 240-3300 (fax)

Robert E. Kerrigan, Jr.
Email: rkerrigan@dkslaw.com

DEUTSCH KERRIGAN & STILES
755 Magazine Street
New Orleans, LA  70131
Telephone: (504) 593-0619
Facsimile: (504) 566-1201

*Attorneys for Defendants USG Corporation,*
*United States Gypsum Company,*
*USG Interiors, Inc., and L&W Supply Corporation*
*d/b/a Seacoast Supply*

July 15, 2014

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, and to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 15th day of July, 2014.

<u>/s/ W. David Conner</u>