**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

**THIS DOCUMENT RELATES TO:**

*Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al.*, Case No. 09-6687 (E.D.La.);

*Gross, et al. v. Knauf Gips, KG, et al.*, Case No. 09-6690 (E.D.La.);

*Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*, Case No 10-361 (E.D.La.);

*Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1672 (E.D.La.);

*Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1395 (E.D.La.);

*Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1673 (E.D.La.)

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF OMNIBUS MOTION FOR
CLASS CERTIFICATION PURSUANT TO RULES 23(a)(1)-(4) and 23(b)(3)**

1

## I.   __INTRODUCTION__

Plaintiffs, Eduardo and Carmen Amorin, Albert and Betsy Butzer, Jack and Anna McGinn, Thomas and Virginia Spencer, and Elliot and Angelina Everard,[1] individually, and on behalf of all others similarly situated, move that the proposed class set out below be certified against the Taishan Defendants[2] pursuant to Fed.R.Civ.P. 23(a)(1)-(4) and 23(b)(3).  The class is defined as follows:

> All owners of real properties in the United States, who are a named
> Plaintiff on the complaint in *Amorin*, *Germano*, *Gross*, and *Wiltz*
> (*i.e.*, not an absent class member), asserting claims arising from, or
> otherwise related to Chinese Drywall manufactured, sold,
> distributed, supplied, marketed, inspected, imported or delivered
> by the Taishan Defendants.

The above-defined class is comprised of active litigants who are participants in the

Omnibus Class Action Complaints in *Gross, et al. v. Knauf Gips, KG, et al.*, Case No. 09-6690

(E.D.La.); *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*, Civ. Action

---

[1] Plaintiffs, Eduardo and Carmen Amorin, Albert and Betsy McGinn, Jack and Anna McGinn, Thomas and Virginia Spencer, and Elliot and Angelina Everard, are being designated as exemplar class representatives for purposes of the instant motion for class certification as each participant in the Plaintiffs' Omnibus Class Action Complaints is serving as a class representative.

[2] The "Taishan Defendants" are comprised of the following entities: Taishan Gypsum Co. Ltd. (hereafter "Taishan"); Beijing New Building Materials Limited Co. (hereafter "BNBM"); Beijing New Building Materials Group Co., Ltd. (hereafter "BNBM Group"); China National Building Materials Co., Ltd. (hereafter "CNBM"); China National Building Materials Group Corporation (hereafter "CNBM Group"); and Tai'an Taishan Plasterboard Co., Ltd (hereafter "TTP").  The "Taishan Affiliates" are comprised of the following entities: BNBM, BNBM Group, CNBM, CNBM Group, and TTP.

BNBM owns 65% of Taishan.  CNBM Group owns 56.4% of CNBM and 75% of BNBM.  The State-Owned Assets Supervision and Administration Commission ("SASAC"), a nonparty at this juncture, supervises the State-owned assets of enterprises engaged in drywall production, including Taishan.  SASAC oversees 150 large central state-owned assets and enterprises, including CNBM Group.  SASAC owns 100% of CNBM Group.  *See* P3.0629-1000(Affidavit of Russ M. Herman In Support of the Plaintiffs' Steering Committee's Evidentiary Presentation Regarding Taishan Gypsum Co., Ltd. in *Germano* ¶¶16, 18-20).

No. 10-361 (E.D.La); *Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-080 (E.D.La); *Haya, et al. v. Taishan Gypsum Corp. Ltd., et al.*, Civ. Action No. 11-1077 (E.D.La); *Almeroth, et al. v. Taishan Gypsum Co., Ltd., et al.*, Civ. Action. 12-0498 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1672 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1395 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1673 (E.D.La.).  This matter involves the claims of thousands of class members who have suffered property damages from the use of defective Chinese-manufactured drywall ("CDW" or "Chinese Drywall") in their properties.

The claims against the Taishan Defendants are ripe for class certification for several procedural and substantive reasons.  The *Germano* Plaintiffs (Michelle Germano, Dennis and Sharon Jackson, Jason and Lisa Dunaway), have obtained a default judgment against Taishan on November 20, 2009 (Rec.Doc. #487);[3] furthermore, the seven intervenor Plaintiffs in *Germano* (Robert and Lisa Orlando, William and Deborah Morgan, Joseph and Vannessa Michaux, Preston and Rachel McKellar, Steven and Elizabeth Heischober, Jerry and Inez Baldwin, and Joseph and Cathy Leach), who are Virginia homeowners with Taishan Chinese Drywall, obtained a default judgment against Taishan on May 11, 2010 (Rec.Doc. #3013).  Based upon a February 19-22, 2010 bellwether trial, the Court has made judicial findings regarding the scope of remediation and property damages sustained by the intervenor *Germano* Plaintiffs as a result of defective Taishan drywall.  *See* Germano Findings of Fact and Conclusions of Law,

---

[3] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 742 F.3d 576 (5th Cir. 2014).

hereinafter "FOFCOL"), Rec.Doc. #2380.

Likewise, each of the Taishan Affiliates has been adjudicated in default for failing to enter an appearance and/or otherwise respond after being served with the complaints in *Wiltz*, *Gross*, and *Amorin*, including the omnibus class action complaints and intervention complaints thereto. *See* Rec.Doc.#s 7302, 7735, 7736, 15687, 17814 and 17815. The Taishan Affiliates are directly liable to Plaintiffs and class members herein under the theories of alter-ego and piercing the corporate veil.

In addition, on September 4, 2012 this Court issued its Order and Reasons denying (1) Taishan's Renewed Motion to Vacate the Default Judgment and Dismiss the Complaint in *Germano v. Taishan Gypsum, Co., Ltd.*, Case No. 09-6687 [Rec.Doc.# 13490]; (2) Taishan's Renewed Motion Pursuant to Rules 55(c) and 12(b)(2) to Vacate the Entry of Default and Dismiss this Action in *The Mitchell Co., Inc., v. Knauf Gips, KG*, Case No. 09-4115 [Rec.Doc.# 13566]; (3) Taishan and TTP's Motion Pursuant to Rule 12(b)(2) to Dismiss the Complaint in *Gross v. Knauf Gips KG*, Case No. 09-6690 [Rec.Doc.# 13590]; and (4) Taishan and TTP's Motion Pursuant to Rule 12(b)(2) to Dismiss the Complaint in *Wiltz v. Beijing New Building Materials Public Ltd., Co.*, Case No. 10-361 [Rec.Doc.# 13591]. *See In re Chinese Manufactured Drywall Products Liab. Litig.*, 894 F. Supp. 2d 819 (E.D. La. 2012). On January 28, 2014, the Fifth Circuit affirmed this Court's jurisdictional ruling in the *Germano* action. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 742 F.3d 576 (5th Cir. 2014).[4] More recently, the Fifth Circuit affirmed the Court's September 4, 2012 Order as it related to the *Gross*, *Wiltz* and *The Mitchell Company* actions. *See In re: Chinese Manufactured Drywall*

---

[4] The Order is now final as no petition for certiorari to the United States Supreme Court was filed.

*Products Liability Litigation*, ____ F.3d ____, 2014 WL 2111672 (5th Cir. May 20, 2014). Pursuant to these rulings, jurisdiction over Taishan and TTP has been conclusively established.

This Court is not only extremely familiar with the factual evidence, but the Court may give preclusive effect to the FOFCOL and the Court's September 4, 2012 Order and Reasons (hereafter the "Jurisdictional Rulings"), which will greatly simplify this class proceeding. The only unresolved issues for the class as it relates to their claims against the Taishan Defendants is the factual determination of the amount of recoverable property damages to the class and whether the Taishan Affiliates may be held liable under the theories of alter-ego and piercing the corporate veil. The determination of these issues can be readily managed under a Federal Rule 23(b)(3) class certification given the limited scope of these issues, the record developed and reflected in the FOFCOL, the Jurisdictional Rulings and the extensive level of familiarity of the Court with the relevant evidence. In addition, the Court can be guided by its experience in the *Hernandez* trial[5] and can utilize expert data as well as data from Moss & Associates and BrownGreer PLC for purposes of calculating class damages.[6]

The proposed class representatives (Eduardo and Carmen Amorin, Albert and Betsy Butzer, Jack and Anna McGinn, Thomas and Virginia Spencer, and Elliot and Angelina Everard) seek class certification on behalf of themselves and all similarly-situated persons pursuant to Fed. R. Civ. P. 23(a)(1)-(4) and 23(b)(3). They propose to represent a national class comprised of active litigants who are owners of real properties containing Chinese Drywall manufactured

---

[5] *See Hernandez v. Knauf Gips KG, et al.*, Case No. 09-6050, Findings of Fact and Conclusions of Law, (E.D.La. April 27, 2010) (*See* Rec.Doc.# 2713).

[6] Moss & Associates is the general contractor assisting Knauf with its remediation program. BrownGreer PLC is the Court appointed settlement administrator.

by the Taishan Defendants for remediation property damages.[7]

Plaintiffs will show that the class action mechanism is a superior mechanism to resolve these claims, compared to a mechanism utilizing individual proceedings. Class-wide damages can be the subject of a formulaic method of calculation. Furthermore, it would be grossly inefficient and time-wasting for different courts to resolve identical issues on an individual basis, and it would unnecessarily create a risk of inconsistent adjudications. If the class is certified, the Court will be obligated only to resolve the factual issues of (a) the amount of class-wide damages, and (b) whether the Taishan Affiliates may be held liable under the theories of alter-ego and piercing the corporate veil. These issues clearly fall within the expertise and competence of the Court, particularly after the Court has presided as the finder of fact in both the *Germano* and *Hernandez* remediation and property damages trials.

## II.   FACTUAL STATEMENT AND PROCEDURAL HISTORY

The Court's Findings of Fact and Conclusions of Law and its Jurisdictional Rulings establish and set forth the majority of the facts relevant to this case, and more specifically to this class motion. (Rec.Doc. #2380). *See also In re Chinese Manufactured Drywall Products Liab. Litig.*, 894 F. Supp. 2d 819 (E.D. La. 2012). This Factual Statement will highlight those facts most relevant to class certification.

From 2005 through 2008, the housing boom and rebuilding efforts necessitated by Hurricanes Katrina and Rita led to a shortage of construction materials in the United States, including drywall. As a result, drywall manufactured in China was brought into the United

---

[7] The proposed class does not seek to certify personal injury (or medical monitoring) claims in this motion. To the extent any class members seek to bring those claims, they will be brought on an individual basis.

States and used in the construction and refurbishing of homes in coastal areas of the country,

notably the East Coast and Gulf South. After the installation of the Chinese Drywall, property

owners began to complain of emissions of smelly gasses, the corrosion and blackening of metal

wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their

homes. *In re Chinese Manufactured Drywall Products Liab. Litig.*, 894 F. Supp. 2d at 829-30.

A.  **The Representative Plaintiffs**

Eduardo and Carmen Amorin are participants in *Wiltz*, *Gross*, *Abel*, and each of the

*Amorin* complaints. They own a property located at 240 West End Drive #721, Punta Gorda, FL

33950. It has been determined, following an inspection, that this property contains defective

Taishan Drywall.

Albert and Betsy Butzer are participants in *Haya* and each of the *Amorin* complaints.

They own a property at 9519 26th Bay Street, Norfolk, VA 23518. It has been determined,

following an inspection, that this property contains defective Taishan Drywall.

Jack and Anna McGinn are participants in *Wiltz* and each of the *Amorin* complaints.

They own a property located at 4301 Blackthorne Court, Virginia Beach, VA 23455. It has been

determined, following an inspection, that this property contains defective Taishan Drywall.

Thomas and Virginia Spencer are participants in *Wiltz*, *Almeroth*, and each of the *Amorin*

complaints. They own a property located at 2481 Lakewood Manor Drive, Athens, GA 30606.

It has been determined, following an inspection, that this property contains defective Taishan

Drywall.

Elliot and Angelina Everard are participants in *Gross*, *Abel*, and each of the *Amorin*

complaints. They own a property located at 3000 N. Palm Drive, Slidell, LA 70458. It has been

determined, following an inspection, that this property contains defective Taishan Drywall.

**B. Taishan's Contacts with the United States**

Taishan has a number of contacts with the United States generally. Taishan and/or its affiliated companies manufactured and sold approximately 1,825,202 sheets of drywall, which were shipped to and used in the United States from 2005 to 2009. *Id.* at 849-50. Taishan holds itself out as a Chinese manufacturer of new building materials, particularly drywall, that exports its products world-wide, including the United States. *Id.* at 850. Taishan's marketing and informational brochure includes an illustration of its world-wide marketing web, which depicts an arrow pointing from China to the United States. *Id.* Taishan's website, like its brochure, states that Taishan is one of the largest drywall manufacturers in the world and that it exports its product world-wide, including to the United States. *Id.* Taishan also advertises and sells its drywall on Alibaba.com, which allows customers to purchase its drywall worldwide, including in the United States. *Id.* Taishan's employees use Americanized names, speak English, and were employed by Taishan specifically to service the United States market. *Id.* Taishan manufactured its drywall specifically for U.S. customers by: representing its drywall satisfied American Society for Testing and Materials ("ASTM") standards; measuring the drywall in U.S. measurements; placing on the drywall, labels written in English and information and colors as requested by U.S. customers; and employing packing and shipment of the drywall for the United States. *Id.* at 850-51.

Taishan shipped large quantities of drywall to the states of Virginia, Florida, and Louisiana. For instance, Taishan directed shipments of drywall to Venture Supply in Virginia totaling 159,000 sheets. *Id.* at 853. From 2006 to 2007, Taishan sold almost 200,000 sheets of

its drywall, through several transactions, to Florida customers or customers doing business in Florida. *Id*. at 875. During 2006 and 2007, Taishan sold at least 45,756 sheets of drywall, through a number of transactions, which ended up in Louisiana. *Id*. at 898.

    **C.**  **This Court has Repeatedly Held the Taishan Defendants in Default**

      The *Germano* Plaintiffs, on behalf of themselves and all other similarly situated owners, initiated a class action on May 1, 2009 by filing a complaint in the Eastern District of Virginia. Thereafter, on May 26, 2009, Plaintiffs filed their First Amended Complaint. On August 3, 2009, Plaintiffs received notice that service of process of the First Amended Complaint was perfected on Defendant Taishan. Plaintiffs' case was then transferred to the Eastern District of Louisiana on October 13, 2009. Subsequent to transfer, on October 30, 2009 Plaintiffs moved to amend the First Amended Compliant to assert a national class against Taishan. Plaintiffs' motion to amend was granted on November 18, 2009. *See* Rec.Doc.# 469.

      Since Taishan did not timely respond to the Complaint or enter its appearance in this litigation, Plaintiffs moved for a default judgment. On November 20, 2009, the Court granted a preliminary default against Taishan. (Rec.Doc. #487). The Court held an evidentiary hearing on February 19 and 22, 2010, and issued Findings of Fact and Conclusions of Law on April 8, 2010. (Rec.Doc. #2380). The Court entered a final default judgment with awards to the seven Plaintiff Intervenors on May 10, 2010. (Rec.Doc. #3013).

      The Taishan Affiliates have also been held in default with respect to the proceedings in *Wiltz*, *Gross*, and *Amorin* as reflected in the chart below. On February 1, 2011, BNBM, BNBM Group, CNBM, and CNBM Group were held in default in the *Gross* proceedings. *See* Rec.Doc.# 7302. These same entities were again held in default in *Gross* on August 7, 2012 (*i.e.*, as to the

9

omnibus intervention complaint that was filed in *Gross*).  *See* Rec.Doc.# 15687.  On February

24, 2011, BNBM was held in default in the *Wiltz* proceedings.  *See* Rec.Doc.# 7735.  On July 1,

2014, Taishan, TTP, and CNBM were held in default with respect to the *Amorin* case originally

filed in this Court (Case No. 2:11-CV-1395).  *See* Rec.Doc.# 17814.  Pursuant to this same

Order, Taishan and TTP were held in default with respect to the *Amorin* complaint originally

filed in the Southern District of Florida prior to its transfer to this Court (Case No. 2:11-CV-

1672).  *Id*.  Also on July 1, 2014, Taishan, TTP, BNBM, CNBM, and CNBM Group were held in

default with respect to the *Amorin* complaint originally filed in the Eastern District of Virginia

prior to its transfer to this Court (Case No. 2:11-CV-1673).  *See* Rec.Doc.# 17815.[8]  These

default judgments are summarized in the chart below:

### CASES WHERE THE TAISHAN DEFENDANTS HAVE BEEN HELD IN DEFAULT

|  | Taishan | TTP | BNBM | BNBM Group | CNBM Group | CNBM |
|---|---|---|---|---|---|---|
| *Germano* | X | | | | | |
| *Wiltz* | | | X | | | |
| *Gross* | | | X | X | X | X |
| *Amorin* (Virginia) | X | X | | X | X | X |
| *Amorin* (Louisiana) | X | X | | | | X |
| *Amorin* (Florida) | X | X | | | | |

The instant motion for class certification also seeks to hold the Taishan Affiliates liable

for damages caused by Taishan's drywall under a theory of alter ego and/or piercing the

---

[8]  Taiashan was also held in default in *The Mitchell Company, Inc. v. Knauf GIPS KG, et. al.*, Case No. 2:09-CV-4115 (E.D.La.).  *See* Rec.Doc.# 277.

corporate veil.[9]  This Court's Jurisdictional Ruling already supports the conclusion that Taishan

---

[9] "[T]he dictionary definition of the term affiliate in Black's Law Dictionary (7th ed.1999) as a corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation …".  *Hopkins v. Howard*, 930 So. 2d 999, 1007 (La. App. 4 Cir. 2006), *writ denied*, 930 So. 2d 984 (La. 2006).  In *Southern Capital Enterprises, Inc. & F. David Tutt v. Conseco Services, L.L.C., et al.*,  476 F.Supp.2d 589 (M.D.La. 2007), the court equated the term affiliate to the single business enterprise theory of piercing the corporate veil.  *Id*. at 595.  Under the single business enterprise theory a court "may disregard the concept of corporate separateness and extend liability to each of the affiliated corporations to prevent fraud or to achieve equity."  *Id*. (quoting *Brown v. Auto. Casualty Ins. Co.*, 644 So.2d 723, 727 (La.Ct.App.1995)).

In *Green v. Champion Ins. Co.*, 577 So.2d 249 (La.Ct.App. 1st Cir.1991), *writ denied*, 580 So.2d 668 (La. 1991), the court set forth a non-exclusive eighteen-factor test to determine whether a group of affiliated entities constituted a single business enterprise. Those factors as set forth by the court are as follows:

1.   Corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control;
2.  Common directors or officers;
3.  Unified administrative control of corporations whose business functions are similar or supplementary;
4.  Directors and officers of one corporation act independently in the interest of that corporation;
5.  Corporation financing another corporation;
6.  Inadequate capitalization ("thin corporation");
7.   Corporation causing the incorporation of another affiliated corporation;
8.  Corporation paying the salaries and other expenses or losses of another corporation;
9.  Receiving no business other than that given to it by its affiliated corporations;
10.  Corporation using the property of another corporation as its own;
11.  Noncompliance with corporate formalities;
12.  Common employees;
13.   Services rendered by the employees of one corporation on behalf of another corporation;
14.  Common offices;
15.  Centralized accounting;
16.  Undocumented transfers of funds between corporations;
17.  Unclear allocation of profits and losses between corporations;

11

and TTP are one and the same entity under an alter-ego and/or agency theory.[10]  In concluding

that TTP's jurisdictional contacts with the state of Florida could to be attributed to Taishan under

an alter-ego or agency theory, this Court made several important observations regarding the

relationship between the companies, including, but not limited to, the facts that Taishan

controlled 100% of TTP's shares, that several high ranking Taishan employees were appointed to

the board of directors of TTP, that several former Taishan employees became employees of TTP,

that TTP was authorized to use Taishan's brand, that TTP sold Taishan brand drywall, and that

when dealing with customers Taishan and TTP regularly held themselves out as operating as a

single business enterprise.  *See In re Chinese Manufactured Drywall Products Liab. Litig.*, 894

---

> and
> 18.  Excessive fragmentation of a single enterprise into separate corporations.

*Green*, 577 So.2d at 257–58.  These factors do not constitute an exhaustive list.  *Id*. at 258. Moreover, no one factor is dispositive on the issue of whether a single business enterprise exists. *Id*.  Establishing these facts is common to every class member, thus making class certification appropriate.

[10] With the exception of TTP none of the other Taishan Affiliates entered an appearance or otherwise participated in these proceedings.  While the discovery involving TTP established that Plaintiffs properly pierced the corporate veil as to TTP, the Plaintiffs were unable to proceed with any discovery involving the other Taishan Affiliates in light of their default status. Plaintiffs should not be prejudiced by the default status and lack of discovery against these other Taishan Affiliates.  If anything, the Court should apply a more lenient standard for purposes of determining alter-ego status and piercing the corporate veil in light of these defendants' willful decision to disregard this Court's exercise of personal jurisdiction.

Even without discovery from the Taishan Affiliates other than TTP, this Court made certain factual findings regarding BNBM and CNBM.  For instance, this Court concluded that BNBM purchased sixty-five percent (65%) of the equity of Taishan on March 19, 2005. FOFCOL at p. 10.  The Court also determined that CNBM's Gypsum Board business production on December 31, 2008 from its wholly owned subsidiary, Taishan, was $262.3 million Yuan.  *Id*. at p. 11.  Thus, notwithstanding the lack of any discovery from the vast majority of the Taishan Affiliates, this Court is capable of making judicial findings applicable to the theories of alter-ego and piercing the corporate veil.

F. Supp. 2d 819, 869-72.  After applying Florida law to these facts this Court concluded that

TTP's jurisdictional contacts could be imputed to Taishan.  *Id*.  The Court reached the same

conclusion for purposes of applying TTP's jurisdictional contacts to Taishan for purposes of

assessing personal jurisdiction under Louisiana law.  *Id.* at 895.[11]

### D. Judicial Findings Regarding the Defective Nature of Chinese Manufactured Drywall and the Need for and Scope of Remediation

It has been established by the Consumer Product Safety Commission ("CPSC") and in

this proceeding that Chinese drywall releases reduced sulfur gases.  FOFCOL at p. 12.  The three

main gases that are released from Chinese manufactured drywall are hydrogen sulfide ($H_2S$),

carbonyl sulfide (COS), and carbon disulfide ($CS_2$).  *Id.* at p. 12.  The CPSC and Plaintiffs'

experts have detected reduced sulfur gas emissions by conducting laboratory tests on samples of

Chinese drywall.  *Id.* at p. 12.  These emissions are often associated with strong odors.  *Id.* at p.

12.  The fact that Chinese drywall emits sulfur gases has been reported by the CPSC, the Florida

Department of Health, and other investigatory agencies and firms.  *Id.* at p. 13.

The sulfur gases released by Chinese drywall cause offending odors in homes, making

them hard if not impossible to live in, and are corrosive to metals, particularly copper and silver.

*Id.* at p. 13.

---

[11] Under Virginia law, a court may pierce the corporate veil to find that an individual (or corporation) is the alter-ego of another corporation where it finds "(i) a unity of interest and ownership between the two entities; and (ii) that one entity used the other "to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage." *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 306 F.3d 126, 132 (4th Cir. 2002).  Thus, for a court to disregard the corporate veil, the plaintiff must show that a subsidiary is organized and operated as a mere instrumentality or conduit of the stockholders, and it must further appear that recognition of the separate corporate entities would aid an unjust loss or injury. *Marsh Broadcasting of Washington, D.C., Inc. v. George Mason Univ. Found.*, 21 Va. Cir. 89, 91 (Fairfax County Cir. Ct. 1990) (citing *Beale v. Kappa Alpha Order*, 192 Va. 382, 386, 64 S.E.2d 789 (1951)).

As a result of this Court having held the evidentiary hearing to determine the scope of remediation, cost of remediation and other property damages caused by Taishan Drywall to the seven Plaintiff – Intervenors, (February 19, 2010, February 22, 2010), the Court's April 8, 2010 Findings of Fact and Conclusions of Law (Rec.Doc. # 2380) resolved a multitude of factual and legal issues for the seven Plaintiff Interveners' claims against Taishan (such as scope and cost of remediation and the right to recover remediation damages).  To accomplish the remediation required by the law to make them whole, it is established that homeowners will be out of their home for 4-6 months during remediation, and that families thus are entitled to alternate living expenses during the remediation process.  *Id.* at p. 57.  Moreover, the average cost of repairing class members' homes is subject to calculation on a formulaic, square footage basis.  Indeed, this Court made similar findings in the later *Hernandez* trial.  *See* April 27, 2010 Findings of Fact and Conclusions of Law, Rec.Doc.# 2713.  The same approach to the determination of damages for repair and remediation is applicable to the class representatives and class members.

### E.  Taishan's Recent Attempt to Flee the Jurisdiction of the Court

Since the affirmance of the Court's Jurisdictional Rulings, Taishan has engaged in a series of evasive activities that appear designed to thwart the jurisdiction of the Court.  For instance, Plaintiffs filed a motion to examine the defendant as a judgment debtor pursuant to Fed.R.Civ.P. 69(a) and La. C.C.P. Art. 2456 (Doc. 17760), and this Court entered an order requiring Taishan to (1) appear in Court on Thursday, July 17, 2014 at 10:00 a.m. to respond to questioning by plaintiff-intervenors, and (2) produce at that time the documents specified in the judgment debtor motion (Doc. 17774).  Immediately before this hearing, Taishan's counsel filed two motions seeking to withdraw as counsel in all actions where counsel had entered its

appearance on behalf of Taishan.  As these motions did not purport to appoint new counsel to defend Taishan in the instant proceedings, they appeared as little more than an attempt by Taishan to disregard a Court order and avoid execution of the final judgment entered against it in *Germano*.  On July 17, 2014, Taishan in fact did fail and refuse to appear before the Court, in direct violation of the Court's Order requiring its appearance to allow the Plaintiffs to examine Taishan as a judgment debtor.  Appropriately, the Court now has held Taishan in both civil and criminal contempt.  *See* Order Dated July 17, 2014, Rec.Doc.# 17869.

## III.   ARGUMENT

### A.   Standard of Review

The proponents of the class bear the burden of demonstrating that the case is appropriate for class treatment.  *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 n.4 (5th Cir. 2001). Class certification is soundly within the district court's discretion, and this decision is essentially a factual inquiry.  *Vizena v. Union Pac. R.R. Co.,* 360 F.3d 496, 502-03 (5th Cir. 2004).  In some cases it is necessary for a district court to go beyond the pleadings to understand the claims, defenses, substantive law, and relevant facts in order to make a meaningful certification decision. *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2556 (U.S. 2011).  However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."  *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (U.S. 2013).  Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.  *Id.*

Courts that have addressed default judgments in the class certification context have ruled that the admissions of fact in the complaint are not sufficient for class certification.  Following

the "rigorous analysis" standard set forth in *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982), these courts have reasoned that the legal conclusions of Rule 23 are not waived or admitted by the default.  *See*, *e.g.*, *Davis v. Hutchins*, 321 F.3d 641, 648-49 (7th Cir. 2003) (where the court vacated the district court's findings of class damages because class certification had not been determined).  The court in *Davis*, held:

> There is the general principle that factual allegations in the complaint are deemed admitted by the defendant upon default; however, application of that general principle does not solve the class-certification issue.  Rule 23(c) imposes an independent duty on the district court to determine by order that the requirements of Rule 23(a) are met regardless of the defendant's admissions.  No such judicial determination was made here.

*Davis*, 321 F.3d at 648-49.  *See also Partington v. American Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006) (notwithstanding the entry of default judgment, courts must formally address whether class certification is appropriate under a rigorous Rule 23 analysis).  Although none of the Taishan Defendants is expected to contest this motion, as described below, Plaintiffs have met all of the prerequisites for class certification.

**B.  <u>Plaintiffs have Established the Requirements of Rule 23(a)</u>**

**1.  <u>Numerosity – Rule 23(a)(1)</u>**

To demonstrate numerosity, Plaintiffs must establish that joinder is impracticable through "some evidence or reasonable estimate of the number of proposed class members."  *Pederson v. La. State Univ.,* 213 F.3d 858, 868 (5th Cir. 2000).  "Although the number of members of any proposed class is not determinative of whether joinder is impracticable," the Fifth Circuit has generally set the threshold of 100 to 150 people as satisfying the numerosity requirement. *Mullen v. Treasure Chest Casino LLC,* 186 F.3d 620, 624 (5th Cir. 1999).

Since the class is comprised of active litigants, objective evidence establishes that the class consists of approximately 4,150 members.[12]  The class representatives and members of the class all seek remediation and property damages for their homes as their primary form of relief. Joinder of 4,150 class members is impracticable and would lead to a squandering of judicial economy and the resources of the parties.  The presently available evidence of such a large class demonstrates that the proposed class clearly meets the numerosity requirement.

## 2. <u>Commonality – Rule 23(a)(2)</u>

The threshold for establishing commonality is not high since "for purposes of Rule 23(a)(2) even a single common question will do."  *Dukes*, 131 S.Ct. at 2556.  As per *Dukes*, to satisfy Rule 23's commonality requirement, class claims "must depend upon a common contention...of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  131 S.Ct. at 2551.  The Supreme Court explained that the key consideration in assessing commonality is not whether the class raises common claims, but whether a class action can "generate common answers apt to drive the resolution of the litigation."  *Id*.  "To satisfy the commonality requirement under Rule 23(a)(2), class members

---

[12] *See Gross, et al. v. Knauf Gips, KG, et al.*, Case No. 09-6690 (E.D.La.); *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*, Civ. Action No. 10-361 (E.D.La); *Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-080 (E.D.La) (service of this complaint on the Taishan Defendants is ongoing); *Haya, et al. v. Taishan Gypsum Corp. Ltd., et al.*, Civ. Action No. 11-1077 (E.D.La.) (service of this complaint on the Taishan Defendants is ongoing); *Almeroth, et al. v. Taishan Gypsum Co., Ltd., et al.*, Civ. Action. 12-0498 (E.D.La.) (service of this complaint on the Taishan Defendants is ongoing); *Amorin, et al. v. Taishan Gypsum Co., Ltd f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1672 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1395 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1673 (E.D.La.).

must raise at least one contention that is central to the validity of each class member's claims."
*In re Deepwater Horizon*, 739 F.3d 790, 810 (5th Cir. 2014).

Here, determining class-wide property damages for the class will affect all class members in a similar manner. The factual determination of class-wide property damages is common to the class members and resolution of this common question will generate common answers apt to drive the resolution of the litigation. In addition to this overriding common issue, the issue of whether the Taishan Affiliates can be held liable under alter ego and piercing the corporate veil theories is a further common question. The resolution of this question will also generate common answers apt to drive the resolution of the litigation. Thus, the commonality requirement is satisfied.

          **a.**        **Collateral Estoppel Effect of *Germano* Findings of Fact and Conclusions of Law and Res Judicata Effect of the Court's Jurisdictional Rulings**

Expert evidence as well as data from sources such as Moss & Associates and BrownGreer PLC will demonstrate that the factual determination of class-wide property damages is common to the class representatives and class members. Under the doctrine of collateral estoppel, the Court may also rely on the extensive findings already made by the Court in *Germano* default judgment proceedings. (Rec.Doc. #2380). The Supreme Court has approved the use of offensive, non-mutual collateral estoppel under certain circumstances.

> Generally stated, The doctrine of collateral estoppel … bars a party from relitigating in a second proceeding an issue of fact or law that was litigated and actually decided in a prior proceeding, if that party had a full and fair opportunity to litigate the issue in the prior proceeding and the decision of the issue was necessary to support a valid and final judgment on the merits.

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330-31 (1979); *see also U.S. v. Davenport*, 484 F.

3d 321, 326 (5th Cir. 2007).  The *Parklane* court noted that certain circumstances might exist in

a case to justify a court's refusal to apply collateral estoppels, including where: (a) a defendant

has little incentive to defend vigorously, (b) the second action affords the defendant procedural

opportunities not available in the first action that could cause a different result, and (c) "if the

judgment relied upon as a basis for the estoppels is itself inconsistent with one or more previous

judgments in favor of the defendant.  *Parklane,* 439 U.S. at 330-31; *In re Plunk*, 481 F. 3d 302,

308 (5th Cir. 2007).

Under the *Parklane* standards, it is appropriate to give the Findings of Fact and

Conclusions of Law a preclusive effect in this class proceeding.  The defendant has had a full

opportunity to litigate, but chose not to respond to process.[13]  FOFCOL at 5.  It is also clear that

the Court's findings on the scope and cost of remediation and property damages were "necessary

to support a valid and final judgment on the merits."  *Parklane*, 439 U.S. at 330-31.

Furthermore, none of the *Parklane* factors which would justify a court's refusal to apply

collateral estoppel is present on the *Germano* record.  Therefore under *Parklane* and *Plunk*,

Plaintiffs request that the Court hold that the Findings of Fact and Conclusions of Law (Rec.Doc.

#2380) are entitled to be given preclusive effect in this class proceeding.

With respect to the Court's Jurisdictional Rulings, Taishan vigorously opposed personal

jurisdiction at both the district court level and at the Fifth Circuit Court of Appeals.  Taishan lost

at both levels.  Therefore, the Court's Jurisdictional Rulings are entitled to res judicata effect.

---

[13] It is noteworthy that intervenor Knauf, prior to withdrawing from the *Germano* proceedings, vigorously contested Plaintiffs' evidence on the scope of remediation and cost of remediation through the process of filing expert reports, cross-examining Plaintiffs' experts at depositions, and filing *Daubert* challenges against Plaintiffs' remediation and damages experts (which were denied).  FOFCOL at 5-6.

"Res judicata means a thing decided; the doctrine states that a final judgment on the merits rendered by a court of competent jurisdiction is conclusive as to the parties and their privies; therefore, attempts to litigate the matter further are barred."  *German v. Corr. Corp. of Am.*, 2006 WL 2583732, * 1 (N.D. Miss. Sept. 6, 2006) (internal quotes omitted), *citing Cromwell v. County of Sac.*, 94 U.S. 351, 352 (1876); *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 535 (5th Cir. 1978).

In sum, the commonality of the factual determination of class-wide property damages is amply supported either by expert evidence, or the Findings of Fact and Conclusions of Law from the proceeding for the seven Plaintiff Intervenors which are entitled to be given a preclusive effect under the *Parklane* standards, or both.  The Court's Jurisdictional Rulings are likewise entitled to preclusive effect.

### 3.  <u>Typicality – Rule 23(a)(3)</u>

Rule 23(a)(3) requires that the claims of the class representatives be typical of the class's claims or defenses.  "The typicality criterion focuses on whether there exists a relationship between the plaintiff's claims and the claims alleged on behalf of the class."  NEWBERG ON CLASS ACTIONS §3:13.  Again, the threshold for typicality is low:  class representatives must show similarity between their legal and remedial theories and the theories of the rest of the class. *Mullen,* 186 F.3d at 625.  Typicality does not require that the claims of the class are identical, but rather that they share the same essential characteristics – a similar course of conduct, or the same legal theory.  *James,* 254 F.3d at 571 (*quoting* 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 23.24[4] (3d ed. 2000)).

The property damage claims of the class representatives are typical of, if not identical in

nature to, those of the class members.  The determination of these damages depends on the same

factual predicate as to the manufacturer of the defective product, product identification, the

mechanism of damage occurring in class members' homes, the need for remediation, the scope

of remediation, the square footage costs of accomplishing the remediation, and alternative living

expenses during remediation.  Thus, the typicality requirement is readily met.

### 4.  <u>Adequacy of Representation – Rule 23(a)(4)</u>

Rule 23(a)(4) demands that the named class representatives fairly and adequately

represent the claims of the other class members.  There can be differences between the class

representatives and other class members so long as these differences do not "create conflicts

between the named plaintiffs' interests and the class members' interests." *Mullen,* 186 F.3d at

626.  A district court should evaluate whether the class representatives have a sufficient stake in

the outcome of the litigation, and whether the class representatives have interests antagonistic to

the unnamed class members.  *Id.* (*citing Jenkins v. Raymark Indus.,* 782 F.2d 468, 472 (5th Cir.

1971)).  In addition, the district court should inquire into the zeal and competence of the class

representatives' counsel and into the class representatives' willingness to take an active role in

the litigation and to protect the interests of absentees.  *Berger v. Compaq Computer Corp.,* 257

F.3d 475, 479 (5th Cir. 2001).

Under Fed. R. Civ. P. 23(g), a district court must appoint class counsel at the time the

class is certified, unless otherwise provided by statute.  The class counsel must fairly and

adequately represent the interests of the class, and the court must review the counsel's work in

investigating claims, experience in handling class action litigation, knowledge of the applicable

law, and the resources counsel will commit to representing the class.  *See* Rule 23(g)(1)(B),(C).

21

The class representatives have the same interest as class members in obtaining property damage relief from the Taishan Defendants.  They also all share the same interest in the enforcement of a class judgment and the collection of that judgment against the Taishan Defendants.  The class representatives have demonstrated their commitment to the litigation by subjecting their residences to screening inspections to establish product identification and the fact of corrosion damage.  Further, these class representatives have timely completed the court ordered Plaintiffs Fact Sheets.

The proposed class counsel are experienced in class action practice, and are well-respected, and competent lawyers.  This Court has already had the opportunity to work extensively with each of the proposed class counsel and their firms in proceedings related to the default judgment against Taishan and the evidentiary hearing and associated legal briefing relevant to this Court's Findings of Fact and Conclusions of Law as to the seven Intervenor Plaintiffs.  Indeed, this Court has previously determined that proposed class counsel are adequate for purposes of serving as class counsel with respect to the settlements that have been approved by the Court.  *See In re Chinese-Manufactured Drywall Products Liab. Litig.*, 2012 WL 92498, * 10-11 (E.D. La. Jan. 10, 2012).  Thus, the court should find that the proposed class representatives, (Eduardo and Carmen Amorin, Albert and Betsy Butzer, Jack and Anna McGinn, Thomas and Virginia Spencer, and Elliot and Angelina Everard), as well as the proposed class counsel (Russ Herman and Arnold Levin) are adequate.[14]

---

[14] It should be noted that various courts consider *ascertainability* to be a requirement under Rule 23.  Ascertainability pertains to the ability of the court based on record evidence to utilize objective criteria to determine who is a class member (and who is not).  The Fifth Circuit has referred to ascertainability as an "implied perquisite of Rule 23."  *National Security Fire and Casualty Company*, 501 F.3d 443, 445 (5th Cir. 2007); *see also DeBremaecker v. Short,* 433 F.2d

### C.  **Plaintiffs have Established All of the Requirements of Rule 23(b)(3)**

Rule 23(b)(3) requires that Plaintiffs establish that common questions identified in Rule 23(a)(3) predominate and that the class procedure is the superior method of litigating the claims.

Predominance is established where common answers to common questions are likely to "drive the resolution of the [instant] litigation." *See Dukes*, 131 S.Ct. at 2551 ("what matters to class certification is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceedings to generate common answers apt to drive the resolution of the litigation.") (citations omitted).  In *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (U.S. 2013), the Supreme Court explained that, "Rule 23(b)(3) ... does not require a plaintiff seeking class certification to prove that each "elemen[t] of [her] claim [is] susceptible to classwide proof." *Post*, at 1210.  What the rule does require is that common questions "predominate over any questions affecting only individual [class] members." Fed. Rule Civ. Proc. 23(b)(3) (emphasis added)." *Amgen*, 133 S. Ct. at 1196.  A district court should consider

---

733, 734 (5th Cir. 1970) ("It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."), *In re A.H. Robins Co., Inc.,* 880 F.2d 709, 728 (4th Cir. 1989); *Simer v. Rios,* 661 F.2d 655, 669 (7th Cir. 1981); 5 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.21[1], at 23-47 (Matthew Bender 3d ed. 1997) ("It is axiomatic that in order for a class action to be certified, a class must exist.").  Because this class action seeks certification of a class comprised of active litigants, all class members are presently before the Court.  The identification of these class members is easily verifiable by reference to the PSC's Omnibus Class Action Complaints or the complaints in intervention thereto.  *See Gross, et al. v. Knauf Gips, KG, et al.*, Case No. 09-6690 (E.D.La.); *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*, Civ. Action No. 10-361 (E.D.La); *Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-080 (E.D.La); *Haya, et al. v. Taishan Gypsum Corp. Ltd., et al.*, Civ. Action No. 11-1077 (E.D.La.); *Almeroth, et al. v. Taishan Gypsum Co., Ltd., et al.*, Civ. Action. 12-0498 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1672 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1395 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1673 (E.D.La.).

how the cases would proceed to trial, that is, whether any cases would require individual trials on particular issues.  *See Castano,* 84 F.3d at 744-45 (finding that certification was inappropriate where individual trials would be necessary to determine an element of the plaintiffs' fraud claims).

In order to satisfy Rule 23(b)(3)'s requirement that common questions of law and fact predominate, "the predominance test asks whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all the issues in the suit." NEWBERG ON CLASS ACTIONS § *see also Amchem*, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.")(*citing* 7AWright, Miller, & Kane 518-19).

Because the only claims at issue here are against default judgment defendants, and because the Court has already found sufficient facts to establish the fact of damage associated with these types of claims, all that is required is an assessment of damages hearing.  If the class is certified, the Court can make factual findings with respect to whether plaintiffs can recover against the Taishan Affiliates under alter-ego and piercing the corporate veil theories.  In addition, the court can establish class-wide damages pursuant to a Rule 55(b)(2)(B) hearing.

The Plaintiffs have demonstrated a methodology to calculate class-wide damages in compliance with *Monumental Life Insurance Co. v. National Life,* 365 F.3d 408, 419 (5th Cir. 2004) ("The policy variables are identifiable on a classwide basis and, when sorted, are capable of determining damages for individual policyowners; none of these variables is unique to particular plaintiffs.  The prevalence of variables common to the class makes damages computation 'virtually a mechanical task.'").

24

As the Eleventh Circuit noted in the *Klay v. Humana*:

> Plaintiffs need only come forward with plausible statistical or economic methodologies to demonstrate impact on a class-wide basis.  Particularly where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification.

382 F.3d at 1259-60 (internal brackets, quotations and footnotes omitted).[15]  Class-wide damages were previously presented in *Germano* and *Hernandez* and sufficed to allow the Court to make per square foot damage calculations for all affected plaintiffs.  *See* FOFCOL (awarding $86/square foot for Virginia); *see also* April 27, 2010 Findings of Fact and Conclusions of Law, Rec.Doc.# 2713 (awarding $81/square foot for Louisiana).  Such aggregate proof is sufficient to meet Plaintiffs' obligations.  *See In re Terazosin Hydrochloride*, 220 F.R.D. 672, 699 (S.D. Fla. 2004) ("Assuming the jury renders an aggregate judgment, allocation will become an intra-class matter accomplished pursuant to a court-approved plan of allocation, and such individual damages allocation issues are insufficient to defeat class certification."); *In re NASDAQ*, 169 F.R.D. at 525 ("Aggregate computation of class monetary relief is lawful and proper.").

Given that the Court has already found that the costs of remediation can be calculated on a square footage basis and the Court has already determined what other property damages are recoverable, class-wide damages can be established in an efficient manner without the need for a

---

[15]Courts routinely have used class-wide, formula-based techniques to calculate individual damages in various types of class actions.  *See, e.g.*, *Van Gemert v. Boeing Co.*, 553 F.2d 812 (2d Cir. 1977) (approving aggregate damages judgment), *aff'd*, 444 U.S. 472 (1980); *Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 40 (1st Cir. 2003) (approving of the use of objective data extracted from the defendant's computer system and analyzed through a "mechanical process" in a case involving charging customers for incoming cellular telephone calls.); *see also* 3 Newberg on Class Actions § 10:8.

trial.[16]   The Court can likewise determine the cost of remediation, through the submission of expert evidence[17] and from data gathered by Moss & Associates, for remediation costs generally. For purposes of calculating class-wide damages, data concerning class members currently before the Court (*i.e.*, data from BrownGreer PLC concerning the square footage of class members' homes) can be used to estimate the size of the class so as damages can be calculated on an aggregate basis.   Thus, Plaintiffs can establish a formulaic method to determine class-wide property damages as required by the Rule 23(b)(3) predominance requirement.  *Monumental,* 365 F.3d at 419.  Indeed, damages are simply calculated by using a mathematical formula similar to what the Court utilized in *Germano* and *Hernandez* (*i.e.*, price per square foot to remediate X number of square feet in class members' homes = damages).

The recent Supreme Court decision in *Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (U.S. 2013), wherein class certification was reversed based on a lack of predominance of common questions, does not bear on the determination of predominance in this case.  The *Comcast* opinion turns on the impropriety of the damages model that was used by the plaintiffs' expert (*i.e.* since plaintiffs' expert had utilized a damages model that included categories of damages that had been excluded by the district court).  In addition, a litigation class was being sought in *Comcast* and the district court had certified a class to determine both liability and damages.  In

---

[16] There will be a need during claims processing for each claimant to prove up basic facts (subject to appropriate parameters) to establish property damages: (1) product identification; (2) property ownership; and (3) square footage of owned home to recover on a claim.  Much of this evidence has already been produced and is in the possession of BrownGreer PLC.

[17] Ronald Wright, Plaintiffs' expert, a Civil Engineer who specializes in the assessment and repair and remediation for home construction has inspected many Chinese Drywall homes in Virginia and elsewhere, and has developed a methodology to estimate damages for the remediation of such homes and the replacement of damaged components including appliances, flooring, cabinetry and other items in all affected regions.

contrast, as a result of the Taishan Defendants default judgment, liability is admitted leaving only an assessment of damages for the class.   One of the advantages of this damages class is that causation is proven in light of the default judgment.   Thus, unlike the plaintiffs in *Comcast*, the class will not have to prove causation.   Further, in contrast to *Comcast*, Plaintiffs' damages theory applies directly to their liability claim and is capable of calculation on an aggregate basis as noted above.   Thus, the *Comcast* case has limited application on the facts of this case.   *See In re Deepwater Horizon*, 739 F.3d at 815 ("*Comcast* held that a district court errs by premising its Rule 23(b)(3) decision on a formula for classwide measurement of damages whenever the damages measured by that formula are incompatible with the class action's theory of liability.").

Thus, for the reasons set forth above, all of the requirements of Rule 23(b)(3) predominance are readily established.

**Superiority – Rule 23(b)(3)**

Under Rule 23(b)(3), a district court must evaluate four factors to determine whether the class action format is superior to other methods of adjudication:  the class members' interest in individually controlling their separate actions, the extent and nature of existing litigation by class members concerning the same claims, the desirability of concentrating the litigation in the particular forum, and the likely difficulties in class management.  Fed. R. Civ. P. 23; *Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 304 (5th Cir. 2009).[18]

---

[18] The Fifth Circuit in *Castano* advised that a district court's superiority analysis should include consideration of the negative impact upon a defendant of certification of a mass tort.  *Castano,* 84 F.3d at 746.  The court noted that class certification magnifies unmeritorious claims, increases plaintiffs' damage awards, and creates "insurmountable pressure" upon defendants to settle – all of which could be tantamount to "judicial blackmail."  *Id.*  As noted above, this Court has recognized that the types of claims represented herein are meritorious.  FOFCOL at 17-59.  In addition, Taishan's contemptuous refusal to appear at the judgment debtor proceedings, should

Class proceedings are a superior method to adjudicate the damage assessment remaining in this case.   This case presents a factual and procedural status that makes certification appropriate as a result of the entry of a default judgment on liability and the fact this court has already made extensive findings that are applicable to a cross-section of class members.  The narrow scope of the factual determinations left to be made –the amount of damages for the class—as well as whether plaintiffs may proceed against Taishan Affiliates under alter ego and piercing the corporate veil theories – and the exhaustive record of the relevant factual evidence already reviewed by and ruled on by this Court greatly enhances the manageability of this matter. In addition, the Court has already determined that these claims are meritorious.  FOFCOL at 17-59.  A class proceeding will facilitate an expeditious and streamlined resolution for all impacted residents.  Given the extreme costs involved in litigating this matter, class members (as a whole) have no ability to individually prosecute these matters.  For all the reasons stated above, as well as the procedural advantages of avoiding duplicate hearings on identical issues, class adjudication is the superior method to resolve the remaining issues in this dispute.  Moreover, in light of the JPML's Order transferring these cases and consolidating them before this Court pursuant to 28 U.S.C. §1407, "[t]his factor should…be of little or no significance in resolving the superiority issue."  NEWBERG ON CLASS ACTIONS, §4:31.  The JPML previously considered, pursuant to 28 U.S.C. §1407, the desirability of centralizing the Chinese drywall litigation in this particular forum.

IV.   **CONCLUSION**

Plaintiffs have established that the proposed class meets the Rule 23(a) requirements of

---

serve to alleviate concern that this particular defendant is experiencing pressure of any kind to resolve these claims, due to so-called "judicial blackmail" or otherwise.

numerosity, commonality, typicality and adequacy, as well as the Rule 23(b)(3) requirements.

Plaintiffs respectfully request that the class described herein be certified.

Dated: July 22, 2014                           Respectfully submitted,

                                               /s/ Leonard A. Davis
                                               Russ M. Herman, Esquire (LA Bar No. 6819)
                                               Leonard A. Davis, Esquire (LA Bar No. 14190)
                                               Stephen J. Herman, Esquire (LA Bar No. 23129)
                                               HERMAN, HERMAN & KATZ, LLC
                                               820 O'Keefe Avenue
                                               New Orleans, Louisiana 70113
                                               Phone: (504) 581-4892
                                               Fax: (504) 561-6024
                                               LDavis@hhklawfirm.com
                                               *Plaintiffs' Liaison Counsel*
                                               *MDL 2047*

                                               Arnold Levin (on the brief)
                                               Fred S. Longer (on the brief)
                                               Sandra L. Duggan (on the brief)
                                               Matthew C. Gaughan (on the brief)
                                               Levin, Fishbein, Sedran & Berman
                                               510 Walnut Street
                                               Suite 500
                                               Philadelphia, PA 19106
                                               Phone: (215) 592-1500
                                               Fax: (215) 592-4663
                                               ALevin@lfsblaw.com
                                               *Plaintiffs' Lead Counsel MDL 2047*

## PROPOSED OF COUNSEL TO CLASS,
## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Peter Prieto
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com
Bruce William Steckler
The Steckler Law Firm
12700 Park Central Drive, Ste 1900
Dallas, TX 75251
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Ervin A. Gonzalez
Ervin A. Gonzalez
Colson Hicks Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 29-2931
hlambert@thelambertfirm.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax:(239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax:(228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr., Esquire
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W
Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Anthony D. Irpino
IRPINO LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 22nd day of July, 2014.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com

*Plaintiffs' Liaison Counsel*
*MDL 2047*

33