### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  CHINESE-MANUFACTURED | * | MDL 2047 |
| DRYWALL PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to:  ALL CASES | * | |
| | * | MAGISTRATE JUDGE WILKINSON |
| | * | |

---

### DEFENDANT, SIXTY FIFTH AND ONE'S, MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ENFORCE INJUNCTION REGARDING STATE COURT CLAIMS BROUGHT BY PUTATIVE CLASS REPRESENTATIVE, RALPH MANGIARELLI, JR.

---

Defendant, Sixty Fifth and One, LLC ("Sixty Fifth"), by and through undersigned counsel, hereby submits this Memorandum of Law in Support of Motion to Enforce Injunction Regarding State Court Claims Brought by Putative Class Representative, Ralph Mangiarelli, Jr., and states as follows:

### BACKGROUND

1.  This Motion arises out of Chinese drywall claims being pursued against Sixty Fifth and others in a Florida state court action styled: *Hamburg v. Sixty-Fifth and One, et al.,* Broward County, Florida, Case No.: 10-11665 11 (hereinafter "the Hamburg Action").[1]

2.  The Hamburg Action is a putative class action lawsuit in which condominium owners seek to recover "loss of market value" damages related to a condominium Sixty Fifth developed in Fort Lauderdale, Florida.  Specifically, the Hamburg Action seeks to certify the following class:

---

[1]  On June 12, 2014, Defendant, Banner Supply Company Pompano LLC, filed a similar motion as to the Banner Settlement Agreement (Rec. Doc. 17744), which this Court granted on July 17, 2014 (*see* Rec. Doc. 17867).

> All owners of individual condominium units in the building which is located at 2401 NE. 65th St., Fort Lauderdale, FL 33308, which is part of the Lauderdale One condominium development, who have suffered loss of market value due to the discovery of defective Chinese drywall in the sister building, located at 2421 NE. 65th St., Fort Lauderdale, FL.   Defendants, their officers, directors, subsidiaries, or any person or other entity related to, affiliated with or employed by Defendants are excluded from the Class Definition.

(Third Amd. Compl., ¶ 11, attached hereto as Exhibit "A").  As plainly evidenced by the class definition, the plaintiffs' claims arise out of the discovery of Chinese drywall in their condominium complex, though their individual condominium units do not necessarily contain Chinese drywall.

3.  Since 2009, this Court has dealt extensively with Chinese drywall claims.  Ultimately, after years of litigation, this Court approved several class action settlements in its February 7, 2013 Order and Judgment [Rec. Doc. 16570] ("Order and Judgment").   In the Order and Judgment, this Court certified the Global Settlement Class, which is defined as follows:

> All persons or entities, along with their heirs, representatives, attorneys, executors, administrators, executives, subsequent purchasers, residents, guests, tenants, lenders, successors and assigns, with claims, known or unknown, arising from or related to actual or alleged Chinese Drywall purchased, imported, supplied, distributed, marketed, installed, used, sold or in any way alleged to be within the legal responsibility of any Participating Defendant.

(Order and Judgment, ¶ 62).

4.   Sixty Fifth was a participating defendant in the Global Settlement Agreement (*see* Rec. Doc. 15695-3, p. 17).

5.  Participating Defendants such as Sixty Fifth are beneficiaries of the Global Settlement's Release provisions.  The Global Settlement release applicable to Class Members' claims is an expansive, all-encompassing release, approximately 3½ pages in length, which covers every conceivable claim that could arise from the use of Chinese drywall.  (Rec. Doc. 15695-2, pp. 10-

2

13).   Importantly, the release specifically includes any "diminution of property value" and "stigma" claims a Class Member might have.  (Rec. Doc. 15695-2, p. 11).

6.   Participating Defendants such as Sixty Fifth also are beneficiaries of the bar order provisions included in the Global Settlement Agreement and Order and Judgment.  Specifically, this Court's Order and Judgment provides:

> Any and all Global Settlement Class Members, including, but not limited to, those who have not properly opted out of the Global Settlement Class, are enjoined and forever barred from maintaining, continuing, prosecuting, and/or commencing the Litigation, CDW- Related Actions, Related Claims, or any action, pending or future, against the Settling Parties (but excluding any Reserved Claims) that arises from, concerns, or otherwise relates, directly or indirectly, to Chinese Drywall.

(Order and Judgment, ¶ 70).

7.   Despite the clear release of claims included in the Global Settlement, and the notice provided to Global Settlement Class Members, none of the putative class plaintiffs in the Hamburg Action opted out of the Global Settlement Agreement.[2]

## LEGAL ARGUMENT AND ANALYSIS

It is an elementary principle of class action jurisprudence that a judgment certifying a class under Federal Rule of Civil Procedure 23 governs and binds all individuals that fall within the class definition that do not opt out.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 592 (1997).  Therefore, in these proceedings, individuals that fall within the Global Settlement Class that did not "opt out" are bound by the Court's Order and Judgment which enjoins all further litigation against Participating Defendants related to Chinese Drywall.

---

[2]  One Lauderdale One homeowner, Richard Hamburg, did opt out of the settlement, but his claims are not being pursued as part of the class action claims asserted in the Hamburg Action.  Therefore, Sixty Fifth's Motion does not seek to enjoin Mr. Hamburg's claims, individually; only the class action claims asserted.

Louisiana law governs the Court's interpretation of the Global Settlement Agreement. (*See* Order and Judgment, p. 21, ¶ 9). Under Louisiana law, the rules of construction applicable to settlement agreements are the same as those applicable to contracts. *Trahan v. Coca Cola Bottling Co. United, Inc.*, 894 So. 2d 1096, 1106 (La. 2005); La. Civ. Code Ann. art. 3071. Louisiana law requires courts to enforce contracts as written. *Hebert v. Ins. Ctr., Inc.*, 97-298 (La.App. 3 Cir. 1/7/98); 706 So. 2d 1007, 1011, *writ denied* 716 So. 2d 888 (La. 3/27/98) (internal citation omitted). When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. Louisiana Civil Code art. 2046. "Whether the words of a contract are 'clear and explicit' or ambiguous is a question of law." *See Hebert v. Ins. Ctr., Inc.*, 706 So. 2d at 1011. Additionally, if a contract is unambiguous, then interpreting it is a legal issue for the court. *Dore Energy Corp. v. Prospective Inv. & Trading Co., Ltd.*, 570 F.3d 219, 225 (5th Cir. 2009).

In this matter, the Global Settlement Class definition is clear, explicit, unambiguous, and plainly encompasses the putative class claims sought to be established in the Hamburg Action. Despite the clear Global Settlement language, however, plaintiffs in the Hamburg Action have argued that their claims fall outside the settlement because their condominiums never contained Chinese drywall. The broad Global Settlement Class definition and release, however, make no such distinction. Instead, the class definition was purposefully drafted, and approved by this Court, as an all-encompassing, nationwide class to collect any person or entity that might have a claim related to Chinese drywall. Similarly, the Global Settlement release is purposefully broad, such that the settlement, once approved, would effectuate a full and final resolution of all claims against Participating Defendants relating to Chinese drywall. Therefore, it is of no moment that the "loss of market value" claims pursued in the Hamburg Action are asserted by individuals

whose properties never contained Chinese drywall.  The Global Settlement Agreement explicitly governs and releases these claims, and the bar order enjoins such claims from being pursued.  To read the settlement in any other fashion would destroy the protections and finality that Sixty Fifth negotiated and paid for when it participated in the Global Settlement.

In summary, the claims being pursued in the Hamburg Action have already been litigated, settled, and released as part of the Global Settlement.  Because the putative class plaintiffs in the Hamburg Action did not opt out, they are bound by the Court's Order and Judgment certifying the class and approving the settlement's terms.  Sixty Fifth, as a Global Settlement Participating Defendant, is entitled to the settlement's protections, which include an injunction precluding the Hamburg Action from being prosecuted.

## **CONCLUSION**

For the foregoing reasons, Sixty Fifth requests this Court to enter an order confirming that the Hamburg Action is enjoined by its Order and Judgment approving the Global Settlement Agreement, or for such alternative relief as the Court deems just and proper.

Date: July 25, 2014.                      Respectfully submitted,


    /s/ Jeffrey M. Paskert
    Jeffrey M. Paskert
    Florida Bar No. 846041
    Email:  jpaskert@mpdlegal.com
    Secondary:  jegusquiza@mpdlegal.com
    Ryan E. Baya
    Florida Bar No. 0052610
    Email:  rbaya@mpdlegal.com
    Secondary:  dhutchins@mpdlegal.com
    MILLS PASKERT DIVERS
    100 N. Tampa St., Ste. 3700
    Tampa, FL 33602
    Telephone:  (813) 229-3500
    *Attorneys for Sixty-Fifth and One LLC*

5

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, and to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana by using CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 25th day of July, 2014.

By: /s/ Jeffrey M. Paskert

## IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
## IN AND FOR BROWARD COUNTY, FLORIDA

RICHARD A. HAMBURG, individually; AND RALPH MANGIARELLI JR; individually, and on behalf of all others similarly situated,

**CASE NO.:10-11665 11**

Florida Bar No.: 998435

Plaintiffs,

vs.

SIXTY FIFTH AND ONE LLC, a Florida Limited Liability Company; BJ&K CONDO CONSTRUCTION, INC, a Florida Corporation; CACERES DRYWALL CORP, a Florida Corporation; BANNER SUPPLY COMPANY POMPANO LLC, a Florida Limited Liability Company; and L&W SUPPLY CORPORATION d/b/a SEACOAST SUPPLY, a Foreign Corporation;

Defendants.

---

## PLAINTIFFS' THIRD AMENDED CLASS ACTION

## COMPLAINT AND DEMAND FOR JURY TRIAL

Come now the Plaintiffs, RICHARD A. HAMBURG, individually, and RALPH MANGIARELLI JR, individually, and on behalf of all others similar situated, by and through undersigned counsel and sues the Defendants, SIXTY FIFTH AND ONE LLC, BJ&K CONDO CONSTRUCTION, INC, CACERES DRYWALL CORP, BANNER SUPPLY COMPANY POMPANO LLC, and L&W SUPPLY CORPORATION d/b/a SEACOAST SUPPLY and allege as follows:

**EXHIBIT**

**A**

1

## FACTS COMMON TO ALL COUNTS

(Jurisdiction and Parties)

1. This is a class action for damages in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00) exclusive of interest and costs.

2. The Plaintiff, Richard A. Hamburg, is and at all relevant times has been the owner of a unit located within the Lauderdale One Condominium complex, specifically, the unit located at 2421 NE 65th Street Unit 217, Fort Lauderdale, FL 33308, and is otherwise sui juris.

3. The Plaintiff, Ralph Mangiarelli Jr, is and at all relevant times has been the owner of a unit located in the Lauderdale One Condominium complex, specifically, the unit located at 2401 NE 65th Street Unit 306, Fort Lauderdale, FL 33308, and is otherwise sui juris.

4. The Defendant SIXTY FIFTH AND ONE LLC (hereinafter "Developer") was at all times material hereto, a Florida Limited Liability Company.   At all times material hereto, the Defendant, Developer, acted in the capacity of a developer of real property.   As such, Developer was in the business of buying real property, retaining the services of various companies and/or individuals in order to construct condominium buildings on this real property, constructing condominium buildings, and then entering into a contract for the sale of these condominium units to consumers.   All of these activities were performed in the state of Florida and concerned real property that was located in the state of Florida.

5. The Defendant BJ&K CONDO CONSTRUCTION, INC (hereinafter "General Contractor") was at all times material hereto, a Florida for profit corporation.   At all times material hereto, General Contractor was retained by Developer and acted in the capacity of a general contractor.   As such, this general contractor was in the business of constructing a condominium building, retaining the services of various sub contractors in order to complete

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

the construction of a condominium building, and ensuring that the building was built reasonably, was built in accordance with the plans, was built with reasonable and non-defective building materials, was built in accordance with the applicable building codes, and pursuant to the contract.   All of these activities were performed in the state of Florida and concerned real property that was located in the state of Florida.

6.      The Defendant CACERES DRYWALL CORP (hereinafter "Installer"), was at all times material hereto, a Florida for profit corporation.   At all times material hereto, Installer acted in the capacity as a sub-contractor that was retained by the general contractor to install the drywall for this residence.   Basically, this installer sub-contractor was to provide drywall that was reasonable and non-defective and to install same in a workmanlike manner.   All of these activities were performed in the state of Florida and concerned real property that was located in the state of Florida.

7.      The Defendant BANNER SUPPLY COMPANY POMPANO LLC (hereinafter "Supplier 1"), was at all times material hereto, a Florida for profit corporation.   At all times material hereto, "Supplier 1" acted in the capacity of the seller of the drywall that was eventually installed in the residences that are the subject of this lawsuit.   As the distributer of the drywall, this entity was in the business of distributing, delivering, supplying, inspecting, marketing, and selling drywall for the sale to the eventual consumer of this product, the general public.   All of these activities were performed in the state of Florida.

8.      The Defendant L&W SUPPLY CORPORATION d/b/a SEACOAST SUPPLY (hereinafter "Supplier 2"), was at all times material hereto, a Delaware For profit corporation. At all times material hereto, Supplier 2 acted in the capacity of the distributor of the drywall that was eventually installed in the residences that are the subject of this lawsuit.   As the

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

distributer of the drywall, this entity was in the business of distributing, delivering, supplying, inspecting, marketing, and selling drywall for the sale to the eventual consumer of this product, the general public.   All of these activities were performed in the state of Florida.

9.      The Plaintiffs purchased units in the Lauderdale One Condominium.   As part of the transaction which resulted in the purchase of these condominium units by Plaintiffs, Plaintiffs entered into a written contract with the Developer (a sample purchase and sale agreement is attached as **Exhibit 1**) and this contract contained various warranties, both express and implied.

10.      After the Plaintiffs purchased their unit, the Plaintiffs discovered that Building A located at 2421 NE 65th Street, Ft. Lauderdale, Florida 33308, contained a latent defect. Basically, the drywall that was used to construct a portion of building A was not fit for its intended use, was unreasonably dangerous, did not conform to representations made by the defendants that the drywall was manufactured and designed reasonably and fee of defects, and was defective.

11.      This latent defect has now caused damage to the Plaintiff, Richard A. Hamburg. Mr. Hamburg has suffered the following damage:

    a.   Damages in the form of monetary damages for the loss of use and enjoyment of the unit; additional living expenses while forced to live away from the unit; and loss of market value of the unit.

12.      This latent defect has now caused damage to the Plaintiff, Ralph Mangiarelli, Jr. Mr. Mangiarelli, Jr., has suffered the following damage:

    b.   Damages in the form of monetary damages for the loss of use and enjoyment of the unit; and loss of market value of the unit

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

13.    All of the Defendants in this matter have been given notice pursuant to Fla. Stat. '558 and this action is now timely.

## CLASS DEFINITION ALLEGATIONS

14.    Plaintiff, RALPH MANGIARELLI JR, brings this action pursuant to Rule 1.220 of the Florida Rules of Civil Procedure and Florida Statutes Ch. 86 as a class representative indicated herein below, individually, and on behalf of all persons or entities similarly situated, more specifically defined as:

> "All owners of individual condominium units in the building which is located at 2401 NE 65th Street, Fort Lauderdale, FL 33308, which is part of the Lauderdale One condominium development, who have suffered loss of market value due to the discovery of defective Chinese drywall in the sister building, located at 2421 NE 65th Street, Ft. Lauderdale, Florida. Defendants, their officers, directors, subsidiaries, or any person or other entity related to, affiliated with or employed by Defendants are excluded from the Class Definition."

## NUMEROUSITY

15.    The Class is so numerous that the individual joinder of all its members in this, or any action, is impracticable.   The number of Class members is approximately one half of the unit owners located within the Lauderdale One condominium development that has approximately 174 total residential units in two six-story buildings.   Therefore, the Class is sufficiently numerous that the joinder of all members of the Class in a single action is impracticable.

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

## COMMONALITY

16.     There are numerous common questions of law and fact that predominate over any questions affecting only individual members of the Class.   The condominium units in Lauderdale One were built by the same Developer, General Contractor and Installer, and were supplied by the same two distributers.   Among these questions of law and fact common to the class are:

   a.     Whether Defendants built and installed condominium units and the common areas with defective drywall;

   b.     Whether Defendants are liable for the loss of market value;

   c.     Whether Defendants breached express warranties;

   d.     Whether Defendants breached implied warranties;

   e.     Whether Plaintiffs are entitled to compensatory, and other damages as a result of Defendants acts and/or omissions;

   f.     Whether Defendants are guilty of negligence.

## TYPICALITY

17.     The legal claims of Plaintiffs are typical of the legal claims of other members of the class.   Plaintiffs have the same legal interests as other members of the Class.   Plaintiffs' claims are typical of the claims of the Class and all such claims arise out of the wrongful course of conduct engaged in by Defendant.   Plaintiffs and each class member have sustained or will sustain the same type of economic damage.   Thus, the legal remedies available to Plaintiffs and the Class are the same for the wrongful conduct of the Defendants.

## ADEQUACY OF REPRESENTATION

18.     Plaintiffs are adequate representatives of the Class because they are members of the

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

Class and their interests do not conflict with the interests of the members of the Class they seek to represent.  Plaintiffs are represented by experienced and able counsel who has litigated numerous class actions, and Plaintiffs' counsel intends to prosecute this action vigorously for the benefit of the entire Class. Plaintiffs and their counsel can fairly and adequately protect the interests of the members of the Class.

## RULE 1.220(b)(1) REQUIREMENTS

19.     Certification is appropriate under Rule 1.220(b)(1) because the first four elements of Rule 1.220(a) are satisfied; the class has numerosity, commonality, typicality and the representative parties will fairly and adequately protect the interests of the class.

20.     Further, the prosecution of separate claims or defenses by or against members would create a risk of:

     a.   inconsistent or varying adjudications concerning individual members of the class which would establish incompatible standards of conduct for the party opposing the class; and

     b.   adjudications concerning individual members of the class which would, as a practical matter, be dispositive of the interest of other members of the class who are not parties to the adjudications or substantially impair or impede the ability of other members of the class who are not parties to the adjudications to protect their interests.

21.     More specifically, the rights of Plaintiffs and class members to be entitled to damages for the damage caused by Defendants' defective drywall are overlapping.

22.     Under these circumstances, it is not possible for the rights of the class members to be determined individually without disposing of or substantially affecting the rights of other

class members.

## RULE 1.220(b)(3) REQUIREMENTS

23.     The common questions set forth above predominate over individual issues and a class action is superior to other methods of dispute resolution.   The class members have an interest in class adjudication rather than individual adjudication because of the overlapping rights.   It is highly desirable to concentrate the resolution of these claims in this single forum because it would be difficult and highly unlikely that the affected class members would protect their rights on their own without this class action case.   Management of the class will be efficient and far superior to the management of individual lawsuits.   A class action is the superior method of handling this case.

## EQUITABLE TOLLING OF THE APPLICABLE STATUTE OF LIMITATIONS

24.     The running of the statute of limitation has been tolled by reason of Defendants' concealment.   Defendants through failing to disclose a known defect to Plaintiffs, and misrepresenting the property as safe for its intended use, actively concealed from Plaintiffs the true risks association with their unit containing defective drywall.

25.     As a result of Defendants' actions, F.S. §95.11(3)(C) applies since the Plaintiffs could not reasonably know or have learned through reasonable diligence, of the defects of the drywall within their unit, and that plaintiffs had been exposed to the risks alleged herein, and that those risks were a direct and proximate results of defendant's acts and omissions.

26.     Furthermore, Defendants are estopped from relying on any statute of limitations because of their concealment of the defective nature of the drywall used in the property. Defendants were under a duty to disclose the true character, quality, and nature of the property and the defective drywall used because this was nonpublic information over which

Defendant's had, and continues to have, exclusive control, and because Defendants knew that this information was not available to Plaintiffs.  In addition, Defendants are estopped from relying on any statute of limitations because of their concealment of these facts.

27.    Plaintiffs had no knowledge that the defendant's were engaged in the wrongdoing alleged herein.  Because of the wrongdoing by the Defendants, plaintiffs could not have reasonably discovered the wrongdoing at any time.

**I.     VARIOUS COUNTS AGAINST DEVELOPER, SIXTY FIFTH AND ONE LLC**

**A.     STRICT LIABILITY AGAINST DEVELOPER**

28.    Plaintiffs adopt and restate paragraphs 1 through 27 as if fully set forth herein.

29.    At all times material hereto, Developer was in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling units within a condominium development for sale to the general public.

30.    The drywall, including the defective drywall installed in one of the two buildings located within the condominium complex known as Lauderdale One (specifically the building located at 2421 NE 65th Street, Ft. Lauderdale, Florida) was placed by the Developer in the stream of commerce.

31.    Developer knew that the subject drywall would be used without inspection for defects by consumers.

32.    Developer intended that the drywall reach the ultimate consumer, such as Plaintiffs, and it was indeed installed in the building located at 2421 NE 65th Street, Ft. Lauderdale, Florida.

33.    When installed in the building, the drywall was in substantially the same condition as it was when Developer sold, and/or delivered it.

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

34.     At all times material hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Developer, and in accordance with Developer's directions and instructions.

35.     The subject drywall was not misused or altered by any third parties.

36.     The drywall supplied by Developer was defectively manufactured, designed, inspected, tested, marketed, distributed and/or sold.

37.     The design defect was in designing a mixture for drywall that caused the finished product to be made with an abnormal elemental makeup that is not in accordance with industry norms.   This abnormal elemental makeup causes the drywall to be defective, causes it not to be unfit for its intended purpose, causes it to damage other property, smell abnormally, and causes an environment within the unit that causes abnormal symptoms.

38.     The manufacturing defect was in manufacturing drywall with a mixture that caused the finished product to be made with an abnormal elemental makeup that is not in accordance with industry norms.   This abnormal elemental makeup causes the drywall to be defective, causes it not to be unfit for its intended purpose, causes it to damage other property, smell abnormally, and causes an environment within the unit that causes abnormal symptoms.

39.     The drywall was also defective because it was sold, installed, delivered, supplied, and /or distributed in the defective condition described above.

40.     Developer's defective distributing and/or selling of the drywall in this condition rendered it unsafe and unreasonably dangerous for its intended use.

41.     The drywall is also defective and unreasonably dangerous because Developer failed to adequately warn and instruct the Plaintiffs of the defective design or that the product was defectively manufactured.

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

42.     Plaintiffs were unaware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Plaintiff, acting as a reasonably prudent person/people discover that the drywall supplied, installed, and/or distributed by the Developer, was defective, as set forth above, or perceive its danger.

43.     The drywall supplied, installed, and/or distributed by Developer was much more dangerous and harmful than expected by the average consumer and buy Plaintiffs.

44.     The benefit, if any, of the drywall supplied, installed, distributed by Developer to the Plaintiffs was greatly outweighed by the risk of harm and danger that the drywall created.

45.     The defects in the drywall as outlined above, as well as Developer failing to warn of this defect, rendered the drywall unreasonably dangerous and were the direct and proximate cause of damages to the Plaintiffs.

46.     Defendant had reasonable and adequate notice of this claim by the Plaintiffs and failed to cure.

47.     This defective drywall has now caused various damages to the Plaintiffs.

48.     This latent defect has now caused damage to the Plaintiff, Richard A. Hamburg. Mr. Hamburg has suffered the following damage:

    a.     Damages in the form of monetary damages for the loss of use and enjoyment of the unit; additional living expenses while forced to live away from the unit; and loss of market value of the unit.

49.     This latent defect has now caused damage to the Plaintiff, Ralph Mangiarelli, Jr. Mr. Mangiarelli, Jr., has suffered the following damages:

    b.     Damages in the form of monetary damages for the loss of use and enjoyment of the unit; and loss of market value of the unit.

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

WHEREFORE, Plaintiffs demand:

      a.      compensatory damages;

      b.      Pre- and Post-Judgment interest;

      c.      an award of taxable costs; and

      d.      any and all such relief as this Court deems just and proper.

### B.    NEGLIGENCE OF DEVELOPER

50.    Plaintiffs adopt and restate paragraphs 1 through 27 as if fully set forth herein.

51.    At all times material hereto, Defendant owed plaintiffs a duty of reasonable care.  Reasonable care being defined as that degree of care which a reasonably careful person would use under like circumstances.  Depending on the circumstances, reasonable care could mean doing something that a reasonably careful person would do or not doing something that a reasonably careful person would not do.

52.    Defendant breached this duty of reasonable care when they failed to reasonably inspect and/or warn of a product that is "inherently dangerous" and/or Defendant breached its duty of reasonable care when it installed defective Chinese drywall, despite the fact that the Defendant knew, or should have known, of the defective nature of this product, i.e. the smell and/or the abnormal elemental makeup of this product.  Further, Defendant breached its duty of reasonable care when it failed to further investigate and test drywall that the defendant knew or should have known had an abnormal smell and that had for the very first time been imported from a foreign country, in this case China, and a product that had no proven track record here in the United States, and which was causing, on some occasions, physical symptoms, i.e. headaches, burning eyes, respiratory problems, sore throat, etc.

53.    Defendant had reasonable and adequate notice of this claim by the Plaintiffs and

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

failed to cure.

54.     As a result of this breach of the standard of care, the Plaintiffs have sustained damage.

55.     This latent defect has now caused damage to the Plaintiff, Richard A. Hamburg. Mr. Hamburg has suffered the following damage:

    a.     Damages in the form of monetary damages for the loss of use and enjoyment of the unit; additional living expenses while forced to live away from the unit; and loss of market value of the unit.

56.     This latent defect has now caused damage to the Plaintiff, Ralph Mangiarelli, Jr. Mr. Mangiarelli, Jr., has suffered the following damages

    b.     Damages in the form of monetary damages for the loss of use and enjoyment of the unit; and loss of market value of the unit.

WHEREFORE, Plaintiffs demand:

    a.     compensatory damages;

    b.     Pre- and Post-Judgment interest;

    c.     an award of taxable costs; and

    d.     any and all such relief as this Court deems just and proper.

## C.     BREACH OF STATUTORY IMPLIED WARRANTY AGAINST DEVELOPER

57.     Plaintiffs adopt and restate paragraphs 1 through 27 as if fully set forth herein

58.     Developer, under F.S. §718.203 and common law, impliedly warranted to Plaintiffs that each building within the condominium complex known as Lauderdale One was reasonably fit for its intended purpose and that each unit within these buildings was merchantable, and that the buildings and improvements of the Condominium were constructed in accordance with the

plans and specifications filed as a matter of public record.

59.      In constructing the buildings within the condominium complex known as Lauderdale One, the Developer breached the implied warranties set forth under F.S. §718.203 by failing to comply with the requirements of the Florida Building Code, and by constructing the buildings, improvements and individual units with drywall that was not fit for its intended use as living quarters, was unreasonably dangerous, did not conform to representations made by the defendants that the drywall was manufactured and designed reasonably and free of defects, and was defective.

60.      The Developer also failed to construct in accordance with proper and approved construction plans and specifications, and by not constructing the Condominium in accordance with good design, engineering, supplies, materials, or construction practices.

61.      The Developer constructed and developed the buildings within the condominium complex known as Lauderdale One with the defects and deficiencies set forth herein.

62.      The existence or cause of the defects and deficiencies set forth herein and damages caused thereby are not the type that would be readily recognizable by persons who lack special knowledge or training, or they are hidden by building components or finishes, and they are latent defects and deficiencies to the Plaintiffs who, in the exercise of reasonable diligence, did not discover the existence or cause of the defects and deficiencies until after their purchase and occupancy of the units in the Condominium.

63.      As a direct and proximate result of the Developer's actions, the Plaintiffs have been damaged.

64.      This latent defect has now caused damage to the Plaintiff, Richard A. Hamburg. Mr. Hamburg has suffered the following damages:

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

    a.   Damages in the form of monetary damages for the loss of use and enjoyment of the unit; additional living expenses while forced to live away from the unit; and loss of market value of the unit.

65.    This latent defect has now caused damage to the Plaintiff, Ralph Mangiarelli, Jr. Mr. Mangiarelli, Jr., has suffered the following damages:

    b.   Damages in the form of monetary damages for the loss of use and enjoyment of the unit; and loss of market value of the unit.

WHEREFORE, Plaintiffs demand:

    a.   compensatory damages;

    b.   Pre- and Post-Judgment interest;

    c.   an award of taxable costs; and

    d.   any and all such relief as this Court deems just and proper.

### D.      BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AGAINST DEVELOPER

66.    Plaintiffs adopt and restate paragraphs 1 through 27 as if fully set forth herein.

67.    At all times material hereto, Developer was in privity with the Plaintiffs.

68.    At the time Developer sold, installed, delivered, supplied, and /or distributed the drywall for use in the unit, Developer knew or it was reasonably foreseeable that the drywall would be installed in the unit for use as a building material, and impliedly warranted the product to be fit for that use.

69.    The drywall the Defendant, Developer, placed into the stream of commerce was defective and was expected to, and did, reach users, handlers, and persons coming into contact with said product without substantial change in the condition in which it was sold.

70.    The drywall was defective because it was not fit for the uses intended or reasonably

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

foreseeable by Defendant, Developer; specifically this drywall was defective because it was created with a mixture that caused the finished product to be made with an abnormal elemental makeup that is not in accordance with industry norms.  This abnormal elemental makeup causes the drywall to damage other property, smell abnormally, and causes an environment within the unit that causes abnormal symptoms.

71.     Developer breached the implied warranty of merchantability because the drywall was not fit to be installed in the unit as a building material due to the defects set forth herein.

72.     Defendant had reasonable and adequate notice of this claim by the Plaintiffs and failed to cure.

73.     As a direct and proximate result of the Defendant, Developer=s, actions the Plaintiffs have been damaged.

74.     This latent defect has now caused damage to the Plaintiff, Richard A. Hamburg. Mr. Hamburg has suffered the following damage:

    a.   Damages in the form of monetary damages for the loss of use and enjoyment of the unit; additional living expenses while forced to live away from the unit; and loss of market value of the unit.

75.     This latent defect has now caused damage to the Plaintiff, Ralph Mangiarelli, Jr. Mr. Mangiarelli, Jr., has suffered the following damages:

    b.   Damages in the form of monetary damages for the loss of use and enjoyment of the unit; and loss of market value of the unit.

WHEREFORE, Plaintiffs demand:

    a.     compensatory damages;

    b.     Pre- and Post-Judgment interest;

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

  c.  an award of taxable costs; and

  d.  any and all such relief as this Court deems just and proper.

### E. BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE AGAINST DEVELOPER

76. Plaintiffs adopt and restate paragraphs 1 through 27 as if fully set forth herein.

77. At all times material hereto, Defendant, Developer, was in privity with the Plaintiffs.

78. Defendant, Developer, placed the drywall in question into the stream of commerce in a defective condition and this drywall was expected to, and did, reach users, handlers, and persons coming into contact with said product without substantial change in the condition in which it was sold.

79. The drywall was defective because it was not fit for the specific purpose of being installed into a completed unit as a building material, for which plaintiff bought the product in reliance on the judgment of the Defendant.

80. Developer breached the implied warranty of fitness for a particular purpose because the drywall was not fit to be installed in a completed unit as a building material due to the defects set forth herein.

81. Defendant had reasonable and adequate notice of this claim by the Plaintiffs and failed to cure.

82. As a direct and proximate result of the Defendant, Developer's, actions the Plaintiffs have been damaged.

83. This latent defect has now caused damage to the Plaintiff, Richard A. Hamburg. Mr. Hamburg has suffered the following damage.

  a. Damages in the form of monetary damages for the loss of use and enjoyment of the

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

unit; additional living expenses while forced to live away from the unit; and loss of market value of the unit.

84.   This latent defect has now caused damage to the Plaintiff, Ralph Mangiarelli, Jr. Mr. Mangiarelli, Jr., has suffered the following damages:

    b.   Damages in the form of monetary damages for the loss of use and enjoyment of the unit; and loss of market value of the unit.

WHEREFORE, Plaintiffs demand:

    a.   compensatory damages;

    b.   Pre- and Post-Judgment interest;

    c.   an award of taxable costs; and

    d.   any and all such relief as this Court deems just and proper.

## F.   BREACH OF IMPLIED WARRANTY OF HABITABILITY AGAINST DEVELOPER

85.   Plaintiffs adopt and restate paragraphs 1 through 27 as if fully set forth herein.

86.   At all times material hereto Developer was in privity with the Plaintiffs.

87.   The drywall that the Defendant, Developer, installed in the unit was placed into the stream of commerce by Defendant in a defective condition and was expected to, and did, reach users, handlers, and persons coming into contact with said product without substantial change in the condition in which it was sold.

88.   Plaintiffs bought the product in reliance on the judgment of Defendant.

89.   The Defendant breached the implied warranty of habitability because the defective drywall caused the residence not to meet ordinary, normal standards reasonably to be expected of living quarters of comparable kind and quality due to the defects set forth herein.

90.   Defendant had reasonable and adequate notice of this claim by the Plaintiffs and

failed to cure.

91.     As a direct and proximate result of the Defendant, Developer=s, actions the Plaintiffs have been damaged.

92.     This latent defect has now caused damage to the Plaintiff, Richard A. Hamburg. Mr. Hamburg has suffered the following damages:

      a.   Damages in the form of monetary damages for the loss of use and enjoyment of the unit; additional living expenses while forced to live away from the unit; and loss of market value of the unit.

WHEREFORE, Plaintiffs demand:

      a.     compensatory damages;

      b.     Pre- and Post-Judgment interest;

      c.     an award of taxable costs; and

      d.     any and all such relief as this Court deems just and proper.

## G.     BREACH OF CONTRACT AGAINST DEVELOPER

93.     Plaintiffs adopt and restate paragraphs 1 through 27 as if fully set forth herein.

94.     Defendant, Developer, made an offer to build a unit for the Plaintiffs and/or made an offer to sell a completed unit to the Plaintiffs, which were marketable.

95.     Plaintiffs accepted this offer and obtained a completed unit.

96.     As consideration, Plaintiffs agreed to compensate Defendant for building and/or selling a unit in a condominium development that was free from material defects and free from defective drywall. (A copy of the contract that memorializes this agreement is attached as **Exhibit 1**).

97.     As part of the agreement to purchase this completed unit, the Defendant,

Developer, "agrees to construct the Unit in substantial conformance with the plans and specifications on file" (See Exhibit 1, paragraph 3(a)).

98.     Defendant, Developer, breached the contract by providing Plaintiffs with a unit that was in a condominium development that was not free of defects, to wit, the building contained drywall that is inherently defective because it was manufactured using a mixture for drywall that caused the finished product to be made with an abnormal elemental makeup that is not in accordance with industry norms.   This abnormal elemental makeup causes the drywall to be defective, causes it not to be unfit for its intended purpose, causes it to damage other property, smell abnormally, and causes an environment within the unit that causes abnormal symptoms. The discovery of this defective drywall within the condominium development known as "Lauderdale One" decreased the market value for all units within this development due to the "stigma" of defective Chinese drywall.

99.     Further, paragraph 3 of the sales contract states: "Seller reserves the right to make any modifications, changes or omissions to the Unit or Condominium common elements as long as they do not materially and adversely affect Buyer, or if they are required by any governmental authority, and to substitute materials, equipment, cabinets, fixtures, appliances, and/or bathroom floor coverings with items of similar quality."

100.    Developer breached the contract by providing Plaintiffs with a unit within a building that contained defective Chinese drywall which materially and adversely affected buyer.

101.    Defendant had reasonable and adequate notice of this claim by the Plaintiffs and failed to cure.

102.    As a direct and proximate result of the Defendant, Developer=s, breach the

Plaintiffs have been damaged.

103.   This latent defect has now caused damage to the Plaintiff, Richard A. Hamburg. Mr. Hamburg has suffered the following damage:

   a.   Damages in the form of monetary damages for the loss of use and enjoyment of the unit; additional living expenses while forced to live away from the unit; and loss of market value of the unit.

104.   This latent defect has now caused damage to the Plaintiff, Ralph Mangiarelli, Jr. Mr. Mangiarelli, Jr., has suffered the following damage:

   b.   Damages in the form of monetary damages for the loss of use and enjoyment of the unit; and loss of market value of the unit.

   WHEREFORE, Plaintiffs demand:

   a.   compensatory damages;

   b.   Pre- and Post-Judgment interest;

   c.   an award of taxable costs; and

   d.   any and all such relief as this Court deems just and proper.

### H.   PRIVATE NUISANCE AGAINST DEVELOPER

105.   Plaintiffs adopt and restate paragraphs 1 through 27 as if fully set forth herein.

106.   Plaintiffs owned or possessed an actual property interest in the real property that is the subject of this action.

107.   General Contractor used defective drywall to build one of the two buildings located within the condominium complex known as Lauderdale One.   This tortious or wrongful act or omission by the Defendant has unreasonably interfered, and continues to interfere, with the use and enjoyment of the property and caused potential health problems.

108.    Defendants interfered with the Plaintiffs' health, comfort, safety, free use of their property, possession, and/or peaceful enjoyment of the property by selling, distributing and delivering Chinese drywall in their home.

109.    Defendant carried out or substantially participated in an activity that resulted in an annoyance or disturbance of Plaintiffs' free use, possession and enjoyment of their property.

110.    Defendant's interference with Plaintiffs' comfort, safety or proprietary rights resulted in unreasonably and substantial harm.   The harm should be measured by what would be offensive to an ordinary person who possesses a reasonable disposition, and ordinary and reasonable sensitivities.

111.    Defendant's creation of the nuisance was the legal cause of the damage to the Plaintiffs' property.

112.    Defendant's acts and omissions in selling, distributing, and/or delivering the defective drywall was not reasonable under the circumstances.

113.    Defendant had reasonable and adequate notice of this claim by the Plaintiffs and failed to cure.

114.    As a direct and proximate result of the Defendant=s acts and omissions, Plaintiffs have been damaged.

115.    This latent defect has now caused damage to the Plaintiff, Richard A. Hamburg. Mr. Hamburg has suffered the following damage:

     a.    Damages in the form of monetary damages for the loss of use and enjoyment of the unit; additional living expenses while forced to live away from the unit; and loss of market value of the unit.

116.    This latent defect has now caused damage to the Plaintiff, Ralph Mangiarelli, Jr.

Mr. Mangiarelli, Jr., has suffered the following damage:

    b.   Damages in the form of monetary damages for the loss of use and enjoyment of the unit; and loss of market value of the unit.

WHEREFORE, Plaintiffs demand:

    a.    compensatory damages;

    b.    Pre- and Post-Judgment interest;

    c.    an award of taxable costs; and

    d.    any and all such relief as this Court deems just and proper.

## I.    VICARIOUS LIABILITY OF THE DEVELOPER FOR THE ACTS OF THEIR ACTUAL AGENT

117.    Plaintiffs adopt and restate paragraphs 1 through 27 as if fully set forth herein.

118.    The Defendant, Developer, was charged with the responsibility of providing the Plaintiffs with condominium units that were free of defects and met the ordinary and normal standards for units of comparable kind and quality.

119.    In an attempt to meet this obligation, the Defendant, Developer, entered into various contracts with various contractors to complete the construction of the condominium development known as "Lauderdale One."  Once of these contracts was with the General Contractor, BJ&K Condo Construction Inc.  As a result of this contract, (A contract that the Plaintiff has a good faith belief exists but which is not in the possession of the Plaintiff.  This contract will be requested in discovery and will be obtained from the Defendant) this General Contractor became the Developer's actual agent.  As a result, the Developer became vicariously liable for any and all acts of the General Contractor.

120.    Pursuant to this contract, the General Contractor was then obligated to complete the unit in a workmanlike manner, to utilize reasonable and non-defective building materials, and

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

to complete the unit free from defects.   Included in these duties was the duty to install all of the drywall within the buildings.

121.    During the operation of constructing the units, the General Contractor, and/or an actual agent of the General Contractor brought into the unit defective materials, more specifically, defective drywall.

122.    This defective drywall then caused one of the two buildings to become "defective."

123.    This property damage was caused by the release of gasses, fumes, or vapors from the materials, i.e. the defective drywall, brought into that building by the General Contractor and/or an actual agent of the General Contractor in connection with the operations that were required to be performed by the Developer.

124.    The Developer is now vicariously liable for the property damage sustained by the Plaintiffs due to the acts of the Developer=s actual agent, the General Contractor.

125.    As a direct and proximate result of the General Contractor's actions, which the Developer is vicariously liable for, Plaintiffs have been damaged.

126.    This latent defect has now caused damage to the Plaintiff, Richard A. Hamburg. Mr. Hamburg has suffered the following damage:

    a.    Damages in the form of monetary damages for the loss of use and enjoyment of the unit; additional living expenses while forced to live away from the unit; and loss of market value of the unit.

127.    This latent defect has now caused damage to the Plaintiff, Ralph Mangiarelli, Jr. Mr. Mangiarelli, Jr., has suffered the following damages:

    b.    Damages in the form of monetary damages for the loss of use and enjoyment of the unit; and loss of market value of the unit.

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

WHEREFORE, Plaintiffs demand:

a.    compensatory damages;

b.    Pre- and Post-Judgment interest;

c.    an award of taxable costs; and

d.    any and all such relief as this Court deems just and proper.

## J.    VICARIOUS LIABILITY OF THE DEVELOPER FOR THE ACTS OF THEIR APPARENT AGENT

128.    Plaintiffs adopt and restate paragraphs 1 through 27 as if fully set forth herein.

129.    The Defendant, Developer, was charged with the responsibility of providing the Plaintiffs with condominium units that were free of defects and met the ordinary and normal standards for a unit of comparable kind and quality.

130.    In an attempt to meet this responsibility, the Defendant, Developer, entered into various contracts with various contractors.  Once of these contracts was with the General Contractor.   The General Contractor then retained the services of various sub-contractors who were not in direct privity with the Developer, such as the installer of the drywall- Caceres Drywall Corp.  However, these sub-contractors were employed to act on the behalf of the Developer.   Further, Caceres Drywall Corp's actions, although they were not in direct privity with the developer, were controlled by the Developer and/or was subject to the developer's right of control.

131.    Installer, Caceres Drywall Corp, was an apparent agent of the Developer because the developer by his words or conduct caused or allowed the Plaintiffs to believe that this Installer was an agent of and had authority to act for the Developer, and the Plaintiffs justifiably relied upon that belief in dealing with this installer.

132.    While within the scope of this apparent authority and during the construction of the

units, Installer brought into the units defective materials, more specifically, defective drywall.

133.    This defective drywall then caused one of the two buildings to become "defective."

134.    This property damage was caused by the release of gasses, fumes, or vapors from the materials, i.e. the defective drywall, brought into that building by Installer in connection with the operations that were required to be performed by the Developer.

135.    The Developer is now vicariously liable for the property damage sustained by the Plaintiffs due to the acts of the Developer's apparent actual agent, Installer.

136.    As a direct and proximate result of the Installer's actions, which the Developer is vicariously liable for, Plaintiffs have been damaged.

137.    This latent defect has now caused damage to the Plaintiff, Richard A. Hamburg. Mr. Hamburg has suffered the following damage:

    a.    Damages in the form of monetary damages for the loss of use and enjoyment of the unit; additional living expenses while forced to live away from the unit; and loss of market value of the unit.

138.    This latent defect has now caused damage to the Plaintiff, Ralph Mangiarelli, Jr. Mr. Mangiarelli, Jr., has suffered the following damage:

    b.    Damages in the form of monetary damages for the loss of use and enjoyment of the unit; and loss of market value of the unit.

WHEREFORE, Plaintiffs demand:

    a.    compensatory damages;

    b.    Pre- and Post-Judgment interest;

    c.    an award of taxable costs; and

    d.    any and all such relief as this Court deems just and proper.

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

## II.   VARIOUS COUNTS AGAINST GENERAL CONTRACTOR, BJ&K CONDO CONSTRUCTION INC.

### A.   STRICT LIABILITY AGAINST GENERAL CONTRACTOR

139.   Plaintiffs adopt and restate paragraphs 1 through 27 as if fully set forth herein.

140.   At all times material hereto, General Contractor was in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling units within a condominium development for sale to the general public.

141.   The drywall, including the defective drywall installed in one of the two buildings located within the condominium complex known as Lauderdale One (specifically the building located at 2421 NE 65th Street, Ft. Lauderdale, Florida) was placed by the General Contractor in the stream of commerce.

142.   General Contractor knew that the subject drywall would be used without inspection for defects by consumers.

143.   General Contractor intended that the drywall reach the ultimate consumer, such as Plaintiffs, and it was indeed installed in the building located at 2421 NE 65th Street, Ft. Lauderdale, Florida.

144.   When installed in the building, the drywall was in substantially the same condition as it was when General Contractor sold and/or delivered it.

145.   At all times material hereto the subject drywall was used in a manner consistent with the uses intended by, or known to, General Contractor and in accordance with General Contractor's directions and instructions.

146.   The subject drywall was not misused or altered by any third parties.

147.   The drywall supplied by the General Contractor was defectively manufactured, designed, inspected, tested, marketed, distributed and/or sold.

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

148.    The design defect was in designing a mixture for drywall that caused the finished product to be made with an abnormal elemental makeup that is not in accordance with industry norms.  This abnormal elemental makeup causes the drywall to be defective, causes it not to be unfit for its intended purpose, causes it to damage other property, smell abnormally, and causes an environment within the unit that causes abnormal symptoms.

149.    The manufacturing defect was in manufacturing drywall with a mixture that caused the finished product to be made with an abnormal elemental makeup that is not in accordance with industry norms.  This abnormal elemental makeup causes the drywall to be defective, causes it not to be unfit for its intended purpose, causes it to damage other property, smell abnormally, and causes an environment within the unit that causes abnormal symptoms.

150.    The drywall was also defective because it was sold, installed, delivered, supplied, and /or distributed in the defective condition described above.

151.    General Contractor's defective distributing and/or selling of the drywall in this condition rendered it unsafe and unreasonably dangerous for its intended use.

152.    The drywall is also defective and unreasonably dangerous because General Contractor failed to adequately warn and instruct the Plaintiffs of the defective design or that the product was defectively manufactured.

153.    Plaintiffs were unaware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Plaintiff, acting as a reasonably prudent person/people discover that the drywall supplied, installed, and/or distributed by the General Contractor, was defective, as set forth above, or perceive its danger.

154.    The drywall supplied, installed, and/or distributed by General Contractor was much more dangerous and harmful than expected by the average consumer and buy Plaintiffs.

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

155.    The benefit, if any, of the drywall supplied, installed, distributed by General Contractor to the Plaintiffs was greatly outweighed by the risk of harm and danger that the drywall created.

156.    The defects in the drywall as outlined above, as well as the General Contractor's failure to warn of this defect, rendered the drywall unreasonably dangerous and were the direct and proximate cause of damages to the Plaintiffs.

157.    Defendant had reasonable and adequate notice of this claim by the Plaintiffs and failed to cure.

158.    This defective drywall has now caused various damages to the Plaintiffs.

159.    This latent defect has now caused damage to the Plaintiff, Richard A. Hamburg. Mr. Hamburg has suffered the following damages:

   a.   Damages in the form of monetary damages for the loss of use and enjoyment of the unit; additional living expenses while forced to live away from the unit; and loss of market value of the unit.

160.    This latent defect has now caused damage to the Plaintiff, Ralph Mangiarelli, Jr. Mr. Mangiarelli, Jr., has suffered the following damages:

   b.   Damages in the form of monetary damages for the loss of use and enjoyment of the unit; and loss of market value of the unit.

WHEREFORE, Plaintiffs demand:

   a.   compensatory damages;

   b.   Pre- and Post-Judgment interest;

   c.   an award of taxable costs; and

   d.   any and all such relief as this Court deems just and proper.

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

## B.      NEGLIGENCE OF GENERAL CONTRACTOR

161.   Plaintiffs adopt and restate paragraphs 1 through 27 as if fully set forth herein.

162.   At all times material hereto, Defendant owed plaintiffs a duty of reasonable care.  Reasonable care being defined as that degree of care which a reasonably careful person would use under like circumstances.  Depending on the circumstances, reasonable care could mean doing something that a reasonably careful person would do or not doing something that a reasonably careful person would not do.

163.   Defendant breached this duty of reasonable care when they failed to reasonably inspect and/or warn of a product that is "inherently dangerous" and/or Defendant breached its duty of reasonable care when it installed defective Chinese drywall, despite the fact that the Defendant knew, or should have known, of the defective nature of this product, i.e. the smell and/or the abnormal elemental makeup of this product.  Further, Defendant breached its duty of reasonable care when it failed to further investigate and test drywall that the defendant knew or should have known had an abnormal smell and that had for the very first time been imported from a foreign country, in this case China, and a product that had no proven track record here in the United States, and which was causing, on some occasions, physical symptoms, i.e. headaches, burning eyes, respiratory problems, sore throat, etc.

164.   Defendant had reasonable and adequate notice of this claim by the Plaintiffs and failed to cure.

165.   As a result of this breach of the standard of care, the Plaintiffs have sustained damage.

166.   This latent defect has now caused damage to the Plaintiff, Richard A. Hamburg. Mr. Hamburg has suffered the following damages:

      a.   Damages in the form of monetary damages for the loss of use and enjoyment of the unit; additional living expenses while forced to live away from the unit; and loss of market value of the unit.

167.   This latent defect has now caused damage to the Plaintiff, Ralph Mangiarelli, Jr. Mr. Mangiarelli, Jr., has suffered the following damage:

      b.   Damages in the form of monetary damages for the loss of use and enjoyment of the unit; and loss of market value of the unit.

WHEREFORE, Plaintiffs demand:

      a.     compensatory damages;

      b.     Pre- and Post-Judgment interest;

      c.     an award of taxable costs; and

      d.     any and all such relief as this Court deems just and proper.

### C.      BREACH OF STATUTORY IMPLIED WARRANTY BY GENERAL CONTRACTOR

168.   Plaintiffs adopt and restate paragraphs 1 through 27 as if fully set forth herein.

169.   General Contractor, under F.S. §718.203 and common law, impliedly warranted to Plaintiffs that each building within the condominium complex known as Lauderdale One was reasonably fit for its intended purpose and that each unit within these buildings was merchantable, and that the buildings and improvements of the Condominium were constructed in accordance with the plans and specifications filed as a matter of public record.

170.   In constructing the buildings within the condominium complex known as Lauderdale One, the General Contractor breached the implied warranties set forth under F.S. §718.203 by failing to comply with the requirements of the Florida Building Code, and by constructing the buildings, improvements and individual units with drywall that was not fit for

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

its intended use as living quarters, was unreasonably dangerous, did not conform to representations made by the defendants that the drywall was manufactured and designed reasonably and free of defects, and was defective.

171.    The General Contractor also failed to construct in accordance with proper and approved construction plans and specifications, and by not constructing the Condominium in accordance with good design, engineering, supplies, materials, or construction practices.

172.    The General Contractor constructed and developed the buildings within the condominium complex known as Lauderdale One with the defects and deficiencies set forth herein.

173.    The existence or cause of the defects and deficiencies set forth herein and damages caused thereby are not the type that would be readily recognizable by persons who lack special knowledge or training, or they are hidden by building components or finishes, and they are latent defects and deficiencies to the Plaintiffs who, in the exercise of reasonable diligence, did not discover the existence or cause of the defects and deficiencies until after their purchase and occupancy of the units in the Condominium.

174.    As a direct and proximate result of the General Contractor's actions, the Plaintiffs have been damaged.

175.    This latent defect has now caused damage to the Plaintiff, Richard A. Hamburg. Mr. Hamburg has suffered the following damage.

   a.    Damages in the form of monetary damages for the loss of use and enjoyment of the unit; additional living expenses while forced to live away from the unit; and loss of market value of the unit.

176.    This latent defect has now caused damage to the Plaintiff, Ralph Mangiarelli, Jr.

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

Mr. Mangiarelli, Jr., has suffered the following damages:

    b.   Damages in the form of monetary damages for the loss of use and enjoyment of the unit; and loss of market value of the unit.

WHEREFORE, Plaintiffs demand:

    a.   compensatory damages;

    b.   Pre- and Post-Judgment interest;

    c.   an award of taxable costs; and

    d.   any and all such relief as this Court deems just and proper

### D.    PRIVATE NUISANCE AGAINST GENERAL CONTRACTOR

177.    Plaintiffs adopt and restate paragraphs 1 through 27 as if fully set forth herein.

178.    Plaintiffs owned or possessed an actual property interest in the real property that is the subject of this action.

179.    General Contractor used defective drywall to build one of the two buildings located within the condominium complex known as Lauderdale One.   This tortious or wrongful act or omission by the Defendant has unreasonably interfered, and continues to interfere, with the use and enjoyment of the property and caused potential health problems.

180.    Defendants interfered with the Plaintiff's health, comfort, safety, free use of the property, possession, and/or peaceful enjoyment of the property by selling, distributing and delivering Chinese drywall in their home.

181.    Defendant carried out or substantially participated in an activity that resulted in an annoyance or disturbance of Plaintiff's free use, possession and enjoyment of their property.

182.    Defendant's interference with Plaintiff's comfort, safety or proprietary rights resulted in unreasonably and substantial harm.   The harm should be measured by what would

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

be offensive to an ordinary person who possesses a reasonable disposition, and ordinary and reasonable sensitivities.

183.    Defendant's creation of the nuisance was the legal cause of the damage to the Plaintiffs' property.

184.    Defendant's acts and omissions in selling, distributing, and/or delivering the defective drywall was not reasonably under the circumstances.

185.    Defendant had reasonable and adequate notice of this claim by the Plaintiffs and failed to cure.

186.    As a direct and proximate result of the Defendant's acts and omissions, Plaintiffs have been damaged.

187.    This latent defect has now caused damage to the Plaintiff, Richard A. Hamburg. Mr. Hamburg has suffered the following damage:

    a.    Damages in the form of monetary damages for the loss of use and enjoyment of the unit; additional living expenses while forced to live away from the unit; and loss of market value of the unit.

188.    This latent defect has now caused damage to the Plaintiff, Ralph Mangiarelli, Jr. Mr. Mangiarelli, Jr., has suffered the following damage:

    b.    Damages in the form of monetary damages for the loss of use and enjoyment of the unit; and loss of market value of the unit.

WHEREFORE, Plaintiffs demand:

    a.    compensatory damages;

    b.    Pre- and Post-Judgment interest;

    c.    an award of taxable costs; and

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

   d.  any and all such relief as this Court deems just and proper.

**E.**  **VICARIOUS LIABILITY OF THE GENERAL CONTRACTOR FOR THE ACTS OF THEIR ACTUAL AGENT**

189.  Plaintiffs adopt and restate paragraphs 1 through 27 as if fully set forth herein.

190.  General Contractor was charged with the responsibility of providing the Plaintiffs with a condominium complex that was free of defects and met the ordinary and normal standards for a complex of comparable kind and quality.

191.  In an attempt to meet this responsibility, General Contractor entered into various contracts with various contractors.   Once of these contracts was with the Installer, Caceres Drywall Corp.   As a result of this contract, (A contract that the Plaintiff has a good faith belief exists but which is not in the possession of the Plaintiff.   This contract will be requested in discovery and will be obtained from the Defendant) this Installer became the General Contractor's actual agent.   As a result, the General Contractor became vicariously liable for any and all acts of the Installer.

192.  Pursuant to this contract, the Installer was then obligated to complete the units in a workmanlike manner, to utilize reasonable and non-defective building materials, and to complete the units free from defects.   Included in these duties was the duty to install all of the drywall within the units.

193.  During the operation of constructing the units, the Installer, and/or an actual agent of the Installer, brought into the units defective materials, more specifically defective drywall.

194.  This defective drywall then caused property damage within the units.

195.  This property damage was caused by the release of gasses, fumes, or vapors from the materials, i.e. the defective drywall, brought into that building by the Installer and/or an actual agent of the Installer, in connection with the operations that were required to be

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

performed by the General Contractor.

196.    General Contractor is now vicariously liable for the property damage sustained by the Plaintiffs due to the acts of the General Contractor's actual agent, the Installer.

197.    As a direct and proximate result of the Installer's actions, which General Contractor is vicariously liable for, Plaintiffs have been damaged.

198.    This latent defect has now caused damage to the Plaintiff, Richard A. Hamburg. Mr. Hamburg has suffered the following damage:

    a.    Damages in the form of monetary damages for the loss of use and enjoyment of the unit; additional living expenses while forced to live away from the unit; and loss of market value of the unit.

199.    This latent defect has now caused damage to the Plaintiff, Ralph Mangiarelli, Jr. Mr. Mangiarelli, Jr., has suffered the following damage:

    b.    Damages in the form of monetary damages for the loss of use and enjoyment of the unit; and loss of market value of the unit.

WHEREFORE, Plaintiffs demand:

    a.    compensatory damages;

    b.    Pre- and Post-Judgment interest;

    c.    an award of taxable costs; and

    d.    any and all such relief as this Court deems just and proper.

## III. VARIOUS COUNTS AGAINST INSTALLER, CACERES DRYWALL CORP.

### A.    STRICT LIABILITY AGAINST INSTALLER

200.    Plaintiffs adopt and restate paragraphs 1 through 27 as if fully set forth herein.

201.    At all times material hereto, Installer was in the business of purchasing and selling

and installing drywall within a condominium development known as Lauderdale One.

202.   Drywall, including the defective drywall installed in one of the two buildings located within the condominium complex known as Lauderdale One (specifically the building located at 2421 NE 65th Street, Ft. Lauderdale, Florida) was placed by the Installer in the stream of commerce.

203.   Installer knew that the subject drywall would be used without inspection for defects by consumers.

204.   Installer intended that the drywall reach the ultimate consumer, such as Plaintiffs, and it was indeed installed in the building located at 2421 NE 65th Street, Ft. Lauderdale, Florida.

205.   When installed in the building, the drywall was in substantially the same condition as it was when Installer sold, and/or delivered it.

206.   At all times material hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Installer, and in accordance with the Installer's directions and instructions.

207.   The subject drywall was not misused or altered by any third parties.

208.   The drywall supplied by the Installer was defectively manufactured, designed, inspected, tested, distributed and/or sold.

209.   The design defect was in designing a mixture for drywall that caused the finished product to be made with an abnormal elemental makeup that is not in accordance with industry norms.   This abnormal elemental makeup causes the drywall to be defective, causes it not to be unfit for its intended purpose, causes it to damage other property, smell abnormally, and causes an environment within the unit that causes abnormal symptoms.

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

210.    The manufacturing defect was in manufacturing drywall with a mixture that caused the finished product to be made with an abnormal elemental makeup that is not in accordance with industry norms.   This abnormal elemental makeup causes the drywall to be defective, causes it not to be unfit for its intended purpose, causes it to damage other property, smell abnormally, and causes an environment within the unit that causes abnormal symptoms.

211.    The drywall was also defective because it was sold, installed, delivered, supplied, and /or distributed in the defective condition described above.

212.    Installer's defective distributing and/or selling of the drywall in this condition rendered it unsafe and unreasonably dangerous for its intended use.

213.    The drywall is also defective and unreasonably dangerous because Installer failed to adequately warn and instruct the Plaintiffs of the defective design or that the product was defectively manufactured.

214.    Plaintiffs were unaware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Plaintiff, acting as a reasonably prudent person/people discover that the drywall supplied, installed, and/or distributed by the Installer, was defective, as set forth above, or perceive its danger. \

215.    The drywall supplied, installed, and/or distributed by Installer was much more dangerous and harmful than expected by the average consumer and buy Plaintiffs.

216.    The benefit, if any, of the drywall supplied, installed, distributed by the Installer to the Plaintiffs was greatly outweighed by the risk of harm and danger that the drywall created.

217.    The defects in the drywall as outlined above, as well as the Installer's failure to warn of this defect, rendered the drywall unreasonably dangerous and were the direct and proximate cause of damages to the Plaintiffs.

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

218.    Defendant had reasonable and adequate notice of this claim by the Plaintiffs and failed to cure.

219.    This defective drywall has now caused various damages to the Plaintiffs.

220.    This latent defect has now caused damage to the Plaintiff, Richard A. Hamburg. Mr. Hamburg has suffered the following damage:

      a.    Damages in the form of monetary damages for the loss of use and enjoyment of the unit; additional living expenses while forced to live away from the unit; and loss of market value of the unit.

221.    This latent defect has now caused damage to the Plaintiff, Ralph Mangiarelli, Jr. Mr. Mangiarelli, Jr., has suffered the following damage:

      b.    Damages in the form of monetary damages for the loss of use and enjoyment of the unit; and loss of market value of the unit.

WHEREFORE, Plaintiffs demand:

      a.    compensatory damages;

      b.    Pre- and Post-Judgment interest;

      c.    an award of taxable costs; and

      d.    any and all such relief as this Court deems just and proper.

## B.    NEGLIGENCE OF INSTALLER

222.    Plaintiffs adopt and restate paragraphs 1 through 27 as if fully set forth herein.

223.    At all times material hereto, Defendant owed plaintiffs a duty of reasonable care.  Reasonable care being defined as that degree of care which a reasonably careful person would use under like circumstances.  Depending on the circumstances, reasonable care could mean doing something that a reasonably careful person would do or not doing something that a

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

reasonably careful person would not do.

224.    Defendant breached this duty of reasonable care when they failed to reasonably inspect and/or warn of a product that is "inherently dangerous" and/or Defendant breached its duty of reasonable care when it installed defective Chinese drywall, despite the fact that the Defendant knew, or should have known, of the defective nature of this product, i.e. the smell and/or the abnormal elemental makeup of this product.  Further, Defendant breached its duty of reasonable care when it failed to further investigate and test drywall that the defendant knew or should have known had an abnormal smell and that had for the very first time been imported from a foreign country, in this case China, and a product that had no proven track record here in the United States, and which was causing, on some occasions, physical symptoms, i.e. headaches, burning eyes, respiratory problems, sore throat, etc.

225.    Defendant had reasonable and adequate notice of this claim by the Plaintiffs and failed to cure.

226.    As a result of this breach of the standard of care, the Plaintiffs have sustained damage.

227.    This latent defect has now caused damage to the Plaintiff, Richard A. Hamburg. Mr. Hamburg has suffered the following damage:

  a.    Damages in the form of monetary damages for the loss of use and enjoyment of the unit; additional living expenses while forced to live away from the unit; and loss of market value of the unit.

228.    This latent defect has now caused damage to the Plaintiff, Ralph Mangiarelli, Jr. Mr. Mangiarelli, Jr., has suffered the following damage:

  b.    Damages in the form of monetary damages for the loss of use and enjoyment of the

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

unit; and loss of market value of the unit.

WHEREFORE, Plaintiffs demand:

a.      compensatory damages;

b.      Pre- and Post-Judgment interest;

c.      an award of taxable costs; and

d.      any and all such relief as this Court deems just and proper.

## C.      PRIVATE NUISANCE AGAINST INSTALLER

229.    Plaintiffs adopt and restate paragraphs 1 through 27 as if fully set forth herein.

230.    Plaintiffs owned or possessed an actual property interest in the real property that is the subject of this action.

231.    Installer used defective drywall to build the home in question. This tortious or wrongful act or omission by the Defendant has unreasonably interfered, and continues to interfere, with the use and enjoyment of the property and caused potential health problems.

232.    Defendants interfered with the Plaintiff's health, comfort, safety, free use of the property, possession, and/or peaceful enjoyment of the property be selling, distributing and delivering Chinese drywall in their home.

233.    Defendant carried out or substantially participated in an activity that resulted in an annoyance or disturbance of Plaintiff's free use, possession and enjoyment of their property.

234.    Defendant's interference with Plaintiff's comfort, safety or proprietary rights resulted in unreasonably and substantial harm.   The harm should be measured by what would be offensive to an ordinary person who possesses a reasonable disposition, and ordinary and reasonable sensitivities.

235.    Defendant's creation of the nuisance was the legal cause of the damage to the

Plaintiffs' property.

236.    Defendant's acts and omissions in selling, distributing, and/or delivering the defective drywall was not reasonably under the circumstances.

237.    Defendant had reasonable and adequate notice of this claim by the Plaintiffs and failed to cure.

238.    As a direct and proximate result of the Defendant=s acts and omissions, Plaintiffs have been damaged.

239.    This latent defect has now caused damage to the Plaintiff, Richard A. Hamburg. Mr. Hamburg has suffered the following damage:

   a.    Damages in the form of monetary damages for the loss of use and enjoyment of the unit; additional living expenses while forced to live away from the unit; and loss of market value of the unit.

240.    This latent defect has now caused damage to the Plaintiff, Ralph Mangiarelli, Jr. Mr. Mangiarelli, Jr., has suffered the following damage:

   b.    Damages in the form of monetary damages for the loss of use and enjoyment of the unit; and loss of market value of the unit.

WHEREFORE, Plaintiffs demand:

   a.    compensatory damages;

   b.    Pre- and Post-Judgment interest;

   c.    an award of taxable costs; and

## IV.    VARIOUS COUNTS AGAINST SUPPLIER 1, BANNER SUPPLY COMPANY POMPANO LLC.

### A.    STRICT LIABILITY AGAINST SUPPLIER 1

241.    Plaintiffs adopt and restate paragraphs 1 through 27 as if fully set forth herein.

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

242.    At all times material hereto, Supplier 1 was in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall to the general public.

243.    The drywall, including the defective drywall installed in one of the two buildings located within the condominium complex known as Lauderdale One (specifically the building located at 2421 NE 65th Street, Ft. Lauderdale, Florida) was placed by the Supplier 1 in the stream of commerce.

244.    Supplier 1 knew that the subject drywall would be used without inspection for defects by consumers.

245.    Supplier 1 intended that the drywall reach the ultimate consumer, such as Plaintiffs, and it was indeed installed in the building located at 2421 NE 65th Street, Ft. Lauderdale, Florida.

246.    When installed in the building, the drywall was in substantially the same condition as it was when Supplier 1 sold, and/or delivered it.

247.    At all times material hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Supplier 1, and in accordance with Supplier 1's directions and instructions.

248.    The subject drywall was not misused or altered by any third parties.

249.    The drywall supplied by Supplier 1 was defectively manufactured, designed, inspected, tested, marketed, distributed and/or sold.

250.    The design defect was in designing a mixture for drywall that caused the finished product to be made with an abnormal elemental makeup that is not in accordance with industry norms.  This abnormal elemental makeup causes the drywall to be defective, causes it not to be unfit for its intended purpose, causes it to damage other property, smell abnormally, and

causes an environment within the unit that causes abnormal symptoms.

251.    The manufacturing defect was in manufacturing drywall with a mixture that caused the finished product to be made with an abnormal elemental makeup that is not in accordance with industry norms.   This abnormal elemental makeup causes the drywall to be defective, causes it not to be unfit for its intended purpose, causes it to damage other property, smell abnormally, and causes an environment within the unit that causes abnormal symptoms.

252.    The drywall was also defective because it was sold, installed, delivered, supplied, and /or distributed in the defective condition described above.

253.    Supplier 1's defective distributing and/or selling of the drywall in this condition rendered it unsafe and unreasonably dangerous for its intended use.

254.    The drywall is also defective and unreasonably dangerous because Supplier 1 failed to adequately warn and instruct the Plaintiffs of the defective design or that the product was defectively manufactured.

255.    Plaintiffs were unaware of the unreasonably dangerous propensies and defective condition of the drywall, nor could Plaintiff, acting as a reasonably prudent person/people discover that the drywall supplied, installed, and/or distributed by the Supplier 1, was defective, as set forth above, or perceive its danger.

256.    The drywall supplied, installed, and/or distributed by Supplier 1 was much more dangerous and harmful than expected by the average consumer and buy Plaintiffs.

257.    The benefit, if any, of the drywall supplied, installed, distributed by Supplier 1 to the Plaintiffs was greatly outweighed by the risk of harm and danger that the drywall created.

258.    The defects in the drywall as outlined above, as well as Supplier 1's failure to warn of this defect, rendered the drywall unreasonably dangerous and were the direct and proximate

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

cause of damages to the Plaintiffs.

259.    Defendant had reasonable and adequate notice of this claim by the Plaintiffs and failed to cure.

260.    This defective drywall has now caused various damages to the Plaintiffs.

261.    This latent defect has now caused damage to the Plaintiff, Richard A. Hamburg. Mr. Hamburg has suffered the following damage:

      a.    Damages in the form of monetary damages for the loss of use and enjoyment of the unit; additional living expenses while forced to live away from the unit; and loss of market value of the unit.

262.    This latent defect has now caused damage to the Plaintiff, Ralph Mangiarelli, Jr. Mr. Mangiarelli, Jr., has suffered the following damage:

      b.    Damages in the form of monetary damages for the loss of use and enjoyment of the unit; and loss of market value of the unit.

WHEREFORE, Plaintiffs demand:

      a.    compensatory damages;

      b.    Pre- and Post-Judgment interest;

      c.    an award of taxable costs; and

      d.    any and all such relief as this Court deems just and proper.

### B.    NEGLIGENCE OF SUPPLIER 1

263.    Plaintiffs adopt and restate paragraphs 1 through 27 as if fully set forth herein.

264.    At all times material hereto, Defendant owed plaintiffs a duty of reasonable care.  Reasonable care being defined as that degree of care which a reasonably careful person would use under like circumstances.  Depending on the circumstances, reasonable care could

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

mean doing something that a reasonably careful person would do or not doing something that a reasonably careful person would not do.

265.   Defendant breached this duty of reasonable care when they failed to reasonably inspect and/or warn of a product that is "inherently dangerous" and/or Defendant breached its duty of reasonable care when it installed defective Chinese drywall, despite the fact that the Defendant knew, or should have known, of the defective nature of this product, i.e. the smell and/or the abnormal elemental makeup of this product.  Further, Defendant breached its duty of reasonable care when it failed to further investigate and test drywall that the defendant knew or should have known had an abnormal smell and that had for the very first time been imported from a foreign country, in this case China, and a product that had no proven track record here in the United States, and which was causing, on some occasions, physical symptoms, i.e. headaches, burning eyes, respiratory problems, sore throat, etc.

266.   Defendant had reasonable and adequate notice of this claim by the Plaintiffs and failed to cure.

267.   As a result of this breach of the standard of care, the Plaintiffs have sustained damages.

268.   This latent defect has now caused damage to the Plaintiff, Richard A. Hamburg. Mr. Hamburg has suffered the following damage:

      a.   Damages in the form of monetary damages for the loss of use and enjoyment of the unit; additional living expenses while forced to live away from the unit; and loss of market value of the unit.

269.   This latent defect has now caused damage to the Plaintiff, Ralph Mangiarelli, Jr. Mr. Mangiarelli, Jr., has suffered the following damage:

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

  b. Damages in the form of monetary damages for the loss of use and enjoyment of the

    unit; and loss of market value of the unit.

WHEREFORE, Plaintiffs demand:

  a. compensatory damages;

  b. Pre- and Post-Judgment interest;

  c. an award of taxable costs; and

  d. any and all such relief as this Court deems just and proper.

### C.   PRIVATE NUISANCE AGAINST SUPPLIER

270. Plaintiffs adopt and restate paragraphs 1 through 27 as if fully set forth herein.

271. Plaintiffs owned or possessed an actual property interest in the real property that is the subject of this action.

272. Supplier 1 supplied defective drywall to build the units in question. This tortious or wrongful act or omission by the Defendant has unreasonably interfered, and continues to interfere, with the use and enjoyment of the property and caused potential health problems.

273. Defendants interfered with the Plaintiff's health, comfort, safety, free use of the property, possession, and/or peaceful enjoyment of the property be selling, distributing and delivering Chinese drywall in their home.

274. Defendant carried out or substantially participated in an activity that resulted in an annoyance or disturbance of Plaintiff's free use, possession and enjoyment of their property.

275. Defendant's interference with Plaintiff's comfort, safety or proprietary rights resulted in unreasonably and substantial harm.   The harm should be measured by what would be offensive to an ordinary person who possesses a reasonable disposition, and ordinary and reasonable sensitivities.

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

276.    Defendant's creation of the nuisance was the legal cause of the damage to the Plaintiffs' property.

277.    Defendant's acts and omissions in selling, distributing, and/or delivering the defective drywall was not reasonably under the circumstances.

278.    Defendant had reasonable and adequate notice of this claim by the Plaintiffs and failed to cure.

279.    As a direct and proximate result of the Defendant=s acts and omissions, Plaintiffs have been damaged.

280.    This latent defect has now caused damage to the Plaintiff, Richard A. Hamburg. Mr. Hamburg has suffered the following damage:

   a.   Damages in the form of monetary damages for the loss of use and enjoyment of the unit; additional living expenses while forced to live away from the unit; and loss of market value of the unit.

281.    This latent defect has now caused damage to the Plaintiff, Ralph Mangiarelli, Jr. Mr. Mangiarelli, Jr., has suffered the following damage:

   b.   Damages in the form of monetary damages for the loss of use and enjoyment of the unit; and loss of market value of the unit.

WHEREFORE, Plaintiffs demand:

   a.   compensatory damages;

   b.   Pre- and Post-Judgment interest;

   c.   an award of taxable costs; and

   d.   any and all such relief as this Court deems just and proper.

### D.   VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT AGAINST SUPPLIER 1

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

282.    Plaintiffs repeat and reallege the allegations of Paragraphs 1-37 as if fully set forth herein.

283.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is intended to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

284.    An unfair practice under the FDUPTA is a practice that is either immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

285.    The practice of supplying Chinese drywall for installation in single family residences such as that of the Plaintiffs is an unfair practice under the FDUPTA.

286.    The defects causing the damages set forth above existed within the Chinese drywall both at the time of installation of such drywall and while such drywall was within the possession of Supplier prior to the time it was delivered to be installed in the Building.

287.    The Chinese drywall installed in the Building and supplied by Supplier 1directly and proximately caused damage to other property in the Building including, but not limited to, HVAC system/coils, electrical and plumbing components, metal surfaces/hardware, and other items.

288.    Defendant had reasonable and adequate notice of this claim by the Plaintiffs and failed to cure.

289.    Pursuant to Fl. Stat. § 501.211(2), the Plaintiffs are entitled to actual damages, plus attorney's fees and court costs as provided in Fl. Stat. § 501.2105.

290.    As a result of this violation, the Plaintiffs have sustained damage.

291.    This latent defect has now caused damage to the Plaintiff, Richard A. Hamburg.

49

Mr. Hamburg has suffered the following damage:

    a.   Damages in the form of monetary damages for the loss of use and enjoyment of the unit; additional living expenses while forced to live away from the unit; and loss of market value of the unit.

292.   This latent defect has now caused damage to the Plaintiff, Ralph Mangiarelli, Jr. Mr. Mangiarelli, Jr., has suffered the following damage:

    b.   Damages in the form of monetary damages for the loss of use and enjoyment of the unit; and loss of market value of the unit.

WHEREFORE, Plaintiffs demand:

    a.   compensatory damages;

    b.   Pre- and Post-Judgment interest;

    c.   an award of taxable costs; and

    d.   any and all such relief as this Court deems just and proper.

## V.    VARIOUS COUNTS AGAINST SUPPLIER 2, L&W SUPPLY CORPORATION d/b/a SEACOAST SUPPLY

### A.    STRICT LIABILITY AGAINST SUPPLIER 2

293.   Plaintiffs adopt and restate paragraphs 1 through 27 as if fully set forth herein.

294.   At all times material hereto, Supplier 2 was in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall to the general public.

295.   The drywall, including the defective drywall installed in one of the two buildings located within the condominium complex known as Lauderdale One (specifically the building located at 2421 NE 65th Street, Ft. Lauderdale, Florida) was placed by Supplier 2 in the stream of commerce.

296.   Supplier 2 knew that the subject drywall would be used without inspection for

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

defects by consumers.

297.   Supplier 2 intended that the drywall reach the ultimate consumer, such as Plaintiffs, and it was indeed installed in the building located at 2421 NE 65th Street, Ft. Lauderdale, Florida.

298.   When installed in the building, the drywall was in substantially the same condition as it was when Supplier 2 sold, and/or delivered it.

299.   At all times material hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Supplier 2, and in accordance with Supplier 2's directions and instructions.

300.   The subject drywall was not misused or altered by any third parties.

301.   The drywall supplied by Supplier 2 was defectively manufactured, designed, inspected, tested, marketed, distributed and/or sold.

302.   The design defect was in designing a mixture for drywall that caused the finished product to be made with an abnormal elemental makeup that is not in accordance with industry norms.  This abnormal elemental makeup causes the drywall to be defective, causes it not to be unfit for its intended purpose, causes it to damage other property, smell abnormally, and causes an environment within the unit that causes abnormal symptoms.

303.   The manufacturing defect was in manufacturing drywall with a mixture that caused the finished product to be made with an abnormal elemental makeup that is not in accordance with industry norms.  This abnormal elemental makeup causes the drywall to be defective, causes it not to be unfit for its intended purpose, causes it to damage other property, smell abnormally, and causes an environment within the unit that causes abnormal symptoms.

304.   The drywall was also defective because it was sold, installed, delivered, supplied,

and /or distributed in the defective condition described above.

305.   Supplier 2's defective distributing and/or selling of the drywall in this condition rendered it unsafe and unreasonably dangerous for its intended use.

306.   The drywall is also defective and unreasonably dangerous because Supplier 2 failed to adequately warn and instruct the Plaintiffs of the defective design or that the product was defectively manufactured.

307.   Plaintiffs were unaware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Plaintiff, acting as a reasonably prudent person/people discover that the drywall supplied, installed, and/or distributed by the Supplier 2, was defective, as set forth above, or perceive its danger.

308.   The drywall supplied, installed, and/or distributed by Supplier 2 was much more dangerous and harmful than expected by the average consumer and buy Plaintiffs.

309.   The benefit, if any, of the drywall supplied, installed, distributed by Supplier 2 to the Plaintiffs was greatly outweighed by the risk of harm and danger that the drywall created.

310.   The defects in the drywall as outlined above, as well as Supplier 2's failure to warn of this defect, rendered the drywall unreasonably dangerous and were the direct and proximate cause of damages to the Plaintiffs.

311.   Defendant had reasonable and adequate notice of this claim by the Plaintiffs and failed to cure.

312.   This defective drywall has now caused various damages to the Plaintiffs.

313.   This latent defect has now caused damage to the Plaintiff, Richard A. Hamburg. Mr. Hamburg has suffered the following damage:

   a.   Damages in the form of monetary damages for the loss of use and enjoyment of the

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

unit; additional living expenses while forced to live away from the unit; and loss of market value of the unit.

314.    This latent defect has now caused damage to the Plaintiff, Ralph Mangiarelli, Jr. Mr. Mangiarelli, Jr., has suffered the following damage:

b.    Damages in the form of monetary damages for the loss of use and enjoyment of the unit; and loss of market value of the unit.

WHEREFORE, Plaintiffs demand:

a.    compensatory damages;

b.    Pre- and Post-Judgment interest;

c.    an award of taxable costs; and

d.    any and all such relief as this Court deems just and proper.

## B.    NEGLIGENCE OF SUPPLIER 2

315.    Plaintiffs adopt and restate paragraphs 1 through 27 as if fully set forth herein

316.    At all times material hereto, Defendant owed plaintiffs a duty of reasonable care.  Reasonable care being defined as that degree of care which a reasonably careful person would use under like circumstances.  Depending on the circumstances, reasonable care could mean doing something that a reasonably careful person would do or not doing something that a reasonably careful person would not do.

317.    Defendant breached this duty of reasonable care when they failed to reasonably inspect and/or warn of a product that is "inherently dangerous" and/or Defendant breached its duty of reasonable care when it installed defective Chinese drywall, despite the fact that the Defendant knew, or should have known, of the defective nature of this product, i.e. the smell and/or the abnormal elemental makeup of this product.  Further, Defendant breached its duty

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

of reasonable care when it failed to further investigate and test drywall that the defendant knew or should have known had an abnormal smell and that had for the very first time been imported from a foreign country, in this case China, and a product that had no proven track record here in the United States, and which was causing, on some occasions, physical symptoms, i.e. headaches, burning eyes, respiratory problems, sore throat, etc.

318.   Defendant had reasonable and adequate notice of this claim by the Plaintiffs and failed to cure.

319.   This defective drywall has now caused various damages to the Plaintiffs.

320.   This latent defect has now caused damage to the Plaintiff, Richard A. Hamburg. Mr. Hamburg has suffered the following damage:

321.   Damages in the form of monetary damages for the loss of use and enjoyment of the unit; additional living expenses while forced to live away from the unit; and loss of market value of the unit.

322.   This latent defect has now caused damage to the Plaintiff, Ralph Mangiarelli, Jr. Mr. Mangiarelli, Jr., has suffered the following damage:

    a.   Damages in the form of monetary damages for the loss of use and enjoyment of the unit; and loss of market value of the unit.

WHEREFORE, Plaintiffs demand:

    a.   compensatory damages;

    b.   Pre- and Post-Judgment interest;

    c.   an award of taxable costs; and

    d.   any and all such relief as this Court deems just and proper.

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

## C.      PRIVATE NUISANCE AGAINST SUPPLIER 2

323.    Plaintiffs adopt and restate paragraphs 1 through 27 as if fully set forth herein.

324.    Plaintiffs owned or possessed an actual property interest in the real property that is the subject of this action.

325.    Supplier 2 used defective drywall to build the home in question. This tortious or wrongful act or omission by the Defendant has unreasonably interfered, and continues to interfere, with the use and enjoyment of the property and caused potential health problems.

326.    Defendants interfered with the Plaintiff's health, comfort, safety, free use of the property, possession, and/or peaceful enjoyment of the property be selling, distributing and delivering Chinese drywall in their home.

327.    Defendant carried out or substantially participated in an activity that resulted in an annoyance or disturbance of Plaintiff's free use, possession and enjoyment of their property.

328.    Defendant's interference with Plaintiff's comfort, safety or proprietary rights resulted in unreasonably and substantial harm.   The harm should be measured by what would be offensive to an ordinary person who possesses a reasonable disposition, and ordinary and reasonable sensitivities.

329.    Defendant's creation of the nuisance was the legal cause of the damage to the Plaintiffs' property.

330.    Defendant's acts and omissions in selling, distributing, and/or delivering the defective drywall was not reasonably under the circumstances.

331.    Defendant had reasonable and adequate notice of this claim by the Plaintiffs and failed to cure.

332.    As a result of this private nuisance, the Plaintiffs have sustained damage.

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

333.    This latent defect has now caused damage to the Plaintiff, Richard A. Hamburg. Mr. Hamburg has suffered the following damage:

a.    Damages in the form of monetary damages for the loss of use and enjoyment of the unit; additional living expenses while forced to live away from the unit; and loss of market value of the unit.

334.    This latent defect has now caused damage to the Plaintiff, Ralph Mangiarelli, Jr. Mr. Mangiarelli, Jr., has suffered the following damage:

b.    Damages in the form of monetary damages for the loss of use and enjoyment of the unit; and loss of market value of the unit.

WHEREFORE, Plaintiffs demand:

a.    compensatory damages;

b.    Pre- and Post-Judgment interest;

c.    an award of taxable costs; and

d.    any and all such relief as this Court deems just and proper.

**WHEREFORE**, the Plaintiffs demand judgment for damages against the Defendants including costs and interest, and furthermore demand trial by jury of all such issues so triable as of right.

## <u>CERTIFICATE OF SERVICE</u>

WE HEREBY CERTIFY that a true and correct copy of the foregoing was sent by U.S. Mail on this _3th_ day of December, 2013, to:   **DAVID SWIMMER, Esq.,** Attorney for Caceres Drywall Corp, 7990 SW 117th Ave, Suite 100, Miami, FL 33183; **STEVEN CORNMAN, Esq**. Attorney for BJ&K Condo Construction Inc., 25 W. Flagler Street, Penthouse, Miami, Florida 33130; **JEFFREY PASKERT, Esq.,** Attorney for Sixty Fifth and One LLC, 100 N. Tampa

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559

Street, Suite 2010, Tampa, FL 33602; **SUSAN COLE, Esq.** Attorney for L&W Supply, 999

Ponce De Leon Blvd, Suite 710, Coral Gables, FL 33134 **JOY LUNDEEN, Esq.** Attorney for

Banner Supply Co Pompano LLC, Suite 2200 Museum Tower, 150 West Flagler Street, Miami,

FL 33130.


        ROBERTS & DURKEE, P.A.
        **Attorneys for Plaintiffs**
        Alhambra Towers, Penthouse I
        121 Alhambra Plaza, Suite 1603
        Coral Gables, Florida 33134
        Tel:   (305) 442-1700


        BY:  /s/ C. David Durkee_____

            C. DAVID DURKEE

**Roberts & Durkee, P.A.**
Alhambra Towers PH1, 121 Alhambra Plaza, Suite 1603, Coral Gables, FL 33134 | (305) 442-1700 | Fax: (305) 442-2559