UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILTY LITIGATION | * * * * | MDL 2047 |
| | * | SECTION L |
| | * | JUDGE FALLON |
| This document relates to: ALL CASES | * * * | MAGISTRATE JUDGE WILKINSON |

**PLAINTIFF'S RESPONSE TO DEFENDANT, SIXTY FIFTH AND ONE'S, MOTION TO ENFORCE INJUNCTION REGARDING STATE COURT CLAIMS BROUGHT BY PUTATIVE CLASS REPRESENTATIVE, RALPH MANGIARELLI, JR.**

COMES NOW Plaintiff, Ralph Mangiarelli, Jr., by and through undersigned counsel, hereby files Response to Defendant, Sixty Fifth and One's Motion to Enforce Injunction Regarding State Court Claims Brought by Putative Class Representative, Ralph Mangiarelli, Jr., and as grounds for this response states:

1. The Plaintiff, Ralph Mangiarelli, Jr., purchased a unit located in the Lauderdale One condominium complex located at 2401 & 2421 NE 65th Street, Ft. Lauderdale, Florida. The Lauderdale One complex is made up of two separate buildings. Building One has the address of 2421 NE 65th Street, Ft. Lauderdale, Florida and Building Two has the address of 2401 NE 65th Street, Ft. Lauderdale, Florida.

2. Mr. Mangiarelli's unit is located in Building Two; and his exact address is 2401 NE 65th Street, Unit 306, Ft. Lauderdale, Florida.

3. Building One, which has the address of 2421 NE 65th Street, Ft. Lauderdale, Florida, is the only building within this complex that contains defective Chinese drywall. Further, individual condominium units within this building also contain defective Chinese drywall.

4. Since all parties confirmed that Building One, 2421 NE 65th Street, Ft. Lauderdale, Florida, contained defective **"Knauf"** Chinese drywall, this building, and the individual units within the building were considered for the Knauf settlement and an individual "class" settlement agreement was entered into for the remediation of the building located at 2421 NE 65th Street, Ft. Lauderdale, Florida. (See settlement agreement attached hereto as Exhibit "A".

5. The other building within this community, and the individual units within that building, were also inspected for defective Chinese drywall and all parties agreed that the building located at 2401 NE 65th Street, Ft. Lauderdale, Florida, and the units within this building, did not contain defective Chinese drywall. As a result, the individuals that owned units within this building did not qualify for the "Lauderdale One" settlement and/or the "Knauf" settlement because they did not meet the definition of a residential class member.

6. The Plaintiff, Mr. Mangiarelli, individually and as the class representative has filed a lawsuit within the Broward Circuit Court, Case No.: 10-11665 (11), styled as Richard A. Hamburg, et al. v. Sixty Fifth and One LLC et al. Within this complaint Mr. Mangiarelli has made various allegations (based on the current state of the pleadings these allegations must be deemed to be true):

In Paragraph three he clearly alleges that his unit is located within the Lauderdale One Complex - but is located in the non-defective building:

> 3. "The Plaintiff, Ralph Mangiarelli Jr, is and at all relevant times has been the owner of a unit located in the Lauderdale One Condominium complex, specifically, the unit located at 2401 NE 65th Street Unit 306, Fort Lauderdale, FL 33308, and is otherwise sui juris."

Further, in paragraph eleven he alleges the type of damages he has suffered and this prayer for relief does not include a demand for compensation for the remediation of his unit

and/or of the building (Specifically, because nowhere in the complaint does the Plaintiff allege that the building and/or unit were constructed with "defective" Chinese drywall.

> 11. This latent defect has now caused damage to the Plaintiff, Ralph Mangiarelli, Jr. Mr. Mangiarelli, Jr., has suffered the following damage:
>
> Damages in the form of monetary damages for the loss of use and enjoyment of the unit; and loss of market value of the unit

Finally, when defining the class of individuals that may be included in this class, Mr. Mangiarelli specifically alleges that the class is for individuals who own units within the "non-defective" building located at 2421 NE 65th Street, Ft. Lauderdale, Florida.

> "All owners of individual condominium units in the building which is located at 2401 NE 65th Street, Fort Lauderdale, FL 33308, which is part of the Lauderdale One condominium development, who have suffered loss of market value due to the discovery of defective Chinese drywall in the sister building, located at 2421 NE 65th Street, Ft. Lauderdale, Florida. Defendants, their officers, directors, subsidiaries, or any person or other entity related to, affiliated with or employed by Defendants are excluded from the Class Definition."

7. Within the Defendant's Motion, the Defendant claims that an injunction should be entered by this Federal Court because Mr. Mangiarelli is a member of the "Knauf" class and, as a member of the class, he failed to opt out of the class. One only needs to look at the terms of the class action as approved by this Court to understand that this is simply not true. The definition of the "Residential" class that is contained within the "Knauf" class action settlement states as follows:

> "1.1.2.1. The Residential Owner Subclass: All members of Class who are owners of and reside or have resided in Affected Property ("Residential Owners")...."

Further, "Affected Property" is defined within the settlement agreement as:

> "Affected Property defined as shall mean any real or personal property, residential or commercial, containing KPT Chinese drywall."

8. Based on the definition of the class, and based on the factual allegations contained within the Third Amended Complaint (which should be deemed at this stage as true), it is clear that Mr. Mangiarelli is not a class member. Further, it is obvious that based on this clear and unambiguous definition of the class, if Mr. Mangiarelli had presented his claim timely to the class administrator but had no evidence that his unit "contained KPT Chinese drywall" and/or no evidence that the building where his unit is located (2421 NE 65th Street, Ft. Lauderdale, Florida) "contained KPT Chinese drywall", his claim would have been denied.

9. Therefore, if this Court simply compares the allegations contained in Mr. Mangiarelli's Third Amended Complaint to the definition of the class - Mr. Mangiarelli is simply not a class member and, therefore, had no duty to "opt out."

**WHEREFORE**, Defendant's Motion for Enforce Injunction Regarding State Court Claims Brought by Putative Class Representative, Ralph Mangiarelli, Jr., should be denied.

> Respectfully submitted,
> /s/ C. David Durkee, Esq.
> ROBERTS & DURKEE, P.A.
> Alhambra Towers
> Penthouse 1 – Suite 1603
> 121 Alhambra Plaza
> Coral Gables, FL 33134
> Phone: (305) 442-1700
> Fax: (305) 442-2559
> durkee@rdlawnet.com
> *Counsel for Individual Plaintiffs*
>
> Mark Milstein, Esq.
> Allison R. Willett, Esq.
> MILSTEIN ADELMAN, LLP
> 2800 Donald Douglas Loop North
> Santa Monica, CA 90405
> Phone: (310) 396-9600
> Fax: (310) 396-9635
> *Counsel for Individual Plaintiffs*

Dated: August 4, 2014.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served to all parties by electronically uploading the same to Lexis Nexis File & Serve and was electronically filed with the Clerk of Court of the United Sates Court for the Eastern District on this 4th day of August, 2014.

By: */s/ C. David Durkee*
C. David Durkee

# EXHIBIT "A"

## Confidential Term Sheet Agreement for
## the Resolution of Claims relating to Lauderdale One

This confidential term sheet ("Term Sheet") reflects the terms of an agreement between Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf International GmbH, Knauf Insulation GmbH (referred to in MDL 2047 as Knauf Insulation USA), Knauf AMF GmbH & Co. KG, Knauf UK GmbH, Knauf do Brasil Ltda., Gebr. Knauf Verwaltungsgesellschaft KG, PT Knauf Gypsum Indonesia, or Knauf Gips KG (collectively "Knauf Entities") and, on behalf of all individual unit owners, the Lauderdale One Condominium Association, Inc. (the "Condominium Association"), by which the Knauf Entities will remediate certain units located in Lauderdale One, a condominium located at 2421 N.E. 65th Street, Ft. Lauderdale, Florida.

WHEREAS, on October 14, 2010, the Knauf Entities and the MDL Plaintiffs' Steering Committee (the "PSC") in *In re: Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047 (the "MDL") entered into a Settlement Agreement for the Demonstration Remediation of Homes with KPT Drywall (the "Demonstration Remediation Agreement") to create a program (the "Program") to remediate homes that contain all or substantially all drywall manufactured by KPT ("KPT Chinese Drywall");

WHEREAS, on December 20, 2011, the Knauf Entities and the PSC entered into a Settlement Agreement as Amended on September 4, 2012 Regarding Claims Against the Knauf Entities in MDL 2047 [Rec. Doc. 12061-5] ("Class Settlement Agreement"), which based on the Program created by the Demonstration Remediation Agreement, provides property owners, Multiple-Unit Property Governing Bodies, as that term is defined in Section 1.40 of the Class Settlement Agreement, and Tenants, as that term is defined in Section 1.76 of the Class Settlement Agreement, a means for resolving their KPT Chinese Drywall-related claims;

WHEREAS, on January 10, 2012, the MDL Court preliminarily approved the Class Settlement Agreement;

WHEREAS, pending the MDL Court's final approval of the Class Settlement Agreement, and irrespective of whether the Class Settlement Agreement is finally approved, the Knauf Entities, are attempting to resolve the claims of Multiple Unit Property Governing Bodies, owners of individual units in Multiple Unit Properties, as that term is defined in Section 1.35 of the Class Settlement Agreement, and Tenants;

WHEREAS, under the terms of the Class Settlement Agreement, Lauderdale One is a Multiple Unit Property and the Condominium Association is a Multiple Unit Property Governing Body;

WHEREAS, Lauderdale One contains a mix of units occupied by the owners of those units or the owners' family members ("Owner-Occupied Units") and units operated as rental properties ("Renter-Occupied Units");

WHEREAS, the Condominium Association and certain unit owners and/or tenants in Lauderdale One have asserted claims against the Knauf Entities as a result of allegedly reactive KPT Chinese Drywall;

THEREFORE, for good and valuable consideration, the parties have agreed on the following terms:

I. Remediation of Lauderdale One

   A. Notwithstanding anything to the contrary in the Demonstration Remediation Agreement or the Class Settlement Agreement, the Knauf Entities will fund the remediation of the units listed on Exhibit A pursuant to the terms of Section 4.3.1 of the Class Settlement Agreement and the Remediation and Relocation Plan described in Paragraph I (D) below.

      1. The remediation of units that do not contain KPT but for which the Unit Owners, though the Condominium Association, have provided evidence claiming damage or loss resulting from infiltration or migration from KPT board in adjacent units, including but not limited Units 206, 306, 406 and 407 and to the introduction of a KPT board in Unit No. 217, will be considered on a case by case basis to determine what, in any, remediation consistent with the Class Settlement Agreement may be warranted. Should a dispute regarding remediation of a migration or infiltration damaged unit under this Section arise, the Knauf entities, the owner of the unit, and the Condominium Association shall meet and confer in an attempt to resolve the dispute, and to the extent the dispute is not resolved within 5 business days, the dispute shall be submitted to the Special Master pursuant to the Class Settlement Agreement, or to Judge Eldon Fallon, presiding over the MDL, who shall resolve the dispute on an expedited basis if possible, which shall be final and binding on all parties.

   B. Before remediation commences, the Knauf Entities must receive the following (collectively referred to as the "Qualifying Materials"):

      1. From the owner of each unit on Exhibit A, (i) a Work Authorization Agreement (Exhibit F to the Demonstration Remediation Agreement) and (ii) an Owner Release in the form annexed as Exhibit C;

      2. From the Condominium Association, a Multiple Unit Property Governing Body Release in the form annexed as Exhibit D;

      3. From the owner of each unit on Exhibit B, an Owner Release, in the form annexed as Exhibit C;

      4. To the extent that there are tenants who rent any of the units on Exhibit A or B ("Renters"), from each such Renter, a Renter Release in the form annexed as Exhibit E. Tenants are required to sign a Renter Release only if they accept the one-time payment of $750 per unit in accordance with Section II.C.1

2

C. In addition to the Knauf Entities' receipt of the Qualifying Materials, commencement of the remediation is preconditioned on all tenants vacating Lauderdale One according to the Remediation and Relocation Plan described in Paragraph I (D) below. The Condominium Association shall be responsible for ensuring compliance with the Remediation and Relocation Plan.

    1. If any owner of a unit on Exhibit A or B or Renter refuses to comply with the Remediation and Relocation Plan, the Knauf Entities shall have the right to terminate this Term Sheet.

D. Remediation and Relocation Plan

    1. The remediation will be conducted by Moss & Associates, LLC ("Moss"), the Lead Contractor under the Class Settlement Agreement. Moss & Associates will conduct the remediation pursuant to the following Remediation and Relocation Plan:

        a) Regardless of whether a unit will be remediated, during the remediation of units on a specific floor, every unit on that floor will need to be vacant.

        b) The remediation will commence on floor 6. Prior to the commencement of the remediation on floor 6, all tenants on that floor will need to vacate Lauderdale One.

        c) Once Moss completes the remediation of floor 6, owners and tenants on that floor will be permitted to move back into their units.

        d) During the remediation of floor 6, Moss will commence with the remediation of floors 4 and 5. Prior to the commencement of the remediation of floors 4 and 5, all tenants on those floors will need to vacate their units. Once Moss completes the remediation of floors 4 and 5, owners and tenants on those floors will be permitted to move back into their units.

        e) After the completion of floor 5 but prior to the completion of floor floor 4, Moss will commence the remediation of floor 3. Prior to the commencement of remediation of floor 3, all tenants on those floors will need to vacate their units. Once Moss completes the remediation of floor 3, owners and tenants on those floors will be permitted to move back into their units.

        f) After the completion of floor 4 but prior to the completion of floor 3, Moss will commence the remediation of floor 2. Prior to the commencement of remediation of floor 3, all tenants on those floors will need to vacate their units. Once Moss completes the remediation of floor 2, owners and tenants on those floors will be permitted to move back into their units.

3

2. Two months prior to the commencement of the remediation, Moss shall provide the Condominium Association with a detailed schedule for the remediation of Lauderdale One. Such schedule will include specific dates for tenants of each specific unit to vacate and move back in to Lauderdale One.

3. The Knauf Entities will use their best efforts to ensure that Moss will work cooperatively with the Condominium Association to ensure that adequate notice is given to the Condominium Association on the commencement of remediation, so that the Condominium Association can give its unit owners timely notice for remediation as required under its Condominium Association agreements.

4. If any unit owner or tenant refuses to comply with the Remediation and Relocation Plan, the Association shall be granted additional reasonable time to attempt a legal remedy and The Knauf entities shall provide an extension of a project start date to accommodate the legal process.

II. Additional Compensation for Owners and Renters

Subject to receipt of the Qualifying Materials and the materials referenced below, within five business days after the owners of the units on Exhibit A and B receive notice of the actual move-out date pursuant to the Work Authorization Agreement, the Knauf Entities shall, in addition to funding the remediation of the units on Exhibit A in accordance with Paragraph I (A), will provide additional compensation to the owners of the units on Exhibit A and B and the Renters according to the criteria below. Should any dispute arise under this Section, including but not limited to the status of occupancy of a unit or documentation substantiating Lost Rent Claims, the Knauf entities, the owner and the Condominium Association shall meet and confer in an attempt to resolve the dispute, and to the extent the dispute is not resolved within 5 business days, the dispute shall be submitted to the Special Master pursuant to the Class Settlement Agreement, or to Judge Eldon Fallon, presiding over the MDL, who shall resolve the dispute within on an expedited basis if possible, which shall be final and binding on all parties.

A. Owners of Owner-Occupied Units

1. Owners of Owner-Occupied Units shall receive the Other Covered Expenses, as that term is defined in Section 1.45 of the Class Settlement Agreement. The Other Covered Expenses shall be paid in accordance with the Class Settlement Agreement.

B. Owners of Renter-Occupied Units

1. Subject to Paragraph II (B) (2), owners of Renter-Occupied Units shall be reimbursed upfront for any documented lost-rent during the time that their unit will need to be vacant according to the Remediation and Relocation Plan described in Paragraph I (D) ("Lost Rent Claims").

2. Conditions for Reimbursement of Lost Rent Claims

4

      a) The owner of each Renter-Occupied Unit on the Effective Date or any Unit last rented within the six (6 months) prior to the Effective Date must provide the Knauf Entities, through the Condominium Association, documentation of the most recent monthly rent for the Renter Occupied Unit in the form of an executed lease.

      b) For payments made to Owners of Renter-Occupied Units under this Section, the Knauf Entities shall seek a credit against the Other Loss Fund pursuant to Section 4.6.2 of the Class Settlement Agreement. The Knauf Entities shall only seek a credit not to exceed such owner's rights of recovery for Lost Use, Sales and Rentals pursuant to Section 4.7.1.2 of the Class Settlement Agreement. The Knauf Entities shall have the right to terminate this Term Sheet if the PSC and/or the MDL Court do not approve such a credit.

  C.  Compensation for Renters

      1. Renters shall receive a single one-time payment of $750 per unit. The Knauf Entities shall seek a credit against the Other Loss Fund pursuant to Section 4.6.2 of the Class Settlement Agreement for payments made under this Section. The Knauf Entities shall have the right to terminate this Term Sheet if the PSC and/or the MDL Court do not approve such a credit.

III.  Releases, Reserved Claims, and Other Consideration

  A.  Releases from Unit Owners

      1. As consideration for the above, owners that qualify for remediation and owners of units in Lauderdale One with claims made, or who intend to make claims, against Knauf, regardless of whether the owner's unit will be remediated, shall release and relinquish all rights that such owner has or may have against the Knauf Entities arising out of or relating to the KPT Chinese Drywall in Lauderdale One, and all persons or entities who furnished services for, or in any way facilitated or assisted in, the installation of KPT Chinese Drywall in Lauderdale One, including without limitation, any actual or potential defendants, including but not limited to, contractors, builders, suppliers, designers, real estate agents, hangers, and/or consultants, and their respective insurance carriers; and all of their past, present, and future parents, subsidiaries, affiliates, controlling persons, officers, directors, employees, shareholders, suppliers, distributors, contractors, agents, servants, counsel, and insurers; and all predecessors, successors, assigns, heirs, executors, estate administrators, any person who may have a claim of indemnity or contribution against the Knauf Entities, and personal representatives of each of the foregoing, separately or collectively (collectively, the "Released Parties"). This general release shall include without limitation past, present, and future

5

remediation, construction, reconstruction, repair or claims for any and all damages, compensatory and/or punitive and/or other, penalties, costs, expenses, attorney's fees, and interest, pre-judgment and/or post-judgment, and includes those KPT Chinese Drywall-related damages of the unit owner of which the unit owner is not aware, and those the unit owner does not anticipate, with the sole exception of the Reserved Claims defined in Paragraph III (A) (2) below.

2. The unit owner shall reserve the following claims (the "Reserved Claims"):

a) Claims against the Knauf Entities by the unit owner for bodily injury and economic injuries solely to the extent that such claims are covered by the Other Loss Fund created by the Class Settlement Agreement. This agreement allows Unit Owners in Lauderdale One with or without KPT in their unit to make a claim against the Other Loss Fund as a Class Member for any Other Loss not already provided in this agreement to the extent that such claims are covered by the Other Loss Fund created by the Class Settlement Agreement. . In the event that the MDL Court does not grant final approval of the Class Settlement Agreement or in the event that the Knauf Entities or PSC exercise their termination rights under the Class Settlement Agreement, the unit owner shall reserve (i) the unit owner's bodily injury claims and (ii) claims covered by Paragraph III (C) of the Demonstration Remediation Agreement, and the Knauf Entities shall reserve all defenses, including jurisdictional defenses, as to bodily injury claims.

b) Claims against the Knauf Entities by the unit owner's counsel or counsel for the HOA, if the unit owner does not have separate counselfor "Attorneys' Fees" as defined in Paragraph IX of the Demonstration Remediation Agreement and, upon final approval by the MDL Court, if such final approval is granted, pursuant to the terms of the Class Settlement Agreement. In the event that the MDL Court does not grant final approval of the Class Settlement Agreement or in the event that the Knauf Entities or the PSC exercise their termination rights under the Class Settlement Agreement, claims for Attorneys' Fees shall be resolved pursuant to Paragraph X of the Demonstration Remediation Agreement; and

c) Claims against the Knauf Entities in connection with the performance of, and any obligations arising under, the Term Sheet, the Demonstration Remediation Agreement, including, but not limited to warranty claims and performance of punchlist items; and, upon final approval, claims in connection with the performance of, and any obligations arising under, the Class Settlement Agreement.

B. Release from Condominium Association

1. Pursuant to Paragraph I (B) (2), the Condominium Association shall release the Released Parties from and against all claims and future claims relating to the KPT Chinese Drywall in Lauderdale One, except for the following ("Condominium Association Reserved Claims"): (1) Claims by the Condominium Association's counsel for "Attorneys' Fees", as defined in Paragraph IX of the Demonstration Remediation Agreement, which claims shall include the value of the funding of the remediation of the units on Exhibit A, Other Covered Expenses in accordance with Section 4.3.1.1 and 4.3.1.2 of the Class Settlement Agreement, and any additional compensation to the owners and tenants of the units on Exhibit A and B according to the criteria set forth in Paragraphs II(A), (B) and (C). Claims for Attorneys' Fees shall be decided pursuant to the terms of the Class Settlement Agreement. In the event that the MDL Court does not grant final approval of the Class Settlement Agreement, or in the event that the Knauf Defendants or the PSC exercise their termination rights under the Class Settlement Agreement, claims for Attorneys' Fees shall be resolved pursuant to Paragraph X of the Demonstration Remediation Agreement. (2) Claims in connection with the performance of, and any obligations arising under, the Demonstration Remediation Agreement, including, but not limited to warranty claims and performance of punchlist items; and, upon final approval, claims in connection with the performance of, and any obligations arising under, the Class Settlement Agreement.

C. Release from Renters

Pursuant to Paragraph I (B) (4), any Renter shall release the Released Parties and the Condominium Association from and against all claims and future claims relating to the KPT Chinese Drywall in Lauderdale One, except for claims against the Knauf Entities for bodily injury and economic injuries solely to the extent that such claims are covered by the Other Loss Fund created by the Class Settlement Agreement and solely to the extent that the Renter is a class member under the Class Settlement Agreement and seeks to resolve such claims by participating in the Class Settlement Agreement.

IV. Confidentiality

The parties to this Term Sheet, and every person employed or retained by them who has any knowledge of any term herein shall keep confidential and agree not to disclose to any other party, person, or entity the terms of this Term Sheet, or the details of any settlement negotiations, except for the following limited purposes: (1) Lead and Liaison counsel for the PSC will be given an opportunity to review this Term Sheet; (2) all unit owners and tenants in Lauderdale One will be given an opportunity to review this Term Sheet; (3) in an action by either of the Parties to enforce or interpret the terms of the Term Sheet; (4) as may be required for purposes of reporting to the Internal Revenue Service or other appropriate taxing authority; (5) as required by law.

7

V. No Admission of Liability

Nothing in this Term Sheet shall constitute (1) an admission of liability or fault of any kind on the part of the Knauf Entities, who expressly deny any liability to the Condominium Association, and the owners and tenants of any units in Lauderdale One and who are entering into this Term Sheet agreement to avoid the expense and uncertainty of litigation; (2) an admission of, or consent to, jurisdiction or waiver of any jurisdictional defenses, except as provided in the Demonstration Remediation Agreement and, in the event the MDL Court grants final approval, the Class Settlement Agreement; or (3) consent to service by the Knauf Entities. Neither this Term Sheet nor any agreement shall be admissible in evidence in any proceedings except in an action to enforce the terms of this Term Sheet, the Demonstration Remediation Agreement, or in the event the MDL Court grants final approval, the Class Settlement Agreement.

VI. Entire Agreement

The Condominium Association and the Knauf Entities acknowledge that this Term Sheet is the entire agreement among the Condominium Association and the Knauf Entities. The parties have not received or relied on any agreements or promises other than as contained in writing in this Term Sheet, including the attached Exhibits, and applicable sections of the Demonstration Remediation Agreement and the Class Settlement Agreement.

VII. Effectiveness

This Term Sheet shall become effective immediately following execution by all signatories provided for below.

Dated: December 12, 2012

Bruce Steckler
Baron and Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Phone: 214-521-3605
*On behalf of the Condominium Association*

Allison Grant
Allison Grant, P.A.
730 S. Federal Highway
Lake Worth, FL 33460
Phone: 561-994-9646
*On behalf of the Condominium Association*

Kerry J. Miller
Frilot L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, LA 70163
Phone: 504-599-8194
*On behalf of the Knauf Entities*

8

V.  No Admission of Liability

Nothing in this Term Sheet shall constitute (1) an admission of liability or fault of any kind on the part of the Knauf Entities, who expressly deny any liability to the Condominium Association, and the owners and tenants of any units in Lauderdale One and who are entering into this Term Sheet agreement to avoid the expense and uncertainty of litigation; (2) an admission of, or consent to, jurisdiction or waiver of any jurisdictional defenses, except as provided in the Demonstration Remediation Agreement and, in the event the MDL Court grants final approval, the Class Settlement Agreement; or (3) consent to service by the Knauf Entities. Neither this Term Sheet nor any agreement shall be admissible in evidence in any proceedings except in an action to enforce the terms of this Term Sheet, the Demonstration Remediation Agreement, or in the event the MDL Court grants final approval, the Class Settlement Agreement.

VI. Entire Agreement

The Condominium Association and the Knauf Entities acknowledge that this Term Sheet is the entire agreement among the Condominium Association and the Knauf Entities. The parties have not received or relied on any agreements or promises other than as contained in writing in this Term Sheet, including the attached Exhibits, and applicable sections of the Demonstration Remediation Agreement and the Class Settlement Agreement.

VII. Effectiveness

This Term Sheet shall become effective immediately following execution by all signatories provided for below.

Dated: December __, 2012

Bruce Steckler  
Baron and Budd, P.C.  
3102 Oak Lawn Avenue, Suite 1100  
Dallas, TX 75219  
Phone: 214-521-3605  
*On behalf of the Condominium Association*

Kerry J. Miller  
Frilot L.L.C.  
1100 Poydras Street, Suite 3700  
New Orleans, LA 70163  
Phone: 504-599-8194  
*On behalf of the Knauf Entities*

Allison Grant  
Allison Grant, P.A.  
730 S. Federal Highway  
Lake Worth, FL 33460  
Phone: 561-994-9646  
*On behalf of the Condominium Association*

8