UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | : | MDL NO. 2047 |
| IN RE: CHINESE MANUFACTURED DRYWALL | : | |
| PRODUCTS LIABILITY LITIGATION | : | SECTION L |
| | : | JUDGE FALLON |
| | : | MAGISTRATE JUDGE |
| .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. : | | WILKINSON |

**Final Order**

Before the Court is an appeal from the Special Master's judgment in the drywall litigation involving a dispute between petitioner homeowners William Ritter and his family ("the Ritters") and Knauf as to whether the Ritters are entitled to recover, as part of the self-remediation costs compensable under the Third Amended Knauf Class Settlement Agreement, expenses incurred in replacing their kitchen cabinets and wood floors.   Knauf contends that these expenses are not compensable because the Ritters did not remove, store, and reinstall the cabinets and retain and protect the floors during remediation, as required by the Remediation and Already Remediated Properties Protocols within the settlement agreement.  The Ritters argue, *inter alia*, that the cabinets and floors were damaged during remediation, and that the protocols permit recovery for these items if damaged.

The Special Master held that the replacement costs were ineligible for reimbursement, and accordingly decreed that Knauf pay the Ritters $130,567.50, the total cost of their remediation work less the cost of replacing the cabinets and floors.  The Ritters timely appealed the Special Master's judgment and decree, as permitted by § 4.2.8 of the settlement agreement.  The Court has reviewed the record, the Special Master's opinion, and the applicable law, and now issues this order.  In so doing, this "Court's decision on any objections is final, with no further appeals permitted." *E.g.*, (Rec. Doc. 16407-3 § 4.2.9).

1

**I.       BACKGROUND**

The Ritters purchased their home in early 2008, and shortly thereafter discovered it was built with contaminated Knauf drywall.  *See* (Rec. Doc. 17739-4 at 1).  The MDL was formed in 2009 to adjudicate claims brought by homeowners affected by the drywall against the Knauf and other entities, and pretrial proceedings were consolidated in this Court.  *See, e.g.*, (Rec. Doc. 1). After a period of expedited discovery, bellwether trials commenced. In 2010, this Court issued findings of fact and conclusions of law after the bellwether trial in the case of *Hernandez v. Knauf Gips KP*.  *See, e.g.*, (Rec. Doc. 2380); (Rec. Doc. 2713).  The Court's decision established a remediation protocol. Knauf agreed to institute a pilot program in which several houses were remediated using the Court's remediation protocol to test the practicability of the protocol. With some alterations, the protocol was monetized and formed the basis for a proposed settlement program, approved by this Court on February 7, 2013. (Rec. Docs. 16407-3, 16570).

The Ritters self-remediated their home in July of 2011.  (Rec. Doc. 17739-3 at 1 ¶ 3).  While self-remediating, they replaced both their kitchen cabinets and wood floors.  (Rec. Doc. 17739-5 at 1). The Ritters, seeking reimbursement for the self-remediation work, agreed to the terms of the settlement agreement, choosing to bind themselves to its terms.  *See, e.g.*, (Rec. Doc. 17817-2 at 1).

The terms of the settlement include a description of the nature and extent of remediation work the defendants agree to fund in order to settle claims against it.  *See e.g.*, (Rec. Doc. 12061-14) ("Remediation Protocol").  The terms also offer to settle claims brought by owners who remediated their properties before the settlement was reached, and describes the expenses the defendants will compensate.  *See e.g.*, (Rec. Doc. 15742-3) ("Already Remediated Properties Protocol").

The Ritters sought reimbursement under those terms, and the defendants agreed to compensate all remediation costs except those incurred in replacing the cabinets and floors. *See* (Rec. Doc. 17817-2 at 1). The Ritters disagreed, insisting they were entitled to a full recovery. *See* (Rec. Doc. 17817-2 at 1). Unable to settle the dispute, the parties conducted a binding mediation before the Special Master, who ultimately held that the Ritters were not entitled to recover the costs of replacing the cabinets and wood floors. *See* (Rec. Doc. 17817-2 at 1). The Ritters appealed. (Rec. Doc. 17739-1).

## II.     LAW & ANALYSIS

### A.     Reliance on *Hernandez*

First, the Ritters cite this Court's opinion in *Hernandez v. Knauf Gips KP*, which stated, *inter alia*, that "[i]t is not worth the cost to attempt to remove, store, and replace [cabinets and other fixtures], when it is likely they will be damaged . . . [a]ccordingly these items must be replaced," and that "[t]he wood floors in the Hernandez home may need to be removed and replaced if they are damaged during the remediation process." (Rec. Doc. 17739-1 at 2-3, ¶ 4) (citing Trial Tr. Vol. I, 67:18-168:24 (Rutila); Trial Tr. Vol. IV, 758:11-16 (Mar. 18, 2010); Trial Tr. Vol. IV, 757:9-14). The Ritters argue that their reliance on *Hernandez* entitles them to recover the costs of replacing the cabinets and floors. *See* (Rec. Doc. 17739-1 at 5, ¶ 9-11).

It does not. *See infra*. Knauf correctly argues, and the Special Master found, that the terms of the settlement agreement alone govern the Ritters' recovery. *See, e.g.*, (Rec. Doc. 17817 at 2-3); (Rec. Doc. 17817-2 at 1-2). *Hernandez* was a bellwether trial, which did not serve to bind any other parties to its decision. The Ritters, moreover, chose to settle their claim,

and in doing so, assented to the terms of the settlement agreement.  *See e.g.*, (Rec. Doc. 17817-2 at 1).  They may not, therefore, recover expenses not reimbursable thereunder.

        **B.**       **Conformity with the Remediation Protocol**

Second, the Ritters contend that the replacement costs for the cabinets and wood floors are reimbursable because the replacements were "reasonably consistent" with the Remediation Protocol and thus meet the eligibility criteria required by the Already Remediated Properties Protocol.  *See* (Rec. Doc. 17739-1 at 5-6 ¶ 8, 12); *see generally*, (Rec. Doc. 12061-6 at 5).

The Already Remediated Properties Protocol provides for reimbursement of reasonable costs to owners who self-remediated their properties.  *See, e.g.*, (Rec. Doc. 17817-1 at 4); (Rec. Doc. 12061-6 at 5).  That Protocol also provides criteria for determining reasonable costs, which require that "[o]nly remediation work reasonably consistent with the Remediation Protocol shall be eligible for reimbursement."  *E.g.*, (Rec. Doc. 17817-1 at 4); (Rec. Doc. 12061-6 at 5).

The Remediation Protocol requires that owners "[r]emove, store, and reinstall the following to the extent such fixtures interfere with the removal of the drywall . . . " and continues that "[i]n the event of any [c]ontamination to such fixtures caused by the possible problem drywall or damage from the drywall removal or replacement, such fixtures will be replaced."  *E.g.*, (Rec. Doc. 12080-10 at 2-3, § I (E)) ("Fixtures").  The protocol defines "fixtures" by listing several items, including "cabinets."  *See, e.g.*, (Rec. Doc. 12080-10 at 3, § I (E)(2)).  Further, it requires that owners "[r]emove and replace all carpet, carpet padding, laminate flooring, and laminate padding.  All other flooring will remain in place and be protected during the remediation work.  *E.g.*, (Rec. Doc. 12080-10 at 4, § I (I)) ("Carpet and Flooring").  Finally, the protocol provides that:

> [b]uilding material, building systems, fixtures and [a]ppliances that will be
> removed and reinstalled shall be placed in storage.  Building materials, building
> systems, fixtures and [a]ppliances that will be retained in place will be protected
> during the remediation work.  Any [b]uilding materials, building systems,
> fixtures, or [a]ppliances that are retained, but damaged during the remediation
> work, will be restored to the condition that existed prior to the start of the
> remediation work, and where necessary, replaced.

*E.g.*, (Rec. Doc. 12080-10 at 5, § I (L)) ("Items not Replaced").

The replacement of the Ritters' cabinets and floors was not consistent with the

Protocol.  *See infra*.  The Remediation Protocol requires that cabinets be removed, stored, and

reinstalled, but replaced only if contaminated by the drywall or damaged in the removal process,

s*ee* (Rec. Doc. 12080-10 at 2-3, § I (E)) ("Fixtures"), and that flooring other than carpets or

laminates be kept in place and protected.  *See* (Rec. Doc. 12080-10 at 4, § I (I)); (Rec. Doc.

12080-10 at 5, § I (L)).  The Ritters' memorandum in support of their motion presumably refers

to Mr. Ritter's statement as support for the proposition that the cabinets were damaged.  *See*

(Rec. Doc. 17739-1 at 6 ¶ 13) (referring to *e.g.*, (Rec. Doc. 17817-3 at 2 ¶ 6).  To the contrary,

Mr. Ritter stated that " . . . [this Court] had found that attempting to preserve these types of

builder grade cabinets was not worth the cost to attempt to remove, store and replace the items

and it was *likely* they would be damaged if such attempts were made.  *As such*, we removed and

replaced the cabinets." (Rec. Doc. 17817-3 at 2 ¶ 6) (emphasis added).  Mr. Ritter's statement

indicates that the cabinets were replaced in *anticipation* of damage and not as a result of

it.  Regarding the floors, even if they were damaged, the Ritters do not show that they took any

steps to *protect* them, as the Remediation Protocol requires.  *See, e.g.*, (Rec. Doc. 17817-3 at 2 ¶

5

7), *see generally*, (Rec. Doc. 12080-10 at 4, § I (I)).  Knauf also correctly points to the Ritter's

contract for the remediation work, which included replacement of the cabinets and floors as an

indication that the replacement was not in response to damage from remediating the drywall and

was contemplated beforehand.  *See* (Rec. Doc. 17817 at 4).

### C.       Interpretation of Already Remediated Properties Protocol § I (D)(1)(b)(1)

Finally, the Ritters emphasize a different passage in the Already Remediated Properties

Protocol as support for recovery of the replacement costs: "[t]o the extent that anything in the

[a]ffected [p]roperty was replaced . . . any reimbursement costs of the specific item that was in

place prior to the remediation."  *See* (Rec. Doc. 17739-1 at 4, 6) (referring to, *e.g.*, (Rec. Doc.

12061-6 at 5 § I (D)(1)(b)(1))).

The Ritters, however, read this passage out of context.  It is a subsection under the second

criteria for determining reimbursable costs, which requires that "[a]ny upgrades made to the

[a]ffected [p]roperty are not eligible for reimbursement[,]" and should be read in light of this

heading.  Any replacement work for which a claimant seeks reimbursement is still independently

subject to the other requirement, in § I (D)(1)(a), that eligible remediation costs must have been

incurred in work reasonably consistent with the Remediation Protocol.  *See, e.g.*, (Rec. Doc.

12061-6 at 5 § I (D)(1)(a)).

That protocol requires that cabinets be removed, stored, and reinstalled and floors be

retained *and* protected.  *See, e.g.*, (Rec. Doc. 12080-10 at 2-3, § I (E)); (Rec. Doc. 12080-10 at 3,

§ I (E)(2)); (Rec. Doc. 12080-10 at 4, § I (I)).  The Ritters did not show that they executed these

required responsibilities.  *See supra*, § III (B).

**III.     CONCLUSION**

For the foregoing reasons, this Court upholds the Special Master's judgment and decree,

and IT IS THEREFORE ORDERED that Knauf pay William Ritter the sum of $130,567.50.


New Orleans, Louisiana, this 14th day of August, 2014.


ELDON E. FALLON
UNITED STATES DISTRICT JUDGE