## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

BRAXTON H. COLLINS and
KERRIE F. COLLINS                                                        PLAINTIFFS


VERSUS                                    CIVIL ACTION NO. 1:13-cv-297-LG-JMR


BASS HOMES, INC.;
ACE HARDWARE CORPORATION;
ACE HOME CENTER, INC.;
And All Unknown Fictitious Producer
Defendants, Distributor Defendants, Alter
Ego Defendants and Fictitious Defendants
2-150 to be identified through discovery and
Named by amendment or by substitution of party            DEFENDANTS

---

## AMENDED COMPLAINT
## (JURY TRIAL REQUESTED)

---

COME NOW the Plaintiffs, Braxton H. Collins and Kerrie F. Collins, (hereinafter "Plaintiffs") by and through undersigned counsel, and file this, their Amended Complaint against the Defendants, Bass Homes, Inc. (hereinafter "Bass Homes"), Ace Hardware Corporation (hereinafter "Ace Hardware"), Ace Home Center, Inc. and Fictitious Defendants 2 through 150 are those Producer Defendants, Distributor Defendants, Builder Defendants and Alter Ego Defendants whose identities and true names are currently unknown to the Plaintiffs (hereinafter "Fictitious Defendants"), and in support thereof would show unto this Honorable Court as follows, to-wit:

1                    Exhibit A

## PARTIES

1.      Plaintiffs, Braxton H. Collins and Kerrie F. Collins, are the owners of a residence located in Moss Point, Mississippi (the "Collins Residence").   The address of the Collins Residence is 10720 Hwy 614, Moss Point, MS 39562.   This is also the Collins' primary residence.   An inspection has revealed the presence of Defective Chinese drywall in this Residence.

2.      Defendant Bass Homes, Inc., ("Bass") is an Alabama corporation authorized to conduct business in the State of Mississippi, with its principal place of business located at 34661 State Hwy 59, Stapleton, AL 36578.  Bass Homes, Inc. is a residential construction company and is operating, conducting, engaging in, and carrying on a business or venture in this state and has an office or agency in this state.

3.      Defendant Ace Hardware Corporation. ("Ace") is a Delaware corporation authorized to conduct business in the State of Mississippi, with its principal place of business located at 2200 Kensington Court, Oak Brook, IL 60523-2100.  At all material times, Ace was in the business of distributing, supplying and/or selling residential drywall in Mississippi, and maintained multiple retail, office and/or warehouse locations in the State of Mississippi.

4.      Defendant Ace Home Center, Inc. is an Alabama Corporation authorized to conduct business in the State of Mississippi, with its principal place of business located at 21090 Alabama 59 South, Robertsdale, Alabama  36567.  At all material times, Ace was in the business of distributing, supplying and/or selling residential drywall in Alabama as a retail outlet.

5.      Fictitious Defendants 2 through 150 are those Producer Defendants, Distributor Defendants, Builder Defendants and Alter Ego Defendants who identities and true names are currently unknown to the Plaintiffs, who therefore sues Fictitious Defendants 2 through 150 by such fictitious names.

2

## JURISDICTION and VENUE

6.      The litigation of this controversy should proceed in this forum because the properties at issue are located in this County, the Plaintiffs reside in this County and the wrongful conduct is concentrated in this County.

7.      Defendants are foreign corporations that either are registered to conduct business in the State of Mississippi or that actually transacted business in Mississippi.

## FACTS

8.      On or about August 22, 2008, Braxton H. Collins and Kerrie F. Collins entered into a Building Agreement with Bass Homes, Inc. for the construction of a residence on real property located at 10720 Hwy 614 Moss Point, MS 39562.  See Building Agreement, Attached hereto as **Exhibit "A"**.

9.      In about September, 2008, Bass Homes, Inc. applied for a building permit for the Collins Residence.

10.     Thereafter, Defendant Bass Homes was the general contractor and built the Collins Residence located at 10720 Hwy 614 Moss Point, MS 39562.  Plaintiffs are informed and believe Ace Hardware supplied the drywall installed in the Collins Residence.

11.     A certificate of occupancy for the Collins Residence located at 10720 Hwy 614 Moss Point, MS 39562 was issued on or about February 5, 2009. Thereafter, the Collins family occupied the residence.

12.     On information and belief, Ace Hardware, by and through Ace Home Center, Inc., sold the drywall that Bass Homes, or the subcontractor hired by Bass Homes, installed in the Collins Residence.

13.     In or about November 2009, Plaintiffs determined that their Residence was built with drywall manufactured in China ("Defective Chinese Drywall").

3

14.     The material composition and offensive smell of the Defective Chinese Drywall in the Residences renders it inferior to American-made drywall and unfit for ordinary use in residential construction and emits a corrosive sulfur fume that places the home at great risk for fire and damages all electrical and, therefore, structural components.

15.     Defendants knew, or should have known, that the Defective Chinese Drywall that Bass Homes purchased from Ace Hardware, by and through Ace Home Center, Inc., and that Bass Homes installed, was going to be used in the construction of the Residence. Ace Hardware and Ace Home Center, Inc. also knew, or should have known, that residential homeowners, such as Plaintiffs, were foreseeable users of the Defective Chinese Drywall and that residential homeowners, such as Plaintiffs, required and expected the drywall to be fit for the ordinary purpose for which it was intended.

16.     Unlike American-made drywall, the Defective Chinese Drywall in the Residences emits several sulfur compounds, including, but not limited to, carbon disulfide, carbonyl sulfur, and hydrogen sulfide. The Defective Chinese Drywall in the Residence is also suspected to contain several other impurities which render it unfit for usage in residential construction. The sulfur based compounds emitted have created a sulfur odor which renders the drywall unfit for the ordinary purpose for which it was intended.

17.     The Defective Chinese Drywall emits these sulfur based compounds because it suffers from either a defective manufacturing and/or mining process.

18.     The corroded items described above are also unfit for the ordinary purpose for which they were intended. Plaintiffs are uncertain as to the cause of the corrosion and have not engaged in any act or activity which has led to or caused the corrosion in any way.

19.     The Defective Chinese Drywall in the Residence has and will continue to cause damage to the Residences and Plaintiffs' personal property, including structural damage.

4

20.    As a result of the foregoing, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to: economic damage, and other economic damages; damage to real and personal property; attorneys' fees and expenses; and court and/or administrative costs.

21.    As a result of Defendants' wrongful conduct, Plaintiffs' Residence must be repaired and have declined and will continue to decline in value by at least the cost of repair.

## COUNT I
## BREACH OF CONTRACT

22.    Plaintiffs incorporate by reference paragraphs 1 through 21 previously alleged as though fully set forth herein.

23.    Defendant Bass Homes sold the Residence to the Plaintiffs built with Defective Chinese Drywall.

24.    Defendant Bass Homes built the Residence with Defective Chinese Drywall.

25.    Defendant Ace Hardware, by and through Ace Home Center, Inc., sold the Defective Chinese Drywall which was used to build the Residence.

26.    Upon information and belief, Bass Homes purchased the Defective Chinese Drywall that it installed in the Residence from Ace Hardware, by and through Ace Home Center, Inc..

27.    The Defective Chinese Drywall was expected to and did reach the Plaintiffs' Residence without any substantial change in the condition to which it was sold.

28.    The Defective Chinese Drywall is defective and unreasonable dangerous and has caused damage because of the offensive odor and off gassing of sulfur compounds.

29.     The Plaintiffs, acting as reasonably prudent persons, could not have discovered that Defective Chinese Drywall was defective as herein mentioned or perceived its danger because the defects in the drywall were latent.

30.     Bass Homes breached the contract of warranty with Plaintiffs and the contract for sale, entitling Plaintiffs to an award of damages and performance of the contract.

31.     By and through Ace Hardware's and Ace Home Center, Inc.'s acts, they have breached the implied covenant of good faith and fair dealing relative to contracts of insurance and warranty and sale, causing Plaintiffs' damages

32.     In the alternative, the acts of the Defendants were grossly negligent, amounting to an independent tort, entitling Plaintiffs to an award of extra contractual damages.

33.     Defendants Bass Homes, Ace Hardware and Ace Home Center, Inc. are therefore strictly liable for the damages, punitive and actual, sustained by Plaintiffs.

34.     As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, incidental, and other related expenses.  Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Defendants Bass Homes, Ace Hardware and Ace Home Center, Inc., awarding damages, interest, costs, and attorneys' fees and such other relief as this Court may deem just and proper.

**COUNT II**
**NEGLIGENCE AND GROSS NEGLIGENCE**

35.     Plaintiffs incorporate by reference paragraphs 1 through 34 previously alleged as though fully set forth herein.

36.    Defendants owed a duty to Plaintiffs to exercise reasonable care in exporting, importing, distributing, delivering, supplying, selling, inspecting and installing the Defective Chinese Drywall, and in constructing the Residence, to insure that the Residence were constructed with materials that would not harm the inhabitants or the other property within the Residence.  Defendants also had a duty to adequately warn Plaintiffs about any unsafe materials used in the construction of the Residence known by Defendants.

37.    Defendants breached their duty to exercise reasonable care in exporting, importing, distributing, delivering, supplying, selling, inspecting and installing the Defective Chinese Drywall, and constructing the Residence by:

   (a)    causing and/or allowing Defective Chinese Drywall to be installed within the Residence;

   (b)    failing to investigate whether the Defective Chinese Drywall would harm inhabitants of the Residence or damage other property or work within the Residence;

   (c)    failing to warn Plaintiffs that the Residence contained Defective Chinese Drywall that could damage their property;

   (d)    failing to take reasonable measures that Defendants knew, or reasonably should have known, were necessary to protect the Plaintiffs from hazards associated with the Defective Chinese Drywall;

   (e)    failing to exercise reasonable care in their quality control practices;

   (f)    failing to comply with all applicable building codes;

   (g)    failing to take such other precautions as may be revealed through discovery.

38.    If Defendants had exercised reasonable care, they would have investigated the Defective Chinese Drywall and its adverse effects prior to selling or installing the Defective Chinese Drywall used in the Residences.  Further, Defendants could have warned Plaintiffs that the Defective Chinese Drywall may cause the problems described herein.

7

39.     Defendants' failure to exercise reasonable care constitutes a breach of duty.  The defects in the drywall were latent and could not have been reasonably discovered by Plaintiffs.

40.     As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs were harmed and have incurred damages, as described herein, including personal injuries and damage to other property in the Residence.

41.     Due to Defendants' negligence, Plaintiffs have sustained damages, including, but not limited to the diminution in property value, all costs associated with the removal and replacement of the Defective Chinese Drywall, all costs necessary to reconstruct Plaintiffs' Residence, and all costs associated with the repair or replacement cost of damaged property in the residence.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Defendants, awarding damages, interest, costs, and attorneys' fees and such other relief as this Court may deem just and proper.


### COUNT III
### BREACH OF IMPLIED WARRANTIES AND OTHER WARRANTIES

42.     Plaintiffs incorporate by reference paragraphs 1 through 41 previously alleged as though fully set forth herein.

43.     Notwithstanding the breach of the express warranty at issue herein, Bass Homes, through the sale of the subject residence, and the failure to remedy such defects, have breached implied warranties of fitness for a particular purpose and merchantability with respect to the sale of the defective residence.

44.     Notwithstanding the breach of the express warranty at issue herein, Ace Hardware, by and through Ace Home Center, Inc., through the sale of the drywall installed in the

Residence, and the failure to remedy such defects, have breached implied warranties of fitness for a particular purpose and merchantability.

45.     Such warranties include, but are not limited to, the warranties set forth in § 83-58-5, et seq., Mississippi Code of 1972, Annotated.  All such conditions precedent to enforcement of such warranties have been fulfilled.

46.     The material composition of the Defective Chinese Drywall in the Residence renders it inferior to American-made drywall and unfit for ordinary use in residential construction.

47.     Defendants knew, or should have known, that the Defective Chinese Drywall that Bass Homes purchased from Ace Hardware, by and through Ace Home Center, Inc., and that Bass Homes installed, was going to be used in the construction of the Residence.  Ace Hardware and Ace Home Center, Inc. also knew, or should have known, that residential homeowners, such as Plaintiffs, were foreseeable users of the Defective Chinese Drywall and that residential homeowners, such as Plaintiffs, required and expected the drywall to be fit for the ordinary purpose for which it was intended.

48.     Unlike American-made drywall, the Defective Chinese Drywall in the Residence emits several sulfur compounds, including, but not limited to, carbon disulfide, carbonyl sulfur, and hydrogen sulfide.  The Defective Chinese Drywall in the Residence is also suspected to contain several other impurities. The sulfur based compounds emitted have created a sulfur odor which renders the drywall unfit for the ordinary purpose for which it was intended.

49.     The Defective Chinese Drywall emits these sulfur based compounds because it suffers from either a defective manufacturing and/or mining process.

50.     The corroded items described above are also unfit for the ordinary purpose for which they were intended. Plaintiffs are uncertain as to the cause of the corrosion and have not engaged in any act or activity which has led to or caused the corrosion in any way.

51.     The odor caused by the use of Defective Chinese Drywall in the Residences renders the Residences unfit for the ordinary and general purpose of residential living.

52.     In addition, the accompanying corrosion of pipes, wiring, metal finishes and fixtures, including their HVAC system, and experienced failures of electronic products, including televisions and computers in the home also renders the Residence is unfit for the ordinary and general purpose of residential living.

53.     As a result of the use of Defective Chinese Drywall, the Residence does not meet the ordinary, normal standards reasonably to be expected of living quarters of comparable kind and quality.

54.     Despite having knowledge as to the use of inferior drywall in the home, Defendant Bass Homes sold the Residence to the Plaintiffs and built the Residence with Defective Chinese Drywall.

55.     As a result of Bass Homes' actions, Plaintiffs have suffered and will continue to suffer damage, including but not limited to: economic damages, including and other economic damages; damage to real and personal property; attorneys' fees and expenses; and court and/or administrative costs.

56.     As a result of Bass Homes' breach of the implied warranty of habitability and fitness, Plaintiffs are entitled to have the purchase price of the Residence restored to them by Bass Homes, together with any expenses there from, and for those damages and losses set forth above.

57.     As a result of Ace Hardware and Ace Home Center, Inc.'s actions, Plaintiffs have suffered and will continue to suffer damage, including but not limited to: economic damages, including and other economic damages; damage to real and personal property; attorneys' fees and expenses; and court and/or administrative costs.

58.     As a result of Ace Hardware and Ace Home Center, Inc.'s breach of the implied warranty of habitability and fitness, Plaintiffs are entitled to have the purchase price of the Residence restored to them by Bass Homes, together with any expenses there from, and for those damages and losses set forth above.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Bass Homes, Ace Hardware and Ace Home Center, Inc. awarding damages, interest, costs, and attorneys' fees and such other relief as this Court may deem just and proper.

## COUNT IV
## NEW HOME WARRANTY ACT

59.     The allegations of paragraphs 1 through 58 above are incorporated herein as if reproduced in full.

60.     Defendants failed to comply with Mississippi Code (Annotated) of 1972 §§ 83-53-1 through 83-53-17 by failing to construct the House to the standards contained in the building, mechanical-plumbing and electrical codes in effect in the county, state and federal Standard Building Codes, placing the House at risk for electrical fire and damaging the walls and other structural elements.

61.     The damages to Plaintiffs, including, but not limited to, those described herein were caused by Defendants' defiance of the New Home Warranty Act.

11

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Bass Homes, Ace Hardware and Ace Home Center, Inc., awarding damages, interest, costs, and attorneys' fees and such other relief as this Court may deem just and proper.

## COUNT V
## FAILURE TO PROCURE A WARRANTY

62.     The allegations of paragraphs 1 through 61 above are incorporated herein as if reproduced in full.

63.     Alternatively, if such warranty as represented by Defendants was not procured, Defendants are liable to Plaintiffs as set forth herein.  At material times, by reason of Defendants' actions, Defendant entered into a contractual agreement with Plaintiffs and was under a non-delegable duty to procure the warranty coverage sold to Plaintiffs, or, in the alternative, to procure for Plaintiffs like or similar warranty coverage.  If such warranty coverage was not procured, Defendants breached such contractual agreements and duties to Plaintiffs, entitling Plaintiff to performance of the contract of warranty by Defendants, in addition to all such other damages as set forth herein.

## COUNT VI
## CLAIM FOR DECLARATORY RELIEF

64.     The allegations of paragraphs 1 through 63 above are incorporated herein as if reproduced in full.

65.     In addition to seeking damages from Defendants, Plaintiffs request that this Court declare the rights, status and legal relations of the parties under the contract of sale at issue, and the contract of warranty at issue, specifically the amount of benefits due and payable to Plaintiffs under the warranty at issue, pursuant to M.R.C.P. 57 (Declaratory Judgments).  Further, and additionally or alternatively, Plaintiff would show that the language of the warranty at issue is

vague, ambiguous and capable of more than one meaning, and that such warranty should be construed against Defendants, and that as a result, this Court should find and declare coverage for the specific claims of Plaintiffs as set forth herein.

## COUNT VI
## FAILURE TO WARN

66. The allegations of paragraphs 1 through 65 above are incorporated herein as if reproduced in full.

67. Defendants, Bass Homes, Ace Hardware and Ace Home Center, Inc., as the builder and a distributor of materials for the building of residential homes, have a duty to disclose hidden hazards in the home, especially when such hazards effect the safety of the home's occupants, upon acquiring knowledge of that hazard.

68. Defendants knew that Defective Chinese Drywall was used in the construction of the home and had or should have had such knowledge immediately upon receiving the Defective Chinese Drywall at the job-site and installing it in the home.

69. Defendants knew or should have known that Defective Chinese Drywall was an inferior product, not fit for ordinary use, and knew or should have known this immediately upon receiving the Defective Chinese Drywall at the job-site and installing it in the home.

70. Defendants knew or should have known that Defective Chinese Drywall posed a serious health risk to residents of homes wherein Defective Chinese Drywall was used.

71. Despite knowledge of long standing quality concerns regarding the use and installation of Defective Chinese Drywall, Defendant caused Defective Chinese Drywall to be installed in the home.

72.    Despite such knowledge, Defendants failed to warn the Plaintiffs of the use of Defective Chinese Drywall in the home or of the hazards associated with Defective Chinese Drywall used in the home.

73.    Had Defendants informed Plaintiffs of the use of Defective Chinese Drywall in the home or of the hazards associated with Defective Chinese Drywall used in the home, Plaintiffs would not have purchased the home.

74.    Had Defendants informed Plaintiffs of the use of Defective Chinese Drywall in the home or of the hazards associated with Defective Chinese Drywall used in the home, Plaintiffs would not have suffered the damages alleged herein, and/or could have taken steps necessary to protect themselves and their property against damage.

75.    As a result of Defendant's actions, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to: economic damages; damage to real and personal property; past, present and future physical and mental pain and suffering; past, present and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and court and/or administrative costs.

76.    Due to Defendant's failure to warn Plaintiffs as to the hidden hazards in the home, Defendant is liable to Plaintiff for those damages and losses set forth above.

## COUNT VII
## FRAUD- BASS HOMES, INC.

77.    The allegations of paragraphs 1 through 76 above are incorporated herein as if reproduced in full.

78.    Despite knowledge of the use of inferior drywall in the home, Bass Homes sold the home to the Plaintiffs.

14

79.     As a result of Bass Homes' nondisclosure, silence, and misrepresentations, Defendants intentionally gained an unjust advantage over Plaintiffs.

80.     Had Bass Homes' advised Plaintiffs of the use of inferior drywall in the home, Plaintiffs would not have purchased the home.

81.     As a result of Bass Homes' actions, Plaintiffs have suffered and will continue to suffer damage and injury, including, but not limited to: economic damages; damage to real and personal properly; past, present and future physical, and mental pain and suffering; past, present and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and Court and/or administrative costs.

82.     As a result of Bass Homes' fraud, Plaintiffs have the right to rescission of the original sale from Bass Homes to Plaintiffs, and for those damages and losses set forth above.


## COUNT IX
## INTENTIONAL / NEGLIGENT MISREPRESENTATION

83.     The allegations of paragraphs 1 through 82 above are incorporated herein as if reproduced in full.

84.     Despite knowledge of the use of the inferior drywall in the home, Defendants sold the home to Plaintiffs.

85.     Plaintiffs justifiably relied on Defendants' intentional or negligent representation.

86.     Had Defendants advised Plaintiffs of the use of inferior drywall in the home, Plaintiffs would not have purchased the home.

87.     As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to economic damages; damage to real and

personal property; past, present and future physical and mental pain and suffering; past, present and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and court and/or administrative costs.

## COUNT X
## ALTERNATIVE PLEADING OF
## BREACH OF WARRANTY OF FITNESS

88.     The allegations of paragraphs 1 through 87 above are incorporated herein as if reproduced in full.

89.     The use of inferior drywall in the home renders the home unfit for the purpose of residential living.

90.     Despite having knowledge as to the use of inferior drywall in the home, Defendants sold the home to Plaintiff.

91.     As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to: economic damages; damage to real and personal property; past, present and future physical and mental pain and suffering; past, present and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and court and/or administrative costs.

92.     As a result of Defendants' breach of the warranty of fitness, Plaintiffs are entitled to have the purchase price of the home restored to them by Defendants, together with any expenses there from, and for those damages and losses set forth above.

## COUNT XI
## UNJUST ENRICHIMENT

93.     The allegations of paragraphs 1 through 92 above are incorporated herein as if reproduced in full.

94.     As the builder of the home and supplier of drywall for the construction of Plaintiffs' house, Defendants knew that Defective Chinese Drywall was used in the construction of the home and had or should have had such knowledge immediately upon receiving the Defective Chinese Drywall at the job-site and installing it in the home.  Defendants knew or should have known that Defective Chinese Drywall was all inferior product, not fit for ordinary use, and knew or should have known this immediately upon receiving the Defective Chinese Drywall at the job-site and installing it in the home.

95.     Had Defendants disclosed to Plaintiffs the use of Defective Chinese Drywall in the construction of the home, Plaintiffs would not have purchased the home.

96.     As a result of Defendants' acts and/or omissions in concealing the presence of Defective Chinese Drywall in Plaintiffs' home, Defendants unjustly enriched without justification or cause.

97.     As a result of Defendants' acts and/or omissions in concealing the presence of Defective Chinese Drywall in Plaintiffs; home, Plaintiffs were unjustly impoverished without justification or cause.

98.     As a result of the foregoing, Defendants are liable to Plaintiffs for the losses suffered by them.

## COUNT XII
## THIRD PARTY BENEFICIARY

99.     The allegations of paragraphs 1 through 98 above are incorporated herein as if reproduced in full.

100.     Bass Homes entered into express contracts whereby its subcontractors performed work on the Residence.

101.     Plaintiffs were the intended beneficiary of the contracts between Bass Homes and its subcontractors.

102.     Bass Homes knew that Plaintiff would benefit from their contracts and could and would be harmed by the breach of those contracts by Bass Homes, its subcontractors, Ace Hardware and Ace Home Center, Inc..

103.     The subcontractors breached their contracts with Bass Homes by failing to carefully and properly complete the work on Plaintiffs' home in a good and workmanlike manner in compliance with applicable building codes and construction industry standards.  Therefore, Plaintiffs are entitled to damages as the third party beneficiary to Bass Homes' contracts based on damages suffered by Plaintiffs as a result of the breaches of those contracts.

104.     As a direct and proximate result of the actions of the Bass Homes, Ace Hardware, Ace Home Center, Inc., and Fictitious Defendants, which combined and concurred to form the basis of this suit, Plaintiffs have suffered damages as set forth in the above Statement of Facts.

## COUNT XIII
## DECEPTIVE TRADE PRACTICES

105.     The allegations of paragraphs 1 through 104 above are incorporated herein as if reproduced in full.

18

106.     Defendants' actions constitute violations of the Deceptive Trade Practices Act as defined in Title 75, Section 24 of the Mississippi Code (1972).

107.     Plaintiffs demand judgment be entered against Defendants in an amount equal to the funds improperly received by Defendants as the result of its deceptive acts, plus equitable relief.

## COUNT XIV
## RESPONDEAT SUPERIOR

108.     The allegations of paragraphs 1 through 107 above are incorporated herein as if reproduced in full.

109.     At all relevant times, agents and/or employees of Defendants who were involved with the construction and/or repairs of the House were in the course and scope of the duties of their corporate and respective employments.

110.     Defendants are vicariously liable for the acts and omissions of agents and/or employees who worked on the House.  Defendants knew, or in the exercise of reasonable caution should have known, their respective and corporate duties to Plaintiffs were non-delegable.

111.     With the filing of Answers and Defenses, Defendants are given the opportunity to address vicarious liability and provide a good faith basis for same under controlling Mississippi law and to provide any documents or contracts which support their position(s).

112.     Plaintiffs reserve the right to amend their Complaint after reviewing the pleadings and/or discovery of Defendants to include individual defendants, personnel, and/or corporate or business entities.

## COUNT XV
## CONSTRUCTIVE FRAUD

113.     The allegations of paragraphs 1 through 112 above are incorporated herein as if reproduced in full.

114.     Defendants respectively, corporately and through agents and/or employees breached individual and corporate non-delegable duties—fiduciary and otherwise—to Plaintiffs, thereby committing constructive fraud.

115.     As direct and proximate results of constructive fraud by Defendants, Plaintiffs sustained damages including but not limited to those stated herein.

## COUNT XVI
## PRIVATE NUISANCE

116.   The allegations of paragraphs 1 through 115 above are incorporated herein as if reproduced in full.

117.     Private nuisance is sometimes "used interchangeably" with a claim for interference with the use and quiet enjoyment of property.  *Leaf River Forest Products, Inc. v. Ferguson*, 662 So.2d 648, 662 (Miss. 1995).  "A private nuisance is defined as a non-trespassory invasion of another's interest in the use and enjoyment of his property."  *Young v. Weaver*, 32 So.2d 202, 205 (Miss. 1947).

118.     "A private nuisance may be shown by conduct causing an invasion of another's interest in the private use and enjoyment of land that is either:  (1) intentional and unreasonable . . . ."  Williams v. King, 860 So.2d 847, 851 (Miss. App. 2003).

119.   Plaintiffs allege the inability to use their home is a continuing problem which rises to a private nuisance.

## COUNT XVII
## COMPENSATORY DAMAGES

120.   The allegations of paragraphs 1 through 119 above are incorporated herein as if reproduced in full.

121.  But for the negligence and willful omissions of Defendants, Plaintiffs would have the home that they purchased.

122.   Defendants breached duties and directly and proximately caused unreasonable damages, including, but not limited to, those listed herein, entitling Plaintiffs to an award of compensatory damages.

## COUNT XVIII
## PUNITIVE DAMAGES

123.   The allegations of paragraphs 1 through 122 above are incorporated herein as if reproduced in full.

124.   Plaintiffs allege the limitations on damages as set forth in Mississippi Code (Annotated) of 1972 § 11-1-65—if they apply—are unconstitutional because they violate both the Mississippi Constitution and the Constitution of the United States, including, but not limited to, the Equal Protection and Due Process Clauses of these Constitutions.

125.   Plaintiffs allege the commissions and omissions by Defendants and their respective and/or corporate agents and/or employees were so willful, grossly negligent and wanton as to show a disregard for the rights of others and therefore give rise to an award of punitive damages.

21

## COUNT XVIX
## DAMAGES

125.   The allegations of paragraphs 1 through 124 above are incorporated herein as if reproduced in full.

126.   As direct and proximate results of the respective and/or collective omissions and grossly improper and negligent commissions and omissions by Defendants and/or their respective and/or corporate agents and/or employees, Plaintiffs suffered actual and compensatory damages, including, but not limited to, the following.

a)   Psychological and emotional trauma, distress, anxiety, and mental suffering;
b)   Loss of enjoyment of life;
c)   Loss of use of her House;
d)   Diminution of value of the House
e)   Attorneys' fees;
f)   Legal interest; and
g)   Other damages to be proven at trial.


## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Plaintiffs pray the Court to enter judgment against Defendants and in favor of Plaintiffs and to award the following relief:

a)   Judgment against Defendants for any and all losses incurred as direct and proximate results of the negligent conduct and other breaches of duty by Defendants, in an amount to be determined at trial;

b)   Compensatory damages, prejudgment and post-judgment interest, attorneys' fees and costs reasonably and necessarily incurred during the course of litigation, in an amount to be determined at trial;

c)      Judgment against Defendants for damages in an amount to make her and her House whole insofar as a pecuniary amount can accomplish that purpose, in an amount to be determined at trial;

d)      Punitive damages against Defendants for gross negligence and/or breach of contract;

e)      Such other relief as this Honorable Court deems just and proper.

RESPECTFULLY SUBMITTED this, the 2<u>nd</u> day of October, 2013.

BRAXTON & KERRIE COLLINS, Plaintiffs

By and Through Their Attorneys,
LUCKEY & MULLINS, PLLC

BY:   /s/ Stephen W. Mullins
        STEPHEN W. MULLINS

ATTORNEYS FOR PLAINTIFFS:

STEPHEN W. MULLINS  (MS Bar No. 9772)
LUCKEY & MULLINS, PLLC
2016 Bienville Blvd., Suite 102   (39564)
Post Office Box 990
Ocean Springs, MS  39566
Phone: 228.875.3175
Fax:    228.872.4719
smullins@luckeyandmullins.com

Of Counsel:

**Daniel K. Bryson** (*pro hac vice*)
**WHITFIELD BRYSON & MASON LLP**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035

## CERTIFICATE OF SERVICE

I, STEPHEN W. MULLINS, do hereby certify that I have on this date electronically filed the above and foregoing Amended Complaint with this Court using the ECF filing system which has caused notification of such filing to be sent to registered counsel of record.  A copy of said Amended Complaint will also be served on the registered agent for Ace Home Center, Inc.

THIS, the 2nd day of October, 2013.

/s/ Stephen W. Mullins
STEPHEN W. MULLINS

STATE OF ___ALABAMA___

# BUILDING CONTRACT
## BASS HOMES, INC.

This agreement made this __22ND__ day of __AUGUST__ , __2008__ , between __BRAXTON H. COLLINS AND KERRIE F. COLLINS__ , hereinafter designated "Buyer" whose residence is __10720 HWY 614 MOSSPOINT MS. 39562__ , and Bass Homes, Inc., having its principal place of business at P. O. Box 344, Stapleton, Alabama, 36578, hereinafter designated "Seller."

**(1)**

**WITNESSETH:**

The Seller agrees to build according to the plans and specifications on this sheet, or sheet attached hereto, which is by reference made a part hereof, on the property of the Buyer, located at: __10720 HWY 614 MOSSPOINT MS. 39562__

**(2)**

Description of construction to be performed: __BUILD A 37' X 53' SINGLE STORY HOME. TO BE BUILT ACCORDING TO BASS HOMES, INC. "DALTON III" MODEL. FOR SPECIAL CHANGES AND DETAILS SEE EXHIBITS A, B, C, D, E AND F ATTACHED HERETO.__

Exhibits A, B, C, D, E and F dated __AUGUST 22ND, 2008__ and attached hereto, before execution hereof, are made a part of this contract.

Buyer covenants and agrees to pay for said project (work) the sums and amounts herein set forth, pursuant to the following terms: ONE HUNDRED FORTY ONE THOUSAND FOUR HUNDRED AND FIFTY 00/100

|     |                    |                |
|-----|--------------------|----------------|
| (1) | TOTAL PRICE        | $ 141,450.00   |
| (2) | DOWN PAYMENT       | $   1,000.00   |
| (3) | UNPAID BALANCE     | $ 140,450.00   |

Details of Payments: __BUYER(S) TO OBTAIN A CONVENTIONAL MORTGAGE LOAN. BUYER(S) TO PAY ALL CLOSING COSTS, DISCOUNT POINTS AND PRE-PAIDS. BUYER(S) TO OBTAIN A 100% CONSTRUCTION LOAN WITH PROGRESS PAYMENTS DURING CONSTRUCTION OF HOME. SAID PAYMENTS TO BE AS PER STANDARD BANK POLICY. FINAL PAYMENT DUE UPON COMPLETION OF HOME.__

**(3)**

This instrument, and the other instruments signed in connection with this transaction contain the price and all the terms and conditions agreed upon by the Buyer and Seller, and no statement, representation or promise not set forth herein or in any of said instruments has been made to induce either party to enter into this transaction. In the event an unsatisfactory credit report on the Buyer or any other information unsatisfactory to the Seller is received prior to beginning construction of the house, Seller at its option may within 10 days thereafter cancel this agreement UPON returning to Buyer any deposit. In the event Buyer fails to perform any activities or duties required of Buyer (e.g., failure to prepare lot for construction, or, failure to obtain an unconditional letter of commitment for funds to purchase home or any contents of this contract, or, failure to deliver proof of all funds if cash purchase applies) within thirty days from commencing construction for a period of sixty (60) days from the date hereof, Seller may cancel this contract at its option, regardless of any assistance that seller may have provided in financing. Should seller not exercise their option to cancel Buyer at 60 day requirement then seller can negotiate with buyers to increase cost of this contract should seller choose to do so, provided that construction has not commenced by seller at buyers property described herein (e.g. starting foundation work on home). If buyer chooses not to accept an additional cost then seller may cancel this contract and retain buyers initial deposit of money. In the event the Buyer does not have good and marketable title to the property described in paragraph 1, Seller may at its option, elect to incur all expenses reasonably necessary to obtain good and marketable title in the Buyer, and Buyer shall forthwith reimburse Seller for all expenses so incurred by Seller. In the event the house built by Seller at the location on the ground designated by Buyer is not entirely on the property of Buyer, then the Buyer agrees to pay Seller any and all costs, damages, losses and expenses, including reasonable attorneys' fees and court costs, suffered or incurred as a result thereof by Seller. The above expenses incurred by the Seller shall constitute a lien against said property of the Buyer until paid. No completion has been represented or is a part of this contract. All provisions of this contract are subject to approval by an officer of BASS HOMES, INC., Stapleton, AL. 36578.

In those homes where pilings are specified, pilings shall be to a depth determined by Seller to be structurally safe and sound. In the event the Buyer requires a depth in excess of that deemed by Seller to be sufficient and structurally safe and sound, this contract, at the option of Seller, shall be declared null and void, or the contract may be re-negotiated to include the cost of drilling to a deeper depth. Commencement of construction and commencement of drilling pilings shall not be deemed a waiver of this position.

The house to be constructed is not designed for unusual surface conditions and/or sub-surface conditions in that no warranty is made that the house is designed for conditions that are abnormal, that no testing of the soil will be conducted by the Seller.

Failure of this Seller or Subcontractor to pay those persons supplying material or services to complete this contract can result in the filing of a lien on the above described property which is the subject of this contract.

**(4)**

Seller promises to furnish Buyer at closing a one-year limited warranty on the dwelling, a copy of which is attached here as Exibit " F "

**(5)**

**ARBITRATION AGREEMENT**

ANY DISPUTE, CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE BREACH THEREOF, OR ARISING OUT OF ANY PRIOR DEALINGS BETWEEN SELLER AND BUYER OR ARISING OUT OF ANY FUTURE DEALINGS BETWEEN SELLER AND BUYER, SHALL BE SETTLED BY ARBITRATION IN THE STATE OF ALABAMA IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION (THE "ARBITRATION RULES OF THE AAA") AND JUDGMENT UPON THE AWARD RENDERED BY THE ARBITRATOR(S) MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF.

THE PARTIES FURTHER AGREE THAT SHOULD ONE PARTY INVOKE ARBITRATION IN ACCORDANCE WITH THIS AGREEMENT, THE OTHER PARTY SHALL BRING TO THE ARBITRATION PROCESS ANY CLAIM OR COUNTERCLAIM WHICH IT MAY HAVE AGAINST THE INVOKING PARTY, WHETHER DEEMED TO BE COMPULSORY OR PERMISSIVE AT LAW AND, THE FAILURE TO BRING SUCH CLAIM OR COUNTERCLAIM SHALL CONSTITUTE A WAIVER OF AND A BAR TO THE BRINGING OF SUCH CLAIM OR COUNTERCLAIM IN ANY SUBSEQUENT ARBITRATION OR LEGAL ACTION.

SELLER AND BUYER UNDERSTAND AND AGREE (1) THAT EACH OF THEM IS WAIVING RIGHTS TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO A JURY TRIAL; (2) THAT PRE-ARBITRATION DISCOVERY PROCEEDINGS IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS; (3) THE ARBITRATORS AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING; AND (4) EITHER PARTY'S RIGHT TO APPEAL OR SEEK MODIFICATION OF RULINGS BY THE ARBITRATOR IS STRICTLY LIMITED. THE VENUE FOR ARBITRATION SHALL BE IN BALDWIN COUNTY, ALABAMA.

IN WITNESS WHEREOF, the Buyer and Seller have hereunto set their hands and seals at __STAPLETON , ALABAMA__ the day and year first above written.
     (City)          (State)

*CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.*

BASS HOMES, INC.
SELLER

BY _____          _____
      Title                                  (BUYER)

                                          _____
                                          (BUYER)

_Exhibit "A"_

EXHIBIT A

BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL 36578

BRAXTON H. COLLINS AND KERRIE F. COLLINS                                            AUGUST 22, 2008
BUYER(S) NAME(S)                                                    DATE
                                             NOTICE
ANY HOLDER OF THIS CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE BUYER COULD ASSERT AGAINST THE
SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE BUYER
SHALL NOT EXCEED AMOUNTS PAID BY THE BUYER HEREIN.

                                      BUYERS' RIGHT TO CANCEL
     IF THIS AGREEMENT WAS SOLICITED AT YOUR RESIDENCE AND YOU DO NOT WANT THE GOODS OR SERVICES, YOU MAY CANCEL
THIS AGREEMENT BY MAILING A NOTICE TO THE SELLER. THE NOTICE MUST SAY THAT YOU DO NOT WANT THE GOODS OR SERVICES AND
MUST BE MAILED BEFORE MIDNIGHT OF THE THIRD BUSINESS DAY AFTER YOU SIGN THIS AGREEMENT. THE NOTICE MUST BE MAILED TO:
LEGAL DEPARTMENT, BASS HOMES, INC., HIGHWAY 31, P. O. DRAWER 340, STAPLETON, ALABAMA 36578. YOU ARE ALSO ENTITLED TO
RECEIVE A REFUND OF ANY DOWN PAYMENT OR OTHER CONSIDERATION IF YOU CANCEL.
     NOTICE TO THE BUYER (a) DO NOT SIGN THIS BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES, (b) YOU ARE ENTITLED
TO AN EXACT COPY OF THE PAPER YOU SIGN.
     THE BUYER ACKNOWLEDGES THAT HE RECEIVED A COPY OF THIS AGREEMENT AND THAT BEFORE SIGNING THE SAME, THE
CONTRACT CONTAINED THE ENTIRE TERMS AND ALL BLANK SPACES HAD BEEN FILLED IN PRIOR TO THE SIGNING OF THE SAME.

These presents constitute a part of the Building Contract of even date attached hereto. The following options and additions; to-wit:
HOUSE TO BE BUILT ACCORDING TO PLANS FURNISHED BY BASS HOMES, INC.
Note to Buyers: Bass Homes, Inc., may at its election require water and sewer to be installed on mortgaged property before
construction begins or before completion of rough plumbing in home. In the event that water and sewer with connections to home is
not completed at Bass Homes, Inc., request, Sellers and Buyers agree that Bass Homes, Inc., will have full rights to install water supply
and sewer with connections and Buyers then agree to pay in full normal and customary charges of goods.

FOUNDATION:      ~~[illegible struck-through text]~~
                 ~~[illegible struck-through text]~~
     NOTE: Builder shall negotiate additional cost if any with customer before foundation is installed. Any
     additional depth of foundation (piers, pilings, or slab) or width of footings required by any building
     governmental agencies, buyers, or builder's discretion shall all be on a cost plus basis unless pre-charged
     and written in contract total price.

1.   Foundation will be raised type with continuous 8" block wall around perimeter of home only. Note: All porches will be open
     piers. If exterior is Brick Veneer, foundation will be piers only. Foundation height of home to be at sellers discretion and
     building codes if enforced. Buyers are responsible to determine if they are in a flood zone and shall disclose to seller in
     writing before construction begins if a required foundation height is necessary.
2.   Treated foundation seals will be installed; all porch seals and porch floor will be treated.
3.   3/4" tongue and groove plywood flooring.

EXTERIOR OF HOUSE:
1.   Exterior walls will have OSB and housewrap sheeting under siding.
2.   Exterior siding hardiplank or comparable unless otherwise stated in contract.
3.   All porch rails, fascias, and window trim will be pressure treated.
4.   Roof will have all framing 2' o.c.
5.   Roof will have standard fiberglass shingles, unless otherwise stated in contract.
6.   Exterior doors will be metal insulated.
7.   Exterior windows will be insulated white colonial style. Tilt window sash's are optional.
8.   Exterior of house will be painted latex.
9.   All homes with vinyl siding or hardy plank siding will have 7/16" OSB wafer board in lieu of standard styrofoam.

INTERIOR:
1.   Interior of home will have 3 ½" insulation in exterior walls and 6" fiberglass insulation in attic exposed ceiling areas only.
2.   Interior wall will have ½" sheetrock throughout entire house.
3.   Cabinet faces and doors only will be 3/4" Birch plywood or comparable material with laminated countertops. All white
     lacquer cabinets will be 5/8" MDF or HDF, including raised panel doors. All cabinet backs, ends, shelves or other
     components in cabinets shall be equal to Bass Homes, Inc., model home.
4.   Standard interior doors and trim.
5.   Vinyl flooring in kitchen, utility, and all baths, no wax.
6.   Carpet in all other areas of home from Bass Homes, Inc., samples.
7.   Fluorescent light in kitchen area.

STANDARD OPTIONS OF HOUSE:
1.   PLUMBING:     Fiberglass tub and shower units/stainless steel kitchen sink/standard vanity porcelain sinks, standard white fixtures.
2.   ELECTRICAL:   200 amp service/standard copper and aluminum wiring/standard light fixtures.
3.   HEAT AND AIR: Standard electric central forced heat and air. 42" Metal insert fireplace (without blowers) in homes that are shown on
                   Bass Homes, Inc. sales brochure only.
4.   PAINT:        A.   Exterior oil base stain/interior latex paint on walls. Standard color all interior walls (soft white) Devoe Brand
                        or something equivalent, all paint and stain from Bass Homes, Inc., samples.
                   B.   All interior walls in home will be one color (soft white).
                   C.   All trim work and cabinets will be stained or white.
                   D.   All exteriors will be painted.
                   E.   All exteriors will have one trim color for doors and shutters only. Any other trim colors will be additional
                        costs. (Hand rails, porch rails, corner boards, and eaves will be stained or painted same color as exterior of
                        home).
5.   All materials in excess of job will remain the property of Bass Homes, Inc.
6.   Buyers are responsible for removal of construction debris.
7.   All utilities are stubbed out only to exterior (Electrical Service Wire, Gas, and Plumbing). See Exhibit "B" for details.


_____                              _____
(SELLER, BUILDER)                                            (BUYER, OWNER)

                                                             _____
                                                             (BUYER, OWNER)

EXHIBIT B - PART 1
BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL 36578

DATE: AUGUST 22, 2008
NAME OF BUYER(S): __BRAXTON H. COLLINS AND KERRIE F. COLLINS__
TYPE OF HOME: ___CEMPLANK_____ MODEL: __DALTON III___

OWNER'S CHOICE OF INTERIOR & EXTERIOR COLORS:

EXTERIOR: HARDIPLANK OR COMPARABLE _____ CEDAR _____ BRICK _____
SIDING COLOR _____
STANDARD TRIM COLOR (DOOR & SHUTTERS ONLY) _____
DELUXE TRIM COLOR (DOOR, SHUTTERS, FASCIA & WINDOW TRIM) THIS ITEM IS $950.00 ADDITIONAL COST
SHINGLES _____ WINDOWS: BRONZE _____ WHITE _____
BRICK COLOR _____
MORTAR COLOR: GREY _____ DARK MORTAR _____ OTHER _____
INTERIOR:
KITCHEN / BREAKFAST
    COUNTER TOP _____
    STANDARD RANGE HOOD: ALMOND_____ WHITE _____ STAINLESS _____
    CONNECTION FOR MICROWAVE: ❑ YES or ❑ NO
    VINYL _____
DINING
    CARPET _____

UTILITY:
    VINYL _____

MASTER BATHROOM:
    VANITY TOP _____
    VINYL _____

HALL BATHROOM:
    VANITY TOP _____
    VINYL _____
CARPET:
    $250.00 ADDED COST FOR HARDWOOD FLOORING FRONT ENTRANCE: _____
    LIVING ROOM _____
    FOYER _____
    STUDY _____
    BEDROOM #1_____
    BEDROOM #2_____
    BEDROOM #3_____
    BEDROOM #4_____
(NOTE: Vinyl throughout home, other than kitchen, dining and baths cost an additional $2.00 per sq. ft.)

FIREPLACE STONE: _____
(NOTE: The fireplace in all homes with cathedral ceilings will have stone to mantle height.)
FIREPLACE MANTLE BACKING BRACE (2" X 4"): YES_____ OR NO_____
CABINETS STAINS OR COLOR : _____
  ALL CABINET DOOR AND ANY CABINET UPGRADES MUST BE IN CONTRACT ON "EXHIBIT C" AND ALSO PROOF OF PURCHASE ON
BASS HOMES COST BREAK DOWN SHEET.
INTERIOR TRIM STAIN OR COLOR :_____
CABINET HARDWARE_____
       *ONE CHOICE OF CARPET COLOR
       *TWO COLORS FOR VINYL
       *TWO COLORS FOR VANITY AND COUNTER TOP

VINYL FLOORING WILL BE INSTALLED IN BATHROOMS, KITCHEN, UTILITY, AND BREAKFAST AREAS ONLY.
ANY VINYL INSTALLED IN ANY OTHER AREAS, BUYER(S) AGREE TO PAY AN ADDITIONAL $2.00 PER SQUARE
FOOT FOR UNDERLAYMENT.

_Braxtt Collins_____
(BUYER, OWNER)
_Kerrie F. Collins_____
(BUYER, OWNER)

EXHIBIT B - PART 2

BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL 36578

BUYER(S)  BRAXTON H. COLLINS AND KERRIE F. COLLINS

DATE:  AUGUST 22, 2008

1.   Ceiling fan outlets ONLY WHERE:  LIVING AND ALL BEDROOMS

2.   Ceiling fan installation ONLY WHERE:  NONE

3.   Dishwasher cutout-?  YES X     OR NO

4.   Dishwasher hookup?  YES          OR NO  X

5.   Ice-maker line only installed:  YES X      OR NO

6.   Cabinet space for standard 30" free standing electric stove YES          OR NO

     Drop-in stove:  YES          OR  NO

7.   Gas utilities:  YES          OR NO

8.   Termite Treatment; one twelve month bond: YES X     OR  NO
     (No termite treatment shall be provided for homes on pilings.)

9.   Electric hookup:  Standard overhead          OR underground

10.  Clean up debris and haul off?  NO.  If yes, additional costs must be added to total price and Exhibit C of Contract.

11.  Payment towards Builder's Risk Insurance during construction period.
     YES          OR NO  X
     Buyer(s) agree(s) to furnish Builder's Risk  policy payable to Seller and if necessary, also to Lender or Buyer(s) prior
     to and during construction of home until  construction of home is complete.

12.  All utilities are stubbed out only to exterior (electric service wire, gas, plumbing, and sewer).

13.  Gutters, parquet flooring and mini-blinds not included in standard price of home.

(I)    Buyer(s) agree that all special changes to home plans have been made and incorporated into this contract.  Buyer(s) further
       agrees that all color selections and selections of all goods have been made by Buyer(s), and upon execution of this Contract,
       both Parties agree that no changes will be made.

(II)   Buyer(s) agree(s) that upon substantial completion of home, Buyer(s) and a Bass Homes, Inc., representative will do a walk
       through inspection of home and a punch list will be written up which is mutually agreeable by both parties. Buyer(s) hereby
       agree(s) that the initial walk through and resulting punch list will be the only walk through and punch list.  Seller hereby
       agrees to correct or complete the items on the punch list and once finished, Buyer(s) agree(s) to immediately pay Seller the
       entire balance owed to the Seller under the contract or otherwise.  If Seller should agree to do any extra work after the initial
       punch list, this work shall not commence until Seller has been paid in full.  All other matters will be strictly related to the
       standard one year Builder's Warranty styled as a "Completion Certificate and Owner's Acceptance".

(III)  Buyer(s) agree(s) that he and/or she shall not be allowed to take possession of the home until such time as Seller has been
       paid in full under the contract and has also been paid any additional cost, if any, which has been added to the original
       contract price.  Buyer(s) acknowledge(s) that, until such time as Seller has been paid in full the contract price and signed a
       "Completion Certificate and Owner's Acceptance," Buyer(s) will not be allowed to occupy or store any of his and/or her
       possessions in said home. In the event that Buyer(s) fail to the agreed terms above, Buyer(s) shall in this agreement, pay to
       the Seller a sum of $1,000.00 per month rent for possessing the newly constructed home for storing any of Buyer's goods or
       occupying the home in any manner. The monthly $1,000.00 rate will be paid to Seller until Seller is paid in full.


_____          _____
(SELLER, BUILDER)                (BUYER, OWNER)

                                 _____
                                 (BUYER, OWNER)

EXHIBIT C
BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL. 36578

NAMES OF BUYER(S):  BRAXTON H. COLLINS AND KERRIE F. COLLINS

DATE:  AUGUST 22, 2008

TYPE OF HOME:  CEMPLANK

NAME OF HOME BEING BUILT:  DALTON III

PLEASE LIST ANY CHANGES OTHER THAN "STANDARD" THAT IS STATED IN THIS CONTRACT REGARDLESS OF
HOW SMALL OR LARGE THE CHANGE MAY BE. ANYTHING WRITTEN IN EXHIBIT "C" WILL OVERRIDE THE
"STANDARD" CONTRACT AND BLUEPRINTS.

1. INSTALL BRICK VENEER FROM BASS HOMES SAMPLES AROUND FOUNDATION AREA AND PORCH AREAS OF HOME (SAME AS REDWOOD MODEL HOME). NOTE: FRONT STEPS ONLY WILL BE BRICK. ALL OTHER STEPS TO BE TREATED PINE.

2. INSTALL STANDARD 8' CEILINGS THROUGHOUT HOME.

3. INSTALL DIMENSIONAL SHINGLES ON ROOF OF HOME IN LIEU OF STANDARD SHINGLES FROM BASS HOME SAMPLES.

4. INSTALL FLAT PANEL CABINETS (WITHOUT ARCHES) FROM BASS HOMES SAMPLES THROUGHOUT HOME.

5. INSTALL CERAMIC TILE IN FOYER KITCHEN, BREAKFAST, AND BOTH BATHS.

6. ADD A STANDARD FIREPLACE IN LIVING ROOM AS PER PRELIMINARY PLANS.

7. DELETE FRENCH DOORS IN OFFICE/STUDY AND CONVERT TO A 4TH BEDROOM. ADD A CLOSET AT THE ADJACENT SIDE TO NEXT BEDROOM.

8. MAKE ENTRANCE TO FOURTH BEDROOM BY EXTENDING HALL AS PER PRELIMINARY PLANS. NOTE. SHORTEN AND REPOSITION OTHER BEDROOM CLOSET.

9. MOVE REAR LIVING ROOM WALL TOWARDS REAR PORCH 2' TO MAKE LIVING ROOM LARGER. NOTE: REAR PORCH WILL BE 2' SMALLER THAN STANDARD.

10. INSTALL BOARD AND BATTING SIDING ON EXTERIOR IN LIEU OF STANDARD SIDING.

11. INSTALL CRAFTSMAN STYLE FRONT PORCH COLUMNS SAME AS SPEC HOME IN STAPLETON (BYRD ROAD) IN LIEU OF STANDARD COLUMNS.

12. INSTALL SMOOTH CEILINGS WITH LIGHT ORANGE PEEL TEXTURE THROUGHOUT HOME.

13. FRAME BUYERS INTERIOR SOLID WOOD DOORS IN BASS HOMES DOORS UNIT CASINGS. NOTE: BLUEPRINT MUST BE ACCURATE FOR DOORS THAT BUYERS ARE PROVIDING. CONSULT BUYERS FOR DIMENSIONS.

14. BUYERS TO PROVIDE BOTH BATH VANITIES, SINKS AND FAUCETS. BASS HOMES WILL INSTALL.

15. BUYERS TO PROVIDE A LARGE CUSTOM KITCHEN SINK. BASS HOMES TO INSTALL. NOTE: CONSULT BUYERS TO SIZE CABINETS TO ALLOW FOR SPECIAL SINK.

16. INSTALL TWO FRONT PORCH LANTERNS SAME AS SPEC HOMES.

17. ALL FAUCETS PROVIDED BY BASS HOMES TO BE DELTA BRAND.

18. BUYERS HAVE A $2,000.00 ALLOWANCE FOR APPLIANCES. SAID ALLOWANCE TO BE DISPERSED DIRECTLY FROM BUYERS CONSTRUCTION LOAN. BUYERS TO PURCHASE AND INSTALL SAID APPLIANCES.

AUGUST 22, 2008
DATE

(SELLER, BUILDER)                    (BUYER, OWNER)

                                     (BUYER, OWNER)

EXHIBIT D
BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL 36578

NAME OF BUYER(S): __BRAXTON H. COLLINS AND KERRIE F. COLLINS__

DATE: __AUGUST 22, 2008__

TYPE OF HOME: __CEMPLANK__

MODEL: __DALTON III__

BUYER(S) AGREES TO PROVIDE THE FOLLOWING ITEMS PRIOR TO COMMENCEMENT OF CONSTRUCTION UNLESS OTHERWISE STATED IN THIS CONTRACT:

1. Electricity necessary to construct home within 25 feet of proposed structure. All expenses to be from Buyer(s) including power bills.
2. Water supply necessary to construct home within 25 feet of proposed structure. All expenses to be from Buyer(s) including water bills.
3. Temporary driveway (and culvert if necessary) within 25 feet of proposed structure. Driveway material must be sufficient to support heavy equipment delivering building goods.
4. Clearing of lot for proposed structure. Clearing includes trees, stumps or any type of debris above or below ground to Seller's satisfaction.
5. Elevation certification in flood areas when required in connection with builder obtaining building permit. Seller will provide building permit only.
6. Water supply within 500 feet for installing pilings for homes being built on pilings.
7. Cost of plan reviews when required by county or city building departments.
8. Engineering cost of certifying home plans when required by building codes or governmental agencies.

BUYER(S) SHALL PROVIDE THE FOLLOWING ITEMS DURING OR AT COMPLETION OF CONSTRUCTION (UNLESS OTHERWISE STATED IN THIS CONTRACT). NOTE: SOME ITEMS MAY BE AT BUYER(S) DISCRETION UNLESS REQUIRED BY MORTGAGE HOLDER.

1. Septic system and line to stub-out at home.
2. Water meter, well, and line to stub-out at home.
3. Buyers to connect water and sewer line to stub-out at foundation of home.
4. Television antenna outlets, cable outlets, telephone outlets or other items of similar nature.
5. Mirrors in baths, soap dishes, towel bars, etc.
6. Safety bars or grab bars in tubs and showers.
7. Shower doors.
8. Mantel over fireplace.

BUYER(S) ACKNOWLEDGES AND AGREES WITH THE FOLLOWING POLICIES AND STATEMENTS:

1. Seller will not be responsible for any property damage to Buyer(s)' lot in connection with Seller constructing Buyer(s)' home.
2. Seller will not do any landscaping or leveling of lot during or after completion of this contract unless otherwise stated in this contract.
3. When homes are sold with brick veneer on exterior of home, all walls under porch and gables shall having siding (specified type in contract) in those areas unless otherwise written in contract. All exterior steps and rails shall be wood.
4. When final building plans are completed, Buyer(s) agrees that Seller will not build home to exact dimensions and cosmetic details that may appear on plans due to a large volume of plan changes that Seller produces. Seller and Buyer(s) agree to build home according to sales brochure plan and preliminary plans.
5. Seller will not warrant the performance or appearance of any clear sealers or semi transparent stains installed by Seller on exterior of homes such as Clear Wood Finish or similar brand.
6. Buyer(s) shall not take any possession of home or move any goods in until seller receives final payment.
7. Seller is not required to provide buyer(s) any building drawings or blueprints other than a preliminary style set of plans with room sizes and exterior elevations of all sides of home.
8. Buyers strictly agree that they are not allowed to perform any construction improvements or install any goods or improvements in home until final payment of home is payed to seller at completion. SHOULD BUYER(S) VIOLATE OR BREAK THE TERMS OF THIS AGREEMENT HEREBY STATED IN ITEM # 8 OF THIS EXHIBIT D OF CONTRACT THEN BUYER(S) WILL PAY SELLER AN ADDITIONAL $5,000.00 TO THE TOTAL PRICE OF THIS CONTRACT AT THE TIME OF FINAL PAYMENT.
9. Buyer(s) agree upon substantial completion of construction of home that one (1) time walk-through inspection will be done by appointment with a Bass Homes, Inc. representative and a written list of items will be produced. Bass Homes, Inc. will complete all listed items from the one (1) time walk-through inspection. Buyer(s) agree to close immediately upon completion of list.
   Buyer(s) and Seller agree that no additional walk-through or additional items will be allowed after the initial one (1) time walk-through and item list.
10. "completion certificate of owners acceptance" warranty limitations are a part of this contract.

Buyers agree to pay the full amount for materials and labor on any special additions/code enforcement's that are required by building departments, mortgage lenders, or any type of governmental agency that are not standard in Bass Homes, Inc., model home or said plans and specs. This includes, but is not limited to, the following items: special insulation, underpinning of home's on pilings, structural engineering, certification of plans, special depth of concrete footings (i.e. prairie soil, white sand in coastal areas, unstable soil), or any items that must be added to meet the requirements of any of the above governmental agencies, companies, or departments.

_____
(SELLER/BUILDER)

_____
(BUYER, OWNER)

_____
(BUYER, OWNER)

EXHIBIT "E"

BASS HOMES INC. 34661 STATE HWY 59 SOUTH STAPLETON, AL.36578

<u>BUYER(S)BRAXTON H. COLLINS AND KERRIE F. COLLINS</u>
BUYER(S) AGREE TO THE FOLLOWING TERMS, DISCLOSURE NOTICES AND COST ADDENDUMS TO BE ADDED TO THE TOTAL PRICE OF THIS CONTRACT (COST WHEN APPLICABLE) TO THE UNDERSIGNED BUYER(S).

1.  ANY ENGINEERING COST OF BUYER(S) PLANS IF REQUIRED BY MORTGAGE LENDER, BUILDING DEPARTMENTS OR ANY TYPE OF AGENCY THAT CAN ENFORCE SAID REQUIREMENT THEREOF.

2.  IF BUYER(S) COMMENCE'S WITH ANY IMPROVEMENTS, PERFORM ANY TYPE OF WORK ON HOME DESCRIBED IN THIS CONTRACT OR HIRE ANY WORK TO BE PERFORMED BY OTHERS IN THE ACTUAL HOME DESCRIBED IN THIS CONTRACT INCLUDING ADDING ON TO THE STRUCTURE OF THIS HOME, PRIOR TO PAYING THE FINAL PAYMENT OF THIS CONTRACT TO BASS HOMES INC. TOGETHER WITH SIGNING THE "COMPLETION OF OWNERS ACCEPTANCE", THEN IT IS AGREED THAT BUYER(S) SHALL PAY BASS HOMES INC. THE SUM OF $5,000.00 ADDITIONAL COST ABOVE THE TOTAL PRICE IN THIS CONTRACT AT TIME OF FINAL PAYMENT.

3.  RECESSED LIGHTS ARE NOT INCLUDED IN THE REDWOOD MODEL OR ANY OTHER HOME PLANS UNLESS ADDED TO COST BREAKDOWN AND LISTED ON EXHIBIT "C" OF THIS CONTRACT.

4.  BUYERS CANNOT PROVIDE ANY LIGHT FIXTURES, PLUMBING FIXTURES OR ANY OTHER TYPE OF GOODS IN CONNECTION WITH THIS CONTRACT.
    ALL OF THE ABOVE SHALL BE STANDARD FIXTURES FROM BASS HOME INC.

5.  GRINDER PUMPS WHEN APPLICABLE FOR SEWER WILL NOT BE CONNECTED BY THE SELLER. BUYERS TO PAY FOR THE ELECTRICAL AND PLUMBING CONNECTIONS.

6.  ELECTRICAL WIRING FOR PUMPS AND WELLS WHEN APPLICABLE ARE NOT INCLUDED IN TOTAL PRICE.

7.  CONCRETE SLABS UNDER BEACH HOMES ON PILINGS WILL NOT BE WARRANTED AGAINST SLIGHT PUDDLES OF WATER AFTER RAINS DUE TO THE NATURE OF A SLAB FINISH. SLABS UNDER PILING HOMES WILL NOT INCLUDE PORCH OR DECK AREAS.

8.  BUYER(S) LOT SLOPE WILL BE ASSESSED FOR SLOPE THAT MAY EXCEED THE REQUIREMENTS OF THIS CONTRACT ON EXHIBIT "A" AT TIME OF COMMENCEMENT OF CONSTRUCTION OF FOUNDATION.

9.  FIREPLACE MANTLES WILL NOT BE INCLUDED ON ANY HOMES AS A STANDARD ITEM IN ANY HOME. SELLER WILL INSTALL A 2' X 4' SUPPORT AT MANTLE HEIGHT FOR BUYER(S) TO INSTALL A MANTLE AFTER COMPLETION OF HOME.

10. BUYER(S) ARE RESPONSIBLE FOR CAULKING DOOR THRESH-HOLDS AS NEEDED BUT NOT LESS THAN EACH AND EVERY ANNIVERSARY DATE OF ORIGINAL CONSTRUCTION COMPLETION OF HOME. BUYERS ARE RESPONSIBLE FOR THE ANNUAL INSPECTION OF FIREPLACE FLASHING AND CAULKING. BUYERS ARE RESPONSIBLE FOR CHECKING AND CAULKING EXTERIOR OF WINDOWS ANNUALLY.

11. BASS HOMES INC. WILL NOT WARRANT THE PERFORMANCE OF HEATING AND COOLING IN ONE AND ONE HALF STORY HOMES THAT <u>DO NOT</u> HAVE AN UPSTAIRS SEPARATE UNIT. THE UPSTAIRS WILL HAVE A TENDENCY TO MAINTAIN SEVERAL DEGREES DIFFERENCE IN TEMPERATURE WHICH IS STANDARD TO THE CONSTRUCTION INDUSTRY.

12. BUYER(S) AND SELLER AGREE THAT THERE ARE NO OTHER PROMISES OTHER THAN THAT WHICH IS WRITTEN IN THIS CONTRACT. THIS MEANS INCLUDING ANY VERBAL PROMISES THAT BUYER(S) MAY CLAIM THAT A SALES AGENT OR BASS HOMES INC. EMPLOYEE OR REPRESENTATIVE COULD HAVE IMPLIED OR PROMISED HE OR SHE.

13. BUYERS HEREBY AGREE THAT BASS HOMES INC. WILL NOT ACCEPT ANY LIABILITY OF BUYERS COST OF UTILITY BILLS DURING CONSTRUCTION OF HOME OR AFTER BUYER(S) TAKES OCCUPANCY OF THIS HOME DESCRIBED HEREIN. THIS INCLUDES ANY COMPLAINT BUYER(S) MAY ASSERT OF INFLATED POWER BILL'S OR ANY TYPE OF OTHER UTILITY.

BUYER(S) _Braxth Collins_

BUYER(S) _Kerrie F Collins_

<u>AUGUST 22, 2008</u>
DATE

Exhibit " F "

RE:BRAXTON H. COLLINS AND KERRIE F. COLLINS
COMPLETION CERTIFICATE AND OWNER'S ACCEPTANCE ;
LIMITED ONE-YEAR WRITTEN WARRANTY

The undersigned, owner (whether one or more) of the real property described in their contract with BASS HOMES, INC. ("Contractor") dated : AUGUST 22, 2008    hereby acknowledge and certify as follows:

1. All materials and labor provided for in said contract have been furnished and installed by the Contractor or his subcontractors on our said real property in a good and workmanlike manner; that we have made a full and complete inspection of the same; that all construction and other work called for in said contract has been satisfactorily completed; that the home is fit, suitable and habitable; and the improvements are hereby accepted by us as built.

2. Contractor did not manufacture any materials used in the construction of this home; that the Contractor does not warrant any of the said materials against any defects in QUALITY, FITNESS or MERCHANTABILITY; that the Contractor will make good only on the workmanship of the actual construction of home; and that any and all claims related to the materials used in construction shall be pursued by customers ONLY against the manufacturers of any materials provided to the Contractor.

3. Contractor hereby gives  a limited warranty on the home located at 10720 HWY 614 MOSSPOINT MS. 39562 for a period of one ( 1 ) year following closing or occupancy by the Buyer(s), whichever event occurs first.

4. Contractor warrants the home to be free from latent defects for a period of one ( 1 ) year following closing or occupancy, whichever event occurs first.

5. THIS WARRANTY IS GIVEN IN LIEU OF ANY AND ALL OTHER WARRANTIES, EITHER EXPRESSED OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, HABITABILITY AND /OR WORKMANSHIP.

6. Contractor shall not be liable under the parties' contract or this warranty unless written notice of the latent defect(s) shall have been given by Buyer(s) to Contractor within the (1) year warranty. Steps taken by the Contractor to correct any defect(s) shall not act to extend the warranty period described hereunder.

7. Buyers confirm that they have performed a walk-thru inspection prior to signing the Completion Certificate and Owners Acceptance; Limited One-Year Written Warranty. Further Buyer(s) agree that their signatures below signify that they have accepted the construction of the home and waive any further right to complain of cosmetic deficiencies and the quality of workmanship or any other matter that does not constitute a latent defect.

8. Any and all remedies of the Buyer(s) and any liability of the Contractor shall be governed strictly by the terms of this one-year limited warranty. Neither the Contractor nor its assigns shall be liable for any incidental or consequential damages. under no circumstances may the Buyer(s) recover damages in excess of the amount of the subject building construction contract.

9. Any reference to the singular herein shall also encompass the plural where appropriate; and any reference to the plural shall also encompass the singular where appropriate.

BUYER(S) INITIALS OF RECEIPT OF THIS DOCUMENT BEFORE CONSTRUCTION OF HOME:
BUYER: _Braxtn H Collins_ BUYER: _Kerrie F Collins_

DATE: _____     BUYER: XXXXXXXXXXXXXX _____.

DATE: _____     BUYER: XXXXXXXXXXXXXX _____

Witness: _____     DATE: _____