# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  **CHINESE-MANUFACTURED** | * | **MDL 2047** |
| **DRYWALL PRODUCTS** | * | |
| **LIABILITY LITIGATION** | * | **SECTION L** |
| | * | |
| | * | **JUDGE FALLON** |
| **This document relates to:  All Cases** | * | |
| | * | **MAGISTRATE JUDGE WILKINSON** |
| | * | |

* * * * * * * * * * * * * * * * * *

## MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER ORDER DENYING INJUNCTION FOR CLAIMS BROUGHT BY PLAINTIFF RALPH MANGIARELLI JR.

Defendants Banner Supply Company Pompano, LLC ("Banner") and Sixty Fifth and One, LLC ("Sixty Fifth")[1] file this Memorandum in Support of the Motion to Reconsider Order Denying Injunction for Claims Brought by Plaintiff Ralph Mangiarelli, Jr.  Defendants respectfully request that the Court reconsider its August 18, 2014 Order (Rec. Doc. No. 17967) and enjoin non-opt out Plaintiff Ralph Mangiarelli, Jr. from continuing to prosecute his claims against Defendants in the 17th Judicial Circuit of Broward County, Florida in the case captioned *Hamburg v. Sixty Fifth and One, LLC*, Case No. 10-11665.

Defendants have more fully considered the issue following the Court's Order and respectfully request that the Court reconsider its Order because the definitions of "Class Members" under the Banner and Global Class Settlement Agreements do not include a requirement that an individual own an "Affected Property."  The definition of "Class Members" includes persons pursuing Chinese drywall claims, for stigma damages or otherwise, without regard to whether the claimant owns Affected Property. Additionally, the parties to those

---

[1] Because the Knauf, Interior/Exterior Building Supply, L.P. ("INEX"), and L&W Supply Corp. ("L&W") Class Settlement Agreements contain similar definitions to the Banner and Global Class Settlement Agreements, the Knauf defendants, INEX, and L&W join the motion.  Moreover, because of the importance of the issue to other concerned parties, the Defendants' Steering Committee, Homebuilders' Steering Committee, and Insurance Steering Committee also join the motion.

agreements, including Class Counsel, intended for the agreements to cover claimants who did not own or otherwise live in an Affected Property and for loss of market value and stigma-type claims as long as their alleged damages arose out of or were related to Chinese Drywall.

For these reasons, as more fully stated below, Defendants respectfully request that the Court reconsider its August 18, 2014 Order and enjoin Plaintiff from continuing to prosecute his claims in state court.  If it would be of assistance, the Defendants are amenable to the Court setting this matter for oral argument immediately following the Court's September 18, 2014 status conference.

**I.     Background**

On June 12, 2014, Banner filed a Motion to Enforce Injunction Regarding Claims Brought by Plaintiff Ralph Mangiarelli, Jr.  Rec. Doc. No. 17744.  Banner's motion sought to enjoin Plaintiff from prosecuting his claims in Florida state court because Plaintiff did not opt-out of Banner's Class Settlement Agreement.  On July 17, 2014, the Court issued an Order granting Banner's motion as unopposed.  Rec. Doc. No. 17867.  On July 25, 2014, Sixty Fifth filed a motion similar to Banner's motion requesting an injunction against Plaintiff as it related to the Global Class Settlement Agreement.  Rec. Doc. No. 17897.

On August 18, 2014, the Court issued an Order denying Sixty Fifth's motion and reversing its previous grant of Banner's motion.  Rec. Doc. No. 17967, at pp. 2-4.  For the Court's convenience, the Court's August 18, 2014 Order is recited below:

> On July 25, 2014, Defendant Sixty Fifth and One ("Sixty Fifth") filed a motion to enforce injunction against state claims brought by putative class member Ralph Mangiarelli.  (Rec. Doc. 17897).  Sixty Fifth argues that the Global Settlement enjoins Mr. Mangiarelli's class action suit brought in Florida state court because he never "opted-out" from the Global Settlement.  Sixty Fifth also notes that the Court recently granted a similar motion from Defendant Banner Supply Company Pompano LLC enjoining Mr. Mangiarelli's suit (that motion was unopposed whereas Mr. Mangiarelli's opposes the instant motion).

Mr. Mangiarelli responds, arguing that he was not covered by the Global Settlement, thus did not have a duty to opt-out. Mr. Mangiarelli explains that this condo (in Building Two in his complex) does not, and never did, contain Chinese Drywall. Mr. Mangiarelli's claims are based in a "loss of market value" theory due to the fact that Building One in the complex contains Chinese Drywall.

Defendant Sixty Fifth and One is correct that the Global Settlement, not the Knauf Settlement, is the governing document here: Sixty Fifth was a participating defendant in the Global Settlement Agreement. (Rec. Doc. 15695-3 at 17). Even so, Mr. Mangiarelli does not fall within the meaning of "Class Members" under the Global Settlement because his claim is not "arising from or related to" Chinese Drywall. (Rec. Doc. 15695). Rather, his "loss of market value" claim is based on the fact that a neighbor had Chinese Drywall. Mr. Mangiarelli's condo, in fact, did not even contain Chinese Drywall. These facts likewise indicate that Mr. Mangiarelli's condo is not an "Affected Property" because it was not "actually or allegedly containing or exposed to Chinese Drywall." The Court cannot permit such "stigma" claims to fall within this litigation. To do so would have the potential to greatly expand the scope of this already massive litigation. The Court therefore declines to enjoin Mr. Mangiarelli's state court proceedings against Sixty Fifth and One.

In light of Mr. Mangiarelli's instant opposition and the Court's reasoning herein, the Court also reconsiders its prior grant of Banner Supply Company Pompano LLC's ("Banner") Motion to enforce the injunction against state claims brought by putative class member Ralph Mangiarelli. (Rec. Docs. 17744, 17867). The Court granted that motion based on Mr. Mangiarelli's unopposition. Banner and Sixty Fifth and One are defendants in the same state suit brought by Mr. Mangiarelli and were both participating members in settlements before this Court, thus the reasoning explained herein applies with equal force to both Banner and Sixty Fifth and One. (See Rec. Doc. 17744-2). Indeed, the language in the Banner Settlement is even more restrictive than that the Global Settlement in defining "Affected Properties," which must actually contain Chinese Drywall. (Rec. Doc. 10064). For the reasons explained herein, the Court therefore now declines to enjoin Mangiarelli's state court proceedings against Banner Supply Company Pompano LLC, as well.

## II.    Law and Analysis

First, Defendants respectfully request that the Court reconsider its Order because the definitions of "Class Members" under the Banner and Global Class Settlement Agreements do not include a requirement that an individual own an "Affected Property."

3

Section 1.1.3 of the Banner Class Settlement Agreement defines the "Class" and "Class Members" as including "all persons or entities with claims, known and unknown, against the Settling Defendants arising from, or otherwise related to, Chinese Drywall purchased from, supplied, distributed, marketed, used, sold and/or delivered by Banner." Rec. Doc. No. 10033-3, at p. 3. Similarly, Section 1.1.1 of the Global Class Settlement Agreement defines the "Class," "Settlement Class," and "Class Members" as "all persons or entities, along with their heirs, representatives, attorneys, executors, administrators, executives, subsequent purchasers, residents, guests, tenants, lenders, successors and assigns, with claims, known or unknown, arising from or related to actual or alleged Chinese Drywall purchased, imported, supplied, distributed, marketed, installed, used, sold or in any way alleged to be within the legal responsibility of any Participating Defendant."[2] Rec. Doc. No. 15694-2, at p. 2.

Neither definition requires that a person own an Affected Property or that the person's claim even relate to an Affected Property. All that is required from the definitions is that the person's claim "aris[e] from, or otherwise relate[] to, Chinese Drywall purchased from, supplied, distributed, marketed, used, sold and/or delivered by Banner" in the case of a claim against Banner and that the person's claim "aris[e] from or relate[] to actual or alleged Chinese Drywall purchased, imported, supplied, distributed, marketed, installed, used, sold or in any way alleged to be within the legal responsibility of any participating defendant" in the case of a claim against Sixty Fifth.

To determine whether Plaintiff's claim is governed by the Banner and Global Class Settlement Agreements, the Court need only consider whether Plaintiff is included in the "Class"

---

[2] The definition contains additional provisions related to Class Members that are also Participating Defendants, Participating Insurers, and those in Virginia.

definitions.   The purpose of defining Affected Property in the Banner and Global Class Settlement Agreements is not to define the class or class members.   Rather, the purpose is to define the allocation of different settlement funds, indemnity obligations, releases by defendants and insurers, reserved claims, and to ensure that certain homes are remediated.  *See* Rec. Doc. No. 10033-3, at pp. 10 & 12 (Sections 3.3.5 and 14.1 of the Banner Class Settlement Agreement); Rec. Doc. No. 15696-2, at pp. 9-10, 14-21, 31-32 (Sections 4.2.3, 4.3, 5.2.6, 5.3, 5.4, 5.5, 5.6, and 16.1 of the Global Class Settlement Agreement).

Second, the definitions of "Released Claims" in the agreements make clear that all parties intended for the agreements to encompass and settle all claims against settling defendants that arise out of or relate to Chinese Drywall, regardless of whether the claim is pursued by one who owns or lives in an Affected Property.

Section 3.1 of the Banner Class Settlement Agreement defines "Released Claims" as:

> the following claims arising out of, in any manner related to, or in any way connected with, Chinese Drywall, the Litigation, or other Related Actions: . . . diminution of property value, . . . economic loss, . . . nuisance, . . . public or private nuisance, . . . [f]or any right legally assertable by the Class or any Class Member now or in the future, . . . [f]or any claim, right, or action arising out of, based on, or relating to any body of law whatsoever, . . . [and] [f]or all injuries or damages of any type, nature, or character arising from, attributable to, or in any way resulting from Chinese Drywall . . . .

Rec. Doc. No. 10033-3, at pp. 7-8.   Similarly, Section 5.1 of the Global Class Settlement Agreement defines "Released Claims" as:

> Any and all claims of any kind and nature whatsoever of a Class Member . . . arising out of, or in any manner related to, Chinese Drywall . . . includ[ing], but not . . . limited to . . . diminution of property value, stigma, . . . economic loss, . . . [f]or nuisance, . . . inconvenience, . . . public or private nuisance, . . . [f]or any claim, right or action arising out of, based, on or relating to any body of law whatsoever, . . . [and] [f]or all injuries or damages of any type, nature, or character arising from, attributable to, or in any way resulting from the Chinese Drywall . . . .

Rec. Doc. No. 15695-2, at pp. 10-12.  The definitions above make clear that "Released Claims" are not tied to Affected Property.  Rather, the broadly worded definitions release any claim in any manner arising out of or related to Chinese Drywall, including specifically claims for stigma, economic loss, nuisance, and diminution of property value.  Thus, the settlement agreements clearly and unequivocally govern and release Plaintiff's claim for loss of market value being pursued in state court.

The Court's August 18, 2014 Order found that Plaintiff's loss of market value and stigma-type claims did not arise from, or otherwise relate to, Chinese Drywall, but this was predicated on Affected Property being read into the definition of Class Members.  However, that same phrase (arise from or relate to Chinese Drywall) is also contained in the definitions of Released Claims as seen above.  Thus, based on the Court's Order, any Class Member as well as all non-opt out plaintiffs not included in the Class could conceivably still file suit for loss of market value or bring stigma-type claims related to Chinese Drywall in their neighbor's home.  This result cannot be squared with the unambiguous terms of the settlement agreements, which unequivocally release such claims.

The parties who participated in the negotiations of the MDL settlements have conferred following the Court's August 18, 2014 Order and all, including Class Counsel,[3] agree that it was their intent for the MDL settlements to cover all claims that arose out of, or otherwise related to, Chinese Drywall irrespective of whether an individual owned an Affected Property.  To hold otherwise would contradict the intent of the parties in entering into the MDL settlements.

---

[3] Class Counsel is defined in Section 1.9.1 of the Banner Class Settlement Agreement (Rec. Doc. No. 10033-3, at p. 4) and Section 1.6.1 of the Global Class Settlement Agreement (Rec. Doc. No. 15695-2, at p. 4).

### III.   Conclusion

For the foregoing reasons, Defendants respectfully request that the Court reconsider its August 18, 2014 Order (Rec. Doc. No. 17967) and enjoin non-opt out Plaintiff Ralph Mangiarelli, Jr. from continuing to prosecute his claims against Defendants in the 17th Judicial Circuit of Broward County, Florida in the case captioned *Hamburg v. Sixty Fifth and One, LLC*, Case No. 10-11665.  If it would be of assistance, the Defendants are amenable to the Court setting this matter for oral argument immediately following the Court's September 18, 2014 status conference.

Dated:  August 28, 2014

Respectfully submitted,

*/s/ Jeffrey M. Paskert*
Jeffrey M. Paskert
Florida Bar No. 846041
Email:  jpaskert@mpdlegal.com
Secondary:  jegusquiza@mpdlegal.com
Ryan E. Baya
Florida Bar No. 0052610
Email:  rbaya@mpdlegal.com
Secondary:  dhutchins@mpdlegal.com
MILLS PASKERT DIVERS
100 N. Tampa St., Ste. 3700
Tampa, FL 33602
Telephone:  (813) 229-3500
*Attorneys for Sixty-Fifth and One LLC*


*/s/ Michael P. Peterson (with approval)*
Florida Bar No. 982040
Email:  mpeterson@petersonespino.com
PETERSON & ESPINO, P.A.
10631 Southwest 88th Street, Suite 220
Miami, FL  33176
Telephone:  (813) 270-3773
*Attorneys for Banner Supply Company Pompano, LLC*

7

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, and to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana by using CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 28th day of August, 2014.

By: */s/ Jeffrey M. Paskert* _____