UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | * | MDL No.  2047 |
| DRYWALL PRODUCTS LIABILITY | * | |
| LITIGATION | * | |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO | * | JUDGE FALLON |
| | * | MAG. JUDGE WILKINSON |
| Braxton H. Collins, et al., vs. Bass Homes, Inc., | * | |
| Et al.; S.D. Mississippi, C.A. No. 1:13-00297 | * | **Case No.:  13-6652** |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | * | MDL No.  2047 |
| DRYWALL PRODUCTS LIABILITY | * | |
| LITIGATION | * | |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO | * | JUDGE FALLON |
| | * | MAG. JUDGE WILKINSON |
| Jason S. Herrington, et al., vs. Bass Homes, Inc., | * | |
| Et al.; S.D. Mississippi, C.A. No. 1:13-00297 | * | **Case No.:  13-6653** |

**BRIEF IN SUPPORT OF**
**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Come now the Third-Party Defendants Pensacola Stevedore Company, Inc., a Florida corporation, ("Pensacola Stevedore") and Pate Stevedore Company, Inc., an Alabama corporation, ("Pate Stevedore") (hereinafter collectively referred to as the "Stevedore Third-Party Defendants") and file this Brief in Support of their Motion to Dismiss the third-party claims of Ace Home Center, Inc. against them in the above-entitled actions on the grounds that no personal jurisdiction exists over them in these action.

**SUMMARY OF THE PLEADINGS**

1.      **Complaints in Collins v. Bass Homes and Herrington v. Bass Homes**

Braxton and Kerrie Collins and Jason and Cassie Herrington filed separate actions in Mississippi state court, which were removed to the District Court for the Southern District of Mississippi and transferred to this court as part of the MDL proceedings relating to Chinese Drywall.  The Collins are owners of a residence in Moss Point, Mississippi, which allegedly contains defective Chinese drywall.  (Collins Amended Comp., ¶1)  The Herringtons are owners of a residence in Lucedale, Mississippi, which allegedly contains defective Chinese drywall. (Herrington Amended Comp., ¶1)  Both sets of plaintiffs have brought claims against the builder of their residences, Bass Homes, Inc. ("Bass Homes"), an Alabama corporation with its principal place of business in Alabama.  (Amended Comp., ¶¶2, 8)  They have also brought claims against Ace Home Center, Inc. ("Ace Home Center"), an Alabama corporation with its principal place of business in Robertsdale, Alabama, and which allegedly sold the defective drywall to Bass Homes or a subcontractor hired by Bass Homes.  (Amended Comp., ¶¶4, 12)  Plaintiffs sue Bass Homes and Ace Home Center under various contract and tort theories for alleged damages resulting from the installation of the defective Chinese drywall.   (Collins Amended Comp., ¶126; Herrington Amended Comp., ¶127)

### 2.    Ace Home Center's Third-Party Complaint

In both actions, Ace Home Center has filed a third-party complaint against a number of third-party defendants, including the Stevedore Third-Party Defendants.  Ace Home Center identifies Pensacola Stevedore and Pate Stevedore as Florida corporations from which it purchased Chinese drywall from Pensacola Stevedore and/or Pate Stevedore.  (Amended Third-Party Comp., ¶¶2, 16)  Ace Home Center alleges that if the plaintiffs' claims are true that their home was allegedly constructed with Chinese drywall purchased from Ace Home Center, then Pensacola Stevedore and Pate Stevedore (and the other third-party defendants), are liable to Ace

Home Center for any liability it may have to the plaintiffs.  (First Amended Comp., ¶20)  Ace Home Center seeks indemnity on theories of Common Law or Equitable Indemnity  (Count I), Breach of Contract (Count II), Negligence and Gross Negligence (Count III), Breach of Implied Warranty of Merchantability (Count IV), Breach of Implied Warranty of Fitness for a Particular Purpose (Count V), and Breach of Express Warranty (Count VI).

## SUMMARY OF JURISDICTIONAL FACTS

Pensacola Stevedore is a Florida corporation with its principal place of business in Pensacola, Florida.  It owns and operates a stevedoring business at the Port of Pensacola.  It does business under the fictitious business name Pate Stevedore Company or Pate Stevedore Company, Inc.  (Affidavit of Michael L. Pate filed concurrently herewith as Exhibit "1", ¶ 2 and Exhibit "A" attached thereo.

A separate Alabama corporation – Pate Stevedore Company, Inc. – was formed in 2009, in order to perform stevedoring services at the Port of Mobile.  (Pate Aff., ¶ 3 and Exhibit "B" attached thereto).  This corporation was not in existence at the time of the purchase of Chinese drywall by Pensacola Stevedore in 2006, nor at the time of any sales of drywall by Pensacola Stevedore thereafter.  Pate Stevedore Company, Inc., the Alabama corporation, never purchased or sold drywall at any time to anyone.  (Id.)

Neither Pensacola Stevedore nor Pate Stevedore has ever been registered to do business in the State of Mississippi.  (Pate Aff., ¶4)  Neither company has ever had any office in the State of Mississippi.  (Pate Aff., ¶5)  Neither company has ever advertised in the State of Mississippi or solicited business from residents of the State of Mississippi.  (Pate Aff., ¶6).  Neither company has ever owned, rented or leased any property in the State of Mississippi.  (Pate Aff., ¶7).  Neither company has ever had a registered agent for service of process in Mississippi.  (Pate

Aff., ¶8)  Neither company has ever stored or kept any equipment or inventory in the State of Mississippi.  (Pate Aff., ¶9)  Neither company has ever had a telephone, fax or mailing address in the State of Mississippi.  (Pate Aff., ¶10)  Neither company has ever had a checking, savings or other financial account based in Mississippi.  (Pate Aff., ¶11)

Pate Stevedore has never conducted, or been licensed to conduct, any business in the State of Mississippi.  Pensacola Stevedore has never conducted or been licensed to conduct any business in the State of Mississippi except for one job in 2002 in which it loaded onto railroad cars certain power equipment, located at a partially constructed power plant in McComb, Mississippi, for transportation to warehouses at the Port of Pensacola.  This job lasted about two months.  Pensacola Stevedore purchased a local business license in McComb, Mississippi in order to perform these services.  (Pate Aff., ¶12)

Pensacola Stevedore has never manufactured, purchased or sold drywall or any other building products, except for a one-time purchase of some salvaged, damaged drywall in August of 2006.  This drywall came from a shipment of drywall imported by Devon International Trading Company, Inc. ("Devon") which arrived at the Port of Pensacola aboard the M/V SANKO RALLY in June of 2006.  Much of this drywall had become damaged from rough seas during the overseas shipment.  Pensacola Stevedore purchased a certain amount of this salvaged, damaged drywall and made it available for sale from a warehouse at the Port of Pensacola, at deeply discounted prices.  (Pate Aff., ¶13)  Pensacola Stevedore did not direct any advertising or other marketing activities to residents of  Mississippi, in attempting to sell any of this drywall.  (Pate Aff., ¶14)

Pensacola Stevedore did not deliver or pay for the delivery of any of this drywall to Mississippi.  All sales of the drywall were made by Pensacola Stevedore in Florida where the

4

drywall was loaded onto vehicles of the purchasers or their designated carriers. Pensacola Stevedore did not transport any of this drywall itself to any location, except for one delivery to a customer in Milton, Florida, and did not undertake to pay the loading or freight costs incurred in transporting the drywall to any location. Pensacola Stevedore separately charged the customer for the costs of loading if its services were used. (Pate Aff., ¶15)

Pensacola Stevedore sold all of this damaged drywall out of the warehouse where it was stored and in its original packaging, i.e., visqueen-wrapped bundles of sixty-eight (68) sheets of drywall per bundle. Each of these bundles had an unknown amount of damaged drywall in them. (Pate Aff., ¶16)   In September and October of 2006, some of these bundles of damaged drywall were sold by Pensacola Stevedore to Ace Home Center, located in Robertsdale, Alabama, after first being inspected by Mr. Henry Vick, President of Ace Home Center in Pensacola. (Id.; Deposition of Henry Vick, concurrently herewith as Exhibit "2", dated 3/17/2011, pp. 11-13, 29-30, taken in Chad Everett Langham, et al. v. Ace Home Center, et al., Baldwin County Circuit Court, Alabama, CV-2009-900948). These bundles were picked up by Ace Home Center in Pensacola and transported at its own cost in its own vehicles to its store in Robertsdale. (Pate Aff., ¶16; Vick Depo, pp. 89-90) As per the parties' agreement, Ace Home Center would open the bundles, go through the sheetrock piece-by-piece, keep what it considered was marketable, and dispose of the remaining sheets. (Pate Aff., ¶16, Vick Depo, p. 86) Ace Home Center would then send Pensacola Stevedore a purchase order, indicating how many sheets it had kept and the disposal costs it had incurred. A corresponding invoice would then be sent by Pensacola Stevedore to Ace Home Center, billing it for the number of sheets of drywall that Ace Home Center had decided to keep, after deducting the dumpster and labor charges incurred by Ace Home Center in disposing of the rejected drywall. (Pate Aff., ¶16, Vick Depo, pp. 61-63)

Typically, Ace Home Center kept and paid for less than half of the drywall transported to its store.  (Pate Aff., ¶16 and Ex. "C" attached thereto)

Ace Home Center sold the Chinese drywall sheets that it retained as new drywall.  It was mixed for sale with other new domestic drywall and sold to Bass Homes at the same retail price as new domestic drywall.  (Vick Depo, pp. 103, 187-188)  Ace Home Center never disclosed to Bass Homes that it purchased this drywall outside the normal new product supply chain.  (Vick Depo., pp. 104-109)  Mr. Vick owned a discount store next to Ace Home Center.  (Vick Depo, p. 99)  This discount store would sell building materials previously for sale at Ace Home Center that may have been overstocked or were rejected for some reason.  (Vick Depo, pp. 145-48).  None of the Chinese drywall purchased from Pensacola Stevedore was ever sold in the discount store.  (Vick Depo., p. 148-49)

In selling this salvaged, damaged drywall to Ace Home Center, Pensacola Stevedore had no knowledge as to whom Ace Home Center might sell the product or the places to which any of the drywall might be delivered or for what specific purposes.  Pensacola Stevedore had no knowledge that defendant Bass Homes would be a purchaser of drywall from Ace Home Center and never sold any drywall directly to Bass Homes.  Pensacola Stevedore had no knowledge that any of the drywall sold to Ace Home Center would ultimately be used in the construction of any residences in Mississippi.  Pensacola Stevedore had no knowledge that any of the drywall sold by it would ultimately be used in the construction of a home purchased by the plaintiffs.  (Pate Aff., ¶17)

## **LEGAL ARGUMENT**

### **I.**
### **THIS COURT HAS NO JURISDICTION OVER THE STEVEDORE THIRD-PARTY DEFENDANTS UNDER THE MISSISSIPPI LONG-ARM STATUTE OR THE DUE PROCESS CLAUSE**

A.   **The Jurisdiction of this Court is Determined by the Jurisdiction of the Transferor Court in Mississippi**

In the context of cases consolidated for pre-trial purposes under the multidistrict litigation statute, 28 U.S.C., §1407, the transferee court can exercise personal jurisdiction to the same extent as the transferor court could.  In re Agent Orange Product Liability Litigation, 818 F.2d 145, 163 (2nd Cir. 1987); In re Chinese Manufactured Chinese Drywall Products Liability Litigation, 767 F.Supp.2d 649, 657 n.2 (E.D.La. 2011).   The relevant question is whether minimum contacts are established with the state of the transferor court rather than transferee MDL court.  In re Chinese-Mfgrd. Drywall Prod. Liability Litigation, 742 F.3d 576, 583 n.8 (5th Cir. 2014) (citing Wright, Miller & Cooper, Fed. Prac. & Proc., §1067.3 (3d Ed.)).  Because the transferor court in this action was a federal district court in Mississippi, the personal jurisdiction issue must be determined in the same manner as that court would determine the issue.

The plaintiff bears the burden of establishing a district court's jurisdiction over a non-resident.  Ainsworth v. Moffett Engineering, Ltd., 716 F.3d 174, 176 (5th Cir. 2013), *cert. denied*, 134 S.Ct. 644 (2013).

B..   **This Court has no Jurisdiction over the Stevedore Third-Party Defendants Under the Mississippi Long-Arm Statute Because Ace Home Center is a Non-Resident and the Stevedore Third-Party Defendants Committed no Tort in Mississippi**

A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant if "(1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution."  Ainsworth v. Moffett Engineering Ltd., 716 F.3d 174, 177 (5th Cir. 2013) (quoting Latshaw v. Johnston, 167 F.3d 208, 211 (5th Cir. 1999)).

"The first prong of this two-prong jurisdictional analysis asks 'whether the long-arm statute of the forum state confers personal jurisdiction over the defendant.'' <u>Stripling v. Jordan Products Co., LLC</u>, 234 F.3d 863, 869 (5th Cir. 2000).  The Mississippi long-arm statute reads in pertinent part:

> "Any non-resident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or non-resident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi, and shall thereby be subjected to the jurisdiction of the courts of this state."

<u>Miss. Code Annot.</u>, §13-3-57.

Section 13-3-57 is thus applicable to three types of non-resident defendants:  (1)  Non-residents who make a contract with a resident of the state to be performed in whole or in part within the state; (2) any non-resident who commits a tort in whole or in part in the state against a resident or non-resident; and (3) non-residents who are "doing business" within the state.

In analyzing the claims of Ace Home Center against Pensacola Stevedore and Pate Stevedore, the only prong of the Mississippi long-arm statute that might possibly have any application is the "tort" prong.  The "contract" prong cannot apply because Ace Home Center is not a resident of Mississippi, and this action concerns no other contracts made by either of the Stevedore Third-Party Defendants with any Mississippi resident.  Furthermore, a non-resident corporation such as Ace Home Center cannot rely on the "doing business" prong of the long-arm statute.  *See* <u>Delgado v. Reef Resort, Ltd.</u>, 364 F.3d 642 (5th Cir. 2004), *cert. denied* 543 U.S. 1003, 125 S.Ct. 623 (2004); <u>Submersible Systems, Inc. v. Perforadora Central, S.A.</u>, 249 F.3d 413, 418 (5th Cir. 2001).  Therefore, jurisdiction under the Mississippi long-arm statute depends

upon a showing that Pensacola Stevedore or Pate Stevedore committed a tort in whole or in part in Mississippi.

In order for the "tort" prong  of the long-arm statute to support jurisdiction, the relevant tort is the tort alleged against the non-resident defendant challenging jurisdiction.  *See* Hogrobrooks v. Progressive Direct, 858 So.2d 913, 921 (Miss.App. 2003) (tort of bad faith against insurer for failing to repair vehicle did not occur in Mississippi where accident occurred but in Tennessee where demand and refusal to repair occurred).  "Mississippi's long-arm statute is satisfied if the tortious conduct or the injury occurs in the state".  Overland Ventures, LLC v. Giant Tyres USA, LLC, 2014 WL 4639759, *3 (S.D.Miss. Sept. 16, 2014).

The injury to a non-resident indemnitee, arising from the wrongful failure to indemnify, does not arise in Mississippi merely because the claim against the indemnitee arises in Mississippi.  In Mortensen Construction & Utility, Inc. v. Grinnell Mut. Reinsurance Co., 718 F.Supp.2d 781 (S.D. Miss. 2010), an insured brought suit against his CGL insurer for failing to pay a claim against the insured arising out of a construction project in Mississippi.  The Court held that no part of the alleged tort – be it the CGL insurer's challenged decision or the injury claimed by the insured as a result of that decision – was committed or occurred in Mississippi. Id. at 784.  In Overland Ventures, LLC v. Giant Tires USA, LLC, *supra*, certain non-residents, sued by a Mississippi resident on a third-party complaint for breach of contract in the sale of certain tires, brought their own third-party complaint against certain Ohio companies that had contracted with them to supply the tires, alleging breach of contract, fraud, negligent misrepresentation, and conversion.  The Court dismissed this third-party complaint for lack of jurisdiction over these Ohio entities under the Mississippi long-arm statute. The Court concluded that the record revealed no Mississippi-based acts, omissions or injuries as to these third-party

9

claims.  There was no representation made by the third-party defendants to the third-party plaintiffs from Mississippi; no receipt by the third-party plaintiffs of any communication from the third-party defendants in Mississippi; no payments made by the third-party plaintiffs to the third-party defendants from Mississippi; no receipt by the third-party defendants of any payments from the third-party plaintiffs in Mississippi; and no requirement that the contract between the parties be performed in Mississippi.  2014 WL 4639759 at *3.

Similarly, the third-party claims of Ace Home Center against Pensacola Stevedore and Pate Stevedore, together with the evidentiary materials submitted herewith, reflect no Mississippi-based acts, omissions or injuries with respect to these claims.  To the extent that any conduct on the part of Pensacola Stevedore was tortious, that conduct must have occurred in Florida at the time of the sale and delivery of the drywall to Ace Home Center.  To the extent that any of the claims for indemnity rest upon that tortious conduct, the actual injury to Ace Home Center has arisen or will arise in Alabama, where it has its principal place of business and where any economic losses from a failure to indemnify will be incurred.  The fact that the claims against it are pending in Mississippi does not make Mississippi the place of injury to this Alabama corporation, which has no property or presence in that state.  The place of injury of a claim for indemnity based on tortious conduct is, like other torts consisting of economic injury, the place where the plaintiff is located.  *See* Unified Brands, Inc. v. Teders, 868 F.Supp.2d 572, 579 (S.D.Miss. 2012) (injury to plaintiff from defendant's tortious interference with business relationships necessarily occurred in Mississippi, the principal place of business of the plaintiff, where the loss of profits and prospective contracts would necessarily occur); Warner v. Landstar, LLC, 2006 WL 1029956, *3 (N.D.Miss. April 18, 2006) (injuries to plaintiff, arising as a result of defendant's tortious interference with contract, occurred in Mississippi, the place of his

residence at time of tort); <u>Blackledge Emulsions, Inc. v. Blankenship</u>, 2013 WL 6492876, *2 (S.D.Miss. Dec. 10, 2013) (same); <u>Singing River Hosp. System v. Swenson</u>, 996 F.Supp. 591, 593 (S.D.Miss. 1998) (same); *Cf.* <u>First Trust Nat'l Assn. v. Jones Walker, et al.</u>, 996 F.Supp. 585, 588-89 (S.D.Miss. 1998) (in action for legal malpractice against law firm for negligence in drafting opinion letter stating that mortgage on Mississippi casino was valid and superior to other obligations, injury to plaintiff did not occur in Mississippi, even though collateral was located there; plaintiff's principal place of business was Minnesota, and opinion letter was prepared in Louisiana and sent to Texas counsel for New York investment banking house).

In summary, Pensacola Stevedore and Pate Stevedore are not subject to personal jurisdiction under the Mississippi long-arm statute.  Any alleged tortious conduct by Pensacola Stevedore occurred in Florida and any injury to Ace Home Center arising out of this tortious conduct arose or will arise in Alabama.  Pate Stevedore never sold any drywall and thus there is no evidence that it even committed any tortious conduct that could serve as the basis for the assertion of jurisdiction over it.  The Stevedore Third-Party Defendants are entitled to dismissal of the claims against them for lack of jurisdiction over them.

    **C.**    <u>**This Court has no Jurisdiction over the Stevedore Third-Party Defendants Under the Due Process Clause Because Neither Defendant has the Necessary Minimum Contacts with Mississippi and Exercise of Jurisdiction over them Would Offend Fair Play and Substantial Justice**</u>

Even if the third-party claims against the Stevedore Third-Party Defendants fell within the reach of Mississippi's long-arm statute, they nevertheless fail the second prong of the jurisdictional analysis – consistency with constitutional due process.  Due process permits a court to exercise personal jurisdiction over a non-resident defendant only when:  (1)  That "defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with that state, and (2) the exercise of jurisdiction over the defendant does not

offend traditional notions of fair play and substantial justice."  Panda Brandywine Corp., 253

F.3d at 867 (quoting Alpine View Co. v. Atlas Copco AB, 205 F.3d 208, 215 (5th Cir. 2000)).

Two types of "minimum contacts" exist:  Those that give rise to specific personal

jurisdiction and those that give rise to general jurisdiction.

> ### 1.  No general jurisdiction exists over Stevedore Third-Party Defendants because neither has "continuous and systematic" affiliations with the State of Mississippi

"'A court may assert general jurisdiction over foreign (sister-state or foreign-country)

corporations to hear any and all claims against them when their affiliations with the state are so

'continuous and systematic' as to render them essentially at home in the forum state.'"  Pervasive

Software, Inc. v. Lexware GmbH & Co. KG, 688 F.3d 214, 230 (5th Cir. 2012) (quoting

Goodyear Dunlop Tires Operations SA v. Brown, 131 S.Ct. 2846, 2851 (2011), quoting in turn

International Shoe Co. v. Washington, 326 U.S. 310, 317, 66 S.Ct. 154 (1945)).  "[C]ontinuous

activity of some sorts within a state is not enough to support the demand that the corporation be

amenable to suits unrelated to that activity . . . the continuous corporate operations within a state

[must be] so substantial and of such a nature as to justify suit against it on causes of action

arising from dealings entirely distinct from those activities."  Id. (quoting International Shoe, 326

U.S. at 318).

Since International Shoe, the Supreme Court has concluded in only one case that an out-

of-state corporate defendant's in-state contacts were sufficiently "continuous and systematic" to

justify the exercise of general jurisdiction of claims unrelated to those contacts.  See Perkins v.

Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413 (1952) (general jurisdiction

appropriately exercised over Phillipine corporation in Ohio where corporation had ceased

activity in Phillipines during war, and had conducted all its business in Ohio).  In contrast, it has

held that no general jurisdiction exists under circumstances involving far more contacts with the

forum state than exist in the present case.  *See* <u>Helicopteros Nacionales De Columbia SA v. Hall</u>, 46 U.S. 408, 409, 416, 104 S.Ct. 1868 (1984), (no general jurisdiction over Columbian corporation in Texas, even though it sent its CEO to Texas for contract negotiations; accepted checks drawn on a Texas bank; purchased helicopters, equipment and training services from a Texas-based company; and sent personnel to a Texas-based company's facilities in Texas for training).  <u>Goodyear Dunlop</u>, 131 S.Ct. at 2856 ("We see no reason to differentiate from the ties to Texas held insufficient in <u>Helicopteros</u> the sales of petitioner's tires sporadically made in North Carolina through intermediaries").  "Injecting a product, even in substantial volume, into a forum's stream of commerce does not support general jurisdiction."  <u>Jackson v. Tanfoglio Giuseppe, SRL</u>, 615 F.3d 579, 584 (5th Cir. 2010);  *see* <u>Goodyear Dunlop Tires Operations v. Brown</u>, 131 S.Ct. 2846, 2855-57 (flow of tires manufactured by defendant into forum state was insufficient to establish general jurisdiction);  *see generally* <u>In re Chinese Manufactured Chinese Drywall Products Liability Litigation</u>, 767 F.Supp.2d at 659-60 (summarizing Fifth Circuit decisions demonstrating that this Circuit "has consistently imposed the high standard set by the Supreme Court when ruling on general jurisdiction issues") (quoting <u>Johnston v. Multidata Systems, International Corp.</u>, 523 F.3d 602, 611-14 (5th Cir. 2008)).

Clearly, under these standards, neither Pensacola Stevedore nor Pate Stevedore has had such "continuous and systematic" activity in Mississippi to subject either of them to general jurisdiction.  Neither has any property or presence in Mississippi.  Neither of them has done any business in Mississippi except for one job that Pensacola Stevedore did in 2002 that lasted about two months and for which it obtained a one-time business license to do that work.  All sales of drywall by Pensacola Stevedore were consummated in Florida where the drywall was delivered

to the purchaser or its carrier.  Pensacola Stevedore did not market or advertise the sale of any drywall to Mississippi residents.

> **2.**      **No specific jurisdiction exists over Stevedore Third-Party Defendants because the damaged drywall sold in Florida to an Alabama hardware store did not reach Mississippi through the foreseeable channels of commerce in which Pensacola Stevedore was participating as a salvage seller but rather through the unforeseeable unilateral actions of  Ace Home Center in selling this drywall as a new product at full retail prices and the unilateral actions of the homebuilder transporting it to Mississippi**

Specific jurisdiction exists when the suit "aris[es] out of or relate[s] to the defendant's contact within the forum."  Pervasive Softward, Inc., 688 F.3d at 220 (quoting Goodyear Dunlop, 131 S.Ct. at 2853, quoting in turn Helicoperos, 466 U.S. at 414 n.8).  "Specific jurisdiction . . . depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum state and is therefore subject to the state's regulation."  Id. (quoting Goodyear Dunlop, 131 S.Ct. at 2851, quoting in turn Von Mehren & Trautman, "Jurisdiction to Adjudicate:  A Suggested Analysis," 79 Harv.L.Rev. 1121, 1136 (1966).  In evaluating the contacts with the state, the inquiry is "whether there was 'some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'"  Id. at 221 (quoting Goodyear Dunlop, 131 S.Ct. at 2583, quoting in turn Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228 (1958)).  "The 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as the result of 'random,' 'fortuitous' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'"  Id. at 222 (quoting Burger King v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174 (1985)).

In summary, specific jurisdiction requires a plaintiff to show that:  "(1)  There are sufficient (i.e., not 'random, fortuitous or attenuated') pre-litigation connections between the

non-resident defendant and the forum; (2) the connection has been purposefully established by the defendant; and (3) the plaintiff's cause of action arises out of or is related to the defendant's forum contacts." Pervasive Software, Inc., 688 F.3d at 221 (quoting Robert C. Casad & William B. Richman, Jurisdiction in Civil Actions, §2-5 at 144 (3d Ed. 1998)).

When evaluating "minimum contacts" in products liability cases, the Fifth Circuit has historically "applied a 'stream of commerce' principle to permit the assertion of specific jurisdiction over non-resident defendants that send a defective product into a forum." Jackson v. Tanfoglio Giuseppe, S.R.L., 615 F.3d 579, 584 (5th Circ. 2010). In the wake of the divided opinions of the Justices in Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 107 S.Ct. 1026 (1987), none of which commanded a majority, the Fifth Circuit has continued to follow the original "stream of commerce" theory established by the majority opinion in Worldwide Volkswagen v. Woodson, 444 U.S. 286, 100 S.Ct. 559 (1980), and has rejected the "stream of commerce plus" theory advocated by the plurality opinion authored by Justice O'Connor. See Ruston Gas Turbines, Inc. v. Donaldson Co., Inc., 9 F.3d 415, 420 (5th Cir. 1993).[1]

In Worldwide Volkswagen, plaintiff sued an automobile retailer and distributor – both New York corporations – in an Oklahoma court, alleging that design defects in their automobile, purchased in New York, caused them injuries during an accident in Oklahoma. 444 U.S. at 288. Plaintiffs argued that the Oklahoma court could permissibly exercise personal jurisdiction over

---

[1] The Fifth Circuit has also concluded that the law remains unchanged, with respect to the "stream of commerce" test, after the Supreme Court's decision in J. McIntyre Machinery, Ltd. v. Nicastro, 131 S.Ct. 2780 (2011). See Ainsworth v. Moffett Engineering, Ltd., 716 F.3d at 177-179. Given that the reasoning of the plurality opinion in McIntyre did not command a majority vote, "the holding of the Court may be viewed as that position taken by those members who concurred in the judgments on the narrowest grounds," which, in McIntyre, was the position taken by Justice Breyer in his concurring opinion. Id. at 178 (quoting Marks v. U.S., 430 U.S. 188, 193, 97 S.Ct. 990 (1977)). Justice Breyer concluded that "resolving [the] case require[d] no more than adhering to [the Supreme Court's] precedents." Id.) (quoting McIntyre, 131 S.Ct. at 2791-92).

these defendants because it was "foreseeable" that an automobile sold in New York could cause an injury in Oklahoma due to the vehicle's inherently mobile nature. Id. at 295. The Court, however, explained that "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the due process clause." Id. If it were, "[e]very seller of chattels would in effect appoint the chattel his agent for service of process. His amenability to suit would travel with the chattel." Id. at 296. Although foreseeability is not wholly irrelevant, "the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum state. Rather, it is that the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." Id. at 297. "The forum state does not exceed its powers  under the due process clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce *with the expectation that they will be purchased by consumers in the forum state*." Id. at 297-298 (emphasis added).

The Court concluded that there was an insufficient basis for Oklahoma jurisdiction over the retailer or distributor. The retailer's sales were made in Massena, New York. The distributor's market, although substantially larger, was limited to dealers in New York, New Jersey and Connecticut, with no evidence that automobiles distributed by the distributor were sold to retail customers outside this tri-state area. Although it was "foreseeable" that purchasers of automobiles sold by this distributor and retailer might be taken to Oklahoma, "the mere 'unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum state.'"  444 U.S. at 298 (quoting Hanson v. Denckla, 357 U.S. at 253); *see also* Choice Healthcare, Inc. v. Kaiser Foundation Health Plan of Colorado, 615 F.3d 364, 374 (5th Cir. 2010) (independent action by insureds of defendant to

obtain emergency care in Louisiana, unrelated to any marketing scheme by defendant, was analogous to automobile driver in Worldwide Volkswagen and "inconsistent with the notion that Kaiser made purposeful commercial contact with Louisiana for the purpose of increasing its revenue").  In the words of Justice Brennan, in his concurring opinion in Asahi, "the stream of commerce refers not to the unpredictable currents and eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale."  480 U.S. at 117. [2]  The Fifth Circuit has adopted Justice Brennan's analysis in Asahi.  Choice Healthcare, Inc., 615 F.3d at 373.

In the wake of Asahi and McIntyre, the Fifth Circuit has continued to hold that, in order to satisfy the minimum contacts requirements, plaintiffs must show that "the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state."  In re Chinese Manufactured Drywall Products Liability Litigation, 753 F.3d at 548 (5th Cir. 2014) (quoting Ainsworth, 716 F.3d at 177).  The Fifth Circuit has repeatedly cited the language of Worldwide Volkswagen that the "foreseeability" critical to due process is "not the mere likelihood that the product will find its way into the forum state," but rather whether the "defendant's conduct and connection to the forum state are such that he should reasonably anticipate being haled into court there."  Pervasive Software, Inc. v. Lexware GmbH, amp & Co., KG, 688 F.3d at 228 (quoting Worldwide Volkswagen, 444 U.S. at 297); Seiferth v. Helicoperos Atuneros, Inc., 472 F.3d 266, 273 (5th Cir. 2006) (same); Bayou Steel Corp. v. M/V AMSTELVOORN, 809 F.2d 1147, 1151 (5th Cir. 1987) (same).  Contacts with the forum state "must have been purposefully established by the defendant."  Pervasive

---

[2] This "confinement" of the stream to its "anticipated" channels is the reason for Justice Brennan's rejection of the any need to show some "additional conduct" on the part of a defendant directed towards the forum, in order to establish jurisdiction.  480 U.S. at 117.  This "anticipated" flow ensures that the market participant "is aware that the final product is being marketed in the forum state . . . ," making a lawsuit in that forum not surprising.  Id.

Software, Inc., 688 F.3d at 228 (quoting Casad & Richman, §2-5 at 148-49) (emphasis in original).  In Pervasive Software, the Court held that the German defendant's commercial interactive website, through which it sold some 15 software programs to Texas residents, was insufficient to establish "purposeful attempts to develop a market" for defendant's software programs in Texas and thus insufficient to permit the assertion of jurisdiction over defendant.  Id. at 228.

Lower federal courts in this circuit have followed this foreseeability analysis, finding no jurisdiction over defendants who were not aware that the products they sold, and which caused the injury, would be delivered to Mississippi.  In Bumgarner v. Carlisle Medical, Inc., 809 F.Supp. 461 (S.D.Miss. 1993), the family of a customer who received prescription medications by mail from an Alabama pharmacy brought suit against the pharmacy for physical and mental injuries arising from allegedly incorrect medications.  The pharmacy brought a third-party complaint against its former pharmacist for indemnity.  The Court concluded that, because no evidence was presented that the pharmacist was aware that the prescription he filled for the customer was being sent to Mississippi, there was insufficient evidence to show that the pharmacist had "purposefully directed" his activities to Mississippi, and therefore the court lacked personal jurisdiction over him.  Id. at 464.

In Justiss Oil Co. v. T3 Energy Services, 2008 WL 4386989 (W.D.La. Aug. 22, 2008), the Court held that no personal jurisdiction existed over a Texas company which had sold oil field equipment to a Texas buyer which thereafter sold it to the plaintiff, a Louisiana resident, where the equipment ultimately failed, causing additional work to be done on an oil well in Louisiana.  The Court held that it was not foreseeable to the seller that its equipment would reach Louisiana.  The fact that Louisiana was an oil and gas producing state was "not sufficient

to conclude that [defendant] had the expectation that its product would ultimately be purchased by an oil and gas company (Justiss) in Louisiana." Id. at *3. *See also* United Galvanizing, Inc. v. Imperial Zinc Corp., 2008 WL 4746334 (S.D. Tex. Oct. 27, 2008) (non-resident which sold zinc to California buyer without knowledge or expectation that buyer would sell zinc in Texas was not subject to personal jurisdiction there).

In order for specific personal jurisdiction to exist, not only must the defendant have "purposefully directed" his activities at the residents of the forum, but also the plaintiff's claim must "arise out of or relate to 'the defendant's purposeful contacts with the forum. Or, as we have put it, 'the plaintiff's cause of action [must] arise out of or result from the defendant's forum-related contacts.'" ITL International, Inc. v. Constenla, SA, 669 F.3d 493, 500 (5th Cir. 2012) (quoting Luv N'Care, 438 F.3d 465, 469 (5th Cir. 2006), quoting in turn Nuovo Pignone v. STORMAN ASIA M/V, 310 F.3d 374, 378 (5th Cir. 2002)).  Even a large flow of products into a forum state is not sufficient to establish specific jurisdiction over the manufacturer of those products if the product causing the injury to the plaintiff was not among the products did not arise out of any of the products sold into the forum state.  *See* Bearry v. Beech Aircraft Corp., 818 F.2d 370, 373 (5th Cir. 1987) (plaintiffs' purchase in Louisiana of Beech aircraft, which was not designed or manufactured in Texas, had never been owned by a Texas resident nor ever repaired or serviced in Texas, did not relate in any way to Beech's contacts with Texas, i.e., $250 million in sales of other Beech-manufactured aircraft flowing into Texas through 17 independent Texas dealers).

The third-party claims of Ace Home Center against the Stevedore Third-Party Defendants seek indemnity arising out of the sale in Florida of salvaged, damaged drywall sold by Pensacola Stevedore, a Florida corporation, to Ace Home Center, an Alabama corporation,

which thereafter transported the drywall to its retail store in Robertsdale, Alabama.   The contractual obligations arising from this sale did not require performance of any kind in Mississippi.   And the alleged conduct of Pensacola Stevedore, which forms the basis of the third-party claims, occurred in Florida.   Neither the contract of sale, nor the allegedly tortious conduct, nor the economic losses that Ace Home Center may sustain from defending itself, have any connection to Mississippi.

Moreover, Ace Home Center's subsequent sale of this drywall to a builder who transported this drywall into Mississippi, was beyond the expectations of Pensacola Stevedore in selling the drywall to Ace Home Center.   Pensacola Stevedore had no knowledge of the identity of any persons who might purchase this drywall from Ace Home Center.   All it knew was that a retail store in Robertsdale, Alabama, was purchasing the drywall.   Pensacola Stevedore cannot be subject to jurisdiction in Mississippi on the basis of the unilateral acts of a contractor who may have purchased the drywall and transported it to Mississippi to build homes there.   Such conduct is analogous to that of the plaintiffs in Worldwide Volkswagen, New York residents who purchased the defective vehicle in New York and drove to Oklahoma, where their injuries arose.   If any of the drywall sold to Ace Home Center in Robertsdale, Alabama was ultimately installed in the plaintiffs' residences in Mississippi, that destination was part of the "unpredictable currents or eddies" outside of the "regular and anticipated flow of products from manufacturer to distributor to retail sale" that constitutes the "stream of commerce." Worldwide Volkswagen, 480 U.S. at 117 (Brennan, J., *concurring*).

Indeed, the "stream of commerce" with respect to this drywall came to an end in Alabama.   The last transaction in goods occurred in Alabama when Ace Home Center sold the drywall to Bass Homes.   "In order to exercise specific personal jurisdiction over a defendant

under the stream of commerce theory, the product at issue must have reached the forum state while still in the stream of commerce."  Istre v. Montco Offshore, Inc., 2014 WL 790872 (E.D.La. Feb. 26, 2014); [3]  See Seiferth, 472 F.3d at 273 ("Once a product has reached the end of the stream and is purchased, a consumer's unilateral decision to take a product to a distant state, without more, is insufficient to confer personal jurisdiction over the manufacturer or distributor") (citing Worldwide Volkswagen Corp., 444 U.S. at 298).   Moreover, any connection between Pensacola Stevedore's sale to Ace Home Center and the eventual journey of the drywall into Mississippi is even more attenuated because Ace Home Center culled out certain sheets of this salvaged, damaged drywall, mixed it with other domestic drywall, and sold it as new, undamaged goods at full retail prices.  This was, in the words of Justice Brennan, a further "unpredictable current or eddy" outside of any "regular and anticipated flow" of this damaged drywall.  Ineed, this repackaging of damaged, salvaged goods as new goods shifted the product to an entirely different stream of commerce, i.e., the new product supply stream.

Finally, to whatever degree residents of Mississippi may have purchased other drywall originating from Pensacola Stevedore, those sales are irrelevant to the establishment of specific jurisdiction in this case.  See Bearry v. Beech Aircraft, supra.  Ace Home Center's claims do not "arise out of or result from"  any such sales to Mississippi residents.

In summary, if Pensacola Stevedore were, on these facts, subject to jurisdiction in Mississippi, this would be tantamount to "appoint[ing] the chattel [its] agent for service of process," and Pensacola Stevedore's "amenability to suit would travel with the chattel."

---

[3] In Istre, this Court concluded that an allegedly defective limit switch sold by a French corporation left the stream of commerce, at the latest, in Alabama, where the switch, earlier incorporated into a winch system, was installed upon a vessel.  The ship owner's unilateral post-sale act of transporting the vessel to Louisiana was insufficient to justify the exercise of personal jurisdiction there.  Id. at *5 (citing Worldwide Volkswagen, 444 U.S. at 288).

Worldwide Volkswagen, 480 U.S. at 296. Such fortuitous travel, caused by the unilateral actions of others, cannot serve to establish jurisdiction over Pensacola Stevedore or Pate Stevedore. This Court lacks specific jurisdiction over Pensacola Stevedore and Pate Stevedore with respect to the third-party claims brought by Ace Home Center.

### 3. Even if minimum contacts existed with the State of Mississippi, the exercise of jurisdiction would violate traditional notions of fair play and substantial justice

Once a plaintiff has established that defendant has purposefully availed itself of the benefits and protection of the forum state by establishing minimum contacts, and has established a nexus between his causes of action and the defendant's forum contacts, the defendant may then defeat the exercise of specific jurisdiction by demonstrating that that exercise would "violate traditional notions of fair play and substantial justice." Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 215 (5th Cir. 1999). In assessing fair play, courts balance (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interests in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the states' shared interest in furthering fundamental social policies. In re Chinese Manufactured Drywall Products Liability Litigation, 753 F.3d at 544 (citing Burger King, 471 U.S. at 476-77).

In the present case, the basis of the third-party claims against the Stevedore Third-Party Defendants is a contract for the sale of drywall between two non-Mississippi residents, negotiated and consummated in Florida, for delivery to Ace Home Center's retail store in Alabama. Ace Home Center's claims do not arise from any contact with Mississippi on the part of the Stevedore Third-Party Defendants. No expectation existed that this drywall would travel to Mississippi. Under such circumstances, notions of fair play and substantial justice are

violated by the assertion of jurisdiction over them in that state.  *See* <u>Willow Creek Exploration, Ltd. v. Tadlock Pipe & Equipment, Inc.</u>, 186 F.Supp.2d 675, 686 (S.D.Miss. 2002) (assertion of personal jurisdiction over pipe supplier offended fair play and substantial justice where basis of action arose from contract between two non-Mississippi residents that was negotiated and consummated in Texas and did not arise from supplier's contacts with Mississippi and where supplier had no way of knowing its product would ultimately be shipped to Mississippi by its buyer and sold to plaintiff).

Furthermore, the interests of the forum state and of the plaintiff are slight in the assertion of jurisdiction over the third-party claims for indemnity.  Mississippi has little interest in adjudicating an indemnity claim between two non-residents of Mississippi.  Ace Home Center may litigate its indemnity claims in Alabama or Florida which, for this Alabama corporation, are more convenient forums and can provide just as effective relief.  A majority of the U.S. Supreme Court concurred in reaching similar conclusion under similar facts in <u>Asahi</u>.  *See* <u>Asahi Metal Industry</u>, 480 U.S. at 114-15 (under Part II-B of Justice O'Connor's plurality opinion, assertion of jurisdiction by California courts over Japanese manufacturer of valve stems, on cross-claim for indemnity by Taiwanese manufacturer of tire tubes, offended traditional notions of fair play and substantial justice; California's legitimate interests were diminished because plaintiff was non-resident and dispute was about indemnification rather than with safety standards; cross-claimant had not demonstrated that it was more convenient for it to litigate its indemnification claim in California rather than in Taiwan or Japan), and 116 (Brennan, J., Concurring in part II-B of Justice O'Connor's plurality opinion) and 121 (Stevens, J., concurring in Part II-B of Justice O'Connor's plurality opinion); *see also* <u>Bumgarner v. Carlisle Medical, Inc.</u>, 809 F.Supp. 461, 465-66 (S.D.Miss. 1993) (assertion of personal

jurisdiction over Alabama resident, on third-party complaint for indemnity by his Alabama employer, offended notions of fair play and substantial justice; although plaintiffs were injured in Mississippi, conduct on which indemnity suit was based occurred in Alabama and Alabama had stronger interest than Mississippi in determining rights of Alabama corporation to indemnity from its employee). Finally, the witnesses and evidence relevant to the indemnification claims of Ace Home Center will largely involve Alabama and Florida residents, the states where the drywall was sold and delivered.

## CONCLUSION

For all of the above reasons, the Stevedore Third-Party Defendants respectfully submit that the third-party claims of Ace Home Center should be dismissed on the grounds that jurisdiction does not exist over them in Mississippi under the Mississippi long-arm statute nor under the limits of the due process clause of the United States Constitution.

Respectfully submitted,

s/s  William W. Watts, III
S. WELSEY PIPES, V.
Alabama Bar No. ASB6226-P71S
WILLIAM W. WATTS, III
Alabama Bar No. ASB5095-S67W
ATTORNEYS FOR STEVEDORE THIRD-PARTY DEFENDANTS

**OF COUNSEL:**
PIPES, HUDSON & WATTS, L.L.P.
P.O. Box 989
Mobile, AL  36601-0989
PH:     251-432-7200
FX:     251-432-0073
bill@pipeshudsonwatts.com
wesley@pipeshudsonwatts.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 30th day of October 2014, the foregoing has been electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the EM/ECF System which will send a notice of electronic filing in accordance with the procedures established in MDL 09-2047 and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, to the following:

Danny J. Collier, Jr., Esq.                         Lewis Robert Shreve, Esq.
Stephen W. Mullins, Esq.                          Heather M. Houston, Esq.
Caroline Pryor, Esq.                                  David C. Coons, Esq.
Christopher A. D'Amour, Esq.                  Gary J. Russo, Esq.

s/s  William W. Watts, III
WILLIAM W. WATTS, III
