# EXHIBIT "2"

HENRY VICK

IN THE CIRCUIT COURT IN AND FOR

BALDWIN COUNTY, ALABAMA


CIVIL ACTION NUMBER

CV-2009-900948


CHAD EVERETT LANGHAM, et al.,

        Plaintiff(s),

vs.

ACE HOME CENTER, INC., et al.,

        Defendant(s).



DEPOSITION TESTIMONY OF:

HENRY VICK


March 17, 2011

9:55 a.m.


COURT REPORTER:

DEBORAH B. BRADEN, CCR

HENDERSON & ASSOCIATES COURT REPORTERS, INC.
P.O. BOX 2263, MOBILE, AL 36652 (251)694-0950 (888)557-2969

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

1              S T I P U L A T I O N

2              IT IS STIPULATED AND AGREED, by

3    and between the parties through their respective

4    counsel, that the deposition of HENRY VICK may

5    be taken before Deborah B. Braden, Certified

6    Court Reporter and Notary Public, State at

7    Large, at the offices of DANIELL, UPTON,

8    PERRY & MORRIS, Daphne, Alabama, on March 17,

9    2011, commencing at approximately 9:55 a.m.

10             IT IS FURTHER STIPULATED AND

11   AGREED that the signature to and the reading of

12   the deposition by the witness is waived, the

13   deposition to have the same force and effect as

14   if full compliance had been had with all laws

15   and rules of Court relating to the taking of

16   depositions.

17             IT IS FURTHER STIPULATED AND

18   AGREED that it shall not be necessary for any

19   objections to be made by counsel to any

20   questions, except as to form or leading

21   questions, and that counsel for the parties may

22   make objections and assign grounds at the time

23   of trial or at the time said deposition is

24   offered in evidence, or prior thereto.

25             In accordance with Rule 5(d) of

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

Page 3

1   the Alabama Rules of Civil Procedure, as

2   amended, effective May 15, 1988, I, Deborah B.

3   Braden, am hereby delivering to Jonathon Law the

4   original transcript of the oral testimony taken

5   March 17, 2011, along with exhibits.

6           Please be advised that this is the

7   same and not retained by the Court Reporter, nor

8   filed with the Court.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

Page 4

1          EXAMINATION INDEX
2

HENRY VICK
3
    BY MR. LAW                    9
4
    BY MR. PIPES                 82
5
    BY MR. PATTERSON            101
6
    BY MR. GOOLSBY             110
7
    BY MR. CHASON             112
8
    BY MR. REBARCHAK           125
9
    BY MS. PRYOR              126
10
    BY MS. CALDWELL            133
11
    BY MR. LAW                138
12
    BY MR. PIPES              172
13
    BY MS. CALDWELL           176
14
    BY MR. LAW                181
15
    BY MR. ROBERTSON          184
16
    BY MR. PATTERSON          188
17
    BY MR. LAW                190
18
    BY MS. CALDWELL           195
19
    BY MR. ROBERTSON          196
20
    BY MR. LAW                198
21
    BY MR. ROBERTSON          201
22
    BY MR. LAW                202
23
    BY MR. ROBERTSON          203
24
25

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

Page 5

1

2                          EXHIBIT INDEX

3                                                        PAGE

4     Plaintiff's

5     1        Notice of Deposition                        12

6     2        Printout From Website                        12

7     3        Copy of Photograph                           16

8     4        Copy of Photograph                           16

9     5        Document from Secretary of State            161

10    6        Copy of Photograph                           59

11    7        Ace Purchase Orders                          60

12    8        Handwritten Calculation Sheet                63

13    9        4/16/2010 Letter from Law                   162

14    10       Invoices from Pate Stevedore                 78
               Company

15

16

17

18

19

20

21

22

23

24

25

HENDERSON & ASSOCIATES COURT REPORTERS, INC.
P.O. BOX 2263, MOBILE, AL 36652 (251)694-0950 (888)557-2969

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

Page 6

1              A P P E A R A N C E S

2

3   FOR THE PLAINTIFF(S):

4           Jonathon R. Law, Esquire

5           DANIELL, UPTON, PERRY & MORRIS

6           30421 Highway 181

7           Daphne, Alabama   36526

8

9   FOR THE DEFENDANT, ACE HOME CENTER:

10          James E. Robertson, Esquire

11          SCOTT, SULLIVAN, STREETMAN & FOX

12          Regions Bank Building

13          10th Floor

14          56 St. Joseph Street

15          Mobile, Alabama   36602

16

17  FOR THE DEFENDANT, DEVON INTERNATIONAL:

18          Leslie Ann Caldwell, Esquire

19          LUSK, CALDWELL & DEAN

20          2101 Highland Avenue

21          Suite 410

22          Birmingham, Alabama   35205

23

24

25

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

Page 7

1         A P P E A R A N C E S (continued)

2

3   FOR THE DEFENDANT, PENSACOLA STEVEDORE COMPANY:

4           Samuel W. Pipes, V, Esquire

5           PIPES, HUDSON & WATTS

6           Post Office Box 989

7           Mobile, Alabama   36601

8

9   FOR THE DEFENDANT, ACE HARDWARE CORPORATION:

10           Caroline T. Pryor, Esquire

11           CARR * ALLISON

12           6251 Monroe Street

13           Suite 200

14           Daphne, Alabama   36526

15

16   FOR THE DEFENDANT, FIREMAN'S FUND INSURANCE:

17           James Rebarchak, Esquire

18           JONES, WALKER, WAECHTER, POITEVENT,

19               CARRERE & DENEGRE

20           Post Office Box 46

21           Mobile, Alabama   36601

22

23

24

25

HENDERSON & ASSOCIATES COURT REPORTERS, INC.
P.O. BOX 2263, MOBILE, AL 36652 (251)694-0950 (888)557-2969

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

Page 8

1        A P P E A R A N C E S (continued)

2

3   FOR THE DEFENDANT, BASS HOMES, INC.:

4        James T. Patterson, Esquire

5        VERNIS & BOWLING

6        204 South Royal Street

7        Mobile, Alabama  36602

8

9   FOR THE DEFENDANT, CRAIG SINCLAIR BUILDERS:

10        Craig W. Goolsby, Esquire

11        CARR * ALLISON

12        6251 Monroe Street

13        Suite 200

14        Daphne, Alabama  36526

15

16   FOR THE DEFENDANT, SOUTHERN HERITAGE BUILDERS:

17        William G. Chason, Esquire

18        MCDOWELL, KNIGHT, ROEDDER & SLEDGE

19        RSA Battle House Tower

20        11 North Water Street

21        Suite 13290

22        Mobile, Alabama  36602

23

24

25

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

1          I, Deborah B. Braden, a Certified

2     Court Reporter of Greenville, Alabama, and a

3     Notary Public for the State of Alabama at Large,

4     acting as Commissioner, certify that on this

5     date, pursuant to the Alabama Rules of Civil

6     Procedure and the foregoing stipulation of

7     counsel, there came before me at the offices of

8     DANIELL, UPTON, PERRY & MORRIS, Daphne, Alabama,

9     commencing at approximately 9:55 a.m. on

10    March 17, 2011, HENRY VICK, witness in the

11    above cause, for oral examination, whereupon

12    the following proceedings were had:

13

14              THE REPORTER:  Usual

15    stipulations?

16              MR. LAW:  Yes, ma'am.

17              HENRY VICK,

18    After having first been duly sworn, was examined

19    and testified as follows:

20              EXAMINATION

21    BY MR. LAW:

22         Q.    Tell us your name, please, sir.

23         A.    Henry Vick.

24         Q.    Mr. Vick, I'm Jonathon Law.  We

25    met before at your last deposition.  I'm going

HENDERSON & ASSOCIATES COURT REPORTERS, INC.
P.O. BOX 2263, MOBILE, AL 36652 (251)694-0950 (888)557-2969

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

1    to ask you some questions today.  If you recall,

2    I gave you a little spiel on some of the

3    housekeeping matters last time.  If you don't

4    understand my question, point that out, and I'll

5    try to clarify it.  If you answer the question,

6    we're going to assume you understood it.  Is

7    that fair enough?

8         A.    Right.

9         Q.    If you need a break at any time,

10   let me know.

11        What's your current address, please?

12        A.    I don't know.  I don't know the

13   mailing address.

14             MR. REBARCHAK:  That's a good

15   way to start a depo.

16        Q.    We can come back to that.

17        A.    I don't know.

18        Q.    We can come back to it.  Have you

19   given -- Besides the deposition back in last

20   year, February of 2010, have you given a

21   deposition before besides that one?

22        A.    Yes.

23        Q.    About how many times?

24        A.    Once, I know.  Twice, maybe.

25        Q.    When was the first time you gave

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

1    one?

2           A.     I don't know what year.  Probably

3    been 10 or 12 years ago.

4                        MR. ROBERTSON:  Didn't we ask

5    all this before?

6                        MR. LAW:  I don't think we

7    did.

8                        THE WITNESS:  I think we did.

9           Q.     And that's fine.  I tell you

10   what:  I'm going to try not to go back through a

11   lot of the things we talked about in your first

12   deposition.  You do understand that that was

13   testimony given under oath, don't you?

14          A.     Yes, sir.

15          Q.     And, again, as I ask you

16   questions, if you'll let me finish it before you

17   answer it.  You're doing fine.  I just want to

18   remind you.  And, also, if you can say yes or no

19   if the question or your answer calls for it,

20   instead of uh-huh or huh-uh.  That will help her

21   out.

22          A.     Yes.

23          Q.     You're currently the president of

24   Ace Home Center, Inc.?

25          A.     Yes.

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

Page 12

1    Q.    And how long have you been
2  president?
3    A.    Since the beginning.
4    (WHEREUPON, Plaintiff's Exhibit
5  Number 1 was marked for identification and is
6  attached to the original transcript.)
7    Q.    I've marked as Exhibit Number 1
8  the notice of your deposition.  We'll make
9  Exhibit Number 2 a document I pulled off the
10  website of Ace Home Center, Inc.  You've looked
11  at that website before, haven't you?
12    (WHEREUPON, Plaintiff's Exhibit
13  Number 2 was marked for identification and is
14  attached to the original transcript.)
15    A.    My website, yes.
16    Q.    Yes, sir.
17    A.    Yes, yes.
18    Q.    Says you began business in 1968
19  when you founded Robertsdale Heating & Air
20  Conditioning; is that correct?
21    A.    Yes.
22    Q.    What did you do -- what did
23  Robertsdale Heating & Air Conditioning
24  primarily -- what type of business did they do?
25    A.    Serviced heating and air,

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

1      installed it, sold it.

2          Q.      Y'all installed it and serviced

3      them?

4          A.      Yes.

5          Q.      How long did you own Robertsdale

6      Heating & Air Conditioning?

7          A.      Thirty-two years.

8          Q.      In those 32 years, did you

9      sometimes change out evaporator coils?

10         A.      Yes.

11         Q.      You would have done that under --

12     as part of the service of Robertsdale Heating &

13     Air?

14         A.      Yes.

15         Q.      Typically, when you changed those

16     out, did they have some sort of warranty from

17     the manufacturer?

18         A.      Most of the time, no.

19         Q.      Did you have some manufacturers

20     that provided warranties on those coils?

21         A.      Yes.

22         Q.      What would be a typical warranty

23     period for the air conditioning coils?

24         A.      One year.

25         Q.      So if the coils went out within

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

1    Q.    Tell me about your first phone
2  conversation with Mr. Pate.
3    A.    He just said he had some Sheetrock
4  he wanted me to look at that might be of
5  interest to me to be purchased.
6    Q.    And you were present during
7  Mr. Pate's deposition, weren't you?
8    A.    Yes.
9    Q.    You've attended some other
10 depositions in this case, haven't you?
11   A.    Yes.
12   Q.    And have some of those depositions
13 maybe refreshed your memory somewhat since the
14 last time I took your deposition?
15   A.    Huh-uh.
16   Q.    All right.  So did you go over
17 there and look at some drywall?
18   A.    Yes.
19   Q.    When you went to the warehouse,
20 what did you see?
21   A.    A bunch of drywall.
22   Q.    Ever seen that much drywall in
23 your life?
24   A.    Never in one place.
25   Q.    Did you go to more than one

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

Page 30

1   warehouse, or did you only go in one?

2        A.      One.

3        Q.      To your knowledge, was the drywall

4   segregated within that warehouse as to what was

5   damaged and what was good?

6                MR. ROBERTSON:   Object to the

7   form.

8        A.      Segregated.  I didn't know there

9   was but one, as far as I'm concerned.

10       Q.      You told me in your last

11  deposition you took a magic marker, a black one,

12  and marked the ends of some of the drywall that

13  you wanted either thrown away or discarded; is

14  that right?

15       A.      Yes.

16       Q.      Did you do that at the Pensacola

17  warehouse, or did you do that back at Ace Home

18  Center?

19       A.      Ace Home Center.

20       Q.      When you went to look at the

21  drywall, did you meet with Mr. Pate?

22       A.      Yes.

23       Q.      Did he tell you there was a

24  section of the warehouse that you could take

25  drywall out of, or did he say just take whatever

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

Page 61

1    sheets on each truck; is that right?

2          A.     I don't know.

3          Q.     Well, see, it says shipped seven

4    bundles, 476 sheets.  Is that how many sheets

5    were in seven bundles?

6          A.     I don't know.

7          Q.     These invoices were created from

8    purchase orders that are identified that begin

9    with the number 15; is that correct?

10         A.     15210.

11         Q.     Yes, sir.  That was an Ace

12   purchase order provided to Pate, wasn't it?

13                 MS. PRYOR:  Object to the

14   form.

15         A.     I would think so.  I don't know.

16         Q.     When the drywall was delivered and

17   it was sorted as to the damaged and the good,

18   after it was sorted, would Ace Home Center then

19   send a purchase order to Pate so that Pate could

20   produce an invoice such as Exhibit 7 to provide

21   to Ace Home Center?

22         A.     Come back.  My mind was somewhere

23   else because I'm trying to figure out

24   something.  Respeak it.  Reask it.

25         Q.     Sure.  When the drywall was

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

1    delivered on a truck and then it was -- after it

2    was sorted, was the purchase order generated and

3    sent to Pate or Pensacola Stevedore telling them

4    how many good sheets were received so that an

5    invoice such as Exhibit 7 could be generated?

6        A.    Yes.

7        Q.    And would those purchase orders be

8    the numbers listed on Exhibit 7 starting with

9    15210?  Would that have been an Ace purchase

10   order?

11       A.    Yes.

12             MS. PRYOR:  Object to the

13   form.

14       Q.    So, for example, on Exhibit 7,

15   seven bundles in this top paragraph were

16   received, and it says received good 179 sheets.

17   Does that mean 179 sheets of the 476 were good?

18       A.    Yes.

19       Q.    And then you got one -- or at

20   least the invoice says $1.84 each out to the

21   side.  And then there's an amount of $329.36.

22   Was the $1.84 each the price per sheet?

23       A.    I don't know.

24       Q.    Take the $1.84 -- I'll give you my

25   calculator -- and multiply it by 179 and tell me

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

Page 63

1    what you get, please.

2                    MR. ROBERTSON:   It is what it

3    is.

4         A.      $329.36.

5         Q.      Does that tell you that the 179

6    sheets at $1.84 a sheet cost $329.36?

7         A.      No.

8                    MR. ROBERTSON:   Object to the

9    form.

10        A.      This right here is what Mike Pate

11   put down.  My PO is the one that's going to

12   determine the facts.  I don't know what Mike did

13   here.  I never saw this document.  This came

14   back after I issued my PO to Mike Pate.

15                    (WHEREUPON, Plaintiff's Exhibit

16   Number 8 was marked for identification and is

17   attached to the original transcript.)

18        Q.      I'm going to show you Exhibit 8.

19   This might help us.  Before you issued your

20   PO --

21        Well, let me ask:  Is that your

22   handwriting?

23        A.      Yes.

24        Q.      And all the handwriting on Exhibit

25   Number 8 is yours?

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

1    A.      Yes.

2    Q.      All right.  Is it accurate to say

3  that y'all made a deal where bundles of rock

4  would be shipped to Ace Home Center, and then

5  you or someone at Ace Home Center would be

6  allowed to pick through it and only pay for what

7  was good and not have to pay for what was broken

8  or chipped or damaged?

9    A.      Yes.

10   Q.      So you knew that some of the rock

11  that was going to be shipped to your store was

12  going to be damaged?

13   A.      Yes.

14   Q.      And so in that respect, you knew

15  that this was different than a shipment from,

16  say, Allied or your regular wholesale supplier;

17  is that correct?

18   A.      Yes.

19   Q.      Have you ever bought anything from

20  Mike Pate before?

21   A.      No.

22   Q.      And when I say that, I mean his

23  company.

24   A.      His stevedoring, yeah.  No.

25   Q.      Correct.  You're aware that his

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

1    find it.  Does this Exhibit 6 -- does this
2    appear to be a bundle of Chinese rock?
3             A.      Yes.
4             Q.      And did you ever see it come in
5    when it was delivered to your store on a -- you
6    know, in shipment?
7             A.      Did I see it on my truck?
8             Q.      Yes, sir.
9             A.      I can't say that I did or didn't.
10   I saw it in the warehouse.
11            Q.      I've heard that it came in seven
12   bundles to a truckload, and that's 487 sheets --
13                    MR. ROBERTSON:  It's 76.
14            Q.      -- 476 sheets.  Does that sound
15   accurate?
16            A.      I'm hoping 600.  I don't know.
17   This, I have no confidence in.  I don't know.
18                    MR. ROBERTSON:  He's pointing
19   to Plaintiff's Exhibit 10.
20            Q.      Okay.  Well, my question -- The
21   amount, the number of sheets is really
22   irrelevant to my question.  But my point is:
23   When it was shipped from Port of Pensacola to
24   your store, and I think -- Was it on your
25   trucks?

HENDERSON & ASSOCIATES COURT REPORTERS, INC.
P.O. BOX 2263, MOBILE, AL 36652 (251)694-0950 (888)557-2969

HENRY VICK

1          A.        Yes.

2          Q.        Did they -- did the rock arrive in

3    the form shown on Plaintiff's Exhibit 6 in those

4    bundles like that?

5          A.        May or may not.

6          Q.        Did some of it arrive --

7          A.        Some of it may not have that on

8    it.  It may have been off of it.  I don't know.

9          Q.        And I'm not talking about the

10   stamp there.

11         A.        I'm talking about this band and

12   all.

13         Q.        That's my question.  Are you

14   saying that -- Well, did you see any of it

15   arrive that didn't have the banding on it?

16         A.        I can't recall, but I -- There was

17   some in the warehouse that didn't have the band.

18         Q.        In the Port of Pensacola?

19         A.        In the Port of Pensacola.

20         Q.        But you don't know if that was

21   delivered to you loose like that?

22         A.        I do not know.  I did not --

23         Q.        Were you ever present when the

24   bundles were taken apart and y'all went through

25   the good sheets --

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

1      Q.      -- some of the Chinese drywall
2  that was purchased from Pensacola Stevedore at
3  your store?
4      A.      They told me to keep it, so --
5      Q.      All right.
6      A.      Otherwise, I wouldn't have it.
7      Q.      You would have thrown it away?
8      A.      Yes.
9      Q.      Like you did the others?
10     A.      Yes.
11     Q.      Do you know how many sheets you
12  threw away?  Mr. Law may have asked you this,
13  and I apologize if he did.
14     A.      I couldn't give you a number of
15  sheets.
16     Q.      Was it thousands?
17     A.      Yes.
18     Q.      How long -- First of all, do you
19  own Bob's Discount?
20     A.      Yes.
21     Q.      And is it next door to Ace Home
22  Center?
23            MR. ROBERTSON:  Object to the
24  form.
25     A.      Yes.

HENDERSON & ASSOCIATES COURT REPORTERS, INC.
P.O. BOX 2263, MOBILE, AL 36652 (251)694-0950 (888)557-2969

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

1    don't know what Wayne sold it for.  I've seen
2    him sell things below cost.
3              Q.     Well --
4                     MR. PIPES:  Y'all had
5    discussions?
6              A.     We had some discussions.
7              Q.     I've got an inch --
8              A.     But he had a reason.  He was
9    always right; I'm telling you --
10             Q.     I've got an inch-and-a-half thick
11   stack --
12             A.     That percentage on the bottom is
13   what he looks at.
14             Q.     I've got an inch-and-a-half stack
15   of receipts that have probably been produced
16   multiple times that I could attach to your
17   deposition to show the different prices --
18             A.     I know.
19             Q.     -- and the fluctuations, but I
20   guess the meat of the question is:  Ace Home
21   Center, Incorporated sold this stuff to Bass
22   Homes at the price it was selling new drywall
23   for at that time; is that correct?
24             A.     What he could get out of it.
25             Q.     Yeah.

HENDERSON & ASSOCIATES COURT REPORTERS, INC.
P.O. BOX 2263, MOBILE, AL 36652 (251)694-0950 (888)557-2969

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

Page 104

1        MR. ROBERTSON:  You've got to
2   say yes or no.
3        A.    Yes.
4        Q.    Now, would it be fair to say that
5   the Ace Home Center, Incorporated never
6   disclosed the fact that it bought this Sheetrock
7   outside its normal chain of supply to Bass
8   Homes, Incorporated --
9        MR. ROBERTSON:  Object to the
10  form.
11       Q.    -- during the time it was
12  selling --
13       A.    Re --
14       Q.    Okay.  You sold this material year
15  2006.  Let's -- In 2006, once you got some of
16  this drywall from Pate --
17       A.    Yes.
18       Q.    -- and put in your warehouse --
19       MR. ROBERTSON:  Object to the
20  form.
21       Q.    -- and started selling it to your
22  customers --
23       A.    Yes.
24       Q.    -- would it be fair to say that
25  you never disclosed the fact to Bass Homes that

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

1    you obtained this drywall outside of your normal

2    new-product chain of supply for drywall?

3         A.    No, we never did.

4         Q.    You never disclosed it?

5         A.    That's right.

6         Q.    And would it be fair to say that

7    you never disclosed the fact that this drywall

8    that you obtained from Pate was sold -- and was

9    sold to Bass in year 2007 came outside of your

10   normal chain of supply?

11        A.    Right.

12                   MR. ROBERTSON:  Object to the

13   form.

14        Q.    And would it be fair to say that

15   in the year 2008, same thing, it was never

16   disclosed to Bass Homes that this was outside of

17   your normal chain of building material supply?

18                   MR. ROBERTSON:  I object to

19   the form.

20        A.    Yes.

21        Q.    And then in 2009, when this

22   material was still being sold to customers like

23   Bass Homes, Incorporated, would it be fair to

24   say that up until questions started surfacing,

25   people started to call, it was never disclosed

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

Page 106

1    to these customers that this material had been
2    obtained outside your normal chain of supply?
3         A.    No.
4                   MR. ROBERTSON:  Object to the
5    form.
6         A.    No.
7         Q.    It was never disclosed?
8         A.    Never disclosed.
9         Q.    Never disclosed.  And to be fair
10   and to be clear on the record, it was never
11   disclosed in '06; is that right?
12        A.    No.
13                  MR. ROBERTSON:  You just asked
14   him '06.
15                  MR. PATTERSON:  I know, but
16   we're doing yes's and no's.  We have double
17   negatives here, and I'm trying to clear that up,
18   Mr. Robertson, if I can, please.
19        Q.    Just for purposes of clear English
20   grammar, that fact was not disclosed to your
21   customers in 2006?  Yes?
22                  MR. ROBERTSON:  Object to the
23   form.
24        A.    Yes.
25        Q.    It was not disclosed?

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

1        A.        Was not.

2                  MR. ROBERTSON:  Object to the

3    form.

4        Q.        It was not disclosed in 2007?

5        A.        No.

6                  MR. ROBERTSON:  Object to the

7    form.

8        Q.        It was not disclosed?

9        A.        It was not disclosed.

10       Q.        Okay.  It was not disclosed in

11   2008, correct?

12       A.        Correct.

13                 MR. ROBERTSON:  Object to the

14   form.

15       Q.        It was not disclosed in 2009 --

16                 MR. ROBERTSON:  Object to the

17   form.

18       Q.        -- until problems started to

19   surface and people started to make calls --

20                 MR. ROBERTSON:  Object to the

21   form.

22       A.        Right.  Yes.

23       Q.        Okay.  Would you agree with me

24   that it's an important fact that this material

25   came in outside your normal chain of supply to

HENDERSON & ASSOCIATES COURT REPORTERS, INC.
P.O. BOX 2263, MOBILE, AL 36652 (251)694-0950 (888)557-2969

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

1    the Ace Home Center?

2                    MR. ROBERTSON:  Object to the

3    form.  Calls for a legal conclusion.

4         A.      Would it come in -- No.  I mean --

5         Q.      You don't feel like that was an

6    important fact?

7                    MR. ROBERTSON:  Object to the

8    form.

9         A.      I don't see -- Reask the question,

10   because my first one is no.

11        Q.      Would you agree that it was an

12   important fact that this material came in

13   through an unusual supply chain to be sold as

14   new out of your Ace Home Center?

15        A.      No.

16                    MR. ROBERTSON:  Object to the

17   form.

18        Q.      But you agree with me that Bass

19   Homes did not know the fact that this material

20   came in outside of your normal chain of supply?

21                    MR. ROBERTSON:  Object to the

22   form.

23        A.      He did not know.

24        Q.      And you say he did not know,

25   Bass --

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

1    A.      Bass did not know.

2            MR. ROBERTSON:  Object to the

3    form.

4    Q.      Did Bill Bass ever ask the Ace

5    Home Center, Incorporated to sell it salvaged

6    materials that were purchased from a supply

7    chain at a very, very substantial discount off

8    of the market price?

9            MR. ROBERTSON:  Object to the

10   form.  Assumes facts not in evidence.

11   A.      Reask that question.

12   Q.      Did Bill Bass ever ask you to sell

13   him salvaged material?

14   A.      No.

15           MR. ROBERTSON:  Object to the

16   form.

17   Q.      He was buying new -- Bass Homes

18   was buying new materials from Ace Home Center?

19           MR. ROBERTSON:  It was new.

20   Object to the form.

21   A.      I never dealt with Bill Bass to

22   start with.  His people -- Of course, I never

23   even deal with them; Wayne did.

24   Q.      You were asked about some ASTM

25   stamps on this material that was in your

HENDERSON & ASSOCIATES COURT REPORTERS, INC.
P.O. BOX 2263, MOBILE, AL 36652 (251)694-0950 (888)557-2969

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

1     anything.

2                         MR. LAW:  I need to make sure

3     if there's anybody else I need to talk to.

4                         MR. ROBERTSON:  Okay.  Well,

5     he can tell you who owns an interest in the

6     company.

7           Q.     All I want to know is when

8     Mr. Vick became an owner of a percentage of the

9     company.

10          A.     I don't know what year.

11          Q.     Would it have been within the last

12    six to eight years?

13          A.     I would think so, yeah.

14          Q.     Did he have a percentage of

15    ownership in 2006?

16          A.     I don't remember.

17          Q.     Nobody else has an ownership

18    interest?

19          A.     Nobody else.

20          Q.     Does the discount store next door,

21    does it sell any building materials?

22                         MR. ROBERTSON:  Object to the

23    form.

24          A.     It could.

25          Q.     Has it in the past?

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

Page 146

1           MR. ROBERTSON:  Object to the
2    form.
3        A.      Yeah.
4        Q.      Have you ever sold any drywall out
5    of the discount store?
6           MR. ROBERTSON:  Object to the
7    form.
8        A.      To my knowledge, no.
9           MR. LAW:  And I am going to
10   ask you:  What do I need to do to repair that
11   question?
12          MR. ROBERTSON:  You know,
13   asking about all those questions about the
14   discount store, they're not a party in the case;
15   they don't have anything to do with it.  I'm
16   just making my objection.
17          MR. LAW:  But there's nothing
18   wrong with the actual question itself?
19          MR. ROBERTSON:  Other than I
20   don't think it's going to lead to the discovery
21   of admissible evidence.
22       Q.      All right.  Have you ever sold
23   drywall out of that discount store?
24          MR. ROBERTSON:  Same
25   objection.

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

1      A.      Not to my knowledge.

2      Q.      Does the discount store sell

3  building materials or any items or products

4  that, at one time, were for sale in Ace Home

5  Center that you no longer sell in Ace Home

6  Center?

7      A.      Yes.

8      Q.      What type of materials or products

9  would you sell in the discount store that you no

10 longer sell in Ace Home Center?

11              MR. ROBERTSON:  Object to the

12 form.

13     A.      Anything that wasn't selling over

14 there.

15     Q.      Like overstock and surplus?

16     A.      Overstock.  It could be something

17 discontinued, something that just wasn't

18 selling.

19     Q.      And you sell it for cheaper in the

20 discount store?

21     A.      Yes.

22     Q.      And you sell it for cheaper than

23 it was previously for sale in the Ace Home

24 Center store?

25              MR. ROBERTSON:  Object to the

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

1  form.

2        A.     Yes.

3        Q.     You got any rejected materials or,

4  say, a board that's just somewhat warped and you

5  wouldn't sell it in the retail store, Ace Home

6  Center, that you'd sell in the discount store?

7                MR. ROBERTSON:  Object to the

8  form.

9        A.     Yes.

10        Q.     So you do have some rejected

11  building materials that you sell in the discount

12  store?

13        A.     If we acquire them, yes.

14        Q.     Have you ever had an item

15  returned, kind of like a 2 by 4 that may be

16  slightly warped, that you put for sale in the

17  discount store at a cheaper price.

18                MR. ROBERTSON:  Object to the

19  form.

20        A.     Yes.

21        Q.     Have you ever sold any of this

22  Chinese drywall in the discount store?

23        A.     Not to my knowledge.

24        Q.     You didn't take any of the Chinese

25  drywall you purchased from Pate or Pensacola

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

1   Stevedore and sell it out of the discount store?

2       A.      No.

3       Q.      Now, Allied Building Stores,

4   they're a wholesaler, aren't they?

5       A.      Yes.

6       Q.      And you've used BMW, Building

7   Materials Wholesale, in the past, haven't you?

8               MR. GOOLSBY:  Object to the

9   form?

10      A.      Yes.

11      Q.      And they're a wholesaler of

12  building materials, aren't they?

13      A.      Yes.

14              MR. GOOLSBY:  Object to the

15  form.

16      Q.      Allied Building Stores is a pretty

17  reputable wholesaler of building materials,

18  isn't it?

19              MR. ROBERTSON:  Object to the

20  form.

21      A.      They are a purchasing more than a

22  wholesaler.  See, all the Allied Building Stores

23  own them.  They only purchase for us only.  They

24  don't go outside of any Allied Building Store.

25  In other words, True Value --

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

1    Q.      Okay.  Do you know --

2    A.      They have a warehouse, I assume.

3    Q.      Okay.  Well, the manufacturer has

4  a warehouse and --

5    A.      I assume so.

6    Q.      -- it comes from their warehouse

7  to your warehouse?

8    A.      Yes.

9              MR. PIPES:  Object to the

10  form.  I don't even know what's going on now.

11    Q.      Well, it's warehouse to

12  warehouse.  It's new drywall to new drywall.

13              MR. LAW:  Object to the form.

14    Q.      It's all new drywall, isn't it?

15    A.      Yes.

16              MR. LAW:  Object to the form.

17    Q.      And when -- This Chinese drywall

18  and the domestic drywall at your warehouse, it

19  was mixed for sale, wasn't it?

20    A.      Yes.

21    Q.      Okay.  When somebody -- That's why

22  you can't, on any of these invoices or purchase

23  orders from any of the customers that you sold 4

24  by 12 by half-inch drywall, you can't tell on

25  the invoice whether it's drywall that came from

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

1  China or drywall that came from America, can

2  you?

3      A.      Cannot.

4      Q.      As far as you knew, there was no

5  difference between the two, was there?

6      A.      Correct.

7      Q.      The drywall -- the Chinese drywall

8  would be stacked in the warehouse next to the

9  American drywall at Ace Home Center when it was

10  going to be shipped out to customers, wouldn't

11  it?

12      A.      Correct.

13                  MR. ROBERTSON:  That's all

14  I've got.

15                  EXAMINATION

16  BY MR. PATTERSON:

17      Q.      Mr. Vick, Jim Patterson for Bass

18  again.  Let me ask you:  In your experience

19  selling building products, have you ever had to

20  sort through the drywall that came to your Ace

21  Home Center that you got from Allied to

22  determine what was sellable and what wasn't?

23      A.      No.

24      Q.      In your experience running that

25  hardware store, have you ever had to sort other

c39407b8-fcba-4414-9305-24c9f83d73f8

HENRY VICK

Page 204

1                 C E R T I F I C A T E

2    STATE OF ALABAMA)

3    BUTLER COUNTY)

4              I hereby certify that the above

5    and foregoing deposition was taken down by me in

6    stenotype, and the questions and answers thereto

7    were transcribed by means of computer-aided

8    transcription, and that the foregoing represents

9    a true and correct transcript of the deposition

10   given by said witness upon said hearing.

11             I further certify that I am

12   neither of counsel nor of kin to the parties to

13   the action, nor am I in anywise interested in

14   the result of said cause.

15             I further certify that I am duly

16   licensed by the Alabama Board of Court Reporting

17   as a certified court reporter as evidenced by

18   the ACCR number following my name below.

19

20

21

22             DEBORAH B. BRADEN, ACCR NO. 90

23

24   My Commission expires

25   December 8, 2012

HENDERSON & ASSOCIATES COURT REPORTERS, INC.
P.O. BOX 2263, MOBILE, AL 36652 (251)694-0950 (888)557-2969