UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | : : : : : : : | MDL NO. 2047 SECTION L JUDGE FALLON MAGISTRATE JUDGE WILKINSON |
| .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. | | |

**THIS DOCUMENT RELATES TO ALL CASES**

### ORDER AND REASONS

Before the Court is a motion of various Defendants, (Rec. Doc. 17981), to reconsider the Court's August 18, 2014 order, (Rec. Doc. 17967), which had denied a state-court injunction for the "stigma" claims of Plaintiff Ralph Mangiarelli. The Defendants in support of the motion to reconsider include the Defendants involved in the August 18 order, Banner Supply Company Pompano ("Banner Supply"), and Sixty Fifth and One, along with the Knauf Defendants, INEX, and L&W Supply Corp. Plaintiff Mangiarelli opposes reconsideration. (Rec. Doc. 18045). Having considered the parties' memoranda, as well as the applicable law, the Court now issues this order and reasons.

**I.   BACKGROUND**

Plaintiff Mangiarelli owns a Florida condo in Building Two in his condo complex. Building Two did not contain defective Chinese Drywall. However, Building One, which is in the general vicinity of Building Two, did have defective Chinese Drywall in it. Plaintiff Mangiarelli claims that because another building in the neighborhood had defective drywall, the real estate in his building has lost market value. He brought a claim in state court seeking to recover monetary damages. Defendant Sixty Fifth and One asked the Court to enjoin Plaintiff Mangiarelli from proceeding with the state suit, arguing that the claim falls under the Global

1

Settlement Agreement, and since Plaintiff Mangiarelli never "opted out," he is enjoined from now filing in state court. The Court denied this request, reasoning that these a "stigma" claims based on a property not containing Chinese Drywall was not within the scope of the settlement agreements.[1] (Rec. Doc. 17967).

In their motion to reconsider, the Defendants argue that the Definition of a "Class Member" under their respective settlement agreements only requires that a person have a claim "arising from or related to" Chinese Drywall, without regard to whether the claimant's property actually contained defective drywall. The Defendants argue that the definition of an "Affected Property" under their respective settlement agreements has the sole purpose "to define the allocation of different settlement funds, indemnity obligations, releases by defendants and insurers, reserved claims, and to ensure that certain homes are remediated."

Plaintiff Mangiarelli responds. (Rec. Doc. 18045). Essentially, he argues that language in the various provisions of the Banner and Global Settlement Agreements indicate that for a claim to exist, this property (the "Affected Property") must contain defective Chinese drywall or be closely related, or tied to, such a property. Defendants thereafter filed a reply to rebut Plaintiff's arguments. (Rec. Doc. 18058).

## II.   ANALYSIS

A motion to reconsider "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Rather, Rule 59(e) serves the narrow purpose of correcting manifest errors of law or fact, or presenting newly discovered evidence. *Lavespere v. Niagra Mach. &*

---

[1] In the Court's order denying Defendant Sixty Fifth and One's motion, the Court applied this same reasoning to the Banner Settlement. Defendant Banner Supply had previously filed a motion to enforce, similar to that of Defendant Sixty Fifth and One. (Rec. Docs. 17744, 17867).

*Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990); *Templet*, 367 F.3d at 479 (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). "'Manifest error' is one that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.'" *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting *Venegas–Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004)). The United States Court of Appeals for the Fifth Circuit has noted that altering, amending, or reconsidering a judgment under Rule 59(e) "is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479 (citing *Clancy v. Emp'rs Health Ins. Co.*, 101 F. Supp. 2d 463, 465 (E.D. La. 2000)). "A Rule 59(e) motion should not be used to re-litigate prior matters that . . . simply have been resolved to the movant's dissatisfaction." *Voisin v. Tetra Techs., Inc.*, 2010 WL 3943522, at *2 (E.D. La. Oct. 6, 2010). District courts have "considerable discretion in deciding whether to grant or deny a motion to alter a judgment." *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995). Yet at the same time, the Rule 59(e) standard "favors denial of motions to alter or amend." *S. Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).

     The Defendants' arguments for reconsideration here are not persuasive and mainly rehash prior arguments. Moreover, the definition of a "Class Member" notwithstanding, a claim must be closely tied to an "Affected Property." *See Southwestern Engineering Co. v. Cajun Elec. Power Co-op, Inc.*, 915 F.2d 972, 980 ("[E]ach provision in a contract [must] be interpreted in the light of the other provisions so that each is given the meaning suggested by the contract as a whole."). Under the Defendants' interpretation of the Settlement Agreements, a "Class Member" could seemingly include a person who alleges harm from Chinese Drywall which was never even installed in a home. This litigation has never encompassed such an expansive interpretation of

3

Chinese Drywall claims, and the Settlement Agreements have never before been interpreted that way.

Defendants attempt to isolate the definition of a "Class Member" from that of an "Affected Property." However, this litigation always has been centered on, and the settlements reflect, the intrinsic link between the two terms. A Class Member cannot receive funds without, at the very least, a close tie to a contaminated property, which normally entails ownership of, or residence in, the Affected Property. Section 4.3 of the Global Settlement provides an illustrative example of the intrinsic link between a "Class Member" and an "Affected Property":

> In consideration of the payments and other consideration made by Participating Defendants and Participating Insurers, Class Members agree, in addition to other conditions set forth in this Settlement Agreement, to apply the settlement proceeds they receive, except for funds allocated to resolve claims for bodily injury pursuant to Section 16, to assist in the remediation of *their Affected Property allegedly damaged by Chinese Drywall* . . . .

(emphasis added). This section indicates that – at a minimum – a Class Member must be closely tied to an Affected Property. Indeed, other sections of the Settlement Agreements discuss Class Members in the relation to their own Affected Properties. *See, e.g.*, Global Settlement §§ 5.2.5; 8.1.1 ("Class Members with claims involving more than one Affected Property may opt-out on a property-by-property basis."). Additionally, the Allocation of Payments, as described in the Global Settlement, confirms that "[t]he allocation will apportion funds . . . by each Affected Property." Global Settlement § 16.1. Moreover, the Court-approved registration form and Allocation Plan both require details about the Affected Property. (Rec. Docs. 16528-1, 16634-2). The Banner Settlement and its accompanying documents contain similar language to confirm this interpretation.

Upon examination of the language in these Settlement Agreements, the stigma claim presented by Plaintiff Mangiarelli does not meet the requirements of the Settlements that a Class

Member's claim be closely tied to an Affected Property. Plaintiff Mangiarelli did not own the property containing defective drywall, but rather seeks to maintain a claim based on the Affected Property of another individual's condo in a different building. Plaintiff Mangiarelli's loose nexus to an Affected Property is insufficient to fall within the scope of this litigation. Such a claim does not fall with the Banner or Global Settlement Agreements. To reason otherwise would mean that an owner or occupier of any property located anywhere in the country, or perhaps world, would be potentially included in these settlements even if there is no defective drywall in the property. Such logic would be nonsensical and inconsistent with the terms of the settlement agreements. Accordingly,

**IT IS ORDERED** that the motion to reconsider is **DENIED**.

New Orleans, Louisiana, this 4th day of November, 2014.

_____
UNITED STATES DISTRICT JUDGE