UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  CHINESE-MANUFACTURED | * | MDL 2047 |
| DRYWALL PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to All Cases | * | |
| | * | MAGISTRATE JUDGE WILKINSON |

*************************************

**PLAINTIFFS DAVID AND STEPHANIE MIGUELEZ' MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE COMPLIANCE WITH THIRD AMENDED SETTLEMENT AGREEMENT**

COMES NOW, PLAINTIFFS, DAVID AND STEPHANIE MIGUELEZ, and respectfully files this Memorandum in Support of Plaintiffs' Motion to Enforce Compliance with Third Amended Settlement Agreement (hereinafter "Settlement Agreement")as it pertains to PLAINTIFFS' eligibility for "Lump Sum Payment" and as grounds therefore states as follows in support:

A. PLAINTIFFS HAVE PROVIDED EVIDENCE THIS WAS A SECOND HOME INTENDED FOR VACATION AND, BECAUSE THERE IS NO EVIDENCE TO THE CONTRARY, PLAINTIFFS ARE ENTITLED TO LUMP SUM PAYMENT.

The Residential Owner Subclass is defined in Section 1.1.2.1 of the Settlement Agreement. Plaintiffs' affected property at 330 Cipriani Way, North Venice, Florida (a/k/a Cipriani Property) is being remediated under Option Two of the settlement agreement. See Section 4.3.2

PLAINTIFFS purchased the Cipriani property to be used as a personal vacation property. See composite Exhibit A. It is beyond dispute that the Cipriani property was never rented; the Cipriani property was used as a second home until it became uninhabitable. See Exhibit B.

Early in the process, the PLAINTIFFS thought they may be able to assert a claim for lost rent for a property at 186 Padova Way, North Venice, Florida (hereinafter the "Padova Property"). While this was a common sense assertion, such a claim was not within the scope of the settlement agreement.

To put in context, the PLAINTIFFS, who had rented the Padova property previously, decided to use the Padova property as a substitute second home since the Cipriani property was uninhabitable due to DEFENDANT'S reactive drywall. In using the Padova property as their substitute second home (or vacation home), the PLAINTIFFS were forced to forego rent on the Padova property. While that is an injury to the PLAINTIFFS as a result of conduct of the DEFENDANT KNAUF, it is not a cognizable damage under the Settlement Agreement. PLAINTIFFS long ago recognized they are unable to make such a claim for the Padova property.

There is no lost rent claim for the Cipriani property (the affected property) which is being remediated under Option 2.

PLAINTIFFS' property was identified as 80% Knauf Chinese reactive drywall. PLAINTIFFS qualified for recovery under Section 4.3.2 "Option 2: Self Remediation Option" and Section 4.3.4: "Mixed Property Owners."

Section 4.3.1.1. *et seq.*, sets forth the entitlement to and calculation of a "Lump Sum Payment" to all owners of property with KPT drywall without restriction.

    4.3.1.1 **LUMP SUM PAYMENT**
        4.3.1.1.1.    For KPT Properties that are less than or equal to $3,500 square feet "under air" as determined by the Lead Contractor or Other Approved Contractor and as set forth in the Sample Contractor-KPT Property Owner Agreement attached as an exhibit to the Remediation Protocol ("Under Air Area"), a single payment ("Lump Sum Payment") of $8.50 per square foot of Under Air Area.

      4.3.1.1.2.    For KPT Properties that have an Under Air Area greater than 3,500 square feet, a Lump Sum Payment of $10.00 per square foot of the Under Air Area.

      4.3.1.1.3    The Lump Sum Payment will be paid to the KPT property Owner as soon as practicable, but not more than fifteen (15) days, after the KPT Property Owner executes an agreement substantially in the form of the Sample Contractor-KPT Property Owner Agreement.

Section 4.3.4.1. specifically states "In addition, the Remediation Fund will pay the Mixed Property Owner the Lump Sum Payment specified in Section 4.3.1.1. multiplied by the KPT Drywall Percentage."   There is no other qualifier or restriction.

However, the DEFENDANT KNAUF flatly refuses to provide a "Lump Sum Payment" to PLAINTIFFS.   The total of the lump sum payment to which PLAINTIFFS are entitled is $11,961.2 (1759 sqare feet times $8.50 per square foot times 80%). See Property Information Sheet provided by the Claims Administrator. See Exhibit C.

PLAINTIFFS have provided the following evidence in support of their claim for Lump Sum:

- History of Property Form on 6/30/11 which sets forth the Cipriani home was a vacation home;

- Plaintiff Profile Form dated December 6, 2009 establishing owner occupant (certified by PLAINTIFFS);

- Plaintiff Profile Form dated October 29, 2012 establishing owner occupant (certified by PLAINTIFFS);

- Clients Lost Rental clarification dated 11/7/14;

- Lump Sum Eligibility Form dated July 2, 2014 (certified by PLAINTIFF)

See Composite Exhibit A.  In addition, PLAINTIFFS went a step further to prove that the Cipriani Property was never rented nor intended to be rented.  See Exhibit B.  All of these materials have been provided to DEFENDANT KNAUF in an attempt to resolve this dispute.

After a sophisticated negotiation, lengthy Court-approval process, and the expiration of the time period for objections and opt-outs, there is no basis to re-interpet an unambiguous Settlement Agreement.  See, e.g., Delesdernier v. Delesdernier, 12-38 (La. App. 5 Cir. 5/31/12), 95 So. 3d 588, 599-600.  See also, Chisolm v. Greenstein, 876 F. Supp. 2d 709, 716 (E.D. La. 2012) (citing, United States v. Armour & Co., 402 U.S. 673, 681– 82, 91 S.Ct. 1752, 29 L.Ed. 2d 256 ( 1971); United States v. Int'l Brotherhood of Teamsters, 998 F.2d 1101, 1107 (2d Cir.1993) ("A court may not replace the terms of a consent decree with its own, no matter how much of an improvement it would make in effectuating the decree's goals."); Harris v. City of Philadelphia, 137 F.3d 209, 212 (3d Cir.1998) (noting that a court "must not strain the decree's precise terms or impose other terms in an attempt to reconcile the decree with our own conception of its purpose.").  As the Chisolm Court concluded, "Courts charged with enforcing a consent decree should preserve these bargained-for positions, rather than rewriting them."  Chisolm, 876 F. Supp.2d at 716. (citations omitted).

DENFENDANT KNAUF fixates on a document provided to the Plaintiffs Steering Committee, long before claims were being asserted, addressing theoretical potential damages. At that time, Plaintiffs also asserted the idea that perhaps there was also injury had might be able to make if they decided to ever rent the Cipriani property.   However, as set forth herein and supported by certified documents and other evidence, the Cipriani property was not purchased for rental and was never rented.

B.  IN THE ALTERNATIVE, IF DEFENDANT ASSERTS THIS IS A COMMERCIAL PROPERTY, THEN PLAINTIFFS ARE STILL ENTITLED TO LUMP SUM PAYMENT UNDER THE SETTLEMENT AGREEMENT.

While the Court need not address this argument based upon the facts and evidence, if Defendants are nonetheless arguing this is a Commercial Property under Section 1.1.2.2, PLAINTIFFS would argue alternatively there is no restriction on the type of use or any suggestion a Commercial Owner is not entitled to the "Lump Sum Payment." The Settlement Agreement is clear and unambiguous in this regard.

Further, there is no other subsection in the Settlement Agreement governing the eligibility for "Lump Sum Payment" for "Commercial Owners" who participated in the Option 2 Remediation. The only restrictions on the amount of a "Lump Sum Payment" to be paid to any property owner is set forth in Section 4.3.3 (Cash Out Option) and Section 4.3.4.2 (Mixed Properties). However, a "Commercial Owner" who would choose Option 2, Option 3 *or who has a mixed property unit would also be entitled to a reduced "Lump Sum Payment"* as these are not restricted to only "Residential Owners". Similarly, all owners who make a claim under 4.3.7, "Already Remediated Properties", are entitled to the full scope of recovery under 4.3.1.1 irrespective of whether they are a Residential or Commercial Owner.

In fact, as stated above, Section 4.3.4.1. specifically states "In addition, the Remediation Fund will pay the Mixed Property Owner the Lump Sum Payment specified in Section 4.3.1.1. multiplied by the KPT Drywall Percentage." There is no other qualifier or restriction. By the clear and unequivocal terms of the settlement agreement, even if DEFENDANT KNAUF is successful in arguing PLAINTIFFS are a commercial owner, PLAINTIFFS are entitled to the "lump sum payment" under Section 4.3.4.1.

The "Lump Sum Payment" is a compromised recovery not predicated upon the need to prove actual individualized damages sustained by the owner beyond remediation. Instead, Section 1.47 outlines that "Other Covered Expenses" to include:

> …reimbursement for all alternative living expenses, personal property damage, maintenance of the KPT property during remediation, **including, but not limited to**, payment of all utility bills, insurance, property taxes and maintenance of landscaping and moving storage expenses, incurred as a result of the remediation of the KPT property, pursuant to Section 4.3.1.1 through 4.2.1.3.

(emphasis added). Notably, there is no requirement that a homeowner incur each and every one those type expenses. This definition does, however, operate as an effort by the KNAUF Defendants to release all the potential costs and losses sustained by owners irrespective as to whether or not they actually incurred the expenses or what level of expenses were incurred, even if the losses were greater than the "Lump Sum Payment". In fact, the Knauf Defendants can neither claim nor adduce evidence that Commercial Owner would not sustain many, and in some circumstances all, of the losses covered by section 1.47, which the "Lump Sum Payment" was intended to cover.

In an analogous situation, for Commercial Owners choosing the remediation Section 4.3.1 Option ("Option 1), Knauf has, based upon information and belief, awarded payments pursuant to Section 4.3.1.2 ("Delay Period Payment") for delay in an Option 1 remediation of Commercial property. It would be anomalous for a Commercial Owner to be eligible for Section 4.3.1 benefits, and receive Section 4.3.1.2 payments, but not be eligible for payments pursuant to a provision in between those other sections, 4.3.1.1, without specific wording prohibiting such recovery. In fact, there is no other manner in which to read Section 4.3.1.1 other than a KPT

Property Owner, residential or commercial, is entitled to "Lump Sum Payment" just as they would be entitled to "Delay Period Payment" in the very next section.[1]

In other provisions of the Settlement Agreement, when Knauf wanted to specifically distinguish "Residential" from "Commercial" owners in the types of recovery, it did so. *See, e.g.,* Sections 4.7.1.1 (Pre-remediation alternative living expenses only awardable to residential owners); 4.7.1.3.2(a) (Residential Owner must establish that the KPT Board substantially caused the foreclosure) versus 4.7.1.3.2(b) (Commercial Owner must establish KPT substantially caused the tenants to vacate or decreased revenues); 4.7.1.3.3(e) (Residential Owner must provide "verified and authenticated documents" regarding alternative living expenses) versus 4.7.1.3.3(f) (Commercial Owner must provide documents related to occupancy arrangements with tenant); 4.7.1.4.2 (e) (Residential Owner must provide "verified and authenticated documents" regarding alternative living expenses) versus 4.7.1.4.3(f) (Commercial Owner must provide documents related to occupancy arrangements with tenant); 4.7.2 (Bodily injury claims only available to Residential Owner or tenant, not to Commercial Owner). When KNAUF wanted to limit

---

[1] Defendant may point to Section 4.7.1.2 in an attempt argue that particular subsection is the ONLY provision to which a Commercial Owner can claim and recovery. First, that is obviously incorrect since we know Knauf has paid claims to Commercial Owners under Section 4.3.1.1 and 4.3.1.3. Second, suggesting the recovery of three (3) months lost rent solely during the period of remediation represents the entirety of damages to Commercial Owners ignores the full scope of what economic damages were incurred by Commercial Owners, including losing tenants long before remediation began and incurring all of the carrying costs associated with carrying the property when the property could not be leased beyond the remediation period. In some circumstances, the Commercial Owner undoubtedly had to pay for move out expenses to avoid further litigation and waiver of escrowed security payments. Third, Section 4.7.1.2 is a specific provision for Commercial Owners in the "Other Loss Fund"; Section 4.3.1.1. payments are NOT part of the "Other Loss Fund", which is capped. Importantly, Section 4.7.1.2 makes clear for Commercial Owners that recovery under "Lost Use, Sales and Rentals" does not include alternative living expense or personal property damage; those damages are recoverable under Section 4.3.1.1. Finally, Section 4.7.1.5 allows a tenant who incurred damage to tenant-owned appliances to make a separate claim through documentation; obviously Commercial Owned damaged appliances and personal property would be covered by the Section 4.3.1.1 "Lump Sum Payment". The alternative is to suggest that Commercial Owners, who generally own the expensive appliances in a lease situation, was never expected to receive any recovery for damage every other owner and even tenants could seek.

recovery to Commercial Owners or change the provisions for eligibility for Commercial Owners it did so in great detail, even creating entire sections.

    C.    CONCLUSION.

For the reasons set forth above, the Undersigned respectfully requests this Court enforce the Settlement Agreement and enter an Order entitling PLAINTIFFS to recover the "Lump Sum Payment" as defined by the Settlement Agreement, in the amount of $11,961.20. Additionally, because PLAINTIFFS' counsel had to file a motion before the Court to obtain that which the PLAINTIFFS are entitled, Counsel asserts an entitlement to attorney's fees and costs.

                        Respectfully Submitted,

                        */s/ Michael J. Ryan*
                        Michael J. Ryan Florida Bar No. 975990
                        Krupnick Campbell Malone Buser Slama
                        Hancock Liberman P.A.
                        Attorneys for Plaintiff
                        12 S.E. 7 Street, Suite 801
                        Ft. Lauderdale, FL  33301
                        Ph:954-763-8181;  FAX (954) 763-8292
                        mryan@krupnicklaw.com;
                        pleadings-mjr@krupnicklaw.com

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Memorandum in Support of Plaintiffs' Motion to Enforce Compliance with Third Amended Settlement Agreement has been emailed to  Russ Herman, Esquire, Plaintiffs' Liaison Counsel, and Kerry Miller, Esquire, Defendants' Liaison Counsel,  and upon all parties by electronically uploading the same to File and ServeXpress f/k/a Lexis Nexis File and Serve in Accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a

notice of electronic filing in accordance with the procedures established in MDL 2047, on this 20th day of November 2014.

                                            */s/ Michael J. Ryan*
Michael J. Ryan Florida Bar No. 975990
Krupnick Campbell Malone Buser Slama
Hancock Liberman P.A.
Attorneys for Plaintiff
12 S.E. 7 Street, Suite 801
Ft. Lauderdale, FL  33301
Ph:  954- 763-8181; FAX (954) 763-8292
mryan@krupnicklaw.com
pleadings-mjr@krupnicklaw.com