UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | : : : : : : : | MDL NO. 2047 SECTION L JUDGE FALLON MAGISTRATE JUDGE WILKINSON |

**THIS DOCUMENT RELATES TO ALL CASES**

## ORDER AND REASONS

Before the Court is an *in camera* review of the privilege log of counsel of record for Taishan Gypsum Co. Ltd. ("TG") and Tai'an Taishan Plasterboard Co. Ltd. ("TTP"), (collectively the "Taishan Entities" or "Taishan"). The *in camera* review stems from a discovery dispute between the Plaintiffs' Steering Committee ("PSC") and counsel for Taishan. Having considered the parties' memoranda and the applicable law, the Court issues this order and reasons.

### I.   BACKGROUND

From 2005 to 2008, a housing boom coincided with the destruction caused by Hurricanes Katrina and Rita to sharply increase the demand for construction materials in the Gulf South and East Coast. In response, Chinese companies manufactured, and sold to homeowners throughout the United States, considerable quantities of gypsum wallboard which came to be known as "Chinese drywall." Homeowners experienced problems with the drywall. Specifically, the drywall emits various sulfide gases, damages structural mechanical and plumbing systems of the home, and damages other appliances in the home. The affected parties sued the entities involved in the manufacturing, importing, and installing the Chinese drywall. The cases multiplied and the

1

Judicial Panel on Multidistrict Litigation ("MDL"), declared the matter an MDL and transferred the cases to this Court. After a period of discovery, it became clear that there were two principal manufacturers, (1) the Knauf Entities, and (2) the Taishan Entities.

Taishan initially refused to participate in this litigation, and default judgments were entered in four cases: *Germano*, *Mitchell*, *Gross*, and *Wiltz*. The day before the expiration of the window for appeal, Taishan appeared and appealed to the Fifth Circuit Court of Appeals, arguing – for the first time – that this Court lacked personal jurisdiction. The matters were remanded to this Court for further discovery on the jurisdictional issue. After a period of discovery, this issue was briefed and argued. In due course, this Court rendered an opinion finding it had jurisdiction over the Defendant Taishan. The Defendant appealed the Court's judgment. Ultimately, two separate Fifth Circuit panels affirmed this Court's exercise of jurisdiction over Taishan. The time for seeking writs to the Supreme Court has passed, so such judgment became final and enforceable. In order to execute the judgment, Plaintiffs moved for a Judgment Debtor Examination. The Court ordered Taishan to appear in open court on the morning of July 17, 2014 for a Judgment Debtor Examination (Rec. Doc. 17774). Taishan failed to appear for the July 17, 2014 Judgment Debtor Examination and the Court held Taishan in contempt of court, both criminally and civilly. (Rec. Doc. 17869).

Just prior to the Judgment Debtor Examination, counsel for Taishan filed motions to withdraw as counsel of record, reporting that Taishan had decided to no longer participate in proceedings before this Court and had terminated counsel. (Rec Docs. 17846, 17858). Thereafter, the PSC issued a request for document production from Taishan's counsel regarding its communications with Taishan. The PSC seeks, for example, "all communication regarding retention as counsel for any of the Taishan affiliated companies . . ." and "all documents and

2

information regarding the decision to discharge the Taishan Defendants' counsel," among other requests. Counsel for Taishan responded, objecting to document production on the basis of attorney-client and work product privilege.

## II.     PRESENT MOTION

The PSC now moves to compel document production, as further supported by a supplemental memorandum. (Rec. Doc. 18060, 18193). The PSC argues that the attorney-client privilege does not apply to the communications between Taishan and its affiliates' communications with counsel, as it appears that criminal contempt was always contemplated by Taishan. The PSC notes that Taishan has been held in criminal contempt for deliberately disregarding the Court's order to appear for a judgment debtor examination. This criminal contempt, the PSC argues, invokes the crime-fraud exception to the attorney-client privilege. Moreover, the PSC argues that Taishan waived its privilege when the China National Building Material Company ("CNBM," an upstream affiliate of Taishan) discovered the views of counsel by its August 20, 2014 "Voluntary Announcement."

Counsel for Taishan respond in opposition, as further supported by a supplemental responsive memorandum. (Rec. Doc. 18069, 18193). First, counsel argue that the document requests are irrelevant, overbroad, and overly burdensome. Second, counsel argue that there is no basis to believe that Taishan communicated with counsel for the purpose of perpetrating or concealing any fraud or crime. Third, counsel argue that the statement by the upstream affiliate CNBM is not sufficient to waive privilege for TG.

### III. DISCUSSION

#### A. Attorney-Client Privilege

The attorney-client privilege is an exception to the general rule that the law is entitled to every man's evidence. The privilege generally protects communications from the client to the attorney, and responsive communications from the attorney to the client. A widely quoted definition of the attorney-client privilege appears in *United States v. United Shoe Machinery Corp.*, 89 F. Supp. 357, 358-59 (D. Mass. 1950):

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. 89 F. Supp. at 358-59.

This definition was adopted by the Fifth Circuit Court of Appeals in 1975 in *In re Grand Jury Proceedings*, 517 F.2d 666, 670 (5th Cir. 1975), and has been generally applied elsewhere. *See generally* PAUL R. RICE, 1 ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES, § 5:2 (Thomson West 2d ed. 1999). It is key, then, that for privilege to attach to a client's communication, the client must be soliciting legal advice from the attorney, as opposed to non-legal services such as business advice. *See* RICE, § 7:1. As explained by the court in *Hercules Inc. v. Exxon Corp.*, 434 F. Supp. 136, 147 (D. Del. 1977), "[o]nly if the attorney is 'acting as a lawyer' – giving advice with respect to the legal implications of a proposed course of conduct – may the privilege be properly invoked. In addition, if a communication is made primarily for the purpose of soliciting

legal advice, an incidental request for business advice does not vitiate the attorney-client privilege."

There are a number of exceptions to the attorney-client privilege, including the crime-fraud exception, which permits disclosure of any communication where the client seeks advice from an attorney in carrying out a crime or fraud. *In re Grand Jury Proceedings,* 43 F.3d 966, 972 (5th Cir.1994). As the Fifth Circuit explained, "[t]he test is whether the *client's* purpose is the furtherance of a future fraud or crime. However, this focus on the client's purpose appears to be driven by the fact that *the attorney-client privilege is, of course, held by the client and not the attorney*." *Id.* (internal citations omitted) (emphasis added).

### B.  Work Product Privilege

In addition to the attorney-client privilege, the work product privilege may protect communications made during litigation. The work product privilege prevents a party to a lawsuit from receiving the benefits of an opposing counsel's preparations for trial. *See Hickman v. Taylor,* 329 U.S. 495, 509 (1947). The work product doctrine is codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure. *Dunn,* 927 F.2d at 875; *Nance v. Thompson Medical Co.,* 173 F.R.D. 178, 181 (E.D.Tex.1997); *Schwegmann Westside Expressway v. Kmart Corporation,* 1995 WL510071, *5 (E.D. La.1995). The work product doctrine protects documents and other tangible things prepared by a party or representative of a party, including attorneys, consultants, agents, or investigators in anticipation of litigation. *Hickman*, 329 U.S. at 509*; United States v. Nobles,* 422 U.S. 225, 239 (1975). The crime-fraud exception also may apply in to the work product privilege. However, as the Fifth Circuit explained:

> [i]n contrast to the attorney-client privilege, *the work product privilege belongs to both the client and the attorney, either one of whom may assert it*. Thus, a waiver by the client of the work product privilege will not deprive the attorney of his own

5

work product privilege, and vice versa. . . . Numerous courts have agreed that, in
the specific context of the work product privilege, an innocent attorney may
invoke the privilege even if a prima facie case of fraud or criminal activity has
been made as to the client. *In re Grand Jury Proceedings,* 43 F.3d at 972
(emphasis added).

### C. Analysis

As a threshold matter, the Court notes that counsel for Taishan accurately notes the great breadth of the request for discovery. The PSC, for example, sweepingly requests as discovery "all communication regarding retention as counsel for any of the Taishan affiliated companies . . ." in order to permit it to properly respond to counsel's motion to withdraw. This request is overbroad. Rather, the present discovery dispute is properly confined to Taishan's attempt to "withdraw" itself from this litigation (subsequent to this Court's ruling on personal jurisdiction) and the related termination of counsel. Upon review of the privilege log Items, the Court notes only a few Items fall within this scope prior to June 20, 2014, the date that the Court set the July 2014 Judgment Debtor hearing: Items 104, 108, 114, 115, 119, 120, 121, 123, 124, 125, 135. Otherwise, the privilege log Items prior to Item 142 are not germane to this discovery dispute (and, at any rate, are covered by attorney-client and/or work product privilege), thus the Court need not further address them. The Court declines to compel production of privilege log Items that are not relevant to this discovery dispute.

The Court will thus confine its privilege inquiry to the above-mentioned relevant Items along with Items 142 to 227. For these Items, the question is whether the Items are subject to attorney-client and/or work product privilege or whether they fall under an applicable exception.[1]

---

[1] The Court is not persuaded by the PSC's argument that the statement of CNBM, an upstream affiliate of Taishan, constitutes a waiver of privilege. CNBM's statement is limited in scope as it states that "[t]he US legal counsel of Taishan Gypsum is of the view that the above injunction order recently made by the US District Court imposing certain restrictions on the affiliates of Taishan Gypsum may extend to this country." (Rec. Doc. 18060-4). This statement, made by CNBM, cannot waive the privilege of a third-party, Taishan. The PSC seems to implicitly

6

These Items fall into two categories: first, communications between Taishan and Taishan's counsel; and second, communications between co-counsel for Taishan. Because these two categories of communications are significantly distinct, the Court will assess them separately.

The communications in the first category indeed involve confidential communications made from Taishan to its counsel. Significantly, however, these communications may fall outside the attorney-client privilege if they "seek[s] advice from an attorney in carrying out a crime or fraud." *In re Grand Jury Proceedings,* 43 F.3d at 972. To answer this question, the Court must resolve if, and when, Taishan intended to engage in criminal behavior. The Court finds that according to privilege log Items, the crime-fraud exception attaches on June 22, 2014, when Taishan indicated that it was "discussing *how* to 'withdraw' from the litigation internally." Privilege Log Item 143 (emphasis added). This statement constitutes *prima facie* evidence that Taishan– at the latest by June 22, 2014 – had decided to engage in criminal contempt of court by refusing to appear at Judgment Debtor Examination. Notably, notice of the Judgment Debtor Examination issued on June 20, 2014. Taishan further clarified on July 11, 2014 that it would not attend the Judgment Debtor Examination. Privilege Log Item 165. The criminal nature of Taishan's mental state is further demonstrated by Taishan's blatant denial that the Court had held it in contempt. *See* Privilege Log Item 202.

Subsequent to June 20, 2014, Taishan's communications with counsel revolved around Taishan's intent to commit criminal contempt. Because the client holds the attorney-client privilege, and Taishan's criminal behavior, as indicated by these statements, put these communications outside the scope of the attorney-client privilege, the responses of counsel to

---

acknowledge the insufficiency of this waiver in its supplemental memorandum by distinguishing Taishan from upstream affiliates, such as CNBM. (Rec. Doc. 18193). And, regardless, the statement is highly limited in scope and could not be viewed to waive the entire attorney-client privilege.

Taishan also fall outside the scope of the privilege. Accordingly, the following Privilege Log Items are subject to the crime fraud exception and are not subject to attorney-client privilege, thus need to be product, subject to the procedures described herein: **143, 144, 148, 149, 153, 154, 158, 159, 161, 165, 167, 169, 170, 171, 175, 176, 182, 183, 188, 190, 197, 199, 201, 202, 204, 205, 206, 212, 215, 217, 219**. That being said, however, the Court notes that some of these Items which contain unprivileged statements also appear to contain other statements *previously* made by counsel in lengthy email chains that nonetheless may be privileged or otherwise properly withheld from disclosure. Even so, the Court emphasizes that the crime-fraud exception applies equally to client and counsel *for those instances in which the client's purpose is to further the client's intent to participate in criminal contempt of court*. 43 F.3d at 972. For these reasons, before ordering that counsel for Taishan disclose these Items, the Court will allow counsel to respond. This response affords an opportunity to redact any statement of counsel in an email chain where that statement was made prior to Taishan's criminal intent expressed on June 20, 2014. Counsel may also further respond as is necessary to properly protected privileged information.

    The second category of Items, however, is subject to work product privilege. These Items are replete with discussion of legal strategy in this litigation and contain numerous documents that were being prepared as a part of this litigation. As noted above, the work product privilege may be asserted by counsel even where a prima facie case has been made that the client perpetrated a crime falling with the crime-fraud exception, so long as counsel was not a party to that crime. *In re Grand Jury Proceedings,* 43 F.3d at 972. Such is the case here. There is no evidence that counsel partook in the criminal contempt of their client. Moreover, some of these internal communications among counsel involve issues other than Taishan's attempt to

"withdraw" from the litigation. Accordingly, the second category of Items 142 to 227 is privileged and/or irrelevant to the present discovery issue.

As a final matter, the Court notes that some of the Privilege Log Items were either missing or were in untranslated Chinese. The Court will presume that these Items are either duplicative or are otherwise reflected translated in English elsewhere on the Privilege Log. If this assumption is not correct, counsel shall timely submit to the Court a supplemental Privilege Log with English translations.

## IV.   CONCLUSION

In light of the foregoing, **IT IS ORDERED** that the motion to compel document production is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that counsel have until **December 29, 2014** to further respond regarding the Privilege Log Items that are bolded in Part III.C of this order. The Court will consider any further response before ordering that these Items be disclosed to the PSC. Counsel for Taishan shall contact Chambers to coordinate pick-up for the Privilege Log Binders by **December 23, 2014**.

New Orleans, Louisiana, this 11th day of December, 2014.

_____
UNITED STATES DISTRICT JUDGE