IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION                                              MDL NO. 2047

This Document Relates to:                      SECTION L
                                                            JUDGE FALLON
Braxton H. Collins, et ux. v. Bass Homes, Inc., et al.     MAG. JUDGE WILKINSON
So. Dist. Mississippi, C.A. No. 13-cv-6652

---

**SECOND AMENDED COMPLAINT**
**(JURY TRIAL REQUESTED)**

---

COME NOW the Plaintiffs, Braxton H. Collins and Kerrie F. Collins, (hereinafter "Plaintiffs") by and through undersigned counsel, and file this, their Second Amended Complaint against the Defendants, Bass Homes, Inc. (hereinafter "Bass Homes"), Ace Hardware Corporation (hereinafter "Ace  Hardware"), Ace Home Center, Inc., (hereafter "AHC") Pate Stevedore Company, Inc. (hereafter "Pate"), Pensacola Stevedore Company, Inc. (hereafter "PSC"), Fireman's Fund Insurance Company (hereafter "FFIC") and Fictitious Defendants 5 through 150 are those Producer Defendants, Distributor Defendants, Builder Defendants and Alter Ego Defendants whose identities and true names are currently unknown to the Plaintiffs (hereinafter "Fictitious Defendants"), and in support thereof would show unto this Honorable Court as follows, to-wit:

**PARTIES**

1.      Plaintiffs, Braxton H. Collins and Kerrie F. Collins, are the owners of a residence located in Moss Point, Mississippi (the "Collins Residence").  The address of the Collins Residence is 10720 Hwy 614, Moss Point, MS 39562.  This is also the Collins' primary

residence.   An inspection has revealed the presence of Defective Chinese drywall in this Residence.

2.      Defendant Bass Homes, Inc., ("Bass") is an Alabama corporation authorized to conduct business in the State of Mississippi, with its principal place of business located at 34661 State Hwy 59, Stapleton, AL 36578.  Bass Homes, Inc. is a residential construction company and is operating, conducting, engaging in, and carrying on a business or venture in this state and has an office or agency in this state.

3.      Defendant Ace Hardware Corporation. ("Ace Hardware") is a Delaware corporation authorized to conduct business in the State of Mississippi, with its principal place of business located at 2200 Kensington Court, Oak Brook, IL 60523-2100.  At all material times, Ace was in the business of distributing, supplying and/or selling residential drywall in Mississippi, and maintained multiple retail, office and/or warehouse locations in the State of Mississippi.

4.      Defendant Ace Home Center, Inc. (AHC) is an Alabama Corporation authorized to conduct business in the State of Mississippi, with its principal place of business located at 21090 Alabama 59 South, Robertsdale, Alabama  36567.  At all material times, Ace was in the business of distributing, supplying and/or selling residential drywall in Alabama as a retail outlet.

5.      Defendant Pate Stevedore Company, Inc. ("Pate") is a Florida Corporation with its principal place of business located at 312 West Main Street, Pensacola, FL 32591.  Upon information and belief, Pate offloaded, stored, delivered, imported, shipped, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed and/or supplied the Chinese drywall at issue herein.

6.      Defendant Pensacola Stevedore Company, Inc. ("PSC") is a Florida Corporation with its principal place of business located at 720A Barracks Street, Bldg. 2, Pensacola, FL

32502.   Upon information and belief, PSC offloaded, stored, delivered, imported, shipped, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed and/or supplied the Chinese drywall at issue herein.

7.      Defendant Fireman's Fund Insurance Company is a California Corporation with its principal place of business located at 777 San Marin Drive, Novato, CA 94998. Upon information and belief, FFIC took possession of and/or title to offloaded, stored, delivered, imported, shipped, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed and/or supplied the Chinese drywall at issue herein.

8.      Fictitious Defendants 5 through 150 are those Producer Defendants, Distributor Defendants, Builder Defendants and Alter Ego Defendants who identities and true names are currently unknown to the Plaintiffs, who therefore sues Fictitious Defendants 2 through 150 by such fictitious names.

## JURISDICTION and VENUE

9.      The litigation of this controversy should proceed in this forum because the properties at issue are located in the Southern District of the State of Mississippi, the Plaintiffs reside in this District and the wrongful conduct is concentrated in this District.

10.     Defendants are foreign corporations that either are registered to conduct business in the State of Mississippi or that actually transacted business in Mississippi.

## FACTS

11.     On or about August 22, 2008, Braxton H. Collins and Kerrie F. Collins entered into a Building Agreement with Bass Homes, Inc. for the construction of a residence on real property located at 10720 Hwy 614 Moss Point, MS 39562. See Building Agreement, Attached hereto as **Exhibit "A"**.

12.     In about September, 2008, Bass Homes, Inc. applied for a building permit for the Collins Residence.

13.      Thereafter, Defendant Bass Homes was the general contractor and built the Collins Residence located at 10720 Hwy 614 Moss Point, MS 39562.  Plaintiffs are informed and believe Ace Hardware supplied the drywall installed in the Collins Residence.

14.     A certificate of occupancy for the Collins Residence located at 10720 Hwy 614 Moss Point, MS 39562 was issued on or about February 5, 2009. Thereafter, the Collins family occupied the residence.

15.     On information and belief, Ace Hardware, by and through Ace Home Center, Inc., sold the drywall that Bass Homes, or the subcontractor hired by Bass Homes, installed in the Collins Residence.  Said drywall was sold as new, and subject to Mississippi and Alabama laws, UCC laws and the Mississippi Home Builders Act.  Said drywall was actually salvaged drywall from the damaged M/V *Sanko Ralley*.  It was procured by the insurance carrier for the M/V *Sanko Rally*, FFIC, and resold to PSC and/or Pate who then placed the product into the "stream of commerce" and sold it as "new" to Ace Hardware.

16.     In or about November 2009, Plaintiffs determined that their Residence was built with drywall manufactured in China ("Defective Chinese Drywall").

17.     The material composition and offensive smell of the Defective Chinese Drywall in the Residences renders it inferior to American-made drywall and unfit for ordinary use in residential construction and emits a corrosive sulfur fume that places the home at great risk for fire and damages all electrical and, therefore, structural components.

18.     Defendants knew, or should have known, that the Defective Chinese Drywall that Bass Homes purchased from Ace Hardware, by and through Ace Home Center, Inc.,  and that Bass Homes installed, was going to be used in the construction of the Residence.  Ace Hardware

4

and Ace Home Center, Inc. also knew, or should have known, that residential homeowners, such as Plaintiffs, were foreseeable users of the Defective Chinese Drywall and that residential homeowners, such as Plaintiffs, required and expected the drywall to be fit for the ordinary purpose for which it was intended.

19.     Unlike American-made drywall, the Defective Chinese Drywall in the Residences emits several sulfur compounds, including, but not limited to, carbon disulfide, carbonyl sulfur, and hydrogen sulfide.  The Defective Chinese Drywall in the Residence is also suspected to contain several other impurities which render it unfit for usage in residential construction. The sulfur based compounds emitted have created a sulfur odor which renders the drywall unfit for the ordinary purpose for which it was intended.

20.     The Defective Chinese Drywall emits these sulfur based compounds because it suffers from either a defective manufacturing and/or mining process.

21.     The corroded items described above are also unfit for the ordinary purpose for which they were intended. Plaintiffs are uncertain as to the cause of the corrosion and have not engaged in any act or activity which has led to or caused the corrosion in any way.

22.     The Defective Chinese Drywall in the Residence has and will continue to cause damage to the Residences and Plaintiffs' personal property, including structural damage.

23.     As a result of the foregoing, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to: economic damage, and other economic damages; damage to real and personal property; attorneys' fees and expenses; and court and/or administrative costs.

24.     As a result of Defendants' wrongful conduct, Plaintiffs' Residence must be repaired and have declined and will continue to decline in value by at least the cost of repair.

## COUNT I
## BREACH OF CONTRACT

25.     Plaintiffs incorporate by reference paragraphs 1 through 24 previously alleged as though fully set forth herein.

26.     Defendant Bass Homes sold the Residence to the Plaintiffs built with Defective Chinese Drywall.

27.     Defendant Bass Homes built the Residence with Defective Chinese Drywall.

28.     Defendant Ace Hardware, by and through Ace Home Center, Inc., Pate, PSC and FFIC, sold the Defective Chinese Drywall which was used to build the Residence.

29.     Upon information and belief, Bass Homes purchased the Defective Chinese Drywall that it installed in the Residence from Ace Hardware, by and through Ace Home Center, Inc..

30.     The Defective Chinese Drywall was expected to and did reach the Plaintiffs' Residence without any substantial change in the condition to which it was sold.

31.     The Defective Chinese Drywall is defective and unreasonable dangerous and has caused damage because of the offensive odor and off gassing of sulfur compounds.

32.     The Plaintiffs, acting as reasonably prudent persons, could not have discovered that Defective Chinese Drywall was defective as herein mentioned or perceived its danger because the defects in the drywall were latent.

33.     Bass Homes breached the contract of warranty with Plaintiffs and the contract for sale, entitling Plaintiffs to an award of damages and performance of the contract.

34.     By and through Ace Hardware's and Ace Home Center, Inc.'s acts, they have breached the implied covenant of good faith and fair dealing relative to contracts of insurance and warranty and sale and UCC laws on goods, causing Plaintiffs' damages.

35.     In the alternative, the acts of the Defendants were grossly negligent, amounting to an independent tort, entitling Plaintiffs to an award of extra contractual damages.

36.     Defendants Bass Homes, Ace Hardware and Ace Home Center, Inc. are therefore strictly liable for the damages, punitive and actual, sustained by Plaintiffs.

37.     As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, incidental, and other related expenses.  Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Defendants Bass Homes, Ace Hardware and Ace Home Center, Inc., awarding damages, interest, costs, and attorneys' fees and such other relief as this Court may deem just and proper.

## COUNT II
## NEGLIGENCE AND GROSS NEGLIGENCE

38.     Plaintiffs incorporate by reference paragraphs 1 through 37 previously alleged as though fully set forth herein.

39.     Defendants owed a duty to Plaintiffs to exercise reasonable care in exporting, importing, distributing, delivering, supplying, selling, inspecting and installing the Defective Chinese Drywall, and in constructing the Residence, to insure that the Residence were constructed with materials that would not harm the inhabitants or the other property within the Residence.  Defendants also had a duty to adequately warn Plaintiffs about any unsafe materials used in the construction of the Residence known by Defendants.

40.     Defendants breached their duty to exercise reasonable care in exporting, importing, distributing, delivering, supplying, selling, inspecting and installing the Defective Chinese Drywall, and constructing the Residence by:

(a)     causing and/or allowing Defective Chinese Drywall to be installed within the Residence;

(b)     failing to investigate whether the Defective Chinese Drywall would harm inhabitants of the Residence or damage other property or work within the Residence;

(c)     failing to warn Plaintiffs that the Residence contained Defective Chinese Drywall that could damage their property;

(d)     failing to take reasonable measures that Defendants knew, or reasonably should have known, were necessary to protect the Plaintiffs from hazards associated with the Defective Chinese Drywall;

(e)     failing to exercise reasonable care in their quality control practices;

(f)     failing to comply with all applicable building codes;

(g)     failing to take such other precautions as may be revealed through discovery; and

(h)     selling damaged salvage goods as new in violation of Mississippi and Alabama law;

(i)     other acts of negligence which will be shown at trial.

41.     If Defendants had exercised reasonable care, they would have investigated the Defective Chinese Drywall and its adverse effects prior to selling or installing the Defective Chinese Drywall used in the Residences.  Further, Defendants could have warned Plaintiffs that the Defective Chinese Drywall may cause the problems described herein.

42.     Defendants' failure to exercise reasonable care constitutes a breach of duty.  The defects in the drywall were latent and could not have been reasonably discovered by Plaintiffs.

43.     As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs were harmed and have incurred damages, as described herein, including personal injuries and damage to other property in the Residence.

44.     Due to Defendants' negligence, Plaintiffs have sustained damages, including, but not limited to the diminution in property value, all costs associated with the removal and replacement of the Defective Chinese Drywall, all costs necessary to reconstruct Plaintiffs' Residence, and all costs associated with the repair or replacement cost of damaged property in the residence.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Defendants, awarding damages, interest, costs, and attorneys' fees and such other relief as this Court may deem just and proper.

## COUNT III
## BREACH OF IMPLIED WARRANTIES AND OTHER WARRANTIES

45.     Plaintiffs incorporate by reference paragraphs 1 through 44 previously alleged as though fully set forth herein.

46.     Notwithstanding the breach of the express warranty at issue herein, Bass Homes, through the sale of the subject residence, and the failure to remedy such defects, have breached implied warranties of fitness for a particular purpose and merchantability with respect to the sale of the defective residence.

47.     Notwithstanding the breach of the express warranty at issue herein, Ace Hardware, by and through Ace Home Center, Inc., Pate, PSC and FFIC, through the sale of the drywall installed in the Residence, and the failure to remedy such defects, have breached implied warranties of fitness for a particular purpose and merchantability.

48.     Such warranties include, but are not limited to, the warranties set forth in § 83-58-5, et seq., Mississippi Code of 1972, Annotated.  All such conditions precedent to enforcement of such warranties have been fulfilled.

49.     The material composition of the Defective Chinese Drywall in the Residence renders it inferior to American-made drywall and unfit for ordinary use in residential construction and was damaged salvage drywall.

50.     Defendants knew, or should have known, that the Defective Chinese Drywall that Bass Homes purchased from Ace Hardware, by and through Ace Home Center, Inc., Pate, PSC and FFIC, and that Bass Homes installed, was going to be used in the construction of the Residence.  Ace Hardware and Ace Home Center, Inc. also knew, or should have known, that residential homeowners, such as Plaintiffs, were foreseeable users of the Defective Chinese Drywall and that residential homeowners, such as Plaintiffs, required and expected the drywall to be fit for the ordinary purpose for which it was intended.

51.     Unlike new American-made drywall, the Defective Chinese Drywall in the Residence emits several sulfur compounds, including, but not limited to, carbon disulfide, carbonyl sulfur, and hydrogen sulfide.  The Defective Chinese Drywall in the Residence is also suspected to contain several other impurities. The sulfur based compounds emitted have created a sulfur odor which renders the drywall unfit for the ordinary purpose for which it was intended.

52.     The Defective Chinese Drywall emits these sulfur based compounds because it suffers from either a defective manufacturing and/or mining process.

53.     The corroded items described above are also unfit for the ordinary purpose for which they were intended. Plaintiffs are uncertain as to the cause of the corrosion and have not engaged in any act or activity which has led to or caused the corrosion in any way.

54.     The odor caused by the use of Defective Chinese Drywall in the Residences renders the Residences unfit for the ordinary and general purpose of residential living.

55.     In addition, the accompanying corrosion of pipes, wiring, metal finishes and fixtures, including their HVAC system, and experienced failures of electronic products, including televisions and computers in the home also renders the Residence is unfit for the ordinary and general purpose of residential living.

56.     As a result of the use of Defective Chinese Drywall, the Residence does not meet the ordinary, normal standards reasonably to be expected of living quarters of comparable kind and quality.

57.     Despite having knowledge as to the use of inferior drywall in the home and prior problems, Defendant Bass Homes sold the Residence to the Plaintiffs and built the Residence with Defective Chinese Drywall, all in reckless disregard for the health and safety of the occupants.

58.     As a result of Bass Homes' actions, Plaintiffs have suffered and will continue to suffer damage, including but not limited to: economic damages, including and other economic damages; damage to real and personal property; attorneys' fees and expenses; and court and/or administrative costs.

59.     As a result of Bass Homes' breach of the implied warranty of habitability and fitness, Plaintiffs are entitled to have the purchase price of the Residence restored to them by Bass Homes, together with any expenses there from, and for those damages and losses set forth above.

60.     As a result of Ace Hardware, Ace Home Center, Inc., Pate, PSC and FFIC's actions, Plaintiffs have suffered and will continue to suffer damage, including but not limited to: economic damages, including and other economic damages; damage to real and personal

property; attorneys' fees and expenses; and court and/or administrative costs as allowed under UCC laws of Mississippi and Alabama.

61.     As a result of Ace Hardware, Ace Home Center, Inc., Pate, PSC and FFIC's breach of the implied warranty of habitability and fitness, Plaintiffs are entitled to have the purchase price of the Residence restored to them by Bass Homes, together with any expenses there from, and for those damages and losses set forth above.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Bass Homes, Ace Hardware and Ace Home Center, Inc. awarding damages, interest, costs, and attorneys' fees and such other relief as this Court may deem just and proper.

## COUNT IV
## NEW HOME WARRANTY ACT

62.     The allegations of paragraphs 1 through 61 above are incorporated herein as if reproduced in full.

63.     Defendants failed to comply with Mississippi Code (Annotated) of 1972 §§ 83-53-1 through 83-53-17 by failing to construct the House to the standards contained in the building, mechanical-plumbing and electrical codes in effect in the county, state and federal Standard Building Codes, placing the House at risk for electrical fire and damaging the walls and other structural elements, and by using damaged salvage Chinese drywall which was marketed to the homeowner as new.

64.     The damages to Plaintiffs, including, but not limited to, those described herein were caused by Defendants' defiance of the New Home Warranty Act.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Bass Homes, Ace Hardware and Ace Home Center, Inc., awarding damages, interest, costs, and attorneys' fees and such other relief as this Court may deem just and proper.

## COUNT V
## FAILURE TO PROCURE A WARRANTY

65.     The allegations of paragraphs 1 through 64 above are incorporated herein as if reproduced in full.

66.      Alternatively, if such warranty as represented by Defendants was not procured, Defendants are liable to Plaintiffs as set forth herein.   At material times, by reason of Defendants' actions, Defendant entered into a contractual agreement with Plaintiffs and was under a non-delegable duty to procure the warranty coverage sold to Plaintiffs, or, in the alternative, to procure for Plaintiffs like or similar warranty coverage.  If such warranty coverage was not procured, Defendants breached such contractual agreements and duties to Plaintiffs, entitling Plaintiff to performance of the contract of warranty by Defendants, in addition to all such other damages as set forth herein.

## COUNT VI
## CLAIM FOR DECLARATORY RELIEF

67.     The allegations of paragraphs 1 through 63 above are incorporated herein as if reproduced in full.

68.     In addition to seeking damages from Defendants, Plaintiffs request that this Court declare the rights, status and legal relations of the parties under the contract of sale at issue, and the contract of warranty at issue, specifically the amount of benefits due and payable to Plaintiffs under the warranty at issue, pursuant to M.R.C.P. 57 (Declaratory Judgments).  Further, and additionally or alternatively, Plaintiff would show that the language of the warranty at issue is vague, ambiguous and capable of more than one meaning, and that such warranty should be construed against Defendants, and that as a result, this Court should find and declare coverage for the specific claims of Plaintiffs as set forth herein.

13

## COUNT VI
## FAILURE TO WARN

69.     The allegations of paragraphs 1 through 68 above are incorporated herein as if reproduced in full.

70.     Defendants, Bass Homes, Ace Hardware, Ace Home Center, Inc., Pate, PSC and FFIC, as the builder and as distributors of materials for the building of residential homes, have a duty to disclose hidden hazards in the home, especially when such hazards effect the safety of the home's occupants, upon acquiring knowledge of that hazard.

71.     Defendants knew that Defective Chinese Drywall was used in the construction of the home and had or should have had such knowledge immediately upon receiving the Defective Chinese Drywall at the job-site and installing it in the home.

72.     Defendants knew or should have known that Defective Chinese Drywall was an inferior product, not fit for ordinary use, and knew or should have known this immediately upon receiving the Defective Chinese Drywall at the job-site and installing it in the home.

73.     Defendants knew or should have known that Defective Chinese Drywall posed a serious health risk to residents of homes wherein Defective Chinese Drywall was used.

74.     Defendants knew or should have known that Defective Chinese Drywall was damaged salvage product from the M/V *Sanko Rally*.

75.     Despite knowledge of long standing quality concerns regarding the use and installation of Defective Chinese Drywall, Defendant caused Defective Chinese Drywall to be installed in the home.

76.     Despite such knowledge, Defendants failed to warn the Plaintiffs of the use of Defective Chinese Drywall in the home or of the hazards associated with Defective Chinese Drywall used in the home.

14

77.     Had Defendants informed Plaintiffs of the use of Defective Chinese Drywall in the home or of the hazards associated with Defective Chinese Drywall used in the home, Plaintiffs would not have purchased the home.

78.     Had Defendants informed Plaintiffs of the use of Defective Chinese Drywal1 in the home or of the hazards associated with Defective Chinese Drywall used in the home, Plaintiffs would not have suffered the damages alleged herein, and/or could have taken steps necessary to protect themselves and their property against damage.

79.     As a result of Defendant's actions, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to: economic damages; damage to real and personal property; past, present and future physical and mental pain and suffering; past, present and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and court and/or administrative costs.

80.     Due to Defendant's failure to warn Plaintiffs as to the hidden hazards in the home, Defendant is liable to Plaintiff for those damages and losses set forth above.

<u>**COUNT VII**</u>
<u>**FRAUD- BASS HOMES, INC.**</u>

81.     The allegations of paragraphs 1 through 80 above are incorporated herein as if reproduced in full.

82.     Despite knowledge of the use of inferior drywall in the home, Bass Homes sold the home to the Plaintiffs.

83.     As a result of Bass Homes' nondisclosure, silence, and misrepresentations, Defendants intentionally gained an unjust advantage over Plaintiffs.

15

84.     Had Bass Homes' advised Plaintiffs of the use of damaged salvage inferior drywall in the home, Plaintiffs would not have purchased the home.

85.     As a result of Bass Homes' actions, Plaintiffs have suffered and will continue to suffer damage and injury, including, but not limited to: economic damages; damage to real and personal properly; past, present and future physical, and mental pain and suffering; past, present and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and Court and/or administrative costs.

86.     As a result of Bass Homes' fraud, Plaintiffs have the right to rescission of the original sale from Bass Homes to Plaintiffs, and for those damages and losses set forth above.

**COUNT IX**
**INTENTIONAL / NEGLIGENT MISREPRESENTATION**

87.     The allegations of paragraphs 1 through 86 above are incorporated herein as if reproduced in full.

88.     Despite knowledge of the use of the inferior drywall in the home, Defendants sold the home to Plaintiffs.

89.     Plaintiffs justifiably relied on Defendants' intentional or negligent representation.

90.     Had Defendants advised Plaintiffs of the use of inferior drywall in the home, Plaintiffs would not have purchased the home.

91.     As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to economic damages; damage to real and personal property; past, present and future physical and mental pain and suffering; past, present and future emotional distress; past, present and future fear and fright; loss of enjoyment of life;

past, present, and future medical expenses; attorneys' fees and expenses; and court and/or administrative costs.

## COUNT X
## ALTERNATIVE PLEADING OF
## BREACH OF WARRANTY OF FITNESS

92.     The allegations of paragraphs 1 through 91 above are incorporated herein as if reproduced in full.

93.     The use of inferior drywall in the home renders the home unfit for the purpose of residential living.

94.     Despite having knowledge as to the use of inferior drywall in the home, Defendants sold the home to Plaintiff.

95.     As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to: economic damages; damage to real and personal property; past, present and future physical and mental pain and suffering; past, present and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and court and/or administrative costs.

96.     As a result of Defendants' breach of the warranty of fitness, Plaintiffs are entitled to have the purchase price of the home restored to them by Defendants, together with any expenses there from, and for those damages and losses set forth above.

## COUNT XI
## UNJUST ENRICHMENT

97.     The allegations of paragraphs 1 through 96 above are incorporated herein as if reproduced in full.

98.     As the builder of the home and supplier of drywall for the construction of Plaintiffs' house, Defendants knew that damaged salvage Defective Chinese Drywall was used in the construction of the home and had or should have had such knowledge immediately upon receiving the damaged salvage Defective Chinese Drywall at the job-site and installing it in the home.  Defendants knew or should have known that Defective Chinese Drywall was all inferior product, not fit for ordinary use, and knew or should have known this immediately upon receiving the Defective Chinese Drywall at the job-site and installing it in the home.

99.     Had Defendants disclosed to Plaintiffs the use of damaged salvage Defective Chinese Drywall in the construction of the home, Plaintiffs would not have purchased the home.

100.    As a result of Defendants' acts and/or omissions in concealing the presence of damaged salvage Defective Chinese Drywall in Plaintiffs' home, Defendants unjustly enriched without justification or cause.

101.    As a result of Defendants' acts and/or omissions in concealing the presence of damaged salvage Defective Chinese Drywall in Plaintiffs; home, Plaintiffs were unjustly impoverished without justification or cause.

102.    As a result of the foregoing, Defendants are liable to Plaintiffs for the losses suffered by them.

## COUNT XII
## THIRD PARTY BENEFICIARY

103.    The allegations of paragraphs 1 through 102 above are incorporated herein as if reproduced in full.

104.    Bass Homes entered into express contracts whereby its subcontractors performed work on the Residence.

18

105.    Plaintiffs were the intended beneficiary of the contracts between Bass Homes and its subcontractors.

106.    Bass Homes knew that Plaintiff would benefit from their contracts and could and would be harmed by the breach of those contracts by Bass Homes, its subcontractors, Ace Hardware and Ace Home Center, Inc..

107.    The subcontractors breached their contracts with Bass Homes by failing to carefully and properly complete the work on Plaintiffs' home in a good and workmanlike manner in compliance with applicable building codes and construction industry standards.  Therefore, Plaintiffs are entitled to damages as the third party beneficiary to Bass Homes' contracts based on damages suffered by Plaintiffs as a result of the breaches of those contracts.

108.    As a direct and proximate result of the actions of the Bass Homes, Ace Hardware, Ace Home Center, Inc., Pate, PSC, FFIC and Fictitious Defendants, which combined and concurred to form the basis of this suit, Plaintiffs have suffered damages as set forth in the above Statement of Facts.

## COUNT XIII
## DECEPTIVE TRADE PRACTICES

109.    The allegations of paragraphs 1 through 108 above are incorporated herein as if reproduced in full.

110.    Defendants' actions constitute violations of the Deceptive Trade Practices Act as defined in Title 75, Section 24 of the Mississippi Code (1972).

111.    Plaintiffs demand judgment be entered against Defendants in an amount equal to the funds improperly received by Defendants as the result of its deceptive acts, plus equitable relief.

## COUNT XIV
## RESPONDEAT SUPERIOR

112.    The allegations of paragraphs 1 through 111 above are incorporated herein as if reproduced in full.

113.    At all relevant times, agents and/or employees of Defendants who were involved with the construction and/or repairs of the House were in the course and scope of the duties of their corporate and respective employments.

114.    Defendants are vicariously liable for the acts and omissions of agents and/or employees who worked on the House.  Defendants knew, or in the exercise of reasonable caution should have known, their respective and corporate duties to Plaintiffs were non-delegable.

115.    With the filing of Answers and Defenses, Defendants are given the opportunity to address vicarious liability and provide a good faith basis for same under controlling Mississippi law and to provide any documents or contracts which support their position(s).

116.    Plaintiffs reserve the right to amend their Complaint after reviewing the pleadings and/or discovery of Defendants to include individual defendants, personnel, and/or corporate or business entities.

## COUNT XV
## CONSTRUCTIVE FRAUD

117.    The allegations of paragraphs 1 through 116 above are incorporated herein as if reproduced in full.

118.    Defendants respectively, corporately and through agents and/or employees breached individual and corporate non-delegable duties—fiduciary and otherwise—to Plaintiffs, thereby committing constructive fraud.

119.    As direct and proximate results of constructive fraud by Defendants, Plaintiffs sustained damages including but not limited to those stated herein.

## COUNT XVI
## PRIVATE NUISANCE

120.   The allegations of paragraphs 1 through 119 above are incorporated herein as if reproduced in full.

121.    Private nuisance is sometimes "used interchangeably" with a claim for interference with the use and quiet enjoyment of property.  *Leaf River Forest Products, Inc. v. Ferguson*, 662 So.2d 648, 662 (Miss. 1995).  "A private nuisance is defined as a non-trespassory invasion of another's interest in the use and enjoyment of his property."  *Young v. Weaver*, 32 So.2d 202, 205 (Miss. 1947).

122.    "A private nuisance may be shown by conduct causing an invasion of another's interest in the private use and enjoyment of land that is either:  (1) intentional and unreasonable . . . ."  Williams v. King, 860 So.2d 847, 851 (Miss. App. 2003).

123.   Plaintiffs allege the inability to use their home is a continuing problem which rises to a private nuisance.

## COUNT XVII
## COMPENSATORY DAMAGES

124.   The allegations of paragraphs 1 through 123 above are incorporated herein as if reproduced in full.

125.   But for the negligence and willful omissions of Defendants, Plaintiffs would have the home that they purchased.

126.    Defendants breached duties and directly and proximately caused unreasonable damages, including, but not limited to, those listed herein, entitling Plaintiffs to an award of compensatory damages.

## COUNT XVIII
## PUNITIVE DAMAGES

127.   The allegations of paragraphs 1 through 126 above are incorporated herein as if reproduced in full.

128.   Plaintiffs allege the limitations on damages as set forth in Mississippi Code (Annotated) of 1972 § 11-1-65—if they apply—are unconstitutional because they violate both the Mississippi Constitution and the Constitution of the United States, including, but not limited to, the Equal Protection and Due Process Clauses of these Constitutions.

129.   Plaintiffs allege the commissions and omissions by Defendants and their respective and/or corporate agents and/or employees were so willful, grossly negligent and wanton as to show a disregard for the rights of others and therefore give rise to an award of punitive damages under the law.

## COUNT XVIX
## DAMAGES

130.   The allegations of paragraphs 1 through 129 above are incorporated herein as if reproduced in full.

131.   As direct and proximate results of the respective and/or collective omissions and grossly improper and negligent commissions and omissions by Defendants and/or their respective and/or corporate agents and/or employees, Plaintiffs suffered actual and compensatory damages, including, but not limited to, the following.

    a)      Psychological and emotional trauma, distress, anxiety, and mental suffering;
    b)      Loss of enjoyment of life;
    c)      Loss of use of her House;
    d)      Diminution of value of the House
    e)      Attorneys' fees;
    f)      Legal interest; and
    g)      Other damages to be proven at trial.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Plaintiffs pray the Court to enter judgment against Defendants and in favor of Plaintiffs and to award the following relief:

a)      Judgment against Defendants for any and all losses incurred as direct and proximate results of the negligent conduct and other breaches of duty by Defendants, in an amount to be determined at trial;

b)      Compensatory damages, prejudgment and post-judgment interest, attorneys' fees and costs reasonably and necessarily incurred during the course of litigation, in an amount to be determined at trial;

c)      Judgment against Defendants for damages in an amount to make her and her House whole insofar as a pecuniary amount can accomplish that purpose, in an amount to be determined at trial;

d)      Punitive damages against Defendants for gross negligence and/or breach of contract;

e)      Such other relief as this Honorable Court deems just and proper.

RESPECTFULLY SUBMITTED this, the 2nd day of February, 2015.

BRAXTON & KERRIE COLLINS, Plaintiffs

By and Through Their Attorneys,
LUCKEY & MULLINS, PLLC


BY:    /s/ Stephen W. Mullins
         STEPHEN W. MULLINS

23

ATTORNEYS FOR PLAINTIFFS:

STEPHEN W. MULLINS  (MS Bar No. 9772)
LUCKEY & MULLINS, PLLC
2016 Bienville Blvd., Suite 102   (39564)
Post Office Box 990
Ocean Springs, MS  39566
Phone: 228.875.3175
Fax:     228.872.4719
smullins@luckeyandmullins.com


Of Counsel:

**Daniel K. Bryson** (*pro hac vice*)
**WHITFIELD BRYSON & MASON LLP**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035


## CERTIFICATE OF SERVICE

I, STEPHEN W. MULLINS, do hereby certify that I have on this date electronically filed the above and foregoing Second Amended Complaint with this Court using the ECF filing system which has caused notification of such filing to be sent to registered counsel of record.  A copy of said Second Amended Complaint will also be served on Pate, PSC and FFIC.

THIS, the 2nd day of February, 2015.


    /s/ Stephen W. Mullins
    STEPHEN W. MULLINS