# EXHIBIT D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |

THIS DOCUMENT RELATES TO:

*Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al.,* Case No. 09-6687 (E.D.La.);

*Gross, et al. v. Knauf Gips, KG, et al.,* Case No. 09-6690 (E.D.La.);

*Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.,* Case No 10-361 (E.D.La.);

*Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* Civ. Action No. 11-1672 (E.D.La.);

*Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* Civ. Action No. 11-1395 (E.D.La.);

*Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* Civ. Action No. 11-1673 (E.D.La.)

FINDINGS OF FACT AND CONCLUSIONS OF LAW
WITH RESPECT TO PLAINTIFFS' OMNIBUS MOTION FOR CLASS
CERTIFICATION PURSUANT TO RULES 23(a)(1)-(4)  and 23(b)(3)

1

## FINDINGS OF FACT

### I.    Introduction

1.      This matter involves the claims of thousands of class members who have suffered property damages arising from defective Chinese-manufactured drywall ("CDW" or "Chinese Drywall") manufactured, sold, distributed, supplied, marketed, inspected, imported or delivered by the Taishan Defendants and used in plaintiffs' properties.

2.      The plaintiffs are active litigants (either in the original action or in complaints in intervention) named in *Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al.*, Case No. 09-6687 (E.D.La.); *Gross, et al. v. Knauf Gips, KG, et al.*, Case No. 09-6690 (E.D.La.); *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*, Civ. Action No. 10-361 (E.D.La); *Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-080 (E.D.La); *Haya, et al. v. Taishan Gypsum Corp. Ltd., et al.*, Civ. Action No. 11-1077 (E.D.La.); *Almeroth, et al. v. Taishan Gypsum Co., Ltd., et al.*, Civ. Action. 12-0498 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1672 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1395 (E.D.La.); and/or *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1673 (E.D.La.).

3.      The "Taishan Defendants" are comprised of the following entities: Taishan Gypsum Co. Ltd. (hereafter "Taishan"); Beijing New Building Materials Limited Co. (hereafter "BNBM");

2

Beijing New Building Materials Group Co., Ltd. (hereafter "BNBM Group"); China National Building Materials Co., Ltd. (hereafter "CNBM"); China National Building Materials Group Corporation (hereafter "CNBM Group"); and Tai'an Taishan Plasterboard Co., Ltd. (hereafter "TTP").

4.      The "Taishan Affiliates" are comprised of the following entities: BNBM, BNBM Group, CNBM, CNBM Group, and TTP.

5.      From 2005 through 2008, the housing boom and rebuilding efforts necessitated by Hurricanes Katrina and Rita led to a shortage of construction materials in the United States, including drywall. As a result, drywall manufactured in China was brought into the United States and used in the construction and refurbishing of homes in coastal areas of the country, notably the East Coast and Gulf South. After the installation of the Chinese Drywall, property owners began to complain of emissions of smelly gasses, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819, 829-30 (E.D.La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014).

6.      On June 15, 2009, the Judicial Panel on Multidistrict Litigation transferred all federal civil actions alleging damages from Chinese Drywall to the United States District Court for the Eastern District of Louisiana for coordinated and consolidated pretrial proceedings in MDL 2047 pursuant to 28 U.S.C. § 1407. *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 626 F. Supp. 2d 1346 (J.P.M.L. 2009).

### A.      The Representative Plaintiffs

7.      Eduardo and Carmen Amorin are participants in *Wiltz*, *Gross*, *Abel*, and each of the

3

*Amorin* complaints. They own a property located at 240 West End Drive #721, Punta Gorda, FL 33950. It has been determined, following an inspection, that this property contains defective Taishan Chinese Drywall.

8.      Albert and Betsy Butzer are participants in *Haya* and each of the *Amorin* complaints. They own a property at 9519 26th Bay Street, Norfolk, VA 23518. It has been determined, following an inspection, that this property contains defective Taishan Chinese Drywall.

9.      Jack and Anna McGinn are participants in *Wiltz* and each of the *Amorin* complaints. They own a property located at 4301 Blackthorne Court, Virginia Beach, VA 23455. It has been determined, following an inspection, that this property contains defective Taishan Chinese Drywall.

10.     Thomas and Virginia Spencer are participants in *Wiltz, Almeroth*, and each of the *Amorin* complaints. They own a property located at 2481 Lakewood Manor Drive, Athens, GA 30606. It has been determined, following an inspection, that this property contains defective Taishan Chinese Drywall.

11.     Elliot and Angelina Everard are participants in *Gross, Abel*, and each of the *Amorin* complaints. They own a property located at 3000 N. Palm Drive, Slidell, LA 70458. It has been determined, following an inspection, that this property contains defective Taishan Chinese Drywall.

### B.   **Procedural History**

12.     The *Germano* Plaintiffs (Michelle Germano, Dennis and Sharon Jackson, Jason and Lisa Dunaway), on behalf of themselves and all other similarly situated owners, initiated a class action against Defendant Taishan on May 1, 2009, by filing a complaint in the Eastern District of

4

Virginia. Thereafter, on May 26, 2009, Plaintiffs filed their First Amended Complaint. On August 3, 2009, Plaintiffs received notice that service of process of the First Amended Complaint was perfected on Taishan. On October 13, 2009, Plaintiffs' case was then transferred to the Eastern District of Louisiana as part of MDL 2047. Subsequent to transfer, on October 30, 2009, Plaintiffs moved to amend the First Amended Compliant to assert a national class against Taishan. Plaintiffs' motion to amend was granted on November 18, 2009. *See* Rec.Doc.# 469.

### C.  Default Judgments Have Been Entered Against All the Taishan Defendants

13.  The *Germano* Plaintiffs obtained a default judgment against Taishan on November 20, 2009 (Rec.Doc. #487);[1] furthermore, seven intervenor Plaintiff families in *Germano* (Robert and Lisa Orlando, William and Deborah Morgan, Joseph and Vannessa Michaux, Preston and Rachel McKellar, Steven and Elizabeth Heischober, Jerry and Inez Baldwin, and Joseph and Cathy Leach), who are Virginia homeowners with Taishan Chinese Drywall in their properties, obtained a default judgment against Taishan on May 11, 2010 (Rec.Doc. #3013).

14.  The Taishan Affiliates have also been held in default with respect to the proceedings in *Wiltz*, *Gross*, and *Amorin*. On February 1, 2011, BNBM, BNBM Group, CNBM, and CNBM Group were held in default in the *Gross* proceedings. *See* Rec.Doc.# 7302. These same entities were again held in default in *Gross* on August 7, 2012 (*i.e.*, as to the omnibus intervention complaint that was filed in *Gross*). *See* Rec.Doc.# 15687. On February 24, 2011, BNBM was held in default in the *Wiltz* proceedings. *See* Rec.Doc.# 7735. On July 1, 2014, Taishan, TTP, and CNBM were held in default with respect to the *Amorin* case originally filed in this Court (Case No. 2:11-CV-1395). *See* Rec.Doc.# 17814. Pursuant to this same Order, Taishan and

---

[1] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 742 F.3d 576 (5th Cir. 2014).

TTP were held in default with respect to the *Amorin* complaint originally filed in the Southern District of Florida prior to its transfer to this Court (Case No. 2:11-CV-1672). *Id.* Also on July 1, 2014, Taishan, TTP, BNBM, CNBM, and CNBM Group were held in default with respect to the *Amorin* complaint originally filed in the Eastern District of Virginia prior to its transfer to this Court (Case No. 2:11-CV-1673). *See* Rec.Doc.# 17815. These default judgments are summarized in the chart below:

### CASES WHERE THE TAISHAN DEFENDANTS HAVE BEEN HELD IN DEFAULT

|  | Taishan | TTP | BNBM | BNBM Group | CNBM Group | CNBM |
|---|---|---|---|---|---|---|
| *Germano* | X |  |  |  |  |  |
| *Wiltz* |  |  | X |  |  |  |
| *Gross* |  |  | X | X | X | X |
| *Amorin* (Virginia) | X | X |  | X | X | X |
| *Amorin* (Louisiana) | X | X |  |  |  | X |
| *Amorin* (Florida) | X | X |  |  |  |  |

15.    The Court held an evidentiary hearing in the *Germano* proceedings on February 19 and 22, 2010, and issued Findings of Fact and Conclusions of Law on April 8, 2010. *See Germano* Findings of Fact and Conclusions of Law, (hereinafter "FOFCOL"), Rec.Doc. #2380.[2] In the FOFCOL, the Court made judicial findings regarding the scope of remediation and property

---

[2] This Court's FOFCOL are supported by the record presented during the evidentiary hearing on confirmation of the default against Taishan, including the Affidavit of Russ M. Herman In Support of the Plaintiffs' Steering Committee's Evidentiary Presentation Regarding Taishan Gypsum Co., Ltd. Dated February 19, 2010, the trial transcripts, the testimony and reports of Plaintiffs' expert witnesses, as well as the exhibits admitted into evidence. A complete list of all witnesses providing testimony during these proceedings (whether by live testimony or deposition transcript) and all exhibits admitted into evidence is set forth in this Court's minute entries dated February 22, 2010 and February 26, 2010. *See* Rec.Doc.#s 1258 and 1497.

damages sustained by the intervenor *Germano* Plaintiffs as a result of defective Taishan Chinese Drywall. The Court entered a final default judgment with awards to the seven Plaintiff Intervenors on May 10, 2010. *See* Rec.Doc. #3013.

16.     Following the *Germano* bellwether trial, counsel for Taishan entered a limited appearance, filed a notice of appeal, and contested the Court's exercise of personal jurisdiction of the Defendant. The parties agreed to stay the appeal for purposes of conducting jurisdictional discovery. At the conclusion of the jurisdictional discovery, the parties briefed the issue of whether or not this Court could exercise personal jurisdiction over Taishan.

17.     On September 4, 2012, this Court issued its Order and Reasons denying (1) Taishan's Renewed Motion to Vacate the Default Judgment and Dismiss the Complaint in *Germano v. Taishan Gypsum, Co., Ltd.*, Case No. 09-6687 [Rec.Doc.# 13490]; (2) Taishan's Renewed Motion Pursuant to Rules 55(c) and 12(b)(2) to Vacate the Entry of Default and Dismiss this Action in *The Mitchell Co., Inc., v. Knauf Gips, KG*, Case No. 09-4115 [Rec.Doc.# 13566]; (3) Taishan and TTP's Motion Pursuant to Rule 12(b)(2) to Dismiss the Complaint in *Gross v. Knauf Gips KG*, Case No. 09-6690 [Rec.Doc.# 13590]; and (4) Taishan and TTP's Motion Pursuant to Rule 12(b)(2) to Dismiss the Complaint in *Wiltz v. Beijing New Building Materials Public Ltd., Co.*, Case No. 10-361 [Rec.Doc.# 13591]. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819 (E.D. La. 2012) (hereafter the "Jurisdictional Rulings").[3]

---

[3] This Court's Jurisdictional Rulings are supported by the evidentiary record created by the parties and at oral argument. The evidentiary record submitted by the parties includes:

- The exhibits to Taishan's Renewed Motion to Vacate the Default Judgment and Dismiss the Complaint, *see* Rec.Doc.#s 13490-2 to 13490-29;
- The exhibits to Taishan's renewed motion pursuant to rules 55(c) and 12(b)(2) to vacate the entry of default and dismiss this action, *see* Rec.Doc.#s 13566-2 to 13566-15;

On January 28, 2014, the Fifth Circuit affirmed this Court's jurisdictional ruling in the *Germano*

action. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 742 F.3d 576 (5th Cir.

2014). More recently, the Fifth Circuit affirmed the Court's September 4, 2012 Order as it

- The exhibits to Defendants Taishan Gypsum Co. Ltd. and Tai'an Taishan Plasterboard Co., Ltd.'s motion pursuant to Rule 12(b)(2) to Dismiss the Complaint, *see* Rec.Doc.#s 13590-2 to 13590-31;
- The exhibits to Defendants Taishan Gypsum Co. Ltd. and Tai'an Taishan Plasterboard Co., Ltd.'s motion pursuant to Rule 12(b)(2) to Dismiss the Complaint, *see* Rec.Doc.#s 13591-2 to 13591-31;
- The exhibits appended to the PSC's Response in Opposition to Taishan Gypsum Co., Ltd.'s Renewed Motion to Vacate the Default Judgment and Dismiss the Complaint, *see* Rec.Doc.#s 14202-1 and 14202-2;
- Plaintiffs' Expert Declarations of Professor Liu Junhai, Bing Cheng and Professor James V. Feinerman in Support of the PSC's Response in Opposition to: (1) Taishan's Renewed Motions to Vacate the Default Judgments and Dismiss the Complaints in *Germano* and *Mitchell* and (2) Taishan's Motions to Dismiss the Complaints in *Gross* and *Wiltz*, *see* Rec.Doc.# 14203;
- The exhibits to the PSC's Response in Opposition to Taishan's Motions Pursuant to Rule 12(b)(2) to Dismiss Complaints, *see* Rec.Doc.#s 14204-1 to 14204-3;
- The PSC's Global Statement of Facts and exhibits thereto, *see* Rec.Doc.# 14215;
- The exhibits to Interior Exterior's Memorandum in Support of the PSC's Response in Opposition to Taishan's Motions Pursuant to Rule 12(B)(2) to Dismiss and to Provide Additional Support in Response Thereto, *see* Rec.Doc.#s 14356-1 and 14356-2;
- The exhibits to RESPONSE/MEMORANDUM in Opposition filed by Mitchell Company Inc. re MOTION to Vacate the Default Judgment and Dismiss the Complaint, *see* Rec.Doc.#s 14372-1 to 14372-10;
- The exhibit to Certain Florida Homebuilders' Amicus Curiae Response to Taishan Gypsum Co. Ltd.'s Renewed Motion Pursuant to Rules 55(c) and 12(b)(2) to Vacate the Entry of Default and Dismiss this Action, *see* Rec.Doc.#s 14390-1 to 14390-26;
- The exhibits to the Memorandum of Taishan Gypsum Co. Ltd. in Reply to Plaintiffs' Opposition to the Renewed Motion to Vacation the Default Judgment and Dismiss the Complaint, *see* Rec.Doc.#s 14572-1 to 14572-12;
- The exhibits to the Memorandum of Taishan Gypsum Co. Ltd. in Reply to Plaintiffs' Opposition to the Renewed Motion to Vacation the Default Judgment and Dismiss this Action, *see* Rec.Doc.#s 14573-1 to 14573-12;
- The exhibits to the Memorandum of Defendants Taishan Gypsum Co. Ltd. and Tai'an Taishan Plasterboard Co., Ltd. in Reply to Opposition to Their Motion Pursuant to Rule 12(b)(2) to Dismiss the Complaint, *see* Rec.Doc.#s 14575-1 to 14575-11; and
- The exhibits to the Memorandum of Defendants Taishan Gypsum Co. Ltd. and Tai'an Taishan Plasterboard Co., Ltd. in Reply to Opposition to Their Motion Pursuant to Rule 12(b)(2) to Dismiss the Complaint. *See* Rec.Doc.#s 14574-1 to 14574-11.

related to the *Gross*, *Wiltz* and *Mitchell* actions. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521 (5th Cir. 2014). The Fifth Circuit's Orders affirming this Court's Jurisdictional Rulings are now final, as no petitions for a writ of certiorari to the United States Supreme Court were filed. Pursuant to these rulings, jurisdiction over Taishan and TTP has been conclusively established.

> **D.   Taishan's and TTP's Contacts with the United States**

18.      Taishan and its wholly-owned subsidiary TTP have a number of contacts with the United States. From 2005 to 2009, Taishan, TTP, and/or their affiliated companies manufactured and sold approximately 1,825,202 sheets of Chinese Drywall that were shipped to and used in the United States. *See Jurisdictional Rulings*, 894 F.Supp.2d at 849-50. Taishan holds itself out as a Chinese manufacturer of new building materials, particularly drywall, that exports its products world-wide, including the United States. *See Jurisdictional Rulings*, 894 F.Supp.2d at 850. During the relevant period, Taishan's marketing and informational brochure included an illustration of its world-wide marketing web, which depicted an arrow pointing from China to the United States. *See Jurisdictional Rulings*, 894 F.Supp.2d at 850. Taishan's website, like its brochure, states that Taishan is one of the largest drywall manufacturers in the world and that it exports its product world-wide, including to the United States. *See Jurisdictional Rulings*, 894 F.Supp.2d at 850. Taishan also advertises and sells its drywall on Alibaba.com, which allows customers to purchase its drywall worldwide, including in the United States. *See Jurisdictional Rulings*, 894 F.Supp.2d at 850. The employees of Taishan and TTP use Americanized names, and speak English, and TTP's employees were employed by Taishan specifically to solicit business and service the United States market. *See Jurisdictional Rulings*,

9

894 F.Supp.2d at 850. Taishan and TTP manufactured drywall specifically for U.S. customers by: representing their drywall satisfied American Society for Testing and Materials ("ASTM") standards; measuring the drywall in U.S. measurements; placing on the drywall, labels written in English and information and colors as requested by U.S. customers; and employing packing and shipment of the drywall for the United States. *See Jurisdictional Rulings*, 894 F.Supp.2d at 850-51.

19. Taishan and TTP shipped large quantities of drywall to the states of Virginia, Florida, and Louisiana. For instance, Taishan directed shipments of drywall to Venture Supply in Virginia totaling 159,000 sheets. *See Jurisdictional Rulings*, 894 F.Supp.2d at 853. From 2006 to 2007, Taishan and/or TTP sold almost 200,000 sheets of its drywall, through several transactions, to Florida customers or customers doing business in Florida. *See Jurisdictional Rulings*, 894 F.Supp.2d at 875. During 2006 and 2007, Taishan and/or TTP sold at least 45,756 sheets of drywall, through a number of transactions, which ended up in Louisiana. *See Jurisdictional Rulings*, 894 F.Supp.2d at 898.

20. In addition to drywall, Taishan also imported and/or sought to import metal studs, framing, tracking, toilets, and sinks to the United States. *See Jurisdictional Rulings*, 894 F.Supp.2d at 877. Taishan has also delivered shipments of drywall to California, New York, and North Carolina. *See* Exhibit "1" to Affidavit of Russ M. Herman in Support of the Plaintiffs' Steering Committee's Global Statement of Facts and Memorandum of Law in Opposition to: (1) Taishan's Renewed Motions to Vacate the Default Judgments and Dismiss the Complaints in Germano and Mitchell and (2) Taishan's Motions to Dismiss the Complaints in Gross and Wiltz, Rec.Doc.#14843-3.

**II.**      **Judicial Findings Regarding the Defective Nature of Chinese-Manufactured Drywall and the Need for and Scope of Remediation**

21.      It has been established by the Consumer Product Safety Commission ("CPSC") and in these proceedings that Chinese Drywall releases reduced sulfur gases. FOFCOL at 12. The three main gases that are released from Chinese manufactured drywall are hydrogen sulfide (H2S), carbonyl sulfide (COS), and carbon disulfide (CS2). FOFCOL at 12. The CPSC and Plaintiffs' experts have detected reduced sulfur gas emissions by conducting laboratory tests on samples of Chinese drywall. FOFCOL at 12. These emissions are often associated with strong odors. FOFCOL at 12. The fact that Chinese Drywall emits sulfur gases has been reported by the CPSC, the Florida Department of Health, and other investigatory agencies and firms. FOFCOL at 12-13.

22.      The sulfur gases released by Chinese Drywall causes offending odors in homes, making them hard if not impossible to live in, and are corrosive to metals, particularly copper and silver. FOFCOL at 13.

23.      As a result of this Court having held the evidentiary hearing to determine the scope of remediation, cost of remediation and other property damages caused by Taishan Chinese Drywall to the seven Plaintiff – Intervenors, (February 19, 2010, February 22, 2010), the Court's April 8, 2010 FOFCOL resolved a multitude of factual and legal issues for the seven Plaintiff Intervenors' claims against Taishan (such as scope and cost of remediation and the right to recover remediation damages). To properly remediate plaintiffs' homes, it is established that homeowners will be out of their homes for 4-6 months during remediation, and that families thus are entitled to alternate living expenses during the remediation process. FOFCOL at 56-57. Moreover, the average cost of repairing class members' homes is subject to calculation on a

11

formulaic, square footage basis. Indeed, this Court made similar findings in the later *Hernandez* trial. *See* April 27, 2010 Findings of Fact and Conclusions of Law, Rec.Doc.# 2713. The same approach to the determination of damages for repair and remediation is applicable to the class representatives and class members subject to appropriate cost adjustments.

### III.   Alter Ego and/or Piercing the Corporate Veil

24.   The State-owned Assets Supervision and Administration Commission of the State Counsel (hereafter "SASAC") of the People's Republic of China controls the "plasterboard" manufacturing, exportation and certification industry. FOFCOL at 10.

25.   The SASAC supervises and manages the State-owned assets of the enterprises engaged in drywall production, including Taishan and its affiliate companies. FOFCOL at 10. The degree of control SASAC (Government of China) exerts and influences over the Taishan Defendants is extensive. FOFCOL at 10. For example, SASAC assumes the responsibility as the investor on behalf of the state; it supervises and manages the state-owned assets and enterprises; controls the value preservation and increment of the state-owned assets; guides and pushes forward the reform and restructuring of state-owned enterprises (hereafter "SOEs"); appoints and removes top executives of SOEs; is responsible for organizing SOEs to turn gains over to the state; is responsible for urging SOEs to carry out laws and regulations for safety production; directs and supervises the management work of local state-owned assets; and undertakes other tasks assigned by the State Council. FOFCOL at 10-11.

26.   Furthermore, SASAC oversees and controls 150 large central SOEs, including CNBM Group. FOFCOL at 11. SASAC owns 100% of the CNBM Group. FOFCOL at 11. CNBM Group, in turn, owns 56.4% of the CNBM and 75% of BNBM. CNBM owns 52.40% of BNBM.

FOFCOL at 11.   On March 19, 2005, BNBM became the largest shareholder of Taihe Dongxin (Taishan) by purchasing sixty-five percent (65%) of the equity of Taishan Dongxin.  FOFCOL at 10.

27.   This Court's Order of September 4, 2012 found that Taishan and TTP are one and the same entity under an alter-ego and/or agency theory.  *See Jurisdictional Rulings*, 894 F. Supp. 2d at 869-72.  For instance, in concluding that TTP's jurisdictional contacts with the state of Florida could to be attributed to Taishan under an alter-ego or agency theory, this Court made several important findings regarding the relationship between the companies, including, but not limited to, the facts that: Taishan controlled 100% of TTP's shares; that several high-ranking Taishan employees were appointed to the board of directors of TTP; that several former Taishan employees became employees of TTP, were paid by Taishan during the time they worked for TTP, and then returned to Taishan after TTP ceased production; that TTP was authorized to use Taishan's brand, but did not pay for this authorization; that TTP sold Taishan brand drywall; and that when dealing with customers Taishan and TTP regularly held themselves out as operating as a single business enterprise.  *See Jurisdictional Rulings*, 894 F. Supp. 2d at 869-72.   After applying Florida law to these facts this Court concluded that TTP's jurisdictional contacts should be imputed to Taishan.  *See Jurisdictional Rulings*, 894 F. Supp. 2d at 869-72.   The Court reached the same conclusion for purposes of applying TTP's jurisdictional contacts to Taishan for purposes of asserting personal jurisdiction over these companies under Louisiana law.  *See Jurisdictional Rulings*, 894 F. Supp. 2d at 895.[4]

---

[4] With the exception of TTP none of the other Taishan Affiliates entered an appearance or otherwise participated in these proceedings.  While the discovery involving TTP established that Plaintiffs properly pierced the corporate veil as to TTP, the Plaintiffs were unable to proceed

13

28.     CNBM, CNBM Group, BNBM, and BNBM Group are affiliates of Taishan. *See* Request for Admissions at ¶¶ 7 and 8.[5]

29.     At all relevant times, BNBM and CNBM had and still have control over Taishan and all of its subsidiaries. *See* Request for Admissions at ¶ 85 and ¶87.

30.     BNBM owned sufficient stock and/or equity ownership in Taishan to give it actual working control over Taishan. *See* Request for Admissions at ¶ 19. At all relevant times, BNBM was Taishan's dominant stockholder. *See* Request for Admissions at ¶ 33. At all relevant times, BNBM exerted sufficient control over Taishan as its dominant stockholder. *See* Request for Admissions at ¶ 34.

31.     Taishan and TPP shared common officers, directors, board members, and/or chairmen with BNBM and BNBM Group. *See* Request for Admissions at ¶ 20. BNBM and BNBM Group had common employees with Taishan and TPP. *See* Request for Admissions at ¶ 21. BNBM and BNBM Group had common personnel and management with Taishan. *See* Request for Admissions at ¶ 52. The control of Taishan, BNBM and BNBM Group was unified into a single body of oversight and control. *See* Request for Admissions at ¶ 23. At all relevant times, the directors and officers of Taishan who were also the directors and officers of BNBM and BNBM Group acted in concert in the interest of BNBM and BNBM Group. *See* Request for Admissions at ¶ 24.

---

with any discovery involving the other Taishan Affiliates in light of their default status.
[5]In addition to the above findings, the PSC served Taishan and TPP with a Request for Admissions on July 21, 2014. *See* Exhibit "A" (hereinafter "Request for Admissions") to Notice of Filing (Admission of Fact by Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. to Request for Admissions Dated July 21, 2014), Rec.Doc.# 17993. Since neither Taishan nor TPP timely responded to the PSC's Request for Admissions within 30 days after being served, the Request for Admissions are deemed admitted in accordance with Fed.R.Civ.P. 36(a)(3).

32.     Taishan and TPP shared common officers, directors, board members, and/or chairmen with CNBM and CNBM Group. *See* Request for Admissions at ¶ 49. CNBM and CNBM Group had common employees with Taishan and TPP. *See* Request for Admissions at ¶ 50. CNBM and CNBM Group had common personnel and management with Taishan. *See* Request for Admissions at ¶ 51. The administrative control of Taishan, CNBM and CNBM Group was unified into a single body of oversight and control. *See* Request for Admissions at ¶ 54. At all relevant times, the directors and officers of Taishan who were also the directors and officers of CNBM and CNBM Group acted in concert in the interest of CNBM and CNBM Group. *See* Request for Admissions at ¶ 55.

33.     At all relevant times, Taishan was undercapitalized, inadequately capitalized, and thinly incorporated such that it was insufficiently funded, or had insufficient capital to support its operations. *See* Request for Admissions at ¶ 26.

34.     At all relevant times, Taishan never complied with requisite corporate formalities including, but not limited to, issuance of stock, annual shareholder meetings, formal board meetings, and corporate authorization for major transactions. *See* Request for Admissions at ¶ 46.

35.     At all relevant times, BNBM, BNBM Group, CNBM, and CNBM Group directly and/or indirectly, financed all or substantially all of Taishan's operations. *See* Request for Admissions at ¶¶ 27-28. At all relevant times, BNBM, BNBM Group, CNBM, and CNBM Group paid all or substantially all of Taishan's expenses. *See* Request for Admissions at ¶¶ 29-30.

36.     At all relevant times, the salaries and other expenses or losses of Taishan were paid by or paid directly with funds originating from BNBM, BNBM Group, CNBM, and/or CNBM Group

15

or any of their parents, subsidiaries, or sister entities. *See* Request for Admissions at ¶ 41 and ¶ 60.

37.    At all relevant times, the same person(s) directly controlled the finances of Taishan BNBM, BNBM Group, CNBM, and/or CNBM Group, including but not limited to: loan agreements between Taishan and BNBM, BNBM Group, CNBM, and/or CNBM Group (formal or informal, written or verbal); wire transfers of funds to Taishan from BNBM, BNBM Group, CNBM, and/or CNBM Group; wire transfers of funds to Taishan from BNBM, BNBM Group, CNBM, and/or CNBM Group; and a joint banking and/or checking account for Taishan, BNBM, BNBM Group, CNBM, and/or CNBM Group. *See* Request for Admissions at ¶ 25 and ¶ 56.

38.    At all relevant times, Taishan, BNBM, BNBM Group, CNBM, and/or CNBM Group had centralized accounting. *See* Request for Admissions at ¶ 43 and ¶ 62.

39.    At all relevant times, BNBM , BNBM Group, CNBM, and CNBM Group siphoned funds from Taishan. *See* Request for Admissions at ¶¶ 31-¶ 32.

40.    At all relevant times, there were multiple undocumented transfers of funds between Taishan and BNBM, BNBM Group, CNBM, and/or CNBM Group —both from Taishan to BNBM, BNBM Group, CNBM, and/or CNBM Group and from BNBM, BNBM Group, CNBM, and/or CNBM Group to Taishan. *See* Request for Admissions at ¶ 44 and ¶ 63.

41.    At all relevant times, BNBM, BNBM Group, CNBM, and/or CNBM Group had the authority to withdraw money from Taishan's operating account, and actually did so on several occasions without notice to or permission by Taishan. *See* Request for Admissions at ¶ 45 and ¶ 64.

42.    At all relevant times, Taishan, BNBM, BNBM Group, CNBM, and CNBM Group used

16

the same office spaces and shared resources including, but not limited to: facsimile machines; telephones; internet servers; email accounts; secretarial staff; and office supplies. *See* Request for Admissions at ¶¶ 39 and 59.

43.     At all relevant times, employees of Taishan rendered services on behalf of BNBM, BNBM Group, CNBM, and/or CNBM Group and vice versa—employees of BNBM, BNBM Group, CNBM, and/or CNBM Group rendered services on behalf of Taishan in fulfilling its contractual or business obligations. *See* Request for Admissions at ¶ 42 and ¶ 61.

44.     The allocation of profits and losses as between BNBM, BNBM Group, CNBM, and/or CNBM Group and Taishan is unclear and virtually non-existent. *See* Request for Admissions at ¶ 47and ¶ 66.

45.     BNBM and Taishan's development and production capacities were reported as one in CNBM's May 2010 Overseas Regulatory Announcement. *See* Request for Admissions at ¶ 101. BNBM and Taishan's development and production capacities were reported as one unified report in the 2009 BNBM Annual Report. *See* Request for Admissions at ¶ 102. BNBM and Taishan's development and production capacities were reported as one unified report in the Summary of BNBM 2008 Annual Report. *See* Request for Admissions at ¶ 103. At all relevant times, BNBM and Taishan's development and production capacities were reported as one unified report in the 2006 BNBM Annual Report. *See* Request for Admissions at ¶ 104.

46.     The Corporate Restructuring of CNBM and CNBM Group, wherein BNBM purchased Taishan stock, was not an arms-length transaction, was for inadequate consideration, and was for the purpose of defrauding Taishan's creditors. *See* Request for Admissions at ¶ 77, ¶ 79, and ¶ 80.

47.     At all relevant times, Taishan and/or TTP were express and/or implied mandataries (*i.e.*

agents) of BNBM, BNBM Group, CNBM, and/or CNBM Group, in that BNBM, BNBM Group,

CNBM, and/or CNBM Group had and still has the right to control the conduct and/or actions of

Taishan and TTP, and Taishan and/or TTP have authority to bind BNBM, BNBM Group,

CNBM, and/or CNBM Group. *See* Request for Admissions at ¶¶ 82-83.

## CONCLUSIONS OF LAW

I.      **The Taishan Affiliates are Liable to the Class as Affiliates of Taishan or Under the Theory of Alter Ego/Piercing the Corporate Veil**

48.     "[T]he dictionary definition of the term affiliate in Black's Law Dictionary (7th ed.1999)

is a corporation that is related to another corporation by shareholdings or other means of control;

a subsidiary, parent, or sibling corporation ...". *Hopkins v. Howard*, 930 So. 2d 999, 1007 (La.

App. 4 Cir. 2006), *writ denied*, 930 So. 2d 984 (La. 2006). In *Southern Capital Enterprises, Inc.*

*& F. David Tutt v. Conseco Services, L.L.C., et al.*, 476 F.Supp.2d 589 (M.D.La. 2007), the

court equated the term affiliate to the single business enterprise theory of piercing the corporate

veil. *Id.* at 595. Under the single business enterprise theory, a court "may disregard the concept

of corporate separateness and extend liability to each of the affiliated corporations to prevent

fraud or to achieve equity." *Id.* (quoting *Brown v. Auto. Casualty Ins. Co.*, 644 So.2d 723, 727

(La.Ct.App.1995)).

49.     In *Green v. Champion Ins. Co.*, 577 So.2d 249 (La.Ct.App. 1st Cir.1991), *writ denied*,

580 So.2d 668 (La. 1991), the court set forth a non-exclusive eighteen-factor test to determine

whether a group of affiliated entities constituted a single business enterprise. Those factors as set

forth by the court are as follows:

　　1. Corporations with identity or substantial identity of ownership, that is, ownership of

18

sufficient stock to give actual working control;

2. Common directors or officers;

3. Unified administrative control of corporations whose business functions are similar or supplementary;

4. Directors and officers of one corporation act independently in the interest of that corporation;

5. Corporation financing another corporation;

6. Inadequate capitalization ("thin corporation");

7. Corporation causing the incorporation of another affiliated corporation;

8. Corporation paying the salaries and other expenses or losses of another corporation;

9. Receiving no business other than that given to it by its affiliated corporations;

10. Corporation using the property of another corporation as its own;

11. Noncompliance with corporate formalities;

12. Common employees;

13. Services rendered by the employees of one corporation on behalf of another corporation;

14. Common offices;

15. Centralized accounting;

16. Undocumented transfers of funds between corporations;

17. Unclear allocation of profits and losses between corporations; and

18. Excessive fragmentation of a single enterprise into separate corporations.

*Green*, 577 So.2d at 257–58.  These factors do not constitute an exhaustive list.  *Id.* at 258.

Moreover, no one factor is dispositive on the issue of whether a single business enterprise exists.

*Id.*  Establishing these facts is common to every class member, thus making class certification

appropriate.

50.     Based upon the Court's above findings of fact, the Court concludes that Taishan, TTP,

BNBM, BNBM Group, CNBM, and CNBM Group constitute a single business enterprise for

purposes of piercing the corporate veil and holding each of these entities liable for the conduct of

their affiliated entities. *See supra* at ¶¶ 21-47. More specifically, the Court concludes that Class

Counsel has satisfied factors 1-8 and 10-18 of the *Green* eighteen-factor test. In light of these

conclusions as well as this Court's prior conclusions involving the relationship between the

Taishan Affiliates, the Court concludes that the Taishan Affiliates may be held liable for the

conduct of their affiliated entities.

51.     Although the above analysis involves the application of Louisiana law, the Court

concludes that Taishan, TPP, BNBM, BNBM Group, CNBM, and CNBM Group may be held

liable for the conduct of their affiliated entities under the laws of Virginia, Florida, Mississippi,

and Alabama law. Under Virginia law, a court may pierce the corporate veil to find that an

individual (or corporation) is the alter-ego of another corporation where it finds "(i) a unity of

interest and ownership between the two entities; and (ii) that one entity used the other "to evade

a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair

advantage." *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 306 F.3d 126, 132 (4th Cir. 2002). Thus,

for a court to disregard the corporate veil, the plaintiff must show that a subsidiary is organized

and operated as a mere instrumentality or conduit of the stockholders, and it must further appear

that recognition of the separate corporate entities would aid an unjust loss or injury. *Marsh*

*Broadcasting of Washington, D.C., Inc. v. George Mason Univ. Found.*, 21 Va. Cir. 89, 91

(Fairfax County Cir. Ct. 1990) (citing *Beale v. Kappa Alpha Order*, 192 Va. 382, 386, 64 S.E.2d

20

789 (1951)).  To "pierce the corporate veil" under Florida law, three factors must be proven: (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant.  *See Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 4th DCA 2008).  Under Mississippi law, courts will disregard corporate identity if it is shown that one corporation is a "mere instrumentality or agency or adjunct in that sense, or as a sham or is used in fraud, by the dominant corporation."  Buchanan v. Ameristar Casino Vicksburg, Inc., 957 So.2d 969, 978 (Miss. 2007) (quoting Johnson & Higgins of Miss., Inc. v. Comm'r of Ins., 321 So.2d 281, 285 (Miss.1975)).  To pierce the corporate veil, under Alabama law, a plaintiff must show fraud in asserting the corporate existence or must show that recognition of the corporate existence will result in injustice or inequitable consequences. *See* Econ Marketing, Inc. v. Leisure American Resorts, Inc., 664 So.2d 869, 870 (Ala. 1994).  The corporate veil may be pierced where a corporation is set up as a subterfuge, where shareholders do not observe the corporate form, where the legal requirements of corporate law are not complied with, where the corporation maintains no corporate records, where the corporation maintains no corporate bank account, where the corporation has no employees, where corporate and personal funds are intermingled and corporate funds are used for personal purposes, or where an individual drains funds from the corporation. *Id.*

II.   **Plaintiffs are Entitled to Class Certification**

As a threshold matter, the Court's analysis of the instant motion for class certification is

21

greatly simplified by the status of the Taishan Defendants as default judgment defendants. Because of the default judgments, liability is conclusively established, and the Court need only determine whether it is appropriate to certify a class under Rule 23 to determine class-wide damages pursuant to Rule 55(b)(2)(B). For the reasons discussed in detail below, the Court concludes that class certification is appropriate.

### A.   Standard of Review

52.   Courts that have addressed default judgments in the class certification context have ruled that the admissions of fact in the complaint are not sufficient for class certification. Following the "rigorous analysis" standard set forth in *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982), these courts have reasoned that the legal conclusions of Rule 23 are not waived or admitted by the default. *See, e.g., Davis v. Hutchins*, 321 F.3d 641, 648-49 (7th Cir. 2003) (where the court vacated the district court's findings of class damages because class certification had not been determined). The court in *Davis*, held:

> There is the general principle that factual allegations in the complaint are deemed admitted by the defendant upon default; however, application of that general principle does not solve the class-certification issue. Rule 23(c) imposes an independent duty on the district court to determine by order that the requirements of Rule 23(a) are met regardless of the defendant's admissions.

*Davis*, 321 F.3d at 648-49. *See also Partington v. American Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006) (notwithstanding the entry of default judgment, courts must formally address whether class certification is appropriate under a rigorous Rule 23 analysis). Thus, the Court will engage in rigouours analysis of Rule 23's prepreqisites.

53.   The proponents of the class bear the burden of demonstrating that the case is appropriate for class treatment. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 n.4 (5th Cir. 2001).

Class certification is soundly within the district court's discretion, and this decision is essentially a factual inquiry. *Vizena v. Union Pac. R.R. Co.*, 360 F.3d 496, 502-03 (5th Cir. 2004). In some cases it is necessary for a district court to go beyond the pleadings to understand the claims, defenses, substantive law, and relevant facts in order to make a meaningful certification decision. *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2556 (U.S. 2011). However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (U.S. 2013). Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied. *Id.*

### B. Plaintiffs have Established the Requirements of Rule 23(a)

#### 1. Numerosity – Rule 23(a)(1)

54. To demonstrate numerosity, Plaintiffs must establish that joinder is impracticable through "some evidence or reasonable estimate of the number of proposed class members." *Pederson v. La. State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000). "Although the number of members of any proposed class is not determinative of whether joinder is impracticable," the Fifth Circuit has generally set the threshold of 100 to 150 people as satisfying the numerosity requirement. *Mullen v. Treasure Chest Casino LLC*, 186 F.3d 620, 624 (5th Cir. 1999).

55. Since the class is comprised of active litigants, Plaintiffs have proven that the class consists of approximately 4,150 members.[6] Joinder of 4,150 class members is impracticable and

---

[6] *See Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al.*, Case No. 09-6687 (E.D.La.); *Gross, et al. v. Knauf Gips, KG, et al.*, Case No. 09-6690 (E.D.La.); *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*, Civ. Action No. 10-361 (E.D.La.); *Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-080 (E.D.La) (service of this complaint on the Taishan

would lead to a squandering of judicial economy and resources of the parties. The presently available evidence of such a large class demonstrates that the proposed class clearly meets the numerosity requirement. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2012 WL 92498, *9 (E.D. La. Jan. 10, 2012) (finding numerosity requirement satisfied where, "[there were a] large number of potential claimants who may benefit from the Settlement Agreement.").

### 2.   Commonality – Rule 23(a)(2)

56.   The threshold for establishing commonality is not high since "for purposes of Rule 23(a)(2) even a single common question will do." *Dukes*, 131 S.Ct. at 2556. As per *Dukes*, to satisfy Rule 23's commonality requirement, class claims "must depend upon a common contention...of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." 131 S.Ct. at 2551. The Supreme Court explained that the key consideration in assessing commonality is not whether the class raises common claims, but whether a class action can "generate common answers apt to drive the resolution of the litigation." *Id.* "To satisfy the commonality requirement under Rule 23(a)(2), class members must raise at least one contention that is central to the validity of each class member's claims." *In re Deepwater Horizon*, 739 F.3d 790, 810 (5th Cir. 2014).

57.   Here, determining class-wide property damages for the class will affect all class members

---

Defendants is ongoing); *Haya, et al. v. Taishan Gypsum Corp. Ltd., et al.*, Civ. Action No. 11-1077 (E.D.La.) (service of this complaint on the Taishan Defendants is ongoing); *Almeroth, et al. v. Taishan Gypsum Co., Ltd., et al.*, Civ. Action. 12-0498 (E.D.La.) (service of this complaint on the Taishan Defendants is ongoing); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1672 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1395 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1673 (E.D.La.).

in a similar manner. The factual determination of class-wide property damages is common to the

class members, and resolution of this common question will generate common answers apt to

drive the resolution of the litigation. *See Chinese Drywall*, 2012 WL 92498 at *10 ("because the

Judicial Panel on Multidistrict Litigation ordered the subject cases to be consolidated in the MDL

based upon commonality of facts, and the factual and legal issues arising from KPT Chinese

drywall are common to all claimants."); *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 605 (E.D.

La. 2006) (finding commonality where a few common, central issues affected all or most of the class

members).

a.     Collateral Estoppel Effect of <em>Germano</em> Findings of Fact and<br>Conclusions of Law and Res Judicata Effect of the Court's<br>Jurisdictional Rulings

58.      Under the doctrine of collateral estoppel, the Court may also rely on the extensive

findings already made by the Court in the *Germano* default judgment proceedings. (Rec.Doc.#

2380). The Supreme Court has approved the use of offensive, non-mutual collateral estoppel

under certain circumstances.

> Generally stated, The doctrine of collateral estoppel ... bars a
> party from relitigating in a second proceeding an issue of fact or
> law that was litigated and actually decided in a prior proceeding, if
> that party had a full and fair opportunity to litigate the issue in the
> prior proceeding and the decision of the issue was necessary to
> support a valid and final judgment on the merits.

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330-31 (1979); *see also U.S. v. Davenport*, 484 F.

3d 321, 326 (5th Cir. 2007). The *Parklane* court noted that certain circumstances might exist in

a case to justify a court's refusal to apply collateral estoppels, including where: (a) a defendant

has little incentive to defend vigorously, (b) the second action affords the defendant procedural

opportunities not available in the first action that could cause a different result, and (c) "if the

judgment relied upon as a basis for the estoppels is itself inconsistent with one or more previous

judgments in favor of the defendant. *Parklane*, 439 U.S. at 330-31; *In re Plunk*, 481 F. 3d 302,

308 (5th Cir. 2007).

59.    Under the *Parklane* standards, it is appropriate to give the Findings of Fact and Conclusions of Law a preclusive effect in this class proceeding. The defendant has had a full opportunity to litigate, but chose not to respond to process.[7] FOFCOL at 5. It is also clear that the Court's findings on the scope and cost of remediation and property damages were "necessary to support a valid and final judgment on the merits." *Parklane*, 439 U.S. at 330-31. Furthermore, none of the *Parklane* factors which would justify a court's refusal to apply collateral estoppel is present on the *Germano* record. Therefore under *Parklane* and *Plunk*, the Court holds that the Findings of Fact and Conclusions of Law (Rec.Doc. #2380) are entitled to be given preclusive effect in this class proceeding.

60.    With respect to the Court's Jurisdictional Rulings, Taishan vigorously opposed personal jurisdiction at both the district court level and at the Fifth Circuit Court of Appeals. Taishan lost at both levels. Therefore, the Court's Jurisdictional Rulings are entitled to res judicata effect. "Res judicata means a thing decided; the doctrine states that a final judgment on the merits rendered by a court of competent jurisdiction is conclusive as to the parties and their privies; therefore, attempts to litigate the matter further are barred." *German v. Corr. Corp. of Am.*, 2006 WL 2583732, * 1 (N.D. Miss. Sept. 6, 2006) (internal quotes omitted), *citing Cromwell v. County of Sac.*, 94 U.S. 351, 352 (1876); *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 535 (5th Cir. 1978).

---

[7] It is noteworthy that intervenor Knauf, prior to withdrawing from the *Germano* proceedings, vigorously contested Plaintiffs' evidence on the scope of remediation and cost of remediation through the process of filing expert reports, cross-examining Plaintiffs' experts at depositions, and filing *Daubert* challenges against Plaintiffs' remediation and damages experts (which were denied). FOFCOL at 5-6.

61.     In sum, the Findings of Fact and Conclusions of Law from the proceeding for the seven

Plaintiff Intervenors are entitled to be given a preclusive effect under the *Parklane* standards.

The Court's Jurisdictional Rulings are likewise entitled to preclusive effect.

### 3.     Typicality – Rule 23(a)(3)

62.     Rule 23(a)(3) requires that the claims of the class representatives be typical of the class's

claims or defenses.   "The typicality criterion focuses on whether there exists a relationship

between the plaintiff's claims and the claims alleged on behalf of the class."   NEWBERG ON

CLASS ACTIONS §3:13.   Again, the threshold for typicality is low:   class representatives must

show similarity between their legal and remedial theories and the theories of the rest of the class.

*Mullen,* 186 F.3d at 625.   Typicality does not require that the claims of the class are identical, but

rather that they share the same essential characteristics – a similar course of conduct, or the same

legal theory.   *See James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001) (*quoting* 5

James W. Moore, *et al.*, MOORE'S FEDERAL PRACTICE ¶ 23.24[4] (3d ed. 2000)).

63.     The property damage claims of the class representatives are typical of, if not identical in

nature to, those of the class members.   The determination of these damages depends on the same

factual predicate as to the manufacturer of the defective product, product identification, the

mechanism of damage occurring in class members' homes, the need for remediation, the scope

of remediation, the square footage costs of accomplishing the remediation, and alternative living

expenses during remediation.   *See Chinese Drywall*, 2012 WL 92498 at *10 ("typicality is

satisfied because each of the plaintiffs is seeking money from the Knauf defendants for the costs

of remediation . . . and the proposed Class and Subclass representatives have claims

against KPT which are typical of all plaintiffs.").   Thus, the typicality requirement is met.

### 4.   Adequacy of Representation – Rule 23(a)(4)

64.     Rule 23(a)(4) demands that the named class representatives fairly and adequately represent the claims of the other class members.  There can be differences between the class representatives and other class members so long as these differences do not "create conflicts between the named plaintiffs' interests and the class members' interests." *Mullen,* 186 F.3d at 626.  A district court should evaluate whether the class representatives have a sufficient stake in the outcome of the litigation, and whether the class representatives have interests antagonistic to the unnamed class members. *Id. (citing Jenkins v. Raymark Indus.,* 782 F.2d 468, 472 (5th Cir. 1971)).  In addition, the district court should inquire into the zeal and competence of the class representatives' counsel and into the class representatives' willingness to take an active role in the litigation and to protect the interests of absentees. *Berger v. Compaq Computer Corp.,* 257 F.3d 475, 479 (5th Cir. 2001).

65.     Under Fed. R. Civ. P. 23(g), a district court must appoint class counsel at the time the class is certified, unless otherwise provided by statute.  The class counsel must fairly and adequately represent the interests of the class, and the court must review the counsel's work in investigating claims, experience in handling class action litigation, knowledge of the applicable law, and the resources counsel will commit to representing the class. *See* Rule 23(g)(1)(B),(C).

66.     The class representatives have the same interest as class members in obtaining property damage relief from the Taishan Defendants.  They also all share the same interest in the enforcement of a class judgment and the collection of that judgment against the Taishan Defendants.  The class representatives have demonstrated their commitment to the litigation by subjecting their residences to screening inspections to establish product identification and the

28

fact of corrosion damage. Further, these class representatives have timely completed the court ordered Plaintiffs Fact Sheets.

67.      The proposed Class Counsel are experienced in class action practice, and are well-respected, and competent lawyers. This Court has already had the opportunity to work extensively with each of the proposed Class Counsel and their firms in proceedings related to the default judgment against Taishan and the evidentiary hearing and associated legal briefing relevant to this Court's Findings of Fact and Conclusions of Law as to the seven Intervenor Plaintiffs. Indeed, this Court has previously determined that proposed Class Counsel are adequate for purposes of serving as Class Counsel with respect to the settlements that have been approved by the Court. *See Chinese Drywall*, 2012 WL 92498 at *10-11. The Court has also appointed Class Counsel as lead counsel (Arnold Levin) and Plaintiffs' Liaison Counsel (Russ Herman) in the instant litigation. Thus, the Court finds that the proposed class representatives, (Eduardo and Carmen Amorin, Albert and Betsy Butzer, Jack and Anna McGinn, Thomas and Virginia Spencer, and Elliot and Angelina Everard), as well as the proposed Class Counsel (Russ Herman and Arnold Levin) are adequate.[8]

---

[8] Various courts consider *ascertainability* to be a requirement under Rule 23. Ascertainability pertains to the ability of the court based on record evidence to utilize objective criteria to determine who is a class member (and who is not). The Fifth Circuit has referred to ascertainability as an "implied prerequisite of Rule 23." *National Security Fire and Casualty Company*, 501 F.3d 443, 445 (5th Cir. 2007); *see also DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir. 1970) ("It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."), *In re A.H. Robins Co., Inc.,* 880 F.2d 709, 728 (4th Cir. 1989); *Simer v. Rios,* 661 F.2d 655, 669 (7th Cir. 1981); 5 James W. Moore, et al., MOORE'S FEDERAL PRACTICE § 23.21[1], at 23-47 (Matthew Bender 3d ed. 1997) ("It is axiomatic that in order for a class action to be certified, a class must exist."). Because this class action seeks certification of a class comprised of active litigants, all class members are presently before the Court. The identification of these class members is easily verifiable by reference to the PSC's Omnibus Class Action Complaints or the complaints in

C.     **Plaintiffs have Established All of the Requirements of Rule 23(b)(3)**

68.     Rule 23(b)(3) requires that the common questions identified in Rule 23(a)(3) predominate and that the class procedure is the superior method of litigating the claims.

1.     **Predominance**

69.     Predominance is established where common answers to common questions are likely to "drive the resolution of the [instant] litigation." *See Dukes*, 131 S.Ct. at 2551 ("what matters to class certification is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceedings to generate common answers apt to drive the resolution of the litigation.") (citations omitted).  In *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (U.S. 2013), the Supreme Court explained that, "Rule 23(b)(3) ... does not require a plaintiff seeking class certification to prove that each "elemen[t] of [her] claim [is] susceptible to classwide proof." *Id.* at 1196.   What the rule does require is that common questions "predominate over any questions affecting only individual [class] members."  Fed. Rule Civ. Proc. 23(b)(3) (emphasis added)." *Amgen*, 133 S. Ct. at 1196.  A district court should consider how the cases would proceed to trial, that is, whether any cases would require individual trials on particular issues. *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744-45 (5th Cir. 1996) (finding

---

intervention thereto.  *See Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al.*, Case No. 09-6687 (E.D.La.); *Gross, et al. v. Knauf Gips, KG, et al.*, Case No. 09-6690 (E.D.La.); *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*, Civ. Action No. 10-361 (E.D.La); *Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-080 (E.D.La); *Haya, et al. v. Taishan Gypsum Corp. Ltd., et al.*, Civ. Action No. 11-1077 (E.D.La.); *Almeroth, et al. v. Taishan Gypsum Co., Ltd., et al.*, Civ. Action. 12-0498 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1672 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1395 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1673 (E.D.La.).

that certification was inappropriate where individual trials would be necessary to determine an element of the plaintiffs' fraud claims).

70.     In order to satisfy Rule 23(b)(3)'s requirement that common questions of law and fact predominate, "the predominance test asks whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all the issues in the suit." NEWBERG ON CLASS ACTIONS § *see also Amchem*, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.")(citing 7A Wright, Miller, & Kane 518-19).

71.     Because the only claims at issue here are against default judgment defendants, and because the Court has already found sufficient facts to establish the causation issue associated with these types of claims, all that is required is an assessment of damages.  Liability is conceded by default.   Accordingly, the Court will establish class-wide damages pursuant to Rule 55(b)(2)(B).

72.     The Plaintiffs have demonstrated a methodology to calculate class-wide damages in compliance with *Monumental Life Insurance Co. v. National Life,* 365 F.3d 408, 419 (5th Cir. 2004) ("The policy variables are identifiable on a classwide basis and, when sorted, are capable of determining damages for individual policy owners; none of these variables is unique to particular plaintiffs.   The prevalence of variables common to the class makes damages computation 'virtually a mechanical task.'").

73.     As the Eleventh Circuit noted in the *Klay v. Humana*:

> Plaintiffs need only come forward with plausible statistical or economic methodologies to demonstrate impact on a class wide basis.  Particularly where damages can be computed according to some formula, statistical analysis, or other easy or essentially

> mechanical methods, the fact that damages must be calculated on
> an individual basis is no impediment to class certification.

382 F.3d at 1259-60 (internal brackets, quotations and footnotes omitted).

74.    Damages were previously presented in *Germano* and *Hernandez* and sufficed to allow the Court to make per square foot damage calculations for all affected plaintiffs.  *See* FOFCOL (awarding $86/square foot for Virginia); *see also* April 27, 2010 Findings of Fact and Conclusions of Law, Rec.Doc.# 2713 (awarding $81/square foot for Louisiana).  Such aggregate proof is sufficient to meet Plaintiffs' obligations subject to appropriate cost adjustments.  *See In re Terazosin Hydrochloride*, 220 F.R.D. 672, 699 (S.D. Fla. 2004) ("Assuming the jury renders an aggregate judgment, allocation will become an intra class matter accomplished pursuant to a court approved plan of allocation, and such individual damages allocation issues are insufficient to defeat class certification."); *In re NASDAQ*, 169 F.R.D. at 525 ("Aggregate computation of class monetary relief is lawful and proper.").

75.    Given that the Court has already found that the costs of remediation can be calculated on a square footage basis and the Court has already determined what other property damages are recoverable, class-wide damages can be established in an efficient manner without the need for a trial.[9]  The Court can likewise determine the cost of remediation, through the submission of affidavits, expert evidence and from data gathered by Moss & Associates (subject to appropriate cost adjustments), for remediation costs generally (*i.e.*, empirical evidence concerning the cost or remediation performed by Moss & Associates under the Knauf settlement program).  For

---

[9] The claims process in the instant proceedings will be especially streamlined since the parties are already in possession of data needed to establish: (1) product identification for each claimant; and (2) the square footage of each property impacted by the Taishan Defendants' defective drywall.

purposes of calculating class-wide damages, data concerning class members currently before the Court (*i.e.*, data from BrownGreer PLC concerning the square footage of class members' homes) can be used to estimate the size of the class so that damages can be calculated on an aggregate basis. Thus, Plaintiffs can establish a formulaic method to determine class-wide property damages as required by the Rule 23(b)(3) predominance requirement. *Monumental,* 365 F.3d at 419. Indeed, damages are simply calculated by using a mathematical formula similar to what the Court utilized in *Germano* and *Hernandez* (*i.e.*, price per square foot to remediate X number of square feet in class members' homes = damages).

76.       Thus, for the reasons set forth above, all of the requirements of Rule 23(b)(3) predominance are readily established.

### 2.       Superiority – Rule 23(b)(3)

77.       Under Rule 23(b)(3), a district court must evaluate four factors to determine whether the class action format is superior to other methods of adjudication: the class members' interest in individually controlling their separate actions, the extent and nature of existing litigation by class members concerning the same claims, the desirability of concentrating the litigation in the particular forum, and the likely difficulties in class management. Fed. R. Civ. P. 23; *Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 304 (5th Cir. 2009).[10]

---

[10] The Fifth Circuit in *Castano* advised that a district court's superiority analysis should include consideration of the negative impact upon a defendant of certification of a mass tort. *Castano,* 84 F.3d at 746. The court noted that class certification magnifies unmeritorious claims, increases plaintiffs' damage awards, and creates "insurmountable pressure" upon defendants to settle – all of which could be tantamount to "judicial blackmail." *Id.* As noted above, this Court has recognized that the types of claims represented herein are meritorious. FOFCOL at 17-59. In addition, Taishan's contemptuous refusal to appear at the judgment debtor proceedings, should serve to alleviate concern that this particular defendant is experiencing pressure of any kind to resolve these claims, due to so-called "judicial blackmail" or otherwise.

78.    Class proceedings are a superior method to adjudicate the damage assessment remaining in this case.  This case presents a factual and procedural status that makes certification appropriate as a result of the entry of a default judgment on liability and the fact this Court has already made extensive findings that are applicable to a cross-section of class members.  The narrow scope of the factual determinations left to be made –the amount of damages for the class– and the exhaustive record of the relevant factual evidence already reviewed by and ruled on by this Court greatly enhances the manageability of this matter.  In addition, the Court has already determined that these claims are meritorious.  FOFCOL at 17-59.  A class proceeding will facilitate an expeditious and streamlined resolution for all impacted residents.  Given the extreme costs involved in litigating this matter, class members (as a whole) have no ability to individually prosecute these matters.  For all the reasons stated above, as well as the procedural advantages of avoiding duplicate hearings on identical issues, class adjudication is the superior method to resolve the remaining issues in this dispute.[11]

79.    Therefore, based upon the Findings of Fact and Conclusions of Law, the Court finds that class certification is appropriate pursuant to Fed.R.Civ.P. 23(a)(1)-(4) and 23(b)(3) and concludes as follows:

    A.    The certified class is defined as follows:

> All owners of real properties in the United States, who are named Plaintiffs on the complaints in *Amorin*, *Germano*, *Gross*, and/or *Wiltz* (*i.e.*, not an absent class member), asserting claims for remediated damages arising from, or otherwise related to Chinese

---

[11] Moreover, in light of the JPML's Order transferring these cases and consolidating them before this Court pursuant to 28 U.S.C. §1407, "[t]his factor should…be of little or no significance in resolving the superiority issue."  NEWBERG ON CLASS ACTIONS, §4:31.  The JPML previously considered, pursuant to 28 U.S.C. §1407, the desirability of centralizing the Chinese Drywall litigation in this particular forum.

        Drywall manufactured, sold, distributed, supplied, marketed,
inspected, imported or delivered by the Taishan Defendants.

B.     The above-defined class is comprised of active litigants (either in the original

action or in complaints in intervention) who are participants in *Germano, et al. v. Taishan*

*Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al.*, Case No. 09-6687

(E.D.La.); *Gross, et al. v. Knauf Gips, KG, et al.*, Case No. 09-6690 (E.D.La.); *Wiltz, et*

*al. v. Beijing New Building Materials Public Limited Co., et al.*, Civ. Action No. 10-361

(E.D.La); *Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co.,*

*Ltd., et al.*, Civ. Action No. 11-080 (E.D.La); *Haya, et al. v. Taishan Gypsum CorF Ltd.,*

*et al.*, Civ. Action No. 11-1077 (E.D.La.); *Almeroth, et al. v. Taishan Gypsum Co., Ltd.,*

*et al.*, Civ. Action. 12-0498 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a*

*Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1672 (E.D.La.); *Amorin, et*

*al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ.

Action No. 11-1395 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a*

*Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1673 (E.D.La.).[12]

C.     Plaintiffs, Eduardo and Carmen Amorin, Albert and Betsy Butzer, Jack and Anna

McGinn, Thomas and Virginia Spencer, and Elliot and Angelina Everard shall serve as

class representatives.

D.     Russ Herman of Herman, Herman & Katz, LLC, and Arnold Levin of Levin,

Fishbein, Sedran & Berman are appointed as Class Counsel.

E.     The notice appended hereto as Exhibit "A" is hereby approved, as modified, by the

---

[12] For administrative reasons the class definition is limited to the actions in *Amorin, Germano,*
*Gross* and *Wiltz*. All class members are named plaintiffs in the *Amorin* actions.

Court. The opt out period shall be 30 days from the date of this Order.


New Orleans, Louisiana, this 26th day of September 2014.

U.S. District Judge

IMPORTANT LEGAL NOTICE

UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047**<br>**SECTION: L**<br>**JUDGE FALLON**<br>**MAG. JUDGE WILKINSON** |
| **THIS DOCUMENT RELATES TO:**<br><br>*Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al.*, **Case No. 09-6687 (E.D.La.);**<br><br>*Gross, et al. v. Knauf Gips, KG, et al.*, **Case No. 09-6690 (E.D.La.);**<br><br>*Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*, **Case No 10-361 (E.D.La.);**<br><br>*Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, **Civ. Action No. 11-1672 (E.D.La.);**<br><br>*Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, **Civ. Action No. 11-1395 (E.D.La.);**<br><br>*Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, **Civ. Action No. 11-1673 (E.D.La.)** | |

## <u>NOTICE OF PENDENCY OF CLASS ACTION</u>

TO:   ALL OWNERS OF REAL PROPERTIES IN THE UNITED STATES, WHO ARE NAMED PLAINTIFFS ON THE COMPLAINTS IN *AMORIN, GERMANO, GROSS,* AND/OR *WILTZ (I.E.,* NOT AN ABSENT CLASS MEMBER), ASSERTING CLAIMS FOR REMEDIATED DAMAGES ARISING FROM, OR OTHERWISE RELATED TO CHINESE DRYWALL MANUFACTURED, SOLD, DISTRIBUTED, SUPPLIED, MARKETED, INSPECTED, IMPORTED OR DELIVERED BY THE TAISHAN DEFENDANTS.

This Notice is given pursuant to Fed.Rule.Civ.P. 23(c)(2)(B), and an Order of the Honorable Eldon E. Fallon, Judge for the United States District Court for the Eastern District of Louisiana ("the Court") dated September 26, 2014, of the pendency of a class action on behalf of the above-defined class.  If you are a member of the class your legal rights may be affected.

**READ THIS NOTICE CAREFULLY–THIS NOTICE DESCRIBES THE CERTIFICATION OF AN ACTION ON BEHALF OF THE CLASS, AND YOUR RIGHTS TO EXCLUDE YOURSELF FROM THE CLASS.**

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU FILED A LAWSUIT AGAINST THE TAISHAN DEFENDANTS.[1]**

## THE LITIGATION

Class members have filed lawsuits identified in footnote 2 claiming the Taishan Defendants manufactured and distributed defective drywall.  These litigants are claiming that the Taishan Defendants' defective drywall emits foul odors and corrodes certain materials and appliances.  They are asking the Court to award repair relief to everyone who owns a property built with the Taishan Defendants' defective drywall.  The plaintiffs assert that the Taishan Defendants are legally responsible for the repair and replacement of class members' properties as a result of the installation of the Taishan Defendants' defective drywall in class members' homes.

The plaintiffs are not seeking to recover damages for personal injuries or medical monitoring as part of these class proceedings.  To the extent any class member seeks to recover damages for personal injuries and/or medical monitoring, such claims are reserved and must be separately pursued on an individual basis.

The plaintiffs have obtained default judgments against the Taishan Defendants.  Because of these default judgments, the Taishan Defendants will be precluded from offering any defenses concerning their liability to the Class.  In future proceedings, plaintiffs will establish class-wide damages pursuant to Rule 55(b)(2)(B).  Plaintiffs will prove class-wide damages on an aggregate basis by presenting evidence concerning the total square footage of properties owned by class members and the cost per square foot to repair and replace the defective drywall in class members' properties (*i.e.*, the current price per square foot to remediate multiplied by the number of square feet in class members' homes = damages).

---

[1] The "Taishan Defendants" are comprised of the following entities: Taishan Gypsum Co. Ltd. (hereafter "Taishan"); Beijing New Building Materials Limited Co. (hereafter "BNBM"); Beijing New Building Materials Group Co., Ltd. (hereafter "BNBM Group"); China National Building Materials Co., Ltd. (hereafter "CNBM"); China National Building Materials Group Corporation (hereafter "CNBM Group"); and Tai'an Taishan Plasterboard Co., Ltd (hereafter "TTP").

THE PURPOSE OF THIS NOTICE IS TO ADVISE YOU OF THESE EVENTS AND THEIR POTENTIAL EFFECT ON YOUR RIGHTS.

## DEFINITION OF THE CLASS

The Court has certified a Class defined as follows:

All owners of real properties in the United States, who are named Plaintiffs on the complaints in *Amorin*, *Germano*, *Gross*, and/or *Wiltz* (*i.e.*, not an absent class member), asserting claims for remediated damages arising from, or otherwise related to Chinese Drywall manufactured, sold, distributed, supplied, marketed, inspected, imported or delivered by the Taishan Defendants.[2]

Plaintiffs, Eduardo and Carmen Amorin, Albert and Betsy Butzer, Jack and Anna McGinn, Thomas and Virginia Spencer, and Elliot and Angelina Everard ("Plaintiffs"), have been appointed by the Court to serve as representatives for the Class.

## FURTHER PROCEEDINGS

If you are a member of the Class you need do nothing at this time and your interests will be represented by the Plaintiffs and Class Counsel. If you choose, you may enter an appearance through your own attorney at your own expense. You may also request to be excluded from the Class (discussed below).

------

[2] This class action includes all current and former owners of properties in the United States containing drywall manufactured by these defendants who are participants (either in the original action or in complaints in intervention) in the Class Action Complaints in *Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al.*, Case No. 09-6687 (E.D.La.); *Gross, et al. v. Knauf Gips, KG, et al.*, Case No. 09-6690 (E.D.La.); *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*, Civ. Action No. 10-361 (E.D.La); *Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-080 (E.D.La); *Haya, et al. v. Taishan Gypsum Corp. Ltd., et al.*, Civ. Action No. 11-1077 (E.D.La.); *Almeroth, et al. v. Taishan Gypsum Co., Ltd., et al.*, Civ. Action. 12-0498 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1672 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1395 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1673 (E.D.La.). For administrative reasons the class definition is limited to the actions in *Amorin*, *Germano*, *Gross* and *Wiltz*. All class members are named plaintiffs in the *Amorin* actions.

3

As a member of the Class, you will not be personally responsible for any attorneys' fees or litigation costs or expenses unless you retain your own attorney, in which case you will be responsible for your attorney's fees, costs and expenses.

If a recovery is ultimately obtained for the Class, either through a judgement or settlement, Class Counsel will seek to be awarded attorneys' fees and costs out of any recovery obtained on behalf of the Class. In such case, your share of the recovery will bear its proportionate share of those costs and fees.

As a member of the Class, you will be bound by the judgment or other final disposition of this lawsuit whether that disposition is favorable to the Class or to the Taishan Defendants. If relief is obtained for the Class, you may be entitled to participate in any measure of relief that is recovered. Also, you will have an opportunity to be heard respecting any proposed settlement or dismissal of the class action.

You may be required as a condition to participating in any recovery obtained through settlement or trial to present evidence respecting the presence of the Taishan Defendants' defective drywall in your property. You should, therefore, preserve any records that you have pertaining to the presence of the Taishan Defendants' defective drywall in your property.

## EXCLUSION FROM CLASS

If you fall within the definition of the Class (see above), you are automatically a Class member and need not do anything at this time unless you do not want to be a part of the Class. If you do not wish to be included in the Class, you must send a request for exclusion to HERMAN, HERMAN, HERMAN & KATZ, LLC, 820 O'Keefe Avenue, New Orleans, Louisiana 70113, in an envelope postmarked no later than **October 27, 2014**. Your request for exclusion should set forth your name, address, and telephone number. All requests for exclusion must be personally signed by the Class member requesting exclusion.

IF YOUR REQUEST FOR EXCLUSION DOES NOT INCLUDE ALL OF THE FOREGOING INFORMATION, IS NOT PERSONALLY SIGNED BY THE CLASS MEMBER, OR IS NOT POSTMARKED BY THE DEADLINE ABOVE, IT SHALL NOT BE A VALID REQUEST FOR EXCLUSION. THE PERSON OR ENTITY FILING AN INVALID REQUEST FOR EXCLUSION SHALL BE A MEMBER OF THE CLASS AND BOUND BY ANY FURTHER ACTION TAKEN BY THE COURT AFFECTING THE CLASS UNLESS LEAVE OF COURT IS OBTAINED.

If your valid request for exclusion is timely received, the Court will exclude you from the Class and you will not be bound by –or entitled to participate in–any judgment in this action. The judgment will bind plaintiffs and all members of the Class who have not timely requested exclusion from the Class.

## ADDITIONAL INFORMATION

     The following law firms have been approved by the Court to serve as counsel for the Class ("Class Counsel"):

Russ M. Herman, Esquire
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024

Arnold Levin, Esquire
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-466

     If you remain a member of the Class and you wish to communicate with Class Counsel, or if you have any questions concerning any of the matters contained in this Notice, you should contact Class Counsel directly.

     This Notice is issued pursuant to an order of the Court.  Additional notice(s) may be provided as the Court directs.

PLEASE DO NOT TELEPHONE THE COURT REGARDING THIS NOTICE OR THE LITIGATION.  ALL INQUIRES SHOULD BE DIRECTED TO CLASS COUNSEL.

                                         BY ORDER OF THE HONORABLE
                                         ELDON E. FALLON
                                         UNITED STATES DISTRICT COURT
                                         FOR THE EASTERN DISTRICT OF
                                         LOUISIANA

DATED: September 26, 2014