**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047** **SECTION: L** **JUDGE FALLON** **MAG. JUDGE WILKINSON** |
| **THIS DOCUMENT RELATES TO:** ***Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al.,* Case No. 2:09-cv-6687 (E.D.La.)** | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PLAINTIFF-**
**INTERVENORS AND THE PSC FOR AN EXPEDITED HEARING TO ENFORCE**
**THE COURT'S JULY 17, 2014 CONTEMPT ORDER AND INJUNCTION**

I.    **INTRODUCTION**

On July 17, 2014, this Court entered an Order holding Defendant-Judgment Debtor, Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd. (hereinafter "Taishan" or "Defendant-Judgment Debtor") in contempt of court, both criminally and civilly, for its refusal to appear in open court for a judgment debtor examination ("Contempt Order and Injunction") [Rec. Doc. No. 17869].  Taishan's Counsel confirmed that this Defendant had received actual notice of the Court's June 20, 2014 Order requiring Taishan to appear for this examination pursuant to Fed. R. Civ. P. 69(a) and La. C.C.P. Art. 2451 [Rec. Doc. No. 17846], and that the Defendant nonetheless *refused* to appear and further participate in these proceedings.  Contempt Order and Injunction, at 2 (*citing* statements by Taishan's Counsel in open court and in a brief filed with the Court [Rec. Doc. No. 17846]) (emphasis in original).  It was clear to the Court that the implications of Taishan's actions extended beyond the individual Plaintiffs seeking to discover Defendant's assets, and even beyond the multi-district litigation itself; for such flagrant

1

"[d]isobedience of the Court's order harms both the many other parties in this case and the decorum of the Court." *Id*. at 2.

The Court imposed both monetary and injunctive sanctions for this contempt of judicial authority: Taishan was ordered to pay **$15,000** in attorneys' fees to Plaintiffs' Counsel and **$40,000** as a penalty, and, in addition, Taishan *and any of its affiliates or subsidiaries* were enjoined from "conducting any business in the United States until or unless it participates in this judicial process." *Id*. Under the terms of the Contempt Order, any violation of the injunction will trigger "a further penalty of **25%** of the profits earned by the company or its affiliates who violate the order, for the year of the violation." *Id*.

This foreign Chinese Defendant and its related entities have a history in this litigation of using our judicial system in an effort to avoid having to pay money judgments awarded to homeowners as compensation for Taishan's defective products sold in the U.S., but walking away from the Court – "tak[ing] their ball and go[ing] home, so to speak" – "because they didn't get their way." Transcript of MDL Status Conference, 1/22/2015 [Rec. Doc. No. 18276], at 20 (attached hereto as Exhibit "A"). Through their Motion for an Expedited Hearing to Enforce the Contempt Order and Injunction, the Plaintiffs' Steering Committee ("PSC") and the Plaintiff-Intervenors are seeking an Order (i) scheduling a hearing on an expedited basis to enforce the Contempt Order and Injunction; (ii) identifying the "affiliates" and "subsidiaries" of Taishan that are subject to the Court's injunction prohibiting them from conducting any business in the United States; (iii) directing that the Contempt Order and Injunction and the list of these entities by name be registered pursuant to the FRCP and appropriate statutory authority in the Clerk's office of every United States District Court throughout the country; (iv) requesting that this Court and

the PSC be notified by the appropriate staff in each such office of any direct, third-party, or interpleader action either pending or later filed by or against any of these entities; and (v) authorizing the PSC to pursue enforcement actions and conduct discovery related to any such entities shown to be conducting judicial or other business in the U.S. in violation of the injunctive sanctions imposed under the Contempt Order.

More than 4,000 property owners and residents in this country suffered damages as a result of Taishan's defective drywall having been installed in their homes and properties.  In many cases, these were individuals who had needed the drywall to rebuild their homes following the devastation of Hurricanes Katrina and Rita in 2005.  In pursuing the claims of these Plaintiffs, the PSC expended great effort and hundreds of thousands of dollars in litigation costs to execute service of complaints (pursuant to the Hague Convention) against Taishan, its wholly-owned subsidiary Taian Taishan Plasterboard Co., Ltd. ("TTP"), and their related entities. Through further effort and expense, Plaintiff-Intervenors in the *Germano* case obtained a money judgment of $2,609,129.99 against Taishan in May, 2010, based upon the results of evidentiary default proceedings [Rec. Doc. No. 2380].

These homeowners nonetheless have yet to receive even one cent from the manufacturer of the defective Chinese Drywall installed in their homes.[1]  Instead, after this Court presided over and adjudicated Taishan's multiple challenges to the exercise of personal jurisdiction over it, after the exhaustion of multiple appeals by Taishan to the Fifth Circuit on the issue of jurisdiction, and after the Court ordered Taishan to appear for a judgment debtor examination,

---

[1] Plaintiff-Intervenors are entitled to the full amount of their judgment plus pre-judgment interest from May 1, 2009, to April 13, 2010, at a rate in accordance with Va. Code Ann. §6.1-330.54, which, in the aggregate, totals $2,758,356.20 [Rec. Doc. No. 3013].  In addition, these Plaintiffs are entitled to post-judgment interest at the legal rate until paid, and taxable costs.  *Id.*

3

the Defendant blatantly *refused* to appear before this Court, fired its U.S. national and local counsel, and effectively declared its intention to no longer participate in these proceedings.

It is imperative that the resulting sanctions for what the Court has found to be Taishan's "direct contemptuous act" in this MDL, as well as an "affront to the Court's dignity" (Contempt Order and Injunction at 2-3), now must be made fully and effectively enforceable by further Order of this Court. Plaintiffs have uncovered evidence that Taishan and its affiliates continue to act in defiance of this Court's Orders. *See* Argument, Section C, *infra*. These Plaintiffs have little other recourse, since their judgment is not enforceable in China. *See* Argument, Section B, *infra*.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

The PSC was appointed by this MDL Court in July, 2009, to represent all owners alleging damages resulting from the installation of Chinese-manufactured drywall ("Chinese Drywall") in their properties [Rec. Doc. No. 144-2]. Certain homeowners intervened in the above-captioned *Germano* class proceedings to pursue claims against Taishan as the manufacturer of the Chinese Drywall installed in their homes. Plaintiff-Intervenors are Deborah and William Morgan; Jerry and Inez Baldwin; Joe and Cathy Leach; Robert and Lisa Orlando; Fred and Vanessa Michaux; Preston and Rachel McKellar; and Steven and Elizabeth Heischober [*see* Rec. Doc. No. 641].

Rather than answer the claims filed against it, Taishan initially chose to ignore these proceedings for over a year and allowed default judgments to be entered, not only in *Germano*

[Rec. Doc. No. 487], but also in other purported class actions in this MDL, including *Mitchell*[2] and *Gross*.[3]

An evidentiary hearing of the *Germano* claims against Taishan in default was conducted in February, 2010, establishing both a protocol for the remediation of the Plaintiff-Intervenors' properties and the appropriate measure of remediation damages per square foot. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 706 F. Supp. 2d 655 (E.D. La. 2010), *mot. to vacate denied*, 894 F. Supp. 2d 819 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Thereafter, in an obvious effort to avoid having to satisfy the Plaintiff-Intervenors' judgment against it in *Germano*, and limit its potential exposure for the class-wide damages caused by its defective Chinese Drywall, Taishan entered an appearance through counsel in the litigation the day before the period for an appeal of the *Germano* judgment expired [Rec. Doc. No. 3668]. The defendant then promptly filed an appeal to the Fifth Circuit to vacate the judgment [Rec. Doc. No. 3670; 5th Cir. Dkt. 10-30568]. In this appeal, the Defendant-Judgment Debtor argued, for the first time, that this Court lacked personal jurisdiction over it.

After the Fifth Circuit directed that a proper record be established for purposes of Taishan's post-judgment jurisdictional challenge, this Court invested significant judicial resources to oversee extensive jurisdictional discovery. At issue was the nature and scope of both Taishan's and TTP's sales of more than $8.5 million of their defective Chinese Drywall in the United States. The needed discovery entailed months of depositions of numerous witnesses located on several continents. Numerous motions to compel, motions for sanctions and motions for protective orders were filed, briefed and argued. Ultimately, due to conflicts between the

---

[2] *The Mitchell Co., Inc. v. Knauf Gips KG, et al.*, Case No. 09-4115 (E.D. La.) [Rec. Doc. No. 277].

[3] *Gross v. Knauf Gips KG, et al.*, 2:09-cv-06690 (E.D. La.) [Rec. Doc. No. 7302].

parties' interpreters at the foreign depositions, the Court ordered that a second round of depositions of Taishan's witnesses would take place in Hong Kong under the Court's first-hand supervision, using a single Court-appointed translator.   That an MDL Judge should find it necessary to travel to Hong Kong to personally supervise these depositions and rule on objections was extraordinary and no doubt unprecedented, but proved essential to establish the record required by Taishan's jurisdictional challenges.   *See* Transcript of Proceedings, 7/17/2014 (attached hereto as Exhibit "B"), at p. 26.   Taishan, in effect, fully invoked the privilege of being a litigant in the U.S. judicial system, and the system responded.

Taishan then pursued its motions to dismiss for lack of personal jurisdiction and motions to vacate the default judgments in *Germano* and *Mitchell* [Rec. Doc. Nos. 13490, 13566]. Taishan and TTP also filed separate Rule 12(b)(2) motions in *Gross* and *Wiltz*[4] [Rec. Doc. Nos. 13590, 13591].   After extensive briefing and an evidentiary hearing in June, 2012, which was coordinated with related State-court proceedings in Florida,[5] the Court determined in a 142-page opinion that Taishan and TTP were alter-egos of one another and both were subject to the jurisdiction of this Court.   *Chinese Drywall*, 894 F. Supp. 2d 819.   Unwilling to capitulate, and further availing itself of the remedies and protections of our judicial system, Taishan filed four separate appeals of the Court's rulings to the Fifth Circuit.   The Court of Appeals affirmed this Court's jurisdictional analysis and conclusions.   *See Chinese Drywall*, 742 F.3d 576; *Chinese Drywall*, 753 F.3d 521 (5th Cir. 2014).   The time for filing a Supreme Court petition for a writ of

---

[4] *Wiltz v. Beijing New Building Materials Public Ltd. Co., et al.*, Case No. 10-361 (E.D. La.).

[5] *Lennar Homes, LLC v. Knauf GIPS, KG*, Case No. 09-07901 (11th Jud. Cir. Ct. Miami-Dade Cty. Fla.) (Hon. Joseph P. Farina) [Rec. Doc. No. 15737].

certiorari was allowed to expire, so that jurisdiction over these foreign Defendants is now established as the law of the case.

Having spent more than four years successfully litigating Taishan's jurisdictional challenges, the Plaintiff-Intervenors took the necessary action to recover the damages to which they are entitled from their now-final judgment in *Germano*:  they moved this Court for an Order to allow a judgment debtor examination of Taishan [Rec. Doc. No. 17760].   That Order was entered, and the date for the examination, and production of certain documents, was set.  Counsel appeared in open court at the time and on the date ordered by the Court.  Taishan did not. Instead, despite having been notified of the Order to do so, it *refused* to appear in open court. This prompted the Court to enter the Contempt Order and Injunction and summarily punish Taishan "to protect the sanctity of its decrees and the legal process."  Contempt Order and Injunction at 3.

Even as the instant motion seeks enforcement of the sanctions imposed by the Contempt Order and Injunction, these proceedings continue against Taishan's parent and affiliated entities, which now are in default.  Recently, on September 26, 2014, the Court certified a litigation class against the Taishan Defendants[6] [Rec. Doc. No. 18028].   A hearing on class-wide damages is scheduled for February 12, 2015 [Rec. Doc. No. 18217].

---

[6] The "Taishan Defendants" include:   Taishan; TTP; Beijing New Building Materials Limited Co. (hereinafter "BNBM"); Beijing New Building Materials Group Co., Ltd. (hereinafter "BNBM Group"); China National Building Materials Co., Ltd. (hereinafter "CNBM"); and China National Building Materials Group Corporation (hereinafter "CNBM Group").

III.   **ARGUMENT**

A.   **This Court Has Broad Authority to Punish Taishan and Its Affiliates for Civil and Criminal Contempt of Court.**

If the lawful orders issued by judges presiding over legal disputes are simply ignored by a litigant, the authority of the judicial system is necessarily called into question; and this is, by its nature, a question which goes far beyond the case at issue, and tests the very foundation of a nation which makes the law, not the will of individuals, supreme.[7]

This is why the inherent and broad authority of a judge to impose sanctions in cases of civil and criminal contempt, is as fundamental as it is well-recognized.  Over two centuries ago, the Supreme Court held that the courts of the United States, from the very "nature of their institution," possess "the power to fine for contempts, to imprison for contumacy, and to enforce the observance of orders, etc."  *See United States v. Hudson and Goodwin*, 11 U.S. (7 Cranch) 32, 34 (1812); *In re Terry*, 128 U.S. 289, 302-03 (1888); Notes, *Permitting Private Initiation of Criminal Contempt Proceedings*, HARVARD LAW REV., Vol. 124:1485, 1487 (2011) ("The power to issue punishments for contempt of court is an ancient one, bound up in the very notion of the authority of the courts.") (*citing Young v. United States*, 481 U.S. 787, 795 & n.7 (1987)).

It is universally recognized, therefore, that courts of justice have the "power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 227 (1821).  As the High Court declared in *Cooke v. United States*, 267 U.S. 517 (1925):

---

[7] In his work "Common Sense," Thomas Paine galvanized the American public with the thought that independence from a British monarch would be possible because the nation still would have a supreme ruler:  "But where, say some, is the King of America?...[T]hat we may not appear defective even in earthly honours, let a day be solemnly set apart for proclaiming the Charter, [and] let a crown be placed thereon, by which the world may know that, so far as we approve of monarchy,…in America the law is king." T. Paine, "Common Sense" (1776) (emphasis added).

> To preserve order in the court room for the proper conduct of business, *the court must act instantly to suppress … disrespect to the court when occurring in open court*. There is no need of evidence or assistance of counsel before punishment, because the court has seen the offense. Such summary vindication of the court's dignity and authority is necessary. It has always been so in the courts of the common law and *the punishment imposed is due process of law*.

267 U.S. at 534 (emphasis added). As further explained in *Pounders v. Watson*, 521 U.S. 982, 988 (1997), "[w]here misconduct occurs in open court, the affront to the court's dignity is more widely observed, justifying summary vindication." *See also* Fed. R. Crim. P. 42(a); 18 U.S.C. § 401.

Rule 37 of the Federal Rules of Civil Procedure also vests the Court with the power to "treat[] as contempt of court the failure to obey any order." *See* Fed. R. Civ. P. 37(b)(2)(A). The Court may "order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Such relief may be in addition to the various sanctions provided in subsection (b)(2)(A) of the Rule. *See id.* Likewise, Rule 37(d)(3) vests power in courts to impose sanctions upon a "party or party's officer, director, or managing agent – or person designated under Rule 30(b)(6)" who "fails, after being served with proper notice, to appear. Fed. R. Civ. P. 37(d)(1)(A)(i). Such sanctions "may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Upon a finding of contempt, a court has *broad* discretion in the imposition of sanctions "to protect the sanctity of its decrees and the legal process." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 582 (5th Cir. 2005) (citing *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000), *cert. denied*, 531 U.S. 1191 (2001)); *see also Cook v. Ochsner*

*Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977) (emphasis added). The "proper aim" of such sanctions "is full remedial relief." *Florida Steel Corp. v. N.L.R.B.*, 648 F.2d 233, 239 (5th Cir. 1981) (quoting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193 (1949)). Judicial sanctions in civil contempt proceedings may be employed for either or both of two purposes: (1) to coerce the defendant into compliance with the court's order, and/or (2) to compensate the complainant for losses sustained. *Am. Airlines*, 228 F.3d at 585 (quoting *United States v. United Mine Workers of Am.,* 330 U.S. 258, 303-04 (1947)). The Supreme Court has long held that "the concept of compensatory relief" for the injured plaintiff may include profits derived by the contemnor in violation of a lawful court order. *Leman v. Krentler–Arnold Hinge Last Co.*, 284 U.S. 448, 455-57 (1932) (civil contempt proceeding for violation of injunction in patent infringement suit). Under the theory of unjust enrichment, "a contempt plaintiff is entitled to defendant's profits." *Manhattan Industries v. Sweater Bee, Ltd.*, 885 F.2d 1, 6 (2d Cir. 1989).

The record here unequivocally establishes that, in advance of the hearing that was ordered to take place in open court on July 17, 2014 at 10:00 a.m., for the judgment debtor examination of Taishan, the Defendant had been notified of same by counsel. *See* Contempt Order and Injunction at 2. Specifically, once Taishan's national and local counsel were discharged from representing the company with respect to "all the Chinese drywall cases filed against TG in all the US courts," these counsel represented to this Court in their Motion to Withdraw as Counsel of Record that "Counsel has notified TG of the outcome of the appeal. Counsel also notified TG of the Court's directive to appear at Court on July 17, 2014 for a judgment debtor examination" [Rec. Doc. No. 17846-1 at 2]. *See also* 7/17/2014 Tr., at pp. 28-29. Hence, this was not an instance of a judgment debtor simply <u>failing</u> to appear for its

examination, but, rather, a case where the defendant deliberately *refused* to do so, in flagrant

violation of an express, judicial mandate. *See* Contempt Order and Injunction at 2; 7/17/2014 Tr.

at p. 29 ("National counsel received communications from Taishan Gypsum that it would not

attend or participate in the judgment debtor examination."); Memo. in Support of Motion to

Withdraw, at 2 ("TG has notified Counsel that it does not intend to participate in the judgment

debtor exam").

Such utter disregard for judicial authority is especially egregious given the above history

of the case.  Having taken advantage of this Court's judicial resources to challenge personal

jurisdiction when that was in Taishan's best interests, this Defendant then chose not only to

ignore the judgment against it, but to disobey a court order that would begin a process for the

judgment to be executed against corporate assets.  In so doing, the Defendant even discharged

the very counsel it had relied upon to exercise the system in a jurisdictional challenge.

This Court clearly has the authority to again apply the provisions of Fed. R. Civ. P. 37

and give further clarity and effect to the contempt sanctions it has imposed.  It likewise behooves

counsel for the Plaintiff-Intervenors and the PSC, both as advocates for their clients and as

officers of the Court, to now seek and propose an Order which will facilitate and effectuate this

result.

> **B.**      **Implementation of the Court's Sanctions Will Not Occur Through an
> Enforcement of the Contempt Order in China.**

Were the foreign manufacturer and its affiliates at issue herein, those formed and

influenced by a legal system and culture affording honor and respect to U.S. judicial authority,

the motion at hand might be unnecessary.  Plaintiffs instead could look to possible enforcement

of the contempt and sanctions ruling through appropriate authority in the contemnor's own country of origin.

Unfortunately, the People's Republic of China offers no such option.  In 2004, a member of the faculty at the George Washington Law School, Donald Clarke, published a "Research Note" which addressed the question whether the judgments of U.S. (federal or state) can and will be enforced in China.  *See* Donald Clarke, "The Enforcement of United States courts (federal or state) Judgments in China: A Research Note," May 27, 2004 (attached hereto as Exhibit "C"). His unequivocal answer was "NO."   Absent a treaty creating reciprocity between this country and the People's Republic – and no such treaty or reciprocity exists – there is simply no realistic enforcement scenario to be had.

Writes Prof. Clarke:

> I have found only two cases in which the enforcement of a U.S. Court judgment was sought in China.  In both cases, the applicant was unsuccessful.
>
> . . . .
>
> In short, there is to date no evidence suggesting that a Chinese Court would enforce the judgment of a United States Court, and considerable evidence suggesting it would not.

*See* Clark, "Research Note" at p. 5.

If the rule of law on which our judicial system is based is to have meaning, therefore, it falls to this Court, and others in the U.S. federal judiciary, to explore and exhaust the means of effectuating our system's judgments and orders against these Chinese entities.  The Plaintiffs' attempt to enforce a monetary judgment prompted these entities to simply remove themselves from the rules and procedures of the very system they had exercised in their jurisdictional

challenge.  The result, not unexpectedly, is a new judgment of civil and criminal contempt, with

significant sanctions.  Surely, every federal district court in this country has a valid reason to

assure that this particular judgment is enforced.  China will not do so, even as its own corporate

entities stand in defiance of U.S. judicial authority; and entities such as Taishan and its affiliates

will be undeterred in continuing to defy that same authority whenever and wherever they see fit,

unless these contempt sanctions are given clear and practical effect.

C.  **The Legal Definition of "Affiliate" Enables the Court to List by Name those Entities which are Subject to the Court's Contempt Sanctions.**

The word "affiliate" is not one that has been subject to greatly varying interpretations or

meanings.  Rather, it has been given fairly uniform meaning regardless of the context or

jurisdiction in which it is used.  Black's Law Dictionary defines "affiliate" as "a corporation that

is related to another corporation by shareholdings or other means of control; a subsidiary, a

parent or a sibling corporation."  Black's Law Dictionary (9th ed. 2009).  Statutory definitions of

the term, are, for the most part, in line with the preceding Black's definition.[8]

In the Findings of Fact and Conclusions of Law issued by the Court on September 26,

2014 for the purposes of its class certification decision in this matter, reference was made to

certain "affiliates" of Taishan Gypsum. *See* Findings of Fact and Conclusions of Law with

Respect to Plaintiffs' Omnibus Motion for Class Certification Pursuant to Rules 23(a)(1)-(4) and

23(b)(3) (hereinafter "FOFCOL") [Rec. Doc. No. 18028], at ¶¶ 3-4.  Specifically, the Court

included in that decision's definition of "Taishan Affiliates" the following entities: (1) BNBM;

---

[8] *See* La. R.S. 12:1-1301(1) ("'Affiliate' means a person that directly or indirectly through one or more intermediaries controls, is controlled by, or is under common control with another person or is a senior executive thereof"); *see also* Tex. Bus. Orgs. Code Ann. § 1.002; Fla. Stat. Ann. § 607.0901; Ala. Code § 10A-1-1.03; Miss. Code Ann. § 75-76-199; Miss. Code Ann. § 79-27-5.

13

(2) BNBM Group; (3) CNBM; (4) CNBM Group; and (5) TTP. This finding by the Court appropriately recognized that parent and other entities above Taishan Gypsum in a vertical line of corporate control, ownership and authority, squarely fall within the legal definition of "affiliates."  The same vertical line extends further to the State-owned Assets Supervision & Administration Commission ("SASAC"), as demonstrated in a corporate organizational chart previously made part of this record.  *See* Exhibit 130 to the Affidavit of Russ M. Herman dated 5/7/2012 ("Herman Aff."), filed as Exhibit A to the PSC's Global Statement of Facts in Opposition to Taishan's Jurisdictional Motions [Rec. Doc. Nos. 14215-3, 14215-4 & 14224],[9] (Q000955) (CNBM post-Global Offering corporate structure chart) & Exhibits K, L, M, and N to the PSC's Memo. in Opp. To Taishan's Mot. to Vacate Default Judgment [Rec. Doc. No. 6245-3 at 6-20] (attached hereto, collectively, as Exhibit "D"); *see also* Herman Aff. Exhibit 131, at p. 97 (Q000538) (CNBM corporate structure chart) (attached hereto as Exhibit "E").  Accordingly, SASAC also is an entity which should be considered one of the "Taishan Affiliates" by legal definition.

The additional question to be addressed is whether existing lines of horizontal relationships linking Taishan Gypsum to "sibling" or "cousin" entities sharing a common set of parents, likewise identify entities within the law's definition of "affiliates." The governing jurisprudence, however, clearly would characterize such entities as "affiliates."  The U.S. Fifth Circuit Court of Appeal in *Braun v. Insurance Co. of North America*, 488 F.2d 1066, 1067-68 (5th Cir. 1974), specifically rejected a "restrictive downstream definition" of the term "affiliate" as used in an insurance policy provision excluding coverage for incidents in connection with travel in a company airplane, including an airplane owned or leased by or on behalf of any

---

[9] The 202 Exhibits to the Herman Affidavit were filed manually with the Court on May 8, 2012, due to their volume.

subsidiary or affiliate of the company.  In its holding, the court explained: "[t]he word affiliate was not used grammatically but rather legally in the context of the present day corporation, most spectacularly represented by the conglomerate, in which connections between companies may be vertical, diagonal or horizontal and sometimes all the way around with occasional mixtures of any one or all of the four."  *Braun*, 488 F.2d at 1067.

Application of the jurisprudential principle articulated in *Braun* to the corporate structure and organization of the family of entities which include Taishan, leads to the conclusion that entities not only in a vertical line, but also in horizontal lines of relationship, should be considered "Taishan Affiliates."   Moreover, a public document generated by CNBM itself enables the Court to identify these entities by name.  On March 13, 2006, CNBM filed a "Global Offering Prospectus," a public record accessible online and cognizable by this Court.[10]   The corporate structure chart made part of the Global Offering (Exhibit D, hereto) names all entities that should be considered "affiliates" of Taishan, including both those in the vertical line of ownership and control and those related horizontally.[11]   In addition, CNBM Forest Products (Canada), Ltd. (hereinafter "CNBM Forest (Canada)") has disclosed on the record in litigation pending in the United States District Court for the District of Oregon (*see* Argument, Section D, *infra*), that its parent is CNBM Forest Products, Ltd., a wholly-owned subsidiary of China National Building Materials Import and Export Corporation (hereinafter "CNBM

---

[10] CNBM March 13, 2006 Global Offering Prospectus, accessed at http://www.cnbmltd.com/news_report/en/369.pdf.

[11] The "Definitions" section (pp. 17-33) of CNBM's prospectus filing identifies the complete corporate name for each entity appearing on the chart.  Notably, the list of "affiliates" might be longer than the one submitted herewith, given the fact that SASAC oversees and controls 150 large central state-owned enterprises ("SOEs").  *See* FOFCOL, at ¶ 26.  On July 29, 2014, the PSC filed an Omnibus Complaint (XIX) against SASAC [*see* Rec. Doc. Nos. 17905-3, 17906] and is in the processing of serving SASAC with the Complaint pursuant to the Hague Convention.

Import/Export").  *See* Corp. Disclosure Statement [3:14-cv-00746 Rec. Doc. No. 3] (attached hereto as Exhibit "F").  These thirty-seven (37) entities are listed by name on the document entitled "Taishan's Affiliates," which is made an attachment to the proposed Order submitted herewith (thirty-six entities taken from both the CNBM corporate chart and the Corporate Disclosure Statement of CNBM Forest (Canada), in addition to SASAC as the thirty-seventh).

It should be noted that this Court already has engaged in an analysis of both law and fact to establish the liability of certain Taishan "affiliates" under the doctrines of alter ego and/or single business enterprise.[12]  The PSC likewise recognizes that the question whether a given entity identified in the attached listing of corporate entities is or is not an "affiliate" covered by the Court's contempt sanctions, may become a disputed issue and require further discovery. Indeed, the Louisiana doctrine of single business enterprise invites the consideration and weighing of multiple factors in making such a determination.  *Green v. Champion Ins. Co.*, 577 So. 2d 249, 257 (La. App. 1 Cir. 1991).  At an appropriate juncture, motion practice and discovery, perhaps under the MDL caption following transfer of a matter, upon notification that any one of the entities listed on the attached list of corporate entities is engaged in litigation in the federal court system as a consequence of doing business in the United States, could be conducted.

---

[12] "Based upon the Court's above findings of fact, the Court concludes that Taishan, TTP, BNBM, BNBM Group, CNBM and CNBM Group constitute a single business enterprise for purposes of piercing the corporate veil and holding each of these entities liable for the conduct of their affiliated entities.  More specifically, the Court concludes that Class Counsel has satisfied factors 1-8 and 10-18 of the Green eighteen-factor test.  In light of these conclusions as well as this Court's prior conclusions involving the relationship between the Taishan Affiliates, the Court concludes that the Taishan Affiliates may be held liable for the conduct of their affiliated entities."  *See* FOFCOL, at ¶ 50.

This is important, because, as the following discussion makes clear, at least two CNBM entities already have been shown to be conducting both commercial and judicial business in the U.S. through the filing of a federal action in Oregon based upon a contract dispute in that State.

**D.** **As Indicated by Current Litigation in Oregon, Affiliates of Taishan are Not Desisting in the Conduct of Commercial, and Judicial, Business in the U.S.**

Last year, two Taishan Affiliates, CNBM Import/Export and CNBM Forest (Canada), instituted legal action in federal court in Oregon, in an attempt to recover monies they were allegedly owed through a series of business transactions with American companies dating back to 2011 and involving the purchase and handling of logs intended for shipment to China. These affiliates of Taishan sought declaratory relief and damages, via the American legal system, for alleged breach of contract and interference with contractual relations. *See China Nat'l Bldg. Materials Imp. and Exp. Corp., et al. v. Murphy Overseas USA Astoria Forest Products, LLC, et al.*, No. 14-cv-00746 (D. Ore.) (Amended Complaint, at ¶¶ 9-30 & Article V) (attached hereto as Exhibit "G"). In related litigation, these affiliates were sued by the American companies with whom they did business. *See Murphy Overseas USA Astoria Forest Products, LLC v. China Nat'l Bldg. Materials Imp. and Exp. Corp., et al.*, No. 14-cv-00752 (D. Ore.); *Westerlund Log Handlers, LLC, et al. v. China Nat'l Bldg. Materials Imp. and Exp. Corp., et al.*, No. 14-cv-00618 (Clatsop Cty. Cir. Ct. Ore.). Although the Oregon litigation was commenced prior to the entry of this Court's Contempt Order and Injunction, these Taishan entities continued not only to litigate but also to resolve their legal claims in the United States *after* the Contempt Order and Injunction was issued, in violation of the Order. CNBM Import/Export and CNBM Forest (Canada) have admitted that in or about September, 2014 – two months *after* the date of the

17

Contempt Order and Injunction – they entered into a stipulation followed by interrelated contractual settlements of their claims, which provided for cooperation in shipping approximately 5 million board feet of logs and a payment of $2.55 million to these Taishan entities in exchange for a transfer of any security interests they had in certain logging equipment, among other things.  *See* Joint Post-Hearing Memorandum of Clarification [3:14-cv-00746 Rec. Doc. No. 87] (attached hereto as Exhibit "H").  Plaintiffs contend that this conduct evidences a clear violation of the Court's Order enjoining those entities from doing business in the United States.

Upon learning of the events transpiring in Oregon, Plaintiffs promptly sought to intervene in the Oregon litigation for purposes of taking discovery as to the nature and extent of any violation of the Court's Contempt Order and Injunction [*see* Rec. Doc. Nos. 18251, 18271, 18273].  The motion to intervene in that matter was denied by the Magistrate Judge as *untimely*. *See* Transcript of Hearing [3:14-cv-00746 Rec. Doc. No. 88], at p. 41  & Minute Entry [3:14-cv-00746 Rec. Doc. No. 83] (attached hereto, collectively, as Exhibit "I").  Plaintiffs have filed an Objection to that ruling with the Oregon District Court [3:14-cv-00746 Rec. Doc. No. 85].  Plaintiffs also recently filed a Declaratory Judgment action in Oregon for purposes of verifying the violation of this Court's Contempt Order and Injunction and enforcing that order.  *Amorin, et al. v. China Nat'l Bldg. Materials Imp. and Exp. Corp., et al.*, 3:15-cv-00184 (D. Ore.) [Ore. Dec. Action Rec. Doc. No. 1].  Further, Plaintiffs filed a motion with the Judicial Panel on Multidistrict Litigation to transfer that action to this MDL Court pursuant to 28 U.S.C. § 1407.  On February 4, 2015, a Conditional Transfer Order was issued and a briefing schedule was set [JPML MDL 2047 Rec. Doc. No. 431] (attached hereto as Exhibit "J").

18

**E.** **By Registering in Every Federal Court both the Contempt Order and Injunction and the List of Taishan "Affiliates," Proper Notification to this Court and the PSC May Enable Enforcement Actions through Pleadings and/or Discovery**

It is apparent from the recent experience in Oregon and Taishan's history of avoiding the jurisdiction of our courts, that unless the Court and Plaintiffs are notified promptly of pending litigation involving any of the Taishan Affiliates, resulting from their doing business in the United States, there is a substantial risk that the Court's Contempt Order and Injunction may not be enforced and that Plaintiffs will be unable to execute on the *Germano* judgment. Accordingly, the PSC and Plaintiff-Intervenors are seeking an Order from this Court directing that the Contempt Order and Injunction and the list of Taishan Affiliates be registered pursuant to the FRCP and appropriate statutory authority in the Clerk's office of every United States District Court throughout the country.  Importantly, there should be a mechanism for notification of any direct, third-party, or interpleader action either pending or later filed by or against any of the Taishan entities.

Upon being notified that any Taishan Affiliates are conducting judicial business in the United States as a consequence of doing business here, the PSC and Plaintiffs would have an opportunity to seek judicial relief before this Court, perhaps by way of transfer of the matter to this MDL and/or though discovery to determine the existence of assets that may be subject to seizure and whether a violation of the Contempt Order and Injunction has occurred.  As the U.S. Supreme Court recently made clear, the broad discovery opportunity to identify a foreign judgment debtor's assets is to be distinguishable from, and is not dependent on, the ability to seize such assets in execution of the judgment.  *See Republic of Argentina v. NML Capital Ltd.*, 134 S. Ct. 2250, 2257-58 (2014).

19

The litigation between Seven Arts Pictures and Jonesfilm is instructive in this regard. The Jonesfilm litigation began in California with a series of lawsuits and arbitrations. The U.S.D.C. for the Central District of California confirmed an arbitration award and judgment in favor of Jonesfilm and against Peter Hoffman, Seven Arts, and other affiliated entities and alter egos. *See Seven Arts Pictures, Inc. v. Jonesfilm*, 2012 WL 5398439, *1 (E.D. La. Nov. 01, 2012). When the judgment debtors failed to pay the judgment, Jonesfilm filed a motion for contempt against the judgment debtors in California. *Id.* The motion was granted in part, and the Ninth Circuit Court of Appeals affirmed. *Id.*

Through discovery in California, Jonesfilm learned that judgment debtor Hoffman and others owned or controlled several companies in Louisiana. *Id.* at *2. Jonesfilm registered the California contempt judgment in the U.S.D.C. for Eastern District of Louisiana. *Id*. The district court in Louisiana thereafter issued charging orders against the judgment debtors' interests in Louisiana companies and ordered Hoffman and others to produce Schedule K–1s, financial statements, and tax returns and to answer garnishment interrogatories. *Id.* When the judgment debtors and garnishees refused to comply, the Louisiana court held them in contempt and ordered the delivery of the garnished funds. *See id*. The Fifth Circuit affirmed. *Seven Arts Pictures, Inc. v. Jonesfilm*, 512 Fed.Appx. 419 (5th Cir. 2013). When these contemnors continued to fail to comply with the court's order, they were held in further contempt by the district court. 2012 WL 5398439, at *7-8. The Fifth Circuit affirmed again. *Seven Arts Pictures, Inc. v. Jonesfilm*, 538 Fed.Appx. 444 (5th Cir. 2013).

In order to prevent the continued defiance of this Court's lawful orders and mandates, the registration of the Contempt Order and Injunction and the list of Taishan Affiliates and

Subsidiaries in all U.S. District Courts, and notification of any litigation involving these entities in the United States, is therefore warranted.

**IV.**   **CONCLUSION**

If the current contempt and sanctions order of the Court are not enforced, a more dangerous precedent in litigation than this one, one in which thousands of claims are asserted and pending against a foreign manufacturer found subject to the Court's jurisdiction, would be difficult to imagine.  If Taishan is able to immunize itself against the accountability of a valid judgment simply by opting out of the mechanisms for enforcing judgments, mechanisms which both proceed from and form the very foundation of this Court's authority, then the viability of our justice system surely has been placed at risk.  As the Fifth Circuit has suggested, the very existence of the judiciary requires that a judge have real-world power to not only enter, but enforce, the orders rendered in the course of litigation.  *See Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F. 3d 1397, 1407 (5th Cir. 1993), *cert. denied*, 510 U.S. 1073 (1994).

Accordingly, Plaintiff-Intervenors and the PSC pray that the Court enter the proposed Order accompanying their Motion and schedule an expedited hearing to Enforce the Contempt Order and Injunction.

Dated: February 10, 2015                Respectfully Submitted,


                                         BY: /s/ Leonard A. Davis
                                             Russ M. Herman (LA Bar No. 6819)
                                             (on the Brief)
                                             Leonard A. Davis (LA Bar No. 14190)
                                             (on the Brief)
                                             Stephen J. Herman (LA Bar No. 23129)
                                             Herman, Herman & Katz, LLC
                                             820 O'Keefe Avenue
                                             New Orleans, LA 70113
                                             Phone: (504) 581-4892
                                             Fax: (504) 561-6024
                                             ldavis@hhklawfirm.com
                                             *Plaintiffs' Liaison Counsel*
                                             *MDL 2047*


                                             Arnold Levin (on the Brief)
                                             Fred S. Longer (on the Brief)
                                             Sandra L. Duggan (on the Brief)
                                             Matthew Gaughan (on the Brief)
                                             Levin, Fishbein, Sedran & Berman
                                             510 Walnut Street, Suite 500
                                             Philadelphia, PA 19106
                                             Phone: (215) 592-1500
                                             Fax: (215) 592-4663
                                             alevin@lfsblaw.com
                                             *Plaintiffs' Lead Counsel*
                                             *MDL 2047*

Gerald E. Meunier (LA Bar No. 9471)
(on the Brief)
Rachel A. Sternlieb (LA Bar No. 35338)
(on the Brief)
Gainsburgh, Benjamin, David,
  Meunier & Warshauer, LLC
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2800
Phone:  (504) 522-2304
Fax:  (504) 528-9973
gmeunier@gainsben.com
*Co-Counsel for Plaintiffs and PSC Member*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Peter Prieto
Podhurst Orseck, PA
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Bruce William Steckler
Steckler LLP
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Ervin A. Gonzalez
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
  Echsner & Proctor, PA
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

Jerrold Seth Parker
Parker Waichman, LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@attorneys4people.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave., Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W., Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
rlewis@hausfeldllp.com

Anthony D. Irpino
IRPINO LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 10th day of February, 2015.

Respectfully Submitted,

BY: /s/ Leonard A. Davis
Leonard A. Davis
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
ldavis@hhklawfirm.com
Plaintiffs' Liaison Counsel
MDL 2047