# EXHIBIT "B"

Case 2:09-md-02047-EEF-MBN   Document 18302-3   Filed 02/10/15   Page 2 of 12

1

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
****************************************************************

IN RE:  CHINESE-MANUFACTURED         Docket No. 09-MD-2047
DRYWALL PRODUCTS LIABILITY           Section "L"
                                     New Orleans, Louisiana
                                     Thursday, July 17, 2014

****************************************************************


        TRANSCRIPT OF STATUS CONFERENCE AND MOTION PROCEEDINGS
             HEARD BEFORE THE HONORABLE ELDON E. FALLON
                     UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE PLAINTIFF:              HERMAN, HERMAN, KATZ & COTLAR
                                BY:  LEONARD DAVIS, ESQ.
                                820 O'Keefe Avenue
                                New Orleans, LA 70130


                                LEVIN, FISHBEIN, SEDRAN & BERMAN
                                BY:  ARNOLD LEVIN, ESQ.
                                510 Walnut Street, Suite 500
                                Philadelphia, PA 19106


                                BARRIOS, KINGSDORF & CASTEIX
                                BY:  DAWN M. BARRIOS, ESQ.
                                701 Poydras Street, Suite 3650
                                One Shell Square
                                New Orleans, LA 70139


FOR THE DEFENDANT:              FRILOT L.L.C.
                                BY:  KYLE A. SPAULDING, ESQ.
                                Energy Centre - Suite 3700
                                1100 Poydras Street
                                New Orleans, LA 70163-3700
```

|          |    |                                                                          |
|----------|----|--------------------------------------------------------------------------|
| 09:39:18 | 1  | Honor.                                                                   |
| 09:39:18 | 2  | THE COURT: Okay. Thank you.                                              |
| 09:39:20 | 3  | As I mentioned, the other late claim, the other late                     |
| 09:39:24 | 4  | filed claim issues, the parties indicated that they would like to        |
| 09:39:27 | 5  | discuss them and see whether or not we can deal with those in some       |
| 09:39:32 | 6  | fashion. Anything from you, Bob?                                         |
| 09:39:33 | 7  | MR. JOHNSTON: That's right. And we will report to the                    |
| 09:39:36 | 8  | court at the conclusion of that.                                         |
| 09:39:37 | 9  | THE COURT: Good. Okay.                                                   |
| 09:39:41 | 10 | Does that do it for the motions?                                         |
| 09:39:43 | 11 | There's a motion for a default, I haven't received any                   |
| 09:39:49 | 12 | response to it, so I'll grant that motion as being final.                |
| 09:39:55 | 13 | The next item on the agenda is the Judgment Debtor Rule.                 |
| 09:40:03 | 14 | Let me say a word or two just to put that in perspective so that         |
| 09:40:07 | 15 | we're all at least on the same page.                                     |
| 09:40:12 | 16 | By way of background, as we all know because we've lived                 |
| 09:40:17 | 17 | through it now, from 2005 to 2008, a housing boom coincided with the     |
| 09:40:24 | 18 | destruction caused by Hurricanes Katrina and Rita and sharply            |
| 09:40:31 | 19 | increased the demand for construction materials, particularly            |
| 09:40:35 | 20 | drywall, in the Gulf states as well as the eastern seaboard.             |
| 09:40:40 | 21 | In response to this, several Chinese companies                           |
| 09:40:44 | 22 | manufactured considerable amount of the gypsum drywall because the       |
| 09:40:51 | 23 | United States in effect ran out. We're a big drywall producer in         |
| 09:40:55 | 24 | this country, we use it a lot in our construction, but because of        |
| 09:40:59 | 25 | this boom and because of the destruction of the hurricanes, by in        |

```
09:41:06   1   large the drywall manufactured by the United States in effect ran
09:41:11   2   out.  Some Chinese companies, both subsidiary of European entities
09:41:20   3   as well as Chinese created companies, got into the mix, and they
09:41:30   4   felt that this was an opportunity for them, not only to sell drywall
09:41:35   5   but to also help the people who needed drywall.
09:41:38   6            In any event, several Chinese companies manufactured
09:41:42   7   considerable quantities of gypsum wallboard, which became known as
09:41:48   8   Chinese Drywall, and it was shipped to this country.  Homeowners
09:41:53   9   bought them, thousands of millions of sheets of this Chinese
09:41:58  10   manufactured drywall, put into the homes, new construction as well
09:42:05  11   as repaired construction resulting from the hurricanes.
09:42:12  12            The homeowners installed that and they began to have
09:42:17  13   problems with it.  They had problems with the odor, they also had
09:42:24  14   problems with damages for the structural, mechanical, and plumbing
09:42:29  15   systems of the home, and also appliances.  Apparently this drywall
09:42:35  16   contained an excess amount of sulphur.  And the two metals that
09:42:40  17   predominate, probably in all worldwide construction, but certainly
09:42:45  18   in the United States, is metal and copper.  Copper, as we know, is
09:42:48  19   used for ground wires, it's also used for refrigerants and air
09:42:58  20   conditioning, things of that sort.  The other metal that
09:43:03  21   predominates is silver.  Silver is used as contact points for all
09:43:08  22   switches, both manufactured for lights, for burglar alarms, for
09:43:16  23   smoke alarms, for fire alarms, computers, and what have you.  These
09:43:20  24   two metals predominate because they don't rust and so they're able
09:43:30  25   to withstand the use put upon them in the construction.
```

```
09:43:33   1            The unfortunate thing is that the problem with both of
09:43:41   2   them, the Krypton as we would say and those who live with Superman
09:43:46   3   years ago, the Achilles heel of those two metals is sulphur.  When
09:43:53   4   they're exposed to sulphur, they corrode and they cease to function,
09:44:02   5   and so the ground wires don't work, you're concerned about heating
09:44:08   6   and you're concerned about fires.  If a fire occurs the smoke alarms
09:44:11   7   don't go off because they don't work either, refrigerants start to
09:44:15   8   break down and create problems.
09:44:19   9            So as a result of these issues, cases were filed, claims
09:44:26  10   were filed, and the claims multiplied as you see several thousand,
09:44:33  11   20, 30, 40,000 claims were filed in about 26 states and a
09:44:41  12   multi-district judicial panel for multidistrict litigation dubbed
09:44:47  13   this a multi-district case and transferred it to the Eastern
09:44:55  14   District of Louisiana.
09:44:57  15            After a period of discovery, it became clear that there
09:45:02  16   were two groups of manufacturers involved in most of these
09:45:08  17   instances, one group was the Knauf entities.  Knauf was able to
09:45:15  18   purchase inside of China a manufacturing or several manufacturing
09:45:20  19   facilities.  They created a wholly owned subsidiary, Chinese
09:45:26  20   subsidiary to own those facilities, and they produced a substantial
09:45:31  21   amount of drywall.
09:45:32  22            Also the other entities were Chinese-based entities,
09:45:37  23   Taishan and Tianjin, gypsum and plaster board companies, they also
09:45:48  24   produced, they were Chinese-based companies.
09:45:51  25            Knauf recognized their responsibility and waived service
```

```
09:46:00  1   and fielded a group of attorneys who were very conscientious and
09:46:04  2   hard working and they started working on the case.  They took
09:46:11  3   discovery and also we proceeded to trial and dealt with a protocol.
09:46:18  4   And as I mentioned earlier on, this developed into a pilot program
09:46:23  5   and then a remediation program, and then the parties, the Knauf
09:46:30  6   entity agreed to monetize that program, and as a result the cases
09:46:37  7   involving Knauf drywall were settled for a billion dollars or
09:46:43  8   thereabouts, upwards or downwards for the Knauf based drywall.
09:46:51  9            Taishan Gypsum and the other companies affiliated with
09:46:56 10   them took a different approach.  They felt that this court had no
09:47:02 11   jurisdiction over them, they did not wish to accept service.  As a
09:47:09 12   result, the litigants had to involve the international service, the
09:47:19 13   Haig, and serve them under the Haig.  The unfortunate thing is that
09:47:26 14   service under the Haig in a case like this, service of one pleading
09:47:32 15   is six figures generally, it's 100, $125,000 just to serve the
09:47:39 16   individuals.  This presented some problems, but the attorneys for
09:47:44 17   the litigants bit the bullet, so to speak, and served those
09:47:50 18   individuals.
09:47:54 19            They were properly served, they were properly sued, they
09:47:58 20   had notice of the suit, they didn't respond.  I gave them a
09:48:05 21   considerable amount of time, trying to encourage them to respond.
09:48:10 22   They refused to respond.  I then directed the plaintiff attorneys
09:48:16 23   representing the litigants to take a default.  They took a
09:48:20 24   preliminary default.
09:48:22 25            Again, I notified the Taishan entities and invited them
```

```
09:48:26   1   to respond.  They did not respond.  I ordered the plaintiffs to take
09:48:32   2   a default.  The default consumed about a week of this court's time
09:48:39   3   and expense of about $1 million just to take a default in this case
09:48:47   4   with the various experts involved.  A default was taken and I issued
09:48:53   5   a judgment against the defendants.
09:49:00   6          On the last day, the 30th day, Taishan decided to enter
09:49:04   7   the proceeding.  They entered the proceeding at that point and
09:49:08   8   presented themselves to the Fifth Circuit questioning jurisdiction.
09:49:12   9   The Fifth Circuit looked at the record and indicated that that
09:49:16  10   wasn't raised before, so they remanded the case back to this court
09:49:21  11   for the purpose of dealing with the jurisdictional aspects of the
09:49:25  12   case.  The jurisdiction involved whether or not Taishan and its
09:49:33  13   entities were present, and if so, what was the scope and the breadth
09:49:38  14   of their presence.
09:49:41  15          I felt that that required some discovery.  I directed the
09:49:45  16   parties to proceed with discovery.  And the long and short of it,
09:49:53  17   the first attempt at discovery presented some logistical problems,
09:49:59  18   we had too many translators involved, and I found page after page of
09:50:07  19   interesting discussion but mostly by the translators arguing as to
09:50:13  20   what the word was and what the word wasn't.  So we had to take the
09:50:18  21   discovery again, and I saw no alternative but for this court to go
09:50:23  22   over to China to participate in the discovery.  We spent five days
09:50:30  23   in a dungeon, the basement of a building, and the discovery
09:50:39  24   proceeded eight, nine hours a day.  The discovery went reasonably
09:50:44  25   well, objections were made, I ruled on them, and competent counsel
```

```
09:50:49   1   for both sides proceeded and the discovery was finalized and
09:50:55   2   completed.
09:50:56   3           I looked over the discovery and the record, and I wrote
09:51:01   4   an opinion feeling that I had jurisdiction and I expressed myself as
09:51:07   5   to the reasons.  Taishan appealed those judgments.  At that point I
09:51:17   6   had four cases that were before me that I ruled on and I felt that I
09:51:22   7   had jurisdiction.  They appealed them and did a good job on the
09:51:25   8   appeal, they wrote, Taishan, excellent briefs because they were
09:51:30   9   represented by excellent counsel and they presented a good argument
09:51:36  10   to the circuit.  So did the plaintiff attorneys.
09:51:43  11           The circuit in two opinions, two different panels of
09:51:48  12   judges expressed themselves and affirmed this court's judgment.  The
09:51:56  13   cases then were finalized, time for writs to the United States
09:52:05  14   Supreme Court, at least in the *Germano* case, is now expired and the
09:52:09  15   plaintiffs felt that it was necessary for them to take action to
09:52:14  16   execute on the judgment.  As is done in matters of this sort, they
09:52:20  17   filed for a Judgment Debtor Rule requiring the defendant Taishan and
09:52:29  18   its affiliates to be present and the court ordered them to be
09:52:36  19   present and the Judgment Debtor Rule was set for today.
09:52:40  20           So I'll turn to that rule at this time.
09:52:47  21           MR. LEVIN:  Good morning again, your Honor.  Mr. Meunier
09:52:52  22   will present our position, but I just want to state for the record
09:52:59  23   and counsel for Taishan is here, that Taishan is aware of these
09:53:03  24   procedures and was made aware of these proceedings by its counsel.
09:53:09  25   It's seven minutes to ten and since the original notice said
```

```
09:53:14  1   10 o'clock, at some point in time I would like to have the court ask
09:53:20  2   whether anybody representing Taishan, other than Mr. Owen, is
09:53:24  3   present in the courtroom or any of their principles are present in
09:53:27  4   the courtroom.
09:53:27  5           THE COURT:  Sure, I'll do that now.  Anybody from Taishan
09:53:31  6   defendants?
09:53:32  7           Let me ask counsel for Taishan at this point.  I received
09:53:40  8   a notice or a pleading from Taishan's counsel indicating the
09:53:47  9   following:  Said counsel has notified Taishan of the outcome of the
09:53:52 10   appeal.  Counsel has also notified Taishan of the court's directive
09:53:58 11   to appear at court on July 17th, 2014, for a judgment debtor
09:54:07 12   examination, as well as notified Taishan of the bill of costs filed
09:54:12 13   by the PSC on July 2nd and the appropriate deadlines associated with
09:54:20 14   objecting to the bill of costs.  I'm quoting from counsel's memo.
09:54:27 15           Taishan has notified counsel that it does not intend to
09:54:31 16   participate in the judgment debtor exam or any decision on the bill
09:54:35 17   of costs.  I received that from counsel, Mr. Thomas Owen who is
09:54:44 18   representing Taishan, along with Joe Cyr and Frank Spano.
09:54:53 19           MR. OWEN:  Tom Owen, counsel of record for Taishan Gypsum.
09:54:57 20   Those statements, we did file in our motion to withdraw that was
09:55:02 21   filed on Monday which related to the *Germano* case, and those are
09:55:07 22   correct statements.  National counsel, which is Hogan Lovells, in
09:55:11 23   this matter notified Taishan Gypsum of the motion for a judgment
09:55:16 24   debtor exam, as well as the court's order setting it for today,
09:55:21 25   July 17th, 2014, at 10:00 A.M.
```

```
09:55:25   1            National counsel received communications from Taishan
09:55:30   2   Gypsum that it would not attend or participate in the judgment
09:55:34   3   debtor examination.  To my knowledge, no representative of Taishan
09:55:44   4   Gypsum is planning to appear today.  And I have not been provided
09:55:48   5   with any records to provide to the PSC to satisfy anything that was
09:55:53   6   requested pursuant to that judgment debtor exam.
09:55:57   7            Also, as the court has said, we received a letter on
09:56:01   8   July 13th from Taishan Gypsum informing us that national counsel
09:56:07   9   Hogan Lovells, as well as my firm Stanley Reuter, has been
09:56:11  10   discharged as its counsel with regard to not only the *Germano*
09:56:15  11   proceedings but with respect to all of the proceedings, both in
09:56:21  12   federal and state court, which led to the motion to withdraw that
09:56:26  13   you quoted from earlier today.
09:56:28  14            THE COURT:  I just received the motion a day or two ago
09:56:31  15   and I just received the response from the motion, I haven't had an
09:56:37  16   opportunity to invite a response to the plaintiffs' position.  I'll
09:56:42  17   move this motion, I'll move it to another time and give you both an
09:56:48  18   opportunity to respond to the motion and also present oral argument
09:56:54  19   on it.  The motion presents some issues as to when you were
09:56:59  20   discharged, why you were discharged, who discharged you, whether
09:57:04  21   somebody else is going to be representing them now, and if so, who
09:57:13  22   and what.  But I'll deal with that.
09:57:18  23            Presently you're attorney of record and I appreciate you
09:57:21  24   being here.  And as I mentioned before, both your firm as well as
09:57:24  25   the national firm has represented this entity vigorously,
```

competently and professionally, and from that standpoint you have the thanks and appreciation of the court. It's unfortunate that your client feels that they can't abide by court orders. I take that as an offense and I have to act on it. But I do so not in any disrespect to you or your counsel because you've done everything possible competently and you've competently represented them. And if they don't appreciate it, you need to know the court appreciates it.

MR. OWEN: Thank you and I appreciate that, your Honor.

THE COURT: I note that they not only failed to appear but that they refused to appear. I think that that is contemptuous, I feel that they're in contempt of court, and they are in contempt of court criminally as well as civilly. And so for failure and refusal to participate in these proceedings, the court holds these defendants, Taishan and the Taishan entities, in contempt both civilly and criminally. As a penalty for this contempt, the defendants are condemned to pay $15,000 attorney's fees to plaintiffs' counsel and $40,000 penalties.

In addition, the court hereby enjoins these defendants and any of their affiliates and subsidiaries from doing any business in the United States until or unless they participate in this process. And if they violate this injunction, they will owe 25 percent of the profits earned by the company or its affiliates who violate it for the year of the violation.

I'm also going to send this document to the Secretary of

```
09:59:41  1   Commerce and the Chair of the Senate Committee on Commerce, as well
09:59:48  2   as the United States Attorney General so that they can be aware of
09:59:52  3   the seriousness of this situation.
09:59:55  4              A company, a foreign company who comes into our country
09:59:58  5   and does business in our country and then takes the opportunity to
10:00:03  6   appeal the opinion of the court, participate in the argument,
10:00:08  7   participate in the briefs and because they lose the appeal decide
10:00:13  8   that they're going to thumb their nose at the court and not follow
10:00:16  9   the court's orders, I think that that's clearly contempt and
10:00:23 10   contempt in the presence of the court.  So I will issue an order to
10:00:26 11   that effect.
10:00:27 12              Thank you very much.  Anything further from anyone?
10:00:29 13              MR. LEVIN:  No, sir.
10:00:31 14              THE COURT:  The court will stand in recess.
10:00:33 15              THE DEPUTY CLERK:  All rise.
10:00:34 16         (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)
         17
         18                              * * * * *
         19                         REPORTER'S CERTIFICATE
         20
         21        I, Karen A. Ibos, CCR, Official Court Reporter, United
              States District Court, Eastern District of Louisiana, do hereby
              certify that the foregoing is a true and correct transcript, to the
         22   best of my ability and understanding, from the record of the
              proceedings in the above-entitled and numbered matter.
         23
         24                           _____
                                      Karen A. Ibos, CCR, RPR, CRR, RMR
         25                           Official Court Reporter
```