**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | : | |
| DRYWALL PRODUCTS LIABILITY | : | MDL NO.: 2047 |
| LITIGATION | : | |
| | : | SECTION: L |
| **This Document Relates To:** | : | JUDGE FALLON |
| | : | MAG. JUDGE WILKINSON |
| **Braxton H. Collins, et al. vs. Bass Homes, Inc.,** | : | |
| **et al.; S.D. Mississippi, C.A. No. 1:13-00297** | : | **Case No.: 13-6652** |

_____

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | : | |
| DRYWALL PRODUCTS LIABILITY | : | MDL NO.: 2047 |
| LITIGATION | : | |
| | : | SECTION: L |
| **This Document Relates To:** | : | JUDGE FALLON |
| | : | MAG. JUDGE WILKINSON |
| **Jason S. Herrington, et al. vs. Bass Homes, Inc.,** | : | |
| **et al.; S.D. Mississippi, C.A. No. 1:13-00297** | : | **Case No.: 13-6653** |

_____

## RESPONSE TO MOTION TO DISMISS

COMES NOW, Ace Home Center, Inc. ("AHC"), a defendant and third-party plaintiff in the above-styled actions, and responds to Pensacola Stevedore Company, Inc. ("PSC") and Pate Stevedore Company, Inc.'s ("Pate") Motion to Dismiss as follows:

### I. Introduction

Third Party Defendants Pate and PSC have moved to dismiss Third Party Plaintiff AHC's third party claims on jurisdictional grounds. As discussed below, the exercise of jurisdiction in this instance comports with both the tort prong of the Mississippi long arm statute and the Due Process Clause. Furthermore, this Court's exercise of jurisdiction over Pate and PSC does not

offend traditional notions of fair play and substantial justice. Thus, Pate and PSC's Motion to Dismiss is due to be denied.

## II. Facts

Plaintiffs have filed this product liability lawsuit against AHC based on the sale of allegedly defective Chinese drywall ("CDW"). The subject CDW was salvaged drywall from the wreck of the M/V Sanko Ralley ship. The CDW was procured by the insurance carrier for the M/V Sank Rally, FFIC, and resold to PSC and/or Pate, who then placed the product into the "stream of commerce" and sold it to multiple purchasers, including AHC, an Alabama corporation. Another one of the many entities to which Pate and/or PSC sold CDW was Sharkey Sales, LLC, a Mississippi corporation.

The CDW was shipped from Pate and PSC's principal place of business in Pensacola to multiple states, including Alabama, Mississippi, and North Carolina. At least twenty-one (21) truckloads of CDW was shipped from Pate/PSC to City Salvage in Laurel, Mississippi. Bills of lading evidencing those shipments to Mississippi were signed by Pate representatives. (Exhibit A, City Salvage/TriStarNPS0039-0059). On some of these bills of lading, Pate is listed as the "Shipper." (Exhibit A, Salvage/TriStarNPS0039-0041). Indeed, it was Pate/PSC's practice to load the shipments of CDW onto the trucks prior to same being shipped out. (Exhibit B, Deposition of Mike Pate, p. 31-32). Pate/PSC's corporate representative, Mike Pate, acknowledged that when he received the bill of lading upon loading the truck, same would inform his company where the CDW was to be shipped. (Exhibit B, Deposition of Mike Pate, p. 32).

### III.  Argument

**A.  Standard of Review**

When a non-resident defendant moves to dismiss for lack of personal jurisdiction, plaintiff bears the burden of demonstrating a district court's jurisdiction over the defendant seeking dismissal.  *Gardemale v. Westin Hotel Company*, 186 F.3d 588, 592 (5th Cir. 1999).  The Plaintiff satisfies this burden by presenting a *prima facie* case that jurisdiction is proper.  *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006).  In deciding whether a *prima facie* case has been made, "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor."  *Gardemale,* 186 F.3d at 592.

**B.  Personal Jurisdiction in Mississippi**

"A federal court sitting in diversity may exercise personal jurisdiction only to the extent permitted a state court under state law."  *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006). "The court may only exercise jurisdiction if: '(1) the state's long arm statute applies, as interpreted by the state's courts, and (2) if due process is satisfied under the 14th Amendment to the Federal Constitution.'"  *Paz*, 445 F.3d at 812.

*1.  The Long Arm Statute*

Mississippi's long arm statute is set forth at Mississippi Code Annotated §13-3-57. Under the long arm statute, courts of this State may exercise personal jurisdiction over a non-resident defendant if the defendant has committed "a tort in whole or in part in this state against a resident or non-resident of this state." Miss. Code Ann. §13-3-57; and *Falco Lime, Inc. v. Tide Towing Company*, 779 F.Supp. 58, 61 (N.D. Miss. 1991).

"Under the tort prong of the Mississippi long-arm statute, personal jurisdiction is proper if any element of the tort (or any part of any element) takes place in Mississippi." *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. Miss. 2006). The Mississippi Supreme Court holds that a tort is complete when the injury occurs.  *Smith v. Temco, Inc.*, 252 So.2d 212, 216 (Miss. 1971) Further, if the injury occurs in Mississippi, then the tort is committed, at least in part, in this State, thereby conferring personal jurisdiction over a non-resident defendant. *Smith*, 252 So.2d at 216; *see also*, *Internet Doorway, Inc. v. Parks*, 138 F.Supp.2d 773, 776 (S.D. Miss. 2001).  Put another way, even if the tortious conduct occurs out of state but causes an injury within Mississippi, a non-resident defendant will be subject to personal jurisdiction under the Mississippi long arm statute.  *Wilkinson v. Merchantile Nat'l Bank at Dallas*, 529 So.2d 616, 618-19 (Miss. 1988); and *Willow Creek Exploration Ltd. v. Tadlock Pipe and Equip., Inc.*, 186 F.Supp. 2d 675, 683 (S.D. Miss. 2002).

Pate argues, "To the extent that any of the claims for indemnity rest upon that tortious conduct, the actual injury to Ace Home Center has arisen or will arise in Alabama, where it has its principal place of business and where any economic losses from a failure to indemnify will be incurred." However, this argument is at odds with *Jobe v. ATR Mktg.*, 87 F.3d 751, 753 (5th Cir. Miss. 1996), in which the court stated, "[i]n determining where the injury occurred for jurisdictional purposes, actual injury must be distinguished from its resultant consequences, such as pain and suffering, economic effects or other collateral consequences that often stem from the actual injury." The court noted that "The term 'injury' commonly denotes the invasion of any legally protected interest of another[,]" while, in contrast, "the term 'damage' is understood to mean the harm, detriment or loss sustained by reason of an injury." *Id.* at FN2 (citing *Restatement (Second) of Torts*, § 7 (1965); *Black's Law Dictionary* 351 (5th Ed. 1979)). The Fifth

Circuit Court of Appeals further explained in *Estate of Portnoy* that "a tort occurs when and where the actual injury or accident takes place, and not at the place of the economic consequences of that injury." *Estate of Portnoy v. Cessna Aircraft Co.*, 730 F.2d 286, 290 (5th Cir. Miss. 1984).

In this instance, the injury, or invasion of a legally protected interest, unquestionably occurred in Mississippi. The CDW sold by Pate to AHC was allegedly used to build homes in Mississippi. The Plaintiffs have alleged that they have incurred damages in Mississippi as a result of the use of the CDW in Mississippi. The Plaintiffs subsequently sued AHC in Mississippi. AHC has been forced to retain counsel licensed to practice in Mississippi to defend those claims. The mere fact that AHC is located in Alabama is irrelevant to any analysis of where the injury occurred. Pate's argument that the economic loss occurs in Alabama because this is the location of AHC has no bearing on the requisite analysis because these "economic effects" must be distinguished from the actual injury. *See Jobe v. ATR Mktg., supra* at 754.

The cases cited by Pate are easily distinguishable from the facts of this case, primarily because they did not involve a legal claim for damages against the plaintiff as the primary injury. In *Unified Brands, Inc. v. Teders*, 868 F. Supp. 2d 572, 579 (S.D. Miss. 2012), the Court found that the tort was committed at least in part in Mississippi because of the nature of the claim for tortious interference with business relations. More specifically the court noted that

> Although AEC and Holder correctly argue that consequences stemming from an actual tort injury do not confer personal jurisdiction at the site or sites where such consequences happen to occur, the Court finds that the loss and damages alleged by Unified in this case are not mere consequences of a tort having occurred elsewhere. With a claim of tortious interference with business relationship, the Mississippi Supreme Court has recognized that loss and damages include the injured party's expectancies of future contractual relationships and the opportunity of obtaining customers.

*Id.* Notably, the court only ruled that the tort had occurred, at least in part, in Mississippi. Moreover, the Court's analysis was grounded in the distinction of a tortious interference with business relations claim from other claims. Specifically the court cited *MBF Corp. v. Century Business Communications*, 663 So. 2d 595, 599-600 (Miss. 1995), noting that, in that case, the plaintiff had made a prima facie case on the issue of damages with respect to a tortious interference of business relationship claim by showing that its profits and customer trade had sharply diminished, that it had incurred a decline in net income, and that the defendant's actions had interfered with its entire business and its customer base. *Id.* Similarly, the other cases cited by Pate in support of its claim that the place of injury for a claim of indemnity is the place where the plaintiff is located, all involve claims of tortious interference of a business relationship—the one exception being the case of *First Trust Nat'l Ass'n v. Jones*, 996 F. Supp. 585 (S.D. Miss. 1998).

In *First Trust Nat'l*, a legal malpractice action, a law firm issued an opinion letter regarding mortgage on collateral in Mississippi. The Court explained that the case involved a financial institution suing a New Orleans based law firm in the Southern District of Mississippi for an opinion issued by the law firm on a ship mortgage prepared by Texas attorneys to a New York investment banking house and delivered to counsel for the banking house in Dallas. The Court noted that the injury was not suffered in Mississippi solely because the collateral was located in Mississippi. The Court further noted that it was not clear "that even the consequences, economic or otherwise, occurred in Mississippi." *Id.* at 589.

This case is clearly distinguishable from *First Trust Nat'l*. Here, the injury most certainly occurred in Mississippi when a Mississippi resident brought suit against AHC. If AHC had simply sold CDW which was eventually used by a Mississippi resident, and that resident had

never brought a claim against AHC, there would be no injury or damage. That is not the case in this instance. The injury for which AHC filed its third party claims, is the initial claim brought against AHC by Mississippi residents. None of the cases cited by Plaintiff involve a similar injury or factual scenario.

2. *Due Process Clause*

In addition to satisfaction of the tort prong within the Mississippi long arm statute, the Due Process Clause of the 14th Amendment also must be satisfied to establish jurisdiction. The Due Process Clause "requires satisfaction of a two prong test in order for a federal court to properly exercise jurisdiction: (1) the non-resident must have minimum contacts within the forum State, and (2) subjecting the non-resident to jurisdiction must be consistent with 'traditional notions of fair play and substantial justice.'" *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004), citing, *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L.Ed. 95 (1945). The "minimum contacts" prong is further sub-divided into contacts that give rise to specific jurisdiction and those that give rise to general jurisdiction. Specific jurisdiction arises when "(1) the defendant purposely directed its activities toward the forum State or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendant's contact with the forum State." *Freudensprung*, 379 F.3d at 343, citin*g, Helicopteros Nacionales Day Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S. Ct. 1868, 80 L.Ed. 2d 404 (1984). "When a cause of action does not arise out a foreign defendant's purposeful contacts with the forum, however, a court may exercise general jurisdiction when the defendant has engaged in 'continuous and systematic contacts' in the forum." *Id*. It has been recognized that even though the concepts of specific and general jurisdiction are separate, both concepts "will inevitably borrow from one another in

deciphering the intent of the defendant's actions as well as the foreseeability that the defendant might be haled into court in this State". *Tellus Operating Group, LLC v. R&D Pipe Co.*, 377 F. Supp.2d 604, 609 (S.D. Miss. 2005).

"Minimum contacts" is satisfied by actions, or even a single act, by which a non-resident defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183 (1985). "The non residents 'purposeful availment' must be such that the defendant "should reasonably anticipate being haled into court' in the forum State." *Ruston Gas Turbines, Inc. v. Donaldson Company, Inc.*, 9 F.3d 415, 419 (5th Cir. 1993).

In this case, application of personal jurisdiction necessitates a "stream of commerce" analysis. "The Supreme Court has stated that a defendant's placing of its product into the stream of commerce with the knowledge that the product will be used in the forum State is enough to constitute minimum contacts." *Ruston*, 9 F.3d at 419, citing, *World-Wide Volkswagen Corp. v. Woodsen*, 444 U.S. 286, 298, 100 S.Ct. 559, 567 (1980). "The Fifth Circuit is among the circuits that have interpreted *World-Wide Volkswagen* to hold that 'mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made it's way into the forum State while still in the stream of commerce." *Ruston*, 9 F.3d at 419.

Following the United States Supreme Court's pronouncement in *World-Wide Volkswagen*, a plurality of that Court advocated for a "stream of commerce plus" theory. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112, 107 S. Ct. 1026, 1032 (1987). However, "[i]n the years after *Asahi*, the Fifth Circuit has continued to follow the original (stream of commerce) theory established by the majority opinion of *World-Wide Volkswagen*, and has rejected the (stream of commerce plus) theory advocated by the *Asahi* plurality." *Ruston*, 9 F.3d

at 420.  As one court held, "until the U.S. Supreme Court speaks with the majority, the law of this Circuit remains that the plaintiff must only make a *prima facie* showing that 'a defendant placed their product into the stream of commerce with the knowledge that the product would be used in the forum State.' *Tellus Operating Group, LLC v. R&D Pipe Co.*, 377 F. Supp.2d 604 at 610; citing, *Ruston Gas Turbines, Inc.,* 9 F.3d at 419.

In *Ruston*, a Texas corporation sued a defendant for breach of contract, breach of warranty, and under strict products liability law in connection with the manufacturing and sale of two gas turbine engine systems.  *Ruston*, 9 F.3d at 417.  The defendant was a non-resident corporation with its principle place of business in Minnesota.  *Ruston*, 9 F.3d at 419.  The defendant in *Ruston* filed a Motion to Dismiss for Lack of Personal Jurisdiction and submitted an affidavit of its president stating that it was a non-resident corporation, did not conduct business in Texas, did not maintain a sales representative or manufacturer representative in Texas, had not recruited employees in Texas, had not designated a registered agent in Texas, and had not contracted by mail with any Texas resident.  *Id.*  The Fifth Circuit determined that based on 211 shipments to Texas over a course of 15 years and the fact that defendant not only could have foreseen but knew its products would be utilized in Texas, minimum contacts had been satisfied through the stream of commerce theory.  *Id* at 420-21.

Here, Pate/PSC sold CDW to Alabama companies and loaded shipments of CDW for destinations in Mississippi. (Exhibt A, City Salvage/TriStarNPS0039-0059). Pate and PSC also sold CDW to Mississippi companies, and that CDW was loaded by Pate/PSC and shipped to Mississippi and Alabama. (Exhibit C, PSC000326-000330). What is obvious is that Pate and PSC were selling CDW to anyone and everyone, and loading that CDW on trucks to be sent to Alabama, Mississippi, and North Carolina. Indeed AHC has obtained bills of lading received in

response to subpoenas issued to City Salvage in Mississippi showing that twenty one (21) truckloads of CDW were shipped from Pate's offices in Pensacola to Laurel, Mississippi. These bills of lading clearly bear the signatures of Pate's representatives next to "Pate Stevedoring Company." In many instances, the bills of lading list "Pate Stevedoring Company" as shipper. Pate and PSC simply cannot deny that the CDW was being used in Mississippi and that Pate had knowledge that the CDW sold by Pate was being shipped to Mississippi for such use. Additionally, Pate and PSC sold CDW directly to a Mississippi based company, Sharkey Sales, LLC. (Exhibit C, PSC000326-000330).

Moreover, PSC has produced Bills of Lading from sales to MAGA Material Supply, Inc., which clearly state that CDW was to be shipped from Pensacola Stevedore to Destination: 200 East 13th Street, Laurel, MS 39440. (Exhibit C, PSC000256; PSC000260; PSC000262; PSC000264; PSC000266). These bills of lading indicate that 7 Units of 476 pieces of sheetrock were to be picked up from Pate on five different occasions. It was Pate/PSC's practice to load the shipments of CDW onto the trucks prior to same being shipped out. (Exhibit B, Deposition of Mike Pate, p. 31-32). Pate/PSC's corporate representative, Mike Pate, acknowledged that when he received the bill of lading upon loading the truck, same would inform his company where the CDW was to be shipped. (Exhibit B, Deposition of Mike Pate, p. 32).

In the case of *Tellus Operating Group, LLC v. R&D Pipe Co.*, 377 F. Supp.2d 604 (S.D. Miss. 2005), the plaintiffs brought a product liability action against two defendants for a defective casing utilized in an oil well. *Tellus*, 377 F. Supp.2d at 606. The plaintiff in *Tellus* sued both the manufacturer and the distributor of the defective casing in Mississippi. *Id*. Both defendants moved to dismiss for lack of personal jurisdiction asserting that they were Texas corporations who maintained no "offices, employees, agents, sales representatives, telephone

listings, or bank accounts in the state of Mississippi." *Id*.  In determining that it had jurisdiction in Mississippi, the Court stated that the manufacturer placed its product into the stream of commerce with knowledge that it would wind up in Mississippi.  *Id*.  In addition, it noted that the manufacturer made absolutely no attempt to limit the resale destination of products placed in the stream of commerce.  *Id*.  Such is the case here.  That is, Pate and PSC placed their product into the stream of commerce without limiting any resale and with the knowledge that its products were being utilized in Mississippi as evidenced by bills of lading showing twenty five (25) truckloads of CDW loaded by Pate/PSC and shipped to Mississippi with Pate/PSC's knowledge. It simply cannot be argued by Pate/PSC that in loading 25 truckloads of CDW for shipment to the Mississippi coast, while also selling CDW to Alabama coastal businesses located in close proximity to the Mississippi coast, Pate/PSC could not have reasonably anticipated being haled into court in Mississippi.

In rendering its decision, the *Tellus* Court relied in part on the Fifth Circuit's holding regarding the stream of commerce theory in *Oswalt v. Scripto, Inc.*, 616 F.2d 191 (5th Cir. 1980). In *Oswalt*, the defendant was a manufacturer from Japan who sold cigarette lighters to a distributor in the United States, one of which malfunctioned in Texas.  *Oswalt*, 616 F.2d at 193. In selling the lighters nationally, and by not limiting its sales to any particular state, the Court concluded that the defendant had every reason to believe that its lighters would be sold in Texas. *Id* at 200.  Therefore, the Texas Court had personal jurisdiction over the Japanese corporation pursuant to the stream of commerce theory.

In the case of *Breedlove v. Beech Aircraft Corp.*, a Mississippi District Court found that personal jurisdiction was applicable in a case against an aircraft propeller manufacturer whose propeller malfunctioned in Arkansas.  334 F. Supp. 1361, 1363 (N.D. Miss. 1971). In *Breedlove*,

the Court noted that manufacturer did not do business in Mississippi, had no legal or financial relationships in Mississippi, and did not design or manufacture the propeller in Mississippi. *Breedlove*, 334 F. Supp. at 1362-63. Even so, the Court concluded that the manufacturer, by placing its product in the stream of commerce, subjected itself to jurisdiction pursuant to the Mississippi long arm statute. *Id* at 1365. Likewise, in *Jones v. Tread Rubber Corporation*, the District Court found that the manufacturer of a defective product subjected itself to Mississippi jurisdiction by placing that product into the stream of commerce. 199 F.Supp.2d 539 (S.D. Miss. 2002). The *Jones* Court held that knowledge of the use of a product in a particular state constituted the foreseeability or awareness that withstands constitutional scrutiny. *Id.* at 547-548. Again, Pate and PSC were well aware that the product it was selling was being sold in Mississippi. This is evidenced by the simple fact of bills of lading bearing Pate's name and signatures of its representatives evidencing shipments from Pate's place of business to Laurel, Mississippi. This is further evidenced by the fact that Pate/PSC were selling CDW to anyone and everyone along the Alabama and Mississippi coast.

Other cases are instructive. In *Smith v. Temco, Inc.,* the Mississippi Supreme Court held that a non-resident manufacturer of a defective water heater who placed an unsafe product into the stream of commerce for the purpose of distribution and sale to consumers in other states even if its specific intent was not for sale in Mississippi, may be subject to *in personam* jurisdiction claims brought by consumers injured by the unsafe condition. *Smith v. Temco, Inc.*, 252 So.2d 212, 216 (Miss. 1971). Likewise, the Fifth Circuit held that a non-resident distributor of beryllium may be held liable for damages caused by that beryllium in Mississippi. *Paz*, 445 F.3d at 809, 813. This is so even though the defendant distributor made no sales to anyone in Mississippi. *Id.* at 813. The Fifth Circuit concluded that the defendant knew that its product

would ultimately be used in Mississippi. *Id.* Therefore, the plaintiff had met his burden presenting a *prima facie* case for minimum contacts in Mississippi.  *Id.*

As recently noted by the Fifth Circuit, when subjecting a defendant to personal jurisdiction under the stream of commerce theory, Justice Brennan's analysis should be considered:

> The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacturer to distribution to retail sale.  As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise.  Nor would the litigation present a burden for which there is not corresponding benefit.  A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity.  These benefits accrue regardless of whether that participant directly conducts business in the forum State or engages in additional conduct directed toward the State.

*Choice Healthcare, Inc. v. Kaiser Foundation Health Plan of Colo.,* 615 F.3d 364 at 373 (5th Cir. 2010), citing, *Asahi*, 480 U.S. at 117, 107 S.Ct. 1026.

## C.  Fair Play and Substantial Justice

Even if minimum contacts exist, the exercise of personal jurisdiction over a non-resident defendant will fail to satisfy due process requirements if the assertion of jurisdictions offends "traditional notions of fair play and substantial justice."  *Ruston,* 9 F.3d at 420; citing, *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158.  However, "[o]nce a plaintiff has established minimum contacts, the burden shifts to the defendant to show the assertion of jurisdiction would be unfair...[, and in order to] show that an exercise of jurisdiction is unreasonable once minimum contacts are established, the defendant must make a 'compelling case against it."  *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).  In determining this fundamental fairness issue, a court should examine (1) the defendant's burden;

(2) the forum State's interest; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversy; and (5) the State's shared interest in furthering fundamental social policies. *Id.*

Pate/PSC take the position that no expectation existed that this drywall would travel to Mississippi, and that notions of fair play and substantial justice are violated by the assertion of jurisdiction over them in Mississippi. The records indicate that Pate/PSC was selling this product to companies based in Mississippi and Alabama. The records show that Pate/PSC sold to Mississippi companies which distributed CDW in Alabama; and sold to Alabama companies which distributed CDW in Mississippi. The bills of lading cited as exhibits to this Response clearly show that Pate had knowledge that CDW was being shipped to Mississippi. AHC was located in Robertsdale, Alabama, less than 50 miles from the Mississippi-Alabama border, and less than 20 miles from the Alabama-Florida border. Pate/PSC's argument is that it had no expectation that the CDW sold by AHC could be sold to Mississippi companies, despite the fact that Pate itself was selling CDW to Mississippi companies, and had signed for shipments of CDW to Mississippi. This argument is unsupported by the record.

Pate/PSC further take the position that AHC's interest are "slight" in the assertion of jurisdiction over the third-party claims for indemnity. This is incorrect. AHC has been sued by the Mississippi plaintiffs and much of the discovery necessary in this Mississippi action will be relevant to the indemnity claim. Additionally, much of the discovery relevant to the indemnity claim will be pertinent for purposes of the Mississippi action. The inclusion of both the Plaintiffs' claims and the indemnity claims in this litigation would be the most efficient and expedient manner in which to resolve these disputes.

## IV. Conclusion

For all of the above reasons, Ace Home Center, Inc., respectfully requests that the Third-Party Defendants' Motion to Dismiss be denied.

Respectfully submitted,

/ s / *Danny J. Collier, Jr.*

_____

Danny J. Collier, Jr., Esq.
Attorney for Ace Home Center, Inc.

**OF COUNSEL:**

LUTHER, COLLIER, HODGES & CASH LLP
Post Office Box 1002
Mobile, Alabama 36633
(251) 694-9393 Office
(251) 694-9392 Fax
dcollier@lchclaw.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand-delivery upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this **16th day** of **February, 2015**.

Stephen W. Mullins, Esq.
Luckey & Mullins, PLLC
Post Office Box 990
Ocean Springs, MS 39566
smullins@luckeyandmullins.com

David C. Coons, Esq.
Christopher A. D'Amour, Esq.
Adams and Reese LLP
4500 One Shell Square
New Orleans, LA 70139
david.coons@arlaw.com
chris.damour@arlaw.com

Heather M. Houston, Esq.
Caroline Pryor, Esq.
Carr Allison
6251 Monroe Street
Suite 200
Daphne, Alabama 36526
hhouston@carrallison.com
cpryor@carrallison.com

Gary J. Russo, Esq.
Jones Walker LLP
600 Jefferson Street
Suite 1600
Lafayette, LA 70501
grusso@joneswalker.com

Joe Cyr, Esq.
Frank T. Spano, Esq.
Courtney L. Colligan, Esq.
Hogan Lovells US LLP
875 Third Avenue
New York, New York 10022
Joe.cyr@hoganlovells.com
Frank.spano@hoganlovells.com
Courtney.colligan@hoganlovells.com

S. Wesley Pipes, Esq.
William W. Watts III
Pipes Hudson & Watts, LLP
Post Office Box 989
Mobile, Alabama 36601
wesley@pipeshudsonwatts.com
bill@pipeshudsonwatts.com

Richard C. Stanley, Esq.
Thomas P. Owen, Jr., Esq.
Stanley, Reuter, Ross, Thornton & Alford, LLC
909 Poydras Street
Suite 2500
New Orleans, Louisiana 70112
rcs@stanleyreuter.com
tpo@stanleyreuter.com

/ s / *Danny J. Collier, Jr.*
OF COUNSEL