UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * | MDL No. 2047 |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO | * | JUDGE FALLON |
| | * | MAG. JUDGE WILKINSON |
| Braxton H. Collins, et al., vs. Bass Homes, Inc., Et al.; S.D. Mississippi, C.A. No. 1:13-00297 | * * | **Case No.: 13-6652** |

---

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * | MDL No. 2047 |
| | * | SECTION L |
| THIS DOCUMENT RELATES TO | * | JUDGE FALLON |
| | * | MAG. JUDGE WILKINSON |
| Jason S. Herrington, et al., vs. Bass Homes, Inc., Et al.; S.D. Mississippi, C.A. No. 1:13-00297 | * * | **Case No.: 13-6653** |

**STEVEDORE DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR THEIR MOTIONS TO DISMISS THE CLAIMS OF PLAINTIFFS AND ACE HOME CENTER FOR LACK OF PERSONAL JURISDICTION**

Come now the Defendants Pensacola Stevedore Company, Inc. ("Pensacola Stevedore") and Pate Stevedore Company, Inc. ("Pate Stevedore) (collectively the "Stevedore Defendants") and file the following Brief in Reply to Plaintiffs' Response in Opposition to their Motion to Dismiss the plaintiffs' claims for lack of personal Jurisdiction as well as in reply to the Response of Ace Home Center, Inc. ("AHC") to the Stevedore Defendants' Motion to Dismiss its third-party complaint. Because these responses are practically identical in their content, the Stevedore Defendants have consolidated their reply to both of these briefs in this single document.[1]

[1] AHC has also filed a duplicate set of claims now as cross-claims against the Stevedore Defendants. The Stevedore Defendants would respectfully request that the Court to treat their present Motion to Dismiss as comprehending both the Third-Party Complaint and this new set of cross-claims.

## I. NEITHER THE PLAINTIFFS NOR AHC HAVE PROVIDED ANY EVIDENCE THAT THEIR CLAIMS ARISE OUT OF OR RESULT FROM ANY PURPOSEFUL CONDUCT OF THE STEVEDORE DEFENDANTS DIRECTED TO MISSISSIPPI

In their respective responses, neither AHC nor the plaintiffs make any attempt to argue that this Court has general jurisdiction over the Stevedore Defendants. Clearly, neither of the Stevedore Defendants has such "continuous and systematic" contacts with Mississippi as to make either subject to suit on claims unrelated to any in-state contacts. The only issue is whether specific jurisdiction exists, a conclusion dependent on a showing that the claims arise out of or result from some purposeful contact with the State of Mississippi.

Neither the plaintiffs nor AHC has provided any evidence to refute the affidavit testimony of Mike Pate that all of the damaged, salvaged drywall was sold by Pensacola Stevedore from a warehouse at the Port of Pensacola and that Pensacola Stevedore did not deliver or pay for the delivery of any of this drywall to Mississippi. All sales of drywall were made in Florida, where the drywall was loaded onto vehicles of the purchasers or their designated carriers. (Mike Pate Affidavit, ¶15). Plaintiffs have not refuted the evidence that Pensacola Stevedore did not direct any advertising or other marketing activities to residents of Mississippi in an attempt to sell any of this drywall. (Pate Aff., ¶ 14).

The sole evidence upon which the plaintiffs and AHC seek to establish specific jurisdiction over the Stevedore Defendants in Mississippi is certain bills of lading and purchase orders reflecting the sale of some of this salvaged drywall to Mississippi salvage businesses, Gulf Coast Shelter c/o City Salvage in Laurel, Mississippi, and Sharkey Sales, in Waynesboro, Mississippi. Both of these companies agreed to purchase damaged sheetrock "as is" at the Port of Pensacola. (Mike Pate Deposition, pp. 58-61; Exs. 10, 12) (attached hereto as Ex. "A"). These unsolicited sales of drywall in Florida to Mississippi residents are, first of all, insufficient

to establish a purposeful contact with Mississippi. *See* Growden v. Ed Bowlin and Assoc., 733 F.2d 1149, 1151 (5th Cir. 1984) (unsolicited purchase and taking possession of plane in Georgia by Louisiana resident did not support jurisdiction in Louisiana over out-of-state seller); Allen v. Okam Holdings, Inc., 1996 WL 497189 (E.D. La. Aug. 30, 1996) (out-of-state defendant's sale of eight vessels to Louisiana residents, including plaintiff, at single store in Alabama was insufficient basis for jurisdiction in Louisiana). Pensacola Stevedore did nothing to reach beyond its local market in Pensacola, Florida in an attempt to sell this drywall. More significantly, however, AHC and the Plaintiffs have submitted no evidence that any of these sales into Mississippi have any relationship whatsoever to their claims, which arise out of an entirely independent set of sale transactions in Florida and Alabama. Pensacola Stevedore sold and delivered drywall to AHC in Florida, which then transported it to its retail store in Alabama, and then sold it to an Alabama builder who then transported it to Mississippi and built the plaintiffs' homes. Plaintiffs and AHC have supplied no evidence that Pensacola Stevedore knew or expected that the damaged, salvaged drywall sold to AHC would be carried by the stream of commerce to Mississippi;

Even under the most liberal interpretation of the "stream of commerce," Pensacola Stevedore cannot be deemed to have purposefully availed itself of the privilege of doing business in Mississippi by selling this drywall to AHC. Indeed, as discussed more thoroughly in the Stevedore Defendants' opening brief, any "stream of commerce" actually ended with the purchase of the drywall by the builder. The builder's unilateral decision to carry it into Mississippi is insufficient to confer jurisdiction over the Stevedore Defendants. *See* Worldwide Volkswagen v. Woodson, 444 U.S. 286, 297-98, 100 S.Ct. 559 (1980). Moreover, the "stream" into which Pate introduced this drywall was that of commerce in damaged, salvaged goods.

AHC sorted through these damaged goods, culled out what it considered usable and marketable and introduced the drywall it had selected into a new stream of commerce, i.e., commerce in new, undamaged drywall sold on the retail market.

Merely placing a product into the stream of commerce is not, in and of itself, sufficient to subject the seller or manufacturer to jurisdiction in any state to which that stream may take it. There must be the delivery of products into the stream of commerce "with the expectation that they will be purchased by consumers in the forum state." Worldwide Volkswagen, 144 U.S. at 297. The "foreseeability" critical to due process is "not the merely likelihood that the product will find its way into the forum state," but rather whether the "defendant's conduct and connection to the forum state are such that he should reasonably anticipate being haled into court there." Pervasive Software, Inc. v. Lexware GmbH & Co., KG, 688 F.3d 214, 228 (5th Cir. 2012) (quoting Worldwide Volkswagen, 444 U.S. at 297)). "Once a product has reached the end of the stream [of commerce] and is purchased, a consumer's unilateral decision to take a product to a distant state, without more, is insufficient to confer personal jurisdiction over the manufacturer or distributor." Seiferth v. Helicoperteros Atuneros, Inc., 472 F.3d 266, 273 (5th Cir. 2006).

Pensacola Stevedore was neither a manufacturer nor even a merchant with respect to these goods and had no distribution system of any kind that it used in connection with the sale of these goods. To whatever extent Mississippi businesses or residents may have purchased this drywall (and that extent is not demonstrated by AHC's evidence), these sales are insufficient to demonstrate the existence of personal jurisdiction over Pensacola Stevedore where those sales have no causal relationship to the sales made by Pensacola Stevedore to AHC in Alabama, which forms the basis of the claims of AHC and the plaintiffs. *See* Goodyear Dunlop Tires Operations

S.A. v. Brown, 131 S.Ct. 2846, 2857, n.6 (2011) ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales"); Bearry v. Beech Aircraft, 818 F.2d 370, 373 (5th Cir. 1987) ($250M in sales of Beech-manufactured aircraft into Texas through 17 independent Texas dealers was insufficient to establish specific jurisdiction over Beech Aircraft in Texas with respect to Plaintiff's purchase in Louisiana of a Beech aircraft neither designed, manufactured, repaired, or serviced in Texas, nor ever owned by a Texas resident); Pervasive Software, Inc., 688 F.3d at 227 (plaintiff's causes of action based on German defendant's alleged breach of software development agreement in German did not arise out of or result from defendant's 15 internet website sales of its products to 12 Texas residents); Revell v. Lidov, 317 F.3d 467, 472 (5th Cir. 2002) ("For specific jurisdiction we look only to the contact out of which the cause of action arises . . . ."). If such unrelated sales could justify the assertion of personal jurisdiction over a seller or manufacturer of products, this would create an unworkable "sprawling view" of general jurisdiction in which "any substantial manufacturer or seller of goods would be amenable to suit, on any claim for relief, wherever its products are distributed." Goodyear Dunlop, 131 S.Ct. at 2856. Unless the defendant's unrelated sales rise to the level of being "continuous and systematic" activity within the state, so as to support general jurisdiction, they are irrelevant to whether or not specific jurisdiction exists.[2]

---

[2] The function of the relatedness requirement is to preserve the essential distinction between general and specific jurisdiction. *See* Shute v. Carnival Cruise Lines, 897 F.2d 377, 385 (9th Cir. 1990), *reversed on other grounds*, 499 U.S. 585, 111 S.Ct. 1522 (1991); O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 321-322 (3rd Cir. 2007) Under Fifth Circuit jurisprudence, an in-state contact must be a "but for" causative factor for the plaintiff's claims. *See* Prejean v. Sonatrach, Inc., 652 F.2d 1260, 1270, n. 21 (5th Cir. 1981) ("In a case like this, a contractual contact is a 'but for' causative factor for the tort since it brought the parties within tortious 'striking distance' of each other"); *see also* Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 714 (1st Cir. 1996) (discussing Fifth Circuit jurisprudence on required nexus). "As the name indicates, [the 'but for' standard] is satisfied when the plaintiff's claim would not have arisen in the absence of the defendant's contacts." O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d at 319. In the present case, it cannot be concluded that the plaintiffs' claims would not have arisen in the

For all these reasons, the cases cited by AHC and Plaintiffs are completely distinguishable. They all involve manufacturers of products who either knew their product would travel to the forum state or were using a national distribution system.

The first case discussed by the plaintiffs and AHC – Rushton Gas Turbines, Inc. v. Donaldson Co., Inc., 9 F.3d 415 (5th Cir. 1993) – involved jurisdiction over an out-of-state component parts manufacturer, sued on a third-party complaint in an action against an out-of-state manufacturer and seller of two gas turbine engine systems to the plaintiff, who was a resident of the forum state, Texas. The component parts manufacturer had entered into a contract with the engine systems manufacturer to manufacture two air infiltration systems specifically for purchase by the plaintiff. The component manufacturer was aware that the parts it was manufacturing would be shipped to Texas. The purchase order issued to it specifically indicated that the air infiltration systems were to be sold to the plaintiff in Houston. The component manufacturer delivered the equipment it manufactured into the hands of a carrier for direct shipment to the plaintiff in Houston and the bills of lading covering the goods identified the consignee as the plaintiff and the destination as the plaintiff's Houston address. Id. at 417-18. There is no such contractual relationship between the parties in the present case. No evidence exists that the drywall sold by Pensacola Stevedore to Ace Home Center in Robertsdale, Alabama, was destined for Mississippi, let alone that Pensacola Stevedore knew this.

Tellus Operating Group, LLC v. R&D Pipe Co., 377 F.Supp.2d 604 (S.D.Miss. 2005), similarly involved the suppliers of a product who knew the product was being sold for use in Mississippi. One of the defendants entered into a specific contract with the plaintiff, a

---

absence of the Mississippi sales. Quite the opposite. Plaintiffs' claims arise from completely independent sales of drywall into Alabama, which would have occurred regardless of the sales of other drywall into Mississippi.

Mississippi resident, to supply steel casing to line an oil and gas well being drilled in Mississippi, and the other defendant knew of the pipe's destination. Defendants knowingly supplied this pipe for delivery to the plaintiff via common carrier to a well location in Mississippi.

Oswalt v. Scripto, Inc., 616 F.2d 191 (5th Cir. 1980), involved a Japanese manufacturer of cigarette lighters which sold millions of lighters to an American distributor who was the exclusive distributor of these lighters and who the Japanese manufacturer knew would be selling to a customer with national retail outlets. The evidence showed that the forum state, Texas, was one of the states in which the lighters were in fact marketed, the distribution chain including a Texas wholesaler and a Texas retail store from which the plaintiffs purchased the lighter. Id. at 199-200. These facts are a far cry from the facts in the present case. Pensacola Stevedore did not manufacture the drywall, and did not distribute it through any kind of national or regional distribution chain. Rather, it was simply selling damaged, salvaged drywall out of a warehouse in Florida to any buyer who showed up to purchase it. Pensacola Stevedore sold the drywall to Ace Home Center without any knowledge or expectation that it ultimately would wind up in Mississippi.

Breedlove v. Beech Aircraft Corp., 334 F.Supp.1361 (N.D.Miss. 1971), as well Smith v. Timco, Inc., 252 So.2d 212 (Miss. 1971), the case upon which Breedlove relied, simply dealt with the scope of the Mississippi long-arm statute in a product liability case. Neither of these cases, which precede Worldwide Volkswagen, contain any discussion of the due process limits upon the assertion of personal jurisdiction. Again, both of these cases involve a manufacturer of a product distributed through a national distribution chain.

Jones v. Tread Rubber Corp., 199 F.Supp.2d 539 (S.D.Miss. 2002), involved a product shipped directly to the plaintiff in Mississippi by the defendant, who also sent marketing

materials to the plaintiff in that state and sent its representatives to the state to inspect the product after the plaintiff complained of its defect. Id. at 548. Thus, the evidence was sufficient to demonstrate that the defendant's contacts with the forum state were purposeful and those contacts resulted in the injury giving rise to the litigation. Id at 547-48.

Finally, in Paz v. Brush Engineered Materials, Inc., 445 F.3d 809 (5th Cir. 2006), Defendant sold its beryllium-containing products to Boeing in California, knowing that it would be used by Boeing at the Stennis Space Center in Mississippi, and also knowingly that Stennis was the only place where the specific Beryllium-containing products could be used. Id. at 813. Again, these facts are completely distinguishable from the present case.

Plaintiffs also make a number of unsupported assertions in their brief. They claim that the Stevedore Defendants sold the drywall as "new" to Ace Hardware. (Plaintiffs' Opposition at p. 3). The undisputed evidence, from both Pensacola Stevedore and Ace Home Center, is that the transaction in Florida was for the sale of damaged, salvaged drywall, much of which was scrapped by Ace Home Center as totally unmarketable. *See* Stevedore Defendants' Brief at pp. 5-6 and reference testimony only of Mike Pate and Henry Vick. Plaintiffs make other completely, unsupported assertions, such as the Stevedore Defendants deriving "great economic benefit from Mississippi residents for many years," and that "everyone selling drywall during this time period knew it was substantially likely to end up in Mississippi." (Plaintiffs' Opposition at p. 11).

In short, Plaintiffs and AHC have failed to demonstrate that either Pensacola Stevedore or Pate Stevedore purposefully availed themselves of the privilege of conducting activities within Mississippi with respect to the sale of salvaged drywall in Florida. Even if there were any

purposeful activities directed to Mississippi, Plaintiffs and AHC have not demonstrated that their claims arise out of or result from any such Mississippi-related contacts.

**AHC'S CONTENTION THAT IT WAS INJURED IN MISSISSIPPI, THE FORUM WHERE IT WAS SUED, FOR PURPOSES OF THE MISSISSIPPI LONG-ARM STATUTE, IS NOT SUPPORTED BY THE CASE LAW**

In response to the argument that the Mississippi long-arm statute does not reach the Stevedore Defendants, for purposes of AHC's claims for indemnity, AHC claims that the cases cited by the Stevedore Defendants "are easily distinguishable from the facts of this case, primarily because they did not involve a legal claim for damages against the plaintiff as the primary injury." (AHC's Resp. at p. 5). However, AHC overlooks Overland Ventures, LLC v. Giant Tyres USA, LLC, 2014 WL 4639759 (S.D.Miss. Sept. 16, 2014) discussed at page 9 of the Stevedore Defendants' Brief. In Overland Ventures, the primary injury was a legal claim for damages against the third-party plaintiffs, sued in a Mississippi court. The Court held that the third-party complaint against certain Ohio companies that had contracted with them to supply the allegedly defective tires was due to be dismissed for lack of jurisdiction over these Ohio entities under the Mississippi long-arm statute. The Court found no evidence of any injury to these third-party plaintiffs in Mississippi, notwithstanding the fact they were being sued in Mississippi and had, like AHC, been forced to retain counsel to defend those claims.

AHC relies upon the well-recognized distinction between the "actual injury" and the damages which arise as a consequence of that injury. In the present case, however, as in the tortious interference with business relationship cases, the only "injury" to AHC is the economic losses it incurs as a result of defending itself and facing potential liability, losses which must necessarily arise in Alabama, where it is incorporated and has its principal and only place of business. Any negligence or other tortious conduct on the part of the Stevedore Defendants had

to have occurred in Florida. No element of the tort took place in Mississippi. The fact that AHC is being sued in that state is insufficient to show injury there.

Respectfully submitted,

s/s William W. Watts, III
S. WELSEY PIPES, V.
Alabama Bar No. ASB6226-P71S
WILLIAM W. WATTS, III
Alabama Bar No. ASB5095-S67W
ATTORNEYS FOR STEVEDORE EFENDANTS

**OF COUNSEL:**
PIPES, HUDSON & WATTS, L.L.P.
P.O. Box 989
Mobile, AL 36601-0989
PH: 251-432-7200
FX: 251-432-0073
bill@pipeshudsonwatts.com
wesley@pipeshudsonwatts.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 20th day of February 2015, the foregoing has been electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the EM/ECF System which will send a notice of electronic filing in accordance with the procedures established in MDL 09-2047 and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, to the following:

Danny J. Collier, Jr., Esq.
Stephen W. Mullins, Esq.
Caroline Pryor, Esq.
Christopher A. D'Amour, Esq.

Lewis Robert Shreve, Esq.
Heather M. Houston, Esq.
David C. Coons, Esq.
Gary J. Russo, Esq.

s/s William W. Watts, III
WILLIAM W. WATTS, III