# EXHIBIT "A"

**Michael Pate**                                                                 **Page: 1**

## Page 1

1  IN THE UNITED STATES DISTRICT COURT

2  FOR THE EASTERN DISTRICT OF LOUISIANA

3  IN RE: CHINESE-MANUFACTURED,
   DRYWALL PRODUCTS LIABILITY
4  LITIGATION

5  Vs.                          MDL NO.: 2047
                                SECTION: L
6  This Document
   Relates To:                  JUDGE FALLON
7                               MAG. JUDGE WILKINSON
   Braxton H. Collins,
8  et al. Vs. Bass Homes,       Case No.: 13-6652
   Inc., et al.; S.D.
9  Mississippi, C.A.
   No. 1:13-00297

10

11  IN THE UNITED STATES DISTRICT COURT

12  FOR THE EASTERN DISTRICT OF LOUISIANA

13  IN RE: CHINESE-MANUFACTURED,
    DRYWALL PRODUCTS LIABILITY
14  LITIGATION

15  Vs.                         MDL NO.: 2047
                                SECTION: L
16  This Document
    Relates To:                 JUDGE FALLON
17                              MAG. JUDGE WILKINSON
    Jason S. Herrington,
18  et al. vs. Bass Homes,      Case No.: 13-6653
    Inc., et al.; S.D.
19  Mississippi, C.A.
    No. 1:13-00297

20

21                * * * * * * * * * *

22          DEPOSITION OF MIKE PATE

23              January 14, 2015

## Page 2

1       DEPOSITION OF MIKE PATE, taken

2  pursuant to stipulation and agreement before

3  Mallory McCutchin, Registered Professional

4  Reporter and Commissioner for the State of

5  Alabama at Large, in the Law Offices of

6  Luther, Collier, Hodges & Cash, 401 Church

7  Street, Mobile, Alabama, on January 14,

8  2015, commencing at approximately 10:22

9  a.m.

10              * * * * * * * * * *

11          APPEARANCES

12  FOR THE PLAINTIFFS:

13  Mr. Stephen W. Mullins
    LUCKEY & MULLINS
14  Attorneys at Law
    2016 Bienville Boulevard
15  Ocean Springs, Mississippi  39564

16  FOR THE DEFENDANTS:

17  Mr. Danny J. Collier
    LUTHER, COLLIER, HODGES & CASH
18  Attorneys at Law
    401 Church Street
19  Mobile, Alabama  36602

20  Mr. Caroline Pryor
    CARR ALLISON
21  Attorneys at Law
    6251 Monroe Street
22  Suite 200
    Daphne, Alabama  36526

23

## Page 3

1  APPEARANCES (continued:)

2  Mr. James Rebarchak
   JONES WALKER
3  Attorneys at Law
   RSA Battle House Tower
4  11 N. Water Street
   Suite 1200
5  Mobile, Alabama  36602

6  Mr. S. Wesley Pipes
   PIPES HUDSON & WATTS
7  Attorneys at Law
   One St. Louis Centre
8  Suite 2500
   Mobile, Alabama  36602

9

10               * * * * * * * * *

10            EXAMINATION INDEX

11  MIKE PATE

12  BY MR. COLLIER                        5

13            EXHIBIT INDEX

14  DEFENDANTS' EXHIBIT NOS.:

15  1  Notice of Deposition             6

16  2  Third Party Defendant            8
      Pensacola Stevedore Company,
17    Inc.'s response to third-party
      Plaintiff Ace Home Center,
18    Inc.'s First Interrogatories
      and Request for Production
19    of Documents

20  3  Affidavit of                    12
      Michael Pate

21

22  4  Invoice

23  5  Straight Bill                   46
      of Lading

## Page 4

1  EXHIBIT INDEX (continued:)

2  6  Purchase Order                  49

3  7  Purchase Order                  50

4  8  Regular Truck Order             52

5  9  Straight Bill                   53
      of Lading

6  10 Agreement                       58

7  11 Invoice                         60

8  12 Facsimile                       60
9     transmittal

10 13 Ad                              62

11              * * * * * * * * * *

12          STIPULATIONS

13      It is hereby stipulated and agreed

14  by and between counsel representing the

15  parties that the deposition of MIKE PATE is

16  taken pursuant to the Federal Rules of Civil

17  Procedure and that said deposition may be

18  taken before Mallory McCutchin, Registered

19  Professional Reporter and Commissioner for

20  the State of Alabama at Large, without the

21  formality of a commission; that objections

22  to questions other than objections as to the

23  form of the questions need not be made at

**Michael Pate** **Page: 15**

### Page 57

1 Q. Right. In other words --

2 A. I would think so.

3 Q. In other words, whereas, Exhibit 94

4 reflected ten truckloads to Sharkey --

5 A. Yes, sir.

6 Q. -- we in fact come across additional

7 purchase orders from Sharkey and

8 additional invoices from you -- your

9 company to Sharkey for more truckloads?

10 A. Yes, sir.

11 Q. And we don't need to turn the page; but

12 when we come across an invoice and

13 purchase order from Sharkey, it's the

14 same transaction, it's the same kind of

15 thing, just more sheetrock?

16 A. Yes, sir.

17 Q. Okay. Fair enough. You're welcome to

18 turn those pages, but that's -- that's

19 what I find when I --

20 A. Yeah. I --

21 Q. All right. Would it be fair to say that

22 if we wanted to know how much drywall

23 your company sold to Sharkey Sales,

### Page 58

1 that's not an answer committed to your

2 memory, but we would be required to look

3 into and rely upon these documents?

4 Would that be fair?

5 A. Yes.

6 (Defendants' Exhibit #10 was

7 marked for identification.)

8 Q. Okay. What is Exhibit #10? It's PSC

9 document 463. What is that document,

10 sir?

11 A. It is an agreement, Pate Stevedore and

12 Sharkey Sales on them buying sheetrock

13 from us and from the Port of Pensacola.

14 Says sheetrock with 20 -- 10, 20 percent

15 damage, as-is, where-is, port -- I mean

16 Pensacola, Florida for $2 a sheet. And

17 Sharkey is to inspect every load product

18 to be -- you know, and removed within 30

19 days.

20 Q. Yes, sir. Did you and Rex Sharkey sign

21 this document together, physically

22 together?

23 A. I don't remember if we signed it

### Page 59

1 physically together, but that's my

2 signature.

3 Q. Okay. So whether he signed it in

4 Pensacola or in Mississippi, you do not

5 know?

6 A. What I -- I guess what I'm trying to say

7 is, I signed it in Pensacola. Now,

8 whether they -- I don't remember -- I

9 can't tell you for certain with Rex

10 Sharkey. I never met Rex Sharkey

11 anywhere but Pensacola.

12 Q. Okay.

13 A. So it would have to be Pensacola.

14 Q. Okay.

15 MR. PIPES: Did he come to the

16 port?

17 THE WITNESS: Yes. Yes, he came

18 to the port.

19 Q. And this was not nailing down how much

20 he would buy but how much he would pay

21 for what he would buy, with -- with some

22 other disclaimers?

23 A. Yes. I mean, this was a -- he would

### Page 60

1 inspect every load I guess is the

2 importance to it, I guess.

3 (Defendants' Exhibit #11 was

4 marked for identification.)

5 Q. Exhibit #11 today is made up of PSC 464

6 through 475. And I'll represent to you

7 that it is similar looking documents

8 between or involving Pensacola

9 Stevedore, Pate Stevedore, and Sharkey

10 Sales. The question is do you have any

11 reason to disagree with that

12 representation after flipping through

13 those pages?

14 A. Yes, sir. I mean, it appears to be

15 invoices and bills of lading from, you

16 know.

17 Q. Involving the company?

18 A. Pensacola Stevedore and Sharkey Sales.

19 Q. Okay. Thank you.

20 (Defendants' Exhibit #12 was

21 marked for identification.)

22 Q. What is Exhibit #12?

23 A. Exhibit #12 appears to me as an

**Michael Pate**

Page 61

1   agreement with Pate Stevedore. And who
2   is John Austin with? Gulf Shores Coast
3   Shelter.
4   Q. Agreement for what?
5   A. An agreement to purchase sheetrock.
6       According to this, 100 loads of damaged
7       rock, a dollar a sheet.
8   Q. Okay. How did Gulf Coast Shelter and
9       your company come to do business with
10      one another?
11  A. I -- to the best of my knowledge, Gulf
12      Coast Shelter was buying rock --
13      sheetrock from Devon, or Devon or
14      whatever. And -- and that's how we come
15      to know each other.
16  Q. Okay. And did your company in fact sell
17      100 truckloads?
18  A. No, sir. I don't believe they ever
19      bought 100 truckloads.
20          MR. PIPES: That's a lot.
21  A. No, sir. I'm almost positive they
22      didn't. They wanted to buy it. And, in
23      other words, I think this was sort of

Page 62

1   just to kind of say -- I'm kind of
2   wanting to lock this 100 loads up where
3   you might not sell it to somebody else.
4   But --
5   Q. It looks like a contract action to me.
6   A. Yeah. But I'm almost positive they
7      never bought no -- they didn't -- they
8      didn't buy no -- I don't believe they
9      ever bought no 100 loads.
10         (Defendants' Exhibit #13 was
11              marked for identification.)
12  Q. Okay. Identify Exhibit #13, please.
13      It's PSC 989.
14  A. This appears to me to be the article or
15      ad or whatever you have it that we ran
16      in the Pensacola --
17         MR. PIPES: Shopper.
18  A. Shopper, paper, for this.
19  Q. All right. Is 850-438-3640 -- is that
20      your telephone number?
21  A. Yes, sir.
22  Q. Okay.
23  A. That's my office number.

Page 63

1   Q. Right. I'm aware of the Langham lawsuit
2      which -- when I say Langham lawsuit in
3      Baldwin County, I think of numerous
4      cases consolidated into one involving
5      Bass Homes and Ace and others. Was your
6      company involved in that? Was your
7      company a named defendant in that case?
8      Yes?
9   A. Yes.
10         MR. PIPES: Uh-huh.
11  Q. I thought it was. I went blank for a
12      moment. Aside from the Langham
13      litigation, has -- and Collins and
14      Herrington that we're here about today,
15      has your company been involved in any
16      other litigation regarding Chinese
17      drywall?
18         MR. PIPES: Uh-huh.
19  Q. And if so, tell me about those.
20  A. I -- I can't.
21         MR. PIPES: It might be easier
22      if I did it, but -- I mean the
23      answer to that is yes.

Page 64

1   A. Yes.
2          MR. PIPES: I can give you a
3       list, actually, of all the actions
4       that they've been named in.
5          MR. COLLIER: All right.
6          MR. PIPES: But I can tell you
7       there were two -- actually, there
8       were three in North Alabama that
9       were dragged into the class action
10      settlement.
11         MR. COLLIER: The MDL.
12         MR. PIPES: The MDL settlement.
13      There were the Langham cases which
14      were actually either 11 or 12 cases
15      that were consolidated for
16      discovery. There were two cases in
17      Mobile County whose names I can't
18      remember, but we got out on summary
19      judgment on those. There's
20      obviously the case in Escambia
21      County, Alabama right now.
22         MR. COLLIER: Wiggins.
23         MR. PIPES: Wiggins. And, you

**Michael Pate**                                           **Page: 17**

---

Page 65

1  know, I don't know how to answer.
2  There were obviously claims made in
3  the -- we participated in the class
4  action settlement, MDL class action
5  settlement.
6       MR. COLLIER:  Yeah.  Right.
7       MR. PIPES:  And that's all that
8  comes to mind for now.  There were
9  no lawsuits in the state of Florida
10  with the exception of possible class
11  members that were in class action
12  settlements.
13       MR. COLLIER:  Right.  And what
14  about claimants and/or lawsuits from
15  the state of Mississippi?
16       MR. PIPES:  The only -- the only
17  lawsuits that I'm aware of from the
18  state of Mississippi are these two.
19  I'm not aware of any claimants in
20  class action settlements in the
21  state of Mississippi.  But I cannot
22  -- you know, I can't be positive
23  about that.  So -- if there are any

Page 66

1  participants, you know, it's
2  possible.  I think Bill -- Bill
3  would know better than I would.  But
4  we can certainly track that down.
5       But there are no state court
6  actions in Mississippi, and there
7  are no other pending -- you know,
8  anything.
9       MR. COLLIER:  All right.
10  Mr. Pate, I appreciate your time and
11  patience with me today.  I think
12  that's all I have.  Anybody else?
13       MR. REBARCHAK:  I don't
14  anything.
15       MS. PRYOR:  I don't have
16  anything.
17       (The deposition concluded
18           at 11:54 a.m.)
19       * * * * * * * * * *
20  FURTHER DEPONENT SAITH NOT
21       * * * * * * * * * *
22
23

Page 67

1            REPORTER'S CERTIFICATE
2  STATE OF ALABAMA
3  BALDWIN COUNTY
4       I, Mallory McCutchin, Registered
5  Professional Reporter and Commissioner for
6  the State of Alabama at Large, hereby
7  certify that on January 14, 2015, I reported
8  the deposition of MIKE PATE, who was first
9  duly sworn or affirmed to speak the truth in
10  the matter of the foregoing cause, and that
11  pages 5 through 66 contain a true and
12  accurate transcription of the examination of
13  said witness by counsel for the parties set
14  out herein.
15       I further certify that I am neither of
16  kin nor of counsel to any of the parties to
17  said cause, nor in any manner interested in
18  the results thereof.
19
20
21       MALLORY McCUTCHIN, CCR, RPR
         And Commissioner for the
         State of Alabama at Large
         CCR 443, Expires 09/30/15
23       MY COMMISSION EXPIRES: 2/25/2017

---



**P**ate Stevedore Co., Inc.

Post Office Box 12781
Pensacola, Florida 32591-2781

Phone: (850) 438-3648
Fax: (850) 438-5214
patestevedore@bellsouth.net

AGREEMENT

PATE STEVEDORE COMPANY/SHARKEY SALES LLC

SHARKEY SALES LLC AGREES TO PURCHASE FROM PATE STEVEDORE COMPANY
DAMAGED SHEETROCK WITH 10-20% DAMAGE AS IS, WHERE IS AT THE PENSACOLA,
FLORIDA, FOR A PRICE OF $2.00 PER SHEET.

SHARKEY SALES LLC IS TO INSPECT EVERY LOAD.  PRODUCT IS TO BE MOVED
WITHIN 30 DAYS.

Agreed to:  9/12/2006

Mike Pate
Pate Stevedore Company

Rex Sharkey
Sharkey Sales LLC

DEFENDANT'S
EXHIBIT

10

PSC000463



**P** ate Stevedore Co., Inc.

Post Office Box 12781  Pensacola, Florida 32591-2781  (850) 438-3648
FAX: 850-438-5214                E-MAIL: patestevedore@bellsouth.net

# facsimile transmittal

| To: | JOHN AUSTIN | Fax: | 251-990-8286 |
|---|---|---|---|
| From: | MIKE PATE | Date: | 2/5/06 |
| Re: | DAMAGED SHEETROCK | Pages: | 1 |
| CC: | | | |

☐ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

### AGREEMENT

GULF COAST SHELTER AGREES TO PURCHASE 100 TRUCK LOADS OF DAMAGED

SHEETROCK @ $1.00 PER SHEET.  THIS SHEETROCK IS SOLD "AS IS" AT PORT OF

PENSACOLA WAREHOUSE NO. 8.  WITH PICKUP TO BEGIN AS SOON AS POSSIBLE.

PURCHASE ORDER NUMBERS WILL BE 3004240 TO 3004340.

_____ MIKE PATE

_____ JOHN AUSTIN

DEFENDANT'S
EXHIBIT
12

PSC000714

## Bundles of 4' X 12' X 1/2"
## SHEETROCK
### Some Damage
## GREAT VALUE
### $2 per sheet
### Call for info 850-438-3648

### FACTORY DIRECT
#### Quality Specialty Products
#### Trailers at Wholesale Prices!
HURRICANE SHUTTERS, HAND RAILS, GATES, ECT.
*If you buy before you compare our Trailers - We Both Lose...*

## 850-469-0902

## JOB OPPORTUNITIES

### New Line Transport
#### Seeking Owner Operators
* $1000 Sign on Bonus *
* Diesel Fuel $1.25 Gallon!! *
* Tractor Purchase Program *
* Consistent Freight *
* Avg. mileage pay $1.08 per mile *
* Home Weekends *
Available to Qualified Drivers * 1 Year CDL 'A', No More than 2 moving violations in 7 years.
Call Mon-Fri 7-5 pm 1-877-447-4450

Be Your Own Boss! Are you looking for an honest opportunity to work with a Christian Company? 866-523-3173

## GARAGE SALES

## DEFENDANT'S
## EXHIBIT
### 13