UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCT LIABILITY LITIGATION | : : : : : : | MDL NO. 2047<br><br>SECTION: L<br><br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

**THIS DOCUMENT RELATES TO:**
**Anderton, George & Gloria (Claimant No. 100241)**
*AMATO*, **Case No. 10-932**

**MEMORANDUM OF LAW IN SUPPORT OF
APPEAL OF ANDERTON, GLORIA AND GEORGE (Claimant No. 100241)
OF DECISION OF SETTLEMENT ADMINISTRATOR
TO DETERMINE GBI SETTLEMENT PAYMENT (Claim No. 7306)
SOLELY ON BASIS OF UNDER-AIR SQUARE FOOTAGE**

**MAY IT PLEASE THE COURT:**

Pursuant to Paragraph 7 of the Global Allocation Plan and the Local Rules of this Court, Claimants George and Gloria Anderton file this Memorandum of Law in Support of their Appeal of Anderton, Gloria and George (Claimant No. 100241) of Decision of Settlement Administrator to Determine GBI Settlement Payment (Claim No. 7306) Solely on Basis of Under-Air Square Footage.  The Andertons appeal the Final Determination Notice issued by the Settlement Administrator on January 28, 2015, in which the Settlement Administrator determined to pay Claimants only $7,799.22, which was calculated by multiplying $2.97 by the under-air square footage of the affected property (2,626).  For the reasons stated below, the Andertons respectfully request that the Court order the Settlement Administrator to determine that they are eligible for a payment of $194,033.99, which reflects their actual remediation costs.

1

## BACKGROUND

On January 24, 2014, the Settlement Administrator issued an Eligibility Notice concerning the Andertons' GBI claim (Exhibit B). In response, the Andertons informed the Settlement Administrator that while they—of course—did not disagree with the decision to deem their claim eligible for payment, they did object to the proposed method of calculating the payment. The Andertons argued that the standard method of calculating the payment by taking the multiple of some unknown dollar figure[1] was patently unfair in their case, because the affected property is a luxury home with high ceilings and many other luxury appointments, making it a special case.

On January 28, 2015, the Settlement Administrator issued a "Final Determination Notice," in which she finally determined that the GBI claim of Claimants George and Gloria Anderton is eligible for payment (Exhibit A). The Settlement Administrator proposes to pay the Andertons based on a calculation using only horizontal square footage: $7,799.22 (2,626 eligible square feet multiplied by $2.97). Because this method of calculating the payment is manifestly unfair in this case, the Andertons appeal. The Andertons respectfully request that the Court order the Settlement Administrator to issue a GBI payment that more fairly reflects the nature of the Andertons' luxury home and the actual reasonable remediation costs that the Andertons paid to have their home remediated.

---

[1] At the time the Andertons were forced to "appeal" the Settlement Administrator's decision at the administrative level, the dollar figure per square foot to be paid was as-of-yet undetermined. After asking the Settlement Administrator directly for guidance, the Andertons were informed by the Settlement Administrator that they would have to "appeal" the Eligibility Determination at the administrative level without knowing the dollar figure they were challenging. In other words, when they filed their appeal to the Settlement Administrator (Exhibit C), the Andertons were not allowed to be aware of the dollar figure they were rejecting, and were able only to blindly appeal the "methodology of determining payment." The Andertons learned on September 11, 2014, with the filing of CAP-1014-9 [D.E. 18002-1], that the proposed payment would be $7,799.22 (2,626 square feet multiplied by $2.97, the per-square-foot-payment-amount for the Banner settlement).

The Andertons supported their appeal at the administrative level with two expert reports (Exhibits D and E), in which an architect opined that the home contained close to three times (289%) as much drywall as an ordinary home. Using the expert's 289% figure, even using the multiplication method of calculation, the Settlement Administrator should have determined the payment to be $22,539.75.

The Andertons also submitted evidence proving that their *actual hard costs of remediation were $194,033.99*, and that these costs, which the Andertons actually paid, were reasonable. (See Composite Exhibit F).

## SUMMARY OF ARGUMENT

The standard method of calculating the payment by simply taking the multiple of $2.97 and the under-air square footage of the home is patently unreasonable in this case, because the affected property is a luxury home with high ceilings and many luxury appointments, as detailed below. The Andertons respectfully request that the Court order the Settlement Administrator to amend the Final Determination Notice to reflect that the Andertons will be paid $194,033.99, and order the Settlement Administrator to issue the payment within seven days.

## ARGUMENT

While the Andertons agree with the Settlement Administrator's determination that their GBI claim is eligible, they challenge the *amount* the Settlement Administrator proposed to pay. The Andertons appeal the decision to determine the payment based solely on a mathematical calculation that uses the under-air square footage multiplied by $2.97 per square foot under air. The Anderton's home is a luxury home with high ceilings and other features that, simply put, caused the Andertons' actual remediation expense to be $194,033.99. The Settlement Administrator's calculation method proposes to pay the Andertons only $7,799.22, an amount which would be grossly unfair and a manifest insult to justice in this case. The actual costs ($194,033.99) that the Andertons were forced to incur to render their home inhabitable, which

they incurred more than four years ago, were reasonable and necessary to remediate in accordance with the Court-ordered remediation protocol that the Court ordered in MDL 2047.

A. **The Andertons' Expert Evidence**

The Andertons supported their appeal at the administrative level with two expert reports (Exhibits D and E), in which an architect opined that the home contained close to three times (289%) as much drywall as an ordinary home. Using the expert's 289% figure, even using a simply multiplication method of calculation, the Settlement Administrator should have determined the payment to be $22,539.75.

The expert reports[2] were prepared by Anne Jackaway, AIA, a licensed and reputable architect who had first-hand experience working on the Andertons' home. These reports are identified as Document IDs 287507 and 288390, respectively, in the BrownGreer settlement portal, and are attached hereto as Exhibits D and E. The Andertons also uploaded the blue prints of the affected property (ID 287509), which is attached hereto as Exhibit G.

As the Andertons' expert architect opined, the Andertons' luxury home contains complex coffered ceilings, expansive ceiling heights, multiple arched soffits, and many alcoves, closets and framed openings. As further noted by the expert, because of the complex nature of the residence, the use of floor level areas to provide square footage drywall calculations is not appropriate. According the expert's calculations, when taking into account vertical surfaces, it is clear there was much more drywall to replace in the Andertons' home than a typical home with eight-feet ceilings. Specifically, the expert calculated that there is ***289% more drywall*** in the Andertons' home than in a typical home that would be reflected by calculating the payment only using floor-level square footage.

In the August 1, 2014 expert report, the Andertons' expert also opined that the following conditions of the Andertons' home make it unsuitable to be quantified by area square footage alone:

1. Multiple high ceiling heights, an example of which is an 18'-2" stair ceiling, with vertical walls without openings;
2. Coffered ceilings;
3. Multiple dropped, arched and framed soffits, with many framed openings are typical on all levels;

---

[2] The second report relies on and incorporates the first report. The reports should be read together.

4. Many alcoves, closets and storage areas;
5. The garage is included in this sf analysis, because the Owners removed all the existing drywall from Level 1;
6. Much additional remedial work was concluded, including the replacement of the framing, electrical, plumbing piping, mechanical equipment, appliances, and ductwork;
7. The complexities of the installation, meant greater use of materials and labor;
8. The remediation resulted in longer construction schedule, and more costs for both construction but for repositioning of the family in temporary quarters; and
9. The numbers listed above and in the previosu Letter, as stated above, reflect only the existing amounts of drywall included in the existing residence. The Owners would have had to purchase much more due to the configurations of the site installation specifrics, a well as normal and typical drywall overages of at least 15%. A quantity of drywall necessary to provide for the completed work, would have been more justly of at least 30% more than what was installed on the site. Since my prior finding of existing conditions put the drywall installation at 11,782sf, then I am stating that a quantity of drywall of at least 15,316.60sf would have had to have been purchased to provide for this finished product.

### B.     The Andertons' Actual, Reasonable Remediation Costs

More importantly, as shown by the evidence attached hereto as Composite Exhibit F, the Andertons also submitted evidence proving that their ***actual hard costs of remediation were $194,033.99***, and that these costs, which the Andertons actually paid, were reasonable.  As the Court knows, this litigation began in early 2009.  The Andertons, who actually live in their home as their primary residence, were forced to pay for remediation out of their own pocket in late 2010, because the home exhibited very bad Chinese-drywall symptoms and they simply could not stand living in the home while it was not remediated any longer.  The actual costs incurred are reasonable and in line with similar costs incurred by other claimants to remediate similar luxury homes.  The Andertons paid to remediate the affected property, their home, more than four years ago.  An award of $194,033.99 would simply compensate them for their actual costs, without interest.

## **CONCLUSION**

Determining the Andertons' payment from the GBI settlement using only floor-level under-air square footage is not reasonable given the luxury nature of this home and the actual costs incurred by the Andertons. The Andertons respectfully request that the Court order the Settlement Administrator to determine that the Andertons are entitled to a payment of $194,033.99, which reflects the actual, reasonable remediation costs that they paid to have their home remediated way back in late 2010 through early 2011, without interest. The Court should also order the Settlement Administrator to issue this payment within seven days of the date of the Order.

Respectfully submitted on March 3, 2015,

PODHURST ORSECK, P.A.
*Counsel for Claimants George & Gloria Anderton*
25 West Flagler Street, Suite 800
Miami, Florida 33130
Telephone: 305-358-2800
Facsimile: 305-358-2382

By: /s/ John Gravante
    Robert C. Josefsberg
    Florida Bar No. 40856
    rjosefsberg@podhurst.com
    Peter Prieto
    Florida Bar No. 501492
    pprieto@podhurst.com
    John Gravante, III
    Florida Bar No. 617113
    jgravante@podhurst.com

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on March 3, 2015.

             s/ John Gravante
             *Counsel for Claimants George & Gloria Anderton*
             25 West Flagler Street, Suite 800
             Miami, Florida 33130
             Telephone: 305-358-2800
             Facsimile: 305-358-2382