# EXHIBIT F

### George & Gloria Anderton
### * 6227 Paradise Pt. Drive, Palmetto Bay, FL 33157
### Chinese Drywall Remediation
### Total Costs

| | Name of Company | Description | Total Paid | Cancelled Check(s)/Receipts |
|---|---|---|---|---|
| 1. | G.C. Homes/N.R. Development | Demolition & Rebuild Contrator | $117,532.15 | Yes |
| 2. | Randall Gilbert, Esquire | Insurance Attorney | $8,649.24 | Yes |
| 3. | Anne Jackaway | Architect | $3,500.00 | Yes |
| 4. | Yanes Investigations | DVD/CD Demo & Evidence Preservation | $4,750.00 | Yes |
| 5. | Closets on Demand | Rebuild Existing Interior of Closets | $2,800.00 | Yes |
| 6. | Protective Product Floor | Plastic Flooring for Reconstruction | $1,372.00 | Yes |
| 7. | LA HAV Tile, Inc. | ~~Replace Kitchen Tile Backsplash~~ | $3,476.46 | Yes |
| 8. | Hardware Imagination Tech | Replace Kitchen Cabinets | $11,578.31 | Yes |
| 9. | Coral Gables Plumbing | Plumbing Fixtures "Replacement" | $1,110.96 | Yes |
| 10. | Interseckt Technology | Computer Hook-up | $165.00 | Yes |
| 11. | Just Blinds | Replace Window Coverings | $2,500.00 | Yes |
| 12. | D&B Tile | Grout for Backsplash | $10.95 | |
| 13. | Coconut Grove Rental | 8 Month Rental - Anthony Reinart Rev. Trust | $15,995.66 | Yes |
| 14. | Pak 2 Go (Movers) & Storage | Move to Coconut Grove and Return to 6227 | $4,677.60 | Yes |
| 15. | Art Connection | Replace Broken 3 Pictures | $1,475.99 | Yes |
| 16. | Brad Toth | Decorator | $4,479.99 | Yes |
| 17. | Home Depot | Misc. Items | $533.18 | Yes |
| 18. | Lighting Guru | Lights/Wall Sconces | $2,203.94 | Yes |
| 19. | Light Bulbs Unlimited | Bulbs | $578.62 | Yes |
| 20. | Residential Elevators | Elevator Repair/Maintenance | $931.00 | Yes |
| 21. | Housemasters Inspection | Inspection | $250.00 | Yes |
| 22. | A-Max Air Conditioning, Inc. | A/C Inspection/Repair | $1,380.00 | Yes |
| 23. | U-Haul | Boxes | $74.47 | Yes |
| 24. | Orestes Orbe | Molding & Cabinet Installation | $600.00 | Yes |
| 25. | Benson Lighting | Lighting | $209.30 | Yes |
| 26. | Lumber Liquidators | Replace Flooring in Bedroom | $2,649.18 | Yes |
| 27. | Michael W. Brown | Grout Repair & Install Tile Backsplash | $550.00 | Yes |
| | | | $194,033.99 | |

*(Item 7 handwritten note: "Replace Kitchen Tile Backsplash")*

Purchased Townhouse 09-10-2009
* Chinese Drywall Discovered 12-10-2009
Moved out of 6227 Paradise Pt. Dr. to Coconut Grove 09-01-2010
Moved back to 6227 Paradise Pt. Dr. 05-31-2011

**Contract to Lease**

This CONTRACT TO LEASE is between

**GEORGE AND GLORIA ANDERTON** ("Prospective Tenant")
and **ANTHONY REINERTREV TRUST** ("Prospective Landlord")
for the proposed rental of the real property located at 2731 SW 22ND AVE, MIAMI, FL 33133

**1. DEPOSIT RECEIPT:** _____ ("Broker")
acknowledges receipt of a deposit in the amount of $_____

**2. DESCRIPTION OF PROPERTY:** _3_ BR _2.5_ BA ☒ furnished ☐ unfurnished ☐ inventory attached

    Parking: spaces _____2_____, vehicles prohibited (if any) _____

    Pets: ☐ prohibited ☐ permitted, restrictions: _____

    **Property Use Restrictions:** _____

    Property is to be used by _4_ occupant(s) for (purpose):     **RESIDENCE**

**3. TERMS:** Proposed Lease Term to commence on the _1_ day of _____ October _____ 2010 and end
on the _1_ day of _____ January _____ 2011 .

    Total rent $_____2,000.00_ per     MONTH ,

    Security deposit $_____2,000.00   Pet fee(s) ☐ refundable $_____
                                        ☐ non-refundable $_____

    Advance rent $_____6,000.00   Other_____   $_____

    Application fee $_____0.00   Other_____   $_____

    Security deposit, advance rent, and refundable fees will be held by ☐ Broker ☐ Prospective Landlord ☐ Other
    _____ in a separate ☐ interest bearing ☐ non-interest bearing account in a Florida financial institution.

**4. EXPENSES:** To be paid by:

| UTILITIES: | Landlord | Tenant | N/A | | MAINTENANCE: | Landlord | Tenant | N/A |
|---|---|---|---|---|---|---|---|---|
| Electric | ☐ | ☒ | ☐ | | A/C and Heating | ☒ | ☐ | ☐ |
| Gas/Fuel | ☐ | ☒ | ☐ | | Building Interior | ☒ | ☐ | ☐ |
| Sewer | ☒ | ☐ | ☐ | | Building Exterior | ☒ | ☐ | ☐ |
| Water | ☐ | ☒ | ☐ | | Lawn | ☒ | ☐ | ☐ |
| Trash Collection | ☐ | ☒ | ☐ | | Pool and Equipment | ☐ | ☐ | ☒ |
| Telephone | ☐ | ☒ | ☐ | | Pest Control | ☒ | ☐ | ☐ |
| | | | | | Appliances | ☒ | ☐ | ☐ |
| TAXES: | | | | | Common Areas | ☐ | ☐ | ☒ |
| Real Property | ☒ | ☐ | ☐ | | | | | |
| Sales and Services | ☒ | ☐ | ☐ | | INSURANCE: | | | |
| Personal Property | ☒ | ☐ | ☐ | | Personal Liability | ☒ | ☐ | ☐ |
| Intangible | ☒ | ☐ | ☐ | | Property Damage | ☒ | ☐ | ☐ |
| | | | | | Flood | ☐ | ☐ | ☐ |
| OTHER: _____ | ☐ | ☐ | ☐ | | _____ | ☐ | ☐ | ☐ |

**5. PREPARATION OF LEASE AGREEMENT:** The parties to this Contract agree to prepare or have prepared a lease
agreement consistent with the terms and conditions of this Contract. The lease agreement will be executed by all parties no
later than _____ October 1 _____ 2010 . Lease provisions which conflict with provisions of this Contract will control.

**6. ASSOCIATION APPROVAL:** Where applicable, this Contract is subject to and contingent upon the Prospective Tenant
being approved by the condominium/cooperative/homeowners association. Prospective Tenant will pay a non-refundable
application fee of $_____ and make application for association approval within _____ days from the

Prospective Landlord (____)(____) and Prospective Tenant (____)(____) acknowledge receipt of a copy of this
which is Page 1 of 2 Pages.
CL-2x 10/06 © 2006 Florida Association of REALTORS® All Rights Reserved

effective date of this Contract. In the event the Prospective Tenant is not approved, this Contract will terminate and all deposit(s) made will be refunded to the **Prospective Tenant** unless otherwise specified. The parties will make all reasonable efforts, including any required personal appearances, to obtain Association approval. Occupancy ❑ is ❑ is not permitted prior to Association approval.

**7. FAILURE TO PERFORM:** If Prospective Tenant fails to perform any of the promises of this Contract, the deposit(s) paid or agreed to be paid by **Prospective Tenant** may be retained by or for the account of **Prospective Landlord** as agreed upon liquidated damages, consideration for the execution of this Contract, and in full settlement of any claims, and **Prospective Landlord** and **Prospective Tenant** will be relieved of all obligations under this Contract. If Prospective Landlord fails to perform any of the promises of this Contract, the deposit(s) will be returned to Prospective Tenant without waiving any action for damages resulting from **Prospective Landlord's** breach.

**8. RETAINED DEPOSITS:** In the event Prospective Landlord retains a deposit, **Prospective Landlord** will pay to Broker 50% of the deposit, not to exceed any previously agreed upon compensation, as full consideration for Broker's services.

**9. USE RESTRICTIONS:** The Parties agree that the Property is being rented subject to zoning ordinances, restrictions, limitations, easements, and public utilities of record; however, this Contract is contingent upon the intended use stated in Paragraph 2 being permissible.

**10. ASSIGNABILITY:** This Contract is binding upon and inures to the benefit of the Parties and their respective heirs, personal representatives, and successors. **Prospective Tenant** may not assign this Contract without the prior written consent of the **Prospective Landlord.**

**11. OTHER AGREEMENTS:** No modification or change to this Contract will be valid or binding unless in writing and signed by both Parties.

**12. RADON GAS:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

**13. BROKERAGE DISCLOSURE:** Broker represents ❑ Prospective Landlord ❑ Prospective Tenant.

**14. FACSIMILE:** A facsimile copy of this Contract and any signatures thereon will be considered for all purposes as originals.

**15. SPECIAL CLAUSES:**  LANDLORD AND TENANT AGREE THAT THE LEASE TERM IS FO 3 MONTHS FROM OCT 1ST, 2010 THROUGH JAN 1ST 2011. THIS LEASE WILL EXTEND AUTOMATICALLY ON A MONTH TO MONTH BASIS AT THE SAME RATE OF $2000.00 PER MONTH. BOTH PARTIES WILL HAVE THE RIGHT TO CANCEL THIS LEASE NOTIFYING EITHER WITH 2 WEEKS NOTICE, IN WRITING.

This Contract is not a lease. It is intended to be a legally binding contract. If not fully understood, seek the advice of an attorney prior to signing.

Date: 9/28/10   Prospective Tenant _____   Tax ID/SSN: _____

Date: 9/28/10   Prospective Tenant _____   Tax ID/SSN: _____

Home Telephone: _____   Work Telephone: _____   Facsimile: _____

Address: _____

E-mail: _____

Date: 9/28/10   Prospective Landlord: _Miarell Hopkins_

Date: _____   Prospective Landlord: _____

This form is available for use by the entire real estate industry and is not intended to identify the user as a REALTOR. REALTOR is a registered collective membership mark that may be used only by real estate licensees who are members of the National Association of REALTORS and who subscribe to its Code of Ethics. The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of blank forms by any means including facsimile or computerized forms.

Prospective Landlord ( ___ ) ( ___ ) and Prospective Tenant ( ___ ) ( ___ ) acknowledge receipt of a copy of this page, which is Page 2 of 2 Pages.

CL-2x   10/06   © 2006   Florida Association of REALTORS®   All Rights Reserved

**Residential Lease for Single Family Home or Duplex**

*FloridaRealtors*

### (FOR A TERM NOT TO EXCEED ONE YEAR)

A BOX (☐) OR A BLANK SPACE (____) INDICATES A PROVISION WHERE A CHOICE OR DECISION MUST BE MADE BY THE PARTIES.

THE LEASE IMPOSES IMPORTANT LEGAL OBLIGATIONS. MANY RIGHTS AND RESPONSIBILITIES OF THE PARTIES ARE GOVERNED BY CHAPTER 83, PART II, RESIDENTIAL LANDLORD AND TENANT ACT, FLORIDA STATUTES. A COPY OF THE RESIDENTIAL LANDLORD AND TENANT ACT IS ATTACHED TO THIS LEASE.

1. PARTIES. This is a lease ("the Lease") between _____ **ANTHONY REINERT REV TRUST** _____
(name and address of owner of the property)

_____ **18740 SW 92ND AVE. MIAMI, FL 33157** _____ ("Landlord") and

_____ **GEORGE AND GLORIA ANDERTON** _____ ("Tenant").
(name(s) of person(s) to whom the property is leased)

Landlord's E-mail Address: _____ **MANDMS305@ATT.NET** _____

Landlord's Telephone Number: _____ **305-775-2823** _____

Tenant's E-mail Address: _____ **GLORIA.ANDERTON@FEMBI.COM** _____

Tenant's Telephone Number: _____ **305-439-9035** _____

2. PROPERTY RENTED. Landlord leases to Tenant the land and buildings located at _____ **2731 SW 22ND AVE**
(street address)

_____ **MIAMI** _____, Florida _____ **33133**
(zip code)

together with the following furniture and appliances [List all furniture and appliances. If none, write "none."] (In the Lease, the property leased, including furniture and appliances, if any, is called "the Premises"):

**BLACK LEATHER NATUZI SOFA,** _____

_____

The Premises shall be occupied only by the Tenant and the following persons: _____

_____

3. TERM. This is a lease for a term, not to exceed twelve months, beginning on _____ **October 01, 2010** _____ and
(month, day, year)

ending _____ **January 01, 2011** _____ (the "Lease Term").
(month, day, year)

4. RENT PAYMENTS, TAXES AND CHARGES. Tenant shall pay rent in the amount of $ _____ **2,000.00** (excluding taxes) for the Lease Term. The rent shall be payable by Tenant in advance in installments or in full as provided in the options below:

☐ in installments. If in installments, rent shall be payable

    ☒ monthly, on the _____ **1ST** _____ day of each month (if left blank, on the first day of each month) in the amount of

    $ _____ **2,000.00** per installment.
                            OR

    ☐ weekly, on the _____ day of each week. (If left blank, on Monday of each week.) in the amount of $ _____ per installment.

Landlord (_____) and Tenant (_____) (_____) acknowledge receipt of a copy of this page which is Page 1 of 7
RLHD-3   Rev. 4/10   ©2010   Approved for use under rule 10-2.1(a) of The Rules Regulating the Florida Bar

☒ In full on _____ **October 1, 2010** _____ In the amount of $___6,000.00__.
(date)

Tenant shall also be obligated to pay taxes on the rent when applicable in the amount of $_____ ☐ with each rent installment

☐ with the rent for the full term of the Lease. Landlord will notify Tenant if the amount of the tax changes.

**Payment Summary**

☐ If rent is paid in installments, the total payment per installment including taxes shall be in the amount of $_____.

☒ If rent is paid in full, the total payment including taxes shall be in the amount of $___6,000.00__.

All rent payments shall be payable to   **ANTHONY REINERT REV TRUST** _____ at
(name)
_____18740 SW 92ND AVE. MIAMI, FL 33157_____. (if left blank, to Landlord at Landlord's address.)
(address)

☐ If the tenancy starts on a day other than the first day of the month or week as designated above, the rent shall be prorated from
_____ through _____ in the amount of $_____ and shall be due
(date)                              (date)

on _____. (if rent paid monthly, prorate on a 30-day month.)
(date)

Tenant shall make rent payments required under the Lease by (choose all applicable) ☐ cash, ☐ personal check, ☐ money order,
☐ cashier's check, or ☐ other _____ (specify). If the payment is accepted by any
means other than cash, payment is not considered made until the other instrument is collected.

If Tenant makes a rent payment with a worthless check, Landlord can require Tenant ☐ to pay all future payments by ☐ money
order, ☐ cashier's check, or official bank check or ☒ cash or other (specify) _____ **CASHIERS CHECK**
and ☐ to pay bad check fees in the amount of $___50.00__ (not to exceed the amount prescribed by Section 68.065, Florida
Statutes).

**5. MONEY DUE PRIOR TO OCCUPANCY.** Tenant shall pay the sum of $_____ in accordance with this paragraph prior to
occupying the Premises. Tenant shall not be entitled to move in or to keys to the Premises until all money due prior to occupancy has
been paid. If no date is specified below, then funds shall be due prior to Tenant occupancy. Any funds designated in this paragraph due
after occupancy, shall be paid accordingly. Any funds due under this paragraph shall be payable to Landlord at Landlord's address or

to _____ **ANTHONY REINERT REV TRUST** _____
(name)
at _____ 18740 SW 92ND AVE. MIAMI, FL 33157 _____.
(address)

| | | | |
|---|---|---|---|
| First ☒ month's ☐ week's rent plus applicable taxes | $ _____2,000.00__ | due | **OCT 1ST, 2010** |
| Prorated rent plus applicable taxes | $ _____ | due | |
| Advance rent for ☒ month ☐ week of | | | |
| _____ plus applicable taxes | $ _____ | due | |
| Last ☐ month's ☐ week's rent plus applicable taxes | $ _____4,000.00__ | due | **OCT 1ST, 2010** |
| Security deposit | $ _____2,000.00__ | due | **OCT 1ST, 2010** |
| Additional security deposit | $ _____ | due | |
| Security deposit for homeowner's association | $ _____ | due | |
| Pet Deposit | $ _____ | due | |
| Other | $ _____ | due | |
| Other | $ _____ | due | |

Landlord ( _____ ) and Tenant ( _____ ) acknowledge receipt of a copy of this page which is Page 2 of 7
RLHD-3   Rev. 4/10 ©2010   Approved for use under rule 10-2.1(a) of The Rules Regulating the Florida Bar

6. LATE FEES. (Complete if applicable) In addition to rent, Tenant shall pay a late charge in the amount of $_____ (if left blank, 4% of the rent payment) for each rent payment made _____ days after the day it is due (if left blank, 5 days if rent is paid monthly, 1 day if rent is paid weekly).

7. PETS AND SMOKING. Unless this box ☐ is checked or a pet deposit is paid, Tenant may not keep pets or animals on the Premises. If Tenant may keep pets, the pets described in this paragraph are permitted on the Premises.

_____

(Specify number of pets, type(s), breed, maximum adult weight of pets.)

Unless this box ☐ is checked, no smoking is permitted in the Premises.

8. NOTICES.

_____  is  Landlord's  Agent.  All  notices  must  be  sent  to

☒ Landlord       **ANTHONY REINERT REV TRUST**       at _____ **18740 SW 92ND AVE. MIAMI, FL 33157**

☐ Landlord's Agent _____ at _____

unless Landlord gives Tenant written notice of a change. All notices of such names and addresses or changes thereto shall be delivered to the Tenant's residence or, if specified in writing by the Tenant, to any other address. All notices to the Landlord or the Landlord's Agent (whichever is specified above) shall be given by U.S. mail or by hand delivery.

Any notice to Tenant shall be given by U.S. mail or delivered to Tenant at the Premises. If Tenant is absent from the Premises, a notice to Tenant may be given by leaving a copy of the notice at Premises.

9. UTILITIES. Tenant shall pay for all utilities services during the Lease Term and connection charges and deposits for activating existing utility connections to the Premises except for _____, that Landlord agrees to provide at Landlord's expense (if blank, then "NONE").

10. MAINTENANCE. Landlord shall be responsible for compliance with Section 83.51, Florida Statutes, and shall be responsible for maintenance and repair of the Premises, unless otherwise stated below: (Fill in each blank space with "Landlord" for Landlord or "Tenant" for Tenant, if left blank, Landlord will be responsible for the item):

| | | | | | | |
|---|---|---|---|---|---|---|
| Landlord | roofs | Landlord | windows | Landlord | screens | Landlord | steps |
| Landlord | doors | Landlord | floors | Landlord | porches | Landlord | exterior walls |
| Landlord | foundations | Landlord | plumbing | Landlord | structural components | | |
| Landlord | heating | Landlord | hot water | Tenant | running water | Landlord | locks and keys |
| Landlord | electrical system | | | Tenant | cooling | Landlord | smoke detection devices |
| Tenant | garbage removal/ outside receptacles | | | | | | |
| Landlord | extermination of rats, mice, roaches, ants and bedbugs | | | | | | |
| Landlord | extermination of wood-destroying organisms | | | | | | |
| Landlord | lawn/shrubbery | | pool/spa/hot tub | | | | |
| Landlord | water treatment | Landlord | filters (specify) | | LANDLORD WILL SUPPLY TENANT WILL | | |
| Landlord | ceilings | Landlord | interior walls | | | | |
| | Other (specify) | | | | CHANGE MONTHLY | | |

Tenant shall notify _____ **MICHELE HOPKINS** _____ at ____ **18740 SW 92ND AVE. MIAMI, FL 33157** ___ (if left blank, Landlord at
                                    (name)                                              (address)

Landlord's address) and _____ **305-215-2823** _____ of maintenance and repair requests,
                              (telephone number)

11. ASSIGNMENT. Unless this box ☐ is checked, Tenant may not assign the Lease or sublease all or any part of the Premises without first obtaining the Landlord's written approval and consent to the assignment or sublease.

12. KEYS AND LOCKS. Landlord shall furnish Tenant

__2__   # of sets of keys to the dwelling
_____ # of mail box keys
__2__   # of garage door openers

Landlord ( ____ ) and Tenant ( ____ ) acknowledge receipt of a copy of this page which is Page 3 of 7
RLHD-3   Rev. 4/10 ©2010  Approved for use under rule 10-2.1(a) of The Rules Regulating the Florida Bar

If there is a homeowner's association, Tenant will be provided with the following to access the association's common areas/facilities:

|   | # of keys to _____ | |
|---|---|---|
| 2 | # of remote controls to _____ | **FRONT GATE** |
|   | # of electronic cards to _____ | |
|   | other (specify) to _____ | |

At end of Lease Term, all items specified in this paragraph shall be returned to _____ **MICHELE HOPKINS**
                                                                                                                                      (name)
at _____ **18740 SW 92ND AVE. MIAMI, FL 33157** _____ (if left blank, Landlord at Landlord's address).
                              (address)

**13. LEAD-BASED PAINT.** ☐ Check and complete if the dwelling was built before January 1, 1978. Lead Warning Statement (when used in this article, the term Lessor refers to Landlord and the term Lessee refers to Tenant):

Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, Lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.

Lessor's Disclosure (initial)

_____ (a) Presence of lead-based paint or lead-based paint hazards (check (i) or (ii) below):

(i) ☐ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

_____

_____

_____ (ii) ☒ Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

_____ (b) Records and reports available to the Lessor (check (i) or (ii) below):

(i) ☐ Lessor has provided the Lessee with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

_____

_____

(ii) ☐ Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

Lessee's Acknowledgment (initial)

_____ (c) Lessee has received copies of all information listed above.
_____ (d) Lessee has received the pamphlet *Protect Your Family From Lead in Your Home*.

Agent's Acknowledgment (initial)

_____ (e) Agent has informed the Lessor of the Lessor's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

Certification of Accuracy
The following parties have reviewed the information above and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate.

| Lessor's signature | Date | Lessor's signature | 9 - 28 - 10 Date |
|---|---|---|---|
| Lessee's signature | 9/28/10 Date | Lessee's signature | 9-28-10 Date |
| Agent's signature | Date | Agent's signature | Date |

**14. SERVICEMEMBER.** If Tenant is a member of the United States Armed Forces on active duty or state active duty or a member of the Florida National Guard or United States Reserve Forces, the Tenant has rights to terminate the Lease as provided in Section 83.682, Florida Statutes, the provisions of which can be found in the attachment to this Lease.

Landlord (_____) and Tenant (_____) acknowledge receipt of a copy of this page which is Page 4 of 7
RLHD-3   Rev. 4/10   ©2010   Approved for use under rule 10-2.1(a) of The Rules Regulating the Florida Bar

15. LANDLORD'S ACCESS TO THE PREMISES. Landlord's Agent may enter the Premises in the following circumstances:
    A. At any time for the protection or preservation of the Premises.
    B. After reasonable notice to Tenant at reasonable times for the purpose of repairing the Premises.
    C. To inspect the Premises; make necessary or agreed-upon repairs, decorations, alterations, or improvements; supply agreed services; or exhibit the Premises to prospective or actual purchasers, mortgagees, tenants, workers, or contractors under any of the following circumstances:
        (1) with Tenant's consent;
        (2) in case of emergency;
        (3) when Tenant unreasonably withholds consent; or
        (4) if Tenant is absent from the Premises for a period of at least one-half a rental installment period. (If the rent is current and Tenant notifies Landlord of an intended absence, then Landlord may enter only with Tenant's consent or for the protection or preservation of the Premises.)

16. HOMEOWNER'S ASSOCIATION. IF TENANT MUST BE APPROVED BY A HOMEOWNER'S ASSOCIATION ("ASSOCIATION"), LANDLORD AND TENANT AGREE THAT THE LEASE IS CONTINGENT UPON RECEIVING APPROVAL FROM THE ASSOCIATION. ANY APPLICATION FEE REQUIRED BY AN ASSOCIATION SHALL BE PAID BY ☐ LANDLORD ☐ TENANT. IF SUCH APPROVAL IS NOT OBTAINED PRIOR TO COMMENCEMENT OF LEASE TERM, EITHER PARTY MAY TERMINATE THE LEASE BY WRITTEN NOTICE TO THE OTHER GIVEN AT ANY TIME PRIOR TO APPROVAL BY THE ASSOCIATION, AND IF THE LEASE IS TERMINATED, TENANT SHALL RECEIVE RETURN OF DEPOSITS SPECIFIED IN ARTICLE 5, IF MADE. If the Lease is not terminated, rent shall abate until the approval is obtained from the association. Tenant agrees to use due diligence in applying for association approval and to comply with the requirements for obtaining approval. ☐ Landlord ☐ Tenant shall pay the security deposit required by the association, if applicable.

17. USE OF THE PREMISES. Tenant shall use the Premises for residential purposes. Tenant shall have exclusive use and right of possession to the dwelling. The Premises shall be used so as to comply with all state, county, municipal laws and ordinances, and all covenants and restrictions affecting the Premises and all rules and regulations of homeowners' associations affecting the Premises. Tenant may not paint or make any alterations or improvements to the Premises without first obtaining the Landlord's written consent to the alteration or improvement. However, unless this box ☐ is checked, Tenant may hang pictures and install window treatments in the Premises without Landlord's consent, provided Tenant removes all such items before the end of the Lease Term and repairs all damage resulting from the removal. Any improvements or alterations to the Premises made by the Tenant shall become Landlord's property. Tenant agrees not to use, keep, or store on the Premises any dangerous, explosive, toxic material which will increase the probability of fire or which would increase the cost of insuring the Premises.

18. RISK OF LOSS/INSURANCE.
    A. Landlord and Tenant shall each be responsible for loss, damage, or injury caused by its own negligence or willful conduct.
    B. Tenant should carry insurance covering Tenant's personal property and Tenant's liability insurance.

19. PROHIBITED ACTS BY LANDLORD. Landlord is prohibited from taking certain actions as described in Section 83.67, Florida Statutes, the provisions of which can be found in the attachment to this Lease.

20. CASUALTY DAMAGE. If the Premises are damaged or destroyed other than by wrongful or negligent acts of Tenant or persons on the Premises with Tenant's consent, so that the use of the Premises is substantially impaired, Tenant may terminate the Lease within 30 days after the damage or destruction and Tenant will immediately vacate the Premises. If Tenant vacates, Tenant is not liable for rent that would have been due after the date of termination. Tenant may vacate the part of the Premises rendered unusable by the damage or destruction, in which case Tenant's liability for rent shall be reduced by the fair rental value of the part of the Premises that was damaged or destroyed.

21. DEFAULTS/REMEDIES. Should a party to the Lease fail to fulfill their responsibilities under the Lease or need to determine whether there has been a default of the Lease, refer to Part II, Chapter 83, entitled Florida Residential Landlord and Tenant Act which contains information on defaults and remedies. A copy of the current version of this Act is attached to the Lease.

22. SUBORDINATION. The Lease is automatically subordinate to the lien of any mortgage encumbering the fee title to the Premises from time to time.

23. LIENS. THE INTEREST OF THE LANDLORD SHALL NOT BE SUBJECT TO LIENS FOR IMPROVEMENTS MADE BY THE TENANT AS PROVIDED IN SECTION 713.10, FLORIDA STATUTES. Tenant shall notify all parties performing work on the Premises at Tenant's request that the Lease does not allow any liens to attach to Landlord's interest.

24. RENEWAL/EXTENSION. The Lease can be renewed or extended only by a written agreement signed by both Landlord and Tenant, but the term of a renewal or extension together with the original Lease Term may not exceed one year. A new lease is required for each year.

25. TENANT'S TELEPHONE NUMBER. Tenant shall, within 5 business days of obtaining telephone services at the Premises, send written notice to Landlord of Tenant's telephone numbers at the Premises.

26. ATTORNEYS' FEES. In any lawsuit brought to enforce the Lease or under applicable law, the party in whose favor a judgment or decree has been rendered may recover reasonable court costs, including attorneys' fees, from the non-prevailing party.

Landlord _____ and Tenant _____ acknowledge receipt of a copy of this page which is Page 5 of 7
RLHD-3   Rev. 4/10  ©2010  Approved for use under rule 10-2.1(a) of The Rules Regulating the Florida Bar

**27. MISCELLANEOUS.**

A. Time is of the essence of the performance of each party's obligations under the Lease.

B. The Lease shall be binding upon and for the benefit of the heirs, personal representatives, successors, and permitted assigns of Landlord and Tenant, subject to the requirements specifically mentioned in the Lease. Whenever used, the singular number shall include the plural or singular and the use of any gender shall include all appropriate genders.

C. The agreements contained in the Lease set forth the complete understanding of the parties and may not be changed or terminated orally.

D. No agreement to accept surrender of the Premises from Tenant will be valid unless in writing and signed by Landlord.

E. All questions concerning the meaning, execution, construction, effect, validity, and enforcement of the Lease shall be determined pursuant to the laws of Florida.

F. A facsimile copy of the Lease and any signatures hereon shall be considered for all purposes originals.

G. As required by law, Landlord makes the following disclosure: "RADON GAS." Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

**28. BROKERS' COMMISSION.** ☐ Check and complete if applicable. The brokerage companies named below will be paid the commission set forth in this paragraph by ☐ Landlord ☐ Tenant for procuring a tenant for this transaction.

| | |
|---|---|
| Real Estate Licensee | Real Estate Licensee |
| Real Estate Brokerage Company | Real Estate Brokerage Company |
| Commission | Commission |

**29. TENANT'S PERSONAL PROPERTY.** TENANT MUST INITIAL IN THIS BOX ☐ FOR THE FOLLOWING PROVISION TO APPLY. BY SIGNING THIS RENTAL AGREEMENT, THE TENANT AGREES THAT UPON SURRENDER, ABANDONMENT, OR RECOVERY OF POSSESSION OF THE DWELLING UNIT DUE TO THE DEATH OF THE LAST REMAINING TENANT, AS PROVIDED BY CHAPTER 83, FLORIDA STATUTES, THE LANDLORD SHALL NOT BE LIABLE OR RESPONSIBLE FOR STORAGE OR DISPOSITION OF THE TENANT'S PERSONAL PROPERTY.

The Lease has been executed by the parties on the dates indicated below.

| | |
|---|---|
| _Michael Hopkins_ | 9/28/10 |
| Landlord's Signature | Date |
| | |
| Landlord's Signature | Date |
| | |
| Landlord's Signature | Date |
| _[signature]_ | 9-28-10 |
| Tenant's Signature | Date |
| _[signature]_ | 9-28-10 |
| Tenant's Signature | Date |

This form was completed with the assistance of:

Name of Individual: _____

Name of Business: _____

Address: _____

Telephone Number: _____

Landlord [___] and Tenant [___] acknowledge receipt of a copy of this page which is Page 6 of 7

RLHD-3    Rev. 4/10    ©2010   Approved for use under rule 10-2.1(a) of The Rules Regulating the Florida Bar

## Early Termination Fee/Liquidated Damages Addendum

[ ☐ ] I agree, as provided in the rental agreement, to pay $ _____ (an amount that does not exceed two months' rent) as liquidated damages or an early termination fee if I elect to terminate the rental agreement and the landlord waives the right to seek additional rent beyond the month in which the landlord retakes possession.

[ ☒ ] I do not agree to liquidated damages or an early termination fee, and I acknowledge that the landlord may seek damages as provided by law.


_____         _____
Landlord's Signature                                              Date   9/28/10


_____         _____
Landlord's Signature                                              Date


_____         _____
Landlord's Signature                                              Date


X_____         _____
Tenant's Signature                                               Date   9 | 28 | 2010


X_____         _____
Tenant's Signature                                               Date   9 - 28 - 10


Landlord (____) (____) and Tenant (____) (____) acknowledge receipt of a copy of this page which is Page 7 of 7
RLHD-3   Rev. 4/10   ©2010   Approved for use under rule 10-2.1(a) of The Rules Regulating the Florida Bar

Florida Residential Landlord and Tenant Act

PART II

RESIDENTIAL TENANCIES

83.40   Short title.
83.41   Application.
83.42   Exclusions from application of part.
83.43   Definitions.
83.44   Obligation of good faith.
83.45   Unconscionable rental agreement or provision.
83.46   Rent; duration of tenancies.
83.47   Prohibited provisions in rental agreements.
83.48   Attorney's fees.
83.49   Deposit money or advance rent; duty of landlord and tenant.
83.50   Disclosure.
83.51   Landlord's obligation to maintain premises.
83.52   Tenant's obligation to maintain dwelling unit.
83.53   Landlord's access to dwelling unit.
83.535  Flotation bedding system; restrictions on use.
83.54   Enforcement of rights and duties; civil action.
83.55   Right of action for damages.
83.56   Termination of rental agreement.
83.57   Termination of tenancy without specific term.
83.575  Termination of tenancy with specific duration.
83.58   Remedies; tenant holding over.
83.59   Right of action for possession.
83.595  Choice of remedies upon breach or early termination by tenant.
83.60   Defenses to action for rent or possession; procedure.
83.61   Disbursement of funds in registry of court; prompt final hearing.
83.62   Restoration of possession to landlord.
83.625  Power to award possession and enter money judgment.
83.63   Casualty damage.
83.64   Retaliatory conduct.
83.67   Prohibited practices.
83.681  Orders to enjoin violations of this part.
83.682  Termination of rental agreement by a servicemember.

**83.40  Short title.** This part shall be known as the "Florida Residential Landlord and Tenant Act."
History.--s. 2, ch. 73-330.

**83.41  Application.** This part applies to the rental of a dwelling unit.
History.--s. 2, ch. 73-330; ss. 2, 20, ch. 82-66.

**83.42  Exclusions from application of part.** This part does not apply to:
(1)  Residency or detention in a facility, whether public or private, when residence or detention is incidental to the provision of medical, geriatric, educational, counseling, religious, or similar services.
(2)  Occupancy under a contract of sale of a dwelling unit or the property of which it is a part.
(3)  Transient occupancy in a hotel, condominium, motel, roominghouse, or similar public lodging, or transient occupancy in a mobile home park.
(4)  Occupancy by a holder of a proprietary lease in a cooperative apartment.
(5)  Occupancy by an owner of a condominium unit.
History.--s. 2, ch. 73-330.

Page 1 of 11 of the Attachment to the Residential Lease for Single Family Home or Duplex

**83.43 Definitions.** As used in this part, the following words and terms shall have the following meanings unless some other meaning is plainly indicated:

(1) "Building, housing, and health codes" means any law, ordinance, or governmental regulation concerning health, safety, sanitation or fitness for habitation, or the construction, maintenance, operation, occupancy, use, or appearance, of any dwelling unit.

(2) "Dwelling unit" means:

(a) A structure or part of a structure that is rented for use as a home, residence, or sleeping place by one person or by two or more persons who maintain a common household.

(b) A mobile home rented by a tenant.

(c) A structure or part of a structure that is furnished, with or without rent, as an incident of employment for use as a home, residence, or sleeping place by one or more persons.

(3) "Landlord" means the owner or lessor of a dwelling unit.

(4) "Tenant" means any person entitled to occupy a dwelling unit under a rental agreement.

(5) "Premises" means a dwelling unit and the structure of which it is a part and a mobile home lot and the appurtenant facilities and grounds, areas, facilities, and property held out for the use of tenants generally.

(6) "Rent" means the periodic payments due the landlord from the tenant for occupancy under a rental agreement and any other payments due the landlord from the tenant as may be designated as rent in a written rental agreement.

(7) "Rental agreement" means any written agreement, including amendments or addenda, or oral agreement for a duration of less than 1 year, providing for use and occupancy of premises.

(8) "Good faith" means honesty in fact in the conduct or transaction concerned.

(9) "Advance rent" means moneys paid to the landlord to be applied to future rent payment periods, but does not include rent paid in advance for a current rent payment period.

(10) "Transient occupancy" means occupancy when it is the intention of the parties that the occupancy will be temporary.

(11) "Deposit money" means any money held by the landlord on behalf of the tenant, including, but not limited to, damage deposits, security deposits, advance rent deposit, pet deposit, or any contractual deposit agreed to between landlord and tenant either in writing or orally.

(12) "Security deposits" means any moneys held by the landlord as security for the performance of the rental agreement, including, but not limited to, monetary damage to the landlord caused by the tenant's breach of lease prior to the expiration thereof.

(13) "Legal holiday" means holidays observed by the clerk of the court.

(14) "Servicemember" shall have the same meaning as provided in s. 250.01.

(15) "Active duty" shall have the same meaning as provided in s. 250.01.

(16) "State active duty" shall have the same meaning as provided in s. 250.01.

(17) "Early termination fee" means any charge, fee, or forfeiture that is provided for in a written rental agreement and is assessed to a tenant when a tenant elects to terminate the rental agreement, as provided in the agreement, and vacates a dwelling unit before the end of the rental agreement. An early termination fee does not include:

(a) Unpaid rent and other accrued charges through the end of the month in which the landlord retakes possession of the dwelling unit.

(b) Charges for damages to the dwelling unit.

(c) Charges associated with a rental agreement settlement, release, buy-out, or accord and satisfaction agreement.

History.--s. 2, ch. 73-330; s. 1, ch. 74-143; s. 1, ch. 81-190; s. 3, ch. 83-151; s. 17, ch. 94-170; s. 2, ch. 2003-72; s. 1, ch. 2008-131.

**83.44 Obligation of good faith.** Every rental agreement or duty within this part imposes an obligation of good faith in its performance or enforcement.

History.--s. 2, ch. 73-330.

**83.45 Unconscionable rental agreement or provision.**

(1) If the court as a matter of law finds a rental agreement or any provision of a rental agreement to have been unconscionable at the time it was made, the court may refuse to enforce the rental agreement, enforce the remainder of the rental agreement without the unconscionable provision, or so limit the application of any unconscionable provision as to avoid any unconscionable result.

(2) When it is claimed or appears to the court that the rental agreement or any provision thereof may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to meaning, relationship of the parties, purpose, and effect to aid the court in making the determination.

History.--s. 2, ch. 73-330.

**83.46 Rent; duration of tenancies.**

(1) Unless otherwise agreed, rent is payable without demand or notice; periodic rent is payable at the beginning of each rent payment period; and rent is uniformly apportionable from day to day.

(2) If the rental agreement contains no provision as to duration of the tenancy, the duration is determined by the periods

for which the rent is payable. If the rent is payable weekly, then the tenancy is from week to week; if payable monthly, tenancy is from month to month; if payable quarterly, tenancy is from quarter to quarter; if payable yearly, tenancy is from year to year.

(3) If the dwelling unit is furnished without rent as an incident of employment and there is no agreement as to the duration of the tenancy, the duration is determined by the periods for which wages are payable. If wages are payable weekly or more frequently, then the tenancy is from week to week; and if wages are payable monthly or no wages are payable, then the tenancy is from month to month. In the event that the employee ceases employment, the employer shall be entitled to rent for the period from the day after the employee ceases employment until the day that the dwelling unit is vacated at a rate equivalent to the rate charged for similarly situated residences in the area. This subsection shall not apply to an employee or a resident manager of an apartment house or an apartment complex when there is a written agreement to the contrary.

History.--s. 2, ch. 73-330; s. 2, ch. 81-190; s. 2, ch. 87-195; s. 2, ch. 90-133; s. 1, ch. 93-255.

**83.47  Prohibited provisions in rental agreements.**
(1)  A provision in a rental agreement is void and unenforceable to the extent that it:
(a)  Purports to waive or preclude the rights, remedies, or requirements set forth in this part.
(b)  Purports to limit or preclude any liability of the landlord to the tenant or of the tenant to the landlord, arising under law.
(2)  If such a void and unenforceable provision is included in a rental agreement entered into, extended, or renewed after the effective date of this part and either party suffers actual damages as a result of the inclusion, the aggrieved party may recover those damages sustained after the effective date of this part.

History.--s. 2, ch. 73-330.

**83.48  Attorney's fees.**--In any civil action brought to enforce the provisions of the rental agreement or this part, the party in whose favor a judgment or decree has been rendered may recover reasonable court costs, including attorney's fees, from the nonprevailing party.

History.--s. 2, ch. 73-330; s. 4, ch. 83-151.

**83.49  Deposit money or advance rent; duty of landlord and tenant.**
(1)  Whenever money is deposited or advanced by a tenant on a rental agreement as security for performance of the rental agreement or as advance rent for other than the next immediate rental period, the landlord or the landlord's agent shall either:
(a)  Hold the total amount of such money in a separate non-interest-bearing account in a Florida banking institution for the benefit of the tenant or tenants. The landlord shall not commingle such moneys with any other funds of the landlord or hypothecate, pledge, or in any other way make use of such moneys until such moneys are actually due the landlord;
(b)  Hold the total amount of such money in a separate interest-bearing account in a Florida banking institution for the benefit of the tenant or tenants, in which case the tenant shall receive and collect interest in an amount of at least 75 percent of the annualized average interest rate payable on such account or interest at the rate of 5 percent per year, simple interest, whichever the landlord elects. The landlord shall not commingle such moneys with any other funds of the landlord or hypothecate, pledge, or in any other way make use of such moneys until such moneys are actually due the landlord; or
(c)  Post a surety bond, executed by the landlord as principal and a surety company authorized and licensed to do business in the state as surety, with the clerk of the circuit court in the county in which the dwelling unit is located in the total amount of the security deposits and advance rent he or she holds on behalf of the tenants or $50,000, whichever is less. The bond shall be conditioned upon the faithful compliance of the landlord with the provisions of this section and shall run to the Governor for the benefit of any tenant injured by the landlord's violation of the provisions of this section. In addition to posting the surety bond, the landlord shall pay to the tenant interest at the rate of 5 percent per year, simple interest. A landlord, or the landlord's agent, engaged in the renting of dwelling units in five or more counties, who holds deposit moneys or advance rent and who is otherwise subject to the provisions of this section, may, in lieu of posting a surety bond in each county, elect to post a surety bond in the form and manner provided in this paragraph with the office of the Secretary of State. The bond shall be in the total amount of the security deposit or advance rent held on behalf of tenants or in the amount of $250,000, whichever is less. The bond shall be conditioned upon the faithful compliance of the landlord with the provisions of this section and shall run to the Governor for the benefit of any tenant injured by the landlord's violation of this section. In addition to posting a surety bond, the landlord shall pay to the tenant interest on the security deposit or advance rent held on behalf of that tenant at the rate of 5 percent per year simple interest.
(2)  The landlord shall, within 30 days of receipt of advance rent or a security deposit, notify the tenant in writing of the manner in which the landlord is holding the advance rent or security deposit and the rate of interest, if any, which the tenant is to receive and the time of interest payments to the tenant. Such written notice shall:
(a)  Be given in person or by mail to the tenant.
(b)  State the name and address of the depository where the advance rent or security deposit is being held, whether the advance rent or security deposit is being held in a separate account for the benefit of the tenant or is commingled with

Page 3 of 11 of the Attachment to the Residential Lease for Single Family Home or Duplex

other funds of the landlord, and, if commingled, whether such funds are deposited in an interest-bearing account in a Florida banking institution.

(c) Include a copy of the provisions of subsection (3).

Subsequent to providing such notice, if the landlord changes the manner or location in which he or she is holding the advance rent or security deposit, he or she shall notify the tenant within 30 days of the change according to the provisions herein set forth. This subsection does not apply to any landlord who rents fewer than five individual dwelling units. Failure to provide this notice shall not be a defense to the payment of rent when due.

(3)(a)  Upon the vacating of the premises for termination of the lease, if the landlord does not intend to impose a claim on the security deposit, the landlord shall have 15 days to return the security deposit together with interest if otherwise required, or the landlord shall have 30 days to give the tenant written notice by certified mail to the tenant's last known mailing address of his or her intention to impose a claim on the deposit and the reason for imposing the claim. The notice shall contain a statement in substantially the following form:

This is a notice of my intention to impose a claim for damages in the amount of _____ upon your security deposit, due to _____. It is sent to you as required by s. 83.49(3), Florida Statutes. You are hereby notified that you must object in writing to this deduction from your security deposit within 15 days from the time you receive this notice or I will be authorized to deduct my claim from your security deposit. Your objection must be sent to  (landlord's address) .

If the landlord fails to give the required notice within the 30-day period, he or she forfeits the right to impose a claim upon the security deposit.

(b) Unless the tenant objects to the imposition of the landlord's claim or the amount thereof within 15 days after receipt of the landlord's notice of intention to impose a claim, the landlord may then deduct the amount of his or her claim and shall remit the balance of the deposit to the tenant within 30 days after the date of the notice of intention to impose a claim for damages.

(c) If either party institutes an action in a court of competent jurisdiction to adjudicate the party's right to the security deposit, the prevailing party is entitled to receive his or her court costs plus a reasonable fee for his or her attorney. The court shall advance the cause on the calendar.

(d) Compliance with this section by an individual or business entity authorized to conduct business in this state, including Florida-licensed real estate brokers and sales associates, shall constitute compliance with all other relevant Florida Statutes pertaining to security deposits held pursuant to a rental agreement or other landlord-tenant relationship. Enforcement personnel shall look solely to this section to determine compliance. This section prevails over any conflicting provisions in chapter 475 and in other sections of the Florida Statutes, and shall operate to permit licensed real estate brokers to disburse security deposits and deposit money without having to comply with the notice and settlement procedures contained in s. 475.25(1)(d).

(4)  The provisions of this section do not apply to transient rentals by hotels or motels as defined in chapter 509; nor do they apply in those instances in which the amount of rent or deposit, or both, is regulated by law or by rules or regulations of a public body, including public housing authorities and federally administered or regulated housing programs including s. 202, s. 221(d)(3) and (4), s. 236, or s. 8 of the National Housing Act, as amended, other than for rent stabilization. With the exception of subsections (3), (5), and (6), this section is not applicable to housing authorities or public housing agencies created pursuant to chapter 421 or other statutes.

(5)  Except when otherwise provided by the terms of a written lease, any tenant who vacates or abandons the premises prior to the expiration of the term specified in the written lease, or any tenant who vacates or abandons premises which are the subject of a tenancy from week to week, month to month, quarter to quarter, or year to year, shall give at least 7 days' written notice by certified mail or personal delivery to the landlord prior to vacating or abandoning the premises which notice shall include the address where the tenant may be reached. Failure to give such notice shall relieve the landlord of the notice requirement of paragraph (3)(a) but shall not waive any right the tenant may have to the security deposit or any part of it.

(6)  For the purposes of this part, a renewal of an existing rental agreement shall be considered a new rental agreement, and any security deposit carried forward shall be considered a new security deposit.

(7)  Upon the sale or transfer of title of the rental property from one owner to another, or upon a change in the designated rental agent, any and all security deposits or advance rents being held for the benefit of the tenants shall be transferred to the new owner or agent, together with any earned interest and with an accurate accounting showing the amounts to be credited to each tenant account. Upon the transfer of such funds and records as stated herein, and upon transmittal of a written receipt therefor, the transferor shall be free from the obligation imposed in subsection (1) to hold such moneys on behalf of the tenant. However, nothing herein shall excuse the landlord or agent for a violation of the provisions of this section while in possession of such deposits.

(8)  Any person licensed under the provisions of s. 509.241, unless excluded by the provisions of this part, who fails to comply with the provisions of this part shall be subject to a fine or to the suspension or revocation of his or her license by the Division of Hotels and Restaurants of the Department of Business and Professional Regulation in the manner provided in s. 509.261.

(9)  In those cases in which interest is required to be paid to the tenant, the landlord shall pay directly to the tenant, or credit against the current month's rent, the interest due to the tenant at least once annually. However, no interest shall be

**GLORIA L ANDERTON**
6227 PARADISE PT DR
PALMETTO BAY, FL 33157

03-10

1001

63-1322/631
32025

9-28-10 Date

Pay to the
Order of _Anthony Reinert Rev. Trust_ $ 8000 00/XX

_Eight Thousand & 00/100_ Dollars

**COLONIAL BANK**
You'll like it here.™
Miami, Florida
24 Hr Colonial Connection 1-877-502-2265

3 mos.
For _Rent + 1 mo. sec. deposit_

Gwen Anderton

⑈063113222⑈ 805654081⑈ 1001

Nov. 2010

For Oct. 2010 - Dec 2010 = $6,000

+ Security Deposit = 2,000

= $8000

For credit to the account of the within named payee
FOR DEPOSIT ONLY at M&I Bank >075912068<
RW Baird-Baltimore-15505
****2540  Baltimore-V15505

>075912068<
M&I Bank

1499100000032760
DepositEdge 098

10/1/2010



**WACHOVIA**
A Wells Fargo Company

Wells Fargo Advisors

ACCOUNT ACTIVITY

**I want to...**
View Recent Activity
Transfer Funds
Pay Bills

Account  CRWN CLASSIC *4392  [Go]  **Action**  View Paper
Statements
Order Checks
Check Search
View Check Card
Rewards
Go to Customer
Service Page

Save the easy way: Set up automatic transfers
to Premium Savings. Learn More

---

**Find Transactions**

Date Range:  Last 15 days   – OR –   01/03/2011   to   01/03/2011
(MM/DD/YYYY)          (MM/DD/YYYY)

Sort By:  All Transaction Types

[Go]   **Note:** You have account history available from: 10/13/2010
To view up to 7 years, go to View Paper Statements

---

Posted Balance as of 01/06/2011 : $44,850.08 *   Available Balance as of 01/07/2011 : $44,367.60 **   (View Holds)

**Transactions for: CRWN CLASSIC *4392**

| Date ▾ | Type | Description | Withdrawals | Deposits | Balance |
|---|---|---|---|---|---|
| 01/03/2011 | Other | AUTOMATED DEBIT AMERICAN FUNDS INVESTMENT | $500.00 | | $45,722.20 |
| 01/03/2011 | Other | AUTOMATED DEBIT ROYAL HARBOUR YA ONLINE PMT | $1,923.00 | | $46,222.20 |
| 01/03/2011 | Other | AUTOMATED DEBIT ANTHONY REINERT ONLINE PMT | $2,000.00 | | $48,145.20 |
| 01/03/2011 | Other | AUTOMATED DEBIT DOVENMUEHLE ONLINE PMT | $3,544.26 | | $50,145.20 |
| 01/03/2011 | Check View | CHECK 3278 | $10,000.00 | | $53,689.46 |
| 01/03/2011 | Purchase | PURCHASE LOS RANCHOS RESTAU 01/02 | $4.32 | | $63,689.46 |
| 01/03/2011 | Purchase | PURCHASE POLLO TROPICAL #9 12/31 | $7.09 | | $63,693.78 |
| 01/03/2011 | Purchase | PURCHASE BLOCKBUSTER INC#12 12/31 | $21.20 | | $63,700.87 |
| 01/03/2011 | Purchase | PURCHASE FIVE GUYS—FL # 04 01/02 | $24.33 | | $63,722.07 |
| 01/03/2011 | Purchase | PURCHASE MARATHON OIL 05766 01/01 | $40.93 | | $63,746.40 |
| 01/03/2011 | Purchase | PURCHASE MARSHALLS MARSHALLS 12/31 | $87.69 | | $63,787.33 |
| 01/03/2011 | Purchase | PURCHASE MR. MORES 12/30 | $89.35 | | $63,875.02 |

Wachovia Online BillPay | Payment Center

3/2/11 10:26 AM

| Biller Name | Account | Amount | Pay Date | Confirmation | Status |
|---|---|---|---|---|---|
| Anthony Reinert Rev Trust | CRWN CLASSIC *84392 | $2000.00 | 02/03/2011 | C17PV-KWF0M | Paid |

Rental

Merties Feb 11 rent, Grove house

Check #2449857 was mailed to Anthony Reinert Rev Trust for receipt by 02/03/2011. Funds were withdrawn from your CRWN CLASSIC *84392 on 02/03/2011. Contact Wachovia Online BillPay if you have a question about when your funds were withdrawn.

If you have a question about your bill or about crediting the payment to your biller account, please contact Anthony Reinert Rev Trust directly.

If you have a question about this payment, you can send us a payment inquiry . Wachovia Online BillPay Customer Service typically responds to payment inquiries within 24 to 48 hours.

Wachovia Online BillPay | Payment Center

| Biller Name | Account | Amount | Pay Date | Confirmation | Status |
|---|---|---|---|---|---|
| ~~Rev Trust~~ Rev Trust | CRWN CLASSIC *84392 | $2,000.00 | 03/07/2011 | C4L5B-2JGRK | Paid |

*ental REINERT

Memo: 3/11 rent

Check #37533074 was mailed to Anthony Reinert Rev Trust for receipt by 03/07/2011. Funds were withdrawn from your CRWN CLASSIC *84392 on 03/07/2011. Contact Wachovia Online BillPay if you have a question about when your funds were withdrawn.

If you have a question about your bill or about crediting the payment to your biller account, please contact Anthony Reinert Rev Trust directly.

If you have a question about this payment, you can send us a payment inquiry. Wachovia Online BillPay Customer Service typically responds to payment inquiries within 24 to 48 hours.

Wachovia Online BillPay | Payment Center                                                                4/12/11 9:31 PM

| Biller Name | Account | Amount | Pay Date | Confirmation | Status |
|---|---|---|---|---|---|
| Anthony Reinert Rev Trust *ental | CRWN CLASSIC *84392 | $1,910.00 | 04/08/2011 | C81BV-MCDQN | Paid |

Memo: rent April/ net fridge repair $90

Check #55029138 was mailed to Anthony Reinert Rev Trust for receipt by 04/08/2011. Funds were withdrawn from your CRWN CLASSIC *84392 on 04/08/2011. Contact Wachovia Online BillPay if you have a question about when your funds were withdrawn.

If you have a question about your bill or about crediting the payment to your biller account, please contact Anthony Reinert Rev Trust directly.

If you have a question about this payment, you can send us a payment inquiry . Wachovia Online BillPay Customer Service typically responds to payment inquiries within 24 to 48 hours.

Wachovia Online BillPay | Verify Payments                                    5/10/11 7:46 AM

 **WACHOVIA**

Pay Bills
**Payment Confirmation**
Print
You've scheduled the following bill(s) for payment. If you want to keep any additional information on file with the bill, click the Note link.

| Biller Name | Account | Amount | Pay Date | Confirmation |
|---|---|---|---|---|
| Anthony Reinert Rev Trust | CRWN CLASSIC *84392 | $2,000.00 | 05/13/2011 | CCNND-XLQF1 May Rent 2731 Note *ental |

Total: $2,000.00

**Done**

Wachovia Securities is now Wells Fargo Advisors. Wells Fargo Advisors is the trade name used by two separate registered broker-dealers: Wells Fargo Advisors, LLC and Wells Fargo Advisors Financial Network, LLC, Members SIPC, non-bank affiliates of Wells Fargo & Company. Wachovia is a Wells Fargo Company.

Insurance products are offered through our affiliated non-bank insurance agencies.

https://prod.wachoviabillpay.com/cw411/wps



Pak 2 Go Movers / Storage (14)

Move 10/2010 – 6/2011 + Storage

| Date | Amount Paid | | ~~Check~~ | all paid (by Wachov Debit) |
|---|---|---|---|---|
| 10/4/10 | 1317.61 | move out | ✓ | ✓ |
| 11/15/10 | 219.22 | storage | ✓ | |
| 12/13/10 | 233.13 | storage | ✓ | |
| 1/18/11 | 233.13 | storage | ✓ | |
| 2/14/11 | 233.13 | storage | ✓ | |
| 3/16/11 | 233.13 | storage | ✓ | |
| 4/19/11 | 233.13 | storage | ✓ | |
| 5/10/11 | 233.13 | storage | ✓ | |
| 6/2/11 | 1741.99 | move in | ✓ | |
| TOTAL | 4,677.60 | | | |

SOKOL & SOKOL
CERTIFIED PUBLIC ACCOUNTANTS/
BUSINESS CONSULTANTS

[redacted]

**Moving's a trip.**

ask your furniture.

Ricardo Salvato
Tel.305.467.0668
Fax.305.888.6120
rsalvato@pak2go.net
www.PAK2GO.net

Miami, 9/15/10

My name is Ricardo Salvato and I have been assigned as your Certified Moving Consultant. Please do not hesitate to contact me at any time.



**Estimate**
**00201185**

| Moving from: | Moving to: | Moving on: **10/1/10** |
|---|---|---|
| Gloria Anderton<br>6227 Royal Harbour Yatch Club<br>Palmetto Bay, Fl 33157<br><br>305.439.9035 | Gloria Anderton<br>6227 Royal Harbour Yatch Club<br>Palmetto Bay, Fl 33157 | |

| Qty | | Description | Price | Discount | Amount | Taxed |
|---|---|---|---|---|---|---|
| 10 | Hrs, | Day 1 to Storage x4 Movers/Truck 24" Lift Gate | $105.00 | 10% | $945.00 | |
| 4 | Hr. | Day 1 to Rental x2 Movers/Truck 16" Lift Gate | $70.00 | 10% | $252.00 | |
| 1 | | Administration Fee (one time charge) | $22.00 | | $22.00 | |
| 1 | | 10X15-NON | $204.88 | | $204.88 | X |
| 10 | Hrs, | Day 2 back home x4 Movers/Truck 24" Lift Gate | $105.00 | 10% | $945.00 | |
| 4 | Hr. | Day 2 Back home x2 Movers/Truck 16" Lift Gate | $70.00 | 10% | $252.00 | |
| 10 | | Boxes L Wardroves | $15.00 | 100% | | |
| 30 | | Blanket Rent | $10.00 | 100% | | |
| 2 | | Plastic Wrap | $24.00 | 100% | | |

Stops at: Gloria Anderton          Gloria Anderton
Tiger Tall/ Rental House-Drop off
Coconut Grove, Fl 33133

| | |
|---|---|
| SUBTOTAL | $2,620.88 |
| SALES TAX | $14.34 |
| TOTAL | $2,635.22 |
| PAID | $0.00 |
| TERMS | C.O.D. |
| BALANCE | $2,635.22 |

**Thanks for considering P2G for your move.**

**PAK2GO** make the right move.

PAK2GO, LLC. License Number IM1636 / MR545
7661 NW 68th Street Miami Florida 33166
Tel.305.467.0668 Fax.305.888.6120 www.PAK2GO.net

Southeast Florida-TRI-COUNTY
Standard Household Moving Company
**CONSUMER DISCLOSURE**
Broward-Miami Dade-Palm Beach



for 24 hrs. emergencies call 786.326.1049
Broward-Miami Dade-Palm Beach Lic. MR545

1.**DO NOT** SIGN CONTRACT IF THE TOTAL COST OF YOUR MOVE IS NOT CLEARLY SHOWN. THE CURRENT DATE AND TIME MUST BE INCLUDED WHEN YOU SIGN THE CONTRACT.

2.**DO NOT** SIGN CONTRACT UNLESS IT IS GIVEN TO YOU **PRIOR** TO WRAPPING, PACKING, OR LOADING YOUR GOODS.

3.**DO** GET A COPY OF CONTRACT IMMEDIATELY UPON SIGNING

4.FORM OF PAYMENT: EVERY MOVING COMPANY MUST ACCEPT AT LEAST TWO OF THE     FOLLOWING PAYMENTS METHODS:
      Cash (Includes cashier's check, money order and traveler's check)
      Personal Checks (Must showed imprinted name and address)
      Credit Card (Must include but not limited to VISA or MasterCard)

5. VALUATION COVERAGE (two options - initial your choice)
    ___ Option 1. Standard Valuation Coverage: If your goods become damaged or lost, the moving company may be required to reimburse you to a maximum amount of only sixty cents ($0.60) per pound/per article, considerably less than the average value of household goods. There is no additional cost or deductible for standard coverage (ex. If you have a 5-pound table lamp worth $300.00 and it is damage or lost, you are only entitled to a maximum reimbursement of $3.00)
    ___ Option 2. Additional Valuation Coverage: Additional coverage is available to compensate you for goods lost or damaged at an amount closer to the declared or replacement value. The terms must be clearly defined in the contract you sign.
There is an additional cost for this coverage. The additional coverage may contain a negotiated deductible, which is disclosed as $_____. If a deductible applies, you are still entitled to the standard valuation coverage of $ 0.60 per pounds as described in option 1 above on the deductible amount.

I understand the total moving contract is $_____. This included all inventory, all inventory preparation, labor, transportation, packing material/costs, storage and my additional valuation coverage. I understand that all household goods must be delivered and unload when the mover is paid this amount.

Customer's Signature    Date   Time

10 .01 .10   2:45pm

Mover's Signature    Date   Time

**By signing this form, you are waiving certain valuable coverage which protects your possessions above the minimum amount set by law. Please read carefully.**

If you have any concerns about any move that began or ended in Broward or Palm Beach County and that has not been resolved by your moving company, please contact the appropriate consumer protection agency where your move ended

Dade: Consumer Services Dept. 140 W Flager St #802 Miami Fl. 33130
Ph(305)375-3677 Fax(305)375-4120 consumer@miamidade.gov
Broward: Consumer Affaire Div. 115 S. Andrews Annex #A460 Ft. Lauderdale Fl 33301
Ph(954)765-5350 Fax(954)765-5309 consumer@broward.org
Palm Beach Consumer Affaire Div. 50 S. Military Trail #201 West Palm Beach Fl 33415
Ph(561)712-6600 Toll Free 888-852-7362 Fax(561)712-6610 consumer@co.palm-beach.fl.us



## Moving's a trip.

ask your furniture.

Ricardo Salvato
Tel.305.467.0668
Fax.305.888.6120
rsalvato@pak2go.net
www.PAK2GO.net

Miami, 9/15/10

My name is Ricardo Salvato and I have been assigned as your Certified Moving Consultant. Please
do not hesitate to contact me at any time.

## Estimate
### 00201185

Moving on:   10/1/10

**Moving from:**

Gloria Anderton
6227 Royal Harbour Yatch Club
Palmetto Bay, Fl 33157

305.439.9035

**Moving to:**

Gloria Anderton
6227 Royal Harbour Yatch Club
Palmetto Bay, Fl 33157

| Qty | | Description | Price | Discount | Amount | Taxed |
|-----|-----|-------------|-------|----------|--------|-------|
| 10 | Hrs. | Day 1 to Storage x4 Movers/Truck 24" Lift Gate | $105.00 | 10% | $945.00 | |
| 4 | Hr. | Day 1 to Rental x2 Movers/Truck 16" Lift Gate | $70.00 | 10% | $252.00 | |
| 1 | | Administration Fee (one time charge) | $22.00 | | $22.00 | |
| 1 | Mos. | 10X25-Storage Unit w/ Climate Ctrl | $376.59 | | $376.59 | |
| 10 | Hrs. | Day 2 back home x4 Movers/Truck 24" Lift Gate | $105.00 | 10% | $945.00 | |
| 4 | Hr. | Day 2 Back home x2 Movers/Truck 16" Lift Gate | $70.00 | 10% | $252.00 | |
| 10 | | Boxes L Wardroves | $15.00 | | | 100% |
| 30 | | Blanket Rent | $10.00 | | | 100% |
| 2 | | Plastic Wrap | $24.00 | | | 100% |

**Stops at:**   Gloria Anderton              Gloria Anderton
Tiger Tail/ Rental House-Drop off
Coconut Grove, Fl 33133

| | |
|---|---|
| SUBTOTAL | $2,792.59 |
| SALES TAX | $0.00 |
| TOTAL | $2,792.59 |
| PAID | $0.00 |
| TERMS | C.O.D. |
| BALANCE | $2,792.59 |

Thanks for considering P2G for your move.

PAK2GO make the right move.

PAK2GO, LLC. License Number IM1636 / MR545
7661 NW 68th Street Miami Florida 33166
Tel.305.467.0668 Fax.305.888.6120 www.PAK2GO.net

will get invoice from Pak2Go



**Crown Classic Banking**

WACHOVIA    04    1010006484592   036   30        0   14

---

## Other Withdrawals and Service Fees    *continued*

| Date | Amount | Description |
|------|--------|-------------|
| 10/04 | 32.43 | PURCHASE    FIVE GUYS--FL# 108    10/01<br>4828532654048    PINECREST    FL 8051V251030 |
| 10/04 | 34.86 | PURCHASE    EXXONMOBIL POS    10/03<br>MIAMI    FL 3026I551923 |
| 10/04 | 36.53 | PURCHASE    POWER 4 INC.    10/02<br>4828532654048    PINECREST    FL 8051V201030 |
| 10/04 | 84.98 | PURCHASE    PALMETTO ACE HARDWARE    10/04<br>MIAMI    FL 8051I025679 |
| 10/04 | 128.92 | PURCHASE    BJ'S WHOLESALE C 10425    10/03<br>MIAMI    FL 8051I131873 |
| 10/04 | 1,317.61 | PURCHASE    PAK2GO LLC    10/02<br>4828532654048    MIAMI    FL 8051V261241 |
| 10/05 | 38.40 | PURCHASE    CAPTAIN'S TAVERN R    10/04<br>4828533842653    PINECREST    FL 3026V291240 |
| 10/05 | 39.43 | PURCHASE    U-HAUL OF PERRINE    10/03<br>4828532654048    PERRINE    FL 8051V294635 |
| 10/05 | 200.00 | WITHDRAWAL    WELLS FARGO BANK    10/05<br>SUNILAND    MIAMI    FL 8051S006930 |
| 10/06 | 10.70 | PURCHASE    TACO BELL #25740    10/04<br>4828532654048    MIAMI    FL 8051V287001 |
| 10/06 | 12.78 | PURCHASE    THE HOME DEPOT #6856    10/05<br>MIAMI    FL 3026I821227 |
| 10/06 | 35.04 | PURCHASE    U-HAUL OF PERRINE    10/04<br>4828532654048    PERRINE    FL 8051V274649 |
| 10/06 | 67.36 | AUTOMATED DEBIT  AT&T        ONLINE PMT<br>CO. ID. 9500000000 101006 WEB<br>MISC CKF666736199POS |
| 10/06 | 95.87 | AUTOMATED DEBIT  FP&L        ONLINE PMT<br>CO. ID. 9500000000 101006 WEB<br>MISC CKF666736199POS |
| 10/06 | 110.75 | AUTOMATED DEBIT  AT&T        ONLINE PMT<br>CO. ID. 9500000000 101006 WEB<br>MISC CKF666736199POS |
| 10/06 | 200.00 | WITHDRAWAL    WELLS FARGO BANK    10/06<br>DADELAND-FC    MIAMI    FL 3026S009263 |
| 10/06 | 487.26 | AUTOMATED DEBIT  CITICORP CHOICE  ONLINE PMT<br>CO. ID. 9500000000 101006 WEB<br>MISC CKF666736199POS |
| 10/07 | 34.29 | PURCHASE    EXXONMOBIL.POS    10/07<br>MIAMI    FL 3026I678599 |
| 10/07 | 50.40 | PURCHASE    CHEVRON 00047604    10/06<br>4828532654048    MIAMI    FL 8051V020423 |
| 10/08 | 50.00 | PURCHASE    BIG CITY MOUNTAINE    10/06<br>4828532654048    303-271-9200 CO 8051V272920 |
| 10/08 | 160.00 | PURCHASE    BIG CITY MOUNTAINE    10/06<br>4828532654048    303-271-9200 CO 8051V282920 |

*Other Withdrawals and Service Fees continued on next page.*

---



**Crown Classic Banking**

WACHOVIA    06         1010006484392    036    30         0    14

## Other Withdrawals and Service Fees   *continued*

| Date | Amount | Description |
|------|--------|-------------|
| 11/12 | 29.52 | PURCHASE    SEA SIAM            11/10<br>4828705872535    MIAMI    FL 5014V241243 |
| 11/12 | 48.07 | PURCHASE    MARSHALLS MARSHALLS    11/11<br>MIAMI    FL 8051I848874 |
| 11/12 | 48.15 | PURCHASE    STRICKLY DOROTHY    11/10<br>4828532654048    MIAMI    FL 8051V230003 |
| 11/12 | 61.80 | PURCHASE    BEDBATH&BEYOND# BEDBATH 11/10<br>MIAMI    FL 8051I428100 |
| 11/12 | 69.97 | RECUR DB CRD 24HR FITNESS DUES    11/10<br>4828532654048    800-432-6348 CA 8051V260002 |
| 11/15 | 8.33 | PURCHASE    EINSTEIN BROS #298    11/13<br>4828532654048    SOUTH MIAMI FL 8051V227100 |
| 11/15 | 9.91 | PURCHASE    LIME FRESH #33156    11/12<br>4828532654048    MIAMI    FL 8051V211030 |
| 11/15 | 18.16 | PURCHASE    NORDSTROM 777 3301 CORA 11/13<br>CORAL GABLES FL 8051I937740 |
| 11/15 | 19.54 | PURCHASE    TACO BELL #25743    11/12<br>4828532654048    MIAMI    FL 8051V247001 |
| 11/15 | 20.30 | PURCHASE    IMPROV MIAMI F&B    11/13<br>4828532654048    COCONUT GROV FL 8051V209000 |
| 11/15 | 26.25 | PURCHASE    EXXONMOBIL POS    11/14<br>CORAL GA    FL 5014I652922 |
| 11/15 | 27.80 | PURCHASE    MARSHALLS MARSHALLS    11/13<br>CORALGABLES FL 8051I364519 |
| 11/15 | 30.38 | PURCHASE    GREENSTREET    11/13<br>4828532654048    COCONUT GROV FL 8051V246431 |
| 11/15 | 31.71 | PURCHASE    CVS 05924 05924--    11/14<br>MIAMI    FL 8051I330960 |
| 11/15 | 41.38 | PURCHASE    IMPROV TICKETS MIA    11/13<br>4828532654048    561-4547338 FL 8051V219000 |
| 11/15 | 47.08 | PURCHASE    WEST ELM 0878    11/12<br>MIAMI    FL 8051I018585 |
| 11/15 | 55.43 | PURCHASE    THE FALLS AMOCO    11/12<br>4828532654048    MIAMI    FL 8051V267403 |
| 11/15 | 60.00 | PURCHASE    LYONS SALON & S/7500 SW 11/13<br>SOUTH MIAMI FL 8051I734303 |
| 11/15 | 71.15 | PURCHASE    JAGUAR CEVICHE SPO    11/13<br>4828705872535    COCONUT GROV FL 5014V272075 |
| 11/15 | 170.97 | PURCHASE    MILAM'S MARKET #3    11/13<br>MIAMI    FL 8051I103754 |
| 11/15 | 200.00 | WITHDRAWAL  WELLS FARGO BANK    11/15<br>SUNILAND    MIAMI    FL 5014S008327 |
| 11/15 | 219.22 | PURCHASE    PAK2GO LLC    11/12<br>4828532654048    MIAMI    FL 8051V271241 |

*Other Withdrawals and Service Fees continued on next page.*

---

**WACHOVIA BANK , SOUTH MIAMI**



**Crown Class   Banking**

WACHOVIA   05   1010006484392   036   30   0   14

## Other Withdrawals and Service Fees   *continued*

| Date | Amount | Description |
|------|--------|-------------|
| 12/08 | 30.82 | PURCHASE   MISS SAIGON BISTRO   12/07<br>4828532654048   MIAMI   FL 8051V241634 |
| 12/08 | 51.14 | PURCHASE   CVS 03984 03984--   12/07<br>MIAMI   FL 80511556548 |
| 12/08 | 56.58 | PURCHASE   SHELL SERVICE STATION   12/07<br>MIAMI   FL 80511963453 |
| 12/08 | 133.88 | PURCHASE   OLD NAVY USA   12/07<br>MIAMI   FL 80511823091 |
| 12/09 | 85.56 | PURCHASE   TOYS R US   12/08<br>MIAMI   FL 80511868686 |
| 12/10 | 9.60 | PURCHASE   TACO BELL #25743   12/08<br>4828532654048   MIAMI   FL 8051V247001 |
| 12/10 | 17.52 | PURCHASE   SHELL SERVICE STATION   12/09<br>MIAMI   FL 50141958569 |
| 12/10 | 31.35 | PURCHASE   EXXONMOBIL POS   12/09<br>MIAMI   FL 50141869232 |
| 12/10 | 58.06 | PURCHASE   TONY ROMA'S #30003   12/08<br>4828705872535   SOUTH MIAMI FL 5014V270422 |
| 12/10 | 1,372.34 | PURCHASE   PROTECTIVE PRODUCT   12/09<br>4828532654048   678-3767600 GA 8051Z200033 |
| 12/13 | 3.00 | PURCHASE   MIAMI PARKING AUTH   12/11<br>4828532654048   MIAMI   FL 8051V240066 |
| 12/13 | 9.47 | PURCHASE   YOGURT BLISS   12/11<br>4828532654048   CORAL GABLES FL 8051V272000 |
| 12/13 | 19.24 | PURCHASE   SUNSHINE 105   12/11<br>CORAL GABLES FL 50141256682 |
| 12/13 | 31.46 | PURCHASE   HOUSE OF BAGELS AN   12/11<br>4828532654048   MIAMI   FL 8051V250044 |
| 12/13 | 32.10 | PURCHASE   AZUL, INC. #1   12/11<br>4828532654048   MIAMI   FL 8051V242070 |
| 12/13 | 47.63 | PURCHASE   MARATHON OIL 05766   12/11<br>4828705872535   MIAMI   FL 5014V210043 |
| 12/13 | 62.50 | WITHDRAWAL   CASOLA'S RESTAU   12/11<br>2437 SW 17TH AVE. MIAMI   FL 8051P096295 |
| 12/13 | 67.37 | PURCHASE   JCPENNEY STORE 1360   12/12<br>MIAMI   FL 80511076477 |
| 12/13 | 69.97 | RECUR DB CRD 24HR FITNESS DUES   12/10<br>4828532654048   800-432-6348 CA 8051V210000 |
| 12/13 | 106.78 | PURCHASE   BARNES & NOBLE #28   12/11<br>4828532654048   S MIAMI   FL 8051V225604 |
| 12/13 | 157.80 | PURCHASE   MILAM'S MARKET #3   12/12<br>MIAMI   FL 80511165486 |
| 12/13 | 233.13 | PURCHASE   PAK2GO LLC   12/11<br>4828532654048   MIAMI   FL 8051V291241 |
| 12/13 | 1,044.14 | PURCHASE   PROGRESSIVE INS   12/12<br>4828532654048   800-888-7764 OH 8051V200040 |

*Other Withdrawals and Service Fees continued on next page.*



**Crown Classic Banking**

WACHOVIA   06   1010006484002   036   30   0   14

## Other Withdrawals and Service Fees *continued*

| Date | Amount | Description |
|------|--------|-------------|
| 1/14 | 1,618.64 | AUTOMATED DEBIT  HSBC MORTGAGE CO ONLINE PMT CO. ID. 9500000000 110114 WEB MISC CKF666736199POS |
| 1/18 | 1.00 | PURCHASE    MIAMI PARKING AUTH   01/15 4828532654048    MIAMI     FL 8051V272061 |
| 1/18 | 10.49 | PURCHASE    TUTTI FRUTTI FROZE   01/16 4828532654048    PINECREST  FL 8051V274001 |
| 1/18 | 22.45 | PURCHASE    CIPRIANO`S DELI   01/14 4828705872535    MIAMI     FL 5014V257003 |
| 1/18 | 23.29 | PURCHASE    ULTA 3       01/15 MIAMI     FL 8051I903582 |
| 1/18 | 40.64 | PURCHASE    MARSHALLS MARSHALLS   01/15 CORALGABLES  FL 8051I944492 |
| 1/18 | 44.90 | PURCHASE    DSW MIAMI      01/15 MIAMI     FL 8051I921309 |
| 1/18 | 48.90 | PURCHASE    SUNSHINE 105    01/14 CORAL GABLES FL 50141366654 |
| 1/18 | 50.12 | PURCHASE    CHEESECAKE DADELAN   01/14 4828532654048    MIAMI     FL 8051V240720 |
| 1/18 | 50.79 | PURCHASE    KINGS BAY ATHLETICS   01/16 MIAMI     FL 8051I499928 |
| 1/18 | 53.50 | PURCHASE    OLD NAVY USA   01/16 MIAMI     FL 8051I191121 |
| 1/18 | 108.73 | PURCHASE    MILAM'S MARKET #3`   01/16 MIAMI     FL 8051I146469 |
| 1/18 | 111.49 | PURCHASE    HURRICANE BAR AND   01/15 4828705872535    MIAMI SPRING FL 5014V290175 |
| 1/18 | 158.29 | PURCHASE    MILAM'S MARKET #3   01/14 MIAMI     FL 8051I111043 |
| 1/18 | 200.00 | WITHDRAWAL  WELLS FARGO BANK   01/17 DADELAND-FC    MIAMI     FL 5014S008592 |
| 1/18 | 233.13 | PURCHASE    PAK2GO LLC      01/17 4828532654048    MIAMI     FL 8051V201241 |
| 1/19 | 8.34 | PURCHASE    STAPLES, INC.   01/18 DADELAND    FL 8051I908087 |
| 1/19 | 8.83 | PURCHASE    TARGET T1039 MIAMI   01/18 MIAMI     FL 8051I969867 |
| 1/19 | 33.82 | PURCHASE    PAPICHI       01/19 4828705872535    PINE CREST  FL 5014V280008 |
| 1/19 | 41.61 | PURCHASE    EXXONMOBIL POS   01/19 MIAMI     FL 50141435775 |
| 1/19 | 71.88 | AUTOMATED DEBIT  AT&T        ONLINE PMT CO. ID. 9500000000 110119 WEB MISC CKF666738199POS |

*Other Withdrawals and Service Fees continued on next page.*



**Crown Classic Banking**

WACHOVIA   05      1010006484502   036   30      0   14

## Other Withdrawals and Service Fees   *continued*

| Date | Amount | Description |
|---|---|---|
| 2/10 | 267.50 | AUTOMATED DEBIT  TEMPLE BETH AM   ONLINE PMT<br>CO. ID. 9500000000 110210 WEB<br>MISC CKF666736199POS |
| 2/11 | 21.98 | PURCHASE    SHELL SERVICE STATION    02/11<br>MIAMI      FL 50141606661 |
| 2/11 | 69.97 | RECUR DB CRD 24HR FITNESS DUES      02/10<br>4828532654048    800-432-6348 CA 8051V240009 |
| 2/14 | 16.04 | PURCHASE    TARGET T1039 MIAMI     02/13<br>MIAMI      FL 80511950728 |
| 2/14 | 41.88 | PURCHASE    EXXONMOBIL POS     02/14<br>MIAMI      FL 50141555907 |
| 2/14 | 44.07 | PURCHASE    MIYAKO OF DADELAND     02/10<br>4828705872535    MIAMI      FL 5014V299800 |
| 2/14 | 45.00 | PURCHASE    EVENT TICKETS EXTR    02/12<br>4828532654048    888-6950888 TX 8051Z239000 |
| 2/14 | 49.55 | PURCHASE    TOYS R US     02/12<br>MIAMI      FL 80511685339 |
| 2/14 | 138.44 | PURCHASE    WALGREEN COMPANY 3490 B 02/13<br>MIAMI      FL 80511657879 |
| 2/14 | 211.02 | PURCHASE    MILAM'S MARKET #3     02/11<br>MIAMI      FL 80511495368 |
| 2/15 | 38.09 | AUTOMATED DEBIT  MIAMI-DADE WATER ONLINE PMT<br>CO. ID. 9500000000 110215 WEB<br>MISC CKF666736199POS |
| 2/15 | 64.82 | AUTOMATED DEBIT  VERIZON      ONLINE PMT<br>CO. ID. 9500000000 110215 WEB<br>MISC CKF666736199POS |
| 2/15 | 104.17 | PURCHASE    FRESH MKT-055 COCO     02/14<br>MIAMI      FL 80511401075 |
| 2/15 | 216.00 | AUTOMATED DEBIT  HOWARD DRIVE ELE ONLINE PMT<br>CO. ID. 9500000000 110215 WEB<br>MISC CKF666736199POS |
| 2/15 | 1,618.64 | AUTOMATED DEBIT  HSBC MORTGAGE CO ONLINE PMT<br>CO. ID. 9500000000 110215 WEB<br>MISC CKF666736199POS |
| 2/16 | 9.62 | PURCHASE    AU BON PAIN DADELA    02/15<br>4828532654048    MIAMI      FL 8051V205722 |
| 2/16 | 11.73 | PURCHASE    MCDONALD'S M6280 O     02/15<br>4828532654048    SUNNYLAND  FL 8051V277200 |
| 2/16 | 43.59 | PURCHASE    SMOKE T BBQ     02/14<br>4828532654048    CORAL GABLES FL 8051V290463 |
| 2/16 | 89.00 | PURCHASE    SCORCH GRILLHOUSE     02/11<br>4828532654048    N MIAMI BEAC FL 8051V264000 |
| 2/16 | 233.13 | PURCHASE    PAK N GO      02/15<br>4828532654048    MIAMI      FL 8051V295140 |
| 2/17 | 9.71 | PURCHASE    LIME FRESH #33156     02/16<br>4828532654048    MIAMI      FL 8051V251030 |

*Other Withdrawals and Service Fees continued on next page.*



## Crown Classic Banking

**WACHOVIA**  06   1010006484592   036   30   0   14

---

## Other Withdrawals and Service Fees  *continued*

| Date | Amount | Description |
|------|--------|-------------|
| 3/14 | 10.60 | PURCHASE   BLOCKBUSTER INC#12   03/12<br>4828532654048   305-858-6406 FL 8051V250007 |
| 3/14 | 18.41 | PURCHASE   CHIPOTLE 1058   03/12<br>4828532654048   SOUTH MIAMI FL 8051V251030 |
| 3/14 | 35.17 | PURCHASE   POLLO TROPICAL #9   03/10<br>4828532654048   MIAMI   FL 8051V202066 |
| 3/14 | 36.81 | PURCHASE   SLICE AND ICE   03/12<br>4828532654048   MIAMI   FL 8051V249800 |
| 3/14 | 42.90 | PURCHASE   EXXONMOBIL POS   03/12<br>MIAMI   FL 50141986392 |
| 3/14 | 46.95 | PURCHASE   NORDSTROM 777 3301 CORA 03/13<br>CORAL GABLES FL 80511762644 |
| 3/14 | 75.96 | PURCHASE   WINN DIXIE 3275 SW 22ND 03/13<br>MIAMI   FL 80511524433 |
| 3/15 | 31.03 | PURCHASE   MAUI NIX #8   03/14<br>COCONUT GROV FL 80511814947 |
| 3/15 | 40.00 | PURCHASE   SHELL SERVICE STATION 03/14<br>MIAMI   FL 50141364895 |
| 3/15 | 52.28 | PURCHASE   CAPTAIN'S TAVERN R   03/14<br>4828705872535   PINECREST   FL 5014V291243 |
| 3/15 | 1,618.64 | AUTOMATED DEBIT HSBC MORTGAGE CO ONLINE PMT<br>CO. ID. 9500000000 110315 WEB<br>MISC CKF666736199POS |
| 3/16 | 31.51 | PURCHASE   FLANIGAN'S #13   03/15<br>4828705872535   PINECREST   FL 5014V252060 |
| 3/16 | 53.98 | PURCHASE   CHINA BUFFET   03/15<br>4828532654048   MIAMI   FL 8051V291307 |
| 3/16 | 58.95 | PURCHASE   SHELL SERVICE STATION 03/15<br>MIAMI   FL 50141279132 |
| 3/16 | 233.13 | PURCHASE   PAK N GO   03/15<br>4828532654048   MIAMI   FL 8051V220100 |
| 3/17 | 2.00 | PURCHASE   CITY OF W PALM BCH   03/16<br>4828705872535   WEST PALM BC FL 5014V221307 |
| 3/17 | 14.47 | PURCHASE   NORDSTROM #0768   03/14<br>4828532654048   MIAMI   FL 8051V231003 |
| 3/17 | 40.88 | PURCHASE   PUBLIX SUPER MAR 9105 S 03/17<br>MIAMI   FL 50141332154 |
| 3/17 | 63.62 | PURCHASE   EXXONMOBIL POS   03/16<br>CORAL GA   FL 80511486878 |
| 3/18 | 29.93 | PURCHASE   EXXONMOBIL POS   03/17<br>FORT PIE   FL 80511140400 |
| 3/18 | 30.32 | AUTOMATED DEBIT BRIGHTHOUSE   ONLINE PMT<br>CO. ID. 9500000000 110318 WEB<br>MISC CKF666736199POS |

*Other Withdrawals and Service Fees continued on next page.*

---



**Crown Classic Banking**

WACHOVIA  07       1010006484392      036    30         0    14

## Other Withdrawals and Service Fees    continued

| Date | Amount | Description |
|------|--------|-------------|
| 4/18 | 45.98 | PURCHASE    SHELL SERVICE STATION   04/18  MIAMI    FL 5014I961836 |
| 4/18 | 103.00 | PURCHASE.  PUBLIX SUPER MAR 2270 S  04/17  MIAMI    FL 8051I442315 |
| 4/18 | 224.00 | AUTOMATED DEBIT  HOWARD DRIVE ELE ONLINE PMT  CO. ID. 9500000000 110418 WEB  MISC CKF666736199POS |
| 4/19 | 17.52 | PURCHASE    BURGER KING #44      04/18  4828532654048   MIAMI    FL 8051V262070 |
| 4/19 | 38.48 | PURCHASE    CAPTAIN'S TAVERN R    04/18  4828705872535   PINECREST   FL 5014V231244 |
| 4/19 | 200.00 | WITHDRAWAL   WELLS FARGO BANK     04/19  SUNILAND     MIAMI    FL 5014S004635 |
| 4/19 | 233.13 | PURCHASE    PAK N GO        04/18  4828532654048    MIAMI    FL 8051V250100 |
| 4/20 | 55.62 | PURCHASE    RACK ROOM SHOES #0305   04/19  MIAMI    FL 5014I802212 |
| 4/20 | 60.76 | PURCHASE    CAPTAIN'S TAVERN R    04/19  4828705872535   PINECREST   FL 5014V221244 |
| 4/20 | 66.56 | PURCHASE    EXXONMOBIL POS      04/19  MIAMI    FL 8051I869169 |
| 4/20 | 100.39 | PURCHASE    MILAM'S MARKET #3    04/19  MIAMI    FL 8051I499515 |
| 4/21 | 35.34 | PURCHASE    BASS PRO SHOPS      04/20  4828705872535   MIAMI    FL 5014V242819 |
| Total | $16,664.70 | |

**Take control of your account. Set your debit card preference today.** We've changed the way debit card transactions are approved.  Please make sure your debit card works the way you expect.  For more information, please visit wachovia.com/overdraftservices or talk with your local banker.



**Crown Classic Banking**

WACHOVIA   05        1010006484092   036   30        0   14

## Other Withdrawals and Service Fees   *continued*

| Date | Amount | Description |
|---|---|---|
| 5/09 | 32.85 | PURCHASE    MISS SAIGON          05/06<br>4828705872535    PINECREST    FL 5014V221240 |
| 5/09 | 35.49 | PURCHASE    TACO RICO            05/07<br>4828532654048    CORAL GABLES FL 8051V220110 |
| 5/09 | 35.78 | PURCHASE    OLD NAVY USA         05/08<br>MIAMI    FL 8051I587003 |
| 5/09 | 45.97 | PURCHASE    MIAMIS BEST PIZZA    05/07<br>4828532654048    MIAMI      FL 8051V240111 |
| 5/09 | 54.01 | PURCHASE    CVS 05924 05924--    05/06<br>MIAMI    FL 5014I424907 |
| 5/09 | 64.41 | PURCHASE    MILAM'S MARKET #3    05/08<br>MIAMI    FL 8051I441553 |
| 5/09 | 80.00 | PURCHASE    JOSEPH W BRIGGLE D   05/05<br>4828705872535    CORAL GABLES FL 5014V261262 |
| 5/09 | 80.25 | PURCHASE    GOLDIE              05/07<br>4828532654048    COCONUT GROV FL 8051V232864 |
| 5/09 | 94.03 | PURCHASE    NORDSTROM 777.3301 CORA 05/07<br>CORAL GABLES FL 8051I932138 |
| 5/10 | 22.52 | PURCHASE    MILAM'S MARKET #3    05/09<br>MIAMI    FL 8051I338681 |
| 5/10 | 56.11 | PURCHASE    SHELL SERVICE STATION  05/09<br>MIAMI    FL 5014I260693 |
| 5/10 | 128.52 | PURCHASE    THE BIG CHEESE OF    05/08<br>4828532654048    MIAMI    FL 8051V229800 |
| 5/10 | 233.13 | PURCHASE    PAK N GO             05/09<br>4828532654048    MIAMI    FL 8051V270100 |
| 5/11 | 41.09 | RECUR DB CRD 24HR FITNESS DUES    05/10<br>4828532654048    800-432-6348 CA 8051V210002 |
| 5/11 | 200.00 | WITHDRAWAL  WELLS FARGO BANK     05/11<br>SUNILAND    MIAMI    FL 5014S001387 |
| 5/12 | 41.56 | PURCHASE    SMOKE T BBQ          05/10<br>4828532654048    CORAL GABLES FL 8051V231313 |
| 5/12 | 68.92 | PURCHASE    EXXONMOBIL POS       05/11<br>MIAMI    FL 8051I230272 |
| 5/13 | 7.20 | PURCHASE    POLLO TROPICAL #3    05/11<br>4828532654048    MIAMI    FL 8051V222002 |
| 5/13 | 12.83 | PURCHASE    RADIO SHACK          05/13<br>MIAMI    FL 8051I293207 |
| 5/13 | 40.00 | PURCHASE    BP 149 PERRINE       05/13<br>PERRINE    FL 5014I811313 |
| 5/13 | 87.00 | PURCHASE    ACT*PROGRAMS         05/12<br>4828532654048    800-498-6065 IA 8051V230006 |
| 5/13 | 152.39 | PURCHASE    MILAM'S MARKET #3    05/12<br>MIAMI    FL 8051I433101 |

*Other Withdrawals and Service Fees continued on next page.*



## Crown Classic Banking

**WACHOVIA**    04        1010006484392      036    30        0   14

---

## Other Withdrawals and Service Fees    *continued*

| Date | Amount | Description |
|------|--------|-------------|
| 6/02 | 45.45 | PURCHASE    DOMINO'S 3177      05/31<br>4828532654048    305-227-0881 FL 8051V263002 |
| 6/02 | 1,741.99 | PURCHASE    PAK N GO        06/01<br>4828532654048    MIAMI    FL 8051V230100 |
| 6/03 | 6.53 | PURCHASE    STARBUCKS CORP0011    06/01<br>4828532654048    MIAMI    FL 8051V233553 |
| 6/03 | 8.53 | PURCHASE    THE HOME DEPOT 6306    06/03<br>PINECREST    FL 80511519877 |
| 6/03 | 18.22 | PURCHASE    BETTY'S BEST BURGE    06/02<br>4828532654048    MIAMI    FL 8051V260002 |
| 6/03 | 110.28 | PURCHASE    DI NAPOLI RESTAURA    06/01<br>4828705872535    MIAMI    FL 5014V241244 |
| 6/03 | 114.53 | PURCHASE    HERALD SUB 05/11-1    06/02<br>4828532654048    305-350-2000 FL 8051V220100 |
| 6/03 | 312.82 | PURCHASE    THE HOME DEPOT 6306    06/02<br>PINECREST    FL 80511320439 |
| 6/03 | 350.00 | AUTOMATED DEBIT  COASTAL CARETAKE ONLINE PMT<br>CO. ID. 9500000000 110603 WEB<br>MISC CKF666736199POS |
| 6/03 | 350.00 | AUTOMATED DEBIT  HUNTER WATSON    ONLINE PMT<br>CO. ID. 9500000000 110603 WEB<br>MISC CKF666736199POS |
| 6/03 | 400.00 | AUTOMATED DEBIT  MULLEN HOWARD HA ONLINE PMT<br>CO. ID. 9500000000 110603 WEB<br>MISC CKF666736199POS |
| 6/03 | 1,923.00 | AUTOMATED DEBIT  ROYAL HARBOUR YA ONLINE PMT<br>CO. ID. 9500000000 110603 WEB<br>MISC CKF666736199POS |
| 6/03 | 2,738.65 | AUTOMATED DEBIT  DOVENMUEHLE    ONLINE PMT<br>CO. ID. 9500000000 110603 WEB<br>MISC CKF666736199POS |
| 6/06 | 6.00 | PURCHASE    AMPCO PARKING 701    06/02<br>4828705872535    MIAMI    FL 5014V261540 |
| 6/06 | 9.27 | PURCHASE    CHICKEN KITCHEN -    06/04<br>4828532654048    MIAMI    FL 8051V231581 |
| 6/06 | 10.88 | PURCHASE    PRIMANTI BROTHERS    06/04<br>4828532654048    WILTON MANOR FL 8051V231030 |
| 6/06 | 11.35 | PURCHASE    STARBUCKS CORP0011    06/02<br>4828532654048    MIAMI    FL 8051V293553 |
| 6/06 | 21.40 | PURCHASE    TACO BELL #25740    06/02<br>4828532654048    MIAMI    FL 8051V237001 |
| 6/06 | 25.87 | PURCHASE    HOUSE OF BAGELS AN    06/03<br>4828532654048    MIAMI    FL 8051V240124 |
| 6/06 | 33.67 | PURCHASE    FLANIGAN'S #13    06/03<br>4828705872535    PINECREST  FL 5014V242060 |
| 6/06 | 62.26 | PURCHASE    EXXONMOBIL POS    06/04<br>OAKLAND    FL 80511792689 |

*Other Withdrawals and Service Fees continued on next page.*

---

**WACHOVIA BANK , SOUTH MIAMI**

page 4 of 9

## SUPPLIES AND BOXES REQUEST FORM



PAK2GO make the right move.

 Fill the amount of boxes and supplies you need.

 Then Fax it to us (305.888.61.20) or scan it and email it to us ( rsalvato@pak2go.net )

 We deliver your boxes and supplies to you! as easy as 1-2-3!

| we suggest | Product Description | Unit | Price | TOTAL |
|---|---|---|---|---|
| | **Boxes** | | | |
| 20 | Small (Books, Cds/Dvds, Magazines... ) | 18x12x12 | $1.90 | $38 |
| 10 | Medium (Electronics, Fragil, Ornaments and decoration...) | 18x18x18 | $2.70 | $27 |
| 10 | Large (Clothing, Toys, Shoes and Bags, Bathroom stuff...) | 20x20x20 | $3.50 | $35 |
| 5 | X Large (Pillos, Bed Clothing, Nothing heavy... ) | 22x22x22 | $4.40 | $22 |
| | Wardrobe w/bar (Hanging Clothes... ) | Large | $12.25 | $0 |
| 3 | Dish-Pack (Double Corrugated for dishes and kitchen tools) | 18x18x28 | $3.25 | $9.75 |
| | *any other custom box like for Flat Tv, China, | | | |
| | Wine Bottles, Lamps... etc: we ned to be quoted on special delivery. | | | |
| | **Supplies** | | | |
| 0 | Mattress Bag (King-Queen) | Per Bag | $5.50 | $0 |
| 0 | Mattress Bag (Full/Twin) | Per Bag | $3.90 | $0 |
| 0 | Peanut (price per bag) | No Stock | | 0 |
| 0 | Stretch Wrap | Roll | $23.45 | $0 |
| 6 | Tape Clear (per roll) | Roll | $3.25 | $19.50 |
| 1 | Newsprint | 25 Lbs. | $26.00 | $26 |
| 1 | Bubble Wrap Roll | 3/16X12X500 | $44.00 | $44 |
| 0 | Label Fragil | Roll | $32.00 | $0 |

$221.25



Moving's a trip, ask your furniture.

PAK2GO packing+moving+storage
7661 NW 68 st 126 Miami Fl. 33166
T.305.467.0668 F.305.888.6120 www.PAK2GO.net

**PAK2GO** make the right move.

## FACILITY INFORMATION

Space
Size     10X15 Non Temperature Ctrl.

**RENTAL AGREEMENT**
**#00201185**

Tenant's Name:  Gloria Anderton
Address 6227 Royal Harbour Yatch Club
City Miami
State FL
Zip 33157

**Customer Information:**
Social Security No.
D.L. No.
D.L. St.                          FL
Telephone No.                  305.439.9035
Emergency Contact
Emergency Telephone No.
Property to be Stored          House Goods, Personal Goods, Boxes.

**Rent and Deposit:**

| | |
|---|---|
| Monthly rent | $204.88 |
| One Time Admin. Fee | $  22.00 |
| Insurance | $   8.00 |
| Florida Sales Tax | $  14.28 |
| Clean Up Deposit | $  00.00 |
| **Total Amount Received** | **$249.16** |

Lien Information: Tenant attests that all of the personal property in its space is free and clear of all liens and secured interests except as follows:

| Property | Lien Holder | Address/Phone # of Creditor | Amount of Lien |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

This rental agreement is entered into between _____ , hereinafter referred to as "Owner" and the above-listed "Tenant." In consideration of all the terms and conditions herein, Owner does hereby lease to Tenant the above-described storage space (hereinafter "Space" or "Premises").

l. TERM Owner agrees to lease the above-referenced space to Tenant for a term of **1** months beginning **10/03/10.** Should Tenant hold over and retain possession of said space after the expiration of this lease, its occupancy of said space shall be as a tenant from month to month with Owner's consent, at the prevailing rental rate. All terms and conditions of this Agreement shall continue in full force and effect so long as Tenant retains possession of said space.

2. RENT The Tenant agrees to pay the Owner, for the use of the space, the monthly sum listed above as the Monthly Rate. Monthly installments are payable in advance at the office of the self storage facility on or before the anniversary date of each month and a like amount for each month thereafter, until the termination of this agreement. Owner acknowledges receipt of the sum set out above showing payment through the date shown above. If any monthly installment is not paid within five days of the anniversary date, or if any check in payment is dishonored, Tenant shall be deemed to be in default. Default can also be the Tenant's failure to perform any terms or conditions of this Rental Agreement or Tenant's breach of the peace. In the event of Tenant's default, Owner may, without notice, deny the Tenant access to the property located in the self storage facility. Owner may, after a five day period, overlock and place a different padlock on the rented premises over which only the Owner and his agents have control. Tenant's property will be sold at public auction if Tenant fails to pay all sums due to Owner to cure its default. Tenant agrees and understands that partial payments made to cure a default for non payment of rent will not delay or stop the Owner's enforcement of lien and sale of Tenant's property. Partial payments do not waive or avoid the legal effect of prior notices given to Tenant. Only full payment on Tenant's account prior to the published auction date will stop the scheduled sale of the property. Rental payments and other charges can be made by cash, check, traveler's checks and credit card. Owner reserves the right, especially when Tenant is in default, to refuse payment by check, unless bank check or certified check is presented.

3. DEPOSIT AND FEES Tenant agrees to pay the sum of $0.00 as a deposit to be held by the Owner and to be used, if necessary, for the repair of any damage done to the space and to clean up the space at the termination of the Agreement. In the event that the space is left in a good state of repair and in a broom-swept condition, then this amount shall be refunded to the Tenant. Tenant agrees that the Owner may also set off any claims it may have against the Tenant from this fund. If any monthly installment is received after five days of the anniversary date, Tenant shall pay to Owner a late charge of $20.00 said late charge to be immediately due and payable without demand from Owner. If any check is dishonored for any reason, said late charge shall be due and payable in addition to a return check charge of $30.00. If Tenant's property is processed for sale at public auction, Tenant shall be responsible for a minimum public auction processing fee of $95.00.

4. USE AND COMPLIANCE WITH LAW The space named herein is to be used by the Tenant solely for the purpose of storing any personal property belonging to the Tenant. The Tenant agrees not to store any explosives, or any flammable, odorous, noxious, corrosive, hazardous or pollutant materials or any other goods in the space which would cause danger or nuisance to the space of facility. The Tenant agrees that the property will not be used for any purposes unlawful or contrary to any ordinance, regulation, fire code or health code and the Tenant agrees not to commit waste, nor to create a nuisance, nor alter or affix signs on the space, and will keep the space in good condition
rented premises arising from any cause whatsoever including, but not limited to, burglary, mysterious disappearance, fire, water damage, mold, mildew, rodents, Acts of God, the active or passive acts or omissions or negligence of the Owner, Owner's agents or employees.

7. INSURANCE Tenant, at Tenant's expense, shall secure its own insurance to protect itself and its property against all perils of whatsoever nature. Insurance on Tenant's property is a material condition of this Agreement. Tenant's failure to carry insurance is a breach of this Agreement and Tenant assumes all risk of loss to stored property that would be covered by such insurance. Insurance carried by the Owner shall be for the sole benefit of the Owner and Tenant shall make no claim whatsoever against Owner's insurance. Tenant agrees not to subrogate against or allow Tenant's insurance company to subrogate against Owner in the event of loss or damage of any kind or from any cause.

8. INDEMNIFICATION OF OWNER Tenant will indemnify and hold the Owner harmless from and against any and all manner of claims for damages or lost property or personal injury and costs including attorney's fees arising from Tenant's lease of the space on the facility or from any activity, work or thing done, permitted or suffered by Tenant in or on the space or about the facility. In the event that the space is damaged or destroyed by fire or other casualty, Owner shall have the right to remove the contents of the space and store it at the Tenant's sole cost and expenses without liability for any loss or damage whatsoever, and Tenant shall indemnify and hold Owner harmless from and against any loss, cost, or expense of Owner in connection with such removal and storage. Should any of Owner's employees perform any services for Tenant at Tenant's request, such employee shall be deemed to be the agent of the Tenant regardless of whether payment for such services is made or not, and Tenant agrees to indemnify and hold Owner harmless from any liability in connection with or arising from directly or indirectly such services performed by employees of Owner. Notwithstanding that Owner shall not be liable for such occurrences, Tenant agrees to notify Owner immediately upon the occurrence of any injury, damage, or loss suffered by Tenant or other person in any of such circumstances.

9. PERSONAL INJURY Owner and Owner's agents and employees shall not be liable whatsoever to any extent to Tenant or Tenant's invitees, family, employees, agents or servants for any personal injury, death, or property damage or loss arising from Tenant's use of the storage space or premises from any cause whatsoever including, but not limited to, the active or passive acts or omissions or negligence of the Owner, Owner's agents, or employees.

10. BANKRUPTCY Tenant's bankruptcy shall constitute an act of default and Owner shall have the right to terminate this agreement and require Tenant to remove its personal property from the Premises.

11. OWNER'S LIEN OWNER SHALL HAVE A LIEN ON ALL PERSONAL PROPERTY STORED IN THE SPACE FOR RENT, LABOR OR OTHER CHARGES, PRESENT AND FUTURE. IN RELATION TO THE PERSONAL PROPERTY AND THE EXPENSES NECESSARY FOR ITS PRESERVATION OR EXPENSES REASONABLY INCURRED IN ITS SALE OR OTHER DISPOSITION PURSUANT TO THE "SELF STORAGE FACILITY ACT" SET FORTH IN SECTIONS 83.801-83.809 OF THE FLORIDA STATUTES, THE LIEN PROVIDED HEREUNDER ATTACHES AS OF THE DATE THAT THE PERSONAL PROPERTY IS BROUGHT TO THE PREMISES, IN ADDITION TO ALL OTHER REMEDIES AVAILABLE AT LAW OR IN EQUITY. OWNER MAY ENFORCE ITS LIEN BY SELLING OR OTHERWISE DISPOSING OF THE PERSONAL PROPERTY STORED IN THE SPACE.

12. TENANT'S LIABILITY In the event of a foreclosure, it is understood and agreed that the liability of Tenant for the rents, charges, costs and expenses provided for in this rental agreement shall not be relinquished, diminished or extinguished prior to payment in full. It is further agreed that Tenant shall be personally liable for all rents, charges, costs and expenses, including those incurred in the sale and/or disposition of the Tenant's property as provided for above. Owner may use a collection agency thereafter to secure any remaining balance owed by Tenant after the application of sale proceeds if any. If any property remains unsold after foreclosure and sale, owner may dispose of said property in any manner considered appropriate by Owner. Tenant hereby waives and renounces its right to the benefit of any constitutional or statutory exemptions as to its property in the space.

13. CONDITION AND ALTERATION OF PREMISES Tenant assumes responsibility for having examined the premises and hereby accepts it as being in good order and condition and agrees to pay Owner promptly for any repairs to the space resulting from negligence or misuse by the Tenant, Tenant's invitees, licensees and guests. Tenant shall make no alterations or improvements to the space without prior written consent of Owner. Should Tenant damage or depreciate the space, or make alterations or improvements without the prior consent of the Owner, then all costs necessary to restore the space to its prior condition shall be borne by Tenant. Tenant shall notify Owner immediately of any damage or defect to the space.

14. TERMINATION This Agreement shall continue from month to month unless Tenant or Owner delivers to the other party a written notice of its intentions to terminate the agreement five (5) days prior to the end of the then current rental month. Upon termination of this Agreement, Tenant shall remove all personal property from the space and shall deliver possession of the space to the Owner within five (5) working days unless such property is subject to Owner's lien rights as referenced in this Rental Agreement. If Tenant fails to fully remove its property from the space within the time required, Owner, at its option, may without further notice or demand, either directly or through legal process, reenter the Tenant's unit and remove all property therefrom without being deemed guilty in any manner of trespassing or conversion.

15. ABANDONMENT This Agreement shall automatically terminate if Tenant abandons space. Tenant shall have abandoned the space if Tenant has removed the contents of the space, and/or has removed Tenant's locking device from the space and IS NOT current in all obligations hereunder. Rent 'paid for month in which Tenant moves out early shall not be refunded.
16. OWNER'S RIGHT TO ENTER In cases where Owner considers it necessary to enter the space for purposes of examining the space for violation of this agreement or condition in the space or making repairs or alterations thereto, or to comply with this agreement, Tenant agrees that Owner, or Owner's representative, shall have the right without notice to enter into and upon the space and Owner reserves the right to remove contents to another space.
way connected with this Rental Agreement, Tenant's use or occupancy of the storage space, or any claim of bodily injury or property damage or the enforcement of any remedy under any law, statute. or regulation.

22. LIMITED WARRANTY This Agreement contains the entire Agreement of the parties and no representation or agreements, oral or otherwise, between the parties not embodied herein shall be of any force or effect. The agents and employees of Owner are not authorized to make warranties about the space, premises, and facility referred to in this Agreement. Owner's agents and employees' ORAL STATEMENTS DO NOT CONSTITUTE WARRANTIES. and shall not be relied upon by the Tenant nor shall any of said statements be considered a part of the Agreement. The entire Agreement and understanding of the parties hereto is embodied in this writing and NO OTHER WARRANTIES are given beyond those set forth in this Agreement. The parties hereto agree that the IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSES and all other warranties, express or implied, ARE EXCLUDED from this transaction and shall not apply to the leased space, premises, and facility referred to herein. It is further understood and agreed that Tenant has been given an opportunity to inspect, and has inspected this space, premises, and facility and that Tenant accepts such leased space, premises, and facility AS IS and WITH ALL FAULTS.

23. RULES AND REGULATIONS Tenant agrees to be bound by the Rules and Regulations as posted by the Owner from time to time. All Rules and Regulations shall be deemed to be part of this agreement and incorporated herein.

24. NOTICE OF CHANGE OF ADDRESS Tenant represents and warrants that the information Tenant has supplied in the Rental Agreement is true, accurate and correct and Tenant understands that Owner is relying on Tenant's representations. Tenant agrees to give prompt written notice to Owner of any change in Tenant's address, any change in the liens and secured interest on Tenant's property in the Space and any removal or addition of property to or out of the Space. Tenant understands he must personally deliver such notice to Owner or mail the notice by certified mail, return receipt requested, with postage prepaid to Owner at the address shown on the Rental Agreement.

25. CHANGES The terms of this Agreement such as monthly rental rate, conditions of occupancy and other charges, are subject to change upon thirty (30) days prior written notice to Tenant. If changed, the Tenant may terminate this Agreement on the effective date of the change by giving Owner ten (10) days prior written notice to terminate after receiving notice of the change. If the Tenant does not give such notice, the change shall become effective and apply to his occupancy.

26. TENANT'S LOCK Space shall be immediately locked by Tenant upon execution of the agreement. Only one lock shall be permitted. Tenant shall not provide Owner or Owner's agents with a key and/or combination to Tenant's lock unless deliveries are to be accepted by Owner on Tenant's behalf. In the event Tenant fails to keep such a lock on the Space or Tenant's lock is broken or damaged, Owner shall have the right, but not the obligation, to place its lock on the Space; provided, however, that in such event Owner shall have no liability to Tenant for any loss or damage whatsoever, and Tenant shall indemnify and hold Owner harmless from and against any loss, cost or expense of Owner in connection with locking the Space, including the cost of the lock.

27. NOTICE TO TENANT DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT AND FULLY UNDERSTAND THE COVENANTS CONTAINED HEREIN. KEEP A COPY OF THIS AGREEMENT TO PROTECT YOUR LEGAL RIGHTS. TENANT HEREBY ACKNOWLEDGES BY SIGNING THIS AGREEMENT THAT HE HAS READ, UNDERSTOOD AND ACCEPTS ALL TERMS AND CONDITIONS EXPRESSED IN THIS AGREEMENT.

EXECUTED THIS____10____ Day of ___03_____, 2010.


TENANT                                FACILITY


Name_____      By:_____
              Print                                Authorized Agent


_____
          Signature

# INSURANCE AGREEMENT FORM

Landlord requires storage insurance by the lessee's to insure properties leased against fire, smoke, explosion and theft. Questions or comments contact PAK2GO packing+moving+storage Phone 305.467.0688/Fax: 305.888.6120

| | |
|---|---|
| Tenant's Name(s):  Gloria Anderton | |
| Address 6227 Royal Harbour Yatch Club | |
| City, State, Zip Code Miami, Florida, 33157 | |
| Daytime Phone #  |  Storage Unit #(s)  |  Effective Date:  10/03/10 |

| | |
|---|---|
| Facility Name:      Amigo Storage | |
| Address              7401 NW 68 Street | |
| City, State, Zip Code   Miami Florida 33166 | |

## INSURANCE OPTIONS

[ ]  I currently have the following insurance:
Homeowners
Renters
Other (describe).
With the following company (Insurance
Company Name):
Policy #
Limit $
Effective Date_____Term:_____
**\*Must provide copy of the Declaration page, and policy must stay in effective during the life of the lease.**

[X]  I have chosen to obtain storage property insurance through PAK2GO LLC Coverage is subject to the company's underwriting requirements. Losses are settled on "Actual Cash Value.

\*Flood and named storms are not included in coverage.
The policy has a $100 deductible. Select Coverage/Premium:
$2,000.00/$8.00 · $3,000.00/$12.00
Other:_____

Select Type of Possessions in Unit
(Coverage will NOT apply if item(s) are stored in open lots ,or if stored in non-fully enclosed and/or if not readily secured in unit).

(  X  ) Household Goods/Personal Property

(      ) Vehicle, Boat/Trailer

(      ) Business/Trade Property (describe)

I will not obtain recommended insurance coverage, and shall be deemed to be "selfinsured" and will bear all risk of loss or damage.

Signature(s):_____
                Date:_____

\* Note: application for coverage while the property is under a wildfire or hurricane alert, watch or warning, will not become effective until
12:01 a.m. on the day after the alert, watch, or warning is lifted. There is no coverage for items not stored in fully enclosed, secured storage
units or garages.

## AUTHORIZATION

By signing below I acknowledge that I have chosen to purchase property insurance. I hereby agree to purchase a property insurance policy through C.M., Inc. and to pay my premium monthly when due (at time of monthly storage rent). I understand that failure to pay my premium when due will result in cancellation of my coverage. I understand that the tenant insurance I have agreed to purchase will terminate if my rent and/or tenant insurance premium is more than 30 days delinquent. Therefore damages to, or loss of, any property stored in the unit and it was not reported to the insurance company before the coverage is terminated for non-payment the insurance will not apply. I certify that the statements set forth in this application are correct. If any information supplied on this application should change between the date of this application and the inception date of the policy period, I will immediately notify the insurer of such change. I agree that this application shall be deemed to be attached to and made part of the policy, if issued, as if physically attached to the policy. I also understand that any misrepresentation of information contained in this application could result in the policy being voided. I understand that the company will rely on the information I have provided in this application as the basis for deciding whether an insurance policy will be issued. I hereby authorize the company to make any inquiry in connection with this application as it deems necessary. The undersigned hereby authorizes the release of loss information from any prior insurer to the company. In this regard, I certify that I will execute whatever authorizations or releases may be necessary to permit the company to secure any such information.

Signature                                        Date:



ART CONNECTION (15)

| DATE | AMOUNT PAID | CANCELLED CHECK | INVOICE |
|---|---|---|---|
| 7/27/2011 | 1,430.99 | VISA ✓ | ✓ |
| 7/15/2011 | 45.00 | VISA ✓ | ✓ |

TOTAL 1,475.99

[redacted]

**Art Connection**
2860 Center Port Circle
Pompano Beach, FL 33064

Phone 954-977-8177   Fax 954-781-0266
www.artconnectionusa.com

(305) 666-3181

0566984

07/27/2011
Page 1 of 1

**Bill To:**

Design Brad Toth: Toth, Brad
301 NW 28th Street
Wilton Manors, FL 33311

Phone: 954-564-9722          Fax:

**Ship To:**     Ship Via: **Best Way**

Brad Toth
Design Brad Toth
Gloria
6227 Paradise Point Drive
Miami, FL 33157

Phone: 305-439-9035

Clerk: Eran          Sales Rep: Eran
Note:
Your PO #

| QTY | ITEM CODE | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|---|
| 1 | SH94340 | 3-D Panaramic Framed Giclee On Canvas (O | 199.99 | 199.99 |
| 1 | ART | Blues Come True Brushed Gell | 250.00 | 250.00 |
| 2 | ART | Acrylic Aqua Azul 40X40 | 450.00 | 900.00 |
|  |  | Paid by: 1430.99 MC |  |  |
|  |  | #**********9916 |  |  |
|  |  | Auth: 57005P |  |  |

*P.s. my ____ clsub*

*   48 HR RETURN POLICY   *
* WITH ORIGINAL PACKING ONLY *

NO RETURNS ON CLEARANCE ITEMS
OR CUSTOM WORK

| | |
|---|---|
| Subtotal | 1349.99 |
| 6% Tax | 81.00 |
| Total | 1430.99 |



## Art Connection
2860 Center Port Circle
Pompano Beach, FL 33064

Phone 954-977-8177   Fax 954-781-0266
www.artconnectionusa.com

---0566827

07/15/2011
Page 1 of 1

| Bill To: | Ship To: | Ship Via: **Delivery** |
|---|---|---|

**Design Brad Toth: Toth, Brad**
301 NW 28th Street
Wilton Manors, FL 33311

Phone: 954-564-9722       Fax:

Brad Toth
Design Brad Toth
Gloria
6227 Paradise Point Drive
Miami, FL 33157         Phone: 305-439-9035

Clerk: Account          Sales Rep: Account
Note:
Your PO #

| QTY | ITEM CODE | DESCRIPTION | | PRICE | AMOUNT |
|---|---|---|---|---|---|
| 1 | DEL-MI | Delivery Charge Miami | NS | 65.00  -20.00 | 45.00 |
|  |  | Paid by: 45.00  Visa | | | |
|  |  | #***********8051 | | | |
|  |  | Auth: 857482 | | | |

|  |  |
|---|---|
| Subtotal | 45.00 |
| Tax | 0.00 |
| **Total** | **45.00** |

*   48 HR RETURN POLICY   *
* WITH ORIGINAL PACKING ONLY *

NO RETURNS ON CLEARANCE ITEMS
   OR CUSTOM WORK



Gloria Anderton
*Mortgage Banker*

Cel: 305.439.9035
Dir: 786.888.5805

gloria.anderton@fembi.com
www.fembi.com/gloriaanderton

9130 S. Dadeland Blvd.
Datran II, Suite 1901
Miami, Florida 33156
Toll Free: 800.97FEMBI
Tel: 305.666.3133
Fax: 305.666.3181



www.fembi.com

USA
800.97FEMBI
(973.3624)

Puerto Rico
866.62FEMBI
(623.3624)