UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| **THIS DOCUMENT RELATES TO:**<br>Hobbie, et al. v.<br>RCR Holdings II, LLC, et al. (No. 10-113) | |

**THE FEE COMMITTEE'S RESPONSE TO THE
VILLA LAGO PLAINTIFFS' MOTION FOR PAYMENT OF
COSTS PURSUANT TO COASTAL SETTLEMENT AGREEMENT**

I.   **INTRODUCTION**

Pursuant to this Court's Order of February 12, 2015, the Fee Committee hereby submits this response to the Villa Lago Plaintiffs' Motion for Payment of Cost Pursuant to Coastal Settlement Agreement (Rec.Doc. 18314). For the reasons set forth below the Villa Lago Plaintiffs' motion should be denied without prejudice.

Pretrial Order No. 28 was issued by this Court to establish the procedures and guidelines for determining the appropriate award of attorneys' fees and costs from the five inter-related settlements and voluntary payments,[1] and then the appropriate allocations from any such award. The funds addressed by PTO No. 28 are intended to be the source for attorneys' fees and the reimbursement of reasonable expenses for all attorneys participating in these proceedings.

---

[1] On March 25, 2011, the Court entered an Order establishing a procedure whereby settling parties could voluntarily set-aside payments from any settlement proceeds received outside of the inter-related class settlements and others at issue here ("Voluntary Common Benefit Payments"), in order to compensate common benefit counsel "at a future date" [Rec. Doc. #8389].

1

Accordingly, this Court took great care to delineate the methods and manner by which consideration of compensation will be equitably determined in MDL 2047.

Against this Court's directives, the Villa Lago plaintiffs seek special dispensation and unique, even preferential, treatment from all others participating in the fee and cost allocation process described by Pretrial Order No. 28.  These class members contend that when the Coastal settlement was negotiated a material inducement offered by the Villa Lago defendants to them was a provision in their settlement agreement for a sum certain of costs "to be paid from the other settlement funds in CDW."  Villa Lago Brf. at 3.  Unstated by the Villa Lago Plaintiffs is the important, and undisputed truth that the PSC, as representative of over 10,000 plaintiffs, was not a party to this agreement, although implicitly acknowledged in movants' papers is the recognition that all of "the other settlement funds in CDW" from which these plaintiffs seek to draw payment of counsel fees and costs (*i.e.*, the Knauf, Banner & Global settlements) were created through settlements that were separately negotiated by the PSC.

But the Coastal Settlement Agreement is irrelevant at this juncture since the settlement had already been taken into consideration by the PSC.  Instead, PTO No. 28 controls.  In fact, the Coastal Settlement Agreement recognizes that PTO No. 28 controls.  Therefore, the Villa Lago Plaintiffs' contention that they are immediately entitled to reimbursement of costs from the funds subject to this Court's allocative process depicted in Pretrial Order No. 28, is contradictory on its face, since 1) PTO No. 28's process controls and 2) this Court has already awarded each property owner reasonable cost reimbursement, *i.e.*, a stipend of $1,000 per property in its Order of December 17, 2014 (Rec.Doc. No. 18215)[the "Stipend Order"].

Because the Villa Lago plaintiffs are mistaken about the import of their own Settlement Agreement, which agreement is of no moment as the Villa Lago Plaintiffs are bound by the terms of the inter-related settlements, the requirements of PTO No. 28, and this Court's Stipend Order, the Fee Committee must oppose their motion.

## II.   FACTUAL BACKGROUND

At the outset of this litigation, the Court appointed individual plaintiffs' counsel to the Plaintiffs' Steering Committee ("PSC"), which committee was authorized to manage prosecution of the claims of all plaintiffs participating in this MDL.[2]  Amongst the many responsibilities assigned to the PSC was the obligation to "explore, develop and pursue all settlement options" in the MDL.  *In re Chinese Manufactured Drywall Products Liability Litigation*, MDL 2047, PTO No. 8 at 4 (E.D.La. July 27, 2009).

To this end, the PSC engaged in extensive efforts to resolve this litigation.  Over the past six years, the PSC has achieved a landmark global resolution approved by this Court on February 7, 2013.  *See* Order & Judgment (E.D.La. Feb. 7, 2013)(Rec.Doc. No. 16570).  As a result of protracted and arm's-length negotiations with hundreds of builders, installers, suppliers and manufacturer Defendants and their insurers, the PSC secured for plaintiffs a series of five separate but inter-related and inter-dependent class settlements with:  (1) supplier Interior Exterior Building Supply, LP ("InEx") and its insurers[3] (the "InEx Settlement"); (2) the Banner

---

[2] *In re Chinese Manufactured Drywall Products Liability Litigation*, MDL 2047, PTO No. 8B (E.D.La. March 19, 2012).

[3] InEx's Insurers that have entered into a class settlement include Arch Insurance Company ("Arch") and Liberty Mutual Fire Insurance Company ("Liberty").

3

entities[4] and their insurers[5] (the "Banner Settlement"); (3) L&W Supply Corporation ("L&W") and USG Corporation (the "L&W Settlement"); (4) the Knauf Defendants[6] (the "Knauf Settlement"); and (5) more than 700 additional Participating Builders, Suppliers, Installers, and their Participating Insurers (the "Global Settlement"). These settlements have all been finally approved by the Court and are providing necessary remediation and monetary relief to the thousands of claimants impacted by Chinese Drywall, many of whom have been displaced from their homes, lost their properties due to foreclosure or sales in mitigation and suffered loss of personal property. In addition, in recognition of the PSC's common benefit efforts, the PSC has received over $2.7 million in payments pursuant to this Court's Voluntary Payment Order.

Coincident to these efforts, the PSC assisted numerous counsel for property owners in their separate efforts to resolve litigation against the Defendants and others, *e.g.*, the Harrell class, the Pritchard Housing Authority, and to the point of the instant motion, the Villa Lago class.[3]

---

[4]The Banner entities include: Banner Supply Co., Banner Supply Co. Pompano, LLC, Banner Supply Co. Port St. Lucie, LLC, Banner Supply Co. Ft. Myers, LLC, Banner Supply Co. Tampa, LLC, Banner Supply International, LLC, and any other entity insured under the Banner Insurance Policies (collectively, "Banner").

[5]Banner's Insurers include: Chartis, FCCI, Hanover, and Maryland Casualty.

[6]The Knauf Defendants include: Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH ("KI"), Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda. and PT Knauf Gypsum Indonesia.

[3]For example, the PSC consented to credits in the amount of $3,936,000 for the Coastal Construction Group of South Florida, Inc., and $2,376,000 (collectively $6,312,000) from the Global Settlement funds to accommodate the Villa Lago/Coastal Settlement. *See* Amended

(continued...)

The Villa Lago class settlement involved several settlements that depended upon the inter-related settlements that were funded in part by the Knauf, Banner & Global settlements that were negotiated by the PSC.  *See, e.g.*, discussion in footnote 3; Third Amended Knauf Settlement Agreement Section 14.7 (Rec.Doc. 17398).   The Coastal Settlement Agreement was filed with the Court on April 8, 2013.  Proof of the connectedness of the Villa Lago Settlement to the inter-related settlements is evident in the Coastal Settlement Agreement's provisions addressing attorneys' fees and costs. *See* Coastal Settlement Agreement (Rec.Doc. 16741-2).  In this arena, the Coastal Settlement Agreement basically defers to the procedures intended by this Court to apply to the inter-related settlements.  For example, Section 13.1 of the Coastal Settlement Agreement, in relevant part, provides:

> Settlement Class Counsel shall be awarded such fees and reimbursed such costs and expenses from the Villa Lago Settlement Fund <u>as are approved by the Court</u>. However<u>, subject to Court approval</u>, the parties have agreed to attorneys' fees of $2,670,960.62 and costs of $380,946 for a total of $3,051,906.63 as shown on Exhibit "A," which amount includes, but is not limited by the projected award of attorneys fees and costs settlement class counsel <u>may receive</u> from the Banner Settlement and Global Settlement and that <u>may be paid</u> to the Villa Lago Settlement Fund consistent with any fee applications that Settlement Class Counsel may submit to the Court in the Banner Settlement and in the Global Settlement.

*Id*. (emphasis added).

---

[3](...continued)
Global Settlement, Sections 4.2 & 4.2.1 (Rec.Doc. 15965-2).  In agreeing to this accommodation, the PSC benefitted the Villa Lago plaintiffs by affording them the opportunity to receive money from the Global settlement in advance of its final approval.

Section 13.4 of the Coastal Settlement Agreement confirms that the payment of costs from the inter-related settlements is dependent on the established procedures applicable to all fee applicants against those funds.  In particular, Section 13.4 states:

> The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys fees, costs, and expenses to be paid out of the Villa Lago Settlement Fund, and any plan for distribution of the Villa Lago Settlement Fund to class members, are not part of the Settlement Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any order or proceeding relating to the Fee and Expense Application or any plan of distribution . . ..

From these two provisions of the Coastal Settlement it is plain that "any order or proceeding relating to the Fee and Expense Application" of Villa Lago Class counsel is separate from the terms of the Coastal Settlement agreement itself.  The Villa Lago Class understood at the inception that any award provided by the Court was always conditional and contingent upon the intercourse between their settlement and the other inter-related settlements from which funds were being drawn to accommodate the Villa Lago settlement, and that the award and allocation were always subject to Court approval.  Plainly, the terms of the Coastal Settlement Agreement are at odds with the instant motion's demands for instant payment, which inconsistently overleaps the parameters established by the Coastal settlement's own founding documents.

Following the announcement of the Coastal settlement, and after receiving inquiries about the interplay between the Villa Lago Settlement and the inter-related settlements, Lead Counsel Arnold Levin on August 22, 2013 confirmed in writing an agreement between Villa Lago Class Counsel and the PSC regarding fees and costs.  *See* Letter of Arnold Levin (August 22, 2013)(Rec.Doc. 17700-7).  Therein it was made clear that, "there can be no distribution of any

monies until our joint MDL petition for counsel fees and costs is presented to the Court." *Id.* To emphasize this point, it was repeated that judicial approval of fees and costs was paramount:

> As stated above, all fees and costs on individual retainer agreements and common benefit fees are covered by the Knauf, Banner and Global settlement agreements. <u>They will be distributed only upon order of the Court after filing of a petition relative to the same</u>.

*Id.* (emphasis added).[4]

Thereafter, on January 10, 2014, this Court issued PTO No. 28, which was intended "to provide for the orderly and efficient presentation and determination of a request for the award of attorneys' fees and reimbursement of litigation expenses" from the inter-related settlement funds. *In re Chinese Manufactured Drywall Products Liab. Litig.*, MDL No. 2047, PTO No. 28 at 2 (E.D.La. Jan. 17, 2014)(Rec. Doc. 17379). PTO No. 28 appointed the Fee Committee ("FC"), and set out a staged process with "guidelines for the efficient presentation to this Court to allow for the determination of making an award of attorneys' fees and reimbursement of litigation expenses, and subsequently an allocation from such an award." *Id.* Since January 2014, the FC has diligently reviewed all submitted Initial and Second Affidavits and conducted, attorney interviews, etc., as part of a deliberative process, consistent with established jurisprudence, including *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974); *In re High Sulfur Gulf Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 226 n.6 (5th Cir. 2008); *In re: Vioxx Products Liability Litig.*, 802 F.Supp.2d 740 (E.D. La. 2011); and *Union Asset Mgmt.*

---

[4]The August 22, 2013 letter agreement was filed with the Court on May 20, 2014 as an exhibit to the Consolidated Joint Petition of the Fee Committee and the Plaintiffs' Steering Committee for a Global Award of Attorneys' Fees and Reimbursement of Expenses, Filed Pursuant to Pretrial Order No. 28 (Rec.Doc. 17700-7).

*Holding AG v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012), to work towards a recommendation for the Court's consideration.

Following Court directives, the FC filed its Consolidated Joint Petition of the Fee Committee and the Plaintiffs' Steering Committee for a Global Award of Attorneys' Fees and Reimbursement of Expenses, Filed Pursuant to Pretrial Order No. 28 (Rec.Doc. 17700). Thereafter, on July 9, 2014, the PSC filed its Motion for Additional Common Benefit Assessments, Filed Pursuant to Pretrial Order No. 28 (Rec.Doc. 17831), which *inter alia* sought assessments in the Villa Lago matter. The motion was joined by the FC.

On October 6, 2014, this Court issued Pretrial Order No. 28(E) [Rec.Doc. 18037], directing the FC to address costs and hold-back. Specifically, this Court ordered:

> By no later than October 27, 2014, the FC shall file a motion to determine the amount of reimbursement that a claimant should recover for costs, including the expenses for inspection of each property containing Knauf Plasterboard Tianjin Chinese drywall, in addition to any amount that should be withheld from the Attorney's Fee Funds held in Qualified Settlement Funds for use in connection with ongoing remaining litigation (The "Inspection Cost and Hold Back Motion").

The FC complied by filing its Inspection Costs and Hold Back Motion on October 23, 2014 (Rec.Doc. 18081). Although some counsel incurred expenses far in excess of $1,000 per property for case-specific costs, the FC determined that awarding a flat $1,000 per KPT property was an appropriate means to achieve a global reimbursement of counsels' reasonable expenses. This recommendation was borne of the need to reach a compromise that spread the reasonable costs incurred by counsel in a manner that "smoothed" their expenses between costly clients and less costly clients. To have advocated that all counsel recover their actual expenses would have depleted the fund, resulting in a shortfall that the FC was not prepared to recommend. No

objection was filed against the FC's Inspection Costs and Hold Back Motion, not even by the Villa Lago Plaintiffs.[5]

By Order dated December 17, 2014 (Rec.Doc. 18215), this Court approved the FC's recommendation and granted per property stipends of $1,000 for those properties where KPT Chinese drywall is present, including homes with mixed boards; $150 for properties with non-KPT Chinese drywall only; and a reasonable hold back in the amount of $10 million "for use in connection with on-going remaining litigation and settlement administration work." *Id.*[6] Thus, this Court agreed that there should be no priority in the distribution of funds addressed to reimbursement of counsel for their reasonable expenses, but instead a uniform stipend should be awarded. Applying parity in this manner of reimbursing expenses greatly serves to equalize the interests of all property owners involved, from single condominium units to single family dwellings. The FC is painstakingly continuing its efforts to achieve parity in its ongoing deliberations. It is crystal clear that most plaintiffs' counsel have spent in excess of $1,000 per remediated unit, and that no one objected to the stipend as requested by the PSC. To allow the

---

[5]Counsel for the Villa Lago Plaintiffs are comprised of several law firms, Mrachek, Fitzgerald, Rose, Konopka, Thomas & Weiss; Whitfield, Bryson & Mason, LLP; Rhine Martin Law Firm; Linkhorst & Hockin, P.A.; and Pendley, Baudin & Coffin, L.L.P., including one member of the PSC (Daniel Bryson). These counsel represent over 600 property owners eligible to collect the $1,000 stipend. Only 293 of these property owners are Villa Lago class members. Demanding immediate payment of their expenses for their Villa Lago clients has put these counsel in direct conflict with all of their other clients.

[6]Currently, the FC is directing itself to the ongoing dispute with Home Builders' Liaison Counsel regarding the identity of certain homebuilders who actively participated in this litigation and are seeking a cap of 10% on fees and costs from the Banner settlement for Affected Properties they repaired, and the related dispute with the Home Builders regarding the Global Settlement.

Villa Lago Plaintiffs to recover funds in excess of the judicially-approved stipend amount would be plainly inequitable.

By Order dated February 12, 2015 (Rec.Doc. 18354), Villa Lago's Motion for costs was scheduled for submission on March 26, 2015. The Court invited the FC and any other party to respond to the instant motion, but asked that the FC specifically address the impact of this Court's December 12, 2014 Order regarding the FC's holdback motion on Villa Lago's current motion. As evident from the forgoing background discussion and the argument to follow, the stipend was intended to address all costs per property, including multi-unit condominiums like Villa Lago.

### III.   ARGUMENT

The Villa Lago Plaintiffs are not entitled to any special treatment. The mere fact that the Coastal Settlement Agreement provided for a mechanism by which certain fees and costs are to be considered, has no preemptive effect on the orderly proceedings contemplated by Pretrial Order No. 28. To the contrary, the Coastal Settlement Agreement agrees to abide by this Court's processes, and whatever rulings this Court should ultimately make in regards to fees and costs will be determinative of the issue. The Villa Lago Plaintiffs confirmed their commitment to this process as detailed in the separate letter agreement with Plaintiffs' Lead Counsel.

Nowhere in the Villa Lago Plaintiffs' papers is any attempt made to explain why their motion is being presented now or why they are entitled to "leap frog" over the process contemplated by PTO No. 28. Nor do the Villa Lago Plaintiffs explain why they should be permitted to circumvent this Court's stipend order. Because the course this Court has charted is well-founded and sure to resolve the complex and prolix matters involving the award of common

benefit and retained counsels' attorneys' fees and costs in this landmark litigation, both the issues raised and those avoided by the Villa Lago Plaintiffs will be addressed. Under the aegis of PTO No. 28, all attorneys' fees and costs issues will be deliberated <u>at one time</u>, and all claims to such entitlement will be treated in parity with one another in conformance with the uniform standards imposed by this Court's Orders. The fact that the Villa Lago Plaintiffs are due to recover $1,000 per condominium unit pursuant to the Court's Stipend Order will therefore be taken into consideration during the FC's deliberations, and these plaintiffs can once again challenge the FC's decision, and make a demand for being treated specially.

  Accordingly, the FC prefers that this Court continue to follow the process contemplated by PTO No. 28 until such time as the Court sees the whole picture, and all matters are presented. In effect, the FC recommends no more than maintaining the status quo, as opposed to creating a new process which allows for prematurely making *ad hoc* awards, including the Villa Lago Plaintiffs' request for costs. To allow individual stakeholders like the Villa Lago Plaintiffs to seek independent treatment is antithetical to the procedures outlined in PTO No. 28, and the compromise reflected in this Court's Stipend Order. No individual counsel should receive preferential treatment outside of the process that has governed these proceedings for all counsel involved. Those counsel who have participated in and abided by the process rightly expect as much. Otherwise, such piecemeal treatment of counsel's requests are likely to result in unfair and inequitable results, contrary to the dictates of *High Sulphur*. Moreover, to require the FC to undertake the audit necessary to verify the submissions made by all participating counsel would take an inordinate amount of time and incur significant expenses for Mr. Garrett's services, which would only serve to further deplete the limited funds available.

The FC is in deliberations and the FC's process is ongoing.  Under the guidelines of PTO No. 28 as amended by PTO 28(E), at an appropriate time, the FC is obliged to first make a separate recommendation of fee allocations and for cost reimbursement for each participating attorney or law firm which has submitted a Second Affidavit.  Thereafter, in the event a participating attorney is dissatisfied with the FC's recommendation, that counsel is permitted to provide the FC written objections.  These objections are to be considered prior to the FC making its final recommendation to this Court.  And following the final recommendation, this Court will employ its discretion to make an appropriate allocation.  The Villa Lago Class Counsel will have ample opportunities to advise this Court of their disagreement with the FC, but now is not an appropriate time.

There is no justification for the Villa Lago Plaintiffs' attempts to "jump the gun" and obtain a separate cost award now that differs from the stipend per condominium property already awarded to them.  The regulated and well-conducted process contemplated by this Court is still unfolding.  There is no reasoned basis for prematurely disrupting these proceedings, nor for allowing piecemeal awards therefrom.

## IV.    CONCLUSION

For the reasons set forth above, the Villa Lago Plaintiffs' Motion for Payment of Costs Pursuant to Coastal Settlement Agreement should be denied without prejudice.

Respectfully submitted,

Dated: March 4, 2015

/s/ Russ M. Herman
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel in MDL 2047*
*Fee Committee Co-Chair/Secretary*

Arnold Levin (on the brief)
Fred S. Longer (on the brief)
Sandra L. Duggan
Matthew C. Gaughan
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel in MDL 2047*
*Fee Committee Chair*

Dawn M. Barrios
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com
*Fee Committee Member*

Christopher A. Seeger
Scott Alan George
SEEGER WEISS, LLP
77 Water Street, 26th Floor
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com
*Fee Committee Member*

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Richard J. Serpe
LAW OFFICES OF RICHARD J. SERPE
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com
*Fee Committee Member*

Michael J. Ryan
KRUPNICK CAMPBELL MALONE
BUSER SLAMA HANCOCK LIBERMAN
12 S.E. Seventh Street, Suite 801
Fort Lauderdale, FL 33301
Phone: (954) 763-8181
Fax: (954) 763-8292
*Fee Committee Member*

**CERTIFICATE OF SERVICE**

  I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 4th day of March, 2015.

              /s/ Leonard A. Davis
              Leonard A. Davis, Esquire
              HERMAN, HERMAN & KATZ, LLC
              820 O'Keefe Avenue
              New Orleans, Louisiana 70113
              Phone: (504) 581-4892
              Fax: (504) 561-6024
              Ldavis@hhklawfirm.com
              Plaintiffs' Liaison Counsel
              MDL 2047

*Co-counsel for Plaintiffs*