UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | |

### TAISHAN GYPSUM LTD., CO.'S RESPONSE IN OPPOSITION TO THE PSC'S MOTION TO PRECLUDE TAISHAN FROM PARTICIPATING IN JUDICIAL PROCEEDINGS

The Court should deny the PSC's motion to preclude Taishan Gypsum Ltd., Co. from participation because it calls for the unconstitutional disentitlement of Taishan and other defendants in this action—a proposed sanction for contempt that has been directly, unequivocally and repeatedly rejected by the United States Supreme Court. The sanction sought is barred by the ancient but sound reasoning of the highest court: "It would be like saying to a party, 'Appear and you shall be heard;' and, when he has appeared, saying, 'Your appearance shall not be recognized, and you shall not be heard.'" *Hovey v. Elliott*, 167 U.S. 409, 415 (1897).

But this Court does not need to decide the constitutionality of the PSC's requested sanction because the Motion to Preclude Participation is moot. As explained in Taishan's concurrently filed Motion to Lift Order of Contempt By Showing Compliance ("Motion to Lift Contempt"; Attached as Exhibit 1), Taishan, through new counsel, is participating in this judicial process and has complied with the other two conditions of the Court's July 17, 2014 Contempt Order. Therefore, Taishan has purged itself of contempt, and mooted the Motion to Preclude Participation.

**Relevant Factual and Procedural Background**

*Default Judgments in* **Germano**

*Germano* is one of many cases transferred to this Court as part of the Chinese-Manufactured Drywall Products Liability Litigation Multi-District Litigation ("MDL"). On November 20, 2009, the Court ordered preliminary default against Taishan in *Germano*, in which a Virginia class was alleged, but not yet certified. (Dkt. No. 487). The Court then permitted the intervention of 14 individual plaintiffs ("Plaintiff-Intervenors"), and held an evidentiary hearing on the Plaintiff-Intervenors' claimed damages (without Taishan's participation). Following the hearing, this Court issued Findings of Fact and Conclusions of Law as to the Plaintiff-Intervenors. (Dkt. No. 2380.) The Court entered Default Judgment for the Plaintiff-Intervenors on May 10, 2010 (Dkt. No. 3013) ("Final Default Judgment"), awarding seven judgments in the total amount of $2,609,099.99, plus pre-judgment interest of $149,256.53, plus undetermined post-judgment interest and costs.

Following entry of the Final Default Judgment, Taishan appeared and appealed the entry of default to the Fifth Circuit Court of Appeals on the grounds that this Court lacked personal jurisdiction over Taishan. The Fifth Circuit remanded for jurisdictional discovery, but ultimately affirmed this Court's personal jurisdiction over Taishan and the *Germano* Default Judgment. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576 (5th Cir. 2014). In 2014, counsel for Plaintiff-Intervenors commenced post-judgment discovery pursuant to Federal Rule of Civil Procedure 69(a).

*Attempted Post-Judgment Discovery & Contempt*

On June 20, 2014, the Court ordered a Taishan representative to appear for a judgment debtor examination on July 17, 2014. (Dkt. No. 17774.) On July 15, 2014, Taishan's then

2

counsel—Hogan Lovells—moved to withdraw as Taishan's counsel of record, reporting to the Court that Taishan "has notified Counsel that it does not intend to participate in the judgment debtor exam or any decision on the Bill of Costs." (Dkt. No. 17846-1.) Taishan did not appear through counsel or a representative at the July 17, 2014 judgment debtor examination. That same day, the Court entered the Contempt Order "[a]s a consequence of Taishan's refusal to appear at the Judgment Debtor Examination, in direct, willful violation of this Court's June 20, 2014 order." (Contempt Order at p. 2.) The Contempt Order (1) directed Taishan to pay $15,000 in attorneys' fees to Plaintiffs' counsel and (2) pay $40,000 as a penalty for contempt. The Contempt Order also (3) enjoined "Taishan, and any of its affiliates or subsidiaries," from conducting any business in the United States "until or unless it participates in this judicial process." (Contempt Order at p. 3.)

*Post-Contempt Developments*

Just days after the entry of the Contempt Order, and after Taishan had withdrawn from participation in the MDL, Plaintiffs served Taishan with Requests for Admission pursuant to Federal Rule of Civil Procedure 36, propounding more than 100 questions directed to the corporate relationships between Taishan and other entities, including some co-Defendants. (*See* Notice of Filing on July 21, 2014, Dkt. No. 17993.) Because Taishan did not object or respond to the Requests for Admission, they were deemed admitted pursuant to Rule 36(a)(3) of the Federal Rules of Civil Procedure. (*See* Findings of Fact and Conclusions of Law With Respect to Plaintiffs' Omnibus Motion for Class Certification to Rules 23(a)(1)-(4) and 23(b)(3), September 26, 2014, Dkt. No. 18028 ("Class Certification FOFCOL"). Relying in part on the deemed admissions, this Court found that class certification was appropriate, and defined the certified class as follows:

> All owners of real properties in the United States, who are named Plaintiffs on the complaints in *Amorin, Germano, Gross,* and/or *Wiltz* (*i.e.*, not an absent class member), asserting claims for remediated damages arising from, or otherwise related to Chinese Drywall manufactured, sold, distributed, supplied, marketed, inspected, imported or delivered by the Taishan Defendants.

(Class Certification FOFCOL, at pp. 34-35.) The Court found that the class comprised "approximately 4,150 members." (*Id.* at p. 23)

On the basis of this class certification and Taishan's prior defaults, Plaintiffs moved the Court to award damages to the class in the staggering aggregate amount of $1,263,330,881.19. (Pls.' Mot. For Assessment of Class Damages Pursuant to Rule 55(b)(2)(B) and Req. for Approval of Supplemental Notice, Oct. 29, 2014, Dkt. No. 18086 ("Motion for Class Damages").) This Court set the Motion for Class Damages to be submitted with oral argument on February 12, 2015. (Order, Dec. 19, 2014, Dkt. No. 18222.) On the day of the hearing, however, a request was made on behalf of Defendant BNBM[1] to continue the hearing so that BNBM (and possibly other Defendants) may be heard. (*See* Minute Entry, Feb. 12, 2015, Dkt. No. 18331.) This Court continued the hearing, and set the Motion for Class Damages for hearing on March 17, 2015, ordering "BNBM, and any other party that wishes to respond" to the Motion for Class Damages to file said responses by March 9, 2015. (*Id.*)

The undersigned counsel entered an appearance for Taishan on February 17, 2015. (Dkt. No. 18352.). Three days later, the PSC filed its Motion to Preclude Participation, requesting that "Taishan and BNBM be precluded from participating in any proceedings involving Plaintiffs' motion for assessment of class damages pursuant to rule 55(b)(2)(B) unless Taishan purges itself

---

[1] The request was made orally through the courtroom appearance of attorney Aaron Block of Alston & Bird for the singular purpose of relaying BNBM's request for a continuance. Alston & Bird has never filed a formal Notice of Appearance on behalf of BNBM. Alston & Bird has filed Notices of Appearance for Taishan and TTP. The law firm of Dentons entered a formal Notice of Appearance on behalf of BNBM and BNBM Group on March 4, 2015. (*See* Notices of Appearance by C. Michael Moore on behalf of Beijing New Building Materials Public Limited Company and Beijing New Building Material (Group) Co., Ltd., Dkt. No.'s 18427 and 18428). Alston & Bird does not represent the BNBM entities; it represents only Taishan and TTP in the MDL.

of contempt." (Mem. of Law in Supp. of Mot. to Preclude Participation, Dkt. No. 18367-1 ("PSC Brief"), at 6.) On February 26, 2015, this Court reset the hearing for the Motion for Class Damages to March 26, 2015, and held that "it is worthwhile to address this new motion [the Motion to Preclude Participation] first" on March 17, 2015. (Order, Feb. 26, 2015, Dkt. No. 18400.) Parties wishing to respond to the Motion to Preclude Participation were ordered to file their responses by March 9, 2015.

## Law and Argument

### I.   The Motion to Preclude Participation Is Moot.

Taishan has purged itself of contempt by participating in this judicial process and complying with the two other conditions of the Contempt Order. (*See* Exhibit 1; *see also* Notice of Payment of Contempt Penalty, filed contemporaneously herewith.) Contempt sanctions imposed by a district court must terminate upon the contemnor's compliance with the terms of the decree. *See Skinner v. White*, 505 F.2d 685 (5th Cir. 1974). The Fifth Circuit has held:

> [S]ince sanctions imposed in civil contempt proceedings must always give to the alleged contemnor the opportunity to bring himself into compliance [with the prior court order], the sanction cannot be one that does not come to an end when he repents his past conduct and purges himself.

*Lance v. Plummer*, 353 F.2d 585, 592 (5th Cir. 1965). Taishan has complied with each of the three elements of this Court's Contempt Order. *United States v. Rizzo*, 539 F.2d 458, 463 (5th Cir. 1976) (finding that contempt is "lifted if the contemnor purges himself of the contempt" through compliance). Thus, the express proviso of the PSC's Motion to Preclude Participation—"unless Taishan purges itself of contempt"—applies to prevent the requested disentitlement. (Mot. to Preclude at p. 6).

**II.     The Motion to Preclude Participation Is Unconstitutional.**

The Motion to Preclude Participation should also be denied on the independent ground that it fails as an unconstitutional violation of the due process rights of Taishan and other defendants to defend themselves against seizure of property.  Based on a long and unbroken line of precedent, to grant the PSC's Motion to Preclude Participation would be a grave constitutional error.

The PSC is not the first litigant to argue that its opponent's contempt should bar it from participating in civil proceedings until its contempt has been purged.  The same argument was advanced by the appellee in *Hovey v. Elliott*, 167 U.S. 409 (1897).  The trial court in that case found civil defendants to be in contempt of court for failure to obey the court's order to pay a specified sum to the court's registry. *Hovey*, 167 U.S. at 411. The lower court's contempt decree struck the contemnor's answer, and ordered that "until the said defendants shall comply with the said order of June 19, 1877, all proceedings on the part of said defendants in this cause be, and the same are hereby, perpetually stayed." *Id.*  The claim was thus rendered as a default judgment against the defendants. *Id.*  The court later ordered and adjudged that a lien be placed on the property of the defendants in the uncontested amount of the judgment. *Id.* at 412.

The case ultimately reached the U.S. Supreme Court, which denounced the lower court's actions as fundamentally unfair and unconstitutional, and excoriated the lower court's use of contempt powers to deprive a litigant of its right to defend against claims to its property.  The opinion is replete with sweeping repudiations of the notion that disentitlement can be a consequence of contempt:

- "To say that courts have inherent power to deny all right to defend an action, and to render decrees without any hearing whatever, is, in the very nature of things, to convert the court exercising such an authority into an instrument of wrong and oppression, and hence to strip it of that attribute of justice upon which the

6

> exercise of judicial power necessarily depends." *Id.* at 414.

- "A denial to a party of the benefit of a notice would be, in effect, to deny that he is entitled to notice at all, and the sham and deceptive proceeding had better be omitted altogether. *It would be like saying to a party, 'Appear and you shall be heard;' and, when he has appeared, saying, 'Your appearance shall not be recognized, and you shall not be heard.'*" *Id.* at 415 (emphasis added).

- "If the power to violate the fundamental constitutional safeguards securing property exists, and if they may be with impunity set aside by courts on the theory that they do not apply to proceedings in contempt, why will they not also apply to proceedings against the liberty of the subject? Why should not a court in a criminal proceeding deny to the accused all right to be heard, on the theory that he is in contempt, and sentence him to the full penalty of the law? No distinction between the two cases can be pointed out." *Id.* at 419.

- "Certain it is that in all the reported decisions of the chancery courts in England no single case can be found where a court . . . ever ordered an answer to be stricken from the files, and denied to a party defendant all right of hearing because of a supposed contempt." *Id.* at 419-20.

Relying on *Hovey*, the Fifth Circuit has also held that a district court may not order that the courthouse "doors be closed to [a party] in the defense of either his liberty or his property" as a consequence of contempt. *Deauville Assocs. V. Eristavi-Tchitcherine*, 173 F.2d 745, 746 (5th Cir. 1949) (citing *Hovey*). Here, the PSC's attempt to bar Taishan's ability to defend against its claim for damages of more than *$1.2 billion* under the false notion that Taishan owes contempt fines amounting to *$55,000* runs afoul of the Constitution, the common law, and the principle of fundamental fairness.

The powerful protective reasoning to ensure due process, the rule of law, and the dignity of federal court proceedings articulated in *Hovey v. Elliott* was reiterated in *Degen v. United States*, 517 U.S. 820 (1996). There, the high court considered "whether a United States District Court may strike the filings of a claimant in a forfeiture suit and grant summary judgment against him for failing to appear in a related criminal prosecution." *Id.* at 821. Delivering the unanimous opinion of the court, Justice Kennedy invoked *Hovey*, as having "held it

7

unconstitutional to use disentitlement similar to this as punishment . . . for contempt of court."

*Id.* at 828. The Supreme Court further reasoned:

> It remains the case [] that the sanction of disentitlement is most severe and so could disserve the dignitary purposes for which it is invoked. The dignity of a court derives from the respect accorded its judgments. That respect is eroded, not enhanced, by too free a recourse to rules foreclosing consideration of claims on the merits.
>
> There would be a measure of rough justice in saying Degen must take the bitter with the sweet, and participate in the District Court either for all purposes or none. But the justice would be too rough. A court's inherent power is limited by the necessity giving rise to its exercise.

*Id.* at 828-29. This court too must reject the PSC's overreaching call for "rough justice" against Taishan and its alleged "affiliates." It would be reversible error for the Court to enter default judgment without holding a Rule 55(b)(2) damages hearing and permitting Taishan to participate by cross-examining witnesses and presenting evidence. *See Frame v. S-H, Inc.*, 967 F.2d 194, 204 (5th Cir. 1992) (reversing for lack of damages hearing and noting due process concerns of *Hovey*); *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) ("The case law is clear that a judgment by default may not be entered without a hearing . . . .") (citations omitted)); *see also Bonilla v. Trebol Motors Corp.*, 150 F.3d 77, 82 (1st Cir. 1998) (holding that "a defaulting defendant is entitled to contest damages and to participate in a hearing on damages, should one be held."). The PSC cannot use Taishan's prior violation of the Court's order to march forward unopposed towards a nearly $1.3 billion dollar judgment, especially when Taishan is present and prepared to show that the proposed aggregated tort damages award is plainly barred by governing Fifth Circuit law. *See In re Fibreboard Corp.*, 893 F.2d 706 (5th Cir. 1990).

      The intent of the Consent Order was to draw Taishan back to the judicial process.

Taishan has reappeared. Unhappy with that outcome, the PSC seeks to have this Court exclude Taishan from further proceedings, so that it may continue to pursue its claims and damages unopposed and undefended, echoing the "sham and deceptive proceeding" described by the *Hovey* Court: "It would be like saying to a party, 'Appear and you shall be heard;' and, when he has appeared, saying, 'Your appearance shall not be recognized, and you shall not be heard.'" *Hovey*, 167 U.S. at 415.

In stark contrast to controlling Supreme Court legal precedent, the PSC relies on the general equitable notion of "unclean hands," and discusses a single district court decision from another district. (*See* PSC's Brief at 5, *citing United States v. Crawford Enters., Inc.*, 643 F. Supp. 370 (S.D. Tex. 1986).) According to the PSC, "*[b]ased on this authority*, it is well within this Court's ability to preclude the Taishan Defendants from participating any further in this litigation unless and until Taishan purges itself fully of its contempt." (PSC Br. at 6.) Not only has the PSC overlooked binding Supreme Court precedent holding the *very opposite* of this proposition, but it has misconstrued the position of the Texas district court.

In *Crawford Enterprises*, Pemex, a company owned by the Mexican government, was held in criminal and civil contempt for defying the court's discovery orders and refusing to give documents to the defendants in a criminal case. *Crawford Enters*, 643 F. Supp. at 381-83. Pemex was simultaneously pursuing civil claims arising from the same facts against the same defendants in another proceeding. *Id.* at 372. In its contempt order, the court enjoined Pemex from pursuing its civil case until it complied with the court's order in the criminal matter. *Id.* at 381-82. In other words, the Texas court precluded the contemnor from affirmatively pursuing its own civil claims while refusing to provide court-ordered discovery in a related criminal proceeding.

9

The *Hovey* Court expressly recognized the scenario presented by *Crawford Enterprises*, in which a contemnor's rights to *pursue* claims may be curtailed for contempt, but the *Hovey* Court rejected a corollary proposition that the contemnor's rights to *defend* claims could be similarly foreclosed:

> The court will not hear a party in contempt coming himself into court *to take advantage of proceedings in the cause*; but such a party *is entitled to appear notwithstanding*, and *resist any proceedings taken against him* . . . .

*Hovey*, 167 U.S. at 430 (emphasis added).  To the extent that *Crawford Enterprises* warrants any credence from this Court, it is easily reconciled with, and does nothing to undermine the constitutional safeguards applied by the Supreme Court in *Hovey*.

## Conclusion

For the foregoing reasons, the Motion to Preclude Participation should be DENIED.

Dated:  March 9, 2015

Respectfully submitted,

/s Michael P. Kenny
Bernard Taylor, Esq.
Georgia Bar No. 669625
Michael P. Kenny, Esq.
Georgia Bar No. 415064
Cari K. Dawson, Esq.
Georgia Bar No. 213490
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
michael.kenny@alston.com
*Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*

                Alan Dean Weinberger
                LA Bar No. 13331
                HANGARTNER, RYDBERG & TERRELL, LLC
                One Shell Square
                701 Poydras St., Suite 310
                New Orleans, Louisiana  70179
                Phone:  (504) 434-6815
                Fax: (504) 522-5689
                aweinberger@hanrylaw.com
                *Local Counsel for Taishan Gypsum Co., Ltd. and*
                *Tai'an Taishan Plasterboard Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **TAISHAN GYPSUM LTD., CO.'S RESPONSE IN OPPOSITION TO THE PSC'S MOTION TO PRECLUDE TAISHAN FROM PARTICIPATING IN JUDICIAL PROCEEDINGS** has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 9th day of March, 2015.

      /s Michael P. Kenny
Michael P. Kenny, Esq.
Georgia Bar No. 415064
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
michael.kenny@alston.com
*Counsel for Taishan*