**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: *Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* Case No. 2:09-cv-6687 (E.D. La.) | |

**TAISHAN GYPSUM LTD., CO.'S**
**RESPONSE IN OPPOSITION TO**
**PLAINTIFF-INTERVENORS' AND THE PSC'S**
**MOTION FOR AN EXPEDITED HEARING TO ENFORCE**
**THE COURT'S JULY 17, 2014 CONTEMPT ORDER AND INJUNCTION**

The Court's July 17, 2014 Contempt Order has three components. As explained in Taishan Gypsum Ltd., Co. ("Taishan")'s concurrently filed Motion to Lift Order of Contempt By Showing Compliance ("Motion to Lift Contempt"; Attached as Exhibit 1), Taishan, through new counsel, is participating in this judicial process and has complied with the other two conditions of the Court's Order. The Plaintiff-Intervenors' and PSC's Motion for an Expedited Hearing to Enforce the Contempt Order ("Motion to Enforce") is therefore moot and should be denied.

Mootness aside, the PSC's Motion to Enforce sweeps way too far, unconstitutionally broadening the scope and application of the Contempt Order *ex post facto*, and thereby threatening to mire these proceedings in unnecessary discovery and punitive measures.

**Relevant Factual and Procedural Background**

*Default Judgments in* **Germano**

*Germano* is one of many cases transferred to this Court as part of the Chinese-Manufactured Drywall Products Liability Litigation Multi-District Litigation ("MDL"). On

November 20, 2009, the Court ordered preliminary default against Taishan in *Germano*, in which a Virginia class was alleged, but not yet certified.  (Dkt. No. 487).  The Court then permitted the intervention of 14 individual plaintiffs ("Plaintiff-Intervenors"), and held an evidentiary hearing on the Plaintiff-Intervenors' claimed damages (without Taishan's participation).  Following the hearing, this Court issued Findings of Fact and Conclusions of Law as to the Plaintiff-Intervenors.  (Dkt. No. 2380.)  The Court entered Default Judgment for the Plaintiff-Intervenors on May 10, 2010 (Dkt. No. 3013) ("Final Default Judgment"), awarding seven judgments in the following amounts, plus undetermined post-judgment interest and costs:

| Plaintiff-Intervenor | Damages | Pre-Judgment Interest |
|---|---|---|
| William and Deborah Morgan | $481,613.29 | $27,550.92 |
| Jerry and Inez Baldwin | $441,669.11 | $25,267.61 |
| Joseph and Kathy Leach | $89,676.86 | $5,130.01 |
| Bob and Lisa Orlando | $407,905.44 | $23,334.43 |
| J. Frederick and Vanessa Michaux | $355,607.80 | $20,342.71 |
| Preston and Rachel McKellar | $351,741.22 | $20,121.52 |
| Steven and Elizabeth Heischober | $480,886.27 | $27,509.33 |
| **Total** | **$2,609,099.99** | **$149,256.53** |

Following entry of the Final Default Judgment, Taishan appeared and appealed the entry of default to the Fifth Circuit Court of Appeals on the grounds that this Court lacked personal jurisdiction over Taishan.  The Fifth Circuit remanded for jurisdictional discovery, but ultimately affirmed this Court's personal jurisdiction over Taishan and the *Germano* Default Judgment.  *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576 (5th Cir. 2014).  In 2014, counsel for Plaintiff-Intervenors commenced post-judgment discovery pursuant to Federal Rule of Civil Procedure 69(a).

***Post-Judgment Discovery and Contempt***

On June 20, 2014, the Court ordered a Taishan representative to appear for a judgment

2

debtor examination on July 17, 2014. (Dkt. No. 17774.)   On July 15, 2014, Taishan's then

counsel—Hogan Lovells—moved to withdraw as Taishan's counsel of record, reporting to the

Court that Taishan "has notified Counsel that it does not intend to participate in the judgment

debtor exam or any decision on the Bill of Costs."  (Dkt. No. 17846-1.)  Taishan did not appear

through counsel or a representative at the July 17, 2014 judgment debtor examination.  That

same day, the Court entered the Contempt Order "[a]s a consequence of Taishan's refusal to

appear at the Judgment Debtor Examination, in direct, willful violation of this Court's June 20,

2014 order." (Contempt Order at p. 2.)  The Contempt Order (1) directed Taishan to pay $15,000

in attorneys' fees to Plaintiffs' counsel and (2) pay $40,000 as a penalty for contempt.  The

Contempt Order also (3) enjoined "Taishan, and any of its affiliates or subsidiaries," from

conducting any business in the United States "until or unless it participates in this judicial

process." (Contempt Order at p. 3.)

The undersigned counsel entered an appearance for Taishan on February 17, 2015. (Dkt.

No. 18352.).  As Plaintiffs have acknowledged, "Taishan now has resumed participation in these

proceedings through newly-retained counsel."  (Plaintiffs' proposed "Revised Order Scheduling

Expedited Hearing to Enforce the Court's July 17, 2014 Contempt Order and Judgment," March

2, 2015, Dkt. No. 18404-40 ("Plaintiffs' Proposed Contempt Order"), at p. 2). Further, in the

seven months that transpired between July 17, 2014 and February 17, 2015, Taishan did not

"conduct[] any business in the United States."

**PSC's Efforts to "Enforce" Contempt**

Plaintiff-Intervenors and the PSC filed their Motion to Enforce on February 10, 2015

(Dkt. No. 18302.)  In their supporting memorandum, the PSC argued that this Court should

convene a hearing "on an expedited basis to enforce the Contempt Order and Injunction," and

should also "give further clarity and effect" to the Contempt Order by issuing a new contempt order identifying 39 specific entities that the PSC alleges to be "affiliates" of Taishan. (Mem. of Law in Support of Motion to Enforce, Dkt. No. 18302-1 (the "First Brief in Support"), at p. 11; *see also* Proposed Order Scheduling Expedited Hearing to Enforce the Court's July 17, 2014 Contempt Order and Judgment, Dkt. No. 18302-12 (the "First Proposed Order"), at p. 2, ¶ 3.) The PSC also sought a finding that two entities named CNBM Import/Export and CNBM Forest (Canada) were "affiliates" of Taishan within the meaning of the Contempt Order (which did not define affiliates), and that the litigation activities of CNBM Import/Export and CNBM Forest (Canada) in an unrelated case that had commenced prior to this Court's entry of the Contempt Order. (First Brief in Support at pp. 17-18.) Finally, the PSC sought the forced registration of Taishan and the PSC's proposed list of "affiliates" in the "Clerk's office of every United States District Court throughout the country" with a "mechanism for notification of any direct, third-party, or interpleader action either pending or later filed by or against any of the Taishan entities." (First Brief in Support at p. 19.)

On March 2, 2015, the Plaintiff-Intervenors and the PSC sought leave to file a "Supplemental Memorandum of Law" in support of the Motion to Enforce. (Dkt. No. 18404.) In its proposed Supplemental Memorandum of Law in Support of Motion of Plaintiff-Intervenors and the PSC For an Expedited Hearing to Enforce the Court's July 17, 2014 Contempt Order and Injunction, Dkt. No. 18404-2 (the "Supplemental Brief"), Plaintiffs relied heavily on documents containing attorney-client communications that were produced by Hogan Lovells pursuant to this Court's order on February 27, 2015 (the "Hogan Production"). In the Supplemental Brief in Support, the PSC argued that this Court should enter an order with an "updated and amended"

4

list of alleged affiliates of Taishan, this time with 37[1] named entities.  (Supplemental Brief at 10; proposed Revised Order Scheduling Expedited Hearing to Enforce the Court's July 17, 2014 Contempt Order and Judgment, Dkt. No. 18404-40 ("Second Proposed Order"), at p. 3, ¶ 4.) The PSC also argued that, based on the Hogan Production, this Court should find that defendants CNBM and BNBM "likewise are held in contempt of court, civilly and criminally," and subject to the Court's July 17, 2014 Contempt Order.  (Second Proposed Order at p. 3, ¶ 3.)

To broaden the reach of the Contempt Order even further, the PSC submitted a proposed order that would deputize the PSC to vindicate the presumed contemptuous conduct of non-parties, by:

> authoriz[ing] the PSC . . . to conduct under the caption and authority of this MDL any and all discovery allowed by the Federal Rules of Civil Procedure, to determine whether or not there have occurred violations of the injunctive sanctions specified in the Court's Contempt Order of July 17, 2014, with respect to any and all affiliates and subsidiaries listed in Attachment 2, and, if so, to seek a full accounting from the appropriate sources in order to quantify and enforce the percent-of-profits penalty specified in that Order.

(*Id.* at p. 3, ¶ 5.)  The PSC's proposed prosecutorial powers would also include "authorizing the PSC to pursue enforcement actions, engage in motion practice, and conduct discovery related to any of the Taishan Affiliates or Subsidiaries shown to be conducting judicial or other business in the U.S. in violation of the injunctive sanctions imposed under the Contempt Order."  (*Id.* at p. 4, ¶ 7.)

### Law and Argument

The Motion to Enforce is moot. Taishan is participating in this judicial process and has complied with the two other conditions of the Contempt Order by paying the criminal penalty

---

[1] The list of alleged affiliates filed with the PSC's Supplemental Brief removed two entities and included modifications to the names of thirteen entities that the PSC had proposed this Court to identify just a few weeks prior.

and the compensatory attorneys' fees before March 17, 2015.  Taishan has thus purged itself of contempt.  *See Skinner v. White*, 505 F.2d 685 (5th Cir. 1974).  Taishan is also prepared to satisfy the Default Judgment entered in *Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* Case No. 2:09-cv-6687 ("*Germano*") (Dkt. No. 3013).  In other words, there is nothing left to enforce.

The Motion to Enforce also should be denied because it seeks to usurp the Court's inherent powers and expand radically the scope of the Contempt Order from a coercive instrument that has achieved its intended effect of securing the renewed participation of the party in contempt, to a far-reaching punitive sanction against dozens of non-parties that were not held in contempt, all without even minimum due process.  The PSC's efforts to engage in discovery and to initiate criminal prosecutions of entities that have not been before this Court is fundamentally unfair and, if allowed, would serve only to distract these proceedings and prolong the administration of justice for the very claimants that the PSC purports to represent.  As such, the Motion to Enforce should be denied.

## I.   Taishan Has Complied With the Contempt Order and Has Not Violated the Court's Injunction

In addition to ordering payment of attorneys' fees and a penalty, the Contempt Order contained the following coercive decree:

> IT IS FURTHER ORDERED that Taishan, and any of its affiliates or subsidiaries, is hereby ENJOINED from conducting any business in the United States *until or unless it participates in this judicial process*. If Taishan violates this injunction, it must pay a further penalty of 25% of the profits earned by the company or its affiliates who violate the order, for the year of the violation.

(Contempt Order at p. 3 (emphasis added).)   That injunction is a paradigmatic civil contempt sanction:  it coerces Taishan's "participation in this judicial process" by enjoining Taishan from

6

"conducting any business in the United States" until Taishan complies.  *See Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir. 1990) (holding that if the court's purpose is to coerce the contemnor into compliance, the contempt order is civil).

Nowhere in its supporting briefs and exhibits to the Motion to Enforce has the PSC alleged that *Taishan* violated the injunction in the period between this Court's entry of the Contempt Order on July 17, 2014, and Taishan's resumed participation in the judicial process on February 17, 2015.  Thus, Taishan has purged itself of its contempt by complying with the Court's conditions, and it cannot be further sanctioned.  *Lance v. Plummer*, 353 F.2d 585, 592 (5th Cir. 1965).  The threatened punitive penalty of 25% of Taishan's profits was never triggered as to Taishan, and it thus cannot be "enforced" as to Taishan.  Although the PSC has alleged that the activities of certain alleged "affiliates" of Taishan violated the injunction and triggered the broad penalty provision, as discussed below, the Contempt Order cannot be enforced against Taishan or non-parties on that basis.

II.     **The Injunction Cannot Be Enforced As Sought By the PSC**

   A.     *As Sought To Be Enforced By the PSC, the Contempt Order's Injunction Is Unconstitutionally Vague*

The Court should reject the PSC's attempt to expand the Contempt Order beyond the Fifth Circuit standards for injunctive relief and thus render the Order unconstitutionally vague. An injunction against a contemnor "must simply be framed so that those enjoined will know what conduct the court has prohibited."  *Meyer v. Brown & Root Const. Co.,* 661 F.2d 369, 373 (5th Cir. 1981); *accord North Alamo Water Supply Corp. v. City of San Juan,* 90 F.3d 910, 917 (5th Cir. 1996).  Injunctions also must be narrowly drawn and precise.  *Brown v. Petrolite Corp.,* 965 F.2d 38, 51 (5th Cir. 1992).  As a matter of constitutional due process, an injunction must contain sufficient detail to reasonably put a party on notice as to whom it applies and what

7

conduct is prohibited.  *John Doe #1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004).

The PSC essentially concedes that the Contempt Order is vague as to the identification of the unspecified "affiliates and subsidiaries" whose conduct the Order purports to prohibit.  Twice in association with its Motion to Enforce, the PSC has submitted to this Court lists of alleged affiliates to incorporate in revised Contempt Orders to "give further clarity and effect to the contempt sanctions" at issue—*i.e.*, to backfill a list of targeted entities that they would like to pursue.  (First Brief In Support, at p. 11.)  Illustrating the confusion as to its effort to make non-parties subject to the original Contempt Order, the PSC has now submitted *two different affiliate lists* that overlap to some extent, but still identify different sets of subject entities.  The Contempt Order is vague.  The PSC cannot even clearly define the enforceable reach of the Contempt Order's injunction and threatened punitive penalty.  The non-parties certainly cannot be held to know their status as an alleged contemnor-by-association.

The PSC also reinforces the vagueness of the Contempt Order's undefined references to "affiliates and subsidiaries" in its dedication of pages of supporting memoranda to provide explanatory definitions of those terms from varied sources that include ***Black's Law Dictionary***, the state statutes of Louisiana, Texas, Florida, Alabama, and Mississippi, state and federal case law, and the Code of Federal Regulations.  (*See* First Brief in Support at pp. 13-15; Supplemental Brief at pp. 33-37.)  The spate of authorities discussed by the PSC to shed light on what the term "affiliates and subsidiaries" should mean in the context of the Contempt Order serves only to underscore that a non-party to the *Germano* case could not readily identify itself as within the scope of its injunction.  Such insufficient detail cannot pass constitutional muster. *Veneman*, 380 F.3d at 818.

Nor can the PSC, *ex post facto*, seek to infuse the July 17, 2014 Contempt Order with the

affiliate findings *later* made on September 26, 2014, in this Court's Findings of Fact and Conclusions of Law with Respect to Plaintiffs' Omnibus Motion for Class Certification Pursuant to Rules 23(a)(1)-(4) and 23(b)(3), Dkt. No. 18028 ("Class FOFCOL").  That retroactive logic is not only the antithesis of due process, but is especially inappropriate to the extent that the specific affiliates identified in the Class FOFCOL became "factual findings" only by virtue of procedural "admissions" resulting from Taishan's *non-participation in the judicial proceedings*. (Class FOFCOLat p. 14, ¶ 28.)  The injunction and heavy threat of the Contempt Order was intended to coerce Taishan to participate in the judicial proceedings; the PSC cannot later exploit the non-participation to effectuate an *ex post facto* expansion of the application of the threatened penalty.

Accordingly, Taishan's compliance with the Contempt Order—thus purging itself of contempt—cannot be invalidated by the activities of alleged "affiliates and subsidiaries" that were not named in the Contempt Order.

### B.   The Profit Penalty of the Contempt Order Cannot Be Enforced Against Any Party Without Due Process

Although never triggered by any activities of Taishan, the threatened penalty described in the Contempt Order for violation of the coercive injunction is onerous and punitive, calling for "25% of the profits earned by the company or its affiliates who violate the order, for the year of the violation."  (Contempt Order at p. 3.)  Unlike the coercive and compensatory features of the Contempt Order, the imposition of a "further penalty" of a quarter of the contemnor's annual profits would be distinctly criminal in nature because it would punish the offender and vindicate the authority of the Court.  *See Lamar Fin. Corp.,* 918 F.2d at 566.  Such a penalty for criminal contempt could not be imposed against Taishan (or against unspecified affiliates and subsidiaries) absent due process measures afforded by Rule 42 of the Federal Rules of Criminal

Procedure.  *See Southern Railway Co. v. Lanham*, 403 F.2d 119, 125 (5th Cir. 1968).

Although a court may summarily impose criminal contempt sanctions without criminal procedure for "direct contempts committed in its presence," *Ex parte Terry*, 129 U.S. 289, 313-14 (1888), summary criminal contempt is expressly reserved "'for exceptional circumstances' . . . such as acts threatening the judge or disrupting a hearing or obstructing court proceedings." *Harris v. United States*, 382 U.S. 162, 164 (1965); *see also* Fed. R. Crim. P. 42(b).  Although this Court found that Taishan's underlying contemptuous act of failing to appear at the Court-ordered Judgment Debtor Examination on July 17, 2014 occurred in the Court's presence (triggering a $40,000 penalty to the Court, which Taishan has paid), the alleged violations of the injunction that the PSC describes and speculates to be attributable to Taishan's "affiliates" clearly do not fall within this narrow exception to constitutional requirements.  Thus, this Court cannot, as the PSC has suggested, hold CNBM, BNBM or any other of the alleged affiliates identified by the PSC to be in "civil and criminal contempt" by simply entering the Second Proposed Order based on the PSC's submissions, and certainly cannot summarily impose the sweeping profits-based penalty described as a threat in the Contempt Order.  Such action would violate the due process requirements provided in the Constitution and Rule 42(a) of the Federal Rules of Criminal Procedure.

C.      **The PSC's Attempt to Act As a Private Prosecutor For  Perceived Instances of Contempt Is Unconstitutional**

The PSC's request to serve as a private prosecutor to investigate perceived violations of this Court's Contempt Order by Taishan affiliates cannot be granted because it would be unconstitutional.  The Court should reject the staggeringly broad scope of the PSC's request for authority on this point:

to conduct under the caption and authority of this MDL any and all

> discovery allowed by the Federal Rules of Civil Procedure, to determine whether or not there have occurred violations of the Contempt Order with respect to any and all affiliates and subsidiaries listed in Attachment 2, and, if so, to seek a full accounting from the appropriate sources in order to quantify and enforce the percent-of-profits penalty specified in that Order.

(Second Proposed Order at p. 3, ¶ 5.)  Similarly, the Court should reject the PSC's request to be deputized to "pursue enforcement actions, engage in motion practice, and conduct discovery related to any of the Taishan Affiliates or Subsidiaries shown to be conducting judicial or other business in the U.S. in violation of the injunctive sanctions imposed under the Contempt Order." (*Id.* at p. 4, ¶ 7.)  The PSC has cited no law—because there is none—to justify the grant of authority it seeks.  On the contrary, the law prohibits such private prosecution of contempt.

Rule 42(b) of the Federal Rules of Criminal Procedure provides that "[t]he court must request that the contempt be prosecuted by an attorney for the government, unless the interest of justice requires the appointment of another attorney. If the government declines the request, the court must appoint another attorney to prosecute the contempt." Fed. R. Crim. P. 42.  The Committee Rules to Rule 42(b) further explain that courts should not allow interested attorneys to prosecute a criminal contempt case, stating:

> Revised Rule 42(a)(2) now explicitly addresses the appointment of a "prosecutor" and adopts language to reflect the holding in *Young v. United States ex rel. Vuitton*, 481 U.S. 787 (1987). In that case the Supreme Court indicated that ordinarily the court should request that an attorney for the government prosecute the contempt; only if that request is denied, should the court appoint a private prosecutor. *The rule envisions that a disinterested counsel should be appointed to prosecute the contempt.*

*Id.* (emphasis added).  The Fifth Circuit has forcefully articulated the sound policy reasons why private attorneys should not be involved in the prosecution of criminal contempt, observing that:

> It is the experience of this Court that the National Sovereign, through its chosen law officers, should be in control of criminal

> contempt proceedings. Only in this way can we have the assurances that the contentions, both factual and legal, of the prosecution are thought by responsible governmental officials to be the policy that the court should adopt.

*Bhd. of Locomotive Firemen & Enginemen v. United States*, 411 F.2d 312, 319-20 (5th Cir. 1969). The law recognizes that the authority sought by the PSC in its Motion to Enforce is a terrible idea that would thwart justice. This Court should reject the PSC's play for such power.

## III. The PSC's Proposals Would Delay These Proceedings And Distract From Adjudication of Plaintiffs' Claims

Finally, the Court should deny the Motion to Enforce because it would serve only to delay further these proceedings. The goal of the Contempt Order has been achieved: Taishan is participating again and is ready to defend itself and work toward resolution of the remaining claims in this MDL. In seeking to embark on international discovery efforts to ferret out any entity with any possible link to Taishan and explore its activities and finances for the seven-month period before Taishan resumed participation in the judicial proceedings, the PSC will defeat the very purpose of the Contempt Order's coercive conditions and punitive threat. Thus, the Motion to Enforce should be denied for the independent grounds that the Court has been vindicated and obeyed without additional "help" from the PSC, which should focus its energy on advancing the interests of its clients.

### Conclusion

For the foregoing reasons, the Motion to Enforce should be DENIED.

Respectfully submitted,

Dated:  March 9, 2015


/s Michael P. Kenny
Bernard Taylor, Esq.
Georgia Bar No. 669625
Michael P. Kenny, Esq.
Georgia Bar No. 415064
Cari K. Dawson, Esq.
Georgia Bar No. 213490
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
michael.kenny@alston.com
*Counsel for Taishan Gypsum Co., Ltd. And Tai'an
Taishan Plasterboard Co., Ltd.*

Alan Dean Weinberger
LA Bar No. 13331
HANGARTNER, RYDBERG & TERRELL, LLC
One Shell Square
701 Poydras St., Suite 310
New Orleans, Louisiana  70179
Phone:  (504) 434-6815
Fax: (504) 522-5689
aweinberger@hanrylaw.com
*Local Counsel for Taishan Gypsum Co., Ltd. And
Tai'an Taishan Plasterboard Co., Ltd.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the above and foregoing **Taishan Gypsum Ltd. Co.'s Response in Opposition to Plaintiff-Intervenors' and the PSC's Motion for an Expedited Hearing to Enforce the Court's July 17, 2014 Contempt Order and Injunction** has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 9th day of March, 2015.

/s Michael P. Kenny
Michael P. Kenny, Esq.
Georgia Bar No. 415064
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
michael.kenny@alston.com
*Counsel for Taishan*