# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

**THIS DOCUMENT RELATES TO:**

*Amorin et al. v. Taishan Gypsum Co. Ltd. et al.,* **Case No. 2:11-cv-01673**

*Amorin et al. v. Taishan Gypsum Co. Ltd. et al.,* **Case No. 2:11-cv-01395**

*Amorin et al. v. Taishan Gypsum Co. Ltd. et al.,* **Case No. 2:11-cv-01672**

*Wiltz et al. v. Beijing New Building Material Public Limited Company et al.,* **Case No. 2:10-cv-00361**

*Gross et al.v. Knauf Gips KG et al.,* **Case No. 2 :09-cv-06690**

*Germano et al. v. Taishan Gypsum Co. Ltd. et al.,* **Case No. 2:09-cv-06687**

**MEMORANDUM OF LAW
OF BEIJING NEW BUILDING MATERIALS PUBLIC LIMITED COMPANY
AND BEIJING NEW BUILDING MATERIAL (GROUP) CO., LTD. IN OPPOSITION
TO PLAINTIFFS' MOTION TO PRECLUDE TAISHAN OR ANY OF ITS AFFILIATES
FROM PARTICIPATING IN PROCEEDINGS INVOLVING PLAINTIFFS' MOTION
FOR ASSESSMENT OF CLASS DAMAGES PURSUANT TO RULE 55(B)(2)(B)
<u>UNLESS AND UNTIL TAISHAN PURGES ITSELF OF CONTEMPT</u>**

i

## TABLE OF CONTENTS

ASSERTION OF PERSONAL JURISDICTION DEFENSES ..................................................... 1

PRELIMINARY STATEMENT ........................................................................................... 2

ARGUMENT ...................................................................................................................... 4

    I.   This Court Does Not Have Jurisdiction Over BNBMPLC Or BNBM Group .................... 4

       A.  Neither BNBMPLC Nor BNBM Group Have The Requisite Direct Minimum Contacts With The Forum States ................................................................................... 5

       B.  Taishan's Contacts Cannot Be Imputed To BNBMPLC Or BNBM Group ................... 6

    II.  There Is No Basis To Preclude BNBMPLC Or BNBM Group From Contesting Class Damages ..................................................................................................................... 8

       A.  Due Process Requires That BNBMPLC And BNBM Group Be Allowed To Participate In Any Damages Hearing ................................................................................ 8

       B.  BNBMPLC And BNBM Group Are Not In Contempt Of This Court ......................... 10

          1.  BNBMPLC And BNBM Group Were Not And Could Not Have Been Found To Have Been In Contempt ............................................................................. 10

          2.  Taishan's Conduct Cannot Be Imputed To BNBMPLC Or BNBM Group .............. 12

       C.  The Contempt Order Does Not Preclude Any Defendant From Participating In The Litigation ......................................................................................................... 13

    III.  The Flaws In Plaintiffs' Damages Proffer Illustrate And Confirm The Need For A Fully Contested Hearing .......................................................................................... 15

CONCLUSION ................................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Angiodynamics, Inc. v. Biolitec AG*,
   991 F. Supp. 2d 283 (D. Mass. 2014) ................................................................. 2, 9

*Becerra v. Asher*,
   105 F.3d 1042 (5th Cir. 1997) ........................................................................... 7, 13

*Becerra v. Asher*,
   921 F. Supp. 1538 (S.D. Tex. 1996) *aff'd* 105 F.3d 1042 (5th Cir. 1997) ................ 7

*In re Briggs*,
   No. 08-00298, 2008 WL 4817504 (Bankr. D.D.C. Oct. 28, 2008) ....................... 2, 9

*Calkins v. Pacel Corp.*,
   No. 3:07-CV00025, 2008 WL 2844695 (W.D. Va. July 22, 2008) ........................... 9

*Certain Underwriters at Lloyd's London v. Frichelle Ltd.*,
   CIV. A. 96-0549, 1997 WL 16635 (E.D. La. Jan. 16, 1997) .................................... 6

*In re Chevron U.S.A., Inc.*,
   109 F.3d 1016 (5th Cir. 1997) ......................................................................... 16, 17

*Cimino v. Raymark Indus., Inc.*,
   151 F.3d 297 (5th Cir. 1998) ........................................................................... 15, 17

*Crowe v. Smith*,
   151 F.3d 217 (5th Cir. 1998) .............................................................................. 12

*Earl Realty, Inc. v. Leonetti (In re Leonetti)*,
   28 B.R. 1003 (E.D. Pa. 1983) ........................................................................... 7, 13

*F.T.C. v. Kuykendall*,
   371 F.3d 745 (10th Cir. 2004) ............................................................................. 12

*In re Fibreboard Corp.*,
   893 F.2d 706 (5th Cir. 1990) ........................................................................... 15, 16

*In re Fraidin*,
   34 F. App'x 932 (4th Cir. 2002) ........................................................................ 2, 8

*Frame v. S-H, Inc.*,
   967 F.2d 194 (5th Cir. 1992) .............................................................................. 15

*Grammenos v. Lemos*,
   457 F.2d 1067 (2d Cir. 1972)......................................................................................6

*In re Grand Jury Proceedings*,
   744 F.3d 211 (1st Cir. 2014) ....................................................................................11

*Grey v. Tacason (In re Tacason)*,
   No. ADV 12-1096-BAH, 2014 WL 7411596 (Bankr. D.N.H. Dec. 31, 2014) .......................9

*Griffith v. Oles (In re Hipp, Inc.)*,
   895 F.2d 1503 (5th Cir.1990) ...................................................................................11

*Hovey v. Elliott*,
   167 U.S. 409 (1897)...............................................................................................2, 8

*Int'l Shoe Co. v. Wash.*,
   326 U.S. 310 (1945).................................................................................................5

*Jackson v. Michalski*,
   No. 3:10-CV-00052, 2011 WL 3679143 (W.D. Va. Aug. 22, 2011) .........................................5

*Kelly v. Syria Shell Petroleum Dev. B.V.*,
   213 F.3d 841 (5th Cir. 2000) .....................................................................................5

*Kemp v. Metabolife Int'l, Inc.*,
   No. CIV 00-3513, 2002 WL 113894 (E.D. La. Jan. 25, 2002)................................................16

*Lacroix v. State Farm Fire & Cas. Ins. Co.*,
   No. 09–0609, 2010 WL 2265577 (E.D. La. June 2, 2010)....................................................18

*MP Vista, Inc. v. Motiva Enters., LLC*,
   286 F.R.D. 299 (E.D. La. 2012)................................................................................16

*N.L.R.B. v. Deena Artware, Inc.*,
   361 U.S. 398 (1960)...............................................................................................12

*Natural Gas Pipeline Co. v. Energy Gathering, Inc.*,
   86 F.3d 464 (5th Cir. 1996) ..............................................................................13, 14

*Nelson v. Commercial Diving Servs.*,
   No. 00-cv-0781, 2000 WL 1093026 (E.D. La. Aug. 2, 2000)..................................................6

*Oldfield v. Pueblo De Bahia Lora, S.A.*,
   558 F.3d 1210 (11th Cir. 2009) .................................................................................5

*Prejean v. Sonatrach, Inc.*,
   652 F.2d 1260 (5th Cir. 1981) ...................................................................................5

*Riberglass, Inc. v. Techni-Glass Indus., Inc.*,
    811 F.2d 565 (11th Cir. 1987) ....................................................................7, 13

*Seiferth v. Helicopteros Atuneros, Inc.*,
    472 F.3d 266 (5th Cir. 2006) .......................................................................4, 5

*Shillitani v. United States*,
    384 U.S. 364 (1966)........................................................................................13

*Stookey v. Teller Training Distribs., Inc.*,
    9 F.3d 631 (7th Cir. 1993) .............................................................................9

*Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*,
    109 F.3d 105 (2d Cir. 1997).........................................................................9

*Travelhost, Inc. v. Blandford*,
    68 F.3d 958 (5th Cir. 1995) ...........................................................................11

*Trujillo v. State Farm Fire & Cas. Ins. Co.*,
    No. 09–768, 2011 WL 162883 (E.D. La. Jan. 19, 2011) ..........................18

*U.S. v. Crawford Enters., Inc.*,
    643 F. Supp. 370 (S.D. Tex. 1986) ..............................................................14

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011).................................................................................15

*Waste Mgmt. of Wash., Inc. v. Kattler*,
    776 F.3d 336 (5th Cir. 2015) ...................................................................11, 12

*Williams v. Life Sav. & Loan*,
    802 F.2d 1200 (10th Cir. 1986) .....................................................................6

**Statutes**

18 U.S.C. § 401(3) ...............................................................................................11

**Other Authorities**

Fed. R. Crim. P. 42(a)...........................................................................................12

Beijing New Building Materials Public Limited Company ("BNBMPLC") and Beijing New Building Material (Group) Co., Ltd. ("BNBM Group") respectfully submit this memorandum of law in opposition to Plaintiffs' Steering Committee's Motion To Preclude Taishan or any of Its Affiliates From Participating In Proceedings Involving Plaintiffs' Motion For Assessment of Class Damages Pursuant To Rule 55(B)(2)(B) Unless and Until Taishan Purges Itself of Contempt (the "Motion To Preclude").

## ASSERTION OF PERSONAL JURISDICTION DEFENSES

On March 4, 2015, BNBMPLC and BNBM Group formally appeared in the above-captioned actions, through Notices of Appearance that specifically raised and preserved defenses relating to, *inter alia*, lack of personal jurisdiction.  Given the scheduling and deadlines that this Court established in its February 26, 2015 Order, which was entered prior to the filing of the Notices of Appearance, we believe it is critical to submit on a timely basis this opposition that addresses the subject matter of Plaintiffs' Motion To Preclude.  However, we respectfully submit that proceeding with any damages hearing against BNBMPLC and BNBM Group would be improper under all circumstances because the Court has no personal jurisdiction over these entities, and there should be no assessment of damages unless and until their respective objections to personal jurisdiction are addressed and resolved.

BNBMPLC and BNBM Group anticipate moving in short order pursuant to Fed. R. Civ. P. 12(b)(2) to dismiss the complaints against them for lack of personal jurisdiction.  At the time of such filings, they will proffer sworn proof demonstrating their lack of contacts with Louisiana and the other relevant forum states.  We raise the issue of personal jurisdiction at the outset of this brief both to preserve BNBMPLC's and BNBM Group's legal rights to assert this fundamental defense, and also because the absence of personal jurisdiction vitiates the broad-

1

scale relief Plaintiffs are seeking by this Motion.

## PRELIMINARY STATEMENT

In addition to the lack of personal jurisdiction, we respectfully submit that  Plaintiffs'

Motion To Preclude should be denied because such an order would violate BNBMPLC's and

BNBM Group's rights to Constitutional Due Process, and would run contrary to binding Fifth

Circuit precedent that prohibits applying this Court's July 17, 2014 contempt order (the

"Contempt Order") to either BNBMPLC or BNBM Group.

The United States Supreme Court in *Hovey v. Elliott*, 167 U.S. 409, 417-18 (1897), held

that denying a defendant the opportunity to present evidence before damages are awarded is a

Due Process violation.  This principal applies equally to a defaulted defendant.  *See, e.g.*, *In re

Fraidin*, 34 F. App'x 932, 932-33 (4th Cir. 2002); *In re Briggs*, No. 08-00298, 2008 WL

4817504, at *1 (Bankr. D.D.C. Oct. 28, 2008).  That protection holds true even where the

defaulting party has been held in contempt.  *See, e.g.*, *Angiodynamics, Inc. v. Biolitec AG*, 991 F.

Supp. 2d 283, 298-99 (D. Mass. 2014).  This unequivocal precedent mandates denial of

Plaintiffs' motion.

Here, BNBMPLC's and BNBM Group's rights to be heard at a damages hearing are even

more compelling, because neither BNBMPLC nor BNBM Group were held in contempt.  As

discussed in greater detail below, the Contempt Order does not, and cannot, apply to BNBMPLC

or BNBM Group for the following reasons:

- This Court found Taishan Gypsum Co. and its subsidiary Ti'an Taishan Plasterboard Co., Ltd. (collectively, "Taishan"), **not** BNBMPLC or BNBM Group, to be in contempt, after this Court ordered Taishan to appear for a judgment debtor examination and it failed to do so.

- The judgment to which the Contempt Order relates, as well as the Contempt Order itself, were both entered in *Germano v. Taishan Gypsum Co. Ltd.*, No. 2:09-cv-06687, a case in which BNBMPLC and BNBM

2

Group were ***not even parties***.

- As a matter of Due Process, BNBMPLC and BNBM Group could not be held in contempt, because, in addition to not being parties to the proceeding, neither received prior notice of the possible sanction, and they did not have the opportunity to be heard prior to entry of the Contempt Order.

- The only conceivable basis to apply the Contempt Order to BNBMPLC and BNBM Group is under a veil-piercing/alter ego theory, which this Court had not even ruled on at the time of the Contempt Order.

- The evidentiary basis for this Court's later determination that Taishan was an alter ego of BNBMPLC and BNBM Group was Taishan's Rule 36 admissions that resulted when Taishan did not respond to Rule 36 requests to admit—requests served after the Contempt Order was entered.  [Rec. Doc.18028, at 14-21].  But as a matter of law, those admissions cannot be used to impose liability, much less contempt, on BNBMPLC or BNBM Group, because Rule 36 admissions may only be used against the party to whom the Rule 36 requests were directed, *i.e.* Taishan.  They cannot be used against BNBMPLC or BNBM Group.

Moreover, the Contempt Order on its face does not preclude any party from participating in this litigation.  To the contrary, the Order was entered because Taishan refused to participate in the litigation.  BNBMPLC and BNBM Group each now stand ready to engage in the case, subject to a threshold determination on whether this Court has personal jurisdiction to adjudicate their respective rights.  To the extent that the Contempt Order was intended to coerce participation by the various Chinese National defendants, it has accomplished its ends, and further coercion or punishment is unwarranted.

Beyond that, Taishan's asserted contemptuous conduct is wholly unrelated to Plaintiffs' damages proofs.  Nothing in Taishan's refusal to submit to a debtor's examination has in any way prejudiced Plaintiffs' ability to prove damages on behalf of the class, and it is therefore improper to bar any defendants, let alone BNBMPLC or BNBM Group, from challenging those proofs.  In all events, we understand from Taishan's filings today that the contempt is being

purged, which moots the sole basis for the Motion To Preclude.

BNBMPLC and BNMB Group recognize that they have only recently appeared in these matters and have asserted at the outset, as they must, their respective personal jurisdiction defenses.  However, Plaintiffs seek to proceed with currently scheduled matters that could have extraordinary consequences.  Plaintiffs seek an assessment of over $1 billion in class-wide damages, a result that could directly impact BNBMPLC and BNBM Group in the event the Court finds that it has jurisdiction over those entities, and seek to bar BNBMPLC and BNBM Group from raising any opposition to that requested damage award.  This procedural dilemma is particularly grave because Plaintiffs' damages proffer is neither supportable as a factual matter, nor in conformity with the applicable Fifth Circuit law governing the presentation of class damages.  Accordingly, while this is not the appropriate juncture to present our full evidence and argument regarding damages issues, we do provide the Court in this submission with a summary of certain infirmities that are apparent on the face of Plaintiffs' damages request, and that further demonstrate the injustice that would result if the Defendants are prohibited from challenging Plaintiffs' proofs at a damages hearing.

For all of these reasons, Plaintiffs' Motion To Preclude should be denied.

## ARGUMENT

## I.   THIS COURT DOES NOT HAVE JURISDICTION OVER BNBMPLC OR BNBM GROUP

BNBMPLC and BNBM Group are Chinese companies involved in the building materials industry.  As a threshold matter (which will be addressed in full in a Rule 12(b)(2) motion), BNBMPLC and BNBM Group are not subject to the jurisdiction of this Court, since Plaintiffs do not and cannot show that either BNBMPLC or BNBM Group have the requisite contacts with any of the applicable forum states (Louisiana, Florida or Virginia (collectively, the "Forum

States")) sufficient either to justify the exercise of long-arm jurisdiction or to satisfy due process. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006).[1]

### A.    Neither BNBMPLC Nor BNBM Group Have The Requisite Direct Minimum Contacts With The Forum States

Plaintiffs have the burden of establishing that the exercise of jurisdiction over both BNBMPLC and BNBM Group is proper.  *Id.*  Plaintiffs must prove that (1) each defendant has minimum contacts with the Forum States, *i.e.*, that it "purposely directed its activities toward the forum state or purposely availed itself of the privilege of conducting activities there," and (2) the Plaintiffs' cause of action arises out of or results from that defendant's forum-related contacts. *Id.* at 271.

Plaintiffs must show that their causes of action against BNBMPLC and BNBM Group arose out of or resulted from that particular Defendant's alleged contacts with the Forum States. *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945); *Seiferth*, 472 F.3d at 271; *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220-23 (11th Cir. 2009); *Jackson v. Michalski*, No. 3:10-CV-00052, 2011 WL 3679143, at *3 (W.D. Va. Aug. 22, 2011).  There must be a close connection between a plaintiff's cause of action and the defendant's contacts with the forum to satisfy Due Process.  *See Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1270 n.21 (5th Cir. 1981) (airplane charter contract was "but for" causative factor of operative events giving rise to wrongful death claim from airplane crash); *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855-856 (5th Cir. 2000) (Syrian companies not amenable to specific jurisdiction in Texas because wrongful death claims of workers killed in Syria were not closely related to the

---

[1] BNBMPLC and BNBM Group also reserve the right to invoke a sovereign immunity defense under the Foreign State Immunity Act, 28 U.S.C. §1602, *et seq.*, in the event this Court determines that it has jurisdiction over them.  Similarly, in the event this Court determines that the BNBMPLC and BNBM Group are subject to this Court's jurisdiction, they intend to file motions to vacate the default judgments entered against them, and to contest liability in appropriate cases.

companies' recruiting activities in Texas); *Jackson*, 2011 WL 3679143, at *3 (defendant's contacts "must be directed at the forum state in more than a random, fortuitous, or attenuated way").

None of the complaints allege specific facts showing either that BNBMPLC or BNBM Group regularly marketed or sold drywall in the Forum States, or that either company placed products into the stream of commerce with the expectation that they would be purchased by or used by consumers in the Forum States. As BNBMPLC and BNBM Group will demonstrate in their forthcoming 12(b)(2) motions to dismiss, neither of them have had contacts with the Forum States sufficient to allow the Court to exercise jurisdiction over them in this matter.

## B. Taishan's Contacts Cannot Be Imputed To BNBMPLC Or BNBM Group

Following certain discovery, this Court previously determined that it had jurisdiction over Taishan, but there have been no such findings as to either BNBMPLC or BNBM Group.[2]  Nor is there any evidence in the existing record that would allow this Court to impute Taishan's forum contacts to BNBMPLC or BNBM Group.

Nor can Taishan's contacts with the Forum States be imputed to BNBMPLC and BNBM Group based on this Court's finding in its order certifying the plaintiff class that Taishan, BNBMPLC, BNBM Group and others constitute "a single business enterprise for purposes of…

---

[2] A party does not waive its right to assert a personal jurisdiction defense by not responding to or appearing to defend against an action. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202-03 (10th Cir. 1986). Similarly, an Alston & Bird attorney's appearance at the February 12 Court conference for the purpose of requesting an extension of time on Plaintiffs' Motion to Assess Class Damages does not subject BNBMPLC or BNBM Group to this Court's jurisdiction. *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972) ("A request for an extension of time … does not constitute waiver of jurisdictional objections."); *see also Nelson v. Commercial Diving Servs.*, No. 00-cv-0781, 2000 WL 1093026, at *2 (E.D. La. Aug. 2, 2000) (holding that a motion for a jury trial, ***unlike a motion for an extension of time***, is an affirmative action in a case which waives any objection to personal jurisdiction) (emphasis added); *Certain Underwriters at Lloyd's London v. Frichelle Ltd.*, CIV. A. 96-0549, 1997 WL 16635, at *5 (E.D. La. Jan. 16, 1997) ("The mere removal of an action to federal court does not waive a party's objection to personal jurisdiction.")

holding each of these entities liable for the conduct of their affiliated entities." [Rec Doc. 18028, at 12-20]. That finding was made on an uncontested record, and was based solely on deemed Rule 36 admissions of Taishan when it did not respond to requests to admit. Those requests were not directed toward or served on BNBMPLC or BNBM Group, and the resultant admissions therefore cannot be used against BNBMPLC or BNBM Group. That is the law in this Circuit.

Clear Fifth Circuit precedent declares that deemed admissions of one party cannot be used against a co-party. *Becerra v. Asher*, 921 F. Supp. 1538, 1544 (S.D. Tex. 1996) *aff'd* 105 F.3d 1042, 1048 (5th Cir. 1997); *see also Riberglass, Inc. v. Techni-Glass Indus., Inc*., 811 F.2d 565, 566-67 (11th Cir. 1987) (deemed admissions of co-defendants could not bind defendant who did respond to requests); *Earl Realty, Inc. v. Leonetti (In re Leonetti)*, 28 B.R. 1003, 1009 (E.D. Pa. 1983) (affirmative admission of one defendant not admissible against co-defendant). In *Becerra*, the plaintiff attempted to use a defendant's unanswered request for admissions as evidence to defeat a co-defendant's motion for summary judgment. *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997). The District Court ruled that the deemed admissions were not competent evidence, because they "are binding only on the non-responding party, not on co-parties." *Id*. On appeal, the Fifth Circuit affirmed and held that "[d]eemed admissions by a party opponent cannot be used against a co-party." That holding applies foursquare here. Taishan's admissions cannot be used against BNBMPLC or BNBM Group and cannot form the evidentiary basis to support the exercise of personal jurisdiction over them. As BNBMPLC and BNBM Group will demonstrate in their respective personal jurisdiction motions and submissions, these deemed admissions do not comport with the facts that will be part of the record in this case.

7

## II.    THERE IS NO BASIS TO PRECLUDE BNBMPLC OR BNBM GROUP FROM CONTESTING CLASS DAMAGES

Even if the Court had jurisdiction over BNBMPLC and/or BNBM Group, they would nonetheless unequivocally be entitled as a matter of Due Process to defend against Plaintiffs' request for $1.3 billion in class damages.[3]

Precluding BNBMPLC or BNBM Group from participating in the damages hearing would be particularly improper since this Court has never found either party to be in contempt, and the Contempt Order itself does not preclude any party from participating in the litigation. Moreover, Plaintiffs' Motion for Assessment of Class Damages relates to six different actions, including several in which neither BNBMPLC nor BNBM Group have even been *defaulted*, much less held in contempt.

### A.    Due Process Requires That BNBMPLC And BNBM Group Be Allowed To Participate In Any Damages Hearing

BNBMPLC and BNBM Group are entitled to participate in a damages hearing— regardless of whether they, or any other party, has been held in contempt.  Over a century ago, the United States Supreme Court made clear that it is unconstitutional for a trial court to use its contempt powers to deprive a litigant of its right to defend against claims to its property.  *Hovey*, 167 U.S. at 414-15.  Subsequently, federal courts have consistently held that it violates due process to deny a defaulted defendant the opportunity to contest damages, even where that defendant also has been held in contempt.

The Fourth Circuit's decision in *In re Fraidin*, 34 F. App'x at 932-33, is on point.  In that

---

[3] Based on its filings from earlier today, we are aware that Taishan is purging its contempt by, *inter alia*, paying the $40,000 penalty, and by making arrangements to pay the $15,000 in attorneys' fees required by the Contempt Order. [Rec. Doc. 18448-18451].  Taishan has thus obviated the sole basis for Plaintiffs' Motion To Preclude, and the motion is moot.  (*See* Pl. Br., p. 6 ("PSC requests that Taishan and BNBM be precluded from participating in any proceedings involving plaintiffs' motion for assessment of class damages… *unless* Taishan purges itself of contempt.") (emphasis added)).

case, following the defendant's default, the bankruptcy court "scheduled, noticed and held an ex parte hearing on damages," after which the Court entered judgment in the amount of $1.6 million, plus attorneys' fees. *Id.* at 933. The Fourth Circuit vacated the judgment and remanded, stating in relevant part:

> ***[I]f the court does hold a hearing [on damages following a default], it must provide the parties with an opportunity to be heard***. *See* [*Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)] (court could not merely accept plaintiff's unsupported statement of damages). Rather "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). An ex parte hearing, such as that conducted by the bankruptcy court, violates a litigant's right to due process if the litigant was thereby denied the… opportunity to participate in determination of the relevant issues… and suffered unfair prejudice.

*Id.* (emphasis added). Because the hearing was *ex parte* and the defendant "was not afforded an opportunity to present contrary evidence, cross-examine the Trustee's witnesses and evidence, or challenge the determination or reasonableness of the attorneys' fees awarded, we find that [the defendant] was denied due process." *Id. See also In re Briggs*, 2008 WL 4817504, at *1 ("Where a defendant has appeared at least informally… the fixing of damages cannot be entirely *ex parte*.").

The rule is the same even if the defaulted defendant has been held in contempt. *See, e.g., Stookey v. Teller Training Distribs., Inc.*, 9 F.3d 631, 634 (7th Cir. 1993) (affirming district court's actions when it found the defendant in contempt, then entered a default judgment, then held a damages hearing); *Angiodynamics, Inc.*, 991 F. Supp. 2d at 298-99 (assessing default judgment based on violation of contempt order and soliciting the plaintiff's memo on damages and the defendant's response, and scheduling a hearing on damages); *Grey v. Tacason (In re*

*Tacason)*, No. ADV 12-1096-BAH, 2014 WL 7411596, at *7 (Bankr. D.N.H. Dec. 31, 2014) (defendant was found to be in contempt, default judgment was entered, and a damages hearing was held "with the opportunity for both sides to present their cases"); *Calkins v. Pacel Corp.*, No. 3:07-CV00025, 2008 WL 2844695, at *3 (W.D. Va. July 22, 2008).

Plaintiffs cite no case where a defaulted defendant—whether a contemnor or otherwise— was precluded from participating in a damages hearing.  We understand that this litigation has been proceeding for several years, and that both Plaintiffs and the Court want to bring the matter to resolution.  But both BNBMPLC and BNBM Group have a due process right to be heard on the question of damages, and the ultimate resolution of this matter will not be advanced by denying them that right.

**B.      BNBMPLC And BNBM Group Are Not In Contempt Of This Court**

1.      BNBMPLC And BNBM Group Were Not And Could Not Have Been Found To Have Been In Contempt

It would be particularly inappropriate to preclude BNBMPLC and BNBM Group from participating in the damages hearing given the facts and circumstances that led to the Court's contempt order against Taishan.  The Contempt Order entered in *Germano* did not hold BNBMPLC or BNBM Group in either civil or criminal contempt; indeed, it did not specifically mention either of them.  Rather, the Court determined that "[a]s a consequence of ***Taishan's*** refusal to appear at this Judgment Debtor  Examination… the Court holds ***Taishan*** in contempt of court." [Rec. Doc. 17869, at 2] (emphasis added).[4]

Nor could this Court have found that BNBMPLC or BNBM Group acted in contempt. Neither BNBMPLC nor BNBM Group were even parties in the *Germano* case, and neither was

---

[4] The Contempt Order defined "Taishan" as Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongzin Co., Ltd. [Rec. Doc. 17869, at 2].  Neither BNBMPLC nor BNBM Group are mentioned by name.

subject to the judgment entered against Taishan in that case.  Neither BNBMPLC nor BNBM Group were ordered to sit for a debtor examination, and neither refused to comply with such an order.

For BNBMPLC and BNBM Group to have been held in civil contempt, this Court would have had to have found, by clear and convincing evidence, that BNBMPLC and BNBM Group (1) "violate[d] a definite and specific" court order; (2) "requiring [them] to perform or refrain from performing a particular act;" and (3) had "knowledge of the court's order."  *Waste Mgmt. of Wash., Inc. v. Kattler*, 776 F.3d 336, 340 (5th Cir. 2015); *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) (same).  Criminal contempt would have required those elements to have been shown beyond a reasonable doubt, and the Court would also have had to have determined that BNBMPLC's and BNBM Group's contemptuous conduct was willful.  *See* 18 U.S.C. § 401(3) (providing the statutory requirements for criminal contempt); *see also Griffith v. Oles (In re Hipp, Inc.)*, 895 F.2d 1503, 1509 (5th Cir.1990).  Absent sufficient evidence in the record to meet the burden of proof for each element of civil or criminal contempt, a contempt order cannot stand.  *See, e.g.*, *Travelhost, Inc.*, 68 F.3d at 961 (overruling civil contempt finding when record lacked evidence that contemnor violated a court order).

There is no such evidence here.  The Contempt Order was entered after this Court ordered Taishan to appear for a judgment debtor examination, and Taishan—not BNBMPLC and BNBM Group—failed to appear.  [Rec. Doc. 17869, at 2].  BNBMPLC and BNBM Group violated no Court orders.  Certainly there was no finding that BNBMPLC and BNBM Group willfully intended to disobey a Court directive.  Therefore, there was no, and could be no, finding that BNBMPLC and BNBM Group acted in contempt of court.

Moreover, the Contempt Order cannot reasonably be interpreted to extend to BNBMPLC

11

or BNBM Group, either as a civil or as a criminal contempt.  Because the Contempt Order

provides that only Taishan can purge the contempt, construing the order as imposing a civil

contempt sanction on BNBMPLC and BNBM Group would be improper. [Rec. Doc. 17869, at

4]; *In re Grand Jury Proceedings*, 744 F.3d 211, 218 (1st Cir. 2014) ("[C]ivil contempt sanctions

are inappropriate when a contemnor 'has no further opportunity to purge himself of contempt.'")

(quoting *Shillitani v. United States*, 384 U.S. 364, 371 (1966)).  In addition, before the Court

may impose civil contempt sanctions, a party must have (1) notice of the contempt charges; (2)

have an opportunity to respond; (3) be represented by counsel; and (4) have a chance to testify

and call witnesses.  *Waste Mgmt. of Wash., Inc.*, 776 F.3d at 339-40.  None of that occurred here.

Likewise, the order cannot be interpreted as a criminal contempt sanction against BNBMPLC or

BNBM Group.  Before holding a party in criminal contempt, that party is entitled to: (1) notice;

(2) appointment of a prosecutor; and (3) trial and jury.  Fed. R. Crim. P. 42(a) (outlining criminal

contempt procedures); *see also Crowe v. Smith*, 151 F.3d 217, 229 (5th Cir. 1998) (reversing

criminal contempt finding because court failed to appoint an independent attorney to prosecute

criminal contempt charge against insurance company).  Neither BNBMPLC nor BNBM Group

were afforded those protections.

In short, nothing on the face of the Contempt Order or in the circumstances of its entry

suggest that the Court held BNBMPLC or BNBM Group in contempt, and the Contempt Order

cannot reasonably be construed to have done so.  Because BNBMPLC and BNBM Group are not

in contempt, there is no basis for preclusion here, even if one were to assume (incorrectly) that a

party in contempt could otherwise be excluded from contesting damages.

2.      Taishan's Conduct Cannot Be Imputed To BNBMPLC Or BNBM Group

Plaintiffs erroneously contend that BNBMPLC and BNBM Group can be held liable for

Taishan's contemptuous conduct.  (Pl. Br., pp. 4, 6).  Courts impute a party's contempt to a

parent or affiliate *only* upon findings that a veil piercing or alter ego theory should apply. *Compare N.L.R.B. v. Deena Artware, Inc.*, 361 U.S. 398, 401-03 (1960) (affirming civil contempt between corporations under a single enterprise theory); *with F.T.C. v. Kuykendall*, 371 F.3d 745, 758 (10th Cir. 2004) (declining to hold affiliates in contempt for violating injunction, where there was no showing made that affiliates controlled corporation or were part of a common enterprise or that corporate structure served only to conceal assets). There was no such finding at the time the Contempt Order was entered, and the order itself is devoid of any factual findings supporting a veil piercing or single enterprise theory.

While Plaintiffs subsequently served Taishan—not BNBMPLC or BNBM Group—with Rule 36 requests for admission in an effort to establish veil piercing or a single enterprise theory, no such discovery demands were ever served on BNBMPLC and BNBM Group. And as discussed above (pp. 6-7, *supra*) Taishan's failure to respond to these requests cannot be used against BNBMPLC or BNBM Group. *Becerra*, 105 F.3d at 1048; *see also Riberglass, Inc.*, 811 F.2d at 566-67 (affirmative admission of one party not admissible against co-defendant); *In re Leonetti*, 28 B.R. at 1009 (same).

## C.   The Contempt Order Does Not Preclude Any Defendant From Participating In The Litigation

Prohibiting BNBMPLC or BNBM Group from participating in the damages proceeding would be inconsistent with the intended purpose of the Contempt Order. The Order enjoins Taishan and its affiliates "from conducting business in the United States ***until or unless it participates in this judicial process***." [Rec. Doc. 17869, at 3] (emphasis added). The Contempt Order, which expressly seeks to ***coerce*** Taishan's participation in these proceedings, cannot simultaneously be read to ***prohibit*** such participation by other Chinese National defendants.

Beyond that, a contempt sanction must be narrowly tailored to remedy the specific action

13

giving rise to it.  *See Natural Gas Pipeline Co. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th

Cir. 1996); *see also Shillitani*, 384 U.S. at 368 (a court is obliged to use "the least possible power

adequate to the end proposed" in selecting contempt sanctions).  The Court found Taishan in

contempt because it did not participate in a debtor examination.  Putting aside that Taishan's

conduct cannot be imputed to BNBMPLC or BNBM Group, Taishan's failure to appear for the

debtor examination is wholly unrelated to, and in no way prejudices, Plaintiffs' ability to proffer

evidence or otherwise conduct the damages hearing set for later this month.  Preventing

BNBMPLC and BNBM Group from participating in these proceedings neither remedies the

action giving rise to the Contempt Order, nor cures any prejudice suffered by Plaintiffs as a

result.  Because the drastic remedy sought against BNBMPLC and BNBM Group here has

neither coercive nor curative effect with respect to the alleged contempt that occurred, it would

be error to impose it.  *See Natural Gas Pipeline Co.*, 86 F.3d at 467 (reversing district court's

compensatory sanction because it exceeded what was likely necessary to coerce compliance).

Plaintiffs' misplaced reliance on *U.S. v. Crawford Enters., Inc.*, 643 F. Supp. 370 (S.D.

Tex. 1986), illustrates why their effort to expand the scope of the Contempt Order is improper.

In that case, the Court threatened to dismiss a lawsuit brought by a plaintiff who had refused to

turn over and destroyed documents responsive to a subpoena.  *Id.* at 377.  The documents at issue

were directly relevant to the subpoenaing defendants' efforts to defend against related pending

criminal charges.  *Id.* at 375-76.  The Court held that it was improper for the plaintiff to thwart

defendants' ability to defend themselves on the one hand, and on the other to seek to take

advantage of the defendants' compromised legal position by initiating a civil lawsuit against

them.  *Id.* at 382.  Thus, in *Crawford Enterprises*, the Court sought to fashion a penalty that was

both directly tied to the misconduct at issue, and would remedy any prejudice to the defendants'

ability to try their case. *Id.* Here, by contrast, Plaintiffs' request for preclusion bears no relation to Taishan's conduct relating to the debtor examination. Plaintiffs' are seeking to impose what amounts to a random, punitive—and therefore improper—remedy, and to use it as a gateway to what they plainly hope will be an unchallenged record to justify a class-wide damages award. That is neither permissible nor appropriate.

### III. THE FLAWS IN PLAINTIFFS' DAMAGES PROFFER ILLUSTRATE AND CONFIRM THE NEED FOR A FULLY CONTESTED HEARING

The fact that this Court has scheduled a damages hearing reflects the complexity involved in calculating damages for such a massive putative class as this one. *Frame v. S-H, Inc.*, 967 F.2d 194, 204 (5th Cir. 1992) ("[W]e require the district court to hold an evidentiary hearing on damages, even in the case of default judgments" unless the damages are liquidated or capable of mathematical calculation). The danger in permitting Plaintiffs to proceed unopposed at that hearing is particularly acute given that their damages proffer improperly seeks to adopt a simplistic damages formula that is without scientific or statistical basis, all but ignores the actual damages suffered by individual class members, and fails to account for the myriad of variables affecting the damages, if any, suffered by each individual class member. In other words, Plaintiffs' request for an assessment of class damages flies in the face of established Supreme Court and Fifth Circuit authority regarding the assessment of class-wide, aggregate damages.

Plaintiffs and their purported expert, Ronald Wright, wrongly assume that damages for thousands of class members nationwide can be extrapolated from the damages awarded to the seven property owners in Virginia whose damages were set at the *Germano* so-called "bellwether" hearings this Court held in 2010. Both the United States Supreme Court and the Fifth Circuit have repeatedly rejected class-wide aggregated damage awards that ignore the actual extent of individual plaintiffs' injuries, and have stated that while a class action permits a

court initially to assess the defendant's potential liability, "plaintiff's resultant damages must be determined as to individuals, not groups." *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 313, 317 (5th Cir. 1998); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) (rejecting use of the average damages of a "sample set" of class members to arrive at the entire class recovery without further individualized proceedings); *In re Fibreboard Corp.*, 893 F.2d 706, 712 (5th Cir. 1990) (rejecting plan to extrapolate damages for entire 3,000-member class from a sample trial on 41 class members' claims where the "level of generality" would not have sufficiently reflected each class member's actual "discrete injury"); *MP Vista, Inc. v. Motiva Enters., LLC*, 286 F.R.D. 299, 309-310, 312 (E.D. La. 2012) (denying class certification where plaintiffs' proposed "sample trials" were insufficient to assess class members' damages); *Kemp v. Metabolife Int'l, Inc.*, No. CIV 00-3513, 2002 WL 113894, at *3 (E.D. La. Jan. 25, 2002) (following *Fibreboard* for the proposition that class treatment of product liability claims is generally improper because damages "must be determined individually"). In asking this Court to approve a lump-sum $1.3 billion award that is based on no such individualized analysis, Plaintiffs invite this Court to violate that settled rule.[5]

Plaintiffs' use of "bellwether verdicts" to arrive at a class-wide damage award mirrors the methodology expressly rejected in *In re Chevron U.S.A., Inc.*, 109 F.3d 1016 (5th Cir. 1997). [*See* Rec. Doc. 18086-1, at 3-4]. *In re Chevron* involved more than 3,000 plaintiffs, who sought damages arising from alleged ground contamination. 109 F.3d at 1017. The District Court's plan contemplated that 30 plaintiffs would be chosen by the parties for a joint trial that would determine general liability and causation as well as individual damage issues. *Id.* The Fifth Circuit rejected that plan, holding:

---

[5] While not the subject of the current Motion To Preclude, Plaintiffs' Motion For Assessment of Class Damages raises serious questions as to whether class-wide damages could ever be appropriate at all, and whether the class should therefore be decertified.

> Before a trial court may utilize results from a bellwether trial for a
> purpose that extends beyond the individual cases tried, it must,
> prior to any extrapolation, find that the cases tried are
> representative of the larger group of cases or claims from which
> they are selected. ***Typically such finding must be based on
> competent, scientific, statistical evidence that identifies the
> variables involved and that provides a sample of sufficient size so
> as to permit a finding that there is a sufficient level of confidence
> that the results obtained reflect the results that would be obtained
> from trials of the whole***.

*Chevron*, 109 F.3d at 1020 (emphasis added). Since *In re Chevron*, the Fifth Circuit has squarely

rejected the use of "bellwether verdicts" to arrive at a class-wide damage award in such

circumstances. *Cimino*, 151 F.3d at 313, 317.

Plaintiffs do not and cannot present the sort of "competent, scientific, statistical evidence

that identifies the variables" necessary to establish that the claims of the homeowners in the

*Germano* so-called "bellwether" hearings are representative of the entire class, as *Chevron*

contemplates. Among other things:

- Wright's proposed scope of remediation assumes, without support, that
  every class member's residence will require the full replacement of, *inter
  alia*, all drywall, wiring copper pipes, HVAC systems, carpeting, cabinets
  and insulation throughout the residence, regardless of the amount of
  purportedly defective drywall installed. For example, any given class
  member may have had allegedly defective drywall installed only on one
  floor of a multi-story residence, or even only in one room, as was the case
  with one of the *Germano* plaintiffs who only had to remediate their wine
  cellar. The assumption of maximum damage for each plaintiff, without
  regard to any individualized facts and circumstances is unsupported and
  improper;

- There is no statistical evidence to support Wright's apparent assumption
  that the properties at issue in *Germano* are reflective or representative of
  the broader class members' properties. Nothing in the record suggests that
  Wright made any effort, or was even qualified, to determine with any
  statistical confidence or within any acceptable margin of error that the
  cost/sf to remediate six Virginia homes and a wine cellar are
  representative of the various types of properties in the 18 different states in
  which the class members class reside, much less reflect local variations in
  the cost of material and labor;

- Wright provides no statistical support for his apparent assumption that there is a correlation between a class members' square footage and any alternate living expenses they may incur. He also offers no explanation or statistical proof demonstrating how a single condominium complex unit in Georgia could be representative of pricing anywhere else, much less in the 18 different states in which class members reside.

Given the nature of Plaintiffs' claims, it would be inconceivable that a substantial number of class members' homes have not already been remediated. Wright's reliance on five-year old estimated costs of remediation is therefore particularly inappropriate given that he appears not to have inquired about actual repair work that has been completed on the affected properties since 2006, and has not gathered cost data for those repairs. *Lacroix v. State Farm Fire & Cas. Ins. Co.*, No. 09–0609, 2010 WL 2265577, at *4 (E.D. La. June 2, 2010) ("[D]amages may be predicated on the basis of estimates only when the loss has not been repaired. If the damaged property has been restored to its former condition by repair, the proper basis for assessing the damage is the repair bill."); *Trujillo v. State Farm Fire & Cas. Co.*, No. 09–768, 2011 WL 162883, at *3 (E.D. La. Jan. 19, 2011). Because the square foot and other calculations employed by Wright have not been shown to be a reliable estimate of any class members' actual damage, and have not been shown to be reflective or predictive of the broader class members' actual damages, his analysis cannot support the imposition of $1.3 billion in class damages.[6] To allow these clearly defective proofs to go unchallenged at a hearing seeking over a billion in damages would compound the already serious Due Process issues raised by the preclusion order that Plaintiffs seek, and is a further basis on which their motion should be denied.

---

[6] Subject to the preservation of their respective personal jurisdiction defenses, BNBMPLC and BNBM Group look forward to providing the Court with the detailed evidence and expert testimony that expands on these points.

## CONCLUSION

For all of these reasons, BNBMPLC and BNBM Group respectfully request that the Court deny Plaintiffs' Motion to Preclude, and provide BNBMPLC and BNBM Group all such further relief that it deems just and proper.

Dated:  March 9, 2015

Respectfully submitted,

**DENTONS US LLP**

By: */s/ Michael H. Barr*
Michael H. Barr
New York Bar No. 1744242
Justin N. Kattan
New York Bar No. 3983905
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
michael.barr@dentons.com
justin.kattan@dentons.com

- AND -

Richard L. Fenton
Illinois Bar No. 3121699
Leah R. Bruno
Illinois Bar No. 6269469
233 South Wacker Drive
Suite 7800
Chicago, IL  60606-6306
Telephone:  (312) 876-8000
Facsimile:  (312) 876-7934
richard.fenton@dentons.com
leah.bruno@dentons.com

- AND -

19

C. Michael Moore
Texas Bar No. 14323600
Gene R. Besen
Texas Bar No. 24045491
2000 McKinney Ave, Suite 1900
Dallas, TX  75201
Telephone:  (214) 259-0900
Facsimile:  (214) 259-0910
mike.moore@dentons.com
gene.besen@dentons.com

**- AND -**

**PHELPS DUNBAR LLP**

Harry Rosenberg
Louisiana Bar No. 11465
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130
harry.rosenberg@phelps.com

*Attorneys for Beijing New Building Material (Group) Co., Ltd. and Beijing New Building Materials Public Limited Company*

20

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the above and foregoing Memorandum of Law of Beijing New Building Materials Public Limited Company and Beijing New Building Material (Group) Co., Ltd. in Opposition to Plaintiffs' Motion To Preclude Taishan or any of Its Affiliates From Participating In Proceedings Involving Plaintiffs' Motion For Assessment of Class Damages Pursuant To Rule 55(B)(2)(B) Unless and Until Taishan Purges Itself of Contempt has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 9th day of March, 2015.

*/s/      Michael H. Barr*