**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**THE PLAINTIFF'S STEERING COMMITTEE'S RESPONSIVE
MEMORANDUM TO OBJECTIONS OF THIRD PARTY
SUBPOENAED WITNESSES PURSUANT TO ORDER OF
MARCH 2, 2015, AND, IN THE ALTERNATIVE,  MOTION TO
COMPEL DISCOVERY OF THIRD PARTY SUBPOENAED WITNESSES**

**I.     INTRODUCTION**

Pursuant to this Court's Order of March 2, 2015 [Rec.Doc. 18409], the Plaintiffs'

Steering Committee ("PSC") hereby responds to the objections of several third parties that have

been subpoenaed to produce witnesses and documents in connection with the PSC's post-

judgment efforts to discover assets of the Taishan Defendants and enforce this Court's July 17,

2014 Contempt Order [Rec.Doc. 17869].[1]   The objectors include Morgan Stanley, J.P. Morgan

Chase & Co., State Street Corp., Amazon.com, and Target Corporation, but this response

addresses the entirety of the PSC's efforts to discover the whereabouts of the assets of the

defaulted and contemptuous Taishan Defendants from third party witnesses, and why these

objections should be overruled.

---

[1]  The "Taishan Defendants" include:  Taishan; TTP; BNBM; BNBM Group; CNBM; and
CNBM Group.

## II.    FACTUAL BACKGROUND

### A.    The Incidents Leading to the Pending Judgment and Contempt Order

The tortured history surrounding the recalcitrant participation of the Taishan Defendants in these Chinese Drywall proceedings is well known and well documented in this MDL.  *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819 (E.D. La. 2012) (Fallon, J.), *aff'd*, 742 F.3d 576 (5th Cir. 2014) and 753 F.3d 521 (5th Cir. 2014).  Taishan and TTP are defaulted parties already subject to an enforceable $2.7 million judgment, and potentially at risk, along with the other defaulted Taishan Defendants, of a far larger class action judgment following the anticipated assessment of damages hearing rescheduled at BNBM's request for March 26, 2015.  *See* Order of Feb. 26, 2015 (Rec.Doc. 18400).  For more than five years, these Defendants have abused and continue to abuse our legal justice system through a series of actions designed to evade responsibility for their defective products.

After the Taishan Defendants ignored properly served complaints and were defaulted; after Taishan was found liable for $2.7 million on behalf of seven Intervenor-Plaintiffs (Rec.Doc. 3013); after Taishan and TTP entered appearances solely to contest jurisdiction over them and vacate the default judgments; after they lost two motions to vacate and four motions to dismiss for lack of personal jurisdiction; and after they exhausted all appeals, and Plaintiffs finally had an opportunity to collect on their judgments against these Defendants, Taishan and TTP, as part of a premeditated and well orchestrated plan that was confected and approved by their controlling parent companies, fired their lawyers  and deliberately *refused* to appear for a judgment debtor examination in open court and *refused* to otherwise participate further in these proceedings.  As this Court aptly pointed out:  "They lost the appeal, and then they decided that they were going to

2

walk away from the court because they didn't get their way.  They're going to take their ball and go home, so to speak."  Transcript of MDL Status Conference, January 22, 2015 at p. 20 (Rec. Doc. 18302-2).

This Court recognized that the implications of Taishan's contemptuous actions extend beyond the individual Plaintiffs seeking to discover Defendants' assets, and even beyond the multidistrict litigation itself:  for such flagrant "[d]isobedience of the Court's order harms both the many other parties in this case and the decorum of the Court."  July 17, 2015 Contempt Order at 2 (Rec.Doc. 17869).  Accordingly, the Court held Taishan in criminal and civil contempt of court and ordered the Defendant to pay $40,000 as a penalty and $15,000 in attorneys' fees to Plaintiffs' Counsel.  *Id.*  The court also enjoined Taishan, its affiliates[2] and subsidiaries from "conducting any business in the United States until or unless it participates in this judicial process."[3]  *Id.*

Taishan remains in contempt of court today, and its ability to further participate in proceedings before this Court is the subject of the PSC's Motion to Preclude Taishan or Any of

---

[2]  The affiliates of Taishan include its controlling parent entities BNBM and CNBM, the State-owned Assets Supervision & Administration Commission ("SASAC"), and additional entities.  *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2014 WL 4809520, *1 (E.D. La. Sept. 26, 2014).  *See also* Motion for an Expedited Hearing to Enforce the Court's July 17, 2014 Contempt Order and Injunction, and Attachment 2 to the Proposed Order (Rec.Doc. 18302), and Supplemental Memorandum of Law in Support of Motion for an Expedited Hearing to Enforce the Court's July 17, 2014 Contempt Order and Injunction, with exhibits (Rec. Doc. 18433).

[3]  To coerce the defendants to appear, a violation of this injunction was designed to trigger "a further penalty of 25% of the profits earned by the company or its affiliates who violate the order, for the year of the violation."  *Id.*

its Affiliates from Participating in Proceedings Involving Plaintiffs' Motion for Assessment of

Class Damages Pursuant to Rule 55(b)(2)(B) Unless and Until Taishan Purges Itself of Contempt

and Request to Reinstate Judgment Debtor Examination (Rec.Doc. 18367), scheduled for hearing

on March 17, 2015.  Recognizing the deep hole it was in, on March 9, 2015, Taishan attempted

to extricate itself from this Court's Contempt order.  Taishan took several steps towards

redemption in that it retained new counsel, Alston & Bird, to enter their appearance on behalf of

Taishan.  Thereafter, Alston & Bird  paid $40,000 to the clerk of court on its behalf.[4]  Its counsel

also claim that they have been wire-transferred funds from Taishan and are ready to make

arrangements to pay Plaintiffs' counsel the $15,000 penalty imposed by the Contempt Order.[5]

Similarly, Taishan has represented that it is also ready, willing and able to pay the entire

judgment in *Germano*.[6]  Unfortunately, in these proceedings, the PSC has learned to distrust and

verify any representation of the Taishan Defendants.  The money promised to pay counsel fees

still has not been paid.  The promise to pay the judgment is still just a promise.  No money has

been transferred.[7]  Notably, Taishan contends that any attempt to invoke the additional contempt

penalty of 25% of profits of Taishan or any of its affiliates for doing business in the United States

---

[4]*See* Notice of Payment of Contempt Penalty (Rec.Doc.  18448-1).

[5]*See* Taishan Gypsum Ltd., Co.'s Memorandum of Law In Support of Motion to Lift Order of Contempt by Showing Compliance at 6 (Rec.Doc. 18449-1).

[6]*Id.* at 5.

[7]Query: What is the source of the promised funds?  Are the payments promised to be made coming from the Chinese government, CNBM, CNBM Group, BNBM, BNBM Group, Taishan, or TTP?  Taishan should be required to produce its banking instructions to the PSC and this Court to allow verification of the owner of the account paying these fines and *Germano* judgments.

is "misguided",[8] while the PSC contends otherwise.  Thus, Taishan's position that because it stands ready to pay, "post-judgment discovery in Germano is unnecessary," is premature.[9]  Only this Court can determine if the partial efforts of Taishan to satisfy this Court's Contempt Order are sufficient.[10]

Therefore, since the entry of this Court's extant Contempt Order, Plaintiffs have engaged in a multi-pronged effort to uncover (i) the existence of any assets of Taishan in the United States, (ii) evidence that Taishan and/or its affiliates and subsidiaries are conducting business in this country in violation of this Court's injunction, and (iii) the nature and details surrounding Taishan's discharge of its counsel, designed to avoid having to satisfy the *Germano* judgment.

The PSC has discovered that at least two CNBM entities – CNBM Forest Products (Canada), Ltd. and its parent, China National Building Materials Import and Export Corporation, have been conducting business in the U.S., arguably in violation of the Court's injunction.  These companies instituted legal action in federal court in Oregon, in an attempt to recover monies they were allegedly owed through a series of business transactions with American companies involving the purchase and handling of logs intended for shipment to China.  (Rec.Doc. 18302-8).

---

[8]*Id.* at 5 n.2.

[9]*Id.* at 5.

[10]For a more complete rendition of the facts surrounding the recent appearances of Taishan, CNBM and BNBM, the PSC adopts by reference its Omnibus Response/Reply of the Plaintiffs' Steering Committee to Motions Regarding Contempt,  Enforcement of Contempt Order,  Class Damages Hearing,  and Motion to Withdraw as Counsel for Taishan Gypsum Co., Ltd. And Taian Taishan Plasterboard Co., Ltd., filed simultaneously.

Although the Oregon litigation was commenced prior to the entry of the Contempt Order, these Taishan entities continued to litigate and resolve their legal claims in the U.S. after the contempt order issued.  In fact, they have admitted that in September, 2014 - two months after the date of the Contempt Order - they entered into a stipulation and confidential settlement of their claims, which provided for cooperation in shipping 5 million board feet of logs and payment of $2.55 million to these Taishan affiliates in exchange for any security interests they had in logging equipment, among other things.  (Rec.Doc. 18302-9).

The Oregon proceedings demonstrate that despite the threat of additional penalties (*i.e.*, 25% of the profits of that entity for the year of the violation), Contempt Order at 3, affiliates of Taishan are not desisting in the conduct of business in this country.  Upon learning of these events, Plaintiffs promptly sought to intervene in the Oregon litigation.  (Rec.Doc. Nos. 18251, 18271). Unfortunately, the motion to intervene was denied by the Magistrate Judge as untimely, although the clerk of court was still in control of assets belonging to CNBM Trading, *i.e.*, $50,000 in the form of a cash bond which later was treated as funds available to compensate CNBM's counsel.  (Rec.Doc. 18302-10).  Plaintiffs filed an Objection to the Magistrate Judge's ruling, but on March 5, 2015, the order was affirmed by the presiding judge.  *See China Nat'l Bldg. Materials Imp. & Exp. Corp. v. Murphy Overseas USA Astoria Forest Products, LLC*, No. 14-cv-00746, Order (D.Ore. March 5, 2015)(Hernandez, J.).  Following that district court's order sustaining the Magistrate Judge's ruling, the stay on the distribution of the $50,000 security bond was ordered to be lifted, which released CNBM's funds held in the registry of the clerk of court. *See China Nat'l Bldg. Materials Imp. & Exp. Corp. v. Murphy Overseas USA Astoria Forest*

*Products, LLC*, No. 14-cv-00746, Order Lifting Stay (D.Ore. March 6, 2015)(Doc.No. 98)(Stewart, M.J.).

At the suggestion of Magistrate Judge Stewart, Plaintiffs also filed a Declaratory Judgment action in the District of Oregon for purposes of enforcing any violation of the contempt order against the Taishan affiliates doing business in that district. *See Amorin v. China National Building Materials Import and Export Corporation*, 3:15-cv-00184 (D.Or.). That action was noticed as a Tag Along and transferred by the Judicial Panel on Multidistrict Litigation to MDL 2047 on February 12, 2005. *See* Conditional Transfer Order (CTO-31) from the MDL Panel docketed in the Eastern District of Louisiana at Rec.Doc. 18402 (Feb. 27, 2015).

**B.     The PSC'S New Round of Discovery Against Entities Related to <u>Taishan to Discover Recoverable Assets in the United States is Proper</u>**

This activity prompted the PSC to propound discovery and issue subpoenas upon specific banks, large retailers, and other third parties that Plaintiffs believe have been doing business with one or more Taishan Affiliates in the United States post-Contempt Order. Beginning on February 10, 2015, the PSC filed notices of third-party depositions and discovery requests related to assets of Judgment-Debtor Defendant Taishan Gypsum Co., Ltd. ("Taishan"), which may be located in the United States, and in anticipation of the class judgment against the Taishan Defendants following the upcoming assessment of damages hearing. The PSC served these requests and subpoenas on a number of financial institutions, including Citigroup, Inc. [Rec. Doc. No. 18303], J.P. Morgan Chase & Co. [Rec. Doc. No. 18304], Morgan Stanley [Rec. Doc. No. 18305], Northern Trust Corp. [Rec. Doc. No. 18306], State Street Corp. [Rec. Doc. No. 18308], T. Rowe Price Group, Inc. [Rec. Doc. No. 18309], The Bank of New York Mellon [Rec.

Doc. No. 18311], General Growth Properties [Rec. Doc. No. 18310], and The AES Corp. [Rec. Doc. No. 18312].

The PSC also served discovery on major retailers, including Amazon.com [Rec.Doc. 18358], Costco Wholesale Corporation [Rec.Doc. 18359], The Home Depot [Rec.Doc. 18360], Lowe's Companies, Inc. [Rec.Doc. 18361], Target Corporation [Rec.Doc. 18362], Wal-Mart Stores, Inc. [Rec.Doc. 18363], in conjunction with Plaintiffs' efforts to collect on the *Germano* judgment and in anticipation of the class judgment against the Taishan Defendants following the upcoming assessment of damages hearing, as well as to address this Court's Contempt Order. Plaintiffs intend to discover whether any additional entities named on SASAC's list of SOEs from its website share responsibility for Plaintiffs' damages.

 Also in furtherance of this effort, the PSC issued subpoenaes upon entities in which direct investments by the Taishan Defendants are believed to have occurred including Plum Creek Timber Co., Inc. [Rec. Doc. No. 18307], CNBM (USA) Corp. [Rec.Doc. 18377] , CTIEC-TECO American Technology, Inc. [Rec.Doc. 18378], United Suntech Craft, Inc. [Rec.Doc. 18379].

Further, now that several of the Taishan Defendants have entered their appearances in the litigation, depositions have been noticed for China National Building Materials Group Corporation [Rec.Doc. 18420], China National Building Materials Company Limited [Rec.Doc. 18421], Beijing New Building Materials Public Limited Co. [Rec.Doc. 18368], Beijing New Building Materials (Group) Co., Ltd. [Rec.Doc. 18458] and Taishan Gypsum Co. Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd. [Rec.Doc. 18369], as well as CNBM Forest Products (Canada) Ltd. [Rec.Doc. 18459] and China National Building Materials Import and Export

Corporation [Rec.Doc. 18460].  The need for discovery upon the Taishan Defendants that have

recently entered their appearances in MDL 2047 is vital to maintain transparency.  Currently, the

PSC's policy with the Taishan defendants is to distrust and verify.   This is especially pertinent

now that Hogan Lovells has produced formerly privileged documents that reveal the existence of

the cabal consisting of Taishan and its controlling parents that made Taishan a stalking horse for

their clandestine effort to contest personal jurisdiction over them, forcing Plaintiffs and our

courts to expend considerable resources in terms of time and money to respond to and adjudicate

their defense, with no intention of ever satisfying a valid judicial mandate.   These formerly

privileged documents reveal the behind-the-scenes details of the Taishan Defendants' scheme to

use and abuse the judicial process in the event Taishan was not absolved of all responsibility

from the havoc they collectively caused to thousands of property owners.[11]

Taishan and its affiliated entities have demonstrated a pattern of targeting American

consumers for purposes of selling millions of dollars of their defective products, but then

refusing to submit to the jurisdiction of our courts to pay for their wrongdoing, choosing, instead,

to hide behind the "Wall of China" defense which  prevents Plaintiffs from enforcing U.S.

---

[11]  Recently produced de-privileged documents reveal that these recalcitrant Defendants (Taishan, BNBM, and CNBM), in concert, made the criminal/fraudulent decision for Taishan to defy this Court's Order to appear for a judgment debtor examination. Taishan's counsel Dong Chungang advised both CNBM and BNBM of the issues surrounding Taishan not appearing for its judgment debtor examination and the contempt of court ruling, and that Taishan required instructions from its affiliates as to whether and how to violate this Court's orders. *See generally* Supplemental Memorandum of Law in Support of Motion of Plaintiff-Intervenors and the PSC for an Expedited Hearing to Enforce the Court's July 17, 2014 Contempt Order and Injunction at 3-5 (Rec.Doc. 18404-2).

judgments in China.[12]  At the same time that they evade attempts to satisfy valid judgments

against them by refusing to appear for a judgment debtor examination, the Taishan entities use

our courts to their advantage to pursue and settle claims for their business disputes, when

litigating here is in their best interests, even though such conduct is violative of the Court's

Contempt Order.

To address this situation, the recent discovery served upon the financial institutions,

retailers, and Taishan affiliates was intended to tear down the wall constructed by the Taishan

Defendants.  Plaintiffs therefore focused their inquiries on assets or investments held by Taishan,

entities related to Taishan[13] or State Owned Entitites,[14] known to exist here in United States.  So,

for example, with regard to Morgan Stanley and the other financial institutions, Plaintiffs

---

[12]  As CNBM recently declared:  "The [CNBM] Group's major assets and principal commercial activities are all located in China and ... since there is no convention or treaty on mutual recognition and enforcement of judgments between China and US, the respective US and Chinese legal counsels of BNBM and Taishan Gypsum believe that the possibility of the US judgments being enforced in China is very low."  *See* CNBM Public Announcement on February 13, 2015, available at: http://www.hkexnews.hk/listedco/listconews/SEHK/2015/0213/LTN20150213741.pdf.  *See also* Donald Clarke, *The Enforcement of United States courts (federal or state) Judgments in China: A Research Note* (May 27, 2004)("In short, there is to date no evidence suggesting that a Chinese Court would enforce the judgment of a United States Court, and considerable evidence suggesting it would not")(available at http://ssrn.com/abstract=943922).

[13]"Entities related to Taishan" was defined to include 40 specified entities, including SASAC, CNBM, BNBM, and any of their parents, related entities, subsidiaries, agents and assigns.  *See, e.g.*, Amended Notice of Oral and Videotaped Deposition Pursuant to Fed.R.Civ.P. 30(b)(6) to Morgan Stanley [Rec.Doc. 18305]

[14]"State Owned Entities" or SOEs were also defined to include without limit 182 specified entities and any of their parents, related entities, subsidiaries, agents and assigns that were known by the PSC to be Chinese SOEs.  *Id.*

subpoenaed documents designed to ferret out assets subject to the Court's jurisdiction, specified as follows:

1. All documents and communications between or among Morgan Stanley and Taishan, any Entities related to Taishan, and/or SOEs during the Relevant Time Period.

2. All documents concerning investments by Taishan, any Entities related to Taishan, and/or SOEs in the United States during the Relevant Time Period, including, but not limited, to the following:

(a) All accounts, stocks, bonds, notes, and other securities of Taishan, any Entities related to Taishan, and/or SOEs located in the United States;

(b) Investments, loans, letters of credit, ownership or security interests of Taishan, any Entities related to Taishan, and/or SOEs in any corporate entities, joint ventures or partnerships located in the United States;

(c) All personal or real property interests of Taishan, any Entities related to Taishan, and/or SOEs located in the United States, and

(d) All assets in the United States of any kind whatsoever which Taishan, any Entities related to Taishan, and/or SOEs own or owned directly or indirectly, in whole or in part, as sole owner or jointly with others, either of record or beneficially, including without limitation as a partner, general or limited, limited liability member, fiduciary, and as equity or debt holder, or demand deposit holder.

3. All documents and communications reflecting any ownership or financial interest by you in Taishan, any Entities related to Taishan, and/or SOEs during the Relevant Time Period.

4. All documents or communications reflecting any loans or investments by you in Taishan, any Entities related to Taishan, and/or SOEs during the Relevant Time Period.

5. All documents or communications reflecting any loans or investments by Taishan, any Entities related to Taishan, and/or SOEs in you during the Relevant Time Period.

11

6. All documents or communications regarding whether any Taishan, any Entities related to Taishan, and/or SOEs have conducted any commercial business or judicial business (litigation, mediation, arbitration, settlement) in the United States, and the profits earned by such entities during the Relevant Time Period.

Rec.Doc. 18305 at 24-25.

In addition, Plaintiffs' sought the deposition of the person(s) most knowledgeable at Morgan Stanley to discuss any of the documents produced on ten specific topics germane to determining the whereabouts of the assets of the Taishan Defendants, or matters material to the Court's Contempt Order.  Specifically, these topics included:

1. Any entities with which Morgan Stanley is affiliated or has a financial interest in that was or is involved in the design, development, manufacture, promotion, export, import, brokerage, distribution, shipment, storage, sale, purchase, and/or installation of Chinese drywall during the Relevant Time Period.

2. The nature of any and all of your transactions involving Chinese drywall or with entities that sell Chinese drywall, and the identities of those entities, during the Relevant Time Period.

3. The nature of every transaction between you and Taishan, any Entities related to Taishan, and/or SOEs, including, but not limited to, all face-to-face, telephonic, e-mail, instant message, text message, and/or any other electronically transmitted communications.

4. Any commercial interactions or commercial relationships you have with Taishan, Entities related to Taishan, and/or SOEs, and all intermediaries, during the Relevant Time Period.

5. All documents produced in response to the subpoena and document request attached hereto as Exhibit "A."

6. Any ownership or financial interest by you in Taishan, any Entities related to Taishan, and/or SOEs during the Relevant Time Period.

7. Any loans or investments by you in Taishan, any Entities related to Taishan, and/or SOEs during the Relevant Time Period.

8. Any loans or investments by Taishan, any Entities related to Taishan, and/or SOEs in you during the Relevant Time Period.

9. The Order entered by the Court on July 17, 2014 [Rec. Doc.17869], including your awareness, understanding, and/or implementation of the provision enjoining Taishan and "any of its affiliates or subsidiaries" from conducting business in the United States.

10. Your knowledge regarding whether Taishan, any Entities related to Taishan, and/or SOEs have conducted any business in the United States and the profits earned by such entities during the Relevant Time Period.

Rec.Doc. 18305 at 26-27.

These depositions topics were tailored to the current circumstances of the litigation, in particular matters germane to post-judgment and post-contempt issues.  Plaintiffs are focused on investments made by entities related to Taishan in these financial companies that are subject to the Court's jurisdiction.  These inquiries stand in stark contrast to the PSC's earlier endeavors seeking discovery of investments these companies made in entities related to Taishan overseas.

For the retailers, Target, Wal-Mart, Costco, Lowe's, & Amazon, Plaintiffs also focused the document requests upon shipment of goods, bills of lading and transactions between and among these retailers and any of the entities related to Taishan where the vessel's owner or its cargo could be seized to secure any judgment.  *See, e.g.*, Notice of Oral and Videotaped Deposition Pursuant to Fed.R.Civ.P. 30(b)(6) to Target Corporation, Requests Nos. 2&3

(Rec.Doc. 18362).[15]  Likewise, the deposition topics for the person(s) most knowledgeable focused on matters relevant to the retailer's relationship with any of the entities related to Taishan, and matters germane to the Court's Contempt Order.

For entities believed to actually be direct investments of the Taishan Defendants in the United States, Plaintiffs inquired into matters involving financial transactions including loans, letters of credit, ownership and security interests.  Where appropriate, plaintiffs got granular and delved into the specifics of known agreements.  For example, with Plum Creek Timber Company, Ltd., Plaintiffs' Request No. 5 sought the following:

> All documents pertaining to your agreement with China National Building Materials Group, Co., Ltd. (a/k/a China National Building Materials Group Corporation), China National Building Materials Import and Export Company (a/k/a China National Building

---

[15]These document requests were tailored to the retailing industry as follows:

"2. All documents of title or bills of lading related to shipments of goods/commodities/ merchandise and all other documents relevant to the carriage of such goods/commodities/ merchandise that involve you and Taishan, any Entities related to Taishan, and/or SOEs (as set forth in the definitions and instructions section of Schedule A) during the Relevant Time Period regardless of which party is listed as the purchaser,
seller, shipper, consignee, and/or notify party and regardless of whether such documents are negotiable or nonnegotiable and/or whether the risk of loss has shifted (i.e., regardless of whether the documents evidence a transaction that is or was F.O.B., F.A.S., C.I.F., or C. & F. and regardless of the status of delivery and payment for such goods/ commodities/ merchandise).

3. All documents sufficient to identify the status of any shipments of goods/commodities/ merchandise involving you and Taishan, any Entities related to Taishan, and/or SOEs (as set forth in the definitions and instructions section of Schedule A) during the Relevant Time Period including but not limited to the nature of the goods/commodities/merchandise, the commercial terms for such shipments, the port of shipment, the port of arrival, the carrier, the vessel, any parties providing a letter of credit, the current status of such shipments including the current location of the goods/commodities/merchandise and the status of payment for the goods/commodities/merchandise.

Materials Import and Export Corporation), and Sumitomo Forestry
Co., Ltd., including but not limited to the following:
(a) All written documents or instruments pertaining to the
agreement itself as well as all documents evidencing business
activities undertaken pursuant to the agreement;
(b) All documents evidencing the location of projects undertaken
pursuant to the agreement (including projects undertaken in the
state of Louisiana);
(c) All documents pertaining to the shipment of materials or
payment of consideration for such materials under the terms of the
parties' agreement;
(d) All documents sufficient to identify all joint ventures between
the parties to the agreement;
 (e) All communications between the parties to the agreement.

*See* Notice of Oral and Videotaped Deposition Pursuant to Fed.R.Civ.P. 30(b)(6) to Plum Creek

Timber Company, Ltd. (Rec.Doc. 18307).  Again, Plaintiffs tailored their depositions topics for

the person(s) most knowledgeable to the subjects relevant to Plum Creek's financial activities

with the entities related to Taishan.  *Id.*

Finally, for the Taishan Defendants themselves (i.e., CNBM, CNBM Group, BNBM,

BNBM Group and Taishan), Plaintiffs sought to fully understand and uncover documents

pertinent to their assets in the United States of any kind whatsoever.  Among many things,

Plaintiffs sought any documents reflecting ownership of material of value including, titles, deeds,

tax returns, stock certificates, bonds, mutual funds or other securities, financial statements,

documents of title, mortgages, notes, deeds and the like, insurance policies, commercial

agreements regarding all property, banking statements, cancelled checks, and other instruments,

documents reflecting ownership interests in any entity in any of the United States of America,

etc.  *See, e.g.,* Notice of Oral and Videotaped Deposition Pursuant to Fed.R.Civ.P. 30(b)(6) to

China National Building Materials Company Limited, Request No. 3 (Rec.Doc. 18421).   Since

these entities are parties to the litigation, no subpoenas were served as none were necessary.  To date, none of the newly appearing defendants have objected to the notices of depositions served upon them.

**C.      The Objections Regarding the Subpoenas Served Upon Third Parties Are Invalid**

Now that the Notices of Deposition and subpoenas described above have been served several objections from the third parties have been received.  In particular,  Morgan Stanley, J.P. Morgan Chase & Co., State Street Corp., and Target Corporation have lodged formal objections pursuant to Fed.R.Civ.P. 45 with the Court.[16]  These objections almost uniformly raise the same, boilerplate substantive issues.  The objectors contend that the requests are 1) overly broad and unduly burdensome to respond; 2) the definitions and instructions are vague and ambiguous; 3) the requests themselves are vague or overly broad; 4) the information sought is confidential/proprietary information and/or privileged; and 5) the information is beyond the scope necessary for collection of a judgment.

JP Morgan further contends that this Court's October 25, 2011 Order & Reasons ("O&R") (Rec.Doc. 10854) controls the matter, and that the PSC has not established "custody or

---

[16]Amazon.com and CTIEC-TECO American Technology, Inc. have served but not filed objections to the PSC's subpoena.  *See* Amazon.com, Inc.'s Objections to Subpoena [Attached hereto as Exhibit "A"] and CTIEC-TECO American Technology, Inc.'s letter of Marshall A. Bennett, Jr. [Attached hereto as Exhibit "B"].  The PSC has also fielded inquires from other third parties that have either asked for extensions of time to respond (*e.g.*, Bank of New York Mellon Corporation and T. Rowe Price), are engaging in meet & confer efforts to determine whether to lodge any specific objection (*e.g.*, AES Corp., Costco, Plum Creek), or are refusing to comply and essentially demanding a motion to compel (*e.g.*, Northern Trust).

control" over documents available to JP Morgan *qua* holding company, nor made efforts to discover factors regarding JP Morgan's control over its subsidiaries.[17]

As discussed below, the landscape of this litigation has significantly changed since this Court issued its October 25, 2011 O&R.  The PSC is engaged in a search for information held by third parties that involves domestic assets that should be readily ascertained by each of the third parties.   Whereas previously, in connection with JP Morgan and other financial companies, the PSC was engaged in a search for whether the domestic banks held positions in the foreign defendants, now we are looking for positions taken by the foreign entities in the domestic banks and other third parties.  This is information even a holding company should know or at least be aware.  The objectors' remaining arguments regarding burden, vagueness, and the like, simply pale in the face of the PSC's need to locate assets in the United States needed to compensate the thousands of victims of the Taishan Defendants' faulty drywall.

## III.   ARGUMENT

### A.    The Plaintiffs Are Entitled to the Matters Sought to Be Discovered by Subpoena

Fed.R.Civ.P. 45 authorizes the issuance of subpoenas to command the production of documents and/or attendance of persons at a deposition.  Rule 45(a)(1)(A)(iii) limits requests for production of documents to those in the witness's possession, custody, and control.  JP Morgan

---

[17]JP Morgan also makes procedural challenges to the service of its subpoena.  JP Morgan contends that the caption on the subpoena served upon it should bear the legend that it issued from the Eastern District of Louisiana, citing Fed.R.Civ.P. 45(a)(2), but the caption on the subpoena served by the PSC states that it issued from the District of Delaware.  Rather than quibble with this point, the PSC agrees to rectify this matter, and, if insisted upon by JP Morgan (or any other third party) to re-serve the subpoena to squelch any concern about the proper caption.

contends that the documents requested by the PSC are not under its control, and therefore, it is not obliged to comply with the subpoena. In support of its objections, JP Morgan mistakenly relies on this Court's O&R.

In this iteration of discovery, the current factual situation is remarkably different than that presented to this Court in connection with the subpoenas that became the subject of this Court's O&R. In that O&R, the Court noted then that plaintiffs' discovery concentrated upon JP Morgan's "involvement with Chinese drywall, particularly its financial interest in certain Chinese drywall companies." O&R at 1. Indeed, as the Court noted, the PSC's discovery was directed to the bank's "significant ownership interests in [CNBM]." *Id*. at 3. From this premise, the Court struggled with the PSC's efforts to obtain documents from the subsidiaries of the banks that were not under their "control," either because they were not-wholly owned subsidiaries,[18] or "not a bank or company that is or becomes a bank holding company."[19] But now, the shoe is on the other foot.

There is no doubt that Chinese SOEs have enormous amounts of capital. This money has flowed out of China and some of it has poured into the coffers of American banks. For example, it is reported that China Investment Corporation, a Chinese sovereign wealth fund, has a 4.7% ownership interest in Morgan Stanley. It would be particularly ironic if the bank were to

---

[18]The Court recognized that parent companies have "sufficient control over its *wholly-owned* subsidiaries to require the parent to produce subpoenaed documents in the physical possession of these subsidiaries." O&R at 10 (emphasis in original).

[19]The Court observed that under the Bank Holding Company Act, 12 U.S.C. §1841(a)(1), a bank holding company is deemed to have control over any bank or company that is or becomes a bank holding company by virtue of the statute. O&R at 11, *citing In re ATM Fee Antitrust Litig*., 233 F.R.D. 542 (N.D.Cal. 2005).

now contend that it should be permitted to avoid production of documents because it does not control information relating to investments in Morgan Stanley itself.  Similarly, if JP Morgan stock is owned by any of the entities related to Taishan, it should not be permitted to hide behind a fictitious Chinese Wall defense that was confected by bootstrapping the O&R to the inapposite situation now presented to the Court.

Further, under this Court's inherent authority to police contempt, your Honor has broad powers to compel compliance with its orders.  The third party witnesses may have in their possession, custody and control information relative to the Taishan affiliates' assets and profits in the United States.  They should not be permitted to escape this Court's demand for respect of its authority, through some argument invoking their byzantine corporate structure.  This remains true despite Taishan's partial efforts to satisfy this Court's contempt order.  Until this Court agrees that the contempt of the defendants is fully resolved and that no discovery along these lines is appropriate, the discovery issued during the period of contempt should be completed.

**B.     The Boiler-Plate Objections Regarding Undue Burden
        and Other Conditions Are Baseless**

Rule 45 governs the issuance of subpoenas, and provides that on timely motion, the issuing court must quash or modify a subpoena if it requires disclosure of privileged or other protected matter, or otherwise subjects the subpoenaed person to undue burden. See Fed.R.Civ.P. 45(d)(3)(A). "In general, the burden of demonstrating the applicability of the privilege rests on the party who invokes it ." *Premier Dealer Servs., Inc. v. Duhon*, 2013 WL 5720354 (E.D.La. Oct.21, 2013); *citing Nat'l West. Life Ins. Co. v. West. Nat. Life Ins. Co.*, 2010 WL 5174366, at *2 (W.D.Tex.Dec.13, 2010).  *See also Hodges, Grant & Kaufmann v. U.S. Government, Dept. of*

*the Treasury*, 768 F.2d 719, 721 (5th Cir.1985).  Under Rule 45, a Court must quash or modify a subpoena that fails to allow a reasonable time to comply, requires the disclosure of privileged or protected matters, or subjects a person to an undue burden.  *See* Fed.R.Civ.P. 45(d)(3)(A)(i)-(iv).

To determine whether a subpoena presents an undue burden, courts consider the following factors:

> (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed. Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party.

*Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir.2004); *Beckett v. Serpas,* 2013 WL 796067, *7 (E.D.La. March 4, 2013).  Even a cursory review of these factors confirms that the discovery sought by the PSC is proper.

First, there is no question that the ability to recover the pending *Germano* judgment or any future judgment obtained by the plaintiffs of assets held by the Taishan Defendants in the United States is critical.  Since commentators have opined that no judgment issued by this Court would be enforced in China, *see Clarke; supra,* it is essential for the Plaintiffs to discover the whereabouts of assets that may be seized if necessary to satisfy any judgment rendered in these proceedings.  The relevance of the information sought is therefore patent.

Second, because the Chinese defendants pride themselves in exaggerating the truth,[20] to obtain valid, accurate information regarding the Defendants' assets in the United States appears to require discovery of third parties. Plaintiffs' need for truthful information regarding the whereabouts of assets that may be used to compensate plaintiffs for any judgment obtained is profound.

Third, Plaintiffs' document requests are no more broad than necessary. Seeking information regarding all assets held by the Taishan Defendants in the United States is a broad request, but a necessary one, nor one that can not be avoided.

Fourth, the time period covered by Plaintiffs' requests vary but most span from 2001 to the present. This time period conforms to the time when major investments of Chinese capital started to seep into the United States, continued during the period when Taishan's defective drywall was first imported into this country, and conclude in the present when the need to understand the location of seizable assets is most vital. Although the period spans 14 years, the length of this time period is justified given the inordinate amount of time that has elapsed due to the defendants' reluctance to participate in this proceedings and specious preliminary procedural challenges that have uniformly been defeated.

Fifth, Plaintiffs have quoted above many of the requested documents and deposition topics sought from the subpoenaed witnesses. This information is clearly articulated with sufficient specificity that sophisticated banking entities and other commercial enterprises like

---

[20] It is well recognized in this litigation, and admitted by the Taishan Defendants that they are prone to exaggeration. *See* Deposition of Tinghuan Fu dated 1/10/2012 ("Fu Dep.") at 86:14-15 (Herman Aff. Ex. "2"); Deposition of Wenlong Peng dated 1/13/2012 ("Peng Dep.") at 479 (Herman Aff. Ex. "201").

those subpoenaed should be capable of understanding.  To the extent any third party fails to comprehend the nature of the information sought, they have an obligation to meet and confer so as to avoid unnecessary motions practice regarding matters that may be able to accommodated by reasonable counsel.  Nevertheless, Plaintiffs recognize their obligation to avoid undue burden on the third parties, Fed.R.Civ.P. 45(d), which obligation the PSC takes seriously and has made every effort to conform to the Rule's requirement.

Sixth, the burden imposed on any third party is justified by the Plaintiffs' need to discover any recoverable assets in the United States.  To the extent that any burden is undue, despite the PSC's best efforts to minimize such burdens, the PSC is ready to reimburse such parties their reasonable costs, subject to this Court's oversight pursuant to Fed.R.Civ.P. 45(d)(3).

Since all of the *Royal Dutch* factors weigh in favor of the PSC, the objections of third parties should be overruled.  Alternatively, they should be compelled to respond to the PSC's discovery.

## IV.   <u>CONCLUSION</u>

There is no justification for denying over 4,000 thousand property owners that have languished for the past six years, some facing foreclosures and bankruptcies, the information they need to procure assets to satisfy any judgment they may obtain against the Taishan Defendants either in the guise of the *Germano* judgment or a future judgment.  The stonewalling efforts of third parties should not be countenanced given the extreme distress many class members are forced to confront as a result of the Defendants' unwillingness to be held accountable for their malfeasance.  The Taishan Defendants have erected a Chinese Wall defense where they test the limits of this Court's jurisdiction, then when they find they cannot succeed, they ignominiously

retreat across the Pacific Ocean to hide behind their country's borders.  Since there is no guarantee that history won't be repeated simply because the Taishan Defendants have reappeared with new lawyers, there is a strong foundation for the argument that the discovery sought herein is pertinent and necessary, both now and for the near future.

Under these circumstances, the objections raised by any of the subpoenaed third party witnesses should be overruled, or, in the alternative, this Court should treat this response as a motion to compel, and grant the relief requested in the form of the discovery sought by the various subpoenas.

Dated:  March 13, 2015

Respectfully submitted,

/s/ Russ M. Herman
Russ M. Herman (LA Bar No. 6819)
Leonard A. Davis (LA Bar No. 14190)
Stephen J. Herman (LA Bar No. 23129)
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Matthew C. Gaughan (On the Brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

23

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Peter Prieto
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Bruce William Steckler
Steckler, LLP
12720 Hillcrest Road, Ste 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Ervin A. Gonzalez
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker Waichman, LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@attorneys4people.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W
Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Anthony D. Irpino
IRPINO LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 13th day of March, 2015.

/s/ Leonard A. Davis
Leonard A. Davis
HERMAN, HERMAN & KATZ, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhkc.com
Plaintiffs' Liaison Counsel
MDL 2047

*Co-counsel for Plaintiffs*