UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) ) | CASE NO. 2:09-MD-02047 |
| | | SECTION L |
| | | JUDGE FALLON |
| (Relates to *Amato v. Liberty Mutual Ins.*, No. 2:10-cv-00932) | | MAG. JUDGE WILKINSON |

**WESTCHESTER FIRE INSURANCE COMPANY'S
SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS
OPPOSITION TO
<u>PLAINTIFFS' MOTION TO AMEND COMPLAINT BY INTERLINEATION</u>**

Westchester Fire Insurance Company ("Westchester"), pursuant to the applicable Federal Rules of Civil Procedure, E.D. La. Local Rule 7, and the February 10, 2015 Order of this Honorable Court (Dkt. No. 18317), hereby files this Supplemental Memorandum in support of its Opposition to Plaintiffs' Motion to Amend Complaint by Interlineation ("motion") and Defendant American Home Assurance Company's ("American Home") joinder in Plaintiffs' motion.

Plaintiff Damien Querol – the only plaintiff referenced in Plaintiffs' motion and American Home's joinder – cannot maintain an action directly against Westchester, as the Louisiana Direct Action Statute does not apply to Plaintiff Querol, and there is no right to direct action under any potentially applicable state law.

For that reason, as well as the reasons discussed in greater detail below and in Westchester's Opposition to Plaintiffs' motion (Dkt. No. 18301-4), which Westchester expressly incorporates by reference, Westchester respectfully requests that this Honorable Court deny Plaintiffs' motion and refuse to allow Plaintiffs to substitute Westchester in place of American Home as a defendant in the action styled as *Amato, et al. v. Liberty Mutual Ins., et al.*, No. 2:10-cv-00932 (E.D. La.) (the "*Amato* action").

## I.   FACTS

### A.   The *Amato* Action and the *Pen II* Action

To avoid burdening this Court with duplicative briefing, Westchester expressly incorporates by reference the factual section in its Opposition to Plaintiffs' motion (Dkt. No. 18301-4) regarding both the *Amato* action and the declaratory judgment action styled as *Am. Home Assur. Co. v. Pen. II Dev., Inc.*, No. 1:09-cv-2369 (S.D. Fla.), which involves American Home, Gryphon Construction, LLC ("Gryphon"), Peninsula II Developers, Inc. ("Peninsula II"), and Westchester (the "*Pen II* action").

### B.   Additional Information Regarding the *Amato* Action

The Amended Omnibus Class Action Complaint (V) related to the *Amato* action (the "*Amato* amended complaint") purports to join the claims of approximately 420 individuals and a putative nationwide "Declaratory Judgment Class" against approximately 94 suppliers, importers, exporters, manufacturers, home builders and developers, as well as approximately 98 insurance companies.[1]

In the *Amato* amended complaint, Plaintiffs delineate between "Direct Action Defendants" (essentially defined as insured defendants and insurance company defendants against whom plaintiffs in the "Direct Action Subclass" have standing to bring a claim under the Louisiana Direct Action Statute)[2] and other insured defendants, including Gryphon,[3] and insurance company defendants, including American Home.[4]  With respect to the non-direct action subclasses, Plaintiffs are silent as to the basis on which they bring claims directly against these insurance

---

[1]   *See* Dkt. No. 3132 for a true and correct copy of the *Amato* amended complaint, and specifically, ¶ 644 of the *Amato* amended complaint.

[2]   *See* the *Amato* amended complaint, ¶ 645.

[3]   *See id.*, ¶¶ 571-72.

[4]   *See id.*, ¶ 434.

companies with respect to these insureds. Rather, Plaintiffs simply contend that they are entitled to a declaratory judgment ruling that coverage exists under the policies at issue.[5]

## II. ARGUMENT & AUTHORITIES

### A. Plaintiff Damien Querol Lacks Standing to Assert a Direct Action against Westchester under Any Potentially Applicable State Law

In the *Amato* amended complaint, Plaintiff Querol asserts claims directly against Gryphon and American Home related to the alleged defective drywall installed in the unit he owns in the Peninsula II Condominium, located in Aventura, Florida.[6] Plaintiffs and American Home now seek to substitute Westchester as a defendant in place of American Home.[7] Essentially, by doing so, Plaintiffs seek to permit Plaintiff Querol to assert a direct action for declaratory judgment against Westchester. Whether a party has standing to pursue a declaratory judgment action depends on the substantive rights available under state law.[8] Here, Plaintiff Querol lacks standing to bring a direct action against Westchester under any potentially applicable state law.

#### 1. Plaintiff Querol does not have the right to bring a direct action against Westchester under the Louisiana Direct Action Statute

As Plaintiffs implicitly acknowledge in the *Amato* amended complaint, the Louisiana Direct Action Statute does not permit Plaintiff Querol to sue American Home directly with respect

---

[5] *See id.* at ¶¶ 659-63. The *Amato* amended complaint also appears to assert Count XIV for "Equitable and Injunctive Relief and Medical Monitoring" against the insurers. *See id.* at ¶¶ 761-73. It is unclear if the PSC's attempt to assert this was a scrivener's error or intentional, but either way, as discussed in greater detail *infra*, such a direct claim cannot be asserted where the Louisiana Direct Action Statute does not apply and additionally where, as here, the governing state law expressly prohibits such a direct action.

[6] *See id.*, Schedule 1, pg. 105.

[7] *See* Dkt. No. 18263 (Plaintiffs' motion and related documents) and Dkt. No. 18291 (American Home's joinder and related documents).

[8] *See generally Columbia Cas. Co. v. Georgia & Florida RailNet, Inc.,* 542 F.3d 106, 110-12 (5th Cir. 2008); *Northfield Ins. Co. v. Loving Home Care, Inc.,* 363 F.3d 523, 536-37 (5th Cir. 2004); *Psarianos v. Standard Marine,* 12 F.3d 461, 464-65 (5th Cir. 1994).

to Gryphon.[9] The Louisiana Supreme Court has made clear that under the statute, a claimant may sue an insured and its insurer in the same lawsuit when either the injury took place in Louisiana or the insurance policy was written or delivered in Louisiana.[10] These conditions are not satisfied with respect to Plaintiff Querol, Gryphon, and American Home, and moreover, Plaintiffs do not allege that the conditions are satisfied.

Since Plaintiffs are seeking to substitute Westchester for American Home with respect to Plaintiff Querol, the owner of an allegedly affected home in Florida, and since the Westchester policy was issued in Florida,[11] it is clear that Plaintiff Querol does not have a right to direct action against Westchester under the Louisiana Direct Action Statute. Plaintiffs concede as much by their allegations in the *Amato* amended complaint.

### 2. Plaintiff Querol does not have the right to bring a direct action against Westchester under Florida law or California law

The Westchester policy is governed by Florida or California law,[12] neither of which permits an allegedly injured party to pursue a direct action against the alleged tortfeasor's insurer absent a

---

[9]   Specifically, in the *Amato* amended complaint, Plaintiffs implicitly acknowledge that the Louisiana Direct Action Statute does not permit Plaintiff Querol to sue American Home directly with respect to Gryphon because Plaintiffs draw a distinction between the claims asserted against all defendants and certain additional claims asserted only against "Direct Action Defendants" by the "Direct Action Subclass" (defined has owners of real property located in Louisiana which contains Chinese drywall and owners of real property where the applicable policy of insurance sued upon was written or delivered in Louisiana). Plaintiffs state that Plaintiff Querol owns property in Florida. *See* the *Amato* amended complaint at ¶ 332. Plaintiffs do not allege that the American Home policy was written or delivered in Louisiana. *See generally id.* In fact, Plaintiffs identify American Home in a subclass that is not part of the Direct Action Subclass. *See id.* at ¶ 646 (Subclass #6).

[10]   *Esteve v. Allstate Ins. Co.*, 351 So.2d 117, 120 (La. 1977) (explaining "the right of direct action against a liability insurer in a Louisiana court is expressly conferred by statute, but only under certain conditions: (1) the accident occurred in Louisiana, or (2) the policy was issued or delivered in Louisiana" and holding "[i]n the present action, neither condition is met; therefore, appellants have no right of action against [the insurer] under [the Louisiana Direct Action Statute].").

[11]   A true and correct copy of the declarations page of the Westchester policy, which indicates that the Westchester policy was written and delivered in Florida, is attached hereto as Exhibit A.

[12]   Westchester contends that the Westchester policy is governed by Florida law, because it was issued in Florida to a Florida insured. However, the judge in the *Pen II* action previously held that California law applied to the American Home and Westchester policies. *See* Order Granting Peninsula II's Motion on Choice of Law, Dkt. No. 115 in the *Pen II* action, No. Civ. A. 09-23691 (S.D. Fla.). Regardless, Florida law and California law are the same

4

judgment against the insured. Plaintiff Querol has not obtained a verdict against Gryphon or Peninsula, nor has he settled with Grypon or Peninsula.[13] Plaintiff Querol therefore does not have the right to bring a direct action against Westchester under either Florida law or California law.

Under Florida statutory law, it is "condition precedent to the accrual or maintenance of a cause of action against a liability insurer by a person not an insured under the terms of the liability insurance contract that such person shall first obtain a settlement or verdict against a person who is an insured under the terms of such policy for a cause of action which is covered by such policy."[14] Florida courts, including the Supreme Court of Florida, have interpreted this statute to preclude injured parties from maintaining actions against insurers where the injured party had not yet obtained a judgment against the insured.[15]

In fact, at least three courts have relied on this statute to preclude direct actions by owners of homes containing allegedly defective Chinese drywall against their contractor or builder's liability insurer.[16] In other words, these courts have refused to allow an allegedly injured third-party to do <u>precisely</u> what Plaintiffs seek to do here.

---

in that they do not permit an allegedly injured party to pursue a direct action against the alleged tortfeasor's insurer absent a judgment against the insured.

[13] Plaintiffs do not allege that Plaintiff Querol has a judgment against either Gryphon or Peninsula II. Indeed, as explained in greater detail in Westchester's Opposition to Plaintiffs' motion (Dkt. No. 18301-4), the state court proceedings regarding the nature and extent of Gryphon and Peninsula II's liability are still pending.

[14] F.S.A. § 627.4136(1).

[15] *See VanBibber v. Hartford Acc. & Indem. Ins. Co.*, 439 So.2d 880, 882 (Fla. 1983) (holding that "by enacting this statute, the legislature sought to modify [Florida common law] to provide that an injured party has no beneficial interest in a liability policy until that person has first obtained a judgment against an insured"); *Dollar Systems, Inc. v. Elvia*, 967 So.2d 447, 449 (Fla. App. 2007) (holding dismissal of declaratory judgment action against tortfeasor's insurer was proper where plaintiff had neither obtained verdict against tortfeasor nor settled with tortfeasor); *Hazen v. Allstate Ins. Co.*, 952 So.2d 531, 534 (Fla. App. 2007) (holding same, and explaining "an injured third party may not file a direct action against a liability insurer for a cause of action covered by a liability insurance policy without first satisfying either one of two conditions precedent: (1) obtaining a settlement against the insured or (2) obtaining a verdict against the insured").

[16] *See So. Owners Ins. Co. v. Mathieu*, 67 So.3d 1156, 1159 (Fla. App. 2011) (stating, where homeowner brought declaratory judgment action against liability insurer of contractor: "We therefore hold that where an injured third-party brings a declaratory judgment action against an insurer prior to obtaining a settlement with or verdict against the insured, the action must be dismissed" and "trial court's failure to do so … was therefore a departure from the essential requirements of the law"); Order Granting Motion to Dismiss Counterclaims, Dkt. No. 40, *Colony Ins.*

California has a similar statute, which provides that a liability policy must contain a provision that "whenever judgment is secured against the insured … in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."[17] Courts applying California law have interpreted this statute to require that an injured person must first secure a final judgment against the insured tortfeasor before suing the tortfeasor's insurer.[18] The Ninth Circuit Court of Appeals clarified that this statute provides the "exclusive set of circumstances under which a third-party claimant may directly sue another policy holder's liability insurer."[19]

Here, since Plaintiff Querol does not have a judgment against Gryphon or Peninsula, Plaintiff Querol, does not have the right to bring a direct action against Westchester under either Florida law or California law.

### 3. Since Plaintiff Querol cannot maintain a direct action against Westchester, Plaintiffs should not be permitted to substitute Westchester as a defendant in place of American Home

As this Honorable Court has held on more than one occasion, where an injured third-party does not have any substantive right to bring a direct action against an insurer, the injured third-

---

*Co. v. Total Contracting & Roofing, Inc., et al.*, No. Civ. A. 10-23091 (S.D. Fla. Dec. 8, 2010), a copy of which is attached hereto as Exhibit B; Order, Dkt. No. 50, *Mid-Continent Cas. Co. v. Eastern Constr. Group, Inc., et al.*, No. Civ. A. 10-21041 (S.D. Fla. Oct. 13, 2010), a copy of which is attached hereto as Exhibit C.

[17] CAL. INS. CODE § 11580(b)(2).

[18] *See Mezzetti v. State Farm Mut. Auto. Ins. Co.*, 346 F.Supp.2d 1058, 1063 (N.D. Cal. 2004) (explaining that "an injured party is not permitted to bring suit against an insurer without first obtaining a judgment against the insured") (emphasis in original); *Royal Indem. Co. v. United Enterprise, Inc.*, 75 Cal. Rptr. 3d 481, 489 (Cal. App. 2008) (explaining that "as a third party who is not in privity of contract with the liability insurer (nor named as an express beneficiary of the policy), [the allegedly injured third-party] would normally lack standing to sue the insurer to resolve coverage questions about a tortfeasor"); *Laguna Publishing Co. v. Employers Reinsurance Corp.*, 617 F.Supp. 271, 272 (C.D. Cal. 1985) (holding that third-party claimant could not bring action against insurer after judgment entered against insured was set aside pursuant to insurers' motion to intervene since, under California law, third-party claimant lacks standing to bring direct action against insurer until after there is a final judgment in underlying action).

[19] *Fireman's Fund Ins. Co. v. City of Lodi, CA*, 302 F.3d 928, 955-56 (9th Cir. 2002) (applying California law).

party lacks standing, and the action cannot proceed.[20]  Plaintiff Querol cannot maintain a direct action against Westchester under any potentially applicable state law.  Accordingly, Plaintiffs should not be permitted to substitute Westchester as a defendant in place of American Home, thereby allowing Plaintiff Querol to assert a direct action against Westchester.

B. **Plaintiffs Should Not Be Permitted to Circumvent the JPML's Order Denying Transfer of Unrelated Insurance Actions, Like the *Pen II* Action, to the Chinese Drywall MDL by Adding Westchester as a Defendant to the *Amato* Action**

The JPML has previously refused to transfer cases involving insurance coverage issues into this MDL because "insurance coverage questions in these cases are likely to be decided by ... the applicable state law," and the JPML has determined that these coverage questions are not sufficiently related to the substantive underlying claims to justify their consolidation in these MDL proceedings.[21]  In fact, the Plaintiffs' Steering Committee previously requested, in an *ex parte* letter to the Clerk of the JPML, that the JMPL transfer the *Pen II* action into the Chinese Drywall MDL, and Westchester opposed this request.[22]  The JMPL did not transfer the *Pen II* action into the Chinese Drywall MDL.

Plaintiffs here should not be permitted to circumvent the express ruling of the JPML denying transfer of unrelated insurance actions, like the *Pen II* litigation, to the Chinese Drywall MDL by adding Westchester as a defendant to the *Amato* action.

---

[20]     *Essex Inc., Co. v. Bayou Concession Salvage, Inc.*, 942 F.Supp. 258 (E.D. La. 1996) (Fallon, J.) (dismissing case for lack of subject matter jurisdiction because there was no case or controversy where Texas statute prohibited an injured third-party's direct action against an insurer); *Sercovich v. State Farm Mut. Auto Ins. Co.*, No. Civ. A. 99-2476, 1999 WL 993639 at *1 (E.D. La.) (Fallon, J.) (dismissing direct action by third-party against insurer where accident and injuries occurred in Mississippi and policy was written in Georgia and delivered in Mississippi, because Louisiana Direct Action Statute did not apply).

[21]     *See* Order Denying Transfer, Dkt. No. 257, related to MDL No. 2047 (JMPL June 15, 2010), a copy of which is attached hereto as Exhibit D.

[22]     *See* Notice of Supplemental Information by ACE Insurance Company and Westchester Fire Insurance Company, Dkt. No. 230, related to MDL No. 2047 (JMPL May 6, 2010), a copy of which is attached hereto as Exhibit E.  This notice incorrectly refers to "ACE" as a third-party defendant in the *Pen II* action (referred to as the "*American Home* suit" in the notice) instead of Westchester.

7

C.  **The First-Filed Doctrine Precludes Plaintiffs from Litigating Defective Drywall Claims Arising out of the Peninsula II Condominium against Westchester**

As explained in greater detail in Westchester's Opposition to Plaintiffs' motion (Dkt. No. 18301-4), which Westchester expressly incorporates by reference, the claims of *Amato* Plaintiff Querol arise entirely from damages caused by alleged defective drywall in the Peninsula II Condominium.[23]

The *Pen II* action deals with Westchester's coverage obligations, if any, to Gryphon and Peninsula II stemming from damages caused by alleged defective drywall in the Peninsula II Condominium. That is precisely the controversy Plaintiffs seek to litigate here by substituting Westchester for American Home. Accordingly, pursuant to the first-filed doctrine – which has been widely upheld by the Fifth Circuit Court of Appeals and numerous courts within this circuit, including this district court – the controversy should be handled by Judge Seitz in the United States District Court for the Southern District of Florida, as the *Pen II* action was filed months before the *Amato* action.

D.  **The *Pen II* Order on Which Plaintiffs Rely in Sole Support of their Motion is Not a Final Judgment and is Subject to Appeal**

As explained in greater detail in Westchester's Opposition to Plaintiffs' motion (Dkt. No. 18301-4), which Westchester expressly incorporates by reference, Judge Seitz's August 22, 2014 ruling in *Pen II* – on which Plaintiffs rely in their motion as sole support for their argument that American Home has exhausted its coverage and therefore should be dismissed from the *Amato*

---

[23]   Indeed, both Plaintiffs and American Home acknowledge that Plaintiff Querol's claims arise entirely from damages caused by alleged defective drywall in the Peninsula II Condominium. *See* Dkt. No. 18263 (Plaintiffs' motion and related documents) and Dkt. No. 18291 (American Home's joinder and related documents).

action – is subject to appeal once a final judgment is entered. Final judgment has not been entered in the *Pen II* case.

It is entirely possible that the appellate court will render a coverage determination which will result in the policies issued by American Home not being exhausted by virtue the settlement among American Home, Gryphon and Peninsula. If this occurs, and this Court has permitted American Home to be dismissed from the *Amato* action and Westchester to be substituted in its place, the parties here will be forced to bring American Home back into the *Amato* action. This Honorable Court should therefore refrain from dismissing American Home and substituting Westchester until a final judgment has been entered in the *Pen II* action and any potential appeal has been resolved.

E. **Substitution of Westchester by Interlineation is Improper Given Plaintiff Querol's Prior Assignment of Right to Bring a Claim or Action for Property Damage Related to Allegedly Defective Drywall**

On January 11, 2012, Plaintiff Querol assigned to Peninsula II his right to bring a claim or action for property damage related to allegedly defective drywall.[24] Specifically, Plaintiff Querol agreed as follows:

> Unit Owner [Damien Querol] hereby assigns to Developer [Peninsula II] all of its present and future rights, title, interest, claims, demands, and all other 'Assigned Rights,' as defined herein, whether legal, equitable, or otherwise, against any individual or entity arising from or connected with, directly or indirectly, the Potential Claims for property damage. As used herein, the term 'Assigned Rights' shall mean all debts, demands, actions, suits, sums of money, damages, liabilities, losses, causes of action or claims against any individual or entity, and rights to recovery, whether in equity, at law, or otherwise, direct or indirect, known or unknown, forseen or unforeseen, existing or which may later accrue in Unit Owner's favor, and arising out of or in any manner related directly or indirectly to the Potential Claims [related to defective drywall] for property damage. Accordingly, Developer shall have

---

[24]  *See* the Work Authorization Agreement executed by Damien Querol on January 11, 2012, a copy of which is attached hereto as Exhibit F.

9

> the **exclusive right** to bring any action or claim in connection with any property damage related to the Defective Drywall and Affected Property.[25]

In the *Amato* amended complaint, Plaintiff Querol, along with the other plaintiffs, seeks a declaratory judgment that the insurer defendants are obligated to indemnify the insured defendants in connection with the underlying property damage and personal injury claims for defective drywall.[26] By virtue of the assignment of his right to bring a claim or action for property damage related to allegedly defective drywall, Plaintiff Querol cannot assert this declaratory judgment action against American Home. Plaintiff Querol similarly cannot assert this declaratory judgment action against Westchester, were Westchester to be substituted in place of American Home.

Substitution of Westchester for American Home by interlineation is therefore improper.

### III.  CONCLUSION

WHEREFORE, for the reasons discussed above, Westchester respectfully requests that this Honorable Court deny Plaintiffs' motion, and refuse to allow Plaintiffs to substitute Westchester in place of American Home as a defendant in the *Amato* action.

Dated: March 17, 2015          Respectfully Submitted,

BY:      */s/ John W. Hite, III*

John W. Hite (T.A. 17611)
Salley, Hite, Mercer & Resor LLC
365 Canal Street
One Canal Place, Suite 1710
New Orleans, LA 70130
Phone: (504) 566-8802
Fax: (504) 566-8828
jhite@shmnola.com

---

[25]   *Id.* at Section VI.3 (emphasis added).

[26]   *See Amato* amended complaint at ¶¶ 659-63.

Joseph A. Ziemianski
Cozen O'Connor
1221 McKinney Street, Suite 2900
Houston, Texas 77010
Telephone: (832) 214-3900
Telecopier: (832) 214-3905
jziemianski@cozen.com

*Counsel for Westchester Fire Insurance Company*

**CERTIFICATE OF SERVICE**

       I hereby certify that the above and foregoing Westchester's Supplemental Memorandum in Suppot of its Opposition to Plaintiffs' Motion to Amend Complaint by Interlineation has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 17th day of March 2015.

                                               */s/ John W. Hite*

                                               John W. Hite (T.A. 17611)
                                               Salley, Hite, Mercer & Resor LLC
                                               365 Canal Street
                                               One Canal Place, Suite 1710
                                               New Orleans, LA 70130
                                               Phone: (504) 566-8802
                                               Fax: (504) 566-8828
                                               jhite@shmnola.com