## WORK AUTHORIZATION AGREEMENT

This Work Authorization Agreement ("Agreement") for Unit 1207 (the "Unit") in Peninsula II Condominium (the "Project") executed by, Damian F. Querol on behalf of himself and his agents, representatives, assigns, predecessors and successors (the "Unit Owner") and Peninsula II Developers, Inc., a Florida corporation, together with its agents, employees, representatives, subsidiaries, affiliates, divisions, assigns, predecessors and successors (the "Developer") is comprised of the following parts as more fully described below:

- I – Scope Of Work;
- II – Temporary Housing;
- III – Moving Expenses;
- IV – Unit Owner Improvements
- V – Additional Warranty;
- VI – Limited Release And Assignment of Claims;
- VII – Agreement To Execute All Necessary Documents For The Repair Work; and
- VIII – Authorization And Acceptance.

In consideration of the terms and conditions set forth below, the parties agree to the following terms.

I.   **Scope Of Work**

Before any Work in the Unit is performed, Developer will perform a Unit orientation and walk-through to determine the extent of the repairs and hire and pay for an independent third-party to document through video or photography the interior condition of the Unit. Unit Owner will provide Developer access to the Unit. The repair work at your Unit will include the following, at no cost and expense to Unit Owner:

- Move your (or, if applicable, your lessee's) personal property, furniture, lighting fixtures, built-in units (e.g. wall units, bookshelves, etc.)(collectively, the "Property") from your Unit to a secure storage facility (if needed) using a reputable insured moving company and moving your Property back to the Unit upon completion of the repairs; *[handwritten: including packing/unpacking AHG]*
- Removing and replacing all defective drywall in your Unit;
- Repairing or replacing other affected building materials in your Unit, including affected HVAC systems, plumbing components, as well affected electrical components, including affected wiring, switches, and receptacles;
- Finishing and priming all new drywall;
- Repairing or replacing, as necessary, all materials affected by the repair process in your Unit, which may include but is not limited to flooring, tile, cabinets and countertops, appliances, mirrors, lighting and plumbing fixtures, and wood trim and molding;
- Completion of any Unit Owner Improvements, subject to the terms hereof;
- HEPA vacuuming your Unit to remove all construction dust; and
- Cleaning and restoring your Unit to pre-repair condition, subject to the terms hereof.

A supplemental description of the above-mentioned repair work, including detailed specifications of the Unit Owner Improvements and other special instructions (the "Unit Repair Specifications Sheet") will be prepared based on a meeting and inspections of the Unit by Unit Owner, Developer and Contractor. Once the contents of the Unit Repair Specifications Sheet have been agreed upon by Unit Owner, Developer and Contractor, each of said parties will sign the Unit Repair Specifications Sheet to acknowledge their agreement with the content therein and the Unit Repair Specifications Sheet shall be deemed to be

1

Initials: _JR_ / _DFQ_
Developer/Unit Owner

**PEN000030972**

incorporated in to this Agreement by reference. All repair work will be done in accordance with all applicable building codes. Developer shall not be responsible for making any repairs to any items in the Unit which are not in compliance with all applicable building codes. In such event, Developer will notify Unit Owner which items cannot be repaired or replaced in accordance with applicable building codes. The repair work described above together with work described in the Unit Repair Specifications Sheet is collectively referred to herein as the "Repair Work".

Developer shall begin the repairs following the date the Unit Owner (or, if applicable, the lessee) moves out of the Unit ("move out date"). The move out date shall be the date that all of Unit Owner's (or, if applicable, the lessee's) Property is removed from the Unit such that the Repair Work as contemplated in this Agreement can commence. The Developer estimates that the Repair Work shall be completed within six (6) months from the date that the Repair Work commences and Developer will use commercially reasonable efforts to complete the Repair Work within said time frame.. However, Developer shall not be liable for failure to complete the Repair Work if such failure is due to any act or circumstance beyond the reasonable control of, and not due to the fault of Developer.

Developer will notify Unit Owner upon completion of the Repair Work and upon final inspection and approval of the Repair Work by the authority having jurisdiction ("Substantial Completion") that the Unit may be re-occupied. Upon Substantial Completion, Developer will schedule a walk-through with Unit Owner to inspect the Unit and to verify that the Repair Work has been completed in accordance with the Unit Repair Specifications Sheet. At that time, Unit Owner will sign an inspection statement listing any defects in workmanship or materials which Unit Owner and Developer discover. If any item listed is actually defective in workmanship or materials in Developer's reasonable opinion (keeping in mind the construction standards applicable in Miami-Dade County, Florida for similar property), Developer will cause any defective items to be corrected within ninety (90) calendar days after the date of the walk-through inspection.

## II.  Temporary Housing.

(a) Developer will relocate Unit Owner (or, if applicable, the lessee), at no cost or expense to Unit Owner, to Unit ____ (the "Temporary Unit") in the Project while the Repair Work is being completed. ~~The Temporary Unit will be fully furnished.~~ Unit Owner (or, if applicable, the lessee) acknowledges that they have had an opportunity to walk-through the Temporary Unit and accept the Temporary Unit in As-Is condition. As a condition to the effectiveness of this Agreement, Unit Owner (or, if applicable, the lessee) shall execute and deliver to Developer the Temporary Unit License in the form attached hereto (the "Temporary Unit License"). *AHG*

(b) Seven (7) days prior to the anticipated date of completion of the Repair Work on the Unit, Developer shall provide Unit Owner written notice of the date upon which the Repair Work to the Unit will be complete and the date that Developer will move your Property back to the Unit.

(c) By initialing this line, Unit Owner acknowledges that any mortgages encumbering the Unit are not in default or arrears.

**Initial Here:** *DFH* . Unit Owner will immediately notify Developer if at any time during the course of the Repair Work any mortgage encumbering the Unit is in default or falls into arrears and provide Developer with contact information for any such mortgagees.

(d) If the Unit is leased to a third party other than Unit Owner, Developer shall arrange for the relocation of the lessee. Developer assumes no liability or obligation to Unit Owner's lessees under any lease agreement between Unit Owner and such lessee.

       (e)    During the Repair Work on the Unit, Unit Owner will remain responsible for and agree to pay all other expenses associated with the Unit including, without limitation, any mortgages, insurance, property taxes, Association fees, utilities, etc. Furthermore, Developer assumes no liability or obligations for the payment of these other expenses associated with the Unit.

       (f)    Telephone, internet and cable television shall be provided in the Temporary Unit.

       (g)    Developer has established an account for electrical service with Florida Power & Light for the Temporary Unit. Unit Owner shall be responsible for payment of all charges incurred for electricity usage in the Temporary Unit during Unit Owner's occupation thereof. Developer will provide Unit Owner with a copy of the invoice(s) covering the period of Unit Owner's occupation of the Temporary Unit and Unit Owner shall reimburse Developer for any amounts paid by Developer within 10 days after receipt of such invoices. Unit Owner shall keep their electrical account with Florida Power & Light for the Unit active during the Repair Work. Developer shall be responsible to pay for any electricity used in the Unit during the period from the move out date until the date that Developer causes Unit Owner's Property to be moved back to the Unit after the Repair Work has been completed. Unit Owner will provide Developer with a copy of the invoice(s) covering the period from the move out date until the date until the date that Developer causes Unit Owner's Property to be moved back to the Unit after the Repair Work has been completed and Developer shall reimburse Unit Owner for any amounts paid by Unit Owner's within 10 days after receipt of such invoices.

### III.   Moving Expenses.

       (a)    Developer will be responsible for the cost of moving [including packing/unpacking AHG] and/or storage of Unit Owner's (or, if applicable, the lessee's) Property from the Unit to the Temporary Unit or a storage facility and back to the Unit and will engage Bekins of South Florida, a nationally recognized and insured moving and storage company, or another similar moving company (the "Mover") to move such items. Unit Owner (or, if applicable, the lessee's) will designate which items of the Property will be moved to the Temporary Unit and which items will be moved to a storage facility.

       (b)    Developer will not be liable for any loss of or damage to Unit Owner's (or, if applicable, the lessee's) Property arising in connection with packing, moving and/or storage and any loss or damage shall be resolved solely with the Mover. Unit Owner also acknowledges and agrees that Mover has no liability for the following:

       (i)    currency, money, notes, securities, precious stones, silverware, jewelry, watches, or any article of extraordinary value;

       (ii)    the mechanical or electrical malfunction of any articles such as, but not limited to computers, pianos, televisions, DVD players;

       (iii)    any loss or damage caused by ordinary wear and tear, leakage, mold, mildew, termites, rodents, vermin, moths and other insects, rust, tarnish, oxidation, fumigation, heat, change in temperature, or other atmospheric conditions;

       (iv)    any loss or damage caused by natural deterioration, inherent vice or defect of the Property, or by acts of war, terrorism, insurrection, nuclear explosion or contamination, strikes, labor disturbances, or riots.

Initials: *JR* / *DFH*
Developer/Unit Owner

PEN000030974

Unit Owner also acknowledges that Mover's liability with regard to sets or matched pieces shall be limited to repair or replacement, whichever is less, of the lost or damaged pieces only, and shall not extend to repair, replacement, or recovering the entire set. Nothing contained in this Agreement shall limit, modify or otherwise affect Unit Owner's (or, if applicable, the lessee's) rights to pursue claims under Mover's insurance policy. Mover is not relieved of any liability for any of the forgoing caused by Mover's acts and/or omissions.

Developer strongly encourages Unit Owner (or, if applicable, the lessee's) to make arrangements to have the items described moved separately or moved to the Temporary Unit.

## IV.  Unit Owner Improvements

As to any improvements and finishes that were constructed or installed in the Unit by the Unit Owner or which were not originally constructed or installed in the Unit by the Developer, including, without limitation, paint, wall paper, crown molding, baseboards, tiles and other interior finishes (collectively, the "Unit Owner Improvements"), Unit Owner bears responsibility for providing documentation that said improvements were constructed with all necessary condominium association approvals and in accord with all applicable building codes and for obtaining any necessary approvals from the condominium association for the Project (the "COA"), as required by the COA, for any such Unit Owner Improvements. To the extent Unit Owner Improvements require COA approval and had not been previously approved, Unit Owner is responsible for obtaining such approvals prior to the commencement of any Repair Work.

Developer will use commercially reasonable efforts to return the Unit to a similar finished condition as existed prior to the commencement of the Repair Work; provided, however, Unit Owner acknowledges that the ability to obtain the same finishes that were previously incorporated into the Unit is in certain instances impossible. Developer reserves the right to substitute any materials with equivalent quality and workmanship as necessary.

## V.  Additional Warranty

Developer represents that all affected drywall in the Unit will be removed and replaced. The Repair Work to be performed under this Agreement, other than the HVAC system and equipment and fixtures which are consumer products is GUARANTEED to the original Unit Owner as herein named against all defects in the materials and workmanship of the Repair Work performed as per the Scope of Work set forth in this Agreement for ONE YEAR from the date that the certificate of completion is issued by the City of Aventura, Florida.

Developer will provide Owner with a twelve (12) month warranty with respect to appliances.

All HVAC which is being replaced shall have the manufacturer's warranty. Warranties herein with respect to equipment, and fixtures, which are consumer products, are limited warranties. The manufacturers' limited warranties or guarantees are in force according to their terms. Consequential damages are excluded.

In the event that Unit Owner makes any claim under this Additional Warranty, other than a claim relating to the HVAC system or with respect to consumer products which claims must be made directly to the manufacturer as the sole remedy, Unit Owner must provide written notice to Developer by certified mail at the address below within forty-five (45) days of when Unit Owner knows or should reasonably have known of any defect in the materials or workmanship. Failure to give such notice will constitute a waiver and release of any warranty claim hereunder.

4

Initials: __JJR__ / __DFd__
Developer/Unit Owner

**PEN000030975**

Upon receipt by Developer of such written notice, Developer will, at its option, repair or replace at no charge to the Unit Owner, materials or workmanship of the Repair Work installed as per the Scope of Work set forth in this Agreement which shall be found either structurally or functionally defective, with the exception of any item damaged by neglect or by the Unit Owner's failure to perform normal maintenance procedures. The authorization for Developer and its agents and contractors provided in Article VIII herein, shall also apply to any warranty work performed by Developer, its agents and contractors pursuant to the guarantee provided above.

## VI.   Limited Release and Assignment of Claims

1.   Unit Owner made a demand against Developer for property damage associated with the drywall that was in a defective condition (the "Defective Drywall") and which damaged other affected property in the Unit (the "Affected Property"). Developer agrees to cause a licensed contractor ("Contractor") to perform the Repair Work at the Unit in full settlement of any and all claims, demands, losses, or damages for property damage resulting and/or associated directly or indirectly from the Defective Drywall and Affected Property at the Unit, including any claims related to the relocation of Unit Owner during the Repair Work (the "Potential Claims").

2.   Subject to Developer's obligations hereunder, in exchange for Developer engaging Contractor to perform the Repair Work at the Unit, upon the completion of the Repair Work and delivery to Unit Owner of (i) a copy of the certificate of completion, and (ii) a report by engineering firm(s) selected by Developer reflecting that the affected drywall has been removed from the Unit and the affected building components (i.e. copper piping, HVAC, electrical wiring, etc.) have been inspected and, if necessary, the appropriate repairs and/or replacements have been made and there is no evidence of the presence of affected drywall from the testing performed by the engineering firm(s), then Unit Owner shall release and forever discharge Developer and Contractor of and from all debts, demands, actions, causes of action, including, but not limited to, claims for breach of contract, negligence, strict liability, nuisance and violations of Florida's Deceptive and Unfair Trade Practices Act, suits, damages, losses, fees, sums of money, controversies, agreements, promises, implied or express warranties, claims, and all liabilities whatsoever, past, present or future, vested or contingent, both at law and in equity, whether direct or indirect, foreseen or unforeseen, known or unknown, which Unit Owner had, now has, or in the future may have for any and all damages associated directly or indirectly in any manner whatsoever with the Potential Claims excluding only claims for personal injury. Upon satisfaction of the conditions for the effectiveness of the release described above, the release shall automatically become effective and no further acknowledgment or written documentation shall be necessary.

3.   Unit Owner hereby assigns to Developer all of its present and future rights, title, interest, claims, demands, and all other "Assigned Rights," as defined herein, whether legal, equitable, or otherwise, against any individual or entity arising from or connected with, directly or indirectly, the Potential Claims for property damage. As used herein, the term "Assigned Rights" shall mean all debts, demands, actions, suits, sums of money, damages, liabilities, losses, causes of action or claims against any individual or entity, and rights to recovery, whether in equity, at law, or otherwise, direct or indirect, known or unknown, foreseen or unforeseen, existing or which may later accrue in Unit Owner's favor, and arising out of or in any manner related directly or indirectly to the Potential Claims for property damage. Accordingly, Developer shall have the exclusive right to bring any action or claim in connection with any property damage related to the Defective Drywall and Affected Property. Unit Owner shall cooperate and use its best efforts to facilitate and assist Developer in its recovery efforts, the reasonable costs of which shall be borne by Developer.

4.   Each party agrees that the facts on which this Agreement is based may hereafter prove to be different from the facts now known by it or believed by it to be true, and that facts not now known may be

5                     *Initials:* ___ / ___
                                    Developer/Unit Owner

**PEN000030976**

later discovered, and each party agrees that all of the terms of this Agreement shall be in all respects effective and that no mistake as to such facts (whether mutual or unilateral), and no later discovery of facts not now known, will justify rescission of this Agreement or the Releases provided for herein. Furthermore, this Agreement and all papers relating to it are not, and shall not be construed as, an admission by any of the parties as to the validity of the Potential Claims, or an admission by any of the parties of any liability or wrongdoing by any of them.

5.  Unit Owner warrants that: (a) Unit Owner has not settled, assigned, compromised or released from liability any individual or entity, in whole or in part, with respect to any of the Potential Claims for property damage, and further warrants that it will not do so in the future without the prior written consent of Developer, except with respect to any claims against Mover by Unit Owner which Unit Owner may settle, assign, compromise or release in Unit Owner's sole discretion; (b) all documents, records, examinations, investigations, and information relating directly or indirectly to the Potential Claims which are discovered in the future will be furnished to Developer promptly upon their discovery; and (c) Unit Owner has not knowingly, and will not knowingly, do anything to prejudice Developer's rights as its subrogee and assignee.

6.  Unit Owner will not enter the Unit during the Work. Unit Owner expressly assumes the risk of injury and loss that may result from any visit to or entry into the Unit by Unit Owner, his or her family members, guests and invitees during the Repair Work, and Developer will have no responsibility or liability for any injury or loss resulting from or occurring during any such entry.

7.  This Agreement does not merge, affect, or supplant any consistent terms, conditions, rights, or obligations set forth in the original Purchase and Sale Agreement executed in connection with the sale of your Unit.

8.  Unit Owner shall have no right to share in any proceeds, associated costs, and attorneys' fees recovered by Developer in connection with the Potential Claims.

9.  The assignment of the Assigned Rights as described above in this Agreement is in addition to, is intended to be supplementary to, and shall not be limited by the rights and remedies available to Developer, including, but not limited to, equitable or legal subrogation and equitable assignment.

10. The parties agree that this Agreement contains the entire agreement between the parties hereto with respect to the subject hereof and may not be modified except in a writing signed by both parties. The parties agree they shall not be bound by any terms, conditions, statements, warranties, or representations, oral or written with respect to the subject matter hereof, not contained herein.

11. In the event that either party to this Agreement brings suit to enforce this Agreement or for damages for breach of this Agreement, or any covenant, condition, or requirement contained in this Agreement, the prevailing party shall be entitled to recover from the other, in addition to its damages and/or other remedy (remedies), all costs and reasonable attorneys' fees as fixed by the Court, both at trial and at the appellate level.

12. The provisions of this Agreement are separable. In the event that any paragraph of this Agreement shall be ordered or decreed to be unenforceable, it is the intent of Unit Owner and Developer that the remaining paragraphs shall nevertheless be given full force and effect.

13. Unit Owner acknowledges that Unit Owner has read and fully understood the provisions of this Agreement and has executed this Agreement freely and voluntarily. Therefore, the language of this Agreement shall not be construed presumptively against Unit Owner or Developer.

Initials: _JJR_ / _DF_
Developer/Unit Owner

**PEN000030977**

14. This Agreement shall be binding upon and inure to the benefit of Unit Owner and Developer and their respective predecessors, successors, assigns, subsidiary corporations, heirs, personal representatives, agents, or other representatives.

15. This Agreement shall be governed and construed in accordance with the laws of the State of Florida, without regard to its conflict of laws principles. Nothing in this Agreement is intended or shall be construed to give any other persons or entities any right, remedy or claim under or by reason of this Agreement.

16. Unit Owner has the right to consult with legal counsel, and prior to executing this agreement has received or had the opportunity to receive legal advice regarding the terms of this Agreement and the effect execution of this Agreement will have on Unit Owner's legal rights. Developer notifies Unit Owner that certain builders have been sued for drywall related claims and some of those lawsuits were consolidated with other similar actions for coordinated pre-trial proceedings *(In Re: Chinese Manufactured Drywall Product Liability Litigation*, United States District Court for the Eastern District of Louisiana, MDL No. 2047). Information regarding the litigation is available at http://www.laed.uscourts.gov/. Unit Owner's authorization and acceptance of the terms herein will affect Unit Owner's legal rights and ability to participate in the litigation. By initialing below, Unit Owner acknowledges that he/she/they have read and understand the information in this paragraph.

**Unit Owner Initial Here:** _____.

17. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument, and any party hereto may execute the Agreement by signing a counterpart and delivering a telecopy or electronic copy of such signed counterpart to the other party, upon receipt of which this Agreement shall become binding.

### VII. Agreement to Execute All Necessary Documents for the Repair Work

Unit Owner agrees to execute all necessary documents for the repair work to be performed. This may include, but not be limited, to a Notice of Commencement, Authority for the Contractor to secure a building permit for the Unit, and any other documents required in connection with the Repair Work ("Necessary Documents"). Developer shall, upon receiving a certificate of completion for the Repair Work, promptly deliver to Unit Owner a copy of the permit, certificate of completion, contractor's final affidavit and release and the termination of the notice of commencement.

### VIII. Authorization and Acceptance

By signing below, Unit Owner authorizes Developer and its agents and contractors to enter into and have access to the Unit in order to perform the Repair Work, accepts the benefits of the "Additional Warranty," and agrees to the terms of the "Limited Release and Assignment", all subject to the provisions of this Agreement.

[Signatures appear on next page]

7

Initials: _____ / _____
Developer/Unit Owner

**PEN000030978**

**IN WITNESS WHEREOF,** we have set our hands and seals.

| UNIT OWNER | PENINSULA II DEVELOPERS, INC. |
|---|---|
| *[signature]* | By: *[signature]* |
| Print Name: Damian F. Querol | Print Name: Jeffrey Ramos |
| Date: 1/11/12 | Title: Executive Vice President |
| | Date: 2/22/12 |

**UNIT OWNER**

By: DAMIAN F. QUEROL

Print Name:

Date: 1/11/12

**TENANT**

By: *[signature]*

Print Name: ALVIN GLADSTONE

Date: 2/19/12

8

Initials: JJR / DFQ
Developer/Unit Owner

**PEN000030979**