IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

DANIEL BLONSKY and
SHONA BLONSKY,

        Plaintiffs,

vs.

GC3 DEVELOPMENT, LLC, a Florida limited
liability company, and BANNER SUPPLY CO.,
a Florida corporation,

        Defendants.

_____/

Case No. 14-018564 CA 25

## AMENDED COMPLAINT

Plaintiffs DANIEL BLONSKY and SHONA BLONSKY hereby sue Defendants GC3

DEVELOPMENT, LLC and BANNER SUPPLY CO. and allege as follows:

### The Parties, Jurisdiction and Venue

1.      This is an action for damages in excess of $15,000, excluding interest, costs

and attorney's fees.

2.      Plaintiffs are a married couple. They are residents of Miami-Dade County,

Florida and are *sui juris*.

3.      Defendant GC3 DEVELOPMENT, LLC ("GC") is a Florida limited liability

company with its principal place of business in Miami-Dade County, Florida. GC is the

successor to G.C. Homes, Inc. Upon information and belief, GC3 Development, LLC is a

mere continuation of G.C. Homes, Inc., and GC3 Development, LLC was established to

escape liability for the debts and obligations of G.C. Homes, Inc. All references to GC

herein are to both entities. GC is a residential construction company.

**EXHIBIT
A**

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900 F. 305·858·5261

4.      Defendant BANNER SUPPLY CO. ("Banner") is a Florida corporation with its principal place of business in Miami-Dade County, Florida. Banner is in the business of supplying construction equipment and materials, including residential drywall.

5.      Venue is appropriate in Miami-Dade County because Defendants' wrongful conduct occurred in this county.

## GENERAL ALLEGATIONS

6.      Plaintiffs are the owners of a residence located at 8220 S.W. 60th Court, South Miami, Florida ("the Residence"). Plaintiffs purchased the Residence in 2009 as a substantially completed new construction directly from GC, which was the builder of the Residence.

7.      Pursuant to a contract and agreement with GC, and at the direction of GC, Campos Metal Framing, Inc. ("Campos") purchased and installed the drywall in the Residence in 2007 and/or 2008. According to the sworn testimony of the principal of Campos, the supplier of the drywall was Banner.

8.      In early 2014, the Residence suffered an air conditioning malfunction and Plaintiffs were advised by their repairman that he suspected that the failure may have been caused by the presence of corrosive and defective Chinese Drywall.

9.      On further investigation and testing, Plaintiffs have determined that portions of the Residence (including the bedroom/nursery where two of their children spent their first several months) were built by GC with corrosive and defective Chinese Drywall supplied by Banner.

10.     In February 2014, Plaintiffs put GC and Campos on notice of the corrosive and defective Chinese Drywall. That month, counsel for Plaintiffs sent to both GC and

2

Campos a Notice of Claim Pursuant to Chapter 558, Florida Statutes, providing formal notice of the construction defect.

11.     Neither GC nor Campos requested to inspect the Residence or responded in any manner to the Notices of Claim. GC and Campos also failed to identify the supplier of the corrosive and defective Chinese Drywall that Campos purchased and installed in the Residence.

12.     Subsequently, in September 2014, Plaintiffs were informed by Campos that the supplier of the corrosive and defective Chinese Drywall that Campos purchased and installed in the Residence was Banner. That month, counsel for Plaintiffs sent to Banner a Notice of Claim Pursuant to Chapter 558, Florida Statutes, providing formal notice of the construction defect. Banner did not request to inspect the Residence or respond in any manner to the Notice of Claim.

13.     The material composition of the Chinese Drywall in the Residence renders it inferior to American-made drywall and unfit for ordinary use in residential construction.

14.     Defendants knew, or should have known, that the corrosive and defective Chinese Drywall that Campos purchased from Banner and installed for GC was going to be used in the construction of the Residence. GC also knew, or should have known, that residential homeowners such as Plaintiffs required and expected the drywall to be fit for the ordinary purpose for which it was intended.

15.     Unlike American-made drywall, the Chinese Drywall supplied by Campos and used by GC in the construction of the Residence is inherently defective and emits various sulfide gases and/or other volatile organic chemical compounds through "off-gassing" that causes damage and corrosion to the home structure and mechanical systems, such as air-conditioner and refrigerator coils, copper tubing, faucets, metal surfaces, electrical wiring,

3

and computer wiring, as well as personal and other property such as microwaves, televisions, computers, furniture, silverware, electronic equipment, jewelry, and other household items, as well as potentially creates noxious odors.   The chemical compounds emitted by the drywall at issue further potentially cause allergic reactions, coughing, sinus and throat infection, eye irritation, headaches, respiratory problems and other health concerns.   The Chinese Drywall installed in the Residence was inherently defective and unfit for the ordinary purpose for which it was intended.

16.    Corroded items, such as those described above, are also unfit for the ordinary purpose for which they were intended.   Plaintiffs are uncertain as to the cause of the corrosion and have not engaged in any act or activity which has led or caused the corrosion in any way.

17.    Plaintiffs have been required to retain the services of the law firm of Coffey Burlington, PL for the prosecution of this action, and are responsible for Coffey Burlington's fees and costs.

18.    All conditions precedent to Plaintiffs instituting and maintaining this action have occurred or have been excused or waived.

**COUNT I**
**NEGLIGENCE**
**(Against all Defendants)**

19.    Plaintiffs readopt and re-allege the allegations contained in paragraphs 1 through 18 as though fully set forth herein.

20.    Defendants owed a duty to Plaintiffs and any potential purchasers of the Residence to exercise reasonable care in the selecting, supplying, purchasing, inspecting and/or installing of drywall in the Residence, so that the drywall would perform as intended and would not cause damage as described herein.

4

COFFEY | BURLINGTON

21.     Defendants also owed a duty to Plaintiffs and any potential purchasers of the Residence to insure that the Residence was constructed with materials that would not harm the inhabitants or the other property within the Residence.  Defendants also had a duty to adequately warn Plaintiffs and any potential purchasers of the Residence about any unsafe materials used in the construction of the home known by Defendants.

22.     Defendants breached their duty to exercise reasonable care in the selecting, supplying, purchasing, inspecting and/or installing of the Chinese Drywall in the Residence by:

> (a) Causing and/or allowing Chinese Drywall to be installed within the Residence;
>
> (b) Failing to investigate whether the Chinese Drywall would harm inhabitants of the Residence or damage other property or work within the Residence;
>
> (c) Failing to warn Plaintiffs that the Residence contained Chinese Drywall that could damage their property;
>
> (d) Failing to take reasonable measures that Defendants knew, or reasonably should have known, were necessary to protect Plaintiffs from hazards associated with the Chinese Drywall;
>
> (e) Failing to exercise reasonable care in their quality control practices;
>
> (f) Failing to comply with all applicable building codes;
>
> (g) Failing to take such other precautions as may be revealed through discovery.

23.     If Defendants had exercised reasonable care, they would have investigated the Chinese Drywall and its adverse effects prior to selecting, supplying, purchasing and/or

5

installing the Chinese Drywall used in the Residence.  Furthermore, Defendants could have warned Plaintiffs that the Chinese Drywall may cause the problems described herein.

24.     Defendants had actual or implied notice, or knew or should reasonably have known, of the defect because a visual inspection of the Chinese Drywall prior to installation would have revealed that it did not have some or all of the requisite markings required by the Building Code or that it had an offensive odor rendering it unfit for sale.

25.     Given that the drywall used in the Residence did not have some or all of the requisite markings required by the code, Defendants had actual or implied notice, or knew or should reasonably have known, that the drywall would cause harm and damages to Plaintiffs.

26.     Defendants' failure to exercise reasonable care constitutes a breach of duty. The defects in the drywall were latent and could not have been reasonably discovered by Plaintiffs.

27.     Defendant GC was negligent, careless, reckless and grossly negligent in failing to establish proper and/or adequate protocols and/or procedures to ensure that sub-contractors used only proper and/or safe materials and/or items for installation in the Residence.

28.     As a direct and proximate result of Defendants' negligence, Plaintiffs suffered and continue to suffer damages, injuries, harm and economic loss.

29.     As a result of the foregoing acts and omissions, the Residence required extensive reconstruction and repairs; and Plaintiffs incurred repair and replacement costs, replacement of appliances and other personal property, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention and services, and will suffer diminution in value of the Residence.

6

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Defendants, awarding damages, interest, costs, and such other relief as this Court may deem just and proper.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF HABITABILITY
### (Against Defendant GC)

30.     Plaintiffs readopt and re-allege the allegations contained in paragraphs 1 through 18 as though fully set forth herein.

31.     This is an action against GC for breach of the implied warranty of habitability under the common law.

32.     GC was the builder of the Residence, which it sold to Plaintiffs.

33.     Pursuant to common law, GC warranted to Plaintiffs that the Residence was habitable.

34.     GC breached the implied warranty of habitability by selling the Residence that had installed corrosive and defective Chinese Drywall, which rendered the Residence not habitable.

35.     The corrosive and defective Chinese Drywall that was installed in the Residence that was built by GC and which it sold to Plaintiffs is defective because it caused damage as described more fully herein.

36.     As a result of GC's breaches of the implied warranty of habitability, Plaintiffs have suffered and continue to suffer damages.

37.     As a result of the foregoing acts and omissions, the Residence required extensive reconstruction and repairs; and Plaintiffs incurred repair and replacement costs, replacement of appliances and other personal property, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be

7

required to pay for additional repairs and/or replacement costs, and/or medical care, attention and services, and will suffer diminution in value of the Residence.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against GC, awarding damages, interest, costs, and such other relief as this Court may deem just and proper.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
## (Against Defendant GC)

38.     Plaintiffs readopt and re-allege the allegations contained in paragraphs 1 through 18 as though fully set forth herein.

39.     This is an action against GC for breach of the implied warranty of fitness for a particular purpose under the common law.

40.     GC was the builder of the Residence, which it sold to Plaintiffs.

41.     Pursuant to common law, GC warranted to Plaintiffs that the Residence was fit for the particular purpose of being used as a home.

42.     GC breached the implied warranty of fitness for a particular purpose by selling the Residence that had installed corrosive and defective Chinese Drywall, which rendered the Residence not fit for the particular purpose of being used as a home.

43.     The corrosive and defective Chinese Drywall that was installed in the Residence that was built by GC and which it sold to Plaintiffs is defective because it caused damage as described more fully herein.

44.     As a result of GC's breaches of the implied warranty of fitness for a particular purpose, Plaintiffs have suffered and continue to suffer damages.

8

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

45.     As a result of the foregoing acts and omissions, the Residence required extensive reconstruction and repairs; and Plaintiffs incurred repair and replacement costs, replacement of appliances and other personal property, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention and services, and will suffer diminution in value of the Residence.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against GC, awarding damages, interest, costs, and such other relief as this Court may deem just and proper.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Against Defendant Banner)

46.     Plaintiffs readopt and re-allege the allegations contained in paragraphs 1 through 18 as though fully set forth herein.

47.     This is an action against Banner for breach of the implied warranty of merchantability under the common law and/or Florida Statutes § 672.314.

48.     Banner is a merchant, supplier and distributor of gypsum drywall.

49.     Banner purchased the corrosive and defective Chinese Drywall that it sold to Campos and which was installed in the Residence.

50.     Pursuant to Florida Statutes § 672.314 and/or common law, Banner warranted that the gypsum drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used.

51.     Banner breached the implied warranty of merchantability by selling certain gypsum drywall that was defective and not reasonably fit for the ordinary purpose for which gypsum drywall is used.

9

52.     The drywall distributed, supplied, and sold by Banner and installed in the Residence is defective because it caused damage as described more fully herein.

53.     As a result of Banner's breach of the implied warranty of merchantability, Plaintiffs have suffered and continue to suffer damages.

54.     As a result of the foregoing acts and omissions, the Residence required extensive reconstruction and repairs; and Plaintiffs incurred repair and replacement costs, replacement of appliances and other personal property, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention and services, and will suffer diminution in value of the Residence.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Banner, awarding damages, interest, costs, and such other relief as this Court may deem just and proper.

## COUNT V
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
## (Against Defendant Banner)

55.     Plaintiffs readopt and re-allege the allegations contained in paragraphs 1 through 18 as though fully set forth herein.

56.     This is an action against Banner for breach of the implied warranty of fitness for a particular purpose under the common law and/or Florida Statutes § 672.314.

57.     Banner is a merchant, supplier and distributor of gypsum drywall.

58.     Banner purchased the corrosive and defective Chinese Drywall that it sold to Campos and which was installed in the Residence.

10

59.    At the time Banner sold the corrosive and defective Chinese Drywall to Campos, Banner had reason to know that the gypsum drywall was being purchased for the particular purpose of being installed in the Residence and that Campos was relying on Banner's skill and judgment to select and furnish gypsum drywall that was suitable for this particular purpose.

60.    Plaintiffs, indirectly, relied on Banner's judgment in distributing, supplying and selling gypsum drywall that was suitable for the particular purpose of being installed in the Residence.

61.    Pursuant to Florida Statutes § 672.315 and/or common law, Banner warranted that the gypsum drywall was fit for the particular purpose of being installed in the Residence.

62.    Banner breached the implied warranty of fitness for a particular purpose by selling certain gypsum drywall that was defective and not fit for the particular purpose of being installed in the Residence.

63.    The drywall supplied and sold by Banner that was installed in the Residence is defective because it caused damage as described more fully herein.

64.    As a result of Banner's breach of the implied warranty of fitness for a particular purpose, Plaintiffs have suffered and continue to suffer damages.

65.    As a result of the foregoing acts and omissions, the Residence required extensive reconstruction and repairs; and Plaintiffs incurred repair and replacement costs, replacement of appliances and other personal property, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention and services, and will suffer diminution in value of the Residence.

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Banner, awarding damages, interest, costs, and such other relief as this Court may deem just and proper.

## COUNT VI
## BREACH OF EXPRESS WARRANTY
### (Against Defendant Banner)

66.     Plaintiffs readopt and re-allege the allegations contained in paragraphs 1 through 18 as though fully set forth herein.

67.     Banner expressly warranted that the corrosive and defective Chinese Drywall that it sold to Campos and which was installed in the Residence was safe and well accepted by homebuilders.

68.     The drywall that Banner sold to Campos and which was installed in the Residence did not conform to these express representations because the drywall supplied by Banner is defective and unsafe, violates the requirements of the applicable building code, and is associated with numerous side effects.

69.     As a direct and proximate result of the breach of said warranties, Plaintiffs suffered, and/or will continue to suffer, and/or are at an increased risk to suffer, extensive damage, economic loss, personal injuries and/or other harm.

70.     Plaintiffs, indirectly, did rely on the express warranties of Banner herein.

71.     Banner breached the aforesaid express warranties, as the drywall that it sold to Campos and which was installed in the Residence was defective.

72.     Upon information and belief, Banner expressly represented to Campos that the drywall that Banner sold to Campos and which was installed in the Residence is safe, efficacious, and fit for use for the purposes intended, that the drywall is of merchantable

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

quality, that drywall does not produce any dangerous side effects, and that the drywall was adequately tested and fit for its intended use.

73.     Banner knew or should have known that the aforesaid representations and warranties are false, misleading and untrue in that the drywall that Banner sold to Campos and which was installed in the Residence was not fit for the use intended and, in fact, produced severe and extensive damage to Plaintiffs' home.

74.     As a result of the foregoing acts and omissions, the Residence required extensive reconstruction and repairs; and Plaintiffs incurred repair and replacement costs, replacement of appliances and other personal property, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention and services, and will suffer diminution in value of the Residence.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Banner, awarding damages, interest, costs, and such other relief as this Court may deem just and proper.

## COUNT VII
## STRICT PRODUCTS LIABILITY
### (Against Defendant Banner)

75.     Plaintiffs readopt and re-allege the allegations contained in paragraphs 1 through 18 as though fully set forth herein.

76.     This is an action for products liability against Banner.

77.     The corrosive and defective Chinese Drywall installed in the Residence was supplied by Banner.

13

78.     The corrosive and defective Chinese Drywall distributed, supplied, and/or sold by Banner is unreasonably defective because it causes damage and injury to Plaintiffs as described more fully herein.

79.     Banner expected the corrosive and defective Chinese Drywall to reach the usual consumers, handlers and persons coming into contact with said product without substantial change affecting its condition, and the corrosive and defective Chinese Drywall did, in fact, reach the usual customers, handlers and persons coming into contact with said product without substantial change affecting that condition.

80.     The corrosive and defective Chinese Drywall distributed, supplied and/or sold by Banner directly and proximately caused damage and injury to Plaintiffs, as set forth herein.

81.     As a result of the foregoing, the Residence required extensive reconstruction and repairs; and Plaintiffs incurred repair and replacement costs, replacement of appliances and other personal property, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention and services, and will suffer diminution in value of the Residence.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Banner, awarding damages, interest, costs, and such other relief as this Court may deem just and proper.

### COUNT VIII
### VIOLATION OF THE FLORIDA BUILDING CODES ACT
### (Against Defendant GC)

82.     Plaintiffs readopt and re-allege the allegations contained in paragraphs 1 through 18 as though fully set forth herein.

14

83.     This is a statutory cause of action against GC, pursuant to Florida Statutes §
553.84, based upon GC's violations of applicable building code requirements.

84.     The 2004 Florida Building Code, Building, with 2005 Amendments, and the
2004 Florida Building Code, Residential, with 2005 Amendments (hereinafter collectively
referred to as "Building Code"), apply to Miami-Dade County and governed the construction
of the Residence.

85.     The purpose of the Building Code is to "establish the minimum requirements
to safeguard the public health, safety and general welfare ... and safety to life and property
from fire and other hazards attributed to the built environment...."  Section 101.3, Intent,
2004 Florida Building Code, Building with 2005 Amendments.

86.     Section R702.3.1 of the Building Code requires that all gypsum board
material (also referred to as drywall) shall conform to various ASTM standards, including
ASTM C 1396.

87.     The ASTM standard C 1396, in turn, requires that the sampling, packaging
and marking of gypsum board material, among other things, comply with ASTM
Specification C 1264. *See* Section 14.1, ASTM C 1396.

88.     Specification C 1264 requires:

Unless otherwise specified in the purchase agreement, each gypsum panel product or
package shall have legibly marked thereon the following: the thickness, the name of
the producer or supplier, the brand name, if any, and the ASTM specification for the
product.

89.     Plaintiffs are informed and believe that GC did not "otherwise specif[y] in the
purchase agreement, such that the drywall utilized in the Residence was required to have
legibly marked on each gypsum panel product the information required by ASTM C 1264.
Plaintiffs are further informed and believe that all of the required information was not

15

marked on each gypsum product or package and, in addition, contained the markings, "Made in China," which is in violation of C 1264.  If any of the Code-required markings are not present on the drywall board, that drywall does not meet the Building Code requirement for gypsum board.

90.  Accordingly, the Chinese Drywall utilized by Defendants in the Residence was not approved for use by the Building Code.  Because of the improper markings on the Chinese Drywall, GC should have sought approval and input from the requisite building official.  The Building Code provides a procedure in that regard.

91.  Section 104.11 of the Building Code requires that a builder, such as GC, who intends to use material not otherwise approved for use by the Building Code, must have that alternative material *approved for use* by the building official:

> **104.11 Alternative materials, design and methods of construction and equipment.** The provisions of this code are not intended to prevent the installation of any material ... not specifically prescribed by this code, *provided that any such alternative has been approved*.  An alternative material, design or method of construction shall be approved where the building official finds that the proposed design is satisfactory and complies with the intent of the provisions of this code, and that the material, method or work offered is, for the purpose intended, at least the equivalent of that prescribed in this code in quality, strength, effectiveness, fire resistance, durability and safety....  The building official shall require that sufficient evidence or proof be submitted to substantiate any claim made regarding the alternative.

Section 104.11, *2004 Florida Building Code, Building, with 2005 Amendments* (emphasis added).  Section 104.11 governs residential buildings, including the Residence, because "[t]he provisions of Chapter 1, Florida Building Code, Building ... govern the administration and enforcement of the Florida Building Code, Residential." *See* R101.2.1, *2004 Florida Building Code, Residential.*

92.  Plaintiffs are informed and believe that GC did not seek approval to utilize the Chinese Drywall and show compliance with R702.3.1 as required by Section 104.11.  As set

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

forth above, if a builder intends to use a gypsum board that is not properly marked pursuant to the code, they are obligated to approach the building code official and seek approval through the alternative materials provision of the code.

93.    Florida Statutes § 553.84 provides:

Notwithstanding any other remedies available, any person or party, in an individual capacity or on behalf of a class of persons or parties, damaged as a result of a violation of this part or the Florida Building Code, has a cause of action in any court of competent jurisdiction against the person or party who committed the violation; however, if the person or party obtains the required building permits and any local government or public agency with authority to enforce the Florida Building Code approves the plans, if the construction project passes all required inspections under the code, and if there is no personal injury or damage to property other than the property that is the subject of the permits, plans, and inspections, this section does not apply unless the person or party knew or should have known that the violation existed.

94.    As the builder, it is GC's obligation to ensure that the materials it uses in the building of the Residence conforms to the standards set forth in the Building Code.

95.    GC violated the applicable building codes in construction of the Residence in numerous respects and knew or should have known of the obvious violations as set forth and described herein.

96.    Plaintiffs contend and allege that Chinese Drywall was not permitted by the Building Code insofar as it is materially hazardous to the public safety, health, general welfare, and to the safety to life and property.

97.    GC violated the requirements of the applicable building codes because it never alerted the building code official that it intended to use Chinese Drywall instead of ASTM compliant gypsum board, nor did it seek to obtain or obtain approval from the building code official for the use of the alternative material.

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

98.    GC also violated the requirements of the applicable building codes because some of the Chinese Drywall it used in the construction of the Residence is not identified by the manufacturer's name, the thickness, the brand name and the ASTM specification.

99.    Pursuant to Florida Statutes § 553.84, Plaintiffs hereby assert a cause of action against GC for these violations of the building code.

100.    GC knew or should have known that the Chinese Drywall did not conform to the Building Code requirements for gypsum board because a visual inspection of the Chinese Drywall would have revealed that it did not have some or all of the requisite markings required by the Building Code.  GC is in the best position to notice that the sheets of Chinese Drywall it used did not contain the markings required by the Building Code.

101.    As the builder and contractor, it is GC's obligation to ensure that the materials it uses in the building of the Residence conform to the standards set forth in the Building Code.

102.    The material composition of the Chinese Drywall in the Residence renders it inferior to American-made drywall and unfit for ordinary use in residential construction.

103.    Unlike American-made drywall, the Chinese Drywall in the Residence emits several sulfur compounds, including, but not limited to, carbon disulfide, carbonyl sulfur, and hydrogen sulfide.  The Chinese Drywall in the Residence is also suspected to contain several other impurities.  The sulfur based compounds emitted have rendered the drywall unfit for the ordinary purpose for which it was intended.

104.    The Chinese Drywall emits these sulfur based compounds because it suffers from either a defective manufacturing and/or mining process.

18

105.    As a proximate result of GC's code violations, Plaintiffs have suffered and/or will suffer damages including, but not necessarily limited to, hiring additional contractors and purchasing additional materials to repair and/or restore their residence.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor against GC, awarding damages, interest, costs, and such other relief as this Court may deem just and proper.

### COUNT IX
### VIOLATION OF THE FLORIDA DECEPTIVE
### AND UNFAIR TRADE PRACTICES ACT
### (Against All Defendants)

106.    Plaintiffs readopt and re-allege the allegations contained in paragraphs 1 through 18 as though fully set forth herein.

107.    This action is brought to secure redress for the unlawful, deceptive and unfair trade practices perpetrated by Defendants.

108.    Plaintiffs are "consumers" and the subject transactions are "trade or commerce" as defined by Florida Statutes § 501.203(8).

109.    Defendants have engaged in "trade or commerce" as that term is defined by Florida Statutes §501.203(8).

110.    Defendants' actions and/or omissions, as well as their failure to use reasonable care in this matter as described herein, including but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards, and quality of problematic drywall violate Florida Statutes § 501.201, *et. seq.*, which was enacted to protect the consuming public from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce.

19

111.    Specifically, Defendants misrepresented and/or omitted material information regarding their drywall by failing to comply with their obligations under the Building Code and to disclose known risks.

112.    Defendants' misrepresentations and/or omissions of material information constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of materials facts with the intent that others rely on such concealment, suppression, or omission in connection with the use of corrosive and defective Chinese Drywall in violation of Florida Statutes § 501.201, *et. seq.*

113.    Defendants violated Florida Statutes § 501.201, *et. seq.*, by knowingly and falsely representing through their implied warranties that Defendants' drywall was fit to be used for the purpose for which they were intended, when Defendants knew it was deceptive, dangerous, ineffective, unsafe and by other acts alleged herein.

114.    Said acts and practices on the part of Defendants were and are illegal and unlawful pursuant to Florida Statute § 501.204, in that they constitute unfair methods of competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices in the conduct of a trade or commerce.

115.    As a direct and proximate result of Defendants' violations of Florida Statutes § 501.201, *et. seq.*, Plaintiffs have suffered damages.  Plaintiffs are entitled to compensatory damages, and declaratory relief, costs and reasonable attorney's fees.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor against Defendants, awarding damages, interest, costs, attorney's fees and such other relief as this Court may deem just and proper.

COFFEY | BURLINGTON

2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues so triable.

Respectfully submitted,

COFFEY BURLINGTON, P.L.
*Counsel for Plaintiffs*
2601 South Bayshore Drive, Penthouse
Miami, Florida 33133
Tel: 305-858-2900
Fax: 305-858-5261

By: */s/ Susan E. Raffanello*
     Susan E. Raffanello, FBN 676446
     sraffanello@coffeyburlington.com
     lmaclaren@coffeyburlington.com
     service@coffeyburlington.com
     Daniel F. Blonsky, FBN 972169
     dblonsky@coffeyburlington.com
     groque@coffeyburlington.com
     service@coffeyburlington.com

COFFEY | BURLINGTON
2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261