# EXHIBIT "D"



**BNY MELLON**

Beth A. Dodson
Vice President and Counsel
Legal Department, Suite 151-1915
412-234-7120 (T) | 412-236-6054 (F)
beth.dodson@bnymellon.com

March 18, 2015

**VIA UPS**

Arnold Levin, Esquire
Fred S. Longer, Esquire
Matthew C. Gaughan, Esquire
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106

**Re:   Non-Party Subpoena Duces Tecum and for a Deposition directed to The Bank of New York Mellon Corporation re:  *In Re: Chinese-Manufactured Drywall Products Liability Litigation, Civil Action No. MDL 2047 (EDLA)***

Dear Counsel:

I write with respect to the non-party subpoena for documents and deposition testimony issued by your office in the above referenced matter and directed to The Bank of New York Mellon Corporation. Please be advised that The Bank of New York Mellon Corporation is the parent corporation of The Bank of New York Mellon (institutional banking), BNY Mellon, N.A. (private banking) and other related entities, and does not maintain customers or accounts. Legal process directed to and served upon the parent company - The Bank of New York Mellon Corporation - is not considered proper service upon its wholly-owned subsidiary companies which are separate and distinct legal entities.

That said, based on counsel's representation that his client's securities expert had identified a potential relationship between the entities listed in the subpoena and a Bank of New York Mellon related entity, The Bank of New York Mellon Corporation ("BNYM") agreed to perform initial searches on a list of 16 entities which counsel represented were most likely to be associated with a BNY Mellon entity and found no domestic relationships. When I informed counsel of this, I told him BNYM would be willing to continue to cooperate if he could provide: (1) any evidence of a relationship between the remaining 207 entities listed in the subpoena and BNYM; and/or, (2) any further identifying information related to said entities, e.g., an address or Tax ID number. In response, counsel refused to provide any additional information or explanation of relevance and also refused to agree to extend BNYM's current deadline of March 18, 2015, to object or respond to the subpoena.

As a result of counsel's response, BNYM proffers the following objections to the subpoena:

First, BNYM objects to the subpoena because it is overly broad and seeks to impose unduly burdensome discovery on a third party. The subpoena, as drafted, requires BNYM to conduct a search of its records for potential relationships maintained by over 223 entities. BNYM's legal department searched for any domestic client relationships related to the 16 entities that issuing counsel represented were most likely to have a relationship and located nothing. It is unduly burdensome to require BNYM, a non-party, to search its records for any relationship with the remaining 207 entities when counsel cannot articulate a basis as to why there might be a chance that a relationship exists. This is the definition of a fishing expedition and BNYM objects to this subpoena to the extent it is seeking to require BNYM to use its resources for this purpose. On the same basis (and because BNYM does not have any employees as explained above), BNYM specifically objects to the request to depose an employee of BNYM.

Second, BNYM objects to the subpoena to the extent it seeks information that is obtainable from some other source that is more convenient, less burdensome, or less expensive. For example, the majority of the documents requested in the subpoena are communications between BNYM and Taishan (as defined in the subpoena) and documents concerning investments made by Taishan– documents that Taishan also has in its possession, custody, or control.

Third, BNYM objects to the subpoena on the grounds that it calls for the production of documents that relate to or contain sensitive, confidential and/or proprietary information of BNYM. Further, BNYM objects to the subpoena to the extent the subpoena seeks sensitive, confidential and/or proprietary information of non-parties, including that of non-parties other than BNYM that is subject to protection from disclosure.

Fourth, BNYM objects to each document request, definition, and instruction to the extent it seeks the production of documents or information that are neither relevant to this action nor reasonably calculated to lead to the discovery of admissible evidence. Production of irrelevant documents imposes a substantial and undue burden on BNYM, which is contrary to the Federal Rules of Civil Procedure. Furthermore, BNYM is not a party and is therefore not in a position to evaluate whether the requests in the subpoena are reasonably calculated to lead to the discovery of admissible evidence, or are otherwise relevant to the claims or defenses at issue in the underlying lawsuit. BNYM's response to any of the requests contained in the subpoena is not an admission or acknowledgement that such request calls for information that is relevant to the subject matter of the underlying litigation.

Fifth, BNYM objects to the subpoena to the extent that it seeks to impose requirements that are inconsistent with, or beyond the scope of those contemplated by, the Federal Rules of Civil Procedure or the Local Rules of the Southern District of New York.

Sixth, BNYM objects to the subpoena to the extent it seeks information that is protected from disclosure by any applicable privilege, immunity or protection including, but not limited to, the attorney-client privilege and attorney work product doctrine. To the extent that such

information is inadvertently produced, the production of such information shall not constitute a waiver of BNYM's rights to assert the applicability of any privilege or immunity to the information and any such information shall be subject to return on demand.

Seventh, BNYM objects to the subpoena to the extent that it seeks the production of any information that BNYM is precluded from disclosing under any applicable statutes, regulations, or laws.

BNYM expressly reserves any and all of its rights to further reject, contest, or object to the subpoena, either in whole or in part, on grounds other than those set forth in this letter. Nothing set forth in this letter shall be construed as a waiver of any such rights, remedies and objections.

Subject to and without waiving the foregoing objections, BNYM has no domestic customer relationships with the 16 entities identified by Mr. Gaughan in his February 27, 2015, email. On March 17, 2015, BNYM informed counsel via email that it was willing to cooperate with the remainder of the requests if counsel would provide BNYM with (1) any additional identifying information related to the 207 entities, and/or (2) any basis for why counsel has reason to believe that BNYM maintained a relationship with the remaining 207 entities. Because counsel has refused to provide any additional information and any extension of time from today's objection/response deadline, and for the additional reasons stated above, BNYM will not be conducting any further searches of its records to determine whether any of its affiliated entities have any relationship with the remaining 207 entities.

Very truly yours,

Beth A. Dodson

BAD/mga
cc: Russ M. Herman and Leonard A. Davis (via UPS)