# EXHIBIT A

Welcome to OKorder.com!                                    Sign In | Join Free | My OKorder | My Favorites | Help Center | 供应商加盟


Global Materials & Equipment Supplier

All Categories ▾ | Please input a keyword                    Search

Popular Searches: Steel Coil, Aluminium, Waterproofing, Solar Panel, Ceiling                   Advanced Search

Home > news

## OKorder joined hands with IBM to create cross-border e-commerce cloud era

On September 26, 2014, IBM and OKorder declared jointly that OKorder adopted IBM cloud computing service to start the domestic cross-border e-commerce cloud era. With the assistance of IBM, OKorder combined the advanced world cloud computing service to create the online and offline integrated cross-border e-commerce platform that can be better used by the clients based on the innovative commercial mode of "cross-border e-commerce+ overseas warehouse" (The commercial mode of "cross-border e-commerce + overseas warehouse" created initially by OKorder breaks through the traditional mode by information-based means. The overseas buyers can purchase the client's products online in virtue of OKorder's cross-border e-commerce platform and then convey and distribute the products by OKorder's local overseas warehouse and logistics systems within the world range). It could promote the industrial upgrade and transformation from Chinese manufacturing industry to the manufacturing service industry, accelerate the development of overseas market and expand the new online Silk Road.

Deploying cloud service innovatively and expanding online Silk Road
The rapid development in the international market OKorder puts forward higher request to IT. To provide the clients around the world with more efficient service, OKorder intends to expand the radius of management and marketing and improve the efficiency of integral operation and the management of business risk around the world in virtue of the advanced cloud computing platform. Therefore, OKorder selected three more powerful companies in the world to test the performance indexes for 3 months such as the safety, stability, quantity of nodes and evenness efficiency of the world client's visit. Finally, IBM cloud platform Softlayer stood out.

IBM can satisfy the global layout of OKorder in virtue of public cloud platform Softlayer in nearly 40 cloud data centers of five continents. Softlayer naked computer special service provided by OKorder can enable the clients to manage the infrastructures more directly and closely. The special naked computer proves to be more effective in serving the enterprise client. Using the special infrastructure for computing and storage can obtain high performance cloud computing with its extremely flexible and safe cloud service, and thus can help the enterprise to improve the client experience and efficiency, and make rapid development in the world market.

Ensuring the safety of online transaction, and reducing the client's purchase costs

Cloud deployment is set in the front end of OKorder's website in virtue of IBM's global cloud platform. OKorder has promoted the websites in Chinese, English, etc. for the different countries and regions and the cloud node of the websites in all versions is deployed on IBM's global cloud platform. The market promotion and operation can be realized by combining the search engine with promotion channel of different countries and regions.

IBM's cloud computing platform can ensure the safety of online transaction, reduce the costs of all links and improve the efficiency of transaction process. What is more important is that we can provide the clients around the world with better service and maintain our competitiveness. We expect the continuous and further cooperation with IBM and join hands to create the Silk Road in Internet era by the most advanced cloud computing technology to serve the development of China's foreign trade.

In the future, based on IBM's global network, it is expected to develop individually distributive OKorder ETP system (enterprise transaction platform) and build the OKorder global office network. OKorder ETP system has realized data exchange between the systems of the organizations such as bank, insurance, customs, and logistics. We can also open the general module of Chinese business in OKorder ETP system to the foreign small and medium-sized enterprises by cloud platform.

All Categories ▾ | Please input a keyword                    Search

### About Us
· About OKorder
· Corporate Culture
· Sales Network
· Certificate
· Contact Us
· OKorder Blog

### Terms & Conditions
· Membership Agreement
· Privacy Policy
· Terms of Use
· Intellectual Property Infringement Policy

### Help Center
· User Guide
· Site Map

### Subscribe to Okorder for latest offerings & news
Your Email Address        ✉ Subscribe

Our community:
in LinkedIn  f Facebook  ✦ Twitter  P Pinterest  g+ google+ 📺

Copyright Notice © 2010-2014   www.OKorder.com All rights reserved.

Welcome to OKorder.com!                    Sign In | Join Free | My OKorder | My Favorites | Help Center | 供应商加盟

 **okorder**.com
Global Materials & Equipment Supplier

| All Categories ▼ | Please input a keyword | **Search** |

Popular Searches: Steel Coil, Aluminium, Waterproofing, Solar Panel, Ceiling        Advanced Search

Home > About Us

**About Us**

Corporate Information

Corporate Culture

Certificate

Contact Us

Site Map

## Corporate Information

OKorder.com is a Global Materials and Equipment Supplier, invested by CNBM International, a Fortune 500 company. CNBM International has more than 20 years in foreign trade experience, and has established lasting business relations with clients in over 160 countries.

CNBM International has established OKorder.com as the destination for "quality products, reasonable prices and all-round services" catering to overseas wholesalers. All products on OKorder.com are carefully selected from China's quality manufacturing enterprises. Through its ISO certifications, OKorder.com adheres to the highest standards and commitment toward supply chain safety and customer satisfaction.

OKorder.com - Global Materials and Equipment Supplier - our mission is making international trade Easier.

| All Categories ▼ | Please input a keyword | **Search** |

**About Us**
- About OKorder
- Corporate Culture
- Sales Network
- Certificate
- Contact Us
- OKorder Blog

**Terms & Conditions**
- Membership Agreement
- Privacy Policy
- Terms of Use
- Intellectual Property Infringement Policy

**Help Center**
- User Guide
- Site Map

**Subscribe to Okorder for latest offerings & news**

Your Email Address    **Subscribe**

Our community:

in LinkedIn  f Facebook  Twitter  Pinterest  google+

Copyright Notice © 2010-2014   www.OKorder.com All rights reserved.

Welcome to OKorder.com!

Sign In | Join Free | My OKorder | My Favorites | Help Center | 供应商加盟


.com
Global Materials & Equipment Supplier

| All Categories ▼ | Please input a keyword | **Search** |

Popular Searches: Steel Coil, Aluminium, Waterproofing, Solar Panel, Ceiling

Advanced Search

Home > **Service**

**Service**

- Help Center
- Sales Network
- My OKorder

## Sales Network

### Overseas Branches

With oversea branches around the world, such as America, UAE, Dubai, Russia, Saudi Arabia, India, Viet Nam, Germany, Indonesia, Ukraine, etc., customer's products are sold worldwide.



### Overseas Logistics Parks

CNBM plans to build five overseas logistics parks, which support OKorder's online trading and is also served as storage、selling, distribution and after-sales center for overseas customers. Dubai Logistics Park has been put into operation in August, 2013.

Dubai Logistics Parks: covers the Middle East, South Asia and North Africa Market

South Africa Logistics Parks: covers East African Common Market

Nigeria Logistics Parks: covers West African, Central African Market

Brazil Logistics Parks: covers the Latin American Market



| All Categories ▼ | Please input a keyword | Search |

### About Us
- About OKorder
- Corporate Culture
- Sales Network
- Certificate
- Contact Us
- OKorder Blog

### Terms & Conditions
- Membership Agreement
- Privacy Policy
- Terms of Use
- Intellectual Property Infringement Policy

### Help Center
- User Guide
- Site Map

### Subscribe to Okorder for latest offerings & news
Your Email Address | ✉ Subscribe

Our community:
in LinkedIn   f Facebook   Twitter   Pinterest   google+

Copyright Notice © 2010-2014   www.OKorder.com All rights reserved.

CNBM International Corporation

## CNBM | 中建材国贸
CNBM International

Search: [          ] All ▼ [Search]

中文 | **English**

| Home | About Us | News | Business | Marketing | Overseas | Careers |

新闻中心
News

---

**News Center** →

> **Company News**

> Industry News



Current Location: Home >> News Center >> Company News

### CNBM Group Named to Fortune Global 500 for the Fourth Successive Time, Ranking the 267th

http://www.icnbm.com   Date: 2014-07-10

On July 7th, the US Fortune magazine published the 2014 Ranking List of World Top 500 Enterprises. China National Building Materials Group Corporation (CNBM Group in short) enters into the Fortune Global 500 for the fourth successive time with its operating revenue of 41.03 billion USD, ranking the 267th place, and rising 52 places over last year. Amongst the three building materials enterprises listed in the Fortune Global 500, CNBM ranks the second with promising momentum.

The rapid development of CNBM Group derives from the market-oriented reform of diversified ownership and a series of innovative actions carrying forward the industrial reorganization. Thanks to the exploration into the marketization mode of SOK enterprises (state-owned keyenterprises), CNBM Group reorganized almost a thousand enterprises with limited government capital and hence reactivated a greater amount of social capital, which exerted a positive influence on building material industrial transformation and achieved a win-win situation between China's national assets appreciation and enterprises development. Now CNBM Group has become a remarkable example in SOK enterprises' diversified ownership reformation.

To give a full play in China's economic growth, CNBM Group carried out highly effective works including the innovation, integration, reformation and marketing in its business operation from the year of 2014. Economic indicators of the first half of the year have seen a stable and promising momentum.

OKorder.com is an e-commerce website founded by CNBM Group and now being operated by CNBM International Corporation, an important membership company of CNBM Group's logistic and trade sector. OKorder.com pioneered a brand new business model, the Cross-border E-commerce + Overseas Warehousing, which combines the advantages of traditional international trade company and modern e-commerce company. OKorder.com provides a one-stop international trade service for Chinese manufacturers including Global Marketing, Export Agent, Logistics, Oversea Warehousing and Delivery, Online Supply Chain Financing, and International Trade and E-commerce Training. OKorder.com is dedicated to building up an Online Silk Road and serving to its best for China international trade industry.

next --> CNBM Group Named to Fortune Global 500 for he Four h Successive Time, Ranking he 267th

previous --> SASAC Vice Chairwoman Huang Danhua Inspected CNBM Dubai Logistics Center

---

Legal Statement  |  Site Map  |  Contact us

CNBM International Corpora ion Webpage All Rights Reserved:(C) 2005-2013 Copyright@2013 京ICP备09078545号





Home  中文



About CNBM  |  News Center  |  Business Platform  |  CNBM worldwide  |  Social Responsibility  |  Contact us

Home > News Center

## News Center

### Congratulations on Okorder.com official launch

Source: CLFG 02-18-2011 0:00:00

Feb 10th, 2011, Okorder.com launched its official website successfully. OKORDER is a global direct selling platform for building materials. With the mission of 'making every order easy', OKORDER commits itself to offer a brand-new selling channel for Chinese domestic manufacturers through diverse cooperation forms, and create convenient, rapid, low-cost purchasing platform for overseas customers.



**All CNBM Group Websites**

— Subsidiaries —                    ▼



OKORDER is developed and operated by CNBM International Corporation (CNBM International), which is the most important trading platform of CNBM Group. With years of development and accumulation, CNBM International enjoys stable suppliers, abundant customer resources, professional marketing network and modern logistics system. By transforming its traditional trading pattern to an E-commerce platform, Okorder.com will devote itself to enhance the shopping experience of and brings more benefits to its world-wide clients.

Copyright©2003China National Building Material Group Corporation

# EXHIBIT B

MINUTE ENTRY
FALLON, J.
MARCH 18, 2015

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE MANUFACTURED DRYWALL
PRODUCTS LIABILITY LITIGATION

MDL NO. 2047

SECTION "L"

THIS DOCUMENT RELATES TO: ALL CASES

### MINUTE ENTRY AND ORDERS

On this date, the Court heard oral arguments regarding the Plaintiffs' Steering Committee's motion to preclude Taishan and its affiliates from participating in class damages proceedings unless and until Taishan purges itself of contempt. (Rec. Doc. 18367). Russ Herman and Arnold Levin participated on behalf of the Plaintiffs' Steering Committee. Bernard Taylor, Alan Weinberger, Michael Kenny, and Christina Eikhoff participated on behalf of Taishan Gypsum Co., Ltd. ("TG") and Tai-an Taishan Plasterboard Co. Ltd. ("TTP"), (TG and TTP collectively, "Taishan"). James Stengel participated on behalf of China National Building Materials Group Corporation and China National Building Materials Company Limited (collectively, "CNBM"). Michael Barr, Michael Moore, Richard Fenton, and Harry Rosenberg participated on behalf of Beijing New Building Materials Public Limited Company and Beijing New Building Material (Group) Company Limited (collectively, "BNBM"). The hearing was transcribed by Ms. Toni Tusa, Official Court Reporter. Counsel may contact Ms. Tusa at (504) 589-7778 to request a copy of the transcript.

JS10(00:82)

After reviewing the parties' memoranda, reviewing the applicable law, and hearing oral argument from all parties, the Court took the motion to preclude under advisement, subject to the conditions ordered by the Court:

1) **IT IS ORDERED THAT** Taishan must purge itself of contempt of court within two weeks of today's date, that is **March 31, 2015**, before the Court will determine the nature, and extent, of Taishan's participation in these proceedings. To purge itself of contempt, Taishan must (a) pay the $15,000 in attorneys' fees to the PSC; (b) pay the *Germano* judgment that formed the basis of the judgment debtor proceedings, amounting to $2,609,099.99 plus pre-judgment interest of $149,256.53 plus post-judgment interest at the judicial rate under 28 U.S.C. § 1961, as of the date of payment, (Rec. Doc. 3013); and (c) pay the associated bill of costs, (*see* Rec. Docs. 17825, 18034). The Court notes that Taishan has paid the $40,000 contempt penalty. (*See* Rec. Doc. 18448).

2) As neither Taishan nor BNBM/CNBM have demonstrated compliance with the injunction prong of the contempt order, (Rec. Doc. 17869), and the Court cannot yet assess whether there is need to enforce the associated penalty of 25% of profits, **IT IS FURTHER ORDERED THAT** the parties shall immediately commence discovery related to the relationship between Taishan and BNBM/CNBM, including whether affiliate and/or alter ego status exists. Discovery shall conclude no later than **April 28, 2015**, at 9:00 a.m. at which time the Court will hear oral argument on the motion for class damages. **IT IS FURTHER ORDERED** that the previously set March 18, 2015 deadline for responses for the motion for class damages is **CONTINUED** and any responses to the motion for class damages now shall be due on **April 20, 2015**.

2

3)  **IT IS FURTHER ORDERED THAT** Taishan and BNBM/CNBM **SHALL** participate in alter ego discovery. If Taishan and/or BNBM/CNBM do not participate in discovery, the Court will act accordingly to ensure compliance with this and any Court order. The Court may, for example, strike defenses asserted by Taishan and BNBM/CNBM.

4)  **IT IS FURTHER ORDERED THAT** that the Plaintiffs' Steering Committee, Taishan, and BNBM/CNBM **SHALL meet and confer** to discuss a discovery plan. Any deposition shall occur in New Orleans, Louisiana, unless all parties agree – with consent of the Court – that the deposition may occur elsewhere.

The Court retains jurisdiction to take any action necessary to enforce its contempt order, and any other order discussed herein. If any party violates any of the Court's orders, the Court "has broad discretion in assessing sanctions to protect the sanctity of its decrees and the legal process." *Test Masters Educational Servs. v. Singh*, 428 F.3d 559 (5th Cir. 2005). This Court "possess[es] the inherent authority to enforce [its] own injunctive decrees," an authority that "runs nationwide." *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985); *see also United States v. Fisher*, 864 F.2d 434, 436 (7th Cir.1988) ("[W]hen a court issues an injunction, it automatically retains jurisdiction to enforce it."). The Court reserves its right to determine whether Taishan and/or BNBM/CNBM must post a bond under Rule 64. The Court further notes that Taishan and BNBM/CNBM's willingness to participate in discovery process will guide the Court's determination of the circumstances under which Taishan and BNBM/CNBM may participate in these proceedings. To allow a party to continue to participate in a proceeding while the party is in contempt for actions taken in those same proceedings would be, in effect,

3

rewarding the party for its contemptuous conduct. The Court will take any necessary action to

ensure the sanctity of its decrees and the legal process.

UNITED STATES DISTRICT JUDGE

1              UNITED STATES DISTRICT COURT

2              EASTERN DISTRICT OF LOUISIANA

3

4

   IN RE:  CHINESE-MANUFACTURED   *      MDL No. 2047
5          DRYWALL PRODUCTS        *
           LIABILITY LITIGATION    *      Section L
6                                  *
                                   *      New Orleans, Louisiana
7                                  *
   Relates to:  All Actions        *      March 17, 2015
8  * * * * * * * * * * * * * * * *

9

10                  ORAL ARGUMENT BEFORE
            THE HONORABLE ELDON E. FALLON
11            UNITED STATES DISTRICT JUDGE

12
   Appearances:
13

14 For the Plaintiffs:          Herman Herman & Katz, LLC
                                BY:  RUSS M. HERMAN, ESQ.
15                              820 O'Keefe Avenue
                                New Orleans, Louisiana 70113
16

17 For the Plaintiffs:          Levin Fishbein Sedran & Berman
                                BY:  ARNOLD LEVIN, ESQ.
18                              510 Walnut Street, Suite 500
                                Philadelphia, Pennsylvania 19106
19

20 For Taishan:                 Alston & Bird, LLP
                                BY:  BERNARD TAYLOR, ESQ.
21                                   MICHAEL P. KENNY, ESQ.
                                     CHRISTINA HULL EIKHOFF, ESQ.
22                              1201 West Peachtree Street
                                Atlanta, Georgia 30309
23

24

25

Case 2:09-md-02047-EEF-JCW  Document 18509-3  Filed 03/19/15  Page 3 of 56
Case 2:09-md-02047-EEF-MBN  Document 18544-1  Filed 03/23/15  Page 13 of 66

2

```
 1   For Taishan:              Hangartner Rydberg & Terrell, LLC
                               BY:  ALAN D. WEINBERGER, ESQ.
 2                             701 Poydras Street, Suite 310
                               New Orleans, Louisiana 70139
 3

 4   For BNBM Group and        Dentons US, LLP
     BNBM, PLC:                BY:  MICHAEL H. BARR, ESQ.
 5                             1221 Avenue of the Americas
                               New York, New York 1000
 6

 7   For BNBM Group and        Dentons, US, LLP
     BNBM, PLC:                BY:  C. MICHAEL MOORE, ESQ.
 8                             2000 McKinney Avenue, Suite 1900
                               Dallas, Texas 75201
 9

10   For BNBM Group and        Dentons US, LLP
     BNBM, PLC:                BY:  RICHARD L. FENTON, ESQ.
11                             233 South Wacker Drive, Suite 7800
                               Chicago, Illinois 60606
12

13   For BNBM Group and        Phelps Dunbar, LLP
     BNBM, PLC:                BY:  HARRY ROSENBERG, ESQ.
14                             365 Canal Street, Suite 2000
                               New Orleans, Louisiana 70130
15

16   For CNBM Group and        Orrick Herrington & Sutcliffe, LLP
     CNBM Limited:             BY:  JAMES L. STENGEL, ESQ.
17                             51 West 52nd Street
                               New York, New York 10019
18

19   Official Court Reporter:  Toni Doyle Tusa, CCR, FCRR
                               500 Poydras Street, HB-275
20                             New Orleans, Louisiana 70130
                               (504) 589-7778
21

22

23   Proceedings recorded by mechanical stenography using
     computer-aided transcription software.
24

25
```

|  |  |
|---|---|
| :52:37 | 1 |
| :52:36 | 2 |
| :58:07 | 3 |
| :58:09 | 4 |
| :58:09 | 5 |
| :58:11 | 6 |
| :58:12 | 7 |
| :58:16 | 8 |
| :58:18 | 9 |
| :58:21 | 10 |
| :58:22 | 11 |
| :58:29 | 12 |
| :58:33 | 13 |
| :58:34 | 14 |
| :58:38 | 15 |
| :58:41 | 16 |
| :58:46 | 17 |
| :58:50 | 18 |
| :58:53 | 19 |
| :58:54 | 20 |
| :58:57 | 21 |
| :59:00 | 22 |
| :59:05 | 23 |
| :59:08 | 24 |
| :59:11 | 25 |

## PROCEEDINGS

### (March 17, 2015)

THE COURT:  Be seated, please.  Good morning, ladies and gentlemen.

Call the case, please.

THE DEPUTY CLERK:  MDL No. 2047, In Re: Chinese-Manufactured Drywall Products Liability Litigation.

THE COURT:  Counsel, make your appearance for the record, please.

MR. HERMAN:  Good morning, Judge Fallon.  Russ Herman of Herman Herman & Katz, New Orleans, on behalf of plaintiffs and the PSC.

MR. TAYLOR:  Good morning, Your Honor.  Bernard Taylor from Atlanta, and I'm honored to be here in your courtroom and to be in New Orleans.  We are here to represent Taishan with my colleagues, Mike Kenny and --

MR. KENNY:  Good morning, Your Honor.

THE COURT:  Good morning.

MR. WEINBERGER:  Good morning, Your Honor.  I'm Alan Weinberger for Taishan as well, Your Honor.  Thank you.

MR. BARR:  Your Honor, Michael Barr from Dentons on behalf of BNBM Group and BNBM, PLC.  I'm also here with my partners, Michael Moore and Richard Fenton, and Harry Rosenberg, who I'm sure the Court knows.

MR. ROSENBERG:  Good morning, Your Honor.

1      **MR. STENGEL:** Good morning, Your Honor.

2  James Stengel of Orrick Herrington for CNBM Group and

3  CNBM Limited.

4      **MR. LEVIN:** We usually let Russ speak, but

5  Arnold Levin on behalf of the PSC, Your Honor.

6      **THE COURT:** Let me make some background comments to

7  try to summarize this matter. It's very hard. It's been a

8  long and tortured history, but I will do my best to shorten it

9  as much as I can.

10     As we know, this case began sometime in 2005

11  through 2008 when the hurricanes left us with a lot of damage

12  to houses and other structures and the building boom on the

13  East Coast depleted the United States' supply of drywall.

14  Drywall, or sheetrock as we call it in our area, needed to be

15  procured.

16     It was found that there were some opportunities

17  in China. Knauf had a wholly owned subsidiary in China that

18  manufactured drywall. They were able to begin shipping drywall

19  in.

20     Taishan and various affiliates of Taishan,

21  seeing the Knauf entities prosper, joined in the act and began

22  shipping drywall into the United States.

23     Shortly after the drywall came in and was used,

24  problems apparently developed. There was an odor. There was

25  also some problem with a lot of appliances because of excess

| | |
|---|---|
| :01:14 | 1 |
| :01:20 | 2 |
| :01:28 | 3 |
| :01:33 | 4 |
| :01:38 | 5 |
| :01:43 | 6 |
| :01:48 | 7 |
| :01:55 | 8 |
| :02:01 | 9 |
| :02:03 | 10 |
| :02:06 | 11 |
| :02:16 | 12 |
| :02:19 | 13 |
| :02:23 | 14 |
| :02:27 | 15 |
| :02:33 | 16 |
| :02:39 | 17 |
| :02:44 | 18 |
| :02:52 | 19 |
| :02:56 | 20 |
| :02:58 | 21 |
| :03:04 | 22 |
| :03:13 | 23 |
| :03:16 | 24 |
| :03:20 | 25 |

1  amount of sulfur in the gypsum, which is the basis of drywall,

2  which caused chemical reactions with copper wires and silver

3  wires primarily, copper being the predominant building metal in

4  the United States as well as the world for refrigerants and

5  ground wires and things of that sort, and silver being the

6  contact points for all switches.  This created a problem

7  because it caused those things to malfunction.  In addition, as

8  I said, it created odors that were distasteful for people who

9  were living in buildings.

10       In any event, a lot of suits started and because

11  of the numbers, the multidistrict panel declared it an MDL.  On

12  a personal note, I thought I was safe from this MDL because I

13  did not have one case filed in Louisiana, but somehow or

14  another I got all of them.

15       In any event, among the suits filed were the

16  *Germano*, the *Mitchell*, the *Gross*, the *Wiltz* cases, which were

17  class actions, each of those representing various states.

18  These suits were against TG and TTP.  A lot of the other suits

19  were against other affiliates of Taishan.  The suits were

20  properly served.

21       No answer was filed by Taishan or TG or TTP,

22  which I will refer to as Taishan.  During the course of the

23  proceedings, I tried to call their attention, particularly to

24  the people who were in the room, as well as I put on my website

25  that it was very important that answers be filed.  There came a

Case 2:09-md-02047-EEF-JCW   Document 18500-3   Filed 03/19/15   Page 7 of 56
Case 2:09-md-02047-EEF-MBN   Document 18544-1   Filed 03/25/15   Page 17 of 66

6

1    time when I felt that I could do no more than to instruct the

2    plaintiffs to take a default.  That's not something that any of

3    us in this jurisdiction take lightly.  At first they were

4    reluctant to take a default, but they took a default because I

5    needed to move the cases.

6              The Court granted a preliminary default in

7    September of 2009.  Again, I put on the website that it was

8    important for the Taishan entities to enter the case to no

9    avail.  After affording Taishan more than a reasonable time to

10   answer, I moved forward with an evidentiary hearing in

11   furtherance of the preliminary default in the *Germano* case.

12   They had 14 people intervene in *Germano*.

13             I felt it was important to determine whether or

14   not the material was defective and also what was the result of

15   its defective nature.  I heard experts.  About four or five

16   days of testimony was produced.  I have no way of knowing, but

17   I'm advised that the plaintiffs spent about a million dollars

18   in presenting the case for default.  It was an extensive

19   hearing.  Following that matter, I issued findings of fact and

20   conclusions of law.

21             On May 11, 2010, I issued a default judgment in

22   favor of the intervening plaintiffs in the total amount of

23   $2,609,129.99.  As I said, there were about 16 people, about 8

24   couples or so, 8 to 10 homes, with interest and court costs.

25             The case proceeded and on the last day for

| | | |
|---|---|---|
| :05:45 | 1 | appealing, TG entered an appearance and appealed the Court's |
| :05:53 | 2 | judgment, seeking to vacate the judgment for lack of personal |
| :05:56 | 3 | jurisdiction. This was the first time that lack of personal |
| :06:04 | 4 | jurisdiction was claimed. It was the first time that they |
| :06:07 | 5 | entered the lawsuit. So to be fair, they didn't claim it. |
| :06:12 | 6 | They claimed it when they entered the lawsuit. |
| :06:17 | 7 | The Fifth Circuit felt that it was better for |
| :06:22 | 8 | them to stay the appeal to allow enough time for the Court to |
| :06:30 | 9 | rule on the issue of personal jurisdiction. At that point I |
| :06:36 | 10 | had no record for personal jurisdiction. I wanted to give the |
| :06:42 | 11 | parties an opportunity to present themselves on that issue. |
| :06:48 | 12 | The plaintiffs felt that, because of contacts |
| :06:53 | 13 | and things of that sort that are germane to personal |
| :06:57 | 14 | jurisdiction, it was important for them to get discovery. They |
| :07:01 | 15 | went to China. Taishan cooperated to the extent of providing |
| :07:10 | 16 | witnesses to be deposed in China. It was easier for the |
| :07:15 | 17 | lawyers to go to China than it was for the witnesses to come to |
| :07:18 | 18 | the United States, so that's what I ordered them to do. |
| :07:25 | 19 | The plaintiffs took about a week to ask |
| :07:28 | 20 | questions. I got the transcripts back and, frankly, there were |
| :07:34 | 21 | too many interpreters in the room. The plaintiffs had their |
| :07:37 | 22 | interpreter, the defendants had their interpreter, and the two |
| :07:42 | 23 | interpreters got together and hired a third interpreter to |
| :07:46 | 24 | check them both. In any event, page after page I read, the |
| :07:50 | 25 | interpreters were arguing as to what was meant, what was said. |

| | | |
|---|---|---|
| :07:53 | 1 | I couldn't make much out of it, frankly.  Notwithstanding the |
| :07:57 | 2 | efforts of both sides, I could not make much out of it.  I felt |
| :08:01 | 3 | that it was necessary to take the depositions again and this |
| :08:05 | 4 | time, as assistance to the parties, I would go over and |
| :08:09 | 5 | participate and rule on the matters. |
| :08:12 | 6 | I didn't look forward to it.  It was five days I |
| :08:16 | 7 | spent in a basement without any windows.  We worked eight hours |
| :08:20 | 8 | a day, and on the last day they finished I flew home.  That was |
| :08:26 | 9 | the extent of my visit to Hong Kong, but it gave me an |
| :08:33 | 10 | opportunity to preside over the depositions.  I ruled on the |
| :08:38 | 11 | objections immediately, and I thought the depositions at least |
| :08:43 | 12 | gave me some information that would be of assistance as I |
| :08:48 | 13 | focused on personal jurisdiction.  I was able to listen to the |
| :08:53 | 14 | witnesses.  I was able to observe the witnesses.  I was able to |
| :08:56 | 15 | make some sense out of what they were saying and test their |
| :08:59 | 16 | credibility. |
| :09:02 | 17 | I came back and wrote a rather long opinion. |
| :09:07 | 18 | Too long.  If I had more time, I would have written a shorter |
| :09:12 | 19 | opinion, but I wanted to get it out as quickly as I could.  So |
| :09:15 | 20 | I wrote an opinion on it.  Taishan appealed the opinion. |
| :09:21 | 21 | The Fifth Circuit decided to have two panels |
| :09:25 | 22 | look at this issue.  My opinion dealt with the four cases |
| :09:33 | 23 | together, but they divided it up.  One panel took one case and |
| :09:38 | 24 | another panel took three cases.  The cases were argued.  The |
| :09:43 | 25 | panels wrote extensive opinions affirming the Court. |

Case 2:09-md-02047-EEF-JCW  Document 18509-3  Filed 03/19/15  Page 20 of 66
Case 2:09-md-02047-EEF-MBN  Document 18594-1  Filed 03/26/15  Page 20 of 66

9

I had found that I had personal jurisdiction.  I
had found that the entities solicited business, that the
entities negotiated the business, that the entities complied
with putting the appropriate United States logos on the
drywall, and did other things that were significant, I thought,
in establishing contacts and personal jurisdiction.  As I said,
the Fifth Circuit agreed with me and both panels affirmed the
opinion.  Now, we have 17 judges in the circuit court.  A third
of the judges in the circuit court focused on this issue and
affirmed the Court.

At this point, unfortunately, Taishan began
discussing it with their attorneys at that time.  I saw the
e-mail subsequently and ruled the e-mail admissible.  They
discussed what to do about it and they made the decision at
their highest levels to just walk away.  They decided not to
participate.  They decided to absent themselves and instructed
their attorneys to take no action.  Then they fired their
attorneys.

At this point, time for a rehearing en banc,
time for a cert to the United States Supreme Court had passed.
The plaintiffs had a judgment of $2 million, plus prejudgment
interest, plus court costs, and they wanted to execute it.  So
the way you do it, obviously, as we all know, is to get a
judgment debtor rule set.  They set a judgment debtor rule.  I
instructed the prior attorneys for Taishan to advise Taishan

:12:16  1   and its affiliates that a judgment debtor rule was set and that

:12:24  2   they should participate in it.

:12:29  3                 The judgment debtor rule was noted.  I put it on

:12:33  4   the website.  I had the prior attorneys for Taishan advise me

:12:39  5   that they had advised Taishan and its affiliates that the

:12:48  6   judgment debtor rule was set.  Everybody knew about it.

:12:55  7                 Taishan decided not to show up.  So I had no

:13:02  8   alternative, no choice but to hold them in contempt.  I held

:13:06  9   them in both civil and criminal contempt.  After I noticed it,

:13:12  10  I held a hearing which they didn't participate in.  I issued an

:13:17  11  order holding them in, as I say, criminal and civil contempt.

:13:23  12                 I charged them with penalties of $40,000.  I

:13:28  13  felt it appropriate to also have them pay $15,000 attorneys'

:13:33  14  fees for the work that the plaintiffs had done in working on

:13:39  15  the judgment debtor rule, being present and presenting

:13:47  16  themselves.

:13:50  17                 I also enjoined Taishan, TTP, and their

:13:53  18  affiliates from doing business in the United States until they

:13:59  19  participated in the process.  When they do business in the

:14:03  20  United States, they look to the criminal and civil justice

:14:07  21  system of our country to protect them and they have a right to

:14:11  22  do that.  Anybody doing business lawfully in our country has a

:14:16  23  right to look to our courts to be of assistance to them.  But

:14:21  24  at the same time, they also have a duty to comply with the

:14:24  25  requirements of the courts, with the judgments of the courts.

Case 2:09-md-02047-EEF-JCW Document 18509-3 Filed 03/19/15 Page 12 of 56
Case 2:09-md-02047-EEF-MBN Document 18344-1 Filed 03/25/15 Page 22 of 66

11

:14:27    1    So I said don't do business in the United States until and

:14:32    2    unless you comply with the Court's order; and if you do, you

:14:37    3    are going to forfeit 25 percent of the earnings that you make

:14:44    4    in violating the Court's order.

:14:48    5          The case proceeded and the PSC, in July of 2014,

:14:54    6    filed a motion for class certification seeking to certify all

:15:00    7    existing class members with claims against all of the Taishan

:15:06    8    defendants for property damage only.  They didn't seek class

:15:14    9    action in our district for personal injuries.  That is about

:15:20   10    gone to history now.  It is very difficult to have commonality

:15:26   11    and predominance in a personal injury case.

:15:32   12          I have had experience with it in *Murphy Oil* and

:15:38   13    a couple other matters.  You can have commonality and

:15:42   14    predominance in property damage because you really focus on

:15:47   15    square footage.  All properties are not the same, but you

:15:54   16    simply arithmetically determine how much square footage in a

:15:59   17    particular case and that's what it is.  So this Court as well

:16:05   18    as the circuits have approved class actions in property damage

:16:09   19    cases.

:16:11   20          So I looked at this case, and I had had some

:16:17   21    experience with 14 other claims, and I was able to fashion a

:16:25   22    square footage allotment.  I knew what the damage was.  I knew

:16:33   23    the defective condition of the drywall and how much square

:16:38   24    footage it costs to repair or remedy the situation.  So I

:16:45   25    granted the class certification.  I certified the class.

:16:52  1           Taishan and all of the defendants in that class

:16:56  2 action failed to respond.  I certified the class in September

:17:03  3 of 2014 for the claimants who had defectively manufactured

:17:12  4 drywall in their home for property damages resulting therefrom

:17:18  5 on a square footage basis.  I saw that would be the appropriate

:17:23  6 way of doing it.

:17:25  7           No defendants responded, no appeals were taken,

:17:27  8 and several months later I set a date for a hearing to

:17:36  9 determine the damages.  The first class action determined the

:17:41  10 scope of the class and the liability of the defendants, and the

:17:48  11 second one had to do with damages.

:17:52  12           I set the date for damages, February 12, 2015.

:17:57  13 I gave people notice for a couple of months.  I put that on our

:18:02  14 website.  I announced it in open court.  On February 12 I

:18:08  15 called the case.  PSC counsel, Arnold Levin, announced he was

:18:16  16 present for the plaintiffs and ready to proceed.  I asked the

:18:21  17 audience -- we had a full house at that time -- whether anyone

:18:24  18 was here for any of the defendants or any of the affiliates of

:18:27  19 the defendants.

:18:31  20           There was silence for a moment and then there

:18:34  21 looked like a flurry of activity in the back of the courtroom

:18:38  22 and Mr. Aaron Block of Alston & Bird came forward and announced

:18:44  23 that he represented BNBM, one of the Taishan defendants.  His

:18:51  24 firm had just been hired, apparently.  Unfortunately for him,

:18:56  25 he probably caught the short straw.  He was the last seat on

:19:02  1   the last flight to arrive in New Orleans that day.  He asked

:19:11  2   for a brief continuance.

:19:13  3          I took him at his word -- he is a colleague, a

:19:18  4   lawyer -- that he just got the case.  It seemed reasonable to

:19:23  5   me to give him a brief continuance, so I did.  I granted his

:19:27  6   request and set the damage hearing for March 26, 2015.

:19:36  7          Judging from the docket sheet, there was a

:19:38  8   flurry of activity after that and other attorneys were hired,

:19:44  9   some fired, some changed defendants.  In any event, it looks

:19:51  10  like we have everybody here, at least from the Taishan area of

:19:55  11  defendants, or at least most of them.

:19:59  12         We are gathered here today because of the

:20:03  13  plaintiffs' motion objecting to the right of the defendants to

:20:09  14  participate in the upcoming damage hearing.  Basically the

:20:16  15  plaintiffs take the position that the defendants are in default

:20:26  16  and that they should not be allowed to participate.

:20:30  17         I felt that I would profit from hearing oral

:20:33  18  argument on that motion and a response, so I received extensive

:20:39  19  briefs, all of which were helpful to me understanding your

:20:43  20  positions, but I always give oral argument if the parties

:20:48  21  request it, and the plaintiffs requested it.  So let me hear

:20:52  22  from the movants.

:20:55  23         MR. HERMAN:  Good morning, Judge Fallon.

:20:55  24  Russ Herman.  May it please the Court.  I'm going to give a

:21:02  25  brief background of plaintiffs' position, and then I will call

Case 2:09-md-02047-EEF-JCW Document 18509-3 Filed 03/19/15 Page 15 of 56
Case 2:09-md-02047-EEF-MBN Document 18344-1 Filed 03/25/15 Page 25 of 66

14

:21:08   1   on lead counsel, Arnold Levin.

:21:12   2           Your Honor, we -- that is, on the plaintiffs'

:21:17   3   side -- once the Knauf settlement, along with the L&W, Banner,

:21:23   4   and Interior Exterior settlements were in place and funds were

:21:32   5   being paid out, Mr. Levin and I met and we organized a task

:21:38   6   force to proceed against Taishan and affiliates.  Those folks

:21:42   7   are here.  It's Mr. Meunier, Ms. Barrios, Mr. Irpino,

:21:51   8   Mr. Longer, and Mr. Davis.  We continued to pursue, after the

:22:02   9   two Fifth Circuit arguments, the judgments, the briefing.

:22:11  10           I'm going to cite to Your Honor's opinion at

:22:14  11   2014 WL 4809520.  I'm going to separate my comments into two

:22:24  12   areas.

:22:26  13           First of all, we have received no paid judgment

:22:29  14   from Taishan, which includes postjudgment interest, prejudgment

:22:35  15   interest, costs, the *Germano* judgment, and the costs are

:22:44  16   listed.  Counsel for Taishan and the affiliates need only to

:22:52  17   consult the record.  I indicate to Your Honor that just the

:22:57  18   service in that *Germano* case exceeded some $200,000 in costs

:23:02  19   and, quite correctly, the plaintiffs, in proving the default,

:23:07  20   including deposition costs, expert costs, exceeded a million

:23:12  21   dollars just to prove up the default.

:23:20  22           Your Honor at page 7 of the opinion begins to

:23:28  23   set forth the fact determinations which show that the

:23:34  24   affiliates, in concert with Taishan, engaged in alter ego or a

:23:42  25   single enterprise, and it's clear from the facts recited that

:23:50  1    the issues of estoppel and res judicata also come into play.

:24:01  2          With *Wiltz*, *Gross*, *Germano*, and *Mitchell* all

:24:09  3    having reached jurisdiction in this Court, I want to indicate

:24:14  4    we had a phone call that Taishan or one of their entities

:24:20  5    wanted to wire judgment to our offices to be put in a trust

:24:34  6    fund, but there was no accounting with it.  After conferring

:24:40  7    with Mr. Levin and the task force at some length, we determined

:24:45  8    that the only appropriate payment of that judgment and indeed

:24:51  9    of the attorneys' fees -- and we have no indication as to

:24:55  10   whether they would be paid -- would be by check.

:25:01  11         We felt that it was necessary under the given

:25:08  12   circumstances of this particular case, for reasons which I will

:25:13  13   not at this point list because we have new counsel in the

:25:17  14   case -- and we welcome them to the table.  We felt it was

:25:22  15   important to know who was paying the funds, what's the source

:25:26  16   of the funds, who's signing the check, who's authorized to do

:25:32  17   it.

:25:34  18         The only circumstance that I will recall is that

:25:39  19   there are de-privileged documents which conclusively show not

:25:46  20   only as direct evidence, as exceptions to the hearsay rule, as

:25:54  21   admissions against interest, that Taishan really is not the

:25:58  22   principal other than part of an alter ego or single enterprise.

:26:07  23         So, Your Honor, at this point, citing directly

:26:14  24   from Your Honor's opinion at page 8:

:26:18  25         "Based upon the Court's above findings of fact,

:26:23    1    the Court concludes that Taishan, TTP, BNBM, BNBM Group, CNBM,

:26:32    2    CNBM Group constitute a single business enterprise for purposes

:26:38    3    of piercing the corporate veil and holding each of these

:26:41    4    entities liable for the conduct of their affiliated entities."

:26:50    5            The interesting thing to those of us that have

:26:54    6    been before Your Honor for eight years attempting to get relief

:26:58    7    for 4,000 homeowners, some of whom have lost their homes, some

:27:04    8    of whom have suffered bankruptcy, some of whom have had to live

:27:14    9    under undesirable circumstances, it was revealing to us that

:27:22   10    Your Honor's opinion in 2014 in September -- I believe it's

:27:35   11    September. I wrote the date down. Yes. September 26, 2014 --

:27:40   12    has been reinforced in the last two months after a fight over

:27:46   13    privileged documents.

:27:55   14            At this point, Your Honor, there are a number of

:28:02   15    matters that Mr. Levin will address. Before I sit down,

:28:10   16    though, defendants may be able, particularly Taishan, to

:28:18   17    satisfy a contempt, but they can't purge themselves of it.

:28:26   18    *Purge* is a different word. *Purge* means it's obliterated as if

:28:32   19    it never happened.

:28:37   20            We believe that before contempt is lifted,

:28:42   21    Your Honor must be satisfied -- not the PSC, not our task

:28:47   22    force, Your Honor must be satisfied -- that the funds are going

:28:51   23    to be paid. We ask that they be paid by certified check and

:28:59   24    those individuals providing the funds also provide the sources

:29:05   25    of the funds. Having an attorney's trust account issue a

Case 2:09-md-02047-EEF-MBN Document 18544-1 Filed 03/25/15 Page 28 of 66
Case 2:09-md-02047-EEF-JCW Document 18509-3 Filed 03/19/15 Page 18 of 56

17

|         |    |                                                                        |
|---------|----|------------------------------------------------------------------------|
| :29:12  | 1  | check, given the circumstances of this case, we feel is not            |
| :29:16  | 2  | warranted, nor do we feel a wire transfer going from one               |
| :29:19  | 3  | attorney's account to another satisfies this matter.                   |
| :29:25  | 4  | At this juncture I would like to have, if                              |
| :29:28  | 5  | Your Honor will permit, lead counsel Arnold Levin --                   |
| :29:33  | 6  | MR. LEVIN: If you have been here for eight years,                      |
| :29:36  | 7  | Your Honor -- I do love the man, but he leaves me very little          |
| :29:39  | 8  | to say after he has a few moments to say something, so I will          |
| :29:43  | 9  | say very little.                                                       |
| :29:45  | 10 | Your Honor, on Friday we worked very diligently,                       |
| :29:50  | 11 | last week, to give the newly engaged attorneys a road map as to        |
| :30:01  | 12 | where we are so that they at least know what we perceive to be         |
| :30:06  | 13 | the issues that have to be resolved in this litigation to get          |
| :30:12  | 14 | it started and to move and not have a repeat performance of            |
| :30:18  | 15 | four years of going to Hong Kong and taking depositions and            |
| :30:22  | 16 | establishing personal jurisdiction, which we do not need               |
| :30:26  | 17 | because we have established personal jurisdiction in the three         |
| :30:31  | 18 | basic forums of this litigation, Virginia, Louisiana, and             |
| :30:36  | 19 | Florida. Their liability, other than Taishan's liability, is           |
| :30:42  | 20 | derivative of their stalking horse, Taishan. We think we have          |
| :30:51  | 21 | alter ego proven.                                                      |
| :30:53  | 22 | We have findings as to alter ego. We have very                        |
| :30:57  | 23 | little discovery as to CNBM and BNBM, but we have enough to            |
| :31:02  | 24 | prove alter ego. Where do we go from here? We have default            |
| :31:06  | 25 | judgments in several cases against each of the major defendants        |

Case 2:09-md-02047-EEF-MBN   Document 18344-1   Filed 03/25/15   Page 29 of 66

| | | |
|---|---|---|
| :31:12 | 1 | seated on my left.  I don't think they will prevail, but I |
| :31:19 | 2 | would imagine they are engaging right now in attempting to file |
| :31:25 | 3 | papers to lift the default judgments.  They can do that.  That |
| :31:31 | 4 | will establish and put the nail in the coffin on alter ego |
| :31:37 | 5 | because they have less of a position in opening those default |
| :31:43 | 6 | judgments than Taishan had, which was reviewed by Your Honor |
| :31:45 | 7 | and a panel of the Fifth Circuit.  Just one of the panels dealt |
| :31:51 | 8 | with default judgment. |
| :31:57 | 9 | We may require discovery just as to alter ego. |
| :32:00 | 10 | Personal jurisdiction is not an issue here because they are not |
| :32:03 | 11 | the ones selling the product.  They are the ones that had |
| :32:06 | 12 | somebody sell the product on their behalf and alter ego comes |
| :32:10 | 13 | in and out. |
| :32:10 | 14 | I believe sincerely, after 50 years of |
| :32:15 | 15 | practicing law, that even paranoids have enemies.  To say the |
| :32:23 | 16 | least, I do not and we do not trust this group of defendants. |
| :32:32 | 17 | Not the attorneys.  Defendants.  They dragged us for four or |
| :32:40 | 18 | five years through litigation.  They dragged Your Honor to |
| :32:44 | 19 | Hong Kong.  They dragged us in front of the Fifth Circuit. |
| :32:51 | 20 | When we finally get close to getting relief for just a few of |
| :32:57 | 21 | the 4,000 who have judgments in excess of $2.7 million, what do |
| :33:03 | 22 | they do?  They fired their attorneys and they go back to China. |
| :33:14 | 23 | We went to work after that to find the assets. |
| :33:16 | 24 | We served 30(b)(6) depositions.  Why?  Well, we wanted to know |
| :33:21 | 25 | what's coming in on vessels to major distributors such as |

1  Target and the like so that we could go against the cargo, let

2  alone go against the vessels if we find that they are owned by

3  SASAC.

4           We attempted to sue SASAC.  There was a flurry

5  of activity in China when we did that.  The minister of justice

6  would not serve SASAC because they are China.  Everything in

7  China is China, but we are not in China.  We are here.  The

8  Foreign Sovereign Immunities Act gives us a cause of action

9  against SASAC.

10           We will prepare a motion for alternative service

11  on SASAC which will be filed shortly, but how do we make sure

12  that when the going gets tough, the tough -- with a small T for

13  China -- gets going?  Because they can do the same thing again.

14  So we ask them voluntarily to tell us where their assets are in

15  the United States.  Otherwise we would request the Court to

16  allow us to keep pursuing our chase for assets.

17           In our chase for assets during the period of

18  this contempt, we found out that they were doing business in

19  Oregon.  What do you do when you do business?  They are not

20  plaintiffs' attorneys.  They are not injured people.  They are

21  not the 4,000 people that had their homes foreclosed and went

22  into bankruptcy as a result of that client not doing what Knauf

23  did and coming in and doing the honorable thing -- *honorable*,

24  they use that word in China -- and cleaning up the mess that

25  they created, whether it was intentional or not.

| | |
|---|---|
| :35:22 | 1 |
| :35:27 | 2 |
| :35:31 | 3 |
| :35:37 | 4 |
| :35:41 | 5 |
| :35:45 | 6 |
| :35:51 | 7 |
| :35:55 | 8 |
| :35:58 | 9 |
| :36:03 | 10 |
| :36:09 | 11 |
| :36:12 | 12 |
| :36:18 | 13 |
| :36:19 | 14 |
| :36:21 | 15 |
| :36:26 | 16 |
| :36:31 | 17 |
| :36:33 | 18 |
| :36:38 | 19 |
| :36:40 | 20 |
| :36:42 | 21 |
| :36:46 | 22 |
| :36:51 | 23 |
| :36:56 | 24 |
| :37:02 | 25 |

We found them in Oregon using our court system to recover money, and we believe that they are still there in Oregon. We haven't seen the settlement agreement of that case. We know they are in Plum Creek because what we found out is when we needed drywall, we went to China. When China needed wood/timber, they went to the United States. This cabal of CNBM and BNBM were involved in all of that.

They have to give us security that they will stay here and abide by this Court, the Fifth Circuit, and the Supreme Court's rulings in this case and not go home to China as soon as they see that something is happening that they don't like. We are fearful of that and we don't want to go through that again.

We don't want to drag this litigation out for four years where new counsel come in -- and I'm not being pejorative as to new counsel because there's rules, there's 12(b) and 12(b)(2) and 12(b)(6) -- that we short-circuit this and get justice for these 4,000 homeowners, and we thought the class action was the way to do it.

Do they want to sit here for three years and bring in every one of these individual plaintiffs to come in and say, My square footage of my house is so and so? BrownGreer knows what the square footage of most of these homes are. We have already determined what it cost. Just to start at square one, we don't want that. We want to expedite this.

:37:06  1   We want to know where they are.

:37:08  2              With regard to the contempt, as Mr. Herman said,

:37:10  3   they are in contempt of Court. That's within Your Honor's

:37:13  4   province, but they have not satisfied *Germano*. There's a bill

:37:18  5   of costs. The clerk's office will come down with it just

:37:20  6   probably any week now. There's postjudgment interest. We

:37:26  7   don't see the money. Until we see the money, we can't even

:37:30  8   direct ourselves to that.

:37:32  9              THE COURT: Okay.

:37:33  10             MR. LEVIN: I think I have said enough because I have

:37:35  11  gone beyond what the issue is today, but I couldn't help

:37:38  12  myself, Your Honor.

:37:39  13             THE COURT: Thank you.

:37:40  14             Let me hear from the defendants.

:37:43  15             MR. TAYLOR: Good morning again, Your Honor. As I

:37:46  16  indicated earlier, I'm Bernard Taylor, and I want to correct

:37:49  17  one thing. I didn't get a chance to properly introduce my

:37:52  18  other partner, Christy Eikhoff, who is here with us.

:38:00  19             Your Honor, in one of the PSC's briefs -- I

:38:03  20  think it's the omnibus motion that is at Document 18475 at

:38:07  21  page 15 -- they use a quote from *Wizard of Oz* that I found

:38:13  22  amusing and clever. When I thought about where we are here in

:38:21  23  representing Taishan and where Taishan is in regards to this

:38:26  24  Court, I really looked up and thought that it would be

:38:31  25  appropriate to focus upon a more apt quote. That quote is that

| :38:35 | 1 | the true courage is facing danger when you are afraid. |
| :38:41 | 2 | Your Honor, it was fear, fear by our client, |
| :38:45 | 3 | that caused many of the issues that we are here dealing with |
| :38:49 | 4 | today.  The failure to attend the judgment debtor examination |
| :38:54 | 5 | was fear of not understanding our system of justice, our court |
| :38:59 | 6 | system, and not understanding how to maneuver through that |
| :39:03 | 7 | appropriately. |
| :39:05 | 8 | The unintended result of that fear, Your Honor, |
| :39:09 | 9 | was to show disrespect to this Court, to show disrespect to |
| :39:15 | 10 | this process, to show disrespect to the plaintiffs, and also |
| :39:20 | 11 | disrespect to the plaintiffs' attorneys.  None of that was |
| :39:25 | 12 | intended.  As a result of that, this Court issued a contempt |
| :39:29 | 13 | order that the Court has already talked about.  Our client had |
| :39:33 | 14 | dug a deep hole, a deep ditch, but our client is prepared to |
| :39:37 | 15 | walk out of that ditch and back into this litigation. |
| :39:42 | 16 | THE COURT:  Have they done anything to satisfy the |
| :39:46 | 17 | judgment? |
| :39:47 | 18 | MR. TAYLOR:  Your Honor, we are working on satisfying |
| :39:49 | 19 | the judgment.  There are issues in China that we have to work |
| :39:54 | 20 | through in order to get the money transferred from China to |
| :39:58 | 21 | here.  We have commitments from our client to pay the full |
| :40:02 | 22 | amount of the judgment. |
| :40:02 | 23 | As Mr. Levin indicated, there is the issue of |
| :40:07 | 24 | court costs and attorney's fees that we would need to talk to |
| :40:13 | 25 | the PSC about that so we can get that resolved and then that |

23

:40:18  1    will be paid, but immediately -- and by "immediately" I mean we

:40:22  2    are working through the process.

:40:24  3              THE COURT:  Would you guarantee it, as a firm, that

:40:26  4    they will pay?

:40:28  5              MR. TAYLOR:  Well, I can guarantee, Your Honor, that

:40:30  6    it has been fully represented to us by our client that they

:40:34  7    will pay.

:40:36  8              THE COURT:  See, they did that before, though.

:40:37  9    That's the problem I have.

:40:38  10             MR. TAYLOR:  Can I raise one other point, Your Honor?

:40:41  11   I can guarantee also that they have already begun the process

:40:45  12   of making those payments.  The fact is we have already received

:40:50  13   some money, and they are trying to work through getting the

:40:53  14   rest of the money into the U.S. so that we can pay the full

:40:58  15   amount.

:40:58  16             We think that's going to happen fairly quickly,

:41:00  17   and I understand the Court's concern about that.  If that is

:41:05  18   the Court's concern, what we would ask the Court is to give us

:41:11  19   time to make that happen.  Then we can agree on whatever the

:41:17  20   Court says is that time, and we will work hard to make sure we

:41:21  21   make it happen at the same time as we confer with the court

:41:26  22   clerk and with the PSC attorneys on the amount of the

:41:31  23   attorneys' fees and the court costs that's due.

:41:39  24             So, Your Honor, the PSC and this Court, as you

:41:41  25   have indicated and as Mr. Levin has indicated, has said that we

| | | |
|---|---|---|
| :41:46 | 1 | cannot participate in this litigation unless and until we purge |
| :41:51 | 2 | ourselves of the contempt.  Your Honor, we have paid the |
| :41:55 | 3 | penalty, as the Court knows.  We have already communicated with |
| :41:59 | 4 | the PSC attorneys regarding the method for paying them the |
| :42:05 | 5 | $15,000 in attorneys' fees.  Obviously today we are here to |
| :42:10 | 6 | participate. |
| :42:11 | 7 | What we are also willing to do -- and some folks |
| :42:15 | 8 | may refer to this as lagniappe, which I understand is a term |
| :42:19 | 9 | that you all use down here, but it's more than that, it's |
| :42:22 | 10 | substantive -- is to compensate the Morgan family, the Baldwin |
| :42:26 | 11 | family, the Leach family, the Orlando family, the Michaux |
| :42:30 | 12 | family, the McKellar family, and the Heischober family, the |
| :42:37 | 13 | *Germano* plaintiff families, by satisfying that judgment and |
| :42:39 | 14 | allowing them to move on with their lives, and we have |
| :42:44 | 15 | committed to do that. |
| :42:51 | 16 | Your Honor, the PSC's motion to preclude is both |
| :42:58 | 17 | moot and unconstitutional.  It's moot because, as we have |
| :43:03 | 18 | indicated here, we have complied with the terms of the Court's |
| :43:07 | 19 | contempt order, and we have gone beyond that by indicating that |
| :43:12 | 20 | we will also pay the judgment. |
| :43:14 | 21 | It's also unconstitutional because what they are |
| :43:18 | 22 | trying to do is to prevent us from defending ourselves in a |
| :43:26 | 23 | situation where they are attempting to obtain, to attach our |
| :43:32 | 24 | property, to get us to pay additional amounts of the judgment, |
| :43:38 | 25 | and defend ourselves against the damages that are in the |

25

:43:42 1  underlying lawsuit, the class action where they are asking for

:43:49 2  $1.2 billion or $1.3 billion.

:43:53 3           Your Honor, we cited to the Court the cases and

:43:57 4  the Court has already indicated that it has read our briefs.

:44:02 5  Reading our briefs, the Court knows that in the *Hovey* case and

:44:06 6  in the *Bonilla* case, which is at page 8 of our briefing, it

:44:14 7  states that "a defaulting defendant is entitled to contest

:44:19 8  damages and to participate in a hearing on damages."  So

:44:23 9  constitutionally they cannot preclude us from participating

:44:28 10  fully, aggressively, and totally in the damages phase of this

:44:34 11  case, Your Honor.

:44:36 12           Your Honor, Justice Kennedy in the *Degen* case,

:44:39 13  citing back to *Hovey*, basically concluded that to prevent a

:44:47 14  defendant from participating in the damages phase is

:44:50 15  unconstitutional, but it's also rough justice, and rough

:44:55 16  justice would not be tolerated by the Supreme Court.  We

:45:00 17  request that it not be tolerated by this Court.

:45:04 18           Your Honor, the issue of additional attorneys'

:45:08 19  fees that counsel spent a good bit of time talking about today,

:45:14 20  we contend -- and the Court supports us -- that any request for

:45:20 21  additional attorneys' fees requires another proceeding for the

:45:25 22  Court to look at that particular issue and decide whether or

:45:28 23  not those fees are appropriate, for the Court to decide whether

:45:33 24  or not we have indeed violated the Court's order in any way,

:45:37 25  shape, or form, because, Your Honor, we would have purged

:45:41    1    ourself of the underlying contempt order, met all of their

:45:47    2    requirements. Therefore, under those circumstances, if they

:45:50    3    are contending that there was a subsequent violation of some

:45:54    4    kind, they would have to ask this Court to convene a new

:46:00    5    proceeding for us to be able to defend ourselves in that

:46:03    6    proceeding.

:46:05    7         Your Honor, I'm prepared to respond to any

:46:07    8    questions the Court may have.

:46:08    9        THE COURT: No. Let me hear from your other

:46:11   10    colleagues.

:46:21   11        MR. BARR: Good morning, Your Honor. Michael Barr,

:46:21   12    as I stated earlier, on behalf of BNBM, PLC and BNBM Group. I

:46:33   13    want to thank the Court for the opportunity for us to appear

:46:35   14    before you in this matter and to address what is the sole

:46:36   15    motion before the Court today, which is to preclude

:46:38   16    participation not only by the Taishan defendants but also by my

:46:42   17    clients, who are separate corporations, to participate in the

:46:46   18    damages hearing that the Court has set. Your Honor, there are,

:46:49   19    respectfully, five different reasons, and each and every one of

:46:53   20    them suffice for Your Honor to deny the motion that is before

:46:56   21    you, and that is the sole motion that is before you today.

:47:00   22        First of all, as Mr. Taylor has described as a

:47:03   23    matter of due process, we are entitled to participate in that

:47:06   24    hearing. We have cited authority in our brief not only with

:47:09   25    respect to the *Hovey* case but also additional authority that

| | 1 | both indicates, number one, that the issue of the right to |
|---|---|---|
| :47:13 | 1 | both indicates, number one, that the issue of the right to |
| :47:15 | 2 | participate in a damages hearing applies equally to a defaulted |
| :47:20 | 3 | defendant and, for that matter, also applies equally even to a |
| :47:24 | 4 | defaulted defendant found in contempt. |
| :47:27 | 5 | Your Honor, with respect to my clients, the |
| :47:30 | 6 | issues are different and additional. First of all, the Court's |
| :47:35 | 7 | contempt order was directed solely against Taishan. The remedy |
| :47:39 | 8 | Your Honor provided with respect to the 25 percent of profits |
| :47:42 | 9 | may have spoken more broadly, but Your Honor's order could not |
| :47:47 | 10 | have been clearer stating that the Court holds Taishan in |
| :47:50 | 11 | contempt of Court both criminally and civilly. There is no |
| :47:56 | 12 | reference to any of the other defendants that are here today. |
| :47:59 | 13 | Furthermore, that contempt order was entered in |
| :48:04 | 14 | the *Germano* case and my clients, BNBM Group and BNBM, PLC, were |
| :48:06 | 15 | not parties in that case, so they could not have been held in |
| :48:08 | 16 | contempt. Since they were not parties to that case, they could |
| :48:11 | 17 | not have had the opportunity to be heard with respect to any |
| :48:14 | 18 | attempt to impose contempt on them. |
| :48:17 | 19 | Respectfully, the references made in the omnibus |
| :48:20 | 20 | brief that they filed last Friday, where they are attempting to |
| :48:23 | 21 | try to bootstrap subsequent rulings in order to create contempt |
| :48:29 | 22 | against my clients, does not suffice as a matter of law, does |
| :48:32 | 23 | not give us that opportunity to be heard and, respectfully, |
| :48:36 | 24 | should be denied. |
| :48:39 | 25 | Further, Your Honor what we have heard a lot |

Case 2:09-md-02047-EEF-JCW   Document 18509-3   Filed 03/19/15   Page 29 of 56
Case 2:09-md-02047-EEF-MBN   Document 18544-1   Filed 03/25/15   Page 39 of 66

28

1    about today with respect to all the other defendants here other

2    than Taishan, referencing issues in terms of piercing the

3    corporate veil and again trying to bootstrap that claim of

4    contempt to apply to other parties beyond Taishan based upon

5    Your Honor's subsequent ruling with respect to alter ego

6    issues, Your Honor, that does not create contempt against my

7    client.  That does not create an opportunity for them to try to

8    extend the Court's ruling.  Respectfully, that does not provide

9    a basis to preclude us from participating.

10           First of all, as I stated, Your Honor, your veil

11   piercing ruling did not exist at the time of the contempt order

12   and, therefore, it could not have been intended as part of the

13   contempt order to apply beyond Taishan.

14           Even more importantly -- and, Your Honor, this

15   is an issue we will have to address with the Court subsequently

16   and would want the opportunity to brief and address it, both

17   with respect to the facts and the law -- is that the sole basis

18   of Your Honor's findings in the class action decision on

19   September 26 were based upon the deemed admissions because of

20   Taishan's failure to respond to requests to admit.

21           Looking at Your Honor's decision beginning on

22   paragraph 28 of that decision and going forward, which were the

23   predicate holdings for Your Honor's finding, every single one

24   of them specifically states that the basis for those factual

25   findings, whether requests for admission and the fact that they

| | | |
|---|---|---|
| :50:09 | 1 | were not responded to, were deemed admissions.  Your Honor, |
| :50:14 | 2 | under binding Fifth Circuit authority, those findings cannot be |
| :50:18 | 3 | applied to us with respect to their deemed admissions.  They |
| :50:21 | 4 | only apply with respect to Taishan, not with respect to us. |
| :50:23 | 5 | We will at an appropriate time, Your Honor, |
| :50:26 | 6 | according to Your Honor's schedule, provide the Court with the |
| :50:29 | 7 | facts that address piercing the corporate veil, with the facts |
| :50:33 | 8 | that address personal jurisdiction, with the specific facts |
| :50:36 | 9 | that deal with our clients and our clients' roles in these |
| :50:40 | 10 | proceedings.  We do want to address those issues at an |
| :50:46 | 11 | appropriate time with the Court, we have preserved our defenses |
| :50:50 | 12 | in that regard, but we are not here seeking any delay in this |
| :50:53 | 13 | Court's proceedings. |
| :50:55 | 14 | The issue before the Court today is whether we |
| :50:57 | 15 | are allowed to participate in the hearing that the Court will |
| :51:00 | 16 | schedule and any other proceedings relating to the assessment |
| :51:03 | 17 | of damages.  Respectfully, Your Honor, based upon the existing |
| :51:08 | 18 | orders of this Court, the Supreme Court authority with respect |
| :51:09 | 19 | to the due process rights, the lack of our participation |
| :51:13 | 20 | before, we should be entitled and found to be entitled to |
| :51:16 | 21 | participate in those hearings.  Thank you, Your Honor. |
| :51:18 | 22 | **THE COURT:**  Thank you very much. |
| :51:20 | 23 | Who is next? |
| :51:23 | 24 | **MR. STENGEL:**  Your Honor, just briefly, Jim Stengel |
| :51:24 | 25 | for CNBM and CNBM Group.  We will stand on the briefing and the |

Case 2:09-md-02047-EEF-JCW Document 18509-3 Filed 03/19/15 Page 31 of 56
Case 2:09-md-02047-EEF-MBN Document 18594-1 Filed 03/25/15 Page 41 of 66

30

:51:27   1    able argument that has been presented to you.  Thank you.

:51:31   2              THE COURT:  Okay.  Fine.

:51:32   3              Let me hear a response just briefly, though, if

:51:33   4    you would.

:51:33   5              MR. HERMAN:  I'll briefly respond.  I will take part,

:51:35   6    may it please Court, and Mr. Levin will take part.

:51:41   7              In this country I thought we have nothing to

:51:44   8    fear but fear itself.  I don't find that fear of a judgment

:51:50   9    debtor rule after this litigation to be any plausible excuse

:51:58  10    for violating Court orders.  I'm not even sure how you can even

:52:05  11    pull that amorphous metaphor out of some ether and apply it in

:52:13  12    this case.

:52:16  13              CNBM, BNBM, they are not new defendants.  They

:52:21  14    were served in The Hague many years ago and declined to

:52:27  15    participate.

:52:30  16              Due process, unfortunately, the way that

:52:34  17    defendants, particularly the People's Republic of China and

:52:41  18    these dominated business single enterprises, apply due process

:52:47  19    is to say, "We don't care if you get a judgment in the

:52:50  20    United States.  We are not going to enforce it in China."  I

:52:55  21    don't know what kind of process that is.  It's certainly alien

:53:02  22    to all constitutional rights that these 4,000 folks have to

:53:07  23    proper redress.  CNBM and BNBM have been aligned with Taishan

:53:17  24    since inception.

:53:20  25              This argument about a Supreme Court case that's

Case 2:09-md-02047-EEF-JCW Document 18509-3 Filed 03/19/15 Page 32 of 56
Case 2:09-md-02047-EEF-MBN Document 18544-1 Filed 03/25/15 Page 42 of 66

31

| | |
|---|---|
| :53:23 | 1 | not applicable here, where you are invited for years to |
| :53:28 | 2 | participate and you refuse, certainly is not akin to the |
| :53:39 | 3 | Supreme Court ruling I have cited. |
| :53:44 | 4 | The idea that we are working through how to pay |
| :53:53 | 5 | contempt orders, what do you have to work through to pay a |
| :53:57 | 6 | $15,000 attorneys' fee, what arcane movement? Maybe it's not |
| :54:04 | 7 | arcane. Maybe it's, as we argued to the Court some five years |
| :54:09 | 8 | ago, that Taishan was controlled up the line. We introduced |
| :54:16 | 9 | evidence and affidavits of their multiple control and |
| :54:22 | 10 | participation, and the Court properly ruled at that time we are |
| :54:27 | 11 | not going to allow up-the-line discovery per se at this |
| :54:35 | 12 | juncture, but it was reserved. |
| :54:39 | 13 | What I haven't heard and what really is of great |
| :54:48 | 14 | concern is are the defendants now claiming that this Court has |
| :55:02 | 15 | jurisdiction or are we to go through this mechanical process, |
| :55:08 | 16 | which isn't warranted and which denies 4,000 folks due process, |
| :55:14 | 17 | to be told after we take more depositions, have more hearings, |
| :55:23 | 18 | offer more proof that, "Well, the Court has no jurisdiction," |
| :55:31 | 19 | and then we end up in the Fifth Circuit again? |
| :55:38 | 20 | I'm not very good at forecasting what appellate |
| :55:47 | 21 | courts will do, but based on history, even after these 4,000 |
| :55:59 | 22 | folks are confirmed, China still adopts the attitude that they |
| :56:08 | 23 | don't have to pay, they are not going to enforce a judgment. |
| :56:12 | 24 | The last thing I want to indicate to the Court |
| :56:17 | 25 | is the Court may recall that when this Honorable Court went to |

Case 2:09-md-02047-EEF-JCW   Document 18509-3   Filed 03/19/15   Page 33 of 56
Case 2:09-md-02047-EEF-MBN   Document 18544-1   Filed 03/25/15   Page 43 of 66

32

:56:21   1   China to monitor a deposition, there was some concern about

:56:27   2   whether a deponent put forth by Taishan had veracity in what

:56:41   3   that individual was saying, and we challenged repeatedly that

:56:48   4   the markings of compliance with safety codes and ASTMs were

:56:54   5   manufactured, that those stamps were manufactured.  Very

:56:57   6   recently the head of a factory in China manufacturing

:57:06   7   floorboard sent to the United States admitted that they lie

:57:12   8   when they affixed a safety monogram to the flooring that they

:57:26   9   sent to the United States.

:57:27   10   So my biggest concern is that we are going to be

:57:32   11   tied up for four years and not once have I heard -- I know it's

:57:36   12   in the background that these defendants want full process in

:57:42   13   the United States courts, but they don't admit jurisdiction.

:57:46   14   THE COURT:  Let me hear your response briefly.

:57:53   15   MR. LEVIN:  Some newly arrived individuals to this

:57:57   16   forum may wonder what Jerry Meunier is doing here.  He

:58:02   17   whispered in my ear and I will repeat:  If ignorance of the law

:58:08   18   is no excuse, how could fear of the law be an excuse?  That's

:58:17   19   very apropos to what's here.

:58:23   20   Your Honor, to cut through everything that's

:58:27   21   been said, until they move to open up a default judgment, we

:58:31   22   have alter ego, single enterprise liability, and we await that.

:58:41   23   The contempt has to be properly satisfied, not

:58:48   24   promises from China, not the money hasn't gotten out of China.

:58:53   25   We know a little bit about Chinese law because we know a little

Case 2:09-md-02047-EEF-JCW Document 18509-3 Filed 03/19/15 Page 34 of 56
Case 2:09-md-02047-EEF-MBN Document 18594-1 Filed 03/25/15 Page 44 of 66

33

1    bit about the Chinese secrecy act, which was raised by Knauf in

2    the deposition of Mark Norris in Hong Kong, but we don't want

3    to delay compensation for our clients.

4         If they can appear at the damage aspects of the

5    class certification hearing and partake in the class

6    certification hearing on the state of the record as it now

7    exists, we have no problem if they appear next Thursday, listen

8    to what we have to say, and then say what they have to say, but

9    those damages in *Germano* were tried.  They are aligned with

10   Taishan.  Taishan was aligned, at least with the proofs, with

11   Knauf.

12        These damages are a mathematical formula.  It's

13   a question of arithmetic, and the case law is such that it's

14   easy to present arithmetic to lawyers and judges.  Even we who

15   are not mathematicians know how to add and subtract.  So next

16   Thursday they can be here.  They have already our proposed

17   findings of fact.  They can prepare from it and make an

18   argument.  We don't want these 4,000 people who have gone

19   through four or five, six, eight years to have to go through

20   four more years and be tortured as if they haven't been

21   tortured already.

22        We can't lose sight of the fact that Taishan

23   caused the *Germano* plaintiffs to lose their homes, suffer

24   foreclosure, and suffer bankruptcy because they say they didn't

25   understand the law when the record, the privileged documents

Case 2:09-md-02047-EEF-JCW Document 18509-3 Filed 03/19/15 Page 25 of 56
Case 2:09-md-02047-EEF-MBN Document 18944-1 Filed 03/25/15 Page 49 of 66

34

| | | |
|---|---|---|
| :00:53 | 1 | show that counsel from Taishan was talking to CNBM and BNBM and |
| :00:59 | 2 | they were privy to the decisions, CNBM and BNBM, that Taishan |
| :01:04 | 3 | made to walk away from these proceedings. Thank you, |
| :01:07 | 4 | Your Honor. |
| :01:08 | 5 | THE COURT: Thank you very much. I have read the |
| :01:10 | 6 | briefs. I understand the issue. I appreciate the comments of |
| :01:13 | 7 | counsel. Let me tell you the way I see it. |
| :01:16 | 8 | There are three issues in this case as I see it. |
| :01:19 | 9 | First, the contempt issue. TG and TTP are still in contempt of |
| :01:29 | 10 | Court. Here present counsel I have respect for and confidence |
| :01:39 | 11 | in indicates that they intend to pay. While I believe him, I |
| :01:48 | 12 | have a problem with this defendant, obviously, because this is |
| :01:53 | 13 | a defendant who refused to participate and thumbed its nose at |
| :01:59 | 14 | the Court. |
| :02:01 | 15 | I understand it's a foreign individual. |
| :02:03 | 16 | Sometimes they may not understand our law, but that's why they |
| :02:07 | 17 | hire good lawyers. They had a very fine firm prior to this |
| :02:12 | 18 | representing them, advising them, and they have no excuse for |
| :02:19 | 19 | their conduct. |
| :02:21 | 20 | The contempt order had four parts. First, they |
| :02:25 | 21 | had to pay the judgments in the *Germano* cases, some |
| :02:31 | 22 | 200-some-odd thousand dollars, plus prejudgment interest of |
| :02:35 | 23 | 100-some-odd thousand dollars, plus now postjudgment interest. |
| :02:39 | 24 | They had to pay a penalty of $40,000, which I understand that |
| :02:42 | 25 | they put in the registry of the Court. They had to pay the |

Case 2:09-md-02047-EEF-JCW  Document 18509-3  Filed 03/19/15  Page 36 of 56
Case 2:09-md-02047-EEF-MBN  Document 18344-1  Filed 03/25/15  Page 46 of 66

35

|      |    |                                                                          |
|------|----|--------------------------------------------------------------------------|
| :02:45 | 1  | attorneys' fees of $15,000.                                             |
| :02:48 | 2  | Also, I enjoined them as well as their                                  |
| :02:54 | 3  | affiliates from doing business in the United States until they          |
| :03:02 | 4  | did what they had to do; and if they did business in the                |
| :03:06 | 5  | United States or their affiliates did business in the                   |
| :03:09 | 6  | United States, they had to forfeit 25 percent of the earnings.          |
| :03:14 | 7  | At the present time, as I mentioned, it looks                           |
| :03:16 | 8  | like they have paid $40,000 into the registry of the Court.             |
| :03:21 | 9  | They haven't paid the $15,000 attorneys' fees, they haven't             |
| :03:24 | 10 | paid anything on the judgment, and there's total silence on the         |
| :03:29 | 11 | 25 percent.  I don't know whether they have done business or            |
| :03:33 | 12 | whether their affiliates have done business or not.  To me it's         |
| :03:38 | 13 | clear that TG and TTP can't participate while they are in               |
| :03:43 | 14 | contempt.                                                               |
| :03:44 | 15 | Now, I also think it's fair to give the attorney                        |
| :03:50 | 16 | two weeks to get them to have it paid.  So I'm going to                  |
| :03:56 | 17 | instruct them to fully pay the judgment, the attorneys' fees,           |
| :04:03 | 18 | the $40,000, and court costs within the two-week time.  They            |
| :04:15 | 19 | have had since July 17, 2014, to do what the Court ordered them         |
| :04:24 | 20 | to do.  They haven't done it.                                           |
| :04:26 | 21 | Now, with regard to the 25 percent, that to me                          |
| :04:34 | 22 | is going to depend upon whether Taishan, TTP, parents or                |
| :04:40 | 23 | affiliates have done business in the United States.  If so, how         |
| :04:47 | 24 | much have they earned?  This may be factually pregnant and              |
| :04:54 | 25 | require some discovery.  I'm going to instruct Taishan to               |

:04:59   1   willingly participate in the discovery of this matter.  If they

:05:05   2   don't participate in the discovery, I'm going to strike their

:05:11   3   defenses and rule accordingly.

:05:15   4           The second issue, as I see it, is a relationship

:05:17   5   between CNBM and BNBM on the one hand and TG and TTP on the

:05:26   6   other.  I think the relationship is important to determine

:05:29   7   whether they are affiliates or whether they are alter egos of

:05:34   8   TG and TTP.

:05:37   9           There may be some factual dispute here.  It may

:05:42  10   be necessary for the plaintiffs to take depositions.  If they

:05:47  11   look at their material and they find that the material is not

:05:53  12   necessarily admissible or that they need to go further, they

:05:56  13   ought to be able to take depositions of the BNBM people and the

:06:03  14   CNBM people.

:06:06  15           I'm going to look to BNBM and CNBM to willingly

:06:12  16   participate in that discovery.  If they don't, that to me means

:06:18  17   that they should not participate in this litigation and I will

:06:23  18   act accordingly.  This relationship, whether it exists or not,

:06:30  19   will determine the applicability of res judicata and/or

:06:33  20   collateral estoppel.  It will also determine the scope of the

:06:42  21   contempt order.

:06:45  22           If they have a relationship, the scope of the

:06:59  23   hearing will to some extent be connected to that, but the

:07:12  24   hearing that I'm looking to have is really the hearing on

:07:19  25   damages.  That's what is before the Court, damages.  I think

Case 2:09-md-02047-EEF-JCW Document 18502-1 Filed 03/19/15 Page 38 of 56
Case 2:09-md-02047-EEF-MBN Document 18594-1 Filed 03/25/15 Page 48 of 66

37

1     that there may be some factual question as to how many homes

2     you're dealing with in this particular case, and that may be

3     something that BNBM or Taishan is willing to examine and deal

4     with.

5           The hearing, as I say, will be on damages.  I

6     think that it's fair, however, for the parties to have some

7     time to discover the relationship between BNBM and CNBM.  I

8     think five weeks is sufficient to do that.

9           I'm going to instruct the parties to meet and

10    confer, for the plaintiffs to tell the defendants who they want

11    to depose, and for the defendants to produce those individuals.

12    I will reserve my right to determine whether a bond should be

13    put up before allowing participation.  I will also determine

14    who has a right to participate, and I will be guided to some

15    extent by the willingness of the defendants to cooperatively

16    participate in this discovery process.

17          So I'm going to reschedule the hearing on

18    damages for approximately five weeks hence.  I will put in a

19    minute entry the date of the hearing at a time when I'm not in

20    trial.  If I am in trial, I will take a break for a day and

21    handle this matter.

22          I'm going to move this case, folks.  These

23    individuals, the claimants, have been, many of them, out of

24    their homes for a long time.  Some of these individuals have

25    been and, as far as I know, still are living in tents in their

| | | |
|---|---|---|
| :09:59 | 1 | backyard because they can't abandon the house.  If they abandon |
| :10:05 | 2 | the house, their insurers have told them that they are going to |
| :10:10 | 3 | cancel their fire insurance.  So they live in the backyard and |
| :10:15 | 4 | run in and out of the house to use the bathroom facilities. |
| :10:20 | 5 | That's not fair to these folks.  It's about 4,000 of them out |
| :10:27 | 6 | there, and we have to get some resolution.  So I urge you all |
| :10:32 | 7 | to cooperate. |
| :10:35 | 8 | Anything from the parties? |
| :10:38 | 9 | MR. TAYLOR:  Yes.  Your Honor, tomorrow we have a |
| :10:44 | 10 | date when we are to file some briefing in regards to the |
| :10:48 | 11 | damages, and we have some fairly comprehensive briefing that we |
| :10:51 | 12 | wanted to file.  I assume the Court still wants us and will |
| :10:54 | 13 | allow us to file that briefing tomorrow? |
| :10:56 | 14 | THE COURT:  Well, don't file it for two weeks. |
| :11:02 | 15 | Satisfy the judgments first, pay the court costs, pay the |
| :11:08 | 16 | penalties, and then I will entertain a request to file a brief. |
| :11:12 | 17 | MR. TAYLOR:  Thank you, Your Honor. |
| :11:14 | 18 | MR. HERMAN:  Your Honor, I just want to address two |
| :11:16 | 19 | matters.  I'm not certain that learned counsel for Taishan |
| :11:23 | 20 | understands that with regard to the four settlements that were |
| :11:29 | 21 | paid, those claimants paid no attorneys' fees.  Here, in |
| :11:35 | 22 | *Germano*, there's no provision for attorneys' fees.  Your Honor |
| :11:39 | 23 | might want to issue an order saying there will be no attorneys' |
| :11:44 | 24 | fees or however Your Honor appreciates that. |
| :11:51 | 25 | Secondly, Your Honor, we are willing today, |

| | |
|---|---|
| :11:53 | 1 |
| :11:56 | 2 |
| :12:01 | 3 |

1  since counsel are here, to meet all day to see if they have

2  some things they would like to resolve because five weeks is a

3  short time.

4      We will be filing motions in connection with the

5  30(b)(6) depositions in which we request that representatives

6  of BNBM and CNBM appear here in the United States, in a

7  courtroom somewhere in this building, so that discovery that

8  plaintiffs have to do are not going to be exorbitant costwise

9  and we are not going to be faced without having rulings as

10  these depositions are taken.

11      THE COURT:  File a motion and I will deal with it.

12      MR. MILLER:  Good morning, Your Honor.  Kerry Miller

13  on behalf of Knauf.  I've been in the back of the courtroom

14  listening.  I understand Your Honor wants to have basically a

15  five-week schedule on the issue of class damages.

16      Your Honor, since new counsel -- I haven't met

17  any of these gentlemen who have appeared, but I have received

18  phone calls and e-mails from some of their colleagues over the

19  last two weeks -- have appeared in the litigation and appeared

20  to want to engage on the issue of damages, I received a number

21  of requests for information, either in my capacity as defense

22  liaison counsel or in my capacity as counsel for Knauf.

23      Knauf, my office, has a lot of information on

24  damages.  BrownGreer has a lot of information on damages.

25  Your Honor, in light of the contempt order, my response has

Case 2:09-md-02047-EEF-JCW Document 18509-3 Filed 03/19/15 Page 41 of 56
Case 2:09-md-02047-EEF-MBN Document 18544-1 Filed 03/25/15 Page 51 of 66

40

1    been I can't provide that information as defense liaison

2    counsel.

3              Secondly, Your Honor, in my capacity as Knauf's

4    counsel, my client has instructed me not to provide any

5    information to Taishan or any of its affiliates because of the

6    damages that these parties caused my client.

7              So if there's going to be a five-week discovery

8    schedule for damages, I would like to get some guidance from

9    the Court as to what the Court's expectations are of me in

10   terms of providing that information as liaison counsel.

11   Secondly, I wanted to advise the Court of my client's

12   instruction to me not to provide that information, certainly

13   not to provide it for free, to these requests, Your Honor.

14             THE COURT:  Okay.  Well, you ought to meet and confer

15   with them and see what they want, and then I will deal with the

16   costs as well other matters.

17             MR. LEVIN:  Your Honor, in order to complete the

18   discovery within five weeks, we will deliver informally a

19   letter to counsel for the defendants with an abbreviated --

20   abbreviated -- list of documents that we need translated from

21   Chinese into English so that we are prepared to go forward in

22   this five-week compressed time.

23             We appreciate the fact that you have given us

24   only five weeks because time is very important to our clients,

25   but we do need some documents before we can get involved in

Case 2:09-md-02047-EEF-JCW Document 18509-1 Filed 03/19/15 Page 42 of 66
Case 2:09-md-02047-EEF-MBN Document 18304-1 Filed 03/23/15 Page 52 of 66

41

1  that.  What I suggest is we will regroup, we will give the

2  defendants a list of what we need, and then we will talk about

3  that list on Thursday.

4          If that's okay?

5          MR. TAYLOR:  We will talk.

6          Your Honor, just one other thing, and I hate to

7  keep jumping up.

8          THE COURT:  That's all right.

9          MR. TAYLOR:  I understood that counsel for the PSC

10  indicated that they wanted to have -- this is Bernard Taylor,

11  I'm sorry -- depositions of the Taishan defendants to occur

12  here, and I didn't understand that the Court had ordered that.

13  That may be of some difficulty to get everybody here, of

14  course, in a five-week period of time.  It would be much

15  easier, I think, if we are going to pursue this discovery, to

16  take the depositions as was done before, in Hong Kong or

17  somewhere like that, so we can easily get the deponents to the

18  deposition.

19          THE COURT:  Well, the problem is twofold:  One is

20  time and the second is cost.  It's not fair to stick the

21  plaintiffs with costs, for sure.  To me, the problem that I

22  have faced before is that there are often disputes and

23  difficulties in these depositions that require some

24  supervision, and I'm not able to go back to Hong Kong.  I'm

25  just not able to do that.  I'm able to be here and participate

| | |
|---|---|
| :16:20 | 1 |

in it if either one of you all need me.

       We are at a point here where your client is in contempt of Court. They really are. Whether they are afraid or whether they don't know or whether they don't speak the language or whatever it is, they are in contempt of Court, and they have been in contempt of Court since July.

       MR. TAYLOR: Correct.

       THE COURT: It's unfair for them to ask me at this time, when they are in contempt of Court, to do them a favor. It's just not fair.

       MR. TAYLOR: I understand.

       THE COURT: I'm a reasonable person. I walked in your shoes for 30-some-odd years as a litigator.

       MR. TAYLOR: I understand.

       THE COURT: I know the problems you have, but it's not fair to me.

       MR. TAYLOR: We appreciate that, Your Honor.

       One other point, and I'm probably treading on dangerous ground to raise this. The costs that plaintiffs have indicated for translating the documents from Chinese to English, is the Court ordering that we cover that cost?

       THE COURT: No. I'm talking about the court costs in connection with these cases. The other costs, that may be something that I can deal with, but I'm not concerned about that at this time. At this point I have issued a judgment in

| | | |
|---|---|---|
| :17:41 | 1 | cases, 200-plus thousand dollars, plus prejudgment interest, |
| :17:47 | 2 | postjudgment interest, plus court costs in those cases, and I |
| :17:52 | 3 | get nothing but silence. |
| :17:56 | 4 | MR. TAYLOR:  We understand, Your Honor.  We |
| :17:58 | 5 | understand, Your Honor, we need to establish credibility with |
| :18:00 | 6 | this Court, and we are working on that. |
| :18:02 | 7 | THE COURT:  Now, I'm going to also set up a telephone |
| :18:05 | 8 | conference with you all in about three weeks to see where we |
| :18:08 | 9 | are. |
| :18:09 | 10 | MR. TAYLOR:  Thank you, Your Honor. |
| :18:11 | 11 | MR. BARR:  Your Honor, if I may just speak from here |
| :18:13 | 12 | rather than up to the podium? |
| :18:15 | 13 | THE COURT:  Sure. |
| :18:16 | 14 | MR. BARR:  We also were under, at least currently, |
| :18:18 | 15 | the Court's direction to file with respect to damages by |
| :18:22 | 16 | tomorrow.  Am I to take it that likewise we should wait that |
| :18:27 | 17 | period of time and then file thereafter? |
| :18:29 | 18 | THE COURT:  Yes. |
| :18:30 | 19 | MR. BARR:  Thank you. |
| :18:33 | 20 | MR. STENGEL:  Your Honor -- |
| :18:35 | 21 | THE COURT:  The same. |
| :18:35 | 22 | MR. STENGEL:  Another question.  CNBM Group and |
| :18:38 | 23 | Limited will have jurisdictional objections.  We have no wish |
| :18:42 | 24 | to delay the proceedings.  We are willing to work with |
| :18:44 | 25 | plaintiff to find a way we can proceed.  That creates a problem |

Case 2:09-md-02047-EEF-JCW   Document 18509-3   Filed 03/19/15   Page 45 of 56
Case 2:09-md-02047-EEF-MBN   Document 18544-1   Filed 03/25/15   Page 55 of 66

44

:18:48   1   with us to voluntarily present witnesses in the case.  We may

:18:52   2   need a Court order.

:18:54   3          THE COURT:  I'll give you a Court order.  If you

:18:57   4   don't participate, I'm just going to strike your pleadings.

:19:01   5   You have to participate in discovery.  If not, then I have a

:19:06   6   duty and responsibility just to strike it.  You can't

:19:09   7   participate and not participate.  Reserve whatever you want to

:19:14   8   reserve, that's one thing.  I will give you a Court order if

:19:22   9   that's necessary.

:19:24   10         MR. STENGEL:  Understood, Your Honor.  Thank you.

:19:26   11         THE COURT:  Folks, thank you very much.

:19:29   12         THE DEPUTY CLERK:  All rise.

:19:31   13         (Proceedings adjourned.)

:19:30   14                        * * *

15                     <u>CERTIFICATE</u>

16         I, Toni Doyle Tusa, CCR, FCRR, Official Court

17   Reporter for the United States District Court, Eastern District

18   of Louisiana, certify that the foregoing is a true and correct

19   transcript, to the best of my ability and understanding, from

20   the record of proceedings in the above-entitled matter.

21

22

23         <u>*s/ Toni Doyle Tusa*</u>
           Toni Doyle Tusa, CCR, FCRR
24         Official Court Reporter

25

$1 [1] 23/9
$1.3 [1] 25/2
$1.3 billion [1] 25/2
$15,000 [5] 10/13 24/5 31/6 35/1 35/9
$2 [1] 9/21
$2 million [1] 9/21
$2,609,129.99 [1] 6/23
$2.7 [1] 18/21
$2.7 million [1] 18/21
$200,000 [1] 14/18
$40,000 [4] 10/12 34/24 35/8 35/18

**1**
10 [1] 6/24
100-some-odd [1] 34/23
1000 [1] 2/5
10019 [1] 2/17
11 [1] 6/21
12 [5] 12/12 12/14 20/17 20/17 20/17
1201 [1] 1/22
1221 [1] 2/5
14 [2] 6/12 11/21
15 [1] 21/21
16 [1] 6/23
17 [4] 1/7 3/2 9/8 35/19
18475 [1] 21/20
1900 [1] 2/8
19106 [1] 1/18

**2**
200-plus [1] 43/1
200-some-odd [1] 34/22
2000 [2] 2/8 2/14
2005 [1] 4/10
2008 [1] 4/11
2009 [1] 6/7
2010 [1] 6/21
2014 [6] 11/5 12/3 14/11 16/10 16/11 35/19
2015 [4] 1/7 3/2 12/12 13/6
2047 [2] 1/4 3/6
233 [1] 2/11
25 [2] 28/7 35/11
25 percent [3] 11/3 35/6 35/21
26 [3] 13/6 16/11 28/19
275 [1] 2/19
28 [1] 28/22

**3**
30 [2] 18/24 39/5
30-some-odd [1] 42/13
30309 [1] 1/22
310 [1] 2/2
365 [1] 2/14

**4**
4,000 [9] 16/7 18/21 19/21 20/18 30/22
31/16 31/21 33/18 38/5
4809520 [1] 14/11

**5**
50 [1] 18/14
500 [2] 1/18 2/19
504 [1] 2/20
51 [1] 2/17
510 [1] 1/18
52nd [1] 2/17
589-7778 [1] 2/20

**6**
60606 [1] 2/11

70113 [1] 1/15
70130 [2] 2/14 2/20
70139 [1] 2/2
75201 [1] 2/8
7778 [1] 2/20
7800 [1] 2/11

**8**
820 [1] 1/15

**A**
Aaron [1] 12/22
abandon [2] 38/1 38/1
abbreviated [2] 40/19 40/20
abide [1] 2/5
ability [1] 44/19
able [12] 4/18 8/13 8/14 8/14 11/21
16/16 26/5 30/1 36/13 41/24 41/25
41/25
about [23] 6/15 6/17 6/23 6/23 7/19 9/14
10/6 11/9 21/22 22/13 22/25 23/17
25/19 28/1 30/25 32/1 32/25 33/1 38/5
41/2 42/22 42/24 43/8
above [2] 15/25 44/20
above-entitled [1] 44/20
absent [1] 9/16
according [1] 29/6
accordingly [2] 36/3 36/18
account [2] 16/25 17/3
accounting [1] 15/6
act [4] 4/21 19/8 33/1 36/18
action [8] 9/17 11/9 12/2 12/9 19/8
20/19 25/5 28/1 28/18
actions [3] 1/7 5/17 11/18
activity [3] 12/21 13/8 19/5
add [1] 33/15
addition [1] 5/7
additional [5] 24/24 25/18 25/21 26/25
27/6
address [8] 16/15 26/14 28/15 28/16
29/7 29/8 29/10 38/18
adjourned [1] 44/13
admissible [2] 9/13 36/12
admission [1] 28/25
admissions [4] 15/21 28/19 29/1 29/3
admit [2] 28/20 32/13
admitted [1] 32/7
adopts [1] 31/22
advise [3] 9/25 10/4 40/11
advised [2] 6/17 10/5
advising [1] 34/18
affidavits [1] 31/9
affiliated [1] 16/4
affiliates [15] 4/20 5/19 10/1 10/5 10/18
12/18 14/6 14/16 14/24 35/3 35/5 35/12
35/23 36/7 40/5
affirmed [2] 9/7 9/10
affirming [1] 8/25
affixed [1] 32/8
affording [1] 6/9
afraid [2] 22/1 42/3
after [14] 4/23 6/9 7/24 10/9 13/8 14/8
15/6 16/12 17/8 18/14 18/23 30/9 31/17
31/21
again [7] 6/7 8/3 19/13 20/13 21/15 28/3
31/19
against [13] 5/18 5/19 11/7 14/6 15/21
17/25 19/1 19/2 19/9 24/25 27/7 27/22
28/6
aggressively [1] 25/10

agree [1] 23/19
agreement [1] 20/3
aided [1] 2/23
akin [1] 31/2
ALAN [2] 2/1 3/20
Alan Weinberger [1] 3/20
alien [1] 30/21
aligned [3] 30/23 33/9 33/10
all [25] 1/7 5/6 5/14 9/23 11/6 11/7
11/15 12/1 13/19 14/13 15/2 20/7 24/9
26/1 26/22 27/6 28/1 28/10 30/22 38/6
39/1 41/8 42/1 43/8 44/12
allotment [1] 11/22
allow [7] 7/8 19/16 31/11 38/13
allowed [2] 13/16 29/15
allowing [2] 24/14 37/13
alone [1] 19/2
along [1] 14/3
already [8] 20/24 22/13 23/11 23/12
24/3 25/4 33/16 33/21
also [23] 3/22 4/25 6/14 10/13 10/17
10/24 15/1 16/24 22/10 23/11 24/7
24/20 24/21 25/15 26/16 26/25 27/3
35/2 35/15 36/20 37/13 43/7 43/14
Alston [1] 1/20 12/22
alter [11] 14/24 15/22 17/21 17/22 17/24
18/4 18/9 18/12 28/5 32/22 36/7
alternative [2] 10/8 19/10
always [1] 13/20
am [2] 37/20 43/16
Americas [1] 2/5
among [1] 5/15
amorphous [1] 30/11
amount [5] 5/1 6/22 22/22 23/15 23/22
amounts [1] 24/24
amusing [1] 21/22
and/or [1] 36/19
announced [3] 12/14 12/15 12/22
another [5] 5/14 8/24 17/3 25/21 43/22
answer [2] 5/21 6/10
answers [1] 5/25
any [20] 5/10 5/15 6/2 7/24 8/7 12/18
12/18 13/9 21/6 25/20 25/24 26/7 27/12
27/17 29/12 29/16 30/9 39/17 40/4 40/5
Anybody [1] 10/22
anyone [1] 12/17
anything [3] 22/16 35/10 38/8
apparently [2] 4/24 12/24
appeal [1] 7/8
appealed [2] 7/1 8/20
appealing [1] 7/1
appeals [1] 12/7
appear [4] 26/13 33/4 33/7 39/6
appearance [2] 3/8 7/1
Appearances [1] 1/12
appeared [3] 39/17 39/19 39/19
appellate [1] 31/20
appliances [1] 4/25
applicability [1] 36/19
applicable [1] 31/1
applied [1] 29/3
applies [2] 27/2 27/3
apply [5] 28/4 28/13 29/4 30/11 30/18
appreciate [3] 34/6 40/23 42/17
appreciates [1] 38/24
appropriate [8] 9/4 10/13 12/5 15/8
21/25 25/23 29/5 29/11
appropriately [1] 22/7
approved [1] 11/18
approximately [1] 37/18
apropos [1] 32/19

apt [1] 31/6

arcane [2] 31/6 31/7
are [90]
area [4] 4/14 13/10
areas [1] 14/12
argued [2] 8/24 31/7
arguing [1] 7/25
argument [6] 1/10 13/18 13/20 30/1
 30/25 33/18
arguments [1] 14/9
arithmetic [2] 33/13 33/14
arithmetically [1] 11/16
ARNOLD [5] 1/17 4/5 12/15 14/1 17/5
Arnold Levin [1] 4/5
arrive [1] 13/1
arrived [1] 32/15
as [75]
ask [6] 7/19 16/23 19/14 23/18 26/4
 42/8
asked [2] 12/16 13/1
asking [1] 25/1
aspects [1] 33/4
assessment [1] 29/16
assets [4] 18/23 19/14 19/16 19/17
assistance [3] 8/4 8/12 10/23
assume [1] 38/12
ASTMs [1] 32/4
at [47]
Atlanta [2] 1/22 3/14
attach [1] 24/23
attempt [1] 27/18
attempted [1] 19/4
attempting [4] 16/6 18/2 24/23 27/20
attend [1] 22/4
attention [1] 5/23
attitude [1] 31/22
attorney [1] 35/15
attorney's [3] 16/25 17/3 22/24
attorneys [13] 9/12 9/17 9/18 9/25 10/4
 13/8 17/11 18/17 18/22 19/20 22/11
 23/22 24/4
attorneys' [13] 10/13 15/9 23/23 24/5
 25/18 25/21 31/6 35/1 35/9 35/17 38/21
 38/22 38/23
audience [1] 12/17
authority [4] 26/24 26/25 29/2 29/18
authorized [1] 15/16
avail [1] 6/9
Avenue [3] 1/15 2/5 2/8
await [1] 32/22
away [2] 9/15 34/3

**B**

back [8] 7/20 8/17 12/21 18/22 22/15
 25/13 39/13 41/24
background [3] 4/6 13/25 32/12
backyard [2] 38/1 38/3
Baldwin [1] 24/10
banc [1] 9/19
bankruptcy [1] 16/8 19/22 33/24
Banner [1] 14/3
BARR [3] 2/4 3/21 26/11
Barrios [1] 14/7
based [5] 15/25 28/4 28/19 29/17 31/21
basement [1] 8/7
basic [1] 17/18
basically [3] 13/14 25/13 39/14
basis [5] 5/1 12/5 28/9 28/17 28/24
bathroom [1] 38/4
be [59]
because [28] 4/25 5/7 5/10 5/12 6/4
 18/19 19/6 19/13 20/4 20/16 21/19
 24/20 26/21 28/13 32/24 33/12 34/6
 34/12 38/1 39/2 40/5 40/24
been [18] 4/7 12/24 16/6 16/12 17/6
 23/6 27/10 27/15 28/12 30/1 30/23
 32/21 33/20 37/23 37/25 39/13 40/1
 42/6
before [16] 1/10 16/6 16/15 16/20 23/8
 26/14 26/15 26/20 26/21 29/14 29/20
 36/25 37/13 40/25 41/16 41/22
began [3] 4/10 4/21 9/11
begin [1] 4/18
beginning [1] 28/21
begins [1] 14/22
begun [1] 23/11
behalf [6] 3/11 3/22 4/5 18/12 26/12
 39/13
being [5] 5/3 5/5 10/15 14/5 20/15
believe [5] 16/10 16/20 18/14 20/2 34/11
Berman [1] 1/17
BERNARD [4] 1/20 3/13 21/16 41/10
best [2] 4/8 44/19
better [1] 7/7
between [2] 36/5 37/7
beyond [4] 21/11 24/19 28/4 28/13
biggest [1] 32/10
bill [1] 21/4
billion [2] 25/2 25/2
binding [1] 29/2
Bird [2] 1/20 12/22
bit [3] 25/19 32/25 33/1
BNBM [29] 2/4 2/4 2/7 2/7 2/10 2/10
 2/13 2/13 3/22 3/22 12/23 16/1 16/1
 17/23 20/7 26/12 26/12 27/14 27/14
 30/13 30/23 34/1 34/2 36/5 36/15 36/15
 37/3 37/7 39/6
BNBM Group [2] 3/22 26/12
bond [1] 37/12
Bonilla [1] 25/6
boom [1] 4/12
bootstrap [2] 27/21 28/3
both [8] 7/24 8/2 9/7 10/9 24/16 27/1
 27/11 28/16
break [1] 37/20
brief [7] 13/2 13/5 13/25 26/24 27/20
 28/16 38/16
briefing [6] 14/9 25/6 29/25 38/10 38/11
 38/13
briefly [4] 29/24 30/3 30/5 32/14
briefs [5] 13/19 21/19 25/4 25/5 34/6
bring [1] 20/21
broadly [1] 27/9
BrownGreer [2] 20/23 39/24
building [3] 4/12 5/3 39/7
buildings [1] 5/9
business [16] 9/2 9/3 10/18 10/19 10/22
 11/1 16/2 19/18 35/3 35/18 35/3 35/4
 35/5 35/11 35/12 35/23
but [42] 4/4 4/8 5/13 6/4 6/16 8/9 8/19
 8/23 10/8 10/23 11/15 13/20 15/6 16/17
 17/7 17/23 18/1 19/7 19/11 21/4 21/11
 22/14 23/1 24/9 25/15 26/16 26/25 27/9
 29/12 30/8 31/12 31/21 32/13 33/2 33/8
 34/16 36/23 39/17 40/25 42/15 42/24
 43/3

**C**

cabal [1] 20/6
call [5] 3/5 4/14 5/23 13/25 15/4
called [1] 12/15
calls [1] 39/18
can [18] 4/9 11/13 18/3 19/12 22/25
 26/23 30/23 34/23 37/24 38/1 42/20
 43/25
can't [7] 16/17 21/7 33/22 35/13 38/1
 40/1 44/6
Canal [1] 2/14
cannot [3] 24/1 25/9 29/2
capacity [3] 39/21 39/22 40/3
care [1] 30/19
cargo [1] 19/1
case [35] 3/5 4/10 5/13 6/8 6/11 6/18
 6/25 8/23 11/5 11/11 11/17 11/20 12/15
 13/4 14/18 15/12 15/14 17/1 20/3 20/10
 25/5 25/6 25/11 25/12 26/25 27/14
 27/15 27/16 30/12 30/25 33/13 34/8
 37/2 37/22 44/1
cases [12] 5/16 6/5 8/22 8/24 8/24 11/19
 17/25 25/3 34/21 42/23 43/1 43/2
caught [1] 12/25
cause [1] 19/8
caused [5] 5/2 5/7 22/3 33/23 40/6
CCR [3] 2/19 44/16 44/23
cert [1] 9/20
certain [1] 38/19
certainly [3] 30/21 31/2 40/12
CERTIFICATE [1] 44/15
certification [4] 11/6 11/25 33/5 33/6
certified [3] 11/25 12/2 16/23
certify [2] 11/6 44/18
challenged [1] 32/3
chance [1] 21/17
changed [1] 13/9
charged [1] 10/12
chase [2] 19/16 19/17
check [5] 7/24 15/10 15/16 16/23 17/1
chemical [1] 5/2
Chicago [1] 2/11
China [25] 4/17 4/17 7/15 7/16 7/17
 18/22 19/5 19/6 19/7 19/7 19/7 19/13
 19/24 20/5 20/5 20/10 22/19 22/20
 30/17 30/20 31/22 32/1 32/6 32/4
 32/24
CHINESE [6] 1/4 3/7 32/25 33/1 40/21
 42/20
CHINESE-MANUFACTURED [2] 1/4 3/7
choice [1] 10/8
CHRISTINA [1] 1/21
Christy [1] 21/18
circuit [12] 7/7 8/21 9/7 9/8 9/9 14/9 18/7
 18/19 20/9 20/17 29/2 31/19
circuits [1] 11/18
circumstance [1] 15/18
circumstances [4] 15/12 16/9 17/1 26/2
cite [1] 14/10
cited [3] 25/3 26/24 31/3
citing [2] 15/23 25/13
civil [3] 10/9 10/11 10/20
civilly [1] 27/11
claim [2] 7/5 28/3
claimants [3] 12/3 37/23 38/21
claimed [2] 7/4 7/6
claiming [1] 31/14
claims [2] 11/7 11/21
class [5] 5/17 11/6 11/7 11/8 11/18
 11/25 11/25 12/1 12/2 12/9 12/10 20/19
 25/1 28/18 33/5 33/5 39/15
cleaning [1] 19/24
clear [2] 14/25 35/13
clearer [1] 27/10
clerk [1] 23/22

clever [1] 21/22
client [10] 19/22 22/2 22/13 22/14 22/21
23/6 28/7 40/4 40/6 42/2
client's [1] 40/11
clients [7] 26/17 27/5 27/14 27/22 29/9
33/3 40/24
clients' [1] 29/9
close [1] 18/20
CNBM [20] 2/16 2/16 4/2 4/3 16/1 16/2
17/23 20/7 29/25 29/25 30/13 30/23
34/1 34/2 36/5 36/14 36/15 37/7 39/6
43/22
CNBM Limited [1] 4/3
Coast [1] 4/13
codes [1] 32/4
coffin [1] 18/4
collateral [1] 36/20
colleague [1] 13/3
colleagues [3] 3/16 26/10 39/18
come [5] 7/17 15/1 20/15 20/21 21/5
comes [1] 18/12
coming [2] 18/25 19/23
comments [3] 4/6 14/11 34/6
commitments [1] 22/21
committed [1] 24/15
commonality [1] 11/10 11/13
communicated [1] 24/3
compensate [1] 24/10
compensation [1] 33/3
complete [1] 40/17
compliance [1] 32/4
complied [2] 9/3 24/18
comply [2] 10/24 11/2
comprehensive [1] 38/11
compressed [1] 40/22
computer [1] 2/23
computer-aided [1] 2/23
concern [5] 23/17 23/18 31/14 32/1
32/10
concerned [1] 42/24
concert [1] 14/24
concluded [1] 25/13
concludes [1] 16/1
conclusions [1] 6/20
conclusively [1] 15/19
condition [1] 11/23
conduct [2] 16/4 34/19
confer [3] 23/21 37/10 40/14
conference [1] 43/8
conferring [1] 15/6
confidence [1] 34/10
confirmed [1] 31/22
connected [1] 36/23
connection [2] 39/4 42/23
constitute [1] 16/2
constitutional [1] 30/22
constitutionally [1] 25/9
consult [1] 14/17
contact [1] 5/6
contacts [2] 7/12 9/6
contempt [35] 10/8 10/9 10/11 16/17
16/20 19/18 21/2 21/3 22/12 24/2 24/19
26/1 27/4 27/7 27/11 27/13 27/16 27/18
27/21 28/4 28/6 28/11 31/8 31/5 32/23
34/9 34/9 34/20 35/14 36/21 39/25 42/3
42/5 42/6 42/9
contend [1] 25/20
contending [1] 26/3
contest [1] 25/7
continuance [2] 13/2 13/5

control [1] 31/9
convene [1] 26/4
cooperate [1] 38/7
cooperated [1] 7/15
cooperatively [1] 37/15
copper [2] 5/2 5/3
corporate [3] 16/3 28/3 29/7
corporations [1] 26/17
correct [3] 21/16 42/7 44/18
correctly [1] 14/19
cost [3] 20/24 41/20 42/21
costs [19] 6/24 9/22 11/24 14/15 14/15
14/18 14/20 14/20 21/5 22/24 23/23
35/18 38/15 40/16 41/21 42/19 42/22
42/23 43/2
costwise [1] 38/8
could [9] 6/1 8/2 8/19 19/1 27/9 27/15
27/16 28/12 32/18
couldn't [2] 8/1 21/11
counsel [22] 3/8 12/15 14/1 14/16 15/13
17/5 20/16 20/25 25/19 34/1 34/7 34/10
38/19 39/1 39/16 39/22 39/22 40/2 40/4
40/10 40/19 41/9
country [3] 10/21 10/22 30/7
couple [2] 11/13 12/13
couples [1] 6/24
courage [2] 32/1
course [2] 5/22 41/14
court [92]
Court's [14] 7/1 11/2 11/4 15/25 20/10
23/17 23/18 24/18 25/24 27/6 28/8
29/13 40/9 43/15
courtroom [4] 3/15 12/21 39/7 39/13
courts [5] 10/23 10/25 10/25 31/21
32/13
cover [1] 42/21
create [3] 27/21 28/6 28/7
created [3] 5/6 5/8 19/25
creates [1] 43/25
credibility [2] 8/16 43/5
Creek [1] 20/4
criminal [3] 10/9 10/11 10/20
criminally [1] 27/11
currently [1] 43/14
cut [1] 32/20

D

Dallas [1] 2/8
damage [8] 4/11 11/8 11/14 11/18 11/22
13/6 13/14 33/4
damages [26] 12/4 12/9 12/11 12/12
24/25 25/8 25/8 25/10 25/14 26/18 27/2
29/17 33/9 33/12 36/25 36/25 37/5
37/18 38/11 39/15 39/20 39/24 39/24
40/6 40/8 43/15
danger [1] 22/1
dangerous [2] 42/19
date [5] 12/8 12/12 16/11 37/19 38/10
Davis [1] 14/8
day [6] 6/25 8/8 8/8 13/1 37/20 39/1
days [2] 6/16 8/6
de [1] 15/19
de-privileged [1] 15/19
deal [5] 29/9 37/3 39/11 40/15 42/24
dealing [2] 22/3 37/2
dealt [2] 8/22 18/7
debtor [8] 9/24 9/24 10/1 10/3 10/6
10/15 22/4 30/9
decide [2] 25/22 25/23
decided [4] 8/21 9/15 9/16 10/7
decision [9] 9/14 28/18 28/21 28/22

declared [1] 5/11
control [1] 30/8
deemed [3] 28/19 29/1 29/3
deep [2] 22/14 22/14
default [15] 6/2 6/4 6/4 6/6 6/11 6/18
6/21 13/15 14/19 14/21 17/24 18/3 18/5
18/8 32/21
defaulted [2] 27/2 27/4
defaulting [1] 25/7
defective [3] 6/14 6/15 11/23
defectively [1] 12/3
defend [2] 24/25 26/5
defendant [6] 25/7 25/14 27/3 27/4
34/12 34/13
defendants [30] 7/22 11/8 12/1 12/7
12/10 12/18 12/19 12/23 13/9 13/11
13/13 13/15 16/16 17/25 18/16 18/17
21/14 26/16 27/12 28/1 30/13 30/17
31/14 32/12 37/11 37/15 40/19
41/2 41/11
defending [1] 44/22
defense [2] 39/21 40/1
defenses [1] 29/11 36/3
Degen [1] 25/12
delay [3] 29/12 33/3 43/24
deliver [1] 40/18
denied [1] 27/24
denies [1] 31/16
Dentons [4] 2/4 2/7 2/10 3/21
deny [1] 26/20
depend [1] 35/22
depleted [1] 4/13
deponent [1] 32/2
deponents [1] 41/17
depose [1] 37/11
deposed [1] 7/16
deposition [4] 14/20 32/1 33/2 41/18
depositions [13] 8/3 8/10 8/11 17/15
18/24 31/17 36/10 36/13 39/5 39/10
41/11 41/16 41/23
derivative [1] 17/20
described [1] 26/22
determinations [1] 14/23
determine [8] 6/13 11/16 12/9 36/6
36/19 36/20 37/12 37/13
determined [2] 12/9 15/7 20/24
developed [1] 4/24
did [10] 5/13 9/5 13/5 19/5 19/23 23/8
28/11 35/4 35/4 35/5
didn't [7] 7/5 8/6 10/10 11/8 21/17 33/24
41/12
different [3] 16/18 26/19 27/6
difficult [1] 11/10
difficulties [1] 41/23
difficulty [1] 41/13
diligently [1] 17/10
direct [2] 15/20 21/8
directed [1] 27/7
direction [1] 43/15
directly [1] 15/23
discover [1] 37/7
discovery [14] 7/14 17/23 18/9 31/11
35/25 36/1 36/2 36/16 37/16 39/7 40/7
40/18 41/15 44/5
discussed [1] 9/14
discussing [1] 9/12
dispute [1] 36/9
disputes [1] 41/22
disrespect [4] 22/9 22/9 22/10 22/11
distasteful [1] 5/8
distributors [1] 18/25
district [6] 1/1 1/2 1/11 11/9 44/17 44/17

diffe[2] 12/7 43/19
divided [1] 8/23
do [41] 4/8 6/1 7/18 9/14 9/23 10/19
10/22 11/1 11/2 12/11 15/16 17/2 17/7
17/16 17/24 18/3 18/16 18/16 18/21
18/22 19/11 19/13 19/19 19/19 19/19
20/19 20/20 24/7 24/15 24/22 29/10
31/5 31/21 35/4 35/19 35/20 37/8 39/8
40/25 41/25 42/9
docket [1] 13/7
Document [1] 21/20
documents [6] 15/19 16/13 33/25 40/20
40/25 42/20
does [5] 27/22 27/22 28/6 28/7 28/8
doing [8] 10/18 10/22 12/6 19/18 19/22
19/23 32/16 35/3
dollars [5] 6/17 14/21 34/22 34/23 43/1
dominated [1] 30/18
don't [21] 11/1 18/1 20/11 20/12 20/14
20/25 21/7 30/8 30/19 30/21 31/23
32/13 33/2 33/18 35/11 36/2 36/16
38/14 42/4 42/4 44/4
done [7] 10/14 22/16 35/11 35/12 35/20
35/23 41/16
down [4] 16/11 16/15 21/5 24/9
Doyle [4] 2/19 44/16 44/23 44/23
drag [1] 20/14
dragged [3] 18/17 18/18 18/19
Drive [1] 2/11
drywall [13] 1/5 3/7 4/13 4/14 4/18 4/18
4/22 4/23 5/1 9/5 11/23 12/4 20/5
due [6] 23/23 26/23 29/19 30/16 30/18
31/16
dug [1] 22/14
Dunbar [1] 2/13
during [2] 5/22 19/17
duty [2] 10/24 44/6

E

e-mail [2] 9/13 9/13
e-mails [1] 39/18
each [4] 5/17 16/3 17/25 26/19
ear [1] 32/17
earlier [2] 21/16 26/12
earned [1] 35/24
earnings [2] 11/3 35/6
easier [2] 7/16 41/15
easily [1] 41/17
East [1] 4/13
EASTERN [2] 1/2 44/17
easy [1] 33/14
efforts [1] 8/2
ego [10] 14/24 15/22 17/21 17/22 17/24
18/4 18/9 18/12 28/5 32/22
egos [1] 36/7
eight [4] 8/7 16/6 17/6 33/19
EIKHOFF [2] 1/21 21/18
either [2] 39/21 42/1
ELDON [1] 1/10
en [1] 9/19
en banc [1] 9/19
end [1] 31/19
enemies [1] 18/15
enforce [2] 30/20 31/23
engage [1] 39/20
engaged [2] 14/24 17/11
engaging [1] 18/2
English [2] 40/21 42/21
enjoined [2] 10/17 35/2
enough [3] 7/8 17/23 21/10
enter [1] 6/8

enterprise [4] 14/25 15/22 18/2 32/22
enterprises [1] 30/18
entertain [1] 38/16
entities [8] 4/21 6/8 9/2 9/3 9/3 15/4 16/4
16/4
entitled [5] 25/7 26/23 29/20 29/20
44/20
entry [1] 37/19
equally [2] 27/2 27/3
ESQ [11] 1/14 1/17 1/20 1/21 1/21 2/1
2/4 2/7 2/10 2/13 2/16
establish [2] 18/4 43/5
established [1] 17/17
establishing [2] 9/6 17/16
estoppel [2] 15/1 36/20
ether [1] 30/11
even [8] 18/15 21/7 27/3 28/14 30/10
30/10 31/21 33/14
event [4] 5/10 5/15 7/24 13/9
every [3] 20/21 26/19 28/23
everybody [3] 10/6 13/10 41/13
everything [2] 19/6 32/20
evidence [2] 15/20 31/9
evidentiary [1] 6/10
examination [1] 22/4
examine [1] 37/3
exceeded [2] 14/18 14/20
exceptions [1] 15/20
excess [2] 14/18 14/20
excuse [4] 30/9 32/18 32/18 34/18
execute [1] 9/22
exist [1] 28/11
existing [2] 11/7 29/17
exists [2] 33/7 36/18
exorbitant [1] 39/8
expectations [1] 40/9
expedite [1] 20/25
experience [2] 11/12 11/21
expert [1] 14/20
experts [1] 6/15
extend [1] 28/8
extensive [2] 6/18 8/25 13/18
extent [4] 7/15 8/9 36/23 37/15
Exterior [1] 14/4

F

faced [2] 39/9 41/22
facilities [1] 38/4
facing [1] 22/7
fact [8] 6/19 14/23 15/25 23/12 28/25
33/17 33/22 40/23
factory [1] 32/6
facts [5] 14/25 28/17 29/7 29/7 29/8
factual [2] 28/24 36/9 37/1
factually [1] 35/24
failed [1] 12/2
failure [2] 22/4 28/20
fair [7] 7/5 35/15 37/6 38/5 41/20 42/10
42/16
fairly [2] 23/16 38/11
FALLON [3] 1/10 3/10 13/23
families [1] 24/13
family [7] 24/10 24/11 24/11 24/11 24/12
24/12 24/12
far [1] 37/25
fashion [1] 11/21
favor [2] 6/22 42/9
FCRR [3] 2/19 44/16 44/23
fear [8] 22/2 22/2 22/5 22/8 30/8 30/8
30/8 32/18
fearful [1] 20/12
February [2] 12/12 12/14

fees [14] 10/14 15/9 22/24 23/23 24/5
25/19 25/21 25/23 35/1 35/9 35/17
38/21 38/22 38/24
felt [6] 6/1 6/13 7/7 7/12 8/2 10/13 13/17
15/11 15/14
FENTON [2] 2/10 3/23
few [2] 17/8 18/20
Fifth [9] 7/7 8/21 9/7 14/9 18/7 18/19
20/9 29/2 31/19
Fifth Circuit [9] 7/7 8/21 9/7 14/9 18/7
18/19 20/9 29/2 31/19
fight [1] 16/12
file [9] 18/2 38/10 38/12 38/13 38/14
38/16 39/11 43/15 43/17
filed [7] 5/13 5/15 5/21 5/25 11/6 19/11
27/20
filing [1] 39/4
finally [1] 18/20
find [5] 18/23 19/2 30/8 36/11 43/25
finding [1] 28/23
findings [7] 6/19 15/25 17/22 28/18
28/25 29/22 33/17
fine [2] 30/2 34/17
finished [1] 8/8
fire [1] 38/3
fired [3] 9/17 13/9 18/22
firm [2] 12/24 23/3 34/17
first [11] 6/3 7/3 7/4 12/9 14/13 26/22
27/6 28/10 34/9 34/20 38/15
Fishbein [1] 1/17
five [15] 6/15 8/6 18/18 26/19 31/7
33/19 37/8 37/18 39/2 39/15 40/7 40/18
40/22 40/24 41/14
five-week [4] 39/15 40/7 40/22 41/14
flew [1] 8/8
flight [1] 13/1
floorboard [1] 32/7
flooring [1] 32/8
Florida [1] 17/19
flurry [3] 12/21 13/8 19/4
focus [1] 11/14 21/25
focused [2] 8/13 9/9
folks [8] 14/6 24/7 30/22 31/16 31/22
37/22 38/5 44/11
Following [1] 6/19
footage [7] 11/15 11/16 11/22 11/24
12/5 20/22 20/23
force [3] 14/6 15/7 16/22
forecasting [1] 31/20
foreclosed [1] 19/21
foreclosure [1] 33/24
foregoing [1] 44/18
foreign [2] 19/8 34/15
forfeit [2] 11/3 35/6
form [1] 25/25
formula [1] 33/12
forth [2] 14/23 32/2
forum [1] 31/23
forums [1] 17/18
forward [5] 6/10 8/6 12/22 28/22 40/21
found [9] 4/16 9/1 9/2 19/18 20/1 20/4
21/21 27/4 29/20
four [10] 6/15 8/22 17/15 18/17 20/15
32/11 33/19 33/20 34/20 38/20
frankly [2] 7/20 8/1
free [1] 40/13
Friday [2] 17/10 27/20
front [1] 18/19
full [4] 12/17 22/21 23/14 32/12
fully [3] 23/6 25/10 35/17

funds [6]  14/4 15/15 15/16 16/22 16/24 16/25
further [2]  27/25 36/12
furtherance [1]  6/11
Furthermore [1]  27/13

# G

gathered [1]  13/12
gave [3]  8/9 8/12 12/13
gentlemen [2]  3/4 39/17
Georgia [1]  1/22
germane [1]  7/13
Germano [13]  5/16 6/11 6/12 14/15 14/18 15/2 21/4 24/13 27/14 33/9 33/23 34/21 38/22
get [19]  7/14 8/19 9/23 16/6 17/13 18/20 20/18 21/17 22/20 22/25 24/24 30/19 35/16 38/6 40/8 40/25 41/13 41/17 43/3
gets [2]  19/12 19/13
getting [2]  18/20 23/13
give [12]  7/10 13/5 13/20 13/24 17/11 20/8 23/18 27/23 35/15 41/1 44/3 44/8
given [3]  15/11 17/1 40/23
gives [1]  19/8
go [13]  7/17 8/4 17/24 18/22 19/1 19/2 20/10 20/12 31/15 33/19 36/12 40/21 41/24
going [30]  11/3 13/24 14/10 14/11 16/22 17/2 17/15 19/12 19/13 23/16 28/22 30/20 31/11 31/23 32/10 35/16 35/22 35/25 36/2 36/9 37/17 37/22 38/2 39/8 39/9 40/7 41/15 43/7 44/4
gone [4]  11/10 21/11 24/19 33/18
good [15]  3/3 3/10 3/13 3/17 3/18 3/19 3/25 4/1 13/23 21/15 25/19 26/11 31/20 34/17 39/12
got [4]  5/14 7/20 7/23 13/4
gotten [1]  32/24
granted [3]  6/6 11/25 13/5
great [1]  31/13
Gross [2]  5/16 15/2
ground [2]  5/5 42/19
group [14]  2/4 2/7 2/10 2/13 2/16 3/22 4/2 16/1 16/2 18/16 26/12 27/14 29/25 43/22
guarantee [3]  23/3 23/5 23/11
guidance [1]  40/8
guided [1]  37/14
gypsum [1]  5/1

# H

had [39]  4/17 6/12 7/10 7/21 7/22 8/18 9/1 9/1 9/2 9/20 9/21 10/4 10/5 10/7 10/14 11/12 11/20 11/20 12/3 12/11 12/17 12/24 15/4 16/8 18/6 18/11 19/21 22/13 27/17 32/2 34/17 34/20 34/21 34/24 34/25 35/4 35/6 35/19 41/12
Hague [1]  30/14
hand [1]  36/5
handle [1]  37/21
Hangartner [1]  2/1
happen [3]  23/16 23/19 23/21
happened [1]  16/19
happening [1]  20/11
hard [2]  4/7 23/20
HARRY [2]  2/13 3/23
has [20]  10/22 16/12 17/8 22/13 23/6 23/25 23/25 25/4 25/4 26/18 26/22 30/1 31/14 31/18 32/23 37/14 39/23 39/24 39/25 40/4

hate [1]  41/6
haven't [7]  20/3 31/13 33/20 35/9 35/9 35/20 39/16
having [3]  15/3 16/25 39/9
HB [1]  2/19
HB-275 [1]  2/19
he [10]  12/15 12/23 12/25 12/25 13/1 13/3 13/4 17/7 17/8 32/16
head [1]  32/6
hear [5]  13/21 21/14 26/9 30/3 32/14
heard [6]  6/15 27/17 27/23 27/25 31/13 32/11
hearing [20]  6/10 6/19 10/10 12/8 13/6 13/14 13/17 25/8 26/18 26/24 27/2 29/15 33/5 33/6 36/23 36/24 36/24 37/5 37/17 37/19
hearings [2]  29/21 31/17
hearsay [1]  15/20
Heischober [1]  24/12
held [3]  10/8 10/10 27/15
help [1]  21/11
helpful [1]  13/19
hence [1]  37/18
here [37]  3/14 3/15 3/22 12/18 13/10 13/12 14/7 17/6 17/24 18/10 19/7 20/9 20/20 21/18 21/22 22/3 22/21 24/5 24/9 24/18 27/12 28/1 29/12 31/1 32/16 32/19 33/16 34/10 36/9 38/21 39/1 39/6 41/12 41/13 41/25 42/2 43/11
Herman [8]  1/4 1/14 1/14 3/10 3/11 3/11 13/24 21/2
Herrington [2]  2/16 4/2
highest [1]  9/15
him [4]  12/24 13/3 13/5 34/11
hire [1]  34/17
hired [3]  7/23 12/24 13/8
his [3]  12/23 13/3 13/5
history [3]  4/8 11/10 31/21
hold [1]  10/8
holding [2]  10/11 16/3
holdings [1]  28/23
holds [1]  27/10
hole [1]  22/14
home [3]  8/8 12/4 20/10
homeowners [2]  16/7 20/18
homes [6]  6/24 16/7 19/21 20/23 33/23 37/1 37/24
Hong [6]  8/9 17/15 18/19 33/2 41/16 41/24
Hong Kong [6]  8/9 17/15 18/19 33/2 41/16 41/24
Honor [75]
Honor's [10]  14/10 15/24 16/10 21/3 27/9 28/5 28/18 28/21 28/23 29/6
honorable [1]  1/10 19/23 19/23 31/25
honored [1]  3/14
horse [1]  17/20
hours [1]  8/7
house [5]  12/17 20/22 38/1 38/2 38/4
houses [1]  4/12
Hovey [3]  25/5 25/13 26/25
how [10]  11/16 11/23 19/11 22/6 30/10 31/4 32/18 33/15 35/23 37/1
however [2]  37/6 38/24
HULL [1]  1/21
hurricanes [1]  4/11

# I

I'll [2]  30/5 44/3
I'm [33]  3/14 3/19 3/22 3/24 6/17 13/24 14/10 14/11 20/15 21/16 26/7 30/10

37/9 37/17 37/19 37/22 38/19 41/11
38/19 39/11 41/1 41/2 41/5 42/2 42/9 42/24 43/7 44/4
I've [1]  39/13
idea [1]  31/4
if [32]  8/18 11/2 13/20 16/18 17/4 17/6 19/2 23/17 26/2 30/3 30/19 32/17 33/4 33/7 33/20 35/4 35/23 36/1 36/16 36/22 37/20 38/1 39/1 40/7 41/4 41/15 42/1 43/11 44/3 44/5 44/8
ignorance [1]  32/17
Illinois [1]  2/11
imagine [1]  18/2
immediately [3]  8/11 23/1 23/1
Immunities [1]  19/9
important [7]  5/25 6/8 6/13 7/14 15/15 36/6 40/24
importantly [1]  28/14
impose [1]  27/18
in [208]
In Re [1]  3/6
inception [1]  30/24
includes [1]  14/14
including [1]  14/20
indeed [2]  15/8 25/24
indicate [3]  14/17 15/3 31/24
indicated [8]  21/16 22/23 23/25 23/25 24/18 25/4 41/10 42/20
indicates [2]  21/14 34/11
indicating [1]  24/19
indication [1]  15/9
individual [3]  20/21 32/3 34/15
individuals [5]  16/24 32/15 37/11 37/23 37/24
informally [1]  40/18
information [8]  8/12 39/21 39/23 39/24 40/1 40/5 40/10 40/12
injured [1]  19/20
injuries [1]  11/9
injury [1]  11/11
instruct [4]  6/1 35/17 35/25 37/9
instructed [3]  9/16 9/25 40/4
instruction [1]  40/12
insurance [1]  38/3
insurers [1]  38/2
intend [1]  34/11
intended [2]  22/12 28/12
intentional [1]  19/25
interest [10]  6/24 9/22 14/14 14/15 15/21 21/6 34/22 34/23 43/1 43/2
interesting [1]  16/5
Interior [1]  14/4
interpreter [3]  7/22 7/22 7/23
interpreters [3]  7/21 7/23 7/25
intervene [1]  6/12
intervening [1]  6/22
into [8]  4/22 14/11 15/1 19/22 22/15 23/14 35/8 40/21
introduce [1]  21/17
introduced [1]  31/8
invited [1]  31/1
involved [2]  20/7 40/25
Irpino [1]  14/7
is [78]
isn't [1]  31/16
issue [19]  7/9 7/11 8/22 9/9 16/25 18/10 21/11 22/23 25/18 25/22 27/1 28/15 29/14 34/6 34/9 36/4 38/23 39/15 39/20
issued [5]  6/19 6/21 10/10 22/12 42/25
issues [9]  15/1 17/13 22/3 22/19 27/6 28/2 28/6 29/10 34/8
it [91]

it's [3] 21/2 21/24 31/5
21/20 24/9 24/9 24/17 24/21 25/15
30/21 31/6 31/7 32/11 33/12 33/13
34/15 35/12 35/15 37/6 38/5 41/20 42/8
42/10 42/15
its [6] 6/15 10/1 10/5 34/13 40/5
itself [1] 30/8

**J**

JAMES [2] 2/16 4/2
James Stengel [1] 4/2
Jerry [1] 32/16
Jim [1] 29/24
joined [1] 4/21
JUDGE [3] 1/11 3/10 13/23
Judge Fallon [2] 3/10 13/23
judges [3] 9/8 9/9 33/14
Judging [1] 13/7
judgment [29] 6/21 7/2 7/2 9/21 9/24
9/24 10/1 10/3 10/6 10/15 14/13 14/15
15/5 15/8 18/8 22/4 22/17 22/19 22/22
24/13 24/20 24/24 30/8 30/19 31/23
32/21 35/10 35/17 42/25
judgments [8] 10/25 14/9 17/25 18/3
18/6 18/21 34/21 38/15
judicata [2] 15/1 36/19
July [3] 11/5 35/19 42/6
July 17 [1] 35/19
jumping [1] 41/7
juncture [1] 17/4 31/12
jurisdiction [17] 6/3 7/3 7/4 7/9 7/10 7/14
8/13 9/1 9/6 15/3 17/16 17/17 18/10
29/8 31/15 31/18 32/13
jurisdictional [1] 43/23
just [19] 9/15 12/24 13/4 14/17 14/21
18/7 18/9 18/20 20/24 21/5 29/24 30/3
38/18 41/6 41/25 42/10 43/11 44/4 44/6
justice [7] 10/20 19/5 20/18 22/5 25/12
25/15 25/16

**K**

Katz [2] 1/14 3/11
keep [2] 19/16 41/7
Kennedy [1] 25/12
KENNY [2] 1/21 3/16
Kerry [1] 39/12
kind [2] 26/4 30/21
Knauf [9] 4/17 4/21 14/3 19/22 33/1
33/11 39/13 39/22 39/23
Knauf's [1] 40/3
knew [3] 10/6 11/22 11/22
know [16] 4/10 9/23 15/15 17/12 18/24
20/4 21/1 30/21 32/11 32/25 32/25
33/15 35/11 37/25 42/4 42/15
knowing [1] 6/16
knows [4] 3/24 20/23 24/3 25/5
Kong [6] 8/9 17/15 18/19 33/2 41/16
41/24

**L**

lack [3] 7/2 7/3 29/19
ladies [1] 3/3
lagniappe [1] 24/8
language [1] 42/5
last [6] 6/25 8/8 12/25 13/1 16/12 17/11
27/20 31/24 39/19
later [1] 12/8
law [10] 6/20 18/15 27/22 28/17 32/17
32/18 32/25 33/13 33/25 34/16
lawfully [1] 10/22
lawsuit [3] 7/5 7/6 25/1

lawyers [3] 7/17 23/14 34/17
Leach [1] 2/8
lead [2] 14/1 17/5
learned [1] 38/19
least [7] 8/11 13/10 13/11 17/12 18/16
33/10 43/14
leaves [1] 17/7
left [2] 4/11 18/1
length [1] 15/7
less [1] 18/5
let [9] 4/4 4/6 13/21 19/1 21/14 26/9
30/3 32/14 34/7
letter [1] 40/19
levels [1] 9/15
Levin [12] 1/17 1/17 4/5 12/15 14/1 14/5
15/7 16/15 17/5 22/23 23/25 30/6
liability [6] 1/5 3/7 12/10 17/19 17/19
32/22
liable [1] 6/4
liaison [3] 39/22 40/1 40/10
lied [1] 32/7
lift [1] 18/3
lifted [1] 16/20
light [1] 39/25
lightly [1] 6/3
like [6] 12/21 13/10 17/4 19/1 20/12 35/8
39/2 40/8 41/17
likewise [1] 43/16
Limited [3] 2/16 4/3 43/23
line [2] 31/8 31/11
list [4] 15/13 40/20 41/2 41/3
listed [1] 14/16
listen [2] 8/13 33/7
listening [1] 39/14
litigation [11] 1/5 3/7 17/13 17/18 18/18
20/14 22/15 24/1 30/9 36/17 39/19
litigator [1] 42/13
little [5] 17/7 17/9 17/23 32/25 32/25
live [2] 16/8 38/3
lives [1] 24/14
living [2] 5/9 37/25
LLC [2] 1/14 2/1
LLP [6] 1/20 2/4 2/7 2/10 2/13 2/16
logos [1] 9/4
long [4] 4/8 8/17 8/18 37/24
Longer [1] 31/24
look [7] 8/6 8/22 10/20 10/23 25/22
36/11 36/15
looked [3] 11/20 12/21 21/24
looking [2] 28/21 36/24
looks [2] 13/9 35/7
lose [2] 33/22 33/23
lost [1] 16/7
lot [7] 4/11 4/25 5/10 5/18 27/25 39/23
39/24
LOUISIANA [9] 1/2 1/6 1/15 2/2 2/14
2/20 5/13 17/18 44/18
love [1] 17/7

**M**

made [3] 9/14 27/19 34/3
mail [2] 9/13 9/13
mails [1] 39/18
major [2] 17/25 18/25
make [11] 3/8 4/6 8/1 8/2 8/15 11/3
19/11 23/19 23/20 23/21 33/17
making [1] 23/12
malfunction [1] 5/7
man [1] 17/7
maneuver [1] 22/6
manufactured [6] 1/4 3/7 4/18 12/3 32/5
32/5

many [6] 7/21 22/3 29/14 37/6 37/23
38/6 38/7
March [3] 1/7 3/2 13/6
March 26 [1] 13/6
Mark [1] 33/2
markings [1] 32/4
material [3] 6/14 36/11 36/11
mathematical [1] 33/12
mathematicians [1] 33/15
matter [10] 4/7 6/19 17/3 26/14 26/23
27/3 27/22 36/1 37/21 44/20
matters [5] 8/5 11/13 16/15 38/19 40/16
may [20] 6/21 13/24 16/16 18/9 24/8
26/8 27/9 30/6 31/25 32/16 34/16 35/24
36/9 36/9 37/1 37/2 41/13 42/23 43/11
44/1
May 11 [1] 6/21
Maybe [2] 31/6 31/7
McKellar [1] 24/12
McKinney [1] 2/8
MDL [4] 1/4 3/6 5/11 5/12
me [24] 4/6 8/9 8/12 9/7 10/4 13/5 13/19
13/21 17/7 21/14 26/9 30/3 32/14 34/7
35/12 35/21 36/16 40/4 40/9 40/12
41/21 42/1 42/8 42/16
mean [2] 23/1
means [2] 16/18 36/16
meant [1] 7/25
mechanical [2] 2/23 31/15
meet [3] 37/9 39/1 40/14
members [1] 11/7
mentioned [1] 35/7
mess [1] 19/24
met [3] 14/5 26/1 39/16
metal [1] 5/3
metaphor [1] 30/11
method [1] 24/4
Meunier [2] 14/7 32/16
MICHAEL [6] 1/21 2/4 2/7 3/21 3/23
26/11
Michaux [1] 24/11
might [1] 38/23
Mike [1] 3/16
Miller [1] 39/12
million [4] 6/17 9/21 14/20 18/21
minister [1] 19/5
minute [1] 37/19
Mitchell [2] 5/16 15/2
moment [1] 12/20
moments [1] 17/8
money [7] 20/2 21/7 21/7 22/20 23/13
23/14 32/24
monitor [1] 32/1
monogram [1] 32/8
months [3] 12/8 12/13 16/12
MOORE [2] 2/7 3/23
moot [2] 24/17 24/17
more [11] 6/1 6/9 8/18 21/25 24/9 27/9
28/14 31/7 31/17 31/18 33/20
Morgan [1] 24/10
morning [12] 3/3 3/10 3/13 3/17 3/18
3/19 3/25 4/1 13/23 21/15 26/11 39/12
most [2] 13/11 20/23
motion [10] 11/6 13/13 13/18 19/10
21/20 24/16 26/15 26/20 26/21 39/11
motions [1] 39/4
movants [1] 13/22
move [5] 6/5 17/14 24/14 32/21 37/22
moved [1] 6/10
movement [1] 31/6
Mr. [13] 12/22 14/5 14/7 14/7 14/8 14/8
15/7 16/15 21/2 22/23 23/25 26/22 30/6

Mr. Davis [1] 14/8
Mr. Herman [1] 21/2
Mr. Irpino [1] 14/7
Mr. Levin [6] 14/5 15/7 16/15 22/23 23/25 30/6
Mr. Longer [1] 14/8
Mr. Meunier [1] 14/7
Mr. Taylor [1] 26/22
Ms. [1] 14/7
Ms. Barrios [1] 14/7
much [10] 4/9 8/1 8/2 11/16 11/23 29/22 34/5 35/24 41/14 44/11
multidistrict [1] 5/11
multiple [1] 31/9
Murphy [1] 11/12
must [2] 16/21 16/22
my [28] 3/16 3/22 4/8 5/24 8/9 8/22 14/11 18/1 20/22 20/22 21/17 26/16 27/5 27/14 27/22 28/6 32/10 32/17 37/12 39/21 39/22 39/23 39/25 40/3 40/4 40/6 40/11 44/19
myself [1] 21/12

N
nail [1] 18/4
nature [1] 6/15
necessarily [1] 36/12
necessary [4] 8/3 15/11 36/10 44/9
need [10] 14/16 17/16 22/24 36/12 40/20 40/25 41/2 42/1 43/5 44/2
needed [4] 4/14 6/5 20/5 20/5
negotiated [1] 9/3
never [1] 16/19
new [18] 1/6 1/15 2/2 2/5 2/5 2/14 2/17 2/17 2/20 3/11 3/15 13/1 15/13 20/15 20/16 26/4 30/13 39/16
New Orleans [3] 3/11 3/15 13/1
newly [2] 17/11 32/15
next [3] 29/23 33/7 33/15
no [26] 1/4 3/6 5/21 6/1 6/8 6/16 7/10 9/17 10/7 10/8 12/7 12/7 14/13 15/6 15/9 26/9 27/11 31/18 32/18 33/7 34/18 38/21 38/22 38/23 42/22 43/23
None [1] 22/11
nor [1] 17/2
Norris [1] 33/2
nose [1] 34/13
not [88]
note [1] 5/12
noted [1] 10/3
nothing [2] 30/7 43/3
notice [1] 12/13
noticed [1] 10/9
Notwithstanding [1] 8/1
now [10] 9/8 11/10 18/2 21/6 31/14 33/6 34/23 35/15 35/21 43/7
number [3] 16/14 27/1 39/20
numbers [1] 5/11

O
O'Keefe [1] 1/15
objecting [1] 13/13
objections [2] 8/11 43/23
obliterated [1] 16/18
observe [1] 8/14
obtain [1] 24/23
obviously [3] 9/23 24/5 34/12
occur [1] 41/11
odd [3] 34/22 34/23 42/13
odor [1] 4/24

offer [1] 31/18
offices [1] 15/5
Official [3] 2/19 44/16 44/24
often [1] 41/22
Oil [1] 11/12
okay [4] 21/9 30/2 40/14 41/4
omnibus [2] 21/20 27/19
on [61]
once [2] 14/3 32/11
one [22] 5/13 8/23 8/23 12/11 12/23 15/4 17/2 18/7 20/21 20/25 21/17 21/19 22/10 26/19 27/1 28/23 36/5 41/6 41/19 42/1 42/18 44/8
ones [2] 18/11 18/11
only [9] 11/8 14/16 15/8 15/18 15/20 26/16 26/24 29/4 40/24
open [2] 12/14 32/21
opening [1] 18/5
opinion [10] 8/17 8/19 8/20 8/20 8/22 9/8 14/10 14/22 15/24 16/10
opinions [1] 8/25
opportunities [1] 4/16
opportunity [7] 7/11 8/10 26/13 27/17 27/23 28/7 28/16
or [37] 4/14 5/13 5/21 5/21 6/13 6/15 6/24 11/24 12/18 13/11 14/24 15/4 15/22 18/17 19/25 25/2 25/22 25/24 25/25 31/15 33/19 35/5 35/11 35/12 35/22 36/7 36/12 36/18 36/19 37/3 38/24 39/22 40/5 41/16 42/4 42/4 42/5
oral [3] 1/10 13/17 13/20
order [22] 10/11 11/2 11/4 22/13 22/20 24/19 25/24 26/1 27/7 27/9 27/13 27/21 28/11 28/13 34/20 36/21 38/23 39/25 40/17 44/2 44/3 44/8
ordered [3] 7/18 35/19 41/12
ordering [1] 42/21
orders [3] 29/18 30/10 31/5
Oregon [3] 19/19 20/1 20/3
organized [1] 14/5
Orlando [1] 24/1
Orleans [8] 1/6 1/15 2/2 2/14 2/20 3/11 3/15 13/1
Orrick [2] 2/16 4/2
other [22] 4/12 5/18 5/19 9/5 11/13 11/21 13/8 15/22 17/19 21/18 23/10 26/9 27/12 28/1 28/1 28/4 29/16 36/6 40/16 41/6 42/18 42/23
Otherwise [1] 19/15
ought [2] 36/13 40/14
our [31] 4/14 10/21 10/22 10/23 11/9 12/13 15/5 16/21 19/16 19/17 20/1 22/2 22/5 22/5 22/13 22/14 22/21 23/6 24/23 25/4 25/5 25/6 26/24 29/9 29/9 29/11 29/19 33/3 33/16 34/16 40/24
ourself [1] 26/1
ourselves [5] 21/8 24/2 24/22 24/25 26/5
out [15] 8/1 8/2 8/15 8/19 14/5 18/13 19/18 20/4 24/22 24/15 30/11 32/24 37/23 38/4 38/5
over [4] 8/4 8/10 16/12 39/18
owned [2] 4/17 19/2
Oz [1] 21/21

P
page [6] 7/24 7/24 14/22 15/24 21/21 25/6
page 15 [1] 21/21
page 7 [1] 14/22
page 8 [2] 15/24 25/6
paid [13] 14/5 14/13 15/10 16/23 16/23

38/21 [1]
panels [4] 8/21 8/25 9/7 18/7
papers [1] 18/3
paragraph [1] 28/22
paranoids [1] 18/15
parents [1] 35/22
part [4] 15/22 28/12 30/5 30/6
partake [1] 33/5
participate [29] 8/5 9/16 10/2 10/10 13/14 13/16 24/1 24/6 25/8 26/17 26/23 27/2 29/15 29/21 30/15 31/2 34/13 35/13 36/1 36/2 36/16 36/17 37/14 37/16 41/25 44/4 44/5 44/7 44/7
participated [1] 10/19
participating [3] 25/9 25/14 28/9
participation [4] 26/16 29/19 31/10 37/13
particular [4] 11/17 15/12 25/22 37/2
particularly [2] 5/23 16/16 30/17
parties [10] 7/11 8/4 13/20 27/15 27/16 28/4 37/6 37/9 38/8 40/6
partner [1] 21/18
partners [1] 3/23
parts [1] 34/20
passed [1] 9/20
pay [17] 10/13 22/21 23/4 23/7 23/14 24/20 24/24 31/4 31/5 31/23 34/11 34/21 34/24 34/25 35/17 38/15 38/15
paying [2] 15/15 24/4
payment [1] 15/8
payments [1] 23/12
Peachtree [1] 1/22
pejorative [1] 20/16
penalties [2] 10/12 38/16
penalty [2] 24/3 34/24
Pennsylvania [1] 1/18
people [10] 5/8 5/24 6/12 6/23 12/13 19/20 19/21 33/18 36/13 36/14
People's [1] 30/17
per [1] 31/11
per se [1] 31/11
perceive [1] 17/12
percent [5] 11/3 27/8 35/6 35/11 35/21
performance [1] 17/14
period [3] 19/17 41/14 43/17
permit [1] 17/5
person [1] 42/12
personal [15] 5/12 7/2 7/3 7/9 7/10 7/13 8/13 9/1 9/6 11/1 11/11 17/16 17/17 18/10 29/8
phase [2] 25/10 25/14
Phelps [1] 2/13
Philadelphia [1] 1/18
phone [2] 15/4 39/18
piercing [4] 16/3 28/2 28/11 29/7
place [1] 14/4
plaintiff [2] 24/13 43/25
plaintiffs [23] 1/14 1/17 3/11 6/2 6/17 6/22 7/12 7/19 7/21 9/21 10/14 12/16 13/15 13/21 14/19 20/21 22/10 33/23 36/10 37/10 39/8 41/21 42/19
plaintiffs' [5] 13/13 13/25 14/2 19/20 22/11
plausible [1] 30/9
play [1] 15/1
PLC [5] 2/4 2/7 2/10 2/13 3/22 26/12 27/14
pleadings [1] 44/4
please [5] 3/3 3/5 3/9 13/24 30/6
Plum [1] 20/4
Plum Creek [1] 20/4
plus [7] 9/21 9/22 34/22 34/23 43/1 43/1

plus [1] 43/2
podium [1] 43/12
point [10] 7/9 9/11 9/19 15/13 15/23 16/14 23/10 42/2 42/18 42/25
points [1] 5/6
position [3] 13/15 13/25 18/5
positions [1] 13/20
postjudgment [4] 14/14 21/6 34/23 43/2
Poydras [2] 2/2 2/19
practicing [1] 18/15
preclude [4] 24/6 25/9 26/15 28/9
predicate [1] 28/23
predominance [2] 11/11 11/14
predominant [1] 5/3
pregnant [1] 35/24
prejudgment [4] 9/21 14/14 34/22 43/1
preliminary [1] 6/6 6/11
prepare [2] 19/10 33/17
prepared [3] 22/14 26/7 40/21
present [7] 7/11 10/15 12/16 33/14 34/10 35/7 44/1
presented [1] 30/1
presenting [2] 6/18 10/15
preserved [1] 29/11
preside [1] 8/10
prevail [1] 18/1
prevent [2] 24/22 25/13
primarily [1] 5/3
principal [1] 15/22
prior [3] 9/25 10/4 34/17
privileged [3] 15/19 16/13 33/25
privy [1] 34/2
probably [3] 12/25 21/6 42/18
problem [8] 4/25 5/6 23/9 33/7 34/12 41/19 41/21 43/25
problems [2] 4/24 42/15
proceed [3] 12/16 14/6 43/25
proceeded [2] 6/25 11/5
proceeding [3] 25/21 26/5 26/6
proceedings [10] 2/23 3/1 5/23 29/10 29/13 29/16 34/3 43/24 44/13 44/20
process [13] 10/19 22/10 23/2 23/11 26/23 29/19 30/16 30/18 30/21 31/15 31/16 32/12 37/16
procured [1] 4/15
produce [1] 37/11
produced [1] 6/16
product [2] 18/11 18/12
PRODUCTS [2] 1/5 3/7
profit [1] 13/17
profits [1] 27/8
promises [1] 32/24
proof [1] 31/18
proofs [1] 33/10
proper [1] 30/23
properly [4] 5/20 21/17 31/10 32/23
properties [1] 11/15
property [5] 11/8 11/14 11/18 12/4 24/24
proposed [1] 33/16
prosper [1] 4/21
protect [1] 10/21
prove [2] 14/21 17/24
proven [1] 17/21
provide [7] 16/24 28/8 29/6 40/1 40/4 40/12 40/13
provided [1] 27/8
providing [3] 7/15 16/24 40/10
province [1] 21/4
proving [1] 14/19
provision [1] 38/22
PSC [10] 3/12 4/5 11/5 12/15 16/21

PSCs [2] 21/19 24/16
pull [1] 30/1
purge [4] 16/17 16/18 16/18 24/1
purged [1] 25/25
purposes [1] 16/2
pursue [2] 14/8 41/15
pursuing [1] 19/16
put [10] 5/24 6/7 10/3 12/13 15/5 18/4 32/3 34/25 37/13 37/18
putting [1] 9/4

## Q

question [3] 33/13 37/1 43/22
questions [2] 7/20 26/8
quickly [2] 8/19 23/16
quite [1] 14/19
quote [3] 21/21 21/25 21/25

## R

raise [2] 23/10 42/19
raised [1] 33/1
rather [2] 8/17 43/12
RE [2] 1/4 3/6
reached [1] 15/3
reactions [1] 5/2
read [3] 7/24 25/4 34/5
Reading [1] 25/5
ready [1] 12/16
really [6] 11/14 15/21 21/24 31/13 36/24 42/3
reasonable [3] 6/9 13/4 42/12
reasons [2] 15/12 26/19
recall [2] 15/18 31/25
received [5] 13/18 14/13 23/12 39/17 39/20
recently [1] 32/6
recited [1] 14/25
record [6] 3/9 7/10 14/17 33/6 33/25 44/20
recorded [1] 2/23
recover [1] 20/2
redress [1] 30/23
refer [2] 5/22 24/8
reference [1] 27/12
references [1] 27/19
referencing [1] 28/2
refrigerants [1] 5/4
refuse [1] 31/2
refused [1] 34/13
regard [4] 21/2 29/12 35/21 38/20
regarding [1] 24/4
regards [2] 21/23 38/10
registry [2] 34/25 35/8
regroup [1] 41/1
rehearing [1] 9/19
reinforced [1] 16/12
Relates [1] 1/7
relating [1] 29/16
relationship [5] 36/4 36/6 36/18 36/22 37/7
relief [2] 16/6 18/20
reluctant [1] 6/4
remedy [1] 11/24 27/7
repair [1] 11/24
repeat [2] 17/14 32/17
repeatedly [1] 32/3
Reporter [3] 2/19 44/17 44/24
represent [1] 3/15
representatives [1] 39/5
represented [2] 12/23 23/6
representing [3] 5/17 21/23 34/18
Republic [1] 30/17

requests [4] 28/20 28/25 39/21 40/13
require [3] 18/9 35/25 41/23
requirements [2] 10/25 26/2
requires [1] 25/21
res [2] 15/1 36/19
res judicata [2] 15/1 36/19
reschedule [1] 37/17
reserve [3] 37/12 44/7 44/8
reserved [1] 31/12
resolution [1] 38/6
resolve [1] 39/2
resolved [2] 17/13 22/25
respect [13] 26/25 27/5 27/8 27/17 28/1 28/5 28/17 29/3 29/4 29/4 29/18 34/10 43/15
respectfully [5] 26/19 27/19 27/23 28/8 29/17
respond [4] 12/2 26/7 28/20 30/5
responded [2] 12/7 29/1
response [4] 13/18 30/3 32/14 39/25
responsibility [1] 44/6
rest [4] 23/14
result [6] 6/14 19/22 22/8 22/12
resulting [1] 12/4
revealing [1] 16/9
reviewed [1] 18/6
RICHARD [2] 2/10 3/23
right [8] 10/21 10/23 13/13 18/2 27/1 37/12 37/14 41/8
rights [2] 29/19 30/22
rise [1] 44/12
road [1] 17/11
roles [1] 29/9
room [2] 5/24 7/21
ROSENBERG [2] 2/13 3/24
rough [2] 25/15 25/15
rule [11] 7/9 8/5 9/24 9/24 10/1 10/3 10/6 10/15 15/20 30/9 36/3
ruled [3] 8/10 9/13 31/10
rules [1] 20/16
ruling [4] 28/5 28/8 28/11 31/3
rulings [3] 20/10 27/21 39/9
run [1] 38/4
RUSS [4] 1/14 3/10 4/4 13/24
Russ Herman [1] 13/24
Rydberg [1] 2/1

## S

safe [1] 5/12
safety [2] 32/4 32/8
said [9] 5/8 6/23 7/25 9/6 11/1 21/2 21/10 23/25 32/21
same [5] 10/24 11/15 19/13 23/21 43/21
SASAC [5] 19/3 19/4 19/6 19/9 19/11
satisfied [4] 16/21 16/22 21/4 32/23
satisfies [1] 17/3
satisfy [3] 16/17 22/16 38/15
satisfying [2] 22/18 24/13
saw [2] 9/12 12/5
say [12] 10/11 17/8 17/8 17/9 18/15 20/22 30/19 33/8 33/8 33/8 33/24 37/5
saying [3] 8/15 32/3 38/23
says [3] 23/20
schedule [4] 29/6 29/16 39/15 40/8
scope [3] 12/10 36/20 36/22
se [1] 31/11
seat [1] 12/25
seated [2] 3/3 18/1
second [3] 12/11 36/4 41/20
Secondly [3] 38/25 40/3 40/11

section [2] 12/8 14/6
Section [1] 1/5
security [1] 20/8
Sedran [1] 1/17
see [10] 20/11 21/7 21/7 23/8 34/7 34/8 36/4 39/1 40/15 43/8
seeing [1] 4/21
seek [1] 11/8
seeking [3] 7/2 11/6 29/12
seemed [1] 13/4
seen [1] 20/3
sell [1] 18/12
selling [1] 18/11
sense [1] 8/15
sent [2] 32/7 32/9
separate [2] 14/11 26/17
September [6] 6/7 12/2 16/10 16/11 16/11 28/19
September 26 [2] 16/11 28/19
serve [1] 19/6
served [5] 5/20 18/24 30/14
service [2] 14/18 19/10
set [10] 9/24 9/24 10/1 10/6 12/8 12/12 13/6 14/23 26/18 43/7
settlement [2] 14/3 20/3
settlements [2] 14/4 38/20
several [2] 12/8 17/25
shape [1] 25/25
sheet [1] 13/7
sheetrock [1] 4/14
shipping [2] 4/18 4/22
shoes [1] 42/13
short [3] 12/25 20/17 39/3
short-circuit [1] 20/17
shorten [1] 4/8
shorter [1] 8/18
shortly [2] 4/23 19/11
should [7] 10/2 13/16 27/24 29/20 36/17 37/12 43/16
show [5] 10/7 14/23 15/19 22/9 22/9 22/10 34/1
side [1] 14/3
sides [1] 8/12
sight [1] 33/22
significant [1] 9/5
signing [1] 15/16
silence [3] 12/20 35/10 43/3
silver [2] 5/2 5/5
simply [1] 11/16
since [6] 27/16 30/24 35/19 39/1 39/16 42/6
sincerely [1] 18/14
single [6] 14/25 15/22 16/2 28/23 30/18 32/22
sit [2] 16/15 20/20
situation [2] 11/24 24/23
six [1] 33/19
small [1] 19/12
so [36] 6/24 7/5 7/18 8/19 9/22 10/7 11/1 11/17 11/20 11/24 13/5 13/18 13/21 15/23 17/8 17/12 19/1 19/14 20/22 20/22 22/25 23/14 23/24 25/8 27/15 32/10 33/15 35/16 35/23 37/17 38/3 38/6 39/7 40/7 40/21 41/17
software [1] 2/23
sole [3] 26/14 26/21 28/17
solely [1] 27/7
solicited [1] 9/2
some [40] 4/6 4/16 4/25 8/12 8/15 11/20 13/9 13/9 14/18 15/7 16/7 16/7 16/8 23/13 24/7 26/3 30/11 31/7 32/1 32/15

somebody [1] 18/12
somehow [1] 5/13
something [5] 6/2 17/8 20/11 37/3 42/24
sometime [1] 4/10
Sometimes [1] 34/16
somewhere [2] 39/7 41/17
soon [1] 20/11
sorry [1] 41/11
sort [2] 5/5 7/13
source [1] 16/24
sources [1] 16/24
South [1] 2/11
Sovereign [1] 19/8
speak [3] 4/4 42/4 43/11
specific [1] 29/8
specifically [1] 28/24
spent [3] 6/17 8/7 25/19
spoken [1] 27/9
square [8] 11/15 11/16 11/22 11/23 12/5 20/22 20/23 20/25
stalking [1] 17/20
stamps [1] 32/5
stand [1] 29/25
start [1] 20/24
started [2] 5/10 17/14
state [1] 33/6
stated [2] 26/12 28/10
states [25] 1/1 1/11 4/22 5/4 5/17 7/18 9/4 9/20 10/18 10/20 11/1 19/15 20/6 25/7 28/24 30/20 32/7 32/13 35/3 35/5 35/6 35/23 39/6 44/17
States' [1] 4/13
stating [1] 27/10
stay [2] 7/8 20/9
STENGEL [2] 2/16 4/2 29/24
stenography [1] 2/23
stick [1] 41/20
still [5] 20/2 31/22 34/9 37/25 38/12
straw [1] 12/25
strike [3] 36/2 44/4 44/6
structures [1] 4/12
subsequent [3] 26/3 27/21 28/5
subsequently [2] 9/13 28/15
subsidiary [1] 4/17
substantive [1] 24/10
subtract [1] 33/15
such [2] 18/25 33/13
sue [1] 19/4
suffer [2] 33/23 33/24
suffered [1] 16/8
suffice [2] 26/20 27/22
sufficient [1] 37/8
suggest [1] 41/1
Suite [5] 1/18 2/2 2/8 2/11 2/14
suits [5] 5/10 5/15 5/18 5/18 5/19
sulfur [1] 5/1
summarize [1] 4/7
supervision [1] 41/24
supply [1] 4/13
supports [1] 25/20
Supreme [6] 9/20 20/10 25/16 29/18 30/25 31/3
Supreme Court [3] 9/20 29/18 31/3
sure [6] 3/24 19/11 23/20 30/10 41/21 43/13
Sutcliffe [1] 2/16
switches [1] 5/6
system [4] 10/21 20/1 22/5 22/6

Taishan [57]
Taishan's [2] 17/19 28/20
take [14] 6/2 6/3 6/4 8/3 9/17 13/15 30/5 30/6 31/17 36/10 36/13 37/20 41/16 43/16
taken [2] 12/7 39/10
taking [1] 17/15
talk [3] 22/24 41/2 41/5
talked [1] 22/13
talking [1] 25/19 34/1 42/22
Target [1] 19/1
task [3] 14/5 15/7 16/21
TAYLOR [5] 1/20 3/14 21/16 26/22 41/10
telephone [1] 43/7
tell [3] 19/14 34/7 37/10
tents [1] 37/25
term [1] 24/8
terms [3] 24/18 28/2 40/10
Terrell [1] 2/1
test [1] 8/15
testimony [1] 6/16
Texas [1] 2/8
TG [5] 5/18 5/21 7/1 34/9 35/13 36/5 36/8
than [9] 6/1 6/9 7/17 15/22 17/19 18/6 24/9 28/2 43/12
thank [13] 3/20 21/13 26/13 29/21 29/22 30/1 34/3 34/5 38/17 43/10 43/19 44/10 44/11
that [250]
that's [17] 6/2 7/18 11/17 21/3 23/9 23/16 23/23 30/25 32/18 32/20 34/16 36/25 38/5 41/4 41/8 44/8 44/9
their [35] 5/23 7/21 7/22 8/15 9/12 9/15 9/17 9/17 10/17 12/4 15/4 16/4 16/7 17/19 17/20 18/12 18/22 19/14 19/21 24/14 26/1 29/3 31/9 33/23 34/19 35/2 35/5 35/12 36/2 36/11 37/24 37/25 38/2 38/3 39/18
them [34] 5/14 7/8 7/14 7/18 7/24 10/8 10/9 10/11 10/12 10/13 10/21 10/23 13/11 15/14 19/14 20/1 24/4 24/14 26/20 27/18 28/7 28/24 34/18 34/18 35/2 35/16 35/17 35/19 37/23 38/2 38/5 40/15 42/8 42/9
themselves [4] 7/11 9/16 10/16 16/17
then [12] 9/17 12/20 13/25 22/25 23/19 31/19 33/8 38/16 40/15 41/2 43/17 44/5
there [26] 4/16 4/24 4/24 5/25 6/23 7/20 12/20 12/20 13/7 15/6 15/19 16/14 19/4 20/2 22/19 22/23 26/3 26/18 27/11 32/1 34/8 36/9 37/1 38/6 38/23 41/22
there's [7] 20/16 20/16 21/4 21/6 35/10 38/22 40/7
thereafter [1] 43/17
therefore [2] 26/2 28/12
therefrom [1] 12/4
these [22] 5/18 16/3 20/18 20/21 20/23 29/9 30/18 30/22 31/21 32/12 33/12 33/18 34/3 37/22 37/24 38/5 39/10 39/17 40/6 40/13 41/23 42/23
they [152]
thing [7] 16/5 19/13 19/23 21/17 31/24 41/6 44/8
things [5] 5/5 5/7 7/13 9/5 39/2
think [11] 17/20 18/1 21/10 21/20 23/16 35/15 36/6 36/25 37/8 41/15
third [2] 7/23 9/8
this [76]

those [25] 2/5 3/15 4/20 7/22 13/16 19/2 23/12 25/23 26/2 28/24 29/2 29/10 29/21 32/5 33/9 37/11 38/21 43/2
though [3] 16/16 23/8 30/3
thought [7] 5/12 8/11 9/5 20/18 21/22 21/24 30/7
thousand [1] 34/22 34/23 43/1
three [5] 8/24 17/17 20/20 34/8 43/8
through [13] 4/11 18/18 20/12 22/6 22/20 23/2 23/13 31/4 31/5 31/15 32/20 33/19 33/19
thumbed [1] 34/11
Thursday [3] 33/7 33/16 41/3
tied [1] 32/11
timber [1] 20/6
time [33] 6/1 6/9 7/3 7/4 7/8 8/4 8/18 9/12 9/19 9/20 10/24 12/17 23/19 23/20 23/21 25/19 28/11 29/5 29/11 31/10 35/7 35/18 37/7 37/19 37/24 39/3 40/22 40/24 41/14 41/20 42/9 42/25 43/17
today [11] 13/12 21/11 22/4 24/5 25/19 26/15 26/21 27/12 28/1 29/14 38/25
together [7] 7/23 8/23
told [2] 31/17 38/2
tolerated [2] 25/16 25/17
tomorrow [3] 38/9 38/13 43/16
Toni [4] 2/19 44/16 44/23 44/23
too [2] 7/21 8/18
took [5] 6/4 7/19 8/23 8/24 13/3
tortured [1] 4/8 33/20 33/21
total [2] 6/22 35/10
totally [1] 25/10
tough [2] 19/12 19/12
transcript [1] 44/19
transcription [1] 2/23
transcripts [1] 7/20
transfer [1] 17/2
transferred [1] 22/20
translated [1] 40/20
translating [1] 42/20
treading [1] 42/18
trial [2] 37/20 37/20
tried [2] 5/23 33/9
true [2] 22/1 44/18
trust [3] 15/5 16/25 18/16
try [3] 4/7 27/21 28/7
trying [3] 23/13 24/22 28/3
TTP [9] 5/18 5/21 10/17 16/1 34/9 35/13 35/22 36/5 36/8
Tusa [4] 2/19 44/16 44/23 44/23
two [10] 7/22 8/21 14/9 14/11 16/12 35/16 35/18 38/14 38/18 39/19
two-week [1] 35/18
twofold [1] 41/19

**U**

U.S [1] 23/14
unconstitutional [3] 24/17 24/21 25/15
under [5] 15/11 16/9 26/22 29/2 43/14
underlying [2] 25/1 26/1
understand [13] 23/17 24/8 33/25 34/6 34/15 34/16 34/24 39/14 41/12 42/11 42/14 43/4 43/5
understanding [4] 13/19 22/5 22/6 44/19
understands [1] 38/20
understood [2] 41/9 44/10
undesirable [1] 16/9
unfair [1] 42/8
unfortunately [3] 9/11 12/24 30/16
unintended [1] 22/8
UNITED [23] 1/1 1/11 4/13 4/22 5/4 7/18

United States [19] 4/22 5/4 7/18 9/4 9/20 10/18 10/20 11/1 19/15 20/6 20/20 32/7 32/9 32/13 35/3 35/5 35/6 35/23 39/6
United States' [1] 4/13
unless [2] 11/2 24/1
until [6] 10/18 11/1 21/7 24/1 32/21 35/3
up [14] 8/23 10/7 14/21 19/24 21/24 31/8 31/11 31/19 32/11 32/21 37/13 41/7 43/7 43/12
up-the-line [1] 37/13
upcoming [1] 13/14
upon [6] 15/25 21/25 28/4 28/19 29/17 35/22
urge [1] 38/6
us [30] 2/4 2/7 2/10 4/11 6/3 16/5 16/9 18/17 18/19 19/8 19/14 19/16 20/8 21/18 23/6 23/18 24/22 24/24 25/9 25/20 26/5 26/13 27/23 28/9 29/3 29/4 38/12 38/13 40/23 44/1
use [4] 19/24 21/21 24/9 38/4
used [1] 4/23
using [2] 2/23 20/1
usually [1] 4/4

**V**

vacate [1] 7/2
various [2] 4/20 5/17
veil [4] 16/3 28/3 28/10 29/7
veracity [1] 32/2
very [15] 4/7 5/25 11/10 17/7 17/9 17/10 17/22 29/22 31/20 32/5 32/19 34/5 34/17 40/24 44/11
vessels [2] 18/25 19/2
violated [1] 25/24
violating [2] 11/4 30/10
violation [1] 26/3
Virginia [1] 17/18
visit [1] 8/9
voluntarily [2] 19/14 44/1

**W**

Wacker [1] 2/11
wait [1] 43/23
walk [3] 9/15 22/15 34/3
walked [1] 42/12
Walnut [1] 1/18
want [21] 15/3 20/12 20/14 20/20 20/25 20/25 21/1 21/16 26/13 28/16 29/10 31/24 32/12 33/2 33/18 37/10 38/18 38/23 39/20 40/15 44/7
wanted [8] 7/10 8/19 9/22 15/5 18/24 38/12 40/11 41/10
wants [2] 38/12 39/14
warranted [2] 17/2 31/16
was [62]
way [8] 6/16 9/23 12/6 20/19 25/24 30/16 34/7 43/25
we [174]
website [4] 5/24 6/7 10/4 12/14
week [8] 7/19 17/11 21/6 35/18 39/15 40/7 40/22 41/14
weeks [9] 35/16 37/8 37/18 38/14 39/2 39/19 40/18 40/24 43/8
WEINBERGER [2] 2/1 3/20
welcome [1] 15/14
well [12] 3/20 5/4 5/24 11/17 18/24 23/5 31/18 35/2 38/14 40/14 40/16 41/19
went [6] 7/15 18/23 19/21 20/5 20/6 31/25

**X**

5/18 5/19 5/19 5/24 6/3 6/23 7/20 7/25 19/18 20/7 27/14 27/16 28/19 28/22 29/1 29/1 30/14 32/4 32/5 33/9 34/2 38/20 43/14
West [2] 1/22 2/17
what [38] 6/14 7/18 7/25 7/25 8/15 9/14 11/17 11/22 17/12 18/21 19/19 19/22 20/4 20/23 20/24 21/11 23/18 24/7 24/21 26/14 27/25 30/21 31/5 31/6 31/13 31/13 31/20 32/2 32/16 33/8 33/8 35/4 35/19 36/25 40/9 40/15 41/1 41/2
what's [3] 15/15 18/25 32/19
whatever [3] 23/19 42/5 44/7
when [18] 4/11 6/1 7/6 10/19 18/20 19/5 19/12 19/19 20/5 20/5 21/22 22/1 31/25 32/25 37/19 38/10 42/9
where [13] 17/12 17/24 19/14 20/15 21/1 21/22 21/23 24/23 25/1 27/20 31/1 42/2 43/8
whether [19] 6/13 12/17 15/10 19/25 25/22 25/23 28/25 29/14 32/2 35/11 35/12 35/22 36/7 36/7 36/18 37/12 42/3 42/4 42/4
which [22] 5/1 5/2 5/16 5/22 10/10 13/19 14/14 14/23 15/12 15/19 17/16 18/6 19/11 24/8 25/6 26/15 28/22 31/16 31/16 33/1 34/24 39/5
while [34] 34/11 35/13
whispered [1] 32/17
who [15] 3/24 5/8 5/24 12/3 15/15 18/21 21/18 26/17 29/23 33/14 33/18 34/13 37/17 39/17
who's [2] 15/16 15/16
wholly [1] 4/17
whom [3] 16/7 16/8 16/8
why [2] 18/24 34/16
will [50]
willing [4] 24/7 37/3 38/25 43/24
willingly [2] 36/1 36/15
willingness [1] 37/15
Wiltz [2] 5/16 15/2
windows [1] 8/7
wire [2] 15/5 17/2
wires [3] 5/2 5/3 5/5
wish [1] 43/23
within [3] 21/3 35/18 40/18
without [2] 8/7 39/9
witnesses [5] 7/16 7/17 8/14 8/14 44/1
Wizard [1] 21/21
WL [1] 14/11
wonder [1] 32/16
wood [1] 20/6
wood/timber [1] 20/6
word [3] 13/3 16/18 19/24
work [7] 10/14 18/23 22/19 23/13 23/20 31/5 43/24
worked [2] 8/7 17/10
working [5] 10/14 22/18 23/2 31/4 43/6
world [1] 5/4
would [23] 8/4 8/12 8/18 12/5 13/17 15/10 15/10 17/14 18/2 19/6 19/15 21/24 22/24 23/3 23/18 25/16 25/25 26/4 28/16 30/4 39/2 40/8 41/14
written [1] 8/18
wrote [4] 8/17 8/20 8/25 16/11

**Y**

years [14] 16/6 17/6 17/15 18/14 18/18 20/15 20/20 30/14 31/1 31/7 32/11 33/19 33/20 42/13
Yes [3] 16/11 38/9 43/18

you [50]
you're [1]  37/2
your [94]
Your Honor [65]
Your Honor's [10]  14/10 15/24 16/10
 21/3 27/9 28/5 28/18 28/21 28/23 29/6