UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: *Amorin, et al. v. State-owned Assets Supervision and Administration Commission, et al.*, Case No. 2:14-cv-1727 (E.D. La.) | |

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PLAINTIFFS' STEERING COMMITTEE TO SERVE DEFENDANT STATE-OWNED ASSETS SUPERVISION AND ADMINISTRATION COMMISSION VIA MAIL PURSUANT TO 28 U.S.C. § 1608(b)(3)(B) AND/OR THROUGH CNBM GROUP PURSUANT TO F.R.C.P. 4(f)(3)

## I.    INTRODUCTION

On July 29, 2014, the Plaintiffs' Steering Committee ("PSC") filed an Omnibus

Complaint ("Omni XIX") against the State-owned Assets Supervision and Administration

Commission of the State Council of the People's Republic of China ("SASAC") and the

"Taishan Defendants" controlled by SASAC, namely:  Taishan Gypsum Co., Ltd. f/k/a

Shandong Taihe Dongxin Co., Ltd. ("Taishan"), its parents Beijing New Building Materials

Public Limited Co. ("BNBM"); China National Building Material Co., Ltd. ("CNBM"); Beijing

New Building Materials (Group) Co., Ltd. ("BNBM Group"); and China National Building

Materials Group Co. ("CNBM Group"); and Taishan's wholly-owned subsidiary Taian Taishan

Plasterboard Co., Ltd. ("TTP").[1]  The Complaint alleges, on behalf of a class of 4,000 Plaintiffs

who have suffered damages as a result of having Taishan Chinese Drywall installed in their

---

[1] Rec. Doc. No. 17906.

properties, that SASAC and the Taishan Defendants engaged in commercial activities and "took advantage of the American marketplace by selling defective drywall throughout the country but then walked away from responsibility for their products after being called to task for the injuries they caused to thousands of American property owners."[2]  Moreover, the Complaint alleges that "[b]ecause all of the defendants aided and abetted one another and acted in concert, each of the Defendants is in contempt of the district court's July 17, 2014 order.  Further, as a result of their concerted actions, all of these defendants are collectively (jointly and severally) liable for damages to plaintiffs which are in excess of $1.5 billion."[3]

As this Court has already found, SASAC exercises extensive control and influence over more than 100 large central State-owned Enterprises ("SOEs") in China,[4] including CNBM Group,[5] which is a Taishan affiliate.[6]  SASAC controls the Chinese Drywall "plasterboard" manufacturing, exportation and certification industry and supervises and manages the State-owned assets and operations of the SOEs engaged in drywall production.[7]

---

[2] Omni XIX at pp. 1-2.

[3] *Id.* at p. 3.

[4] *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2014 WL 4809520 (E.D. La. Sept. 26, 2014) ("FOFCOL"), *5 at ¶ 25; *see also* List of 117 SASAC SOEs (archived page from SASAC's English website, dated July 29, 2014, attached hereto as Exhibit "A").

[5] *See* Excerpts of CNBM 2006 Global Offering Prospectus Filing, attached to the Affidavit of Yan Gao as Exhibit "Y" [Rec. Doc. No. 18433-27] at p. 27, accessed at: http://www.cnbmltd.com/news_report/en/369.pdf.

[6] FOFCOL, *1 at ¶ 4, *5 at ¶ 26, *6 at ¶¶ 28-29, *8 at ¶ 47, *9 at ¶¶ 50-51.

[7] FOFCOL, *5 at ¶¶ 24-26.

In accordance with the requirements of the Hague Convention (the "Convention"), the PSC translated Omni XIX into Chinese and made attempts to serve SASAC in China through proper channels.  In particular, in conformity with Article 5(a) of the Convention, on August 19, 2014, the PSC's agent APS International, Ltd. transmitted to the Ministry of Justice for the People's Republic of China (the "Ministry") in duplicate (i) the Omni XIX Complaint, (ii) a summary of the Complaint, (iii) a summons, and (iv) a translation of these documents.[8]  This is a prolix and onerous process that costs more than $100,000 to serve each complaint and frequently takes in excess of six months to complete, especially when serving Chinese Defendants.[9]  In this case, for more than six months, the PSC has made numerous attempts to achieve proper service of Omni XIX on SASAC.[10]  Despite these painstaking efforts, on February 3, 2015, the Ministry returned Plaintiffs' request for service without delivering the documents to SASAC, alleging that "[t]he execution of the request would infringe the sovereignty or security of the People's Republic of China."[11]  In addition, the Ministry alleged that SASAC "is the Chinese central government agency which shall enjoy sovereign immunity and not be subject to foreign

---

[8] *See* Affidavit of Jeff. J. Karsten, Paralegal for APS Int'l, Ltd. (attached hereto as Exhibit "B") (attesting to Plaintiffs' efforts to effect service upon SASAC pursuant to the Convention).

[9] *See*, *generally*, Affidavit of Ann Mickow dated 5/4/2012, attached as Ex. 199 to the Affidavit of Russ M. Herman ("Herman Aff."), which was filed with the Court on May 8, 2012, as Exhibit "A" to the PSC's Global Statement of Facts in Opposition to Taishan's jurisdictional motions [*see* Rec. Doc. No. 14215-3].  The Exhibits attached to the Herman Aff. were filed manually, due to their volume [Rec. Doc. No. 14224].  These Exhibits contain evidence derived from the jurisdictional discovery that this Court oversaw in this litigation.

[10] *Id*.

[11] *See* Return of Request for Service (*citing* Article 13 of the Convention) (attached hereto as Exhibit "C").

jurisdiction."[12]  The Ministry's refusal to serve SASAC with the Omni XIX complaint on

grounds of sovereign immunity flies in the face of an exception to service on a foreign sovereign

contained in the Foreign Sovereign Immunities Act ("FSIA") in cases where the suit is based

upon "commercial activity of the foreign state" that "causes a direct effect in the United States."

The allegations in Omni XIX are by Plaintiffs residing in the United States, who have suffered

extensive property damage to their homes resulting from the commercial activities of SASAC

and the Taishan Defendants.  *See* 28 U.S.C. § 1605(a)(2) & (d).

Moreover, this refusal by a Chinese Defendant to accept service of process in this

litigation is not surprising.  The PSC has been stymied for almost six years by the Taishan

Defendants' unwillingness to accept service of complaints even when they are finally presented

properly through the Convention.  In fact, these Defendants have ignored many properly served

complaints and allowed numerous default judgments to be entered against them.[13]  These cat-

and-mouse games forced Plaintiffs to reattempt service multiple times under the Convention,

which in turn has augmented Plaintiffs' costs significantly and further hampered the prosecution

of Plaintiffs' claims.  By such tactics, CNBM Group, BNBM Group, and other Taishan

Defendants managed to delay service of process by up to a year.  Consequently, Plaintiffs served

CNBM Group, BNBM Group and others repeatedly with complaints in the MDL proceedings in

---

[12] *Id.*

[13] *See*, *e.g.*, Rec. Doc. Nos. 487, 3013, 17814, 17815 (Taishan defaults); *see also* Rec. Doc. Nos. 17814, 17815 (TTP defaults); *Chinese Drywall*, 2014 WL 4809520 at *2-3 (discussing default judgments against Taishan and its Affiliates and including chart of cases in which these entities have been held in default).

accordance with the Convention, while the Defendants sat on the sidelines and allowed default judgments to be entered against them.[14]

Until very recently, the Taishan Defendants refused to participate in the MDL litigation. Beginning on February 12, 2015 and during the ensuing weeks, appearances were entered for BNBM, Taishan, TTP, and the various CNBM Defendants.[15]  Due to the tortured history of service problems and gamesmanship by the Chinese Defendants in this litigation – as demonstrated by the Ministry's recent refusal to serve SASAC after process was commenced through the Convention more than six months earlier, and by Taishan's withdrawal from the MDL litigation following unfavorable decisions at the Fifth Circuit Court of Appeals, and the deliberate decision by the other Taishan Defendants to refuse to accept service of process and/or to disregard service of process and allow default judgments to be entered against them – the PSC requests that the Court authorize service upon SASAC pursuant to Fed. R. Civ. P. 4(f)(3) and 28 U.S.C. § 1608(b)(3)(B).  In addition to service as dispatched by the clerk of the court in "any form of mail requiring a signed receipt," the PSC requests permission to serve SASAC through counsel for SASAC's wholly-owned subsidiary, agent, and alter ego CNBM Group in this litigation pursuant to Fed. R. Civ. P. 4(f).

This Court granted similar motions by the State of Louisiana and the PSC to allow alternative service of process upon Defendants' counsel of record pursuant to Fed. R. Civ. P.

---

[14] *See* Rec. Doc. Nos. 7302, 7735, 15687, 17814, 17815 (CNBM, CNBM Group, BNBM, and BNBM Group defaults); *see also* FOFCOL, *2-3.

[15] *See* Rec. Doc. Nos. 18352, 18406, 18427, 18428, 18462.

4(f).[16]  In a related declaratory judgment suit filed in Oregon, *Amorin, et al. v. China Nat'l Building Materials Import and Export Corp., et al.*, 3:15-cv-184 (D. Ore.), which has now been transferred to this MDL, the Magistrate Judge permitted alternative service on two CNBM subsidiaries – China National Building Material Import and Export Company ("CNBM Trading") and CNBM Forest Products (Canada), Ltd. – through their counsel in related litigation in that jurisdiction.[17]

Plaintiffs are requesting this relief on an expedited basis, as the preexisting litigation involving Defendants before this Court is nearly concluded and Plaintiffs wish to serve SASAC as soon as possible.

## II.    FACTUAL BACKGROUND

As this Court well knows, the Taishan Defendants have taken every opportunity to evade service in this litigation and abuse the judicial process.  Even after this Defendant appeared in the litigation for the first time on June 10, 2010, to vacate the default judgments in *Germano*[18] and *Mitchell*,[19] and both Taishan and TTP participated for several years in extensive discovery and briefing in the MDL, through their United States lawyers, in conjunction with their multiple jurisdictional challenges before this Court and two appellate panels of the Fifth Circuit, these

---

[16] Rec. Doc. No. 18228; *see also* Order dated June 25, 2015, granting the PSC's Motion to Approve Alternative Service of Process Pursuant to Fed. R. Civ. P. 4(f)(3) [Rec. Doc. No. 17790].

[17] *See* Order permitting alternative service of process on counsel (attached hereto as Exhibit "D").

[18] Rec. Doc. No. 3013 (default judgment entered in *Germano v. Taishan Gypsum Co., Ltd.*, 09-6687 (E.D. La.)).

[19] Rec. Doc. No. 277 (preliminary default judgment entered in *The Mitchell Co., Inc. v. Knauf Gips KG, et al.*, 09-4115 (E.D. La.)).

Defendants steadfastly refused to enter an agreement allowing their counsel to accept service of process for other complaints filed against them in the MDL.  Instead, they insisted upon service of process of each complaint in accordance with Rule 4 of the Federal Rules of Civil Procedure and the Convention.  Complicating matters even further, Taishan and TPP terminated their United States lawyers in July, 2014, after the *Germano* judgment was final and the Court ordered Taishan to participate in a Judgment Debtor examination, which resulted in the Contempt Order and Injunction entered by the Court on July 17, 2014 [Rec. Doc. No. 17869].[20]

A similar lack of regard for the jurisdiction of United States Courts was demonstrated by the other Taishan Defendants (CNBM and BNBM), who evaded service based on specious contentions of technical flaws in the process.  In many instances, the MDL Plaintiffs' attempts to serve their complaints consistent with the Convention were rebuffed for a variety of reasons, including an incorrect address due to relocation of the corporate office or alleged minor variations between the Defendant's corporate legal name and the company's name as posted on their website (*e.g.*, "China National Building Materials Group Company Limited" vs. "China National Building Materials Group Corporation").[21]

---

[20] Taishan remains in contempt of court [*see* Rec. Doc. No. 18493] and the Court has ordered discovery of Taishan and CNBM/BNBM regarding any violations of the injunction prong of the Court's Contempt Order [Rec. Doc. No. 18493].

[21] Minor difference in how a defendant's name is spelled has consistently been held to be an improper basis for refusing service of process.  *See Brackens v. USA Credit*, 233 F.R.D. 613, 614 (D. Kan. 2005); *Scottsdale Ins. Co. v. Littlepage*, 1993 WL 275162, * 4 (E.D. Pa. July 16, 1993) (refusing to overturn default judgment where there was a minor inaccuracy in the defendant's name); *McManus v. Washington Gas Light Co.*, 1991 WL 222345, * 6 (D.D.C., Oct 15, 1991); *Tremps v. Ascot Oils, Inc.*, 561 F.2d 41, 44 (7th Cir. 1977); *United States v. A.H. Fischer Co., Inc.*, 162 F.2d 872, 873 (4th Cir.1947) ("A suit at law is not a children's game but a serious effort on the part of adult human beings to administer justice; and the purpose of process is to bring parties into court. If it names them in such terms that every intelligent person understands who is meant, as is the case here, it has fulfilled its purpose; and courts should not put themselves in the

Following Taishan's refusal to appear for its court-ordered Judgment Debtor Examination in open court and the Court's entry of the Contempt Order and Injunction enjoining Taishan and its affiliates and subsidiaries from "conducting any business in the United States until or unless [Taishan] participates in this judicial process,"[22] the PSC filed Omni XIX against SASAC and the Taishan Defendants.  This complaint seeks damages on behalf of more than 4,000 families who suffered extensive property damage to their homes as a result of defective Chinese Drywall manufactured by Taishan and/or its alter ego TTP, exported, marketed, and sold by the Defendants to customers in the United States.  Unfortunately, despite filing numerous lawsuits, beginning in 2009, against these manufacturers and their controlling parent companies CNBM Group, BNBM Group, CNBM, BNBM, and now SASAC, to date, none of these Plaintiffs have received any money from the Taishan Defendants.[23]

Although Plaintiffs have been unsuccessful in their attempts to serve SASAC through the Convention, these Chinese Defendants are aware of the lawsuit, which has been the subject of much discussion among them.  Taishan's attorneys have reported that ████████████████ ████████████████████████████████████████████████

---

position of failing to recognize what is apparent to everyone else."). *See also Hensgens v. Deere & Co.*, 869 F.2d 879, 884 (5th Cir. 1989) ("Law is not a game of scrabble. The original timely filed petition naming John Deere Corp. as the defendant interrupted prescription against Deere & Company under Louisiana Civil Code article 3462."); *Triangle Distributing, Inc. v. Shafer, Inc.*, 1991 WL 164333, *3 (6th Cir. Aug. 23, 1991) (overturning lower court's order refusing to grant motion to correct name of party defendant).

[22] Rec. Doc. No. at 17869 at 3.

[23] Taishan is "in the process of satisfying the *Germano* Default Judgment" on behalf of seven families [Rec. Doc. No. 18449-1 at 5], and has been ordered by the Court to do no later than March 31, 2105 [Rec. Doc. No. 18493].  However, thousands of other families are still awaiting relief.

████████████████████████████████████████

████████████████████████████████████████

████████████████████ (emphasis added). *See* Email from Dong [Chungang] to Eugene Chen at Hogan Lovells, dated August 5, 2014 [Rec. Doc. No. 18433-32 (filed under seal)].

SASAC controls the plasterboard industry in China. According to SASAC's official website:

> SASAC "performs investor's responsibilities";
>
> SASAC "shoulders the responsibility of supervising the preservation and increment of the value of the state-owned assets of the [SOEs]";
>
> SASAC "works out assessment criteria";
>
> SASAC "supervises and administers the preservation and increment of the value of the state-owned assets of the [SOEs] through statistics and auditing";
>
> SASAC "is responsible for the management work of wages and remuneration of the [SOEs] and formulates policies regulating the income distribution of the top executives of the [SOEs] and organizes implementation of the policies";
>
> SASAC "guides and pushes forward the reform and restructuring of [SOEs]";
>
> SASAC "appoints and removes the top executives of the [SOEs], and evaluates their performances through legal procedures and either grants rewards or inflicts punishments based on their performances";
>
> SASAC "establishes corporate executives selection system in accordance with the requirements of the socialist market economy system and modern enterprise system, and improves incentives and restraints system for corporate management";
>
> SASAC "is responsible for organizing the [SOEs] to turn the state-owned capital gains over to the state";

> SASAC "is responsible for urging the [SOEs] to carry out the guiding principles, policies, related laws and regulations and standards for safety production and inspects the results in accordance with the responsibilities as investor";
>
> SASAC "directs and supervises the management work of local state-owned assets"; and
>
> SASAC "undertakes other tasks assigned by the State Council."[24]

SASAC owns 100% of CNBM Group,[25] which the Court already ruled is a Taishan affiliate.  FOFCOL, *1 at ¶ 4, *5 at ¶ 26, *6 at ¶¶ 28-29, *8 at ¶ 47, *9 at ¶¶ 50-51.  According to CNBM's official website, CNBM is in the business of manufacturing, exporting, and selling building materials worldwide:

> CNBM is the largest comprehensive building materials industry group in China that integrates scientific research, manufacturing and logistics into one entity, and consists of four business platforms, *i.e.* industry, technology, complete set of equipment, and trading & logistics.  As of the end of 2009, CNBM's total assets exceeded RMB 110 billion, with 100,000 employees, and 20 companies under direct management with 100% share control or majority control, among which 6 were listed companies, including 2 overseas listed.
>
> CNBM practices the parent-subsidiary management system, and is one of those wholly state-owned enterprises carrying out the pilot trial of Board of Directors system and innovation system. As the strategic center, decision center, resources center, and policy & culture center, our Group exercises its right as a contributor. Whereas, our sub-groups functioning as business platforms, are mandated to construct the profit center based on their core

---

[24] *See* SASAC's English website, entitled "Main Functions," which provides a description of SASAC's role in control and management of the Central SOE's (attached hereto as Exhibit "J"), accessed at http://en.sasac.gov.cn/n1408028/n1408521/index.html; *see also* FOFCOL, *5 at ¶ 25.

[25] *See* Excerpts of CNBM 2006 Global Offering Prospectus Filing, attached to the Affidavit of Yan Gao as Exhibit "Y," p. 27, accessed at: http://www.cnbmltd.com/news_report/en/369.pdf.

competences to enlarge brand awareness and increase market share.[26]

CNBM Group "set up more than 38 branches and 8 offices worldwide involving 28 countries and regions located over five continents around the world, and established import and export business relations with more than 120 countries and regions.  At present, the Group has more than 60 overseas building material production lines, including completed ones and those under construction."[27]  CNBM lists three of its representative entities as servicing the United States market:  CTIECO-TECO American Technology, Inc. ("CTIECO-TECO"); CNBM International (USA) ("CNBM (USA)"); and United Suntech Craft, Inc. ("United Suntech").[28] Both CNBM (USA) and United Suntech are Defendants in this MDL, but were defaulted after they ignored properly served complaints.[29]

CNBM Group has reported that in 2014, the company was named to Fortune Global 500 for the fourth successive time:

> On July 7th, the US Fortune magazine published the 2014 Ranking List of World Top 500 Enterprises. China National Building Materials Group Corporation (CNBM Group in short) enters into the Fortune Global 500 for the fourth successive time with its operating revenue of 41.03 billion USD, ranking the 267th place, and rising 52 places over last year. Amongst the three building materials enterprises listed in the Fortune Global 500, CNBM ranks the second with promising momentum.

---

[26] *See* CNBM website (attached hereto as Exhibit "E") (emphasis added), accessed at http://www.cnbm.com.cn/EN/c_0000001600070001/.

[27] *See* CNBM website (attached hereto as Exhibit "F"), accessed at http://www.cnbm.com.cn/EN/c_0000001600030001/.

[28] *Id.*  The PSC has served discovery requests on each of these entities [Rec. Doc. Nos. 18377, 18378, and 18379].

[29] Rec. Doc. No. 17791.

The rapid development of CNBM Group derives from the market-oriented reform of diversified ownership and a series of innovative actions carrying forward the industrial reorganization. Thanks to the exploration into the marketization mode of SOK enterprises (state-owned keyenterprises), CNBM Group reorganized almost a thousand enterprises with limited government capital and hence reactivated a greater amount of social capital, which exerted a positive influence on building material industrial transformation and achieved a win-win situation between China's national assets appreciation and enterprises development. Now <u>CNBM Group has become a remarkable example in SOK enterprises' diversified ownership reformation</u>.

To give a full play in China's economic growth, CNBM Group carried out highly effective works including the innovation, integration, reformation and marketing in its business operation from the year of 2014. Economic indicators of the first half of the year have seen a stable and promising momentum.

<u>OKorder.com is an e-commerce website founded by CNBM Group and now being operated by CNBM International Corporation</u>, an important membership company of CNBM Group's logistic and trade sector. OKorder.com pioneered a brand new business model, the Cross-border E-commerce + Overseas Warehousing, which <u>combines the advantages of traditional international trade company and modern e-commerce company</u>. OKorder.com <u>provides a one-stop international trade service for Chinese manufacturers including Global Marketing, Export Agent, Logistics, Oversea Warehousing and Delivery, Online Supply Chain Financing, and International Trade and E-commerce Training</u>. OKorder.com is dedicated to building up an Online Silk Road and serving to its best for China international trade industry.[30]

Plaintiffs' lawsuit against SASAC, CNBM Group, BNBM Group and the other Taishan Defendants is based upon Defendants' commercial activities in the manufacture and sale of defective drywall that had a direct adverse impact on their homes in the United States. The

---

[30] *See* Announcement dated July 10, 2014 on CNBM's website (attached hereto as Exhibit "G") (emphasis added), accessed at http://www.icnbm.com/en/newsinfo.php?id=19&iid=374. *See also* Pages from OKOrder.com website (attached hereto as Exhibit "I").

Chinese Drywall was manufactured by Taishan and/or TTP.  The Court has held that Taishan, TTP, BNBM, BNBM Group, CNBM, and CNBM Group constitute a single business enterprise for purposes of piercing the corporate veil and holding each of these entities liable for the conduct of their affiliated entities."[31]  Plaintiffs have alleged that: "Because of its controlling interests, SASAC controls all of the Taishan affiliates and subsidiaries that were held in contempt by the District Court."[32]  As shown on the hierarchical Chart of "SASAC-Controlled Affiliates and Subsidiaries" and the supporting Notes to the Chart, illustrating the structure of this conglomerate of interrelated companies, CNBM Group is wholly-owned and controlled by SASAC, which in turn controls BNBM Group, CNBM, Taishan, and TTP.[33]  Together, these entities manufactured, exported, and sold the defective drywall that was installed in Plaintiffs' homes.  Accordingly, the litigation does not infringe on China's sovereignty, warranting alternative service.[34]

Plaintiffs are seeking the Court's intervention in order to bring SASAC into the litigation. In particular, the PSC is requesting that the Court authorize and order the clerk of court to

---

[31] FOFCOL, *9 at ¶ 50.

[32] Omni XIX at 3.

[33] *See* Chart of SASAC-Controlled Affiliates and Subsidiaries and attachment thereto (attached hereto as Exhibit "H").

[34] *See* Fed. R. Civ. P. 4 advisory committee's notes to the 1993 Amendments ("[T]here have been occasions when the signatory state was dilatory or refused to cooperate for substantive reasons.  In such cases, resort may be had to the provision set forth in subdivision (f)(3)."); *In re S. African Apartheid Litig.*, 643 F. Supp. 2d 423, 433 (S.D.N.Y. 2009) ("Court-directed service is particularly appropriate where a signatory to the Hague Service Convention has refused to cooperate for substantive reasons."); *Swarna v. Al-Awadi*, 2007 WL 2815605, at *1 (S.D.N.Y. Sept. 20, 2007) (authorizing alternative means of service where "a signatory state ... has refused to act because of a substantive reason, *i.e.* diplomatic immunity"); *RSM Prod. Corp. v. Fridman*, 2007 WL 2295907, at *3 (S.D.N.Y. Aug. 10, 2007) (finding Convention service procedures unavailable where a signatory state refuses to cooperate for substantive reasons).

dispatch, via "any form of mail requiring a signed receipt," the required documents to be served on SASAC, pursuant to 28 U.S.C. § 1608(b)(3)(B).  In the alternative, Plaintiffs request that the Court authorize the PSC to serve the required documents on SASAC's agent CNBM Group, through counsel in these MDL proceedings.  Service of Omni XIX on SASAC through its agent is permitted under the law.

## III.   ARGUMENT

### A.   Plaintiffs Are Entitled to Effectuate Service of Omni XIX on SASAC Pursuant to 28 U.S.C. § 1608(b)(3)(B).

The Ministry has refused to serve Omni XIX on SASAC pursuant to the Convention, on the grounds that service of the complaint "would infringe the sovereignty or security of the People's Republic of China."[35]  Even assuming that SASAC is an instrumentality of the PRC, service of Omni XIX upon SASAC may still be accomplished pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1608, because this litigation is based upon the commercial activities of SASAC, CNBM/BNBM, Taishan, and TTP concerning the manufacture, export, supply, sale, and distribution of drywall that was installed in Plaintiffs' homes in this country.  The FSIA defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act."  28 U.S.C. § 1603(d). Further, "[t]he commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." *Id.*  Under the FSIA, "[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case … in which the action is based … upon an act outside

---

[35] *See* Return of Request for Service (*citing* Article 13 of the Convention) (attached hereto as Exhibit "C").

the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2).

Service of process under the FSIA provides that:

(b) Service in the courts of the United States and of the States shall be made upon an agency or instrumentality of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state –

(A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or

(B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or

(C) as directed by order of the court consistent with the law of the place where service is to be made.

28 U.S.C. § 1608 (emphasis added).

Plaintiffs have no "special arrangement for service" with SASAC (§ 1608(b)(1)) and they have already attempted to serve SASAC under the Convention, without success (§ 1608(b)(2)). Accordingly, pursuant to § 1608(b)(3), Plaintiffs are seeking an Order authorizing service on SASAC "by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served," which is reasonably calculated to give actual notice to SASAC.

Courts are divided on whether strict compliance with FSIA is required or whether substantial compliance is sufficient. Even where the substantial compliance test is used, the focus is on whether the defendant received actual notice. In *Magness v. Russian Federation*, 247 F.3d 609, 611 (5th Cir.), *cert. denied*, 534 U.S. 892 (2001), the Fifth Circuit held that "Congress intended to require strict compliance with section 1608(a) as to service upon foreign states and their political subdivisions." The Court "also h[e]ld that substantial compliance – that is, actual notice of the suit and the consequences thereof – can be sufficient to satisfy the requirements of section 1608(b) as to service upon an agency or instrumentality of a foreign state." *See also Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994), *cert. denied*, 513 U.S. 1150 (1995) ("strict adherence to the terms of 1608(a) is required."). *Cf. Straub v. AP Green, Inc.*, 38 F.3d 448, 453 (9th Cir. 1997) (formally adopting a "substantial compliance" test for the FSIA, holding that "failure to dispatch the complaint by the clerk of the court did not per se deprive the district court of jurisdiction"); *Sherer v. Construcciones Aeronauticas, S.A.*, 987 F.2d 1246, 1250 (6th Cir.) (omission of translation of complaint did not warrant dismissal), *cert. denied*, 510 U.S. 818 (1993); *Harris Corp. v. National Iranian Radio and Television*, 691 F.2d 1344, 1352 (11th Cir. 1982) ("failure to follow precisely those steps in § 1608 designed to insure

16

that actual service be made should not override and invalidate the fact that in this case notice was actually received"); *Velidor v. L/P/G Benghazi*, 653 F.2d 812 (3d Cir. 1981), *cert. dismissed*, 455 U.S. 929 (1982); *Banco Metropolitano v. Desarrollo de Autopistas y Carreteras de Guatemala*, 616 F. Supp. 301, 304 (S.D.N.Y. 1985) (complaint not translated and not dispatched by clerk); *Obenchain Corp. v. Corporation Nacionale de Inversiones*, 656 F. Supp. 435 (W.D. Pa. 1987) (complaint not dispatched by clerk of court).

In any event, in this case, Plaintiffs' proposal for the clerk of court to serve SASAC through a "form of mail requiring a signed receipt" would constitute strict compliance with the statute, and, therefore, should be granted.  The Ministry's unreasonable refusal to serve SASAC, citing Article 13 of the Convention, should not serve to thwart the progression of this case, which is based upon the commercial activities of this Defendant that have caused harm to the Plaintiffs. *See Devi v. Rajapaska*, 2012 WL 309605, at *1 (S.D.N.Y. Jan. 31, 2012) (citing *Manoharan v. Rajapaksa*, No. 11-235(CKK) (D.D.C.), where the court authorized an alternative means of service (by publication notice) on the President of Sri Lanka despite the invocation of Article 13 of the Convention), *appeal dism'd*, 2013 WL 3855583 (2d Cir. Jan. 30, 2013); *Bleier v. Bundesrepublik Deutschland*, No. 08 C 6254, 2011 WL 4626164, at *6 (N.D. Ill. Sept. 30, 2011) (noting that the court had earlier authorized alternative service pursuant to Rule 4(f)(3) notwithstanding the receiving country's invocation of Article 13 of the Convention), *aff'd*, 739 F.3d 1009 (7th Cir.), *cert. denied*, 134 S. Ct. 2729 (2014).

The Federal Rules of Civil Procedure provide the Court with broad discretion to fashion alternative methods of service under circumstances such as those faced by Plaintiffs here.  *See* Fed. R. Civ. P. 4(f)(3); *RSM Prod. Corp. v. Fridman*, 2007 WL 1515068, at *1 (S.D.N.Y. Mar.

24, 2007) ("The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court.") (citation and internal quotation marks omitted); *cf. S.E.C. v. China Northeast Petroleum Holdings Ltd.*, 27 F.Supp.3d 379, 397 (S.D.N.Y. 2014) (although "court enjoys broad discretion in fashioning alternative methods of service," motion to allow delivery of documents either to individual foreign defendant's daughter-in-law or to counsel for a co-defendant denied where plaintiff did not make "diligent efforts" to serve the defendant in China pursuant to the Convention).

> **B.** **This Case Warrants Alternative Service Pursuant to Rule 4(f)(3) on Counsel for SASAC's Agent and Wholly-Owned Subsidiary CNBM Group.**

The facts of this case warrant that the Court approve alternative service pursuant to Rule 4(f)(3) and allow Plaintiffs to serve the Omni XIX complaint on SASAC through the United States lawyers for SASAC's agent and wholly-owned subsidiary CNBM Group. As noted above, Plaintiffs have attempted for six months now to serve SASAC in accordance with the Convention, with no success. The Taishan Defendants controlled by SASAC have exhibited a pattern in this litigation of completely ignoring service of process and allowing default judgments to be entered against them, outright refusing to accept service of process under the Convention based on minor defects in process, or withdrawing from litigation against them when they are dissatisfied with the results. Under these circumstances, allowing service of process on counsel for SASAC's agent is justified. Such service is consistent with this Court's previous rulings permitting service of process on the Taishan Defendants through their United States lawyers. *See* Rec. Doc. Nos. 17790, 18228; *see also* Exhibit "D" hereto (Order in *Amorin, et al.*

*v. China Nat'l Building Materials Import and Export Corp., et al.*, 3:15-cv-184 (D. Ore.),

allowing alternate service on counsel in related litigation).

### 1.     Alternative Service of Process is Permissible Pursuant to Rule 4(f)(3).

Service on SASAC, as a foreign entity, is governed by Rule 4(f).  *See* Fed. R. Civ. P. 4(h)

(stating that a foreign entity must be served "in a judicial district of the United States ... or at a

place not within any judicial district of the United States, in any manner prescribed by Rule 4(f)

for serving an individual, except personal delivery") (emphasis added).  Rule 4(f)(1) permits

service outside the United States "by any internationally agreed means of service that is

reasonably calculated to give notice, such as those authorized by the Hague Convention."[36]

Subject to enumerated restrictions, Rule 4(f)(2) permits alternative service "if there is no

internationally agreed means, or if an international agreement allows but does not specify other

means, by a method that is reasonably calculated to give notice."  Rule 4(f)(3) also provides that

service on a foreign litigant can be effected "by other means not prohibited by international

agreement, as the court orders."  In general, "[t]he decision whether to allow alternative methods

of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court."

*In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 265 (S.D.N.Y. 2012) (quoting *Madu,

Edozie & Madu, P.C. v. Socketworks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010))

(internal quotation marks omitted).

---

[36] China is a signatory to the Hague Convention.  *See* Convention done at the Hague Nov. 15, 1965, art. 10(a), 20 U.S.T. 361, 658 U.N.T.S. 163, C.T.S. 1989/2.  China has objected to Article 10 of the Convention which authorizes service of process by postal channels.  *Id.  See also Lexmark Int'l, Inc. v. Ink Technologies Printer Supplies, LLC*, 291 F.R.D. 172, 175 (S.D. Ohio 2013).

Courts have long held that there is "no hierarchy among the subsections in Rule 4(f)," *Advanced Aerofoil Techs., AG v. Todaro*, 2012 WL 299959, at *1 (S.D.N.Y. Jan. 31, 2012), and that Rule 4(f)(3) "stands independently, on equal footing" with Rule 4(f)(1), *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014-15 (9th Cir. 2002).   As the Ninth Circuit reasoned in *Rio Properties*, 284 F.3d at 1014-15:

> As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement. No other limitations are evident from the text ....
>
> By all indications, court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2).... Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing. Moreover, no language in Rules 4(f)(1) or 4(f) (2) indicates their primacy, and certainly Rule 4(f)(3) includes no qualifiers or limitations which indicate its availability only after attempting service of process by other means.

*Id.*; *accord GLG Life Tech Corp.*, 287 F.R.D. at 265 (following *Rio Properties*); *Advanced Aerofoil*, 2012 WL 299959 at *1 (same); *FTC v. PCCare247 Inc.*, 2013 WL 841037, at *2 (S.D.N.Y. Mar. 7, 2013) (similar).   In other words, Rule 4(f)(3) is "merely one means among several which enables service of process on an international defendant" and "is neither a 'last resort' nor 'extraordinary relief.'"   *Rio Properties*, 284 F.3d at 1015 (quoting *Forum Fin. Grp., LLC v. President & Fellows of Harvard Coll.*, 199 F.R.D. 22, 23 (D. Me. 2001)).

Applying these principles, "numerous courts have authorized alternative service under Rule 4(f)(3) even where the Hague Convention applies."   *Richmond Techs., Inc. v. Aumtech Bus. Solutions*, 2011 WL 2607158, at *12 (N.D. Cal. July 1, 2011) (citing cases).   *See also Lexmark Int'l, Inc.*, 291 F.R.D. at 175; *Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508 (S.D.N.Y. 2013);

*Russell Brands, LLC v. GVD Int'l Trading, SA*, 282 F.R.D. 21 (D. Mass. 2012).  As noted above, the Court granted similar motions allowing alternative service of process on the Taishan Defendants.[37]

By its terms, Rule 4(f)(3) requires only that service be authorized by a court and "not prohibited by international agreement."  So long as those conditions are met, it should not, and does not, matter whether service was attempted pursuant to Rule 4(f)(1) or (2) and, if so, whether or why such service was unsuccessful.  Therefore, it is well within this Court's discretion to approve alternative service on SASAC through counsel for CNBM Group.

## 2.   Alternative Service of Process on SASAC is Justified Under the Facts of this Case.

Alternative service on SASAC through CNBM Group's United States lawyers is justified in light of the fact that SASAC controls CNBM Group and is CNBM's alter ego, and service on SASAC pursuant to the FSIA may take many months.  *See Lexmark Int'l, Inc.*, 291 F.R.D. at 175 ("Plaintiff also has shown that the circumstances of the case warrant alternative service. This case has been pending for approximately three years, and the Court is well aware of the difficulties encountered by Plaintiff attempting to locate all of the Defendants in this matter. Plaintiff has demonstrated that service on the Chinese entities could be further delayed by more than four months if formal service pursuant to the Hague Convention is required."); *Lyman Morse Boatbuilding Co., Inc. v. Lee*, 2011 WL 52509, at *3 (D. Me. Jan. 6, 2011) (granting the plaintiff's motion for alternative service pursuant to Fed. R. Civ. P. 4(f)(3), finding not only that the Convention did not prohibit such alternative service but, as well, that "any attempt at formal

---

[37] Rec. Doc. Nos. 17790, 18228.

service through the Brazilian judicial system will be, if not fruitless, prolonged for such an extensive period of time that evidence and testimony may well be affected.").

In light of anticipated delays in serving SASAC located in China and the refusal of service of process when rendered, it should come as no surprise that numerous other courts have also approved alternative service on Chinese defendants.  *See In re LDK Solar Sec. Litig.*, 2008 WL 2415186, * 3-4 (N.D. Cal. June 12, 2008) (permitting service of Chinese subsidiary and individual officers by service on parent company in California because such service is not barred by the Hague Convention); *Lexmark Int'l, Inc.*, 291 F.R.D. at 175 (approving alternative service on Chinese defendant by email); *Jian Zhang*, 293 F.R.D. at 510 (approving alternative service on Chinese defendant's American lawyer); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 1091044, * 4 (N.D. Cal. Mar. 13, 2014) (rejecting Chinese defendant's argument that it had been improperly served after court had approved alternative service under Rule 4(f)(3) on defendant's American lawyers).

The PSC has experienced considerable delay and expense in serving the Taishan Defendants with its complaints in the MDL proceedings for the past six years, and is experiencing the same delay from SASAC with regard to Omni XIX.  In order to effectuate service on SASAC before their counsel depart from the litigation and/or Defendants remove assets from the United States, it is respectfully submitted that the Court should approve alternative service of process pursuant to Rule 4(f)(3).

## 3. Service on the Defendants' United States Lawyers is Permissible and Comports with Due Process.

Since ordering alternative service pursuant to Rule 4(f)(3) is within the Court's discretion and is appropriate under the facts of this case, the only remaining question is whether service on

22

CNBM Group's United States lawyers is a permissible procedure.  A method of alternate service is acceptable if it "(1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process."  *S.E.C. v. Anticevic*, 2009 WL 361739, * 3 (S.D.N.Y. Feb. 13, 2009) (citation omitted).  Due process requires that the method of service provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Service on a party's lawyer "is a common form of service ordered under Rule 4(f)(3)."  *Richmond Techs.*, 2011 WL 2607158, at *13.  *See also Knit With v. Knitting Fever, Inc.*, 2010 WL 4977944, at *4 (E.D. Pa. Dec. 7, 2010) ("Repeatedly, courts around the country have found that service upon a foreign defendant through counsel is appropriate to prevent further delays in litigation."); *Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560, 565-66 (C.D. Calif. 2012) (same); *GLG Life Tech Corp.*, 287 F.R.D. at 267 (citing cases).  Further, "[n]othing in the Hague Convention prohibits such service."  *Richmond Techs.*, 2011 WL 2607158, at *13 (emphasis added).  Indeed, because service on counsel occurs domestically, and does not involve transmission of documents abroad, it does not even "implicat[e]" the Hague Convention. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (2012) ("Where service on a domestic agent is valid and complete under both state law and the Due Process Clause, our inquiry ends and the Convention has no further implications."); *accord GLG Life Tech Corp.*, 287 F.R.D. at 267; *RSM Prod. Corp.*, 2007 WL 2295907, at *3.

In any event, service on domestic counsel for CNBM Group will satisfy the requirements of Due Process since CNBM is SASAC's alter ego and subsidiary.

23

IV.   **CONCLUSION**

Plaintiffs pray that the Court enter the proposed Order accompanying their motion for alternative service on SASAC.

Dated: March 25, 2015                    Respectfully Submitted,


BY:
Russ M. Herman (LA Bar No. 6819) (on the Brief)
Leonard A. Davis (LA Bar No. 14190) (on the Brief)
Stephen J. Herman (LA Bar No. 23129)
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
ldavis@hhklawfirm.com

*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin (on the Brief)
Fred S. Longer (on the Brief)
Sandra L. Duggan (on the Brief)
Matthew Gaughan (on the Brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
alevin@lfsblaw.com

*Plaintiffs' Lead Counsel*
*MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Gerald E. Meunier
Gainsburgh, Benjamin, David,
  Meunier & Warshauer, LLC
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2800
Phone:  (504) 522-2304
Fax:  (504) 528-9973
gmeunier@gainsben.com

Peter Prieto
Podhurst Orseck, PA
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Bruce William Steckler
Steckler LLP
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Ervin A. Gonzalez
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
  Echsner & Proctor, PA
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

Jerrold Seth Parker
Parker Waichman, LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@attorneys4people.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave., Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W., Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Anthony D. Irpino
IRPINO LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 25th day of March, 2015.

Respectfully Submitted,

BY:  */s/ Leonard A. Davis*
Russ M. Herman
Leonard A. Davis
Stephen J. Herman
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
ldavis@hhklawfirm.com

*Plaintiffs' Liaison Counsel*
*MDL 2047*

27