UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) ) ) ) | MDL No. 2047<br><br>SECTION "L" |
| THIS DOCUMENT RELATES TO: | ) ) | JUDGE FALLON |
| Block, et. al. v. Gebrueder Knauf Verwaltungsgesellschaft KG, et al.<br>Case No. 11-1363 | ) ) ) ) ) ) | MAG. JUDGE WILKINSON |

### CLASS MEMBER PRIME HOMES AT PORTOFINO FALLS, LTD.'S MEMORANDUM IN SUPPORT OF MOTION FOR RECALCULATION OF SELF-REMEDIATION ESTIMATES TO REFLECT CURRENT MARKET RATES

Class Member, Prime Homes at Portofino Falls, Ltd. ("Prime Homes"), hereby files its Memorandum in Support of Motion for Recalculation of Self-Remediation Estimates to Reflect Current Market Rates. In support thereof, Prime Homes states as follows:

### INTRODUCTION

The issue before the Court concerns the effect of Knauf's unreasonable two year delay in processing, approving and paying 29 of Prime Homes' self-remediation claims. While Knauf's construction estimates may have been accurate when they were prepared over two years ago, due to Knauf's unreasonable delays set forth below, the estimates are outdated and would severely underfund and leave Prime Homes without sufficient funds to complete remediation of its affected properties. Prime Homes' reasonable request is that Knauf's estimates be reissued to reflect current construction market rates.

1

## BACKGROUND

Prime Homes developed a total of 118 properties for the development known as "The Falls of Portofino." Exhibit "A," attached hereto. Prime Homes currently owns and operates 82 properties within The Falls of Portofino. Exhibit "B," attached hereto. Due to its position as a builder and developer, Prime Homes elected to proceed with the Self-Remediation option of the Knauf Settlement. Self-Remediation allows Prime Homes to oversee and control the work, minimize costs and assure its quality.

In order to proceed with Self-Remediation under the Knauf Settlement Agreement, Benchmark Inspections were required of all 82 properties. Only Knauf can clear proeprties for Benchmark Inspections. After Benchmark Inspections were completed, Knauf was to have its agent, Moss Construction ("Moss") timely conduct Walk-Through Inspections. These Walk-Through Inspections were used to generate an Xactimate estimate and a Property Information Sheet for Prime Homes' consideration. The Property Information Sheet provides the Class Member with information as to how much it will receive in construction funds for the affected property. Prime Homes cannot begin remediation work until all affected properties have been funded with the first installment for payment.

On April 27, 2012, Undersigned Counsel reached out to Moss and Knauf to inquire whether Prime Homes' properties had been cleared for Benchmark Inspection by Knauf. Exhibit "C," attached hereto. Unfortunately, Knauf had not cleared the Prime Homes' properties. Undersigned Counsel continued to request Benchmark inspections for the Prime Homes' properties over the next several months. Exhibit "D," attached hereto.

More than four months after Undersigned Counsel's first request, Knauf finally cleared 10 of the 82 Prime Homes' properties for inspections on September 5, 2012. Exhibit "E," attached hereto.

On October 19, 2012, Undersigned Counsel again wrote to Benchmark to inquire as to when the remaining properties would be scheduled for inspection because the pace of the inspections was proceeding slowly. See Exhibit "F," attached hereto. Ultimately, Benchmark conducted the inspections of Primes Homes' properties over a three-month period from September 13, 2012 and ending on December 5, 2012. Exhibit "G," Chart of relevant dates for each property, attached hereto. Of the 82 properties, 28 contained defective Knauf drywall and were eligible for the Knauf Settlement.

Once the Benchmark Inspections were completed, and on a rolling basis, Undersigned Counsel attempted to coordinate Moss Walk-Through Inspections for the 28 eligible properties. Moss Construction conducted its first Walk-Throughs of Prime Homes properties in November of 2012. Ex. G. Seven properties were initially inspected in November 2012; however, the remaining 18 properties were not cleared for inspection in November 2012 by Knauf despite Undersigned Counsel's efforts.

Undersigned Counsel did not receive the first Scope of Work on a Prime Homes' property until February 4, 2013, nearly ten months after it initially requested Benchmark Inspections. Ex. G. On March 7, 2013, Undersigned Counsel inquired again about scheduling the remaining Walk-Through Inspections. Moss told Undersigned Counsel that the remaining Prime Homes' properties still had not been released for Walk-Through Inspections by Knauf. Exhibit "H," attached hereto.

Additionally, on March 7, 2013, Undersigned Counsel requested additional Scopes of

3

Work for the remaining Prime Homes properties. Exhibit "I," attached hereto. Just a month before, Prime Homes had received a Scope of Work for one unit. The units are substantially similar to one another, there are only four model units. Therefore; the Scopes of Work do not require much customization. Moss still had not completed the Scopes of Work for the remaining properties. On March 26, 2013, Undersigned Counsel received one additional Scope of Work for a Prime Homes' property. Meaning that, by the end of March 2013, Knauf had only approved 2 Scopes of Work out of 28.

On April 3, 2013, Undersigned Counsel again requested Property Information Sheets from Brown Greer. Exhibit "J," attached hereto. These Property Information Sheets were necessary for Prime Homes to evaluate the feasibility of the Self-Remediation Option. By June 11, 2013 Undersigned Counsel had only received 12 out of 28 Property Information Sheets for the Prime Homes' properties. Exhibit "K," attached hereto. This is despite the Moss Walk-Through Inspections having been started in November 2012, a delay of eight months. Moreover, six of the remaining properties still had yet to be released to Moss by Knauf. On June 4, 2013, Moss finally conducted Walk-Through Inspections for the remaining properties, which had finally been released to Moss by Knauf. Ex. G.

On December 4, 2013, Undersigned Counsel requested all outstanding Benchmark Reports and Property Information Sheets for Prime Homes' properties. Exhibit "M," attached hereto. The Benchmark Reports and Property Information sheets were not ultimately provided for all the affected properties until February 5, 2014, *over 22 months* since Undersigned Counsel requested initial inspections. Exhibit "N," attached hereto. Due to the delays in finalizing inspections and receiving documentation, Undersigned Counsel requested on December 4, 2013 that Moss and Prime Homes' representatives

4

meet to discuss the issues with the delays.

On March 7, 2014, Undersigned Counsel began submitting Milestone 1 documentation for the Prime Homes' properties. Milestone 1 documents include: Homeowner Wire Transfer Instruction Form, Contractor Wire Transfer Instruction Form, W-9 for Contractor, Property Owner Release and Assignment of Claims, Binding Contract for Remediation, and Rider to Self-Remediation Contract. The Milestone 1 documentation Undersigned Counsel submitted, including the required Property Owner Release and Assignment of Claims ("Release"), was submitted so that that Milestone 1 payments could be issued to Prime Homes to begin construction. *See* Composite Exhibit "O," attached hereto. On April 16, 2014, Brown Greer advised Undersigned Counsel that the releases were not acceptable to Knauf due to alleged deficiencies in the releases. Exhibit "P," attached hereto. On May 8, 2014, Undersigned Counsel submitted corrected releases to Brown Greer to address the deficiencies alleged by Knauf. Four days later, on May 12, 2014, Undersigned Counsel again inquired about the releases with Brown Greer and, again, was informed that the releases were rejected by Knauf due to alleged deficiencies. Exhibit "Q," attached hereto. Undersigned Counsel then submitted a sample release requesting that Brown Greer confirm that it was free of deficiencies. Exhibit "U," attached hereto. Brown Greer confirmed the same. Ex. U.

On June 25, 2014, Undersigned Counsel sought Knauf's permission to alter the releases by striking through the language "and occupies" as Prime Homes is a developer and never occupied the properties. Knauf consented to Undersigned Counsel's request on June 30, 2014. Exhibit "R," attached hereto. Again, Undersigned Counsel submitted a sample release requesting that Brown Greer confirm that it was free of deficiencies.

Since May 12, 2014, Undersigned Counsel has been in communication with Brown Greer in an effort to address the alleged deficiencies. Brown Greer has attempted to accommodate Undersigned Counsel to finalize this process; however, Knauf continues to reject Prime Homes' releases and paperwork. Further, Knauf is requiring the execution of new releases to address any deficiencies, even those which were simply scrivener's errors.

On November 19, 2014, Undersigned Counsel contacted to Knauf in order to address the long-delayed and outdated Self-Remediation values. Exhibit "S," attached hereto. Knauf's response was to deny any recalculation because the releases are currently "four months old." Ex. S. Knauf obstinately gave this response despite the knowledge that only two of the estimates were four months old, while the remaining twenty six spanned a period exceeding one year. Further, according to Brown Greer, funding will not be requested for the Self-Remediation of these properties until there are no longer alleged deficiencies on any property's Release. Exhibit "T," attached hereto.

In summary, the relevant timeline is as follows:

- April 27, 2012 – Undersigned Counsel reached out to Moss Construction and Knauf's counsel to inquire whether Prime Homes' properties had been cleared for Benchmark Inspection;
- September 13, 2012 – nearly four months after Undersigned Counsel's request, Benchmark conducted the first inspections of Primes Homes' properties;
- December 5, 2012 – benchmark conducted the final inspections of Prime Homes' properties;
- June 15, 2013 – fourteen months after Undersigned Counsel initially contacted

6

Knauf regarding Prime Homes' properties, the final set of Prime Homes' properties were finally released to Moss by Knauf and scheduled for Moss Walk-Through Inspections;

- December 4, 2013 – Undersigned Counsel requested all outstanding Benchmark Reports and Property Information Sheets for Prime Homes' properties;

- March 14, 2014 – outstanding Benchmark Reports and Property Information Sheets were finally provided to Undersigned Counsel;

- April 1, 2014 – Undersigned Counsel submitted Milestone 1 documentation for the Prime Homes' properties;

- April 30, 2014 – Undersigned Counsel inquired about the releases signed by Prime Homes' principals and submitted to Brown Greer and was advised by Brown Greer that the releases were not acceptable to Knauf due to alleged deficiencies;

- May 8, 2014 – Undersigned Counsel submitted corrected releases to address the alleged deficiencies;

- May 12, 2014 – Undersigned Counsel again inquired about the releases with Brown Greer and, again, was informed that the releases were rejected by Knauf due to alleged deficiencies; most of which were scrivener's errors and information Knauf provided; and,

- November 19, 2014 – Knauf refuses to recalculate the estimates for Prime Homes' properties despite the fact that some were over one year outdated.

## ARGUMENT

In addition to providing defective drywall to 28 of its Prime Homes' properties,

7

Knauf has caused further substantial damage to Prime Homes due to its unreasonable delays in: 1) having the Prime Homes' properties cleared for Benchmark Inspections, this process took Knauf eight months from start to finish; 2) having Moss conduct Walk-Through Inspections, this process took Knauf 24 months from start to finish; 3) issuing the Scopes of Work, this process took Knauf 18 months from start to finish; 4) preparing Property Information Sheets after the Moss Walk-Throughs so Prime Homes could evaluate the estimates, this process took Knauf 19 months from start to finish; and 5) rejecting Prime Homes' signed releases for alleged deficiencies such as a missing case caption or scrivener's errors, when the information was already known to Knauf by virtue of this litigation. Prime Homes asks the Court to use its equitable powers to order Knauf to recalculate the Self-Remediation estimates to reflect current market rates because the Xactimate estimates are over two years old and construction prices have substantially increased.

Throughout this entire process, Undersigned Counsel has had to follow-up and coordinate with numerous parties to affect scheduling of inspections, completion of estimates, finalization of Property Information Sheets, and review of documentation submitted. This process should only have taken a few months, in part because the affected units are all in one development and they are substantially similar, there being only four different types of units. Instead, the process has taken over two years due to Knauf's unreasonable delays set forth above. Given the length of this process and the changes in construction prices during that period, Prime Homes faces a substantial shortfall to complete the remediations because of the increase in construction costs during the time of Knauf's unreasonable delays.

The objective of the Knauf Settlement is to encourage remediation of properties to eradicate the Chinese drywall problem. Prime Homes seeks only sufficient funding to complete the remediation at current construction prices for its properties, not a windfall. Prime Homes has been unable to sell or rent the twenty-eight units due to Chinese drywall. Knauf is now only further damaging Prime Homes due to the unreasonable delays set forth above. It is inequitable to require Prime Homes to accept Knauf's long delayed Xactimates and construction cost estimates when construction costs have substantially risen during the pendency of the claims process and the shortfall is due to Knauf's unreasonable delays in inspecting, conducting Walk-Throughs, and providing estimates to Prime Homes.

## CONCLUSION

WHEREFORE, Prime Homes requests that the Court enter an order granting its Motion for Recalculation of Self-Remediation Estimates to Reflect Current Market Rates and issue new Property Information Sheets for the Prime Homes properties with current Xactimates and construction rates.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing MEMORANDUM IN SUPPORT OF MOTION FOR RECALCULATION OF SELF-REMEDIATION ESTIMATES TO REFLECT CURRENT MARKET RATES has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail, or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this on this ___ day of March, 2015.

/s/

ERVIN A. GONZALEZ
Fla. Bar No. 500720
Ervin@colson.com
PATRICK S. MONTOYA
Fla. Bar No. 524441
Patrick@colson.com
NATALIE M. RICO
Fla. Bar No. 0065046
Natalie@colson.com
COLSON HICKS EIDSON
COLSON MATTHEWS MARTINEZ
GONZALEZ KALBAC & KANE
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax:    (305) 476-7444
*Counsel for Plaintiffs*