# EXHIBIT "C"

```
 1                    UNITED STATES DISTRICT COURT

 2                   EASTERN DISTRICT OF LOUISIANA

 3


 4
     IN RE:  CHINESE-MANUFACTURED   *      MDL No. 2047
 5           DRYWALL PRODUCTS        *
             LIABILITY LITIGATION    *      Section L
 6                                   *
                                     *      New Orleans, Louisiana
 7                                   *
     Relates to:  All Actions        *      March 17, 2015
 8   * * * * * * * * * * * * * * * *

 9

10                     ORAL ARGUMENT BEFORE
                  THE HONORABLE ELDON E. FALLON
11                 UNITED STATES DISTRICT JUDGE

12
     Appearances:
13

14   For the Plaintiffs:          Herman Herman & Katz, LLC
                                   BY:  RUSS M. HERMAN, ESQ.
15                                 820 O'Keefe Avenue
                                   New Orleans, Louisiana 70113
16

17   For the Plaintiffs:          Levin Fishbein Sedran & Berman
                                   BY:  ARNOLD LEVIN, ESQ.
18                                 510 Walnut Street, Suite 500
                                   Philadelphia, Pennsylvania 19106
19

20   For Taishan:                 Alston & Bird, LLP
                                   BY:  BERNARD TAYLOR, ESQ.
21                                     MICHAEL P. KENNY, ESQ.
                                       CHRISTINA HULL EIKHOFF, ESQ.
22                                 1201 West Peachtree Street
                                   Atlanta, Georgia 30309
23

24

25
```

```
 1   For Taishan:                 Hangartner Rydberg & Terrell, LLC
                                  BY:  ALAN D. WEINBERGER, ESQ.
 2                                701 Poydras Street, Suite 310
                                  New Orleans, Louisiana 70139
 3

 4   For BNBM Group and           Dentons US, LLP
     BNBM, PLC:                   BY:  MICHAEL H. BARR, ESQ.
 5                                1221 Avenue of the Americas
                                  New York, New York 1000
 6

 7   For BNBM Group and           Dentons, US, LLP
     BNBM, PLC:                   BY:  C. MICHAEL MOORE, ESQ.
 8                                2000 McKinney Avenue, Suite 1900
                                  Dallas, Texas 75201
 9

10   For BNBM Group and           Dentons US, LLP
     BNBM, PLC:                   BY:  RICHARD L. FENTON, ESQ.
11                                233 South Wacker Drive, Suite 7800
                                  Chicago, Illinois 60606
12

13   For BNBM Group and           Phelps Dunbar, LLP
     BNBM, PLC:                   BY:  HARRY ROSENBERG, ESQ.
14                                365 Canal Street, Suite 2000
                                  New Orleans, Louisiana 70130
15

16   For CNBM Group and           Orrick Herrington & Sutcliffe, LLP
     CNBM Limited:                BY:  JAMES L. STENGEL, ESQ.
17                                51 West 52nd Street
                                  New York, New York 10019
18

19   Official Court Reporter:     Toni Doyle Tusa, CCR, FCRR
                                  500 Poydras Street, HB-275
20                                New Orleans, Louisiana 70130
                                  (504) 589-7778
21

22

23   Proceedings recorded by mechanical stenography using
     computer-aided transcription software.
24

25
```

<u>**PROCEEDINGS**</u>

**(March 17, 2015)**

THE COURT:  Be seated, please.  Good morning, ladies and gentlemen.

        Call the case, please.

THE DEPUTY CLERK:  MDL No. 2047, In Re: Chinese-Manufactured Drywall Products Liability Litigation.

THE COURT:  Counsel, make your appearance for the record, please.

MR. HERMAN:  Good morning, Judge Fallon.  Russ Herman of Herman Herman & Katz, New Orleans, on behalf of plaintiffs and the PSC.

MR. TAYLOR:  Good morning, Your Honor.  Bernard Taylor from Atlanta, and I'm honored to be here in your courtroom and to be in New Orleans.  We are here to represent Taishan with my colleagues, Mike Kenny and --

MR. KENNY:  Good morning, Your Honor.

THE COURT:  Good morning.

MR. WEINBERGER:  Good morning, Your Honor.  I'm Alan Weinberger for Taishan as well, Your Honor.  Thank you.

MR. BARR:  Your Honor, Michael Barr from Dentons on behalf of BNBM Group and BNBM, PLC.  I'm also here with my partners, Michael Moore and Richard Fenton, and Harry Rosenberg, who I'm sure the Court knows.

MR. ROSENBERG:  Good morning, Your Honor.

08:59:12  1    **MR. STENGEL:**  Good morning, Your Honor.
08:59:12  2  James Stengel of Orrick Herrington for CNBM Group and
08:59:18  3  CNBM Limited.
08:59:24  4    **MR. LEVIN:**  We usually let Russ speak, but
08:59:27  5  Arnold Levin on behalf of the PSC, Your Honor.
08:59:30  6    **THE COURT:**  Let me make some background comments to
08:59:35  7  try to summarize this matter.  It's very hard.  It's been a
08:59:39  8  long and tortured history, but I will do my best to shorten it
08:59:44  9  as much as I can.
08:59:48  10    As we know, this case began sometime in 2005
08:59:53  11  through 2008 when the hurricanes left us with a lot of damage
09:00:03  12  to houses and other structures and the building boom on the
09:00:08  13  East Coast depleted the United States' supply of drywall.
09:00:14  14  Drywall, or sheetrock as we call it in our area, needed to be
09:00:18  15  procured.
09:00:20  16    It was found that there were some opportunities
09:00:25  17  in China.  Knauf had a wholly owned subsidiary in China that
09:00:34  18  manufactured drywall.  They were able to begin shipping drywall
09:00:38  19  in.
09:00:42  20    Taishan and various affiliates of Taishan,
09:00:45  21  seeing the Knauf entities prosper, joined in the act and began
09:00:54  22  shipping drywall into the United States.
09:01:01  23    Shortly after the drywall came in and was used,
09:01:05  24  problems apparently developed.  There was an odor.  There was
09:01:09  25  also some problem with a lot of appliances because of excess

| | |
|---|---|
| 09:01:14 | 1 |
| 09:01:20 | 2 |
| 09:01:28 | 3 |
| 09:01:33 | 4 |
| 09:01:38 | 5 |
| 09:01:43 | 6 |
| 09:01:48 | 7 |
| 09:01:55 | 8 |
| 09:02:01 | 9 |
| 09:02:03 | 10 |
| 09:02:06 | 11 |
| 09:02:16 | 12 |
| 09:02:19 | 13 |
| 09:02:23 | 14 |
| 09:02:27 | 15 |
| 09:02:33 | 16 |
| 09:02:39 | 17 |
| 09:02:44 | 18 |
| 09:02:52 | 19 |
| 09:02:56 | 20 |
| 09:02:58 | 21 |
| 09:03:04 | 22 |
| 09:03:13 | 23 |
| 09:03:16 | 24 |
| 09:03:20 | 25 |

amount of sulfur in the gypsum, which is the basis of drywall, which caused chemical reactions with copper wires and silver wires primarily, copper being the predominant building metal in the United States as well as the world for refrigerants and ground wires and things of that sort, and silver being the contact points for all switches.  This created a problem because it caused those things to malfunction.  In addition, as I said, it created odors that were distasteful for people who were living in buildings.

In any event, a lot of suits started and because of the numbers, the multidistrict panel declared it an MDL.  On a personal note, I thought I was safe from this MDL because I did not have one case filed in Louisiana, but somehow or another I got all of them.

In any event, among the suits filed were the *Germano*, the *Mitchell*, the *Gross*, the *Wiltz* cases, which were class actions, each of those representing various states. These suits were against TG and TTP.  A lot of the other suits were against other affiliates of Taishan.  The suits were properly served.

No answer was filed by Taishan or TG or TTP, which I will refer to as Taishan.  During the course of the proceedings, I tried to call their attention, particularly to the people who were in the room, as well as I put on my website that it was very important that answers be filed.  There came a

time when I felt that I could do no more than to instruct the plaintiffs to take a default.  That's not something that any of us in this jurisdiction take lightly.  At first they were reluctant to take a default, but they took a default because I needed to move the cases.

The Court granted a preliminary default in September of 2009.  Again, I put on the website that it was important for the Taishan entities to enter the case to no avail.  After affording Taishan more than a reasonable time to answer, I moved forward with an evidentiary hearing in furtherance of the preliminary default in the *Germano* case.  They had 14 people intervene in *Germano*.

I felt it was important to determine whether or not the material was defective and also what was the result of its defective nature.  I heard experts.  About four or five days of testimony was produced.  I have no way of knowing, but I'm advised that the plaintiffs spent about a million dollars in presenting the case for default.  It was an extensive hearing.  Following that matter, I issued findings of fact and conclusions of law.

On May 11, 2010, I issued a default judgment in favor of the intervening plaintiffs in the total amount of $2,609,129.99.  As I said, there were about 16 people, about 8 couples or so, 8 to 10 homes, with interest and court costs.

The case proceeded and on the last day for

| | |
|---|---|
| 09:05:45 | 1 |

appealing, TG entered an appearance and appealed the Court's
judgment, seeking to vacate the judgment for lack of personal
jurisdiction.  This was the first time that lack of personal
jurisdiction was claimed.  It was the first time that they
entered the lawsuit.  So to be fair, they didn't claim it.
They claimed it when they entered the lawsuit.

        The Fifth Circuit felt that it was better for
them to stay the appeal to allow enough time for the Court to
rule on the issue of personal jurisdiction.  At that point I
had no record for personal jurisdiction.  I wanted to give the
parties an opportunity to present themselves on that issue.

        The plaintiffs felt that, because of contacts
and things of that sort that are germane to personal
jurisdiction, it was important for them to get discovery.  They
went to China.  Taishan cooperated to the extent of providing
witnesses to be deposed in China.  It was easier for the
lawyers to go to China than it was for the witnesses to come to
the United States, so that's what I ordered them to do.

        The plaintiffs took about a week to ask
questions.  I got the transcripts back and, frankly, there were
too many interpreters in the room.  The plaintiffs had their
interpreter, the defendants had their interpreter, and the two
interpreters got together and hired a third interpreter to
check them both.  In any event, page after page I read, the
interpreters were arguing as to what was meant, what was said.

I couldn't make much out of it, frankly.  Notwithstanding the efforts of both sides, I could not make much out of it.  I felt that it was necessary to take the depositions again and this time, as assistance to the parties, I would go over and participate and rule on the matters.

I didn't look forward to it.  It was five days I spent in a basement without any windows.  We worked eight hours a day, and on the last day they finished I flew home.  That was the extent of my visit to Hong Kong, but it gave me an opportunity to preside over the depositions.  I ruled on the objections immediately, and I thought the depositions at least gave me some information that would be of assistance as I focused on personal jurisdiction.  I was able to listen to the witnesses.  I was able to observe the witnesses.  I was able to make some sense out of what they were saying and test their credibility.

I came back and wrote a rather long opinion.  Too long.  If I had more time, I would have written a shorter opinion, but I wanted to get it out as quickly as I could.  So I wrote an opinion on it.  Taishan appealed the opinion.

The Fifth Circuit decided to have two panels look at this issue.  My opinion dealt with the four cases together, but they divided it up.  One panel took one case and another panel took three cases.  The cases were argued.  The panels wrote extensive opinions affirming the Court.

09:09:58
09:10:00
09:10:05
09:10:11
09:10:20
09:10:28
09:10:35
09:10:39
09:10:48
09:10:54
09:10:58
09:11:05
09:11:10
09:11:18
09:11:23
09:11:27
09:11:32
09:11:36
09:11:37
09:11:41
09:11:50
09:11:55
09:12:01
09:12:05
09:12:10

1    I had found that I had personal jurisdiction.  I
2  had found that the entities solicited business, that the
3  entities negotiated the business, that the entities complied
4  with putting the appropriate United States logos on the
5  drywall, and did other things that were significant, I thought,
6  in establishing contacts and personal jurisdiction.  As I said,
7  the Fifth Circuit agreed with me and both panels affirmed the
8  opinion.  Now, we have 17 judges in the circuit court.  A third
9  of the judges in the circuit court focused on this issue and
10 affirmed the Court.

11    At this point, unfortunately, Taishan began
12 discussing it with their attorneys at that time.  I saw the
13 e-mail subsequently and ruled the e-mail admissible.  They
14 discussed what to do about it and they made the decision at
15 their highest levels to just walk away.  They decided not to
16 participate.  They decided to absent themselves and instructed
17 their attorneys to take no action.  Then they fired their
18 attorneys.

19    At this point, time for a rehearing en banc,
20 time for a cert to the United States Supreme Court had passed.
21 The plaintiffs had a judgment of $2 million, plus prejudgment
22 interest, plus court costs, and they wanted to execute it.  So
23 the way you do it, obviously, as we all know, is to get a
24 judgment debtor rule set.  They set a judgment debtor rule.  I
25 instructed the prior attorneys for Taishan to advise Taishan

and its affiliates that a judgment debtor rule was set and that they should participate in it.

The judgment debtor rule was noted.  I put it on the website.  I had the prior attorneys for Taishan advise me that they had advised Taishan and its affiliates that the judgment debtor rule was set.  Everybody knew about it.

Taishan decided not to show up.  So I had no alternative, no choice but to hold them in contempt.  I held them in both civil and criminal contempt.  After I noticed it, I held a hearing which they didn't participate in.  I issued an order holding them in, as I say, criminal and civil contempt.

I charged them with penalties of $40,000.  I felt it appropriate to also have them pay $15,000 attorneys' fees for the work that the plaintiffs had done in working on the judgment debtor rule, being present and presenting themselves.

I also enjoined Taishan, TTP, and their affiliates from doing business in the United States until they participated in the process.  When they do business in the United States, they look to the criminal and civil justice system of our country to protect them and they have a right to do that.  Anybody doing business lawfully in our country has a right to look to our courts to be of assistance to them.  But at the same time, they also have a duty to comply with the requirements of the courts, with the judgments of the courts.

So I said don't do business in the United States until and unless you comply with the Court's order; and if you do, you are going to forfeit 25 percent of the earnings that you make in violating the Court's order.

The case proceeded and the PSC, in July of 2014, filed a motion for class certification seeking to certify all existing class members with claims against all of the Taishan defendants for property damage only. They didn't seek class action in our district for personal injuries. That is about gone to history now. It is very difficult to have commonality and predominance in a personal injury case.

I have had experience with it in *Murphy Oil* and a couple other matters. You can have commonality and predominance in property damage because you really focus on square footage. All properties are not the same, but you simply arithmetically determine how much square footage in a particular case and that's what it is. So this Court as well as the circuits have approved class actions in property damage cases.

So I looked at this case, and I had had some experience with 14 other claims, and I was able to fashion a square footage allotment. I knew what the damage was. I knew the defective condition of the drywall and how much square footage it costs to repair or remedy the situation. So I granted the class certification. I certified the class.

09:16:52  1          Taishan and all of the defendants in that class

09:16:56  2   action failed to respond.  I certified the class in September

09:17:03  3   of 2014 for the claimants who had defectively manufactured

09:17:12  4   drywall in their home for property damages resulting therefrom

09:17:18  5   on a square footage basis.  I saw that would be the appropriate

09:17:23  6   way of doing it.

09:17:25  7          No defendants responded, no appeals were taken,

09:17:27  8   and several months later I set a date for a hearing to

09:17:36  9   determine the damages.  The first class action determined the

09:17:41  10  scope of the class and the liability of the defendants, and the

09:17:48  11  second one had to do with damages.

09:17:52  12         I set the date for damages, February 12, 2015.

09:17:57  13  I gave people notice for a couple of months.  I put that on our

09:18:02  14  website.  I announced it in open court.  On February 12 I

09:18:08  15  called the case.  PSC counsel, Arnold Levin, announced he was

09:18:16  16  present for the plaintiffs and ready to proceed.  I asked the

09:18:21  17  audience -- we had a full house at that time -- whether anyone

09:18:24  18  was here for any of the defendants or any of the affiliates of

09:18:27  19  the defendants.

09:18:31  20         There was silence for a moment and then there

09:18:34  21  looked like a flurry of activity in the back of the courtroom

09:18:38  22  and Mr. Aaron Block of Alston & Bird came forward and announced

09:18:44  23  that he represented BNBM, one of the Taishan defendants.  His

09:18:51  24  firm had just been hired, apparently.  Unfortunately for him,

09:18:56  25  he probably caught the short straw.  He was the last seat on

09:19:02  1  the last flight to arrive in New Orleans that day.  He asked

09:19:11  2  for a brief continuance.

09:19:13  3          I took him at his word -- he is a colleague, a

09:19:18  4  lawyer -- that he just got the case.  It seemed reasonable to

09:19:23  5  me to give him a brief continuance, so I did.  I granted his

09:19:27  6  request and set the damage hearing for March 26, 2015.

09:19:36  7          Judging from the docket sheet, there was a

09:19:38  8  flurry of activity after that and other attorneys were hired,

09:19:44  9  some fired, some changed defendants.  In any event, it looks

09:19:51  10  like we have everybody here, at least from the Taishan area of

09:19:55  11  defendants, or at least most of them.

09:19:59  12          We are gathered here today because of the

09:20:03  13  plaintiffs' motion objecting to the right of the defendants to

09:20:09  14  participate in the upcoming damage hearing.  Basically the

09:20:16  15  plaintiffs take the position that the defendants are in default

09:20:26  16  and that they should not be allowed to participate.

09:20:30  17          I felt that I would profit from hearing oral

09:20:33  18  argument on that motion and a response, so I received extensive

09:20:39  19  briefs, all of which were helpful to me understanding your

09:20:43  20  positions, but I always give oral argument if the parties

09:20:48  21  request it, and the plaintiffs requested it.  So let me hear

09:20:52  22  from the movants.

09:20:55  23          MR. HERMAN:  Good morning, Judge Fallon.

09:20:55  24  Russ Herman.  May it please the Court.  I'm going to give a

09:21:02  25  brief background of plaintiffs' position, and then I will call

on lead counsel, Arnold Levin.

Your Honor, we -- that is, on the plaintiffs' side -- once the Knauf settlement, along with the L&W, Banner, and Interior Exterior settlements were in place and funds were being paid out, Mr. Levin and I met and we organized a task force to proceed against Taishan and affiliates.  Those folks are here.  It's Mr. Meunier, Ms. Barrios, Mr. Irpino, Mr. Longer, and Mr. Davis.  We continued to pursue, after the two Fifth Circuit arguments, the judgments, the briefing.

I'm going to cite to Your Honor's opinion at 2014 WL 4809520.  I'm going to separate my comments into two areas.

First of all, we have received no paid judgment from Taishan, which includes postjudgment interest, prejudgment interest, costs, the *Germano* judgment, and the costs are listed.  Counsel for Taishan and the affiliates need only to consult the record.  I indicate to Your Honor that just the service in that *Germano* case exceeded some $200,000 in costs and, quite correctly, the plaintiffs, in proving the default, including deposition costs, expert costs, exceeded a million dollars just to prove up the default.

Your Honor at page 7 of the opinion begins to set forth the fact determinations which show that the affiliates, in concert with Taishan, engaged in alter ego or a single enterprise, and it's clear from the facts recited that

the issues of estoppel and res judicata also come into play.

With *Wiltz*, *Gross*, *Germano*, and *Mitchell* all having reached jurisdiction in this Court, I want to indicate we had a phone call that Taishan or one of their entities wanted to wire judgment to our offices to be put in a trust fund, but there was no accounting with it.  After conferring with Mr. Levin and the task force at some length, we determined that the only appropriate payment of that judgment and indeed of the attorneys' fees -- and we have no indication as to whether they would be paid -- would be by check.

We felt that it was necessary under the given circumstances of this particular case, for reasons which I will not at this point list because we have new counsel in the case -- and we welcome them to the table.  We felt it was important to know who was paying the funds, what's the source of the funds, who's signing the check, who's authorized to do it.

The only circumstance that I will recall is that there are de-privileged documents which conclusively show not only as direct evidence, as exceptions to the hearsay rule, as admissions against interest, that Taishan really is not the principal other than part of an alter ego or single enterprise.

So, Your Honor, at this point, citing directly from Your Honor's opinion at page 8:

"Based upon the Court's above findings of fact,

the Court concludes that Taishan, TTP, BNBM, BNBM Group, CNBM, CNBM Group constitute a single business enterprise for purposes of piercing the corporate veil and holding each of these entities liable for the conduct of their affiliated entities."

The interesting thing to those of us that have been before Your Honor for eight years attempting to get relief for 4,000 homeowners, some of whom have lost their homes, some of whom have suffered bankruptcy, some of whom have had to live under undesirable circumstances, it was revealing to us that Your Honor's opinion in 2014 in September -- I believe it's September. I wrote the date down. Yes. September 26, 2014 -- has been reinforced in the last two months after a fight over privileged documents.

At this point, Your Honor, there are a number of matters that Mr. Levin will address. Before I sit down, though, defendants may be able, particularly Taishan, to satisfy a contempt, but they can't purge themselves of it. *Purge* is a different word. *Purge* means it's obliterated as if it never happened.

We believe that before contempt is lifted, Your Honor must be satisfied -- not the PSC, not our task force, Your Honor must be satisfied -- that the funds are going to be paid. We ask that they be paid by certified check and those individuals providing the funds also provide the sources of the funds. Having an attorney's trust account issue a

| | |
|---|---|
| 09:29:12 | 1 |
| 09:29:16 | 2 |
| 09:29:19 | 3 |
| 09:29:25 | 4 |
| 09:29:28 | 5 |
| 09:29:33 | 6 |
| 09:29:36 | 7 |
| 09:29:39 | 8 |
| 09:29:43 | 9 |
| 09:29:45 | 10 |
| 09:29:50 | 11 |
| 09:30:01 | 12 |
| 09:30:06 | 13 |
| 09:30:12 | 14 |
| 09:30:18 | 15 |
| 09:30:22 | 16 |
| 09:30:26 | 17 |
| 09:30:31 | 18 |
| 09:30:36 | 19 |
| 09:30:42 | 20 |
| 09:30:51 | 21 |
| 09:30:53 | 22 |
| 09:30:57 | 23 |
| 09:31:02 | 24 |
| 09:31:06 | 25 |

check, given the circumstances of this case, we feel is not

warranted, nor do we feel a wire transfer going from one

attorney's account to another satisfies this matter.

At this juncture I would like to have, if

Your Honor will permit, lead counsel Arnold Levin --

**MR. LEVIN:**  If you have been here for eight years,

Your Honor -- I do love the man, but he leaves me very little

to say after he has a few moments to say something, so I will

say very little.

Your Honor, on Friday we worked very diligently,

last week, to give the newly engaged attorneys a road map as to

where we are so that they at least know what we perceive to be

the issues that have to be resolved in this litigation to get

it started and to move and not have a repeat performance of

four years of going to Hong Kong and taking depositions and

establishing personal jurisdiction, which we do not need

because we have established personal jurisdiction in the three

basic forums of this litigation, Virginia, Louisiana, and

Florida.  Their liability, other than Taishan's liability, is

derivative of their stalking horse, Taishan.  We think we have

alter ego proven.

We have findings as to alter ego.  We have very

little discovery as to CNBM and BNBM, but we have enough to

prove alter ego.  Where do we go from here?  We have default

judgments in several cases against each of the major defendants

seated on my left.  I don't think they will prevail, but I would imagine they are engaging right now in attempting to file papers to lift the default judgments.  They can do that.  That will establish and put the nail in the coffin on alter ego because they have less of a position in opening those default judgments than Taishan had, which was reviewed by Your Honor and a panel of the Fifth Circuit.  Just one of the panels dealt with default judgment.

We may require discovery just as to alter ego.  Personal jurisdiction is not an issue here because they are not the ones selling the product.  They are the ones that had somebody sell the product on their behalf and alter ego comes in and out.

I believe sincerely, after 50 years of practicing law, that even paranoids have enemies.  To say the least, I do not and we do not trust this group of defendants.  Not the attorneys.  Defendants.  They dragged us for four or five years through litigation.  They dragged Your Honor to Hong Kong.  They dragged us in front of the Fifth Circuit.  When we finally get close to getting relief for just a few of the 4,000 who have judgments in excess of $2.7 million, what do they do?  They fired their attorneys and they go back to China.

We went to work after that to find the assets.  We served 30(b)(6) depositions.  Why?  Well, we wanted to know what's coming in on vessels to major distributors such as

09:33:26 1  Target and the like so that we could go against the cargo, let

09:33:32 2  alone go against the vessels if we find that they are owned by

09:33:37 3  SASAC.

09:33:38 4      We attempted to sue SASAC.  There was a flurry

09:33:44 5  of activity in China when we did that.  The minister of justice

09:33:50 6  would not serve SASAC because they are China.  Everything in

09:33:54 7  China is China, but we are not in China.  We are here.  The

09:33:59 8  Foreign Sovereign Immunities Act gives us a cause of action

09:34:02 9  against SASAC.

09:34:03 10      We will prepare a motion for alternative service

09:34:07 11  on SASAC which will be filed shortly, but how do we make sure

09:34:13 12  that when the going gets tough, the tough -- with a small T for

09:34:23 13  China -- gets going?  Because they can do the same thing again.

09:34:29 14  So we ask them voluntarily to tell us where their assets are in

09:34:34 15  the United States.  Otherwise we would request the Court to

09:34:36 16  allow us to keep pursuing our chase for assets.

09:34:41 17      In our chase for assets during the period of

09:34:45 18  this contempt, we found out that they were doing business in

09:34:51 19  Oregon.  What do you do when you do business?  They are not

09:34:57 20  plaintiffs' attorneys.  They are not injured people.  They are

09:35:00 21  not the 4,000 people that had their homes foreclosed and went

09:35:04 22  into bankruptcy as a result of that client not doing what Knauf

09:35:08 23  did and coming in and doing the honorable thing -- *honorable*,

09:35:11 24  they use that word in China -- and cleaning up the mess that

09:35:18 25  they created, whether it was intentional or not.

09:35:22  1          We found them in Oregon using our court system
09:35:27  2  to recover money, and we believe that they are still there in
09:35:31  3  Oregon.  We haven't seen the settlement agreement of that case.
09:35:37  4  We know they are in Plum Creek because what we found out is
09:35:41  5  when we needed drywall, we went to China.  When China needed
09:35:45  6  wood/timber, they went to the United States.  This cabal of
09:35:51  7  CNBM and BNBM were involved in all of that.
09:35:55  8          They have to give us security that they will
09:35:58  9  stay here and abide by this Court, the Fifth Circuit, and the
09:36:03  10  Supreme Court's rulings in this case and not go home to China
09:36:09  11  as soon as they see that something is happening that they don't
09:36:12  12  like.  We are fearful of that and we don't want to go through
09:36:18  13  that again.
09:36:19  14          We don't want to drag this litigation out for
09:36:21  15  four years where new counsel come in -- and I'm not being
09:36:26  16  pejorative as to new counsel because there's rules, there's
09:36:31  17  12(b) and 12(b)(2) and 12(b)(6) -- that we short-circuit this
09:36:33  18  and get justice for these 4,000 homeowners, and we thought the
09:36:38  19  class action was the way to do it.
09:36:40  20          Do they want to sit here for three years and
09:36:42  21  bring in every one of these individual plaintiffs to come in
09:36:46  22  and say, My square footage of my house is so and so?
09:36:51  23  BrownGreer knows what the square footage of most of these homes
09:36:56  24  are.  We have already determined what it cost.  Just to start
09:37:02  25  at square one, we don't want that.  We want to expedite this.

09:37:06  1  We want to know where they are.

09:37:08  2          With regard to the contempt, as Mr. Herman said,

09:37:10  3  they are in contempt of Court.  That's within Your Honor's

09:37:13  4  province, but they have not satisfied *Germano*.  There's a bill

09:37:18  5  of costs.  The clerk's office will come down with it just

09:37:20  6  probably any week now.  There's postjudgment interest.  We

09:37:26  7  don't see the money.  Until we see the money, we can't even

09:37:30  8  direct ourselves to that.

09:37:32  9          **THE COURT:**  Okay.

09:37:33  10          **MR. LEVIN:**  I think I have said enough because I have

09:37:35  11  gone beyond what the issue is today, but I couldn't help

09:37:38  12  myself, Your Honor.

09:37:39  13          **THE COURT:**  Thank you.

09:37:40  14          Let me hear from the defendants.

09:37:43  15          **MR. TAYLOR:**  Good morning again, Your Honor.  As I

09:37:46  16  indicated earlier, I'm Bernard Taylor, and I want to correct

09:37:49  17  one thing.  I didn't get a chance to properly introduce my

09:37:52  18  other partner, Christy Eikhoff, who is here with us.

09:38:00  19          Your Honor, in one of the PSC's briefs -- I

09:38:03  20  think it's the omnibus motion that is at Document 18475 at

09:38:07  21  page 15 -- they use a quote from *Wizard of Oz* that I found

09:38:13  22  amusing and clever.  When I thought about where we are here in

09:38:21  23  representing Taishan and where Taishan is in regards to this

09:38:26  24  Court, I really looked up and thought that it would be

09:38:31  25  appropriate to focus upon a more apt quote.  That quote is that

the true courage is facing danger when you are afraid.

Your Honor, it was fear, fear by our client, that caused many of the issues that we are here dealing with today.  The failure to attend the judgment debtor examination was fear of not understanding our system of justice, our court system, and not understanding how to maneuver through that appropriately.

The unintended result of that fear, Your Honor, was to show disrespect to this Court, to show disrespect to this process, to show disrespect to the plaintiffs, and also disrespect to the plaintiffs' attorneys.  None of that was intended.  As a result of that, this Court issued a contempt order that the Court has already talked about.  Our client had dug a deep hole, a deep ditch, but our client is prepared to walk out of that ditch and back into this litigation.

THE COURT:  Have they done anything to satisfy the judgment?

MR. TAYLOR:  Your Honor, we are working on satisfying the judgment.  There are issues in China that we have to work through in order to get the money transferred from China to here.  We have commitments from our client to pay the full amount of the judgment.

As Mr. Levin indicated, there is the issue of court costs and attorney's fees that we would need to talk to the PSC about that so we can get that resolved and then that

| | |
|---|---|
| 09:40:18 | 1 |
| 09:40:22 | 2 |
| 09:40:24 | 3 |
| 09:40:26 | 4 |
| 09:40:28 | 5 |
| 09:40:30 | 6 |
| 09:40:34 | 7 |
| 09:40:36 | 8 |
| 09:40:37 | 9 |
| 09:40:38 | 10 |
| 09:40:41 | 11 |
| 09:40:45 | 12 |
| 09:40:50 | 13 |
| 09:40:53 | 14 |
| 09:40:58 | 15 |
| 09:40:58 | 16 |
| 09:41:00 | 17 |
| 09:41:05 | 18 |
| 09:41:11 | 19 |
| 09:41:17 | 20 |
| 09:41:21 | 21 |
| 09:41:26 | 22 |
| 09:41:31 | 23 |
| 09:41:39 | 24 |
| 09:41:41 | 25 |

1  will be paid, but immediately -- and by "immediately" I mean we

2  are working through the process.

3      THE COURT:  Would you guarantee it, as a firm, that

4  they will pay?

5      MR. TAYLOR:  Well, I can guarantee, Your Honor, that

6  it has been fully represented to us by our client that they

7  will pay.

8      THE COURT:  See, they did that before, though.

9  That's the problem I have.

10     MR. TAYLOR:  Can I raise one other point, Your Honor?

11  I can guarantee also that they have already begun the process

12  of making those payments.  The fact is we have already received

13  some money, and they are trying to work through getting the

14  rest of the money into the U.S. so that we can pay the full

15  amount.

16         We think that's going to happen fairly quickly,

17  and I understand the Court's concern about that.  If that is

18  the Court's concern, what we would ask the Court is to give us

19  time to make that happen.  Then we can agree on whatever the

20  Court says is that time, and we will work hard to make sure we

21  make it happen at the same time as we confer with the court

22  clerk and with the PSC attorneys on the amount of the

23  attorneys' fees and the court costs that's due.

24         So, Your Honor, the PSC and this Court, as you

25  have indicated and as Mr. Levin has indicated, has said that we

cannot participate in this litigation unless and until we purge ourselves of the contempt.  Your Honor, we have paid the penalty, as the Court knows.  We have already communicated with the PSC attorneys regarding the method for paying them the $15,000 in attorneys' fees.  Obviously today we are here to participate.

What we are also willing to do -- and some folks may refer to this as lagniappe, which I understand is a term that you all use down here, but it's more than that, it's substantive -- is to compensate the Morgan family, the Baldwin family, the Leach family, the Orlando family, the Michaux family, the McKellar family, and the Heischober family, the *Germano* plaintiff families, by satisfying that judgment and allowing them to move on with their lives, and we have committed to do that.

Your Honor, the PSC's motion to preclude is both moot and unconstitutional.  It's moot because, as we have indicated here, we have complied with the terms of the Court's contempt order, and we have gone beyond that by indicating that we will also pay the judgment.

It's also unconstitutional because what they are trying to do is to prevent us from defending ourselves in a situation where they are attempting to obtain, to attach our property, to get us to pay additional amounts of the judgment, and defend ourselves against the damages that are in the

underlying lawsuit, the class action where they are asking for
$1.2 billion or $1.3 billion.

Your Honor, we cited to the Court the cases and
the Court has already indicated that it has read our briefs.
Reading our briefs, the Court knows that in the *Hovey* case and
in the *Bonilla* case, which is at page 8 of our briefing, it
states that "a defaulting defendant is entitled to contest
damages and to participate in a hearing on damages."  So
constitutionally they cannot preclude us from participating
fully, aggressively, and totally in the damages phase of this
case, Your Honor.

Your Honor, Justice Kennedy in the *Degen* case,
citing back to *Hovey*, basically concluded that to prevent a
defendant from participating in the damages phase is
unconstitutional, but it's also rough justice, and rough
justice would not be tolerated by the Supreme Court.  We
request that it not be tolerated by this Court.

Your Honor, the issue of additional attorneys'
fees that counsel spent a good bit of time talking about today,
we contend -- and the Court supports us -- that any request for
additional attorneys' fees requires another proceeding for the
Court to look at that particular issue and decide whether or
not those fees are appropriate, for the Court to decide whether
or not we have indeed violated the Court's order in any way,
shape, or form, because, Your Honor, we would have purged

09:45:41  1  ourself of the underlying contempt order, met all of their
09:45:47  2  requirements.  Therefore, under those circumstances, if they
09:45:50  3  are contending that there was a subsequent violation of some
09:45:54  4  kind, they would have to ask this Court to convene a new
09:46:00  5  proceeding for us to be able to defend ourselves in that
09:46:03  6  proceeding.
09:46:05  7          Your Honor, I'm prepared to respond to any
09:46:07  8  questions the Court may have.
09:46:08  9          THE COURT:  No.  Let me hear from your other
09:46:11  10  colleagues.
09:46:21  11          MR. BARR:  Good morning, Your Honor.  Michael Barr,
09:46:21  12  as I stated earlier, on behalf of BNBM, PLC and BNBM Group.  I
09:46:33  13  want to thank the Court for the opportunity for us to appear
09:46:35  14  before you in this matter and to address what is the sole
09:46:36  15  motion before the Court today, which is to preclude
09:46:38  16  participation not only by the Taishan defendants but also by my
09:46:42  17  clients, who are separate corporations, to participate in the
09:46:46  18  damages hearing that the Court has set.  Your Honor, there are,
09:46:49  19  respectfully, five different reasons, and each and every one of
09:46:53  20  them suffice for Your Honor to deny the motion that is before
09:46:56  21  you, and that is the sole motion that is before you today.
09:47:00  22          First of all, as Mr. Taylor has described as a
09:47:03  23  matter of due process, we are entitled to participate in that
09:47:06  24  hearing.  We have cited authority in our brief not only with
09:47:09  25  respect to the *Hovey* case but also additional authority that

09:47:13  1  both indicates, number one, that the issue of the right to

09:47:15  2  participate in a damages hearing applies equally to a defaulted

09:47:20  3  defendant and, for that matter, also applies equally even to a

09:47:24  4  defaulted defendant found in contempt.

09:47:27  5       Your Honor, with respect to my clients, the

09:47:30  6  issues are different and additional.  First of all, the Court's

09:47:35  7  contempt order was directed solely against Taishan.  The remedy

09:47:39  8  Your Honor provided with respect to the 25 percent of profits

09:47:42  9  may have spoken more broadly, but Your Honor's order could not

09:47:47  10 have been clearer stating that the Court holds Taishan in

09:47:50  11 contempt of Court both criminally and civilly.  There is no

09:47:56  12 reference to any of the other defendants that are here today.

09:47:59  13      Furthermore, that contempt order was entered in

09:48:04  14 the *Germano* case and my clients, BNBM Group and BNBM, PLC, were

09:48:06  15 not parties in that case, so they could not have been held in

09:48:08  16 contempt.  Since they were not parties to that case, they could

09:48:11  17 not have had the opportunity to be heard with respect to any

09:48:14  18 attempt to impose contempt on them.

09:48:17  19      Respectfully, the references made in the omnibus

09:48:20  20 brief that they filed last Friday, where they are attempting to

09:48:23  21 try to bootstrap subsequent rulings in order to create contempt

09:48:29  22 against my clients, does not suffice as a matter of law, does

09:48:32  23 not give us that opportunity to be heard and, respectfully,

09:48:36  24 should be denied.

09:48:39  25      Further, Your Honor what we have heard a lot

about today with respect to all the other defendants here other than Taishan, referencing issues in terms of piercing the corporate veil and again trying to bootstrap that claim of contempt to apply to other parties beyond Taishan based upon Your Honor's subsequent ruling with respect to alter ego issues, Your Honor, that does not create contempt against my client.  That does not create an opportunity for them to try to extend the Court's ruling.  Respectfully, that does not provide a basis to preclude us from participating.

First of all, as I stated, Your Honor, your veil piercing ruling did not exist at the time of the contempt order and, therefore, it could not have been intended as part of the contempt order to apply beyond Taishan.

Even more importantly -- and, Your Honor, this is an issue we will have to address with the Court subsequently and would want the opportunity to brief and address it, both with respect to the facts and the law -- is that the sole basis of Your Honor's findings in the class action decision on September 26 were based upon the deemed admissions because of Taishan's failure to respond to requests to admit.

Looking at Your Honor's decision beginning on paragraph 28 of that decision and going forward, which were the predicate holdings for Your Honor's finding, every single one of them specifically states that the basis for those factual findings, whether requests for admission and the fact that they

were not responded to, were deemed admissions.  Your Honor,
under binding Fifth Circuit authority, those findings cannot be
applied to us with respect to their deemed admissions.  They
only apply with respect to Taishan, not with respect to us.

We will at an appropriate time, Your Honor,
according to Your Honor's schedule, provide the Court with the
facts that address piercing the corporate veil, with the facts
that address personal jurisdiction, with the specific facts
that deal with our clients and our clients' roles in these
proceedings.  We do want to address those issues at an
appropriate time with the Court, we have preserved our defenses
in that regard, but we are not here seeking any delay in this
Court's proceedings.

The issue before the Court today is whether we
are allowed to participate in the hearing that the Court will
schedule and any other proceedings relating to the assessment
of damages.  Respectfully, Your Honor, based upon the existing
orders of this Court, the Supreme Court authority with respect
to the due process rights, the lack of our participation
before, we should be entitled and found to be entitled to
participate in those hearings.  Thank you, Your Honor.

**THE COURT:**  Thank you very much.

Who is next?

**MR. STENGEL:**  Your Honor, just briefly, Jim Stengel
for CNBM and CNBM Group.  We will stand on the briefing and the

able argument that has been presented to you.  Thank you.

**THE COURT:**  Okay.  Fine.

Let me hear a response just briefly, though, if you would.

**MR. HERMAN:**  I'll briefly respond.  I will take part, may it please Court, and Mr. Levin will take part.

In this country I thought we have nothing to fear but fear itself.  I don't find that fear of a judgment debtor rule after this litigation to be any plausible excuse for violating Court orders.  I'm not even sure how you can even pull that amorphous metaphor out of some ether and apply it in this case.

CNBM, BNBM, they are not new defendants.  They were served in The Hague many years ago and declined to participate.

Due process, unfortunately, the way that defendants, particularly the People's Republic of China and these dominated business single enterprises, apply due process is to say, "We don't care if you get a judgment in the United States.  We are not going to enforce it in China."  I don't know what kind of process that is.  It's certainly alien to all constitutional rights that these 4,000 folks have to proper redress.  CNBM and BNBM have been aligned with Taishan since inception.

This argument about a Supreme Court case that's

09:53:23  1   not applicable here, where you are invited for years to
09:53:28  2   participate and you refuse, certainly is not akin to the
09:53:39  3   Supreme Court ruling I have cited.
09:53:44  4                The idea that we are working through how to pay
09:53:53  5   contempt orders, what do you have to work through to pay a
09:53:57  6   $15,000 attorneys' fee, what arcane movement?  Maybe it's not
09:54:04  7   arcane.  Maybe it's, as we argued to the Court some five years
09:54:09  8   ago, that Taishan was controlled up the line.  We introduced
09:54:16  9   evidence and affidavits of their multiple control and
09:54:22  10  participation, and the Court properly ruled at that time we are
09:54:27  11  not going to allow up-the-line discovery per se at this
09:54:35  12  juncture, but it was reserved.
09:54:39  13               What I haven't heard and what really is of great
09:54:48  14  concern is are the defendants now claiming that this Court has
09:55:02  15  jurisdiction or are we to go through this mechanical process,
09:55:08  16  which isn't warranted and which denies 4,000 folks due process,
09:55:14  17  to be told after we take more depositions, have more hearings,
09:55:23  18  offer more proof that, "Well, the Court has no jurisdiction,"
09:55:31  19  and then we end up in the Fifth Circuit again?
09:55:38  20               I'm not very good at forecasting what appellate
09:55:47  21  courts will do, but based on history, even after these 4,000
09:55:59  22  folks are confirmed, China still adopts the attitude that they
09:56:08  23  don't have to pay, they are not going to enforce a judgment.
09:56:12  24               The last thing I want to indicate to the Court
09:56:17  25  is the Court may recall that when this Honorable Court went to

09:56:21 1 China to monitor a deposition, there was some concern about

09:56:27 2 whether a deponent put forth by Taishan had veracity in what

09:56:41 3 that individual was saying, and we challenged repeatedly that

09:56:48 4 the markings of compliance with safety codes and ASTMs were

09:56:54 5 manufactured, that those stamps were manufactured.  Very

09:56:57 6 recently the head of a factory in China manufacturing

09:57:06 7 floorboard sent to the United States admitted that they lied

09:57:12 8 when they affixed a safety monogram to the flooring that they

09:57:26 9 sent to the United States.

09:57:27 10          So my biggest concern is that we are going to be

09:57:32 11 tied up for four years and not once have I heard -- I know it's

09:57:36 12 in the background that these defendants want full process in

09:57:42 13 the United States courts, but they don't admit jurisdiction.

09:57:46 14          THE COURT:  Let me hear your response briefly.

09:57:53 15          MR. LEVIN:  Some newly arrived individuals to this

09:57:57 16 forum may wonder what Jerry Meunier is doing here.  He

09:58:02 17 whispered in my ear and I will repeat:  If ignorance of the law

09:58:08 18 is no excuse, how could fear of the law be an excuse?  That's

09:58:17 19 very apropos to what's here.

09:58:23 20          Your Honor, to cut through everything that's

09:58:27 21 been said, until they move to open up a default judgment, we

09:58:31 22 have alter ego, single enterprise liability, and we await that.

09:58:41 23          The contempt has to be properly satisfied, not

09:58:48 24 promises from China, not the money hasn't gotten out of China.

09:58:53 25 We know a little bit about Chinese law because we know a little

bit about the Chinese secrecy act, which was raised by Knauf in the deposition of Mark Norris in Hong Kong, but we don't want to delay compensation for our clients.

If they can appear at the damage aspects of the class certification hearing and partake in the class certification hearing on the state of the record as it now exists, we have no problem if they appear next Thursday, listen to what we have to say, and then say what they have to say, but those damages in *Germano* were tried.  They are aligned with Taishan.  Taishan was aligned, at least with the proofs, with Knauf.

These damages are a mathematical formula.  It's a question of arithmetic, and the case law is such that it's easy to present arithmetic to lawyers and judges.  Even we who are not mathematicians know how to add and subtract.  So next Thursday they can be here.  They have already our proposed findings of fact.  They can prepare from it and make an argument.  We don't want these 4,000 people who have gone through four or five, six, eight years to have to go through four more years and be tortured as if they haven't been tortured already.

We can't lose sight of the fact that Taishan caused the *Germano* plaintiffs to lose their homes, suffer foreclosure, and suffer bankruptcy because they say they didn't understand the law when the record, the privileged documents

| | |
|---|---|
| 10:00:53 | 1 |
| 10:00:59 | 2 |
| 10:01:04 | 3 |
| 10:01:07 | 4 |
| 10:01:08 | 5 |
| 10:01:10 | 6 |
| 10:01:13 | 7 |
| 10:01:16 | 8 |
| 10:01:19 | 9 |
| 10:01:29 | 10 |
| 10:01:39 | 11 |
| 10:01:48 | 12 |
| 10:01:53 | 13 |
| 10:01:59 | 14 |
| 10:02:01 | 15 |
| 10:02:03 | 16 |
| 10:02:07 | 17 |
| 10:02:12 | 18 |
| 10:02:19 | 19 |
| 10:02:21 | 20 |
| 10:02:25 | 21 |
| 10:02:31 | 22 |
| 10:02:35 | 23 |
| 10:02:39 | 24 |
| 10:02:42 | 25 |

show that counsel from Taishan was talking to CNBM and BNBM and
they were privy to the decisions, CNBM and BNBM, that Taishan
made to walk away from these proceedings.  Thank you,
Your Honor.

          **THE COURT:**  Thank you very much.  I have read the
briefs.  I understand the issue.  I appreciate the comments of
counsel.  Let me tell you the way I see it.

          There are three issues in this case as I see it.
First, the contempt issue.  TG and TTP are still in contempt of
Court.  Here present counsel I have respect for and confidence
in indicates that they intend to pay.  While I believe him, I
have a problem with this defendant, obviously, because this is
a defendant who refused to participate and thumbed its nose at
the Court.

          I understand it's a foreign individual.
Sometimes they may not understand our law, but that's why they
hire good lawyers.  They had a very fine firm prior to this
representing them, advising them, and they have no excuse for
their conduct.

          The contempt order had four parts.  First, they
had to pay the judgments in the *Germano* cases, some
200-some-odd thousand dollars, plus prejudgment interest of
100-some-odd thousand dollars, plus now postjudgment interest.
They had to pay a penalty of $40,000, which I understand that
they put in the registry of the Court.  They had to pay the

attorneys' fees of $15,000.

Also, I enjoined them as well as their affiliates from doing business in the United States until they did what they had to do; and if they did business in the United States or their affiliates did business in the United States, they had to forfeit 25 percent of the earnings.

At the present time, as I mentioned, it looks like they have paid $40,000 into the registry of the Court. They haven't paid the $15,000 attorneys' fees, they haven't paid anything on the judgment, and there's total silence on the 25 percent. I don't know whether they have done business or whether their affiliates have done business or not. To me it's clear that TG and TTP can't participate while they are in contempt.

Now, I also think it's fair to give the attorney two weeks to get them to have it paid. So I'm going to instruct them to fully pay the judgment, the attorneys' fees, the $40,000, and court costs within the two-week time. They have had since July 17, 2014, to do what the Court ordered them to do. They haven't done it.

Now, with regard to the 25 percent, that to me is going to depend upon whether Taishan, TTP, parents or affiliates have done business in the United States. If so, how much have they earned? This may be factually pregnant and require some discovery. I'm going to instruct Taishan to

willingly participate in the discovery of this matter.  If they don't participate in the discovery, I'm going to strike their defenses and rule accordingly.

The second issue, as I see it, is a relationship between CNBM and BNBM on the one hand and TG and TTP on the other.  I think the relationship is important to determine whether they are affiliates or whether they are alter egos of TG and TTP.

There may be some factual dispute here.  It may be necessary for the plaintiffs to take depositions.  If they look at their material and they find that the material is not necessarily admissible or that they need to go further, they ought to be able to take depositions of the BNBM people and the CNBM people.

I'm going to look to BNBM and CNBM to willingly participate in that discovery.  If they don't, that to me means that they should not participate in this litigation and I will act accordingly.  This relationship, whether it exists or not, will determine the applicability of res judicata and/or collateral estoppel.  It will also determine the scope of the contempt order.

If they have a relationship, the scope of the hearing will to some extent be connected to that, but the hearing that I'm looking to have is really the hearing on damages.  That's what is before the Court, damages.  I think

that there may be some factual question as to how many homes you're dealing with in this particular case, and that may be something that BNBM or Taishan is willing to examine and deal with.

The hearing, as I say, will be on damages.  I think that it's fair, however, for the parties to have some time to discover the relationship between BNBM and CNBM.  I think five weeks is sufficient to do that.

I'm going to instruct the parties to meet and confer, for the plaintiffs to tell the defendants who they want to depose, and for the defendants to produce those individuals. I will reserve my right to determine whether a bond should be put up before allowing participation.  I will also determine who has a right to participate, and I will be guided to some extent by the willingness of the defendants to cooperatively participate in this discovery process.

So I'm going to reschedule the hearing on damages for approximately five weeks hence.  I will put in a minute entry the date of the hearing at a time when I'm not in trial.  If I am in trial, I will take a break for a day and handle this matter.

I'm going to move this case, folks.  These individuals, the claimants, have been, many of them, out of their homes for a long time.  Some of these individuals have been and, as far as I know, still are living in tents in their

backyard because they can't abandon the house.  If they abandon the house, their insurers have told them that they are going to cancel their fire insurance.  So they live in the backyard and run in and out of the house to use the bathroom facilities.  That's not fair to these folks.  It's about 4,000 of them out there, and we have to get some resolution.  So I urge you all to cooperate.

Anything from the parties?

**MR. TAYLOR:**  Yes.  Your Honor, tomorrow we have a date when we are to file some briefing in regards to the damages, and we have some fairly comprehensive briefing that we wanted to file.  I assume the Court still wants us and will allow us to file that briefing tomorrow?

**THE COURT:**  Well, don't file it for two weeks. Satisfy the judgments first, pay the court costs, pay the penalties, and then I will entertain a request to file a brief.

**MR. TAYLOR:**  Thank you, Your Honor.

**MR. HERMAN:**  Your Honor, I just want to address two matters.  I'm not certain that learned counsel for Taishan understands that with regard to the four settlements that were paid, those claimants paid no attorneys' fees.  Here, in *Germano*, there's no provision for attorneys' fees.  Your Honor might want to issue an order saying there will be no attorneys' fees or however Your Honor appreciates that.

Secondly, Your Honor, we are willing today,

| | |
|---|---|
| 10:11:53 | 1 |
| 10:11:56 | 2 |
| 10:12:01 | 3 |
| 10:12:02 | 4 |
| 10:12:05 | 5 |
| 10:12:09 | 6 |
| 10:12:16 | 7 |
| 10:12:23 | 8 |
| 10:12:28 | 9 |
| 10:12:33 | 10 |
| 10:12:36 | 11 |
| 10:12:40 | 12 |
| 10:12:42 | 13 |
| 10:12:45 | 14 |
| 10:12:47 | 15 |
| 10:12:51 | 16 |
| 10:12:53 | 17 |
| 10:12:56 | 18 |
| 10:13:00 | 19 |
| 10:13:02 | 20 |
| 10:13:06 | 21 |
| 10:13:11 | 22 |
| 10:13:15 | 23 |
| 10:13:18 | 24 |
| 10:13:23 | 25 |

since counsel are here, to meet all day to see if they have
some things they would like to resolve because five weeks is a
short time.

         We will be filing motions in connection with the
30(b)(6) depositions in which we request that representatives
of BNBM and CNBM appear here in the United States, in a
courtroom somewhere in this building, so that discovery that
plaintiffs have to do are not going to be exorbitant costwise
and we are not going to be faced without having rulings as
these depositions are taken.

         THE COURT:  File a motion and I will deal with it.

         MR. MILLER:  Good morning, Your Honor.  Kerry Miller
on behalf of Knauf.  I've been in the back of the courtroom
listening.  I understand Your Honor wants to have basically a
five-week schedule on the issue of class damages.

         Your Honor, since new counsel -- I haven't met
any of these gentlemen who have appeared, but I have received
phone calls and e-mails from some of their colleagues over the
last two weeks -- have appeared in the litigation and appeared
to want to engage on the issue of damages, I received a number
of requests for information, either in my capacity as defense
liaison counsel or in my capacity as counsel for Knauf.

         Knauf, my office, has a lot of information on
damages.  BrownGreer has a lot of information on damages.
Your Honor, in light of the contempt order, my response has

10:13:25  1  been I can't provide that information as defense liaison
10:13:31  2  counsel.
10:13:33  3          Secondly, Your Honor, in my capacity as Knauf's
10:13:36  4  counsel, my client has instructed me not to provide any
10:13:39  5  information to Taishan or any of its affiliates because of the
10:13:42  6  damages that these parties caused my client.
10:13:45  7          So if there's going to be a five-week discovery
10:13:48  8  schedule for damages, I would like to get some guidance from
10:13:52  9  the Court as to what the Court's expectations are of me in
10:13:58  10 terms of providing that information as liaison counsel.
10:14:02  11 Secondly, I wanted to advise the Court of my client's
10:14:06  12 instruction to me not to provide that information, certainly
10:14:09  13 not to provide it for free, to these requests, Your Honor.
10:14:11  14          THE COURT:  Okay.  Well, you ought to meet and confer
10:14:14  15 with them and see what they want, and then I will deal with the
10:14:17  16 costs as well other matters.
10:14:20  17          MR. LEVIN:  Your Honor, in order to complete the
10:14:22  18 discovery within five weeks, we will deliver informally a
10:14:29  19 letter to counsel for the defendants with an abbreviated --
10:14:33  20 abbreviated -- list of documents that we need translated from
10:14:41  21 Chinese into English so that we are prepared to go forward in
10:14:45  22 this five-week compressed time.
10:14:47  23          We appreciate the fact that you have given us
10:14:50  24 only five weeks because time is very important to our clients,
10:14:56  25 but we do need some documents before we can get involved in

10:15:00  1    that.  What I suggest is we will regroup, we will give the

10:15:06  2    defendants a list of what we need, and then we will talk about

10:15:09  3    that list on Thursday.

10:15:11  4              If that's okay?

10:15:14  5              MR. TAYLOR:  We will talk.

10:15:17  6              Your Honor, just one other thing, and I hate to

10:15:18  7    keep jumping up.

10:15:20  8              THE COURT:  That's all right.

10:15:20  9              MR. TAYLOR:  I understood that counsel for the PSC

10:15:23  10   indicated that they wanted to have -- this is Bernard Taylor,

10:15:25  11   I'm sorry -- depositions of the Taishan defendants to occur

10:15:32  12   here, and I didn't understand that the Court had ordered that.

10:15:36  13   That may be of some difficulty to get everybody here, of

10:15:39  14   course, in a five-week period of time.  It would be much

10:15:42  15   easier, I think, if we are going to pursue this discovery, to

10:15:45  16   take the depositions as was done before, in Hong Kong or

10:15:49  17   somewhere like that, so we can easily get the deponents to the

10:15:54  18   deposition.

10:15:54  19              THE COURT:  Well, the problem is twofold:  One is

10:15:57  20   time and the second is cost.  It's not fair to stick the

10:16:00  21   plaintiffs with costs, for sure.  To me, the problem that I

10:16:06  22   have faced before is that there are often disputes and

10:16:11  23   difficulties in these depositions that require some

10:16:13  24   supervision, and I'm not able to go back to Hong Kong.  I'm

10:16:17  25   just not able to do that.  I'm able to be here and participate

10:16:20  1   in it if either one of you all need me.

10:16:23  2              We are at a point here where your client is in

10:16:31  3   contempt of Court.  They really are.  Whether they are afraid

10:16:35  4   or whether they don't know or whether they don't speak the

10:16:38  5   language or whatever it is, they are in contempt of Court, and

10:16:41  6   they have been in contempt of Court since July.

10:16:44  7              MR. TAYLOR:  Correct.

10:16:44  8              THE COURT:  It's unfair for them to ask me at this

10:16:48  9   time, when they are in contempt of Court, to do them a favor.

10:16:52  10  It's just not fair.

10:16:53  11             MR. TAYLOR:  I understand.

10:16:54  12             THE COURT:  I'm a reasonable person.  I walked in

10:16:57  13  your shoes for 30-some-odd years as a litigator.

10:17:01  14             MR. TAYLOR:  I understand.

10:17:01  15             THE COURT:  I know the problems you have, but it's

10:17:03  16  not fair to me.

10:17:06  17             MR. TAYLOR:  We appreciate that, Your Honor.

10:17:08  18             One other point, and I'm probably treading on

10:17:13  19  dangerous ground to raise this.  The costs that plaintiffs have

10:17:17  20  indicated for translating the documents from Chinese to

10:17:22  21  English, is the Court ordering that we cover that cost?

10:17:25  22             THE COURT:  No.  I'm talking about the court costs in

10:17:28  23  connection with these cases.  The other costs, that may be

10:17:33  24  something that I can deal with, but I'm not concerned about

10:17:36  25  that at this time.  At this point I have issued a judgment in

1     cases, 200-plus thousand dollars, plus prejudgment interest,

2     postjudgment interest, plus court costs in those cases, and I

3     get nothing but silence.

4           MR. TAYLOR:  We understand, Your Honor.  We

5     understand, Your Honor, we need to establish credibility with

6     this Court, and we are working on that.

7           THE COURT:  Now, I'm going to also set up a telephone

8     conference with you all in about three weeks to see where we

9     are.

10         MR. TAYLOR:  Thank you, Your Honor.

11         MR. BARR:  Your Honor, if I may just speak from here

12     rather than up to the podium?

13         THE COURT:  Sure.

14         MR. BARR:  We also were under, at least currently,

15     the Court's direction to file with respect to damages by

16     tomorrow.  Am I to take it that likewise we should wait that

17     period of time and then file thereafter?

18         THE COURT:  Yes.

19         MR. BARR:  Thank you.

20         MR. STENGEL:  Your Honor --

21         THE COURT:  The same.

22         MR. STENGEL:  Another question.  CNBM Group and

23     Limited will have jurisdictional objections.  We have no wish

24     to delay the proceedings.  We are willing to work with

25     plaintiff to find a way we can proceed.  That creates a problem

10:18:48  1   with us to voluntarily present witnesses in the case.  We may

10:18:52  2   need a Court order.

10:18:54  3         THE COURT:  I'll give you a Court order.  If you

10:18:57  4   don't participate, I'm just going to strike your pleadings.

10:19:01  5   You have to participate in discovery.  If not, then I have a

10:19:06  6   duty and responsibility just to strike it.  You can't

10:19:09  7   participate and not participate.  Reserve whatever you want to

10:19:14  8   reserve, that's one thing.  I will give you a Court order if

10:19:22  9   that's necessary.

10:19:24  10         MR. STENGEL:  Understood, Your Honor.  Thank you.

10:19:26  11         THE COURT:  Folks, thank you very much.

10:19:29  12         THE DEPUTY CLERK:  All rise.

10:19:31  13         (Proceedings adjourned.)

10:19:30  14                              * * *

15                          <u>CERTIFICATE</u>

16         I, Toni Doyle Tusa, CCR, FCRR, Official Court

17   Reporter for the United States District Court, Eastern District

18   of Louisiana, certify that the foregoing is a true and correct

19   transcript, to the best of my ability and understanding, from

20   the record of proceedings in the above-entitled matter.

21

22

23                          <u>*s/ Toni Doyle Tusa*</u>
                            Toni Doyle Tusa, CCR, FCRR
24                          Official Court Reporter

25

**$**

$1.2 [1]  25/2
$1.3 [1]  25/2
$1.3 billion [1]  25/2
$15,000 [5]  10/13 24/5 31/6 35/1 35/9
$2 [1]  9/21
$2 million [1]  9/21
$2,609,129.99 [1]  6/23
$2.7 [1]  18/21
$2.7 million [1]  18/21
$200,000 [1]  14/18
$40,000 [4]  10/12 34/24 35/8 35/18

**1**

10 [1]  6/24
100-some-odd [1]  34/23
1000 [1]  2/5
10019 [1]  2/17
11 [1]  6/21
12 [5]  12/12 12/14 20/17 20/17 20/17
1201 [1]  1/22
1221 [1]  2/5
14 [2]  6/12 11/21
15 [1]  21/21
16 [1]  6/23
17 [4]  1/7 3/2 9/8 35/19
18475 [1]  21/20
1900 [1]  2/8
19106 [1]  1/18

**2**

200-plus [1]  43/1
200-some-odd [1]  34/22
2000 [2]  2/8 2/14
2005 [1]  4/10
2008 [1]  4/11
2009 [1]  6/7
2010 [1]  6/23
2014 [6]  11/5 12/3 14/11 16/10 16/11
35/19
2015 [4]  1/7 3/2 12/12 13/6
2047 [2]  1/4 3/6
233 [1]  2/11
25 [2]  27/8 35/11
25 percent [3]  11/3 35/6 35/21
26 [3]  13/6 16/11 28/19
275 [1]  2/19
28 [1]  28/22

**3**

30 [2]  18/24 39/5
30-some-odd [1]  42/13
30309 [1]  1/22
310 [1]  2/2
365 [1]  2/14

**4**

4,000 [9]  16/7 18/21 19/21 20/18 30/22
31/16 31/21 33/18 38/5
4809520 [1]  14/11

**5**

50 [1]  18/14
500 [2]  1/18 2/19
504 [1]  2/20
51 [1]  2/17
510 [1]  1/18
52nd [1]  2/17
589-7778 [1]  2/20

**6**

60606 [1]  2/11

**7**

701 [1]  2/2
70113 [1]  1/15
70130 [2]  2/14 2/20
70139 [1]  2/2
75201 [1]  2/8
7778 [1]  2/20
7800 [1]  2/11

**8**

820 [1]  1/15

**A**

Aaron [1]  12/22
abandon [2]  38/1 38/1
abbreviated [2]  40/19 40/20
abide [1]  20/9
ability [1]  44/19
able [12]  4/18 8/13 8/14 8/14 11/21
16/16 26/5 30/1 36/13 41/24 41/25
41/25
about [23]  6/15 6/17 6/23 6/23 7/19 9/14
10/6 11/9 21/22 22/13 22/25 23/17
25/19 28/1 30/25 32/1 32/25 33/1 38/5
41/2 42/22 42/24 43/8
above [2]  15/25 44/20
above-entitled [1]  44/20
absent [1]  9/16
according [1]  29/6
accordingly [2]  36/3 36/18
account [2]  16/25 17/3
accounting [1]  15/6
act [4]  4/21 19/8 33/1 36/18
action [8]  9/17 11/9 12/2 12/9 19/8
20/19 25/1 28/18
actions [3]  1/7 5/17 11/18
activity [2]  12/21 13/8 19/5
add [1]  33/15
addition [1]  5/7
additional [5]  24/24 25/18 25/21 26/25
27/6
address [8]  16/15 26/14 28/15 28/16
29/7 29/8 29/10 38/18
adjourned [1]  44/13
admissible [2]  9/13 36/12
admission [1]  28/25
admissions [4]  15/21 28/19 29/1 29/3
admit [2]  28/20 32/13
admitted [1]  32/7
adopts [1]  31/22
advise [3]  9/25 10/4 40/11
advised [2]  6/17 10/5
advising [1]  34/18
affidavits [1]  31/9
affiliated [1]  16/4
affiliates [15]  4/20 5/19 10/1 10/5 10/18
12/18 14/6 14/16 14/24 35/3 35/5 35/12
35/23 36/7 40/5
affirmed [2]  9/7 9/10
affirming [1]  8/25
affixed [1]  32/8
affording [1]  6/9
afraid [2]  22/1 42/3
after [14]  4/23 6/9 7/24 10/9 13/8 14/8
15/6 16/12 17/8 18/14 18/23 30/9 31/17
31/21
again [7]  6/7 8/3 19/13 20/13 21/15 28/3
31/19
against [13]  5/18 5/19 11/7 14/6 15/21
17/25 19/1 19/2 19/9 24/25 27/7 27/22
28/6
aggressively [1]  25/10

ago [2]  30/14 31/8
agree [1]  23/6
agreed [1]  9/7
agreement [2]  20/3
aided [1]  2/23
akin [1]  31/2
ALAN [2]  2/1 3/20
Alan Weinberger [1]  3/20
alien [1]  30/21
aligned [3]  30/23 33/9 33/10
all [25]  1/7 5/6 5/14 9/23 11/6 11/7
11/15 12/1 13/19 14/13 15/12 20/7 24/9
26/1 26/22 27/6 28/1 28/10 30/22 38/6
39/1 41/8 42/1 43/8 44/12
allotment [1]  11/22
allow [4]  7/8 19/16 31/11 38/13
allowed [2]  13/16 29/15
allowing [2]  24/14 37/13
alone [1]  19/2
along [1]  14/3
already [8]  20/24 22/13 23/11 23/12
24/3 25/4 33/16 33/21
also [23]  3/22 4/25 6/14 10/13 10/17
10/24 15/1 16/24 22/10 23/11 24/7
24/20 24/21 25/15 26/16 26/25 27/3
35/2 35/15 36/20 37/13 43/7 43/14
Alston [1]  1/20 12/22
alter [11]  14/24 15/22 17/21 17/22 17/24
18/4 18/9 18/12 28/5 32/22 36/7
alternative [2]  10/8 19/10
always [1]  13/20
am [2]  37/20 43/16
Americas [1]  2/5
among [1]  5/15
amorphous [1]  30/11
amount [5]  5/1 6/22 22/22 23/15 23/22
amounts [1]  24/24
amusing [1]  21/22
and/or [1]  36/19
announced [3]  12/14 12/15 12/22
another [5]  5/14 8/24 17/3 25/21 43/22
answer [2]  5/21 6/10
answers [1]  5/25
any [20]  5/10 5/15 6/2 7/24 8/7 12/18
12/18 13/9 21/6 25/20 25/24 26/7 27/12
27/17 29/12 29/16 30/9 39/17 40/4 40/5
Anybody [1]  10/22
anyone [1]  12/17
anything [3]  22/16 35/10 38/8
apparently [2]  4/24 12/24
appeal [1]  7/8
appealed [2]  7/1 8/20
appealing [1]  7/1
appeals [1]  12/7
appear [4]  26/13 33/4 33/7 39/6
appearance [2]  3/8 7/1
Appearances [1]  1/12
appeared [3]  39/17 39/19 39/19
appellate [1]  31/20
appliances [1]  4/25
applicability [1]  36/19
applicable [1]  31/1
applied [1]  29/3
applies [2]  27/2 27/3
apply [5]  28/4 28/13 29/4 30/11 30/18
appreciate [3]  34/6 40/23 42/17
appreciates [1]  38/24
appropriate [8]  9/4 10/13 12/5 15/8
21/25 25/23 29/5 29/11
appropriately [1]  22/7
approved [1]  11/18
approximately [1]  37/18
apropos [1]  32/19

A

apt [1]  21/25
arcane [2]  31/6 31/7
are [90]
area [2]  4/14 13/10
areas [1]  14/12
argued [2]  8/24 31/7
arguing [1]  7/25
argument [6]  1/10 13/18 13/20 30/1 30/25 33/18
arguments [1]  14/9
arithmetic [2]  33/13 33/14
arithmetically [1]  11/16
ARNOLD [5]  1/17 4/5 12/15 14/1 17/5
Arnold Levin [1]  4/5
arrive [1]  13/1
arrived [1]  32/15
as [75]
ask [6]  7/19 16/23 19/14 23/18 26/4 42/8
asked [2]  12/16 13/1
asking [1]  25/1
aspects [1]  33/4
assessment [1]  29/16
assets [4]  18/23 19/14 19/16 19/17
assistance [3]  8/4 8/12 10/23
assume [1]  38/12
ASTMs [1]  32/4
at [75]
Atlanta [2]  1/22 3/14
attach [1]  24/23
attempt [1]  27/18
attempted [1]  19/4
attempting [4]  16/6 18/2 24/23 27/20
attend [1]  22/4
attention [1]  5/23
attitude [1]  31/22
attorney [1]  35/15
attorney's [1]  16/25 17/3 22/24
attorneys [13]  9/12 9/17 9/18 9/25 10/4 13/8 17/11 18/17 18/22 19/20 22/11 23/22 24/4
attorneys' [13]  10/13 15/9 23/23 24/5 25/18 25/21 31/6 35/1 35/9 35/17 38/21 38/22 38/23
audience [1]  12/17
authority [4]  24/6 26/25 29/2 29/18
authorized [1]  15/16
avail [1]  6/9
Avenue [3]  1/15 2/5 2/8
await [1]  32/22
away [2]  9/15 34/3

B

back [8]  7/20 8/17 12/21 18/22 22/15 25/13 39/13 41/24
background [3]  4/6 13/25 32/12
backyard [2]  38/1 38/3
Baldwin [1]  24/10
banc [1]  9/19
bankruptcy [3]  16/8 19/22 33/24
Banner [1]  14/3
BARR [3]  2/4 3/21 26/11
Barrios [1]  14/7
based [5]  15/25 28/4 28/19 29/17 31/21
basement [1]  8/7
basic [1]  17/18
basically [3]  13/14 25/13 39/14
basis [5]  5/1 12/5 28/9 28/17 28/24
bathroom [1]  38/4
be [59]
because [28]  4/25 5/7 5/10 5/12 6/4

7/12 11/14 13/12 15/13 17/17 18/5 18/10 20/19 21/23 23/7 24/7 24/11 24/17 24/21 25/25 28/19 32/25 33/24 34/12 38/1 39/2 40/5 40/24
been [18]  4/7 12/24 16/6 16/12 17/6 23/6 27/10 27/15 28/12 30/1 30/23 32/21 33/20 37/23 37/25 39/13 40/1 42/6
before [16]  1/10 16/6 16/15 16/20 23/8 26/14 26/15 26/20 26/21 29/14 29/20 36/25 37/13 40/25 41/16 41/22
began [3]  4/10 4/21 9/11
begin [1]  4/18
beginning [1]  28/21
begins [1]  14/22
begun [1]  23/11
behalf [3]  3/13 3/22 4/5 18/12 26/12 39/13
being [5]  5/3 5/5 10/15 14/5 20/15
believe [5]  16/10 16/20 18/14 20/2 34/11
Berman [1]  1/17
BERNARD [4]  1/20 3/13 21/16 41/10
best [2]  4/8 44/19
better [1]  7/7
between [2]  36/5 37/7
beyond [4]  21/11 24/19 28/4 28/13
biggest [1]  32/10
bill [1]  21/4
billion [3]  25/2 25/2
binding [1]  29/2
Bird [1]  1/20 12/22
bit [3]  25/19 32/25 33/1
Block [1]  12/22
BNBM [29]  2/4 2/4 2/7 2/7 2/10 2/10 2/13 2/13 3/22 3/22 12/23 16/1 16/1 17/23 20/7 26/12 26/12 27/14 27/14 30/13 30/23 34/1 34/2 36/5 36/13 36/15 37/3 37/7 39/6
BNBM Group [2]  3/22 26/12
bond [1]  37/12
Bonilla [1]  25/6
boom [1]  4/12
bootstrap [2]  27/21 28/3
both [8]  7/24 8/2 9/7 10/9 24/16 27/1 27/11 28/16
break [1]  37/20
brief [7]  13/2 13/5 13/25 26/24 27/20 28/16 38/16
briefing [6]  14/9 25/6 29/25 38/10 38/11 38/13
briefly [4]  29/24 30/3 30/5 32/14
briefs [5]  13/19 21/19 25/4 25/5 34/6
bring [1]  20/21
broadly [1]  27/9
BrownGreer [2]  20/23 39/24
building [3]  4/12 5/3 39/7
buildings [1]  5/9
business [16]  9/2 9/3 10/18 10/19 10/22 11/1 16/2 19/18 19/19 30/18 35/3 35/4 35/5 35/11 35/12 35/23
but [42]  4/4 4/8 5/13 6/4 6/16 8/9 8/19 8/23 10/8 10/23 11/15 13/20 15/6 16/17 17/7 17/23 18/1 19/7 19/11 21/4 21/11 22/14 23/1 24/9 25/15 26/16 26/25 27/9 29/12 30/8 31/12 31/21 32/13 33/2 33/8 34/16 36/23 39/17 40/25 42/15 42/24 43/3

C

cabal [1]  20/6
call [5]  3/5 4/14 5/23 13/25 15/4
called [1]  12/15
calls [1]  39/18

came [4]  4/23 5/25 8/17 12/22
can [10]  35/4 42/16 43/2 43/25/22/25
23/5 23/10 23/11 23/14 23/19 30/10 33/4 33/16 33/17 40/13 40/25 41/17 42/24 43/25
can't [7]  16/17 21/7 33/22 35/13 38/1 40/1 44/6
Canal [1]  2/14
cancel [1]  38/3
cannot [3]  24/1 25/9 29/2
capacity [3]  39/21 39/22 40/3
care [1]  30/19
cargo [1]  19/1
case [35]  3/5 4/10 5/13 6/8 6/11 6/18 6/25 8/23 11/5 11/11 11/17 11/20 12/15 13/4 14/18 15/12 15/14 14/17 10/3 20/10 20/5 25/6 25/11 25/12 26/25 27/14 27/15 27/16 30/12 30/25 33/13 34/8 37/2 37/22 44/1
cases [12]  5/16 6/5 8/22 8/24 8/24 11/19 17/25 25/3 34/21 42/23 43/1 43/2
caught [1]  12/25
cause [1]  19/8
caused [5]  5/2 5/7 22/3 33/23 40/6
CCR [3]  2/19 44/16 44/23
cert [1]  9/20
certain [1]  38/19
certainly [3]  30/21 31/2 40/12
CERTIFICATE [1]  44/15
certification [4]  11/6 11/25 33/5 33/6
certified [1]  11/25 12/2 16/23
certify [2]  11/6 44/18
challenged [1]  32/3
chance [1]  21/17
changed [1]  13/9
charged [1]  10/12
chase [2]  19/16 19/17
check [5]  7/24 15/10 15/16 16/23 17/1
chemical [1]  5/2
Chicago [1]  2/11
China [25]  4/17 4/17 7/15 7/16 7/17 18/22 19/5 19/6 19/7 19/7 19/7 19/13 19/24 20/5 20/5 20/10 22/19 22/20 30/17 30/20 31/22 32/1 32/6 32/24 32/24
CHINESE [6]  1/4 3/7 32/25 33/1 40/21 40/20
CHINESE-MANUFACTURED [2]  1/4 3/7
choice [1]  10/8
CHRISTINA [1]  1/21
Christy [1]  21/18
circuit [12]  7/7 8/21 9/7 9/8 9/9 14/9 18/7 18/19 20/9 20/17 29/2 31/19
circuits [1]  11/18
circumstance [1]  15/18
circumstances [4]  15/12 16/9 17/1 26/2
cite [1]  14/10
cited [3]  25/3 26/24 31/3
citing [2]  15/23 25/13
civil [3]  10/9 10/11 10/20
civilly [1]  27/11
claim [2]  7/5 28/3
claimants [3]  12/3 37/23 38/21
claimed [2]  7/4 7/6
claiming [1]  31/14
claims [2]  11/7 11/21
class [17]  5/17 11/6 11/7 11/8 11/18 11/25 11/25 12/1 12/2 12/9 12/10 20/19 25/1 28/18 33/5 33/5 39/15
cleaning [1]  19/24
clear [2]  14/25 35/13
clearer [1]  27/10
clerk [1]  23/22

**C**

clerk's [1] 21/5
clever [1] 21/22
client [10] 19/22 22/2 22/13 22/14 22/21
23/6 28/7 40/4 40/6 42/2
client's [1] 40/11
clients [7] 26/17 27/5 27/14 27/22 29/9
33/3 40/24
clients' [1] 29/9
close [1] 18/20
CNBM [20] 2/16 2/16 4/2 4/3 16/1 16/2
17/23 20/7 29/25 29/25 30/13 30/23
34/1 34/2 36/5 36/14 36/15 37/7 39/6
43/22
CNBM Limited [1] 4/3
Coast [1] 4/13
codes [1] 32/4
coffin [1] 18/4
collateral [1] 36/20
colleague [1] 13/3
colleagues [3] 3/16 26/10 39/18
come [5] 7/17 15/1 20/15 20/21 21/5
comes [1] 18/12
coming [2] 18/25 19/23
comments [3] 4/6 14/11 34/6
commitments [1] 22/21
committed [1] 24/15
commonality [2] 11/10 11/13
communicated [1] 24/3
compensate [1] 24/10
compensation [1] 33/3
complete [1] 40/17
compliance [1] 32/4
complied [2] 9/3 24/18
comply [2] 10/24 11/2
comprehensive [1] 38/11
compressed [1] 40/22
computer [1] 2/23
computer-aided [1] 2/23
concern [5] 23/17 23/18 31/14 32/1
32/10
concerned [1] 42/24
concert [1] 14/24
concluded [1] 25/13
concludes [1] 16/1
conclusions [1] 6/20
conclusively [1] 15/19
condition [1] 11/23
conduct [2] 16/4 34/19
confer [3] 23/21 37/10 40/14
conference [1] 43/8
conferring [1] 15/6
confidence [1] 34/10
confirmed [1] 31/22
connected [1] 36/23
connection [2] 39/4 42/23
constitute [1] 16/2
constitutional [1] 30/22
constitutionally [1] 25/9
consult [1] 14/17
contact [1] 5/6
contacts [2] 7/12 9/6
contempt [35] 10/8 10/9 10/11 16/17
16/20 19/18 21/2 21/3 22/12 24/2 24/19
26/1 27/4 27/7 27/11 27/13 27/16 27/18
27/21 28/4 28/6 28/11 28/13 31/5 32/23
34/9 34/9 34/24 35/14 36/21 39/25 42/3
42/5 42/6 42/9
contend [1] 25/20
contending [1] 26/3
contest [1] 25/7
continuance [2] 13/2 13/5

continued [1] 14/8
contribution [1] 41/9
controlled [1] 31/8
convene [1] 26/4
cooperate [1] 38/7
cooperated [1] 7/15
cooperatively [1] 37/15
copper [2] 5/2 5/3
corporate [3] 16/3 28/3 29/7
corporations [1] 26/17
correct [3] 21/16 42/7 44/18
correctly [1] 14/19
cost [3] 20/24 41/20 42/21
costs [19] 6/24 9/22 11/24 14/15 14/15
14/18 14/20 14/20 21/5 22/24 23/23
35/18 38/15 40/16 41/21 42/19 42/22
42/23 43/2
costwise [1] 39/8
could [9] 6/1 8/2 8/19 19/1 27/9 27/15
27/16 28/12 32/18
couldn't [2] 8/1 21/11
counsel [22] 3/8 12/15 14/1 14/16 15/13
17/5 20/15 20/16 25/19 34/1 34/7 34/10
38/19 39/1 39/16 39/22 39/22 40/2 40/4
40/10 40/19 41/9
country [3] 10/21 10/22 30/7
couple [2] 11/13 12/13
couples [1] 6/24
courage [1] 22/1
course [2] 5/22 41/14
court [92]
Court's [14] 7/1 11/2 11/4 15/25 20/10
23/17 23/18 24/18 25/24 27/6 28/8
29/13 40/9 43/15
courtroom [4] 3/15 12/21 19/7 39/11
courts [5] 10/23 10/25 10/25 31/21
32/13
cover [1] 42/21
create [3] 27/21 28/6 28/7
created [3] 5/6 5/8 19/25
creates [1] 43/25
credibility [2] 8/16 43/5
Creek [1] 20/4
criminal [3] 10/9 10/11 10/20
criminally [1] 27/11
currently [1] 43/14
cut [1] 32/20

**D**

Dallas [1] 2/8
damage [8] 4/11 11/8 11/14 11/18 11/22
13/6 13/14 33/4
damages [26] 12/4 12/9 12/11 12/12
24/25 25/8 25/8 25/10 25/14 26/18 27/2
29/17 33/9 33/12 36/25 36/25 37/5
37/18 38/11 39/15 39/20 39/24 39/24
40/6 40/8 43/15
danger [1] 22/1
dangerous [1] 42/19
date [5] 12/8 12/12 16/11 37/19 38/10
Davis [1] 14/8
day [6] 6/25 8/8 8/8 13/1 37/20 39/1
days [2] 6/16 8/6
de [1] 15/19
de-privileged [1] 15/19
deal [5] 29/9 37/3 39/11 40/15 42/24
dealing [2] 22/3 37/2
dealt [2] 8/22 18/7
debtor [6] 9/24 9/24 10/1 10/3 10/6
10/15 22/4 30/9
decide [2] 25/22 25/23
decided [4] 8/21 9/15 9/16 10/7
decision [4] 9/14 28/18 28/21 28/22

decisions [1] 34/2
declare [1] 24/18
declined [1] 30/14
deemed [3] 28/19 29/1 29/3
deep [2] 22/14 22/14
default [15] 6/2 6/4 6/4 6/6 6/11 6/18
6/21 13/15 14/19 14/21 17/24 18/3 18/5
18/8 32/21
defaulted [2] 27/2 27/4
defaulting [1] 25/7
defective [3] 6/14 6/15 11/23
defectively [1] 12/3
defend [2] 24/25 26/5
defendant [6] 25/7 25/14 27/3 27/4
34/12 34/13
defendants [30] 7/22 11/8 12/1 12/7
12/10 12/18 12/19 12/23 13/9 13/11
13/13 13/15 16/16 17/25 18/16 18/17
21/14 26/16 27/12 28/1 30/13 30/17
31/14 32/12 37/10 37/11 37/15 40/19
41/2 41/11
defending [1] 24/22
defense [2] 39/21 40/1
defenses [2] 29/11 36/3
Degen [1] 25/12
delay [3] 29/12 33/3 43/24
deliver [1] 40/18
denied [1] 31/16
denies [1] 31/16
Dentons [4] 2/4 2/7 2/10 3/21
deny [1] 26/20
depend [1] 35/22
depleted [1] 4/13
deponent [1] 32/2
deponents [1] 41/17
depose [1] 37/11
deposed [1] 7/16
deposition [4] 14/20 32/1 33/2 41/18
depositions [13] 8/3 8/10 8/11 17/15
18/24 31/17 36/10 36/13 39/5 39/10
41/11 41/16 41/23
derivative [1] 17/20
described [1] 26/22
determinations [1] 14/23
determine [8] 6/13 11/16 12/9 36/6
36/19 36/20 37/12 37/13
determined [3] 12/9 15/7 20/24
developed [1] 4/24
did [10] 5/13 9/5 13/5 19/5 19/23 23/8
28/11 35/4 35/4 35/5
didn't [7] 7/5 8/6 10/10 11/8 21/17 33/24
41/12
different [3] 16/18 26/19 27/6
difficult [1] 11/10
difficulties [1] 41/23
difficulty [1] 41/13
diligently [1] 17/10
direct [2] 15/20 21/8
directed [1] 27/7
direction [1] 43/15
directly [1] 15/23
discover [1] 37/7
discovery [14] 7/14 17/23 18/9 31/11
35/25 36/1 36/2 36/16 37/16 39/7 40/7
40/18 41/15 44/5
discussed [1] 9/12
discussing [1] 9/12
dispute [1] 36/9
disputes [1] 41/22
disrespect [4] 22/9 22/9 22/10 22/11
distasteful [1] 5/8
distributors [1] 18/25
district [6] 1/1 1/2 1/11 11/9 44/17 44/17

**D**

ditch [2]  22/14 22/15
divided [1]  8/23
do [41]  4/8 6/1 7/18 9/14 9/23 10/19
10/22 11/1 11/2 12/11 15/16 17/2 17/7
17/16 17/24 18/3 18/16 18/16 18/21
18/22 19/11 19/13 19/19 19/14 19/19
20/19 20/20 24/7 24/15 24/22 29/10
31/5 31/21 35/4 35/19 35/20 37/8 39/8
40/25 41/25 42/9
docket [1]  13/7
Document [1]  21/20
documents [6]  15/19 16/13 33/25 40/20
40/25 42/20
does [5]  27/22 27/22 28/6 28/7 28/8
doing [8]  10/18 10/22 12/6 19/18 19/22
19/23 32/16 35/3
dollars [5]  6/17 14/21 34/22 34/23 43/1
dominated [1]  30/18
don't [21]  11/1 18/1 20/11 20/12 20/14
20/25 21/7 30/8 30/19 30/21 31/23
32/13 33/2 33/18 35/11 36/2 36/16
38/14 42/4 42/4 44/4
done [7]  10/14 22/16 35/11 35/12 35/20
35/23 41/16
down [4]  16/11 16/15 21/5 24/9
Doyle [2]  2/19 44/16 44/23 44/23
drag [1]  20/14
dragged [3]  18/17 18/18 18/19
Drive [1]  2/11
drywall [13]  1/5 3/7 4/13 4/14 4/18 4/18
4/22 4/23 5/1 9/5 11/23 12/4 20/5
due [6]  23/23 26/23 29/19 30/16 30/18
31/16
dug [1]  22/14
Dunbar [1]  2/13
during [2]  5/22 19/17
duty [2]  10/24 44/6

**E**

e-mail [2]  9/13 9/13
e-mails [1]  39/18
each [4]  5/17 16/3 17/25 26/19
ear [1]  32/17
earlier [2]  21/16 26/12
earned [1]  35/24
earnings [2]  11/3 35/6
easier [2]  7/16 41/15
easily [1]  41/17
East [1]  4/13
EASTERN [2]  1/2 44/17
easy [1]  33/14
efforts [1]  8/2
ego [10]  14/24 15/22 17/21 17/22 17/24
18/4 18/9 18/12 28/5 32/22
egos [1]  36/7
eight [4]  8/7 16/6 17/6 33/19
EIKHOFF [2]  1/21 21/18
either [2]  39/21 42/1
ELDON [1]  1/10
en [1]  9/19
en banc [1]  9/19
end [1]  31/19
enemies [1]  18/15
enforce [2]  30/20 31/23
engage [1]  39/20
engaged [2]  14/24 17/11
engaging [1]  18/2
English [1]  40/21 42/21
enjoined [2]  10/17 35/22
enough [3]  7/8 17/23 21/10
enter [1]  6/8

entered [4]  7/1 7/5 7/6 27/13
enterprise [1]  8/5 19/21 37/23
enterprises [1]  30/18
entertain [1]  38/16
entities [8]  4/21 6/8 9/2 9/3 9/3 15/4 16/4
16/4
entitled [5]  25/7 26/23 29/20 29/20
29/20
entry [1]  37/19
equally [2]  27/2 27/3
ESQ [11]  1/14 1/17 1/20 1/21 1/21 2/1
2/4 2/7 2/10 2/13 2/16
establish [2]  18/4 43/5
established [1]  17/17
establishing [2]  9/6 17/16
estoppel [2]  15/1 36/20
ether [1]  30/11
even [8]  18/15 21/7 27/3 28/14 30/10
30/10 31/21 33/14
event [4]  5/10 5/15 7/24 13/9
every [3]  20/21 26/19 28/23
everybody [3]  10/6 13/10 41/13
everything [2]  19/6 32/20
evidence [2]  15/20 31/9
evidentiary [1]  6/10
examination [2]  22/4
examine [1]  37/3
exceeded [2]  14/18 14/20
exceptions [1]  15/20
excess [2]  4/25 18/21
excuse [4]  30/9 32/18 32/18 34/18
execute [1]  9/22
exist [1]  28/11
existing [1]  11/7 29/17
exists [2]  33/7 36/18
exorbitant [1]  39/8
expectations [1]  40/9
expedite [1]  20/25
experience [2]  11/12 11/21
expert [1]  14/20
experts [1]  6/15
extend [1]  28/8
extensive [3]  6/18 8/25 13/18
extent [4]  7/15 8/9 36/23 37/15
Exterior [1]  14/4

**F**

faced [2]  39/9 41/22
facilities [1]  38/4
facing [1]  22/1
fact [8]  6/19 14/23 15/25 23/12 28/25
33/17 33/22 40/23
factory [1]  32/6
facts [5]  14/25 28/17 29/7 29/7 29/8
factual [3]  28/24 36/9 37/1
factually [1]  35/24
failed [1]  12/2
failure [2]  22/4 28/20
fair [7]  7/5 35/15 37/6 38/5 41/20 42/10
42/16
fairly [2]  23/16 38/11
FALLON [3]  1/10 3/10 13/23
families [1]  24/13
family [7]  24/10 24/11 24/11 24/11 24/12
24/12 24/12
far [1]  37/25
fashion [1]  11/21
favor [2]  6/22 42/9
FCRR [3]  2/19 44/16 44/23
fear [8]  22/2 22/2 22/5 22/8 30/8 30/8
30/8 32/18
fearful [1]  20/12
February [2]  12/12 12/14

February 12 [2]  12/12 12/14
feel [2]  17/1 17/2
fees [14]  10/14 15/9 22/24 23/23 24/5
25/19 25/21 25/23 35/1 35/9 35/17
38/21 38/22 38/24
felt [9]  6/1 6/13 7/7 7/12 8/2 10/13 13/7
15/11 15/14
FENTON [2]  2/10 3/23
few [2]  17/8 18/20
Fifth [9]  7/7 8/21 9/7 14/9 18/7 18/19
20/9 29/2 31/19
Fifth Circuit [9]  7/7 8/21 9/7 14/9 18/7
18/19 20/9 29/2 31/19
fight [1]  16/12
file [9]  18/2 38/10 38/12 38/13 38/14
38/16 39/11 43/15 43/17
filed [5]  5/13 5/15 5/21 5/25 11/6 19/11
27/20
filing [1]  39/4
finally [1]  18/22
find [5]  18/23 19/2 30/8 36/11 43/25
finding [1]  28/23
findings [7]  6/19 15/25 17/22 28/18
28/25 29/2 33/17
fine [2]  30/2 34/17
finished [1]  8/8
fire [1]  38/3
fired [3]  9/17 13/9 18/22
firm [3]  3/23 23/3 34/17
first [11]  6/3 7/3 7/4 12/9 14/13 26/2
27/6 28/10 34/9 34/20 38/15
Fishbein [1]  1/17
five [15]  6/15 8/6 18/18 26/19 31/7
33/19 37/8 37/18 39/2 39/15 40/7 40/18
40/22 40/24 41/14
five-week [4]  39/15 40/7 40/22 41/14
flew [1]  8/8
flight [1]  13/1
floorboard [1]  32/7
flooring [1]  32/8
Florida [1]  17/19
flurry [3]  12/21 13/8 19/4
focus [2]  11/14 21/25
focused [2]  8/13 9/9
folks [8]  14/6 24/7 30/22 31/16 31/22
37/22 38/5 44/11
Following [1]  6/19
footage [7]  11/15 11/16 11/22 11/24
12/5 20/22 20/23
force [3]  14/6 15/7 16/22
forecasting [1]  31/20
foreclosed [1]  19/21
foreclosure [1]  33/24
foregoing [1]  44/18
foreign [2]  19/8 34/15
forfeit [2]  11/3 35/6
form [1]  25/25
formula [1]  33/12
forth [2]  14/23 32/2
forum [1]  32/16
forums [1]  17/18
forward [5]  6/10 8/6 12/22 28/22 40/21
found [9]  4/16 9/1 9/2 19/18 20/1 20/4
21/21 27/4 29/20
four [10]  6/15 8/22 17/15 18/17 20/15
32/11 33/19 33/20 34/20 38/20
frankly [2]  7/20 8/1
free [1]  40/13
Friday [2]  17/10 27/20
front [1]  18/19
full [4]  12/17 22/21 23/14 32/12
fully [3]  23/6 25/10 35/17

## F

fund [1] 15/6
funds [6] 14/4 15/15 15/16 16/22 16/24
16/25
further [2] 27/25 36/12
furtherance [1] 6/11
Furthermore [1] 27/13

## G

gathered [1] 13/12
gave [3] 8/9 8/12 12/13
gentlemen [2] 3/4 39/17
Georgia [1] 1/22
germane [1] 7/13
Germano [13] 5/16 6/11 6/12 14/15
14/18 15/2 21/4 24/13 27/14 33/9 33/23
34/21 38/22
get [19] 7/14 8/19 9/23 16/6 17/13 18/20
20/18 21/17 22/20 22/25 24/24 30/19
35/16 38/6 40/8 40/25 41/13 41/17 43/3
gets [2] 19/12 19/13
getting [2] 18/20 23/13
give [12] 7/10 13/5 13/20 13/24 17/11
20/8 23/18 27/23 35/15 41/1 44/3 44/8
given [5] 15/11 17/1 40/23
gives [1] 19/8
go [13] 7/17 8/4 17/24 18/22 19/1 19/2
20/10 20/12 31/15 33/19 36/12 40/21
41/24
going [30] 11/3 13/24 14/10 14/11 16/22
17/2 17/15 19/12 19/13 23/16 28/22
30/20 31/11 31/23 32/10 35/16 35/22
35/25 36/2 36/15 37/9 37/17 37/22 38/2
39/8 39/9 40/7 41/15 43/7 44/4
gone [4] 11/10 21/11 24/19 33/18
good [15] 3/3 3/10 3/13 3/17 3/18 3/19
3/25 4/1 13/23 21/15 25/19 26/11 31/20
34/17 39/12
got [4] 5/14 7/20 7/23 13/4
gotten [1] 32/24
granted [3] 6/6 11/25 13/5
great [1] 31/13
Gross [2] 5/16 15/2
ground [2] 5/5 42/19
group [14] 2/4 2/7 2/10 2/13 2/16 3/22
4/2 16/1 16/2 18/16 26/12 27/14 29/25
43/22
guarantee [3] 23/3 23/5 23/11
guidance [1] 40/8
guided [1] 37/14
gypsum [1] 5/1

## H

had [39] 4/17 6/12 7/10 7/21 7/22 8/18
9/1 9/1 9/2 9/20 9/21 10/4 10/5 10/7
10/14 11/12 11/20 11/20 12/3 12/11
12/17 12/24 15/4 16/8 18/6 18/11 19/21
22/13 27/17 32/2 34/17 34/20 34/21
34/24 34/25 35/4 35/6 35/19 41/12
Hague [1] 30/14
hand [1] 36/5
handle [1] 37/21
Hangartner [1] 2/1
happen [3] 23/16 23/19 23/21
happened [1] 16/19
happening [1] 20/11
hard [2] 4/7 23/20
HARRY [2] 2/13 3/23
has [20] 10/22 16/12 17/8 22/13 23/6
23/25 23/25 25/4 25/4 26/18 26/22 30/1
31/14 31/18 32/23 37/14 39/23 39/24
39/25 40/4

hasn't [1] 32/24
hate [1] 44/1
have [116]
haven't [7] 20/3 31/13 33/20 35/9 35/9
35/20 39/16
having [3] 13/6 16/25 39/9
HB [1] 2/19
HB-275 [1] 2/19
he [10] 12/15 12/23 12/25 12/25 13/1
13/3 13/4 17/7 17/8 32/16
head [1] 32/6
hear [5] 13/21 21/14 26/9 30/3 32/14
heard [6] 6/15 27/17 27/23 27/25 31/13
32/11
hearing [20] 6/10 6/19 10/10 12/8 13/6
13/14 13/17 25/8 26/18 26/24 27/2
29/15 33/5 33/6 36/23 36/24 36/24 37/5
37/17 37/19
hearings [2] 29/21 31/17
hearsay [1] 15/20
Heischober [1] 24/12
held [2] 10/8 10/10 27/15
help [1] 21/11
helpful [1] 19/25
hence [1] 37/18
here [37] 3/14 3/15 3/22 12/18 13/10
13/12 14/7 17/6 17/24 18/10 19/7 20/9
20/20 21/18 21/22 22/3 22/21 24/5 24/9
24/18 27/12 28/1 29/12 31/1 32/16
32/19 33/16 34/10 36/9 38/21 39/1 39/6
41/12 41/13 41/25 42/2 43/11
Herman [8] 1/14 1/14 1/14 3/10 3/11
3/11 13/24 21/2
Herrington [2] 2/16 4/2
highest [1] 9/15
him [4] 12/24 13/3 13/5 34/11
hire [1] 34/17
hired [3] 7/23 12/24 13/8
his [3] 12/23 13/3 13/5
history [4] 4/8 11/10 31/21
hold [1] 10/8
holding [2] 10/11 16/3
holdings [1] 28/23
holds [1] 27/10
hole [1] 22/14
home [3] 8/8 12/4 20/10
homeowners [2] 16/7 20/18
homes [7] 6/24 16/7 19/21 20/23 33/23
37/1 37/24
Hong [6] 8/9 17/15 18/19 33/2 41/16
41/24
Hong Kong [6] 8/9 17/15 18/19 33/2
41/16 41/24
Honor [75]
Honor's [10] 14/10 15/24 16/10 21/3
27/9 28/5 28/18 28/21 28/23 29/6
honorable [4] 1/10 19/23 19/23 31/25
honored [1] 3/14
horse [1] 17/20
hours [1] 8/7
house [5] 12/17 20/22 38/1 38/2 38/4
houses [1] 4/12
Hovey [3] 25/5 25/13 26/25
how [10] 11/16 11/23 19/11 22/6 30/10
31/4 32/18 33/15 35/23 37/1
however [2] 37/6 38/24
HULL [1] 1/21
hurricanes [1] 4/11

## I

I'll [2] 30/5 44/3
I'm [33] 3/14 3/19 3/22 3/24 6/17 13/24
14/10 14/11 20/15 21/16 26/7 30/10

31/20 35/16 35/25 36/2 36/15 36/24
I've [7] 5/17 8/11 27/21 32/18 38/18 41/11
41/24 41/24 41/25 42/12 42/18 42/22
42/24 43/7 44/4
I've [1] 39/13
idea [1] 31/4
if [32] 8/18 11/2 13/20 16/18 17/4 17/6
19/2 23/17 26/2 30/3 30/19 32/17 33/4
33/7 33/20 35/4 35/23 36/1 36/10 36/16
36/22 37/20 38/1 39/1 40/7 41/4 41/15
42/1 43/11 44/3 44/5 44/8
ignorance [1] 32/17
Illinois [1] 2/11
imagine [1] 18/2
immediately [3] 8/11 23/1 23/1
Immunities [1] 19/8
important [7] 5/25 6/8 6/13 7/14 15/15
36/6 40/24
importantly [2] 28/14
impose [1] 27/18
in [208]
In Re [1] 3/6
inception [1] 30/24
includes [1] 14/14
including [1] 14/20
indeed [2] 15/8 25/24
indicate [3] 14/17 15/3 31/24
indicated [8] 21/16 22/23 23/25 23/25
24/18 25/4 41/10 42/20
indicates [2] 27/1 34/11
indicating [1] 24/19
indication [1] 15/9
individual [3] 20/21 32/3 34/15
individuals [5] 16/24 32/15 37/11 37/23
37/24
informally [1] 40/18
information [8] 8/12 39/21 39/23 39/24
40/1 40/5 40/10 40/12
injured [1] 19/20
injuries [1] 11/9
injury [1] 11/11
instruct [4] 6/1 35/17 35/25 37/9
instructed [3] 9/16 9/25 40/4
instruction [1] 40/12
insurance [1] 38/3
insurers [1] 38/2
intend [1] 34/11
intended [2] 22/12 28/12
intentional [1] 19/25
interest [10] 6/24 9/22 14/14 14/15
15/21 21/6 34/22 34/23 43/1 43/2
interesting [1] 16/5
Interior [1] 14/4
interpreter [3] 7/22 7/22 7/23
interpreters [3] 7/21 7/23 7/25
intervene [1] 6/12
intervening [1] 6/22
into [8] 4/22 14/11 15/1 19/22 22/15
23/14 35/8 40/21
introduce [1] 21/17
introduced [1] 31/8
invited [1] 31/1
involved [2] 20/7 40/25
Irpino [1] 14/7
is [78]
isn't [1] 31/16
issue [19] 7/9 7/11 8/22 9/9 16/25 18/10
21/11 22/23 25/18 25/22 27/1 28/15
29/14 34/6 34/9 36/4 38/23 39/15 39/20
issued [5] 6/19 6/21 10/10 22/12 42/25
issues [9] 15/1 17/13 22/3 22/19 27/6
28/2 28/6 29/10 34/8
it [91]

**I**

it's [27] 4/7 4/7 14/7 14/25 16/10 16/18 21/20 24/9 24/9 24/17 24/21 25/15 30/21 31/6 31/7 32/11 33/12 33/13 34/15 35/12 35/15 37/6 38/5 41/20 42/8 42/10 42/15
its [5] 6/15 10/1 10/5 34/13 40/5
itself [1] 30/8

**J**

JAMES [2] 2/16 4/2
James Stengel [1] 4/2
Jerry [1] 32/16
Jim [1] 29/24
joined [1] 4/21
JUDGE [3] 1/11 3/10 13/23
Judge Fallon [2] 3/10 13/23
judges [3] 9/8 9/9 33/14
Judging [1] 13/7
judgment [29] 6/21 7/2 7/2 9/21 9/24 9/24 10/1 10/3 10/6 10/15 14/13 14/15 15/5 15/8 18/8 22/4 22/17 22/19 22/22 24/13 24/20 24/24 30/8 30/19 31/23 32/21 35/10 35/17 42/25
judgments [8] 10/25 14/9 17/25 18/3 18/6 18/21 34/21 38/15
judicata [2] 15/1 36/19
July [3] 11/5 35/19 42/6
July 17 [1] 35/19
jumping [1] 41/7
juncture [2] 17/4 31/12
jurisdiction [17] 6/3 7/3 7/4 7/9 7/10 7/14 8/13 9/1 9/6 15/3 17/16 17/17 18/10 29/8 31/15 31/18 32/13
jurisdictional [1] 43/23
just [19] 9/15 12/24 13/4 14/17 14/21 18/7 18/9 18/20 20/24 21/5 29/24 30/3 38/18 41/6 41/25 42/10 43/11 44/4 44/6
justice [7] 10/20 19/5 20/18 22/5 25/12 25/15 25/16

**K**

Katz [2] 1/14 3/11
keep [2] 19/16 41/7
Kennedy [1] 25/12
KENNY [2] 1/21 3/16
Kerry [1] 39/12
kind [2] 26/4 30/21
Knauf [9] 4/17 4/21 14/3 19/22 33/1 33/11 39/13 39/22 39/23
Knauf's [1] 40/3
knew [3] 10/6 11/22 11/22
know [16] 4/10 9/23 15/15 17/12 18/24 20/4 21/11 30/21 32/11 32/25 32/25 33/15 35/11 37/25 42/4 42/15
knowing [1] 6/16
knows [4] 3/24 20/23 24/3 25/5
Kong [6] 8/9 17/15 18/19 33/2 41/16 41/24

**L**

lack [3] 7/2 7/3 29/19
ladies [1] 3/3
lagniappe [1] 24/8
language [1] 21/5
last [9] 6/25 8/8 12/25 13/1 16/12 17/11 27/20 31/24 39/19
later [1] 12/8
law [10] 6/20 18/15 27/22 28/17 32/17 32/18 32/23 33/13 33/25 34/16
lawfully [1] 10/22
lawsuit [1] 7/5 7/6 25/1

lawyer [1] 13/4
lawyers [2] 11/8 11/16
Leach [1] 24/11
lead [2] 14/1 17/5
learned [1] 38/19
least [7] 8/11 13/10 13/11 17/12 18/16 33/10 43/14
leaves [1] 17/7
left [2] 4/11 18/1
length [1] 16/7
less [1] 18/5
let [9] 4/4 4/6 13/21 19/1 21/14 26/9 30/3 32/14 34/7
letter [1] 40/19
levels [1] 9/15
Levin [12] 1/17 1/17 4/5 12/15 14/1 14/5 15/7 16/15 17/5 22/23 23/25 30/6
liability [6] 1/5 3/7 12/10 17/19 17/19 32/22
liable [1] 16/4
liaison [3] 39/22 40/1 40/10
lied [1] 32/7
lift [1] 18/3
lifted [1] 16/20
light [1] 39/25
lightly [1] 6/3
like [9] 12/21 13/10 17/4 19/1 20/12 35/8 39/2 40/8 41/17
likewise [1] 43/16
Limited [2] 2/16 4/3 43/23
line [1] 31/8 31/11
list [4] 15/13 40/20 41/2 41/3
listed [1] 14/16
listen [2] 8/13 33/7
listening [1] 39/14
litigation [11] 1/5 3/7 17/13 17/18 18/18 20/14 22/15 24/1 30/9 36/17 39/19
litigator [1] 42/13
little [5] 17/7 17/9 17/23 32/25 32/25
live [2] 16/8 38/3
lives [1] 24/14
living [2] 5/9 37/25
LLC [2] 1/14 2/1
LLP [6] 1/20 2/4 2/7 2/10 2/13 2/16
logos [1] 9/4
long [4] 4/8 8/17 8/18 37/24
Longer [1] 14/8
look [7] 8/6 8/22 10/20 10/23 25/22 36/11 36/15
looked [3] 11/20 12/21 21/24
looking [2] 28/21 36/24
looks [2] 13/9 35/7
lose [2] 33/22 33/23
lost [1] 16/7
lot [7] 4/11 4/25 5/10 5/18 27/25 39/23 39/24
LOUISIANA [1] 1/2 1/6 1/15 2/2 2/14 2/20 5/13 17/18 44/18
love [1] 17/7

**M**

made [3] 9/14 27/19 34/3
mail [2] 9/13 9/13
mails [1] 39/18
major [2] 17/25 18/25
make [11] 3/8 4/6 8/1 8/2 8/15 11/3 19/11 23/19 23/20 23/21 33/17
making [1] 23/12
malfunction [1] 5/7
man [1] 17/7
maneuver [1] 22/6
manufactured [6] 1/4 3/7 4/18 12/3 32/5 32/5

manufacturing [1] 32/6
many [9] 8/11 9/7 9/8 30/1 36/22 37/23
map [1] 17/11
March [3] 1/7 3/2 13/6
March 26 [1] 13/6
Mark [1] 33/2
markings [1] 32/4
material [3] 6/14 36/11 36/11
mathematical [1] 33/12
mathematicians [1] 33/15
matter [10] 4/7 6/19 17/3 26/14 26/23 27/3 27/22 36/17 37/21 44/20
matters [5] 8/5 11/13 16/15 38/19 40/16
may [20] 6/21 13/24 16/16 18/9 24/8 26/8 27/9 30/6 31/25 32/16 34/16 35/24 36/9 36/9 37/1 37/2 41/13 42/23 43/11 44/1
May 11 [1] 6/21
Maybe [2] 31/6 31/7
McKellar [1] 24/12
McKinney [1] 2/8
MDL [4] 1/4 3/6 5/11 5/12
me [24] 4/6 8/9 8/12 9/7 10/4 13/5 13/19 13/21 17/7 21/14 26/9 30/3 32/14 34/7 35/12 35/21 36/16 40/4 40/9 40/12 41/21 42/1 42/8 42/16
mean [1] 23/1
means [2] 16/18 36/16
meant [1] 7/25
mechanical [2] 2/23 31/15
meet [3] 37/9 39/1 40/14
members [1] 11/7
mentioned [1] 35/7
mess [1] 19/24
met [3] 14/5 26/1 39/16
metal [1] 5/3
metaphor [1] 30/11
method [2] 24/4
Meunier [2] 14/7 32/16
MICHAEL [6] 1/21 2/4 2/7 3/21 3/23 26/11
Michaux [1] 24/11
might [1] 38/23
Mike [1] 3/16
Miller [1] 39/12
million [4] 6/17 9/21 14/20 18/21
minister [1] 19/5
minute [1] 37/19
Mitchell [2] 5/16 15/2
moment [1] 12/20
moments [1] 17/8
money [7] 20/2 21/7 21/7 22/20 23/13 23/14 32/24
monitor [1] 32/1
monogram [1] 32/8
months [3] 12/8 12/13 16/12
MOORE [2] 2/7 3/23
moot [2] 24/17 24/17
more [11] 6/1 6/9 8/18 21/25 24/9 27/9 28/14 31/17 31/17 31/18 33/20
Morgan [1] 24/10
morning [12] 3/3 3/10 3/13 3/17 3/18 3/19 3/25 4/1 13/23 21/15 26/11 39/12
most [2] 13/11 20/23
motion [10] 11/6 13/13 13/18 19/10 21/20 24/16 26/15 26/20 26/21 39/11
motions [16] 39/4
movants [1] 13/22
move [5] 6/5 17/14 24/14 32/21 37/22
moved [1] 6/10
movement [1] 31/6
Mr. [13] 12/22 14/5 14/7 14/8 14/8 15/7 16/15 21/2 22/23 23/25 26/22 30/6

**M**

Mr. Aaron [1]  12/22
Mr. Davis [1]  14/8
Mr. Herman [1]  21/2
Mr. Irpino [1]  14/7
Mr. Levin [6]  14/5 15/7 16/15 22/23
23/25 30/6
Mr. Longer [1]  14/8
Mr. Meunier [1]  14/7
Mr. Taylor [1]  26/22
Ms. [1]  14/7
Ms. Barrios [1]  14/7
much [10]  4/9 8/1 8/2 11/16 11/23 29/22
34/5 35/24 41/14 44/11
multidistrict [1]  5/11
multiple [1]  31/9
Murphy [1]  11/12
must [2]  16/21 16/22
my [28]  3/16 3/22 4/8 5/24 8/9 8/22
14/11 18/1 20/22 20/22 21/17 26/16
27/5 27/14 27/22 28/6 32/10 32/17
37/12 39/21 39/22 39/23 39/25 40/3
40/4 40/6 40/11 44/19
myself [1]  21/12

**N**

nail [1]  18/4
nature [1]  6/15
necessarily [1]  36/12
necessary [4]  8/3 15/11 36/10 44/9
need [10]  14/16 17/16 22/24 36/12
40/20 40/25 41/2 42/1 43/5 44/2
needed [4]  4/14 6/5 20/5 20/5
negotiated [1]  9/3
never [1]  16/19
new [18]  1/6 1/15 2/2 2/5 2/5 2/14 2/17
2/17 2/20 3/11 3/15 13/1 15/13 20/15
20/16 26/4 30/13 39/16
New Orleans [3]  3/11 3/15 13/1
newly [2]  17/11 32/15
next [3]  29/23 33/7 33/15
no [26]  1/4 3/6 5/21 6/1 6/8 6/16 7/10
9/17 10/7 10/8 12/7 12/7 14/13 15/6
15/9 26/9 27/11 31/18 32/18 33/7 34/18
38/21 38/22 38/23 42/22 43/23
None [1]  22/11
nor [1]  17/2
Norris [1]  33/2
nose [1]  34/13
not [88]
note [1]  5/12
noted [1]  10/3
nothing [1]  30/7 43/3
notice [1]  12/13
noticed [1]  10/9
Notwithstanding [1]  8/1
now [10]  9/8 11/10 18/2 21/6 31/14 33/6
34/23 35/15 35/21 43/7
number [2]  16/14 27/1 39/20
numbers [1]  5/11

**O**

O'Keefe [1]  1/15
objecting [1]  13/13
objections [2]  8/11 43/23
obliterated [1]  16/18
observe [1]  8/14
obtain [1]  24/23
obviously [3]  9/23 24/5 34/12
occur [1]  41/11
odd [3]  34/22 34/23 42/13
odor [1]  4/24

odors [1]  5/8
offer [1]  35/4
office [2]  21/5 39/23
offices [1]  15/5
Official [3]  2/19 44/16 44/24
often [1]  41/22
Oil [1]  11/12
okay [4]  21/9 30/2 40/14 41/4
omnibus [2]  21/20 27/19
on [61]
once [2]  14/3 32/11
one [22]  5/13 8/23 8/23 12/11 12/23
15/4 17/2 18/7 20/21 20/25 21/17 21/19
23/10 26/19 27/1 28/23 36/5 41/6 41/19
42/1 42/18 44/8
ones [2]  18/11 18/11
only [9]  11/8 14/16 15/8 15/18 15/20
26/16 26/24 29/4 40/24
open [2]  12/14 32/21
opening [1]  18/5
opinion [10]  8/17 8/19 8/20 8/20 8/22
9/8 14/10 14/22 15/24 16/10
opinions [1]  8/25
opportunities [1]  4/16
opportunity [7]  7/11 8/10 26/13 27/17
27/23 28/7 28/16
or [37]  4/14 5/13 5/21 5/21 6/13 6/15
6/24 11/24 12/18 13/11 14/24 15/4
15/22 18/17 19/25 25/2 25/22 25/24
25/25 31/15 33/19 35/5 35/11 35/12
35/22 36/7 36/12 36/18 36/19 37/3
38/24 39/22 40/5 41/16 42/4 42/4 42/5
oral [3]  1/10 13/17 13/20
order [22]  10/11 11/2 11/4 22/13 22/20
24/19 25/24 26/1 27/7 27/9 27/13 27/21
28/11 28/13 34/20 36/21 38/23 39/25
40/17 44/2 44/3 44/8
ordered [3]  7/18 35/19 41/12
ordering [1]  42/21
orders [1]  29/18 30/10 31/5
Oregon [3]  19/19 20/1 20/3
organized [1]  14/5
Orlando [1]  24/11
Orleans [8]  1/6 1/15 2/2 2/14 2/20 3/11
3/15 13/1
Orrick [2]  1/10 3/17
other [22]  4/12 5/18 5/19 9/5 11/13
11/21 13/8 15/22 17/19 21/18 23/10
26/9 27/12 28/1 28/1 28/4 29/16 36/6
40/16 41/6 42/18 42/23
Otherwise [1]  19/15
ought [2]  36/13 40/14
our [31]  4/14 10/21 10/22 10/23 11/9
12/13 15/5 16/21 19/16 19/17 20/1 22/2
22/5 22/13 22/14 22/21 23/6 24/23
25/4 25/5 25/6 26/24 29/9 29/9 29/11
29/19 33/3 33/16 34/16 40/24
ourself [1]  26/1
ourselves [5]  21/8 24/2 24/22 24/25 26/5
out [5]  8/1 8/2 8/15 8/19 14/5 18/13
19/18 20/4 20/14 22/15 30/11 32/24
37/23 38/4 38/5
over [4]  8/4 8/10 16/12 39/18
owned [2]  4/17 19/2
Oz [1]  21/21

**P**

page [6]  7/24 7/24 14/22 15/24 21/21
25/6
page 15 [1]  21/21
page 7 [1]  14/22
page 8 [2]  15/24 25/6
paid [13]  14/5 14/13 15/10 16/23 16/23

23/1 24/2 35/8 35/9 35/10 35/16 38/21
39/21
panel [4]  5/11 8/23 8/24 18/7
panels [4]  8/21 8/25 9/7 18/7
papers [1]  18/3
paragraph [1]  28/22
paranoids [1]  18/15
parents [1]  35/22
part [4]  15/22 28/12 30/5 30/6
partake [1]  33/5
participate [29]  8/5 9/16 10/2 10/10
13/14 13/16 14/21 24/6 25/8 26/17 26/23
27/2 29/15 29/21 30/15 31/2 34/13
35/13 36/1 36/2 36/16 36/17 37/14
37/16 41/25 44/4 44/5 44/7 44/7
participated [1]  10/19
participating [3]  25/9 25/14 28/9
participation [4]  26/16 29/19 31/10 37/13
particular [4]  11/17 15/12 25/22 37/2
particularly [3]  5/23 16/16 30/17
parties [10]  7/11 8/4 13/20 27/15 27/16
28/4 37/6 37/9 38/8 40/6
partner [1]  21/18
partners [1]  3/23
parts [1]  34/20
passed [1]  9/20
pay [17]  10/13 22/21 23/4 23/7 23/14
24/20 24/24 31/4 31/5 31/23 34/11
34/21 34/24 34/25 35/17 38/15 38/15
paying [2]  15/15 24/4
payment [1]  15/8
payments [1]  23/12
Peachtree [1]  1/22
pejorative [1]  20/16
penalties [2]  10/12 38/16
penalty [2]  24/3 34/24
Pennsylvania [1]  1/18
people [10]  5/8 5/24 6/12 6/23 12/13
19/20 19/21 33/18 36/13 36/14
People's [1]  30/17
per [1]  31/11
per se [1]  31/11
perceive [1]  17/12
percent [5]  11/3 27/8 35/6 35/11 35/21
performance [1]  17/14
period [3]  19/17 41/14 43/17
permit [1]  17/5
person [1]  42/12
personal [15]  5/12 7/2 7/3 7/9 7/10 7/13
8/13 9/1 9/6 11/9 11/11 17/16 17/17
17/10 29/8
phase [2]  25/10 25/14
Phelps [1]  2/13
Philadelphia [1]  1/18
phone [2]  15/4 39/18
piercing [4]  16/3 28/2 28/11 29/7
place [1]  14/4
plaintiff [2]  24/13 43/25
plaintiffs [23]  1/14 1/17 3/11 6/2 6/17
6/22 7/12 7/19 7/21 9/7 10/21 10/14 12/16
13/15 13/21 14/19 20/21 22/10 33/23
36/10 37/10 39/8 41/21 42/19
plaintiffs' [5]  13/13 13/25 14/2 19/20
22/11
plausible [1]  30/9
play [1]  15/1
PLC [7]  2/4 2/7 2/10 2/13 3/22 26/12
27/14
pleadings [1]  44/4
please [5]  3/3 3/5 3/9 13/24 30/6
Plum [1]  20/4
Plum Creek [1]  20/4
plus [5]  9/21 9/22 34/22 34/23 43/1 43/1

P

plus... [1] 43/2
podium [1] 43/12
point [10] 7/9 9/11 9/19 15/13 15/23
16/14 23/10 42/2 42/18 42/25
points [1] 5/6
position [3] 13/15 13/25 18/5
positions [1] 13/20
postjudgment [4] 14/14 21/6 34/23 43/2
Poydras [2] 2/2 2/19
practicing [1] 18/15
preclude [4] 24/16 25/9 26/15 28/9
predicate [1] 28/23
predominance [2] 11/11 11/14
predominant [1] 5/3
pregnant [1] 35/24
prejudgment [4] 9/21 14/14 34/22 43/1
preliminary [2] 6/6 6/11
prepare [2] 19/10 33/17
prepared [3] 22/14 26/7 40/21
present [7] 7/11 10/15 12/16 33/14
34/10 35/7 44/1
presented [1] 30/1
presenting [2] 6/18 10/15
preserved [1] 29/11
preside [1] 8/10
prevail [1] 18/1
prevent [2] 24/22 25/13
primarily [1] 5/3
principal [1] 15/22
prior [3] 9/25 10/4 34/17
privileged [3] 15/19 16/13 33/25
privy [1] 34/2
probably [3] 12/25 21/6 42/18
problem [8] 4/25 5/6 23/9 33/7 34/12
41/19 41/21 43/25
problems [2] 4/24 42/15
proceed [3] 12/16 14/6 43/25
proceeded [2] 6/25 11/5
proceeding [3] 25/21 26/5 26/6
proceedings [10] 2/23 3/1 5/23 29/10
29/13 29/16 34/3 43/24 44/13 44/20
process [13] 10/19 22/10 23/2 23/11
26/23 29/19 30/16 30/18 30/21 31/15
31/16 32/12 37/16
procured [1] 4/15
produce [1] 37/11
produced [1] 6/16
product [2] 18/11 18/12
PRODUCTS [2] 1/5 3/7
profit [1] 13/17
profits [1] 27/8
promises [1] 32/24
proof [1] 31/18
proofs [1] 33/10
proper [1] 30/23
properly [4] 5/20 21/17 31/10 32/23
properties [1] 11/15
property [5] 11/8 11/14 11/18 12/4 24/24
proposed [1] 33/16
prosper [1] 4/21
protect [1] 10/21
prove [2] 14/21 17/24
proven [1] 17/21
provide [7] 11/24 26/8 28/8 29/6 40/1 40/4
40/12 40/13
provided [1] 27/8
providing [3] 7/15 16/24 40/10
province [1] 21/4
proving [1] 14/19
provision [1] 38/22
PSC [10] 3/12 4/5 11/5 12/15 16/21

22/25 23/22 23/24 24/4 41/9
PSC's [2] 11/13 34/16
pull [1] 30/11
purge [4] 16/17 16/18 16/18 24/1
purged [1] 25/25
purposes [1] 16/2
pursue [2] 14/8 41/15
pursuing [1] 9/4
put [10] 5/24 6/7 10/3 12/13 15/5 18/4
32/2 34/25 37/13 37/18
putting [1] 9/4

Q

question [3] 33/13 37/1 43/22
questions [2] 7/20 26/8
quickly [2] 8/19 23/16
quite [1] 14/19
quote [3] 21/21 21/25 21/25

R

raise [2] 23/10 42/19
raised [1] 33/1
rather [2] 8/17 43/12
RE [2] 1/4 3/6
reached [1] 15/3
reactions [1] 22/1
read [3] 7/24 25/4 34/5
Reading [1] 25/5
ready [1] 12/16
really [6] 11/14 15/21 21/24 31/13 36/24
42/3
reasonable [3] 6/9 13/4 42/12
reasons [2] 15/12 26/19
recall [1] 15/18 31/25
received [5] 13/18 14/13 23/12 39/17
39/20
recently [1] 32/6
recited [1] 14/25
record [6] 3/9 7/10 14/17 33/6 33/25
44/20
recorded [1] 2/23
recover [1] 20/2
redress [1] 30/23
refer [2] 5/22 24/8
reference [1] 27/12
references [1] 27/19
referencing [1] 28/2
refrigerants [1] 5/4
refuse [1] 31/2
refused [1] 34/13
regard [4] 21/2 29/12 35/21 38/20
regarding [1] 24/4
regards [2] 21/23 38/10
registry [1] 34/25 35/8
regroup [1] 41/1
rehearing [1] 9/19
reinforced [1] 16/12
Relates [1] 1/7
relating [1] 29/16
relationship [5] 36/4 36/6 36/18 36/22
37/7
relief [2] 16/6 18/20
reluctant [1] 6/4
remedy [1] 14/24 27/7
repair [1] 11/24
repeat [2] 17/14 32/17
repeatedly [1] 32/3
Reporter [3] 2/19 44/17 44/24
represent [1] 3/15
representatives [1] 39/5
represented [2] 12/23 23/6
representing [3] 5/17 21/23 34/18
Republic [1] 30/17

request [7] 13/6 13/21 19/15 25/17
23/10 29/18 40/6
requested [1] 13/21
requests [4] 28/20 28/25 39/21 40/13
require [3] 18/9 35/25 41/23
requirements [2] 10/25 26/2
requires [1] 25/21
res [2] 15/1 36/19
res judicata [2] 15/1 36/19
reschedule [1] 37/17
reserve [3] 37/12 44/7 44/8
reserved [1] 31/12
resolution [1] 38/6
resolve [1] 39/2
resolved [2] 17/13 22/25
respect [13] 26/25 27/5 27/8 27/17 28/1
28/5 28/17 29/3 29/4 29/4 29/18 34/10
43/15
respectfully [5] 26/19 27/19 27/23 28/8
29/17
respond [4] 12/2 26/7 28/20 30/5
responded [2] 12/7 29/1
response [4] 13/18 30/3 32/14 39/25
responsibility [1] 44/6
rest [1] 23/14
result [4] 6/14 19/22 22/8 22/12
resulting [1] 12/4
revealing [1] 16/9
reviewed [1] 18/6
RICHARD [2] 2/10 3/23
right [8] 10/21 10/23 13/13 18/2 27/1
37/12 37/14 41/8
rights [2] 29/19 30/22
rise [1] 44/12
road [1] 17/11
roles [1] 29/9
room [2] 5/24 7/21
ROSENBERG [2] 2/13 3/24
rough [2] 25/15 25/15
rule [11] 7/9 8/5 9/24 9/24 10/1 10/3
10/6 10/15 15/20 30/9 36/3
ruled [3] 8/10 9/13 31/10
rules [1] 20/16
ruling [4] 28/5 28/8 28/11 31/3
rulings [3] 20/10 27/21 39/9
run [1] 38/4
RUSS [4] 1/14 3/10 4/4 13/24
Russ Herman [1] 13/24
Rydberg [1] 2/1

S

safe [1] 5/12
safety [2] 32/4 32/8
said [9] 5/8 6/23 7/25 9/6 11/1 21/2
21/10 23/25 32/21
same [5] 10/24 11/15 19/13 23/21 43/21
SASAC [5] 19/3 19/4 19/6 19/9 19/11
satisfied [4] 16/21 16/22 21/4 32/23
satisfies [1] 17/3
satisfy [3] 16/17 22/16 38/15
satisfying [2] 22/18 24/13
saw [2] 9/12 12/5
say [12] 10/11 17/8 17/8 17/9 18/15
20/22 30/19 33/8 33/8 33/8 33/24 37/5
saying [2] 8/15 32/3 38/23
says [1] 23/20
schedule [4] 29/6 29/16 39/15 40/8
scope [2] 12/10 36/20 36/22
se [1] 31/11
seat [1] 12/25
seated [2] 3/3 18/1
second [3] 12/11 36/4 41/20
Secondly [1] 38/25 40/3 40/11

**S**

secrecy [1] 33/1
Section [1] 1/5
security [1] 20/8
Sedran [1] 1/17
see [10] 20/11 21/7 21/7 23/8 34/7 34/8 36/4 39/1 40/15 43/8
seeing [1] 4/21
seek [1] 11/8
seeking [3] 7/2 11/6 29/12
seemed [1] 13/4
seen [1] 20/3
sell [1] 18/12
selling [1] 18/11
sense [1] 8/15
sent [2] 32/7 32/9
separate [2] 14/11 26/17
September [6] 6/7 12/2 16/10 16/11 16/11 28/19
September 26 [2] 16/11 28/19
serve [1] 19/6
served [3] 5/20 18/24 30/14
service [2] 14/18 19/10
set [10] 9/24 9/24 10/1 10/6 12/8 12/12 13/6 14/3 23/18 26/18 43/7
settlement [2] 14/3 20/3
settlements [2] 14/4 38/20
several [2] 12/8 17/25
shape [1] 25/25
sheet [1] 13/7
sheetrock [1] 4/14
shipping [2] 4/18 4/22
shoes [1] 42/13
short [3] 12/25 20/17 39/3
short-circuit [1] 20/17
shorten [1] 4/8
shorter [1] 8/18
shortly [2] 4/23 19/11
should [7] 10/2 13/16 27/24 29/20 36/17 37/12 43/16
show [7] 10/7 14/23 15/19 22/9 22/9 22/10 34/1
side [1] 14/3
sides [1] 8/2
sight [1] 31/2
significant [1] 9/5
signing [1] 15/17
silence [3] 12/20 35/10 43/3
silver [2] 5/2 5/5
simply [1] 11/16
since [6] 27/16 30/24 35/19 39/1 39/16 42/6
sincerely [1] 18/14
single [6] 14/25 15/22 16/2 28/23 30/18 32/22
sit [2] 16/15 20/20
situation [2] 11/24 24/23
six [1] 33/19
small [1] 19/12
so [36] 6/24 7/5 7/18 8/19 9/22 10/7 11/1 11/17 11/20 11/24 13/5 13/18 13/21 15/23 17/8 17/12 19/1 19/14 20/22 20/22 22/25 23/14 23/24 25/8 27/15 32/10 33/15 35/16 35/23 37/17 38/3 38/6 39/7 40/7 40/21 41/17
software [1] 2/23
sole [3] 26/14 26/21 28/17
solely [1] 27/7
solicited [1] 9/2
some [40] 4/6 4/16 4/25 8/12 8/15 11/20 13/9 13/9 14/18 15/7 16/7 16/7 16/8 23/13 24/7 26/3 30/11 31/7 32/1 32/15

34/21 34/22 34/23 35/25 36/9 36/23 37/1 38/8 38/13 38/17 38/19 39/1 39/2 39/18 40/8 40/25 41/13 41/23 42/13
somebody [1] 18/12
somehow [1] 5/13
something [5] 6/2 17/8 20/11 37/3 42/24
sometime [1] 4/10
Sometimes [1] 34/16
somewhere [2] 39/7 41/17
soon [1] 20/11
sorry [1] 41/11
sort [2] 5/5 7/13
source [1] 15/15
sources [1] 16/24
South [1] 2/11
Sovereign [1] 19/8
speak [3] 4/4 42/4 43/11
specific [1] 29/8
specifically [1] 28/24
spent [3] 6/17 8/7 25/19
spoken [1] 27/9
square [8] 11/15 11/16 11/22 11/23 12/5 20/22 20/23 20/25
stalking [1] 17/20
stamps [1] 32/5
stand [1] 29/25
start [1] 20/24
started [2] 5/10 17/14
state [1] 33/6
stated [2] 26/12 28/10
states [25] 1/1 1/11 4/22 5/4 5/17 7/18 9/4 9/20 10/18 10/20 11/1 19/15 20/6 25/7 28/24 30/20 32/7 32/9 32/13 35/3 35/5 35/6 35/23 39/6 44/17
States' [1] 4/13
stating [1] 27/10
stay [2] 7/8 20/9
STENGEL [3] 2/16 4/2 29/24
stenography [1] 2/23
stick [1] 41/20
still [5] 20/2 31/22 34/9 37/25 38/12
straw [1] 12/25
Street [1] 1/18 1/22 2/2 2/14 2/17 2/19
strike [3] 36/2 44/4 44/6
structures [1] 4/12
subsequent [3] 26/3 27/21 28/5
subsequently [2] 9/13 28/15
subsidiary [1] 4/17
substantive [1] 24/10
subtract [1] 33/15
such [2] 18/25 33/13
sue [1] 19/4
suffer [2] 33/23 33/24
suffered [1] 16/8
suffice [2] 26/20 27/22
sufficient [1] 37/8
suggest [1] 41/1
Suite [5] 1/18 2/2 2/8 2/11 2/14
suits [5] 5/10 5/15 5/18 5/18 5/19
sulfur [1] 5/1
summarize [1] 4/7
supervision [1] 41/24
supply [1] 4/13
supports [1] 35/20
Supreme [6] 9/20 20/10 25/16 29/18 30/25 31/3
Supreme Court [3] 9/20 29/18 31/3
sure [6] 3/24 19/11 23/20 30/10 41/21 43/13
Sutcliffe [1] 2/16
switches [1] 5/6
system [4] 10/21 20/1 22/5 22/6

**T**

table [1] 15/14
Taishan [57]
Taishan's [2] 17/19 28/20
take [14] 6/2 6/3 6/4 8/3 9/17 13/15 30/5 30/6 31/17 36/10 36/13 37/20 41/16 43/16
taken [2] 12/7 39/10
taking [1] 17/15
talk [3] 22/24 41/2 41/5
talked [1] 22/13
talking [3] 25/19 34/1 42/22
Target [1] 19/1
task [3] 14/5 15/7 16/21
TAYLOR [5] 1/20 3/14 21/16 26/22 41/10
telephone [1] 43/7
tell [3] 19/14 34/7 37/10
tents [1] 37/25
term [1] 24/8
terms [3] 24/18 28/2 40/10
Terrell [1] 2/1
test [1] 8/15
testimony [1] 6/16
Texas [1] 2/8
TG [7] 5/18 5/21 7/1 34/9 35/13 36/5 36/8
than [9] 6/1 6/9 7/17 15/22 17/19 18/6 24/9 28/2 43/12
thank [13] 3/20 21/13 26/13 29/21 29/22 30/1 34/3 34/5 38/17 43/10 43/19 44/10 44/11
that [250]
that's [17] 6/2 7/18 11/17 21/3 23/9 23/16 23/23 30/25 32/18 32/20 34/16 36/25 38/5 41/4 41/8 44/8 44/9
their [35] 5/23 7/21 7/22 8/15 9/12 9/15 9/17 9/17 10/17 12/4 15/4 16/4 16/7 17/19 17/20 18/12 18/22 19/14 19/21 24/14 26/1 29/3 31/9 33/23 34/19 35/2 35/5 35/12 36/2 36/11 37/24 37/25 38/2 38/3 39/18
them [34] 5/14 7/8 7/14 7/18 7/24 10/8 10/9 10/11 10/12 10/13 10/21 10/23 13/11 15/14 19/14 20/1 24/4 24/14 26/20 27/18 28/7 28/24 34/18 34/18 35/2 35/16 35/17 35/19 37/23 38/2 38/5 40/15 42/8 42/9
themselves [4] 7/11 9/16 10/16 16/17
then [12] 9/17 12/20 13/25 22/25 23/19 31/19 33/8 38/16 40/15 41/2 43/17 44/5
there [26] 4/16 4/24 4/24 5/25 6/23 7/20 12/20 12/20 13/7 15/6 15/19 16/14 19/4 20/2 22/19 22/23 26/3 26/18 27/11 32/1 34/8 36/9 37/1 38/6 38/23 41/22
there's [7] 20/16 20/16 21/4 21/6 35/10 38/22 40/7
thereafter [1] 43/17
therefore [2] 26/2 28/12
therefrom [1] 12/4
these [22] 5/18 16/3 20/18 20/21 20/23 29/9 30/18 30/22 31/21 32/12 33/12 33/18 34/3 37/22 37/24 38/5 39/10 39/17 40/6 40/13 41/23 42/23
they [152]
thing [1] 16/5 19/13 19/23 21/17 31/24 41/6 44/8
things [1] 5/5 5/7 7/13 9/5 39/2
think [11] 17/20 18/1 21/10 21/20 23/16 35/15 36/6 36/25 37/6 37/8 41/15
third [2] 7/23 9/8
this [76]

## T

those [18]   5/7 5/17 14/6 16/5 16/24 18/5 23/12 25/23 26/2 28/24 29/2 29/10 29/21 32/5 33/9 37/11 38/21 43/2
though [3]   16/16 23/8 30/3
thought [7]   5/12 8/11 9/5 20/18 21/22 21/24 30/7
thousand [1]   34/22 34/23 43/1
three [5]   8/24 17/17 20/20 34/8 43/8
through [13]   4/11 18/18 20/12 22/6 22/20 23/2 23/13 31/4 31/5 31/15 32/20 33/19 33/19
thumbed [1]   34/13
Thursday [1]   13/14
tied [1]   32/11
timber [1]   20/6
time [33]   6/1 6/9 7/3 7/4 7/8 8/4 8/18 9/12 9/19 9/20 10/24 12/17 23/19 23/20 23/21 25/19 28/11 29/5 29/11 31/10 35/7 35/18 37/7 37/19 37/24 39/3 40/22 40/24 41/14 41/20 42/9 42/25 43/17
today [11]   13/12 21/11 22/4 24/5 25/19 26/15 26/21 27/12 28/1 29/14 38/25
together [7]   7/23 8/23
told [2]   31/17 38/2
tolerated [2]   25/16 25/17
tomorrow [3]   38/9 38/13 43/16
Toni [4]   2/19 44/16 44/23 44/23
too [2]   7/21 8/18
took [5]   6/4 7/19 8/23 8/24 13/3
tortured [3]   4/8 33/20 33/21
total [2]   6/22 35/10
totally [1]   25/10
tough [2]   19/12 19/12
transcript [1]   44/19
transcription [1]   2/23
transcripts [1]   7/20
transfer [1]   17/2
transferred [1]   22/20
translated [1]   40/20
translating [1]   42/20
treading [1]   42/18
trial [2]   37/20 37/20
tried [2]   5/23 33/9
true [2]   22/1 44/18
trust [3]   15/5 16/25 18/16
try [3]   4/7 27/21 27/7
trying [3]   23/13 24/22 28/3
TTP [9]   5/18 5/21 10/17 16/1 34/9 35/13 35/22 36/5 36/8
Tusa [4]   2/19 44/16 44/23 44/23
two [10]   7/22 8/21 14/9 14/11 16/12 35/16 35/18 38/14 38/18 39/19
two-week [1]   35/18
twofold [1]   41/19

## U

U.S [1]   23/14
unconstitutional [3]   24/17 24/21 25/15
under [5]   15/11 16/9 26/2 29/2 43/14
underlying [2]   25/1 26/1
understand [13]   23/17 24/8 33/25 34/6 34/15 34/16 34/24 39/14 41/12 42/11 42/14 43/4 43/5
understanding [4]   13/19 22/5 22/6 44/19
understands [1]   38/20
understood [2]   41/9 44/10
undesirable [1]   16/9
unfair [1]   42/8
unfortunately [3]   9/11 12/24 30/16
unintended [1]   22/8
UNITED [23]   1/1 1/11 4/13 4/22 5/4 7/18

9/4 9/20 10/18 10/20 11/1 19/15 20/6 20/7 20/21 22/11 33/5 35/5 35/6 35/13 35/23 39/6 44/17
United States [19]   4/22 5/4 7/18 9/9 9/20 10/18 10/20 11/1 19/15 20/6 30/20 32/7 32/9 32/13 35/3 35/5 35/6 35/23 39/6
United States' [1]   4/13
unless [2]   11/2 24/1
until [6]   10/18 11/1 21/7 24/1 32/21 35/3
up [14]   8/23 10/7 14/21 19/24 21/24 31/8 31/11 31/19 32/11 32/21 37/13 41/7 43/7 43/12
up-the-line [1]   31/11
upcoming [1]   13/14
upon [6]   15/25 21/25 28/4 28/19 29/17 35/22
urge [1]   38/6
us [30]   2/4 2/7 2/10 4/11 6/3 16/5 16/9 18/17 18/19 19/8 19/14 19/16 20/8 21/18 23/6 23/18 24/22 24/24 25/9 25/20 26/5 26/13 27/23 28/9 29/3 29/4 38/12 38/13 40/23 44/1
use [4]   19/24 21/21 24/9 38/4
used [1]   4/23
using [2]   2/23 20/1
usually [1]   4/4

## V

vacate [1]   7/2
various [2]   4/20 5/17
veil [4]   16/3 28/3 28/10 29/7
veracity [1]   32/2
very [4]   4/7 5/25 11/10 17/7 17/9 17/10 17/22 29/22 30/20 32/5 32/19 34/5 34/17 40/24 44/11
vessels [2]   18/25 19/2
violated [1]   25/24
violating [1]   11/4 30/10
violation [1]   26/3
Virginia [1]   17/18
visit [1]   8/9
voluntarily [2]   19/14 44/1

## W

Wacker [1]   2/11
wait [1]   43/16
walk [3]   9/15 22/15 34/3
walked [1]   42/12
Walnut [1]   1/18
want [21]   15/3 20/12 20/14 20/20 20/25 20/25 21/1 21/16 26/13 28/16 29/10 31/24 32/12 33/2 33/18 37/10 38/18 38/23 39/20 40/15 44/7
wanted [7]   7/10 8/19 9/22 15/5 18/24 38/12 40/11 41/10
wants [2]   38/12 39/14
warranted [2]   17/2 31/16
was [62]
way [8]   6/16 9/23 12/6 20/19 25/24 30/16 34/7 43/25
we [174]
website [4]   5/24 6/7 10/4 12/14
week [8]   7/19 17/11 21/6 35/18 39/15 40/7 40/22 41/14
weeks [5]   35/16 37/8 37/18 38/14 39/2 39/19 40/18 40/24 43/8
WEINBERGER [2]   2/1 3/20
welcome [1]   15/14
well [12]   3/20 5/4 5/24 11/17 18/24 23/5 31/18 35/2 38/14 40/14 40/16 41/19
went [6]   7/15 18/23 19/21 20/5 20/6 31/25

were [37]   4/16 4/18 5/8 5/9 5/15 5/16 5/20 5/20 6/20 6/23 6/25 7/4 7/20 7/25 8/15 8/24 9/5 12/7 13/8 13/19 14/4 14/4 19/18 20/7 27/14 27/16 28/24 29/22 29/1 29/1 30/14 32/4 32/5 33/9 34/2 38/20 43/14
West [2]   1/22 2/17
what [38]   6/14 7/18 7/25 7/25 8/15 9/14 11/17 11/22 17/12 18/21 19/19 19/22 20/4 20/23 20/24 21/11 23/18 24/7 24/21 26/14 27/25 30/21 31/5 31/6 31/13 31/13 31/20 32/2 32/16 33/8 33/8 35/4 35/19 36/25 40/9 40/15 41/1 41/2
what's [3]   15/15 18/25 32/19
whatever [3]   23/19 42/5 44/7
when [18]   4/11 6/1 7/6 10/19 18/20 19/5 19/12 19/19 20/5 20/5 21/22 22/1 31/25 32/8 33/25 37/19 38/10 42/9
where [13]   17/12 17/24 19/14 20/15 21/1 21/22 21/23 24/23 25/1 27/20 31/1 42/2 43/8
whether [19]   6/13 12/17 15/10 19/25 25/22 25/23 28/25 29/14 32/2 35/11 35/12 35/22 36/7 36/7 36/18 37/12 42/3 42/4 42/4
which [22]   5/1 5/2 5/16 5/22 10/10 13/19 14/14 14/23 15/12 15/19 17/16 18/6 19/11 24/8 25/6 26/15 28/22 31/16 31/16 33/1 34/24 39/5
while [2]   34/11 35/13
whispered [1]   32/17
who [15]   3/24 5/8 5/24 12/3 15/15 18/21 21/18 26/17 29/23 33/14 33/18 34/13 37/10 37/14 39/17
who's [2]   15/16 15/16
wholly [1]   4/17
whom [3]   16/7 16/8 16/8
why [2]   18/24 34/16
will [50]
willing [4]   24/7 37/3 38/25 43/24
willingly [2]   36/1 36/15
willingness [1]   37/15
Wiltz [5]   5/16 15/2
windows [1]   8/7
wire [2]   15/5 17/2
wires [3]   5/2 5/3 5/5
wish [1]   43/23
within [3]   21/3 35/18 40/18
without [2]   8/7 39/9
witnesses [5]   7/16 7/17 8/14 8/14 44/1
Wizard [1]   21/21
WL [1]   14/11
wonder [1]   32/16
wood [1]   20/6
wood/timber [1]   20/6
word [3]   13/3 16/18 19/24
work [7]   10/14 18/23 22/19 23/13 23/20 31/5 43/24
worked [2]   8/7 17/10
working [5]   10/14 22/18 23/2 31/4 43/6
world [1]   5/4
would [23]   8/4 8/12 8/18 12/5 13/17 15/10 15/10 17/4 18/2 19/6 19/15 21/24 22/24 23/3 23/18 25/16 25/25 26/4 28/16 30/4 39/2 40/8 41/14
written [1]   8/18
wrote [4]   8/17 8/20 8/25 16/11

## Y

years [14]   16/6 17/6 17/15 18/14 18/18 20/15 20/20 30/14 31/1 31/7 32/11 33/19 33/20 42/13
Yes [3]   16/11 38/9 43/18

**Y**

York [4]  2/5 2/5 2/17 2/17
you [50]
you're [1]  37/2
your [94]
Your Honor [65]
Your Honor's [10]  14/10 15/24 16/10
 21/3 27/9 28/5 28/18 28/21 28/23 29/6