**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: *ALL CASES* | |

**MEMORANDUM IN SUPPORT OF JOINT EMERGENCY MOTION FOR PROTECTIVE ORDER BY BEIJING NEW BUILDING MATERIALS PUBLIC LIMITED COMPANY AND BEIJING NEW BUILDING MATERIAL (GROUP) CO., LTD.**

On March 19, 2015, the Plaintiffs' Steering Committee ("PSC" or "Plaintiffs") issued

Beijing New Building Materials Public Limited Company ("BNBM PLC") and Beijing New

Building Material (Group) Co., Ltd. ("BNBM Group," collectively "BNBM Entities") Notices of

Expedited Oral and Videotaped Deposition Pursuant to the Court's Directive During the March 17,

2015 Special Hearing and Minute Entry and Order [Rec. Docs. 18498, 18499] (the "Original

Notices"), attached hereto as **Exhibit A** and **Exhibit B**.  Since that time, and despite filed objections

to the Original Notices,[1] the BNBM Entities have been actively working around the clock on two

---

[1] The BNBM Entities previously filed objections to the PSC's Original Requests.  Those Objections are still pending, and apply equally to the Amended Notices.  This Motion, however, is not intended to address the more routine objections set forth in those filings, as some may become moot and there has to date been no meet and confer on those objections.  This motion is intended to and does address the improper imposition of the "Amended Notices" midway into the discovery process, and the prejudicial impact of those Notices in their entirety.  The BNBM Entities reserve the right to file additional, more specific objections to the Amended Notices should the Court determine in whole or in part that a protective order with respect to the Amended Notices is not warranted.

continents to expedite production of discovery in accordance with the March 17 Order, the Original Notices, and the discovery deadline of April 28, 2015.  The BNBM Entities' attorneys have also regularly apprised PSC attorneys on their progress.

Now, two days after filing its Emergency Motion to Compel Discovery Against BNBM PLC and BNBM Group [Rec. Doc. 18609] seeking compliance with the Original Notices, and just two and a half weeks before the discovery deadline, the PSC—without any prior notice or consultation—has served the BNBM Entities with vastly expanded Amended and Supplemental Notices of Expedited Oral and Videotaped Deposition Pursuant to the Court's Directive During the March 17, 2015 Special Hearing and Minute Entry and Order [Rec. Docs. 18643, 18644] (the "Amended Notices"), attached hereto as **Exhibit C** and **Exhibit D**.

We attach hereto as **Exhibits E** and **F** redlined versions showing the changes between the Original and Amended Notices, and the extensive changes could not be more readily apparent. Although the PSC claims that these Amended Notices are intended to "streamline and further expedite discovery" [Amended Notices at 2], the Amended Notices on their face and in substance do no such thing.  Instead, they add onerous new requests and designations that make it virtually impossible for the BNBM Entities to comply within the allotted time.  Among other things, the Amended Notices go well beyond the information previously sought regarding the BNBM Entities and Taishan Gypsum, Ltd. ("Taishan"), and now want information regarding 66 entities and 110 individuals, **including complete copies of their hard drives and personnel files**.

These Amended Notices are beyond the scope of this Court's order and are overly broad, unduly burdensome, and seek information that is neither relevant nor reasonably calculated to lead to

the discovery of admissible evidence and is privileged.  Beyond that, the Amended Notices are highly

prejudicial.  The BNBM Entities have been working night and day to diligently respond to the

Original Notices.  The Amended Notices represent an extraordinary departure from those original

requests, imposing undue burdens on the BNBM Entities and frustrating the BNBM Entities'

considerable efforts at compliance.  Indeed, they would impose daunting burdens even if discovery

were on a six to nine month timeline.

Moreover, the extensive revisions to (and in many cases, wholesale rewriting of) the

Original Notices demonstrates that the PSC's submission of revised discovery requests, without prior

notice to the BNBM Entities, was not a spur-of-the moment decision.  It was clearly calculated and

timed for maximum prejudicial effect.

Rule 26(c)(1) authorizes the Court to issue an order to protect a party or person from

annoyance, oppression, or undue expense in connection with discovery.  The BNBM Entities move

this Court for a protective order quashing the Amended Notices and permitting discovery only of

non-privileged information relevant to the current issue in this case—the alleged alter ego

relationship between BNBM PLC, BNBM Group, and Taishan.

## REASSERTION OF PERSONAL JURISDICTION DEFENSE

On March 4, 2015, the BNBM Entities formally appeared in the above-captioned actions,

through Notices of Appearance that specifically raised and preserved defenses relating to, *inter alia*,

lack of personal jurisdiction.  As the BNBM Entities have done with each prior submission, they raise

the issue of personal jurisdiction at the outset of this Emergency Motion for Protective Order both to

3

preserve the BNBM Entities' legal rights to assert this fundamental defense, and also because the

absence of personal jurisdiction vitiates the need for the broad-scale discovery Plaintiffs are seeking.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 17, 2015, the Court held a special hearing in this case and, in response to Plaintiffs'

counsel Mr. Levin's representation that he "may require discovery just as to alter ego" (Transcript

3/17/15, 18:9-8), permitted the PSC to take limited discovery on whether the BNBM Entities "are

affiliates or whether they are alter egos of TG or TTP."  (Transcript 3/17/15: 36:4-8).  Mr. Levin

stated that he would deliver to defendants an "abbreviated" list of documents that Plaintiffs' would

require (Transcript 3/17/15, 40:17-22).

The Court also issued a minute order granting certain alter ego discovery:

IT IS FURTHER ORDERED THAT the parties shall immediately commence
discovery related to the relationship between Taishan and BNBM/CNBM,
including whether affiliate and/or alter ego status exists. . . .
IT IS FURTHER ORDERED THAT Taishan and BNBM/CNBM SHALL
participate in alter ego discovery.

Minute Order, March 18, 2015 [Rec. Doc. 18493].  The Court ordered that alter ego discovery would

conclude six weeks later on April 28, 2015.  *Id.*

On the afternoon of March 19, 2015, the PSC issued BNBM PLC and BNBM Group the

Original Notices.  Contrary to counsel's representations to the Court and defendants, those Original

Notices themselves were hardly "abbreviated."  Among other things, they sought documents and

information covering a 14-year period relating to at least 40 separate entities.  They also sought

discovery with respect to 9 separate law firms and 79 different attorneys regarding retention of

counsel in this lawsuit.  Some of the identified attorneys represent the BNBM Entities in this action

and some represent other defendants.  The Court has already ruled that such discovery requests are improper.  [Rec. Doc. 18196 at 6]

Notwithstanding the PSC's overly broad requests, BNBM PLC and BNBM Group have endeavored to immediately and fully comply with the Court's limited discovery order and to produce all relevant non-privileged information.  Counsel for the BNBM Entities, Dentons U.S. L.L.P. ("Dentons"), immediately communicated the Court's ruling to the BNBM Entities, had the Court's order and transcript of the hearing translated into Mandarin, and began working with BNBM PLC and BNBM Group to prepare to respond to discovery.  Dentons attorneys, from Shanghai and the United States, immediately travelled to Beijing to begin working with the BNBM Entities to identify and collect relevant documents and to identify and arrange for deponents to travel to the United States and prepare to testify on the topics designated by the PSC.  Since March 21, 2015, a team of multiple Dentons attorneys from both China and the United States have been continually working, including on holidays and weekends, with the BNBM Entities to respond to the PSC's discovery requests.

Since receiving the PSC's original document requests, the BNBM Entities have already identified and gathered over 4,000 pages of responsive hardcopy documents, which are in the process of being screened in compliance with the People's Republic of China's ("PRC") state secrecy laws and translated from Mandarin to English.  The BNBM Entities have produced over 1,000 pages of such documents [*See* April 10, 2015 Letter of Meagan E. Dyer, attached hereto as **Exhibit G**] and anticipate producing thousands of additional pages of translated documents by this week.  The

BNBM Entities are also continuing to work to gather and translate all remaining relevant and responsive, non-privileged hardcopy documents in their control.

The manual translation of documents from Mandarin to English is expensive and time consuming.  The BNBM Entities initially retained a translation company to translate the voluminous hardcopy documents responsive to the Original Notices on a rolling basis.  The translation company has provided a team of ten translators, who are working shifts to ensure translation is occurring 24 hours a day, seven days a week.  Notwithstanding those efforts, given the Court's deadline, the amount of documents needing translation, and the BNBM Entities' attempts to accommodate the PSC's request for production of translated documents,[2] the BNBM Entities have now also retained a second company to assist in translating documents to produce to the PSC.

In addition to the collection and production of hardcopy documents, the BNBM Entities have simultaneously been engaged in the process necessary to collect, review, and produce electronic documents responsive to the Original Notices.  To effectuate that process, the BNBM Entities have engaged an e-discovery vendor with substantial experience in performing e-discovery in China and expertise in PRC state secrecy laws.  Once collected and reviewed, electronic documents determined to be responsive and non-privileged must also be translated prior to production to the PSC.  The BNBM Entities are, however, willing to provide responsive and non-privileged Chinese language documents to the PSC while the translation process is underway, to the extent that PSC thinks it can translate the documents more quickly.

---

[2] The BNBM Entities reserve the right to utilize machine translation.  However, they do not concede that manual translation was required by the Court's order.  The BNBM Entities utilized manual translation solely for purposes of attempting to expedite the production of documents to the PSC while other processes were established.

In addition to responding to the extensive requests for production, the BNBM Entities are taking all necessary steps to arrange for the noticed deponents and representatives to obtain travel visas and passports in order to attend depositions in the United States.  Specifically, BNBM Group has confirmed that its 30(b)(6) witness is Mr. Yanming Zhao, and BNBM PLC's 30(b)(6) witness is Mr. Yu Chen.  These individuals will be prepared to give deposition testimony in the United States.

Dentons has kept the PSC's attorneys apprised of the above developments and advised them about the challenges involved in the production and how such concerns were being mitigated or resolved.  Dentons met and conferred with the PSC on March 20, 2015.  On March 26, 2015, at a status hearing, the BNBM Entities, along with the other defendants, informed the Court and the PSC that they were diligently pursuing efforts to respond to the discovery propounded by the PSC, even though the discovery was overbroad and, in some instances, clearly objectionable.  Further, on April 2, 2015, BNBM Entities' counsel further advised the PSC on the progress made to date, addressed issues regarding depositions and translation of documents and other logistical issues.  *See* April 2, 2015 Email of C. Michael Moore, attached hereto as **Exhibit H**.  On April 4 and April 9, 2015 the BNBM Entities' counsel provided additional updates, including identification of 30(b)(6) witnesses.  *See* April 4, 2015 Email of C. Michael Moore, attached hereto as **Exhibit I;** April 9, 2015 Email of C. Michael Moore, attached hereto as **Exhibit J**.

Despite the BNBM Entities' diligent efforts, on April 7, 2015, just two days before serving the Amended Notices, the PSC filed its Emergency Motion to Compel Discovery Against BNBM PLC and BNBM Group [Rec. Doc. 18609].  The conclusion that the Amended Notices were already drafted, or being drafted when the Motion to Compel was filed, is virtually inescapable.  One must

seriously question whether the PSC's spate of discovery motions, without even an attempt to confer, followed almost immediately by amended requests that have virtually no limits, are legitimate efforts to gather facts, or whether they are interposed for an "improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11.

At no time during the course of communications regarding the BNBM Entities' compliance with the Original Notices did PSC's counsel mention that those Original Notices were going to be supplanted with Amended Notices that were far more extensive and onerous. Indeed, the only response from the PSC has been to file almost daily "emergency" discovery motions—none of which complied with the meet and confer requirements of Rule 37, and all of which have distracted the parties from the ongoing discovery at hand. [*See, e.g.*, Rec. Docs. 18575, 18609, 18628]

Then, at the close of business on April 9, 2015, the PSC served their Amended Notices. The redlined versions of the Amended Notices on their face show that the PSC's new requests are far from "streamlined." Indeed, the Amended Notices add further requirements to each request and deposition topic, including requiring information on not only Taishan but each entity and individual listed in its new attached exhibits, which lists **66 entities** (28 more than previously listed) and over **110 new individuals**, including complete copies of their hard drives and personnel files. (Document Request 11.). The Amended Notices also purport to add the following new requests and topics:

- Documents "compiled, drafted, edited, provided, submitted to or received" from the listed entities regarding any "Annual Report, Interim Annual Report, or Public Offering," for the past ten years, with five subparts (Document Request 24);

- Documents "compiled, drafted, edited, provided, submitted to or received from" the listed entities regarding "any public announcement, voluntary announcement or press release," for the past ten years, with five subparts (Document Request 25);

- Documents evidencing which entity or individual listed was involved in strategy, participation, withdrawal and/or decision-making regarding the instant litigation (Document Request 26);

- Documents on by-laws, company laws, articles of incorporation, articles of association, and minutes from shareholder, board, supervisor or committee meetings (Document Request 27);

- Documents on "any procedure, policy, plan, method, process, criteria, or management style which you have" used at the "request, direction and/or requirement of any company" listed in its exhibits, including communication on the same with the listed individuals (Document Request 28);

- Any service vendors, inter-company departments, and or personnel shared with the listed companies (Deposition Topic 3);

- Any loans, pledges, stock transfers, supply of assets, and guarantees shared with the listed companies (Deposition Topic 4);

- Capitalization of the BNBM Entities and any of the listed companies (Deposition Topic 5);

- The vertical and horizontal corporate organizational structure between the BNBM Entities and the listed companies  (Deposition Topic 6);

- Salary and wages, among others, from the BNBM Entities to any individual listed (Deposition Topic 7);

- Investment dealings with "United States Banks" which the BNBM Entities and any person or company listed conducted (Deposition Topic 8);

- Co-leasing or co-owning of property with any company listed (Deposition Topic 9);

- "All documents . . you have provided to or have received from [the companies listed] in connection with any internal or external corporate or company requirement" (Deposition Topic 10);

- Personnel records of individuals listed (Deposition Topic 11);

- "The rendition of services performed by employees of other corporate entities and/or any person. . . or any company listed"  (Deposition Topic 12);

- Any buildings, facilities, and or other physical locations used by the BNBM Entities and the companies listed (Deposition Topic 13);

- Accounting departments of the companies listed (Deposition Topic 14);

- Sales transfers or exchanges of any assets with the companies listed (Deposition Topic 15);

- Profits and losses shared with the companies listed (Deposition Topic 16);

- Joint or cooperative projects, ventures, or other business opportunities with the companies listed (Deposition Topic 17); and

- Information on mines, including the Luneng mine, to procure raw materials by the BNBM Entities or any of the listed companies (Deposition Topic 18).

## ARGUMENT

The PSC's surprise unveiling of its extensive Amended Notices halfway into the discovery process cannot possibly be viewed as "streamlining" or "expediting" anything. For the past three weeks, the BNBM Entities have been working around the clock in responding to the Original Notices, which in themselves are overbroad in requesting discovery beyond just alter ego. With the PSC's full knowledge, the BNBM Entities have been identifying and interviewing custodians, gathering documents, arranging for expedited translations and state secrecy reviews, all in response to the PSC's Original Notices and under this Court's April 28, 2015 discovery deadline. With less than three weeks to go, the PSC has now abruptly shifted course and is demanding that the BNBM Entities provide information and testimony not only with respect to the Taishan and BNBM Entities, but *66 entities* and over *110 individuals, as well as complete copies of the hard drives of any computers utilized by any of these individuals and their personnel files and employment records*. As

evidenced above, this vastly expanded list of entities and individuals has been coupled with an equally vast laundry list of new topics and subject matters.

Federal Rule of Civil Procedure 26(c) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ."  Although parties are entitled to discovery of information "reasonably calculated to lead to the discovery of admissible evidence," discovery is not unlimited and "[a]ll discovery is subject to the limitations imposed by Rule 26(b)(2)(C)."  Fed. R. Civ. P. 26(b)(1).  *See also Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) ("Rule 26(b) 'has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition.'") (quoting *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010).)

At the very best, the PSC's Amended Notices are an attempt to significantly expand the scope of the limited and expedited discovery that the PSC originally sought and that the Court ordered.  At worst, they are a deliberate attempt to harass the defendants (similar requests were served on the Taishan and CNBM entities), disrupt their diligent efforts to comply, and make it virtually impossible to conduct the litigation—much less expedited proceedings with potentially grave consequences—in any kind of orderly manner.  Either way, the discovery is improper, and a protective order is warranted.

**CONCLUSION**

BNBM PLC and BNBM Group respectfully request that the Court enter a protective order quashing the Amended Notices, and providing such other relief as the Court deems just and proper.

Dated:  April 14, 2015

Respectfully submitted

**DENTONS US LLP**

By: */s/ Michael H. Barr*
Michael H. Barr
New York Bar No. 1744242
Justin N. Kattan
New York Bar No. 3983905
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
michael.barr@dentons.com
justin.kattan@dentons.com
                              -
  AND -

Richard L. Fenton
Illinois Bar No. 3121699
Leah R. Bruno
Illinois Bar No. 6269469
233 South Wacker Drive
Suite 7800
Chicago, IL  60606-6306
Telephone:  (312) 876-8000
Facsimile:  (312) 876-7934
richard.fenton@dentons.com
leah.bruno@dentons.com

C. Michael Moore
Texas Bar No. 14323600
Gene R. Besen
Texas Bar No. 24045491
2000 McKinney Ave, Suite 1900
Dallas, TX  75201
Telephone:  (214) 259-0900
Facsimile:  (214) 259-0910
mike.moore@dentons.com
gene.besen@dentons.com

**- AND -**

**PHELPS DUNBAR LLP**

Harry Rosenberg
Louisiana Bar No. 11465
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130
harry.rosenberg@phelps.com

*Attorneys for Beijing New Building Materials*
*Public Limited Company and Beijing New*
*Building Material (Group) Co., Ltd.*

13

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing **MEMORANDUM IN SUPPORT OF JOINT EMERGENCY MOTION FOR PROTECTIVE ORDER BY BEIJING NEW BUILDING MATERIALS PUBLIC LIMITED COMPANY AND BEIJING NEW BUILDING MATERIAL (GROUP) CO., LTD**. has been served on Plaintiffs' Liaison Counsel, Leonard Davis, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 14th day of April, 2015.

_/s/        Michael H. Barr_

14