**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: *ALL CASES* | |

**RESPONSE IN OPPOSITION TO PSC'S EMERGENCY**
**MOTION TO COMPEL DISCOVERY**

Beijing New Building Materials Public Limited Company ("BNBM PLC") and Beijing

New Building Material (Group) Co., Ltd. ("BNBM Group," together the "BNBM Entities")

respectfully submit this Response in Opposition to the Plaintiffs' Steering Committee's ("PSC")

Emergency Motion to Compel Discovery Against, among others, BNBM PLC and BNBM

Group [Rec. Doc. 18609].  In its Motion, which it filed without holding a meet and confer

conference required by Local Rule 10.1, the PSC requests that the Court compel the BNBM

Entities to provide discovery on an "expedited basis."  However, as the PSC has been made

aware during several communications, the BNBM Entities have already agreed to and are

actively working around the clock to expedite production of discovery in accordance with the

Court's order and deadline of April 28, 2015.  Since the Court's hearing on March 17, 2015, the

BNBM Entities' attorneys have kept the PSC's attorneys apprised of their progress and advised

them about the challenges involved in the production and how such concerns were being

mitigated or resolved.  Given the intensive effort already being put forth by the BNBM Entities

to comply with the ordered discovery, the PSC's Motion is unwarranted and premature.

Notably, the PSC has not identified any actions that it contends the BNBM Entities are refusing

to take or pursue in attempting to respond to the PSC's discovery.  Moreover, the BNBM Entities

1

are endeavoring to respond to discovery that is overly broad and irrelevant to the limited

discovery the Court ordered on the allegations that the BNBM Entities are "alter egos" of

Taishan Gypsum Co., Ltd. ("Taishan").  For the reasons set forth below, the Motion should be

denied.

## REASSERTION OF PERSONAL JURISDICTION DEFENSE

On March 4, 2015, the BNBM Entities formally appeared in the above-captioned actions,

through Notices of Appearance that specifically raised and preserved defenses relating to, *inter

alia*, lack of personal jurisdiction.  As the BNBM Entities have done with each prior submission,

they raise the issue of personal jurisdiction at the outset of this Response in Opposition to the

Plaintiffs' Steering Committee's Emergency Motion to Compel Discovery both to preserve the

BNBM Entities' legal rights to assert this fundamental defense, and also because the absence of

personal jurisdiction vitiates the need for the broad-scale discovery Plaintiffs are seeking.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 17, 2015, the Court held a special hearing in this case and, in response to

Plaintiffs' counsel Mr. Levin's representation that he "may require discovery just as to alter

ego," (Transcript 3/17/15, 18:9-8), permitted the PSC to take limited discovery on whether the

BNBM Entities "are affiliates or whether they are alter egos of TG or TTP."  (Transcript

3/17/15: 36:4-8).  Mr. Levin stated that he would deliver to defendants an "abbreviated" list of

documents that Plaintiffs' would require (Transcript 3/17/15, 40:17-22).

The Court also issued a minute order granting certain alter ego discovery:

IT IS FURTHER ORDERED THAT the parties shall immediately commence
discovery related to the relationship between Taishan and BNBM/CNBM,
including whether affiliate and/or alter ego status exists. . . .
IT IS FURTHER ORDERED THAT Taishan and BNBM/CNBM SHALL
participate in alter ego discovery.

Minute Order, March 18, 2015 [Rec. Doc. 18493].  The Court ordered that any witnesses noticed by the PSC would need to be produced in New Orleans, Louisiana for deposition and that all documents produced by Defendants in response to any discovery propounded by the PSC would have to be translated by defendants from Mandarin into English prior to production.  *Id.*  The Court further ordered that alter ego discovery would conclude on April 28, 2015.  The Court made no ruling that discovery could not be on a rolling basis or that documents must be produced before any scheduled depositions.  *Id.*

On the afternoon of March 19, 2015, the PSC issued BNBM PLC and BNBM Group Notices of Expedited Oral and Videotaped Deposition Pursuant to the Court's Directive During the March 17, 2015 Special Hearing and Minute Entry and Order [Rec. Docs. 18498, 18499] (the "Notices").  Rather than the abbreviated, narrow discovery described by the PSC's attorney at the hearing, the Notices included document requests that were patently overbroad, irrelevant, and privileged.  The requests purport to seek documents and information covering a 14-year period relating to at least forty separate entities.  Also, the deposition and document requests seek all communications with nine separate law firms and 79 separate attorneys regarding retention of counsel in this lawsuit.  Some of the attorneys identified represent the BNBM Entities in this action and some represent other defendants.  (Document Request No. 23; Deposition Topic No. 4).  The Court has already ruled that such discovery requests are improper.  [Rec. Doc. 18196 at 6].  In short, these requests are far from the "abbreviated" discovery the PSC's attorney represented to the Court that it required.

Notwithstanding the PSC's overly broad requests, BNBM PLC and BNBM Group have endeavored to immediately and fully comply with the Court's limited discovery order and to produce all relevant non-privileged information.  Counsel for the BNBM Entities, Dentons U.S.

L.L.P. ("Dentons"), immediately communicated the Court's ruling to the BNBM Entities, had the Court's order and transcript of the hearing translated into Mandarin, and began working with BNBM PLC and BNBM Group to prepare to respond to discovery.  Dentons attorneys, from Shanghai and the United States, immediately travelled to Beijing to begin working with the BNBM Entities to identify and collect relevant documents and to identify and arrange for deponents to travel to the United States and prepare to testify on the topics designated by the PSC.  Since March 21, 2015, a team of multiple Dentons attorneys from both China and the United States have been continually working, including on workdays and weekends, with the BNBM Entities to respond to the PSC's discovery requests.

Since receiving the PSC's original document requests, the BNBM Entities have already identified and gathered over 4,000 pages of responsive hard copy documents, which are in the process of being screened in compliance with the People's Republic of China's ("PRC") state secrecy laws and translated from Mandarin to English.  The BNBM Entities have produced over 1,000 pages of such documents [*See* April 10, 2015 Letter of Meagan E. Dyer, attached hereto as **Exhibit A**] and anticipate producing around 1,800 more pages of translated documents by April 12.  The BNBM Entities are also continuing to work to gather and translate all remaining relevant and responsive, non-privileged hard copy documents in their control.

The manual translation of documents from Mandarin to English is expensive and time consuming. The BNBM Entities initially retained a translation company to translate the voluminous hard copy documents responsive to the Notices on a rolling basis.    The translation company has provided a team of ten translators,  who are working shifts to ensure translation is occurring 24 hours a day, seven days a week.  Notwithstanding those efforts, given the Court's deadline, the amount of documents needing translation, and the BNBM Entities' attempts to

accommodate the PSC's request for production of translated documents,  the BNBM Entities have now also retained a second company to assist in translating documents to produce to the PSC.

In addition to the collection and production of hard copy documents, the BNBM Entities have simultaneously been engaged in the process necessary to collect, review, and produce electronic documents responsive to the Notices. To effectuate that process, the BNBM Entities have engaged an e-discovery vendor with substantial experience in performing e-discovery in China and expertise in PRC state secrecy laws. Once collected and review, electronic documents determined to be responsive and non-privileged must also be translated prior to production to PSC.  The BNBM Entities are, however, willing to provide responsive and non-privileged Chinese language documents to the PSC while the translation process is underway, to the extent that PSC thinks it can translate the documents more quickly.

In addition to responding to the extensive requests for production, the BNBM Entities are taking all necessary steps to arrange for the noticed deponents and representatives to obtain travel visas and passports in order to attend depositions in the United States.  Specifically, BNBM Group has confirmed that its 30(b)(6) witness is Mr. Yanming Zhao, and BNBM PLC's 30(b)(6) witness is Mr. Yu Chen.  These individuals will be prepared to give deposition testimony in the United States.

The BNBM Entities' attorneys have kept the PSC's attorneys apprised of their progress and advised them about the challenges involved in the production and how such concerns were being mitigated or resolved.  Dentons attorneys participated in an initial meet and confer with the PSC on March 20, 2015.  On March 26, 2015, at a status hearing, the BNBM Entities along with the other defendants, informed the Court and the PSC that they were diligently pursuing efforts

to respond to the discovery propounded by the PSC, even though the discovery was over broad and, in some instances, clearly objectionable.  Further, on April 2, 2015, the BNBM Entities' attorney, Michael Moore, spoke with the PSC's counsel to advise them that the BNBM Entities were diligently working to respond to the discovery propounded by the PSC, bring them up to date on the progress made to date, and address the issues the BNBM Entities were trying to work through regarding depositions and translation of documents.  Mr. Moore followed up with an email summarizing the logistical challenges for the foreign defendants in obtaining visas, translations, and other issues unique to obtaining this expedited discovery from Chinese companies, but confirming that the BNBM Entities' efforts were intense and ongoing.  *See* April 2, 2015 Email of C. Michael Moore, attached hereto as **Exhibit B**.  As a courtesy to the PSC, Mr. Moore promised to start a rolling production of translated documents, several weeks before the Court's deadline.  *Id.*  In an effort to save time and to focus collection and translation efforts on the discovery most relevant to the PSC, Mr. Moore requested that the PSC provide a list of documents they already had translated and in its possession. *Id.*  The PSC never responded to Mr. Moore's request.  Mr. Moore also promised to keep the PSC apprised of the status of any production.  *Id.*

On April 4, 2015, Mr. Moore provided an update on the BNBM Entities' on-going and continuous efforts—noting the retention of experienced vendors for e-discovery and the efforts to secure the appropriate Chinese state secrecy law review to expedite the production process. Mr. Moore also confirmed that an initial production was in the process of being translated, with an expected delivery date the end of that same week.  *See* April 4, 2015 Email of C. Michael Moore, attached hereto as **Exhibit C**.  Such rolling production was intended to be a courtesy to the PSC.  On April 4 and April 9, 2015, the BNBM Entities' counsel provided additional updates,

including identification of 30(b)(6) witnesses.  *See* April 4, 2015 Email of C. Michael Moore, attached hereto as **Exhibit C**.  ; April 9, 2015 Email of C. Michael Moore, attached hereto as **Exhibit D**.

Despite the BNBM Entities repeated assurances to the PSC that they was doing everything they could to produce documents and witnesses in compliance with the Court's Order, the PSC has elected to file its Emergency Motion to Compel—without notice to or consultation with the BNBM Entities—and fails to meaningfully acknowledge or address the extraordinary efforts being expended by the BNBM Entities.  Then, at the close of business on April 9, 2015, PSC served their Amended Notices.   The Amended Notices add further requirements to each request and deposition topic, including requiring information on not only Taishan but each entity and individual listed in their new attached exhibits, which lists 66 entities (28 more than previously listed) and over 110 new individuals, including complete copies of their hard drives and personnel files. (Document Request 11).  Today, the BNBM Entities have also moved for a protective order regarding these Amended Notices.  [Rec. Doc. 18681].

## ARGUMENT

### A.    An Order Compelling the BNBM Entities to Produce Witnesses and Documents is Unnecessary.

The PSC's Motion is needless, premature, and serves to divert the BNBM Entities from their intensive efforts to comply with the Court's discovery order.  The PSC seeks the Court to order the BNBM Entities to do exactly what they have been spending every day since March 19 diligently working toward.  The BNBM Entities are already working as expeditiously as possible to respond to the PSC's discovery and have repeatedly informed PSC of that fact.

Notably, the PSC filed this Motion before attempting to resolve or narrow the discovery disputes or to respond to Mr. Moore's request for a list of translated documents already in its

possession.  The PSC has not identified any information that Mr. Moore was unwilling to provide nor has it identified in what way the BNBM Entities' current intense efforts are deficient. Moreover, certain of its demands are unreasonable as issues, like the obtaining of visas or travel permission from the Chinese government, are out of the control of either the BNBM Entities or their attorneys.  Finally, the PSC's urgency for documents and witnesses is belied by the overbroad, unduly burdensome, and privileged nature of its own requests, especially when the PSC's attorney promised to provide an "abbreviated" list of documents it required.

In any event, an order compelling the BNBM Entities to produce witnesses in Louisiana or to produce relevant non-privileged documents on an "expedited basis" is not necessary, as the BNBM Entities are already taking all steps within their power to do so and have so advised the PSC.  *See* Exhibits B - E.  Therefore, the Court should deny this Motion as premature and unwarranted.

### B.   The Notices Seek Privileged Information and the Crime-Fraud Exception Does Not Apply to BNBM PLC and BNBM Group.

The Notices also seek information protected as privileged by the attorney-client and work product doctrine.  "The oldest of the privileges for confidential communications, the attorney-client privilege protects communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice."  *Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S.*, 768 F.2d 719, 720 (5th Cir. 1985).[1]

Here, several of the Deposition Topics and Document Requests seek such privileged information.  For example, Document Requests 19, 20, and 23 ask BNBM PLC and BNBM Group to disclose any communications and documents (including privileged communications

---

[1] Federal courts in Louisiana have held that federal common law and Louisiana statutory law are materially similar concerning the attorney-client privilege.  *Soriano v. Treasure Chest Casino, Inc.*, No. 95-cv-3945, 1996 WL 736962, at *2 (E.D.La. Dec.23, 1996) (federal common law and Louisiana law of privilege are substantially similar).

and documents) related to any legal proceeding in the United States (19), any legal proceeding outside the United States (20), and any communications with counsel related to defense of this case (23). In Document Request 23, Plaintiffs ask for all communications involving retention of counsel for this litigation and then proceeds to specifically list 69 "law firm employees," whose communications would necessarily be privileged. Deposition Topics 4 and 5 similarly seek information related to defense of this litigation (4) and information related to any legal proceeding outside the United States (5).

BNBM PLC and BNBM Group are mindful that this Court found a limited privilege waiver under the crime-fraud exception for Taishan's communications with its counsel regarding any direction or decision not to appear at the July 17, 2014 Judgment Debtor Examination. In that decision, however, the Court also ruled that the PSC's request for documents concerning Taishan's retention of legal counsel, nearly identical to that of Document Request 23 here, was overbroad and unenforceable. [Rec. Doc. 18196 at 6]. And Taishan has stated it already provided responsive documents, in redacted form, in response to Document Request 23. *See* Taishan Gypsum Co., Ltd.'s Response In Opposition To The PSC's Motion to Compel Discovery Against Taishan Gypsum Co., Ltd., at 6 [Rec. Doc. 18606]. So no further discovery on the issue of Taishan's attempted withdrawal in this litigation is necessary.

Finally, the limited waiver only applies to "Taishan's attempt to withdraw itself from this litigation," [Rec. Doc. 18196 at 6], not BNBM PLC and BNBM Group. Plaintiffs cannot bootstrap the reason for production of this privileged information by the circular assumption that BNBM PLC, BNBM Group, and Taishan are alter egos of each other, when that is the very issue being litigated in this discovery phase. To allow otherwise would result in an unwarranted

fishing expedition into attorney-client files, inevitably creating unnecessary and time-consuming litigation of privilege issues, which are not even relevant to the limited discovery of alter ego.

## **<u>CONCLUSION</u>**

For the reasons stated above, the PSC's Emergency Motion to Compel Discovery against BNBM PLC and BNBM Group should be denied.

Dated: April 14, 2015

Respectfully submitted

**DENTONS US LLP**

By: *_/s/ Michael H. Barr_*
Michael H. Barr
New York Bar No. 1744242
Justin N. Kattan
New York Bar No. 3983905
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
michael.barr@dentons.com
justin.kattan@dentons.com
-

AND -

Richard L. Fenton
Illinois Bar No. 3121699
Leah R. Bruno
Illinois Bar No. 6269469
233 South Wacker Drive
Suite 7800
Chicago, IL  60606-6306
Telephone:  (312) 876-8000
Facsimile:  (312) 876-7934
richard.fenton@dentons.com
leah.bruno@dentons.com

C. Michael Moore
Texas Bar No. 14323600
Gene R. Besen
Texas Bar No. 24045491
2000 McKinney Ave, Suite 1900
Dallas, TX  75201
Telephone:  (214) 259-0900
Facsimile:  (214) 259-0910
mike.moore@dentons.com
gene.besen@dentons.com

**- AND -**

11

PHELPS DUNBAR LLP

Harry Rosenberg
Louisiana Bar No. 11465
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130
harry.rosenberg@phelps.com

*Attorneys for Beijing New Building
Materials Public Limited Company and
Beijing New Building Material (Group)
Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **Response in Opposition to PSC's Emergency Motion to Compel** has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 14th day of April, 2015.

/s/      *Michael H. Barr*