IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 <br> SECTION: L <br> JUDGE FALLON <br> MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: <br> ALL ACTIONS | |

**PSC MEMORANDUM REGARDING EFFECTS OF DEFAULT
AND ISSUE PRECLUSION IN APRIL 28, 2015
CLASS-WIDE DAMAGES TRIAL**

**MAY IT PLEASE THE COURT:**

The PSC respectfully submits this memorandum regarding the legal effects and consequences of both default and issue preclusion in connection with the class-wide damages trial of April 28, 2015.

I. **Defaults have been entered against all Taishan defendants participating in the class-wide damages trial**

This class-wide damages trial follows the entry of defaults against each of the following Taishan defendants in the following class action cases:

1

|  | Taishan | TTP | BNBM | BNBM Group | CNBM Group | CNBM |
|---|---|---|---|---|---|---|
| *Germano* | X |  |  |  |  |  |
| *Wiltz* |  |  | X |  |  |  |
| *Gross* |  |  | X | X | X | X |
| *Amorin* (Virginia) | X | X |  | X | X | X |
| *Amorin* (Louisiana) | X | X |  |  |  | X |
| *Amorin* (Florida) | X | X |  |  |  |  |

*See* Rec. Doc. Nos. 487, 3013, 17814, 17815 (Taishan Defaults); *see also* Rec. Doc. Nos. 17814, 17815 (TTP defaults); Rec. Doc. Nos. 7302, 15687, 7735, 17815 (BNBM and BNBM Group defaults); Rec. Doc. Nos. 7302, 15687, 17814, 17815 (CNBM and CNBM Group defaults). The above chart appears in the Court's Findings of Fact and Conclusions of Law (FOFCOL) supporting certification of the plaintiff class on whose behalf class-wide damages will be assessed and quantified in this trial (*i.e.*, all owners of real property named as plaintiffs in the above class actions).[1]

The fact that each Taishan defendant has allowed itself to be placed, and to remain, in default pursuant to a deliberately, non-responsive strategy, long after the proper service of well-pled class action complaints, is of fundamental, threshold importance in framing the matters which are, and are not, at issue on April 28, 2015.

## II. The liability consequences of defaults entered under FRCP 55 are well-established

The legal concept of default dates from the 18th century English common law principle of equity whereby a "decree *pro confesso*" could be entered if a defendant, on being served with an

---

[1] *See* Rec. Doc. No. 18028), at p. 6 (Class Certification FOFCOL).

action, failed to appear or defend on a timely basis. *See Wright Miller, et al,* 10A Fed. Prac. & Proc. Civ. §2681 (3d ed).  It is not surprising that current federal practice should maintain the concept, as well as the consequences, of default.  The Federal Rules of Civil Procedure are "designed for the just, speedy and inexpensive disposition of cases on their merits…." *Sun Bank of Ocala v. Pelican Homestead & Saving Ass'n.,* 874 F.2d 274, 276 (5 Cir. 1989).  A defendant which fails to respond to an action effectively derails this process, and invites a process of accelerated litigation.

Under the Federal Equity Rules promulgated in 1822, the English common law decree *pro confesso* was therefore incorporated into our legal system, and, on the entry of such a decree, the defendant was absolutely barred from asserting anything in opposition to what had been properly alleged in the ignored action. *See Wright Miller, et al, supra.*  Today's FRCP 55, virtually unchanged since its enactment in 1938, likewise maintains this approach, and continues the time-tested, underlying policy of the default process, i.e., that it serve "as a deterrent to those parties resorting to delay as an element of their litigation strategy." *See id.*  The chief means by which this policy remains viable, of course, is the defaulted defendant's confession of liability.

FRCP 55 entails a two-step process:  First, under R. 55(a), the Clerk of Court is obliged to place a non-responsive defendant in default upon proof that the defendant has failed to "plead or otherwise defend" a properly-served action.  Second, under R. 55(b)(2), the Court is authorized to enter a default judgment after conducting a hearing to determine the amount of damages.  It is this evidentiary hearing (such as the one scheduled for April 28, 2015), which by design and definition is predicated on the liability of the defaulted defendant.  More precisely, a defendant which has been placed in default under R. 55(a) at the time of a R. 55(b)(2) damages trial, has confessed

3

liability pursuant to the well-pled allegations of the complaint which that defendant failed to answer.

The framework by which fault is deemed admitted in a R. 55(b) trial of damages is one necessitated in every case governed by the FRCP, and one specifically recognized in the jurisprudence of both the Fifth Circuit and the Eastern District of Louisiana. *See e.g., Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *Plumbers & Steamfitters Local 106 Health & Welfare Fund v. Ace Plumbing & Heating, Inc.*, No. 2:09-cv-1940, 2011 WL 1831750, at *1(W.D. La. May 11, 2011). The jurisprudence of the U.S. Supreme Court, dating from the 19th century, likewise mandates that a defendant which fails to set aside the entry of a default is thereafter barred from contesting any and all facts established by that default. *Ohio Central Railroad Company v. Central Trust Company of New York,* 133 U.S. 83, 10 S.Ct. 235, 33 L.Ed. 561 (1889).

The class action allegations which the Taishan defendants have failed to answer, are both well-pled and specific as to the nature and extent of these defendants' liability to plaintiffs. The defaulted defendant Taishan Gypsum, as the manufacturer-seller of defective Chinese drywall, is thus now deemed liable both under the product liability laws of the states at issue in these proceedings, and also under the redhibition law of Louisiana as to plaintiffs whose claims are governed by the law of this State.[2] The defaulted parent entities of Taishan Gypsum, defendants

---

[2] *See Germano v. Taishan Gypsum Co., Ltd, et al*, Case No. 09-06687 (E.D. Va.), Rec. Doc. No. 1-2, p. 3 at ¶¶ 10-11; p. 4 at ¶ 19; pp. 5-6 at ¶¶ 20-28; pp. 10-11 at ¶¶ 42-47 (Count 1: Negligence); pp. 11-12 at ¶¶ 49-53 (Count II: Negligence Per Se); pp. 12-13 at ¶¶ 55-61 (Count III: Breach of Express and/or Implied Warranties); p. 14 at ¶¶ 67-72 (Count V: Private Nuisance); p. 15 at ¶¶ 74-46 (Count VI: Unjust Enrichment); and pp. 15-17 at ¶¶ 78-84 (Count VII: Violation of the Virginia Consumer Protection Act); *see also Gross, et al. v. Knauf Gips, KG, et al*., Case No. 09-6690 (E.D. La.) Rec. Doc. No. 1 (Class Complaint), p. 5 at ¶¶ 4-8; p. 6 at ¶¶ 11-14; pp. 11-12 at ¶¶ 33-34; p. 16 at ¶¶ 71-72; pp. p. 22 at ¶¶ 107-108; pp. 22-24 at ¶¶ 112-117 (Facts Giving Rise to Industry Wide Alternative Liability); pp. 24-26 at ¶¶ 118-130 (Facts Regarding Product Defect); pp. 36-37 at ¶¶ 206-212 (Count I: Negligence); pp. 38-39 at ¶¶ 214-218 (Count II: Negligence Per Se); pp. 38-40 at ¶¶ 220-226 (Count III: Breach of Express and/or Implied

BNBM, BNBM Group, CNBM and CNBM Group, are deemed liable to the same extent as Taishan Gypsum inasmuch as they have legally confessed to class allegations that they are alter-egos of, or part of a "single business enterprise" with, Taishan Gypsum.[3]

By choosing not to appear and contest this Court's certification of the plaintiff class which is proceeding in the damages trial, the Taishan defendants also are bound by the specific FOFCOL of the Court which formed the basis for class certification. These specifically include findings which establish the alter-ego and single business enterprise relationships of CNBM, CNBM Group, BNBM and BNBM Group, with Taishan Gypsum and TTP.[4]

---

Warranties); pp. 40-41 at ¶¶ 228-233 (Count IV: Private Nuisance); pp. 41-42 at ¶¶ 235-240 (Count V: Discharge of a Corrosive Substance); p. 42 at ¶¶ 242-244 (Count VI: Unjust Enrichment); pp. 42-43 at ¶¶ 246-249 (Count VII: Violation of Consumer Protection Acts); *see also Amorin, et al v. Taishan Gypsum Co., et al*, Case No. 11-377 (E.D. Va) Rec. Doc. 1, p. 10 at ¶ 25; pp. 25-26 at ¶ 85; p. 27 at ¶ 89; pp. 29-30 at ¶¶ 96- 98; pp. 30-33 at ¶¶ 99-110; pp. 38-39 ¶¶ 134-140 (Count I: Negligence); pp. 39-40 at ¶¶ 142-147 (Negligence Per Se); pp. 40-42 at ¶¶ 149-165 (Count III: Strict Liability); pp. 42-43 at ¶¶ 167-173 (Count IV: Breach of Express and/or Implied Warranties); pp. 43-44 at ¶¶ 175-182 (Count V: Redhibition); pp. 44-46 at ¶¶ 184-194 (Count VI: LPLA); and pp. 46-47 at ¶¶ 196-201 (Count VII: Private Nuisance); p. 47 at ¶¶ 203-205 (Count VIII: Unjust Enrichment); and pp. 47-48 at ¶¶ 207-210 (Count IX: Consumer Protection Acts). *See Amorin, et al v. Taishan Gypsum Co., et al*, Case No. 11-22408 (S.D. Fla.) Rec. Doc. 1, p. 11at ¶ 25; p. 26 at ¶ 85; p. 30 at ¶¶ 96- 98; pp. 31-33 at ¶¶ 99-110; pp. 38-39 at ¶¶ 134-140 (Count I: Negligence); pp. 39-40 at ¶¶ 142-147 (Negligence Per Se); pp. 40-42 at ¶¶ 149-165 (Count III: Strict Liability); pp. 42-43 at ¶¶ 167-173 (Count IV: Breach of Express and/or Implied Warranties); pp. 43-44 at ¶¶ 175-182 (Count V: Redhibition); pp. 44-46 at ¶¶ 184-194 (Count VI: LPLA); pp. 46-47 at ¶¶ 196-201 (Count VII: Private Nuisance); p. 47 at ¶¶ 203-205 (Count VIII: Unjust Enrichment); and pp. 47-48 at ¶¶ 207-210 (Count IX: Consumer Protection Acts); *see also Amorin, et al v. Taishan Gypsum Co., et al*, Case No. 11-377 (E.D. La.) Rec. Doc. 1, pp. 10-11 at ¶¶ 25, 27; p. 26 at ¶ 85; pp. 26-28 at ¶¶ 86-91; pp. 29-32 at ¶¶ 96- 107; pp. 37-38 at ¶¶ 131-137 (Count I: Negligence); pp. 38-39 at ¶¶ 139-144 (Negligence Per Se); pp. 39-41 at ¶¶ 146-162 (Count III: Strict Liability); pp. 41-42 at ¶¶ 164-170 (Count IV: Breach of Express and/or Implied Warranties); pp. 42-43 at ¶¶ 172-179 (Count V: Redhibition); pp. 43-45 at ¶¶ 181-191 (Count VI: LPLA); pp. 45-46 at ¶¶ 193-198 (Count VII: Private Nuisance); p. 46 at ¶¶ 200-202 (Count VIII: Unjust Enrichment); and pp. 46-47 at ¶¶ 204-207 (Count IX: Consumer Protection Acts).

[3] *See Germano v. Taishan Gypsum Co., Ltd, et al*, Case No. 09-06687 (E.D. Va.), Rec. Doc. No. 1-2, pp. 3-4 at ¶¶ 11-12; *see also Gross, et al. v. Knauf Gips, KG, et al.*, Case No. 09-6690 (E.D. La.) Rec. Doc. No. 1, pp. 10-11 at ¶¶ 24-32; p. 26 at ¶ 130; pp. 29-30 at ¶ 150, ¶152, ¶¶ 158-159, ¶ 162; p. 31 at ¶¶ 169-171, and p. 32 at ¶¶ 180-181; *see also Amorin, et al v. Taishan Gypsum Co., et al*, Case No. 11-377 (E.D. Va) Rec. Doc. 1, pp. 8-11 at ¶¶ 20-24; pp. 11-12 at ¶¶ 26-30; p. 14 at ¶ 35; p. 17 at ¶42; pp. 26-27 at ¶¶ 87-88; pp. 27-28 at ¶¶ 90-91; and p. 30 at ¶ 97; *see also Amorin, et al v. Taishan Gypsum Co., et al*, Case No. 11-22408 (S.D. Fla.) Rec. Doc. 1, pp. 9-11 at ¶¶ 20-24; pp. 11-12 at ¶¶ 26-30; p. 14 at ¶ 35; p. 17 at ¶42; pp. 26-27 at ¶¶ 87-88; pp. 27-28 at ¶¶ 90-91; and p. 30 at ¶ 97; *see also Amorin, et al v. Taishan Gypsum Co., et al*, Case No. 11-377 (E.D. La.) Rec. Doc. 1, pp. 9-10 at ¶¶ 20-24; pp. 11-12 at ¶¶ 26-30; p. 14 at ¶ 35; p. 17 at ¶ 42; and pp. 27-28 at ¶¶ 87-91.

[4] *See* FOFCOL, Rec. Doc. 18028 (filed 9/26/14), pp. 12-21 at ¶¶ 24-51.

### III.     No grounds exist for a set-aside of the defaults herein, even if this were requested

In the *Germano* case, when Taishan Gypsum and its subsidiary TTP appeared in the proceedings only after the entry of defaults against them pursuant to FRCP 55(a), these two defendants attempted to set the defaults aside. They were unsuccessful both before this Court and, on appeal, in the Fifth Circuit, and the conclusions and authority which precluded a set-aside of the default of TG/TTP now constitute the law of the case. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819 (E.D. La. 2012) (affirming the Court's refusal to set aside the Germano Default Judgment); *see also*, *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521 (5th Cir. 2014) (affirming the Court's refusal to set aside the default judgments in *Gross*, *Wiltz*, and *Mitchell*).

That none of the other defendant parent entities of Taishan Gypsum have even attempted a default set-aside, is entirely understandable in light of a record which makes clear that no grounds for a set-aside exist.

FRCP 55(c) establishes two different criteria for set-aside: In the case of an entry of a default under 55(a), a district judge may set the default aside "for good cause," which is a matter vested in the sound discretion of the district judge and reviewable on appeal only for an abuse of that discretion. *See Lacy v. Sitel Corp.*, 227 F.3d 290, 291-92 (5 Cir. 2000). Once a default judgment is entered under 55(b), the defendant may set it aside only on proof of one or more grounds for relief specified in FRCP 60(b), grounds which include mistake, inadvertence, surprise, excusable neglect, newly-discovered evidence, etc. *See* FRCP 60(b).

Certain e-mails previously in the file of Taishan Gypsum's former counsel, Hogan Lovells, now have been produced in connection with that firm's motion to withdraw as counsel after being discharged, and make it apparent that both Taishan Gypsum and its parent entities, BNBM and

6

CNBM, participated in deliberate and strategic decisions in the course of this litigation not to file responsive pleadings, not to present available defenses after being properly served with the class action complaints, and even to try and withdraw in violation of a Court-ordered Judgment Debtor Examination. On February 27, 2015, Taishan's discharged counsel, Hogan Lovells US LLP and Stanley, Reuter, Ross, Thornton & Alford, LLC ("Hogan Lovells"), produced to the PSC the 31 documents previously withheld as allegedly privileged. The content of these emails reveals that, acting in concert, the Taishan defendants (Taishan, BNBM, and CNBM) elected to have Taishan defy this Court's Order to appear for a Judgment Debtor Examination, resulting in the Court's entry of its July 17, 2014 Contempt Order.[5] Taishan's counsel Dong Chungang kept both CNBM and BNBM in the loop when discussing the issues surrounding Taishan not appearing for its Judgment Debtor Examination and the contempt of court ruling. He wrote: ▮



▮[6] Moreover, the numerous emails between and among Taishan and its attorneys which were included in the Hogan Lovells production, confirm ▮

▮ Acknowledging the true entities in charge, Taishan's counsel "▮

---

[5] *See* Rec. Doc. No. 18520, pp. 18-19 (filed under seal) ("Omnibus Reply/Response of the Plaintiffs' Steering Committee to Motions Regarding Contempt, Enforcement of Contempt Order, Class Damages Hearing, and Motion to Withdraw as Counsel for Taishan Gypsum Co., Ltd. and Ta'ain Taishan Plasterboard Co., Ltd.").

[6] *See* Email from Dong [Chungang] to Eugene Chen at Hogan Lovells, dated August 5, 2014 (filed under seal) [Rec. Doc. No. 18433-32]; *see also* Email from Phoebe Yan to Eugene Chen, Hogan Lovells, dated July 11, 2014 (acknowledging that ▮ ) (filed under seal) [Rec. Doc. No. 18433-32].

[7] Email from Dong Chungang to Joe [Cyr] and Eugene [Chen] [Hogan Lovells] dated July 7, 2014 (5:14 a.m.) (emphasis added) (filed under seal) [Rec. Doc. No. 18433-32].

███████████████████████████████████████████████████████████ He also made Taishan's U.S. counsel aware that ████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

███████████████████████[9] Taishan's Chief of Foreign Trade Peng Wenlong certainly recognized that █████████████████████████████████████████████████████████"[10]

The privilege log prepared by Taishan's former counsel at Hogan Lovells also reveals that ███████████████████████████████████████████, regarding "████████

█████████████████████████████████████████████████████████████████████████

██████" BNBM nevertheless allowed its Board Member and Deputy General Manager, Jia Tongchun, who is also the Chairman of Taishan, to falsely deny any knowledge of the legal process in the United States.[11]  In light of what these e-mails and documents reveal, PSC has suggested in motion practice that BNBM also be held in contempt of court.[12]

The decision of the Taishan defendants to not answer the class action complaints at issue thus appears to have been part of a larger strategy to knowingly stand by in this litigation and to gain advantage in the process. Perhaps such a strategy arose out of defendants' belief that they are "untouchable" in the final analysis because any legal indebtedness resulting from judgments against them are (in their view) unenforceable under the law and policy of China.  Perhaps the

---

[8] *Id.* (emphasis added).

[9] Email from Dong Chungang to Eugene Chen at Hogan Lovells dated August 5, 2014 (filed under seal) [Rec. Doc. No. 18433-32].

[10] Email from Peng Wenlong dated July 7, 2014 (emphasis added) (filed under seal) [Rec. Doc. No. 18433-32].

[11] *See* Rec. Doc. No. 18433 ("Supplemental Memorandum of Law in Support of Motion of Plaintiff-Intervenors and the PSC for an Expedited Hearing to Enforce the Court's July 17, 2014 Contempt Order and Injunction."

[12] *See* PSC Motions and Memoranda to Enforce Sanctions, Rec. Doc. Nos. 18302 and 18433.

strategy relates to a notion previously expressed in open Court to the effect that Taishan Gypsum has been "fearful" about the workings of the American legal and judicial systems.[13] Perhaps some combination of tactical motives explains the defendants' election to not respond to plaintiffs' allegations.

But no tactic, no legal strategy to gain advantage, no arrogance, or fearfulness as to outcome, can serve as grounds for either a "good cause" set-aside of the Rule 55(a) default or a Rule 60(b)-based set-aside of a default judgment. On the contrary, just as Taishan Gypsum's deliberate disobedience of the Court-ordered Judgment Debtor examination formed the basis for both civil and criminal contempt, the Taishan defendants' deliberate non-responsiveness should not, and cannot, be rewarded by extending any relief from the consequences of their default. To do so surely would undermine the foundational default policy of deterring the defendant's use of non-responsiveness as a way to delay a just outcome on the merits.

### IV. Relevance and import of the Court's 3/18/15 Minute Entry

After Taishan Gypsum re-appeared, and CNBM and BNBM appeared, in this litigation through counsel, the Court entered a "Minute Entry and Orders" dated March 18, 2015. It directed (1) that Taishan Gypsum purge itself of contempt by making full payment of the *Germano* judgment and associated costs, and (2) that discovery be conducted by the parties, and concluded no later than 4/28/15, on the issue of the corporate relationships between and among Taishan

---

[13] No such trepidation is evident among other members of Taishan's corporate family. To the contrary, even as Taishan's fear of American legal proceedings has been cited to explain its flagrant disobedience of a Court order in this case, a number of other CNBM affiliates have been unabashedly using our federal and state courts as litigants to protect their commercial interests. *See* Status Report of the Plaintiffs' Steering Committee Regarding Discovery Related to Violations of the Injunction Prong of the Court's July 17, 2014 Contempt Order and Alter Ego Relationships (Doc. 18671) and Updated Status Report of the Plaintiffs' Steering Committee Regarding Discovery Related to Violations of the Injunction Prong of the Court's July 17, 2014 Contempt Order and Alter Ego Relationships (Doc. 18684).

Gypsum, BNBM and CNBM.  The Order's specific language in regard to this second directive is important to note, and to place in context:

> As neither Taishan nor BNBM/CNBM have demonstrated compliance with the injunction prong of the contempt order (Rec. Doc. 17869), and the <u>Court cannot yet assess whether there is need to enforce</u> the associated penalty of 25% of profits,
>
> **IT IS FURTHER ORDERED THAT** the parties shall immediately commence discovery related to the <u>relationship between Taishan and BNBM/CNBM, including whether affiliate and/or alter ego status exists</u>.[14]

As the above preamble language indicates, the mandate to conduct discovery pertaining to alter ego addresses not the defendants' liability for class-wide damages, but rather the sanctions or "injunction prong" of the Court's prior contempt order.  Likewise, the primary and broadly-stated directive to conduct discovery "related to the relationship between Taishan and CNBM/BNBM," would suggest that the language which follows it simply clarifies that "corporate relationship" discovery would be <u>inclusive</u> of a particular entity's "affiliate" <u>or</u> "alter ego" status.  The question whether an entity is an "alter ego" of Taishan Gypsum, in other words, is a necessarily relevant subject of discovery in determining whether a given entity is a Taishan Gypsum "affiliate" subject to the "injunction prong" of the contempt order.

The PSC therefore respectfully submits that noting in the language or context of the Court's March 18 Order affects the mandate of R. 55(a). Even as discovery is conducted to allow the Court to address the enforcement of sanctions, the Taishan defendants participating in the April 28 damages hearing are deemed liable under the well-pled allegations of the class action complaints,

---

[14] *See* Minute Entry and Order, Doc. 18493, at p. 2 [emphasis added].

and this includes the confession of liability by CNBM, CNBM Group, BNBM and BNBM Group as the alter egos of, and/or part of a "single business enterprise" with, Taishan Gypsum/TTP.

### V.  Issue preclusion as to issues of causation, the nature and scope of remediation, and personal jurisdiction

In this Court's FOFCOL supportive of certifying a litigation class in this matter, "preclusive effect" is given to the FOFCOL entered after both the *Germano* and *Hernandez* damages hearing.[15]  Specifically applying the doctrine of collateral estoppel, the Court thus has relied on the extensive findings already made in *Germano*, to the extent those same findings supported the certification of a class action for litigation purposes against the Taishan defendants. These FOFCOL specifically contain findings and conclusions as to (1) the causal relationship between defective Chinese drywall and property damage, (2) the required nature and scope of remediation, and (3) a price-per-square-foot approach to calculating remediation and related damages.[16]

The well-settled doctrine of collateral estoppel precludes the re-litigation of any factual or legal issues tried and decided in a prior proceeding, provided that the party seeking to re-litigate such an issue had the "full and fair opportunity to litigate the issue in the prior proceeding and the resolution of that issue was 'necessary to support a valid and final judgment.'" *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 330-31 (1979); *see also U.S. v. Davenport*, 484 F.3d 321, 326 (5 Cir. 2007).  Although there are certain factors which jurisprudentially might make collateral estoppel

---

[15] *See* Rec. Doc. 18028, p. 26 at ¶59.

[16] *See* Rec Doc. No. 2380, pp. 57-60 (*Germano* FOFCOL); *see also* Rec. Doc. No. 2713, pp. 36-40 (Hernandez FOFCOL).

11

unjustified, this Court already has reviewed these factors and determined in its class cert FOFCOL that none of them apply.[17]

On the contrary, the Taishan defendants have had every opportunity, and every incentive, to appear and defend against the various class actions in which they were named and served. They simply have chosen, deliberately and strategically, to be non-responsive. A better fit for the doctrine of collateral estoppel would be difficult to imagine. Indeed, it is a doctrine intended to spare the Court and the opposing litigants the expenditure of re-litigation resources in precisely such circumstances as these.

Since CNBM has expressly reserved a defense based on personal jurisdiction, it also is important to confirm in advance of the class damages trial that a re-litigation of this issue is precluded, pursuant to the combined effects of the *res judicata* doctrine and the liability consequences of CNBM's intentional default.

Following the *Germano* hearing, Taishan appeared and vigorously opposed personal jurisdiction. However, both this Court and the Fifth Circuit (in two separate panel opinions) affirmed that personal jurisdiction over Taishan Gypsum and TTP existed in the class action cases of *Germano*, *Gross, Wiltz* and *Mitchell*. *See In Re: Chinese Manufactured Drywall Products Liab. Litig.*, 742 F.3d 576 (5th Cir. 2014) (affirming the Court's jurisdictional rulings in *Germano*); *see also In Re: Chinese Manufactured Drywall Products Liab. Litig.*, 753 F.3d 521 (5th Cir. 2014) (affirming the Court's jurisdictional rulings in *Gross, Wiltz and Mitchell*). CNBM has been placed in default in these same cases, and, as discussed *supra*, is now deemed liable as the alter ego of Taishan Gypsum and/or as part of a "single business enterprise" with Taishan Gypsum. As such,

---

[17] *See* Rec. Doc. No. 18028, pp. 25-27 at ¶¶ 58-61 (Class Certification FOFCOL).

CNBM is subject to the *res judicata* effect of these prior jurisdictional determinations in the MDL. In other words, the "minimum contacts" and "stream of commerce" analysis applied which now is law of the case as to Taishan Gypsum/TTP, applies with equal force to a parent entity legally deemed to be essentially the same entity as Taishan Gypsum. The latter's established and jurisdictionally-sufficient contacts with the Court's jurisdiction are no less imputable to CNBM, than TTP's were imputable to Taishan Gypsum, both under U.S. and Chinese law. CNBM thus is subject to the personal jurisdiction of this Court not only by application of the law of the case, but by virtue of the necessary consequences of its deliberate decision to be placed, and remain, in default, rather than respond to the class action cases alleging it to be the alter ego of Taishan Gypsum.

To the extent any doubt may remain about issue preclusion based on the foregoing, the contested trial of liability, causation and damage issues in the bellwether *Hernandez* case resolves the question whether the Taishan defendants can seek to re-litigate such matters. During this March 15-19, 2010 bench trial against the defendant Kanuf (which stipulated to redhibition liability but challenged remediation damages), substantial testimony and evidence were presented as to the causal relationship between the sulfur gases emitted from Chinese drywall and corrosive effects on wiring, etc. in the home, the scientific and practical bases for a "back to studs" remediation of these homes, and the cost per square foot needed to make a plaintiff whole in such a situation. In fact, the price-per-square-foot methodology of using a software program such as RS Means was specifically one of the issues tried in *Hernandez*; and clearly the interests of Taishan Gypsum as a drywall manufacturer were fully and fairly represented and protected in the this trial by the co-defendant manufacturer Knauf. The latter was defended by able counsel, presented *Daubert* challenges, and offered not only competing evidence but several opposing expert

witnesses.  In fact, the record of this MDL reflects that the drywall manufactured by Knauf Tianjin and by Taishan Gypsum/TTP used contaminated gypsum from the <u>same mine</u>, further eliminating any doubt as to the alignment of Knauf and Taishan as defendant manufacturer interests.

As was done in *Germano*, this Court issued elaborate FOFCOL following the *Hernandez* trial, when it enteree'd judgment in favor of plaintiffs.[18]   As noted, these included the Court's affirmance of the use of R.S. Means as a valid way to quantify remediation damages.[19] Pursuant to the doctrines of both collateral estoppel and *res judicata*, none of these previously-tried issues can or should be re-litigated in the April 28 damages hearing.  Indeed, the Court already has held to this effect.  Again referring to the class cert FOFCOL, it was noted that:

> Because the only claims at issue here are against default judgment defendants, and because the Court has already found sufficient facts to establish the causation issue associated with these types of claims, all that is required is an assessment of damages.  Liability is conceded by default.  Accordingly, the Court will establish class-wide damages pursuant to R. 55(b)(2)(B).[20]

The Court further acknowledged as follows:

> It is noteworthy that intervenor Knauf, prior to withdrawing from the *Germano* proceedings, vigorously contested plaintiffs' evidence on the scope of remediation and cost of remediation through the process of filing expert reports, cross-examining plaintiffs' experts at depositions, and filing *Daubert* challenges against plaintiffs' remediation and damages experts (which were denied).[21]

---

[18] *See* Rec. Doc. Nos. 2713 (FOFCOL) and 3012 (Judgment).

[19] *See* Rec Doc. No.2713, pp. 36-40.

[20] Rec. Doc. 18028, p. 31, at ¶71.

[21] *Id.* at p. 26, *fn.* 7

14

Such observations and conclusions by the Court, in the certification decision which precedes this class damages trial, cannot be ignored or diminished. They are a matter of record, and properly narrow what remains to be adjudicated at the April 28 hearing, *to-wit:* the amount of class-wide remediation damages owed by the defaulted Taishan defendants, using a price-per-square foot methodology and software such as R.S. Means.

## VI.   Conclusion

The Taishan defendants have deliberately "confessed" liability in these proceedings through their adopted strategy of "sitting out" the case while the subsidiary Taishan Gypsum (belatedly) contested personal jurisdiction. The parent entities CNBM and BNBM apparently were content to use Taishan Gypsum as a "stalking horse" for this threshold defense, rather than appear and answer the complaints. Had they done so, they would have allowed the joining of issues on the merits rather than interposing years of tactical delay to the substantial prejudice of plaintiffs. The strategy perhaps backfired, but it was a deliberate choice made by these corporate entities, and one with fundamentally important legal consequences. Plaintiffs have every right to insist that these consequences be stringently effectuated.

Personal jurisdiction no longer is at issue, not only as to Taishan Gypsum but as to the defendant parent-entities of Taishan Gypsum, which legally are deemed to be alter egos to which the jurisdictional contacts of Taishan Gypsum are imputable. Nor should valuable judicial and litigant resources be expended in re-visiting the issues of fault, general causation, the nature and scope of remediation required to make a plaintiff "whole," or the methodology for quantifying remediation damages on a price per square foot basis. All of these issues now have either been resolved under FRCP 55 through defendants' admission of liability, and/or adjudicated in lengthy

evidentiary hearings or trials wherein the interests of the Taishan defendants were fully and fairly represented by the defendant manufacturer Knauf.

The thousands of plaintiff class members who are damaged by defective Taishan/TTP drywall already have suffered inordinate delay due to the "no-response" strategy of the Taishan defendants. The time has come to monetize the longstanding and substantial legal indebtedness of these entities and the PSC stands ready to present the evidentiary support and process needed to quantify class claims on a global basis.

Dated: April 15, 2015         Respectfully submitted,

BY:     /s/ Russ M. Herman
Russ M. Herman (LA Bar No. 6819)
Leonard A. Davis (LA Bar No. 14190)
Stephen J. Herman (LA Bar No. 23129)
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin
Fred S. Longer
Sandra L. Duggan
Matthew Gaughan
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

Gerald E. Meunier (LA Bar No. 9471)
Rachel A. Sternlieb (LA Bar No. 35338)
Gainsburgh, Benjamin, David,
 Meunier & Warshauer, LLC
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2800
Phone:  (504) 522-2304
Fax:  (504) 528-9973
gmeunier@gainsben.com
*Co-Counsel for Plaintiffs and PSC Member*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Peter Prieto
Podhurst Orseck, PA
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Bruce William Steckler
Steckler LLP
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230

Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Ervin A. Gonzalez
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
ervin@colson.com


Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, PA
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

17

Jerrold Seth Parker
Parker Waichman, LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com


Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@attorneys4people.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com


Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave., Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

18

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W., Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
rlewis@hausfeldllp.com

Anthony D. Irpino
IRPINO LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 15th day of April, 2015.

                              Respectfully Submitted,

                              BY: /s/ *Leonard A. Davis*
                                   Russ M. Herman
                                   Leonard A. Davis
                                   Stephen J. Herman
                                   Herman, Herman & Katz, LLC
                                   820 O'Keefe Avenue
                                   New Orleans, LA 70113
                                   Phone: (504) 581-4892
                                   Fax: (504) 561-6024
                                   ldavis@hhklawfirm.com

                                   *Plaintiffs' Liaison Counsel*
                                   *MDL 2047*