1                        UNITED STATES DISTRICT COURT
                         EASTERN DISTRICT OF LOUISIANA
2

3      ****************************************************************

4      In Re:  CHINESE-MANUFACTURED
       DRYWALL PRODUCTS LIABILITY            CIVIL DOCKET NO. 09-MD-2047
5      LITIGATION,                           SECTION L
                                             NEW ORLEANS, LOUISIANA
6                                            Tuesday, April 7, 2015

7
       ****************************************************************
8

9                 STATUS TELEPHONIC CONFERENCE PROCEEDINGS
              HEARD BEFORE THE HONORABLE ELDON E. FALLON
10                    UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18     OFFICIAL
       COURT REPORTER:    TERRI A. HOURIGAN, CRR, RPR
19                        CERTIFIED REALTIME REPORTER
                          REGISTERED PROFESSIONAL REPORTER
20                        500 POYDRAS STREET, ROOM B-279
                          NEW ORLEANS, LOUISIANA  70130
21                        (504) 589-7775
                          Terri Hourigan@laed.uscourts.gov
22

23     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
       PRODUCED BY COMPUTER.
24

25

```
 1    APPEARANCES:

 2

 3    FOR THE PLAINTIFF:          HERMAN, HERMAN & KATZ, LLC
      PLAINTIFFS' STEERING        BY:  RUSS M. HERMAN, ESQ.
 4    COMMITTEE                        LEONARD A. DAVIS, ESQ.
                                  820 O'Keefe Avenue
 5                                New Orleans, Louisiana

 6
      FOR PLAINTIFFS:             GAINSBURGH BENJAMIN
 7                                BY:  GERALD E. MEUNIER, ESQ.
                                  2800 Energy Centre
 8                                1100 Poydras Street
                                  New Orleans, Louisiana 70163
 9

10    DEFENDANT:                  ALSTON & BIRD, LLP
      TAISHAN AND TTP             BY:  BERNARD TAYLOR, ESQ.
11                                     MICHAEL KENNY, ESQ.
                                       CHRISTINA EIKHOFF, ESQ.
12                                1201 West Peachtree Street NW
                                  Suite 4200
13                                Atlanta, Georgia  30309

14
      DEFENDANT:                  LEVIN, FISHBEN,
15                                SEDRAN & BERMAN
                                  BY:  ARNOLD LEVIN, ESQ.
16                                     FRED S. LONGER, ESQ.
                                  510 Walnut Street, Suite 500
17                                Philadelphia, Pennsylvania

18
      FOR DEFENDANT:  BNBM        DENTONS US LAW FIRM
19                                BY:  MICHAEL MOORE, ESQ.
                                       RICK FENTON, ESQ.
20                                1221 McKinney Street, Suite 1900
                                  Houston, Texas  77010
21

22

23

24

25
```

```
 1                    P R O C E E D I N G S

 2                      April 7, 2015

 3                          *  *  *

 4          THE COURT:  Good afternoon, everyone.  This

 5   is Judge Fallon.

 6          Who is on the line for the PSC?

 7          MR. LEVIN:  Arnold Levin, sir.

 8          Russ is on the line.  Lenny is on the line, and Fred

 9   Longer is with me.

10          MR. MEUNIER:  Gerry Meunier, Your Honor.

11          MR. LEVIN:  Gerry Meunier is on the line.

12          THE COURT:  Okay.  For the defendants, Taishan?

13          MR. TAYLOR:  Yes, Your Honor.  Bernard Taylor is on the

14   line.

15          MR. KENNY:  Michael Kenny.

16          MS. EIKHOFF:  And Christina Eikhoff, all from Alston &

17   Bird.

18          THE COURT:  Okay.  I have before me a number of

19   motions.  In fact --

20          MR. MOORE:  Your Honor, just for the record, for BNBM,

21   Michael Moore and Rick Fenton of Dentons, also on the line.

22          THE COURT:  Okay, fine.  Anyone else?

23          Okay.  As I mentioned, I have a number of motions.  The

24   reason I wanted to get with you all is because it seems like I

25   get them every five minutes, so I thought I had better try to
```

1    get to you so that at least I can take you away from drafting

2    motions.

3          I really have -- they seem to be grouping into three

4    areas:  Taishan's motion to compel.  They want up-to-date

5    profile forms.  They want information regarding settlement from

6    the settlement administrator regarding the amount of Taishan's

7    drywall in homes or whether those homes received any dollars

8    from any of the settlements; and particularly, in the mixed

9    Taishan homes.  They'd like to focus on that.

10          Also, they want to know what's the actual cost of

11    remediation.

12          I have also the PSC's motion to compel the deposition

13    of the chairman of Taishan.  That, to me, seems to be moot at

14    this time.  I understand that Bernard responds that he has

15    already worked that out with the PSC.

16          There is also some PSC's objections to Ronald Wright,

17    with regard to the deposition of the chairman.

18          Is that -- am I correct there?  Bernard, you have

19    indicated that you've talked with the plaintiffs, either Russ

20    or Arnie, and worked that out?

21          MR. TAYLOR:  Yes.

22          Excuse me, I think I cut someone off, Your Honor.  But

23    we have spoken with the PSC, and what we have proposed is

24    another 30(b)(6) individual to provide the testimony that the

25    PSC wants from the chairman.

1          THE COURT:  Okay.

2          MR. HERMAN:  Your Honor, this is Russ Herman.  Our

3    concerns are as follows with regard to that:

4          No. 1, we don't have the actual medical reports and any

5    hospital reports of why the chairman now is incapacitated.

6          Secondly, the individual substituted, Your Honor -- we

7    need a stipulation as to foundation.

8          That individual is going to be speaking secondhand

9    about many issues which we don't have documents produced by

10   Taishan in English yet.

11         But we are all working from our own documents and our

12   own research, but we don't want to get into an objection

13   because the witness produced does not have sufficient personal

14   information regarding the issues.

15         In addition to that, as I understand it from the same

16   conversation, Taishan does not have a server.  Everything is on

17   individual computers, and they are making every effort, and we

18   believe that Bernard has accurately told us that they are

19   making every effort, to get the documents from each computer of

20   each Taishan employee or executive that's involved.

21         We have redrafted the request for production and the

22   areas of inquiry in deposition, and we'll be filing those today

23   in order to obviate most of the objections that Taishan has

24   given in their latest papers.

25         So, to say that the matter is settled, I don't know

1    that the matter is settled.

2        I do agree that Learned counsel, Mr. Taylor, has made

3    an effort to produce a witness, and at the present time that

4    witness neither has a passport nor a visa, so we have no

5    schedule for it.

6        THE COURT:  All right.  Well, in the first place from

7    the standpoint of medical, when you tell me something, Bernard,

8    I believe it.  So, if something is wrong, something improper,

9    it's really going to be on your back.  So let's make sure that

10   what you are saying is accurate.

11       MR. TAYLOR:  I just did.

12       THE COURT:  But I don't need any medical if you are in

13   good faith, and I assume you are, in saying your guy can't make

14   it because of illness.

15       Let's make sure, though, that when you say that, you

16   know that to be a fact, because I really look to you for that.

17       Secondly, it's hard to know what the person doesn't

18   know until the deposition is taken.

19       But Bernard, if you have the information in the areas

20   that they want to cover, let's make sure that that witness is

21   able to cover those areas.

22       I don't want him to get over here and then say, "Well,

23   I don't know anything about those areas.  I know a lot about

24   other areas."  That's not going to work.

25       MR. TAYLOR:  Right.

1          THE COURT:  So let's go forward with the deposition on

2     that basis.

3          With regard to the PSC's objections to Wright -- Ronald

4     Wright, as we know, Ronald Wright is a civil engineer.  He has

5     education as a civil engineer.  He's a licensed civil engineer

6     in a number of states, including the states that are prominent

7     in this particular case.

8          He's performed forensic investigations, provided

9     opinions regarding construction issues and building problems,

10    and including developing a scope of repairs necessary and

11    estimating the cost of repairs.  It seems like he has had a lot

12    of education and practical experience in the field.

13         He's been asked by the plaintiffs to determine the

14    property damage caused by the Taishan drywall to a class of

15    Taishan drywall owners.

16         The plaintiffs object to the notice -- deposition

17    notice.  Really, the objections fall into two areas:

18         One, is that they feel it's a short time for the notice

19    because of all of the things that the defendant is asking that

20    witness to collect and cover and be ready to testify on.

21         Second, they object to various paragraphs of the

22    notice.

23         The second objection is really falling into two

24    categories:

25         One, the feeling is by the plaintiffs, that the

1   requests are too broad, too burdensome.

2        And secondly, some of the requested information may not

3   be produceable under the federal rules; for example, draft

4   reports.

5        I have looked at it.  I understand what he's going to

6   testify to.  I understand the areas.  There is no question, in

7   my opinion, the defendant has a right to take his deposition.

8   He's going to be testifying, so you need to know what he's

9   going to say.

10        I think you can interrogate him on what his opinions

11   are.  You can find out what he relied on to reach those

12   opinions.  You can obtain copies and have access to the

13   documents which he reviewed and utilized in forming his

14   opinions, which are in his possession and control and under his

15   control.

16        I don't think it's fair to have this person stop

17   everything that he's doing or whatever, and then research

18   things or call people or make an effort to get information or

19   expend resources to get information.

20        But if it's in his possession and under his control, it

21   seems to me that he ought to have it, bring it to the

22   deposition, and show what he's relied on, what it says, how it

23   helped him formulate the opinions, and why he feels that way.

24        With regard to the shortness of the notice, you know,

25   we have got to get ready for the damage hearing on April

1    the 28th.  So it's short, but the times -- we're just about

2    three weeks away.

3            So I don't know about that, but if you all can work

4    that out and slide the depo a day or two down the road, maybe

5    that will work.

6            MR. KENNY:  Your Honor, this is Michael Kenny.

7            THE COURT:  Yes, go ahead.

8            MR. KENNY:  I think I might have some good news for you

9    on this front.

10           THE COURT:  Okay.  Good.

11           MR. KENNY:  We have actually had an opportunity to

12   review the PSC's objections, and we wrote them a letter -- sent

13   them a letter today, telling them that we will pull down the

14   request that they object to.

15           If they give us the documents that they say that they

16   will agree to give the documents, that would be a workable

17   compromise for us, and we have proposed pushing back the

18   deposition date from the 8th to the 15th, so that we have an

19   opportunity to depose Mr. Wright a few days before our

20   opposition papers are due on the 20th.

21           THE COURT:  Yeah, it makes sense to me.

22           Go ahead, Arnold.

23           MR. LEVIN:  Sorry, I didn't mean to cut you off.

24           THE COURT:  That's all right, Arnie.  Go ahead.

25           MR. LEVIN:  Perhaps, I could bring everybody up to

1    date.  I think, at this time, if we're so close to April 28th,

2    both the Court and the defendant should know how we're going to

3    try this case or at least our theory of the case.

4         And it takes in a lot of the objections that the

5    defendants have filed and the request for a lot of the

6    materials that they filed.

7         Today we received all plaintiffs' profile forms.

8         When I say "we," I mean the plaintiffs and the

9    defendants received all plaintiffs' profile forms from

10   BrownGreer.

11        We also received from the claims administrator, Matt

12   Garretson, all of the addresses and claimants' names and square

13   footage of their homes in the Virginia settlement.

14        So one could compute the damages under our theory by

15   total square footage times the number that it takes that

16   Mr. Wright will give us with regard to the cost of remediation.

17        They will be broken into, perhaps, states of

18   concentration because costs are different there.  That would be

19   the main trial.

20        We do not believe that mixed homes are involved at that

21   stage of the litigation.  That's the class stage of the damage

22   trial.

23        Now, the settlement itself with Knauf, that was a

24   negotiated settlement.  The costs are -- the costs that Knauf

25   paid where they had 300 homes maybe in a community, not one

1    person remediating its own home.  It doesn't include Knauf's

2    profits -- it does include the Knauf's profit.

3          It doesn't include any of the incidentals such as the

4    tens of millions of dollars in the claims administration that

5    were paid.

6          So we don't think that that is really relevant.

7    Besides BrownGreer, to my understanding, doesn't have that kind

8    of information.  Kerry Miller and Knauf has it, and that is

9    proprietary.

10         So what about mixed homes.  We thought of that.  There

11   is a means of doing that.

12         Knauf has a release, and that release buys them a place

13   in heaven for verdict reduction.

14         After the main trial on the assessment of damages, and

15   we think we have support for that in the next phase, the

16   opinion of the First Circuit, the non-settling defendant, which

17   in this case is Taishan, would then engage in a procedure for

18   verdict reduction as to the mixed homes.

19         That would be an administrative procedure before a

20   Special Master or before Your Honor, and there would be no

21   final judgment entered on class damages itself until such time

22   as that proceeding takes place.

23         That would be the way we would propose to try this

24   class.

25         MR. KENNY:  I wonder if we could go back first -- I

1    thought we were talking about the Wright deposition.

2             THE COURT:  Yeah, go ahead.

3             MR. KENNY:  And whether we could get agreement then to

4    get the documents that we've agreed and the compromise with the

5    PSC to get and take Mr. Wright's deposition, say, on

6    April 15th.

7             THE REPORTER:  Who is speaking?

8             THE COURT:  Yeah, who is that?  Michael?

9             MR. KENNY:  Yes.  I think Gerry Meunier could respond

10   to that.

11            MR. MEUNIER:  Judge, this is Gerry.  I talked to

12   Mr. Wright today.  I do want the Court and opposing counsel to

13   know that he's had a little bit of bad news with respect to his

14   wife and a health issue, which has put him a little bit off

15   schedule but he still will endeavor to try to meet the time

16   table.

17            He has filed material.  We can certainly make

18   arrangements with the defendants to let them have what we do

19   not object to, so that the deposition is properly prepared for.

20            So I will work with Mr. Kenny on that.

21            As far as the date we can, likewise, work out something

22   that's convenient for counsel and Mr. Wright.

23            THE COURT:  Okay.  All right.

24            MR. HERMAN:  Your Honor, this is Russ Herman.

25            I spent some time going through the transcripts of both

1    the *Germano* and *Hernandez* trials.

2         And the costs, what I will call, "reconstruction" or

3    "rehabilitation" at the time that those verdicts were rendered

4    and the testimony given, the increases in the first square foot

5    cost, et cetera, most of that material is five years old.

6         In order to try and move this along, and I understand

7    Your Honor clearly, we are endeavoring to get the material of

8    present-day cost.

9         We have ordered it from the publishers upon whom

10   experts relied on those two cases.

11        We need to provide those to our expert, and at the same

12   time we provide them to our expert, we will provide them to

13   Bernard.

14        THE COURT:  All right.  So let me just sum up.

15        In the first place, the issue of the date and the issue

16   of the materials for the expert, Ronald Wright, that is going

17   to be worked out by and between counsel; is that correct?

18        Gerry, is that what you are telling me?

19        MR. MEUNIER:  Yes, Your Honor.

20        THE COURT:  Okay.  With regard to the mixed -- I don't

21   care necessarily, and I would like the defendants to give it

22   some thought as to how we try the case, we can bifurcate it in

23   that fashion that Arnie suggests, or we don't have to do it

24   that way.

25        But in any event with the mixed homes, I think that

1    Taishan -- they ought to know with respect to the person whose

2    claiming the property damage, how much they got.

3         If their home is worth $100,000 and they already

4    received $200,000, maybe they don't have a claim any more.

5         I'm not saying it is or isn't, but at least they ought

6    to know that.

7         Now whether it's admissible or not admissible, I don't

8    make any judgment on that at this point, but it seems to me

9    that it's discoverable, in any event.

10        So I don't care how you try the case, whether we do

11   it -- whether we package the first aspect of the case and then

12   package the second aspect of the case, and then I write an

13   opinion on the whole aspect of the case, A and B.

14        Either way, I don't have any problem doing it whatever

15   way that makes sense and whatever way that is helpful to you

16   all.

17        We're doing it in a short period, so maybe that makes

18   sense.

19        But I won't hold you to it right now, Bernard, but you

20   have got to give it some thought and give me your view of it to

21   see whether you are comfortable with that.

22        MR. TAYLOR:  I understand, Your Honor.

23        THE COURT:  Okay.  What else do we need to talk about

24   that I have?

25        MS. EIKHOFF:  Your Honor, this is Christy Eikhoff, Your

1    Honor.

2            And I just wanted to just briefly cover the three

3    categories of information that were the subject of Taishan's

4    motion to compel.

5            THE COURT:  Yes.

6            MS. EIKHOFF:  To update plaintiffs' profile forms, it

7    appears now that both parties agree that updates are needed to

8    those forms, many of which are five years old.

9            THE COURT:  Right.

10           MS. EIKHOFF:  We didn't know that the PSC agreed with

11   that, until we just saw the papers they just filed.  But we're

12   glad that they do.

13           I think that the issue that remains for discussion and

14   determination is what specific updated information is needed.

15           We see that the plaintiffs have already put together an

16   update form and their papers indicate that they have already

17   started implementing that.

18           However, we believe that more information is needed

19   than the form that they have proposed.

20           We think that we should be able to get all of the same

21   information that was gathered from the plaintiff in the first

22   instance, updated with information about any remediation that

23   has been done on the property, settlements they received, and

24   any ownership changes.

25           Obviously, this is relevant to the issue of who is

1    properly in the class and what the damages should be.

2          MR. LEVIN:  This is Levin, Your Honor.

3          THE COURT:  Yes.

4          MR. LEVIN:  Out of what they are seeking is within --

5    Knauf has and they have a proprietary interest, and I

6    understand that Knauf has a counterclaim against Taishan, also.

7          But if they look at our profile form, we're giving them

8    the square footage of the property, we're making sure that it's

9    a current owner, because the class is defined as current

10   owners -- it's owners.

11         If they are not an owner, they may have damages.  They

12   obviously have damages, but they are still in the MDL's

13   individual cases.

14         And we're trying to make this class release possible,

15   and we think we have done it.

16         We have sent this form out to all of the plaintiffs and

17   asked them to complete it in a very short period of time, no

18   longer than a week, and we should have it -- we ought to wait

19   and see what they get.

20         THE COURT:  That is what I was going to suggest.

21         Christy, just put that on hold.  I will listen to you.

22   I think most of the material you mentioned is probably

23   discoverable.  I don't know whether it's admissible, but it may

24   be discoverable, but take a look at what you have.

25         If you need additional information, give it to me, and

1    just even a short letter, send a copy to Arnie, and I will get

2    his response.  And I will make the cut on that.

3         But the fact that you are getting material from them

4    doesn't mean you waived anything.

5         MS. EIKHOFF:  Okay.  Thank you, Your Honor.

6         THE COURT:  Okay, what else?

7         MS. EIKHOFF:  Then as far as -- there is also

8    information that is in the possession of BrownGreer and the

9    Garretson Group with respect specifically to the plaintiffs

10   that are identified currently as class members, information as

11   to whether their houses have actually been remediated and

12   information as to, you know, what compensation they have

13   received already, the use of their properties.  I could go on

14   and on.

15        And that information, we actually have an agreement

16   with the PSC on Wednesday that that information could be made

17   available jointly to both sides of the case by consent, but

18   unfortunately, that agreement broke down, and we had

19   information highly relevant and we just don't think it would be

20   proper to do an assessment of damages without the benefit of

21   that specific information about the specific class members.

22        MR. LEVIN:  If we could respond.  I have heard you,

23   Your Honor, with regard to payments that have previously been

24   made, but they in no way are dollar for dollar verdict

25   reduction in this case.

1          We believe that if you have Taishan property, a Taishan
2     board in your home, the whole house has to come down.
3          The fact that there was a settlement with Knauf is a
4     settlement agreement.  It was negotiated.  There was give and
5     take on both sides.
6          If you have domestic drywall and you have Taishan
7     drywall, you don't chop off the domestic and pay the money for
8     the percentage for Taishan.
9          That's why we suggested that we try the case on the
10    square footage of the property where Taishan appears in the
11    house.
12         And then, in an ancillary procedure afterwards, I don't
13    necessarily agree with what Christy has said -- but an
14    ancillary procedure afterwards, we take care of the verdict
15    reduction and any credits that they are entitled to so that we
16    don't enter a final judgment on the class trial.
17         It becomes *inquit* until such time as those ancillary
18    proceedings.
19         We have all been doing this for a long time.  We know
20    that as we move along, collectively, we find ways to
21    accomplish, with the help of the Court, various things.
22         THE COURT:  Yeah.  Well, she's talking about discovery,
23    though, and not necessarily trial at this time.
24         I don't have any -- from the standpoint of the material
25    that BrownGreer has, I mean, he's been evaluating some of it.

1    I think that that's -- you know, it just seems to me that it's

2    relevant, at least, in discovery.

3           It may not be relevant in terms of trial.  It may have

4    no relevance in terms of trial.  But I don't see how it's not

5    relevant, at least, from a discovery standpoint.

6           Now, I tend to feel that it makes sense to me to, in

7    effect, bifurcate.  We can do it in sessions or ancillary.  But

8    what you are doing is bifurcating, basically, the other aspect

9    of the case, which makes sense.

10          We will deal with one part and then deal with the next

11   part, either the following week or the next day or two weeks or

12   whatever it is that you all need to get ready for it.  I like

13   that idea.

14          But from the standpoint of discovery, I think it's

15   discoverable information.

16          MR. LEVIN:  We have certainly heard you, Your Honor,

17   and we will take that up.

18          Your ruling seems to be with regard to BrownGreer, and

19   we will roll Garretson into that as well.

20          THE COURT:  Right.

21          MR. MEUNIER:  Your Honor, this is Gerry, again.

22          For purposes of Ron Wright's deposition, can we have an

23   agreement and understanding with the defendant that he will not

24   have taken that particular settlement offset information into

25   his account --

 1            THE COURT:  Yes.

 2            MR. MEUNIER:  -- because it would be very difficult to

 3    do that within the time frame.

 4            THE COURT:  Yes.

 5            MR. KENNY:  Your Honor, this is Michael Kenny, again.

 6            We also have the issue, if I heard PSC counsel

 7    correctly, and maybe I didn't, that they are suggesting or at

 8    least intimating that Mr. Wright is going to do a revised

 9    calculation, revised report.

10            If that's the case, and if they know that he's going to

11    do that, it probably makes sense to wait until he does that so

12    we have a stationary target, and we know what his actual

13    opinion is going to be.

14            THE COURT:  Go ahead, Gerry.

15            MR. MEUNIER:  I agree with that, Judge.

16            THE COURT:  Okay.

17            MR. MEUNIER:  I was going to talk to Michael about this

18    after.

19            Yeah, we probably will invite some revision and

20    updating of the calculations, and it makes perfect sense to

21    wait until that's done before the deposition.

22            THE COURT:  Yes, I agree with that.  There is no sense

23    in taking it twice.  Let's get whatever he's going to get, get,

24    and take a look at it, Michael, and take his deposition.

25            MR. KENNY:  I think that is eminently sensible, Your

1    Honor.

2           THE COURT:  Yes.

3           MR. KENNY:  But the only issue we have got, though, is

4    under Your Honor's order we have until the 20th to file our

5    opposition papers.  And we were hopeful for taking Mr. Wright's

6    deposition at least a few days prior to the filing of our

7    opposition papers.

8           THE COURT:  Yes.

9           MR. LEVIN:  We would be amenable to the opposition

10   papers being tied in with the date of the deposition.

11          THE COURT:  Yes.  I just need them before the hearing

12   if you all can work that out.  I don't have any problem,

13   Michael, sliding that.

14          MR. KENNY:  Thank you.

15          MS. EIKHOFF:  Your Honor, if I may just to close out

16   with the three categories that was the subject of our motion to

17   compel.

18          The final one was the remediation data that BrownGreer

19   has, not just for class members but just that they have for the

20   scope of the entire MDL.

21          Your Honor, in your class certification order of

22   September 26, specifically ruled that empirical remediation

23   costs data including that of Moss and Associates would be

24   relevant to assessing damages.

25          And so, you know, along with getting the class member

1    specific information that we've asked for from the settlement

2    administrator, we would like to also get that cost data.

3         We understand that the PSC is arguing that, you know,

4    there may be other costs that need to be taken into

5    consideration.

6         But respectfully, we think that those are weight types

7    of arguments and not discoverability types of arguments.

8         MR. LEVIN:  Christy, you will find that we usually

9    listen -- we always listen to the Judge, and we have heard him.

10        MS. EIKHOFF:  I guess I just wanted to make sure that

11   that was all included.

12        MR. HERMAN:  This is Russ Herman.  The one thing that

13   we can't provide is the Knauf material.  That is proprietary

14   information.

15        THE COURT:  Right.  I agree with that, Russ.

16        I just cut you off.

17        It's proprietary.  You have to talk to Knauf, and maybe

18   file a motion with them, if that is an issue.

19        But I don't think the plaintiffs can speak on that.  I

20   mean, it's not their issue.  It's not Knauf's issue.

21        MS. EIKHOFF:  Is that with respect to information that

22   BrownGreer has or information that is exclusively in the

23   control of Knauf?

24        THE COURT:  I don't know the answer to that.

25        Does anybody know?

1          MR. LEVIN:  Well, we don't know what Knauf's position

2     is on some of the information that BrownGreer has.  As such,

3     you know, we will have to talk to Kerry Miller.

4          MR. HERMAN:  In other words, there are certain

5     agreements.  We are not real sure, and I don't know that we

6     know what they are between Knauf and BrownGreer.

7          Certainly BrownGreer has made reports to the Court on

8     remediation, which are part of the record in public and which

9     the Court has published on its website during status

10    conferences.

11         And I don't -- I don't think that is the proprietary

12    information that we're concerned with, and it is certainly

13    accessible to you.

14         I don't know whether you are aware of that or you have

15    attempted to edit it, but we have no reluctance to advise

16    BrownGreer that whatever they have made public during a status

17    conference, can be provided to you.

18         THE COURT:  I think we're going to have to take it a

19    step at a time, Christy.

20         Get the plaintiffs' information.  Get the stuff and if

21    you see any holes in it, and it's not the plaintiffs' holes,

22    you can talk with Knauf.  And I will get their view and your

23    view, and I will deal with it, accordingly.

24         MR. HERMAN:  Your Honor, before this ends, we reserve,

25    of course, all our rights to object to relevance --

1          THE COURT:  Yes.

2          MR. HERMAN:  -- of any figures that come out of a Knauf

3     negotiated settlement --

4          THE COURT:  Right.

5          MR. HERMAN:  -- to the extent or the amount of damages.

6          THE COURT:  All right.  Anything else from anybody?

7          MR. KENNY:  I think this has been very helpful, Your

8     Honor.

9          THE COURT:  Okay.  Bernard, do you have anything else?

10         MR. TAYLOR:  Nothing from us right now, Your Honor, I

11    believe.  We appreciate the Court's time.

12         THE COURT:  Okay.  Arnie, anything from you?

13         (No response.)

14         Okay.  All right.  Folks, I will have this as a

15    transcript in case you need it.

16         All right.  Thank you very much.

17                              *    *    *

18                    REPORTER'S CERTIFICATE

19         I, Terri A. Hourigan, Certified Realtime Reporter,
      Official Court Reporter for the United States District Court,
20    Eastern District of Louisiana, do hereby certify that the
      foregoing is a true and correct transcript to the best of my
21    ability and understanding from the record of the proceedings in
      the above-entitled and numbered matter.

22
                                     s/Terri A. Hourigan
23                                   _____
                                     Terri A. Hourigan, CRR, RPR
                                     Certified Realtime Reporter
24                                   Registered Professional Reporter
                                     Official Court Reporter
25                                   United States District Court
                                     Terri_Hourigan@laed.uscourts.gov