**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**TAISHAN'S REPLY IN CONTINUED OPPOSITION TO**
**THE PSC'S MOTION TO STRIKE HOGAN LOVELLS'**
**DESIGNATION OF DOCUMENTS AS HIGHLY CONFIDENTIAL**

Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd. ("Taishan") files this Reply in response to the PSC's presentation binder entitled "Materials by Plaintiffs for Discussion at 4/17/15 Hearing" ("PSC Binder") and the PSC's oral argument at the April 17, 2015 Status Conference in support of the PSC's Motion to Strike Hogan Lovells' Designation of Documents as Highly Confidential ("Motion to De-Designate") under Pretrial Order ("PTO") 16. (Rec. Doc. No. 288.).

As the Court noted, the PSC provided no advance copies of the PSC Binder to defense counsel.  Review of the contents of the BSC Binder reveals that the Binder only obscures the merits of the Motion to De-Designate.  Confusingly, the PSC Binder contains approximately two inches worth of paper, but only nine pages (behind Tab 26) comprise actual discovery documents at issue.[1]  The rest of the Binder is a hodgepodge of BNBM and CNBM annual reports and public announcements, PSC-generated charts and summaries, Taishan financial documents, and

---

[1] The documents at issue are a set of documents produced by Hogan Lovells on February 26, 2015 (the "Hogan Lovells Production") with the designation of "Highly Confidential."

the PSC's own documents related to the current damages discovery.  The PSC's oral argument also confused the pending issue.

Because the Parties have already fully briefed the Motion to De-Designate, Taishan limits this Reply Brief to the PSC's arguments at the Status Conference.

**1.    The PSC inappropriately advances stereotyped, scandalous, and irrelevant generalizations of Chinese companies.**  The PSC's opening remarks projected an unwarranted anti-China animus as a foundation for its argument:

> Preliminarily, we note that in the past China has brought into the United States defective toys that are lead based, defective built, defective pet supplies, defective drywall and, recently, defective flooring.

(Rough Draft[2] of 4/17/15 Status Conference ("Rough Transcript"), attached hereto as Exhibit A, at 21.)  Under Article III of the Constitution, federal courts have limited jurisdiction to resolve actual cases and controversies.  As in virtually all U.S. cases under due process, this case is about particular parties and here, a particular product—drywall.  The PSC's attempt to prejudice Taishan and other Defendants by categorical (and xenophobic) guilt by association should be summarily rejected.

For similar Constitutional reasons, this Court should reject the PSC's misguided argument Chinese companies are subject to any greater or lesser publication of discovery documents than U.S. companies.  *See* Rough Transcript at 31 ("There is a bigger issue here that extends beyond the case, and that is the fact that a United States manufacturer is held to a defective product balancing the books, but a Chinese manufacturer is not.")  As Taishan's counsel noted in oral argument, the U.S. Supreme Court has held that there is no "unrestrained

---

[2] The official transcript for the 4/17/15 Status Conference was not available by the deadline for filing. For this reason, the Rough Transcript has been attached as Exhibit A.

right to disseminate information that has been obtained through pretrial discovery," and that "restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."   *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 31 (1984).  In fact, protective orders to limit the use and distribution of confidential business records and communications is not only permissible, but commonplace in federal jurisprudence involving U.S. based companies.   The PSC's attempt to frame discovery confidentiality obligations as hinging somehow on the country of origin is a *non sequitur*.

2.       **The Hogan Lovells documents at issue are already available to all counsel of record.**  In oral argument, the PSC implied that counsel for BNBM PLC, BNBM Group, CNBM Co. Ltd., and CNBM Group would not have access to the Hogan Lovells Production without a finding of alter ego amongst the Defendants.   *See* Rough Transcript at 22 ("I know they are marked highly confidential.  But there has already been an [] alter ego, single enterprise finding, and so these are, in fact, their documents.  Therefore, whatever was released to us has been given today to defense counsel for Taishan, BNBM and CNBM.").  Under PTO 16 paragraph 14, all documents marked "Highly Confidential" may be circulated to and used by outside counsel for parties in this action, as well as deponents, the Court, and other specified persons.  [Rec. Doc. 288 at ¶ 14.]   So the PSC's comments regarding alter ego determinations are completely irrelevant to use and distribution of the documents amongst counsel of record.   Taishan understands that the documents are part of discovery, and can be used for those purposes.   There is no need to use and republish the documents in an unrestricted manner, as the PSC seeks to do.

3.       **Arguments about alter ego and veil-piercing are irrelevant and premature.**  The bulk of the PSC Binder, and of the PSC's oral argument, presumes or seeks to establish a

single enterprise theory as between Taishan, the BNBM Defendants, and the CNBM Defendants.

Examples of the PSC's remarks to the effect include:

- "I'm not going to labor the Court with an argument that could last several hours – that show directly that CNBM and CNBM Group are the puppeteers and masters of BNBM and Taishan."  (Rough Transcript at 23.)

- "I don't doubt – I'm often in error, but never in doubt – but I really do not doubt that we are going to show the affiliates, *at some point when we're allowed to*, and that at the present time and in 2006, at the time that Taishan and BNBM knew that they had defective drywall and determined that they would export it to the United States, particularly to the Gulf States and Virginia and North Carolina, that CNBM was aware, BNBM was aware, and that CNBM and BNBM were the people upstairs that Taishan had to report to that they weren't going to participate in this case." (*Id.* at 24-25 (emphasis added).)

As the PSC seems to acknowledge, issues of alter ego or veil-piercing are not currently before the Court—and certainly not presented by the Motion to De-Designate.   Rhetoric about "puppeteers and masters" has no place in the determination of whether the use of internal, confidential communications about the litigation between a client and its law firm should be limited to the purposes of this litigation, as designated by Hogan Lovells.

**4.      The documents at issue aren't about product defect.**  The PSC muddied the waters by focusing on certain May 2006 email exchanges between individual employees of non-Defendant Guardian Building Products regarding product testing.  (PSC Binder, Tab 21.)  The documents behind Tab 21 were not produced by Taishan—or  any Defendant in this case—and were not marked as Confidential or Highly Confidential.[3]  They are not subject to the Motion to

---

[3] The business cards behind Tab 21 were made exhibits to the third-party deposition of John Gunn as a 30(b)(6) representative of Guardian Business Products Distribution, Inc. on July 22, 2011.  The email exchange does not appear to have been made an exhibit, although other emails involving the same individuals were.  According to PSC, the nexus between the email exchange and Taishan is Guardian Building Products' apparent possession of a BNBM Co. Ltd. business card, which as counsel for BNBM noted at oral argument, is not even consecutively numbered to show that it was produced in proximity to the emails.

De-Designate and are not at issue.  The PSC's inclusion of these documents in the PSC Binder gave the misimpression to the Court that Taishan had somehow designated the emails at Tab 21 as "Highly Confidential" and objected to their unrestricted use.  That is not the case.

The PSC further advanced this misimpression by arguing as follows:

> [T]he public [is] . . . entitled at least to know that Taishan and their Chinese puppeteers, CNBM and BNBM, knew that they were shipping material to the United States that would cause them substantial damage, and they did it anyway.  Why is that not of public interest that outrides any highly confidential documents revealed in the Taishan documents[?]

(Rough Transcript at 25.)  But the actual documents at issue—the Hogan Lovells Production— have nothing to do with product testing or alleged knowledge of defect.  The PSC's arguments to this effect are a complete red herring.

**5.      No documents in the PSC Binder are at issue other than those at Tab 26.**  The Guardian Building Products emails described above are not the only documents that the PSC included in its Binder with the implication that they are somehow subject to the pending Motion to De-Designate.   Tabs 2 through 20 are BNBM and CNBM annual reports and public announcements, which are publicly available and presumably obtained by the PSC as public records.[4]  They have not been designated by anyone as "Highly Confidential" and are not at issue in the Motion to De-Designate.  Yet  the PSC implied the opposite in arguing orally that "most of these documents were published and English and circulated by these parties.  For example, in 2006, CNBM had a public offering in – that was published, and, indeed, they attracted shareholders, potential shareholders."   The Hogan Lovells Production does not contain 2006 CNBM public offerings – it contains only attorney-client communications between attorneys and

---

[4] Note that none of the documents at Tabs 2 through 20 have Bates-numbers.

company representatives. Contrary to the misimpression embedded in the PSC's argument, they were not prepared for public consumption and were never intended to be public documents. On the contrary, they were created with the expectation of remaining privileged and confidential. Although the Court ruled that the documents are no longer privileged and ordered them to be produced to opposing parties in discovery, it does not follow that the use of the documents cannot be properly limited by PTO 16.

**6.     Neither Taishan nor Hogan Lovells ever asserted that "embarrassment" was the basis for the "Highly Confidential" designation.**  In its Response In Opposition to the PSC's Motion to Strike Hogan Lovells' Designation of Documents as Highly Confidential (Rec. No. 18574), Taishan quoted the standard for confidentiality protection both from PTO 16 and Federal Rule of Civil Procedure 26(c).  (*See* Rec. Doc. No. 18574, at 1-2.)  This recitation included the language from Rule 26(c) allowing Courts to protect discovery materials that would subject the disclosing party to "annoyance, embarrassment, oppression, or undue burden or expense."  (*Id.*)  The PSC has pounced on the Rule's use of the word "embarrassment," and projected it to the Court as the only reason that the Hogan Lovells Production were so designated.  (*See* Rough Transcript at 30 ("I don't think embarrassment by what you've done is enough to assert something is highly confidential and nonprivileged.")

Rather, Taishan has explained that these documents involve confidential communications between Taishan and Hogan Lovells. They were produced from the law firm's custody. They are highly sensitive.  If there was ever any doubt about the PSC's designs for gaining unrestricted use of these documents, it cannot remain after the PSC's announced desire to shame publicly the Chinese companies and individuals mentioned in the communications. The Motion to De-Designate should be denied.

Respectfully submitted this 22nd day of April, 2015.

/s Christina Hull Eikhoff
Bernard Taylor, Esq.
Georgia Bar No. 669625
Michael P. Kenny, Esq.
Georgia Bar No. 415064
Christina Hull Eikhoff
Georgia Bar No. 242539
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
michael.kenny@alston.com
bernard.taylor@alston.com
christy.eikhoff@alston.com
*Counsel for Taishan Gypsum Co., Ltd. and
Tai'an Taishan Plasterboard Co., Ltd.*

Alan Dean Weinberger
LA Bar No. 13331
HANGARTNER, RYDBERG & TERRELL, LLC
One Shell Square
701 Poydras St., Suite 310
New Orleans, Louisiana  70179
Phone:  (504) 434-6815
Fax: (504) 522-5689
aweinberger@hanrylaw.com
*Local Counsel for Taishan Gypsum Co., Ltd. and
Tai'an Taishan Plasterboard Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **TAISHAN'S REPLY IN CONTINUED OPPOSITION TO THE PSC'S MOTION TO STRIKE HOGAN LOVELLS' DESIGNATION OF DOCUMENTS AS HIGHLY CONFIDENTIAL** has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 22nd day of April, 2015.

/s Christina Hull Eikhoff
Christina Hull Eikhoff
Georgia Bar No. 242539
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
Christy.eikhoff@alston.com
*Counsel for Taishan*