UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

## TAISHAN GYPSUM CO., LTD.'S DISCOVERY STATUS REPORT

Pursuant to this Court's direction during the April 24, 2015 telephonic hearing, Taishan Gypsum Co., Ltd. and Tai-an Taishan Plasterboard Co. Ltd. (collectively, "Taishan") present this Discovery Status Report.

### DOCUMENT PRODUCTION

Taishan is willingly, actively and diligently participating in discovery as the Court directed in the March 17, 2015 hearing and subsequent Minute Entry and Orders (Dkt. No. 18493). The PSC served Taishan with its discovery requests on March 19, 2015. Taishan has employed multiple individuals and entities working around the clock[1] to keep the discovery moving forward.

As an initial matter, Alston & Bird reviewed all of the documents previously produced by Taishan through its prior counsel Hogan Lovells, and identified by Bates-number specific responsive documents corresponding to each of the PSC's document requests. Those identifications were provided to the PSC along with Taishan's objections and responses on April 3, 2015, approximately two weeks after service of the PSC's discovery.

---

[1] Nighttime in the U.S. is daytime in China, and vice versa.

Meanwhile, following the expedited issuance of the necessary travel visas, Alston & Bird attorneys traveled to the Tai'an, China headquarters of Taishan. Immediately upon arrival in China on April 1, 2015, counsel for Taishan initiated interviews of Taishan's leadership and company personnel for the purpose of identifying the categories of documents and the document custodians necessary to produce relevant information in response to the March 17, 2015 requests. Contrary to the PSC's mischaracterization of Taishan's willingness to participate in the discovery process and candor in doing so, Taishan has complied with our request to interview multiple individuals including the Chairman of Taishan's Board and leaders of each of its departments that might be involved with information responsive to the PSC's discovery requests. Taishan and its counsel focused on the immediate collection of all relevant hard copy documents encompassing the period between 2010 to present. Copies of these documents were hand-carried the same day by counsel for Taishan from Tai'an to Beijing for copying and scanning.

Though all of the hard copy documents collected from Taishan were in Chinese, and although counsel for Taishan had not yet had the opportunity to translate and review the documents collected, in an effort to expedite the discovery process Taishan produced each of the collected documents, totaling 2,781 pages, to the PSC on April 6, 2015.[2] Taishan subsequently re-produced one 83-page document on April 8, 2015. Further, in an effort to assist the PSC in determining which, if any, documents it wanted to fully translate from this initial discovery set, counsel for Taishan produced, on a rolling basis, English language summaries of the documents.

---

[2] At last Friday's discovery conference, PSC counsel described Taishan's production as "115 documents between 2010 and 2015: annual reports, financial statements of wholly owned subsidiaries, multiple loan agreements from various banks, loan agreement lists, shareholder meeting resolutions, AIC registration information, and a 2014 reproduced annual report." (Tr. April 24, 2015 Proceedings, at p. 11.) The PSC complained that Taishan's documents started in 2010, compared to BNBM's production that started in 2001. However, the PSC failed to note that because of Taishan's identification of previously produced documents, a production including those earlier years would have been unnecessary and duplicative. The PSC also did not report that counsel for Taishan informed the PSC that its intent was to provide all such corporate records for the requested timeframe, and invited the PSC to advise if any years or records appeared to be missing. The PSC has not so advised Taishan.

At the same time, in an effort to streamline the collection of documents, Taishan, along with Defendants BNBM and CNBM, sought the expertise of an electronic discovery ("e-discovery") vendor with experience in U.S. federal court litigation involving companies based in China. After evaluating qualified vendors, Taishan, BNBM and CNBM engaged Grant Thornton LLP ("Grant Thornton") to collect and process electronically stored information ("ESI") maintained by each respective defendant at the companies' various locations in China. Grant Thornton's U.S. representative assigned to these projects, Skip Westfall, was previously involved in the collection, processing, review and production protocols utilized by Knauf in this litigation. Mr. Westfall is known to the Court as he testified as to procedures for the collection and production of documents in the People's Republic of China. Grant Thornton was retained at the beginning of April. Grant Thornton's U.S. and China teams assigned to this case (which collectively consist of fourteen members) developed collection and data processing protocols informed by Mr. Westfall's prior experience in this litigation.

Concurrent with Taishan's efforts to identify the relevant hard copy documents and the custodians who likely have relevant information, Taishan's counsel worked diligently to coordinate with Grant Thornton for the collection of Taishan's ESI. Taishan has provided Grant Thornton with unfettered access to electronic files of each of these custodians identified by Taishan's counsel. Because Taishan does not have company email servers, each designated custodian logged in to the custodian's personal email account, gave Grant Thornton full access to that account, and allowed Grant Thornton to download all relevant email messages and attachments. In addition to the collection of email from each of the designated custodians, Grant Thornton also copied, or "imaged," each one of the custodian's computer hard drives. Grant Thornton completed the download of the Taishan custodians' email and the copying of those

3

custodians' hard drives.  China's State Secrets Act ("SSA") requires that, prior to any ESI leaving China, it must be reviewed and certified for clearance by Chinese lawyers.  Grant Thornton submitted collected ESI to a specially engaged Chinese law firm, Zhong Lun, which conducted its review on Taishan emails and certified all of them for clearance.[3]

Following the SSA clearance, as described by defense counsel at the April 24, 2015 discovery conference, Grant Thornton encountered technical difficulties in the transmittal of China-based ESI to the United States.  Data extraction and processing in China was delayed, in part, because a large volume of viruses were discovered within the datasets collected from all defendants.  These technical difficulties rendered the ESI inaccessible to Taishan's counsel in any format while Grant Thornton has worked diligently to find a technical solution.  As of April 27, 2015, it appears that the email documents collected from Taishan have successfully been processed and formatted for attorney review.  The technical difficulties created a delay such that only on April 27, 2015 was Taishan's counsel provided access to the email documents downloaded by Grant Thornton at Taishan's offices in China on April 10 and 11.  Accordingly, those documents have not been translated for review by English-speaking U.S. counsel.  To be clear, no part of this delay can be attributed to any lack of participation or cooperation by Taishan.  Alston & Bird is not, as the PSC has alleged, "being played" by its client.  We reject that accusation.

Nevertheless, in an effort to continue to demonstrate willingness and responsiveness, Tashian endeavors to begin producing these documents in both Chinese and machine-translated English versions this week.  In keeping with this Court's orders limiting the scope of discovery to "(a) which, if any, entities constitute "affiliates," and (b) whether any such affiliate(s) conducted any business in the United States subsequent to the Court's July 17, 2015 order" (Rec.

---

[3] The non-email ESI from individual hard drives is still under review in China.

Doc. No. 18757), Taishan will cull the emails to focus on emails in the date range of April 1, 2014 (approximately 3 months prior to the July 17 order) and March 9, 2015 (the date of payment of the Court's contempt fine) that are relevant to the Court's defined discovery scope.

Taishan's counsel will also remain vigilant in its efforts to complete the production of the information collected from its custodians' hard drives which has not yet been fully processed by Grant Thornton.

### DEPOSITION STATUS

The PSC initially requested the FRCP Rule 30(b)(6) depositions of Taishan as well as the individual depositions of Jia Tongchun and Peng Wenlong. For medical reasons, Jia Tongchun, the Chairman of Taishan, was unable to travel to the U.S. for deposition, but was offered to be deposed in Hong Kong.[4] Because the PSC deemed any deposition not conducted in New Orleans not feasible, Taishan subsequently identified Mr. Che Gang as its Rule 30(b)(6) witness.

At the time he was designated to serve as Taishan's 30(b)(6) witness, Mr. Che had neither a passport nor a U.S. entry visa. Through expedited process, Mr. Che has obtained his passport, has applied for a U.S. entry visa, and will obtain his visa upon completion of a visa interview in China. Assuming no unforeseen travel obstacles, Taishan's counsel expects to present Mr. Che for deposition in New Orleans in mid to late May 2015.

Dated: April 28, 2015

Respectfully submitted,

/s Bernard Taylor
Bernard Taylor, Esq.
Georgia Bar No. 669625
Michael P. Kenny, Esq.
Georgia Bar No. 415064

---

[4] It is our understanding that Peng Wenlong left the employ of Taishan in the spring of 2014.

5

Christina Hull Eikhoff
Georgia Bar No. 242539
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
bernard.taylor@alston.com
*Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*

Alan Dean Weinberger
LA Bar No. 13331
HANGARTNER, RYDBERG & TERRELL, LLC
One Shell Square
701 Poydras St., Suite 310
New Orleans, Louisiana  70179
Phone:  (504) 434-6815
Fax: (504) 522-5689
aweinberger@hanrylaw.com
*Local Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **Taishan Gypsum Co. Ltd.'s Discovery Status Report** has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 28th day of April, 2015.

   /s Bernard Taylor
Michael P. Kenny, Esq.
Georgia Bar No. 415064
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
Bernard.taylor@alston.com
*Counsel for Taishan*