**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO:<br><br>*All cases* | |

**MEMORANDUM OF BEIJING NEW BUILDING MATERIALS PUBLIC LIMITED COMPANY IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINTS PURSUANT TO RULES 12(B)(2) AND 12(B)(5)**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................. 5

    A.    BNBM PLC Never Has Conducted Business in the Forum States.................... 5

    B.    BNBM PLC Was Involved In Sales of Drywall to Only Five U.S. Customers During the Relevant Period, All of Which Took Place In China. .................................................................................................................. 5

    C.    Taishan Is Not An Alter Ego of BNBM PLC. ...................................................... 6

        1.    No Common Ownership and Control ......................................................... 6

        2.    BNBM PLC and Taishan Meet Corporate Governance Requirements ........................................................................................... 8

        3.    Taishan Is Not Undercapitalized................................................................ 8

        4.    There are No Common Officers or Employees ......................................... 9

        5.    There Are No Common Bank Accounts, Finances, Financial Controls, or Accounting Records................................................................ 9

        6.    Separate Manufacturing Plants and Separate Drywall Brands ................. 9

        7.    No Siphoning of Funds, Undocumented Transfers of Funds, or Unauthorized Withdrawal of Funds ....................................................... 10

    D.    BNBM PLC Has Not Been Served and Plaintiffs' Service Attempts Were Insufficient ...................................................................................................... 10

    E.    The Evidence Shows that BNBM PLC's Drywall Was Not Defective. .............. 11

ARGUMENT .................................................................................................................... 14

I.    PLAINTIFFS CANNOT ESTABLISH JURISDICTION OVER BNBM PLC IN THE FORUM STATES. ............................................................................................. 14

    A.    Applicable Legal Standard.................................................................................. 14

    B.    Florida's Long-Arm Statute Does Not Confer Jurisdiction Over BNBM PLC. .................................................................................................................. 15

        1.    BNBM PLC Has Not Conducted Business In Florida............................. 15

        2.    BNBM PLC Has Not Committed A Tortious Act In Florida. .................. 16

        3.    BNBM PLC's Alleged Conduct Did Not Cause Plaintiffs To Sustain An "Injury To Person Or Property" in Florida............................. 17

    C.    The Louisiana and Virginia Long-Arm Statutes Are Coextensive With Due Process........................................................................................................ 18

    D.    The Due Process Clause Precludes The Court's Exercise Of Jurisdiction Over BNBM PLC. ............................................................................................. 18

        1.    Plaintiffs Cannot Establish That BNBM PLC Had Minimum Contacts in the Forum States. ................................................................. 19

i

**TABLE OF CONTENTS**
**(Continued)**

**Page**

|   |   | a. | Fifth Circuit: Stream-of-Commerce Test...................................... 20 |

a. Fifth Circuit: Stream-of-Commerce Test...................................... 20

b. Fourth and Eleventh Circuits: Stream-Of-Commerce Plus Test..................................................................................... 22

2. Taishan's Contacts Cannot Be Attributed to BNBM PLC. ................... 24

a. Chinese Company Law Should Apply to Veil Piercing Analysis........................................................................... 24

b. BNBM PLC Is Not Taishan's Alter Ego Under Chinese Law ................................................................................... 25

c. BNBM PLC Is Not Taishan's Alter Ego Under the Laws of the Forum States. .......................................................... 28

i. Application of Forum States' Laws ................................. 28

ii. This Court's Prior Holding ................................. 30

3. Plaintiffs' Causes of Action Did Not Arise Out of BNBM PLC's Contacts With the Forum States. .............................................. 32

4. Jurisdiction Over BNBM PLC Would Not Comport With Notions of Fair Play and Substantial Justice. ........................................ 32

II. THE COMPLAINTS AGAINST BNBM PLC SHOULD BE DISMISSED UNDER RULE 12(B)(5) BECAUSE BNBM PLC HAS NOT BEEN SERVED WITH PROCESS................................................................ 34

CONCLUSION......................................................................... 36

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AESP, Inc. v. Signamax, LLC*,
    29 F. Supp. 3d 683 (E.D.Va. 2014) ...................................................................23

*Aetna Life & Cas. CO. v. Therm-O-Disc, Inc.*,
    511 So. 2d 992 (Fla. 1987)................................................................................17

*Am. Investors Life Ins. Co. v. Webb Life Ins. Agency, Inc.*,
    876 F. Supp. 1278 (S.D. Fla. 1995) ...................................................................15

*Asahi Metal Indus. v. Superior Court*,
    480 U.S. 115 (1987)...................................................................................22, 34

*Bearry v. Beech Aircraft Corp.*,
    818 F.2d 370 (5th Cir. 1987) .............................................................................20

*Becerra v. Asher*,
    105 F.3d 1042 (5th Cir. 1997) .......................................................................3, 31

*Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*,
    841 F.2d 646 (5th Cir. 1998) .............................................................................34

*Blumberg v. Weiss & Co.*,
    922 So. 2d 361 (Fla. 3d DCA 2006) ...................................................................17

*BP Products N. Am., Inc. v. Dagra*,
    236 F.R.D. 270 (E.D. Va. 2006) .........................................................................35

*Bujol v. Entergy Sys., Inc.*,
    922 So. 2d 1113 (La. 2004) ...............................................................................29

*Bullard Abrasives, Inc. v. Taiwan Resibon Abrasive Products Co.*,
    No. 8:09-CV-199, 2009 WL 1659304 (M.D.Fla. June 15, 2009) .........................23

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)...........................................................................19, 32, 33

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*,
    334 F.3d 390 (4th Cir. 2003) .............................................................................14

*In re Celotex Corp.*,
    124 F.3d 619 (4th Cir. 1997) .............................................................................23

*Central Va. Aviation, Inc. v. N. Am. Flight Servs., Inc.*,
  23 F. Supp. 3d 625 (E.D. Va. 2014) ......................................................................23

*Chung v. Nana Dev. Corp.*,
  783 F.2d 1124 (4th Cir. 1986) .............................................................................23

*Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.*,
  963 F.2d 90 (5th Cir. 1992) ...............................................................................20

*Consulting Eng'rs Corp. v. Geometric Ltd.*,
  561 F.3d 273 (4th Cir. 2009) .............................................................14, 18, 19, 32

*De Reyes v. Marine Mgmt. & Consulting, Ltd.*,
  586 So. 2d 103 (La. 1991) ..................................................................................19

*Earl Realty, Inc. v. Leonetti (In re Leonetti)*,
  28 B.R. 1003 (E.D. Pa. 1983) ............................................................................31

*Enic. PLC v. F.F. S. & Co., Inc.*,
  870 So.2d 888 (Fla. Dist. Ct. App. 2004) ...........................................................29

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
  462 U.S. 611 (1983)...........................................................................................24

*Foster, Pepper & Riviera v. Hansard*,
  611 So.2d 581 (Fla. App. 1 Dist. 1992) ..............................................................15

*Fricke v. Owens-Corning Fiberglass Corp.*,
  647 So. 2d 1260 (La. App. 4th Cir. 1994) ......................................................19, 22

*Gatekeeper Inc. v. Stratech Sys., Ltd.*,
  718 F. Supp. 2d 664 (E.D. Va. 2010) ..................................................................19

*General Cigar Holdings, Inc. v. Altadis, S.A.*,
  205 F. Supp. 2d 1335 (S.D.Fla. 2002) ................................................................17

*Goldrick v. D.M. Picton Co.*,
  56 F.R.D. 639 (E.D.Va. 1971) ...........................................................................29

*Green v. Champion Ins. Co.*,
  577 So.2d 249 (La. Ct. App. 1991).....................................................................30

*Gurung v. Malhotra*,
  279 F.R.D. 215 (S.D.N.Y. 2011) ........................................................................35

*Hanson v. Denckla*,
  357 U.S. 235 (1958)...........................................................................................20

*High Island Health, LLC v. Libertybelle Mktg. Ltd.*,
  No. CIV A H-06-2931, 2007 WL 1173631 (S.D. Tex. Apr. 18, 2007) ..................................34

*Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*,
  421 F.3d 1162 (11th Cir. 2005) ...........................................................................................16

*Hunt v. Schult Homes Corp.*,
  657 So. 2d 124 (La. App. 3d Cir. 1995) ....................................................................19, 21, 22

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945)..............................................................................................18, 20, 32

*Jackson v. FIE Corp.*,
  302 F.3d 515 (5th Cir. 2002) ................................................................................................4

*Jackson v. Tanfoglio Giuseppe, S.R.L.*,
  615 F.3d 579 (5th Cir. 2010) ..............................................................................................24

*Johnston v. Multidata Systems International Corp.*,
  523 F.3d 602 (5th Cir. 2008) ..............................................................................................21

*Joseph v. Chanin*,
  869 So.2d 738 (Fla. App. 4 Dist. 2004) ..............................................................................16

*Kelly v. Syria Shell Petroleum Dev. B.V.*,
  213 F.3d 841 (5th Cir. 2000) ..............................................................................................20

*Lesnick v. Hollingsworth & Vose Co.*,
  35 F.3d 939 (4th Cir. 1994) ...........................................................................................22, 23

*Lewis v. Pine Belt Multipurpose Comm. Action Acquisition Agency, Inc.*,
  138 So. 3d 776 (La. Ct. App. 2014).....................................................................................22

*Long v. Chevron Corp.*,
  No. 4:11-CV-0047, 2011 WL 3903066 (E.D. Va. Sept. 2, 2011) .............................19, 28, 29

*Lyons v. Swift Transp. Co., Inc.*,
  No. 01-CV-0209, 2001 WL 1153001 (E.D. La. Sept. 26, 2001)...........................................14

*Madara v. Hall*,
  916 F.2d 1510 (11th Cir. 1990) ..........................................................................................19

*McCarthy v. Giron*,
  No. 1:13-CV-01559-GBL, 2014 WL 2696660 (E.D. Va. June 6, 2014)................................24

*McGuire v. Sigma Coatings, Inc.*,
  48 F.3d 902 (5th Cir. 1995) ................................................................................................34

*Melgarejo v. Pycsa Panama, S.A.*,
    537 Fed. App. 852 (11th Cir. 2013)......................................................................16

*Morales v. Bayou Concessions Salvage, Inc.*,
    No. 03-657, 2004 WL 2381525 (E.D. La. Oct. 2004) ..........................................30

*Mukamal v. Bakes*,
    378 F. App'x 890 (11th Cir. 2010) ......................................................................24

*Mylan Labs., Inc. v. Akzo, N.V.*,
    2 F.3d 56 (4th Cir.1993) ......................................................................................14

*Nicastro v. J. McIntyre Machinery, Ltd.*,
    131 S.Ct. 2780 (2011)..........................................................................21, 22, 23

*Oldfield v. Pueblo De Bahia Lora, S.A.*,
    558 F.3d 1210 (11th Cir. 2009) ................................................................19, 20, 32

*Patin v. Thoroughbred Power Boats, Inc.*,
    294 F.3d 640 (5th Cir. 2002) ..............................................................................24

*Petroleum Helicopters, Inc. v. Avco Corp.*,
    513 So. 2d 1188 (La. 1987) ................................................................................18

*Polskie Linie Oceaniczne v. Seasafe Transport A/S*,
    795 F.2d 968 (11th Cir. 1986) ......................................................................14, 18

*Prejean v. Sonatrach, Inc.*,
    652 F.2d 1260 (5th Cir. 1981) ......................................................................20, 32

*Reiss v. Ocean World, S.A.*,
    11 So.3d 404 (Fla. 4 Dist. Ct. App. 2009) ..........................................................16

*Riberglass, Inc. v. Techni-Glass Indus., Inc.*,
    811 F.2d 565 (11th Cir. 1987) ............................................................................31

*Riggins v. Dixie Shoring Co.*,
    590 S. 2d 1164 (La. 1991) ......................................................................28, 29, 30

*Rio Properties, Inc. v. Rio Int'l Interlink*,
    284 F.3d 1007 (9th Cir. 2002) ............................................................................35

*S.E.C. v. Tome*,
    833 F.2d 1086 (2d Cir. 1987)..............................................................................35

*Saudi v. Northrop Grumman Corp.*,
    427 F.3d 271 (4th Cir. 2005) ..............................................................................28

*Seiferth v. Helicopteros Atuneros, Inc.*,
    472 F.3d 266 (5th Cir. 2006) ...............................................................................14, 32

*Seiko Epson Corp. v. Glory S. Software Mfg., Inc.*,
    No. 06-CV-236-BR, 2007 WL 282145 (D. Or. Jan. 24, 2007) ...............................35

*Stuart v. Spademan*,
    772 F.2d 1185 (5th Cir. 1985) .....................................................................................14

*Thomas v. Brown*,
    No. 11-62261, 2012 WL 987760 (S.D.Fla. Mar. 22, 2012)................................22, 23

*Town of Haynesville, Inc. v. Entergy Corp.*,
    956 So. 2d 192 (La. Ct. App. 2007)...............................................................29, 31

*United Techs. Corp. v. Mazer*,
    556 F.3d 1260 (11th Cir. 2009) .....................................................................................14

*Unspam Techs., Inc. v. Chernuk*,
    716 F.3d 322 (4th Cir. 2013) ...............................................................................19, 22

*Vermeulen v. Renault, U.S.A., Inc.*,
    985 F.2d 1534 (11th Cir. 1993) .....................................................................................22

*In re Vioxx Product Liability Litigation*,
    478 F. Supp. 2d 897 (E.D. La. 2007)...........................................................................24

*Williams Elec. Co. v. Honeywell, Inc.*,
    854 F.2d 389 (11th Cir. 1988) .....................................................................................17

*Williams v. AES Corp.*,
    28 F. Supp. 3d 553 (E.D. Va. 2014) ...........................................................................29

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980).....................................................................................................21

*Yates v. Motivation Indus. Equipment Ltd.*,
    38 Fed. Appx. 174 (4th Cir. 2002).............................................................................23

*Young v. New Haven Advocate*,
    315 F.3d 256 (4th Cir. 2002) .....................................................................................18

**Statutes**

Ala. Code § 10A-1-1.03(46)(A)..........................................................................................24

Fla. Stat. Ann. § 48.193 ...............................................................................15, 16, 17, 18

Fla. Stat. § 607.1505(3)....................................................................................................24

La. Rev. Stat. § 13:3201(A)(4) (2001) .......................................................................18

Va. Code Ann. § 8.01-328.1 .....................................................................................18

**Other Authorities**

Fed. R. Civ. P. 4(f)(3) ...............................................................................................35

Fed. R. Civ. P. 12 ...........................................................................................1, 3, 14, 34

Fed. R. Civ. P. 36 ...................................................................................................3, 31

Defendant Beijing New Building Materials Public Limited Company ("BNBM PLC") respectfully submits this memorandum in support of its Motion pursuant to Rules 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure for an order dismissing the complaints against it for lack of personal jurisdiction and failure of service.

## INTRODUCTION

BNBM PLC moves to dismiss the complaints against it because it does not have sufficient minimum contacts with the forum states to meet their statutory requirements or to satisfy due process. The complaints do not allege, and no evidence has been proffered, that BNBM PLC regularly marketed or sold drywall in Louisiana, Virginia, or Florida (collectively the "forum states"), or that the company placed products into the stream of commerce with the expectation that they would be purchased or used by consumers in the forum states. BNBM PLC has not marketed drywall to the forum states, sold drywall in them, exported drywall to them, or conducted other business that would subject it to long-arm jurisdiction. It does not do business in the forum states, solicit business in the forum states, have offices in the forum states, or manufacture in the forum states. During the relevant period BNBM PLC made only eight or nine sales of its own manufactured and branded drywall to five American customers. All of the contacts were initiated by the American purchasers. In each instance the U.S. company, facing a shortage of domestic drywall, solicited BNBM PLC to purchase available drywall. The Americans took delivery of the drywall in China.

These are not sufficient minimum contacts with Louisiana, Florida, or Virginia to establish jurisdiction. BNBM PLC did nothing to avail itself of the privilege of doing business in those states. Nor did BNBM PLC injure forum state plaintiffs by placing its drywall in the stream of commerce, which is an obvious element for the commission of a tort and thus

necessary to assert jurisdiction over a party in a tort case.  The Consumer Product Safety
Commission tested BNBM PLC drywall from 2006, obtained in America, and found that it did
not have the high levels of sulfur emissions found in other drywall manufactured in China—
sulfur emissions being the only identified alleged cause of damages.  As the CPSC found, some
Chinese manufactured drywall it tested had high levels of emissions, but "[o]ther Chinese
drywall samples had low or no detectable emissions of hydrogen sulfide as did the drywall
samples tested that were manufactured domestically.  They include . . . Dragon Brand, Beijing
New Building Materials Co. Ltd.: (2006) China."

     The plaintiffs' expert in the *Germano* case did not analyze any BNBM PLC drywall.  Nor
do the complaints in the cases pending before the Court allege any testing of BNBM PLC
drywall.  Indeed, the plaintiffs have confirmed they did no testing of BNBM PLC drywall that
found the drywall defective.  In response to BNBM PLC's first requests for the production of all
documents relating to the testing of BNBM PLC drywall, the plaintiffs answered that the
"request seeks information in the public domain and in Court records, such as reports from the
Consumer Product Safety Commission and expert opinions."   Neither the CPSC report nor the
report filed by plaintiffs' expert witness found the BNBM PLC drywall defective.

     The Court has not made factual findings that would permit it to exercise jurisdiction over
BNBM PLC.[1]  There is no evidence that would allow this Court to impute Taishan's forum
contacts to BNBM PLC.  BNBM PLC is an investor in Taishan, not an alter ego.  BNBM PLC
did not incorporate or form Taishan.  Rather, BNBM PLC paid fair value in two arms-length
transactions to acquire 65% of the already successful company's shares.  BNBM PLC's 65%

---

[1] Although the Court made such jurisdictional findings, following discovery, with respect to
Taishan Gypsum Co. and its subsidiary Ti'an Taishan Plasterboard Co., Ltd. (collectively,
"Taishan"), it did not make equivalent factual findings with respect to BNBM PLC.

interest does not give it unilateral control, and its interest is short of the supermajority required for significant votes. Taishan operates independently and with separate management. The two companies have entirely separate finances, assets, and liabilities. They make and market different drywall under different brands. Neither is the other's agent and neither signs or fulfills the other's contracts. There are no indicia that the two companies are alter egos. BNBM PLC is an equity investor in Taishan with no more rights and privileges than a majority equity investor ordinarily would have.

Nor can Taishan's contacts with the forum states be imputed to BNBM PLC based on this Court's finding in its order certifying the plaintiff class that Taishan and BNBM PLC (and others) constitute "a single business enterprise for purposes of . . . holding each of these entities liable for the conduct of their affiliated entities." (Rec. Doc. 18028, at 12-20). That finding was made on an uncontested record, and relied on Rule 36 Requests for Admissions made to Taishan which the Court deemed admitted when Taishan failed to respond. *Id.* No requests for admission were made to or served on BNBM PLC, and Taishan's deemed admissions cannot be used against BNBM PLC under binding Fifth Circuit law. *See Becerra v. Asher*, 105 F.3d 1042, 1045 (5th Cir. 1997), as supplemented on denial of reh'g (Apr. 7, 1997). Indeed, the declarations submitted with this Motion confirm that the vast majority of those deemed admissions are not in fact true.

The Court also lacks jurisdiction over BNBM PLC because it was never served with process in any of the cases. The failure of service is an independent basis to dismiss the complaints under Rule 12(b)(5). Adequate attempts to serve BNBM PLC were not made. There is no dispute that BNBM PLC never received service. The proofs of service submitted by

plaintiffs demonstrate that they did not make sufficient efforts to serve BNBM PLC, and in the *Gross* and *Wiltz* cases instead attempted to serve a different entity.

Neither the testing performed by the highly-regarded Lawrence Berkley National Laboratories nor by plaintiffs' expert found BNBM PLC drywall used in the United States to be defective. Without injury, there can be no personal jurisdiction. Nor did BNBM PLC regularly do business in the forum states or seek business there. It did not market its drywall there, and it is not an alter ego of others who may have. It sold the drywall it manufactured to five customers who initiated contact and came to China to negotiate and perform the contracts. BNBM PLC therefore cannot be said to have purposefully availed itself of the forum states. It has not been served with process and only minimal efforts were made to serve process.

For the reasons described in this brief and the motion to vacate defaults filed contemporaneously, BNBM PLC did not believe it was a proper defendant in these actions, and therefore did not previously participate in these cases. In any event, controlling authority from the Court of Appeals for the Fifth Circuit establishes that this Motion is timely and the preliminary defaults entered against BNBM PLC is void if the Court lacks jurisdiction. *Jackson v. FIE Corp.*, 302 F.3d 515, 523 (5th Cir. 2002). BNBM PLC is not seeking to delay the MDL proceeding by this Motion, but rather is only appropriately proceeding in the exercise of its due process rights. Accordingly, BNBM PLC respectfully requests the Court to dismiss the complaints against it under Rule 12.

## FACTUAL BACKGROUND

**A.    BNBM PLC Never Has Conducted Business in the Forum States.**

BNBM PLC is a Chinese company that manufactures building materials, including drywall, in China.[2]  BNBM PLC does not conduct any business in the forum states, and never has.  Some of the facts showing that BNBM PLC has never conducted business in the forum states include:

- BNBM PLC has never registered to do business in the U.S., Cai Decl. ¶ 3;

- BNBM PLC has never had offices or employees based in the U.S., *id.*;

- BNBM PLC has never paid taxes in the U.S., *id.*;

- BNBM PLC has never owned or leased property in the U.S., *id.*;

- BNBM PLC has never marketed or advertised its drywall in the U.S., *id.* ¶ 4;

- No BNBM PLC sales representative has traveled to the U.S. to market or sell BNBM PLC drywall, *id.* ¶;

- No BNBM PLC employee has visited the forum states for purposes of conducting BNBM PLC business there, *id.*; and

- No BNBM PLC sales representative has initiated contact with American companies to sell BNBM PLC products, *id.* ¶¶ 5-7.

**B.    BNBM PLC Was Involved In Sales of Drywall to Only Five U.S. Customers During the Relevant Period, All of Which Took Place In China.**

During the relevant period, BNBM PLC made sales of drywall to only five United States customers.  Cai Decl. ¶¶ 5, 10(a)-(f).  Between November 2005 and July 2006, these five customers came to China, met with BNBM PLC, and purchased drywall manufactured by BNBM PLC.  *Id.*  In each instance, the drywall purchases were initiated by a United States

---

[2]  Declaration of Kai Cai, dated April 17, 2015, at paragraph 2 (the "Cai Decl.", attached as **Exhibit 1**).

customer contacting BNBM PLC and visiting the company in China.  *Id.* ¶ 6.  No BNBM PLC employee visited the United States in connection with any of these sales, all of which were negotiated exclusively in China.  *Id.* ¶ 7, 10(a)-(e).  The contracts of sale were negotiated and performed in China.  *Id.* ¶¶ 6, 10(a)-(f).  The customers took possession of the drywall in China. *Id.* ¶¶ 10(a)-(f).  BNBM PLC had no involvement with any other sales of drywall or the sales of any other brand of drywall.  *Id.* ¶¶ 11, 12.

Four of the five customers—EAC & Son's Corp, Wood Nation Inc., Triorient Trading Company and Davis Construction Supply, LLC—designated the destination for shipment of the drywall as Florida.  Cai Decl. ¶¶ 10 (a), 10(c)-(e).  None of these four customers informed BNBM PLC where they intended to use the purchased drywall.  *Id.*  Three of these four companies reside in Florida.  *Id.*  The remaining customer had the drywall shipped to California, where it resided.  *Id.* ¶ 10(b).  No drywall was shipped by BNBM PLC to Louisiana or Virginia. *Id.* ¶ 12. Since mid-2006, BNBM PLC has made no drywall sales to American customers.  *Id.* ¶¶ 5, 12.

### C.   Taishan Is Not An Alter Ego of BNBM PLC.

BNBM PLC and its subsidiary Taishan Gypsum, Ltd. ("Taishan") are separate corporate entities.  Taishan is not an alter ego of BNBM PLC under either Chinese law (which governs) or the law of the forum states.  None of the indicia of an alter ego relationship are present here.

#### 1.   No Common Ownership and Control

Taishan is not a "one-person limited liability company."[3]  Nor did BNBM PLC create or incorporate Taishan; rather, BNBM PLC acquired its position in Taishan in two separate, arms-

---

[3]   One person limited liability companies are the focus of the declarations previously filed by the PSC's three Chinese legal experts with respect to the Taishan cases.  *See* Affidavit of Liu Junhai, date May 4, 2012 (Rec. Doc. 14203-1), at paragraphs 57-70 (the "Junhai Aff."); Declaration of

length transactions, and paid fair value subject to a third-party audit and asset valuation process.[4]

In 2005, BNBM PLC acquired a 42% equity interest in Taishan through subscription of new

shares issued by Taishan. Yang Decl. ¶ 8.  In 2006, BNBM PLC acquired an additional 23%

equity interest in Taishan through an indirect equity purchase. *Id.*  Combined, BNBM PLC owns

a 65% equity interest in Taishan; the other 35% is owned by other investors. *Id.*  BNBM PLC's

65% ownership interest is not accidental: Taishan bargained for BNBM PLC to purchase less

than a two-thirds ownership interest so that it "would not have the right to make decisions on

important matters"—a limit on the ownership percentage designed to ensure Taishan would

operate independently.[5]

---

Bing Cheng, dated May 3, 2012 (Rec. Doc. 14203-2), at paragraphs 18-23 (the "Cheng Decl."); Declaration of James V. Feinerman, dated May 7, 2012 (Rec. Doc. 14203-3), at paragraphs 12, 13 & 16-23 (the "Feinerman Decl.").

[4]   Declaration of Yanjun Yang, dated April 16, 2015, at paragraph 8 (the "Yang Decl.," attached as **Exhibit 2**); Declaration of Yu Chen, dated April 16, 2013, at paragraph 24 (the "Chen Decl.," attached as **Exhibit 3**); BNBM PLC Board Resolution (20050422), attached as **Exhibit 4** ("Beijing Zhongzheng Appraisal Co., Ltd. qualified for guarantees appraised Shandong Taihe Dongxin Co., Ltd. and issued ZZA Bao Zi [2005] No.010 Assets Appraisal Report to show that the appraised net assets of Shandong Taihe Dongxin Co., Ltd. is 14,687.65 Yuan in the appraisal base date of Mar. 31, 2005, and the net asset per stock is 1.77 Yuan.  All parties reached an agreement on the basis of the appraisal result above and purchased new stocks of Shandong Taihe Dongxin Co., Ltd, with price of $1.8 Yuan per stock."); BNBM PLC Board Resolution (20060828), attached as **Exhibit 5** ("In accordance with the equity transfer agreement, the company purchased 100% equity of Taian Donglian Investment & Trade Co., Ltd. from Liu Huan and Jiao Wenbo with cash of 114.54 million Yuan");  Equity Purchase Announcement (20080828), attached as **Exhibit 6** ("Beijing Xinghua Public Certified Accountants Co., Ltd. with the securities business qualifications conducted an audit . . . .  As of June 30, 2006, the audited total assets of Donglian Company were RMB88.0413mn and its audited net assets were RMB78.6857mn. Zhongshang Assets Appraisal Co., Ltd. with the securities business qualifications conducted an appraisal . . . .  With June 30, 2006 as the appraisal reference date, the appraised total assets of Donglian Company were RMB117.097mn and its appraised net assets were RMB107.7414mn.").

[5]   Transcript of the deposition of Tongchun Jia, Jan. 9, 2012, at 595:17-597:18 (the "Jia Tr.," relevant pages attached as **Exhibit 7**).

BNBM PLC and Taishan are operated independently and have no control over one another.  In particular, BNBM PLC does not exercise management or operational control over Taishan.  Chen Decl. ¶ 9.

2.    BNBM PLC and Taishan Meet Corporate Governance Requirements

BNBM PLC and Taishan comply with all corporate governance requirements of Chinese law.  BNBM PLC conducts periodic meetings of the board of directors and stockholders, and obtains required corporate authorizations for major transactions. Chen Decl. ¶ 5.  At least since BNBM PLC's acquisition of its interest in Taishan, Taishan has complied with all corporate legal requirements under Chinese law, including shareholder and board of directors meetings and obtaining corporate authorizations for major transactions.  *Id.* ¶ 11.

3.    Taishan Is Not Undercapitalized

Taishan is not undercapitalized.  Taishan had net profits of RMB 1,020,505,550  in 2014 and RMB 978,569,269 in 2013.[6]  At least from the time BNBM PLC acquired its interest in Taishan, Taishan has been adequately capitalized and has had sufficient funding for its operations.[7]  BNBM PLC has never financed Taishan's operations by providing non-repayable funds.  Yang Decl. ¶ 10.  BNBM PLC has never paid debts for Taishan.  *Id.* ¶ 18.  BNBM PLC has never paid Taishan's expenses.  Chen Decl. ¶ 12, 13.  BNBM PLC has never paid Taishan's

---

[6]   BNBM PLC Annual Report 2014 at 22 (relevant excerpts attached as **Exhibit 8**); BNBM PLC Annual Report 2013 at 20 (relevant excerpts attached as **Exhibit 9**).

[7]   Yang Decl. ¶ 9; BNBM PLC Annual Report 2006 at 28-29 (relevant excerpts attached as **Exhibit 10**); BNBM PLC Annual Report 2007 at 28 (relevant excerpts attached as **Exhibit 11**); BNBM PLC Annual Report 2008 at 32 (relevant excerpts are attached as **Exhibit 12**); BNBM PLC Annual Report 2009 at 26-27 (relevant excerpts attached as **Exhibit 13**); BNBM PLC Annual Report 2010 at 26 (relevant excerpts attached as **Exhibit 14**); BNBM PLC Annual Report 2011 at 26 (relevant excerpts attached as **Exhibit 15**); BNBM PLC Annual Report 2012 at 18-19 (relevant excerpts attached as **Exhibit 16**); Ex. 8, BNBM PLC Annual Report 2014 at 22; Ex. 9, BNBM PLC Annual Report 2013 at 20.

losses.  *Id.* ¶ 13.  In the course of these cases, plaintiffs have never proffered evidence that

Taishan is undercapitalized.

### 4.   There are No Common Officers or Employees

Taishan and BNBM PLC are not integrated in any way.  They are managed and operated

independently.  Chen Decl. ¶ 9.  With one exception, BNBM PLC and Taishan have never had

overlapping officers or employees.[8]  Production staff, secretarial staff, sales and marketing staff,

procurement staff, and management teams are all separate.  *Id.* ¶¶ 14, 16, 20, 21 & 23.

### 5.   There Are No Common Bank Accounts, Finances, Financial Controls, or Accounting Records

Taishan's finances, financial controls, and accounting functions operate independently of

BNBM PLC.  Yang Decl. ¶¶ 11-16.  Each company is responsible for its own debts, liabilities,

and losses.  Chen Decl. ¶¶  12, 13, 15, 22.  They manage and use their assets separately.  *Id.* ¶ 25.

They have never had joint bank accounts.  Yang Decl. ¶ 11.  They have never had common

accounting books.  *Id.* ¶ 12.  Each prepares independent financial statements, separately audited

by a third-party accounting firm that is independent of Taishan and BNBM PLC.  *Id.* ¶¶ 16, 17.

Each prepares and files separate tax returns.  *Id.* ¶ 16.  Taishan and BNBM PLC are entirely

financially independent from one another.  As required by Chinese law and accounting

standards, they appear together on consolidated financial statements; but of course there are

consolidated financial statements across the Fortune 100.

### 6.   Separate Manufacturing Plants and Separate Drywall Brands

BNBM PLC and Taishan maintain separate manufacturing facilities and separate offices.

Chen Decl. ¶¶ 14, 16.  They are not joint venture partners in drywall production plants. Ex. 7, Jia

---

[8]   Chen Decl. ¶ 10.  The exception is Taishan Chairman Tongchun Jia, who held the title of
"Deputy General Manager" at BNBM PLC from August, 2005 until September, 2012, but who
had no actual duties or responsibilities in that position.  *Id.*

Tr. 748:4-10.  They do not "share any plants, factories or production lines."  Ex. 7, Jia Tr. 196:10-19 (Apr. 4, 2011).  Each manufactures products under their own brand names. Chen Decl. ¶ 17.  Neither has acted to fulfill the other's contracts.  *Id*. ¶ 15.  Each procures their own contracts.  *Id*. ¶ 20.  The drywall sold by BNBM PLC to American purchasers in 2005 and 2006 was made by BNBM PLC.  Cai Decl. ¶ 10.  BNBM PLC has never been authorized to act as an agent of Taishan and has never procured business for Taishan.  Chen Decl. ¶¶ 19, 20.

7.     No Siphoning of Funds, Undocumented Transfers of Funds, or
       Unauthorized Withdrawal of Funds

BNBM PLC and Taishan manage and use their assets separately.  Chen Decl. ¶ 25.  Neither can access the other's bank accounts.  Yang Decl. ¶¶ 14, 15.  There have never been undocumented transfers of funds.  *Id*. ¶ 13.  The plaintiffs have not, and cannot, proffer any evidence that the finances of BNBM PLC and Taishan are intertwined or that either makes use of the other's funds or assets.

**D.     BNBM PLC Has Not Been Served and Plaintiffs' Service Attempts Were Insufficient**

It is undisputed that Plaintiffs have not actually served BNBM PLC.  Instead, Plaintiffs have submitted proofs of service attesting that service was attempted and refused.  In *Gross* and *Wiltz*, there was only one effort to serve; in *Amorin*, two.  The proofs of service also show that no proper attempt to serve BNBM PLC was made in either the *Gross* or the *Wiltz* cases on the only days that plaintiffs tried to serve process.

For example, the *Gross* plaintiffs claim that they attempted to serve BNBM PLC on February 25, 2010 (about five months after they filed their amended complaint), and that service was rejected.  (Rec. Docs. 5621-1, 6970-3).  To support their claim of an adequate attempt to serve BNBM PLC, the *Gross* plaintiffs proffered two proofs of service that describes attempts at

10

service on February 25, 2010, one with the recipient of service identified as "Beijing New Building Material (Group) Co., Ltd. (CNBM Group)" and "Beijing New Building Material (Group) Co., Ltd (BNBW)."  According to the affidavit, the reason given for refusal was "wrong company name and address."[9]  If these proofs of service are accurate, then the *Gross* plaintiffs in fact did not properly attempt service of the summons and complaint on BNBM PLC.

Similarly, according to the *Wiltz* plaintiffs they attempted to serve BNBM PLC on August 25, 2010 (also about five months after they filed suit) by serving "Beijing New Building Material (Group) Co., Ltd. (BNBW)."  Having again delivered the summons and complaint to a different and independent company, service was refused.[10]  No other attempt to serve BNBM PLC is described by the *Wiltz* plaintiffs.

The *Amorin* plaintiffs submitted no evidence of their attempts to serve BNBM PLC when they moved for a default, instead supporting the motion with a statement in an exhibit to the default motion.[11]

### E.    The Evidence Shows that BNBM PLC's Drywall Was Not Defective.

BNBM PLC did not injure anyone in the forum states because the drywall it manufactured and shipped to America in 2005 and 2006 was not defective.  The Consumer Products Safety Commission commissioned the Lawrence Berkley National Laboratory to test

---

[9]   Exhibit A to *Gross* Motion for Preliminary Default Judgment at 88-93 (Rec. Doc. 5621-3); Exhibit X to *Gross* Declaration (Rec. Doc. 7446-6).  BNBM Group was at one time the parent corporation of BNBM PLC, but it divested its interest in BNBM PLC in 2005.  Declaration of Yanming Zhao, dated March 16, 2015, at paragraph 7 (the "Zhao Decl.," attached as **Exhibit 17**).  BNBM PLC operates independently of BNBM Group.  Zhao Decl. ¶ 6.

[10]   Exhibit A to Wiltz Plaintiffs' Omnibus Motion for Preliminary Default Judgment (Rec. Doc. 6974-3); Exhibit A to Wiltz Plaintiffs' Supplemental Declaration (Rec. Doc. 7410-3).

[11]   *See* Exhibit C, Amorin Plaintiffs' Fourth Omnibus Motion for Preliminary Default Judgment, (Rec. Doc. 17378-4).

30 brands of imported drywall used in the U.S. market for reactive sulfur gas emissions.[12] The testing of a 2006 sample of BNBM PLC drywall obtained in America showed hydrogen sulfide emissions of 2.45 µg-S/m2/h, on par with North American drywall (whose hydrogen sulfide emissions ranged from 0.00 - 4.00 µg-S/m2/h), and sulfur dioxide emissions of 4.37 µg-S/m2/h, again consistent with North American drywall (which ranged from 0.00 to 4.99). [13] "Other Chinese drywall samples had low or no detectable emissions of hydrogen sulfide as did the drywall samples tested that were manufactured domestically," the CPSC observed.  "They include . . . Dragon Brand, Beijing New Building Materials Co. Ltd.: (2006) China."[14]

The plaintiffs have offered no expert reports showing that that the BNBM PLC drywall was defective.  The only PSC expert who tested the sulfur content of any drywall is Lori Streit.  But Dr. Streit's report, written well prior to the CPSC investigation, shows that she tested only Taishan drywall and did not test any drywall manufactured by BNBM PLC.[15]  From Taishan samples taken from eight neighboring Virginia houses, she extrapolated conclusions about "Chinese drywall."[16]  Dr. Streit has provided no testing or analysis of BNBM PLC drywall, and she has not provided the results of any brand-by-brand testing or comparisons, which she may have performed, if any.  She relied on over a dozen or more papers and reports, but none of them

---

[12]   *See* Memorandum from Joanna Matheson, Ph.D., Toxicologist, Directorate for Health Sciences (Jan. 3, 2011),  http://www.cpsc.gov/PageFiles/99196/lblreport.pdf (attached as **Exhibit 18**).

[13]   *Id* at 41.  The relevant sample on this chart is 09-810-7078.  *See* Draft Emission Factor Results (µg/m²/h) from Lawrence Berkeley National Laboratories Chamber Testing (May 27, 2010), http://www.cpsc.gov//PageFiles/114656/LBNLsulfur.pdf (attached as **Exhibit 19**).

[14]   *See CPSC Identifies Manufacturers of Problem Drywall Made in China*, CPSC Release No. 10-243 (May 25, 2010), http://www.cpsc.gov/en/Newsroom/News-Releases/2010/CPSC-Identifies-Manufacturers-of-Problem-Drywall-Made-in-China/ (attached as **Exhibit 20**).

[15]  Pls.' Trial Ex. P1.2023, *Germano et al. v. Taishan Gypsum Co., et al.* (09-6687), Expert Report of Dr. Lori Streit, Ph.D. (Dec. 28, 2009), at 8-9 & App. III.

[16] *Id.* at 11.

reflect that their authors tested BNBM PLC drywall either (the only brand identified in those reports is Knauf).[17]   Dr. Streit's flawed methodology is exposed by the CPSC testing, which demonstrated enormous differences between emissions from different samples of drywall manufactured in China.[18]   As the Department of Housing and Urban Development has reported to Congress, "not all drywall from China is problematic."[19]   Based on "information from the CPSC, a problem is associated with about 43 percent of drywall imported from China."[20]   Less than half of Chinese drywall distributed in America in 2005 and 2006 was defective—and the BNBM PLC manufactured drywall tested by the CPSC was not in the defective minority.

The plaintiffs have confirmed they did no testing of BNBM PLC drywall that found the drywall defective.  BNBM PLC sought discovery of all documents relating to the testing of BNBM PLC drywall. The plaintiffs have answered that the "request seeks information in the public domain and in Court records, such as reports from the Consumer Product Safety Commission and expert opinions."[21]   Neither the CPSC report nor the report filed by plaintiff's expert witness found the BNBM PLC drywall defective.

---

[17] *See id.* at 8-9, 13.

[18] *Id.* at Exhibit 3.

[19]   United States Department of Housing and Urban Development, *Study of the Possible Effect of Problem Drywall Presence on Foreclosures*, Report to Congress (July 17, 2012) at 4, http://cpsc.gov/PageFiles/161357/StudyofthePossibleEffectsofProblemDrywallPresenceonForeclosures.pdf (attached as **Exhibit 21**).

[20] *Id.* at 9.

[21]   A copy of the Plaintiffs' Responses is attached as **Exhibit 24**.  The response in question is the response to Request No. 2, at page 3. *See also* the response to Request No. 4.

## ARGUMENT

### I.     PLAINTIFFS CANNOT ESTABLISH JURISDICTION OVER BNBM PLC IN THE FORUM STATES.

#### A.     Applicable Legal Standard

Rule 12(b)(2) of the Federal Rules of Civil Procedure provides that a party may move to request the court to dismiss a complaint when the court lacks personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  When a defendant challenges the court's personal jurisdiction, the plaintiff bears the burden of proving by a preponderance of the evidence that the court has personal jurisdiction *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165, 1174 (5th Cir. 1985).[22]

The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.  *Stuart*, 772 F.2d at 1192.  After a defendant makes a showing of the inapplicability of the long-arm statute, "the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint."  *Polskie Linie Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 972 (11th Cir. 1986).  Plaintiffs must prove that the forum states' long-arm statutes confers personal jurisdiction over BNBM PLC, and that the exercise of jurisdiction comports with due process.  *See Seiferth*, 472 F.3d at 270-71.[23]

---

[22]   *See also Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006); *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir.1993); *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).

[23]   *See also Lyons v. Swift Transp. Co., Inc.*, No. 01-CV-0209, 2001 WL 1153001, at *2 (E.D. La. Sept. 26, 2001); *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009); *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003); *Mazer*, 556 F.3d at 1274.

**B.     Florida's Long-Arm Statute Does Not Confer Jurisdiction Over BNBM PLC.**

The threshold issue in a jurisdiction analysis is to determine whether the defendants'

conduct falls within the relevant long-arm statue.  Florida's long-arm statute provides in

pertinent part:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> 2. Committing a tortious act within this state.
>
> * * * *
>
> 6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:
>
>> a. The defendant was engaged in solicitation or service activities within this state; or
>>
>> b. Products, materials, or things processed, services, or manufactured by the defendant anywhere where were used or consumed within this state in the ordinary course of commerce, trade, or use.

Fla. Stat. Ann. § 48.193.  Florida's long-arm statute confers "less jurisdiction upon Florida courts

than allowed by the Due Process Clause."  *Am. Investors Life Ins. Co. v. Webb Life Ins. Agency,*

*Inc.*, 876 F. Supp. 1278, 1280 (S.D. Fla. 1995).

1.     BNBM PLC Has Not Conducted Business In Florida.

To satisfy § 48.193(1)(a)(1), the activities of the defendant "must be considered

collectively and show a general course of business activity in the State for pecuniary benefits."

*Foster, Pepper & Riviera v. Hansard*, 611 So.2d 581, 582 (Fla. App. 1 Dist. 1992).  "It is not

15

necessarily the number of transactions, but rather the nature and extent of the transaction(s) that determines whether a person is 'carrying on a business venture' within the state." *Joseph v. Chanin*, 869 So.2d 738, 740 (Fla. App. 4 Dist. 2004).

Factors considered in exercising jurisdiction include: (1) the presence and operation of an office in Florida, (2) the possession and maintenance of a license to do business in Florida, (3) the number of Florida clients served, and (4) the percentage of overall revenue gleaned from Florida clients. *Melgarejo v. Pycsa Panama, S.A.*, 537 Fed. App. 852, 860 (11th Cir. 2013) (quoting *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005)).

None of these factors are present with respect to BNBM PLC. It does not have an office, employee, bank account, or property in Florida.  Cai Decl. ¶ 3.  It is not licensed to do business in Florida.  *Id.*  BNBM has never marketed its drywall in Florida, sought to do business in Florida, reached out to Florida, or targeted the Florida drywall market (or the U.S. market, for that matter).  Indeed, BNBM has sold no drywall to Floridians since 2006.  *Id.* ¶¶ 4, 11.  No BNBM PLC representative or employee has visited Florida to market or advertise drywall products or conduct business on behalf of BNBM PLC.  *Id.* ¶ 4.  BNBM PLC has engaged in sales to only four customers located in Florida, each of whom approached BNBM of their own volition, came to China to negotiate, and took title to the drywall in China.  *Id.* ¶¶ 10(a), 10(c)-(e).  BNBM PLC "does not have a general course of business activity" in Florida, or any course of business of activity, for that matter.  This subsection of the Florida long-arm statute is plainly not met.

2.    <u>BNBM PLC Has Not Committed A Tortious Act In Florida.</u>

Under § 48.193(1)(a)(2) of the Florida long-arm statute, a court has specific jurisdiction over a defendant where it commits a tortious act within this state.  *Reiss v. Ocean World, S.A.*, 11

So.3d 404, 406 (Fla. 4 Dist. Ct. App. 2009).  The plaintiff must demonstrate that the non-resident

defendant committed a substantial aspect of the alleged tort in Florida, and such a showing is

properly made by establishing that the activities in Florida were essential to the success of the

tort.  *See General Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335, 1345 (S.D. Fla.

2002) (quoting *Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389, 394 (11th Cir. 1988)).

There is no evidence that BNBM PLC committed a tort in Florida.  BNBM PLC sold to just four

Florida customers, through transactions negotiated, finalized, and consummated in China.  Cai

Decl. ¶¶ 10(a), 10(c)-(e).  Downstream injury in Florida caused by a product placed into the

stream of commerce outside Florida does not constitute commission of a substantial aspect of a

tort for purposes of § 48.193(1)(a)(2).  *See Blumberg v. Weiss & Co.*, 922 So. 2d 361, 364 (Fla.

3d DCA 2006).

> 3.      BNBM PLC's Alleged Conduct Did Not Cause Plaintiffs To Sustain An
> "Injury To Person Or Property" in Florida.

Under § 48.193(1)(a)(6), a defendant is subject to personal jurisdiction if it causes injury

to persons or property within Florida arising out of an act or omission by the defendant outside

Florida if, at or about the time of the injury, either the defendant was engaged in solicitation or

service activities within this state, or "products, materials, or things processed, services, or

manufactured by the defendant anywhere were used or consumed within this state in the ordinary

course of commerce, trade, or use." Fla. Stat. Ann. § 48.193(1)(a)(6).  Economic injury does not

satisfy this subsection.  *See Aetna Life & Cas. Co. v. Therm-O-Disc, Inc.*, 511 So. 2d 992, 993-94

(Fla. 1987).

As we have discussed above, BNBM PLC has never engaged in the solicitation or

services activities within Florida.  To the contrary, the testing by the Lawrence Berkley National

Laboratory has shown BNBM PLC's drywall was on par with drywall made in North America.

*See* Exhibit 18 at 41 & Exhibits 19, 20.  Plaintiffs have the burden on this motion to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof.  *Polskie Linie Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 972 (11th Cir. 1986).  The plaintiffs cannot meet that burden with respect to § 48.193(1)(a)(6).  The PSC's expert did not test BNBM PLC drywall.[24]  None of the reports she relied on tested BNBM PLC drywall.[25]  As the Department of Housing and Urban Development has reported to Congress, "not all drywall from China is problematic."[26]

### C.     The Louisiana and Virginia Long-Arm Statutes Are Coextensive With Due Process.

The long-arm statute of Louisiana is coextensive with the Due Process Clause.  La. Rev. Stat. § 13:3201(A)(4) (2001); *Petroleum Helicopters, Inc. v. Avco Corp.*, 513 So. 2d 1188, 1192 (La. 1987).  The Virginia long-arm statute also is coextensive with the Due Process Clause.  Va. Code Ann. § 8.01-328.1; *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009); *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002).  Thus the sole inquiry for these states, unlike Florida, is a one-step analysis of the constitutional due process requirement.  For the reasons set forth in the following section of this brief,  due process is not satisfied by the exercise of long-arm jurisdiction over BNBM PLC.

### D.     The Due Process Clause Precludes The Court's Exercise Of Jurisdiction Over BNBM PLC.

To satisfy the constitutional due process requirement, a defendant must have sufficient "minimum contacts" with the forum state such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S.

---

[24] *See* note 15 and accompanying text *supra*.

[25] *Id.* at 8-9, 13.

[26] See note 19 and accompanying text *supra*.

310, 316 (1945) (quotation and citation omitted); *Consulting Eng'rs*, 561 F.3d at 277; *Long v. Chevron Corp.*, No. 4:11-CV-0047, 2011 WL 3903066, at *4 (E.D. Va. Sept. 2, 2011).  A plaintiff may establish specific jurisdiction over a nonresident defendant by showing that the defendant has "purposefully directed" his activities at residents of the forum and that the litigation results from injuries that "arise out of or relate to" those activities.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73, 477 (1985); *Consulting Eng'rs*, 561 F.3d at 277; *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220-23 (11th Cir. 2009); *Gatekeeper Inc. v. Stratech Sys., Ltd.*, 718 F. Supp. 2d 664, 668 (E.D. Va. 2010).

      1.    <u>Plaintiffs Cannot Establish That BNBM PLC Had Minimum Contacts in the Forum States.</u>

Plaintiffs cannot show that BNBM PLC has minimum contacts in the forum states. BNBM PLC has not "purposefully directed" its "activities at residents of the forum state or purposely availed itself of the privilege of conducting activities there," and the litigation does not result from "alleged injuries that arise out of or relate to those activities."  *De Reyes v. Marine Mgmt. & Consulting, Ltd.*, 586 So. 2d 103, 106 (La. 1991).[27]

The *only* activities involving BNBM PLC were the eight or nine sales of drywall manufactured by BNBM PLC, which are not alleged to have injured anyone, and in any event the transactions occurred entirely in China.  There is no evidence that BNBM PLC purposefully availed itself of the privilege of conducting business in the forum states.  It "is essential in each case that there be some act by which the defendant ***purposefully avails*** itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its

---

[27]   *See also Hunt v. Schult Homes Corp.*, 657 So. 2d 124, 127-28 (La. App. 3d Cir. 1995); *see also Fricke v. Owens-Corning Fiberglass Corp.*, 647 So. 2d 1260, 1264-65 (La. App. 4th Cir. 1994); *Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 328 (4th Cir. 2013); *Madara v. Hall*, 916 F.2d 1510, 1516-17 (11th Cir. 1990).

laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citing *Int'l Shoe*, 326 U.S. at 319)

(emphasis added); *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220-23 (11th Cir.

2009).

***a.*       *Fifth Circuit: Stream-of-Commerce Test***

The Fifth Circuit applies the stream-of-commerce test to personal jurisdiction, and this

test therefore applies to determining whether jurisdiction arises from BNBM PLC's contacts with

Louisiana.  Under this standard, minimum contacts are met if the Court "finds that the defendant

delivered the product into the stream of commerce with the ***expectation*** that it would be

purchased by or used by consumers in the forum state."  *Bearry v. Beech Aircraft Corp.*, 818

F.2d 370, 374 (5th Cir. 1987) (emphasis added).  There must also be a nexus between a

plaintiff's harm and the defendant's contacts with the forum to satisfy Due Process.  *See Prejean

v. Sonatrach, Inc.*, 652 F.2d 1260, 1270 n.21 (5th Cir. 1981); *Kelly v. Syria Shell Petroleum Dev.

B.V.*, 213 F.3d 841, 855-856 (5th Cir. 2000).

BNBM PLC has had ***no*** contacts, much less meaningful ones, with Louisiana.  BNBM

PLC has never been registered to do business in Louisiana, and has never marketed drywall in

Louisiana, maintained an office here, qualified to do business or sent representatives or

employees to solicit business.  Cai Decl. ¶¶ 3, 4, 7, 8.

BNBM PLC made drywall sales to five American customers, none based in Louisiana.

Cai Decl. ¶ 10.  None of the customers indicated that they intended to ship BNBM PLC's

drywall to Louisiana.  *Id.*  BNBM PLC had no expectation that its drywall would be distributed

or sold in Louisiana.

BNBM PLC ***avoided*** availing itself of the benefits of doing business in Louisiana (or any

other State) by completing its drywall sales entirely in China.  *Command-Aire Corp. v. Ontario

Mech. Sales & Serv. Inc.*, 963 F.2d 90, 94 (5th Cir. 1992) (the place of performance of a contract

20

is "a weighty consideration" in the analysis of minimum contacts); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (a nonresident may permissibly structure its conduct to avoid being haled into court in a particular state).

Even assuming, *arguendo*, that some of BNBM PLC drywall ended up in Louisiana after it was sold in China—and there is no record evidence in these cases that it did—the transport of the drywall to Louisiana was not due to an intentional act by BNBM PLC.  Therefore it cannot constitute minimum contacts with Louisiana.  "The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State."  *Nicastro v. J. McIntyre Machinery, Ltd.*, 131 S.Ct. 2780, 2788 (2011).  BNBM PLC drywall sales to parties in other states cannot confer jurisdiction in Louisiana simply because the drywall later was shipped or re-sold to Louisiana.  The "fortuitous 'unilateral activity' of a third party" in a forum state does not subject a defendant to personal jurisdiction in that state.  *Johnston v. Multidata Systems International Corp.*, 523 F.3d 602, 611 (5th Cir. 2008) (quoting *Helicopteros Nacionales  De Colombia, S.A. v. Hall*, 466 U.S. 408, 416-17 (1984)).

In *Hunt v. Schulte Homes Corp.*, the court affirmed the trial court's holding that a Texas component-part manufacturer that sold parts to a Texas manufacturer, who then sold a mobile home to a Louisiana dealer, did not have sufficient minimum contacts to be subject to personal jurisdiction in Louisiana.  Like BNBM PLC, the non-resident manufacturer had no employees, offices, or bank accounts in Louisiana and never advertised or marketed its products in Louisiana; no officers or directors resided in Louisiana; the sale of the component part did not occur in Louisiana; and the sale of the component part occurred between two non-resident companies.  657 So. 2d at 128.  Exercising personal jurisdiction over the Texas component

21

manufacturer based on the mere placement of a product into the stream of commerce, without

more, would therefore violate due process. *Id*. The mere fact that a product created by an out-

of-state defendant "found its way to a Louisiana user, standing alone, cannot satisfy minimum

due process standards." *Fricke v. Owens Corning Fiberglass*, 647 So. 2d at 1265; *Lewis v. Pine*

*Belt Multipurpose Comm. Action Acquisition Agency, Inc.*, 138 So. 3d 776, 785 (La. Ct. App.

2014). BNBM PLC's sales of drywall to five United States customers, none from Louisiana, and

none who said they would send the drywall in Louisiana, does not show "***purposeful***" availment

by BNBM PLC sufficient to establish minimum contacts in Louisiana.

### b.     *Fourth and Eleventh Circuits: Stream-Of-Commerce Plus Test*

The Fourth and Eleventh Circuits Courts of Appeals, relevant for analysis of personal

jurisdiction based in Virginia and Florida cases, have applied the more stringent "stream-of-

commerce plus test," derived from Justice O'Connor's opinion in *Asahi Metal* and cited by

Justice Kennedy's plurality opinion in *J. McIntyre Machinery, Ltd. v. Nicastro*, --- U.S. ----, 131

S.Ct. 2780, 2788-92 (2011).[28] The placement of a product into the stream of commerce must be

accompanied by a "substantial connection to the forum state by [an] action purposefully directed

toward the forum state or otherwise." *Lesnick v. Hollingsworth*, 35 F.3d at 945-46. As the

Fourth Circuit has explained:

> To permit a state to assert jurisdiction over any person in the
> country whose product is sold in the state simply because a
> person must expect that to happen destroys the notion of individual
> sovereignties inherent in our system of federalism. Such a rule
> would subject defendants to judgment in locations based on the
> activity of third persons and not the deliberate conduct of the

---

[28]     *See Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 328 (4th Cir. 2013); *Lesnick v.*
*Hollingsworth & Vose Co.*, 35 F.3d 939, 944-46 (4th Cir. 1994); *Vermeulen v. Renault, U.S.A.,*
*Inc.*, 985 F.2d 1534, 1548-49 (11th Cir. 1993) (applying but not explicitly adopting the stream-
of-commerce plus test); *Thomas v. Brown*, No. 11-62261, 2012 WL 987760, at *8 (S.D.Fla. Mar.
22, 2012).

> defendant, making it impossible for defendants to plan and
> structure their business contacts and risks.

35 F.3d at 945.

Therefore, for the exercise of jurisdiction to be constitutionally permissible, the defendant must have undertaken some additional conduct to service the forum market beyond merely selling a product on foreign soil to a foreign company. The defendant must have, for example, advertised in the forum, established channels for providing regular advice to customers in the forum, or marketed the product through a sales agent in the forum. *Lesnick*, 35 F.3d at 945-46. The foreseeability that a product would arrive in a forum state is irrelevant unless the defendant had purposeful contacts with the forum state. *Chung v. Nana Dev. Corp.*, 783 F.2d 1124, 1127-28 (4th Cir. 1986).

Other courts applying the stream-of-commerce plus test have held that personal jurisdiction cannot be exercised over a foreign defendant for its conduct abroad unless the defendant deliberately directed—and intended to direct—its conduct at the forum state.[29] The evidence shows that BNBM PLC did not do so. Instead, BNBM PLC has done *no* business in Virginia and Florida and has never purposely directed its activities towards either state.[30]

---

[29]   *See, e.g.*, *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997) (requiring "purposeful" contacts); *Central Va. Aviation, Inc. v. N. Am. Flight Servs., Inc.*, 23 F. Supp. 3d 625, 630-31 (E.D. Va. 2014); *Thomas v. Brown*, No. 11-62261, 2012 WL 987760, at *8 (S.D.Fla. Mar. 22, 2012) (reiterating the importance of "purposeful availment").

[30]   *Cf. Nicastro v. J. McIntyre Machinery, Ltd.*, 131 S.Ct. 2780, 2790-91 (2011); *AESP, Inc. v. Signamax, LLC*, 29 F. Supp. 3d 683, 690-91 (E.D.Va. 2014); *Yates v. Motivation Indus. Equipment Ltd.*, 38 Fed. Appx. 174, 176-180 (4th Cir. 2002); *Bullard Abrasives, Inc. v. Taiwan Resibon Abrasive Products Co.*, No. 8:09-CV-199, 2009 WL 1659304, *4-5 (M.D.Fla. June 15, 2009).

2.      Taishan's Contacts Cannot Be Attributed to BNBM PLC.

Unable to establish that BNBM PLC has the requisite direct contacts with the forum

states, the plaintiffs have argued that the Court can exercise jurisdiction over BNBM PLC

through its ties to Taishan.  This argument is factually and legally unfounded.  BNBM PLC and

Taishan are separate corporate entities.  They are not alter egos.  There is no evidence that would

allow the Court to impute Taishan's forum contacts to BNBM PLC.

### a.      *Chinese Company Law Should Apply to Veil Piercing Analysis*

MDL Courts apply the choice-of-law rules of the state of transferor forum, that is, the law

of the state in which the action was filed.  *In re Vioxx Product Liability Litigation*, 478 F. Supp.

2d 897, 903 (E.D. La. 2007).  Here, the Court must apply the law of the state of incorporation to

conduct a veil piercing or alter ego analysis.[31]  "The law of the state of incorporation normally

determines issues relating to the internal affairs of a corporation."  *First Nat'l City Bank v. Banco*

*Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983).  This rule applies to companies

incorporated outside the United States.  *See Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579,

587 (5th Cir. 2010) (affirming application of Italian law to alter ego analysis).[32]  Accordingly,

any veil piercing or alter ego analysis related to BNBM PLC must be conducted pursuant to the

law of China.

---

[31]  *See* Fla. Stat. § 607.1505(3); Ala. Code § 10A-1-1.03(46)(A); *Mukamal v. Bakes*, 378 F.
App'x 890, 897 (11th Cir. 2010) (Florida); *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d
640, 646-47 (5th Cir. 2002) (Louisiana); *McCarthy v. Giron*, No. 1:13-CV-01559-GBL, 2014
WL 2696660, at *11 (E.D. Va. June 6, 2014).

[32]  BNBM PLC respectfully submits that the Court erred when it previously applied Louisiana
law to determine that BNBM PLC and Taishan constitute a "single business enterprise."  (Rec
Doc. 18028, at 12-20).

24

### b. BNBM PLC Is Not Taishan's Alter Ego Under Chinese Law

Companies formed under the laws of China are subject to Chinese law, Gongsi Fa, or "Company Law," which regulates the formation, operation, and governance of all Chinese corporations.[33]  Under Company law, each corporation is a limited liability business entity, with the power to make contracts, incur debts on its own behalf, and sue and be sued in its own name. *Id*. at ¶ 22.

A corporation may also establish subsidiary companies that are recognized as separate and distinct legal entities and that, like their parent, must also comply with the Company Law. Yan Decl. ¶¶ 38-42.  A parent corporation and its subsidiary nonetheless remain distinct legal entities even if they share common officers, managers, and directors.  *Id*. at ¶ 40.  Similarly, the parent corporation—by virtue of its ownership and/or voting shares—can exert some level of control over the subsidiary, while still retaining its status as a separate entity.  *Id*. at ¶ 41.[34]

Although the Company Law permits a court to disregard a company's separate legal personality where a shareholder of a company "evades the payment of its debts by abusing the independent status of juridical person or the shareholder's limited liabilities, and thus seriously damages the interest of any creditor," there is no evidence of  such abuse here.  *Id*. ¶ 47 (quoting Article 20 of the Company Law).[35]  Rather, as described above, there is complete corporate

---

[33]   Declaration of Zhu Yan, expert witness for Taishan and Taian Taishan Plasterboard Co., Ltd., dated March 30, 2012 (Rec. Doc. 14572-1), at paragraphs 12, 15, 49 (cited herein as "Yan Decl.").

[34]   The Company Law does, however, contain strict prohibitions regarding a parent company's controlling power over the subsidiary. For example, no company may, directly or through its subsidiary, lend money to any of its directors, supervisors, or senior managers and neither the controlling shareholder, nor the actual controller, nor any of the directors, supervisors or senior management of the company may injure the interests of the company by taking advantage of its connection to or relationship with the company.  *See* Zhu Decl. ¶ 41.

[35] Although the Plaintiffs' previously-filed expert declarations focused on Article 34 of the Company Law, Article 34 is expressly limited to "one-person limited liability companies," *id.* at

separateness between Taishan and BNBM PLC.  BNBM PLC and Taishan separately manage

their own finances, assets and operations.  While BNBM PLC has a 65% ownership interest in

Taishan, its voting interest is short of the supermajority required for major decisions such as

capitalization, merger, stock splits, dissolution, or restructuring.  Both companies observe all

corporate governance formalities.  The companies have separate operations, management,

officers, employees, bank accounts, accounting records, production plants, drywall brands,

offices, assets, liabilities, debts, financial statements, tax returns—everything involved in

running a business is separate.  Neither acts as the other's agent.  Neither contracts for the other

or fulfills the other's contracts.

        To support imputing Taishan's contacts to BNBM PLC, the PSC has tried to characterize

statements in annual reports, a prospectus, regulatory announcements, consolidated financial

statements, and the like. When the documents are reviewed, however, they reflect nothing more

than the usual relationship between a parent corporation and its subsidiary.  For instance, the

plaintiffs rely on consolidated financials that include rolled-up numbers from Taishan.  But

consolidate financials are dictated by Chinese accounting rules.  Accounting Standards for

Business Enterprises No. 33, promulgated by the Ministry of Finance on February 15, 2006 and

effective from February 15, 2006 until July 1, 2014, requires that a "parent company shall

prepare consolidated financial statements" and that consolidated financials ordinarily shall be

filed when a "parent company owns more than half of the voting rights of the invested unit

---

¶ 47, which is the term used to describe a wholly owned subsidiary. *Id*. at ¶ 37.  Taishan is not a
one-person limited liability company.  BNBM PLC only owns sixty-five percent of Taishan,
with the remainder composed of independent, non-public stockholders.  Yang Decl. ¶ 8; Jia Tr.
596:11-597:16.

directly."[36]  With the exception of the required consolidated financials, BNBM PLC and Taishan

prepare separate, audited financial statements.  Yang Decl. ¶¶ 16, 17.

      The PSC has claimed that annual summary reports show that BNBM PLC and Taishan

are treated as a single entity, but in fact the opposite is true.  For example, the 2009 summary

statement discusses brand awards won by BNBM PLC and Taishan while expressly referring to

them as separate companies.[37]  The annual summary reports for BNBM PLC repeatedly

emphasize BNBM PLC's compliance with Chinese Company Law and Securities Law by,

among other things, ensuring the appointment of independent directors and establishing systems

to continually evaluate all senior executives.[38]  Finally, the annual summary reports make clear

that BNBM PLC's ownership interest in Taishan is limited to 65%.[39]  BNBM PLC's ownership

interest in Taishan is insufficient to find that Taishan is an agent or alter ego of BNBM PLC, and

the documents offered by the plaintiffs do not show otherwise.

      There is no evidence to show that BNBM PLC is anything more than an investor in

Taishan, and certainly nothing that would meet plaintiffs' burden on this motion of showing that

as a stockholder of a corporation, BNBM PLC abused "the corporate independent status or the

limited liability of shareholders." Corporate Law of 2005, Art. 20 § 3.  Even the declarations of

plaintiffs' experts support the only conclusion permissible under controlling Chinese law, that

---

[36] Accounting Standards for Business Enterprises No. 33 - Consolidated Financial Statements, promulgated by the Ministry of Finance of the Peoples Republic of China on February 15, 2006 (effective from February 15, 2006 to July 1, 2014), at Article 4 & Article 7 (attached as **Exhibit 22**).

[37] *See* Overseas Regulatory Announcement, Summary of the 2008 Annual Report of BNBM Group, at 27 (attached as **Exhibit 23**).

[38] *See, e.g.*, Ex. 11, BNBM PLC Annual Report 2007 at 17 to 20; Ex. 12, BNBM PLC Annual Report 2008 at 17 to 20; Ex. 13, BNBM PLC Annual Report 2009 at17 to 18.

[39] *See, e.g.*, Ex. 11,  BNBM PLC Annual Report 2007 at 28.

BNBM PLC is not liable for Taishan's liabilities.[40]  When "shareholders refrain from abusing the corporate independent status or the limited liability of shareholders, they could enjoy their limited liability privilege."  Junhai Aff. ¶ 51.  The PSC's expert Dr. Junhai opines that the "common abuses of the corporate independent status or the limited liability of shareholders could be classified as undercapitalization and commingling of legal personalities between corporation and shareholder."  *Id*. ¶ 53.  There is no evidence to show that Taishan is undercapitalized, and no evidence of commingling of legal personalities between Taishan and BNBM PLC—or of any other abuse by BNBM PLC.  Therefore, according to plaintiffs' own experts, there is no reason to strip BNBM PLC of its limited liability privilege here.  Moreover, as plaintiffs' experts emphasize, the plaintiffs bear the burden of proof.  Feinerman Decl. ¶ 17; Cheng Decl. ¶ 25.  An alter ego justification for asserting jurisdiction cannot be found here with respect to BNBM PLC when the plaintiffs bear the burden and there are no facts to support the required shareholder "abuse."

### c.    *BNBM PLC Is Not Taishan's Alter Ego Under the Laws of the Forum States.*

The result of the alter ego analysis would be the same even if Louisiana, Florida, or Virginia law were applied.  There is no evidence, under any test, to justify disregarding the corporate structures of each entity.

#### i.    *Application of Forum States' Laws*

Under each forum states' laws, a corporation is deemed a distinct legal entity separate from its shareholders and subsidiaries.  *See Riggins v. Dixie Shoring Co.*, 590 S. 2d 1164, 1167 (La. 1991); *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005); *Long v. Chevron Corp.*, No. 4:11-CV-47, 2011 WL 3903066, at *7 (E.D.Va. Sept. 2, 2011).  Courts are

---

[40]   Liu Junhai Aff. ¶¶ 44, 49-55; Feinerman Decl. ¶¶ 11, 15, 17.

permitted to disregard this corporate distinction only in "exceptional circumstances," such as

remedying a fraud to achieve equity. *Riggins*, 590 So.2d at 1168. "In order properly to

disregard the corporate entity, one of the primary components which justifies piercing the veil is

often present: to prevent the use of the corporate form in the defrauding of creditors." *Id.* at

1169. Simply alleging that a parent controls the actions of its subsidiary does not rise to the level

of "exceptional circumstance" required to disregard the corporate form. *See Bujol v. Entergy*

*Sys., Inc.*, 922 So. 2d 1113, 1127-28 (La. 2004). "[C]ontrol alone is not sufficient to warrant

piercing the corporate veil." *Town of Haynesville, Inc. v. Entergy Corp.*, 956 So. 2d 192, 197

(La. App. 2d Cir. 2007). That a subsidiary corporation does business in a state does not, without

more, confer jurisdiction over the nonresident parent corporation. *Goldrick v. D.M. Picton Co.*,

56 F.R.D. 639, 642 (E.D.Va. 1971); *Williams v. AES Corp.*, 28 F. Supp. 3d 553, 563-65 (E.D.

Va. 2014) (defendant owned a 56% interest in subsidiary and exercised nothing more than usual

control of a parent over a subsidiary, was not an alter ego); *Enic. PLC v. F.F. S. & Co., Inc.*, 870

So.2d 888, 891 (Fla. Dist. Ct. App. 2004) (a parent company's control "must be high and very

significant").

      Rather, the Court must assess whether there is any comingling of funds, failure to follow

statutory formalities for incorporating corporate affairs, undercapitalization, failure to maintain

separate bank accounts and bookkeeping records, and failure to hold regular shareholder and

director meetings. *Riggins*, 590 S.2d at 1168; *Long*, 2011 WL 3903066 at *7. Here there is no

commingling of funds, statutory formalities for incorporating corporate affairs are followed,

Taishan is not undercapitalized, the bank accounts are separate, bookkeeping records are

separate, and regular shareholder and director meetings are held. Yang Decl. ¶¶ 9-15; Chen

Decl. ¶¶ 5, 11, 22, 25.  Thus BNBM PLC is not the alter ego of Taishan under the forum states'

laws, including the law of Louisiana.

*ii.    This Court's Prior Holding*

This Court's prior finding that BNBM PLC, BNBM Group and Taishan constitute a

"single business enterprise" respectfully should not stand.  As the Court has recognized

elsewhere, "Courts impose liability on shareholders in only the most rare and extraordinary of

circumstances." *Morales v. Bayou Concessions Salvage, Inc.*, No. 03-657, 2004 WL 2381525, at

*2 (E.D. La. Oct. 2004).  As the Court also has recognized, it must follow the Louisiana

Supreme Court's interpretation and application of Louisiana law.  *Morales*, 2004 WL 2381525,

at *1.  In *Riggins*, the Louisiana Supreme Court established the factors to consider in

determining whether to pierce the veil and treat a corporation as an alter ego.  590 So. 2d at

1168.  But at the plaintiffs' urging, in its prior decision the Court utilized a "single business

enterprise" test, first articulated in *Green v. Champion Ins. Co.*, 577 So.2d 249, 256-60 (La. Ct.

App. 1991), which focuses disproportionately on the question of an investor's "control" of the

corporation.  This test does not accurately reflect the Louisiana Supreme Court's interpretation

and application of the law.  In the two decades since *Green* was decided, the Louisiana Supreme

Court has never adopted the "single business enterprise" test.  Instead, and as this Court has

recognized, Louisiana's highest court continues to adhere to its traditional veil piercing analysis,

focusing on control *and* an abuse of the corporate structure.  *See Morales*, 2004 WL 2381525, at

*3-4 (E.D. La. Oct. 2004).  "There is simply no persuasive evidence . . . that the Louisiana

Supreme Court would abandon the [traditional veil piercing] test . . . and adopt the more

expansive single business enterprise theory articulated in *Green*."  *Id*. at *3.  As Louisiana's

Second Circuit Court of Appeals admonished in reversing a trial court's application of the

"single business enterprise" test, "we note that control alone is not sufficient to warrant a

30

piercing of the corporate veil." *Town of Haynesville, Inc. v. Entergy Corp*., 956 So. 2d 192, 197 (La. Ct. App. 2007).[41]

Moreover, this Court's previous finding that Taishan, BNBM PLC, BNBM Group, and others constitute "a single business enterprise" rests—erroneously and entirely—upon Taishan's deemed admissions when they failed to respond to Rule 36 requests to admit. (Rec Doc. 18028, at 12-20). Controlling precedent prevents those deemed admissions from being used against BNBM PLC. *See Becerra v. Asher*, 105 F.3d 1042, 1045 (5th Cir. 1997), *as supplemented on denial of reh'g* (Apr. 7, 1997) (deemed admissions of one party cannot be used against a co-party); *see also Riberglass, Inc. v. Techni-Glass Indus., Inc*., 811 F.2d 565, 566-67 (11th Cir. 1987) (deemed admissions of co-defendants could not bind defendant who did respond to requests); *Earl Realty, Inc. v. Leonetti* (*In re Leonetti*), 28 B.R. 1003, 1009 (E.D. Pa. 1983) (admission of one defendant not admissible against co-defendant).

For example, in *Becerra*, the plaintiff attempted to use a defendant's unanswered request for admissions as evidence to defeat a co-defendant's motion for summary judgment. 105 F.3d at 1048. The District Court ruled that the deemed admissions were not competent evidence, because they "are binding only on the non-responding party, not on co-parties." *Id*. On appeal, the Fifth Circuit affirmed and held that "[d]eemed admissions by a party opponent cannot be used against a co-party." *Id*. That holding applies equally here. The requests for admissions were not made to or served on BNBM PLC, and thus cannot be used to support either the exercise of personal jurisdiction or the imposition of liability against it. As BNBM PLC will

---

[41]  *See also* Kyle M. Bacon, The Single Business Enterprise Theory of Louisiana's First Circuit: An Erroneous Application of Traditional Veil Piercing, 63 LA. L. REV. 75 (Fall 2002) (*Green's* "[S]ingle business enterprise theory is a poor theory for two main reasons. First, the theory has been developed through poor legal methodology. Second, the theory promotes bad policy.").

demonstrate, these deemed admissions do not comport with the facts that will be part of the record in this case.

> 3.    Plaintiffs' Causes of Action Did Not Arise Out of BNBM PLC's Contacts With the Forum States.

To satisfy their burden of proving that the Court may exercise personal jurisdiction over BNBM PLC consistent with due process, plaintiffs must show that their claims arose out of or resulted from BNBM PLC's contacts with the forum states. *Seiferth*, 472 F.3d at 271; *Consulting Eng'rs*, 561 F.3d at 277-78; *Int'l Shoe*, 326 U.S. at 316; *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220-23 (11th Cir. 2009) (out-of-state resident must have "fair warning" that a particular activity will subject it to the jurisdiction of a foreign sovereign). Given that BNBM PLC made no drywall sales in Louisiana or Virginia, plaintiffs cannot demonstrate the requisite nexus between their claims and BNBM PLC's conduct directed at those states. *Prejean*, 652 F.2d at 1270 n.21 (5th Cir. 1981).

> 4.    Jurisdiction Over BNBM PLC Would Not Comport With Notions of Fair Play and Substantial Justice.

The third prong of the test for specific jurisdiction requires the exercise of personal jurisdiction be constitutionally reasonable, permitting the Court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there. *Burger King*, 471 U.S. at 476-77; *Consulting Eng'rs*, 561 F.3d at 277.

Here, the Court cannot exercise personal jurisdiction over BNBM PLC because it would offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. As the Supreme Court has explained:

> Once it had been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the

32

> assertion of personal jurisdiction would comport with "fair play
> and substantial justice." Thus courts in "appropriate case[s]" may
> evaluate [1] "the burden on the defendant," [2] "the forum State's
> interest in adjudicating the dispute," [3] "the plaintiff's interest in
> obtaining convenient and effective relief," [4] "the interstate
> judicial system's interest in obtaining the most efficient resolution
> of controversies," and [5] the "shared interest of the several States
> in furthering fundamental substantive social policies."

*Burger King*, 471 U.S. at 476-77 (citations omitted and internal numbering added).

Each of the five "fairness" factors set out in *Burger King* militate against asserting personal jurisdiction over BNBM PLC. First, BNBM PLC will be heavily burdened. In order to defend these cases, BNBM PLC would incur substantial costs in traveling around the world, translating the voluminous current and future court filings, and surmounting logistical difficulties in litigating a matter half way around the globe. For example, the Court has ordered that depositions will occur in Louisiana, which requires senior officers of the company to obtain visas to enter the United States and travel to the United States for depositions, greatly lengthening their time away from work. Once this matter proceeds to a defense on the merits, such burdens will increase exponentially. Consequently, the burdens on BNBM PLC would be so severe that they would be constitutionally unreasonable.

With respect to the interests of the plaintiffs and the forum states, BNBM PLC has not done business in the forum states, has no employees, offices or property there, and is not registered to do business or pay taxes in the U.S. Cai Decl. ¶¶ 3-4. Therefore the interests of the forum states is not served by requiring BNBM PLC to defend the litigation here. The forum states' and the plaintiffs' interests would be better served if the litigation proceeded against defendants who actually made and sold drywall in Louisiana, Florida, and Virginia.

The judicial system's interest in efficient resolution of controversies weighs against exercising jurisdiction over in favor of BNBM PLC because of the difficulties relating to

translation, travel, and cross-continent discovery in this litigation, as evidenced already in this litigation. Hauling a Chinese company into a matter in which its only connection is that it holds a majority share of another defendant does not serve this Court's interest in efficiently resolving the matter.

Finally, the shared interest of the "several states" in a case with a foreign defendant requires "a court to consider the procedural and substantive policies of other *nations* whose interests are affected by the assertion of jurisdiction" of the Forum States. *Asahi*, 480 U.S. at 115 (emphasis added). Here, litigating in the Forum States would offend China's procedural and substantive policies, especially its policies regarding the separateness of companies. Further, BNBM PLC did not seek out customers in the United States and has no control over the final destination of its products once they were delivered into the stream of commerce. As such, China has a greater interest in a matter concerning BNBM PLC.

## II.   THE COMPLAINTS AGAINST BNBM PLC SHOULD BE DISMISSED UNDER RULE 12(B)(5) BECAUSE BNBM PLC HAS NOT BEEN SERVED WITH PROCESS

Because BNBM PLC was not served with process in any of the actions in which this Court entered preliminary defaults against them, the preliminary defaults must be vacated. "A judgment rendered in the absence of personal jurisdiction is void and must be set aside." *McGuire v. Sigma Coatings, Inc.*, 48 F.3d 902, 907 (5th Cir. 1995). To acquire jurisdiction over the person, "a court must serve on the person a document, 'such as a summons, notice, writ, or order.'" *Id*. This fundamental tenet applies even when dealing with a default judgment. *See Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*, 841 F.2d 646, 649 (5th Cir. 1998); *High Island Health, LLC v. Libertybelle Mktg. Ltd.*, No. CIV A H-06-2931, 2007 WL 1173631, at *3-7 (S.D. Tex. Apr. 18, 2007) (dismissing default judgment due to insufficient service of process).

Here, the plaintiffs apparently believed that attempting service on BNBM PLC would have been futile. Yet the affidavits of service they filed show that they attempted to serve the wrong entities with the summons and complaints, and that even when service was attempted on the correct entity only a minimal effort was made, never amounting to more than two delivery attempts.

Where a defendant resides outside the United States, and service cannot be made under the Hague Convention's procedures, the proper route to effectuate service is Federal Rule of Civil Procedure 4(f)(3), which allows service "by other means not prohibited by international agreement, as the court orders." *BP Products N. Am., Inc. v. Dagra*, 236 F.R.D. 270, 271 (E.D. Va. 2006); *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002) ("Thus, when Rio presented the district court with its inability to serve an elusive international defendant, striving to evade service of process, the district court properly exercised its discretionary powers to craft alternate means of service"); *Securities Exchange Comm'n v. Tome*, 833 F.2d 1086, 1092-93 (2d Cir. 1987) ("Where the plaintiff can show that deliberate avoidance and obstruction by the defendants have made the giving of notice impossible, statutes and caselaw have allowed substitute notice by mail and by publication in media of general and wide circulation"); *Seiko Epson Corp. v. Glory S. Software Mfg., Inc.*, No. 06-CV-236-BR, 2007 WL 282145, at *2 (D. Or. Jan. 24, 2007) (approving alternative service on Chinese entity). For example, in *Gurung v. Malhotra*, 279 F.R.D. 215, 221 (S.D.N.Y. 2011), service via e-mail was approved.

A plaintiff that is unable to serve an international defendant with process cannot be excused from the service requirement simply by claiming that service is futile. Yet that is precisely what was done here. This Court therefore lacks jurisdiction over BNBM PLC.

## CONCLUSION

For all of the foregoing reasons, and the reasons set forth in BNBM PLC's other motions and papers, defendant BNBM PLC respectfully requests the Court to dismiss the complaints against it in this MDL proceeding.

Dated:  April 29, 2015

Respectfully submitted,

**DENTONS US LLP**

By: *<u>/s/ Michael H. Barr</u>*
Michael H. Barr
New York Bar No. 1744242
Justin N. Kattan
New York Bar No. 3983905
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
michael.barr@dentons.com
justin.kattan@dentons.com

- and -

Richard L. Fenton
Illinois Bar No. 3121699
Leah R. Bruno
Illinois Bar No. 6269469
233 South Wacker Drive
Suite 7800
Chicago, IL  60606-6306
Telephone:  (312) 876-8000
Facsimile:  (312) 876-7934
richard.fenton@dentons.com
leah.bruno@dentons.com

- and -

C. Michael Moore
Texas Bar No. 14323600
Gene R. Besen
Texas Bar No. 24045491
2000 McKinney Ave, Suite 1900
Dallas, TX  75201
Telephone:  (214) 259-0900
Facsimile:  (214) 259-0910
mike.moore@dentons.com
gene.besen@dentons.com

- and -

**PHELPS DUNBAR LLP**

Harry Rosenberg
Louisiana Bar No. 11465
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130
harry.rosenberg@phelps.com

***Attorneys for Beijing New Building Material (Group) Co., Ltd. and Beijing New Building Materials Public Limited Company***

37

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing **Memorandum In Support of Motion to Dismiss the Complaints Pursuant to Rules 12(b)(2) and 12(b)(5)** has been served on Plaintiffs' Liaison Counsel, Leonard Davis, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with the Pretrial Order No. 6, and that the foregoing was also electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this April 29, 2015.

*/s/     Michael H. Barr*