## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047**<br>**SECTION: L**<br>**JUDGE FALLON**<br>**MAG. JUDGE WILKINSON** |
| **THIS DOCUMENT RELATES TO:**<br><br>*All Cases* | |

## MEMORANDUM OF BEIJING NEW BUILDING MATERIAL (GROUP) CO., LTD. IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINTS PURSUANT TO RULES 12(B)(2) AND 12(B)(5)

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND .............................................................................. 4

    A.    BNBM Group Has Never Conducted Business In The Forum States. ................. 4

    B.    BNBM Group Contracted To Act As Tthe Export Agent For BNBM PLC
        In  Sales of Drywall To Three American Customers ............................................ 5

    C.    BNBM Group Is Not An Alter Ego Of BNBM PLC Or Taishan ......................... 6

        1.    No Common Ownership And Control .................................................. 7

        2.    BNBM Group Complies With Corporate Governance
              Requirements ..................................................................................... 7

        3.    The Companies Are Operationally Distinct .......................................... 8

        4.    BNBM Group and BNBM PLC Are Not Undercapitalized ..................... 8

        5.    The Companies Have Independent Finances and Accounting ................. 9

        6.    No Siphoning Of Funds, Undocumented Transfers Of Funds, Or
              Unauthorized Withdrawal Of Funds ................................................... 10

    D.    BNBM Group Has Not Been Served And The Service Attempts Were
        Inadequate ....................................................................................................... 10

ARGUMENT ...................................................................................................... 11

I.    PLAINTIFFS CANNOT ESTABLISH JURISDICTION OVER BNBM GROUP
    IN THE FORUM STATES ............................................................................. 11

    A.    Florida's Long-Arm Statute Does Not Confer Jurisdiction Over BNBM
        Group .............................................................................................................. 11

        1.    BNBM Group Has Not Conducted Business In Florida. ...................... 11

        2.    BNBM Group Committed No Tortious Acts In Florida. ...................... 12

        3.    BNBM Group's Acts Did Not Cause Plaintiffs To Sustain An
              "Injury To Person Or Property" In Florida. ......................................... 13

    B.    The Louisiana And Virginia Long-Arm Statutes Are Coextensive With
        Due Process ..................................................................................................... 13

    C.    Due Process Precludes The Exercise Of Jurisdiction Over BNBM Group ......... 14

        1.    Plaintiffs Cannot Establish That BNBM Group Had Minimum
              Contacts in the Forum States. ............................................................ 14

            a.    Fifth Circuit: Stream-of-Commerce Test ..................................... 14

            b.    Fourth and Eleventh Circuits: Stream-Of-Commerce Plus
                Test ........................................................................................... 15

        2.    The Contacts Of Others Cannot Be Attributed To BNBM Group ............ 17

        3.    Plaintiffs' Causes Of Action Did Not Arise Out Of BNBM
              Group's Contacts With The Forum States. ......................................... 19

**TABLE OF CONTENTS**
**(Continued)**

Page

      4.    Jurisdiction Over BNBM Group Would Not Comport With Notions Of Fair Play And Substantial Justice............................................ 20

II.   THE ACTIONS AGAINST BNBM GROUP SHOULD BE DISMISSED UNDER RULE 12(B)(5) BECAUSE IT HAS NOT BEEN SERVED WITH PROCESS ..................................................................................................... 21

CONCLUSION.............................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AESP, Inc. v. Signamax, LLC*,
    29 F. Supp. 3d 683 (E.D.Va. 2014) ...................................................................................16

*Am. Investors Life Ins. Co. v. Webb Life Ins. Agency, Inc.*,
    876 F. Supp. 1278 (S.D. Fla. 1995) ..................................................................................11

*Asahi Metal Indus. v. Superior Court*,
    480 U.S. 115 (1987).........................................................................................................21

*Bearry v. Beech Aircraft Corp.*,
    818 F.2d 370 (5th Cir. 1987) ...........................................................................................14

*Becerra v. Asher*,
    105 F.3d 1042 (5th Cir. 1997) ....................................................................................3, 18

*Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*,
    841 F.2d 646 (5th Cir.1998) ............................................................................................21

*Blumberg v. Weiss & Co.*,
    922 So. 2d 361 (Fla. 3d DCA 2006) ................................................................................12

*BP Products N. Am., Inc. v. Dagra*,
    236 F.R.D. 270 (E.D. Va. 2006) ......................................................................................22

*Bullard Abrasives, Inc. v. Taiwan Resibon Abrasive Products Co.*,
    No. 8:09-CV-199, 2009 WL 1659304 (M.D.Fla. June 15, 2009) ...........................................16

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985).........................................................................................................20

*In re Celotex Corp.*,
    124 F.3d 619 (4th Cir. 1997) ...........................................................................................16

*Central Va. Aviation, Inc. v. N. Am. Flight Servs., Inc.*,
    23 F. Supp. 3d 625 (E.D. Va. 2014) ................................................................................16

*China Products Northwest, Inc. v. D.J. Broesamle Co.*,
    535 So.2d 619 (Fla. 1st DCA 1988) .................................................................................16

*Chung v. Nana Dev. Corp.*,
    783 F.2d 1124 (4th Cir. 1986) .........................................................................................16

*Consulting Eng'rs Corp. v. Geometric Ltd.*,
    561 F.3d 273 (4th Cir. 2009) .................................................................................19, 20

*De Reyes v. Marine Mgmt. & Consulting, Ltd.*,
    586 So. 2d 103 (La. 1991) ..............................................................................................14

*Earl Realty, Inc. v. Leonetti* (*In re Leonetti*),
    28 B.R. 1003 (E.D. Pa. 1983) ........................................................................................19

*Fricke v. Owens-Corning Fiberglass Corp.*,
    647 So. 2d 1260 (La. App. 4th Cir. 1994) .....................................................................14

*General Cigar Holdings, Inc. v. Altadis, S.A.*,
    205 F. Supp. 2d 1335 (S.D.Fla. 2002) ..........................................................................12

*Gurung v. Malhotra*,
    279 F.R.D. 215 (S.D.N.Y. 2011) ...................................................................................22

*Hanson v. Denckla*,
    357 U.S. 235 (1958)........................................................................................................14

*Helicopteros Nacionales De Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)........................................................................................................15

*High Island Health, LLC v. Libertybelle Mktg. Ltd.*,
    No. CIV A H-06-2931, 2007 WL 1173631 (S.D. Tex. Apr. 18, 2007)...................................21

*Hunt v. Schult Homes Corp*.,
    657 So. 2d 124 (La. App. 3d Cir. 1995) .........................................................................14

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)...................................................................................................19, 20

*Jackson v. FIE Corp*.,
    302 F.3d 515 (5th Cir. 2002) ............................................................................................4

*Johnston v. Multidata Systems International Corp*.,
    523 F.3d 602 (5th Cir. 2008) ..........................................................................................15

*Lesnick v. Hollingsworth & Vose Co.*,
    35 F.3d 939 (4th Cir. 1994) ............................................................................................16

*Madara v. Hall*,
    916 F.2d 1510 (11th Cir. 1990) ......................................................................................14

*McGuire v. Sigma Coatings, Inc.*,
    48 F.3d 902 (5th Cir. 1995) ............................................................................................21

iv

*Morales v. Bayou Concessions Salvage, Inc.*,
   No. 03-657, 2004 WL 2381525 (E.D. La. Oct. 2004) ........................................................18

*Nicastro v. J. McIntyre Machinery, Ltd.*,
   131 S.Ct. 2780 (2011)........................................................................................................15, 16

*Oldfield v. Pueblo De Bahia Lora, S.A.*,
   558 F.3d 1210 (11th Cir. 2009) ........................................................................................14, 19

*Polskie Linie Oceaniczne v. Seasafe Transport A/S*,
   795 F.2d 968 (11th Cir. 1986) ..................................................................................................11

*Prejean v. Sonatrach, Inc.*,
   652 F.2d 1260 (5th Cir. 1981) ..................................................................................................19

*Reiss v. Ocean World, S.A.*,
   11 So. 3d 404 (Fla. 4 Dist. Ct. App. 2009) ..............................................................................12

*Riberglass, Inc. v. Techni-Glass Indus., Inc.*,
   811 F.2d 565 (11th Cir. 1987) ..................................................................................................19

*Rio Properties, Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) ..................................................................................................22

*S.E.C. v. Tome*,
   833 F.2d 1086 (2d Cir. 1987)....................................................................................................22

*Seiferth v. Helicopteros Atuneros, Inc.*,
   472 F.3d 266 (5th Cir. 2006) ....................................................................................................19

*Seiko Epson Corp. v. Glory S. Software Mfg., Inc.*,
   No. 06-CV-236-BR, 2007 WL 282145 (D. Or. Jan. 24, 2007) ................................................22

*Thomas v. Brown*,
   No. 11-62261, 2012 WL 987760 (S.D.Fla. Mar. 22, 2012)......................................................16

*Unspam Techs., Inc. v. Chernuk*,
   716 F.3d 322 (4th Cir. 2013) ....................................................................................................14

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980)..................................................................................................................15

*Yates v. Motivation Indus. Equipment Ltd.*,
   38 Fed. Appx. 174 (4th Cir. 2002)............................................................................................16

**Statutes**

Fla. Stat. Ann. § 48.193 ..............................................................................................11, 12, 13

v

La. Rev. Stat. § 13:3201(A)(4) (2001)...........................................................................13

Va. Code Ann. § 8.01-328.1 ..........................................................................................13

**Other Authorities**

Fed. R. Civ. P. 4(f)(3) .................................................................................................22

Fed. R. Civ. P. 12 .........................................................................................1, 3, 21, 22

Fed. R. Civ. P. 36 ................................................................................................3, 18

Defendant Beijing New Building Material (Group) Co., Ltd. ("BNBM Group") respectfully submits this memorandum in support of its Motion pursuant to Rules 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure for an order dismissing the complaints against it for lack of personal jurisdiction and failure of service.

## INTRODUCTION

BNBM Group moves to dismiss the complaints against it because it does not have sufficient minimum contacts with the forum states to meet their statutory requirements or to satisfy due process. There is no evidence in these cases that BNBM Group manufactured drywall, or marketed or sold drywall in Louisiana, Virginia, or Florida (collectively the "forum states"). In fact, it never did. BNBM Group is a building supply company. It has not manufactured drywall since 1997. It has never sold Taishan drywall into the United States and did not sell any drywall into the United States during the relevant period of 2005 to 2008.

BNBM Group's only relation to the events at issue in these cases is that it acted as the export agent for sales by Beijing New Building Materials Public Limited Company ("BNBM PLC") of its drywall to two Florida companies in 2005. An export agent does not negotiate contracts for sale. It completes the customs declarations in its own name, executes the sale contracts on behalf of the seller, and collects the payment on behalf of the seller. The export agent performs these services for a fee paid by the seller. The relationship of the export agent and the seller is a matter of contract, as it was here. The use of export agents who are government-qualified to export goods under China's export regulations is a common business practice, and indispensable to international shipping and trade. The role does not ordinarily, without more, subject an export agent to jurisdiction in the United States in a lawsuit alleging that the goods shipped were defective. BNBM Group's role here is no different.

1

As is common for export agents, BNBM Group did not negotiate the transactions with purchasers, did not make or sell the drywall, never took physical possession of the drywall, did not pack the drywall, and other than to inspect for damage occurring during transit to the shipping port, never physically inspected the drywall.  No BNBM Group employee traveled to the United States relating to these transactions.  Moreover, the BNBM PLC drywall sales are the only American drywall sales for which BNBM Group acted as an export agent.  BNBM Group has never served as an export agent for any sales of Taishan drywall to the United States, for example.

Nor does BNBM Group do any business in the forum states.  It does not market, solicit business directly or through agents, maintain offices, own or lease, property or manufacture in the forum states.  It does not sell goods to the forum states or import goods from suppliers based in the forum states.  BNBM Group has not availed itself of the privilege of doing business in those states, has not injured anyone in those states, and could not therefore have had "fair warning" that it could be sued here.

The Court has not made factual findings that would permit it to exercise jurisdiction over BNBM Group.[1]  There is no evidence that would allow this Court to impute to BNBM Group Taishan's forum contacts, or any perceived contacts by BNBM PLC.  BNBM Group and BNBM PLC have a common parent: that is their only corporate family connection.  BNBM Group has no ownership interest in Taishan.  BNBM Group does not even own shares of BNBM PLC.  BNBM Group has no control over BNBM PLC or Taishan.  The companies are separately

---

[1]   Although the Court made such jurisdictional findings, following discovery, with respect to Taishan Gypsum Co. and its subsidiary Ti'an Taishan Plasterboard Co., Ltd. (collectively, "Taishan"), it did not make equivalent factual findings with respect to BNBM Group.

owned, operated, financed and managed.  There is not a single indicia that these companies are alter egos.

Nor can Taishan's contacts with the forum states be imputed to BNBM Group because the Court found, while certifying the plaintiff class, that Taishan and BNBM Group (and others) constitute "a single business enterprise for purposes of . . . holding each of these entities liable for the conduct of their affiliated entities."  Rec Doc. 18028, at 12-20.  That finding, made on an uncontested record, relied entirely on Rule 36 Requests for Admissions made to Taishan, which the Court deemed admitted when Taishan failed to respond.  *Id.*  No requests for admission were made to or served on BNBM Group.  Taishan's deemed admissions cannot be used against BNBM Group under binding Fifth Circuit law.  *Becerra v. Asher*, 105 F.3d 1042, 1045 (5th Cir. 1997).  BNBM Group's entire lack of ownership in or control over Taishan, as shown by the declarations submitted with this motion, reflects that the vast majority of those deemed admissions are not in fact true and confirms the wisdom of the *Becerra* holding.

The Court also lacks jurisdiction over BNBM Group because it was never served with process in any of the cases.  Indeed, service appears to have been attempted in only one case. No attempt was made by plaintiffs to serve by alternate means and no motions made to the Court to permit alternative service.  The failure of service is an independent basis to dismiss the complaints under Rule 12(b)(5).

For the reasons described in this brief and the contemporaneously filed motion to vacate defaults filed contemporaneously, BNBM Group did not believe it was a proper defendant in these actions, and therefore did not previously participate in these cases.  In any event, controlling authority from the Court of Appeals for the Fifth Circuit establishes that this motion is timely and the preliminary default entered against BNBM Group is void if the Court lacks

jurisdiction.  *Jackson v. FIE Corp*., 302 F.3d 515, 523 (5th Cir. 2002).  BNBM Group is not

seeking to delay the MDL proceeding by these motions, but rather is only appropriately

proceeding in the exercise of its due process rights.  Accordingly, BNBM Group respectfully

requests the Court to dismiss the complaints against it under Rule 12.

## FACTUAL BACKGROUND

**A.      BNBM Group Never Has Conducted Business In The Forum States.**

BNBM Group is a Chinese company in the business of manufacturing pre-fabricated

houses, domestic sales of building supplies, and exporting and importing goods.[2]  As a building

material supply company, BNBM Group makes domestic sales, and sales to other countries,  of

drywall manufactured by other companies, including BNBM PLC and Taishan.  Yu Decl. ¶ 4.

However, during the period relevant to this action, 2005 to 2009, BNBM Group made no sales of

drywall to the United States.  *Id.*  Indeed, other than a potential delivery of a trial sample of

drywall to the United States in 2004, BNBM Group has not sold drywall to American customers

since 2001.  *Id.*

BNBM Group's only involvement in drywall sales to America during the relevant period

came in 2005 and 2006, when it acted as the export agent for the first few sales by BNBM PLC

of its own drywall to three American customers.[3]  Two of those customers were based in Florida

---

[2]   Declaration of Yanming Zhao, dated March 16, 2015, at paragraph 3 (the "Zhao Decl.," attached as **Exhibit 1**).  BNBM Group used to manufacture drywall, but has not done so since 1997.  Declaration of Xian Feng Yu, dated April 20, 2015, at paragraph 3 (the "Yu Decl.," attached as **Exhibit 2**).

[3]   Yu Decl. ¶¶ 5, 12; Declaration of Kai Cai, dated April 17, 2015, at paragraph ¶¶ 10(a)-(c) (the "Cai Decl.," attached as **Exhibit 3**).  The evidence shows that the drywall involved in these sales, which was manufactured by BNBM PLC, was not defective.  *See* Factual Background, Section E, in the Memorandum of BNBM PLC in Support of Its Motion to Dismiss the Complaints Pursuant to Rules 12(b)(2) and 12(b)(5), of even date herewith (the "BNBM PLC 12(b)(2) Memorandum").

(the third was in California), although BNBM Group never dealt with them in the United States. Cai Decl. ¶¶ 10(a)-(c); Yu. Decl. ¶¶ 18, 19.

BNBM Group was the export agent for sales of BNBM PLC-made drywall to the two Floridian companies, but without more that does not constitute doing business.  BNBM Group did not seek this business in Florida.  BNBM Group has never sold drywall or other products, or served as an export agent for sales of drywall or other products, to customers in Virginia or Louisiana. Yu Decl. ¶ 21.  BNBM Group has never imported products from suppliers in Virginia, Louisiana, or Florida, and does not act as an import agent for suppliers in those states. *Id.* ¶ 22.

Some of the facts showing that BNBM Group has not conducted business in the forum states include:

- BNBM Group has never registered to do business in the U.S., Yu Decl. ¶ 8;

- BNBM Group has never had an office based in the U.S., *id.* ¶ 6;

- BNBM Group has never solicited drywall sales in the United States, *id.* ¶ 11;

- BNBM Group has never paid taxes in the U.S., *id*. ¶ 10; and

- BNBM Group has never owned or leased property in the U.S., *id*. ¶ 9.

**B.    BNBM Group Contracted To Act As The Export Agent For BNBM PLC In Sales Of Drywall To Three American Customers.**

In 2005 and 2006, BNBM Group entered into three separate agreements with BNBM PLC to serve as its export agent in connection with sales of its drywall to the United States.  Yu Decl. ¶ 5; Cai Decl. ¶¶ 10(a)-(c).   BNBM PLC wanted to sell drywall to three American customers.  Yu Decl. ¶ 13; Cai Decl. ¶¶ 10(a)-(c).  In 2005, BNBM PLC did not have the regulatory approvals to export drywall to the United States.  Yu Decl. ¶ 13.  It therefore entered

into contracts with BNBM Group to provide export agency services on these transactions. *Id.* ¶ 13.

An export agent completes the customs declarations in its own name and collects the payment on behalf of the seller. *Id.* ¶ 14. Because the export agent is qualified to export goods, pursuant to China's export regulations it is permitted to execute the sale contract on behalf of the seller. *Id.* This practice is common in China's import-export business. *Id.* An export agent does not negotiate the sales contracts. *Id.* Nor does an export agent take physical possession of goods or inspect them (except for damage occurring in transit to port), and BNBM Group did not do so with the drywall at issue here. *Id.* ¶¶ 16-17. The drywall was packaged by the seller, not BNBM Group. *Id.* ¶ 17. No BNBM Group employee travelled to the United States in connection with the transactions. *Id.* ¶ 19.

For each of the three export transactions, BNBM Group charged its normal fees for providing export agency services. *Id.* ¶ 15. The contractual arrangements between BNBM Group and BNBM PLC were negotiated at arms length. *Id.* BNBM Group never served as an export agent for sales of Taishan drywall to the United States. *Id.* ¶ 20.

**C.      BNBM Group Is Not An Alter Ego Of BNBM PLC r Taishan.**

BNBM Group has no ownership interest in Taishan Gypsum, Co., Ltd. ("Taishan"). Zhao Decl. ¶ 8. Indeed, BNBM Group has never had an ownership interest in Taishan. *Id.* ¶ 8. Although BNBM Group formed BNBM PLC, it has had no ownership interest in it since 2005. *Id.* ¶ 6. BNBM Group and BNBM PLC have been managed and operated independently since BNBM PLC was formed in 1997. *Id.*

Not surprisingly, then, BNBM Group and BNBM PLC are not alter egos, and BNBM Group and Taishan are not alter egos.  In fact, there is not a single indicia to the contrary, and plaintiffs have adduced no such evidence.

1.   No Common Ownership and Control

In 1997, BNBM Group incorporated BNBM PLC and originally was its only shareholder. Zhao Decl. ¶ 6.  Until 2005, BNBM Group owned an equity interest, but it divested those shares and since 2005 has had no equity ownership or other financial interest in BNBM PLC.  *Id.* ¶¶ 6, 7.  The two always have operated independently.  *Id.* ¶ 6.

In separate transactions in 2005 and 2006, BNBM PLC acquired 42% of the shares of Taishan, an already established manufacturer of drywall, followed by the arms length purchase of an additional 23%.[4]  But by the time BNBM PLC had purchased its shares of Taishan, BNBM Group no longer had an ownership interest in BNBM PLC.  Therefore BNBM Group has never had any ownership interest in Taishan.  Zhao Decl. ¶ 8.  BNBM Group has never exercised control over Taishan's management or operations.  *Id.* ¶ 33.

2.   BNBM Group Complies with Corporate Governance Requirements

BNBM Group is independently incorporated.  Zhao Decl. ¶ 4.  It has its own Articles of Association.  *Id.*  Its independent Board of Directors and independent Board of Supervisors meet regularly.  *Id.* ¶¶ 4, 5.  BNBM Group complies with all corporate requirements under Chinese law.  *Id.* ¶ 5.  It holds shareholder and board meetings and obtains required authorizations for major transactions.  *Id.*  Likewise, BNBM PLC and Taishan comply with corporate governance requirements, conduct periodic meetings of directors and stockholders, and obtain required

---

[4]   Declaration of Yanjun Yang, dated April 16, 2015, at paragraph 8 (the "Yang Decl.," attached as **Exhibit 4**).

corporate authorizations for major transactions.  Chen Decl. ¶¶ 5, 11.  BNBM PLC is publicly traded and listed on the Shenzhen Stock Exchange.[5]

### 3. The Companies Are Operationally Distinct

BNBM Group's management and organization are completely separate from BNBM PLC and Taishan.  Zhao Decl. ¶ 28.  BNBM Group does not exercise control over BNBM PLC or Taishan's management or operation.  *Id.* ¶ 33.  Neither BNBM PLC nor Taishan has ever been authorized to act as an agent of BNBM Group, whether in making contracts or otherwise binding BNBM Group.  *Id.* ¶ 29.  BNBM Group has not fulfilled BNBM PLC's or Taishan's independent contractual obligations. *Id.* ¶ 26.  Neither have BNBM PLC nor Taishan met BNBM Group's contractual obligations. *Id.*

BNBM Group has not used or shared the same office spaces, secretarial staff, and office supplies as BNBM PLC or Taishan.  Zhao Decl. ¶¶ 24, 25.  Except for an overlapping supervisor, BNBM Group does not share employees, officers, or directors with BNBM PLC. *Id.* ¶ 11.  Likewise, BNBM Group has not shared employees or officers with Taishan.  *Id.* ¶ 10. Employees of BNBM Group have not worked concurrently for Taishan.  *Id.*  ¶ 9.  Employees have not performed duties for one company while employed by the other.  *Id.*

### 4. BNBM Group and BNBM PLC Are Not Undercapitalized

BNBM Group is not undercapitalized.  BNBM Group had substantial net profits in 2013 and 2014, as shown in its annual statements submitted herewith.[6]  BNBM Group is financially independent and is responsible for its own debts and losses.  Zhao Decl. ¶ 18.

---

[5] *See* BNBM PLC Annual Report 2014 at 6 (relevant excerpts attached as **Exhibit 5**).

[6]  *See* BNBM Group Annual Financial Statements 2014 at 5 (attached as **Exhibit 6**); BNBM Group Annual Financial Statements 2013 at 5 (relevant excerpts attached as **Exhibit 7**).

Nor is BNBM PLC undercapitalized. Publicly traded on the Shenzen Stock Exchange,[7] BNBM PLC had net profits of RMB 969,898,547.76 in 2014 and RMB 818,034,178.62 in 2013.[8] Nor is Taishan undercapitalized, as described in the Factual Background, Section C(3), of the BNBM PLC 12(b)(2) Memorandum.

In the course of these cases, plaintiffs have never proffered evidence that BNBM Group, BNBM PLC, or Taishan is undercapitalized. After all, BNBM Group has never provided funding to BNBM PLC or Taishan or paid for any of their expenses. Zhao Decl. ¶ 12. BNBM Group has never paid any debt for BNBM PLC or Taishan. *Id.* ¶ 32. BNBM Group has not paid any of BNBM PLC's or Taishan's losses. *Id.* ¶ 13. BNBM Group has not loaned money to BNBM PLC or Taishan. *Id.* ¶ 15. BNBM Group has never made payroll for PLC or Taishan. *Id.* ¶ 14.

> 5.   The Companies Have Independent Finances and Accounting

BNBM Group's finances, financial controls, and accounting functions operate independently of BNBM PLC and Taishan. No officer, director, or employee of BNBM Group controls the finances of BNBM PLC or Taishan. Zhao Decl. ¶ 17. Each company is responsible for its own debts, liabilities and losses.[9] They manage and use their assets separately. Zhao Decl. ¶¶ 34, 35; Chen Decl. ¶ 25. They have never had joint bank accounts. Zhao Decl. ¶ 16; Yang Decl. ¶ 11. They have never had centralized accounting or common accounting books. Zhao Decl. ¶¶ 19, 20; Yang Decl. ¶ 12. BNBM Group maintains its own profit and loss statements and its corporate accounting is separate and independent from BNBM PLC and

---

[7]   *See* Zhao Decl. ¶ 6; Ex. 5, BNBM PLC Annual Report 2014 at 6.

[8]   *See* Ex. 5, BNBM PLC Annual Report 2014 at 8.

[9]   *Id.* ¶ 18; Declaration of Yu Chen, dated April 16, 2013, at paragraphs 12, 13, 15 and 22 (the "Chen Decl.," attached as **Exhibit 8**).

Taishan. Zhao Decl. ¶ 27. Each prepares independent financial statements, separately audited by an independent third-party accounting firm that is independent of Taishan and BNBM PLC. *Id.* ¶ 30; Yang Decl. ¶¶ 16, 17. Each prepares and files separate tax returns. Zhao Decl. ¶ 31; Yang Decl. ¶ 16. BNBM Group, BNBM PLC, and Taishan are financially independent from one another.

6.  No Siphoning of Funds, Undocumented Transfers of Funds, or Unauthorized Withdrawal of Funds

BNBM Group, BNBM PLC, and Taishan manage and use their assets separately and have separate bank accounts and assets. Zhao Decl. ¶¶ 16, 18, 34, 35; Yang Decl ¶ 11; Chen Decl. ¶ 25. Neither can access the other's bank accounts. Zhao Decl. ¶¶ 22, 23. There have not been undocumented transfers of funds to or from BNBM Group. *Id.* ¶ 21. There is no evidence that the finances of BNBM Group, BNBM PLC, and Taishan are intertwined or that any helped themselves to or utilized the other's funds or assets.

**D.   BNBM Group Has Not Been Served And The Service Attempts Were Inadequate.**

It is undisputed that Plaintiffs have not actually served BNBM Group. Instead, Plaintiffs have submitted proofs of service attesting that service was attempted. In *Gross* there was only one effort to serve, long after the complaint was filed in October 2009. The *Gross* plaintiffs claim that they attempted to serve BNBM Group on August 25, 2010, and that service was rejected. (Rec. Docs. 7411-3, 7432-1). There is no evidence of any other attempt to serve BNBM Group. In *Amorin*, although BNBM Group is named as a defendant, there has been no attempt made to serve it. Nor was a motion made to enter a default against it in that case.

10

## ARGUMENT

To avoid burdening the Court with repetitive legal briefing, where possible BNBM Group incorporates by reference, as if fully restated herein, the arguments set forth in the BNBM PLC 12(b)(2) Memorandum, including the applicable legal standards set forth in that memorandum. The plaintiffs have the burden on this motion to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof. *Polskie Linie Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 972 (11th Cir. 1986). The plaintiffs cannot begin to meet that burden with respect to BNBM Group.

## I.   PLAINTIFFS CANNOT ESTABLISH JURISDICTION OVER BNBM GROUP IN THE FORUM STATES.

### A.   Florida's Long-Arm Statute Does Not Confer Jurisdiction Over BNBM Group.

Florida's long-arm statute, which confers "less jurisdiction upon Florida courts than allowed by the Due Process Clause," *Am. Investors Life Ins. Co. v. Webb Life Ins. Agency, Inc.*, 876 F. Supp. 1278, 1280 (S.D. Fla. 1995), focuses in pertinent part on whether BNBM Group operated a business or conducted business in Florida, committed a tortious act in the state or solicited sales or manufactured goods that caused injury in Florida. Fla. Stat. Ann. § 48.193.

#### 1.   BNBM Group Has Not Conducted Business In Florida.

None of the factors considered in exercising jurisdiction under § 48.193(1)(a)(1), which considers whether a defendant is conducting business in Florida, exists for BNBM Group. BNBM Group does not have an office, employee, or property in Florida, is not registered to do business in Florida, and has not solicited drywall sales or business in Florida. Yu Decl. ¶¶ 6-11. BNBM Group only acted as an export agent for two of BNBM PLC's Florida customers, each of whom took title of the drywall in China. Yu Decl. ¶¶ 12-14, 18; Cai Decl. ¶¶ 10(a)-(c), 12. By

acting as the export agent for these sales, BNBM Group only executed sales contracts on behalf of the seller, accepted payment on behalf of the seller, and completed customs forms.  Yu Decl. ¶ 14.  No BNBM Group employee travelled to Florida in connection with these exports.  *Id.* ¶ 19. BNBM Group did not manufacture, pack or inspect the drywall (except for damage in transit to the port).  *Id.* ¶¶ 3, 16, 17.  The only revenue BNBM Group derived from the transactions was from the export agent fees it charged BNBM PLC, not from amounts charged to a Florida customer.  *Cf.* Yu Decl. ¶ 15.  Consequently, BNBM Group does not have a general course of business activity in Florida for purposes of this subsection of the Florida long-arm statute.

### 2.    BNBM Group Committed No Tortious Acts In Florida.

Under § 48.193(1)(a)(2), a court has specific jurisdiction over a defendant where it commits a tortious act within this state.  *Reiss v. Ocean World, S.A.*, 11 So.3d 404, 406 (Fla. 4 Dist. Ct. App. 2009).  The plaintiff must demonstrate that the non-resident defendant committed a substantial aspect of the alleged tort in Florida.  *See General Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335, 1345 (S.D.Fla. 2002).  BNBM Group engaged in no acts in Florida. It did not sell drywall to Florida businesses.  Yu Decl. ¶ 4.  BNBM Group did not negotiate these transactions.  *Id.* ¶ 14.  It never had physical possession of the drywall and did not make or pack the drywall.  *Id.* ¶¶ 3, 14, 16, 17.  BNBM Group only acted as an export agent for two Florida customers, each of whom took title of the drywall in China.  Yu Decl. ¶¶ 12-14, 18; Cai Decl. ¶¶ 10(a)-(c), 12.  Downstream injury in Florida from a product placed into the stream of commerce outside Florida does not constitute commission of a substantial aspect of a tort for purposes of § 48.193(1)(a)(2).  *Blumberg v. Weiss & Co.*, 922 So. 2d 361, 364 (Fla. 3d DCA 2006).

3.      BNBM Group's Acts Did Not Cause Plaintiffs To Sustain An "Injury To
Person Or Property" in Florida.

Under subsection 6 of Florida's long-arm statute a defendant is subject to personal

jurisdiction if it causes injury to persons or property within Florida arising out of an act or

omission by the defendant outside Florida and if, at or about the time of the injury, either the

defendant was engaged in solicitation or service activities within this state, or "products,

materials, or things processed, services, or manufactured by the defendant anywhere were used

or consumed within this state in the ordinary course of commerce, trade, or use." Fla. Stat. Ann.

§ 48.193(1)(a)(6).  BNBM Group did not solicit sales of drywall in Florida, including the sales at

issue. Yu Decl. ¶ 11; Cai Decl. ¶¶ 4, 10(a)-(c).  BNBM Group did not engage in service activities

related to the sales within the State of Florida.  BNBM Group manufactured no drywall. Yu

Decl. ¶ 3.  Therefore this section of the Florida long-arm statute, too, is not met with respect to

BNBM Group.

**B.      The Louisiana And Virginia Long-Arm Statutes Are Coextensive With Due
         Process.**

The long-arm statutes of Louisiana and Virginia are coextensive with the Due Process

Clause, and thus require showing minimum contacts and the other due process factors before

jurisidiction can be exercised over a foreign defendant.  La. Rev. Stat. § 13:3201(A)(4) (2001);

Va. Code Ann. § 8.01-328.1.  Thus with respect to Louisiana and Virginia, the Court conducts

simply the one-step analysis of the constitutional due process requirement.  For the reasons set

forth in the following section, due process is not satisfied by the exercise of long-arm jurisdiction

over BNBM Group.

**C.**     **Due Process Precludes The Exercise Of Jurisdiction Over BNBM Group.**

1.     Plaintiffs Cannot Establish That BNBM Group Had Minimum Contacts in
the Forum States.

Plaintiffs cannot show that BNBM Group has minimum contacts in the forum states.[10]

BNBM Group has not "purposefully directed" its "activities at residents of the forum state or

purposely availed itself of the privilege of conducting activities there," and the litigation does not

result from "alleged injuries that arise out of or relate to those activities."  *De Reyes v. Marine*

*Mgmt. & Consulting, Ltd.*, 586 So. 2d 103, 106 (La. 1991).[11]   BNBM Group had no contacts

with Louisiana or Virginia.  The *only* activities involving BNBM Group in Florida were the sales

of drywall by BNBM PLC for which BNBM Group acted solely as the export agent.  BNBM

Group's activities as export agent with respect to these transactions occurred entirely in China.

There is no evidence that BNBM Group purposefully availed itself of the privilege of conducting

business in the forum states.  It "is essential in each case that there be some act by which the

defendant *purposefully avails* itself of the privilege of conducting activities within the forum

state, thus invoking the benefits and protections of its laws."  *Hanson v. Denckla*, 357 U.S. 235,

253 (1958); *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220-23 (11th Cir. 2009).

*a.*     *Fifth Circuit: Stream-of-Commerce Test*

The Fifth Circuit applies the stream-of-commerce test to personal jurisdiction, and

therefore BNBM Group's contacts with Louisiana are measured under the standard of whether it

"delivered the product into the stream of commerce with the **expectation** that it would be

purchased by or used by consumers in the forum state."  *Bearry v. Beech Aircraft Corp.*, 818

---

[10]   *See* Argument § I(D) of the BNBM PLC 12(b)(2) Memorandum.

[11]   *See also Hunt v. Schulte Homes Corp.*, 657 So. 2d 124, 127-28 (La. App. 3d Cir. 1995);
*Fricke v. Owens-Corning Fiberglass Corp.*, 647 So. 2d 1260, 1264-65 (La. App. 4th Cir. 1994);
*Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 328 (4th Cir. 2013); *Madara v. Hall*, 916 F.2d
1510, 1516-17 (11th Cir. 1990).

F.2d 370, 374 (5th Cir. 1987).  BNBM Group did not deliver any product into Louisiana.  It sold no drywall and was the export agent only on sales to Florida and California.  Cai Decl. ¶ 10(a)-(c); Yu Decl. ¶ 5.  BNBM Group has never made any sales of drywall or any other products, nor served as an export agent for any sales of drywall or any other products, to customers in Louisiana. Yu Decl. ¶ 21.  BNBM Group has never imported any product, nor served as an import agent for any product, from a supplier in Louisiana.  *Id.* ¶ 22.   BNBM Group has never been registered to do business in Louisiana, never marketed drywall in Louisiana, never maintained an office there, never owned or leased property in Louisiana, never qualified to do business in Louisiana, and never sent representatives or employees to solicit business there. Yu Decl. ¶¶ 5-11.  BNBM Group had no reason to expect that the drywall for which it acted as export agent would be distributed or sold in Louisiana.  *C.f.* Cai Decl. ¶¶ 10(a)-(c).

BNBM Group never purposefully availed itself of the benefits of doing business in Louisiana (or any other state) simply by acting as the export agent for the sale of BNBM PLC drywall.  *Cf. World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (a nonresident may permissibly structure its conduct to avoid being haled into court in a particular state).  It was not the export agent for sales to Louisiana, and it sold no drywall anywhere.  Its actions as export agent in dealing with Florida customers constitute insufficient minimum contacts to find jurisdiction in Louisiana. *See,* e.g, *Nicastro v. J. McIntyre Machinery, Ltd*., 131 S.Ct. 2780, 2788 (2011); *Johnston v. Multidata Systems International Corp*., 523 F.3d 602, 611 (5th Cir. 2008); *Helicopteros Nacionales De Colombia, S.A. v. Hall*, 466 U.S. 408, 416-17 (1984).

> **b.** **Fourth and Eleventh Circuits: Stream-Of-Commerce Plus Test**

The Fourth and Eleventh Circuits Courts of Appeals, relevant for analysis of personal jurisdiction based in Virginia and Florida cases, apply the more stringent "stream-of-commerce

plus test," whereby the placement of a product into the stream of commerce must be accompanied by a "substantial connection to the forum state by [an] action purposefully directed toward the forum state or otherwise." *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945-46 (4th Cir. 1994). For the exercise of jurisdiction to be constitutionally permissible under this standard, the defendant must have undertaken some additional conduct to service the forum market beyond merely selling a product on foreign soil to a foreign company, such as advertising in the forum, providing regular advice to customers in the forum or marketing through sales agents in the forum. *Lesnick*, 35 F.3d at 944-46. The foreseeability that a product would arrive in a forum state is irrelevant unless the defendant had purposeful contacts with the forum state. *Chung v. Nana Dev. Corp.*, 783 F.2d 1124, 1127-28 (4th Cir. 1986). Personal jurisdiction cannot be exercised over a foreign defendant for its conduct abroad unless the defendant deliberately directed—and intended to direct—its conduct at the forum state.[12]

BNBM Group did not deliberately and intentionally direct any conduct at Virginia or Florida. To the contrary, BNBM Group has done *no* business in Virginia or Florida and has never purposely directed its activities towards either state.[13] BNBM Group has never been registered to do business in Virginia and Florida, marketed drywall there, or sent anybody there in connection with sales of drywall. Yu Decl. ¶¶ 4, 8, 11, 19, 21; *cf.* Cai Decl. ¶¶ 3, 4, 7, 8. BNBM Group has had no offices or property in the United States, let alone Virginia or Florida.

---

[12]   *See In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997) (requiring "purposeful" contacts); *Central Va. Aviation, Inc. v. N. Am. Flight Servs., Inc.*, 23 F. Supp. 3d 625, 630-31 (E.D. Va. 2014); *Thomas v. Brown*, No. 11-62261, 2012 WL 987760, at *8 (S.D.Fla. Mar. 22, 2012) (reiterating the importance of "purposeful availment").

[13]   *Cf. Nicastro v. J. McIntyre Machinery, Ltd.*, 131 S.Ct. 2780, 2790-91 (2011); *AESP, Inc. v. Signamax, LLC*, 29 F. Supp. 3d 683, 690-91 (E.D.Va. 2014); *Yates v. Motivation Indus. Equipment Ltd.*, 38 Fed. Appx. 174, 176-180 (4th Cir. 2002); *Bullard Abrasives, Inc. v. Taiwan Resibon Abrasive Products Co.*, No. 8:09-CV-199, 2009 WL 1659304, at *4-5 (M.D.Fla. June 15, 2009); *China Products Northwest, Inc. v. D.J. Broesamle Co.*, 535 So.2d 619, 621-22 (Fla. 1st DCA 1988).

Yu Decl. ¶¶ 6, 9.  BNBM Group is not incorporated in Virginia or Florida, licensed to do business in either state, or a taxpayer in either state.  *Id.* ¶¶ 7, 8, 10.  BNBM Group imports nothing from Florida or Virginia suppliers.  *Id.* ¶ 22.  BNBM Group's arrangement as export agent for the sale of drywall to two customers in Florida, its sole brush with any forum state, as a matter of law does not constitute "purposeful availment" by BNBM Group sufficient to exercise jurisdiction over the company.

2.   <u>The Contacts of Others Cannot Be Attributed to BNBM Group</u>

The plaintiffs have argued that the Court can exercise jurisdiction over BNBM Group through its ties to BNBM PLC or Taishan.  But it has had no ties to BNBM PLC since 2005, and when it did have an ownership interest in PLC the two companies were managed and operated with complete independence from one another.  *See* Zhao Decl. ¶¶ 6, 7.  Moreover, BNBM Group has never had an ownership interest in Taishan.  *Id*. ¶ 8.

There is thus no basis at law that would permit the Court to impute BNBM PLC's or Taishan's forum contacts to BNBM Group. As explained in Argument Section I(D)(2)(a) of the BNBM PLC 12(b)(2) Memorandum, any veil piercing or alter ego analysis related to BNBM Group must be conducted pursuant to the law of China.  Applying Chinese Company Law to BNBM Group, there can be no piercing of the veil. Chinese law permits piercing the veil when a **shareholder** of a company "evades the payment of its debts by abusing the independent status of juridical person or the shareholder's limited liabilities, and thus seriously damages the interest of any creditor."[14]  BNBM Group is not a shareholder of either BNBM PLC or Taishan.  BNBM Group has never been a shareholder of Taishan, and has not owned shares of BNBM PLC since

---

[14]   Declaration of Zhu Yan, expert witness for Taishan and Taian Taishan Plasterboard Co., Ltd., dated March 30, 2012 (Rec. Doc. 14572-1), at paragraph 47 (quoting Article 20 of the Company Law) (the "Yan Decl.").

2005.  BNBM Group exercises no control, in any form, over BNBM PLC or Taishan.  There is
no evidence whatsoever that during the period from 1997 to 2005, when BNBM Group was a
shareholder of BNBM PLC, it ever abused the independent juridical status of PLC or its own
limited liabilities, much less that any such actions has anything to do with the plaintiffs' claims
here.

The result is the same if the law of Florida, Louisiana, or Virginia is applied.[15]  There is
no indicia of control by BNBM Group over BNBM PLC or Taishan.  BNBM Group had no
ownership interest.  The companies have separate operations, management, officers, employees,
bank accounts, accounting records, offices, assets, liabilities, debts, financial statements, tax
returns—everything involved in running a business is separate.  Neither acts as the other's agent.
Neither contracts for the other or fulfills the other's contracts. There is no comingling of funds,
failure to follow statutory formalities for incorporating corporate affairs, undercapitalization,
failure to maintain separate bank accounts and bookkeeping records, and failure to hold regular
shareholder and director meetings.  Thus BNBM Group cannot be considered the alter ego of
BNBM PLC or Taishan under any of the forum states' laws.

As the Court has recognized elsewhere, "Courts impose liability on shareholders in only
the most rare and extraordinary of circumstances." *Morales v. Bayou Concessions Salvage, Inc.*,
No. 03-657, 2004 WL 2381525, at *2 (E.D. La. Oct. 2004).  The Court's previous finding that
Taishan, BNBM PLC, BNBM Group, and others constitute "a single business enterprise" rests
entirely upon Taishan's deemed admissions when they failed to respond to Rule 36 requests to
admit.  (Rec Doc. 18028, at 12-20).  Controlling precedent prevents those deemed admissions
from being used against BNBM Group.  *See Becerra v. Asher*, 105 F.3d 1042, 1045 (5th Cir.

---

[15]  The alter ego law of Florida, Louisiana, and Virginia is described at Argument Section
I(D)(2)(c) of the BNBM PLC 12(b)(2) Memorandum.

1997), *as supplemented on denial of reh'g* (Apr. 7, 1997) (deemed admissions of one party

cannot be used against a co-party); *Riberglass, Inc. v. Techni-Glass Indus., Inc*., 811 F.2d 565,

566-67 (11th Cir. 1987) (deemed admissions of co-defendants could not bind defendant who did

respond to requests); *Earl Realty, Inc. v. Leonetti* (*In re Leonetti*), 28 B.R. 1003, 1009 (E.D. Pa.

1983) (admission of one defendant not admissible against co-defendant).   The perils of wielding

admissions by one party against another is shown here, where deemed admissions by Taishan

would have the effect of making BNBM Group, with no ownership interest in Taishan and no

control over Taishan, its alter ego.   BNBM Group therefore respectfully submits that the Court's

prior finding that BNBM PLC, BNBM Group, and Taishan constitute a "single business

enterprise" should not stand.

3.    Plaintiffs' Causes of Action Did Not Arise Out of BNBM Group's
        Contacts With the Forum States.

To satisfy their burden of proving that the Court may exercise personal jurisdiction over

BNBM Group consistent with due process, plaintiffs must show that their claims arose out of or

resulted from BNBM Group's contacts with the forum states.  *Seiferth v. Helicopteros Atuneros,*

*Inc.*, 472 F.3d 266, 271 (5th Cir. 2006); *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d

273, 277-78 (4th Cir. 2009); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Given that

BNBM Group made no drywall sales in Florida, Louisiana, or Virginia and had no other contacts

there, plaintiffs cannot demonstrate the requisite nexus between their claims and BNBM Group's

conduct directed at those states.  *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1270 n.21 (5th Cir.

1981).  BNBM Group did not have "fair warning" that its activities could be subject to Florida,

Louisiana, or Virginia law.  *See Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220-23

(11th Cir. 2009).

4.      Jurisdiction Over BNBM Group Would Not Comport With Notions of
        Fair Play and Substantial Justice.

The exercise of personal jurisdiction must be constitutionally reasonable. The Court thus considers additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985); *Consulting Eng'rs*, 561 F.3d at 277. The Court cannot exercise personal jurisdiction over BNBM Group because it would offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.

Each of the five "fairness" factors set out in *Burger King* weigh against asserting personal jurisdiction over BNBM Group.  First, BNBM Group has been and will continue to be heavily burdened.  To defend these cases BNBM Group has incurred and will continue to incur substantial costs, including traveling around the world, translating the voluminous current and future court filings, and surmounting logistical difficulties in litigating a matter half way around the globe.  The Court has ordered that depositions will occur in Louisiana, which requires senior officers of the company to obtain visas to enter the United States and travel to the United States for depositions, greatly lengthening their time away from work.  Once this matter proceeds to a defense on the merits, such burdens will increase exponentially.  The burdens on BNBM Group will be so severe that they would be constitutionally unreasonable.

The plaintiffs and the forum states do not have a countervailing interest.  BNBM Group did not sell the drywall that injured them, had no contacts with Florida, Louisiana, or Virginia in connection with the drywall sales, and does not do business in the forum states.  *See* Yu decl. ¶¶ 5-22.

The judicial system's interest in efficient resolution of controversies weighs against exercising jurisdiction over BNBM Group, because of the difficulties relating to translation,

20

travel, and cross-continent discovery in this litigation, as evidenced already in this litigation. Hauling a Chinese company into a matter where it has no connection at all does not serve this Court's interest in efficiently resolving the matter.

The shared interest of the "several states" in a case with a foreign defendant requires "a court to consider the procedural and substantive policies of other *nations* whose interests are affected by the assertion of jurisdiction" of the forum states. *Asahi Metal Indus. v. Superior Court*, 480 U.S. 115, 115 (1987). Here, litigating in the forum states would offend China's procedural and substantive policies, especially its policies regarding the separateness of companies. This is particularly the case when BNBM Group did not seek out customers in the United States, did not market here, made no sales here, and did nothing more than act as an export agent for a few sales of drywall.

## II.   THE ACTIONS AGAINST BNBM GROUP SHOULD BE DISMISSED UNDER RULE 12(B)(5) BECAUSE IT HAS NOT BEEN SERVED WITH PROCESS

Because BNBM Group was not properly served with process in any of the actions in which this Court entered preliminary defaults against them, the preliminary defaults must be vacated. "A judgment rendered in the absence of personal jurisdiction is void and must be set aside." *McGuire v. Sigma Coatings, Inc.*, 48 F.3d 902, 907 (5th Cir. 1995). To acquire jurisdiction over the person, "a court must serve on the person a document, 'such as a summons, notice, writ, or order.'" *Id*. This fundamental tenet applies to default judgments. *See Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*, 841 F.2d 646, 649 (5th Cir. 1998); *High Island Health, LLC v. Libertybelle Mktg. Ltd.*, No. CIV A H-06-2931, 2007 WL 1173631, at *3-7 (S.D. Tex. Apr. 18, 2007).

Here, there is no evidence that the *Amorin* plaintiffs served BNBM Group. The *Gross* plaintiffs tried once to deliver process and claim they were turned away. There is no evidence

21

they ever tried again, or sought to make service by any alternative means. (Rec. Doc. 7411-3, 7432-1).

When a defendant resides outside the United States, and service cannot be made under the Hague Convention's procedures, the proper way to make service is Federal Rule of Civil Procedure 4(f)(3), which allows service "by other means not prohibited by international agreement, as the court orders."  *BP Products N. Am., Inc. v. Dagra*, 236 F.R.D. 270, 271 (E.D. Va. 2006); *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002) ("Thus, when Rio presented the district court with its inability to serve an elusive international defendant, striving to evade service of process, the district court properly exercised its discretionary powers to craft alternate means of service."); *S.E.C. v. Tome*, 833 F.2d 1086, 1092-93 (2d Cir. 1987) ("Where the plaintiff can show that deliberate avoidance and obstruction by the defendants have made the giving of notice impossible, statutes and caselaw have allowed substitute notice by mail and by publication in media of general and wide circulation."); *Seiko Epson Corp. v. Glory S. Software Mfg., Inc.*, No. 06-CV-236-BR, 2007 WL 282145, at *2 (D. Or. Jan. 24, 2007).  For example, in *Gurung v. Malhotra*, 279 F.R.D. 215, 221 (S.D.N.Y. 2011), service via e-mail was approved.

Here, the *Gross* plaintiffs attempted no other means of service, and did not seek permission from the Court to serve by other means.  A plaintiff that is unable to serve an international defendant with process cannot be excused from the service requirement simply by claiming that service is futile.  Yet that is precisely what the *Gross* plaintiffs have done here.

The Court therefore lacks jurisdiction over BNBM Group.  BNBM Group respectfully requests that the complaints against it be dismissed for lack of service, pursuant to Rule 12(b)(5).

## CONCLUSION

For all of the foregoing reasons, and the reasons set forth in BNBM Group's other motions and papers, defendant BNBM Group respectfully requests the Court to dismiss the complaints against it in this MDL proceeding.

Dated:  April 29, 2015

Respectfully submitted,

**DENTONS US LLP**

By: *_/s/ Michael H. Barr_____*
Michael H. Barr
New York Bar No. 1744242
Justin N. Kattan
New York Bar No. 3983905
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
michael.barr@dentons.com
justin.kattan@dentons.com

- and -

Richard L. Fenton
Illinois Bar No. 3121699
Leah R. Bruno
Illinois Bar No. 6269469
233 South Wacker Drive
Suite 7800
Chicago, IL  60606-6306
Telephone:  (312) 876-8000
Facsimile:  (312) 876-7934
richard.fenton@dentons.com
leah.bruno@dentons.com

- and -

23

C. Michael Moore
Texas Bar No. 14323600
Gene R. Besen
Texas Bar No. 24045491
2000 McKinney Ave, Suite 1900
Dallas, TX  75201
Telephone:  (214) 259-0900
Facsimile:  (214) 259-0910
mike.moore@dentons.com
gene.besen@dentons.com

- and -

**PHELPS DUNBAR LLP**

Harry Rosenberg
Louisiana Bar No. 11465
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130
harry.rosenberg@phelps.com

***Attorneys for Beijing New Building Material (Group) Co., Ltd. and Beijing New Building Materials Public Limited Company***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing **Memorandum In Support of Motion to Dismiss the Complaints Pursuant to Rules 12(b)(2) and 12(b)(5)** has been served on Plaintiffs' Liaison Counsel, Leonard Davis, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with the Pretrial Order No. 6, and that the foregoing was also electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this April 29, 2015.

*/s/      Michael H. Barr*