UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

THIS DOCUMENT RELATES TO:

*Amorin et al. v. Taishan Gypsum Co. Ltd. et al.*, Case No. 2:11-cv-01673

*Wiltz et al. v. Beijing New Building Material Public Limited Company et al.*, Case No. 2:10-cv-00361

*Gross et al. v. Knauf Gips KG et al.*, Case No. 2:09-cv-06690

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF BEIJING NEW BUILDING
MATERIALS PUBLIC LIMITED CO.
AND BEIJING NEW BUILDING MATERIAL (GROUP) CO., LTD.
TO VACATE ENTRIES OF PRELIMINARY DEFAULT

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................................. 5

    A.    BNBM PLC and BNBM Group Were Involved In Sales of Drywall to Only A Handful of U.S. Customers During the Relevant Period ....................................... 5

    B.    The Evidence Shows That BNBM PLC's Drywall Was Not Defective ................ 6

    C.    BNBM PLC and BNBM Group Were Not Alter Egos of Taishan ........................ 9

    D.    Complaints, Proof of Service, and Pre-Trial Order 1G ....................................... 12

    E.    Motions for Preliminary Default ......................................................................... 13

        1.    *Gross* (2:09-cv-6690) ............................................................................ 14

        2.    *Wiltz* (2:10-cv-0361) ............................................................................. 15

        3.    *Amorin* (2:11-cv-1673) ......................................................................... 15

    F.    Preliminary Default Judgments Entered ............................................................. 15

    G.    BNBM PLC and BNBM Group Have Cured The Defaults ................................. 16

LEGAL STANDARD ................................................................................................................ 16

ARGUMENT ............................................................................................................................. 17

I.    BNBM PLC AND BNBM GROUP HAVE MERITORIOUS DEFENSES ................... 17

    A.    The Drywall Sold By BNBM PLC Was Not Defective ...................................... 17

    B.    The Court Does Not Have Personal Jurisdiction Over BNBM PLC or BNBM Group ................................................................................................................... 18

II.    THE DEFAULT WAS NOT WILLFUL ........................................................................ 23

III.    LIFTING THE DEFAULT WOULD NOT PREJUDICE PLAINTIFFS ........................ 25

IV.    DEFAULT WOULD IMPOSE AN ENORMOUS FINANCIAL LOSS ON BNBM PLC AND BNBM GROUP .................................................................................................... 27

V.    THE PUBLIC INTEREST IS NOT IMPLICATED IN FAVOR OF PLAINTIFFS ........ 27

VI.    THE DEFAULTS MUST BE VACATED BECAUSE PLAINTIFFS FAILED TO SERVE THE COMPLAINTS ON BNBM GROUP AND BNBM PLC ......................... 28

CONCLUSION .......................................................................................................................... 29

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adm'rs of Tulane Educ. Fund v. Ipsen, S.A.*,
   450 F. App'x 326 (5th Cir. 2011) .........................................................20

*Becerra v. Asher*,
   921 F. Supp. 1538 (S.D. Tex. 1996), *aff'd* 105 F.3d 1042 (5th Cir. 1997) ........................3, 21

*Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*,
   841 F.2d 646 (5th Cir.1998) ..............................................................28

*Bona Fide Demolition & Recovery, LLC v. Crosby Const. Co. of La., Inc.*,
   No. 07-cv-3115, 2009 WL 4060192 (E.D. La. Nov. 20, 2009)...............................................25

*BP Prod. N. Am., Inc. v. Dagra*,
   236 F.R.D. 270 (E.D. Va. 2006) ...........................................................29

*Broadcast Music, Inc. v. M.T.S. Enterprises, Inc.*,
   811 F.2d 278 (5th Cir. 1987) ..............................................................23

*C & G Boats, Inc. v. Texas Ohio Servs., Inc.*,
   164 F.R.D. 57 (E.D. La. 1995)...........................................................23, 26

*Carl Marks & Co. v. Union of Soviet Socialist Republics*,
   665 F. Supp. 323 (S.D.N.Y. 1987) .........................................................25

*In re Chinese Manuf. Drywall Prod. Liab. Litig.*,
   894 F. Supp. 2d 819 (E.D. La. 2012).....................................................18, 19

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
   753 F.3d 521 (5th Cir. 2014) ..............................................................17

*CJC Holdings, Inc. v. Wright & Lato, Inc.*,
   979 F.2d 60 (5th Cir. 1992) ...............................................................17

*Earl Realty, Inc. v. Leonetti (In re Leonetti)*,
   28 B.R. 1003 (E.D. Pa. 1983) .............................................................21

*Gurung v. Malhotra*,
   279 F.R.D. 215 (S.D.N.Y. 2011) ..........................................................29

*Henderson v. Compass Groups*,
   No. 10-cv-447, 2010 WL 3488137 (M.D. La. Aug. 30, 2010)...............................................24

*High Island Health, LLC v. Libertybelle Mktg. Ltd.*,
   No. CIV A H-06-2931, 2007 WL 1173631 (S.D. Tex. Apr. 18, 2007)....................................28

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
   456 U.S. 694 (1982).............................................................................................................23

*Jackson v. FIE*,
   302 F.3d 515 (5th Cir. 2002) ........................................................................................3, 23

*Jackson v. Tanfoglio Giuseppe, S.R.L.*,
   615 F.3d 579 (5th Cir. 2010) ...............................................................................................20

*Jenkens & Gilchrist v. Groia & Co.*,
   542 F.3d 114 (5th Cir. 2008) ...............................................................................................26

*Lacy v. Sitel Corp.*,
   227 F.3d 290 (5th Cir. 2000) ...........................................................................23, 24, 26, 27

*In re Marinez*,
   589 F.3d 772 (5th Cir. 2009) ...............................................................................................27

*Mattress Giant Corp. v. Motor Advertising & Design Inc.*,
   No. 2:07-cv-1728, 2008 WL 898772 (N.D. Tex. Mar. 31, 2008)...........................................25

*McGuire v. Sigma Coatings, Inc.*,
   48 F.3d 902 (5th Cir. 1995) .................................................................................................28

*Mollohan v. Price*,
   No. 2:13-cv-32251, 2014 WL 4181476 (S.D. W. Va. Aug. 20, 2014)....................................24

*In re OCA, Inc.*,
   551 F.3d 359 (5th Cir. 2008) ...............................................................................................17

*Riberglass, Inc. v. Techni-Glass Indus., Inc.*,
   811 F.2d 565 (11th Cir. 1987) .............................................................................................21

*Rio Properties, Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) .............................................................................................29

*Robinson v. Texas Dep't of Human Servs.*,
   No. 93-9079, 1995 WL 29203 (5th Cir. 1995) (unpublished per curiam)..............................27

*Rogers v. Hartford Life & Accident Ins. Co.*,
   167 F.3d 933 (5th Cir.1999) ...............................................................................................28

*S.E.C. v. Tome*,
   833 F.2d 1086 (2d Cir. 1987)...............................................................................................29

*Scott v. Carpanzano*,
    556 F. App'x 288 (5th Cir. 2014) ............................................................................23

*United States v. Bestfoods*,
    524 U.S. 51 (1998)..............................................................................................20

*United States v. One Parcel of Real Property,*
    763 F.2d 181, 183 (5th Cir. 1985)..........................................................4, 17, 27

## Other Authorities

Fed. R. Civ. P. 4 ...........................................................................................28, 29

Fed. R. Civ. P. 26 .........................................................................................14, 24

Fed. R. Civ. P. 36 ...........................................................................................2, 21

Fed. R. Civ. P. 55(a) ...........................................................................................17

Fed. R. Civ. P. 60(b) .................................................................................17, 24, 28

Beijing New Building Materials Public Limited Company ("BNBM PLC" or "PLC") and Beijing New Building Material (Group) Co., Ltd. ("BNBM Group" or "Group") respectfully submit this Memorandum of Law in Support of their Motion to Vacate Entries of Preliminary Default.

## PRELIMINARY STATEMENT

BNBM PLC and BNBM Group have good cause for vacating the preliminary defaults that have been entered against them because, among other reasons, both companies can assert meritorious defenses to the claims raised in the above-captioned actions.

*First*, the evidence of record in the case, and the studies and reports of the U.S. Consumer Products Safety Commission ("CPSC"), do not show that BNBM PLC and BNBM Group were involved in the sale of any drywall that harmed the plaintiffs. BNBM PLC made only eight (or possibly nine) sales of drywall to five American customers, all in 2005 and 2006. BNBM Group, a building supply company, was the export agent for the first few sales to three of these customers. BNBM PLC and BNBM Group believe that there was nothing wrong with BNBM PLC's drywall. If the Court determines it has jurisdiction, BNBM PLC will prove at trial that its drywall did not have the high levels of sulfur emissions presented by some other brands of drywall manufactured in China in 2005 and 2006. That this defense is at a minimum "meritorious," as required to vacate entry of a default, is confirmed by the testing performed by the Lawrence Berkley National Laboratory at the direction of the CPSC. The CPSC-testing showed that the sample of BNBM PLC drywall manufactured in 2006 "had low or no detectable emissions of hydrogen sulfide." (*See* footnote 4 below).

*Second*, the Court does not have jurisdiction over either BNBM PLC or BNBM Group. Neither company markets to the relevant forum states, is in the business of selling drywall to the forum states, or conducts other business that would subject them to long-arm jurisdiction there.

The transactions with five American companies described above were consummated in China after meetings in China initiated by the American buyers, did not involve the allegedly defective drywall at issue in these cases, and are insufficient to establish minimum contacts with Florida, Louisiana, or Virginia.

Although this Court found, following certain discovery, that it had jurisdiction over Taishan Gypsum Co. and its subsidiary Ti'an Taishan Plasterboard Co., Ltd. (collectively, "Taishan"), there have been no such findings as to either BNBM PLC or BNBM Group.  There is no evidence that would allow this Court to impute Taishan's forum contacts to BNBM PLC or BNBM Group.  BNBM Group has no ownership interest in Taishan.  BNBM PLC is a 65% shareholder of Taishan's, but it does not unilaterally control Taishan and its interest is short of the supermajority required for significant votes.  Taishan operates independently and with separate management.  Taishan and BNBM PLC make and market different drywall under different brands (BNBM PLC does not market in the U.S., and BNBM Group does not manufacture or sell drywall to the U.S.).  Taishan and BNBM PLC also do not act as agents for each other, and do not fulfill each other's contracts.  There are no indicia that they are mere alter egos.

Nor can Taishan's contacts with the forum states be imputed to BNBM PLC and BNBM Group based on the Court's finding in its class certification order that Taishan, BNBM PLC, BNBM Group, and others constitute "a single business enterprise for purposes of. . . holding each of these entities liable for the conduct of their affiliated entities." (Rec Doc. 18028, at 12-20).  That finding, made on an uncontested record, was based solely on deemed Rule 36 admissions by Taishan, after it did not respond to requests to admit.  Those requests were not made to or served on BNBM PLC or BNBM Group, and the resultant admissions therefore

2

cannot be used against BNBM PLC or BNBM Group.  *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997).  Indeed, the facts attested in the declarations accompanying this Motion squarely contradict those deemed admissions.

BNBM PLC and BNBM Group have not waived their personal jurisdiction defenses by not responding or appearing earlier in the case.  *Jackson v. FIE*, 302 F.3d 515, 523 (5th Cir. 2002).  A default is void if entered without jurisdiction.  The preliminary defaults here were entered without an analysis of whether personal jurisdiction over BNBM PLC and BNBM Group comports with due process.  The plaintiffs' position that a default cannot be challenged for lack of jurisdiction is "against all federal authority."  *Id.*  BNBM PLC and BNBM Group are not seeking to delay the MDL proceeding by this Motion, but rather are only appropriately proceeding in the exercise of their due process rights.  The Court has noted that these motions and the MDL proceedings will progress on parallel tracks.

Not only do BNBM PLC and BNBM Group have meritorious defenses to assert, the other relevant factors uniformly weigh in favor of vacating the defaults.

Vacating the preliminary defaults will not prejudice the Plaintiffs.  Plaintiffs are not finished amending their complaints; BNBM PLC and BNBM Group are not yet on the clock to file answers or motions to dismiss.  The delay that has occurred, albeit regrettable, has not prejudiced the Plaintiffs or increased difficulties of discovery.  In contrast with the lack of prejudice to the Plaintiffs, maintaining the preliminary defaults against BNBM PLC and BNBM Group will impose substantial financial losses upon two entities that the record evidence shows did not make defective drywall.  The public interest in seeing that plaintiffs harmed by defective foreign products are made whole must be weighed against the due process owed to BNBM PLC and BNBM Group.

BNBM PLC and BNBM Group also have acted to correct the preliminary defaults.  Each have filed notices of appearance and served their required profile forms, which were fully and accurately completed.  Each are participating in discovery.  Each have complied in all respects with the Court's March 17, 2015 Minute Entry and Orders.  Counsel has met and conferred with counsel for the PSC on meeting discovery obligations as expeditiously as possible.  Expeditious, extensive, and expensive efforts are being made to gather documents for production in China and to produce witnesses for depositions.

Even assuming, *arguendo*, that BNBM PLC and BNBM Group were unable to establish good cause, the preliminary defaults should be vacated because Plaintiffs' motions to default BNBM PLC and BNBM Group were granted without the requisite evidence that the summons and complaint had been properly served.  The proofs of service of the summons and complaint filed in the *Wiltz* case show that service was not properly attempted on BNBM PLC; instead, service was attempted on BNBM Group, which is not a defendant in that action.  There is thus no basis to hold BNBM PLC in default in *Wiltz*.  The proofs of service in the *Gross* action similarly show that service was not properly attempted in that case.  The *Amorin* default motion was supported by only an unsworn, unsupported attorney's statement about service in the motion papers, not by proofs of service.

The defaults entered against BNBM PLC and BNBM Group are thus very different than the defaults against Taishan in the *Gross, Mitchell,* and *Wiltz* cases, which were the subject of the Fifth Circuit appeal.  BNBM PLC and BNBM Group did not sell defective drywall into the respective jurisdictions.  Their defenses are not speculative but instead are supported by the findings of the CPSC.  "[M]odern federal procedure favors trial on the merits."  *United States v. One Parcel of Real Property,* 763 F.2d 181, 183 (5th Cir. 1985).  Good cause exists for the Court

to vacate the preliminary defaults against BNBM PLC and BNBM Group, and justice requires it.

BNBM PLC and BNBM Group respectfully request the Court to vacate the preliminary defaults,

permit a substantive, merits-based determination of whether there is jurisdiction and, should the

Court determine that it has jurisdiction, hold a trial on the merits of whether BNBM PLC or

BNBM Group harmed any of the plaintiffs.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.    BNBM PLC and BNBM Group Were Involved In Sales of Drywall to Only A Handful of U.S. Customers During the Relevant Period**

During the relevant period of 2005 to 2009, BNBM PLC made sales of drywall to only

five United States companies.[1]  Between November 2005 and July 2006, five customers based in

the United States initiated contact with BNBM PLC, met with BNBM PLC in China, and

purchased drywall.  Cai Decl. ¶¶ 6-9.  Each of the sales involved drywall manufactured by

BNBM PLC.  Cai Decl. ¶¶ 10(a)-(f).  BNBM PLC had no involvement with any other sales of

drywall or the sales of any other brand of drywall.  *Id.*  ¶¶ 11-12.

BNBM Group has not manufactured drywall since 1997.[2]  Instead, BNBM Group is a

building supply company which, with three exceptions, has not been involved in the export of

drywall to the United States during the relevant period.  Yu Decl. ¶¶ 3-4.  In 2005 and 2006,

BNBM Group entered into three separate agreements with BNBM PLC to serve as its export

agent in connection with sales of BNBM PLC drywall to three of BNBM PLC's customers in

California and Florida.  Yu Decl. ¶¶ 4, 12, 13.  Its sole role in these sales was to execute

contracts, complete customs forms, and collect payment on behalf of BNBM PLC, all in its

---

[1]  Declaration of Kai Cai, dated April 17, 2015, at paragraph 5 (the "Cai Decl.," attached as **Exhibit 1**).

[2]  Declaration of Xianfeng Yu, dated April 20, 2015, at paragraph 3 (the "Yu Decl.," attached as **Exhibit 2**).

capacity as export agent on behalf of BNBM PLC.  Cai Decl. ¶¶ 10(a)-(c); Yu Decl. ¶¶ 14-17.

**B.      The Evidence Shows That BNBM PLC's Drywall Was Not Defective**

Thus, out of all the drywall transactions invoked by plaintiffs in this MDL, BNBM PLC

made only eight or nine sales of drywall it manufactured to five American customers.  BNBM

Group acted as the export agent for the first few sales to three of those customers.  That is the

sum total of the involvement of both companies.  Neither had any involvement with sales of

drywall made by Taishan or other companies.

If found subject to jurisdiction, BNBM PLC and BNBM Group will prove that BNBM

PLC's drywall was not defective or injurious.  The only testing of a sample of BNBM PLC

manufactured drywall found in the U.S. determined that the sample was not defective.  The U.S.

CPSC commissioned the Lawrence Berkley National Laboratory to test 30 brands of imported

drywall used in the U.S. market for reactive sulfur gas emissions.[3]  The testing of a 2006 sample

of BNBM PLC drywall obtained in America showed  hydrogen sulfide emissions of 2.45 µg-

S/m$^2$/h, on par with North American drywall, whose hydrogen sulfide emissions ranged from

0.00 - 4.00 µg-S/m$^2$/h.[4]  The testing also showed that the BNBM PLC drywall had sulfur dioxide

emissions at 4.37 µg-S/m$^2$/h, again consistent with North American drywall, which ranged from

0.00 to 4.99. (*Id.*).  As the CPSC specifically noted, "[o]ther Chinese drywall samples had low or

no detectable emissions of hydrogen sulfide as did the drywall samples tested that were

manufactured domestically.  They include . . . Dragon Brand, Beijing New Building Materials

---

[3]    *See* Memorandum from Joanna Matheson, Ph.D., Toxicologist, Directorate for Health
Sciences (Jan. 3, 2011), http://www.cpsc.gov/PageFiles/99196/lblreport.pdf (attached as **Exhibit
3**).

[4]    *Id.* at 41.  The relevant sample on this chart is 09-810-7078. *See* Draft Emission Factor Results
(µg/m²/h) from Lawrence Berkeley National Laboratories Chamber Testing (May 27, 2010),
http://www.cpsc.gov//PageFiles/114656/LBNLsulfur.pdf (attached as **Exhibit 4**).

Co. Ltd.: (2006) China."[5]

The CPSC's investigation into problem drywall was thorough. The testing and analysis is credible and complete. CPSC's investigation to help affected homeowners began in early 2009, involved significant agency resources, was driven by sound science and included the Department of Housing and Urban Development ("HUD"), the U.S. Centers for Disease Control and Prevention ("CDC") and the U.S. Environmental Protection Agency ("EPA") as members of the Federal Interagency Task Force on Problem Drywall. CPSC and HUD met with deeply-impacted homeowners, used the best national laboratories to research and test drywall, visited Chinese mines and manufacturers, and devoted thousands of staff hours and millions of dollars to these activities.[6]

In contrast, the Plaintiffs have adduced no evidence that drywall manufactured by BNBM PLC was defective. The only expert identified by the plaintiffs in any of the cases who tested the sulfur content of any drywall is Dr. Lori Streit. But Dr. Streit's report, written well prior to the CPSC investigation, shows that she tested only Taishan drywall taken from eight houses, apparently all in Newport News or the adjoining city of Virginia Beach, Virginia.[7] From these Taishan samples she extrapolated conclusions about all "Chinese drywall."[8] Dr. Streit has provided no testing or analysis of BNBM PLC drywall, and she has not provided the results of

_____

[5]  *See* CPSC Identifies Manufacturers of Problem Drywall Made in China, CPSC Release No. 10-243 (May 25, 2010), http://www.cpsc.gov/en/Newsroom/News-Releases/2010/CPSC-Identifies-Manufacturers-of-Problem-Drywall-Made-in-China/ (attached as **Exhibit 5**).

[6]  *See* CPSC Completes Final Studies to Help Affected Homeowners Remediate Problem *Drywall* (Sept. 15, 2011), http://www.cpsc.gov/en/Newsroom/News-Releases/2011/CPSC-Completes-Final-Studies-to-Help/ (attached as **Exhibit 6**).

[7] Pls.' Trial Ex. P1.2023, *Germano et al. v. Taishan Gypsum Co., et al.* (09-6687), Expert Report of Dr. Lori Streit, Ph.D. (Dec. 28, 2009), at 8-9 & App. III.

[8] *Id.* at 11.

any brand-by-brand testing or comparisons, which she may have performed, if any.  She relied on a dozen or more papers and reports, but none of them reflect that their authors tested BNBM PLC either (the only brand identified in those reports is Knauf). [9]

Dr. Streit's flawed methodology and baseless extrapolations are exposed by the CPSC testing, which demonstrated dramatic differences between emissions from different samples of drywall manufactured in China. [10]  As HUD reported to Congress, "not all drywall from China is problematic." [11]  Based on "information from the CPSC, a problem is associated with about 43 percent of drywall imported from China."  Exhibit 7 at 9.  Less than half of Chinese drywall distributed in America in 2005 and 2006 was defective—and the sample of BNBM PLC manufactured drywall tested by the CPSC was not in the defective minority.

The plaintiffs have confirmed that they have performed no testing of BNBM PLC drywall that found the drywall to be defective.  BNBM PLC sought discovery of all documents relating to the testing of BNBM PLC drywall. The plaintiffs have answered that the "request seeks information in the public domain and in Court records, such as reports from the Consumer Product Safety Commission and expert opinions." [12]  Neither the CPSC report nor the report filed by plaintiff's expert witness found the BNBM PLC drywall defective.

---

[9] *Id.* at 8-9, 13.

[10] *Id.* at Exhibit 3.

[11]   United States Department of Housing and Urban Development, *Study of the Possible Effect of Problem Drywall Presence on Foreclosures, Report to Congress* (July 17, 2012), at 4, http://cpsc.gov/PageFiles/161357/StudyofthePossibleEffectsofProblemDrywallPresenceonForeclosures.pdf (attached as **Exhibit 7**).

[12]   A copy of the Plaintiffs' Responses is attached as **Exhibit 43**.  The response in question is the response to Request No. 2, at page 3.  *See also* the response to Request No. 4.

### C.    BNBM PLC and BNBM Group Were Not Alter Egos of Taishan

The plaintiffs contend that BNBM PLC and BNBM Group have vicarious liability for the allegedly faulty drywall exported into the United States by Taishan.  But BNBM PLC and BNBM Group did not sell Taishan drywall to the United States.  Nor do BNBM PLC or BNBM Group meet the standard for piercing the corporate veil, whether Chinese law is applied—as required—or the law of the forum states.

For starters, Taishan is not a "one-person limited liability company."[13]  Instead, BNBM PLC owns 65% of Taishan; the other 35% is owned by other investors.  BNBM PLC acquired its position in Taishan in two separate transactions by paying fair value in arms-length transactions, as determined by third-party appraisers.[14]  Taishan bargained for BNBM PLC to have less than a

---

[13]   One person limited liability companies are the subject of most of the discussion in the declarations filed by the three Chinese legal experts retained by the Plaintiffs' Steering Committee ("PSC") in the Taishan cases.  *See* Affidavit of Liu Junhai, date May 4, 2012 (Rec. Doc. 14203-1), at paragraphs 57-70 (the "Junhai Aff."); Declaration of Bing Cheng, dated May 3, 2012 (Rec. Doc. 14203-2), at paragraphs 18-23 (the "Cheng Decl."); and Declaration of James V. Feinerman, dated May 7, 2012, repeating verbatim many of Ms. Cheng's conclusions (Rec. Doc. 14203-3), at paragraphs 12, 13 & 16-23 (the "Feinerman Decl.").

[14]   Declaration of Yanjun Yang, dated April 16, 2015, at paragraph 8 (the "Yang Decl.," attached as **Exhibit 8**); Declaration of Yu Chen, dated April 16, 2015, at paragraph 24 (the "Chen Decl." attached as **Exhibit 9**); BNBM PLC Board Resolution (20050423), attached as **Exhibit 10** ("Beijing Zhongzheng Appraisal Co., Ltd. qualified for guarantees appraised Shandong Taihe Dongxin Co., Ltd. and issued ZZA Bao Zi [2005] No.010 Assets Appraisal Report to show that the appraised net assets of Shandong Taihe Dongxin Co., Ltd. is 14,687.65 Yuan in the appraisal base date of March 31, 2005, and the net asset per stock is 1.77 Yuan.  All parties reached an agreement on the basis of the appraisal result above and purchased new stocks of Shandong Taihe Dongxin Co., Ltd, with price of 1.8 Yuan per stock."); BNBM PLC Board Resolution (20060828), attached as **Exhibit 11** ("In accordance with the equity transfer agreement, the company purchased 100% equity of Taian Donglian Investment & Trade Co., Ltd. from Liu Huan and Jiao Wenbo with cash of 114.54 million Yuan");  Equity Purchase Announcement (20060828), attached as **Exhibit 12** ("Beijing Xinghua Public Certified Accountants Co., Ltd. with the securities business qualifications conducted an audit . . . .  As of June 30, 2006, the audited total assets of Donglian Company were RMB88.0413mn and its audited net assets were RMB78.6857mn.  Zhongshang Assets Appraisal Co., Ltd. with the securities business qualifications conducted an appraisal . . . . .  With June 30, 2006 as the appraisal reference date, the appraised total assets of Donglian Company were RMB117.097mn and its appraised net

two-thirds ownership interest, so that PLC "would not have the right to make decisions on important matters."[15]

The companies are not integrated in any way, operational or otherwise.  Chen Decl. ¶¶ 9-23, 25; Yang Decl. ¶¶ 10-18.  The firms have their own separate management.  Chen Decl. ¶ 23. BNBM PLC and Taishan do not share officers or employees.  Chen Decl. ¶¶ 11, 14, 21.[16] BNBM PLC has the right to elect three members of Taishan's five member board of directors. BNBM PLC's power to select directors is consistent with the board positions accorded to majority investors in any company, American or Chinese, and certainly is not an indication that the two companies are alter egos.

Taishan is not undercapitalized.  Yang Decl. ¶¶ 9, 10, 18; Chen Decl. ¶¶ 12-15.   Taishan had net profits of RMB 1,020,505,550.45 in 2014 and RMB 978,569,269.78 in 2013.[17]  At least since BNBM PLC acquired shares of Taishan, Taishan has been adequately capitalized and has had sufficient funding for its operations.[18]  No evidence to the contrary has been adduced by

---

assets were RMB107.7414mn ").

[15]  Transcript of the deposition of Tongchun Jia, taken on January 9, 2012, at 595:17-597:16 (the "Jia Tr.," relevant excerpts of the transcript attached as **Exhibit 13**).

[16]  With the sole exception of Taishan Chairman Tongchun Jia, who had the title of "deputy general manager" at BNBM PLC from August, 2005 through September, 2012, but who performed no management or other functions at BNBM PLC.  Chen Decl. ¶ 10.

[17]  BNBM PLC Annual Report 2014 at 22 (relevant excerpts attached as **Exhibit 14**); BNBM PLC Annual Report 2013 at 20 (relevant excerpts attached as **Exhibit 15**).

[18]  Yang Decl. ¶ 9; BNBM PLC Annual Report 2006 at 28-29 (relevant excerpts  attached as **Exhibit 16**); BNBM PLC Annual Report 2007 at 28 (relevant excerpts attached as **Exhibit 17**); BNBM PLC Annual Report 2008 at 32 (relevant excerpts attached as **Exhibit 18**); BNBM PLC Annual Report 2009 at 26-27 (relevant excerpts attached as **Exhibit 19**); BNBM PLC Annual Report 2010 at 26 (relevant excerpts attached as **Exhibit 20**); BNBM PLC Annual Report 2011 at 26 (relevant excerpts  attached as **Exhibit 21**); BNBM PLC Annual Report 2012 at 18-19 (relevant excerpts attached as **Exhibit 22**); Ex. 15, BNBM PLC Annual Report 2013 at 20; Ex. 14, BNBM PLC Annual Report 2014 at 22.

plaintiffs.  BNBM PLC has never financed Taishan's operations by providing non-repayable funds, has never paid Taishan's debts, bankrolled Taishan's expenses, made Taishan's payroll, or fulfilled Taishan's contractual obligations.  Yang Decl. ¶¶ 10, 18; Chen Decl. ¶¶ 12, 13, 15. Taishan's finances, financial controls and accounting functions operate independently of BNBM PLC.  Yang Decl. ¶¶ 12-17.  Each company is responsible for its own debts, liabilities and losses, maintains its own bank accounts, operates its own accounting functions, and has separate financial statements audited by an independent accounting firm.  Yang Decl. ¶¶ 11-17; Chen Decl. ¶ 22.  No director, officer, or employee of either can access the bank accounts or assets of the other.  Yang Decl. ¶¶ 11, 14-15.  BNBM PLC and Taishan do not share office space, supplies, or secretarial staff and have independent manufacturing facilities, brands, sales teams, and procurement teams.  Chen Decl. ¶¶ 16, 17, 20, 21.  BNBM PLC has never transferred or withdrawn funds from Taishan's bank accounts.  Yang Decl. ¶ 14.

BNBM Group has never had an ownership interest in Taishan.  BNBM Group formed BNBM PLC in 1997, but has had no equity ownership or other financial interest in BNBM PLC since 2005.[19]  BNBM PLC acquired its first equity interest in Taishan after BNBM Group divested itself of BNBM PLC, which is a publicly-traded company.  Yang Decl. ¶ 8; Chen Decl. ¶ 24.  Thus BNBM Group has never had ownership interest in or controlled Taishan.  Zhao Decl. ¶¶ 8, 33.

BNBM Group and BNBM PLC are managed and operated independently.  Zhao Decl. ¶ 6. Except for one overlapping supervisor, BNBM Group does not share employees, officers, or directors with BNBM PLC.  *Id.* ¶¶ 9-11.  BNBM Group does not share employees or officers with Taishan.  *Id.*  ¶¶ 9-10.

---

[19]  Declaration of Yanming Zhao, dated March 16, 2015, at paragraphs 6 and 7 (the "Zhao Decl.," attached as **Exhibit 23**).

BNBM Group never provided funding to BNBM PLC or Taishan, never paid their expenses or covered their losses, never loaned them money, and has never paid the salaries of their employees. *Id.* ¶¶ 12-15. There are no common finances, bank accounts, financial controls, audited financial statements, or accounting functions. *Id.* ¶¶ 16-23, 27, 30. Nobody controls or can access the other's accounts and assets. *Id.* BNBM Group, BNBM PLC, and Taishan do not share office space, office supplies, or secretarial staff. Zhao Decl. ¶¶ 24-25.

**D.     Complaints, Proof of Service, and Pre-Trial Order 1G**

Preliminary defaults have been entered against BNBM PLC and BNBM Group (in different combinations) in three cases: *Gross, et al. v. Knauf Gips KG, et. al.*, No. 2:09-cv-6690 (E.D. La.); *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et. al.*, No. 2:10-cv-00361 (E.D. La.); and *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/ka/ Shandong Taihe Dongxin Co., Ltd., et. al.*, Case No. 2:11-cv-1673 (E.D. La.). The timing, attempts at service, and procedural posture of the cases are pertinent to this motion.

The original class action complaint in *Gross* was filed on October 2, 2009, and an amended complaint on October 19, 2009. (Rec. Doc. 366). The *Gross* plaintiffs named both BNBM PLC and BNBM Group as defendants. The *Gross* plaintiffs assert that they attempted to serve BNBM PLC on February 25, 2010. They assert that service was rejected. (Rec. Docs. 5621-1, 6970-3).

On May 27, 2010, the Court entered Pre-Trial Order 1G, which provides that "Plaintiffs have now filed amended Omnibus complaints . . . and plan to further amend the Omnibus complaints in the future." Pre-Trial Order No. 1G at 1 (Rec. Doc. 3348). In light of the planned amendments, Pre-Trial Order 1G suspended the deadline for defendants to respond to omnibus complaints and other MDL complaints until 30 days after the PSC files a notice of completion of amendments to omnibus complaints. *Id.* at 2. To date the PSC has not filed this notice, and

therefore the deadline to answer or respond to the complaints has not yet occurred.

While suspending response deadlines, Pre-Trial Order 1G requires counsel to enter an appearance within 20 days after service of a complaint on that defendant and defendants to complete and serve the appropriate profile form within 40 days after service.  Pre-Trial Order No. 1G at 1.  Following the entry of Pre-Trial Order 1G, the *Gross* plaintiffs claim that they attempted service of the summons and complaint on BNBM Group on August 25, 2010.  The plaintiffs assert that service was rejected.  (Rec. Docs. 7411-3, 7432-1).

On March 15, 2010, Kenneth and Barbara Wiltz filed suit, naming BNBM PLC as one of the defendants, but not naming BNBM Group.  Yet according to the *Wiltz* plaintiffs, they attempted to serve BNBM PLC on August 25, 2010 by serving "Beijing New Building Material (Group) Co., Ltd. (BNBM)."  Not surprisingly, having delivered the summons and complaint to a different and independent company, service was refused.[20]

On July 5, 2011, the *Amorin* plaintiffs filed their class action complaint, naming BNBM PLC and BNBM Group as defendants.  The *Amorin* plaintiffs state they attempted and were refused service by BNBM PLC on June 18, 2013.  The *Amorin* plaintiffs have submitted no evidence to that Motion that they attempted to serve BNBM Group.[21]

### E.      Motions for Preliminary Default

The profile forms ordered to be completed within 40 days of service in Pre-Trial order 1G "were intended to replace initial disclosures Pursuant to Federal Rule 26."  Pre-Trial Order 25 (Rec. Doc. 11151).  After observing that numerous parties had not completed profile forms, the Court

---

[20]  Exhibit A to *Wiltz* Plaintiffs' Omnibus Motion for Preliminary Default Judgment, *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et. al.*, No. 2:10-cv-00361 (E.D. La.) (Rec. Doc. 6974-3); Exhibit A to *Wiltz* Plaintiffs' Supplemental Declaration (Rec. Doc. 7410-3).

[21]  *See* Exhibit C, Plaintiffs' Fourth Omnibus Motion for Preliminary Default Judgment, *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/ka/ Shandong Taihe Dongxin Co., Ltd., et. al.*, Case No. 2:11-cv-1673 (E.D. La.) (Rec. Doc. 17378-4).

ordered that "[f]ailure to complete and provide a profile form shall subject any party to sanctions to be ordered by the Court, which may include dismissal of a plaintiff's claim or default judgment being entered against a defendant." *Id.* at 2.

1.   *Gross (2:09-cv-6690)*

On September 9, 2010, the *Gross* plaintiffs filed their motion for preliminary default judgment (Rec. Doc. 5621), in which they requested default be entered against BNBM PLC and, notably, not against BNBM Group.  The basis for the motion was that after service of the complaint, the defaulting defendants, including BNBM PLC, had not "entered an appearance, filed an answer, or otherwise responded to the Complaint."  *Gross* Motion for Preliminary Default Judgment at 4 (Rec. Doc. 5621-1).  But pursuant to Pre-Trial Order 1G, answers or responsive pleadings were not yet due.  In support of their assertion that they served BNBM PLC, the *Gross* plaintiffs attached a proof of service stating that the recipient of the service of process was "Beijing New Building Material (Group) Co., Ltd. (CNBM Group)" and "Beijing New Building Material (Group) Co., Ltd (BNBW)," and that the reason for refusal was the "wrong company name and address."[22]  If this proof of service is correct, the *Gross* plaintiffs did not make proper service of the summons and complaint on BNBM PLC, yet sought a default judgment against BNBM PLC despite knowing that their attempt to serve BNBM PLC was deficient because they had in fact attempted to serve a different company.

On January 13, 2011, the *Gross* plaintiffs amended their motion for preliminary default judgment, adding BNBM Group to the list of their defaulting defendants.[23]  There the *Gross* plaintiffs maintained that BNBM Group had been properly served, that it had failed to enter an

---

[22]   Exhibit A to *Gross* Motion for Preliminary Default Judgment at 88-93 (Rec. Doc. 5621-3); Exhibit X to *Gross* Declaration (Rec. Doc. 7446-6).

[23]   *Gross* Second Omnibus Motion for Preliminary Default Judgment.  (Rec. Doc. 6970).

appearance according to Pre-Trial Order 1G, and that it has not answered the complaint or

otherwise defended itself (despite that the time to answer had not run).[24]  The *Gross* plaintiffs

only claim to have made one attempt to serve BNBM Group.

### 2.   *Wiltz (2:10-cv-0361)*

On January 13, 2011, the *Wiltz* plaintiffs filed their motion for preliminary default

judgment, in which they requested default be entered against BNBM PLC.  BNBM Group is not

a defendant in the case.  But as discussed above, the proof of service reflects that the *Wiltz*

plaintiffs had attempted service on BNBM Group, not BNBM PLC.[25]  BNBM Group is not a

defendant in the *Wiltz* action, and service was improper.

### 3.   *Amorin (2:11-cv-1673)*

The *Amorin* plaintiffs filed several omnibus motions for preliminary default, including

one on January 10, 2014 pertaining to BNBM PLC (among others).  *Amorin* Plaintiffs' Fourth

Omnibus Motion for Preliminary Default Judgment (Rec. Doc. 17378).  The *Amorin* motion

papers assert that they properly served BNBM PLC on June 18, 2013.  *Id.* at 2.  But the proof of

service shows service was declined, and the *Amorin* plaintiffs did not even provide the Court

with that proof of service.  The *Amorin* plaintiffs' showing is insufficient to establish proper

service on BNBM PLC.

### F.   **Preliminary Defaults Judgment Entered**

On August 7, 2012, the Court entered preliminary default against BNBM PLC and

BNBM Group in *Gross* and against BNBM PLC in *Wiltz*.  (Rec. Doc. 15687).  On June 25, 2014,

---

[24] *Id.* at 1-3.

[25]  *Wiltz* Omnibus Motion for Preliminary Default Judgment at 1-2 (Rec. Doc. 6974); Exhibit A to *Wiltz* Plaintiffs' Omnibus Motion for Preliminary Default Judgment, *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et. al.*, No. 2:10-cv-00361 (E.D. La.) (Rec. Doc. 6974-3); Exhibit A to *Wiltz* Plaintiffs' Supplemental Declaration (Rec. Doc. 7410-3).

the Court entered preliminary default judgment against BNBM PLC in *Amorin.* (Rec. Doc. 17793). The Court has not issued final default judgments against BNBM Group or BNBM PLC in any case.

### G.    BNBM PLC and BNBM Group Have Cured The Defaults

Since entry of those preliminary defaults, BNBM PLC and BNBM Group have filed notices of appearances. (Rec. Docs. 18247, 18248). On April 6, 2015, each served their required profile forms, fully and accurately completed.[26] BNBM PLC and BNBM Group have filed motions and briefs contesting the jurisdiction of the Court. Each are participating in discovery.[27] Counsel has met and conferred with counsel for the PSC on meeting discovery obligations as expeditiously as possible.[28] Intensive, thorough, and costly efforts are being made to gather documents in China for production as rapidly as possible. *See* Exhibits 39-42. BNBM PLC and BNBM Group are working as quickly as possible to schedule depositions. *See* Exhibit 42. BNBM PLC and BNBM Group have complied in all respects with the Court's March 17, 2015 Minute Entry and Orders.

## LEGAL STANDARD

A default may be entered when "a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). "The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." FED. R. CIV. P. 55(c). To determine good cause for vacating a default judgment, the court

---

[26] April 6, 2015 Email to Plaintiffs Serving Profile Forms (attached as **Exhibit 24**); BNBM PLC's Profile Form (attached as **Exhibit 25**); BNBM Group's Profile Form (attached as **Exhibit 26**).

[27] BNBM Group and BNBMPLC's Discovery Status Report (Rec. Doc. 18755 and attached as **Exhibit 27**); BNBM PLC Letters to Plaintiffs transmitting the production of documents (attached as **Exhibits 28-33**); BNBM Group's  Letters to Plaintiffs transmitting the production of documents (attached as **Exhibits 34-36**).

[28] Emails to Plaintiffs regarding BNBM Group and BNBM PLC's discovery obligations (attached as **Exhibits 37-41**).

evaluates the same elements as when determining whether to set aside default judgments under Rule 60(b). *In re OCA, Inc*., 551 F.3d 359, 369 (5th Cir. 2008). However, "the standard for setting aside a default decree is less rigorous than setting aside a judgment for excusable neglect." *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521, 544 n.20 (5th Cir. 2014), quoting *U.S. v. One Parcel of Real Prop.*, 763 F.2d 181, 183 (5th Cir. 1985). The Court has not entered ***final*** default judgments against BNBM PLC or BNBM Group, and accordingly should apply the less rigorous standard of Rule 55(c) to this Motion.

The determination of good cause is made in light of the principle that default judgments are disfavored as a matter of law. *One Parcel of Real Prop.*, 763 F.2d at 183. To determine whether to set aside a default decree, the Court should consider "whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." *Chinese-Manufactured Drywall*, 753 F.3d at 544-45 (5th Cir. 2014); *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992); *One Parcel of Real Prop.*, 763 F.2d at 183. The Court may also consider whether the public interest is implicated, whether there will be significant loss to the defendants, and whether the defendants have acted expeditiously to correct the default, although it need not consider all of these additional factors in ruling on the motion unless they provide "a means of identifying circumstances which warrant the finding of good cause." *Chinese-Manufactured Drywall*, 753 F.3d at 545.

## ARGUMENT

## I.   BNBM PLC AND BNBM GROUP HAVE MERITORIOUS DEFENSES

### A.   The Drywall Sold By BNBM PLC Was Not Defective

BNBM PLC and BNBM Group were not involved in manufacturing or selling drywall that harmed the plaintiffs, and they had no role at all in Taishan's sales of drywall. BNBM PLC and BNBM Group only had involvement with sales of drywall manufactured by BNBM PLC.

17

Cai Decl. ¶¶ 10(a)-(f).  Taishan drywall was sold under a different brand and produced in different factories in different provinces.  Chen Decl. ¶¶ 16, 17.  Taishan and BNBM PLC do not "share any plants, factories or production lines." Jia Tr. 196:10-19 (Apr. 4, 2011).  BNBM PLC's drywall sales were made to only five American companies.  Cai Decl. ¶ 5.  BNBM Group was the export agent for the first few sales to the first three companies.  *Id*. ¶¶ 11(a)-(c).

BNBM PLC and BNBM Group believe there is nothing wrong with the drywall manufactured by BNBM PLC that ended up in the United States.  This defense is at a minimum meritorious, as the findings by the Lawrence Berkley National Laboratory show.  By contrast, in the course of this litigation the plaintiffs have offered no testing or other evidence to show that drywall manufactured by BNBM PLC was defective.

**B.    The Court Does Not Have Personal Jurisdiction Over BNBM PLC or BNBM Group**

This Court does not have jurisdiction over BNBM PLC or BNBM Group and therefore may not enter defaults against them.  Unlike the Court's prior rulings with respect to Taishan, there is no evidence showing that the BNBM PLC or BNBM Group "manufactured and sold a defective product, placed this product into the stream of commerce, and profited from its sales." *In re Chinese Manuf. Drywall Prod. Liab. Litig.,* 894 F. Supp. 2d 819, 863-64 (E.D. La. 2012). Instead, the Court has the opposite: evidence from the United States government that BNBM PLC *did not* manufacture and sell defective product.

The Court also has before it uncontroverted evidence that BNBM PLC manufactures and sells drywall in China, does not manufacture or market its drywall in America, has no offices or employees in the forum states, did not do business in the forum states, and is not registered to do business in the United States.  Cai Decl. ¶¶ 2-4, 6-9, 11, 12.  Since August 2006, BNBM PLC has made no sales of drywall to companies based in the United States.  *Id.* ¶ 5, 11.  The only

BNBM PLC sales that could be of issue here were sales of its drywall to five American customers, each of whom initiated contact with BNBM PLC and visited the company in China to negotiate the sales. *Id.* ¶¶ 5, 6, 10. No BNBM PLC employee visited the United States in connection with any of these sales, all of which were negotiated exclusively in China. *Id.* ¶¶ 7-10. The contracts of sale were executed by BNBM PLC (or its export agent) in China, and the customer took possession of the drywall in China. *Id.*

BNBM Group has no contact with the forum states. Its only connection to BNBM PLC's sales in the United States was by acting as the export agent for some of the sales. Yu Decl. ¶¶ 5-11, 18-22; Cai Decl. ¶¶ 11(a)-(c). When previously denying Taishan's motion to vacate default judgment, the Court emphasized Taishan's awareness of a sale of its drywall to an entity in the jurisdiction. *Chinese Manufactured Drywall*, 894 F. Supp. 2d at 863-64. Here, by contrast, BNBM Group sold nothing. It acted as an export agent only with respect to some of BNBM PLC's sales of BNBM PLC's drywall. BNBM Group had no knowledge of sales of defective goods into the jurisdiction. It was an export agent, working in China, and had nothing else to do with sales of drywall into the jurisdiction.

Taishan's contacts in the forum states cannot be imputed to BNBM PLC or BNBM Group to establish jurisdiction. There is complete corporate separateness between Taishan, BNBM PLC, and BNBM Group. Each observes the requirements of independent corporate governance. Chen Decl. ¶¶ 5, 11; Zhao Decl. ¶¶ 4, 5. BNBM PLC owns a 65% interest in Taishan. The other 35% is owned by others. Yang Decl. ¶ 8. BNBM Group has no ownership interest in BNBM PLC or Taishan. Each company is independently operated and managed. Chen Decl. ¶¶ 9, 23; Zhao Decl. ¶¶ 10, 12-35. Taishan, BNBM PLC and BNBM Group do not have overlapping officers or employees (with the nominal exception of Taishan's Chairman, who

19

was given a position with no duties at BNBM PLC).  BNBM PLC, BNBM Group, and Taishan

separately manage their own finances, assets, and operations.  Yang Decl. ¶¶ 12-17; Zhao Decl.

¶¶ 16-23, 27, 30.

In other ways, BNBM PLC is an investor in Taishan, not its alter ego.  *United States v.*

*Bestfoods*, 524 U.S. 51, 72 (1998) ("monitoring of the subsidiary's performance, supervision of

the subsidiary's finance and capital budget decisions, and articulation of general policies and

procedure" is "consistent with the parent's investor status").  BNBM PLC's ownership interest in

and relations with Taishan are insufficient to find that Taishan is an agent or alter ego of BNBM

PLC.  *See, e.g.*, *Adm'rs of Tulane Educ. Fund v. Ipsen, S.A.*, 450 F. App'x 326, 330-32 (5th Cir.

2011).  No facts show that BNBM PLC is anything more than a 65% investor in Taishan.

Certainly no facts show that as a stockholder of a corporation BNBM PLC abused "the corporate

independent status or the limited liability of shareholders." (Corporate Law of 2005, Art. 20 § 3).

Even the declarations of plaintiff's experts support the only conclusion permissible under

controlling Chinese law, that BNBM PLC is not liable for Taishan's liabilities.[29]  When

"shareholders refrain from abusing the corporate independent status or the limited liability of

shareholders, they could enjoy their limited liability privilege." Junhai Aff. ¶ 51.

The PSC's expert Dr. Junhai opines that the "common abuses of the corporate

independent status or the limited liability of shareholders could be classified as

undercapitalization and commingling of legal personalities between corporation and

---

[29]   Liu Junhai Aff. ¶¶ 44, 49-55; Feinerman Decl. ¶¶ 11, 15, 17.  MDL Courts apply the choice-of-law rules of the state of transferor forum, and the choice-of-law rules here are the same for each transferor forum: courts must apply the law of the state of incorporation to conduct a veil piercing or alter ego analysis for liability purposes.  This rule applies to entities incorporated outside the United States.  *See Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 587 (5th Cir. 2010).  Accordingly, any veil piercing or alter ego analysis related to BNBM PLC and BNBM Group must be conducted pursuant to the laws of China, where they are incorporated.

shareholder."  *Id.* ¶ 53.  There is *no* evidence that Taishan is undercapitalized and *no* evidence of commingling of legal personalities between Taishan and BNBM PLC -- or of any other abuse by PLC.[30]  Therefore, according to plaintiffs' own experts, there is no basis on which to deprive BNBM PLC of the privilege of limited liability here.  Moreover, as plaintiffs' experts emphasize, the plaintiffs bear the burden of proof.  Feinerman Decl. ¶ 17; Cheng Decl. ¶ 25.  An alter ego justification for asserting jurisdiction cannot be found here with respect to BNBM PLC when the plaintiffs bear the burden and there are no facts to support the required shareholder "abuse."

The record is even starker with respect to BNBM Group, which has never owned Taishan stock and thus could not possibly have abused any status as a shareholder.

This Court's determination in 2014 that BNBM PLC, BNBM Group, and Taishan are mere alter egos of one another was based solely on deemed admissions following Taishan's failure to respond to Rule 36 requests to admit.  This cannot be the basis on which to impute Taishan's alleged United States contacts to BNBM PLC or BNBM Group for purposes of exercising jurisdiction of either company.  It is well established that deemed admissions of one party cannot be used against a co-party.  *Becerra v. Asher*, 921 F. Supp. 1538, 1544 (S.D. Tex. 1996), *aff'd* 105 F.3d 1042, 1048 (5th Cir. 1997); *see also Riberglass, Inc. v. Techni-Glass Indus., Inc.*, 811 F.2d 565, 566-67 (11th Cir. 1987) (deemed admissions of co-defendants could not bind defendant who did respond to requests); *Earl Realty, Inc. v. Leonetti (In re Leonetti)*, 28 B.R. 1003, 1009 (E.D. Pa. 1983) (affirmative admission of one defendant not admissible against co-defendant).  In *Becerra*, the plaintiff attempted to use a defendant's unanswered request for admissions as evidence to defeat a co-defendant's motion for summary judgment.  *Becerra*, 105 F.3d at 1048.  The Fifth Circuit affirmed that the deemed admissions were not competent

---

[30]   Dr. Junhai lists six forms that commingling of legal personalities can take, in his opinion. Junhai Aff. ¶¶ 55.  With respect to the relationship between Taishan and BNBM PLC, there is no evidence of any element he identifies for any of his six factors.

evidence, because they are binding only on the non-responding party, not on co-parties.  *Id.* That holding controls here.  Taishan's admissions cannot be used against BNBM PLC or BNBM Group and cannot form the evidentiary basis to support the exercise of personal jurisdiction over them.

The only other support the PSC offers for its claim that BNBM PLC exerts control over Taishan are e-mails produced by Taishan's former counsel, Hogan Lovells.  The PSC contends that these emails demonstrate that "BNBM" and other defendants orchestrated Taishan's decision not to appear at the July 17, 2014 Judgment Debtor Examination. (*See, e.g.,* Doc. Rec. No. 18694 at 7).  The Hogan Lovells e-mails reflect no such thing.  The July 7, 2014 and July 11, 2014 e-mails relied on by the PSC do not mention BNBM PLC or BNBM Group, much less indicate that they somehow orchestrated Taishan's failure to appear.  The PSC's contention appears to be based on the assumption that a reference made in a July 11, 2014 e-mail by Taishan's Chief of Foreign Trade, Wenlong Peng, to his "supervisors", must refer to either BNBM PLC or BNBM Group or, perhaps, one of the CNBM defendants.  Yet even if that were true,[31] the "instructions" Mr. Peng anticipated from his "supervisors" related to Hogan Lovell's withdrawal from the case, *not* Taishan's appearance at the judgment debtor examination.  Thus, Mr. Peng's e-mail cannot show that BNBM PLC or BNBM Group orchestrated Taishan's non-appearance.  Similarly, Dong Chungang's August 5, 2014 e-mail, also emphasized by the plaintiffs, was sent weeks after the Court issued its Contempt Order and also discusses Taishan's relationship with its counsel, not Taishan's appearance at the debtor examination.  There is no evidence, from the Hogan Lovells e-mails or otherwise, that BNBM PLC or BNBM Group had

---

[31] There is no evidence that "supervisors" refers to parent companies, as opposed to supervisors within Taishan.  Other documents provide no reason to draw that inference.  Accordingly, "supervisors" should be understood to convey its usual meaning in the absence of testimony that Mr. Peng intended a different meaning here.

any control over Taishan's decision not to appear for the Judgment Debtor Examination.

Lack of jurisdiction constitutes good cause, allowing an entry of default to be set aside. In fact, a "defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding." *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982); *Broadcast Music, Inc. v. M.T.S. Enterprises, Inc.*, 811 F.2d 278, 281 (5th Cir. 1987).

The plaintiffs recently have filed a brief contending that a motion to vacate the preliminary defaults now would be untimely. The Fifth Circuit has foreclosed this contention, however. BNBM PLC and BNBM Group have not waived its personal jurisdiction defenses by not responding or appearing earlier in the case. *Jackson v. FIE* , 302 F.3d 515, 523 (5th Cir. 2002). A default is void if entered without jurisdiction. The preliminary defaults at issue here were entered without an analysis of whether exercising personal jurisdiction over BNBM PLC and BNBM Group comports with due process. The plaintiffs' position that a default cannot be challenged for lack of jurisdiction is "against all federal authority." *Id.*

Nor, as the plaintiffs have argued, are BNBM PLC and BNBM Group seeking to delay the MDL proceeding by this motion, but rather are only appropriately proceeding in the exercise of their due process rights. The Court has noted that these motions and the MDL proceedings will progress on parallel tracks.

## II.     THE DEFAULT WAS NOT WILLFUL

BNBM PLC and BNBM Group did not willfully default. "A 'willful default' is an intentional failure to respond to litigation." *Scott v. Carpanzano*, 556 F. App'x 288, 294 (5th Cir. 2014). Inadvertence, ignorance, or mistake on the part of the defendant generally does not constitute a willful default. *Lacy v. Sitel Corp.*, 227 F.3d 290, 291-93 (5th Cir. 2000) (applying Rule 60(b)(1) factors to willfulness); *C & G Boats, Inc. v. Texas Ohio Servs., Inc.*, 164 F.R.D.

57, 58-59 (E.D. La. 1995). BNBM PLC and BNBM Group also had a good-faith belief that they were not properly served with the summonses and complaints. A defendant that fails to answer due to a good-faith belief that it was not properly served did not act willfully. *See Lacy*, 227 F.3d at 292 n.5 (reversing denial of motion to vacate). The record on the default motions supports a good-faith belief that proper service was not attempted on either BNBM PLC or BNBM Group. Therefore BNBM PLC and BNBM Group could not have intentionally failed to respond to the litigation, and the requisite finding of willfulness has not been made.

BNBM PLC and BNBM Group also would be justified in a good-faith belief that their answer or responsive pleadings are not yet due. On May 28, 2010, the Court entered Pre-Trial Order 1G, suspending the deadline for defendants to respond to omnibus and other complaints until 30 days after the PSC files a notice of completion of amendments to omnibus complaints. *Id.* at 2. The PSC has not yet filed such notice, and therefore defendants' time to answer or respond has not yet arrived.

While Pre-Trial Order 1G requires counsel to appear within 20 days of service and defendants to serve profile forms within 40 days, the profile forms "were intended to replace initial disclosures Pursuant to Federal Rule 26." (Rec. Doc. 11151). Rule 26 requires disclosures *after* issue has been joined. Now the disfavored, and draconian, measure of default is being used to punish BNBM PLC and BNBM Group for failing to file profile forms and appear *before* they were even required to answer a complaint. BNBM PLC and BNBM Group cannot locate any authority where a party has been defaulted *before* its answer was due.[32]

The quality of the BNBM PLC manufactured drywall also supports that the defaults were

---

[32]   Pre-answer default motions are typically considered premature. *See, e.g.*, *Mollohan v. Price*, No. 2:13-cv-32251, 2014 WL 4181476, at *2-4 (S.D. W. Va. Aug. 20, 2014); *Mattress Giant Corp. v. Motor Advertising & Design Inc.*, No. 2:07-cv-1728, 2008 WL 898772, at *2 (N.D. Tex. Mar. 31, 2008); *Henderson v. Compass Groups*, No. 10-cv-447, 2010 WL 3488137, at *1 (M.D. La. Aug. 30, 2010).

not willful.  Knowing that BNBM PLC's drywall was not defective and that they were not involved in other drywall sales to U.S. importers, BNBM PLC and BNBM Group had sound reason to believe that they were not subject to the jurisdiction of the Court.  Similarly, knowing they are not liable for the actions of Taishan or its alter ego under either Chinese or U.S. law, BNBM PLC and BNBM Group had reason to believe that they were not subject to U.S. jurisdiction and did not need to appear and defend.

Even if, despite the evidence discussed above, the Court were to ultimately determine that it has jurisdiction over BNBM PLC or BNBM Group, at a minimum their jurisdictional arguments are made in good faith, and thus their not appearing or filing profile forms was not willful.  Even a *potentially* meritorious jurisdictional defense, made in good faith, provides good cause to set aside a default judgment.  *See, e.g.*, *Bona Fide Demolition & Recovery, LLC v. Crosby Const. Co. of La., Inc.*, No. 07-cv-3115, 2009 WL 4060192, at *3 (E.D. La. Nov. 20, 2009) ("the defendants dispute both the factual and legal predicates of plaintiffs' claims, and the defendants have asserted a potentially meritorious defenses to those claims—the personal jurisdiction of this Court").  The Court may vacate a default based on such a good-faith belief, even if it proves erroneous.  *See, e.g.*, *Carl Marks & Co. v. Union of Soviet Socialist Republics*, 665 F. Supp. 323, 332 (S.D.N.Y. 1987) (the "Soviet Union's willful default is tempered by its genuine but unfounded belief" in its defense).

Any doubt that BNBM PLC and BNBM Group's failure to appear or serve profile forms was not willful "should, as a general proposition, be resolved in favor . . . of securing a trial upon the merits." *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 123 (5th Cir. 2008) (evidence must conclusively show that a default is willful).

**III.  LIFTING THE DEFAULT WOULD NOT PREJUDICE PLAINTIFFS**

The plaintiffs will not be prejudiced if the Court lifts the defaults.  To establish prejudice,

plaintiffs "must show that the delay will result in the loss of evidence, increased difficulties in

discovery, or greater opportunities for fraud and collusion." *Lacy*, 227 F.3d at 293 (internal

quotations omitted); *C & G Boats, Inc.*, 164 F.R.D. at 59.  Delay alone is not prejudice.  *Id.*

Here, the plaintiffs are not finished amending their complaints, and the time to answer or move

to dismiss has not run.  As evidenced by the voluminous discovery currently underway and

BNBM PLC's and BNBM Group's production to date, the delay has not caused increased

difficulties in discovery or opportunities for fraud or collusion.

      BNBM PLC and BNBM Group have cured the default by filing notices of appearance.

(Rec. Docs. 18247, 18248).  They served their profile forms on plaintiffs on April 6.  When other

defendants have cured their defaults by such actions, the PSC itself has moved to amend the

entry of default for those defendants.  *See, e.g.*, Plaintiffs' Motion to Amend Order Granting

Plaintiffs' Omnibus Motion for Preliminary Default Judgment (Rec. Doc. 15556).  BNBM PLC

and BNBM Group should be given the same opportunity.

      BNBM PLC and BNBM Group are pressing forward with discovery, undertaking

extensive efforts to gather documents in China, get them translated, and get them produced.

BNBM PLC and BNBM Group are lining up deponents for depositions.  BNBM PLC and

BNBM Group are actively keeping the PSC abreast of these steps and meeting and conferring

with the PSC on discovery.  BNBM PLC and BNBM Group are appearing and actively

participating in motion practice and at all hearings in the case, most recently Friday, April 17.

      The plaintiffs are not prejudiced by vacating the preliminary default, given that BNBM

PLC and BNBM Group have cured their defaults, their answer or responsive pleading is not yet

due, the plaintiffs may still amend their complaints, and the parties have not proceeded on merits

discovery.  "There is no prejudice to the plaintiff where the setting aside of the default has done

no harm to plaintiff except to require [it] to prove [its] case." *In re Marinez*, 589 F.3d 772, 778

(5th Cir. 2009) (quoting *Lacy*, 227 F.3d at 293).

> Detriment in the sense that plaintiff will be required to establish
> the merit of her claims does not constitute prejudice in this context.
> Rather, prejudice exists if circumstances have changed since entry
> of the default such that plaintiff's ability to litigate her claim is
> now impaired in some material way or if relevant evidence has
> become lost or unavailable.

*Robinson v. Texas Dep't of Human Servs*., No. 93-9079, 1995 WL 29203, at *3 (5th Cir. 1995)

(unpublished per curiam) (citations omitted).  Requiring the plaintiff "to litigate the action is

insufficient prejudice to require the default decree to stand."  *One Parcel,* 763 F.2d at 183 (5th

Cir. 1985).

## IV.    DEFAULT WOULD IMPOSE AN ENORMOUS FINANCIAL LOSS ON BNBM PLC AND BNBM GROUP

The preliminary defaults would cause significant financial loss to two parties who have

nothing to do with the sale of defective drywall to the plaintiffs.

## V.    THE PUBLIC INTEREST IS NOT IMPLICATED IN FAVOR OF PLAINTIFFS

The Court has previously found that the forum states have a public interest in seeing

plaintiffs harmed by defective foreign products made whole.  However, that public interest is

offset with respect to BNBM PLC and BNBM Group by the deprivation of their fundamental

due process rights if they are required to litigate in this Court or, worse, be subject to default

judgments where they have meritorious defenses and have made no admissions.  Unlike the

Court's findings in support of the Taishan defaults in *Gross, Mitchell,* and *Wiltz*, BNBM PLC

and BNBM Group did not make defective drywall or sell it into the jurisdiction.  The public

interest implications must be weighed against the due process owed to BNBM PLC and BNBM

Group.

## VI.   THE DEFAULTS MUST BE VACATED BECAUSE PLAINTIFFS FAILED TO SERVE THE COMPLAINTS ON BNBM GROUP AND BNBM PLC

Because neither BNBM Group nor BNBM PLC were ever served with process in any of the actions in which this Court entered preliminary defaults against them, the preliminary defaults must be vacated.  "A judgment rendered in the absence of personal jurisdiction is void and must be set aside." *McGuire v. Sigma Coatings, Inc.*, 48 F.3d 902, 907 (5th Cir. 1995).  "To acquire jurisdiction over the person, a court must serve on the person a document, such as a summons, notice, writ, or order." *Id*.  This principle applies with equal force to default judgments.  As the Fifth Circuit stated in *Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*, 841 F.2d 646, 649 (5th Cir.1998), when "a district court lacks jurisdiction over the defendant because of lack of service of process, the judgment is void and, under Rule 60(b)(4), the district court *must* set it aside." (emphasis in original).  "Absent proper service of process, the court cannot exercise jurisdiction over a party named as a defendant." *High Island Health, LLC v. Libertybelle Mktg. Ltd.*, No. CIV A H-06-2931, 2007 WL 1173631, at *3 (S.D. Tex. Apr. 18, 2007).  A defendant must be properly served under Rule 4 before it can be held accountable for failing to plead or otherwise defend. *See Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 940 (5th Cir.1999).  Without proper service of process the Court has no jurisdiction, and a default entered under such conditions is void. *Id*.

Here, the plaintiffs assert that attempting service on BNBM PLC and BNBM Group would have been futile.  Yet their proofs of service reflect that they attempted to serve the wrong entities with the summons and complaints, and even when service was attempted on the correct entity, only one or two attempts to deliver were made.  No attempts at alternative means of service were made, and no application was made to the Court to serve by alternative means.

Where a defendant resides outside the United States, and service cannot be made under

the Hague Convention's procedures, the proper way to effectuate service is Rule 4(f)(3), which allows service "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3); *BP Prod. N. Am., Inc. v. Dagra*, 236 F.R.D. 270, 271 (E.D. Va. 2006); *see Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002) ("Thus, when RIO presented the district court with its inability to serve an elusive international defendant, striving to evade service of process, the district court properly exercised its discretionary powers to craft alternate means of service."). "Where the plaintiff can show that deliberate avoidance and obstruction by the defendants have made the giving of notice impossible, statutes and case law have allowed substitute notice by mail and by publication in media of general and wide circulation" -- not a bare abdication of the service requirement. *S.E.C. v. Tome*, 833 F.2d 1086, 1092 (2d Cir. 1987). So, for instance, in *Gurung v. Malhotra*, 279 F.R.D. 215, 220-21 (S.D.N.Y. 2011), service by e-mail was approved. But Plaintiffs are not allowed to just throw up their hands and declare service "complete" after one attempt fails. Plaintiffs are not excused from proper service by one failed attempt. Yet that has occurred here. Because the preliminary defaults against BNBM Group and BNBM PLC were entered in the absence of service of process, this Court lacked jurisdiction over these defendants when the defaults were entered. The defaults should be voided.

<u>CONCLUSION</u>

For all of the foregoing reasons, and the reasons set forth in BNBM PLC and BNBM Group's other motions and papers, defendants BNBM PLC and BNBM Group respectfully request that the Court vacate the entries of preliminary default against them.

Dated:  April 29, 2015

Respectfully submitted,

**DENTONS US LLP**

By: */s/ Michael H. Barr*
Michael H. Barr
New York Bar No. 1744242
Justin N. Kattan
New York Bar No. 3983905
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
michael.barr@dentons.com
justin.kattan@dentons.com

- and -

Richard L. Fenton
Illinois Bar No. 3121699
Leah R. Bruno
Illinois Bar No. 6269469
233 South Wacker Drive
Suite 7800
Chicago, IL  60606-6306
Telephone:  (312) 876-8000
Facsimile:  (312) 876-7934
richard.fenton@dentons.com
leah.bruno@dentons.com

- and -

C. Michael Moore
Texas Bar No. 14323600
Gene R. Besen
Texas Bar No. 24045491
2000 McKinney Ave, Suite 1900
Dallas, TX  75201
Telephone:  (214) 259-0900
Facsimile:  (214) 259-0910
mike.moore@dentons.com
gene.besen@dentons.com

- and -

30

**PHELPS DUNBAR LLP**

Harry Rosenberg
Louisiana Bar No. 11465
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130
harry.rosenberg@phelps.com

*Attorneys for Beijing New Building Material (Group) Co., Ltd. and Beijing New Building Materials Public Limited Company*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the above and foregoing **Memorandum of Law of Beijing New Building Materials Public Limited Company and Beijing New Building Material (Group) Co., Ltd. in Support of Their Motion to Vacate Entries of Default** has been served on Plaintiffs' Liaison Counsel, Leonard Davis, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this April 29, 2015.

*/s/    Michael H. Barr*
