# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309-3424

404-881-7000
Fax: 404-253-8869
www.alston.com

Michael P. Kenny                    Direct Dial: 404-881-7179                    Email: mike.kenny@alston.com

May 4, 2015

VIA HAND DELIVERY
AND ECF

Hon. Eldon E. Fallon
United States Courthouse
500 Poydras Street
Room C456
New Orleans, LA  70130

> Re:   *In re: Chinese-Manufactured Drywall Products Liability*
>        *Litigation*, MDL No. 2047, Case No. 2:09-md-02047-EEF-JCW

Dear Judge Fallon:

On behalf of Taishan Gypsum Ltd., Co. and Tai'an Taishan Plasterboard Co., Ltd. ("Taishan"), I write to follow up on the outstanding damages discovery issues which the parties discussed with Your Honor last Thursday.  As explained in Taishan's April 6, 2015 Emergency Motion To Compel, Taishan has narrowly focused its discovery on two fundamental damages questions: (1) who is owed, and (2) how much is each owed? Although it exists, Taishan has still not received information relevant to these two issues from the following four sources:

(1) Updated Plaintiff Profile Forms and all other documentation supporting each class member's claim, as included in the BrownGreer Summary Spreadsheet;

(2) Inspection reports related to Chinese drywall in the properties of Taishan class members, which are in the custody of BrownGreer;

(3) Remediation and settlement information related to Taishan class members, which is in the custody of BrownGreer; and

(4) Substantive attachments to email correspondence between third-party settlement administrator BrownGreer and Plaintiffs' testifying experts.

---

May 4, 2015
Page 2

In light of the May 8, 2015 briefing deadline, Taishan respectfully requests that Your Honor order that the foregoing data and information be produced immediately.

### (1) Updated Plaintiff Profile Forms

On April 2, 2015, Taishan sent a letter to the PSC requesting updated Plaintiff Profile Forms for each claimant in the class, including claimant's remediation status, settlement status with any other defendant in this MDL, and ownership status with respect to the subject property.  When the PSC refused to fulfill this request, Taishan filed an Emergency Motion to Compel on April 6, 2015 (Dkt. No. 18598), seeking (1) complete and updated Plaintiff Profile Forms for each class member, (2) all information in the custody of settlement administrators BrownGreer and Garretson Resolution Group (collectively, the "Settlement Administrators") related to each class member, and (3) all information in the custody of the Settlement Administrators regarding actual cost of remediation.

The Court convened a discovery conference on April 7, and that same day, the PSC filed a Response to our Motion to Compel (Dkt. No. 18612, ("Response")).  The PSC's Response stated that "The PSC is in the process of seeking on an expedited basis (by April 15, 2015) updated relevant ownership information from all claimants alleging damages caused by Taishan's drywall." (Response at 2.)  The PSC's Response attached as Exhibit C a form captioned "Important Taishan Notice (must be completed by April 15, 2015)." (Dkt. No. 18612-3).  During the discovery conference, Mr. Levin reported to the Court as follows:

> But if they look at our profile form, we're giving them the square footage of the property, we're making sure that it's a current owner, because the class is defined as current owners -- its owners.
>
> *  *  *
>
> We have sent this form out to all of the plaintiffs and asked them to complete it in a very short period of time, no longer than a week, and we should have it -- we ought to wait and see what they get.

The Court held that the information sought was discoverable, and granted the Motion to Compel with the exception of "Knauf proprietary information at this time."  (Minute Entry from April 7, 2015 Proceedings, Dkt. No. 18688.)

In the Courthouse on the morning of April 17, 2015, prior to the Status Conference, the PSC informed Taishan's counsel that the PSC had 3,200 updated Plaintiff Profile Forms ready to deliver to Defendants.  This representation was repeated

May 4, 2015
Page 3

on the record, when Mr. Herman invited Jacob Woody of BrownGreer to report to the Court as to the updated Plaintiff Profile Forms. Mr. Woody reported as follows:

> Mr. Herman asked me to comment briefly on the supplemental profile forms that we have been collecting. Last week, we made available on our portal an online form for claimants to fill out a supplemental form if they have Taishan drywall. We did that. The form asked for a variety of information, including square footage.
>
> *We've collected to date 3,201 of those forms*. . . . Mr. Herman has asked me to produce that data to all of the defendants here today, and *I will do that as soon as I can, probably today, or Monday at the latest*.

(Official Transcript of April 17, 2015 Status Conf. at 18 (emphasis added).)

But we did not get 3,201 forms on April 17, nor by the following Monday. Taishan's counsel inquired of Mr. Woody as to the status of the production on multiple occasions in the following weeks.

At the Court's discovery conference on April 30, 2015, the PSC explained to the Court that the PSC had been in communications with its members about the production. Mr. Levin further reported the PSC would "probably" produce the forms later in the day. At 4:53 p.m. that evening, we received an email from Mr. Woody that attached an Excel spreadsheet that Mr. Woody represented "contain[ed] all information [BrownGreer] ha[s] received regarding Taishan Supplemental Evidence Forms to date." (the "BrownGreer Summary Spreadsheet").

The Excel spreadsheet has 3,736 separate entries, purportedly one line per each class member.[1]  On its face, the BrownGreer Summary Spreadsheet has several revealing elements, including:

- That the information contained therein is not verified in any way, but rather is "signed" only by legal representatives from the PSC, sometimes "signing" for hundreds of claimants each;

- That more than 1,100 of the claimants no longer own the subject property;

---

[1] Mr. Inglis's affidavit says there are 3,739 claimant properties, but that appears to be based on the number of spreadsheet rows—including header information—which overstates the number of properties.

May 4, 2015
Page 4

- That multiple claimants are expressly making "[d]uplicate claim[s]" for the same property;

- That many claimants have already remediated their properties, yet are still seeking hypothetical estimated damages rather than reimbursement of actual costs; and

- That certain claimants have unknown or unclear claim information, including notations on the spreadsheet such as: "Square footage unknown;" "Manufacturer of drywall is unknown;" and "We have been unable to get in contact with this client.  We are completing this form to the best of our ability with the information we have."

On May 1, 2015, Taishan sent a letter to the PSC raising concerns about the information provided in the BrownGreer Summary Spreadsheet and requesting immediate production of all updated Plaintiff Profile Forms and other documentation supporting the information contained in the BrownGreer Summary Spreadsheet.  Several hours later, the PSC produced what purported to be approximately 500 Plaintiff Profile Forms.  In the letter accompanying the PSC's production, Mr. Levin explained that these Plaintiff Profile Forms were the hard copy forms that had been received by Herman, Herman & Katz.

This production raises more questions than answers.  If there are 3,736 entries on the BrownGreer Summary Spreadsheet, why do we only have 500 Plaintiff Profile Forms?  For the thousands of claimants remaining, where is the support for the information in the BrownGreer Summary Spreadsheet, which purports to provide square footage, remediation information, and ownership information.[2]  What is the source of the putative client "verification" in the absence of a hard copy signed by the client?  And why does the square footage differ as between the updated Plaintiff Profile Forms, the BrownGreer Summary Spreadsheet, and the old Plaintiff Profile Forms completed several years ago?

Presumably, there is some documentary support for these critical summary representations, to which Taishan is entitled.  Indeed, Federal Rule of Evidence 1006, which provides for admission of summary charts, requires that "[t]he proponent ***must*** make the originals or duplicates available for examination or copying or both, by other parties at a reasonable time and place" (emphasis added).  Taishan is entitled to this information.

Simply producing this information will not, however, cure the underlying problem with Plaintiffs' class and damages information: the BrownGreer Summary Spreadsheet

---

[2] It should be noted that not all information is provided for each claimant.  For example, 1350 entries lack any square footage data.

May 4, 2015
Page 5

and ephemeral Plaintiff Profile Forms are not affirmative proof of class membership and damages. Plaintiffs have an obligation to prove class membership and the facts underlying their damages claims (e.g., square footage) with admissible "evidence," and Taishan has a "due process right to challenge the proof used." *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013). For his part, Mr. Inglis relies on assumptions about class membership and damages information, but Plaintiffs cannot use him to convert those assumptions into evidentiary facts. Taishan is entitled to discovery of this information on which Plaintiffs rely, but it will not carry Plaintiffs' burden of proof.

Finally, Taishan renews its request that the Court hold that any class member who did not submit an updated Plaintiff Profile Form on or before April 15, 2015[3] is precluded from recovery in this action. The Court has previously held that dismissal with prejudice is appropriate for a plaintiff's failure to timely submit a profile form. *See* December 10, 2009 Status Conference Transcript (Doc. 690), at p. 9 ("[I]f they resist and do not file the profile forms, I will assume that they are not interested in proceeding with the litigation and dismiss their case with prejudice."); March 23, 2011 Status Conference Transcript, at pp. 5-6 ("From plaintiffs' standpoint, if they don't do it and the meet and confer is arranged and done and there's no question that a certain amount had not been filled in, there's no reason for it, then I'm going to set a rule to show cause why those cases should not be dismissed for failure to comply with the Court's orders.").

### (2) Inspection Reports Related to Class Members

Taishan has been attempting to obtain inspection reports for the properties of Taishan claimants, which were conducted during the Knauf remediation process. This information is relevant to whether any Taishan drywall was in the claimant's properties, as well as whether any other Chinese Drywall was present. Knauf has objected to production of this information unless Taishan pays some undefined sum of money to obtain it. Although Knauf has pointed to no authority for the idea that a party seeking fact discovery must pay for the costs incurred in generating the underlying information, Taishan has been requesting the cost information so that it can evaluate Knauf's request.

Knauf has been unwilling to provide this information. At the April 17, 2015 motions hearing, Knauf's counsel informed the Court that "BrownGreer can tally up what the total cost is," and the Court ordered that Knauf should "get together that [information], and I'll decide who pays it." (April 17, 2015 Motions Hrg. Tr. at 34).

Taishan promptly conferred with Knauf's counsel regarding the inspection reports and other documents in the custody of BrownGreer. On April 23, 2015, Taishan sent a letter with Knauf's consent to BrownGreer requesting that BrownGreer "determine how much Knauf paid to conduct those particular inspections."

---

[3] April 15, 2015 is the deadline imposed by the PSC. It is written in bold, underline type at the top of page one of the updated Plaintiff Profile Form.

May 4, 2015
Page 6

However, BrownGreer then informed Taishan that BrownGreer did not have cost information for the inspection reports because Knauf paid for them directly. (BrownGreer does, however, appear to have the reports themselves.)  So Taishan again requested that information from Knauf, and has repeated that request every few days. Just this morning, with only four days to go before Taishan's damages opposition briefs are due, Knauf's counsel finally responded that he "passed on the request to Knauf last week," and that Knauf still has not determined the "charge to Taishan for the reports."

Knauf's request that Taishan pay for discovery of relevant evidence had no basis in law when made, and has since proved to be a stall tactic.  Taishan respectfully requests that the Court order BrownGreer and Knauf to produce the inspection reports for Taishan claimants in their custody immediately.

*(3) Remediation and Settlement Information Related to Class Members*

Taishan has been seeking information regarding Taishan claimants in the custody of BrownGreer since March 2015.  Many Taishan claimants have participated in the Knauf remediation process and/or received settlement funds from other settlement programs.  This information is relevant to various issues, including the cost of remediation for those properties, setoff, square footage, and the presence of Taishan and/or other brands of Chinese Drywall

During the April 7 discovery conference, the Court ruled that this information is discoverable subject to Knauf's concerns about proprietary data.  Taishan and Knauf met and conferred thereafter, and Knauf eventually withdrew its objections to production of this information with respect to the Taishan class only.[4]

On April 23, 2015, Taishan sent a letter to BrownGreer with Knauf's consent requesting this information.  BrownGreer has yet to produce this information.  According to BrownGreer, some of this information will be produced early this week on a rolling basis.  However, Taishan needs this information as soon as possible given the impending May 8 briefing deadline.

---

[4] By contrast, Knauf has stood by its objections to Taishan obtaining such data for claimants in the MDL that are not in the Taishan class, even though that information on remediation cost would be highly relevant to the determination of remediation damages for the Taishan class.  Although Taishan continues to maintain that it is entitled to discovery of all remediation data in the MDL, as a matter of temporary compromise, it limited its recent request to BrownGreer to only the remediation data for Taishan class claimants.

May 4, 2015
Page 7

      *(4)* *Substantive Attachments to Email Correspondence Between Plaintiffs'*
          *Experts and BrownGreer*

In support of Plaintiffs' Motion for Assessment of Class Damages, in which Plaintiffs argue that, collectively, they are entitled to approximately $1.3 billion, Plaintiffs attach the October 22, 2014 affidavit of Ronald E. Wright, P.E. (the "Wright Affidavit") (Dkt. No. 18086-3).   On March 31, 2015, Taishan filed a notice for the deposition of Mr. Wright which included a request for documents (the "Wright Dep Notice") (Dkt. No. 18577).  The PSC subsequently filed objections to the Wright Dep Notice on April 6, 2015 (Dkt. No. 18597).

The Court addressed the PSC's objections to the Wright Dep Notice during the April 7 discovery conference.  The Court explained that Taishan was entitled to "obtain copies and have access to the documents which [Wright] reviewed and utilized in forming his opinions…."  (April 7, 2015 Hearing Transcript, p. 8).

On April 15, 2015, the PSC notified the Court and counsel that Mr. Wright was being replaced by his colleague George Inglis.  On April 16 2016, Taishan filed a notice for the deposition of Mr. Inglis which included a request for documents (the "Inglis Dep Notice") (Dkt. No. 18704).

On April 27, 2015, the PSC filed objections to the Inglis Dep Notice (Dkt. No. 18760).  That same day, the PSC emailed counsel revisions to the Wright Affidavit through a separate affidavit from Mr. Inglis dated April 27, 2015 (the "Inglis Affidavit"). The PSC subsequently emailed counsel "reliance materials" for the Inglis Affidavit.

On April 28, 2015, we sent a letter to the PSC identifying deficiencies in the PSC's production of expert materials.  Of particular concern, the PSC had not produced correspondence between its experts and BrownGreer, the third party settlement administrator that provided critical information on which Mr. Inglis' based his analysis and opinions.  During a meet and confer on April 29, 2015, the PSC confirmed that its experts had relied on a number of important facts provided by BrownGreer.  However, the PSC refused to produce the correspondence.  Instead, the PSC offered to submit a "privilege log" identifying each correspondence and a memorandum from Mr. Woody summarizing all of the information BrownGreer provided to Plaintiffs' testifying experts Mr. Wright and Mr. Inglis.

On May 1, the PSC produced email correspondence between its testifying experts and BrownGreer.  However, the PSC withheld attachments to those emails claiming that the attachments "are draft versions of the expert report (specifically, Ex. 10 to the Inglis Affidavit and a draft version of Inglis' Affidavit) which are subject to Rule 26 (b)(4)(B) protection."

The PSC's position is baseless.  Any document generated by BrownGreer—a third party administrator—cannot be a draft report within the protection of Rule 26.

May 4, 2015
Page 8

Rather, the attachments sent by BrownGreer to Inglis for consideration must constitute "facts or data" that Plaintiffs' testifying experts considered in preparing their expert reports, and therefore are subject to discovery.  Moreover, none of the attachments to emails from Plaintiffs' experts to BrownGreer appear to be draft reports.  Even if they were, we believe that the Plaintiffs' testifying expert waived any protection by providing the documents to a third-party.

In light of the May 8, 2015 briefing deadline, Taishan respectfully request the Court's assistance in obtaining this information immediately.

Sincerely,

/s Michael P. Kenny

cc:  Gerald E. Meunier – gmeunier@gainsben.com
     Arnold Levin – ALevin@LFSBLaw.com
     Russ M. Herman – RHERMAN@hhklawfirm.com
     Kerry Miller - kjmiller@bakerdonelson.com
     Alan Weinberger – aweinberger@hanrylaw.com
     Harry Rosenberg – harry.rosenberg@phelps.com
     C. Michael Moore – mike.moore@dentons.com
     Gene R. Besen – gene.besen@dentons.com
     Richard L. Fenton – richard.fenton@dentons.com
     Leah R. Bruno – leah.bruno@dentons.com
     Michael H. Barr – michael.barr@dentons.com
     Justin N. Kattan – justin.kattan@dentons.com
     L. Christopher Vejnoska – cvejnoska@orrick.com
     Ian Johnson – ijohnson@orrick.com
     Andrew Davidson – adavidson@orrick.com
     Jason Wu – jmwu@orrick.com
     James L. Stengel – jstengel@orrick.com
     Xiang Wang – xiangwang@orrick.com
     Eric A. Shumsky – eshumsky@orrick.com