UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: *All Cases* | |

**RESPONSE OF BNBM PLC AND BNBM GROUP TO PSC'S CORRECTED FOURTH, FIFTH, AND SIXTH UPDATED STATUS REPORTS, RESPONSES AND OBJECTIONS TO THE PSC'S SUPPLEMENTAL DEPOSITION NOTICE, AND RESPONSE TO PSC'S MOTION TO COMPEL EXPEDITED RESPONSES TO OUTSTANDING DISCOVERY**

Beijing New Building Materials Public Limited Company ("BNBM PLC") and Beijing New Building Material (Group) Co., Ltd. ("BNBM Group," together "BNBM"), respectfully respond to the Plaintiffs' Steering Committee's ("PSC") Corrected Fourth, Fifth, and Sixth Updated Status Reports [Rec. Docs. 18806, 18820, 18833], object to the PSC's Supplemental Deposition Notices [Rec. Docs. 18792, 18794], and respond to the PSC's Motion to Compel Expedited Responses to Outstanding Discovery [Rec. Doc. 18818] and state as follows:

I.

**The PSC's Discovery Production**

Missing from each of the PSC's recent "status reports" is any mention of its own compliance with discovery. Indeed, the PSC attempted yesterday to produce over 63,000 BrownGreer documents on the eve of the deadline for expert reports. This is discovery that the defendants have been seeking for more than a month, that the Court ordered produced some time ago, and that has been, according to the PSC, available for production since mid-April. The PSC has offered no valid reason for providing this massive volume of critical information to the

1

defendants only days before their opposition to plaintiffs' damages motion and rebuttal expert reports are due.

The PSC's production did not involve the same time-consuming logistical issues as defendants, such as identification of custodians, translation, and state secrecy review. These are document that have been fully within the PSC's custody, possession, and control all along, and are written in plain English. Yet after a month of promises, and at the eleventh hour, the PSC by its own account is producing 63,000 new documents, including 2,000 inspection reports, 2500 photos, and more than 10,000 profile forms. The documents are so voluminous that they may not be sent over an FTP site. Other delivery methods are being explored, but as of mid-day today, May 6, 2015, BNBM has no effective access to the documents even though its response to plaintiffs' damages motion is due in two days. The BNBM companies respectfully request that defendants be permitted to address the ramifications of the size and timing of this production with the Court during the next status conference.

II.

**Response of BNBM PLC and BNBM Group to PSC's Corrected Fourth, Fifth, and Sixth Updated Status Reports**

The PSC persists in filing almost daily updated status reports without any attempt to meet and confer with BNBM concerning the issues raised. And such incessant status reports provide quantity in lieu of substance, while distracting defendants from adhering to the Court's priorities. For example, the PSC raises alleged "deficiencies" with BNBM's document production. Yet, the PSC has made no effort whatsoever to confer with BNBM concerning these matters and unnecessarily draws the conclusion that it cannot proceed with deposition discovery.

BNBM has also provided specific deposition dates as follows:

May 21:     30(b)(6) deposition of BNBM Group representative Yanming Zhao

June 4:        30(b)(6) deposition of BNBM PLC representative Yu Chen

June 5:        Individual deposition of Bing Wang

The PSC has previously represented that it would double-track depositions on an expedited basis. Now, at the last minute and after being provided with specific dates, the PSC states in its Fifth Updated Status Report that "in no instance will the PSC agree to take depositions of any witness simultaneously to that of another witness." Then, a day later, in its Sixth Updated Status Report, the PSC shifts gears again and says that it is willing to take depositions of the same defendant entity on multiple tracks, but refuses to agree to multi-track the depositions of different defendant entities simultaneously. The PSC represented to the Court that it would multi-track if given deposition dates. Now that dates are provided, the PSC has changed positions, not once, but twice. Due to the difficulty of arranging the witnesses' travel from China, the PSC should be held to its originally stated plan.

The PSC's constant shifting of position with respect to deposition scheduling is similar to the PSC's ever-changing and shifting discovery notices, of which three different iterations have now been served, each more onerous than the last. The PSC's constant changes in position does not streamline the process, but only creates further complication, confusion, and delay.

In its Fourth Corrected Updated Status Report, filed on May 1, 2015, the PSC describes the BNBM production as "paltry," which is an incorrect and misleading assessment of the efforts of BNBM to date and is directly contrary to the PSC's previous statements to the Court. In fact, BNBM has made significant production: BNBM has produced 10,718 pages of documents to the PSC. BNBM has expended extraordinary effort, previously outlined to the Court on several occasions, to comply with this difficult and expedited discovery schedule. The PSC's repeated filing of these misleading and often incomplete updated status reports, without conferring with

the defendants, does not provide an efficient and effective way to deal with the complex discovery issues faced by the parties and this Court. They simply burden the record and unnecessarily heighten the level of tension between the parties.

Finally, and contrary to the statements of the PSC, the BNBM companies are not in violation of the Court's contempt order. First, and aside from the fact that personal jurisdiction has not been established, BNBM PLC and BNBM Group were not parties to *Germano* nor did they violate any order of this Court, or otherwise act in a manner that could be considered contemptuous. Neither company was served with notice of potential sanction or had an opportunity to be heard prior to when the contempt order was entered.

Second, there was no finding of "single business enterprise" at the time the contempt order was entered, and such later finding has no evidentiary basis because Taishan's deemed Rule 36 admissions cannot be used against BNBM as a matter of law. Therefore, the contempt order cannot be applied to BNBM as a matter of law.

Finally, even if the contempt order was applicable (which it is not), the PSC has no evidence that BNBM did anything to violate the contempt order. In its Sixth Updated Status Report, the PSC makes reference to substantial evidence it has uncovered that the "Taishan Affiliates" did business in the United States during the contempt period, but BNBM will demonstrate to the Court at the appropriate time that the PSC's repeated assertions of violations are without merit.

III.

**Responses and Objections to the PSC's Supplemental Deposition Notice**

The Court has been clear that the parties may take limited discovery on (1) damages; and (2) alleged violations of the contempt order, including whether BNBM PLC and BNBM Group

are affiliates of Taishan Gypsum Co. Ltd. ("Taishan"). Notwithstanding these repeated and express instructions, the PSC has issued multiple deposition notices that pursue discovery on broad-ranging subjects. On March 19, 2015, the PSC issued Notices of Expedited Oral and Videotaped Deposition [Rec. Docs. 18498, 18499] (the "Original Notices"). The PSC then served BNBM with vastly expanded Amended and Supplemental Notices of Expedited Oral and Videotaped Deposition [Rec. Docs. 18643, 18644] (the "Amended Notices"), which sought unrelated, irrelevant, and privileged information on 66 entities and over 110 individuals. On April 14, 2015, BNBM moved for protective order on such Amended Notices.

Now, the PSC has served Supplemental Notices of Expedited Oral and Videotaped Deposition [Rec. Docs. 18792, 18794] (the "Supplemental Notices"), which seek even broader information and documents, relating to:

- Preparation of tax returns, financial statements, and/or financial audits for the years 2005 to the present, including documents provided to or prepared by an accounting firm (Document Requests 1-3; Deposition Topics 1-2);

- Taishan's wire transfers (Document Requests 4-5; Deposition Topics 3-4);

- The BNBM Entities' bank accounts, including source of deposits in each account, and purpose of "all withdrawals, payments, or transfers from each such account" (Document Request 6; Deposition Topic 5); and

- Taishan's contention that it is unable to bear the economic loss from the Chinese drywall litigation (Document Request 7; Deposition Topic 6).

Notwithstanding the PSC's sweeping requests and incessant emergency motions to compel, BNBM has been actively working around the clock on two continents to expedite production of discovery in response to the Court's order and the Original Notices. Indeed, BNBM has produced over 10,000 pages of documents and has made its 30(b)(6) deponents available on specific dates. BNBM has also kept the PSC apprised of such efforts and challenges in responding to the Original Notices.

5

Like the Amended Notices, the Supplemental Notices are beyond the scope of the Court's order and are overly broad, unduly burdensome, and seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence or is privileged. As the Court recently made clear—the upcoming depositions are not a "free for all." These Amended and Supplemental Notices are precisely the broad discovery requests the Court did not want the parties to focus on. And to require large publically traded companies to produce all information regarding the preparation of their tax returns, financial statements, and bank accounts (including all transfers) for the past 10 years in a matter of weeks is not only irrelevant and unduly burdensome but is an attempt to harass the defendants and disrupt their efforts to comply with the expedited discovery on the limited issues permitted by the Court. And the Court has made clear that it is not interested in "asset discovery" regarding Taishan. (*See* Transcript of April 17, 2015 Status Conference at 7:15-16 ("I'm not interested in whether Taishan has any money.")).

Therefore, BNBM objects to the entirety of the Supplemental Notices. BNBM will continue to make every effort to produce witnesses and documents in accordance with the directions of the Court.

IV.

**Response to PSC's Motion to Compel Expedited Responses to Outstanding Discovery**

The PSC's motion to compel should be denied in all respects because the relief sought is entirely unreasonable, burdensome, and harassing. The PSC improperly asks the Court to order BNBM to fully and completely respond to all outstanding discovery in ten (10) days by May 15, 2015. The motion is also ill-founded and illogical because it asserts, incorrectly, that the outstanding discovery concerning the contempt order is somehow critical to the damages hearing scheduled to begin on June 9, 2015. The Court need only review pages 2 through 9 of the PSC's

motion to realize that the PSC has been the source of delay due to its confusing, inconsistent, and irrelevant discovery requests served on an almost weekly basis since February 20, 2015. Rather than "streamline" expedited discovery relating to the Court's two narrow discovery areas—damages and contempt—the PSC's notices do just the opposite. The PSC insists on attempting to pursue discovery well beyond the ordered scope. As a result, the PSC's request that all discovery be responded to by May 15, 2015 should be denied.

    1.    <u>BNBM Has Made Good Faith Efforts to Respond to PSC Discovery Requests</u>.

The PSC argues that BNBM has failed to adequately respond to **any** of the PSC's discovery to date. As the Court is well aware, that is simply not correct. BNBM has produced over 10,000 pages of documents and is in the process of preparing additional document productions to the PSC. BNBM and its counsel have had teams in the United States and China working on document production literally around the clock since BNBM made its first appearance in this case. As the Court is also aware, but ignored by the PSC, is the fact that there are significant logistical hurdles that are simply beyond the control of BNBM and its counsel. These include locating, reviewing, screening, and translating voluminous documents. Also, BNBM's discovery vendor, Grant Thornton, has encountered multiple technical issues in identifying and pulling electronic documents which have caused delays and which are completely beyond the control of BNBM or any other defendant.

The PSC's complaints about BNBM hardly justify the draconian relief it seeks in its motion to compel. For example, at page 10 of its motion, the PSC complains that certain schedules are allegedly missing from BNBM tax forms and that certain underlying documents relating to the business dealings with Davis Construction Supply have not been produced. **Yet, not once has the PSC bothered to confer with BNBM's counsel on these alleged**

**"deficiencies."** If the PSC would simply pick up the telephone and communicate with counsel for BNBM, it is highly likely that these issues could be swiftly and efficiently identified and resolved without need for Court intervention.

    2.    <u>BNBM is not engaged in a "widespread" effort to delay the June 9, 2015 class damages hearing.</u>

Painting with its characteristically broad brush, the PSC accuses BNBM and the other defendants of engaging in widespread efforts to delay the June 9, 2015 class damages hearing. Nothing could be further from the truth. BNBM has made it clear to the Court that it is not seeking any delay of the damages hearing. In fact, it is the PSC, not the defendants, that is dragging its feet on the discovery necessary to conduct the damages hearing. As late as two days ago, counsel for Taishan outlined for the Court the deficiencies in the PSC's production of documents that the Court has clearly ordered produced in connection with the damages hearing.

    3.    <u>BNBM has not engaged in a "document dump."</u>

For the first time in its motion to compel, the PSC alleges that BNBM has engaged in a "document dump." That is a curious accusation, given that the PSC simultaneously claims that BNBM's production has been insufficient. This latest complaint is also without merit. BNBM has not "dumped" documents on the PSC. Instead, it has produced hundreds of BNBM documents that are clearly and directly related to BNBM's compliance with corporate formalities. This production is plainly responsive to the PSC's specific requests and no further clarification should be required. Further, as mentioned above, the PSC itself attempted to "dump" over 63,000 BrownGreer documents on the defendants only three days before the deadline for expert reports.

At page 11 of its motion, the PSC recognizes, as it must, that it would be burdensome to require BNBM to respond to all outstanding discovery in ten (10) days. Even the PSC

8

recognizes the practical realities facing BNBM in this situation.  Yet, the PSC would have this Court order the impossible.  This relief would be particularly inappropriate since the discovery requested goes well beyond the damages discovery track ordered by the Court and unnecessary for the June 9 hearing.

Also, the so-called "Accountant and Banking Discovery" sought by the PSC has nothing to do with the damages hearing discovery.  Not only is it objectionable for all the reasons set forth in BNBM's response and objections discussed above, but such discovery is completely irrelevant to the June 9 damages hearing.  If anything, this type of discovery, although objectionable, is more properly related to the "Track 3" discovery that the Court has indicated will be done after the damages hearing is complete.

## Conclusion

BNBM respectfully requests that its objections be sustained and that the PSC's motion to compel be denied.


Dated:  May 6, 2015

                                    Respectfully submitted,

**DENTONS US LLP**

By: */s/ Michael H. Barr*
Michael H. Barr
New York Bar No. 1744242
Justin N. Kattan
New York Bar No. 3983905
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
michael.barr@dentons.com
justin.kattan@dentons.com

- and -

Richard L. Fenton
Illinois Bar No. 3121699
Leah R. Bruno
Illinois Bar No. 6269469
233 South Wacker Drive
Suite 7800
Chicago, IL 60606-6306
Telephone: (312) 876-8000
Facsimile: (312) 876-7934
richard.fenton@dentons.com
leah.bruno@dentons.com

- and -

C. Michael Moore
Texas Bar No. 14323600
Gene R. Besen
Texas Bar No. 24045491
2000 McKinney Ave, Suite 1900
Dallas, TX 75201
Telephone: (214) 259-0900
Facsimile: (214) 259-0910
mike.moore@dentons.com
gene.besen@dentons.com

- and -

**PHELPS DUNBAR LLP**

Harry Rosenberg
Louisiana Bar No. 11465
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Facsimile: (504) 568-9130
harry.rosenberg@phelps.com

*Attorneys for Beijing New Building Material (Group) Co., Ltd. and Beijing New Building Materials Public Limited Company*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing **Response of BNBM and BNBM Group to PSC's Corrected Fourth, Fifth, and Sixth Updated Status Reports, Responses and Objections to the PSC's Supplemental Deposition Notice, and Response to PSC's Motion to Compel Expedited Responses to Outstanding Discovery** has been served on Plaintiffs' Liaison Counsel, Leonard Davis, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with the Pretrial Order No. 6, and that the foregoing was also electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this May 6, 2015.

/s/     Michael H. Barr