UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>**THIS DOCUMENT RELATES TO:**<br>*All Cases* | MDL No. 2:09-md-2047<br><br>SECTION L<br><br>JUDGE ELDON E. FALLON<br><br>MAGISTRATE JUDGE<br>JOSEPH C. WILKINSON, JR. |

**DEFENDANTS' RESPONSE TO THE PSC'S MOTION TO COMPEL PRODUCTION AND DISCOVERY STATUS REPORTS**

China National Building Materials Group Corporation, China National Building Materials Company, Ltd., China National Building Materials & Equipment Import & Export Corporation, CNBM (USA) Corporation, CNBM Forest Products (Canada) Limited, and United Suntech, Incorporated (collectively, "Defendants"), submit this joint response to the PSC's voluminous, duplicative, and unnecessarily "expedited" motions to compel production (*e.g.,* Rec. Doc. 18818), and to the PSC's numerous updated and amended discovery status reports (*e.g.,* Rec. Doc. 18820).[1]

The PSC has issued multiple rounds of broad discovery demanding expedited production of documents dating back more than a decade and relating to hundreds of entities with no

---

[1] This response is submitted reserving all defenses, including but not limited to service of process, venue, personal jurisdiction, subject matter jurisdiction, sovereign immunity, incorrect party identification, and failure to state a claim upon which relief can be granted.  Defendants have previously notified the Court and all parties, and hereby reaffirm, that they intend to assert jurisdictional defenses, both subject matter and personal, and in no way intend to or do waive or otherwise limit their ability to raise those defenses, whether by this brief or any other act, filing, appearance, or contention, either before or after, in this or any other litigation.  *See* Order Preserving Defenses (Rec. Doc. 18583).

connections to this litigation.  The PSC has also imposed unrealistic deadlines for document productions and depositions that disregard the time and effort required to identify, collect, process, review, translate, and produce documents, and to secure passports and U.S. visas for witnesses.  Finally, it appears that the PSC has secured expedited returns on subpoenas to third parties with little or no actual notice to them, even when represented by counsel.

While Defendants understand that litigants necessarily see issues differently, particularly when the stakes are large, the PSC's preference and predilection for flooding the Court and parties with a steady stream of discovery-related complaints, accusations, and reports stands apart.  Yet the PSC's unrelenting stream of complaints is the inevitable result of the breathtaking scope of its own discovery demands.  To remedy these self-inflicted difficulties, the PSC seeks to further burden Defendants with unsupported and unjustified *additional* demands.  The PSC's motion to compel production of documents should be denied; further, its litany of charges and "updates" – again, almost always submitted as "emergency" filings – requires, finally, some response.

**I.     THE PSC CANNOT OBJECT TO RECEIVING VOLUMINOUS DISCOVERY IN RESPONSE TO ITS BROAD DISCOVERY DEMANDS**

The PSC has issued multiple rounds of broad discovery, including four rounds of deposition notices (March 4, March 19, April 9, and April 30) that far exceed the limited discovery tracks contemplated by the Court.  As the PSC itself describes, these discovery demands are "broad in scope and included requests involving some 232 entities." Rec. Doc. 18818-1 at 3.  The broad, burdensome scope of the PSC's demands has been recounted at length in motions for protective orders (Taishan/TTP, Rec. Doc. 18680; BNBM Group/PLC, Rec. Doc.

18681) and deposition objections filed with the court (*e.g.,* Rec. Doc. 18807).[2] Defendants have nevertheless expended substantial effort and have worked continuously since being served with the March 19, 2015 deposition notices to produce documents on an expedited basis.

The PSC now complains that it is receiving what it demanded. It objects that it is receiving documents in a "Helter Skelter fashion making it impossible for the PSC to quickly gauge the adequacy of the defendants' document production" (Rec. Doc. 18818-1 at 1) and that it is the victim of a "data dump." *Id.* at 11.

The PSC has only itself and its broad, burdensome discovery demands to blame for its claimed dilemma. As the PSC admits, its discovery demands seek documents and information relating to more than 200 entities and dating back to January 1, 2001, nearly a decade before the onset of the MDL litigation. The PSC has further invited a substantial volume of document productions by propounding nearly identical deposition notices to numerous entities with any perceived connection whatsoever to CNBM Group or CNBM Company, several of whom (*e.g.,* China National Building Materials & Equipment Import & Export Corporation and CNBM Forest Products (Canada)) are not defendants in products liability actions pending before the Court. While being the first to admit that their efforts to respond to the PSC's document discovery demands remain in progress, Defendants are committed to providing rolling productions of documents in an expeditious fashion. As described below, Defendants are providing documents in electronically searchable format, complete with standard metadata and ready to load in a document review platform. Defendants are already exceeding the obligations

---

[2] The PSC's memorandum takes nearly eight pages just to recount the discovery that the PSC has propounded to date. Rec. Doc. 18818-1 at 2-9.

imposed by the Federal Rules and are not obligated to take further steps to help the PSC review, organize, or analyze the document productions. As always, that is the task – carrying with it both burden and opportunity – facing the determined and resourceful opposing side. To demand that Defendants do this work for the PSC, while imaginative, simply goes too far.

## II. DESPITE DEFENDANTS' BEST EFFORTS, DOCUMENT PRODUCTIONS CANNOT POSSIBLY BE COMPLETED BY MAY 15, 2015

Defendants have worked continuously since receiving the March 19, 2015 deposition notices to produce documents and provide witnesses for deposition. Defendants' Joint Statement on Discovery (Rec. Doc. 18770) detailed the extent to which Defendants have been actively participating in discovery. Despite Defendants' substantial and costly efforts, it is not reasonable, and indeed impossible, to complete discovery by May 15, 2015. The PSC's discovery demands are simply too broad, ask for too much information, and seek documents and information relating to the last 15 years of activities undertaken by scores of alleged "affiliates." The PSC's demands also ignore the difficulties, burdens, and time associated with conducting discovery in China.

Defendants have agreed with the PSC on a schedule for the depositions of five different witnesses under Rule 30(b)(6), and have offered dates for five additional, individual depositions. All of these depositions will convene in New Orleans, the witnesses all now have procured exit visas, and they have begun to make the necessary travel arrangements. Defendants also continue to make every effort possible to produce documents on an expedited basis. Should the Court

have any additional questions about the details and degree to which Defendants are participating, counsel will be pleased to address these questions *in camera*.[3]

### III. THE PSC CANNOT REQUIRE DEFENDANTS TO PROVIDE TRANSLATIONS

The PSC relies on the Court's March 17, 2015 minute order and the April 17, 2015 status conference transcript to argue that Defendants are obligated to provide translations to its specifications.[4] But the weight of authority contradicts this demand, and instead obligates the propounding party to bear the burden and cost of translating documents. *See, e.g., In re P.R. Elec. Power Auth.,* 687 F.2d 501, 506 (1st Cir. 1982) (overturning district court order threatening sanctions for failing to translate produced documents); *Cook v. Volkswagen of America, In.,* 101 F.R.D. 92, 92 (S.D.W.Va. 1984) (denying motion to compel production of English translations of German documents). Indeed, the limited and decades-old authority for shifting the cost of translation to the producing party arose in a case that involved $420 in translating costs, and has been criticized in subsequent decisions. *See Ex parte Maple Chase Co.,* 840 So. 2d 147, 150 (Ala. 2002) ("[w]e believe the better-reasoned view is that a party is required to bear its own pretrial discovery costs and any special attendant costs relate to its discovery requests . . . . We are persuaded that the federal courts are correct in holding that a party cannot impose on the producing party the cost of translating documents from a foreign language."); *see also P.R. Elec. Power Auth.,* 687 F.2d at 509 n.3 (rejecting argument that foreign parties should be forced to pay

---

[3] Such information would trench upon work product protections, making presentation to the Court alone more appropriate.

[4] The Court did not order Defendants to provide translations of non-English documents in either the March 17, 2015 minute order or the April 17, 2015 status conference. Nonetheless, they are providing translations.

for the costs of translation as a cost of doing business in the United States). The PSC cannot require Defendants to translate documents, much less to translate documents by a specific method or to the PSC's satisfaction.

Precedent notwithstanding, Defendants have agreed to provide machine translations of all documents that are not in English. Further, Defendants have not asked the PSC to bear any part of the costs associated with collecting, translating, or producing those materials. The PSC cites no legal authority in their "memorandum of law," and cannot reasonably ask Defendants to shoulder the substantial additional burden that would be required to provide page-by-page formatted translations of every document produced in response to the PSC's broad and burdensome discovery demands.[5] The machine translations are sufficient to allow the PSC to identify those documents that they wish to review in more detail or use as evidence, and the PSC may arrange for its own, additional translation from the native language documents if it wants. The PSC's memorandum of law proves that the PSC has this capability.

**IV.   DEFENDANTS ARE PRODUCING DOCUMENTS AS THEY ARE KEPT IN THE COURSE OF BUSINESS**

The PSC also argues that Defendants should be required to identify for the PSC, on a document-by-document basis, the deposition notice(s) and specific document request(s) to which each produced document is responsive. Contrary to the PSC's arguments, Defendants are meeting their discovery obligations by producing documents as they are kept in the course of business. Fed. R. Civ. P. 34(b)(2)(E)(i). Indeed, if the party produces documents as they are

---

[5] The PSC also ignores that requiring such translations would bring the pace of document production to a virtual halt.

kept in the usual course of business, "the Rule imposes no duty to organize and label the documents, provide an index of the documents produced, or correlate the documents to the particular request to which they are responsive. *MGP Ingredients, Inc. v. Mars, Inc.,* No. 06-CV-2318, 2007 U.S. Dist. LEXIS 76853, at *10 (D. Kan. Oct. 15, 2007); *see also Valeo Elec. Sys. v. Cleveland Die & Mfg. Co.,* No. 08-CV-12486, 2009 U.S. Dist. LEXIS 51421, at *8 (E.D. Mich. June 17, 2009).

Here, Defendants meet the Rule 34(b) requirement. Defendants are producing electronically-stored information ("ESI"), including both the content of the document and standard metadata information. In addition, Defendants are providing the ESI in load file format, such that the PSC can recreate the ESI on a review platform such as Concordance. ESI productions of the sort made by Defendants, where the ESI is searchable, sortable, paired with relevant metadata, and with an accompanying review platform load file, is sufficient to meet the requirement to produce ESI as it is kept in the usual course of business. *Nat'l Jewish Health v. WebMD Health Servs. Group,* --- F.R.D. ---, No. 12-CV-02834, 2014 WL 2118585, at *5-*9 (D. Colo. Mar. 24, 2014). Defendants are under no obligation to provide any additional identifying information.

## V.    THE PSC IS NOT ENTITLED TO ASSET DISCOVERY

On April 17, 2015, the Court specified that discovery should focus on whether Taishan or its "affiliates" did business in the United States, and not "whether Taishan has any money." *See* April 17, 2015 Tr. at 7:13-21 ("I'm not interested in whether Taishan has any money . . . but I'm interested in knowing whether either they or their affiliates did business in the United States

during that period of time . . . . So that's the focus and needs to be the focus of the discovery on the contempt order.").

The PSC disregarded this instruction in its April 30, 2015 deposition notices.  These "Supplemental Notices" seek asset and financial information of Defendants.  For example, the PSC demands tax returns, financial statements and financial audits – and not just from 2014, but dating back to 2005.  The PSC also demands documents concerning all bank accounts belonging to Defendants, including explanations of "the purpose of all withdrawals, payments or transfers from the account(s)."  The PSC goes even further in its "Opposition to the Motions for Protective Orders" (Rec. Doc. 18834).  The PSC argues that the information it seeks relates to "transactions [occurring] during the contempt period," but does not explain why its "Supplemental Notices" demand financial information and tax returns dating back to 2005.  Nor does the PSC explicate its conclusory assertions that the discovery will "uncover evidence on the profits of the defendants" during the contempt period, much less profits pertaining specifically to "business conducted in the United States."

Astonishingly, the PSC yesterday adopted the remarkable position that *any* "involv[ement with] American corporate entities" constitutes "conducting business in the United States" within the scope of the Court's contempt order. Rec. Doc. 18834 at 3.  The PSC also asserts that pre-existing investments by JP Morgan or Morgan Stanley in CNBM Company – a listed company on the Hong Kong Stock Exchange that is freely tradable – constitute "conducting business in the United States," as does the legally-required payment of dividends to shareholders.  The PSC's construction of the contempt order would require liquidation of

investments by *any* American entity or person (regardless of whether a party to the litigation) in any "Taishan affiliate," including publicly-traded companies, in order for the Taishan "affiliate" to not be penalized. The contempt order cannot possibly be applied this broadly.

More broadly, the PSC's repeated "updates" regarding "violations" of the Court's contempt order are neither accurate nor instructive. First, Defendants do not accept the PSC's ever-broadening and self-serving definitions of "doing business" or "affiliates." More generally, the constant "reports" and "updates" serve no real purpose given the Court's stated intention to review the evidence and render rulings after discovery is closed. On the contrary, these "updates" serve the sole purpose of providing a one-sided and self-serving narrative to the Court. Defendants believe that assessment of all aspects of the contempt order – ranging from its applicability to its application – most appropriately is left to briefing and argument at that time. For now, Defendants note their disagreement with the PSC's positions, including the PSC's assertions that pre-existing recourse to the American banking or judicial systems, by entities that were not even parties to the case in which the contempt order was issued, constitutes punishable conduct.

## VI.   CONCLUSION

The PSC goes too far. Its discovery demands seek too much, and its efforts to direct and define how Defendants respond to those demands are insupportable.

Respectfully submitted,

/s/ L. Christopher Vejnoska
L. Christopher Vejnoska (CA Bar No. 96082)

| | |
|---|---|
| L. Christopher Vejnoska (CA Bar No. 96082)<br>Ian Johnson (CA Bar No. 208713)<br>Andrew Davidson (CA Bar No. 266506)<br>Jason Wu (CA Bar No. 279118)<br>Jason Cabot (CA Bar No. 288877)<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>The Orrick Building<br>405 Howard Street<br>San Francisco, CA  94105<br>Tel.:  415-773-5700<br>Fax:  415-773-5759<br>E-mail:cvejnoska@orrick.com<br>         ijohnson@orrick.com<br>         adavidson@orrick.com<br>         jmwu@orrick.com<br>         jcabot@orrick.com | Ewell E. Eagan, Jr. (LA Bar No. 5239)<br>Donna Phillips Currault (LA Bar No. 19533)<br>Nina Wessel English (LA Bar No. 29176)<br>Alex B. Rothenberg (LA Bar No. 34740)<br>GORDON, ARATA, MCCOLLAM,<br>DUPLANTIS & EAGAN, LLC<br>201 St. Charles Avenue, 40th Floor<br>New Orleans, LA 70170-4000<br>Tel: (504) 582-1111<br>E-mail: eeagan@gordonarata.com<br>            dcurrault@gordonarata.com<br>            nenglish@gordonarata.com<br>            arothenberg@gordonarata.com |
| James L. Stengel (NY Bar No. 1800556)<br>Xiang Wang (NY Bar No. 4311114)<br>Kelly Daley (NY Bar No. 4970117)<br>ORRICK, HERRINGTON & SUTCLIFFE LLP<br>51 West 52nd Street<br>New York, NY, 10019<br>Tel:  212-506-5000<br>Fax:  212-506-5151<br>Email:  jstengel@orrick.com<br>           xiangwang@orrick.com<br>           kdaley@orrick.com | Jonathan Riddell (LA Bar No. 27053)<br>ORRICK, HERRINGTON & SUTCLIFFE, LLP<br>400 Capitol Mall<br>Suite 3000<br>Sacramento, CA 95814<br>Tel: 916-447-9200<br>Email: jriddell@orrick.com |

Eric A. Shumsky (D.C. Bar No. 477926)
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street NW
Washington, D.C. 20005
Tel: 202-339-8400
Fax: 202-339-8500
Email: eshumsky@orrick.com

*Attorneys for Defendants*

Dated**:** May 6, 2015

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing Response to the PSC's Motion to Compel Production and Discovery Status Reports has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all parties by electronically uploading the same to File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 6th day of May, 2015.

                                          /s/ L. Christopher Vejnoska
                                          L. Christopher Vejnoska (CA Bar No. 96082)