UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: | |
| *Germano et al. v. Taishan Gypsum Co. Ltd. et al.*, Case No. 2:09-cv-06687 | |

**BEIJING NEW BUILDING MATERIALS PUBLIC LIMITED COMPANY AND BEIJING NEW BUILDING MATERIAL (GROUP) CO., LTD.'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF PLAINTIFF INTERVENORS AND THE PLAINTIFFS' STEERING COMMITTEE FOR AN EXPEDITED HEARING TO ENFORCE THE COURT'S JULY 17, 2014 CONTEMPT ORDER AND INJUNCTION**

Beijing New Building Materials Public Limited Company ("BNBM PLC") and Beijing New Building Material (Group) Co., Ltd. ("BNBM Group") respectfully submit this memorandum of law in opposition to Plaintiff Intervenors and the Plaintiffs' Steering Committee's ("PSC") Motion for an Expedited Hearing to Enforce the Court's July 17, 2014 Contempt Order and Injunction ("Motion to Enforce").

**PRELIMINARY STATEMENT**

By this Motion To Enforce—and specifically in its supplemental memorandum of law relating to the Motion To Enforce (Rec. Doc. 18447-2)—the PSC asks this Court to extend its July 17, 2014 Contempt Order (Rec Doc. 17869) (the "Contempt Order") to hold BNBM PLC and BNBM Group in contempt, and to extend the injunction provision of the Contempt Order to cover dozens of entities that it contends are "affiliates" of Taishan.  To grant either request for relief would be clear error.

BNBM PLC and BNBM Group were never held, and could never have been held, in contempt of this Court.  The Contempt Order expressly states that only Taishan Gypsum Ltd., Co.

1

("Taishan") was in contempt: "As a consequence of *Taishan's* refusal to appear at this Judgment

Debtor Examination. . . .the Court holds *Taishan* in contempt of court." (Rec. Doc. 17869, at 2)

(emphasis added).[1]  Now that Taishan has satisfied its obligations under the Contempt Order

(Rec. Docs. 18448, 18449), it can no longer be enforced against anyone.  *Lance v. Plummer*, 353

F.2d 585, 592 (5th Cir. 1965); *FTC v. Leshin*, 719 F.3d 1227, 1233-34 (11th Cir. 2013).

There is no basis to hold BNBM PLC or BNBM Group in contempt retroactively for

Taishan's failure to attend the Judgment Debtor Examination.  They were not even parties to the

action in which the Examination was ordered and the Contempt Order was issued, *Germano et

al. v. Taishan Gypsum Co. Ltd. et al.*, Case No. 2:09-cv-06687 ("*Germano*").  Neither BNBM

PLC nor BNBM Group violated an order of this Court, or otherwise acted in a manner that could

be considered contemptuous.  Neither company was served with notice of the potential sanction

or had an opportunity to be heard prior to the Contempt Order being entered.  And because this

Court lacks jurisdiction over BNBM PLC and BNBM Group, it cannot impose sanctions against

them.  While some courts have asserted a limited power to reach into another *state* to enforce an

injunction against a non-resident who is actively assisting a contemnor's efforts to evade a

contempt order, 1) that power does not extend to a *non-U.S.* defendant that is not subject to the

Court's jurisdiction, *see, e.g.*, *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 137-38 (2d Cir. 2014);

and 2) there is no evidence that BNBM PLC or BNBM Group were "active[ly] in concert" with

Taishan to violate this Court's Contempt Order, as the PSC contends.

The PSC, once again, incorrectly argues that Taishan's contempt should apply to BNBM

PLC and BNBM Group based on this Court finding that the three entities (among others)

---

[1] The Contempt Order defined "Taishan" as Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe
Dongzin Co., Ltd. (Rec. Doc. 17869, at 2).  Neither BNBM PLC nor BNBM Group are
mentioned by name.

constitute a "single business enterprise."  But there had been no such finding at the time the

Contempt Order was entered, and there is no basis to apply it retroactively.  The Court's

Contempt Order should not be extended to BNBM PLC, which is merely one of Taishan's

shareholders, or BNBM Group, which has no equity interest in Taishan.  Moreover, the PSC's

argument fails under binding Fifth Circuit authority.  The sole evidentiary basis for this Court's

"single business enterprise" finding was Taishan's deemed Rule 36 admissions, which cannot be

used against BNBM PLC or BNBM Group as a matter of law.  *See Becerra v. Asher*, 105 F.3d

1042, 1048 (5th Cir. 1997).

This Court recognized at the March 17, 2015 status hearing that the *alter ego* question is

far from resolved:

> The second issue, as I see it, is a relationship between CNBM and
> BNBM on the one hand and TG and TTP on the other.  I think the
> relationship is important to determine whether they are affiliates or
> whether they are alter egos of TG and TTP.
>
> There may be some factual dispute here.  It may be necessary for
> plaintiffs to take depositions.  If they look at their material and
> they find that the material is not necessarily admissible or that they
> need to go further, they ought to be able to take depositions of the
> BNBM people and the CNBM people.
>
> I'm going to look to BNBM and CNBM to willingly participate in
> that discovery.  If they don't that to me means that they should not
> participate in this litigation and I will act accordingly.  ***This
> relationship, whether it exists or not, will determine the
> applicability of res judicata and/or collateral estoppel.  It will also
> determine the scope of the contempt order*.**[2]

The ongoing "alter ego" discovery that this Court has ordered confirms that there is no

basis to hold BNBM PLC or BNBM Group in contempt based on Taishan's conduct.  Neither

company either "controls" Taishan, or did so at the time the Contempt Order was entered.

---

[2]  Hr'g Tr. 36, March 17, 2015 (emphasis added).  A copy of relevant pages of the transcript is
attached as **Exhibit A**.

BNBM Group has no ownership interest in Taishan.  BNBM PLC is a 65% shareholder of Taishan's, but it does not unilaterally control Taishan and its interest is short of the supermajority required for significant votes (Chinese law requires the vote of over two-thirds of the equity interests).  Taishan operates independently and with separate management.  Taishan and BNBM PLC make and market different drywall under different brands (BNBM PLC does not market in the U.S., and BNBM Group does not manufacture or sell drywall to the U.S.).  Taishan and BNBM PLC also do not act as agents for each other, and do not fulfill each other's contracts. There are no indicia that they are mere alter egos.  The only purported "evidence" on which the PSC relies are e-mails produced by Taishan's former counsel, which in no way support the PSC's contention that either BNBM PLC or BNBM Group "controlled" Taishan's decision not to attend the Judgment Debtor Examination.

In addition to the specific arguments raised in this brief, BNBM PLC and BNBM Group expressly adopt and incorporate by reference the arguments raised by Taishan in its opposition to the PSC's Motion (Rec. Doc. 18451).  Specifically:

- The Contempt Order's reference to Taishan's "affiliates" is not sufficiently detailed to have reasonably put BNBM PLC or BNBM Group—or any of the other entities that the PSC now seeks to be included within the Contempt Order's injunction on doing business in the United States—on notice either that it applied to them, or concerning what conduct is prohibited, and therefore it is unconstitutional. *John Doe #1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004).  Not even the PSC, which has made multiple attempts to define what entities fall within the Order's definition of "affiliate," has been able to identify precisely to whom the Contempt Order applies.  (Rec. Doc. 18451 at 7-9).

- Assuming the PSC maintains its request to be deputized to investigate and prosecute perceived violations of the Contempt Order anywhere in the United States—even though Taishan has purged its contempt, making further enforcement of the Contempt Order unnecessary and improper— that request violates Fed. R. Crim. P. 42(b).  (Rec. Doc. No. 18451 at 10-12).  Rule 42(b) requires the Court to request that the government prosecute contempt.  If the government declines, the Fifth Circuit has

4

made clear that interested, private attorneys should not be appointed in its stead. *Brotherhood of Locomotive Firemen & Enginemen v. U.S.*, 411 F.2d 312, 319-20 (5th Cir. 1969).

The issue raised on this motion is not whether either BNBM PLC or BNBM Group conducted business in the United States between July 2014 to March 2015 in violation of the injunction prong of the Contempt Order. When and if that issue is presented to this Court, BNBM PLC and BNBM Group will present evidence that they did not violate the Contempt Order, assuming, *arguendo*, it could be applied against them. The issues before the Court on this Motion are 1) whether or not BNBM PLC and BNBM Group can be found in contempt for Taishan's failure to attend the Judgment Debtor Examination, and 2) whether the Court's injunction on doing business in the United States could apply to BNBM PLC or BNBM Group. The answer to each question is a resounding "no."

For all of the reasons set forth in, and incorporated by reference into, this memorandum, the PSC's Motion to Enforce should be denied.

## ARGUMENT

### I.   NEITHER BNBM PLC NOR BNBM GROUP CAN BE HELD IN CONTEMPT

#### A.   BNBM PLC And BNBM Group Were Not And Could Not Have Been Found To Have Been In Contempt

The Contempt Order entered in *Germano* did not hold BNBM PLC or BNBM Group in either civil or criminal contempt. Indeed, it did not specifically mention either of them. Nor could this Court have found that BNBM PLC or BNBM Group acted in contempt. Neither BNBM PLC nor BNBM Group were even parties in the *Germano* case, and neither was subject to the judgment entered against Taishan in that case. Neither BNBM PLC nor BNBM Group were ordered to sit for a debtor examination, and neither refused to comply with such an order.

To hold BNBM PLC and BNBM Group in civil contempt, this Court would have had to

have found, by clear and convincing evidence, that BNBM PLC and BNBM Group (1) "violate[d] a definite and specific" court order; (2) "requiring [them] to perform or refrain from performing a particular act;" and (3) had "knowledge of the court's order." *Waste Mgmt. of Wash., Inc. v. Kattler*, 776 F.3d 336, 341 (5th Cir. 2015); *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) (same). To hold BNBM PLC and BNBM Group in criminal contempt would have required those elements to have been shown beyond a reasonable doubt, and the Court would also have had to have determined that BNBM PLC's and BNBM Group's contemptuous conduct was willful. *See* 18 U.S.C. § 401(3) (providing the statutory requirements for criminal contempt); *see also Griffith v. Oles (In re Hipp, Inc.)*, 895 F.2d 1503, 1509 (5th Cir. 1990). Absent sufficient evidence in the record to meet the burden of proof for each element of civil or criminal contempt, a contempt order cannot stand. *See, e.g.*, *Travelhost, Inc.*, 68 F.3d at 965 (overruling civil contempt finding when record lacked evidence that contemnor violated a court order).

There is no such evidence here. The Contempt Order was entered after this Court ordered Taishan to appear for the Judgment Debtor Examination, and Taishan—not BNBM PLC and BNBM Group—failed to appear. (Rec. Doc. 17869, at 2). BNBM PLC and BNBM Group violated no Court orders. Certainly there was no finding that BNBM PLC and BNBM Group willfully intended to disobey a Court directive. Therefore, there was no, and could be no, finding that BNBM PLC and BNBM Group acted in contempt of court.

Moreover, the Contempt Order cannot reasonably be interpreted to extend to BNBM PLC or BNBM Group, either as a civil or as a criminal contempt. Because the Contempt Order provides that only Taishan can purge the contempt, construing the order as imposing a civil contempt sanction on BNBM PLC and BNBM Group would be improper. (Rec. Doc. 17869, at

4); *In re Grand Jury Proceedings*, 744 F.3d 211, 218 (1st Cir. 2014).  Civil "contempt sanctions are inappropriate when a contemnor 'has no further opportunity to purge himself of contempt.'" *Id.* at 218 (quoting *Shillitani v. United States*, 384 U.S. 364, 371 (1966)).  In addition, before the Court may impose civil contempt sanctions, a party must have (1) notice of the contempt charges; (2) have an opportunity to respond; (3) be represented by counsel; and (4) have a chance to testify and call witnesses.  *Waste Mgmt. of Wash., Inc.*, 776 F.3d at 339-40.  None of that occurred here.  Likewise, the order cannot be interpreted as a criminal contempt sanction against BNBM PLC or BNBM Group.  Before holding a party in criminal contempt, that party is entitled to: (1) notice; (2) appointment of a prosecutor; and (3) trial and jury.  Fed. R. Crim. P. 42(a) (outlining criminal contempt procedures); *see also Crowe v. Smith*, 151 F.3d 217, 229 (5th Cir. 1998) (reversing criminal contempt finding because court failed to appoint an independent attorney to prosecute criminal contempt charge against insurance company).  Imposing a penalty for criminal contempt absent those protections, which were not afforded to BNBM PLC or BNBM Group, violates Due Process.  *See Southern Railway Co. v. Lanham*, 403 F.2d 119, 125 (5th Cir. 1968).

In short, nothing on the face of the Contempt Order or in the circumstances of its entry suggest that the Court held BNBM PLC or BNBM Group in contempt, and the Contempt Order cannot reasonably be construed to have done so.

**B.  Taishan's Conduct Cannot Be Imputed To BNBM PLC Or BNBM Group**

1. Taishan's Deemed Rule 36 Admissions Cannot Be Used Against BNBM PLC or BNBM Group

BNBM PLC and BNBM Group cannot be held liable for Taishan's contemptuous conduct.  Courts impute a party's contempt to a parent or affiliate *only* upon findings that a veil piercing or alter ego theory should apply.  *Compare N.L.R.B. v. Deena Artware, Inc.*, 361 U.S.

398, 401-03 (1960) (affirming civil contempt between corporations under a single enterprise theory) *with F.T.C. v. Kuykendall*, 371 F.3d 745, 758 (10th Cir. 2004) (declining to hold affiliates in contempt for violating injunction, where there was no showing made that affiliates controlled corporation or were part of a common enterprise or that corporate structure served only to conceal assets). There was no such finding at the time the Contempt Order was entered, and the order itself is devoid of any factual findings supporting a veil piercing or single enterprise theory.

While Plaintiffs subsequently served Taishan—not BNBM PLC or BNBM Group—with Rule 36 requests for admission in an effort to establish veil piercing or a single enterprise theory, no such discovery demands were ever served on BNBM PLC and BNBM Group. Taishan's failure to respond to these requests cannot be used against BNBM PLC or BNBM Group. Clear Fifth Circuit precedent declares that deemed admissions of one party cannot be used against a co-party. *Becerra v. Asher*, 921 F. Supp. 1538, 1544 (S.D. Tex. 1996), *aff'd* 105 F.3d 1042, 1048 (5th Cir. 1997); *see also Riberglass, Inc. v. Techni-Glass Indus., Inc*., 811 F.2d 565, 566-67 (11th Cir. 1987) (deemed admissions of co-defendants could not bind defendant who did respond to requests); *In re Leonetti*, 28 B.R. 1003, 1009 (E.D. Pa. 1983), *aff'd sub nom. Earl Realty, Inc. v. Leonetti*, 725 F.2d 667 (3d Cir. 1983) (admission of one defendant not admissible against co-defendant). In *Becerra*, the plaintiff attempted to use a defendant's unanswered request for admissions as evidence to defeat a co-defendant's motion for summary judgment. 105 F.3d at 1048. The district court ruled that the deemed admissions were not competent evidence, because they "are binding only on the non-responding party, not on co-parties." *Id*. On appeal, the Fifth Circuit affirmed and held that "[d]eemed admissions by a party opponent cannot be used against a co-party." That holding applies foursquare here. Taishan's admissions cannot be used against

BNBM PLC or BNBM Group and cannot form the evidentiary basis to support the exercise of personal jurisdiction over them.

>    2.    Neither BNBM PLC Nor BNBM Group Are Alter Egos or Mere Agents of Taishan's

At the March 17, 2015 hearing, the Court acknowledged the need for the PSC to conduct additional discovery to try to establish a legitimate evidentiary foundation for its claim that BNBM PLC, BNBM Group, and Taishan are alter egos of one another. (Ex. A, Hr'g Tr. at 36). The PSC is conducting discovery, but the evidence to date shows that there is no basis for its alter ego claims:

- BNBM PLC owns 65% of Taishan; the other 35% is owned by independent, non-public stakeholders. BNBM PLC acquired its position in Taishan in two separate transactions by paying fair value in arms-length transactions, as determined by third-party appraisers. Taishan bargained for BNBM PLC to have less than a two-thirds ownership interest, so that PLC "would not have the right to make decisions on important matters."

- BNBM PLC and Taishan are not integrated in any way.[3]  The firms have separate management, and do not share officers or employees.  Chen Decl. ¶¶ 11, 14, 21.

- BNBM PLC has never financed Taishan's operations by providing non-repayable funds, has never paid Taishan's debts, bankrolled Taishan's expenses, made Taishan's payroll, or fulfilled Taishan's contractual obligations.  Yang Decl. ¶¶ 10, 18; Chen Decl. ¶¶ 12, 13, 15.  Taishan's finances, financial controls, and accounting functions operate independently of BNBM PLC.  Yang Decl. ¶¶ 12-17.  Each company is responsible for its own debts, liabilities and losses, maintains its own bank accounts, operates its own accounting functions, and has separate financial statements audited by an independent accounting firm.  Yang Decl. ¶¶ 11-17; Chen Decl. ¶ 22.  No director, officer, or employee of either can access the bank accounts or assets of the other.  Yang Decl. ¶¶ 11, 14-15.  BNBM PLC has never transferred or withdrawn funds from Taishan's bank accounts.  Yang Decl. ¶ 14.

---

[3] Declaration of Yanjun Yang, dated April 16, 2015, at paragraphs 10-18 (the "Yang Decl.,") (Rec. Doc. 18851-11); Declaration of Yu Chen, dated April 16, 2015, at paragraphs 9, 23, 25 (the "Chen Decl.") (Rec. Doc. 18851-12).

- Taishan is not undercapitalized, and has been adequately capitalized at least since BNBM PLC acquired its shares of Taishan.  Yang Decl. ¶¶ 9, 10, 18; Chen Decl. ¶¶ 12-15; BNBM PLC Annual Report 2014 at 22 (relevant excerpts filed as Rec. Doc. 18849-11); BNBM PLC Annual Report 2013 at 20 (relevant excerpts filed as Rec. Doc. 18849-12).

- BNBM PLC and Taishan have independent manufacturing facilities, brands, sales teams, and procurement teams.  Chen Decl. ¶¶ 16, 17, 20, 21.

- BNBM Group has no ownership interest in Taishan (and never has), and has never controlled Taishan.[4]

- BNBM Group never provided funding to BNBM PLC or Taishan, never paid their expenses or covered their losses, never loaned them money, and has never paid the salaries of their employees.  Zhao Decl.  ¶¶ 12-15. There are no common finances, bank accounts, financial controls, audited financial statements or accounting functions.  *Id*. ¶¶ 16-23, 27, 30. Nobody controls or can access the other's accounts and assets.  *Id*. BNBM Group, BNBM PLC, and Taishan do not share office space, office supplies, or secretarial staff.  Zhao Decl. ¶¶ 24-25.

BNBM PLC's interest in and relations with Taishan are insufficient to find that Taishan is an agent or alter ego of BNBM PLC.  *See Administrators of Tulane Educational Fund v. Ipsen, S.A.*, 450 F. App'x 326, 330-31 (5th Cir. 2011).  The record is even starker with respect to BNBM Group, which has never had any ownership stake in Taishan, direct or indirect.[5]

---

[4] Declaration of Yanming Zhao, dated March 16, 2015, at paragraphs 8 and 33 (the "Zhao Decl.") (Rec. Doc. 18851-26).

[5] Aside from being factually incorrect, BNBM PLC and BNBM Group also respectfully submit that the Court's alter ego findings were based on a misapplication of the law.  At the PSC's urging, the Court utilized the "single business enterprise" test articulated in *Green v. Champion Ins. Co.*, 577 So.2d 249 (La. Ct. App. 1991), which focuses disproportionately on the question of an investor's "control" of the corporation.  This test does not accurately reflect the Louisiana Supreme Court's interpretation and application of the law.  In the two decades since *Green* was decided, the Louisiana Supreme Court has never adopted the "single business enterprise" test. Instead, and as the Court has recognized, Louisiana's highest court continues to adhere to its traditional veil piercing analysis, focusing on control *and* an abuse of corporate structure.  *See Morales v. Bayou Concessions Salvage, Inc.*, No. 03-657, 2004 WL 2381525, at *3-4 (E.D. La. Oct. 22, 2004) ("There is simply no persuasive evidence . . . that the Louisiana Supreme Court would abandon" the traditional veil piercing test "and adopt the more expansive single business enterprise theory articulated in *Green*.").  As the Louisiana Court of Appeals has held, "control alone is not sufficient to warrant a piercing of the corporate veil."  *Town of Haynesville, Inc. v.*

The PSC erroneously contends that e-mails produced by Taishan's former counsel, Hogan Lovells, demonstrate that "BNBM" and other defendants orchestrated Taishan's decision not to appear at the July 17, 2014 Judgment Debtor Examination. (*See, e.g.*, Rec. Doc. 18694 at 7). The Hogan e-mails reflect no such thing. The July 7, 2014 and July 11, 2014 e-mails on which the PSC relies do not mention BNBM PLC or BNBM Group, much less indicate that they somehow orchestrated Taishan's failure to appear. The PSC's contention appears to be based on the assumption that a reference made in a July 11, 2014 e-mail by Taishan's Chief of Foreign Trade, Wenlong Peng, to his "supervisors," must refer to either BNBM PLC or BNBM Group or, perhaps, one of the CNBM defendants. Yet even if that were true,[6] the "instructions" Mr. Peng anticipated from his "supervisors" related to Hogan Lovell's withdrawal from the case, *not* Taishan's appearance at the judgment debtor examination. Thus Mr. Peng's email does not establish that BNBM PLC or BNBM Group orchestrated Taishan's non-appearance. Similarly, Dong Chungang's August 5, 2014 e-mail, also emphasized by the plaintiffs, was sent weeks after the Court issued its Contempt Order and also discusses Taishan's relationship with its counsel, not Taishan's appearance at the debtor examination. There is no evidence, from the Hogan Lovell emails or otherwise, that BNBM PLC or BNBM Group directed Taishan's decision not to appear for the Judgment Debtor Examination.

### C. This Court Does Not Have Jurisdiction Over BNBM PLC Or BNBM Group

As BNBM PLC and BNBM Group address in full in their respective Rule 12(b)(2) motions to dismiss (Rec Docs. 18841, 18849), BNBM PLC and BNBM Group are not subject to

---

*Entergy Corp.*, 956 So.2d 192, 197 (La. Ct. App. 2007) (reversing trial court's application of the "single business enterprise" test).

[6] There is no evidence that "supervisors" refers to parent companies, as opposed to supervisors within Taishan. Other documents provide no reason to draw that inference. Accordingly, "supervisors" should be understood to convey its usual meaning in the absence of testimony that Mr. Peng intended a different meaning here.

the jurisdiction of this Court, since neither company have the requisite contacts with the relevant

forum states (Louisiana, Florida or Virginia (collectively, the "Forum States")) sufficient either

to justify the exercise of long-arm jurisdiction or to satisfy due process.  *Seiferth v. Helicopteros*

*Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006).  Nor can Taishan's jurisdictional contacts be

imputed to either BNBM PLC or BNBM Group.[7]  The Court therefore cannot impose contempt

sanctions on either company.

       While the PSC relies on *Waffenschmidt v. MacKay*, 763 F.2d 711, 717 (5th Cir. 1985),

for the proposition that this Court is permitted to "reach out to nonparties who knowingly violate

its orders," the Court's power to do so is limited in two critical respects.  First, as the Ninth and

Second Circuit Courts of Appeals have stated in distinguishing *Waffenschmidt*, a court's power

to enforce a contempt order does not extend beyond the United States.  In *Gucci America vs.*

*Weixing Li*, 768 F.3d 122 (2d Cir. 2014), the Second Circuit held that an injunction could not

issue against a foreign nonparty without a finding that it was subject to specific jurisdiction in the

United States.  The Court noted that while "other circuits have permitted the exercise of specific

jurisdiction over *domestic* nonparties who, with knowledge of an injunction, intentionally aided

its violation. . . . We have found no case. . . applying such an analysis in the context of a *foreign*

nonparty with only limited contacts in the forum." *Id.* at 137-38.  (emphasis in original) (citations

omitted).  *See also Reebok Int'l v. McLaughlin*, 49 F.3d 1387, 1392 (9th Cir. 1995)

(distinguishing *Waffenschmidt* on the basis that its "analysis begins to crumble when a district

---

[7]  *See* the analysis, arguments, and cited exhibits discussed in the Memorandum of BNBM PLC
in Support of its Motion to Dismiss the Complaints Pursuant to Rules 12(b)(2) and 12(b)(5), Rec.
Doc. 18849-1, at 29-30; the Memorandum of BNBM Group in Support of its Motion to Dismiss
the Complaints Pursuant to Rules 12(b)(2) and 12(b)(5), Rec. Doc. Rec. Doc. 18841-1, at 17-18;
and the Memorandum of BNBM PLC and BNBM Group in Support of their Motion to Vacate
Defaults, Rec. Doc. 18851-1, at 9-12.  These analyses, arguments, and exhibits are incorporated
by reference as if fully set forth herein.

court seeks to reach out across the Atlantic in an attempt to impose conflicting duties on another country's nationals within its own borders"). Because, for the reasons set forth in the *sub judice* motions to dismiss, neither BNBM PLC nor BNBM Group are subject to this Court's jurisdiction, this Court cannot extend the Contempt Order to cover their conduct.

Moreover, there is no evidence, as there was in *Waffenschmidt*, that either BNBM PLC or BNBM Group were "active[ly] in concert" with Taishan to violate this Court's Contempt Order, as the PSC contends. Of course, there is no evidence that Taishan even conducted business in the United States in violation of the Contempt Order. Moreover, the evidence affirmatively shows that BNBM PLC has done no business in the United States during the period covered by the Contempt Order.[8] While BNBM Group imported timber from the United States to China in late 2014, but there was no concerted activity with Taishan—BNBM Group has no interest or ownership stake in Taishan whatsoever. In the event that this Court determines the Contempt Order can apply to BNBM PLC and BNBM Group, BNBM PLC and BNBM Group expressly reserve their rights to, at the appropriate time, argue and present evidence demonstrating that they have not violated the Contempt Order.[9] For purposes of this motion, however, where the issue to be decided is whether there is a basis to hold those companies in contempt, the lack of evidence of any concerted activity with Taishan to violate the Contempt Order is dispositive.

## II.    THE PSC'S EXPANSIVE DEFINITION OF "AFFILIATE" IS IMPROPER

While the PSC devotes much of its motion to advocating for as expansive a definition of the term "affiliate" as possible, its argument misses the point. Regardless of whether the

---

[8] Declaration of Kai Cai, dated April 17, 2015, at paragraphs 5 and 12 (Rec. Doc. 18849-4).

[9] Simply importing material from the United States to another country does not constitute "doing business," and therefore does not violate the Contempt Order. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 611 (5th Cir. 2008).

injunction prong of the Contempt Order's definition of "affiliate" could be *__interpreted__* to cover BNBM PLC or BNBM Group, the Contempt Order's injunction could not apply to BNBM PLC or BNBM Group as a matter of law for all of the reasons discussed above.  The PSC's broad reading of the term "affiliate" contravenes the core principle that a contempt sanction must be narrowly tailored to remedy the specific action giving rise to it.  *See Natural Gas Pipeline Co. v. Energy Gathering, Inc.*, 86 F.3d 464, 467-49 (5th Cir. 1996) (reversing district court's compensatory sanction because it exceeded what was likely necessary to coerce compliance); *see also Shillitani*, 384 U.S. at 371 (a court is obliged to use "the least possible power adequate to the end proposed" in selecting contempt sanctions).  There is no logic to the PSC's contention that imposing sanctions against dozens of entities, including those, like BNBM Group, that have no ownership relation to Taishan whatsoever, would be necessary or appropriate to prod Taishan's participation in this litigation, which was the ultimate aim of the Contempt Order.

Furthermore, the PSC's definition of "affiliate" contravenes the Supreme Court's mandate that instrumentalities of foreign governments are presumed to retain their separate juridical status.  *First Investment Corp. of the Marshal Islands v. Fujian Mawei Shipbuilding, Ltd.*, 858 F. Supp.2d 658, 673, 680 (E.D. La. 2012) (citing *First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 426 U.S. 611, 623-24 (1983)).

## CONCLUSION

For all of these reasons, BNBM PLC and BNBM Group respectfully request that the Court deny Plaintiffs' Motion to Enforce the July 17, 2014 Contempt Order, and provide BNBM PLC and BNBM Group all such further relief that it deems just and proper.

14

Dated:  May 8, 2015

Respectfully submitted,

**DENTONS US LLP**

By: */s/ Michael H. Barr*
Michael H. Barr
New York Bar No. 1744242
Justin N. Kattan
New York Bar No. 3983905
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
michael.barr@dentons.com
justin.kattan@dentons.com

- AND -

Richard L. Fenton
Illinois Bar No. 3121699
Leah R. Bruno
Illinois Bar No. 6269469
233 South Wacker Drive
Suite 7800
Chicago, IL  60606-6306
Telephone:  (312) 876-8000
Facsimile:  (312) 876-7934
richard.fenton@dentons.com
leah.bruno@dentons.com

- AND -

C. Michael Moore
Texas Bar No. 14323600
Gene R. Besen
Texas Bar No. 24045491
2000 McKinney Ave, Suite 1900
Dallas, TX  75201
Telephone:  (214) 259-0900
Facsimile:  (214) 259-0910
mike.moore@dentons.com
gene.besen@dentons.com

- AND -

**PHELPS DUNBAR LLP**

Harry Rosenberg
Louisiana Bar No. 11465
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130
harry.rosenberg@phelps.com

***Attorneys for Beijing New Building
Material (Group) Co., Ltd. and Beijing
New Building Materials Public Limited
Company***

16

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum of Law of Beijing New Building Materials Public Limited Company and Beijing New Building Material (Group) Co., Ltd. in Opposition to Plaintiffs' Motion To Preclude Taishan or any of Its Affiliates From Participating In Proceedings Involving Plaintiffs' Motion For Assessment of Class Damages Pursuant To Rule 55(B)(2)(B) Unless and Until Taishan Purges Itself of Contempt has been served on Plaintiffs' Liaison Counsel, Leonard Davis, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 8th day of May, 2015.

*/s/      Michael H. Barr*

84120023