**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**BEIJING NEW BUILDING MATERIALS PUBLIC LIMITED CO.**
**AND BEIJING NEW BUILDING MATERIAL (GROUP) CO., LTD.'S RESPONSE TO**
**THE PSC MEMORANDUM REGARDING EFFECTS OF DEFAULT AND ISSUE**
**PRECLUSION IN APRIL 28, 2015 CLASS-WIDE DAMAGES TRIAL**

Subject to and without waiver of their motions to dismiss for lack of jurisdiction and
failure of service, defendants Beijing New Building Materials Public Limited Company
("BNBM PLC") and Beijing New Building Material (Group) Co., Ltd. ("BNBM Group")
respectfully submit this brief to respond to the Memorandum Regarding Effects of Default and
Issue Preclusion in April 28, 2015 Class-Wide Damages Trial ("Mem.") filed by the Plaintiffs'
Steering Committee ("PSC") on April 15, 2015 (Rec. Doc. 18694) and to address their rights to
defend and participate in these actions while the jurisdictional motions are pending.

**PRELIMINARY STATEMENT**

On April 15, without making a motion or otherwise properly seeking relief, the PSC *sua
sponte* filed a brief arguing that BNBM PLC and BNBM Group are precluded from contesting
personal jurisdiction and participating in the June 9, 2015 hearing on causation, remediation of
the plaintiffs' properties and the appropriate methodology for calculating damages.  The PSC
claims that these issues were settled with respect to BNBM PLC and BNBM Group by the
Court's findings of fact and conclusions of law when it certified a class of plaintiffs against

Taishan[1] and by its findings in the *Germano* and *Hernandez* damages hearings.  The PSC contends that the Court's findings in those three instances preclude BNBM PLC and BNBM Group (and others) from challenging that they are alter egos of Taishan.

The PSC's arguments would lead the Court into error.  The PSC contends that non-participation in the class certification hearing is "a confession of liability" by BNBM PLC and BNBM Group, but offers no authority to support this extraordinary assertion. The PSC claims that the class certification findings of fact bind BNBM PLC and BNBM Group.  But the class certification finding that BNBM PLC, BNBM Group, and Taishan are part of a "single business enterprise" was predicated solely on deemed admissions by Taishan under Rule 36.  These deemed admissions cannot be used against BNBM PLC or BNBM Group under controlling Circuit authority.  *See Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997).  The Court recognized at the March 17, 2015 status hearing that the *alter ego* issues are far from resolved:

> The second issue, as I see it, is a relationship between CNBM and BNBM on the one hand and TG and TTP on the other.  I think the relationship is important to determine whether they are affiliates or whether they are alter egos of TG and TTP.
>
> There may be some factual dispute here.  It may be necessary for plaintiffs to take depositions.  If they look at their material and they find that the material is not necessarily admissible or that they need to go further, they ought to be able to take depositions of the BNBM people and the CNBM people.
>
> I'm going to look to BNBM and CNBM to willingly participate in that discovery.  If they don't that to me means that they should not participate in this litigation and I will act accordingly.  ***This relationship, whether it exists or not, will determine the applicability of res judicata and/or collateral estoppel.  It will also determine the scope of the contempt order.***[2]

---

[1] Collectively, Taishan Gypsum Co. and its subsidiary Ti'an Taishan Plasterboard Co., Ltd. are referred to as "Taishan."

[2]  Transcript of the March 17, 2015 hearing at page 36 (emphasis added).  A copy of relevant pages of the transcript are attached as **Exhibit A** and cited as "3/17/15 Tr."

As the Court directed, BNBM PLC and BNBM Group have been working hard in China and America to comply with the PSC's "alter ego" discovery demands.  To date, that discovery has shown that, contrary to the deemed admissions, there is no basis to find that BNBM PLC, BNBM Group, and Taishan are mere alter egos of one another.  Indeed, the evidence shows that BNBM Group has never had a corporate relationship with Taishan at any time and does not even have an ownership stake in BNBM PLC (a public company).  The evidence shows that BNBM PLC, while a partial owner of Taishan, maintains separate management, employees, offices, finances, account books, manufacturing facilities, brands, bank accounts—every aspect of their businesses are separately owned, operated, and managed.  The evidence shows that BNBM PLC has not improperly abused the corporate separateness or used Taishan as a mere instrumentality.  The evidence, as opposed to Taishan's "deemed admissions," shows that there is no basis to impute Taishan's acts to BNBM PLC or BNBM Group.

The PSC contends that principles of res judicata and issue preclusion prevent BNBM PLC and BNBM Group from challenging findings about causation, remediation, and jurisdiction made in *Germano* and *Hernandez*.  But BNBM PLC and BNBM Group were not named defendants in those cases, and they did not involve any drywall manufactured by either BNBM PLC or BNBM Group.[3]  Moreover, the Court expressly stated that the *Germano* and *Hernandez* findings would not have such preclusive effect.  (Rec. Doc. 576).  After all, the issues tried in those cases, involving eight homes in two states, are not "identical" to the issues to be tried in the upcoming hearing, involving more than 3,500 properties in 18 states.  *Cf. Matter of Shuler*, 722 F.2d 1253, 1256 n.2 (5th Cir. 1984).  Without identity of issues and parties, BNBM PLC and BNBM Group are not precluded from contesting the matters at issue at the June 9 hearing.

---

[3] BNBM Group has not manufactured drywall since 1997. Declaration of Xian Feng Yu, dated April 20, 2015, at paragraphs 3 and 4 (the "Yu Decl.") (Rec. Doc. 18851-5).

The PSC also erroneously contends that BNBM PLC and BNBM Group cannot contest jurisdiction because the Court has entered preliminary defaults against BNBM PLC in three cases and BNBM Group in one case, out of the myriad that are consolidated in this MDL proceeding.  The PSC has it backwards.  Controlling Circuit authority mandates that a valid default cannot be entered *unless* the Court has jurisdiction over a defendant, and a defendant is not precluded from contesting personal jurisdiction if it made no appearance prior to the entry of a default.  *Jackson v. FIE Corp.*, 302 F.3d 515, 522-23 (5th Cir. 2002).  As discussed in BNBM PLC's and BNBM Group's joint Motion To Vacate the Entries of Preliminary Default, the defaults are void because this Court does not have personal jurisdiction over either defendant.

Nor can BNBM PLC or BNBM Group be precluded from participating in the damages trial because it is challenging jurisdiction. At the April 24 hearing, the Court advised that it wanted to think about the question, "if you are taking the position that you shouldn't be in this case, whether you should participate in this case or not."[4]  The answer to this question should be an unequivocal yes.  The 1937 adoption of the Federal Rules of Civil Procedure specifically abolished the requirement of special appearances.  Rule 12 permits defendants to raise personal jurisdiction defenses without jeopardizing their rights to substantively defend an action.  We are aware of no authority that would countenance barring BNBM PLC and BNBM Group from contesting the merits of the plaintiffs' cases while the Court assesses their jurisdictional defenses. To the contrary, barring their participation would violate due process.  *Hovey v. Elliott*, 167 U.S. 409, 417-18 (1897); *In re Fraidin*, 34 F. App'x 932, 933 (4th Cir. 2002).  A defendant does not waive the right to defend an action by contesting jurisdiction.  *See, e.g.*, *Toshiba Int'l Corp. v. Fritz*, 993 F. Supp. 571, 573-74 (S.D. Tex. 1998).  There is no reason to depart from this bedrock

---

[4]   Transcript of the April 24, 2015 hearing, at 30:24-31:1.  A copy of the relevant pages of the transcript are attached as **Exhibit B**.

principle here, particularly since BNBM PLC and BNBM Group agree that their motions to dismiss should not delay the hearing on damages currently set for June 9, 2015. Jurisdictional and damages discovery can proceed on parallel tracks, as this Court already has directed; BNBM PLC and BNBM Group can participate fully in the damages hearing, as due process requires, while Court can adjudicate jurisdiction when it determines appropriate, if necessary after the hearing. Fed. R. Civ. P. 42(b). The Court's order permitting alter ego discovery is fully consistent with this approach.

BNBM PLC and BNBM Group have the right to raise personal jurisdiction defenses, to participate in the upcoming damages hearing, and to present evidence and argument showing, *inter alia*, that BNBM PLC's drywall did not cause any injury, the proper nature and scope of remediation, and the appropriate methodology for quantifying damages.[5]

## ARGUMENT

## I. BNBM PLC AND BNBM GROUP ARE ENTITLED TO ASSERT PERSONAL JURISDICTION DEFENSES.

The PSC is wrong as a matter of law when it contends that in failing to respond to the complaints BNBM PLC and BNBM Group have "legally confessed to class allegations that they are a party of a 'single business enterprise'" with Taishan (Mem. at 5), and therefore no longer can introduce evidence relating to any issue this Court has decided as to Taishan. BNBM PLC and BNBM Group have not "legally confessed" to anything. The dispositive law in the Fifth Circuit establishes that neither the Court's alter ego findings, nor Taishan's contacts with the relevant forum states, can be imputed to BNBM PLC or BNBM Group.

---

[5] In addition to the arguments specifically raised in this Response, BNBM PLC and BNBM Group expressly adopt and incorporate by reference herein the arguments set forth in the respective responses to the PSC's Memorandum filed by China National Building Materials Corporation and China National Building Materials Co., Ltd., and by Taishan.

### A.     The Entry of Preliminary Defaults Does Not Preclude BNBM PLC and BNBM Group From Challenging Jurisdiction

As set forth in their respective motions to dismiss pursuant to Rules 12(b)(2) and 12(b)(5) (Rec. Docs. 18841 & 18849), BNBM PLC and BNBM Group are not subject to the jurisdiction of this Court because neither has sufficient contacts with Louisiana, Florida, or Virginia (collectively, the "forum states") to justify the exercise of long-arm jurisdiction or satisfy due process. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006). The PSC claims that defendants have waived the right to challenge jurisdiction "by virtue of the necessary consequences of its deliberate decision to be placed, and remain, in default."[6] But as a matter of law, failure to respond or defend an action does not waive personal jurisdiction defenses. *Jackson v. FIE Corp.*, 302 F.3d 515, 522-23 (5th Cir. 2002). Thus in *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1120-21 (6th Cir. 1994), the Court of Appeals held that the district court erred in finding that a defendant waived its personal jurisdiction defense by failing to appear until after the default judgment was entered. *See also Hugel v. McNell*, 886 F.2d 1, 3 n.3 (1st Cir. 1989) (defendants "made no appearance prior to final judgment and thus never waived the defense of lack of personal jurisdiction"); *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986) ("Defects in personal jurisdiction… are not waived by default when a party fails to appear or to respond."); *Sellers v. Oskya Permian, LLC*, 263 F.R.D. 372, 374 n.1 (S.D. Miss. 2009) (same).

The Fifth Circuit's decision in *Jackson v. FIE Corp.* is directly on point. A plaintiff, injured when a pistol accidentally discharged, sued three Italian firearms manufacturers. 302 F.3d at 518. When the Italian companies did not appear, the plaintiff sought a default judgment.

---

[6]  Mem. at 13. Although the argument in the plaintiff's memorandum is specifically directed at CNBM (*see* pages 12-13), we anticipate that the PSC will seek to apply the same argument to BNBM PLC and BNBM Group.

*Id.* at 519. The district court held several days of hearings, during which it took testimony from the plaintiff and a firearms expert who identified two of the three Italian defendants as the manufacturers of the pistol at issue. *Id.*   Based on that testimony alone, and absent any further evidence linking any defendants to the pistol, the court entered a default judgment in the plaintiff's favor, including a finding that the pistol had been "manufactured and distributed by the Italian defendants." *Id.*   The district court also concluded that it had jurisdiction over the Italian defendants because they had been properly served. *Id.*  The court did not, however, "analyze whether personal jurisdiction otherwise comported with due process." *Id.* at 519-20.

Two years later a defendant moved to vacate under Rule 60(b)(4), contending that the judgment was void *ab initio* because the court lacked personal jurisdiction. *Id.* at 520.  The defaulted defendant proffered evidence that it did not manufacture pistols like the one that injured the plaintiff until well after the injury occurred, and therefore it lacked the minimum contacts with Louisiana to support the exercise of specific jurisdiction without violating due process. *Id.*  The defendant sought to take discovery of plaintiff and his expert. *Id.*  Although the Magistrate permitted limited jurisdictional discovery, he denied the request to depose the plaintiff's expert on the grounds that discovery into the identity of the gun's manufacturer was "an impermissible attempt to reopen the merits of the default judgment." *Id.*  The district court denied the Italian defendant's motion to vacate, holding that the "factual allegations in Plaintiff's Petition, conclusively established due to [the Italian defendant's] default, that [the defendant] manufactured, sold, and distributed" the weapon that caused the plaintiff's injury in Louisiana. *Id.* at 521.

The Fifth Circuit reversed, vacated the default judgment and remanded the case for further proceedings, including "appropriate" jurisdictional discovery. *Id.* at 531.  The Court

expressly rejected the plaintiff's argument—identical to the PSC's here—that res judicata and issue preclusion barred the defendant from contesting whether it was the pistol's manufacturer for purposes of challenging jurisdiction, even though the Italian defendant knowingly allowed the default judgment to be entered against it, and the district court's default judgment on the merits made a specific finding as to that issue. *Id*. at 524-30. The Fifth Circuit also rejected as "against all federal authority" the plaintiff's argument that the defendant waived its right to object to personal jurisdiction because of its failure to appear prior to the entry of the default. *Id*. at 523. A "party's right to contest personal jurisdiction is not waived by his failure to appear at all." *Id*. (citing *Hazen Research, Inc. v. Omega Minerals, Inc.*, 497 F.2d 151, 154 (5th Cir. 1974)). Instead, Rule 60(b)(4) embodies the principle that "a defendant is always free to ignore the judicial proceedings, risk a default judgment, and ***then*** challenge that judgment on jurisdictional grounds." *Id*. at 522 (citation omitted) (emphasis added).[7]

*Jackson* also restates the well-settled principle that a district court has an "affirmative duty to look into its jurisdiction both over the subject matter and the parties" when rendering a default judgment. *Id*. at 520 n.5 (citing *System Pipe & Supply, Inc. v. M.V. Victor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001)). Here, the Court entered preliminary defaults against BNBM PLC and BNBM Group in *Gross* on August 7, 2012, against BNBM PLC in *Wiltz* on August 7, 2012, and against BNBM PLC in *Amorin* on June 25, 2014. (Rec. Docs. 15687 & 17793). The PSC made no effort to establish BNBM PLC's or BNBM Group's contacts with the forum states in support of their motions for default. The Court's alter ego findings, the only basis on which to impute Taishan's jurisdictional contacts to BNBM PLC and BNBM Group, were not made until

---

[7] The Court also rejected the plaintiff's contention that the defendant could not move to vacate the default so long after it was entered, holding that "the mere passage of time cannot convert an absolutely void judgment into a valid one." *Id*. at 523 (citing *Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*, 841 F.2d 646, 649 n.6 (5th Cir. 1988)).

September 2014, well after the defaults at issue had been entered. (Rec. Doc. 18028). The lack of any pre-default inquiry into BNBM PLC's or BNBM Group's jurisdictional contacts underscores why it is entirely appropriate for them to challenge jurisdiction now. From the moment they appeared in these cases, both companies have asserted their jurisdictional defenses, and they promptly moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(2). At no time have they waived those defenses.

**B.**      **Taishan's Jurisdictional Contacts Cannot Be Attributed to BNBM PLC or BNBM Group.**

In contending that the Court's or the Fifth Circuit's previous jurisdictional findings as to Taishan settle the issue of jurisdiction, the PSC ignores the lack of an evidentiary basis to impute Taishan's forum state contacts to BNBM PLC or BNBM Group. Even assuming, *arguendo*, that Taishan, BNBM PLC, and BNBM Group are "affiliates," an affiliate's contacts are attributable to a parent only if they operate as alter egos. *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 587-88 (5th Cir. 2010). The Court's finding that Taishan, BNBM PLC, BNBM Group, and others constitute "a single business enterprise" depends, erroneously and entirely, upon Taishan's deemed admissions when they failed to respond to Rule 36 requests to admit. (Rec Doc. 18028, at 12-20). Controlling precedent prevents those deemed admissions from being used against BNBM PLC. *See Becerra v. Asher*, 921 F. Supp. 1538, 1544 (S.D. Tex. 1996), *aff'd* 105 F.3d 1042, 1048 (5th Cir. 1997) (deemed admissions of one party cannot be used against a co-party); *see also Riberglass, Inc. v. Techni-Glass Indus., Inc.*, 811 F.2d 565, 566-67 (11th Cir. 1987) (deemed admissions of co-defendants could not bind defendant who did respond to requests); *In re Leonetti*, 28 B.R. 1003, 1009 (E.D. Pa.), *aff'd sub nom. Earl Realty, Inc. v. Leonetti,* 725 F.2d 667 (3d Cir. 1983) (admission of one defendant not admissible against co-defendant).

9

In *Becerra*, the plaintiff attempted to use a defendant's unanswered request for admissions as evidence to defeat a co-defendant's motion for summary judgment. 921 F. Supp. at 1544. The District Court ruled that the deemed admissions were not competent evidence, because they "are binding only on the non-responding party, not on co-parties." *Id.* On appeal, the Fifth Circuit affirmed and held that "[d]eemed admissions by a party opponent cannot be used against a co-party." 105 F.3d at 1048. That holding applies equally here. The requests for admissions were not made to or served on BNBM PLC or BNBM Group, and thus cannot be used to support either the exercise of personal jurisdiction or the imposition of liability against it.

At the March 17, 2015 hearing, the Court acknowledged the need for the PSC to conduct additional discovery to try to establish a legitimate evidentiary foundation for its claim that BNBM PLC, BNBM Group, and Taishan are alter egos of one another. (Ex. A, 3/17/15 Tr. at 36). The PSC is conducting discovery, but the evidence to date shows that there is no basis for its alter ego claims:

- BNBM PLC owns 65% of Taishan; the other 35% is owned by independent, non-public stakeholders. BNBM PLC acquired its position in Taishan in two separate transactions by paying paid fair value in arms-length transactions, as determined by third-party appraisers. Taishan bargained for BNBM PLC to have less than a two-thirds ownership interest, so that PLC "would not have the right to make decisions on important matters." Deposition of Tongchun Jia at 595:17-597:16 (Rec. Doc. 18851-16).

- BNBM PLC and Taishan are not integrated in any way. Chen Decl. ¶¶ 9-23, 25 (Rec. Doc. 18849-6); Yang Decl. ¶¶ 10-18 (Rec. Doc. 18849-5). The firms have separate management, and do not share officers or employees. Chen Decl. ¶¶ 11, 14, 21.

- BNBM PLC has never financed Taishan's operations by providing non-repayable funds, has never paid Taishan's debts, bankrolled Taishan's expenses, made Taishan's payroll, or fulfilled Taishan's contractual obligations. Yang Decl. ¶¶ 10, 18; Chen Decl. ¶¶ 12, 13, 15. Taishan's finances, financial controls and accounting functions operate independently of BNBM PLC. Yang Decl. ¶¶ 12-17. Each company is

responsible for its own debts, liabilities and losses, maintains its own bank accounts, operates its own accounting functions, and has separate financial statements audited by an independent accounting firm.  Yang Decl. ¶¶ 11-17; Chen Decl. ¶ 22.  No director, officer or employee of either can access the bank accounts or assets of the other. Yang Decl. ¶¶ 11, 14-15.  BNBM PLC has never transferred or withdrawn funds from Taishan's bank accounts.  Yang Decl. ¶ 14.

- Taishan is not undercapitalized, and has been adequately capitalized at least since BNBM PLC acquired its shares of Taishan.  Yang Decl. ¶¶ 9, 10, 18; Chen Decl. ¶¶ 12-15; BNBM PLC Annual Report 2014 at 22 (relevant excerpts filed as Rec. Doc. 18849-11); BNBM PLC Annual Report 2013 at 20 (relevant excerpts filed as Rec. Doc. 18849-12).

- BNBM PLC and Taishan have independent manufacturing facilities, brands, sales teams, and procurement teams.  Chen Decl. ¶¶ 16, 17, 20, 21.

- BNBM Group has no relationship with Taishan, and never had such a relationship.  Nor has BNBM Group ever controlled Taishan.  Zhao Decl. ¶¶ 8, 33 (Rec. Doc. 18841-4).

- BNBM Group never provided funding to BNBM PLC or Taishan, never paid their expenses or covered their losses, never loaned them money, and has never paid the salaries of their employees.  *Id.*  ¶¶ 12-15.  There are no common finances, bank accounts, financial controls, audited financial statements or accounting functions.  *Id.* ¶¶ 16-23, 27, 30.  Nobody controls or can access the other's accounts and assets.  *Id.*  BNBM Group, BNBM PLC, and Taishan do not share office space, office supplies, or secretarial staff.  Zhao Decl. ¶¶ 24-25.

BNBM PLC's interest in and relations with Taishan are insufficient to find that Taishan

is an agent or alter ego of BNBM PLC.  *See Administrators of Tulane Educational Fund v. Ipsen,*

*S.A.*, 450 F. App'x 326, 330-31 (5th Cir. 2011).  The record is even starker with respect to

BNBM Group, which has never had any ownership stake in Taishan, direct or indirect.[8]

---

[8] Aside from being factually incorrect, BNBM PLC and BNBM Group also respectfully submit that the Court's alter ego findings were based on a misapplication of the law.  First of all, any veil piercing or alter ego analysis related to BNBM PLC and BNBM Group must be conducted pursuant to the laws of China, where they are incorporated.  There is no basis to pierce the corporate veil under Chinese law. (Rec. Doc. 18851-1 at 9-12).  Moreover, at the PSC's urging, the Court utilized the "single business enterprise" test articulated in *Green v. Champion Ins. Co.*, 577 So.2d 249 (La. Ct. App. 1991), which focuses disproportionately on the question of an investor's "control" of the corporation.  This test does not accurately reflect the Louisiana

The only other support the PSC offers for its claim that BNBM PLC exerts control over Taishan are e-mails produced by Taishan's former counsel, Hogan Lovells. (Mem. at 7-8). The PSC contends that these emails demonstrate that "BNBM" and other defendants orchestrated Taishan's decision not to appear at the July 17, 2014 Judgment Debtor Examination. (*See, e.g.,* Mem. at 7). The Hogan e-mails reflect no such thing. The July 7, 2014 and July 11, 2014 e-mails on which the PSC relies do not mention BNBM PLC or BNBM Group, much less indicate that they somehow orchestrated Taishan's failure to appear. The PSC's contention appears to be based on the assumption that a reference made in a July 11, 2014 e-mail by Taishan's Chief of Foreign Trade, Wenlong Peng, to his "supervisors," must refer to either BNBM PLC or BNBM Group or, perhaps, one of the CNBM defendants. Yet even if that were true,[9] the "instructions" Mr. Peng anticipated from his "supervisors" related to Hogan Lovell's withdrawal from the case, *not* Taishan's appearance at the judgment debtor examination. Thus Mr. Peng's email does not establish that BNBM PLC or BNBM Group orchestrated Taishan's non-appearance. Similarly, Dong Chungang's August 5, 2014 e-mail, also emphasized by the plaintiffs, was sent weeks after the Court issued its Contempt Order and also discusses Taishan's relationship with its counsel,

---

Supreme Court's interpretation and application of the law. In the two decades since *Green* was decided, the Louisiana Supreme Court has never adopted the "single business enterprise" test. Instead, and as the Court has recognized, Louisiana's highest court continues to adhere to its traditional veil piercing analysis, focusing on control *and* an abuse of corporate structure. *See Morales v. Bayou Concessions Salvage, Inc.*, No. 03-657, 2004 WL 2381525, at *3-4 (E.D. La. Oct. 22, 2004) ("There is simply no persuasive evidence … that the Louisiana Supreme Court would abandon" the traditional veil piercing test "and adopt the more expansive single business enterprise theory articulated in *Green*."). As the Louisiana Court of Appeals has held, "control alone is not sufficient to warrant a piercing of the corporate veil." *Town of Haynesville, Inc. v. Entergy Corp.*, 956 So.2d 192, 197 (La. Ct. App. 2007) (reversing trial court's application of the "single business enterprise" test).

[9] There is no evidence that "supervisors" refers to parent companies, as opposed to supervisors within Taishan. Other documents provide no reason to draw that inference. Accordingly, "supervisors" should be understood to convey its usual meaning in the absence of testimony that Mr. Peng intended a different meaning here.

not Taishan's appearance at the debtor examination.  There is no evidence, from the Hogan

emails or otherwise, that BNBM PLC had any control over Taishan's decision not to appear for

the Judgment Debtor Examination.

> **C.     BNBM PLC and BNBM Group Are Entitled To Participate In The Damages
> Hearing And Challenge Personal Jurisdiction.**

Regardless of the preliminary defaults entered against them in certain cases, BNBM PLC

and BNBM Group have a Constitutional right to participate in the upcoming damages hearing

and to present evidence (and challenge the PSC's evidence) before a final judgment can be

entered against them.  *See Hovey v. Elliott*, 167 U.S. 409, 417-18 (1897); *In re Fraidin*, 34 F.

App'x 932, 933 (4th Cir. 2002).[10]  Rule 12 did away with the special appearance requirement

that forced a defendant to choose between challenging jurisdiction and proceeding on the merits.

*Orange Theatre Corp. v. Rayherstz Amusement Corp.,* 139 F.2d 871, 874 (3d Cir. 1944). Since

1937 the federal jurisprudence uniformly permits a defendant to maintain a jurisdictional defense

while, at the same time, challenging the underlying merits of the claims against it.  *See, e.g.*, *U.S.

v. Ligas*, 549 F.3d 497, 503 (7th Cir. 2008); *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136

F.3d 537, 540 (7th Cir. 1998); *Anderson v. GlobalSantaFe Offshore Servs., Inc.*, 924 F. Supp. 2d

738, 749 (E.D. La. 2013); *Toshiba Int'l Corp. v. Fritz*, 993 F. Supp.571, 573-74 (S.D. Tex.

1998); *Matthews v. Brookstone Stores, Inc.*, 431 F. Supp. 2d 1219, 1223 (S.D. Ala. 2006); *In re

Asbestos Products Liab. Litig. (No. VI)*, 965 F. Supp. 2d 612, 621-22 (E.D. Pa. 2013).  We have

not found a single federal case barring participation in an action because a personal jurisdiction

defense was raised.

By raising their personal jurisdiction defenses, BNBM PLC and BNBM Group are not

seeking to hedge against participating fully in this litigation—as the Court is aware, we have

---

[10]   *See* BNBM PLC and BNBM Group's Opposition to the PSC's Motion To Preclude (Rec.
Doc. 18454 at  8-10).

participated fully in the ongoing discovery, and both defendants are seeking to participate in the damages hearing *in full*. However, given that both defendants have meritorious jurisdictional defenses, Rule 12 entitles them to preserve those defenses while litigating the merits so that they can be adjudicated at the appropriate time.

## II. BNBM PLC AND BNBM GROUP ARE ENTITLED TO CHALLENGE PLAINTIFFS' MOTION TO ASSESS DAMAGES, AND TO PRESENT AFFIRMATIVE EVIDENCE AT THE UPCOMING HEARING.

### A. The Issues Litigated In *Germano* and *Hernandez* Were Not "Identical" To The Issues To Be Tried In The Upcoming Damages Hearing.

The PSC's sweeping invocation of issue preclusion is wholly without basis. The PSC's contention that any issue decided in the 2010 *Germano* and *Hernandez* hearings is now the unassailable "law of the case" flies in the face of this Court's December 4, 2009 Order which states expressly "that *the result of the hearing will only have a preclusive effect on those properties which are the subject of the hearing*, but, hopefully, the Court's findings will provide some guidance for similarly situated and/or affected properties." (Rec. Doc. 576 (emphasis added)).

The Court's statement comports with Fifth Circuit precedent holding that issue preclusion requires that "the issue to be precluded must be *identical* to that involved in the prior action." *Matter of Shuler*, 722 F.2d 1253, 1256 n.2 (5th Cir. 1984) (quoting *White v. World Fin. of Meridian, Inc.*, 653 F.2d 147, 151 (5th Cir. 1981)) (emphasis added)*; Rufenacht v. Iowa Beef Processors, Inc.*, 656 F.2d 198, 204 (5th Cir. 1981) (stating that collateral estoppel applies only if the Court previously "addressed the precise questions at issue herein"). The Court's findings in *Germano* and *Hernandez*, which involved seven Virginia houses and a single Louisiana house, respectively, cannot estop BNBM PLC and BNBM Group from contesting causation or the methodology used to derive damages for nearly 3,800 different houses in 18 states. Precisely to

14

avoid this sort of tail wagging the dog, the Fifth Circuit has rejected offensive issue preclusion in

mass tort settings:

> The injustice of applying collateral estoppel in cases involving
> mass torts is especially obvious. Thus, in [*Parklane Hosiery v.
> Shore*, 439 U.S. 322 (1979)], the [Supreme] Court cited Prof.
> Currie's "familiar example": "A railroad collision injures 50
> passengers all of whom bring separate actions against the railroad.
> After the railroad wins the first 25 suits, a plaintiff wins in suit 26.
> Professor Currie argues that offensive use of collateral estoppel
> should not be applied so as to allow plaintiffs 27 through 50
> automatically to recover." 439 U.S. at 331 n.14, citing *Currie,
> Mutuality of Estoppel: Limits of the Bernhard Doctrine*, 9 Stan. L.
> Rev. 281, 304 (1957).

*Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 346 n.13 (5th Cir. 1982); *In re Bendectin

Prods. Liab. Litig.*, 749 F.2d 300, 305 n.11 (6th Cir. 1984) ("In *Parklane Hosiery*, the Supreme

Court explicitly stated the offensive collateral estoppel could not be used in mass tort litigation."

(citing *Parklane Hosiery*, 439 U.S. at 330 & n.14)).

The problems created by seeking to apply the Court's *Germano* and *Hernandez* findings

concerning damages to the entire class of plaintiffs are real and substantial.  As BNBM PLC's

and BNBM Group's contemporaneously-filed briefs concerning damages highlight, the PSC

improperly seeks to adopt a simplistic damages formula that ignores the actual damages suffered

by individual class members, and fails to account for the myriad of variables affecting the

damages, if any, suffered by each individual class member.  The PSC's request for an assessment

of class damages thus contravenes controlling authority regarding the assessment of class-wide,

aggregate damages. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2561 (2011) (rejecting use

of average damages of a "sample set" of class members to arrive at the entire class recovery

without individualized proceedings); *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 313, 317

(5th Cir. 1998) ("plaintiff's resultant damages must be determined as to individuals, not

groups"); *In re Fibreboard Corp.*, 893 F.2d 706, 712 (5th Cir. 1990) (rejecting plan to

extrapolate damages for entire 3,000-member class from a sample trial on 41 class members' claims where the "level of generality" would not have sufficiently reflected each class member's actual "discrete injury"). The PSC's attempt to use what it considers to be a "bellwether verdict" to arrive at a class-wide damage award mirrors the methodology that the Fifth Circuit expressly rejected in *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1020-21 (5th Cir. 1997).

The PSC may want to disregard the manifold disparities between the seven *Germano* property owners and the thousands of property owners remaining in the class. However, the settled law regarding issue preclusion and res judicata—not to mention controlling Fifth Circuit and Supreme Court precedent concerning the appropriate calculation of class damages—does not permit them to do so.

**B.      The PSC Cannot Satisfy The Remaining Elements Of Either Issue Preclusion Or Res Judicata.**

Neither BNBM PLC nor BNBM Group was a defendant in *Germano* or *Hernandez.* Issue preclusion applies so that once an issue of ultimate fact has been determined by a final judgment, it "cannot again be litigated ***between the same parties*** in any future lawsuit." *In re Wells*, 368 B.R. 506, 510 (Bankr. M.D. La. 2006) (emphasis added). For res judicata to apply, the parties in the prior and current litigations must, at a minimum, be "in privity" with one another. *Johnson v. City of Houston*, 444 F. App'x 26, 30 (5th Cir. 2011). The Fifth Circuit has held that "privity exists in just three, narrowly-defined circumstances: (1) where the non-party is the successor in interest to a party's interest in the property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit." *In re Hinsley*, 149 F.3d 1179, 1998 WL 414302, at *9 (5th Cir. 1998) (quoting *Meza v. General Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990)).

None of these circumstances exist here. Neither BNBM PLC nor BNBM Group are

successors in interest to Taishan.  While the PSC argues that BNBM PLC and BNBM Group "controlled" Taishan's litigation strategy during the course of the *Germano* case, its only purported "evidence" of such control, the Hogan Lovells e-mail, reflects no such thing.  Even if those communications showed that BNBM PLC or BNBM Group had some sort of control over Taishan's litigation strategy at the time, those e-mails were exchanged well over a year *after* the *Germano* and *Hernandez* hearings were held.  Nor can BNBM PLC's or BNBM Group's interests be said to have been represented by Taishan.  Apart from the fact that Taishan did not participate in those hearings even to represent its own interests, BNBM PLC's drywall, deemed non-defective by the Consumer Products Safety Commission, was not at issue in those cases.

The PSC's effort to premise issue preclusion on Knauf's participation in the *Hernandez* hearing is even more attenuated.  The PSC does not—and cannot—claim any link whatsoever between Knauf and BNBM PLC or BNBM Group.  The sole link the PSC identifies between Knauf and Taishan is that they "used contaminated gypsum from the same mine."  (Mem. at 14). They cite no authority—and we are aware of none—which holds that such a tangential connection satisfies the privity requirement for issue preclusion or res judicata.

Similarly, the PSC cannot seriously contend that Knauf "adequately represented" BNBM PLC's or BNBM Group's interests.  First of all, BNBM PLC and BNBM Group had no interest in *Hernandez*, since they were not parties.  There is no evidence of "an express or implied legal relationship between" Knauf and either BNBM PLC or BNBM Group that would have obligated the former to represent the latter two companies' interests in the prior action. *In re Hinsley*, 149 F.3d 1179, 1998 WL 414302, at *10.

Finally, the requirement that issues be "actually litigated" on the merits, which does not apply where findings are made following a defendant's default, is not satisfied here. *In re Wells*,

368 B.R. at 510-11.  *Germano* was a default proceeding in which Taishan never disputed any substantive issue. "Issues determined by default are not actually litigated because no issue was ever raised by the pleadings."  *In re Staggs*, 178 B.R. 767, 776 n.6 (Bankr. N.D. Ind. 1994).  "In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated."  Restatement (Second) of Judgments § 27 cmt. e (1982); *see also, e.g.*, *In re Raynor*, 922 F.2d 1146, 1150 (4th Cir. 1991).  "If the important issues were not actually litigated in the prior proceeding, ***as is the case with a default judgment***, then collateral estoppel does not bar relitigation."  *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir. 1981) (emphasis added).  As the court explained in *In re Wells*:

> Under the common law construction of the term "actually litigated"… default judgments do not give rise to collateral estoppel in later litigation because "the essential foundations of issue preclusion are lacking for want of actual litigation or actual decision of anything—[and because] a defendant may suffer a default for many valid reasons other than the merits of the plaintiff's claim.

368 B.R. at 510-511 (quoting 18A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4442 (2006)).  That is precisely the case here.

Moreover, the non-adversarial *Germano* trial cannot have estoppel effect because the "requirement that the issues sought to be estopped must have been 'actually litigated' in the prior proceeding contemplates something more than a one-sided presentation of facts."  *Franks v. Thomason*, 4 B.R. 814, 822 (N.D. Ga. 1980).  Taishan never answered in *Germano*, and thus never put at issue any substantive issue of fact or law.  "The refusal to give preclusive effect to default judgments . . . at its core [] is based upon the fact that at no time during the litigation was the court ever presented with a disputed issue."  *In re Staggs*, 178 B.R. at 776 n.6.

18

III.    **THERE EXISTS GOOD CAUSE TO VACATE THE PRELIMINARY DEFAULTS**
        **ENTERED AGAINST BNBM PLC AND BNBM GROUP.**

The PSC contends that there no justification for vacating the preliminary defaults entered

against BNBM PLC and BNBM Group, an argument we address at length in BNBM PLC's and

BNBM Group's Motion To Vacate, which is expressly incorporated by reference here. (Rec.

Doc. 18851).  As discussed in those motion papers, the absence of personal jurisdiction both

voids the preliminary defaults entered against BNBM PLC and BNBM Group *ab initio*, and

constitutes "good cause" (*i.e.*, it is a meritorious defense) that justifies vacating the defaults

under Fed. R. Civ. P. 55(c). *See also In re Chinese-Manufactured Drywall Products Liability

Litigation*, 753 F.3d 521, 544-45 (5th Cir. 2014); *Bona  Fide Demolition & Recovery, LLC v.

Crosby Const. Co. of La., Inc.*, No. 07-cv-3115, 2009 WL 4060192, at *3 (E.D. La. Nov. 20,

2009) (stating that a "*potentially* meritorious" jurisdictional defense, made in good faith,

provides good cause to set aside a default (emphasis added)).  BNBM PLC and BNBM Group

have an additional "meritorious defense" to the underlying merits of the plaintiffs' claims that

supports vacatur:  If found subject to jurisdiction, BNBM PLC and BNBM Group will prove that

BNBM PLC's drywall is not defective or injurious.

We respectfully refer the Court to BNBM PLC's and BNBM Group's Motion To Vacate

for a discussion of the evidence supporting this defense.  For present purposes, it suffices to note

that BNBM PLC and BNBM Group have adduced substantial evidence in support of their

position. By contrast, the PSC's Memorandum ignores the question of whether there is a

"meritorious defense" and the other factors that this Court must weigh in assessing whether good

cause exists to vacate the preliminary defaults— instead it makes the unsupported argument that

the Chinese defendants' "arrogance" in failing to appear in these actions forecloses any attempt

to vacate the preliminary defaults.[11]

Beyond that, there is a wholly independent reason to vacate the preliminary defaults: neither defendant was served with process in any action in which this Court entered preliminary defaults against them, therefore the preliminary defaults are void.  This point is discussed in detail in BNBM PLC's and BNBM Group's joint Motion To Vacate.  The plaintiffs' failure to serve BNBM PLC or BNBM Group is relevant here, however, given that the PSC's preclusion argument is premised on the erroneous premise that the defendants have somehow "confessed" to the allegations in the complaints by failing to answer them. (Mem. at 3-4).  BNBM PLC and BNBM Group cannot be charged with admitting to allegations contained in documents with which they were not served.  Moreover, even had they been served, BNBM PLC and BNBM Group are not yet even required to answer or otherwise respond to the complaints.  Pre-Trial Order 1G, which this Court entered on March 28, 2010, suspends the deadline for defendants in this action to respond to any complaints until 30 days after the PSC files a notice of completion of amendments to omnibus complaints. (Rec. Doc. 3348).   The PSC has not yet filed such notice, and therefore BNBM PLC's and BNBM Group's time to answer or respond has not yet arrived.  BNBM PLC and BNBM Group cannot locate any authority where a party has been deemed to admit facts and/or defaulted *before* its answer was due.[12]

## CONCLUSION

For all of the foregoing reasons, and all of the reasons set forth in their motions, briefs and papers in this action, BNBM PLC and BNBM Group respectfully submit that they have the

---

[11]   Mem. at 9.  The PSC simply relies on the Hogan Lovells e-mails, which we address above.
[12]   Pre-answer default motions are typically considered premature.  *See, e.g.*, *Henderson v. Compass Groups*, No. 10-cv-447, 2010 WL 3488137, at *1 (M.D. La. Aug. 30, 2010); *Mattress Giant Corp. v. Motor Advertising & Design Inc.*, No. 3:07-cv-1728, 2008 WL 898772, at *2 (N.D. Tex. Mar. 31, 2008); *Mollohan v. Price*, No. 2:13-cv-32251, 2014 WL 4181476, at *8 (S.D. W.Va. Aug. 20, 2014).

20

right to raise personal jurisdiction defenses; that they have the right to participate fully in defense of this action; that they are not precluded from contesting that they are alter egos of Taishan; and that they are not precluded from presenting evidence on any of the matters to be addressed at the June 9 damages hearing, including causation, the plaintiffs' remediation efforts, and the proper methodology for calculating damages.

Dated:  May 8, 2015

Respectfully submitted,

**DENTONS US LLP**

By: */s/ Michael H. Barr*
Michael H. Barr
New York Bar No. 1744242
Justin N. Kattan
New York Bar No. 3983905
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
michael.barr@dentons.com
justin.kattan@dentons.com

- AND -

Richard L. Fenton
Illinois Bar No. 3121699
Leah R. Bruno
Illinois Bar No. 6269469
233 South Wacker Drive
Suite 7800
Chicago, IL  60606-6306
Telephone:  (312) 876-8000
Facsimile:  (312) 876-7934
richard.fenton@dentons.com
leah.bruno@dentons.com

- AND -

21

C. Michael Moore
Texas Bar No. 14323600
Gene R. Besen
Texas Bar No. 24045491
2000 McKinney Ave, Suite 1900
Dallas, TX  75201
Telephone:  (214) 259-0900
Facsimile:  (214) 259-0910
mike.moore@dentons.com
gene.besen@dentons.com

**- AND -**

**PHELPS DUNBAR LLP**

Harry Rosenberg
Louisiana Bar No. 11465
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130
harry.rosenberg@phelps.com

***Attorneys for Beijing New Building
Material (Group) Co., Ltd. and Beijing
New Building Materials Public Limited
Company***

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Beijing New Building Materials Public Limited Company's and Beijing New Building Material (Group) Co., Ltd.'s Response to the PSC Memorandum Regarding Effects of Default and Issue Preclusion has been served on Plaintiffs' Liaison Counsel, Leonard Davis, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 8th day of May, 2015.

/s/    *Michael H. Barr*