# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
| **THIS DOCUMENT RELATES TO:** | |
| *Germano v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, **Case No. 09-6687 (E.D. Va.);** | |
| *Gross v. Knauf Gips, KG*, **Case No. 09-6690 (E.D. La.);** | |
| *Wiltz v. Beijing New Building Materials Public Limited Co,* **Case No. 10-361 (E.D. La.);** | |
| *Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.,* **Case No. 11-1672 (S.D. Fl.);** | |
| *Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.,* **Case No. 11-1395 (E.D. La.); and** | |
| *Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.,* **Case No. 11-1673 (E.D. Va.).** | |

## TAISHAN'S RESPONSE TO PSC MEMORANDUM REGARDING EFFECTS OF DEFAULT AND ISSUE PRECLUSION IN APRIL 28, 2015 CLASS-WIDE DAMAGES TRIAL

## I.       INTRODUCTION

The PSC attempts to lead the Court into error in their memorandum "regarding the legal effects and consequences of both default and issue preclusion."   (Dkt. No. 18694) ("PSC Advisory Memo") at 1.  The PSC Advisory Memo supports no motion and requests no specific relief.  It functions essentially as an unsolicited editorial, riddled with erroneous statements of fact and law.  This response focuses on showing that for several reasons Taishan is not collaterally estopped from raising certain issues in the damages phase of the case.

*First*, *Hernandez* has no preclusive effect because Taishan was never a party to that proceeding.  *Second*, *Germano* has no preclusive effect because the Court so ordered before the evidentiary hearing, Fifth Circuit law bars using prior tort proceedings in that way, and Plaintiffs cannot establish the required elements of collateral estoppel.  *Third*, the Class Certification FOFCOL has no preclusive effect because it is not a final judgment.  Fourth, the liability defaults are irrelevant in this damages proceeding.  *Finally*, Taishan takes the opportunity to correct several of the PSC's erroneous factual assertions.  The Court should disregard the PSC Advisory Memo.

## II.      BACKGROUND

### A.       The *Germano* Lawsuit

Michelle Germano and four other Virginia homeowners filed a putative class action against Taishan and three U.S. drywall suppliers.  Taishan did not initially appear in the lawsuit.  On November 18, 2009, Plaintiffs moved for a default judgment against Taishan.  Also on November 18, 2009, Plaintiffs filed a Second Amended Complaint ("SAC") to make the putative class nationwide.

Without having certified any class, the Court entered a default judgment against Taishan on November 20, 2009.  (Dkt. No. 487) ("Preliminary Default").  Plaintiffs did not serve Taishan

with the SAC prior to Preliminary Default.  The Court permitted the intervention of 14 individual Virginia plaintiffs ("Intervenors") and scheduled a Rule 55(b) evidentiary hearing on the claimed damages of only the Intervenors.  Taishan did not participate.  Prior to the evidentiary hearing, the Court issued an Order to clarify that "the result of the hearing will only have a preclusive effect on those properties which are the subject of the hearing."  (Dkt. No. 576).

After the hearing, the Court issued the *Germano* FOFCOL, which focused on facts specific to each set of Intervenors and their respective properties.  (Dkt. No. 2380).  Based on a developed evidentiary record for each of those particular properties, the Court made individual damages determinations for each set of Intervenors.  *Id.*  Although immaterial to any case-specific finding, the Court also reached "the conclusion that the average cost per square foot to repair the *Germano* homes is $86."  *Id.* at 57.  That "average cost" was based on "the average of independent quotes from two local reputable Virginia contractors."  *Id.*  The Court did not include any findings regarding class-wide damages, nor were any such issues before the Court.

### B.    The *Hernandez* Lawsuit

Tatum and Charlene Hernandez filed a similar individual action against Chinese-drywall manufacturer Knauf.  That matter culminated in a bench trial ending on March 19, 2010.  As in *Germano*, the Court's *Hernandez* FOFCOL turned on the property-specific damages of the individual plaintiffs.  (Dkt. No. 2713).  But the *Hernandez* FOFCOL differed from the *Germano* FOFCOL in several ways.  The Court held that certain items (like flooring and non-electronic personal property) should be replaced only if damaged.  *Id.* at 32-33.  The Court calculated alternative living expenses using a four-month remediation time (as opposed to six in *Germano*).  *Id.* at 42.  And the Court used an overhead and profit margin of 20% (as opposed to 25%).  *Id.* at 39.

      **C.**     **Class Certification and Plaintiffs' Motion for Class Damages**

On July 23, 2014, Plaintiffs moved for class certification.  (Dkt. No. 17883).  Taishan did not appear, and the Court granted class certification through a FOFCOL issued on September 26, 2014.  (Dkt. No. 18028) "(Class Certification FOFCOL").

On October 29, 2014, Plaintiffs moved the Court to award the class a single lump sum of $1,263,330,881.19 in damages, comprised of remediation costs, alternative living costs and loss of use and enjoyment.[1]  (Dkt. No. 18086) at 3 (Plaintiffs' "Motion for Class Damages" or "Motion").

**III.**    **ARGUMENT**

Taishan is not precluded from litigating the issue of whether "a price-per-square-foot approach to calculating remediation and related damages" should be used in this case.  PSC Advisory Memo at 11, 13-16.  No prior proceeding or ruling has a collateral estoppel effect in this damages proceeding.  Ultimately, the PSC's damages plan so violates explicit governing Fifth Circuit authority that it cannot stand as a matter of law, regardless of collateral estoppel.

     **A.**     *Hernandez* **Has No Collateral Estoppel Effect**

The *Hernandez* proceeding against defendant Knauf cannot collaterally estop Taishan, who was never a party to that case.  It would be "a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n. 7 (1979) (citing *Blonder-Tongue*

---

[1] Plaintiffs' motion relied on no evidence to support their $385,200,000 claim for loss of use and enjoyment.  Plaintiffs simply ask the Court to award $100,000 for each class property because that is what the Court did for six of the seven *Germano* properties.  Fifth Circuit law does not permit that result.  *See Cimino v. Raymark Indus., Inc.*, 151 F.3d 297 (5th Cir. 1998).

*Laboratories, Inc. v. University of Ill. Found.*, 402 U.S. 313, 329 (1971); *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)).[2]

Plaintiffs have not shown that any of the narrow exceptions for collaterally estopping a nonparty applies here.  *See Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 339-340 (5th Cir. 1982) (listing three "virtual representation" circumstances).  First, Taishan did not succeed to any property interest held by Knauf.  Second, Taishan had no control over the *Hernandez* lawsuit.  Third, Knauf did not virtually represent Taishan's interests.

Under plain Fifth Circuit law, virtual representation "demands the existence of an ***express or implied legal relationship*** in which parties to the first suit are accountable to non-parties who file a subsequent suit raising identical issues."  *Pollard v. Cockrell*, 578 F.2d 1002, 1008 (5th Cir. 1978) (emphasis added).  The Fifth Circuit has unequivocally held that separate product manufacturers with similar legal interests do not virtually represent each other.  *See Hardy*, 681 F.2d at 338-40 (holding that nonparty asbestos manufacturers were not estopped by a prior judgment against other asbestos manufacturers simply because they shared an identity of interests or similar legal positions).  Taishan had no express or implied legal relationship with *Hernandez* defendant Knauf, and therefore the *Hernandez* FOFCOL has no preclusive effect on Taishan.

**B.**      ***Germano* Has No Collateral Estoppel Effect**

   *1.      The Court Previously Determined that Germano Would Not Have Preclusive Effect*

The Court directed in its December 4, 2009 Order "that the result of the [*Germano*] hearing will only have a preclusive effect on those properties which are the subject of the hearing

---

[2] The collateral estoppel effect of prior federal adjudications is controlled by federal law.  *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 337 (5th Cir. 1982).

4

but, hopefully, the Court's findings will provide some guidance for similarly situated and/or affected properties." (Dkt. No. 576). Plaintiffs ignore that Order.

The PSC knows *Germano* has no preclusive effect. In the PSC's Motion in Limine No. 5, the PSC argued, "the Court's findings as a result of the hearing shall have no preclusive effect save as to the seven Virginia homes at issue. . . . [T]he Court already has declared that its findings will have no preclusive effect on Knauf or any other parties, besides those of the intervenor plaintiffs." (Dkt. No. 1089-1) at 1, 4. The Court should reject the PSC's attempt to take a contrary position now.

2.     *Bellwether Trials Have No Preclusive Effect in the Fifth Circuit*

The Fifth Circuit "has been particularly critical of using bellwether trials to bind related claimants." Eldon E. Fallon et. al., *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, n. 27 (2008) (citations omitted) ("[W]e believe bellwether trials to be more appropriately employed for nonbinding informational purposes…."). In *Cimino v. Raymark Indus., Inc.*, the Fifth Circuit barred any preclusive effect of prior product liability trials of other plaintiffs' claims against the same defendants. 151 F.3d 297, 318-21 (5th Cir. 1998). The Fifth Circuit decisively rejected binding defendants as to subsequent plaintiffs, finding no "legally valid ground on which the . . . damages suffered by one person may be determined . . . solely on the basis of the average of awards made to other persons in similar cases." *Id.* at 321, n.51. The court relied on its prior holding "to prevent *any* preclusive use" of prior unitary trials. *Id.* at 318 (emphasis in original). Because the Fifth Circuit has already rejected the PSC's preclusion argument, this Court must as well.

5

3.    *PSC Cannot Satisfy the Elements Necessary to Invoke Offensive Collateral Estoppel*

Offensive collateral estoppel cannot apply here because Plaintiffs failed to establish any of the required elements, either now or in their motion for class certification.  The Court should revisit its ruling that the *Germano* FOFCOL has preclusive effect because the collateral estoppel elements were not and are not satisfied.[3]

Under Fifth Circuit law, "[f]our conditions must be met before collateral estoppel may be applied to bar relitigation of an issue previously decided by a court of competent jurisdiction:

> (1) the issue under consideration is identical to that litigated in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the issue was necessary to support the judgment in the prior case; and (4) there is no special circumstance that would make it unfair to apply the doctrine.

*Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387 (5th Cir. 1998) (citing *Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1422 (5th Cir.1995)).

First, Plaintiffs do not satisfy the requirement that the issue to be precluded must be identical to that involved in the prior action, and the Court did not address that requirement in its Class Cert. FOFCOL.  Collateral estoppel can apply only if the Court had "addressed the precise questions at issue herein."  *Rufenacht v. Iowa Beef Processors, Inc.*, 656 F.2d 198, 204 (5th Cir. 1981).  The precise finding on average square footage in *Germano* related only to "the *Germano* homes."  *Germano* FOFCOL at 57 ("The evidence supports the conclusion that the average cost per square foot to repair the *Germano* homes is $86.").  The question is here whether there can be an average cost of repair applied to more than 3,500 homes in 19 states and what should that

---

[3] A district court has "the inherent procedural power to reconsider, rescind, or modify an interlocutory order" at any time before final judgment.  *Iturralde v. Shaw Group, Inc.*, 512 F. App'x 430, 432 (5th Cir. 2013).  In any event, the entire class certification order is due to be reversed under plain Fifth Circuit law.  *See* Taishan's Motion to Decertify the Class.

be.   The ultimate determination of that non-identical issue of the suitability of Plaintiffs'
proposed dollar/square foot formula for class damages under Rule 23 still remains in this
proceeding.

Second, no issue of fact or law was actually "litigated" for purposes of collateral estoppel
because *Germano* was a default proceeding.   It is black-letter law that "[i]n the case of a
judgment entered by confession, consent, or default, none of the issues is actually litigated."
Restatement (Second) of Judgments § 27 cmt. e (1982).   Where the defaulting party files no
answer, "[i]ssues determined by default are not actually litigated because no issue was ever
raised by the pleadings."   *In re Staggs*, 178 B.R. 767, 776, n.5 (Bkrtcy. N.D. Ind. 1994).[4]
Moreover, the non-adversarial *Germano* trial cannot have estoppel effect because "[t]he
requirement that the issues sought to be estopped must have been 'actually litigated' in the prior
proceeding contemplates something more than a one-sided presentation of facts."   *Franks v.
Thomason*, 4 B.R. 814, 822 (N.D. Ga. 1980).   Taishan never answered in *Germano* and thus
never put at issue any substantive issue of fact or law.   "The refusal to give preclusive effect to
default judgments . . . , at its core, is based upon the fact that at no time during the litigation was
the court ever presented with a disputed issue."   *Staggs*, 178 B.R. at 776, n.5.

Third, and perhaps most obvious, the average-cost-per-square-foot finding was not
"necessary" for the *Germano* judgment.   When "the trial court's determination . . . was not
necessary to support the judgment in the prior case . . . [c]ollateral estoppel poses no obstacle."
*State Farm Mut. Auto. Ins. Co. v. LogistiCare Solutions, LLC*, 751 F.3d 684, 689 (5th Cir. 2014)
(internal quotation marks omitted).   The Court here based its actual remediation damages awards

---

[4] The issue of collateral estoppel effects of default arises frequently in the bankruptcy context
where parties contest the dischargeability of prior judgments.

and its final judgments not on the average cost of remediation, but on Mr. Wright's seven property-specific remediation estimates, which in turn were each based on property-specific estimates from local contractors.  Neither the Court's "conclusion" about an $86/sq. ft. average repair cost nor its recitation of the "average cost to repair" each intervenor's house played any part in the damages awards or the final judgments.   They cannot have collateral estoppel effect.

Fourth, Plaintiffs failed to address the special circumstances that this is a mass tort litigation, which makes collateral estoppel unfair and inappropriate, particularly for individual damages.  The Fifth Circuit has recognized that "[t]he injustice of applying collateral estoppel in cases involving mass torts is especially obvious."  *Hardy*, 681 F.2d at 346 n.13.  As the Sixth Circuit noted, "[i]n *Parklane Hosiery*, the Supreme Court explicitly stated the offensive collateral estoppel could not be used in mass tort litigation."  *In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 305 n.11 (6th Cir. 1984).  Extrapolating the limited damages award in *Germano* (which was never actually litigated) would not only be unfair, it would strip Taishan of its constitutional due process rights.

### C.     The Class Certification FOFCOL Has No Preclusive Effect

Plaintiffs may not invoke collateral estoppel based on any findings set forth in the Court's Class Cert. FOFCOL.  Class certification orders are not final judgments on the merits, and thus cannot have collateral estoppel effect.  *See J.R. Clearwater Inc. v. Ashland Chemical Co.*, 93 F.3d 176, 179 (5th Cir. 1996) (holding that class certification order is not a final judgment, and therefore "lacks sufficient finality to be entitled to preclusive effect while the underlying litigation remains pending"); *accord Baldridge v. SBC Communications, Inc.*, 404 F.3d 930, 931 (5th Cir. 2005) (holding that certification order is not a final decision).

## D.    Liability Defaults Are Irrelevant

The PSC Advisory Memo devotes much attention to the fact that Taishan is in default. However, Plaintiffs fail to cite any authority for the proposition that liability defaults have preclusive effect over issues to be decided at a damages hearing conducted under Rule 55(b)(2)(B).  There is none.

The Fifth Circuit draws a sharp distinction between liability default and damages.  "A default judgment is a judgment on the merits that conclusively establishes the defendant's liability.  But it does not establish the amount of damages. . . .  After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages."  *U.S. Use of M-Co Const., Inc. v. Shipco General, Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (citations omitted); *see generally Wooten v. McDonald Trans. Assoc., Inc.*, 775 F.3d 689, 693 (5th Cir. 2015) (limiting effect of default judgment).  Taishan's default has no relevance to issues related to damages unless the issue concerns a well-pleaded factual assertion set forth in one of the Plaintiffs' Complaints.  *See Howard v. Weston*, 354 F. App'x 75, 76 (5th Cir. 2009) (denying damages against defaulted party where neither pleading nor evidence supported underlying theory of recovery).[5]  Taishan is, therefore, entitled to fully litigate all issues unique to damages, such as what method should be used to calculate damages.

## E.    PSC's Erroneous Statements of Fact

The PSC Advisory Memo makes several false factual assertions that Taishan must correct before any evidentiary damages hearing.  First, the PSC is wrong that the *Hernandez* FOFCOL "included the Court's affirmance of the use of R.S. Means as a valid way to quantify remediation

---

[5] Under *Wooten*, Taishan is also still entitled to litigate issues that are insufficiently pleaded in the omnibus complaints, including the presence of Taishan drywall in each claimant's property.

damages." PSC Advisory Memo at 14. The Court actually critiqued approaches like R.S. Means because they "do not take into account actual estimates from local contractors." *Hernandez* FOFCOL at 38. The Court affirmed that local estimates are "the most accurate estimate for work." *Id.* Even if R.S. Means could be an acceptable component of a damages method, *Hernandez* further reveals the fatal problems with the PSC's current method of relying on a National Cost Average rather than on a "room-by-room analysis" of each particular property as the both damages experts did in *Hernandez*. *Id.* at 37.

Second, the PSC is wrong that the *Hernandez* FOFCOL and the *Germano* FOFCOL "specifically contain findings and conclusions as to . . . a price-per-square-foot approach to calculating remediation and related damages." PSC Advisory Memo at 11. In neither *Hernandez* nor *Germano* did the Court award any plaintiff remediation damages based on a price-per-square-foot approach. Instead, the Court in both cases determined remediation costs on an individual assessment of each house based on estimates of each property from local contractors. If the Court had awarded average cost-per-square-foot damages to the *Germano* Intervenors as Plaintiffs now request in the Motion, then all seven would have been miscompensated, judging by the Court's actual determination of the appropriate damages for each claimant.

IV.    **CONCLUSION**

For the foregoing reasons, the Court should disregard the PSC's Advisory Memo and allow Taishan to fully litigate issues related to damages.

10

Dated:  May 8, 2015

Respectfully submitted,

/s Michael P. Kenny
Bernard Taylor, Esq.
  Georgia Bar No. 669625
Michael P. Kenny, Esq.
  Georgia Bar No. 415064
Christina Hull Eikhoff, Esq.
  Georgia Bar No. 242539
David Venderbush, Esq.
  New York Bar No. 2920817
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
mike.kenny@alston.com
bernard.taylor@alston.com
christy.eikhoff@alston.com
david.venderbush@alston.com
*Counsel for Taishan Gypsum Co., Ltd. and Tai'an
Taishan Plasterboard Co., Ltd.*

Alan Dean Weinberger
  LA Bar No. 13331
HANGARTNER, RYDBERG & TERRELL, LLC
One Shell Square
701 Poydras St., Suite 310
New Orleans, Louisiana  70179
Phone:  (504) 434-6815
Fax: (504) 522-5689
aweinberger@hanrylaw.com
*Local Counsel for Taishan Gypsum Co., Ltd. and
Tai'an Taishan Plasterboard Co., Ltd*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing RESPONSE TO PSC'S MEMORANDUM

REGARDING EFFECTS OF DEFAULT AND ISSUE PRECLUSION IN APRIL 28,

2015 CLASS-WIDE DAMAGES TRIAL has been served on Plaintiffs' Liaison Counsel,

Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail

and upon all parties by electronically uploading the same to LexisNexis File & Serve in

accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed

with the Clerk of Court of the United States District Court for the Eastern District of

Louisiana by using the CM/ECF System, which will send a notice of electronic filing in

accordance with the procedures established in MDL 2047 on this 8th day of May, 2015.


/s Michael P. Kenny
Michael P. Kenny, Esq.
Georgia Bar No. 415064
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
mike.kenny@alston.com
*Counsel for Taishan*