UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>**THIS DOCUMENT RELATES TO:**<br>*Germano v. Taishan Gypsum, 09-cv-6687*<br>*Gross v. Knauf Gips KG, 09-cv-6690*<br>*Wiltz v. BNBM, 10-cv-361*<br>*Amorin v. Taishan Gypsum, 11-cv-1672*<br>*Amorin v. Taishan Gypsum, 11-cv-1395*<br>*Amorin v. Taishan Gypsum, 11-cv-1673* | MDL No. 2:09-md-2047<br><br>SECTION L<br><br>JUDGE ELDON E. FALLON<br><br>MAGISTRATE JUDGE<br>JOSEPH C. WILKINSON, JR. |

## PROCEDURAL OBJECTIONS AND LIMITED RESPONSE OF CNBM GROUP AND CNBM COMPANY TO PSC MEMORANDUM REGARDING EFFECTS OF DEFAULT AND ISSUE PRECLUSION

**PROCEDURAL OBJECTIONS & RESERVATION OF RIGHTS**

This limited response to the PSC Memorandum Regarding Effects of Default and Issue Preclusion in April 28, 2015 Class-Wide Damages Trial [Rec. Doc. No. 18694] ("Memorandum" or "Mem.") is submitted reserving all defenses, including but not limited to service of process, venue, personal jurisdiction, subject matter jurisdiction, sovereign immunity, incorrect party identification, and failure to state a claim upon which relief can be granted.  China National Building Materials Group Corporation ("CNBM Group") and China National Building Materials Co., Ltd.'s ("CNBM") (together "CNBM Defendants") have previously notified the Court and all parties, and hereby reaffirm, that they intend to assert jurisdictional defenses, both subject matter and personal, and in no way intend to or do waive or otherwise limit their ability to raise those defenses, whether by this brief or any other act, filing, appearance, or contention, either before or after, in this or any other litigation.  *See* Order Preserving Defenses [Rec. Doc. No. 18583].

I.      __INTRODUCTION__

In its pursuit of a massive damage award, the PSC invites the Court to commit blatant error, and does so by purposefully conflating the various defendants, confusing the timing and extent of their appearances in this MDL and the underlying class actions, and misapplying the doctrine of preclusion.  This limited response therefore is directed at identifying and correcting the most egregious inaccuracies presented in the PSC's Memorandum as they relate to CNBM Defendants.

Now that Taishan is no longer in contempt and CNBM Defendants are quickly responding to Court ordered discovery, under a reservation of rights, CNBM Defendants will soon be filing a series of motions challenging jurisdiction and seeking to set aside defaults entered against them.  The specific grounds for these procedural motions and objections are beyond the scope of this limited response,[1] but the law clearly affords CNBM Defendants the right to have the motions and objections decided before any assessment of damages.

II.     __CNBM DEFENDANTS ARE NOT BOUND BY FINDINGS OF LIABILITY OR CAUSATION RESULTING FROM PREVIOUS PROCEEDINGS.__

A.      **CNBM Defendants Are Not Bound by Taishan's Deemed Admissions Nor Are They Precluded Based Upon Findings in a FOFCOL That Was Premised on Those Admissions.**

The PSC erroneously suggests that "CNBM and CNBM Group, are deemed liable to the same extent as Taishan Gypsum inasmuch as they have legally confessed to class allegations that they are alter-egos of, or part of a 'single business enterprise' with Taishan Gypsum."  Mem. at 5. According to the PSC's logic, CNBM Defendants are somehow deemed to be the alter-ego of, or part of a single business enterprise with, Taishan Gypsum because that was established through

---

[1] For this reason, CNBM Defendants do not address here the handful of Hogan Lovells e-mail communications quoted by the PSC to support its claim that no grounds exist to set aside the defaults.  *See* Mem. at 7-8.

the Class Certification Findings of Fact and Conclusions of Law [Rec. Doc. No. 18028] ("FOFCOL").  The FOFCOL, however, was premised on Taishan Gypsum and TTP's deemed admissions.

It is axiomatic that CNBM Defendants cannot be bound by the Rule 36 "deemed admissions" that were admitted by a different defendant, resulting from that defendant's failure to respond to a request for admissions propounded on it, not CNBM Defendants.[2]  After all, what right would CNBM Defendants have to respond to admissions directed to another party?  Even the FOFCOL clearly recognizes that the requests were directed to Taishan and TTP – not CNBM Defendants.  FOFCOL, p. 14, n. 5 ("the PSC served Taishan and TPP with a Request for Admissions . . . .  Since neither Taishan nor TPP timely responded . . . within 30 days . . . [they] are deemed admitted in accordance with Fed.R.Civ.P. 36(a)(3)").[3]  Admissions made pursuant to Rule 36(a)(3) bind only the non-responding party, here Taishan and TTP.  Case law unambiguously establishes that such admissions are not binding on co-parties in the same action. *See, e.g, Becerra v. Asher*, 921 F. Supp. 1538, 1544, 1996 U.S. LEXIS 4521 (S.D. Tex. 1996), *aff'd*, 105 F.3d 1042 (5th Cir. 1997) ("deemed admissions are binding only on the non-responding party, not on co-parties"); *Riberglass, Inc. v. Techni-Glass Indus., Inc.*, 811 F.2d 565, 566 (11th Cir. 1987) (same); *In re Leonetti*, 28 B.R. 1003, 1009 (E.D. Pa.), *aff'd sub nom. Earl Realty, Inc. v. Leonetti*, 725 F.2d 667, 1983 U.S.Dist. LEXIS 18744 (3d Cir. 1983) (same). Therefore, CNBM Defendants are not bound by any of the Taishan/TTP admissions, nor is there

---

[2] Even if Taishan had expressly and affirmatively made those admissions, they cannot bind another defendant.  The fact that the admissions were made by default cannot mask, and only compounds, the error of applying them against others.

[3] The fact that the requests were propounded to an absent party only after its highly-publicized withdrawal from the litigation speaks for itself, and underscores the indefensibility of trying to apply the resulting deemed admissions against others.

OHSUSA:762088730.2

any basis upon which they can be bound by any other rulings that are predicated on those admissions.

The corollary is that PSC is, likewise, mistaken in its assertion that the findings and conclusions in the certification FOFCOL, which spring from the deemed admissions, are binding against CNBM Defendants. *See* Mem. at 5. Therefore, this Court must reject the PSC's suggestion that these deemed admissions have any legal effect on CNBM Defendants. *See, e.g.,* Mem. at 5, n. 4 (citing FOFCOL ¶¶ 28-29, 32-47 [findings of fact relating to CNBM and CNBM Group and their alleged control over Taishan]).

Indeed, the Court itself appears to have acknowledged as much in its March 17, 2015 Minute Order recognizing that no definitive determination regarding the relationship between Taishan and CNBM Defendants had been made. It states in pertinent part that "the parties shall immediately commence discovery related to the relationship between Taishan and BNBM/CNBM, including whether affiliate and/or alter ego status exists." *See* Minute Entry and Order [Rec. Doc. No. 18493], p. 2; *see also* March 17, 2015 Hr'g Tr. at 36 ("This relationship, whether it exists, will determine the applicability of res judicata and/or collateral estoppel.") If, as the PSC posits, the Court had affirmatively and conclusively determined that CNBM Defendants were indeed alter-egos of Taishan for purposes of establishing liability, there would be no need to "clarify" the "corporate relationship" as the PSC suggests for the purpose of enforcing sanctions. *See* Mem. at 10. The PSC's strained suggestion that the March 17 Minute Order should be interpreted to mean alter-ego was established for some purposes, but not for others, is contrary to the plain and express language of the order.

OHSUSA:762088730.2

In sum, the PSC is simply mistaken in its assertion that Taishan's deemed admissions or corresponding FOFCOL operate to conclusively establish liability against CNBM Defendants and preclude them from arguing and presenting to the Court evidence to the contrary.

**B.    CNBM Defendants Are Not Bound by Findings of Liability or Causation Resulting From Default.**

CNBM Defendants take issue with the overwhelming majority of assertions the PSC makes in its Memorandum, but do agree that, when it comes to assessment of damages, the issue of default "is of fundamental, threshold importance in framing the matters which are, and are not at issue."  Mem. at 2; *see also id*. at 3 (the damages "evidentiary hearing . . . by design and definition is predicated on the liability of the defaulted defendant").  Indeed, because the damages hearing will be predicated on a jurisdictionally-unsound default against CNBM Defendants, it is respectfully submitted that the Court must address the objections to jurisdiction over CNBM Defendants before moving forward.  *See e.g., Ruhrgas AG v. Marathon Oil*, 526 U.S. 574, 583 (1999) (jurisdiction is essential to court's ability to act); *see also* Procedural Objections and Limited Response of CNBM Group and CNBM to Plaintiffs' Motion for Assessment of Class Damages Pursuant to Rule 55(b)(2)(B), at 2-3, n. 1, n. 2 (citing authorities).

**1.    The PSC's Preclusion Arguments Are Based on the Faulty Premise That CNBM Defendants Are Uniformly In Incurable Default.**

The PSC's Memorandum incorrectly relies on the inaccurate and misleading suggestion that each CNBM Defendant allowed itself to be placed in, and to remain in, default in the class actions scheduled for damages determination.  Mem. at 2.  Because the PSC's arguments rely heavily upon those defaults, it is necessary to clarify the status of the defaults and their impact on CNBM Defendants.

Although various CNBM-related companies are named as defendants in four of the six actions for which Plaintiffs presently seek damages, Plaintiffs have not obtained a default against

at least one of them in each action.  Specifically, no default was taken against either CNBM

Group or CNBM in *Amorin v. Taishan Gypsum* (Florida), No. 2:11-cv-1672 (Rec. Doc. Nos.

17815 and 17991) or against CNBM Group in *Amorin v. Taishan Gypsum* (Louisiana), No. 2:11-

cv-1395 (Rec. Doc. Nos. 17814, 17815, 17791 and 17792).[4]  Clearly then, CNBM Defendants

were not each defaulted in all of the underlying class actions at issue here, and the PSC made no

effort to explain the actual default and non-default status of the "Taishan defendants" (an

undefined term in the Memorandum).  The PSC's blanket statements about preclusion and

liability having been established against each of them thus are misguided.[5]

### 2.     The Non-Defaulted CNBM Defendants Are Entitled to Fully Present Their Defenses and Defaulted Defendants May Benefit Therefrom.

It is beyond doubt that the non-defaulted defendants, which, as explained above, includes

at least one CNBM Defendant in each action, are entitled to fully participate in a trial against

them to determine, *inter alia*, the "threshold" issues of liability, causation, the scope of

remediation, and damages.  The PSC cites nothing to support its assertion that principles of

preclusion and/or estoppel serve to circumscribe CNBM Defendants' rights in this regard, nor

can they.  *See infra*, at 10-17.  Furthermore, not only are the non-defaulting defendants

(including CNBM Defendants) entitled to present a full defense; the defaulting defendants

(which again includes some CNBM Defendants) are entitled to benefit from certain successful

---

[4] Similarly, no default was taken against CNBM USA in *Gross v. Knauf Gips KG*, No. 2:09-cv-6690 (Rec. Doc. Nos. 7302 and 15687), or against CNBM USA in *Amorin v. Taishan Gypsum* (Virginia), No. 2:11-cv-1673 (Rec. Doc. No. 17815).

[5] The PSC uses the term "well-pled" three times in its Memorandum.  *See* Mem. at 2, 4, 10.  In the absence of any analysis or discussion regarding the term's significance, it is unclear if the PSC relies on the well-pleaded complaint rule to support its arguments.  That said, the rule, which treats certain, but not all, factual averments as admitted after default, is necessarily inapplicable where a court lacks personal jurisdiction or where it sets aside the default.  Additionally, conclusions of law cannot be admitted through default.  *See, e.g., DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007).

defenses, including, but not limited to, findings and conclusions related to causation and liability. *See Frow v. De La Vega*, 82 U.S. 552, 554 (1872); *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) ("where a defending party establishes that plaintiff has no cause of action[,] . . . this defense generally inures also to the benefit of a defaulting defendant").

Even assuming, *arguendo*, that CNBM Defendants are both subject to personal jurisdiction *and* in a state of incurable default, the law clearly allows them to benefit from successful defenses raised by the non-default defendants.  For this reason, courts disapprove of piecemeal litigation (e.g., the damages hearing contemplated in Plaintiffs' Damages Motion) where there are defaulting and non-defaulting defendants.  *See*, *e.g.*, *id*.  Further, even while CNBM Defendants remain in a default status, they are "entitled to contest damages and to participate in a hearing on damages, should one be held," and retain the right to present evidence that mitigates damages or shows that damage, if any, is not as extensive as Plaintiffs' contend.[6] *Bonilla v. Trebol Motors Corp.*, 150 F.3d 77, 82 (1st Cir. 1998; *see also* 10-55 MOORE'S FEDERAL PRACTICE CIVIL, § 55.32[1][c] (3d ed.) (recognizing plaintiff's obligation to affirmatively demonstrate causation).

Of course, at this stage of the proceedings, neither the Court nor the parties can possibly know what will come of the non-defaulting defendants' defenses.  For this reason alone, it is entirely premature to conduct a damages hearing that assigns any preclusive effect to the defaults. Were the Court to follow the PSC's suggestion in this regard, it would do so in error and deprive CNBM Defendants of their well-established rights.  Rule 55 simply does not operate in this manner.

---

[6] While CNBM Defendants cannot fully and completely participate in merit-based proceedings at this time, given their jurisdictional objections, they are entitled to reserve those defenses until after those objections have been resolved.

OHSUSA:762088730.2

C.     **CNBM Defendants Are Not Bound by Operation of Issue or Claim Preclusion as Suggested by the PSC.**

Without specifically identifying or applying the requisite issue and claim preclusion tests, the PSC argues that CNBM Defendants are precluded from litigating key issues in the upcoming damages proceeding.  Mem. at 12-15.  While the PSC does not specify all the issues it asks the Court to deem preclusively established, at a minimum the PSC encourages the Court to preclude CNBM Defendants from litigating the following issues: (1) jurisdictional defenses; (2) the "causal relationship between defective drywall and property damage"; (3) the "required nature and scope of remediation"; and (4) "a price-per-square-foot approach to calculating remediation and related damages."  *Id*. at 11-13.  However, the requested preclusion would be improper for the following four reasons.

1.     **Irrespective of whether the Court has previously relied on issue preclusion, its application would be improper here.**

The PSC begins its issue and claim preclusion analysis by invoking the Court's previous use of issue preclusion in its FOFCOL as justification for using issue preclusion here to prevent CNBM Defendants from litigating issues of causation, the nature and scope of remediation, and personal jurisdiction.  It argues that the Court already analyzed the *Parklane* criteria and found that the factors militating against the use of issue preclusion were unavailing as to Taishan.  However, the PSC's summary analysis does not withstand scrutiny.

Whether or not the Court properly applied offensive issue preclusion (*i.e.*, collateral estoppel) against Taishan under the principles of *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979) is an issue completely separate and apart from whether *Parklane* supports the application of issue preclusion here against CNBM Defendants.  In fact, contrary to the PSC's position, *Parklane* instructs that the use of offensive issue preclusion would be inappropriate against CNBM Defendants – neither of which were parties to the *Germano* litigation.  *Id*. at 327,

- 8 -

fn. 7 ("It is a violation of due process for a judgment to be binding on a litigant who was not a

party or a privy and therefore has never had an opportunity to be heard.")  Rather, *Parklane*

recognized that in certain specified instances, it would be appropriate to allow a different

<u>plaintiff</u> to utilize offensive issue preclusion to preclude the original defendant in a prior action

from raising certain arguments in the new litigation.  *Id*. at 329-33.  Those circumstances are

simply not present here.  CNBM Defendants were not parties to the prior litigation, and there is

no proper basis to deem CNBM Defendants the alter ego of Taishan; thus *Parklane* is inapposite.

*See, e.g, Hardy v. Johns-Manville Sales Corp*, 681 F.2d 334, 338-41 (5th Cir. 1982) (refusing to

apply offensive issue preclusion to defendants absent from first action).

  Further, applying issue preclusion against CNBM Defendants is inappropriate because

the personal jurisdiction issue was not actually litigated as to them.  While <u>Taishan's</u> contacts

with the forum were litigated, at no point has the issue of personal jurisdiction over <u>CNBM</u>

<u>Defendants</u> been litigated or necessarily decided.  *See U.S. v. Davenport*, 484 F.3d 321, 326 (5th

Cir. 2007) (issue preclusion only precludes issues "actually litigated and necessary to the

outcome in the first action").

  Moreover, the issue of whether and to what extent relevant causation and remediation

issues were already "actually litigated" and "necessarily decided" in the context of a non-random

sampling of plaintiffs is an issue that has not yet been decided.  *See Hardy,* 681 F.2d at 341-48

(refusing to grant issue preclusion against defendants on issue of whether asbestos products

caused cancer); *Lee v. United States*, 124 F.3d 1291, 1295-96 (Fed. Cir. 1997), *modified*, 129

F.3d 1482 (Fed. Cir. 1997) (forbidding issue preclusion based upon default judgment because the

issues have not been actually litigated); *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019-21 (5th

Cir. 1997) (granting mandamus petition where trial plan proposed to extrapolate findings from a

OHSUSA:762088730.2

non-representative sample of bellwether cases).  Therefore, issue preclusion does not operate to bar CNBM Defendants from litigating issues of causation, the nature and scope of remediation, or personal jurisdiction.

      **2.**      **Neither the defaults against CNBM Defendants nor claim preclusion serve to establish personal jurisdiction.**

The PSC indicates that, because CNBM Defendants have raised an objection based on personal jurisdiction, it is important to know "in advance of the class damages trial" whether or not CNBM Defendants are bound by determinations that were previously made regarding personal jurisdiction over Taishan.  Mem. at 12.  CNBM Defendants completely agree that determining whether personal jurisdiction has been established is an extremely "important" first step for the reasons previously explained.

Next, the PSC erroneously asserts that CNBM Defendants cannot contest personal jurisdiction in light of the defaults entered against them and by operation of claim preclusion (in addition to the previously addressed issue preclusion assertions).  *Id*.  The PSC cites no authority to support its bald assertion that personal jurisdiction is preclusively established as a result of certain defaults taken against some CNBM Defendants in some cases, nor can it because the law clearly holds otherwise.  A defendant's right to raise lack of personal jurisdiction as a defense survives default.  *See, e.g., Mooney Aircraft, Inc. v. Donnelly*, 402 F.2d 400, 406-07 (5th Cir. 1968) (reversing district court's denial of motion to quash registration and execution of default judgment because, absent personal jurisdiction, proceedings were "void from the very outset"); *see also Berlanti Const. Co. v. Republic of Cuba*, 190 F.Supp. 126, 128-29 (S.D.N.Y. 1960) (denying plaintiff's motion to assess damages against a defaulted-defendant where defendant successfully moved to vacate proceedings based upon lack of personal jurisdiction for want of proper service).

OHSUSA:762088730.2

The PSC also argues that claim preclusion operates to bind CNBM Defendants to the rulings the Court made, and the Fifth Circuit affirmed, regarding this Court's personal jurisdiction over Taishan in *Germano*.  That argument is equally unavailing because CNBM Defendants were not parties to that litigation, and so claim preclusion is wholly inapplicable. *See Hansberry v. Lee*, 311 U.S. 32, 40 (1979) ("One is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process."); *Gulf Island-IV, Inc. v. Blue Streak-Gulf IS OPS*, 24 F.3d 743, 746-47 (5th Cir. 1994) (unserved defendant in prior action not bound by it); 18-131 MOORE'S FEDERAL PRACTICE CIVIL, § 131.40[1] (3d ed.) (noting rejection of claim "preclusion by association").

Finally, at the risk of stating the obvious, any argument surrounding personal jurisdiction over Taishan is entirely beside the point.  Because CNBM Defendants were not parties to the *Germano* litigation, there was no opportunity or occasion to raise or litigate CNBM Defendants' jurisdictional objections, and so there can be no unity of claims as required to apply claim preclusion of CNBM Defendants' jurisdictional defenses.  *See Davenport*, 484 F.3d at 326 (recognizing that for claim preclusion to apply "the same claim or cause of action [must have been] involved in both actions") (brackets in original).

3.     **The *Hernandez* trial on causation, damages, scope of remediation and price-per-square-foot damages methodology, which took place against Knauf after it stipulated as to liability, has no preclusive effect.**

As a last resort, the PSC invokes both claim and issue preclusion to disingenuously suggest that the Taishan defendants' interests were "fully and fairly represented and protected . . . by the co-defendant [Knauf]" in the *Hernandez* litigation, and that, therefore, the Taishan defendants should be bound by that litigation.  Mem. at 13, 16.  This suggestion strains credulity. The PSC cites no legal authority and has failed to articulate any basis upon which the prior litigation involving an unrelated defendant may be used to preclude CNBM Defendants from

- 11 -

presenting their own defenses in this proceeding.  The law is directly to the contrary.  *See Hardy*, 681 F.2d at 340 (issue preclusion not established "by the mere fact that persons may happen to be interested in the same question or in proving the same set of facts."); *see also*, *Gulf Island-IV, Inc.*, 24 F.3d at 747 (same in claim preclusion context).  Regardless of whether Knauf had its day in court, the Due Process Clause guarantees CNBM Defendants "a full and fair opportunity" to litigate these important issues themselves – not through some unrelated defendant.  *See Hardy*, 681 F.2d at 338 (citing *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 329 (1971)); *see also, Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 318-19 (5th Cir. 1998) (Seventh Amendment violated where no express agreement to use bellwether outcome to adjudicate class action causation and damages); *cf. In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019-21 (5th Cir. 1997) (granting mandamus petition where trial plan proposed to extrapolate findings from a non-representative sample of bellwether cases).

> **4.  The PSC improperly relies on FOFCOL language as a basis to define the scope of the damages hearing.**

Because each of the PSC's foregoing arguments regarding default, alter-ego status, and preclusion lack merit, the PSC's reliance on FOFCOL language is misplaced.  *See* Mem. at 14. Any findings the Court may have made with respect to establishing causation "associated with these types of claims" (*id.*) are not binding on CNBM Defendants.

Similarly, in terms of preclusion, it is of no consequence that the Court found it "noteworthy" that Knauf contested evidence in *Germano* by filing expert reports, taking expert depositions and filing *Daubert* challenges (*id.* at 15.); none of those things has any binding impact on CNBM Defendants.  *See generally*, *Wright, Miller, & Cooper,* 18A FEDERAL PRACTICE & PROCEDURE CIVIL § 4449, p. 348 and n. 28 (2 ed.).

Tellingly, in citing to the *Hernandez* bench trial, the PSC itself acknowledges that, in the absence of preclusion, the damages proceeding would properly include "substantial testimony and evidence" as to the causal relationship between the sulfur and corrosive effects, the nature and scope of remediation, and the appropriateness of a cost-per-square-foot methodology and the cost of making plaintiffs whole.  Mem. at 13.  Therefore, in the PSC's own view, even if the Court were to conclude that CNBM Defendants should be treated as uniformly in a default, they nonetheless retain their right to contest the damages Plaintiffs seek (after a determination regarding jurisdiction).  This also includes the right to challenge Plaintiffs' affirmative evidence regarding causation of damage (*e.g.*, the manufacturer of the offensive drywall).  *See Raleigh Cycle Co. of Am. v. Risha,* 1987 WL 11889 *2-3 (S.D.Tex. May 27, 1987) (regarding determination of non-liquidated damages in default); 10-55 MOORE'S FEDERAL PRACTICE CIVIL, § 55.32 [1][c] (recognizing default does not eliminate the need to determine causation of damages).

## III.   <u>CONCLUSION</u>

By encouraging the Court to deny CNBM Defendants of their right to challenge the Court's jurisdiction, and to preclude them from litigating issues regarding alter ego status, liability, causation and damages, the PSC invites error.   Each of the PSC's arguments is based upon a flawed premise regarding the impact of deemed admissions, defaults, issues, and claims litigated by others.

Admissions by Taishan and TTP, made pursuant to Rule 36(a)(3), have no binding impact on CNBM Defendants, and the FOFCOL findings and conclusions that are premised on those admissions are similarly peripheral to CNBM Defendants' rights in this litigation.  Even if CNBM Defendants were uniformly in default, which they are not, they would  nevertheless be

OHSUSA:762088730.2

entitled to assert jurisdictional objections and, at a minimum, litigate causation, scope of

remediation and the appropriate measure of damages.  Furthermore, neither default nor

claim/issue preclusion can serve as a basis to deny CNBM Defendants' of their jurisdictional

defenses.  And finally, CNBM Defendants cannot be bound based on findings or conclusions in

either *Germano* or *Hernandez*, actions in which they were non-parties and in which the issues the

PSC seeks to conclusively establish were not fully and fairly litigated.

Accordingly, the Court should disregard the PSC's Memorandum and decline its

invitation to err.

Respectfully submitted,

/s/ L. Christopher Vejnoska

L. Christopher Vejnoska (CA Bar No. 96082)
Ian Johnson (CA Bar No. 208713)
Andrew Davidson (CA Bar No. 266506)
Jason Wu (CA Bar No. 279118)
Jason Cabot (CA Bar No. 288877)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
San Francisco, CA  94105
Tel.:  415-773-5700
E-mail:  cvejnoska@orrick.com
          ijohnson@orrick.com
          adavidson@orrick.com
          jmwu@orrick.com
          jcabot@orrick.com

Ewell E. Eagan, Jr. (LA Bar No. 5239)
Donna Phillips Currault (LA Bar No. 19533)
Nina Wessel English (LA Bar No. 29176)
Alex B. Rothenberg (LA Bar No. 34740)
GORDON, ARATA, MCCOLLAM,
DUPLANTIS & EAGAN, LLC
201 St. Charles Avenue, 40th Floor
New Orleans, LA 70170-4000
Tel: (504) 582-1111
E-mail: eeagan@gordonarata.com
          dcurrault@gordonarata.com
          nenglish@gordonarata.com
          arothenberg@gordonarata.com

James L. Stengel (NY Bar No. 1800556)
Xiang Wang (NY Bar No. 4311114)
Kelly Daley (NY Bar No. 4970117)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY, 10019
Tel:  212-506-5000
Email:  jstengel@orrick.com
          xiangwang@orrick.com
          kdaley@orrick.com

Jonathan Riddell (LA Bar No. 27053)
ORRICK, HERRINGTON & SUTCLIFFE, LLP
400 Capitol Mall, Suite 3000
Sacramento, CA 95814
Tel: 916-447-9200
Email: jriddell@orrick.com

Eric A. Shumsky (D.C. Bar No. 477926)
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street NW
Washington, D.C. 20005
Tel: 202-339-8400
Email: eshumsky@orrick.com


Dated: May 8, 2015

*Attorneys for China National Building Materials*
*Group Corporation and China National*
*Building Materials Company Limited*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing PROCEDURAL OBJECTIONS AND
LIMITED RESPONSE OF CNBM GROUP AND CNBM COMPANY TO PSC
MEMORANDUM REGARDING EFFECTS OF DEFAULT AND ISSUE PRECLUSION has
been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel,
Kerry Miller, by U.S. mail and e-mail and upon all parties by electronically uploading the same
to File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was
electronically filed with the Clerk of Court of the United States District Court for the Eastern
District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing
in accordance with the procedures established in MDL 2047 on this 8th day of May, 2015.


/s/ L. Christopher Vejnoska
L. Christopher Vejnoska (CA Bar No. 96082)

- 15 -

OHSUSA:762088730.2