UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION <br><br> **THIS DOCUMENT RELATES TO:** <br> *Germano v. Taishan Gypsum, 09-cv-6687* <br> *Gross v. Knauf Gips KG, 09-cv-6690* <br> *Wiltz v. BNBM, 10-cv-361* <br> *Amorin v. Taishan Gypsum, 11-cv-1672* <br> *Amorin v. Taishan Gypsum, 11-cv-1395* <br> *Amorin v. Taishan Gypsum, 11-cv-1673* | MDL No. 2:09-md-2047 <br><br> SECTION L <br><br> JUDGE ELDON E. FALLON <br><br> MAGISTRATE JUDGE <br> JOSEPH C. WILKINSON, JR. |

## OBJECTIONS AND LIMITED RESPONSE OF CNBM GROUP AND CNBM COMPANY TO PLAINTIFFS' MOTION FOR ASSESSMENT OF CLASS DAMAGES PURSUANT TO RULE 55(b)(2)(B)

**PROCEDURAL OBJECTIONS AND RESERVATION OF RIGHTS**

The procedural objections discussed in this limited response are submitted reserving all

defenses, including but not limited to service of process, venue, personal jurisdiction, subject

matter jurisdiction, sovereign immunity, incorrect party identification, and failure to state a claim

upon which relief can be granted.  China National Building Materials Group Corporation

("CNBM Group") and China National Building Materials Co., Ltd. ("CNBM Company") have

previously notified the Court and all parties, and hereby reaffirm, that they intend to assert

jurisdictional defenses, both subject matter and personal, and in no way intend to or do waive or

otherwise limit their ability to raise those defenses, whether by this brief or any other act, filing,

appearance, or contention, either before or after this Motion, in this or any other litigation.

Furthermore, CNBM Group and CNBM Company object to the Court entertaining any

merits-based proceedings, including Plaintiffs' Motion for Assessment of Class Damages

Pursuant to Rule 55(b)(2)(B) ("Motion"), prior to a proper determination on the issue of personal

jurisdiction over each defendant.[1]  Where a defendant claims that the court lacks personal

jurisdiction, the Court has an obligation to assess jurisdiction – indeed a *sua sponte* duty – even

after entry of default.[2]

## I.    INTRODUCTION

In a legal system that "disfavor[s] default judgments, preferring to resolve disputes

according to their merits," *Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d 389, 393 (5th

Cir. 2001), Plaintiffs have gone to extraordinary measures to exclude parties from this litigation

and resolve critical merits issues in their absence.  They first sought entry of default against non-

appearing parties; then, when the Court held a single defendant, Taishan Gypsum Co., Ltd.

("Taishan") in contempt in a single action, *Germano*,[3] Plaintiffs sought to expand the Court's

contempt order to parties that were not even named defendants in the case and that had not

---

[1] *See Ruhgras AG v. Marathon Oil*, 526 U.S. 574, 583 (1999) ("without [personal jurisdiction] the court is powerless to proceed to an adjudication"); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1979) (personal jurisdiction protects defendants against burdens of litigating where no jurisdiction exists); *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 594 U.S. 422, 430-31 (2007) (generally a court may not rule on merits "without first determining that it has [personal jurisdiction]."); *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (holding district court had "affirmative duty" to determine if it held personal jurisdiction before entering default and finding court properly raised issue *sua sponte*); *Madara v. Hall*, 916 F.2d 1510, 1514 & n.1 (11th Cir. 1990) (personal jurisdiction must be determined before defenses); *Allied Poultry Processors Co v. Polin*, 134 F. Supp. 278, 279-80 (D. Del. 1955) ("when the jurisdiction of the Court is challenged . . . it is [Court's] duty, on application . . . or on its own motion, to determine . . . jurisdiction before proceeding with . . . the case.  [Without] jurisdiction, it can take no further action.").

[2] *See, e.g., Mooney Aircraft, Inc. v. Donnelly*, 402 F.2d 400, 406-07 (5th Cir. 1968) (collecting cases; reversing district court's denial of motion to quash registration and execution of default judgment because, absent personal jurisdiction, proceedings were "void from the very outset."); *see also Berlanti Const. Co. v. Republic of Cuba*, 190 F.Supp. 126, 128-29 (S.D.N.Y. 1960) (denying plaintiff's motion to assess damages against a defaulted-defendant where defendant successfully moved to vacate proceedings based upon lack of personal jurisdiction for want of proper service.)

[3] *Germano v. Taishan Gypsum*, 2:09-cv-6687.

- 2 -

violated any order of the Court [Rec. Doc. No. 18418-2]; finally, they moved to preclude all Taishan "affiliates" from participating in *any proceedings* before this Court [Rec. Doc. No. 18367].

It is against this backdrop of defaults and exclusion that Plaintiffs seek to further circumvent procedural protocols by asking the Court to award them over $1.2 billion in class damages, based solely on damages assessed in a bellwether trial in *Germano* and the reports of Plaintiffs' expert witnesses.[4]  Rec. Doc. No. 18086.  The Court must deny this request, for several reasons.

First, Plaintiffs propose a wholly-inappropriate procedure to assess aggregate damages through statistical extrapolation.  Instead of determining damages based upon each claimant's actual costs incurred to remediate damage caused by *Taishan* drywall, Plaintiffs urge the Court to engage in an unnecessary and hypothetical exercise to extrapolate damages, even though *actual* remediation costs presumably exist for the certified class members "asserting claims for *remediated* damages" [Rec. Doc. No. 18028; emphasis added].  Damages cannot be assessed in the aggregate on the basis of either the *Germano* bellwether trial or the sample claims discussed in the Wright report, and what the PSC describes as the revised expert report of George Inglis. The authorities – including controlling Fifth Circuit authority – hold that findings made on claims in bellwether trials have no binding effect on other claims and that damages cannot be assessed on a class-wide basis using sample data from bellwether trials or from any other source. Moreover, most of the defendants against whom Plaintiffs seek class-wide damages, including CNBM Group and CNBM Company, are not even party to *Germano*, had no ability to contest

---

[4] Although Plaintiffs now have submitted a report from a second expert witness, by their own acknowledgement it comes from the first witness's colleague and is no different than, and indeed relies entirely upon, the first witness's report.

the methodologies or evidence in that supposed bellwether, and have not been determined to be subject to the personal jurisdiction of the Court.  These defendants can hardly be held liable pursuant to findings made in the bellwether trial.

Second, Plaintiffs seek class-wide damages now, even though they will still have to *prove* their damages (as well as causation, etc.) at trial against non-defaulted defendants (including these) in each of the actions for which they seek damages – a process that is certain to yield different figures.  More than a century of precedent, beginning with the Supreme Court's decision in *Frow v. De La Vega*, 82 U.S. 552 (1872), disapproves of this sort of piecemeal litigation.  Indeed, the cases instruct that a Court should avoid the risk of inconsistent damage awards and judgments by refusing to enter damages against a defaulted defendant where other non-defaulted defendants may contest those damages at trial.

Third, as to CNBM Group and CNBM Company, Plaintiffs' motion is unfounded even assuming *arguendo* that the Court could properly assess damages either at this stage or on the basis of statistical extrapolation.  CNBM Group and CNBM Company have a right to a meaningful hearing on the damages issue – a right to challenge the substance of the Wright/Inglis report, to submit a competing report, to adduce evidence of home values, etc. – and yet cannot vindicate that right because they cannot engage in arguments going to the merits until such time as the question of personal jurisdiction over them has been answered.[5]

Whatever justification Plaintiffs had for pressing one-sided resolution of their claims and for seeking damages through this Motion filed in October 2014, has disappeared – Taishan has filed a Notice of Appearance in all of the MDL actions in which it has been named and has purged itself of contempt.  *See* Rec. Doc. No. 18352.  CNBM Group and CNBM Company have

---

[5] It is for this reason that this brief does not undertake to challenge the substance of the Wright and Inglis reports, *e.g.*, remediation costs, square footage calculations, etc.

likewise appeared in each action in which they have been named and are even now making their very best efforts to provide the very expansive discovery sought by Plaintiffs.[6]  Consistent with federal policy favoring "resol[ution of] disputes according to their merits," *Harper*, 260 F.3d at 393, there is no reason to assess class damages on what amounts to a default basis against parties that are now before this Court.

Plaintiffs' motion therefore should be denied.

## II.    FACTUAL BACKGROUND

A preliminary default was entered against Taishan Gypsum Ltd. ("Taishan") on November 20, 2009 in *Germano*, an action to which neither CNBM Group nor CNBM Company is or ever has been a party.  Rec. Doc. No. 17458.  The Court subsequently presided over a bellwether trial on damages in February 2010, a trial in which Taishan did not participate, that related to the claims of fourteen plaintiff-intervenors in *Germano*.  On the heels of that bellwether trial, the Court issued its April 8, 2010 Findings of Fact and Conclusions of Law ("*Germano* FOFCOL ) by which it awarded the plaintiff-intervenors a total of approximately $2.6 million in damages and noted that the "average cost per square foot to repair the *Germano* homes is $86."  Rec. Doc. No. 17458.

On July 22, 2014, almost immediately after Taishan ceased participating, Plaintiffs filed an omnibus motion for certification of a class consisting of all plaintiffs in several MDL actions (including the *Germano* action) who had asserted claims against the so-called "Taishan defendants."  Rec. Doc. No. 17877.  The Court issued Findings of Fact and Conclusions of Law

---

[6] CNBM Group and CNBM Company have filed Notices of Appearance in *Gross v. Knauf Gips KG*, Case No. 2:09-cv-6690; *Amorin v. Taishan Gypsum*, Case No. 2:11-cv-1672, *Amorin v. Taishan Gypsum*, Case No. 2:11-cv-1395; *Amorin v. Taishan Gypsum*, Case No. 2:11-cv-1673; *State of Louisiana v. Knauf*, Case No. 2:10-cv-340; *Abner v. Taishan Gypsum*, Case No. 2:11-cv-3094; *Posey v. BNBM Co.*, Case No. 2:09-cv-6531; *Morris v. BNBM Co.*, Case No. 2:09-cv-6530; and *Amorin v. SASAC*, Case No. 2:14-cv-1727.

OHSUSA:762090064.2

on the motion ("Certification FOFCOL) by which it found certification appropriate.  Rec. Doc. No. 18028, ¶ 79.  The Certification FOFCOL also addresses several issues of relevance here.

First, the Certification FOFCOL traces the history of defaults entered against the "Taishan defendants" and includes a chart summarizing those defaults.  Rec. Doc. No. 18028, ¶¶ 13 and 14.  The chart reads:

|  | Taishan | TTP | BNBM | BNBM Group | CNBM Group | CNBM Company |
|---|---|---|---|---|---|---|
| *Germano* | X |  |  |  |  |  |
| *Wiltz* |  |  | X | X | X | X |
| *Gross* |  |  | X | X | X | X |
| *Amorin* (Virginia) | X | X |  |  |  | X |
| *Amorin* (Louisiana) | X | X |  |  |  |  |
| *Amorin* (Florida) | X | X |  |  |  |  |

The Certification FOFCOL thus makes clear that there are non-defaulted "Taishan defendants" in each of the actions for which Plaintiffs seek damages.[7]  It is thus also clear that the issue of damages, amongst others, will ultimately be litigated at trial (absent settlement and assuming the Court has jurisdiction over the non-defaulted defendants, which CNBM Group and CNBM Company contest).

Second, the Certification FOFCOL states that the so-called "Taishan Affiliates", *i.e.*, all the Taishan defendants apart from Taishan itself, "are liable to the class as affiliates of Taishan

---

[7] Although the CNBM-related companies are named as defendants in four of the six actions in which Plaintiffs seek damages, Plaintiffs have not obtained a default against at least one of the CNBM-related companies in each action.  More specifically, the following defendants were not defaulted:  both CNBM Group and CNBM Company in *Amorin  v. Taishan Gypsum* (Florida), No. 2:11-cv-1672 (Rec. Doc. Nos. 17815 and 17991); CNBM Group in *Amorin v. Taishan Gypsum* (Louisiana), No. 2:11-cv-1395 (Rec. Doc. Nos. 17814, 17815, 17791 and 17792); CNBM USA in *Gross v. Knauf Gips KG*, No. 2:09-cv-6690 (Rec. Doc. Nos. 7302 and 15687); and CNBM USA in *Amorin v. Taishan Gypsum* (Virginia), No. 2:11-cv-1673 (Rec. Doc. No. 17815).

OHSUSA:762090064.2

or under the theory of alter ego/piercing the corporate veil."  Rec. Doc. No. 18028, ¶ 48.

However, the Court reached this conclusion with respect to CNBM Group, CNBM Company,

BNBM Group and BNBM entirely on the basis of "deemed admissions" by Taishan and TTP,

*i.e.*, on admissions that Taishan and TTP were deemed to have made under FRCP 36(a)(3) due to

their failure to respond to requests for admissions propounded by Plaintiffs.  Rec. Doc. No.

18028, ¶ 28 and n. 5.

Finally, the Certification FOFCOL concludes that the Court can rely on its damages

findings in the *Germano* bellwether trial to extrapolate damages on a class-wide basis.  It states

in this regard that "Plaintiffs have demonstrated a methodology to calculate class-wide damages"

and that "[i]ndeed, damages are simply calculated by using a mathematical formula similar to

what the Court utilized in *Germano* and *Hernandez*."  Rec. Doc. No. 18028, ¶¶ 72 and 75.[8]

Plaintiffs then brought this motion on October 29, 2014 in which they ask the Court to

rely on the *Germano* bellwether trial to award class-wide damages on an "aggregate basis."  Rec.

Doc. No. 18086.  According to Plaintiffs, because "[l]iability has already been established for the

proposed class in light of the various default judgments against the Taishan Defendants[,] . . . . it

is now appropriate to assess damages for the class."  Mem. at 3.  Applying a per-square-foot

damages figure of $114.21 for remediation and alternative living expenses, and a per-home

damages figure of $100,000 for loss of use and enjoyment, Plaintiffs request the astounding sum

of $327,963.16 per home – an aggregate of $1.263 billion for the class.  The calculations are

based exclusively on the report of a proffered expert, Mr. Ronald Wright as updated and

supplemented by his colleague, George Inglis.  Notably, despite multiple offers from the

defendants to allow Plaintiffs to file an updated brief in light of the targeted parties' appearances

---

[8] The reference to *Hernandez* is to a bellwether trial conducted by the Court in April 2010 in
*Hernandez v. Knauf Gips KG*, 2:09-cv-6050.  *See* Rec. Doc. No. 2713.

- 7 -

in this litigation, Plaintiffs have declined to do so, preferring to try to proceed on an obsolete and insufficient record.

## III.    RESPONSE

### A.    Damages Must Be Assessed on a Claim-by-Claim Basis

#### 1.    A hypothetical exercise in extrapolating damages is improper where actual remediation costs presumably exist.

Plaintiffs have asked this Court to essentially adopt their unchallenged report in which Mr. Wright and Mr. Inglis – self-professed construction experts – opine that the average remediation cost for *each* class member home is over $200,000.  Mem. at 7; Wright Rep. ¶10; Inglis Rep. ¶10.  This figure on its face raises a number of substantive and merit-based questions that go beyond the scope of this Limited Response.

The sort of hypothetical exercise in extrapolating damages that Plaintiffs propose, and Mr. Wright and Mr. Inglis engage in, is procedurally improper, particularly here where the certified class consists of homeowners asserting claims for "remediated damages" [Rec. Doc. No. 18028 ¶ 79] – *i.e.*, readily ascertainable costs that have already been expended.  Presumably, there exist actual remediation costs and data for each claimant and sufficient information to establish whether or not their homes contained what was deemed to be defective drywall manufactured by Taishan.  These are known facts that can, and indeed must, be addressed on a claim by claim, concrete basis.  *See e.g., Volkswagen of Am., Inc. v. Robertson*, 713 F.2d 1151, 1169 (5th Cir. 1983) (plaintiffs must produce best evidence to support claim).  Here, however, the Taishan defendants' efforts to access existing data and evidence that could go toward establishing actual damages, as well as useful range-finding data related to actual remediation costs (albeit from a different product ) in the *Knauf* settlement, have been repeatedly thwarted.  While the logical implication here may be that the actual remediation amounts are far less than the extrapolated

figures advanced in the Wright and Inglis reports, these Defendants' concerns go to the procedural infirmities of deciding a key issue on a less than full record.

The controlling authorities have rejected on constitutional grounds precisely the sort of procedure – "extrapolation damages" – that Plaintiffs propose, *i.e.*, an assessment of damages that looks to a sampling of claims and then purports to extend the samples to the class as a whole. In *Cimino*, for example, the trial court had adopted a trial plan by which a certain number of sample cases, known as "phase III" cases, would be tried to a jury, with an average of the damages findings from the sample cases then applied to assess damages for the remaining class claims. *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 318-19 (5th Cir. 1998). The Fifth Circuit rejected that approach, stating:

> [T]he jury's phase III findings of the actual damages of each of the individual phase III plaintiffs cannot control the determination of, or afford any basis for denial of [defendant's] Seventh Amendment rights to have a jury determine, the distinct and separable issue of the actual damages of each of the extrapolation plaintiffs.

*Id*. at 320-21; *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2561 (2011) (holding that a "trial by formula," *i.e.*, one by which class-wide liability and damages would be assessed through the use of a sample set of class members, was impermissible under the Rules Enabling Act and that "a class cannot be certified on the premise that [a defendant] will not be entitled to litigate its statutory defenses to individual claims").

The constitutional shortcomings of the proposed approach are further compounded by the fact that at this point, given the posture of the proceedings and the non-defaulted defendants' right to a full trial, the extrapolation methodology is unnecessary and appears to be aimed not at an objective determination of the damages arguably suffered by the class, but at generating the largest number possible. Plaintiffs' desire to proceed with a procedure that employs the

unrepresentative sample of *estimates* from *Germano* to a class of plaintiffs asserting claims for remediated damages is clearly focused on artificially inflating any damage award.[9]  At a bare minimum, it blatantly is structured to ignore the reality of actually expended costs, and to replace it with a fiction that in some cases surely awards damages for replacing sheetrock that outstrip the overall value of the home in question.  Not only does such an approach violate the defendants' due process right to have damages assessed based upon available actual remediation costs, it even ignores a "second best" data source—the *Knauf* settlement, which necessarily includes information regarding whether Knauf was identified as the source of contaminated drywall as opposed to Taishan or BNBM.[10]

> **2.     Findings made in the *Germano* bellwether trial cannot be extended to other claims.**

Plaintiffs insist that this Court may apply the findings it made in the *Germano* bellwether trial to assess damages on a class-wide basis.  The authorities hold distinctly otherwise.  The Fifth Circuit, for example, has stated in clear terms that representative bellwether verdicts in a

---

[9] Even if extrapolation damages were permissible, due process would require that the extrapolation be based on a "randomly selected, statistically significant sample."  *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019-21 (5th Cir. 1997) (granting mandamus petition where trial plan proposed to extrapolate findings from a non-representative sample of bellwether cases).  Since the *Germano* cases were in no way randomly selected, extrapolation based on the findings of those cases would violate due process.

[10] Again, the *Knauf* settlement, which Plaintiffs have repeatedly touted as an example that CNBM Group and CNBM Company should have followed, contains important limitations on recovery that are entirely absent from the blunderbuss relief sought through this motion.  In order to qualify for benefits from the *Knauf* remediation fund, residential and commercial claimants must (1) submit physical proof that the property in question has Knauf-manufactured drywall, and then (2) submit their property for an inspection to (a) verify that the property contains Knauf-manufactured drywall, (b) prove corrosion or other evidence the drywall was reactive, and (c) determine the percentage of Knauf-manufactured drywall that was used in the property.  *See* Rec. Doc. No. 12061-5 ¶ 4.4.1.  Similar protections (*i.e.,* Article III protections), are nowhere to be found in Plaintiffs' demand here for aggregate and class-wide damages.  *See also* Rec. Doc No. 16570 (approving *Banner* Proposed Allocation Plan, requiring proof of manufacturer).

class action cannot – absent express agreement by all parties – be used to adjudicate causation and damages on the claims of other class members and that any effort to do so would abridge a defendant's rights under the Seventh Amendment.   *See Cimino*, 151 F.3d at 318-19 (5th Cir. 1998); *see also* Eldon E. Fallon, et al., *Bellwether Trials in Multidistrict Litigation*, 82 Tulane L. Rev. 2323, 2331 (citing to *Cimino* and other authorities to state, "[I]t was . . . thought that the trial of representative claims could somehow have a binding effect on the consolidated cases of related claimants.  Appellate courts have been skeptical of this practice, and for good reason.").

Abiding by *Cimino* et al. is all the more important here, where the various defendants against whom Plaintiffs seek damages, save for Taishan, are not even parties to *Germano* and thus could not participate in the bellwether trial.  It goes almost without saying that a defendant cannot be held liable in an action to which it is not party and thus, in which it was given neither notice nor a meaningful opportunity to be heard.  *See, e.g., Nelson v. Adams USA, Inc.*, 529 U.S. 460, 465-67 (2000) (third-party defendant's due process rights violated where added as a party immediately before entry of judgment and before receiving "an adequate opportunity to defend against the imposition of liability"); *see also* Fallon, *Bellwether Trials*, at 2330 ("[C]onsolidation of individual cases in a transferee court by the MDL Panel . . . 'does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another'") (quoting *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496-97 (1933)).

The bellwether trial in *Germano* can have no binding effect with regard to claims of other class members and most certainly cannot deny CNBM Group and CNBM Company of their Seventh Amendment rights to have the trier of fact "determine *individual* causation and damages for other plaintiffs."  *Cimino*, 151 F.3d at 318 (emphasis in original); *see also* Fallon, *Bellwether Trials*, at n. 27 (quoting *In re TMI Litig.*, 193 F.3d 613, 725 (3d Cir. 1999) ("[A]bsent a positive

- 11 -

manifestation of agreement by Non-Trial Plaintiffs, we cannot conclude that their Seventh

Amendment right is not compromised . . . ."))[11]  This is fatal to Plaintiffs' motion.

### B.    The Court Cannot Enter Damages Against Defaulting Parties Before Merits Proceedings Against Non-Defaulting Parties.

In *Frow v. De La Vega*, 82 U.S. 552 (1872), the Supreme Court considered whether a

default judgment against one defendant could stand when claims of joint liability were dismissed

on the merits against non-defaulting defendants.  Reasoning that such a result was "incongruous

and illegal," the Court held that a defaulting defendant "has merely lost his standing in court" but

that "if the suit should be decided against the complainant on the merits, the bill will be

dismissed as to all the defendants alike," including those in default.  *Id.* at 554.

Although the *Frow* rule expressly applies to joint liability, the Fifth Circuit (among others)

has extended the principle to include non-defaulting defendants who are "similarly situated,"

including parties that could potentially assert the same defenses.  *Lewis v. Lynn*, 236 F.3d 766,

768 (5th Cir. 2001) (collecting cases).  Thus, "where a defending party establishes that plaintiff

has no cause of action[,] . . . this defense generally inures also to the benefit of a defaulting

defendant."  *Id.* (ellipses in original; internal quotations marks omitted).  As in *Frow,* "it would

be 'incongruous' and 'unfair' to allow some defendants to prevail, while not providing the same

benefit to similarly situated defendants."  *Id.*; *see also Nielson v. Chang*, 253 F.3d 520, 532-33

---

[11] Of course, extending the *Germano* findings as Plaintiffs propose would also present problems under the Seventh Amendment's Reexamination Clause, which provides that "no fact tried by a jury, shall be otherwise re-examined."  U.S. Const., amend. VII; *see also Alabama v. Blue Bird Body Co*., Inc., 573 F.2d 309, 318 (5th Cir. 1978) ("inherent in the Seventh Amendment guarantee of a trial by jury is the general right of a litigant to have only one jury pass on a common issue of fact").  Plaintiffs' proposed procedure could require subsequent juries to revisit factual issues (*e.g.*, in trials involving non-defaulted defendants) determined by the *Germano* jury, in clear contravention of this Clause.  *See Allison v. Citgo Petroleum Corp*., 151 F.3d 402, 420 (5th Cir. 1998) (recognizing "potential Seventh Amendment problems" where proposed proceedings would "increase[] the probability that successive juries would pass on issues decided by prior ones").

(9th Cir. 2001); *Gulf Coast Fans, Inc. v. Midwest Elecs. Imps., Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984); 10A C. Wright & A. Miller, et al., FED PRACTICE & PROCEDURE § 2690 (explaining the justification for application of the *Frow* doctrine is to ensure that relief against the defendants is consistent); *id.* (collecting authorities and explaining claims must be disposed of as to all defendants before a final, appealable judgment can be entered); 10-55 MOORE'S FEDERAL PRACTICE – CIVIL § 55.36 (3d ed.).  It is for this reason that no final judgment can be entered against defaulted defendants where litigation is still pending against non-defaulted defendants. *See* Wright & Miller, *supra* at § 2690.

Plaintiffs' motion seeking entry of an order assessing class damages against defaulted defendants, even though claims in these actions have yet to be adjudicated as against a number of non-defaulted defendants, risks an incorrect and inequitable allocation of damages in violation of *Frow* and its progeny.  *First*, lump sum damages awarded on behalf of all class members, but levied against only certain defendants, are inappropriate where Plaintiffs have not yet proven which of them were harmed by which defendant.[12]  Depending on the individual circumstances, one might reasonably conclude that it is unlikely that any individual defendant owns a home in

---

[12] Indeed, it is possible that certain, maybe even most, class members lack any injury arising out of actual use of defective Taishan or BNBM drywall and therefore have no Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61(1992) (explaining that standards for establishing Article III standing become stricter as the parties proceed to successive stages of litigation); *see also In re Deepwater Horizon II*, 739 F.3d 790, 806-07 (5th Cir. 2014) (discussing in dicta that standards for demonstrating Article III standing at later stages of class action litigation (including trial on damages) become more rigorous, and impliedly endorsing *In re Oil Spill by Oil Rig Deepwater Horizon,* 910 F.Supp.2d 891, 924 (E.D.La. 2012)) for proposition that, even in class action, certain causation issues would have to be decided on an individualized basis); *id.* at 821-27 (Garza, J., dissenting) (same); *In re Deepwater Horizon I*, 732 F.3d 326, 340-42 (5th Cir. 2013) (Clement, J.) (same).  Generally, "a challenge to class certification is not the type of potential defense to the merits which the party loses through its default . . . ."  *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F. 2d 912, 923(3d Cir. 1992). CNBM Group and CNBM Company therefore reserve the right to raise defenses to class certification, including that class members lack standing to proceed against them.

OHSUSA:762090064.2

which drywall from multiple defendants was installed; in any event, this is a fact for which Plaintiffs bear the burden of proof.[13]  And yet Plaintiffs, through this motion, seek to recover their *entire* damages estimate from defaulted defendants, without regard for apportionment and without proving a basis for joint and several liability.  A premature award of damages against defaulted defendants that results in holding the wrong party liable for some or all of the alleged damages is reversible error.  *See, e.g., Fehlhaber v. Indian Trails, Inc.*, 425 F.2d 715, 717 (3d Cir. 1970) (holding that default established default-defendant's liability, but not degree of fault vis-à-vis the other tortfeasor or the extent of damages, which are properly established by evidence at a damages hearing); *In re Ridgemont Apartment Assoc. Ltd.*, No. A88-2855, 1990 Bankr. LEXIS 1100, at *18 (Bankr. N.D. Ga. May 22, 1990) (default judgment overturned where default would have caused "incongruous and absurd result" of defendant bearing liability that might be eliminated or reduced in further proceedings).

*Second*, Plaintiffs have not yet proven their actual damages and remediation costs – something they will have to do in the course of these proceedings against non-defaulted defendants.  It serves no practical or legal purpose to assess class damages against some defendants now on a truncated record when a full record will later be available to the various district courts after trial.  To the contrary, Plaintiffs' motion undermines the judicial process by asking this Court to potentially award inconsistent damages for identical alleged injuries – one number against defaulted defendants now based solely on Plaintiffs' expert report, and another number later based on a full and challenged record of proof.  For this reason, "courts have

---

[13] The *Knauf* settlement procedures require claimants to submit proof that Knauf drywall was used in their properties, and if that percentage is less than 90%, any recovery from the remediation fund is correspondingly discounted.  *See* Rec. Doc. No. 15764-1 at 20, n. 68.  Here, by contrast, Plaintiffs seek to impose lump-sum damages, based upon estimates, without requiring any similar proof of the identity of the drywall manufacturer for the property at issue.

OHSUSA:762090064.2

consistently held that it is appropriate to enter [default] judgment solely as to liability and not as to the amount of damages to be assessed against the defaulting party, since a separate determination of damages would pose the prospect of inconsistent judgments." *Garafola v. Ecker Restoration Corp.*, No. 94 CIV. 7999, 1996 U.S. Dist. LEXIS 7925, at *5 (S.D. N.Y. 1996) (collecting cases); *see also London v. Gums*, Civ. No. H-12-3011, 2013 U.S. Dist. LEXIS 107977, at *4-5 (S.D. Tex. Aug. 1, 2013) (holding it "premature to enter damages against the Defaulting Defendants while the claim against [non-defaulting defendants] are still pending" because it creates "a risk of inconsistent amounts being awarded now and after the claims . . . have been adjudicated") (citing *In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1262 (11th Cir. 1980)).[14]  That is precisely the case here, where the actions in which Plaintiffs seek to assess class damages include claims against non-defaulted defendants that remain pending.  Indeed, perhaps this is why Plaintiffs periodically refer to the pending motion as a "trial," when in fact, it is anything but.

Accordingly, Plaintiffs' Motion should be denied and class damages, if any, should be proved as to all defendants in the course of trial.

### C.   Damages Must Be Established Through An Evidentiary Hearing In Which Defaulted Defendants Are Able To Appear And Meaningfully Participate.

Even if Plaintiffs' "extrapolation" procedure did not suffer from these obvious flaws, Plaintiffs would still not be entitled to the relief they seek.  Although Plaintiffs effectively request an unopposed entry of damages, the entry of a default "does not establish the amount of damages."  *U.S. For Use of M-CO Const., Inc. v. Shipco Gen., Inc.,* 814 F.2d 1011, 1014 (5th Cir.

---

[14] As observed in *Garafola* and Moore's Federal Practice, "[U]nder such circumstances '"the district court when possible should consolidate the Rule 55(b)(2) hearing required for the assessment of the defaulting party's liability with the damage aspect of the trial against the non-defaulting party.'"  *Garafola*, 1996 U.S. Dist. LEXIS 7925, at *6 (quoting 6 MOORE'S FEDERAL PRACTICE, at 55 (2d ed. 1996)).

1987).  As in any other proceeding, a plaintiff seeking default "is required to prove all damages sought in the complaint." *Philip Morris USA, Inc. v. Castworld Prods., Inc.,* 219 F.R.D. 494, 498 (C.D. Cal. 2003).  And that proof must withstand the scrutiny of open Court – the Fifth Circuit goes beyond the requirements of Rule 55(b)(2) and, in most instances, "require[s] the district court to hold an evidentiary hearing on damages, even in the case of default judgments. . . ." *Frame v. S-H, Inc.,* 967 F.2d 194, 204 (5th Cir. 1992).

Not only must plaintiffs competently prove their damages, but defendants – including defendants in default – are "entitled to contest damages and to participate in a hearing on damages, should one be held." *Bonilla v. Trebol Motors Corp.*, 150 F.3d 77, 82 (1st Cir. 1998); 10-55 MOORE'S FEDERAL PRACTICE CIVIL, § 55.32 (3d ed.).  Specifically, "a defaulting party has a right to . . . offer proof in mitigation, show that in fact no damages resulted, and otherwise participate in damage proceedings." *Raleigh Cycle Co. of Am. v. Risha*, No. CIV.A. H-84-522, 1987 WL 11889, at *1 (S.D. Tex. May 27, 1987); *see also U.S. For Use of M-CO Const., Inc.*, 814 F.2d at 1014-15 (5th Cir. 1987) (reversing damage award where defaulted defendant was precluded from introducing evidence to contest plaintiff's damages claims); *Isenberg v. Chase Bank USA N.A.,* 661 F. Supp. 2d 627, 628 (N.D. Tex. 2009) (permitting defaulted party  respond and object to plaintiff's evidence on damages).  Plaintiffs' Motion attempts to bypass these requirements of proof and contested hearing and asks the Court to accept their computations on their face.  Due process and the law of this Circuit forbid this end-run of defendants' rights, and Plaintiffs' Motion should therefore be denied.

**D.      Damages Cannot be Assessed Because the Court Does Not Have Jurisdiction Over CNBM Group or CNBM Company.**

Finally, damages cannot be assessed against CNBM Group and CNBM Company because the Court does not have personal jurisdiction over them.  For all the reasons presented in

CNBM Group and CNBM Company's Procedural Objections and Reservation of Rights (*see supra* at 2-3) and all the supporting authorities cited in the corresponding footnotes, the Court must determine, before holding a damages hearing, whether CNBM Group and CNBM Company's objections based on personal jurisdiction are meritorious.  It is respectfully submitted that the Court cannot move forward on Plaintiffs' Motion requesting assessment of damages before doing so.

## IV.    CONCLUSION

Plaintiffs' Motion fails for a number of reasons, not the least of which is the Plaintiffs' suggestion that the Court can engage in an unnecessary procedure in which damages are statistically extrapolated.  That procedure is legally impermissible where there exist fixed remediation figures that would more accurately establish the class members' "remediated" damages.  The proposal to assess damages through extrapolation also fails where the underlying basis for the damage calculations is the *Germano* bellwether trial.  CNBM Group and CNBM Company were not parties to that litigation and did not consent to be bound by the *Germano* findings.  The authorities also hold that the Court should not engage in piecemeal litigation of the sort contemplated here, where it would likely result in different damage awards against the defaulting and non-defaulting defendants.  Finally, while CNBM Group and CNBM Company cannot fully and completely participate in merit-based proceedings at this time, given their jurisdictional objections, they are entitled to reserve those defenses until after those objections have been resolved.  Therefore, no damages should therefore be assessed against them at this time.

For all these reasons, Plaintiffs' Motion should be DENIED.

OHSUSA:762090064.2

Respectfully submitted,

/s/ L. Christopher Vejnoska

L. Christopher Vejnoska (CA Bar No. 96082)
Ian Johnson (CA Bar No. 208713)
Andrew Davidson (CA Bar No. 266506)
Jason Wu (CA Bar No. 279118)
Jason Cabot (CA Bar No. 288877)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
San Francisco, CA  94105
Tel.:  415-773-5700
E-mail:   cvejnoska@orrick.com
          ijohnson@orrick.com
          adavidson@orrick.com
          jmwu@orrick.com
          jcabot@orrick.com

Ewell E. Eagan, Jr. (LA Bar No. 5239)
Donna Phillips Currault (LA Bar No. 19533)
Nina Wessel English (LA Bar No. 29176)
Alex B. Rothenberg (LA Bar No. 34740)
GORDON, ARATA, MCCOLLAM,
DUPLANTIS & EAGAN, LLC
201 St. Charles Avenue, 40th Floor
New Orleans, LA 70170-4000
Tel: (504) 582-1111
E-mail: eeagan@gordonarata.com
          dcurrault@gordonarata.com
          nenglish@gordonarata.com
          arothenberg@gordonarata.com

James L. Stengel (NY Bar No. 1800556)
Xiang Wang (NY Bar No. 4311114)
Kelly Daley (NY Bar No. 4970117)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY, 10019
Tel:  212-506-5000
Email: jstengel@orrick.com
          xiangwang@orrick.com
          kdaley@orrick.com

Jonathan Riddell (LA Bar No. 27053)
ORRICK, HERRINGTON & SUTCLIFFE, LLP
400 Capitol Mall, Suite 3000
Sacramento, CA 95814
Tel: 916-447-9200
Email: jriddell@orrick.com

Eric A. Shumsky (D.C. Bar No. 477926)
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street NW
Washington, D.C. 20005
Tel: 202-339-8400
Email: eshumsky@orrick.com

*Attorneys for China National Building Materials
Group Corporation and China National
Building Materials Company Limited*

Dated: May 8, 2015

- 18 -

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **OBJECTIONS AND LIMITED RESPONSE OF CNBM GROUP AND CNBM COMPANY TO PLAINTIFFS' MOTION FOR ASSESSMENT OF CLASS DAMAGES PURSUANT TO RULE 55(b)(2)(B)** has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all parties by electronically uploading the same to File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 8th day of May, 2015.

/s/ L. Christopher Vejnoska

L. Christopher Vejnoska (CA Bar No. 96082)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105
Tel.:  415-773-5700
Fax: 415-773-5759
E-mail:cvejnoska@orrick.com
*Counsel for CNBM Group and CNBM Company*

- 19 -