IN THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF
HARRISON COUNTY, MISSISSIPPI

KYLE E. NEWMAN AND
DENISE G. NEWMAN                                                    PLAINTIFFS

V.                                                       NO. _____

KNAUF GIPS KG; KNAUF PLASTERBOARD
(TIANJIN) CO., LTD.; KNAUF PLASTERBOARD
(WUHU) CO., LTD.; KNAUF PLASTERBOARD
(DONGGUAN) CO., LTD.; BEIJING NEW
BUILDING MATERIAL, PLC; TAISHAN
GYPSUM CO. LTD F/K/A SHANDONG
TAIHE DONGXIN CO., LTD.; USG CORPORATION;
L&W SUPPLY CORPORATION, D/B/A SEACOAST;
INDEPENDENT BUILDERS SUPPLY ASSOCIATION;
ROTHCHILT INTERNATIONAL LTD.; INTERIOR/
EXTERIOR BUILDING SUPPLY; BAILEY LUMBER
& SUPPLY CO.; and FICTITIOUS PARTIES A-G                          DEFENDANTS

COMPLAINT
(Jury Trial Demanded)



Plaintiffs, KYLE E. NEWMAN AND DENISE G. NEWMAN, (hereinafter referred to as

"Plaintiffs"), bring this action against, Defendants, Knauf Gips KG; Knauf Plasterboard (Tianjin)

Co., Ltd; Knauf Plasterboard (Wuhu) Co., Ltd; Knauf Plasterboard (Dongguan) Co., Ltd; Beijing

New Building Material, PLC; Taishan Gypsum Co. Ltd f/k/a Shandong Taihe Dongxin Co., Ltd.;

USG Corporation; L&W Supply Corporation d/b/a Seacoast; Independent Builders Supply

Association; Rothchilt International Ltd.; Interior / Exterior Building Supply; Bailey Lumber &

Supply Co.; and Fictitious Parties A-G, and in support thereof would show unto the Court the

following:

2.     Plaintiff, Denise G. Newman, is an adult resident citizen of Hancock County, Mississippi who resides at her address of 7333 Atti Drive, Diamondhead, Mississippi 39525.

3.     Defendant, Knauf Gips, is a corporation organized and existing under the laws of the Country of Germany and has its principal place of business located at Postfach 10, D-97343 iphofen, Germany. Knauf Gips is doing business in the State of Mississippi by virtue of the fact that it has products distributed in the State of Mississippi; by virtue of the fact that it has committed a tort in whole or in part in the State of Mississippi against residents of the State of Mississippi and as a result thereof is doing business in the State of Mississippi and may be served with process pursuant to the Mississippi Rules of Civil Procedure and the Haig Convention.

4.     Defendant, Knauf Plasterboard (Tianjin) Co., Ltd. ("Knauf Tianjin"), is an international corporation organized under the laws of China doing business in the State of Mississippi with its principal place of business located at North Yinhe Bridge, East Jingjin Road, RC-300400, Tianjin, China. Knauf Tianjin is involved in the manufacturing, sale, distribution and/or marketing of gypsum drywall. Knauf Tianjin is doing business in the State of Mississippi by virtue of the fact that it has products distributed in the State of Mississippi; by virtue of the fact that it has committed a tort in whole or in part in the State of Mississippi against residents of the State of Mississippi and as a result thereof is doing business in the State of Mississippi and may be served with process pursuant to the Mississippi Rules of Civil Procedure and the Haig Convention.

5.     Defendant, Knauf Plasterboard (Wuhu) Co., Ltd. ("Knauf Wuhu"), is an international corporation organized under the laws of China doing business in the State of Mississippi with its principal place of business located at No. 2 Gang Wan Road, RC-241009,

Wuhu Anhui, China. Knauf Wuhu is involved in the manufacturing, sale, distribution and/or marketing of gypsum drywall. Knauf Wuhu is doing business in the State of Mississippi by virtue of the fact that it has products distributed in the State of Mississippi; by virtue of the fact that it has committed a tort in whole or in part in the State of Mississippi against residents of the State of Mississippi and as a result thereof is doing business in the State of Mississippi and may be served with process pursuant to the Mississippi Rules of Civil Procedure and the Haig Convention.

6.      Defendant, Knauf-Plasterboard (Dongguan) Co., Ltd ("Knauf-Dongguan"), is an international corporation organized under the laws of China doing business in the State of Mississippi with its principal place of business located at No.2 Xinsha Development Zone, RC-523147, Guangdong, China. Knauf Dongguan is involved in the manufacturing, sale, distribution and/or marketing of gypsum drywall. Knauf Dongguan is doing business in the State of Mississippi by virtue of the fact that it has products distributed in the State of Mississippi; by virtue of the fact that it has committed a tort in whole or in part in the State of Mississippi; against residents of the State of Mississippi and as a result thereof is doing business in the State of Mississippi and may be served with process pursuant to the Mississippi Rules of Civil Procedure and the Haig Convention.

7.      Defendant, Beijing New Building Material PLC, is an international corporation organized under the laws of China doing business in the State of Mississippi with its principal place of business located at No. 16, West Road, Jiancaicheng Xisangi Haidian District, Beijing, China 100096.  Beijing New Building Material PLC is doing business in the State of Mississippi by virtue of the fact that it has products distributed in the State of Mississippi; by virtue of the

fact that it has committed a tort in whole or in part in the State of Mississippi against residents of the State of Mississippi and as a result thereof is doing business in the State of Mississippi and may be served with process pursuant to the Mississippi Rules of Civil Procedure and the Haig Convention.

8.    Defendant, Taishan Gypsum Co. Ltd. ("Taishan"), is an international corporation organized under the laws of China doing business in the State of Mississippi with its principal place of business located at Dajue District, Taian, Shandong Province, China, 271026.  Taishan is doing business in the State of Mississippi by virtue of the fact that it has products distributed in the State of Mississippi, by virtue of the fact that it has committed a tort in whole or in part in the State of Mississippi against residents of the State of Mississippi and as a result thereof is doing business in the State of Mississippi and may be served with process pursuant to the Mississippi Rules of Civil Procedure and the Haig Convention.

9.    Defendant, USG Corporation is a Delaware corporation with its principal place of business located at 550 W. Adams Street, Chicago, Illinois, 60661, and at all material times, was authorized to do and was doing business in the State of Mississippi. USG, together with its various affiliates, including Defendant Seacoast, is the nation's largest distributor of drywall and related building products.  USG Corporation is doing business in the State of Mississippi by virtue of the fact that it has products distributed in the State of Mississippi; by virtue of the fact that it has committed a tort in whole or in part in the State of Mississippi against residents of the State of Mississippi and as a result thereof is doing business in the State of Mississippi and may be served with process pursuant to the Mississippi Rules of Civil Procedure and the Haig Convention.

10.   Defendant, L&W Supply Corporation d/b/a/ Seacoast Supply ("Seacoast"), is a Delaware corporation with its principal place of business located at 550 W. Adams Street, Chicago, Illinois 60661, and at all times material, was authorized to and conducted business in the State of Mississippi.  Defendant Seacoast has numerous supply centers in the State of Mississippi.  Defendant Seacoast is a subsidiary of Defendant USG.  Seacoast is doing business in the State of Mississippi by virtue of the fact that it has products distributed in the State of Mississippi, by virtue of the fact that it has committed a tort in whole or in part in the State of Mississippi against residents of the State of Mississippi and as a result thereof is doing business in the State of Mississippi and may be served with process pursuant to the Mississippi Rules of Civil Procedure and the Haig Convention.

11.   Defendant, Independent Builders Supply Association ("IBSA"), is a member owned buying organization with its principal place of business located in Smithfield, North Carolina, and is authorized to do and doing business in the State of Mississippi.  IBSA is doing business in the State of Mississippi by virtue of the fact that it has products distributed in the State of Mississippi, by virtue of the fact that it has committed a tort in whole or in part in the State of Mississippi against residents of the State of Mississippi and as a result thereof is doing business in the State of Mississippi and may be served with process pursuant to the Mississippi Rules of Civil Procedure and the Haig Convention.

12.   Defendant, Rothchilt International Ltd. ("Rothchilt"), is a foreign corporation doing business in the State of Mississippi with its principal place of business located at ~510 Chia Hsin Bld., Annex 9 6 Chung Shan N. Rd. Sec. 2, Taipei, Taiwan R.O.C. Rothchilt is doing business in the State of Mississippi by virtue of the fact that it has products distributed in the

State of Mississippi, by virtue of the fact that it has committed a tort in whole or in part in the State of Mississippi against residents of the State of Mississippi, and as a result thereof is doing business in the State of Mississippi and may be served with process pursuant to the Mississippi Rules of Civil Procedure and the Haig Convention.

13.     Defendant, Interior / Exterior Building Supply, is a corporation organized and existing under and by virtue of the laws of the State of Louisiana, which has its principal place of business located at 12111 Intraplex Parkway, Gulfport, Mississippi 39503.  Interior / Exterior Building Supply is doing business in the State of Mississippi and has appointed C.T. Corporation System as its registered agent for service of process.  Interior / Exterior Building Supply may be served with process of this Court by serving C.T. Corporation System at its address of 645 Lakeland East Drive, Suite 101, Flowood, MS  39232.

14.     Defendant, Bailey Lumber & Supply Co. ("Bailey Lumber"), is a corporation organized and existing under and by virtue of the laws of the State of Mississippi.  Bailey Lumber & Supply Co. has its principal place of business located at 813 E. Pass Road, Gulfport, Mississippi 39507.  Bailey Lumber & Supply Co. has registered to do business in the State of Mississippi, is doing business in the State of Mississippi and has appointed John Howard Shows as its registered agent for service of process.  Bailey Lumber & Supply Co., may be served with process of this Court by serving John Howard Shows at his address of 2950 Layfair Drive, Suite 101, Flowood, MS  39232.

15.     Fictitious Parties A-G are individuals, corporations, LLC's, or other legal entities whose identities are not known at this time who are doing business within the State of Mississippi and committed a tort in whole or in part in the State of Mississippi by manufacturing,

selling, developing, inspecting, maintaining, converting services, repairing, overhauling, rebuilding, designing, and engineering Chinese Drywall as alleged in other portions of this Complaint. Said Defendants are guilty of breach of legal duties to the Plaintiffs herein which proximately caused or proximately contributed to the injuries and damages as set forth in Count I through XIII of the Complaint.

## COUNT I

16. Plaintiffs adopt by reference and reallege each and every allegation of all paragraphs of this Complaint, the same as though specifically set out herein.

17. Plaintiffs, Kyle E. Newman and Denise G. Newman, bring this action as owners and/or occupants of a home located at 7333 Atti Drive, Diamondhead, Mississippi 39525, in Hancock County, Mississippi, which was built or rebuilt after Hurricane Katrina with building materials, including, but not limited to, toxic Chinese drywall.

18. The drywall used and sold by the Defendants was installed in Plaintiffs' home, was and is inherently defective and not suitable for its intended uses because it emitted various sulfide gases and/or other toxic chemicals through "off-gassing" that created noxious, "rotten egg-like" odors, and caused damage and corrosion ("the Defect") to the home structure, air-conditioner and refrigerator coils, copper tubing, faucets, metal surfaces, electrical wiring, computer wiring, and various mechanical systems such as microwaves, utensils, electronic appliances, jewelry, and other household items. The compounds emitted by the drywall at issue caused damage to the health of the Plaintiffs because of the prolonged exposure. These chemical compounds caused dangerous health consequences to the Plaintiffs, including, but not limited to, respiratory problems, sinus problems, eye irritation and nose bleeds.

7

19.    This Defect was and is latent and existed in Defendants' drywall at the time of installation without regards as to the way the product was installed, maintained, and/or painted.

20.    The toxic drywall cannot be repaired and the toxic gases and emissions cannot be neutralized or prevented. The only solution is the total removal and replacement of the toxic drywall.

21.    Knauf Gips is a leading manufacturer of building materials and systems, including drywall. Knauf Gips, together with its affiliates (including Knauf Tianjin, Knauf Wuhu and Knauf Dongguan), provides building materials and systems to customers in over 50 countries, including the State of Mississippi. Knauf Gips employs approximately 20,000 employees worldwide, with more than 130 production plants, and generates annual sales in excess of £4.8 billion.

22.    Knauf Gips is the parent corporation of its affiliates Knauf Tianjin, Knauf Wuhu and Knauf Dongguan (collectively "Knauf"). Knauf Tianjin, Knauf Wuhu and Knauf Dongguan and their employees are the actual and/or apparent agents of Knauf Gips. Further, the Knauf entities are acting as joint enterprises and/or joint ventures. Knauf Gips individually participated, ratified, approved and directed the improper or illegal acts and omissions described more fully herein.

23.    At all material times hereto, Knauf Gips strictly controlled the produce quality of its Chinese affiliates and supervised, operated, trained and otherwise exercised control and/or had the right to control all of the operations of Knauf Tianjin, Knauf Wuhu and Knauf Dongguan and their agents, apparent agents, and employees.

24.     Knauf Gips, directly and/or through its affiliates and/or actual or apparent agents, including Knauf Tianjin, Knauf Wuhu and Knauf Dongguan, systematically and continuously manufactured, sold, distributed, marketed and placed in the stream of commerce tens of millions of square feet of defective drywall that went to numerous purchasers in the State of Mississippi. The defective drywall, has been installed in numerous Mississippi homes, including Plaintiffs' home. The Knauf Defendants also failed to provide adequate warnings regarding the hazardous and defective nature of Chinese drywall in Mississippi.

25.     Upon information and belief, Knauf Gips, directly and/or through its affiliates and/or actual or apparent agents, including Knauf Tianjin, Knauf Wuhu and Knauf Dongguan, manufactured, sold, distributed, marketed and placed in the stream of commerce, toxic gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers within the State of Mississippi.

26.     Knauf Gips directly and/or through its affiliates and/or actual or apparent agents, (including, but not limited to, Knauf Tianjin, Knauf Wuhu and Knauf Dongguan), manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold, directly and indirectly, to certain suppliers in the State of Mississippi, including Defendants, USG Corp, Seacoast, IBSA, Rothchilt and Bailey Lumber. The defective Chinese drywall was installed in homes built in Mississippi, including Plaintiffs' home, thereby causing substantial damage to Plaintiffs and their family.

27.     Upon information and belief, Knauf Tianjin, individually and/or together with and/or at the direction and control of its principal, Knauf Gips, manufactured, sold, distributed, marketed and placed in the stream of commerce, gypsum drywall with the expectation that the

9

drywall would be purchased by thousands of consumers within the United States, including Mississippi. Further, Defendant, Knauf Tianjin, individually and/or together with Knauf Gips, continuously and systematically distributed and sold drywall to numerous purchasers in the State of Mississippi, and their drywall was installed in numerous homes throughout the United States, including the State of Mississippi. As discussed more fully below, Knauf Tianjin, individually and/or together with Knauf Gips, manufactured and sold, directly or indirectly, to certain suppliers in the United States and Mississippi, including Defendants, USG Corporation, Seacoast, IBSA, Bailey Lumber and Rothchilt, defective gypsum drywall that was installed in Plaintiffs' home. Moreover, Knauf Tianjin purposefully availed itself of the jurisdiction of this Court by selling, marketing, shipping and/or distributing substantial quantities of drywall into the United States and the State of Mississippi.

28.     Knauf Wuhu, individually and/or together with, and/or at the direction of and control of its principal, Knauf Gips, manufactured, sold, distributed, marketed and placed within the stream of commerce, gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers within the United States, including the State of Mississippi. Further, Defendant, Knauf Wuhu, individually and/or together with Knauf Gips, continuously and systematically distributed and sold drywall to numerous purchasers in the State of Mississippi and throughout the United States, and their drywall is installed in numerous homes throughout the United States, including Mississippi. Defendants, USG Corporation, Seacoast, IBSA, Bailey Lumber and Rothchilt sold defective gypsum drywall to Plaintiffs that was installed in Plaintiffs' home. Moreover, Knauf Wuhu purposefully availed itself of the jurisdiction of this

Court by selling, marketing, shipping and/or distributing substantial quantities of drywall into the United States and the State of Mississippi.

29. Knauf Dongguan, individually and/or together with and/or at the direction and control of its principal, Knauf Gips, manufactured, sold, distributed, marketed and placed in the stream of commerce, gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers within the United States, including the State of Mississippi. Further, Defendants, Knauf Dongguan, individually and/or together with Knauf Gips, have continuously and systematically distributed and sold drywall to numerous purchasers in the State of Mississippi and throughout the United States. The drywall was sold and installed in numerous homes throughout the United States, including Mississippi, by Defendants, USG Corporation, Seacoast, IBSA, Bailey Lumber and Rothchilt. Moreover, Knauf Dongguan purposefully availed itself of the jurisdiction of this Court by selling, marketing, shipping and/or distributing substantial quantities of drywall into the United States and the State of Mississippi.

30. Knauf Gips and each Knauf entity (Knauf Tianjin, Knauf Wuhu and Knauf Dongguan) participated in the wrongful acts more fully described herein. The Knauf Defendants also acted in joint enterprise and joint venture and as such are each other's agents within the course and scope of their agency.

31. At all times relevant hereto, Knauf Gips and each Knauf entity (Knauf Tianjin, Knauf Wuhu and Knauf Dongguan) acted by and through their employees, agents, apparent agents, and representatives, who were acting within the course and scope of their employment, agency, apparent agency and representation and in the furtherance of the Knauf Defendants' interests.

32.     This Court has personal jurisdiction over Defendants, Knauf Gips, Knauf Tianjin, Knauf Wuhu and Knauf Dongguan, because they are "engaged in substantial and not isolated activities within the State of Mississippi". Additionally, Plaintiffs' causes of action arise from Defendants' (Knauf Gips, Knauf Tianjin, Knauf Wuhu and Knauf Dongguan) actions individually or through their agents. Defendants caused injuries to the Plaintiffs and Plaintiffs' property within the State of Mississippi. The products, materials, or things manufactured, distributed and sold by Defendants, (Knauf Gips, Knauf Tianjin, Knauf Wuhu and Knauf Dongguan), were used and consumed within the State of Mississippi in the ordinary course of commerce, trade or use.

33.     Beijing New Building Material is the parent corporation and otherwise controls Taishan. Beijing New Building Material will be collectively referred to herein as "BNBM". Taishan and its employees are the actual and/or apparent agents of Beijing New Building Material, and all of the BNBM entities are acting as joint enterprises and/or joint ventures.

34.     BNBM, together with its subsidiaries, is the largest building material manufacturer in China and is one of the largest manufactures of drywall in the world with an annual production capacity of over 1.3 billion square feet. The BNBM entities market their drywall under a number of trade names including "Beijing", "Dragon Brand", and "Taishan". The United States is a major market for BNBM drywall, and the BNBM entities shipped millions of pounds of defective drywall into U.S. ports.

35.     BNBM, directly or through its agents, systematically and continuously manufactured, sold, distributed, marketed and placed in the stream of commerce millions of square feet of defective drywall that went to numerous purchasers in the State of Mississippi, and

12

was installed in numerous Mississippi homes, including Plaintiffs' home. Defendant also failed to provide adequate warnings regarding the hazardous and defective nature of Chinese drywall to the residents of the State of Mississippi.

36.     BNBM, directly or through its agents, manufactured, sold, distributed, marketed and placed in the stream of commerce, gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers within the State of Mississippi.

37.     BNBM, directly or through its agents, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold, directly and indirectly, to certain suppliers in the State of Mississippi, including Defendants, USG, Seacoast, IBSA, Bailey Lumber and Rothchilt, defective Chinese drywall which was installed in homes built in Mississippi, thereby causing substantial damages to Plaintiffs.

38.     Defendants BNBM and Taishan purposefully availed themselves of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State of Mississippi.

39.     This Court has personal jurisdiction over Defendants BNBM and Taishan because they are "engaged in substantial and not isolated activities within the State of Mississippi." Additionally, Plaintiffs' causes of action arise from Defendants (BNBM and Taishan) acting individually or through their agents, which caused injuries to property within the State of Mississippi. The Plaintiffs at the time of the injury used the products, materials, or things manufactured by Defendants (BNBM and Taishan), in the State of Mississippi; and in the ordinary course of commerce, trade or use.

40.     Defendant, USG Corporation, exported, imported, manufactured, distributed, delivered, supplied, inspected, marketed and/or sold defective drywall in the State of Mississippi, directly or indirectly through agents, affiliates or co-conspirators, Defendant's, USG Corporation, acts or omissions related to defective drywall have injured Plaintiffs in the State of Mississippi.

41.     Defendant, L&W Supply Corporation d/b/a Seacoast Supply ("Seacoast") is a Delaware corporation with its principal place of business located at 550 W. Adams Street, Chicago, Illinois 60661, and at all times material, was authorized to and conducted business in the State of Mississippi.  Defendant Seacoast has numerous supply centers in the State of Mississippi.  Defendant, Seacoast, is a subsidiary of Defendant, USG.  Seacoast is doing business in the State of Mississippi by virtue of the fact that it has products distributed in the State of Mississippi; by virtue of the fact that it has committed a tort in whole or in part in the State of Mississippi against residents of the State of Mississippi and as a result thereof is doing business in the State of Mississippi and may be served with process pursuant to the Mississippi Rules of Civil Procedure and the Haig Convention.

42.     Defendant, Independent Builders Supply Association, ("IBSA") is a member owned buying organization with its principal place of business located in Smithfield, North Carolina, and is authorized to do and doing business in the State of Mississippi.  IBSA is doing business in the State of Mississippi by virtue of the fact that it has products distributed in the State of Mississippi; by virtue of the fact that it has committed a tort in whole or in part in the State of Mississippi against residents of the State of Mississippi and as a result thereof is doing business in the State of Mississippi and may be served with process pursuant to the Mississippi Rules of Civil Procedure and the Haig Convention.

43.     Defendant, Rothchilt, directly or through its agents, systematically and continuously exported, imported, manufactured, distributed, delivered, supplied, inspected, marketed, sold, and/or placed substantial quantities of defective drywall in the stream of commerce. This defective drywall was shipped to purchasers in the State of Mississippi, and was installed in numerous Mississippi homes, including the Plaintiffs' home.

44.     Defendants' actions directly or indirectly through agents or affiliates have injured Plaintiffs as alleged herein. Defendants also failed to provide adequate warnings regarding the hazardous and defective nature of their defective drywall to residents of the State of Mississippi.

45.     This Court has personal jurisdiction over Defendant, Rothchilt, because it is "engaged in substantial and not isolated activity within State of Mississippi". Additionally, Plaintiffs' causes of action arise from Defendant's, Rothchilt, actions individually or through its agents, causing injury to property within the State of Mississippi. The Plaintiffs, at the time of the injury, used the products, materials, or things manufactured by Defendant, Rothchilt, in the State of Mississippi and in the ordinary course of commerce, trade or use.

46.     Defendants, Bailey Lumber and Supply and Interior/Exterior Building Supply, have directly or indirectly sold and/or delivered Chinese drywall to residents in Hancock and Harrison Counties, Mississippi including, but not limited to, the Plaintiffs.

47.     Upon information and belief, millions of square feet of defective Chinese drywall was used in the construction of United States homes, including Plaintiffs', between 2004 and the present because of a shortage of construction materials from a booming housing market and massive damage in the United States in 2005 caused by Hurricanes Katrina, Rita, and Wilma. Domestic builders, suppliers and importers began bringing significant stocks of foreign

manufactured Chinese drywall into Mississippi and the United States. In fact 550 million pounds of Chinese drywall came into the United States from approximately 2004 to 2006, enough to construct 60,000 average-size homes.

48.     The Defendants coordinated their efforts to distribute in the United States since, among other things shipping records showed that the Knauf's Chinese subsidiaries, shared the same vessel to transport their products to the United States. In April 2006, the *Yong An Cheng* took three shipments from Knauf Wuhu and a fourth from Knauf Dongguan to the United States. All of the shipments were imported by United States Gypsum Corporation, one of the largest manufacturers of domestic drywall in the United States market.

49.     Knauf Tianjin, one of three Knauf Gips Chinese subsidiaries, admits that it manufactured and imported at least 20 percent of the imported Chinese drywall that came into the United States.

50.     Shipping information indicates that Knauf Tianjin sent at least 38.7 million pounds of Chinese drywall to the United States in 2006 and Knauf Wuhu sent at least 28.6 million pounds of Chinese drywall. Based on U.S. Customs and Census information, these figures would indicate that 78 percent of Chinese drywall imports in 2006 came from these two Knauf plants.

51.     Drywall is also commonly known as gypsum board, wallboard, plasterboard, rock lath, sheetrock, gyproc or simply board. A drywall panel is made of a paper liner wrapped around an inner core made primarily from hardened gypsum plaster.

52.     Drywall is typically available in 4 feet (1219 mm) wide sheets of various lengths. Newly formed sheets are cut from a belt, the result of a continuous manufacturing process. The

16

most commonly used drywall is ½ inch thick but can range from 1/4 inch (6.35 mm) to one inch (25.4 mm) thick.

53.     The core material of drywall is available in two forms, pure gypsum, which is naturally occurring, and synthetic gypsum, which is manmade.  Pure gypsum is a white to transparent mineral, but sometimes impurities color it grey, brown or pink.  Synthetic gypsum is generally manufactured with byproducts of coal-fired power plants.

54.     Coal combustion byproducts ("CCBs") or coal combustion products ("CCPs") are the inorganic residues that remain after pulverized coal is burned.  The primary CCBs used in drywall are byproducts resulting from a utility's attempts to remove sulfur from flue gases.

55.     In order to meet emission standards, many utilities have installed flue gas desulfurization ("FGD") equipment.  Flue gas desulfurization is a chemical process to remove sulfur oxides from the flue gas at coal-burning power plants.  Various FGD methods have been developed that chemically combine the sulfur gases released in coal combustion by reacting them with a sorbent, such as limestone or lime.  As the flue gas comes in contact with the slurry of calcium salts, sulfur dioxide reacts with the calcium to form hydrous calcium sulfate, otherwise known as gypsum.

56.     In order to form drywall, gypsum must be "calcined", or partially dehydrated by heating.  When gypsum is heated, it loses about three quarters of its water and becomes hemihydrate gypsum which is soft and can be easily ground to a powder called hemihydrate gypsum plaster.

57.     The gypsum powder is then mixed with water to form a paste or slurry.  The paste or slurry is typically mixed with fiber (usually paper and/or fiberglass), plasticizer, foaming

agent, potash as an accelerator, starch or other chelate as a retarder, various additives that increase mildew and fire resistance (fiberglass or vermiculite), and water.

58.     The defective drywall consists of two other materials with sulfur content: alkyl ethoxy sulfates as foaming agents and lignin or naphtalene sulfonates as dispersing agents.

59.     While the hemihydrate gypsum plaster is in slurry form, it is sandwiched between two layers of heavy paper or fiberglass mats to make drywall. When the core sets and is dried in a large drying chamber, the "sandwich" becomes rigid and strong enough for use as a building material.

60.     Upon information and belief, Defendants' drywall contained naturally mined gypsum and synthetic gypsum manufactured from CCB's.

61.     When gypsum, mined or synthetic, is subjected to certain environmental conditions, the product breaks down into sulfate ions, which in turn can be chemically transformed into hydrogen sulfide gas and other sulfide gases.

62.     The Defendants were aware and knew of the problems of sulfide emissions from drywall since it is well documented in the drywall industry and since it has been studied for many years.

63.     The level of sulfides emitted from drywall may depend, in part, on contamination of the drywall with sulfur materials or the use of contaminated gypsum materials.

64.     The drywall is so dangerous because of sulfide emissions that many landfills refuse to accept drywall or place strict limitations on the amounts of and/or the ways in which drywall can be disposed.

65.     The Defendants are liable for Plaintiffs' damages because the combination of sulfide gases causes corrosion of the coils and the substances found in Plaintiffs' home are well known to cause corrosion.

66.     Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold defective drywall, which was unreasonably dangerous in its expected use since that the drywall caused corrosion and damage to the structures, wiring, pipes and mechanical systems in Plaintiffs' home, and caused medical ailments, including allergic reactions, coughing, sinus and throat infection, eye irritation, breathing disorders, and other health problems for the Plaintiffs, and to incur medical expenses and disabilities, and they are likely to incur additional damages of these types in the future...

67.     As a direct and proximate result of Defendants' actions and omissions, Plaintiffs' home and bodies have been exposed to Defendants' drywall and the corrosive and harmful effects of the sulfide gases and other chemicals being released from these proven hazardous substances.

68.     As a direct and proximate result of Defendants' defective drywall and the corrosive effects of the sulfide gases and other chemicals being released from these products, the Plaintiffs have suffered, and continue to suffer damages, including but not limited to costs of inspection as well as the costs and expenses necessary to remedy, replace and remove the defective drywall, adjoining components, electrical wiring, personal property, and other property that has been affected.

69.     Defendants' actions will require Plaintiffs to remove all defective drywall, perform extensive remedial repairs to their home, and then repair the damaged property made visible during the performance of these repairs.

70.     Defendants' actions also resulted in substantial diminution in the value of the Plaintiffs' home.

71.     This defective drywall causes adverse health consequences such as respiratory problems, sinus problems, eye irritation and nosebleeds, in addition to the creation of noxious odors.

72.     The running of any statute of limitations has been tolled due to Defendants' fraudulent concealment, since by failing to disclose known defects to Plaintiffs, and misrepresenting the nature of their products as safe for their intended use, Defendants actively concealed from Plaintiffs the true risks associated with their drywall. The Plaintiffs could not have discovered the existence of the defect in the Chinese-manufactured drywall until press reports about the defects were released in December 2008.

73.     Plaintiffs could not have reasonably known or have learned of the manufacturing defects alleged herein and that those risks were a direct and proximate result of Defendants' acts and omissions.

74.     Furthermore, Defendants are estopped form relying on any statutes of limitations because of their fraudulent concealment of the defective nature of their drywall. Defendants were under a duty to disclose the true character, quality, and nature of their products because this was non-public information over which the Defendants had, and continue to have, exclusive control and because Defendants knew that this information was not available to the Plaintiffs. In

addition, the Defendants are estopped from relying on any statutes of limitations because of their concealment of these facts.

75.    Plaintiffs had no knowledge that Defendants were engaged in the wrongdoing alleged herein.  Because of the fraudulent acts of concealment of wrongdoing by the Defendants, Plaintiffs could not have reasonably discovered the wrongdoing at any time prior to December 2008.  The Plaintiffs did not discover that the defective drywall was installed in their residence until the summer of 2010.

COUNT II

76.    Plaintiffs adopt by reference and reallege each and every allegation of all paragraphs of this Complaint the same as though specifically set out herein.

77.    After Hurricane Katrina the Plaintiffs and/or their agents, inquired about purchasing drywall for their home.  After reviewing the information provided to them by the Defendants concerning the drywall, after being assured by the Defendants that the drywall was not defective, was free from defects in material and workmanship, and was not dangerous, the Plaintiffs entered into contracts for the purchase of drywall that they thought to be the standard used in the industry.  Pursuant to the contracts the Defendants sold the drywall to the Plaintiffs and represented to the Plaintiffs that the drywall was designed, engineered, manufactured and sold in accordance with good engineering, designing and manufacturing practices.

78.    Plaintiffs, after consultation with the Defendants, entered into contracts with the Defendants for good and valuable consideration, for the purchase of drywall that they thought to be safe and not defective.  In furtherance of their contract with the Plaintiffs, the Defendants

contract agreement led the Plaintiffs to believe that the drywall was safe, free from defects in workmanship and material and free from sulphur.

79.     Plaintiffs paid full consideration for the purchase of the drywall but the Defendants breached their contracts with the Plaintiffs. As a direct and proximate result of the breaches in contracts and agreements, Plaintiffs have incurred and continue to incur substantial monetary damages including but not limited to total loss of use of their house; loss of their house; loss of their household furniture and furnishings; loss of their fixtures; and damages to Plaintiffs' health.

80.     Plaintiffs performed all of the terms of the agreements to be performed on their part but the Defendants breached their contracts with the Plaintiffs by failing to provide safe and not defective toxic drywall.

WHEREFORE PREMISES CONSIDERED, Plaintiffs each demand Judgment of and from the Defendants, jointly and severally, for their damages in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) plus punitive damages in an amount sufficient to punish the Defendants and deter the Defendants from such reckless and oppressive conduct in the future, prejudgment interest, post judgment interest and all costs.

## COUNT III

81.     Plaintiffs adopt by reference and reallege each and every allegation of all paragraphs of this Complaint the same as though specifically set out herein.

82.     At all relevant times, Defendants were in the business of building, developing, inspecting, maintaining, converting, servicing, repairing, overhauling, rebuilding, designing, engineering, manufacturing, and selling drywall. The Defendants held themselves out to be

specialists in their respective fields by advertising and representing that they had special knowledge and expertise in developing, building, engineering, inspecting, maintaining, manufacturing, designing and selling drywall. The Plaintiffs, based upon the representations made to them by the Defendants, purchased the drywall for use in the rebuilding and repair of their home. The Plaintiffs relied upon the representations made by the Defendants and entered into contracts for the purchase of drywall.

83.     At all times herein mentioned the Defendants were in the business of doing things herein above alleged for the purposes of developing, engineering, inspecting, maintaining, manufacturing, designing, and selling drywall for residential use.

84.     At all relevant times, the Plaintiffs heard and considered the representations made by the Defendants, including, but not limited to: (1) that Defendants had special expertise and specialized knowledge in developing, engineering, manufacturing, designing, constructing and selling drywall; (2) that the drywall for their residential home would be in new condition, free from defects, safe and not dangerous; and (3) that the drywall would be free from sulphur and other toxic materials. The Plaintiffs relied upon the representations made by the Defendants and paid the Defendants the requested purchase price of the drywall. The Plaintiffs, in purchasing the drywall relied upon the aforesaid certifications and representations made by the Defendants.

85.     Some of the Defendants corporations are sham or shell corporations which are set up, established or used by the other Defendants in an attempt to shield their individual liability. As a result of the Defendants' fraudulently setting up shell or sham corporations to shield their individual liability, the Defendants are responsible individually for their willful, wanton and

grossly negligent conduct and the willful, wanton and grossly negligent actions of their Co-Defendants.

86.    On the occasions in question, the Plaintiffs believed the representations and promises made by the Defendants and relied upon the promises, misrepresentations and fraudulent representations made by the Defendants to their detriment. The Plaintiffs detrimentally relied upon the false and fraudulent representations made to them by the Defendants and as a result of their detrimental reliance the Plaintiffs have suffered damages in the amount of $2,500,000.00 each.

WHEREFORE PREMISES CONSIDERED, Plaintiffs each demand judgment of and from the Defendants, jointly and severally, for their damages in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) plus punitive damages in an amount sufficient to punish the Defendants and deter the Defendants from such reckless and oppressive conduct in the future, prejudgment interest, post judgment interest and all costs.

COUNT IV

87.    Plaintiffs adopt by reference and reallege each and every allegation of all paragraphs of this Complaint the same as though specifically set out herein.

88.    The Defendants, at all times, were in the business of designing, manufacturing, testing, processing, engineering, inspecting, servicing, distributing, supplying, maintaining, selling, delivering, building, and developing building supplies and materials, including, but not limited to, drywall. At all times herein mentioned, the Defendants were in the business of doing the things herein above alleged for the purposes of designing, manufacturing, testing, processing, engineering, inspecting, servicing, distributing, supplying, maintaining, selling, delivering, building, and developing drywall and building materials for the Plaintiffs' home.

89.     The Defendants failed to properly plan, approve, inspect, and construct the drywall with a degree of skill and workmanship possessed by those of others in the manufacturing, designing, engineering, and selling drywall industry and/or building or construction industry.  The Defendants as agents of each other, constantly assured and represented to the Plaintiffs that the drywall was properly engineered, designed, manufactured, and sold in accordance with normal procedures in the drywall manufacturing and distributing industry.  The Plaintiffs, (after being assured by the Defendants that the drywall was in new condition; was in safe condition; was not defective; was engineered, designed, manufactured and sold in a workmanlike manner), recently discovered that their drywall was engineered, designed, manufactured and sold in a negligent manner and that Plaintiffs' home had deadly and toxic sulfur and other toxic materials.  As a direct and proximate result of the negligence of the Defendants, failure to properly inspect, design, construct, manufacture, engineer and sell the drywall in a workmanlike manner and failure to inspect the drywall for sulphur, the Plaintiffs have sustained serious damages.

WHEREFORE PREMISES CONSIDERED, Plaintiffs each demand judgment of and from the Defendants, jointly and severally, for their damages in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) plus punitive damages in an amount sufficient to punish the Defendants and deter the Defendants from such reckless and oppressive conduct in the future, prejudgment interest, post judgment interest and all costs.

## COUNT V

90.     Plaintiffs adopt by reference and reallege each and every allegation of all paragraphs of this Complaint the same as though specifically set out herein.

91.     The Plaintiffs contacted the Defendants about purchasing drywall for their home. After reviewing the information provided to them by the Defendants, concerning the drywall, the Defendants assured the Plaintiffs that the drywall had been used in other homes and that the drywall was safe, not defective and not unreasonably dangerous. The Plaintiffs purchased the drywall for their home after being assured by the Defendants that the drywall was safe, was free from sulphur, was free of defects in material and workmanship and was not unreasonably dangerous. The Plaintiffs entered into contracts with the Defendants to purchase drywall to be used in their home and represented to the Plaintiffs that their drywall was engineered, constructed, manufactured or sold in accordance with good engineering, design and manufacturing practices.

92.     The Plaintiffs, after consulting with the Defendants, entered into contracts with the Defendants for good and valuable consideration for drywall which was free from sulphur, free from defects in material and workmanship, and free from toxic materials. In furtherance of their contracts with the Plaintiffs, the Defendants contracted, agreed and led the Plaintiffs to believe that their drywall was safe, free from defects in material and workmanship, free from toxic materials, free from sulphur and in all regards would be safe to use in their home and their home would be habitable.

93.     The Plaintiffs paid full consideration for the purchase of the drywall. The Defendants breached their contracts with the Plaintiffs. As a direct and proximate result of the breaches of contract and agreements, the Plaintiffs have incurred and continue to incur substantial monetary damages, including, but not limited to, total loss of their houses, total loss of use of their houses and fixtures, total loss of household furniture and furnishings, total loss of

household pictures and memorabilia, and damages to their health. The Plaintiffs performed all the terms of the agreements to be performed on their part but the Defendants breached their contracts with the Plaintiffs.

WHEREFORE PREMISES CONSIDERED, Plaintiffs each demand Judgment of and from the Defendants, jointly and severally, for their damages in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) plus punitive damages in an amount sufficient to punish the Defendants and deter the Defendants from such reckless and oppressive conduct in the future, prejudgment interest, post judgment interest and all costs.

## COUNT VI

94.    Plaintiffs adopt by reference and reallege each and every allegation of all paragraphs of this Complaint the same as though specifically set out herein.

95.    The drywall used in Plaintiffs' residence was defective and was in unreasonably dangerous condition.

96.    The drywall used in Plaintiffs' home was not reasonably safe for its intended purposes and uses; was defective; was unreasonably dangerous; was unsafe, defective and unreasonably dangerous when the drywall left the places of business of the designing, engineering, developing, manufacturing and selling businesses. The drywall sold to the Plaintiffs was defective and unsafe without warning to the users and consumers of Plaintiffs' home. The Plaintiffs weren't aware of the defective and unreasonably dangerous condition of the drywall.

97.    The Defendants breached their duties by placing the toxic drywall on the market for use in Plaintiffs' home in conditions that were not safe for its intended purposes and uses.

The Defendants sold the toxic drywall to the Plaintiffs and the toxic drywall was expected to and

27

did reach Plaintiffs without substantial change in the condition from the time the drywall left the control of the Defendants, the manufacturers, builders and/or sellers and was placed on the market and sold. The toxic drywall was used in the construction of the Plaintiffs' home, was used by the Plaintiffs in the manner and for the purposes for which it was intended, manufactured, and sold.

98.    The Defendants are strictly liable in tort for Plaintiffs' damages all of which are in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) plus punitive damages in an amount sufficient to punish the Defendants and deter the Defendants from such reckless and oppressive conduct in the future, prejudgment interest, post judgment interest and all costs.

99.    The Defendants acted with intentional indifference to the safety of the Plaintiffs and with reckless disregard for the safety of the Plaintiffs and as a result of the Defendants acts or omissions which constitute gross negligence the Plaintiffs are entitled to an award of punitive damages in an amount sufficient to punish the Defendants and deter the Defendants from such reckless and oppressive conduct in the future, prejudgment interest, post judgment interest and all costs.

WHEREFORE PREMISES CONSIDERED, Plaintiffs each demand judgment of and from the Defendants, jointly and severally, for their damages in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) plus punitive damages in an amount sufficient to punish the Defendants and deter the Defendants from such reckless and oppressive conduct in the future, prejudgment interest, post judgment interest and all costs.

## COUNT VII

100. Plaintiffs adopt by reference and reallege each and every allegation of all paragraphs of this Complaint the same as though specifically set out herein.

101. The Defendants represented by the approval, inspection, and sale of the drywall for use in the Plaintiffs' home that the drywall was safe, not defective, not unreasonably dangerous, of merchantable quality, fit for the purposes for which it was manufactured, engineered, designed, intended and sold. The Defendants, breached implied and express warranties and their breaches were a contributing proximate cause of Plaintiffs' damages.

102. As a result of Defendants breaches of implied and express warranties, Plaintiffs have suffered damages in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) each.

WHEREFORE PREMISES CONSIDERED, Plaintiffs each demand Judgment of and from the Defendants, jointly and severally, for their damages in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) plus punitive damages in an amount sufficient to punish the Defendants and deter the Defendants from such reckless and oppressive conduct in the future, prejudgment interest, post judgment interest and all costs.

## COUNT VIII

103. Plaintiffs adopt by reference and reallege each and every allegation of all paragraphs of this Complaint the same as though specifically set out herein.

104. The Defendants represented by the sale of the drywall that the drywall was fit for the purposes for which it was sold and fit for use in Plaintiffs' home. The Defendants breached

warranties in their contract with the Plaintiffs and their breaches were the contributing proximate cause of the Plaintiffs' damages.

105.    The Defendants represented by the sale and delivery of the drywall that the drywall was suitable to make the Plaintiffs' home habitable and fit for the uses and purposes for which it was sold. The Defendants' breaches of warranties and breaches of contract were a contributing proximate cause of Plaintiffs' damages.

106.    As a result of the Defendants' breaches of warranties and breaches of contract the Plaintiffs suffered damages in the sum of Two Million Five Hundred Thousand Dollars ($2,500,000.00) each. The Defendants acted with intentional indifference to the safety of the Plaintiffs and in reckless disregard for the safety of the Plaintiffs. The Defendants' acts and omissions constitute gross negligence and entitle the Plaintiffs to their actual damages and an award of punitive damages in an amount sufficient to punish the Defendants and deter the Defendants from such reckless and oppressive conduct in the future.

WHEREFORE PREMISES CONSIDERED, Plaintiffs each demand Judgment of and from the Defendants, jointly and severally, for their damages in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) plus punitive damages in an amount sufficient to punish the Defendants and deter the Defendants from such reckless and oppressive conduct in the future, prejudgment interest, post judgment interest and all costs.

COUNT IX

107.    Plaintiffs adopt by reference and reallege each and every allegation of all paragraphs of this Complaint the same as though specifically set out herein.

108.    Plaintiffs purchased drywall from various Defendants in a lawful and proper manner and were not aware that the drywall was toxic and/or could cause damages to them including total losses of their home.

109.    The Plaintiffs had installed in the residence toxic drywall which was manufactured by one or more of the Chinese drywall manufacturing Defendants. Prior to the installation of the drywall in Plaintiffs' residence, the Defendants were in the business of manufacturing, engineering, designing, testing, processing, inspecting, servicing, installing, distributing, maintaining, selling and delivering Chinese drywall which not only, was not safe, but was unreasonably dangerous. The Chinese drywall manufacturing Defendants sold, Chinese drywall to the public when said Defendants knew that their Chinese drywall would be installed in residential homes like that of the Plaintiffs. The Defendants knew that it was extremely dangerous for the Chinese drywall to be installed in Plaintiffs' home and it was dangerous to the health of the Plaintiffs.

110.    The Chinese drywall manufacturing, shipping, and selling Defendants knew that the Chinese drywall manufactured by the Chinese drywall manufacturing, distributing and selling Defendants was defective and was unreasonably dangerous and was being used by builders because of the lack of safe drywall products. The Chinese drywall manufacturing Defendants manufactured, engineered, designed, distributed, and sold defective Chinese drywall without placing their manufacturing identifying logos or seals on the drywall so that some of the Chinese drywall manufacturing Defendants could avoid detection and could avoid suits by customers such as the Plaintiffs. The Chinese drywall manufacturing Defendants are liable under concert of activity, alternative liability, and enterprise liability for manufacturing, distributing, and selling

31

defective Chinese drywall and placed the Chinese drywall on the market in a defective, unreasonably dangerous condition with the intention to deceive the public as to the name of the manufacturer, distributor, and seller of the product.

111.     The Chinese drywall was manufactured, distributed and sold by one or more of the Chinese drywall manufacture, distributing and selling Defendants and the Chinese drywall was defective, unreasonably dangerous and known to be defective and unreasonably dangerous when it was placed on the market and sold.  The Chinese drywall was unreasonably dangerous and defective and caused the Plaintiffs' total losses of their home and health damages to the Plaintiffs.

112.     The Chinese drywall manufactured by the Chinese drywall manufacturing, distributing and selling Defendants was manufactured, engineered, designed, tested, processed, serviced, inspected, installed, distributed, maintained, sold and delivered by said Defendants to the public.  The Defendants sold the Chinese drywall in question with the knowledge that the Chinese drywall would be used as expected and used by the Plaintiffs as drywall in their home. The Chinese drywall manufacturing, distributing and selling Defendants violated good engineering practices and negligently manufactured, engineered, tested, designed, processed, serviced, inspected, installed, maintained, sold and delivered Chinese drywall in question that was not safe, was unreasonably dangerous and was defective.  In spite of their duty to the Plaintiffs the Chinese drywall manufacturing, distributing and selling Defendants placed on the market Chinese drywall which they knew was defective and unreasonably dangerous.  The Chinese drywall manufacturing, distributing and selling Defendants breached their duties by placing the defective unsafe Chinese drywall on the market in conditions that were not

reasonably safe for the intended purposes and uses. The Chinese drywall in question was put on the market by the Chinese drywall manufacturing, distributing and selling Defendants, was expected to and did reach the Plaintiffs without substantial changes in the condition from the time it left the manufacturers, distributors and sellers and the time it was placed on the market and sold. The Chinese drywall in question was used by the Plaintiffs in the manner and purposes for which it was intended, manufactured and sold.

113.     The Chinese drywall was defective and unreasonably dangerous and the dangerous defective condition of the Chinese drywall was the contributing proximate cause of the injuries and damages sustained by the Plaintiffs.

114.     The Plaintiffs have incurred substantial injuries and damages as a contributing proximate result of the negligence of the Chinese drywall manufacturing, distributing and selling Defendants in failing to properly design, engineer, manufacture, test, process, install, inspect, maintain, service, sell and deliver the Chinese drywall and failing to warn the Plaintiffs of said negligence and said negligence was a contributing proximate cause of the Plaintiffs' damages.

115.     The negligence of the Chinese drywall manufacturing, distributing and selling Defendants, their employees, agents, representatives, and distributors proximately contributed to Plaintiffs' injuries and damages and as a result thereof, the Plaintiffs have suffered and will in the future continue to suffer damages. Plaintiffs' damages, as a result of the negligence of the Chinese drywall manufacturing, distributing and selling Defendants as aforesaid in the amount of at least Two Million Five Hundred Thousand Dollars ($2, 500,000.00) each.

116.     The Plaintiffs were unaware of the defective and unreasonably dangerous condition and hazards created by the use of the drywall in question. The Chinese drywall

33

manufacturing, distributing and selling Defendants are strictly liable in tort for the Plaintiffs' injuries and damages which are in the amount of at least Two Million Five Hundred Thousand Dollars ($2, 500,000.00) each.

WHEREFORE PREMISES CONSIDERED, Plaintiffs each demand Judgment of and from the Defendants, jointly and severally, for their damages in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) plus punitive damages in an amount sufficient to punish the Defendants and deter the Defendants from such reckless and oppressive conduct in the future, prejudgment interest, post judgment interest and all costs.

COUNT X

117.   Plaintiffs adopt by reference and reallege each and every allegation of all paragraphs of this Complaint the same as though specifically set out herein.

118.   Defendant, Knauf Gips, established Defendants, Knauf Tianjin, Knauf Wuhu and Knauf Dongguan, in China and at all relevant times, exercised strict control over Defendants', (Knauf Tianjin, Knauf Wuhu and Knauf Dongguan), operations in accordance with the requirements of Defendant's, Knauf Gips, headquarters in Germany. Defendant, Knauf Gips, is and at all relevant times was responsible for implementing and supervising the quality control measures to be used by Defendants, Knauf Tianjin, Knauf Wuhu and Knauf Dongguan.

119.   By establishing Defendants, Knauf Tianjin, Knauf Wuhu and Knauf Dongguan, in China, and by exercising strict control over Defendants', (Knauf Tianjin, Knauf Wuhu and Knauf Dongguan), conduct and operations, Defendant, Knauf Gips, acknowledged that Defendants, (Knauf Tianjin, Knauf Wuhu and Knauf Dongguan), would act on its behalf as its actual and/or

apparent agents. Defendants, Knauf Tianjin, Knauf Wuhu and Knauf Dongguan, accepted the undertaking to act on Defendant's, Knauf Gips, behalf.

120.   Upon information and belief, Defendant, Knauf Gips, supervised, monitored and controlled Defendants', Knauf Tianjin, Knauf Wuhu and Knauf Dongguan, daily conduct and operations, including the manufacturing, distributing, marketing and selling of Defendants', (Knauf Tianjin, Knauf Wuhu and Knauf Dongguan), drywall products. Furthermore, upon information and belief, Defendant, Knauf Gips, is responsible for establishing, implementing, supervising, and maintaining the quality control mechanisms utilized by Defendants, Knauf Tianjin, Knauf Wuhu and Knauf Dongguan.

121.   As a result thereof, Defendant, Knauf Gips, is vicariously liable for all of the damages caused by the negligent and wrongful conduct of its actual and/or apparent agent, Defendants, (Knauf Tianjin, Knauf Wuhu and Knauf Dongguan).

122.   As a result of Defendants', Knauf Gips, and/or Knauf Tianjin, Knauf Wuhu and Knauf Dongguan, wrongful conduct, Plaintiffs have suffered and will continue to suffer damages.

123.   As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services. Plaintiffs have incurred or will incur damages in the amount of at least $2,500,000.00 each, including, but not limited to, repair/replacement of their home; damages to their personal property; damages to their

health; loss of joy of life; mental anguish; and other damages recognized and allowed by the laws of the State of Mississippi as a result of the home and personal property of the Plaintiffs being contaminated by the drywall as a result of "off-gassing". Plaintiffs are entitled to incidental and consequential damages.

WHEREFORE PREMISES CONSIDERED, Plaintiffs each demand Judgment of and from the Defendants, jointly and severally, for their damages in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) plus punitive damages in an amount sufficient to punish the Defendants and deter the Defendants from such reckless and oppressive conduct in the future, prejudgment interest, post judgment interest and all costs.

COUNT XI

124.    Plaintiffs adopt by reference and reallege each and every allegation of all paragraphs of this Complaint the same as though specifically set out herein.

125.    The Knauf Defendants, including Knauf Gips, Knauf Tianjin, Knauf Wuhu and Knauf Dongguan, owed a duty to Plaintiffs to exercise reasonable care in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall. The Defendants placed the drywall in the stream of commerce and were charged with duties including the duty to assure that the product would perform as intended and would not cause damage as described herein.

126.    The Knauf Defendants breached their duty by failing to exercise ordinary care in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall the Knauf Defendants placed into the stream of commerce since the Knauf Defendants knew or should have known that the product was defective, did not function as

intended and/or created a high risk of unreasonable dangerous side effects, including, but not limited to, corrosion to HVAC coils and refrigerator units, wires, tubes and pipes, and caused Plaintiffs to have allergic reactions, coughing, sinus and throat infection, eye irritation, respiratory problems and other health concerns.

127.   The negligence of the Defendants, their agents, servants and/or employees, included, but is not limited to, the following acts and/or omissions:

a.   negligently manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall without thoroughly testing it;

b.   negligently manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling drywall without adequately testing it;

c.   negligently selling drywall without performing proper and sufficient tests to determine the dangers to its users;

d.   negligently failing to adequately and correctly warn the Plaintiffs and the public, of the dangers of the Knauf Defendants' drywall;

e.   negligently failing to recall or otherwise notify users at the earliest date that it became known that said product was, in fact, dangerous and defective;

f.   negligently advertising and recommending the use of the drywall without sufficient knowledge as to its manufacturing defect and dangerous propensities;

g.   negligently representing that the Defendants' drywall was safe for its intended purpose when, in fact, its safety was and is questionable;

h.   negligently manufacturing drywall in a manner which was dangerous to its users;

i.   negligently processing drywall in a manner which was dangerous to its users;

j.    negligently distributing drywall in a manner which was dangerous to its users;

k.    negligently delivering drywall in a manner which was dangerous to its users;

l.    concealing information concerning reports of adverse effects from the Plaintiffs while knowing that the Defendants drywall were unsafe, dangerous and non-conforming with accepted industry standards; and

m.    improperly concealing and/or misrepresenting information from the Plaintiffs and/or the public, concerning the severity of risks and dangers of the Defendants' drywall and/or the manufacturing defects.

128.    The Defendants were negligent in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling of the Defendants' drywall in that they:

a.    failed to use due care in manufacturing their drywall so as to avoid the aforementioned risks when the drywall was used for its intended purpose;-.

b.    failing to conduct adequate testing to determine the safety of their drywall; and

c.    failing to warn Plaintiffs, prior to actively encouraging the sale of their drywall (either directly or indirectly, orally or in writing) about the defective-nature of the product; and were otherwise negligent.

129.    Upon information and belief despite the fact that the Defendants knew or should have known that their drywall caused unreasonably dangerous side effects due to its manufacturing defects, the Defendants continued to manufacture, process, distribute, deliver, supply, market and/or sell drywall to the Plaintiffs, and/or the consuming public.

130. The Defendants knew or should have known that consumers such as Plaintiffs would foreseeably suffer damage and injury, both physical and economic, and/or be at an increased risk of suffering damage and injury as a result of the Defendants' failure to exercise ordinary care, as well as the Defendants' negligent manufacturing process, as set forth herein.

131. The Defendants' actions and/or inactions, as set forth herein, by virtue of violating statutes, ordinances and/or rules and/or regulations, constitute negligence per se.

132. The Defendants knew or should have known that homeowners such as the Plaintiffs would foreseeably suffer injury, and/or be at increased risk of suffering injury, including personal injuries and financial harm, as a result of the Defendants' failure to exercise ordinary care, as well as the Defendants' negligent manufacturing process, as set forth above.

133. The Defendants' negligence was the proximate cause of Plaintiffs' damages, injuries, harm and economic loss which they suffered and will continue to suffer.

134. By reason of the foregoing, Plaintiffs experienced and/or are at risk of experiencing serious and dangerous side effects, as well as have incurred financial damage and injury.

135. As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, medical expenses, incidental and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs, and/or medical care, attention, and services.

WHEREFORE PREMISES CONSIDERED, Plaintiffs each demand judgment of and from the Defendants, jointly and severally, for their damages in the amount of Two Million Five

Hundred Thousand Dollars ($2,500,000.00) plus punitive damages in an amount sufficient to punish the Defendants and deter the Defendants from such reckless and oppressive conduct in the future, prejudgment interest, post judgment interest and all costs.

## COUNT XII

136.    Plaintiffs adopt by reference and reallege each and every allegation of all paragraphs of this Complaint the same as though specifically set out herein.

137.    The Defendants were at all relevant times in the business of designing, engineering, surveying, testing, inspecting, servicing, providing, distributing, maintaining, engineering, developing, supplying, building, creating and selling drywall for residential homes, structures and substructures of residential homes.

138.    After the Plaintiffs moved into their new home or rebuilt their home, the Plaintiffs became ill requiring the Plaintiffs to incur substantial medical bills.  The Plaintiffs' past, present and future medical problems are a direct result of, or caused by, the toxic drywall that the Defendants negligently caused to exist in Plaintiffs' home.  It has subsequently been determined that toxic drywall was installed in the residence of the Plaintiffs and the home became contaminated with sulfur and other materials which grossly exceeded safe or acceptable levels. The toxic drywall rendered Plaintiffs' home unsafe for habitation, caused the home to be unreasonably dangerous, caused the ultimate evacuation of the houses by the Plaintiffs and caused illness and damages to the Plaintiffs.

139.    The Plaintiffs lived in their residential home for the period of time beginning in the late summer and fall of 2005 until 2010 when they discovered for the first time that toxic drywall was used in their residence.  The Defendants' failed to make the premises safe and the

Defendants' failed to warn the Plaintiffs of the unsafe condition. As a result of the Defendants' failures and negligence, the Plaintiffs have suffered severe injuries and damages including various physical ailments, mental anguish and emotional distress.

140.    The Defendants, on all occasions, failed to warn the Plaintiffs of the potential dangers in their home, the unsafe and dangerous conditions in their home, the unsafe and dangerous use of toxic drywall, and the negligent construction of Plaintiffs' home.

141.    As a direct result of the negligence of the Defendants, the Plaintiffs have suffered medical problems and their home has become uninhabitable. As a result of the negligence, as aforesaid, the formulation and accumulation of sulphur and other toxic materials have caused the home of the Plaintiffs to be uninhabitable, unsafe and unreasonably dangerous and the Plaintiffs were forced to evacuate their home. The formulation and use of toxic drywall and other toxic materials have rendered the Plaintiffs' home, furniture, fixtures, and worldly goods useless and worthless.

142.    The actions of the Defendants were willful, wanton, gross and reckless and their acts constitute intentional infliction of emotional distress and were intended to inflict damages and harm on the Plaintiffs. The acts of the Defendants constitute intentional infliction of emotional distress, fraud and gross and wilful negligence and the Plaintiffs each are entitled to their actual property damages in the sum of Two Million Five Hundred Thousand Dollars ($2,500,000.00) plus punitive damages in an amount sufficient to punish the Defendants and deter the Defendants from such reckless and oppressive conduct in the future.

WHEREFORE PREMISES CONSIDERED, Plaintiffs each demand Judgment of and from the Defendants, jointly and severally, for their damages in the amount of Two Million Five

41

Hundred Thousand Dollars ($2,500,000.00) plus punitive damages in an amount sufficient to punish the Defendants and deter the Defendants from such reckless and oppressive conduct in the future, prejudgment interest, post-judgment interest and all costs.

## COUNT XIII

143.    Plaintiffs adopt by reference and reallege each and every allegation of all paragraphs of this Complaint the same as though specifically set out herein.

144.    The Defendants, in all respects, failed to properly manufacture, design, construct, and sell the toxic drywall that was installed in the Plaintiffs' residence and failed to manufacture, design, construct, and sell the toxic drywall with the degree of skill and workmanship possessed by those in the drywall manufacturing and distributing business. Defendants, as agents of each other, constantly assured the Plaintiffs that their drywall was prepared in accordance with normal procedures in the home building industry; that the drywall was standard in the industry; and that the drywall was properly manufactured, designed, and sold.

145.    The Plaintiffs, after being assured by the Defendants that the Chinese drywall had been properly designed, engineered, manufactured and sold discovered that the drywall in their home was actually toxic Chinese drywall that had been improperly designed, engineered, manufactured and sold. As a direct and proximate result of the negligence of the Defendants, the Plaintiffs sustained damages as follows:

KYLE E. NEWMAN                      $2,500,000.00

DENISE G. NEWMAN                   $2,500,000.00

42

WHEREFORE PREMISES CONSIDERED, Plaintiffs each demand Judgment of and from the Defendants, jointly and severally, for their damages in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) plus punitive damages in an amount sufficient to punish the Defendants and deter the Defendants from such reckless and oppressive conduct in the future, prejudgment interest, post judgment interest and all costs.

AD DAMNUM

WHEREFORE PREMISES CONSIDERED, Plaintiffs each demand Judgment of and from the Defendants, jointly and severally, for their damages in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) plus punitive damages in an amount sufficient to punish the Defendants and deter the Defendants from such reckless and oppressive conduct in the future, prejudgment interest, post judgment interest and all costs.

Respectfully submitted, this the 22nd day of December, 2010.

By: _____
JOHN L. HUNTER

John L. Hunter
Mississippi Bar No. 2913
Cumbest Cumbest Hunter & McCormick
P. O. Drawer 1287
Pascagoula, MS 39568-1287
(228) 762-5422

Wayne E. Ferrell, Jr.
Mississippi Bar No. 5182
Attorney at Law
405 Tombigbee Street
Post Office Box 24448
Jackson, Mississippi 39225-4448
(601) 969-4700

44