**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| **THIS DOCUMENT RELATES TO:**<br><br>*Germano v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, **Case No. 09-6687 (E.D. Va.)**;<br><br>*Gross v. Knauf Gips, KG*, **Case No. 09-6690 (E.D. La.)**;<br><br>*Wiltz v. Beijing New Building Materials Public Limited Co.*, **Case No. 10-361 (E.D. La.)**;<br><br>*Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, **Case No. 11-1672 (S.D. Fl.)**;<br><br>*Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, **Case No. 11-1395 (E.D. La.); and**<br><br>*Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, **Case No. 11-1673 (E.D. Va.).** | |

**TAISHAN'S MEMORANDUM IN SUPPORT OF MOTION TO MODIFY SCHEDULING ORDER**

**I.      INTRODUCTION**

On Friday, May 15—for the second time in less than a month—Plaintiffs filed another expert declaration/affidavit that substantially changes their class composition and their class damages theories. In direct response to Taishan's challenges to Plaintiffs' approach for recovering almost $1.3 billion in aggregated class damages, Plaintiffs and their substituted expert

suddenly dropped from the class nearly 1000 properties (nearly one-third of the class) and removed an entire damages category from class treatment.[1]

This litigation is not ready for an evidentiary damages assessment on June 9 because Plaintiffs have derailed from the damages track that they themselves laid down in their October 2014 Motion for the Assessment of Class Damages. That derailment raises several problems that require postponing any evidentiary hearing. *First*, Plaintiffs need to send out a new supplemental notice because their current damages scheme bears little resemblance to the prior supplemental class notice sent to claimants, many of whom are no longer class members, and all of whom have been denied due process. *Second*, Plaintiffs' significant changes further underscore the need for Taishan and its rebuttal experts to receive 64,000 critical, property-specific documents, which still have not been produced, and for Taishan to have the time to analyze those documents and Plaintiffs' new plan. *Third*, Plaintiffs have so remade their damages request that they have abandoned the damages motion at the center of the planned hearing;

Taishan does not propose jettisoning the June 9 hearing date, but renews by formal motion its prior request to reserve that date for oral argument only. As set forth in Taishan's Proposed Hearing Plan (Dkt No. 18881), the Court should first address the enduring threshold legal problems with Plaintiffs' protean class damages scheme, including the direct violations of settled Fifth Circuit law prohibiting:

---

[1] "In light of the scrutiny imposed by the Defendants, at Plaintiffs' request, Mr. Inglis amended his report to remove all calculations of alternative living expenses (hereinafter 'ALE') and to remove remediation damage calculations for former, not current, property owners." Dkt No. 18946-2 at 22.

- Aggregate tort awards
    - *In re Fibreboard Corp.*, 893 F.2d 706 (5th Cir. 1990)
- Extrapolated damages calculations
    - *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297 (5th Cir. 1998);
- Damages formulas based on averages that ignore property-specific differences
    - *Corley v. Orangefield Indep. School Dist.*, 152 F. App'x 350 (5th Cir. 2005);
- Use of estimates where repairs have been completed and actual cost data is available
    - *Volkswagen of Am., Inc. v. Robertson*, 713 F.2d. 1151, 1169-71 (5th Cir. 1983);
- Class certification where liability is already established and all class members are already named plaintiffs
    - *Robertson v. Monsanto Co.*, 287 F. App'x 354 (5th Cir. 2008).

Due process concerns for both Defendants and class members cautioin the Court and the parties not to rush headlong into a damages assessment hearing. The Court should modify its scheduling order accordingly.

## II. ARGUMENT

### A. Plaintiffs Should Send a New Supplement Class Notice Before Any Damages Assessment Hearing

Plaintiffs' current damages plan with a reduced class and only one category of damages set for class treatment is contrary to the detailed supplemental class notice that Plaintiffs requested (Dkt. No. 18086-18), the Court approved (Dkt. No. 18216), and Plaintiffs sent out to 3,514 property owners in December 2014 (Dkt. No. 18238-1). Taishan does not believe there should be any evidentiary hearing for class damages because of the legal infirmities in Plaintiffs' damage model and calculations. But any such hearing should at the very least be postponed until after Plaintiffs serve a new supplemental class notice to cure the obsolete supplemental notice.

3

Rule 23(d)(1)(B) "provides for a discretionary notice to class members by the Court to keep class members apprised of important developments in the litigation." *Turner v. Murphy Oil USA, Inc.*, 2006 WL 286009, *2 (E.D. La. Feb. 6, 2006) (interpreting former Rule 23(d)(2)).  Plaintiffs have violated the due process rights of claimants whom Plaintiffs previously told were class members, but now have dropped.  Plaintiffs also have violated the due process rights of claimants who are still in the class, but who have had no chance to opt out after Plaintiffs serial changes from the damages scheme laid out in the supplemental notice.

This Court has recognized that "[p]art of the Court's role in class action litigation is to protect the class and to provide neutral information to class members such that their decisions to opt-out of the class are fully informed . . ." *Turner*, 2006 WL 286009, at *2.  The Court has noted the importance in tort litigation to inform class members "about the *nature* of the litigation, that is, its scope and potential consequences for class members."  *Id.* (emphasis in original).  Further, "notice is meant to ensure that the class members receive notice prior to settlement or adjudication on the merits; thus, notice can occur at any point prior to a trial, dispositive motion, or settlement."  *Id.*  The opt-out period should occur *before* adjudication on the merits because it "is intended to avoid" the "one-way intervention" problem.  *Id.* (citing *Schwarzchild v. Tse*, 69 F.3d 293, 295 (9th Cir.1995)).  Other courts have recognized that a new notice is appropriate where class counsel has "refined" their damages theory after certification and excluded class members.  *Negrete v. Allianz Life Ins. Co. of North America*, 287 F.R.D. 590, 597 (C.D. Cal. 2012); *accord Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401, 1409-11 (9th Cir. 1989) (discussing importance of class notice after class changes).

Plaintiffs' damages motion itself recognizes the need to serve a new notice when the "class proceedings do not seek recovery of <u>all damages</u> incurred by class members.  (Dkt.

No. 18086-1 at 8 (emphasis in original)).  For that reason, when Plaintiffs came up with their first damages plan after the first opt-out period following class certification, Plaintiffs proposed and the Court granted a second opt-out period that allowed "class members to consider whether the proposed class damages model comports with their original decision to remain in the class or opt out." *Id.*[2]

Plaintiffs must serve a new supplemental notice because their former supplemental notice looks nothing like the current damages plan.  The December 2014 supplemental notice laid out in great detail the theories of recovery, the aggregate dollar amounts, and the methodologies in the damages motions and in the supporting affidavit of the first designated expert, Ronald Wright.  The supplemental notice informed the former class that "plaintiffs have requested that the Court assess a total of $1,263,330,881.19 in damages against Taishan." (Dkt. No. 18086-18 at 3).  That is no longer true.  The supplemental notice also enumerated that requested lump-sum award was comprised of three categories:  $782,944,292.37 in remediation costs, $95,186,588.82 for alternative living expenses (ALE), and $385,200,000.00 for loss of use and enjoyment (LOUE). *Id*.  Those categories and those figures are no longer accurate.

The supplemental notice also specified the methodology used Plaintiffs' first designated expert to support the first two items of recovery.[3]  *Id.*  As set out in the supplemental notice, the only property-specific variation in the methodology was square footage, and the notice told class members that any recovery would depend on the size of their building.  *Id.* ("Larger homes would be entitled to a higher recovery while smaller homes would be entitled to a lower recovery.").  The remediation cost methodology was to use a single figure of $101.83/sq. ft.,

---

[2] Although Plaintiffs' first plan sought class relief based on 3,852 properties, Plaintiffs sent out 3,514 copies of the supplemental notice.  (Dkt. No. 18238-1).

[3] Plaintiffs submitted no evidence at all to support their arbitrary LOUE request for $385 million.

5

multiplied by the alleged class total of 7,688,739 square feet. *Id.*[4] The ALE methodology similarly multiplied a single cost figure by the total square footage for the entire class. *Id.*

But Plaintiffs' damages scheme no longer looks anything like that. It has changed dramatically—in form, methodology and dollar amount—not once, but twice, in less than a month. Most significantly, Plaintiffs have now dropped an entire category of damages—Alternative Living Expenses (ALE). Plaintiffs' supplemental class notice explicitly identified ALE as a damages component and represented more than $95,000,000 in claimed damages. But Mr. Inglis reports that he was "instructed [by the PSC] . . . to delete" ALE from his damages calculation. (Inglis Declaration, ¶ 2).[5] Class members have a right to know of that dramatic change in Plaintiffs' approach and to make their opt-out decisions accordingly.

Plaintiffs have substantially altered their damages plan in other ways. In April 2014 Plaintiffs withdrew Mr. Wright and substituted George J. Inglis, who submitted an April 27, 2015 Affidavit changing the damages plan and then submitted a May 15 Declaration changing the plan yet again. In his Affidavit, Mr. Inglis addressed "property damages to the class of 3,739 buildings"—113 fewer than Mr. Wright. (Dkt. No. 18877-2 at ¶ 9). After Taishan pointed out the effect of different remediation costs in different parts of the country, Mr. Inglis used a different remediation cost estimation methodology to recognize so-called "localized cost factors." *Id.* at ¶ 4. Mr. Inglis received square footage for most buildings from BrownGreer. *Id.* at ¶ 2. Mr. Inglis supplied square footage for 497 buildings using an averaging calculation different from Mr. Wright's. *Id.* at ¶ 2. Mr. Inglis testified to an aggregated figure for

---

[4] Mr. Wright arbitrarily assigned missing square footage to approximately 34% of the class properties based on the average square footage (1,996) of the remaining properties. (Dkt. No. 18086-3 at ¶ 2).

[5] The Inglis Declaration was filed under seal and lodged with the Court under Dkt No. 18946.

6

remediation plus ALE of $879,261,476.  He calculated that in a table that set out a remediation plus ALE amount for each class property.

Explicitly because of "the scrutiny imposed by the Defendants" (Dkt. No. 18946-2 at 22), Mr. Inglis has now submitted a May 15 Declaration in which he has "been asked to determine the remediation damages for a class of 2,888 buildings," almost 1,000 fewer than set forth in the damages motion.  (Inglis Declaration at ¶ 2).  He explains that the "buildings formerly owned by class members have been deleted." *Id.*

So, although Plaintiffs' motion and the supplemental class notice state that Plaintiffs are seeking nearly $1.3 billion for 3,852 properties, that amount has been cut in half by Mr. Inglis' new opinion that "property damages to the class of 2,888 buildings . . . are $607,361,039.00. *Id.* at ¶ 8.  Due process requires that everyone who got the former supplemental notice receive a new notice so that claimants who are no longer in the class can figure out how to protect their interests and claimants who are still in the class can consider whether to exercise their Rule 23(b)(3) right to opt-out of this very different procedure.

In a proper class adjudication, Plaintiffs should also explain how their new phased plan works and how it will affect remaining class members and former class members.  The current plan seems to operate in direct contrast to the procedure laid out in the supplemental notice, which told class members that they would be entitled "**only**" to the damages adjudication "[i]n the assessment of damages hearing." (Dkt. No. 18086-18 at 3 (emphasis in original)).  The supplemental notice stated that "[a]ll other claims for relief and other forms of damages are **not** being sought and will be precluded from relief." *Id.* (emphasis in original).

But the current scheme appears to envision treating only remediation cost at the damages hearing, while having "reserved" other forms of damage "for phase three of these damages

7

proceeding[s]."  (Dkt. No. 18946-2 at 64).[6]  By reserving most of the damages issues for later individualized treatment—contrary to the supplemental notice—Plaintiffs leave no argument that class treatment is superior here.  The list of issues that Plaintiffs propose for later individualized treatment is remarkable:

- All damages for former class members whose claims have now been dropped from class treatment;
- Alternative living expenses for current class members
- Set-off issues for all class members who have received payment from other settlements or from elsewhere (e.g., insurance);
- Unspecified "forms of personal property damage, hedonic damages, and other individualized damages";
- Loss of use and enjoyment in whole or in part.

In light of these recent and fundamental shifts in the Plaintiffs' approach, the assessment of class damages is simply not ready to be adjudicated on June 9.  The Court should not hold an evidentiary damages hearing until (a) the Court has determined the legality of Plaintiffs' scheme, and then (b) Plaintiffs have sent out a new supplemental class notice to inform class members of the new damages plan, give them another chance to opt out, and alert nearly 1000 property owners who received the previous supplemental notice that Plaintiffs have now dropped them and that their interests are no longer being pursued in the class process.[7]

---

[6] Not only do class members lack notice of this new "phase three," Taishan has no idea what Plaintiffs are talking about.  What is "phase three," and what is it supposed to entail?

[7] Additional notice to the class cannot be deferred until after the evidentiary hearing without violating Defendants' due process right to notice and opt out before the merits have been addressed.  *See Turner*, 2006 WL 286009, at *2 (citing *Schwarzchild* on the "phenomenon of one-way intervention").

### B. Taishan Needs More Time to Receive Critical Evidence and Assess the New Damages Scheme.

Plaintiffs' moving target damages plan is not fair to Taishan. Less than a month before the hearing, only two business days before his deposition, and after Taishan has submitted its rebuttal expert reports, Mr. Inglis has substantially altered his methodology and overall damages opinion. In addition to all the changes described, Mr. Inglis responded to Taishan's criticism of the statistical problems in Plaintiffs' plan by adding a two-paragraph unsigned statement from someone named Michael A. Grossman, who claims to vouch for the square footage averaging calculations (but does not address the main statistical problem of extrapolating from the unrepresentative *Germano* intervenors). (Inglis Dec. at Exh. 11). Due process requires that Taishan and its experts have sufficient time to assess that and all of the rest of Mr. Inglis' new testimony and respond to it, both with supplemental expert affidavits and in the formulation of strategy and evidence for any damages hearing.

Equally important, the changes in the class membership and property attributes like square footage highlight that the Court should not try to adjudicate evidentiary damages issues until after BrownGreer has produced more than 64,000 documents related to individual claimants. The Plaintiffs' entire damages calculation, and Mr. Inglis' putative expert opinion, rest entirely on a summary spreadsheet that purports to itemize each class claimant and related property, including alleged square footage. But Taishan has been provided with only the summary document without any of the underlying documentation and data supporting the Plaintiffs' end result.

Taishan requested those documents weeks ago, and BrownGreer agreed to produce them. BrownGreer delayed that production and then this past weekend explicitly refused to produce. Due process requires that Taishan receive those documents and have sufficient time to review

9

them to prepare its defenses to class damages. There is simply no justification under the Federal Rules of Civil Procedure or otherwise for requiring the defendants to proceed with a damages assessment based on the Plaintiffs' submission of summary information while denying all access to the underlying support. Taishan has filed contemporaneously an emergency motion to compel those voluminous critical documents.

### C. Plaintiffs Have Abandoned Their Damages Motion

The Court also should modify its May 13 Scheduling Order because Plaintiffs have abandoned the damages motion that sits at the heart of the June 9 hearing. The Court could not grant the relief requested in the motion because it is so different from the relief that Plaintiffs will apparently seek at the June 9 hearing. As a formal matter, the damages motion should be denied out of hand because it violates FRCP 7(b)(1)(C), which requires that a motion "state the relief sought." The purpose of Rule 7(b)(1) is to give "the court and the opposing party notice of the substance of the basis for the requested order," *Kelly v. Moore*, 376 F.3d 481, 484 (5th Cir. 2004). Because Plaintiffs' damages scheme is a constantly moving target, Taishan does not know, for example, whether Plaintiffs are still seeking LOUE for which they have submitted no evidence. Taishan also does not know what Plaintiffs have in mind for later individualized phases—which claims will be adjudicated for whom and how. Just as courts deny motions that lack any statement of the relief sought, so this Court should deny a motion when the statement of relief sought has become a complete fiction—essentially a nonstatement. *See, e.g.*, *Traylor v. Kohl's Dept. Store*, 2010 WL 2667384, *1 (D. Nev. June 29, 2010) ("It is not the role of the court to guess at what a party requests.").

### III. CONCLUSION

The Court should allow additional time—consistent with due process—to permit Plaintiffs to serve a new class notice and to permit Taishan and its experts a fair opportunity to

assess Plaintiffs' new plan and to receive and analyze 64,000 property-specific documents that BrownGreer still has not produced. The Court should grant Taishan's Motion and modify its May 13 Scheduling Order to put off the evidentiary hearing and reserve June 9 for oral argument on the substantial threshold legal problems with Plaintiffs' current class damages scheme.

Dated:  May 18, 2015

Respectfully submitted,

/s Michael P. Kenny
Bernard Taylor, Esq.
Georgia Bar No. 669625
Michael P. Kenny, Esq.
Georgia Bar No. 415064
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
mike.kenny@alston.com
*Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*

Alan Dean Weinberger
LA Bar No. 13331
HANGARTNER, RYDBERG & TERRELL, LLC
One Shell Square
701 Poydras St., Suite 310
New Orleans, Louisiana  70179
Phone:  (504) 434-6815
Fax: (504) 522-5689
aweinberger@hanrylaw.com
*Local Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*

11

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 18th day of May, 2015.

   /s Michael P. Kenny
Michael P. Kenny, Esq.
Georgia Bar No. 415064
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
mike.kenny@alston.com
*Counsel for Taishan*