# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  CHINESE-MANUFACTURED | * | **MDL 2047** |
| **DRYWALL PRODUCTS** | * | |
| **LIABILITY LITIGATION** | * | **SECTION L** |
| | * | |
| | * | **JUDGE FALLON** |
| **This document relates to All Cases** | * | |
| | * | **MAGISTRATE JUDGE WILKINSON** |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## REPLY IN SUPPORT OF BANNER SUPPLY CO.'S MOTION TO ENFORCE INJUNCTION REGARDING CLAIMS BROUGHT BY PLAINTIFFS DANIEL AND SHONNA BLONSKY

Defendant, Banner Supply Co. ("Banner"), submits this Reply to Plaintiffs Daniel and Shonna Blonsky's Response (Doc. No. 18734-1) to Banner's Motion to Enforce Injunction Regarding Claims Brought by Plaintiffs Daniel and Shonna Blonsky (Doc. No. 18495).

In Plaintiffs' Response, Plaintiffs make two arguments:  (1)  that Plaintiffs were not Class Members to the Banner MDL Settlement Agreement ("Settlement" or "Banner Settlement") because they "did not have 'claims' against Banner as of the date of the bar order;" and (2) that "the injunction sought . . . would violate the terms of the Anti-Injunction Act, 28 U.S.C. § 2283." Doc. No. 18734-1, at pp. 2-3.  Plaintiffs are incorrect on both points.[1]

## I.        Plaintiffs Were Class Members to the Settlement

Plaintiffs argue that they are not included within the definition of "Class" or "Class Members."  *Id*.  In support, Plaintiffs argue that their claims are not encompassed within the definition of "Released Claims" under Section 3.1 of the Banner Settlement Agreement, because the term used in the definition of "Class Members" is the undefined and uncapitalized "claims,"

---

[1] It should be noted that any ruling on this Motion may implicate similar issues that could be raised in the future by similar plaintiffs as to the Global and INEX MDL Settlement Agreements.

not the defined and capitalized "Released Claims." *Id*. at p. 2 n.1. Plaintiffs also contend that their claims against Banner had not accrued when the Court's Bar Order was issued because Plaintiffs could not have reasonably known of their claims at that time. *Id*. at p. 2.

Plaintiffs attempt to bootstrap or create an ambiguity in the Banner Settlement Agreement by tying the definition of "claim" to *accrual* without examining the face of the Settlement itself. Section 1.15 of the Settlement defines "Released Claim" or "Released Claims" as "[a]ny and all claims as more fully identified in Section 3.1 *et seq.*" Doc. No. 10033-3, at p. 6. Section 3.1 further provides, in pertinent part:

> "Released Claim" or "Released Claims" shall mean any and all claims against Banner . . . (a) arising out of, in any manner related to, or connected in any way with Chinese Drywall, or the collective mitigation of, response to, and/or recovery from the damage caused by Chinese Drywall and/or any act and/or failure to act related in any way to any of the foregoing . . . and/or (b) for any and all losses, damages and/or injuries arising from, in any manner related to, or connected in any way with all and/or any of the foregoing, including but not limited to, any and all claims that a Class Member has, may have, or may have had, <u>regardless of whether such claim is known or unknown, filed or unfiled, asserted or as yet unasserted, or existing or contingent</u> . . . based upon or alleging any act, conduct, status or obligation of any person or entity (including the Settling Defendants) and/or any source of liability whatsoever, and regardless of the legal theory or theories of damages involved . . . . The Term "Released Claim" or "Released Claims" includes, but is not limited to, the following claims arising out of, in any manner related to, or in any way connected with, Chinese Drywall, the Litigation, or other Related Actions:
>
> ….
>
> 3.1.11. For <u>any</u> right legally assertable by the Class or any Class Member <u>now or in the future</u>, whether the claim is personal to each individual, is derivative of a claim now or in the future, or as assignee, successor, survivor, beneficiary, subrogee, or representative of a Class Member.
>
> 3.1.12. For a <u>past, present, future, known, unknown, foreseen, unforeseen, contingent</u>, nascent, mature claim or a claim arising at law, in equity or otherwise, including but not limited to, claims for survival and wrongful death.

*Id.* at pp. 6-8 (emphasis added).  Sections 3.3.1 and 3.3.2 of the Settlement then state, in pertinent part:

> 3.3.1   As of the Effective Date of the Settlement, and with the approval of the Court, <u>all Class Members</u> . . . hereby fully, finally, and forever release, waive, discharge, surrender, forego, give up, abandon, and cancel any and all <u>Released Claims</u> (as defined in Section 3,1 against the Settlement Defendants[.]

> 3.3.2   As of the Effective Date of the Settlement, <u>all Class Members</u>, and anyone claiming by, through and/or on behalf of any of them, will be forever barred and enjoined from asserting any and/or all <u>Released Claims</u> against the Settling Defendants.

*Id.* at p. 9 (emphasis added).  The above provisions make clear that the "Class Members" unambiguously waived and released all "Released Claims," including those present or future, known or unknown, foreseen or unforeseen, filed or unfiled, and asserted or unasserted, which arose from, or otherwise related to, Chinese Drywall purchased from, supplied, distributed, marketed, used, sold, or delivered by Banner.  The addition of the words "unknown," "future," and "unforeseen" necessarily implies that the "claims" released by the "Class Members" were not tied to their *accrual*, which generally requires knowledge of an injury or negligent act.

Plaintiffs also argue that "class action jurisprudence" supports their position that the definition of "claim" should be tied to the *accrual* of Plaintiffs' claims, rather than consistent with the Settlement's definition of "Released Claims."  Doc. No. 18734-1, at p. 3.  The entirety of Plaintiffs' purported "class action jurisprudence" consists of a single case – *Haddad v. Arnold*, 784 F. Supp. 2d 1284 (M.D. Fla. 2010).

*Haddad* dealt with, among other things, the application of a class action settlement reached in *Dubois v. Levine*, Case No.: 4:03-CV-107-SPM ("*Dubois*") from the U.S. District Court for the Northern District of Florida, to a Medicaid-eligible patient's claims alleging that the Florida Agency for Health Administration (the "Agency") wrongfully refused to provide her

3

with in-home based health care services in violation of the American with Disabilities Act and Rehabilitation Act. The Agency argued that the *Haddad* plaintiff was collaterally estopped from pursuing her claims against the Agency based on the *Dubois* settlement agreement (the "*Dubois* Settlement"), class definition, and order of dismissal. The court disagreed, relying upon the explicit terms of the *Dubois* Settlement in support of its decision.

A review of the actual terms of the *Dubois* Settlement reveals that it is markedly different from the Banner Settlement. The explicit terms of the *Dubois* Settlement show that the class membership was time-limited. By its terms, the *Dubois* Settlement ended at the end of FY 2008-2009, i.e., June 30, 2009. Specifically, ¶ C(1) of the *Dubois* Settlement states:

> DOH shall make it a priority to seek funding that will be sufficient to expand the TBI/SCI Waiver program by a minimum of 50 slots *for FY 2006-07, 75 slots for FY-2007-08 and 75 slots for FY 2008-09*. DOH shall use its best efforts to have its legislative budget request, with each of *these* stated waiver slot increases for each year, included as part of the Governor's recommended budget and to obtain the necessary legislative support and funding for this expansion of waiver slots. DOH shall support this request and shall use its best efforts to obtain legislative approval of the expansion in each of *these* fiscal years.

Exhibit A, at ¶ C(1). Thus, any failure to provide Medicaid services to the *Haddad* plaintiff beyond June 30, 2009, was neither covered, nor contemplated, by the *Dubois* Settlement.[2] Contrary to the "unknown," "unfiled," "unforeseen," "future," "unasserted," and "contingent" claims released by the "Class Members" in the Banner Settlement, there is nothing in the terms

---

[2] Other references in the *Dubois* Settlement also show that it had a limited application for a set period of time: (1) at ¶ B(5), it was agreed that "[t]hrough January 2009, DOH shall provide Plaintiffs' counsel with a copy of any proposed changes to IOPs at least 30 days prior to their authorization"; (2) at ¶ B(6), "[t]hrough January 2009, DOH shall provide Plaintiffs' counsel with a copy of any proposed changes to the brochures at least 30 days prior to authorization"; (3) at ¶ B(9), "Plaintiffs agree that all requirements upon Defendants of copies or notice that run through January 2009 contained in this agreement are fully complied by Defendants by sending such copies or notice to Southern Legal Counsel, Inc. at the address supplied below"; and (4) at ¶ C(3), "through June 2009, AHCA agrees to provide Plaintiffs' counsel with copies of any approved amendments or renewals, to the state's current TBI/SCI Waiver Program application (approved as of June 2002) within 30 days of notification of approval by CMS (for approved amendments), including but not limited to any amendments to the number of waiver slots, applied for and approved by CMS." *See* Exhibit A (emphasis added).

of the *Dubois* Settlement that precluded a plaintiff from litigating against the Agency after June 30, 2009.

Finally, in footnote 2, Plaintiffs argue that if they are included in the Class, the Settlement would be unfair and unenforceable.  Doc. No. 18734-1, at p. 3.  But this contradicts the Court's earlier finding that the Settlement was fair, reasonable, and adequate.  Doc. No. 16570, at p. 21. Plaintiffs also infer that notice was not disseminated appropriately.  Doc. No. 18734-1, at p. 3. This also contradicts the Court's earlier finding that "Notice was disseminated to the Banner Class pursuant to this Court's Order dated August 11, 2011 [Rec. Doc. No. 10064]."  Doc. No. 16570, at p. 26; *see also In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, MDL 2328, 2014 WL 7407492, at *16 (E.D. La. Dec. 31, 2014) ("due process does not require *actual* notice to all class members who may be bound by the litigation").

## II.    The Court's Enforcement of its Injunction and/or Re-Issuance of an Injunction Does Not Violate the Anti-Injunction Act

Plaintiffs also argue that the injunction sought by Banner would violate the Anti-Injunction Act ("AIA"), 28 U.S.C. § 2283.  Doc. No. 18734-1, at pp. 3-4.

First, it should be noted that the Court has already issued an injunction barring Plaintiffs from filing suit against Banner, and Plaintiffs have already violated and continue to violate the Court's injunction as stated in its February 7, 2013 Order and Judgment.  Doc. No. 16570, at p. 25 ("Any and all Banner Class Members, including, but not limited to, those who have not properly opted out of the Banner Class, are enjoined and forever barred from maintaining, continuing, prosecuting, and/or commencing the Litigation, Related Actions, Related Claims, or any action, pending or future, against the Banner Settling Defendants that arises from, concerns, or otherwise relates, directly or indirectly, to Chinese Drywall.").  In that sense, the Court's

issuance of an additional injunction is not necessarily required to enjoin Plaintiffs because they are already enjoined.

Second, the Court's injunction contained in the February 7, 2013 Order and Judgment and any reissuance of that injunction did not and would not violate the AIA because the Settlement has been completed and the injunction is necessary in aid of the Court's jurisdiction.  The Court has already issued a similar injunction in this case on June 9, 2011.[3]  Doc. No. 9415.  The Court's June 9, 2011 ruling contains a detailed analysis of the All Writs Act, the AIA, and an exception to the AIA when an injunction is "is necessary in aid of jurisdiction."  *See id.* at pp. 5-13.  As the Court previously found:

> In the present cases, the exception to the Anti-Injunction Act which would authorize this Court to enjoin related state court proceedings . . . is the necessary in aid of jurisdiction exception; Congress has not issued an Act authorizing the injunction, nor has the Court issued a judgment which would be compromised by the injunction. The Supreme Court has stated regarding the necessary in aid of jurisdiction exception "some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coast Line R. Co.*, 389 U.S. 281, 295 (1970).
> . . .
> Guided by the foregoing jurisprudence the Court upholds the stay in the Preliminary Approval Order pursuant to its authority under the All Writs Act and the Anti-Injunction Act's necessary in aid of jurisdiction exception. The Court finds that a conceptional res has been created in this MDL litigation, as evidenced by the complexity of the proceedings and claims, the fact the litigation has been underway for almost two years, and the substantial amount of effort and expense put into the litigation by the parties and Court alike. The MDL litigation, as it more specifically pertains to the present Motion, is sufficiently progressed: the parties have engaged in extensive discovery and depositions, a motion for class certification seeking to create a class with claims against InEx was filed and set for hearing, a trial against InEx was scheduled and a case management order issued, and most importantly, the InEx Settlement Agreement is a class action settlement agreement of the InEx-related claims, the Court has preliminarily approved this Agreement, and notice is in the process of issuance. Additionally,

---

[3] The INEX MDL Settlement Agreement is substantively the same as the Banner MDL Settlement Agreement.

> an actual res has been created now by the InEx Settlement Agreement which
> involves the tendering of all of InEx's primary insurance coverage. Because there
> is a possibility that Southern's state court hearing and proceedings could affect
> and potentially disrupt the InEx Settlement Agreement and the res created
> thereby, these proceedings should be stayed.

*Id.* at pp. 6-7, 12.  The fact that the Court has given final approval to the Settlement is even more

reason to hold that the injunction is necessary in aid of the Court's jurisdiction.  *See id.* at pp. 9.[4]

Third, the Court's injunction contained in the February 7, 2013 Order and Judgment and

any reissuance of that injunction did not and would not violate the AIA because the injunction is

needed to protect and effectuate the Court's February 7, 2013 Order and Judgment.  As this Court

has noted in another case:

> The Anti–Injunction Act permits injunctions where necessary to "protect and
> effectuate judgments" of a federal court.  This exception, commonly called the
> "relitigation" exception, "authorizes an injunction to prevent state litigation of a
> claim or issue 'that previously was presented to and decided by the federal
> court.'"  *Smith*, 131 S.Ct. at 2375 (2011) (quoting *Chick Kam Choo*, 486 U.S. at
> 147, 108 S.Ct. 1684).  The exception "is founded in the well-recognized concepts
> of res judicata and collateral estoppel."  *Chick Kam Choo*, 486 U.S. at 147, 108
> S.Ct. 1684.
> . . .
> MDL transferee courts have applied the relitigation exception to effectuate
> judgments issued in connection with a global settlement.  *See In re Linerboard
> Antitrust Litig.*, 361 Fed.Appx. 392 (3rd Cir. 2010); *In re Prudential Ins. Co. of
> Am. Sales Practice Litig.*, 261 F.3d 355 (3rd Cir. 2001).

*In re Vioxx Products Liab. Litig.*, 869 F. Supp. 2d 719, 725 (E.D. La. 2012).  In this case, the

Court has issued the February 7, 2013 Order and Judgment, and the injunction was and is needed

---

[4] "In practice, the Circuit Courts have been most willing to uphold an injunction pursuant to the in aid of jurisdiction
exception in the MDL or complex litigation context when settlement is complete or imminent in the federal court,
and often after preliminary or final certification of a class.  *See In re Diet Drugs*, 282 F.3d at 236-37 (holding
injunction appropriate in 'the final stages of this complex litigation,' that is, after conditional class certification and
preliminary settlement negotiated and approved by the federal court)(3d Cir. 2002); Battle, 877 F.2d at 880-82
(upholding injunction after federal court judgment on settlement agreement); *In re Baldwin*, 770 F.2d at 337-38
(holding injunction appropriate where 18 out of 26 class actions had settled and the remaining class were continuing
settlement negotiations); Carlough, 10 F.3d at 203-04 ('Here the prospect of settlement was indeed imminent'); *In re
Corrugated Container Antitrust Litig.*, 659 F.2d at 1333 (upholding injunction against pursuing suit in state court
after class certified and two settlements approved by the court); see also Wes, 37 Loy.L.A. L.Rev. at 1632; Wright
& Miller, 17A Fed. Prac. & Proc. Juris. § 4225."

to protect and effectuate that judgment to prevent Plaintiffs from litigating their case in state court despite being class members to the Settlement and releasing those claims.

Plaintiffs cite *Sandpiper Village Condominium Ass'n Inc. v. Louisiana-Pacific Corp.*, 428 F.3d 831 (9th Cir. 2005), for the proposition that the Court cannot issue an injunction because Plaintiffs are not making any claims against the Settlement, but that Ninth Circuit case is nonbinding and nevertheless distinguishable. *See* Doc. No. 18734-1, at p. 4. In *Sandpiper*, a building materials manufacturer ("Manufacturer") settled a large class action in federal court brought by owners of structures on which the Manufacturer's materials were installed. *Sandpiper*, 428 F.3d at 835. The settlement released, among other things, all class members' claims against the supply chain. *Id*. Several years later, a distributor of the Manufacturer's products ("Distributor") filed suit against the Manufacturer in state court seeking damages for having used the Manufacturer's materials in the siding it sold to its customers. *Id*. at 836. A jury awarded the Distributor $13.2 million. *Id*. at 838. The jury also found that none of the damages were covered by the settlement. *Id*.

The federal court then issued an injunction enjoining the state court from entering a judgment on a portion of the jury's damage award. *Id*. at 839. The federal court found that the jury verdict "wrongly include[d] damages expressly encompassed in and precluded by the nationwide class action settlement." *Id*. The federal court found that the injunction satisfied the relitigation and in aid of jurisdiction exceptions to the AIA. *Id*. On appeal, the Ninth Circuit found that the injunction did not satisfy either exception to the AIA. *Id*. at 843-53.

As to the in aid of jurisdiction exception, the Ninth Circuit found that it was inapplicable "because the state court action did not threaten the district court's jurisdiction over the [federal court action]." *Id*. at 844. The Ninth Circuit specifically distinguished another case, *Hanlon v.*

8

*Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), on the basis that the injunction in that case concerned the filing of a lawsuit in state court by a class member to a settlement.  *Id*. at 845. Because the Distributor was not a class member, "[t]he state court action could not threaten the court's jurisdiction . . . ."  *Id*. at 845-46.  Unlike the Distributor in *Sandpiper*, Plaintiffs are class members to the Settlement, are bound by that Settlement, and cannot be allowed to usurp this Court's jurisdiction over that Settlement by pursuing claims against Banner in state court.

As to the relitigation exception, the Ninth Circuit found that it was inapplicable "because the [state court] lawsuit did not challenge the res judicata effect of the class settlement."  *Id*. at 848.  Specifically, the Ninth Circuit found that "[s]ignificantly, [the Distributor] was not a member of the nationwide class."  *Id*.  Again, unlike the Distributor in *Sandpiper*, Plaintiffs are class members to the Settlement.  Likewise, Banner was also a party to the Settlement. Therefore, Plaintiffs' state court lawsuit challenges the res judicata effect of the Settlement, and an injunction meets the relitigation exception of the AIA.

## III.    Conclusion

For the foregoing reasons, the Court should enforce its injunction barring claims by Plaintiffs Daniel and Shonna Blonsky against Banner and further enjoin Plaintiffs Daniel and Shonna Blonsky from continuing to prosecute their claims against Banner.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**

*/s/ Kerry J. Miller*_____
**KERRY J. MILLER (#24562)
JAMES R. PARISH (#34017)**
201 St. Charles Avenue, Suite 3600
New Orleans, LA 70170
Telephone:     504.566.8646
Facsimile:     504.585.6946
Email:          kjmiller@bakerdonelson.com

***Counsel for Defendant, Banner Supply Co.***

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, and to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 18th day of May, 2015.

    **I FURTHER CERTIFY** that this document is being served this day on Daniel F. Blonsky via email (dblonsky@coffeyburlington.com).

*/s/ Kerry J. Miller*_____
KERRY J. MILLER