# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

DUBOIS, et al.,

       Plaintiffs,

v.                          Case No.  4:03-CV-107-SPM

CALAMAS, et al.,

       Defendants.

## SETTLEMENT

## RECITALS

WHEREAS, Plaintiffs, Michael Dubois, Melvin M. and Charles Smith, filed this lawsuit on April 11, 2003, on behalf of themselves and all others similarly situated concerning Defendants'[1] administration of Florida's Medicaid Waiver Program for persons with traumatic brain and spinal cord injuries which provides home and community based services; and

WHEREAS, the class certified as represented by the Plaintiffs in this lawsuit is defined as: all individuals with traumatic brain or spinal cord injuries who the state has already determined or will determine to be eligible to receive services from Florida's Medicaid Waiver Program for persons with traumatic brain and spinal cord injuries and have not received such services; and

---

[1]    Pursuant to Fed. R. Civ. P. 25(d)(1), Defendants hereby substitute the current Secretary of the Agency for Health Care Administration, Christa Calamas, for the former Secretary Alan Levine, and the current Secretary of the Department of Health, M. Rony Francois, for the former Secretary, John Agwunobi.

WHEREAS, Plaintiffs' lawsuit asserts claims under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*. and implementing regulations; Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 794(a) and implementing regulations; Title XIX of the Social Security Act (the Medicaid Act), 42 U.S.C. § 1396a *et seq*. and implementing regulations; and the Due Process Clause of the Fourteenth Amendment to the United States Constitution; and

WHEREAS, Defendants have opposed these claims in the course of this litigation; and

WHEREAS, the Plaintiffs and Defendants have voluntarily and knowingly and for the consideration set forth below, agreed to settle this lawsuit on the terms specified in this Settlement Agreement.

## SETTLEMENT AGREEMENT

NOW THEREFORE, Plaintiffs and Defendants enter into and do hereby stipulate to a Settlement Agreement ("Agreement") that imposes binding obligations upon the parties and their successors to the extent stated below and constitutes a resolution of the issues in this action.

## A. DEFINITIONS

As used throughout this Agreement, the following definitions apply:

1. The term "parties" refers to Plaintiffs and Defendants. As the term applies to Defendants, it includes her/his agents, employees and/or successors in office.

2. The term "CMS" refers to the federal Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services.

3.     The term "AHCA" refers to the State of Florida, Agency for Health Care Administration.

4.     The term "DOH" refers to the State of Florida, Department of Health.

5.     The phrase "TBI/SCI Waiver Program" refers to the Medicaid Waiver Program designed and requested by the Defendants and authorized by CMS and described on pages 1-5 and 1-6 of the Defendant developed Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook ("Handbook"), a copy of which is attached hereto as Exhibit "A" for ease of reference for the court and class members and which certain provisions of are incorporated by reference herein.

6.     The term "waiver slots" refers to the unduplicated number of individuals approved by CMS for enrollment at any one time in the TBI/SCI Waiver Program.

**B.     DUE PROCESS, APPLICATIONS FOR SERVICES, FREEDOM OF CHOICE, ASSESSMENTS FOR TBI/SCI WAIVER SERVICES, RULEMAKING, DISTRIBUTION AND NOTICE**

1.     In consultation with Plaintiffs' counsel, Defendants have developed a Handbook which includes, *inter alia*, policies and procedures concerning individuals' due process rights, applications for services, freedom of choice, assessments for services, and the waiting list for services. The Handbook encompasses many issues and matters that are beyond the scope of this litigation and Agreement, therefore, only certain selected provisions and pages of the Handbook, which are specifically referred to herein as being incorporated by reference, are considered to be part of the terms of this settlement. For ease of reference only, by class members and the court, the Handbook is attached hereto in its entirety. Defendants agree to make the Handbook, including all appendices thereto,

available on their websites. AHCA's website will have a link to the Handbook and the Handbook will be maintained on the Medicaid Fiscal Agent website. The Handbook has been promulgated in Florida's Administrative Code as part of Florida's administrative rules governing Defendants' actions. Fla. Admin. R. 59G-13.130.

2.     Defendants agree that all persons who apply for services will receive a written determination within 90 days of the date of their application which informs them whether they will be enrolled in the TBI/SCI Waiver Program, placed on the waiting list for services, whether additional information is needed to complete their application, and/or whether they are determined not to be eligible for services. Such notice will be provided using the "Notice of Decision and Fair Hearing" contained in the attached Handbook at Appendix pages G-2 and G-3.

3.     The attached provisions of the Handbook contained at page 2-5 (freedom of choice), page 2-38 (due process) and Appendix G, "Notice of Decision and Fair Hearing" at pages G-2 and G-3 (due process), in concert with applicable federal and state law and regulations, shall govern each of these specified matters for TBI/SCI Waiver Program services. The Handbook pages referred to in this paragraph are incorporated by reference herein.

4.     Nothing in paragraphs 2 and 3 above shall operate as an impediment to AHCA engaging in future rulemaking on the referenced subjects provided that any such rules are consistent with federal freedom of choice requirements contained at 42 U.S.C. § 1396n(c)(2) and federal due process requirements contained at 42 U.S.C. § 1396a(a)(3) and 42 C.F.R. § 431.200 et seq.. Any such rule changes shall not require any revisions to this Agreement.

4

5.      In addition to the Handbook, Defendants have developed Internal Operating Procedures ("IOPs") for the TBI/SCI Waiver Program. The IOPs provide guidance to case workers concerning the application, assessment, due process, enrollment and waiting list procedures for the TBI/SCI Waiver Program and shall be provided, upon request, by DOH to persons on the waiting list, as well as all participants in the TBI/SCI Waiver Program. Through January 2009, DOH shall provide Plaintiffs' counsel with a copy of any proposed changes to the IOPs at least 30 days prior to their authorization. The IOPs are also available on the BSCIP website.

6.      Defendants have also developed two brochures to provide information to applicants and enrollees concerning the application, assessment, due process, enrollment and waiting list procedures for the TBI/SCI Waiver Program.  These brochures and any updated versions, shall be offered by DOH to all applicants for the TBI/SCI Waiver Program and shall be distributed to all Brain and Spinal Cord Injury Program (BSCIP) offices in the state, the Florida Brain Injury Association, the Florida Spinal Cord Injury Resource Center, Centers for Independent Living, and the Advocacy Center for Persons with Disabilities and local offices of the Department of Children and Families.  These publications are also available on the BSCIP website.  Through January 2009, DOH shall provide Plaintiffs' counsel with a copy of any proposed changes to the brochures at least 30 days prior to authorization.

7.      Notwithstanding the substantial input by Plaintiffs' counsel concerning the content of the Handbook, IOPs and brochures, this Agreement does not limit the Plaintiffs' right to pursue any administrative challenges consistent with Florida's Administrative Procedures Act. §120.56, Fla. Stat. (2006).

5

8.      AHCA accepts this Settlement Agreement as notice that, through January 2009, Plaintiffs' counsel are interested parties to whom notice of rule adoption under Section 120.54(3)(a)(3), Fla. Stat., is due regarding rulemaking concerning the TBI/SCI Waiver Program.

9.      Plaintiffs agree that all requirements upon Defendants of copies or notice that run through January 2009 contained in this agreement are fully complied by Defendants by sending such copies or notice to Southern Legal Counsel, Inc., at the address supplied below.  This is without limitation as to any other means Plaintiffs' counsel subsequently propose that Defendants find acceptable.

## C.      WAIVER SLOTS AND FUNDING

1.      DOH shall make it a priority to seek funding that will be sufficient to expand the TBI/SCI Waiver Program by a minimum of 50 slots for FY 2006-07, 75 slots for FY 2007-08 and 75 slots for FY 2008-09.  DOH shall use its best efforts to have its legislative budget request, with each of these stated waiver slot increases for each fiscal year, included as part of the Governor's recommended budget and to obtain the necessary legislative support and funding for this expansion of waiver slots.  DOH shall support this request and shall use its best efforts to obtain legislative approval of the expansion in each of these fiscal years.

2.      To the extent that the expansion of the TBI/SCI Waiver Program referred to in paragraph (C)(1) depends upon federal funding or is subject to approval by CMS, AHCA shall use its best efforts to obtain such funding or approvals.

3.      Through June 2009, AHCA agrees to provide Plaintiffs' counsel with copies of any approved amendments or renewals, to the state's current TBI/SCI Waiver Program

application (approved as of June 2002) within 30 days of notification of approval by CMS

(for approved amendments), including but not limited to any amendments to the number

of waiver slots, applied for and approved by CMS.

**D.     ASSESSMENTS FOR TBI/SCI WAIVER PROGRAM SERVICES**

1.     DOH agrees to perform assessments utilizing the Handbook's Home and

Community Medicaid Waiver Prioritization Screening Instrument ("TBI/SCI Screening

Instrument").  Within 180 days of the execution of this Agreement DOH shall use the

TBI/SCI Screening Instrument to perform assessments for all persons on the Waiting List

at the time of execution.

**E.     CLASS NOTICE, FAIRNESS HEARING, COURT APPROVAL OF THE
        SETTLEMENT AGREEMENT AND ENTRY OF FINAL ORDER**

1.     The parties agree that upon execution of this Agreement, they shall file with

the Court a Joint Motion in which the parties will request: (a) that the Court approve the

(proposed) Notice to the Class and enter an Order approving the Notice and setting a date

for a Fed. R. Civ. P. 23(e) fairness hearing; (b) that pursuant to Fed. R. Civ. P. 23(e), the

Court approve the Settlement Agreement and enter an Order to that effect; and (c) that at

the appropriate time, the Court enter a Dismissal With Prejudice pursuant to the terms of

this Agreement.

2.     Upon execution of this Agreement, counsel will submit to the Court the Joint

Motion together with the proposed orders and the (proposed) Notice to Class Members of

Proposed Settlement and Fairness Hearing. Notice to class members, in a form approved

by the Court, shall be made.

3.     Defendants agree to bear the costs of providing the notice, by mail, to all

7

class members currently on the waiting list for services, and to post the notice on their websites and in appropriate offices.

4.      The parties will request that the Court expedite the scheduling of the fairness hearing and counsel will work together to facilitate the fairness hearing. All counsel will use their continued and best efforts to obtain court approval of the Settlement Agreement and the above-referenced orders.

5.      This Agreement is intended by the parties as a final expression of their agreement with respect to the subject matter hereof and is intended as a complete and exclusive statement of the terms and conditions thereof. This Agreement supercedes and replaces all prior negotiations and agreements between the parties hereto, whether written or oral.

6.      This Agreement is not an admission of any wrongdoing or misconduct on the part of Defendants, nor is it an admission by Defendants that Plaintiffs would have prevailed or by Plaintiffs that Defendants would have prevailed in this litigation.

7.      Dismissal of this case shall be with prejudice. The parties understand that this Agreement is not a consent decree.  The parties agree that execution of this Agreement by Defendants and/or approval of the same shall not operate in any manner to confer continuing jurisdiction.

8.      If the Court does not approve this Agreement or incorporate the terms of this Agreement in the Final Order, or alters or amends any portion of this Agreement, this Agreement is hereby withdrawn, and shall be null and void and all parties shall be placed in the same position as if this Agreement was never agreed to by the parties.

## F.   ATTORNEYS' FEES AND COSTS

1.     Defendants agree to pay the Plaintiffs for their reasonable attorneys' fees and costs associated with this lawsuit for the time period up to and including November 2, 2005, in the amount of $245,000 all inclusive.  This amount shall constitute full, fair and final disposition of the entire case on the issue of fees and costs and shall be paid by check issued not later than 30 days after approval of the Settlement Agreement is granted by the court.

## G.   DISPUTE RESOLUTION

1.     This Agreement shall be enforceable only in accordance with the terms described in (H)(2).

2.     The parties hereby agree that if a dispute as to the performance of this Agreement should arise, it shall be resolved exclusively in the following manner:

a.     <u>Written Notification of Alleged Violations and Voluntary Correction</u>. If Plaintiffs believe that Defendants have breached the terms of this Agreement, Plaintiffs will notify Defendants of the provision of the Agreement which they allege Defendants have not complied with, and with a written explanation of the nature of the alleged breach.  Such notification shall be within ten (10) days of discovering such alleged breach.  Upon receipt of this written notice and explanation ("notice"), Defendants will conduct an appropriate investigation and respond, in writing, within ten (10) business days, unless an extension is mutually agreed upon.  The parties may, if warranted, take voluntary corrective action. There shall be no award of attorneys' fees or costs to either party for any actions/inactions taken at this stage, regardless of the eventual outcome of the dispute.

9

b.  <u>Mediation</u>. If Plaintiffs reasonably believe that the response provided by Defendants does not resolve the issue(s) or alleged violation(s) raised in the notice, the parties shall attend mediation to resolve the dispute.  The cost of the mediation shall be divided evenly between the parties.  Unless otherwise agreed in writing between the parties, mediation must commence within 30 calendar days from receipt of notice unless extended for good cause shown.  For alleged violations which Plaintiffs, in good faith, reasonably believe may result in immediate and irreparable harm to Plaintiffs, the notice shall so indicate this belief, and mediation must then commence within five (5) business days, if at all practicable.  The parties shall conduct the mediation in good faith in an attempt to resolve the matter(s) contained in the notice, and shall therefore have a representative, with full authority to settle the dispute, attend the mediation (subject to any limitations imposed upon Defendants by state law, § 45.062, Fla.  Stat.). Neither side is entitled to attorneys' fees for any time devoted toward this mediation process, regardless of outcome.

c.  <u>Exclusive Remedy</u>. If the issue(s) of noncompliance raised in the notice is/are not resolved through mediation, then Plaintiffs' sole remedy is to file a separate contract action in a state court of competent jurisdiction in Leon County, Florida. Strict compliance with paragraphs (G)(2)(a) and (G)(2)(b) of this settlement is agreed by the parties to be a condition precedent to the filing of any such action.

## H.  NO STRICT INTERPRETATION AGAINST DRAFTSMAN

1.  The parties have participated in the drafting of this Agreement and have had the opportunity to consult with counsel concerning its terms.  This Agreement shall not be interpreted strictly against any one party on the ground that it drafted the Agreement or any

10

part of it.

2.     All legal representations, including agreements based on legal claims, attributable to the Defendants as set out herein are solely and exclusively for the purpose of this Settlement Agreement and shall not be binding on these Defendants or Plaintiffs in any other action or proceeding with the exception of any actions filed in state court to enforce the terms of this Agreement.

## I.     FACSIMILE SIGNATURES BINDING

In order to expedite the signing of this Agreement, the parties stipulate and agree that the delivery of an executed signature page by one party to the other via facsimile transmission shall bind the transmitting party to the same extent as service of the original signature page by hand delivery.  The parties stipulate and agree that a party that sends a signature page via facsimile transmission shall mail the original to the other party within three (3) business days after the facsimile transmission.

Respectfully Submitted on this _10th_ day of _October_ , 2006.

By: _Andrea Costello_          Date: _10|3|06_

Andrea Costello
Florida Bar No.532991
Southern Legal Counsel, Inc.
1229 N.W. 12th Avenue
Gainesville, FL 32601-4113
(352) 271-8890
(352) 271-8347(fax)
Attorney for Plaintiffs


By: _____          Date: _____

Peter P. Sleasman
Florida Bar No.367931
Legal Advocacy Center of Central Florida, Inc.
222 S.W. Broadway Street

11

part of it.

2.     All legal representations, including agreements based on legal claims, attributable to the Defendants as set out herein are solely and exclusively for the purpose of this Settlement Agreement and shall not be binding on these Defendants or Plaintiffs in any other action or proceeding with the exception of any actions filed in state court to enforce the terms of this Agreement.

## I.     FACSIMILE SIGNATURES BINDING

In order to expedite the signing of this Agreement, the parties stipulate and agree that the delivery of an executed signature page by one party to the other via facsimile transmission shall bind the transmitting party to the same extent as service of the original signature page by hand delivery.  The parties stipulate and agree that a party that sends a signature page via facsimile transmission shall mail the original to the other party within three (3) business days after the facsimile transmission.

Respectfully Submitted on this _____ day of _____, 2006.

By: _____       Date: _____
      Andrea Costello
      Florida Bar No.532991
      Southern Legal Counsel, Inc.
      1229 N.W. 12th Avenue
      Gainesville, FL 32601-4113
      (352) 271-8890
      (352) 271-8347(fax)
      Attorney for Plaintiffs

By: _____       Date: 10-04-06
      Peter P. Sleasman
      Florida Bar No.367931
      Legal Advocacy Center of Central Florida, Inc.
      222 S.W. Broadway Street

11

Ocala, FL 34474
(352) 482-0179, ext. 313
(352) 482-0181 (fax)
Attorney for Plaintiffs

By: _____     Date: 10/4/06
      Appearing Pro Hac Vice:
      Sarah Somers
      National Health Law Program, Inc.
      211 N. Columbia Street
      Chapel Hill, NC 27514
      (919) 968-6308
      (919) 968-8855 (fax)
      Attorneys for Plaintiffs

By: _____     Date: 10-4-06
      Appearing Pro Hac Vice:
      Jane Perkins
      National Health Law Program, Inc.
      211 N. Columbia Street
      Chapel Hill, NC 27514
      (919) 968-6308
      (919) 968-8855 (fax)
      Attorneys for Plaintiffs

By: _____     Date: _____
      George Waas, Special Counsel
      Florida Bar No. 129967
      Douglas B. Macinnes
      Senior Assistant Attorney General
      Florida Bar No. 255629
      Office of the Attorney General
      PL-01 The Capitol
      Tallahassee, FL 32399-1050
      (850) 414-3300
      (850) 488-4872 (fax)
      Attorneys for Defendants

12

Ocala, FL 34474
(352) 482-0179, ext. 313
(352) 482-0181 (fax)
Attorney for Plaintiffs


By: _____          Date: _____

Appearing Pro Hac Vice:
Sarah Somers
National Health Law Program, Inc.
211 N. Columbia Street
Chapel Hill, NC 27514
(919) 968-6308
(919) 968-8855 (fax)
Attorneys for Plaintiffs


By: _____          Date: _____

Appearing Pro Hac Vice:
Jane Perkins
National Health Law Program, Inc.
211 N. Columbia Street
Chapel Hill, NC 27514
(919) 968-6308
(919) 968-8855 (fax)
Attorneys for Plaintiffs


By: _George Vaas_____          Date: _10 / 6 / 06_____

George Waas, Special Counsel
Florida Bar No. 129967
Douglas B. Macinnes
Senior Assistant Attorney General
Florida Bar No. 255629
Office of the Attorney General
PL-01 The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
(850) 488-4872 (fax)
Attorneys for Defendants


12

By: _Nancy Humbeel_      Date: __10/5/06__
      Nancy Humbert, M.S.N., A.R.N.P.
      Deputy Secretary
      Department of Health
      4052 Bald Cypress Way
      Tallahassee, FL 32399
      (850) 245-4244
      (850) 922-9453 (fax)


By: _____      Date: _____
      Thomas W. Arnold
      Deputy Secretary for Medicaid
      Agency for Health Care Administration
      2727 Mahan Drive, MS #8
      Tallahassee, FL 32308
      (850) 488-3560
      (850) 488-2520 (fax)


By: _____      Date: _____
      William Roberts
      Florida Bar No. 0586617
      Acting General Counsel
      Agency for Health Care Administration
      2727 Mahan Drive, MS #3
      Tallahassee, FL 32308-5403
      (850) 922-5873
      (850) 413-9313 (fax)


By: _____      Date: _____
      Brevin Brown
      Florida Bar No. 589063
      Assistant General Counsel
      Agency for Health Care Administration
      2727 Mahan Drive, Bldg. 3, MS #3
      Tallahassee, FL 32308-5403
      (850) 414-7326
      (850) 921-0158 (fax)

By: _____          Date: _____
    Nancy Humbert, M.S.N., A.R.N.P.
    Deputy Secretary
    Department of Health
    4052 Bald Cypress Way
    Tallahassee, FL 32399
    (850) 245-4244
    (850) 922-9453 (fax)

By: _____          Date: _____
    Thomas W. Arnold
    Deputy Secretary for Medicaid
    Agency for Health Care Administration
    2727 Mahan Drive, MS #8
    Tallahassee, FL 32308
    (850) 488-3560
    (850) 488-2520 (fax)

By: _____          Date: _10/4/06_____
    William Roberts
    Florida Bar No. 0586617
    Acting General Counsel
    Agency for Health Care Administration
    2727 Mahan Drive, MS #3
    Tallahassee, FL 32308-5403
    (850) 922-5873
    (850) 413-9313 (fax)

By: _____          Date: _10/4/06_____
    Brevin Brown
    Florida Bar No. 589063
    Assistant General Counsel
    Agency for Health Care Administration
    2727 Mahan Drive, Bldg. 3, MS #3
    Tallahassee, FL 32308-5403
    (850) 414-7326
    (850) 921-0158 (fax)

13

# EXHIBIT A



# Florida
# Medicaid

**Traumatic Brain and Spinal Cord Injury Waiver
Services Handbook**

**Agency for Health Care Administration**







JEB BUSH, GOVERNOR                                                    ALAN LEVINE, SECRETARY

May 15, 2006

Dear Medicaid Provider:

Enclosed please find the Florida Medicaid Traumatic Brain and Spinal Cord Injury Waiver
Services Coverage and Limitations Handbook, April 2006. The handbook includes the provider
requirements, covered services, service limitations, procedure codes, and fees for the Florida
Medicaid Traumatic Brain and Spinal Cord Injury Waiver Services Program.

Please contact your area Medicaid office if you have any questions. The area Medicaid offices'
phone numbers and addresses are available on the Agency's website at
http://ahca.myflorida.com. Click on Medicaid, and then on Area Offices. They are also listed in
Appendix C of the Florida Medicaid Provider General Handbook. All the Medicaid handbooks
are available on the Florida Medicaid Provider Handbook and Resource Library CD-ROM and
on the Medicaid fiscal agent's website at http://floridamedicaid.acs-inc.com. Click on Provider
Support, and then on Handbooks.

We appreciate the services that you provide to Florida's Medicaid recipients.

Sincerely,

Beth Kidder
Chief, Bureau of Medicaid Services



2727 Mahan Drive ● Mail Stop #20                          Visit AHCA online at
Tallahassee, FL 32308                                     http://ahca.myflorida.com

# UPDATE LOG
# TRAUMATIC BRAIN AND SPINAL CORD INJURY
# WAIVER SERVICES
# COVERAGE AND LIMITATIONS HANDBOOK

*How to Use the Update Log*

**Introduction**

Changes to the handbook will be sent out as handbook updates.  An update can be a change, addition, or correction to policy.  It may be either a pen and ink change to the existing handbook pages or replacement pages.

It is very important that the provider read the updated material and file it in the handbook as it is the provider's responsibility to follow correct policy to obtain Medicaid reimbursement.

**Explanation of the Update Log**

The provider can use the update log to determine if all the updates to the handbook have been received.

Update No. is the number that appears on the front of the update.

Effective Date is the date that the update was effective.

**Instructions**

Make the pen and ink changes and file new or replacement pages.

File the cover page and pen and ink instructions from the update in numerical order after the log.

If an update is missed, write or call the Medicaid fiscal agent at the address given in Appendix C of the Medicaid Provider Reimbursement Handbook.

| UPDATE NO. | EFFECTIVE DATE |
|---|---|
| Apr2006 New Handbook | April 2006 |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

# TRAUMATIC BRAIN AND SPINAL CORD INJURY WAIVER SERVICES COVERAGE AND LIMITATIONS HANDBOOK

## Table of Contents

**Chapter/Topic**                                                                 **Page**

**Introduction**
Handbook Use and Format ............................................................... ii
Characteristics of the Handbook .................................................... iii
Handbook Updates.......................................................................... iii

**Chapter 1 – Provider Qualifications and Enrollment**
General Definitions ...................................................................... 1-2
Description and Purpose ............................................................. 1-5
Provider Qualifications................................................................. 1-7
Community Support Coordinator Provider Qualifications ................ 1-9
Service Provider Qualifications .................................................. 1-11
Enrollment Process ................................................................... 1-17
Provider Responsibilities ........................................................... 1-19

**Chapter 2 - Covered Services, Limitations, and Exclusions**
Service Requirements.................................................................2-2
Community Support Coordinator....................................................2-8
Community Support Coordinator Documentation Requirements........2-10
Plan of Care..............................................................................2-13
Covered Services ......................................................................2-18
Service Documentation Requirements.........................................2-18
Adaptive Health and Wellness  ..................................................2-20
Assistive Technologies...............................................................2-22
Attendant Care ..........................................................................2-24
Behavioral Programming.............................................................2-25
Companion Services  .................................................................2-27
Consumable Medical Supplies ....................................................2-28
Environmental Accessibility Adaptions................................……………2-29
Life Skills Training .....................................................................2-32
Personal Adjustment Counseling .................................................2-34
Personal Care Services...............................................................2-36
Rehabilitation Engineering Evaluation..........................................2-37
Appeal Rights and Fair Hearing Process… ........................……………………2-38

**Chapter 3 – Procedure Codes and Fees**
Reimbursement Information .........................................................3-1
Procedure Code Modifiers............................................................3-5

*Appendices*

Appendix A: TBI/SCI Waiver Services Procedure Codes, Reimbursement and and Maximum Limits ................................................................................ A-1
Appendix B: Florida Brain and Spinal Cord Injury Program Regions ................................ B-1
Appendix C: Home and Community-Based Waiver Referral Agreement .......................... C-1
Appendix D: Brain and Spinal Cord Injury Program Request for Level of Care .............. D-1
Appendix E: Notification of Level of Care ......................................................................... E-1
Appendix F: Brain and Spinal Cord Injury Program Waiting List Policy for the Traumatic Brain/Spinal Cord Injury Medicaid Waiver Program and The Home and Community-Based Medicaid Waiver Prioritization Screening Instrument ................................................................................... F-1
Appendix G: Notice of Decision and Right to a Fair Hearing ........................................... G-1
Appendix H: Brain and Spinal Cord Injury Program Medicaid Home and Community-Based Waiver Service Plan .................................................... H-1

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

# INTRODUCTION TO THE HANDBOOK

## *Overview*

**Introduction**     This chapter introduces the format used for the Florida Medicaid handbooks and tells the reader how to use the handbooks.

**Background**     There are three types of Florida Medicaid handbooks:

- Provider General Handbook describes the Florida Medicaid Program.
- Coverage and Limitations Handbooks explain covered services, their limits, who is eligible to receive them, and the fee schedules.
- Reimbursement Handbooks describe how to complete and file claims for reimbursement from Medicaid.

Exception:  For Prescribed Drugs Services, the coverage and limitations handbook and the reimbursement handbook are combined into one.

**Legal Authority**     The following federal and state laws govern Florida Medicaid:

- Title XIX of the Social Security Act,
- Title 42 of the Code of Federal Regulations,
- Chapter 409, Florida Statutes, and
- Chapter 59G, Florida Administrative Code.

**In This Chapter**     This chapter contains:

| TOPIC | PAGE |
|---|---|
| Handbook Use and Format | ii |
| Characteristics of the Handbook | iii |
| Handbook Updates | iii |

## Handbook Use and Format

**Purpose**

The purpose of the Medicaid handbooks is to furnish the Medicaid provider with the policies and procedures needed to receive reimbursement for covered services provided to eligible Florida Medicaid recipients.

The handbooks provide descriptions and instructions on how and when to complete forms, letters or other documentation.

**Provider**

The term "provider" is used to describe any entity, facility, person or group who is enrolled in the Medicaid program and renders services to Medicaid recipients and bills Medicaid for services.

**Recipient**

The term "recipient" is used to describe an individual who is eligible for Medicaid.

**General Handbook**

General information for providers regarding the Florida Medicaid Program, recipient eligibility, provider enrollment, fraud and abuse policy, and important resources are included in the Florida Medicaid Provider General Handbook. This general handbook is distributed to all enrolled Medicaid providers and is updated as needed.

**Coverage and Limitations Handbook**

Each coverage and limitations handbook is named for the service it describes. A provider who furnishes more than one type of service will have more than one coverage and limitations handbook.

**Reimbursement Handbook**

Each reimbursement handbook is named for the claim form that it describes.

**Chapter Numbers**

The chapter number appears as the first digit before the page number at the bottom of each page.

**Page Numbers**

Pages are numbered consecutively throughout the handbook. Page numbers follow the chapter number at the bottom of each page.

**White Space**

The "white space" found throughout a handbook enhances readability and allows space for writing notes.

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

## Characteristics of the Handbook

| | |
|---|---|
| **Format** | The format styles used in the handbooks represent a concise and consistent way of displaying complex, technical material. |
| **Information Block** | Information blocks replace the traditional paragraph and may consist of one or more paragraphs about a portion of the subject.  Blocks are separated by horizontal lines.<br><br>Each block is identified or named with a label. |
| **Label** | Labels or names are located in the left margin of each information block.  They identify the content of the block in order to facilitate scanning and locating information quickly. |
| **Note** | Note is used most frequently to refer the user to pertinent material located elsewhere in the handbook.<br><br>Note also refers the user to other documents or policies contained in other handbooks. |
| **Topic Roster** | Each chapter contains a topic roster on the first page, which serves as a table of contents for the chapter, listing the subjects and the page number where the subject can be found. |

## Handbook Updates

| | |
|---|---|
| **Update Log** | The first page of each handbook will contain the update log.<br><br>Every update will contain a new updated log page with the most recent update information added to the log.  The provider can use the update log to determine if all updates to the current handbook have been received.<br><br>Each update will be designated by an "Update No." and the "Effective Date." |

***Handbook Updates,*** continued

| | |
|---|---|
| **How Changes Are Updated** | The Medicaid handbooks will be updated as needed.  Changes may consist of any one of the following:<br><br>1.  Pen and ink updates—Brief changes will be sent as pen and ink updates.  The changes will be incorporated on replacement pages the next time replacement pages are produced.<br>2.  Replacement pages—Lengthy changes or multiple changes that occur at the same time will be sent on replacement pages.  Replacement pages will contain an effective date that corresponds to the effective date of the update.<br>3.  Revised handbook—Major changes will result in the entire handbook being replaced with a new effective date throughout. |
| **Numbering Update Pages** | Replacement pages will have the same number as the page they are replacing.  If additional pages are required, the new pages will carry the same number as the preceding replacement page with a numeric character in ascending order.  (For example: page 1-3 may be followed by page 1-3.1 to avoid reprinting the entire chapter.) |
| **Effective Date of New Material** | The month and year that the new material is effective will appear at the bottom of each page.  The provider can check this date to ensure that the material being used is the most current and up to date.<br><br>If an information block has an effective date that is different from the effective date on the bottom of the page, the effective date will be included in the label. |
| **Identifying New Information** | New material will be indicated by vertical lines.  The following information blocks give examples of how new labels, new information blocks, and new or changed material within an information block will be indicated. |
| **New Label** | A new label for an existing information block will be indicated by a vertical line to the left and right of the label only. |
| **New Label and New Information Block** | A new label and a new information block will be identified by a vertical line to the left of the label and to the right of the information block. |
| **New Material in an Existing Information Block** | New or changed material within an existing information block will be indicated by a vertical line to the left and right of the information block. |
| **New or Changed Paragraph** | A paragraph within an information block that has new or changed material will be indicated by a vertical line to the left and right of the paragraph.<br><br>Paragraph with new material. |

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

# CHAPTER 1
# TRAUMATIC BRAIN AND SPINAL CORD INJURY WAIVER SERVICES
# PROVIDER QUALIFICATIONS AND ENROLLMENT

## Overview

**Introduction**

This chapter describes the Medicaid Traumatic Brain Injury/Spinal Cord Injury Waiver Program (TBI/SCI Waiver Program), specifies the authority regulating TBI/SCI Waiver Program services, the purpose of the program and provider qualifications, enrollment, and responsibilities.

The handbook is intended for TBI/SCI providers. Internal program policies and procedures pertaining to state agency operations are contained in internal operating procedure (IOP) documents, not the provider handbook.

**Legal Authority**

Medicaid home and community-based services (HCBS) waiver programs are authorized under Sections 1902 (A)(10)(B) and 1915(C) of the Social Security Act and governed by Title 42, Code of Federal Regulations (C.F.R.), Part 441, Subpart G.

The Florida Medicaid TBI/SCI Waiver Program is authorized by Chapters 381.75 and 409, Florida Statutes (F.S.) and Chapter 59G, Florida Administrative Code (F.A.C.).

Specific statutory authority for the promulgation of the TBI/SCI Waiver Services Handbook into rule is found in the following provisions of law: Chapters 408.301, 408.302, and 409.919, F.S.

The Agency for Health Care Administration (AHCA) has final authority on all policies, procedures, rules, regulations, manuals and handbooks pertaining to the waiver. The Department of Health (DOH) is authorized by AHCA to operate and oversee the waiver in accordance with the Interagency Agreement for Medicaid between AHCA and DOH regarding the TBI/SCI Waiver Program.

**In This Chapter**

This chapter contains:

| TOPIC | PAGE |
|---|---|
| General Definitions | 1-2 |
| Description and Purpose | 1-5 |
| Provider Qualifications | 1-7 |
| Community Support Coordinator Provider Qualifications | 1-9 |
| Service Provider Qualifications | 1-11 |

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

## *Overview,* continued

| **In this Chapter,** continued | Enrollment Process | 1-17 |
|---|---|---|
| | Provider Responsibilities | 1-19 |

## *General Definitions*

| | |
|---|---|
| **AHCA** | AHCA is the acronym for the Agency for Health Care Administration.  AHCA administers the Florida Medicaid program. |
| **Agency or Group Provider** | A business or organization enrolled to provide a waiver service(s) that has one or more staff employed to carry out the enrolled service(s).  An agency or group provider for rate purposes is a provider that hires staff to perform the waiver services. |
| **Authorized Representative** | An individual who has filed a letter of authorization, signed by the applicant or recipient, authorizing the person to represent the applicant or recipient. |
| **BSCIP** | BSCIP is the acronym for the Brain and Spinal Cord Injury Program operated by the Florida Department of Health.  The TBI/SCI Waiver Program is operated as a function of BSCIP.  BSCIP has headquarters in Tallahassee and has regional offices located throughout the state. |
| | Note:  See Appendix B in this handbook for a listing of the BSCIP regional offices and contact information.  Additional information on the BSCIP is available at http://www.doh.state.fl.us/Workforce/BrainSC |
| **Brain Injury** | Brain injury (as defined in Chapter 381.745, F.S.) is an insult to the skull, brain or its covering, resulting from external trauma, which produces an altered state of consciousness or anatomic, motor, sensory, cognitive or behavioral deficits. |
| **Brain and/or Spinal Cord Injury** | For the purpose of this handbook, brain and/or spinal cord injury means brain and spinal cord injury or brain or spinal cord injury. |

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

### General Definitions, continued

| | |
|---|---|
| **Care Plan** | The care plan is an individualized plan of supports and services designed to meet the needs of a recipient enrolled in the waiver program.  The plan is based on the preferences and needs of a recipient and is utilized to authorize the provision of waiver services and supports to a recipient.  The care plan is also referred to as the plan of care. |
| **Case Management Agency** | One of the five regional offices of the BSCIP that assists the waiver recipient in community reintegration. |
| **Case Manager** | Person employed by the BSCIP to provide case management services for applicants and recipients. |
| **Central Registry** | The central registry is established and maintained by the Department of Health for persons who have sustained moderate to severe brain or spinal cord injuries.  In accordance with Chapter 381.74 F.S., every public or private health agency, private or public social agency, and attending physician must report to the registry within five days of identification or diagnosis of any person who has such a brain or spinal cord injury. |
| **Community Support Coordinator** | An enrolled waiver provider of community support coordination services is selected by the recipient enrolled in the waiver (or his authorized representative) to assist the recipient who receives waiver services in gaining access to needed waiver and Medicaid state plan services, as well as needed medical, social, educational and other services, regardless of the funding source for the services to which access is gained. |
| **DOH** | DOH is the acronym for the Florida Department of Health.  The DOH administers the Brain and Spinal Cord Injury Program (BSCIP). |
| **Health Insurance Portability and Accountability Act of 1996 (HIPAA)** | The Health Insurance Portability and Accountability Act of 1996 (HIPAA) makes health insurance more "portable" so that workers may take their health insurance with them when they moved from one job to another, without losing health coverage.  This federal legislation also requires the health care industry to adopt uniform codes and forms to streamline the processing and use of health data and claims.  HIPAA also provides protection for the privacy of people's health care information and gives them greater access to that information. |

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

***General Definitions,*** continued

| | |
|---|---|
| **Independent Provider** | An individual who meets specified qualifications of certain career service classification codes or holds local occupational licenses. |
| **Invoice** | A list of the approved service(s) or procedure(s) rendered or item(s) purchased, rate and units. The provider's name, address, provider number and the appropriate service code must appear on the form. When billing for equipment or supplies, include brand name, model number, size, and any attachments needed. The service provider may send a copy of catalog pages. |
| **Level of Care** | The level of nursing or rehabilitative care required by a Medicaid applicant or recipient based on his medical or related needs as defined by the criteria in Chapter 59G-4.180, F.A.C. |
| **Medicaid State Plan Services** | The Medicaid state plan is the name of the state and federal document that describes the Medicaid services that the state provides to all Medicaid recipients as authorized in Chapter 409, F.S. State plan services are available to persons enrolled in the waiver and must be accessed prior to accessing waiver services. Individuals placed on the waiting list for TBI/SCI waiver services who are eligible for Medicaid are eligible for state plan services. |
| | A description of the services offered through the Florida Medicaid Program state plan can be found in the Florida Medicaid provider handbooks. The handbooks are available on the Medicaid fiscal agent website at http://floridamedicaid.acs-inc.com. Click on Provider Support, and then on Handbooks. |
| **Residence** | The place in which a recipient resides for an extended or a permanent period of time and is considered his home. |
| **RIMS** | RIMS is the acronym for the Rehabilitation Information Management System, which is the database of all client information, maintained by the BSCIP. |
| **Spinal Cord Injury** | Spinal cord injury, as defined in Chapter 381.745, F.S., is a lesion to the spinal cord or cauna equine resulting from external trauma with evidence of significant involvement of two of the following – motor deficit, sensory deficit, bowel and bladder dysfunction. |

### *General Definitions,* continued

| | |
|---|---|
| **TBI/SCI Medicaid Waiver Administrator** | The BSCIP Headquarters Office employs a TBI/SCI Medicaid waiver administrator who is responsible for the following: |

- Managing the waiver at the headquarters level and coordinating with BSCIP regional offices;
- Receiving provider enrollment packets;
- Verifying that providers meet licensure, certification and other standards;
- Facilitating enrollment of eligible providers with the Medicaid fiscal agent;
- Training providers and furnishing technical assistance;
- Monitoring providers through on-site reviews at least annually;
- Preparing written monitoring reports for the provider, DOH and AHCA; and
- Maintaining day-to-day operations of the TBI/SCI Waiver.

### *Description and Purpose*

| | |
|---|---|
| **TBI/SCI Waiver Description** | Recipients in the TBI/SCI Waiver Program have access to support and services, which enable them to live at home and in the community. Eligibility is limited to the number of unduplicated recipients stated in the waiver application or amendments that is approved by the U.S. Department of Health and Human Services, Centers for Medicare and Medicaid Services, and by the amount of state matching revenue appropriated by the legislature. |

State matching funds for the waiver are generated from the TBI/SCI Trust Fund. Revenue from moving traffic violation fines, Driving Under the Influence, Boating Under the Influence convictions and $1.00 from all temporary tags goes into this fund.  The Florida DOH, BSCIP operates the waiver under the authorization of AHCA's Division of Medicaid.  The waiver has a five-year span and may be renewed at the discretion of the Centers for Medicare and Medicaid Services.

TBI/SCI waiver recipients must demonstrate health conditions or limitations in functioning that would result in placement in a skilled nursing facility were it not for the provision of TBI/SCI waiver services.

*Description and Purpose,* continued

**Purpose of the TBI/SCI Waiver**

The purpose of the TBI/SCI Waiver Program is to maintain and promote the health of individuals with traumatic brain injuries or spinal cord injuries through the provision of needed supports and services in order to delay or prevent institutionalization. The intent of the program is to provide a choice of services that will allow eligible recipients to live at home or in the community and to achieve productive lives to the degree possible.

TBI/SCI waiver recipients receive services that enable them to:

- Remain in the community;
- Reside in an accessible environment;
- Receive necessary support services; and
- Receive necessary supplies and equipment.

**Purpose of this Handbook**

This handbook is intended for use by eligible providers who furnish TBI/SCI Medicaid waiver services to recipients enrolled in the waiver program. It must be used in conjunction with the Florida Medicaid Provider Reimbursement Handbook, Non-Institutional 081, which contains the specific procedures for submitting claims for payment, and the Florida Medicaid Provider General Handbook, which contains information about the Medicaid program in general and record keeping requirements.

Note: The Florida Medicaid provider handbooks are available on the Medicaid Handbook and Resource Library CD-ROM and the Medicaid fiscal agent's website at http://floridamedicaid.acs-inc.com. Click on Provider Support, and then click on Handbooks. The Florida Medicaid Provider Reimbursement Handbook, Non-Institutional 081, is incorporated by reference in 59G-13.001, F.A.C.; and the Florida Medicaid Provider General Handbook is incorporated by reference in 59G-5.020, F.A.C.

Case 2:09-md-02047-EEF-MBN   Document 18062-2   Filed 10/20/15   Page 37 of 138
Case 4:03-cv-00010-EEF-MBN   Document 1986-2   Filed 05/18/15   Page 37 of 58

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

## *Provider Qualifications*

| | |
|---|---|
| **Introduction** | Before becoming eligible and to remain eligible to provide TBI/SCI waiver services, TBI/SCI waiver providers must meet the general Medicaid provider qualifications contained in Chapter 2 of the Florida Medicaid Provider General Handbook and the specific provider qualifications and requirements listed in this handbook. |
| **General TBI/SCI Waiver Provider Qualifications** | TBI/SCI waiver provider applicants must meet the following specific TBI/SCI qualifications:<br><br>• Be determined to meet the provider qualifications and be certified as eligible by the BSCIP Headquarters Office;<br>• Not be currently suspended from Medicare or Medicaid in any state;<br>• Possess a high degree of ethical principles and have no adverse documented history with DOH, BSCIP, AHCA, or any other regulatory agency that raise questions regarding whether the health, safety and welfare of a consumer would be jeopardized during the delivery of an approved waiver service;<br>• Be enrolled with the Medicaid fiscal agent as a TBI/SCI waiver provider, provider type 67, specialty code 79;<br>• Have a current, signed TBI/SCI Waiver Referral Services Agreement with DOH (Appendix C); and<br>• Be at least 18 years of age.<br><br>Note: See Appendix C for a copy of the TBI/SCI Waiver Referral Services Agreement. |
| **Agreement to Comply** | All TBI/SCI waiver provider applicants must agree to comply with requirements found in the Medicaid Provider Agreement and the TBI/SCI Medicaid Waiver Services Referral Agreement, as well as the service-specific requirements specified in this handbook, as a condition of enrollment and remaining eligible to provide services. |
| **TBI/SCI Waiver Provider Background Screening Requirements** | Direct service provider applicants, as defined in Chapter 393.063(15), F.S., must comply with the requirements of a level II background screening in accordance with section 435.04, F.S. Failure to do so will result in denial of application.<br><br>Note: See Chapter 2 in the Florida Medicaid Provider General Handbook for information on the background screening requirements and procedures. |

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

**Provider Qualifications,** continued

| | |
|---|---|
| **Family Members Enrolled as TBI/SCI Waiver Providers** | Parents of minors, spouses, guardians and guardian advocates of waiver participants are specifically excluded from payment for any services provided to their child, spouse or recipient for whom they are a guardian or guardian advocate.<br><br>Under no circumstances may a relative provide community support coordination to a recipient who is a family member.<br><br>Relatives who are not legally responsible for the care of the recipient may provide attendant, companion or personal care, as long as they meet the provider qualifications for the service.  The relative must meet the same qualifications as other providers of the same waiver service and be approved and enrolled as a Medicaid TBI/SCI waiver provider.  The reasons for using a relative who is not legally responsible for the care of the recipient must be documented in the case record. |
| **Provider Agencies** | A provider agency or group provider for rate purposes is a provider who hires staff to perform the waiver services.  The agency rate is used for all services that are directly provided by employees of the provider.  All employees of an agency or group provider must meet the qualifications and requirements specified in the provider agreement and in this chapter for the specific services that they are providing.  The provider must maintain a personnel file documenting qualifications of all employees and their background screening results. |

Case 3:09-cv-02017-EEF-MRN   Document 18062-2   Filed 05/18/15   Page 39 of 138
Case 4:03-cv-00417-SPM-RN   Document 1986-2   Filed 05/10/06   Page 39 of 258

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

---

### *Community Support Coordinator Provider Qualifications*

---

| | |
|---|---|
| **Community Support Coordination Provider Qualifications** | Community support coordination providers must meet the following educational or certification requirements:<br><br>• Master's degree from an accredited college or university in counseling, rehabilitation counseling or social work;<br>• Bachelor's degree from an accredited college or university with a major in a social, behavioral or rehabilitative science or education and three years professional experience in counseling or in a public rehabilitation program;<br>• Certification as a case manager by the Commission for Case Manager Certification; or<br>• Certification as a disabilities management specialist by the Certification of Disability Management Specialist Commission. |
| **Community Support Coordinator Documentation Requirements** | At the time of enrollment, community support coordinators must submit documentation to show that by coursework, experience or training that they have:<br><br>• Familiarity with the population served;<br>• Knowledge of the theories and practices in training the population served;<br>• Knowledge of the theories and practices of effective verbal and written communication with the population served;<br>• Knowledge of medical and psychological aspects of disability groups;<br>• Knowledge of methods of compiling, organizing and analyzing data; and<br>• Knowledge of interviewing techniques. |
| **Background Screening for Community Support Coordinators** | When the provider applicant submits an application with fingerprint card to the BSCIP Headquarters Office and a local level background check has been completed by the Florida Department of Law Enforcement and returned with no criminal record or other disqualifying offense, the BSCIP Headquarters office will determine the applicant eligible to conduct unsupervised visits with a recipient. |

---

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

**_Community Support Coordinator Provider Qualifications,_** continued

| | |
|---|---|
| **Dual Employment** | Community support coordinator applicants who have other employment at the time of application and who intend to remain in the current employment must include a statement with their provider applications that addresses their plans for dual employment. |

The statement must include the following information:

- Type of employment held at the time of the application;
- Total number of hours involved in that employment on a weekly basis;
- Plan for the manner in which the applicant may be contacted by recipients receiving services during the hours employed in the other job;
- How conflicting priorities, emergencies and meetings will be handled; and
- Any long range plans that the community support coordinator applicant has for reducing or terminating the other employment should he assume a full waiver caseload.

The BSCIP Headquarters Office must approve the dual employment plan as a part of the waiver enrollment process. If it is determined that the applicant cannot be available to meet the needs of the recipients in the applicant's caseload, the application will be denied.

In no instance may dual employment include providing direct services to recipients with traumatic brain and/or spinal cord injuries, unless the services are provided within the role of case manager or community support coordination.

| | |
|---|---|
| **Community Support Coordination Training Requirements** | Community support coordinators must attend a minimum of 12 hours of statewide pre-service training that is conducted by the BSCIP Office. |

Community support coordinators must also be trained and certified by the BSCIP Office in the proper administration of the DOH approved assessment tool for ascertaining the recipient's level of need. This training is separate from, and in addition to, the pre-service requirement. Community support coordinators must be certified in the administration of the DOH approved assessment within 90 days of completing the pre-service training.

Community support coordinators are required to participate in statewide trainings held by the BSCIP Office. These trainings are held annually. Community support coordinators are required to attend at least every other year.

---

### *Service Provider Qualifications*

---

| | |
|---|---|
| **Adaptive Health and Wellness Provider Qualifications** | Adaptive health and wellness providers must be a health studio, as defined in Chapter 501, F.S., excluding those types exempted in sections 501.013(2)-(5), F.S.

Providers of adaptive health and wellness services must meet the following minimum qualifications:

• During the times the facility is open to recipients, a physical therapist who is licensed to practice in Florida must be present;
• During the times the facility is open to recipients, sufficient staff with the following qualifications must be present to assist the consumers to safely use the equipment and facilities;

⇨ Understanding and knowledge of disabilities and functional limitations; and
⇨ Special training in working with individuals with traumatic brain and/or spinal cord injuries.

• Equipment must be accessible or adaptable to people with disabilities.

Providers must supply the community support coordinator with documentation of recipient's attendance at the facility. |

---

| | |
|---|---|
| **Adaptive Health and Wellness Training Requirements** | All adaptive health and wellness providers' staff must provide proof of training in Cardiopulmonary Resuscitation (CPR) no later than 30 days of initially providing services.  Providers must maintain proof that their staff completed CPR training and annual or required updated training on file for review. |

---

| | |
|---|---|
| **Assistive Technologies Provider Qualifications** | The Code of Federal Regulations (C.F.R.) Part 440.70 requires assistive technologies providers to be in compliance with all applicable state and local laws relating to qualifications or licensure.

Chapter 205, F.S. requires independent vendors, assistive technologies suppliers and assistive technologies practitioners to be certified by the Rehabilitation Engineering and Assistive Technology Society of North America (RESNA). |

---

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

## Service Providers Qualifications, *continued*

| | |
|---|---|
| **Attendant Care Provider Qualifications** | Attendant care providers must be licensed as a: |

- Home health agency licensed under Chapter 400, Part IV, F.S., or
- Registered nurse licensed under 464, part I, F.S., or
- Licensed practical nurse licensed under Chapter 464, Part I, F.S.

At the time of enrollment, attendant care providers must demonstrate a familiarity with the population to be served by submitting a detailed resume with their enrollment applications.

A registered nurse who is licensed in Florida must supervise attendant care services provided by a licensed practical nurse (LPN). The frequency and intensity of the supervision will include direct observation during the provision of attendant care services by the registered nurse every 60 days.

| | |
|---|---|
| **Attendant Care Provider Training Requirements** | Attendant care providers must provide proof of training in CPR, AIDS and infection control no later than 30 days of initially providing attendant care services. Proof of annual or required updated training must be maintained on file for review. |

| | |
|---|---|
| **Behavioral Programming Provider Qualifications** | Behavioral programming providers must have one of the following licenses or certificate: |

- Psychologist licensed under Chapter 490, F.S.;
- Mental health counselor, clinical social worker, marriage and family therapist licensed under Chapter 491, F.S.; or
- Behavior analyst or associated behavior analyst certification in accordance with Chapter 393, F.S.

At the time of enrollment providers must submit documentation to show by coursework, experience or training that they have:

- Familiarity with population served;
- Knowledge of the theories and practices in behavior management;
- Knowledge of the theories and practices of effective verbal and written communication; and
- Knowledge of medical and psychological aspects of disability groups.

## *Service Provider Qualifications,* continued

| | |
|---|---|
| **Companion Services Provider Qualifications** | Companion services providers must be either a: |

- Home health agency licensed under Chapter 400, Part IV, F.S.; or
- Independent vendor.

At the time of enrollment, independent vendor providers must:

- Demonstrate a familiarity with the population served;
- Be 18-years of age or older;
- Have the ability to read, write and follow directions; and
- Have special training in working with individuals with traumatic brain and/or spinal cord injuries. Special training means validation by the DOH of a provider's experience working with individuals with traumatic brain and/or spinal cord injuries.

Relatives who are not legally responsible for the care of the recipient may provide companion care, as long as they meet the provider qualifications and are approved and enrolled as a Medicaid TBI/SCI waiver provider.

| | |
|---|---|
| **Companion Services Training Requirements** | Companion service providers must provide proof of training in CPR, AIDS and infection control within 30 days of initially providing companion care services. Proof of annual or required updated training must be maintained on file for review. |

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

*Service Provider Qualifications,* continued

| | |
|---|---|
| **Consumable Medical Supplies Provider Qualifications** | Consumable medical supplies providers must be licensed as a:<br><br>• Durable medical equipment company licensed under Chapter 205, F.S.;<br>• Pharmacy licensed under Chapter 465, F.S. and permitted by DOH; or<br>• Home health agency licensed under Chapter 400, Part IV, F.S.<br><br>In accordance with Chapter 400.935, F.S., and Chapter 409.919, F.S., home health agencies and durable medical equipment companies must provide a surety bond, letter of credit or other collateral at the time of application, unless the agency has been a Medicaid-enrolled provider for at least one year prior to the date it applies to become a waiver provider and has had no sanctions imposed by Medicaid or any other regulatory body.<br><br>Medical supply companies and durable medical equipment suppliers must hold local occupational licenses or permits, in accordance with Chapter 205, F.S. |
| **Environmental Accessibility Adaptations Provider Qualifications** | Environmental accessibility adaptation (EAA) services providers must be general contractors licensed under Chapter 464, Part I, F.S. and have verification of insurance coverage including liability and worker's compensation, an occupational license issued by the county or city, and a federal tax identification number.<br><br>Providers of environmental accessibility adaptations must demonstrate experience in the assessment of the need for such adaptations. |

*Service Provider Qualifications,* continued

| | |
|---|---|
| **Life Skills Training** | Providers of life skills training must meet the following educational qualifications: |

- Master's degree from an accredited college or university in counseling, rehabilitation counseling, psychology, occupational therapy, speech therapy or social work; or
- Bachelor's degree from an accredited college or university in social, behavioral or rehabilitative science or education and two years of experience in counseling or in a public rehabilitation program.

At the time of enrollment, providers must also possess knowledge of medical and psychological aspects of disability groups and demonstrate by coursework, experience or training:

- Familiarity with population served;
- Knowledge of the theories and practices in training; and
- Knowledge of the theories and practices of effective verbal and written communication.

| | |
|---|---|
| **Personal Care Services Provider Qualifications** | Personal care services providers of this service must be one of the following entities: |

- Home health agency licensed under Chapter 400, Part IV, F.S.;
- Community Care for the Elderly Lead Agency registered in accordance with Chapter 400.509, F.S., 410.604, or 410.0241; or
- Personal services provider certified in Basic First Aid and Adult CPR.

Providers must also meet the following minimum qualifications:

- Be 18-years of age or older;
- Have the ability to read, write and follow directions; and
- May not be legally responsible for the recipient.

At the time of enrollment, providers of this service must demonstrate training or validation of skills competency in all of the following areas:

1. Assisting with activities of daily living to include bathing, dressing, toileting, feeding, eating, bed making, ambulating and body mechanics;
2. Nutrition and food management to include the purchasing, preparation, storage and serving of food;
3. Household management to include care of bedroom, bathroom, kitchen, care of clothing and safety in the home; and
4. Special training or experience in working with individuals with traumatic brain and/or spinal cord injuries.

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

## *Service Provider Qualifications,* continued

| | |
|---|---|
| **Personal Care Services Training Requirements** | Personal care providers must provide proof of training in the areas of CPR, AIDS and infection control within 30 days of initially providing personal care services. Proof of annual or required updated training must be maintained on file for review. |

**Personal Adjustment Counseling Provider Qualifications**

Personal adjustment counseling providers must meet the following requirements:

- Be licensed as a psychologist, mental health counselor, clinical social worker, or marriage and family therapist under Chapters 490 or 491, F.S.; or
- Be certified as a rehabilitation counselor by the Commission of Rehabilitation Counselor Certification.

At the time of enrollment providers must demonstrate by coursework, experience or training that they have:

- Familiarity with population served;
- Knowledge of the theories and practices in training;
- Knowledge of the theories and practices of effective verbal and written communication; and
- Knowledge of medical and psychological aspects of disability groups.

**Rehabilitation Engineering Evaluation Provider Qualifications**

Providers of rehabilitation engineering evaluation must be certified assistive technology practitioners credentialed through the Rehabilitation Engineering and Assistive Technology Society of North America.

At the time of enrollment providers must also provide a:

- Current professional license or certification;
- Copy of occupational license issued by county or city;
- Copy of Federal Tax ID Certification; and
- Copy of professional liability insurance.

---

### *Provider Enrollment*

---

| | |
|---|---|
| **Introduction** | To enroll as a TBI/SCI wavier provider, the individual or entity must submit a completed Medicaid enrollment application package and a TBI/SCI Waiver Referral Services Agreement (Appendix C) to the BSCIP Headquarters Office. |

<u>Note</u>:  Medicaid enrollment application packages can be obtained from the Medicaid fiscal agent by calling 800-377-8216.  Enrollment forms are also available on the fiscal agent's website at http://floridamedicaid.acs-inc.com.  Click on Provider Support.

<u>Note</u>:  See Appendix C for a copy of the TBI/SCI Waiver Referral Services Agreement.

---

| | |
|---|---|
| **Determination of Provider Eligibility for Certification** | The BSCIP Headquarters Office makes a preliminary determination as to whether or not the provider applicant meets the qualifications and requirements for enrollment as a waiver provider.  This determination includes a review of previous employment history and other relevant information.  The BSCIP Headquarters Office will notify the applicant in writing if the applicant is denied enrollment as a provider of waiver services. |

---

| | |
|---|---|
| **Enrollment Process** | After the BSCIP Headquarters Office certifies the TBI/SCI waiver provider application, BSCIP forwards the enrollment application to the Medicaid fiscal agent, who completes final processing and determines enrollment. |

The Medicaid fiscal agent notifies the BSCIP Headquarters Office when the provider applicant is enrolled in Medicaid as a TBI/SCI waiver provider.  The BSCIP Headquarters Office then sends the provider a notice indicating the status as a Medicaid-enrolled TBI/SCI waiver provider.

The notice will list the TBI/SCI waiver services that the provider is eligible to provide, the effective date of Medicaid enrollment, and the assigned Medicaid provider number.

Once notice of enrollment is received, the provider may render waiver services and receive reimbursement for those services from Medicaid.  No waiver-reimbursed service may be offered or rendered until the provider receives notification of enrollment in Medicaid.

<u>Note</u>:  For additional information, contact the BSCIP Regional Office.  See Appendix B for contact information.

---

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

---

### *Provider Enrollment,* continued

**Service Providers Wishing to Provide Multiple Services**

Existing Medicaid waiver providers may cross-enroll to provide services in other waivers as well as apply to provide additional TBI/SCI services for which they meet provider qualifications.

To enroll to provide additional services, the provider must complete the following forms:

- Application for a New Location Code.  Enter "67" for provider type and "79" for specialty code;
- Authorization Agreement For Electronic Funds Transfer and a letter from the bank;
- Non-Institutional Provider Agreement; and
- Finger print card and check, if background screening was not previously completed.

The provider submits the form to the BSCIP Headquarters Office, which will review them for completeness and, if necessary, work with the provider to remedy any problems with the application.  If the provider meets the TBI/SCI waiver provider requirements, the BSCIP Headquarters Office will certify the provider and send the application to the Medicaid fiscal agent, who completes the provider's enrollment.

<u>Note</u>:  Medicaid enrollment application forms can be obtained from the Medicaid fiscal agent by calling 800-377-8216.  Enrollment forms are also available on the fiscal agent's website at http://floridamedicaid.acs-inc.com.  Click on Provider Support.

---

### Provider Responsibilities

**HIPAA Responsibilities**

Florida Medicaid has implemented all of the requirements contained in the federal legislation known as Health Insurance Portability and Accountability Act (HIPAA).  As trading partners with Florida Medicaid, all Medicaid providers, including their staff, contracted staff and volunteers, must comply with HIPAA privacy requirements effective April 14, 2003.  Providers who meet the definition of a covered entity according to HIPAA must comply with HIPAA Electronic Data Interchange (EDI) requirements effective October 16, 2003.  This coverage and limitations handbook contains information regarding changes in procedure codes mandated by HIPAA.  The Florida Medicaid Provider Reimbursement Handbooks contain the claims processing requirements for Florida Medicaid, including the changes necessary to comply with HIPAA.

Note:  For more information regarding HIPAA privacy in Florida Medicaid, see Chapter 2 in the Florida Medicaid Provider General Handbook.

Note:  For more information regarding claims processing changes in Florida Medicaid because of HIPAA, see the Florida Medicaid Provider Reimbursement Handbook, Non-Institutional 081.

Note:  For information regarding changes in EDI requirements for Florida Medicaid because of HIPAA, contact the fiscal agent EDI Help Desk at 1-800-829-0218.

**Changes to Provider Information**

Medicaid requires that changes to a provider's enrollment information, such as address and financial reporting, must be reported to the Medicaid fiscal agent, who will notate the changes to the provider file and send any needed forms to the provider.  If the provider fails to notify the Medicaid fiscal agent of changes or fails to return any required forms, the provider's payment may be delayed.

After receiving the appropriate forms from the Medicaid fiscal agent, it is essential that the provider send the forms identifying the provider changes to the BSCIP Headquarters Office for official tracking and recording of the changes.  It is the responsibility of BSCIP Headquarters to return the recorded form back to the Medicaid fiscal agent.

Providers should maintain a copy of all correspondence and a return receipt for any information requested or sent by certified mail.  Doing so will facilitate resolution of any outstanding issues or concerns.

Note:  See Chapter 2 in the Florida Medicaid Provider General Handbook for additional information on reporting changes.

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

---

## *Provider Responsibilities,* continued

| | |
|---|---|
| **Staffing Requirements** | A Medicaid provider must furnish sufficient and appropriate staff to meet the needs of the recipients it has agreed to serve.  Staffing requirements are based on the amount and types of services to be provided as authorized in the recipient's care plan, which is based on the recipient's service needs that were identified through a comprehensive assessment.<br><br>A provider should agree to serve a recipient only after the provider has reviewed and understands the recipient service needs as specified in the recipient's care plan. |

---

# CHAPTER 2
# TRAUMATIC BRAIN AND SPINAL CORD INJURY WAIVER SERVICES
# COVERED SERVICES, LIMITATIONS AND EXCLUSIONS

## *Overview*

**Introduction**

This chapter describes the services covered under the Traumatic Brain Injury/Spinal Cord Injury (TBI/SCI) Waiver Program. It also describes the requirements to receive services, the requirements for service provision, service limitations, and service exclusions.

**In This Chapter**

This chapter contains:

| TOPIC | PAGE |
| --- | --- |
| Service Requirements | 2-2 |
| Community Support Coordinator | 2-8 |
| Community Support Coordination Documentation Requirements | 2-10 |
| Plan of Care | 2-13 |
| Covered Services | 2-18 |
| Service Documentation Requirements | 2-18 |
| Adaptive Health and Wellness | 2-20 |
| Assistive Technologies | 2-22 |
| Attendant Care | 2-24 |
| Behavioral Programming | 2-25 |
| Companion Services | 2-27 |
| Consumable Medical Supplies | 2-28 |
| Environmental Accessibility Adaptations | 2-29 |
| Life Skills Training | 2-32 |
| Personal Adjustment Counseling | 2-34 |
| Personal Care Services | 2-36 |
| Rehabilitation Engineering Evaluation | 2-37 |
| Appeal Rights and Fair Hearing Process | 2-38 |

## *Service Requirements*

**Introduction**

Medicaid reimburses providers for home and community-based services rendered to eligible Medicaid recipients who have been enrolled in the TBI/SCI Waiver Program.

TBI/SCI waiver services must be rendered by qualified, enrolled providers pursuant to a written plan of care that is developed as a result of a detailed assessment of the recipient's condition and service needs. Because services are based on the individual needs of the recipient, not every recipient receives every service.

**Determination of Medicaid Eligibility**

Individuals not already receiving Medicaid benefits as members of the Medicaid eligibility groups served indicated in the TBI/SCI Waiver at the time they need TBI/SCI waiver services must be referred to the local Department of Children and Families (DCF) public assistance office or online http://www.myflorida.com/accessflorida to apply for Medicaid coverage.

An authorized representative may submit the application on behalf of the individual. The individual's case manager may assist an individual in submitting an application for Medicaid benefits.

The applicant should specifically state on the application that it is for "Home and Community-Based Services."

Financial eligibility for home and community-based waiver services is determined by DCF staff using the Institutional Care Program (ICP) assets and income eligibility criteria.

If the DCF Office of Economic Self-Sufficiency made the original financial eligibility determination, that office will notify the recipient annually of the need to renew eligibility. If the recipient is Medicaid-eligible through Supplemental Security Income (SSI), annual financial redetermination by DCF is not required.

Note: A list of current local DCF Offices of Economic Self Sufficiency is available on the Internet at http://www.dcf.state.fl.us/ess.

*Service Requirements,* continued

---

**Who Can Receive Services**

Enrollment in the TBI/SCI Waiver Program is limited to the number of unduplicated recipients stated in the waiver application or amendments, which have been approved by the Centers for Medicare and Medicaid Services, and by the amount of matching state revenue appropriated by the legislature.

Participants in the waiver must meet all of the following criteria:

- Be age 18 or older;
- Be diagnosed with a traumatic brain injury or spinal cord injury as defined in Chapter 381.745, F.S.;
- Be medically stable, which is defined as the absence of any of the following: (1) An active, life threatening condition (e.g., sepsis, respiratory, or other condition requiring system therapeutic measures), (2) IV drip to control or support blood pressure, or (3) intracranial pressure or arterial monitor;
- Be eligible for Medicaid under one of the categories described in Chapter 3 of the Florida Medicaid Provider General Handbook;
- Meet the level of care criteria for Intermediate II, or higher (i.e., Intermediate II, Intermediate I or Skilled) as stated in 56G-4.180, F.A.C.;
- Be referred to the State's Central Registry, created by Section 381.74, F.S.; and
- Be enrolled in the TBI/SCI Waiver Program.  Recipient "enrollment" means being determined financially and medically eligible following a determination of available TBI/SCI waiver funds.

---

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

**Service Requirements,** continued

| | |
|---|---|
| **Level of Care Requirements** | All applicants for TBI/SCI waiver services must be assessed to determine whether they meet the nursing home level of care for Intermediate II or higher (i.e., Intermediate II, Intermediate I or Skilled) as stated in 56G-4.180, F.A.C. A level of care determination verifies that an individual qualifies for nursing home level of care.

Level of care reviews are performed by the Comprehensive Assessment and Review for Long Term Care Services (CARES) Program in the Department of Elder Affairs. |

| | |
|---|---|
| **Level of Care Determinations Procedures** | If a TBI/SCI waiver applicant resides in the community at the time of enrollment, he must have: |

- An initial level of care determined by Florida's CARES Program; and
- His injury certified using the Brain and Spinal Cord Injury Program Request for Level of Care form (Appendix D).  This form is filled out by a physician and covers medical stability and medical eligibility and includes a statement of nursing home level of care eligibility.  It must be signed and dated by the physician.

If the TBI/SCI waiver applicant resides in a institutional setting (e.g., individuals who are institutionalized for trauma or acute medical and acute rehabilitation services following a brain or spinal cord injury or individuals residing in a nursing facility) at the time of application:

- The applicant may use the Brain and Spinal Cord Injury Program Request for Level of Care form (Appendix D) to have his physician certify both his level of care and medical eligibility based upon having a brain or spinal cord injury.
- The applicant's case manager then sends a copy of the TBI/SCI Medicaid Waiver Level of Care Determination form to the CARES unit for certification of the level of care.

If the applicant's level of care is certified by CARES, the CARES unit sends the CARES Notification of Level of Care Form (Appendix E) to the applicant's case manager.

Note:  See Appendix D for a copy of the Brain and Spinal Cord Injury Program Request for Level of Care form.

Note:  See Appendix E for a copy of the CARES Notification of Level of Care Form.

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

*Service Requirements,* continued

| | |
|---|---|
| **Freedom of Choice and Informed Choice** | Freedom of Choice and Informed Choice is the method for informing recipients of their right to: |

- Choose between receiving services in an institution or receiving services through the TBI/SCI waiver; and
- Choose among all available TBI/SCI waiver services offered and all enrolled TBI/SCI waiver service providers in their service area.

All applicants assessed to need the institutional level of care have the right to choose between receiving services in an institutional setting or receiving services through the TBI/SCI Waiver Program.

All recipients served through the waiver may select from enrolled, qualified service providers and may change providers at any time. Once a recipient has an approved plan of care, the funds allocated to that plan follow the recipient. Within the funds allocated in the plan of care, the recipient is free to change enrolled, qualified providers as desired to meet the goals and objectives set out in the plan.

When an applicant is denied his choice of service or enrolled provider, he must be notified in writing of the reason and provided with a Notice of Decision form (Appendix G).

| | |
|---|---|
| **Applicant's Copy of Forms** | Upon request, all applicants or their authorized representative shall be provided with a copy of any completed assessment instruments, the CARES Notification of Level of Care, and the TBI/SCI Medicaid Waiver Level of Care Determination form completed by the physician. |

| | |
|---|---|
| **Recertification of Eligibility** | Recipients enrolled in the TBI/SCI waiver must have their level of care and medical eligibility recertified annually. The recipient's community support coordinator will assist the participant to ensure that the TBI/SCI Waiver Level of Care Determination form is completed, signed and dated by a physician. The community support coordinator shall also complete the DOEA Form 701B. |

The community support coordinator must send the TBI/SCI Waiver Level of Care Determination form and completed DOEA Form 701B to the CARES unit for certification of level of care. If certified by CARES, the CARES unit will send the community support coordinator the CARES Notification of Level of Care form. The community support coordinator must provide a copy of both forms to the recipient and provide the original to the case manager for the recipient's file.

## *Service Requirements,* continued

**Recipient Enrollment into the Waiver**

BSCIP Headquarters Office will determine if:

- The applicant meets the eligibility criteria for the TBI/SCI waiver;
- Sufficient funding is available to meet the recipient's needs as stated in a proposed plan of care and budget for services; and
- There is adequate support in the community to ensure the recipient's safety and well being.

**BSCIP Waiting List**

The BSCIP Headquarters Office maintains the prioritized statewide list of TBI/SCI recipients who have been screened, appear to be eligible and in need of waiver services, and are waiting for waiver services.

Note: Refer to Appendix F for the BSCIP Waiting List Policy for the TBI/SCI Medicaid Waiver Program.

**Medical Necessity**

Waiver services may be provided only when the service or item is medically necessary. Medically necessary is defined in 59G-1.010(166)(a)(c), F.A.C. as follows:

(a) "Medically necessary" or "medical necessity" means that medical or allied care, goods or services furnished or ordered must meet the following conditions:

- Be necessary to protect life, to prevent significant illness or significant disability, or to alleviate severe pain;
- Be individualized, specific, and consistent with symptoms or confirmed diagnosis of the illness or injury under treatment, and not in excess of the patient's needs;
- Be consistent with generally accepted professional medical standards as defined by the Medicaid program and not be experimental or investigational;
- Be reflective of the level of service that can safely be furnished, for which no equally effective and more conservative or less costly treatment is available statewide; and,
- Be furnished in a manner not primarily intended for the convenience of the recipient, the recipient's caretaker, or the provider.

(c) The fact that a provider has prescribed, recommended, or approved medical or allied care, goods or services does not, in itself, make such care, goods or services medically necessary, or a medical necessity, or a covered service.

*Service Requirements,* continued

| | |
|---|---|
| **Availability of Other Coverage Sources** | Supports and services are developed and delivered in community settings. The supports and services authorized under the TBI/SCI waiver must be used to supplement the supports already provided by family, friends, neighbors, and the community. |
| | When a service must be purchased, services available under the Medicaid state plan must be used before accessing services through the waiver. The waiver cannot supplant or replace a service that is available through the Medicaid state plan. It is a federal requirement to access state plan coverage before the provision of waiver services. |
| | For specific information about Medicaid state plan coverage, refer to the Medicaid Coverage and Limitations Handbook for the particular service. The handbooks can be downloaded from the Medicaid fiscal agent's website at http://floridamedicaid.acs-inc.com. Click on Provider Support, and then on Handbooks. |
| **Service Delivery Timelines** | Recipients enrolled in the waiver will be authorized services that have been determined to be medically necessary, and available under this waiver, with reasonable promptness. The Traumatic Brain and Spinal Cord Injury Program will make reasonable efforts to begin provision of services within 90 days of authorization, to the extent that sufficient provider capacity exists. |

---

### *Community Support Coordinator*

---

| | |
|---|---|
| **Description** | Community support coordination services assist TBI/SCI waiver recipients in gaining access to needed waiver and Medicaid state plan services and other needed medical, social, educational, and other services regardless of the funding source. |
| | Every TBI/SCI waiver recipient must receive community support coordination services. |
| | The community support coordinators are responsible for ongoing reassessment of the recipient's needs and level of care, ongoing review of the plan of care and the recipient's satisfaction with the services provided.  Community support coordination services consist of identifying, organizing, coordinating, monitoring, and modifying services needed by the recipient. |
| | Community support coordination requires extensive knowledge of the existing service network and the willingness to seek out additional service options that may benefit the recipient. |
| | Community support coordinators must enroll as Medicaid providers. |

---

| | |
|---|---|
| **Choice of Community Support Coordinator** | The recipient has a right to select the community support coordinator provider of his choice.  In the absence of a selection by the recipient or authorized representative, the BSCIP Regional Office may assign a community support coordinator.  The recipient or authorized representative may make a different selection at a later date. |

---

***Community Support Coordinator,*** continued

| | |
|---|---|
| **Community Support Coordinator Responsibilities** | It is the responsibility of the community support coordinator to perform and document the following activities:<br><br>• Assist the recipient to achieve the goals and objectives set forth in his plan of care;<br>• Ongoing coordination between the service providers and the recipient as the plan of care is implemented and referral to available and appropriate resources are made;<br>• Advocate on behalf of recipients and their caregivers and families through the provision of information and resources necessary to make informed choices;<br>• Refer recipients to non-Medicaid services when available and appropriate;<br>• Ensure that recipients have a choice of service providers;<br>• Calculate the cost of each service, know the total monthly and annual cost of services for each recipient, and include it in the case record;<br>• Update the plan of care every six (6) months to ensure the appropriate services are being provided at the level needed by the recipient;<br>• Maintain an up-to-date recipient case record as required in this handbook;<br>• Monitor recipient's satisfaction with services received and ongoing reassessment of recipient needs;<br>• Ensure that level of care and medical eligibility are recertified annually by CARES through submission of a completed TBI/SCI Waiver Level of Care Determination form and DOEA Form 701B to the CARES unit for certification of level of care;<br>• Notify the BSCIP Regional Office of any emergency situations and comply with written district procedures to document significant incidents;<br>• Report suspected instances of abuse, neglect, or exploitation to the Florida Abuse Hotline at 1-800- 96ABUSE;<br>• Inform recipients regarding grievance procedures and fair hearing rights;<br>• Assist the recipient to request a fair hearing in the event of a perceived adverse action;<br>• Attend all required meetings and training scheduled by the BSCIP Headquarters or Regional Program Office; and<br>• Comply with all written Medicaid and BSCIP operational policies and procedures. |
| **Monthly Visit Requirement** | The community support coordinator is required to make at least one face-to-face visit with the recipient per month and perform at least one other support coordination activity per month for each recipient in the community support coordinator's caseload. |

### *Community Support Coordinator,* continued

| | |
|---|---|
| **Limitations** | A community support coordinator's caseload cannot exceed a maximum of either 36 individuals or an amount specified by the Florida Legislature, even when that total includes participants of other programs. |
| | The community support coordinator may serve fewer than 36 individuals; however, he must accept all recipients who select him for Medicaid waiver support coordination services and may not reject any recipient referred to him by the BSCIP if the recipient resides in the geographic area agreed upon by the coordinator and specified in the Medicaid Waiver Referral Agreement. |
| | The BSCIP Headquarters Office must approve any changes in the caseload numbers or geographic area in writing. |
| | Community support coordination is reimbursed at a rate of $120.00 per month. |

---

### *Community Support Coordination Documentation Requirements*

| | |
|---|---|
| **Recipient Case Records** | The community support coordinator must keep a detailed case record.  This record is required to ensure that information regarding the recipient's condition and service provision is contained in a single location to promote continuity and quality of care.  It is the basis for quality assurance monitoring. |

The recipient's case record documents all activities and interactions with the recipient and any other provider(s) involved in the support and care of the recipient.  The record must include the following information:

- Recipient demographic data including emergency contact information, parental or guardian contact data, permission forms, and copies of assessments, evaluations, and medical and medication information;
- Legal data such as guardianship papers, court orders and release forms;
- Copies of eligibility documentations, including level of care determinations by CARES;
- Needs assessments, including all physician referrals;
- Plans of care including accurate cost projections;
- Documentation of interaction and contacts (including telephone contacts) with recipient, family members, service providers or others related to planned services;
- Documentation of issues relevant to the recipient remaining in the community with supports and services consistent with his capacities and abilities.  This includes monitoring achievement of goals and objectives as set forth in the plan of care;
- Problems with service providers must be addressed in the narrative with a planned course of action noted.  Documentation of progress made towards resolution of such problems must be clear and concise; and
- All entries in case records must be dated appropriately.

Note:  See Chapter 2 of the Medicaid Provider General Handbook for additional information regarding service documentation requirements.

***Community Support Coordination Documentation Requirements,*** continued

| | |
|---|---|
| **Case Narrative Requirements** | Case narrative entries must include enough details so that a reviewer will be able to understand the circumstances fully and evaluate the community support coordinator's effectiveness in meeting the recipient's needs and addressing concerns as they arise. |
| | All support coordination activities must be recorded in the case narrative. |
| | The narrative must be clearly written and demonstrate comprehensively what the community support coordinator has done to meet the needs identified in the plan of care. |
| | There should be documentation on the activities of others on behalf of the recipient. |
| | The narrative must record observations of the recipient's physical and emotional status. |
| **Monthly Visit Documentation Requirement** | Case narratives must clearly document at least one monthly face-to-face visit with the recipient. At least one other support coordination activity per month must also be documented to justify reimbursement for community support coordination. |
| **Recording Time Spent** | Documentation in the case record must include a clear and concise record of at least one face-to-face contact and at least one other support coordination activity performed on behalf of the recipient during that month. |
| | Although community support coordination service is reimbursed on a fixed monthly basis, entries must document the amount of time performing the community support coordination activity. Time spent documenting activities in the case record must be included in the calculation of the time spent. |
| **Electronic Records** | Case narratives may be recorded on a computer. A printout of the narrative must be maintained in the recipient's case record. If computer printouts are used, back up files must be kept. Each entry into the case record must be signed and dated on the date recorded by the community support coordinator. |
| **Permanent Record Documentation** | All case record documentation must be legible and written in blue or black ink. No erasures or "whiteout" is permitted. In case of error, the entry must be lined through, initialed, and dated by the writer. Each entry must be signed and dated by the community support coordinator. |

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

### *Community Support Coordinator Documentation Requirements,* continued

| | |
|---|---|
| **Confidentiality** | To ensure the confidentiality of recipient information, records maintained by the community support coordinator must be kept in a locked filing cabinet at a secured central location. The location will be specified in the provider's Medicaid Waiver Referral Agreement. The community support coordinator must also ensure that computer records are securely maintained. |
| **Records are the Property of the BSCIP** | The community support coordinator is responsible for maintaining each case record in accordance with DOH and BSCIP office procedures. The records are the property of the BSCIP office and must to be returned to the BSCIP Office in the event that: |

- Recipient moves out of state;
- Recipient terminates services;
- Recipient dies;
- Community support coordinator changes employment; or
- Community support coordinator terminates services.

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

---

### *Plan of Care*

| | |
|---|---|
| **Description** | A plan of care is a written document that authorizes the services that the recipient receives.  Development of the plan of care is a critical part of service delivery and must be done in cooperation with the recipient, and may include family members or friends providing direct care or support to the recipient. |

---

| | |
|---|---|
| **Purpose** | The purpose of the plan of care is to specify: |

- All the services and supports to be provided regardless of the funding source;
- The service provider;
- The number of units of each service to be provided; and
- The duration of the service.

---

| | |
|---|---|
| **Plan of Care Form** | The Care Plan must be completed on the Brain and Spinal Cord Injury Program Medicaid Home and Community Based Waiver Service Plan (Appendix H).  The form includes information on the recipient's freedom of choice to receive services from any enrolled provider and the recipient's fair hearing rights.

Note:  See Appendix H for a copy of the Brain and Spinal Cord Injury Program Medicaid Home and Community Based Waiver Service Plan. |

---

*Plan of Care,* continued

| | |
|---|---|
| **Plan of Care Development** | The community support coordinator develops the plan of care specific to the recipient's needs that are identified in the comprehensive assessment instrument (DOEA Form 701B) completed by the CARES Program. The recipient; or parent, legal guardian, guardian advocate, caregiver, or authorized representative must be consulted in the development of the plan. As part of the development of the plan of care, a rehabilitation engineering evaluation must be authorized to determine the need for assistive technologies and environmental access adaptations that will foster independence and reduce the need for hands-on assistance and supervision. |
| | The plan of care must include the least restrictive and most cost-beneficial environment for accomplishment of the objectives for recipient progress and a specification of all the services that are authorized. The ultimate goal of the plan must be to enable the recipient to live a dignified life in the least restrictive setting appropriate to the recipient's needs. |
| | When service needs are identified, the recipient must be given information about the providers so that he can make an informed choice of providers. The entire care planning process must be documented in the case record. |
| | The plan of care must include the date it is developed. The duration and scope of service must be specified for each service authorized. It is recommended that services only be initially authorized for up to six months in order to determine the continued need for the frequency authorized. |
| | Care must be taken to authorize service parameters and times of service mutually agreeable to the recipient and the service provider. |
| | Services or service amounts not specified in the plan of care are not considered approved or authorized. Reimbursement for services furnished, but not specified in the plan of care are subject to recoupment. Services provided outside the time frames specified in the plan of care are also subject to recoupment. |
| | <u>Note</u>: See Chapter 5 of the Medicaid Provider General Handbook for information on fraud and abuse. |
| **Budget Worksheet** | A budget worksheet is developed electronically in RIMS in conjunction with plan of care development. Community support coordinators must be knowledgeable about the cost of waiver services and must figure the cost of each service as authorized in the plan of care. A projected total must be stipulated on the budget worksheet. |
| **Recipient's Copy** | The recipient or his authorized representative must receive a copy of the plan and any revisions made to the plan. |

*Plan of Care,* continued

**Recipient's Approval and Signature**

Prior to signing the plan of care, the community support coordinator must inform the recipient or his authorized representative that his signature indicates agreement with the plan as well as the statement on the bottom of the plan of care form regarding his right to a fair hearing and informed choice.

The recipient or his authorized representative must sign the plan of care to indicate agreement with the plan. If the recipient is unable to sign his name due to a disability, and there is no authorized representative, the recipient must indicate his agreement verbally and this agreement must be documented in the case record and on the plan itself with a notation indicating, "recipient is unable to sign due to disability."

**BSCIP Regional Office Service Authorization**

In order for a recipient to receive a service it must be specified on a recipient's plan of care and be authorized by the BSCIP Regional Office and approved by the BSCIP Headquarters Office before the service may be provided.

When a requested service or item is determined to be medically necessary in accordance with the standards set forth in 59G-1.010 (166)(a)(c), F.A.C., and the requested item meets the service definitions in the TBI/SCI waiver, the BSCIP Regional Office will authorize the service, amend the plan of care and budget, and submit to BSCIP Headquarters for approval.

If sufficient information is not available to determine that the service or item is medically necessary, the BSCIP Regional Office will send a written request for more information to the community support coordinator, recipient, or authorized representative.  If the BSCIP determines that the service is not medically necessary, the BSCIP will send a written denial of the service and notice of due process to the recipient or authorized representative and a copy to the community support coordinator.

**BSCIP Headquarters Office Approval**

A copy of the plan of care and budget as approved by the BSCIP Regional Office must be sent to the BSCIP Headquarters Office for final approval before services may be provided.

*Plan of Care,* continued

---

**Plan of Care Implementation and Review**

The community support coordinator implements the approved plan by:

- Identifying potential providers;
- Referring potential providers to BSCIP Headquarters for enrollment;
- Reviewing the recipient's service needs on an ongoing basis to ensure that needs are being met;
- Regularly contacting the providers serving the recipient to determine the recipient's condition and progress made as a result of the service provided;
- Regularly checking with providers to ensure the provider's capacity to continue service provision; and
- Performing a monthly face-to-face visit with the recipient to determine ongoing service needs as well as satisfaction with current service provision.

---

**Service Providers' Authorization for Services**

The plan of care serves as the waiver service provider's authorization to render the service. The community support coordinator must send a copy of the recipient's plan of care to the service provider in advance of service provision. Without this plan, the provider cannot be assured reimbursement. The waiver services are limited to the amount, duration and scope of the services described on the recipient's plan of care. If a provider exceeds the limits specified on the plan of care, Medicaid is not responsible for reimbursing the excess.

Service authorization is contingent upon the enrolled recipient remaining eligible for Medicaid during the month of service. If a recipient loses his Medicaid eligibility, the service authorization is null and void. Should this happen, the provider must contact the community support coordinator, the case manager, or the BSCIP Headquarters Office.

---

**Changing Service Authorization**

If a change in the plan of care results in either increased or decreased expenditures, the BSCIP Headquarters Office must approve the proposed revision in advance. If the change does not affect the budget, (i.e., the recipient wishes to change to a different provider with an identical rate), prior approval is not required, and the required changes to the plan of care must be made.

---

Case 2:09-md-02047-EEF-MBN Document 18062-2 Filed 10/20/15 Page 67 of 138
Case 4:03-cv-00415-FBN Document 18062-2 Filed 10/20/15 Page 67 of 138

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

*Plan of Care,* continued

| | |
|---|---|
| **Plan of Care Redetermination** | The plan of care must be reviewed at least every six months. At the time of review, all authorized services are examined to determine their effectiveness and benefit to the recipient. The community support coordinator must ensure that this process is completed in a timely, orderly manner to prevent disruption of services. |

| | |
|---|---|
| **Termination of Services** | Termination of a waiver service can occur when it is determined that: |

- The service is no longer necessary to try to prevent institutionalization and to allow the recipient to live in the least restrictive setting appropriate to his needs;
- The recipient chooses to terminate participation in the waiver program;
- The recipient moves out of state;
- The recipient becomes financially ineligible for Medicaid;
- The recipient is no longer medically stable;
- The recipient no longer meets the medical eligibility criteria (e.g., a brain or spinal cord injury as defined in Chapter 381.745, F.S.);
- The recipient is non-compliant or repeatedly refuses to follow a written plan of care or to cooperate with waiver case managers, as determined by the Department of Health (DOH);
- The recipient no longer meets the defined level of care criteria for Intermediate II, or higher (i.e., Intermediate II, Intermediate I or Skilled) as stated in 56G-4.180, F.A.C.; or
- The recipient dies.

The community support coordinator and the case manager must discuss all decisions to terminate services with the recipient and the service provider prior to the action. If the decision is made to terminate a service, written notice must be sent to the recipient on a Notice of Decision form (Appendix G) at least ten days in advance of terminating the service. If the recipient disagrees with the action being taken, the recipient has the right to appeal the adverse action.

Note: See Appendix G in this handbook for a copy of the Notice of Decision Form.

Note: See Appeal Rights and Fair Hearings for additional information on fair hearings.

## Covered Services

**Introduction**

TBI/SCI waiver services are based on recipient needs that are documented in an approved plan of care. The plan of care specifies services to be provided and the cost of these services. The services listed below represent the services, in addition to community support coordination, that may be purchased for a recipient who is participating in the TBI/SCI waiver and who needs the services to reach an outcome described on his plan of care.

- Adaptive Health and Wellness
- Assistive Technologies
- Attendant Care
- Behavioral Programming
- Companion Services
- Consumable Medical Supplies
- Environmental Accessibility Adaptations
- Life Skills Training
- Personal Adjustment Counseling
- Personal Care Services
- Rehabilitation Engineering Evaluation

## Service Documentation Requirements

**Introduction**

Medicaid will only reimburse for waiver services that are specifically identified in the approved plan of care by service type, frequency and duration and for which there is sufficient documentation supporting the provision and receipt of the service.

**General Service Documentation Requirements**

When a Medicaid waiver service is rendered, the provider must document the service provision and file the documentation prior to requesting reimbursement. Appropriate documentation is required in order to receive payment. All service documentation must be dated and signed by the service provider.

A list of the documentation required for each service is included in the service description. For the purpose of monitoring and review of service claims, the provider must retain such documentation on file for a minimum of five years.

Note: See Documentation Requirements under the specific services for a detailed listing of the documentation that is required prior to reimbursement.

Note: See Chapter 2 of the Medicaid Provider General for additional information regarding service documentation requirements.

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

### *Service Documentation Requirements,* continued

| | |
|---|---|
| **Service Log** | The provider must keep a service log that includes documentation of the recipient's name, recipient's Medicaid ID number, the description of the service, activities, supplies or equipment provided and corresponding procedure code, times and dates service was rendered, amount billed for each service, provider's name and Medicaid provider number. |

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

---

### Adaptive Health and Wellness

| | |
|---|---|
| **Description** | The adaptive health and wellness service includes membership in a health studio for the purpose of improving coordination, flexibility, strength, stamina, balance, and cardiovascular fitness. Improvement in these functions enhances the recipient's ability to perform activities of daily living and helps to avoid secondary complications of disability. |

---

**Service Requirements**

A physician must order this service. The physician's order must be renewed every six months.

A physical therapist licensed to practice in Florida must conduct an initial assessment of the recipient. The assessment must include, but is not limited to, range of motion, transfer and gait skills, strength testing, and the level of assistance required.

The physical therapist works with the recipient to design an appropriate workout regimen.

The physical therapist must:

- Monitor changes to the recipient's workout regimen;
- Review the recipient's workout regimen when there is a change in the recipient's medical status; and
- At least quarterly, conduct an assessment of the recipient to measure the outcomes of the workout regimen.

---

**Limitations**

Adaptive health and wellness services are limited to the amount, duration and scope of the services described in the recipient's plan of care and the approved budget for cost of services.

The maximum reimbursement for membership in a health studio is $50 per month, not to exceed $600 per year.

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

### *Adaptive Health and Wellness,* continued

| | |
|---|---|
| **Documentation Requirements** | Documentation of services must include at a minimum: |

- Physician's written order for the service (to be renewed every six months);
- Activities in each session charted on a flow chart;
- Physical therapist's documentation of the recipient's progress towards objectives of the workout regimen;
- Physical therapist's documentation of the findings of the quarterly assessment; and
- Documentation of recipient's attendance at the facility.

Note:  See Service Documentation Requirements in this chapter and Record Keeping Requirements in Chapter 2 of the Florida Medicaid Provider General Handbook for additional information regarding service documentation requirements.

Case 2:09-md-02047-EEF-MBN  Document 18062-2  Filed 10/20/15  Page 72 of 138
Case 4:03-cv-00417-SPM-WCS  Document 19062-2  Filed 10/20/15  Page 72 of 138

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

### *Assistive Technologies*

| | |
|---|---|
| **Description** | Adaptive equipment or other technologies include items, equipment, or products, whether acquired commercially or off the shelf, which can be modified or customized and used to increase, maintain, or improve the functional capabilities of recipients with disabilities. |
| **Service Requirements** | Assistive technologies services include the purchase of the equipment or device, as well as maintenance and repair of such equipment or technologies.

Repairs and maintenance are subject to the terms of the existing warranty. Recipients must exhaust all applicable warranty services prior to requesting waiver services.

All equipment and technologies must meet applicable standards of manufacture, design and installation.  If the equipment is to be repaired, the repair and its cost must be specified on the plan of care. |
| **Limitations** | Assistive technologies services will only be reimbursed with TBI/SCI waiver funds based on certification through a rehabilitation engineering evaluation that such technologies or equipment are necessary to try to prevent institutionalization and to enable the recipient to live in the least restrictive setting appropriate to his needs.

Items reimbursed with TBI/SCI waiver funds must be in addition to any medical equipment and supplies furnished under the Medicaid Durable Medical Equipment and Medical Supplies Program.  Please refer to the Florida Medicaid Durable Medical Equipment and Medical Supplies Coverage and Limitations Handbook for information on the equipment and supplies covered by the Medicaid Durable Medical Equipment and Medical Supplies Program.

Items that are not of direct medical or remedial benefit to the recipient and items for diversional or entertainment purposes are not covered under the TBI/SCI Waiver Program.

Assistive technologies services are limited to the amount, duration and scope of the services described in the recipient's plan of care and the approved budget for cost of services.

The maximum reimbursement for assistive technologies shall not exceed $2500 per year.

<u>Note</u>:  The Florida Medicaid Durable Medical Equipment and Medical Supplies Coverage and Limitations Handbook are available on the Medicaid fiscal agent's website at http://floridamedicaid.acs-inc.com.  Click on Provider Support, and then on Handbooks.

<u>Note</u>:  See Rehabilitation Engineering Evaluation in this chapter for additional information on the evaluation. |

*Assistive Technologies,* continued

| | |
|---|---|
| **Documentation Requirements** | For reimbursement, the provider must submit an invoice along with documentation from the community support coordinator stating that the item or technology was received and is operating according to the manufacturer's description. |

For monitoring purposes, the provider must maintain a file that includes:

- A copy of the authorization to provide services; and
- A copy of the receipt for the product and the documentation from the community support coordinator verifying receipt together with a statement that the product is operating according to the manufacturer's specifications.

Note:  See Service Documentation Requirements in this chapter and Record Keeping Requirements in Chapter 2 of the Florida Medicaid Provider General Handbook for additional information regarding service documentation requirements.

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

---

***Attendant Care***

| | |
|---|---|
| **Description** | Attendant care is hands-on care of both a supportive and health-related nature, specific to the needs of a medically stable, physically handicapped recipient.  Attendant care services are those that substitute for the absence, loss, diminution, or impairment of a physical or cognitive function. |

Attendant care services may include skilled or nursing care to the extent permitted by state law.  Housekeeping activities that are incidental to the performance of care may also be furnished as part of attendant care services.

**Place of Service**   Attendant care must be provided in the recipient's home or workplace.

**Limitations**   A registered nurse, licensed to practice in Florida, must supervise attendant care services providers.  The frequency and intensity of supervision must include direct observation of attendant care services by the registered nurse at least every 60 days.  If the attendant care services provider is a registered nurse, the supervisory requirement is waived.

Attendant care is limited to the amount, duration and scope of the services described in the recipient's plan of care and the approved budget for cost of services.

Attendant care may be provided concurrently (at the same time and date) with another service, with the exception of personal care or companion services.

The maximum reimbursement for attendant care services is $7.50 per unit, not to exceed 12 units (3 hours) per day.  A unit is defined as a 15-minute time period or portion thereof.

**Documentation Requirements**   The following documentation is required prior to reimbursement for services: a daily service log documenting the time of arrival and departure and time spent performing specific allowable activities required by the recipient.  The attendant providing the service must sign the log.

For monitoring purposes, the provider must maintain a file that includes:

- A copy of the service logs for the period being reviewed;
- A copy of the service authorization; and
- A copy of verification of supervision by the registered nurse (if the provider is not a registered nurse).

Note:  See Service Documentation Requirements in this chapter and Record Keeping Requirements in Chapter 2 of the Florida Medicaid Provider General Handbook for additional information regarding service documentation requirements.

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

---

### *Behavioral Programming*

---

| | |
|---|---|
| **Description** | Behavioral programming is recipient-designed strategies to decrease a recipient's maladaptive behaviors that interfere with his ability to remain in the community. It is provided to assist a person to learn new behavior, to increase existing acceptable behavior, to reduce existing maladaptive behavior, and to emit behavior under precise environmental conditions. |

---

| | |
|---|---|
| **Service Requirements** | Behavioral programming services must be deemed necessary to avoid institutionalization and to enable the recipient to live in the least restrictive setting appropriate to his needs. |

Behavioral programming services include a complete assessment of the maladaptive behavior(s) and development of a structured behavioral intervention plan. The plan must be implemented with on-going training and supervision to caregivers and behavior aides. Consultation with community support coordinators must be ongoing for reassessment of the plan.

Behavioral programming does not rely on cognitive therapies and expressly excludes psychological testing, neuropsychology, sex therapy, psychoanalysis, hypnotherapy and long-term counseling as treatment modalities. However, personal adjustment counseling services may be provided as an adjunct to behavioral programming.

Training for family caregivers is part of the service when these persons are integral to the implementation or monitoring of a behavior programming service plan.

---

| | |
|---|---|
| **Place of service** | Behavioral programming may be provided in the recipient's home or anywhere in the community. However, in all cases, behavioral programming services must be provided in the setting(s) relevant to the behavior problems being addressed. |

---

| | |
|---|---|
| **Limitations** | Behavioral programming services may be provided concurrently (at the same time and date) with another service. |

Behavioral programming services are limited to the amount, duration and scope of the services described in the recipient's plan of care and the approved budget for cost of services.

The maximum reimbursement for behavioral programming services is $12 per unit, not to exceed eight units (two hours) per day. A unit is defined as a 15-minute time period or portion thereof.

---

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

## *Behavioral Programming,* continued

**Documentation Requirements**

The following documentation is required prior to reimbursement for the service:

- A service log specifying time and dates of service signed by the provider; and
- A monthly summary of progress towards goals and objectives specified in the service plan.

If the provider is to be reimbursed for an assessment, the provider must submit:

- An invoice; and
- A copy of the assessment report.

For monitoring purposes, the provider must have a file that includes:

- A copy of the behavior programming services plan;
- A copy of the service logs for the period being reviewed;
- A copy of the monthly summary notes; and
- A copy of the assessment report, if the provider was authorized to perform the assessment.

Note:  See Service Documentation Requirements in this chapter and Record Keeping Requirements in Chapter 2 of the Florida Medicaid Provider General Handbook for additional information regarding service documentation requirements.

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

---

### *Companion Services*

---

**Description**

Companion services are non-medical care, supervision and socialization, provided to a functionally impaired adult.  Companions may assist or supervise the recipient with such tasks as meal preparation, laundry and shopping as specified in the plan of care.  The provision of companion services does not entail any invasive hands-on nursing care.  Providers may also perform light housekeeping tasks that are incidental to the care and supervision of the recipient.

---

**Service Requirements**

Companion services are provided in accordance with a therapeutic goal in the plan of care, and cannot be purely diversional in nature.

---

**Place of Service**

Companion services may be provided in the home of the recipient or anywhere in the community where supervision and care is necessary.

Companion services may not be provided or received in the companion services provider's home.

---

**Limitations**

Companion services are limited to the amount, scope and duration of the services described in the recipient's plan of care and approved budget for cost of services.  Companion services cannot be provided by a legally responsible family member.

The maximum reimbursement for companion services is $3.00 per unit, not to exceed 24 units (six hours) per day.  A unit is defined as a 15-minute time period or portion thereof.  Companion services cannot be concurrent with attendant care services or personal care services.

---

**Documentation Requirements**

For reimbursement purposes, the provider must submit:

• An invoice; and
• A service log detailing times of arrival and departure and specific details of time spent in each activity for each date of service.  The service log must be signed by the provider.

For monitoring review purposes, the provider must have copies of all service logs for the period being reviewed.

Note:  See Service Documentation Requirements in this chapter and Record Keeping Requirements in Chapter 2 of the Florida Medicaid Provider General Handbook for additional information regarding service documentation requirements.

---

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

## Consumable Medical Supplies

**Description**
Consumable medical supplies are disposable supplies used by the recipient or caregiver that are essential to adequately care for the recipient's personal needs. Such supplies enable the recipient either to perform activities of daily living or to stabilize and monitor a health condition.

**Limitations**
Consumable medical supplies reimbursed with TBI/SCI waiver funds must be in addition to any medical supplies furnished under the Medicaid Durable Medical Equipment and Medical Supplies Program. The Medicaid Durable Medical Equipment and Medical Supplies Program is a Medicaid state plan service that is available to all Medicaid recipients. Please refer to the Florida Medicaid Durable Medical Equipment and Medical Supplies Coverage and Limitations Handbook for information on the supplies covered by the program.

The consumable medical supplies must be of direct medical or remedial benefit to the recipient.

The supplies and the needed amount of each item must be specifically authorized in the plan of care.

If multiple vendors are enrolled to provide consumable medical supplies, the recipient must be encouraged to select from among the eligible vendors based upon the availability of the item needed, quality, and best price.

Recipients or their family members cannot be reimbursed for consumable medical supplies purchased on their own.

Consumable medical supplies are limited to the amount, scope and duration of the services described in the recipient's plan of care and approved budget for cost of services.

The maximum reimbursement for consumable medical supplies is $250 per month.

Note: The Florida Medicaid Durable Medical Equipment and Medical Supplies Coverage and Limitations Handbook are available on the Medicaid fiscal agent's website at http://floridamedicaid.acs-inc.com. Click on Provider Support, and then on Handbooks.

**Documentation Requirements**
For reimbursement purposes, the provider must submit an invoice listing the supplies purchased.

For monitoring and review purposes, the provider must have a copy of the invoices listing the supplies purchased for the period being reviewed.

Note: See Service Documentation Requirements in this chapter and Record Keeping Requirements in Chapter 2 of the Florida Medicaid Provider General Handbook for additional information regarding service documentation requirements.

### Environmental Accessibility Adaptations

**Description**

Environmental accessibility adaptations are home modifications that include physical adaptations to the home which are authorized on an recipient's plan of care and necessary to ensure the health, welfare and safety of the recipient, or which enable the recipient to function with greater independence in the home, and without which, the recipient would require institutionalization.

Such adaptations may include the installation of ramps and grab-bars, widening of doorways, modification of bathroom facilities, or installation of specialized electric and plumbing systems, which are necessary to accommodate medical equipment, supplies or assistive technologies that are necessary for the welfare of the recipient.

**Service Requirements**

Environmental accessibility adaptation services must be provided in accordance with applicable state or local building codes.

Environmental accessibility adaptations will only be reimbursed with waiver funds based on certification through a rehabilitation engineering evaluation that such modifications are necessary to prevent institutionalization and to enable the recipient to live in the least restrictive setting appropriate to his needs.

Note: See Rehabilitation Engineering Evaluation in this chapter for additional information on the evaluation.

**Place of Service**

Adaptations can be made only to the recipient's dwelling place.

Adaptations are allowed in rented homes or apartments only with the written permission of the landlord. The written agreement between the recipient and landlord must specify any requirements for restoration of the property to its original condition if the recipient moves. It must further specify that the BSCIP and waiver funding are not obligated for costs of restoration.

Recipients living in assisted living facilities or other licensed residential settings are not eligible to receive this service. The responsibility for adaptations belongs to the facility owner or operator.

Case 3:09-md-02047-EEF-MBN Document 19062-2 Filed 05/18/15 Page 80 of 138
Case 4:09-cv-00410-SPM-WRN Document 1996-2 Filed 05/04/06 Page 80 of 138

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

*Environmental Accessibility Adaptations,* continued

| | |
|---|---|
| **Limitations** | Environmental accessibility adaptation services are limited to the amount, duration, and scope of the adaptation project specified on the service plan and current approved cost plan. |

Environmental accessibility adaptation services are limited to the amount, duration, and scope of the adaptation project specified on the service plan and current approved cost plan.

If multiple vendors are enrolled to provide environmental adaptation services, the recipient must be encouraged to select from among the eligible vendors based upon availability, quality of workmanship, and best price.

Excluded are those adaptations or improvements to the home that are of general utility, and are not of direct medical or remedial benefit to the recipient such as carpeting and central air conditioning.

Environmental accessibility adaptations include only adaptations to an existing structure, and must be provided in accordance with applicable state or local building codes.  Adaptations that add to the total square footage of the home are excluded.

Recipients requesting environmental accessibility adaptations are expected to apply for all other assistance available to meet the environmental needs of the recipient.

Environmental accessibility adaptations do not include those adaptations or improvements to the home that are:

• Of general utility;
• Considered to be standard housing obligations of the owner or tenant; and
• Not considered to be of medical or therapeutic benefit to the waiver participant.

If adaptations are made to a recipient's residence, adaptation to another residence cannot be made until two years after the adaptation to the first residence.

The maximum reimbursement for adaptations shall not exceed $5000 per year.

### *Environmental Accessibility Adaptations,* continued

| | |
|---|---|
| **Documentation Requirements** | For reimbursement purposes, the provider must submit: |

- An invoice specifying the adaptations completed on the home; and
- Documentation that the services were completed in accordance with the contract or agreement.  Verification of completion is done by a home visit.

For monitoring review purposes, the provider must have, at a minimum:

- A copy of the invoices for the period being reviewed; and
- A copy of the service authorization.

<u>Note</u>:  See Service Documentation Requirements in this chapter and Record Keeping Requirements in Chapter 2 of the Florida Medicaid Provider General Handbook for additional information regarding service documentation requirements.

---

## *Life Skills Training*

**Description**

Life skills training provides goal-oriented training and support to injured individuals residing in the community.  It is intended to provide skills necessary to resume life after injury.  It is designed to foster successful integration into the community and should, ultimately, lead to a higher level of independence.

Life skills training includes assistance and training with financial resource management, utilization of community resources, and management of personal assistance services.  Training and support also includes areas related to activities of daily living such as grooming and personal hygiene. Other examples include household management, cooking and nutrition, family and child support activities, health and disability self-management, social integration skills and interpersonal relationships.

**Service Requirements**

Life skills training must be based on a functional community assessment that identifies the types of training and assistance needed.  The assessment is a tool designed by the life skills trainer to assist the provider in becoming familiar with the specific training needs of the recipient.   The assessment will examine all aspects of the recipient's daily life including relationships and the recipient's ability to perform activities of daily living and maintain a safe, clean environment.

A financial profile may also be required if money management is the area where training and support is needed.  This will include an analysis of the household costs and revenue sources necessary to maintain a balanced monthly budget.

**Limitations**

Life skills training is limited to the amount, duration and scope of the services authorized in the recipient's plan of care and approved budget for cost of services.

The maximum reimbursement for life skills training is $5.25 per unit, not to exceed eight units (two hours) per day.  A unit is defined as a 15-minute time period or portion thereof.

Case 3:09-md-02047-EEF-MBN   Document 18062-2   Filed 05/10/15   Page 83 of 138
Case 4:03-cv-00010-SPM-AK   Document 186-2   Filed 10/20/06   Page 83 of 138

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

### *Life Skills Training,* continued

| | |
|---|---|
| **Documentation Requirements** | For reimbursement purposes, the provider must submit:<br><br>• An invoice;<br>• Copies of assessments and training objectives to be met; and<br>• A service log that is to be supported by documentation of activities, training methods, and contacts with the recipient.<br><br>For purposes of review and monitoring, the provider must maintain:<br><br>• Copies of service logs for the period being reviewed including the documentation of activities and training as well as progress notes detailing recipient's response and progress made toward goals set forth; and<br>• A copy of the service authorization.<br><br><u>Note</u>: See Service Documentation Requirements in this chapter and Record Keeping Requirements in Chapter 2 of the Florida Medicaid Provider General Handbook for additional information regarding service documentation requirements. |

### *Personal Adjustment Counseling and Training*

**Description**

Personal adjustment counseling and training consists of ongoing therapeutic services to resolve interpsychic or interpersonal conflict resulting from the traumatic injury. Counseling may be provided as an adjunct to behavioral programming, and may include services for substance abuse.

Personal adjustment counseling and training is necessary to foster independence and to try to prevent institutionalization and to enable the recipient to live in the least restrictive setting appropriate to his needs.

If counseling and training are provided to members of a recipient's family, the services must be for the purposes of assisting the family in implementing the plan of care, implementing a behavioral intervention plan, or for the direct benefit of the recipient. For purposes of this service, "family" is defined as the person(s) who live with or provide care to a waiver participant and may include a parent, spouse, children, relative, or in-laws.

**Place of Service**

Personal adjustment counseling and training services may be provided in the following places:

- Recipient's place of residence;
- Recipient's place of employment with advance permission from the employer; or
- In the provider's office.

**Limitations**

Personal adjustment counseling and training must supplement mental health and substance abuse services available under the Medicaid Community Behavioral Health Program. The Medicaid Community Behavioral Health Program is a Medicaid state plan program available to all Medicaid recipients. See the Florida Medicaid Community Behavioral Health Services Coverage and Limitations Handbook for additional information on the program's services.

The maximum reimbursement for personal adjustment counseling and training is $12.00 per unit, not to exceed eight units (two hours) per day. A unit is defined as a 15-minute time period or portion thereof.

Note: The Florida Medicaid Community Behavioral Health Services Coverage and Limitations Handbook are available on the Medicaid fiscal agent's website at http://floridamedicaid.acs-inc.com. Click on Provider Support, and then on Handbooks.

**Personal Adjustment Counseling and Training,** continued

---

| | |
|---|---|
| **Documentation Requirements** | For reimbursement purposes, the provider must submit: |

- An invoice;
- A monthly summary; and
- A copy of the assessment and treatment plan.

For purposes of review and monitoring, the provider must maintain copies of service logs for the period being reviewed including the documentation of activities.

Note:  See Service Documentation Requirements in this chapter and Record Keeping Requirements in Chapter 2 of the Florida Medicaid Provider General Handbook for additional information regarding service documentation requirements.

---

## *Personal Care Service*

| | |
|---|---|
| **Description** | Personal care services are assistance with eating, bathing, dressing, personal hygiene, and activities of daily living. |

Personal care services may include assistance with preparation of meals, but does not include the cost of the meals themselves.

When specified in the plan of care, this service may also include such housekeeping chores as bed making, dusting and vacuuming, which are incidental to the care furnished, or which are essential to the health and welfare of the recipient, rather than the recipient's family.

**Service Requirements**

Personal care services must be supervised by a registered nurse, who directly observes the personal care services at least every 90 days.

**Limitations**

Personal care service is limited to the amount, duration and scope of the services described in the recipient's plan of care.

Payment will not be made for personal care services furnished by a legally responsible family member.

This service cannot be provided concurrently with attendant care services or companion services.

The maximum reimbursement for personal care services is $5.00 per unit of service, not to exceed 16 units (four hours) per day.  A unit is defined as a 15-minute time period or portion thereof.

**Documentation Requirements**

For reimbursement purposes, the provider must submit:

- An invoice; and
- Service logs which detail specific tasks completed on each date of service for which reimbursement is requested.

For purposes of review and monitoring, the provider must maintain:

- Copies of service logs for the period being reviewed including the documentation of tasks;
- A copy of the service plan; and
- Documentation of supervisory visit by the registered nurse if the provider is not a registered nurse.

Note:  See Service Documentation Requirements in this chapter and Record Keeping Requirements in Chapter 2 of the Florida Medicaid Provider General Handbook for additional information regarding service documentation requirements.

### Rehabilitation Engineering Evaluation

| | |
|---|---|
| **Description** | Rehabilitation engineering evaluation includes an assessment of the systematic application of technologies, or engineering methodologies needed to address the barriers confronted by individuals with brain and spinal cord injuries. |
| | The areas to be assessed include education, rehabilitation, transportation, independent living, and socialization. |
| | The service also includes assistance in obtaining or maintaining assistive technologies devices, as well as training and technical assistance needed by recipients and caregivers regarding the operation or application of such devices which are necessary to ensure the health and welfare of the recipient, or which enable him to remain independent in the community. |
| | The service is intended for recipients who require further evaluation than that usually required by a recipient prior to receipt of assistive technologies service. |
| **Service Requirements** | Prior to authorizing services for new recipients, a rehabilitation engineering evaluation will be authorized to determine the need for assistive technologies and home modifications, which will foster independence and reduce the need for hands-on assistance and supervision.  The rehabilitation engineering evaluation will verify that assistive technologies or equipment are necessary to prevent institutionalization or risk of institutionalization and to enable the recipient to live in the least restrictive setting appropriate to his needs. |
| **Limitations** | Rehabilitation engineering evaluation services are limited to the amount, duration, and scope of the evaluation described in the plan of care and approved cost plan. |
| | The maximum reimbursement for a rehabilitation engineering evaluation is $200 per evaluation, not to exceed one evaluation per month. |
| **Documentation Requirements** | For reimbursement purposes, the provider must submit:<br>• An invoice; and<br>• Copy of the evaluation specifying date of service. |
| | For purposes of review and monitoring, the provider must maintain:<br>• Copy of the service plan, and<br>• Copy of the evaluation. |
| | Note:  See Service Documentation Requirements in this chapter and Record Keeping Requirements in Chapter 2 of the Florida Medicaid Provider General Handbook for additional information regarding service documentation requirements. |

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

---

## *Appeal Rights and Fair Hearing Process*

| | |
|---|---|
| **Right to a Fair Hearing** | In accordance with Chapter 42, 431.221(d) of the Code of Federal Regulations, a recipient has certain appeal rights. |
| | Refer to Notice of Decision Form (Appendix G). |
| **Reinstated Benefits** | Reinstated or continued benefits must not be reduced or terminated prior to the final hearing decision unless an additional cause for adverse action occurs while the hearing decision is pending, and the recipient fails to request a hearing after a subsequent notice of adverse action. |
| **Necessary Actions to be Taken When Appeal is Granted** | Benefit changes are effective based on the date specified by the hearing officer. |

# CHAPTER 3
# TRAUMATIC BRAIN AND SPINAL CORD INJURY WAIVER SERVICES
# PROCEDURE CODES AND FEES

## Overview

**Introduction**

This chapter provides and describes the reimbursement requirements for the Traumatic Brain Injury/Spinal Cord Injury (TBI/SCI) Waiver Program services.

**In This Chapter**

This chapter contains:

| TOPIC | PAGE |
|-------|------|
| Reimbursement Information | 3-1 |
| Procedure Code Modifiers | 3-5 |

## Reimbursement Information

**Introduction**

Medicaid reimburses home and community-based waiver procedure codes based on the Healthcare Common Procedure Coding System (HCPCS) Level III procedure codes that are locally assigned codes, approved by the Centers for Medicare and Medicaid Services.

**Billing Procedures**

Payments for all services are based upon the specific service authorization noted in the recipient's plan of care. All authorizations to service providers are paid only for the amount of time and duration specified on the plan of care. Service providers must submit invoices and all documentation supporting the delivery of service to the BSCIP Billing Office, located at 15857 SE 19th Highway, Cross City, FL 32628. Staff will review the invoice and supporting documentation for accuracy and submit the invoice to the Department of Health (DOH) Office of Finance and Accounting.

Each provider is required to submit all invoices or claims for services within 60 days of the date of service. This will be accomplished by the service provider submitting an invoice to the BSCIP Billing Office as instructed.

Specific billing instructions and procedures for submitting invoices or claims are available through the BSCIP Billing Office.

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

*Reimbursement Information,* continued

| | |
|---|---|
| **BSCIP Waiver Service Rates** | The rate for payment for all services is determined by the BSCIP Headquarters Office and subject to a maximum rate established by Medicaid and the availability of appropriated funding from the Florida Legislature.<br><br>Once BSCIP has established a rate with a waiver provider for a certain level of service, that rate must apply to all recipients receiving the same level of service.  The rate is included in the provider's Medicaid Waiver Referral Agreement (Appendix C).<br><br>Providers may not charge different rates based on the recipient's home region or other arbitrary criteria, if the identical service is being provided.<br><br>Note:  See Appendix C for a copy of the Medicaid Waiver Referral Agreement. |
| **Reimbursement by Session or Quarter Hour** | For services billed by the session or quarter hour, all units provided on a single day must be aggregated on one line of the claim form showing the date of service and the units provided.  These services include:<br><br>• Attendant Care<br>• Companion Care<br>• Personal Care<br>• Behavioral Programming<br>• Life Skills Training<br>• Personal Adjustment Counseling |
| **Reimbursement by Item(s)** | For services billed for particular items or jobs, the total for all items provided on a single day must be shown on one line of the claim form with the date provided and the unit of service as "1."  These services include:<br><br>• Environmental Accessibility Adaptations<br>• Assistive Technologies<br>• Consumable Medical Supplies<br>• Rehabilitation Engineering Evaluation |
| **Reimbursement by the Month** | For services billed by the month, each month of service must be shown on one line of the claim form, with the date of service the last day of the month and the unit of service as "1."  These services include:<br><br>• Adaptive Health and Wellness<br>• Community Support Coordination |

*Reimbursement Information,* continued

| | |
|---|---|
| **Recipient Responsibility** | As part of the eligibility process, the Department of Children and Families (DCF) applies a standard formula to calculate a financial responsibility, if any, for recipients who receive waiver services.  The recipient and the case manager are notified by DCF of the amount of the recipient's financial responsibility. |
| **Consolidated Billing** | It is a DOH requirement for service providers to consolidate the service amounts from the daily service logs and submit a consolidated amount at the end of the month for payment using the last day of the month as the date of service.  If services terminate before the end of the month, providers must combine each day's service for the service period and bill at the end of the service period, using the last day of the service period as the date of service. |
| **Recoupment of Funds** | Providers of waiver services must provide the services in a manner that meets the definition and requirements specified in this handbook.  If the provider fails to meet service standards, to properly document the delivery of services, or receives reimbursement for services not properly authorized or delivered, these payments are considered overpayments and will result in a recoupment of funds by DOH or Medicaid. |

Community support coordinators are subject to the recoupment policies specific to the performance of identified, essential support coordination activities as follows:

> An amount equal to a pro-rated daily portion of each monthly rate shall be paid back to the DOH by the community support coordinator for each day after the effective date of a recipient's care plan including projected costs if the plan is not submitted to the BSCIP Waiver Administrator for review and approval.

All other providers are subject to recoupment specific to the service requirements specified in this handbook.

<u>Note</u>:  See Chapter 5 in the Florida Medicaid Provider General Handbook for additional information on Medicaid fraud and abuse.

| | |
|---|---|
| **Limitations** | Providers may not bill for service when a recipient is not in attendance or receiving a service.  Services that are ordinarily provided in accumulated units (for example, day or month) must be adjusted to reflect actual service provision. |

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

## *Reimbursement Information,* continued

| | |
|---|---|
| **Timely Submission of Claims** | All invoices for TBI/SCI Waiver services must be submitted within 60 days of the date of service.  Once a service is provided and documented, the provider should promptly submit all invoices for reimbursement to the BSCIP Billing Office that is specified in the provider's Medicaid Waiver Referral Agreement. |
| | All invoices submitted for payment must be correct, complete, legible and in accordance with the approved service authorization.  Any problems with an invoice should be corrected and the claim resubmitted promptly. |
| | If the BSCIP processes an invoice for payment, and the provider determines an error has been made, it is the provider's responsibility to promptly notify the BSCIP. |
| | Note:  See Chapter 1 in the Florida Medicaid Provider Reimbursement Handbook for additional information on timely claim submission. |
| **Procedure Code Table** | The TBI/SCI Waiver Services Procedure Code Table found in Appendix A, corresponds to the services described in Chapter 2 of this handbook. |
| | The procedure code table specifies: |
| | • The name of the service; <br> • The procedure codes and identifying modifiers associated with the service; <br> • Unit of service; and <br> • Maximum fee. |

Case 2:09-md-02047-EEF-MBN   Document 18062-2   Filed 10/26/15   Page 93 of 138
Case 4:03-cv-00016-SPM-AK   Document 198-2   Filed 10/20/06   Page 93 of 138

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

---

### *Procedure Code Modifiers*

---

| | |
|---|---|
| **Definition of Modifier** | For certain types of services, one or two 2-digit modifiers must be entered on the claim form.  Modifiers more fully describe the procedure performed so that accurate payment may be determined. |

The modifiers are entered in the field next to the procedure code field in item 33, under Modifier.

TBI/SCI waiver services providers must use the modifiers with the procedure codes listed on Appendix A, Procedure Codes and Fee Schedule, when billing for the specific services in the procedure code descriptions.  The modifiers listed in Appendix A can only be used with the procedure codes listed.  Use of modifiers with any other procedure codes will cause the claim to deny or pay incorrectly.

<u>Note</u>:  See in the Florida Medicaid Provider Reimbursement Handbook, Non-Institutional 081, for additional information on entering modifiers on the claim form.

---

# APPENDIX A
## TBI/SCI WAIVER SERVICES PROCEDURE CODES, REIMBURSEMENT AND MAXIMUM LIMITS

<u>Non-Duplication of Services</u>:  TBI/SCI Waiver services may not duplicate services available through other funding sources or other Medicaid programs.

| SERVICE | PROCEDURE CODE | MODIFIER | REIMBURSEMENT PER UNIT | MAXIMUM LIMIT PER RECIPIENT |
|---|---|---|---|---|
| Adaptive Health and Wellness | S9970 | UA | $50 per month | Not to exceed $600 per year |
| Assistive Technologies | E1399 | UA | Variable | Not to exceed $2500 per year |
| Attendant Care | S5125 | UA | $7.50 per 15-minute unit | 12 units (3 hours) per day |
| Behavior Programming | 96152 | UA | $12.00 per 15-minute unit | 8 units (2 hours) per day |
| Community Support Coordination | G9012 | UA | $120 per month | 1 Unit ($120) per month |
| Companion Care | S5135 | UA | $3.00 per 15-minute unit | 24 units (6 hours) per day |
| Consumable Medical Supplies | S5199 | UA | $250 per month | Not to exceed $250 per month |
| Environmental Accessibility Adaptations | S5165 | UA | Variable | Not to exceed $5000 per year |
| Life Skills Training | H2014 | UA | $5.25 per 15-minute unit | 8 units (2 hours) per day |
| Personal Adjustment Counseling | H2019 | UA | $12.00 per 15-minute unit | 8 units (2 hours) per day |
| Personal Care | T1019 | UA | $5.00 per 15-minute unit | 16 units (4 hours) per day |
| Rehabilitation Engineering Evaluation | T1028 | UA | $200 per evaluation | 1 Unit ($200) per recipient month |

# APPENDIX B
# FLORIDA BRAIN & SPINAL CORD INJURY
# PROGRAM REGIONS

| REGION | COUNTIES INCLUDED |
|---|---|
| **REGION 1**<br>2000 Bldg, Suite 101B<br>Midtown Centre<br>3974 Woodcock Drive<br>Jacksonville, FL 32207<br>(904) 348-2755 | Alachua, Baker, Bay, Bradford, Calhoun, Clay, Columbia, Dixie, Duval, Escambia, Franklin, Gadsden, Gilchrist, Gulf, Hamilton, Holmes, Jackson, Jefferson, Lafayette, Leon, Levy, Liberty, Madison, Nassau, Okaloosa, Santa Rosa, St. Johns, Suwannee, Taylor, Union, Wakulla, Walton, Washington |
| **REGION 2**<br>Suite 212<br>3751 Maguire Boulevard<br>Orlando, FL 32803<br>(407) 897-5964 | Brevard, Citrus, Flagler, Hernando, Lake, Marion, Orange, Osceola, Putnam, Seminole, Sumter, Volusia |
| **REGION 3**<br>Suite 212<br>9400 4th Street, North<br>St. Petersburg, FL 33702<br>(727) 570-3427 | DeSoto, Hardee, Highlands, Hillsborough, Manatee, Pasco, Pinellas, Polk, Sarasota |
| **REGION 4**<br>2550 West Oakland Park Blvd.<br>Ft. Lauderdale, FL 33311<br>(954) 677-5639 | Broward, Charlotte, Collier, Glades, Hendry, Indian River, Lee, Martin, Okeechobee, Palm Beach, St. Lucie |
| **REGION 5**<br>401 Northwest 2nd Avenue, Room S-221<br>Miami, FL 33128<br>(305) 377-5464 | Miami-Dade and Monroe |

# APPENDIX C

# HOME AND COMMUNITY-BASED WAIVER
# REFERRAL AGREEMENT

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook





# HOME AND COMMUNITY-BASED

# WAIVER REFERRAL AGREEMENT

**This Referral Agreement** made this _____ day of _____ 200__, between the Department of Health's Brain and Spinal Cord Injury Program and _____, (hereinafter referred to as the Service Provider.)  This Referral Agreement has an effective date beginning _____ and is in effect for a period of time that is equal to the Medicaid Waiver provider's enrollment period with the state of Florida's Medicaid fiscal agent.  The purpose of this agreement is to promote the development of a coordinated service delivery system to meet the needs of individuals who have incurred a traumatic brain or spinal cord injury and who are at risk of premature institutionalization.  Another purpose of this agreement is to enable eligible recipients to receive Home and Community-Based Waiver Services from qualified providers with oversight of the quality of care by the Waiver Administrator employed by the Brain and Spinal Cord Injury Program.  These services are authorized in order that the recipient may remain in the least restrictive setting and avoid or delay premature nursing home placement.  Services and care are to be furnished in a way that fosters the independence of each recipient with dignity and respect.

I.      **Objective:**

   A.      To maintain a climate of cooperation and consultation with and between BSCIP providers, in order to achieve maximum efficiency and effectiveness.

   B.      To participate through shared information in the development and expansion of services.

   C.      To promote programs and activities designed to prevent the premature institutionalization of people who have incurred a traumatic brain or spinal cord injury.

   D.      To require the parties of this Agreement to provide technical assistance and consultation to each other on matters pertaining to actual service delivery and share appropriate assessment information and care plans so duplication may not occur.

   E.      To establish an effective working relationship between the BSCIP regional office responsible for the development of care plans and authorization of services available under the Medicaid waiver, the Service Provider that is responsible for the direct provision of those services to recipients, and the BSCIP Headquarters Office that is responsible for management and oversight of the program.

II.     **Under this Agreement, the Service Provider agrees to the following:**

   A.      To accept client referrals from the 1915c Home and Community-Based Service (HCBS) Medicaid waiver from the BSCIP regional office or community support coordinator.

B.   To provide quality service(s) to the Medicaid waiver recipient as specified in Section IV.  Provision of service(s) rendered by Service Provider is subject to quality assurance monitoring and/or observation by the management agency and/or the Brain and Spinal Cord Injury Program and/or the Department of Health.

C.   To provide only those services specifically outlined in the Plan of Care and authorized by the BSCIP regional office.

D.   To attach current and up-to-date documentation regarding the service provider's qualifications to this agreement; and to provide, as requested, any information regarding Medicaid waiver billing, payment, or Medicaid waiver recipient information to the BSCIP regional office or BSCIP Headquarters Office.  Provider rate increases/decreases must be forwarded to the BSCIP Headquarters Office along with justification for any increase.  If additional services are to be added to this agreement, a written request by the Service Provider to do so must be received by the BSCIP Headquarters Office and an amendment to the Referral Agreement must be prepared by the BSCIP Headquarters Office listing the added service(s).  The necessary documentation regarding provider qualifications for additional services must be attached to the agreement.

E.   To maintain the Medicaid waiver recipient's confidentiality according to HIPAA.

F.   To immediately report any changes in the Medicaid waiver recipient's condition to the BSCIP regional office.

G.   To maintain enrolled provider status with the Florida Medicaid Fiscal Agent, by renewing applicable licensure, certifications, contract, and/or referral agreements and by maintaining all provider qualifications as contained in the Traumatic Brain and Spinal Cord Injury Medicaid Waiver under which services are provided.

H.   To permit inclusion of provider name and other appropriate information on a list of all enrolled providers which will be shown to recipients during development of an individualized plan of care, understanding that the recipients reserved the right at all times to a choice of enrolled providers.

I.   To provide ten day advance written notification to the BSCIP regional office and/or BSCIP Regional case managers of staffing shortfalls, which will negatively impact provision of service to Traumatic Brain and Spinal Cord Injury Medicaid waiver recipients.

J.   To submit claim data for billing to the appropriate BSCIP office after delivery of services has been accomplished.  All services should be billed within 60 days after services have been provided or document reasons for delayed submission of claims.  Such documentation shall be available for review by the BSCIP Headquarters Office or upon request.

K.     To submit void or adjustment claims no later than 45 days after either party has identified the error.  Any error not adjusted or voided within 45 days may be adjusted or voided by the BSCIP Headquarters Office.  The provider's refusal to adjust or void erroneous claims will result in termination of this agreement.

L.     To develop and implement a policy to ensure that its employees, board members, and management, as applicable, will avoid any conflict of interest or the appearance of a conflict of interest when disbursing or using the funds described in this agreement.  A conflict of interest includes, but is not limited to, receiving or agreeing to receive, a direct or indirect benefit, or anything of value from a Service Provider, recipient, vendor, or any person wishing to benefit from the use or disbursement of funds.

M.     To adhere to the policies and procedures as outlined in the following manuals published by the Agency for Health Care Administration: ***Traumatic Brain and Spinal Cord Injury Medicaid Waiver Coverage and Limitation Handbook*** and the ***Medicaid Provider General Handbook*** including any and all attachments or updates.

N.     To advise the Medicaid Fiscal Agent and BSCIP Headquarters office of any change in status to ownership, location, business name change and so forth, that could impede the Waiver Administrator from accurately reporting and reconciling federal requests for information.

O.     The BSCIP and the vendor will comply with all requirements of the Health Insurance Portability and Accountability Act (HIPAA) of 1996's Standards for Privacy of Individually Identifiable Health Information ("Privacy Rule").  As such, each agrees to the following:

      (a)     That neither party will use or disclose protected health information for any purpose other than as authorized by law, by this contract, or by separate agreement between the parties.

      (b)     That each party will not use or disclose protected health information in a manner which would be a prohibited use or disclosure if made by the other.

      (c)     That each party will maintain safeguards as necessary to ensure that the protected health information is not used or disclosed except as provided by law, by this contract, or by separate agreement between the parties.

      (d)     That each party will report to the other any use or disclosure of the protected health information of which it becomes aware that is not provided for by law, by this contract, or by separate agreement between the parties that pertains to protected health information that was received from the other.

(e)  That each party will ensure that any of its subcontractors or agents to whom it provides protected health information received from the other agree to the same restrictions and conditions that apply to each other with respect to such information.

(f)  In the event that the protected health information constitutes a Designated Record Set, each party will provide access to protected health information to the subject of that information in circumstances where the information is being held by the other.

(g)  That each party will provide health information to the subject of the information in accordance with the subject's right to access, inspect, copy, and amend their health information.

(h)  That each party will make available to the Secretary of Health & Human Services its internal practices, books and records relating to the use, and disclosure of protected health information received from the other or its agents for the purposes of determining compliance with the Privacy Rule, subject to any applicable legal privileges.

(i)  Each party will assist the other in meeting its obligation to provide, at an individual's request, an accounting of all uses and disclosures of personal health information which are not related to treatment, payment, or operations within 60 days of the request of an accounting.

(j)  That each party will incorporate any amendments or corrections to protected health information when notified by the other that the information is inaccurate or incomplete.

(k)  That at the termination of this contract, unless a new contract is agreed upon, each party will return or destroy all protected health information received from the other that it still maintains in any form unless it is not feasible to do so.

(l)  That either party may terminate this contract with prior written notification if it learns that the other party has repeatedly violated or neglected to comply with a term of this contract provision.

(m)  That each party will disclose only the minimum amount of information necessary to accomplish the permitted use of the protected health information. This minimum use requirement does not apply to information provided for treatment or to disclosures required by law.

(n)  That each party will limit the use and disclosure of protected health information to the minimum number of employees necessary by class of employee and type of

information to accomplish the permitted use of the information.

(o)   That each party will meet at least the minimum security requirements for the protection of protected health information as required by HIPAA by the compliance date.

(p)   That each party is bound by the terms of the "Notice of Privacy Practices" of the other with regard to protected health information it receives from the other upon receipt of such Notice.

P.   To provide to the BSCIP Headquarters office proof of annual recertification and/or licensing within thirty days of renewal.

It is understood that because the Service Provider is a Medicaid waiver provider, all recipients enrolled in this Medicaid waiver are guaranteed a personal choice of providers. Therefore, the BSCIP can not ensure a specific number of client referrals or number of hours to a provider.

## III.   Under this Agreement, the BSCIP HQ Office agrees to the following:

A.   To facilitate the enrollment of providers with the Medicaid Fiscal Agent.

B.   To provide technical assistance and training to Service Providers as required by the TBI/SCI Medicaid Waiver Handbook.

C.   To notify the BSCIP regional office within 48 hours of any approved service provider rate adjustment.

D.   To regularly monitor the Service Providers in accordance with requirements specified by the Department of Health.

## IV.   Under this agreement, the following service(s) will be delivered by the Service Provider in accordance with the plan of care or service authorization:

| Service(s) | Unit Rate | Counties Served | County of License |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

V.    **Termination**

In the event this agreement is terminated, the BSCIP regional office and the service provider agree to submit, at the time notice of intent to terminate is delivered, a plan, which identifies procedures to ensure services to recipients will not be interrupted or suspended by the termination.

A.    Termination at Will

This agreement may be terminated in writing by either party upon no less than thirty (30) calendar days notice, without cause, unless both parties mutually agree upon a lesser time.  Said notice shall be delivered by certified mail, return receipt requested, or in person with proof of delivery.

B.    Termination Because of Lack of Funds

In the event funds to finance this agreement become unavailable, the BSCIP Headquarters Office may terminate this agreement upon no less than twenty-four (24) hours notice in writing to the other party.  Said notice shall be delivered by certified mail, return receipt requested, or in person with proof of delivery.  The BSCIP Headquarters Office shall be the final authority as to the availability of funds.

C.    Termination for Breach

Unless a breach is waived by the BSCIP Headquarters Office in writing, or the parties fail to cure the breach within the time specified by the area agency, the BSCIP Headquarters Office may, by written notice to the parties; terminate the agreement upon no less than twenty-four (24) hours notice.  Said notice shall be delivered by certified mail, return receipt requested, or in person with proof of delivery.

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

The officials as authorized below, herein have read, understand and agree to comply with this Referral Agreement as written, and have received a duly executed copy of same.

Department of Health                          Service Provider

_____              _____
Signature                                     Signature


_____              _____
Print Name                                    Print Name


_____              _____
Title                                         Title


_____              _____
Date                                          Date

Case 9:09-cv-00107-EEF-MBN Document 18062-2 Filed 10/20/08 Page 108 of 138

# APPENDIX D

# BRAIN AND SPINAL CORD INJURY PROGRAM
# REQUEST FOR LEVEL OF CARE

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

## Brain and Spinal Cord Injury Program Request for Level of Care

**REFERRED INDIVIDUAL:** _____ **DOB** _____

**I.** **MEDICAL STABILITY:** Does the Patient have any of the following?

A. Active, life threatening condition present, (e.g., sepsis, respiratory, or other condition requiring systematic therapeutic measures). ☐ **Yes** ☐ **No**

B. IV drip to control or support blood pressure. ☐ **Yes** ☐ **No**

C. Intracranial pressure or arterial monitor. ☐ **Yes** ☐ **No**

D. Ventilator support (does not disqualify for TBI/SCI Medicaid Waiver). The patient may have a tracheotomy for airway protection without ventilator, gastrostomy or feeding tube, or IV access for non-life threatening illness. ☐ **Yes** ☐ **No**

**II.** **MEDICAL ELIGIBILITY**

**SPINAL CORD INJURY (SCI)** ☐ **Yes** ☐ **No**

A. Did the injury result from trauma to the spinal cord or cauda equina? ☐ **Yes** ☐ **No**

B. Did the lesion result in significant involvement and functional limitation of two or more of the following?
   1. Motor Deficit ☐ **Yes** ☐ **No**
   2. Sensory Deficit ☐ **Yes** ☐ **No**
   3. Bowel/Bladder Dysfunction ☐ **Yes** ☐ **No**

C. If SCI patient has also sustained a brain injury, functional level is at a Rancho Level IV or greater. ☐ **Yes** ☐ **No**

**BRAIN INJURY (BI)** ☐ **Yes** ☐ **No**

A. Did the injury occur from external trauma?

B. Which of the following were produced by the injury resulting in functional limitations:
   1. Altered State of Consciousness ☐ **Yes** ☐ **No**
   2. Motor Deficit Present ☐ **Yes** ☐ **No**
   3. Sensory Deficit Present ☐ **Yes** ☐ **No**
   4. Cognitive/Behavioral Deficit ☐ **Yes** ☐ **No**

C. RANCHO LEVEL: (Refer to attached Adult Rancho Los Amigos Guide)

Adult: ☐1 ☐2 ☐3 ☐4 ☐5 ☐6 ☐7 ☐8 ☐9 ☐10

_____     _____
Signature of Physician/Physician's Representative Completing     Date
Form (Title/Facility)

### CERTIFICATE OF ELIGIBILITY

**FOR BSCIP USE ONLY:** There is reasonable expectation that the individual will benefit from services based on the goal of community reintegration.

_____     _____
Signature of BSCIP Case Manager     Date

# ADULT RANCHO LOS AMIGOS

# COGNITIVE SCALE

*Level I*      *No response to pain, touch, sound or sight.*

*Level II*     *Generalized reflex response to pain.*

*Level III*    *Localized response.  Blinks to strong light, turns toward/away from sound, responds to physical discomfort, inconsistent response to commands.*

*Level IV*    *Confused – Agitated.  Alert, very active, aggressive, or bizarre behaviors, performs motor activities but behavior is non-purposeful, extremely short attention span.*

*Level V*     *Confused – Non-agitated.  Gross attention to environment, highly distractible, requires continued redirection, difficulty learning new tasks, agitated by too much stimulation.  May engage in social conversation but with inappropriate verbalizations.*

*Level VI*    *Confused – Appropriate. Inconsistent orientation to time and place, retention span/recent memory impaired, begins to recall past, consistently follows simple directions, goal-directed behavior with assistance.*

*Level VII*   *Automatic – Appropriate.  Performs daily routine in highly familiar environment in a non-confused, but automatic robot-like manner.  Skills noticeably deteriorate in unfamiliar environment.  Lacks realistic planning for own future.*

*Level VIII*  *Purposeful – Appropriate.  Stand-by assistance.*

*Level IX*    *Purposeful – Appropriate.  Stand-by assistance upon request.*

*Level X*     *Purposeful – Appropriate.  Modified independent.*

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

# APPENDIX E

# NOTIFICATION OF LEVEL OF CARE

Case 9:09-cv-00107-EEF-MAN   Document 19062-2   Filed 10/20/08   Page 114 of 138



**DEPARTMENT OF**

**ELDER AFFAIRS**
**STATE OF FLORIDA**

# Notification of Level of Care

1. From CARES PSA/Worker: _____ To District: _____ C&F Unit/Other: _____

   Case Mgr: _____ Case Mgt Agency: _____

2. Client Name: _____ DOB: _____ SSN: _____

   Current Location: _____

3. **Level of Care:**

   ☐ Skilled      ☐ Intermediate I      ☐ Withhold LOC

   ☐ Risk of Hospital      ☐ Intermediate II      ☐ Does Not Meet LOC

4. **Meets Program Requirements For:**

   ☐ PAC      ☐ Aged & Disabled Adults      ☐ Assisted Living

   ☐ Channeling      ☐ Elder Care      ☐ Cystic Fibrosis

   ☐ Model Waiver      ☐ Brain and Spinal Cord Injury      ☐ LTCCDPP

   ☐ PACE      ☐ Does Not Meet Waiver Criteria      ☐ Other Program
                                                                    Specify:_____

5. **Placement Recommendation:**

   ☐ Community      ☐ Nursing Facility      ☐ Temporary Nursing Facility

   ☐ Swing Bed      ☐ State Mental Health Hospital      ☐ Other Placement
                                                                    Specify: _____

   ☐ Hospital Based Nursing
         Bed for Rehab Care

6. **OBRA Screen:**      ☐ MI Level I    ☐ MR Level I    ☐ MI Level II    ☐ MR Level II

7. **LOC Effective Date:** _____

8. **Comments:** _____
   _____
   _____
   _____
   _____

9. **Approval**
   **Signature:** _____ **Date:** _____

DOEA-CARES form 603 (Revised, March 2003)

Case 9:09-cv-00107-EFM-AN   Document 18062-2   Filed 10/20/06   Page 116 of 138

Case 2:09-md-02047-EEF-MBN Document 18960-2 Filed 05/18/15 Page 117 of 138
Case 9:09-cv-00107-SPM-AK Document 19062-1 Filed 10/20/06 Page 117 of 138

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

# APPENDIX F

# BRAIN AND SPINAL CORD INJURY PROGRAM WAITING LIST POLICY
# FOR THE TRAUMATIC BRAIN/SPINAL CORD INJURY MEDICAID WAIVER PROGRAM

## AND

# HOME AND COMMUNITY-BASED MEDICAID WAIVER PRIORITIZATION SCREENING INSTRUMENT

Case 9:09-cv-00107-EEF-MBN  Document 18062-2  Filed 10/20/08  Page 118 of 138

# Brain and Spinal Cord Injury Program Waiting List Policy for the Traumatic Brain/Spinal Cord Injury Medicaid Waiver Program

I.  **Introduction**

The purpose of the Brain and Spinal Cord Injury Program (BSCIP) waiting list policy for the Traumatic Brain /Spinal Cord Injury Medicaid Waiver (TBI/SCI Medicaid Waiver) Program is three-fold:

1.  to provide for statewide consistency for developing and managing the TBI/SCI Medicaid Waiver waiting list;

2.  to provide a valid process for ranking individuals requesting services when budgetary restraints necessitate that they be placed on the waiting list log rather than referred for application and eligibility determination; and

3.  to provide a reliable process for referring individuals for face-to-face assessment, application, and eligibility determination from the waiting list log in priority order into the TBI/SCI Medicaid Waiver program when funding is available.

II.  **Screening for Consideration for Community-Based Programs and the TBI/SCI Medicaid Waiver Waiting List Log**

A.  Prioritization Screening

1.  All referrals for services provided through the Brain and Spinal Cord Injury Program must first contact the Central Registry established within the BSCIP. Referrals are subsequently sent to the Regional Offices.

2.  The TBI/SCI Prioritization Screening Instrument is used to record demographic information pertaining to the individual requesting services, and to assist the screener in determining functional abilities, formal and informal support provided, services received from other programs, needs and risk of institutionalization of the individual requesting services.

3.  The TBI/SCI Prioritization Screening Instrument, hereafter referred to as "screening instrument", will be completed by telephone (or may be completed face-to-face if the individual comes into the office), by BSCIP administrative staff.

4.  If the individual contacts a contracted provider directly requesting services, that provider will provide the individual with the telephone number for the appropriate BSCIP Regional Office to contact for screening.  It is the individual's responsibility to follow through with contacting the BSCIP Regional Office.  The Central Registry will be notified by the Regional Office of the referral.

5.  The screening instrument shall be completed no later than fourteen (14) days after the individual requests home and community based waiver services.  The first contact date is the date of initial contact with the Central Registry, not the date that the screening instrument was initiated or completed.

6.  Following completion of the screening, the instrument is scored and entered into the BSCIP information management system, which is called the Rehabilitation Information Management System (RIMS), along with the applicant's demographic information and date of the screening.

7.  Applicants on previous waiting lists will be screened under the new procedures using the screening instrument and will be placed on the wait list according to the screening score and original date of contact.

B.  Location of TBI/SCI Medicaid Waiver Waiting List

The TBI/SCI Medicaid Waiver waiting list is maintained within RIMS.  It is used to record and maintain the score from the screening instrument of those individuals requesting services from the TBI/SCI Medicaid Waiver program when funding is not available and an opening in the program is not available.  Once funding is available, the TBI/SCI Medicaid Waiver waiting list log will be used to identify and refer individuals in priority order for a face-to-face assessment and eligibility determination.

C.  Record Management

All completed (past and current) screening instruments are kept in an individual file folder labeled with the name and date of birth of each individual requesting services.  All documentation relating to this individual will be maintained in the individual's file folder.  If a case is opened on the individual, all screening instruments and other documentation must be maintained in the case record.

D.  Maintenance of the Waiting List

1.  For security purposes, the BSCIP Waiver Administrator is responsible for maintaining the BSCIP Medicaid Waiver waiting list.  The BSCIP Waiver Administrator will enter the applicant information into RIMS.  The BSCIP Waiver Administrator, or his delegate, will be the only person to have this access. All others will have "view only" access.

2.  The waiting list log for the TBI/SCI Medicaid Waiver program represents the needs of applicants statewide and is maintained in the RIMS database.  Individuals who have direct security access to the Medicaid Waiver statewide log and RIMS database will not share information from the database with anyone other than with other individuals who have direct security access to RIMS, and only as needed in order to accomplish tasks associated with maintaining the waiting list and moving an individual off the list.

E.  Individuals Not Considered as New Referrals

1.  When an individual enrolled in the TBI/SCI Medicaid Waiver program moves or relocates to another region, the funding allocated to the individual moves from the originating region to the region to which the individual moves, and the individual will continue to receive services.  This individual is **not** treated as a new referral and is not moved back onto the Medicaid Waiver waiting list.

2.  When an individual initially requests services and is placed on the TBI/SCI Medicaid Waiver waiting list and moves to a different region, he is **not** treated as a new referral.  He is not re-screened, unless there are changes which will likely result in a revised score.  His date of initial contact does **not** change, regardless of whether a re-screening is deemed appropriate.  All documentation pertaining to the individual will be sent from the originating region to the region to which the individual moves.  Additionally, the individual will be provided a telephone number and contact name in the receiving region, and instructed to follow-up with the contact as soon as the move is completed.

F.  Re-Screening

1.  The individual requesting services is re-screened by the appropriate BSCIP staff (preferably the same person who completed the initial screening) annually using the screening instrument and re-scored if the individual's situation has changed.   This may result in a change in the individual's ranking on the waiting list.

2.  The individual requesting services (or that person's representative) must contact the BSCIP Regional Office if his status or situation changes at any time.  A new screening is completed within ten working days of the reported

change in status. Revisions in the individual's situation may also result in his score being changed, resulting in a change in the individual's ranking on the waiting list log.

## III. Due Process

A. Upon completion of the screening instrument for an initial screening, annual re-screening, or change of status screening, BSCIP staff will send a Notice of Decision Form to the individual requesting services informing the individual requesting services that he has been placed on the TBI/SCI Medicaid Waiver waiting list. The individual's screening score and fair hearing rights shall be included as part of the Notice of Decision Form.

B. In the event that the case manager contacts the highest ranking individual on the TBI/SCI Medicaid Waiver waiting list and determines that services are no longer necessary or appropriate, the individual will be sent a Notice of Decision and given 10 days to appeal and preserve their space before the next individual on the waiting list is contacted.

C. In the event of a hearing proceeding involving the highest ranking individual on the TBI/SCI Medicaid Waiver waiting list, all actions relating to moving another individual off the waiting list will be suspended until a final order is provided by the hearings officer.

## IV. Funding Available to the TBI/SCI Waiver Program

A. Allocation Methodology

Funds will be allocated to the BSCIP Regional Offices for the TBI/SCI Medicaid Waiver program at the beginning of each fiscal year. The allocation of funds to the program will be based on the total annualized authorized Care Plan costs of active clients in the TBI/SCI Medicaid Waiver program in each Region. The balance of the funds will be maintained in a control account to be used for amending existing care plans or adding new individuals to the TBI/SCI Medicaid Waiver program.

B. Funding Unmet Need

1. It is the intent of federal policy that the TBI/SCI Medicaid Waiver program will meet identified and medically necessary Care Plan needs which are within the range of services offered by the TBI/SCI Medicaid Waiver for individuals enrolled in the program. Any unmet needs of recipients enrolled in the Medicaid Waiver program will be funded prior to moving the highest-ranking individuals off the TBI/SCI Medicaid Waiver waiting list into the program.

2. The TBI/SCI waiting list policy is written in order to discourage the moving of individuals from the TBI/SCI Medicaid waiver list while recipients enrolled in the waiver program have unmet needs. In order to accomplish this, case managers must:

   a.) Keep accurate records of Care Plan costs associated with each current Medicaid Waiver recipient; and,

   b.) Annualize, and update as necessary, the cost of each TBI/SCI Medicaid Waiver Care Plan.

3. When a TBI/SCI Medicaid waiver case is terminated, the terminated recipient's Care Plan is reviewed for two purposes:

   a.) To determine the annual amount of funding authorized for services specific to the recipient's Care Plan; and,

   b.) To determine the amount of authorized service allocation that was not used by the recipient terminating from the program (unexpended authorized Care Plan funds).

C. Unexpended Authorized Care Plan Funds of a Medicaid Waiver Recipient

To determine the unexpended authorized Care Plan funds of a Medicaid Waiver case that has been terminated, the Waiver Administrator will review the terminated case in RIMS to determine from the Care Plan any funds not expended.

D. Review of Available Funds and Waiting List

1. The BSCIP Waiver Administrator will determine funds available based upon a review of projected care plan costs and actual expenditures in RIMS. A determination will be made regarding the transfer of funds from the control account into a Regional account in order to move the next highest-ranking individual from the waiting list and refer for TBI/SCI Medicaid Waiver application and assessment. This decision is based on the amount of funds in the control account, unexpended authorized Care Plan funds and projected annualized savings created by the case termination, projected unmet need of clients in the TBI/SCI Medicaid Waiver program, and the annualized assessed costs of care for the highest ranking individual on the waiting list log who is requesting services.

2. For purposes of determining the most appropriate person to be transferred from the wait list to the waiver program, a "**Wait List Review Team**" will be established. The team is comprised of the five BSCIP Regional Managers, the BSCIP Waiver Administrator and the BSCIP Bureau Chief.

3. In order to determine the region where the highest-ranking individual is located, the Wait List Review Team members will view the statewide TBI/SCI Medicaid Waiver waiting list log. In the event that the top two individuals on the waiting list log have the same screening score, team members will use the date of initial contact to determine which individual will be considered to have a higher ranking. The individual with the earlier date of initial contact will be ranked higher.

4. When there is a situation in which two or more individuals on the waiting list log score the same and have the same date of initial contact, a re-screening will be completed using the screening instrument. The individual with the higher score will be moved from the waiting list and begin the CARES review process. If the scores remain the same, then a DOEA Form 701B, Department of Elder Affairs Assessment Instrument, will be administered, and the highest numerical score on the Form 701B will be utilized to determine which individual will be moved from the waiting list.

E. Review of Highest Ranking Individual's Screening and Needs

1. Following the determination that funds are available to refer the highest ranking individual from the TBI/SCI Medicaid Waiver waiting list for a face-to-face assessment, the case manager in the appropriate Region will contact that individual by telephone and review the most recent screening instrument. The purpose of this review will be to discern whether the individual appears to continue to have service needs that are programmatically appropriate and whether the individual continues to be interested in services from the TBI/SCI Medicaid Waiver program. It is not necessary to complete a new screening instrument at this point; notes and documentation in the margin of the latest screening instrument are appropriate. If services are no longer necessary or appropriate, or interest is lacking, this will be noted in the case notes section of RIMS and notification to the Waiver Administrator is required. Wait List Review Team members will also be informed. After the appeal period has expired, the next highest ranking individual on the waiting list will then be contacted for a review of his most recent screening instrument and a subsequent face-to-face assessment.

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

2. The TBI/SCI Waiver case manager will schedule a home visit with the highest ranking individual requesting services to complete a full assessment using the DOEA Form 701B, and to estimate the individual's projected cost of care. The BSCIP Waiver Administrator and Wait List Review Team members will be provided with specific information relating to the individual's health conditions, probable service needs, and projected cost of care.

F. <u>When Funding is Available; Transferring of Funds</u>

When funding becomes available to cover the highest ranking individual's service needs, notification is made to the appropriate Regional Manager. The TBI/SCI waiver case manager will assist the highest ranking individual with completing the Request for Assistance (CF-ES 2066) to establish Medicaid eligibility, the BSCIP Request for Level of Care, and other documentation required to establish eligibility. Once eligibility is established, appropriate steps will be taken to ensure that funds are available in the Region to begin services to the highest ranking individual. The Care Plan will be developed by the case manager and approved by the Regional Manager and the BSCIP Waiver Administrator. After these steps have been completed, service delivery begins.

G. <u>When Funding is Not Available</u>

When the amount of available funds will not cover the assessed costs of the projected annualized cost of care, the highest ranking individual will not be contacted by the TBI/SCI case manager to complete the Request for Assistance, programmatic application, and other eligibility documentation. It is inappropriate to move to a lower ranking individual whose costs are projected as less. It is also inappropriate to reduce the projected authorized care because of lack of funding, unless directed to do so by a hearings officer. Unexpended dollars resulting from client terminations will be kept in the BSCIP control fund account and used for needs of current enrollees or held until the amount accumulates to cover the assessed costs of the projected annualized cost of care of the highest ranking individual, as determined by Wait List Review Team members. At the discretion of the Wait List Review Team members, projected end of year surplus funds may be used for one-time purchases to meet the needs of recipients already enrolled in the program.

H. <u>Change in Individual's Condition or Service Needs</u>

In order for the individual to be transferred from the waiting list to the waiver program, it is imperative that the face-to-face assessment and information provided by the individual regarding his medical condition and needed services validate the information indicated on the screening instrument. If it is discovered, while completing the full assessment (DOEA Form 701B), that the highest ranking individual's medical condition, and service and care needs are not as extensive as originally projected during the telephone screening, the individual is re-screened, using the screening instrument, re-scored and moved back to the waiting list.   After the appeal period has expired, the process begins again with the next highest-ranking individual on the waiting list.

V. **Quality Assurance**

In order to ensure continued integrity of the TBI/SCI Medicaid Waiver waiting list, quality assurance reviews will be completed randomly and, at a minimum, twice a year.   Randomly selected screening instruments will be provided to BSCIP Headquarters staff upon request to review for quality assurance purposes.

Case 2:09-md-02047-EEF-MBN   Document 18062-2   Filed 05/18/15   Page 124 of 138
Case 0:09-cv-60107-FEPMAN   Document 18062-2   Filed 10/30/08   Page 124 of 138

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

**FLORIDA DEPARTMENT OF HEALTH**

**HOME AND COMMUNITY-BASED MEDICAID WAIVER**

**PRIORITIZATION**

**SCREENING INSTRUMENT**

Brain & Spinal Cord Injury Program
Florida Department of Health

Today's Date: ___/____/_____

**SECTION I**

Date Referred To Central Registry:___/___/___

Region: _____          County_____          Date of Birth: ____/____/_____

Name

| Last Name | First Name | MI |
|---|---|---|

Address:
  Street: _____

  City: _____State____Zip_____

Brain Injury ☐
Spinal Cord ☐
Both ☐

Medicaid Number:
_____

Medicare Number:
_____

Email: _____
Phone Number: _____

Housing situation. Do you believe your present housing is:

Safe? ☐   Accessible? ☐   Affordable? ☐   How long there?_____   Plan to stay? ☐Yes ☐No

**SECTION II**

**APPLICANT CONDITIONS: [ASIA SCALE I]**

**SPINAL CORD INJURY**

| | | | |
|---|---|---|---|
| C1 AND C2 ☐ | | T1 ☐ | |
| C3 AND C4 ☐ | | T2 - T6 ☐ | |
| C5 ☐ | | T7 - T12 ☐ | |
| C6 ☐ | | L1 - L2 ☐ | |
| C7 ☐ | | L3 – L4 ☐ | |
| C8 ☐ | | L5- S1 ☐ | |
| | | S2,S3,S4 ☐ | |

**APPLICANT CONDITIONS: [GLASGOW SCALE]**

**TRAUMATIC BRAIN INJURY**

EYES OPEN          ☐ Yes  ☐ No
MOTOR RESPONSES     ☐ Yes  ☐ No
VERBAL RESPONSES    ☐ Yes  ☐ No

[RANCHO SCALE]

LEVEL I ☐           LEVEL II ☐
LEVEL III ☐         LEVEL IV ☐
LEVEL V ☐           LEVEL VI ☐
          LEVEL VII OR HIGHER ☐

ADDITIONAL DIAGNOSES/DISABILITIES: [ELABORATE HERE] _____

_____

_____

LIVING SITUATION:

Alone? ☐          With Spouse? ☐          With Other Relative? ☐          With Other? ☐
  (5)                  (0)                       (0)                        (0)

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

## FUNCTIONAL ADLS/IADLS

**Are you ventilator dependent?**  ☐ Yes  ☐ No

**Are you able to communicate with others?**
☐ Yes  ☐ No
**Do you need assistive devices?**  ☐ Yes  ☐ No

| CONSUMER CONDITIONS | CONSUMER RESOURCES |
|---|---|

*Physical Health*   **Total** ____

*How would you rate your overall health at the present time?*

☐   ☐    ☐    ☐
Excellent (1) Good (2)   Fair (3)   Poor (4)

*Compared to a year ago, how would you rate your health?*

☐   ☐    ☐    ☐
Much Better(1) Better (2)   About same (3)   Worse (4)

*How much do your physical problems stand in the way of your doing the things you want to do?*

☐   ☐    ☐    ☐
Not at all (1) Occasionally (2)   Often (3)   All the time (4)

**Behavioral Health**

*Does the individual have ongoing memory or confusion problems?*  ☐ Yes (5)  ☐ No (0)

*Does the individual exhibit maladaptive behavior?*  ☐ Yes (5)  ☐ No (0)

---

**Total** ____

*Is medical care/behavioral support readily available?*

☐   ☐    ☐    ☐
Always (1) Sometimes (2)   Rarely (3)   Never (4)

*Is transportation to medical care/behavioral support readily available?*

☐   ☐    ☐    ☐
Always (1) Sometimes (2)   Rarely (3)   Never (4)

*Do your finances/insurance permit access to healthcare and medications?*

☐   ☐    ☐    ☐
Not at all (4) Occasionally (3)   Often (2)   All the time (1)

---

## Functional    Total ____

*How much help do you need with the following Activities of Daily Living [ADL's]?*

(Codes:  **0** = No help; **1**=No help but relies on Assistive Device; **2**=Supervision; **3**=Some Help; **4**=Total Help, can't do at all)

## Total ____

*How often do you have adequate assistance with the following ADL's?*

**N/A for institutional settings**

| | | | | | ADL | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ☐(0) | ☐(1) | ☐(2) | ☐(3) | ☐(4) | BATHE | ☐ Always(0) | ☐ Sometimes (1) | ☐ Rarely (2) | ☐ Never (3) |
| ☐(0) | ☐(1) | ☐(2) | ☐(3) | ☐(4) | DRESS | ☐ Always(0) | ☐ Sometimes (1) | ☐ Rarely (2) | ☐ Never (3) |
| ☐(0) | ☐(1) | ☐(2) | ☐(3) | ☐(4) | EAT | ☐ Always(0) | ☐ Sometimes (1) | ☐ Rarely (2) | ☐ Never (3) |
| ☐(0) | ☐(1) | ☐(2) | ☐(3) | ☐(4) | USE BATHROOM | ☐ Always(0) | ☐ Sometimes (1) | ☐ Rarely (2) | ☐ Never (3) |
| ☐(0) | ☐(1) | ☐(2) | ☐(3) | ☐(4) | TRANSFER | ☐ Always(0) | ☐ Sometimes (1) | ☐ Rarely (2) | ☐ Never (3) |
| ☐(0) | ☐(1) | ☐(2) | ☐(3) | ☐(4) | WALKING/ mobility | ☐ Always(0) | ☐ Sometimes (1) | ☐ Rarely (2) | ☐ Never (3) |

April 2006

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

| How much help do you need          Total _____ with the following instrumental activities of daily living *[IADL's]*? | How often do you have          Total _____ adequate assistance with the following IADL'S? |
|---|---|
| (Codes:  **0** = No help; **1**=No help but relies on Assistive Device; **2**=Supervision; **3**=Some Help; **4**=Total Help, can't do at all) | **N/A for institutional settings** |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ☐ (0) | ☐ (1) | ☐ (2) | ☐ (3) | ☐ (4) | Do heavy chores | ☐ Always (0) | ☐ Sometimes (1) | ☐ Rarely (2) | ☐ Never (3) |
| ☐ (0) | ☐ (1) | ☐ (2) | ☐ (3) | ☐ (4) | Do light housekeeping | ☐ Always (0) | ☐ Sometimes (1) | ☐ Rarely (2) | ☐ Never (3) |
| ☐ (0) | ☐ (1) | ☐ (2) | ☐ (3) | ☐ (4) | Use phone | ☐ Always (0) | ☐ Sometimes (1) | ☐ Rarely (2) | ☐ Never (3) |
| ☐ (0) | ☐ (1) | ☐ (2) | ☐ (3) | ☐ (4) | Manage money | ☐ Always (0) | ☐ Sometimes (1) | ☐ Rarely (2) | ☐ Never (3) |
| ☐ (0) | ☐ (1) | ☐ (2) | ☐ (3) | ☐ (4) | Prepare meals | ☐ Always (0) | ☐ Sometimes (1) | ☐ Rarely (2) | ☐ Never (3) |
| ☐ (0) | ☐ (1) | ☐ (2) | ☐ (3) | ☐ (4) | Do shopping | ☐ Always (0) | ☐ Sometimes (1) | ☐ Rarely (2) | ☐ Never (3) |
| ☐ (0) | ☐ (1) | ☐ (2) | ☐ (3) | ☐ (4) | Take medication | ☐ Always (0) | ☐ Sometimes (1) | ☐ Rarely (2) | ☐ Never (3) |
| ☐ (0) | ☐ (1) | ☐ (2) | ☐ (3 | ☐ (4) | Use transportation | ☐ Always (0) | ☐ Sometimes (1) | ☐ Rarely (2) | ☐ Never (3) |

---

### SECTION III

## *Nutrition Status*

☐ Yes (1)  ☐ No (0)  1.  Have you lost or gained ten pounds or more in the past six months without trying? If yes, Gain: _____lbs,          Loss: _____ lbs.

☐ Yes (1)  ☐ No (0)  2.  Do you take three or more kinds of medicine a day?

☐ Yes (1)  ☐ No (0)  3.  Do you have two or more drinks of beer, wine, or liquor almost every day?

☐ Yes (1)  ☐ No (0)  4.  Has your injury caused you to change the food you eat?

☐ Yes (1)  ☐ No (0)  5.  Do you eat at least two meals per day?

☐ Yes (1)  ☐ No (0)  6.  Do you have any problems with your throat, mouth or teeth that make it difficult to chew or swallow?

☐ Yes (1)  ☐ No (0)  7.  Do you have enough money to buy the food you need?

Total Score _____

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

| **Screener please answer:** | **Tobacco Use** | | |
|---|---|---|---|
| Does there appear to be a need for food stamps? | 1. Do you smoke or use Tobacco products? | ☐ Yes (1) | ☐ No (0) |
| ☐ Yes (1)   ☐ No (0) | 2. Have you ever smoked or used tobacco?  If yes for how long?_____ | ☐ Yes (1) | ☐ No (0) |

**SECTION IV**

### Status of Caregiver and Other Support Mechanisms

**PRIORITIZATION/SCORING**

☐ Yes (5)   ☐ No (0)   1.  Is the individual requesting services at risk of abuse, neglect or exploitation as referred by Protective Services?

☐ Yes (5)   ☐ No (0)   2.  Is the individual currently residing in a nursing facility, or at risk of nursing home placement within the next 30 to 60 days?

☐ Yes (5)   ☐ No (0)   3.  Is there an imminent loss of caregiver?

☐ Yes (5)   ☐ No (0)   4.  Is the individual solely responsible for minor children (under the age of 12) in the home?

#### Caregiver Assessment [if applicable]

| **Name of Caregiver:** | What type of assistance do you currently provide? |
|---|---|
| _____ | ☐ Financial   ☐ Emotional   ☐ Physical   ☐ Other |
| **Relationship to Client:** | How likely is it that you will continue to provide support and care? |
| ☐ Spouse   ☐ Parent   ☐ Child   ☐ Other | **Caregiver:**   ☐ Very Likely   ☐ Somewhat likely   ☐ Unlikely |
| ☐ Grandchild   ☐ Friend   ☐ Other Relative | **Assessor:**   ☐ Very Likely   ☐ Somewhat likely   ☐ Unlikely |
| **Telephone: (     ) _____** | |
| **How is Your Own Health?** | |
| ☐ Excellent   ☐ Good   ☐ Fair   ☐ Poor | |

Individual requests a copy of the completed Prioritization Screening Instrument?  ☐ Yes  ☐ No

_____          _____
Signature of screener                                                              Date

Case 2:09-md-02047-EEF-MBN   Document 18960-2   Filed 05/18/15   Page 129 of 138
Case 9:03-cv-00107-SPM-AK   Document 1906-2   Filed 10/10/06   Page 129 of 138

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

# APPENDIX G

# NOTICE OF DECISION

# AND

# RIGHT TO A FAIR HEARING

Case 9:09-cv-00107-EF-MAN Document 1006-2 Filed 05/18/15 Page 130 of 138

**<u>NOTICE OF DECISION</u>**

**TRAUMATIC BRAIN AND SPINAL CORD INJURY MEDICAID WAIVER PROGRAM**

[DATE]
Applicant/Participant Name:
Address:

Case Worker Name:          _____
Telephone:                       _____
Case Name or Number:      _____

You are hereby notified of the following:

     ❑  Your TBI/SCI Waiver Program services have been:
          o  Denied
          o  Terminated
          o  Suspended
          o  Reduced

      Service(s):

      Pursuant to Rule:
      ☐ 59G-4.180, Florida Administrative Code
      ☐ 59G-13.130, Florida Administrative Code
      ☐ Other: _____

      Reason(s) for Action Taken:

     ❑  You have been placed on the TBI/SCI Waiver waiting list:
        Date of Referral:

        Prioritization Score:     _____ of _____ (total possible score)

        Reason(s) for placement on waiting list:

To request a copy of your screening instrument, contact the BSCIP Waiver Administrator:

Florida Department of Health
BSCIP Waiver Administrator
4052 Bald Cypress Way, BIN C-25
Tallahassee, FL 32399-1744
(850) 245-4045

***(Please see page 2 for information about fair hearings)***

## **RIGHT TO A FAIR HEARING**

If you do not agree with this decision, you or your authorized representative may ask for a hearing within 21 days of the date of this notice.  If this action is a termination, reduction, or suspension of your services, those services may continue until your hearing is held, but you must ask for a Fair Hearing within 10 days of the date of this notice in order to receive continued benefits.  You may be requested to repay that portion of the benefits that the hearing decision determines to be invalid.

You have the right to be represented by an authorized representative, to review your file at a reasonable time before and during the hearing, to review all documents and records to be used by the State at the hearing and receive copies of all such documents.  You may request an interpreter.

In the circumstances where an applicant for, or recipient of, TBI/SCI Waiver Services wishes to appeal decisions made by the State of Florida entities, the individual may make written request for a hearing to:

Office of Appeal Hearings
1317 Winewood Boulevard, Building 5, Room 203
Tallahassee, Florida 32399
850-488-1429


cc:     Individual's provider

Case 2:09-md-02047-EEF-MBN   Document 18060-2   Filed 05/18/15   Page 133 of 138
Case 9:03-cv-00107-SPM-AK   Document 1006-2   Filed 10/20/06   Page 133 of 138

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook

# APPENDIX H

# BRAIN AND SPINAL CORD INJURY PROGRAM MEDICAID HOME AND COMMUNITY-BASED WAIVER SERVICE PLAN

Case 4:09-cv-00107-SPM-AK   Document 19062-2   Filed 10/20/08   Page 134 of 138

Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook



| **Brain & Spinal Cord Injury Program** |
| **Medicaid Home & Community Based Waiver Service Plan** |



| Name | | | Medicaid # | | | Date of Birth | | | | BSCI Region | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Original | | ☐ | Start Date | | End Date | | Amendment | | Start Date | | End Date | |

| | | Provider | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | **HCB WAIVER SERVICES** | Contact Person | Phone # | Start | End | Frequency | | |
| ☐ | Attendant Care | | | | | | | |
| ☐ | Personal Care | | | | | | | |
| ☐ | Companion | | | | , | | | |
| ☐ | Life Skills Training | | | | | | | |
| ☐ | Adaptive Health & Wellness | | | | | | | |
| ☐ | Personal Adjustment Counseling | | | | | | | |
| ☐ | Behavioral Programming | | | | | | | |
| ☐ | Assistive Technologies | | | | | | | |
| ☐ | Consumable Medical Supplies | | | | | | | |
| ☐ | Rehab. Engineering Evaluation | | | | | | | |
| ☐ | Environmental Accessibility Adaptations | | | | | | | |
| ☐ | Community Support Coordination | | | | | | | |

| | **Other Community Based Services** | **BSCI** | **Medicaid** | **Medicare** | **Private Ins.** | **Other** | **Start** | **End** |
|---|---|---|---|---|---|---|---|---|
| ☐ | Comprehensive In-Patient Rehab. | | | | | | | |
| ☐ | Occupational Therapy | | | | | | | |
| ☐ | Physical Therapy | | | | | | | |
| ☐ | Speech/Cognitive Therapy | | | | | | | |
| ☐ | Comm. Re-Entry/Trans. Living | | | | | | | |
| ☐ | Neuropsycho./psychological | | | | | | | |
| ☐ | Vehicle Modifications | | | | | | | |
| ☐ | Medical Follow-Up | | | | | | | |
| ☐ | Medications/Medical Supplies | | | | | | | |
| ☐ | Durable Medical Equipment | | | | | | | |
| ☐ | Other | | | | | | | |

COMMENTS:

Freedom of Choice/Fair Hearing:  This care plan has been discussed with me and I chose the services and service providers described in the plan. I understand the Medicaid Waiver services described in the plan; and I accept the services instead of nursing home placement.  I have the right to receive services from any enrolled waiver provider. I am entitled to a fair hearing if I am denied services or the provider of my choice, or my services are terminated, suspended, or reduced.

Recipient/Representative: _____ Date: _____ Case Manager: _____ Date: _____

Community Support Coord.: _____ Date: _____ Regional Manager: _____ Date: _____

H-2

April 2006

Case 9:09-cv-00107-EEF-MBN Document 19062-4 Filed 10/50/06 Page 36 of 138



Jeb Bush
Governor

Alan Levine
Secretary

2727 Mahan Drive
Tallahassee, FL 32308

http://ahca.myflorida.com