# EXHIBIT "13"

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

```
                                                    ┌─────────────────────────────┐
                                                    │          FILED              │
                                                    │                             │
                                                    │       MAY - 1 2009          │
                                                    │         ᴸ                   │
                                                    │  CLERK, US DISTRICT COURT   │
                                                    │        NORFOLK, VA          │
                                                    └─────────────────────────────┘
```

MICHELLE GERMANO; DENNIS JACKSON;
SHARON JACKSON; JASON DUNAWAY;
LISA DUNAWAY; individually, and on behalf of
all others similarly situated,

        Plaintiffs,

                                  2:09cv202

v.

TAISHAN GYPSUM CO. LTD. f/k/a
SHANDONG TAIHE DONGXIN CO. LTD.;
VENTURE SUPPLY INC.; HARBOR WALK
DEVELOPMENT, LLC; and THE PORTER-
BLAINE CORP.,

        Defendants.

_____/

## COMPLAINT--CLASS ACTION

        Pursuant to Fed. R. Civ. P. 23, Plaintiffs brings this class action on behalf of themselves and all other similarly situated owners and residents of residential homes in the Commonwealth of Virginia containing defective drywall that was designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, sold and/or installed by Defendants Taishan Gypsum Co. Ltd. f/k/a Shandong Taihe Dongxin, Co. Ltd. ("Taishan") and/or Venture Supply Inc. ("Venture"). Plaintiffs also bring this action on behalf of a subclass of similarly situated owners and residents of residential homes in the Commonwealth of Virginia containing defective drywall that were built and/or had drywall installed by developer Harbor Walk Development, LLC ("Harbor Walk") and/or The Porter-Blaine Corp. ("Porter-Blaine"). In support thereof, Plaintiffs states as follows:

1

## JURISDICTION, PARTIES, AND VENUE

1.     This action is within the original jurisdiction of this Court by virtue of 28 U.S.C. §1332(d)(2) and the Class Action Fairness Act.  Plaintiffs and certain Defendants are citizens of different states and the amount in controversy of this Class action exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

2.     Venue in this district satisfies the requirements of 28 U.S.C. §1391(b)(1)-(2) because some Plaintiffs reside in this jurisdiction, some Defendant resides in this jurisdiction, and a substantial amount of the events and occurrences giving rise to the claim occurred in this District, or a substantial part of the property that is the subject of this action is situated in this district.

## PLAINTIFFS

3.     Plaintiff Michelle Germano is a resident of Virginia and owns a home located at 8171 North View Blvd., Norfolk, Virginia, 23518.

4.     Upon information and belief, Ms. Germano's home was built and/or had drywall installed by Defendants Harbor Walk and/or Porter-Blaine and it contains defective drywall that was designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold by Defendants Taishan and/or Venture.

5.     Plaintiffs Dennis and Sharon Jackson (husband and wife) are residents of Virginia and own a home located at 8151 North View Blvd., Norfolk, Virginia, 23518.

6.     Upon information and belief, the Jackson's home was built and/or had drywall installed by Defendants Harbor Walk and/or Porter-Blaine and it contains defective drywall that

2

was designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold by Defendants Taishan and/or Venture.

7.       Plaintiffs Jason and Lisa Dunaway (husband and wife) are residents of Virginia and own a home located at 27037 Flaggy Run Rd., Courtland, Virginia, 23837.

8.       Upon information and belief, the Dunaways built their own home and it contains defective drywall that was designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold by Defendants Taishan and/or Venture.

## DEFENDANTS

9.       Defendant Taishan is a Chinese corporation doing business in the Commonwealth of Virginia with its principal place of business located at Dawenkou, Daiyue District, Tai'an City, Shandong Province, China, 271026.

10.      Defendant Taishan designed, manufactured, exported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall at issue in this case.

11.      Upon information and belief, Taishan is controlled by the Beijing New Building Materials Public Limited Co., which is a state-owned entity and respectively controlled by the Chinese government.

12.      To the extent Taishan is deemed a foreign sovereign entity, Plaintiffs bring claims against Taishan pursuant to 28 U.S.C. § 1605(a)(2), the commercial activity exception to the Foreign Sovereign Immunities Act, or alternatively under § 1605(a)(5), the tortious act exception.  Plaintiffs allege that the claim is based upon Taishan's commercial activities carried on in the United States.  The claim also seeks monetary damages against a foreign state for damage to property occurring in the United States, caused by the tortious acts or omissions of

3

that foreign state, or of any official or employee of that foreign state while acting within the scope of his office or employment.

13. Defendant Venture is a Virginia corporation with its principal place of business located at 1140 Azalea Garden Road, Norfolk, Virginia, 23502.

14. Venture imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall to builders that was supplied to and damaged homeowners including Plaintiffs and Class Members. Venture also imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall directly to some Plaintiffs and Class Members

15. Defendant Harbor Walk is a Virginia corporation and is located at 804 Oakmears Crescent, Suite 101, Virginia Beach, Virginia, 23462.

16. Harbor Walk built some Plaintiffs' and Class Members' homes and, directly or through agents, installed defective drywall in those homes, which has resulted in harm and damages to Plaintiffs and Subclass Members as described herein.

17. Defendant Porter-Blaine is a Virginia corporation and is located at 1140 Azalea Garden Rd, Norfolk, Virginia, 23502.

18. Porter-Blaine, which shares an address with Venture, is one of Venture's drywall installation contractors. Upon information and belief, Porter-Blaine installed defective drywall in the Harbor Walk homes, and in other homes, which has resulted in harm and damages to Plaintiffs and Subclass Members as described herein.

19. At all times herein mentioned, each of the Defendants was acting in concert with one another and was the agent, servant, partner, aider and abettor, co-conspirator and/or joint venturer of each of the other Defendants herein and was at all times operating and acting within

4

the purpose and scope of said agency, service, employment, partnership, conspiracy and/or joint venture and rendered substantial assistance and encouragement to the other Defendants, knowing that their collective conduct constituted a breach of duty owed to Plaintiffs and Class Members.

## GENERAL ALLEGATIONS

20.     Upon information and belief, Defendants' drywall contains gypsum.

21.     In "defective drywall" (such as that designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, sold and/or installed by Defendants herein), the gypsum and other components of the product break down and release sulfides and other noxious gases that are then emitted (or "off-gassed") from the drywall.

22.     Sulfides and other noxious gases, such as those emitted from Defendants' drywall, cause corrosion and damage to personal property (such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property).

23.     Exposure to sulfide and other noxious gases, such as those emitted from Defendants' drywall, causes personal injury resulting in eye irritation, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm.

24.     As a direct and proximate result of Defendants' actions and omissions, Plaintiffs and the Class Members' homes, personal property, and bodies have been exposed to Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from Defendants' defective drywall.

25.     Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, sold and/or installed defective drywall, which was unfit

5

for its intended purpose and unreasonably dangerous in its normal use in that the drywall caused corrosion and damage to personal property in Plaintiffs' and Class Members' homes and/or caused personal injury resulting in eye irritation, a sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm.

26. As a direct and proximate result of Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from these products, Plaintiffs and Class Members have suffered, and continue to suffer economic harm and/or personal injury.

27. As a direct and proximate result of Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from these products, the Plaintiffs and the Class Members have suffered, and continue to suffer damages. These damages include, but are not limited to, costs of inspection; costs and expenses necessary to remedy, replace and remove the defective drywall and other property that has been impacted; lost value or devaluation of their homes and property; loss of use and enjoyment of their home and property; and/or damages associated with personal injuries.

28. As a direct and proximate result of Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from these products, Plaintiffs have been exposed to above-background levels of toxic gases and suffered personal injury, have been placed at an increased risk of disease, and have need for injunctive relief in the form of repair of their homes or rescission of their home contracts, emergency/corrective notice, environmental testing and monitoring, and/or medical monitoring.

6

# CLASS ACTION ALLEGATIONS

29.     Plaintiffs bring this suit as a class action pursuant to Rules 23(a), (b)(1), (b)(2),

(b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and the

following Class and Subclass comprised of:

> **Class Definition:**
>
> All owners and residents of residential homes in the
> Commonwealth of Virginia containing defective drywall
> manufactured, sold, distributed, and/or supplied by Taishan
> Gypsum Co. Ltd. and/or Venture Supply Inc.
>
> **Harbor Walk/Porter-Blaine Subclass Definition:**
>
> All owners and residents of residential homes in the
> Commonwealth of Virginia containing defective drywall built
> and/or installed by Harbor Walk Development LLC and/or Porter-
> Blaine Corp.

30.     The following Persons shall be excluded from the Class: (1) Defendants and their

subsidiaries, affiliates, officers and employees; (2) all Persons who make a timely election to be

excluded from the proposed Class; (3) governmental entities; and (4) the judge(s) to whom this

case is assigned and any immediate family members thereof.

31.     Upon information and belief, the Defendants' defective and unfit drywall was

installed in at least hundreds of homes in the Commonwealth of Virginia. Therefore, the Class is

sufficiently numerous such that the joinder of all members of the Class in a single action is

impracticable.

32.     There are numerous common questions of law and fact that predominate over any

questions affecting only individual members of the Class. Among these common questions of

law and fact are the following:

7

       a.        whether Defendants' drywall products that release sulfide and other

                noxious gases are defective and/or unfit for their intended purpose;

       b.        whether Defendants tortiously manufactured, exported, imported,

                distributed, delivered, supplied, inspected, marketed, sold, and/or installed

                defective drywall products;

       c.        whether Plaintiffs and Class Members are entitled to recover

                compensatory, exemplary, incidental, consequential, and/or other damages

                as a result of Defendants' unlawful and tortious conduct; and

       d.        whether Plaintiffs and Class Members are entitled to recover injunctive

                and/or equitable relief as a result of Defendants' unlawful and tortious

                conduct.

33.     The legal claims of Plaintiffs are typical of the legal claims of other Class Members. Plaintiffs have the same legal interests and need for legal remedies as other Class Members.

34.     The Plaintiffs and each member of the Class have defective and unfit drywall in their homes. Due to the drywall in Plaintiffs and Class Members' homes, Plaintiffs and Class Members suffered damages and the need for injunctive and equitable relief, as set forth herein.

35.     Plaintiffs are adequate representatives of the Class and, together with their legal counsel, will fairly and adequately protect the interests of the Class. Plaintiffs have no conflicts with the Class and are committed to the vigorous prosecution of this action.

36.     The undersigned counsel are competent counsel experienced in class action litigation, mass torts, and litigation involving defective and harmful products. Counsel will fairly and adequately protect the interests of the class.

37.     The various claims asserted in this action are certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

38.     The claims for injunctive relief in this case are certifiable under Fed. R. Civ. P. 23(b)(2). Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole.

39.     A class action is superior to other methods of dispute resolution in this case. The Class members have an interest in class adjudication rather than individual adjudication because of their overlapping rights. It is highly desirable to concentrate the resolution of these claims in this single forum because it would be difficult and highly unlikely that the affected Class members would protect their rights on their own without this class action case. Management of the class will be efficient and far superior to the management of individual lawsuits.

40.     The issues common to the class members' claims, some of which are identified above, are alternatively certifiable pursuant to Fed. R. Civ. P. 23(c)(4) as resolution of these

9

issues would materially advance the litigation, and class resolution of these issues is superior to repeated litigation of these issues in separate trials.

## COUNT I
## NEGLIGENCE
### (Against All Defendants)

41.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

42.     Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, j) selling, and/or k) installing this drywall, including a duty to adequately warn of their failure to do the same.

43.     Defendants knew or should have known that their wrongful acts and omissions would result in harm and damages in the manner set forth herein.

44.     Defendants breached their duty to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall.

45.     Defendants likewise breached their duties to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall. Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the homes and bodies of Plaintiffs and Class Members.

46.     Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, damages and/or personal injuries to Plaintiffs and Class Members.

10

47.     As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages and/or personal injuries as described herein.

### COUNT II
### NEGLIGENCE PER SE
### (Against All Defendants)

48.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

49.     Defendants owed statutory duties to Plaintiffs and Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, j) selling, and/or k) installing this drywall.

50.     Defendants breached their statutory duties to the Plaintiffs and Class Members by failing to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, j) selling, and/or k) installing this drywall.

51.     Defendants likewise breached their statutory duties to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall. Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the homes and bodies of Plaintiffs and Class Members.

52.     Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, damages and/or personal injuries to Plaintiffs and Class Members.

11

53.     As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages and/or personal injuries as described herein.

## COUNT III
## BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES
### (All Defendants)

54.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

55.     Defendants and/or their agents were in privity with Plaintiffs and Class Members and/or Plaintiffs and Class Members were foreseeable third party beneficiaries of any warranty.

56.     At the times Defendants installed, utilized, supplied, inspected, sold, and/or installed this drywall for use in the Plaintiffs' and Class Members' homes, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in the Plaintiffs' and Class Members' homes for use as a building material, and expressly or impliedly warranted the product to be fit for that use.

57.     Defendants placed their drywall products into the stream of commerce in a defective condition and these products were expected to, and did, reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

58.     The drywall was defective because it was not fit for the uses intended or reasonably foreseeable by Defendants; to wit, the installation of the drywall in Plaintiffs' and Class Members' homes for use as a building material, because it contained defects as set forth herein.

12

59.     The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in Plaintiffs and Class Members' homes as a building material) due to the defects set forth herein.

60.     Defendants had reasonable and adequate notice of the Plaintiffs' and the Class Members' claims for breach of warranty and failed to cure.

61.     As a direct and proximate cause of Defendants' breach of warranties, Plaintiffs and Class Members have incurred harm and damages and/or personal injuries as described herein.

**COUNT IV**
**BREACH OF CONTRACT**
**(Against Defendant Harbor Walk Only)**

62.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

63.     As part of the agreement to purchase the home built by Harbor Walk, for which Plaintiffs and Subclass Members paid valuable consideration, Harbor Walk promised Plaintiffs and Subclass Members that their homes would be free of defects.

64.     Harbor Walk materially breached its contracts by providing Plaintiffs and Subclass Members homes that were not free of defects; to wit, the homes contained drywall that is inherently defective because it emits various sulfide and other noxious gases through "off-gassing" that causes harm and damage as described herein.

65.     As a direct and proximate cause of Defendant's breach of contract, Plaintiffs and Class Members have incurred harm and damages as described herein.

## COUNT V
## PRIVATE NUISANCE
### (Against All Defendants)

66.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

67.    The Defendants' tortious or wrongful acts or omissions have caused sulfide gas and/or other chemical leaching into Plaintiffs' and Class Members' homes which has unreasonably interfered, and continues to interfere, with the Plaintiffs' and Class Members' use and enjoyment of their properties and caused them harm and damage as discussed herein.

68.    Defendants' interference has impaired the rights of Plaintiffs' and Class Members' health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

69.    Defendants' invasions were intentional and unreasonable, and/or unintentional but otherwise negligent or reckless.

70.    The interference with Plaintiffs' and Class Members' use of their property caused by Defendants is substantial and is ongoing.

71.    Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiffs and Plaintiffs Class Members' damages, injuries, harm, loss, and increased risk of harm, which they suffered and will continue to suffer.

72.    As a direct and proximate cause of Defendants' creation of a private nuisance, Plaintiffs and Class Members have incurred harm and damages and/or personal injuries as described herein.

14

## COUNT VI
## UNJUST ENRICHMENT
### (All Defendants)

73.　Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

74.　Defendants received money as a result of Plaintiffs' and Class Members' purchases of Defendants' defective drywall, or purchases of homes containing this drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members.

75.　Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Plaintiffs and the Class.

76.　Defendants, by the deliberate and tortious conduct complained of herein, have been unjustly enriched in a manner which warrants restitution.

## COUNT VII
## VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT
### (All Defendants)

77.　Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

78.　This is an action for relief under Virginia Code § 59.1-196, *et seq.*, pursuant to the Virginia Consumer Protection Act.

79.　Virginia Code § 59.1-198 defines a "Consumer transaction" as "[ t ]he advertisement, sale, lease, license or offering for sale, lease or license of goods or services to be used primarily for personal, family or household purposes." Furthermore, "Goods" means "all real, personal or mixed property, tangible or intangible."

15

80. Defendants' sales of defective drywall to the Plaintiffs and Class Members, either directly or through agents, constitute transactions by a supplier under the Virginia Consumer Protection Act.

81. Virginia Code § 59.1-200.A. provides that: "[t]he following fraudulent acts or practices committed by a supplier in connection with a consumer transaction are hereby declared unlawful":

      a. Misrepresenting the source . . . of goods or services;

      b. Misrepresenting the affiliation, connection or association of the supplier, or of the goods or services, with another;

      c. Misrepresenting geographic origin in connection with goods or services;

      d. Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses or benefits;

      e. Misrepresenting that goods or services are of a particular standard, quality, grade, style or model.

82. The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this Complaint, including, but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of the defective drywall constitute violation of the aforementioned provisions of the Virginia Consumer Protection Act.

83. Plaintiffs and Class Members have suffered actual damage as a result of the Defendants' violations of the aforementioned provisions of the Virginia consumer Protection Act for which they are entitled to relief under Virginia Code § 59.1,204,205,206 and/or 207.

84.     As a direct and proximate cause of Defendant's violations of the Virginia Consumer Protection Act, Plaintiffs and Class Members have incurred harm and damages as described herein.

## COUNT VIII
## EQUITABLE AND INJUNCTIVE RELIEF AND MEDICAL MONITORING
### (All Defendants)

85.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

86.     Plaintiffs and the Class are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

87.     Plaintiffs and the Class will suffer irreparable harm if the Court does not render the injunctive relief and medical monitoring relief set forth herein, and if defendants are not ordered to recall, buy back, rescind, and/or repair the Plaintiffs and members of the class' homes.

88.     Plaintiffs, on behalf of themselves and all others similarly situated, demand injunctive and equitable relief and further, that defendants be ordered to: (1) to buy back or rescind the contracts for Plaintiffs' and Class Members' homes, or in the alternative, remedy, repair and/or replace the drywall in the homes upon proof by the defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting to the Class and the general public that there is no defect in, or danger associated with, the drywall; (3) institute, at their own cost, a public awareness campaign to alert the Class and general public of the defect and dangers associated with the drywall; and (4) create, fund, and support a medical monitoring program consistent with the requirements of Virginia law.

89.     Until Defendants' defective drywall has been removed, Defendants should provide continued environmental and air monitoring in Plaintiffs and Class Members' homes.

17

90. Plaintiffs and Class Members have been exposed to greater than normal background levels of sulfides and other hazardous chemicals as a result of exposures to Defendants' defective and unfit drywall and have suffered personal injuries as a result.

91. The sulfides and other noxious gases which have been released from Defendants drywall and to which Plaintiffs and Class Members have been exposed are proven hazardous, dangerous, or toxic substances.

92. Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct.

93. Plaintiffs' and Class Members' exposure may lead to serious health problems, diseases, and medical conditions that may be prevented by timely medical diagnosis and treatment.

94. The method and means for diagnosing the Plaintiffs' and Class Members' potential medical problems are well accepted in the medical and scientific community and will be of great benefit to the Plaintiffs and Class Members by preventing or minimizing health problems that they may encounter as a result of the defective and unfit drywall.

95. As a proximate result of their exposure to sulfide and other noxious gases from Defendants' defective and unfit drywall, Plaintiffs and Class Members have developed a significantly increased risk of contracting a serious latent disease.

96. Monitoring procedures exist that make the early detection of any latent disease possible that are different from those normally recommended in the absence of the exposure.

97. The prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

18

## DEMAND FOR JURY TRIAL

Plaintiffs individually and on behalf of the Class Members, hereby demand a trial by jury as to all issues so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situated demand:

    a.   an order certifying the case as a class action;

    b.   an order appointing Plaintiffs as the Class Representatives of the Class;

    c.   an order appointing undersigned counsel and their firms as counsel for the Class;

    d.   compensatory, statutory, and/or punitive damages;

    e.   pre and post-judgment interest as allowed by law;

    f.   injunctive relief;

    g.   an award of attorneys' fees as allowed by law;

    h.   an award of taxable costs; and

    i.   any and all such further relief as this Court deems just and proper.

DATED: __5/1/09__

Richard Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
*Counsel for Plaintiffs*

19

Michael D. Hausfeld
Richard S. Lewis
James J. Pizzirusso
Faris Ghareeb
HAUSFELD LLP
1700 K Street, N.W.
Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
*Co-counsel for Plaintiffs*

Arnold Levin
Fred S. Longer
Daniel Levin
Levin, Fishbein, Sedran & Berman
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
*Co-counsel for Plaintiffs*

Robert Gary
Gary, Naegele & Theado, LLC
446 Broadway
Lorain, OH 44052
Phone: (440) 244-4809
Fax: (440) 244-3462
*Co-counsel for Plaintiffs*

Richard W. Stimson
Attorney at Law
920 Waters Reach Court
Alpharetta, Georgia 30022
Phone: 214-914-6128
*Co-counsel for Plaintiffs*

JS 44 (Rev. 12 07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
MICHELLE GERMANO; DENNIS JACKSON; etc.

## DEFENDANTS
TAISHAN GYPSUM CO. LTD., f/k/a SHANDONG..., etc.

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    China
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
R. Serpe, Esq., 580 E. Main St. #310, Norfolk, VA, 233-0009

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☒ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1332 (a)(2)
Brief description of cause:
Product Liability for defective drywall

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 5,000,000.00 +

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions)
None in VA/MDL 2047
JUDGE _____ DOCKET NUMBER _____

DATE 5/1/09

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

Court Name: United States District Court
Division: 2
Receipt Number: 24683002078
Cashier ID: tlevinso
Transaction Date: 05/01/2009
Payer Name: LAW OFFICES OF RICHARD J SER
PE
------------------------------------
CIVIL FILING FEE
 For: LAW OFFICES OF RICHARD J SERPE
 Amount:        $350.00
------------------------------------
CHECK
 Check/Money Order Num: 6862
 Amt Tendered:  $350.00
------------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00

LAW OFFICES OF RICHARD J SERPE PC

2:09cv202



LAW OFFICES OF
RICHARD J. SERPE, P.C.

May 1, 2009

**HAND DELIVERY**

Fernando Galindo, Clerk
Civil Division
US District Court for the Eastern District
 of Virginia
600 Granby Street
Norfolk, VA 23510

       Re:   MICHELLE GERMANO; DENNIS JACKSON; SHARON JACKSON;
               JASON DUNAWAY; LISA DUNAWAY; individually and on behalf of all
               others similarly situated v. TAISHAN GYPSUM CO. LTD f/k/a
               SHANDONG TAIHE DONGXIN CO. LTD.; VENTURE SUPPLY INC.;
               HARBOR WALK DEVELOPMENT, LLC; and THE PORTER-BLAINE
               CORP.

Dear Mr. Galindo:

      Enclosed please find the following:

1.     Original and three copies of a Complaint, in the above-referenced
       action;

2.     Check payable to the Clerk of the U.S. District  Court in the amount
       of $350.00 representing payment of the filing fee; and

3.     Original Cover Sheet for Filing Civil Actions.

      I request that you prepare a summons for each of the following entities for
purposes of service:

               Venture Supply, Inc.
               Richard E. Biemiller, Registered Agent
               Convergence Center IV
               301 Bendix Road, Suite 500
               Virginia Beach, VA 23452

               The Porter-Blaine Corporation
               Richard E. Biemiller, Registered Agent
               Convergence Center IV
               301 Bendix Road, Suite 500
               Virginia Beach, VA 23452

May 1, 2009
Page 2

Harbor Walk Development, LLC
Paul W. Gerhardt, Registered Agent
4801 Courthouse Street, Suite 300
Williamsburg, VA 23188

We will be having the Complaint served on the noted Defendants by Driskell Services, a private process server. Please contact the undersigned when the service copies are available for pick up.

In addition to the above, I have provided a self-addressed envelope and an extra copy of the first page of the Complaint. Please note the case number and date filed on this extra page and return it to our office for our records.

Should you have any questions, please do not hesitate to contact our office.

Sincerely yours,

LAW OFFICES OF RICHARD J. SERPE, P.C.

Richard J. Serpe

RJS/lpa
Enclosures

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

MICHELLE GERMANO; DENNIS JACKSON;
SHARON JACKSON; JASON DUNAWAY;
LISA DUNAWAY; individually, and on behalf of
all others similarly situated,

        Plaintiffs,

v.                               Civil Action No. 2:09-cv-202

TAISHAN GYPSUM CO. LTD. f/k/a
SHANDONG TAIHE DONGXIN CO. LTD.;
TOBIN TRADING INC.; VENTURE SUPPLY
INC.; HARBOR WALK DEVELOPMENT, LLC;
and THE PORTER-BLAINE CORP.,

        Defendants.
_____/

## FIRST AMENDED COMPLAINT--CLASS ACTION

Pursuant to Fed. R. Civ. P. 23, Plaintiffs brings this class action on behalf of themselves

and all other similarly situated owners and residents of residential homes in the Commonwealth

of Virginia containing defective drywall that was designed, manufactured, exported, imported,

distributed, delivered, supplied, inspected, marketed, sold and/or installed by Defendants Taishan

Gypsum Co. Ltd. f/k/a Shandong Taihe Dongxin, Co. Ltd. ("Taishan"), Tobin Trading Inc.

("Tobin") and/or Venture Supply Inc. ("Venture"). Plaintiffs also bring this action on behalf of a

subclass of similarly situated owners and residents of residential homes in the Commonwealth of

Virginia containing defective drywall that were built and/or had drywall installed by developer

Harbor Walk Development, LLC ("Harbor Walk") and/or The Porter-Blaine Corp. ("Porter-

Blaine"). In support thereof, Plaintiffs states as follows:

1

## JURISDICTION, PARTIES, AND VENUE

1.      This action is within the original jurisdiction of this Court by virtue of 28 U.S.C. §1332(d)(2) and the Class Action Fairness Act.  Plaintiffs and certain Defendants are citizens of different states and the amount in controversy of this Class action exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

2.      Venue in this district satisfies the requirements of 28 U.S.C. §1391(b)(1)-(2) because some Plaintiffs reside in this jurisdiction, some Defendant resides in this jurisdiction, and a substantial amount of the events and occurrences giving rise to the claim occurred in this District, or a substantial part of the property that is the subject of this action is situated in this district.

## PLAINTIFFS

3.      Plaintiff Michelle Germano is a resident of Virginia and owns a home located at 8171 North View Blvd., Norfolk, Virginia, 23518.

4.      Upon information and belief, Ms. Germano's home was built and/or had drywall installed by Defendants Harbor Walk and/or Porter-Blaine and it contains defective drywall that was designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold by Defendants Taishan, Tobin and/or Venture.

5.      Plaintiffs Dennis and Sharon Jackson (husband and wife) are residents of Virginia and own a home located at 8151 North View Blvd., Norfolk, Virginia, 23518.

6.      Upon information and belief, the Jackson's home was built and/or had drywall installed by Defendants Harbor Walk and/or Porter-Blaine and it contains defective drywall that was designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold by Defendants Taishan, Tobin and/or Venture.

2

7.      Plaintiffs Jason and Lisa Dunaway (husband and wife) are residents of Virginia and own a home located at 27037 Flaggy Run Rd., Courtland, Virginia, 23837.

8.      Upon information and belief, the Dunaways built their own home and it contains defective drywall that was designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold by Defendants Taishan, Tobin and/or Venture.

## DEFENDANTS

9.      Defendant Taishan is a Chinese corporation doing business in the Commonwealth of Virginia with its principal place of business located at Dawenkou, Daiyue District, Tai'an City, Shandong Province, China, 271026.

10.     Defendant Taishan designed, manufactured, exported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall at issue in this case.

11.     Upon information and belief, Taishan is controlled by the Beijing New Building Materials Public Limited Co., which is a state-owned entity and respectively controlled by the Chinese government.

12.     To the extent Taishan is deemed a foreign sovereign entity, Plaintiffs bring claims against Taishan pursuant to 28 U.S.C. § 1605(a)(2), the commercial activity exception to the Foreign Sovereign Immunities Act, or alternatively under § 1605(a)(5), the tortious act exception.  Plaintiffs allege that the claim is based upon Taishan's commercial activities carried on in the United States.  The claim also seeks monetary damages against a foreign state for damage to property occurring in the United States, caused by the tortious acts or omissions of that foreign state, or of any official or employee of that foreign state while acting within the scope of his office or employment.

13.     Defendant Tobin is a Virginia corporation with its principal place of business located at 5008 Gatehouse Way, Virginia Beach, Virginia, 23455.

14.     Defendant Tobin imported, distributed, delivered, supplied, inspected, marketed and/or sold defective drywall at issue in this case.

15.     Defendant Venture is a Virginia corporation with its principal place of business located at 1140 Azalea Garden Road, Norfolk, Virginia, 23502.

16.     Venture imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall to builders that was supplied to and damaged homeowners including Plaintiffs and Class Members.  Venture also imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall directly to some Plaintiffs and Class Members

17.     Defendant Harbor Walk is a Virginia corporation and is located at 804 Oakmears Crescent, Suite 101, Virginia Beach, Virginia, 23462.

18.     Harbor Walk built some Plaintiffs' and Class Members' homes and, directly or through agents, installed defective drywall in those homes, which has resulted in harm and damages to Plaintiffs and Subclass Members as described herein.

19.     Defendant Porter-Blaine is a Virginia corporation and is located at 1140 Azalea Garden Rd, Norfolk, Virginia, 23502.

20.     Porter-Blaine, which shares an address with Venture, is one of Venture's drywall installation contractors.  Upon information and belief, Porter-Blaine installed defective drywall in the Harbor Walk homes, and in other homes, which has resulted in harm and damages to Plaintiffs and Subclass Members as described herein.

21.     At all times herein mentioned, each of the Defendants was acting in concert with one another and was the agent, servant, partner, aider and abettor, co-conspirator and/or joint

4

venturer of each of the other Defendants herein and was at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and/or joint venture and rendered substantial assistance and encouragement to the other Defendants, knowing that their collective conduct constituted a breach of duty owed to Plaintiffs and Class Members.

## GENERAL ALLEGATIONS

22.    Upon information and belief, Defendants' drywall contains gypsum.

23.    In "defective drywall" (such as that designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, sold and/or installed by Defendants herein), the gypsum and other components of the product break down and release sulfides and other noxious gases that are then emitted (or "off-gassed") from the drywall.

24.    Sulfides and other noxious gases, such as those emitted from Defendants' drywall, cause corrosion and damage to personal property (such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property).

25.    Exposure to sulfide and other noxious gases, such as those emitted from Defendants' drywall, causes personal injury resulting in eye irritation, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm.

26.    As a direct and proximate result of Defendants' actions and omissions, Plaintiffs and the Class Members' homes, personal property, and bodies have been exposed to Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from Defendants' defective drywall.

27.    Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, sold and/or installed defective drywall, which was unfit

for its intended purpose and unreasonably dangerous in its normal use in that the drywall caused corrosion and damage to personal property in Plaintiffs' and Class Members' homes and/or caused personal injury resulting in eye irritation, a sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm.

28.     As a direct and proximate result of Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from these products, Plaintiffs and Class Members have suffered, and continue to suffer economic harm and/or personal injury.

29.     As a direct and proximate result of Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from these products, the Plaintiffs and the Class Members have suffered, and continue to suffer damages.  These damages include, but are not limited to, costs of inspection; costs and expenses necessary to remedy, replace and remove the defective drywall and other property that has been impacted; lost value or devaluation of their homes and property; loss of use and enjoyment of their home and property; and/or damages associated with personal injuries.

30.     As a direct and proximate result of Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from these products, Plaintiffs have been exposed to above-background levels of toxic gases and suffered personal injury, have been placed at an increased risk of disease, and have need for injunctive relief in the form of repair of their homes or rescission of their home contracts, emergency/corrective notice, environmental testing and monitoring, and/or medical monitoring.

## CLASS ACTION ALLEGATIONS

31.     Plaintiffs bring this suit as a class action pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and the following Class and Subclass comprised of:

> **Class Definition:**
>
> All owners and residents of residential homes in the Commonwealth of Virginia containing defective drywall manufactured, sold, distributed, and/or supplied by Taishan Gypsum Co. Ltd., Tobin Trading Inc. and/or Venture Supply Inc.
>
> **Harbor Walk/Porter-Blaine Subclass Definition:**
>
> All owners and residents of residential homes in the Commonwealth of Virginia containing defective drywall built and/or installed by Harbor Walk Development LLC and/or Porter-Blaine Corp.

32.     The following Persons shall be excluded from the Class: (1) Defendants and their subsidiaries, affiliates, officers and employees; (2) all Persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the judge(s) to whom this case is assigned and any immediate family members thereof.

33.     Upon information and belief, the Defendants' defective and unfit drywall was installed in at least hundreds of homes in the Commonwealth of Virginia. Therefore, the Class is sufficiently numerous such that the joinder of all members of the Class in a single action is impracticable.

34.     There are numerous common questions of law and fact that predominate over any questions affecting only individual members of the Class. Among these common questions of law and fact are the following:

a.  whether Defendants' drywall products that release sulfide and other noxious gases are defective and/or unfit for their intended purpose;

b.  whether Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, sold, and/or installed defective drywall products;

c.  whether Plaintiffs and Class Members are entitled to recover compensatory, exemplary, incidental, consequential, and/or other damages as a result of Defendants' unlawful and tortious conduct; and

d.  whether Plaintiffs and Class Members are entitled to recover injunctive and/or equitable relief as a result of Defendants' unlawful and tortious conduct.

35.  The legal claims of Plaintiffs are typical of the legal claims of other Class Members. Plaintiffs have the same legal interests and need for legal remedies as other Class Members.

36.  The Plaintiffs and each member of the Class have defective and unfit drywall in their homes. Due to the drywall in Plaintiffs and Class Members' homes, Plaintiffs and Class Members suffered damages and the need for injunctive and equitable relief, as set forth herein.

37.  Plaintiffs are adequate representatives of the Class and, together with their legal counsel, will fairly and adequately protect the interests of the Class. Plaintiffs have no conflicts with the Class and are committed to the vigorous prosecution of this action.

38.  The undersigned counsel are competent counsel experienced in class action litigation, mass torts, and litigation involving defective and harmful products. Counsel will fairly and adequately protect the interests of the class.

39.     The various claims asserted in this action are certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

40.     The claims for injunctive relief in this case are certifiable under Fed. R. Civ. P. 23(b)(2).  Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole.

41.     A class action is superior to other methods of dispute resolution in this case.  The Class members have an interest in class adjudication rather than individual adjudication because of their overlapping rights.  It is highly desirable to concentrate the resolution of these claims in this single forum because it would be difficult and highly unlikely that the affected Class members would protect their rights on their own without this class action case.  Management of the class will be efficient and far superior to the management of individual lawsuits.

42.     The issues common to the class members' claims, some of which are identified above, are alternatively certifiable pursuant to Fed. R. Civ. P. 23(c)(4) as resolution of these issues would materially advance the litigation, and class resolution of these issues is superior to repeated litigation of these issues in separate trials.

<u>COUNT I</u>
**NEGLIGENCE**
**(Against All Defendants)**

43.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

44.     Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, j) selling, and/or k) installing this drywall, including a duty to adequately warn of their failure to do the same.

45.     Defendants knew or should have known that their wrongful acts and omissions would result in harm and damages in the manner set forth herein.

46.     Defendants breached their duty to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall.

47.     Defendants likewise breached their duties to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall.  Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the homes and bodies of Plaintiffs and Class Members.

48.     Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, damages and/or personal injuries to Plaintiffs and Class Members.

49.     As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages and/or personal injuries as described herein.

10

## COUNT II
## NEGLIGENCE PER SE
### (Against All Defendants)

50.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

51.     Defendants owed statutory duties to Plaintiffs and Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, j) selling, and/or k) installing this drywall.

52.     Defendants breached their statutory duties to the Plaintiffs and Class Members by failing to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, j) selling, and/or k) installing this drywall.

53.     Defendants likewise breached their statutory duties to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall.  Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the homes and bodies of Plaintiffs and Class Members.

54.     Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, damages and/or personal injuries to Plaintiffs and Class Members.

55.     As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages and/or personal injuries as described herein.

## COUNT III
## BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES
### (All Defendants)

56.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

11

57.     Defendants and/or their agents were in privity with Plaintiffs and Class Members and/or Plaintiffs and Class Members were foreseeable third party beneficiaries of any warranty.

58.     At the times Defendants installed, utilized, supplied, inspected, sold, and/or installed this drywall for use in the Plaintiffs' and Class Members' homes, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in the Plaintiffs' and Class Members' homes for use as a building material, and expressly or impliedly warranted the product to be fit for that use.

59.     Defendants placed their drywall products into the stream of commerce in a defective condition and these products were expected to, and did, reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

60.     The drywall was defective because it was not fit for the uses intended or reasonably foreseeable by Defendants; to wit, the installation of the drywall in Plaintiffs' and Class Members' homes for use as a building material, because it contained defects as set forth herein.

61.     The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in Plaintiffs and Class Members' homes as a building material) due to the defects set forth herein.

62.     Defendants had reasonable and adequate notice of the Plaintiffs' and the Class Members' claims for breach of warranty and failed to cure.

63.     As a direct and proximate cause of Defendants' breach of warranties, Plaintiffs and Class Members have incurred harm and damages and/or personal injuries as described herein.

12

## COUNT IV
## BREACH OF CONTRACT
### (Against Defendant Harbor Walk Only)

64.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

65.     As part of the agreement to purchase the home built by Harbor Walk, for which Plaintiffs and Subclass Members paid valuable consideration, Harbor Walk promised Plaintiffs and Subclass Members that their homes would be free of defects.

66.     Harbor Walk materially breached its contracts by providing Plaintiffs and Subclass Members homes that were not free of defects; to wit, the homes contained drywall that is inherently defective because it emits various sulfide and other noxious gases through "off-gassing" that causes harm and damage as described herein.

67.     As a direct and proximate cause of Defendant's breach of contract, Plaintiffs and Class Members have incurred harm and damages as described herein.

## COUNT V
## PRIVATE NUISANCE
### (Against All Defendants)

68.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

69.     The Defendants' tortious or wrongful acts or omissions have caused sulfide gas and/or other chemical leaching into Plaintiffs' and Class Members' homes which has unreasonably interfered, and continues to interfere, with the Plaintiffs' and Class Members' use and enjoyment of their properties and caused them harm and damage as discussed herein.

70.     Defendants' interference has impaired the rights of Plaintiffs' and Class Members' health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

13

71. Defendants' invasions were intentional and unreasonable, and/or unintentional but otherwise negligent or reckless.

72. The interference with Plaintiffs' and Class Members' use of their property caused by Defendants is substantial and is ongoing.

73. Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiffs and Plaintiffs Class Members' damages, injuries, harm, loss, and increased risk of harm, which they suffered and will continue to suffer.

74. As a direct and proximate cause of Defendants' creation of a private nuisance, Plaintiffs and Class Members have incurred harm and damages and/or personal injuries as described herein.

## COUNT VI
## UNJUST ENRICHMENT
### (All Defendants)

75. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

76. Defendants received money as a result of Plaintiffs' and Class Members' purchases of Defendants' defective drywall, or purchases of homes containing this drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members.

77. Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Plaintiffs and the Class.

78. Defendants, by the deliberate and tortious conduct complained of herein, have been unjustly enriched in a manner which warrants restitution.

## COUNT VII
## VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT
### (All Defendants)

79. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

80. This is an action for relief under Virginia Code § 59.1-196, *et seq.*, pursuant to the Virginia Consumer Protection Act.

81. Virginia Code § 59.1-198 defines a "Consumer transaction" as "[ t ]he advertisement, sale, lease, license or offering for sale, lease or license of goods or services to be used primarily for personal, family or household purposes." Furthermore, "Goods" means "all real, personal or mixed property, tangible or intangible."

82. Defendants' sales of defective drywall to the Plaintiffs and Class Members, either directly or through agents, constitute transactions by a supplier under the Virginia Consumer Protection Act.

83. Virginia Code § 59.1-200.A. provides that: "[t]he following fraudulent acts or practices committed by a supplier in connection with a consumer transaction are hereby declared unlawful":

    a.    Misrepresenting the source . . . of goods or services;

    b.    Misrepresenting the affiliation, connection or association of the supplier, or of the goods or services, with another;

    c.    Misrepresenting geographic origin in connection with goods or services;

    d.    Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses or benefits;

    e.    Misrepresenting that goods or services are of a particular standard, quality, grade, style or model.

15

84.     The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this Complaint, including, but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of the defective drywall constitute violation of the aforementioned provisions of the Virginia Consumer Protection Act.

85.     Plaintiffs and Class Members have suffered actual damage as a result of the Defendants' violations of the aforementioned provisions of the Virginia consumer Protection Act for which they are entitled to relief under Virginia Code § 59.1,204,205,206 and/or 207.

86.     As a direct and proximate cause of Defendant's violations of the Virginia Consumer Protection Act, Plaintiffs and Class Members have incurred harm and damages as described herein.

## COUNT VIII
## EQUITABLE AND INJUNCTIVE RELIEF AND MEDICAL MONITORING
### (All Defendants)

87.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

88.     Plaintiffs and the Class are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

89.     Plaintiffs and the Class will suffer irreparable harm if the Court does not render the injunctive relief and medical monitoring relief set forth herein, and if defendants are not ordered to recall, buy back, rescind, and/or repair the Plaintiffs and members of the class' homes.

90.     Plaintiffs, on behalf of themselves and all others similarly situated, demand injunctive and equitable relief and further, that defendants be ordered to: (1) to buy back or rescind the contracts for Plaintiffs' and Class Members' homes, or in the alternative, remedy, repair and/or replace the drywall in the homes upon proof by the defendants of the feasibility of

such remedy or repair; (2) cease and desist from misrepresenting to the Class and the general public that there is no defect in, or danger associated with, the drywall; (3) institute, at their own cost, a public awareness campaign to alert the Class and general public of the defect and dangers associated with the drywall; and (4) create, fund, and support a medical monitoring program consistent with the requirements of Virginia law.

91.     Until Defendants' defective drywall has been removed, Defendants should provide continued environmental and air monitoring in Plaintiffs and Class Members' homes.

92.     Plaintiffs and Class Members have been exposed to greater than normal background levels of sulfides and other hazardous chemicals as a result of exposures to Defendants' defective and unfit drywall and have suffered personal injuries as a result.

93.     The sulfides and other noxious gases which have been released from Defendants drywall and to which Plaintiffs and Class Members have been exposed are proven hazardous, dangerous, or toxic substances.

94.     Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct.

95.     Plaintiffs' and Class Members' exposure may lead to serious health problems, diseases, and medical conditions that may be prevented by timely medical diagnosis and treatment.

96.     The method and means for diagnosing the Plaintiffs' and Class Members' potential medical problems are well accepted in the medical and scientific community and will be of great benefit to the Plaintiffs and Class Members by preventing or minimizing health problems that they may encounter as a result of the defective and unfit drywall.

97.     As a proximate result of their exposure to sulfide and other noxious gases from Defendants' defective and unfit drywall, Plaintiffs and Class Members have developed a significantly increased risk of contracting a serious latent disease.

98.     Monitoring procedures exist that make the early detection of any latent disease possible that are different from those normally recommended in the absence of the exposure.

99.     The prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

## DEMAND FOR JURY TRIAL

Plaintiffs individually and on behalf of the Class Members, hereby demand a trial by jury as to all issues so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situated demand:

a.   an order certifying the case as a class action;

b.   an order appointing Plaintiffs as the Class Representatives of the Class;

c.   an order appointing undersigned counsel and their firms as counsel for the Class;

d.   compensatory, statutory, and/or punitive damages;

e.   pre and post-judgment interest as allowed by law;

f.   injunctive relief;

g.   an award of attorneys' fees as allowed by law;

h. an award of taxable costs; and

i. any and all such further relief as this Court deems just and proper.

DATED:  5·26·09

Richard Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
*Counsel for Plaintiffs*

Michael D. Hausfeld
Richard S. Lewis
James J. Pizzirusso
Faris Ghareeb
HAUSFELD LLP
1700 K Street, N.W.
Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
*Co-counsel for Plaintiffs*

Arnold Levin
Fred S. Longer
Daniel Levin
Levin, Fishbein, Sedran & Berman
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
*Co-counsel for Plaintiffs*

Robert Gary
Gary, Naegele & Theado, LLC
446 Broadway
Lorain, OH 44052
Phone: (440) 244-4809
Fax: (440) 244-3462
*Co-counsel for Plaintiffs*

Richard W. Stimson
Attorney at Law
920 Waters Reach Court
Alpharetta, Georgia 30022
Phone: 214-914-6128
*Co-counsel for Plaintiffs*

19

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE:  CHINESE-MANUFACTURED      : **MDL No. 2047**
DRYWALL PRODUCTS LIABILITY        :
LITIGATION                                : **SECTION:  L**
                                        : **JUDGE FALLON**
                                        : **MAG. JUDGE WILKINSON**
THIS DOCUMENT RELATES TO:          :
                                        :
**Germano, et al. v. Taishan Gypsum Co., Ltd.,**   :
**f/k/a Shandong Taihe Dongxin Co. Ltd., et al.,**   :
**Case No. 09-6687 (E.D.La.)**                 :

<u>**SECOND AMENDED COMPLAINT--CLASS ACTION**</u>

       Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this class action on behalf of themselves and all other similarly situated owners and landlords of real property containing defective Chinese manufactured drywall that was designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, sold and/or installed by Defendants Taishan Gypsum Co. Ltd. f/k/a Shandong Taihe Dongxin, Co. Ltd. ("Taishan"), Tobin Trading Inc. ("Tobin") and/or Venture Supply Inc. ("Venture").  Plaintiffs also bring this action on behalf of a subclass of similarly situated owners and residents of residential homes in the Commonwealth of Virginia containing defective Chinese manufactured drywall that were built and/or had drywall installed by developer Harbor Walk Development, LLC ("Harbor Walk") and/or The Porter-Blaine Corp. ("Porter-Blaine").  In support thereof, Plaintiffs states as follows:

1

## JURISDICTION, PARTIES, AND VENUE

1.      This action is within the original jurisdiction of this Court by virtue of 28 U.S.C.

§1332(d)(2) and the Class Action Fairness Act ("CAFA").  *See* 28 U.S.C. §1711, *et seq*.

Plaintiffs and certain Defendants are citizens of different states and the amount in controversy of

this Class action exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

2.      Should the Court not have original jurisdiction over any claim or claims under

CAFA, this Court can exercise supplemental jurisdiction under 28 U.S.C. §1367 over the claims

because they are derived from the same nucleus of operative facts such that plaintiffs would

ordinarily expect to try them in one proceeding.

3.      Venue in this district satisfies the requirements of 28 U.S.C. §1391(b)(1)-(2)  and

(c) because a significant number of the absent class members reside in this jurisdiction and a

substantial amount of the events and occurrences giving rise to the claims occurred in this

District, or a substantial part of the property that is the subject of this action is situated in this

district.   Venue is otherwise appropriate in this district consistent with JPML's consolidation of

MDL.

## PLAINTIFFS

4.      Plaintiff Michelle Germano is a resident of Virginia and owns a home located at

8171 North View Blvd., Norfolk, Virginia, 23518.

5.      Upon information and belief, Ms. Germano's home was built and/or had drywall

installed by Defendants Harbor Walk and/or Porter-Blaine and it contains defective drywall that

was designed, manufactured, exported, imported, distributed, delivered, supplied, inspected,

marketed, and/or sold by Defendants Taishan, Tobin and/or Venture.

6.    Plaintiffs Dennis and Sharon Jackson (husband and wife) are residents of Virginia and own a home located at 8151 North View Blvd., Norfolk, Virginia, 23518.

7.    Upon information and belief, the Jackson's home was built and/or had drywall installed by Defendants Harbor Walk and/or Porter-Blaine and it contains defective drywall that was designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold by Defendants Taishan, Tobin and/or Venture.

8.    Plaintiffs Jason and Lisa Dunaway (husband and wife) are residents of Virginia and own a home located at 27037 Flaggy Run Rd., Courtland, Virginia, 23837.

9.    Upon information and belief, the Dunaways built their own home and it contains defective drywall that was designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold by Defendants Taishan, Tobin and/or Venture.

## DEFENDANTS

10.    Defendant Taishan is a Chinese corporation doing business in the Commonwealth of Virginia with its principal place of business located at Dawenkou, Daiyue District, Tai'an City, Shandong Province, China, 271026.

11.    Defendant Taishan designed, manufactured, exported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall at issue in this case.

12.    Upon information and belief, Taishan is controlled by the Beijing New Building Materials Public Limited Co., which is a state-owned entity and respectively controlled by the Chinese government.

13.    To the extent Taishan is deemed a foreign sovereign entity, Plaintiffs bring claims against Taishan pursuant to 28 U.S.C. § 1605(a)(2), the commercial activity exception to the Foreign Sovereign Immunities Act, or alternatively under § 1605(a)(5), the tortious act

exception. Plaintiffs allege that the claim is based upon Taishan's commercial activities carried on in the United States. The claim also seeks monetary damages against a foreign state for damage to property occurring in the United States, caused by the tortious acts or omissions of that foreign state, or of any official or employee of that foreign state while acting within the scope of his office or employment.

14.   Defendant Tobin is a Virginia corporation with its principal place of business located at 5008 Gatehouse Way, Virginia Beach, Virginia, 23455.

15.   Defendant Tobin imported, distributed, delivered, supplied, inspected, marketed and/or sold defective drywall at issue in this case.

16.   Defendant Venture is a Virginia corporation with its principal place of business located at 1140 Azalea Garden Road, Norfolk, Virginia, 23502.

17.   Venture imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall to builders that was supplied to and damaged homeowners including Plaintiffs and Class Members. Venture also imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall directly to some Plaintiffs and Class Members

18.   Defendant Harbor Walk is a Virginia corporation and is located at 804 Oakmears Crescent, Suite 101, Virginia Beach, Virginia, 23462.

19.   Harbor Walk built some Plaintiffs' and Class Members' homes and, directly or through agents, installed defective drywall in those homes, which has resulted in harm and damages to Plaintiffs and Subclass Members as described herein.

20.   Defendant Porter-Blaine is a Virginia corporation and is located at 1140 Azalea Garden Rd, Norfolk, Virginia, 23502.

4

21.     Porter-Blaine, which shares an address with Venture, is one of Venture's drywall installation contractors.  Upon information and belief, Porter-Blaine installed defective drywall in the Harbor Walk homes, and in other homes, which has resulted in harm and damages to Plaintiffs and Subclass Members as described herein.

22.     At all times herein mentioned, each of the Defendants was acting in concert with one another and was the agent, servant, partner, aider and abettor, co-conspirator and/or joint venturer of each of the other Defendants herein and was at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and/or joint venture and rendered substantial assistance and encouragement to the other Defendants, knowing that their collective conduct constituted a breach of duty owed to Plaintiffs and Class Members.

**GENERAL ALLEGATIONS**

23.     Upon information and belief, Defendants' drywall contains gypsum.

24.     In "defective drywall" (such as that designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, sold and/or installed by Defendants herein), the gypsum and other components of the product break down and release sulfides and other noxious gases that are then emitted (or "off-gassed") from the drywall.

25.     Sulfides and other noxious gases, such as those emitted from Defendants' drywall, cause corrosion and damage to personal property (such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property).

26.     Exposure to sulfide and other noxious gases, such as those emitted from Defendants' drywall, causes personal injury resulting in eye irritation, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm.

5

27.     As a direct and proximate result of Defendants' actions and omissions, Plaintiffs and the Class Members' homes, personal property, and bodies have been exposed to Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from Defendants' defective drywall.

28.     Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, sold and/or installed defective drywall, which was unfit for its intended purpose and unreasonably dangerous in its normal use in that the drywall caused corrosion and damage to personal property in Plaintiffs' and Class Members' homes and/or caused personal injury resulting in eye irritation, a sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm.

29.     As a direct and proximate result of Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from these products, Plaintiffs and Class Members have suffered, and continue to suffer economic harm and/or personal injury.

30.     As a direct and proximate result of Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from these products, the Plaintiffs and the Class Members have suffered, and continue to suffer damages.  These damages include, but are not limited to, costs of inspection; costs and expenses necessary to remedy, replace and remove the defective drywall and other property that has been impacted; lost value or devaluation of their homes and property; loss of use and enjoyment of their home and property; and/or damages associated with personal injuries.

31.     As a direct and proximate result of Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from

these products, Plaintiffs have been exposed to above-background levels of toxic gases and

suffered personal injury, have been placed at an increased risk of disease, and have need for

injunctive relief in the form of repair of their homes or rescission of their home contracts,

emergency/corrective notice, environmental testing and monitoring, and/or medical monitoring.

## CLASS ACTION ALLEGATIONS

32.     Plaintiffs bring this suit as a class action pursuant to Rules 23(a), (b)(1), (b)(2),

(b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and the

following Class and Subclass comprised of:

> **Class Definition:**
>
> All owners and landlords of real properties located in the United
> States containing defective Chinese drywall manufactured, sold,
> distributed, supplied, marketed, inspected, imported or delivered
> by Taishan Gypsum Co. Ltd.
>
> **Tobin Trading Inc. and/or Venture Supply Inc. Subclass
> Definition:**
>
> All owners and residents of residential homes in the
> Commonwealth of Virginia containing defective Chinese drywall
> manufactured by Taishan and sold, distributed, supplied, marketed,
> inspected, imported or delivered by Tobin Trading Inc. and/or
> Venture Supply Inc.
>
> **Harbor Walk/Porter-Blaine Subclass Definition:**
>
> All owners and residents of residential homes in the
> Commonwealth of Virginia containing defective Chinese drywall
> manufactured by Taishan, which home was built and/or drywall
> installed by Harbor Walk Development LLC and/or Porter-Blaine
> Corp.

33.     The following Persons shall be excluded from the Class: (1) Defendants and their

subsidiaries, affiliates, officers and employees; (2) all Persons who make a timely election to be

7

excluded from the proposed Class; (3) governmental entities; and (4) the judge(s) to whom this case is assigned and any immediate family members thereof.

34.     Upon information and belief, the Defendants' defective and unfit drywall was installed in at least hundreds of homes in the United States.  Therefore, the Class is sufficiently numerous such that the joinder of all members of the Class in a single action is impracticable.

35.     There are numerous common questions of law and fact that predominate over any questions affecting only individual members of the Class.  Among these common questions of law and fact are the following:

   a.     whether Defendants' drywall products that release sulfide and other noxious gases are defective and/or unfit for their intended purpose;

   b.     whether Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, sold, and/or installed defective drywall products;

   c.     whether Plaintiffs and Class Members are entitled to recover compensatory, exemplary, incidental, consequential, and/or other damages as a result of Defendants' unlawful and tortious conduct; and

   d.     whether Plaintiffs and Class Members are entitled to recover injunctive and/or equitable relief as a result of Defendants' unlawful and tortious conduct.

36.     The legal claims of Plaintiffs are typical of the legal claims of other Class Members.  Plaintiffs have the same legal interests and need for legal remedies as other Class Members.

37.     The Plaintiffs and each member of the Class have defective and unfit drywall in their homes.  Due to the drywall in Plaintiffs and Class Members' homes, Plaintiffs and Class Members suffered damages and the need for injunctive and equitable relief, as set forth herein.

38.     Plaintiffs are adequate representatives of the Class and, together with their legal counsel, will fairly and adequately protect the interests of the Class.  Plaintiffs have no conflicts with the Class and are committed to the vigorous prosecution of this action.

39.     The undersigned counsel are competent counsel experienced in class action litigation, mass torts, and litigation involving defective and harmful products.  Counsel will fairly and adequately protect the interests of the class.

40.     The various claims asserted in this action are certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

41.     The claims for injunctive relief in this case are certifiable under Fed. R. Civ. P. 23(b)(2).  Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole.

42.     A class action is superior to other methods of dispute resolution in this case.  The Class members have an interest in class adjudication rather than individual adjudication because of their overlapping rights.  It is highly desirable to concentrate the resolution of these claims in

9

this single forum because it would be difficult and highly unlikely that the affected Class members would protect their rights on their own without this class action case. Management of the class will be efficient and far superior to the management of individual lawsuits.

43. The issues common to the class members' claims, some of which are identified above, are alternatively certifiable pursuant to Fed. R. Civ. P. 23(c)(4) as resolution of these issues would materially advance the litigation, and class resolution of these issues is superior to repeated litigation of these issues in separate trials.

## COUNT I
## NEGLIGENCE
### (Against All Defendants)

44. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

45. Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, j) selling, and/or k) installing this drywall, including a duty to adequately warn of their failure to do the same.

46. Defendants knew or should have known that their wrongful acts and omissions would result in harm and damages in the manner set forth herein.

47. Defendants breached their duty to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall.

48. Defendants likewise breached their duties to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall. Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the homes and bodies of Plaintiffs and Class Members.

49.     Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, damages and/or personal injuries to Plaintiffs and Class Members.

50.     As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages and/or personal injuries as described herein.

**COUNT II**
**NEGLIGENCE PER SE**
**(Against All Defendants)**

51.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

52.     Defendants owed statutory duties to Plaintiffs and Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, j) selling, and/or k) installing this drywall.

53.     Defendants breached their statutory duties to the Plaintiffs and Class Members by failing to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, j) selling, and/or k) installing this drywall.

54.     Defendants likewise breached their statutory duties to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall.  Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the homes and bodies of Plaintiffs and Class Members.

55.     Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, damages and/or personal injuries to Plaintiffs and Class Members.

56.     As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages and/or personal injuries as described herein.

**COUNT III**
**BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES**
**(All Defendants)**

57.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

58.     Defendants and/or their agents were in privity with Plaintiffs and Class Members and/or Plaintiffs and Class Members were foreseeable third party beneficiaries of any warranty.

59.     At the times Defendants installed, utilized, supplied, inspected, sold, and/or installed this drywall for use in the Plaintiffs' and Class Members' homes, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in the Plaintiffs' and Class Members' homes for use as a building material, and expressly or impliedly warranted the product to be fit for that use.

60.     Defendants placed their drywall products into the stream of commerce in a defective condition and these products were expected to, and did, reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

61.     The drywall was defective because it was not fit for the uses intended or reasonably foreseeable by Defendants; to wit, the installation of the drywall in Plaintiffs' and Class Members' homes for use as a building material, because it contained defects as set forth herein.

62.     The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in Plaintiffs and Class Members' homes as a building material) due to the defects set forth herein.

63.     Defendants had reasonable and adequate notice of the Plaintiffs' and the Class Members' claims for breach of warranty and failed to cure.

64.     As a direct and proximate cause of Defendants' breach of warranties, Plaintiffs and Class Members have incurred harm and damages and/or personal injuries as described herein.

## COUNT IV
## BREACH OF CONTRACT
### (Against Defendant Harbor Walk Only)

65.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

66.     As part of the agreement to purchase the home built by Harbor Walk, for which Plaintiffs and Subclass Members paid valuable consideration, Harbor Walk promised Plaintiffs and Subclass Members that their homes would be free of defects.

67.     Harbor Walk materially breached its contracts by providing Plaintiffs and Subclass Members homes that were not free of defects; to wit, the homes contained drywall that is inherently defective because it emits various sulfide and other noxious gases through "off-gassing" that causes harm and damage as described herein.

68.     As a direct and proximate cause of Defendant's breach of contract, Plaintiffs and Class Members have incurred harm and damages as described herein.

## COUNT V
## PRIVATE NUISANCE
### (Against All Defendants)

69.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

13

70.     The Defendants' tortious or wrongful acts or omissions have caused sulfide gas and/or other chemical leaching into Plaintiffs' and Class Members' homes which has unreasonably interfered, and continues to interfere, with the Plaintiffs' and Class Members' use and enjoyment of their properties and caused them harm and damage as discussed herein.

71.     Defendants' interference has impaired the rights of Plaintiffs' and Class Members' health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

72.     Defendants' invasions were intentional and unreasonable, and/or unintentional but otherwise negligent or reckless.

73.     The interference with Plaintiffs' and Class Members' use of their property caused by Defendants is substantial and is ongoing.

74.     Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiffs and Plaintiffs Class Members' damages, injuries, harm, loss, and increased risk of harm, which they suffered and will continue to suffer.

75.     As a direct and proximate cause of Defendants' creation of a private nuisance, Plaintiffs and Class Members have incurred harm and damages and/or personal injuries as described herein.

### COUNT VI
### UNJUST ENRICHMENT
### (All Defendants)

76.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

77.     Defendants received money as a result of Plaintiffs' and Class Members' purchases of Defendants' defective drywall, or purchases of homes containing this drywall,

14

either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members.

      78.     Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Plaintiffs and the Class.

      79.     Defendants, by the deliberate and tortious conduct complained of herein, have been unjustly enriched in a manner which warrants restitution.

## COUNT VII
## VIOLATION OF CONSUMER PROTECTION ACTS
### (All Defendants)

      80.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

      81.     This is an action for relief under the various Consumer Protection Acts of the jurisdictions in which affected properties are present, including but not limited to, Louisiana, Alabama, North Carolina, Florida, Virginia, Texas, and Mississippi. *See* L.SA-R.S. 51:1401, *et seq.* (Louisiana Unfair Trade Practices and Consumer Protection Law); Ala. Code 1975 § 8-19-1, *et seq.*, (Alabama Deceptive Trade Practices Act); G.S. § 75-1.1, *et seq* (North Carolina Consumer Protection Act); F.S. § 501.201, *et seq.* (Florida Deceptive and Unfair Trade Practices Act); Va. Code. Ann. § 59.1-196, *et seq.* (Virginia Consumer Protection Act); Tex. Bus. Com. Code Ann. § 17.41, *et seq* (Texas Deceptive Trade Practices-Consumer Protection Act); Miss. Code Ann. §75-24-1, *et seq.* (Mississippi Consumer Protection Act).

      82.     The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this Complaint, including, but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients,

standards and quality of the defective drywall constitute violation of the aforementioned provisions of the Consumer Protection Acts of the relevant states.

83.     Plaintiffs and Class Members have suffered actual damage as a result of the Defendants' violations of the Consumer Protection Acts and are entitled to relief.

84.     As a direct and proximate cause of Defendant's violations of the Consumer Protection Acts of the relevant states, Plaintiffs and Class Members have incurred harm and damages as described herein.

**COUNT VIII**
**EQUITABLE AND INJUNCTIVE RELIEF AND MEDICAL MONITORING**
**(All Defendants)**

85.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

86.     Plaintiffs and the Class are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

87.     Plaintiffs and the Class will suffer irreparable harm if the Court does not render the injunctive relief and medical monitoring relief set forth herein, and if defendants are not ordered to recall, buy back, rescind, and/or repair the Plaintiffs and members of the class' homes.

88.     Plaintiffs, on behalf of themselves and all others similarly situated, demand injunctive and equitable relief and further, that defendants be ordered to: (1) to buy back or rescind the contracts for Plaintiffs' and Class Members' homes, or in the alternative, remedy, repair and/or replace the drywall in the homes upon proof by the defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting to the Class and the general public that there is no defect in, or danger associated with, the drywall; (3) institute, at their own cost, a public awareness campaign to alert the Class and general public of the defect and dangers

16

associated with the drywall; and (4) create, fund, and support a medical monitoring program consistent with the requirements of Virginia law.

89.     Until Defendants' defective drywall has been removed, Defendants should provide continued environmental and air monitoring in Plaintiffs and Class Members' homes.

90.      Plaintiffs and Class Members have been exposed to greater than normal background levels of sulfides and other hazardous chemicals as a result of exposures to Defendants' defective and unfit drywall and have suffered personal injuries as a result.

91.     The sulfides and other noxious gases which have been released from Defendants drywall and to which Plaintiffs and Class Members have been exposed are proven hazardous, dangerous, or toxic substances.

92.     Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct.

93.     Plaintiffs' and Class Members' exposure may lead to serious health problems, diseases, and medical conditions that may be prevented by timely medical diagnosis and treatment.

94.     The method and means for diagnosing the Plaintiffs' and Class Members' potential medical problems are well accepted in the medical and scientific community and will be of great benefit to the Plaintiffs and Class Members by preventing or minimizing health problems that they may encounter as a result of the defective and unfit drywall.

95.     As a proximate result of their exposure to sulfide and other noxious gases from Defendants' defective and unfit drywall, Plaintiffs and Class Members have developed a significantly increased risk of contracting a serious latent disease.

96. Monitoring procedures exist that make the early detection of any latent disease possible that are different from those normally recommended in the absence of the exposure.

97. The prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

## DEMAND FOR JURY TRIAL

Plaintiffs individually and on behalf of the Class Members, hereby demand a trial by jury as to all issues so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situated demand:

    a. an order certifying the case as a class action;

    b. an order appointing Plaintiffs as the Class Representatives of the Class;

    c. an order appointing undersigned counsel and their firms as counsel for the Class;

    d. compensatory, statutory and/or punitive damages;

    e. pre and post-judgment interest as allowed by law;

    f. injunctive relief;

    g. an award of attorneys' fees as allowed by law;

    h. an award of taxable costs; and

    i. any and all such further relief as this Court deems just and proper.

Respectfully submitted,

_s/s Fred S. Longer_____
Arnold Levin, Esquire
Fred S. Longer, Esquire
Daniel Levin, Esquire
Matthew C. Gaughan, Esquire
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
*Counsel for Plaintiffs*

Michael D. Hausfeld
Richard S. Lewis
James J. Pizzirusso
Faris Ghareeb
HAUSFELD LLP
1700 K Street, N.W.
Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
*Counsel for Plaintiffs*

Richard Serpe
Law Offices of Richard J. Serpe
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
*Counsel for Plaintiffs*

Robert Gary
Gary, Naegele & Theado, LLC
446 Broadway
Lorain, OH 44052
Phone: (440) 244-4809
Fax: (440) 244-3462
*Counsel for Plaintiffs*

Richard W. Stimson
Attorney at Law
920 Waters Reach Court
Alpharetta, Georgia 30022
Phone: 214-914-6128
*Counsel for Plaintiffs*

19