**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Taishan Gypsum Co. Ltd.
c/o Richard C. Stanley, Esq.
Thomas P. Owen, Jr., Esq.
Stanley, Reuter, Ross, Thornton & Alford, LLC
909 Poydras Street
Suite 2500
New Orleans, Louisiana 70112

2. Article Number
(Transfer from service label) 7013 1090 0000 2369 9574

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

B. Received by (Printed Name) C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☒ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

PS Form 3811, February 2004 Domestic Return Receipt 102595-02-M-1540

EXHIBIT A

# USPS Tracking™

Customer Service ›
Have questions? We're here to help.

Get Easy Tracking Updates ›
Sign up for My USPS.com.

**Tracking Number: 70131090000023699574**

## Product & Tracking Information

**Postal Product:**

**Features:**
Certified Mail™

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **September 24, 2014 , 12:31 pm** | **Delivered** | **NEW ORLEANS, LA 70112** |
| Your item was delivered at 12:31 pm on September 24, 2014 in NEW ORLEANS, LA 70112. | | |
| September 24, 2014 , 6:07 am | Departed USPS Facility | NEW ORLEANS, LA 70113 |
| September 23, 2014 , 4:36 pm | Arrived at USPS Facility | NEW ORLEANS, LA 70113 |
| September 23, 2014 , 2:07 am | Departed USPS Facility | MOBILE, AL 36619 |
| September 22, 2014 , 9:24 pm | Arrived at USPS Facility | MOBILE, AL 36619 |

## Available Actions

**Return Receipt After Mailing**

USPS Return Receipt After Mailing Online service provides an email-transmitted PDF of the signature record on file at USPS to customers with eligible tracking numbers.

This package is eligible for an electronic Return Receipt After Mailing request.

Return Receipt After Mailing request will cost:

$5.25

To begin, please sign in to your USPS.com® account.

Sign In

Don't have a USPS.com account? Register now.

## Track Another Package

**Tracking (or receipt) number**

Track It

## Manage Incoming Packages

Track all your packages from a dashboard.
No tracking numbers necessary.

Sign up for My USPS.com ›

**HELPFUL LINKS**
Contact Us
Site Index
FAQs

**ON ABOUT.USPS.COM**
About USPS Home
Newsroom
USPS Service Updates
Forms & Publications
Government Services
Careers

**OTHER USPS SITES**
Business Customer Gateway
Postal Inspectors
Inspector General
Postal Explorer
National Postal Museum
Resources for Developers

**LEGAL INFORMATION**
Privacy Policy
Terms of Use
FOIA
No FEAR Act EEO Data

Copyright © 2015 USPS. All Rights Reserved.

Search or Enter a Tracking Number

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Devon International Industries, Inc.
1100 First Avenue
Suite 100
King of Prussia, PA 19406

***COMPLETE THIS SECTION ON DELIVERY***

A. Signature
X [signature] ☐ Agent ☐ Addressee

B. Received by (*Printed Name*) [handwritten]

C. Date of Delivery 9-25-14

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☒ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*) ☐ Yes

2. Article Number (*Transfer from service label*) 7013 1090 0000 2369 9550

PS Form 3811, February 2004 Domestic Return Receipt 102595-02-M-1540

EXHIBIT B

**Charles A. McCauley III**
*General Counsel*

phone: 484-688-8215
fax: 610-768-0244
e-mail: cmccauley@devonintlgroup.com

DEVON INTERNATIONAL GROUP

September 29, 2014

Danny J. Collier, Jr., Esquire
Luther, Collier, Hodges & Cash LLP
P. O. Box 1002
Mobile, AL 36633

**Re: Collins, et al. v. Ace Home Center, et al.**
**Herrington, et al. v. Ace Home Center, et al.**

Dear Mr. Collier:

We are in receipt of the Summons and Third Party Complaints with regard to the above-captioned actions.

Please be advised that Devon International Industries, Inc. filed for bankruptcy on April 23, 2013 in the United States Bankruptcy Court for the Eastern District of Pennsylvania (Case No. 13-13552 (SR)). These actions violate the automatic stay imposed by 11 U.S.C. §363. Please be guided accordingly.

Very truly yours,

Charles A. McCauley III

CAM/pld

p| 800•431•2273

a| 1100 first avenue
suite 100
king of prussia, pa
19406

RECEIVED OCT - 3 2014

w| devonintlgroup.com

EXHIBIT C

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 7** |
| | ) | |
| **Devon International Industries, Inc.** | ) | **Case No. 13 - 13552 (SR)** |

**ORDER**

AND NOW, this day of , 201_, upon consideration of the Motion for Relief From the Automatic Stay Pursuant to §362 of the Bankruptcy Code to Liquidate a Personal Injury Matter of ACE Home Center, Inc. and any response thereto, it is hereby ORDERED and DECREED that ACE Home Center, Inc. may join Devon International Industries, Inc. as a third party defendant in two matters: (1) In Re: Chinese-Manufactured Drywall Products Liability Litigation, MDL No. 2047 in the United States District Court for the Eastern District of Louisiana (specifically with respect to the consolidated cases of: Braxton and Kerrie Collins v. Bass Homes, Inc., et al. and Jason and Cassie Herrington v. Bass Homes, Inc., et al., S.D. Mississippi, C.A. No. 1:13-00297) and (2) Greg and Sherry Wiggins v. ACE Home Center, Inc., Case No.: 30-CV-2013-900145, Circuit Court of Escambia County, Alabama. Moreover, once joined in these two matters, all appropriate parties may pursue claims against Devon International Industries, Inc. and obtain judgments against it, but only up to the amount of all applicable insurance coverage available to Devon International Industries, Inc.

BY THE COURT:

__________________________ J.

EXHIBIT D

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 7** |
| | ) | |
| **Devon International Industries, Inc.** | ) | **Case No. 13 - 13552 (SR)** |

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO §362 OF THE BANKRUPTCY CODE TO LIQUIDATE A PERSONAL INJURY MATTER OF ACE HOME CENTER, INC.**

COMES NOW Claimant, ACE Home Center, Inc. (the "Claimant"), by and through its undersigned counsel, to respectfully request the Court enter the attached Order lifting the automatic stay imposed by 11 U.S.C. § 362 for the purpose of permitting Claimant to join Devon International Industries, Inc. as a third party defendant and to pursue claims against it up to the amount of all applicable insurance coverage available to Devon International Industries, Inc. in two matters: (1) In Re: Chinese-Manufactured Drywall Products Liability Litigation, MDL No. 2047 in the United States District Court for the Eastern District of Louisiana, specifically with respect to the consolidated cases of Braxton and Kerrie Collins v. Bass Homes, Inc., et al. and Jason and Cassie Herrington v. Bass Homes, Inc., et al., S.D. Mississippi, C.A. No. 1:13-00297 and (2) Greg and Sherry Wiggins v. ACE Home Center, Inc., Case No.: 30-CV-2013-900145, Circuit Court of Escambia County, Alabama. These matters which are pending in federal and state court seek to, among other things, liquidate damages for personal injuries alleged by Mr. and Mrs. Collins, Mr. and Mrs. Herrington and Mr. and Mrs. Wiggins. In support thereof, Claimant respectfully states as follows:

**BACKGROUND**

1. On April 23, 2013 ("Petition Date"), Devon International Industries Inc. ("Devon") filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy

Code.

2. Devon is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania. Upon information and belief, prior to the petition date, Devon specified, ordered, shipped, imported, controlled, took possession of and/or title to, offloaded, stored, delivered, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed, and/or supplied the Chinese drywall at issue in the Collins, Herrington and Wiggins suits.

3. Attached as Exhibits "A," "B" and "C" are the complaints filed by Mr. and Mrs. Collins, Mr. and Mrs. Herrington and Mr. and Mrs. Wiggins against Claimant describing, among other things, the personal injuries they sustained as a result of the Chinese drywall with which Devon was involved.[1]

4. Attached as Exhibits "D," "E" and "F" are the joinder complaints that Claimant filed as to Devon in the Collins, Herrington and Wiggins suits.

5. Attached as Exhibits "G" and "H" are letters sent to Claimant by Devon's general counsel citing the bankruptcy stay as to Devon.

6. Upon information and belief, Devon has insurance coverage under which the provider of such coverage ("Insurer") is obligated to defend and indemnify Devon in the Collins, Herrington and Wiggins matters in which Claimant wishes to join Devon.

**RELIEF REQUESTED**

7. Claimant respectfully requests relief from the automatic stay imposed by 11 U.S.C. § 362 to pursue its third party claims against Devon in the Collins, Herrington and Wiggins matters.

[1]See for example paragraphs 40, 75, 81, 87, 91 and 126 of Exhibit "A"; paragraphs 40, 75, 81, 87, 91 and 127 of Exhibit "B" and paragraphs 40, 72, 78, 84 and 88 of Exhibit "C."

**ARGUMENT**

8. Section 362(d)(1) provides that:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d)(1). "Cause" is not defined by the Bankruptcy Code. Consequently, a Bankruptcy Court must decide what constitutes "cause" to lift the automatic stay on a case by case basis. In re Rexene Products Company, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citing In re Fernstrom Storage and Van Co., 938 F.2d 731, 735 (7th Cir. 1991)). The legislative history of Section 362 states that cause may be established by a single factor such as "a desire to permit an action to proceed . . . in another tribunal," or "lack of any connection with or interference with the pending bankruptcy case." Rexene, 141 B.R. at 576 (citations omitted).

9. Allowing Claimant to join Devon in the Collins, Herrington and Wiggins cases will not impinge on Devon's bankruptcy proceedings since Devon's Insurer will have to defend the Collins, Herrington and Wiggins suits and pay any resulting verdict for personal injuries up to the amount of all applicable insurance coverage available to Devon International Industries, Inc. Devon's Insurer has the obligation to defend the suits to the best of its ability, and therefore, will adequately represent and protect Devon's interests. Thus, there is little connection or interference with the pending bankruptcy case.

10. In Rexene, the Court stated that relief from the automatic stay should be granted when the party seeking such relief can show that:

> a. the debtor or the debtor's estate will not be greatly prejudiced by continuing the civil suit;

    b. the hardship to the movant by maintenance of the automatic stay considerably outweighs the hardship to the debtor; and

c. the movant has a reasonable chance of prevailing on the merits.

Rexene, 141 B.R. at 576; *accord* In re Continental Airlines, 152 B.R. 420, 424 (D. Del. 1993); *see also* Fernstrom, 938 F.2d at 735.

11. All three factors weigh heavily in favor of lifting the automatic stay to permit the Claimant to join Devon and pursue claims against it in the Collins, Herrington and Wiggins suits. With respect to the first factor, the federal and state court actions will be defended by Insurer, and will not require substantial efforts from Devon's estate or its counsel.

12. In addition to the foregoing, all parties to the federal and state court actions will benefit if the matters are moved forward to resolution before witnesses and evidence grow stale. Insurer will likely retain defense counsel in Louisiana and Alabama, so the procession of the federal and state court actions will not require the attention of Devon's bankruptcy counsel. *See* Rexene, 141 B.R. at 577 (that the debtor was represented by separate, local counsel weighed in favor of lifting the automatic stay). Moreover, as Mr. and Mrs. Collins, Mr. and Mrs. Herrington and Mr. and Mrs. Wiggins' claims will be paid from insurance proceeds up to the amount of all applicable insurance coverage available to Devon International Industries, Inc, Devon's estate has no interest in the funds which the plaintiffs might ultimately recover. *See* In re Louisiana World Exposition, Inc., 832 B.R. 1391 (5th Cir. 1987); Matter of Edgeworth, 993 F.2d 51 (5th Cir. 1993). Because the insurance proceeds are not property of Devon's estate, they are not part of Devon's bankruptcy proceedings.

13. Finally, there is some likelihood that ACE Home Center, Inc. is entitled to relief on its third party claims against Devon in the Collins, Herrington and Wiggins suit as Devon specified, ordered, shipped, imported, controlled, took possession of and/or title to, offloaded, stored,

delivered, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed, and/or supplied the Chinese drywall that Mr. and Mrs. Collins, Mr. and Mrs. Herrington and Mr. and Mrs. Wiggins contend caused their injuries. The Rexene Court held that the required showing of probability of success on the merits is "very slight." Id. at 578. Thus, Claimant satisfies this "very slight" threshold of establishing a probability of success on the merits of its claims as against Devon.

14. Given the foregoing, Claimant has established that relief from the automatic stay should be granted so as to allow Claimant to join and pursue claims against Devon International Industries, Inc. up to the amount of all applicable insurance coverage available to Devon International Industries, Inc as a third party defendant in the Collins, Herrington and Wiggins suits.

**CONCLUSION**

WHEREFORE, Claimant respectfully requests the Court enter the attached Order.

Dated: November 20, 2014

Respectfully submitted:

BENNETT, BRICKLIN & SALTZBURG, LLC

/s/ John F. Barrett
JOHN F. BARRETT
PA Attorney ID No. 67368
1601 Market Street
Suite 1600
Philadelphia, PA 19103
(215) 561-4300
barrett@bbs-law.com
Counsel for ACE Home Center, Inc.

# EXHIBIT “A”

# EXHIBIT "B"

# EXHIBIT "C"

# EXHIBIT "D"

# EXHIBIT "E"

# EXHIBIT "F"

# EXHIBIT "G"

# EXHIBIT "H"

# EXHIBIT "A"

**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF MISSISSIPPI SOUTHERN DIVISION**

BRAXTON H. COLLINS and
KERRIE F. COLLINS — PLAINTIFFS

VERSUS — CIVIL ACTION NO. 1:13-cv-297-LG-JMR

BASS HOMES, INC.;
ACE HARDWARE CORPORATION;
ACE HOME CENTER, INC.;
And All Unknown Fictitious Producer Defendants, Distributor Defendants, Alter Ego Defendants and Fictitious Defendants 2-150 to be identified through discovery and Named by amendment or by substitution of party — DEFENDANTS

---

**AMENDED COMPLAINT**
**(JURY TRIAL REQUESTED)**

---

COME NOW the Plaintiffs, Braxton H. Collins and Kerrie F. Collins, (hereinafter "Plaintiffs") by and through undersigned counsel, and file this, their Amended Complaint against the Defendants, Bass Homes, Inc. (hereinafter "Bass Homes"), Ace Hardware Corporation (hereinafter "Ace Hardware"), Ace Home Center, Inc. and Fictitious Defendants 2 through 150 are those Producer Defendants, Distributor Defendants, Builder Defendants and Alter Ego Defendants whose identities and true names are currently unknown to the Plaintiffs (hereinafter "Fictitious Defendants"), and in support thereof would show unto this Honorable Court as follows, to-wit:

Exhibit A

## PARTIES

1. Plaintiffs, Braxton H. Collins and Kerrie F. Collins, are the owners of a residence located in Moss Point, Mississippi (the "Collins Residence"). The address of the Collins Residence is 10720 Hwy 614, Moss Point, MS 39562. This is also the Collins' primary residence. An inspection has revealed the presence of Defective Chinese drywall in this Residence.

2. Defendant Bass Homes, Inc., ("Bass") is an Alabama corporation authorized to conduct business in the State of Mississippi, with its principal place of business located at 34661 State Hwy 59, Stapleton, AL 36578. Bass Homes, Inc. is a residential construction company and is operating, conducting, engaging in, and carrying on a business or venture in this state and has an office or agency in this state.

3. Defendant Ace Hardware Corporation. ("Ace") is a Delaware corporation authorized to conduct business in the State of Mississippi, with its principal place of business located at 2200 Kensington Court, Oak Brook, IL 60523-2100. At all material times, Ace was in the business of distributing, supplying and/or selling residential drywall in Mississippi, and maintained multiple retail, office and/or warehouse locations in the State of Mississippi.

4. Defendant Ace Home Center, Inc. is an Alabama Corporation authorized to conduct business in the State of Mississippi, with its principal place of business located at 21090 Alabama 59 South, Robertsdale, Alabama 36567. At all material times, Ace was in the business of distributing, supplying and/or selling residential drywall in Alabama as a retail outlet.

5. Fictitious Defendants 2 through 150 are those Producer Defendants, Distributor Defendants, Builder Defendants and Alter Ego Defendants who identities and true names are currently unknown to the Plaintiffs, who therefore sues Fictitious Defendants 2 through 150 by such fictitious names.

## JURISDICTION and VENUE

6. The litigation of this controversy should proceed in this forum because the properties at issue are located in this County, the Plaintiffs reside in this County and the wrongful conduct is concentrated in this County.

7. Defendants are foreign corporations that either are registered to conduct business in the State of Mississippi or that actually transacted business in Mississippi.

## FACTS

8. On or about August 22, 2008, Braxton H. Collins and Kerrie F. Collins entered into a Building Agreement with Bass Homes, Inc. for the construction of a residence on real property located at 10720 Hwy 614 Moss Point, MS 39562. See Building Agreement, Attached hereto as **Exhibit "A"**.

9. In about September, 2008, Bass Homes, Inc. applied for a building permit for the Collins Residence.

10. Thereafter, Defendant Bass Homes was the general contractor and built the Collins Residence located at 10720 Hwy 614 Moss Point, MS 39562. Plaintiffs are informed and believe Ace Hardware supplied the drywall installed in the Collins Residence.

11. A certificate of occupancy for the Collins Residence located at 10720 Hwy 614 Moss Point, MS 39562 was issued on or about February 5, 2009. Thereafter, the Collins family occupied the residence.

12. On information and belief, Ace Hardware, by and through Ace Home Center, Inc., sold the drywall that Bass Homes, or the subcontractor hired by Bass Homes, installed in the Collins Residence.

13. In or about November 2009, Plaintiffs determined that their Residence was built with drywall manufactured in China ("Defective Chinese Drywall").

14. The material composition and offensive smell of the Defective Chinese Drywall in the Residences renders it inferior to American-made drywall and unfit for ordinary use in residential construction and emits a corrosive sulfur fume that places the home at great risk for fire and damages all electrical and, therefore, structural components.

15. Defendants knew, or should have known, that the Defective Chinese Drywall that Bass Homes purchased from Ace Hardware, by and through Ace Home Center, Inc., and that Bass Homes installed, was going to be used in the construction of the Residence. Ace Hardware and Ace Home Center, Inc. also knew, or should have known, that residential homeowners, such as Plaintiffs, were foreseeable users of the Defective Chinese Drywall and that residential homeowners, such as Plaintiffs, required and expected the drywall to be fit for the ordinary purpose for which it was intended.

16. Unlike American-made drywall, the Defective Chinese Drywall in the Residences emits several sulfur compounds, including, but not limited to, carbon disulfide, carbonyl sulfur, and hydrogen sulfide. The Defective Chinese Drywall in the Residence is also suspected to contain several other impurities which render it unfit for usage in residential construction. The sulfur based compounds emitted have created a sulfur odor which renders the drywall unfit for the ordinary purpose for which it was intended.

17. The Defective Chinese Drywall emits these sulfur based compounds because it suffers from either a defective manufacturing and/or mining process.

18. The corroded items described above are also unfit for the ordinary purpose for which they were intended. Plaintiffs are uncertain as to the cause of the corrosion and have not engaged in any act or activity which has led to or caused the corrosion in any way.

19. The Defective Chinese Drywall in the Residence has and will continue to cause damage to the Residences and Plaintiffs' personal property, including structural damage.

20. As a result of the foregoing, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to: economic damage, and other economic damages; damage to real and personal property; attorneys' fees and expenses; and court and/or administrative costs.

21. As a result of Defendants' wrongful conduct, Plaintiffs' Residence must be repaired and have declined and will continue to decline in value by at least the cost of repair.

**COUNT I**
**BREACH OF CONTRACT**

22. Plaintiffs incorporate by reference paragraphs 1 through 21 previously alleged as though fully set forth herein.

23. Defendant Bass Homes sold the Residence to the Plaintiffs built with Defective Chinese Drywall.

24. Defendant Bass Homes built the Residence with Defective Chinese Drywall.

25. Defendant Ace Hardware, by and through Ace Home Center, Inc., sold the Defective Chinese Drywall which was used to build the Residence.

26. Upon information and belief, Bass Homes purchased the Defective Chinese Drywall that it installed in the Residence from Ace Hardware, by and through Ace Home Center, Inc..

27. The Defective Chinese Drywall was expected to and did reach the Plaintiffs' Residence without any substantial change in the condition to which it was sold.

28. The Defective Chinese Drywall is defective and unreasonable dangerous and has caused damage because of the offensive odor and off gassing of sulfur compounds.

29. The Plaintiffs, acting as reasonably prudent persons, could not have discovered that Defective Chinese Drywall was defective as herein mentioned or perceived its danger because the defects in the drywall were latent.

30. Bass Homes breached the contract of warranty with Plaintiffs and the contract for sale, entitling Plaintiffs to an award of damages and performance of the contract.

31. By and through Ace Hardware's and Ace Home Center, Inc.'s acts, they have breached the implied covenant of good faith and fair dealing relative to contracts of insurance and warranty and sale, causing Plaintiffs' damages

32. In the alternative, the acts of the Defendants were grossly negligent, amounting to an independent tort, entitling Plaintiffs to an award of extra contractual damages.

33. Defendants Bass Homes, Ace Hardware and Ace Home Center, Inc. are therefore strictly liable for the damages, punitive and actual, sustained by Plaintiffs.

34. As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Defendants Bass Homes, Ace Hardware and Ace Home Center, Inc., awarding damages, interest, costs, and attorneys' fees and such other relief as this Court may deem just and proper.

**COUNT II**
**NEGLIGENCE AND GROSS NEGLIGENCE**

35. Plaintiffs incorporate by reference paragraphs 1 through 34 previously alleged as though fully set forth herein.

36. Defendants owed a duty to Plaintiffs to exercise reasonable care in exporting, importing, distributing, delivering, supplying, selling, inspecting and installing the Defective Chinese Drywall, and in constructing the Residence, to insure that the Residence were constructed with materials that would not harm the inhabitants or the other property within the Residence. Defendants also had a duty to adequately warn Plaintiffs about any unsafe materials used in the construction of the Residence known by Defendants.

37. Defendants breached their duty to exercise reasonable care in exporting, importing, distributing, delivering, supplying, selling, inspecting and installing the Defective Chinese Drywall, and constructing the Residence by:

(a) causing and/or allowing Defective Chinese Drywall to be installed within the Residence;

(b) failing to investigate whether the Defective Chinese Drywall would harm inhabitants of the Residence or damage other property or work within the Residence;

(c) failing to warn Plaintiffs that the Residence contained Defective Chinese Drywall that could damage their property;

(d) failing to take reasonable measures that Defendants knew, or reasonably should have known, were necessary to protect the Plaintiffs from hazards associated with the Defective Chinese Drywall;

(e) failing to exercise reasonable care in their quality control practices;

(f) failing to comply with all applicable building codes;

(g) failing to take such other precautions as may be revealed through discovery.

38. If Defendants had exercised reasonable care, they would have investigated the Defective Chinese Drywall and its adverse effects prior to selling or installing the Defective Chinese Drywall used in the Residences. Further, Defendants could have warned Plaintiffs that the Defective Chinese Drywall may cause the problems described herein.

39. Defendants' failure to exercise reasonable care constitutes a breach of duty. The defects in the drywall were latent and could not have been reasonably discovered by Plaintiffs.

40. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs were harmed and have incurred damages, as described herein, including personal injuries and damage to other property in the Residence.

41. Due to Defendants' negligence, Plaintiffs have sustained damages, including, but not limited to the diminution in property value, all costs associated with the removal and replacement of the Defective Chinese Drywall, all costs necessary to reconstruct Plaintiffs' Residence, and all costs associated with the repair or replacement cost of damaged property in the residence.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Defendants, awarding damages, interest, costs, and attorneys' fees and such other relief as this Court may deem just and proper.

## COUNT III
## BREACH OF IMPLIED WARRANTIES AND OTHER WARRANTIES

42. Plaintiffs incorporate by reference paragraphs 1 through 41 previously alleged as though fully set forth herein.

43. Notwithstanding the breach of the express warranty at issue herein, Bass Homes, through the sale of the subject residence, and the failure to remedy such defects, have breached implied warranties of fitness for a particular purpose and merchantability with respect to the sale of the defective residence.

44. Notwithstanding the breach of the express warranty at issue herein, Ace Hardware, by and through Ace Home Center, Inc., through the sale of the drywall installed in the

Residence, and the failure to remedy such defects, have breached implied warranties of fitness for a particular purpose and merchantability.

45. Such warranties include, but are not limited to, the warranties set forth in § 83-58-5, et seq., Mississippi Code of 1972, Annotated. All such conditions precedent to enforcement of such warranties have been fulfilled.

46. The material composition of the Defective Chinese Drywall in the Residence renders it inferior to American-made drywall and unfit for ordinary use in residential construction.

47. Defendants knew, or should have known, that the Defective Chinese Drywall that Bass Homes purchased from Ace Hardware, by and through Ace Home Center, Inc., and that Bass Homes installed, was going to be used in the construction of the Residence. Ace Hardware and Ace Home Center, Inc. also knew, or should have known, that residential homeowners, such as Plaintiffs, were foreseeable users of the Defective Chinese Drywall and that residential homeowners, such as Plaintiffs, required and expected the drywall to be fit for the ordinary purpose for which it was intended.

48. Unlike American-made drywall, the Defective Chinese Drywall in the Residence emits several sulfur compounds, including, but not limited to, carbon disulfide, carbonyl sulfur, and hydrogen sulfide. The Defective Chinese Drywall in the Residence is also suspected to contain several other impurities. The sulfur based compounds emitted have created a sulfur odor which renders the drywall unfit for the ordinary purpose for which it was intended.

49. The Defective Chinese Drywall emits these sulfur based compounds because it suffers from either a defective manufacturing and/or mining process.

50. The corroded items described above are also unfit for the ordinary purpose for which they were intended. Plaintiffs are uncertain as to the cause of the corrosion and have not engaged in any act or activity which has led to or caused the corrosion in any way.

51. The odor caused by the use of Defective Chinese Drywall in the Residences renders the Residences unfit for the ordinary and general purpose of residential living.

52. In addition, the accompanying corrosion of pipes, wiring, metal finishes and fixtures, including their HVAC system, and experienced failures of electronic products, including televisions and computers in the home also renders the Residence is unfit for the ordinary and general purpose of residential living.

53. As a result of the use of Defective Chinese Drywall, the Residence does not meet the ordinary, normal standards reasonably to be expected of living quarters of comparable kind and quality.

54. Despite having knowledge as to the use of inferior drywall in the home, Defendant Bass Homes sold the Residence to the Plaintiffs and built the Residence with Defective Chinese Drywall.

55. As a result of Bass Homes' actions, Plaintiffs have suffered and will continue to suffer damage, including but not limited to: economic damages, including and other economic damages; damage to real and personal property; attorneys' fees and expenses; and court and/or administrative costs.

56. As a result of Bass Homes' breach of the implied warranty of habitability and fitness, Plaintiffs are entitled to have the purchase price of the Residence restored to them by Bass Homes, together with any expenses there from, and for those damages and losses set forth above.

57. As a result of Ace Hardware and Ace Home Center, Inc.'s actions, Plaintiffs have suffered and will continue to suffer damage, including but not limited to: economic damages, including and other economic damages; damage to real and personal property; attorneys' fees and expenses; and court and/or administrative costs.

58. As a result of Ace Hardware and Ace Home Center, Inc.'s breach of the implied warranty of habitability and fitness, Plaintiffs are entitled to have the purchase price of the Residence restored to them by Bass Homes, together with any expenses there from, and for those damages and losses set forth above.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Bass Homes, Ace Hardware and Ace Home Center, Inc. awarding damages, interest, costs, and attorneys' fees and such other relief as this Court may deem just and proper.

**COUNT IV**
**NEW HOME WARRANTY ACT**

59. The allegations of paragraphs 1 through 58 above are incorporated herein as if reproduced in full.

60. Defendants failed to comply with Mississippi Code (Annotated) of 1972 §§ 83-53-1 through 83-53-17 by failing to construct the House to the standards contained in the building, mechanical-plumbing and electrical codes in effect in the county, state and federal Standard Building Codes, placing the House at risk for electrical fire and damaging the walls and other structural elements.

61. The damages to Plaintiffs, including, but not limited to, those described herein were caused by Defendants' defiance of the New Home Warranty Act.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Bass Homes, Ace Hardware and Ace Home Center, Inc., awarding damages, interest, costs, and attorneys' fees and such other relief as this Court may deem just and proper.

## COUNT V
## FAILURE TO PROCURE A WARRANTY

62. The allegations of paragraphs 1 through 61 above are incorporated herein as if reproduced in full.

63. Alternatively, if such warranty as represented by Defendants was not procured, Defendants are liable to Plaintiffs as set forth herein. At material times, by reason of Defendants' actions, Defendant entered into a contractual agreement with Plaintiffs and was under a non-delegable duty to procure the warranty coverage sold to Plaintiffs, or, in the alternative, to procure for Plaintiffs like or similar warranty coverage. If such warranty coverage was not procured, Defendants breached such contractual agreements and duties to Plaintiffs, entitling Plaintiff to performance of the contract of warranty by Defendants, in addition to all such other damages as set forth herein.

## COUNT VI
## CLAIM FOR DECLARATORY RELIEF

64. The allegations of paragraphs 1 through 63 above are incorporated herein as if reproduced in full.

65. In addition to seeking damages from Defendants, Plaintiffs request that this Court declare the rights, status and legal relations of the parties under the contract of sale at issue, and the contract of warranty at issue, specifically the amount of benefits due and payable to Plaintiffs under the warranty at issue, pursuant to M.R.C.P. 57 (Declaratory Judgments). Further, and additionally or alternatively, Plaintiff would show that the language of the warranty at issue is

vague, ambiguous and capable of more than one meaning, and that such warranty should be construed against Defendants, and that as a result, this Court should find and declare coverage for the specific claims of Plaintiffs as set forth herein.

**COUNT VI**
**FAILURE TO WARN**

66. The allegations of paragraphs 1 through 65 above are incorporated herein as if reproduced in full.

67. Defendants, Bass Homes, Ace Hardware and Ace Home Center, Inc., as the builder and a distributor of materials for the building of residential homes, have a duty to disclose hidden hazards in the home, especially when such hazards effect the safety of the home's occupants, upon acquiring knowledge of that hazard.

68. Defendants knew that Defective Chinese Drywall was used in the construction of the home and had or should have had such knowledge immediately upon receiving the Defective Chinese Drywall at the job-site and installing it in the home.

69. Defendants knew or should have known that Defective Chinese Drywall was an inferior product, not fit for ordinary use, and knew or should have known this immediately upon receiving the Defective Chinese Drywall at the job-site and installing it in the home.

70. Defendants knew or should have known that Defective Chinese Drywall posed a serious health risk to residents of homes wherein Defective Chinese Drywall was used.

71. Despite knowledge of long standing quality concerns regarding the use and installation of Defective Chinese Drywall, Defendant caused Defective Chinese Drywall to be installed in the home.

72. Despite such knowledge, Defendants failed to warn the Plaintiffs of the use of Defective Chinese Drywall in the home or of the hazards associated with Defective Chinese Drywall used in the home.

73. Had Defendants informed Plaintiffs of the use of Defective Chinese Drywall in the home or of the hazards associated with Defective Chinese Drywall used in the home, Plaintiffs would not have purchased the home.

74. Had Defendants informed Plaintiffs of the use of Defective Chinese Drywall in the home or of the hazards associated with Defective Chinese Drywall used in the home, Plaintiffs would not have suffered the damages alleged herein, and/or could have taken steps necessary to protect themselves and their property against damage.

75. As a result of Defendant's actions, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to: economic damages; damage to real and personal property; past, present and future physical and mental pain and suffering; past, present and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and court and/or administrative costs.

76. Due to Defendant's failure to warn Plaintiffs as to the hidden hazards in the home, Defendant is liable to Plaintiff for those damages and losses set forth above.

**COUNT VII**
**FRAUD- BASS HOMES, INC.**

77. The allegations of paragraphs 1 through 76 above are incorporated herein as if reproduced in full.

78. Despite knowledge of the use of inferior drywall in the home, Bass Homes sold the home to the Plaintiffs.

79. As a result of Bass Homes' nondisclosure, silence, and misrepresentations, Defendants intentionally gained an unjust advantage over Plaintiffs.

80. Had Bass Homes' advised Plaintiffs of the use of inferior drywall in the home, Plaintiffs would not have purchased the home.

81. As a result of Bass Homes' actions, Plaintiffs have suffered and will continue to suffer damage and injury, including, but not limited to: economic damages; damage to real and personal properly; past, present and future physical, and mental pain and suffering; past, present and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and Court and/or administrative costs.

82. As a result of Bass Homes' fraud, Plaintiffs have the right to rescission of the original sale from Bass Homes to Plaintiffs, and for those damages and losses set forth above.

**COUNT IX**
**INTENTIONAL / NEGLIGENT MISREPRESENTATION**

83. The allegations of paragraphs 1 through 82 above are incorporated herein as if reproduced in full.

84. Despite knowledge of the use of the inferior drywall in the home, Defendants sold the home to Plaintiffs.

85. Plaintiffs justifiably relied on Defendants' intentional or negligent representation.

86. Had Defendants advised Plaintiffs of the use of inferior drywall in the home, Plaintiffs would not have purchased the home.

87. As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to economic damages; damage to real and

personal property; past, present and future physical and mental pain and suffering; past, present and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and court and/or administrative costs.

## COUNT X
## ALTERNATIVE PLEADING OF BREACH OF WARRANTY OF FITNESS

88. The allegations of paragraphs 1 through 87 above are incorporated herein as if reproduced in full.

89. The use of inferior drywall in the home renders the home unfit for the purpose of residential living.

90. Despite having knowledge as to the use of inferior drywall in the home, Defendants sold the home to Plaintiff.

91. As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to: economic damages; damage to real and personal property; past, present and future physical and mental pain and suffering; past, present and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and court and/or administrative costs.

92. As a result of Defendants' breach of the warranty of fitness, Plaintiffs are entitled to have the purchase price of the home restored to them by Defendants, together with any expenses there from, and for those damages and losses set forth above.

**COUNT XI**
**UNJUST ENRICHIMENT**

93. The allegations of paragraphs 1 through 92 above are incorporated herein as if reproduced in full.

94. As the builder of the home and supplier of drywall for the construction of Plaintiffs' house, Defendants knew that Defective Chinese Drywall was used in the construction of the home and had or should have had such knowledge immediately upon receiving the Defective Chinese Drywall at the job-site and installing it in the home. Defendants knew or should have known that Defective Chinese Drywall was all inferior product, not fit for ordinary use, and knew or should have known this immediately upon receiving the Defective Chinese Drywall at the job-site and installing it in the home.

95. Had Defendants disclosed to Plaintiffs the use of Defective Chinese Drywall in the construction of the home, Plaintiffs would not have purchased the home.

96. As a result of Defendants' acts and/or omissions in concealing the presence of Defective Chinese Drywall in Plaintiffs' home, Defendants unjustly enriched without justification or cause.

97. As a result of Defendants' acts and/or omissions in concealing the presence of Defective Chinese Drywall in Plaintiffs; home, Plaintiffs were unjustly impoverished without justification or cause.

98. As a result of the foregoing, Defendants are liable to Plaintiffs for the losses suffered by them.

**COUNT XII**
**THIRD PARTY BENEFICIARY**

99. The allegations of paragraphs 1 through 98 above are incorporated herein as if reproduced in full.

100. Bass Homes entered into express contracts whereby its subcontractors performed work on the Residence.

101. Plaintiffs were the intended beneficiary of the contracts between Bass Homes and its subcontractors.

102. Bass Homes knew that Plaintiff would benefit from their contracts and could and would be harmed by the breach of those contracts by Bass Homes, its subcontractors, Ace Hardware and Ace Home Center, Inc..

103. The subcontractors breached their contracts with Bass Homes by failing to carefully and properly complete the work on Plaintiffs' home in a good and workmanlike manner in compliance with applicable building codes and construction industry standards. Therefore, Plaintiffs are entitled to damages as the third party beneficiary to Bass Homes' contracts based on damages suffered by Plaintiffs as a result of the breaches of those contracts.

104. As a direct and proximate result of the actions of the Bass Homes, Ace Hardware, Ace Home Center, Inc., and Fictitious Defendants, which combined and concurred to form the basis of this suit, Plaintiffs have suffered damages as set forth in the above Statement of Facts.

**COUNT XIII**
**DECEPTIVE TRADE PRACTICES**

105. The allegations of paragraphs 1 through 104 above are incorporated herein as if reproduced in full.

106. Defendants' actions constitute violations of the Deceptive Trade Practices Act as defined in Title 75, Section 24 of the Mississippi Code (1972).

107. Plaintiffs demand judgment be entered against Defendants in an amount equal to the funds improperly received by Defendants as the result of its deceptive acts, plus equitable relief.

**COUNT XIV**
**RESPONDEAT SUPERIOR**

108. The allegations of paragraphs 1 through 107 above are incorporated herein as if reproduced in full.

109. At all relevant times, agents and/or employees of Defendants who were involved with the construction and/or repairs of the House were in the course and scope of the duties of their corporate and respective employments.

110. Defendants are vicariously liable for the acts and omissions of agents and/or employees who worked on the House. Defendants knew, or in the exercise of reasonable caution should have known, their respective and corporate duties to Plaintiffs were non-delegable.

111. With the filing of Answers and Defenses, Defendants are given the opportunity to address vicarious liability and provide a good faith basis for same under controlling Mississippi law and to provide any documents or contracts which support their position(s).

112. Plaintiffs reserve the right to amend their Complaint after reviewing the pleadings and/or discovery of Defendants to include individual defendants, personnel, and/or corporate or business entities.

**COUNT XV**
**CONSTRUCTIVE FRAUD**

113. The allegations of paragraphs 1 through 112 above are incorporated herein as if reproduced in full.

114. Defendants respectively, corporately and through agents and/or employees breached individual and corporate non-delegable duties—fiduciary and otherwise—to Plaintiffs, thereby committing constructive fraud.

115. As direct and proximate results of constructive fraud by Defendants, Plaintiffs sustained damages including but not limited to those stated herein.

**COUNT XVI**
**PRIVATE NUISANCE**

116. The allegations of paragraphs 1 through 115 above are incorporated herein as if reproduced in full.

117. Private nuisance is sometimes "used interchangeably" with a claim for interference with the use and quiet enjoyment of property. *Leaf River Forest Products, Inc. v. Ferguson*, 662 So.2d 648, 662 (Miss. 1995). "A private nuisance is defined as a non-trespassory invasion of another's interest in the use and enjoyment of his property." *Young v. Weaver*, 32 So.2d 202, 205 (Miss. 1947).

118. "A private nuisance may be shown by conduct causing an invasion of another's interest in the private use and enjoyment of land that is either: (1) intentional and unreasonable . . . ." Williams v. King, 860 So.2d 847, 851 (Miss. App. 2003).

119. Plaintiffs allege the inability to use their home is a continuing problem which rises to a private nuisance.

**COUNT XVII**
**COMPENSATORY DAMAGES**

120. The allegations of paragraphs 1 through 119 above are incorporated herein as if reproduced in full.

121. But for the negligence and willful omissions of Defendants, Plaintiffs would have the home that they purchased.

122. Defendants breached duties and directly and proximately caused unreasonable damages, including, but not limited to, those listed herein, entitling Plaintiffs to an award of compensatory damages.

**COUNT XVIII**
**PUNITIVE DAMAGES**

123. The allegations of paragraphs 1 through 122 above are incorporated herein as if reproduced in full.

124. Plaintiffs allege the limitations on damages as set forth in Mississippi Code (Annotated) of 1972 § 11-1-65—if they apply—are unconstitutional because they violate both the Mississippi Constitution and the Constitution of the United States, including, but not limited to, the Equal Protection and Due Process Clauses of these Constitutions.

125. Plaintiffs allege the commissions and omissions by Defendants and their respective and/or corporate agents and/or employees were so willful, grossly negligent and wanton as to show a disregard for the rights of others and therefore give rise to an award of punitive damages.

**COUNT XVIX**
**DAMAGES**

125. The allegations of paragraphs 1 through 124 above are incorporated herein as if reproduced in full.

126. As direct and proximate results of the respective and/or collective omissions and grossly improper and negligent commissions and omissions by Defendants and/or their respective and/or corporate agents and/or employees, Plaintiffs suffered actual and compensatory damages, including, but not limited to, the following.

a) Psychological and emotional trauma, distress, anxiety, and mental suffering;
b) Loss of enjoyment of life;
c) Loss of use of her House;
d) Diminution of value of the House
e) Attorneys' fees;
f) Legal interest; and
g) Other damages to be proven at trial.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

Plaintiffs pray the Court to enter judgment against Defendants and in favor of Plaintiffs and to award the following relief:

a) Judgment against Defendants for any and all losses incurred as direct and proximate results of the negligent conduct and other breaches of duty by Defendants, in an amount to be determined at trial;

b) Compensatory damages, prejudgment and post-judgment interest, attorneys' fees and costs reasonably and necessarily incurred during the course of litigation, in an amount to be determined at trial;

c) Judgment against Defendants for damages in an amount to make her and her House whole insofar as a pecuniary amount can accomplish that purpose, in an amount to be determined at trial;

d) Punitive damages against Defendants for gross negligence and/or breach of contract;

e) Such other relief as this Honorable Court deems just and proper.

RESPECTFULLY SUBMITTED this, the 2nd day of October, 2013.

BRAXTON & KERRIE COLLINS, Plaintiffs

By and Through Their Attorneys,
LUCKEY & MULLINS, PLLC

BY: /s/ Stephen W. Mullins
STEPHEN W. MULLINS

ATTORNEYS FOR PLAINTIFFS:

STEPHEN W. MULLINS (MS Bar No. 9772)
LUCKEY & MULLINS, PLLC
2016 Bienville Blvd., Suite 102 (39564)
Post Office Box 990
Ocean Springs, MS 39566
Phone: 228.875.3175
Fax: 228.872.4719
smullins@luckeyandmullins.com

Of Counsel:

**Daniel K. Bryson** (*pro hac vice*)
**WHITFIELD BRYSON & MASON LLP**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035

**CERTIFICATE OF SERVICE**

I, STEPHEN W. MULLINS, do hereby certify that I have on this date electronically filed the above and foregoing Amended Complaint with this Court using the ECF filing system which has caused notification of such filing to be sent to registered counsel of record. A copy of said Amended Complaint will also be served on the registered agent for Ace Home Center, Inc.

THIS, the 2nd day of October, 2013.

/s/ Stephen W. Mullins
STEPHEN W. MULLINS

STATE OF ALABAMA

# BUILDING CONTRACT
## BASS HOMES, INC.

This agreement made this 22ND day of AUGUST, 2008, between BRAXTON H. COLLINS AND KERRIE F. COLLINS, hereinafter designated "Buyer" whose residence is 10720 HWY 614 MOSSPOINT MS. 39562 and Bass Homes, Inc., having its principal place of business at P. O. Box 344, Stapleton, Alabama, 36578, hereinafter designated "Seller."

(1)

WITNESSETH:

The Seller agrees to build according to the plans and specifications on this sheet, or sheet attached hereto, which is by reference made a part hereof, on the property of the Buyer, located at: 10720 HWY 614 MOSSPOINT MS. 39562

(2)

Description of construction to be performed: BUILD A 37' X 53' SINGLE STORY HOME, TO BE BUILT ACCORDING TO BASS HOMES, INC. "DALTON III" MODEL. FOR SPECIAL CHANGES AND DETAILS SEE EXHIBITS A, B, C, D, E AND F ATTACHED HERETO.

Exhibits A, B, C, D, E and F dated AUGUST 22ND, 2008 and attached hereto, before execution hereof, are made a part of this contract.

Buyer covenants and agrees to pay for said project (work) the sums and amounts herein set forth, pursuant to the following terms: ONE HUNDRED FORTY ONE THOUSAND FOUR HUNDRED AND FIFTY 00/100

| | |
|---|---|
| (1) TOTAL PRICE | $ 141,450.00 |
| (2) DOWN PAYMENT | $ 1,000.00 |
| (3) UNPAID BALANCE | $ 140,450.00 |

Details of Payments: BUYER(S) TO OBTAIN A CONVENTIONAL MORTGAGE LOAN. BUYER(S) TO PAY ALL CLOSING COSTS, DISCOUNT POINTS AND PRE-PAIDS. BUYER(S) TO OBTAIN A 100% CONSTRUCTION LOAN WITH PROGRESS PAYMENTS DURING CONSTRUCTION OF HOME. SAID PAYMENTS TO BE AS PER STANDARD BANK POLICY. FINAL PAYMENT DUE UPON COMPLETION OF HOME.

(3)

This instrument, and the other instruments signed in connection with this transaction contain the price and all the terms and conditions agreed upon by the Buyer and Seller, and no statement, representation or promise not set forth herein or in any of said instruments has been made to induce either party to enter into this transaction. In the event an unsatisfactory credit report on the Buyer or any other information unsatisfactory to the Seller is received prior to beginning construction of the house, Seller at its option may within 10 days thereafter cancel this agreement UPON returning to Buyer any deposit. In the event Buyer fails to perform any activities or duties required of Buyer (e.g., failure to prepare lot for construction, or, failure to obtain an unconditional letter of commitment for funds to purchase home or any contents of this contract, or, failure to deliver proof of all funds if cash purchase applies) which failure prevents Seller from commencing construction for a period of sixty (60) days from the date hereof, Seller may cancel this contract at its option, regardless of any assistance that seller may have provided in financing. Should seller not exercise their option to cancel buyer at 60 day requirement then seller can negotiate with buyers to increase cost of this contract should seller choose to do so, provided that construction has not commenced by seller at buyers property described herein (e.g. starting foundation work on home). If buyer chooses not to agree an additional cost then seller may cancel this contract and retain buyers initial deposit of money. In the event the Buyer does not have good and marketable title to the property described in paragraph 1, Seller may at its option, elect to incur all expenses reasonably necessary to obtain good and marketable title in the Buyer, and Buyer shall forthwith reimburse Seller for all expenses so incurred by Seller. In the event the house built by Seller at the location on the ground designated by Buyer is not entirely on the property of Buyer, then the Buyer agrees to pay Seller any and all costs, damages, losses and expenses, including reasonable attorneys' fees and court costs, suffered or incurred as a result thereof by Seller. The above expenses incurred by the Seller shall constitute a lien against said property of the Buyer until paid. No completion date has been represented or is a part of this contract. All provisions of this contract are subject to approval by an officer of BASS HOMES, INC., Stapleton, AL 36578.

In those homes where pilings are specified, pilings shall be to a depth determined by Seller to be structurally safe and sound. In the event the Buyer requires a depth in excess of that deemed by Seller to be sufficient and structurally safe and sound, this contract, at the option of Seller, shall be declared null and void, or the contract may be re-negotiated to include the cost of drilling to a deeper depth. Commencement of construction and commencement of drilling pilings shall not be deemed a waiver of this position.

The house to be constructed is not designed for unusual surface conditions and/or sub-surface conditions in that no warranty is made that the house is designed for conditions that are abnormal, that no testing of the soil will be conducted by the Seller.

Failure of this Seller or Subcontractor to pay those persons supplying material or services to complete this contract can result in the filing of a lien on the above described property which is the subject of this contract.

(4)

Seller promises to furnish Buyer at closing a one-year limited warranty on the dwelling, a copy of which is attached here as Exibit " F "

(5)

ARBITRATION AGREEMENT

ANY DISPUTE, CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE BREACH THEREOF, OR ARISING OUT OF ANY PRIOR DEALINGS BETWEEN SELLER AND BUYER OR ARISING OUT OF ANY FUTURE DEALINGS BETWEEN SELLER AND BUYER, SHALL BE SETTLED BY ARBITRATION IN THE STATE OF ALABAMA IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION (THE "ARBITRATION RULES OF THE AAA") AND JUDGMENT UPON THE AWARD RENDERED BY THE ARBITRATOR(S) MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF.

THE PARTIES FURTHER AGREE THAT SHOULD ONE PARTY INVOKE ARBITRATION IN ACCORDANCE WITH THIS AGREEMENT, THE OTHER PARTY SHALL BRING TO THE ARBITRATION PROCESS AND CLAIM OR COUNTERCLAIM WHICH IT MAY HAVE AGAINST THE INVOKING PARTY, WHETHER DEEMED TO BE COMPULSORY OR PERMISSIVE AT LAW; AND, THE FAILURE TO BRING SUCH CLAIM OR COUNTERCLAIM SHALL CONSTITUTE A WAIVER OF AND A BAR TO THE BRINGING OF SUCH CLAIM OR COUNTERCLAIM IN ANY SUBSEQUENT ARBITRATION OR LEGAL ACTION.

SELLER AND BUYER UNDERSTAND AND AGREE (i) THAT EACH OF THEM IS WAIVING RIGHTS TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO A JURY TRIAL; (ii) THAT PRE-ARBITRATION DISCOVERY PROCEEDINGS IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS; (iii) THE ARBITRATOR'S AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING; AND (iv) EITHER PARTY'S RIGHT TO APPEAL OR SEEK MODIFICATION OF RULINGS BY THE ARBITRATOR IS STRICTLY LIMITED. THE VENUE FOR ARBITRATION SHALL BE IN BALDWIN COUNTY, ALABAMA.

IN WITNESS WHEREOF, the Buyer and Seller have hereunto set their hands and seals at STAPLETON, ALABAMA, the day and year first above written.

(City) (State)

*CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.*

BASS HOMES, INC.
SELLER

BY [signature]
Title

[signature] Braxton H. Collins
(BUYER)

[signature] Kerrie F. Collins
(BUYER)

Exhibit "A"

EXHIBIT A

BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL 36578

BRAXTON H. COLLINS AND KERRIE F. COLLINS — AUGUST 22, 2008

BUYER(S) NAME(S) — DATE

NOTICE

ANY HOLDER OF THIS CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE BUYER COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE BUYER SHALL NOT EXCEED AMOUNTS PAID BY THE BUYER HEREIN.

BUYER'S RIGHT TO CANCEL

IF THIS AGREEMENT WAS SOLICITED AT YOUR RESIDENCE AND YOU DO NOT WANT THE GOODS OR SERVICES, YOU MAY CANCEL THIS AGREEMENT BY MAILING A NOTICE TO THE SELLER. THE NOTICE MUST SAY THAT YOU DO NOT WANT THE GOODS OR SERVICES AND MUST BE MAILED BEFORE MIDNIGHT OF THE THIRD BUSINESS DAY AFTER YOU SIGN THIS AGREEMENT. THE NOTICE MUST BE MAILED TO: LEGAL DEPARTMENT, BASS HOMES, INC.; HIGHWAY 31; P. O. DRAWER 340, STAPLETON, ALABAMA 36578. YOU ARE ALSO ENTITLED TO RECEIVE A REFUND OF ANY DOWN PAYMENT OR OTHER CONSIDERATION IF YOU CANCEL.

NOTICE TO THE BUYER (a) DO NOT SIGN THIS BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES, (b) YOU ARE ENTITLED TO AN EXACT COPY OF THE PAPER YOU SIGN.

THE BUYER ACKNOWLEDGES THAT HE RECEIVED A COPY OF THIS AGREEMENT AND THAT BEFORE SIGNING THE SAME, THE CONTRACT CONTAINED THE ENTIRE TERMS AND ALL BLANK SPACES HAD BEEN FILLED IN PRIOR TO THE SIGNING OF THE SAME.

These presents constitute a part of the Building Contract of even date attached hereto. The following options and additions; to-wit:

HOUSE TO BE BUILT ACCORDING TO PLANS FURNISHED BY BASS HOMES, INC.

Note to Buyers: Bass Homes, Inc., may at its election require water and sewer to be installed on mortgaged property before construction begins or before completion of rough plumbing in home. In the event that water and sewer with connections to home is not completed at Bass Homes, Inc., request, Sellers and Buyers agree that Bass Homes, Inc., will have full rights to install water supply and sewer with connections and Buyers then agree to pay in full normal and customary charges of goods.

**FOUNDATION:** [illegible]

NOTE: Builder shall negotiate additional cost if any with customer before foundation is installed. Any additional depth of foundation (piers, pilings, or slab) or width of footings required by any building governmental agencies, buyers, or builder's discretion shall all be on a cost plus basis unless pre-charged and written in contract total price.

1. Foundation will be raised type with continuous 8" block wall around perimeter of home only. Note: All porches will be open piers. If exterior is Brick Veneer, foundation will be piers only. Foundation height of home to be at sellers discretion and building codes if enforced. Buyers are responsible to determine if they are in a flood zone and shall disclose to seller in writing before construction begins if a required foundation height is necessary.
2. Treated foundation seals will be installed; all porch seals and porch floor will be treated.
3. 3/4" tongue and groove plywood flooring.

**EXTERIOR OF HOUSE:**

1. Exterior walls will have OSB and housewrap sheeting under siding.
2. Exterior siding hardiplank or comparable unless otherwise stated in contract.
3. All porch rails, fascias, and window trim will be pressure treated.
4. Roof will have all framing 2' o.c.
5. Roof will have standard fiberglass shingles, unless otherwise stated in contract.
6. Exterior doors will be metal insulated.
7. Exterior windows will be insulated white colonial style. Tilt window sash's are optional
8. Exterior of house will be painted latex.
9. All homes with vinyl siding or hardy plank siding will have 7/16" OSB wafer board in lieu of standard styrofoam.

**INTERIOR:**

1. Interior of home will have 3 ½" insulation in exterior walls and 6" fiberglass insulation in attic exposed ceiling areas only.
2. Interior wall will have ½" sheetrock throughout entire house.
3. Cabinet faces and doors only will be 3/4" Birch plywood or comparable material with laminated countertops. All white lacquer cabinets will be 5/8" MDF or HDF, including raised panel doors. All cabinet backs, ends, shelves or other components in cabinets shall be equal to Bass Homes, Inc., model home.
4. Standard interior doors and trim.
5. Vinyl flooring in kitchen, utility, and all baths, no wax.
6. Carpet in all other areas of home from Bass Homes, Inc., samples.
7. Fluorescent light in kitchen area.

**STANDARD OPTIONS OF HOUSE:**

1. PLUMBING: Fiberglass tub and shower units/stainless steel kitchen sink/standard vanity porcelain sinks, standard white fixtures.
2. ELECTRICAL: 200 amp service/standard copper and aluminum wiring/standard light fixtures.
3. HEAT AND AIR: Standard electric central forced heat and air. 42" Metal insert fireplace (without blowers) in homes that are shown on Bass Homes, Inc. sales brochure only.
4. PAINT:
   - A. Exterior oil base stain/interior latex paint on walls. Standard color all interior walls (soft white) Devoe Brand or something equivalent, all paint and stain from Bass Homes, Inc., samples.
   - B. All interior walls in home will be one color (soft white).
   - C. All trim work and cabinets will be stained or white.
   - D. All exteriors will be painted.
   - E. All exteriors will have one trim color for doors and shutters only. Any other trim colors will be additional costs. (Hand rails, porch rails, corner boards, and eaves will be stained or painted same color as exterior of home).
5. All materials in excess of job will remain the property of Bass Homes, Inc.
6. Buyers are responsible for removal of construction debris.
7. All utilities are stubbed out only to exterior (Electrical Service Wire, Gas, and Plumbing). See Exhibit "B" for details.

(SELLER, BUILDER)

Braxton H Collins
(BUYER, OWNER)

Kerrie F. Collins
(BUYER, OWNER)

EXHIBIT B - PART I

BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL 36578

DATE: AUGUST 22, 2008

NAME OF BUYER(S): BRAXTON H. COLLINS AND KERRIE F. COLLINS

TYPE OF HOME: CEMPLANK MODEL: DALTON III

OWNER'S CHOICE OF INTERIOR & EXTERIOR COLORS:

EXTERIOR: HARDIPLANK OR COMPARABLE ______ CEDAR ______ BRICK ______

SIDING COLOR ______

STANDARD TRIM COLOR (DOOR & SHUTTERS ONLY) ______

DELUXE TRIM COLOR (DOOR, SHUTTERS, FASCIA & WINDOW TRIM) THIS ITEM IS $950.00 ADDITIONAL COST

SHINGLES ______ WINDOWS: BRONZE ______ WHITE ______

BRICK COLOR ______

MORTAR COLOR: GREY ______ DARK MORTAR ______ OTHER ______

INTERIOR:

KITCHEN / BREAKFAST

COUNTER TOP ______

STANDARD RANGE HOOD: ALMOND ______ WHITE ______ STAINLESS ______

CONNECTION FOR MICROWAVE: ☐ YES or ☐ NO

VINYL ______

DINING

CARPET ______

UTILITY:

VINYL ______

MASTER BATHROOM:

VANITY TOP ______

VINYL ______

HALL BATHROOM:

VANITY TOP ______

VINYL ______

CARPET:

$250.00 ADDED COST FOR HARDWOOD FLOORING FRONT ENTRANCE: ______

LIVING ROOM ______

FOYER ______

STUDY ______

BEDROOM #1 ______

BEDROOM #2 ______

BEDROOM #3 ______

BEDROOM #4 ______

(NOTE: Vinyl throughout home, other than kitchen, dining and baths cost an additional $2.00 per sq. ft.)

FIREPLACE STONE: ______

(NOTE: The fireplace in all homes with cathedral ceilings will have stone to mantle height.)

FIREPLACE MANTLE BACKING BRACE (2" X 4"): YES ______ OR NO ______

CABINETS STAINS OR COLOR: ______

ALL CABINET DOOR AND ANY CABINET UPGRADES MUST BE IN CONTRACT ON "EXHIBIT C" AND ALSO PROOF OF PURCHASE ON BASS HOMES COST BREAK DOWN SHEET.

INTERIOR TRIM STAIN OR COLOR: ______

CABINET HARDWARE ______

*ONE CHOICE OF CARPET COLOR
*TWO COLORS FOR VINYL
*TWO COLORS FOR VANITY AND COUNTER TOP

VINYL FLOORING WILL BE INSTALLED IN BATHROOMS, KITCHEN, UTILITY, AND BREAKFAST AREAS ONLY. ANY VINYL INSTALLED IN ANY OTHER AREAS, BUYER(S) AGREE TO PAY AN ADDITIONAL $2.00 PER SQUARE FOOT FOR UNDERLAYMENT.

Braxton H. Collins
(BUYER, OWNER)

Kerrie F. Collins
(BUYER, OWNER)

EXHIBIT B - PART 2

BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL 36578

BUYER(S) BRAXTON H. COLLINS AND KERRIE F. COLLINS

DATE: AUGUST 22, 2008

1. Ceiling fan outlets ONLY WHERE: LIVING AND ALL BEDROOMS
2. Ceiling fan installation ONLY WHERE: NONE
3. Dishwasher cutout-? YES X OR NO___
4. Dishwasher hookup? YES___ OR NO X
5. Ice-maker line only installed: YES X OR NO___
6. Cabinet space for standard 30" free standing electric stove YES___ OR NO___

   Drop-in stove: YES___ OR NO___
7. Gas utilities: YES___ OR NO___
8. Termite Treatment; one twelve month bond: YES X OR NO___
   (No termite treatment shall be provided for homes on pilings.)
9. Electric hookup: Standard overhead ___ OR underground___
10. Clean up debris and haul off? NO. If yes, additional costs must be added to total price and Exhibit C of Contract.
11. Payment towards Builder's Risk Insurance during construction period.
    YES___ OR NO X
    Buyer(s) agree(s) to furnish Builder's Risk policy payable to Seller and if necessary, also to Lender or Buyer(s) prior to and during construction of home until construction of home is complete.
12. All utilities are stubbed out only to exterior (electric service wire, gas, plumbing, and sewer).
13. Gutters, parquet flooring and mini-blinds not included in standard price of home.

---

(I) Buyer(s) agree that all special changes to home plans have been made and incorporated into this contract. Buyer(s) further agrees that all color selections and selections of all goods have been made by Buyer(s), and upon execution of this Contract, both Parties agree that no changes will be made.

(II) Buyer(s) agree(s) that upon substantial completion of home, Buyer(s) and a Bass Homes, Inc., representative will do a walk through inspection of home and a punch list will be written up which is mutually agreeable by both parties. Buyer(s) hereby agree(s) that the initial walk through and resulting punch list will be the only walk through and punch list. Seller hereby agrees to correct or complete the items on the punch list and once finished, Buyer(s) agree(s) to immediately pay Seller the entire balance owed to the Seller under the contract or otherwise. If Seller should agree to do any extra work after the initial punch list, this work shall not commence until Seller has been paid in full. All other matters will be strictly related to the standard one year Builder's Warranty styled as a "Completion Certificate and Owner's Acceptance".

(III) Buyer(s) agree(s) that he and/or she shall not be allowed to take possession of the home until such time as Seller has been paid in full under the contract and has also been paid any additional cost, if any, which has been added to the original contract price. Buyer(s) acknowledge(s) that, until such time as Seller has been paid in full the contract price and signed a "Completion Certificate and Owner's Acceptance," Buyer(s) will not be allowed to occupy or store any of his and/or her possessions in said home. In the event that Buyer(s) fail to the agreed terms above, Buyer(s) shall in this agreement, pay to the Seller a sum of $1,000.00 per month rent for possessing the newly constructed home for storing any of Buyer(s) goods or occupying the home in any manner. The monthly $1,000.00 rate will be paid to Seller until Seller is paid in full.

(SELLER, BUILDER)

Braxton Collins
(BUYER, OWNER)

Kerrie F. Collins
(BUYER, OWNER)

EXHIBIT C

BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL 36578

NAMES OF BUYER(S): BRAXTON H. COLLINS AND KERRIE F. COLLINS

DATE: AUGUST 22, 2008

TYPE OF HOME: CEMPLANK

NAME OF HOME BEING BUILT: DALTON III

PLEASE LIST ANY CHANGES OTHER THAN "STANDARD" THAT IS STATED IN THIS CONTRACT REGARDLESS OF HOW SMALL OR LARGE THE CHANGE MAY BE. ANYTHING WRITTEN IN EXHIBIT "C" WILL OVERRIDE THE "STANDARD" CONTRACT AND BLUEPRINTS.

1. INSTALL BRICK VENEER FROM BASS HOMES SAMPLES AROUND FOUNDATION AREA AND PORCH AREAS OF HOME (SAME AS REDWOOD MODEL HOME). NOTE: FRONT STEPS ONLY WILL BE BRICK. ALL OTHER STEPS TO BE TREATED PINE.
2. INSTALL STANDARD 8' CEILINGS THROUGHOUT HOME.
3. INSTALL DIMENSIONAL SHINGLES ON ROOF OF HOME IN LIEU OF STANDARD SHINGLES FROM BASS HOME SAMPLES.
4. INSTALL FLAT PANEL CABINETS (WITHOUT ARCHES) FROM BASS HOMES SAMPLES THROUGHOUT HOME.
5. INSTALL CERAMIC TILE IN FOYER KITCHEN, BREAKFAST, AND BOTH BATHS.
6. ADD A STANDARD FIREPLACE IN LIVING ROOM AS PER PRELIMINARY PLANS.
7. DELETE FRENCH DOORS IN OFFICE/STUDY AND CONVERT TO A 4TH BEDROOM. ADD A CLOSET AT THE ADJACENT SIDE TO NEXT BEDROOM.
8. MAKE ENTRANCE TO FOURTH BEDROOM BY EXTENDING HALL AS PER PRELIMINARY PLANS. NOTE. SHORTEN AND REPOSITION OTHER BEDROOM CLOSET.
9. MOVE REAR LIVING ROOM WALL TOWARDS REAR PORCH 2' TO MAKE LIVING ROOM LARGER. NOTE: REAR PORCH WILL BE 2' SMALLER THAN STANDARD.
10. INSTALL BOARD AND BATTING SIDING ON EXTERIOR IN LIEU OF STANDARD SIDING.
11. INSTALL CRAFTSMAN STYLE FRONT PORCH COLUMNS SAME AS SPEC HOME IN STAPLETON (BYRD ROAD) IN LIEU OF STANDARD COLUMNS.
12. INSTALL SMOOTH CEILINGS WITH LIGHT ORANGE PEEL TEXTURE THROUGHOUT HOME.
13. FRAME BUYERS INTERIOR SOLID WOOD DOORS IN BASS HOMES DOORS UNIT CASINGS. NOTE: BLUEPRINT MUST BE ACCURATE FOR DOORS THAT BUYERS ARE PROVIDING. CONSULT BUYERS FOR DIMENSIONS.
14. BUYERS TO PROVIDE BOTH BATH VANITIES, SINKS AND FAUCETS. BASS HOMES WILL INSTALL.
15. BUYERS TO PROVIDE A LARGE CUSTOM KITCHEN SINK. BASS HOMES TO INSTALL. NOTE: CONSULT BUYERS TO SIZE CABINETS TO ALLOW FOR SPECIAL SINK.
16. INSTALL TWO FRONT PORCH LANTERNS SAME AS SPEC HOMES.
17. ALL FAUCETS PROVIDED BY BASS HOMES TO BE DELTA BRAND.
18. BUYERS HAVE A $2,000.00 ALLOWANCE FOR APPLIANCES. SAID ALLOWANCE TO BE DISPERSED DIRECTLY FROM BUYERS CONSTRUCTION LOAN. BUYERS TO PURCHASE AND INSTALL SAID APPLIANCES.

AUGUST 22, 2008
DATE

(SELLER, BUILDER)

Braxton H Collins
(BUYER, OWNER)

Kerrie F. Collins
(BUYER, OWNER)

EXHIBIT D

BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL 36578

NAME OF BUYER(S): BRAXTON H. COLLINS AND KERRIE F. COLLINS

DATE: AUGUST 22, 2008

TYPE OF HOME: CEMPLANK

MODEL: DALTON III

BUYER(S) AGREES TO PROVIDE THE FOLLOWING ITEMS PRIOR TO COMMENCEMENT OF CONSTRUCTION UNLESS OTHERWISE STATED IN THIS CONTRACT:

1. Electricity necessary to construct home within 25 feet of proposed structure. All expenses to be from Buyer(s) including power bills.
2. Water supply necessary to construct home within 25 feet of proposed structure. All expenses to be from Buyer(s) including water bills.
3. Temporary driveway (and culvert if necessary) within 25 feet of proposed structure. Driveway material must be sufficient to support heavy equipment delivering building goods.
4. Clearing of lot for proposed structure. Clearing includes trees, stumps or any type of debris above or below ground to Seller's satisfaction.
5. Elevation certification in flood areas when required in connection with builder obtaining building permit. Seller will provide building permit only.
6. Water supply within 500 feet for installing pilings for homes being built on pilings.
7. Cost of plan reviews when required by county or city building departments.
8. Engineering cost of certifying home plans when required by building codes or governmental agencies.

BUYER(S) SHALL PROVIDE THE FOLLOWING ITEMS DURING OR AT COMPLETION OF CONSTRUCTION (UNLESS OTHERWISE STATED IN THIS CONTRACT). NOTE: SOME ITEMS MAY BE AT BUYER(S) DISCRETION UNLESS REQUIRED BY MORTGAGE HOLDER.

1. Septic system and line to stub-out at home.
2. Water meter, well, and line to stub-out at home.
3. Buyers to connect water and sewer line to stub-out at foundation of home.
4. Television antenna outlets, cable outlets, telephone outlets or other items of similar nature.
5. Mirrors in baths, soap dishes, towel bars, etc.
6. Safety bars or grab bars in tubs and showers.
7. Shower doors.
8. Mantel over fireplace.

BUYER(S) ACKNOWLEDGES AND AGREES WITH THE FOLLOWING POLICIES AND STATEMENTS:

1. Seller will not be responsible for any property damage to Buyer(s)' lot in connection with Seller constructing Buyer(s)' home.
2. Seller will not do any landscaping or leveling of lot during or after completion of this contract unless otherwise stated in this contract.
3. When homes are sold with brick veneer on exterior of home, all walls under porch and gables shall having siding (specified type in contract) in those areas unless otherwise written in contract. All exterior steps and rails shall be wood.
4. When final building plans are completed, Buyer(s) agrees that Seller will not build home to exact dimensions and cosmetic details that may appear on plans due to a large volume of plan changes that Seller produces. Seller and Buyer(s) agrees to build home according to sales brochure plan and preliminary plans.
5. Seller will not warrant the performance or appearance of any clear sealers or semi transparent stains installed by Seller on exterior of homes such as Clear Wood Finish or similer brand.
6. Buyer(s) shall not take any possession of home or move any goods in until seller receives final payment.
7. Seller is not required to provide buyer(s) any building drawings or blueprints other than a preliminary style set of plans with room sizes and exterior elevations of all sides of home.
8. Buyers strictly agree that they are not allowed to perform any construction improvements or install any goods or improvements in home until final payment of home is payed to seller at completion. SHOULD BUYER(S) VIOLATE OR BREAK THE TERMS OF THIS AGREEMENT HEREBY STATED IN ITEM # 8 OF THIS EXHIBIT D OF CONTRACT THEN BUYER(S) WILL PAY SELLER AN ADDITIONAL $5,000.00 TO THE TOTAL PRICE OF THIS CONTRACT AT THE TIME OF FINAL PAYMENT.
9. Buyer(s) agree upon substantial completion of construction of home that one (1) time walk-through inspection will be done by appointment with a Bass Homes, Inc. representative and a written list of items will be produced. Bass Homes, Inc. will complete all listed items from the one (1) time walk-through inspection. Buyer(s) agree to close immediately upon completion of list.
Buyer(s) and Seller agree that no additional walk-through or additional items will be allowed after the initial one (1) time walk-through and item list.
10. "completion certificate of owners acceptance" warranty limitations are a part of this contract.

Buyers agree to pay the full amount for materials and labor of any special additions/code enforcement's that are required by building departments, mortgage lenders, or any type of governmental agency that are not standard in Bass Homes, Inc., model home or said plans and specs. This includes, but is not limited to, the following items: special insulation, underpinning of home's on pilings, structural engineering, certification of plans, special depth of concrete footings (i.e. prairie soil, white sand in coastal areas, unstable soil), or any items that must be added to meet the requirements of any of the above governmental agencies, companies, or departments.

(SELLER/BUILDER)

(BUYER, OWNER)

(BUYER, OWNER)

EXHIBIT "E"

BASS HOMES INC. 34661 STATE HWY 59 SOUTH STAPLETON, AL.36578

BUYER(S)BRAXTON H. COLLINS AND KERRIE F. COLLINS

BUYER(S) AGREE TO THE FOLLOWING TERMS, DISCLOSURE NOTICES AND COST ADDENDUMS TO BE ADDED TO THE TOTAL PRICE OF THIS CONTRACT (COST WHEN APPLICABLE) TO THE UNDERSIGNED BUYER(S).

1. ANY ENGINEERING COST OF BUYER(S) PLANS IF REQUIRED BY MORTGAGE LENDER, BUILDING DEPARTMENTS OR ANY TYPE OF AGENCY THAT CAN ENFORCE SAID REQUIREMENT THEREOF.

2. IF BUYER(S) COMMENCE'S WITH ANY IMPROVEMENTS, PERFORM ANY TYPE OF WORK ON HOME DESCRIBED IN THIS CONTRACT OR HIRE ANY WORK TO BE PERFORMED BY OTHERS IN THE ACTUAL HOME DESCRIBED IN THIS CONTRACT INCLUDING ADDING ON TO THE STRUCTURE OF THIS HOME, PRIOR TO PAYING THE FINAL PAYMENT OF THIS CONTRACT TO BASS HOMES INC. TOGETHER WITH SIGNING THE "COMPLETION OF OWNERS ACCEPTANCE",THEN IT IS AGREED THAT BUYER(S) SHALL PAY BASS HOMES INC. THE SUM OF $5,000.00 ADDITIONAL COST ABOVE THE TOTAL PRICE IN THIS CONTRACT AT TIME OF FINAL PAYMENT.

3. RECESSED LIGHTS ARE NOT INCLUDED IN THE REDWOOD MODEL OR ANY OTHER HOME PLANS UNLESS ADDED TO COST BREAKDOWN AND LISTED ON EXHIBIT "C" OF THIS CONTRACT.

4. BUYERS CANNOT PROVIDE ANY LIGHT FIXTURES, PLUMBING FIXTURES OR ANY OTHER TYPE OF GOODS IN CONNECTION WITH THIS CONTRACT.
ALL OF THE ABOVE SHALL BE STANDARD FIXTURES FROM BASS HOME INC.

5. GRINDER PUMPS WHEN APPLICABLE FOR SEWER WILL NOT BE CONNECTED BY THE SELLER. BUYERS TO PAY FOR THE ELECTRICAL AND PLUMBING CONNECTIONS.

6. ELECTRICAL WIRING FOR PUMPS AND WELLS WHEN APPLICABLE ARE NOT INCLUDED IN TOTAL PRICE.

7. CONCRETE SLABS UNDER BEACH HOMES ON PILINGS WILL NOT BE WARRANTED AGAINST SLIGHT PUDDLES OF WATER AFTER RAINS DUE TO THE NATURE OF A SLAB FINISH. SLABS UNDER PILING HOMES WILL NOT INCLUDE PORCH OR DECK AREAS.

8. BUYER(S) LOT SLOPE WILL BE ASSESSED FOR SLOPE THAT MAY EXCEED THE REQUIREMENTS OF THIS CONTRACT ON EXHIBIT "A" AT TIME OF COMMENCEMENT OF CONSTRUCTION OF FOUNDATION.

9. FIREPLACE MANTLES WILL NOT BE INCLUDED ON ANY HOMES AS A STANDARD ITEM IN ANY HOME. SELLER WILL INSTALL A 2' X 4' SUPPORT AT MANTLE HEIGHT FOR BUYER(S) TO INSTALL A MANTLE AFTER COMPLETION OF HOME.

10. BUYER(S) ARE RESPONSIBLE FOR CAULKING DOOR THRESH-HOLDS AS NEEDED BUT NOT LESS THAN EACH AND EVERY ANNIVERSARY DATE OF ORIGINAL CONSTRUCTION COMPLETION OF HOME. BUYERS ARE RESPONSIBLE FOR THE ANNUAL INSPECTION OF FIREPLACE FLASHING AND CAULKING. BUYERS ARE RESPONSIBLE FOR CHECKING AND CAULKING EXTERIOR OF WINDOWS ANNUALLY.

11. BASS HOMES INC. WILL NOT WARRANT THE PERFORMANCE OF HEATING AND COOLING IN ONE AND ONE HALF STORY HOMES THAT DO NOT HAVE AN UPSTAIRS SEPARATE UNIT. THE UPSTAIRS WILL HAVE A TENDENCY TO MAINTAIN SEVERAL DEGREES DIFFERENCE IN TEMPERATURE WHICH IS STANDARD TO THE CONSTRUCTION INDUSTRY.

12. BUYER(S) AND SELLER AGREE THAT THERE ARE NO OTHER PROMISES OTHER THAN THAT WHICH IS WRITTEN IN THIS CONTRACT. THIS MEANS INCLUDING ANY VERBAL PROMISES THAT BUYER(S) MAY CLAIM THAT A SALES AGENT OR BASS HOMES INC. EMPLOYEE OR REPRESENTATIVE COULD HAVE IMPLIED OR PROMISED HE OR SHE.

13. BUYERS HEREBY AGREE THAT BASS HOMES INC. WILL NOT ACCEPT ANY LIABILITY OF BUYERS COST OF UTILITY BILLS DURING CONSTRUCTION OF HOME OR AFTER BUYER(S) TAKES OCCUPANCY OF THIS HOME DESCRIBED HEREIN. THIS INCLUDES ANY COMPLAINT BUYER(S) MAY ASSERT OF INFLATED POWER BILL'S OR ANY TYPE OF OTHER UTILITY.

BUYER(S) Braxton H Collins

BUYER(S) Kerrie F Collins

AUGUST 22, 2008
DATE

Exhibit " F "

RE:BRAXTON H. COLLINS AND KERRIE F. COLLINS

COMPLETION CERTIFICATE AND OWNER'S ACCEPTANCE;

LIMITED ONE-YEAR WRITTEN WARRANTY

The undersigned, owner (whether one or more) of the real property described in their contract with BASS HOMES, INC. ("Contractor") dated : AUGUST 22, 2008 hereby acknowledge and certify as follows:

1. All materials and labor provided for in said contract have been furnished and installed by the Contractor or his subcontractors on our said real property in a good and workmanlike manner; that we have made a full and complete inspection of the same; that all construction and other work called for in said contract has been satisfactorily completed; that the home is fit, suitable and habitable; and the improvements are hereby accepted by us as built.

2. Contractor did not manufacture any materials used in the construction of this home; that the Contractor does not warrant any of the said materials against any defects in QUALITY, FITNESS or MERCHANTABILITY; that the Contractor will make good only on the workmanship of the actual construction of home; and that any and all claims related to the materials used in construction shall be pursued by customers ONLY against the manufacturers of any materials provided to the Contractor.

3. Contractor hereby gives a limited warranty on the home located at 10720 HWY 614 MOSSPOINT MS. 39562 for a period of one ( 1 ) year following closing or occupancy by the Buyer(s), whichever event occurs first.

4. Contractor warrants the home to be free from latent defects for a period of one ( 1 ) year following closing or occupancy, whichever event occurs first.

5. THIS WARRANTY IS GIVEN IN LIEU OF ANY AND ALL OTHER WARRANTIES, EITHER EXPRESSED OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, HABITABILITY AND /OR WORKMANSHIP.

6. Contractor shall not be liable under the parties' contract or this warranty unless written notice of the latent defect(s) shall have been given by Buyer(s) to Contractor within the (1) year warranty. Steps taken by the Contractor to correct any defect(s) shall not act to extend the warranty period described hereunder.

7. Buyers confirm that they have performed a walk-thru inspection prior to signing the Completion Certificate and Owners Acceptance; Limited One-Year Written Warranty. Further Buyer(s) agree that their signatures below signify that they have accepted the construction of the home and waive any further right to complain of cosmetic deficiencies and the quality of workmanship or any other matter that does not constitute a latent defect.

8. Any and all remedies of the Buyer(s) and any liability of the Contractor shall be governed strictly by the terms of this one-year limited warranty. Neither the Contractor nor its assigns shall be liable for any incidental or consequential damages. under no circumstances may the Buyer(s) recover damages in excess of the amount of the subject building construction contract.

9. Any reference to the singular herein shall also encompass the plural where appropriate; and any reference to the plural shall also encompass the singular where appropriate.

BUYER(S) INITIALS OF RECEIPT OF THIS DOCUMENT BEFORE CONSTRUCTION OF HOME:

BUYER: Braxton Collins BUYER: Kerrie F. Collins

DATE: ____________ BUYER: XXXXXXXXXXXXXXX

DATE: ____________ BUYER: XXXXXXXXXXXXXXX

Witness: [signature] DATE: ____________

# EXHIBIT "B"

IN THE CIRCUIT COURT OF GEORGE COUNTY, MISSISSIPPI

JASON S. HERRINGTON and
CASSIE D. HERRINGTON — PLAINTIFFS

VERSUS — CIVIL ACTION NO. 1:13 CV 323 HSO-RHW

BASS HOMES, INC.;
ACE HARDWARE CORPORATION;
ACE HOME CENTER, INC.;
And All Unknown Fictitious Producer Defendants, Distributor Defendants, Alter Ego Defendants and Fictitious Defendants 2-150 to be identified through discovery and Named by amendment or by substitution of party — DEFENDANTS

---

**AMENDED COMPLAINT**
**(JURY TRIAL REQUESTED)**

---

COME NOW the Plaintiffs, Jason S. Herrington and Cassie D. Herrington, (hereinafter "Plaintiffs") by and through undersigned counsel, and file this, their Amended Complaint against the Defendants, Bass Homes, Inc. (hereinafter "Bass Homes"), Ace Hardware Corporation (hereinafter "Ace Hardware"), Ace Home Center, Inc. and Fictitious Defendants 2 through 150 are those Producer Defendants, Distributor Defendants, Builder Defendants and Alter Ego Defendants whose identities and true names are currently unknown to the Plaintiffs (hereinafter "Fictitious Defendants"), and in support thereof would show unto this Honorable Court as follows, to-wit:

**PARTIES**

1. Plaintiffs, Jason S. Herrington and Cassie D. Herrington, are the owners of a residence located in Lucedale, Mississippi (the "Herington Residence"). The address of the Herington Residence is 26975 Old Americus Road, Lucedale, MS 39452. This is also the

Exhibit A

Heringtons' primary residence. An inspection has revealed the presence of Defective Chinese drywall in this Residence.

2. Defendant Bass Homes, Inc., ("Bass") is an Alabama corporation authorized to conduct business in the State of Mississippi, with its principal place of business located at 34661 State Hwy 59, Stapleton, AL 36578. Bass Homes, Inc. is a residential construction company and is operating, conducting, engaging in, and carrying on a business or venture in this state and has an office or agency in this state.

3. Defendant Ace Hardware Corporation. ("Ace") is a Delaware corporation authorized to conduct business in the State of Mississippi, with its principal place of business located at 2200 Kensington Court, Oak Brook, IL 60523-2100. At all material times, Ace was in the business of distributing, supplying and/or selling residential drywall in Mississippi, and maintained multiple retail, office and/or warehouse locations in the State of Mississippi.

4. Defendant, Ace Home Center, Inc. is an Alabama corporation authorized to conduct business in the State of Mississippi, with its principal place of business located at 21090 Alabama 59 South, Robertsale, AL 36567. At all material times, Ace Home Center was in the business of distributing, supplying and/or selling residential drywall in Alabama as a retail outlet.

5. Fictitious Defendants 2 through 150 are those Producer Defendants, Distributor Defendants, Builder Defendants and Alter Ego Defendants who identities and true names are currently unknown to the Plaintiffs, who therefore sues Fictitious Defendants 1 through 150 by such fictitious names.

**JURISDICTION and VENUE**

6. The litigation of this controversy should proceed in this forum because the properties at issue are located in this County, the Plaintiffs reside in this County and the wrongful conduct is concentrated in this County.

7. Defendants are foreign corporations that are either registered to conduct business in the State of Mississippi or that actually transacted business in Mississippi.

**FACTS**

8. On or about November 13, 2008, Jason S. Herrington and Cassie D. Herrington entered into a Building Agreement with Bass Homes, Inc. for the construction of a residence on real property located at 26975 Old Americus Road, Lucedale, MS 39452. See Building Agreement, Attached hereto as **Exhibit "A"**.

9. In about November, 2008, Bass Homes, Inc. applied for a building permit for the Herrington Residence.

10. Thereafter, Defendant Bass Homes was the general contractor and built the Herrington Residence located at 26975 Old Americus Road, Lucedale, MS 39452. Plaintiffs are informed and believe Ace Hardware supplied the drywall installed in the Herrington Residence.

11. Construction of the Herrington Residence was complete in or about March 13, 2009. Thereafter, the Herrington family occupied the residence.

12. On information and belief, Ace Hardware, by and through Ace Home Center, sold the drywall that Bass Homes, or the subcontractor hired by Bass Homes, installed in the Herrington Residence.

13. In or about January 2010, Plaintiffs determined that their Residence was built with drywall manufactured in China ("Defective Chinese Drywall").

14. The material composition and offensive smell of the Defective Chinese Drywall in the Residences renders it inferior to American-made drywall and unfit for ordinary use in residential construction and emits a corrosive sulfur fume that places the home at great risk for fire and damages all electrical and, therefore, structural components.

15. Defendants knew, or should have known, that the Defective Chinese Drywall that Bass Homes purchased from Ace Hardware, by and through Ace Home Center, and that Bass Homes installed, was going to be used in the construction of the Residence. Ace Hardware and Ace Home Center also knew, or should have known, that residential homeowners, such as Plaintiffs, were foreseeable users of the Defective Chinese Drywall and that residential homeowners, such as Plaintiffs, required and expected the drywall to be fit for the ordinary purpose for which it was intended.

16. Unlike American-made drywall, the Defective Chinese Drywall in the Residences emits several sulfur compounds, including, but not limited to, carbon disulfide, carbonyl sulfur, and hydrogen sulfide. The Defective Chinese Drywall in the Residence is also suspected to contain several other impurities which render it unfit for usage in residential construction. The sulfur based compounds emitted have created a sulfur odor which renders the drywall unfit for the ordinary purpose for which it was intended.

17. The Defective Chinese Drywall emits these sulfur based compounds because it suffers from either a defective manufacturing and/or mining process.

18. The corroded items described above are also unfit for the ordinary purpose for which they were intended. Plaintiffs are uncertain as to the cause of the corrosion and have not engaged in any act or activity which has led to or caused the corrosion in any way.

19. The Defective Chinese Drywall in the Residence has and will continue to cause damage to the Residences and Plaintiffs' personal property, including structural damage.

20. As a result of the foregoing, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to: economic damage, and other economic damages; damage to real and personal property; attorneys' fees and expenses; and court and/or administrative costs.

21. As a result of Defendants' wrongful conduct, Plaintiffs' Residence must be repaired and have declined and will continue to decline in value by at least the cost of repair.

**COUNT I**
**BREACH OF CONTRACT**

22. Plaintiffs incorporate by reference paragraphs 1 through 20 previously alleged as though fully set forth herein.

23. Defendant Bass Homes sold the Residence to the Plaintiffs built with Defective Chinese Drywall.

24. Defendant Bass Homes built the Residence with Defective Chinese Drywall.

25. Defendant Ace Hardware, by and through Ace Home Center, sold the Defective Chinese Drywall which was used to build the Residence.

26. Upon information and belief, Bass Homes purchased the Defective Chinese Drywall that it installed in the Residence from Ace Hardware, by and through Ace Home Center.

27. The Defective Chinese Drywall was expected to and did reach the Plaintiffs' Residence without any substantial change in the condition to which it was sold.

28. The Defective Chinese Drywall is defective and unreasonable dangerous and has caused damage because of the offensive odor and off gassing of sulfur compounds.

29. The Plaintiffs, acting as reasonably prudent persons, could not have discovered that Defective Chinese Drywall was defective as herein mentioned or perceived its danger because the defects in the drywall were latent.

30. Bass Homes breached the contract of warranty with Plaintiffs and the contract for sale, entitling Plaintiffs to an award of damages and performance of the contract.

31. By and through Ace Hardware's and Ace Home Center's acts, they have breached the implied covenant of good faith and fair dealing relative to contracts of insurance and warranty and sale, causing Plaintiffs' damages

32. In the alternative, the acts of the Defendants were grossly negligent, amounting to an independent tort, entitling Plaintiffs to an award of extra contractual damages.

33. Defendants Bass Homes, Ace Hardware and Ace Home Center are therefore strictly liable for the damages, punitive and actual, sustained by Plaintiffs.

34. As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, incidental, and other related expenses. Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Defendants, Bass Homes, Ace Hardware and Ace Home Center, awarding damages, interest, costs, and attorneys' fees and such other relief as this Court may deem just and proper.

**COUNT II**
**NEGLIGENCE AND GROSS NEGLIGENCE**

35. Plaintiffs incorporate by reference paragraphs 1 through 34 previously alleged as though fully set forth herein.

36. Defendants owed a duty to Plaintiffs to exercise reasonable care in exporting, importing, distributing, delivering, supplying, selling, inspecting and installing the Defective Chinese Drywall, and in constructing the Residence, to insure that the Residence were constructed with materials that would not harm the inhabitants or the other property within the

Residence. Defendants also had a duty to adequately warn Plaintiffs about any unsafe materials used in the construction of the Residence known by Defendants.

37. Defendants breached their duty to exercise reasonable care in exporting, importing, distributing, delivering, supplying, selling, inspecting and installing the Defective Chinese Drywall, and constructing the Residence by:

(a) causing and/or allowing Defective Chinese Drywall to be installed within the Residence;

(b) failing to investigate whether the Defective Chinese Drywall would harm inhabitants of the Residence or damage other property or work within the Residence;

(c) failing to warn Plaintiffs that the Residence contained Defective Chinese Drywall that could damage their property;

(d) failing to take reasonable measures that Defendants knew, or reasonably should have known, were necessary to protect the Plaintiffs from hazards associated with the Defective Chinese Drywall;

(e) failing to exercise reasonable care in their quality control practices;

(f) failing to comply with all applicable building codes;

(g) failing to take such other precautions as may be revealed through discovery.

38. If Defendants had exercised reasonable care, they would have investigated the Defective Chinese Drywall and its adverse effects prior to selling or installing the Defective Chinese Drywall used in the Residences. Further, Defendants could have warned Plaintiffs that the Defective Chinese Drywall may cause the problems described herein.

39. Defendants' failure to exercise reasonable care constitutes a breach of duty. The defects in the drywall were latent and could not have been reasonably discovered by Plaintiffs.

40. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs were harmed and have incurred damages, as described herein, including personal injuries and damage to other property in the Residence.

41. Due to Defendants' negligence, Plaintiffs have sustained damages, including, but not limited to the diminution in property value, all costs associated with the removal and replacement of the Defective Chinese Drywall, all costs necessary to reconstruct Plaintiffs' Residence, and all costs associated with the repair or replacement cost of damaged property in the residence.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Defendants, awarding damages, interest, costs, and attorneys' fees and such other relief as this Court may deem just and proper.

**COUNT III**
**BREACH OF IMPLIED WARRANTIES AND OTHER WARRANTIES**

42. Plaintiffs incorporate by reference paragraphs 1 through 41 previously alleged as though fully set forth herein.

43. Notwithstanding the breach of the express warranty at issue herein, Bass Homes, through the sale of the subject residence, and the failure to remedy such defects, have breached implied warranties of fitness for a particular purpose and merchantability with respect to the sale of the defective residence.

44. Notwithstanding the breach of the express warranty at issue herein, Ace Hardware, by and through Ace Home Center, through the sale of the drywall installed in the Residence, and the failure to remedy such defects, have breached implied warranties of fitness for a particular purpose and merchantability.

45. Such warranties include, but are not limited to, the warranties set forth in § 83-58-5, et seq., Mississippi Code of 1972, Annotated. All such conditions precedent to enforcement of such warranties have been fulfilled.

46. The material composition of the Defective Chinese Drywall in the Residence renders it inferior to American-made drywall and unfit for ordinary use in residential construction.

47. Defendants knew, or should have known, that the Defective Chinese Drywall that Bass Homes purchased from Ace Hardware, by and through Ace Home Center, and that Bass Homes installed, was going to be used in the construction of the Residence. Ace Hardware and Ace Home Center also knew, or should have known, that residential homeowners, such as Plaintiffs, were foreseeable users of the Defective Chinese Drywall and that residential homeowners, such as Plaintiffs, required and expected the drywall to be fit for the ordinary purpose for which it was intended.

48. Unlike American-made drywall, the Defective Chinese Drywall in the Residence emits several sulfur compounds, including, but not limited to, carbon disulfide, carbonyl sulfur, and hydrogen sulfide. The Defective Chinese Drywall in the Residence is also suspected to contain several other impurities. The sulfur based compounds emitted have created a sulfur odor which renders the drywall unfit for the ordinary purpose for which it was intended.

49. The Defective Chinese Drywall emits these sulfur based compounds because it suffers from either a defective manufacturing and/or mining process.

50. The corroded items described above are also unfit for the ordinary purpose for which they were intended. Plaintiffs are uncertain as to the cause of the corrosion and have not engaged in any act or activity which has led to or caused the corrosion in any way.

51. The odor caused by the use of Defective Chinese Drywall in the Residences renders the Residences unfit for the ordinary and general purpose of residential living.

52. In addition, the accompanying corrosion of pipes, wiring, metal finishes and fixtures, including their HVAC system, and experienced failures of electronic products, including televisions and computers in the home also renders the Residence is unfit for the ordinary and general purpose of residential living.

53. As a result of the use of Defective Chinese Drywall, the Residence does not meet the ordinary, normal standards reasonably to be expected of living quarters of comparable kind and quality.

54. Despite having knowledge as to the use of inferior drywall in the home, Defendant Bass Homes sold the Residence to the Plaintiffs and built the Residence with Defective Chinese Drywall.

55. As a result of Bass Homes' actions, Plaintiffs have suffered and will continue to suffer damage, including but not limited to: economic damages, including and other economic damages; damage to real and personal property; attorneys' fees and expenses; and court and/or administrative costs.

56. As a result of Bass Homes' breach of the implied warranty of habitability and fitness, Plaintiffs are entitled to have the purchase price of the Residence restored to them by Bass Homes, together with any expenses there from, and for those damages and losses set forth above.

57. As a result of Ace Hardware's and Ace Home Center's actions, Plaintiffs have suffered and will continue to suffer damage, including but not limited to: economic damages, including and other economic damages; damage to real and personal property; attorneys' fees and expenses; and court and/or administrative costs.

58.     As a result of Ace Hardware's and Ace Home Center's breach of the implied warranty of habitability and fitness, Plaintiffs are entitled to have the purchase price of the Residence restored to them by Bass Homes, together with any expenses there from, and for those damages and losses set forth above.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Bass Homes, Ace Hardware and Ace Home Center, awarding damages, interest, costs, and attorneys' fees and such other relief as this Court may deem just and proper.

## COUNT IV
## NEW HOME WARRANTY ACT

59.     The allegations of paragraphs 1 through 58 above are incorporated herein as if reproduced in full.

60.     Defendants failed to comply with Mississippi Code (Annotated) of 1972 §§ 83-53-1 through 83-53-17 by failing to construct the House to the standards contained in the building, mechanical-plumbing and electrical codes in effect in the county, state and federal Standard Building Codes, placing the House at risk for electrical fire and damaging the walls and other structural elements.

61.     The damages to Plaintiffs, including, but not limited to, those described herein were caused by Defendants' defiance of the New Home Warranty Act.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Bass Homes, Ace Hardware and Ace Home Center, awarding damages, interest, costs, and attorneys' fees and such other relief as this Court may deem just and proper.

**COUNT V**
**FAILURE TO PROCURE A WARRANTY**

62. The allegations of paragraphs 1 through 61 above are incorporated herein as if reproduced in full.

63. Alternatively, if such warranty as represented by Defendants was not procured, Defendants are liable to Plaintiffs as set forth herein. At material times, by reason of Defendants' actions, Defendant entered into a contractual agreement with Plaintiffs and was under a non-delegable duty to procure the warranty coverage sold to Plaintiffs, or, in the alternative, to procure for Plaintiffs like or similar warranty coverage. If such warranty coverage was not procured, Defendants breached such contractual agreements and duties to Plaintiffs, entitling Plaintiff to performance of the contract of warranty by Defendants, in addition to all such other damages as set forth herein.

**COUNT VI**
**CLAIM FOR DECLARATORY RELIEF**

64. The allegations of paragraphs 1 through 63 above are incorporated herein as if reproduced in full.

65. In addition to seeking damages from Defendants, Plaintiffs request that this Court declare the rights, status and legal relations of the parties under the contract of sale at issue, and the contract of warranty at issue, specifically the amount of benefits due and payable to Plaintiffs under the warranty at issue, pursuant to M.R.C.P. 57 (Declaratory Judgments). Further, and additionally or alternatively, Plaintiff would show that the language of the warranty at issue is vague, ambiguous and capable of more than one meaning, and that such warranty should be construed against Defendants, and that as a result, this Court should find and declare coverage for the specific claims of Plaintiffs as set forth herein.

**COUNT VI**
**FAILURE TO WARN**

66. The allegations of paragraphs 1. through 65. above are incorporated herein as if reproduced in full.

67. Defendants, Bass Homes, Ace Hardware and Ace Home Center, as the builder and a distributor of materials for the building of residential homes, have a duty to disclose hidden hazards in the home, especially when such hazards effect the safety of the home's occupants, upon acquiring knowledge of that hazard.

68. Defendants knew that Defective Chinese Drywall was used in the construction of the home and had or should have had such knowledge immediately upon receiving the Defective Chinese Drywall at the job-site and installing it in the home.

69. Defendants knew or should have known that Defective Chinese Drywall was an inferior product, not fit for ordinary use, and knew or should have known this immediately upon receiving the Defective Chinese Drywall at the job-site and installing it in the home.

70. Defendants knew or should have known that Defective Chinese Drywall posed a serious health risk to residents of homes wherein Defective Chinese Drywall was used.

71. Despite knowledge of long standing quality concerns regarding the use and installation of Defective Chinese Drywall, Defendant caused Defective Chinese Drywall to be installed in the home.

72. Despite such knowledge, Defendants failed to warn the Plaintiffs of the use of Defective Chinese Drywall in the home or of the hazards associated with Defective Chinese Drywall used in the home.

73. Had Defendants informed Plaintiffs of the use of Defective Chinese Drywall in the home or of the hazards associated with Defective Chinese Drywall used in the home, Plaintiffs would not have purchased the home.

74. Had Defendants informed Plaintiffs of the use of Defective Chinese Drywall in the home or of the hazards associated with Defective Chinese Drywall used in the home, Plaintiffs would not have suffered the damages alleged herein, and/or could have taken steps necessary to protect themselves and their property against damage.

75. As a result of Defendant's actions, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to: economic damages; damage to real and personal property; past, present and future physical and mental pain and suffering; past, present and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and court and/or administrative costs.

76. Due to Defendant's failure to warn Plaintiffs as to the hidden hazards in the home, Defendant is liable to Plaintiff for those damages and losses set forth above.

## COUNT VII
## FRAUD- BASS HOMES, INC.

77. The allegations of paragraphs 1 through 76 above are incorporated herein as if reproduced in full.

78. Despite knowledge of the use of inferior drywall in the home, Bass Homes sold the home to the Plaintiffs.

79. As a result of Bass Homes' nondisclosure, silence, and misrepresentations, Defendants intentionally gained an unjust advantage over Plaintiffs.

80. Had Bass Homes' advised Plaintiffs of the use of inferior drywall in the home, Plaintiffs would not have purchased the home.

81. As a result of Bass Homes' actions, Plaintiffs have suffered and will continue to suffer damage and injury, including, but not limited to: economic damages; damage to real and personal properly; past, present and future physical, and mental pain and suffering; past, present and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and Court and/or administrative costs.

82. As a result of Bass Homes' fraud, Plaintiffs have the right to rescission of the original sale from Bass Homes to Plaintiffs, and for those damages and losses set forth above.

## COUNT IX
## INTENTIONAL / NEGLIGENT MISREPRESENTATION

83. The allegations of paragraphs 1 through 82 above are incorporated herein as if reproduced in full.

84. Despite knowledge of the use of the inferior drywall in the home, Defendants sold the home to Plaintiffs.

85. Plaintiffs justifiably relied on Defendants' intentional or negligent representation.

86. Had Defendants advised Plaintiffs of the use of inferior drywall in the home, Plaintiffs would not have purchased the home.

87. As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to economic damages; damage to real and personal property; past, present and future physical and mental pain and suffering; past, present

and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and court and/or administrative costs.

**COUNT X**
**ALTERNATIVE PLEADING OF**
**BREACH OF WARRANTY OF FITNESS**

88. The allegations of paragraphs 1 through 87 above are incorporated herein as if reproduced in full.

89. The use of inferior drywall in the home renders the home unfit for the purpose of residential living.

90. Despite having knowledge as to the use of inferior drywall in the home, Defendants sold the home to Plaintiff.

91. As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to: economic damages; damage to real and personal property; past, present and future physical and mental pain and suffering; past, present and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and court and/or administrative costs.

92. As a result of Defendants' breach of the warranty of fitness, Plaintiffs are entitled to have the purchase price of the home restored to them by Defendants, together with any expenses there from, and for those damages and losses set forth above.

## COUNT XI
## UNJUST ENRICHMENT

93. The allegations of paragraphs 1 through 92 above are incorporated herein as if reproduced in full.

94. As the builder of the home and supplier of drywall for the construction of Plaintiffs' house, Defendants knew that Defective Chinese Drywall was used in the construction of the home and had or should have had such knowledge immediately upon receiving the Defective Chinese Drywall at the job-site and installing it in the home. Defendants knew or should have known that Defective Chinese Drywall was all inferior product, not fit for ordinary use, and knew or should have known this immediately upon receiving the Defective Chinese Drywall at the job-site and installing it in the home.

95. Had Defendants disclosed to Plaintiffs the use of Defective Chinese Drywall in the construction of the home, Plaintiffs would not have purchased the home.

96. As a result of Defendants' acts and/or omissions in concealing the presence of Defective Chinese Drywall in Plaintiffs' home, Defendants unjustly enriched without justification or cause.

97. As a result of Defendants' acts and/or omissions in concealing the presence of Defective Chinese Drywall in Plaintiffs; home, Plaintiffs were unjustly impoverished without justification or cause.

98. As a result of the foregoing, Defendants are liable to Plaintiffs for the losses suffered by them.

**COUNT XII**
**THIRD PARTY BENEFICIARY**

99. The allegations of paragraphs 1 through 98 above are incorporated herein as if reproduced in full.

100. Bass Homes entered into express contracts whereby its subcontractors performed work on the Residence.

101. Plaintiffs were the intended beneficiary of the contracts between Bass Homes and its subcontractors.

102. Bass Homes knew that Plaintiff would benefit from their contracts and could and would be harmed by the breach of those contracts by Bass Homes, its subcontractors, Ace Hardware and Ace Home Center.

103. The subcontractors breached their contracts with Bass Homes by failing to carefully and properly complete the work on Plaintiffs' home in a good and workmanlike manner in compliance with applicable building codes and construction industry standards. Therefore, Plaintiffs are entitled to damages as the third party beneficiary to Bass Homes' contracts based on damages suffered by Plaintiffs as a result of the breaches of those contracts.

104. As a direct and proximate result of the actions of the Bass Homes. Ace Hardware and Ace Home Center, and Fictitious Defendants, which combined and concurred to form the basis of this suit, Plaintiffs have suffered damages as set forth in the above Statement of Facts.

**COUNT XIII**
**DECEPTIVE TRADE PRACTICES**

105. The allegations of paragraphs 1 through 104 above are incorporated herein as if reproduced in full.

106. Defendants' actions constitute violations of the Deceptive Trade Practices Act as defined in Title 75, Section 24 of the Mississippi Code (1972).

107. Plaintiffs demand judgment be entered against Defendants in an amount equal to the funds improperly received by Defendants as the result of its deceptive acts, plus equitable relief.

**COUNT XIV**
**RESPONDEAT SUPERIOR**

108. The allegations of paragraphs 1 Through 107 above are incorporated herein as if reproduced in full.

109. At all relevant times, agents and/or employees of Defendants who were involved with the construction and/or repairs of the House were in the course and scope of the duties of their corporate and respective employments.

110. Defendants are vicariously liable for the acts and omissions of agents and/or employees who worked on the House. Defendants knew, or in the exercise of reasonable caution should have known, their respective and corporate duties to Plaintiffs were non-delegable.

111. With the filing of Answers and Defenses, Defendants are given the opportunity to address vicarious liability and provide a good faith basis for same under controlling Mississippi law and to provide any documents or contracts which support their position(s).

112. Plaintiffs reserve the right to amend their Complaint after reviewing the pleadings and/or discovery of Defendants to include individual defendants, personnel, and/or corporate or business entities.

**COUNT XV**
**CONSTRUCTIVE FRAUD**

113. The allegations of paragraphs 1 through 112 above are incorporated herein as if reproduced in full.

114. Defendants respectively, corporately and through agents and/or employees breached individual and corporate non-delegable duties—fiduciary and otherwise—to Plaintiffs, thereby committing constructive fraud.

115. As direct and proximate results of constructive fraud by Defendants, Plaintiffs sustained damages including but not limited to those stated herein.

**COUNT XVI**
**PRIVATE NUISANCE**

116. The allegations of paragraphs 1 through 115 above are incorporated herein as if reproduced in full.

117. Private nuisance is sometimes "used interchangeably" with a claim for interference with the use and quiet enjoyment of property. *Leaf River Forest Products, Inc. v. Ferguson*, 662 So.2d 648, 662 (Miss. 1995). "A private nuisance is defined as a non-trespassory invasion of another's interest in the use and enjoyment of his property." *Young v. Weaver*, 32 So.2d 202, 205 (Miss. 1947).

118. "A private nuisance may be shown by conduct causing an invasion of another's interest in the private use and enjoyment of land that is either: (1) intentional and unreasonable . . . ." Williams v. King, 860 So.2d 847, 851 (Miss. App. 2003).

119. Plaintiffs allege the inability to use their home is a continuing problem which rises to a private nuisance.

**COUNT XVII**
**COMPENSATORY DAMAGES**

120. The allegations of paragraphs 1 through 119 above are incorporated herein as if reproduced in full.

121. But for the negligence and willful omissions of Defendants, Plaintiffs would have the home that they purchased.

122. Defendants breached duties and directly and proximately caused unreasonable damages, including, but not limited to, those listed herein, entitling Plaintiffs to an award of compensatory damages.

**COUNT XVIII**
**PUNITIVE DAMAGES**

123. The allegations of paragraphs 1 through 122 above are incorporated herein as if reproduced in full.

124. Plaintiffs allege the limitations on damages as set forth in Mississippi Code (Annotated) of 1972 § 11-1-65—if they apply—are unconstitutional because they violate both the Mississippi Constitution and the Constitution of the United States, including, but not limited to, the Equal Protection and Due Process Clauses of these Constitutions.

125. Plaintiffs allege the commissions and omissions by Defendants and their respective and/or corporate agents and/or employees were so willful, grossly negligent and wanton as to show a disregard for the rights of others and therefore give rise to an award of punitive damages.

**COUNT XVIX**
**DAMAGES**

126. The allegations of paragraphs 1 through 125 above are incorporated herein as if reproduced in full.

127. As direct and proximate results of the respective and/or collective omissions and grossly improper and negligent commissions and omissions by Defendants and/or their

respective and/or corporate agents and/or employees, Plaintiffs suffered actual and compensatory damages, including, but not limited to, the following.

a) Psychological and emotional trauma, distress, anxiety, and mental suffering;
b) Loss of enjoyment of life;
c) Loss of use of her House;
d) Diminution of value of the House
e) Attorneys' fees;
f) Legal interest; and
g) Other damages to be proven at trial.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

Plaintiffs pray the Court to enter judgment against Defendants and in favor of Plaintiffs and to award the following relief:

a) Judgment against Defendants for any and all losses incurred as direct and proximate results of the negligent conduct and other breaches of duty by Defendants, in an amount to be determined at trial;

b) Compensatory damages, prejudgment and post-judgment interest, attorneys' fees and costs reasonably and necessarily incurred during the course of litigation, in an amount to be determined at trial;

c) Judgment against Defendants for damages in an amount to make her and her House whole insofar as a pecuniary amount can accomplish that purpose, in an amount to be determined at trial;

d) Punitive damages against Defendants for gross negligence and/or breach of contract;

e) Such other relief as this Honorable Court deems just and proper.

RESPECTFULLY SUBMITTED this, the 2nd day of October, 2013.

JASON S. and CASSIE D. HERRINGTON,
Plaintiffs

By and Through Their Attorneys,
LUCKEY & MULLINS, PLLC

BY: /s/ Stephen W. Mullins
STEPHEN W. MULLINS

ATTORNEYS FOR PLAINTIFFS:

STEPHEN W. MULLINS (MS Bar No. 9772)
LUCKEY & MULLINS, PLLC
2016 Bienville Blvd., Suite 102 (39564)
Post Office Box 990
Ocean Springs, MS 39566
Phone: 228.875.3175
Fax: 228.872.4719
smullins@luckeyandmullins.com

Of Counsel:

**Daniel K. Bryson** (*pro hac vice*)
**WHITFIELD BRYSON & MASON LLP**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035

**CERTIFICATE OF SERVICE**

I, STEPHEN W. MULLINS, do hereby certify that I have on this date electronically filed the above and foregoing Amended Complaint with this Court using the ECF filing system which has caused notification of such filing to be sent to registered counsel of record. A copy of said Amended Complaint will also be served on the registered agent for Ace Home Center, Inc.

THIS, the 2nd day of October, 2013.

/s/ Stephen W. Mullins
STEPHEN W. MULLINS

STATE OF ALABAMA

# BUILDING CONTRACT
## BASS HOMES, INC.

This agreement made this 15TH day of JULY, 2008, between JASON HERRINGTON AND CASSIE HERRINGTON, hereinafter designated "Buyer" whose residence is 20608 CAMERON LANE and Bass Homes, Inc., having its principal place of business at P. O. Box 344, Stapleton, Alabama, 36578, hereinafter designated "Seller."

(1)

WITNESSETH:

The Seller agrees to build according to the plans and specifications on this sheet, or sheet attached hereto, which is by reference made a part hereof, on the property of the Buyer, located at: HURLEY, MS.

(2)

Description of construction to be performed: BUILD A 50' X 56' X 59' ONE AND ONE HALF STORY HOME, TO BE BUILT ACCORDING TO BASS HOMES, INC. "HALLMARK GOLD" MODEL. FOR SPECIAL CHANGES AND DETAILS SEE EXHIBITS A, B, C, D, E AND F ATTACHED HERETO. (WITHOUT GARAGE: 50' X 56')

Exhibits A, B, C, D, E and F dated JULY 15TH 2008 and attached hereto, before execution hereof, are made a part of this contract.

Buyer covenants and agrees to pay for said project (work) the sums and amounts herein set forth, pursuant to the following terms: TWO HUNDRED TWENTY THOUSAND AND 00/100

| | |
|---|---|
| (1) TOTAL PRICE | $ 220,000.00 |
| (2) DOWN PAYMENT | $ 1,000.00 |
| (3) UNPAID BALANCE | $ 219,000.00 |

Details of Payments: BUYER(S) TO OBTAIN A CONVENTIONAL MORTGAGE LOAN, BUYER(S) TO PAY ALL CLOSING COSTS, DISCOUNT POINTS AND PRE-PAIDS. BUYER(S) TO OBTAIN A 100% CONSTRUCTION LOAN WITH PROGRESS PAYMENTS DURING CONSTRUCTION OF HOME, SAID PAYMENTS TO BE AS PER STANDARD BANK POLICY. FINAL PAYMENT DUE UPON COMPLETION OF HOME.

(3)

This instrument, and the other instruments signed in connection with this transaction contain the price and all the terms and conditions agreed upon by the Buyer and Seller, and no statement, representation or promise not set forth herein or in any of said instruments has been made to induce either party to enter into this transaction. In the event an unsatisfactory credit report on the Buyer or any other information unsatisfactory to the Seller is received prior to beginning construction of the house, Seller at its option may within 10 days thereafter cancel this agreement UPON returning to Buyer any deposit. In the event Buyer fails to perform any activities or duties required of Buyer (e.g., failure to prepare lot for construction, or, failure to obtain an unconditional letter of commitment for funds to purchase home or any contents of this contract, or, failure to deliver proof of all funds if cash purchase applies) which failure prevents Seller from commencing construction for a period of sixty (60) days from the date hereof, Seller may cancel this contract at its option, regardless of any assistance that seller may have provided in financing. Should seller not exercise their option to cancel buyer at 60 day requirement then seller can negotiate with buyers to increase cost of this contract(should seller chose to do so, provided that construction has not commenced by seller at buyers property described herein (e.g., starting foundation work on home). If buyer chooses not to agree an additional cost then seller may cancel this contract and retain buyers initial deposit of money. In the event the Buyer does not have good and marketable title to the property described in paragraph 1, Seller may at its option, elect to incur all expenses reasonably necessary to obtain good and marketable title in the Buyer, and Buyer shall forthwith reimburse Seller for all expenses so incurred by Seller. In the event the house built by Seller at the location on the ground designated by Buyer is not entirely on the property of Buyer, then the Buyer agrees to pay Seller any and all costs, damages, losses and expenses, including reasonable attorneys' fees and court costs, suffered or incurred as a result thereof by Seller. The above expenses incurred by the Seller shall constitute a lien against said property of the Buyer until paid. No completion date has been represented or is a part of this contract. All provisions of this contract are subject to approval by an officer of BASS HOMES, INC., Stapleton, AL 36578.

In those homes where pilings are specified, pilings shall be to a depth determined by Seller to be structurally safe and sound. In the event the Buyer requires a depth in excess of that deemed by Seller to be sufficient and structurally safe and sound, this contract, at the option of Seller, shall be declared null and void, or the contract may be re-negotiated to include the cost of drilling to a deeper depth. Commencement of construction and commencement of drilling pilings shall not be deemed a waiver of this position.

The house to be constructed is not designed for unusual surface conditions and/or sub-surface conditions in that no warranty is made that the house is designed for conditions that are abnormal, that no testing of the soil will be conducted by the Seller.

Failure of this Seller or Subcontractor to pay those persons supplying material or services to complete this contract can result in the filing of a lien on the above described property which is the subject of this contract.

(4)

Seller promises to furnish Buyer at closing a one-year limited warranty on the dwelling, a copy of which is attached here as Exhibit " F "

(5)

ARBITRATION AGREEMENT

ANY DISPUTE, CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE BREACH THEREOF, OR ARISING OUT OF ANY PRIOR DEALINGS BETWEEN SELLER AND BUYER OR ARISING OUT OF ANY FUTURE DEALINGS BETWEEN SELLER AND BUYER, SHALL BE SETTLED BY ARBITRATION IN THE STATE OF ALABAMA IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION (THE "ARBITRATION RULES OF THE AAA"), AND JUDGMENT UPON THE AWARD RENDERED BY THE ARBITRATOR(S) MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF;

THE PARTIES FURTHER AGREE THAT SHOULD ONE PARTY INVOKE ARBITRATION IN ACCORDANCE WITH THIS AGREEMENT, THE OTHER PARTY SHALL BRING TO THE ARBITRATION PROCESS ANY CLAIM OR COUNTERCLAIM WHICH IT MAY HAVE AGAINST THE INVOKING PARTY, WHETHER DEEMED TO BE COMPULSORY OR PERMISSIVE AT LAW AND, THE FAILURE TO BRING SUCH CLAIM OR COUNTERCLAIM SHALL CONSTITUTE A WAIVER OF AND A BAR TO THE BRINGING OF SUCH CLAIM OR COUNTERCLAIM IN ANY SUBSEQUENT ARBITRATION OR LEGAL ACTION.

SELLER AND BUYER UNDERSTAND AND AGREE (I) THAT EACH OF THEM IS WAIVING RIGHTS TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO A JURY TRIAL; (II) THAT PRE-ARBITRATION DISCOVERY PROCEEDINGS IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS; (III) THE ARBITRATOR'S AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING; AND (IV) EITHER PARTY'S RIGHT TO APPEAL OR SEEK MODIFICATION OF RULINGS BY THE ARBITRATOR IS STRICTLY LIMITED. THE VENUE FOR ARBITRATION SHALL BE IN BALDWIN COUNTY, ALABAMA.

IN WITNESS WHEREOF, the Buyer and Seller have hereunto set their hands and seals at STAPLETON, ALABAMA, the day and year first above written.

(City) (State)

*CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.*

BASS HOMES, INC.
SELLER

(BUYER)

BY ____________________
Title

(BUYER)

EXHIBIT
A

EXHIBIT A
BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL 36578

JASON HERRINGTON AND CASSIE HERRINGTON — JULY 15TH 2008
BUYER(S) NAME(S) — DATE

NOTICE
ANY HOLDER OF THIS CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE BUYER COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE BUYER SHALL NOT EXCEED AMOUNTS PAID BY THE BUYER HEREIN.

BUYER'S RIGHT TO CANCEL
IF THIS AGREEMENT WAS SOLICITED AT YOUR RESIDENCE AND YOU DO NOT WANT THE GOODS OR SERVICES, YOU MAY CANCEL THIS AGREEMENT BY MAILING A NOTICE TO THE SELLER. THE NOTICE MUST SAY THAT YOU DO NOT WANT THE GOODS OR SERVICES AND MUST BE MAILED BEFORE MIDNIGHT OF THE THIRD BUSINESS DAY AFTER YOU SIGN THIS AGREEMENT. THE NOTICE MUST BE MAILED TO: LEGAL DEPARTMENT, BASS HOMES, INC., HIGHWAY 31, P. O. DRAWER 340, STAPLETON, ALABAMA 36578. YOU ARE ALSO ENTITLED TO RECEIVE A REFUND OF ANY DOWN PAYMENT OR OTHER CONSIDERATION IF YOU CANCEL.
NOTICE TO THE BUYER (a) DO NOT SIGN THIS BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. (b) YOU ARE ENTITLED TO AN EXACT COPY OF THE PAPER YOU SIGN.
THE BUYER ACKNOWLEDGES THAT HE RECEIVED A COPY OF THIS AGREEMENT AND THAT BEFORE SIGNING THE SAME, THE CONTRACT CONTAINED THE ENTIRE TERMS AND ALL BLANK SPACES HAD BEEN FILLED IN PRIOR TO THE SIGNING OF THE SAME.

These presents constitute a part of the Building Contract of even date attached hereto. The following options and additions, to-wit:
HOUSE TO BE BUILT ACCORDING TO PLANS FURNISHED BY BASS HOMES, INC.
Note to Buyers: Bass Homes, Inc., may at its election require water and sewer to be installed on mortgaged property before construction begins or before completion of rough plumbing in home. In the event that water and sewer with connections to home is not completed at Bass Homes, Inc., request, Sellers and Buyers agree that Bass Homes, Inc., will have full rights to install water supply and sewer with connections and Buyers then agree to pay in full normal and customary charges of goods.

FOUNDATION: Elevation of lot shall not have more than a 24" slope over the longest point or the longest dimension of house. If so, Buyer will be responsible for any additional material and labor required for foundation. NOTE: Builder shall negotiate additional cost if any with customer before foundation is installed. Any additional depth of foundation (piers, pilings, or slab) or width of footings required by any building governmental agencies, buyers, or builder's discretion shall all be on a cost plus basis unless pre-charged and written in contract total price.

1. Foundation will be raised type with continuous 8" block wall around perimeter of home only. Note: All porches will be open piers. If exterior is Brick Veneer, foundation will be piers only. Foundation height of home to be at sellers discretion and building codes if enforced. Buyers are responsible to determine if they are in a flood zone and shall disclose to seller in writing before construction begins if a required foundation height is necessary.
2. Treated foundation seals will be installed; all porch seals and porch floor will be treated.
3. 3/4" tongue and groove plywood flooring.

EXTERIOR OF HOUSE:
1. Exterior walls will have OSB and housewrap sheeting under siding.
2. Exterior siding hardiplank or comparable unless otherwise stated in contract.
3. All porch rails, fascias, and window trim will be pressure treated.
4. Roof will have all framing 2' o.c.
5. Roof will have standard fiberglass shingles, unless otherwise stated in contract.
6. Exterior doors will be metal insulated.
7. Exterior windows will be insulated white colonial style. Tilt window sash's are optional
8. Exterior of house will be painted latex.
9. All homes with vinyl siding or hardy plank siding will have 7/16" OSB wafer board in lieu of standard styrofoam.

INTERIOR:
1. Interior of home will have 3 ½" insulation in exterior walls and 6" fiberglass insulation in attic exposed ceiling areas only.
2. Interior wall will have ½" sheetrock throughout entire house.
3. Cabinet faces and doors only will be 3/4" Birch plywood or comparable material with laminated countertops. All white lacquer cabinets will be 5/8" MDF or HDF, including raised panel doors. All cabinet backs, ends, shelves or other components in cabinets shall be equal to Bass Homes, Inc., model home.
4. Standard interior doors and trim.
5. Vinyl flooring in kitchen, utility, and all baths, no wax.
6. Carpet in all other areas of home from Bass Homes, Inc., samples.
7. Fluorescent light in kitchen area.

STANDARD OPTIONS OF HOUSE:
1. PLUMBING: Fiberglass tub and shower units/stainless steel kitchen sink/standard vanity porcelain sinks, standard white fixtures.
2. ELECTRICAL: 200 amp service/standard copper and aluminum wiring/standard light fixtures.
3. HEAT AND AIR: Standard electric central forced heat and air. 42" Metal insert fireplace (without blowers) in homes that are shown in Bass Homes, Inc. sales brochure only.
4. PAINT:
   A. Exterior oil base stain/interior latex paint on walls. Standard color all interior walls (soft white) Devoe Brand or something equivalent, all paint and stain from Bass Homes, Inc., samples.
   B. All interior walls in home will be one color (soft white).
   C. All trim work and cabinets will be stained or white.
   D. All exteriors will be painted.
   E. All exteriors will have one trim color for doors and shutters only. Any other trim colors will be additional costs. (Hand rails, porch rails, corner boards, and eaves will be stained or painted same color as exterior of home).
5. All materials in excess of job will remain the property of Bass Homes, Inc.
6. Buyers are responsible for removal of construction debris.
7. All utilities are stubbed out only to exterior (Electrical Service Wire, Gas, and Plumbing). See Exhibit "B" for details.

(SELLER, BUILDER) — (BUYER, OWNER)

(BUYER, OWNER)

EXHIBIT B - PART 1

BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL 36578

DATE: JULY 15TH 2008

NAME OF BUYER(S): JASON HERRINGTON AND CASSIE HERRINGTON

TYPE OF HOME: CEMPLANK MODEL: HALLMARK GOLD

OWNER'S CHOICE OF INTERIOR & EXTERIOR COLORS:

EXTERIOR: HARDIPLANK OR COMPARABLE ______ CEDAR ______ BRICK ______

SIDING COLOR ______

STANDARD TRIM COLOR (DOOR & SHUTTERS ONLY) ______

DELUXE TRIM COLOR (DOOR, SHUTTERS, FASCIA & WINDOW TRIM) THIS ITEM IS $950.00 ADDITIONAL COST

SHINGLES ______ WINDOWS: BRONZE ______ WHITE ______

BRICK COLOR ______

MORTAR COLOR: GREY ______ DARK MORTAR ______ OTHER ______

INTERIOR:

KITCHEN/DINING

COUNTER TOP ______

STANDARD RANGE HOOD: ALMOND ______ WHITE ______ STAINLESS ______

CONNECTION FOR MICROWAVE: ☐ YES or ☐ NO

VINYL ______

UTILITY:

VINYL ______

MASTER BATHROOM:

VANITY TOP ______

VINYL ______

HALL BATHROOM:

VANITY TOP ______

VINYL ______

CARPET:

$250.00 ADDED COST FOR HARDWOOD FLOORING FRONT ENTRANCE: ______

LIVING ROOM ______

BEDROOM #1 ______

BEDROOM #2 ______

BEDROOM #3 ______

BEDROOM #4 ______

(NOTE: Vinyl throughout home, other than kitchen, dining and baths cost an additional $2.00 per sq. ft.)

FIREPLACE STONE: ______

(NOTE: The fireplace in all houses with cathedral ceilings will have stone to mantle height.)

FIREPLACE MANTLE BACKING BRACE (2" X 4"): YES ______ OR NO ______

CABINETS STAINS OR COLOR: ______

ALL CABINET DOOR AND ANY CABINET UPGRADES MUST BE IN CONTRACT ON "EXHIBIT C" AND ALSO PROOF OF PURCHASE ON BASS HOMES COST BREAK DOWN SHEET.

INTERIOR TRIM STAIN OR COLOR: ______

CABINET HARDWARE ______

*ONE CHOICE OF CARPET COLOR
*TWO COLORS FOR VINYL
*TWO COLORS FOR VANITY AND COUNTER TOP

VINYL FLOORING WILL BE INSTALLED IN BATHROOMS, KITCHEN, UTILITY, AND BREAKFAST AREAS ONLY ANY VINYL INSTALLED IN ANY OTHER AREAS, BUYER(S) AGREE TO PAY AN ADDITIONAL $2.00 PER SQUARE FOOT FOR UNDERLAYMENT.

______
(BUYER, OWNER)

______
(BUYER, OWNER)

EXHIBIT B - PART 2

BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL 36578

BUYER(S) JASON HERRINGTON AND CASSIE HERRINGTON

DATE: JULY 15TH 2008

1. Ceiling fan outlets ONLY WHERE: LIVING AND ALL BEDROOMS

2. Ceiling fan installation ONLY WHERE: NONE

3. Dishwasher cutout-? YES X OR NO___

4. Dishwasher hookup? YES___ OR NO X

5. Ice-maker line only installed: YES X OR NO___

6. Cabinet space for standard 30" free standing electric stove YES___ OR NO___

   Drop-in stove: YES___ OR NO___

7. Gas utilities: YES___ OR NO___

8. Termite Treatment; one twelve month bond: YES X OR NO___
   (No termite treatment shall be provided for homes on pilings.)

9. Electric hookup: Standard overhead___ OR underground___

10. Clean up debris and haul off? NO. If yes, additional costs must be added to total price and Exhibit C of Contract.

11. Payment towards Builder's Risk Insurance during construction period.
    YES___ OR NO X
    **Buyer(s) agree(s) to furnish Builder's Risk policy payable to Seller and if necessary, also to Lender or Buyer(s) prior to and during construction of home until construction of home is complete.**

12. All utilities are stubbed out only to exterior (electric service wire, gas, plumbing, and sewer).

13. Gutters, parquet flooring and mini-blinds not included in standard price of home.

(I) Buyer(s) agree that all special changes to home plans have been made and incorporated into this contract. Buyer(s) further agrees that all color selections and selections of all goods have been made by Buyer(s), and upon execution of this Contract, both Parties agree that no changes will be made.

(II) Buyer(s) agree(s) that upon substantial completion of home, Buyer(s) and a Bass Homes, Inc., representative will do a walk through inspection of home and a punch list will be written up which is mutually agreeable by both parties. Buyer(s) hereby agree(s) that the initial walk through and resulting punch list will be the only walk through and punch list. Seller hereby agrees to correct or complete the items on the punch list and once finished, Buyer(s) agree(s) to immediately pay Seller the entire balance owed to the Seller under the contract or otherwise. If Seller should agree to do any extra work after the initial punch list, this work shall not commence until Seller has been paid in full. All other matters will be strictly related to the standard one year Builder's Warranty styled as a "Completion Certificate and Owner's Acceptance".

(III) Buyer(s) agree(s) that he and/or she shall not be allowed to take possession of the home until such time as Seller has been paid in full under the contract and has also been paid any additional cost, if any, which has been added to the original contract price. Buyer(s) acknowledge(s) that, until such time as Seller has been paid in full the contract price and signed a "Completion Certificate and Owner's Acceptance," Buyer(s) will not be allowed to occupy or store any of his and/or her possessions in said home. In the event that Buyer(s) fail to the agreed terms above, Buyer(s) shall in this agreement, pay to the Seller a sum of $1,000.00 per month rent for possessing the newly constructed home for storing any of Buyer(s) goods or occupying the home in any manner. The monthly $1,000.00 rate will be paid to Seller until Seller is paid in full.

_______________________ (SELLER, BUILDER)

_______________________ (BUYER, OWNER)

_______________________ (BUYER, OWNER)

EXHIBIT C
BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL 36578

NAMES OF BUYER(S): JASON HERRINGTON AND CASSIE HERRINGTON

DATE: JULY 15TH 2008

TYPE OF HOME: CEMPLANK

NAME OF HOME BEING BUILT: HALLMARK GOLD

PLEASE LIST ANY CHANGES OTHER THAN "STANDARD" THAT IS STATED IN THIS CONTRACT REGARDLESS OF HOW SMALL OR LARGE THE CHANGE MAY BE. ANYTHING WRITTEN IN EXHIBIT "C" WILL OVERRIDE THE "STANDARD" CONTRACT AND BLUEPRINTS.

1. INSTALL BRICK VENEER FROM BASS HOMES SAMPLES AROUND FOUNDATION AREA AND PORCH AREAS OF HOME (SAME AS REDWOOD MODEL HOME). NOTE: FRONT STEPS ONLY WILL BE BRICK. ALL OTHER STEPS TO BE TREATED PINE.

2. INSTALL 9' CEILINGS THROUGHOUT DOWNSTAIRS OF HOME. UPSTAIRS TO BE 8' ( IF APPLICABLE). "ANGELWOOD GOLD MODEL" AND "DALTON GOLD MODELS" WILL HAVE 10' CEILINGS IN LIVING AND FOYER AREAS. ALL CLASSIC MODELS, OR II AND III MODELS OF THE DALTON WILL NOT HAVE ANY 10' CEILINGS.

3. INSTALL DIMENSIONAL SHINGLES ON ROOF OF HOME IN LIEU OF STANDARD SHINGLES FROM BASS HOME SAMPLES.

4. INSTALL ARCHED RAISED PANEL CABINETS FROM BASS HOMES SAMPLES THROUGHOUT HOME.

5. INSTALL CERAMIC TILE IN KITCHEN (BREAKFAST IF APPLICABLE) AND MASTER BATH ONLY. ALL TO BE SELECTED FROM BASS HOMES SAMPLES.

6. ADD 10' TO LENGTH TO FRONT PORCH. BUILD PORCH TO LOOK LIKE THE "DALTON MODEL" WITH WRAP AROUND STYLE ON EACH END OF PORCH ROOF. NEW PORCH DIMENSIONS WILL BE 8' X 40'.

7. ADD STAIRS TO REAR OF GARAGE AT EXTERIOR GABLE AS PER PRELIMINARY PLANS. NOTE: INSTALL A 9-LITE DOOR AT TOP OF STAIRS TO GARAGE ATTIC AND INSTALL 3/4" PLYWOOD FLOORING IN GARAGE ATTIC AN AREA OF 12' X 24' WITH KNEE WALLS.

8. INSTALL SMOOTH CEILINGS THROUGHOUT HOME WITH LIGHT ORANGE PEEL TEXTURE IN LIEU OF BLOWN CEILINGS.

10. INSTALL LARGE ONE PIECE CROWN MOLDING IN KITCHEN/BREAKFAST, LIVING WITH FOYER.

11. INSTALL FRONT WINGED BRICK STEPS SAME AS ANGELWOOD MODEL. SELLER MUST INSTALL WOOD HAND RAILS ON TOP OF WINGS TO MEET BUILDING CODES. BUYERS MAY CHOOSE TO PUT CUSTOM IRON RAILINGS AFTER COMPLETION OF HOME.

JULY 15TH 2008
DATE

(SELLER, BUILDER)

(BUYER, OWNER)

(BUYER, OWNER)

EXHIBIT D

BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL 36578

NAME OF BUYER(S): JASON HERRINGTON AND CASSIE HERRINGTON

DATE: JULY 15TH 2008

TYPE OF HOME: CEMPLANK

MODEL: HALLMARK GOLD

BUYER(S) AGREES TO PROVIDE THE FOLLOWING ITEMS PRIOR TO COMMENCEMENT OF CONSTRUCTION UNLESS OTHERWISE STATED IN THIS CONTRACT:

1. Electricity necessary to construct home within 25 feet of proposed structure. All expenses to be from Buyer(s) including power bills.
2. Water supply necessary to construct home within 25 feet of proposed structure. All expenses to be from Buyer(s) including water bills.
3. Temporary driveway (and culvert if necessory) within 25 feet of proposed structure. Driveway material must be sufficient to support heavy equipment delivering building goods.
4. Clearing of lot for proposed structure. Clearing includes trees, stumps or any type of debris above or below ground to Seller's satisfaction.
5. Elevation certification in flood areas when required in connection with builder obtaining building permit. Seller will provide building permit only.
6. Water supply within 500 feet for installing pilings for homes being built on pilings.
7. Cost of plan reviews when required by county or city building departments.
8. Engineering cost of certifying home plans when required by building codes or governmental agencies.

BUYER(S) SHALL PROVIDE THE FOLLOWING ITEMS DURING OR AT COMPLETION OF CONSTRUCTION (UNLESS OTHERWISE STATED IN THIS CONTRACT). NOTE: SOME ITEMS MAY BE AT BUYER(S) DISCRETION UNLESS REQUIRED BY MORTGAGE HOLDER.

1. Septic system and line to stub-out at home.
2. Water meter, well, and line to stub-out at home.
3. Buyers to connect water and sewer line to stub-out at foundation of home.
4. Television antenna outlets, cable outlets, telephone outlets or other items of similar nature.
5. Mirrors in baths, soap dishes, towel bars, etc.
6. Safety bars or grab bars in tubs and showers.
7. Shower doors.
8. Mantel over fireplace.

BUYER(S) ACKNOWLEDGES AND AGREES WITH THE FOLLOWING POLICIES AND STATEMENTS:

1. Seller will not be responsible for any property damage to Buyer(s)' lot in connection with Seller constructing Buyer(s)' home.
2. Seller will not do any landscaping or leveling of lot during or after completion of this contract unless otherwise stated in this contract.
3. When homes are sold with brick veneer on exterior of home, all walls under porch and gables shall having siding (specified type in contract) in those areas unless otherwise written in contract. All exterior steps and rails shall be wood.
4. When final building plans are completed, Buyer(s) agrees that Seller will not build home to exact dimensions and cosmetic details that may appear on plans due to a large volume of plan changes that Seller produces. Seller and Buyer(s) agrees to build home according to sales brochure plan and preliminary plans.
5. Seller will not warrant the performance or appearance of any clear sealers or semi transparent stains installed by Seller on exterior of homes such as Clear Wood Finish or similar brand.
6. Buyer(s) shall not take any possession of home or move any goods in until seller receives final payment.
7. Seller is not required to provide buyer(s) any building drawings or blueprints other than a preliminary style set of plans with room sizes and exterior elevations of all sides of home.
8. Buyers strictly agree that they are not allowed to perform any construction improvements or install any goods or improvements in home until final payment of home is payed to seller at completion. SHOULD BUYER(S) VIOLATE OR BREAK THE TERMS OF THIS AGREEMENT HEREBY STATED IN ITEM #8 OF THIS EXHIBIT D OF CONTRACT THEN BUYER(S) WILL PAY SELLER AN ADDITIONAL $3,000.00 TO THE TOTAL PRICE OF THIS CONTRACT AT THE TIME OF FINAL PAYMENT.
9. Buyer(s) agree upon substantial completion of construction of home that one (1) time walk-through inspection will be done by appointment with a Bass Homes, Inc. representative and a written list of items will be produced. Bass Homes, Inc. will complete all listed items from the one (1) time walk-through inspection. Buyer(s) agree to close immediately upon completion of list. Buyer(s) and Seller agree that no additional walk-through or additional items will be allowed after the initial one (1) time walk-through and item list.
10. "completion certificate of owners acceptance", warranty limitations are a part of this contract.

Buyers agree to pay the full amount for materials and labor of any special additions/code enforcement's that are required by building departments, mortgage lenders, or any type of governmental agency that are not standard in Bass Homes, Inc., model home or said plans and specs. This includes, but is not limited to, the following items: special insulation, underpinning of home's on pilings, structural engineering, certification of plans, special depth of concrete footings (i.e. prairie soil, white sand in coastal areas, unstable soil), or any items that must be added to meet the requirements of any of the above governmental agencies, companies, or departments.

_______________________________
(SELLER, BUILDER)

_______________________________
(BUYER, OWNER)

_______________________________
(BUYER, OWNER)

EXHIBIT "E"

BASS HOMES INC. 34661 STATE HWY 59 SOUTH STAPLETON, AL.36578

BUYER(S)JASON HERRINGTON AND CASSIE HERRINGTON

BUYER(S) AGREE TO THE FOLLOWING TERMS, DISCLOSURE NOTICES AND COST ADDENDUMS TO BE ADDED TO THE TOTAL PRICE OF THIS CONTRACT (COST WHEN APPLICABLE) TO THE UNDERSIGNED BUYER(S).

1. ANY ENGINEERING COST OF BUYER(S) PLANS IF REQUIRED BY MORTGAGE LENDER, BUILDING DEPARTMENTS OR ANY TYPE OF AGENCY THAT CAN ENFORCE SAID REQUIREMENT THEREOF.

2. IF BUYER(S) COMMENCE'S WITH ANY IMPROVEMENTS, PERFORM ANY TYPE OF WORK ON HOME DESCRIBED IN THIS CONTRACT OR HIRE ANY WORK TO BE PERFORMED BY OTHERS IN THE ACTUAL HOME DESCRIBED IN THIS CONTRACT INCLUDING ADDING ON TO THE STRUCTURE OF THIS HOME, PRIOR TO PAYING THE FINAL PAYMENT OF THIS CONTRACT TO BASS HOMES INC. TOGETHER WITH SIGNING THE "COMPLETION OF OWNERS ACCEPTANCE",THEN IT IS AGREED THAT BUYER(S) SHALL PAY BASS HOMES INC. THE SUM OF $5,000.00 ADDITIONAL COST ABOVE THE TOTAL PRICE IN THIS CONTRACT AT TIME OF FINAL PAYMENT.

3. RECESSED LIGHTS ARE NOT INCLUDED IN THE REDWOOD MODEL OR ANY OTHER HOME PLANS UNLESS ADDED TO COST BREAKDOWN AND LISTED ON EXHIBIT "C" OF THIS CONTRACT.

4. BUYERS CANNOT PROVIDE ANY LIGHT FIXTURES, PLUMBING FIXTURES OR ANY OTHER TYPE OF GOODS IN CONNECTION WITH THIS CONTRACT.
ALL OF THE ABOVE SHALL BE STANDARD FIXTURES FROM BASS HOME INC.

5. GRINDER PUMPS WHEN APPLICABLE FOR SEWER WILL NOT BE CONNECTED BY THE SELLER. BUYERS TO PAY FOR THE ELECTRICAL AND PLUMBING CONNECTIONS.

6. ELECTRICAL WIRING FOR PUMPS AND WELLS WHEN APPLICABLE ARE NOT INCLUDED IN TOTAL PRICE.

7. CONCRETE SLABS UNDER BEACH HOMES ON PILINGS WILL NOT BE WARRANTED AGAINST SLIGHT PUDDLES OF WATER AFTER RAINS DUE TO THE NATURE OF A SLAB FINISH. SLABS UNDER PILING HOMES WILL NOT INCLUDE PORCH OR DECK AREAS.

8. BUYER(S) LOT SLOPE WILL BE ASSESSED FOR SLOPE THAT MAY EXCEED THE REQUIREMENTS OF THIS CONTRACT ON EXHIBIT "A" AT TIME OF COMMENCEMENT OF CONSTRUCTION OF FOUNDATION.

9. FIREPLACE MANTLES WILL NOT BE INCLUDED ON ANY HOMES AS A STANDARD ITEM IN ANY HOME. SELLER WILL INSTALL A 2" X 4" SUPPORT AT MANTLE HEIGHT FOR BUYER(S) TO INSTALL A MANTLE AFTER COMPLETION OF HOME.

10. BUYER(S) ARE RESPONSIBLE FOR CAULKING DOOR THRESH-HOLDS AS NEEDED BUT NOT LESS THAN EACH AND EVERY ANNIVERSARY DATE OF ORIGINAL CONSTRUCTION COMPLETION OF HOME. BUYERS ARE RESPONSIBLE FOR THE ANNUAL INSPECTION OF FIREPLACE FLASHING AND CAULKING. BUYERS ARE RESPONSIBLE FOR CHECKING AND CAULKING EXTERIOR OF WINDOWS ANNUALLY.

11. BASS HOMES INC. WILL NOT WARRANT THE PERFORMANCE OF HEATING AND COOLING IN ONE AND ONE HALF STORY HOMES THAT DO NOT HAVE AN UPSTAIRS SEPARATE UNIT. THE UPSTAIRS WILL HAVE A TENDENCY TO MAINTAIN SEVERAL DEGREES DIFFERENCE IN TEMPERATURE WHICH IS STANDARD TO THE CONSTRUCTION INDUSTRY.

12. BUYER(S) AND SELLER AGREE THAT THERE ARE NO OTHER PROMISES OTHER THAN THAT WHICH IS WRITTEN IN THIS CONTRACT. THIS MEANS INCLUDING ANY VERBAL PROMISES THAT BUYER(S) MAY CLAIM THAT A SALES AGENT OR BASS HOMES INC. EMPLOYEE OR REPRESENTATIVE COULD HAVE IMPLIED OR PROMISED HE OR SHE.

13. BUYERS HEREBY AGREE THAT BASS HOMES INC. WILL NOT ACCEPT ANY LIABILITY OF BUYERS COST OF UTILITY BILLS DURING CONSTRUCTION OF HOME OR AFTER BUYER(S) TAKES OCCUPANCY OF THIS HOME DESCRIBED HEREIN. THIS INCLUDES ANY COMPLAINT BUYER(S) MAY ASSERT OF INFLATED POWER BILL'S OR ANY TYPE OF OTHER UTILITY.

BUYER(S)____________________

BUYER(S)____________________

JULY 15TH 2008
DATE

Exhibit " F "

RE:JASON HERRINGTON AND CASSIE HERRINGTON

## COMPLETION CERTIFICATE AND OWNER'S ACCEPTANCE ; LIMITED ONE-YEAR WRITTEN WARRANTY

The undersigned, owner (whether one or more) of the real property described in their contract with BASS HOMES, INC. ("Contractor") dated : JULY 15TH 2008 hereby acknowledge and certify as follows:

1. All materials and labor provided for in said contract have been furnished and installed by the Contractor or his subcontractors on our said real property in a good and workmanlike manner; that we have made a full and complete inspection of the same; that all construction and other work called for in said contract has been satisfactorily completed; that the home is fit, suitable and habitable; and the improvements are hereby accepted by us as built.

2. Contractor did not manufacture any materials used in the construction of this home; that the Contractor does not warrant any of the said materials against any defects in QUALITY, FITNESS or MERCHANTABILITY; that the Contractor will make good only on the workmanship of the actual construction of home; and that any and all claims related to the materials used in construction shall be pursued by customers ONLY against the manufacturers of any materials provided to the Contractor.

3. Contractor hereby gives a limited warranty on the home located at HURLEY, MS. for a period of one ( 1 ) year following closing or occupancy by the Buyer(s), whichever event occurs first.

4. Contractor warrants the home to be free from latent defects for a period of one ( 1 ) year following closing or occupancy, whichever event occurs first.

5. THIS WARRANTY IS GIVEN IN LIEU OF ANY AND ALL OTHER WARRANTIES, EITHER EXPRESSED OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, HABITABILITY AND /OR WORKMANSHIP.

6. Contractor shall not be liable under the parties' contract or this warranty unless written notice of the latent defect(s) shall have been given by Buyer(s) to Contractor within the (1) year warranty. Steps taken by the Contractor to correct any defect(s) shall not act to extend the warranty period described hereunder.

7. Buyers confirm that they have performed a walk-thru inspection prior to signing the Completion Certificate and Owners Acceptance; Limited One-Year Written Warranty. Further Buyer(s) agree that their signatures below signify that they have accepted the construction of the home and waive any further right to complain of cosmetic deficiencies and the quality of workmanship or any other matter that does not constitute a latent defect.

8. Any and all remedies of the Buyer(s) and any liability of the Contractor shall be governed strictly by the terms of this one-year limited warranty. Neither the Contractor nor its assigns shall be liable for any incidental or consequential damages. under no circumstances may the Buyer(s) recover damages in excess of the amount of the subject building construction contract.

9. Any reference to the singular herein shall also encompass the plural where appropriate; and any reference to the plural shall also encompass the singular where appropriate.

BUYER(S) INITIALS OF RECEIPT OF THIS DOCUMENT BEFORE CONSTRUCTION OF HOME:
BUYER: ________________ BUYER: ________________

DATE: ____________ BUYER: XXXXXXXXXXXXXXXXX

DATE: ____________ BUYER: XXXXXXXXXXXXXXXXX

Witness: ____________________ DATE: ________________

Nov. 13. 2008 11:43AM No. 3147 P. 3

First Federal Savings and Loan Association
Pascagoula-Moss Point • Pascagoula, Mississippi
**Owner's and Contractor's Agreement**

STATE OF MISSISSIPPI
} ss:
COUNTY OF JACKSON

PERSONALLY appeared before me, the undersigned authority in and for said county and state, the undersigned owner, purchaser and/or contractor, who after being first duly sworn states on oath:

They are/he is the owner and/or general or JASON SCOTT HERRINGTON contractor

In connection with improvements on the real property situated in the County of JACKSON State of Mississippi known as
NHN OLD AMERICAS ROAD

more particularly described in the Deed of Trust, Mortgage or other Security Instrument in favor of First Federal Savings & Loan Association, dated November 13, 2008, securing the sum of $ 225,000.00, and filed for record or to be filed in the office of the recorder of the county in which the above land is located, which Deed of Trust, Mortgage or other Security Instrument is a valid first lien on said premises; and,

The undersigned owner states that of his personal knowledge, no other contracts have been let or guarantees of payment made by the undersigned owner to anyone other than: (LIST EACH CONTRACT LET OR GUARANTEE MADE AND OBTAIN AFFIDAVIT AND AGREEMENT FOR EACH)

The owner has no interest or ownership in the contracting firm or firms and the contractor has no interest in the real property described above, except:

The undersigned owner has inspected the premises before making this affidavit and found all work satisfactory to owner; and that the undersigned owner is in possession of the subject premises, unless otherwise stated: (LIST DISCREPANCIES AND NATURE OF POSSESSION OTHER THAN BY OWNER)

The contractor has been paid in full for work or services performed and materials furnished on the above project and does hereby waive, release and surrender any and all lien or claim or right of lien to the date for which payment is made, for labor, services and/or materials furnished by the undersigned upon the premises described above, except: (IF NONE, STATE "NONE") NONE

The Owner and/or contractor has/have paid in full any and all amounts due architects, engineers, surveyors, attorneys, sub-contractors, materialmen and labors for work or services performed and materials furnished to the undersigned in connection with the construction of the improvements on the above property, except: (IF NONE, STATE "NONE") NONE

The Owner has received no notice of any unpaid bills or claims for labor or services performed or materials furnished on the above project, except: (IF NONE, STATE "NONE") NONE

The Owner and/or contractor hereby request(s) First Federal Savings & Loan Association, to consummate a loan secured by said real estate without exception therein as to any possible unfiled mechanics' or materialmen's lien, and in consideration thereof, and as an inducement therefor, the undersigned does hereby agree to indemnify and hold harmless the said Association of and from any and all loss, cost, damages and expenses of every kind including attorney's fees, which said association shall suffer or may suffer or incur or become liable for because of said loan secured by said real estate, part thereof or interest therein arising, directly or indirectly, out of or on account of any such mechanics' or materialmen's liens, claim or claims as a result of the undersigned's unpaid bills or in connection with its enforcement of its rights under this agreement.

In the event this Agreement is executed for a Construction Draw of funds, the undersigned acknowledges receipt of $ for the draw on Loan No.

The owner and/or contractor state that no chattel mortgages, conditional sales contracts, security agreements, financing statements, retention of title agreements, personal property leases or the like have been given or are now outstanding as to any materials, fixtures, appliances, furnishings or equipment placed upon, installed in or upon the aforesaid premises or the improvements thereon, and that all plumbing, heating, lighting refrigerating and other equipment is fully paid for; and

The undersigned purchaser(s) (if applicable) state(s) that he/they has/have no notice of any unpaid bills or claims for labor or services performed or materials furnished on the above described land, except: (IF NONE, STATE "NONE") NONE

Contractor BASS HOMES, INC. William L. Bass

JASON SCOTT HERRINGTON, BY HIS ATTORNEY-IN-FACT PER POWER OF ATTORNEY RECORDED IN DEED BK 1558, PAGES 334-335

PENNY HERRINGTON, AS ATTORNEY-IN-FACT Owner (Or Seller)

SWORN TO AND SUBSCRIBED before me, by the owner (or seller), contractor or purchaser, whose signature appears above, this the 13th day of November, 2008

My Commission expires: 9/19/2012

Patricia Dewberry
Notary Public

SWORN TO AND SUBSCRIBED before me, by the owners, whose signatures appear above, this the 13th day of November, 2008.

My commission expires:

Notary Public

ITEM 41616 (1238)

GREATLAND
To Order Call: 1-800-530-9393 Fax 616-791-1131

11/11/2008 TUE 12:24 FAX 228 475 2145 Richie Perkins Attorney 002/003

11/11/2008 TUE 13:02 [JOB NO. 7317] 003

# EXHIBIT "C"

ELECTRONICALLY FILED
10/7/2013 4:14 PM
30-CV-2013-900145.00
CIRCUIT COURT OF
ESCAMBIA COUNTY, ALABAMA
JOHN FOUNTAIN, CLERK

**IN THE CIRCUIT COURT OF ESCAMBIA COUNTY, ALABAMA**

**GREG E. WIGGINS and SHERRY WIGGINS**

**Plaintiffs**

**v.**

**BASS HOMES, INC.; ACE HARDWARE CORPORATION; ACE HOME CENTER, INC., et al.**

**Defendants**

**CIVIL ACTION NO. 30-CV-2013-900145.00**

---

**AMENDED COMPLAINT**
**(JURY TRIAL REQUESTED)**

---

COME NOW the Plaintiffs, Greg E. Wiggins and Sherry Wiggins, (hereinafter "Plaintiffs") by and through undersigned counsel, and filed this, their Amended Complaint against the Defendants, Bass Homes, Inc., Ace Hardware Corporation and Ace Home Center, Inc., and Fictitious Defendants 2 through 150 are those Producer Defendants, Distributor Defendants, Builder Defendants and Alter Ego Defendants who identities and true names are currently unknown to the Plaintiffs (hereinafter "Fictitious Defendants") and in support thereof would show unto this Honorable Court as follows, to-wit:

## PARTIES

1. Plaintiffs, Greg E. Wiggins and Sherry Wiggins, are the owners of a residence located in Brewton, AL (the "Wiggins Residence"). The address of the Wiggins Residence is 1047 Well Road, Brewton, AL 36426. This is also the Wiggins' primary residence. An inspection has revealed the presence of Chinese drywall in this Residence.

2. Defendant, Bass Homes, Inc., is an Alabama corporation authorized to conduct business in the State of Alabama, with its principal place of business located at 34661 State Hwy 59, Stapleton, AL 36578. Bass Homes, Inc. is a residential construction company and is operating, conducting, engaging in, and carrying on a business or venture in this state and has an office or agency in this state.

3. Defendant, Ace Hardware Corporation, is a Delaware corporation authorized to conduct business in the State of Alabama with its principal place of business located at 2200 Kensington Court, Oak Brook, IL 60523-2100. At all material times, Ace was in the business of distributing, supplying and/or selling residential drywall in Alabama, and maintained multiple retail, office and/or warehouse locations in the State of Alabama.

4. Defendant, Ace Home Center, Inc., is an Alabama corporation authorized to conduct business in the State of Alabama with its principal place of business located at 21090 Alabama 59 South, Robertsdale, AL 36567. At all material times, Ace Home Center was in the business of distributing, supplying and/or selling residential drywall in Alabama as a retail outlet.

5. Fictitious Defendants 2 through 150 are those Producer Defendants, Distributor Defendants, Builder Defendants and Alter Ego Defendants who identities and true names are currently unknown to the Plaintiffs, who therefore sues Fictitious Defendants 2 through 150 by such fictitious names.

## JURISDICTION and VENUE

6. The litigation of this controversy should proceed in this forum because the properties at issue are located in this County, the Plaintiffs reside in this County and the wrongful conduct is concentrated in this County.

7. Defendants are foreign corporations that either are registered to conduct business in the State of Alabama or that actually transacted business in Alabama.

## FACTS

8. On or about December 9, 2008, Greg E. Wiggins and Sherry Wiggins entered into a Building Agreement with Bass Homes, Inc. for the construction of a residence on real property located at 1047 Well Road, Brewton, AL 36426. See Building Agreement, Attached hereto as **Exhibit "A"**.

9. In the summer of 2008, Bass Homes, Inc. applied for a building permit for the Wiggins Residence.

10. Thereafter, Bass Homes was the general contractor and built the Wiggins Residence located at 1047 Well Road, Brewton, AL 36426. Plaintiffs are informed and believe Ace Hardware, by and through Ace Home Center, supplied the drywall installed in the Wiggins Residence.

11. A Certificate of Completion for the Wiggins Residence located at 1047 Well Road, Brewton, AL 36426 was issued on or about December 9, 2008. Thereafter, the Wiggins family occupied the residence.

12. On information and belief, Ace Hardware, by and through Ace Home Center, sold the drywall that Bass Homes, or the subcontractor hired by Bass Homes, installed in the Wiggins Residence.

13. In or about November 2009, Plaintiffs determined that their Residence was built with drywall manufactured in China ("Chinese Drywall").

14. The material composition, and offensive smell, of the Chinese Drywall in the Residences renders it inferior to American-made drywall and unfit for ordinary use in residential construction.

15. Defendants knew, or should have known, that the Chinese Drywall that Bass Homes purchased from Ace Hardware, by and through Ace Home Center, and that Bass Homes installed, was going to be used in the construction of the Residence. Ace Hardware and Ace Home Center also knew, or should have known, that residential homeowners, such as Plaintiffs, were foreseeable users of the Chinese Drywall and that residential homeowners, such as Plaintiffs, required and expected the drywall to be fit for the ordinary purpose for which it was intended.

16. Unlike American-made drywall, the Chinese Drywall in the Residences emits several sulfur compounds, including, but not limited to, carbon disulfide, carbonyl sulfur, and hydrogen sulfide. The Chinese Drywall in the Residence is also suspected to contain several other impurities which render it unfit for usage in residential construction. The sulfur based compounds emitted have created a sulfur odor which renders the drywall unfit for the ordinary purpose for which it was intended.

17. The Chinese Drywall emits these sulfur based compounds because it suffers from either a defective manufacturing and/or mining process.

18. The corroded items described above are also unfit for the ordinary purpose for which they were intended. Plaintiffs are uncertain as to the cause of the corrosion and have not engaged in any act or activity which has led to or caused the corrosion in any way.

19. The Chinese Drywall in the Residence has and will continue to cause damage to the Residences and Plaintiffs' personal property.

20. As a result of the foregoing, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to: economic damage, and other economic damages; damage to real and personal property; attorneys' fees and expenses; and court and/or administrative costs.

21. As a result of Defendants' wrongful conduct, Plaintiffs' Residence must be repaired and have declined and will continue to decline in value by at least the cost of repair.

**COUNT I**
**BREACH OF CONTRACT**

22. Plaintiffs incorporate by reference paragraphs 1 through 21 previously alleged as though fully set forth herein.

23. Defendant Bass Homes sold the Residence to the Plaintiffs built with Chinese Drywall.

24. Defendant Bass Homes built the Residence with Chinese Drywall.

25. Defendant Ace Hardware, by and through Ace Home Center, sold the Chinese Drywall which was used to build the Residence.

26. Upon information and belief, Bass Homes purchased the Chinese Drywall that it installed in the Residence from Ace Hardware.

27. The Chinese Drywall was expected to and did reach the Plaintiffs' Residence without any substantial change in the condition to which it was sold.

28.     The Chinese Drywall is defective and unreasonable dangerous and has caused damage because of the offensive odor and off gassing of sulfur compounds.

29.     The Plaintiffs, acting as reasonably prudent persons, could not have discovered that Chinese Drywall was defective as herein mentioned or perceived its danger because the defects in the drywall were latent.

30.     Bass Homes breached the contract of warranty with Plaintiffs and the contract for sale, entitling Plaintiffs to an award of damages and performance of the contract.

31.     By and through Ace Hardware's and Ace Home Center's acts, they have breached the implied covenant of good faith and fair dealing relative to contracts of insurance and warranty and sale, causing Plaintiffs' damages.

32.     In the alternative, the acts of the Defendants were grossly negligent, amounting to an independent tort, entitling Plaintiffs to an award of extra contractual damages.

33.     Defendants, Bass Homes, Ace Hardware and Ace Home Center, are therefore strictly liable for the damages, punitive and actual, sustained by Plaintiffs.

34.     As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, incidental, and other related expenses.  Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Defendants, Bass Homes, Ace Home Center and Ace Hardware, awarding damages, interest, costs, and attorneys' fees and such other relief as this Court may deem just and proper.

**COUNT II**
**NEGLIGENCE AND GROSS NEGLIGENCE**

35. Plaintiffs incorporate by reference paragraphs 1 through 34 previously alleged as though fully set forth herein.

36. Defendants owed a duty to Plaintiffs to exercise reasonable care in exporting, importing, distributing, delivering, supplying, selling, inspecting and installing the Chinese Drywall, and in constructing the Residence, to insure that the Residence were constructed with materials that would not harm the inhabitants or the other property within the Residence. Defendants also had a duty to adequately warn Plaintiffs about any unsafe materials used in the construction of the Residence known by Defendants.

37. Defendants breached their duty to exercise reasonable care in exporting, importing, distributing, delivering, supplying, selling, inspecting and installing the Chinese Drywall, and constructing the Residence by:

(a) causing and/or allowing Chinese Drywall to be installed within the Residence;

(b) failing to investigate whether the Chinese Drywall would harm inhabitants of the Residence or damage other property or work within the Residence;

(c) failing to warn Plaintiffs that the Residence contained Chinese Drywall that could damage their property;

(d) failing to take reasonable measures that Defendants knew, or reasonably should have known, were necessary to protect the Plaintiffs from hazards associated with the Chinese Drywall;

(e) failing to exercise reasonable care in their quality control practices;

(f) failing to comply with all applicable building codes;

(g) failing to take such other precautions as may be revealed through discovery.

38. If Defendants had exercised reasonable care, they would have investigated the Chinese Drywall and its adverse effects prior to selling or installing the Chinese Drywall used in the Residences. Further, Defendants could have warned Plaintiffs that the Chinese Drywall may cause the problems described herein.

39. Defendants' failure to exercise reasonable care constitutes a breach of duty. The defects in the drywall were latent and could not have been reasonably discovered by Plaintiffs.

40. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs were harmed and have incurred damages, as described herein, including personal injuries and damage to other property in the Residence.

41. Due to Defendants' negligence, Plaintiffs have sustained damages, including, but not limited to the diminution in property value, all costs associated with the removal and replacement of the Chinese Drywall, all costs necessary to reconstruct Plaintiffs' Residence, and all costs associated with the repair or replacement cost of damaged property in the residence.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Defendants, awarding damages, interest, costs, and attorneys' fees and such other relief as this Court may deem just and proper.

## COUNT III
## BREACH OF IMPLIED WARRANTIES AND OTHER WARRANTIES

42. Plaintiffs incorporate by reference paragraphs 1 through 41 previously alleged as though fully set forth herein.

43. Notwithstanding the breach of the express warranty at issue herein, Bass Homes, through the sale of the subject residence, and the failure to remedy such defects, have breached implied warranties of fitness for a particular purpose and merchantability with respect to the sale of the defective residence.

44. Notwithstanding the breach of the express warranty at issue herein, Ace Hardware, through the sale of the drywall installed in the Residence, and the failure to remedy such defects, have breached implied warranties of fitness for a particular purpose and merchantability.

45. Such warranties include, but are not limited to, the warranties set forth in § 6-5-227, et seq., Alabama Code. All such conditions precedent to enforcement of such warranties have been fulfilled.

46. The material composition of the Chinese Drywall in the Residence renders it inferior to American-made drywall and unfit for ordinary use in residential construction.

47. Defendants knew, or should have known, that the Chinese Drywall that Bass Homes purchased from Ace Hardware, by and through Ace Home Center, and that Bass Homes installed, was going to be used in the construction of the Residence. Ace Hardware and Ace Home Center also knew, or should have known, that residential homeowners, such as Plaintiffs, were foreseeable users of the Chinese Drywall and that residential homeowners, such as Plaintiffs, required and expected the drywall to be fit for the ordinary purpose for which it was intended.

48. Unlike American-made drywall, the Chinese Drywall in the Residence emits several sulfur compounds, including, but not limited to, carbon disulfide, carbonyl sulfur, and hydrogen sulfide. The Chinese Drywall in the Residence is also suspected to contain several other impurities. The sulfur based compounds emitted have created a sulfur odor which renders the drywall unfit for the ordinary purpose for which it was intended.

49. The Chinese Drywall emits these sulfur based compounds because it suffers from either a defective manufacturing and/or mining process.

50.    The corroded items described above are also unfit for the ordinary purpose for which they were intended. Plaintiffs are uncertain as to the cause of the corrosion and have not engaged in any act or activity which has led to or caused the corrosion in any way.

51.    The odor caused by the use of Chinese Drywall in the Residences renders the Residences unfit for the ordinary and general purpose of residential living.

52.    In addition, the accompanying corrosion of pipes, wiring, metal finishes and fixtures, including their HVAC system, and experienced failures of electronic products, including televisions and computers in the home also renders the Residence is unfit for the ordinary and general purpose of residential living.

53.    As a result of the use of Chinese Drywall, the Residence does not meet the ordinary, normal standards reasonably to be expected of living quarters of comparable kind and quality.

54.    Despite having knowledge as to the use of inferior drywall in the home, Defendant Bass Homes sold the Residence to the Plaintiffs and built the Residence with Chinese Drywall.

55.    As a result of Bass Homes' actions, Plaintiffs have suffered and will continue to suffer damage, including but not limited to: economic damages, including and other economic damages; damage to real and personal property; attorneys' fees and expenses; and court and/or administrative costs.

56.    As a result of Bass Homes' breach of the implied warranty of habitability and fitness, Plaintiffs are entitled to have the purchase price of the Residence restored to them by Bass Homes, together with any expenses there from, and for those damages and losses set forth above.

57. As a result of Ace Hardware's and Ace Home Center's actions, Plaintiffs have suffered and will continue to suffer damage, including but not limited to: economic damages, including and other economic damages; damage to real and personal property; attorneys' fees and expenses; and court and/or administrative costs.

58. As a result of Ace Hardware's and Ace Home Center's breach of the implied warranty of habitability and fitness, Plaintiffs are entitled to have the purchase price of the Residence restored to them by Bass Homes, together with any expenses there from, and for those damages and losses set forth above.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Bass Homes, Ace Hardware and Ace Home Center, awarding damages, interest, costs, and attorneys' fees and such other relief as this Court may deem just and proper.

**COUNT IV**
**FAILURE TO PROCURE A WARRANTY**

59. The allegations of paragraphs 1 through 58 above are incorporated herein as if reproduced in full.

60. Alternatively, if such warranty as represented by Defendants was not procured, Defendants are liable to Plaintiffs as set forth herein. At material times, by reason of Defendants' actions, Defendant entered into a contractual agreement with Plaintiffs and was under a non-delegable duty to procure the warranty coverage sold to Plaintiffs, or, in the alternative, to procure for Plaintiffs like or similar warranty coverage. If such warranty coverage was not procured, Defendants breached such contractual agreements and duties to Plaintiffs, entitling Plaintiff to performance of the contract of warranty by Defendants, in addition to all such other damages as set forth herein.

**COUNT V**
**CLAIM FOR DECLARATORY RELIEF**

61. The allegations of paragraphs 1 through 60 above are incorporated herein as if reproduced in full.

62. In addition to seeking damages from Defendants, Plaintiffs request that this Court declare the rights, status and legal relations of the parties under the contract of sale at issue, and the contract of warranty at issue, specifically the amount of benefits due and payable to Plaintiffs under the warranty at issue, pursuant to M.R.C.P. 57 (Declaratory Judgments). Further, and additionally or alternatively, Plaintiff would show that the language of the warranty at issue is vague, ambiguous and capable of more than one meaning, and that such warranty should be construed against Defendants, and that as a result, this Court should find and declare coverage for the specific claims of Plaintiffs as set forth herein.

**COUNT VI**
**FAILURE TO WARN**

63. The allegations of paragraphs 1 through 62 above are incorporated herein as if reproduced in full.

64. Defendants, Bass Homes, Ace Hardware and Ace Home Center, as the builder and a distributor of materials for the building of residential homes, have a duty to disclose hidden hazards in the home, especially when such hazards effect the safety of the home's occupants, upon acquiring knowledge of that hazard.

65. Defendants knew that Chinese Drywall was used in the construction of the home and had or should have had such knowledge immediately upon receiving the Chinese Drywall at the job-site and installing it in the home.

66. Defendants knew or should have known that Chinese Drywall was an inferior product, not fit for ordinary use, and knew or should have known this immediately upon

receiving the Chinese Drywall at the job-site and installing it in the home.

67.     Defendants knew or should have known that Chinese Drywall posed a serious health risk to residents of homes wherein Chinese Drywall was used.

68.     Despite knowledge of long standing quality concerns regarding the use and installation of Chinese Drywall, Defendant caused Chinese Drywall to be installed in the home.

69.     Despite such knowledge, Defendants failed to warn the Plaintiffs of the use of Chinese Drywall in the home or of the hazards associated with Chinese Drywall used in the home.

70.     Had Defendants informed Plaintiffs of the use of Chinese Drywall in the home or of the hazards associated with Chinese Drywall used in the home, Plaintiffs would not have purchased the home.

71.     Had Defendants informed Plaintiffs of the use of Chinese Drywall in the home or of the hazards associated with Chinese Drywall used in the home, Plaintiffs would not have suffered the damages alleged herein, and/or could have taken steps necessary to protect themselves and their property against damage.

72.     As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to: economic damages; damage to real and personal property; past, present and future physical and mental pain and suffering; past, present and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and court and/or administrative costs.

73.     Due to Defendants' failure to warn Plaintiffs as to the hidden hazards in the home, Defendants are liable to Plaintiff for those damages and losses set forth above.

**COUNT VII**
**FRAUD- BASS HOMES, INC.**

74. The allegations of paragraphs 1 through 73 above are incorporated herein as if reproduced in full.

75. Despite knowledge of the use of inferior drywall in the home, Bass Homes sold the home to the Plaintiffs.

76. As a result of Bass Homes' nondisclosure, silence, and misrepresentations, Defendant intentionally gained an unjust advantage over Plaintiffs.

77. Had Bass Homes advised Plaintiffs of the use of inferior drywall in the home, Plaintiffs would not have purchased the home.

78. As a result of Bass Homes' actions, Plaintiffs have suffered and will continue to suffer damage and injury, including, but not limited to: economic damages; damage to real and personal properly; past, present and future physical, and mental pain and suffering; past, present and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and Court and/or administrative costs.

79. As a result of Bass Homes' fraud, Plaintiffs have the right to rescission of the original sale from Bass Homes to Plaintiffs, and for those damages and losses set forth above.

**COUNT VIII**
**INTENTIONAL / NEGLIGENT MISREPRESENTATION**

80. The allegations of paragraphs 1 through 79 above are incorporated herein as if 9reproduced in full.

81. Despite knowledge of the use of the inferior drywall in the home, Defendants sold the home to Plaintiffs.

82. Plaintiffs justifiably relied on Defendants' intentional or negligent representation.

83. Had Defendants advised Plaintiffs of the use of inferior drywall in the home, Plaintiffs would not have purchased the home.

84. As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to economic damages; damage to real and personal property; past, present and future physical and mental pain and suffering; past, present and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and court and/or administrative costs.

**COUNT IX**
**ALTERNATIVE PLEADING OF**
**BREACH OF WARRANTY OF FITNESS**

85. The allegations of paragraphs 1 through 84 above are incorporated herein as if reproduced in full.

86. The use of inferior drywall in the home renders the home unfit for the purpose of residential living.

87. Despite having knowledge as to the use of inferior drywall in the home, Defendants sold the home to Plaintiff.

88. As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to: economic damages; damage to real and personal property; past, present and future physical and mental pain and suffering; past, present and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and court and/or administrative costs.

89. As a result of Defendants' breach of the warranty of fitness, Plaintiffs are entitled to have the purchase price of the home restored to them by Defendants, together with any expenses there from, and for those damages and losses set forth above.

**COUNT X**
**UNJUST ENRICHIMENT**

90. The allegations of paragraphs 1 through 89 above are incorporated herein as if reproduced in full.

91. As the builder of the home and supplier of drywall for the construction of Plaintiffs' house, Defendants knew that Chinese Drywall was used in the construction of the home and had or should have had such knowledge immediately upon receiving the Chinese Drywall at the job-site and installing it in the home. Defendants knew or should have known that Chinese Drywall was all inferior product, not fit for ordinary use, and knew or should have known this immediately upon receiving the Chinese Drywall at the job-site and installing it in the home.

92. Had Defendants disclosed to Plaintiffs the use of Chinese Drywall in the construction of the home, Plaintiffs would not have purchased the home.

93. As a result of Defendants' acts and/or omissions in concealing the presence of Chinese Drywall in Plaintiffs' home, Defendants unjustly enriched without justification or cause.

94. As a result of Defendants' acts and/or omissions in concealing the presence of Chinese Drywall in Plaintiffs; home, Plaintiffs were unjustly impoverished without justification or cause.

95. As a result of the foregoing, Defendants are liable to Plaintiffs for the losses suffered by them.

**COUNT XI**
**THIRD PARTY BENEFICIARY**

96. The allegations of paragraphs 1 through 95 above are incorporated herein as if reproduced in full.

97. Bass Homes entered into express contracts whereby its subcontractors performed work on the Residence.

98. Plaintiffs were the intended beneficiary of the contracts between Bass Homes and its subcontractors.

99. Bass Homes knew that Plaintiff would benefit from their contracts and could and would be harmed by the breach of those contracts by Bass Homes, its subcontractors, Ace Hardware and Ace Home Center.

100. The subcontractors breached their contracts with Bass Homes by failing to carefully and properly complete the work on Plaintiffs' home in a good and workmanlike manner in compliance with applicable building codes and construction industry standards. Therefore, Plaintiffs are entitled to damages as the third party beneficiary to Bass Homes' contracts based on damages suffered by Plaintiffs as a result of the breaches of those contracts.

101. As a direct and proximate result of the actions of the Bass Homes, Ace Hardware, Ace Home Center and Fictitious Defendants, which combined and concurred to form the basis of this suit, Plaintiffs have suffered damages as set forth in the above Statement of Facts.

**COUNT XII**
**DECEPTIVE TRADE PRACTICES**

102. The allegations of paragraphs 1 through 101 above are incorporated herein as if reproduced in full.

103. Defendants' actions constitute violations of the Deceptive Trade Practices Act as defined in Section 8-19-1, et seq. of the Alabama Code (1975).

104. Plaintiffs demand judgment be entered against Defendants in an amount equal to the funds improperly received by Defendants as the result of its deceptive acts, plus equitable relief.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

Plaintiffs pray the Court to enter judgment against Defendants and in favor of Plaintiffs and to award the following relief:

A. For damages as set forth above;

B. For equitable and injunctive relief as set forth above;

C. Award the Plaintiff(s) costs and attorneys' fees taxed against the Defendants;

D. Plaintiffs demands a trial by jury on all issues so triable; and

E. For such other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this, the 7th day of October, 2013.

GREG and SHERRY WIGGINS, Plaintiffs

By and Through Their Attorneys,
LUCKEY & MULLINS, PLLC

BY: /s/ Stephen W. Mullins
STEPHEN W. MULLIN

ATTORNEYS FOR PLAINTIFFS:

STEPHEN W. MULLINS (MS Bar No. 9772)
LUCKEY & MULLINS, PLLC
2016 Bienville Blvd., Suite 102 (39564)
Post Office Box 990
Ocean Springs, MS 39566
Phone: 228.875.3175
Fax: 228.872.4719
smullins@luckeyandmullins.com

Of Counsel:

**Daniel K. Bryson** (*pro hac vice*)
**WHITFIELD BRYSON & MASON LLP**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035

**CERTIFICATE OF SERVICE**

I, STEPHEN W. MULLINS, do hereby certify that I have on this date electronically filed the above and foregoing Amended Complaint with this Court using the ECF filing system which has caused notification of such filing to be sent to registered counsel of record. A copy of said Amended Complaint will also be served on the registered agent for Ace Home Center, Inc.

THIS, the 7th day of October, 2013.

/s/ Stephen W. Mullins
STEPHEN W. MULLINS

ELECTRONICALLY FILED
10/7/2013 4:14 PM
30-CV-2013-900145.00
CIRCUIT COURT OF
ESCAMBIA COUNTY, ALABAMA
JOHN FOUNTAIN, CLERK

RE: WIGGINS, GREG E.

## COMPLETION CERTIFICATE AND OWNER'S ACCEPTANCE

The undersigned, owner (whether one or more) of the real property described in their contract with BASS HOMES, INC. ("Contractor") dated : December 9, 2008 hereby acknowledge and certify as follows:

1. That all materials and labor provided for in said contract have been furnished and installed by the Contractor or his subcontractors on our said real property in a good and workmanlike manner; that we have made a full and complete inspection of the same; that all construction and other work called for in said contract has been satisfactorily completed; that the home is fit, suitable and habitable; and the improvements are hereby accepted by us as built.

2. That the Contractor did not manufacture any materials used in the construction of this home; that the Contractor does not warrant any of the said materials against any defects in QUALITY, FITNESS or MERCHANTABILITY; that the Contractor will make good only on the workmanship of the actual construction of home; and that any and all claims related to the materials used in construction shall be pursued by customers ONLY against the manufacturers of any materials provided to the Contractor.

3. That the Contractor hereby gives us a twelve (12) month warranty (which began 7 days after date of "Buyers Walk Thru Inspection List") the terms of which are as follows: the Contractor agrees to correct any defects in the quality of workmanship during such period and that we understand the responsibilities of the Contractor thereunder.

4. Buyer's agree that the above contractors (12) month warranty date began/begins on 1/22/09, which is seven calender days after the date of the document styled Bass Homes Inc. "Buyers Walk Thru Inspection List". The date below does not represent the beginning of buyers warranty date.

5. In the event of any warranty claims made by buyer(s) then buyer(s) agree that seller will be given fair notice with proof thereof, together with necessary time, to correct any item(s) that are covered by this warranty. This includes any post warranty issue that may arise from buyers claims that can be evidenced to a defect that is proven to have been incorrect during the construction process or during the one year warranty.

The quality of workmanship shall be limited to any items not performing their duty as intended in the construction industry. However, the Buyers agree that a walk-thru inspection has been done prior to signing this Owners' Acceptance and Buyers further agree by signing this document that they will forfeit any future rights of discrimination against cosmetic imperfections in the quality of workmanship originally performed in the construction of their home. The Contractor has further delivered to us all manufacturers' warranties as to the appliances and air conditioning and heating equipment within the improvements (the "Manufacturers' Warranties").

EXHIBIT
A

The Foregoing Warranty and Manufacturers' Warranties Are Expressly In Lieu of All Other Warranties, Express Or Implied By Law Or Otherwise, And No Warranty Of MERCHANTABILITY, HABITABILITY, Or FITNESS for any particular purpose Of Any Fixtures, Equipment Appliances, Personal Property, Or Real Property And Improvements Thereon Is Made By Contractor. The Liability Of The Contractor And Its Assigns Shall Be Strictly Limited To The Express Warranty Terms, And Neither the Contractor Nor Its Assigns

# BUILDING CONTRACT
## BASS HOMES, INC.

STATE OF ALABAMA

This agreement made this 9TH day of DECEMBER, 2008, between GREG E. WIGGINS, hereinafter designated "Buyer" whose residence is 1047 WELL RD, BREWTON, AL 36426 and Bass Homes, Inc., having its principal place of business at P. O. Box 344, Stapleton, Alabama, 36578, hereinafter designated "Seller."

(1)

WITNESSETH:

The Seller agrees to build according to the plans and specifications on this sheet, or sheet attached hereto, which is by reference made a part hereof, on the property of the Buyer, located at: WELL RD DAMASCAS AL.

(2)

Description of construction to be performed: BUILD A 2,427 SQ. FT. HEATED AND COOLED LIVING SPACE HOME ACCORDING TO BUYER(S) CUSTOM PRELIMINARY PLANS. BUILDING PLANS TO BE DRAFTED AND PROVIDED BY BASS HOMES, INC. BUYER(S) AND SELLER AGREE THAT HOME SHALL BE BUILT TO THE SAME SPECIFICATIONS AND CONSTRUCTION STANDARDS AS A STANDARD BASS HOMES, INC. MODEL, ALL SPECIALTY ITEMS,

Exhibits A, B, C, D, E and F dated DECEMBER 9TH 2008 and attached hereto, before execution hereof, are made a part of this contract.

Buyer covenants and agrees to pay for said project (work) the sums and amounts herein set forth, pursuant to the following terms: ONE HUNDRED FIFTY SIX THOUSAND SEVEN HUNDRED AND SEVENTY SIX AND 00/100

(1) TOTAL PRICE $ 157,776.00
(2) DOWN PAYMENT $ 1,000.00
(3) UNPAID BALANCE $ 156,776.00

Details of Payments: BUYER(S) TO OBTAIN A CONVENTIONAL MORTGAGE LOAN, BUYER(S) TO PAY ALL CLOSING COSTS, DISCOUNT POINTS AND PRE-PAIDS, BUYER(S) TO OBTAIN A 100% CONSTRUCTION LOAN WITH PROGRESS PAYMENTS DURING CONSTRUCTION OF HOME, SAID PAYMENTS TO BE AS PER STANDARD BANK POLICY, FINAL PAYMENT DUE UPON COMPLETION OF HOME.

(3)

This instrument, and the other instruments signed in connection with this transaction contain the price and all the terms and conditions agreed upon by the Buyer and Seller, and no statement, representation or promise not set forth herein or in any of said instruments has been made to induce either party to enter into this transaction. In the event an unsatisfactory credit report on the Buyer or any other information unsatisfactory to the Seller is received prior to beginning construction of the house, Seller at its option may within 10 days thereafter cancel this agreement UPON returning to Buyer any deposit. In the event Buyer fails to perform any activities or duties required of Buyer (e.g., failure to prepare lot for construction, or, failure to obtain an unconditional letter of commitment for funds to purchase house or any contents of this contract, or, failure to deliver proof of all funds if cash purchase applies) which failure prevents Seller from commencing construction for a period of sixty (60) days from the date hereof, Seller may cancel this contract at its option, regardless of any assistance that seller may have provided in financing. Should seller not exercise their option to cancel buyer at 60 day requirement then seller can negotiate with buyers to increase cost of this contract should seller choose to do so, provided that construction has not commenced by seller at buyers property described herein (e.g., starting foundation work on home). If buyer chooses not to agree to additional cost then seller may cancel this contract and retain buyers initial deposit of money. In the event the Buyer does not have good and marketable title to the property described in paragraph 1, Seller may at its option, elect to incur all expenses reasonably necessary to obtain good and marketable title in the Buyer, and Buyer shall forthwith reimburse Seller for all expenses so incurred by Seller. In the event the house built by Seller at the location on the ground designated by Buyer is not entirely on the property of Buyer, then the Buyer agrees to pay Seller any and all costs, damages, losses and expenses, including reasonable attorneys' fees and court costs, suffered or incurred as a result thereof by Seller. The above expenses incurred by the Seller shall constitute a lien against said property of the Buyer until paid. No completion date has been represented or is a part of this contract. All provisions of this contract are subject to approval by an officer of BASS HOMES, INC., Stapleton, AL. 36578.

In those homes where pilings are specified, pilings shall be to a depth determined by Seller to be structurally safe and sound. In the event the Buyer requires a depth in excess of that deemed by Seller to be sufficient and structurally safe and sound, this contract, at the option of Seller, shall be declared null and void, or the contract may be re-negotiated to include the cost of drilling to a deeper depth. Commencement of construction and commencement of drilling pilings shall not be deemed a waiver of this position.

The house to be constructed is not designed for unusual surface conditions and/or sub-surface conditions in that no warranty is made that the house is designed for conditions that are abnormal, that no testing of the soil will be conducted by the Seller.

Failure of this Seller or Subcontractor to pay those persons supplying material or services to complete this contract can result in the filing of a lien on the above described property which is the subject of this contract.

(4)

Seller promises to furnish Buyer at closing a one-year limited warranty on the dwelling, a copy of which is attached here as Exhibit " F "

(5)

ARBITRATION AGREEMENT

ANY DISPUTE, CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE BREACH THEREOF, OR ARISING OUT OF ANY PRIOR DEALINGS BETWEEN SELLER AND BUYER OR ARISING OUT OF ANY FUTURE DEALINGS BETWEEN SELLER AND BUYER, SHALL BE SETTLED BY ARBITRATION IN THE STATE OF ALABAMA IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION (THE "ARBITRATION RULES OF THE AAA"), AND JUDGMENT UPON THE AWARD RENDERED BY THE ARBITRATOR(S) MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF.

THE PARTIES FURTHER AGREE THAT SHOULD ONE PARTY INVOKE ARBITRATION IN ACCORDANCE WITH THIS AGREEMENT, THE OTHER PARTY SHALL BRING TO THE ARBITRATION PROCESS ANY CLAIM OR COUNTERCLAIM WHICH IT MAY HAVE AGAINST THE INVOKING PARTY, WHETHER DEEMED TO BE COMPULSORY OR PERMISSIVE AT LAW, AND, THE FAILURE TO BRING SUCH CLAIM OR COUNTERCLAIM SHALL CONSTITUTE A WAIVER OF AND A BAR TO THE BRINGING OF SUCH CLAIM OR COUNTERCLAIM IN ANY SUBSEQUENT ARBITRATION OR LEGAL ACTION.

SELLER AND BUYER UNDERSTAND AND AGREE (I) THAT EACH OF THEM IS WAIVING RIGHTS TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO A JURY TRIAL; (II) THAT PRE-ARBITRATION DISCOVERY PROCEEDINGS IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS; (III) THE ARBITRATOR'S AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING; AND (IV) EITHER PARTY'S RIGHT TO APPEAL OR SEEK MODIFICATION OF RULINGS BY THE ARBITRATOR IS STRONGLY LIMITED. THE VENUE FOR ARBITRATION SHALL BE IN BALDWIN COUNTY, ALABAMA.

IN WITNESS WHEREOF, the Buyer and Seller have hereunto set their hands and seals at STAPLETON, ALABAMA, the day and year first above written.
(City) (State)

*CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.*

BASS HOMES, INC.
SELLER

BY [signature]
Title

[signature]
(BUYER)

(BUYER)

EXHIBIT A
BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL 36578

GREG E. WIGGINS — DECEMBER 9TH, 2008
BUYER(S) NAME(S) — DATE

NOTICE

ANY HOLDER OF THIS CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE BUYER COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE BUYER SHALL NOT EXCEED AMOUNTS PAID BY THE BUYER HEREIN.

BUYERS RIGHT TO CANCEL

IF THIS AGREEMENT WAS SOLICITED AT YOUR RESIDENCE AND YOU DO NOT WANT THE GOODS OR SERVICES, YOU MAY CANCEL THIS AGREEMENT BY MAILING A NOTICE TO THE SELLER. THE NOTICE MUST SAY THAT YOU DO NOT WANT THE GOODS OR SERVICES AND MUST BE MAILED BEFORE MIDNIGHT OF THE THIRD BUSINESS DAY AFTER YOU SIGN THIS AGREEMENT. THE NOTICE MUST BE MAILED TO: LEGAL DEPARTMENT, BASS HOMES, INC., HIGHWAY 31, P. O. DRAWER 340, STAPLETON, ALABAMA 36578. YOU ARE ALSO ENTITLED TO RECEIVE A REFUND OF ANY DOWN PAYMENT OR OTHER CONSIDERATION IF YOU CANCEL.

NOTICE TO THE BUYER (a) DO NOT SIGN THIS BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES, (b) YOU ARE ENTITLED TO AN EXACT COPY OF THE PAPER YOU SIGN.

THE BUYER ACKNOWLEDGES THAT HE RECEIVED A COPY OF THIS AGREEMENT AND THAT BEFORE SIGNING THE SAME, THE CONTRACT CONTAINED THE ENTIRE TERMS AND ALL BLANK SPACES HAD BEEN FILLED IN PRIOR TO THE SIGNING OF THE SAME.

These presents constitute a part of the Building Contract of even date attached hereto. The following options and additions, to-wit:
HOUSE TO BE BUILT ACCORDING TO PLANS FURNISHED BY BASS HOMES, INC.
Note to Buyers: Bass Homes, Inc., may at its election require water and sewer to be installed on mortgaged property before construction begins or before completion of rough plumbing in home. In the event that water and sewer with connections to home is not completed at Bass Homes, Inc., request, Sellers and Buyers agree that Bass Homes, Inc., will have full rights to install water supply and sewer with connections and Buyers then agree to pay in full normal and customary charges of goods.

FOUNDATION: [illegible]
NOTE: Builder shall negotiate additional cost if any with customer before foundation is installed. Any additional depth of foundation (piers, pilings, or slab) or width of footings required by any building governmental agencies, buyers, or builder's discretion shall all be on a cost plus basis unless pre-charged and written in contract total price.

1. Foundation will be raised type with continuous 8" block wall around perimeter of home only. Note: All porches will be open piers. If exterior is Brick Veneer, foundation will be piers only. Foundation height of home to be at sellers discretion and building codes if enforced. Buyers are responsible to determine if they are in a flood zone and shall disclose to seller in writing before construction begins if a required foundation height is necessary.
2. Treated foundation seals will be installed; all porch seals and porch floor will be treated.
3. 3/4" tongue and groove plywood flooring.

EXTERIOR OF HOUSE:
1. Exterior walls will have OSB and housewrap sheeting under siding.
2. Exterior siding hardiplank or comparable unless otherwise stated in contract.
3. All porch rails, fascias, and window trim will be pressure treated.
4. Roof will have all framing 2' o.c.
5. Roof will have standard fiberglass shingles, unless otherwise stated in contract.
6. Exterior doors will be metal insulated.
7. Exterior windows will be insulated white colonial style. Tilt window sash's are optional
8. Exterior of house will be painted latex.
9. All homes with vinyl siding or hardy plank siding will have 7/16" OSB wafer board in lieu of standard styrofoam.

INTERIOR:
1. Interior of home will have 3 ½" insulation in exterior walls and 6" fiberglass insulation in attic exposed ceiling areas only.
2. Interior wall will have ½" sheetrock throughout entire house.
3. Cabinet faces and doors only will be 3/4" Birch plywood or comparable material with laminated countertops. All white lacquer cabinets will be 5/8" MDF or HDF, including raised panel doors. All cabinet backs, ends, shelves or other components in cabinets shall be equal to Bass Homes, Inc., model home.
4. Standard interior doors and trim.
5. Vinyl flooring in kitchen, utility, and all baths, no wax.
6. Carpet in all other areas of home from Bass Homes, Inc., samples.
7. Fluorescent light in kitchen area.

STANDARD OPTIONS OF HOUSE:
1. PLUMBING: Fiberglass tub and shower units/stainless steel kitchen sink/standard vanity porcelain sinks, standard white fixtures.
2. ELECTRICAL: 200 amp service/standard copper and aluminum wiring/standard light fixtures.
3. HEAT AND AIR: Standard electric central forced heat and air. 42" Metal insert fireplace (without blowers) in homes that are shown on Bass Homes, Inc. sales brochure only.
4. PAINT: A. Exterior oil base stain/interior latex paint on walls. Standard color all interior walls (soft white) Devoe Brand or something equivalent, all paint and stain from Bass Homes, Inc., samples.
   B. All interior walls in home will be one color (soft white).
   C. All trim work and cabinets will be stained or white.
   D. All exteriors will be painted.
   E. All exteriors will have one trim color for doors and shutters only. Any other trim colors will be additional costs. (Hand rails, porch rails, corner boards, and eaves will be stained or painted same color as exterior of home).
5. All materials in excess of job will remain the property of Bass Homes, Inc.
6. Buyers are responsible for removal of construction debris.
7. All utilities are stubbed out only to exterior (Electrical Service Wire, Gas, and Plumbing). See Exhibit "B" for details.

(SELLER, BUILDER) [signature]

(BUYER, OWNER) [signature]

(BUYER, OWNER)

EXHIBIT B - PART 1

DASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL 36578

DATE: DECEMBER 9TH, 2008
NAME OF BUYER(S): GREG E. WIGGINS
TYPE OF HOME: CEMPLANK MODEL: CUSTOM PLAN

OWNER'S CHOICE OF INTERIOR & EXTERIOR COLORS:

EXTERIOR: HARDIPLANK OR COMPARABLE ______ CEDAR ______ BRICK ______
SIDING COLOR ______
STANDARD TRIM COLOR (DOOR & SHUTTERS ONLY) ______
DELUXE TRIM COLOR (DOOR, SHUTTERS, FASCIA & WINDOW TRIM) THIS ITEM IS $950.00 ADDITIONAL COST
SHINGLES ______ WINDOWS: BRONZE ______ WHITE ______
BRICK COLOR ______
MORTAR COLOR: GREY ______ DARK MORTAR ______ OTHER ______

INTERIOR:
KITCHEN / BREAKFAST
COUNTER TOP ______
STANDARD RANGE HOOD: ALMOND ______ WHITE ______ STAINLESS ______
CONNECTION FOR MICROWAVE: ☐ YES or ☐ NO
VINYL ______

DINING
CARPET ______

UTILITY:
VINYL ______

MASTER BATHROOM:
VANITY TOP ______
VINYL ______

HALL BATHROOM:
VANITY TOP ______
VINYL ______

CARPET:
$250.00 ADDED COST FOR HARDWOOD FLOORING FRONT ENTRANCE: ______
LIVING ROOM ______
FOYER ______
STUDY ______
BEDROOM #1 ______
BEDROOM #2 ______
BEDROOM #3 ______
BEDROOM #4 ______
(NOTE: Vinyl throughout home, other than kitchen, dining and baths cost an additional $2.00 per sq. ft.)

FIREPLACE STONE: ______
(NOTE: The fireplace in all homes with cathedral ceilings will have stone to middle height.)
FIREPLACE MANTLE BACKING BRACE (2" X 4"): YES ______ OR NO ______
CABINETS STAINS OR COLOR: ______
ALL CABINET DOOR AND ANY CABINET UPGRADES MUST BE IN CONTRACT ON "EXHIBIT C" AND ALSO PROOF OF PURCHASE ON DASS HOMES COST BREAK DOWN SHEET.
INTERIOR TRIM STAIN OR COLOR: ______
CABINET HARDWARE ______

*ONE CHOICE OF CARPET COLOR
*TWO COLORS FOR VINYL
*TWO COLORS FOR VANITY AND COUNTER TOP

VINYL FLOORING WILL BE INSTALLED IN BATHROOMS, KITCHEN, UTILITY, AND BREAKFAST AREAS ONLY. ANY VINYL INSTALLED IN ANY OTHER AREAS, BUYER(S) AGREE TO PAY AN ADDITIONAL $1.00 PER SQUARE FOOT FOR UNDERLAYMENT.

______ (BUYER, OWNER)

______ (BUYER, OWNER)

EXHIBIT B - PART 2

BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL 36578

BUYER(S) GREG E. WIGGINS

DATE: DECEMBER 9TH, 2008

1. Ceiling fan outlets ONLY WHERE: LIVING AND ALL BEDROOMS
2. Ceiling fan installation ONLY WHERE: NONE
3. Dishwasher cutout-? YES X OR NO___
4. Dishwasher hookup? YES___ OR NO X
5. Ice-maker line only installed: YES X OR NO___
6. Cabinet space for standard 30" free standing electric stove YES___ OR NO___

   Drop-in stove: YES___ OR NO___
7. Gas utilities: YES___ OR NO___
8. Termite Treatment; one twelve month bond: YES___ OR NO X
   (No termite treatment shall be provided for homes on pilings.)
9. Electric hookup: Standard overhead___ OR underground___
10. Clean up debris and haul off? NO. If yes, additional costs must be added to total price and Exhibit C of Contract.
11. Payment towards Builder's Risk Insurance during construction period.
    YES___ OR NO X
    Buyer(s) agree(s) to furnish Builder's Risk policy payable to Seller and if necessary, also to Lender or Buyer(s) prior to and during construction of home until construction of home is complete.
12. All utilities are stubbed out only to exterior (electric service wire, gas, plumbing, and sewer).
13. Gutters, parquet flooring and mini-blinds not included in standard price of home.

(I) Buyer(s) agree that all special changes to home plans have been made and incorporated into this contract. Buyer(s) further agrees that all color selections and selections of all goods have been made by Buyer(s), and upon execution of this Contract, both Parties agree that no changes will be made.

(II) Buyer(s) agree(s) that upon substantial completion of home, Buyer(s) and a Bass Homes, Inc., representative will do a walk through inspection of home and a punch list will be written up which is mutually agreeable by both parties. Buyer(s) hereby agree(s) that the initial walk through and resulting punch list will be the only walk through and punch list. Seller hereby agrees to correct or complete the items on the punch list and once finished, Buyer(s) agree(s) to immediately pay Seller the entire balance owed to the Seller under the contract or otherwise. If Seller should agree to do any extra work after the initial punch list, this work shall not commence until Seller has been paid in full. All other matters will be strictly related to the standard one year Builder's Warranty styled as a "Completion Certificate and Owner's Acceptance".

(III) Buyer(s) agree(s) that he and/or she shall not be allowed to take possession of the home until such time as Seller has been paid in full under the contract and has also been paid any additional cost, if any, which has been added to the original contract price. Buyer(s) acknowledge(s) that, until such time as Seller has been paid in full the contract price and signed a "Completion Certificate and Owner's Acceptance," Buyer(s) will not be allowed to occupy or store any of his and/or her possessions in said home. In the event that Buyer(s) fail to the agreed terms above, Buyer(s) shall in this agreement, pay to the Seller a sum of $1,000.00 per month rent for possessing the newly constructed home for storing any of Buyer(s) goods or occupying the home in any manner. The monthly $1,000.00 rate will be paid to Seller until Seller is paid in full.

(SELLER, BUILDER) (BUYER, OWNER)

(BUYER, OWNER)

EXHIBIT C
BASS HOMES, INC., 14661 HWY. 59 SOUTH, STAPLETON, AL 36578

NAMES OF BUYER(S): GREG E. WIGGINS

DATE: DECEMBER 9TH, 2008

TYPE OF HOME: CEMPLANK

NAME OF HOME BEING BUILT: CUSTOM PLAN

PLEASE LIST ANY CHANGES OTHER THAN "STANDARD" THAT IS STATED IN THIS CONTRACT REGARDLESS OF HOW SMALL OR LARGE THE CHANGE MAY BE. ANYTHING WRITTEN IN EXHIBIT "C" WILL OVERRIDE THE "STANDARD" CONTRACT AND BLUEPRINTS.

1. FOUNDATION TO BE A CONCRETE SLAB (MONOLITHIC STYLE) WITH BRICK FOOTINGS DROPPED TO GROUND LEVEL. SLAB HEIGHT FOR FINISHED FLOOR HEIGHT TO BE MINIMUM TO SOUTHERN CODES BUT AN AVERAGE NOT LESS THAN 10" FROM EXISTING LOT GRADE.
2. INSTALL DIMENSIONAL SHINGLES ON ROOF OF HOME IN LIEU OF STANDARD SHINGLES FROM BASS HOME SAMPLES.
3. INSTALL STANDARD 9' CEILINGS THROUGHOUT HOME.
4. INSTALL STANDARD FLUSH CABINETS (DOORS & DRAWERS) THROUGHOUT HOME FROM BASS HOMES SAMPLES. NOTE: ALL WHITE CABINETS WILL BE FIBER-CORE MATERIAL WITH LAMINATED WOOD FACE. BB
5. ADD A 22' X 22' TWO CAR FINISHED GARAGE WITH 7' X 16' AUTO OPEN DOOR THREE WINDOWS AND ONE 3' WIDE STANDARD WALK IN DOOR. GW (6' Tall Frost windows) GARAGE DOOR TO HAVE GLASS PANELS (ROLLUP DOOR). GARAGE TO BE JOINED TO MAIN HOUSE WITH A SPECIAL CRICKET STYLE ROOF TO CORRECT WATER SHED FROM EACH ROOF CONFLICTING.
6. FRONT PORCH DIMENSIONS WILL BE 6' X 30.
7. DELETE ALL TREY AND BOX CEILINGS.
8. INSTALL DOUBLE WINDOWS WITH TRANSOMS ON FRONT OF HOME.
9. INSTALL DELUXE INTERIOR BASE TRIM ALL INTERIOR OF HOME. BASE ONLY UPGRADED.
10. INSTALL R-30 BLOWN INSULATION IN LIEU OF STANDARD ATTIC INSULATION.
11. INSTALL PORCELAIN CERAMIC TILE IN BATH, KITCHEN AND BREAKFAST AREA.
12. LIGHT FIXTURE ALLOWANCE $650.00 OR BASS HOMES STANDARD FIXTURES. BUYERS CHOICE OF EITHER.
13. PORCH COLUMNS TO BE STANDARD 6" X 6" POST WRAPPED WITH CEM-PLANK.
14. ALL EVES AND EXTERIOR CEILINGS (ALL MILLWORK) TO BE CEMPLANK SIDING MATERIAL.
15. 25 YEAR SHINGLES FROM BASS HOMES SAMPLES.
16. INSTALL THREE PHONE JACKS AT BUYERS CHOICE OF LOCATIONS.
17. WALL AT PORCH AREAS TO BE VERTICAL CEMPLANK BOARD AND BATTING SIDING IN LIEU OF BRICK.
18. INSTALL STANDARD BASS HOME FIREPLACE WITH STONE FRONT (SAME AS MODEL HOME).
19. ROOF PITCH TO BE 7 1/2 ON 12" PER FOOT RISE.
20. ADD A 10' X 10' CONCRETE SLAB AT REAR PORCH AS PER PLANS.
21. BASS HOMES TO DRAW BUILDING PRINTS AT NO CHARGE.
22. INSTALL WOOD FLOOR AT LIVING ENTRY. FROM BASS HOMES SAMPLES.
23. INSTALL STANDARD TERMITE PRE-TREAT.
24. ADD THE SAME PANTRY THAT'S IN THE REDWOOD MODEL KITCHEN TO BUYERS UTILITY.

DECEMBER 9TH, 2008
DATE

[signature]
(SELLER, BUILDER)

Greg E. Wiggins
(BUYER, OWNER)

(BUYER, OWNER)

Case 13-13552-sr Doc 31-3 Filed 11/20/14 Entered 11/20/14 12:15:22 Desc

EXHIBIT D

BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL 36578

NAME OF BUYER(S): GREG E. WIGGINS

DATE: DECEMBER 9TH, 2005

TYPE OF HOME: CEMPLANK

MODEL: CUSTOM PLAN

BUYER(S) AGREES TO PROVIDE THE FOLLOWING ITEMS PRIOR TO COMMENCEMENT OF CONSTRUCTION UNLESS OTHERWISE STATED IN THIS CONTRACT:

1. Electricity necessary to construct home within 25 feet of proposed structure. All expenses to be from Buyer(s) including power bills.
2. Water supply necessary to construct home within 25 feet of proposed structure. All expenses to be from Buyer(s) including water bills.
3. Temporary driveway (and culvert if necessary) within 25 feet of proposed structure. Driveway material must be sufficient to support heavy equipment delivering building goods.
4. Clearing of lot for proposed structure. Clearing includes trees, stumps or any type of debris above or below ground to Seller's satisfaction.
5. Elevation certification in flood areas when required in connection with builder obtaining building permit. Seller will provide building permit only.
6. Water supply within 500 feet for installing pilings for homes being built on pilings.
7. Cost of plan reviews when required by county or city building departments.
8. Engineering cost of certifying home plans when required by building codes or governmental agencies.

BUYER(S) SHALL PROVIDE THE FOLLOWING ITEMS DURING OR AT COMPLETION OF CONSTRUCTION (UNLESS OTHERWISE STATED IN THIS CONTRACT). NOTE: SOME ITEMS MAY BE AT BUYER(S) DISCRETION UNLESS REQUIRED BY MORTGAGE HOLDER.

1. Septic system and line to stub-out at home.
2. Water meter, well, and line to stub-out at home.
3. Buyers to connect water and sewer line to stub-out at foundation of home.
4. Television antenna outlets, cable outlets, telephone outlets or other items of similar nature.
5. Mirrors in baths, soap dishes, towel bars, etc.
6. Safety bars or grab bars in tubs and showers.
7. Shower doors.
8. Mantel over fireplace.

BUYER(S) ACKNOWLEDGES AND AGREES WITH THE FOLLOWING POLICIES AND STATEMENTS:

1. Seller will not be responsible for any property damage to Buyer(s)' lot in connection with Seller constructing Buyer(s)' home.
2. Seller will not do any landscaping or leveling of lot during or after completion of this contract unless otherwise stated in this contract.
3. When homes are sold with brick veneer on exterior of home, all walls under porch and gables shall having siding (specified type in contract) in those areas unless otherwise written in contract. All exterior steps and rails shall be wood.
4. When final building plans are completed, Buyer(s) agrees that Seller will not build home to exact dimensions and cosmetic details that may appear on plans due to a large volume of plan changes that Seller produces. Seller and Buyer(s) agrees to build home according to sales brochure plan and preliminary plans.
5. Seller will not warrant the performance or appearance of any clear sealers or semi transparent stains installed by Seller on exterior of homes such as Clear Wood Finish or similar brand.
6. Buyer(s) shall not take any possession of home or move any goods in until seller receives final payment.
7. Seller is not required to provide buyer(s) any building drawings or blueprints other than a preliminary style set of plans with room sizes and exterior elevations of all sides of home.
8. Buyers strictly agree that they are not allowed to perform any construction improvements or install any goods or improvements in home until final payment of home is payed to seller at completion. SHOULD BUYER(S) VIOLATE OR BREAK THE TERMS OF THIS AGREEMENT HEREBY STATED IN ITEM 8 OF THE EXHIBIT D OF CONTRACT THEN BUYER(S) WILL PAY SELLER AN ADDITIONAL $1,000.00 TO THE TOTAL PRICE OF THIS CONTRACT AT THE TIME OF FINAL PAYMENT.
9. Buyer(s) agree upon substantial completion of construction of home that one (1) time walk-through inspection will be done by appointment with a Bass Homes, Inc. representative and a written list of items will be produced. Bass Homes, Inc. will complete all listed items from the one (1) time walk-through inspection. Buyer(s) agree to close immediately upon completion of list. Buyer(s) and Seller agree that no additional walk-through or additional items will be allowed after the initial one (1) time walk-through and item list.
10. "completion certificate of owners acceptance" warranty limitations are a part of this contract.

Buyers agree to pay the full amount for materials and labor of any special additions/code enforcements that are required by building departments, mortgage lenders, or any type of governmental agency that are not standard in Bass Homes, Inc., model home or sold plans and specs. This includes, but is not limited to, the following items: special insulation, underpinning of home's on pilings, structural engineering, certification of plans, special depth of concrete footings (i.e. prairie soil, white sand in coastal areas, unstable soil), or any items that must be added to meet the requirements of any of the above governmental agencies, companies, or departments.

(SELLER, BUILDER)

(BUYER, OWNER)

(BUYER, OWNER)

EXHIBIT "E"

BASS HOMES INC. 34661 STATE HWY 59 SOUTH STAPLETON, AL.36578

BUYER(S)GREG E. WIGGINS

BUYER(S) AGREE TO THE FOLLOWING TERMS, DISCLOSURE NOTICES AND COST ADDENDUMS TO BE ADDED TO THE TOTAL PRICE OF THIS CONTRACT (COST WHEN APPLICABLE) TO THE UNDERSIGNED BUYER(S).

1. ANY ENGINEERING COST OF BUYER(S) PLANS IF REQUIRED BY MORTGAGE LENDER, BUILDING DEPARTMENTS OR ANY TYPE OF AGENCY THAT CAN ENFORCE SAID REQUIREMENT THEREOF.

2. IF BUYER(S) COMMENCE/S WITH ANY IMPROVEMENTS, PERFORM ANY TYPE OF WORK ON HOME DESCRIBED IN THIS CONTRACT OR HIRE ANY WORK TO BE PERFORMED BY OTHERS IN THE ACTUAL HOME DESCRIBED IN THIS CONTRACT INCLUDING ADDING ON TO THE STRUCTURE OF THIS HOME, PRIOR TO PAYING THE FINAL PAYMENT OF THIS CONTRACT TO BASS HOMES INC. TOGETHER WITH SIGNING THE "COMPLETION OF OWNERS ACCEPTANCE", THEN IT IS AGREED THAT BUYER(S) SHALL PAY BASS HOMES INC. THE SUM OF $5,000.00 ADDITIONAL COST ABOVE THE TOTAL PRICE IN THIS CONTRACT AT TIME OF FINAL PAYMENT.

3. RECESSED LIGHTS ARE NOT INCLUDED IN THE REDWOOD MODEL OR ANY OTHER HOME PLANS UNLESS ADDED TO COST BREAKDOWN AND LISTED ON EXHIBIT "C" OF THIS CONTRACT.

4. BUYERS CANNOT PROVIDE ANY LIGHT FIXTURES, PLUMBING FIXTURES OR ANY OTHER TYPE OF GOODS IN CONNECTION WITH THIS CONTRACT. ALL OF THE ABOVE SHALL BE STANDARD FIXTURES FROM BASS HOME INC.

5. GRINDER PUMPS WHEN APPLICABLE FOR SEWER WILL NOT BE CONNECTED BY THE SELLER. BUYERS TO PAY FOR THE ELECTRICAL AND PLUMBING CONNECTIONS.

6. ELECTRICAL WIRING FOR PUMPS AND WELLS WHEN APPLICABLE ARE NOT INCLUDED IN TOTAL PRICE.

7. CONCRETE SLABS UNDER BEACH HOMES ON PILINGS WILL NOT BE WARRANTED AGAINST SLIGHT PUDDLES OF WATER AFTER RAINS DUE TO THE NATURE OF A SLAB FINISH. SLABS UNDER PILING HOMES WILL NOT INCLUDE PORCH OR DECK AREAS.

8. BUYER(S) LOT SLOPE WILL BE ASSESSED FOR SLOPE THAT MAY EXCEED THE REQUIREMENTS OF THIS CONTRACT ON EXHIBIT "A" AT TIME OF COMMENCEMENT OF CONSTRUCTION OF FOUNDATION.

9. FIREPLACE MANTLES WILL NOT BE INCLUDED ON ANY HOMES AS A STANDARD ITEM IN ANY HOME. SELLER WILL INSTALL A 2' X 4' SUPPORT AT MANTLE HEIGHT FOR BUYER(S) TO INSTALL A MANTLE AFTER COMPLETION OF HOME.

10. BUYER(S) ARE RESPONSIBLE FOR CAULKING DOOR THRESH-HOLDS AS NEEDED BUT NOT LESS THAN EACH AND EVERY ANNIVERSARY DATE OF ORIGINAL CONSTRUCTION COMPLETION OF HOME. BUYERS ARE RESPONSIBLE FOR THE ANNUAL INSPECTION OF FIREPLACE FLASHING AND CAULKING. BUYERS ARE RESPONSIBLE FOR CHECKING AND CAULKING EXTERIOR OF WINDOWS ANNUALLY.

11. BASS HOMES INC. WILL NOT WARRANT THE PERFORMANCE OF HEATING AND COOLING IN ONE AND ONE HALF STORY HOMES THAT DO NOT HAVE AN UPSTAIRS SEPARATE UNIT. THE UPSTAIRS WILL HAVE A TENDENCY TO MAINTAIN SEVERAL DEGREES DIFFERENCE IN TEMPERATURE WHICH IS STANDARD TO THE CONSTRUCTION INDUSTRY.

12. BUYER(S) AND SELLER AGREE THAT THERE ARE NO OTHER PROMISES OTHER THAN THAT WHICH IS WRITTEN IN THIS CONTRACT. THIS MEANS INCLUDING ANY VERBAL PROMISES THAT BUYER(S) MAY CLAIM THAT A SALES AGENT OR BASS HOMES INC. EMPLOYEE OR REPRESENTATIVE COULD HAVE IMPLIED OR PROMISED HE OR SHE.

13. BUYERS HEREBY AGREE THAT BASS HOMES INC. WILL NOT ACCEPT ANY LIABILITY OF BUYERS COST OF UTILITY BILLS DURING CONSTRUCTION OF HOME OR AFTER BUYER(S) TAKES OCCUPANCY OF THIS HOME DESCRIBED HEREIN. THIS INCLUDES ANY COMPLAINT BUYER(S) MAY ASSERT OF INFLATED POWER BILL'S OR ANY TYPE OF OTHER UTILITY.

BUYER(S) ______________________

BUYER(S) ______________________

DECEMBER 9TH, 2008
DATE

Exhibit " F "

RE: GREG E. WIGGINS

COMPLETION CERTIFICATE AND OWNER'S ACCEPTANCE;
LIMITED ONE-YEAR WRITTEN WARRANTY

The undersigned, owner (whether one or more) of the real property described in their contract with BASS HOMES, INC. ("Contractor") dated : DECEMBER 9TH, 2008 hereby acknowledge and certify as follows:

1. All materials and labor provided for in said contract have been furnished and installed by the Contractor or his subcontractors on our said real property in a good and workmanlike manner; that we have made a full and complete inspection of the same; that all construction and other work called for in said contract has been satisfactorily completed; that the home is fit, suitable and habitable; and the improvements are hereby accepted by us as built.

2. Contractor did not manufacture any materials used in the construction of this home; that the Contractor does not warrant any of the said materials against any defects in QUALITY, FITNESS or MERCHANTABILITY; that the Contractor will make good only on the workmanship of the actual construction of home; and that any and all claims related to the materials used in construction shall be pursued by customers ONLY against the manufacturers of any materials provided to the Contractor.

3. Contractor hereby gives a limited warranty on the home located at WELL RD DAMASCAS AL. for a period of one ( 1 ) year following closing or occupancy by the Buyer(s), whichever event occurs first.

4. Contractor warrants the home to be free from latent defects for a period of one ( 1 ) year following closing or occupancy, whichever event occurs first.

5. THIS WARRANTY IS GIVEN IN LIEU OF ANY AND ALL OTHER WARRANTIES, EITHER EXPRESSED OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, HABITABILITY AND /OR WORKMANSHIP.

6. Contractor shall not be liable under the parties' contract or this warranty unless written notice of the latent defect(s) shall have been given by Buyer(s) to Contractor within the (1) year warranty. Steps taken by the Contractor to correct any defect(s) shall not act to extend the warranty period described hereunder.

7. Buyers confirm that they have performed a walk-thru inspection prior to signing the Completion Certificate and Owners Acceptance; Limited One-Year Written Warranty. Further Buyer(s) agree that their signatures below signify that they have accepted the construction of the home and waive any further right to complain of cosmetic deficiencies and the quality of workmanship or any other matter that does not constitute a latent defect.

8. Any and all remedies of the Buyer(s) and any liability of the Contractor shall be governed strictly by the terms of this one-year limited warranty. Neither the Contractor nor its assigns shall be liable for any incidental or consequential damages, under no circumstances may the Buyer(s) recover damages in excess of the amount of the subject building construction contract.

9. Any reference to the singular herein shall also encompass the plural where appropriate; and any reference to the plural shall also encompass the singular where appropriate.

BUYER(S) INITIALS OF RECEIPT OF THIS DOCUMENT BEFORE CONSTRUCTION OF HOME:
BUYER: [signature] BUYER: ____________

DATE: ____________ BUYER: XXXXXXXXXXXXXX ________

DATE: ____________ BUYER: XXXXXXXXXXXXXX ________

Witness: ________________ DATE: ____________

# EXHIBIT "D"

AO 441 (Rev. 07/10) Summons on Third-Party Complaint

# UNITED STATES DISTRICT COURT

for the

Eastern District of Louisiana

Braxton H. Collins, et al.
*Plaintiff*
v.
Ace Home Center, Inc.
*Defendant, Third-party plaintiff*
v.
Devon International Industries, Inc.
*Third-party defendant*

Civil Action No. MDL No.: 2047; Case No.: 13-6652

## SUMMONS ON A THIRD-PARTY COMPLAINT

To: *(Third-party defendant's name and address)* Devon International Industries, Inc.
1100 First Avenue
Suite 100
King of Prussia, PA 19406

A lawsuit has been filed against defendant Ace Home Center, Inc., who as third-party plaintiff is making this claim against you to pay part or all of what the defendant may owe to the plaintiff Braxton and Kerrie Collins.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff and on the defendant an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the defendant or defendant's attorney, whose name and address are:

Danny J. Collier, Jr., Esq., Luther, Collier, Hodges & Cash LLP, Post Office Box 1002, Mobile, Alabama 36633

It must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Stephen W. Mullins, Esq., Luckey & Mullins, PLLC, Post Office Box 990, Ocean Springs, Mississippi 39566

If you fail to respond, judgment by default will be entered against you for the relief demanded in the third-party complaint. You also must file the answer or motion with the court and serve it on any other parties.

A copy of the plaintiff's complaint is also attached. You may – but are not required to – respond to it.

Date: ______________

*CLERK OF COURT*

______________________________
*Signature of Clerk or Deputy Clerk*

AO 441 (Rev. 07/10) Summons on Third-Party Complaint (Page 2)

Civil Action No. MDL No.: 2047; Case No.: 13-6652

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for *(name of individual and title, if any)* Devon International Industries, Inc.
was received by me on *(date)* 09/19/2014 .

☐ I personally served the summons on the individual at *(place)* ______ on *(date)* ______ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* ______ , a person of suitable age and discretion who resides there, on *(date)* ______ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* ______ , who is designated by law to accept service of process on behalf of *(name of organization)* ______ on *(date)* ______ ; or

☐ I returned the summons unexecuted because ______ ; or

☑ Other *(specify)*: Certified Mail .

My fees are $ ______ for travel and $ ______ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: 19 Sept 2014

[signature]
*Server's signature*

Danny J. Collier, Jr./Attorney
*Printed name and title*

Luther, Collier, Hodges & Cash LLP
Post Office Box 1002
Mobile, Alabama 36633
(251) 694-9393
*Server's address*

Additional information regarding attempted service, etc:

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | : | MDL NO.: 2047 |
| | : | SECTION: L |
| **This Document Relates To:** | : | JUDGE FALLON |
| | : | MAG. JUDGE WILKINSON |
| **Braxton H. Collins, et al. vs. Bass Homes, Inc., et al.; S.D. Mississippi, C.A. No. 1:13-00297** | : | **Case No.: 13-6652** |

---

**FIRST AMENDED THIRD-PARTY COMPLAINT**

---

COMES NOW, ACE HOME CENTER, INC., Defendant and Third-Party Plaintiff, and hereby files this First Amended Third-Party Complaint adding DEVON INTERNATIONAL INDUSTRIES, INC., f/k/a DEVON INTERNATIONAL TRADING, INC., a/k/a DEVON BUILDING PRODUCTS, TAISHAN GYPSUM CO. LTD., and fictitious Third-Party Defendants F through O, as follows:

**PARTIES**

1. Defendant/Third-Party Plaintiff Ace Home Center, Inc. ("AHC"), is a corporation organized and existing under the laws of the State of Alabama.

2. Third-Party Defendant Pate Stevedore Company, Inc. ("Pate"), is a corporation organized and existing under the laws of the State of Florida. Upon information and belief, Pate offloaded, stored, delivered, imported, shipped, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed and/or supplied the Chinese drywall at issue herein.

3. Third-Party Defendant Pensacola Stevedore Company, Inc. ("PSC"), is a corporation organized and existing under the laws of the State of Florida. Upon information and belief, PSC offloaded, stored, delivered, imported, shipped, purchased, sold, marketed,

warranted, tested, inspected, advertised, surveyed and/or supplied the Chinese drywall at issue herein.

4. Third-Party Defendant Fireman's Fund Insurance Company ("FFIC") is a corporation organized and existing under the laws of the State of California. Upon information and belief, FFIC controlled, took possession of and/or title to, offloaded, stored, delivered, imported, shipped, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed, and/or supplied the Chinese drywall at issue herein; and/or acted as agent or fiduciary for its insured, Devon International Industries, Inc. f/k/a Devon International Trading, Inc., a/k/a Devon Building Products concerning the Chinese drywall at issue herein.

5. Third-Party Defendant Devon International Industries, Inc., f/k/a Devon International Trading, Inc., a/k/a Devon Building Products ("Devon") is a corporation organized and existing under the laws of the State of Pennsylvania. Upon information and belief, Devon specified, ordered, shipped, imported, controlled, took possession of and/or title to, offloaded, stored, delivered, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed, and/or supplied the Chinese drywall at issue herein.

6. Third-Party Defendant Taishan Gypsum Co. Ltd. ("Taishan") is a Chinese corporation organized and existing under the laws of the People's Republic of China. Upon information and belief, Taishan designed, processed, produced, manufactured, fabricated, exported, shipped, distributed, delivered, supplied, inspected, tested, warranted, marketed, sold and/or placed within the stream of commerce the Chinese drywall at issue herein.

7. Fictitious Third-Party Defendants A, B, C, D and E, whose identities and true names are unknown and who will be identified through discovery, controlled, took possession of and/or title to, offloaded, stored, delivered, imported, shipped, purchased, sold, marketed,

warranted, tested, inspected, advertised, surveyed, and/or supplied the Chinese drywall at issue herein.

8. Fictitious Third-Party Defendants F, G, H, I and J, whose identities and true names are unknown and who will be identified through discovery, specified, ordered, shipped, imported, controlled, took possession of and/or title to, offloaded, stored, delivered, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed, and/or supplied the Chinese drywall at issue herein.

9. Fictitious Third-Party Defendants K, L, M, N and O, whose identities and true names are unknown and who will be identified through discovery, designed, processed, produced, manufactured, fabricated, exported, shipped, distributed, delivered, supplied, inspected, tested, warranted, marketed, sold and/or placed within the stream of commerce the Chinese drywall at issue herein.

**FACTUAL ALLEGATIONS**

10. Taishan and Fictitious Third-Party Defendants K through O manufactured, produced and placed within the stream of commerce the Chinese drywall ("CDW") at issue herein.

11. Devon and Fictitious Third-Party Defendants F through J specified, ordered, shipped, imported, marketed and/or sold the CDW at issue herein.

12. Devon made a claim against its FFIC insurance policy for physical damage to the CDW cargo during shipment.

13. FFIC took title to the CDW following Devon's cargo damage claim. Alternately, FFIC exercised control over the CDW. Alternately, FFIC acted as agent or fiduciary for Devon to mitigate the cargo damage claim.

14.     Devon and/or FFIC sold the "Devon Building Products" CDW to Pate and/or PSC.

15.     Taishan, Devon, FFIC, Pate, PSC and Fictitious Third-Party Defendants A through O put the CDW into the stream of commerce, to be purchased by AHC and, ultimately, by AHC customers.

16.     AHC purchased some of the CDW from Pate and/or PSC.

17.     On October 3, 2013, Plaintiffs Braxton and Kerrie Collins filed an Amended Complaint against AHC (attached as Exhibit A).

18.     Plaintiffs Braxton and Kerrie Collins' claims against AHC arise from the 2008 construction of a house located at 10720 Hwy 614 Moss Point, Mississippi.

19.     The house was allegedly constructed with CDW purchased from AHC.

20.     If true, Taishan, Devon, FFIC, Pate, PSC and/or Fictitious Third-Party Defendants A through O are liable to AHC for the CDW ultimately used to construct the Collins' house.

## COUNT I

## COMMON LAW OR EQUITABLE INDEMNITY

21.     AHC adopts and incorporates the allegations of paragraphs 1 through 20 as though fully set forth herein.

22.     AHC was without fault in the purchase and sale of the CDW. Any liability it may incur to the plaintiffs will be merely vicarious, constructive, derivative or technical in nature.

23.     Taishan and/or Fictitious Third-Party Defendants K through O designed, manufactured, fabricated, marketed, sold and placed into the stream of commerce CDW which the plaintiffs claim was unreasonably dangerous in its normal use in that it emitted noxious gases

and caused damage to person and property.

24. Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O failed to act with due diligence in representing that the CDW met certain ASTM standards; and provided stamping and labeling on the CDW sheets and packaging that falsely represented to the United States purchasers that the CDW met U.S. safety standards, that the CDW was safe and fit for its intended use and that the CDW was equivalent to or exceeded the quality of U.S. drywall.

25. Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O made material misrepresentations relied upon by AHC and which caused AHC damages.

26. Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O failed to act with due diligence or reasonable care in placing the CDW into the stream of commerce by failing to test or otherwise ensure the product would safely perform as represented and intended.

27. Pate, PSC, FFIC, Devon, Taishan and/or Fictitious Third-Party Defendants A through O knew or should have known of alleged defects or dangers in the CDW supplied to AHC at issue herein.

28. Pate, PSC, FFIC, Devon, Taishan and/or Fictitious Third-Party Defendants A through O failed to warn AHC of alleged defects or dangers in the CDW supplied to AHC at issue herein.

29. In the event that AHC is determined to be liable to the plaintiffs, said liability will be a proximate result of the active negligence of Pate, PSC, FFIC, Devon, Taishan and/or Fictitious Third-Party Defendants A through O, while the negligence of AHC, if any, was at most passive in nature.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd., and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

**COUNT II**

**BREACH OF CONTRACT**

30. AHC adopts and incorporates the allegations of paragraphs 1 through 29 as though fully set forth herein.

31. By virtue of the sale of defective CDW to ACH, Pate, PSC, FFIC, Devon, Taishan and/or Fictitious Third-Party Defendants A through O breached contract(s) and caused damages to AHC, directly or as third-party beneficiary, to include damages for attorney's fees, costs and any liability it may incur to the plaintiffs herein.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd., and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

**COUNT III**

**NEGLIGENCE AND GROSS NEGLIGENCE**

32. AHC adopts and incorporates the allegations of paragraphs 1 through 31 as though fully set forth herein.

33. Taishan and/or Fictitious Third-Party Defendants K through O designed,

manufactured, fabricated, marketed, sold and placed into the stream of commerce CDW which the plaintiffs claim was unreasonably dangerous in its normal use in that it emitted noxious gases and caused damage to person and property.

34.     Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O failed to act with due diligence in representing that the CDW met certain ASTM standards; and provided stamping and labeling on the CDW sheets and packaging that falsely represented to the United States purchasers that the CDW met U.S. safety standards, that the CDW was safe and fit for its intended use and that the CDW was equivalent to or exceeded the quality of U.S. drywall.

35.     Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O made material misrepresentations relied upon by AHC and which caused AHC damages.

36.     Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O failed to act with due diligence or reasonable care in placing the CDW into the stream of commerce by failing to test or otherwise ensure the product would safely perform as represented and intended.

37.     Pate, PSC, FFIC, Devon, Taishan and/or Fictitious Third-Party Defendants A through O knew or should have known of alleged defects or dangers in the CDW supplied to AHC at issue herein.

38.     Pate, PSC, FFIC, Devon, Taishan and/or Fictitious Third-Party Defendants A through O failed to warn AHC of alleged defects or dangers in the CDW supplied to AHC at issue herein.

39.     Pate, PSC, FFIC, Devon, Taishan and/or Fictitious Third-Party Defendants A through O owed a duty of reasonable care and due diligence in designing, processing, producing, manufacturing, fabricating, exporting, shipping, distributing, delivering, supplying, inspecting,

testing, warranting, marketing, specifying, taking possession of, control over and/or title to, offloading, storing, importing, purchasing, advertising, surveying, selling and/or placing within the stream of commerce the CDW at issue herein.

40. Third-Party Defendants negligently, recklessly and/or wantonly breached their duty to AHC.

41. As a proximate result of the Third-Party Defendants' breach of duty to AHC, AHC has suffered and will continue to suffer damages including attorney's fees, costs and any liability it may incur to the plaintiffs herein.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd., and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

**COUNT IV**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

42. AHC adopts and incorporates the allegations of paragraphs 1 through 41 as though fully set forth herein.

43. In supplying and/or selling the CDW, the Third-Party Defendants impliedly warranted the merchantability of the product and its fitness for its intended purposes.

44. To the extent AHC incurs any liability to the plaintiffs such liability will have been a proximate result of the Third-Party Defendants' breach of the implied warranty of merchantability.

45. AHC has incurred and will continue to incur attorney's fees and costs and any

liability it may incur to the plaintiffs herein.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd., and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

**COUNT V**

**BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**

46. AHC adopts and incorporates the allegations of paragraphs 1 through 45 as though fully set forth herein.

47. In supplying and/or selling the CDW, the Third-Party Defendants impliedly warranted its fitness for a particular purpose.

48. To the extent AHC incurs any liability to the plaintiffs such liability will have been a proximate result of the Third-Party Defendants' breach of the implied warranty of fitness for a particular purpose.

49. AHC has incurred and will continue to incur attorney's fees and costs and any liability it may incur to the plaintiffs herein.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd., and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

**COUNT VI**

**BREACH OF EXPRESS WARRANTY**

50. AHC adopts and incorporates the allegations of paragraphs 1 through 49 as though fully set forth herein.

51. Third-Party Defendants expressly affirmed that the product was Gypsum Drywall with specifications identical to Georgia-Pacific Gypsum Drywall, an express warranty under the law. Alternately, Third-Party Defendants expressly affirmed that the CDW met certain ASTM standards. Alternately, Third-Party Defendants expressly affirmed that the CDW met or exceeded U.S. safety standards and/or that the CDW was equivalent to or exceeded the quality of U.S. drywall.

52. In the event AHC is found liable to the plaintiffs, such liability will have been the proximate result of the Third-Party Defendants' breach of express warranty. The Third-Party Defendants' breach of warranty has damaged and will continue to damage AHC by virtue of attorney's fees, costs and any liability it may incur to the plaintiffs.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd., and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd., and

fictitious Third-Party Defendants A through O in an amount equal to any judgment entered against Ace Home Center, Inc., and/or in the amount of any settlement entered into with the plaintiffs to resolve the subject litigation, plus attorney's fees and costs. Ace Home Center, Inc., prays for such other and further relief that this Honorable Court deems just and proper.

**THIRD-PARTY PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**

Respectfully submitted,

/ s / ***Danny J. Collier, Jr.***

Danny J. Collier, Jr., Esq.
E. Barrett Hails, Esq.
Attorneys for Ace Home Center, Inc.

OF COUNSEL:

LUTHER, COLLIER, HODGES & CASH LLP
Post Office Box 1002
Mobile, Alabama 36633
(251) 694-9393 Office
(251) 694-9392 Fax
dcollier@lchclaw.com
bhails@lchclaw.com

**SERVE BY CERTIFIED MAIL:**

Devon International Industries, Inc.
1100 First Avenue
Suite 100
King of Prussia, PA 19406

Taishan Gypsum Co. Ltd.
c/o Richard C. Stanley, Esq.
Thomas P. Owen, Jr., Esq.
Stanley, Reuter, Ross, Thornton & Alford, LLC
909 Poydras Street
Suite 2500
New Orleans, Louisiana 70112

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing First Amended Third-Party Complaint has been served on Plaintiffs' Liaison Counsel, Russ Herman and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand-delivery upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that

the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 19th day of September, 2014.

Stephen W. Mullins, Esq.
Luckey & Mullins, PLLC
Post Office Box 990
Ocean Springs, MS 39566
smullins@luckeyandmullins.com

David C. Coons, Esq.
Christopher A. D'Amour, Esq.
Adams and Reese LLP
4500 One Shell Square
New Orleans, LA 70139
david.coons@arlaw.com
chris.damour@arlaw.com

Heather M. Houston, Esq.
Caroline Pryor, Esq.
Carr Allison
6251 Monroe Street
Suite 200
Daphne, Alabama 36526
hhouston@carrallison.com
cpryor@carrallison.com

S. Wesley Pipes, Esq.
Pipes Hudson & Watts, LLP
Post Office Box 989
Mobile, Alabama 36601
wesley@pipeshudsonwatts.com

Gary J. Russo, Esq.
Jones Walker LLP
600 Jefferson Street
Suite 1600
Lafayette, LA 70501
grusso@joneswalker.com

Richard C. Stanley, Esq.
Thomas P. Owen, Jr., Esq.
Stanley, Reuter, Ross, Thornton & Alford, LLC
909 Poydras Street
Suite 2500
New Orleans, Louisiana 70112
rcs@stanleyreuter.com
tpo@stanleyreuter.com

Joe Cyr, Esq.
Frank T. Spano, Esq.
Courtney L. Colligan, Esq.
Hogan Lovells US LLP
875 Third Avenue
New York, New York 10022
Joe.cyr@hoganlovells.com
Frank.spano@hoganlovells.com
Courtney.colligan@hoganlovells.com

/ s / ***Danny J. Collier, Jr.***

OF COUNSEL

# EXHIBIT “E”

AO 441 (Rev. 07/10) Summons on Third-Party Complaint

# UNITED STATES DISTRICT COURT

for the

Eastern District of Louisiana

Jason S. Herrington, et al.
*Plaintiff*
v.
Ace Home Center, Inc.
*Defendant, Third-party plaintiff*
v.
Devon International Industries, Inc.
*Third-party defendant*

Civil Action No. MDL No.: 2047; Case No.: 13-6653

**SUMMONS ON A THIRD-PARTY COMPLAINT**

To: *(Third-party defendant's name and address)* Devon International Industries, Inc.
1100 First Avenue
Suite 100
King of Prussia, PA 19406

A lawsuit has been filed against defendant Ace Home Center, Inc., who as third-party plaintiff is making this claim against you to pay part or all of what the defendant may owe to the plaintiff Jason and Cassie Herrington.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff and on the defendant an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the defendant or defendant's attorney, whose name and address are:

Danny J. Collier, Jr., Esq., Luther, Collier, Hodges & Cash LLP, Post Office Box 1002, Mobile, Alabama 36633

It must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Stephen W. Mullins, Esq., Luckey & Mullins, PLLC, Post Office Box 990, Ocean Springs, Mississippi 39566

If you fail to respond, judgment by default will be entered against you for the relief demanded in the third-party complaint. You also must file the answer or motion with the court and serve it on any other parties.

A copy of the plaintiff's complaint is also attached. You may – but are not required to – respond to it.

Date: ______________

*CLERK OF COURT*

______________________________
*Signature of Clerk or Deputy Clerk*

AO 441 (Rev. 07/10) Summons on Third-Party Complaint (Page 2)

Civil Action No. MDL No.: 2047; Case No.: 13-6653

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for *(name of individual and title, if any)* Devon International Industries, Inc. was received by me on *(date)* 09/19/2014 .

☐ I personally served the summons on the individual at *(place)* ______ on *(date)* ______ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* ______ , a person of suitable age and discretion who resides there, on *(date)* ______ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* ______ , who is designated by law to accept service of process on behalf of *(name of organization)* ______ on *(date)* ______ ; or

☐ I returned the summons unexecuted because ______ ; or

☑ Other *(specify)*: Certified Mail

My fees are $ ______ for travel and $ ______ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: 19 Sept 2014

[signature]
*Server's signature*

Danny J. Collier, Jr./Attorney
*Printed name and title*

Luther, Collier, Hodges & Cash LLP
Post Office Box 1002
Mobile, Alabama 36633
(251) 694-9393
*Server's address*

Additional information regarding attempted service, etc:

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | : | MDL NO.: 2047 |
| | : | SECTION: L |
| **This Document Relates To:** | : | JUDGE FALLON |
| | : | MAG. JUDGE WILKINSON |
| **Jason S. Herrington, et al. vs. Bass Homes, Inc., et al.; S.D. Mississippi, C.A. No. 1:13-00297** | : | **Case No.: 13-6653** |

---

**FIRST AMENDED THIRD-PARTY COMPLAINT**

---

COMES NOW, ACE HOME CENTER, INC., Defendant and Third-Party Plaintiff, and hereby files this First Amended Third-Party Complaint adding DEVON INTERNATIONAL INDUSTRIES, INC., f/k/a DEVON INTERNATIONAL TRADING, INC., a/k/a DEVON BUILDING PRODUCTS, TAISHAN GYPSUM CO. LTD., and fictitious Third-Party Defendants F through O, as follows:

**PARTIES**

1. Defendant/Third-Party Plaintiff Ace Home Center, Inc. ("AHC"), is a corporation organized and existing under the laws of the State of Alabama.

2. Third-Party Defendant Pate Stevedore Company, Inc. ("Pate"), is a corporation organized and existing under the laws of the State of Florida. Upon information and belief, Pate offloaded, stored, delivered, imported, shipped, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed and/or supplied the Chinese drywall at issue herein.

3. Third-Party Defendant Pensacola Stevedore Company, Inc. ("PSC"), is a corporation organized and existing under the laws of the State of Florida. Upon information and belief, PSC offloaded, stored, delivered, imported, shipped, purchased, sold, marketed,

warranted, tested, inspected, advertised, surveyed and/or supplied the Chinese drywall at issue herein.

4.      Third-Party Defendant Fireman's Fund Insurance Company ("FFIC") is a corporation organized and existing under the laws of the State of California. Upon information and belief, FFIC controlled, took possession of and/or title to, offloaded, stored, delivered, imported, shipped, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed, and/or supplied the Chinese drywall at issue herein; and/or acted as agent or fiduciary for its insured, Devon International Industries, Inc. f/k/a Devon International Trading, Inc., a/k/a Devon Building Products concerning the Chinese drywall at issue herein.

5.      Third-Party Defendant Devon International Industries, Inc., f/k/a Devon International Trading, Inc., a/k/a Devon Building Products ("Devon") is a corporation organized and existing under the laws of the State of Pennsylvania. Upon information and belief, Devon specified, ordered, shipped, imported, controlled, took possession of and/or title to, offloaded, stored, delivered, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed, and/or supplied the Chinese drywall at issue herein.

6.      Third-Party Defendant Taishan Gypsum Co. Ltd. ("Taishan") is a Chinese corporation organized and existing under the laws of the People's Republic of China. Upon information and belief, Taishan designed, processed, produced, manufactured, fabricated, exported, shipped, distributed, delivered, supplied, inspected, tested, warranted, marketed, sold and/or placed within the stream of commerce the Chinese drywall at issue herein.

7.      Fictitious Third-Party Defendants A, B, C, D and E, whose identities and true names are unknown and who will be identified through discovery, controlled, took possession of and/or title to, offloaded, stored, delivered, imported, shipped, purchased, sold, marketed,

warranted, tested, inspected, advertised, surveyed, and/or supplied the Chinese drywall at issue herein.

8. Fictitious Third-Party Defendants F, G, H, I and J, whose identities and true names are unknown and who will be identified through discovery, specified, ordered, shipped, imported, controlled, took possession of and/or title to, offloaded, stored, delivered, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed, and/or supplied the Chinese drywall at issue herein.

9. Fictitious Third-Party Defendants K, L, M, N and O, whose identities and true names are unknown and who will be identified through discovery, designed, processed, produced, manufactured, fabricated, exported, shipped, distributed, delivered, supplied, inspected, tested, warranted, marketed, sold and/or placed within the stream of commerce the Chinese drywall at issue herein.

## FACTUAL ALLEGATIONS

10. Taishan and Fictitious Third-Party Defendants K through O manufactured, produced and placed within the stream of commerce the Chinese drywall ("CDW") at issue herein.

11. Devon and Fictitious Third-Party Defendants F through J specified, ordered, shipped, imported, marketed and/or sold the CDW at issue herein.

12. Devon made a claim against its FFIC insurance policy for physical damage to the CDW cargo during shipment.

13. FFIC took title to the CDW following Devon's cargo damage claim. Alternately, FFIC exercised control over the CDW. Alternately, FFIC acted as agent or fiduciary for Devon to mitigate the cargo damage claim.

14. Devon and/or FFIC sold the "Devon Building Products" CDW to Pate and/or PSC.

15. Taishan, Devon, FFIC, Pate, PSC and Fictitious Third-Party Defendants A through O put the CDW into the stream of commerce, to be purchased by AHC and, ultimately, by AHC customers.

16. AHC purchased some of the CDW from Pate and/or PSC.

17. On October 2, 2013, Plaintiffs Jason and Cassie Herrington filed an Amended Complaint against AHC (attached as Exhibit A).

18. Plaintiffs, Jason and Cassie Herrington's claims against AHC arise from the 2008-2009 construction of a house located at 26975 Old Americus Road, Lucedale, Mississippi.

19. The house was allegedly constructed with CDW purchased from AHC.

20. If true, Taishan, Devon, FFIC, Pate, PSC and/or Fictitious Third-Party Defendants A through O are liable to AHC for the CDW ultimately used to construct the Herrington's house.

**COUNT I**

**COMMON LAW OR EQUITABLE INDEMNITY**

21. AHC adopts and incorporates the allegations of paragraphs 1 through 20 as though fully set forth herein.

22. AHC was without fault in the purchase and sale of the CDW. Any liability it may incur to the plaintiffs will be merely vicarious, constructive, derivative or technical in nature.

23. Taishan and/or Fictitious Third-Party Defendants K through O designed, manufactured, fabricated, marketed, sold and placed into the stream of commerce CDW which the plaintiffs claim was unreasonably dangerous in its normal use in that it emitted noxious gases

and caused damage to person and property.

24. Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O failed to act with due diligence in representing that the CDW met certain ASTM standards; and provided stamping and labeling on the CDW sheets and packaging that falsely represented to the United States purchasers that the CDW met U.S. safety standards, that the CDW was safe and fit for its intended use and that the CDW was equivalent to or exceeded the quality of U.S. drywall.

25. Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O made material misrepresentations relied upon by AHC and which caused AHC damages.

26. Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O failed to act with due diligence or reasonable care in placing the CDW into the stream of commerce by failing to test or otherwise ensure the product would safely perform as represented and intended.

27. Pate, PSC, FFIC, Devon, Taishan and/or Fictitious Third-Party Defendants A through O knew or should have known of alleged defects or dangers in the CDW supplied to AHC at issue herein.

28. Pate, PSC, FFIC, Devon, Taishan and/or Fictitious Third-Party Defendants A through O failed to warn AHC of alleged defects or dangers in the CDW supplied to AHC at issue herein.

29. In the event that AHC is determined to be liable to the plaintiffs, said liability will be a proximate result of the active negligence of Pate, PSC, FFIC, Devon, Taishan and/or Fictitious Third-Party Defendants A through O, while the negligence of AHC, if any, was at most passive in nature.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd., and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

**COUNT II**

**BREACH OF CONTRACT**

30. AHC adopts and incorporates the allegations of paragraphs 1 through 29 as though fully set forth herein.

31. By virtue of the sale of defective CDW to ACH, Pate, PSC, FFIC, Devon, Taishan and/or Fictitious Third-Party Defendants A through O breached contract(s) and caused damages to AHC, directly or as third-party beneficiary, to include damages for attorney's fees, costs and any liability it may incur to the plaintiffs herein.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd., and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

**COUNT III**

**NEGLIGENCE AND GROSS NEGLIGENCE**

32. AHC adopts and incorporates the allegations of paragraphs 1 through 31 as though fully set forth herein.

33. Taishan and/or Fictitious Third-Party Defendants K through O designed,

manufactured, fabricated, marketed, sold and placed into the stream of commerce CDW which the plaintiffs claim was unreasonably dangerous in its normal use in that it emitted noxious gases and caused damage to person and property.

34. Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O failed to act with due diligence in representing that the CDW met certain ASTM standards; and provided stamping and labeling on the CDW sheets and packaging that falsely represented to the United States purchasers that the CDW met U.S. safety standards, that the CDW was safe and fit for its intended use and that the CDW was equivalent to or exceeded the quality of U.S. drywall.

35. Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O made material misrepresentations relied upon by AHC and which caused AHC damages.

36. Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O failed to act with due diligence or reasonable care in placing the CDW into the stream of commerce by failing to test or otherwise ensure the product would safely perform as represented and intended.

37. Pate, PSC, FFIC, Devon, Taishan and/or Fictitious Third-Party Defendants A through O knew or should have known of alleged defects or dangers in the CDW supplied to AHC at issue herein.

38. Pate, PSC, FFIC, Devon, Taishan and/or Fictitious Third-Party Defendants A through O failed to warn AHC of alleged defects or dangers in the CDW supplied to AHC at issue herein.

39. Pate, PSC, FFIC, Devon, Taishan and/or Fictitious Third-Party Defendants A through O owed a duty of reasonable care and due diligence in designing, processing, producing, manufacturing, fabricating, exporting, shipping, distributing, delivering, supplying, inspecting,

testing, warranting, marketing, specifying, taking possession of, control over and/or title to, offloading, storing, importing, purchasing, advertising, surveying, selling and/or placing within the stream of commerce the CDW at issue herein.

40. Third-Party Defendants negligently, recklessly and/or wantonly breached their duty to AHC.

41. As a proximate result of the Third-Party Defendants' breach of duty to AHC, AHC has suffered and will continue to suffer damages including attorney's fees, costs and any liability it may incur to the plaintiffs herein.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd., and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

## COUNT IV

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

42. AHC adopts and incorporates the allegations of paragraphs 1 through 41 as though fully set forth herein.

43. In supplying and/or selling the CDW, the Third-Party Defendants impliedly warranted the merchantability of the product and its fitness for its intended purposes.

44. To the extent AHC incurs any liability to the plaintiffs such liability will have been a proximate result of the Third-Party Defendants' breach of the implied warranty of merchantability.

45. AHC has incurred and will continue to incur attorney's fees and costs and any

liability it may incur to the plaintiffs herein.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd., and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

**COUNT V**

**BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**

46. AHC adopts and incorporates the allegations of paragraphs 1 through 45 as though fully set forth herein.

47. In supplying and/or selling the CDW, the Third-Party Defendants impliedly warranted its fitness for a particular purpose.

48. To the extent AHC incurs any liability to the plaintiffs such liability will have been a proximate result of the Third-Party Defendants' breach of the implied warranty of fitness for a particular purpose.

49. AHC has incurred and will continue to incur attorney's fees and costs and any liability it may incur to the plaintiffs herein.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd., and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

**COUNT VI**

**BREACH OF EXPRESS WARRANTY**

50. AHC adopts and incorporates the allegations of paragraphs 1 through 49 as though fully set forth herein.

51. Third-Party Defendants expressly affirmed that the product was Gypsum Drywall with specifications identical to Georgia-Pacific Gypsum Drywall, an express warranty under the law. Alternately, Third-Party Defendants expressly affirmed that the CDW met certain ASTM standards. Alternately, Third-Party Defendants expressly affirmed that the CDW met or exceeded U.S. safety standards and/or that the CDW was equivalent to or exceeded the quality of U.S. drywall.

52. In the event AHC is found liable to the plaintiffs, such liability will have been the proximate result of the Third-Party Defendants' breach of express warranty. The Third-Party Defendants' breach of warranty has damaged and will continue to damage AHC by virtue of attorney's fees, costs and any liability it may incur to the plaintiffs.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd., and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd., and

fictitious Third-Party Defendants A through O in an amount equal to any judgment entered against Ace Home Center, Inc., and/or in the amount of any settlement entered into with the plaintiffs to resolve the subject litigation, plus attorney's fees and costs. Ace Home Center, Inc., prays for such other and further relief that this Honorable Court deems just and proper.

**THIRD-PARTY PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**

Respectfully submitted,

***/ s / Danny J. Collier, Jr.***

Danny J. Collier, Jr., Esq.
E. Barrett Hails, Esq.
Attorneys for Ace Home Center, Inc.

OF COUNSEL:

LUTHER, COLLIER, HODGES & CASH LLP
Post Office Box 1002
Mobile, Alabama 36633
(251) 694-9393 Office
(251) 694-9392 Fax
dcollier@lchclaw.com
bhails@lchclaw.com

**SERVE BY CERTIFIED MAIL:**

Devon International Industries, Inc.
1100 First Avenue
Suite 100
King of Prussia, PA 19406

Taishan Gypsum Co. Ltd.
c/o Richard C. Stanley, Esq.
Thomas P. Owen, Jr., Esq.
Stanley, Reuter, Ross, Thornton & Alford, LLC
909 Poydras Street
Suite 2500
New Orleans, Louisiana 70112

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing First Amended Third-Party Complaint has been served on Plaintiffs' Liaison Counsel, Russ Herman and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand-delivery upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that

the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 19th day of September, 2014.

Stephen W. Mullins, Esq.
Luckey & Mullins, PLLC
Post Office Box 990
Ocean Springs, MS 39566
smullins@luckeyandmullins.com

David C. Coons, Esq.
Christopher A. D'Amour, Esq.
Adams and Reese LLP
4500 One Shell Square
New Orleans, LA 70139
david.coons@arlaw.com
chris.damour@arlaw.com

Heather M. Houston, Esq.
Caroline Pryor, Esq.
Carr Allison
6251 Monroe Street
Suite 200
Daphne, Alabama 36526
hhouston@carrallison.com
cpryor@carrallison.com

S. Wesley Pipes, Esq.
Pipes Hudson & Watts, LLP
Post Office Box 989
Mobile, Alabama 36601
wesley@pipeshudsonwatts.com

Gary J. Russo, Esq.
Jones Walker LLP
600 Jefferson Street
Suite 1600
Lafayette, LA 70501
grusso@joneswalker.com

Richard C. Stanley, Esq.
Thomas P. Owen, Jr., Esq.
Stanley, Reuter, Ross, Thornton & Alford, LLC
909 Poydras Street
Suite 2500
New Orleans, Louisiana 70112
rcs@stanleyreuter.com
tpo@stanleyreuter.com

Joe Cyr, Esq.
Frank T. Spano, Esq.
Courtney L. Colligan, Esq.
Hogan Lovells US LLP
875 Third Avenue
New York, New York 10022
Joe.cyr@hoganlovells.com
Frank.spano@hoganlovells.com
Courtney.colligan@hoganlovells.com

/ s / ***Danny J. Collier, Jr.***

OF COUNSEL

Case 13-13552-sr Doc 31-6 Filed 11/20/14 Entered 11/20/14 12:15:22 Desc
Exhibit F Page 1 of 14

# EXHIBIT "F"

ELECTRONICALLY FILED
9/30/2014 3:47 PM
30-CV-2013-900145.00
CIRCUIT COURT OF
ESCAMBIA COUNTY, ALABAMA
JOHN FOUNTAIN, CLERK

IN THE CIRCUIT COURT OF ESCAMBIA COUNTY, ALABAMA

GREG E. WIGGINS and
SHERRY WIGGINS,

Plaintiffs,

v. Case No.: 30-CV-2013-900145

ACE HOME CENTER, INC.,
et al.,

Defendants.

---

ACE HOME CENTER, INC.,

Third-Party Plaintiff,

v.

PENSACOLA STEVEDORE COMPANY, INC.; PATE STEVEDORE COMPANY, INC.; FIREMAN'S FUND INSURANCE COMPANY; DEVON INTERNATIONAL INDUSTRIES, INC., f/k/a DEVON INTERNATIONAL TRADING, INC., a/k/a DEVON BUILDING PRODUCTS, TAISHAN GYPSUM CO. LTD. and fictitious Third-Party Defendants A through O,

Third-Party Defendants.

---

**SECOND AMENDED THIRD PARTY COMPLAINT**

---

COMES NOW, ACE HOME CENTER, INC., Defendant and Third-Party Plaintiff, and hereby files this Second Amended Third-Party Complaint adding DEVON INTERNATIONAL INDUSTRIES, INC., f/k/a DEVON INTERNATIONAL TRADING, INC., a/k/a DEVON BUILDING PRODUCTS, TAISHAN GYPSUM CO. LTD. and fictitious Third-Party

Defendants A through O, as follows:

**PARTIES**

1. Defendant/Third Party Plaintiff Ace Home Center, Inc. ("AHC") is a domestic corporation organized and existing under the laws of the State of Alabama.

2. Third Party Defendant Pensacola Stevedore Company, Inc. ("PSC") is corporation organized and existing under the laws of the State of Florida. PSC was conducting business in Alabama at all times material hereto. Upon information and belief PSC offloaded, stored, delivered, imported, shipped, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed and/or supplied the defective Chinese drywall at issue herein.

3. Third Party Defendant Pate Stevedore Company, Inc. ("Pate") is corporation organized and existing under the laws of the State of Alabama. Upon information and belief Pate offloaded, stored, delivered, imported, shipped, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed and/or supplied the defective Chinese drywall at issue herein.

4. Third Party Defendant Fireman's Fund Insurance Company, ("FFIC") is a corporation organized and existing under the laws of the State of California. FFIC conducts business in Alabama and at all times material hereto was conducting business in Alabama. Upon information and belief, FFIC controlled, took possession of and/or title to, offloaded, stored, delivered, imported, shipped, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed, and/or supplied the Chinese drywall at issue herein; and/or acted as agent or fiduciary for its insured, Devon International Industries, Inc. f/k/a Devon International Trading, Inc., a/k/a Devon Building Products concerning the Chinese drywall at issue herein.

5. Third-Party Defendant Devon International Industries, Inc., f/k/a Devon

International Trading, Inc., a/k/a Devon Building Products ("Devon") is a corporation organized and existing under the laws of the State of Pennsylvania. Upon information and belief Devon, specified, ordered, shipped, imported, controlled, took possession of and/or title to, offloaded, stored, delivered, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed, and/or supplied the Chinese drywall at issue herein.

6. Third-Party Defendant Taishan Gypsum Co. Ltd. ("Taishan") is a Chinese corporation organized and existing under the laws of the People's Republic of China. Upon information and belief Taishan, designed, processed, produced, manufactured, exported, shipped, distributed, delivered, supplied, inspected, tested, warranted, marketed, sold and/or placed within the stream of commerce the Chinese drywall at issue herein

7. Fictitious Third-Party Defendants A, B, C, D and E, whose identities and true names are unknown and who will be identified through discovery, took possession of and/or title to, offloaded, stored, delivered, imported, shipped, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed and/or supplied the Chinese drywall at issue herein.

8. Fictitious Third-Party Defendants F, G, H, I and J, whose identities and true names are unknown and who will be identified through discovery, specified, ordered, shipped, imported, controlled, took possession of and/or title to, offloaded, stored, delivered, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed and/or supplied the Chinese drywall at issue herein.

9. Fictitious Third-Party Defendants K, L, M, N and O, whose identities and true names are unknown and who will be identified through discovery, designed, processed, produced, manufactured, exported, shipped, distributed, delivered, supplied, inspected, tested,

warranted, marketed, sold and/or placed within the stream of commerce the Chinese drywall at issue herein.

## FACTUAL ALLEGATIONS

10. Taishan and Fictitious Third-Party Defendants K through O manufactured, produced and placed within the stream of commerce the Chinese drywall ("CDW") at issue herein.

11. Devon and Fictitious Third-Party Defendants F through J specified, ordered, shipped, imported and/or marketed and/or sold the CDW at issue herein.

12. Devon made a claim against its FFIC insurance policy for physical damage to the CDW cargo during shipment.

13. FFIC took title to the CDW following Devon's cargo damage claim. Alternatively, FFIC exercised control over the CDW. Alternatively, FFIC acted as agent or fiduciary for Devon to mitigate the cargo damage claim.

14. Devon and/or FFIC sold the "Devon Building Products" CDW to Pate and/or PSC.

15. Taishan, Devon, FFCI, Pate, PSC and Fictitious Third-Party Defendants A through O put the CDW into the stream of commerce, to be purchased by AHC and, ultimately, by AHC customers.

16. AHC purchased some of the CDW from Pate and/or PSC.

17. On October 7, 2013, Plaintiffs Greg and Sherry Wiggins filed an Amended Complaint naming Ace Home Center, Inc., as a defendant in the above styled action.

18. Plaintiffs' claims against AHC arise from the 2008 construction of a house

located at 1047 Well Road Brewton, Alabama.

19. The house was allegedly constructed with CDW purchased from AHC.

20. If true, Taishan, Devon, FFCI, Pate, PSC and/or Fictitious Third-Party Defendants A through O are liable to AHC for the CDW ultimately used to construct the Wiggins' house.

**COUNT I**
**BREACH OF CONTRACT**

21. AHC adopts and incorporates the allegations of paragraphs 1 through 20 as though fully set forth herein.

22. By virtue of the sale of defective CDW to ACH, Pate, PSC, FFCI, Devon, Taishan and/or Fictitious Third-Party Defendants A through O breached contract(s) and caused damages to AHC, directly or as third-party beneficiary, to include attorney's fees, costs and any liability it may incur to the plaintiffs herein.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd. and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

**COUNT II**
**INDEMNITY**

23. AHC adopts and incorporates the allegations of paragraphs 1 through 22 as though fully set forth herein.

24. AHC was without fault in the purchase and sale of the CDW and any liability it

may incur to the plaintiffs will be merely vicarious, constructive, derivative, or technical in nature.

25. Taishan and/or Fictitious Third-Party Defendants K through O designed, manufactured, fabricated, marketed, sold, and placed into the stream of commerce CDW which the plaintiffs claim was unreasonably dangerous in its normal use in that it emitted noxious gases and caused damage to person and property.

26. Taishan, Devon, FFCI and/or Fictitious Third-Party Defendants A through O failed to act with due diligence in representing that the CDW met certain ASTM standards; and provided stamping and labeling on the CDW sheets and packaging that falsely represented to the United States purchasers that the CDW met U.S. safety standards, that the CDW was safe and fit for its intended use and that the CDW was equivalent to or exceed the quality of U.S. drywall.

27. Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O made material misrepresentations relied upon by AHC and which caused AHC damages.

28. Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O failed to act with due diligence or reasonable care in placing the CDW into the stream of commerce by failing to test or otherwise ensure the product would perform as represented and intended.

29. Pate, PSC, FFCI, Devon, Taishan and/or Fictitious Third-Party Defendants A through O knew or should have known of alleged defects in the CDW supplied to AHC at issue herein.

30. Pate, PSC, FFCI, Devon, Taishan and/or Fictitious Third-Party Defendants A through O failed to warn AHC of alleged defects or dangers in the CDW supplied to AHC at

issue herein.

31. In the event that AHC is determined to be liable to the plaintiffs, said liability will be a proximate result of the active negligence of Pate, PSC, FFCI, Devon, Taishan and/or Fictitious Third-Party Defendants A through O, while the negligence of AHC, if any, was at most passive in nature.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd. and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

**COUNT III**
**NEGLIGENCE AND GROSS NEGLIGENCE**

32. AHC adopts and incorporates the allegations of paragraphs 1 through 31 as though fully set forth herein.

33. Taishan and/or Fictitious Third-Party Defendants K through O designed, manufactured, fabricated, marketed, sold and placed into the stream of commerce CDW which the plaintiffs claim was unreasonably dangerous in its normal use in that it emitted noxious gases and caused damage to person and property.

34. Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O failed to act with due diligence in representing that the CDW met certain ASTM standards; and provided stamping and labeling on the CDW sheets and packaging that falsely represented to the United States purchasers that the CDW met U.S. safety standards, that the CDW was safe and fit for its intended use and that the CDW was equivalent to or exceeded the quality of U.S. drywall.

35.    Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O made material misrepresentations relied upon by AHC and which caused AHC damages.

36.    Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O failed to act with due diligence or reasonable care in placing the CDW into the stream of commerce by failing to test or otherwise ensure the product would perform as represented and intended.

37.    Pate, PSC, FFCI, Devon, Taishan and/or Fictitious Third-Party Defendants A through O knew or should have known of alleged defects or dangers in the CDW supplied to AHC at issue herein.

38.    Pate, PSC, FFIC, Devon, Taishan and/or Fictitious Third-Party Defendants A through O failed to warn AHC of alleged defects or dangers in the CDW supplied to AHC at issue herein.

39.    Pate, PSC, FFCI, Devon, Taishan and/or Fictitious Third-Party Defendants A through O owed a duty of reasonable care and due diligence in designing, processing, producing, manufacturing, fabricating, exporting, shipping, distributing, delivering, supplying, inspecting, testing, warranting, marketing, specifying, taking possession of, control over and/or title to, offloading, storing, importing, purchasing, advertising, surveying, selling and/or placing within the stream of commerce the CDW at issue herein.

40.    Third-Party Defendants negligently, recklessly and/or wantonly breached their duty to AHC.

41.    As a proximate result of the Third-Party Defendants' breach of duty to AHC, AHC has suffered and will continue to suffer damages including attorney's fees, costs and any

liability it may incur to the plaintiffs herein.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd. and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

**COUNT IV**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

42. AHC adopts and incorporates the allegations of paragraphs 1 through 41 as though fully set forth herein.

43. In supplying and/or selling the CDW, the Third-Party Defendants impliedly warranted the merchantability of the product and its fitness for its intended purposes.

44. To the extent AHC incurs any liability to the plaintiffs such liability will have been a proximate result of the Third-Party Defendants' breach of the implied warranty of merchantability.

45. AHC has incurred and will continue to incur attorney's fees and costs and any liability it may incur to the plaintiffs herein.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd. and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

**COUNT V**

**BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**

46. AHC adopts and incorporates the allegations of paragraphs 1 through 45 as though fully set forth herein.

47. In supplying and/or selling the CDW, the Third-Party Defendants impliedly warranted its fitness for a particular purpose.

48. To the extent AHC incurs any liability to the plaintiffs such liability will have been a proximate result of the Third-Party Defendants' breach of the implied warranty of fitness for a particular purpose.

49. AHC has incurred and will continue to incur attorney's fees and costs and any liability it may incur to the plaintiffs herein.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd. and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

**COUNT VI**
**BREACH OF EXPRESS WARRANTY**

50. AHC adopts and incorporates the allegations of paragraphs 1 through 49 as though fully set forth herein.

51. Third-Party Defendants expressly affirmed that the product was Gypsum Drywall with specifications identical to Georgia-Pacific Gypsum Drywall, an express warranty under the law. Alternatively, Third-Party Defendants expressly affirmed that the CDW met certain ATSM

standards. Alternatively, Third-Party Defendants expressly affirmed that the CDW met or exceeded U.S. safety standards and/or that the CDW was equivalent to or exceeded the quality of U.S. drywall.

52. In the event AHC is found liable to the plaintiffs, such liability will have been the proximate result of the Third-Party Defendants' breach of express warranty. The Third-Party Defendants' breach of warranty has damaged and will continue to damage AHC by virtue of attorney's fees, costs and any liability it may incur to the plaintiffs.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd. and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd. and fictitious Third-Party Defendants A through O in an amount equal to any judgment entered against Ace Home Center, Inc., and/or in the amount of any settlement entered into with the plaintiffs to resolve the subject litigation, plus attorney's fees and costs. Ace Home Center, Inc., prays for such other and further relief that this Honorable Court deems just and proper.

**THIRD-PARTY PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**

Respectfully submitted,

/s/ Jeffrey L. Luther

JEFFREY L. LUTHER (LUT003)
jluther@lchclaw.com
DANNY J. COLLIER, JR. (COL100)
dcollier@lchclaw.com
*Attorneys for Defendant/Third-Party Plaintiff Ace Home Center, Inc.*

OF COUNSEL:

LUTHER, COLLIER, HODGES & CASH, LLP
Post Office Box 1002
Mobile, Alabama 36633
(251) 694-9393; (251) 694-9392 fax

**SERVE BY CERTIFIED MAIL:**

**Devon International Industries, Inc.
1100 First Avenue
Suite 100
King of Prussia, PA 19406**

**Taishan Gypsum Co. Ltd.
c/o Richard C. Stanley, Esq.
Thomas P. Owen, Jr., Esq.
Stanley, Reuter, Ross, Thornton & Alford, LLC
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112**

**CERTIFICATE OF SERVICE**

I hereby certify that I have, on this 30th day of September, 2014, electronically filed the foregoing with the Clerk of Court using the Alafile system which will send notification of filing to the following, and I have mailed same to Non-Alafile participants via United States Mail, first class postage prepaid.

| | |
|---|---|
| Stephen W. Mullins, Esq.<br>Luckey & Mullins, PLLC<br>2016 Bienville Blvd., Suite 102 39564<br>Ocean Springs, MS 39566<br>*(Counsel for Plaintiffs)* | Jonathan G. Festa, Esq.<br>Stewart Howard, PC<br>P.O. Box 1903<br>Mobile, AL 36633-1903<br>*(Counsel for Bass Homes, Inc.)* |
| Lloyd E. Taylor, Esq.<br>Taylor & Taylor, LLC<br>18350 Michigan St | Daniel K. Bryson, Esq.<br>Whitfield Bryson & Mason LLP<br>900 W. Morgan Street |

| Robertsdale, AL 36567-3054<br>*(Counsel for Ace Home Center, Inc.)* | Raleigh, NC 27603<br>*(pro hac vice)* |
|---|---|
| James Rebarchak, Esq.<br>Gary J. Russo, Esq.<br>Jones Walker, LLP<br>11 N. Water Street, Ste. 1200<br>Mobile, AL 36602<br>*(Counsel for Fireman's Fund Insurance Company)* | S. Wesley Pipes, Esq.<br>William W. Watts, III, Esq.<br>Pipes, Hudson & Watts, LLP<br>P. O. Box 989<br>Mobile, AL 36601-0989<br>*(Counsel for Pate Stevedore Company, Inc. and Pensacola Stevedore Company, Inc.)* |

/s/ Jeffrey L. Luther
COUNSEL

# EXHIBIT "G"

**Charles A. McCauley III**
*General Counsel*

phone: 484-688-8215
fax: 610-768-0244
e-mail: cmccauley@devonintlgroup.com

DEVON INTERNATIONAL GROUP

September 29, 2014

Danny J. Collier, Jr., Esquire
Luther, Collier, Hodges & Cash LLP
P. O. Box 1002
Mobile, AL 36633

**Re: Collins, et al. v. Ace Home Center, et al.**
**Herrington, et al. v. Ace Home Center, et al.**

Dear Mr. Collier:

We are in receipt of the Summons and Third Party Complaints with regard to the above-captioned actions.

Please be advised that Devon International Industries, Inc. filed for bankruptcy on April 23, 2013 in the United States Bankruptcy Court for the Eastern District of Pennsylvania (Case No. 13-13552 (SR)). These actions violate the automatic stay imposed by 11 U.S.C. §363. Please be guided accordingly.

Very truly yours,

Charles A. McCauley III

CAM/pld

p| 800•431•2273

a| 1100 first avenue
suite 100
king of prussia, pa
19406

w| devonintlgroup.com

RECEIVED OCT - 3 2014

Case 13-13552-sr Doc 31-8 Filed 11/20/14 Entered 11/20/14 12:15:22 Desc
Exhibit H Page 1 of 2

# EXHIBIT "H"

**Charles A. McCauley III**
*General Counsel*

phone: 484-688-8215
fax: 610-768-0244
e-mail: cmccauley@devonintlgroup.com

DEVON
INTERNATIONAL
GROUP

October 7, 2014

Jeffrey L. Luther, Esquire
Luther, Collier, Hodges & Cash LLP
P. O. Box 1002
Mobile, AL 36633

     **Re:    Wiggins, et al. v. Ace Home Center, et al.**

Dear Mr. Luther:

    We are in receipt of the Summons and Second Amended Third Party Complaint with regard to the above-captioned action.

    Please be advised that Devon International Industries, Inc. filed for bankruptcy on April 23, 2013 in the United States Bankruptcy Court for the Eastern District of Pennsylvania (Case No. 13-13552 (SR)). These actions violate the automatic stay imposed by 11 U.S.C. §363. Please be guided accordingly.

    Very truly yours,

Charles A. McCauley III

CAM/pld

p| 800•431•2273

a| 1100 first avenue
suite 100
king of prussia, pa
19406

w| devonintlgroup.com

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 7** |
| | ) | |
| **Devon International Industries, Inc.** | ) | **Case No. 13 - 13552 (SR)** |

**ORDER**

AND NOW, this 17th day of Dec., 2014, upon consideration of the Motion for Relief From the Automatic Stay Pursuant to §362 of the Bankruptcy Code to Liquidate a Personal Injury Matter of ACE Home Center, Inc. and any response thereto, it is hereby ORDERED and DECREED that ACE Home Center, Inc. may join Devon International Industries, Inc. as a third party defendant in two matters: (1) In Re: Chinese-Manufactured Drywall Products Liability Litigation, MDL No. 2047 in the United States District Court for the Eastern District of Louisiana (specifically with respect to the consolidated cases of: Braxton and Kerrie Collins v. Bass Homes, Inc., et al. and Jason and Cassie Herrington v. Bass Homes, Inc., et al., S.D. Mississippi, C.A. No. 1:13-00297) and (2) Greg and Sherry Wiggins v. ACE Home Center, Inc., Case No.: 30-CV-2013-900145, Circuit Court of Escambia County, Alabama. Moreover, once joined in these two matters, all appropriate parties may pursue claims against Devon International Industries, Inc. and obtain judgments against it, but only up to the amount of all applicable insurance coverage available to Devon International Industries, Inc.

BY THE COURT:

_______________________ J.

EXHIBIT E



LUTHER, COLLIER, HODGES • CASH L.L.P.

ATTORNEYS AT LAW

ALABAMA FLORIDA MISSISSIPPI

**L. Robert Shreve, Esq.** rshreve@lchclaw.com

April 6, 2015

**VIA EMAIL: cmccauley@devonintlgroup.com**
Charles A. McCauley, III, Esq.
General Counsel
Devon International Group
1100 First Avenue, Ste. 100
King of Prussia, PA 19406

**Re: Braxton H. Collins, et al v. Bass Homes, Inc., et al**
**Case No: 13-6652**
**Herrington, et al. v. Bass Homes, Inc., et. al**
**Case No: 13-6653**

Dear Charles,

Enclosed herewith please find a copy of the Court's Order granting our Motion to Reconsolidate the third party claims against Devon International Industries, Inc. in the Multi-District Litigation in the United States District Court for the Eastern District of Louisiana. As noted in our firm's correspondence of March 18, 2015 referencing the *Wiggins* matter, these claims were previously severed due to Devon's bankruptcy filing, but the bankruptcy stay has now been lifted for purposes of joining Devon as a third party defendant in the above-referenced matters. I have also included copies of our Motion to Reconsolidate and the Order from the United States Bankruptcy Court for the Eastern District of Pennsylvania lifting the bankruptcy stay. Please proceed with filing your Answer to the Third Party Complaint. Should you care to discuss this matter further, please do not hesitate to contact me.

Very truly yours,

L. ROBERT SHREVE

LRS/ebb
Enclosures

Cc: Danny Collier, Esq.

E-SERVICE
56793106
Feb 18 2015
03:22PM
File & ServeXpress

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | : | MDL NO.: 2047 |
| | : | SECTION: L |
| **This Document Relates To:** | : | JUDGE FALLON |
| | : | MAG. JUDGE WILKINSON |
| **Braxton H. Collins, et al. vs. Bass Homes, Inc., et al.; S.D. Mississippi, C.A. No. 1:13-00297** | : | **Case No.: 13-6652** |

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | : | MDL NO.: 2047 |
| | : | SECTION: L |
| **This Document Relates To:** | : | JUDGE FALLON |
| | : | MAG. JUDGE WILKINSON |
| **Jason S. Herrington, et al. vs. Bass Homes, Inc., et al.; S.D. Mississippi, C.A. No. 1:13-00297** | : | **Case No.: 13-6653** |

**ORDER**

Upon consideration of Ace Home Center, Inc.'s Motion to Re-consolidate Third Party Claims Against Devon International Industries, Inc., it is hereby **ORDERED and DECREED** that Devon International Industries, Inc., be joined as a third party defendant in the *Collins* and *Herrington* actions; and Devon International Industries, Inc., shall respond to Ace Home Center, Inc.'s Third Party Complaints within 21 days from entry of this Order.

**SO ORDERED AND ADJUDGED** this, the 13th day of February, 2015.

**ELDON E. FALLON**
**U. S. DISTRICT COURT JUDGE**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **In re:** ) | **Chapter 7** |
| ) | |
| **Devon International Industries, Inc.** ) | **Case No. 13 - 13552 (SR)** |

**ORDER**

AND NOW, this 17th day of Dec., 2014, upon consideration of the Motion for Relief From the Automatic Stay Pursuant to §362 of the Bankruptcy Code to Liquidate a Personal Injury Matter of ACE Home Center, Inc. and any response thereto, it is hereby ORDERED and DECREED that ACE Home Center, Inc. may join Devon International Industries, Inc. as a third party defendant in two matters: (1) In Re: Chinese-Manufactured Drywall Products Liability Litigation, MDL No. 2047 in the United States District Court for the Eastern District of Louisiana (specifically with respect to the consolidated cases of: Braxton and Kerrie Collins v. Bass Homes, Inc., et al. and Jason and Cassie Herrington v. Bass Homes, Inc., et al., S.D. Mississippi, C.A. No. 1:13-00297) and (2) Greg and Sherry Wiggins v. ACE Home Center, Inc., Case No.: 30-CV-2013-900145, Circuit Court of Escambia County, Alabama. Moreover, once joined in these two matters, all appropriate parties may pursue claims against Devon International Industries, Inc. and obtain judgments against it, but only up to the amount of all applicable insurance coverage available to Devon International Industries, Inc.

BY THE COURT:

_______________ J.

E-SERVICE 56746545 Feb 09 2015 04:31PM File & ServeXpress

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | : | MDL NO.: 2047 |
| | : | SECTION: L |
| **This Document Relates To:** | : | JUDGE FALLON |
| | : | MAG. JUDGE WILKINSON |
| **Braxton H. Collins, et al. vs. Bass Homes, Inc., et al.; S.D. Mississippi, C.A. No. 1:13-00297** | : | **Case No.: 13-6652** |

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | : | MDL NO.: 2047 |
| | : | SECTION: L |
| **This Document Relates To:** | : | JUDGE FALLON |
| | : | MAG. JUDGE WILKINSON |
| **Jason S. Herrington, et al. vs. Bass Homes, Inc., et al.; S.D. Mississippi, C.A. No. 1:13-00297** | : | **Case No.: 13-6653** |

# MOTION TO RE-CONSOLIDATE THIRD PARTY CLAIMS AGAINST DEVON INTERNATIONAL INDUSTRIES, INC.

COMES NOW, Ace Home Center, Inc. ("AHC"), a defendant and third-party plaintiff in the above-styled actions, and hereby moves this Honorable Court to re-consolidate AHC's third party claims against Devon International Industries, Inc., as follows:

1. On September 19, 2014, AHC filed its First Amended Third-Party Complaints adding Devon International Industries, Inc., f/k/a/ Devon International Trading, Inc., a/k/a Devon Building Products ("Devon") as a Third Party Defendant in the above-styled matters.

2. Subsequently, Devon informed AHC that Devon had filed for bankruptcy on April 23, 2013, in the United States Bankruptcy Court for the Eastern District of Pennsylvania (Case No. 13-13552 (SR)), and that an automatic stay was imposed pursuant to 11 U.S.C. §363.

3.      On November 13, 2014, AHC filed a Motion to Sever its third party claims against Devon to avoid delay and prejudice in the instant action in light of the bankruptcy stay which precluded the immediate prosecution of AHC's third party claims against Devon.

4.      On November 20, 2014, AHC filed a Motion for Relief from the Automatic Stay in the United States Bankruptcy Court for the Eastern District of Pennsylvania.

5.      On December 8, 2014, this Court granted AHC's Motion to Sever AHC's third party claims against Devon.

6.      On December 17, 2014, the United States Bankruptcy Court for the Eastern District of Pennsylvania executed an Order granting AHC permission to join Devon as a third party defendant in the two above-styled matters, and ruling that "once joined in these two matters, all appropriate parties may pursue claims against Devon International Industries, Inc., and obtain judgment against it, but only up to the amount of all applicable insurance coverage available to Devon International Industries, Inc.  See Attachment 1, a copy of the December 17, 2014 Order.

7.      As the U.S. Bankruptcy Court has granted permission to AHC to pursue its third party claims against Devon in the above-styled matters, claims against Devon are due to be joined in the *Collins* and *Herrington* actions.   Rule 21 of the *Federal Rules of Civil Procedure*, which allows the court to sever any claim against a party, states that "the court may at any time, on just terms, add or drop a party."  Since having been severed from the *Collins* and *Herrington* actions, nothing has occurred that would prejudice Devon by being re-consolidated in the main actions.   Indeed, in the interests of justice and judicial economy, AHC's third party claims against Devon should be re-consolidated into the *Collins* and *Herrington* actions.

□ HEREFORE, PREMISES CONSIDERED, Ace Home Center, Inc., respectfully moves this Honorable Court to join Devon International Industries, Inc., as a third party defendant in the *Collins* and *Herrington* actions, and re□uire that Devon respond to Ace Home Center, Inc.'s □hird Party Complaints within 21 days from entry of an Order granting this motion.

Respectfully submitted,

/ s / ***Danny J. Collier, Jr.***

Danny □ Collier, □r., Es□
Attorney for Ace Home Center, Inc.

**OF COUNSEL:**

□U□HER, CO□□IER, HOD□ES □ CASH □□P
Post Office Box 1002
Mobile, Alabama 36633
□251□6□4-□3□3 □ffice
□251□6□4-□3□□Fax
dcollier□ lchclaw.com

**SERVE BY CERTIFIED MAIL:**

Devon International Industries, Inc.
1100 First Avenue
Suite 100
□ing of Prussia, PA 1□406

□aishan □ypsum Co. □td.
c/o Richard C. Stanley, Es□
□homas P. Owen, □r., Es□
Stanley, Reuter, Ross, □hornton □ Alford, □□C
□0□ □ydras Street
Suite 2500
New Orleans, □ouisiana 70112

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Motion to Re-Consolidate has been served on Plaintiffs' □iaison Counsel, Russ Herman and Defendants' □iaison Counsel, □erry Miller, by U.S. Mail and e-mail or by hand-delivery upon all parties by electronically uploading the same to □exis Nexis File □ Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of □ouisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MD□2047, on this **9th day** of **February, 2015**.

Stephen □. Mullins, Es□
□uckey □ Mullins, P□□C
Post Office Box □□0
Ocean Springs, MS 3□566
smullins□ luckeyandmullins.com

David C. Coons, Es□
Christopher A. D'Amour, Es□
Adams and Reese □□P
4500 One Shell S□uare
New Orleans, □A 7013□
david.coons□ arlaw.com
chris.damour□ arlaw.com

Heather M. Houston, Es□
Caroline Pryor, Es□
Carr Allison
6251 Monroe Street
Suite 200
Daphne, Alabama 36526
hhouston□ carrallison.com
cpryor□ carrallison.com

S. □ esley Pipes, Es□
□ illiam □. □ atts III
Pipes Hudson □ □ atts, □□P
Post Office Box □8□
Mobile, Alabama 36601
wesley□ pipeshudsonwatts.com
bill□ pipeshudsonwatts.com

□ary □ Russo, Es□
□ones □ alker □□P
600 □efferson Street
Suite 1600
□afayette, □A 70501
grusso□ joneswalker.com

Richard C. Stanley, Es□
□homas P. Owen, □r., Es□
Stanley, Reuter, Ross, □hornton □ Alford, □□C
□0□ □ydras Street
Suite 2500
New Orleans, □ouisiana 70112
rcs□ stanleyreuter.com
tpo□ stanleyreuter.com

□oe Cyr, Es□
Frank □. Spano, Es□
Courtney □. Colligan, Es□
Hogan □ovells US □□P
875 □hird Avenue
New □ork, New □ork 10022
□oe.cyr□ hoganlovells.com
Frank.spano□ hoganlovells.com
Courtney.colligan□ hoganlovells.com

***/ s / Danny J. Collier, Jr.***
OF COUNSE□