# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 7** |
| | ) | |
| **Devon International Industries, Inc.** | ) | **Case No. 13 - 13552 (SR)** |

## ORDER

AND NOW, this _____ day of _____, 201_, upon consideration of the

Motion for Relief From the Automatic Stay Pursuant to §362 of the Bankruptcy Code to Liquidate

a Personal Injury Matter of ACE Home Center, Inc. and any response thereto, it is hereby

ORDERED and DECREED that ACE Home Center, Inc. may join Devon International Industries,

Inc. as a third party defendant in two matters: (1) In Re: Chinese-Manufactured Drywall Products

Liability Litigation, MDL No. 2047 in the United States District Court for the Eastern District of

Louisiana (specifically with respect to the consolidated cases of: Braxton and Kerrie Collins v. Bass

Homes, Inc., et al. and Jason and Cassie Herrington v. Bass Homes, Inc., et al., S.D. Mississippi,

C.A. No. 1:13-00297) and (2) Greg and Sherry Wiggins v. ACE Home Center, Inc., Case No.: 30-

CV-2013-900145, Circuit Court of Escambia County, Alabama. Moreover, once joined in these two

matters, all appropriate parties may pursue claims against Devon International Industries, Inc. and

obtain judgments against it, but only up to the amount of all applicable insurance coverage available

to Devon International Industries, Inc.

BY THE COURT:

_____
J.

EXHIBIT D

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| In re: | ) | **Chapter 7** |
|  | ) |  |
| **Devon International Industries, Inc.** | ) | **Case No. 13 - 13552 (SR)** |

### MOTION FOR RELIEF FROM THE
### AUTOMATIC STAY PURSUANT TO §362 OF THE BANKRUPTCY
### CODE TO LIQUIDATE A PERSONAL INJURY MATTER
### OF ACE HOME CENTER, INC.

COMES NOW Claimant, ACE Home Center, Inc. (the "Claimant"), by and through its undersigned counsel, to respectfully request the Court enter the attached Order lifting the automatic stay imposed by 11 U.S.C. § 362 for the purpose of permitting Claimant to join Devon International Industries, Inc. as a third party defendant and to pursue claims against it up to the amount of all applicable insurance coverage available to Devon International Industries, Inc. in two matters: (1) In Re: Chinese-Manufactured Drywall Products Liability Litigation, MDL No. 2047 in the United States District Court for the Eastern District of Louisiana, specifically with respect to the consolidated cases of Braxton and Kerrie Collins v. Bass Homes, Inc., et al. and Jason and Cassie Herrington v. Bass Homes, Inc., et al., S.D. Mississippi, C.A. No. 1:13-00297 and (2) Greg and Sherry Wiggins v. ACE Home Center, Inc., Case No.: 30-CV-2013-900145, Circuit Court of Escambia County, Alabama. These matters which are pending in federal and state court seek to, among other things, liquidate damages for personal injuries alleged by Mr. and Mrs. Collins, Mr. and Mrs. Herrington and Mr. and Mrs. Wiggins. In support thereof, Claimant respectfully states as follows:

### BACKGROUND

1.      On April 23, 2013 ("Petition Date"), Devon International Industries Inc.

("Devon") filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy

Code.

2.     Devon is a corporation organized and existing under the laws of the

Commonwealth of Pennsylvania. Upon information and belief, prior to the petition date, Devon

specified, ordered, shipped, imported, controlled, took possession of and/or title to, offloaded,

stored, delivered, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed,

and/or supplied the Chinese drywall at issue in the <u>Collins</u>, <u>Herrington</u> and <u>Wiggins</u> suits.

3.     Attached as Exhibits "A," "B" and "C" are the complaints filed by Mr. and Mrs.

Collins, Mr. and Mrs. Herrington and Mr. and Mrs. Wiggins against Claimant describing, among

other things, the personal injuries they sustained as a result of the Chinese drywall with which

Devon was involved.[1]

4.     Attached as Exhibits "D," "E" and "F" are the joinder complaints that Claimant

filed as to Devon in the <u>Collins</u>, <u>Herrington</u> and <u>Wiggins</u> suits.

5.     Attached as Exhibits "G" and "H" are letters sent to Claimant by Devon's

general counsel citing the bankruptcy stay as to Devon.

6.     Upon information and belief, Devon has insurance coverage under which

the provider of such coverage ("Insurer") is obligated to defend and indemnify Devon in the

<u>Collins</u>, <u>Herrington</u> and <u>Wiggins</u> matters in which Claimant wishes to join Devon.

## <u>RELIEF REQUESTED</u>

7.     Claimant respectfully requests relief from the automatic stay imposed by 11

U.S.C. § 362 to pursue its third party claims against Devon in the <u>Collins</u>, <u>Herrington</u> and <u>Wiggins</u>

matters.

---

[1]See for example paragraphs 40, 75, 81, 87, 91 and 126 of Exhibit "A"; paragraphs  40,
75, 81, 87, 91 and 127 of Exhibit "B" and paragraphs 40, 72, 78, 84 and 88 of Exhibit "C."

Case 2:09-ap-02047-FFE1-MBN    Document 18000-4    Filed 05/26/15    Page 4 of 58

## ARGUMENT

8.     Section 362(d)(1) provides that:

>      (d)     On request of a party in interest and after notice and a hearing,
>              the court shall grant relief from the stay provided under
>              subsection (a) of this section, such as by terminating,
>              annulling, modifying, or conditioning such stay—
>
>              (1)     for cause, including the lack of adequate protection of
>                      an interest in property of such party in interest;

11 U.S.C. § 362(d)(1).  "Cause" is not defined by the Bankruptcy Code.  Consequently, a Bankruptcy

Court must decide what constitutes "cause" to lift the automatic stay on a case by case basis.  In re

Rexene Products Company, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citing In re Fernstrom Storage

and Van Co., 938 F.2d 731, 735 (7th Cir. 1991)).  The legislative history of Section 362 states that

cause may be established by a single factor such as "a desire to permit an action to proceed . . . in

another tribunal," or "lack of any connection with or interference with the pending bankruptcy case."

Rexene, 141 B.R. at 576 (citations omitted).

9.     Allowing Claimant to join Devon in the Collins, Herrington and Wiggins cases will

not impinge on Devon's bankruptcy proceedings since Devon's Insurer will have to defend the

Collins, Herrington and Wiggins suits and pay any resulting verdict for personal injuries up to the

amount of all applicable insurance coverage available to Devon International Industries, Inc.

Devon's Insurer has the obligation to defend the suits to the best of its ability, and therefore, will

adequately represent and protect Devon's interests.  Thus, there is little connection or interference

with the pending bankruptcy case.

10.     In Rexene, the Court stated that relief from the automatic stay should be granted

when the party seeking such relief can show that:

>              a.     the debtor or the debtor's estate will not be greatly prejudiced by
>                     continuing the civil suit;

      b.    the hardship to the movant by maintenance of the automatic stay considerably outweighs the hardship to the debtor; and

      c.    the movant has a reasonable chance of prevailing on the merits.

<u>Rexene</u>, 141 B.R. at 576; *accord* <u>In re Continental Airlines</u>, 152 B.R. 420, 424 (D. Del. 1993); *see also* <u>Fernstrom</u>, 938 F.2d at 735.

      11.    All three factors weigh heavily in favor of lifting the automatic stay to permit the Claimant to join Devon and pursue claims against it in the <u>Collins</u>, <u>Herrington</u> and <u>Wiggins</u> suits. With respect to the first factor, the federal and state court actions will be defended by Insurer, and will not require substantial efforts from Devon's estate or its counsel.

      12.    In addition to the foregoing, all parties to the federal and state court actions will benefit if the matters are moved forward to resolution before witnesses and evidence grow stale. Insurer will likely retain defense counsel in Louisiana and Alabama, so the procession of the federal and state court actions will not require the attention of Devon's bankruptcy counsel. *See* <u>Rexene</u>, 141 B.R. at 577 (that the debtor was represented by separate, local counsel weighed in favor of lifting the automatic stay). Moreover, as Mr. and Mrs. Collins, Mr. and Mrs. Herrington and Mr. and Mrs. Wiggins' claims will be paid from insurance proceeds up to the amount of all applicable insurance coverage available to Devon International Industries, Inc, Devon's estate has no interest in the funds which the plaintiffs might ultimately recover. *See* <u>In re Louisiana World Exposition, Inc.</u>, 832 B.R. 1391 (5th Cir. 1987); <u>Matter of Edgeworth</u>, 993 F.2d 51 (5th Cir. 1993). Because the insurance proceeds are not property of Devon's estate, they are not part of Devon's bankruptcy proceedings.

      13.    Finally, there is some likelihood that ACE Home Center, Inc. is entitled to relief on its third party claims against Devon in the <u>Collins</u>, <u>Herrington</u> and <u>Wiggins</u> suit as Devon specified, ordered, shipped, imported, controlled, took possession of and/or title to, offloaded, stored,

delivered, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed, and/or supplied the Chinese drywall that Mr. and Mrs. Collins, Mr. and Mrs. Herrington and Mr. and Mrs. Wiggins contend caused their injuries. The <u>Rexene</u> Court held that the required showing of probability of success on the merits is "very slight." <u>Id.</u> at 578. Thus, Claimant satisfies this "very slight" threshold of establishing a probability of success on the merits of its claims as against Devon.

14. Given the foregoing, Claimant has established that relief from the automatic stay should be granted so as to allow Claimant to join and pursue claims against Devon International Industries, Inc. up to the amount of all applicable insurance coverage available to Devon International Industries, Inc as a third party defendant in the <u>Collins</u>, <u>Herrington</u> and <u>Wiggins</u> suits.

<div align="center"><b><u>CONCLUSION</u></b></div>

WHEREFORE, Claimant respectfully requests the Court enter the attached Order.

Dated: November 20, 2014      Respectfully submitted:

BENNETT, BRICKLIN & SALTZBURG, LLC

/s/ John F. Barrett
JOHN F. BARRETT
PA Attorney ID No. 67368
1601 Market Street
Suite 1600
Philadelphia, PA 19103
(215) 561-4300
barrett@bbs-law.com
Counsel for ACE Home Center, Inc.

# EXHIBIT "A"

# EXHIBIT "B"

# EXHIBIT "C"

# EXHIBIT "D"

# EXHIBIT "E"

# EXHIBIT "F"

# EXHIBIT "G"

# EXHIBIT "H"

# EXHIBIT "A"

Case 2:09-md-02047-EEF-MBN Document 19000-4 Filed 05/26/15 Page 16 of 158
Exhibit A   Page 2 of 33
Case 1:13-cv-00297-LG-JMR Document 22 Filed 10/03/13 Page 1 of 32

# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

BRAXTON H. COLLINS and
KERRIE F. COLLINS                                               PLAINTIFFS


VERSUS                                    CIVIL ACTION NO. 1:13-cv-297-LG-JMR


BASS HOMES, INC.;
ACE HARDWARE CORPORATION;
ACE HOME CENTER, INC.;
And All Unknown Fictitious Producer
Defendants, Distributor Defendants, Alter
Ego Defendants and Fictitious Defendants
2-150 to be identified through discovery and
Named by amendment or by substitution of party           DEFENDANTS

---

## AMENDED COMPLAINT
## (JURY TRIAL REQUESTED)

---

COME NOW the Plaintiffs, Braxton H. Collins and Kerrie F. Collins, (hereinafter "Plaintiffs") by and through undersigned counsel, and file this, their Amended Complaint against the Defendants, Bass Homes, Inc. (hereinafter "Bass Homes"), Ace Hardware Corporation (hereinafter "Ace Hardware"), Ace Home Center, Inc. and Fictitious Defendants 2 through 150 are those Producer Defendants, Distributor Defendants, Builder Defendants and Alter Ego Defendants whose identities and true names are currently unknown to the Plaintiffs (hereinafter "Fictitious Defendants"), and in support thereof would show unto this Honorable Court as follows, to-wit:

## PARTIES

1.    Plaintiffs, Braxton H. Collins and Kerrie F. Collins, are the owners of a residence located in Moss Point, Mississippi (the "Collins Residence").   The address of the Collins Residence is 10720 Hwy 614, Moss Point, MS 39562.   This is also the Collins' primary residence.   An inspection has revealed the presence of Defective Chinese drywall in this Residence.

2.    Defendant Bass Homes, Inc., ("Bass") is an Alabama corporation authorized to conduct business in the State of Mississippi, with its principal place of business located at 34661 State Hwy 59, Stapleton, AL 36578.  Bass Homes, Inc. is a residential construction company and is operating, conducting, engaging in, and carrying on a business or venture in this state and has an office or agency in this state.

3.    Defendant Ace Hardware Corporation. ("Ace") is a Delaware corporation authorized to conduct business in the State of Mississippi, with its principal place of business located at 2200 Kensington Court, Oak Brook, IL 60523-2100.  At all material times, Ace was in the business of distributing, supplying and/or selling residential drywall in Mississippi, and maintained multiple retail, office and/or warehouse locations in the State of Mississippi.

4.    Defendant Ace Home Center, Inc. is an Alabama Corporation authorized to conduct business in the State of Mississippi, with its principal place of business located at 21090 Alabama 59 South, Robertsdale, Alabama 36567.  At all material times, Ace was in the business of distributing, supplying and/or selling residential drywall in Alabama as a retail outlet.

5.    Fictitious Defendants 2 through 150 are those Producer Defendants, Distributor Defendants, Builder Defendants and Alter Ego Defendants who identities and true names are currently unknown to the Plaintiffs, who therefore sues Fictitious Defendants 2 through 150 by such fictitious names.

Case 2:09-md-02047-EEF-MBN   Document 19000-4   Filed 05/26/15   Page 18 of 158
Exhibit A   Page 4 of 33
Case 2:09-md-02047-EEF-JCW   Document 18922   Filed 10/09/19   Page 4 of 32

## JURISDICTION and VENUE

6.      The litigation of this controversy should proceed in this forum because the properties at issue are located in this County, the Plaintiffs reside in this County and the wrongful conduct is concentrated in this County.

7.      Defendants are foreign corporations that either are registered to conduct business in the State of Mississippi or that actually transacted business in Mississippi.

## FACTS

8.      On or about August 22, 2008, Braxton H. Collins and Kerrie F. Collins entered into a Building Agreement with Bass Homes, Inc. for the construction of a residence on real property located at 10720 Hwy 614 Moss Point, MS 39562.  See Building Agreement, Attached hereto as **Exhibit "A"**.

9.      In about September, 2008, Bass Homes, Inc. applied for a building permit for the Collins Residence.

10.      Thereafter, Defendant Bass Homes was the general contractor and built the Collins Residence located at 10720 Hwy 614 Moss Point, MS 39562.  Plaintiffs are informed and believe Ace Hardware supplied the drywall installed in the Collins Residence.

11.      A certificate of occupancy for the Collins Residence located at 10720 Hwy 614 Moss Point, MS 39562 was issued on or about February 5, 2009. Thereafter, the Collins family occupied the residence.

12.      On information and belief, Ace Hardware, by and through Ace Home Center, Inc., sold the drywall that Bass Homes, or the subcontractor hired by Bass Homes, installed in the Collins Residence.

13.      In or about November 2009, Plaintiffs determined that their Residence was built with drywall manufactured in China ("Defective Chinese Drywall").

3

Case 2:09-md-02047-EEF-MBN Document 22000-4 Filed 05/06/15 Page 19 of 158
Case 13-1355-sf Doc 31-1 Filed 11/20/14 Entered 11/20/14 12:15:22 Desc
Exhibit A    Page 5 of 33
Case 2:09-md-02047-EEF-JCW Document 13022 Filed 06/09/18 Page 4 of 32

14.     The material composition and offensive smell of the Defective Chinese Drywall in the Residences renders it inferior to American-made drywall and unfit for ordinary use in residential construction and emits a corrosive sulfur fume that places the home at great risk for fire and damages all electrical and, therefore, structural components.

15.     Defendants knew, or should have known, that the Defective Chinese Drywall that Bass Homes purchased from Ace Hardware, by and through Ace Home Center, Inc., and that Bass Homes installed, was going to be used in the construction of the Residence. Ace Hardware and Ace Home Center, Inc. also knew, or should have known, that residential homeowners, such as Plaintiffs, were foreseeable users of the Defective Chinese Drywall and that residential homeowners, such as Plaintiffs, required and expected the drywall to be fit for the ordinary purpose for which it was intended.

16.     Unlike American-made drywall, the Defective Chinese Drywall in the Residences emits several sulfur compounds, including, but not limited to, carbon disulfide, carbonyl sulfur, and hydrogen sulfide. The Defective Chinese Drywall in the Residence is also suspected to contain several other impurities which render it unfit for usage in residential construction. The sulfur based compounds emitted have created a sulfur odor which renders the drywall unfit for the ordinary purpose for which it was intended.

17.     The Defective Chinese Drywall emits these sulfur based compounds because it suffers from either a defective manufacturing and/or mining process.

18.     The corroded items described above are also unfit for the ordinary purpose for which they were intended. Plaintiffs are uncertain as to the cause of the corrosion and have not engaged in any act or activity which has led to or caused the corrosion in any way.

19.     The Defective Chinese Drywall in the Residence has and will continue to cause damage to the Residences and Plaintiffs' personal property, including structural damage.

4

20.     As a result of the foregoing, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to: economic damage, and other economic damages; damage to real and personal property; attorneys' fees and expenses; and court and/or administrative costs.

21.     As a result of Defendants' wrongful conduct, Plaintiffs' Residence must be repaired and have declined and will continue to decline in value by at least the cost of repair.

<div align="center">

**COUNT I**
**BREACH OF CONTRACT**

</div>

22.     Plaintiffs incorporate by reference paragraphs 1 through 21 previously alleged as though fully set forth herein.

23.     Defendant Bass Homes sold the Residence to the Plaintiffs built with Defective Chinese Drywall.

24.     Defendant Bass Homes built the Residence with Defective Chinese Drywall.

25.     Defendant Ace Hardware, by and through Ace Home Center, Inc., sold the Defective Chinese Drywall which was used to build the Residence.

26.     Upon information and belief, Bass Homes purchased the Defective Chinese Drywall that it installed in the Residence from Ace Hardware, by and through Ace Home Center, Inc..

27.     The Defective Chinese Drywall was expected to and did reach the Plaintiffs' Residence without any substantial change in the condition to which it was sold.

28.     The Defective Chinese Drywall is defective and unreasonable dangerous and has caused damage because of the offensive odor and off gassing of sulfur compounds.

Case 2:09-md-02047-EEF-MBN  Document 19000-4  Filed 05/26/15  Page 21 of 158
Case 2:13-cv-02847-EEF-MBN  Doc 31-1  Filed 11/20/14  Entered 11/20/14 12:15:22  Desc
Exhibit A  Page 7 of 33
Case 2:09-md-02047-EEF-MBN  Document 13922  Filed 11/00/19  Page 8 of 32

29.     The Plaintiffs, acting as reasonably prudent persons, could not have discovered that Defective Chinese Drywall was defective as herein mentioned or perceived its danger because the defects in the drywall were latent.

30.     Bass Homes breached the contract of warranty with Plaintiffs and the contract for sale, entitling Plaintiffs to an award of damages and performance of the contract.

31.     By and through Ace Hardware's and Ace Home Center, Inc.'s acts, they have breached the implied covenant of good faith and fair dealing relative to contracts of insurance and warranty and sale, causing Plaintiffs' damages

32.     In the alternative, the acts of the Defendants were grossly negligent, amounting to an independent tort, entitling Plaintiffs to an award of extra contractual damages.

33.     Defendants Bass Homes, Ace Hardware and Ace Home Center, Inc. are therefore strictly liable for the damages, punitive and actual, sustained by Plaintiffs.

34.     As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, incidental, and other related expenses.  Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Defendants Bass Homes, Ace Hardware and Ace Home Center, Inc., awarding damages, interest, costs, and attorneys' fees and such other relief as this Court may deem just and proper.

## COUNT II
## NEGLIGENCE AND GROSS NEGLIGENCE

35.     Plaintiffs incorporate by reference paragraphs 1 through 34 previously alleged as though fully set forth herein.

Case 2:09-md-02047-EEF-MBN Document 19000-4 Filed 05/26/15 Page 22 of 158
Case 1:13-cv-02847-SJ-MDG Document 31-1 Filed 11/20/14 Entered 11/20/14 12:15:22 Desc
Exhibit A    Page 8 of 33
Case 2:09-md-02047-EEF-JCW Document 18922 Filed 06/03/15 Page 7 of 32

36.    Defendants owed a duty to Plaintiffs to exercise reasonable care in exporting, importing, distributing, delivering, supplying, selling, inspecting and installing the Defective Chinese Drywall, and in constructing the Residence, to insure that the Residence were constructed with materials that would not harm the inhabitants or the other property within the Residence.  Defendants also had a duty to adequately warn Plaintiffs about any unsafe materials used in the construction of the Residence known by Defendants.

37.    Defendants breached their duty to exercise reasonable care in exporting, importing, distributing, delivering, supplying, selling, inspecting and installing the Defective Chinese Drywall, and constructing the Residence by:

(a)    causing and/or allowing Defective Chinese Drywall to be installed within the Residence;

(b)    failing to investigate whether the Defective Chinese Drywall would harm inhabitants of the Residence or damage other property or work within the Residence;

(c)    failing to warn Plaintiffs that the Residence contained Defective Chinese Drywall that could damage their property;

(d)    failing to take reasonable measures that Defendants knew, or reasonably should have known, were necessary to protect the Plaintiffs from hazards associated with the Defective Chinese Drywall;

(e)    failing to exercise reasonable care in their quality control practices;

(f)    failing to comply with all applicable building codes;

(g)    failing to take such other precautions as may be revealed through discovery.

38.    If Defendants had exercised reasonable care, they would have investigated the Defective Chinese Drywall and its adverse effects prior to selling or installing the Defective Chinese Drywall used in the Residences.  Further, Defendants could have warned Plaintiffs that the Defective Chinese Drywall may cause the problems described herein.

7

Case 2:09-md-02047-EEF-MBN Document 19000-4 Filed 05/26/15 Page 23 of 158
Case 13-13552-sr Doc 31-1 Filed 11/20/14 Entered 11/20/14 12:15:22 Desc
Exhibit A Page 9 of 33
Case 2:09-md-02047-EEF-JCW Document 18022 Filed 10/03/19 Page 8 of 32

39.     Defendants' failure to exercise reasonable care constitutes a breach of duty. The defects in the drywall were latent and could not have been reasonably discovered by Plaintiffs.

40.     As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs were harmed and have incurred damages, as described herein, including personal injuries and damage to other property in the Residence.

41.     Due to Defendants' negligence, Plaintiffs have sustained damages, including, but not limited to the diminution in property value, all costs associated with the removal and replacement of the Defective Chinese Drywall, all costs necessary to reconstruct Plaintiffs' Residence, and all costs associated with the repair or replacement cost of damaged property in the residence.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Defendants, awarding damages, interest, costs, and attorneys' fees and such other relief as this Court may deem just and proper.

## COUNT III
## BREACH OF IMPLIED WARRANTIES AND OTHER WARRANTIES

42.     Plaintiffs incorporate by reference paragraphs 1 through 41 previously alleged as though fully set forth herein.

43.     Notwithstanding the breach of the express warranty at issue herein, Bass Homes, through the sale of the subject residence, and the failure to remedy such defects, have breached implied warranties of fitness for a particular purpose and merchantability with respect to the sale of the defective residence.

44.     Notwithstanding the breach of the express warranty at issue herein, Ace Hardware, by and through Ace Home Center, Inc., through the sale of the drywall installed in the

8

Case 2:09-md-02047-EEF-MBN   Document 19000-4   Filed 05/06/15   Page 24 of 158
Exhibit A    Page 10 of 33
Case 1:13-cv-00472-LG-JMR   Document 892   Filed 03/18/19   Page 24 of 32

Residence, and the failure to remedy such defects, have breached implied warranties of fitness for a particular purpose and merchantability.

45.     Such warranties include, but are not limited to, the warranties set forth in § 83-58-5, et seq., Mississippi Code of 1972, Annotated.  All such conditions precedent to enforcement of such warranties have been fulfilled.

46.     The material composition of the Defective Chinese Drywall in the Residence renders it inferior to American-made drywall and unfit for ordinary use in residential construction.

47.     Defendants knew, or should have known, that the Defective Chinese Drywall that Bass Homes purchased from Ace Hardware, by and through Ace Home Center, Inc., and that Bass Homes installed, was going to be used in the construction of the Residence.  Ace Hardware and Ace Home Center, Inc. also knew, or should have known, that residential homeowners, such as Plaintiffs, were foreseeable users of the Defective Chinese Drywall and that residential homeowners, such as Plaintiffs, required and expected the drywall to be fit for the ordinary purpose for which it was intended.

48.     Unlike American-made drywall, the Defective Chinese Drywall in the Residence emits several sulfur compounds, including, but not limited to, carbon disulfide, carbonyl sulfur, and hydrogen sulfide.  The Defective Chinese Drywall in the Residence is also suspected to contain several other impurities. The sulfur based compounds emitted have created a sulfur odor which renders the drywall unfit for the ordinary purpose for which it was intended.

49.     The Defective Chinese Drywall emits these sulfur based compounds because it suffers from either a defective manufacturing and/or mining process.

Case 2:09-md-02047-EEF-MBN Document 19000-4 Filed 05/26/15 Page 25 of 158
Case 2:13-cv-01552-sf Doc 31-1 Filed 11/20/14 Entered 11/20/14 12:15:22 Desc
Exhibit A Page 11 of 33
Case 2:09-md-02047-EEF-JCW Document 20922 Filed 10/03/19 Page 10 of 32

50.     The corroded items described above are also unfit for the ordinary purpose for which they were intended. Plaintiffs are uncertain as to the cause of the corrosion and have not engaged in any act or activity which has led to or caused the corrosion in any way.

51.     The odor caused by the use of Defective Chinese Drywall in the Residences renders the Residences unfit for the ordinary and general purpose of residential living.

52.     In addition, the accompanying corrosion of pipes, wiring, metal finishes and fixtures, including their HVAC system, and experienced failures of electronic products, including televisions and computers in the home also renders the Residence is unfit for the ordinary and general purpose of residential living.

53.     As a result of the use of Defective Chinese Drywall, the Residence does not meet the ordinary, normal standards reasonably to be expected of living quarters of comparable kind and quality.

54.     Despite having knowledge as to the use of inferior drywall in the home, Defendant Bass Homes sold the Residence to the Plaintiffs and built the Residence with Defective Chinese Drywall.

55.     As a result of Bass Homes' actions, Plaintiffs have suffered and will continue to suffer damage, including but not limited to: economic damages, including and other economic damages; damage to real and personal property; attorneys' fees and expenses; and court and/or administrative costs.

56.     As a result of Bass Homes' breach of the implied warranty of habitability and fitness, Plaintiffs are entitled to have the purchase price of the Residence restored to them by Bass Homes, together with any expenses there from, and for those damages and losses set forth above.

Case 2:09-md-02047-EEF-MBN Document 19000-4 Filed 05/26/15 Page 26 of 158
Case 13-13552-sr Doc 31-1 Filed 11/20/14 Entered 11/20/14 12:15:22 Desc
Exhibit A   Page 12 of 33
Case 2:09-md-02047-EEF-JCW Document 1822 Filed 10/09/09 Page 12 of 32

57.     As a result of Ace Hardware and Ace Home Center, Inc.'s actions, Plaintiffs have suffered and will continue to suffer damage, including but not limited to: economic damages, including and other economic damages; damage to real and personal property; attorneys' fees and expenses; and court and/or administrative costs.

58.     As a result of Ace Hardware and Ace Home Center, Inc.'s breach of the implied warranty of habitability and fitness, Plaintiffs are entitled to have the purchase price of the Residence restored to them by Bass Homes, together with any expenses there from, and for those damages and losses set forth above.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Bass Homes, Ace Hardware and Ace Home Center, Inc. awarding damages, interest, costs, and attorneys' fees and such other relief as this Court may deem just and proper.

## COUNT IV
## NEW HOME WARRANTY ACT

59.     The allegations of paragraphs 1 through 58 above are incorporated herein as if reproduced in full.

60.     Defendants failed to comply with Mississippi Code (Annotated) of 1972 §§ 83-53-1 through 83-53-17 by failing to construct the House to the standards contained in the building, mechanical-plumbing and electrical codes in effect in the county, state and federal Standard Building Codes, placing the House at risk for electrical fire and damaging the walls and other structural elements.

61.     The damages to Plaintiffs, including, but not limited to, those described herein were caused by Defendants' defiance of the New Home Warranty Act.

11

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Bass Homes, Ace Hardware and Ace Home Center, Inc., awarding damages, interest, costs, and attorneys' fees and such other relief as this Court may deem just and proper.

## COUNT V
## FAILURE TO PROCURE A WARRANTY

62.     The allegations of paragraphs 1 through 61 above are incorporated herein as if reproduced in full.

63.     Alternatively, if such warranty as represented by Defendants was not procured, Defendants are liable to Plaintiffs as set forth herein.   At material times, by reason of Defendants' actions, Defendant entered into a contractual agreement with Plaintiffs and was under a non-delegable duty to procure the warranty coverage sold to Plaintiffs, or, in the alternative, to procure for Plaintiffs like or similar warranty coverage.  If such warranty coverage was not procured, Defendants breached such contractual agreements and duties to Plaintiffs, entitling Plaintiff to performance of the contract of warranty by Defendants, in addition to all such other damages as set forth herein.

## COUNT VI
## CLAIM FOR DECLARATORY RELIEF

64.     The allegations of paragraphs 1 through 63 above are incorporated herein as if reproduced in full.

65.     In addition to seeking damages from Defendants, Plaintiffs request that this Court declare the rights, status and legal relations of the parties under the contract of sale at issue, and the contract of warranty at issue, specifically the amount of benefits due and payable to Plaintiffs under the warranty at issue, pursuant to M.R.C.P. 57 (Declaratory Judgments).  Further, and additionally or alternatively, Plaintiff would show that the language of the warranty at issue is

Case 2:09-md-02047-EEF-MBN Document 19000-4 Filed 05/26/15 Page 28 of 158
Case 2:13-cv-02847-EEF-MBN Document 20 Filed 11/20/14 Entered 11/20/14 12:15:22 Desc
Exhibit A    Page 14 of 33
Case 2:09-md-02047-EEF-JCW Document 2022 Filed 10/30/13 Page 14 of 32

vague, ambiguous and capable of more than one meaning, and that such warranty should be construed against Defendants, and that as a result, this Court should find and declare coverage for the specific claims of Plaintiffs as set forth herein.

## COUNT VI
## FAILURE TO WARN

66.     The allegations of paragraphs 1 through 65 above are incorporated herein as if reproduced in full.

67.     Defendants, Bass Homes, Ace Hardware and Ace Home Center, Inc., as the builder and a distributor of materials for the building of residential homes, have a duty to disclose hidden hazards in the home, especially when such hazards effect the safety of the home's occupants, upon acquiring knowledge of that hazard.

68.     Defendants knew that Defective Chinese Drywall was used in the construction of the home and had or should have had such knowledge immediately upon receiving the Defective Chinese Drywall at the job-site and installing it in the home.

69.     Defendants knew or should have known that Defective Chinese Drywall was an inferior product, not fit for ordinary use, and knew or should have known this immediately upon receiving the Defective Chinese Drywall at the job-site and installing it in the home.

70.     Defendants knew or should have known that Defective Chinese Drywall posed a serious health risk to residents of homes wherein Defective Chinese Drywall was used.

71.     Despite knowledge of long standing quality concerns regarding the use and installation of Defective Chinese Drywall, Defendant caused Defective Chinese Drywall to be installed in the home.

13

Case 2:09-md-02047-EEF-MBN   Document 19000-4   Filed 05/26/15   Page 29 of 158
Case 19-13552-sf   Doc 31-1   Filed 11/20/19   Entered 11/20/19 12:15:22   Desc
Exhibit A   Page 15 of 33
Case 3:11-cv-00402-ECM-WRD Document 22   Filed 09/13/11   Page 14 of 32

72.     Despite such knowledge, Defendants failed to warn the Plaintiffs of the use of Defective Chinese Drywall in the home or of the hazards associated with Defective Chinese Drywall used in the home.

73.     Had Defendants informed Plaintiffs of the use of Defective Chinese Drywall in the home or of the hazards associated with Defective Chinese Drywall used in the home, Plaintiffs would not have purchased the home.

74.     Had Defendants informed Plaintiffs of the use of Defective Chinese Drywall in the home or of the hazards associated with Defective Chinese Drywall used in the home, Plaintiffs would not have suffered the damages alleged herein, and/or could have taken steps necessary to protect themselves and their property against damage.

75.     As a result of Defendant's actions, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to: economic damages; damage to real and personal property; past, present and future physical and mental pain and suffering; past, present and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and court and/or administrative costs.

76.     Due to Defendant's failure to warn Plaintiffs as to the hidden hazards in the home, Defendant is liable to Plaintiff for those damages and losses set forth above.

## COUNT VII
## FRAUD- BASS HOMES, INC.

77.     The allegations of paragraphs 1 through 76 above are incorporated herein as if reproduced in full.

78.     Despite knowledge of the use of inferior drywall in the home, Bass Homes sold the home to the Plaintiffs.

14

79.     As a result of Bass Homes' nondisclosure, silence, and misrepresentations, Defendants intentionally gained an unjust advantage over Plaintiffs.

80.     Had Bass Homes' advised Plaintiffs of the use of inferior drywall in the home, Plaintiffs would not have purchased the home.

81.     As a result of Bass Homes' actions, Plaintiffs have suffered and will continue to suffer damage and injury, including, but not limited to: economic damages; damage to real and personal properly; past, present and future physical, and mental pain and suffering; past, present and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and Court and/or administrative costs.

82.     As a result of Bass Homes' fraud, Plaintiffs have the right to rescission of the original sale from Bass Homes to Plaintiffs, and for those damages and losses set forth above.

## COUNT IX
### INTENTIONAL / NEGLIGENT MISREPRESENTATION

83.     The allegations of paragraphs 1 through 82 above are incorporated herein as if reproduced in full.

84.     Despite knowledge of the use of the inferior drywall in the home, Defendants sold the home to Plaintiffs.

85.     Plaintiffs justifiably relied on Defendants' intentional or negligent representation.

86.     Had Defendants advised Plaintiffs of the use of inferior drywall in the home, Plaintiffs would not have purchased the home.

87.     As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to economic damages; damage to real and

15

Case 2:09-md-02047-EEF-MBN Document 19900-4 Filed 05/26/15 Page 31 of 158
Case 13-13552-sr Doc 31-1 Filed 11/20/14 Entered 11/20/14 12:15:22 Desc
Exhibit A    Page 17 of 33
Case 09-md-02047-EEF-JCW Document 8922 Filed 06/09/11 Page 16 of 32

personal property; past, present and future physical and mental pain and suffering; past, present and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and court and/or administrative costs.

## COUNT X
## ALTERNATIVE PLEADING OF
## BREACH OF WARRANTY OF FITNESS

88.    The allegations of paragraphs 1 through 87 above are incorporated herein as if reproduced in full.

89.    The use of inferior drywall in the home renders the home unfit for the purpose of residential living.

90.    Despite having knowledge as to the use of inferior drywall in the home, Defendants sold the home to Plaintiff.

91.    As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to: economic damages; damage to real and personal property; past, present and future physical and mental pain and suffering; past, present and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and court and/or administrative costs.

92.    As a result of Defendants' breach of the warranty of fitness, Plaintiffs are entitled to have the purchase price of the home restored to them by Defendants, together with any expenses there from, and for those damages and losses set forth above.

16

Case 2:09-md-02047-EEF-MBN Document 19000-4 Filed 05/26/15 Page 32 of 158
Case 2:13-cv-01552-sf Doc 31-1 Filed 11/20/14 Entered 11/20/14 12:15:22 Desc
Exhibit A    Page 18 of 33
Case 2:09-md-02047-EEF-JCW Document 18922 Filed 05/09/15 Page 17 of 32

## COUNT XI
## UNJUST ENRICHIMENT

93.     The allegations of paragraphs 1 through 92 above are incorporated herein as if reproduced in full.

94.     As the builder of the home and supplier of drywall for the construction of Plaintiffs' house, Defendants knew that Defective Chinese Drywall was used in the construction of the home and had or should have had such knowledge immediately upon receiving the Defective Chinese Drywall at the job-site and installing it in the home.  Defendants knew or should have known that Defective Chinese Drywall was all inferior product, not fit for ordinary use, and knew or should have known this immediately upon receiving the Defective Chinese Drywall at the job-site and installing it in the home.

95.     Had Defendants disclosed to Plaintiffs the use of Defective Chinese Drywall in the construction of the home, Plaintiffs would not have purchased the home.

96.     As a result of Defendants' acts and/or omissions in concealing the presence of Defective Chinese Drywall in Plaintiffs' home, Defendants unjustly enriched without justification or cause.

97.     As a result of Defendants' acts and/or omissions in concealing the presence of Defective Chinese Drywall in Plaintiffs; home, Plaintiffs were unjustly impoverished without justification or cause.

98.     As a result of the foregoing, Defendants are liable to Plaintiffs for the losses suffered by them.

Case 2:09-md-02047-EEF-MBN   Document 19000-4   Filed 05/26/15   Page 33 of 158
Exhibit A   Page 19 of 33
Case 2:09-md-02047-EEF-MBN   Document 1822   Filed 03/19/   Page 18 of 32

## COUNT XII
## THIRD PARTY BENEFICIARY

99.    The allegations of paragraphs 1 through 98 above are incorporated herein as if reproduced in full.

100.    Bass Homes entered into express contracts whereby its subcontractors performed work on the Residence.

101.    Plaintiffs were the intended beneficiary of the contracts between Bass Homes and its subcontractors.

102.    Bass Homes knew that Plaintiff would benefit from their contracts and could and would be harmed by the breach of those contracts by Bass Homes, its subcontractors, Ace Hardware and Ace Home Center, Inc..

103.    The subcontractors breached their contracts with Bass Homes by failing to carefully and properly complete the work on Plaintiffs' home in a good and workmanlike manner in compliance with applicable building codes and construction industry standards.  Therefore, Plaintiffs are entitled to damages as the third party beneficiary to Bass Homes' contracts based on damages suffered by Plaintiffs as a result of the breaches of those contracts.

104.    As a direct and proximate result of the actions of the Bass Homes, Ace Hardware, Ace Home Center, Inc., and Fictitious Defendants, which combined and concurred to form the basis of this suit, Plaintiffs have suffered damages as set forth in the above Statement of Facts.

## COUNT XIII
## DECEPTIVE TRADE PRACTICES

105.    The allegations of paragraphs 1 through 104 above are incorporated herein as if reproduced in full.

18

Case 2:09-md-02047-EEF-MBN Document 19000-4 Filed 05/26/15 Page 34 of 158
Case 1:13-cv-01352-SJ Doc 31-1 Filed 11/20/14 Entered 11/20/14 12:15:22 Desc
Exhibit A    Page 20 of 33
Case 1:09-md-02047-EEF-JCW Document 19022 Filed 06/09/13 Page 19 of 32

106.     Defendants' actions constitute violations of the Deceptive Trade Practices Act as defined in Title 75, Section 24 of the Mississippi Code (1972).

107.     Plaintiffs demand judgment be entered against Defendants in an amount equal to the funds improperly received by Defendants as the result of its deceptive acts, plus equitable relief.

**COUNT XIV**
**RESPONDEAT SUPERIOR**

108.     The allegations of paragraphs 1 through 107 above are incorporated herein as if reproduced in full.

109.     At all relevant times, agents and/or employees of Defendants who were involved with the construction and/or repairs of the House were in the course and scope of the duties of their corporate and respective employments.

110.     Defendants are vicariously liable for the acts and omissions of agents and/or employees who worked on the House.  Defendants knew, or in the exercise of reasonable caution should have known, their respective and corporate duties to Plaintiffs were non-delegable.

111.     With the filing of Answers and Defenses, Defendants are given the opportunity to address vicarious liability and provide a good faith basis for same under controlling Mississippi law and to provide any documents or contracts which support their position(s).

112.     Plaintiffs reserve the right to amend their Complaint after reviewing the pleadings and/or discovery of Defendants to include individual defendants, personnel, and/or corporate or business entities.

19

Case 2:09-md-02047-EEF-MBN Document 19000-4 Filed 05/26/15 Page 35 of 158
Case 13-13552-sr Doc 31-1 Filed 11/20/14 Entered 11/20/14 12:16:22 Desc
Exhibit A Page 21 of 33
Case 2:09-md-02047-EEF-JCW Document 18922 Filed 05/09/15 Page 20 of 32

## COUNT XV
## CONSTRUCTIVE FRAUD

113.    The allegations of paragraphs 1 through 112 above are incorporated herein as if reproduced in full.

114.    Defendants respectively, corporately and through agents and/or employees breached individual and corporate non-delegable duties—fiduciary and otherwise—to Plaintiffs, thereby committing constructive fraud.

115.    As direct and proximate results of constructive fraud by Defendants, Plaintiffs sustained damages including but not limited to those stated herein.

## COUNT XVI
## PRIVATE NUISANCE

116.    The allegations of paragraphs 1 through 115 above are incorporated herein as if reproduced in full.

117.    Private nuisance is sometimes "used interchangeably" with a claim for interference with the use and quiet enjoyment of property. *Leaf River Forest Products, Inc. v. Ferguson*, 662 So.2d 648, 662 (Miss. 1995). "A private nuisance is defined as a non-trespassory invasion of another's interest in the use and enjoyment of his property." *Young v. Weaver*, 32 So.2d 202, 205 (Miss. 1947).

118.    "A private nuisance may be shown by conduct causing an invasion of another's interest in the private use and enjoyment of land that is either: (1) intentional and unreasonable . . . ." Williams v. King, 860 So.2d 847, 851 (Miss. App. 2003).

119.    Plaintiffs allege the inability to use their home is a continuing problem which rises to a private nuisance.

Case 2:09-md-02047-EEF-MBN Document 19000-4 Filed 05/26/15 Page 36 of 158
Case 2:13-cv-02047-EEF-MBN Doc 31-1 Filed 11/20/14 Entered 11/20/14 12:15:22 Desc
Exhibit A   Page 22 of 33
Case 1:13-cv-00402-HSO-JCG Document 22 Filed 09/19/13 Page 21 of 32

## COUNT XVII
## COMPENSATORY DAMAGES

120.  The allegations of paragraphs 1 through 119 above are incorporated herein as if reproduced in full.

121.  But for the negligence and willful omissions of Defendants, Plaintiffs would have the home that they purchased.

122.  Defendants breached duties and directly and proximately caused unreasonable damages, including, but not limited to, those listed herein, entitling Plaintiffs to an award of compensatory damages.

## COUNT XVIII
## PUNITIVE DAMAGES

123.  The allegations of paragraphs 1 through 122 above are incorporated herein as if reproduced in full.

124.  Plaintiffs allege the limitations on damages as set forth in Mississippi Code (Annotated) of 1972 § 11-1-65—if they apply—are unconstitutional because they violate both the Mississippi Constitution and the Constitution of the United States, including, but not limited to, the Equal Protection and Due Process Clauses of these Constitutions.

125.  Plaintiffs allege the commissions and omissions by Defendants and their respective and/or corporate agents and/or employees were so willful, grossly negligent and wanton as to show a disregard for the rights of others and therefore give rise to an award of punitive damages.

## COUNT XVIX
## DAMAGES

125.     The allegations of paragraphs 1 through 124 above are incorporated herein as if reproduced in full.

126.     As direct and proximate results of the respective and/or collective omissions and grossly improper and negligent commissions and omissions by Defendants and/or their respective and/or corporate agents and/or employees, Plaintiffs suffered actual and compensatory damages, including, but not limited to, the following.

    a)     Psychological and emotional trauma, distress, anxiety, and mental suffering;
    b)     Loss of enjoyment of life;
    c)     Loss of use of her House;
    d)     Diminution of value of the House
    e)     Attorneys' fees;
    f)     Legal interest; and
    g)     Other damages to be proven at trial.


## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Plaintiffs pray the Court to enter judgment against Defendants and in favor of Plaintiffs and to award the following relief:

    a)     Judgment against Defendants for any and all losses incurred as direct and proximate results of the negligent conduct and other breaches of duty by Defendants, in an amount to be determined at trial;

    b)     Compensatory damages, prejudgment and post-judgment interest, attorneys' fees and costs reasonably and necessarily incurred during the course of litigation, in an amount to be determined at trial;

22

Case 2:09-md-02047-EEF-MBN   Document 19000-4   Filed 05/26/15   Page 38 of 158
Case 13-13552-sr   Doc 31-1   Filed 11/20/14   Entered 11/20/14 12:15:22   Desc
Exhibit A   Page 24 of 33
Case 3:11-md-02092-EEG-WR   Document 2922   Filed 10/09/19   Page 23 of 32

c)      Judgment against Defendants for damages in an amount to make her and her House whole insofar as a pecuniary amount can accomplish that purpose, in an amount to be determined at trial;

d)      Punitive damages against Defendants for gross negligence and/or breach of contract;

e)      Such other relief as this Honorable Court deems just and proper.

RESPECTFULLY SUBMITTED this, the 2nd day of October, 2013.

BRAXTON & KERRIE COLLINS, Plaintiffs

By and Through Their Attorneys,
LUCKEY & MULLINS, PLLC


BY:   _/s/ Stephen W. Mullins_____
          STEPHEN W. MULLINS


ATTORNEYS FOR PLAINTIFFS:

STEPHEN W. MULLINS  (MS Bar No. 9772)
LUCKEY & MULLINS, PLLC
2016 Bienville Blvd., Suite 102   (39564)
Post Office Box 990
Ocean Springs, MS  39566
Phone: 228.875.3175
Fax:    228.872.4719
smullins@luckeyandmullins.com


Of Counsel:

**Daniel K. Bryson** (*pro hac vice*)
**WHITFIELD BRYSON & MASON LLP**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035

23

Case 2:09-md-02047-EEF-MBN Document 19000-4 Filed 05/26/15 Page 39 of 158
Case 13-13552-sr Doc 31-1 Filed 11/20/14 Entered 11/20/14 12:15:22 Desc
Exhibit A    Page 25 of 33
Case 1:13-cv-00402-EGJ-CWR Document 22 Filed 10/03/13 Page 24 of 32

**CERTIFICATE OF SERVICE**

I, STEPHEN W. MULLINS, do hereby certify that I have on this date electronically filed

the above and foregoing Amended Complaint with this Court using the ECF filing system which

has caused notification of such filing to be sent to registered counsel of record.  A copy of said

Amended Complaint will also be served on the registered agent for Ace Home Center, Inc.

THIS, the 2nd day of October, 2013.


                                        /s/ Stephen W. Mullins
                                        STEPHEN W. MULLINS

Case 2:09-md-52047-EEF-MBN Document 20900-4 Filed 05/26/15 Page 40 of 158
Exhibit A    Page 26 of 33
Case 2:09-md-02047-EEF-JCW Document 18022-1 Filed 09/28/14 Page 26 of 32

STATE OF    ALABAMA

# BUILDING CONTRACT
## BASS HOMES, INC.

This agreement made this    22ND    day of    AUGUST    2008    , between
BRAXTON H. COLLINS AND KERRIE F. COLLINS    , hereinafter designated "Buyer" whose
residence is    10720 HWY 614 MOSSPOINT MS. 39562    and Bass Homes,
Inc., having its principal place of business at P. O. Box 344, Stapleton, Alabama, 36578, hereinafter designated "Seller."

**(1)**

### WITNESSETH:

The Seller agrees to build according to the plans and specifications on this sheet, or sheet attached hereto, which is by
reference made a part hereof, on the property of the Buyer, located at:
10720 HWY 614 MOSSPOINT MS. 39562

**(2)**

Description of construction to be performed: BUILD A 37' X 53' SINGLE STORY HOME, TO BE BUILT ACCORDING
TO BASS HOMES, INC. "DALTON III" MODEL, FOR SPECIAL CHANGES AND DETAILS SEE EXHIBITS A, B, C, D, E
AND F ATTACHED HERETO.

Exhibits A, B, C, D, E and F dated    AUGUST 22ND, 2008    and attached hereto, before
execution hereof, are made a part of this contract.

Buyer covenants and agrees to pay for said project (work) the sums and amounts herein set forth, pursuant to the following
terms: ONE HUNDRED FORTY ONE THOUSAND FOUR HUNDRED AND FIFTY 00/100

(1) TOTAL PRICE    $ 141,450.00
(2) DOWN PAYMENT    $ 1,000.00
(3) UNPAID BALANCE    $ 140,450.00

Details of Payments: BUYER(S) TO OBTAIN A CONVENTIONAL MORTGAGE LOAN. BUYER(S) TO PAY ALL
CLOSING FONTS, DISCOUNT FONTS AND PRE-PAIDS. BUYER(S) TO OBTAIN A 100% CONSTRUCTION LOAN
WITH PROGRESS PAYMENTS DURING CONSTRUCTION OF HOME. SAID PAYMENTS TO BE AS PER STANDARD
BANK POLICY. FINAL PAYMENT DUE UPON COMPLETION OF HOME.

**(3)**

This instrument, and the other instruments signed in connection with this transaction contain the price and all the terms and conditions
agreed upon by the Buyer and Seller, and no statement, representation or promise not set forth herein, or in any of said instruments has been made to
induce either party to enter into this transaction. In the event an unsatisfactory credit report on the Buyer or any other information unsatisfactory to
the Seller is received prior to beginning construction of the house, Seller at its option may within 10 days thereafter cancel this agreement UPON
returning to Buyer any deposit. In the event Buyer fails to perform any activities or duties required of Buyer (e.g., failure to prepare lot for
construction, or, failure to obtain an unconditional letter of commitment for funds to purchase home or any contents of this contract, or, failure to
deliver proof of all funds if cash purchase applies) which failure prevents Seller from commencing construction for a period of sixty (60) days from
the date hereof, Seller may cancel this contract at its option, regardless of any assistance that seller may have provided in financing. Should seller not
exercise their option to cancel buyer at 60 day requirement then seller can negotiate with buyers to increase cost of this contract should seller choose
to do so, provided that construction has not commenced by seller at buyers property described herein (e.g., starting foundation work on home). If
buyer chooses not to enter an additional cost then seller may cancel this contract and retain buyers initial deposit of money. In the event the Buyer
does not have good and marketable title to the property described in paragraph 1, Seller may at its option, elect to incur all expenses reasonably
necessary to obtain good and marketable title in the Buyer, and Buyer shall forthwith reimburse Seller for all expenses so incurred by Seller. In the
event the house built by Seller at the location on the ground designated by Buyer is not entirely on the property of Buyer, then this Buyer agrees to
pay Seller any and all costs, damage, leases and expenses, including reasonable attorneys' fees and court costs, suffered or incurred as a result thereof
by Seller. The above expenses incurred by the Seller shall constitute a lien against said property of the Buyer until paid. No completion date has
been represented or is a part of this contract. All provisions of this contract are subject to approval by an officer of BASS HOMES, INC., Stapleton,
AL 36578.

In those homes where pilings are specified, pilings shall be to a depth determined by Seller to be structurally safe and sound. In the event
the Buyer requires a depth in excess of that deemed by Seller to be sufficient and structurally safe and sound, this contract, at the option of Seller,
shall be declared null and void, or the contract may be re-negotiated to include the cost of drilling to a deeper depth. Commencement of construction
and commencement of drilling pilings shall not be deemed a waiver of this paragraph.

The house to be constructed is not designed for unusual surface conditions and/or sub-surface conditions in that no warranty is made that
the house is designed for conditions that are abnormal, that no testing of the soil will be conducted by the Seller.

Failure of this Seller or Subcontractor to pay those persons supplying material or services to complete this contract can result in the filing of
a lien on the above described property which is the subject of this contract.

**(4)**

Seller promises to furnish Buyer at closing a one-year limited warranty on the dwelling, a copy of which is attached
here as Exhibit " F ".

**(5)**

### ARBITRATION AGREEMENT
ANY DISPUTE, CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE BREACH THEREOF, OR ARISING OUT OF
ANY PRIOR DEALINGS BETWEEN SELLER AND BUYER OR ARISING OUT OF ANY FUTURE DEALINGS BETWEEN SELLER AND BUYER, SHALL BE SETTLED BY
ARBITRATION IN THE STATE OF ALABAMA IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION (THE
"ARBITRATION RULES OF THE AAA") AND JUDGMENT UPON THE AWARD RENDERED BY THE ARBITRATOR(S) MAY BE ENTERED IN ANY COURT HAVING
JURISDICTION THEREOF.
THE PARTIES FURTHER AGREE THAT SHOULD ANY PARTY INVOKE ARBITRATION IN ACCORDANCE WITH THIS AGREEMENT, THE OTHER PARTY
SHALL BRING TO THE ARBITRATION PROCESS ANY CLAIM OR COUNTERCLAIM WHICH IT MAY HAVE AGAINST THE INVOKING PARTY, WHETHER DEEMED TO BE
COMPULSORY OR PERMISSIVE AT LAW, AND, THE FAILURE TO BRING SUCH CLAIM OR COUNTERCLAIM SHALL CONSTITUTE A WAIVER OF AND A BAR TO THE
BRINGING OF SUCH CLAIM OR COUNTERCLAIM IN ANY SUBSEQUENT ARBITRATION OR LEGAL ACTION.
SELLER AND BUYER UNDERSTAND AND AGREE THAT EACH OF THEM IS WAIVING RIGHTS TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT
TO A JURY TRIAL; (II) THAT PRE-ARBITRATION DISCOVERY PROCEEDINGS IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS;
(III) THE ARBITRATOR'S AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING; AND (IV) EITHER PARTY'S RIGHT TO APPEAL OR
SEEK MODIFICATION OF RULINGS BY THE ARBITRATOR IS STRICTLY LIMITED. THE VENUE FOR ARBITRATION SHALL BE IN BALDWIN COUNTY, ALABAMA.

IN WITNESS WHEREOF, the Buyer and Seller have hereunto set their hands and seals at
STAPLETON , ALABAMA   the day and year first above written.
(City)    (State)
CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.

BASS HOMES, INC.
SELLER

BY _____          _Braxton H. Collins_
    Title                              (BUYER)

                                       _Kerrie F. Collins_
                                       (BUYER)

Exhibit "A"

Case 2:09-md-02047-EEF-MBN Document 20994-4 Filed 05/06/14 Page 41 of 158
Case 13-13552-847 Doc 31B1 Filed 11/20/14 Entered 11/20/14 12:16:22 Desc
Exhibit A    Page 27 of 33
Case 09-md-02047-EEF-JCW MRD Document 13022-1 Filed 00/08/14 Page 268 of 32

EXHIBIT A
BASS HOMES, INC., 34561 HWY. 59 SOUTH, STAPLETON, AL 36578

BRAXTON H. COLLINS AND KERRIE F. COLLINS                                    AUGUST 22, 2008
BUYER(S) NAME(S)                                    DATE

NOTICE
ANY HOLDER OF THIS CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE BUYER COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE BUYER SHALL NOT EXCEED AMOUNTS PAID BY THE BUYER HEREIN.

BUYER'S RIGHT TO CANCEL
IF THIS AGREEMENT WAS SOLICITED AT YOUR RESIDENCE AND YOU DO NOT WANT THE GOODS OR SERVICES, YOU MAY CANCEL THIS AGREEMENT BY MAILING A NOTICE TO THE SELLER. THE NOTICE MUST SAY THAT YOU DO NOT WANT THE GOODS OR SERVICES AND MUST BE MAILED BEFORE MIDNIGHT OF THE THIRD BUSINESS DAY AFTER YOU SIGN THIS AGREEMENT. THE NOTICE MUST BE MAILED TO: LEGAL DEPARTMENT, BASS HOMES, INC., HIGHWAY 31 P. O. DRAWER 340, STAPLETON, ALABAMA 36578. YOU ARE ALSO ENTITLED TO RECEIVE A REFUND OF ANY DOWN PAYMENT OR OTHER CONSIDERATION IF YOU CANCEL.
NOTICE TO THE BUYER: DO NOT SIGN THIS BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES, (B) YOU ARE ENTITLED TO AN EXACT COPY OF THE PAPER YOU SIGN.
THE BUYER ACKNOWLEDGES THAT HE RECEIVED A COPY OF THIS AGREEMENT AND THAT BEFORE SIGNING THE SAME, THE CONTRACT CONTAINED THE ENTIRE TERMS AND ALL BLANK SPACES HAD BEEN FILLED IN PRIOR TO THE SIGNING OF THE SAME.

These presents constitute a part of the Building Contract of even date attached hereto. The following options and additions, to-wit:
HOUSE TO BE BUILT ACCORDING TO PLANS FURNISHED BY BASS HOMES, INC.
Note to Buyers:  Bass Homes, Inc., may at its election require water and sewer to be installed on mortgaged property before construction begins or before completion of rough plumbing in home. In the event that water and sewer with connections to home is not completed at Bass Homes, Inc., request, Sellers and Buyers agree that Bass Homes, Inc., will have full rights to install water supply and sewer with connections and Buyers then agree to pay in full normal and customary charges of goods.

FOUNDATION:    [illegible struck-through text]
NOTE:  Builder shall negotiate additional cost if any with customer before foundation is installed. Any additional depth of foundation (piers, pilings, or slab) or width of footings required by any building governmental agencies, buyers, or builder's discretion shall all be on a cost plus basis unless pre-charged and written in contract total price.

1.    Foundation will be raised type with continuous 8" block wall around perimeter of home only. Note: All porches will be open piers.  If exterior is Brick Veneer, foundation will be piers only. Foundation height of home to be at sellers discretion and building codes if enforced. Buyers are responsible to determine if they are in a flood zone and shall disclose to seller in writing before construction begins if a required foundation height is necessary.
2.    Treated foundation seals will be installed; all porch seals and porch floor will be treated.
3.    3/4" tongue and groove plywood flooring.

EXTERIOR OF HOUSE:
1.    Exterior walls will have OSB and housewrap sheeting under siding.
2.    Exterior siding hardiplank or comparable unless otherwise stated in contract.
3.    All porch rails, fascias, and window trim will be pressure treated.
4.    Roof will have all framing 2' o.c.
5.    Roof will have standard fiberglass shingles, unless otherwise stated in contract.
6.    Exterior doors will be metal insulated.
7.    Exterior windows will be insulated white colonial style. Tilt window sash's are optional.
8.    Exterior of house will be painted latex.
9.    All homes with vinyl siding or hardy plank siding will have 7/16" OSB water board in lieu of standard styrofoam.

INTERIOR:
1.    Interior of home will have 3 ½" insulation in exterior walls and 6" fiberglass insulation in attic exposed ceiling areas only.
2.    Interior wall will have ½" sheetrock throughout entire house.
3.    Cabinet faces and doors only will be 3/4" Birch plywood or comparable material with laminated countertops.  All white lacquer cabinets will be 5/8" MDF or HDP, including raised panel doors.  All cabinet backs, ends, shelves or other components in cabinets shall be equal to Bass Homes, Inc., model home.
4.    Standard interior doors and trim.
5.    Vinyl flooring in kitchen, utility, and all baths, no wax.
6.    Carpet in all other areas of home from Bass Homes, Inc., samples.
7.    Fluorescent light in kitchen area.

STANDARD OPTIONS OF HOUSE:
1.    PLUMBING:    Fiberglass tub and shower units/stainless steel kitchen sink/standard vanity porcelain sinks, standard white fixtures.
2.    ELECTRICAL:    200 amp service/standard copper and aluminum wiring/standard light fixtures.
3.    HEAT AND AIR:    Standard electric central forced heat and air.  42" Metal insert  fireplace (without blowers) in homes that are shown on Bass Homes, Inc. sales brochure only.
4.    PAINT:    A.    Exterior oil base stain/interior latex paint on walls.  Standard color; all interior walls (soft white) Devoe Brand or something equivalent, all paint and stain from Bass Homes, Inc., samples.
            B.    All interior walls in home will be one color (soft white).
            C.    All trim work and cabinets will be stained or white.
            D.    All exteriors will be painted.
            E.    All exteriors will have one trim color for doors and shutters only.  Any other trim colors will be additional costs.  (Hand rails, porch rails, corner boards, and eaves will be stained or painted same color as exterior of home).
5.    All materials in excess of job will remain the property of Bass Homes, Inc.
6.    Buyers are responsible for removal of construction debris.
7.    All utilities are stubbed out only to exterior (Electrical Service Wire, Gas, and Plumbing).  See Exhibit "D" for details.

_____
(SELLER, BUILDER)

_____
(BUYER, OWNER)

_____
(BUYER, OWNER)

Case 2:09-md-02047-EEF-MBN Document 20900-4 Filed 05/06/15 Page 42 of 158
Case 13-13552-sr Doc 31-1 Filed 11/20/14 Entered 11/20/14 12:15:22 Desc
Exhibit A Page 28 of 33
Case 13-13552-sr Doc 2-1 Filed 04/29/13 Document 18022-1 Filed 10/29/14 Page 27 of 32

EXHIBIT B - PART I

**BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL 36578**

DATE: AUGUST 22, 2008

NAME OF BUYER(S): __BRAXTON H. COLLINS AND KERRIE F. COLLINS__

TYPE OF HOME: __CEMPLANK__ MODEL: __DALTON III__

OWNER'S CHOICE OF INTERIOR & EXTERIOR COLORS:

EXTERIOR: HARDIPLANK OR COMPARABLE _____ CEDAR _____ BRICK _____

SIDING COLOR _____

STANDARD TRIM COLOR (DOOR & SHUTTERS ONLY) _____

DELUXE TRIM COLOR (DOOR, SHUTTERS, FASCIA & WINDOW TRIM) THIS ITEM IS $950.00 ADDITIONAL COST

SHINGLES _____ WINDOWS: BRONZE _____ WHITE _____

BRICK COLOR _____

MORTAR COLOR: GREY _____ DARK MORTAR _____ OTHER _____

INTERIOR:

KITCHEN / BREAKFAST

    COUNTER TOP _____

    STANDARD RANGE HOOD: ALMOND _____ WHITE _____ STAINLESS _____

    CONNECTION FOR MICROWAVE: ☐ YES or ☐ NO

    VINYL _____

DINING

    CARPET _____

UTILITY:

    VINYL _____

MASTER BATHROOM:

    VANITY TOP _____

    VINYL _____

HALL BATHROOM:

    VANITY TOP _____

    VINYL _____

CARPET:

    $150.00 ADDED COST FOR HARDWOOD FLOORING FRONT ENTRANCE: _____

    LIVING ROOM _____

    FOYER _____

    STUDY _____

    BEDROOM #1 _____

    BEDROOM #2 _____

    BEDROOM #3 _____

    BEDROOM #4 _____

(NOTE: Vinyl throughout home, other than kitchen, dining and baths cost an additional $2.00 per sq. ft.)

FIREPLACE STONE: _____

(NOTE: The fireplace in all homes with cathedral ceilings will have stone to mantle height.)

FIREPLACE MANTLE BACKING BRACE (2" X 4"): YES _____ OR NO _____

CABINETS STAINS OR COLOR : _____

    ALL CABINET DOOR AND ANY CABINET UPGRADES MUST BE IN CONTRACT ON "EXHIBIT C" AND ALSO PROOF OF PURCHASE ON

BASS HOMES COST BREAK DOWN SHEET.

INTERIOR TRIM STAIN OR COLOR : _____

CABINET HARDWARE _____

        *ONE CHOICE OF CARPET COLOR
        *TWO COLORS FOR VINYL
        *TWO COLORS FOR VANITY AND COUNTER TOP

VINYL FLOORING WILL BE INSTALLED IN BATHROOMS, KITCHEN, UTILITY, AND BREAKFAST AREAS ONLY.
ANY VINYL INSTALLED IN ANY OTHER AREAS, BUYER(S) AGREE TO PAY AN ADDITIONAL $2.00 PER SQUARE
FOOT FOR UNDERLAYMENT.

_Braxt H Collins_
(BUYER, OWNER)

_Kerrie F Collins_
(BUYER, OWNER)

EXHIBIT B - PART 2

BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL 36578

BUYER(S)  BRAXTON H. COLLINS AND KERRIE F. COLLINS

DATE:  AUGUST 22, 2008

1.  Ceiling fan outlets ONLY WHERE: LIVING AND ALL BEDROOMS

2.  Ceiling fan installation ONLY WHERE: NONE

3.  Dishwasher cutout-? YES X OR NO

4.  Dishwasher hookup? YES OR NO X

5.  Ice-maker line only installed: YES X OR NO

6.  Cabinet space for standard 30" free standing electric stove YES OR NO

    Drop-in stove: YES OR NO

7.  Gas utilities: YES OR NO

8.  Termite Treatment; one twelve month bond: YES X OR NO
    (No termite treatment shall be provided for homes on pilings.)

9.  Electric hookup: Standard overhead OR underground

10. Clean up debris and haul off? NO. If yes, additional costs must be added to total price and Exhibit C of Contract.

11. Payment towards Builder's Risk Insurance during construction period.
    YES OR NO X
    Buyer(s) agree(s) to furnish Builder's Risk policy payable to Seller and if necessary, also to Lender or Buyer(s) prior
    to and during construction of home until construction of home is complete.

12. All utilities are stubbed out only to exterior (electric service wire, gas, plumbing, and sewer).

13. Gutters, parquet flooring and mini-blinds not included in standard price of home.

(I)   Buyer(s) agree that all special changes to home plans have been made and incorporated into this contract. Buyer(s) further
      agrees that all color selections and selections of all goods have been made by Buyer(s), and upon execution of this Contract,
      both Parties agree that no changes will be made.

(II)  Buyer(s) agree(s) that upon substantial completion of home, Buyer(s) and a Bass Homes, Inc., representative will do a walk
      through inspection of home and a punch list will be written up which is mutually agreeable by both parties. Buyer(s) hereby
      agree(s) that the initial walk through and resulting punch list will be the only walk through and punch list. Seller hereby
      agrees to correct or complete the items on the punch list and once finished, Buyer(s) agree(s) to immediately pay Seller the
      entire balance owed to the Seller under the contract or otherwise. If Seller should agree to do any extra work after the initial
      punch list, this work shall not commence until Seller has been paid in full. All other matters will be strictly related to the
      standard one year Builder's Warranty styled as a "Completion Certificate and Owner's Acceptance".

(III) Buyer(s) agree(s) that he and/or she shall not be allowed to take possession of the home until such time as Seller has been
      paid in full under the contract and has also been paid any additional cost, if any, which has been added to the original
      contract price. Buyer(s) acknowledge(s) that, until such time as Seller has been paid in full the contract price and signed a
      "Completion Certificate and Owner's Acceptance," Buyer(s) will not be allowed to occupy or store any of his and/or her
      possessions in said home. In the event that Buyer(s) fail to the agreed terms above, Buyer(s) shall in this agreement, pay to
      the Seller a sum of $1,000.00 per month rent for possessing the newly constructed home for storing any of Buyer(s) goods or
      occupying the home in any manner. The monthly $1,000.00 rate will be paid to Seller until Seller is paid in full.

_____                _____
(SELLER, BUILDER)                        (BUYER, OWNER)

                                         _____
                                         (BUYER, OWNER)

EXHIBIT C
BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL 36578

NAMES OF BUYER(S): __BRAXTON H. COLLINS AND KERRIE F. COLLINS_____

DATE: __AUGUST 22, 2008_____

TYPE OF HOME: __CEMPLANK_____

NAME OF HOME BEING BUILT: __DALTON III_____

PLEASE LIST ANY CHANGES OTHER THAN "STANDARD" THAT IS STATED IN THIS CONTRACT REGARDLESS OF HOW SMALL OR LARGE THE CHANGE MAY BE. ANYTHING WRITTEN IN EXHIBIT "C" WILL OVERRIDE THE "STANDARD" CONTRACT AND BLUEPRINTS.

1.  INSTALL BRICK VENEER FROM BASS HOMES SAMPLES AROUND FOUNDATION AREA AND PORCH AREAS OF HOME (SAME AS REDWOOD MODEL HOME). NOTE: FRONT STEPS ONLY WILL BE BRICK. ALL OTHER STEPS TO BE TREATED PINE.

2.  INSTALL STANDARD 8' CEILINGS THROUGHOUT HOME.

3.  INSTALL DIMENSIONAL SHINGLES ON ROOF OF HOME IN LIEU OF STANDARD SHINGLES FROM BASS HOME SAMPLES.

4.  INSTALL FLAT PANEL CABINETS (WITHOUT ARCHES) FROM BASS HOMES SAMPLES THROUGHOUT HOME.

5.  INSTALL CERAMIC TILE IN FOYER KITCHEN, BREAKFAST, AND BOTH BATHS.

6.  ADD A STANDARD FIREPLACE IN LIVING ROOM AS PER PRELIMINARY PLANS.

7.  DELETE FRENCH DOORS IN OFFICE/STUDY AND CONVERT TO A 4TH BEDROOM. ADD A CLOSET AT THE ADJACENT SIDE TO NEXT BEDROOM.

8.  MAKE ENTRANCE TO FOURTH BEDROOM BY EXTENDING HALL AS PER PRELIMINARY PLANS. NOTE: SHORTEN AND REPOSITION OTHER BEDROOM CLOSET.

9.  MOVE REAR LIVING ROOM WALL TOWARDS REAR PORCH 2' TO MAKE LIVING ROOM LARGER. NOTE: REAR PORCH WILL BE 2' SMALLER THAN STANDARD.

10. INSTALL BOARD AND BATTING SIDING ON EXTERIOR IN LIEU OF STANDARD SIDING.

11. INSTALL CRAFTSMAN STYLE FRONT PORCH COLUMNS SAME AS SPEC HOME IN STAPLETON (BYRD ROAD) IN LIEU OF STANDARD COLUMNS.

12. INSTALL SMOOTH CEILINGS WITH LIGHT ORANGE PEEL TEXTURE THROUGHOUT HOME.

13. FRAME BUYERS INTERIOR SOLID WOOD DOORS IN BASS HOMES DOORS UNIT CASINGS. NOTE: BLUEPRINT MUST BE ACCURATE FOR DOORS THAT BUYERS ARE PROVIDING. CONSULT BUYERS FOR DIMENSIONS.

14. BUYERS TO PROVIDE BOTH BATH VANITIES, SINKS AND FAUCETS. BASS HOMES WILL INSTALL.

15. BUYERS TO PROVIDE A LARGE CUSTOM KITCHEN SINK. BASS HOMES TO INSTALL. NOTE: CONSULT BUYERS TO SIZE CABINETS TO ALLOW FOR SPECIAL SINK.

16. INSTALL TWO FRONT PORCH LANTERNS SAME AS SPEC HOMES.

17. ALL FAUCETS PROVIDED BY BASS HOMES TO BE DELTA BRAND.

18. BUYERS HAVE A $2,000.00 ALLOWANCE FOR APPLIANCES. SAID ALLOWANCE TO BE DISPERSED DIRECTLY FROM BUYERS CONSTRUCTION LOAN. BUYERS TO PURCHASE AND INSTALL SAID APPLIANCES.

__AUGUST 22, 2008__
DATE

_____
(SELLER, BUILDER)

_____
(BUYER, OWNER)

_____
(BUYER, OWNER)

Case 2:09-md-02047-EEF-MBN Document 19000-4 Filed 05/26/15 Page 45 of 158
Exhibit A   Page 31 of 33
Case 09-md-02047-EEF-JCW Document 18022-1 Filed 10/28/14 Page 608 of 32

EXHIBIT D
BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL 36578

NAME OF BUYER(S):   BRAXTON H. COLLINS AND KERRIE F. COLLINS

DATE:   AUGUST 22, 2008

TYPE OF HOME:   CEMPLANK

MODEL:   DALTON III

BUYER(S) AGREES TO PROVIDE THE FOLLOWING ITEMS PRIOR TO COMMENCEMENT OF CONSTRUCTION UNLESS OTHERWISE STATED IN THIS CONTRACT:

1. Electricity necessary to construct home within 25 feet of proposed structure. All expenses to be from Buyer(s) including power bills.
2. Water supply necessary to construct home within 25 feet of proposed structure. All expenses to be from Buyer(s) including water bills.
3. Temporary driveway (and culvert if necessary) within 25 feet of proposed structure. Driveway material must be sufficient to support heavy equipment delivering building goods.
4. Clearing of lot for proposed structure. Clearing includes trees, stumps or any type of debris above or below ground to Seller's satisfaction.
5. Elevation certification in flood areas when required in connection with builder obtaining building permit. Seller will provide building permit only.
6. Water supply within 500 feet for installing pilings for homes being built on pilings.
7. Cost of plan reviews when required by county or city building departments.
8. Engineering cost of certifying home plans when required by building codes or governmental agencies.

BUYER(S) SHALL PROVIDE THE FOLLOWING ITEMS DURING OR AT COMPLETION OF CONSTRUCTION (UNLESS OTHERWISE STATED IN THIS CONTRACT). NOTE: SOME ITEMS MAY BE AT BUYER(S) DISCRETION UNLESS REQUIRED BY MORTGAGE HOLDER.

1. Septic system and line to stub-out at home.
2. Water meter, well, and line to stub-out at home.
3. Buyers to connect water and sewer line to stub-out at foundation of home.
4. Television antenna outlets, cable outlets, telephone outlets or other items of similar nature.
5. Mirrors in baths, soap dishes, towel bars, etc.
6. Safety bars or grab bars in tubs and showers.
7. Shower doors.
8. Mantel over fireplace.

BUYER(S) ACKNOWLEDGES AND AGREES WITH THE FOLLOWING POLICIES AND STATEMENTS:

1. Seller will not be responsible for any property damage to Buyer(s)' lot in connection with Seller constructing Buyer(s)' home.
2. Seller will not do any landscaping or leveling of lot during or after completion of this contract unless otherwise stated in this contract.
3. When homes are sold with brick veneer on exterior of home, all walls under porch and gables shall having siding (specified type in contract) in those areas unless otherwise written in contract. All exterior steps and rails shall be wood.
4. When final building plans are completed, Buyer(s) agrees that Seller will not build home to exact dimensions and cosmetic details that may appear on plans due to a large volume of plan changes that Seller produces. Seller and Buyer(s) agrees to build home according to sales brochure plan and preliminary plans.
5. Seller will not warrant the performance or appearance of any clear sealers or semi transparent stains installed by Seller on exterior of homes such as Clear Wood Finish or similar brand.
6. Buyer(s) shall not take any possession of home or move any goods in until seller receives final payment.
7. Seller is not required to provide buyer(s) any building drawings or blueprints other than a preliminary style set of plans with room sizes and exterior elevations of all sides of home.
8. Buyers strictly agree that they are not allowed to perform any construction improvements or install any goods or improvements in home until final payment of home is payed to seller at completion. SHOULD BUYER(S) VIOLATE OR BREAK THE TERMS OF THIS AGREEMENT HEREBY STATED IN ITEM # 8 OF THIS EXHIBIT D OF CONTRACT THEN BUYER(S) WILL PAY SELLER AN ADDITIONAL $5,000.00 TO THE TOTAL PRICE OF THIS CONTRACT AT THE TIME OF FINAL PAYMENT.
9. Buyer(s) agree upon substantial completion of construction of home that one (1) time walk-through inspection will be done by appointment with a Bass Homes, Inc. representative and a written list of items will be produced. Bass Homes, Inc. will complete all listed items from the one (1) time walk-through inspection. Buyer(s) agree to close immediately upon completion of list.
   Buyer(s) and Seller agree that no additional walk-through or additional items will be allowed after the initial one (1) time walk-through and item list.
10. "completion certificate of owners acceptance" warranty limitations are a part of this contract.

Buyers agree to pay the full amount for materials and labor of any special additions/code enforcements that are required by building departments, mortgage lenders, or any type of governmental agency that are not standard in Bass Homes, Inc., model home or said plans and specs. This includes, but is not limited to, the following items: special insulation, underpinning of home's on pilings, structural engineering, certification of plans, special depth of concrete footings (i.e. prairie soil, white sand in coastal areas, unstable soil), or any items that must be added to meet the requirements of any of the above governmental agencies, companies, or departments.

_(signature)_
(SELLER (BUILDER)

_(signature)_
(BUYER, OWNER)

_(signature)_
(BUYER, OWNER)

EXHIBIT "£"

BASS HOMES INC. 34661 STATE HWY 59 SOUTH STAPLETON, AL.36578

BUYER(S) BRAXTON H. COLLINS AND KERRIE F. COLLINS
BUYER(S) AGREE TO THE FOLLOWING TERMS, DISCLOSURE NOTICES AND COST ADDENDUMS TO BE ADDED TO THE TOTAL PRICE OF THIS CONTRACT (COST WHEN APPLICABLE) TO THE UNDERSIGNED BUYER(S).

1.  ANY ENGINEERING COST OF BUYER(S) PLANS IF REQUIRED BY MORTGAGE LENDER, BUILDING DEPARTMENTS OR ANY TYPE OF AGENCY THAT CAN ENFORCE SAID REQUIREMENT THEREOF.

2.  IF BUYER(S) COMMENCE'S WITH ANY IMPROVEMENTS, PERFORM ANY TYPE OF WORK ON HOME DESCRIBED IN THIS CONTRACT OR HIRE ANY WORK TO BE PERFORMED BY OTHERS IN THE ACTUAL HOME DESCRIBED IN THIS CONTRACT INCLUDING ADDING ON TO THE STRUCTURE OF THIS HOME, PRIOR TO PAYING THE FINAL PAYMENT OF THIS CONTRACT TO BASS HOMES INC. TOGETHER WITH SIGNING THE "COMPLETION OF OWNERS ACCEPTANCE", THEN IT IS AGREED THAT BUYER(S) SHALL PAY BASS HOMES INC. THE SUM OF $5,000.00 ADDITIONAL COST ABOVE THE TOTAL PRICE IN THIS CONTRACT AT TIME OF FINAL PAYMENT.

3.  RECESSED LIGHTS ARE NOT INCLUDED IN THE REDWOOD MODEL OR ANY OTHER HOME PLANS UNLESS ADDED TO COST BREAKDOWN AND LISTED ON EXHIBIT "C" OF THIS CONTRACT.

4.  BUYERS CANNOT PROVIDE ANY LIGHT FIXTURES, PLUMBING FIXTURES OR ANY OTHER TYPE OF GOODS IN CONNECTION WITH THIS CONTRACT.
    ALL OF THE ABOVE SHALL BE STANDARD FIXTURES FROM BASS HOME INC.

5.  GRINDER PUMPS WHEN APPLICABLE FOR SEWER WILL NOT BE CONNECTED BY THE SELLER. BUYERS TO PAY FOR THE ELECTRICAL AND PLUMBING CONNECTIONS.

6.  ELECTRICAL WIRING FOR PUMPS AND WELLS WHEN APPLICABLE ARE NOT INCLUDED IN TOTAL PRICE.

7.  CONCRETE SLABS UNDER BEACH HOMES ON PILINGS WILL NOT BE WARRANTED AGAINST SLIGHT PUDDLES OF WATER AFTER RAINS DUE TO THE NATURE OF A SLAB FINISH. SLABS UNDER PILING HOMES WILL NOT INCLUDE PORCH OR DECK AREAS.

8.  BUYER(S) LOT SLOPE WILL BE ASSESSED FOR SLOPE THAT MAY EXCEED THE REQUIREMENTS OF THIS CONTRACT ON EXHIBIT "A" AT TIME OF COMMENCEMENT OF CONSTRUCTION OF FOUNDATION.

9.  FIREPLACE MANTLES WILL NOT BE INCLUDED ON ANY HOMES AS A STANDARD ITEM IN ANY HOME. SELLER WILL INSTALL A 2' X 4' SUPPORT AT MANTLE HEIGHT FOR BUYER(S) TO INSTALL A MANTLE AFTER COMPLETION OF HOME.

10. BUYER(S) ARE RESPONSIBLE FOR CAULKING DOOR THRESH-HOLDS AS NEEDED BUT NOT LESS THAN EACH AND EVERY ANNIVERSARY DATE OF ORIGINAL CONSTRUCTION COMPLETION OF HOME. BUYERS ARE RESPONSIBLE FOR THE ANNUAL INSPECTION OF FIREPLACE FLASHING AND CAULKING. BUYERS ARE RESPONSIBLE FOR CHECKING AND CAULKING EXTERIOR OF WINDOWS ANNUALLY.

11. BASS HOMES INC. WILL NOT WARRANT THE PERFORMANCE OF HEATING AND COOLING IN ONE AND ONE HALF STORY HOMES THAT DO NOT HAVE AN UPSTAIRS SEPARATE UNIT. THE UPSTAIRS WILL HAVE A TENDENCY TO MAINTAIN SEVERAL DEGREES DIFFERENCE IN TEMPERATURE WHICH IS STANDARD TO THE CONSTRUCTION INDUSTRY.

12. BUYER(S) AND SELLER AGREE THAT THERE ARE NO OTHER PROMISES OTHER THAN THAT WHICH IS WRITTEN IN THIS CONTRACT. THIS MEANS INCLUDING ANY VERBAL PROMISES THAT BUYER(S) MAY CLAIM THAT A SALES AGENT OR BASS HOMES INC. EMPLOYEE OR REPRESENTATIVE COULD HAVE IMPLIED OR PROMISED HE OR SHE.

13. BUYERS HEREBY AGREE THAT BASS HOMES INC. WILL NOT ACCEPT ANY LIABILITY OF BUYERS COST OF UTILITY BILLS DURING CONSTRUCTION OF HOME OR AFTER BUYER(S) TAKES OCCUPANCY OF THIS HOME DESCRIBED HEREIN. THIS INCLUDES ANY COMPLAINT BUYER(S) MAY ASSERT OF INFLATED POWER BILL'S OR ANY TYPE OF OTHER UTILITY.

BUYER(S) _Braxh Collins_

BUYER(S) _Kerrie F Collins_

AUGUST 22, 2008
DATE

Case 2:09-md-52047-EEF-MBN   Document 19000-4   Filed 05/26/15   Page 47 of 158
Case 13-13552-sr   Doc 31-1   Filed 11/20/14   Entered 11/20/14 12:15:22   Desc
Exhibit A   Page 33 of 33
Case 3:11-cv-00729-FLGW-RD   Document 13022-1   Filed 10/29/14   Page 628 of 32

Exhibit " F "

RE: BRAXTON H. COLLINS AND KERRIE F. COLLINS
COMPLETION CERTIFICATE AND OWNER'S ACCEPTANCE ;
LIMITED ONE-YEAR WRITTEN WARRANTY

The undersigned, owner (whether one or more) of the real property described in their contract with
BASS HOMES, INC. ("Contractor") dated : AUGUST 22, 2008   hereby acknowledge and certify as follows:

1.  All materials and labor provided for in said contract have been furnished and installed by the
Contractor or his subcontractors on our said real property in a good and workmanlike manner; that we have
made a full and complete inspection of the same; that all construction and other work called for in said contract
has been satisfactorily completed; that the home is fit, suitable and habitable; and the improvements are hereby
accepted by us as built.

2.  Contractor did not manufacture any materials used in the construction of this home; that the
Contractor does not warrant any of the said materials against any defects in QUALITY, FITNESS or
MERCHANTABILITY; that the Contractor will make good only on the workmanship of the actual construction
of home; and that any and all claims related to the materials used in construction shall be pursued by customers
ONLY against the manufacturers of any materials provided to the Contractor.

3.  Contractor hereby gives  a limited warranty on the home located at 10720 HWY 614 MOSSPOINT
MS. 39562 for a period of one ( 1 ) year following closing or occupancy by the Buyer(s), whichever event
occurs first.

4.  Contractor warrants the home to be free from latent defects for a period of one ( 1 ) year following
closing or occupancy, whichever event occurs first.

5.  THIS WARRANTY IS GIVEN IN LIEU OF ANY AND ALL OTHER WARRANTIES,
EITHER EXPRESSED OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF
MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, HABITABILITY AND /OR
WORKMANSHIP.

6.  Contractor shall not be liable under the parties' contract or this warranty unless written notice of the
latent defect(s) shall have been given by Buyer(s) to Contractor within the (1) year warranty. Steps taken by the
Contractor to correct any defect(s) shall not act to extend the warranty period described hereunder.

7.  Buyers confirm that they have performed a walk-thru inspection prior to signing the Completion
Certificate and Owners Acceptance; Limited One-Year Written Warranty. Further Buyer(s) agree that their
signatures below signify that they have accepted the  construction of the home and waive any further right to
complain of cosmetic deficiencies and the quality of workmanship or any other matter that does not constitute a
latent defect.

8.  Any and all remedies of the Buyer(s) and any liability of the Contractor shall be governed strictly by
the terms of this one-year limited warranty. Neither the Contractor nor its assigns shall be liable for any
incidental or consequential damages, under no circumstances may the Buyer(s) recover damages in excess of the
amount of  the subject building construction contract.

9.  Any reference to the singular herein shall also encompass the plural where appropriate; and any
reference to the plural shall also encompass the singular where appropriate.

BUYER(S) INITIALS OF RECEIPT OF THIS DOCUMENT BEFORE CONSTRUCTION OF HOME:
BUYER: _BraxH Collins_ BUYER: _Kerrie L Collins_

DATE: _____   BUYER: XXXXXXXXXXXXXX _____

DATE: _____   BUYER: XXXXXXXXXXXXXX _____

Witness: _____   DATE: _____

# EXHIBIT "B"

IN THE CIRCUIT COURT OF GEORGE COUNTY, MISSISSIPPI

JASON S. HERRINGTON and
CASSIE D. HERRINGTON                                                      PLAINTIFFS

VERSUS                                    CIVIL ACTION NO. 1:13 CV 323 HSO-RHW

BASS HOMES, INC.;
ACE HARDWARE CORPORATION;
ACE HOME CENTER, INC.;
And All Unknown Fictitious Producer
Defendants, Distributor Defendants, Alter
Ego Defendants and Fictitious Defendants
2-150 to be identified through discovery and
Named by amendment or by substitution of party                           DEFENDANTS

---

## AMENDED COMPLAINT
### (JURY TRIAL REQUESTED)

---

COME NOW the Plaintiffs, Jason S. Herrington and Cassie D. Herrington, (hereinafter "Plaintiffs") by and through undersigned counsel, and file this, their Amended Complaint against the Defendants, Bass Homes, Inc. (hereinafter "Bass Homes"), Ace Hardware Corporation (hereinafter "Ace Hardware"), Ace Home Center, Inc. and Fictitious Defendants 2 through 150 are those Producer Defendants, Distributor Defendants, Builder Defendants and Alter Ego Defendants whose identities and true names are currently unknown to the Plaintiffs (hereinafter "Fictitious Defendants"), and in support thereof would show unto this Honorable Court as follows, to-wit:

### PARTIES

1.      Plaintiffs, Jason S. Herrington and Cassie D. Herrington, are the owners of a residence located in Lucedale, Mississippi (the "Herington Residence"). The address of the Herington Residence is 26975 Old Americus Road, Lucedale, MS 39452. This is also the

1

Exhibit A

Case 2:09-md-02047-EEF-MBN Document 20000-4 Filed 05/06/15 Page 50 of 158
Case 2:09-md-02047-EEF-MBN Document 20000-4 Filed 05/06/15 Page 50 of 158
Exhibit B    Page 3 of 34
Case 2:09-md-02047-EEF-MBN Document 18023-1 Filed 10/09/14 Page 2 of 33
Case 2:09-md-02047-EEF-MBN Document 18023-1 Filed 10/09/14 Page 2 of 33

Heringtons' primary residence.  An inspection has revealed the presence of Defective Chinese drywall in this Residence.

2.      Defendant Bass Homes, Inc., ("Bass") is an Alabama corporation authorized to conduct business in the State of Mississippi, with its principal place of business located at 34661 State Hwy 59, Stapleton, AL 36578.  Bass Homes, Inc. is a residential construction company and is operating, conducting, engaging in, and carrying on a business or venture in this state and has an office or agency in this state.

3.      Defendant Ace Hardware Corporation. ("Ace") is a Delaware corporation authorized to conduct business in the State of Mississippi, with its principal place of business located at 2200 Kensington Court, Oak Brook, IL 60523-2100.  At all material times, Ace was in the business of distributing, supplying and/or selling residential drywall in Mississippi, and maintained multiple retail, office and/or warehouse locations in the State of Mississippi.

4.      Defendant, Ace Home Center, Inc. is an Alabama corporation authorized to conduct business in the State of Mississippi, with its principal place of business located at 21090 Alabama 59 South, Robertsale, AL  36567.  At all material times, Ace Home Center was in the business of distributing, supplying and/or selling residential drywall in Alabama as a retail outlet.

5.      Fictitious Defendants 2 through 150 are those Producer Defendants, Distributor Defendants, Builder Defendants and Alter Ego Defendants who identities and true names are currently unknown to the Plaintiffs, who therefore sues Fictitious Defendants 1 through 150 by such fictitious names.

## JURISDICTION and VENUE

6.      The litigation of this controversy should proceed in this forum because the properties at issue are located in this County, the Plaintiffs reside in this County and the wrongful conduct is concentrated in this County.

Case 2:09-md-02047-EEF-MBN   Document 19000-4   Filed 05/06/15   Page 51 of 158
Case 2:13-cv-13552-sf   Doc 31-2   Filed 11/20/14   Entered 11/20/14 12:15:22   Desc
Exhibit B   Page 4 of 34
Case 09-13d-02047-EEF-JCW   Document 18023-1   Filed 10/02/14   Page 8 24 33

7.       Defendants are foreign corporations that are either registered to conduct business in the State of Mississippi or that actually transacted business in Mississippi.

**FACTS**

8.       On or about November 13, 2008, Jason S. Herrington and Cassie D. Herrington entered into a Building Agreement with Bass Homes, Inc. for the construction of a residence on real property located at 26975 Old Americus Road, Lucedale, MS 39452.   See Building Agreement, Attached hereto as **Exhibit "A"**.

9.       In about November, 2008, Bass Homes, Inc. applied for a building permit for the Herrington Residence.

10.       Thereafter, Defendant Bass Homes was the general contractor and built the Herrington Residence located at 26975 Old Americus Road, Lucedale, MS 39452.  Plaintiffs are informed and believe Ace Hardware supplied the drywall installed in the Herrington Residence.

11.       Construction of the Herrington Residence was complete in or about March 13, 2009. Thereafter, the Herrington family occupied the residence.

12.       On information and belief, Ace Hardware, by and through Ace Home Center, sold the drywall that Bass Homes, or the subcontractor hired by Bass Homes, installed in the Herrington Residence.

13.       In or about January 2010, Plaintiffs determined that their Residence was built with drywall manufactured in China ("Defective Chinese Drywall").

14.       The material composition and offensive smell of the Defective Chinese Drywall in the Residences renders it inferior to American-made drywall and unfit for ordinary use in residential construction and emits a corrosive sulfur fume that places the home at great risk for fire and damages all electrical and, therefore, structural components.

15.     Defendants knew, or should have known, that the Defective Chinese Drywall that Bass Homes purchased from Ace Hardware, by and through Ace Home Center, and that Bass Homes installed, was going to be used in the construction of the Residence. Ace Hardware and Ace Home Center also knew, or should have known, that residential homeowners, such as Plaintiffs, were foreseeable users of the Defective Chinese Drywall and that residential homeowners, such as Plaintiffs, required and expected the drywall to be fit for the ordinary purpose for which it was intended.

16.     Unlike American-made drywall, the Defective Chinese Drywall in the Residences emits several sulfur compounds, including, but not limited to, carbon disulfide, carbonyl sulfur, and hydrogen sulfide. The Defective Chinese Drywall in the Residence is also suspected to contain several other impurities which render it unfit for usage in residential construction. The sulfur based compounds emitted have created a sulfur odor which renders the drywall unfit for the ordinary purpose for which it was intended.

17.     The Defective Chinese Drywall emits these sulfur based compounds because it suffers from either a defective manufacturing and/or mining process.

18.     The corroded items described above are also unfit for the ordinary purpose for which they were intended. Plaintiffs are uncertain as to the cause of the corrosion and have not engaged in any act or activity which has led to or caused the corrosion in any way.

19.     The Defective Chinese Drywall in the Residence has and will continue to cause damage to the Residences and Plaintiffs' personal property, including structural damage.

20.     As a result of the foregoing, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to: economic damage, and other economic damages; damage to real and personal property; attorneys' fees and expenses; and court and/or administrative costs.

4

21.    As a result of Defendants' wrongful conduct, Plaintiffs' Residence must be repaired and have declined and will continue to decline in value by at least the cost of repair.

<u>COUNT I</u>
<u>BREACH OF CONTRACT</u>

22.    Plaintiffs incorporate by reference paragraphs 1 through 20 previously alleged as though fully set forth herein.

23.    Defendant Bass Homes sold the Residence to the Plaintiffs built with Defective Chinese Drywall.

24.    Defendant Bass Homes built the Residence with Defective Chinese Drywall.

25.    Defendant Ace Hardware, by and through Ace Home Center, sold the Defective Chinese Drywall which was used to build the Residence.

26.    Upon information and belief, Bass Homes purchased the Defective Chinese Drywall that it installed in the Residence from Ace Hardware, by and through Ace Home Center.

27.    The Defective Chinese Drywall was expected to and did reach the Plaintiffs' Residence without any substantial change in the condition to which it was sold.

28.    The Defective Chinese Drywall is defective and unreasonable dangerous and has caused damage because of the offensive odor and off gassing of sulfur compounds.

29.    The Plaintiffs, acting as reasonably prudent persons, could not have discovered that Defective Chinese Drywall was defective as herein mentioned or perceived its danger because the defects in the drywall were latent.

30.    Bass Homes breached the contract of warranty with Plaintiffs and the contract for sale, entitling Plaintiffs to an award of damages and performance of the contract.

5

31.    By and through Ace Hardware's  and Ace Home Center's acts, they have breached the implied covenant of good faith and fair dealing relative to contracts of insurance and warranty and sale, causing Plaintiffs' damages

32.    In the alternative, the acts of the Defendants were grossly negligent, amounting to an independent tort, entitling Plaintiffs to an award of extra contractual damages.

33.    Defendants Bass Homes, Ace Hardware and Ace Home Center are therefore strictly liable for the damages, punitive and actual, sustained by Plaintiffs.

34.    As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, incidental, and other related expenses.  Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Defendants, Bass Homes, Ace Hardware and Ace Home Center, awarding damages, interest, costs, and attorneys' fees and such other relief as this Court may deem just and proper.

## COUNT II
## NEGLIGENCE AND GROSS NEGLIGENCE

35.    Plaintiffs incorporate by reference paragraphs 1 through 34 previously alleged as though fully set forth herein.

36.    Defendants owed a duty to Plaintiffs to exercise reasonable care in exporting, importing, distributing, delivering, supplying, selling, inspecting and installing the Defective Chinese Drywall, and in constructing the Residence, to insure that the Residence were constructed with materials that would not harm the inhabitants or the other property within the

6

Case 2:09-md-02047-EEF-MBN Document 19000-4 Filed 05/26/15 Page 55 of 158
Exhibit B    Page 8 of 34
Case 2:09-md-02047-EEF-CRWD Document 18023-1 Filed 10/09/13/14 Page 7 of 24 33

Residence.  Defendants also had a duty to adequately warn Plaintiffs about any unsafe materials used in the construction of the Residence known by Defendants.

37.    Defendants breached their duty to exercise reasonable care in exporting, importing, distributing, delivering, supplying, selling, inspecting and installing the Defective Chinese Drywall, and constructing the Residence by:

(a)    causing and/or allowing Defective Chinese Drywall to be installed within the Residence;

(b)    failing to investigate whether the Defective Chinese Drywall would harm inhabitants of the Residence or damage other property or work within the Residence;

(c)    failing to warn Plaintiffs that the Residence contained Defective Chinese Drywall that could damage their property;

(d)    failing to take reasonable measures that Defendants knew, or reasonably should have known, were necessary to protect the Plaintiffs from hazards associated with the Defective Chinese Drywall;

(e)    failing to exercise reasonable care in their quality control practices;

(f)    failing to comply with all applicable building codes;

(g)    failing to take such other precautions as may be revealed through discovery.

38.    If Defendants had exercised reasonable care, they would have investigated the Defective Chinese Drywall and its adverse effects prior to selling or installing the Defective Chinese Drywall used in the Residences.  Further, Defendants could have warned Plaintiffs that the Defective Chinese Drywall may cause the problems described herein.

39.    Defendants' failure to exercise reasonable care constitutes a breach of duty.  The defects in the drywall were latent and could not have been reasonably discovered by Plaintiffs.

40. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs were harmed and have incurred damages, as described herein, including personal injuries and damage to other property in the Residence.

41. Due to Defendants' negligence, Plaintiffs have sustained damages, including, but not limited to the diminution in property value, all costs associated with the removal and replacement of the Defective Chinese Drywall, all costs necessary to reconstruct Plaintiffs' Residence, and all costs associated with the repair or replacement cost of damaged property in the residence.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Defendants, awarding damages, interest, costs, and attorneys' fees and such other relief as this Court may deem just and proper.

## COUNT III
## BREACH OF IMPLIED WARRANTIES AND OTHER WARRANTIES

42. Plaintiffs incorporate by reference paragraphs 1 through 41 previously alleged as though fully set forth herein.

43. Notwithstanding the breach of the express warranty at issue herein, Bass Homes, through the sale of the subject residence, and the failure to remedy such defects, have breached implied warranties of fitness for a particular purpose and merchantability with respect to the sale of the defective residence.

44. Notwithstanding the breach of the express warranty at issue herein, Ace Hardware, by and through Ace Home Center, through the sale of the drywall installed in the Residence, and the failure to remedy such defects, have breached implied warranties of fitness for a particular purpose and merchantability.

8

Case 2:09-md-02047-EEF-MBN   Document 19000-4   Filed 05/26/15   Page 57 of 158
Case 13-13552-sr    Doc 312-2    Filed 11/20/14    Entered 11/20/14 12:16:22    Desc
Exhibit B    Page 10 of 34
Case 2:09-md-02047-EEF-JCW   Document 18023-1   Filed 10/09/14   Page 9 of 33

45.     Such warranties include, but are not limited to, the warranties set forth in § 83-58-5, et seq., Mississippi Code of 1972, Annotated.  All such conditions precedent to enforcement of such warranties have been fulfilled.

46.     The material composition of the Defective Chinese Drywall in the Residence renders it inferior to American-made drywall and unfit for ordinary use in residential construction.

47.     Defendants knew, or should have known, that the Defective Chinese Drywall that Bass Homes purchased from Ace Hardware, by and through Ace Home Center, and that Bass Homes installed, was going to be used in the construction of the Residence.  Ace Hardware and Ace Home Center also knew, or should have known, that residential homeowners, such as Plaintiffs, were foreseeable users of the Defective Chinese Drywall and that residential homeowners, such as Plaintiffs, required and expected the drywall to be fit for the ordinary purpose for which it was intended.

48.     Unlike American-made drywall, the Defective Chinese Drywall in the Residence emits several sulfur compounds, including, but not limited to, carbon disulfide, carbonyl sulfur, and hydrogen sulfide.  The Defective Chinese Drywall in the Residence is also suspected to contain several other impurities. The sulfur based compounds emitted have created a sulfur odor which renders the drywall unfit for the ordinary purpose for which it was intended.

49.     The Defective Chinese Drywall emits these sulfur based compounds because it suffers from either a defective manufacturing and/or mining process.

50.     The corroded items described above are also unfit for the ordinary purpose for which they were intended. Plaintiffs are uncertain as to the cause of the corrosion and have not engaged in any act or activity which has led to or caused the corrosion in any way.

Case 2:09-md-02047-EEF-MBN Document 19000-4 Filed 05/26/15 Page 58 of 158
Case 2:13-cv-01552-sr Doc 31-2 Filed 11/20/14 Entered 11/20/14 12:16:22 Desc
Exhibit B    Page 11 of 34
Case 2:09-md-02047-EEF-JCW Document 18023-1 Filed 10/09/14 Page 10 of 33

51.    The odor caused by the use of Defective Chinese Drywall in the Residences renders the Residences unfit for the ordinary and general purpose of residential living.

52.    In addition, the accompanying corrosion of pipes, wiring, metal finishes and fixtures, including their HVAC system, and experienced failures of electronic products, including televisions and computers in the home also renders the Residence is unfit for the ordinary and general purpose of residential living.

53.    As a result of the use of Defective Chinese Drywall, the Residence does not meet the ordinary, normal standards reasonably to be expected of living quarters of comparable kind and quality.

54.    Despite having knowledge as to the use of inferior drywall in the home, Defendant Bass Homes sold the Residence to the Plaintiffs and built the Residence with Defective Chinese Drywall.

55.    As a result of Bass Homes' actions, Plaintiffs have suffered and will continue to suffer damage, including but not limited to: economic damages, including and other economic damages; damage to real and personal property; attorneys' fees and expenses; and court and/or administrative costs.

56.    As a result of Bass Homes' breach of the implied warranty of habitability and fitness, Plaintiffs are entitled to have the purchase price of the Residence restored to them by Bass Homes, together with any expenses there from, and for those damages and losses set forth above.

57.    As a result of Ace Hardware's and Ace Home Center's actions, Plaintiffs have suffered and will continue to suffer damage, including but not limited to: economic damages, including and other economic damages; damage to real and personal property; attorneys' fees and expenses; and court and/or administrative costs.

Case 2:09-md-02047-EEF-MBN Document 19000-4 Filed 05/26/15 Page 59 of 158
Case 13-13552-sr Doc 3-2 Filed 11/20/14 Entered 11/20/14 12:16:22 Desc
Exhibit B   Page 12 of 34
Case 2:09-md-02047-EEF-CRWV Document 8023-1 Filed 10/09/13 Page 11 of 24

58.     As a result of Ace Hardware's and Ace Home Center's breach of the implied warranty of habitability and fitness, Plaintiffs are entitled to have the purchase price of the Residence restored to them by Bass Homes, together with any expenses there from, and for those damages and losses set forth above.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Bass Homes, Ace Hardware and Ace Home Center, awarding damages, interest, costs, and attorneys' fees and such other relief as this Court may deem just and proper.

## COUNT IV
## NEW HOME WARRANTY ACT

59.     The allegations of paragraphs 1 through 58 above are incorporated herein as if reproduced in full.

60.     Defendants failed to comply with Mississippi Code (Annotated) of 1972 §§ 83-53-1 through 83-53-17 by failing to construct the House to the standards contained in the building, mechanical-plumbing and electrical codes in effect in the county, state and federal Standard Building Codes, placing the House at risk for electrical fire and damaging the walls and other structural elements.

61.     The damages to Plaintiffs, including, but not limited to, those described herein were caused by Defendants' defiance of the New Home Warranty Act.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Bass Homes, Ace Hardware and Ace Home Center, awarding damages, interest, costs, and attorneys' fees and such other relief as this Court may deem just and proper.

Case 2:09-md-02047-EEF-MBN Document 19000-4 Filed 05/26/15 Page 60 of 158
Case 13-13552-sr Doc 31-2 Filed 11/20/14 Entered 11/20/14 12:15:22 Desc
Exhibit B Page 13 of 34
Case 2:09-md-02047-EEF-MBN Document 18023-1 Filed 10/02/14 Page 12 of 33

## COUNT V
## FAILURE TO PROCURE A WARRANTY

62.     The allegations of paragraphs 1 through 61 above are incorporated herein as if reproduced in full.

63.     Alternatively, if such warranty as represented by Defendants was not procured, Defendants are liable to Plaintiffs as set forth herein.   At material times, by reason of Defendants' actions, Defendant entered into a contractual agreement with Plaintiffs and was under a non-delegable duty to procure the warranty coverage sold to Plaintiffs, or, in the alternative, to procure for Plaintiffs like or similar warranty coverage.  If such warranty coverage was not procured, Defendants breached such contractual agreements and duties to Plaintiffs, entitling Plaintiff to performance of the contract of warranty by Defendants, in addition to all such other damages as set forth herein.

## COUNT VI
## CLAIM FOR DECLARATORY RELIEF

64.     The allegations of paragraphs 1 through 63 above are incorporated herein as if reproduced in full.

65.   In addition to seeking damages from Defendants, Plaintiffs request that this Court declare the rights, status and legal relations of the parties under the contract of sale at issue, and the contract of warranty at issue, specifically the amount of benefits due and payable to Plaintiffs under the warranty at issue, pursuant to M.R.C.P. 57 (Declaratory Judgments).   Further, and additionally or alternatively, Plaintiff would show that the language of the warranty at issue is vague, ambiguous and capable of more than one meaning, and that such warranty should be construed against Defendants, and that as a result, this Court should find and declare coverage for the specific claims of Plaintiffs as set forth herein.

Case 2:09-md-02047-EEF-MBN   Document 19000-4   Filed 05/26/15   Page 61 of 158
Exhibit B   Page 14 of 34
Case 2:09-md-02047-EEF-CRW   Document 18023-1   Filed 10/09/14   Page 13 of 24 33

## COUNT VI
## FAILURE TO WARN

66.     The allegations of paragraphs 1. through 65. above are incorporated herein as if reproduced in full.

67.     Defendants, Bass Homes, Ace Hardware and Ace Home Center, as the builder and a distributor of materials for the building of residential homes, have a duty to disclose hidden hazards in the home, especially when such hazards effect the safety of the home's occupants, upon acquiring knowledge of that hazard.

68.     Defendants knew that Defective Chinese Drywall was used in the construction of the home and had or should have had such knowledge immediately upon receiving the Defective Chinese Drywall at the job-site and installing it in the home.

69.   Defendants knew or should have known that Defective Chinese Drywall was an inferior product, not fit for ordinary use, and knew or should have known this immediately upon receiving the Defective Chinese Drywall at the job-site and installing it in the home.

70.   Defendants knew or should have known that Defective Chinese Drywall posed a serious health risk to residents of homes wherein Defective Chinese Drywall was used.

71.     Despite knowledge of long standing quality concerns regarding the use and installation of Defective Chinese Drywall, Defendant caused Defective Chinese Drywall to be installed in the home.

72.     Despite such knowledge, Defendants failed to warn the Plaintiffs of the use of Defective Chinese Drywall in the home or of the hazards associated with Defective Chinese Drywall used in the home.

13

73.     Had Defendants informed Plaintiffs of the use of Defective Chinese Drywall in the home or of the hazards associated with Defective Chinese Drywall used in the home, Plaintiffs would not have purchased the home.

74.     Had Defendants informed Plaintiffs of the use of Defective Chinese Drywall in the home or of the hazards associated with Defective Chinese Drywall used in the home, Plaintiffs would not have suffered the damages alleged herein, and/or could have taken steps necessary to protect themselves and their property against damage.

75.     As a result of Defendant's actions, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to: economic damages; damage to real and personal property; past, present and future physical and mental pain and suffering; past, present and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and court and/or administrative costs.

76.     Due to Defendant's failure to warn Plaintiffs as to the hidden hazards in the home, Defendant is liable to Plaintiff for those damages and losses set forth above.

## COUNT VII
## FRAUD- BASS HOMES, INC.

77.     The allegations of paragraphs 1 through 76 above are incorporated herein as if reproduced in full.

78.     Despite knowledge of the use of inferior drywall in the home, Bass Homes sold the home to the Plaintiffs.

79.     As a result of Bass Homes' nondisclosure, silence, and misrepresentations, Defendants intentionally gained an unjust advantage over Plaintiffs.

14

Case 2:09-md-02047-EEF-MBN Document 19000-4 Filed 05/26/15 Page 63 of 158
Case 13-13552-sr Doc 3-2 Filed 11/20/14 Entered 11/20/14 12:15:22 Desc
Exhibit B Page 16 of 34
Case 2:09-md-02047-EEF-CRW Document 18023-1 Filed 10/09/14 Page 15 of 33

80.   Had Bass Homes' advised Plaintiffs of the use of inferior drywall in the home, Plaintiffs would not have purchased the home.

81.   As a result of Bass Homes' actions, Plaintiffs have suffered and will continue to suffer damage and injury, including, but not limited to: economic damages; damage to real and personal properly; past, present and future physical, and mental pain and suffering; past, present and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and Court and/or administrative costs.

82.   As a result of Bass Homes' fraud, Plaintiffs have the right to rescission of the original sale from Bass Homes to Plaintiffs, and for those damages and losses set forth above.


## COUNT IX
## INTENTIONAL / NEGLIGENT MISREPRESENTATION

83.   The allegations of paragraphs 1 through 82 above are incorporated herein as if reproduced in full.

84.   Despite knowledge of the use of the inferior drywall in the home, Defendants sold the home to Plaintiffs.

85.   Plaintiffs justifiably relied on Defendants' intentional or negligent representation.

86.   Had Defendants advised Plaintiffs of the use of inferior drywall in the home, Plaintiffs would not have purchased the home.

87.   As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to economic damages; damage to real and personal property; past, present and future physical and mental pain and suffering; past, present

15

Case 2:09-md-02047-EEF-MBN Document 19000-4 Filed 05/26/15 Page 64 of 158
Case 13-13552-sr Doc 31-2 Filed 11/20/14 Entered 11/20/14 12:19:22 Desc
Exhibit B    Page 17 of 34
Case 2:09-md-02047-EEF-JCW Document 18023-1 Filed 10/09/14 Page 16 of 33

and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and court and/or administrative costs.

## COUNT X
## ALTERNATIVE PLEADING OF
## BREACH OF WARRANTY OF FITNESS

88.    The allegations of paragraphs 1 through 87 above are incorporated herein as if reproduced in full.

89.    The use of inferior drywall in the home renders the home unfit for the purpose of residential living.

90.    Despite having knowledge as to the use of inferior drywall in the home, Defendants sold the home to Plaintiff.

91. As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to: economic damages; damage to real and personal property; past, present and future physical and mental pain and suffering; past, present and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and court and/or administrative costs.

92.    As a result of Defendants' breach of the warranty of fitness, Plaintiffs are entitled to have the purchase price of the home restored to them by Defendants, together with any expenses there from, and for those damages and losses set forth above.

16

## COUNT XI
## UNJUST ENRICHIMENT

93.     The allegations of paragraphs 1 through 92 above are incorporated herein as if reproduced in full.

94.     As the builder of the home and supplier of drywall for the construction of Plaintiffs' house, Defendants knew that Defective Chinese Drywall was used in the construction of the home and had or should have had such knowledge immediately upon receiving the Defective Chinese Drywall at the job-site and installing it in the home.  Defendants knew or should have known that Defective Chinese Drywall was all inferior product, not fit for ordinary use, and knew or should have known this immediately upon receiving the Defective Chinese Drywall at the job-site and installing it in the home.

95.     Had Defendants disclosed to Plaintiffs the use of Defective Chinese Drywall in the construction of the home, Plaintiffs would not have purchased the home.

96.     As a result of Defendants' acts and/or omissions in concealing the presence of Defective Chinese Drywall in Plaintiffs' home, Defendants unjustly enriched without justification or cause.

97.     As a result of Defendants' acts and/or omissions in concealing the presence of Defective Chinese Drywall in Plaintiffs; home, Plaintiffs were unjustly impoverished without justification or cause.

98.     As a result of the foregoing, Defendants are liable to Plaintiffs for the losses suffered by them.

Case 2:09-md-02047-EEF-MBN Document 19000-4 Filed 05/26/15 Page 66 of 158
Exhibit B    Page 19 of 34
Case 2:09-md-02047-EEF-CRW-WD Document 13023-1 Filed 10/09/19 Page 18 of 33

## COUNT XII
## THIRD PARTY BENEFICIARY

99.    The allegations of paragraphs 1 through 98 above are incorporated herein as if reproduced in full.

100.    Bass Homes entered into express contracts whereby its subcontractors performed work on the Residence.

101.    Plaintiffs were the intended beneficiary of the contracts between Bass Homes and its subcontractors.

102.    Bass Homes knew that Plaintiff would benefit from their contracts and could and would be harmed by the breach of those contracts by Bass Homes, its subcontractors, Ace Hardware and Ace Home Center.

103.    The subcontractors breached their contracts with Bass Homes by failing to carefully and properly complete the work on Plaintiffs' home in a good and workmanlike manner in compliance with applicable building codes and construction industry standards.  Therefore, Plaintiffs are entitled to damages as the third party beneficiary to Bass Homes' contracts based on damages suffered by Plaintiffs as a result of the breaches of those contracts.

104.    As a direct and proximate result of the actions of the Bass Homes. Ace Hardware and Ace Home Center, and Fictitious Defendants, which combined and concurred to form the basis of this suit, Plaintiffs have suffered damages as set forth in the above Statement of Facts.

## COUNT XIII
## DECEPTIVE TRADE PRACTICES

105.    The allegations of paragraphs 1 through 104 above are incorporated herein as if reproduced in full.

106.    Defendants' actions constitute violations of the Deceptive Trade Practices Act as defined in Title 75, Section 24 of the Mississippi Code (1972).

18

Case 2:09-md-02047-EEF-MBN Document 19000-4 Filed 05/26/15 Page 67 of 158
Case 13-13552-sr Doc 312 Filed 11/20/14 Entered 11/20/14 12:15:22 Desc
Exhibit B    Page 20 of 34
Case 2:09-md-02047-EEF-CRH Document 18023-1 Filed 10/09/14 Page 19 of 33

107.    Plaintiffs demand judgment be entered against Defendants in an amount equal to
the funds improperly received by Defendants as the result of its deceptive acts, plus equitable
relief.

<div align="center">

**COUNT XIV**
**RESPONDEAT SUPERIOR**

</div>

108.    The allegations of paragraphs 1 Through 107 above are incorporated herein as if
reproduced in full.

109.    At all relevant times, agents and/or employees of Defendants who were involved
with the construction and/or repairs of the House were in the course and scope of the duties of
their corporate and respective employments.

110.    Defendants are vicariously liable for the acts and omissions of agents and/or
employees who worked on the House.  Defendants knew, or in the exercise of reasonable caution
should have known, their respective and corporate duties to Plaintiffs were non-delegable.

111.    With the filing of Answers and Defenses, Defendants are given the opportunity to
address vicarious liability and provide a good faith basis for same under controlling Mississippi
law and to provide any documents or contracts which support their position(s).

112.    Plaintiffs reserve the right to amend their Complaint after reviewing the pleadings
and/or discovery of Defendants to include individual defendants, personnel, and/or corporate or
business entities.

<div align="center">

**COUNT XV**
**CONSTRUCTIVE FRAUD**

</div>

113.    The allegations of paragraphs 1 through 112 above are incorporated herein as if
reproduced in full.

Case 2:09-md-02047-EEF-MBN    Document 19000-4    Filed 05/26/15    Page 68 of 158
Case 13-13552-sr    Doc 31-2    Filed 11/20/14    Entered 11/20/14 12:15:22    Desc
Exhibit B    Page 21 of 34
Case 2:09-md-02047-EEF-JCW    Document 18023-1    Filed 09/19/14    Page 20 of 33

114.    Defendants respectively, corporately and through agents and/or employees breached individual and corporate non-delegable duties—fiduciary and otherwise—to Plaintiffs, thereby committing constructive fraud.

115.    As direct and proximate results of constructive fraud by Defendants, Plaintiffs sustained damages including but not limited to those stated herein.

## COUNT XVI
## PRIVATE NUISANCE

116.    The allegations of paragraphs 1 through 115 above are incorporated herein as if reproduced in full.

117.    Private nuisance is sometimes "used interchangeably" with a claim for interference with the use and quiet enjoyment of property. *Leaf River Forest Products, Inc. v. Ferguson*, 662 So.2d 648, 662 (Miss. 1995). "A private nuisance is defined as a non-trespassory invasion of another's interest in the use and enjoyment of his property." *Young v. Weaver*, 32 So.2d 202, 205 (Miss. 1947).

118.    "A private nuisance may be shown by conduct causing an invasion of another's interest in the private use and enjoyment of land that is either: (1) intentional and unreasonable . . . ." Williams v. King, 860 So.2d 847, 851 (Miss. App. 2003).

119.    Plaintiffs allege the inability to use their home is a continuing problem which rises to a private nuisance.

## COUNT XVII
## COMPENSATORY DAMAGES

120.    The allegations of paragraphs 1 through 119 above are incorporated herein as if reproduced in full.

Case 2:09-md-02047-EEF-MBN   Document 19000-4   Filed 05/26/15   Page 69 of 158
Case 13-13552-sf   Doc 31-2   Filed 11/20/14   Entered 11/20/14 12:15:22   Desc
Exhibit B   Page 22 of 34
Case 2:09-md-02047-EEF-JCW   Document 18023-1   Filed 10/09/14   Page 21 of 33

121.   But for the negligence and willful omissions of Defendants, Plaintiffs would have the home that they purchased.

122.   Defendants breached duties and directly and proximately caused unreasonable damages, including, but not limited to, those listed herein, entitling Plaintiffs to an award of compensatory damages.

## COUNT XVIII
## PUNITIVE DAMAGES

123.   The allegations of paragraphs 1 through 122 above are incorporated herein as if reproduced in full.

124.   Plaintiffs allege the limitations on damages as set forth in Mississippi Code (Annotated) of 1972 § 11-1-65—if they apply—are unconstitutional because they violate both the Mississippi Constitution and the Constitution of the United States, including, but not limited to, the Equal Protection and Due Process Clauses of these Constitutions.

125.   Plaintiffs allege the commissions and omissions by Defendants and their respective and/or corporate agents and/or employees were so willful, grossly negligent and wanton as to show a disregard for the rights of others and therefore give rise to an award of punitive damages.

## COUNT XVIX
## DAMAGES

126.   The allegations of paragraphs 1 through 125 above are incorporated herein as if reproduced in full.

127.   As direct and proximate results of the respective and/or collective omissions and grossly improper and negligent commissions and omissions by Defendants and/or their

Case 2:09-md-02047-EEF-MBN Document 19000-4 Filed 05/06/15 Page 70 of 158
Exhibit B   Page 23 of 34
Case 2:09-md-02047-EEF-JCW Document 18223-1 Filed 10/09/14 Page 22 of 33

respective and/or corporate agents and/or employees, Plaintiffs suffered actual and compensatory

damages, including, but not limited to, the following.

    a)      Psychological and emotional trauma, distress, anxiety, and mental suffering;
    b)      Loss of enjoyment of life;
    c)      Loss of use of her House;
    d)      Diminution of value of the House
    e)      Attorneys' fees;
    f)      Legal interest; and
    g)      Other damages to be proven at trial.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Plaintiffs pray the Court to enter judgment against Defendants and in favor of Plaintiffs

and to award the following relief:

    a)      Judgment against Defendants for any and all losses incurred as direct and

proximate results of the negligent conduct and other breaches of duty by Defendants, in an

amount to be determined at trial;

    b)      Compensatory damages, prejudgment and post-judgment interest, attorneys' fees

and costs reasonably and necessarily incurred during the course of litigation, in an amount to be

determined at trial;

    c)      Judgment against Defendants for damages in an amount to make her and her

House whole insofar as a pecuniary amount can accomplish that purpose, in an amount to be

determined at trial;

    d)      Punitive damages against Defendants for gross negligence and/or breach of

contract;

    e)      Such other relief as this Honorable Court deems just and proper.

Case 2:09-md-02047-EEF-MBN Document 19000-4 Filed 05/26/15 Page 71 of 158
Case 13-13552-sr Doc 31-2 Filed 11/20/14 Entered 11/20/14 12:16:22 Desc
Exhibit B Page 24 of 34
Case 2:09-md-02047-EEF-JCW Document 18023-1 Filed 10/09/14 Page 23 of 33

RESPECTFULLY SUBMITTED this, the 2<u>nd</u> day of October, 2013.

JASON S. and CASSIE D. HERRINGTON,
Plaintiffs

By and Through Their Attorneys,
LUCKEY & MULLINS, PLLC

BY: _____/s/ Stephen W. Mullins_____
STEPHEN W. MULLINS

ATTORNEYS FOR PLAINTIFFS:

STEPHEN W. MULLINS (MS Bar No. 9772)
LUCKEY & MULLINS, PLLC
2016 Bienville Blvd., Suite 102 (39564)
Post Office Box 990
Ocean Springs, MS 39566
Phone: 228.875.3175
Fax: 228.872.4719
smullins@luckeyandmullins.com

Of Counsel:

**Daniel K. Bryson** (*pro hac vice*)
**WHITFIELD BRYSON & MASON LLP**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035

Case 2:09-md-02047-EEF-MBN Document 19000-4 Filed 05/26/15 Page 72 of 158
Case 2:13-cv-13552-sr Doc 31-2 Filed 11/20/14 Entered 11/20/14 12:15:22 Desc
Exhibit B    Page 25 of 34
Case 2:09-md-02047-EEF-JCW Document 18023-3 Filed 10/02/14 Page 24 of 33

## CERTIFICATE OF SERVICE

I, STEPHEN W. MULLINS, do hereby certify that I have on this date electronically filed the above and foregoing Amended Complaint with this Court using the ECF filing system which has caused notification of such filing to be sent to registered counsel of record.  A copy of said Amended Complaint will also be served on the registered agent for Ace Home Center, Inc.

THIS, the 2nd day of October, 2013.

                           /s/ Stephen W. Mullins
                           STEPHEN W. MULLINS

Case 2:09-md-02047-EEF-MBN Document 19000-4 Filed 05/26/15 Page 73 of 158
Case 13-13552-jtf Doc 31-2 Filed 11/20/14 Entered 11/20/14 12:16:22 Desc
Exhibit B   Page 26 of 34
Case 2:09-md-02047-EEF-JCW Document 18028-1 Filed 10/02/14 Page 25 of 33

STATE OF __ALABAMA__

# BUILDING CONTRACT
## BASS HOMES, INC.

This agreement made this __15TH__ day of __JULY__ _____ 2008 between
JASON HERRINGTON AND CASSIE HERRINGTON _____, hereinafter designated "Buyer" whose
residence is __20688 CAMERON LANE__ _____ and Bass Homes,
Inc., having its principal place of business at P. O. Box 344, Stapleton, Alabama, 36578, hereinafter designated "Seller."

(1)

WITNESSETH:

The Seller agrees to build according to the plans and specifications on this sheet, or sheet attached hereto, which is by
reference made a part hereof, on the property of the Buyer, located at:
__HURLEY, MS.__

(2)

Description of construction to be performed: BUILD A 50' X 56' X 59' ONE AND ONE HALF STORY HOME, TO BE
BUILT ACCORDING TO BASS HOMES, INC. "HALLMARK GOLD" MODEL. FOR SPECIAL CHANGES AND DETAILS
SEE EXHIBITS A, B, C, D, E AND F ATTACHED HERETO. (WITHOUT GARAGE: 50' X 56')

Exhibits A, B, C, D, E and F dated __JULY 15TH 2008__ _____ and attached hereto, before
execution hereof, are made a part of this contract.

Buyer covenants and agrees to pay for said project (work) the sums and amounts herein set forth, pursuant to the following
terms: TWO HUNDRED TWENTY THOUSAND AND 00/100

| | |
|---|---|
| (1) TOTAL PRICE | $ 220,000.00 |
| (2) DOWN PAYMENT | $ 1,000.00 |
| (3) UNPAID BALANCE | $ 219,000.00 |

Details of Payment: BUYER(S) TO OBTAIN A CONVENTIONAL MORTGAGE LOAN. BUYER(S) TO PAY ALL
CLOSING COSTS, DISCOUNT POINTS AND PRE-PAIDS. BUYER(S) TO OBTAIN A 100% CONSTRUCTION LOAN
WITH PROGRESS PAYMENTS DURING CONSTRUCTION OF HOME. SAID PAYMENTS TO BE AS PER STANDARD
BANK POLICY. FINAL PAYMENT DUE UPON COMPLETION OF HOME.

(3)

This instrument, and the other instruments signed in connection with this transaction contain the price and all the terms and conditions
agreed upon by the Buyer and Seller, and no statement, representation or promise not set forth herein or in any of said instruments has been made to
induce either party to enter into this transaction. In the event an unsatisfactory credit report on the Buyer or any other information unsatisfactory to
the Seller is received prior to beginning construction of the house, Seller at his option may within 10 days thereafter cancel this agreement UPON
returning to Buyer any deposit. In the event Buyer fails to perform any activities or duties required of Buyer (e.g., failure to prepare lot for
construction, or, failure to obtain an unconditional letter of commitment for funds to purchase home or any contents of this contract, or, failure to
deliver proof of all funds if cash purchase applied) which failure prevents Seller from commencing construction for a period of sixty (60) days from
the date hereof, Seller may cancel this contract at its option, regardless of any assistance that seller may have provided in financing. Should seller not
exercise their option to cancel buyer at 60 day requirement then seller can negotiate with buyers to increase cost of this contract should seller choose
to do so, provided that construction has not commenced by seller at buyers property described herein (e.g., sterling foundation work on home). If
buyer chooses not to agree on additional cost then seller may cancel this contract and retain buyers initial deposit of money. In the event the Buyer
does not have good and marketable title to the property described in paragraph 1, Seller may at his option, elect to incur all expenses reasonably
necessary to obtain good and marketable title in the Buyer, and Buyer shall forthwith reimburse Seller for all expenses so incurred by Seller. In the
event the house built by Seller at the location on the ground designated by Buyer is not entirely on the property of Buyer, then the Buyer agrees to
pay Seller any and all costs, damages, losses and expenses, including reasonable attorneys' fees and court costs, suffered or incurred as a result thereof
by Seller. The above expenses incurred by the Seller shall constitute a lien against said property of the Buyer until paid. No completion has been
been represented as it is a part of this contract. All provisions of this contract are subject to approval by an officer of BASS HOMES, INC., Stapleton.

In those homes where pilings are specified, pilings shall be to a depth determined by Seller to be structurally safe and sound. In the event
the Buyer requires a depth in excess of that deemed by Seller to be sufficient and structurally safe and sound, this contract, at the option of Seller,
shall be declared null and void, or this contract may be re-negotiated to include the cost of drilling to a deeper depth. Commencement of construction
and commencement of drilling pilings shall not be deemed a waiver of this position.

The house to be constructed is not designed for unusual surface and/or sub-surface conditions in that no warranty is made that
the house is designed for conditions that are abnormal, that no testing of the soil will be conducted by the Seller.

Failure of this Seller or Subcontractor to pay those persons supplying material or services to complete this contract can result in the filing of
a lien on the above described property which is the subject of this contract.

(4)

Seller promises to furnish Buyer at closing a one-year limited warranty on the dwelling, a copy of which is attached
here as Exhibit " P "

(5)

ARBITRATION AGREEMENT

ANY DISPUTE, CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE BREACH THEREOF, OR ARISING OUT OF
ANY PRIOR DEALINGS BETWEEN SELLER AND BUYER OR ARISING OUT OF ANY FUTURE DEALINGS BETWEEN SELLER AND BUYER, SHALL BE SETTLED BY
ARBITRATION IN THE STATE OF ALABAMA IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION. THE
ARBITRATION RULES OF THE "AAA"] AND JUDGMENT UPON THE AWARD RENDERED BY THE ARBITRATOR(S) MAY BE ENTERED IN ANY COURT HAVING
JURISDICTION THEREOF.

THE PARTIES FURTHER AGREE THAT SHOULD ONE PARTY INVOKE ARBITRATION IN ACCORDANCE WITH THIS AGREEMENT, THE OTHER PARTY
SHALL BRING TO THE ARBITRATION PROCESS ANY CLAIM OR COUNTERCLAIM WHICH IT MAY HAVE AGAINST THE INVOKING PARTY, WHETHER DEEMED TO BE
COMPULSORY OR PERMISSIVE AT LAW, AND THE FAILURE TO BRING SUCH CLAIM OR COUNTERCLAIM SHALL CONSTITUTE A WAIVER OF AND A BAR TO THE
BRINGING OF SUCH CLAIM OR COUNTERCLAIM IN ANY SUBSEQUENT ARBITRATION OR LEGAL ACTION.

SELLER AND BUYER UNDERSTAND AND AGREE THAT EACH OF THEM IS WAIVING RIGHTS TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT
TO A JURY TRIAL; (b) THAT PRE-ARBITRATION DISCOVERY PROCEEDINGS IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS;
(c) THE ARBITRATOR'S AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING; AND (d) EITHER PARTY'S RIGHT TO APPEAL OR
SEEK MODIFICATION OF RULINGS BY THE ARBITRATOR IS STRICTLY LIMITED. THE VENUE FOR ARBITRATION SHALL BE IN BALDWIN COUNTY, ALABAMA.

IN WITNESS WHEREOF, the Buyer and Seller have hereunto set their hands and seals at
__STAPLETON__, __ALABAMA__, the day and year first above written.
          (City)              (State)
CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.

BASS HOMES, INC.
SELLER                                    _____(BUYER)

BY _____
     Title                                _____(BUYER)

EXHIBIT
A

Case 2:09-md-02047-EEF-MBN Document 19900-4 Filed 12/20/14 Page 74 of 158
Case 13-13552-01 Doc 312 Filed 11/20/14 Entered 11/20/14 12:15:22 Desc
Exhibit B   Page 27 of 34
Case 2:09-md-02047-EEF-JCW Document 18028-1 Filed 10/09/14 Page 26 of 33

EXHIBIT A
BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL 36578

JASON HERRINGTON AND CASSIE HERRINGTON                                    JULY 15TH 2008
BUYER(S) NAME(S)                                                                  DATE

NOTICE
ANY HOLDER OF THIS CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE BUYER COULD ASSERT AGAINST THE
SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE BUYER
SHALL NOT EXCEED AMOUNTS PAID BY THE BUYER HEREIN.

BUYERS RIGHT TO CANCEL
IF THIS AGREEMENT WAS SOLICITED AT YOUR RESIDENCE AND YOU DO NOT WANT THE GOODS OR SERVICES, YOU MAY CANCEL
THIS AGREEMENT BY MAILING A NOTICE TO THE SELLER. THE NOTICE MUST SAY THAT YOU DO NOT WANT THE GOODS OR SERVICES AND
MUST BE MAILED BEFORE MIDNIGHT OF THE THIRD BUSINESS DAY AFTER YOU SIGN THIS AGREEMENT. THE NOTICE MUST BE MAILED TO:
LEGAL DEPARTMENT, BASS HOMES, INC., HIGHWAY 31, P. O. DRAWER 340, STAPLETON, ALABAMA 36578.  YOU ARE ALSO ENTITLED TO
RECEIVE A REFUND OF ANY DOWN PAYMENT OR OTHER CONSIDERATION IF YOU CANCEL.
NOTICE TO THE BUYER (a) DO NOT SIGN THIS BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES, (b) YOU ARE ENTITLED
TO AN EXACT COPY OF THE PAPER YOU SIGN.
THE BUYER ACKNOWLEDGES THAT HE RECEIVED A COPY OF THIS AGREEMENT AND THAT BEFORE SIGNING THE SAME, THE
CONTRACT CONTAINED THE ENTIRE TERMS AND ALL BLANK SPACES HAD BEEN FILLED IN PRIOR TO THE SIGNING OF THE SAME.

These presents constitute a part of the Building Contract of even date attached hereto.  The following options and additions, to-wit:
HOUSE TO BE BUILT ACCORDING TO PLANS FURNISHED BY BASS HOMES, INC.
Note to Buyers:  Bass Homes, Inc., may at its election require water and sewer to be installed on mortgaged property before
construction begins or before completion of rough plumbing in home.  In the event that water and sewer with connections to home is
not completed at Bass Homes, Inc., request, Sellers and Buyers agree that Bass Homes, Inc., will have full rights to install water supply
and sewer with connections and Buyers then agree to pay in full normal and customary charges of goods.

FOUNDATION:        Elevation of all fill shall not be more than 8" above the grade at the longest point or the longest dimension of
                   house. Also, Buyer will be responsible for any additional material and labor required for foundation.
                   NOTE: Builder shall negotiate additional cost if any with customer before foundation is installed.  Any
                   additional depth of foundation (piers, pilings, or slab) or width of footings required by any building
                   governmental agencies, buyers, or builder's discretion shall all be on a cost plus basis unless pre-charged
                   and written in contract total price.
         1.        Foundation will be raised type with continuous 8" block wall around perimeter of home only. Note: All porches will be on
                   piers.  If exterior is Brick Veneer, foundation will be piers only. Foundation height of home to be at sellers discretion and
                   building codes if enforced. Buyers are responsible to determine if they are in a flood zone and shall disclose to seller in
                   writing before construction begins if a required foundation height is necessary.
         2.        Treated foundation seals will be installed; all porch seals and porch floor will be treated.
         3.        3/4" tongue and groove plywood flooring.

EXTERIOR OF HOUSE:
         1.        Exterior walls will have OSB and housewrap sheeting under siding.
         2.        Exterior siding hardiplank or comparable unless otherwise stated in contract.
         3.        All porch rails, fascias, and window trim will be pressure treated.
         4.        Roof will have all framing 2' o.c.
         5.        Roof will have standard fiberglass shingles, unless otherwise stated in contract.
         6.        Exterior doors will be metal insulated.
         7.        Exterior windows will be insulated white colonial style. Tilt window sash's are optional
         8.        Exterior of home will be painted latex.
         9.        All homes with vinyl siding or hardy plank siding will have 7/16" OSB wafer board in lieu of standard styrofoam.

INTERIOR:
         1.        Interior of home will have 3 ½" insulation in exterior walls and 6" fiberglass insulation in attic exposed ceiling areas only.
         2.        Interior wall will have ½" sheetrock throughout entire house.
         3.        Cabinet faces and doors will be 3/4" Birch plywood or comparable material with laminated countertops.  All white
                   lacquer cabinets will be 5/8" MDF or HDF, including raised panel doors.  All cabinet backs, ends, shelves or other
                   components in cabinets shall be equal to Bass Homes, Inc., model home.
         4.        Standard interior doors and trim.
         5.        Vinyl flooring in kitchen, utility, and all baths, no wax.
         6.        Carpet in all other areas of home from Bass Homes, Inc., samples.
         7.        Fluorescent light in kitchen area.

STANDARD OPTIONS OF HOUSE:
         1.        PLUMBING:     Fiberglass tub and shower units/stainless steel kitchen sink/standard vanity porcelain sinks, standard white fixtures.
         2.        ELECTRICAL:   200 amp service/standard copper and aluminum wiring/standard light fixtures.
         3.        HEAT AND AIR:  Standard electric central forced heat and air. 42" Metal insert  fireplace (without blowers) in homes that are shown on
                                  Bass Homes, Inc. sales brochure only.
         4.        PAINT:        Exterior all base stain/interior latex paint on walls.  Standard color all interior walls (soft white) Devoe Brand
                                 or something equivalent, all paint and stain from Bass Homes, Inc., samples.
                        B.       All interior walls in home will be one color (soft white).
                        C.       All trim work and cabinets will be stained or white.
                        D.       All exteriors will be painted.
                        E.       All exteriors will have one trim color for doors and shutters only.  Any other trim colors will be additional
                                 costs.  (Hand rails, porch rails, corner boards, and eves will be stained or painted (same color as exterior of
                                 home).
         5.        All materials in excess of job will remain the property of Bass Homes, Inc.
         6.        Buyers are responsible for removal of construction debris.
         7.        All utilities are stubbed out only to exterior (Electrical Service Wire, Gas, and Plumbing).  See Exhibit "B" for details.


_____                         _____
(SELLER, BUILDER)                                        (BUYER, OWNER)

                                                         _____
                                                         (BUYER, OWNER)

Case 2:09-md-02047-EEF-MBN Document 19000-4 Filed 05/06/15 Page 75 of 158
Case 13-13552-SJ Doc 312 Filed 11/20/14 Entered 11/20/14 12:16:22 Desc
Exhibit B Page 28 of 34
Case 09:md-02047 EEF-JCW Document 18023-1 Filed 10/02/14 Page 27 of 33

**EXHIBIT B - PART 1**
**BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL 36578**
DATE: JULY 15TH 2008

NAME OF BUYER(S): JASON HERRINGTON AND CASSIE HERRINGTON

TYPE OF HOME: __CEMPLANK__ MODEL: __HALLMARK GOLD__

**OWNER'S CHOICE OF INTERIOR & EXTERIOR COLORS:**

**EXTERIOR:** HARDIPLANK OR COMPARABLE _____ CEDAR _____ BRICK _____
SIDING COLOR _____

STANDARD TRIM COLOR (DOOR & SHUTTERS ONLY) _____
DELUXE TRIM COLOR (DOOR, SHUTTERS, FASCIA & WINDOW TRIM) THIS ITEM IS $950.00 ADDITIONAL COST
SHINGLES _____ WINDOWS: BRONZE _____ WHITE _____
BRICK COLOR _____
MORTAR COLOR: GREY _____ DARK MORTAR _____ OTHER _____

**INTERIOR:**
KITCHEN/DINING
    COUNTER TOP _____
    STANDARD RANGE HOOD: ALMOND _____ WHITE _____ STAINLESS _____
    CONNECTION FOR MICROWAVE: ☐ YES or ☐ NO
    VINYL _____

UTILITY:
    VINYL _____

MASTER BATHROOM:
    VANITY TOP _____
    VINYL _____

HALL BATHROOM:
    VANITY TOP _____
    VINYL _____

CARPET:
    $250.00 ADDED COST FOR HARDWOOD FLOORING FRONT ENTRANCE:
    LIVING ROOM _____
    BEDROOM #1 _____
    BEDROOM #2 _____
    BEDROOM #3 _____
    BEDROOM #4 _____
(NOTE: Vinyl throughout home, other than kitchen, dining and baths cost an additional $2.00 per sq. ft.)

FIREPLACE STONE:
(NOTE: The fireplace in all homes with cathedral ceilings will have stone to mantle height.)
FIREPLACE MANTLE BACKING BRACE (2" X 4"): YES _____ OR NO _____
CABINETS STAINS OR COLOR _____
    ALL CABINET DOOR AND ANY CABINET UPGRADES MUST BE IN CONTRACT ON "EXHIBIT C" AND ALSO PROOF OF PURCHASE ON
    BASS HOMES COST BREAK DOWN SHEET.
INTERIOR TRIM STAIN OR COLOR : _____
CABINET HARDWARE _____
        *ONE CHOICE OF CARPET COLOR
        *TWO COLORS FOR VINYL
        *TWO COLORS FOR VANITY AND COUNTER TOP

VINYL FLOORING WILL BE INSTALLED IN BATHROOMS, KITCHEN, UTILITY, AND BREAKFAST AREAS ONLY
ANY VINYL INSTALLED IN ANY OTHER AREAS, BUYER(S) AGREE TO PAY AN ADDITIONAL, $2.00 PER SQUARE
FOOT FOR UNDERLAYMENT.

_____
(BUYER, OWNER)

_____
(BUYER, OWNER)

Case 2:09-md-02047-EEF-MBN Document 19000-4 Filed 05/26/15 Page 76 of 158
Exhibit B    Page 29 of 34
Case 2:09-md-02047-EEF-JCW Document 1023-1 Filed 09/02/14 Page 26 of 33

EXHIBIT B - PART 2

BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL. 36578

BUYER(S)  JASON HERRINGTON AND CASSIE HERRINGTON

DATE:    JULY 15TH 2008

1.    Ceiling fan outlets ONLY WHERE:  LIVING AND ALL BEDROOMS

2.    Ceiling fan installation ONLY WHERE:  NONE

3.    Dishwasher cutout?  YES  X    OR NO

4.    Dishwasher hookup?  YES    OR NO  X

5.    Ice-maker line only installed:  YES  X    OR NO

6.    Cabinet space for standard 30" free standing electric stove YES    OR NO

      Drop-in stove:  YES    OR NO

7.    Gas utilities:  YES    OR NO

8.    Termite Treatment; one twelve month bond: YES  X    OR  NO
      (No termite treatment shall be provided for homes on pilings.)

9.    Electric hookup:  Standard overhead    OR underground

10.   Clean up debris and haul off?  NO.  If yes, additional costs must be added to total price and Exhibit C of Contract.

11.   Payment towards Builder's Risk Insurance during construction period.
      YES    OR NO  X
      Buyer(s) agree(s) to furnish Builder's Risk policy payable to Seller and if necessary, also to Lender or Buyer(s) prior to and during construction of home until construction of home is complete.

12.   All utilities are stubbed out only to exterior (electric service wire, gas, plumbing, and sewer).

13.   Gutters, parquet flooring and mini-blinds not included in standard price of home.

(I)    Buyer(s) agree that all special changes to home plans have been made and incorporated into this contract. Buyer(s) further agrees that all color selections and selections of all goods have been made by Buyer(s), and upon execution of this Contract, both Parties agree that no changes will be made.

(II)   Buyer(s) agree(s) that upon substantial completion of home, Buyer(s) and a Bass Homes, Inc., representative will do a walk through inspection of home and a punch list will be written up which is mutually agreeable by both parties. Buyer(s) hereby agree(s) that the initial walk through and resulting punch list will be the only walk through and punch list.  Seller hereby agrees to correct or complete the items on the punch list and once finished, Buyer(s) agree(s) to immediately pay Seller the entire balance owed to the Seller under the contract or otherwise.  If Seller should agree to do any extra work after the initial punch list, this work shall not commence until Seller has been paid in full.  All other matters will be strictly related to the standard one year Builder's Warranty styled as a "Completion Certificate and Owner's Acceptance".

(III)  Buyer(s) agree(s) that he and/or she shall not be allowed to take possession of the home until such time as Seller has been paid  in full under the contract and has also been paid any additional cost, if any, which has been added to the original contract price.  Buyer(s) acknowledge(s) that, until such time as Seller has been paid in full the contract price and signed a "Completion Certificate and Owner's Acceptance," Buyer(s) will not be allowed to occupy or store any of his and/or her possession in said home. In the event that Buyer(s) fail to in the agreed terms above, Buyer(s) shall in this agreement, pay to the Seller a sum of $1,000.00 per month rent for possessing the newly constructed home for storing any of Buyer(s) goods or occupying the home in any manner. The monthly $1,000.00 rate will be paid to Seller until Seller is paid in full.

(SELLER, BUILDER)                    (BUYER, OWNER)

                                     (BUYER, OWNER)

Case 2:09-md-02047-EEF-MBN   Document 19000-4   Filed 05/26/15   Page 77 of 158
Case 13-13552-df   Doc 31-2   Filed 11/20/14   Entered 11/20/14 12:15:22   Desc
Exhibit B   Page 30 of 34
Case 2:09-md-02047-EEF-JCW   Document 1028-11   Filed 10/02/13   Page 2 of 33

EXHIBIT C
BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL. 36578

NAMES OF BUYER(S):  JASON HERRINGTON AND CASSIE HERRINGTON

DATE:  JULY 15TH 2008

TYPE OF HOME:  CEMPLANK

NAME OF HOME BEING BUILT:  HALLMARK GOLD

PLEASE LIST ANY CHANGES OTHER THAN "STANDARD" THAT IS STATED IN THIS CONTRACT REGARDLESS OF HOW SMALL OR LARGE THE CHANGE MAY BE. ANYTHING WRITTEN IN EXHIBIT "C" WILL OVERRIDE THE "STANDARD" CONTRACT AND BLUEPRINTS.

1.   INSTALL BRICK VENEER FROM BASS HOMES SAMPLES AROUND FOUNDATION AREA AND PORCH AREAS OF HOME (SAME AS REDWOOD MODEL HOME). NOTE: FRONT STEPS ONLY WILL BE BRICK. ALL OTHER STEPS TO BE TREATED PINE.

2.   INSTALL 9' CEILINGS THROUGHOUT DOWNSTAIRS OF HOME. UPSTAIRS TO BE 8' ( IF APPLICABLE). "ANGELWOOD GOLD MODEL" AND "DALTON GOLD MODELS" WILL HAVE 10' CEILINGS IN LIVING AND FOYER AREAS. ALL CLASSIC MODELS, OR II AND III MODELS OF THE DALTON WILL NOT HAVE ANY 10' CEILINGS.

3.   INSTALL DIMENSIONAL SHINGLES ON ROOF OF HOME IN LIEU OF STANDARD SHINGLES FROM BASS HOME SAMPLES.

4.   INSTALL ARCHED RAISED PANEL CABINETS FROM BASS HOMES SAMPLES THROUGHOUT HOME.

5.   INSTALL CERAMIC TILE IN KITCHEN (BREAKFAST IF APPLICABLE)  AND MASTER BATH ONLY. ALL TO BE SELECTED FROM BASS HOMES SAMPLES.

6.   ADD 10' TO LENGTH TO FRONT PORCH. BUILD PORCH TO LOOK LIKE THE "DALTON MODEL" WITH WRAP AROUND STYLE ON EACH END OF PORCH ROOF. NEW PORCH DIMENSIONS WILL BE 8' X 40'.

7.   ADD  STAIRS TO REAR OF GARAGE AT EXTERIOR GABLE AS PER PRELIMINARY PLANS. NOTE: INSTALL A 9-LITE DOOR AT TOP OF STAIRS TO GARAGE ATTIC AND INSTALL 3/4" PLYWOOD FLOORING IN GARAGE ATTIC AN AREA OF 12' X 24' WITH KNEE WALLS.

8.   INSTALL SMOOTH CEILINGS THROUGHOUT HOME WITH LIGHT ORANGE PEEL TEXTURE IN LIEU OF BLOWN CEILINGS.

10.   INSTALL LARGE ONE PIECE CROWN MOLDING IN KITCHEN/BREAKFAST, LIVING WITH FOYER.

11.   INSTALL FRONT WINGED BRICK STEPS SAME AS ANGELWOOD MODEL. SELLER MUST INSTALL WOOD HAND RAILS ON TOP OF WINGS TO MEET BUILDING CODES. BUYERS MAY CHOOSE TO PUT CUSTOM IRON RAILINGS AFTER COMPLETION OF HOME.

JULY 15TH 2008
DATE

_____
(SELLER, BUILDER)

_____
(BUYER, OWNER)

_____
(BUYER, OWNER)

Case 2:09-md-52047-EEF-MBN   Document 19000-4   Filed 05/26/15   Page 78 of 158
Case 13-13552-47   Doc 312   Filed 11/20/14   Entered 11/20/14 12:15:22   Desc
Exhibit B   Page 31 of 34
Case 2:09-md-02047-EEF-JCW   Document 18028-1   Filed 10/02/14   Page 60 of 33

EXHIBIT D
BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL. 36578

NAME OF BUYER(S): **JASON HERRINGTON AND CASSIE HERRINGTON**
DATE: **JULY 15TH 2008**
TYPE OF HOME:   **CEMPLANK**
MODEL:   **HALLMARK GOLD**

BUYER(S) AGREES TO PROVIDE THE FOLLOWING ITEMS PRIOR TO COMMENCEMENT OF CONSTRUCTION UNLESS OTHERWISE STATED IN THIS CONTRACT:

1. Electricity necessary to construct home within 25 feet of proposed structure. All expenses to be from Buyer(s) including power bills.
2. Water supply necessary to construct home within 25 feet of proposed structure. All expenses to be from Buyer(s) including water bills.
3. Temporary driveway (and culvert if necessary) within 25 feet of proposed structure. Driveway material must be sufficient to support heavy equipment delivering building goods.
4. Clearing of lot for proposed structure. Clearing includes trees, stumps or any type of debris above or below ground to Seller's satisfaction.
5. Elevation certification in flood areas when required in connection with builder obtaining building permit. Seller will provide building permit only.
6. Water supply within 500 feet for installing pilings for homes being built on pilings.
7. Cost of plan reviews when required by county or city building departments.
8. Engineering cost of certifying home plans when required by building codes or governmental agencies.

BUYER(S) SHALL PROVIDE THE FOLLOWING ITEMS DURING OR AT COMPLETION OF CONSTRUCTION (UNLESS OTHERWISE STATED IN THIS CONTRACT). NOTE: SOME ITEMS MAY BE AT BUYER(S) DISCRETION UNLESS REQUIRED BY MORTGAGE HOLDER.

1. Septic system and line to stub-out at home.
2. Water meter, well, and line to stub-out at home.
3. Buyers to connect water and sewer line to stub-out at foundation of home.
4. Television antenna outlets, cable outlets, telephone outlets or other items of similar nature.
5. Mirrors in baths, soap dishes, towel bars, etc.
6. Safety bars or grab bars in tubs and showers.
7. Shower doors.
8. Mantel over fireplace.

BUYER(S) ACKNOWLEDGES AND AGREES WITH THE FOLLOWING POLICIES AND STATEMENTS:

1. Seller will not be responsible for any property damage to Buyer(s) lot in connection with Seller constructing Buyer(s)' home.
2. Seller will not do any landscaping or leveling of lot during or after completion of this contract unless otherwise stated in this contract.
3. When homes are sold with brick veneer on exterior of home, all walls under porch and gables shall having siding (specified type in contract) in those areas unless otherwise written in contract. All exterior steps and rails shall be wood.
4. When final building plans are completed, Buyer(s) agrees that Seller will not build home to exact dimensions and cosmetic details that may appear on plans due to a large volume of plan changes that Seller produces. Seller and Buyer(s) agrees to build home according to sales brochure plan and preliminary plans.
5. Seller will not warrant the performance or appearance of any clear sealers or semi transparent stains installed by Seller on exterior of homes such as Clear Wood Finish or similar brand.
6. Buyer(s) shall not take any possession of home or move any goods in until seller receives final payment.
7. Seller is not required to provide buyer(s) any building drawings or blueprints other than a preliminary style set of plans with room sizes and exterior elevations of all sides of home.
8. Buyers strictly agree that they are not allowed to perform any construction improvements or install any goods or improvements in home until final payment of home is payed to seller at completion. SHOULD BUYERS VIOLATE OR BREAK THE TERMS OF THIS AGREEMENT THEREBY STATED IN ITEM #8 OF THIS EXHIBIT D OF CONTRACT THEN BUYER(S) WILL PAY SELLER AN ADDITIONAL $3,000 TO THE TOTAL PRICE OF THIS CONTRACT AT THE TIME OF FINAL PAYMENT.
9. Buyer(s) agree upon substantial completion of construction of home that one (1) time walk-through inspection will be done by appointment with a Bass Homes, Inc. representative and a written list of items will be produced. Bass Homes, Inc. will complete all listed items from the one (1) time walk-through inspection. Buyer(s) agree to close immediately upon completion of list.
   Buyer(s) and Seller agree that no additional walk-through or additional items will be allowed after the initial one (1) time walk-through and item list.
10. "completion certificate of owners acceptance" warranty limitations are a part of this contract.
Buyers agree to pay the full amount for materials and labor of any special additions/code enforcement's that are required by building departments, mortgage lenders, or any type of governmental agency that are not standard in Bass Homes, Inc., model home or said plans and specs. This includes, but is not limited to, the following items: special insulation, underpinning of home's on pilings, structural engineering, certification of plans, special depth of concrete footings (i.e. prairie soil, white sand in coastal areas, unstable soil), or any items that must be added to meet the requirements of any of the above governmental agencies, companies, or departments.

(SELLER, BUILDER)

(BUYER, OWNER)

(BUYER, OWNER)

Case 2:09-md-02047-EEF-MBN Document 19000-4 Filed 05/06/15 Page 79 of 158
Exhibit B   Page 32 of 34
Case 2:09-md-02047-EEF-DRW Document 18028-11 Filed 10/02/14 Page 73 of 33

EXHIBIT "E"

BASS HOMES INC. 34661 STATE HWY 59 SOUTH STAPLETON, AL 36578

BUYER(S) JASON HERRINGTON AND CASSIE HERRINGTON
BUYER(S) AGREE TO THE FOLLOWING TERMS, DISCLOSURE NOTICES AND COST ADDENDUMS TO BE ADDED TO THE TOTAL PRICE OF THIS CONTRACT (COST WHEN APPLICABLE) TO THE UNDERSIGNED BUYER(S).

1. ANY ENGINEERING COST OF BUYER(S) PLANS IF REQUIRED BY MORTGAGE LENDER, BUILDING DEPARTMENTS OR ANY TYPE OF AGENCY THAT CAN ENFORCE SAID REQUIREMENT THEREOF.

2. IF BUYER(S) COMMENCES WITH ANY IMPROVEMENTS, PERFORM ANY TYPE OF WORK ON HOME DESCRIBED IN THIS CONTRACT OR HIRE ANY WORK TO BE PERFORMED BY OTHERS IN THE ACTUAL HOME DESCRIBED IN THIS CONTRACT INCLUDING ADDING ON TO THE STRUCTURE OF THIS HOME, PRIOR TO PAYING THE FINAL PAYMENT OF THIS CONTRACT TO BASS HOMES INC. TOGETHER WITH SIGNING THE "COMPLETION OF OWNERS ACCEPTANCE", THEN IT IS AGREED THAT BUYER(S) SHALL PAY BASS HOMES INC. THE SUM OF $5,000.00 ADDITIONAL COST ABOVE THE TOTAL PRICE IN THIS CONTRACT AT TIME OF FINAL PAYMENT.

3. RECESSED LIGHTS ARE NOT INCLUDED IN THE REDWOOD MODEL OR ANY OTHER HOME PLANS UNLESS ADDED TO COST BREAKDOWN AND LISTED ON EXHIBIT "C" OF THIS CONTRACT.

4. BUYERS CANNOT PROVIDE ANY LIGHT FIXTURES, PLUMBING FIXTURES OR ANY OTHER TYPE OF GOODS IN CONNECTION WITH THIS CONTRACT.
ALL OF THE ABOVE SHALL BE STANDARD FIXTURES FROM BASS HOME INC.

5. GRINDER PUMPS WHEN APPLICABLE FOR SEWER WILL NOT BE CONNECTED BY THE SELLER. BUYERS TO PAY FOR THE ELECTRICAL AND PLUMBING CONNECTIONS.

6. ELECTRICAL WIRING FOR PUMPS AND WELLS WHEN APPLICABLE ARE NOT INCLUDED IN TOTAL PRICE.

7. CONCRETE SLABS UNDER BEACH HOMES ON PILINGS WILL NOT BE WARRANTED AGAINST SLIGHT PUDDLES OF WATER AFTER RAINS DUE TO THE NATURE OF A SLAB FINISH. SLABS UNDER PILING HOMES WILL NOT INCLUDE PORCH OR DECK AREAS.

8. BUYERS(S) LOT SLOPE WILL BE ASSESSED FOR SLOPE THAT MAY EXCEED THE REQUIREMENTS OF THIS CONTRACT ON EXHIBIT "A" AT TIME OF COMMENCEMENT OF CONSTRUCTION OF FOUNDATION.

9. FIREPLACE MANTLES WILL NOT BE INCLUDED ON ANY HOMES AS A STANDARD ITEM IN ANY HOME. SELLER WILL INSTALL A 2' X 4' SUPPORT AT MANTLE HEIGHT FOR BUYER(S) TO INSTALL A MANTLE AFTER COMPLETION OF HOME.

10. BUYER(S) ARE RESPONSIBLE FOR CAULKING DOOR THRESH-HOLDS AS NEEDED BUT NOT LESS THAN EACH AND EVERY ANNIVERSARY DATE OF ORIGINAL CONSTRUCTION COMPLETION OF HOME. BUYERS ARE RESPONSIBLE FOR THE ANNUAL INSPECTION OF FIREPLACE FLASHING AND CAULKING. BUYERS ARE RESPONSIBLE FOR CHECKING AND CAULKING EXTERIOR OF WINDOWS ANNUALLY.

11. BASS HOMES INC. WILL NOT WARRANT THE PERFORMANCE OF HEATING AND COOLING IN ONE AND ONE HALF STORY HOMES THAT DO NOT HAVE AN UPSTAIRS SEPARATE UNIT. THE UPSTAIRS WILL HAVE A TENDENCY TO MAINTAIN SEVERAL DEGREES DIFFERENCE IN TEMPERATURE WHICH IS STANDARD TO THE CONSTRUCTION INDUSTRY.

12. BUYER(S) AND SELLER AGREE THAT THERE ARE NO OTHER PROMISES OTHER THAN THAT WHICH IS WRITTEN IN THIS CONTRACT. THIS MEANS INCLUDING ANY VERBAL PROMISES THAT BUYER(S) MAY CLAIM THAT A SALES AGENT OR BASS HOMES INC, EMPLOYEE OR REPRESENTATIVE COULD HAVE IMPLIED OR PROMISED HE OR SHE.

13. BUYERS HEREBY AGREE THAT BASS HOMES INC. WILL NOT ACCEPT ANY LIABILITY OF BUYERS COST OF UTILITY BILLS DURING CONSTRUCTION OF HOME OR AFTER BUYER(S) TAKES OCCUPANCY OF THIS HOME DESCRIBED HEREIN. THIS INCLUDES ANY COMPLAINT BUYER(S) MAY ASSERT OF INFLATED POWER BILL'S OR ANY TYPE OF OTHER UTILITY..

BUYER(S) _____

BUYER(S) _____

JULY 15TH 2008
DATE

Case 2:09-md-02047-EEF-MBN Document 19000-4 Filed 05/26/15 Page 80 of 158
Case 13-13552-af Doc 31-2 Filed 11/20/14 Entered 11/20/14 12:16:22 Desc
Exhibit B   Page 33 of 34
Case 2:09-md-02047-EEF-JCW Document 10228-1 Filed 10/02/11 Page 80 of 33

Exhibit " F "

RE:JASON HERRINGTON AND CASSIE HERRINGTON
COMPLETION CERTIFICATE AND OWNER'S ACCEPTANCE ;
LIMITED ONE-YEAR WRITTEN WARRANTY

The undersigned, owner (whether one or more) of the real property described in their contract with BASS HOMES, INC. ("Contractor") dated : JULY 15TH 2008  hereby acknowledge and certify as follows:

1. All materials and labor provided for in said contract have been furnished and installed by the Contractor or his subcontractors on our said real property in a good and workmanlike manner; that we have made a full and complete inspection of the same; that all construction and other work called for in said contract has been satisfactorily completed; that the home is fit, suitable and habitable; and the improvements are hereby accepted by us as built.

2. Contractor did not manufacture any materials used in the construction of this home; that the Contractor does not warrant any of the said materials against any defects in QUALITY, FITNESS or MERCHANTABILITY; that the Contractor will make good only on the workmanship of the actual construction of home; and that any and all claims related to the materials used in construction shall be pursued by customers ONLY against the manufacturers of any materials provided to the Contractor.

3. Contractor hereby gives  a limited warranty on the home located at HURLEY, MS.  for a period of one ( 1 ) year following closing or occupancy by the Buyer(s), whichever event occurs first.

4. Contractor warrants the home to be free from latent defects for a period of one ( 1 ) year following closing or occupancy, whichever event occurs first.

5. THIS WARRANTY IS GIVEN IN LIEU OF ANY AND ALL OTHER WARRANTIES, EITHER EXPRESSED OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, HABITABILITY AND /OR WORKMANSHIP.

6. Contractor shall not be liable under the parties' contract or this warranty unless written notice of the latent defect(s) shall have been given by Buyer(s) to Contractor within the (1) year warranty. Steps taken by the Contractor to correct any defect(s) shall not not to extend the warranty period described hereunder.

7. Buyers confirm that they have performed a walk-thru inspection prior to signing the Completion Certificate and Owners Acceptance; Limited One-Year Written Warranty. Further Buyer(s) agree that their signatures below signify that they have accepted the  construction of the home and waive any further right to complain of cosmetic deficiencies and the quality of workmanship or any other matter that does not constitute a latent defect.

8. Any and all remedies of the Buyer(s) and any liability of the Contractor shall be governed strictly by the terms of this one-year limited warranty. Neither the Contractor nor its assigns shall be liable for any incidental or consequential damages, under no circumstances may the Buyer(s) recover damages in excess of the amount of  the subject building construction contract.

9. Any reference to the singular herein shall also encompass the plural where appropriate; and any reference to the plural shall also encompass the singular where appropriate.

BUYER(S) INITIALS OF RECEIPT OF THIS DOCUMENT BEFORE CONSTRUCTION OF HOME:
BUYER: _____ BUYER: _____

DATE: _____      BUYER: XXXXXXXXXXXXXXXX

DATE: _____      BUYER: XXXXXXXXXXXXXXXX

Witness: _____      DATE: _____

Case 2:09-cv-00947-EEF-MBN Document 19900-4 Filed 05/26/12 Page 81 of 158
Exhibit B   Page 34 of 34
Case 09:10-cv-02043-EEF-JCW Document 228-11 Filed 10/19/11 Page 98 of 33

MAY·13· 1998 11:43AM                                                          No.3147  P. 9

First Federal Savings and Loan Association
Pascagoula-Moss Point · Pascagoula, Mississippi
**Owner's and Contractor's Agreement**

STATE OF MISSISSIPPI
                                        } ss:
COUNTY OF JACKSON

PERSONALLY appeared before me, the undersigned authority in and for said county and state, the undersigned owner, purchaser and/or contractor, who after being first duly sworn states on oath:

They are/he is the owner and/or general of JASON SCOTT HERRINGTON
In connection with improvements on the real property situated in the County of JACKSON                contractor
State of Mississippi
NNN OLD AMERICAS ROAD                                    known as

more particularly described in the Deed of Trust, Mortgage or other Security Instrument in favor of First Federal Savings & Loan Association, dated   November 13, 2008   , securing the sum of $ 325,000.00   , and filed for record or to be filed in the office of the recorder of the county in which the above land is located, which Deed of Trust, Mortgage or other Security Instrument is a valid first lien on said premises; and,

The undersigned owner states that of his personal knowledge, no other contracts have been let or guarantees of payment made by the undersigned owner to anyone other than: (LIST EACH CONTRACT LET OR GUARANTEE MADE AND OBTAIN AFFIDAVIT AND AGREEMENT FOR EACH)

The owner has no interest or ownership in the contracting firm or firms and the contractor has no interest in the real property described above, except:

The undersigned owner has inspected the premises before making this affidavit and found all work satisfactory to owner; and that the undersigned owner is in possession of the subject premises, unless otherwise stated: (LIST DISCREPANCIES AND NATURE OF POSSESSION OTHER THAN BY OWNER)

The contractor has been paid in full for work or services performed and materials furnished on the above project and does hereby waive, release and surrender any and all lien or claim or right of lien to the date for which payment is made, for labor, services and/or materials furnished by the undersigned upon the premises described above, except (IF NONE, STATE "NONE") NONE

The Owner and/or contractor has/have paid in full any and all amounts due architects, engineers, surveyors, attorneys, subcontractors, materialmen and labor for work or services performed and materials furnished to the undersigned in connection with the construction of the improvements on the above property, except; (IF NONE, STATE "NONE") NONE

The Owner has received no notice of any unpaid bills or claims for labor or services performed or materials furnished on the above project, except (IF NONE, STATE "NONE") NONE

The Owner and/or contractor hereby request(s) First Federal Savings & Loan Association, to consummate a loan secured by said real estate without exception therein as to any possible unfiled mechanics' or materialmen's lien, and in consideration thereof, and as an inducement therefor, the undersigned does hereby agree to indemnify and hold harmless the said Association of and from any and all loss, cost, damages and expenses of every kind including attorney's fees, which said association shall suffer or may suffer or incur or on account of any loan secured by said real estate, part thereof or interest therein arising, directly or indirectly, out of or on account of any such mechanics' or materialmen's liens, claim or claims as a result of the undersigned's unpaid bills or in connection with its enforcement of its rights under this agreement.

In the event this agreement is executed for a Construction Draw of funds, the undersigned acknowledges receipt of $ _____ for the _____ draw on Loan No. _____

The owner and/or contractor state that no chattel mortgages, conditional sales contracts, security agreements, financing statements, retention of title agreements, personal property leases or the like have been given or are now outstanding as to any materials, fixtures, appliances, furnishings or equipment placed upon, installed in or upon the aforesaid premises on the improvements thereon, and that all plumbing, heating, lighting refrigerating and other equipment is fully paid for; and

The undersigned purchaser(s) (if applicable) state(s) that he/they has/have no notice of any unpaid bills or claims for labor or services performed or materials furnished on the above-described land, except (IF NONE, STATE "NONE") NONE

Contractor BASS HOMES, INC.   _William L Bass_

JASON SCOTT HERRINGTON ,BY HIS ATTORNEY-IN-FACT PER
POWER OF ATTORNEY RECORDED IN DEED BK 1558, PAGES 334-335

PENNY HERRINGTON, AS ATTORNEY-IN-FACT            Owner (Or Seller)

SWORN TO AND SUBSCRIBED before me, by the owner (or seller), contractor or purchaser, whose signature appears above, this the  13th   day of November, 2008

My Commission expires:
 9/19/2012
            _Patricia Newbury_
            Notary Public

SWORN TO AND SUBSCRIBED before me, by the owners, whose signatures appear above, this the  13th day of November, 2008.

My commission expires:

            Notary Public

@002/003

# EXHIBIT "C"

ELECTRONICALLY FILED
10/7/2013 4:14 PM
30-CV-2013-900145.00
CIRCUIT COURT OF
ESCAMBIA COUNTY, ALABAMA
JOHN FOUNTAIN, CLERK

## IN THE CIRCUIT COURT OF ESCAMBIA COUNTY, ALABAMA

| | |
|---|---|
| GREG E. WIGGINS and<br>SHERRY WIGGINS<br><br>    Plaintiffs<br><br>v.<br><br>BASS HOMES, INC.;<br>ACE HARDWARE CORPORATION;<br>ACE HOME CENTER, INC., et al.<br><br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION NO. 30-CV-2013-900145.00

---

## AMENDED COMPLAINT
## (JURY TRIAL REQUESTED)

---

COME NOW the Plaintiffs, Greg E. Wiggins and Sherry Wiggins, (hereinafter "Plaintiffs") by and through undersigned counsel, and filed this, their Amended Complaint against the Defendants, Bass Homes, Inc., Ace Hardware Corporation and Ace Home Center, Inc., and Fictitious Defendants 2 through 150 are those Producer Defendants, Distributor Defendants, Builder Defendants and Alter Ego Defendants who identities and true names are currently unknown to the Plaintiffs (hereinafter "Fictitious Defendants") and in support thereof would show unto this Honorable Court as follows, to-wit:

## PARTIES

1.      Plaintiffs, Greg E. Wiggins and Sherry Wiggins, are the owners of a residence located in Brewton, AL (the "Wiggins Residence"). The address of the Wiggins Residence is 1047 Well Road, Brewton, AL 36426. This is also the Wiggins' primary residence. An inspection has revealed the presence of Chinese drywall in this Residence.

2.      Defendant, Bass Homes, Inc., is an Alabama corporation authorized to conduct business in the State of Alabama, with its principal place of business located at 34661 State Hwy 59, Stapleton, AL 36578. Bass Homes, Inc. is a residential construction company and is operating, conducting, engaging in, and carrying on a business or venture in this state and has an office or agency in this state.

3.      Defendant, Ace Hardware Corporation, is a Delaware corporation authorized to conduct business in the State of Alabama with its principal place of business located at 2200 Kensington Court, Oak Brook, IL 60523-2100. At all material times, Ace was in the business of distributing, supplying and/or selling residential drywall in Alabama, and maintained multiple retail, office and/or warehouse locations in the State of Alabama.

4.      Defendant, Ace Home Center, Inc., is an Alabama corporation authorized to conduct business in the State of Alabama with its principal place of business located at 21090 Alabama 59 South, Robertsdale, AL 36567. At all material times, Ace Home Center was in the business of distributing, supplying and/or selling residential drywall in Alabama as a retail outlet.

5.      Fictitious Defendants 2 through 150 are those Producer Defendants, Distributor Defendants, Builder Defendants and Alter Ego Defendants who identities and true names are currently unknown to the Plaintiffs, who therefore sues Fictitious Defendants 2 through 150 by such fictitious names.

2

## JURISDICTION and VENUE

6.      The litigation of this controversy should proceed in this forum because the properties at issue are located in this County, the Plaintiffs reside in this County and the wrongful conduct is concentrated in this County.

7.      Defendants are foreign corporations that either are registered to conduct business in the State of Alabama or that actually transacted business in Alabama.

## FACTS

8.      On or about December 9, 2008, Greg E. Wiggins and Sherry Wiggins entered into a Building Agreement with Bass Homes, Inc. for the construction of a residence on real property located at 1047 Well Road, Brewton, AL 36426.  See Building Agreement, Attached hereto as **Exhibit "A"**.

9.      In the summer of 2008, Bass Homes, Inc. applied for a building permit for the Wiggins Residence.

10.      Thereafter, Bass Homes was the general contractor and built the Wiggins Residence located at 1047 Well Road, Brewton, AL 36426.  Plaintiffs are informed and believe Ace Hardware, by and through Ace Home Center, supplied the drywall installed in the Wiggins Residence.

11.      A Certificate of Completion for the Wiggins Residence located at 1047 Well Road, Brewton, AL 36426 was issued on or about December 9, 2008. Thereafter, the Wiggins family occupied the residence.

3

12.     On information and belief, Ace Hardware, by and through Ace Home Center, sold the drywall that Bass Homes, or the subcontractor hired by Bass Homes, installed in the Wiggins Residence.

13.     In or about November 2009, Plaintiffs determined that their Residence was built with drywall manufactured in China ("Chinese Drywall").

14.     The material composition, and offensive smell, of the Chinese Drywall in the Residences renders it inferior to American-made drywall and unfit for ordinary use in residential construction.

15.     Defendants knew, or should have known, that the Chinese Drywall that Bass Homes purchased from Ace Hardware, by and through Ace Home Center, and that Bass Homes installed, was going to be used in the construction of the Residence.  Ace Hardware and Ace Home Center also knew, or should have known, that residential homeowners, such as Plaintiffs, were foreseeable users of the Chinese Drywall and that residential homeowners, such as Plaintiffs, required and expected the drywall to be fit for the ordinary purpose for which it was intended.

16.     Unlike American-made drywall, the Chinese Drywall in the Residences emits several sulfur compounds, including, but not limited to, carbon disulfide, carbonyl sulfur, and hydrogen sulfide.  The Chinese Drywall in the Residence is also suspected to contain several other impurities which render it unfit for usage in residential construction. The sulfur based compounds emitted have created a sulfur odor which renders the drywall unfit for the ordinary purpose for which it was intended.

17.     The Chinese Drywall emits these sulfur based compounds because it suffers from either a defective manufacturing and/or mining process.

4

18.    The corroded items described above are also unfit for the ordinary purpose for which they were intended. Plaintiffs are uncertain as to the cause of the corrosion and have not engaged in any act or activity which has led to or caused the corrosion in any way.

19.    The Chinese Drywall in the Residence has and will continue to cause damage to the Residences and Plaintiffs' personal property.

20.    As a result of the foregoing, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to: economic damage, and other economic damages; damage to real and personal property; attorneys' fees and expenses; and court and/or administrative costs.

21.    As a result of Defendants' wrongful conduct, Plaintiffs' Residence must be repaired and have declined and will continue to decline in value by at least the cost of repair.

<u>COUNT I</u>
<u>BREACH OF CONTRACT</u>

22.    Plaintiffs incorporate by reference paragraphs 1 through 21 previously alleged as though fully set forth herein.

23.    Defendant Bass Homes sold the Residence to the Plaintiffs built with Chinese Drywall.

24.    Defendant Bass Homes built the Residence with Chinese Drywall.

25.    Defendant Ace Hardware, by and through Ace Home Center, sold the Chinese Drywall which was used to build the Residence.

26.    Upon information and belief, Bass Homes purchased the Chinese Drywall that it installed in the Residence from Ace Hardware.

27.    The Chinese Drywall was expected to and did reach the Plaintiffs' Residence without any substantial change in the condition to which it was sold.

5

28.    The Chinese Drywall is defective and unreasonable dangerous and has caused damage because of the offensive odor and off gassing of sulfur compounds.

29.    The Plaintiffs, acting as reasonably prudent persons, could not have discovered that Chinese Drywall was defective as herein mentioned or perceived its danger because the defects in the drywall were latent.

30.    Bass Homes breached the contract of warranty with Plaintiffs and the contract for sale, entitling Plaintiffs to an award of damages and performance of the contract.

31.    By and through Ace Hardware's and Ace Home Center's acts, they have breached the implied covenant of good faith and fair dealing relative to contracts of insurance and warranty and sale, causing Plaintiffs' damages.

32.    In the alternative, the acts of the Defendants were grossly negligent, amounting to an independent tort, entitling Plaintiffs to an award of extra contractual damages.

33.    Defendants, Bass Homes, Ace Hardware and Ace Home Center, are therefore strictly liable for the damages, punitive and actual, sustained by Plaintiffs.

34.    As a result of the foregoing acts and omissions, Plaintiffs require and/or will require extensive reconstruction and repairs, and will incur repair and replacement costs, repairs for appliances, incidental, and other related expenses.  Plaintiffs are informed and believe, and further allege, that Plaintiffs will in the future be required to pay for additional repairs and/or replacement costs.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Defendants, Bass Homes, Ace Home Center and Ace Hardware, awarding damages, interest, costs, and attorneys' fees and such other relief as this Court may deem just and proper.

**COUNT II**
**NEGLIGENCE AND GROSS NEGLIGENCE**

35.     Plaintiffs incorporate by reference paragraphs 1 through 34 previously alleged as though fully set forth herein.

36.     Defendants owed a duty to Plaintiffs to exercise reasonable care in exporting, importing, distributing, delivering, supplying, selling, inspecting and installing the Chinese Drywall, and in constructing the Residence, to insure that the Residence were constructed with materials that would not harm the inhabitants or the other property within the Residence. Defendants also had a duty to adequately warn Plaintiffs about any unsafe materials used in the construction of the Residence known by Defendants.

37.     Defendants breached their duty to exercise reasonable care in exporting, importing, distributing, delivering, supplying, selling, inspecting and installing the Chinese Drywall, and constructing the Residence by:

    (a)    causing and/or allowing Chinese Drywall to be installed within the Residence;

    (b)    failing to investigate whether the Chinese Drywall would harm inhabitants of the Residence or damage other property or work within the Residence;

    (c)    failing to warn Plaintiffs that the Residence contained Chinese Drywall that could damage their property;

    (d)    failing to take reasonable measures that Defendants knew, or reasonably should have known, were necessary to protect the Plaintiffs from hazards associated with the Chinese Drywall;

    (e)    failing to exercise reasonable care in their quality control practices;

    (f)    failing to comply with all applicable building codes;

    (g)    failing to take such other precautions as may be revealed through discovery.

38.     If Defendants had exercised reasonable care, they would have investigated the Chinese Drywall and its adverse effects prior to selling or installing the Chinese Drywall used in the Residences.  Further, Defendants could have warned Plaintiffs that the Chinese Drywall may cause the problems described herein.

39.     Defendants' failure to exercise reasonable care constitutes a breach of duty.  The defects in the drywall were latent and could not have been reasonably discovered by Plaintiffs.

40.     As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs were harmed and have incurred damages, as described herein, including personal injuries and damage to other property in the Residence.

41.     Due to Defendants' negligence, Plaintiffs have sustained damages, including, but not limited to the diminution in property value, all costs associated with the removal and replacement of the Chinese Drywall, all costs necessary to reconstruct Plaintiffs' Residence, and all costs associated with the repair or replacement cost of damaged property in the residence.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Defendants, awarding damages, interest, costs, and attorneys' fees and such other relief as this Court may deem just and proper.

<div align="center">

**COUNT III**
**BREACH OF IMPLIED WARRANTIES AND OTHER WARRANTIES**

</div>

42.     Plaintiffs incorporate by reference paragraphs 1 through 41 previously alleged as though fully set forth herein.

43.     Notwithstanding the breach of the express warranty at issue herein, Bass Homes, through the sale of the subject residence, and the failure to remedy such defects, have breached implied warranties of fitness for a particular purpose and merchantability with respect to the sale of the defective residence.

<div align="center">8</div>

44.     Notwithstanding the breach of the express warranty at issue herein, Ace Hardware, through the sale of the drywall installed in the Residence, and the failure to remedy such defects, have breached implied warranties of fitness for a particular purpose and merchantability.

45.     Such warranties include, but are not limited to, the warranties set forth in § 6-5-227, et seq., Alabama Code.  All such conditions precedent to enforcement of such warranties have been fulfilled.

46.     The material composition of the Chinese Drywall in the Residence renders it inferior to American-made drywall and unfit for ordinary use in residential construction.

47.     Defendants knew, or should have known, that the Chinese Drywall that Bass Homes purchased from Ace Hardware, by and through Ace Home Center, and that Bass Homes installed, was going to be used in the construction of the Residence.  Ace Hardware and Ace Home Center also knew, or should have known, that residential homeowners, such as Plaintiffs, were foreseeable users of the Chinese Drywall and that residential homeowners, such as Plaintiffs, required and expected the drywall to be fit for the ordinary purpose for which it was intended.

48.     Unlike American-made drywall, the Chinese Drywall in the Residence emits several sulfur compounds, including, but not limited to, carbon disulfide, carbonyl sulfur, and hydrogen sulfide.  The Chinese Drywall in the Residence is also suspected to contain several other impurities. The sulfur based compounds emitted have created a sulfur odor which renders the drywall unfit for the ordinary purpose for which it was intended.

49.     The Chinese Drywall emits these sulfur based compounds because it suffers from either a defective manufacturing and/or mining process.

9

50.    The corroded items described above are also unfit for the ordinary purpose for which they were intended. Plaintiffs are uncertain as to the cause of the corrosion and have not engaged in any act or activity which has led to or caused the corrosion in any way.

51.    The odor caused by the use of Chinese Drywall in the Residences renders the Residences unfit for the ordinary and general purpose of residential living.

52.    In addition, the accompanying corrosion of pipes, wiring, metal finishes and fixtures, including their HVAC system, and experienced failures of electronic products, including televisions and computers in the home also renders the Residence is unfit for the ordinary and general purpose of residential living.

53.    As a result of the use of Chinese Drywall, the Residence does not meet the ordinary, normal standards reasonably to be expected of living quarters of comparable kind and quality.

54.    Despite having knowledge as to the use of inferior drywall in the home, Defendant Bass Homes sold the Residence to the Plaintiffs and built the Residence with Chinese Drywall.

55.    As a result of Bass Homes' actions, Plaintiffs have suffered and will continue to suffer damage, including but not limited to: economic damages, including and other economic damages; damage to real and personal property; attorneys' fees and expenses; and court and/or administrative costs.

56.    As a result of Bass Homes' breach of the implied warranty of habitability and fitness, Plaintiffs are entitled to have the purchase price of the Residence restored to them by Bass Homes, together with any expenses there from, and for those damages and losses set forth above.

10

57.     As a result of Ace Hardware's and Ace Home Center's actions, Plaintiffs have suffered and will continue to suffer damage, including but not limited to: economic damages, including and other economic damages; damage to real and personal property; attorneys' fees and expenses; and court and/or administrative costs.

58.     As a result of Ace Hardware's and Ace Home Center's breach of the implied warranty of habitability and fitness, Plaintiffs are entitled to have the purchase price of the Residence restored to them by Bass Homes, together with any expenses there from, and for those damages and losses set forth above.

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor, against Bass Homes, Ace Hardware and Ace Home Center, awarding damages, interest, costs, and attorneys' fees and such other relief as this Court may deem just and proper.

## COUNT IV
## FAILURE TO PROCURE A WARRANTY

59.     The allegations of paragraphs 1 through 58 above are incorporated herein as if reproduced in full.

60.     Alternatively, if such warranty as represented by Defendants was not procured, Defendants are liable to Plaintiffs as set forth herein.   At material times, by reason of Defendants' actions, Defendant entered into a contractual agreement with Plaintiffs and was under a non-delegable duty to procure the warranty coverage sold to Plaintiffs, or, in the alternative, to procure for Plaintiffs like or similar warranty coverage.  If such warranty coverage was not procured, Defendants breached such contractual agreements and duties to Plaintiffs, entitling Plaintiff to performance of the contract of warranty by Defendants, in addition to all such other damages as set forth herein.

11

## COUNT V
## CLAIM FOR DECLARATORY RELIEF

61.     The allegations of paragraphs 1 through 60 above are incorporated herein as if reproduced in full.

62.     In addition to seeking damages from Defendants, Plaintiffs request that this Court declare the rights, status and legal relations of the parties under the contract of sale at issue, and the contract of warranty at issue, specifically the amount of benefits due and payable to Plaintiffs under the warranty at issue, pursuant to M.R.C.P. 57 (Declaratory Judgments).  Further, and additionally or alternatively, Plaintiff would show that the language of the warranty at issue is vague, ambiguous and capable of more than one meaning, and that such warranty should be construed against Defendants, and that as a result, this Court should find and declare coverage for the specific claims of Plaintiffs as set forth herein.

## COUNT VI
## FAILURE TO WARN

63.     The allegations of paragraphs 1 through 62 above are incorporated herein as if reproduced in full.

64.   Defendants, Bass Homes, Ace Hardware and Ace Home Center, as the builder and a distributor of materials for the building of residential homes, have a duty to disclose hidden hazards in the home, especially when such hazards effect the safety of the home's occupants, upon acquiring knowledge of that hazard.

65.     Defendants knew that Chinese Drywall was used in the construction of the home and had or should have had such knowledge immediately upon receiving the Chinese Drywall at the job-site and installing it in the home.

66.     Defendants knew or should have known that Chinese Drywall was an inferior product, not fit for ordinary use, and knew or should have known this immediately upon

12

receiving the Chinese Drywall at the job-site and installing it in the home.

67.     Defendants knew or should have known that Chinese Drywall posed a serious health risk to residents of homes wherein Chinese Drywall was used.

68.     Despite knowledge of long standing quality concerns regarding the use and installation of Chinese Drywall, Defendant caused Chinese Drywall to be installed in the home.

69.     Despite such knowledge, Defendants failed to warn the Plaintiffs of the use of Chinese Drywall in the home or of the hazards associated with Chinese Drywall used in the home.

70.     Had Defendants informed Plaintiffs of the use of Chinese Drywall in the home or of the hazards associated with Chinese Drywall used in the home, Plaintiffs would not have purchased the home.

71.     Had Defendants informed Plaintiffs of the use of Chinese Drywall in the home or of the hazards associated with Chinese Drywall used in the home, Plaintiffs would not have suffered the damages alleged herein, and/or could have taken steps necessary to protect themselves and their property against damage.

72.     As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to: economic damages; damage to real and personal property; past, present and future physical and mental pain and suffering; past, present and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and court and/or administrative costs.

73.     Due to Defendants' failure to warn Plaintiffs as to the hidden hazards in the home, Defendants are liable to Plaintiff for those damages and losses set forth above.

## COUNT VII
## FRAUD- BASS HOMES, INC.

74.    The allegations of paragraphs 1 through 73 above are incorporated herein as if reproduced in full.

75.    Despite knowledge of the use of inferior drywall in the home, Bass Homes sold the home to the Plaintiffs.

76.    As a result of Bass Homes' nondisclosure, silence, and misrepresentations, Defendant intentionally gained an unjust advantage over Plaintiffs.

77.    Had Bass Homes advised Plaintiffs of the use of inferior drywall in the home, Plaintiffs would not have purchased the home.

78.    As a result of Bass Homes' actions, Plaintiffs have suffered and will continue to suffer damage and injury, including, but not limited to: economic damages; damage to real and personal properly; past, present and future physical, and mental pain and suffering; past, present and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and Court and/or administrative costs.

79.    As a result of Bass Homes' fraud, Plaintiffs have the right to rescission of the original sale from Bass Homes to Plaintiffs, and for those damages and losses set forth above.

## COUNT VIII
## INTENTIONAL / NEGLIGENT MISREPRESENTATION

80.    The allegations of paragraphs 1 through 79 above are incorporated herein as if 9reproduced in full.

81.    Despite knowledge of the use of the inferior drywall in the home, Defendants sold the home to Plaintiffs.

14

82.     Plaintiffs justifiably relied on Defendants' intentional or negligent representation.

83.     Had Defendants advised Plaintiffs of the use of inferior drywall in the home, Plaintiffs would not have purchased the home.

84.     As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to economic damages; damage to real and personal property; past, present and future physical and mental pain and suffering; past, present and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and court and/or administrative costs.

## COUNT IX
## ALTERNATIVE PLEADING OF
## BREACH OF WARRANTY OF FITNESS

85.     The allegations of paragraphs 1 through 84 above are incorporated herein as if reproduced in full.

86.     The use of inferior drywall in the home renders the home unfit for the purpose of residential living.

87.     Despite having knowledge as to the use of inferior drywall in the home, Defendants sold the home to Plaintiff.

88.     As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer damage and injury, including but not limited to: economic damages; damage to real and personal property; past, present and future physical and mental pain and suffering; past, present and future emotional distress; past, present and future fear and fright; loss of enjoyment of life; past, present, and future medical expenses; attorneys' fees and expenses; and court and/or administrative costs.

15

89.  As a result of Defendants' breach of the warranty of fitness, Plaintiffs are entitled to have the purchase price of the home restored to them by Defendants, together with any expenses there from, and for those damages and losses set forth above.

## COUNT X
## UNJUST ENRICHIMENT

90.  The allegations of paragraphs 1 through 89 above are incorporated herein as if reproduced in full.

91.  As the builder of the home and supplier of drywall for the construction of Plaintiffs' house, Defendants knew that Chinese Drywall was used in the construction of the home and had or should have had such knowledge immediately upon receiving the Chinese Drywall at the job-site and installing it in the home.  Defendants knew or should have known that Chinese Drywall was all inferior product, not fit for ordinary use, and knew or should have known this immediately upon receiving the Chinese Drywall at the job-site and installing it in the home.

92.  Had Defendants disclosed to Plaintiffs the use of Chinese Drywall in the construction of the home, Plaintiffs would not have purchased the home.

93.  As a result of Defendants' acts and/or omissions in concealing the presence of Chinese Drywall in Plaintiffs' home, Defendants unjustly enriched without justification or cause.

94.  As a result of Defendants' acts and/or omissions in concealing the presence of Chinese Drywall in Plaintiffs; home, Plaintiffs were unjustly impoverished without justification or cause.

95.  As a result of the foregoing, Defendants are liable to Plaintiffs for the losses suffered by them.

16

## COUNT XI
### THIRD PARTY BENEFICIARY

96.      The allegations of paragraphs 1 through 95 above are incorporated herein as if reproduced in full.

97.   Bass Homes entered into express contracts whereby its subcontractors performed work on the Residence.

98.      Plaintiffs were the intended beneficiary of the contracts between Bass Homes and its subcontractors.

99.      Bass Homes knew that Plaintiff would benefit from their contracts and could and would be harmed by the breach of those contracts by Bass Homes, its subcontractors, Ace Hardware and Ace Home Center.

100.    The subcontractors breached their contracts with Bass Homes by failing to carefully and properly complete the work on Plaintiffs' home in a good and workmanlike manner in compliance with applicable building codes and construction industry standards.   Therefore, Plaintiffs are entitled to damages as the third party beneficiary to Bass Homes' contracts based on damages suffered by Plaintiffs as a result of the breaches of those contracts.

101.    As a direct and proximate result of the actions of the Bass Homes, Ace Hardware, Ace Home Center and Fictitious Defendants, which combined and concurred to form the basis of this suit, Plaintiffs have suffered damages as set forth in the above Statement of Facts.

## COUNT XII
### DECEPTIVE TRADE PRACTICES

102.    The allegations of paragraphs 1 through 101 above are incorporated herein as if reproduced in full.

17

103.    Defendants' actions constitute violations of the Deceptive Trade Practices Act as defined in Section 8-19-1, et seq. of the Alabama Code (1975).

104.    Plaintiffs demand judgment be entered against Defendants in an amount equal to the funds improperly received by Defendants as the result of its deceptive acts, plus equitable relief.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

Plaintiffs pray the Court to enter judgment against Defendants and in favor of Plaintiffs and to award the following relief:

A.    For damages as set forth above;

B.    For equitable and injunctive relief as set forth above;

C.    Award the Plaintiff(s) costs and attorneys' fees taxed against the Defendants;

D.    Plaintiffs demands a trial by jury on all issues so triable; and

E.    For such other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this, the 7th day of October, 2013.

GREG and SHERRY WIGGINS, Plaintiffs

By and Through Their Attorneys,
LUCKEY & MULLINS, PLLC

BY: _____ /s/ Stephen W. Mullins _____
STEPHEN W. MULLIN

18

ATTORNEYS FOR PLAINTIFFS:

STEPHEN W. MULLINS  (MS Bar No. 9772)
LUCKEY & MULLINS, PLLC
2016 Bienville Blvd., Suite 102   (39564)
Post Office Box 990
Ocean Springs, MS  39566
Phone: 228.875.3175
Fax:    228.872.4719
smullins@luckeyandmullins.com

Of Counsel:

**Daniel K. Bryson** (*pro hac vice*)
**WHITFIELD BRYSON & MASON LLP**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Facsimile: (919) 600-5035

## CERTIFICATE OF SERVICE

  I, STEPHEN W. MULLINS, do hereby certify that I have on this date electronically filed the above and foregoing Amended Complaint with this Court using the ECF filing system which has caused notification of such filing to be sent to registered counsel of record.  A copy of said Amended Complaint will also be served on the registered agent for Ace Home Center, Inc.

  THIS, the 7th day of October, 2013.

<div align="right">

/s/ Stephen W. Mullins
STEPHEN W. MULLINS

</div>


ELECTRONICALLY FILED
10/7/2013 4:14 PM
30-CV-2013-900145.00
CIRCUIT COURT OF
ESCAMBIA COUNTY, ALABAMA
JOHN FOUNTAIN, CLERK

NOV-04-2009  11:07        CITATION BREWTON                      2518670525     P.07

RE: WIGGINS, GREG E.

## COMPLETION CERTIFICATE AND OWNER'S ACCEPTANCE

The undersigned, owner (whether one or more) of the real property described in their contract with BASS HOMES, INC. ("Contractor") dated 1 December 9, 2008 hereby acknowledge and certify as follows:

1. That all materials and labor provided for in said contract have been furnished and installed by the Contractor or his subcontractors on our said real property in a good and workmanlike manner; that we have made a full and complete inspection of the same; that all construction and other work called for in said contract has been satisfactorily completed; that the home is fit, suitable and habitable; and the improvements are hereby accepted by us as built.

2. That the Contractor did not manufacture any materials used in the construction of this home; that the Contractor does not warrant any of the said materials against any defects in QUALITY, FITNESS or MERCHANTABILITY; that the Contractor will make good only on the workmanship of the actual construction of home; and that any and all claims related to the materials used in construction shall be pursued by customers ONLY against the manufacturers of any materials provided to the Contractor.

3. That the Contractor hereby gives us a twelve (12) month warranty (which began 7 days after date of "Buyers Walk Thru Inspection List") the terms of which are as follows: the Contractor agrees to correct any defects in the quality of workmanship during such period and that we understand the responsibilities of the Contractor thereunder.

4. Buyer's agree that the above contractors (12) month warranty date began/begins on 4/22/09 , which is seven calendar days after the date of the document styled Bass Homes Inc. "Buyers Walk Thru Inspection List". The date below does not represent the beginning of buyers warranty date.

5. In the event of any warranty claims made by buyer(s) then buyer(s) agree that seller will be given fair notice with proof thereof, together with necessary time, to correct any item(s) that are covered by this warranty. This includes any post warranty issue that may arise from buyers claims that can be evidenced to a defect that is proven to have been incorrect during the construction process or during the one year warranty.

The quality of workmanship shall be limited to any items not performing their duty as intended in the construction industry. However, the Buyers agree that a walk-thru inspection has been done prior to signing this Owners' Acceptance and Buyers further agree by signing this document that they will forfeit any future rights of discrimination against cosmetic imperfections in the quality of workmanship originally performed in the construction of their home. The Contractor has further delivered to us all manufacturers' warranties as to the appliances and air conditioning and heating equipment within the improvements (the "Manufacturers' Warranties").

The Foregoing Warranty and Manufacturers' Warranties Are Expressly In Lieu of All Other Warranties, Express Or Implied By Law Or Otherwise, And No Warranty Of MERCHANTABILITY, HABITABILITY, Or FITNESS for any particular purpose Of Any Fixtures, Equipment Appliances, Personal Property, Or Real Property And Improvements Thereon Is Made By Contractor. The Liability Of The Contractor And Its Assigns Shall Be Strictly Limited To The Express Warranty Terms, And Neither the Contractor Nor Its Assigns


EXHIBIT
A

# BUILDING CONTRACT
## BASS HOMES, INC.

STATE OF ALABAMA

This agreement made this 9TH day of DECEMBER, 2008, between GREG B. WIGGINS, hereinafter designated "Buyer" whose residence is 1047 WELL RD, BREWTON, AL 36426 and Bass Homes, Inc., having its principal place of business at P. O. Box 344, Stapleton, Alabama, 36578, hereinafter designated "Seller."

(1)

WITNESSETH:

The Seller agrees to build according to the plans and specifications on this sheet, or sheet attached hereto, which is by reference made a part hereof, on the property of the Buyer, located at:

WELL RD DAMASCAS AL.

(2)

Description of construction to be performed: BUILD A 2,427 SQ. FT. HEATED AND COOLED LIVING SPACE HOME ACCORDING TO BUYER(S) CUSTOM PRELIMINARY PLANS, BUILDING PLANS TO BE DRAFTED AND PROVIDED BY BASS HOMES, INC. BUYER(S) AND SELLER AGREE THAT HOME SHALL BE BUILT TO THE SAME SPECIFICATIONS AND CONSTRUCTION STANDARDS AS A STANDARD BASS HOMES, INC. MODEL, ALL SPECIALTY ITEMS,

Exhibits A, B, C, D, E and F dated DECEMBER 9TH 2008 and attached hereto, before execution hereof, are made a part of this contract.

Buyer covenants and agrees to pay for said project (work) the sums and amounts herein set forth, pursuant to the following terms: ONE HUNDRED FIFTY SIX THOUSAND SEVEN HUNDRED AND SEVENTY SIX AND 00/100

| | |
|---|---|
| (1) TOTAL PRICE | $ 157,776.00 |
| (2) DOWN PAYMENT | $ 1,000.00 |
| (3) UNPAID BALANCE | $ 156,776.00 |

Details of Payments: BUYER(S) TO OBTAIN A CONVENTIONAL MORTGAGE LOAN, BUYER(S) TO PAY ALL CLOSING COSTS, DISCOUNT POINTS AND PRE-PAIDS, BUYER(S) TO OBTAIN A 100% CONSTRUCTION LOAN WITH PROGRESS PAYMENTS DURING CONSTRUCTION OF HOME, SAID PAYMENTS TO BE AS PER STANDARD BANK POLICY, FINAL PAYMENT DUE UPON COMPLETION OF HOME.

(3)

This instrument, and the other instruments signed in connection with this transaction contain the price and all the terms and conditions agreed upon by the Buyer and Seller, and no statement, representation or promise not set forth herein or in any of said instruments has been made to induce either party to enter into this transaction. In the event an unsatisfactory credit report on the Buyer or any other information unsatisfactory to the Seller is received prior to beginning construction of the house, Seller at its option may within 10 days thereafter cancel this agreement UPON returning to Buyer any deposit. In the event Buyer fails to perform any activities or duties required of Buyer (e.g., failure to prepare lot for construction, or, failure to obtain an unconditional letter of commitment for funds to purchase house or any contents of this contract, or, failure to deliver proof of all funds if cash purchase applies) which failure prevents Seller from commencing construction for a period of sixty (60) days from the date hereof, Seller may cancel this contract at its option, regardless of any assistance that seller may have provided in financing. Should seller not exercise their option to cancel buyer at 60 day requirement then seller can negotiate with buyers to increase cost of this contract should seller choose to do so, provided that construction has not commenced by seller at buyers property described herein (e.g., starting foundation work on home). If buyer chooses not to agree to additional cost then seller may cancel this contract and retain buyers initial deposit of money. In the event the Buyer does not have good and marketable title to the property described in paragraph 1, Seller may at its option, elect to incur all expenses reasonably necessary to obtain good and marketable title in the Buyer, and Buyer shall forthwith reimburse Seller for all expenses so incurred by Seller. In the event the house built by Seller at the location on the ground designated by Buyer is not entirely on the property of Buyer, then the Buyer agrees to pay Seller any and all costs, damages, losses and expenses, including reasonable attorneys' fees and court costs, suffered or incurred as a result thereof by Seller. The above expenses incurred by the Seller shall constitute a lien against said property of the Buyer until paid. No completion date has been represented or is a part of this contract. All provisions of this contract are subject to approval by an officer of BASS HOMES, INC., Stapleton, AL 36578.

In those homes where pilings are specified, pilings shall be to a depth determined by Seller to be structurally safe and sound. In the event the Buyer requires a depth in excess of that deemed by Seller to be sufficient and structurally safe and sound, this contract, at the option of Seller, shall be declared null and void, or the contract may be re-negotiated to include the cost of drilling to a deeper depth. Commencement of construction and commencement of drilling pilings shall not be deemed a waiver of this position.

The house to be constructed is not designed for unusual surface conditions and/or sub-surface conditions in that no warranty is made that the house is designed for conditions that are abnormal, that no testing of the soil will be conducted by the Seller.

Failure of this Seller or Subcontractor to pay those persons supplying material or services to complete this contract can result in the filing of a lien on the above described property which is the subject of this contract.

(4)

Seller promises to furnish Buyer at closing a one-year limited warranty on the dwelling, a copy of which is attached here as Exhibit "F"

(5)

ARBITRATION AGREEMENT

ANY DISPUTE, CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR THE BREACH THEREOF, OR ARISING OUT OF ANY PRIOR DEALINGS BETWEEN SELLER AND BUYER OR ARISING OUT OF ANY FUTURE DEALINGS BETWEEN SELLER AND BUYER, SHALL BE SETTLED BY ARBITRATION IN THE STATE OF ALABAMA IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION (THE "ARBITRATION RULES OF THE AAA"), AND JUDGMENT UPON THE AWARD RENDERED BY THE ARBITRATOR(S) MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF.

THE PARTIES FURTHER AGREE THAT SHOULD ONE PARTY INVOKE ARBITRATION IN ACCORDANCE WITH THIS AGREEMENT, THE OTHER PARTY SHALL BRING TO THE ARBITRATION PROCESS ANY CLAIM OR COUNTERCLAIM WHICH IT MAY HAVE AGAINST THE INVOKING PARTY, WHETHER DEEMED TO BE COMPULSORY OR PERMISSIVE AT LAW, AND, THE FAILURE TO BRING SUCH CLAIM OR COUNTERCLAIM SHALL CONSTITUTE A WAIVER OF AND A BAR TO THE BRINGING OF SUCH CLAIM OR COUNTERCLAIM IN ANY SUBSEQUENT ARBITRATION OR LEGAL ACTION.

SELLER AND BUYER UNDERSTAND AND AGREE (I) THAT EACH OF THEM IS WAIVING RIGHTS TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO A JURY TRIAL; (II) THAT PRE-ARBITRATION DISCOVERY PROCEEDINGS IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS; (III) THE ARBITRATOR'S AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING; AND (IV) EITHER PARTY'S RIGHT TO APPEAL OR SEEK MODIFICATION OF RULINGS BY THE ARBITRATOR IS STRICTLY LIMITED. THE VENUE FOR ARBITRATION SHALL BE IN BALDWIN COUNTY, ALABAMA.

IN WITNESS WHEREOF, the Buyer and Seller have hereunto set their hands and seals at STAPLETON, ALABAMA, the day and year first above written.

(City) (State)

CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.

BASS HOMES, INC.
SELLER

BY [signature]
Title

[signature]
(BUYER)

(BUYER)

EXHIBIT A
BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL 36578

DECEMBER 8TH, 2008

GREG E. WIGGINS                                                    DATE
BUYER(S) NAME(S)

NOTICE
ANY HOLDER OF THIS CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE BUYER COULD ASSERT AGAINST THE
SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE BUYER
SHALL NOT EXCEED AMOUNTS PAID BY THE BUYER HEREIN.

BUYERS RIGHT TO CANCEL
IF THIS AGREEMENT WAS SOLICITED AT YOUR RESIDENCE AND YOU DO NOT WANT THE GOODS OR SERVICES, YOU MAY CANCEL
THIS AGREEMENT BY MAILING A NOTICE TO THE SELLER. THIS NOTICE MUST SAY THAT YOU DO NOT WANT THE GOODS OR SERVICES AND
MUST BE MAILED BEFORE MIDNIGHT OF THE THIRD BUSINESS DAY AFTER YOU SIGN THIS AGREEMENT. THE NOTICE MUST BE MAILED TO:
LEGAL DEPARTMENT, BASS HOMES, INC., HIGHWAY 31, P. O. DRAWER NO. STAPLETON, ALABAMA 36578. YOU ARE ALSO ENTITLED TO
RECEIVE A REFUND OF ANY DOWN PAYMENT OR OTHER CONSIDERATION IF YOU CANCEL.
NOTICE TO THE BUYER (1) DO NOT SIGN THIS BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES, (2) YOU ARE ENTITLED
TO AN EXACT COPY OF THE PAPER YOU SIGN.
THE BUYER ACKNOWLEDGES THAT HE RECEIVED A COPY OF THIS AGREEMENT AND THAT BEFORE SIGNING THIS SAME, THE
CONTRACT CONTAINED THE ENTIRE TERMS AND ALL BLANK SPACES HAD BEEN FILLED IN PRIOR TO THE SIGNING OF THIS SAME.

These presents constitute a part of the Building Contract of even date attached hereto. The following options and additions, to-wit:
HOUSE TO BE BUILT ACCORDING TO PLANS FURNISHED BY BASS HOMES, INC.
Note to Buyers:  Bass Homes, Inc., may at its election require water and sewer to be installed on mortgaged property before
construction begins or before completion of rough plumbing in home. In the event that water and sewer with connections to home is
not completed at Bass Homes, Inc., request, Sellers and Buyers agree that Bass Homes, Inc., will have full rights to install water supply
and sewer with connections and Buyers then agree to pay in full normal and customary charges of goods.

FOUNDATION:    ~~[illegible]~~
               NOTE: Builder shall negotiate additional cost if any with customer before foundation is installed. Any
               additional depth of foundation (piers, pilings, or slab) or width of footings required by any building
               governmental agencies, buyers, or builder's discretion shall all be on a cost plus basis unless pre-charged
               and written in contract total price.

1.    Foundation will be solid type with continuous 8" block wall around perimeter of home only. Note: All porches will be open
      piers. If exterior is Brick Veneer, foundation will be piers only. Foundation height of home to be at sellers discretion per
      building codes if enforced. Buyers are responsible to determine if they are in a flood zone and shall disclose to seller in
      writing before construction begins if a required foundation height is necessary.
2.    Treated foundation seals will be installed; all porch seals and porch floor will be treated.
3.    3/4" tongue and groove plywood flooring.

EXTERIOR OF HOUSE:
1.    Exterior walls will have OSB and housewrap sheeting under siding.
2.    Exterior siding hardiplank or comparable unless otherwise stated in contract.
3.    All porch rails, fascia, and window trim will be pressure treated.
4.    Roof will have all framing 2' o.c.
5.    Roof will have standard fiberglass shingles, unless otherwise stated in contract.
6.    Interior doors will be metal insulated.
7.    Exterior windows will be insulated white colonial style. Tilt window sash's are optional
8.    Exterior of house will be painted latex.
9.    All homes with vinyl siding will have 7/16" OSB wafer board in lieu of standard styrofoam.

INTERIOR:
1.    Interior of home will have 3 ½" insulation in exterior walls and 6" fiberglass insulation in attic exposed ceiling areas only.
2.    Interior wall will have ¼" sheetrock throughout entire house.
3.    Cabinet faces and doors only will be 3/4" Birch plywood or comparable material with laminated countertops. All white
      lacquer cabinets will be 5/8" MDF or HDF, including raised panel doors. All cabinet backs, ends, shelves or other
      components in cabinets shall be equal to Bass Homes, Inc., model home.
4.    Standard interior doors and trim.
5.    Vinyl flooring in kitchen, utility, and all baths, no wax.
6.    Carpet in all other areas of home from Bass Homes, Inc., samples.
7.    Fluorescent light in kitchen area.

STANDARD OPTIONS OF HOUSE:
1.    PLUMBING:    Fiberglass tub and shower units/stainless steel kitchen sink/standard vanity porcelain sinks, standard white fixtures.
2.    ELECTRICAL:  200 amp service/stranded copper and aluminum wiring/standard light fixtures.
3.    HEAT AND AIR: Standard electric central forced heat and air. 42" Metal insert fireplace (without blowers) in boxes that are shown on
                   Bass Homes, Inc. plan brochure only.
4.    PAINT:       A.   Exterior all base stain/interior latex paint on walls. Standard color all interior walls (soft white) Devoe Brand
                        or something equivalent, all paint and stain from Bass Homes, Inc., samples.
                   B.   All interior walls in home will be one color (soft white).
                   C.   All trim work and cabinets will be stained or white.
                   D.   All exteriors will be painted.
                   E.   All exteriors will have one trim color for doors and shutters only. Any other trim colors will be additional
                        costs. (Hand rails, porch rails, corner boards, and eaves will be stained or painted same color as exterior of
                        house).
5.    All materials in excess of job will remain the property of Bass Homes, Inc.
6.    Buyers are responsible for removal of construction debris.
7.    All utilities are stubbed out only to exterior (Electrical Service Wire, Gas, and Plumbing). See Exhibit "B" for details.

_____                          _____
(SELLER, BUILDER)                                  (BUYER, OWNER)

                                                   _____
                                                   (BUYER, OWNER)

EXHIBIT B - PART 1
DASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL 36578

DATE: DECEMBER 9TH, 2008
NAME OF BUYER(S): GREG E. WIGGINS
TYPE OF HOME: CEMPLANK                     MODEL: CUSTOM PLAN

OWNER'S CHOICE OF INTERIOR & EXTERIOR COLORS:

EXTERIOR:   HARDIPLANK OR COMPARABLE _____   CEDAR _____   BRICK _____

SIDING COLOR _____
STANDARD TRIM COLOR (DOOR & SHUTTERS ONLY) _____
DELUXE TRIM COLOR (DOOR, SHUTTERS, FASCIA & WINDOW TRIM) THIS ITEM IS $350.00 ADDITIONAL COST
SHINGLES _____   WINDOWS: BRONZE _____   WHITE _____
BRICK COLOR _____
MORTAR COLOR:  GREY _____   DARK MORTAR _____   OTHER _____

INTERIOR:
KITCHEN / BREAKFAST
    COUNTER TOP _____
    STANDARD RANGE HOOD:  ALMOND _____   WHITE _____   STAINLESS _____
    CONNECTION FOR MICROWAVE: ☐ YES or ☐ NO
    VINYL _____
DINING
    CARPET _____

UTILITY:
    VINYL _____

MASTER BATHROOM:
    VANITY TOP _____
    VINYL _____

HALL BATHROOM:
    VANITY TOP _____
    VINYL _____

CARPET:
    $250.00 ADDED COST FOR HARDWOOD FLOORING FRONT ENTRANCE: _____
    LIVING ROOM _____
    FOYER _____
    STUDY _____
    BEDROOM #1 _____
    BEDROOM #2 _____
    BEDROOM #3 _____
    BEDROOM #4 _____
    (NOTE:  Vinyl throughout home, other than kitchen, dining and bath cost an additional $2.00 per sq. ft.)

FIREPLACE STONE: _____
(NOTE:  The fireplace in all homes with cathedral ceilings will have stone to mantle height.)
FIREPLACE MANTLE BACKING BRACE ( 2" X 4" ) YES _____   OR  NO _____
CABINETS  STAINS OR COLOR: _____
    ALL CABINET ROOM AND ANY CABINET UPGRADES MUST BE IN CONTRACT ON "EXHIBIT C" AND ALSO PROOF OF PURCHASE ON
    DASS HOMES COST BREAK DOWN SHEET.
    INTERIOR TRIM STAIN OR COLOR: _____
    CABINET HARDWARE _____
                  *ONE CHOICE OF CARPET COLOR
                  *TWO COLORS FOR VINYL
                  *TWO COLORS FOR VANITY AND COUNTER TOP

VINYL FLOORING WILL BE INSTALLED IN BATHROOMS, KITCHEN, UTILITY, AND BREAKFAST AREAS ONLY.
ANY VINYL INSTALLED IN ANY OTHER AREAS, BUYER(S) AGREE TO PAY AN ADDITIONAL $2.00 PER SQUARE
FOOT FOR UNDERLAYMENT.

                              _____
                              (BUYER, OWNER)

                              _____
                              (BUYER, OWNER)

EXHIBIT B - PART 2

BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL 36578

BUYER(S)  GREG E. WIGGINS

DATE:  DECEMBER 9TH, 2008

1. Ceiling fan outlets ONLY WHERE:  LIVING AND ALL BEDROOMS
2. Ceiling fan installation ONLY WHERE:  NONE
3. Dishwasher cutout? YES _X_       OR NO _____
4. Dishwasher hookup? YES _____       OR NO _X_
5. Ice-maker line only installed: YES _X_       OR NO _____
6. Cabinet space for standard 30" free standing electric stove YES _____       OR NO _____
   Drop-in stove: YES _____       OR NO _____
7. Gas utilities: YES _____       OR NO _____
8. Termite Treatment; one twelve month bond: YES _____       OR NO _X_
   (No termite treatment shall be provided for homes on pilings.)
9. Electric hookup; Standard overhead _____       OR underground _____
10. Clean up debris and haul off?  NO.  If yes, additional costs must be added to total price and Exhibit C of Contract.
11. Payment toward Builder's Risk Insurance during construction period.
    YES _____     OR NO _X_
    Buyer(s) agree(s) to furnish Builder's Risk policy payable to Seller and if necessary, also to Lender or Buyer(s) prior to and during construction of home until construction of home is complete.
12. All utilities are stubbed out only to exterior (electric service wire, gas, plumbing, and sewer).
13. Gutters, parquet flooring and mini-blinds not included in standard price of home.

(I)   Buyer(s) agree that all special changes to home plans have been made and incorporated into this contract. Buyer(s) further agrees that all color selections and selections of all goods have been made by Buyer(s), and upon execution of this Contract, both Parties agree that no changes will be made.

(II)  Buyer(s) agree(s) that upon substantial completion of home, Buyer(s) and a Bass Homes, Inc., representative will do a walk through inspection of home and a punch list will be written up which is mutually agreeable by both parties. Buyer(s) hereby agree(s) that the initial walk through and resulting punch list will be the only walk through and punch list. Seller hereby agrees to correct or complete the items on the punch list and once finished, Buyer(s) agree(s) to immediately pay Seller the entire balance owed to the Seller under the contract or otherwise. If Seller should agree to do any extra work after the initial punch list, this work shall not commence until Seller has been paid in full. All other matters will be strictly related to the standard one year Builder's Warranty styled as a "Completion Certificate and Owner's Acceptance".

(III) Buyer(s) agree(s) that he and/or she shall not be allowed to take possession of the home until such time as Seller has been paid in full under the contract and has also been paid any additional cost, if any, which has been added to the original contract price. Buyer(s) acknowledge(s) that, until such time as Seller has been paid in full the contract price and signed a "Completion Certificate and Owner's Acceptance," Buyer(s) will not be allowed to occupy or store any of his and/or her possessions in said home. In the event that Buyer(s) fail to the agreed terms above, Buyer(s) shall in this agreement, pay to the Seller a sum of $1,000.00 per month rent for possessing the newly constructed home for storing any of Buyer(s) goods or occupying the home in any manner. The monthly $1,000.00 rate will be paid to Seller until Seller is paid in full.

_____         _____
(SELLER, BUILDER)                (BUYER, OWNER)

                                 _____
                                 (BUYER, OWNER)

EXHIBIT C
BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL 36578

NAMES OF BUYER(S): _GREG E. WIGGINS_

DATE: _DECEMBER 9TH, 2008_

TYPE OF HOME: _CEMPLANK_

NAME OF HOME BEING BUILT: _CUSTOM PLAN_

PLEASE LIST ANY CHANGES OTHER THAN "STANDARD" THAT IS STATED IN THIS CONTRACT REGARDLESS OF
HOW SMALL OR LARGE THE CHANGE MAY BE. ANYTHING WRITTEN IN EXHIBIT "C" WILL OVERRIDE THE
"STANDARD" CONTRACT AND BLUEPRINTS.

1.   FOUNDATION TO BE A CONCRETE SLAB ( MONOLITHIC STYLE ) WITH BRICK FOOTINGS DROPPED TO
     GROUND LEVEL. SLAB HEIGHT FOR FINISHED FLOOR HEIGHT TO BE MINIMUM TO SOUTHERN
     CODES BUT AN AVERAGE NOT LESS THAN 16" FROM EXISTING LOT GRADE.

2.   INSTALL DIMENSIONAL SHINGLES ON ROOF OF HOME IN LIEU OF STANDARD SHINGLES FROM BASS
     HOME SAMPLES.

3.   INSTALL STANDARD 9' CEILINGS THROUGHOUT HOME.

4.   INSTALL STANDARD FLUSH CABINETS (DOORS & DRAWERS) THROUGHOUT HOME FROM BASS  βB
     HOMES SAMPLES. NOTE! ALL WHITE CABINETS WILL BE FIBER-CORE MATERIAL WITH LAMINATED
     WOOD FACE.                                                 βW (6' TALL Plant windows)

5.   ADD A 21' X 21' TWO CAR FINISHED GARAGE WITH 7' X 16' AUTO OPEN DOOR THREE WINDOWS AND
     ONE 3' WIDE STANDARD WALK IN DOOR. GARAGE DOOR TO HAVE GLASS PANELS (ROLLUP DOOR).
     GARAGE TO BE JOINED TO MAIN HOUSE WITH A SPECIAL CRICKET STYLE ROOF TO CORRECT
     WATER SHED FROM BACK ROOF CONFLICTING.

6.   FRONT PORCH DIMENSIONS WILL BE 6' X 30.

7.   DELETE ALL TREY AND BOX CEILINGS.

8.   INSTALL DOUBLE WINDOWS WITH TRANSOMS ON FRONT OF HOME.

9.   INSTALL DELUXE INTERIOR BASE TRIM ALL INTERIOR OF HOME. BASE ONLY UPGRADED.

10.  INSTALL R-30 BLOWN INSULATION IN LIEU OF STANDARD ATTIC INSULATION.

11.  INSTALL PORCELAIN CERAMIC TILE IN BATH, KITCHEN AND BREAKFAST AREA.

12.  LIGHT FIXTURE ALLOWANCE $650.00 OR BASS HOMES STANDARD FIXTURES. BUYERS CHOICE OF
     EITHER.

13.  PORCH COLUMNS TO BE STANDARD 6" X 6" POST WRAPPED WITH CEM-PLANK.

14.  ALL EVES AND EXTERIOR CEILINGS ( ALL MILLWORK ) TO BE CEMPLANK SIDING MATERIAL.

15.  25 YEAR SHINGLES FROM BASS HOMES SAMPLES.

16.  INSTALL THREE PHONE JACKS AT BUYERS CHOICE OF LOCATIONS.

17.  WALL AT PORCH AREAS TO BE VERTICAL CEMPLANK BOARD AND BATTING SIDING IN LIEU OF
     BRICK.

18.  INSTALL STANDARD BASS HOME FIREPLACE WITH STONE FRONT (SAME AS MODEL HOME).

19.  ROOF PITCH TO BE 7 1/2 ON 12" PER FOOT RISE.

20.  ADD A 10' X 30' CONCRETE SLAB AT REAR PORCH AS PER PLANS.

21.  BASS HOMES TO DRAW BUILDING PRINTS AT NO CHARGE.

22.  INSTALL WOOD FLOOR AT LIVING ENTRY. FROM BASS HOMES SAMPLES.

23.  INSTALL STANDARD TERMITE PRE-TREAT.

24.  ADD THE SAME PANTRY THAT'S IN THE REDWOOD MODEL KITCHEN TO BUYERS UTILITY.

_DECEMBER 9TH, 2008_
DATE

_____                    _____
(SELLER, BUILDER)                           (BUYER, OWNER)

                                            _____
                                            (BUYER, OWNER)

EXHIBIT D
BASS HOMES, INC., 34661 HWY. 59 SOUTH, STAPLETON, AL 36578

NAME OF BUYER(S): ___GREG R. WIGGINS_____
DATE: ___DECEMBER 9TH, 2003_____
TYPE OF HOME: ___CEMPLANK_____
MODEL: ___CUSTOM PLAN_____

BUYER(S) AGREES TO PROVIDE THE FOLLOWING ITEMS PRIOR TO COMMENCEMENT OF CONSTRUCTION UNLESS OTHERWISE STATED IN THIS CONTRACT:

1. Electricity necessary to construct home within 25 feet of proposed structure. All expenses to be from Buyer(s) including power bills.
2. Water supply necessary to construct home within 25 feet of proposed structure. All expenses to be from Buyer(s) including water bills.
3. Temporary driveway (and culvert if necessary) within 25 feet of proposed structure. Driveway material must be sufficient to support heavy equipment delivering building goods.
4. Clearing of lot for proposed structure. Clearing includes trees, stumps or any type of debris above or below ground to Seller's satisfaction.
5. Elevation certification in flood areas when required in connection with builder obtaining building permit. Seller will provide building permit only.
6. Water supply within 300 feet for installing pilings for homes being built on pilings.
7. Cost of plan reviews when required by county or city building departments.
8. Engineering cost of certifying home plans when required by building codes or governmental agencies.

BUYER(S) SHALL PROVIDE THE FOLLOWING ITEMS DURING OR AT COMPLETION OF CONSTRUCTION (UNLESS OTHERWISE STATED IN THIS CONTRACT). NOTE: SOME ITEMS MAY BE AT BUYER(S) DISCRETION UNLESS REQUIRED BY MORTGAGE HOLDER.

1. Septic system and line to stub-out at home.
2. Water meter, well, and line to stub-out at home.
3. Buyer to connect water and sewer line to stub-out at foundation of home.
4. Television antenna outlets, cable outlets, telephone outlets or other items of similar nature.
5. Mirrors in baths, soap dishes, towel bars, etc.
6. Safety bars or grab bars in tubs and showers.
7. Shower doors.
8. Mantel over fireplace.

BUYER(S) ACKNOWLEDGES AND AGREES WITH THE FOLLOWING POLICIES AND STATEMENTS:

1. Seller will not be responsible for any property damage to Buyer(s)' lot in connection with Seller constructing Buyer(s)' home.
2. Seller will not do any landscaping or leveling of lot during or after completion of this contract unless otherwise stated in this contract.
3. When homes are sold with brick veneer on exterior of home, all walls under porch and gables shall having siding (specified type in contract) in those areas unless otherwise written in contract. All exterior steps and rails shall be wood.
4. When final building plans are completed, Buyer(s) agrees that Seller will not build home to exact dimensions and cosmetic details that may appear on plans due to a large volume of plan changes that Seller produces. Seller and Buyer(s) agrees to build home according to sales brochure plan and preliminary plans.
5. Seller will not warrant the performance or appearance of any clear sealers or semi transparent stains installed by Seller on exterior of homes such as Clear Wood Finish or similar brand.
6. Buyer(s) shall not take any possession of home or move any goods in until seller receives final payment.
7. Seller is not required to provide buyer(s) any building drawings or blueprints other than a preliminary style set of plans with room sizes and exterior elevations of all sides of home.
8. Buyer strictly agrees that they are not allowed to perform any construction improvements or install any goods or improvements in home until final payment of home is payed to seller at completion. SHOULD BUYER(S) VIOLATE OR BREAK THE TERMS OF THIS AGREEMENT THEN BY STATED INITIAL 1 OF THE EXHIBIT D OF CONTRACT THEN BUYER(S) WILL PAY SELLER IN ADDITION 15,000 TO THE TOTAL PRICE OF THIS CONTRACT AT THE TIME OF FINAL PAYMENT.
9. Buyer(s) agree upon substantial completion of construction of home that one (1) time walk-through inspection will be done by appointment with a Bass Homes, Inc. representative and a written list of items will be produced. Bass Homes, Inc. will complete all listed items from the one (1) time walk-through inspection.
   Buyer(s) agree to close immediately upon completion of list.
   Buyer(s) and Seller agree that no additional walk-through or additional items will be allowed after the initial one (1) time walk-through and item list.
10. "completion certificate of owners acceptance" warranty limitations  are a part of this contract.

Buyers agree to pay the full amount for materials and labor of any special additions/goods enforcements  that are required by building departments, mortgage lenders, or any type of governmental agency that are not standard to Bass Homes, Inc., model home or sold plans and specs. This includes, but is not limited to, the following items:  special insulation, underplaning of home's on pilings, structural engineering, certification of plans, special depth of concrete footings (i.e. prefix soil, white sand in coastal areas, unstable soil), or any items that must be added to meet the requirements of any of the above governmental agencies, companies, or departments.

_____
(SELLER, BUILDER)

_____
(BUYER, OWNER)

_____
(BUYER, OWNER)

EXHIBIT "E"

BASS HOMES INC, 34661 STATE HWY 59 SOUTH STAPLETON, AL 36578

BUYER(S)GREG E. WIGGINS
BUYER(S) AGREE TO THE FOLLOWING TERMS, DISCLOSURE NOTICES AND COST ADDENDUMS TO BE
ADDED TO THE TOTAL PRICE OF THIS CONTRACT (COST WHEN APPLICABLE) TO THE UNDERSIGNED
BUYER(S).

1. ANY ENGINEERING COST OF BUYER(S) PLANS IS REQUIRED BY MORTGAGE LENDER, BUILDING
   DEPARTMENTS OR ANY TYPE OF AGENCY THAT CAN ENFORCE SAID REQUIREMENT THEREOF.

2. IF BUYER(S) COMMENCES WITH ANY IMPROVEMENTS, PERFORM ANY TYPE OF WORK ON HOME
   DESCRIBED IN THIS CONTRACT OR HIRE ANY WORK TO BE PERFORMED BY OTHERS IN THE ACTUAL
   HOME DESCRIBED IN THIS CONTRACT INCLUDING ADDING ON TO THE STRUCTURE OF THIS HOME,
   PRIOR TO PAYING THE FINAL PAYMENT OF THIS CONTRACT TO BASS HOMES INC, TOGETHER WITH
   SIGNING THE "COMPLETION OF OWNERS ACCEPTANCE", THEN IT IS AGREED THAT BUYER(S) SHALL
   PAY BASS HOMES INC. THE SUM OF $5,000.00 ADDITIONAL COST ABOVE THE TOTAL PRICE IN THIS
   CONTRACT AT TIME OF FINAL PAYMENT.

3. RECESSED LIGHTS ARE NOT INCLUDED IN THE REDWOOD MODEL OR ANY OTHER HOME PLANS
   UNLESS ADDED TO COST BREAKDOWN AND LISTED ON EXHIBIT "C" OF THIS CONTRACT.

4. BUYERS CANNOT PROVIDE ANY LIGHT FIXTURES, PLUMBING FIXTURES OR ANY OTHER TYPE OF
   GOODS IN CONNECTION WITH THIS CONTRACT.
   ALL OF THE ABOVE SHALL BE STANDARD FIXTURES FROM BASS HOME INC.

5. GRINDER PUMPS WHEN APPLICABLE FOR SEWER WILL NOT BE CONNECTED BY THE SELLER.
   BUYERS TO PAY FOR THE ELECTRICAL AND PLUMBING CONNECTIONS.

6. ELECTRICAL WIRING FOR PUMPS AND WELLS WHEN APPLICABLE ARE NOT INCLUDED IN TOTAL
   PRICE.

7. CONCRETE SLABS UNDER BEACH HOMES ON PILINGS WILL NOT BE WARRANTED AGAINST SLIGHT
   PUDDLES OF WATER AFTER RAINS DUE TO THE NATURE OF A SLAB FINISH. SLABS UNDER PILING
   HOMES WILL NOT INCLUDE PORCH OR DECK AREAS.

8. BUYER(S) LOT SLOPE WILL BE ASSESSED FOR SLOPE THAT MAY EXCEED THE REQUIREMENTS OF
   THIS CONTRACT ON EXHIBIT "A" AT TIME OF COMMENCEMENT OF CONSTRUCTION OF
   FOUNDATION.

9. FIREPLACE MANTLES WILL NOT BE INCLUDED ON ANY HOMES AS A STANDARD ITEM IN ANY HOME.
   SELLER WILL INSTALL A 2" X 4" SUPPORT AT MANTLE HEIGHT FOR BUYER(S) TO INSTALL A MANTLE
   AFTER COMPLETION OF HOME.

10. BUYER(S) ARE RESPONSIBLE FOR CAULKING DOOR THRESH-HOLDS AS NEEDED BUT NOT LESS THAN
    EACH AND EVERY ANNIVERSARY DATE OF ORIGINAL CONSTRUCTION COMPLETION OF HOME.
    BUYERS ARE RESPONSIBLE FOR THE ANNUAL INSPECTION OF FIREPLACE FLASHING AND
    CAULKING. BUYERS ARE RESPONSIBLE FOR CHECKING AND CAULKING EXTERIOR OF WINDOWS
    ANNUALLY.

11. BASS HOMES INC. WILL NOT WARRANT THE PERFORMANCE OF HEATING AND COOLING IN ONE AND
    ONE HALF STORY HOMES THAT DO NOT HAVE AN UPSTAIRS SEPARATE UNIT. THE UPSTAIRS WILL
    HAVE A TENDENCY TO MAINTAIN SEVERAL DEGREES DIFFERENCE IN TEMPERATURE WHICH IS
    STANDARD TO THE CONSTRUCTION INDUSTRY.

12. BUYER(S) AND SELLER AGREE THAT THERE ARE NO OTHER PROMISES OTHER THAN THAT WHICH
    IS WRITTEN IN THIS CONTRACT. THIS MEANS INCLUDING ANY VERBAL PROMISES THAT BUYER(S)
    MAY CLAIM THAT A SALES AGENT OR BASS HOMES INC. EMPLOYEE OR REPRESENTATIVE COULD
    HAVE IMPLIED OR PROMISED HE OR SHE.

13. BUYERS HEREBY AGREE THAT BASS HOMES INC. WILL NOT ACCEPT ANY LIABILITY OF BUYERS
    COST OF UTILITY BILLS DURING CONSTRUCTION OF HOME OR AFTER BUYER(S) TAKES OCCUPANCY
    OF THIS HOME DESCRIBED HEREIN. THIS INCLUDES ANY COMPLAINT BUYER(S) MAY ASSERT OF
    INFLATED POWER BILL'S OR ANY TYPE OF OTHER UTILITY.

BUYER(S) _Greg E. Wiggins_

BUYER(S) _____

DECEMBER 9TH, 2008
DATE

Exhibit " F "

RE: GREG E. WIGGINS
COMPLETION CERTIFICATE AND OWNER'S ACCEPTANCE ;
LIMITED ONE-YEAR WRITTEN WARRANTY

The undersigned, owner (whether one or more) of the real property described in their contract with BASS HOMES, INC. ("Contractor") dated : DECEMBER 9TH, 2008  hereby acknowledge and certify as follows:

1. All materials and labor provided for in said contract have been furnished and installed by the Contractor or his subcontractors on our said real property in a good and workmanlike manner; that we have made a full and complete inspection of the same; that all construction and other work called for in said contract has been satisfactorily completed; that the home is fit, suitable and habitable; and the improvements are hereby accepted by us as built.

2. Contractor did not manufacture any materials used in the construction of this home; that the Contractor does not warrant any of the said materials against any defects in QUALITY, FITNESS or MERCHANTABILITY; that the Contractor will make good only on the workmanship of the actual construction of home; and that any and all claims related to the materials used in construction shall be pursued by customers ONLY against the manufacturers of any materials provided to the Contractor.

3. Contractor hereby gives  a limited warranty on the home located at WELL RD DAMASCAS AL. for a period of one ( 1 ) year following closing or occupancy by the Buyer(s), whichever event occurs first.

4. Contractor warrants the home to be free from latent defects for a period of one ( 1 ) year following closing or occupancy, whichever event occurs first.

5. THIS WARRANTY IS GIVEN IN LIEU OF ANY AND ALL OTHER WARRANTIES, EITHER EXPRESSED OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, HABITABILITY AND /OR WORKMANSHIP.

6. Contractor shall not be liable under the parties' contract or this warranty unless written notice of the latent defect(s) shall have been given by Buyer(s) to Contractor within the (1) year warranty. Steps taken by the Contractor to correct any defect(s) shall not act to extend the warranty period described hereunder.

7. Buyers confirm that they have performed a walk-thru inspection prior to signing the Completion Certificate and Owners Acceptance; Limited One-Year Written Warranty. Further Buyer(s) agree that their signatures below signify that they have accepted the  construction of the home and waive any further right to complain of cosmetic deficiencies and the quality of workmanship or any other matter that does not constitute a latent defect.

8. Any and all remedies of the Buyer(s) and any liability of the Contractor shall be governed strictly by the terms of this one-year limited warranty. Neither the Contractor nor its assigns shall be liable for any incidental or consequential damages, under no circumstances may the Buyer(s) recover damages in excess of the amount of  the subject building construction contract.

9. Any reference to the singular herein shall also encompass the plural where appropriate; and any reference to the plural shall also encompass the singular where appropriate.

BUYER(S) INITIALS OF RECEIPT OF THIS DOCUMENT BEFORE CONSTRUCTION OF HOME:
BUYER: _____        BUYER: _____

DATE: _____        BUYER: XXXXXXXXXXXXXX _____

DATE: _____        BUYER: XXXXXXXXXXXXXX _____

Witness: _____        DATE: _____

# EXHIBIT "D"

Case 2:09-md-02047-EEF-MBN Document 20004 Filed 05/26/15 Page 112 of 158
Case 13-1052 sr Doc 314 Filed 11/20/14 Entered 11/20/14 12:15:22 Desc
Exhibit D Page 2 of 15
Case 2:09-md-02047-EEF-JCW Document 18022-2 Filed 09/19/14 Page 1 of 2

AO 441 (Rev. 07/10) Summons on Third-Party Complaint

# UNITED STATES DISTRICT COURT

for the

Eastern District of Louisiana

| | | |
|---|---|---|
| Braxton H. Collins, et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. MDL No.: 2047; Case No.: 13-6652 |
| Ace Home Center, Inc. | ) | |
| *Defendant, Third-party plaintiff* | ) | |
| v. | ) | |
| Devon International Industries, Inc. | ) | |
| *Third-party defendant* | ) | |

## SUMMONS ON A THIRD-PARTY COMPLAINT

To: *(Third-party defendant's name and address)*    Devon International Industries, Inc.
1100 First Avenue
Suite 100
King of Prussia, PA 19406

A lawsuit has been filed against defendant    Ace Home Center, Inc.    , who as third-party plaintiff is making this claim against you to pay part or all of what the defendant may owe to the plaintiff    Braxton and Kerrie Collins    .

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff and on the defendant an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the defendant or defendant's attorney, whose name and address are:

Danny J. Collier, Jr., Esq., Luther, Collier, Hodges & Cash LLP, Post Office Box 1002, Mobile, Alabama 36633

It must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Stephen W. Mullins, Esq., Luckey & Mullins, PLLC, Post Office Box 990, Ocean Springs, Mississippi 39566

If you fail to respond, judgment by default will be entered against you for the relief demanded in the third-party complaint. You also must file the answer or motion with the court and serve it on any other parties.

A copy of the plaintiff's complaint is also attached. You may – but are not required to – respond to it.

Date: _____

*CLERK OF COURT*

_____
*Signature of Clerk or Deputy Clerk*

Case 2:09-md-02047-EEF-MBN Document 20004 Filed 05/26/16 Page 113 of 158
Case 13-10582-sr Doc 314 Filed 11/20/14 Entered 11/20/14 12:13:22 Desc
Exhibit D    Page 3 of 15
Case 2:09-md-02047-EEF-JCW   Document 18022-2   Filed 09/19/14   Page 2 of 2

AO 441 (Rev. 07/10)  Summons on Third-Party Complaint (Page 2)

Civil Action No.  MDL No.: 2047; Case No.: 13-6652

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*   Devon International Industries, Inc.

was received by me on *(date)*        09/19/2014        .

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☑ Other *(specify)*:  Certified Mail _____
_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: *19 Sept 2014*

_____
*Server's signature*

Danny J. Collier, Jr./Attorney
*Printed name and title*
Luther, Collier, Hodges & Cash LLP
Post Office Box 1002
Mobile, Alabama 36633
(251) 694-9393
*Server's address*

Additional information regarding attempted service, etc:

Case 2:09-md-02047-EEF-MBN Document 20004-1 Filed 05/26/16 Page 114 of 158
Case 2:09-md-02047-EEF-MBN Document 18022-1 Filed 11/20/14 Page 4 of 15
Exhibit D Page 4 of 15
Case 2:09-md-02047-EEF-JCW Document 18022 Filed 09/19/14 Page 1 of 12

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | : | |
| DRYWALL PRODUCTS LIABILITY | : | MDL NO.: 2047 |
| LITIGATION | : | |
| | : | SECTION: L |
| **This Document Relates To:** | : | JUDGE FALLON |
| | : | MAG. JUDGE WILKINSON |
| **Braxton H. Collins, et al. vs. Bass Homes, Inc.,** | : | |
| **et al.; S.D. Mississippi, C.A. No. 1:13-00297** | : | **Case No.: 13-6652** |

---

### FIRST AMENDED THIRD-PARTY COMPLAINT

---

COMES NOW, ACE HOME CENTER, INC., Defendant and Third-Party Plaintiff, and

hereby files this First Amended Third-Party Complaint adding DEVON INTERNATIONAL

INDUSTRIES, INC., f/k/a DEVON INTERNATIONAL TRADING, INC., a/k/a DEVON

BUILDING PRODUCTS, TAISHAN GYPSUM CO. LTD., and fictitious Third-Party

Defendants F through O, as follows:

### PARTIES

1.    Defendant/Third-Party Plaintiff Ace Home Center, Inc. ("AHC"), is a corporation

organized and existing under the laws of the State of Alabama.

2.    Third-Party Defendant Pate Stevedore Company, Inc. ("Pate"), is a corporation

organized and existing under the laws of the State of Florida.  Upon information and belief, Pate

offloaded, stored, delivered, imported, shipped, purchased, sold, marketed, warranted, tested,

inspected, advertised, surveyed and/or supplied the Chinese drywall at issue herein.

3.    Third-Party Defendant Pensacola Stevedore Company, Inc. ("PSC"), is a

corporation organized and existing under the laws of the State of Florida.  Upon information and

belief, PSC offloaded, stored, delivered, imported, shipped, purchased, sold, marketed,

Case 2:09-md-02047-EEF-MBN Document 20004 Filed 05/26/16 Page 115 of 158
Exhibit D    Page 5 of 15
Case 2:09-md-02047-EEF-JCW    Document 18022    Filed 09/19/14    Page 2 of 12

warranted, tested, inspected, advertised, surveyed and/or supplied the Chinese drywall at issue herein.

4.      Third-Party Defendant Fireman's Fund Insurance Company ("FFIC") is a corporation organized and existing under the laws of the State of California.  Upon information and belief, FFIC controlled, took possession of and/or title to, offloaded, stored, delivered, imported, shipped, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed, and/or supplied the Chinese drywall at issue herein; and/or acted as agent or fiduciary for its insured, Devon International Industries, Inc. f/k/a Devon International Trading, Inc., a/k/a Devon Building Products concerning the Chinese drywall at issue herein.

5.      Third-Party Defendant Devon International Industries, Inc., f/k/a Devon International Trading, Inc., a/k/a Devon Building Products ("Devon") is a corporation organized and existing under the laws of the State of Pennsylvania. Upon information and belief, Devon specified, ordered, shipped, imported, controlled, took possession of and/or title to, offloaded, stored, delivered, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed, and/or supplied the Chinese drywall at issue herein.

6.      Third-Party Defendant Taishan Gypsum Co. Ltd. ("Taishan") is a Chinese corporation organized and existing under the laws of the People's Republic of China. Upon information and belief, Taishan designed, processed, produced, manufactured, fabricated, exported, shipped, distributed, delivered, supplied, inspected, tested, warranted, marketed, sold and/or placed within the stream of commerce the Chinese drywall at issue herein.

7.      Fictitious Third-Party Defendants A, B, C, D and E, whose identities and true names are unknown and who will be identified through discovery, controlled, took possession of and/or title to, offloaded, stored, delivered, imported, shipped, purchased, sold, marketed,

Case 2:09-md-02047-EEF-MBN Document 20004 Filed 05/26/15 Page 116 of 158
Case 2:09-md-02047-JCW Doc 314 Filed 11/20/14 Entered 11/20/14 12:13:22 Desc
Exhibit D Page 6 of 15
Case 2:09-md-02047-EEF-JCW Document 18022 Filed 09/19/14 Page 3 of 12

warranted, tested, inspected, advertised, surveyed, and/or supplied the Chinese drywall at issue herein.

8.     Fictitious Third-Party Defendants F, G, H, I and J, whose identities and true names are unknown and who will be identified through discovery, specified, ordered, shipped, imported, controlled, took possession of and/or title to, offloaded, stored, delivered, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed, and/or supplied the Chinese drywall at issue herein.

9.     Fictitious Third-Party Defendants K, L, M, N and O, whose identities and true names are unknown and who will be identified through discovery, designed, processed, produced, manufactured, fabricated, exported, shipped, distributed, delivered, supplied, inspected, tested, warranted, marketed, sold and/or placed within the stream of commerce the Chinese drywall at issue herein.

## FACTUAL ALLEGATIONS

10.     Taishan and Fictitious Third-Party Defendants K through O manufactured, produced and placed within the stream of commerce the Chinese drywall ("CDW") at issue herein.

11.     Devon and Fictitious Third-Party Defendants F through J specified, ordered, shipped, imported, marketed and/or sold the CDW at issue herein.

12.     Devon made a claim against its FFIC insurance policy for physical damage to the CDW cargo during shipment.

13.     FFIC took title to the CDW following Devon's cargo damage claim.  Alternately, FFIC exercised control over the CDW.  Alternately, FFIC acted as agent or fiduciary for Devon to mitigate the cargo damage claim.

Case 2:09-md-02047-EEF-MBN   Document 20004   Filed 05/26/15   Page 117 of 158
Case 13-10582-sr   Doc 314   Filed 11/20/14   Entered 11/20/14 12:15:22   Desc
Exhibit D   Page 7 of 15
Case 2:09-md-02047-EEF-JCW   Document 18022   Filed 09/19/14   Page 4 of 12

14.     Devon and/or FFIC sold the "Devon Building Products" CDW to Pate and/or PSC.

15.     Taishan, Devon, FFIC, Pate, PSC and Fictitious Third-Party Defendants A through O put the CDW into the stream of commerce, to be purchased by AHC and, ultimately, by AHC customers.

16.     AHC purchased some of the CDW from Pate and/or PSC.

17.     On October 3, 2013, Plaintiffs Braxton and Kerrie Collins filed an Amended Complaint against AHC (attached as Exhibit A).

18.     Plaintiffs Braxton and Kerrie Collins' claims against AHC arise from the 2008 construction of a house located at 10720 Hwy 614 Moss Point, Mississippi.

19.     The house was allegedly constructed with CDW purchased from AHC.

20.     If true, Taishan, Devon, FFIC, Pate, PSC and/or Fictitious Third-Party Defendants A through O are liable to AHC for the CDW ultimately used to construct the Collins' house.

## COUNT I

## COMMON LAW OR EQUITABLE INDEMNITY

21.     AHC adopts and incorporates the allegations of paragraphs 1 through 20 as though fully set forth herein.

22.     AHC was without fault in the purchase and sale of the CDW. Any liability it may incur to the plaintiffs will be merely vicarious, constructive, derivative or technical in nature.

23.     Taishan and/or Fictitious Third-Party Defendants K through O designed, manufactured, fabricated, marketed, sold and placed into the stream of commerce CDW which the plaintiffs claim was unreasonably dangerous in its normal use in that it emitted noxious gases

Case 2:09-md-02047-EEF-MBN   Document 19200-4   Filed 05/26/15   Page 118 of 158
Case 2:09-md-02047-EEF-JCW   Doc 3E-4   Filed 11/20/14   Entered 11/20/14 12:15:22   Desc
Exhibit D   Page 8 of 15
Case 2:09-md-02047-EEF-JCW   Document 18022   Filed 09/19/14   Page 5 of 12

and caused damage to person and property.

24.     Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O failed to act with due diligence in representing that the CDW met certain ASTM standards; and provided stamping and labeling on the CDW sheets and packaging that falsely represented to the United States purchasers that the CDW met U.S. safety standards, that the CDW was safe and fit for its intended use and that the CDW was equivalent to or exceeded the quality of U.S. drywall.

25.     Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O made material misrepresentations relied upon by AHC and which caused AHC damages.

26.     Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O failed to act with due diligence or reasonable care in placing the CDW into the stream of commerce by failing to test or otherwise ensure the product would safely perform as represented and intended.

27.     Pate, PSC, FFIC, Devon, Taishan and/or Fictitious Third-Party Defendants A through O knew or should have known of alleged defects or dangers in the CDW supplied to AHC at issue herein.

28.     Pate, PSC, FFIC, Devon, Taishan and/or Fictitious Third-Party Defendants A through O failed to warn AHC of alleged defects or dangers in the CDW supplied to AHC at issue herein.

29.     In the event that AHC is determined to be liable to the plaintiffs, said liability will be a proximate result of the active negligence of Pate, PSC, FFIC, Devon, Taishan and/or Fictitious Third-Party Defendants A through O, while the negligence of AHC, if any, was at most passive in nature.

Case 2:09-md-02047-EEF-MBN Document 20004-1 Filed 11/20/14 Page 119 of 158
Case 13-10582-srr Doc 314 Filed 11/20/14 Entered 11/20/14 12:13:22 Desc
Exhibit D Page 9 of 15
Case 2:09-md-02047-EEF-JCW Document 18022 Filed 09/19/14 Page 6 of 12

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd., and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

## COUNT II

## BREACH OF CONTRACT

30.     AHC adopts and incorporates the allegations of paragraphs 1 through 29 as though fully set forth herein.

31.     By virtue of the sale of defective CDW to ACH, Pate, PSC, FFIC, Devon, Taishan and/or Fictitious Third-Party Defendants A through O breached contract(s) and caused damages to AHC, directly or as third-party beneficiary, to include damages for attorney's fees, costs and any liability it may incur to the plaintiffs herein.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd., and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

## COUNT III

## NEGLIGENCE AND GROSS NEGLIGENCE

32.     AHC adopts and incorporates the allegations of paragraphs 1 through 31 as though fully set forth herein.

33.     Taishan and/or Fictitious Third-Party Defendants K through O designed,

---

Case 2:09-md-02047-EEF-MBN   Document 19200-4   Filed 05/26/15   Page 120 of 158
Case 2:09-md-02047-EEF-JCW   Document 18022   Filed 09/19/14   Page 7 of 12
Exhibit D    Page 10 of 15

manufactured, fabricated, marketed, sold and placed into the stream of commerce CDW which the plaintiffs claim was unreasonably dangerous in its normal use in that it emitted noxious gases and caused damage to person and property.

34.    Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O failed to act with due diligence in representing that the CDW met certain ASTM standards; and provided stamping and labeling on the CDW sheets and packaging that falsely represented to the United States purchasers that the CDW met U.S. safety standards, that the CDW was safe and fit for its intended use and that the CDW was equivalent to or exceeded the quality of U.S. drywall.

35.    Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O made material misrepresentations relied upon by AHC and which caused AHC damages.

36.    Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O failed to act with due diligence or reasonable care in placing the CDW into the stream of commerce by failing to test or otherwise ensure the product would safely perform as represented and intended.

37.    Pate, PSC, FFIC, Devon, Taishan and/or Fictitious Third-Party Defendants A through O knew or should have known of alleged defects or dangers in the CDW supplied to AHC at issue herein.

38.    Pate, PSC, FFIC, Devon, Taishan and/or Fictitious Third-Party Defendants A through O failed to warn AHC of alleged defects or dangers in the CDW supplied to AHC at issue herein.

39.    Pate, PSC, FFIC, Devon, Taishan and/or Fictitious Third-Party Defendants A through O owed a duty of reasonable care and due diligence in designing, processing, producing, manufacturing, fabricating, exporting, shipping, distributing, delivering, supplying, inspecting,

Case 2:09-md-02047-EEF-MBN Document 20004 Entered 05/26/15 Page 121 of 158
Case 13-10589-sr Doc 314 Filed 12/20/14 Entered 12/20/14 12:15:22 Desc
Exhibit D Page 11 of 15
Case 2:09-md-02047-EEF-JCW Document 18022 Filed 09/19/14 Page 8 of 12

testing, warranting, marketing, specifying, taking possession of, control over and/or title to, offloading, storing, importing, purchasing, advertising, surveying, selling and/or placing within the stream of commerce the CDW at issue herein.

     40.    Third-Party Defendants negligently, recklessly and/or wantonly breached their duty to AHC.

     41.    As a proximate result of the Third-Party Defendants' breach of duty to AHC, AHC has suffered and will continue to suffer damages including attorney's fees, costs and any liability it may incur to the plaintiffs herein.

     WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd., and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

## COUNT IV

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

     42.    AHC adopts and incorporates the allegations of paragraphs 1 through 41 as though fully set forth herein.

     43.    In supplying and/or selling the CDW, the Third-Party Defendants impliedly warranted the merchantability of the product and its fitness for its intended purposes.

     44.    To the extent AHC incurs any liability to the plaintiffs such liability will have been a proximate result of the Third-Party Defendants' breach of the implied warranty of merchantability.

     45.    AHC has incurred and will continue to incur attorney's fees and costs and any

Case 2:09-md-02047-EEF-MBN Document 20004-1 Filed 12/20/14 Page 122 of 158
Exhibit D Page 12 of 15
Case 2:09-md-02047-EEF-JCW Document 18022 Filed 09/19/14 Page 9 of 12

liability it may incur to the plaintiffs herein.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd., and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

<p align="center">**COUNT V**</p>

<p align="center">**BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**</p>

46. AHC adopts and incorporates the allegations of paragraphs 1 through 45 as though fully set forth herein.

47. In supplying and/or selling the CDW, the Third-Party Defendants impliedly warranted its fitness for a particular purpose.

48. To the extent AHC incurs any liability to the plaintiffs such liability will have been a proximate result of the Third-Party Defendants' breach of the implied warranty of fitness for a particular purpose.

49. AHC has incurred and will continue to incur attorney's fees and costs and any liability it may incur to the plaintiffs herein.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd., and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

Case 2:09-md-02047-EEF-MBN Document 20004 Filed 05/26/15 Page 123 of 158
Case 13-10582-sr Doc 31-4 Filed 11/20/14 Entered 11/20/14 12:15:22 Desc
Exhibit D Page 13 of 15
Case 2:09-md-02047-EEF-JCW Document 18022 Filed 09/19/14 Page 10 of 12

## COUNT VI

## BREACH OF EXPRESS WARRANTY

50.     AHC adopts and incorporates the allegations of paragraphs 1 through 49 as though fully set forth herein.

51.     Third-Party Defendants expressly affirmed that the product was Gypsum Drywall with specifications identical to Georgia-Pacific Gypsum Drywall, an express warranty under the law. Alternately, Third-Party Defendants expressly affirmed that the CDW met certain ASTM standards. Alternately, Third-Party Defendants expressly affirmed that the CDW met or exceeded U.S. safety standards and/or that the CDW was equivalent to or exceeded the quality of U.S. drywall.

52.     In the event AHC is found liable to the plaintiffs, such liability will have been the proximate result of the Third-Party Defendants' breach of express warranty. The Third-Party Defendants' breach of warranty has damaged and will continue to damage AHC by virtue of attorney's fees, costs and any liability it may incur to the plaintiffs.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd., and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd., and

Case 2:09-md-02047-EEF-MBN  Document 19200-4  Filed 05/26/15  Page 124 of 158
Case 13-10582-sr  Doc 314  Filed 11/20/14  Entered 11/20/14 12:15:21  Desc
Exhibit D  Page 14 of 15
Case 2:09-md-02047-EEF-JCW  Document 18022  Filed 09/19/14  Page 11 of 12

fictitious Third-Party Defendants A through O in an amount equal to any judgment entered against Ace Home Center, Inc., and/or in the amount of any settlement entered into with the plaintiffs to resolve the subject litigation, plus attorney's fees and costs.  Ace Home Center, Inc., prays for such other and further relief that this Honorable Court deems just and proper.

**THIRD-PARTY PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**

Respectfully submitted,

*/ s / Danny J. Collier, Jr.*

Danny J. Collier, Jr., Esq.
E. Barrett Hails, Esq.
Attorneys for Ace Home Center, Inc.

OF COUNSEL:

LUTHER, COLLIER, HODGES & CASH LLP
Post Office Box 1002
Mobile, Alabama 36633
(251) 694-9393 Office
(251) 694-9392 Fax
dcollier@lchclaw.com
bhails@lchclaw.com

**SERVE BY CERTIFIED MAIL:**

Devon International Industries, Inc.
1100 First Avenue
Suite 100
King of Prussia, PA 19406

Taishan Gypsum Co. Ltd.
c/o Richard C. Stanley, Esq.
Thomas P. Owen, Jr., Esq.
Stanley, Reuter, Ross, Thornton & Alford, LLC
909 Poydras Street
Suite 2500
New Orleans, Louisiana 70112

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing First Amended Third-Party Complaint has been served on Plaintiffs' Liaison Counsel, Russ Herman and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand-delivery upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that

Case No.: 13-6652
Our File No.: 13-053
Page **11** of 12

Case 2:09-md-02047-EEF-MBN Document 20004 Filed 05/26/15 Page 125 of 158
Case 13-10582-sr Doc 314 Filed 11/20/14 Entered 11/20/14 12:15:22 Desc
Exhibit D Page 15 of 15
Case 2:09-md-02047-EEF-JCW Document 18022 Filed 09/19/14 Page 12 of 12

the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 19th day of September, 2014.

Stephen W. Mullins, Esq.
Luckey & Mullins, PLLC
Post Office Box 990
Ocean Springs, MS 39566
smullins@luckeyandmullins.com

David C. Coons, Esq.
Christopher A. D'Amour, Esq.
Adams and Reese LLP
4500 One Shell Square
New Orleans, LA 70139
david.coons@arlaw.com
chris.damour@arlaw.com

Heather M. Houston, Esq.
Caroline Pryor, Esq.
Carr Allison
6251 Monroe Street
Suite 200
Daphne, Alabama 36526
hhouston@carrallison.com
cpryor@carrallison.com

S. Wesley Pipes, Esq.
Pipes Hudson & Watts, LLP
Post Office Box 989
Mobile, Alabama 36601
wesley@pipeshudsonwatts.com

Gary J. Russo, Esq.
Jones Walker LLP
600 Jefferson Street
Suite 1600
Lafayette, LA 70501
grusso@joneswalker.com

Richard C. Stanley, Esq.
Thomas P. Owen, Jr., Esq.
Stanley, Reuter, Ross, Thornton & Alford, LLC
909 Poydras Street
Suite 2500
New Orleans, Louisiana 70112
rcs@stanleyreuter.com
tpo@stanleyreuter.com

Joe Cyr, Esq.
Frank T. Spano, Esq.
Courtney L. Colligan, Esq.
Hogan Lovells US LLP
875 Third Avenue
New York, New York 10022
Joe.cyr@hoganlovells.com
Frank.spano@hoganlovells.com
Courtney.colligan@hoganlovells.com

/ s / *Danny J. Collier, Jr.*

_____

OF COUNSEL

# EXHIBIT "E"

Case 2:09-md-02047-EEF-MBN  Document 19000-4  Filed 05/26/15  Page 127 of 158
Case 13-10582-sr  Doc 315  Filed 11/20/14  Entered 11/20/14 12:15:22  Desc
Exhibit E  Page 2 of 15
Case 2:09-md-02047-EEF-JCW  Document 18023-2  Filed 09/19/14  Page 1 of 2

AO 441 (Rev. 07/10)  Summons on Third-Party Complaint

# UNITED STATES DISTRICT COURT

### for the
Eastern District of Louisiana

| | | |
|---|---|---|
| Jason S. Herrington, et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action  No.  MDL No.: 2047; Case No.: 13-6653 |
| Ace Home Center, Inc. | ) | |
| *Defendant, Third-party plaintiff* | ) | |
| v. | ) | |
| Devon International Industries, Inc. | ) | |
| *Third-party defendant* | ) | |

### SUMMONS ON A THIRD-PARTY COMPLAINT

To: *(Third-party defendant's name and address)*    Devon International Industries, Inc.
1100 First Avenue
Suite 100
King of Prussia, PA 19406

A lawsuit has been filed against defendant   Ace Home Center, Inc.   , who as third-party plaintiff is making this claim against you to pay part or all of what the defendant may owe to the plaintiff   Jason and Cassie Herrington   .

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff and on the defendant an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the defendant or defendant's attorney, whose name and address are:

Danny J. Collier, Jr., Esq., Luther, Collier, Hodges & Cash LLP, Post Office Box 1002, Mobile, Alabama 36633

It must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Stephen W. Mullins, Esq., Luckey & Mullins, PLLC, Post Office Box 990, Ocean Springs, Mississippi 39566

If you fail to respond, judgment by default will be entered against you for the relief demanded in the third-party complaint.  You also must file the answer or motion with the court and serve it on any other parties.

A copy of the plaintiff's complaint is also attached.  You may – but are not required to – respond to it.

Date:  _____

*CLERK OF COURT*

_____
*Signature of Clerk or Deputy Clerk*

AO 441 (Rev. 07/10)  Summons on Third-Party Complaint (Page 2)

Civil Action No.  MDL No.: 2047; Case No.: 13-6653

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*  Devon International Industries, Inc.

was received by me on *(date)* _____ 09/19/2014 _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☑ Other *(specify):*  Certified Mail

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ 0.00 _____ .

I declare under penalty of perjury that this information is true.

Date: *19 Sept 2014*

_____
*Server's signature*

Danny J. Collier, Jr./Attorney
*Printed name and title*
Luther, Collier, Hodges & Cash LLP
Post Office Box 1002
Mobile, Alabama 36633
(251) 694-9393
*Server's address*

Additional information regarding attempted service, etc:

Case 2:09-md-02047-EEF-MBN Document 20004-1 Filed 11/20/14 Page 129 of 158
Case 2:13-cv-10562-SF Doc 31-5 Filed 11/20/14 Entered 11/20/14 12:15:22 Desc
Exhibit E Page 4 of 15
Case 2:09-md-02047-EEF-JCW Document 18023 Filed 09/19/14 Page 1 of 12

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | : : : | MDL NO.: 2047 |
| | : | SECTION: L |
| **This Document Relates To:** | : : | JUDGE FALLON MAG. JUDGE WILKINSON |
| Jason S. Herrington, et al. vs. Bass Homes, Inc., et al.; S.D. Mississippi, C.A. No. 1:13-00297 | : : | **Case No.: 13-6653** |

---

### FIRST AMENDED THIRD-PARTY COMPLAINT

---

COMES NOW, ACE HOME CENTER, INC., Defendant and Third-Party Plaintiff, and hereby files this First Amended Third-Party Complaint adding DEVON INTERNATIONAL INDUSTRIES, INC., f/k/a DEVON INTERNATIONAL TRADING, INC., a/k/a DEVON BUILDING PRODUCTS, TAISHAN GYPSUM CO. LTD., and fictitious Third-Party Defendants F through O, as follows:

#### PARTIES

1. Defendant/Third-Party Plaintiff Ace Home Center, Inc. ("AHC"), is a corporation organized and existing under the laws of the State of Alabama.

2. Third-Party Defendant Pate Stevedore Company, Inc. ("Pate"), is a corporation organized and existing under the laws of the State of Florida. Upon information and belief, Pate offloaded, stored, delivered, imported, shipped, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed and/or supplied the Chinese drywall at issue herein.

3. Third-Party Defendant Pensacola Stevedore Company, Inc. ("PSC"), is a corporation organized and existing under the laws of the State of Florida. Upon information and belief, PSC offloaded, stored, delivered, imported, shipped, purchased, sold, marketed,

warranted, tested, inspected, advertised, surveyed and/or supplied the Chinese drywall at issue herein.

    4.      Third-Party Defendant Fireman's Fund Insurance Company ("FFIC") is a corporation organized and existing under the laws of the State of California. Upon information and belief, FFIC controlled, took possession of and/or title to, offloaded, stored, delivered, imported, shipped, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed, and/or supplied the Chinese drywall at issue herein; and/or acted as agent or fiduciary for its insured, Devon International Industries, Inc. f/k/a Devon International Trading, Inc., a/k/a Devon Building Products concerning the Chinese drywall at issue herein.

    5.      Third-Party Defendant Devon International Industries, Inc., f/k/a Devon International Trading, Inc., a/k/a Devon Building Products ("Devon") is a corporation organized and existing under the laws of the State of Pennsylvania. Upon information and belief, Devon specified, ordered, shipped, imported, controlled, took possession of and/or title to, offloaded, stored, delivered, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed, and/or supplied the Chinese drywall at issue herein.

    6.      Third-Party Defendant Taishan Gypsum Co. Ltd. ("Taishan") is a Chinese corporation organized and existing under the laws of the People's Republic of China. Upon information and belief, Taishan designed, processed, produced, manufactured, fabricated, exported, shipped, distributed, delivered, supplied, inspected, tested, warranted, marketed, sold and/or placed within the stream of commerce the Chinese drywall at issue herein.

    7.      Fictitious Third-Party Defendants A, B, C, D and E, whose identities and true names are unknown and who will be identified through discovery, controlled, took possession of and/or title to, offloaded, stored, delivered, imported, shipped, purchased, sold, marketed,

Case 2:09-md-02047-EEF-MBN   Document 20004   Filed 11/20/14   Page 131 of 158
Case 2:13-cv-06652-srr   Doc 3E-5   Filed 11/20/14   Entered 11/20/14 12:15:22   Desc
Exhibit E   Page 6 of 15
Case 2:09-md-02047-EEF-JCW   Document 18023   Filed 09/19/14   Page 3 of 12

warranted, tested, inspected, advertised, surveyed, and/or supplied the Chinese drywall at issue herein.

     8.     Fictitious Third-Party Defendants F, G, H, I and J, whose identities and true names are unknown and who will be identified through discovery, specified, ordered, shipped, imported, controlled, took possession of and/or title to, offloaded, stored, delivered, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed, and/or supplied the Chinese drywall at issue herein.

     9.     Fictitious Third-Party Defendants K, L, M, N and O, whose identities and true names are unknown and who will be identified through discovery, designed, processed, produced, manufactured, fabricated, exported, shipped, distributed, delivered, supplied, inspected, tested, warranted, marketed, sold and/or placed within the stream of commerce the Chinese drywall at issue herein.

## FACTUAL ALLEGATIONS

     10.     Taishan and Fictitious Third-Party Defendants K through O manufactured, produced and placed within the stream of commerce the Chinese drywall ("CDW") at issue herein.

     11.     Devon and Fictitious Third-Party Defendants F through J specified, ordered, shipped, imported, marketed and/or sold the CDW at issue herein.

     12.     Devon made a claim against its FFIC insurance policy for physical damage to the CDW cargo during shipment.

     13.     FFIC took title to the CDW following Devon's cargo damage claim. Alternately, FFIC exercised control over the CDW. Alternately, FFIC acted as agent or fiduciary for Devon to mitigate the cargo damage claim.

Case 2:09-md-02047-EEF-MBN Document 19200-4 Filed 05/26/15 Page 132 of 158
Case 13-10502-sr Doc 315 Filed 11/20/14 Entered 11/20/14 12:15:22 Desc
Exhibit E    Page 7 of 15
Case 2:09-md-02047-EEF-JCW    Document 18023    Filed 09/19/14    Page 4 of 12

14.     Devon and/or FFIC sold the "Devon Building Products" CDW to Pate and/or PSC.

15.     Taishan, Devon, FFIC, Pate, PSC and Fictitious Third-Party Defendants A through O put the CDW into the stream of commerce, to be purchased by AHC and, ultimately, by AHC customers.

16.     AHC purchased some of the CDW from Pate and/or PSC.

17.     On October 2, 2013, Plaintiffs Jason and Cassie Herrington filed an Amended Complaint against AHC (attached as Exhibit A).

18.     Plaintiffs, Jason and Cassie Herrington's claims against AHC arise from the 2008-2009 construction of a house located at 26975 Old Americus Road, Lucedale, Mississippi.

19.     The house was allegedly constructed with CDW purchased from AHC.

20.     If true, Taishan, Devon, FFIC, Pate, PSC and/or Fictitious Third-Party Defendants A through O are liable to AHC for the CDW ultimately used to construct the Herrington's house.

### COUNT I

### COMMON LAW OR EQUITABLE INDEMNITY

21.     AHC adopts and incorporates the allegations of paragraphs 1 through 20 as though fully set forth herein.

22.     AHC was without fault in the purchase and sale of the CDW. Any liability it may incur to the plaintiffs will be merely vicarious, constructive, derivative or technical in nature.

23.     Taishan and/or Fictitious Third-Party Defendants K through O designed, manufactured, fabricated, marketed, sold and placed into the stream of commerce CDW which the plaintiffs claim was unreasonably dangerous in its normal use in that it emitted noxious gases

Case 2:09-md-02047-EEF-MBN Document 19000-4 Filed 05/26/15 Page 133 of 158
Case 2:13-cv-06652-sr Doc 31-5 Filed 11/20/14 Entered 11/20/14 12:15:22 Desc
Exhibit E Page 8 of 15
Case 2:09-md-02047-EEF-JCW Document 18023 Filed 09/19/14 Page 5 of 12

and caused damage to person and property.

24.     Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O
failed to act with due diligence in representing that the CDW met certain ASTM standards; and
provided stamping and labeling on the CDW sheets and packaging that falsely represented to the
United States purchasers that the CDW met U.S. safety standards, that the CDW was safe and fit
for its intended use and that the CDW was equivalent to or exceeded the quality of U.S. drywall.

25.     Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O
made material misrepresentations relied upon by AHC and which caused AHC damages.

26.     Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O
failed to act with due diligence or reasonable care in placing the CDW into the stream of
commerce by failing to test or otherwise ensure the product would safely perform as represented
and intended.

27.     Pate, PSC, FFIC, Devon, Taishan and/or Fictitious Third-Party Defendants A
through O knew or should have known of alleged defects or dangers in the CDW supplied to
AHC at issue herein.

28.     Pate, PSC, FFIC, Devon, Taishan and/or Fictitious Third-Party Defendants A
through O failed to warn AHC of alleged defects or dangers in the CDW supplied to AHC at
issue herein.

29.     In the event that AHC is determined to be liable to the plaintiffs, said liability will
be a proximate result of the active negligence of Pate, PSC, FFIC, Devon, Taishan and/or
Fictitious Third-Party Defendants A through O, while the negligence of AHC, if any, was at
most passive in nature.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd., and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

## COUNT II

## BREACH OF CONTRACT

30.     AHC adopts and incorporates the allegations of paragraphs 1 through 29 as though fully set forth herein.

31.     By virtue of the sale of defective CDW to ACH, Pate, PSC, FFIC, Devon, Taishan and/or Fictitious Third-Party Defendants A through O breached contract(s) and caused damages to AHC, directly or as third-party beneficiary, to include damages for attorney's fees, costs and any liability it may incur to the plaintiffs herein.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd., and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

## COUNT III

## NEGLIGENCE AND GROSS NEGLIGENCE

32.     AHC adopts and incorporates the allegations of paragraphs 1 through 31 as though fully set forth herein.

33.     Taishan and/or Fictitious Third-Party Defendants K through O designed,

Case 2:09-md-02047-EEF-MBN   Document 20004   Filed 11/20/14   Page 135 of 158
Case 2:13-cv-06653-EEF-MBN   Doc 31-5   Pneu 11/20/14   Entered 11/20/14 12:15:22   Desc
Exhibit E   Page 10 of 15
Case 2:09-md-02047-EEF-JCW   Document 18023   Filed 09/19/14   Page 7 of 12

manufactured, fabricated, marketed, sold and placed into the stream of commerce CDW which the plaintiffs claim was unreasonably dangerous in its normal use in that it emitted noxious gases and caused damage to person and property.

34.    Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O failed to act with due diligence in representing that the CDW met certain ASTM standards; and provided stamping and labeling on the CDW sheets and packaging that falsely represented to the United States purchasers that the CDW met U.S. safety standards, that the CDW was safe and fit for its intended use and that the CDW was equivalent to or exceeded the quality of U.S. drywall.

35.    Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O made material misrepresentations relied upon by AHC and which caused AHC damages.

36.    Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O failed to act with due diligence or reasonable care in placing the CDW into the stream of commerce by failing to test or otherwise ensure the product would safely perform as represented and intended.

37.    Pate, PSC, FFIC, Devon, Taishan and/or Fictitious Third-Party Defendants A through O knew or should have known of alleged defects or dangers in the CDW supplied to AHC at issue herein.

38.    Pate, PSC, FFIC, Devon, Taishan and/or Fictitious Third-Party Defendants A through O failed to warn AHC of alleged defects or dangers in the CDW supplied to AHC at issue herein.

39.    Pate, PSC, FFIC, Devon, Taishan and/or Fictitious Third-Party Defendants A through O owed a duty of reasonable care and due diligence in designing, processing, producing, manufacturing, fabricating, exporting, shipping, distributing, delivering, supplying, inspecting,

Case 2:09-md-02047-EEF-MBN Document 19000-1 Filed 05/26/15 Page 136 of 158
Case 13-10592-sr Doc 31-5 Filed 11/20/14 Entered 11/20/14 12:13:23 Desc
Exhibit E Page 11 of 15
Case 2:09-md-02047-EEF-JCW Document 18023 Filed 09/19/14 Page 8 of 12

testing, warranting, marketing, specifying, taking possession of, control over and/or title to, offloading, storing, importing, purchasing, advertising, surveying, selling and/or placing within the stream of commerce the CDW at issue herein.

40. Third-Party Defendants negligently, recklessly and/or wantonly breached their duty to AHC.

41. As a proximate result of the Third-Party Defendants' breach of duty to AHC, AHC has suffered and will continue to suffer damages including attorney's fees, costs and any liability it may incur to the plaintiffs herein.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd., and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

## COUNT IV

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

42. AHC adopts and incorporates the allegations of paragraphs 1 through 41 as though fully set forth herein.

43. In supplying and/or selling the CDW, the Third-Party Defendants impliedly warranted the merchantability of the product and its fitness for its intended purposes.

44. To the extent AHC incurs any liability to the plaintiffs such liability will have been a proximate result of the Third-Party Defendants' breach of the implied warranty of merchantability.

45. AHC has incurred and will continue to incur attorney's fees and costs and any

Case 2:09-md-02047-EEF-MBN Document 20004 Filed 12/20/14 Entered 12/20/14 12:15:22 Desc
Case 13-10582-sr Doc 35-5 Filed 11/20/14 Page 137 of 158
Exhibit E    Page 12 of 15
Case 2:09-md-02047-EEF-JCW   Document 18023   Filed 09/19/14   Page 9 of 12

liability it may incur to the plaintiffs herein.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd., and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

## COUNT V

## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

46.    AHC adopts and incorporates the allegations of paragraphs 1 through 45 as though fully set forth herein.

47.    In supplying and/or selling the CDW, the Third-Party Defendants impliedly warranted its fitness for a particular purpose.

48.    To the extent AHC incurs any liability to the plaintiffs such liability will have been a proximate result of the Third-Party Defendants' breach of the implied warranty of fitness for a particular purpose.

49.    AHC has incurred and will continue to incur attorney's fees and costs and any liability it may incur to the plaintiffs herein.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd., and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

Case 2:09-md-02047-EEF-MBN   Document 20004   Filed 05/26/16   Page 138 of 158
Case 2:13-10582-sr   Doc 315   Filed 11/20/14   Entered 11/20/14 12:15:22   Desc
Exhibit E   Page 13 of 15
Case 2:09-md-02047-EEF-JCW   Document 18023   Filed 09/19/14   Page 10 of 12

## COUNT VI

## BREACH OF EXPRESS WARRANTY

50.    AHC adopts and incorporates the allegations of paragraphs 1 through 49 as though fully set forth herein.

51.    Third-Party Defendants expressly affirmed that the product was Gypsum Drywall with specifications identical to Georgia-Pacific Gypsum Drywall, an express warranty under the law.  Alternately, Third-Party Defendants expressly affirmed that the CDW met certain ASTM standards.   Alternately, Third-Party Defendants expressly affirmed that the CDW met or exceeded U.S. safety standards and/or that the CDW was equivalent to or exceeded the quality of U.S. drywall.

52.    In the event AHC is found liable to the plaintiffs, such liability will have been the proximate result of the Third-Party Defendants' breach of express warranty.  The Third-Party Defendants' breach of warranty has damaged and will continue to damage AHC by virtue of attorney's fees, costs and any liability it may incur to the plaintiffs.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd., and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd., and

Case 2:09-md-02047-EEF-MBN   Document 19200-4   Filed 05/26/15   Page 139 of 158
Case 13-10582-sr   Doc 315   Filed 11/20/14   Entered 11/20/14 12:15:22   Desc
Exhibit E   Page 14 of 15
Case 2:09-md-02047-EEF-JCW   Document 18023   Filed 09/19/14   Page 11 of 12

fictitious Third-Party Defendants A through O in an amount equal to any judgment entered against Ace Home Center, Inc., and/or in the amount of any settlement entered into with the plaintiffs to resolve the subject litigation, plus attorney's fees and costs.  Ace Home Center, Inc., prays for such other and further relief that this Honorable Court deems just and proper.

**THIRD-PARTY PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**

Respectfully submitted,

/ s / *Danny J. Collier, Jr.*

_____

Danny J. Collier, Jr., Esq.
E. Barrett Hails, Esq.
Attorneys for Ace Home Center, Inc.

OF COUNSEL:

LUTHER, COLLIER, HODGES & CASH LLP
Post Office Box 1002
Mobile, Alabama 36633
(251) 694-9393 Office
(251) 694-9392 Fax
dcollier@lchclaw.com
bhails@lchclaw.com

**SERVE BY CERTIFIED MAIL:**

Devon International Industries, Inc.
1100 First Avenue
Suite 100
King of Prussia, PA 19406

Taishan Gypsum Co. Ltd.
c/o Richard C. Stanley, Esq.
Thomas P. Owen, Jr., Esq.
Stanley, Reuter, Ross, Thornton & Alford, LLC
909 Poydras Street
Suite 2500
New Orleans, Louisiana 70112

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing First Amended Third-Party Complaint has been served on Plaintiffs' Liaison Counsel, Russ Herman and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand-delivery upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that

Case 2:09-md-02047-EEF-MBN Document 20004 Filed 11/20/14 Page 140 of 158
Case 13-10582-sr Doc 315 Filed 11/20/14 Entered 11/20/14 12:15:22 Desc
Exhibit E   Page 15 of 15
Case 2:09-md-02047-EEF-JCW   Document 18023   Filed 09/19/14   Page 12 of 12

the foregoing was electronically filed with the Clerk of Court of the United States District Court
for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of
electronic filing in accordance with the procedures established in MDL 2047, on this 19th day of
September, 2014.

Stephen W. Mullins, Esq.
Luckey & Mullins, PLLC
Post Office Box 990
Ocean Springs, MS 39566
smullins@luckeyandmullins.com

David C. Coons, Esq.
Christopher A. D'Amour, Esq.
Adams and Reese LLP
4500 One Shell Square
New Orleans, LA 70139
david.coons@arlaw.com
chris.damour@arlaw.com

Heather M. Houston, Esq.
Caroline Pryor, Esq.
Carr Allison
6251 Monroe Street
Suite 200
Daphne, Alabama 36526
hhouston@carrallison.com
cpryor@carrallison.com

S. Wesley Pipes, Esq.
Pipes Hudson & Watts, LLP
Post Office Box 989
Mobile, Alabama 36601
wesley@pipeshudsonwatts.com

Gary J. Russo, Esq.
Jones Walker LLP
600 Jefferson Street
Suite 1600
Lafayette, LA 70501
grusso@joneswalker.com

Richard C. Stanley, Esq.
Thomas P. Owen, Jr., Esq.
Stanley, Reuter, Ross, Thornton & Alford,
LLC
909 Poydras Street
Suite 2500
New Orleans, Louisiana 70112
rcs@stanleyreuter.com
tpo@stanleyreuter.com

Joe Cyr, Esq.
Frank T. Spano, Esq.
Courtney L. Colligan, Esq.
Hogan Lovells US LLP
875 Third Avenue
New York, New York 10022
Joe.cyr@hoganlovells.com
Frank.spano@hoganlovells.com
Courtney.colligan@hoganlovells.com

/ s / *Danny J. Collier, Jr.*
_____

OF COUNSEL

# EXHIBIT "F"

ELECTRONICALLY FILED
9/30/2014 3:47 PM
30-CV-2013-900145.00
CIRCUIT COURT OF
ESCAMBIA COUNTY, ALABAMA
JOHN FOUNTAIN, CLERK

IN THE CIRCUIT COURT OF ESCAMBIA COUNTY, ALABAMA

| | | |
|---|---|---|
| GREG E. WIGGINS and SHERRY WIGGINS, | * * * | |
| Plaintiffs, | * * | |
| v. | * * * | Case No.: 30-CV-2013-900145 |
| ACE HOME CENTER, INC., et al., | * * * | |
| Defendants. | * | |

---

| | | |
|---|---|---|
| ACE HOME CENTER, INC., | * * | |
| Third-Party Plaintiff, | * * | |
| v. | * * | |
| PENSACOLA STEVEDORE COMPANY, INC.; PATE STEVEDORE COMPANY, INC.; FIREMAN'S FUND INSURANCE COMPANY; DEVON INTERNATIONAL INDUSTRIES, INC., f/k/a DEVON INTERNATIONAL TRADING, INC., a/k/a DEVON BUILDING PRODUCTS, TAISHAN GYPSUM CO. LTD. and fictitious Third-Party Defendants A through O, | * * * * * * * * * * * * | |
| Third-Party Defendants. | * | |

---

## SECOND AMENDED THIRD PARTY COMPLAINT

---

COMES NOW, ACE HOME CENTER, INC., Defendant and Third-Party Plaintiff, and hereby files this Second Amended Third-Party Complaint adding DEVON INTERNATIONAL INDUSTRIES, INC., f/k/a DEVON INTERNATIONAL TRADING, INC., a/k/a DEVON BUILDING PRODUCTS, TAISHAN GYPSUM CO. LTD. and fictitious Third-Party

Defendants A through O, as follows:

## PARTIES

1.      Defendant/Third Party Plaintiff Ace Home Center, Inc. ("AHC") is a domestic corporation organized and existing under the laws of the State of Alabama.

2.      Third Party Defendant Pensacola Stevedore Company, Inc. ("PSC") is corporation organized and existing under the laws of the State of Florida. PSC was conducting business in Alabama at all times material hereto. Upon information and belief PSC offloaded, stored, delivered, imported, shipped, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed and/or supplied the defective Chinese drywall at issue herein.

3.      Third Party Defendant Pate Stevedore Company, Inc. ("Pate") is corporation organized and existing under the laws of the State of Alabama. Upon information and belief Pate offloaded, stored, delivered, imported, shipped, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed and/or supplied the defective Chinese drywall at issue herein.

4.      Third Party Defendant Fireman's Fund Insurance Company, ("FFIC") is a corporation organized and existing under the laws of the State of California. FFIC conducts business in Alabama and at all times material hereto was conducting business in Alabama. Upon information and belief, FFIC controlled, took possession of and/or title to, offloaded, stored, delivered, imported, shipped, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed, and/or supplied the Chinese drywall at issue herein; and/or acted as agent or fiduciary for its insured, Devon International Industries, Inc. f/k/a Devon International Trading, Inc., a/k/a Devon Building Products concerning the Chinese drywall at issue herein.

5.      Third-Party Defendant Devon International Industries, Inc., f/k/a Devon

International Trading, Inc., a/k/a Devon Building Products ("Devon") is a corporation organized and existing under the laws of the State of Pennsylvania. Upon information and belief Devon, specified, ordered, shipped, imported, controlled, took possession of and/or title to, offloaded, stored, delivered, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed, and/or supplied the Chinese drywall at issue herein.

6.      Third-Party Defendant Taishan Gypsum Co. Ltd. ("Taishan") is a Chinese corporation organized and existing under the laws of the People's Republic of China. Upon information and belief Taishan, designed, processed, produced, manufactured, exported, shipped, distributed, delivered, supplied, inspected, tested, warranted, marketed, sold and/or placed within the stream of commerce the Chinese drywall at issue herein

7.      Fictitious Third-Party Defendants A, B, C, D and E, whose identities and true names are unknown and who will be identified through discovery, took possession of and/or title to, offloaded, stored, delivered, imported, shipped, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed and/or supplied the Chinese drywall at issue herein.

8.      Fictitious Third-Party Defendants F, G, H, I and J, whose identities and true names are unknown and who will be identified through discovery, specified, ordered, shipped, imported, controlled, took possession of and/or title to, offloaded, stored, delivered, purchased, sold, marketed, warranted, tested, inspected, advertised, surveyed and/or supplied the Chinese drywall at issue herein.

9.      Fictitious Third-Party Defendants K, L, M, N and O, whose identities and true names are unknown and who will be identified through discovery, designed, processed, produced, manufactured, exported, shipped, distributed, delivered, supplied, inspected, tested,

3

warranted, marketed, sold and/or placed within the stream of commerce the Chinese drywall at issue herein.

## **FACTUAL ALLEGATIONS**

10.     Taishan and Fictitious Third-Party Defendants K through O manufactured, produced and placed within the stream of commerce the Chinese drywall ("CDW") at issue herein.

11.     Devon and Fictitious Third-Party Defendants F through J specified, ordered, shipped, imported and/or marketed and/or sold the CDW at issue herein.

12.     Devon made a claim against its FFIC insurance policy for physical damage to the CDW cargo during shipment.

13.     FFIC took title to the CDW following Devon's cargo damage claim. Alternatively, FFIC exercised control over the CDW. Alternatively, FFIC acted as agent or fiduciary for Devon to mitigate the cargo damage claim.

14.     Devon and/or FFIC sold the "Devon Building Products" CDW to Pate and/or PSC.

15.     Taishan, Devon, FFCI, Pate, PSC and Fictitious Third-Party Defendants A through O put the CDW into the stream of commerce, to be purchased by AHC and, ultimately, by AHC customers.

16.     AHC purchased some of the CDW from Pate and/or PSC.

17.     On October 7, 2013, Plaintiffs Greg and Sherry Wiggins filed an Amended Complaint naming Ace Home Center, Inc., as a defendant in the above styled action.

18.     Plaintiffs' claims against AHC arise from the 2008 construction of a house

4

located at 1047 Well Road Brewton, Alabama.

19.    The house was allegedly constructed with CDW purchased from AHC.

20.    If true, Taishan, Devon, FFCI, Pate, PSC and/or Fictitious Third-Party Defendants A through O are liable to AHC for the CDW ultimately used to construct the Wiggins' house.

## COUNT I
## BREACH OF CONTRACT

21.    AHC adopts and incorporates the allegations of paragraphs 1 through 20 as though fully set forth herein.

22.    By virtue of the sale of defective CDW to ACH, Pate, PSC, FFCI, Devon, Taishan and/or Fictitious Third-Party Defendants A through O breached contract(s) and caused damages to AHC, directly or as third-party beneficiary, to include attorney's fees, costs and any liability it may incur to the plaintiffs herein.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd. and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

## COUNT II
## INDEMNITY

23.    AHC adopts and incorporates the allegations of paragraphs 1 through 22 as though fully set forth herein.

24.    AHC was without fault in the purchase and sale of the CDW and any liability it

5

may incur to the plaintiffs will be merely vicarious, constructive, derivative, or technical in nature.

25.     Taishan and/or Fictitious Third-Party Defendants K through O designed, manufactured, fabricated, marketed, sold, and placed into the stream of commerce CDW which the plaintiffs claim was unreasonably dangerous in its normal use in that it emitted noxious gases and caused damage to person and property.

26.     Taishan, Devon, FFCI and/or Fictitious Third-Party Defendants A through O failed to act with due diligence in representing that the CDW met certain ASTM standards; and provided stamping and labeling on the CDW sheets and packaging that falsely represented to the United States purchasers that the CDW met U.S. safety standards, that the CDW was safe and fit for its intended use and that the CDW was equivalent to or exceed the quality of U.S. drywall.

27.     Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O made material misrepresentations relied upon by AHC and which caused AHC damages.

28.     Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O failed to act with due diligence or reasonable care in placing the CDW into the stream of commerce by failing to test or otherwise ensure the product would perform as represented and intended.

29.     Pate, PSC, FFCI, Devon, Taishan and/or Fictitious Third-Party Defendants A through O knew or should have known of alleged defects in the CDW supplied to AHC at issue herein.

30.     Pate, PSC, FFCI, Devon, Taishan and/or Fictitious Third-Party Defendants A through O failed to warn AHC of alleged defects or dangers in the CDW supplied to AHC at

6

issue herein.

31.     In the event that AHC is determined to be liable to the plaintiffs, said liability will be a proximate result of the active negligence of Pate, PSC, FFCI, Devon, Taishan and/or Fictitious Third-Party Defendants A through O, while the negligence of AHC, if any, was at most passive in nature.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd. and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

## COUNT III
## NEGLIGENCE AND GROSS NEGLIGENCE

32.     AHC adopts and incorporates the allegations of paragraphs 1 through 31 as though fully set forth herein.

33.     Taishan and/or Fictitious Third-Party Defendants K through O designed, manufactured, fabricated, marketed, sold and placed into the stream of commerce CDW which the plaintiffs claim was unreasonably dangerous in its normal use in that it emitted noxious gases and caused damage to person and property.

34.     Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O failed to act with due diligence in representing that the CDW met certain ASTM standards; and provided stamping and labeling on the CDW sheets and packaging that falsely represented to the United States purchasers that the CDW met U.S. safety standards, that the CDW was safe and fit for its intended use and that the CDW was equivalent to or exceeded the quality of U.S. drywall.

7

35.     Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O made material misrepresentations relied upon by AHC and which caused AHC damages.

36.     Taishan, Devon, FFIC and/or Fictitious Third-Party Defendants A through O failed to act with due diligence or reasonable care in placing the CDW into the stream of commerce by failing to test or otherwise ensure the product would perform as represented and intended.

37.     Pate, PSC, FFCI, Devon, Taishan and/or Fictitious Third-Party Defendants A through O knew or should have known of alleged defects or dangers in the CDW supplied to AHC at issue herein.

38.     Pate, PSC, FFIC, Devon, Taishan and/or Fictitious Third-Party Defendants A through O failed to warn AHC of alleged defects or dangers in the CDW supplied to AHC at issue herein.

39.     Pate, PSC, FFCI, Devon, Taishan and/or Fictitious Third-Party Defendants A through O owed a duty of reasonable care and due diligence in designing, processing, producing, manufacturing, fabricating, exporting, shipping, distributing, delivering, supplying, inspecting, testing, warranting, marketing, specifying, taking possession of, control over and/or title to, offloading, storing, importing, purchasing, advertising, surveying, selling and/or placing within the stream of commerce the CDW at issue herein.

40.     Third-Party Defendants negligently, recklessly and/or wantonly breached their duty to AHC.

41.     As a proximate result of the Third-Party Defendants' breach of duty to AHC, AHC has suffered and will continue to suffer damages including attorney's fees, costs and any

8

liability it may incur to the plaintiffs herein.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd. and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

42.     AHC adopts and incorporates the allegations of paragraphs 1 through 41 as though fully set forth herein.

43.     In supplying and/or selling the CDW, the Third-Party Defendants impliedly warranted the merchantability of the product and its fitness for its intended purposes.

44.     To the extent AHC incurs any liability to the plaintiffs such liability will have been a proximate result of the Third-Party Defendants' breach of the implied warranty of merchantability.

45.     AHC has incurred and will continue to incur attorney's fees and costs and any liability it may incur to the plaintiffs herein.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd. and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

## COUNT V

9

**BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**

46.     AHC adopts and incorporates the allegations of paragraphs 1 through 45 as though fully set forth herein.

47.     In supplying and/or selling the CDW, the Third-Party Defendants impliedly warranted its fitness for a particular purpose.

48.     To the extent AHC incurs any liability to the plaintiffs such liability will have been a proximate result of the Third-Party Defendants' breach of the implied warranty of fitness for a particular purpose.

49.     AHC has incurred and will continue to incur attorney's fees and costs and any liability it may incur to the plaintiffs herein.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd. and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

**COUNT VI**
**BREACH OF EXPRESS WARRANTY**

50.     AHC adopts and incorporates the allegations of paragraphs 1 through 49 as though fully set forth herein.

51.     Third-Party Defendants expressly affirmed that the product was Gypsum Drywall with specifications identical to Georgia-Pacific Gypsum Drywall, an express warranty under the law. Alternatively, Third-Party Defendants expressly affirmed that the CDW met certain ATSM

standards. Alternatively, Third-Party Defendants expressly affirmed that the CDW met or exceeded U.S. safety standards and/or that the CDW was equivalent to or exceeded the quality of U.S. drywall.

52.    In the event AHC is found liable to the plaintiffs, such liability will have been the proximate result of the Third-Party Defendants' breach of express warranty.  The Third-Party Defendants' breach of warranty has damaged and will continue to damage AHC by virtue of attorney's fees, costs and any liability it may incur to the plaintiffs.

WHEREFORE, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd. and/or Fictitious Third-Party Defendants A through O for any liability it may incur to any plaintiffs herein, for attorney's fees, costs and such other and further relief as the court may deem just and proper.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Ace Home Center, Inc., demands judgment against Pate Stevedore Company, Inc., Pensacola Stevedore Company, Inc., Fireman's Fund Insurance Company, Devon International Industries, Inc., Taishan Gypsum Co. Ltd. and fictitious Third-Party Defendants A through O in an amount equal to any judgment entered against Ace Home Center, Inc., and/or in the amount of any settlement entered into with the plaintiffs to resolve the subject litigation, plus attorney's fees and costs.  Ace Home Center, Inc., prays for such other and further relief that this Honorable Court deems just and proper.

## THIRD-PARTY PLAINTIFF DEMANDS TRIAL BY STRUCK JURY

11

Respectfully submitted,

*/s/ Jeffrey L. Luther*

JEFFREY L. LUTHER (LUT003)
jluther@lchclaw.com
DANNY J. COLLIER, JR. (COL100)
dcollier@lchclaw.com
*Attorneys for Defendant/Third-Party Plaintiff*
*Ace Home Center, Inc.*

OF COUNSEL:

LUTHER, COLLIER, HODGES & CASH, LLP
Post Office Box 1002
Mobile, Alabama 36633
(251) 694-9393; (251) 694-9392 fax

**SERVE BY CERTIFIED MAIL:**

**Devon International Industries, Inc.**
**1100 First Avenue**
**Suite 100**
**King of Prussia, PA 19406**

**Taishan Gypsum Co. Ltd.**
**c/o Richard C. Stanley, Esq.**
**Thomas P. Owen, Jr., Esq.**
**Stanley, Reuter, Ross, Thornton &**
**Alford, LLC**
**909 Poydras Street, Suite 2500**
**New Orleans, Louisiana 70112**

### CERTIFICATE OF SERVICE

I hereby certify that I have, on this 30th day of September, 2014, electronically filed the foregoing with the Clerk of Court using the Alafile system which will send notification of filing to the following, and I have mailed same to Non-Alafile participants via United States Mail, first class postage prepaid.

| | |
|---|---|
| Stephen W. Mullins, Esq.<br>Luckey & Mullins, PLLC<br>2016 Bienville Blvd., Suite 102 39564<br>Ocean Springs, MS 39566<br>*(Counsel for Plaintiffs)* | Jonathan G. Festa, Esq.<br>Stewart Howard, PC<br>P.O. Box 1903<br>Mobile, AL 36633-1903<br>*(Counsel for Bass Homes, Inc.)* |
| Lloyd E. Taylor, Esq.<br>Taylor & Taylor, LLC<br>18350 Michigan St | Daniel K. Bryson, Esq.<br>Whitfield Bryson & Mason LLP<br>900 W. Morgan Street |

| Robertsdale, AL 36567-3054<br>*(Counsel for Ace Home Center, Inc.)* | Raleigh, NC 27603<br>*(pro hac vice)* |
|---|---|
| James Rebarchak, Esq.<br>Gary J. Russo, Esq.<br>Jones Walker, LLP<br>11 N. Water Street, Ste. 1200<br>Mobile, AL 36602<br>*(Counsel for Fireman's Fund Insurance<br>Company)* | S. Wesley Pipes, Esq.<br>William W. Watts, III, Esq.<br>Pipes, Hudson & Watts, LLP<br>P. O. Box 989<br>Mobile, AL 36601-0989<br>*(Counsel for Pate Stevedore Company, Inc.<br>and Pensacola Stevedore Company, Inc.)* |

/s/ Jeffrey L. Luther
COUNSEL

13

# EXHIBIT "G"

**Charles A. McCauley III**
*General Counsel*

phone: 484-688-8215
fax: 610-768-0244
e-mail: cmccauley@devonintlgroup.com

**DEVON**
**INTERNATIONAL**
**GROUP**

September 29, 2014

Danny J. Collier, Jr., Esquire
Luther, Collier, Hodges & Cash LLP
P. O. Box 1002
Mobile, AL 36633

> Re:   Collins, et al. v. Ace Home Center, et al.
>        Herrington, et al. v. Ace Home Center, et al.

Dear Mr. Collier:

   We are in receipt of the Summons and Third Party Complaints with regard to the above-captioned actions.

   Please be advised that Devon International Industries, Inc. filed for bankruptcy on April 23, 2013 in the United States Bankruptcy Court for the Eastern District of Pennsylvania (Case No. 13-13552 (SR)). These actions violate the automatic stay imposed by 11 U.S.C. §363. Please be guided accordingly.

                                Very truly yours,

                                Charles A. McCauley III

CAM/pld

p| 800•431•2273

a| 1100 first avenue
   suite 100
   king of prussia, pa
   19406

RECEIVED  OCT - 3 2014

w| devonintlgroup.com

# EXHIBIT "H"

**Charles A. McCauley III**
*General Counsel*

phone:  484-688-8215
fax:  610-768-0244
e-mail: cmccauley@devonintlgroup.com

DEVON
INTERNATIONAL
GROUP

October 7, 2014

Jeffrey L. Luther, Esquire
Luther, Collier, Hodges & Cash LLP
P. O. Box 1002
Mobile, AL 36633

> Re:    **Wiggins, et al. v. Ace Home Center, et al.**

Dear Mr. Luther:

   We are in receipt of the Summons and Second Amended Third Party Complaint with regard to the above-captioned action.

   Please be advised that Devon International Industries, Inc. filed for bankruptcy on April 23, 2013 in the United States Bankruptcy Court for the Eastern District of Pennsylvania (Case No. 13-13552 (SR)).  These actions violate the automatic stay imposed by 11 U.S.C. §363.  Please be guided accordingly.

   Very truly yours,

   Charles A. McCauley III

CAM/pld

p|  800•431•2273

a|  1100 first avenue
suite 100
king of prussia, pa
19406

w|  devonintlgroup.com