UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| **THIS DOCUMENT RELATES TO:**<br><br>*Germano v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 09-6687 (E.D. La.);<br><br>*Gross v. Knauf Gips, KG*, Case No. 09-6690 (E.D. La.);<br><br>*Wiltz v. Beijing New Building Materials Public Limited Co.,* Case No. 10-361 (E.D. La.);<br><br>*Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 11-1672 (E.D. La.);<br><br>*Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 11-1395 (E.D. La.); and<br><br>*Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 11-1673 (E.D. La.). | |

**MEMORANDUM OF LAW IN SUPPORT OF BEIJING NEW BUILDING MATERIALS PUBLIC LIMITED COMPANY AND BEIJING NEW BUILDING MATERIAL (GROUP) CO., LTD.'S MOTION TO EXCLUDE CERTAIN OPINIONS OF <u>GEORGE J. INGLIS, P.E. FROM JUNE 9, 2015 HEARING</u>**

Subject to and without waiving their motions to dismiss for lack of jurisdiction and failure of service, Beijing New Building Materials Public Limited Company ("BNBM PLC") and Beijing New Building Material (Group) Co., Ltd. ("BNBM Group") respectfully submit this Memorandum of Law in Support of their Motion to Exclude Certain Opinions of George J. Inglis, P.E. from the June 9, 2015 Hearing.

1

## PRELIMINARY STATEMENT

Mr. Inglis' proposed testimony regarding the statistical validity of Plaintiffs' damages calculation should be excluded from the June 9, 2015 hearing because it is made by an unqualified witness, unreliable, and not subject to cross-examination. Federal courts, including this Court, have unanimously held that proposed expert testimony is inadmissible if it relies wholly on the opinions of other, non-testifying witnesses. Here, Inglis offers no independent justification for his proffered testimony on the statistical validity, reliability and accuracy of Plaintiffs' calculation. Instead, Inglis—who is not a statistician and who has no expertise in the field (Inglis Dep.[1] 417:8-10)—utilizes the "recommendation" of a non-testifying witness as a blank check to present unreliable and unchecked testimony that is well outside his own expertise. As a result, this testimony is inadmissible under the Federal Rules of Evidence and must be excluded from this Court's damages hearing on June 9, 2015.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs previously submitted as an exhibit to their motion for the assessment of class damages the affidavit of Ronald E. Wright, P.E., a professional engineer. (Rec. Doc. 18086-3.) Several months later, Plaintiffs sought to amend their damages request with the opinions of a substitute expert, Mr. George J. Inglis, P.E., another professional engineer. Both the affidavit of Wright and of Inglis provided square footage estimates for the property of alleged class members for which there was no verified square footage. Neither Wright nor Inglis, however, provided any analysis to explain why those estimates were scientifically valid and admissible expert opinion under Rule 702 of the Federal Rules of Evidence.

---

[1] "Inglis Dep." Refers to the Deposition Transcript of George Inglis dated May 19, 2015. All cited references to the Inglis Dep. are submitted herewith as Exhibit A.

On May 15, 2015, Inglis provided Defendants with yet another revised declaration in support of Plaintiffs' damages request and provided a square footage estimate for properties for which there was no verified square footage. (Inglis Dec. at 3 ¶ 2.) In this revised declaration, however, Inglis—for the first time—asserted that for those estimates, "a national average of the known values was used based on the recommendation of a professional statistician. *See* Grossman letter, May 15, 2015, Comp. Ex. 11." (*Id*.) Inglis' declaration provided no further explanation for the "recommendation" of the statistician at issue or any explanation as to why Inglis believed that the use of a national average was reliable and statistically valid.

The Grossman letter to which Inglis cites in his declaration is a two-paragraph document wherein Michael A. Grossman asserts that he is "a professional statistics consultant." (Inglis Dec. at Ex. 11.) Grossman then states he had "been asked to determine the statistical accuracy and precision of using a mean from a set of known data points (verified) to estimate a value where data is not available (unverified) under the circumstances outlined [in Inglis' declaration]." (*Id*.) After noting that "sample sizes [that are] too small" can lead to inaccurate estimates, Grossman states that he "agree[s] with the estimating technique of the engineer." (*Id*.)

When questioned about Grossman and his references to Grossman's work during his deposition, Inglis acknowledged that he had never spoken to Grossman about his analysis, had no basis of determining one way or the other regarding whether Grossman's view was correct, and had no statistical background to verify his work. (Inglis Dep. 406:1-3, 409:11-410:13, 417:8-10.) Inglis admitted that he did nothing more than simply assume Grossman was correct. (*Id*. at 418:1-3.)

**ARGUMENT**

I.  **Inglis' Proposed Testimony Should Be Excluded Because He Is Not An Expert On The Statistical Accuracy Of Extrapolations.**

Inglis' proposed testimony should be excluded because he opines on the statistical validity and accuracy of Plaintiffs' damages calculation while simultaneously admitting he is not qualified to do so. "The threshold inquiry" for any proposed expert testimony "is whether the expert possesses the requisite qualifications to render an opinion on a particular subject matter." *Hunt v. McNeil Consumer Healthcare*, 297 F.R.D. 268, 272 (E.D. La. 2014). Inglis' proposed testimony falls well short of this mark.

When deposed, Inglis repeatedly made clear that he is "not a statistician," that he "did not perform a statistical analysis" in this matter, and that he does not "hold [himself] out as an expert in statistics." (Inglis Dep. 18:2-21, 417:10.) These admissions are a reflection of the fact that Inglis is a professional engineer with no relevant experience or education in the field of statistics. Unsurprisingly, opining on the statistical validity of extrapolations, such as Plaintiffs' damages calculation, is "not something that [he] regularly do[es]":

> Q. Do you feel that you're competent to do statistical analyses yourself?
> A. On this project, I did not perform a statistical analysis.
> Q. Are you —
> A. That was not part of my assignment.
> Q. Are you capable of performing statistical analysis?
> A. I didn't even consider that — that as part of my assignment on this.
> Q. So do you know whether you're capable or —
> A. It's not something that I regularly do.  I have done it, but I haven't — I haven't done it in recent times.  And that wasn't something that I did on this project.
> Q. So you don't hold yourself our as an expert in statistics?
> A. No.

(Inglis Dep. 17:23-18:21; *see also id*. at 417:8-10 ("Q. And you have no experience in statistics, correct?  A. I'm not a statistician.").)

4

In fact, Inglis' very reliance on the Grossman letter is all but an express admission that Inglis is not qualified to offer such an opinion. Put another way, if Inglis was truly qualified to testify regarding the statistical validity of Plaintiffs' calculation, there would be no need to rely on the "recommendation of a professional statistician." (Inglis Dec. at 3 ¶ 2.)

Yet despite the mountain of evidence and admissions that Inglis has no expertise in the field of statistics, Plaintiffs seek to have Inglis testify as an "expert" at the June 9 hearing on that very topic: the statistical accuracy of Plaintiffs' damages calculation. This testimony must be excluded because Plaintiffs present no evidence to qualify Inglis as an expert in this area and even Inglis himself has declared that he is not. *See* Fed. R. Evid. 702 (permitting only testimony from witness "qualified as an expert by knowledge, skill, experience, training, or education").

## II. Inglis' Proposed Testimony Regarding The Use Of National Averages Should Be Excluded Because It Is Opinion Testimony From A Non-Testifying Witness.

Even if Inglis were somehow qualified to present the opinions contained in his declaration—he is not—his testimony must also be excluded because it is inherently unreliable. *See Hunt*, 297 F.R.D. at 272. It is well established that "one expert may not give the opinion of another expert who does not testify." *Tokio Marine & Fire Ins. Co., Ltd. v. Norfolk & Western Ry. Co.*, No. 98–1050, 98–1077, 1999 WL 12931, *4 (4th Cir. Jan. 14, 1999) (unpublished per curiam); *see also Mooring Capital Fund, LLC v. Knight*, 388 F. App'x 814, 820-21 (10th Cir. 2010) ("An expert is not entitled to testify to opinions that rely on the opinion of another expert, simply because the other is an expert."); *Am. Key Corp. v. Cole Nat. Corp.*, 762 F.2d 1569, 1580 (11th Cir. 1985) ("Expert opinions ordinarily cannot be based upon the opinions of others whether those opinions are in evidence or not."). Testimony that simply summarizes or repackages the opinions of others is inadmissible as "inherently unreliable" because it indicates that the purported testifying expert did not verify the accuracy of the underlying opinions. *Hunt*,

5

297 F.R.D. at 275.  Moreover, permitting such testimony would improperly shield the underlying opinion from any meaningful cross-examination.  *See Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 544 (C.D. Cal. 2012).

In *Hunt*—a pharmaceutical products liability action—the plaintiff proposed testimony from a physician that the defendants' drug caused plaintiff's alleged injuries.  297 F.R.D. at 274.  The defendants challenged that testimony as inadmissible "because it relie[d] almost exclusively on the reports and opinions of other experts," and the court agreed.  *Id*. at 275.  Specifically, the court held that the physician's opinion was unreliable because it did no more than "parrot[ ] the opinions and conclusions of other experts":

> The crucial issue is whether Dr. Sanford independently evaluated or verified the opinions upon which he relies.  Dr. Sanford conceded in his deposition that he did not read most of the material cited in the opinions nor verify the data referenced therein.  Thus, it is clear that Dr. Sanford did not undertake the kind of independent evaluation that *Daubert* and Rule 702 require.  **He merely parroted the opinions and conclusions of other experts whose testimony is shielded from cross examination.  The Court cannot allow Dr. Sanford's testimony into evidence without abdicating its role as gatekeeper.**

*Id*. at 275 (emphasis added).

Inglis' proposed testimony regarding the statistical validity of Plaintiffs' damages calculation suffers from the same fatal flaws.  Inglis provides no independent analysis as to why the use of national averages to calculate square footage for homes with no verified square footage is scientifically valid and accurate.  Instead, he asserts the calculation was "based on the recommendation of a professional statistician."  (Inglis Dec. at 3 ¶ 2.)  But Inglis did not conduct any independent evaluation of that recommendation:

> Q. But my question is, you don't know, one way or the other, if [Grossman] is actually correct in terms of the statistical analysis, correct?
> A. I'm relying on his expertise of what he's saying that he's correct.
> Q. So you are assuming that he's correct?
> A. Yes.

6

(Inglis Dep. 417:19-418:3.)  Inglis simply inserted Grossman's opinions into his declaration and relied on them to form additional conclusions, all without independently verifying that the opinions were actually accurate.  In fact, all Inglis can say about Grossman's opinions are that they "appear reasonable," even though Inglis readily admits he is "not a statistician."  (Inglis Dep. 410:6, 417:10.)  Because Inglis failed to verify the validity of the opinions upon which he relied, his proposed testimony "is utterly devoid of any of the traditional hallmarks of reliability" and must be excluded.  *See Hunt*, 297 F.R.D. at 274; *see also In re TMI Litig.*, 193 F.3d 613, 615-16 (3d Cir. 1999) (finding expert's "failure to assess the validity of the opinions of the experts he relied upon together with his unblinking reliance on those experts' opinions, demonstrates that the methodology he used to formulate his opinion was flawed under *Daubert* as it was not calculated to produce reliable results").

In addition, even if Inglis could rely solely on Grossman's recommendation for his opinion, and even if that recommendation were "reasonable," Inglis' proposed testimony is still unreliable.  As explained by Dr. M. Laurentius Marais—a statistician with thirty years of experience in that field—Inglis' attempt to extrapolate damages for thousands of alleged class members using a sample of seven, non-representative properties is "fundamentally flawed."  (Rec. Doc. 18903-2 at ¶ 10.)  For example, because neither Plaintiffs nor Inglis have disclosed a "valid random sample of class properties, they possess no apparent basis for any statistically valid extrapolation concerning the entire population of class properties." (*Id.*)  Inglis has simply done nothing to demonstrate that the *Germano* properties are representative of the entire class or that the sample size is sufficient to allow any statistically significant conclusions.  In short, Inglis' proposed testimony does "not comport with well established principles for obtaining statistically and scientifically valid extrapolations from samples[.]"  (*Id.* at ¶ 9.)

7

Grossman's letter does not even address those issues. The letter offers only a conclusory opinion on a narrow point, *viz.*, the use of national averages to determine the square footage of properties for states in which "the sample sizes were too small" to provide "estimates with sufficient accuracy and precision." (Inglis Dec. at Ex. 11.) Grossman's failure to address the more fundamental flaws in Inglis' model—*i.e.*, the lack of a random sample of properties or an adequate sample size to determine construction costs—is a strong indication that Plaintiffs have no answers to those fundamental problems with the Inglis model.

Finally, Inglis' proposed testimony must also be excluded because Defendants will have no opportunity to effectively cross-examine that testimony. Inglis knows nothing about the "statistical accuracy and precision" of the proposed damages calculation, which Grossman allegedly endorses. Just as in *Hunt*, Inglis parrots Grossman's opinions and conclusions while simultaneously shielding those opinions from cross-examination. *See Hunt*, 297 F.R.D. at 275. That testimony is thus squarely barred by the Federal Rules of Evidence because it is hearsay information not subject to cross-examination. *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732-33 (10th Cir. 1993) ("Rule 703 permits experts to rely on hearsay, though, because the expert's 'validation, expertly performed, and subject to cross-examination, ought to suffice for judicial purposes.' That rationale is certainly not satisfied in this case, where the expert failed to demonstrate any basis for concluding that another individual's opinion on a subjective financial prediction was reliable.").

## CONCLUSION

WHEREFORE, for all the reasons set forth above, BNBM PLC and BNBM Group respectfully request that the Court exclude all proposed testimony from Inglis regarding the statistical validity of Plaintiffs' proposed damages calculation.

Dated:  May 29, 2015                                      Respectfully submitted,

**DENTONS US LLP**

By: */s/ Michael H. Barr*
Michael H. Barr
New York Bar No. 1744242
Justin N. Kattan
New York Bar No. 3983905
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
michael.barr@dentons.com
justin.kattan@dentons.com

- AND -

Richard L. Fenton
Illinois Bar No. 3121699
Leah R. Bruno
Illinois Bar No. 6269469
233 South Wacker Drive
Suite 5900
Chicago, IL  60606-6306
Telephone:  (312) 876-8000
Facsimile:  (312) 876-7934
richard.fenton@dentons.com
leah.bruno@dentons.com

- AND -

C. Michael Moore
Texas Bar No. 14323600
Gene R. Besen
Texas Bar No. 24045491
2000 McKinney Ave, Suite 1900
Dallas, TX  75201
Telephone:  (214) 259-0900
Facsimile:  (214) 259-0910
mike.moore@dentons.com
gene.besen@dentons.com

**- AND -**

**PHELPS DUNBAR LLP**

Harry Rosenberg
Louisiana Bar No. 11465
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130
harry.rosenberg@phelps.com

*Attorneys for Beijing New Building Material (Group) Co., Ltd. and Beijing New Building Materials Public Limited Company*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Beijing New Building Materials Public Limited Company's and Beijing New Building Material (Group) Co., Ltd.'s Motion to Exclude Certain Opinions of George J. Inglis, P.E. From June 9, 2015 Hearing has been served on Plaintiffs' Liaison Counsel, Leonard Davis, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 29th day of May, 2015.

/s/   Michael H. Barr