```
 1        IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF LOUISIANA
 2                       - - -
 3    IN RE:                    :  MDL NO. 2047
      CHINESE-MANUFACTURED      :
 4    DRYWALL PRODUCTS          :  SECTION:  L
      LIABILITY LITIGATION      :  JUDGE FALLON
 5
      THIS DOCUMENT APPLIES     :
 6    TO ALL CASES              :  MAG. JUDGE
                                :  WILKINSON
 7                       - - -
 8               MAY 19, 2015
 9       CONFIDENTIAL - SUBJECT TO FURTHER
                CONFIDENTIALITY REVIEW
10
11            Videotaped deposition of
12    GEORGE INGLIS, P.E., taken pursuant to
13    notice, was held at the law offices of
14    Seeger Weiss LLP, 77 Water Street
15    26th Floor, New York, New York 10005,
16    commencing at 9:12 a.m., on the above date,
17    before Amanda Dee Maslynsky-Miller, a
18    Certified Realtime Reporter and Notary
19    Public in and for the State of New York.
20                                        EXHIBIT
21                       - - -               A
22         GOLKOW TECHNOLOGIES, INC.
23     877.370.3377 ph | 917.591.5672 fax
24            deps@golkow.com
```

Confidential - Subject to Further Confidentiality Review

```
 1                    - - -
 2              (It is hereby stipulated and
 3         agreed by and among counsel that
 4         sealing, filing and certification
 5         are waived; and that all
 6         objections, except as to the form
 7         of the question, will be reserved
 8         until the time of trial.)
 9                    - - -
10              THE VIDEOGRAPHER:  My name
11         is Henry Marte.  I am a
12         videographer for Golkow
13         Technologies.  Today's date is May
14         19th, 2015, and the time is 9:12
15         a.m.
16              This video deposition is
17         being held at Seeger Weiss, LLP,
18         located at 77 Water Street, New
19         York, New York, in the matter of
20         In Re:  Chinese Manufactured
21         Drywall Products Liability
22         Litigation in the United States
23         District Court Eastern District of
24         Louisiana.  The deponent today is
```

```
 1          Mr. George Inglis.
 2              Counsel will be noted on the
 3          stenographic record.  The court
 4          reporter is Amanda Miller and will
 5          now swear in the witness.
 6                       - - -
 7              GEORGE INGLIS, P.E., after
 8          having been duly sworn, was
 9          examined and testified as follows:
10                       - - -
11                    EXAMINATION
12                       - - -
13   BY MR. BLOCK:
14       Q.   Mr. Inglis, my name is Aaron
15   Block.  I'm a lawyer at Alston and Bird
16   in Atlanta, and I represent Taishan
17   Gypsum Company, and I'm going to ask you
18   a bunch of questions today.
19              MR. SEEGER:  Mr. Block, just
20          can I just jump in real quick.
21          Not to spark a debate.
22              You guys, I just want to
23          make a note for the record that I
24          think we got a motion to amend the
```

Confidential - Subject to Further Confidentiality Review

```
1    BY MR. BLOCK:
2            Q.    And before we go back to the
3    beginning of that answer, did you work at
4    Buric with Ron Wright?
5            A.    I worked with -- I've worked
6    with Ron all the time I was with Buric.
7    I worked with Ron Wright all that time.
8            Q.    Is Mr. Wright effectively
9    your boss at Buric and now at Berman &
10   Wright?
11           A.    At Buric he was -- he was my
12   supervisor.  And at Berman & Wright, he
13   is one of the owners of the company.  And
14   he's also, as you say, my boss, yes.
15           Q.    Let's go back to your
16   education for a second.
17                 Do you have any training in
18   statistics?
19           A.    I have some -- I've had --
20   taken a couple of courses in statistics,
21   you know.  From an educational point of
22   view I've had a couple of courses.
23           Q.    Do you feel that you're
24   competent to do statistical analyses
```

Confidential - Subject to Further Confidentiality Review

```
 1   yourself?
 2         A.    On this project, I did not
 3   perform statistical analysis.
 4         Q.    Are you --
 5         A.    That was not part of my
 6   assignment.
 7         Q.    Are you capable of
 8   performing statistical analysis?
 9         A.    I didn't even consider
10   that -- that as part of my assignment on
11   this.
12         Q.    So do you know whether
13   you're capable or --
14         A.    It's not something that I
15   regularly do.  I have done it, but I
16   haven't -- I haven't done it in recent
17   times.  And that wasn't something that I
18   did on this project.
19         Q.    So you don't hold yourself
20   out as an expert in statistics?
21         A.    No.
22         Q.    What is the assignment that
23   you were just referring to?
24         A.    I'm sorry?
```

```
 1          Q.    Did you speak with Mr.
 2   Grossman?
 3          A.    No, I did not.
 4          Q.    Were you aware that he was
 5   going to provide opinions with respect to
 6   your report?
 7          A.    Yes, I was.
 8          Q.    How were you made aware of
 9   that?
10          A.    Through legal counsel, that
11   they had contacted a statistician to
12   review some of the work that I had done.
13          Q.    And did they inform you that
14   they were doing that or did you suggest
15   it?
16          A.    They suggested it.
17          Q.    And what did they tell you
18   the reason why they were suggesting it?
19          A.    I think it was -- well, I
20   know I shouldn't speculate.  I don't know
21   the specific reason as to --
22          Q.    Don't speculate.
23                Did they tell you?
24          A.    No, not specifically.
```

```
 1              MR. SEEGER:  Object to the
 2         form of the question.  You said
 3         provided to him.
 4    BY MS. BRUNO:
 5         Q.   I believe your testimony is
 6    that he e-mailed you your -- his
 7    opinions; is that correct?
 8         A.   Actually, no, he didn't
 9    e-mail it to me.  I got it forwarded to
10    legal -- legal counsel.
11         Q.   Okay.  And when you read
12    those opinions, did you do anything to
13    verify whether the opinion that Mr.
14    Grossman provided was a reliable one?
15         A.   I reviewed his
16    recommendations, and I believe they were
17    reasonable because the seven properties
18    that did not have a verifiable properties
19    were with states that had a limited
20    number.
21              And the five that did have
22    data, had, in some cases, states like
23    Alabama had 263, Florida had 1,529 and
24    Louisiana and Mississippi, I think
```

1  Virginia, there was a large number of
2  properties in those states.
3           So his methodology appeared
4  reasonable with the other states that had
5  only a limited number.  So the
6  methodology appeared reasonable.  So I
7  adopted it.
8       Q.   And when you say "it
9  appeared reasonable," did you rely upon
10 any statistical science in reaching that
11 conclusion?
12      A.   I relied on his -- his
13 recommendation.
14      Q.   And so when I say -- excuse
15 me.
16           When you testified that it
17 seemed reasonable, I'm trying to
18 understand what your basis for that
19 determination was.
20      A.   When I looked at the
21 specific examples of the seven
22 properties, I looked to see if, for
23 example, maybe one of the properties that
24 was unverified had a huge -- a huge

Confidential - Subject to Further Confidentiality Review

1   Q. You stated before that you
2   believed that Mr. Grossman's opinions are
3   reasonable.
4       But you understand Mr.
5   Grossman was offering a statistical
6   analysis, correct?
7   A. Yes, he was.
8   Q. And you have no experience
9   in statistics, correct?
10  A. I'm not a statistician. But
11  I could understand -- when he pointed out
12  a different way of doing the data, I
13  could see how it could be relevant in
14  terms of minimizing the effect of an
15  outlier. I could -- I could see that
16  from looking at the data.
17  Q. You understand that it could
18  be relevant.
19      But my question is, you
20  don't know, one way or the other, if he's
21  actually correct in terms of the
22  statistical analysis, correct?
23  A. I'm relying on his expertise
24  of what he's saying that he's correct.

Confidential - Subject to Further Confidentiality Review

| | |
|---|---|
| 1 | Q. So you are assuming that |
| 2 | he's correct? |
| 3 | A. Yes. |
| 4 | Q. And you're aware that Dr. |
| 5 | Moret, the professor who issued an expert |
| 6 | report on behalf of defendants, disagrees |
| 7 | with Mr. Grossman, correct? |
| 8 | MR. LEWIS: Object to |
| 9 | foundation. |
| 10 | Please answer it. |
| 11 | THE WITNESS: I have not -- |
| 12 | I have not seen that in terms of |
| 13 | the person you just mentioned |
| 14 | offering comments to Mr. Grossman. |
| 15 | I haven't -- have not seen that. |
| 16 | BY MS. BRUNO: |
| 17 | Q. You do understand that Dr. |
| 18 | Moret and Mr. Grossman have two differing |
| 19 | opinions with respect to the unverified |
| 20 | footage in some of the homes? |
| 21 | MR. LEWIS: Object to |
| 22 | foundation. |
| 23 | Please answer. |
| 24 | THE WITNESS: I don't |

Confidential - Subject to Further Confidentiality Review

1  CERTIFICATE

2

3

4     I HEREBY CERTIFY that the
5  witness was duly sworn by me and that the
6  deposition is a true record of the
7  testimony given by the witness.

8

9

10

         Amanda Maslynsky-Miller
11       Certified Realtime Reporter
         Dated:  May 20, 2015

12

13

14

15

16

17        (The foregoing certification
18  of this transcript does not apply to any
19  reproduction of the same by any means,
20  unless under the direct control and/or
21  supervision of the certifying reporter.)

22

23

24