Confidential - Subject to Further Confidentiality Review

1            IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF LOUISIANA
2                      -  -  -
3    IN RE:                :  MDL NO. 2047
     CHINESE-MANUFACTURED   :
4    DRYWALL PRODUCTS       : SECTION:  L
     LIABILITY LITIGATION   : JUDGE FALLON
5
     THIS DOCUMENT APPLIES  :
6    TO ALL CASES           :  MAG. JUDGE
                            :  WILKINSON
7                      -  -  -
8                   MAY 19, 2015
9         CONFIDENTIAL - SUBJECT TO FURTHER
                 CONFIDENTIALITY REVIEW
10
11              Videotaped deposition of
12   GEORGE INGLIS, P.E., taken pursuant to
13   notice, was held at the law offices of
14   Seeger Weiss LLP, 77 Water Street
15   26th Floor, New York, New York 10005,
16   commencing at 9:12 a.m., on the above date,
17   before Amanda Dee Maslynsky-Miller, a
18   Certified Realtime Reporter and Notary
19   Public in and for the State of New York.
20
21                     -  -  -

**EXHIBIT**
tabbies

_A_

22          GOLKOW TECHNOLOGIES, INC.
23     877.370.3377 ph | 917.591.5672 fax
24              deps@golkow.com

Confidential - Subject to Further Confidentiality Review

```
1                    -  -  -

2              (It is hereby stipulated and

3         agreed by and among counsel that

4         sealing, filing and certification

5         are waived; and that all

6         objections, except as to the form

7         of the question, will be reserved

8         until the time of trial.)

9                    -  -  -

10             THE VIDEOGRAPHER:  My name

11        is Henry Marte.  I am a

12        videographer for Golkow

13        Technologies.  Today's date is May

14        19th, 2015, and the time is 9:12

15        a.m.

16             This video deposition is

17        being held at Seeger Weiss, LLP,

18        located at 77 Water Street, New

19        York, New York, in the matter of

20        In Re:  Chinese Manufactured

21        Drywall Products Liability

22        Litigation in the United States

23        District Court Eastern District of

24        Louisiana.  The deponent today is
```

Confidential - Subject to Further Confidentiality Review

1          Mr. George Inglis.

2              Counsel will be noted on the

3          stenographic record.  The court

4          reporter is Amanda Miller and will

5          now swear in the witness.

6                    -   -   -

7              GEORGE INGLIS, P.E., after

8          having been duly sworn, was

9          examined and testified as follows:

10                   -   -   -

11                  EXAMINATION

12                   -   -   -

13    BY MR. BLOCK:

14         Q.   Mr. Inglis, my name is Aaron

15    Block.  I'm a lawyer at Alston and Bird

16    in Atlanta, and I represent Taishan

17    Gypsum Company, and I'm going to ask you

18    a bunch of questions today.

19             MR. SEEGER:  Mr. Block, just

20         can I just jump in real quick.

21         Not to spark a debate.

22             You guys, I just want to

23         make a note for the record that I

24         think we got a motion to amend the

Confidential - Subject to Further Confidentiality Review

1    yourself?

2         A.    On this project, I did not

3    perform statistical analysis.

4         Q.    Are you --

5         A.    That was not part of my

6    assignment.

7         Q.    Are you capable of

8    performing statistical analysis?

9         A.    I didn't even consider

10   that -- that as part of my assignment on

11   this.

12        Q.    So do you know whether

13   you're capable or --

14        A.    It's not something that I

15   regularly do.  I have done it, but I

16   haven't -- I haven't done it in recent

17   times.  And that wasn't something that I

18   did on this project.

19        Q.    So you don't hold yourself

20   out as an expert in statistics?

21        A.    No.

22        Q.    What is the assignment that

23   you were just referring to?

24        A.    I'm sorry?

Confidential - Subject to Further Confidentiality Review

1    property-specific differences in the

2    2,888 properties in your Exhibit 10 to

3    your declaration?

4         A.    I think I answered that, in

5    that I did not go through and do an

6    individual assessment of the properties

7    that were in that property listing.

8         Q.    How do you know, then, that

9    $86 a square foot is representative as to

10   those properties?

11        A.    It's an estimate.  It's a

12   reasonable estimate based on the

13   information that we have.

14             We know that these

15   properties were -- the average is around

16   2,000 square feet.  We know that in the

17   case of -- when we first made the

18   calculations in Germano, they were

19   essentially in that same size category as

20   that.

21             And the average finishes in

22   Germano were pretty much average and,

23   that is, by far, our history of going

24   through properties, regardless of whether

Confidential - Subject to Further Confidentiality Review

1    BY MR. BLOCK:

2         Q.    Could you refine it better

3    still?

4         A.    Such as?

5         Q.    You tell me.

6         A.    I think it's a sound

7    estimate.

8         Q.    Could it be more precise?

9    More refined?

10        A.    I believe it's good.

11        Q.    But could it be better?

12              MR. SEEGER:  Objection.

13        Asked and answered.

14              THE WITNESS:  I think what

15        we did was a sound approach.  You

16        could have different people

17        estimate, they may have different

18        numbers, may use different

19        techniques.

20              I believe our technique --

21        my technique was realistic and

22        reasonable.

23    BY MR. BLOCK:

24        Q.    You don't think your

Confidential - Subject to Further Confidentiality Review

1    estimating method could be improved any

2    further?  Become more precise?

3                    MR. SEEGER:  Objection.

4              Vague.

5                    THE WITNESS:  Huh?

6                    MR. SEEGER:  It's a vague

7              question.

8                    Go ahead.  You can answer it

9              if you can.

10                   THE WITNESS:  There's

11             various ways to estimate.  And we

12             did it -- I did it one way, and I

13             believe it's a reasonable way to

14             do it.

15   BY MR. BLOCK:

16        Q.    So is it your testimony that

17   the only variable that affects

18   remediation cost is location?

19        A.    That's not what I said.  I

20   said that the location is a factor.  I

21   said that the time the work is done, what

22   year it's done is a factor.  And having a

23   sound scope of work is a factor.

24                   And our scope of work was

Confidential - Subject to Further Confidentiality Review

1          A.      You mean would I -- if a

2    home was remediated properly, would I

3    recommend it be remediated again?  Is

4    that what you're asking?

5          Q.      What would you recommend, in

6    that case?

7          A.      If a home was properly

8    remediated, I would not recommend that.

9    I'd have no reason to recommend it be

10   remediated or remediate -- that wouldn't

11   even be remediation.

12         Q.      So what would you do if you

13   found out that a class rep home had been

14   remediated?  Do you change your Exhibit

15   10?

16              MR. SEEGER:  Objection.  He

17         really has answered several times

18         that he isn't putting or taking

19         homes off Exhibit 10.  I think

20         that's really clear.

21              THE WITNESS:  I'm not aware

22         of -- I'm not aware of -- the

23         condition you -- the condition you

24         said is there may be homes on

Confidential - Subject to Further Confidentiality Review

1        there are -- that have been

2        remediated?

3              I'm not aware that that

4        condition exists.

5    BY MR. BLOCK:

6        Q.    Have you asked whether that

7    condition exists?

8        A.    I took this grouping of

9    homes, which I received from a third

10   party, and I relied on that information

11   as being correct.

12             If there's an error in the

13   information, I'll -- I'll modify my

14   calculation.

15             MR. BLOCK:  I'd like to mark

16       this next exhibit has Number 18.

17                   -   -   -

18             (Whereupon, Exhibit

19       Inglis-18, Spencer Notice of

20       Remediation, was marked for

21       identification.)

22                   -   -   -

23   BY MR. BLOCK:

24       Q.    Have you seen this document

Confidential - Subject to Further Confidentiality Review

1    home had been remediated?

2         A.    That's not something that

3    was within my scope of work.

4         Q.    But it's doable?

5         A.    In some cases, building

6    permits are contained on there.

7         Q.    Or you could do it the

8    old-fashioned way by going to the local

9    government office, whatever that might

10   be, and pull the permits?

11        A.    That's -- that would be one

12   method.

13             MR. BLOCK:  Let's mark this

14        as 19.

15                  -   -   -

16             (Whereupon, Exhibit

17        Inglis-19, McGinn Permits, was

18        marked for identification.)

19                  -   -   -

20             MR. BLOCK:  I'll hand it to

21        you.

22             MR. LEWIS:  Thank you.

23   BY MR. BLOCK:

24        Q.    So I've handed you Exhibit

Confidential - Subject to Further Confidentiality Review

1    19, which is a set of permits that we

2    pulled for the McGinns, from the

3    Internet, from the Virginia Beach

4    government.

5            A.    Okay.

6            Q.    If you start going through

7    these and look at the second page of each

8    one, do you see at the top, Project

9    description, drywall remediation per spec

10   list?

11           A.    Yes, I do.

12           Q.    And do you see next to that

13   an owner and a reference to, Crumley

14   Enterprises, Inc.?

15           A.    Yes.

16           Q.    And do you recognize Crumley

17   Enterprises as a Chinese drywall -- or as

18   a construction firm that's done an

19   amount -- a large amount of Chinese

20   drywall remediation?

21           A.    I believe Crumley is a

22   contractor who has done drywall

23   remediation in Virginia.

24           Q.    Now, you can look at these

1    permits.

2              And on the second page of

3    each one, do you see where -- on the

4    first page, there's a reference to the

5    type of work.  And on the second,

6    under -- second page, under project

7    description, it says, Drywall remediation

8    per spec list?

9         A.    Correct.

10        Q.    Is this an indication that,

11   in fact, the McGinn home has been

12   remediated?

13             MR. SEEGER:  Objection.

14        Form.

15             THE WITNESS:  I'm looking.

16        This looks like it was a permit

17        issued to Crumley for drywall

18        remediation.  I don't see the date

19        on this.

20   BY MR. BLOCK:

21        Q.    Well --

22        A.    I don't see a date.  This is

23   back a couple of years ago.  Is this

24   something just recently taken out?

Confidential - Subject to Further Confidentiality Review

1          Q.    Well, do you -- on the

2    second page, under fees it says, Paid.

3                    MR. SEEGER:  Is there a

4          date.

5                    MR. BLOCK:  Yes, with a

6          date.  I'm looking at one that

7          says 2011.

8                    THE WITNESS:  What page are

9          you on?

10   BY MR. BLOCK:

11         Q.    So this is the third one of

12   those, for instance.

13         A.    Okay.  The third one.

14         Q.    Which will say, EC Electric

15   Inc., on the bottom left.

16                Is that what you have?

17         A.    EC Electric.

18         Q.    Look on the second page, in

19   the middle, fees paid, and then January

20   2011.

21         A.    Okay.

22         Q.    And below that, it says,

23   Inspections completed, passed rough-in in

24   February of 2011.

Confidential - Subject to Further Confidentiality Review

1          A.      Passed rough-in.   Passed
2     final.
3          Q.      So this is some indication
4     that this home was remediated four years
5     ago?
6          A.      It would appear that way,
7     from the permitting applications.
8          Q.      So this is another one where
9     you probably need to do some additional
10    investigation and maybe revise your
11    Exhibit 10?
12               MR. SEEGER:   Objection.   He
13          never testified that he intended
14          to do additional investigation.
15          So is it a question or statement?
16    BY MR. BLOCK:
17          Q.      Do you -- now, that there's
18    some evidence or some indication that
19    this home was remediated four years ago,
20    do you need to revise your Exhibit 10?
21               MR. SEEGER:   Objection.   It
22          calls for a legal conclusion.   And
23          it mischaracterizes his testimony.
24               THE WITNESS:   What I said is

Confidential - Subject to Further Confidentiality Review

1          if the listing of housing data

2          needs to be modified, when it's

3          modified, I will make appropriate

4          adjustments to my damages

5          calculation.

6    BY MR. BLOCK:

7          Q.    As a building professional,

8    do you think you need to figure out

9    whether this home has been remediated

10   already before testifying that it still

11   needs a remediation estimate?

12            MR. SEEGER:  Objection.

13         That mischaracterizes his

14         testimony.

15            THE WITNESS:  I've said at

16         least a dozen times that I did not

17         prepare the list of -- the list of

18         properties.  I did not do that.

19         That was not within my scope of

20         work.

21   BY MR. BLOCK:

22         Q.    Well, wouldn't we be better

23   off, if we're trying to figure out what

24   it costs to remediate the Spencer home,

Confidential - Subject to Further Confidentiality Review

1    wouldn't we be better off starting with

2    the actual remediation cost?

3         A.    I'm not sure if the house --

4    if the house is remediated, I'm not --

5    I'm not sure that it would necessarily

6    even be on the list.  I can't imagine

7    remediating it a second time.

8              So if the home has been

9    remediated, I'm not sure it would even

10   belong on the list.

11        Q.    And if we wanted to find the

12   best information about what it cost to

13   remediate that home, assuming someone

14   needs to pay that amount of money,

15   shouldn't we start with the actual

16   remediation costs?

17        A.    Before I answer a question

18   like that, I would want to confirm that

19   the house was remediated and make sure

20   that that's a valid scope for the work

21   that was done.

22        Q.    If the home had been

23   remediated, and you had a chance to

24   review the scope and you determined it

1    was valid and consistent with your scope,

2    you'd agree that we would be better

3    starting with the actual remediation cost

4    as opposed to an estimate?

5              MR. SEEGER:  You're asking

6         him to assume that?

7              MR. BLOCK:  Yes.  Assuming

8         that is true.

9              THE WITNESS:  If the work

10        was done properly, I don't know

11        that I would have a reason to make

12        an estimate.  If the work was done

13        properly and there's an actual

14        cost, I don't know that I would --

15        I don't know if I would have even

16        estimated it, if that was the

17        case.

18   BY MR. BLOCK:

19        Q.    And the standard practice in

20   construction, if something has already

21   been built and we want to know what it

22   costs, we look at actual costs, not the

23   estimate any longer, correct?

24              A.    I would want to confirm that

Confidential - Subject to Further Confidentiality Review

1    the scope of work was consistent with the

2    scope that I laid out and that somebody

3    didn't have work done that was by some

4    other standard.  I would want to confirm

5    the scope of work to ensure that I know

6    what was -- what work was performed.

7         Q.    But if you could assure

8    yourself that the scope of work was

9    adequate and was performed correctly, as

10   a matter of general practice in

11   construction, we would look to the actual

12   costs to know what it cost to build the

13   building or remediate the building,

14   right?  We wouldn't be dealing with

15   estimates any longer?

16        A.    I don't know if -- I'm not

17   sure there would be any need for me to

18   estimate a cost if -- if it was already

19   remediated.  I don't know -- I don't know

20   that I would have had to prepare that

21   estimate.

22        Q.    Okay.  I want to ask you,

23   does your formula for estimating class

24   damages take into account the fair market

Confidential - Subject to Further Confidentiality Review

1    value of any of the properties on Exhibit

2    10?

3           A.    It does not provide an

4    assessment of fair market value.

5           Q.    So you do not have -- your

6    formula does not include examining

7    whether your projected remediation cost

8    is more or less than the fair market

9    value of the property?

10          MR. SEEGER:  It was just

11          asked and answered.

12          MR. BLOCK:  Then it's an

13          easy one to answer.

14          THE WITNESS:  Correct, it

15          does --

16          MR. SEEGER:  He's answering

17          it twice now.  But go ahead and

18          ask him.

19    BY MR. BLOCK:

20          Q.    Your formula does not take

21    into account whether the property owner

22    has already received settlement funds or

23    funds from some other source, correct?

24          A.    I'm sorry.  Has not received

Confidential - Subject to Further Confidentiality Review

1        copper, it attacks silver.  If you

2        have condensing coils, like on an

3        HVAC, you have that damage.  And

4        we have found those conditions to

5        exist in all the Chinese drywall

6        buildings that have -- have the

7        reactive drywall; we found that to

8        be the case.

9            So our evaluation of Germano

10       homes, that wasn't a statistical

11       analysis of those buildings.  And

12       so I know there's a discussion

13       about statistics, but it was not a

14       statistics-based investigation.

15   BY MR. BLOCK:

16       Q.    You would agree with me that

17   there was no statistical -- attempt to do

18   a statistical analysis of

19   representativeness, then?

20       A.    I'm sorry?

21       Q.    You would agree with me,

22   then, that there was no attempt to do any

23   type of statistical analysis to ensure

24   representativeness; is that correct?

Confidential - Subject to Further Confidentiality Review

1          A.     This is the respect to

2    Germano, correct?

3          Q.     Correct.

4          A.     No.

5          Q.     You talked about the drywall

6    that was found in the homes.

7                 What information was

8    provided to you with respect to the

9    source of the drywall found in the homes

10   of the class members?

11         A.     There was -- there were

12   various sources.  There was photographs,

13   Germano photographs, that showed markings

14   of the class members.  There were -- the

15   data was different for each person, but

16   in some cases, there was a -- there were

17   personal profile forms, there were

18   third-party inspections of -- where an

19   inspector had come in to visit a

20   residence and the third-party person did

21   documentation of the drywall markings

22   that were observed.

23                 And I think in every case,

24   for every one of the class reps, there

Confidential - Subject to Further Confidentiality Review

1                      CERTIFICATE

2

3

4              I HEREBY CERTIFY that the

5    witness was duly sworn by me and that the

6    deposition is a true record of the

7    testimony given by the witness.

8

9

10

         Amanda Maslynsky-Miller

11       Certified Realtime Reporter

         Dated:  May 20, 2015

12

13

14

15

16

17             (The foregoing certification

18   of this transcript does not apply to any

19   reproduction of the same by any means,

20   unless under the direct control and/or

21   supervision of the certifying reporter.)

22

23

24