UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | * | MDL NO. 2047 |
|     DRYWALL PRODUCTS | * | |
|     LIABILITY LITIGATION | * | SECTION: L |
| | * | |
| | * | JUDGE FALLON |
| **This document relates to:** | * | |
| **Case No. 10-362. Sec. L. Mg. 2** | * | MAG. JUDGE WILKINSON |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### CLAIMANT OCEANIQUE DEVELOPMENT COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS OBJECTION AND MOTION FOR COURT REVIEW OF SPECIAL MASTER'S OPINION AND DECREE

Oceanique Development Company ("Oceanique") was the developer of new condominiums constructed in Fort Pierce, Florida in 2006. During its initial construction from February to September 2006, Oceanique received thousands of sheets of drywall from Banner Supply Company.[1] Banner has admitted purchasing 1.4 million sheets of Chinese drywall manufactured primarily by Knauf. After construction, the Chinese drywall phenomenon was made public. Residents of Oceanique found vast amounts of Knauf drywall throughout the entire complex. Once the Chinese drywall problem became public knowledge, Oceanique lost potential sales. Rather than delay remediation, Oceanique fixed its buyers' problems, remediated the affected units and mitigated its damages. Oceanique began demolition and remediation in May 2009 one month before the initial transfer that initiated MDL 2047. See *In re Chinese Manufactured Drywall Prod. Liab. Litig.,* 626 F.Supp.2d 1346 (J.P.M.L. 2009).

The Special Master erroneously concluded, with no cited basis, that when Oceanique took photos of drywall that it was "obviously anticipating that it might bring a claim against the suppliers or manufacturers of the drywall" and photographed some, but not all of the drywall at issue. Op. & Decree at 1. Nothing could be further from the truth. Oceanique had no lawsuit in

---

[1] Oceanique has supplied 52 pages of Banner invoices showing ½ inch drywall to the Special Master. Ex. F. Banner is well known to have distributed tons of Knauf drywall, less so, Taishan.

1

mind in the Summer of 2009 when it took immediate action to fix its residents units and mitigate further lost sales. Oceanique did not retain counsel until December 2009. Oceanique was not thinking about lawsuits, but rather satisfying its residents and lessening potential buyers panic. At the time the evidence was available for preservation in May 2009 Oceanique was not considering filing a lawsuit. The Court's first order mentioning preservation, PTO 1 at paragraph 14, was not issued until June 16, 2009. PTO 1 does not require preserving any drywall. It was not until PTO 1B was issued on October 9, 2009, that a detailed preservation protocol for drywall was required. Again, such evidence was already gone because Oceanique did not have in mind filing a lawsuit when it repaired and remediated the effected units beginning in May 2009 and Oceanique did not even retain counsel until December 2009.

    Oceanique has supplied Knauf and the Special Master with hundreds of pages from its files, forms, documents and correspondence regarding its efforts to repair the condominium units since the ARH program was instituted, over three large binders full.[2] Yet Knauf initially took the disingenuous position before the mediation in its Position Paper that it had uncovered fraud in Oceanique's claim. Everything Knauf pointed to in its Position Paper as alleged fraud was openly disclosed by Oceanique or undersigned counsel. See Ex. D, Knauf's Position Paper dated 3/4/15 and Plaintiff's Position Paper at Ex. J dated 3/9/15. There is no fraud. Tellingly, Knauf abandoned its fraud argument at the mediation of the case and its subsequent post-mediation brief. Ex. K. So that the Court has a complete record of this matter, Oceanique also has attached its post-mediation briefing as Exhibit L.

    Knauf nor the Special Master disputes the amount of damages claimed by Oceanique. Yet the Special Master only awarded $530.08 on an undisputed claim for remediation costs of $3,180,499.28. Oceanique meticulously documented its remediation costs. Those remediation costs are detailed in the summary attached hereto as Exhibit A. Oceanique's damages are

---

[2] This information is voluminous. Counsel has provided the information to the court on a flash drive and filed a notice regarding the same.

patently reasonable. Oceanique remediated approximately 100,000 square feet of property, making the per square foot price $31.80. Oceanique's remediation costs are well below Moss's square foot pricing in this litigation.

## **PRODUCT IDENTIFICATION**

Oceanique does not dispute it did not strictly comply with PTO 1B. How could it have when its remediation efforts started months <u>before</u> the promulgation of PTO 1B? Instead, Oceanique made what it considered, at the time, reasonable efforts to preserve evidence of the presence of Knauf's drywall in its development, including the presence of corroded electrical wiring, corroded HVAC coils, corroded copper piping, pitted fixtures and failed appliances. After retaining counsel and becoming aware of the Court's preservation directives, Oceanique did what it could after-the-fact to comply with the Court's orders.

The PPF that Knauf uses to make its argument that there was Taishan drywall in Oceanique concerns Unit 801B. The information was provided to Knauf in 2010 by undersigned counsel and filed with the Court. Knauf had the Report from unit 801B at least as early as October 13, 2014. Ex. B. Indeed, the inspections and photographs of unit 801B from the Report were performed on August 29, 2009 and September 30, 2009, before PTO 1B was entered. The Report was prepared on behalf of a unit owner that was individually represented by undersigned counsel and before undersigned counsel was retained by Oceanique.

Oceanique provided 100 pages of photographs of KPT drywall that was installed in the project including numerous photographs of the remediation and KPT boards being removed. Ample evidence was provided that KPT drywall existed in the properties to support Oceanique's claim. Photographs were taken during the demolition of the units that specifically revealed KPT board. These photographs were submitted to Knauf and are attached hereto as Exhibit "H." Moreover, in September 2014, undersigned counsel advised Knauf that samples existed of the KPT drywall retained by Oceanique. Knauf never requested to view or test the samples. *See* Ex.

3

C, emails dated Sept. 12 & 22, 2014. Further proof was provided in the form of sworn affidavits of Oceanique's subcontractors and employees that detail the substantial presence of KPT board in the affected units. Ex. I. The affidavits were provided to prove that it was Knauf's board being present in the majority of the remediated units. Knauf's argument that the failure to strictly comply with PTO 1B merits dismissal of the claim is patently unfair and inapplicable in this unique case where the work was done before the MDL was formed.

In the Banner Settlement Allocation Plan (Rec. Doc. 16527-1), partially drafted by Knauf, it was recognized that the majority of Chinese drywall sold by Banner belonged to Knauf and therefore Knauf insisted on recovering a minimum of 60% the Banner monies' allocation. Thus, the <u>maximum</u> discount that should be applied to Oceanique's claim due to the presence of non-KPT drywall is 40%. Further review of the Protocol contemplates the following caveat in Section III. A. 1. concerning PTO 1B:

> Photographs and/or video images of all drywall removed from the Affected Property during remediation. For those Owners with claims pending *In re: Chinese Drywall Products Liability Litigation,* MDL 2047 (the "MDL"), *where available* such submission shall be in the form required by MDL Pretrial Order 1B. (Emphasis supplied).

The Settlement Agreement was designed to be consumer friendly and takes into account that even when PTO 1B applies, it only applies "*where available*," meaning when the "photographs and/or video images of all drywall removed from the Affected Property during remediation" are available.[3] When considering this unique claim, failure to comply with PTO 1B should not be fatal to Oceanique's claim against Knauf. The Special Master erred in a number of ways, but the Special Master's primary error was failing to take into account the equities of this claim and what is supposed to be a consumer friendly settlement.

---

[3] They should be provided, <u>but</u>, when they are not available other evidence may be employed. Oceanique attempted to fill in any gaps with other valid evidence: affidavits of employees testifying under oath to the presence of KPT drywall. For the reasons discussed in Oceanique's Position Paper and at length at the mediation, those photos and videos of drywall removed from the Affected Property are not available.

4

The Special Master erroneously concluded that Oceanique's failure to strictly comply with PTO 1B was prejudicial to determining who manufactured the drywall at issue. Op. & Decree at 4. There is no prejudice in determining who manufactured the drywall in this claim. Ample evidence exists for this claim to be fairly determined. For example:

1. photographic evidence of Knauf drywall in the Oceanique property;

2. samples of Knauf drywall and related items that Oceanique did preserve that Knauf nor the Special Master have bothered to inspect despite its availability;

3. affidavits from Oceanique's employees and subcontractors on the repair/remediation project regarding the overwhelming presence of Knauf drywall;

4. Banner Port St. Lucie's sale of thousands of sheets of drywall to Oceanique when Banner Port St. Lucie did not have record of receiving any Taishan drywall;[4]

5. Banner Port St. Lucie's sale of thousands of sheets of drywall to Oceanique between February 2006 and September 2006 when Banner Port St. Lucie admitted it was selling Knauf's drywall during that time, Exhibit E at 3; and,

6. Banner Settlement Allocation Plan (Rec. Doc. 16527-1) where Knauf insisted on recovering a minimum of 60% the Banner monies' allocation.

Thus, the <u>maximum</u> discount that should be applied to Oceanique's claim due to the presence of non-KPT drywall is 40%. Knauf has admitted in this litigation that at least 60% of the drywall Banner distributed in Florida was attributable to Knauf. Record evidence of what Banner actually distributed, specifically to Oceanique demonstrates that the drywall Oceanique received was overwhelmingly KPT.

One of the requirements of defendants in this litigation was the completion of sworn profile forms. The DPFs for the Banner entities are attached as composite Exhibit G. The Banner DPFs show that the Banner entities overall received a very low volume of Taishan drywall as

---

[4] Fifty-two pages of Banner invoices are attached hereto as Exhibit "F."

compared to KPT drywall, with Taishan drywall ranging from less than 1% to less than 11%. The Banner DPFs also show that Banner Port St. Lucie could not identify *any* Taishan drywall in what it received from La Suprema and distributed. Ex. E, at 3. This is in marked comparison to three of the other Banner entities that were able to specifically identify that they received Taishan drywall and the number of sheets they received. Ex. G. Banner Port St. Lucie was the only Banner entity that supplied Oceanique. Ex. F. Moreover, Banner Port St. Lucie admitted that it stopped shipping Knauf drywall in November 2006. Ex. E, at 3. The sales records from Banner Port St. Lucie to Oceanique show the last sale on September 13, 2006, meaning that Banner Port St. Lucie was selling Knauf's product to Oceanique. The Special Master erroneously rejected this argument stating "There is no evidence that the [sic] Knauf's share of drywall supplied by Banner is so uniform that it can support a finding of product identification within a single complex." Op. & Decree at 4. The Special Master ignored Banner Port St. Lucie's own admission in its DPF that it did not have any Taishan drywall on hand to sell. Oceanique only bought from Banner Port St. Lucie. Ex. F. Accordingly, the Special Master erred in ignoring the evidence before him and the equities in this case that the drywall that Oceanique received from Banner Port St. Lucie was overwhelmingly Knauf.

The parties agree that the Banner entities did not track which brands of drywall were sent to a particular property. Nonetheless, when combining the record evidence of: 1) Knauf's admission that at least 60% of the drywall Banner distributed was attributable to Knauf; and 2) record evidence of Banner Port St. Lucie not identifying any Taishan drywall in its shipments and its sales to Oceanique; and 3) the established fact that all of the Banner entities only received a total of 33,444 Taishan made boards out of a total of 1,398,444 sheets of drywall, as follows:

| **Banner entity** | **Sheets of drywall received by Banner entity** | **Taishan sheets of drywall received by Banner entity** |
|---|---|---|
| Banner Miami | 253,954 | 8,208 |
| Banner Fort Myers | 347,421 | 2,208 |
| Banner Tampa | 216,840 | 23,028 |

| Banner Pompano | 328,440 | None reported on DPF |
|---|---|---|
| Banner Port St. Lucie | 251,696 | None reported on DPF |
| **Total[5]** | 1,398,351 | 33,444 |

The conclusion is inescapable that Oceanique's drywall was overwhelmingly KPT.

## CONCLUSION

For all the foregoing reasons, Oceanique requests that the Court overrule the Special Master's Award and increase Oceanique's award by reducing Oceanique's claim for $3,180,499.28 by 40%, awarding Oceanique $1,908,299.57.

Dated: May 29, 2015.

    Respectfully submitted,

    /s/  Ervin Gonzalez
    ERVIN A. GONZALEZ
    Fla. Bar No. 500720
    Ervin@colson.com
    PATRICK S. MONTOYA
    Fla. Bar No. 524441
    Patrick@colson.com
    COLSON HICKS EIDSON COLSON
    MATTHEWS MARTINEZ GONZALEZ
    KALBAC & KANE
    255 Alhambra Circle, PH
    Coral Gables, FL  33134
    Phone: (305) 476-7400
    Fax:    (305) 476-7444
    *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 29th day of May, 2015.

    /s/ Ervin Gonzalez

---

[5] These totals were derived from the Banner entities DPFs, Ex. G, adding up the total number of sheets the Banner entities received from La Suprema and those identified as Taishan by the Banner entities.

7