# Exhibit K

**BAKER DONELSON**
BEARMAN, CALDWELL & BERKOWITZ, PC

201 ST. CHARLES AVENUE
SUITE 3600
NEW ORLEANS, LOUISIANA 70170
PHONE: 504.566.5200
FAX: 504.636.4000

www.bakerdonelson.com

***PRIVILEGED AND CONFIDENTIAL SETTLEMENT COMMUNICATIONS***

March 20, 2015

**Via Email and Federal Express: balhoff@pabmb.com**

Mr. Daniel J. Balhoff
Perry, Atkinson, Balhoff, Mengis & Burns, L.L.C.
2141 Quail Run Drive
Baton Rouge LA 70884-3260

      RE:    Oceanique Development

### SUPPLEMENTAL CONFIDENTIAL POSITION PAPER

Dear Mr. Balhoff:

      Pursuant to your March 13, 2015 email regarding the referenced matter, the Knauf Defendants[1] submit the following supplemental confidential position paper regarding the claims made by Oceanique Oceanfront Condominium Association, the unit owners, tenants, and Tricon Development of Brevard, Inc. ("Claimants"). Prior to and during the mediation, Claimants have admitted that remediation failed to comply with PTO 1B. Based on the position that remediation occurred prior to PTO 1B, Claimants incorrectly assert that the evidence of a single KPT board installed is sufficient to support a claim for all 39 units under the Knauf Class Settlement Agreement.[2] In addition to the reasons previously provided, the Knauf Defendants' submit that Claimants' position is untenable in light of Claimants' failure to preserve evidence and provide support for their claim consistent with:

      (1) PTO 1, which was effective during the Claimants' remediation period;

      (2) PTO 1B, which adopted many of the same evidence preservation protocols as Environ Phase 5 and is applicable to Claimants' claim pursuant to the Knauf Class Settlement Agreement, regardless of when Claimants undertook remediation;

---

[1] The Knauf Defendants include Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf International GmbH, Knauf Insulation GmbH, Knauf AMF GmbH & Co. KG, Knauf UK GmbH, Knauf do Brasil Ltda., Gebr. Knauf Verwaltungsgesellschaft KG, PT Knauf Gypsum Indonesia, or Knauf Gips KG.

[2] Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 and subsequent Amendments to the agreement were filed with the Fourth Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 being the final and controlling agreement.

Mr. Daniel J. Balhoff
March 20, 2015
Page 2

> (3) The Environ Phase 5 remediation protocol, which PTO 1B was based on, and which was the industry standard preservation protocol instituted by other property developers during the Claimants' remediation period;
>
> (4) Claimants' market share liability theory is not recognized under Louisiana Law, which governs the Knauf Class Settlement Agreement and Claimants' claim.

Therefore, the Knauf Defendants submit that Claimants are not entitled to compensation under the Knauf Class Settlement Agreement. However, in the spirit of compromise and to defray further expense, the Knauf Defendants are willing to settle this matter for the sum of $100,000.00, payable ten days after the settlement is confirmed in writing.

## I. Claimants failed to comply with PTO 1, which was effective during Claimants' remediation.

On June 16, 2009, at the time of Claimants' remediation, PTO 1 was issued and imposed the most fundamental and basic preservation requirements on all Chinese Drywall claimants. PTO 1 established that all claimants had a duty to preserve relevant evidence, which included "tangible things in possession, custody and control of the parties...." PTO 1, pg. 7. PTO 1 put all on notice of the importance of evidence preservation and that "[f]ailure to comply may lead to dismissal of claims, striking of defenses, imposition of adverse inferences, or other dire consequences." PTO 1, pg. 8.

As a sophisticated builder/developer represented by counsel in June 2009, Claimants do not dispute that they failed to preserve tangible evidence, including the drywall that was removed from the 39 units in the property, other than a single board of installed KPT Chinese Drywall. Nonetheless, Claimants seek to be compensated for all 39 units, for which they have provided virtually no evidence of either a defective product or said defective manufacturer of the product. The Claimants' failure to comply with PTO 1 is a failure to comply with the most basic evidence preservation required to satisfy Claimants' burden in justifying a compensable claim, other than for the single board of KPT Chinese drywall.

## II. Claimants failed to comply with PTO 1B, which adopted the Environ Phase 5 protocol and is enforceable under the Knauf Class Settlement Agreement.

Claimants readily admit that they failed to comply with PTO 1B. Although PTO 1B was issued in October 2009, its development was well known and discussed shortly after the issuance of PTO 1. In August 2009, liaison counsel for plaintiffs and defendants, which included the Knauf Defendants, Banner (the supplier of Claimants' drywall), and several other Florida developers, advised Judge Fallon that meetings were ongoing to discuss the modification of PTO 1's "Preservation of Evidence" section in regards to preservation of both physical things and documents. By September 2009, liaison counsel for plaintiffs and defendants advised the Court that a modification to PTO 1 was near completion. On October 9, 2009, the parties presented to

Mr. Daniel J. Balhoff
March 20, 2015
Page 3

the Court an agreed upon PTO 1B, establishing the protocol for the preservation of physical things.

PTO 1B confirmed what PTO 1 established in June 2009 - that all claimants were required to preserve physical evidence. PTO 1B only took it another step by requiring claimants to follow specific procedures, including (1) photographing the backside of each Chinese drywall board immediately after it was removed on-site, (2) documenting the location of each full or partial Chinese Drywall board removed from the property, and (3) photographing wall sections to identify visible markings on the backside of the drywall. PTO 1B's protocols to document the type, location, and amount of Chinese Drywall in the property are consistent with the Environ Phase 5 protocol, which was being instituted during the time of Claimants remediation.

Notwithstanding the fact that remediation occurred pre-PTO 1B, Claimants did not timely opt-out of the Knauf Class Settlement Agreement. By failing to timely opt-out, Claimants are subject to the Knauf Class Settlement Agreement and its policies and procedures for determining eligibility and compensation for Already Remediated Home ("ARH") claims.[3] The Knauf Class Settlement Agreement is clear that the eligibility and compensation amount determinations for ARH claims are pursuant to PTO 1B protocols. The Knauf Class Settlement Agreement mandates that the failure to preserve evidence pursuant to PTO 1B will result in disallowance of or reduction in the amount of the claim, if the failure has been prejudicial to a determination of the claim.[4] Claimants have not complied with PTO 1B, or any other reasonable preservation protocol to support a determination that the alleged property contained more than a single board of KPT Chinese Drywall. Therefore, pursuant to the Knauf Class Settlement Agreement, the Knauf Defendants submit that they are prejudiced in determining whether the Claimants' property contained more than a single board of KPT Chinese Drywall, since Claimants have failed to provide evidence of KPT Chinese Drywall in the property other than a single board.

Further prejudicing the Knauf Defendants is the determination that Taishan Chinese Drywall was in the development, on the same floor as multiple units for which Claimants now seek full compensation from the Knauf Defendants. It is ironic that Unit Owner 801B, a unit that contained all Taishan Chinese Drywall, was able to comply with PTO 1B, whereas a sophisticated builder/developer represented by counsel was unable to comply. Finally, it is inconceivable and further demonstrating of the presence of Taishan Chinese Drywall that for four years Claimants failed to produce documentation of Taishan and only admitted to its presence in the property on the eve of mediation.

### III. Claimants failed to preserve evidence consistent with the Environ Phase 5 protocol, which PTO 1B was based on, and which was the industry standard

---

[3] All claims (39 units and 2 claims for common areas) were included in one or more of the following omnibus complaints subject to the Knauf Class Settlement Agreement: Payton (Omni I), Rodgers (Omni IV), and Block (Omni X).

[4] See Knauf Class Settlement Agreement; Exhibit A at IV(d)(4).

Mr. Daniel J. Balhoff
March 20, 2015
Page 4

> **preservation protocol instituted by other builders/developers during Claimants' remediation period;**

In 2009 and throughout the Claimants' remediation period, other builders/developers in Florida were remediating properties pursuant to the Environ Phase 5 protocol. As part of the Environ Phase 5 protocol, Environ would delineate, (1) the total percentage and types of Chinese Drywall found in the property, (2) the amount, percentage, type and location of Chinese Drywall in each room in the property, and (3) the rationale for removal of the drywall. For example, on June 25, 2009, a property in Riverview, Florida built by M/I Homes, Inc. was evaluated and remediated pursuant to the Environ Phase 5 protocol.[5] During this remediation, Environ identified that KPT Chinese Drywall was located in 80% of the property and that the other 20% was comprised of National Gypsum Drywall. Second, in each room of the property, Environ identified the amount of Chinese Drywall, the type of Chinese Drywall based on visible markings, and the location of the Chinese Drywall in the particular room: "Foyer...East Wall...~1-2 sheets...blue and yellow border...." Finally, with respect to each board that was removed from the property, Environ provided a rationale: "Foyer...East Wall...~1-2 sheets...Rational for Removal...Consistent with Chinese Knauf...."

The Environ Phase 5 protocol was instituted throughout the time of Claimants' remediation period and was well known throughout the industry and southern Florida. At least ten different builders were utilizing the Environ Phase 5 protocol during this time.[6] The protocol provided reasonable measures to ensure sufficient identification and preservation of Chinese Drywall in affected properties. Claimants' preservation fails to come close to the Environ Phase 5 protocol, or any other reasonable preservation protocol sufficient to support a claim. Rather, Claimants have stated that they were told to remove all the Chinese Drywall without preserving or identifying the type, amount, and location of the Chinese Drywall in the property. By failing to enact proper preservation protocols consistent with the Environ Phase 5 protocol, Claimants have failed to prove their claim other than a single KPT Chinese Drywall board.

Claimants cannot reasonably contend that the preservation obligations of PTO 1B were unknown or unexpected when they remediated the property. The Environ Phase 5 protocol covers the industry standard in place at the time of the Oceanique remediation, and was the model for PTO 1B entered in the fall of 2009.

> IV. **Claimants' market share liability theory is not recognized under Louisiana Law, which governs the Knauf Class Settlement Agreement and Claimants' claim.**

---

[5] *See* Exhibit A: MI Homes, Inc. Environ Phase 5 inspection on June 25, 2009.

[6] WCI, Toll Brothers, Taylor Morrison, MI Homes, Lennar Homes, Lee Wetherington, Hovanian Homes, GL Homes, Beazer Homes, and KB Homes were among the other builders and developers that utilized the Environ Phase 5 protocol.

Mr. Daniel J. Balhoff
March 20, 2015
Page 5

During the mediation, Claimants' asserted that their claim should be compensated based on a market share liability in accordance with the Banner Settlement Allocation Plan. This theory is unsupportable for three reasons. First, as previously stated, Claimants' claim is governed by the Knauf Class Settlement Agreement. Second, the Knauf Class Settlement Agreement is governed by, and construed and enforced with, the substantive laws of the State of Louisiana without regard to conflict of laws principles. *See* Knauf Class Settlement Agreement at § 18.10. Finally, no Louisiana jurisdiction has ever applied market share liability theory to supplant proof of proximate causation. Moreover, the Fifth Circuit has refused to find that market share liability theory could be applied under Louisiana law. *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1252-53 (5th Cir. 1997); *Thompson v. Johns–Manville Sales Corp.*, 714 F.2d 581 (5th Cir. 1983); *Bateman v. Johns–Manville Sales Corp.*, 781 F.2d 1132, 1133 (5th Cir. 1986).

## CONCLUSION

Under all measures of proper evidence preservation, Claimants have failed to properly preserve evidence to justify a determination of KPT Chinese Drywall in the property greater than a single board. First, Claimants failed to comply with the basic preservation principles mandated by PTO 1, which was effective at the time of Claimants' remediation. Second, Claimants failed to comply with PTO 1B's protocols, which are consistent with PTO 1 and enforceable under the Knauf Class Settlement Agreement. Third, Claimants failed to come close to complying with the Environ Phase 5 protocol, which was the industry standard at the time of Claimants' remediation and served as the preservation model for PTO 1B. Finally, Claimants' market share liability theory is not recognized under Louisiana Law, which governs the Knauf Class Settlement Agreement and Claimants' claim. Pursuant to the Knauf Class Settlement Agreement and PTO 1B, Claimants' failure to comply with preservation requirements has prejudiced the determination of the claim such that no compensation is warranted. However, in the spirit of compromise and to defray further expense, the Knauf Defendants are willing to settle this matter for the sum of $100,000.00, payable ten days after the settlement is confirmed in writing.

Respectfully submitted,

Kerry J. Miller

Enclosures