UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | * | MDL No. 2047 |
| DRYWALL PRODUCTS LIABILITY | * | |
| LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| THIS DOCUMENT APPLIES TO | * | |
| ALL CASES | * | MAGISTRATE JUDGE |
| | * | WILKINSON |

******************************************

### NON-PARTY JPMORGAN CHASE & CO.'S MEMORANDUM IN SUPPORT OF CROSS-MOTION TO QUASH SUBPOENA

Non-Party, JPMorgan Chase & Co., respectfully submits this Memorandum in Support of its Cross-Motion to Quash the May 18, 2015 Subpoena issued by the Plaintiffs' Steering Committee (the "PSC"). (Dkt. 18951.) As explained below, the PSC's request for expedited discovery from JPMorgan Chase & Co. is rife with procedural and substantive infirmities. For one thing, there is no emergency requiring immediate relief from the Court, as the discovery sought by the PSC (even if relevant, which it is not) is not pertinent to the upcoming class damages hearing. And the Court has already denied the PSC's request for expedited discovery from JPMorgan Chase & Co. Moreover, the PSC has yet to articulate how the discovery sought from JPMorgan Chase & Co. has any bearing on the "contempt track" or the "alter ego track."

Thus, the PSC thus has not met *its obligation* under Rule 45 to avoid imposing an undue burden or expense on a non-party. Finally, the PSC has yet to comply with this Court's October 25, 2011 order requiring it to make a showing that a holding company, such as JPMorgan Chase & Co., has custody or control over documents that might be possessed by an affiliate. Accordingly, the Court should quash the PSC's May 18, 2015 subpoena.[1]

---

[1] The PSC has also filed an Emergency Motion to Compel (*see* Dkt. 19004) to which JPMorgan Chase & Co. has filed an opposition brief (Dkt. 19027).

1

## BACKGROUND

In May 2011, the PSC issued a subpoena to JPMorgan Chase & Co. seeking a bevy of information pertaining to whether JPMorgan Chase & Co. had any ownership interest in any of the Chinese drywall companies that are the subject of this MDL litigation. (Dkt. 10056.) After service of that subpoena, JPMorgan Chase & Co. submitted several objections to the subpoena and also informed the PSC that it did not have any ownership interest in the Chinese drywall companies. (Dkt. 10056-4.) JPMorgan Chase & Co. did inform the PSC that certain JPMC entities held equity positions in publicly-traded stock of China National Building Material Co., Ltd. ("CNBM") and provided the PSC with excerpts from the Hong Kong Exchange public website that identified those positions. (*Id.*) The PSC, however, insisted on compliance with its subpoena, and the parties briefed and argued the issue of whether JPMorgan Chase & Co. had possession, custody, or control of the documents sought by the PSC.

After hearing those arguments, the Court entered an Order and Reasons on October 25, 2011 that granted JPMorgan Chase & Co.'s motion to quash and that denied the PSC's motion to compel. (Dkt. 10854.) In its thorough opinion, the Court made it clear to the PSC that a subpoenaed party need only produce documents that are in its "possession, custody or control." (Dkt. 10854 at p. 8 (citing Fed. R. Civ. P. 45).) The Court thus held that the PSC must first demonstrate that a parent holding company, such as JPMorgan Chase & Co., has sufficient control over its affiliates to justify a subpoena for documents that might be possessed by the affiliates. (*Id.* at pp. 14-15.) The PSC has never even attempted to make such a showing.

Nevertheless, **in the last three weeks**, the PSC has issued **four** separate subpoenas to JPMorgan Chase & Co., all under the guise of seeking discovery pertaining to the "alter ego track" and the "contempt track," i.e., whether Taishan or its affiliates conducted business in the United States after the Court's July 2014 contempt judgment. First, on April 28, 2015, the PSC

issued a subpoena and expedited deposition notice, seeking scores of financial records from every JPMorgan Chase & Co. affiliate pertaining to 66 separate so-called "Taishan Affiliates and Subsidiaries." (Dkt. 18766.) Three days later, the PSC then issued a second subpoena that expanded the list of "Taishan Affiliates and Subsidiaries", now covering 83 separate purported Taishan companies. (Dkt. 18801.) In connection with these subpoenas, the PSC also filed an improper *ex parte* motion for expedited discovery, which JPMorgan Chase & Co. opposed. (Dkts. 18768, 18780.) Then, the Court held a telephone status conference on May 7, 2015 on a number of discovery issues, including the subpoenas to JPMorgan Chase & Co. (as well as subpoenas to Morgan Stanley). (Dkt. 18925.) Following that status conference, the Court issued a minute entry that denied the PSC's motion for expedited discovery and that instructed the PSC to narrow its discovery requests. (*Id.*)

Rather than comply with the Court's order to narrow the requests, the PSC issued another set of document requests on May 8, 2015 that more than doubled the number of document requests. (*See* Exh. A.) In that set of document requests, the PSC continued to demand that JPMorgan Chase & Co. produce documents that might be possessed by any JPMorgan Chase & Co. entity (foreign or domestic) pertaining to 83 separate purported Taishan entities. (*Id.*) The PSC also demanded that JPMorgan Chase & Co.'s counsel attend an in-person "meet-and-confer" on May 15 to discuss this third subpoena. (*See id.*) JPMorgan Chase & Co.'s counsel advised the PSC that the third subpoena did not comply with the Court's May 7, 2105 minute entry and that the PSC had yet to provide any predicate information to support the subpoena request. (*See* Exh. B: May 11, 2015 email.) In accordance with the deadlines established by Rule 45, JPMorgan Chase & Co. filed written objections to the April 28, 2015 subpoena, the May 1, 2015 subpoena, and the May 8, 2015 email document requests. (Dkt. 18933.)

Nonetheless, the PSC continued to demand an in-person meeting, claiming that the PSC would have another "discrete" list of document demands. (*See* Exh. C: May 14, 2015 email chain.) Although under no obligation to do so, JPMorgan Chase & Co.'s counsel acquiesced to the PSC's demands, only to be presented with yet another set of document requests and a memo listing several documents purporting to show JPMorgan Chase & Co.'s involvement with CNBM, one of the 83 purported Taishan entities. (*See* Dkt. 18951.) Then, the PSC incorporated those document requests into another subpoena issued on May 18, 2015, which was not even served until after the PSC filed the current Emergency Motion to Compel. (*Id.*) The May 18, 2015 subpoena seeks documents and deposition testimony on "all financial transactions by and among any Defendant and/or Defendants' Affiliates or Subsidiaries with the bank and/or the bank's subsidiaries or affiliates in the United States or in China." (*Id.*)

In the May 18, 2015 subpoena, the PSC listed several "reference documents" and instructed JPMorgan Chase & Co.'s counsel to contact counsel for CNBM for approval to obtain the referenced documents. Although under no obligation to do so, JPMorgan Chase & Co.'s counsel accommodated the PSC's request and contacted CNBM's counsel, who advised that the listed documents were publicly available documents that the PSC itself had retrieved and bates-stamped. Although JPMorgan Chase & Co.'s counsel informed the PSC of this, the PSC did not produce the "roadmap" documents until after the close of business on the day *after* the PSC filed its Emergency Motion to Compel. (*See* Exh. D: May 29, 2015 email.) Although the PSC advised JPMorgan Chase & Co. that it should consult the referenced documents as a roadmap, one of the documents (the BNBM 2009 Annual Report, which is 5 years prior to the July 2014 contempt order at issue in the subpoenas) does not even mention JPMorgan Chase & Co. Further, the remaining documents are CNBM Annual Reports in which CNBM discloses certain

4

JPMorgan Chase & Co. entities as stockholders of CNBM stock, which is publicly traded on the Hong Kong exchange. That is the same information that JPMorgan Chase & Co. provided to the PSC several years ago, well before the July 2014 contempt finding.[2]

In any event, JPMorgan Chase & Co.'s counsel requested that the PSC articulate how the stock ownership of certain JPMorgan Chase & Co. entities in publicly-traded stock of CNBM over 5 years ago has any bearing on the contempt or alter ego issues that are currently being litigated. (*See* Exh. E: May 26, 2015 email.) Rather than provide JPMorgan Chase & Co.'s counsel with any such explanation, the PSC then filed its Emergency Motion to Compel. JPMorgan Chase & Co. now cross-moves to quash the May 18, 2015 subpoena.

## ARGUMENT

**I.    The Court Should Quash the May 18, 2015 Subpoena Because It Is Procedurally Defective.**

At the outset, the Court should quash the May 18, 2015 subpoena because there is no "emergency" that necessitates immediate relief from the Court. In each of the subpoenas issued by the PSC to JPMorgan Chase & Co., the PSC has made it clear that the discovery is sought with respect to the contempt and alter ego issues. (Dkts. 18766, 18801, 18951.) But the Court has issued a scheduling order that has prioritized class-wide damages issues, which are set for hearing on June 9, 2015. (Dkt. 18921.) The Court has ruled that the contempt and alter ego issues will be dealt with after the June 9, 2015 damages hearing. (*Id.*) As such, there is absolutely no need for emergency relief, nor is there any justification for requiring JPMorgan Chase & Co. to comply with the PSC's unilateral demands for expedited discovery.

---

[2] That BNBM 2009 Annual Report that does not even mention JPMorgan Chase & Co. does list the Bill & Melinda Gates Foundation as a large stockholder of BNBM. Likewise, the CNBM annual reports disclose UBS and Citibank as large stockholders. Curiously, the PSC has not issued subpoenas to UBS, Citibank, or the Bill & Melinda Gates Foundation.

5

Moreover, Rule 45 plainly provides that a subpoenaed party has 14 days from service to serve responses and objections.  *See* Fed. R. Civ. P. 45(d)(2)(B).  The PSC's May 18, 2015 subpoena  was not even served until the afternoon of May 18, 2015, *after* the PSC filed its Emergency Motion to Compel.  And the Court has already denied the PSC's request for expedited discovery against JPMorgan Chase & Co. (Dkt. 18925.)  The PSC, of course, cites no authority for such compressed discovery, which is directly contrary to Rule 45's dictate that the attorney issuing a subpoena ensure that the subpoena does not impose an undue burden or expense on the subpoenaed party:

> A party or attorney responsible for issuing and serving a subpoena ***must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.*** The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

*See* Fed. R. Civ. P. 45(d)(1) (emphasis added).

Notwithstanding its obligations under Rule 45, the PSC neglected to take reasonable steps to avoid imposing an undue burden or expense on JPMorgan Chase & Co.  Instead, the PSC purports to justify compressed "emergency" discovery based on publicly-available information that JPMorgan Chase & Co. provided to the PSC years ago, all the while neglecting to explain how the ownership of publicly-traded stock relates to the contempt or alter ego issues before this Court.  Therefore, the Court should quash the May 18, 2015 subpoena.

**II.    The PSC's May 18, 2015 Subpoena Is Substantively Defective Under Rule 45.**

As noted above, Rule 45 imposes a clear obligation on attorneys issuing subpoenas to take reasonable steps to impose an undue burden or expense on a non-party to the litigation.  In this case, the PSC claims that it needs third-party discovery from JPMorgan Chase & Co. with respect to the contempt and alter ego issues.  But the "roadmap" documents cited by the PSC

simply show that certain JPMorgan Chase & Co. entities owned publicly-traded stock in CNBM, starting in 2006, well before the July 2014 contempt judgment.

Moreover, the PSC has not cited a single legal authority for the notion that stock ownership by a U.S. company in a foreign company somehow means that the foreign company or its affiliates are conducting business in the United States. In fact, the case law is to the contrary. *See, In Duravest, Inc. v. Viscardi, A.G.*, 581 F. Supp. 2d 628, 636, fn. 6 (S.D.N.Y. 2008) ("as to BMTS's twenty-three New York shareholders, plaintiff's counsel has not pointed to any case holding that shareholders' residence within a forum is sufficient to establish personal jurisdiction over the corporation, and admitted at oral argument that he knew of no such case. Indeed, other authority suggests the contrary.") (citing *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 218 (5th Cir. 2000) ("[A] foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent." (internal quotation marks omitted)); *Stutzman v. Rainbow Yacht Adventures Ltd.*, 2007 WL 415355, 2007 U.S. Dist. LEXIS 8697 (N.D.Tex. Feb. 7, 2007) ("Neither the residency nor the citizenship of a controlling shareholder will establish personal jurisdiction over the company.")).

In short, the PSC's May 18, 2015 subpoena undoubtedly imposes an undue burden or expense on JPMorgan Chase & Co., particularly when the PSC seeks "all financial transactions" between all of the defendants (which number in excess of 83) and JPMorgan Chase & Co. and its affiliates. The subpoena should therefore be quashed.

Additionally, even if the discovery was somehow relevant, the PSC has not complied with the Court's order to narrowly tailor the requests. Instead, the PSC has expanded the scope

of the requests by asking JPMorgan Chase & Co. to produce "all financial transactions" between JPMorgan Chase & Co. (and its foreign and domestic affiliates) and all of the defendants, including 83 separate Taishan affiliates in the U.S. and China. It is hard to fathom a broader request than a request for "all financial transactions" directed to a bank holding company. And the mere fact that JPMorgan Chase & Co. entities held positions in CNBM's publicly-traded stock cannot serve as a justification for JPMorgan Chase & Co. to search its entire corporate family in the hopes of finding information about one of the purported 83 Taishan affiliates. Under these circumstances, the May 18, 2015 subpoena is facially overbroad and should be quashed.

### III. The PSC Is Ignoring This Court's October 25, 2011 Ruling Prohibiting This Discovery.

Also, the PSC has not complied with this Court's ruling from October 2011 in which the Court held that the PSC cannot proceed with third-party discovery against JPMorgan Chase & Co. without adequately demonstrating that JPMorgan Chase & Co. has custody or control over documents and information that might be possessed by a JPMorgan Chase & Co. subsidiary. (Dkt. 10854, at p. 15.) Finally, JPMorgan Chase & Co. believes that it is improper to seek this third-party discovery when the Defendants have appeared in this proceeding and are engaging in discovery with the PSC. *See, e.g., Wiwa v. Royal Dutch Petroleum*, 392 F.3d 812, 818 (5th Cir. 2004) (for subpoenas to non-parties, courts focus on the "expense and inconvenience to that party"). All of the documents and information sought by the PSC in its third-party subpoena should be obtained from the Defendants, not JPMorgan Chase & Co.

## CONCLUSION

For the foregoing reasons, JPMorgan Chase & Co. respectfully requests that the Court grant JPMorgan Chase & Co.'s cross-motion and quash the PSC's May 18, 2015 subpoena.

Respectfully submitted,

/s/ Gabriel A. Crowson
Michael D. Ferachi (#19566)
Gabriel A. Crowson (#28009)
**McGlinchey Stafford, PLLC**
601 Poydras Street, 12th Floor
New Orleans, Louisiana 70130
Telephone: (504) 586-1200
Fax: (504) 596-2800

*Counsel for Non-Party, JPMorgan Chase & Co.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all counsel of record, via the Court's ECF system, this 31st day of May, 2015.

/s/ Gabriel A. Crowson
Gabriel A. Crowson