## Crowson, Gabe

| | |
|---|---|
| **From:** | Bruce Steckler <Bruce@stecklerlaw.com> |
| **Sent:** | Friday, May 08, 2015 3:59 PM |
| **To:** | Crowson, Gabe |
| **Cc:** | Matthew Gaughan; Arnold Levin (alevin@lfsblaw.com); Fred Longer; Russ Herman; Leonard A. Davis (LDAVIS@hhkc.com); Madelyn O'Brien; Lillian Flemming; 'Sandy Duggan' (sduggan@lfsblaw.com) |
| **Subject:** | JP Morgan Documents |
| **Attachments:** | JP Morgan.pdf |

Pursuant to the Court's directives, we are attaching revised document requests. The scope of the deposition will encompass these document requests and the topics previously outlined. Matt Gaughan and I would like to schedule a meeting with you on **Friday, May 15th at Herman, Herman & Katz in New Orleans** to discuss the documents and deposition. If you have any questions, please do not hesitate to contact us. We appreciate your professional courtesies.

Yours, Bruce Steckler

**Bruce W. Steckler**
**STECKLER, LLP**
12720 Hillcrest Road
Suite 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
www.StecklerLaw.com


EXHIBIT A

# JP Morgan Document Requests
**DEFINITIONS & INSTRUCTIONS**

1.  Whenever used in this Request, the following terms shall have the following meanings:

    (a) "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

    (b) "Computer" means all devices utilizing microchips to facilitate processing, analysis, or storage of data, including microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (also known as personal digital assistants or PDA's), minicomputers and mainframe computers.

    (c) "Concerning" means relating to, referring to, describing, evidencing, embodying, or constituting.

    (d) "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations. Documents shall include all drafts, including drafts with "track changes," and shall be deemed to be separate documents within the meaning of this term.

    (e) "Electronically stored information" or "ESI" means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings and data compilations in any form, and of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. ESI includes, by way of example only, computer programs

(whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts and transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail displaying full e-mail alias's (not merely "display names), electronic calendars, I'm logs, PBX logs, document management system data, operating systems, all metadata, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said ESI consists in an active file, deleted file or file fragment. Electronically stored information includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and transmittal. The term ESI also includes the file, folder tabs and containers and labels appended to, or associated with, any physical storage device associated with each original and copy.

(f) "Electronic media" means any magnetic or other storage media device used to record electronically stored information. Electronic media devices may include computer memories, hard disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and transmittal.

(g) "Identify" with respect to persons, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person,

additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(h) "Identify" with respect to documents, means to give, to extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

(i) "Including" or "includes" means including, without limitation.

(j) "You," or "your" means each of the individual named entities to whom this set of discovery is directed, and any of its domestic or international predecessors in interest, successors in interest, subsidiaries, divisions, subdivisions, affiliates, officers, directors, employees, representatives, independent contractors, consultants, or agents, whether present or former, including but not limited to their attorneys and accountants.

(k) "Taishan" means Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.

(l) "Chinese drywall" relates to drywall, plasterboard, or wallboard manufactured in China.

(m) "Person" means any natural person or any business, legal, or governmental entity or association.

(n) "Taishan Affiliates and Subsidiaries" shall include the below listed entities and any of their parents, related entities, subsidiaries, agents and assigns:

> (a) State-owned Assets Supervision and Administration Commission of the State Counsel ("SASAC");
>
> (b) China National Building Materials Group Co., Ltd. ("CNBM Group");

(c) China Cinda Asset Management Co., Ltd. ("Cinda");

(d) China Building Materials Academy;

(e) Beijing New Building Material Group Co., Ltd. ("BNBM Group");

(f) China National Building Material Import and Export Company ("CNBM Trading");

(g) CNBM Forest Products, Ltd.;

(h) CNBM Forest Products (Canada), Ltd.;

(i) China National Building Material Co., Ltd. ("CNBM");

(j) China United Cement Corporation (f/k/a China United Cement Group Corporation, Ltd.) (f/k/a China United Cement Co., Ltd.) ("China United");

(k) China United Cement Huaihai Co., Ltd. (f/k/a China United Julong Huaihai Cement Co., Ltd.);

(l) Qingzhou China United Cement Company Limited (f/k/a China United Qingzhou Luhong Cement Co., Ltd.);

(m) China United Cement Zaozhuang Company, Limited (f/k/a Zaozhuang China United Luhong Cement Co., Ltd.);

(n) China Composites Group Corp., Ltd. ("China Composites");

(o) Lianyungang Zhongfu Lianzhong Composite Material Group Co., Ltd. ("Zhongfu Lianzhong");

(p) Shanghai Yaohua Pilkington Glass Co., Ltd.;

(q) Changzhou China Composites Liberty Co., Ltd. ("Zhongfu Liberty");

(r) Changzhou China Composites Tianma Fiberglass Products Co., Ltd. ("Zhongxin Tianma");

(s) Changzhou Liberty TOLI Building Material Co., Ltd. ("Liberty TOLI");

(t) China Fiberglass Co., Ltd. ("China Fiberglass");

(u) Jushi Group Co., Ltd. ("Jushi Group");

(v) China Triumph International Engineering Co., Ltd. ("CTIEC");

(w) Nanjing Triumph International Engineering Company Limited (f/k/a China Triumph International Engineering Company Limited) (f/k/a China Triumph Nanjing Cement Technological Engineering Co., Ltd.);

(x) CTIEC Shenzhen Scieno-tech Engineering Co., Ltd.;

(y) China Triumph Bengbu Engineering and Technology Co., Ltd. ("Bengbu Triumph");

(z) CNBM Investment Company Limited (f/k/a BND Co., Ltd.);

(aa) Beijing New Building Material Public Limited Company ("BNBM")

(bb) Beijing New Building Materials Homes Co., Ltd.

(cc) BNBM Suzhou Mineral Fiber Ceiling Company, Limited (f/k/a "Suzhou Tianfeng New Building Material Co., Ltd.")

(dd) Taishan Gypsum Co., Ltd. (f/k/a Shandong Taihe Dongxin Co., Ltd.) ("Taishan");

(ee) Qinhuangdao Taishan Building Materials Co., Ltd. (a/k/a Qinhuang Dao Taishan Building Materials Co., Ltd.);

(ff) Tai'an Taishan Plasterboard Co., Ltd. ("TTP");

(gg) China United Luhong Cement Co., Ltd.;

(hh) China United Nanyang Co.;

(ii) Xingtai China United Ziyan Co., Ltd.;

(jj) China National Building Materials and Equipment Import and Export Corporation ("China Equipment");

(kk) Shenzhen B&Q Decoration & Building Materials Co., Ltd. ("Shenzhen B&Q");

(ll) Beijing Incubator New Material Company Limited;

(mm) Ningbo Beijing New Construction Materials Company Limited;

(nn) Shenzhen Beijing New Real Estate Company Limited

(oo) United Suntech Craft, Inc. a/k/a United Suntech Craft, Inc., 2006 LIMITED;

(pp) Jiangjin Taishan Gypsum Construction Material Company Limited;

(qq) Hengshui Taishan Gypsum Construction Material Company Limited;

(rr) Dongguan BNBM Housing Design and Engineering Company Limited;

(ss) Beijing Jieruixin Door & Window Company Limited;

(tt) Chengdu Beijing New Construction Materials Company Limited;

(uu) Taicang Beijing New Construction Materials Company Limited;

(vv) Taian Donglian Investment Trading Company Limited;

(ww) Fuxin Taishan Gypsum Construction Material Company Limited;

(xx) Zhejiang Wenzhou Taishan Gypsum Construction Material Company Limited;

(yy) Hebei Taishan Huaao Construction Material Company Limited;

(zz)   CNBM Energy Co., Ltd. ("CNBM Energy");

(aaa)  CNBM Forest Products New Zeland Limited ("Forest Products NZ");

(bbb)  CNBM Forest Products Trading, Ltd.;

(ccc)  CNBM International Corporation;

(ddd)  CNBM International Engineering Co. Ltd;

(eee)  CNBM Technology Co., Ltd.;

(fff)  CNBM International Equipment, Co.;

(ggg)  CNBM USA, Corp.;

(hhh)  CTIEC-TECO;

(iii)  CNBM – CMAX;

(jjj)  CNBM- Parts;

(kkk)  CNBM Solar;

(lll)  BNBM of America, Inc.;

(mmm)  BNBMG Metal; and

(nnn)  INTECH Building Co., Ltd.;

(ooo)  China Investment Corporation;

(ppp)  China Investment Corporation International Co., Ltd.;

(qqq)  Beijing Wonderful Investment, Ltd.;

(rrr)  Chengdong Investment Corporation;

(sss)  Country Forest Ltd.;

(ttt)  Full Blossom Investment Corporation;

(uuu)  Country Hill, Ltd.;

    (vvv)    Bridge Hill Investment;

    (www)    Harvest Investment Corporation;

    (xxx)    Stable Investment Corporation;

    (yyy)    Land Breeze S.A.R. I;

    (zzz)    Land Breeze II;

    (aaaa)    Fengmao Investment Corporation;

    (bbbb)    Terrific Investment Corporation;

    (cccc)    Flourish Investment Corporation;

    (dddd)    Leader Investment Corporation; and

    (eeee)    Guangli Investment Corporation.

2.     The following rules of construction apply to all discovery requests:

    (a)    The terms "all" and "each" shall be construed as all and each;

    (b)    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

    (c)    The use of the singular form of any word includes the plural and vice versa; and

    (d)    Requests that are stated in the present tense include the past tense and those in the past tense include the present tense.

3.     Unless otherwise specifically stated, this Request encompasses documents, which were created, received, or generated or otherwise entered into your possession, custody, or control between January 1, 2012 and the current date (the "Relevant Time Period").

4. Any document falling within the scope of this Request that is withheld on the basis of a claim of privilege, work product, or any other ground is to be identified in a privilege log, produced in an electronic format that allows text searching and organization of data. You shall produce a privilege log within 5 days after the production of documents for which privilege is asserted to apply. For each document for which You assert a privilege applies, you must provide in the privilege log: (a) a statement of the ground alleged for withholding such document; (b) the date of the document; (c) the location of any attachments associated with the document and whether the asserted privilege also applies to such attachments; (d) the identity of its author and signatories; (e) the type of document (*e.g.*, letter); (f) a summary of its content; (g) its present location and custodian; and (h) a listing of all persons to whom the contents of such documents have been disclosed and all persons who have or have had possession, custody, or control of the documents (or any portions thereof), pursuant to Federal Rule of Civil Procedure 45(d)(2). Notwithstanding the assertion of an objection, any purportedly privileged document containing non-privileged matter must be disclosed with the purportedly privileged portion redacted, with the redacted portion indicated on the document itself and listed on the privilege log to be provided pursuant to this paragraph.

To assist in the prompt resolution of disputed claims of privilege, You shall submit to the Court under seal, unredacted copies of all documents for which it asserts a privilege.

5. If you are unable to comply fully with any of the specific requests, you shall comply to the extent possible and provide an explanation as to why full compliance is not possible. In the event that any documents called for by this Request were formerly in your possession, custody or control, or have been lost or destroyed, those documents are to be identified in writing as follows: persons who prepared or authorized the documents indicated or

blind copies; dates of preparation or transmittal; subject matter; number of pages, attachments or appendices; all persons to whom distributed, shown or explained; date or dates of loss or destruction; and if destroyed, the manner of destruction, reason for destruction, persons authorizing destruction and persons destroying the documents.

6. This Request is directed to all documents within your possession, custody or control, or within the possession of any of your agents, or within the possession of any entity associated with you, or within the possession, custody, or control of such entity's directors, officers, agents, servants, employees, consultants, and professionals.

7. Documents are to be produced in full and in their unexpurgated form. Redacted documents shall not constitute compliance with this Request, unless such documents are redacted pursuant to any claim of privilege as set forth in paragraph 4 above.

8. Documents shall be produced in their original language (*e.g.*, Mandarin) and, if the original documents are in any language other than English, you shall include translations of such documents into English.

9. This Request is intended to be consistent with the Federal Rules of Civil Procedure 26 and 34.

10. All hard copy documents and electronically stored information (ESI) produced in response to this Request shall be organized and labeled either to correspond with the number of the specific request to which the documents are responsive or shall be produced in the order, format, and manner in which they are kept in the usual course of business. With respect to the production of electronically stored information, all ESI that is demanded is to be produced in its native usable format, as maintained on the computer storage systems, regardless of whether such ESI exists (and/or may have been copied and/or otherwise converted) in more than one electronic

format. Plaintiffs have filed an emergency motion before the Honorable Eldon E. Fallon in the United States District Court for the Eastern District of Louisiana requesting that you be ordered to provide full and complete responses, including the document requests within ten (10) days of your receipt of the instant discovery.

## DOCUMENTS TO BE PRODUCED

1. All documents and communications between or among you and Taishan and/or the Taishan Affiliates and Subsidiaries with respect to the conduct of any business in the United States by such entities, since July 17, 2014.

2. All documents concerning investments by Taishan and/or the Taishan Affiliates and Subsidiaries in the United States since July 17, 2014, including, but not limited, to the following:

    (a) All accounts, stocks, bonds, notes, and other securities of Taishan and/or the Taishan Affiliates and Subsidiaries located in the United States (including any profits or appreciation of such investments);

    (b) Investments, loans, letters of credit, ownership or security interests of Taishan and/or the Taishan Affiliates and Subsidiaries in any corporate entities, joint ventures or partnerships located in the United States (including any profits or appreciation of such investments);

    (c) All personal or real property interests of Taishan and/or the Taishan Affiliates and Subsidiaries located in the United States (including any profits or appreciation of such investments), and

    (d) All assets in the United States of any kind whatsoever which Taishan and/or the Taishan Affiliates and Subsidiaries own or owned directly or indirectly, in whole or in part, as sole owner or jointly with others, either of record or beneficially, including without limitation as a partner, general or limited, limited liability member, fiduciary, and as equity or debt holder, or demand deposit holder (including any profits or appreciation of such investments).

3. All documents or communications reflecting preexisting loans or investments by Taishan and/or the Taishan Affiliates and Subsidiaries in you (including any profits, appreciation, payments, or transfers of such loans or investments since July 17, 2014).

4. All documents or communications reflecting any loans or investments by Taishan and/or the Taishan Affiliates and Subsidiaries in you since July 17, 2014 (including any profits, appreciation, payments, or transfers of such loans or investments).

5. All documents and communications regarding the profits earned by Taishan and/or the Taishan Affiliates and Subsidiaries (by quarter and calendar year) with respect to their conduct of any business in the United States since July 17, 2014.

6. All documents and communications regarding the profits earned by Taishan and/or the Taishan Affiliates and Subsidiaries (by quarter and calendar year) for 2014 and 2015.

7. All documents and communications reflecting stockholdings that existed on or after July 17, 2014 in the Taishan Affiliates and Subsidiaries by the following entities:

   a. J.P. Morgan Securities, LLC
   b. J.P. Morgan Clearing Corp.
   c. JF Asset Management Limited
   d. JPMorgan Asset Management (Taiwan) Limited
   e. J.P. Morgan Investment Management, Inc.
   f. J.P. Morgan Whitefriars, Inc.
   g. J.P. Morgan Securities plc
   h. JPMorgan Chase Bank, N.A.
   i. JPMorgan Asset Management (UK) Limited
   j. JPMorgan Chase & Co.

8. Any and all communications with any officers and directors of the Taishan Affiliates and Subsidiaries on or after July 17, 2014.

9. Any and all communications with brokers and traders regarding the sponsorship or private placement of shares of the Taishan Affiliates and Subsidiaries on or after July 17, 2014.

10. Any prospectuses and financial reports received from the Taishan Affiliates and Subsidiaries regarding Your holdings in those companies to the extent such holdings existed on or after July 17, 2014.

11. Any and all documents and/or communications by, between, or with the Taishan Affiliates and Subsidiaries regarding and/or involving the Industrial and Commercial Bank of China- China International Domestic Demand Dynamic Stock fund since July 17, 2014.

12. Any and all documents regarding Warrants of the Taishan Affiliates and Subsidiaries held by You on or after July 17, 2014.

13. Any and all documents and or communications by and between Zhiping Song and You since July 17, 2014.

14. Any and all documents regarding Your active holdings in the Taishan Affiliates and Subsidiaries, including but not limited to insider filings, warrants, and callable bull or bear contracts ("CBBC") and any other options or trades, that existed on or after July 17, 2014.