# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CHINA NATIONAL BUILDING | § | |
| MATERIAL INVESTMENT CO., | § | |
| LTD. (F/K/A BND CO., LTD.) | § | |
|     Plaintiff, | § | |
| | § | CIV. ACTION NO. 14-CV-00701-SS |
| vs. | § | |
| | § | |
| BNK INTERNATIONAL, LLC and | § | JURY TRIAL DEMANDED |
| JEFFREY J. CHANG | § | |
|     Defendants. | § | |

## DEFENDANTS' JOINT MOTION TO DISMISS
## AS RESULT OF APPARENT INJUNCTION AGAINST PLAINTIFF

Defendants Jeffrey J. Chang ("Chang") and BNK International, LLC ("BNK", and together with Chang, "Defendants") file this Joint Motion to Dismiss as Result of Apparent Injunction Against Plaintiff ("Motion") and show:

1.      Recently, on April 25, 2015, Defendants were served with a subpoena commanding their appearance for deposition and production of documents, in relation to an injunction issued by the Honorable Eldon E. Fallon by *Order* ("Injunction Order") entered July 17, 2014, at Docket No. 17869, in *In re Chinese Manufactured Drywall Products Liability Litigation*, Case No. 09-MD-02-47-EEF, In the US District Court for the Eastern District of Louisiana (the "Drywall Litigation"). A copy of the Injunction Order is attached as **Exhibit A**. A copy of the Subpoena (w/o exhibits to BNK subpoena since duplicative of Chang Subpoena exhibits), Amended Subpoena, and *Order Authorizing Expedited Return on Discovery Requests and Shorten Time to Notice Depositions* are attached, respectively, as **Exhibits B**, **C**, and **D**.

2.      The Injunction Order provides, in part:

IT IS FURTHER ORDERED that Taishan [Gypsum Co., Ltd., f/k/a  Shandong Taihe Dongxin Co., Ltd.,], **and any of its affiliates** or subsidiaries, is hereby ENJOINED from conducting any business in the United States until or unless it

participates in this judicial process. If Taishan violates this injunction, it must pay a further penalty of 25% of the profits earned by the company or its affiliates who violate the order, for the year of the violation.

Order, p. 3 (emphasis added).

3.     Under information and belief, Plaintiff, China National Building Investment Co. Ltd. ("CNBMI"), is an affiliate of Taishan. *See* Exhibit C at p. 12 ¶ (z), **Exhibit E** (from China National Building Materials Co. Ltd. ("CNBM") 2014 Annual Report showing it is 100% owner of CNBMI), and **Exhibit F** at ¶ 28 (Opinion signed September 26, 2014 by Judge Fallon finding and concluding CNBM is affiliate of Taishan). Despite request by Chang, CNBMI did not confirm or deny it is an affiliate of Taishan.

4.     This lawsuit was filed July 30, 2014, which was subsequent to the Injunction Order entered on July 17, 2014. Thus, it appears CNBMI was enjoined from filing this lawsuit but did so anyway.

5.     Defendants learned about the Injunction Order for the first time on April 25, 2015.

6.     In conferring with CNBMI, it believes the Injunction Order has no relevance to this case. CNBMI did not confirm or deny it is an affiliate of Taishan.

7.     Defendants seek direction from this Court on the significance of the Injunction Order, and Defendants believe they have a duty to disclose it to the Court.

8.     Defendants believe the Injunction Order might be relevant to this Court. Thus, they prefer this Court, not the litigants, determine the relevance or not of the Injunction Order.

9.     If the Injunction Order barred this lawsuit from being filed in the first instance, Defendants ask that CNBMI's claims be dismissed. Solely to the extent the Court dismisses

CNBMI's claims based on the Injunction Order, Defendants have no objection to the Court contemporaneously dismissing their counterclaims without prejudice so as to close this case entirely.

WHEREFORE, Defendants pray the Court considers this Motion and finds CNMBI's claims were barred by the Injunction Order and orders all claims dismissed and grants Chang such other relief the Court deems just.

Date: May 12, 2015

Respectfully submitted,

*/s/ Peter C. Ruggero*
Peter C. Ruggero
Texas Bar No. 24044376
RUGGERO LAW FIRM PC
1411 West Avenue, Ste 200
Austin, TX 78701
Telephone: 512.473.8676
Facsimile: 512.852.4407
peter@ruggerolaw.com

*Attorney for Jeffrey J. Chang*

*/s/ Brent A. Devere*
Brent A. Devere
Texas Bar No. 00789256
1411 West Avenue, Ste 200
Austin, TX 78701
Telephone: 512-457-8080
Facsimile: 512-457-8060
BDevere@1411west.com

*Attorney for BNK International, LLC*

## CERTIFICATE OF CONFERENCE

I certify that I conferred with Ed Perkins, counsel for Plaintiff, by phone on May 1st and 8th of 2015 regarding the relief requested and by email exchanges on May 1st and 4th of 2015. Plaintiff opposes the relief requested.

*/s/ Peter C. Ruggero*
Peter C. Ruggero

## CERTIFICATE OF SERVICE

I certify that on May 12, 2015 a true and correct copy of the foregoing initial disclosures were served on the parties identified below in the method indicated.

Counsel to Plaintiff:
R. Edward Perkins
Sheehy, Ware & Pappas, P.C.
909 Fannin Street, Suite 2500          */s/ Peter C. Ruggero*
Houston, Texas 77010                    Peter C. Ruggero
*Via email eperkins@sheehyware.com*

Ray Hughes
Leech Tishman Fuscaldo & Lampl, LLC
4225 Naperville Road, Suite 230
Lisle, Illinois 60532
*Via email rhughes@leechtishman.com*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL | : | MDL NO. 2047 |
| PRODUCTS LIABILITY LITIGATION | : | SECTION:  L |
|  | : |  |
|  | : | JUDGE FALLON |
|  | : | MAG. JUDGE WILKINSON |

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . :

**THIS DOCUMENT RELATES TO:** *Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* **Case No. 2:09-cv-6687 (E.D. La.)**

## ORDER

From 2005 to 2008, a housing boom coincided with the destruction caused by Hurricanes Katrina and Rita to sharply increase the demand for construction materials in the Gulf South and East Coast. In response, Chinese companies manufactured, and sold to homeowners throughout the United States, considerable quantities of gypsum wallboard which came to be known as "Chinese drywall." Homeowners experienced problems with the drywall. Specifically, the drywall emits various sulfide gases, damages structural mechanical and plumbing systems of the home, and damages other appliances in the home. The affected parties sued the entities involved in the manufacturing, importing, and installing the Chinese drywall. The cases multiplied and the Judicial Panel on Multidistrict Litigation ("MDL"), declared the matter an MDL and transferred the cases to this Court. After a period of discovery, it became clear that there were two principal manufacturers, (1) the Knauf Entities, and (2) the Taishan Entities. There are four cases in particular in which Taishan Entities have been served (via international means at the Hague, costing at least $100,000 per service of process). These four cases are *Germano*, *Mitchel*, *Gross*, and *Wiltz*. The matters were set to trial and default judgments were entered. In the instant case, *Germano*, Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd ("Taishan") is the



Defendant. Taishan refused to participate in any of these proceedings.

The day before the expiration of the window for appeal, Taishan appeared and appealed to the Fifth Circuit Court of Appeals, arguing – for the first time – that this Court lacked personal jurisdiction. The matters were remanded to this Court for further discovery on the jurisdictional issue. After a period of discovery, this issue was briefed and argued. In due course, this Court rendered an opinion finding it had jurisdiction over the Defendant Taishan. The Defendant appealed the Court's judgment. Ultimately, two separate Fifth Circuit panels affirmed this Court's exercise of jurisdiction over Taishan. In *Germano*, the time for seeking writs to the Supreme Court has passed, so such judgment has become final and enforceable. In order to execute the judgment, Plaintiffs moved for a Judgment Debtor Examination. The Court ordered Taishan to appear in open court on the morning of July 17, 2014 for a Judgment Debtor Examination (Rec. Doc. 17774).

Taishan failed to appear for the July 17, 2014 Judgment Debtor Examination. Taishan, in fact, has *refused* to appear in open court for the Examination. As stated by counsel for Taishan, both in open court and in a brief (Rec. Doc. 17846), Taishan has received notice of the Examination and has refused to appear or otherwise participate in the proceedings.

As a consequence of Taishan's refusal to appear at this Judgement Debtor Examination, in direct, willful violation of this Court's June 20, 2014 order, the Court holds Taishan in contempt of court, both criminally and civilly. This refusal to appear is a direct contemptuous act occurring in open court after actual notice of the proceedings. Such disobedience of the Court's order harms both the many other parties in this case and the decorum of the Court. Due to the "affront to the Court's dignity [that] is [] widely observed," it is necessary to summarily punish

Taishan's contempt. *Pounders v. Watson*, 521 (U.S. 982, 988-89) (1997); Fed. Rule Crim. Pro. 42(b).

In punishing Taishan's contempt, the Court "has broad discretion in assessing sanctions to protect the sanctity of its decrees and the legal process." *Test Masters Educational Servs. v. Singh*, 428 F.3d 559 (5th Cir. 2005). In this massive suit, the harm from Taishan's noncompliance is high and requires strong sanctions to coerce compliance and restore integrity to these proceedings. *Lamar Financial Corp. v. Adams*, 918 F.2d 564, 567 (5th Cir. 1990) (setting forth four factors by which the Court assesses an appropriate contempt sanction); *see Manhattan Industries v. Sweater Bee, Ltd.*, 885 F.2d 1, 6 (2d Cir. 1989) (affirming the propriety of an award of unjust enrichment contempt sanctions aligned with the contemptor's profits to punish the wrongdoing). Accordingly,

**IT IS ORDERED** that Taishan pay **$15,000** in attorneys' fees to Plaintiffs' counsel.

**IT IS FURTHER ORDERED** that Taishan pay **$40,000** as a penalty for contempt.

**IT IS FURTHER ORDERED** that Taishan, and any of its affiliates or subsidiaries, is hereby **ENJOINED** from conducting any business in the United States until or unless it participates in this judicial process. If Taishan violates this injunction, it must pay a further penalty of **25%** of the profits earned by the company or its affillates who violate the order, for the year of the violation.

**IT IS FURTHER ORDERED** that the clerk of court forward this contempt order to the U.S. Secretary of Commerce, the Chair of the U.S. Senate Committee on Commerce**,** Science, and Transportation, and the U.S. Attorney General, so that these officials are aware of the seriousness of the situation, and for any appropriate action they may see fit.

New Orleans, Louisiana this 17th day of July, 2014.

UNITED STATES DISTRICT JUDGE

CC:    Secretary Penny Pritzker
U.S. Department of Commerce
1401 Constitution Ave., NW
Washington, DC 20230

U.S. Senator Jay Rockefeller
Chair of U.S. Senate Committee on Commerce, Science, and Transportation
Russell Senate Building, Room 254
2 Constitution Ave., NE
Washington, DC 20002

U.S. Attorney General Eric Holder
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530-0001

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

Eastern District of Louisiana

| | |
|---|---|
| In re: Chinese-Manuf. Drywall Products Liab. Lit. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   MDL 2047 |
| | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:
Jeffrey J. Chang, 9102 County Canyon CV,
Austin, TX 78759
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place:  Slack & Davis; 2705 Bee Cave Road Suite 220, Austin, TX 78746 | Date and Time: 05/15/2015 1:00 pm |
|---|---|

The deposition will be recorded by this method:   Oral and Videotaped

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See attached Notice of Expedited Oral and Videotaped Deposition Pursuant to the Court's Directive During the March 17, 2015 Special Hearing and Minute Entry and Order [Rec. Doc. 18493]

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   04/21/2015

| *CLERK OF COURT* | OR | |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Plaintiffs
_____, who issues or requests this subpoena, are:

Plaintiffs' Liaison Counsel, Russ M. Herman/Leonard A. Davis, Herman, Herman & Katz, LLC, 820 O'Keefe Avenue,
New Orleans, LA 70113, (504) 581-4892; email:  ldavis@hhklawfirm.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**EXHIBIT**
**B**

CTH: 4/24/15 e 10^au

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. MDL 2047

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____ 

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

**Chinese Drywall MDL 2047**
820 O'Keefe Ave.
New Orleans, LA 70113
(504) 581-4892

WHITNEY BANK
14-017/650

4081

04/22/2015

PAY TO THE
ORDER OF          Jeffrey J. Chang

$  **75.00

Seventy-five and 00/100*********************************************************************************** DOLLARS

Jeffrey J. Chang
9102 County Canyon CV
Austin, TX 78759

MEMO

⑆004081⑆ ⑈065000171⑈ 717824330⑆

---

Chinese Drywall MDL 2047
04/22/2015          Jeffrey J. Chang
                              Witness Fee

4081

75.00

Cash - Checking Acc                                                        75.00

Chinese Drywa 04/22/2015          Jeffrey J. Chang
                              Witness Fee

4081
75.00

PAYMENT
RECORD

Cash - Checking Acc                                                        75.00

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| x |  |
| x |  |
| IN RE: CHINESE-MANUFACTURED   x | MDL NO. 2047 |
| DRYWALL PRODUCTS LIABILITY   x |  |
| LITIGATION   x | SECTION: L |
| x |  |
| THIS DOCUMENT APPLIES TO ALL   x | JUDGE FALLON |
| CASES   x |  |
| x | MAG. JUDGE WILKINSON |
| x |  |
| x |  |

## NOTICE OF EXPEDITED ORAL AND VIDEOTAPED DEPOSITION PURSUANT TO THE COURT'S DIRECTIVE DURING THE MARCH 17, 2015 SPECIAL HEARING AND MINUTE ENTRY AND ORDER [REC.DOC. 18493]

TO:   Jeffrey J. Chang
      9102 County Canyon CV
      Austin, TX 78759

**PLEASE TAKE NOTICE** that pursuant to Rules 26 and 30 of the Federal Rules

of Civil Procedure, and the Court's Minute Entry and Order dated March 17, 2015 [Rec.

Doc. No. 18493] (attached hereto as Exhibit "1") authorizing expedited discovery of

Taishan and BNBM/CNBM regarding (i) the injunction prong of the Court's July 17,

2014 Order holding Taishan in contempt of court, criminally and civilly [Rec. Doc. No.

17869], and (ii) whether there exist alter ego relationships between and among these

entitities, plaintiffs, by and through their undersigned attorneys, the Plaintiffs' Steering

Committee in the MDL, will take the deposition of **Jeffrey J. Chang,** on May 15, 2015 at

1:00 p.m. (central) at the offices of **Slack & Davis; 2705 Bee Cave Road Suite 220,**

**Austin, TX 78746 Ph:  (512)795-8686**  or at another location mutually agreed upon by

1

the parties. Further, the deponent is requested to produce the documents identified in the attached Schedule "A" to which deposition questions will be asked. Also attached hereto as Exhibit "A" is a subpoena with respect to the instant discovery requests and deposition.

**If you are an attorney of record, please email cdw@golkow.com 48 hours prior to the deposition should you desire to participate by stream to view video/text so you may receive a username and password.**

Primary Examiners:   A Member of the PSC, or its designee
Videotaped Deposition: Yes
Call-In Number:    **888-337-8218**
                       **Participant Code: 769758**

The deposition will be taken before a person authorized by law to administer oaths, pursuant to Fed. R. Civ. P. 28, and will continue from day-to-day, upon an expedited basis, until the examination is completed.

Pursuant to directives provided at the status conference on May 27, 2010, a brief explanation of the subject matter expected at this deposition is as follows: The deposition will be conducted in furtherance of discovery related to the topics identified at the hearings before the Honorable Eldon E. Fallon on March 17, 2015 and April 17, 2015 and in the Court's Minute Entry and Order dated March 17, 2015. This brief explanation is with full reservation of all rights by the noticing party and is not intended to limit in any way the scope of the deposition noticed herein. Counsel should be aware that all matters may be discovered in the deposition and that the above explanation is made solely in accordance with the directives provided at the status conference. This is an MDL "common" fact witness deposition.

2

Respectfully submitted,

/s/ Russ M. Herman

**Russ M. Herman** (Bar No. 6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*HERMAN, HERMAN & KATZ, LLC*
820 O'Keefe Avenue
New Orleans, LA 70113
PH: (504) 581-4892
FAX: (504) 561-6024
ldavis@hhkc.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin
Fred S. Longer
Sandra L. Duggan
Matthew C. Gaughan
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
PH: (215) 592-1500
FAX: (215) 592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Peter Prieto
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Bruce William Steckler
Steckler, LLP
12720 Hillcrest Road, Ste 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-404
mailto:bsteckler@baronbudd.com
bruce@stecklerlaw.com

Ervin A. Gonzalez
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
ervin@colson.com

Jerrold Seth Parker
Parker Waichman, LLP
27300 Riverview Center Blvd.
Suite 103
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@attorneys4people.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

4

Case 2:09-md-02047-EEF-MBN Document 19930-1 Filed 06/01/16 Page 17 of 109
Case 1:14-cv-00701-JSS Document 28-2 Filed 05/22/15 Page 8 of 47
Case 2:09-md-02047-EEF-JCW Document 18727 Filed 04/21/15 Page 5 of 30

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr., Esquire
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
rlewis@hausfeldllp.com

Anthony D. Irpino
IRPINO LAW FIRM
2216 Magazine Street
New Orleans, LA 70130,
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Notice of Expedited Oral and Videotaped Deposition Pursuant to the Court's Directive During the March 17, 2015 Special Hearing and Minute Entry and Order [Rec.Doc. 18493] has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 21st day of April, 2015.

/s/ Leonard A. Davis
Leonard A. Davis
Herman, Herman & Katz, LLC
820 O'Keefe Ave.
New Orleans, LA 70113
PH: (504) 581-4892
Fax: (504) 561-6024
ldavis@hhklawfirm.com

# SCHEDULE A

## DEFINITIONS & INSTRUCTIONS

    1.    Whenever used in this Request, the following terms shall have the following meanings:

    (a)    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

    (b)    "Computer" means all devices utilizing microchips to facilitate processing, analysis, or storage of data, including microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (also known as personal digital assistants or PDA's), minicomputers and mainframe computers.

    (c)    "Concerning" means relating to, referring to, describing, evidencing, embodying, or constituting.

    (d)    "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations. Documents shall include all drafts, including drafts with "track changes," and shall be deemed to be separate documents within the meaning of this term.

    (e)    "Electronically stored information" or "ESI" means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments,

annotations, marks, transmission notations, or highlighting of any kind) of writings and data compilations in any form, and of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means.  ESI includes, by way of example only, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts and transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail displaying full e-mail alias's (not merely "display names), electronic calendars, I'm logs, PBX logs, document management system data, operating systems, all metadata, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said ESI consists in an active file, deleted file or file fragment. Electronically stored information includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including,  EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and transmittal.  The term ESI also includes the file, folder tabs and containers and labels appended to, or associated with, any physical storage device associated with each original and copy.

(f)     "Electronic media" means any magnetic or other storage media device used to record electronically stored information.  Electronic media devices may include computer memories, hard disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched

cards, punched tape, computer chips, including, EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and transmittal.

(g)     "Identify" with respect to persons, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(h)     "Identify" with respect to documents, means to give, to extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

(i)     "Including" or "includes" means including, without limitation.

(j)     "You," or "your" means each of the individual named entities to whom this set of discovery is directed, and any of its domestic or international predecessors in interest, successors in interest, subsidiaries, divisions, subdivisions, affiliates, officers, directors, employees, representatives, independent contractors, consultants, or agents, whether present or former, including but not limited to their attorneys and accountants.

(k)     "Taishan" means Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.

(l)     "Chinese drywall" relates to drywall, plasterboard, or wallboard manufactured in China.

(m)    "Person" means any natural person or any business, legal, or governmental entity or association.

(n)    "Taishan Affiliates and Subsidiaries" shall include the below listed entities and any of their parents, related entities, subsidiaries, agents and assigns:

> (a) State-owned Assets Supervision and Administration Commission of the State Counsel ("SASAC");
>
> (b) China National Building Materials Group Co., Ltd. ("CNBM Group");
>
> (c) China Cinda Asset Management Co., Ltd. ("Cinda");
>
> (d) China Building Materials Academy;
>
> (e) Beijing New Building Material Group Co., Ltd. ("BNBM Group");
>
> (f) China National Building Material Import and Export Company ("CNBM Trading");
>
> (g) CNBM Forest Products, Ltd.;
>
> (h) CNBM Forest Products (Canada), Ltd.;
>
> (i) China National Building Material Co., Ltd. ("CNBM");
>
> (j) China United Cement Corporation (f/k/a China United Cement Group Corporation, Ltd.) (f/k/a China United Cement Co., Ltd.) ("China United");
>
> (k) China United Cement Huaihai Co., Ltd. (f/k/a China United Julong Huaihai Cement Co., Ltd.);
>
> (l) Qingzhou China United Cement Company Limited (f/k/a China United Qingzhou Luhong Cement Co., Ltd.);

(m) China United Cement Zaozhuang Company, Limited (f/k/a
Zaozhuang China United Luhong Cement Co., Ltd.);

(n) China Composites Group Corp., Ltd. ("China Composites");

(o) Lianyungang Zhongfu Lianzhong Composite Material Group Co.,
Ltd. ("Zhongfu Lianzhong");

(p) Shanghai Yaohua Pilkington Glass Co., Ltd.;

(q) Changzhou China Composites Liberty Co., Ltd. ("Zhongfu
Liberty");

(r) Changzhou China Composites Tianma Fiberglass Products Co.,
Ltd. ("Zhongxin Tianma");

(s) Changzhou Liberty TOLI Building Material Co., Ltd. ("Liberty
TOLI");

(t) China Fiberglass Co., Ltd. ("China Fiberglass");

(u) Jushi Group Co., Ltd. ("Jushi Group");

(v) China Triumph International Engineering Co., Ltd. ("CTIEC");

(w) Nanjing Triumph International Engineering Company Limited
(f/k/a China Triumph International Engineering Company Limited)
(f/k/a China Triumph Nanjing Cement Technological Engineering
Co., Ltd.);

(x) CTIEC Shenzhen Scieno-tech Engineering Co., Ltd.;

(y) China Triumph Bengbu Engineering and Technology Co., Ltd.
("Bengbu Triumph");

(z) CNBM Investment Company Limited (f/k/a BND Co., Ltd.);

(aa) Beijing New Building Material Public Limited Company ("BNBM")

(bb) Beijing New Building Materials Homes Co., Ltd.

(cc) BNBM Suzhou Mineral Fiber Ceiling Company, Limited (f/k/a "Suzhou Tianfeng New Building Material Co., Ltd.")

(dd) Taishan Gypsum Co., Ltd. (f/k/a Shandong Taihe Dongxin Co., Ltd.) ("Taishan");

(ee) Qinhuangdao Taishan Building Materials Co., Ltd. (a/k/a Qinhuang Dao Taishan Building Materials Co., Ltd.);

(ff) Tai'an Taishan Plasterboard Co., Ltd. ("TTP");

(gg) China United Luhong Cement Co., Ltd.;

(hh) China United Nanyang Co.;

(ii) Xingtai China United Ziyan Co., Ltd.;

(jj) China National Building Materials and Equipment Import and Export Corporation ("China Equipment");

(kk) Shenzhen B&Q Decoration & Building Materials Co., Ltd. ("Shenzhen B&Q");

(ll) Beijing Incubator New Material Company Limited;

(mm) Ningbo Beijing New Construction Materials Company Limited;

(nn) Shenzhen Beijing New Real Estate Company Limited

(oo) United Suntech Craft,Inc. a/k/a United Suntech Craft,Inc., 2006 LIMITED;

(pp)   Jiangjin Taishan Gypsum Construction Material Company Limited;

(qq)   Hengshui Taishan Gypsum Construction Material Company Limited;

(rr)   Dongguan BNBM Housing Design and Engineering Company Limited;

(ss)   Beijing Jieruixin Door & Window Company Limited;

(tt)   Chengdu Beijing New Construction Materials Company Limited;

(uu)   Taicang Beijing New Construction Materials Company Limited;

(vv)   Taian Donglian Investment Trading Company Limited;

(ww)   Fuxin Taishan Gypsum Construction Material Company Limited;

(xx)   Zhejiang Wenzhou Taishan Gypsum Construction Material Company Limited;

(yy)   Hebei Taishan Huaao Construction Material Company Limited;

(zz)   CNBM Energy Co., Ltd. ("CNBM Energy");

(aaa)   CNBM Forest Products New Zeland Limited ("Forest Products NZ");

(bbb)   CNBM Forest Products Trading, Ltd.;

(ccc)   CNBM International Corporation;

      (ddd)     CNBM International Engineering Co. Ltd;

      (eee)      CNBM Technology Co., Ltd.;

      (fff)       CNBM International Equipment, Co.;

      (ggg)     CNBM USA, Corp.;

      (hhh)     CTIEC-TECO;

      (iii)       CNBM – CMAX;

      (jjj)       CNBM- Parts;

      (kkk)     CNBM Solar;

      (lll)       BNBM of America, Inc.;

      (mmm)   BNBMG Metal; and

      (nnn)    INTECH Building Co., Ltd..

2.     The following rules of construction apply to all discovery requests:

      (a)     The terms "all" and "each" shall be construed as all and each;

      (b)     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

      (c)     The use of the singular form of any word includes the plural and vice versa; and

      (d)     Requests that are stated in the present tense include the past tense and those in the past tense include the present tense.

3.     Unless otherwise specifically stated, this Request encompasses documents, which were created, received, or generated or otherwise entered into your

possession, custody, or control between January 1, 2012 and the current date (the "Relevant Time Period").

4. Any document falling within the scope of this Request that is withheld on the basis of a claim of privilege, work product, or any other ground is to be identified in a privilege log, produced in an electronic format that allows text searching and organization of data. You shall produce a privilege log within 5 days after the production of documents for which privilege is asserted to apply. For each document for which You assert a privilege applies, you must provide in the privilege log: (a) a statement of the ground alleged for withholding such document; (b) the date of the document; (c) the location of any attachments associated with the document and whether the asserted privilege also applies to such attachments; (d) the identity of its author and signatories; (e) the type of document (*e.g.*, letter); (f) a summary of its content; (g) its present location and custodian; and (h) a listing of all persons to whom the contents of such documents have been disclosed and all persons who have or have had possession, custody, or control of the documents (or any portions thereof), pursuant to Federal Rule of Civil Procedure 45(d)(2). Notwithstanding the assertion of an objection, any purportedly privileged document containing non-privileged matter must be disclosed with the purportedly privileged portion redacted, with the redacted portion indicated on the document itself and listed on the privilege log to be provided pursuant to this paragraph.

To assist in the prompt resolution of disputed claims of privilege, You shall submit to the Court under seal, unredacted copies of all documents for which it asserts a privilege.

5.     If you are unable to comply fully with any of the specific requests, you shall comply to the extent possible and provide an explanation as to why full compliance is not possible. In the event that any documents called for by this Request were formerly in your possession, custody or control, or have been lost or destroyed, those documents are to be identified in writing as follows: persons who prepared or authorized the documents indicated or blind copies; dates of preparation or transmittal; subject matter; number of pages, attachments or appendices; all persons to whom distributed, shown or explained; date or dates of loss or destruction; and if destroyed, the manner of destruction, reason for destruction, persons authorizing destruction and persons destroying the documents.

6.     This Request is directed to all documents within your possession, custody or control, or within the possession of any of your agents, or within the possession of any entity associated with you, or within the possession, custody, or control of such entity's directors, officers, agents, servants, employees, consultants, and professionals.

7.     Documents are to be produced in full and in their unexpurgated form. Redacted documents shall not constitute compliance with this Request, unless such documents are redacted pursuant to any claim of privilege as set forth in paragraph 4 above.

8.     Documents shall be produced in their original language (e.g., Mandarin) and, if the original documents are in any language other than English, you shall include translations of such documents into English.

9.     This Request is intended to be consistent with the Federal Rules of Civil Procedure 26 and 34.

10.     All hard copy documents and electronically stored information (ESI) produced in response to this Request shall be organized and labeled either to correspond with the number of the specific request to which the documents are responsive or shall be produced in the order, format, and manner in which they are kept in the usual course of business. With respect to the production of electronically stored information, all ESI that is demanded is to be produced in its native usable format, as maintained on the computer storage systems, regardless of whether such ESI exists (and/or may have been copied and/or otherwise converted) in more than one electronic format. Plaintiffs have filed an emergency motion before the Honorable Eldon E. Fallon in the United States District Court for the Eastern District of Louisiana requesting that you be ordered to provide full and complete responses, including the document requests within ten (10) days of your receipt of the instant discovery.

## DOCUMENTS TO BE PRODUCED

1.      For the period July 17, 2014 to the present, all documents and communications involving your business dealings with the parties to the proceedings in the United States District Court for the Western District of Texas, Austin Division, *China Nat. Bldg. Materials Investment Co., Ltd. (f/k/a BND Co., Ltd.) v. BNK International, LLC and Jeffrey J. Chang*, No. 1:14-cv-00701-SS, including but not limited to:

(a)     All written documents or instruments pertaining to agreements for the purchase and sale of hardwood floor products (including any agency agreements involving prospective purchases or sales of hardwood floor products) as well as all documents evidencing business activities undertaken pursuant to such agreements;

(b)     All documents evidencing the purchase or sale of hardwood floor products;

(c)     All documents related to the legal dispute with respect to the proceedings in the United States District Court for the Western District of Texas, Austin Division (including any settlement agreement as well as any related documents), including any related litigation efforts (both domestic and foreign) involving the same underlying dispute;

(d)     Any current dealings and commercial activities involving the parties to the proceedings in the United States District Court for the Western District of Texas, Austin Division;

(e)     All communications between the parties to the proceedings in the United States District Court for the Western District of Texas, Austin Division.

2. All documents and communications between or among you and Taishan and/or the Taishan Affiliates and Subsidiaries with respect to the conduct of any business in the United States by such entities, since July 17, 2014.

3. All documents and communications regarding the profits earned by Taishan and/or the Taishan Affiliates and Subsidiaries (by quarter and calendar year) with respect to their conduct of any business in the United States since July 17, 2014.

4. All documents and communications regarding the profits earned by Taishan and/or the Taishan Affiliates and Subsidiaries (by quarter and calendar year).

## **DEPOSITION TOPICS**

1.     For the period July 17, 2014 to the present, your knowledge regarding your business dealings with the parties to the proceedings in the United States District Court for the Western District of Texas, Austin Division, *China Nat. Bldg. Materials Investment Co., Ltd. (f/k/a BND Co., Ltd.) v. BNK International, LLC and Jeffrey J. Chang*, No. 1:14-cv-00701-SS, including but not limited to:

(a)     Agreements for the purchase and sale of hardwood floor products (including any agency agreements involving prospective purchases or sales of hardwood floor products) as well as all business activities undertaken pursuant to such agreements;

(b)     All purchases or sales of hardwood floor products;

(c)     The legal dispute with respect to the proceedings in the United States District Court for the Western District of Texas, Austin Division (including any settlement agreement as well as any related documents), including any related litigation efforts (both domestic and foreign) involving the same underlying dispute;

(d)     Any current dealings and commercial activities involving the parties to the proceedings in the United States District Court for the Western District of Texas, Austin Division;

(e)     All communications between the parties to the proceedings in the United States District Court for the Western District of Texas, Austin Division.

2.     Your knowledge regarding the conduct of any business in the United States by Taishan and/or the Taishan Affiliates and Subsidiaries, since July 17, 2014.

3.    Your knowledge regarding the profits earned by Taishan and/or the Taishan Affiliates and Subsidiaries (by quarter and calendar year) with respect to their conduct of any business in the United States since July 17, 2014.

4.    Your knowledge regarding the profits earned by Taishan and/or the Taishan Affiliates and Subsidiaries (by quarter and calendar year).

# EXHIBIT "1"

Case 2:09-md-02047-EEF-MBN Document 21903-1 Filed 05/12/05 1 Page 29 of 109
Case 2:14-cv-06701-SSN Document 23-2 Filed 05/12/05 1 Page 2 of 46
Case 2:09-md-02047-EEF-JCW Document 18293 Filed 03/17/15 Page 1 of 30



**MINUTE ENTRY**
**FALLON, J.**
**MARCH 18, 2015**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE MANUFACTURED DRYWALL
PRODUCTS LIABILITY LITIGATION

MDL NO. 2047

SECTION "L"

**THIS DOCUMENT RELATES TO: ALL CASES**

### MINUTE ENTRY AND ORDERS

On this date, the Court heard oral arguments regarding the Plaintiffs' Steering
Committee's motion to preclude Taishan and its affiliates from participating in class damages
proceedings unless and until Taishan purges itself of contempt. (Rec. Doc. 18367). Russ Herman
and Arnold Levin participated on behalf of the Plaintiffs' Steering Committee. Bernard Taylor,
Alan Weinberger, Michael Kenny, and Christina Eikhoff participated on behalf of Taishan
Gypsum Co., Ltd. ("TG") and Tai-an Taishan Plasterboard Co. Ltd. ("TTP"), (TG and TTP
collectively, "Taishan"). James Stengel participated on behalf of China National Building
Materials Group Corporation and China National Building Materials Company Limited
(collectively, "CNBM"). Michael Barr, Michael Moore, Richard Fenton, and Harry Rosenberg
participated on behalf of Beijing New Building Materials Public Limited Company and Beijing
New Building Material (Group) Company Limited (collectively, "BNBM"). The hearing was
transcribed by Ms. Toni Tusa, Official Court Reporter. Counsel may contact Ms. Tusa at (504)
589-7778 to request a copy of the transcript.

JS10(00:82)

After reviewing the parties' memoranda, reviewing the applicable law, and hearing oral argument from all parties, the Court took the motion to preclude under advisement, subject to the conditions ordered by the Court:

1) **IT IS ORDERED THAT** Taishan must purge itself of contempt of court within two weeks of today's date, that is **March 31, 2015**, before the Court will determine the nature, and extent, of Taishan's participation in these proceedings. To purge itself of contempt, Taishan must (a) pay the $15,000 in attorneys' fees to the PSC; (b) pay the *Germano* judgment that formed the basis of the judgment debtor proceedings, amounting to $2,609,099.99 plus pre-judgment interest of $149,256.53 plus post-judgment interest at the judicial rate under 28 U.S.C. § 1961, as of the date of payment, (Rec. Doc. 3013); and (c) pay the associated bill of costs, (*see* Rec. Docs. 17825, 18034). The Court notes that Taishan has paid the $40,000 contempt penalty. (*See* Rec. Doc. 18448).

2) As neither Taishan nor BNBM/CNBM have demonstrated compliance with the injunction prong of the contempt order, (Rec. Doc. 17869), and the Court cannot yet assess whether there is need to enforce the associated penalty of 25% of profits, **IT IS FURTHER ORDERED THAT** the parties shall immediately commence discovery related to the relationship between Taishan and BNBM/CNBM, including whether affiliate and/or alter ego status exists. Discovery shall conclude no later than **April 28, 2015**, at 9:00 a.m. at which time the Court will hear oral argument on the motion for class damages. **IT IS FURTHER ORDERED** that the previously set March 18, 2015 deadline for responses for the motion for class damages is **CONTINUED** and any responses to the motion for class damages now shall be due on **April 20, 2015**.

3) **IT IS FURTHER ORDERED THAT** Taishan and BNBM/CNBM **SHALL**
   participate in alter ego discovery. If Taishan and/or BNBM/CNBM do not participate
   in discovery, the Court will act accordingly to ensure compliance with this and any
   Court order. The Court may, for example, strike defenses asserted by Taishan and
   BNBM/CNBM.

4) **IT IS FURTHER ORDERED THAT** that the Plaintiffs' Steering Committee,
   Taishan, and BNBM/CNBM **SHALL meet and confer** to discuss a discovery plan.
   Any deposition shall occur in New Orleans, Louisiana, unless all parties agree – with
   consent of the Court – that the deposition may occur elsewhere.

The Court retains jurisdiction to take any action necessary to enforce its contempt order,
and any other order discussed herein. If any party violates any of the Court's orders, the Court
"has broad discretion in assessing sanctions to protect the sanctity of its decrees and the legal
process." *Test Masters Educational Servs. v. Singh*, 428 F.3d 559 (5th Cir. 2005). This Court
"possess[es] the inherent authority to enforce [its] own injunctive decrees," an authority that
"runs nationwide." *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985); *see also
United States v. Fisher*, 864 F.2d 434, 436 (7th Cir.1988) ("[W]hen a court issues an injunction,
it automatically retains jurisdiction to enforce it."). The Court reserves its right to determine
whether Taishan and/or BNBM/CNBM must post a bond under Rule 64. The Court further notes
that Taishan and BNBM/CNBM's willingness to participate in discovery process will guide the
Court's determination of the circumstances under which Taishan and BNBM/CNBM may
participate in these proceedings. To allow a party to continue to participate in a proceeding while
the party is in contempt for actions taken in those same proceedings would be, in effect,

rewarding the party for its contemptuous conduct. The Court will take any necessary action to
ensure the sanctity of its decrees and the legal process.

UNITED STATES DISTRICT JUDGE

# EXHIBIT "A"

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Louisiana

| | |
|---|---|
| In re: Chinese-Manuf. Drywall Products Liab. Lit. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. MDL 2047 |
| | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:
Jeffrey J. Chang, 9102 County Canyon CV,
Austin, TX 78759

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Slack & Davis; 2705 Bee Cave Road Suite 220, Austin, TX 78746 | Date and Time: 05/15/2015 1:00 pm |
|---|---|

The deposition will be recorded by this method: Oral and Videotaped

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

.
See attached Notice of Expedited Oral and Videotaped Deposition Pursuant to the Court's Directive During the March 17, 2015 Special Hearing and Minute Entry and Order [Rec. Doc. 18493]

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 04/21/2015

*CLERK OF COURT*

OR

_____        _____
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Plaintiffs
_____ , who issues or requests this subpoena, are:

Plaintiffs' Liaison Counsel, Russ M. Herman/Leonard A. Davis, Herman, Herman & Katz, LLC, 820 O'Keefe Avenue, New Orleans, LA 70113, (504) 581-4892; email: ldavis@hhklawfirm.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. MDL 2047

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00

I declare under penalty of perjury that this information is true.

Date: _____

_____

*Server's signature*

_____

*Printed name and title*

_____

*Server's address*

Additional information regarding attempted service, etc.:

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED<br>DRYWALL PRODUCTS LIABILITY<br>LITIGATION | MDL NO. 2047<br>SECTION: L |
| THIS DOCUMENT APPLIES TO ALL CASES | JUDGE FALLON<br>MAG. JUDGE WILKINSON |

## EMERGENCY MOTION OF THE PLAINTIFFS' STEERING COMMITTEE
## FOR EXPEDITED RETURN ON DISCOVERY REQUESTS
## AND SHORTENED TIME TO NOTICE DEPOSITIONS

NOW INTO COURT come the Plaintiffs' Steering Committee ("PSC"), who shows as follows:

1. Pursuant to the orders and directives of the Court at the special hearing that took place on March 17, 2015, the Court's comments during the status conference on April 17, 2015, and the Court's Minute Entry and Orders dated March 17, 2015 [Rec. Doc. No. 18493] authorizing expedited discovery of Taishan and BNBM/CNBM regarding (i) the injunction prong of the Court's July 17, 2014 Order holding Taishan in contempt of court, criminally and civilly [Rec. Doc. No. 17869], and (ii) whether there exist alter ego relationships between and among these entitities, the PSC has served written discovery upon third-parties, BNK International, LLC (hereafter "BNK") and Jeffery J. Chang, to determine whether Taishan Gypsum Co., Ltd. ("Taishan") or any of its affiliates or subsidiaries have been doing any business in the United States since July 17, 2014.

2. The PSC has learned that in apparent violation of this Court's July 17, 2014 Order enjoining Taishan and its affiliates and subsidiaries from doing any business in the United States until or unless Taishan participates in these judicial proceedings [Rec. Doc.

1

No. 17869], on July 30, 2014, China National Building Material Investment Co., Ltd. (f/k/a BND Co., Ltd.) (hereafter "CNBMI") (a subsidiary of China National Building Material Co., Ltd. ("CNBM") (Taishan's parent company)) filed a lawsuit against BNK and Jeffery J. Chang, the sole officer and director of BNK.

3. The lawsuit instituted by CNBMI against BNK and Jeffrey J. Chang involved a commercial dispute with respect to an agreement whereby BNK had agreed to serve as an agent for purposes of negotiating and secure customers in the United States of America to purchase CNBMI's hardwood floor products. A copy of the agency agreement is attached hereto as Exhibit "A". According to the complaint filed by CNBMI, BNK sold and collected $21,343,145.01 for the sale of hardwood floor products to Lumber Liquidators, Inc.. *See* Complaint at ¶ 9-10, attached hereto as Exhibit "B". The parties became engaged in legal proceedings after BNK failed to fully compensate CNBMI for the products that BNK sold to Lumber Liquidators, Inc..

4. It is respectfully submitted that discovery from BNK and Jeffrey J. Chang is necessary to determine the scope of CNBMI's violation of this Court's Contempt Order with respect to its participation in the underlying litigation and whether CNBMI participated in any other commercial activities in further violation of this Court's Contempt Order.

5. This discovery is limited to the issue of whether Taishan or any of its affiliates or subsidiaries violated the Court's July 17, 2014 Order. The Court has granted the PSC a short period of time (until June 9, 2015) to complete discovery on this issue. *See* Minute Entry dated April 17, 2015 [Rec. Doc. No. 18722].

6.     The Court's Minute Entry and Orders requires that discovery b
completed no later than June 9, 2015. Due to the shortened time limitation on addition
discovery imposed by the Court, the PSC requests that the Court set an expedit
response date for the new limited discovery; and further, that the time limitations f
noticing of depositions also be shortened and expedited. Rule 30 of the Federal Rules
Civil Procedure sets forth the notice and method for depositions by oral examinatio
Request is made to shorten the time to be provided between the issuance of the notice, th
taking of the deposition and review by the witness for changes. Furthermore, Rules 3
34 and 36 of the Federal Rules of Civil Procedure each provide time frames f
responding to discovery requests, and request is made to shorten the time for discove
request so that the discovery must be responded to fully and completely on an expedit
basis.

7.     The PSC proposes that full and complete responses, including th
documents requested, be produced by BNK and Jeffrey J. Chang within (10) days of the
respective receipt of the discovery.

8.     The PSC proposes that depositions be noticed at least seventy-two (7
hours in advance of the taking of a deposition and that the review for any chang
requested by the witness be completed within twenty-four (24) hours of the taking of t
deposition.

9.     The Court has granted two similar motions requesting the same expedit
return of discovery requests and shortening of time to notice depositions with respect
other third-parties on the topics addressed during the March 17, 2015 hearing and in t
Court's related Minute Entry and Orders. *See* Rec.Doc.Nos. 18523 (New Jersey Institu

of Technology and CTIEC-TECO American Technology, Inc.) and 18535 (Sunpin Solar Development a/k/a Sunpin Solar LLC, Tommy Li, Wal-Mart Stores, Inc., Westerlund Log Handlers LLC and Murphy Overseas USA Astoria Forest Products LLC). Presently pending before the Court are three related motions for expedited return on discovery requests and shortened time to notice depositions with respect to Hampton Affiliates, Steven J. Zika, CEO of Hampton Affiliates, and Hampton Investment Company. *See* Rec.Doc.Nos. 18660, 18663 and 18665.

WHEREFORE, the PSC prays that this motion be granted and that BNK and Jeffrey J. Chang be Ordered to produce to the PSC full and complete responses to the discovery, including all documents requested (in their original language and, if the original documents are in any language other than English, with English translations), within ten (10) days of their respective receipt of the written discovery, and further that time limitations for taking of depositions also be shortened and expedited.

Respectfully submitted,

Dated: April 21, 2015

/s/ Russ M. Herman
**Russ M. Herman** (Bar No. 6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*HERMAN, HERMAN & KATZ, LLC*
820 O'Keefe Avenue
New Orleans, LA 70113 ·
PH: (504) 581-4892
FAX: (504) 561-6024
ldavis@hhkc.com
***Plaintiffs' Liaison Counsel***
***MDL 2047***

4

Arnold Levin (on the brief)
Fred S. Longer (on the brief)
Sandra L. Duggan (on the brief)
Matthew C. Gaughan (on the brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
PH: (215) 592-1500
FAX: (215) 592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Peter Prieto
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Jerrold Seth Parker
Parker Waichman, LLP
27300 Riverview Center Blvd.
Suite 103
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@attorneys4people.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

5

Bruce William Steckler
Steckler, LLP
12720 Hillcrest Road, Ste 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-404
bruce@stecklerlaw.com

Ervin A. Gonzalez
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0000
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr., Esquire
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
rlewis@hausfeldllp.com

Anthony D. Irpino
IRPINO LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Defendants' Liai
Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same
LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing v
electronically filed with the Clerk of Court of the United States District Court for the East
District of Louisiana by using the CM/ECF System, which will send a notice of electronic fil
in accordance with the procedures established in MDL 2047 on this 21st day of April, 2015.

Respectfully Submitted,

BY: */s/ Leonard A. Davis*
Leonard A. Davis
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
ldavis@hhklawfirm.com

*Plaintiffs' Liaison Counsel*
*MDL 2047*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L |
| THIS DOCUMENT APPLIES TO ALL CASES | JUDGE FALLON MAG. JUDGE WILKINSON |

### PROPOSED ORDER AUTHORIZING
### EXPEDITED RETURN ON DISCOVERY REQUESTS
### AND SHORTENED TIME TO NOTICE DEPOSITIONS

Considering the Motion of the Plaintiffs' Steering Committee ("PSC") for Expedited Return on Discovery Requests and Shortened Time to Notice Depositions;

IT IS ORDERED BY THE COURT that:

1. Third-Parties, BNK International, LLC (hereafter "BNK") and Jeffery J. Chang, are directed to respond completely and fully to the written discovery, and produce all documents requested, by the PSC, within ten days of their receipt of the Requests for Production of Documents. All documents shall be produced in their original language and, if the original documents are in any language other than English, English translations shall be included;

2. All depositions shall be noticed at least seventy-two (72) hours in advance of the deposition, except where good cause may require more extensive notice; and

3. All deposition review and changes requested by a witness must be completed within twenty-four (24) hours of the taking of the deposition.

1

Case 2:09-md-02047-EEF-MBN Document 19030-1 Filed 06/01/15 Page 52 of 109
Case 1:14-cv-06701-SS Document 23-2 Filed 05/12/15 Page 43 of 49
Case 2:09-md-02047-EEF-JCW Document 18729-3 Filed 04/21/15 Page 2 of 2

New Orleans, Louisiana, this _____ day of _____, 2015.

_____
Eldon E. Fallon
United States District court Judge

# EXHIBIT A

Case 2:09-md-02047-EEF-MBN Document 14303-1 Filed 05/12/15 Page 54 of 109
Case 1:14-cv-00701-SS Document 23-2 Filed 05/12/15 Page 54 of 109
Case 2:09-md-02047-EEF-JCW Document 18729-1 Filed 04/21/15 Page 2 of 12
Case 1:14-cv-00701-SS Document 1-1 Filed 07/30/14 Page 1 of 11

# AGENCY AGREEMENT

This agreement (the *"Agreement"*) is entered into as of May 8, 2004, between BND CO., LTD, a subsidiary of BNBM GROUP LIMITED, with its principal business located at 12/F International Trade Building, ShenZhen, 518014, China (the *"Company"*) and BNK International LLC (the *"Agent"*), a Texas USA company, located at 9102 Country Canyon Cove, Austin, TX 78759, USA.

### RECITALS

WHEREAS, the Company desires to authorize Agent to identify, negotiate and secure customers in the United States of America to purchase from Company hardwood floor products that are manufactured by Company or by third party manufacturers contracted by Company (*"Product"*).

WHEREAS, Agent intends to identify, negotiate and secure customers in the United States of America to purchase Product from Company through Agent.

WHEREAS, typical profiles of customers for Product in the US market include, but not limited to:

1) Manufacturers in the US that uses Company as its OEM vendor for Product;
2) Distributors or wholesalers in the US that uses Company as its OEM vendor for Product;
3) Distributors or wholesalers in the US that purchase Product from Company;
4) Retailers in the US that use Company as its OEM vendor for Product;
5) Retailers in the US that purchase Product from Company; and
6) Builders in the US that purchase Product from Company.

### 1. Effective Customer.

1) Upon receiving the identity of a potential customer (*"Potential Customer"*) from Agent, Company shall notify Agent if Company has any existing business relationships, including but not limited to Product, with the Potential Customer. The notification shall be delivered to Agent within two (2) business days in verbal and be followed up with delivery of supporting documents to Agent within five (5) business days. Failure by Company to notify Agent within the time periods above in both forms is deemed a recognition by Company that the Potential Customer is an effective customer (*"Effective Customer"*). Any Potential Customer notified by the Agent to the Company which does not have any existing business relationship with the Company is deemed recognition by Company that the Potential Customer is an Effective Customer.

2) An Effective Customer is subject to this Agreement.

3) Effective Customer will lose its status as an Effective Customer if its first Purchase Order, Sales Contract or any other business arrangements used to effect a purchase

EXHIBIT "A"

# EXHIBIT B

Case 2:09-md-02047-EEF-MBN Document 23903-1 Filed 06/12/06 Page 56 of 109

Case 2:09-md-02047-EEF-JCW   Document 18729-2   Filed 04/21/15   Page 2 of 16
Case 1:14-cv-00701-SS   Document 1   Filed 07/30/14   Page 1 of 15

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CHINA NATIONAL BUILDING MATERIAL INVESTMENT CO., LTD. (F/K/A BND CO., LTD.) | § § § | |
| | § | Civil Action No. 14-701 |
| Plaintiff, | § § | |
| v. | § § | JURY TRIAL DEMANDED |
| BNK INTERNATIONAL, LLC and JEFFREY J. CHANG | § § § | |
| Defendants. | § § | |

## COMPLAINT

Plaintiff, China National Building Material Investment Co., Ltd. (f/k/a BND Co., Ltd.) ("CNBMI"), files this Original Complaint against Defendants BNK International, LLC ("BNK") and Jeffrey J. Chang ("Chang"), and respectfully shows unto this Court the following:

## JURISDICTION AND VENUE

1.    This Court has original jurisdiction over this action under 28 U.S.C. §1332(a)(2) because CNBMI is a Chinese citizen and Defendants are citizens of Texas and the amount in controversy exceeds $75,000.00, excluding interest and costs.

2.    Venue is proper in this Court under 28 U.S.C. §1391(a) because all Defendants reside in Travis County, Texas in the Western District of Texas, Austin Division. Venue is also proper because the Western District of Texas is where a substantial part of the events or omissions giving rise to this claim occurred.

## THE PARTIES

3.    CNBMI is a Chinese entity with its principal place of business at 12/F International Trade Center, Shenzhen, 518014, P.R. China.

Case 2:09-md-02047-EEF-MBN Document 18903-1 Filed 06/06/01/15 Page 57 of 109

Case 2:09-md-02047-EEF-JCW   Document 18729-2   Filed 04/21/15   Page 16 of 16
Case 1:14-cv-00701-SS   Document 1   Filed 07/30/14   Page 15 of 15

4.      CNBMI be awarded its costs of court, attorneys' fees, prejudgment and post-

judgment interest; and

5.      CNBMI be awarded all and other relief to which it may be justly entitled.

Dated: July 30, 2014

                              Respectfully submitted,


                              /s/ R. Edward Perkins
                              R. Edward Perkins
                              State Bar No. 15790410
                              Sheehy, Ware & Pappas, P.C.
                              909 Fannin Street
                              Suite 2500
                              Houston, Texas 77010
                              (713) 951-1004
                              (713) 951-1199 fax
                              eperkins@sheehyware.com

                              *Attorneys for Plaintiff China National Building
                              Material Investment Co., Ltd.*

AO 88A  (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
Eastern District of Louisiana

| | | |
|---|---|---|
| In re:  Chinese-Manuf. Drywall Products Liab. Lit. | ) | |
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No.   MDL 2047 |
| | ) | |
| | ) | |
| _Defendant_ | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:          BNK International, LLC, through Jeffrey J. Chang, 9102 County Canyon CV,
Austin, TX 78759

_(Name of person to whom this subpoena is directed)_

☑ _Testimony:_ **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: | Slack & Davis; 2705 Bee Cave Road Suite 220, Austin, TX 78746 | Date and Time: 05/15/2015 10:00 am |
|---|---|---|

The deposition will be recorded by this method:    Oral and Videotaped

☑ _Production:_ You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

> See attached Notice of Expedited Oral and Videotaped Deposition Pursuant to the Court's Directive During the March 17, 2015 Special Hearing and Minute Entry and Order [Rec. Doc. 18493]

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     04/21/2015

_CLERK OF COURT_                                    OR

_____                     _____
_Signature of Clerk or Deputy Clerk_                   _Attorney's Signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_     Plaintiffs
_____ , who issues or requests this subpoena, are:

Plaintiffs' Liaison Counsel, Russ M. Herman/Leonard A. Davis, Herman, Herman & Katz, LLC, 820 O'Keefe Avenue, New Orleans, LA 70113, (504) 581-4892; email:  ldavis@hhklawfirm.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

CRH: 4/24/15 @ 10 am

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| ============================= | x | ============================= |
|---|---|---|
| | x | |
| IN RE: CHINESE-MANUFACTURED | x | MDL NO. 2047 |
| DRYWALL PRODUCTS LIABILITY | x | |
| LITIGATION | x | SECTION: L |
| | x | |
| THIS DOCUMENT APPLIES TO ALL | x | JUDGE FALLON |
| CASES | x | |
| | x | MAG. JUDGE WILKINSON |
| | x | |
| ============================= | x | ============================= |

### AMENDED NOTICE OF EXPEDITED ORAL AND VIDEOTAPED DEPOSITION PURSUANT TO THE COURT'S DIRECTIVE DURING THE MARCH 17, 2015 SPECIAL HEARING AND MINUTE ENTRY AND ORDER [REC.DOC. 18493]

TO:   Jeffrey J. Chang
**Through his Counsel**
Peter C. Ruggero
Ruggero Law Firm PC,
1411 West Ave, Ste. 200,
Austin, Texas 78701
Ph: (512) 473-8676

**PLEASE TAKE NOTICE** that pursuant to Rules 26, 30, and 30(b)(6) of the Federal Rules of Civil Procedure, and the Court's Minute Entry and Order dated March 17, 2015 [Rec. Doc. No. 18493] (attached hereto as Exhibit "1") authorizing expedited discovery of Taishan and BNBM/CNBM regarding (i) the injunction prong of the Court's July 17, 2014 Order holding Taishan in contempt of court, criminally and civilly [Rec. Doc. No. 17869], and (ii) whether there exist alter ego relationships between and among these entitities, plaintiffs, by and through their undersigned attorneys, the Plaintiffs' Steering Committee in the MDL, will take the deposition of **Jeffrey J. Chang**

1



**(individually and as a former officer and sole shareholder of BNK International, LLC),** on May 20, 2015 at 10:00 a.m. (central) at the offices of **Ruggero Law Firm PC, 1411 West Ave, Ste 200, Austin, Texas 78701 Ph:  (512) 473-8676**.  Further, the deponent is requested to produce the documents identified in the attached Schedule "A" to which deposition questions will be asked. Also attached hereto as Exhibit "A" is a subpoena with respect to the instant discovery requests and deposition.

**If you are an attorney of record, please email cdw@golkow.com 48 hours prior to the deposition should you desire to participate by stream to view video/text so you may receive a username and password.**

> Primary Examiners:      A Member of the PSC, or its designee
> Videotaped Deposition:  Yes
> Call-In Number:         **888-337-8218**
>                         **Participant Code:  769758**

The deposition will be taken before a person authorized by law to administer oaths, pursuant to Fed. R. Civ. P. 28, and will continue from day-to-day, upon an expedited basis, until the examination is completed.

Pursuant to directives provided at the status conference on May 27, 2010, a brief explanation of the subject matter expected at this deposition is as follows:  The deposition will be conducted in furtherance of discovery related to the topics identified at the hearings before the Honorable Eldon E. Fallon on March 17, 2015 and April 17, 2015 and in the Court's Minute Entry and Order dated March 17, 2015.  This brief explanation is with full reservation of all rights by the noticing party and is not intended to limit in any way the scope of the deposition noticed herein.  Counsel should be aware that all matters may be discovered in the deposition and that the above explanation is made

2

solely in accordance with the directives provided at the status conference. This is an MDL "common" fact witness deposition.

Respectfully submitted,

/s/ Russ M. Herman
**Russ M. Herman** (Bar No. 6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
***HERMAN, HERMAN & KATZ, LLC***
820 O'Keefe Avenue
New Orleans, LA 70113
PH: (504) 581-4892
FAX: (504) 561-6024
ldavis@hhkc.com
***Plaintiffs' Liaison Counsel***
***MDL 2047***

Arnold Levin
Fred S. Longer
Sandra L. Duggan
Matthew C. Gaughan
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
PH: (215) 592-1500
FAX: (215) 592-4663
Alevin@lfsblaw.com
***Plaintiffs' Lead Counsel***
***MDL 2047***

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Jerrold Seth Parker
Parker Waichman, LLP
27300 Riverview Center Blvd.
Suite 103
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Daniel E. Becnel, Jr.
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

Peter Prieto
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

James Robert Reeves
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@attorneys4people.com

Bruce William Steckler
Steckler, LLP
12720 Hillcrest Road, Ste 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-404
mailto:bsteckler@baronbudd.com
bruce@stecklerlaw.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Ervin A. Gonzalez
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
ervin@colson.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

4

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr., Esquire
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Anthony D. Irpino
IRPINO LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Amended Notice of Expedited Oral and Videotaped Deposition Pursuant to the Court's Directive During the March 17, 2015 Special Hearing and Minute Entry and Order [Rec.Doc. 18493] has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 4th day of May, 2015.

_/s/ Leonard A. Davis_____
Leonard A. Davis
Herman, Herman & Katz, LLC
820 O'Keefe Ave.
New Orleans, LA 70113
PH: (504) 581-4892
Fax: (504) 561-6024
ldavis@hhklawfirm.com

# SCHEDULE A

## <u>DEFINITIONS & INSTRUCTIONS</u>

1. Whenever used in this Request, the following terms shall have the following meanings:

 (a) "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

 (b) "Computer" means all devices utilizing microchips to facilitate processing, analysis, or storage of data, including microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (also known as personal digital assistants or PDA's), minicomputers and mainframe computers.

 (c) "Concerning" means relating to, referring to, describing, evidencing, embodying, or constituting.

 (d) "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations.  Documents shall include all drafts, including drafts with "track changes," and shall be deemed to be separate documents within the meaning of this term.

 (e) "Electronically stored information" or "ESI" means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments,

annotations, marks, transmission notations, or highlighting of any kind) of writings and data compilations in any form, and of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. ESI includes, by way of example only, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts and transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail displaying full e-mail alias's (not merely "display names"), electronic calendars, I'm logs, PBX logs, document management system data, operating systems, all metadata, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said ESI consists in an active file, deleted file or file fragment. Electronically stored information includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and transmittal. The term ESI also includes the file, folder tabs and containers and labels appended to, or associated with, any physical storage device associated with each original and copy.

(f)     "Electronic media" means any magnetic or other storage media device used to record electronically stored information. Electronic media devices may include computer memories, hard disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched

cards, punched tape, computer chips, including, EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and transmittal.

(g)  "Identify" with respect to persons, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(h)  "Identify" with respect to documents, means to give, to extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

(i)  "Including" or "includes" means including, without limitation.

(j)  "You," or "your" means each of the individual named entities to whom this set of discovery is directed, and any of its domestic or international predecessors in interest, successors in interest, subsidiaries, divisions, subdivisions, affiliates, officers, directors, employees, representatives, independent contractors, consultants, or agents, whether present or former, including but not limited to their attorneys and accountants.

(k)  "Taishan" means Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.

(l)  "Chinese drywall" relates to drywall, plasterboard, or wallboard manufactured in China.

(m)　　"Person" means any natural person or any business, legal, or governmental entity or association.

(n)　　"Taishan Affiliates and Subsidiaries" shall include the below listed entities and any of their parents, related entities, subsidiaries, agents and assigns:

(a) State-owned Assets Supervision and Administration Commission of the State Counsel ("SASAC");

(b) China National Building Materials Group Co., Ltd. ("CNBM Group");

(c) China Cinda Asset Management Co., Ltd. ("Cinda");

(d) China Building Materials Academy;

(e) Beijing New Building Material Group Co., Ltd. ("BNBM Group");

(f) China National Building Material Import and Export Company ("CNBM Trading");

(g) CNBM Forest Products, Ltd.;

(h) CNBM Forest Products (Canada), Ltd.;

(i) China National Building Material Co., Ltd. ("CNBM");

(j) China United Cement Corporation (f/k/a China United Cement Group Corporation, Ltd.) (f/k/a China United Cement Co., Ltd.) ("China United");

(k) China United Cement Huaihai Co., Ltd. (f/k/a China United Julong Huaihai Cement Co., Ltd.);

(l) Qingzhou China United Cement Company Limited (f/k/a China United Qingzhou Luhong Cement Co., Ltd.);

(m) China United Cement Zaozhuang Company, Limited (f/k/a Zaozhuang China United Luhong Cement Co., Ltd.);

(n) China Composites Group Corp., Ltd. ("China Composites");

(o) Lianyungang Zhongfu Lianzhong Composite Material Group Co., Ltd. ("Zhongfu Lianzhong");

(p) Shanghai Yaohua Pilkington Glass Co., Ltd.;

(q) Changzhou China Composites Liberty Co., Ltd. ("Zhongfu Liberty");

(r) Changzhou China Composites Tianma Fiberglass Products Co., Ltd. ("Zhongxin Tianma");

(s) Changzhou Liberty TOLI Building Material Co., Ltd. ("Liberty TOLI");

(t) China Fiberglass Co., Ltd. ("China Fiberglass");

(u) Jushi Group Co., Ltd. ("Jushi Group");

(v) China Triumph International Engineering Co., Ltd. ("CTIEC");

(w) Nanjing Triumph International Engineering Company Limited (f/k/a China Triumph International Engineering Company Limited) (f/k/a China Triumph Nanjing Cement Technological Engineering Co., Ltd.);

(x) CTIEC Shenzhen Scieno-tech Engineering Co., Ltd.;

(y) China Triumph Bengbu Engineering and Technology Co., Ltd. ("Bengbu Triumph");

(z) CNBM Investment Company Limited (f/k/a BND Co., Ltd.);

(aa)   Beijing New Building Material Public Limited Company ("BNBM")

(bb)   Beijing New Building Materials Homes Co., Ltd.

(cc)   BNBM Suzhou Mineral Fiber Ceiling Company, Limited (f/k/a "Suzhou Tianfeng New Building Material Co., Ltd.")

(dd)   Taishan Gypsum Co., Ltd. (f/k/a Shandong Taihe Dongxin Co., Ltd.) ("Taishan");

(ee)   Qinhuangdao Taishan Building Materials Co., Ltd. (a/k/a Qinhuang Dao Taishan Building Materials Co., Ltd.);

(ff)    Tai'an Taishan Plasterboard Co., Ltd. ("TTP");

(gg)   China United Luhong Cement Co., Ltd.;

(hh)   China United Nanyang Co.;

(ii)    Xingtai China United Ziyan Co., Ltd.;

(jj)    China National Building Materials and Equipment Import and Export Corporation ("China Equipment");

(kk)   Shenzhen B&Q Decoration & Building Materials Co., Ltd. ("Shenzhen B&Q");

(ll)    Beijing Incubator New Material Company Limited;

(mm)   Ningbo Beijing New Construction Materials Company Limited;

(nn)   Shenzhen Beijing New Real Estate Company Limited

(oo)   United Suntech Craft, Inc. a/k/a United Suntech Craft, Inc., 2006 LIMITED;

(pp)    Jiangjin Taishan Gypsum Construction Material Company Limited;

(qq)    Hengshui Taishan Gypsum Construction Material Company Limited;

(rr)    Dongguan BNBM Housing Design and Engineering Company Limited;

(ss)    Beijing Jieruixin Door & Window Company Limited;

(tt)    Chengdu Beijing New Construction Materials Company Limited;

(uu)    Taicang Beijing New Construction Materials Company Limited;

(vv)    Taian Donglian Investment Trading Company Limited;

(ww)    Fuxin Taishan Gypsum Construction Material Company Limited;

(xx)    Zhejiang Wenzhou Taishan Gypsum Construction Material Company Limited;

(yy)    Hebei Taishan Huaao Construction Material Company Limited;

(zz)    CNBM Energy Co., Ltd. ("CNBM Energy");

(aaa)   CNBM Forest Products New Zeland Limited ("Forest Products NZ");

(bbb)   CNBM Forest Products Trading, Ltd.;

(ccc)   CNBM International Corporation;

(ddd)      CNBM International Engineering Co. Ltd;

(eee)      CNBM Technology Co., Ltd.;

(fff)      CNBM International Equipment, Co.;

(ggg)      CNBM USA, Corp.;

(hhh)      CTIEC-TECO;

(iii)      CNBM – CMAX;

(jjj)      CNBM- Parts;

(kkk)      CNBM Solar;

(lll)      BNBM of America, Inc.;

(mmm)      BNBMG Metal; and

(nnn)      INTECH Building Co., Ltd..

2.      The following rules of construction apply to all discovery requests:

(a)      The terms "all" and "each" shall be construed as all and each;

(b)      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

(c)      The use of the singular form of any word includes the plural and vice versa; and

(d)      Requests that are stated in the present tense include the past tense and those in the past tense include the present tense.

3.      Unless otherwise specifically stated, this Request encompasses documents, which were created, received, or generated or otherwise entered into your

possession, custody, or control between January 1, 2001 and the current date (the "Relevant Time Period").

4.    Any document falling within the scope of this Request that is withheld on the basis of a claim of privilege, work product, or any other ground is to be identified in a privilege log, produced in an electronic format that allows text searching and organization of data.  You shall produce a privilege log within 5 days after the production of documents for which privilege is asserted to apply.  For each document for which You assert a privilege applies, you must provide in the privilege log: (a) a statement of the ground alleged for withholding such document; (b) the date of the document; (c) the location of any attachments associated with the document and whether the asserted privilege also applies to such attachments; (d) the identity of its author and signatories; (e) the type of document (*e.g.*, letter); (f) a summary of its content; (g) its present location and custodian; and (h) a listing of all persons to whom the contents of such documents have been disclosed and all persons who have or have had possession, custody, or control of the documents (or any portions thereof), pursuant to Federal Rule of Civil Procedure 45(d)(2).  Notwithstanding the assertion of an objection, any purportedly privileged document containing non-privileged matter must be disclosed with the purportedly privileged portion redacted, with the redacted portion indicated on the document itself and listed on the privilege log to be provided pursuant to this paragraph.

To assist in the prompt resolution of disputed claims of privilege, You shall submit to the Court under seal, unredacted copies of all documents for which it asserts a privilege.

5.      If you are unable to comply fully with any of the specific requests, you shall comply to the extent possible and provide an explanation as to why full compliance is not possible.  In the event that any documents called for by this Request were formerly in your possession, custody or control, or have been lost or destroyed, those documents are to be identified in writing as follows:  persons who prepared or authorized the documents indicated or blind copies; dates of preparation or transmittal; subject matter; number of pages, attachments or appendices; all persons to whom distributed, shown or explained; date or dates of loss or destruction; and if destroyed, the manner of destruction, reason for destruction, persons authorizing destruction and persons destroying the documents.

6.      This Request is directed to all documents within your possession, custody or control, or within the possession of any of your agents, or within the possession of any entity associated with you, or within the possession, custody, or control of such entity's directors, officers, agents, servants, employees, consultants, and professionals.

7.      Documents are to be produced in full and in their unexpurgated form. Redacted documents shall not constitute compliance with this Request, unless such documents are redacted pursuant to any claim of privilege as set forth in paragraph 4 above.

8.      Documents shall be produced in their original language (*e.g.*, Mandarin) and, if the original documents are in any language other than English, you shall include translations of such documents into English.

9.      This Request is intended to be consistent with the Federal Rules of Civil Procedure 26 and 34.

10.     All hard copy documents and electronically stored information (ESI) produced in response to this Request shall be organized and labeled either to correspond with the number of the specific request to which the documents are responsive or shall be produced in the order, format, and manner in which they are kept in the usual course of business.  With respect to the production of electronically stored information, all ESI that is demanded is to be produced in its native usable format, as maintained on the computer storage systems, regardless of whether such ESI exists (and/or may have been copied and/or otherwise converted) in more than one electronic format.  Plaintiffs have filed an emergency motion before the Honorable Eldon E. Fallon in the United States District Court for the Eastern District of Louisiana requesting that you be ordered to provide full and complete responses, including the document requests within ten (10) days of your receipt of the instant discovery.

## **DOCUMENTS TO BE PRODUCED**

1.     For the period July 17, 2014 to the present, all documents and communications involving your business dealings with the parties to the proceedings in the United States District Court for the Western District of Texas, Austin Division, *China Nat. Bldg. Materials Investment Co., Ltd. (f/k/a BND Co., Ltd.) v. BNK International, LLC and Jeffrey J. Chang*, No. 1:14-cv-00701-SS, including but not limited to:

(a)     All written documents or instruments pertaining to agreements for the purchase and sale of hardwood floor products (including any agency agreements involving prospective purchases or sales of hardwood floor products) as well as all documents evidencing business activities undertaken pursuant to such agreements;

(b)     All documents evidencing the purchase or sale of hardwood floor products;

(c)     All documents related to the legal dispute with respect to the proceedings in the United States District Court for the Western District of Texas, Austin Division (including any settlement agreement as well as any related documents), including any related litigation efforts (both domestic and foreign) involving the same underlying dispute;

(d)     Any current dealings and commercial activities involving the parties to the proceedings in the United States District Court for the Western District of Texas, Austin Division;

(e)     All communications between the parties to the proceedings in the United States District Court for the Western District of Texas, Austin Division.

Case 2:09-md-02047-EEF-MBN Document 19303-1 Filed 06/04/15 Page 79 of 109
Case 2:09-md-02047-EEF-JCW Document 18301 Filed 12/09/14 Page 21 of 31

2.      All documents and communications between or among you and Taishan and/or the Taishan Affiliates and Subsidiaries with respect to the conduct of any business in the United States by such entities, since July 17, 2014.

3.      All documents and communications regarding the profits earned by Taishan and/or the Taishan Affiliates and Subsidiaries (by quarter and calendar year) with respect to their conduct of any business in the United States since July 17, 2014.

4.      All documents and communications regarding the profits earned by Taishan and/or the Taishan Affiliates and Subsidiaries (by quarter and calendar year).

## DEPOSITION TOPICS

1.      For the period July 17, 2014 to the present, your knowledge regarding your business dealings with the parties to the proceedings in the United States District Court for the Western District of Texas, Austin Division, *China Nat. Bldg. Materials Investment Co., Ltd. (f/k/a BND Co., Ltd.) v. BNK International, LLC and Jeffrey J. Chang*, No. 1:14-cv-00701-SS, including but not limited to:

        (a)     Agreements for the purchase and sale of hardwood floor products (including any agency agreements involving prospective purchases or sales of hardwood floor products) as well as all business activities undertaken pursuant to such agreements;

        (b)     All purchases or sales of hardwood floor products;

        (c)     The legal dispute with respect to the proceedings in the United States District Court for the Western District of Texas, Austin Division (including any settlement agreement as well as any related documents), including any related litigation efforts (both domestic and foreign) involving the same underlying dispute;

        (d)     Any current dealings and commercial activities involving the parties to the proceedings in the United States District Court for the Western District of Texas, Austin Division;

        (e)     All communications between the parties to the proceedings in the United States District Court for the Western District of Texas, Austin Division.

2.      Your knowledge regarding the conduct of any business in the United States by Taishan and/or the Taishan Affiliates and Subsidiaries, since July 17, 2014.

3.     Your knowledge regarding the profits earned by Taishan and/or the Taishan Affiliates and Subsidiaries (by quarter and calendar year) with respect to their conduct of any business in the United States since July 17, 2014.

4.     Your knowledge regarding the profits earned by Taishan and/or the Taishan Affiliates and Subsidiaries (by quarter and calendar year).

# EXHIBIT 1

MINUTE ENTRY
FALLON, J.
MARCH 18, 2015

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 |
| | SECTION "L" |

**THIS DOCUMENT RELATES TO: ALL CASES**

### MINUTE ENTRY AND ORDERS

On this date, the Court heard oral arguments regarding the Plaintiffs' Steering Committee's motion to preclude Taishan and its affiliates from participating in class damages proceedings unless and until Taishan purges itself of contempt. (Rec. Doc. 18367). Russ Herman and Arnold Levin participated on behalf of the Plaintiffs' Steering Committee. Bernard Taylor, Alan Weinberger, Michael Kenny, and Christina Eikhoff participated on behalf of Taishan Gypsum Co., Ltd. ("TG") and Tai-an Taishan Plasterboard Co. Ltd. ("TTP"), (TG and TTP collectively, "Taishan"). James Stengel participated on behalf of China National Building Materials Group Corporation and China National Building Materials Company Limited (collectively, "CNBM"). Michael Barr, Michael Moore, Richard Fenton, and Harry Rosenberg participated on behalf of Beijing New Building Materials Public Limited Company and Beijing New Building Material (Group) Company Limited (collectively, "BNBM"). The hearing was transcribed by Ms. Toni Tusa, Official Court Reporter. Counsel may contact Ms. Tusa at (504) 589-7778 to request a copy of the transcript.

JS10(00:82)

After reviewing the parties' memoranda, reviewing the applicable law, and hearing oral argument from all parties, the Court took the motion to preclude under advisement, subject to the conditions ordered by the Court:

1) **IT IS ORDERED THAT** Taishan must purge itself of contempt of court within two weeks of today's date, that is **March 31, 2015**, before the Court will determine the nature, and extent, of Taishan's participation in these proceedings. To purge itself of contempt, Taishan must (a) pay the $15,000 in attorneys' fees to the PSC; (b) pay the *Germano* judgment that formed the basis of the judgment debtor proceedings, amounting to $2,609,099.99 plus pre-judgment interest of $149,256.53 plus post-judgment interest at the judicial rate under 28 U.S.C. § 1961, as of the date of payment, (Rec. Doc. 3013); and (c) pay the associated bill of costs, (*see* Rec. Docs. 17825, 18034). The Court notes that Taishan has paid the $40,000 contempt penalty. (*See* Rec. Doc. 18448).

2) As neither Taishan nor BNBM/CNBM have demonstrated compliance with the injunction prong of the contempt order, (Rec. Doc. 17869), and the Court cannot yet assess whether there is need to enforce the associated penalty of 25% of profits, **IT IS FURTHER ORDERED THAT** the parties shall immediately commence discovery related to the relationship between Taishan and BNBM/CNBM, including whether affiliate and/or alter ego status exists. Discovery shall conclude no later than **April 28, 2015**, at 9:00 a.m. at which time the Court will hear oral argument on the motion for class damages. **IT IS FURTHER ORDERED** that the previously set March 18, 2015 deadline for responses for the motion for class damages is **CONTINUED** and any responses to the motion for class damages now shall be due on **April 20, 2015**.

2

3) **IT IS FURTHER ORDERED THAT** Taishan and BNBM/CNBM **SHALL**
participate in alter ego discovery. If Taishan and/or BNBM/CNBM do not participate
in discovery, the Court will act accordingly to ensure compliance with this and any
Court order. The Court may, for example, strike defenses asserted by Taishan and
BNBM/CNBM.

4) **IT IS FURTHER ORDERED THAT** that the Plaintiffs' Steering Committee,
Taishan, and BNBM/CNBM **SHALL meet and confer** to discuss a discovery plan.
Any deposition shall occur in New Orleans, Louisiana, unless all parties agree – with
consent of the Court – that the deposition may occur elsewhere.

The Court retains jurisdiction to take any action necessary to enforce its contempt order,
and any other order discussed herein. If any party violates any of the Court's orders, the Court
"has broad discretion in assessing sanctions to protect the sanctity of its decrees and the legal
process." *Test Masters Educational Servs. v. Singh*, 428 F.3d 559 (5th Cir. 2005). This Court
"possess[es] the inherent authority to enforce [its] own injunctive decrees," an authority that
"runs nationwide." *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985); *see also
United States v. Fisher*, 864 F.2d 434, 436 (7th Cir.1988) ("[W]hen a court issues an injunction,
it automatically retains jurisdiction to enforce it."). The Court reserves its right to determine
whether Taishan and/or BNBM/CNBM must post a bond under Rule 64. The Court further notes
that Taishan and BNBM/CNBM's willingness to participate in discovery process will guide the
Court's determination of the circumstances under which Taishan and BNBM/CNBM may
participate in these proceedings. To allow a party to continue to participate in a proceeding while
the party is in contempt for actions taken in those same proceedings would be, in effect,

3

Case 2:09-md-02047-EEF-MBN Document 19039-1 Filed 06/04/15 Page 85 of 109
Case 2:09-md-02047-EEF-JCW Document 18493-1 Filed 12/09/14 Page 127 of 31
Case 2:09-md-02047-EEF-JCW Document 18493 Filed 03/17/15 Page 4 of 4

rewarding the party for its contemptuous conduct. The Court will take any necessary action to

ensure the sanctity of its decrees and the legal process.

UNITED STATES DISTRICT JUDGE

# EXHIBIT "A"

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Eastern District of Louisiana

| | | |
|---|---|---|
| In re:  Chinese-Manuf. Drywall Products Liab. Lit. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  MDL 2047 |
| | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:         Jeffrey J. Chang, Through his Counsel:  Peter C. Ruggero, Ruggero Law Firm PC,
1411 West Ave, Ste. 200, Austin, Texas 78701
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place:  Ruggero Law Firm PC, 1411 West Ave, Ste 200, Austin, Texas 78701 | Date and Time:<br><br>05/20/2015 10:00 am |
|---|---|

The deposition will be recorded by this method:    Oral and Videotaped

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See attached Amended Notice of Expedited Deposition Pursuant to the Court's Directive During the March 17, 2015 Special Hearing and Minute Entry and Order [Rec. Doc. 18493]

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:        05/04/2015

*CLERK OF COURT*

OR

_____
*Signature of Clerk or Deputy Clerk*

_____
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*      Plaintiffs
_____, who issues or requests this subpoena, are:

Plaintiffs' Liaison Counsel, Russ M. Herman/Leonard A. Davis, Herman, Herman & Katz, LLC, 820 O'Keefe Avenue, New Orleans, LA  70113, (504) 581-4892; email:  ldavis@hhklawfirm.com

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  MDL 2047

### PROOF OF SERVICE
#### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L |
| THIS DOCUMENT APPLIES TO ALL CASES | JUDGE FALLON MAG. JUDGE WILKINSON |

### ORDER AUTHORIZING
### EXPEDITED RETURN ON DISCOVERY REQUESTS
### AND SHORTENED TIME TO NOTICE DEPOSITIONS

Considering the Motion of the Plaintiffs' Steering Committee ("PSC") for Expedited Return on Discovery Requests and Shortened Time to Notice Depositions;

IT IS ORDERED BY THE COURT that:

1. Third-Parties, BNK International, LLC (hereafter "BNK") and Jeffery J. Chang, are directed to respond completely and fully to the written discovery, and produce all documents requested, by the PSC, within ten days of their receipt of the Requests for Production of Documents. All documents shall be produced in their original language and, if the original documents are in any language other than English, English translations shall be included;

2. All depositions shall be noticed at least seventy-two (72) hours in advance of the deposition, except where good cause may require more extensive notice; and

3. All deposition review and changes requested by a witness must be completed within twenty-four (24) hours of the taking of the deposition.



EXHIBIT
D

1

New Orleans, Louisiana, this 28th day of April, 2015.

_____

Eldon E. Fallon
United States District court Judge



China National Building Material Company Limited-Shareholding Structure          Page 2 of 2

Case 2:09-md-02047-EEF-MBN   Document 19030-1   Filed 06/01/15   Page 93 of 109
Case 1:14-cv-06701-SS   Document 29-5   Filed 05/12/15   Page 2 of 2

Contact Us  |  Website Map

China National Building Material Company Limited. All rights reserved    Technical Support: Chinabmb.com

Case 2:09-md-02047-EEF-MBN Document 19030-1 Filed 06/01/15 Page 94 of 109

EXHIBIT

F

2014 WL 4809520
Only the Westlaw citation is currently available.
United States District Court,
E.D. Louisiana.

In re CHINESE–MANUFACTURED DRYWALL
PRODUCTS LIABILITY LITIGATION.
This document relates to Germano, et al.
v.
**Taishan Gypsum Co., Ltd.**, f/k/
a **Shandong Taihe Dongxin Co. Ltd.**,
et al., Case No. 09–6687 (E.D.La.);
Gross, et al.
v.
**Knauf Gips, KG**, et al., Case No. 09–6690 (E.D.La.);
Wiltz, et al.
v.
Beijing New Building Materials Public
Limited Co., et al., Case No 10–361 (E.D.La.);
Amorin, et al.
v.
**Taishan Gypsum Co., Ltd.** f/k/a
**Shandong Taihe Dongxin Co., Ltd.**, et
al., Civ. Action No. 11–1672 (E.D.La.);
Amorin, et al.
v.
**Taishan Gypsum Co., Ltd.** f/k/a
**Shandong Taihe Dongxin Co., Ltd.**, et
al., Civ. Action No. 11–1395 (E.D.La.);
Amorin, et al.
v.
**Taishan Gypsum Co., Ltd.** f/k/a
**Shandong Taihe Dongxin Co., Ltd.**, et
al., Civ. Action No. 11–1673 (E.D.La.).

MDL No. 2047.  |  Signed Sept. 26, 2014.

***FINDINGS OF FACT AND CONCLUSIONS
OF LAW WITH RESPECT TO PLAINTIFFS'
OMNIBUS MOTION FOR CLASS CERTIFICATION
PURSUANT TO RULES 23(a)(1)-(4) and 23(b)(3)***

**ELDON E. FALLON**, District Judge.

***FINDINGS OF FACT***

**I.** *Introduction*

**\*1** 1. This matter involves the claims of thousands of class members who have suffered property damages arising from defective Chinese-manufactured drywall ("CDW" or "Chinese Drywall") manufactured, sold, distributed, supplied, marketed, inspected, imported or delivered by the Taishan Defendants and used in plaintiffs' properties.

2. The plaintiffs are active litigants (either in the original action or in complaints in intervention) named in *Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al.,* Case No. 09–6687 (E.D.La.); *Gross, et al. v. Knauf Gips, KG, et al.,* Case No. 09–6690 (E.D.La.); *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.,* Civ. Action No. 10–361 (E.D.La); *Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* Civ. Action No. 11–080 (E.D.La); *Haya, et al. v. Taishan Gypsum Corp. Ltd., et al.,* Civ. Action No. 11–1077 (E.D.La.); *Almeroth, et al. v. Taishan Gypsum Co., Ltd., et al.,* Civ. Action. 12–0498 (E.D.La.); *Gross, et al. v. Taishan Gypsum Co., Ltd f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* Civ. Action No. 11–1672 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* Civ. Action No. 11–1395 (E.D.La.); and/or *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* Civ. Action No. 11–1673 (E.D.La.).

3. The "Taishan Defendants" are comprised of the following entities: Taishan Gypsum Co. Ltd. (hereafter "Taishan"); Beijing New Building Materials Limited Co. (hereafter "BNBM"); Beijing New Building Materials Group Co., Ltd. (hereafter "BNBM Group"); China National Building Materials Co., Ltd. (hereafter "CNBM"); China National Building Materials Group Corporation (hereafter "CNBM Group"); and Tai'an Taishan Plasterboard, Ltd. (hereafter "TTP").

4. The "Taishan Affiliates" are comprised of the following entities: BNBM, BNBM Group, CNBM, CNBM Group, and TTP.

5. From 2005 through 2008, the housing boom and rebuilding efforts necessitated by Hurricanes Katrina and Rita led to a shortage of construction materials in the United States, including drywall. As a result, drywall manufactured in China was brought into the United States and used in the construction and refurbishing of homes in coastal areas of the country, notably the East Coast and Gulf South. After the

installation of the Chinese Drywall, property owners began to complain of emissions of smelly gasses, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *In re Chinese–Manufactured Drywall Prod. Liab. Litig.,* 894 F.Supp.2d 819, 829–30 (E.D.La.2012), *aff'd,* 742 F.3d 576 (5th Cir.2014).

6. On June 15, 2009, the Judicial Panel on Multidistrict Litigation transferred all federal civil actions alleging damages from Chinese Drywall to the United States District Court for the Eastern District of Louisiana for coordinated and consolidated pretrial proceedings in MDL 2047 pursuant to 28 U.S.C. § 1407. *In re Chinese–Manufactured Drywall Prod. Liab. Litig.,* 626 F.Supp.2d 1346 (J.P.M.L.2009).

### A. *The Representative Plaintiffs*

 **\*2** 7. Eduardo and Carmen Amorin are participants in *Wiltz, Gross, Abel,* and each of the Amorin complaints. They own a property located at 240 West End Drive # 721, Punta Gorda, FL 33950. It has been determined, following an inspection, that this property contains defective Taishan Chinese Drywall.

8. Albert and Betsy Butzer are participants in *Haya* and each of the *Amorin* complaints. They own a property at 9519 26th Bay Street, Norfolk, VA 23518. It has been determined, following an inspection, that this property contains defective Taishan Chinese Drywall.

9. Jack and Anna McGinn are participants in *Wiltz* and each of the *Amorin* complaints. They own a property located at 4301 Blackthorne Court, Virginia Beach, VA 23455. It has been determined, following an inspection, that this property contains defective Taishan Chinese Drywall.

10. Thomas and Virginia Spencer are participants in *Wiltz, Almeroth,* and each of the *Amorin* complaints. They own a property located at 2481 Lakewood Manor Drive, Athens, GA 30606. It has been determined, following an inspection, that this property contains defective Taishan Chinese Drywall.

11. Elliot and Angelina Everard are participants in *Gross, Abel,* and each of the *Amorin* complaints. They own a property located at 3000 N. Palm Drive, Slidell, LA 70458. It has been determined, following an inspection, that this property contains defective Taishan Chinese Drywall.

### B. *Procedural History*

12. The *Germano* Plaintiffs (Michelle Germano, Dennis and Sharon Jackson, Jason and Lisa Dunaway), on behalf of themselves and all other similarly situated owners, initiated a class action against Defendant Taishan on May 1, 2009, by filing a complaint in the Eastern District of Virginia. Thereafter, on May 26, 2009, Plaintiffs filed their First Amended Complaint. On August 3, 2009, Plaintiffs received notice that service of process of the First Amended Complaint was perfected on Taishan. On October 13, 2009, Plaintiffs' case was then transferred to the Eastern District of Louisiana as part of MDL 2047. Subsequent to transfer, on October 30, 2009, Plaintiffs moved to amend the First Amended Compliant to assert a national class against Taishan. Plaintiffs' motion to amend was granted on November 18, 2009. *See* Rec.Doc. # 469.

### C. *Default Judgments Have Been Entered Against All the Taishan Defendants*

13. The *Germano* Plaintiffs obtained a default judgment against Taishan on November 20, 2009 (Rec.Doc.# 487); [1] furthermore, seven intervenor Plaintiff families in *Germano* (Robert and Lisa Orlando, William and Deborah Morgan, Joseph and Vannessa Michaux, Preston and Rachel McKellar, Steven and Elizabeth Heischober, Jerry and Inez Baldwin, and Joseph and Cathy Leach), who are Virginia homeowners with Taishan Chinese Drywall in their properties, obtained a default judgment against Taishan on May 11, 2010 (Rec.Doc.# 3013).

14. The Taishan Affiliates have also been held in default with respect to the proceedings in Wiltz, Gross, and Amorin. On February 1, 2011, BNBM, BNBM Group, CNBM, and CNBM Group were held in default in the Gross proceedings. *See* Rec.Doc.# 7302. These same entities were again held in default in Gross on August 7, 2012 (i.e., as to the omnibus intervention complaint that was filed in Gross).*See* Rec.Doc. # 15687. On February 24, 2011, BNBM was held in default in the Wiltz proceedings. *See* Rec.Doc. # 7735. On July 1, 2014, Taishan, TTP, and CNBM were held in default with respect to the Amorin case originally filed in this Court (Case No. 2:11–CV–1395).*See* Rec.Doc. # 17814. Pursuant to this same Order, Taishan and TTP were held in default with respect to the *Amorin* complaint originally filed in the Southern District of Florida prior to its transfer to this Court (Case No. 2:11–CV–1672).*Id.* Also on July 1, 2014, Taishan, TTP, BNBM, CNBM, and CNBM Group were held in default with respect

to the *Amorin* complaint originally filed in the Eastern District of Virginia prior to its transfer to this Court (Case No. 2:11–CV–1673).*See* Rec.Doc. # 17815. These default judgments are summarized in the chart below:

### CASES WHERE THE TAISHAN DEFENDANTS HAVE BEEN HELD IN DEFAULT

|  | Taishan | TTP | BNBM | BNBM Group | CNBM Group | CNBM |
|---|---|---|---|---|---|---|
| *Germano* | X | | | | | |
| *Wiltz* | | X | | | | |
| *Gross* | | | X | X | X | X |
| *Amorin* (Virginia) | X | X | | X | X | X |
| *Amorin* (Louisiana) | X | X | | | | X |
| *Amorin* (Florida) | X | X | | | | |

**\*3** 15. The Court held an evidentiary hearing in the *Germano* proceedings on February 19 and 22, 2010, and issued Findings of Fact and Conclusions of Law on April 8, 2010. *See Germano* Findings of Fact and Conclusions of Law, (hereinafter "FOFCOL"), Rec.Doc. # 2380. [2] In the FOFCOL, the Court made judicial findings regarding the scope of remediation and property damages sustained by the intervenor *Germano* Plaintiffs as a result of defective Taishan Chinese Drywall. The Court entered a final default judgment with awards to the seven Plaintiff Intervenors on May 10, 2010. *See* Rec.Doc. # 3013.

16. Following the *Germano* bellwether trial, counsel for Taishan entered a limited appearance, filed a notice of appeal, and contested the Court's exercise of personal jurisdiction of the Defendant. The parties agreed to stay the appeal for purposes of conducting jurisdictional discovery. At the conclusion of the jurisdictional discovery, the parties briefed the issue of whether or not this Court could exercise personal jurisdiction over Taishan.

17. On September 4, 2012, this Court issued its Order and Reasons denying (1) Taishan's Renewed Motion to Vacate the Default Judgment and Dismiss the Complaint in *Germano v. Taishan Gypsum, Co., Ltd.,* Case No. 09–6687 [Rec.Doc. # 13490]; (2) Taishan's Renewed Motion Pursuant to Rules 55(c) and 12(b)(2) to Vacate the Entry of Default and Dismiss this Action in *The Mitchell Co., Inc., v. Knauf Gips, KG,* Case No. 09–4115 [Rec.Doc. # 13566]; (3) Taishan and TTP's Motion Pursuant to Rule 12(b)(2) to Dismiss the Complaint in *Gross v. Knauf Gips KG,*

Case No. 09–6690 [Rec.Doc. # 13590]; and (4) Taishan and TTP's Motion Pursuant to Rule 12(b)(2) to Dismiss the Complaint in *Wiltz v. Beijing New Building Materials Public Ltd., Co.,* Case No. 10–361 [Rec.Doc. # 13591].*See In re Chinese–Manufactured Drywall Prod. Liab. Litig., 894 F.Supp.2d 819 (E.D.La.2012)* (hereafter the "Jurisdictional Rulings"). [3] On January 28, 2014, the Fifth Circuit affirmed this Court's jurisdictional ruling in the *Germano* action. *See In re Chinese–Manufactured Drywall Prod. Liab. Litig., 742 F.3d 576 (5th Cir.2014).* More recently, the Fifth Circuit affirmed the Court's September 4, 2012 Order as it related to the *Gross, Wiltz* and *Mitchell* actions. *See In re Chinese–Manufactured Drywall Prod. Liab. Litig., 753 F.3d 521 (5th Cir.2014).* The Fifth Circuit's Orders affirming this Court's Jurisdictional Rulings are now final, as no petitions for a writ of certiorari to the United States Supreme Court were filed. Pursuant to these rulings, jurisdiction over Taishan and TTP has been conclusively established.

### D. *Taishan's and TTP's Contacts with the United States*
18. Taishan and its wholly-owned subsidiary TTP have a number of contacts with the United States. From 2005 to 2009, Taishan, TTP, and/or their affiliated companies manufactured and sold approximately 1,825,202 sheets of Chinese Drywall that were shipped to and used in the United States. *See Jurisdictional Rulings,* 894 F.Supp.2d at 849–50. Taishan holds itself out as a Chinese manufacturer of new building materials, particularly drywall, that exports its products world-wide, including the United States. *See Jurisdictional Rulings,* 894 F.Supp.2d at 850. During the

relevant period, Taishan's marketing and informational brochure included an illustration of its world-wide marketing web, which depicted an arrow pointing from China to the United States. *See Jurisdictional Rulings,* 894 F.Supp.2d at 850. Taishan's website, like its brochure, states that Taishan is one of the largest drywall manufacturers in the world and that it exports its product world-wide, including to the United States. *See Jurisdictional Rulings,* 894 F.Supp.2d at 850. Taishan also advertises and sells its drywall onAlibaba.com, which allows customers to purchase its drywall worldwide, including in the United States.*See Jurisdictional Rulings,* 894 F.Supp.2d at 850. The employees of Taishan and TTP use Americanized names, and speak English, and TTP's employees were employed by Taishan specifically to solicit business and service the United States market. *See Jurisdictional Rulings,* 894 F.Supp.2d at 850. Taishan and TTP manufactured drywall specifically for U.S. customers by: representing that their drywall satisfied American Society for Testing and Materials ("ASTM") standards; measuring the drywall in U.S. measurements; placing on the drywall, labels written in English and information and colors as requested by U.S. customers; and employing packing and shipment of the drywall for the United States. *See Jurisdictional Rulings,* 894 F.Supp.2d at 850–51.

**\*4** 19. Taishan and TTP shipped large quantities of drywall to the states of Virginia, Florida, and Louisiana. For instance, Taishan directed shipments of drywall to Venture Supply in Virginia totaling 159,000 sheets. *See Jurisdictional Rulings,* 894 F.Supp.2d at 853. From 2006 to 2007, Taishan and/or TTP sold almost 200,000 sheets of its drywall, through several transactions, to Florida customers or customers doing business in Florida. *See Jurisdictional Rulings,* 894 F.Supp.2d at 875. During 2006 and 2007, Taishan and/or TTP sold at least 45,756 sheets of drywall, through a number of transactions, which ended up in Louisiana. *See Jurisdictional Rulings,* 894 F.Supp.2d at 898.

20. In addition to drywall, Taishan also imported and/or sought to import metal studs, framing, tracking, toilets, and sinks to the United States. *See Jurisdictional Rulings,* 894 F.Supp.2d at 877. Taishan has also delivered shipments of drywall to California, New York, and North Carolina. *See* Exhibit "1" to Affidavit of Russ M. Herman in Support of the Plaintiffs' Steering Committee's Global Statement of Facts and Memorandum of Law in Opposition to: (1) Taishan's Renewed Motions to Vacate the Default Judgments and Dismiss the Complaints in Germano and Mitchell and (2)

Taishan's Motions to Dismiss the Complaints in Gross and Wiltz, Rec.Doc. # 14843–3.

## II. *Judicial Findings Regarding the Defective Nature of Chinese–Manufactured Drywall and the Need for and Scope of Remediation*

21. It has been established by the Consumer Product Safety Commission ("CPSC") and in these proceedings that Chinese Drywall releases reduced sulfur gases. FOFCOL at 12. The three main gases that are released from Chinese manufactured drywall are hydrogen sulfide (H2S), carbonyl sulfide (COS), and carbon disulfide (CS2). FOFCOL at 12. The CPSC and Plaintiffs' experts have detected reduced sulfur gas emissions by conducting laboratory tests on samples of Chinese drywall. FOFCOL at 12. These emissions are often associated with strong odors. FOFCOL at 12. The fact that Chinese Drywall emits sulfur gases has been reported by the CPSC, the Florida Department of Health, and other investigatory agencies and firms. FOFCOL at 12–13.

22. The sulfur gases released by Chinese Drywall causes offending odors in homes, making them hard if not impossible to live in, and are corrosive to metals, particularly copper and silver. FOFCOL at 13.

23. As a result of this Court having held the evidentiary hearing to determine the scope of remediation, cost of remediation and other property damages caused by Taishan Chinese Drywall to the seven Plaintiff—Intervenors, (February 19, 2010, February 22, 2010), the Court's April 8, 2010 FOFCOL resolved a multitude of factual and legal issues for the seven Plaintiff Intervenors' claims against Taishan (such as scope and cost of remediation and the right to recover remediation damages). To properly remediate plaintiffs' homes, it is established that homeowners will be out of their homes for 4–6 months during remediation, and that families thus are entitled to alternate living expenses during the remediation process. FOFCOL at 56–57. Moreover, the average cost of repairing class members' homes is subject to calculation on a formulaic, square footage basis. Indeed, this Court made similar findings in the later *Hernandez* trial. *See* April 27, 2010 Findings of Fact and Conclusions of Law, Rec.Doc. # 2713. The same approach to the determination of damages for repair and remediation is applicable to the class representatives and class members subject to appropriate cost adjustments.

## III. *Alter Ego and/or Piercing the Corporate Veil*

**\*5** 24. The State-owned Assets Supervision and Administration Commission of the State Counsel (hereafter "SASAC") of the People's Republic of China controls the "plasterboard" manufacturing, exportation and certification industry. FOFCOL at 10.

25. The SASAC supervises and manages the State-owned assets of the enterprises engaged in drywall production, including Taishan and its affiliate companies. FOFCOL at 10. The degree of control SASAC (Government of China) exerts and influences over the Taishan Defendants is extensive. FOFCOL at 10. For example, SASAC assumes the responsibility as the investor on behalf of the state; it supervises and manages the state-owned assets and enterprises; controls the value preservation and increment of the state-owned assets; guides and pushes forward the reform and restructuring of state-owned enterprises (hereafter "SOEs"); appoints and removes top executives of SOEs; is responsible for organizing SOEs to turn gains over to the state; is responsible for urging SOEs to carry out laws and regulations for safety production; directs and supervises the management work of local state-owned assets; and undertakes other tasks assigned by the State Council. FOFCOL at 10–11.

26. Furthermore, SASAC oversees and controls 150 large central SOEs, including CNBM Group. FOFCOL at 11. SASAC owns 100% of the CNBM Group. FOFCOL at 11. CNBM Group, in turn, owns 56.4% of the CNBM and 75% of BNBM. CNBM owns 52.40% of BNBM. FOFCOL at 11. On March 19, 2005, BNBM became the largest shareholder of Taihe Dongxin (Taishan) by purchasing sixty-five percent (65%) of the equity of Taishan Dongxin. FOFCOL at 10.

27. This Court's Order of September 4, 2012 found that Taishan and TTP are one and the same entity under an alter-ego and/or agency theory. *See Jurisdictional Rulings,* 894 F.Supp.2d at 869–72. For instance, in concluding that TTP's jurisdictional contacts with the state of Florida could to be attributed to Taishan under an alter-ego or agency theory, this Court made several important findings regarding the relationship between the companies, including, but not limited to, the facts that: Taishan controlled 100% of TTP's shares; that several high-ranking Taishan employees were appointed to the board of directors of TTP; that several former Taishan employees became employees of TTP, were paid by Taishan during the time they worked for TTP, and then returned to Taishan after TTP ceased production; that TTP was authorized to use Taishan's brand, but did not pay for this

authorization; that TTP sold Taishan brand drywall; and that when dealing with customers Taishan and TTP regularly held themselves out as operating as a single business enterprise. *See Jurisdictional Rulings,* 894 F.Supp.2d at 869–72. After applying Florida law to these facts this Court concluded that TTP's jurisdictional contacts should be imputed to Taishan. *See Jurisdictional Rulings,* 894 F.Supp.2d at 869–72. The Court reached the same conclusion for purposes of applying TTP's jurisdictional contacts to Taishan for purposes of asserting personal jurisdiction over these companies under Louisiana law. *See Jurisdictional Rulings,* 894 F.Supp.2d at 895. [4]

**\*6** 28. CNBM, CNBM Group, BNBM, and BNBM Group are affiliates of Taishan. *See* Request for Admissions at ¶¶ 7 and 8. [5]

29. At all relevant times, BNBM and CNBM had and still have control over Taishan and all of its subsidiaries. *See* Request for Admissions at ¶ 85 and ¶ 87.

30. BNBM owned sufficient stock and/or equity ownership in Taishan to give it actual working control over Taishan. *See* Request for Admissions at ¶ 19. At all relevant times, BNBM was Taishan's dominant stockholder. *See* Request for Admissions at ¶ 33. At all relevant times, BNBM exerted sufficient control over Taishan as its dominant stockholder. *See* Request for Admissions at ¶ 34.

31. Taishan and TPP shared common officers, directors, board members, and/or chairmen with BNBM and BNBM Group. *See* Request for Admissions at ¶ 20. BNBM and BNBM Group had common employees with Taishan and TPP. *See* Request for Admissions at ¶ 21. BNBM and BNBM Group had common personnel and management with Taishan. *See* Request for Admissions at ¶ 52. The control of Taishan, BNBM and BNBM Group was unified into a single body of oversight and control. *See* Request for Admissions at ¶ 23. At all relevant times, the directors and officers of Taishan who were also the directors and officers of BNBM and BNBM Group acted in concert in the interest of BNBM and BNBM Group. *See* Request for Admissions at ¶ 24.

32. Taishan and TPP shared common officers, directors, board members, and/or chairmen with CNBM and CNBM Group. *See* Request for Admissions at ¶ 49. CNBM and CNBM Group had common employees with Taishan and TPP. *See* Request for Admissions at ¶ 50. CNBM and CNBM Group had common personnel and management

with Taishan. *See* Request for Admissions at ¶ 51. The administrative control of Taishan, CNBM and CNBM Group was unified into a single body of oversight and control. *See* Request for Admissions at ¶ 54. At all relevant times, the directors and officers of Taishan who were also the directors and officers of CNBM and CNBM Group acted in concert in the interest of CNBM and CNBM Group. *See* Request for Admissions at ¶ 55.

33. At all relevant times, Taishan was undercapitalized, inadequately capitalized, and thinly incorporated such that it was insufficiently funded, or had insufficient capital to support its operations. *See* Request for Admissions at ¶ 26.

34. At all relevant times, Taishan never complied with requisite corporate formalities including, but not limited to, issuance of stock, annual shareholder meetings, formal board meetings, and corporate authorization for major transactions. *See* Request for Admissions at ¶ 46.

35. At all relevant times, BNBM, BNBM Group, CNBM, and CNBM Group directly and/or indirectly, financed all or substantially all of Taishan's operations. *See* Request for Admissions at ¶¶ 27–28. At all relevant times, BNBM, BNBM Group, CNBM, and CNBM Group paid all or substantially all of Taishan's expenses. *See* Request for Admissions at ¶¶ 29–30.

 **\*7** 36. At all relevant times, the salaries and other expenses or losses of Taishan were paid by or paid directly with funds originating from BNBM, BNBM Group, CNBM, and/or CNBM Group or any of their parents, subsidiaries, or sister entities. *See* Request for Admissions at ¶ 41 and ¶ 60.

37. At all relevant times, the same person(s) directly controlled the finances of Taishan BNBM, BNBM Group, CNBM, and/or CNBM Group, including but not limited to: loan agreements between Taishan and BNBM, BNBM Group, CNBM, and/or CNBM Group (formal or informal, written or verbal); wire transfers of funds to Taishan from BNBM, BNBM Group, CNBM, and/or CNBM Group; wire transfers of funds to Taishan from BNBM, BNBM Group, CNBM, and/or CNBM Group; and a joint banking and/or checking account for Taishan, BNBM, BNBM Group, CNBM, and/or CNBM Group. *See* Request for Admissions at ¶ 25 and ¶ 56.

38. At all relevant times, Taishan, BNBM, BNBM Group, CNBM, and/or CNBM Group had centralized accounting. *See* Request for Admissions at ¶ 43 and ¶ 62.

40. At all relevant times, BNBM, BNBM Group, CNBM, and CNBM Group siphoned funds from Taishan. *See* Request for Admissions at ¶¶ 31–¶ 32.

39. At all relevant times, there were multiple undocumented transfers of funds between Taishan and BNBM, BNBM Group, CNBM, and/or CNBM Group—both from Taishan to BNBM, BNBM Group, CNBM, and/or CNBM Group and from BNBM, BNBM Group, CNBM, and/or CNBM Group to Taishan. *See* Request for Admissions at ¶ 44 and ¶ 63.

41. At all relevant times, BNBM, BNBM Group, CNBM, and/or CNBM Group had the authority to withdraw money from Taishan's operating account, and actually did so on several occasions without notice to or permission by Taishan. *See* Request for Admissions at ¶ 45 and ¶ 64.

42. At all relevant times, Taishan, BNBM, BNBM Group, CNBM, and CNBM Group used the same office spaces and shared resources including, but not limited to: facsimile machines; telephones; internet servers; email accounts; secretarial staff; and office supplies. *See* Request for Admissions at ¶¶ 39 and 59.

43. At all relevant times, employees of Taishan rendered services on behalf of BNBM, BNBM Group, CNBM, and/or CNBM Group and vice versa-employees of BNBM, BNBM Group, CNBM, and CNBM Group rendered services on behalf of Taishan in fulfilling its contractual or business obligations. *See* Request for Admissions at ¶ 42 and ¶ 61.

44. The allocation of profits and losses as between BNBM, BNBM Group, CNBM, and/or CNBM Group and Taishan is unclear and virtually non-existent. *See* Request for Admissions at ¶ 47and ¶ 66.

45. BNBM and Taishan's development and production capacities were reported as one in CNBM's May 2010 Overseas Regulatory Announcement. *See* Request for Admissions at ¶ 101. BNBM and Taishan's development and production capacities were reported as one unified report in the 2009 BNBM Annual Report. *See* Request for Admissions at ¶ 102. BNBM and Taishan's development and production capacities were reported as one unified report in the Summary of BNBM 2008 Annual Report. *See* Request

for Admissions at ¶ 103. At all relevant times, BNBM and Taishan's development and production capacities were reported as one unified report in the 2006 BNBM Annual Report. *See* Request for Admissions at ¶ 104.

**\*8** 46. The Corporate Restructuring of CNBM and CNBM Group, wherein BNBM purchased Taishan stock, was not an arms-length transaction, was for inadequate consideration, and was for the purpose of defrauding Taishan's creditors. *See* Request for Admissions at ¶ 77, ¶ 79, and ¶ 80.

47. At all relevant times, Taishan and/or TTP were express and/or implied mandataries (*i.e.* agents) of BNBM, BNBM Group, CNBM, and/or CNBM Group, in that BNBM, BNBM Group, CNBM, and/or CNBM Group had and still has the right to control the conduct and/or actions of Taishan and TTP, and Taishan and/or TTP have authority to bind BNBM, BNBM Group, CNBM, and/or CNBM Group. *See* Request for Admissions at ¶¶ 82–83.

### CONCLUSIONS OF LAW

**I.** *The Taishan Affiliates are Liable to the Class as Affiliates of Taishan or Under the Theory of Alter Ego/ Piercing the Corporate Veil*
48. "[T]he dictionary definition of the term affiliate in Black's Law Dictionary (7th ed.1999) is a corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation ...".*Hopkins v. Howard,* 930 So.2d 999, 1007 (La.App. 4 Cir.2006), *writ denied,*930 So.2d 984 (La.2006). In *Southern Capital Enterprises, Inc. & F. David Tutt v. Conseco Services, L.L.C., et al ., 476* F.Supp.2d 589 (M.D.La.2007), the court equated the term affiliate to the single business enterprise theory of piercing the corporate veil. *Id. at* 595. Under the single business enterprise theory, a court "may disregard the concept of corporate separateness and extend liability to each of the affiliated corporations to prevent fraud or to achieve equity."*Id.* (quoting *Brown v. Auto. Casualty Ins. Co.,* 644 So.2d 723, 727 (La.Ct.App.1995)).

49. In *Green v. Champion Ins. Co.,* 577 So.2d 249 (La.Ct.App. 1st Cir.1991), *writ denied,*580 So.2d 668 (La.1991), the court set forth a non-exclusive eighteen-factor test to determine whether a group of affiliated entities constituted a single business enterprise. Those factors as set forth by the court are as follows:

1. Corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control;

2. Common directors or officers;

3. Unified administrative control of corporations whose business functions are similar or supplementary;

4. Directors and officers of one corporation act independently in the interest of that corporation;

5. Corporation financing another corporation;

6. Inadequate capitalization ("thin corporation");

7. Corporation causing the incorporation of another affiliated corporation;

8. Corporation paying the salaries and other expenses or losses of another corporation;

9. Receiving no business other than that given to it by its affiliated corporations;

10. Corporation using the property of another corporation as its own;

**\*9** 11. Noncompliance with corporate formalities;

12. Common employees;

13. Services rendered by the employees of one corporation on behalf of another corporation;

14. Common offices;

15. Centralized accounting;

16. Undocumented transfers of funds between corporations;

17. Unclear allocation of profits and losses between corporations; and

18. Excessive fragmentation of a single enterprise into separate corporations.

*Green,* 577 So.2d at 257–58. These factors do not constitute an exhaustive list. *Id.* at 258. Moreover, no one factor is dispositive on the issue of whether a single business enterprise exists. *Id.* Establishing these facts is common to every class member, thus making class certification appropriate.

50. Based upon the Court's above findings of fact, the Court concludes that Taishan, TTP, BNBM, BNBM Group, CNBM, and CNBM Group constitute a single business enterprise for purposes of piercing the corporate veil and holding each of these entities liable for the conduct of their affiliated entities. *See supra* at ¶¶ 21–47. More specifically, the Court concludes that Class Counsel has satisfied factors 1–8 and 10–18 of the *Green* eighteen-factor test. In light of these conclusions as well as this Court's prior conclusions involving the relationship between the Taishan Affiliates, the Court concludes that the Taishan Affiliates may be held liable for the conduct of their affiliated entities.

51. Although the above analysis involves the application of Louisiana law, the Court concludes that Taishan, TPP, BNBM, BNBM Group, CNBM, and CNBM Group may be held liable for the conduct of their affiliated entities under the laws of Virginia, Florida, Mississippi, and Alabama law. Under Virginia law, a court may pierce the corporate veil to find that an individual (or corporation) is the alter-ego of another corporation where it finds "(i) a unity of interest and ownership between the two entities; and (ii) that one entity used the other "to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage."*C.F. Trust, Inc. v. First Flight Ltd. P'ship,* 306 F.3d 126, 132 (4th Cir.2002). Thus, for a court to disregard the corporate veil, the plaintiff must show that a subsidiary is organized and operated as a mere instrumentality or conduit of the stockholders, and it must further appear that recognition of the separate corporate entities would aid an unjust loss or injury. *Marsh Broadcasting of Washington, D.C., Inc. v. George Mason Univ. Found.,* 21 Va. Cir. 89, 91 (Fairfax County Cir. Ct.1990) (citing *Beale v. Kappa Alpha Order,* 192 Va. 382, 386, 64 S.E.2d 789 (1951)). To "pierce the corporate veil" under Florida law, three factors must be proven: (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant. *See Gasparini v. Pordomingo,* 972 So.2d 1053, 1055 (Fla. 4th DCA 2008). Under Mississippi law, courts will disregard corporate identity if it is shown that one corporation is a "mere instrumentality or agency or adjunct in that sense, or as a sham or is used in fraud, by the dominant corporation."*Buchanan v. Ameristar Casino*

*Vicksburg, Inc .,* 957 So.2d 969, 978 (Miss.2007) (quoting *Johnson & Higgins of Miss ., Inc. v. Comm'r of Ins.,* 321 So.2d 281, 285 (Miss.1975)). To pierce the corporate veil, under Alabama law, a plaintiff must show fraud in asserting the corporate existence or must show that recognition of the corporate existence will result in injustice or inequitable consequences. *See* Econ Marketing, Inc. v. Leisure American Resorts, Inc., 664 So.2d 869, 870 (Ala.1994). The corporate veil may be pierced where a corporation is set up as a subterfuge, where shareholders do not observe the corporate form, where the legal requirements of corporate law are not complied with, where the corporation maintains no corporate records, where the corporation maintains no corporate bank account, where the corporation has no employees, where corporate and personal funds are intermingled and corporate funds are used for personal purposes, or where an individual drains funds from the corporation. *Id.*

## II. *Plaintiffs are Entitled to Class Certification*

 *10 As a threshold matter, the Court's analysis of the instant motion for class certification is greatly simplified by the status of the Taishan Defendants as default judgment defendants. Because of the default judgments, liability is conclusively established, and the Court need only determine whether it is appropriate to certify a class under Rule 23 to determine class-wide damages pursuant to Rule 55(b)(2)(B). For the reasons discussed in detail below, the Court concludes that class certification is appropriate.

## A. *Standard of Review*

52. Courts that have addressed default judgments in the class certification context have ruled that the admissions of fact in the complaint are not sufficient for class certification. Following the "rigorous analysis" standard set forth in *General Tel. Co. v. Falcon,* 457 U.S. 147, 161 (1982), these courts have reasoned that the legal conclusions of Rule 23 are not waived or admitted by the default. *See, e.g., Davis v. Hutchins,* 321 F.3d 641, 648–49 (7th Cir.2003) (where the court vacated the district court's findings of class damages because class certification had not been determined). The court in *Davis,* held:

> There is the general principle that factual allegations in the complaint are deemed admitted by the defendant upon default; however, application of that general principle does not solve the class-certification issue. Rule 23(c)

imposes an independent duty on the district court to determine by order that the requirements of Rule 23(a) are met regardless of the defendant's admissions.

*Davis,* 321 F.3d at 648–49. *See also Partington v. American Int'l Specialty Lines Ins. Co.,* 443 F.3d 334, 341 (4th Cir.2006) (notwithstanding the entry of default judgment, courts must formally address whether class certification is appropriate under a rigorous Rule 23 analysis). Thus, the Court will engage in rigorous analysis of Rule 23's prerequisites.

53. The proponents of the class bear the burden of demonstrating that the case is appropriate for class treatment. *Berger v. Compaq Computer Corp.,* 257 F.3d 475, 479 n. 4 (5th Cir.2001). Class certification is soundly within the district court's discretion, and this decision is essentially a factual inquiry. *Vizena v. Union Pac. R.R. Co.,* 360 F.3d 496, 502–03 (5th Cir.2004). In some cases it is necessary for a district court to go beyond the pleadings to understand the claims, defenses, substantive law, and relevant facts in order to make a meaningful certification decision. *Wal–Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2556 (U.S.2011). However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds,* 133 S.Ct. 1184, 1194–95 (U.S.2013). Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied. *Id.*

**B.** *Plaintiffs have Established the Requirements of Rule 23(a)*

**1.** *Numerosity—Rule 23(a)(1)*

 **\*11** 54. To demonstrate numerosity, Plaintiffs must establish that joinder is impracticable through "some evidence or reasonable estimate of the number of proposed class members." *Pederson v. La. State Univ.,* 213 F.3d 858, 868 (5th Cir.2000). "Although the number of members of any proposed class is not determinative of whether joinder is impracticable," the Fifth Circuit has generally set the threshold of 100 to 150 people as satisfying the numerosity requirement. *Mullen v. Treasure Chest Casino LLC,* 186 F.3d 620, 624 (5th Cir.1999).

55. Since the class is comprised of active litigants, Plaintiffs have proven that the class consists of approximately 4,150

members. [6] Joinder of 4,150 class members is impracticable and would lead to a squandering of judicial economy and resources of the parties. The presently available evidence of such a large class demonstrates that the proposed class clearly meets the numerosity requirement. *See In re Chinese–Manufactured Drywall Prod. Liab. Litig.,* 2012 WL 92498, *9 (E.D.La. Jan. 10, 2012) (finding numerosity requirement satisfied where, "[there were a] large number of potential claimants who may benefit from the Settlement Agreement.").

**2.** *Commonality—Rule 23(a)(2)*

56. The threshold for establishing commonality is not high since "for purposes of Rule 23(a)(2) even a single common question will do." *Dukes,* 131 S.Ct. at 2556. As per *Dukes,* to satisfy Rule 23's commonality requirement, class claims "must depend upon a common contention ... of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." 131 S.Ct. at 2551. The Supreme Court explained that the key consideration in assessing commonality is not whether the class raises common claims, but whether a class action can "generate common answers apt to drive the resolution of the litigation." *Id.* To satisfy the commonality requirement under Rule 23(a)(2), class members must raise at least one contention that is central to the validity of each class member's claims." *In re Deepwater Horizon,* 739 F.3d 790, 810 (5th Cir.2014).

57. Here, determining class-wide property damages for the class will affect all class members in a similar manner. The factual determination of class-wide property damages is common to the class members, and resolution of this common question will generate common answers apt to drive the resolution of the litigation. *See Chinese Drywall,* 2012 WL 92498 at *10 ("because the Judicial Panel on Multidistrict Litigation ordered the subject cases to be consolidated in the MDL based upon commonality of facts, and the factual and legal issues arising from KPT Chinese drywall are common to all claimants."); *Turner v. Murphy Oil USA, Inc.,* 234 F.R.D. 597, 605 (E.D.La.2006) (finding commonality where a few common, central issues affected all or most of the class members).

**a. Collateral Estoppel Effect of *Germano* Findings of Fact and Conclusions of Law and Res Judicata Effect of the Court's Jurisdictional Rulings**

Case 2:09-md-02047-EEF-MBN Document 19030-1 Filed 06/01/15 Page 103 of 109
In re Chinese Manufactured Drywall Products Liability Litigation, Slip Copy (2014)

2014 WL 4809520

**\*12** 58. Under the doctrine of collateral estoppel, the Court may also rely on the extensive findings already made by the Court in the *Germano* default judgment proceedings. (Rec.Doc.# 2380). The Supreme Court has approved the use of offensive, non-mutual collateral estoppel under certain circumstances.

> Generally stated, The doctrine of collateral estoppel ... bars a party from relitigating in a second proceeding an issue of fact or law that was litigated and actually decided in a prior proceeding, if that party had a full and fair opportunity to litigate the issue in the prior proceeding and the decision of the issue was necessary to support a valid and final judgment on the merits.

*Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 330–31 (1979); *see also U.S. v. Davenport,* 484 F.3d 321, 326 (5th Cir.2007). The *Parklane* court noted that certain circumstances might exist in a case to justify a court's refusal to apply collateral estoppels, including where: (a) a defendant has little incentive to defend vigorously, (b) the second action affords the defendant procedural opportunities not available in the first action that could cause a different result, and (c) "if the judgment relied upon as a basis for the estoppels is itself inconsistent with one or more previous judgments in favor of the defendant. *Parklane,* 439 U.S. at 330–31; *In re Plunk,* 481 F.3d 302, 308 (5th Cir.2007).

59. Under the *Parklane* standards, it is appropriate to give the Findings of Fact and Conclusions of Law a preclusive effect in this class proceeding. The defendant has had a full opportunity to litigate, but chose not to respond to process.[7] FOFCOL at 5. It is also clear that the Court's findings on the scope and cost of remediation and property damages were "necessary to support a valid and final judgment on the merits."*Parklane,* 439 U.S. at 330–31. Furthermore, none of the *Parklane* factors which would justify a court's refusal to apply collateral estoppel is present on the *Germano* record. Therefore under *Parklane* and *Plunk,* the Court holds that the Findings of Fact and Conclusions of Law (Rec.Doc.# 2380) are entitled to be given preclusive effect in this class proceeding.

60. With respect to the Court's Jurisdictional Rulings, Taishan vigorously opposed personal jurisdiction at both the district court level and at the Fifth Circuit Court of Appeals. Taishan lost at both levels. Therefore, the Court's Jurisdictional

Rulings are entitled to res judicata effect. "Res judicata means a thing decided; the doctrine states that a final judgment on the merits rendered by a court of competent jurisdiction is conclusive as to the parties and their privies; therefore, attempts to litigate the matter further are barred.."*German v. Corr. Corp. of Am.,* 2006 WL 2583732, \*1 (N.D.Miss. Sept. 6, 2006) (internal quotes omitted), *citing Cromwell v. County of Sac.,* 94 U.S. 351, 352 (1876); *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.,* 575 F.2d 530, 535 (5th Cir.1978).

**\*13** 61. In sum, the Findings of Fact and Conclusions of Law from the proceeding for the seven Plaintiff Intervenors are entitled to be given a preclusive effect under the *Parklane* standards. The Court's Jurisdictional Rulings are likewise entitled to preclusive effect.

### 3. *Typicality—Rule 23(a)(3)*

61. Rule 23(a)(3) requires that the claims of the class representatives be typical of the class's claims or defenses. "The typicality criterion focuses on whether there exists a relationship between the plaintiff's claims and the claims alleged on behalf of the class."NEWBERG ON CLASS ACTIONS § 3:13. Again, the threshold for typicality is low: class representatives must show similarity between their legal and remedial theories and the theories of the rest of the class. *Mullen,* 186 F.3d at 625. Typicality does not require that the claims of the class are identical, but rather that they share the same essential characteristics—a similar course of conduct, or the same legal theory. *See James v. City of Dallas, Tex.,* 254 F.3d 551, 571 (5th Cir.2001) (*quoting* 5 James W. Moore, *et al.,*MOORE'S FEDERAL PRACTICE ¶ 23.24 [4] (3d ed.2000)).

63. The property damage claims of the class representatives are typical of, if not identical in nature to, those of the class members. The determination of these damages depends on the same factual predicate as to the manufacturer of the defective product, product identification, the mechanism of damage occurring in class members' homes, the need for remediation, the scope of remediation, the square footage costs of accomplishing the remediation, and alternative living expenses during remediation. *See Chinese Drywall,* 2012 WL 92498 at \*10 ("typicality is satisfied because each of the plaintiffs is seeking money from the Knauf defendants for the costs of remediation ... and the proposed Class and Subclass representatives have claims against KPT which are typical of all plaintiffs."). Thus, the typicality requirement is met.

### 4. *Adequacy of Representation—Rule 23(a)(4)*

64. Rule 23(a)(4) demands that the named class representatives fairly and adequately represent the claims of the other class members. There can be differences between the class representatives and other class members so long as these differences do not "create conflicts between the named plaintiffs' interests and the class members' interests." *Mullen,* 186 F.3d at 626. A district court should evaluate whether the class representatives have a sufficient stake in the outcome of the litigation, and whether the class representatives have interests antagonistic to the unnamed class members. *Id.* (citing *Jenkins v. Raymark Indus.,* 782 F .2d 468, 472 (5th Cir.1971)). In addition, the district court should inquire into the zeal and competence of the class representatives' counsel and into the class representatives' willingness to take an active role in the litigation and to protect the interests of absentees. *Berger v. Compaq Computer Corp.,* 257 F.3d 475, 479 (5th Cir.2001).

**\*14** 65. Under *Fed.R.Civ.P. 23(g)*, a district court must appoint class counsel at the time the class is certified, unless otherwise provided by statute. The class counsel must fairly and adequately represent the interests of the class, and the court must review the counsel's work in investigating claims, experience in handling class action litigation, knowledge of the applicable law, and the resources counsel will commit to representing the class. *See* Rule 23(g)(1)(B),(C).

66. The class representatives have the same interest as class members in obtaining property damage relief from the Taishan Defendants. They also all share the same interest in the enforcement of a class judgment and the collection of that judgment against the Taishan Defendants. The class representatives have demonstrated their commitment to the litigation by subjecting their residences to screening inspections to establish product identification and the fact of corrosion damage. Further, these class representatives have timely completed the court ordered Plaintiffs Fact Sheets.

67. The proposed Class Counsel are experienced in class action practice, and are well-respected, and competent lawyers. This Court has already had the opportunity to work extensively with each of the proposed Class Counsel and their firms in proceedings related to the default judgment against Taishan and the evidentiary hearing and associated legal briefing relevant to this Court's Findings of Fact and Conclusions of Law as to the seven Intervenor Plaintiffs. Indeed, this Court has previously determined that proposed Class Counsel are adequate for purposes of serving as

Class Counsel with respect to the settlements that have been approved by the Court. *See Chinese Drywall,* 2012 WL 92498 at *10–11. The Court has also appointed Class Counsel as lead counsel (Arnold Levin) and Plaintiffs' Liaison Counsel (Russ Herman) in the instant litigation. Thus, the Court finds that the proposed class representatives, (Eduardo and Carmen Amorin, Albert and Betsy Butzer, Jack and Anna McGinn, Thomas and Virginia Spencer, and Elliot and Angelina Everard), as well as the proposed Class Counsel (Russ Herman and Arnold Levin) are adequate. [8]

### C. *Plaintiffs have Established All of the Requirements of Rule 23(b)(3)*

68. Rule 23(b)(3) requires that the common questions identified in Rule 23(a)(3) predominate and that the class procedure is the superior method of litigating the claims.

### 1. *Predominance*

68. Predominance is established where common answers to common questions are likely to "drive the resolution of the [instant] litigation." *See Dukes,* 131 S.Ct. at 2551 ("what matters to class certification is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceedings to generate common answers apt to drive the resolution of the litigation.") (citations omitted). In *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds,* 133 S.Ct. 1184 (U.S.2013), the Supreme Court explained that, "Rule 23(b)(3)... does not require a plaintiff seeking class certification to prove that each "elemen[t] of [her] claim [is] susceptible to classwide proof." *Id.* at 1196. What the rule does require is that common questions "predominate over any questions affecting only individual [class] members." *Fed. Rule Civ. Proc. 23(b)(3)* (emphasis added)." *Amgen,* 133 S.Ct. at 1196. A district court should consider how the cases would proceed to trial, that is, whether any cases would require individual trials on particular issues. *See Castano v. Am. Tobacco Co.,* 84 F.3d 734, 744–45 (5th Cir.1996) (finding that certification was inappropriate where individual trials would be necessary to determine an element of the plaintiffs' fraud claims).

**\*15** 70. In order to satisfy Rule 23(b)(3)'s requirement that common questions of law and fact predominate, "the predominance test asks whether a class suit for the unitary adjudication of common issues is economical and efficient in the context of all the issues in the suit." NEWBERG ON CLASS ACTIONS § *see also Amchem,* 521 U.S. at 623 ("The

Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.")(citing 7A Wright, Miller, & Kane 518–19).

71. Because the only claims at issue here are against default judgment defendants, and because the Court has already found sufficient facts to establish the causation issue associated with these types of claims, all that is required is an assessment of damages. Liability is conceded by default. Accordingly, the Court will establish class-wide damages pursuant to Rule 55(b)(2)(B).

72. The Plaintiffs have demonstrated a methodology to calculate class-wide damages in compliance with *Monumental Life Insurance Co. v. National Life,* 365 F.3d 408, 419 (5th Cir.2004) ("The policy variables are identifiable on a classwide basis and, when sorted, are capable of determining damages for individual policy owners; none of these variables is unique to particular plaintiffs. The prevalence of variables common to the class makes damages computation 'virtually a mechanical task.' ").

73. As the Eleventh Circuit noted in the *Klay v. Humana:*

> Plaintiffs need only come forward with plausible statistical or economic methodologies to demonstrate impact on a class wide basis. Particularly where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification.

382 F.3d at 1259–60 (internal brackets, quotations and footnotes omitted).

74. Damages were previously presented in *Germano* and *Hernandez* and sufficed to allow the Court to make per square foot damage calculations for all affected plaintiffs. *See* FOFCOL (awarding $86/square foot for Virginia); *see also* April 27, 2010 Findings of Fact and Conclusions of Law, Rec.Doc.# 2713 (awarding $81/square foot for Louisiana). Such aggregate proof is sufficient to meet Plaintiffs' obligations subject to appropriate cost adjustments. *See In re Terazosin Hydrochloride,* 220 F.R.D. 672, 699 (S.D.Fla.2004) ("Assuming the jury renders an aggregate judgment, allocation will become an intra class matter

accomplished pursuant to a court approved plan of allocation, and such individual damages allocation issues are insufficient to defeat class certification."); *In re NASDAQ,* 169 F.R.D. at 525 ("Aggregate computation of class monetary relief is lawful and proper.").

75. Given that the Court has already found that the costs of remediation can be calculated on a square footage basis and the Court has already determined what other property damages are recoverable, class-wide damages can be established in an efficient manner without the need for a trial.[9] The Court can likewise determine the cost of remediation, through the submission of affidavits, expert evidence and from data gathered by Moss & Associates (subject to appropriate cost adjustments), for remediation costs generally (*i.e.,* empirical evidence concerning the cost or remediation performed by Moss & Associates under the Knauf settlement program). For purposes of calculating class-wide damages, data concerning class members currently before the Court (*i.e.,* data from BrownGreer PLC concerning the square footage of class members' homes) can be used to estimate the size of the class so that damages can be calculated on an aggregate basis. Thus, Plaintiffs can establish a formulaic method to determine class-wide property damages as required by the Rule 23(b)(3) predominance requirement. *Monumental,* 365 F.3d at 419. Indeed, damages are simply calculated by using a mathematical formula similar to what the Court utilized in *Germano* and *Hernandez* (*i.e.,* price per square foot to remediate X number of square feet in class members' homes = damages).

*16 76. Thus, for the reasons set forth above, all of the requirements of Rule 23(b)(3) predominance are readily established.

### 2. Superiority—*Rule 23(b)(3)*

77. Under Rule 23(b)(3), a district court must evaluate four factors to determine whether the class action format is superior to other methods of adjudication: the class members' interest in individually controlling their separate actions, the extent and nature of existing litigation by class members concerning the same claims, the desirability of concentrating the litigation in the particular forum, and the likely difficulties in class management.Fed.R.Civ.P. 23; *Mims v. Stewart Title Guar. Co.,* 590 F.3d 298, 304 (5th Cir.2009).[10]

78. Class proceedings are a superior method to adjudicate the damage assessment remaining in this case. This case presents

2014 WL 4809520

a factual and procedural status that makes certification appropriate as a result of the entry of a default judgment on liability and the fact this Court has already made extensive findings that are applicable to a cross-section of class members. The narrow scope of the factual determinations left to be made—the amount of damages for the class—and the exhaustive record of the relevant factual evidence already reviewed by and ruled on by this Court greatly enhances the manageability of this matter. In addition, the Court has already determined that these claims are meritorious. FOFCOL at 17–59. A class proceeding will facilitate an expeditious and streamlined resolution for all impacted residents. Given the extreme costs involved in litigating this matter, class members (as a whole) have no ability to individually prosecute these matters. For all the reasons stated above, as well as the procedural advantages of avoiding duplicate hearings on identical issues, class adjudication is the superior method to resolve the remaining issues in this dispute. [11]

79. Therefore, based upon the Findings of Fact and Conclusions of Law, the Court finds that class certification is appropriate pursuant to Fed.R.Civ.P. 23(a)(1)-(4) and 23(b)(3) and concludes as follows:

A. The certified class is defined as follows:

> All owners of real properties in the United States, who are named Plaintiffs on the complaints in *Amorin, Germano, Gross,* and/or *Wiltz* (*i.e.,* not an absent class member*), asserting claims for remediated damages arising from, or otherwise related to Chinese Drywall manufactured, sold, distributed, supplied, marketed,

inspected, imported or delivered by the Taishan Defendants.

B. The above-defined class is comprised of active litigants (either in the original action or in complaints in intervention) who are participants in *Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al.,* Case No. 09–6687 (E .D.La.); *Gross, et al. v. Knauf Gips, KG, et al.,* Case No. 09–6690 (E.D.La.); *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.,* Civ. Action No. 10–361 (E.D.La); *Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* Civ. Action No. 11–080 (E.D.La); *Haya, et al. v. Taishan Gypsum CorF Ltd., et al.,* Civ. Action No. 11–1077 (E.D.La.); *Almeroth, et al. v. Taishan Gypsum Co., Ltd., et al.,* Civ. Action. 12–0498 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* Civ. Action No. 11–1672 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* Civ. Action No. 11–1395 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* Civ. Action No. 11–1673 (E.D.La.). [12]

*17 C. Plaintiffs, Eduardo and Carmen Amorin, Albert and Betsy Butzer, Jack and Anna McGinn, Thomas and Virginia Spencer, and Elliot and Angelina Everard shall serve as class representatives.

D. Russ Herman of Herman, Herman & Katz, LLC, and Arnold Levin of Levin, Fishbein, Sedran & Berman are appointed as Class Counsel.

E. The notice appended hereto as Exhibit "A" is hereby approved, as modified, by the Court. The opt out period shall be 30 days from the date of this Order.

## Footnotes

1   See *In re Chinese–Manufactured Drywall Prod. Liab. Litig.,* 742 F.3d 576 (5th Cir.2014).

2   This Court's FOFCOL are supported by the record presented during the evidentiary hearing on confirmation of the default against Taishan, including the Affidavit of Russ M. Herman In Support of the Plaintiffs' Steering Committee's Evidentiary Presentation Regarding Taishan Gypsum Co., Ltd. Dated February 19, 2010, the trial transcripts, the testimony and reports of Plaintiffs' expert witnesses, as well as the exhibits admitted into evidence. A complete list of all witnesses providing testimony during these proceedings (whether by live testimony or deposition transcript) and all exhibits admitted into evidence is set forth in this Court's minute entries dated February 22, 2010 and February 26, 2010. *See* Rec.Doc.# s 1258 and 1497.

3   This Court's Jurisdictional Rulings are supported by the evidentiary record created by the parties and at oral argument. The evidentiary record submitted by the parties includes:

- The exhibits to Taishan's Renewed Motion to Vacate the Default Judgment and Dismiss the Complaint, *see* Rec.Doc.# s 13490–2 to 13490–29;
- The exhibits to Taishan's renewed motion pursuant to rules 55(c) and 12(b)(2) to vacate the entry of default and dismiss this action, *see* Rec.Doc.# s 13566–2 to 13566–15;
- The exhibits to Defendants Taishan Gypsum Co. Ltd. and Tai'an Taishan Plasterboard Co., Ltd.'s motion pursuant to Rule 12(b)(2) to Dismiss the Complaint, *see* Rec.Doc.# s 13590–2 to 13590–31;
- The exhibits to Defendants Taishan Gypsum Co. Ltd. and Tai'an Taishan Plasterboard Co., Ltd.'s motion pursuant to Rule 12(b)(2) to Dismiss the Complaint, *see* Rec.Doc.# s 13591–2 to 13591–31;
- The exhibits appended to the PSC's Response in Opposition to Taishan Gypsum Co., Ltd.'s Renewed Motion to Vacate the Default Judgment and Dismiss the Complaint, *see* Rec.Doc.# s 14202–1 and 14202–2;
- Plaintiffs' Expert Declarations of Professor Liu Junhai, Bing Cheng and Professor James V. Feinerman in Support of the PSC's Response in Opposition to: (1) Taishan's Renewed Motions to Vacate the Default Judgments and Dismiss the Complaints in *Germano* and *Mitchell* and (2) Taishan's Motions to Dismiss the Complaints in *Gross* and *Wiltz*, *see* Rec.Doc. # 14203;
- The exhibits to the PSC's Response in Opposition to Taishan's Motions Pursuant to Rule 12(b)(2) to Dismiss Complaints, *see* Rec.Doc. # s 14204–1 to 14204–3;
- The PSC's Global Statement of Facts and exhibits thereto, *see* Rec.Doc. # 14215;
- The exhibits to Interior Exterior's Memorandum in Support of the PSC's Response in Opposition to Taishan's Motions Pursuant to Rule 12(B)(2) to Dismiss and to Provide Additional Support in Response Thereto, *see* Rec.Doc. # s 14356–1 and 14356–2;
- The exhibits to RESPONSE/MEMORANDUM in Opposition filed by Mitchell Company Inc. re MOTION to Vacate the Default Judgment and Dismiss the Complaint, *see* Rec.Doc.# s 14372–1 to 14372–10;
- The exhibit to Certain Florida Homebuilders' Amicus Curiae Response to Taishan Gypsum Co. Ltd.'s Renewed Motion Pursuant to Rules 55(c) and 12(b)(2) to Vacate the Entry of Default and Dismiss this Action, *see* Rec.Doc.# s 14390–1 to 14390–26;
- The exhibits to the Memorandum of Taishan Gypsum Co. Ltd. in Reply to Plaintiffs' Opposition to the Renewed Motion to Vacation the Default Judgment and Dismiss the Complaint, *see* Rec.Doc.# s 14572–1 to 14572–12;
- The exhibits to the Memorandum of Taishan Gypsum Co. Ltd. in Reply to Plaintiffs' Opposition to the Renewed Motion to Vacation the Default Judgment and Dismiss this Action, *see* Rec.Doc.# s 14573–1 to 14573–12;
- The exhibits to the Memorandum of Defendants Taishan Gypsum Co. Ltd. and Tai'an Taishan Plasterboard Co., Ltd. in Reply to Opposition to Their Motion Pursuant to Rule 12(b)(2) to Dismiss the Complaint, *see* Rec.Doc. # s 14575–1 to 14575–11; and
- The exhibits to the Memorandum of Defendants Taishan Gypsum Co. Ltd. and Tai'an Taishan Plasterboard Co., Ltd. in Reply to Opposition to Their Motion Pursuant to Rule 12(b)(2) to Dismiss the Complaint. *See* Rec.Doc. # s 14574–1 to 14574–11.

4    With the exception of TTP none of the other Taishan Affiliates entered an appearance or otherwise participated in these proceedings. While the discovery involving TTP established that Plaintiffs properly pierced the corporate veil as to TTP, the Plaintiffs were unable to proceed with any discovery involving the other Taishan Affiliates in light of their default status.

5    In addition to the above findings, the PSC served Taishan and TPP with a Request for Admissions on July 21, 2014. *See* Exhibit "A" (hereinafter "Request for Admissions") to Notice of Filing (Admission of Fact by Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. to Request for Admissions Dated July 21, 2014), Rec.Doc. # 17993. Since neither Taishan nor TPP timely responded to the PSC's Request for Admissions within 30 days after being served, the Request for Admissions are deemed admitted in accordance with Fed.R.Civ.P. 36(a)(3).

6    *See Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al.,* Case No. 09–6687 (E.D.La.); *Gross, et al. v. Knauf Gips, KG, et al.,* Case No. 09–6690 (E.D.La.); *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.,* Civ. Action No. 10–361 (E.D.La); *Abel, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* Civ. Action No. 11–080 (E.D.La) (service of this complaint on the Taishan Defendants is ongoing); *Haya, et al. v. Taishan Gypsum Corp. Ltd., et al.,* Civ. Action No. 11–1077 (E.D.La.) (service of this complaint on the Taishan Defendants is ongoing); *Almeroth, et al. v. Taishan Gypsum Co., Ltd., et al.,* Civ. Action No. 12–0498 (E.D.La.) (service of this complaint on the Taishan Defendants is ongoing); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* Civ. Action No. 11–1672 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* Civ. Action No. 11–1395 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* Civ. Action No. 11–1673 (E.D.La.).

7   It is noteworthy that intervenor Knauf, prior to withdrawing from the *Germano* proceedings, vigorously contested Plaintiffs'
    evidence on the scope of remediation and cost of remediation through the process of filing expert reports, cross-examining
    Plaintiffs' experts at depositions, and filing *Daubert* challenges against Plaintiffs' remediation and damages experts (which
    were denied). FOFCOL at 5–6.

8   Various courts consider *ascertainability* to be a requirement under Rule 23. Ascertainability pertains to the ability of the
    court based on record evidence to utilize objective criteria to determine who is a class member (and who is not). The
    Fifth Circuit has referred to ascertainability as an "implied prerequisite of Rule 23." *National Security Fire and Casualty
    Company,* 501 F.3d 443, 445 (5t Cir.2007); *see also DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir.1970) ("It is
    elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and
    clearly ascertainable."), *In re A.H. Robins Co., Inc.,* 880 F.2d 709, 728 (4th Cir.1989); *Simer v. Rios,* 661 F.2d 655, 669
    (7th Cir.1981); 5 James W. Moore, et al., MOORE'S FEDERAL PRACTICE § 23.21[1], at 23–47 (Matthew Bender 3d ed.
    1997) ("It is axiomatic that in order for a class action to be certified, a class must exist ."). Because this class action seeks
    certification of a class comprised of active litigants, all class members are presently before the Court. The identification of
    these class members is easily verifiable by reference to the PSC's Omnibus Class Action Complaints or the complaints
    in intervention thereto. *See Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al.,*
    Case No. 09–6687 (E.D.La.); *Gross, et al. v. Knauf Gips, KG, et al.,* Case No. 09–6690 (E.D.La.); *Wiltz, et al. v. Beijing
    New Building Materials Public Limited Co., et al.,* Civ. Action No. 10–361 (E.D.La); *Abel, et al. v. Taishan Gypsum Co.,
    Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* Civ. Action No. 11–080 (E.D.La); *Haya, et al. v. Taishan Gypsum
    Corp. Ltd., et al.,* Civ. Action No. 11–1077 (E.D.La.); *Almeroth, et al. v. Taishan Gypsum Co., Ltd., et al.,* Civ. Action. 12–
    0498 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* Civ. Action
    No. 11–1672 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* Civ.
    Action No. 11–1395 (E.D.La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et
    al.,* Civ. Action No. 11–1673 (E.D.La.).

9   The claims process in the instant proceedings will be especially streamlined since the parties are already in possession
    of data needed to establish: (1) product identification for each claimant; and (2) the square footage of each property
    impacted by the Taishan Defendants' defective drywall.

10  The Fifth Circuit in *Castano* advised that a district court's superiority analysis should include consideration of the
    negative impact upon a defendant of certification of a mass tort. *Castano,* 84 F.3d at 746. The court noted that class
    certification magnifies unmeritorious claims, increases plaintiff's damage awards, and creates "insurmountable pressure"
    upon defendants to settle—all of which could be tantamount to "judicial blackmail." *Id.* As noted above, this Court
    has recognized that the types of claims represented herein are meritorious. FOFCOL at 17–59. In addition, Taishan's
    contemptuous refusal to appear at the judgment debtor proceedings, should serve to alleviate concern that this particular
    defendant is experiencing pressure of any kind to resolve these claims, due to so-called "judicial blackmail" or otherwise.

11  Moreover, in light of the JPML's Order transferring these cases and consolidating them before this Court pursuant to
    28 U.S.C. § 1407, "[t]his factor should ... be of little or no significance in resolving the superiority issue."NEWBERG ON
    CLASS ACTIONS, § 4:31. The JPML previously considered, pursuant to 28 U.S.C. § 1407, the desirability of centralizing
    the Chinese Drywall litigation in this particular forum.

12  For administrative reasons the class definition is limited to the actions in *Amorin, Germano, Gross* and *Wiltz.*All class
    members are named plaintiffs in the *Amorin* actions.

---

End of Document                                                 © 2015 Thomson Reuters. No claim to original U.S. Government Works.

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

CHINA NATIONAL BUILDING          §
MATERIAL INVESTMENT CO.,         §
LTD. (F/K/A BND CO., LTD.)       §
     Plaintiff,               §
                                 §    CIV. ACTION NO. 14-CV-00701-SS
vs.                              §
                                 §
BNK INTERNATIONAL, LLC and       §
JEFFREY J. CHANG                 §
     Defendants.              §

## ORDER DISMISSING CLAIMS

On this day, the Court considered *Defendants' Joint Motion to Dismiss as Result of Apparent Injunction Against Plaintiff* (the "Motion") filed by Jeffrey J. Chang and BNK International LLC and any responses filed. The Court finds the Plaintiff's Complaint filed on July 30, 2014 was enjoined by the Honorable Eldon E. Fallon in his Order entered July 17, 2014, at Docket No. 17869, in *In re Chinese Manufactured Drywall Products Liability Litigation*, Case No. 09-MD-02-47-EEF, In the United States District Court for the Eastern District of Louisiana and that good cause exists for granting the relief requested in the Motion. It is therefore,

ORDERED that Plaintiff's claims are dismissed with prejudice.

ORDERED that Defendants' claims are dismissed without prejudice.

This is a final and appealable order.

SIGNED _____

_____
UNITED STATES DISTRICT JUDGE

Submitted by:

Peter C. Ruggero
Texas Bar No. 24044376
RUGGERO LAW FIRM PC
1411 West Avenue, Ste 200
Austin, TX 78701
Telephone: 512.473.8676
Facsimile: 512.852.4407
peter@ruggerolaw.com

Attorney for Jeffrey J. Chang