UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | CIVIL ACTION<br><br>NO. 09-02047<br><br>SECTION "L" (5) |

ORDER & REASONS

Before this Court is a Motion for Recalculation of Remediation Costs. (Rec. Doc. 18576-1). Having read the parties' briefs and reviewed the applicable law, the Court now issues this Order & Reasons.

I. BACKGROUND

From 2005 to 2008, a housing boom coincided with the destruction caused by Hurricanes Katrina and Rita to sharply increase the demand for construction materials in the Gulf South and East Coast. In response, Chinese companies manufactured and sold to homeowners throughout the United States considerable quantities of gypsum wallboard which came to be known as "Chinese drywall." Homeowners experienced problems with the drywall. Specifically, the drywall emits various sulfide gases, damages structural mechanical and plumbing systems of the home, and damages other appliances in the home. The affected parties sued the entities involved in the manufacturing, importing, and installing the Chinese drywall. The cases multiplied and the Judicial Panel on Multidistrict Litigation ("MDL") declared the matter an MDL and transferred the cases to this Court. After a period of discovery, it became clear that there were two principal manufacturers: the Knauf Entities and the Taishan Entities. The Knauf entities entered into a settlement agreement.

## II.     PRESENT MOTION (Rec. Doc. 18576-1)

The motion before the Court comes from Prime Homes at Portofino Falls, Ltd. ("Prime"), a Class Member of the Knauf Settlement Agreement ("KSA").  (Rec. Doc. 18576-1).  Prime alleges that there was an "unreasonable two year delay in processing, approving, and paying" twenty-nine of Prime's self-remediation claims.  Id. at 1; (Rec. Doc. 18707 at 1-2).  Prime further alleges that the market rate for construction costs has increased in the interim and that, as a result, the Final Cost Estimate issued by Knauf's agent, Moss, would "severely underfund" Prime's self-remediation efforts.  Id.  In addition, Prime alleges that it "cannot begin remediation work until all affected properties have been funded with the first installment for payment."  (Rec. Doc. 18576-1 at 2).

In response, Knauf argues that "[t]he only delays relevant to an increase in the remediation cost of any particular property are those delays occurring after Moss issued the Final Cost Estimates" and that "the two delays after Moss issued the Final Cost Estimates . . . were caused solely by Prime Homes."  (Rec. Doc. 18634).  In reply to the response, Prime argues that the Knauf defendants "fail to cite to the Knauf Settlement Agreement in support of their proposition because it has absolutely no basis in the Knauf Settlement Agreement or otherwise."  (Rec. Doc. 18707).  In addition, Prime argues that Knauf mischaracterized the length of the delay.  Id.

## III.    LAW AND ANALYSIS

### A.     **Right to request recalculation**

Prime incorrectly asserts that Knauf's position has no basis in the KSA.  Rather, Section 4.3.1.2 of the KSA outlines the "Delay Period Payment" and the amount of additional repayment that will be provided, but there is no provision of the KSA that provides for a "recalculation" of remediation costs.  (Rec. Doc. 16407 at 15).  As a result, Section 4.3.1.2 governs this dispute.

2

This section defines the "Delay Period" as "the end of the three-month period commencing with the date on which the Lead Contractor or Other Approved Contractors starts the remediation work." Id. Prime clearly acknowledges in its motion that it has not commenced remediation work. (Rec. Doc. 18576-1 at 2). As a result, it is not entitled to any additional payment for remediation costs before its approved contractor begins the remediation work.

Prime avers that it "cannot begin remediation work until all affected properties have been funded with the first installment for payment." (Rec. Doc. 18576-1 at 2). However, Prime has not explained why *all* properties must be funded in order to begin remediation work on *any* of the properties. Nonetheless, this question is immaterial, as Prime's inability to receive payment comes as a result of its failure to cure deficiencies in its releases after multiple requests from the Settlement Administrator. (Rec. Docs 18634-1, 18634-2, 18634-3). Thus, Prime, by its own actions, has created the delay and cannot benefit from its own failure.

      B.    **Whether Prime's motion should be granted**

Assuming, arguendo, that (1) Prime's releases were not deficient, (2) it commenced remediation work, (3) and three months have elapsed, it is unclear as to why Prime should be entitled to a "recalculation" of their costs. First, Prime does not cite to a provision of the KSA which entitles it to a "recalculation." Second, Prime asserts that the market rate for construction costs has increased in the past two years to such a level that would "severely underfund" its remediation efforts. (Rec. Doc. 18576-1 at 9). However, nowhere in its motion is there any documentation that shows whether, or how much, construction costs have increased over the past two years, much less to such a level that would "severely underfund" their remediation efforts. As a result, Prime has not demonstrated that its motion should be granted. Finally, from the documentation provided by Knauf in response to the motion, it appears that Prime is

3

responsible for the delay, and principles of equity dictate that a party is not entitled to compensation for a problem of its own making.  (Rec. Docs 18634-1, 18634-2, 18634-3).

### IV. CONCLUSION

For the aforementioned reasons, **IT IS ORDERED** that Prime's Motion for Recalculation of Remediation Costs (Rec. Doc. 18576-1) is **DENIED.**

New Orleans, Louisiana this 29th day of May, 2015.

_____
UNITED STATES DISTRICT JUDGE