UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: CHINESE-MANUFACTURED | * | MDL 2047 |
| DRYWALL PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to: | * | |
| Case No. 10-362. Sec. L. Mg. 2 | * | MAGISTRATE JUDGE WILKINSON |
| | * | |

* * * * * * * * * * * * * * * * * *

## MEMORANDUM IN OPPOSITION TO CLAIMANT OCEANIQUE DEVELOPMENT COMPANY'S OBJECTION AND MOTION FOR COURT REVIEW OF SPECIAL MASTER'S OPINION AND DECREE

**NOW COME** the Knauf Defendants,[1] who file this Memorandum in Opposition to Claimant Oceanique Development Company's Objection and Motion for Court Review of Special Master's Opinion and Decree (Rec. Doc. 19023). The Special Master's reduction of the Oceanique Development Company's ("Claimant") claim amount was not in error. First, pursuant to the Knauf Class Settlement Agreement,[2] Claimant's failure to preserve evidence is prejudicial to the determination of the claim by the Knauf Defendants, the Special Master, and the Court. For these situations, a reduction is explicitly provided for in the Already Remediated Properties Protocol ("Protocol")[3] – the other alternative being complete disallowance of the claim. Second, pursuant to Section 4.2.9 of the Knauf Class Settlement Agreement, Claimant's appeal is untimely and should be dismissed as a matter of law.

---

[1] The Knauf Defendants include Knauf Plasterboard (Tianjin) Co., Ltd., Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH, Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda., and PT Knauf Gypsum Indonesia.

[2] *Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047* (Rec. Doc. 16407-3).

[3] Rec. Doc. 12061-6.

**I.   Claimant's failure to preserve evidence is prejudicial to the determination of the claim.**

Claimant did not opt out of the Knauf Class Settlement Agreement, and therefore is bound by, and must comply with, the terms of the agreement, specifically Pretrial Order 1B (PTO 1B) and the Protocol. Section IV(D)(4) of the Protocol provides:

> The ***Special Master and the Court will take into consideration***, in determining whether to allow a claim or the amount of the claim, ***whether the Owner has complied with MDL Pretrial Order 1B*** (if the claim is pending in the MDL) or with applicable state law requirements for preservation of evidence (if the claim is pending in state court). Subject to review by the Special Master or the Court, ***the failure to preserve evidence as required by law will result in disallowance or reduction in the amount of the claim if the failure has been prejudicial to a determination of the claim***.

(Rec. Doc. 12061-6) (emphasis added).

In light of all of the evidence presented by Claimant in support of its claim, the Special Master reduced the amount of the claim because the Claimant failed to preserve and present evidence, making it impossible to determine a KPT percentage. The minimal evidence of KPT drywall, when viewed in light of stronger evidence of Taishan drywall at Claimant's property, resulted in the corresponding award by the Special Master.[4] Claimant's counsel continues to make the claim that 100 pages of KPT photos were provided, but as Claimant's Exhibit H shows, the KPT photos provided for this large development are limited to 10 distinct photos of KPT drywall.[5] Of those photos, only one KPT drywall board was documented so as to satisfy the requirements of PTO 1B, yet the Claimant's claim includes the replacement of approximately 6,000 drywall boards.

---

[4] *See* Special Master's Opinion and Decree at Claimant's Exhibit A (Rec. Doc. 19023-4):

[5] A total of 13 photos with KPT drywall were presented by Oceanique. *See* Drywall Evidence submitted by Claimant at Claimant Exhibit H (Rec. Doc. 19023-12): Claimant Photos showing duplicated photos. Accounting for the duplication, it can be determined that 9 partial/removed boards and only one complete/installed KPT board were presented for the 39 units (approximate 100,000 square foot development).

The Knauf Defendants raised the possibility of fraud based on the fact that Claimant produced various affidavits stating that *only* KPT drywall was installed in the property, even though the *only* unit that was inspected professionally was deemed to be a 100% Taishan unit.[6] This unit (801B) is on the same floor as various other units for which Claimant is making claims against the Knauf Defendants, notwithstanding the fact that drywall is lifted and installed on a floor-by-floor basis in the construction of multi-level buildings. Nonetheless, the Claimants submitted affidavits to the Knauf Defendants *stating that all* of the drywall removed from the affected units, *including 801B*, was KPT drywall.[7] At best, these affidavits are incorrect and unreliable.

In addition to its prior papers,[8] the Knauf Defendants address Claimant's other arguments:

1. Claimant states that "Residents of Oceanique found vast amounts of Knauf drywall throughout the entire complex." (Rec. Doc. 19023-3, p. 1). To date photographs of 9 KPT partial/detached boards and one complete/installed KPT board are all that have been submitted. Claimant has provided no other evidence of KPT drywall in the property.

2. Claimant's motion states that "PTO 1 does not require preserving any drywall." (Rec. Doc. 19023-3, p. 2). PTO 1 requires all parties and their counsel to preserve evidence that may be relevant, and the duty extended to "documents, data, and tangible things in possession, custody and control of the parties…." PTO 1, pg. 7. This includes drywall. Further, early in this litigation, the Court put interested parties on notice of the importance of evidence

---

[6] *See* Plaintiff Profile Form of Unit 801B attached hereto as Exhibit 1; *see also* Inspection Report at Claimant's Exhibit B (Rec. Doc. 19023-6).

[7] *See* Oceanique Affidavits at Claimant's Exhibit I (Rec. Doc. 19023-13). The affidavits specifically list unit 801(B) as one of the units they observed drywall removal and photos of drywall that contained KPT markings.

[8] *See* Knauf Defendants' Position Papers at Claimant's Exhibit D (Rec. Doc. 19023-8) and Claimant's Exhibit K (Rec. Doc. 19023-15).

3

preservation and that "[f]ailure to comply may lead to dismissal of claims, striking of defenses, imposition of adverse inferences, or other dire consequences." *Id.* at 8.

3. The fact that the Claimant alleges the remediation occurred prior to the filing of PTO 1B is a red herring. (Rec. Doc. 19023-3, p. 3). The Knauf Class Settlement Agreement adopts PTO 1B as the standard for evaluating Claimant's claim. (Rec. Doc. 12061-6 at Section IV(d)(4)). Claimant was on notice of the requirements and had full notice and opportunity to opt-out if it chose to do so. However, Claimant failed to opt-out and is therefore bound by the terms of the Knauf Class Settlement Agreement, the Protocol, and PTO 1B. The Protocol is unambiguous that PTO 1B is the standard for evaluating Claimant's claim. Even if it did opt-out, Claimant would not be able to sustain a civil action in any jurisdiction, as it has submitted virtually no proof that the Knauf Defendants' product was installed in the property. Further, PTO 1 and the Environ Phase 5 protocol were in place at the time of the remediation.[9] Similar to PTO 1B, Claimant, a sophisticated developer, failed to come close to meeting either PTO 1 or the Environ Phase 5 preservation requirements.

4. Claimant contends that neither the Special Master nor the Knauf Defendants "have bothered to inspect" the drywall samples Claimant asserts it kept. (Rec. Doc. 19023-3, p. 5). It is not the duty of the Knauf Defendants or the Special Master to present evidence on behalf of a claimant. If Claimant has additional evidence of KPT drywall, that evidence should have been submitted. The Knauf Defendants have been requesting evidence of the drywall installed in this development for years, and what was presented was insufficient to support a claim under the Knauf Class Settlement Agreement.

---

[9] *See* PTO 1, pgs. 7-8; *see also, e.g.* Environ Phase 5 Report attached hereto as Exhibit 2. In 2009 and throughout the Claimants' remediation period, other builders/developers in Florida were remediating properties pursuant to the Environ Phase 5 protocol. As part of the Environ Phase 5 protocol, Environ would delineate, (1) the total percentage and types of Chinese Drywall found in the property, (2) the amount, percentage, type and location of Chinese Drywall in each room in the property, and (3) the rationale for removal of the drywall.

5. Claimant's argument that Banner Port St. Lucie did not receive any Taishan drywall is a ploy, and in contradiction to the undisputed fact that the only unit at the property that was fully inspected for Chinese drywall contained 100% Taishan drywall.

6. Claimant's statement that it "had no lawsuit in mind in the Summer of 2009 when it took immediate action to fix its residents' units and mitigate further lost sales" is in contradiction to its statement that it "made what it considered, at the time, reasonable efforts to preserve evidence of the presence of Knauf's drywall in its development, including the presence of corroded electrical wiring, corroded HVAC coils, corroded copper piping, pitted fixtures and failed appliances." (Rec. Doc. 19023-3, p. 3). Claimant's statements defy common sense, especially that of a highly sophisticated developer. Surely, if Claimant had the awareness to document its alleged damages (corrosion and remediation costs), it knew the importance of establishing causation for such damages. Regardless, Claimant's "considered" efforts are irrelevant as the Protocol defines what efforts are necessary to preserve and present a claim under the Knauf Class Settlement Agreement.

7. In seeking an increase in its award, the Claimant states that neither Knauf nor the Special Master dispute the damages claimed. (Rec. Doc. 19023-3, p. 2). That is not the case; the Knauf Defendants dispute the claimed amount. All claimants are limited to the Reimbursable Costs as established in the Knauf Class Settlement Agreement. Neither the scope of the mediation nor the negotiations between Claimant and the Knauf Defendants included discussion concerning the remediation costs submitted. Should the Court disagree with the Special Master's award, the Knauf Defendants reserve their rights to review costs and limit any award to only Reimbursable Costs.

8. Claimant argues that its claim should be compensated based on a market-share liability theory in accordance with the Banner Settlement Allocation Plan. (Rec. Doc. 19023-3, p. 6). First, the claim is governed by the Knauf Class Settlement Agreement, not principles of market-share liability. Second, the Knauf Class Settlement Agreement is governed by, and construed and enforced with, the substantive laws of the State of Louisiana without regard to conflict of laws principles. (Rec. Doc. 16407-3 at § 18.10). No Louisiana jurisdiction has ever applied market-share liability theory to supplant proof of proximate causation. Moreover, the Fifth Circuit has refused to find that market-share liability theory could be applied under Louisiana law. *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1252-53 (5th Cir. 1997); *Thompson v. Johns–Manville Sales Corp.*, 714 F.2d 581 (5th Cir. 1983). Finally, even if Knauf supplied Banner with a higher percentage of Chinese drywall than Taishan, the Claimant has failed to show the actual Chinese drywall percentage at the Oceanique development, which is not comparable to the percentage of KPT supplied to Banner. Again, the only unit that was professionally inspected was found to be a 100% Taishan unit. *See* Inspection Report at Claimant's Exhibit B (Rec. Doc. 19023-6).

**II.     Oceanique's appeal is untimely and should be dismissed as a matter of law.**

Section 4.2.9 of the Knauf Class Settlement Agreement requires parties to appeal the decisions of the Special Master "within 15 days of service of the Special Master's decision by filing an objection with the Court…." The Special Master served his decision on the parties on May 11, 2015. Claimant filed its motion on May 29, 2015, eighteen days after the Special Master's decision and three days after the deadline to appeal.

Claimant will likely assert that Section IV(C) permits the appeal as it was filed within 20 business days of the Special Master's decision. (Rec. Doc. 12061-6). However, the Protocol

states that the parties shall make the written submission within 20 business days of the unsuccessful mediation *Id*. Claimant failed to submit this claim to the Court within 20 business days of the March 12, 2015 mediation, or from the date (March 31, 2015) Claimant rejected the mediation settlement offer. Further, the Protocol relates to failed mediations, and not where the Special Master issues an Opinion and Decree.  Section 4.2.9 is the controlling provision here.

**CONCLUSION**

The Special Master's decision followed the Already Remediated Properties Protocol's guidance in determining claims with limited evidence of drywall manufacturer. Extrapolating Claimant's limited evidence of KPT drywall to the rest of the development, as Claimant would have the Court do, is highly prejudicial to the Knauf Defendants, especially when strong evidence of Taishan drywall exists. Therefore, the Special Master's decision should be sustained.

Finally, Claimant's appeal is untimely and should be dismissed as a matter of law.

                                    Respectfully Submitted,

/s/ *Kerry J. Miller*
KERRY J. MILLER (LA Bar No. 24562)
**Baker, Donelson, Bearman,**
**Caldwell & Berkowitz, PC**
201 St. Charles Ave.
Suite 3600
New Orleans, LA 70170
Phone: 504.566.8646
Fax:   504.585.6946
kjmiller@bakerdonelson.com
*Counsel for the Knauf Defendants*

**CERTIFICATE**

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6 and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 29th day of May 2015.

                                    /s/ *Kerry J. Miller*