# Exhibit 1

Print Form

Plaintiff Profile Form - Residential Properties

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE MANUFACTURED DRYWALL
PRODUCTS LIABILITY LITIGATION
THIS DOCUMENT RELATES TO: ALL CASES

MDL NO. 2047
SECTION: L
JUDGE FALLON
MAG. JUDGE WILKINSON

For Internal Use Only

File Number

Date Received

This Plaintiff Profile Form must be completed and signed by every person making a claim in this litigation using one form per affected address. In completing this Profile Form, you are under oath and must provide information that is true and correct to the best of your knowledge. If you cannot recall all of the details requested, please provide as much information as you can and expressly indicate "unknown" in the space provided when not known. You must supplement your responses if you learn they are incomplete or incorrect in any material respect. You may and should consult with your attorney if you have any questions regarding completion of this form. If you are completing the form for someone who has died or who cannot complete the Profile Form, please answer as completely as you can for that person.

The questions and requests for production contained within this Profile Form are non-objectionable and shall be answered without objection. By answering this Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts and are subject to all protections afforded by law.

To the extent that the form does not provide enough space to complete your responses, you may attach as many sheets of paper as necessary. All photographs produced in response to this form shall be in color and attached to or printed on 8 1/2" x 11" white paper.

### Section I. Property Information

Name Property Owner: Lincoln & America Mendez
Address of Affected Property: 4180 N. Highway A1A, Unit 801B
Hutchinson Island, FL 34949

Is this Property:* [X] Residential [ ] Commercial [ ] Governmental
Name of Person Completing this Form: Lincoln Mendez
Is above your primary residence? (•) Yes ( ) No
Mailing Address (if different): 625 SW 157 Avenue
Pembroke Pines, FL 33027
Phone: (954) 433 - 3401

* If your response is commercial or governmental you should not fill out the remaining questions, you will receive a follow up form at a later date.

Circle one: [ ] Owner-Occupant [ ] Owner Only [X] Renter-Occupant
Represented By: Ervin Gonzalez
Address: Colson Hicks Eidson
255 Aragon Avenue, 2nd Floor
Coral Gables, FL 33134
Phone: (305) 476 - 7400
Case No. /Docket Info: 10-361

### Section II. Insurance Information

Homeowner/ Renter Insurer: Royal Palm Insurance Co.
Policy #: RPIH0139386
Agent: Swanson Insurance Agency, Inc.
Address: 5977 S. University Drive
Davie, FL 33328
Phone: (954) 434 - 0500

+ Attach Copy of Insurance Declaration Page

### Section III. Claimant Information

| Name of Claimant | Dates Occupied Move-in | Dates Occupied Leave | Gender | Date of Birth | Are you claiming personal injuries?* Circle One | Identify Claimant Status as an Owner-Occupant, an Owner Only, or an Occupant or Renter Only |
|---|---|---|---|---|---|---|
| Lincoln Mendez | 02/16/07 | / / | M | 05/14/56 | (•)Yes No | Owner-Occupant |
| America Mendez | 02/16/07 | / / | F | 11/04/66 | (•)Yes No | Owner-Occupant |
| Zachary Mendez | 02/16/07 | / / | M | 06/25/98 | (•)Yes No | Occupant or Renter Only |
| Thomas Mendez | 02/16/07 | / / | M | 03/29/94 | (•)Yes No | Occupant or Renter Only |
| | / / | / / | M / F | / / | Yes No | |
| | / / | / / | M / F | / / | Yes No | |
| | / / | / / | M / F | / / | Yes No | |
| | / / | / / | M / F | / / | Yes No | |
| | / / | / / | M / F | / / | Yes No | |
| | / / | / / | M / F | / / | Yes No | |

* Personal injuries include claims for mental anguish and medical monitoring.

Page 1

AMENDED

MendezL000001

Plaintiff Profile Form - Residential Properties

### Section IV. Inspection Information

1.0. Have you, or has anyone on your behalf, conducted an inspection into whether Chinese-manufactured drywall is present in your home?  ☒ Yes  ☐ No

   1.1. If "Yes" to Question 1.0 Section IV. Who conducted the inspection? Yanes Security & Invesitgative Services, Inc.

   1.2. When did the inspection take place? 09/30/09

2.0. Has a determination been made that Chinese-manufactured drywall is present in your home?  ☒ Yes  ☐ No

   2.1. If "Yes" to Question 2.0. Section IV. Who made this determination? Yanes Security & Invesitgative Services, Inc.

   2.2. When was this determination made? 09/30/09

### Section V. Drywall Information

| Drywall Manufacturer | Markings on Drywall | Location in Home |
|---|---|---|
| Taishan | Drywall4FeetX12Feetx1/2 inch | Throughout home |

### Section VI. Home Information

| | | | Yes | No |
|---|---|---|---|---|
| Approx. Sq. Ft. of House: | 3230 | | | |
| Estimated Sq. Ft. of Drywall | Unknown | Occupied | | ☒ |
| Height of Interior Walls | 9 - 10 ft. | Year-round | | |
| Number of Bedrooms: | 3 | Summer | | |
| Number of Bathrooms: | 3 1/2 | Winter | | |

#### Plumbing System

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| PVC/ CPVC/ Plastic Piping | | ☒ | |
| Copper Piping | ☒ | | |
| Copper Fixtures | ☒ | | |
| Other Fixtures | ☒ | | |
| Were repairs made to the plumbing system? | No | | |
| Dates: | | | |

#### Electrical System

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| Receptacles | ☒ | | |
| Switches | ☒ | | |
| Main Panel | ☒ | | |
| 2nd Panel | ☒ | | |
| Exposed Copper Wires | ☒ | | |
| Were repairs made to the electrical system? | | ☒ | |
| Dates: | | | |

+ Attach Copy of Floor Plan on 8 1/2" X 11" paper

### Section VII. Construction/Renovation Information

Date Range for New Home Construction: (Month/Day/Year)

| Start Date: | / /07 | Completion Date | 02 / /07 |
|---|---|---|---|
| Move In Date: | 02/16/07 | Date Acquired Home | 02 / /07 |

Date Range for Renovations: (Month/Day/Year)

| Start Date: | / / | Completion Date | / / |
|---|---|---|---|
| Move In Date: | / / | | |

| Renovation(s) | Yes | No | N/A |
|---|---|---|---|
| First Floor: 1/2 Wall of drywall replaced | | ☒ | |
| First Floor: Full Wall of drywall replaced | | ☒ | |
| Second Floor: Any drywall replaced | | ☒ | |

### Section VIII. Homebuilder/ General Contractor/ Developer Information

Homebuilder/ General Contractor/ Developer's Name:

   Oceanique Development Company, Inc.

Address: P.O. Box 320637

   Cocoa Beach, FL 32932-0637

Phone: (321) 453 - 5360

+ Attach Copy of Construction/Renovation Contract
+ Attach Copy of New Home Warranty Declaration

### Section IX. Drywall Installer

Drywall Installer's Name:

   Oceanique Development Company, Inc.

Address: P.O. Box 320637

   Cocoa Beach, FL 32932-0637

Phone: (321) 453 - 5360

### Section X. Drywall Supplier

Drywall Supplier's Name:

   Unknown

Address:

Phone: ( ) -

Plaintiff Profile Form - Residential Properties

| Section XI. Verification of Plaintiff Profile Form | | | |
|---|---|---|---|
| I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Plaintiff Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration to the extent that such documents are in my possession, custody or control. | | | |
| *[signature]* Claimant's Signature | 1/27/10 Date Signed | Claimant's Signature | Date Signed |
| *[signature] America L. Mendez* Claimant's Signature | 1/27/10 Date Signed | Claimant's Signature | Date Signed |
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |

AMENDED                                                                MendezL000003

# ROYAL PALM INSURANCE COMPANY
POST OFFICE BOX 142350
GAINESVILLE, FL 32614-2350

**HOMEOWNERS
DECLARATIONS**

**POLICY NUMBER
RPIH01393**

THIS IS <u>NOT</u> A BILL.
**Payment notice will be sent separately
to: The Insured.**

Renewal Of
Issued C
12/26/20

**Insured**
LINCOLN MENDEZ
AMERICA MENDEZ
625 ENCLAVE CIR W
PEMBROKE PINES, FL 33027

**AGENT        FLR630**
SWANSON INSURANCE AGENCY, INC.
5977 S UNIVERSITY DR
DAVIE, FL 33328

PHONE NUMBER: (954) 434-0500

**POLICY PERIOD: 02/22/10 to 02/22/11.** Each period begins and ends at 12:01 AM standard time at insured location.
**INSURED LOCATION:** 4180 N HIGHWAY A1A # 801B
HUTCHINSON ISLAND, FL 34949

Coverage is provided where a premium or limit is shown for the coverage.

| SECTION I - PROPERTY COVERAGE | LIMIT | SECTION II - LIABILITY COVERAGE | LIMIT |
|---|---|---|---|
| COVERAGE A - Dwelling | $102,000 | COVERAGE E - Personal Liability | |
| COVERAGE B - Other Structures | $0 | Each Occurrence | $300,000 |
| COVERAGE C - Personal Property | $50,000 | COVERAGE F - Medical Payments to Others | |
| COVERAGE D - Loss of Use | $20,000 | Each Person | $1,000 |

**BREAKDOWN OF PREMIUM:**

| <u>CHARGES</u> | <u>PREMIUM</u> |
|---|---|
| Section I and II Premium | 557.00 |
| Limited Fungi, Wet or Dry Rot, or Bacteria Coverage - $10,000/$10,000 | Incl |
| Ordinance or Law Coverage - 25% | 44.00 |
| Replacement Cost on Contents | 264.00 |
| Sinkhole Loss Coverage | 7.00 |
| Loss Assessment Coverage - $2,000 | 4.00 |
| Emergency Management Preparedness and Assistance Trust Fund (EMPAT) Fee | 2.00 |
| Florida Hurricane Catastrophe Fund (FHCF) Assessment Fee | 9.01 |
| Citizens Property Insurance Corporation (CPIC) Emergency Assessment 2005 | 12.61 |
| Florida Insurance Guaranty Association (FIGA) Recoupment Fee 2007 | 0.26 |
| Managing General Agency (MGA) Fee | 25.00 |

| <u>CREDITS</u> | |
|---|---|
| Age of Dwelling Credit | Incl |
| Building Code Effectiveness Grading Credit | Incl |
| All Other Perils Deductible Credit | Incl |
| Hurricane Deductible Credit | Incl |
| Residential Windstorm Loss Mitigation Devices Credit | Incl |

| **Total Policy Premium:** | **$924.88** |
|---|---|

**DEDUCTIBLE (Section I Only):**

### The Calendar Year Hurricane Deductible is $1000.
The All Other Perils Deductible is **$1,000**.

In case of loss under Section I, we cover only that part of the covered loss over the deductible stated.

**AMENDED**

RP-HO-DEC (06/09)


MendezL000004

Page:1

POLICY NUMBER
RPIH01393

**Mortgagee**
NONE

Important: Please notify your agent immediately if the mortgage company shown is incorrect.

**BASIC RATING INFORMATION:**

| PROGRAM | FORM CODE | TERRITORY | COUNTY | CONSTRUCTION YEAR | CONSTRUCTION TYPE |
|---|---|---|---|---|---|
| RPFLHO | HO-6 | 181 | SAINT LUCIE | 2006 | Fire Resistive |

| FIRE PROTECTION CLASS | ROOF TYPE | BUILDING CODE (BCEG) GRADE | WIND PROTECTIVE DEVICE | PROTECTIVE DEVICE |
|---|---|---|---|---|
| 3 | Flat | 4 | None | |

PREMIUM SUMMARY:   Hurricane Premium:   $370.00
                  Non-hurricane Premium:   $554.88

**APPLICABLE FORMS AND ENDORSEMENTS:**
RPI HO 09 COV6 (04/09), HO 00 06 (04/91), HO 04 96 (04/91), HO 17 32 (04/91), HP-0503-00 (06/09), IL-0001 (11/01), IL-0010 (01/09), IL-P-001 (01/04), IL-WMCA (04/09), OIR-B1-1670 (01/06), RP-0009 (10/08), RPI HO 09 04 90 (01/06), RPI HO 09 2370 (03/08), RPI HO 09 CLP (01/06), RPI HO 09 DN (09/06), RPI HO 09 ED (12/08), RPI HO 09 ELE (03/08), RPI HO 09 FCE (01/06), RPI HO 09 HD (01/06), RPI HO 09 OL1 (05/06), RPI HO 09 OTL (01/06), RPI HO 09 SLC (07/07), RPI HO 09 SP (04/09), RPI PN (07/06)

**NOTICES:**

- Your Building Code Effectiveness Grading schedule adjustment is -6% for the hurricane portion and -2% for the non-hurricane portion of the premium. For houses built during or after 1995, the adjustments can range from a surcharge of 1% to a discount of 12% for the hurricane premium, and from a surcharge of 1% to a discount of 3% for the non-hurricane premium.
- **This policy does not provide Flood coverage.**
- **This policy does not provide Animal Liability coverage.**
- This Declarations replaces all previously issued policy Declarations, if any. This Declarations together with your policy and endorsements completes your policy. Refer to your policy and endorsements for details regarding your coverages, limits, and exclusions.

**RENEWAL NOTICES:**

- Premium change due to coverage change $0.00.
- Premium change due to rate increase/decrease $0.00.

# THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE LOSSES, WHICH MAY RESULT IN HIGHER OUT-OF-POCKET EXPENSES TO YOU.

12/23/2004 22:22 7724651526 BY THE SEA REAL EST PAGE 04



North Tower Typical Unit H
3 bedroom / 3 ½ baths



2820 sq. ft. living
36 sq. ft. side balcony
332 sq. ft. rear balcony
42 sq. ft. front balcony
3230 total sq. ft.
All dimensions are approximate.

**AMENDED**

**MendezL000006**

p. 9

This Document Prepared By and Return to:
GrayRobinson, P.A.
Attn: Stacy L. Horan
1800 West Hibiscus Blvd., Suite 138
Melbourne FL 32901

EDWIN M. FRY, Jr., CLERK OF THE CIRCUIT COURT
SAINT LUCIE COUNTY
FILE # 3014916 02/22/2007 at 02:21 PM
OR BOOK 2766 PAGE 857 - 857 Doc Type: DEED
RECORDING: $10.00
D DOC STAMP COLLECTION: $8182.30

Parcel ID Number:

# Warranty Deed

This Indenture, Made this 16th day of February, 2007 A.D., Between **Oceanique Development Company, Inc., a Florida corporation**

of the County of **Brevard**, State of **Florida**, grantor, and
**Lincoln Mendez and America Mendez, husband and wife**

whose address is: **625 SW 157 Avenue, Pembroke Pines, FL 33027**

of the County of **Broward**, State of **Florida**, grantees.

Witnesseth that the GRANTOR, for and in consideration of the sum of ------------------------------TEN DOLLARS ($10)------------------------------ DOLLARS, and other good and valuable consideration to GRANTOR in hand paid by GRANTEES, the receipt whereof is hereby acknowledged, has granted, bargained and sold to the said GRANTEES and GRANTEES' heirs, successors and assigns forever, the following described land, situate, lying and being in the County of **St. Lucie** State of **Florida** to wit:

**Unit 801B, in accordance with and subject to the covenants, conditions, restrictions, terms and other provisions of the Declaration of Condominium of OCEANIQUE OCEANFRONT, a Condominium, as recorded in Official Records Book 2752, Page 1842, of the Public Records of St. Lucie County, Florida, and all amendments thereto, together with Parking Spaces No. B-11 and C-20 and Storage Space No. 42, as a limited common element.**

**Subject to restrictions, reservations and easements of record, if any, and taxes subsequent to 2006.**

and the grantor does hereby fully warrant the title to said land, and will defend the same against lawful claims of all persons whomsoever.
**In Witness Whereof,** the grantor has hereunto set its hand and seal the day and year first above written.
Signed, sealed and delivered in our presence:

Oceanique Development Company,
Inc., a Florida corporation

*Rose Marie Crandall*
Printed Name: ROSEMARIE CRANDALL
AMENDED Witness

By: *Maurice Kodsi* (Seal)
Maurice Kodsi, President
P.O. Address: 925 North Courtney Parkway
Merritt Island, FL 32953

MendezL000007

# PURCHASE AGREEMENT

## FOR

## OCEANIQUE OCEANFRONT, A CONDOMINIUM

SELLER, hereinafter referred to as "Developer":

OCEANIQUE DEVELOPMENT COMPANY, INC., a Florida corporation

whose address is:   Post Office Box 320637, Cocoa Beach, Florida 32932-0637

and whose telephone number is: (321) 453-5360.

BUYER:

Name(s):  _Lincoln Mendez_

Address:  _625 SW 157 Avenue_

City:  _Pembroke Pines_   State:  _FL_   Zip:  _33027_

Home Telephone: (_954_) _433-4299_   Office Telephone: (_307_) _668-2002_

Social Security Number(s): __

## OFFER TO PURCHASE

DATE OF OFFER:  _Feb 18, 2005_.

The undersigned Buyer(s) offers to purchase from the Developer the following described property located in St. Lucie County, Florida, to-wit:

Unit No. _801 B_, together with the exclusive right to use Enclosed Covered Parking Space No(s) _C 20_ And Storage Space No(s) _42_, all in accordance with and subject to the covenants, conditions, restrictions, terms and other provisions of the Declaration of Condominium of OCEANIQUE OCEANFRONT, A CONDOMINIUM, to be filed for record in the Public Records of St. Lucie County, Florida.

This offer is not conditioned upon the Buyer obtaining approval of a mortgage loan on the subject parcel.

The Developer requires a deposit of ten (10%) percent of the purchase price.

THIS UNIT [ ] IS [X] IS NOT BEING SOLD SUBJECT TO A LEASE.  FOR ADDITIONAL INFORMATION, PLEASE SEE SECTION 7 OF THE PROSPECTUS.
AMENDED

MendezL000008

ANY PAYMENT IN EXCESS OF TEN (10%) PERCENT OF THE PURCHASE PRICE

*NORTH*

1. <u>ITEMS OF PERSONAL PROPERTY INCLUDED IN PURCHASE PRICE:</u>

    A. Appliances:

    1. Oven
    2. Cooktop
    3. Garbage Disposal
    4. Refrigerator
    5. Dishwasher
    6. Washer and Dryer

    B. Floor Covering:

    Seller shall, at Seller's option, either (1) allow Buyer to make selection from Seller's standard floor coverings or (2) give Buyer a floor covering allowance in the amount of $ _8500_ .

2. <u>PURCHASE PRICE AND TERMS OF PAYMENT</u>:

    A. PURCHASE PRICE

    (1) Purchase Price of Unit $ _1,138,900_

    (2) Fee for additional Enclosed Parking Space(s): ~~6~~  11 (2) $ _30,000_

    (3) TOTAL PURCHASE PRICE AND ADDITIONAL FEES: $ _1,168,900_

    B. TERMS OF PAYMENT:

    (1) Earnest money deposit:

    (a) Initial deposit $ _116,890_

    (b) Additional deposit upon execution of this offer, receipt of which is hereby acknowledged. $ _0_

    (c) Additional Deposit $ _0_

    (d) Balance to close $ _1,052,010_

    C. Extras may be ordered by the Buyer but all such extras shall be paid in cash in advance at the time the extras are ordered.

AMENDED
3. <u>ESCROW AGENT</u>. All payments made by the Buyer to the Developer under this Agreement shall be deposited into the GRAYROBINSON, P.A., TRUST ACCOUNT,

MendezL000009

market account bearing interest at the highest or best rate of interest. The excess deposits over ten (10%) percent of the purchase price may be used by the Developer as permitted under the Florida Condominium Act. Upon delivery by Developer to Buyer of the deed at closing, all these monies aforesaid held in the ten (10%) percent escrow deposit account and in the separate escrow account for those deposits in excess of ten (10%) percent shall be released to the Developer. No interest shall be paid on monies deposited in excess of ten (10%) percent of the purchase price unless the funds are held in escrow for more than three months.

4. USE OF DEPOSITS. Any and all deposits or payments against the purchase price of the Unit made hereunder by Buyer prior to the completion of construction or closing, whichever shall first occur, shall be held in a special account by the Escrow Agent as set forth in paragraph 2 above and shall not be commingled with the general funds of the Escrow Agent. Such funds, however, may be commingled with similar deposits from other buyers purchasing condominium Units in the subject condominium and such deposits may otherwise be held in common or general trust or escrow accounts and commingled with other trust or escrow funds. Once work, as "work" is hereinafter defined, has begun upon the condominium property, the Developer may in the exercise of its discretion withdraw escrow funds in excess of ten (10%) percent of the purchase price and use such funds in and about the actual construction and development of the condominium property and/or the condominium association property. In no event, however, shall any part of those funds so withdrawn be used for salaries, commissions, expenses of salesmen or for advertising purposes. To effectuate the use of the funds which Developer is entitled to withdraw for construction and development purposes, the Developer may cause said deposits to be paid over to a construction loan account and/or any other account for the payment of actual construction and development of the condominium property and the condominium association property, and such account or accounts need not be then a separate account or accounts. For the purposes of this Paragraph 4, construction of the condominium project known as OCEANIQUE OCEANFRONT, A CONDOMINIUM, shall include, but not be limited to, improvement of any part of the real property which is the site of the buildings or any part of the condominium property, or any part of the real property which becomes part of the condominium association property, whether or not such improvements include Units, the common elements of the limited common elements or any of them. For the purposes of this Paragraph 4, and the determination of which construction and development costs deposits may be used for, the word "construction" and the word "improvements" shall be deemed to include, but not be limited to, activity to make a building site ready for construction, including excavation, the installation of utilities, the driving of pile and the like. For the purposes of this Paragraph 4, "work" shall be deemed to have begun upon the commencing of the clearing of the land which is the site of the subject condominium and the commencement of any site work. The deposits of buyers in excess of ten (10%) percent of the purchase price may be used for any expenses permitted to be paid out of such deposits under the laws of the State of Florida and for the reimbursement to any person or persons whomsoever for the payment of such lawful expenses for which the deposits could have been used directly. Without limiting the foregoing in any regard, the costs and expenses for which deposits may be used shall include the payment of principal and interest on construction loans, the proceeds of which loans are utilized in the construction and development of the subject condominium and to pay or reimburse architects' and engineers' fees in and about the subject condominium.

AMENDED

MendezL000010

A. CLOSING COSTS. The Developer shall pay for the owner's title insurance policy and the cost of recording any corrective instruments. The Buyer shall pay for recording the deed, documentary stamps which are required to be affixed to the deed, and for all costs required to be paid by the mortgage lender, including mortgagee title insurance, if Buyer's Unit is to be mortgaged. Property taxes, insurance and assessments shall be prorated between the parties as of the day of closing.

B. COMMON EXPENSES. The Buyer's contribution to the common expenses for maintaining and operating the condominium is guaranteed at $462.74 per month, payable in advance, for the period of time provided in the Section 12.6 of the Declaration.

C. INITIAL START-UP FEE FOR WORKING CAPITAL. At closing, the Buyer shall pay an initial start-up fee for working capital to the Developer for deposit in the condominium working capital fund in the sum of $300.00. The initial start-up fee for working capital shall be used for the initial start-up expenses of the Condominium, including non-recurring capital expenses; provided, however, the Condominium working capital fund shall not be used for payment of any Common Expenses. All funds remaining in the condominium working capital fund not previously expended by the Developer for any of the foregoing items, or reimbursed to the Developer for previous expenditures by it for any of the foregoing items, shall be turned over to the Association at such time as Unit Owners other than the Developer elect a majority of the members of the Board of Directors of the Association. The payment of the initial start-up fee for working capital shall not operate to relieve the Unit Owner who paid it from commencing payment of the periodic assessments provided for in the Declaration.

7. CONVEYANCE.

A. Unit. Developer agrees, subject to the terms of this contract, to convey the fee simple title to the Unit by statutory warranty deed. The Buyer agrees to take title subject to standard exceptions and those usual and common to the area and property location, to the provisions of the Declaration of Condominium and related documents. If the Developer shall be unable to convey title in accordance with this paragraph at the time of closing, then the Developer may extend the closing for a maximum of sixty (60) days in order to perfect the title. If the Developer is unable to perfect title during the sixty (60) day period, then, at Buyer's option, this contract may be cancelled and all sums paid by Buyer shall be immediately returned to Buyer or Buyer may accept the title and proceed to close the purchase of the Unit.

B. Enclosed Parking Spaces and Storage Spaces. The Developer shall assign to the Buyer the Enclosed Parking Space(s) and Storage Space(s) by a non-recordable Assignment of Interest in Enclosed Parking Space and Storage Space ("Assignment"). The Enclosed Parking Space(s) and Storage Spaces are limited common elements of OCEANIQUE OCEANFRONT, A CONDOMINIUM. The Enclosed Parking Space(s) and Storage Spaces are being conveyed subject to the

**AMENDED**

Mendez-L-000011

**THIS AGREEMENT IS VOIDABLE BY THE BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN FIFTEEN (15) DAYS AFTER THE DATE OF EXECUTION OF THIS AGREEMENT BY THE BUYER, AND RECEIPT BY THE BUYER OF ALL OF THE ITEMS REQUIRED TO BE DELIVERED TO THE BUYER BY THE DEVELOPER UNDER SECTION 718.503, FLORIDA STATUTES. THIS AGREEMENT IS ALSO VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 15 DAYS AFTER THE DATE OF RECEIPT FROM THE DEVELOPER OF ANY AMENDMENT WHICH MATERIALLY ALTERS OR MODIFIES THE OFFERING IN A MANNER THAT IS ADVERSE TO THE BUYER. ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. THE BUYER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN FIFTEEN (15) DAYS AFTER THE BUYER HAS RECEIVED ALL OF THE ITEMS REQUIRED. THE BUYER'S RIGHT TO VOID THIS AGREEMENT SHALL TERMINATE AT CLOSING.**

9. ASSIGNABILITY. This contract may not be assigned without approval of Developer, which approval may be withheld by Developer in the exercise of its sole and absolute discretion. If Developer grants approval and as a condition of its approval, the Developer may require a transfer fee not to exceed $1,000.00. Any and all of Developer's interests in this agreement shall be freely assignable by Developer. The transfers which are approved by the Developer shall be processed through attorneys for the Developer in order to insure compliance with law, proper substitution of parties and transfers of escrows. Transfers must be accomplished on forms approved by Developer's attorneys. Legal fees to Developer's attorneys shall be paid by transferor or the transferee as they shall agree among themselves and, in the absence of such agreement, shall be the obligation of the transferor. It is estimated that the legal fees to be charged for such transfers will be approximately $100.00 per transaction.

11. NOTICE. The delivery of any item and the giving of notice in compliance with this agreement shall be accomplished by delivery of the item of notice to the party intended to receive it, or by mailing it within the continental United States by certified mail to the address of the party stated in this agreement. Notice or delivery by mail shall be effective when mailed.

12. THE CONDOMINIUM.

   A. The Developer will construct and equip two apartment buildings in accordance with the plans and specifications, subject, however, to reasonable modifications approved by the Developer that do not change the size of the floor plan of Buyer's Unit, or Buyer's interest in the common elements to the detriment of the Buyer. Such plans and specifications are available for inspection by Buyer at the office of Developer. The Developer agrees that the Condominium shall be ready for occupancy by the Buyer within _____ (23) months from the date of acceptance of this offer, with the provision, however, that the time set for completion and occupancy herein provided for shall be extended for delays and other events that would be sufficient to support a defense under Florida law based upon impossibility of performance for reasons beyond the Developer's control.

**AMENDED**

Mendez1_000012

to require any writing; however, in the event any mortgagee contemplated in this paragraph shall require it, Buyer shall execute a subordination agreement suitable in the mortgagee's opinion, to effectuate the provisions of this paragraph. The Buyer agrees and acknowledges that the construction lender is not guaranteeing or warrantying the completion of the project, nor is the construction lender guaranteeing or warrantying the fitness, merchantability or other quality of any Unit or of the project. Buyer acknowledges and agrees that any periodic inspections of the construction at the project, and any review or approval of any of Developer's requests for disbursement of escrow deposits or any other funds, made by, through, or for the construction lender, are for the construction lender's loan administration purposes only and that neither the construction lender nor any of its representatives, agents, nor contractors assumes any responsibility or liability due the Buyer or any other person by reason of any such actions and that the Buyer may not rely upon any of such actions for any purpose whatsoever, including, but not limited to matters of design, adequacy of workmanship or materials, compliance with law, engineering detail, and conformance to any approved plans and specifications. Further, Buyer acknowledges that the construction lender shall assume no responsibility for the proper application of the security of all or any portion of any deposit made hereunder by Buyer. Buyer agrees that the construction lender shall have no responsibility whatsoever to Buyer for assuring the Developer's compliance with the terms of this agreement or with any escrow agreement between the Developer and the Buyer.

D. CONSTRUCTION WARRANTY. *The Developer warrants that the construction will be substantially in accordance with approved sets of plans and specifications, and substantially in compliance with all applicable building codes. The Developer disclaims any other warranties, either express or implied, except as otherwise provided in this Purchase Agreement.*

13. CLOSING.

   A. The closing will be held at the office of GRAYROBINSON, P.A., 1800 West Hibiscus Boulevard, Suite 138, Melbourne, Florida 32902, or at such other place as the Developer may designate.

   B. The balance of the purchase price, plus the assessment and initial start-up assessment to the Association, will be paid to Developer by a certified or local bank cashier's check.

   C. This sale shall be closed within thirty (30) days after the issuance of the certificate of occupancy for the Unit in the event the certificate of occupancy has not been issued for the Unit, unless otherwise extended by the Developer at its sole discretion. If the certificate of occupancy has been issued for the Unit, then the closing shall be on or before _____, _____.

   D. At least ten (10) days prior to the closing of the sale of the Unit to the Buyer, the Developer shall notify the Buyer of the date, time and place of the closing of this transaction. The Buyer shall inspect the Unit and furnish the Developer with an

AMENDED

MendezL000013

  E. Risk of loss pertaining to the Unit and Condominium covered by this agreement, prior to closing, shall be borne by the Developer or its insurer.

14. <u>DEFAULT</u>. Failure of the Buyer to close title to the Unit pursuant to the provisions of this agreement, make payments within the time provided above, or to comply with the provisions of this agreement within the time provided herein, shall be considered defaults by Buyer hereunder. Refusal or failure of the Buyer to make necessary disclosures, execute necessary instruments, or to effect a mortgage application, shall constitute defaults of this contract. In such event, the parties hereto have considered the matter and have agreed that the amount of liquidated damages suffered by the Developer because of Buyer's default, shall be liquidated and paid in the following manner: The liquidated sum to be due to Developer shall be all sums heretofore paid by Buyer to Developer pursuant to the terms of this agreement, but in no event shall such liquidated sum exceed ten (10%) percent of the purchase price of the Unit, together with the retention of any monies to cover the costs of any items specially ordered by the Buyer for the Unit and any interest earned on the Buyer's deposit. All sums paid by Buyer to Developer in excess of such liquidated sum shall be paid forthwith to the Buyer, together with a statement of the Seller's election to terminate this agreement and describing the Buyer's default hereunder. The Buyer shall be liable for reasonable attorney's fees and costs incurred by the Seller in enforcing its rights under this agreement. In the event of default by the Developer, the Buyer shall be entitled to those remedies provided in law and equity.

15. <u>PERSONS BOUND</u>. This agreement is binding upon the parties hereto, their heirs, legal representatives, successors and assigns, but nothing contained in this sentence is intended to constitute a consent to an assignment by the Buyer of this agreement, but has reference only to those instances in which the Developer may later give consent to a particular assignment in accordance with the provisions of paragraph 10 above. All pronouns and variations thereof shall be construed so as to refer to the masculine, feminine, neuter, singular or plural thereof, as the identity of the person or persons or as the situation may require.

16. <u>CONTRACT NOT RECORDABLE</u>. This agreement shall not be recorded in the office of the Clerk of any Circuit Court of the State of Florida, unless the Buyer obtains prior written consent from the Developer. Any recording of this agreement without said written consent from the Developer shall constitute a breach of this agreement and shall entitle the Developer to terminate this agreement, at the Developer's option.

17. <u>ENFORCEABILITY</u>. If any provision of this agreement is invalid or unenforceable, all the other terms and provisions thereof shall remain in full force and effect.

18. <u>TIME FOR ACCEPTANCE</u>. If this agreement is not executed by both parties, and a copy hereof is delivered to each party, on or before _03-28-_, _05_, this agreement shall be null and void.

19. <u>TIME</u>. Time is of the essence of this contract.

20. <u>AMENDED DATE OF CONTRACT</u>. The date of this contract, for all purposes, shall be the date of execution by the Developer, which is the _22nd_ day of _March_, 20_05_.

MendezL000014

23. AGENT OF DEVELOPER. The person/entity procuring this sale is By The Sea Real Estate Title an authorized representative of the Developer. The sales agent for the Developer will be paid by the Developer at closing and on disbursal of funds to Developer.

24. *DISCLAIMER OF COMMON LAW IMPLIED WARRANTIES*. *The Developer makes no express warranties other than those provided in this Purchase Agreement, and expressly disclaims any common law implied warranties, including but not limited to, any common law implied warranties of fitness, merchantability or habitability, and any other common law implied warranties. Nothing contained in this Paragraph 24 should be construed by the Buyer as a disclaimer of any of the warranties expressly provided for in Florida Statute §718.203(1), which requires that the Developer grant certain warranties to Unit Buyers.*

25. RADON GAS. Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risk to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

26. SPECIAL CLAUSES.

ANY PAYMENT IN EXCESS OF TEN (10%) PERCENT OF THE PURCHASE PRICE MADE TO DEVELOPER PRIOR TO CLOSING PURSUANT TO THIS CONTRACT MAY BE USED FOR CONSTRUCTION PURPOSES BY THE DEVELOPER.

WITNESSES:

_____     _____
                                                          BUYER

**AMENDED**                                                                              MendezL000015

_____     _____
As to BUYER(S)                                              BUYER