UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION L<br><br>JUDGE FALLON<br>MAGISTRATE JUDGE WILKINSON |

**THIS DOCUMENT RELATES TO:** ALL CASES

## ORDER AND REASONS

Before the Court are three motions in limine regarding the June 9 class damages hearing. The Court will address the motions in turn.

**I.    *DAUBERT* LEGAL STANDARD**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Rule 702 is in effect a codification of the United States Supreme Court's opinion in *Daubert v. Merrel Dow Pharmaceuticals*, 509 U.S. 579 (1993). In *Daubert*, the Supreme Court held that trial courts should serve as gatekeepers for expert testimony and should not admit such testimony without first determining that the testimony is both "reliable" and "relevant." *Id*. at 589.

The trial court is the gatekeeper of scientific evidence. *Daubert*, 509 U.S. at 596. It has a special obligation to ensure that any and all expert testimony meets these standards. *Id*. Accordingly, it must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether the reasoning or methodology can be properly applied to the facts in issue. *Id*. at 592-93. In making this assessment, the trial court need not take the expert's word for it. *Joiner*, 522 U.S. at 147. Instead, when expert testimony is

demonstrated to be speculative and lacking in scientific validity, trial courts are encouraged to exclude it. *Moore*, 151 F.3d at 279.

In satisfying its "gatekeeper" duty, the Court will look at the qualifications of the experts, the methodology used in reaching their opinions, and the relevancy of the testimony to the issues involved; the Court will not attempt to determine the accuracy of the conclusion reached by the expert. The validity or correctness of the conclusions is for the fact finder to determine.

Scientific testimony is reliable only if "the reasoning or methodology underlying the testimony is scientifically valid," meaning that such testimony is based on recognized methodology and supported by appropriate validation based on what is known. *Id*. at 592-93. In *Daubert*, the Supreme Court set forth a non-exclusive list of factors to consider in determining the scientific reliability of expert testimony. *Id*. at 593-95. These factors are: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error; (4) whether standards and controls exist and have been maintained with respect to the technique; and (5) the general acceptance of the methodology in the scientific community. *Id*. Whether some or all these factors apply in a particular case depends on the facts, the expert's particular expertise, and the subject of his testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 138 (1999).

In addition to the five factors laid out in *Daubert*, a trial court may consider additional factors in assessing the scientific reliability of expert testimony. *Black v. Food Lion, Inc.*, 171 F.3d 308, 312 (5th Cir. 1999). Some of these factors may include: (1) whether the expert's opinion is based on incomplete or inaccurate dosage or duration data; (2) whether the expert has identified the specific mechanism by which the drug supposedly causes the alleged disease; (3) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded

conclusion; (4) whether the expert has adequately accounted for alternative explanations; and (5) whether the expert proposes to testify about matters growing directly out of research he or she has conducted independent of the litigation. *See, e.g.*, *id*. at 313; *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 278-79 (5th Cir. 1998); *Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1114 (5th Cir. 1991); *Newton v. Roche Labs., Inc.*, 243 F. Supp. 2d 672, 678 (W.D. Tex. 2002).

Scientific testimony is relevant only if the expert's reasoning or methodology can be properly applied to the facts in issue, meaning that there is an appropriate fit between the scientific testimony and the specific facts of the case. *Daubert*, 509 U.S. at 593. Scientific evidence is irrelevant, however, when there is too great an analytical gap between the data and the opinion proffered. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

The party seeking to introduce the expert testimony bears the burden of demonstrating that the testimony is both relevant and reliable. *Moore*, 151 F.3d at 275-76. The focus is not on the result or conclusion, but on the methodology. *Id*. The proponent need not prove that the expert's testimony is correct, but must prove by a preponderance of the evidence that the methodology used by the expert was proper. *Id*.

## II.     PSC'S MOTION TO LIMINE AND STRIKE (REC. DOC. 19062)

The PSC moves to limit the testimony of Defense expert Dr. Marais and to strike his revised declaration. The PSC argues that while it does not challenge Dr. Marais' credentials as a *statistician*, they do challenge Dr. Marais' testimony under FRE 401 and 702. First, the PSC argues that Dr. Marais' expert opinion is largely irrelevant. Second, the PSC argues that Dr. Marais is not qualified to opine on a variety of pertinent issues: the viability of Mr. Inglas's damages estimate, scope of work and cost for Chinese Drywall remediation, and RS Means/bids pricing methodology.

BNBM opposes. (Rec. Doc. 19045). First, it argues that Dr. Marais' testimony is relevant to Mr. Inglis's expert opinion and that Dr. Marais' opinion demonstrates the flaws of the statistical approach of Mr. Inglas. It also argues that Dr. Marais' opinion refutes the proposition that the *Germano* properties are respresentative of the entire class. Finally, BNBM argues that Dr. Marais' opinions are relevant and probative to the determination of the scope of remediation and the cost of remediation.

The Court will grant, in part, and deny, in part, the PSC's motion. First, Dr. Marais' proposed expert opinion is relevant to the opinion of Mr. Inglas. However, BNBM also must show that Dr. Marais' testimony is reliable. Dr. Marais' experience makes him qualified in the field of mathematical and statistical analysis. The Court is persuaded that Dr. Marais' testimony is reliable in the field of mathematical and statistical analysis. Even so, Dr. Marais does not have the experience or training in building or remediating real property that is necessary for qualification as an expert in those fields. There is no basis for him to provide expert testimony regarding methods or scope of remediation or accuracy of square footage cost data. Thus, Dr. Marais' expert testimony must be limited to the field of mathematical and statistical analysis, as is relevant to rebut the testimony of George Inglas, the PSC's expert, regarding the validity *vel non* of Mr. Inglas's estimate of the remediation cost and the manner through which he arrived at that estimate based on a mathematical and statistical analysis.

### III.   BNBM'S MOTION TO EXCLUDE CERTAIN OPINIONS OF GEORGE INGLAS (REC. DOC. 19017)

BNBM moves to exclude certain opinions of George Inglas, the PSC's proposed expert. First, BNBM argues that Mr. Inglas is not an expert in statistics, thus is not qualified to opine on statistical analysis. Second, BNBM argues that Mr. Inglas's proposed testimony regarding national averages should be excluded because, in reality, it is the testimony of a non-testifying

witness because Mr. Inglas is simply repackaging the expert opinions of others, such as Mr. Grossman. BNBM emphasizes that it has not had an opportunity to cross examine Mr. Grossman.

The PSC opposes, arguing that Mr. Inglas's expert opinion is relevant and reliable under *Daubert*. It emphasizes that Mr. Inglas is qualified to give a construction damages estimate and that he has worked over forty years in building engineering performing cost analysis and that he has spent years specifically working with Chinese drywall. Moreover, the PSC argues that Mr. Inglas's specific methodology is reliable and that Mr. Inglas does not extrapolate or use statistical sampling in making his damages estimate. The PSC also argues that the recent decrease in the size of the class damages estimates and Defendants' argument regarding actual estimates do not undermine the reliability of Mr. Inglas's expert opinion. The PSC argues that Mr. Inglas relied on appropriate data to form an accurate expert opinion.

The Court will grant, in part, and deny, in part, BNBM's motion. First, Mr. Inglas's proposed expert opinion is highly relevant to the issue of class damages. Even so, the PSC must also show that the various aspects of Mr. Inglas's opinion are reliable. Mr. Inglas is qualified to give an expert opinion within the scope of his experience as a building engineer. For example, Mr. Inglas may testify based on facts or data that are reasonably relied upon by experts in his field of building engineering. The Court notes that if the facts or data are of a type reasonably relied upon by experts in this particular field, they need not be admissible in evidence in order for the opinion to be admitted. However, Mr. Inglas has little or no training in statistical analysis, thus he is not qualified to testify regarding the validity or accuracy *vel non* of the statistical analysis of Plaintiffs' damages. Therefore, Mr. Inglas's proposed expert testimony is properly limited as explained herein.

## IV. TAISHAN'S MOTION TO EXCLUDE THE TESTIMONY OF GEORGE INGLAS (REC. DOC. 19091)

Taishan argues that the Court should exclude Mr. Inglas's testimony in full. It asserts that Mr. Inglas's opinion lacks any indicia of reliability and relevancy under FRE 702. Specifically, Taishan argues that Mr. Inglas's unreliable methodology has produced an inaccurate, irrelevant, and unreliable opinion regarding class damages. Taishan further re-emphasizes its arguments as to why aggregate damages are impermissible under controlling Fifth Circuit case law. Taishan further argues that Mr. Inglas is unqualified and does have a sufficient basis to form him opinion.

The PSC opposes for the same reasons that it opposes BNBM's motion in limine, (Rec. Doc. 19017).

The Court will deny Taishan's motion in limine. Taishan's sweeping motion goes well beyond the arguments promoted by BNBM's motion in limine. Notably, Taishan's arguments focus on attacking the *results* of Mr. Inglas's opinions and insufficient bases for those opinions rather than flaws in his methodology. Various courts have noted that such attacks are not proper *Daubert* motions but rather go to the issue left for the trier of fact. *Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 803 (N.D. Tex. 2013) ("In performing its gatekeeping role, this court should not focus on conclusions generated by the expert's methodology and should leave disputes between experts over the results to the trier of fact.); *see Nunn v. State Farm Mt. Auto. Ins. Co,* 08-1486, 2010 WL 2540754, at *4 (N.D. Tex. 2010) ("The court is not to focus on the conclusions generated by the expert's methodology." (citing *Watkins v. Telsmith, Inc.,* 121 F.3d 984, 989 (5th Cir. 1997)); *see also Viterbo v. Dow Chemicals Co.,* 826 F.2d 420, 422 (5th Cir. 1987) ("[Q]uestions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [trier of fact's] consideration."). Taishan's other argues are beyond the scope of this motion in limine and will

6

be assessed at the appropriate time, pursuant to the Court's scheduling order, (Rec. Doc. 18921). Therefore, the Court denies Taishan's motion.

## V.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the PSC's motion in limine, (Rec. Doc. 19062), and BNBM's motion in limine, (Rec. Doc. 19017), are **GRANTED IN PART AND DENIED IN PART**, as explained herein.

**IT IS FURTHER ORDERED** that Taishan's motion in limine, (Rec. Doc. 19091), is **DENIED**.

New Orleans, Louisiana, this 5th day of June, 2015.

_____
UNITED STATES DISTRICT JUDGE