1                     UNITED STATES DISTRICT COURT

2                     EASTERN DISTRICT OF LOUISIANA

3

4

5    IN RE:   CHINESE-MANUFACTURED   *        Docket 09-MD-2047
              DRYWALL PRODUCTS        *
6             LIABILITY LITIGATION    *        Section L
                                      *
7                                     *        New Orleans, Louisiana
                                      *
8    Relates to All Cases            *        May 20, 2015
                                      *
9    * * * * * * * * * * * * * * * *

10

11                   ORAL ARGUMENT BEFORE THE
                     HONORABLE ELDON E. FALLON
12                   UNITED STATES DISTRICT JUDGE

13
     Appearances:
14

15   For the PSC:              Levin Fishbein Sedran & Berman
                               BY:  ARNOLD LEVIN, ESQ.
16                             510 Walnut Street, Suite 500
                               Philadelphia, Pennsylvania 19106
17

18   For the PSC:              Seeger Weiss, LLP
                               BY:  CHRISTOPHER A. SEEGER, ESQ.
19                             77 Water Street, 26th Floor
                               New York, New York 10005
20

21   For the PSC:              Gainsburgh Benjamin David
                                 Meunier & Warshauer, LLC
22                             BY:  GERALD E. WARSHAUER, ESQ.
                               1100 Poydras Street, Suite 2800
23                             New Orleans, Louisiana 70163

24

25

1    <u>Appearances</u>:

2

3    For the Taishan            Alston & Bird, LLP
     Defendants:               BY:  MICHAEL P. KENNY, ESQ.
                                    CHRISTINA HULL EIKHOFF, ESQ.
4                              1201 West Peachtree Street
                               Atlanta, Georgia 30309

5

6    For the BNBM               Dentons US, LLP
     Defendants:               BY:  RICHARD L. FENTON, ESQ.
7                              233 South Wacker Drive, Suite 7800
                               Chicago, Illinois 60606

8

9    For the Knauf             Baker Donelson Bearman
     Defendants:                 Caldwell & Berkowitz, PC
10                             BY:  KERRY J. MILLER, ESQ.
                               201 St. Charles Avenue, Suite 3600
11                             New Orleans, Louisiana 70170

12

     Official Court Reporter:   Toni Doyle Tusa, CCR, FCRR
13                             500 Poydras Street, B-275
                               New Orleans, Louisiana 70130
14                             (504) 589-7778

15

16

17   Proceedings recorded by mechanical stenography using
     computer-aided transcription software.
18

19

20

21

22

23

24

25

## PROCEEDINGS

### (May 20, 2015)

THE COURT:  Okay.  I'll hear the motion at this point.

MR. KENNY:  May it please the Court.  Good morning, Your Honor.  Michael Kenny on behalf of Taishan.

Based on some game-changing circumstances last week that were beyond Taishan's control, we have filed two motions this past Monday.  One is a motion to modify the scheduling order for the June 9 damages hearing and one is a motion to compel.  I will address the motion to modify the scheduling order and Ms. Eikhoff will address the other.

What happened, Your Honor, is last week, and specifically last Friday, the plaintiffs submitted a reply brief and yet another new declaration from their expert witness, Mr. Inglis.  The reason we characterized those events as game-changing is Your Honor will recall -- and I want to take you back just a little bit because I think it's important to set the table.

Last fall the plaintiffs filed a motion for class damages and they attached an affidavit of Robert Wright.  In that motion they sought on behalf of -- I'm going to estimate, but on behalf of about 3,800 property owners they were seeking three distinct components of damages for class treatment:  remediated property, alternative living expenses,

1     and loss of use and enjoyment.

2          They also asked Your Honor to send out a

3     supplemental notice in which the notice gave great detail as to

4     the methodology of Mr. Wright and all three components of the

5     damages and actually had precise dollar figures on all three

6     components.  It added up to more than $1.2 billion.

7          Those people who received notice were given an

8     opportunity to opt out.  That period has run.  On February 12,

9     Your Honor had a hearing in which Your Honor was going to hear

10    at that time presumably an unopposed motion for classwide

11    damages and we first entered an appearance.

12         Since that time we have tried -- on behalf of

13    Taishan, we have had basically one animating purpose.  Given

14    our position in the case, we have said all along and it's been

15    our strategy who do we owe and what reasonable amount do we

16    owe.

17         We came in, as Your Honor has already pointed

18    out, and we addressed the contempt issues.  We paid $40,000 to

19    the Court.  We paid $15,000 to the plaintiffs' counsel.  We

20    have been participating in the litigation.  We paid, with all

21    interest, the seven *Germano* plaintiffs, and now we have been

22    participating.  Our whole goal here is to figure out who do we

23    owe, which of these members do we actually owe under the law,

24    and what's the reasonable amount we owe them.  We need to

25    figure this out all in comporting with, of course,

1   Fifth Circuit controlling law.

2         We filed opposition papers to the classwide

3   motion for damages in the aggregate of more than $1.2 billion

4   with its three components.  Last week we received notice that

5   the plaintiffs were going to make a dramatic change to their

6   motion.  Now, they have not amended their motion, but the

7   dramatic change is this.

8         First, with regard to who do we owe, we started

9   out at approximately 3,800 people.  Now they say there are

10   approximately 1,000 people that they are stripping out.  So

11   they do not intend on June 9 to present evidence for more than

12   1,000 people, a third of the class.  We think, Your Honor, that

13   raises serious due process issues and notice issues.  Those

14   people have not been told that their claim for damages is not

15   going to be presented for class treatment on June 9.

16       **THE COURT:**  Is that your issue or their issue?

17       **MR. KENNY:**  It's our issue, Your Honor, because

18   ultimately this raises a serious one-way intervention problem.

19   To get this case resolved, we need to know who is actually in

20   this class, and nobody has thrown them out of the class.

21   Your Honor hasn't.  The one-way intervention problems that

22   Your Honor noted back in 2006 in your *Turner v. Murphy Oil*

23   decision -- where you actually said, "We are going to do

24   supplemental notice because of the changed circumstance."  But

25   we have 1,000 people now who are in limbo.

1  **THE COURT:**  So you only have 3,700 as opposed to

2  3,800.

3  **MR. KENNY:**  According to Mr. Inglis' affidavit, there

4  are 2,888.  We will get to whether that is a precise figure and

5  it's a reliable figure and that really does identify who

6  actually is owed money.

7  The second category:  Alternative Living

8  Expenses.  In the supplemental notice, they presented to the

9  3,800 people that they were going to seek classwide damages of

10  more than $95 million.  They have pulled that down.  They told

11  in the supplemental notice, its opt-out provision, all the

12  class members that they were going to present loss of use and

13  enjoyment damages of about $360 million.  They are pulling that

14  out.

15  Based on our opposition paper, they are

16  conceding, in other words, Your Honor, that with regard to

17  three categories of damages now they say they are owed, two of

18  them they are conceding must be adjudicated on an

19  individualized basis.  Then with regard to the 3,800 people,

20  the 1,000 that they have stripped out, they are essentially

21  conceding that those damages need to be adjudicated on an

22  individualized basis.

23  **THE COURT:**  Well, doesn't that make your job easier,

24  though?  I'm trying to figure out what the problem is.

25  **MR. KENNY:**  It makes it extremely more complicated

Your Honor.

**THE COURT:**  I may not agree that those are class deals because it's specific.

**MR. KENNY:**  Your Honor has put your finger precisely on the problem.  We think the better course here -- this is the reason we have asked to modify what's going to happen on June 9.  We think that what ought to happen June 9 is let's address the legal issues about the propriety of proceeding on a classwide basis even for the remediated damages.

We think there needs to be a little bit of a timeout, though.  We think new notice has to go out to figure out -- and Your Honor needs to wrestle with the issue of whether, in fact, you are going to accept this new gambit as to whether 1,000 people are out and you are going to pull down damages even though Your Honor approved a notice that said just the opposite.

We think, at a minimum, we need to have a time-out to figure out that issue and how best to proceed because, from Taishan's point of view, we share the Court's interest, we share the plaintiffs' interest in that we want to get this done as fast as we can but within the parameters of the law and due process.  We think the due process case has gone off the rails.

**THE COURT:**  Okay.

**MR. KENNY:**  Now, the second issue for postponing the

1 evidentiary hearing is Mr. Inglis now has a declaration that he

2 submitted on Friday that raises a couple of points where we

3 just need more time to be able to properly and adequately

4 defend what, in fact, he is now apparently saying with respect

5 to a couple of matters.

6          One is he is relying on a spreadsheet to

7 determine ultimately -- the new number on remediated damages

8 dropped from about $785 million to $670 million for more than

9 2,888 people.  He is relying on a spreadsheet that has summary

10 data.  The spreadsheet was not created based on his direction.

11 He just got it.  He got it from BrownGreer.  That spreadsheet

12 supposedly -- we just don't know -- was created as a result of

13 pulling materials from, now we know, about 64,000 documents

14 that have the underlying data.  That would be the subject of

15 the motion Ms. Eikhoff will address.

16          We need to get those documents so that we can

17 make an assessment as to whether the data on the summary sheet

18 is accurate.  Right now we have no way of knowing and there's

19 no way of testing under the current state of the record, but

20 there is a way to test because the documents are there.  They

21 are readily available.  As Ms. Eikhoff will address, they can

22 be given to us right now.  There's no practical impediment for

23 getting us those documents, but we need to get those documents.

24          Our experts are going to have to look at those

25 documents.  We just need time for them -- our experts may have

supplemental reports that they are going to do to challenge this number.  This is the fundamental number that they want to go forward with on June 9.

**THE COURT:**  By not doing anything, you are winning.  By not doing anything, they are claiming less.  So you want to check it out so you can pay more?

**MR. KENNY:**  No, Your Honor.

**THE COURT:**  I'm trying to figure that one out.

**MR. KENNY:**  If, in fact -- and this would raise problems.  If, in fact, they were pulling down -- they are pulling down about $655 million for class presentation, but they are vaguely reserving their rights to go after all those dollars and apparently more in subsequent proceedings which raises, just as an aside, fundamental 23(b)(3) superiority issues whether this is the way to proceed.  They are saying they are not giving it up, so we are just going to be having a series -- a series -- of individualized inquiries, as it turns out, for everybody -- for everybody -- on some issues.

Now, there's a second issue with regard to Mr. Inglis.  Out of those 2,800 people, he says, "Well, there are 131 properties where I didn't have" -- even under their methodology, "I didn't have verified property data information."  So he does a couple of averaging techniques -- he is an engineer, Your Honor.  He is not a statistician.  He does a couple of averaging techniques and he says, "Now I have

an estimate for those properties."

A lawyer for the plaintiffs apparently called some guy named Michael Grossman in Boston and said, "Can you take a look at this and tell me what you think?"  Grossman sends back a two-page -- excuse me, a two-paragraph letter that essentially says, "I looked at what he did.  It looks good to me."  Inglis says, "All right.  So that's a reasonable estimate."

I mean, we have an engineer wandering into an area beyond his expertise, statistics, supposedly gets a statistician -- who is not on the witness list.  Nobody knows who he is.  Inglis yesterday in his deposition said, "I don't know who he is.  I never talked to him," and he says, "Well, I bless this analysis."

Then we have the whole issue with the 2,888 people.  This thing is trundling towards a June 9 hearing when we know from the data that we have and have the strong reason to believe that there is a substantial group, a subset within that 2,800, where their property has already been remediated. Inglis doesn't try to figure out whether any of those properties have been remediated, in which case you can look at the actual cost, which is the best evidence of what we would owe them.  Instead, he does an estimate for those.

Well, we need to figure out, out of those 2,800, how many of these properties have actually been remediated.  We

1   think that information is contained in the 63,000 documents

2   that are ready to be burned to a disc and produced.

3          For those reasons, Your Honor, we would ask that

4   the Court modify the schedule.  We can go forward on June 9 and

5   argue whether, in fact, the whole rubric of classwide damages

6   now for the remediated component of the damages is proper under

7   Fifth Circuit law.  In the meantime, we can go ahead and we can

8   get this information.  If, in fact, Your Honor, decides after

9   the June 9 hearing that it is, then we can have an evidentiary

10  hearing after we have had an opportunity to fully prepare to

11  see what the actual numbers should be.

12          **THE COURT:**  The problem to some extent, when I'm

13  listening to you, I would be a lot more receptive if your

14  client didn't quit.  See, 10 or 12 months ago, when the

15  Fifth Circuit ruled against them, they said, "We quit, and we

16  fire our lawyers."  They fired their lawyers and they quit.

17          I kept their lawyers in because I wanted them to

18  have every opportunity to rethink it.  I wanted them to

19  participate in it because I didn't want just emotion to take

20  care of it.  Notwithstanding the fact that they got all of the

21  information as it was unfolding, they just thumbed their nose

22  at the Court.  Now they come in and they say, "Well, we have

23  reconsidered after 10 or 11 months and now we want a

24  continuance."

25          I hear you, and you are doing a wonderful job of

presenting it, but let me hear the other side.

MR. KENNY:  Your Honor, can I just make one comment about that?

THE COURT:  Sure.

MR. KENNY:  Bernard Taylor, the first time we appeared before Your Honor, he stood before Your Honor essentially with hat in hand.  We understand our position, but that doesn't --

THE COURT:  You're not to blame at all and Bernard is not to blame.  You just got into the litigation.  In fact, you sent some young fellow to get on the last plane to New Orleans and he ran in and made an appearance.

MR. KENNY:  Well, we told him, Your Honor, "It's either the judge or our wrath you have to incur, so you better get in there."  Look, there's no denying it.  We wish we weren't in the position we are in.  But having said that, the rules apply.

THE COURT:  No, I understand.  My grandma said, "You have to dance with the one who brung you."

MR. FENTON:  Your Honor, may I make some additional comments on behalf of BNBM?  We have joined in the motion.

THE COURT:  Okay.  I'll hear one side first and then I will hear the other side.

MR. FENTON:  I'll be brief, your Honor.  Rick Fenton on behalf of the BNBM entities.

1    Your Honor, first of all, I very much agree with
2  Mr. Kenny's remarks.  We have got some additional problems with
3  respect to the notice.  The class that this Court certified
4  last year was specifically for remediated properties.  The
5  supplemental notice that went out in December removed the word
6  *remediated*.  So included in this mix of class members now that
7  received the supplemental notice are a number of persons who
8  were not part of the certified class but who also have
9  unremediated properties.
10    We have been dealing with a moving target, as
11  Mr. Kenny has indicated, on damages.  Part of the reason for
12  that, Your Honor, is that there are some fundamental problems
13  with the analysis that has been done.
14    As Mr. Kenny mentioned, Mr. Inglis, who is the
15  plaintiffs' expert, is not a statistician.  He is a
16  construction expert.  He freely admitted in his deposition
17  yesterday that there was absolutely -- other than this letter
18  that Mr. Kenny mentioned that I will get to in a minute, that
19  there was absolutely no statistical analysis done to determine
20  whether his construction factor of $86 per square foot was
21  statistically sound.
22    He simply assumed that this small group of
23  plaintiffs in Northeast Virginia, within 60 miles of one
24  another, was somehow a representative sample of a group that
25  spans I believe it's 18 states and many thousands of claimants.

09:43   1   So there's some fundamental problems to begin with, and that's

09:43   2   part of the reason that we are seeing the damages shift.

09:43   3            We are not trying to delay, Your Honor, but we

09:43   4   are trying to avoid error.  We don't want to have to go through

09:43   5   this again.  It is tremendously expensive for all the parties,

09:43   6   it has taken up a tremendous amount of the Court's time, and

09:43   7   there are some threshold fundamental issues that need to be

09:43   8   addressed.  Besides the problems with notice -- and I think

09:43   9   renotice is required in view of the changes that have been made

09:43  10   to the plaintiffs' damage theory.

09:44  11            We articulated and Taishan articulated in our

09:44  12   opposition some threshold legal issues.  In addition to the

09:44  13   lack of any statistical rigor in the expert reports, there is

09:44  14   Fifth Circuit authority that is very clear on the use of

09:44  15   aggregate damage awards in this kind of setting.  There is

09:44  16   Fifth Circuit authority and a lot of authority out of this

09:44  17   Court -- much of it was created during Hurricane Katrina --

09:44  18   where the courts have held, look, if actual remediation has

09:44  19   been done, you have to look at the actual costs.  At that

09:44  20   point, estimates have no place.  Now, approximately

09:44  21   three-quarters of the class that remains have remediation that

09:44  22   has already been done to their properties.

09:44  23            THE COURT:  But those cases really involve insurance

09:44  24   claims against their own insurer and the policy provisions say

09:45  25   that if you are remediated, this is what you get.  That's where

1  those cases come down, primarily.  It's not against the

2  tortfeasor.  It's against the insurance company.

3       **MR. FENTON:**  I believe, Your Honor, the cases are

4  broader than that.  The Katrina cases, you are right, those

5  were insurance cases, but there is Fifth Circuit authority and

6  the principle is the same.  If you have actual costs, those are

7  your damages.  You don't rely on an estimate when there are

8  actual numbers available.

9            Now, these class members here are active

10  litigants.  These are people who are plaintiffs in individual

11  cases.  They are subject to discovery.  The plaintiffs never

12  asked them, "What are your actual costs?  What were your actual

13  costs of remediation?"  Mr. Inglis never asked them.

14       **THE COURT:**  The problem with actual cost of

15  remediation when you are looking at a tort feasor is that the

16  person loses their house.  They don't have any other place to

17  live, so they have to get back in their house.  They just do

18  everything they can to get back in their house as quickly as

19  they can.  They don't even put insulation in it.  They take the

20  drywall out and they may slap something up against the wall

21  just to get in the house.  That's their actual damages.  Now,

22  the tortfeasor created that situation.  To then stick them with

23  that actual damage, that's just --

24       **MR. FENTON:**  Well, Your Honor, part of the problem is

25  that if you look at Mr. Inglis' spreadsheets, in many cases, on

an individual basis, he is very low.  The actual costs of remediation were actually higher.  It goes both ways.

My point, though, Judge, is there are a lot of threshold legal issues here that I think really should be sorted out before we proceed to take proof.  We are not saying June 9 should be deferred forever.  What we are saying is on June 9 we should take the time to deal with the threshold legal issues, make sure that the notice to the class is sufficient, supplement the notice if need be, and then we can move to an evidentiary stage if the Court determines that that's appropriate.  There will be plenty to do on June 9.  Thank you, Your Honor.

**THE COURT:**  Thank you very much.

**MR. LEVIN:**  Arnold Levin for the Plaintiffs' Steering Committee.  Your Honor, I will be very brief because the colloquy between the Court and counsel answered a lot of the questions that I would have responded to.

I was born but not yesterday.  It sounds to me like it was a motion to decertify the class by a defaulted party, who can't do that.  I haven't seen this argument in 30 years where the defendant comes in and says the class is being denied due process.  The last I saw it was in two cases that we cited to the Court, the *Sley* case and *Umbriac* by Judge Higginbotham in the district court, in the Eastern District of Pennsylvania, and then the Third Circuit, chief

09:48 1    judge in the Third Circuit, where he said, "You are not fooling
09:48 2    us.  You are not protecting the class.  You really want no
09:48 3    class."  And that's exactly what they want is no class, and
09:48 4    they have been defaulted.
09:48 5                As far as how we structured the class
09:48 6    proceedings, the class definition is for remediated homes or
09:48 7    homes to be remediated, and the damages are the cost of
09:48 8    remediation not the cost of the Band-Aids that these poor
09:48 9    people had to do to get into their homes.  They don't benefit
09:48 10   from that.  They are estopped from benefiting from that.
09:48 11               They caused that to happen by ignoring 4,000
09:48 12   homeowners in Louisiana, Virginia, Florida, and some other
09:49 13   states sprinkled in.  They don't gain the benefits of their
09:49 14   outrageous conduct.  They had every opportunity to do what the
09:49 15   Knauf defendants did.  They chose not to.  They held back.
09:49 16   They are still holding back.
09:49 17               Now, we looked at the class and we haven't
09:49 18   denied any member that has sued on the *Amorin* complaint or the
09:49 19   *Gross* complaint or any of the complaints with due process.  In
09:49 20   fact, we gave them due process.
09:49 21               Those damages that clearly could be presented on
09:49 22   a class basis are the cost of remediation.  That's arithmetic.
09:49 23   We moved other damages on an individual basis for another day
09:49 24   on another phase of the trial, and we said a final judgment
09:50 25   would not be entered until there was complete relief for

09:50  1  everybody.  We think that's a proper structure and we think

09:50  2  that is due process.

09:50  3              As far as renoticing the class, again this is a

09:50  4  red herring.  This class has been noticed twice.  One opt-out.

09:50  5  Only one opt-out.  Now they want to give the others a chance to

09:50  6  opt out.  Those that opted out have individual claims and they

09:50  7  are already opted out because they are going to be handled for

09:50  8  foreclosures caused by the defendant, bankruptcies that they

09:50  9  withstood caused by the defendant, alternative living expenses

09:50  10  that they are due caused by the defendant.  Every item of

09:50  11  damages is preserved.  It's neatly preserved.

09:50  12              Well, I guess I know why they are doing it.

09:51  13  They have delayed for five, six years and they want to continue

09:51  14  to delay.

09:51  15              Your Honor, we want to hold that June 9 hearing.

09:51  16  We are prepared to go forward on that June 9 hearing.  As to

09:51  17  the comments with regard to our expert, Mr. Inglis,

09:51  18  Chris Seeger will address the Court.

09:51  19         **MR. SEEGER:**  Good morning, Your Honor.  Chris Seeger

09:51  20  for plaintiffs.  I will keep my comments brief.

09:51  21              The defendants had an opportunity to depose

09:51  22  Mr. Inglis, which they took yesterday, and deposed him over

09:51  23  seven hours.  All of the questions that they say they are

09:51  24  confused on, or this change or that change, they questioned him

09:51  25  about.  They questioned him about how the numbers got crunched,

1    what houses came out.

2            They questioned him about BrownGreer's

3    spreadsheet, which Mr. Inglis made very clear to them that he

4    relied upon the information provided to him by BrownGreer.

5    Now, BrownGreer is a claim administrator not only appointed by

6    this Court but courts throughout the country to do exactly what

7    they are doing in this case, whether it's a personal injury

8    case or a property damage case.  They are collecting data and

9    they are making that data available in this case through a

10   summary format.

11           I have never heard of a situation where a

12   Court-appointed claim administrator has been asked to produce

13   the kind of information they are asking for here.  They are

14   trusted to do this.  They are the gold standard in claim

15   administration.  As I said, nobody has ever questioned the

16   reliability of the information and the data they have provided.

17           Mr. Inglis' approach -- and I'm going to keep

18   this really brief -- is simple.  It's based on some simple

19   math.  The scope of work has been established by this Court in

20   your findings of fact in both *Germano* and *Hernandez*.  That's

21   based upon the hard work of a lot of scientists that the Court

22   has heard from, scientists from Sandia.  One person and one

23   firm that's been in the middle of this since the very

24   beginning, since 2009, is Berman & Wright and George Inglis.

25   They have been in the middle of this establishing the scope,

09:53  1    studying the science.

09:53  2             He testified very plain.  The scope is

09:53  3    established.  It's set forth.  It's ripping down the houses to

09:53  4    the studs.  All he simply did is applied cost factors from

09:53  5    RSMeans.  He adjusted the $86 a foot, which was in Your Honor's

09:53  6    findings in *Germano*, to 2015 and then further refined the

09:53  7    number to benefit the defendants, further refined the number to

09:53  8    adjust for cost factors based on localities.  He used ZIP codes

09:53  9    to do that.

09:53  10            It's straight math.  So if there are 2,800

09:53  11   homes, you apply the straight math to the 2,800.  If they want

09:53  12   to put the other 1,000 homes back in, we can do that and apply

09:53  13   the straight math to the 3,800.  It's very straightforward.

09:53  14            On the issue on the statistician, that really is

09:53  15   a red herring because they know, because they have read the

09:53  16   deposition, that Mr. Inglis made something very clear.  He is

09:53  17   not a statistician.  He did not rely upon statistics.

09:54  18            They raised some issues about representative

09:54  19   sampling.  We didn't ask Mr. Inglis to do it.  The lawyers did

09:54  20   it.  We asked a statistician to take a look at it, double-check

09:54  21   our work, make sure we got it right.  He came back and he had

09:54  22   said, yeah, we absolutely got it right.

09:54  23            Mr. Inglis didn't know who the statistician was

09:54  24   because that wasn't part of what he was asked to do.  He didn't

09:54  25   care.  It doesn't matter.  It's just math.  There's no

09:54   1   extrapolating.  There's no statistical work being done by

09:54   2   Mr. Inglis.  So, again, a red herring and inappropriate to

09:54   3   really cite to that testimony knowing what Mr. Inglis said on

09:54   4   it.

09:54   5          Not knowing what properties are remediated again

09:54   6   is another red herring.  Again, it's math.  Whatever the number

09:54   7   is, it is.  If a home has been remediated, it doesn't mean they

09:54   8   are still not owed the money for remediating just because a

09:54   9   homeowner did it on their own.  So I'm not really clear on what

09:54  10   all these points are, but I think Mr. Levin summed it up.

09:54  11          I think, Your Honor, it would really serve the

09:54  12   Court well to get these witnesses into your Court on June 9,

09:54  13   hear what they have to say, both Mr. Inglis and Mr. Woody, who

09:55  14   is going to testify about this information, and let them come

09:55  15   in with their experts.  Jerry and I are flying to Atlanta today

09:55  16   to talk to their experts.  I think that would serve the Court

09:55  17   well just to cut down on the delay.

09:55  18          **THE COURT:**  Okay.  Any response?

09:55  19          **MR. KENNY:**  Just real briefly, Your Honor.  The issue

09:55  20   of the constant punishment should just end.  We are in the case

09:55  21   and we have the right to litigate and defend in accordance with

09:55  22   the law.

09:55  23          With regard to the notice issue, I just repeat,

09:55  24   the way the case is proceeding now is fundamentally different

09:55  25   than what the class was told in your Court-approved notice that

1    went out, and they have not been informed that the game is

2    completely changing.

3              THE COURT:  Any response?

4              MR. FENTON:  Yes, Your Honor.  I have to take issue

5    with counsel's remarks and I stand exactly by what I said.

6    Mr. Woody said that he applied no statistical analysis.  The

7    Grossman letter relates to one aspect of his analysis and that

8    is how one extrapolates unknown square footage.  Mr. Grossman

9    did not bless the representative sample.  He didn't address it

10   at all even though our experts had gone into great detail about

11   why the sample is not representative.  So Mr. Grossman's

12   silence on that issue, I think, speaks volumes.  Without

13   statistical rigor, the Fifth Circuit has said you can't have

14   classwide damages, and that's why I think we should address

15   these threshold issues on June 9.  Thank you, Your Honor.

16             THE COURT:  Thank you very much.  Let's continue with

17   the discovery and I'll write something on this.  Let's go

18   forward with the discovery.

19             The next motion is the motion to compel.

20             MS. EIKHOFF:  Yes, Your Honor.  Christina Eikhoff on

21   behalf of Taishan.

22             The subject of the motion to compel is a set of

23   documents that exists in a place where we know they exist.

24   They are being held by BrownGreer, and up until a few days ago

25   we had representations that they were being burned to a disc

09:57  1  ready to produce.

09:57  2          These documents identify who the class members

09:57  3  are in detail, the type and size of property that's at issue,

09:57  4  whether they have been already remediated, and the extent to

09:57  5  which the properties were remediated, is it a Band-Aid job that

09:57  6  the Court referenced earlier or was it a more thorough

09:57  7  remediation whose drywall was identified as being in the

09:57  8  properties, and whether or not these claimants have been made

09:57  9  whole.

09:57  10          **THE COURT:**  As I understand it, we started when you

09:58  11  asked for all of the documents and data and now, at my request,

09:58  12  you have trimmed it down to the documents, data, information

09:58  13  BrownGreer reviewed, and that's what you want the information

09:58  14  to be.

09:58  15          **MS. EIKHOFF:**  Your Honor, we want the documents that

09:58  16  are the backup to the summary spreadsheet that is the

09:58  17  cornerstone of the plaintiffs' motion for damages and of their

09:58  18  expert's report.

09:58  19          **THE COURT:**  I understand.

09:58  20          What's the response?

09:58  21          **MR. MEUNIER:**  May it please the Court.  Jerry Meunier

09:58  22  for the plaintiffs.

09:58  23          Your Honor, I'm not sure I understood what

09:58  24  Ms. Eikhoff just said because they have every plaintiff profile

09:58  25  form, which identifies every plaintiff class member, which

09:58   1   gives the property address, which gives the square footage

09:58   2   where it's available.  Mr. Woody is going to be deposed next

09:58   3   Tuesday and will explain under oath in detail to the

09:59   4   defendants, who have noticed his deposition, exactly what he

09:59   5   did when he had to come up with the summary of the data.

09:59   6               So I think you have seen in Knauf's opposition

09:59   7   to this that for them to request the entirety of the material

09:59   8   is to necessarily have BrownGreer produce that which is

09:59   9   proprietary, which has nothing to do with the Taishan class

09:59  10   damages trial.  So I think they should go forward with

09:59  11   Mr. Woody's deposition next Tuesday, ask him how he came up

09:59  12   with the data he provided, and they have all of the fact

09:59  13   sheets.

09:59  14           THE COURT:  I understand that.  Before she begins the

09:59  15   deposition, she wants the material that he relied upon.  It

09:59  16   seems to me that she is entitled to that; not all the documents

09:59  17   that you have looked at since you have been in this business,

09:59  18   but the documents that you looked at.  If you just looked at

09:59  19   the sheets, that's what the documents are.

09:59  20               I don't want them to take the deposition and

10:00  21   then all of a sudden Mr. Woody say, "Well, I also relied on

10:00  22   this document," which she doesn't see.  So anything that he

10:00  23   relied on to give the information that he is going to give they

10:00  24   ought to have.

10:00  25           MR. MEUNIER:  Well, that's fine, Your Honor.  I have

| | |
|---|---|
| 10:00 | 1 |
| 10:00 | 2 |
| 10:00 | 3 |
| 10:00 | 4 |
| 10:00 | 5 |

1    talked to Mr. Woody about it.  He can address it.  It is going

2    to take time for him to pour through the material, which is the

3    64,000 documents you keep hearing about, and identify exactly

4    what fits that precise characterization.  I suppose it will

5    take time and maybe --

6         THE COURT:  Well, let's look at it, Mr. Woody.  You

7    don't have a dog in this fight, so I don't need your comments.

8    The material that you have looked at to base your opinion on,

9    that's what they want.

10         MR. MEUNIER:  Judge, in addition, that's not counting

11    what we have already given them, which is all the fact sheets.

12         THE COURT:  Right.  If they have it, don't give it

13    again.  We have to deal with the costs in this case.  If you

14    have given them the fact sheets and that's all you relied on,

15    that's it.  If you relied on something else, give it to them.

16         MR. WOODY:  I understand.

17         MR. MEUNIER:  Thank you, Judge.

18         MR. MILLER:  Your Honor, if I may for a second?

19         THE COURT:  Yes.

20         MR. MILLER:  Kerry Miller on behalf of Knauf.  We put

21    in an opposition to this yesterday.  I just want to reserve my

22    rights on that, Your Honor.

23              It appears that some of the 64,000 documents

24    that are the issue include inspection reports and/or cost

25    estimates prepared by consultants retained by Knauf and paid

for by Knauf, particularly Moss.  Some of the 64,000 documents include the repair scope analysis that Moss prepares.  Knauf pays Moss $1.45 a square foot to do those documents.  Those documents are then signed by the homeowner, and then they control the scope of work and the cost of work and that kind of thing.  So in these cases these would either be mixed homes or these would be homes where it was believed it was Knauf board only then to find out it was Taishan board.  Of course, Taishan could use these documents for litigation purposes.

The other sets of documents, Your Honor, would be inspection reports done by the Court-approved inspectors as part of the Knauf remediation program.  I think in the schedule of documents that Jake Woody submitted, it looked like there are about 300 of those in the 64,000 documents; not 300 documents but 300 reports.  Knauf pays on average about $800 for those reports.

So I just want to make sure that -- I know things are truncated.  It's an accelerated timeline.  It's easier sometimes to do a document dump then to sift through them on the front end, but Knauf does have a claim that those materials are proprietary for previous reasons stated and certainly would seek reimbursement of those funds at the appropriate time from Taishan or through the Court.

THE COURT:  That's another issue, costs, and I'm sensitive to that.  You ought to see what he gives.  If any of

1   those are material that you incurred costs in, I will take that

2   up at another time.

3          **MR. MILLER:**  Thank you, Judge.

4          **MS. EIKHOFF:**  Your Honor, if I just may respond to

5   that, to Mr. Miller's points about the cost of the inspections.

6   For all of the reasons we have already articulated, the

7   inspection reports that identify whose drywall was in the homes

8   that are now the subject of these damages claimed is very

9   relevant and very --

10         **THE COURT:**  No, I agree with that.  I think you ought

11  to have it.  It's a question later on of whether or not you

12  ought to pay for it or not pay for it.  I won't decide that

13  now.  I don't know what we are talking about.  It's just too

14  general to decide now.  If it's one dollar, that's one thing.

15  If it's $100,000, that may be another thing.  I will give you

16  an opportunity to respond to that.  I'm not going to

17  automatically say you have to pay costs, and I'm not going to

18  automatically say you don't have to pay costs.  Let's get the

19  documents first and then I will hear about that situation.

20         **MS. EIKHOFF:**  Yes, Your Honor.  Now, the deposition

21  of Mr. Woody is scheduled for Tuesday.  So in terms of us

22  getting these documents that we have been asking for --

23         **THE COURT:**  Well, you ought to get them as quickly as

24  you can.

25                 Jake, give them the documents as quickly as you

| | | |
|---|---|---|
| 10:04 | 1 | can. |
| 10:04 | 2 | **MR. WOODY:**  Yes, sir. |
| 10:04 | 3 | **MS. EIKHOFF:**  Thank you. |
| 10:04 | 4 | **THE COURT:**  I have another motion, but the lawyer has |
| 10:04 | 5 | to be contacted on the phone.  This has to do with another |
| 10:04 | 6 | issue we haven't talked about yet.  It has to do with the |
| 10:05 | 7 | motion to enforce the Banner settlement.  I'll take a |
| 10:05 | 8 | five-minute break. |
| 10:05 | 9 | **MR. HERMAN:**  May we approach very quickly with |
| 10:05 | 10 | Mr. Miller regarding a Knauf/PSC problem? |
| 10:05 | 11 | **THE COURT:**  Yes.  Thank you very much. |
| 10:05 | 12 | **THE DEPUTY CLERK:**  All rise. |
| 10:05 | 13 | * * * |

### CERTIFICATE

I, Toni Doyle Tusa, CCR, FCRR, Official Court
Reporter for the United States District Court, Eastern District
of Louisiana, certify that the foregoing is a true and correct
transcript, to the best of my ability and understanding, from
the record of proceedings in the above-entitled matter.


                              *s/ Toni Doyle Tusa*
                              Toni Doyle Tusa, CCR, FCRR
                              Official Court Reporter

**$**

$1.2 [2]  4/6 5/3
$1.2 billion [2]  4/6 5/3
$1.45 [1]  26/3
$100,000 [1]  27/15
$15,000 [1]  4/19
$360 [1]  6/13
$360 million [1]  6/13
$40,000 [1]  4/18
$655 [1]  9/11
$655 million [1]  9/11
$670 [1]  8/8
$785 [1]  8/8
$800 [1]  26/15
$86 [2]  13/20 20/5
$95 [1]  6/10
$95 million [1]  6/10

**0**

09-MD-2047 [1]  1/5

**1**

1,000 [6]  5/10 5/12 5/25 6/20 7/14 20/12
10 [2]  11/14 11/23
10005 [1]  1/19
11 [1]  11/23
1100 [1]  1/22
12 [1]  4/8
12 months [1]  11/14
1201 [1]  2/4
131 [1]  9/21
18 [1]  13/25
19106 [1]  1/16

**2**

2,800 [5]  9/20 10/19 10/24 20/10 20/11
2,888 [3]  6/4 8/9 10/15
20 [2]  1/8 3/2
2006 [1]  5/22
2009 [1]  19/24
201 [1]  2/10
2015 [3]  1/8 3/2 20/6
2047 [1]  1/5
23 [1]  9/14
233 [1]  2/7
26th [1]  1/19
275 [1]  2/13
2800 [1]  1/22

**3**

3,700 [1]  6/1
3,800 [6]  3/23 5/9 6/2 6/9 6/19 20/13
30 years [1]  16/21
300 [3]  26/14 26/14 26/15
30309 [1]  2/4
3600 [1]  2/10

**4**

4,000 [1]  17/11

**5**

500 [2]  1/16 2/13
504 [1]  2/14
510 [1]  1/16
589-7778 [1]  2/14

**6**

60 miles [1]  13/23
60606 [1]  2/7
63,000 [1]  11/1
64,000 [5]  8/13 25/3 25/23 26/1 26/14

**7**

70130 [1]  2/13
70163 [1]  1/23
70170 [1]  2/11
77 [1]  1/19
7778 [1]  2/14
7800 [1]  2/7

**A**

ability [1]  28/18
able [1]  8/3
about [21]  3/23 6/13 7/8 8/8 8/13 9/11
 12/3 18/25 18/25 19/2 20/18 21/14
 22/10 25/3 26/14 26/15 27/5 27/13
 27/19 28/6
above [1]  28/19
above-entitled [1]  28/19
absolutely [3]  13/17 13/19 20/22
accelerated [1]  26/18
accept [1]  7/13
accordance [1]  21/21
According [1]  6/3
accurate [1]  8/18
active [1]  15/9
actual [12]  10/22 11/11 14/18 14/19
 15/6 15/8 15/12 15/12 15/14 15/21
 15/23 16/1
actually [7]  4/5 4/23 5/19 5/23 6/6 10/25
 16/2
added [1]  4/6
addition [2]  14/12 25/10
additional [2]  12/20 13/2
address [10]  3/11 3/12 7/8 8/15 8/21
 18/18 22/9 22/14 24/1 25/1
addressed [2]  4/18 14/8
adequately [1]  8/3
adjudicated [2]  6/18 6/21
adjust [1]  20/8
adjusted [1]  20/5
administration [1]  19/15
administrator [2]  19/5 19/12
admitted [1]  13/16
affidavit [2]  3/21 6/3
after [4]  9/12 11/8 11/10 11/23
again [6]  14/5 18/3 21/2 21/5 21/6 25/13
against [5]  11/15 14/24 15/1 15/2 15/20
aggregate [2]  5/3 14/15
ago [2]  11/14 22/24
agree [3]  7/2 13/1 27/10
ahead [1]  11/7
Aid [1]  23/5
aided [1]  2/17
Aids [1]  17/8
all [25]  1/8 4/4 4/5 4/14 4/20 4/25 6/11
 9/12 10/7 11/20 12/9 13/1 14/5 18/23
 20/4 21/10 22/10 23/11 24/12 24/16
 24/21 25/11 25/14 27/6 28/12
along [1]  4/14
already [7]  4/17 10/19 14/22 18/7 23/4
 25/11 27/6
also [3]  4/2 13/8 24/21
Alston [1]  2/2
alternative [3]  3/25 6/7 18/9
amended [1]  5/6
Amorin [1]  17/18
amount [3]  4/15 4/24 14/6
analysis [6]  10/14 13/13 13/19 22/6 22/7
 26/2
and/or [1]  25/24
animating [1]  4/13
another [10]  3/15 13/24 17/23 17/24
 21/6 26/24 27/2 27/15 28/4 28/5

**A**

answered [1]  16/16
 28/25 19/10 20/24 25/16 26/18 17/19
 21/18 22/3 26/25
anything [3]  9/4 9/5 24/22
apparently [3]  8/4 9/13 10/2
appearance [2]  4/11 12/12
Appearances [2]  1/13 2/1
appeared [1]  12/6
appears [1]  25/23
applied [2]  20/4 22/6
apply [3]  12/17 20/11 20/12
appointed [2]  19/5 19/12
approach [2]  19/17 28/9
appropriate [2]  16/11 26/23
approved [3]  7/15 21/25 26/11
approximately [3]  5/9 5/10 14/20
are [85]
area [1]  10/10
argue [1]  11/5
argument [2]  1/11 16/20
arithmetic [1]  17/22
ARNOLD [2]  1/15 16/14
articulated [3]  14/11 14/11 27/6
as [30]
aside [1]  9/14
ask [3]  11/3 20/19 24/11
asked [8]  4/2 7/6 15/12 15/13 19/12
 20/20 20/24 23/11
asking [1]  19/13 27/22
aspect [1]  22/7
assessment [1]  8/17
assumed [1]  13/22
at [26]  3/3 4/10 5/9 7/17 8/24 10/4 10/6
 10/21 11/22 12/9 14/19 14/19 15/15
 15/25 17/17 20/20 22/10 23/3 23/11
 24/17 24/18 24/18 25/6 25/8 26/22 27/2
Atlanta [2]  2/4 21/15
attached [1]  3/21
authority [4]  14/14 14/16 14/16 15/5
automatically [2]  27/17 27/18
available [4]  8/21 15/8 19/9 24/2
Avenue [1]  2/10
average [1]  26/15
averaging [2]  9/23 9/25
avoid [1]  14/4
awards [1]  14/15

**B**

B-275 [1]  2/13
back [9]  3/18 5/22 10/5 15/17 15/18
 17/15 17/16 20/12 20/21
backup [1]  23/16
Baker [1]  2/9
Band [2]  17/8 23/5
Band-Aid [1]  23/5
Band-Aids [1]  17/8
bankruptcies [1]  18/8
Banner [1]  28/7
base [1]  25/8
based [3]  3/7 6/15 8/10 19/18 19/21
 20/8
basically [1]  4/13
basis [6]  6/19 6/22 7/9 16/1 17/22 17/23
be [29]
Bearman [1]  2/9
because [15]  3/18 5/17 5/24 7/3 7/19
 8/20 11/17 11/19 16/15 18/7 20/15
 20/15 20/24 21/8 23/24
been [24]  4/14 4/20 4/21 5/14 10/19
 10/21 10/25 13/10 13/13 14/9 14/19
 14/22 17/4 18/4 19/12 19/19 19/23
 19/25 21/7 22/1 23/4 23/8 24/17 27/22
before [5]  1/11 12/6 12/6 16/5 24/14

**B**

begin [1]  14/1
beginning [1]  19/24
begins [1]  24/14
behalf [8]  3/6 3/22 3/23 4/12 12/21
12/25 22/21 25/20
being [5]  16/22 21/1 22/24 22/25 23/7
believe [3]  10/18 13/25 15/3
believed [1]  26/7
benefit [2]  17/9 20/7
benefiting [1]  17/10
benefits [1]  17/13
Benjamin [1]  1/21
Berkowitz [1]  2/9
Berman [2]  1/15 19/24
Bernard [2]  12/5 12/9
Besides [1]  14/8
best [3]  7/18 10/22 28/18
better [2]  7/5 12/14
between [1]  16/16
beyond [2]  3/8 10/10
billion [2]  4/6 5/3
Bird [1]  2/2
bit [2]  3/18 7/10
blame [2]  12/9 12/10
bless [2]  10/14 22/9
BNBM [3]  2/6 12/21 12/25
board [2]  26/7 26/8
born [1]  16/18
Boston [1]  10/3
both [3]  16/2 19/20 21/13
break [1]  28/8
brief [5]  3/15 12/24 16/15 18/20 19/18
briefly [1]  21/19
broader [1]  15/4
BrownGreer [6]  8/11 19/4 19/5 22/24
23/13 24/8
BrownGreer's [1]  19/2
brung [1]  12/19
burned [2]  11/2 22/25
business [1]  24/17
but [21]  3/23 5/6 5/24 7/21 8/19 8/23
9/11 12/1 12/7 12/16 13/8 14/3 14/23
15/5 16/18 19/6 21/10 24/18 26/15
26/20 28/4

**C**

Caldwell [1]  2/9
called [1]  10/2
came [4]  4/17 19/1 20/21 24/11
can [18]  7/21 8/16 8/21 9/6 10/3 10/21
11/4 11/7 11/7 11/9 12/2 15/18 15/19
16/9 20/12 25/1 27/24 28/1
can't [2]  16/20 22/13
care [2]  11/20 20/25
case [12]  4/14 5/19 7/22 10/21 16/23
19/7 19/8 19/8 19/9 21/20 21/24 25/13
cases [10]  1/8 14/23 15/1 15/3 15/4 15/5
15/11 15/25 16/22 26/6
categories [1]  6/17
category [1]  6/17
caused [4]  17/11 18/8 18/9 18/10
CCR [3]  2/12 28/15 28/22
certainly [1]  26/22
CERTIFICATE [1]  28/14
certified [2]  13/3 13/8
certify [1]  28/17
challenge [1]  9/1
chance [1]  18/5
change [4]  5/5 5/7 18/24 18/24
changed [1]  5/24
changes [1]  14/9

changing [1]  3/7 3/17 22/2
characterized [1]  3/16
Charles [1]  2/10
check [2]  9/6 20/20
Chicago [1]  2/7
chief [1]  16/25
CHINESE [1]  1/5
CHINESE-MANUFACTURED [1]  1/5
chose [1]  17/15
Chris [2]  18/18 18/19
Chris Seeger [1]  18/18
CHRISTINA [2]  2/3 22/20
CHRISTOPHER [1]  1/18
Circuit [5]  5/1 11/7 11/15 14/14 14/16
15/5 16/25 17/1 22/13
circumstance [1]  5/24
circumstances [1]  3/7
cite [1]  21/3
cited [1]  16/23
claim [5]  5/14 19/5 19/12 19/14 26/20
claimants [2]  13/25 23/8
claimed [1]  27/8
claiming [1]  9/5
claims [2]  14/24 18/6
class [1]  16/24
classwide [4]  4/10 5/2 6/9 7/9 11/5
22/14
clear [4]  14/14 19/3 20/16 21/9
clearly [1]  17/21
client [1]  11/14
codes [1]  20/8
collecting [1]  19/8
colloquy [1]  16/16
come [4]  11/22 15/1 21/14 24/5
comes [1]  16/21
comment [1]  12/22
comments [4]  12/21 18/17 18/20 25/7
Committee [1]  16/15
company [1]  15/2
compel [3]  3/11 22/19 22/22
complaint [2]  17/18 17/19
complaints [1]  17/19
complete [1]  17/25
completely [1]  22/2
complicated [1]  6/25
component [1]  11/6
components [4]  3/24 4/4 4/6 5/4
comporting [1]  4/25
computer [1]  2/17
computer-aided [1]  2/17
conceding [3]  6/16 6/18 6/21
conduct [1]  17/14
confused [1]  18/24
constant [1]  21/20
construction [1]  13/16 13/20
consultants [1]  25/25
contacted [1]  28/5
contained [1]  11/1
contempt [1]  4/18
continuance [1]  11/24
continue [2]  18/13 22/16
control [2]  3/8 26/5
controlling [1]  5/1
cornerstone [1]  23/17
correct [1]  28/17
cost [10]  10/22 15/14 17/7 17/8 17/22
20/4 20/8 25/24 26/5 27/5
costs [10]  14/19 15/6 15/12 15/13 16/1
25/13 26/24 27/1 27/17 27/18
could [2]  17/21 26/9
counsel [2]  4/19 16/16
counsel's [1]  22/5

counting [1]  25/10
couple [4]  8/2 8/5 9/23 9/25
course [3]  4/25 7/5 26/8
court [28]  1/1 2/12 3/5 4/19 11/4 11/22
13/3 14/17 16/10 16/16 16/23 16/24
18/18 19/6 19/12 19/19 19/21 21/12
21/12 21/16 21/23 23/6 23/21 26/11
26/23 28/15 28/16 28/23
Court's [2]  7/19 14/6
Court-appointed [1]  19/12
Court-approved [2]  21/25 26/11
courts [2]  14/18 19/6
created [4]  8/10 8/12 14/17 15/22
crunched [1]  18/25
current [1]  8/19
cut [1]  21/17

**D**

damage [4]  14/10 14/15 15/23 19/8
damages [28]  3/10 3/21 3/24 4/5 4/11
5/3 5/14 6/9 6/13 6/17 6/21 7/9 7/15 8/7
11/5 11/6 13/11 14/2 15/7 15/21 17/7
17/21 17/23 18/11 22/14 23/17 24/10
27/8
dance [1]  12/19
data [12]  8/10 8/14 8/17 9/22 10/17 19/8
19/9 19/16 23/11 23/12 24/5 24/12
David [1]  1/21
day [1]  17/23
days [1]  22/24
deal [2]  16/7 25/13
dealing [1]  13/10
deals [1]  7/3
December [1]  13/5
decertify [1]  16/19
decide [2]  27/12 27/14
decides [1]  11/8
decision [1]  5/23
declaration [2]  3/15 8/1
defaulted [2]  16/19 17/4
defend [2]  8/4 21/21
defendant [4]  16/21 18/8 18/9 18/10
defendants [7]  2/3 2/6 2/9 9/7 17/15 18/21
20/7 24/4
deferred [1]  16/6
definition [1]  17/6
delay [3]  14/3 18/14 21/17
delayed [1]  18/13
denied [2]  16/22 17/18
Dentons [1]  2/6
denying [1]  12/15
depose [1]  18/21
deposed [1]  18/22 24/2
deposition [6]  10/12 13/16 20/16 24/4
24/11 24/15 24/20 27/20
detail [4]  4/3 22/10 23/3 24/3
determine [2]  8/7 13/19
determines [1]  16/10
did [8]  10/6 17/15 20/4 20/17 20/19 21/9
22/9 24/5
didn't [8]  9/21 9/22 11/14 11/19 20/19
20/23 20/24 22/9
different [1]  21/24
direction [1]  8/10
disc [2]  11/2 22/25
discovery [3]  15/11 22/17 22/18
distinct [1]  3/24
district [7]  1/1 1/2 1/12 16/24 16/25
28/16 28/16
do [24]  4/15 4/15 4/22 4/23 5/8 5/11
5/23 9/1 15/17 16/11 16/20 17/9 17/14
19/6 19/14 20/9 20/12 20/19 20/24 24/9

## D

do... [4] 26/3 26/19 28/5 28/6
Docket [1] 1/5
document [2] 24/22 26/19
documents [28] 8/13 8/16 8/20 8/23
8/23 8/25 11/1 22/23 23/2 23/11 23/12
23/15 24/16 24/18 24/19 25/3 25/23
26/1 26/3 26/4 26/9 26/10 26/13 26/14
26/15 27/19 27/22 27/25
does [5] 6/5 9/23 9/25 10/23 26/20
doesn't [6] 6/23 10/20 12/8 20/25 21/7
24/22
dog [1] 25/7
doing [5] 9/4 9/5 11/25 18/12 19/7
dollar [2] 4/5 27/14
dollars [1] 9/13
don't [14] 8/12 10/12 14/4 15/7 15/16
15/19 17/9 17/13 24/20 25/7 25/7 25/12
27/13 27/18
done [7] 7/21 13/13 13/19 14/19 14/22
21/1 26/11
Donelson [1] 2/9
double [1] 20/20
double-check [1] 20/20
down [8] 6/10 7/14 9/10 9/11 15/1 20/3
21/17 23/12
Doyle [2] 2/12 28/15 28/22 28/22
dramatic [2] 5/5 5/7
Drive [1] 2/7
dropped [1] 8/8
drywall [4] 1/5 15/20 23/7 27/7
due [8] 5/13 7/22 7/22 16/22 17/19
17/20 18/2 18/10
dump [1] 26/19
during [1] 14/17

## E

earlier [1] 23/6
easier [2] 6/23 26/19
EASTERN [3] 1/2 16/24 28/16
EIKHOFF [6] 2/3 3/12 8/15 8/21 22/20
23/24
either [2] 12/14 26/6
ELDON [1] 1/11
else [1] 25/15
emotion [1] 11/19
end [2] 21/20 26/20
enforce [1] 28/7
engineer [1] 9/24 10/9
enjoyment [2] 4/1 6/13
entered [2] 4/11 17/25
entirety [1] 24/7
entities [1] 12/25
entitled [2] 24/16 28/19
error [1] 14/4
ESQ [7] 1/15 1/18 1/22 2/3 2/3 2/6 2/10
essentially [6] 6/20 10/6 12/7
established [2] 19/19 20/3
establishing [1] 19/25
estimate [5] 3/23 10/1 10/8 10/23 15/7
estimates [2] 14/20 25/25
estopped [1] 17/10
even [5] 7/9 7/15 9/21 15/19 22/10
events [1] 3/16
ever [1] 19/15
every [5] 11/18 17/14 18/10 23/24 23/25
everybody [3] 9/18 9/18 18/1
everything [1] 15/18
evidence [2] 5/11 10/22
evidentiary [3] 8/1 11/9 16/10
exactly [5] 17/3 19/6 22/5 24/4 25/3
excuse [1] 10/5

exist [1] 22/23
exists [1] 22/12
expenses [3] 3/25 6/8 18/9
expensive [1] 14/5
expert [5] 3/15 13/15 13/16 14/13 18/17
expert's [1] 23/18
expertise [1] 10/10
experts [5] 8/24 8/25 21/15 21/16 22/10
explain [1] 24/3
extent [2] 11/12 23/4
extrapolates [1] 22/8
extrapolating [1] 21/1
extremely [1] 6/25

## F

fact [13] 7/13 8/4 9/9 9/10 11/5 11/8
11/20 12/10 17/20 19/20 24/12 25/11
25/14
factor [1] 13/20
factors [2] 20/4 20/8
fall [1] 3/20
FALLON [1] 1/11
far [2] 17/5 18/3
fast [1] 7/21
FCRR [3] 2/12 28/15 28/22
feasor [1] 15/15
February [1] 4/8
February 12 [1] 4/8
fellow [1] 12/11
FENTON [2] 2/6 12/24
few [1] 22/24
Fifth [7] 5/1 11/7 11/15 14/14 14/16 15/5
22/13
Fifth Circuit [6] 5/1 11/7 11/15 14/14
14/16 22/13
fight [1] 25/7
figure [10] 4/22 4/25 6/4 6/5 6/24 7/11
7/18 9/8 10/20 10/24
figures [1] 4/5
filed [3] 3/8 3/20 5/2
final [1] 17/24
find [1] 26/8
findings [1] 19/20 20/6
fine [1] 24/25
finger [1] 7/4
fire [1] 11/16
fired [1] 11/16
firm [1] 19/23
first [6] 4/11 5/8 12/5 12/22 13/1 27/19
Fishbein [1] 1/15
fits [1] 25/4
five [2] 18/13 28/8
five-minute [1] 28/8
Floor [1] 1/19
Florida [1] 17/12
flying [1] 21/15
fooling [1] 17/1
foot [3] 13/20 20/5 26/3
footage [2] 22/8 24/1
foreclosures [1] 18/8
foregoing [1] 28/17
forever [1] 16/6
form [1] 23/25
format [1] 11/20
forth [1] 20/3
forward [5] 9/3 11/4 18/16 22/18 24/10
freely [1] 13/16
Friday [2] 3/14 8/2
front [1] 26/20
fully [1] 11/10
fundamental [5] 9/2 9/14 13/12 14/1
14/7
fundamentally [1] 21/24

funds [1] 26/22
further [1] 20/6

## G

gain [1] 17/13
Gainsburgh [1] 1/21
gambit [1] 7/13
game [3] 3/7 3/17 22/1
game-changing [2] 3/7 3/17
gave [2] 4/3 17/20
general [1] 27/14
George [1] 19/24
Georgia [1] 2/4
GERALD [1] 1/22
Germano [3] 4/21 19/20 20/6
get [17] 5/19 6/4 7/21 8/16 8/23 11/8
12/11 12/15 13/18 14/25 15/17 15/18
15/21 17/9 21/12 27/18 27/23
gets [1] 10/10
getting [2] 8/23 27/22
give [9] 18/5 24/23 24/23 25/12 25/15
27/15 27/25
given [5] 4/7 4/13 8/22 25/11 25/14
gives [3] 24/1 24/1 26/25
giving [1] 9/16
go [9] 7/11 9/3 9/12 11/4 11/7 14/4
18/16 22/17 24/10
goal [1] 4/22
goes [1] 16/2
going [21] 3/22 4/9 5/5 5/15 5/23 6/9
6/12 7/6 7/13 7/14 8/24 9/1 9/16 18/7
19/17 21/14 24/2 24/23 25/1 27/16
27/17
gold [1] 19/14
gone [2] 7/23 22/10
good [3] 3/5 10/6 18/19
got [8] 8/11 8/11 11/20 12/10 13/2 18/25
20/21 20/22
grandma [1] 12/18
great [2] 4/3 22/10
Gross [1] 17/19
Grossman [4] 10/3 10/4 22/7 22/8
Grossman's [1] 22/11
group [3] 10/18 13/22 13/24
guess [1] 18/12
guy [1] 10/3

## H

had [11] 4/5 4/9 4/13 11/10 17/9 17/14
18/21 20/21 22/10 22/25 24/5
hand [1] 12/7
handled [1] 18/7
happen [3] 7/6 7/7 17/11
happened [1] 3/13
hard [1] 19/21
has [26] 4/8 4/17 5/20 7/4 7/11 7/22 8/1
8/9 10/19 13/11 13/13 14/6 14/18 14/22
17/18 18/4 19/12 19/15 19/19 19/22
21/7 22/13 24/9 28/4 28/5 28/6
hasn't [1] 5/21
hat [1] 12/7
have [84]
haven't [3] 16/20 17/17 28/6
having [2] 9/16 12/16
he [46]
hear [8] 3/3 4/9 11/25 12/1 12/22 12/23
21/13 27/19
heard [2] 19/11 19/22
hearing [9] 3/10 4/9 8/1 10/16 11/9
11/10 18/15 18/16 25/3
held [3] 14/18 17/15 22/24
here [5] 4/22 7/5 15/9 16/4 19/13
Hernandez [1] 19/20

**H**

herring [4] 18/4 20/15 21/2 21/6
Higginbotham [1] 16/24
higher [1] 16/2
him [9] 10/13 13/12 18/22 18/24 18/25 19/2 19/4 24/11 25/2
his [7] 8/10 10/10 10/12 13/16 13/20 22/7 24/4
hold [1] 18/15
holding [1] 17/16
home [1] 21/7
homeowner [2] 21/9 26/4
homeowners [1] 17/12
homes [8] 17/6 17/7 17/9 20/11 20/12 26/6 26/7 27/7
Honor [48]
Honor's [1] 20/5
HONORABLE [1] 1/11
hours [1] 18/23
house [4] 15/16 15/17 15/18 15/21
houses [2] 19/1 20/3
how [6] 7/18 10/25 17/5 18/25 22/8 24/11
HULL [1] 2/3
Hurricane [1] 14/17

**I**

I'll [5] 3/3 12/22 12/24 22/17 28/7
I'm [10] 3/22 6/24 9/8 11/12 19/17 21/9 23/23 26/24 27/16 27/17
identified [1] 23/7
identifies [1] 23/25
identify [4] 6/5 23/2 25/3 27/7
if [22] 9/9 9/10 11/8 11/13 14/18 14/25 15/6 15/25 16/9 16/10 20/10 20/11 21/7 24/18 25/12 25/13 25/15 25/18 26/25 27/4 27/14 27/15
ignoring [1] 17/11
Illinois [1] 2/7
impediment [1] 8/22
important [1] 3/18
in [95]
inappropriate [1] 21/2
include [2] 25/24 26/2
included [1] 13/6
incur [1] 12/14
incurred [1] 27/1
indicated [1] 13/11
individual [4] 15/10 16/1 17/23 18/6
individualized [3] 6/19 6/22 9/17
information [11] 9/23 11/1 11/8 11/21 19/4 19/13 19/16 21/14 23/12 23/13 24/23
informed [1] 22/1
Inglis [18] 3/16 8/1 9/20 10/7 10/12 10/20 13/14 15/13 18/17 18/22 19/3 19/24 20/16 20/19 20/23 21/2 21/3 21/13
Inglis' [3] 6/3 15/25 19/17
injury [1] 19/7
inquiries [1] 9/17
inspection [3] 25/24 26/11 27/7
inspections [1] 27/5
inspectors [1] 26/11
Instead [1] 10/23
insulation [1] 15/19
insurance [3] 14/23 15/2 15/5
insurer [1] 14/24
intend [1] 5/11
interest [3] 4/21 7/20 7/20
intervention [2] 5/18 5/21
into [5] 10/9 12/10 17/9 21/12 22/10

**involve** [1] 14/23
in[90] Document 19097   Filed 06[4] 6/40 3/18 21/6
issue [17] 5/16 5/16 5/17 7/12 7/18 7/25 9/19 10/15 20/14 21/19 21/23 22/24 22/12 23/3 25/24 26/24 28/6
issues [12] 4/18 5/13 5/13 7/8 9/15 9/18 14/7 14/12 16/4 16/8 20/18 22/15
it [63]
it's [25] 3/18 4/14 5/17 6/5 7/3 12/13 13/25 15/1 15/2 18/11 19/7 19/18 20/3 20/3 20/10 20/13 20/25 21/6 24/2 26/18 26/18 27/11 27/13 27/14 27/15
item [1] 18/10
its [2] 5/4 6/11

**J**

Jake [2] 26/13 27/25
Jerry [2] 21/15 23/21
job [3] 6/23 11/25 23/5
joined [1] 12/21
judge [8] 1/12 12/14 16/3 16/24 17/1 25/10 25/17 27/3
Judge Higginbotham [1] 16/24
judgment [1] 17/24
June [16] 3/10 5/11 5/15 7/7 7/7 9/3 10/16 11/4 11/9 16/6 16/7 16/11 18/15 18/16 21/12 22/15
June 9 [16] 3/10 5/11 5/15 7/7 7/7 9/3 10/16 11/4 11/9 16/6 16/7 16/11 18/15 18/16 21/12 22/15
just [27] 3/18 7/15 8/3 8/11 8/12 8/25 9/14 9/16 11/19 11/21 12/2 12/10 15/17 15/21 15/23 20/25 21/8 21/17 21/19 21/20 21/23 23/24 24/18 25/21 26/17 27/4 27/13

**K**

Katrina [2] 14/17 15/4
keep [3] 18/20 19/17 25/3
KENNY [5] 2/3 3/6 13/11 13/14 13/18
Kenny's [1] 13/2
kept [1] 11/17
KERRY [2] 2/10 25/20
kind [3] 14/15 19/13 26/5
Knauf [11] 2/9 17/15 25/20 25/25 26/1 26/2 26/7 26/12 26/15 26/20 28/10
Knauf's [1] 24/6
Knauf/PSC [1] 17/8
know [11] 5/19 8/12 8/13 10/13 10/17 18/12 20/15 20/23 22/23 26/17 27/13
knowing [3] 8/18 21/3 21/5
knows [1] 10/11

**L**

lack [1] 14/13
last [8] 3/7 3/13 3/14 3/20 5/4 12/11 13/4 16/22
later [1] 27/11
law [5] 4/23 5/1 7/22 11/7 21/22
lawyer [2] 10/2 28/4
lawyers [4] 11/16 11/16 11/17 20/19
legal [4] 7/8 14/12 16/4 16/7
less [1] 9/5
let [2] 12/1 21/14
let's [5] 7/7 22/16 22/17 25/6 27/18
letter [3] 1/15 1/15 16/14 21/10
Levin [4] 1/15 1/15 16/14 21/10
LIABILITY [1] 1/6
like [2] 16/19 26/13
limbo [1] 5/25
list [1] 10/11
listening [1] 11/13
litigants [1] 15/10

**litigate** [1] 21/21
little [2] 3/18 7/10
live [1] 15/17
living [3] 3/25 6/7 18/9
LLC [1] 1/21
LLP [3] 1/18 2/2 2/6
localities [1] 20/18
look [9] 8/24 10/4 10/21 12/15 14/18 14/19 15/25 20/20 25/6
looked [7] 10/6 17/17 24/17 24/18 25/8 26/13
looking [1] 15/15
looks [1] 10/6
loses [1] 15/16
loss [2] 4/1 6/12
lot [5] 11/13 14/16 16/3 16/16 19/21
LOUISIANA [7] 1/2 1/7 1/23 2/11 2/13 17/12 28/17
low [1] 16/1

**M**

made [5] 12/12 14/9 19/3 20/16 23/8
make [8] 5/5 6/23 8/17 12/2 12/20 16/8 20/21 26/17
makes [1] 6/25
making [1] 19/9
MANUFACTURED [1] 1/5
many [3] 10/25 13/25 15/25
material [5] 24/7 24/15 25/2 25/8 27/1
materials [2] 8/13 26/21
math [6] 19/19 20/10 20/11 20/13 20/25 21/6
matter [2] 20/25 28/19
matters [1] 8/5
may [12] 1/8 3/2 3/5 7/2 8/25 12/20 15/20 23/21 25/18 27/4 27/15 28/9
maybe [1] 25/5
MD [1] 1/5
me [6] 10/4 10/5 10/7 12/1 16/18 24/16
mean [2] 10/9 21/7
meantime [1] 11/7
mechanical [1] 2/17
member [2] 17/18 23/25
members [5] 4/23 6/12 13/6 15/9 23/2
mentioned [2] 13/14 13/18
methodology [2] 4/4 9/22
Meunier [1] 1/21 23/21
MICHAEL [3] 2/3 3/6 10/3
middle [2] 19/23 19/25
miles [1] 13/23
MILLER [3] 2/10 25/20 28/10
Miller's [1] 27/5
million [5] 6/10 6/13 8/8 8/8 9/11
minimum [1] 7/17
minute [2] 13/18 28/8
mix [1] 13/6
mixed [1] 26/6
modify [4] 3/9 3/11 7/6 11/4
Monday [1] 3/9
money [2] 6/6 21/8
months [2] 11/14 11/23
more [11] 4/6 5/3 5/11 6/10 6/25 8/3 8/8 9/6 9/13 11/13 23/6
morning [2] 3/5 18/19
Moss [3] 26/1 26/2 26/3
motion [19] 3/3 3/9 3/11 3/11 3/20 3/22 4/10 5/3 5/6 5/6 8/15 12/21 16/19 22/19 22/19 22/22 23/17 28/4 28/7
motions [1] 3/9
move [1] 16/9
moved [1] 17/23
moving [1] 13/10

**M**

Mr [1]  21/10
Mr. [34]
Mr. Grossman [1]  22/8
Mr. Grossman's [1]  22/11
Mr. Inglis [14]  3/16 8/1 9/20 13/14 15/13 18/17 18/22 19/3 20/16 20/19 20/23 21/2 21/3 21/13
Mr. Inglis' [5]  6/3 15/25 19/17
Mr. Kenny [3]  13/1 13/14 13/18
Mr. Kenny's [1]  13/2
Mr. Miller [1]  28/10
Mr. Miller's [1]  27/5
Mr. Woody [7]  21/13 22/6 24/2 24/21 25/1 25/6 27/21
Mr. Woody's [1]  24/11
Mr. Wright [1]  4/4
Ms. [4]  3/12 8/15 8/21 23/24
Ms. Eikhoff [4]  3/12 8/15 8/21 23/24
much [5]  1/14 14/17 16/13 22/16 28/11
Murphy [1]  5/22
must [1]  6/18
my [6]  12/18 16/3 18/20 23/11 25/21 28/18

**N**

named [1]  10/3
neatly [1]  18/11
necessarily [1]  24/8
need [12]  4/24 5/19 6/21 7/17 8/3 8/16 8/23 8/25 10/24 14/7 16/9 25/7
needs [2]  7/10 7/12
never [4]  10/13 15/11 15/13 19/11
new [11]  1/7 1/19 1/19 1/23 2/11 2/13 3/15 7/11 7/13 8/7 12/11
New Orleans [1]  12/11
next [3]  22/19 24/2 24/11
no [14]  8/18 8/19 8/22 9/7 12/15 12/18 13/19 14/20 17/2 17/3 20/25 21/1 22/6 27/10
nobody [3]  5/20 10/11 19/15
Northeast [1]  13/23
nose [1]  11/21
not [42]
noted [1]  5/22
nothing [1]  24/9
notice [18]  4/3 4/3 4/7 5/4 5/13 5/24 6/8 6/11 7/11 7/15 13/3 13/5 13/7 14/8 16/8 16/9 21/23 21/25
noticed [2]  18/4 24/4
Notwithstanding [1]  11/20
now [29]
number [7]  8/7 9/2 9/2 13/7 20/7 20/7 21/6
numbers [3]  11/11 15/8 18/25

**O**

oath [1]  24/3
off [1]  7/23
Official [3]  2/12 28/15 28/23
Oil [1]  5/22
Okay [4]  3/3 7/24 12/22 21/18
on [64]
one [19]  3/9 3/10 4/13 5/18 5/21 8/6 9/8 12/2 12/19 12/22 13/23 18/4 18/5 19/22 19/22 22/7 22/8 27/14 27/14
one-way [2]  5/18 5/21
only [4]  6/1 18/5 19/5 26/8
opinion [1]  25/8
opportunity [6]  4/8 11/10 11/18 17/14 18/21 27/16
opposed [1]  6/1

**P**

opposite [1]  7/16
oppositions [6]  19/17 27/18 27/18 27/18 27/23 27/25
opt [5]  4/8 6/11 18/4 18/5 18/6
opt-out [2]  6/11 18/4 18/5
opted [2]  18/6 18/7
or [17]  5/16 11/14 11/23 12/14 17/6 17/18 17/19 18/24 18/24 19/8 23/6 23/8 25/24 26/6 26/23 27/11 27/12
ORAL [1]  1/11
order [2]  3/10 3/12
Orleans [5]  1/7 1/23 2/11 2/13 12/11
other [10]  3/12 6/16 12/1 12/23 13/17 15/16 17/12 17/23 20/12 26/10
others [1]  18/5
ought [6]  7/17 24/24 26/25 27/10 27/12 27/23
our [14]  4/14 4/15 4/22 5/17 6/15 8/24 8/25 11/16 12/7 12/14 14/11 18/17 20/21 22/10
out [36]
outrageous [1]  17/14
over [1]  18/22
owe [7]  4/15 4/16 4/23 4/23 4/24 5/8 10/23
owed [6]  6/6 6/17 21/8
own [2]  14/24 21/9
owners [1]  3/23

page [1]  10/5
paid [4]  4/18 4/19 4/20 25/25
paper [1]  6/15
papers [1]  5/2
paragraph [1]  10/5
parameters [1]  7/21
part [6]  13/8 13/11 14/2 15/24 20/24 26/12
participate [1]  11/19
participating [2]  4/20 4/22
particularly [1]  26/1
parties [1]  14/5
party [1]  16/20
past [1]  3/9
pay [5]  9/6 27/12 27/12 27/17 27/18
pays [2]  26/3 26/15
PC [1]  2/9
Peachtree [1]  2/4
Pennsylvania [2]  1/16 16/25
people [14]  4/7 5/9 5/10 5/12 5/14 5/25 6/9 6/19 7/14 8/9 9/20 10/16 15/10 17/9
per [1]  13/20
period [1]  4/8
person [2]  15/16 19/22
personal [1]  19/7
persons [1]  13/7
phase [1]  17/24
Philadelphia [1]  1/16
phone [1]  28/5
place [3]  14/20 15/16 22/23
plain [1]  20/2
plaintiff [2]  23/24 23/25
plaintiffs [10]  3/14 3/20 4/21 5/5 10/2 13/23 15/10 15/11 18/20 23/22
plaintiffs' [6]  4/19 7/20 13/15 14/10 16/14 23/17
plane [1]  12/11
please [2]  3/5 23/21
plenty [1]  16/11
point [4]  3/4 7/19 14/20 16/3
pointed [1]  4/17
points [3]  8/2 21/10 27/5
policy [1]  14/24
poor [1]  17/8

**Q**

position [3]  4/14 12/7 12/16
possible [1]  6/22
pour [1]  25/2
Poydras [2]  1/22 2/13
practical [1]  8/22
precise [3]  4/5 6/4 25/4
precisely [1]  7/4
prepare [1]  11/10
prepared [2]  18/16 25/25
prepares [1]  26/2
present [2]  5/11 6/12
presentation [1]  9/11
presented [3]  5/15 6/8 17/21
presenting [1]  12/1
preserved [2]  18/11 18/11
presumably [1]  4/10
previous [1]  26/21
primarily [1]  15/1
principle [1]  1/9
problem [7]  5/18 6/24 7/5 11/12 15/14 15/24 28/10
problems [6]  5/21 9/10 13/2 13/12 14/1 14/8
proceed [3]  7/18 9/15 16/5
proceeding [2]  7/8 21/24
proceedings [5]  2/17 3/1 9/13 17/6 28/19
process [7]  5/13 7/22 7/22 16/22 17/19 17/20 18/2
produce [3]  19/12 23/1 24/8
produced [1]  11/2
PRODUCTS [1]  1/5
profile [1]  23/24
proof [1]  16/5
proper [2]  11/6 18/1
properly [1]  8/3
properties [10]  9/21 10/1 10/21 10/25 13/4 13/9 14/22 21/5 23/5 23/8
property [3]  3/23 3/25 9/22 10/19 19/8 23/3 24/1
proprietary [2]  24/9 26/21
propriety [1]  7/8
protecting [1]  17/2
provided [3]  19/4 19/16 24/12
provision [1]  6/11
provisions [1]  14/24
PSC [4]  1/15 1/18 1/21 28/10
pull [1]  7/14
pulled [1]  6/10
pulling [4]  6/13 8/13 9/10 9/11
punishment [1]  21/20
purpose [1]  4/13
purposes [1]  26/9
put [4]  7/4 15/19 20/12 25/20

**Q**

quarters [1]  14/21
question [1]  27/11
questioned [4]  18/24 18/25 19/2 19/15
questions [2]  16/17 18/23
quickly [4]  15/18 27/23 27/25 28/9
quit [3]  11/14 11/15 11/16

**R**

rails [1]  7/23
raise [1]  9/9
raised [1]  20/18
raises [4]  5/13 5/18 8/2 9/14
ran [1]  12/12
RE [1]  1/5
read [1]  20/15
readily [1]  8/21

**R**

ready [2]  11/2 23/1
real [1]  21/19
really [9]  6/5 14/23 16/4 17/2 19/18
 20/14 21/3 21/9 21/11
reason [5]  3/16 7/6 10/17 13/11 14/2
reasonable [3]  4/15 4/24 10/7
reasons [3]  11/3 26/21 27/6
recall [1]  3/17
received [3]  4/7 5/4 13/7
receptive [1]  11/13
reconsidered [1]  11/23
record [2]  8/19 28/19
recorded [1]  2/17
red [4]  18/4 20/15 21/2 21/6
referenced [1]  23/6
refined [2]  20/6 20/7
regard [6]  5/8 6/16 6/19 9/19 18/17
 21/23
regarding [1]  28/10
reimbursement [1]  26/22
relates [2]  1/8 22/7
relevant [1]  27/9
reliability [1]  19/16
reliable [1]  6/5
relied [6]  19/4 24/15 24/21 24/23 25/14
 25/15
relief [1]  17/25
rely [2]  15/7 20/17
relying [2]  8/6 8/9
remains [1]  14/21
remarks [2]  13/2 22/5
remediated [16]  3/25 7/9 8/7 10/19
 10/21 10/25 11/6 13/4 13/6 14/25 17/6
 17/7 21/5 21/7 23/4 23/5
remediating [1]  21/8
remediation [9]  14/18 14/21 15/13 15/15
 16/2 17/8 17/22 23/7 26/12
removed [1]  13/5
renotice [1]  14/9
renoticing [1]  18/3
repair [1]  26/2
repeat [1]  21/23
reply [1]  3/14
report [1]  23/18
Reporter [3]  2/12 28/16 28/23
reports [7]  9/1 14/13 25/24 26/11 26/15
 26/16 27/7
representations [1]  22/25
representative [4]  13/24 20/18 22/9
 22/11
request [2]  23/11 24/7
required [1]  14/9
reserve [1]  25/21
reserving [1]  9/12
resolved [1]  5/19
respect [2]  8/4 13/3
respond [2]  27/4 27/16
responded [1]  16/17
response [3]  21/18 22/3 23/20
result [1]  8/12
retained [1]  25/25
rethink [1]  11/18
reviewed [1]  23/13
RICHARD [1]  2/6
Rick [1]  12/24
right [8]  8/18 8/22 10/7 15/4 20/21 20/22
 21/21 25/12
rights [2]  9/12 25/22
rigor [2]  14/13 22/13
ripping [1]  20/3
rise [1]  28/12

Robert [1]  3/21
RMR [1]  2/6
rubric [1]  11/5
ruled [1]  11/15
rules [1]  12/17
run [1]  4/8

**S**

said [17]  4/14 5/23 7/15 10/3 10/12
 11/15 12/16 12/18 17/1 17/24 19/15
 20/22 21/3 22/5 22/6 22/13 23/24
same [1]  15/6
sample [3]  13/24 22/9 22/11
sampling [1]  20/19
Sandia [1]  3/24
saw [1]  16/22
say [9]  5/9 6/17 11/22 14/24 18/23
 21/13 24/21 27/17 27/18
saying [4]  8/4 9/15 16/5 16/6
says [6]  9/20 9/25 10/6 10/7 10/13 16/21
schedule [2]  11/4 26/12
scheduled [1]  27/21
scheduling [2]  3/10 3/12
science [1]  20/1
scientists [2]  19/21 19/22
scope [5]  19/19 19/25 20/2 26/2 26/5
second [4]  6/7 7/25 9/19 25/18
Section [1]  1/6
Sedran [1]  1/15
see [4]  11/11 11/14 24/22 26/25
Seeger [4]  1/18 1/18 18/18 18/19
seeing [1]  14/2
seek [2]  6/9 26/22
seeking [1]  3/24
seems [1]  24/16
seen [2]  16/20 24/6
send [1]  4/2
sends [1]  10/5
sensitive [1]  26/25
sent [1]  12/11
series [2]  9/17 9/17
serious [2]  5/13 5/18
serve [2]  21/11 21/16
set [3]  3/19 20/3 22/22
sets [1]  26/10
setting [1]  14/15
settlement [1]  28/7
seven [2]  4/21 18/23
share [2]  7/19 7/20
she [4]  24/14 24/15 24/16 24/22
sheet [1]  8/17
sheets [4]  24/13 24/19 25/11 25/14
shift [1]  14/2
should [7]  11/11 16/4 16/6 16/7 21/20
 22/14 24/10
side [3]  12/1 12/22 12/23
sift [1]  26/19
signed [1]  26/4
silence [1]  22/12
simple [2]  19/18 19/18
simply [2]  13/22 20/4
since [4]  4/12 19/23 19/24 24/17
sir [1]  28/2
situation [3]  15/22 19/11 27/19
six [1]  18/13
size [1]  23/3
slap [1]  15/20
Sley [1]  16/23
small [1]  13/22
so [23]  5/10 6/1 8/16 9/5 9/6 9/16 9/23
 10/7 12/14 13/6 14/1 15/17 20/10 21/2
 21/9 22/11 24/6 24/10 24/22 25/7 26/6
 26/17 27/21

software [1]  2/17
sold [1]  17/16
some [56]  ... 8/21 10/6/132 12/11
 12/20 13/2 13/12 14/1 14/7 14/12 17/12
 19/18 20/18 25/23 26/1
somehow [1]  13/24
something [4]  15/20 20/16 22/17 25/15
sometimes [1]  26/19
sorted [1]  16/5
sought [1]  3/22
sound [1]  13/21
sounds [1]  16/18
South [1]  2/7
spans [1]  13/25
speaks [1]  22/12
specific [1]  7/3
specifically [2]  3/14 13/4
spreadsheet [6]  8/6 8/9 8/10 8/11 19/3
 23/16
spreadsheets [1]  15/25
sprinkled [1]  17/13
square [4]  13/20 22/8 24/1 26/3
St [1]  2/10
stage [1]  16/10
stand [1]  22/5
standard [1]  19/14
started [2]  5/8 23/10
state [1]  8/19
stated [1]  26/21
states [5]  1/1 1/12 13/25 17/13 28/16
statistical [5]  13/19 14/13 21/1 22/6
 22/13
statistically [1]  13/21
statistician [7]  9/24 10/11 13/15 20/14
 20/17 20/20 20/23
statistics [2]  10/10 20/17
Steering [1]  16/14
stenography [1]  2/17
stick [1]  15/22
still [2]  17/16 21/8
stood [1]  12/6
straight [3]  20/10 20/11 20/13
straightforward [1]  20/13
strategy [1]  4/15
Street [5]  1/16 1/19 1/22 2/4 2/13
stripped [1]  6/20
stripping [1]  5/10
strong [1]  10/17
structure [1]  11/2
structured [1]  17/5
studs [1]  20/4
studying [1]  20/1
subject [4]  8/14 15/11 22/22 27/8
submitted [3]  3/14 8/2 26/13
subsequent [1]  9/13
subset [1]  10/18
substantial [1]  10/18
sudden [1]  24/21
sued [1]  17/18
sufficient [1]  16/8
Suite [4]  1/16 1/22 2/7 2/10
summary [5]  8/9 8/17 19/10 23/16 24/5
summed [1]  21/10
superiority [1]  9/14
supplement [1]  16/9
supplemental [7]  4/3 5/24 6/8 6/11 9/1
 13/5 13/7
suppose [1]  25/4
supposedly [2]  8/12 10/10
sure [5]  12/4 16/8 20/21 23/23 26/17

**T**

table [1]  3/19
Taishan [9]  2/2 3/6 4/13 14/11 22/21

**T**

Taishan... [4] 24/9 26/8 26/8 26/23
Taishan's [2] 3/8 7/19
take [13] 3/18 10/4 11/19 15/19 16/5
16/7 20/20 22/4 24/20 25/2 25/5 27/1
28/7
taken [1] 14/6
talk [1] 21/16
talked [3] 10/13 25/1 28/6
talking [1] 27/13
target [1] 13/10
Taylor [1] 12/5
techniques [2] 9/23 9/25
tell [1] 10/4
terms [1] 27/21
test [1] 8/20
testified [1] 20/2
testify [1] 21/14
testimony [1] 21/3
testing [1] 8/19
than [8] 4/6 5/3 5/11 6/10 8/8 13/17 15/4
21/25
Thank [8] 16/11 16/13 22/15 22/16
25/17 27/3 28/3 28/11
that [146]
that's [22] 10/7 14/1 14/25 15/21 15/23
16/10 17/3 17/22 18/1 19/20 19/23
22/14 23/3 23/13 24/19 24/25 25/9
25/10 25/14 25/15 26/24 27/14
their [23] 3/15 5/5 5/6 5/14 5/16 9/12
9/21 10/19 11/16 11/17 11/21 14/22
14/24 15/16 15/17 15/18 15/21 17/9
17/13 21/9 21/15 21/16 23/17
them [22] 4/24 5/20 6/18 8/25 10/23
11/15 11/17 11/18 15/12 15/13 15/22
17/20 19/3 21/14 24/7 24/20 25/11
25/14 25/15 26/20 27/23 27/25
then [16] 6/19 10/15 11/9 12/22 15/22
16/9 16/25 20/6 24/21 26/4 26/4 26/8
26/19 27/19
theory [1] 14/10
there [21] 5/9 6/3 7/10 8/20 8/20 9/20
10/18 12/15 13/12 13/17 13/19 14/7
14/13 14/15 15/5 15/7 16/3 16/11 17/25
20/10 26/13
there's [7] 8/18 8/22 9/19 12/15 14/1
20/25 21/1
these [16] 4/23 10/25 15/9 15/10 17/8
21/10 21/12 22/15 23/2 23/8 26/6 26/6
26/7 26/9 27/8 27/22
they [96]
thing [4] 10/16 26/6 27/14 27/15
things [1] 26/18
think [23] 3/18 5/12 7/5 7/7 7/10 7/11
7/17 7/22 10/4 11/1 14/8 16/4 18/1 18/1
21/10 21/11 21/16 22/12 22/14 24/6
24/10 26/12 27/10
third [3] 5/12 16/25 17/1
Third Circuit [1] 17/1
this [47]
thorough [1] 23/6
those [29]
though [5] 6/24 7/11 7/15 16/3 22/10
thousands [1] 13/25
three [6] 3/24 4/4 4/5 5/4 6/17 14/21
three-quarters [1] 14/21
threshold [5] 14/7 14/12 16/4 16/7 22/15
through [5] 14/4 19/9 25/2 26/19 26/23
throughout [1] 19/6
thrown [1] 5/20
thumbed [1] 11/21
time [12] 4/10 4/12 7/18 8/3 8/25 12/5

14/6 16/7 25/2 25/5 26/23 27/2
time-outline... [1] 26/20
timeline [1] 26/18
timeout [1] 7/11
today [1] 21/15
told [4] 5/14 6/10 12/13 21/25
Toni [4] 2/12 28/15 28/22 28/22
too [1] 27/13
took [1] 18/22
tort [1] 15/15
tortfeasor [2] 15/2 15/22
towards [1] 10/16
transcript [1] 28/18
transcription [1] 2/17
treatment [2] 3/25 5/15
tremendous [1] 14/6
tremendously [1] 14/5
trial [2] 17/24 24/10
tried [1] 4/12
trimmed [1] 23/12
true [1] 28/17
truncated [1] 26/18
trundling [1] 10/16
trusted [1] 19/14
try [1] 10/20
trying [4] 6/24 9/8 14/3 14/4
Tuesday [3] 24/3 24/11 27/21
Turner [1] 5/22
turns [1] 9/17
Tusa [4] 2/12 28/15 28/22 28/22
twice [1] 18/4
two [5] 3/8 6/17 10/5 10/5 16/22
two-page [1] 10/5
two-paragraph [1] 10/5
type [1] 23/3

**U**

ultimately [2] 5/18 8/7
Umbriac [1] 16/23
under [5] 4/23 8/19 9/21 11/6 24/3
underlying [1] 8/14
understand [6] 12/7 12/18 23/10 23/19
24/14 25/16
understanding [1] 28/18
understood [1] 23/23
unfolding [1] 11/21
UNITED [3] 1/1 1/12 28/16
unknown [1] 22/8
unopposed [1] 4/10
unremediated [1] 13/9
until [2] 17/25 22/24
up [9] 4/6 9/16 14/6 15/20 21/10 22/24
24/5 24/11 27/2
upon [4] 19/4 19/21 20/17 24/15
us [5] 2/6 8/22 8/23 17/2 27/21
use [4] 4/1 6/12 14/14 26/9
used [1] 20/8
using [1] 2/17

**V**

vaguely [1] 9/12
verified [1] 9/22
very [15] 13/1 14/14 16/1 16/13 16/15
19/3 19/23 20/2 20/13 20/16 22/16 27/8
27/9 28/9 28/11
view [2] 7/19 14/9
Virginia [2] 13/23 17/12
volumes [1] 22/12

**W**

Wacker [1] 2/7
wall [1] 15/20
Walnut [1] 1/16

wandering [1] 10/9
want [11] 10/9 11/2 13/25 14/1 15/7
20/15 21/16 24/11 24/13 25/4 27/5
wanted [3] 10/4 21/1 21/1 23/12
14/4 17/2 17/3 18/5 18/13 18/15 20/11
23/13 23/15 24/20 25/9 25/21 26/17
wanted [2] 11/17 11/18
wants [1] 24/15
Warshauer [2] 1/21 1/22
was [24] 4/9 8/10 8/12 11/21 13/4 13/17
13/19 13/20 13/24 14/17 16/18 16/19
16/22 17/25 20/5 20/23 20/24 21/25
23/6 23/7 26/7 26/7 26/8 27/7
wasn't [1] 20/24
Water [1] 1/19
way [7] 5/18 5/21 8/18 8/19 8/20 9/15
21/24
ways [1] 16/2
we [116]
week [3] 3/8 3/13 5/4
Weiss [1] 1/18
well [14] 6/23 9/20 10/13 10/24 11/22
12/13 15/24 18/12 21/12 21/17 24/21
24/25 25/6 27/23
went [2] 13/5 22/1
were [13] 3/8 3/24 4/7 5/5 6/9 6/12 9/10
13/8 15/5 15/12 16/2 22/25 23/5
weren't [1] 12/16
West [1] 2/4
what [33]
what's [4] 4/24 7/6 23/20
Whatever [1] 21/6
when [7] 10/16 11/12 11/14 15/7 15/15
23/10 24/5
where [12] 5/23 8/2 9/21 10/19 14/18
14/25 16/21 17/1 19/11 22/23 24/2 26/7
whether [12] 6/4 7/13 7/14 8/7 9/15
10/20 11/5 13/20 19/7 23/4 23/8 27/11
which [18] 4/3 4/9 4/23 9/13 10/7 12/20
18/22 19/3 20/5 23/5 23/25 23/25 24/1
24/8 24/9 24/22 25/2 25/11
who [20] 4/7 4/15 4/22 5/8 5/19 5/25 6/5
10/11 10/12 10/13 12/19 13/7 13/8
13/14 15/10 16/20 20/23 21/13 23/2
24/4
whole [4] 4/22 10/15 11/5 23/9
whose [2] 23/7 27/7
why [3] 18/12 22/11 22/14
will [17] 3/11 3/12 3/17 6/4 8/15 8/21
12/23 13/18 16/11 16/15 18/18 18/20
24/3 25/4 27/1 27/15 27/19
winning [1] 9/4
wish [1] 12/15
within [3] 7/21 10/18 13/23
Without [1] 22/12
withstood [1] 18/9
witness [2] 3/16 10/11
witnesses [1] 21/12
won't [1] 27/12
wonderful [1] 11/25
Woody [8] 21/13 22/6 24/2 24/21 25/1
25/6 26/13 27/21
Woody's [1] 24/11
word [1] 13/5
words [1] 6/16
work [6] 19/19 19/21 20/21 21/1 26/5
26/5
would [13] 8/14 9/9 10/22 11/3 11/13
16/17 17/25 21/11 21/16 26/6 26/7
26/10 26/22
wrath [1] 12/14
wrestle [1] 7/12
Wright [3] 3/21 4/4 19/24
write [1] 22/17

## Y

year [1]  13/4
years [2]  16/21 18/13
Yes [6]  22/4 22/20 25/19 27/20 28/2
 28/11
yesterday [5]  10/12 13/17 16/18 18/22
 25/21
yet [2]  3/15 28/6
York [2]  1/19 1/19
you [65]
You're [1]  12/9
young [1]  12/11
your [62]
Your Honor [43]
Your Honor's [1]  20/5

## Z

ZIP [1]  20/8