# EXHIBIT "F"

abovethelaw.com

# Transfer Pricing And China: Watch Out

By Dan Harris

Last week, I wrote an article for Forbes entitled, China's Tax Authorities Want You. The subject of that article was how China's slowing economy is causing the Chinese government to step up tax collection efforts against foreign companies with off-the-grid "employees" in China. But China isn't stopping there. It is also stepping up its tax collections on transactions with transfer pricing implications.

Wikipedia nicely defines transfer pricing as follows:

> Transfer pricing is the setting of the price for goods and services sold between controlled (or related) legal entities within an enterprise. For example, if a subsidiary company sells goods to a parent company, the cost of those goods is the transfer price. Legal entities considered under the control of a single corporation include branches and companies that are wholly or majority

Case 2:09-md-02047-EEF-MBN   Document 19113-3   Filed 06/10/15   Page 3 of 5

> owned ultimately by the parent corporation. Certain jurisdictions consider entities to be under common control if they share family members on their boards of directors. It can be used as a profit allocation method to attribute a multinational corporation's net profit (or loss) before tax to countries where it does business. Transfer pricing results in the setting of prices among divisions within an enterprise.

In China, a related company is defined as a company with 25% direct or indirect ownership or control over another entity (or vice versa). This applies whether one party owns another or two parties are owned by a third party. Other criteria including loans, control of management, or other indicia of control that can also be taken into account.

**Transfer Pricing Matters.**

I could write pages and pages as to why it is imperative that you deal with transfer pricing and why these issues are so much at the fore in China. But I won't. What I will tell you is that over the last year or so, China has been accelerating its tax reviews relating to transfer pricing. China is striving to increase its tax revenues (that's a given), and strict oversight of transfer pricing is a great way to tap foreigners for more money. And get this: all payments made by your Chinese entity to a related company may be subject to a tax adjustment up to *ten* years after the payment has been made. And when (not if) your Chinese entity is investigated, it will be your responsibility to provide all relevant documentation, *including written contracts (preferably in Chinese) between your Chinese entity and its related companies overseas.*

Case 2:09-md-02047-EEF-MBN   Document 19113-3   Filed 06/10/15   Page 4 of 5

In particular, China wants to reduce the transferring of funds out of China disguised as payments for services. If your Chinese entity is paying your company in the United States $200,000 as a service fee, that $200,000 payment may well be a deductible expense. But if that $200,000 is characterized as a repatriation of profits, that repatriation is a taxable event. Needless to say, the Chinese government wants more taxable events and fewer deductions, and if your China entity cannot sufficiently document its activities, the result will be a lot more RMB in the taxable event column. Moreover, the Chinese tax authorities will impute the amount of profit.

China's tax authorities have made clear that they are looking for the following sorts of payments for taxing:

- Payments to the overseas company for services that are never provided.

- Payments to the overseas company for services not really required by the Chinese company.

- Royalty payments to the overseas company for intangible assets (think trade secrets, patents, trademarks, copyrights, etc.) to which the overseas company did not really contribute.

**What To Do About China Transfer Pricing.**
Again, I could write pages on this, but I won't. I will just say that if you have or will have a related Chinese entity, you should look carefully at the transactions between your foreign entity and your Chinese entity. At minimum, you should be sure that the

Case 2:09-md-02047-EEF-MBN   Document 19113-3   Filed 06/10/15   Page 5 of 5

transactions are valid, well documented, and based on justifiable market pricing. If you do not have a written agreement between your China entity and your overseas entity clearly setting forth the terms of all transactions between those two entities, you need to get one. Now.

---

**Dan Harris is a founding member of** Harris Moure**, an international law firm with lawyers in Seattle, Chicago, Beijing, and Qingdao. He is also a co-editor of the** China Law Blog**. You can reach him by email at** firm@harrismoure.com**.**