UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED | * | MDL NO. 2047 |
|     DRYWALL PRODUCTS | * | |
|     LIABILITY LITIGATION | * | SECTION: L |
| | * | |
| | * | JUDGE FALLON |
| **This document relates to:** | * | |
|     **Case No. 10-362, Sec. L. Mg. 2** | * | MAG. JUDGE WILKINSON |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>CLAIMANT OCEANIQUE DEVELOPMENT COMPANY'S REPLY TO THE KNAUF DEFENDANTS' MEMORANDUM IN OPPOSITION TO OBJECTION AND MOTION FOR COURT REVIEW OF SPECIAL MASTER'S OPINION AND DECREE & MOTION NUNC PRO TUNC TO PERMIT LATE FILED OBJECTION AND MOTION</u>**

**NOW COMES** Claimant Oceanique Development Company ("Oceanique") who files this Reply to the Knauf Defendants' Memorandum in Opposition to Oceanique's Motion for Court Review of Special Master's Opinion and Decree (Rec. Doc. 19061). Oceanique also files its nunc pro tunc Motion to Permit its Late Filed Objection and Motion (Rec. Doc 19023).

    **I.    Oceanique's failure to strictly comply with PTO 1B is excusable and does not make it "impossible" to determine the percentage of KPT drywall.**

Oceanique explained why it was unable to strictly comply with the PTO 1B. By the time PTO 1B was in effect, Oceanique had already begun demolition. Oceanique provided proof it began demolition before PTO 1B was in effect; the proof went undisputed by Knauf. Knauf's statement that Oceanique's failed to preserve and present evidence makes it "impossible" to determine a KPT percentage is erroneous. (Rec. Doc. 19061 at 2). Oceanique did not completely fail to preserve and present evidence. Oceanique provided:

1. photographic evidence of Knauf drywall in the Oceanique property;

2. samples of Knauf drywall and related items that Oceanique did preserve that Knauf nor the Special Master have bothered to inspect despite its availability;

1

3. affidavits from Oceanique's employees and subcontractors on the repair/remediation project regarding the overwhelming presence of Knauf drywall;

4. Banner Port St. Lucie's sale of thousands of sheets of drywall to Oceanique when Banner Port St. Lucie did not have record of receiving any Taishan drywall;[1]

5. Banner Port St. Lucie's sale of thousands of sheets of drywall to Oceanique between February 2006 and September 2006 when Banner Port St. Lucie admitted it was selling Knauf's drywall during that time[2]; and,

6. the Banner Settlement Allocation Plan (Rec. Doc. 16527-1) where Knauf insisted on recovering a minimum of 60% the Banner monies' allocation.

Given the aforementioned evidence, it is not "impossible" to determine a KPT percentage of drywall in the property. The Special Master failed to give appropriate weight to the fact that the only supplier of drywall to Oceanique, Banner Port St. Lucie, never reported receiving any Taishan drywall. There was also record evidence that KPT drywall was in the property, via the pictures and affidavits submitted.

Knauf's attack on Oceanique's affidavits is disingenuous. Oceanique's affidavits do not state that "only" KPT drywall was found in the property. (Rec. Doc. 19061 at 3). In each affidavit the affiant observed "<u>numerous sheets of drywall being removed</u> and all of the drywall sheets contained the distinctive Knauf-Tianjin markings on the reverse side of the drywall…". (Rec. Doc. 19023 at Ex. I, paragraph 16 of each affidavit). The affiants did not swear to seeing all of the drywall come out of each unit. As is typical in this case, Knauf has overreached in its argument.

---

[1] Fifty-two pages of Banner invoices were provided.
[2] (Rec. Doc. 19023 at Ex. E).

2

Knauf raised eight points in response to Oceanique's Motion and Objection (Rec. Doc. 19061 at 3-6). Oceanique will address each in turn:

1. Knauf stated that no evidence of KPT drywall in the property was submitted other than the photographs. Knauf is wrong because:

    a. Affidavits were provided;

    b. Banner Port St. Lucie's DPF was provided showing that it only had KPT drywall to distribute. Oceanique provided the other Banner entities' DPFs showing which Banner entities had Taishan drywall. Oceanique only bought from Banner Port St. Lucie. Fifty-two pages of invoices of Banner Port St. Lucie drywall were provided. Simply put, Banner Port St. Lucie did not have KPT drywall to distribute.

2. Knauf argues that PTO 1 requires the preservation of drywall. Knauf is wrong, it does not. Nowhere in PTO 1 is drywall mentioned. The Court knew how to say "drywall" when it said "drywall" in PTO 1B, but "drywall" is conspicuously absent in PTO 1. To say PTO 1 required the preservation of drywall flies in the face of the plain language of PTO 1.

3. Knauf argues that Oceanique's remediation beginning before PTO 1B was entered is a "red herring." Knauf is wrong. Oceanique provided proof that the demolition occurred before PTO 1B entered was in its submission to Knauf, the Special Master and the Court. (Rec. Doc. 19023 at Ex. J). The point that was lost on Knauf and the Special Master was that PTO 1B was not in affect at the time of the demolition and Oceanique; therefore, Oceanique could not have complied with PTO 1B because it had no way of knowing what the evidence preservation protocol was at the time.

The "red herring" is in two of Knauf's arguments on this same point. First, Knauf states and later cites to two cases that Oceanique "would not be able to sustain a civil action in any jurisdiction" and not be able get to a jury on a "market-share" theory of liability. "Market-share" applies when the product at issue is fungible yet unidentifiable, such as the lead paint in the case cited by Knauf, *Jefferson v. Lead Indus. Ass'n, Inc.,* 106 F.3d 1245 (5th Cir. 1997). Oceanique's claim is not a "market-share" case. Oceanique has proven that KPT drywall was present in the property via photos, affidavits and Banner Port St. Lucie's DPF that had no evidence of Taishan. Oceanique could overcome summary judgment based on the affidavits (testimony at trial), DPFs (if at trial, the testimony) and photos. Oceanique could get to a jury on this claim.

Second, Knauf's argument that the Environ Phase Protocol was "in place" at the time of PTO 1 was entered is nonsensical. Environ's Protocol is not mentioned in PTO 1—aside from the fact that Oceanique was not aware of PTO 1 when it began demolition.

4. As to the drywall Oceanique has on hand, it was offered to the Knauf defendants for inspection. (Rec. Doc. 19023 at Ex. C). Knauf took no action to inspect it.

5. Remarkably, Knauf accuses Oceanique of a "ploy" when Oceanique demonstrated that Banner Port St. Lucie's DPF shows that Banner Port St. Lucie received no Taishan drywall. There is no ploy. But there is record evidence in the form of Banner Port St. Lucie's sworn DPF that it did not receive Taishan drywall. All the Banner entities as shown by Oceanique's submission of the Banner DPFs distinguished KPT drywall versus Taishan drywall they received. Oceanique did not conceal the fact that

4

there was Taishan drywall in its property and for that reason has suggested a reduction in its award consistent with the Section IV(D)(4) of the ARH Protocol.

6. Knauf makes a myriad of baseless assumptions when criticizing Oceanique's affidavits. Oceanique does not make contradictory statements in its affidavits. What is contradictory about a conscientious builder acting quickly to mitigate its damages, satisfy angry buyers and trying to assuage future buyers? Oceanique was under tremendous pressure to remediate the units. Oceanique provided numerous complaints from owners in its submission to Knauf, the Special Master and the Court to show the pressure it was under. (Documents Bates labeled "Oceanique Development Co" 11-92 and provided to the Court and Knauf via flash drive, see Notice of Filing (Rec. Doc. 19026). Oceanique did not retain counsel until December 2009, after the KPT drywall was disposed. But none of the principals of Oceanique are lawyers. For Knauf to contend that because Oceanique kept good records of remediation imputes knowledge to Oceanique to comply with PTO 1B that was not yet in effect is a non-sequitur. Oceanique did maintain meticulous records of its repair and remediation costs, as good businesspeople and should not be penalized as a result.

7. For the first time Knauf seeks to dispute Oceanique's claimed damages. The Court only needs to review Knauf's position papers to see that Oceanique's claimed damages went undisputed by Knauf. Oceanique repeatedly stated that its damages were reasonable and provided full proof of damages. Knauf took an "all or nothing" approach to the claim and did not dispute Oceanique's proof of damages or the claimed amount at any stage. The real reason Knauf did not dispute Oceanique's

5

claimed damages is because they were patently reasonable and commensurate with Knauf's own contractor.

8. As set forth in paragraph 3, *supra*, Oceanique's claim is not based on market-share principles, but rather already stated proof that KPT drywall was present in Oceanique.

## II. Oceanique requests that the Court deem its Objection and Motion timely filed, nunc pro tunc.

Knauf is correct to recede from its argument that Section 4.2.9 of the Knauf Class Settlement Agreement governs this claim. Section 4.3.7.1 of the Knauf Class Settlement Agreement refers owners of Already Remediated properties, like Oceanique, to resolve its claims "as provided in the Already Remediated Homes Protocol." (Rec. Doc. 16047-3, p. 20 of 83). Knauf is also correct that in the event of an unsuccessful mediation those submissions were to be made to the Court within 20 business days under Section IV(C)1 of the ARH protocol. The ARH Protocol Section IV(C)1 states: "In the event the Mediation is unsuccessful, within 20 business days, **the parties shall each** make a written submission to the Court with respect to the Remediation Claims." (Rec. Doc. 12061-6)(e.s.). "The parties" means Oceanique and Knauf. Knauf fails to point out that it did not submit anything to the Court within 20 business days of the unsuccessful mediation and also violated the ARH Protocol. Knauf cannot equitably argue that Oceanique violated the ARH Protocol while Knauf did the same.

What Knauf fails to advise the Court is that the Special Master made a good faith attempt to continue to resolve the case after the parties met for mediation on March 12, 2015. Knauf's offer remained open until April 7, 2015 when Oceanique advised Special Master Balhoff and Knauf that Knauf's offer was rejected. Ex. A, attached hereto. That same day, Special Master Balhoff advised the parties he would prepare an opinion and decree that he would circulate it among the parties and invited appeal to this Court stating, "I believe that anyone who is

6

dissatisfied with the result can ask Judge Fallon to review it." *Id.* The Special Master also advised the parties at the mediation that if the mediation was unsuccessful he would be preparing an Opinion and Decree. Oceanique, and Knauf if it were operating in full candor, awaited Special Master Balhoff's decree because until that point there was nothing to appeal. It was not until Special Master Balhoff issued his decree on May 11, 2015 that there was anything for Oceanique to object to and seek review. Oceanique acted timely after the Opinion and Decree, as admitted by Knauf, and filed its Objection and Motion to the Opinion and Decree eighteen business days after the Opinion and Decree was issued by Special Master Balhoff, within the 20 day requirement of the ARH Protocol.

     In summary, the ARH Protocol governs this claim. Neither party complied with the ARH Protocol and made a submission after the unsuccessful mediation when Oceanique rejected Knauf's offer on April 7, 2015. The real reason for the parties failing to file anything after the unsuccessful mediation was that both parties were advised by Special Master Balhoff that he would be issuing an Opinion and Decree from which either party could appeal to this Court. It made no sense to file anything with the Court in a vacuum, not knowing what the Special Master's Opinion and Decree would find and it would have been a waste of the parties' resources and judicial resources. Oceanique acted within the spirit of the ARH Protocol and filed its Objection and Motion relating to the Opinion and Decree within 20 business days. Oceanique apologizes to the Court for not having strictly complied with the ARH Protocol by not filing papers within 20 business days after the mediation concluded. Oceanique respectfully requests that in light of the unique circumstances of the claim and also Knauf's violation by not timely filing papers within 20 business days, that Oceanique's Objection and Motion (Rec. Doc. 19023)

7

be deemed timely filed by the Court so that the substantive matters of this claim are considered by the Court.

## Conclusion

Oceanique did not strictly comply with PTO 1B; however, the failure to strictly comply with PTO 1B does not prejudice or prevent the Court from determining the amount of KPT drywall in the property based on the affidavits, photos, the Banner entities DPFs, Banner Port St. Lucie invoices and Knauf's own admission of how much Taishan drywall Banner had when Knauf insisted on recovering a minimum of 60% the Banner monies' allocation in the Banner Settlement Allocation Plan (Rec. Doc. 16527-1). Oceanique has asked the Court to consider the equities and practical realities of the claim: a) Oceanique's failure to strictly comply with PTO 1B was due to it not even being in affect when Oceanique did its repair and remediation; b) Oceanique acted promptly and mitigated its damages when faced with the Chinese drywall disaster; c) Oceanique did not have a lawsuit in mind when it began its demolition of the KPT drywall, and it was not for another 6 months that it retained counsel and the evidence was mostly gone; d) Oceanique is not arguing a "market-share" theory of liability, rather, there is real proof of KPT drywall in the property that would overcome a summary judgment and be weighed by a jury; e) Oceanique's damages are well documented, were never disputed, and at $3,180,499.28 work out to $31.80 per square foot, substantially less than Knauf's own contractor, Moss whose per square foot price is $50.00-$55.00 per square foot; and f) finally, Oceanique realizes it did not strictly comply with PTO 1B and taking into the account the language of the settlement that a **reduction** may be applied, requests a 40% reduction for an award of $1,908,299.57. For the aforementioned reasons, Oceanique requests that its Objection to the Special Master's Opinion & Decree should be sustained and an award entered for Oceanique in the amount of $1,908,299.57.

Respectfully submitted,

/s/  Ervin Gonzalez
ERVIN A. GONZALEZ
Fla. Bar No. 500720
Ervin@colson.com
PATRICK S. MONTOYA
Fla. Bar No. 524441
Patrick@colson.com
COLSON HICKS EIDSON COLSON
MATTHEWS MARTINEZ GONZALEZ
KALBAC & KANE
255 Alhambra Circle, PH
Coral Gables, FL   33134
Phone: (305) 476-7400
Fax:    (305) 476-7444
*Counsel for Oceanique*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 16th day of June 2015.

/s/  Ervin Gonzalez