**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 20147 SECTION: L |
| THIS DOCUMENT APPLIES TO ALL CASES | JUDGE FALLON MAG. JUDGE WILKINSON |

**AMENDED SECOND SUPPLEMENT TO THE PLAINTIFFS' STEERING
COMMITTEE'S MOTION TO COMPEL PRODUCTION OF 30(b)(6)
WITNESSES AND PRODUCTION OF RESPONSIVE DOCUMENTS**

I.     **INTRODUCTION**

The Plaintiffs' Steering Committee ("PSC") has filed a motion to compel Taishan

Gypsum Co., Ltd. ("Taishan") to produce (i) proper and adequate Rule 30(b)(6) witness(es) for

deposition in New Orleans, Louisiana in compliance with the Court's March 17, 2015 Minute

Entry and Orders [Rec. Doc. No. 18493] and (ii) responsive documents in English and Chinese

as ordered by the Court [Rec. Doc. No. 18925].  *See* Rec. Doc. Nos. 19087 and 19084,

respectively.

On March 19, 2015, the PSC requested that Taishan produce its Chairman and General

Manager Jia Tongchun for deposition [Rec. Doc. No. 18502], because he has held those

positions in the Company since 2002 and he also was a Director of BNBM from 2008-2012.

Unfortunately, Counsel for Taishan reported that Jia Tongchun had a heart condition and was

unable to travel to the United States.  As a replacement, Taishan produced one of its salesmen,

Che Gang, who has proven to be completely inadequate and unacceptable as Taishan's 30(b)(6)

witness.  Not only has Che Gang never served as a director or executive of the company, but he

was unable and/or unwilling to answer the vast majority of the pertinent questions asked of him

within the scope of this deposition.

In particular, Che Gang was unaware of the composition of Taishan's Board of Directors, other than for the year 2014, and he did not know anything about any Taishan subsidiaries or affiliates.  Similarly, he was not familiar with any facts surrounding the Contempt Order of the Court dated July 17, 2014, other than what he learned from Chairman Jia.  Most incredibly, though, Che Gang purported to know nothing about any sales or shipments of Taishan's drywall to the United States.  *See*, *e.g.*, Che Gang Transcript dated 6/2-4/2015 ("Che Gang Tr.") at 26:15-18 ("Q:  You are aware that in 2006 and 2007, Taishan was shipping to the United States of America drywall manufactured by Taishan; isn't that true?  A:  I'm not sure."); Che Gang Tr. at 121:4-6 ("I cannot confirm what were the gypsum boards that were shipped to United States").[1]

What makes this testimony so unbelievable is the fact that Che Gang has worked for Taishan and its wholly-owned subsidiary Taian Taishan Plasterboard Co., Ltd. ("TTP") continuously for the past 14 years <u>as a salesman</u>.  He started at Taishan in sales in 2001, he moved over to the foreign sales department of TTP in 2007, and then returned to Taishan in 2008, where he continues to date as the Manager of Taishan's Foreign Trade Department.  In fact, while Che Gang was a sales representative for both Taishan and TTP, these companies shipped more than $85.99 million square feet of their defective Chinese Drywall to customers in the United States from 2005-2008,[2] and during that period Che Gang (also known by his self-chosen American name Bill Cher and Bill Che) kept in close, often daily, contact with Taishan's sole and exclusive U.S. sales agent – Oriental Trading Co. ("OTC").[3]  There is substantial

---

[1] The deposition transcripts for Taishan have been filed with the Court under seal at Rec. Doc. Nos. 19087-2 (6/2/2015), 19087-4 (6/3/2015), and 19094-4 (6/4/2015).

[2] Chart summarizing Taishan's sales of drywall in the United States, by State (Herman Affidavit dated 5/7/2012 ("Herman Aff.") Ex. "1" [filed manually on 5/8/2012].

[3] Deposition of Ivan Gonima dated 12/13/2011 at 13:10-13 (Herman Aff. Ex. "9"); Articles of Organization for Florida Limited Liability Company Oriental Trading

evidence that Che Gang initiated and exchanged hundreds of instant messages and emails in English with OTC about the price of Taishan's and TTP's drywall and other matters related to the promotion and sales of their drywall in the U.S.[4]

Yet, somehow he knows nothing about drywall shipments to the U.S., because, according to him, they shipped "FOB Chinese port."  Che Gang Tr. at 27:1-3 ("I'm not sure whether it [TTP's drywall] eventually arrived in the United States or not.").  This testimony flies in the face of Taishan's and TTP's admission before this Court that "TTP made a few isolated sales of drywall *in China* to two companies that advised TTP they intended to ship the drywall they purchased to Louisiana."  *See* Memorandum of Defendants Taishan Gypsum Co. Ltd. and Taian Taishan Plasterboard Co., Ltd. in Support of Their Motion Pursuant to Rule 12(B)(2) to Dismiss the Complaint [Rec. Doc. No. 13590-1] at 1 (emphasis added) (italics in original).

The witness' professed lack of knowledge of anything relevant, and his failure to cooperate and provide truthful answers at his deposition, combined with many dozens of evasive and canned responses, requires that Taishan produce a proper 30(b)(6) witness or witnesses to answer Plaintiffs' questions after a complete and proper document production has been made by the Company.  In addition, Taishan should also be ordered to bring Che Gang back to New Orleans to participate in meaningful discovery at a continuation of his deposition, which was left open by the PSC.  Taishan's 30(b)(6) witness(es) must be knowledgeable about this litigation and the facts underlying the claims in the Chinese Drywall suits, Taishan's withdrawal from the

---

Company, LLC (Ex. 7 to Deposition of Ivan Gonima dated 2/14/2012) (Herman Aff. Ex. "26").

[4] *See*, *e.g.*, Instant message discussions from 2/6/2007 to 10/11/2007 between Che Gang (Bill Cher) of Taishan and Ivan Gonima of OTC (Ex. 2 to Deposition of Ivan Gonima dated 2/14/2012) (Herman Aff. Ex. "27"); Instant message discussions from 12/8/2007 to 12/9/2007 between Che Gang (Bill Cher) and Ivan Gonima (Ex. 3 to Deposition of Ivan Gonima dated 2/14/2012) (Herman Aff. Ex. "21").

litigation, the July 17, 2014 Contempt Order and Injunction, whether Taishan and any of its affiliates or subsidiaries violated the injunction, etc.

Further, because Taishan has admitted that its document productions are incomplete and inadequate because the Company has not provided its documents in English, in violation of the Court's ruling that translations be provided to Plaintiffs' counsel, and because the financial documents have not been provided, a complete document production must be made by Taishan before depositions are resumed, which will require discovery to continue after June 9, 2015. In particular, Taishan has not produced (i) translated versions of the Bank Loans held by Taishan between the years 2010-2015, which were provided to the PSC in Chinese only in Taishan's Volume 1 production; (ii) any custodial file for members of Taishan's Board of Directors; (iii) ESI files of Chairman Jia Tongchun, Mr. Peng Wenlong, or Mr. Che Gang; and (iv) any information related to the leases held by Taishan for the specific purpose of manufacturing drywall.

In addition, Gang Che testified that he took notes on the documents he reviewed while preparing for his deposition. *See* Che Gang Tr. at 319:20-324:2. Following this testimony, the PSC requested that Taishan either produce these notes or create a privilege log asserting all grounds for withholding the notes. *Id*. at 324:3-10. Taishan should be ordered to either produce Che Gang's notes or submit a privilege log on or before June 19, 2015.

## II.   FACTUAL BACKGROUND

### A.   Taishan Gypsum Company, Ltd. Needs to Produce Proper 30(b)(6) Witness(es).

On and between June 2 through June 4, 2015, Che Gang appeared as a 30(b)(6) witness for Taishan. Unfortunately, he proved wholly inadequate as a corporate representative; he lacked information sought as described in the Notice of Deposition, he was purposefully evasive,

disingenuous, and overly coached, and he relied extensively on facts learned through hearsay from others.  For these reasons, the PSC is seeking an Order requiring Taishan to produce an adequate 30(b)(6) witness or witnesses in this matter.

On June 2, 2015, the witness was questioned about his knowledge related to various board members and executives of Taishan Gypsum and Taishan Gypsum's affiliates.  Aside from General Manager and Chairman Jia Tongchun, the witness answered with a resounding "I don't know" when asked whether certain persons held board or executive positions.  *See* Che Gang Tr. at 72:14-102:15.  Further, the witness consistently responded "I don't know" to all questions related to affiliate and subsidiary companies of Taishan.  *See* Che Gang Tr. at 124:16-145:19. The "I don't know"s continued well into days two and three of the deposition, totaling almost 100, exclusive of the witness' much more artfully styled, paragraph-long, near-verbatim recitations that also amounted to "I don't know" answers.

### 1.     Che Gang Purports to Lack the Information Necessary to Testify on Taishan's Behalf.

Mr. Che Gang could not fully or adequately answer questions related to any of the issues relevant to the Schedule A attached to the notice of deposition (Rec. Doc. No. 19007).  The Court ordered Taishan to offer and produce a competent 30(b)(6) witness to testify over issues related to the Contempt Order of July 17, 2014, including business conducted by affiliate entities.  When questioned over any issue listed in Schedule A, Che Gang replied that he either "did not know" or "could not recall" due to the volume of documents reviewed, or he did not know "because [he was] a witness for Taishan."  Additionally, Che Gang repeatedly directed counsel to "[p]lease check the commercial registration form that Taishan had provided," in lieu of offering a substantive response.  As a matter of fact, and attached hereto as Exhibits 1-3, the deponent offered a simple "I don't know" 98 times (Exhibit 1), the deponent could not recall

information due to the many documents he reviewed more than 25 times (Exhibit 2), and 24

times Che Gang answered that liaison counsel could refer to Taishan's Commercial Registration

Form (Exhibit 3).  None of this is acceptable, and Taishan should be ordered to produce adequate

and proper witness(es) in compliance with Rule 30(b)(6).

<strong>2.      Che Gang's Answers Were Evasiveness and/or Consisted of<br>Memorized, Canned Responses.</strong>

Taishan's corporate representative Che Gang purposefully skirted questions by offering

speeches that not only took up time, but also failed to answer specific questions.  For example,

Mr. Che Gang chose to repeatedly recite, "while I was prepping for my testimony as Taishan

Company's representative, under the instruction, advice and supervision of Taishan's attorneys,

we have provided and reviewed a large amount of documents related to Taishan."  Che Gang Tr.

at 331:2-10.  The witness repeated this paragraph or versions virtually identical to it 28 times.  In

fact, mid-day on June 3, 2015, Plaintiffs' Liaison Counsel advised Taishan's counsel of the

following, "we will not finish his deposition by tomorrow and he will have to come back at a

future date because he gives speeches instead of just saying he doesn't recall."  *See* Che Gang Tr.

at 247:20-24.  Nonetheless, the witness continued to respond in kind to many questions asked of

him at his deposition.

<strong>3.      Che Gang's Knowledge Was Not His Own.</strong>

Taishan offered Che Gang as a corporate representative, yet, he testified multiple times

that he learned information and testimony from directors of Taishan Gypsum, namely Taishan

Chairman and General Manager, Jia Tongchun. Mr. Che specifically identified that he

"confirmed" emails and facts with Chairman Jia as part of his deposition preparation. *See* Che

Gang Tr. at 186:23-189:16. Additionally, Che Gang revealed that Taishan Board Member, Mr.

Zhang, provided information related to Taishan Gypsum's decision to withdraw from the United

6

States litigation. Che Gang Tr. at 194:13-21. The responses given by Che Gang were not iterations of the information learned from Chairman Jia or Board Member Zhang, rather, the responses were iterations of the non-present Taishan employees' opinions over the fairness of the *Germano* default and the subsequent United States Fifth Circuit rulings. Neither Mr. Jia Tongchun, nor Mr. Zhang, was present in the courtroom or offered as witnesses by Taishan Gypsum, causing cross examination of either witness impossible.

Overall, the testimony offered by Taishan's 30(b)(6) witness provided the PSC with little new information related to this Honorable Court's Contempt Order entered July 17, 2014.  There is no doubt that Taishan employs a more knowledgeable witness or witnesses.  In fact, the witness produced did not know the answer to over 150 of the questions asked by counsel.  *See* Exhibits 1-3.  In the event the Court agrees that Taishan must re-offer and reproduce a 30(b)(6) corporate representative, the PSC strongly suggests that a knowledgeable 30(b)(6) witness must be produced by Taishan as compared to a witness who either does not know the answer to the questions or does not have a clear recollection of the documents reviewed.  Based on the legal analysis set forth below, Taishan Gypsum Company, Ltd. should be compelled to produce a knowledgeable corporate representative in the United States who can testify to matters related to the instant litigation.

**III.**   **ARGUMENT**

    **A.**   **Rule 30(b)(6) Requires that Taishan Produce a Witness or Witnesses Who Can Answer Fully, Completely, and Unevasively, the Questions Posed as to the Relevant Subject Matters.**

Courts and legal scholars uniformly have recognized that "Rule 30(b)(6) is designed 'to avoid the possibility that several officers and managing agents might be deposed in turn, with each disclaiming personal knowledge of facts that are clearly known to persons within the

organization and thus to the organization itself.'"  *See Brazos River Authority v. GE Ionics, Inc.*,

469 F.3d 416, 432-33 (5th Cir. 2006) (quoting 8A Charles A. Wright, Arthur R. Miller &

Richard L. Marcus, FEDERAL PRACTICE AND PROCEDURE § 2103, at 33 (2d ed.1994)); *see also*

*Mike Hooks Dredging Co., Inc. v. Eckstein Marine Service, Inc.*, 2011 WL 2559821, *1-2 (E.D.

La. Jun. 28, 2011).  Accordingly, governing jurisprudence requires that "the deponent must make

a conscientious good-faith endeavor to designate the persons having knowledge of the matters

sought by [the party noticing the deposition] and to *prepare* those persons in order that they can

answer <u>fully, completely, unevasively</u>, the questions posed ... as to the relevant subject matters."

*Brazos*, 469 F.3d at 433 (emphasis added) (italics and brackets in original) (internal quotations

omitted).  As the Fifth Circuit instructed:

> "[T]he duty to present and prepare a Rule 30(b)(6) designee goes
> beyond matters personally known to that designee or to matters in
> which that designee was personally involved."  The deponent must
> prepare the designee to the extent matters are reasonably available,
> whether from documents, past employees, or other sources.

*Id.*

The reason for this rule is that "[o]bviously it is not literally possible to take the

deposition of a corporation; instead, ... the information sought must be obtained from natural

persons who can speak for the corporation."  8A WRIGHT, MILLER & MARCUS, § 2103, at 36–37.

Therefore, "a rule 30(b)(6) designee does not give his personal opinions, but presents the

corporation's 'position' on the topic."  *Brazos*, 469 F.3d at 433 (quoting *United States v. Taylor*,

166 F.R.D. 356, 361 (M.D.N.C. 1996)); *see also Cutting Underwater Technologies USA, Inc. v.

Con-Dive, LLC*, 2011 WL 1103679, *4 (E.D. La. Mar. 22, 2011) (Fallon, J.).  The Fifth Circuit

has held that:

> When a corporation produces an employee pursuant to a rule
> 30(b)(6) notice, it represents that the employee has the authority to

> speak on behalf of the corporation with respect to the areas within the notice of deposition. This extends not only to facts, but also to subjective beliefs and opinions. <u>If it becomes obvious that the deposition representative designated by the corporation is deficient, the corporation is obligated to provide a substitute.</u>

*Id*. (emphasis added) (citing *Resolution Trust Corp. v. Southern Union Co., Inc.*, 985 F.2d 196, 197 (5th Cir. 1993) ("When a corporation or association designates a person to testify on its behalf, the corporation appears vicariously through that agent.")).

In accordance with these principles, the Court ruled as follows in *Brazos*:

> We agree with BRA [Brazos River Authority] that [Defendant] Cajun violated rule 30(b)(6) by failing to prepare [its witness] Grigsby with respect to issues that although not within his personal knowledge, were within the corporate knowledge of the organization, such as whether BRA had presented a warranty claim to Cajun. At the very least, Cajun could have designated another witness with personal or corporate knowledge of the questions asked.

*Brazos*, 469 F.3d at 433.

As the Court explained, "[i]f the designated "agent is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all." *Id*. (quoting *Resolution Trust*, 985 F.2d at 197). In *Resolution Trust*, the Fifth Circuit "affirmed sanctions against a party that possessed documents that plainly identified a witness as having personal knowledge of the subject of the deposition but did not furnish those documents or designate the witness until after it had designated two other witnesses with no personal knowledge." *See Brazos*, 469 F.3d at 433-34; *see also Mike Hooks*, 2011 WL 2559821, *3 (awarding costs and fees incurred in deposing 30(b)(6) witness where violations of the Rule occurred).

9

In light of the numerous problems experienced at the deposition of Taishan's designated 30(b)(6) witness Che Gang, Taishan should be ordered to produce a witness or witnesses who are able and willing to testify forthrightly on behalf of the Company with regard to the issues proposed for this track of discovery.  In addition, Che Gang should return to New Orleans to complete his deposition after a complete and thorough document production has been made by Taishan, and Che Gang is instructed he must answer Plaintiffs' questions completely and in good faith.

**B.     Plaintiffs Are Entitled to Know the Categories of Documents Reviewed by Che Gang in Preparation for his Deposition**

Documents reviewed by a witness in preparation for a deposition generally are protected by the work-product privilege.  *See Hanover Ins. Co. v. Plaquemines Parish Gov't*, 304 F.R.D. 494, 500 (E.D. La. 2015) (citing *Burns v. Exxon Corp.*, 158 F.3d 336, 343 (5th Cir.1998)). However, when a witness uses such documents to refresh his or her memory prior to testifying, such documents may be subject to disclosure under Federal Rule of Evidence 612, "if the court decides that justice [so] requires."  *Id*.  In this case, Che Gang testified that he reviewed a large number of documents in preparation for his deposition, since he was otherwise unprepared to testify on behalf of the Company due to his lack of knowledge on many of the subjects at issue. Unfortunately, Che Gang also testified that the number of documents he reviewed was so large that he was unable to answer most of Plaintiffs' questions.  Under these circumstances, and given Che Gang's evasiveness, it is important to know the categories of documents that Che Gang reviewed.  Taishan's counsel objected numerous times to Plaintiffs' request for this information. Accordingly, the PSC is seeking an Order requiring Che Gang to testify about the documents in reviewed in preparation for his deposition.

C.     **Plaintiffs Are Entitled to the Notes Taken by Che Gang in Preparation for his Deposition**

This Court previously rejected an assertion of privilege with respect to the notes of one of the objectors to the Chinese Drywall settlements.  The objector in question, Saul Soto, was represented by professional objector Christopher Bandas.  Mr. Soto had taken notes during his consultation with counsel and had used the notes to refresh his recollection prior to giving testimony.  The Court ultimately reviewed the materials in question and determined the assertion of privilege by Mr. Soto was improper.  *See* Order Dated November 7, 2012 (Rec. Doc. No. 16127).  In so ruling, this Court recognized that the Fifth Circuit applies a balancing test for purposes of determining whether a deponent's notes from a meeting with counsel must be produced under Federal Rule of Evidence 612 when the deponent either reviews the notes while testifying or reviews the notes prior to testifying for purposes of refreshing his or her memory. *Id*. at 3.  In *Woodward v. Avondale Indus., Inc.*, 2000 WL 385513 (E.D. La. Apr. 14, 2000), the court outlined factors that should be considered in balancing the assertion of the attorney-client and work-product privileges against the interest in obtaining testimony under Rule 612:

> Factors suggesting that the balance should be struck in favor of adverse-party rights are the inability of the adverse party to obtain access to the matters revealed by the writing through means other than production of the writing, the absence of opinion work product, discrepancies between a witness's testimony and the contents of the writing used to refresh, heavy reliance on a particular document by the witness, testimony that is especially important, disclosure of a significant part of the writing in the witness's testimony, and evidence that witness coaching may have occurred.

*Id*. at 2.

In weighing the competing interests outlined in *Woodward*, this Court determined the production of the materials in question was appropriate since the information in question was highly probative and could not be obtained from another source. *See* Order Dated November 7, 2012 at 3.

This Court has previously rejected an assertion of privilege with respect to one of the objectors to the Chinese Drywall settlements. The objector in question, Saul Soto, was represented by professional objector Christopher Bandas. Mr. Soto had taken notes during his consultation with counsel and had used the notes to refresh his recollection prior to giving testimony. The Court ultimately reviewed the materials in question and determined the assertion of privilege by Mr. Soto was improper. *See* Order Dated November 7, 2012 (Rec. Doc. No. 16127).

Because Che Gang was so evasive in his answers at his deposition, Plaintiffs requested Taishan's counsel to either produce the notes Che Gang relied upon to prepare himself for his deposition, or produce a privilege log setting forth the reasons those notes are being withheld, so this Court may ascertain whether Plaintiffs are entitled to those notes.

III.   **CONCLUSION**

Wherefore, for the reasons set forth above, as well as those in the PSC's motion to compel and supplement to its motion to compel, the PSC respectfully requests that the Court enter an Order requiring Taishan to produce an adequate 30(b)(6) witness or witnesses to testify appropriately and responsively about the matters at issue and also that Taishan provide complete, adequate, and responsive document productions with English translations so that the deposition of Taishan may be more fruitful.

Respectfully submitted,

Dated:  June 17, 2015

/s/ Russ M. Herman
**Russ M. Herman** (Bar No. 6819) (on the Brief)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
Jennifer Greene (Bar No. 30899)
**HERMAN, HERMAN & KATZ, LLC**
820 O'Keefe Avenue
New Orleans, LA  70113
Phone:  (504) 581-4892
Fax:  (504) 561-6024
ldavis@hhklawfirm.com
***Plaintiffs' Liaison Counsel***
***MDL 2047***


Arnold Levin (on the Brief)
Fred S. Longer (on the Brief)
Sandra L. Duggan (on the Brief)
Matthew C. Gaughan (on the Brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone:  (215) 592-1500
Fax:  (215) 592-4663
Alevin@lfsblaw.com
***Plaintiffs' Lead Counsel***
***MDL 2047***

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com


Daniel E. Becnel, Jr.
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com


Peter Prieto
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com


Bruce William Steckler
Steckler, LLP
12720 Hillcrest Road, Ste 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-404
bruce@stecklerlaw.com


Ervin A. Gonzalez
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
ervin@colson.com


Jerrold Seth Parker
Parker Waichman, LLP
27300 Riverview Center Blvd.
Suite 103
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com


Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com


James Robert Reeves
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@attorneys4people.com


Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com


Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

Gerald E. Meunier
Rachel Sternlieb (on the Brief)
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr., Esquire
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Anthony D. Irpino
Pearl Robertson (on the Brief)
IRPINO LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, and upon counsel for Taishan Gypsum Co., Ltd., Bernard Taylor, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 17th day of June, 2015.

Respectfully Submitted,

BY:  */s/ Leonard A. Davis*
Leonard A. Davis
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
ldavis@hhklawfirm.com

*Plaintiffs' Liaison Counsel*
*MDL 2047*

16