UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047**<br>**SECTION: L**<br>**JUDGE FALLON**<br>**MAG. JUDGE WILKINSON** |
| **THIS DOCUMENT RELATES TO:**<br><br>*ALL CASES* | |

**BNBM ENTITIES' RESPONSE IN OPPOSITION TO PSC'S EMERGENCY MOTION TO COMPEL DISCOVERY**

Beijing New Building Materials Public Limited Company ("BNBM PLC") and Beijing New Building Material (Group) Co., Ltd. ("BNBM Group," together the "BNBM Entities") respectfully submit[1] this Response in Opposition to the Plaintiffs' Steering Committee's ("PSC") Emergency Motion to Compel Discovery Directed to, among others, BNBM PLC and BNBM Group [Rec. Doc. 19134-2]. For the reasons set forth below, the Motion should be denied.

**ARGUMENT**

This Motion is unwarranted and premature--the PSC filed this Motion before any attempt to meet and confer with Defendants as required by Fed. R. Civ. P. 37(a)(1) and as encouraged by this Court[2] and after the BNBM Entities have put forth an extensive good faith effort to produce discovery on an expedited basis. Such criticism of the BNBM Entities' discovery is especially surprising given the PSC's repeated acknowledgement that the BNBM Entities have been

---

[1] Reassertion of Objection to Personal Jurisdiction: On March 4, 2015, the BNBM Entities formally appeared in the above-captioned actions, through Notices of Appearance that specifically raised and preserved defenses relating to, inter alia, lack of personal jurisdiction. As the BNBM Entities have done with each prior submission, they raise the issue of personal jurisdiction at the outset of this Response in Opposition to the Plaintiffs' Steering Committee's Emergency Motion to Compel Discovery both to preserve the BNBM Entities' legal rights to assert this fundamental defense, and also because the absence of personal jurisdiction vitiates the need for the broad-scale discovery Plaintiffs are seeking.

[2] In its May 7, 2015 Minute Entry, the Court stated: "the Court explained that the parties needed to communicate with each other and attempt to work out issues together before bringing them to the attention of the Court." (Rec. Doc. 18925).

1

responsive and timely.  Indeed, the BNBM Entities have made good faith efforts to produce their documents as expeditiously as possible and have provided over **27,000 pages** of documents to date.  No doubt and to no one's surprise, the plaintiffs may need further information to understand some of the documents, and there may even be technical issues associated with producing such a large volume of documents so quickly.  But these issues, and the PSC's complaint regarding machine translations and document organization, are the very types of discovery issues most appropriate to present in a meet and confer; they should not be raised for the first time in an inaccurately styled "emergency motion."  Instead, the parties should discuss the process of machine translating thousands of documents, and the options for addressing the issues raised.  Nonetheless, the PSC did not attempt to work out any of these issues with the BNBM Entities; it chose to run to the Court to complain once again about discovery.  Plaintiffs' Motion should be summarily denied for their failure to meet and confer.

      The PSC first complains that the English translations do not match the original Chinese document, providing examples of Chinese documents that do not correspond in length to the English translation.  But an English language translation of a Chinese language document will not correspond page-for-page or bates-range-to-bates-range because of fundamental differences between the Chinese and English languages; one Chinese character does not equate perfectly to one English character.  Therefore, a Chinese document with a specific bates range may equate to a different length in English, with a different page count.  But what corresponds, simply enough, is the bates number of the first page of the Chinese document (as the PSC itself demonstrates on pages 7 and 8 of its Motion).[3]

---

[3] Moreover, the PSC's attempt to compare document lengths fails to account for information that appears in the extracted text of an email but does not appear in the image of the email as it appears on a computer screen when the email is "rendered" by an E-mail application like Outlook or G-Mail.  PSC exhibit H is a good example.  One reason why the translation is longer than the original Chinese language document is that the "Internet Header," which

The thrust of the PSC's complaints about the BNBM Entities' production is that the machine translations may be difficult to follow.  But that comes as no surprise, and the Court has already addressed this point at the May 7, 2015 status conference and minute entry.  There, the Court recognized the trade-off between the substantial delay that would be required to translate every production document manually, and the manual translation's superior quality, as compared with machine translations.  The Court determined that getting documents into the hands of the plaintiffs as quickly as possible is of greater importance to the class at this point than having robust translations.

At the May 7 hearing, the PSC reported the same dissatisfaction with the machine translations that they present in this Motion: "Also we're finding out that translations are not translations. They are feeding documents through machines and we're getting gibberish."  (May 7, 2015 Hearing Tr. 39:17-40:3.)   The Court recognized that manual translations take many times longer to complete than machine translations.  It stated that from the "standpoint of time, we don't have time to have personal translations of every document." (*Id.*at 42:23-24).  For any documents requiring further translation, the PSC "can employ someone to translate those specific documents." (*Id.* at 43:1-3).   The Court stated, in pertinent part:

> The best you can do is machine translations, and then if the plaintiff needs some additional translations, the plaintiff can employ someone to translate those specific documents. . . I want the defendants to do it.  Do it by machine.  If the plaintiffs want to specifically have somebody look at that particular document because it seems like a really hot document, and you need a better translation, get somebody to do it.

(May 7, 2015 Hearing Tr. 42:25-43:17).

---

contains the "to"  and "from" of the email and gives the computer instructions as to where to deliver the message, is reprinted in the translation. (If the Court looks on page 2 of the exhibit, three lines up from the first indentation, the Court will see the reference to "Internet Header." )  Most of the Internet Header does not appear in the image of an e-mail but is present in the extracted text of an e-mail.  Since the machine translations are run on extracted text (for reasons of speed), the Internet Header, and other information which the PSC calls "gibberish" appears in the translation.

Plaintiffs cannot have it both ways. Because of the time manual translation requires, it is not possible to provide the precision of human translations on the expedited schedule they have demanded. Plaintiffs chose speed (which necessitated machine translation) over precision. Thus, the machine translations that the BNBM Entities provided do not represent an effort to thwart discovery; quite the contrary they represent the BNBM Entities' good faith effort to comply with this Court's May 7, 2015 order, and to expedite document production as plaintiffs have demanded.

Moreover, the PSC's criticism of the machine translations is over-stated and misleading. There are many examples of documents that are entirely comprehensible, especially for the limited purposes intended (i.e. helping identify potentially important documents for plaintiffs to manually translate). *See, e.g.*, BNBM(Group)-E-0008553_T; BNBMPLC-E-0002636_T (attached as **Exhibits A & B**).

Much of the PSC's criticism of the translations is attributable to their incomplete understanding of what they are looking at. As defendants fully explained in the cover letter accompanying the production of the material the PSC presents as Ex. I through P, "Due to processing issues related to the Chinese origin of these documents, the production contains some "system" files which, in a usual US litigation production of US source documents, would have been excluded from production . . . . Examples include .xml and .bin files. The system files contain no responsive or relevant content. . . . We advise you of the presence of these system files in the production because the system file documents that are presented as images may appear to you to be corrupted. They are not." Attached as **Exhibit C**.[4] The documents listed in

---

[4] The "document" that the PSC claims to have attached at Exhibit I, is not in fact a separate document at all. Instead it consists of a partial set of attachments to a word processing document which is at BNBM(Group)-E-0007655. The aspects of these documents that the PSC now calls "incomprehensible" are extracted "system files"

4

PSC footnote 20 are .bin files of the type defendants described in their letter.  Had the PSC followed Rule 37 and had a meet and confer, the defendants could have helped the PSC understand that most of the documents they complain to this Court about are "system files" of the type described in the cover letter the PSC received.

The BNBM Entities' review and production process supplies additional evidence of their good faith efforts to comply with this Court's orders.  The machine translations were performed by VIA, an internationally recognized third-party provider of translation services, to machine translate the responsive non-privileged documents.  VIA counts many Fortune 500 companies among its clients, including Nike, Google, Starbucks, Cisco and Intel.  *See* "Why VIA?," http://www.viadelivers.com/whyVIA.php# (last visited on June 16, 2015).  In doing so, Grant Thornton, the parties' consulting firm handling e-discovery, delivered to VIA extracted text or OCR of the Chinese documents to be machine translated.  After VIA translates the BNBM Entities' documents, it returns a text file of the English machine translations to Grant Thornton to match the original Chinese document to the English translation.  Once production has been set, Grant Thornton prepares images bearing Bates stamps and other appropriate markings, together with files containing the extracted text of the Chinese documents, the English translations and other information about the documents.  Each individual text file containing machine translation has the beginning bates number as the file name, which identifies to the PSC to which Chinese document the translation file corresponds in the production.  Therefore, even those in the PSC that do not use computerized litigation support can match the translation to the document to which it relates.  Grant Thornton also provides a "load file"[5] in the format specified by the PSC

---

which would ordinarily have been excluded from production, as the BNBM fully explained to the PSC in the letter accompanying their production.

[5] A "load file" is "[a] file that relates to a set of scanned images or electronically processed files and indicates where individual pages or files belong together as documents, to include attachments, and where each document begins and

that tells the PSC member that uses a litigation support computer system which imaged documents correspond to which translations.  At no time have the BNBM Entities or their counsel altered translations or "jumbled" the translations provided to the PSC, as the PSC's brief baselessly seems to suggest (Pls. Br. at 1).

It is well-known that machine translation is not perfect.  The PSC has already explained that to this Court.  The Court chose to require an expedited production of documents in the Chinese language form found in the BNBM Entities' files, with machine translations that everyone knew would be less precise, instead of stretching the production period over many months to permit more precise human translation.

Regardless, the BNBM Entities are willing to discuss each specific problem in a meet and confer with the PSC.  As such, the PSC's Motion should be denied.

---

ends.  A load file may also contain data relevant to the individual documents, such as selected metadata, coded data, and extracted text."  *The Sedona Conference Glossary: E-Discovery & Digital Information Management* (3d Ed. 2010) at 31.  The provision of load files to link these components to the produced document is a best practice in the production of electronically stored information.

## **CONCLUSION**

For the reasons stated above, the PSC's Emergency Motion to Compel Discovery Directed to BNBM PLC and BNBM Group should be denied.

Dated: June 17, 2015

                            Respectfully submitted

                            **DENTONS US LLP**

                            By: */s/ Michael H. Barr*
                            Michael H. Barr
                            New York Bar No. 1744242
                            Justin N. Kattan
                            New York Bar No. 3983905
                            1221 Avenue of the Americas
                            New York, NY 10020-1089
                            Telephone:  (212) 768-6700
                            Facsimile:  (212) 768-6800
                            michael.barr@dentons.com
                            justin.kattan@dentons.com

                            - AND -

                            Richard L. Fenton
                            Illinois Bar No. 3121699
                            Leah R. Bruno
                            Illinois Bar No. 6269469
                            233 South Wacker Drive
                            Suite 7800
                            Chicago, IL  60606-6306
                            Telephone:  (312) 876-8000
                            Facsimile:  (312) 876-7934
                            richard.fenton@dentons.com
                            leah.bruno@dentons.com

C. Michael Moore
Texas Bar No. 14323600
Gene R. Besen
Texas Bar No. 24045491
2000 McKinney Ave, Suite 1900
Dallas, TX  75201
Telephone:  (214) 259-0900
Facsimile:  (214) 259-0910
mike.moore@dentons.com
gene.besen@dentons.com

**- AND -**

**PHELPS DUNBAR LLP**

Harry Rosenberg
Louisiana Bar No. 11465
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130
harry.rosenberg@phelps.com

*Attorneys for Beijing New Building Materials Public Limited Company and Beijing New Building Material (Group) Co., Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing **Response in Opposition to PSC's Emergency Motion to Compel Discovery** has been served on Plaintiffs' Liaison Counsel, Leonard Davis, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 17th day of June, 2015.

/s/     *Michael H. Barr*