UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION "L", MAG. "2" |
| THIS DOCUMENT RELATES TO:<br>*ALL ACTIONS* | JUDGE FALLON<br><br>MAG. JUDGE WILKINSON |

### AFFIDAVIT AND DECLARATION OF SAMI SLIM

I, SAMI SLIM, do appear and declare pursuant to 28 U.S.C. § 1746(2), and based upon my personal knowledge of the facts in this Action and my belief, as follows:

1. I am of full age of majority and am currently domiciled in the State of Florida;

2. I have never been convicted of a felony and I am of sound mind;

3. I owned the property located at 9677 Cinnamon Court, Parkland, FL 33067 (hereinafter referred to as "the subject property");

4. From November 27, 2006 to August 23, 2013, I resided with my family at the subject property as my primary residence;

5. I purchased the subject property on November 27, 2006, from WCI Communities, Inc. (a copy of my original deed is attached as Exhibit "A");

6. I am a party to the *Beane* Omnibus Complaint filed on June 6, 2013, and bearing Docket No. 13-609;

7. My house located at 9677 Cinnamon Court, Parkland, FL 33067 contained Chinese drywall manufactured by the Defendant Knauf Plasterboard (Tianjin), Ltd. ("Knauf") in this action;

1

Exhibit "1"

8. On September 4, 2013, I executed the *Opt In Form for Claimant* electing to be a participant in the *Beane* action settlement with Knauf (see attached Exhibit "B");

9. On April 20, 2011, I entered into a construction contract with AGC General Contractor, Inc. to remediate the Knauf Chinese Drywall from the subject property (see attached Exhibit "C");

10. I personally paid AGC General Contractor, Inc. the sum of $233,856.00 for the remediation of the subject property;

11. I have provided proof of payment of AGC General Contractor, Inc. the sums of $116,000.00 and 117,856.00 on May 5, 2011 and October 27, 2011, respectively (see attached Exhibit "D");

12. Pursuant to PTO 26, on March 6, 2013, I executed a completed *Owner Disclosure Affidavit* signed by the remediation contractor and myself (see attached Exhibit "E");

13. I have attempted to comply with all of the material requirements of PTO 26;

14. I am requesting reimbursement of my remediation costs incurred for the subject property pursuant to PTO 26;

15. At all relevant times, I owned the subject property;

16. Prior to the remediation of the subject property, I attempted to sell the subject property to a third-party;

17. To this end, I entered into a purchase agreement with Mr. Dean Brown;

18. The closing for this purchase agreement was scheduled for February 25, 2011;

19. I executed the sales documents in advance because I was scheduled to be out of the country and unavailable at the time of the closing;

20. In fact, at the time of the closing I was traveling on business in the Middle East;

21. Prior to the actual closing taking place, I was informed that Mr. Dean Brown did not have the funds available to purchase the subject property;

22. I was also advised that the closing would not take place on February 25, 2011;

23. Moreover, I was advised by counsel handling the closing that Mr. Dean Brown had the right to delay the closing to try to obtain the funds from another source;

24. I advised counsel handling the closing that I was not interested in any further delay or having the potential sale of the subject property held up while Mr. Dean Brown attempted to secure funding from other sources absent a guarantee or assurance of funding and definitive closing;

25. Counsel handling the closing advised that I appoint a representative/agent to appear for me at the closing and to perform a back-to-back closing wherein I would maintain all of my rights in the subject property unobstructed or unhindered by Mr. Dean Brown;

26. To facilitate this back-to-back closing, I authorized and appointed Mr. Fadi Metanes, my personal business attorney, to appear at the scheduled closing with Mr. Dean Brown and to permit the transfer of the subject property based on the documents I previously executed and to simultaneously maintain the subject property for me;

27. In order to perfect the back-to-back closing, Mr. Fadi Metanes purchased the property for me from Mr. Dean Brown at the scheduled closing on February 25, 2011;

28. A copy of the back-to-back closing documents between Mr. Dean Brown and myself and between Mr. Dean Brown and Mr. Fadi Metanes, acting for me, are attached as Exhibits "F" and "G", respectively;

29. Any rights, title or interest which Mr. Dean Brown might have had or could have obtained in the subject property were terminated on February 25, 2011;

30. Moreover, any rights, title or interest which Mr. Dean Brown might have acquired in the subject property were never truly established because of the back-to-back closing;

31. Additionally, Mr. Fadi Metanes executed an affidavit wherein he attested that he had no rights or interest in the subject property and that he was acting solely as my agent to protect my interests (see attached Exhibit "H");

32. On November 23, 2011, Mr. Fadi Metanes transferred the subject property to my company SSJB Investment Group, Inc. (see attached Exhibit "I");

33. I am the sole owner of SSJB Investment Group, Inc. (see attached Exhibit "J");

34. I have attempted to obtain an affidavit from Mr. Dean Brown confirming these facts and confirming he does not have any interest or claim in this action or against Knauf;

35. I exchanged multiple communications with Mr. Dean Brown in an effort to get him to execute an affidavit as stated above;

36. In fact, on June 20, 2014, Mr. Dean Brown stated to me in a texted message that "My attorney does not see the need in me signing as he says I have no claim."

37. I informed counsel for Knauf of Mr. Dean Brown's above text that same day;

4

38. A copy of the text messages between Mr. Dean Brown and myself on the issue of the affidavit and his lack of interest in the subject property are attached as Exhibit "K";

39. After remediating the subject property and paying the costs of remediation, I eventually sold the subject property;

40. On August 13, 2014, I sold the subject property to Mr. Daniel Loredo and Mrs. Maryna Serge Yankovich Loredo (see attached Exhibit "L");

41. I maintained a homeowner's insurance policy on the subject property from June 19, 2007 to November 28, 2009;

42. From November 30, 2009 until I sold the subject property on August 13, 2014, I self-insured the property;

43. From 2006 until 2013, the utilities for the subject property were maintained in my name without a lapse in service;

44. Copies of water and electric utility records showing me as the owner of the subject property from 2006 until 2013, and showing me maintaining continuous, uninterrupted utility service at the subject property in my name are attached as Exhibit "M";

45. Lastly, the Broward County Tax Assessor Office's website (http://www.bcpa.net/RecInfo.asp?URL_Folio=474133054050) clearly confirms the transactions outlined herein, including the same day back-to-back closing with Mr. Dean Brown and my undisputed ownership in the subject property;

46. As such, I was the owner of the subject property at all relevant times and for all purposes under PTO 26; and

47. I respectfully request that this Honorable Court and the Special Master approve my *Already Remediated Property* claim and that Knauf reimburse me for the costs I incurred in remediating Knauf's Chinese Drywall from the subject property which was also my home consistent with PTO 26.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this __22__ day of January, 2015, __C. Springs__, Florida.

_____
SAMI SLIM

SWORN TO AND SUBSCRIBED BEFORE ME, NOTARY, THIS __22__ DAY OF JANUARY 2015.

_____
NOTARY PUBLIC

SAHALUDEEN JABAR
MY COMMISSION #FF076478
EXPIRES December 12, 2017
(407) 398-0153    FloridaNotaryService.com