UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL No. 2:09-md-2047 |
| | SECTION L |
| **THIS DOCUMENT RELATES TO:** | JUDGE ELDON E. FALLON |
| *Gross v. Knauf Gips KG, 2:09-cv-6690* | |
| *Amorin v. Taishan Gypsum, 2:11-cv-1672* | MAGISTRATE JUDGE |
| *Amorin v. Taishan Gypsum, 2:11-cv-1395* | JOSEPH C. WILKINSON, JR. |
| *Amorin v. Taishan Gypsum, 2:11-cv-1673* | |
| *Amorin v. SASAC, 2:14-cv-1727* | |
| *State of Louisiana v. Knauf, 2:10-cv-340* | |
| *Abner v. Taishan Gypsum, 2:11-cv-3094* | |
| *Posey v. BNBM Co., 2:09-cv-6531* | |
| *Morris v. BNBM Co., 2:09-cv-6530* | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
CNBM GROUP, CNBM CO., CNBM USA, CNBMIT, AND
UNITED SUNTECH'S MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 4

ARGUMENT ....................................................................................................................... 8

I.  THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER CNBM
    GROUP, WHICH IS ENTITLED TO SOVEREIGN IMMUNITY UNDER THE
    FSIA. .......................................................................................................................... 8

    A.  CNBM Group Is Presumptively Immune from Suit As an Instrumentality
        of a Foreign State Because It Is Directly and Wholly Owned by the PRC. .......... 9

    B.  No Exception to Sovereign Immunity Applies. ..................................................... 10

        1.  The Commercial Activity Exception Does Not Apply Because
            Plaintiffs' Claims Are Not Based Upon Any Activity By CNBM
            Group In or Directly Affecting the United States. ................................... 11

        2.  The Tort Exception Does Not Apply Because CNBM Group's
            Alleged Conduct Did Not Occur in the United States. ............................ 16

        3.  Other Companies' Actions Cannot Be Attributed to CNBM Group
            For Purposes of the FSIA Because CNBM Group Did Not Exercise
            Extensive Control Over Those Companies. ............................................. 18

II. THIS COURT LACKS PERSONAL JURISDICTION OVER THESE
    DEFENDANTS, WHO HAVE NO MINIMUM CONTACTS WITH THE
    FORUM STATES. ..................................................................................................... 23

    A.  This Court Lacks General Jurisdiction Over the Moving Defendants. ................. 24

    B.  This Court Lacks Specific Jurisdiction Over the Moving Defendants. ................ 25

        1.  Even If Plaintiffs' Allegations Were True, They Fail To Establish
            Specific Jurisdiction Over the Moving Defendants. ................................ 26

        2.  Other Companies' Contacts Cannot Be Imputed to the Moving
            Defendants to Support Specific Jurisdiction ........................................... 36

III. THE COMPLAINTS AGAINST CNBMIT MUST BE DISMISSED FOR
     INSUFFICIENT PROCESS AND SERVICE OF PROCESS. ...................................... 45

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adm'rs of Tulane Educ. Fund v. Biomeasure, Inc.*,
   687 F. Supp. 2d 620, 623 (E.D. La. 2009) ............................................................. 39

*Adm'rs of Tulane Educ. Fund v. Ipsen, S.A.*,
   450 F. App'x 326 (5th Cir. 2011) ............................................................... 37, 38, 39

*Ainsworth v. Moffett Eng'g, Ltd.*,
   716 F.3d 174 (5th Cir. 2013) ..................................................................................... 28

*Alipour v. State Auto. Mut. Ins. Co.*,
   131 F.R.D. 213 (N.D. Ga. 1990) ................................................................................ 41

*Arbaugh v. Y&H Corp.*,
   546 U.S. 500 (2006) ..................................................................................................... 22

*Argentine Republic v. Amerada Hess Shipping Corp.*,
   488 U.S. 428 (1989) ..................................................................................................... 16

*Arriba Ltd. v. Petroleos Mexicanos*,
   962 F.2d 528 (5th Cir. 1992) ............................................................................. passim

*Asahi Metal Industry Co., Ltd. v. Superior Court of California*,
   480 U.S. 102 (1987) (plurality opinion) ........................................................... passim

*Asociacion de Reclamantes v. United Mexican States*,
   735 F.2d 1517 (D.C. Cir. 1984) ................................................................................. 17

*Attwell v. LaSalle Nat. Bank*,
   607 F.2d 1157 (5th Cir. 1979) ................................................................................... 45

*Bean Dredging Corp. v. Dredge Tech. Corp.*,
   744 F.2d 1081 (5th Cir. 1984) ................................................................................... 22

*Bearry v. Beech Aircraft Corp.*,
   818 F.2d 370 (5th Cir. 1987) ..................................................................................... 31

*Becerra v. Asher*,
   921 F. Supp. 1538 (S.D. Tex. 1996) ......................................................................... 41

*Bona Fide Demolition & Recovery, LLC v. Crosby Const. Co. of Louisiana*,
   690 F. Supp. 2d 435 (E.D. La. 2010) ........................................................................ 43

*Bowoto v. Chevron Texaco Corp.*,
   312 F. Supp. 2d 1229 (N.D. Cal. 2004) ..................................................................... 38

ii

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Brownsberger v. Gexa Energy, LP*,
    No. 10-CV-81021, 2011 WL 197464 (S.D. Fla. Jan. 20, 2011) ............................................39

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ...........................................................................................................31

*Calder v. Jones*,
    465 U.S. 783 (1984) ...........................................................................................................26

*Callejo v. Bancomer, S.A.*,
    764 F.2d 1101 (5th Cir. 1985) ...........................................................................................12

*Carimi v. Royal Caribbean Cruise Line, Inc.*,
    959 F.2d 1344 (5th Cir. 1992) ...........................................................................................44

*Carson v. Maersk, Ltd.*,
    61 F. Supp. 2d 607 (S.D. Tex. 1999) .................................................................................35

*Cent. Freight Lines Inc. v. APA Transp. Corp.*,
    322 F.3d 376 (5th Cir. 2003) ......................................................................................26, 28

*Chin v. Roussel*,
    456 So. 2d 673 (La. Ct. App. 1984) ..................................................................................44

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
    742 F.3d 576 (5th Cir. 2014) .............................................................................................30

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
    753 F.3d 521 (5th Cir. 2014) ......................................................................................36, 38

*Clemens v. McNamee*,
    615 F.3d 374 (5th Cir. 2010) .............................................................................................32

*Coleman v. Alcolac, Inc.*,
    888 F. Supp. 1388 (S.D. Tex. 1995) ...........................................................................10, 17

*Collier v. Batiste*,
    No. CIV. A. 05-0019, 2005 WL 3543824 (E.D. La. Oct. 21, 2005) ......................................37

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014) .........................................................................................................36

*Dale v. Colagiovanni*,
    443 F.3d 425 (5th Cir. 2006) .............................................................................................12

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Dalton v. R & W Marine, Inc.*,
  897 F.2d 1359 (5th Cir. 1990) ..........................................................................34, 36

*Dickson Marine Inc. v. Panalpina, Inc.*,
  179 F.3d 331 (5th Cir. 1999) ...........................................................................23, 37

*Doe v. Holy*
  *See*, 557 F.3d 1066 (9th Cir. 2009) ................................................................18, 20

*Dole Food Co. v. Patrickson*,
  538 U.S. 468 (2003).................................................................................................10

*Enic, PLC v. F.F. S. & Co., Inc.*,
  870 So.2d 888 (Fla. Dist. Ct. App. 2004) ...............................................................39

*Erben v. Raymond James Fin., Inc.*, No. 8:11-CV-933-T-23AEP, 2013 WL
  2406242 (M.D. Fla. June 3, 2013) ..........................................................................43

*ESAB Grp., Inc. v. Zurich Ins. PLC*,
  685 F.3d 376 (4th Cir. 2012) ...................................................................................29

*Fed. Ins. Co. v. Richard I. Rubin & Co.*,
  12 F.3d 1270 (3d Cir. 1993)...............................................................................14, 15

*Felch v. Transportes Lar-Mex SA DE CV*,
  92 F.3d 320 (5th Cir. 1996) .....................................................................................32

*Ferens v. John Deere Co.*,
  494 U.S. 516 (1990).................................................................................................42

*Fernandez-Montes v. Allied Pilots Ass'n*,
  987 F.2d 278 (5th Cir. 1993) ...................................................................................37

*Fielding v. Hubert Burda Media, Inc.*,
  415 F.3d 419 (5th Cir. 2005) ...................................................................................26

*First Acceptance Ins. Co. v. Ramirez*,
  No. 3:08-CV-1078-J-34JRK, 2010 WL 779315 (M.D. Fla. Feb. 26, 2010)............41

*First Investment Corp. of Marshall Islands v. Fujian Mawei Shipbuilding, Ltd.*,
  858 F. Supp. 2d 658 (E.D. La.) ....................................................................10, 20, 23

*First Nat'l City Bank v. Banco para el Comercio Exterior de Cuba*, 462 U.S. 611,
  627 (1983) ....................................................................................................18, 19, 21

iv

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Flynt Distrib. Co. v. Harvey*,
    734 F.2d 1389 (9th Cir. 1984) ................................................43

*In re Ford Motor Co.*,
    591 F.3d 406 (5th Cir. 2009) ................................................29

*Foremost-McKesson, Inc. v. Islamic Republic of Iran*,
    905 F.2d 438 (D.C. Cir. 1990)........................................19, 20

*Freund v. Republic of France*,
    592 F. Supp. 2d 540 (S.D.N.Y. 2008)..................................20

*Gartin v. Par Pharm. Cos., Inc.*,
    289 Fed. App'x 688 (5th Cir. 2008) ................................44, 46

*Gasparini v. Pordomingo*,
    972 So. 2d 1053 (Fla. Dist. Ct. App. 2008) ........................44

*Ge v. Peng*,
    201 F. Supp. 2d 14 (D.D.C. 2000)......................................16

*Goldschmidt v. Holman*,
    571 So.2d 422 (Fla. 1990)....................................................38

*Gonzalez v. Temple Mountain Ski Resort, Inc.*,
    613 F. Supp. 354 (D. Mass. 1985) ......................................45

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    131 S. Ct. 2846 (2011)....................................................23, 24

*Guirlando v. T.C. Ziraat Bankasi A.S.*,
    602 F.3d 69 (2d Cir. 2010)..................................................16

*Hargrave v. Fibreboard Corp.*,
    710 F.2d 1154 (5th Cir. 1983) ..................................26, 39, 40

*Henry v. Offshore Drilling (W.A.) Pty., Ltd.*,
    331 F. Supp. 340 (E.D. La. 1971)........................................37

*Hester Int'l Corp. v. Federal Republic of Nigeria*,
    879 F.2d 170 (5th Cir. 1989) ..........................................19, 20

*Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*,
    485 F.3d 450 (9th Cir. 2007) ..............................................29

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Ins. Co. of N. Am. v. Marina Salina Cruz*,
   649 F.2d 1266 (9th Cir. 1981) ...................................................................34

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)...................................................................................23

*ITL Int'l, Inc. v. Constenla, S.A.*,
   669 F.3d 493 (5th Cir. 2012) ...............................................................25, 32

*J. McIntyre Machinery, Ltd. v. Nicastro*,
   131 S. Ct. 2780 (2011)...............................................................26, 28, 29, 30

*In re James River Coal Co.*,
   360 B.R. 139 (Bankr. E.D. Va. 2007).........................................................43

*Jerez v. Republic of Cuba*,
   775 F.3d 419 (D.C. Cir. 2014) ...................................................................16

*Johnston v. Multidata Sys. Int'l Corp.*,
   523 F.3d 602 (5th Cir. 2008) ...........................................................23, 24, 35

*Jones v. Petty-Ray Geophysical, Geosource, Inc.*,
   954 F.2d 1061 (5th Cir. 1992) ...................................................................16

*Kato v. Ishihara*,
   360 F.3d 106 (2d Cir. 2004)..................................................................10, 13

*Kelly v. Syria Shell Petroleum Dev. B.V.*,
   213 F.3d 841 (5th Cir. 2000) ...................................................................8, 9

*Kern v. Jeppesen Sanderson, Inc.*,
   867 F. Supp. 525 (S.D. Tex. 1994) ............................................................34

*Kittrick v. GAF Corp.*,
   125 F.R.D. 103 (M.D. Pa. 1989)................................................................41

*Lesnick v. Hollingsworth & Vose Co.*,
   35 F.3d 939 (4th Cir. 1994) .......................................................................29

*Magness v. Russian Fed'n*,
   247 F.3d 609 (5th Cir. 2001) .....................................................................10

*Mallard v. Aluminum Co. of Can.*,
   634 F.2d 236 (5th Cir. 1981) .....................................................................23

vi

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*McCarthy v. Giron*,
   No. 1:13-CV-01559-GBL, 2014 WL 2696660 (E.D. Va. June 6, 2014) ................................42

*MCI Telecomms. Corp. v. Alhadhood*,
   82 F.3d 658 (5th Cir. 1996) ...............................................................................................9

*Moran v. Kingdom of Saudi Arabia*,
   27 F.3d 169 (5th Cir. 1994) .............................................................................................10

*Morris v. People's Republic of China*,
   478 F. Supp. 2d 561 (S.D.N.Y. 2007)..............................................................................15

*Mukamal v. Bakes*,
   378 F. App'x 890 (11th Cir. 2010) ...................................................................................42

*NML Capital, Ltd. v. Republic of Arg.*,
   No. C 12-80185 JSW MEJ, 2013 WL 655211 (N.D. Cal. Feb. 21, 2013) ............................43

*Nuovo Pignone, SpA v. STORMAN ASIA M/V*,
   310 F.3d 374 (5th Cir. 2002) ...........................................................................................25

*O'Bryan v. Holy See*,
   471 F. Supp. 2d 784, 790 (W.D. Ky. 2007) ......................................................................17

*O'Bryan v. Holy See*,
   556 F.3d 361(6th Cir. 2009) .......................................................................................16, 17

*Matter of Oxford Mgmt., Inc.*,
   4 F.3d 1329 (5th Cir. 1993) .............................................................................................37

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
   253 F.3d 865 (5th Cir. 2001) ......................................................................................23, 26

*Patin v. Thoroughbred Power Boats, Inc.*,
   294 F.3d 640 (5th Cir. 2002) ...........................................................................................42

*Perpetual Real Estate Servs., Inc. v. Michaelson Props., Inc.*,
   974 F.2d 545 (4th Cir.1992) ............................................................................................43

*Pizarro v. Hoteles Concorde Int'l, C.A.*,
   907 F.2d 1256 (1st Cir. 1990)..........................................................................................32

*Premier Dealer Servs., Inc. v. Duhon*,
   No. CIV.A. 12-1498, 2013 WL 3984154 (E.D. La. July 31, 2013) .......................................38

vii

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Princz v. Federal Republic of Germany*,
  26 F.3d 1166 (D.C. Cir. 1994) ........................................................................14, 16

*Reistroffer v. Pers.*,
  439 S.E.2d 376 (1994) ..............................................................................................38

*Republic of Arg. v. Weltover, Inc.*,
  504 U.S. 607 (1992)..............................................................................................8, 14

*Revell v. Lidov*,
  317 F.3d 467 (5th Cir. 2002) ...................................................................................31

*Riberglass, Inc. v. Techni-Glass Indus., Inc.*,
  811 F.2d 565 (11th Cir. 1987) .................................................................................41

*Robinson v. Gov't of Malaysia*,
  269 F.3d 133 (2d Cir. 2001)......................................................................................13

*Saudi Arabia v. Nelson*,
  507 U.S. 349 (1993)......................................................................................8, 10, 12

*Siderman de Blake v. Republic of Arg.*,
  965 F.2d 699 (9th Cir. 1992) ...................................................................................22

*Steele v. United States*,
  813 F.2d 1545 (9th Cir. 1987) .................................................................................33

*Stena Reder AB v. Comision de Contratos del Comite Ejecutivo General*,
  923 F.2d 380 (5th Cir. 1991) .......................................................................11, 13, 14

*Stuart v. Spademan*,
  772 F.2d 1185 (5th Cir. 1985) .................................................................................23

*Terenkian v. Republic of Iraq*,
  694 F.3d 1122 (9th Cir. 2012) .................................................................................14

*In re Terrorist Attacks*,
  714 F.3d 109 (2d Cir. 2013)...............................................................................16, 17

*Transamerica Leasing v. La Republica de Venezuela*,
  200 F.3d 843 (D.C. Cir. 2000) .................................................................................19

*United Phosphorus, Ltd. v. Angus Chem. Co.*,
  43 F. Supp. 2d 904 (N.D. Ill. 1999) ........................................................................33

viii

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Verlinden B.V. v. Central Bank of Nigeria*,
    461 U.S. 480 (1983)...............................................................................................9, 22

*Vermeulen v. Renault, U.S.A., Inc.*,
    985 F.2d 1534 (11th Cir. 1993) .....................................................................................29

*Village Lane Rentals, LLC v. Capital Fin. Grp.*,
    159 F. Supp. 2d 910 (W.D. Va. 2001) ...........................................................................23

*In re Vioxx Product Liability Litigation*,
    478 F. Supp. 2d 897 (E.D. La. 2007)........................................................................38, 42

*Voest-Alpine Trading USA Corp. v. Bank of China*,
    142 F.3d 887 (5th Cir. 1998) .........................................................................................12

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014)......................................................................................24, 30, 35

*Walter Fuller Aircraft Sales, Inc. v. Republic of Philippines*,
    965 F.2d 1375 (5th Cir. 1992) .......................................................................................19

*Walters v. Indus. & Commer. Bank of China, Ltd.*,
    651 F.3d 280 (2d Cir. 2011)...........................................................................................22

*Wyatt v. Kaplan*,
    686 F.2d 276 (5th Cir. 1982) .........................................................................23, 26, 27, 38

**Statutes**

28 U.S.C. § 1330(b) ...............................................................................................................23

28 U.S.C. § 1407......................................................................................................................4

28 U.S.C. § 1603(a) .................................................................................................................9

28 U.S.C. § 1603(b) .............................................................................................................9, 10

28 U.S.C. § 1604......................................................................................................................8

28 U.S.C. § 1605(a)(2)..................................................................................................11, 12, 13, 14

28 U.S.C. § 1605(a)(5)......................................................................................................11, 16, 17

28 U.S.C. § 1605(a)(6)...........................................................................................................21

**TABLE OF AUTHORITIES**
(continued)

Page(s)

28 U.S.C. § 1608 ................................................................................................22

28 U.S.C. § 1608(e) .............................................................................................9

Cal. Civ. Proc. Code § 410.10 ...........................................................................23

**Other Authorities**

8B Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice &
 Procedure § 2264 (2010) ..........................................................................41

5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure:
 Civil 3d § 1353 ..........................................................................................44

Fed. R. Civ. P. 4 .............................................................................................3, 45

Fed. R. Civ. P. 4(a)(1)(B) ..................................................................................46

Fed. R. Civ. P. 4(f) .............................................................................................44

Fed. R. Civ. P. 4(h) ............................................................................................44

Fed. R. Civ. P. 12(b) ..........................................................................................45

Fed. R. Civ. P. 12(b)(1) .......................................................................................1

Fed. R. Civ. P. 12(b)(2) .......................................................................................1

Fed. R. Civ. P. 12(b)(4) .............................................................................1, 44, 45

Fed. R. Civ. P. 12(b)(5) .............................................................................1, 44, 45

Fed. R. Civ. P. 12(h)(3) ......................................................................................22

Fed. R. Civ. P. 30(b)(6) ......................................................................................46

Fed. R. Civ. P. 36 ...............................................................................................41

Restatement (Third) Of Agency § 1.01 (2006) ..................................................38

Defendants China New Building Materials Group ("CNBM Group"), China New Building Materials Co. ("CNBM Co."), CNBMIT Co. Ltd. ("CMBIT"), CNBM USA Corp. ("CNBM USA"), and United Suntech Craft, Inc. ("United Suntech") (collectively, the "Moving Defendants") respectfully submit this memorandum in support of their Motion pursuant to Rule 12(b)(1), (2), (4) and (5) of the Federal Rules of Civil Procedure for an order dismissing the Complaints identified herein against CNBM Group for lack of subject matter jurisdiction, against all Moving Defendants for lack of personal jurisdiction, and against CNBMIT for insufficient process and service of process.

## INTRODUCTION

In blunderbuss fashion, Plaintiffs have sued everyone under the sun. All but explicitly invoking the bogeyman of "China, Inc.," they have sued not just the companies alleged to have engaged in wrongdoing—specifically, manufacturing and importing defective drywall—but also companies that merely *invested* in those principal defendants; companies that invested in the companies that invested in the principal defendants; and completely unrelated companies in which those investors hold some stake. In their scramble to turn a vast network of corporate investments into a single business enterprise, Plaintiffs utterly ignore the Supreme Court's directive that instrumentalities of a foreign state are to be accorded a presumption of independent status. Leaving aside the basic fact that Plaintiffs have named entities that simply did nothing wrong—which is an issue for another day—the Complaints suffer from two fundamental defects at issue in this motion, which require dismissal of the Complaints against the Moving Defendants.

*First*, Plaintiffs' scattershot approach ignores the critical limitation on jurisdiction imposed by the Foreign Sovereign Immunities Act (FSIA). United States courts presumptively

lack subject matter jurisdiction over foreign state-owned entities.  Yet, in a seeming effort to find the deepest pockets of distant corporate relations of those who actually manufactured drywall, Plaintiffs have cast their net to include CNBM Group, which Plaintiffs themselves acknowledge to be a "state owned entity."[1]  But CNBM Group's indirect investment in other companies, several corporate generations removed, provides no basis to breach the immunity of a foreign sovereign entity.  No exception to immunity applies to CNBM Group; it does no business at all in the United States, and has never manufactured, marketed, sold or shipped drywall in China or anywhere else. *See infra*, Part I.

 *Second*, an equally fundamental defect requires dismissal of each of the Moving Defendants—namely, a complete lack of personal jurisdiction.  That is because none of the Moving Defendants has any requisite contact with the forum states.  *See infra*, Part II.  To be sure, Plaintiffs did sue companies that manufactured and imported allegedly defective drywall.  Those defendants include Taishan Gypsum Co. and Taian Taishan Plasterboard Co. ("TTP").  Fair enough.  In addition, however, Plaintiffs sued companies that have done nothing more than invest in the drywall manufacturers.  Then, stretching even further, Plaintiffs sued companies that have only the unlucky distinction of having as a shareholder a company that also holds shares in a drywall manufacturer.  This is a puzzling theory of liability; it defies basic principles of corporate law; and, as companies like BNBM PLC have separately argued, it results in the finger being pointed at entities with no meaningful contact with the forum states.  *See* BNBM PLC Motion to Dismiss, MDL 2047, Rec. Doc. 18774-3.

---

[1] *Gross v. Knauf Gips KG*, Case No. 09-6690, Rec. Doc. 366, ¶44; *Amorin v. Taishan Gypsum*, Case No. 11-1395, Rec. Doc. 1, ¶30; *Amorin v. Taishan Gypsum*, Case No. 11-1672, Rec. Doc. 1, ¶30; *Amorin v. Taishan Gypsum*, Case No. 11-1672, Rec. Doc. 1, ¶30; *Abner v. Taishan Gypsum*, Case No. 11-3094, Rec. Doc. 1, ¶44; *State of Louisiana v. Knauf Gips KG*, Case No. 10-340, ¶33.

But far more extreme is Plaintiffs' effort to bring in CNBM Group and certain of its investment holdings—CNBM Co., CNBMIT, CNBM USA and United Suntech. These entities are all several levels of investment removed from any entity that manufactures, sells, or ships drywall. For instance, to connect CNBM Group to Taishan, one must do liability gymnastics—CNBM Group is a minority investor three levels removed from Taishan, and indirectly holds a small interest only via two other publicly traded companies each with their own Boards of Directors. *See* Clarke Decl. Ex. D.[2] But CNBM Group itself has *no* meaningful contacts with the United States, much less with the forum states. Cao Decl. ¶¶ 8, 10. And other defendants in the CNBM family are even further removed from the activities alleged here—to connect either CNBMIT or United Suntech to the drywall entities, one must trace their ownership back up the corporate tree through CNBM Investment to CNBM Co. and then back through multiple layers of separate investment, through multiple companies that all observe separate corporate formalities, to Taishan. Clarke Decl. Ex. D. These entities own 0% of Taishan, control no aspect of Taishan's business operations, and indeed have no commercial relationship with Taishan at all. *Id.*

*Finally*, the Complaints against CNBMIT must be dismissed because CNBMIT has not actually been named as a defendant in any action and therefore has not been properly served under Federal Rule of Civil Procedure 4. The Complaints all name "CNBMI Co., Ltd."—an entity that itself does not exist, and which may refer to a number of CNBM-related entities. Absent effective service, this Court lacks personal jurisdiction over CNBMIT, and the Complaints against it must be dismissed. *See infra* Part III.

For these reasons, the Complaints against all the Moving Defendants should be dismissed.

---

[2] All cites to declarations refer to Exhibits 1 through 6 of the Daley Declaration, attached.

**BACKGROUND**

As the Court is well aware, this MDL consists of multiple actions that were originally filed in United States District Courts throughout the country.  Pursuant to 28 U.S.C. § 1407, these actions were consolidated into MDL 2047 in this Court.  626 F. Supp. 2d 1346 (2009). This Court applies the substantive state law of the transferor court and the federal law of the Fifth Circuit in addressing the Court's personal and subject matter jurisdiction over these defendants. *See* MDL 2047, Rec. Doc. 15755 at 18-19.  This Court therefore must assess the contacts of each Moving Defendant with the transferor state—here Louisiana, Florida, Virginia and California— to determine whether personal jurisdiction is proper.  The following chart summarizes the cases in which each Moving Defendant seeks dismissal of the Complaints against it.

| Case and Origin Forum | CNBM Group | CNBM Co. | CNBMIT | CNBM USA | United Suntech |
|---|---|---|---|---|---|
| 09-6690 (LA) | X | X | | X | |
| 11-1672 (FL) | X | X | X | X | X |
| 11-1395 (LA) | X | X | X | X | X |
| 11-1673 (VA) | X | X | X | X | X |
| 14-1727 (LA) | X | X | | | |
| 10-340 (LA) | X | X | | | |
| 11-3094 (CA) | X | X | X | | |
| 09-6530 (FL) | | X | | | |
| 09-6531 (FL) | | X | | | |

Plaintiffs have attempted, in their far-reaching Complaints, to paint all of the Moving Defendants as a single business enterprise engaged in the manufacture, sale, and export of drywall into the United States.  This could not be further from the truth.  In reality, each of the Moving Defendants is an independent corporation with unique business objectives and strict adherence to corporate formalities.  Most significantly, none of the Moving Defendants has ever played any role in the manufacture, sale, or shipment of drywall—either in China or the United States.  And none of them has any meaningful contacts with the forum states.

4

**CNBM Group:**  At the top of the CNBM corporate family tree is CNBM Group, a state-owned entity organized under the laws of the People's Republic of China.  CNBM Group is—and was, at the time this suit was filed—directly and wholly owned by the State.  Cao Decl. ¶¶ 3-6, Ex. A, Ex. B arts. 5, 13.  CNBM Group was formed with the purpose of advancing the building products and construction materials industry in China.  *Id.*  ¶ 9.  CNBM Group conducts no business in the United States, and does not itself manufacture, produce, market, distribute, ship or sell any building products or construction materials, including drywall.  *Id*.  Likewise, no entity in which CNBM Group is directly invested is engaged in any aspect of the drywall business.  Clarke Decl. Ex. D (annual shareholding structure charts).  Indeed, one must trace CNBM Group's partial ownership interests down two levels of investment to BNBM PLC to find a company that has ever sold drywall, *id.*—and even then, not the drywall at issue in this litigation, *see* MDL 2047, Rec. Doc. 18774-3 at 11-13.   (To find a company that actually manufactured the drywall at issue, one must trace CNBM Group's ownership another level further, through CNBM Group's investment in Taishan's investors to Taishan.)  Unsurprisingly, as a mere indirect shareholder, CNBM Group did not participate in these companies' drywall-related activities or business decisions, and exercised no control over the companies beyond its narrow shareholder rights. Cao Decl. ¶¶ 16, 17.

**CNBM Co.:**  Among its other investments, CNBM Group owns a partial interest in CNBM Co. that ranged from 16.9% in 2005 to 13.67% in 2009.[3]  Clarke Decl. Ex. D.  Like CNBM Group, CNBM Co. is not directly engaged in the manufacture or sale of building materials.  Rather, it is a holding company.  It holds investments in other Chinese entities

---

[3] Plaintiffs nowhere formally plead the dates on which the drywall at issue was purchased, installed, or allegedly injured them.  In Plaintiffs' Findings of Facts and Conclusions of Law in the Taishan proceedings, MDL 2047, Rec. Doc. No. 18028, Plaintiffs refer to the "relevant period" of Taishan and TTP's forum contacts as "[f]rom 2005 to 2009," ¶18. Moving Defendants therefore address their organizational structure and forum contacts during that period.

engaged in various businesses related to the building industry, including cement, fiberglass, solar energy, lumber, steel, and drywall.  CNBM Co. does not manufacture, produce, market, distribute, ship or sell any building products or construction materials, including drywall.  Chang Decl. ¶ 3.  Nor does CNBM Co. direct the business operations or business decisions of the entities in which it is invested.  *Id.*  ¶ 9.  To the contrary, CNBM Co.'s investment entities are independently organized corporate entities with their own Boards of Directors, Boards of Supervisors, and corporate bylaws.  *Id.*  While CNBM Co. may exercise its rights as a majority shareholder to nominate members of the Board of Directors, those members vote in a manner consistent with their legal obligations to that organization.  *Id.*  ¶ 11.  Moreover, ordinary business decisions regarding the manufacture, marketing, and sale of construction products, such as drywall, are not the kind of decisions that require board approval.  The decisions by certain investment entities to market and sell drywall in the United States were made without CNBM Co.'s knowledge, advice, or consent.  *Id.*  ¶ 12.

**CNBMIT:**  Climbing out onto smaller and smaller branches of the CNBM investment tree, Plaintiffs have sought to name CNBMIT as a defendant.  CNBMIT is, at best, a distant cousin of CNBM Group, traceable through CNBM Co.'s interest in CNBM Investment, CNBMIT's parent company.  Chuan Decl. ¶ 4.  CNBMIT is a Chinese entity that acts as an import and export agent for Chinese companies.  *Id.*  ¶ 6.  CNBMIT has never manufactured, produced, marketed, distributed, shipped or sold drywall in either China or the United States.  *Id.*  ¶ 7.  While CNBMIT does some import/export business in the United States, its contacts with any individual state are sporadic and represent only a *de minimis* amount of CNBMIT's international trade business.  *Id.*  Additionally, CNBMIT was neither named in the relevant Complaints, nor served in a manner consistent with Federal Rule of Civil Procedure 4.  The

Complaints name only "CNBMI Co. Ltd.," which could reasonably refer to multiple CNBM-related entities. *See* Daley Decl. Ex. 8.

**CNBM USA and United Suntech:**  In their search for some plausible connection to the United States, Plaintiffs have also named CNBM USA and United Suntech.  These companies indeed were registered business entities located in California from 2005 to 2009 and so are subject to general personal jurisdiction in the single proceeding that originated in California (*Abner v. Taishan Gypsum*, No. 11-3094).  But they have no meaningful contacts with the other forum states, and nothing to do with drywall.  CNBM USA operated in California as a counterparty to agreements with U.S. entities for the sale of aluminum products, ceramic tiles, and solar panels.  Zhang Decl. ¶ 5.  United Suntech, currently a Canadian and New York business entity, used to function as an importer of Chinese cabinetry and hardware into the United States.  Liu Decl. ¶ ¶ 2, 5.  These defendants are totally unconnected to the products at issue in this litigation.  Neither CNBM USA nor United Suntech have ever manufactured, produced, marketed, distributed, shipped or sold drywall in either China or the United States in the relevant time period.  Zhang Decl. ¶ 8; Liu Decl. ¶ 7.  Nor did these defendants have any continuous or systematic contacts with any state other than California.  Zhang Decl. ¶ 7; Liu Decl. ¶ 5.

The Moving Defendants have nothing to do with this lawsuit.  Plaintiffs have searched up the tree for deep pockets and onto its farthest limbs for U.S. contacts, but corporate affiliation does not establish liability.  Even a wholly owned entity does not automatically pass liability to its parent absent a slew of factors that Plaintiffs cannot prove here.  The scattershot nature of Plaintiffs' litigation approach is wholly inconsistent with the limited scope of this Court's jurisdiction over foreign companies.

The Complaints against the Moving Defendants should be dismissed.

## ARGUMENT

I.   **THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER CNBM GROUP, WHICH IS ENTITLED TO SOVEREIGN IMMUNITY UNDER THE FSIA.**

CNBM Group is not properly part of this litigation because it is an "agency or instrumentality of a foreign state" within the meaning of the FSIA.  28 U.S.C. § 1603(b).  As such, it is presumptively shielded by sovereign immunity, and this Court lacks subject-matter jurisdiction over it.  Plaintiffs have not overcome CNBM Group's presumptive immunity from suit: They have not sufficiently pleaded, much less shown, that CNBM Group falls within any of the statute's narrow exceptions to immunity.  CNBM Group played no role in the manufacture or distribution of the drywall at issue in this litigation, and its status as a mere indirect shareholder of other companies that allegedly engaged in such activity is insufficient to bring it within any FSIA exception.

The FSIA provides the "sole basis" for obtaining jurisdiction over a foreign state. *Republic of Arg. v. Weltover, Inc.*, 504 U.S. 607, 611 (1992).  A foreign state is "presumptively immune" from suit under the Act; "unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state."  *Saudi Arabia v. Nelson,* 507 U.S. 349, 355 (1993); *see* 28 U.S.C. § 1604.  Once a defendant presents a prima facie case that it is a foreign state, "the burden shifts to the party opposing immunity to present evidence that one of the exceptions to immunity applies."  *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 847 (5th Cir. 2000).  Any discovery concerning jurisdiction under the FSIA must be "circumspect[] and only to verify allegations of specific facts crucial to [the] immunity determination," because a foreign sovereign has a "legitimate claim to immunity from

discovery." *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 534 (5th Cir. 1992); *see also Kelly*, 213 F.3d at 849 ("FSIA immunity is immunity not only from liability, but also from the costs, in time and expense, and other disruptions attendant to litigation").

Further, because "subject matter jurisdiction [under the FSIA] depends on the existence of one of the specified exceptions to foreign sovereign immunity, … [a]t the threshold of every action in a District Court against a foreign state … the court must satisfy itself that one of the exceptions applies." *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493-94 (1983) (citation omitted). This is true "even if the foreign state does not enter an appearance to assert an immunity defense." *Id.* at 493 n.20; *see also* 28 U.S.C. § 1608(e) (prohibiting a court from entering a default judgment against a foreign state unless the plaintiff has established his right to relief by sufficient evidence). Consequently, a foreign state does not waive its immunity defense even by waiting to appear until after entry of a final default judgment. *MCI Telecomms. Corp. v. Alhadhood*, 82 F.3d 658, 662 (5th Cir. 1996).

### A.   CNBM Group Is Presumptively Immune from Suit As an Instrumentality of a Foreign State Because It Is Directly and Wholly Owned by the PRC.

For purposes of the FSIA, a "foreign state" includes an "agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). An agency or instrumentality, in turn, includes "any entity" that is "a separate legal person, corporate or otherwise," "a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof," and "which is neither a citizen of a State of the United States … nor created under the laws of any third country." *Id.* § 1603(b). "[A] party claiming FSIA immunity need only present a prima facie case that it is a foreign state." *Kelly*, 213 F.3d at 847.

CNBM Group easily meets this standard. It is a state-owned company incorporated under the laws of the People's Republic of China ("PRC"). *See* Cao Decl. ¶¶ 3, 6, Ex. B art. 5.

9

It enjoys the rights of a separate corporate legal person.  *Id.*  CNBM Group is—and was, at the time this suit was filed—directly and wholly owned by the State.  *See* Cao Decl. ¶¶ 4-6, Ex. A, Ex. B arts. 5, 13.  CNBM Group is no different for these purposes than other Chinese state-owned enterprises that courts have recognized to be instrumentalities of a foreign state pursuant to the FSIA.  *See, e.g.*, *First Inv. Corp. of Marsh. Is. v. Fujian Mawei Shipbuilding, Ltd.*, 858 F. Supp. 2d 658, 671 (E.D. La.), *aff'd* 703 F.3d 742 (5th Cir. 2012); *Coleman v. Alcolac, Inc*., 888 F. Supp. 1388, 1400 (S.D. Tex. 1995).  Indeed, Plaintiffs themselves describe CNBM Group as "a state owned entity," and acknowledge that it may be a foreign sovereign entity under the FSIA.  *See, e.g.*, *Amorin v. Taishan Gypsum Co.*, Case No. 11-1672, Rec. Doc. 1-1, pp. 12, 26 at ¶¶ 30, 85.[4]

## B.      No Exception to Sovereign Immunity Applies.

Under the FSIA, a plaintiff can overcome a foreign state's presumptive immunity from suit only by establishing one of the statute's narrow exceptions to immunity.  *Nelson*, 507 U.S. at

---

[4] Plaintiffs elsewhere have suggested that the PRC's State-owned Assets Supervision and Administration Commission (SASAC) owns CNBM Group.  *See, e.g.*, *Amorin v. SASAC*, Case No. 14-1727, Rec. Doc. 1, at 3. SASAC is a government commission that supervises CNBM Group and performs the duties of the capital contributor on behalf of the State Council.  *See* Cao Decl. ¶ 7; Cao Decl. ¶ 6, Ex. B art. 13; Yang Decl. ¶ 6, Ex. C art. 64; Yang Decl. ¶ 7, Ex. D arts. 4, 12.  In exercising the duties and rights of a capital contributor, SASAC holds the capital contribution and assets of state-owned enterprises on behalf of the State.  But SASAC does not own CNBM Group, and "[m]ajority ownership by a foreign state, not control, is the benchmark of instrumentality status" under § 1603(b)(2).  *Dole Food Co. v. Patrickson*, 538 U.S. 468, 477 (2003); *see also First Inv. Corp. of Marsh. Is. v. Fujian Mawei Shipbuilding, Ltd.*, 858 F. Supp. 2d 658, 671, 676 (E.D. La.) (Chinese state-owned entity is an instrumentality under the FSIA because "all of its shares or other ownership interest are owned directly by the People's Republic of China," even where "SASAC appoints the board of directors and senior management personnel, and otherwise exercises the rights of a shareholder"), *aff'd* 703 F.3d 742 (5th Cir. 2012).  In any event, CNBM Group would still qualify as an instrumentality of a foreign state under § 1603(b) of the FSIA even if it were owned by SASAC because SASAC—which operates under the State Council and is part of the PRC central government—is itself a foreign state or political subdivision within the meaning of the statute.  *See* 28 U.S.C. § 1603(b)(2) (requiring that an instrumentality be majority owned "by a foreign state or political subdivision thereof"). The Court previously has referred to SASAC as the "Government of China."  Findings of Fact and Conclusions of Law with Respect to Plaintiffs' Omnibus Motion for Class Certification ("FOFCOL") ¶ 25, Rec. Doc. 18028; *see also Magness v. Russian Fed'n*, 247 F.3d 609, 613 n.7 (5th Cir. 2001) ("[T]he term 'political subdivision' includes all governmental units beneath the central government.").  And SASAC's "core function" of supervising state-owned enterprises on behalf of the central government is predominantly governmental, rather than commercial.  *See Magness*, 247 F.3d at 613 n.7; *see also Kato v. Ishihara*, 360 F.3d 106, 111-12 (2d Cir. 2004) (Tokyo Metropolitan Government performed a "governmental function" under the FSIA when it "provided general business development assistance, including product promotion, to Japanese businesses").

355; *see also Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) ("[T]he plaintiff seeking to litigate in the district court bears the burden of coming forward with facts showing that an exception applies.").  The foreign state "has no obligation to affirmatively eliminate all possible exceptions to sovereign immunity."  *Stena Reder AB v. Comision de Contratos del Comite Ejecutivo General*, 923 F.2d 380, 390 & n.14 (5th Cir. 1991).  Here, Plaintiffs have asserted that their claims fall within the commercial activity exception contained in § 1605(a)(2) and the tort exception in § 1605(a)(5).[5]  Plaintiffs have not met their burden of showing that either exception applies.

> **1.    The Commercial Activity Exception Does Not Apply Because Plaintiffs' Claims Are Not Based Upon any Activity by CNBM Group in or Directly Affecting the United States.**

To establish jurisdiction under the commercial activity exception, a plaintiff must demonstrate that its claims are "based upon" (1) "a commercial activity carried on in the United States by the foreign state"; (2) "an act performed in the United States in connection with a commercial activity of the foreign state elsewhere"; or (3) "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."  28 U.S.C. § 1605(a)(2).  Plaintiffs rely upon only the first prong,[6] and have not shown that *any* of the three clauses applies here.

---

[5] *See Abner v. Taishan Gypsum Co.*, Case No. 11-3094, Rec. Doc. 1-1, ¶ 99; *Amorin v. Taishan Gypsum Co.*, Case No. 11-1395, Rec. Doc. 1, ¶ 85; *Amorin v. Taishan Gypsum Co.*, Case No. 11-1672, Rec. Doc. 1-1, ¶ 85; *Amorin v. Taishan Gypsum Co.*, Case No. 11-1673, Rec. Doc. 1-1, ¶ 85; *Amorin v. SASAC*, Case No. 14-1727, Rec. Doc. 1, ¶ 8; *Gross v. Knauf Gips KG*, Case No. 09-6690, Rec. Doc. 366, ¶ 48.

[6] *See Abner v. Taishan Gypsum Co.*, Case No. 11-3094, Rec. Doc. 1-1, ¶ 99 (alleging that their claims are "based upon commercial activities carried on in the United States"); *Amorin v. Taishan Gypsum Co.*, Case No. 11-1395, Rec. Doc. 1, ¶ 85 (same); *Amorin v. Taishan Gypsum Co.*, Case No. 11-1672, Rec. Doc. 1-1, ¶ 85 (same); *Amorin v. Taishan Gypsum Co.*, Case No. 11-1673, Rec. Doc. 1-1, ¶ 85 (same); *Amorin v. SASAC*, Case No. 14-1727, Rec. Doc. 1, ¶ 8 (same); *Gross v. Knauf Gips KG*, Case No. 09-6690, Rec. Doc. 366, ¶ 48 (same).

**a.** First, Plaintiffs' claims are not "based upon" any activity—commercial or otherwise—by CNBM Group itself.  To determine whether the commercial activity exception applies, the Court must begin by "identifying the particular conduct" on which Plaintiffs' cause of action is "based."  *Nelson*, 507 U.S. at 356-57 (the phrased "based upon" is "read most naturally to mean those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case"); *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 892 (5th Cir. 1998) ("All three clauses [of § 1605(a)(2)] require that the cause of action be 'based upon' a certain act or activity of the foreign state.").  The Court's "focus should be on the 'gravamen of the complaint.'"  *Nelson*, 507 U.S. at 357 (quoting *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1109 (5th Cir. 1985)).  In this products-liability case, the gravamen of the Complaints is that Plaintiffs suffered property damage and personal injury as a result of allegedly defective drywall.  The conduct on which Plaintiffs base their claims is the manufacture, inspection, or distribution of such drywall.[7]

CNBM Group, however, did not engage in any such conduct.  *See Dale v. Colagiovanni*, 443 F.3d 425, 428 (5th Cir. 2006) ("[Section 1605(a)(2)] makes clear that the commercial activity must be that '*of the foreign state*.'" (emphasis in original)).  Nor have Plaintiffs identified any conduct by CNBM Group that is even remotely connected to the drywall at issue in this litigation.  *See Arriba Ltd. v. Petroleos Mexicanos,* 962 F.2d 528, 534 (5th Cir. 1992) ("Carefully read, [the plaintiff's] pleadings allege much less than they imply in the way of 'commercial activity' by or on behalf of [the sovereign defendant].").  Plaintiffs' only allegations specific to CNBM Group appear in a single paragraph of each lengthy Complaint.  And within

---

[7] *See Abner v. Taishan Gypsum Co.*, Case No. 11-3094, Rec. Doc. 1-1, ¶¶ 121-27; *Amorin v. Taishan Gypsum Co.*, Case No. 11-1395, Rec. Doc. 1, ¶¶ 101-107; *Amorin v. Taishan Gypsum Co.*, Case No. 11-1672, Rec. Doc. 1-1, ¶¶ 99-110; *Amorin v. Taishan Gypsum Co.*, Case No. 11-1673, Rec. Doc. 1-1, ¶¶ 104-110; *Gross v. Knauf Gips KG*, Case No. 09-6690, Rec. Doc. 366 , ¶¶ 153-65.

that lone, short paragraph, the only relevant allegation is a conclusory statement that "CNBM Group caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold."[8]  But Plaintiffs allege no specific facts to support this assertion, nor have they offered or identified any supporting evidence.  *See Robinson v. Gov't of Malaysia*, 269 F.3d 133, 146 (2d Cir. 2001) (rejecting plaintiff's attempt to "circumvent the jurisdictional hurdle of the FSIA by inserting vague and conclusory allegations of tortious conduct in their complaints").

        This is because no such evidence exists.  CNBM Group has never manufactured, inspected, sold, supplied, distributed, marketed, exported, or delivered drywall.  *See* Cao Decl. ¶ 9.  It merely indirectly owns shares in publicly listed companies that allegedly were involved in the manufacture or distribution of drywall at issue in this litigation.  *See id.* ¶¶ 16-17.  But CNBM Group did not participate in those activities or business decisions, and it exercised no control over the companies beyond its rights as a mere shareholder.  *See id.* ¶¶ 14-15.  Any indirect role CNBM Group may have played as a shareholder is not "commercial" within the meaning of the FSIA.  *See Kato v. Ishihara*, 360 F.3d 106, 111-12 (2d Cir. 2004) (defendant did not engage in "commercial activity" under the FSIA when it "provided general business development assistance, including product promotion, to Japanese businesses").  And it would also lack an "adequate connection" to Plaintiffs' claims to "form the basis for" their Complaints. *Stena*, 923 F.2d at 387-88.  As such, "the commercial activities exception does not apply."  *Id.* at 387.

---

[8] *Abner v. Taishan Gypsum Co.*, Case No. 11-3094, Rec. Doc. 1-1, ¶ 44; *Amorin v. Taishan Gypsum Co.*, Case No. 11-1395, Rec. Doc. 1, ¶ 30; *Amorin v. Taishan Gypsum Co.*, Case No. 11-1672, Rec. Doc. 1-1, ¶ 30; *Amorin v. Taishan Gypsum Co.*, Case No. 11-1673, Rec. Doc. 1-1, ¶ 30; *Gross v. Knauf Gips KG*, Case No. 09-6690, Rec. Doc. 366, ¶ 45; *State of Louisiana v. Knauf Gips KG*, Case No. 10-340, Rec. Doc. 18011-2, ¶ 33.

13

**b.**  Even if the "based upon" standard were satisfied, § 1605(a)(2) still would not apply because each of the three clauses of the commercial activity exception contains a territorial component requiring a nexus with the United States, and Plaintiffs have not and cannot satisfy the territorial requirement of any of the three clauses.  *See Arriba*, 962 F.2d at 534 (plaintiffs have not shown "a single [sovereign defendant] activity in or directly affecting the United States").

The first two clauses of § 1605(a)(2) each require conduct by the foreign state "in the United States."  *See also Stena*, 923 F.2d at 387-88.  The Complaints, however, do not identify any act allegedly taken by CNBM Group in the United States; the lone conclusory allegation specific to CNBM Group (quoted above) is silent with respect to geography.  *See supra* at 12-13 (text accompanying note 8).  Nor have Plaintiffs come forward with evidence of acts taken by CNBM Group in the United States.  That is because CNBM Group itself does not conduct business in the United States, and never engaged in any activity in the United States even remotely connected to the drywall at issue in this litigation.  *See* Cao Decl. ¶¶ 9-10.  Any unspecified acts that CNBM Group may have taken as a shareholder necessarily would have occurred in China, where CNBM Group is located, not in the United States.  *See Fed. Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270, 1286 (3d Cir. 1993) (sovereign instrumentality's formation of wholly owned subsidiaries in the Netherlands "certainly was not activity undertaken directly in the United States").

Plaintiffs fare no better under the third clause of § 1605(a)(2), which Plaintiffs understandably have not invoked, and which requires that a foreign state's commercial activity abroad cause a "direct effect" in the United States.  To satisfy this requirement, Plaintiffs must show that the alleged injury in the United States follows as an "immediate consequence" of the

14

defendant's relevant conduct; the two cannot be "remote and attenuated." *Weltover*, 504 U.S. at 618. In other words, no "intervening act" may occur between the sovereign defendant's commercial activity abroad and its alleged impact in the United States. *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1133-34 (9th Cir. 2012); *Princz v. Federal Republic of Germany*, 26 F.3d 1166, 1172 (D.C. Cir. 1994) ("A direct effect ... is one which has no intervening element, but, rather, flows in a straight line without deviation or interruption." (internal quotation marks omitted)).

Plaintiffs' alleged injury from defective drywall in the United States is not a "direct effect" of any activity by CNBM Group, nor have Plaintiffs made any specific allegation that it is. For example, Plaintiffs have not alleged that CNBM Group "negotiated, participated or contracted with [them] directly in any way." *Arriba*, 962 F.2d at 534. As noted above, Plaintiffs' lone allegation is that CNBM Group somehow "caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold." *E.g.*, *Amorin v. Taishan Gypsum Co.*, Case No. 11-1672, Rec. Doc. 1-1 p. 12 at ¶ 30. But even if one accepted the conclusory allegation that CNBM Group "caused" the drywall to be sold—in some vague, unexplained way—that still would not make Plaintiffs' alleged injury in the United States an "immediate consequence" of CNBM Group's unspecified activity. *See Morris v. People's Republic of China*, 478 F. Supp. 2d 561, 568 (S.D.N.Y. 2007) ("A line of cases interpreting 'direct effect' in the context of tort liability has found that an intervening act, or an extended causal chain, can keep an effect from being characterized as direct.").

The only role CNBM Group may have played even remotely connected to drywall would have been as an indirect shareholder of publicly listed companies that allegedly manufactured or sold the product. Even a wholly owned subsidiary relationship, however, is "insufficient

commercial activity for [a] district court to conclude it ha[s] subject matter jurisdiction over" a

sovereign corporate parent.  *See Fed. Ins. Co.*, 12 F.3d at 1286 (reversing district court's

conclusion that commercial activity exception applied to sovereign instrumentality "by virtue of

its status as a parent" to other corporate entities).  Nor could Plaintiffs' alleged injuries be a

"direct effect" of any activity by CNBM Group because "[m]any events and actors necessarily

[would have] intervened between" its limited shareholder role and the alleged domestic effect in

the United States.  *Princz*, 26 F.3d at 1172; *see also Guirlando v. T.C. Ziraat Bankasi A.S.*, 602

F.3d 69, 75 (2d Cir. 2010) ("[T]he requisite immediacy is lacking where the alleged effect

depends crucially on variables independent of the conduct of the foreign state." (internal

quotation marks and alteration omitted)).  Other subsidiary companies necessarily took numerous

independent acts to manufacture, inspect, and distribute the drywall at issue.  Because "there are

a number of events and actors that intervene between the time [a product was made in China]

and the time the [product was] sold in America," Plaintiffs "cannot … satisfy the 'direct effect'

requirement of the commercial activity exception."  *Ge v. Peng*, 201 F. Supp. 2d 14, 25 (D.D.C.

2000).

        **2.**      **The Tort Exception Does Not Apply Because CNBM Group's Alleged**
                          **Conduct Did Not Occur in the United States.**

      The tort exception contained in § 1605(a)(5) applies only when the foreign state's

tortious conduct—as well as the alleged injury—occurred within the United States.  *Argentine*

*Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439-41 (1989); *Jones v. Petty-Ray*

*Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1065 (5th Cir. 1992) (the tort exception "requires

not only that personal injury or property damage occur in the United States, but also that the

tortious act or omission occur here").[9]

Here, however, Plaintiffs have not alleged—much less shown—that CNBM Group

engaged in drywall-related activity within the United States.  Rather, because any limited role

that CNBM Group may have played as a shareholder necessarily occurred in China, the Court

"need not pause to consider" whether CNBM Group engaged in any tortious conduct "because it

is clear that the conduct complained of lacks the required nexus with the United States."

*Asociacion de Reclamantes v. United Mexican States*, 735 F.2d 1517, 1524 (D.C. Cir. 1984)

(Scalia, J.).  Plaintiffs also allege—without any specificity—that CNBM Group committed a

tortious omission.[10]  But any such "omission … must be deemed to occur" in China, where

CNBM Group is located.  *Id.* at 1524-25; *see also O'Bryan v. Holy See*, 471 F. Supp. 2d 784,

790 (W.D. Ky. 2007) ("[A]ny omissions committed by the [sovereign defendant] itself clearly

occurred outside of the United States."), *aff'd,* 556 F.3d at 385-86.  Section 1605(a)(5) therefore

"affords no basis for overcoming" CNBM Group's immunity from suit because "[i]t is clear that

the alleged tort committed by [CNBM Group], the exact nature of which remains rather vague

and shadowy, did not occur wholly in this country."  *Coleman*, 888 F. Supp. at 1403.

Nor would it matter for purposes of § 1605(a)(5) if *other* defendants engaged in tortious

activity on U.S. soil.  Even if a tort occurs in the United States, a foreign sovereign's alleged

support of that tort does not confer jurisdiction where the sovereign's support "took place

---

[9] *See also In re Terrorist Attacks*, 714 F.3d 109, 115-16 (2d Cir. 2013) ("[T]he 'entire tort' must be committed in the United States."); *O'Bryan v. Holy See*, 556 F.3d 361, 382 (6th Cir. 2009) (same); *Jerez v. Republic of Cuba*, 775 F.3d 419, 424 (D.C. Cir. 2014) (same).

[10] *See Abner v. Taishan Gypsum Co.*, Case No. 11-3094, Rec. Doc. 1-1, ¶ 99; *Amorin v. Taishan Gypsum Co.*, Case No. 11-1395, Rec. Doc. 1, ¶ 85; *Amorin v. Taishan Gypsum Co.*, Case No. 11-1672, Rec. Doc. 1-1, ¶ 85; *Amorin v. Taishan Gypsum Co.*, Case No. 11-1673, Rec. Doc. 1-1, ¶ 85; *Amorin v. SASAC*, Case No. 14-1727, Rec. Doc. 1, ¶ 8; *Gross v. Knauf Gips KG*, Case No. 09-6690, Rec. Doc. 366, ¶ 48.

completely outside the United States."  *In re Terrorist Attacks*, 714 F.3d 109, 117 (2d Cir. 2013).

Thus, because "*all of the tortious conduct* allegedly committed by [the sovereign defendant]

occurred abroad, plaintiffs' allegations cannot satisfy the noncommercial tort exception to the

immunity conferred by the FSIA."  *Id.* (emphasis in original)); *see also O'Bryan*, 556 F.3d at 385

("[A]ny portion of plaintiffs' claims that relies upon acts committed by the [sovereign defendant]

abroad cannot survive.").

> ### 3.   Other Companies' Actions Cannot Be Attributed to CNBM Group for Purposes of the FSIA Because CNBM Group Did Not Exercise Extensive Control Over Those Companies.

Given the clear inapplicability of these exceptions to sovereign immunity, Plaintiffs are

forced to make the same assertion that they make throughout this litigation—that somehow the

actions of *other* entities, which might themselves have a nexus to the United States, should be

attributed to CNBM Group.[11]  But CNBM Group itself never participated in other companies'

drywall-related activities, Cao Decl. ¶¶ 9, 16, 18, and Plaintiffs cannot demonstrate the alter ego

relationship necessary to attribute actions of these legally separate entities to CNBM Group to

defeat its sovereign immunity.

"[D]uly created instrumentalities of a foreign state are to be accorded a presumption of

independent status" for purposes of the FSIA.  *First Nat'l City Bank v. Banco para el Comercio*

*Exterior de Cuba* ("*Bancec*"), 462 U.S. 611, 627 (1983).  This presumption applies when, as

---

[11] *See Abner v. Taishan Gypsum Co.*, Case No. 11-3094, Rec. Doc. 1-1 pp. 23-26, 42 at ¶¶ 45-49, 99 (alleging that commercial activities were carried on in the United States "along with" other defendant companies that acted as "agent[s]' for CNBM Group); *Amorin v. Taishan Gypsum Co.*, Case No. 11-1395, Rec. Doc. 1, pp. 12-14, 26 at ¶¶ 31-35, 85 (same); *Amorin v. Taishan Gypsum Co.*, Case No. 11-1672, Rec. Doc. 1-1, pp. 12-14, 26 at ¶¶ 31-35, 85 (same); *Amorin v. Taishan Gypsum Co.*, Case No. 11-1673, Rec. Doc. 1-1, pp. 12-14, 26 at ¶¶ 31-35, 85 (same); *see also, e.g.*, PSC Memorandum Regarding Effects of Default and Issue Preclusion, Rec. Doc. 18694 at 5 (asserting that CNBM Group and other defendants are "alter-egos of, or part of a 'single business enterprise' with, Taishan Gypsum").  As CNBM Group has explained before, *see* Rec. Doc. 18594-1 at 8, and as discussed in greater detail below, *see infra* at 41-44, no prior finding of an alter ego relationship regarding other entities supports subject matter jurisdiction under the FSIA or personal jurisdiction under the Due Process Clause for the Moving Defendants.

here, a plaintiff seeks to establish jurisdiction through an exception to immunity.  *See Arriba*,

962 F.2d at 533-34; *Doe v. Holy See*, 557 F.3d 1066, 1078-79 (9th Cir. 2009) (per curiam).  The

presumption of separate status is required by "[d]ue respect" for "the efforts of sovereign nations

to structure their governmental activities in a manner deemed necessary to promote economic

development and efficient administration."  *Bancec*, 462 U.S. at 626-28.  After all, "'[i]f U.S.

law did not respect the separate juridical identities of different agencies or instrumentalities [of

foreign states], it might encourage foreign jurisdictions to disregard the juridical divisions

between different U.S. corporations or between a U.S. corporation and its independent

subsidiary.'"  *Id.* at 628 (quoting H.R. Rep. No. 94-1487, at pp. 29-30 (1976)).

    The presumption in favor of separate juridical status can be overcome "where a corporate

entity is so extensively controlled by its owner that a relationship of principal and agent is

created."  *Bancec*, 462 U.S. at 629; *see Fujian Mawei*, 703 F.3d at 752 (*Bancec* "'remains the

seminal case on the circumstances under which American courts may disregard the separate

status of instrumentalities created by foreign governments'" (quoting *Walter Fuller Aircraft*

*Sales, Inc. v. Republic of Philippines*, 965 F.2d 1375, 1381 (5th Cir. 1992)).  In applying *Bancec*,

the Fifth Circuit looks to the "ownership and management structure" of the corporate entity,

"paying particularly close attention to whether the government is involved in day-to-day

operations, as well as the extent to which the agent holds itself out to be acting on behalf of the

government."  *Walter Fuller*, 965 F.2d at 1382.  "[W]here, as here, jurisdiction depends on an

allegation" that one entity acted as the alter ego of a sovereign defendant, "the plaintiff bears the

burden of proving this relationship."  *Arriba*, 962 F.2d at 533-34; *Foremost-McKesson, Inc. v.*

*Islamic Republic of Iran*, 905 F.2d 438, 447 (D.C. Cir. 1990).

19

Plaintiffs have not and cannot "demonstrate the level of control necessary to overcome the presumption in favor of [CNBM Group's] separate identity." *Fujian Mawei*, 703 F.3d at 754.  It is not even enough if a sovereign defendant has "a general supervisory role" over a corporate subsidiary; instead, Plaintiffs must demonstrate that the sovereign exercised "extensive control" and "was involved in the day-to-day management" of the subsidiary.  *Hester Int'l Corp. v. Federal Republic of Nigeria*, 879 F.2d 170, 181 (5th Cir. 1989); *see also Transamerica Leasing v. La Republica de Venezuela*, 200 F.3d 843, 848 (D.C. Cir. 2000) ("[C]ontrol is relevant when it significantly exceeds the normal supervisory control exercised by any corporate parent over its subsidiary and, indeed, amounts to complete domination of the subsidiary.").  Here, Plaintiffs have not produced evidence showing any "day-to-day, routine involvement" by CNBM Group in the other companies' affairs such that it could be held responsible for their actions.  *Doe*, 557 F.3d at 1079.  Rather, CNBM Group's involvement with the publicly listed companies that were the actual manufacturers and distributors of drywall was as an indirect, partial shareholder; CNBM Group observed regular corporate formalities and did not exercise control over the companies' daily operations or business decisions.  *See* Cao Decl. ¶¶ 14-17.  This is plainly insufficient to subject CNBM Group to jurisdiction.  The Fifth Circuit has made clear that even *complete* ownership and appointment of a board of directors does not overcome the presumption of separate status absent a showing of extensive control and routine, day-to-day involvement. *See Hester*, 879 F.2d at 181; *see also Foremost-McKesson*, 905 F.2d at 448 ("Majority shareholding and majority control of a board of directors, without more, are not sufficient to establish a relationship of principal to agent under FSIA.").  And Plaintiffs' attempt to conflate corporate entities is all the more strained given that CNBM Group has no direct investments in companies that are actually engaged in the drywall business, *see* Cao Decl. ¶ 17; its partial

20

ownership interests must be filtered through multiple levels of subsidiaries before reaching an

actual drywall manufacturer like Taishan. *See Freund v. Republic of France*, 592 F. Supp. 2d

540, 556-57 (S.D.N.Y. 2008) (rejecting attribution theory based on acts of subsidiary companies

where sovereign defendant is removed by multiple levels of intermediaries).

The Court's recent decision in *First Investment Corp. of Marshall Islands v. Fujian Mawei

Shipbuilding* is instructive.  There, the plaintiff (an investment company) sought to name the

PRC as a respondent in its action to confirm an arbitral award against Chinese shipbuilding

companies.  Because the PRC was not a party to the underlying arbitration agreement, applying

an FSIA exception (there, § 1605(a)(6)) would have required finding an alter ego relationship

between the PRC and the shipbuilding companies that it owned.  This Court concluded that the

presumption of separate status established in *Bancec* was not overcome.  Although the PRC's

rights as a shareholder gave it "a significant amount of supervisory control over the [corporate]

entities," petitioners had "fail[ed] to show the requisite level of government involvement in the

day-to-day operations."  858 F. Supp. 2d at 676-77.  The Court warned that "[w]ithout more

evidence" of day-to-day involvement, "'freely ignoring the separate status' of Chinese-state-

owned entities in this manner would unjustifiably frustrate a sovereign nation's attempt to

structure its activities 'in a manner deemed necessary to promote economic development and

efficient administration.'"  *Id.* at 679 (quoting *Bancec*, 462 U.S. at 626).  The Fifth Circuit

affirmed: "Were we to accept [petitioners'] argument we would effectively wipe out the

presumption of separateness."  703 F.3d at 755.  The same is true here.  Plaintiffs seek to

attribute other companies' actions to CNBM Group for purposes of the FSIA without any

evidence whatsoever that CNBM Group exercised control over those companies beyond its

rights as a mere shareholder.  As in *Fujian Mawei*, Plaintiffs' allegations and evidence "fall far

short of the type of control necessary to establish an alter ego relationship."  *Id.* at 754.

Perhaps the best evidence of Plaintiffs' inattention to *Bancec*'s presumption of separate

status and the FSIA's basic limitations on the Court's jurisdiction is the fact that they also have

sued the State-owned Assets Supervision and Administration Commission (SASAC).  S*ee*

*Amorin v. State-Owned Assets Supervision and Administrative Commission*, Case No. 2:14-cv-

1727.  SASAC is a government commission operating under the State Council of the PRC and

thus clearly a sovereign entity within the meaning of the FSIA.  *See supra* note 4 (explaining that

SASAC is a foreign state or political subdivision); *see also* Rec. Doc. 18679-2 (recognizing that

SASAC is a sovereign entity covered by the FSIA by seeking to serve SASAC under § 1608 of

the statute).  SASAC is immune from suit in this litigation for many of the same reasons that

CNBM Group is: no exception to immunity applies because Plaintiffs do not base their claims

upon any activity by SASAC, nor have Plaintiffs identified any commercial activity (or tortious

act or omission) by SASAC that occurred in or directly affected the United States.  And the

Court in *Fujian Mawei* expressly rejected the argument that (there, a provincial-level) SASAC's

supervisory control over a state-owned enterprise and its subsidiary was sufficient to overcome

*Bancec*'s presumption of separateness.  858 F. Supp. 2d at 676.[12]

---

[12] As mentioned previously, *see supra* at 9, the Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006).  "Accordingly, even if the foreign state does not enter an appearance to assert an immunity defense, a district court still must determine [whether] immunity is unavailable under the Act."  *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493-94 & n.20 (1983); *accord Siderman de Blake v. Republic of Arg.*, 965 F.2d 699, 706 (9th Cir. 1992); *see also Walters v. Indus. & Commer. Bank of China, Ltd.*, 651 F.3d 280, 292-93 (2d Cir. 2011) ("If a court may consider an issue on its own motion [as in the case of subject-matter jurisdiction under the FSIA], it does not matter what triggers the court's inquiry. The court may consider the issue once it is suggested by *any* party—or, for that matter, nonparty …."); Fed. R. Civ. P. 12(h)(3) (requiring dismissal "[i]f the court determines at any time that it lacks subject-matter jurisdiction").

Obviously, Plaintiffs' conclusory allegations cannot satisfy the requirements of *Bancec*. And Plaintiffs have neither alleged nor shown any facts that, if proven true, would justify disregarding the separate juridical status of CNBM Group from the other defendants. Accordingly, the Court must reject Plaintiffs' "breathtakingly bold" theory that CNBM Group operated as a single enterprise with numerous other defendant companies, such that corporate separateness may be ignored to deprive CNBM Group of its sovereign immunity from suit. *Arriba,* 962 F.2d at 534.  Because no exception to immunity applies, CNBM Group must be dismissed from this litigation for lack of subject matter jurisdiction.

## II.    THIS COURT LACKS PERSONAL JURISDICTION OVER THESE DEFENDANTS, WHO HAVE NO MINIMUM CONTACTS WITH THE FORUM STATES.

This Court lacks personal jurisdiction over the Moving Defendants.  They are primarily Chinese corporations that have no minimum contacts with the forum states.  The Complaints contain no allegation that any of these defendants had any relationship to the drywall at issue in this litigation beyond the conclusory and wholly unsupportable assertion that some of the Moving Defendants "caused" the drywall purchases at issue, and that others are "agents" of various defendants, including BNBM PLC, a company that shares nothing more with the Moving Defendants than certain common shareholders.  These bald allegations do not establish personal jurisdiction, and the claims against these defendants should be dismissed.

"For due process requirements to be met in a court's assertion of personal jurisdiction, the nonresident defendant must have certain 'minimum contacts' with the forum state." *Bean Dredging Corp. v. Dredge Tech. Corp.*, 744 F.2d 1081, 1083 (5th Cir. 1984) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).[13]  Plaintiffs bear the burden of establishing that

---

[13] Because the long-arm statutes in the forum states are either coextensive with, or *more* restrictive than, the requirements of due process, the Moving Defendants focus here on Plaintiffs' failure to allege constitutional

the court has personal jurisdiction over the defendants.  *See Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).  In assessing whether this burden is met, the court may not "credit conclusory allegations," *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001), nor embrace factual allegations that are "contradicted by affidavits," *Wyatt v. Kaplan*, 686 F.2d 276, 282 n.13 (5th Cir. 1982).

To comport with due process, "[t]here are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction."  *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).  Plaintiffs cannot demonstrate either.

### A.    This Court Lacks General Jurisdiction Over the Moving Defendants.

To establish general jurisdiction, Plaintiffs would have to demonstrate that each defendant's contacts with the forum states are "so continuous and systematic as to render [it] essentially at home in [the relevant state]."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).  "The continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum."  *Johnston*, 523 F.3d at 609.

Plaintiffs do not even allege, nor could they, that the defendants are "at home" in any of the forum states.  To the contrary, the Complaints make clear that these defendants are primarily

---

minimum contacts.  *See, e.g.*, *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999) ("Louisiana's long-arm statute extends to the limits of due process …."); *Mallard v. Aluminum Co. of Can.*, 634 F.2d 236, 241 (5th Cir. 1981) ("Florida state courts have repeatedly held that the Florida statute requires more activities or contacts to sustain personal jurisdiction than demanded by the Constitution."); *Village Lane Rentals, LLC v. Capital Fin. Grp.*, 159 F. Supp. 2d 910, 914 (W.D. Va. 2001) ("Virginia's long-arm statute extends personal jurisdiction to the constitutionally permissible limits of the Due Process Clause of the Fifth Amendment."); Cal. Civ. Proc. Code § 410.10 (West) (long-arm statute includes "jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States").  Similarly, even if the Court concludes that it has statutory authority to assert personal jurisdiction over CNBM Group pursuant to an exception to sovereign immunity in the FSIA, *see* 28 U.S.C. § 1330(b), Plaintiffs still must show that the exercise of such jurisdiction would be consistent with the constitutional requirements of due process.  *See First Inv. Corp. of Marsh. Is. v. Fujian Mawei Shipbuilding, Ltd.*, 858 F. Supp. 2d 658, 671-73 (E.D. La.), *aff'd* 703 F.3d 742 (5th Cir. 2012).

foreign entities—CNBM Group is identified as "a state owned entity … controlled by the Chinese government" and CNBM Co. is referred to as a "partially owned subsidiary of BNBM Group," another "state owned entity."[14]  CNBMIT is conceded to be a "foreign corporation,"[15] and California corporations CNBM USA and United Suntech are not alleged to have continuous or systematic contacts with any state other than their incorporation in California.[16]  There is no basis for general jurisdiction over a defendant who lacks any physical presence in the forum states and has no "continuous and systematic" contacts with the forum.  *Goodyear*, 131 S. Ct. at 2851.

**B.      This Court Lacks Specific Jurisdiction Over the Moving Defendants.**

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (internal quotations omitted).  This Court cannot exercise specific jurisdiction over a defendant unless the plaintiff establishes: "(1) minimum contacts by the defendant purposefully directed at the forum state, (2) a nexus between the defendant's contacts and the plaintiff's claims, and (3) that the exercise of jurisdiction over the defendant be fair and reasonable."  *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir.

---

[14] *Gross v. Knauf Gips KG*, Case No. 09-6690, Rec. Doc. 366, ¶¶ 40, 42, 44; *Amorin v. Taishan Gypsum*, Case No. 11-1395, Rec. Doc. 1, ¶¶ 28-30; *Amorin v. Taishan Gypsum*, Case No. 11-1672, Rec. Doc. 1, ¶¶ 28-30; *Amorin v. Taishan Gypsum*, Case No. 11-1672, Rec. Doc. 1, ¶¶ 28-30; *Abner v. Taishan Gypsum*, Case No. 11-3094, Rec. Doc. 1,  ¶¶ 42-44; *State of Louisiana v. Knauf Gips KG*, Case No. 10-340, Rec. Doc. 18011-2, ¶¶ 31-33.

[15] *Amorin v. Taishan Gypsum*, Case No. 11-1395, Rec. Doc. 1, ¶35; *Amorin v. Taishan Gypsum*, Case No. 11-1672, Rec. Doc. 1, ¶35; *Amorin v. Taishan Gypsum*, Case No. 11-1673, Rec. Doc. 1, ¶35; *Abner v. Taishan Gypsum*, Case No. 11-3094, Rec. Doc. 1,  ¶ 49.

[16] *Amorin v. Taishan Gypsum*, Case No. 11-1395, Rec. Doc. 1, ¶¶ 31, 34; *Amorin v. Taishan Gypsum*, Case No. 11-672, Rec. Doc. 1, ¶¶ 31, 34; *Amorin v. Taishan Gypsum*, Case No. 11-1673, Rec. Doc. 1, ¶¶ 31, 34; *Abner v. Taishan Gypsum*, Case No. 11-3094, Rec. Doc. 1, ¶¶ 45, 48.  CNBM USA and United Suntech are entities that are or were organized under the laws of the State of California.  Accordingly, they are subject to personal jurisdiction only in *Abner v. Taishan Gypsum*, Case No. 11-3094, which was originally filed in the United States District Court for the Central District of California.

2012).  The plaintiff has the burden to establish the first two prongs and the defendant the last.

*Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 382 (5th Cir. 2002).

      This Court lacks specific jurisdiction over the Moving Defendants for the simple reason

that they have no meaningful connection to the forum states or the drywall at issue in this case.

None of the Moving Defendants manufactured drywall, marketed or promoted drywall, imported

drywall, or sold drywall into the United States or anywhere else during the relevant period.  Cao

Decl. ¶ 9; Chang Decl. ¶ 3; Zhang Decl. ¶ 8;  Chuan Decl. ¶ 10; Liu Decl. ¶ 7.  Plaintiffs have

not alleged any conduct by the Moving Defendants "purposefully directed" at the forum state,

nor any nexus between the alleged contacts and Plaintiffs' claims.  *ITL Int'l*, 669 F.3d at 498.

More fundamentally, Plaintiffs' allegations cannot satisfy the barest requirement of due process:

that the exercise of jurisdiction over a foreign defendant with no meaningful relationship to the

forum state be "fair and reasonable."  *Id.*  The Moving Defendants have nothing more than a

thread of financial investments connecting them to companies, like Taishan and TTP, that

actually sold drywall in the United States.  CNBM Group, for instance, directly holds no interest

in Taishan and indirectly holds only a nominal interest through multiple layers of investment.

Cao Decl. ¶ 17; Clarke Decl. Ex. D.  That mere thread cannot support specific jurisdiction and is

insufficient to impute other companies' contacts to the Moving Defendants.

          **1.**      **Even if Plaintiffs' Allegations Were True, They Fail to Establish Specific Jurisdiction Over the Moving Defendants.**

              **a.**      **The Moving Defendants Have Not Purposefully Directed Activity Toward the Forum States.**

      To show purposeful direction, a plaintiff must demonstrate "that the defendants []

directed their actions towards the forum, and knew their effects would be felt there."  *Fielding v.*

*Hubert Burda Media, Inc.*, 415 F.3d 419, 425 (5th Cir. 2005) (citing *Calder v. Jones*, 465 U.S.

783, 789-90 (1984)).  It is not enough to aver generally that a defendant "does business" or

"caused" conduct in the forum when that allegation is unsupported by facts and denied by affidavit, *see Wyatt*, 686 F.2d at 282 n.13, nor is it enough to allege that defendants placed items into a generalized stream of commerce, even if the products ultimately reached the forum state, *see Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 112 (1987) (plurality opinion); *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780, 2788 (2011) (plurality opinion). Because Plaintiffs failed to make any supportable allegation of activity purposefully directed to the forum states, the Complaints against these Moving Defendants must be dismissed.

### (1)   Unsupported and Refuted Allegations of Conduct in the Forum Do Not Form a Basis for Personal Jurisdiction.

A plaintiff's burden to plead facts in support of personal jurisdiction is not an exercise in empty recitation; the complaint must identify specific facts that make out a "prima facie showing" of jurisdiction. *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1161 (5th Cir. 1983). Conclusory statements, unsupported by specific facts, do not satisfy that burden. *See Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003) (court will not accept allegations that are "merely conclusory"); *Panda Brandywine*, 253 F.3d at 869 (same).

In two of the relevant Complaints, Plaintiffs contend that CNBM Co. is "a manufacturer and distributor of drywall products."[17] This is simply false. CNBM Co. has never manufactured or distributed drywall, in the United States or elsewhere. Chang Decl. ¶ 3. In fact, CNBM Co. does not manufacture or distribute any products at all, and it never has. *Id.* It is a holding company with the business objective of advancing the building materials industry in China. *Id.* The Fifth Circuit has held it impermissible to exercise personal jurisdiction over a defendant

---

[17] *Posey v. BNBM Co. Ltd.*, Case No. 09-6531, Rec. Doc. 1-1, ¶ 23; *Morris v. BNBM Co. Ltd.*, Case No. 09-6530, Rec. Doc. 1-1, ¶ 16.

based on allegations that are specifically "contradicted by affidavit."  *Wyatt*, 686 F.2d at 282 n.13.

Plaintiffs' only half-hearted attempt to allege any connection between these defendants and the forum states is the vague allegation that the Moving Defendants "caused" the drywall to be "imported, distributed, delivered, supplied, inspected, marketed and/or sold."[18]  But the only specific conduct these defendants allegedly engaged in to "cause" Plaintiffs' injuries was "promoting and marketing the drywall at issue."[19]  This allegation is both contradicted by affidavit and impermissibly conclusory.  None of the Moving Defendants has ever promoted or marketed drywall in the relevant period.  *See* Cao Decl. ¶ 9; Chang Decl. ¶ 3; Zhang Decl. ¶ 8; Chuan Decl. ¶ 10; Liu Decl. ¶ 7.  Indeed, none of the Moving Defendants ever had *any* commercial involvement in the sale of drywall in the United States or elsewhere.  *Id.*  In any event, Plaintiffs fail to allege how generalized "promoting and marketing" of drywall could have foreseeably "caused" their injuries in the forum states.  Plaintiff' allegations are therefore both counterfactual and "merely conclusory," and must be rejected.  *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).

### (2)    Plaintiffs Fail to Allege Activities Purposefully Directed Toward the Forum States.

The remaining allegations against the Moving Defendants fail to satisfy due process because they do not allege activities purposefully directed *at the forum states*, rather than the U.S. market as a whole.  Plaintiffs have made no secret of their principal theory of personal jurisdiction—that "[b]ecause the Defendants shipped their product into Florida as part of a

---

[18] *Amorin v. Taishan Gypsum*, Case No. 11-1395, Rec. Doc. 1, ¶¶ 28-30, 34-35; *Amorin v. Taishan Gypsum*, Case No. 11-1672, Rec. Doc. 1, ¶¶ 28-30, 34-35; *Amorin v. Taishan Gypsum*, Case No. 11-1672, Rec. Doc. 1, ¶¶ 28-30, 34-35; *Abner v. Taishan Gypsum*, Case No. 11-3094, Rec. Doc. 1, ¶¶ 42-45, 48-49; *State of Louisiana v. Knauf Gips KG*, Case No. 10-340, ¶¶ 32-33.

[19] *Id.*

systematic stream of commerce and distribution, all of them have subjected themselves to process[.]"[20]  This allegation, the spirit of which underlies all of Plaintiffs' allegations of jurisdiction in the MDL, fails to satisfy even the more lenient of the two minimum contacts tests that have emerged from the Supreme Court's divided opinions in *Asahi Metal Industry Co., Ltd. v. Superior Court of California,* 480 U.S. 102 (1987), and *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011).  This more lenient "stream of commerce" test, set forth in Justice Brennan's concurrence in *Asahi* and applied where Fifth Circuit law governs, requires not only "the placement of a product into the stream of commerce" but also that "a participant in this process is *aware that the final product is being marketed in the forum State*[.]"  480 U.S. at 117 (Brennan, J., concurring in the judgment) (emphasis added); *see also Ainsworth v. Moffett Eng'g, Ltd.,* 716 F.3d 174, 177-78 (5th Cir. 2013).

    The Fourth, Ninth and Eleventh Circuits, where many of these cases were filed, apply a more stringent "stream-of-commerce plus" test derived from the plurality opinions in *Asahi* and *McIntyre*, which requires an even greater showing to establish minimum contacts over a foreign defendant.  *See ESAB Grp., Inc. v. Zurich Ins. PLC,* 685 F.3d 376, 392 (4th Cir. 2012); *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007); *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1548-49 (11th Cir. 1993) (applying, without expressly endorsing, this test).  Unlike the Fifth Circuit's test, which requires only that the defendant be aware that its product would end up in the forum state, this test requires "[a]dditional conduct of the defendant" that "may indicate an intent or purpose to serve the market in the forum state." *Asahi*, 480 U.S. at 112 (plurality opinion); *see also McIntyre*, 131 S. Ct. at 2788 (plurality opinion) ("The defendant's transmission of goods permits the exercise of jurisdiction only where

---

[20] *Morris v. BNBM Co. Ltd.*, Case No. 09-6530, Rec. Doc. 1-1, ¶ 18.

the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State."). The stream-of-commerce plus test should govern here for two reasons: first, some of these cases were filed in the Fourth, Ninth, and Eleventh Circuits, and the transferor court's interpretation of federal law controls in an MDL transfer case, *see In re Ford Motor Co.*, 591 F.3d 406, 413 n.15 (5th Cir. 2009); and second, the Fifth Circuit itself should adopt the stream-of-commerce plus test because it is more consistent with due process. *See ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 392 (4th Cir. 2012); *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 943-46 (4th Cir. 1994).

In any event, this Court lacks jurisdiction under either test. Plaintiffs do not allege that the Moving Defendants knowingly directed any conduct at the forum states; instead, they repeatedly allege only that there was conduct directed at the U.S. market as a whole. For instance, the Complaints allege that CNBM USA, United Suntech and CNBMIT each "acted as an agent for [other defendants] … by promoting and marketing the drywall at issue in this litigation *to American suppliers*."[21] Similarly, the Complaints later assert that certain U.S. entities "were set up by Defendants to further market and promote the sale of their products *to American consumers*."[22] Even if these conclusory allegations were true, the act of "promoting and marketing" a product "to American suppliers" and "American consumers" is a far cry from alleging (much less establishing) that the conduct was directed at a specific state. As the Fifth Circuit has recognized, a majority of justices in *McIntyre* emphasized that the defendant must

---

[21] *Amorin v. Taishan Gypsum*, Case No. 11-1395, Rec. Doc. 1, ¶¶ 31, 34-35 (emphasis added); *Amorin v. Taishan Gypsum*, Case No. 11-672, Rec. Doc. 1, ¶¶ 31, 34-35; *Amorin v. Taishan Gypsum*, Case No. 11-1673, Rec. Doc. 1, ¶¶ 31, 34-35; *Abner v. Taishan Gypsum*, Case No. 11-3094, Rec. Doc. 1, ¶¶ 45, 48-49.

[22] *Amorin v. Taishan Gypsum*, Case No. 11-1395, Rec. Doc. 1, ¶ 88 (emphasis added); *Amorin v. Taishan Gypsum*, Case No. 11-1672, Rec. Doc. 1, ¶ 88; *Amorin v. Taishan Gypsum*, Case No. 11-1673, Rec. Doc. 1, ¶ 88; *Abner v. Taishan Gypsum*, Case No. 11-3094, Rec. Doc. 1, ¶ 105.

intend to serve a market *in the particular forum state*, rather than simply the "U.S. market," and thus "the proper inquiry focuses exclusively on forum-specific, rather than nationwide contacts." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 586 n.11 (5th Cir. 2014) (citing *McIntyre*, 131 S. Ct. at 2790 (plurality opinion); *id.* at 2793 (Breyer, J., concurring)). Indeed, Plaintiffs' allegations are nearly identical to those embraced only by the *McIntyre* dissent, which would have held that the manufacturer's "efforts to develop a market for its industrial machines anywhere and everywhere in the United States" could suffice to subject the manufacturer to personal jurisdiction in any state where its product caused injury. 131 S. Ct. at 2800 (Ginsburg, J., dissenting).[23]

The same is true of the allegation that CNBM Group and CNBM Co. "caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold."[24]  This is nothing more than a claim that these defendants placed drywall in the national stream of commerce.  Plaintiffs fail to allege that CNBM Group or CNBM Co. knew the location of the relevant drywall sales or any activity that was "directed" at a forum state.

These bald allegations of participation in the national stream of commerce are not enough.  Contacts are only purposefully directed at a forum when "the defendant delivered the product into the stream of commerce *with the expectation that it would be purchased by or used*

---

[23] For these same essential reasons, Plaintiffs cannot establish specific jurisdiction by alleging contacts with a non-forum state.   For example, Plaintiffs allege that CNBM USA and United Suntech are "California corporation[s] with a principal place of business in California." *See Amorin v. Taishan Gypsum*, Case No. 11-1395, Rec. Doc. 1, ¶¶ 31, 34; *Amorin v. Taishan Gypsum*, Case No. 11-672, Rec. Doc. 1, ¶¶ 31, 34; *Amorin v. Taishan Gypsum*, Case No. 11-1673, Rec. Doc. 1, ¶¶ 31, 34; *Abner v. Taishan Gypsum*, Case No. 11-3094, Rec. Doc. 1, ¶¶ 45, 48. Their presence in California does not subject them to personal jurisdiction in Florida, Louisiana, or Virginia. *See Walden*, 134 S. Ct. at 1121 ("the defendant's suit-related conduct must create a substantial connection *with the forum State*" (emphasis added)).

[24] *Amorin v. Taishan Gypsum*, Case No. 11-1395, Rec. Doc. 1, ¶¶ 28-30; *Amorin v. Taishan Gypsum*, Case No. 11-1672, Rec. Doc. 1, ¶¶ 28-30; *Amorin v. Taishan Gypsum*, Case No. 11-1672, Rec. Doc. 1, ¶¶ 28-30; *Abner v. Taishan Gypsum*, Case No. 11-3094, Rec. Doc. 1,  ¶¶ 42-44; *State of Louisiana v. Knauf Gips KG*, Case No. 10-340, ¶¶ 31-33.

by consumers in the forum state." *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987) (emphasis added).  Plaintiffs do not—and cannot—plead any supportable allegation of such expectation as to these Moving Defendants, and therefore the constitutional requirement of minimum contacts is not met.

        **b.**     **Plaintiffs' Claims Do Not Arise from the Moving Defendants' Alleged Contacts with the United States.**

Plaintiffs have failed to establish sufficient minimum contacts for a second reason:  They have not adequately alleged a causal relationship between the defendant's forum contacts and the basis of the litigation—i.e., that the claims arise out of the alleged forum-related activities.  *See, e.g.*, *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985) (due process satisfied only where "the litigation results from alleged injuries that 'arise out of or relate to' [a defendant's forum] activities"); *Revell v. Lidov*, 317 F.3d 467, 472 (5th Cir. 2002) ("For specific jurisdiction we look only to the contact out of which the cause of action arises ….").  Thus, for the Court to exercise specific jurisdiction, Plaintiffs must show that their alleged injuries were "proximately caused" by the defendant's alleged forum contacts.  *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 325 (5th Cir. 1996); *see also Clemens v. McNamee*, 615 F.3d 374, 378-79 (5th Cir. 2010) (specific jurisdiction "requires a sufficient nexus between the non-resident's contacts with the forum and the cause of action").

Plaintiffs' allegations of the Moving Defendants' contacts with the forum—which, as described above, are tenuous at best—do not nearly satisfy this requirement.  Plaintiffs claim they were injured by allegedly defective drywall.  But there is no credible allegation that any of these defendants actually manufactured, sold, or delivered any drywall to these Plaintiffs, or indeed at all.  Were there any support for this theory it would be a central feature of the Complaints.  Lacking any such plausible allegations, Plaintiffs have thrown in a laundry list of

allegations that these defendants "marketed," or "promoted" the drywall.  Even if this were true (and it is not), and even if the alleged marketing were directed at the forum states, such conduct did not proximately cause Plaintiffs' injury.  *See ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 500 (5th Cir. 2012) (dismissing for lack of personal jurisdiction where "[t]here is little nexus" between alleged forum contacts and plaintiffs' claims); *Pizarro v. Hoteles Concorde Int'l, C.A.*, 907 F.2d 1256, 1260 (1st Cir. 1990) (hotel's forum-based advertising did not support jurisdiction over plaintiff's claim against an allegedly negligent hotel employee because advertising was not the "legal or proximate cause of the ... injury").  Plaintiffs point to no evidence supporting the assertion that the Moving Defendants engaged in conduct in the forum states that is the cause of the asserted claims.  Therefore, the Court cannot exercise specific personal jurisdiction over the Moving Defendants.

The timing of Plaintiffs' alleged injuries is further reason that there is no causal nexus between the Moving Defendants' forum-related contacts and Plaintiffs' claims.  Here, because Plaintiffs' alleged injuries arose out of drywall presumably purchased from roughly 2005 to 2007,[25] that is the time period for which Plaintiffs must allege drywall-related forum contacts. *See Steele v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987) ("courts must examine the defendant's contacts with the forum at the time of the events underlying the dispute").  As the Moving Defendants have set forth above, none of these defendants ever manufactured or sold drywall—in the relevant time period or at any other time.  But at least some of the alleged injuries cannot have arisen from Moving Defendant forum contacts for additional reasons.  For instance, defendant CNBM USA was incorporated in October 2006 and was not operating until

---

[25] Although, Plaintiffs refer to the "relevant period" of Taishan and TTP's forum contacts as "[f]rom 2005 to 2009," MDL 2047, Rec. Doc. No. 18028, ¶18, there is no evidence that any entity related to CNBM sold drywall into the United States later than July 2007.  *See* MDL 2047, Rec. Doc. 14215-3, Herman Aff. Ex. 1 (PSC document identifying all relevant Taishan/TTP drywall sales with final sale on July 3, 2007).

early 2007.  Zhang Decl. ¶ 4.  It is therefore impossible that any of CNBM USA's forum

contacts could possibly have caused Plaintiffs to purchase drywall in 2005 or 2006.   Further, for

some of the relevant time period in 2005, none of the Moving Defendants had any investment

interest in Taishan, even indirectly.  BNBM PLC acquired an interest in Taishan in 2005 through

a subscription of new shares.  *See* BNBM Mot. to Dismiss, MDL 2047, Rec. Doc. 18774-3,

Yang Decl. ¶8.  Prior to that time, Taishan had no relationship at all to these defendants.  By

failing to identify the date of their injuries, Plaintiffs have failed to plead claims that necessarily

arose from the Moving Defendants alleged forum contacts.[26]

### c.    The Exercise of Specific Jurisdiction Over the Moving Defendants Would Not Be Reasonable.

"Even where … 'minimum contacts' exist, we also inquire whether requiring a defendant

to litigate in the forum state would be unfair."  *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359,

1361 (5th Cir. 1990).  This "reasonableness" inquiry takes on particular significance when, as

here, the defendants have only tenuous contacts with the forum.  *See  Ins. Co. of N. Am. v.

Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981) ("The smaller the element of

purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its

exercise.").  If these defendants purposefully interjected themselves into the forum at all, it was

only in the most minimal fashion—they are foreign entities (or, as to CNBM USA and United

Suntech, domestic entities with limited or no U.S. operations) that, even under the allegations,

have undertaken no relevant activities aimed at California, Florida, Virginia, or Louisiana.

---

[26] Nor can the Court exercise specific jurisdiction based on contacts the defendants may have had with the forum during the course of the litigation; Plaintiffs' underlying claims logically cannot "arise out of" such contacts.  *See United Phosphorus, Ltd. v. Angus Chem. Co.*, 43 F. Supp. 2d 904, 910 (N.D. Ill. 1999) ("jurisdiction attaches (or does not attach) as of the time that an action is filed").  For the same reason, even if the Court concludes that it has jurisdiction over the Moving Defendants for purposes of the *Germano* contempt proceedings—which it does not — there still would not be specific jurisdiction over the Moving Defendants for purposes of the underlying claims in the MDL litigation itself.

Exercising personal jurisdiction is particularly inappropriate here for the foreign defendants.  In *Asahi*, the Supreme Court counseled caution when extending personal jurisdiction over foreign defendants for two important reasons.  First, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." 480 U.S. at 114.  Defending a lawsuit in the United States imposes a substantial burden on defendants based overseas.  And "[t]he burden is of particular significance if ... the defendant did little to reach out to the forum state."  *Kern v. Jeppesen Sanderson, Inc.*, 867 F. Supp. 525, 535 (S.D. Tex. 1994).  In this case, not only are the defendants' operations in China, so are all of the potential witnesses and evidence.  Indeed, the process of responding to the contempt discovery requests alone has imposed extraordinary burdens—collecting and processing documents that must be individually translated for substantive review and production, identifying and preparing witnesses for deposition, and flying those witnesses from China to the United States to be deposed.

Second, the Supreme Court has instructed that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field" because such suits inherently implicate the sovereignty of a foreign state.  *Asahi*, 480 U.S. at 115.  Accordingly, "when foreign defendants are involved," a court must "consider the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction by the [forum state]."  *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 615 (5th Cir. 2008) (alteration in original).  The Moving Defendants are Chinese-owned entities, principally located in China and doing business in accordance with Chinese law.  This lawsuit seeks to hold them accountable under U.S. law, notwithstanding their total lack of contacts with

the United States.  These circumstances counsel in favor of a conservative exercise of this Court's authority.

### 2. Other Companies' Contacts Cannot Be Imputed to the Moving Defendants to Support Specific Jurisdiction.

Specific jurisdiction must "arise out of contacts that the defendant *himself* creates with the forum State."  *Walden*, 134 S. Ct. at 1122 (emphasis in original) (internal quotation marks omitted).  Here, however, because the Moving Defendants lack even the most minimal contacts with the forum states, Plaintiffs seek to support jurisdiction by imputing the contacts of *other* corporate defendants that are more closely tied to the drywall at issue.  To impute the forum contacts of one corporation to another, the contacts must be made by an agent acting within the scope of its agency, *see Carson v. Maersk, Ltd.*, 61 F. Supp. 2d 607, 610 (S.D. Tex. 1999), or by an entity that is the "alter ego" of a defendant—*i.e.*, where corporate separateness is so completely absent that the corporations "do not in reality constitute separate and distinct corporate entities," *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990).  Plaintiffs do not and cannot meet their burden to show any alter ego or agency relationship.

### a. The Moving Defendants Are Not Agents of BNBM or Other Defendants.

Plaintiffs attempt to plead around their failure to identify any meaningful forum-based contacts by alleging that CNBMIT, CNBM USA, and United Suntech were "agents" of BNBM PLC, CNBM Co., BNBM Group and/or CNBM Group "by promoting and marketing the drywall at issue in this litigation to American suppliers."[27]  This theory is deficient for multiple reasons.

First, in the wake of the Supreme Court's recent decision in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), there is serious reason to question whether even plausible allegations of

---

[27] *Amorin v. Taishan Gypsum*, Case No. 11-1395, Rec. Doc. 1, ¶¶ 31, 34-35; *Amorin v. Taishan Gypsum*, Case No. 11-672, Rec. Doc. 1, ¶¶ 31, 34-35; *Amorin v. Taishan Gypsum*, Case No. 11-1673, Rec. Doc. 1, ¶¶ 31, 34-35; *Abner v. Taishan Gypsum*, Case No. 11-3094, Rec. Doc. 1,  ¶¶ 45, 48-49.

agency are sufficient to establish specific jurisdiction.  *See also In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521, 530-31 (5th Cir. 2014) ("[A]uthority is split over whether imputation on the basis of an agency relationship comports with Federal Due Process."). The Fifth Circuit read *Daimler* to "embrace[] the significance of a principal-agent relationship to the specific-jurisdiction analysis," but went on to note that "it suggests that an agency relationship alone may not be dispositive."  *Id.* at 531.

Second, even if agency were enough to impute the contacts of an agent to the principal, Plaintiffs have pleaded that the Moving Defendants are the *agents*, not the principals.[28] Accordingly, any relevant contacts that the alleged principals may have had with the forum states cannot be imputed to these defendants.  *See Henry v. Offshore Drilling (W.A.) Pty., Ltd.*, 331 F. Supp. 340, 342 (E.D. La. 1971) (rejecting imputation of contacts from the parent to the subsidiary except "where the parent can be said to have acted as agent of the subsidiary"). Plaintiffs must still plead—and they have not—minimum contacts purposefully directed at the forum states by the Moving Defendants themselves.

Third, the allegations of agency are both unsupported and false.  Conclusory allegations about the relationship between parties are not, without more, sufficient to establish agency for purposes of personal jurisdiction.  *Adm'rs of Tulane Educ. Fund v. Ipsen, S.A.,* 450 F. App'x 326, 333 (5th Cir. 2011) ("bald assertion" of agency absent "evidence to support an express authorization" fails to plead personal jurisdiction); *Collier v. Batiste*, No. CIV. A. 05-0019, 2005 WL 3543824, at *7 (E.D. La. Oct. 21, 2005) ("To withstand [a motion to dismiss], the intent to create a principal-agent relationship must be asserted as a matter of fact rather than as a conclusory allegation."); *see also Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) ("[C]onclusory allegations or legal conclusions masquerading as factual

---

[28] *See supra* n. 27.

conclusions will not suffice to prevent a motion to dismiss.").  Indeed, it is a staple of due

process jurisprudence that courts must "presume[] the institutional independence of related

corporations ... when determining if one corporation's contacts with a forum can be the basis of a

related corporation's contacts."  *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th

Cir. 1999).

      Plaintiffs have not established an agency relationship between the Moving Defendants

and any of the alleged principals.  *See Matter of Oxford Mgmt., Inc.*, 4 F.3d 1329, 1336 (5th Cir.

1993) ("an agency relationship cannot be presumed, it must be clearly established").  The

Complaints state nothing more than that these defendants "acted as an agent … by promoting

and marketing the drywall at issue in this litigation to American suppliers."[29]  But agency must

be established through "express authorization" or "implied appointment arising from apparent

authority."  *Adm'rs of Tulane Educ. Fund*, 450 F. App'x at 333.[30]  Express authorization requires

(1) acknowledgement by the principal that the agent will act for him, (2) the agent's acceptance

of the undertaking, and (3) control by the principal over the actions of the agent.  *See*

Restatement (Third) Of Agency § 1.01 (2006).[31]  The principal's control must be "very

significant"; the Fifth Circuit in the prior appeal involving Taishan found the standard met where

the agent "had no independent purpose outside of servicing TG's needs."  *In re Chinese-*

---

[29] *Amorin v. Taishan Gypsum*, No. 11-1395, Rec. Doc. 1, ¶¶ 31, 34-35; *Amorin v. Taishan Gypsum*, No. 11-672, Rec. Doc. 1, ¶¶ 31, 34-35; *Amorin v. Taishan Gypsum*, No. 11-1673, Rec. Doc. 1, ¶¶ 31, 34-35; *Abner v. Taishan Gypsum*, No. 11-3094, Rec. Doc. 1,  ¶¶ 45, 48-49.

[30] Because this Court applies the substantive state law of the transferor court in determining personal jurisdiction, the question of whether Plaintiffs have sufficiently plead an agency relationship must be decided under the state agency laws of California, Virginia, Louisiana, and Florida.  *See In re Vioxx Product Liability Litigation*, 478 F. Supp. 2d 897, 903 (E.D. La. 2007).

[31] This standard has been adopted in each relevant forum state.  *See Goldschmidt v. Holman*, 571 So.2d 422, 424 n.5 (Fla. 1990); *Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1239 (N.D. Cal. 2004) (same under California law); *Premier Dealer Servs., Inc. v. Duhon*, No. CIV. A. 12-1498, 2013 WL 3984154, at *5 (E.D. La. July 31, 2013) (Louisiana law); *Reistroffer v. Pers.*, 439 S.E.2d 376, 378 (1994) (Virginia law).

*Manufactured Drywall Prods.*, 753 F.3d at 530, 534.  (Of course, whatever the Fifth Circuit

found as to the relationship between Taishan and TTP has no bearing on their upstream

relationships with other defendant companies.  Agency and alter ego must be established on an

entity-by-entity basis.)  Absent specific, factual allegations of agreement and control here,

Plaintiffs have failed to allege an agency relationship based on express authorization.[32]

Nor does the mere fact of some shared ownership suffice.  On the contrary, before the

jurisdictional contacts of one company can be imputed to another, "[t]he degree of control

exercised by the parent must be greater than that normally associated with common ownership

and directorship."  *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983); *see also*

*Enic, PLC v. F.F. S. & Co., Inc.*, 870 So.2d 888, 891 (Fla. Dist. Ct. App. 2004) (to support

agency theory, corporate parent must exercise extensive control such that "the subsidiary

manifests no separate corporate interests of its own and functions solely to achieve the purposes

of the dominant corporation").  Indeed, this Court has held that even a *wholly owned* subsidiary

was not an agent for purposes of establishing personal jurisdiction where Plaintiffs "failed to

demonstrate ... sufficient control" of the supposed agent.  *Adm'rs of Tulane Educ. Fund v.*

*Biomeasure, Inc.*, 687 F. Supp. 2d 620, 623 (E.D. La. 2009), *aff'd sub nom. Adm'rs of Tulane*

*Educ. Fund v. Ipsen, S.A.*, 450 F. App'x 326 (5th Cir. 2011); *see also Brownsberger v. Gexa*

*Energy, LP*, No. 10-CV-81021, 2011 WL 197464, at *4 (S.D. Fla. Jan. 20, 2011) (rejecting the

"simple, unsubstantiated conclusory allegation" that a parent corporation "substantially if not

---

[32] In two Complaints, Plaintiffs claim that CNBM Co. "exercises strict control over BNBM's operations, facilities and manufacturing processes, and had the right to direct BNBM's operations." *Posey v. BNBM Co. Ltd.*, Case No. 09-6531, Rec. Doc. 1-1, ¶23; *Morris v. BNBM Co. Ltd.*, Case No. 09-6530, Rec. Doc. 1-1, ¶16.  This allegation is false; CNBM Co. plays no significant role in BNBM's operations and has no control over BNBM facilities or manufacturing.  *See* Chang Decl. ¶¶ 11-12.  BNBM's day-to-day operations are carried out by its management executives in accordance with the business decisions made by its Board of Directors, whose members act in accordance with their legal obligations to BNBM.  *See* BNBM Mot. to Dismiss, MDL 2047, Rec. Doc. 18774-8, Yang Decl. ¶ 5.  This Court cannot accept unsupported allegations in support of jurisdiction that are contradicted by affidavit.  *See Wyatt*, 686 F.2d at 282 n.13.

totally controlled" its subsidiary; dismissing for lack of personal jurisdiction), *aff'd sub nom. Brownsberger v. Nextera Energy, Inc.,* 436 F. App'x 953 (11th Cir. 2011).

Even if Plaintiffs had attempted to plead facts in support of an implied agency relationship, in point of fact, the Moving Defendants are distinct corporate entities operating independent businesses who share little more than a few common investors.  These defendants have separate corporate registrations, independent officers and directors, and separate accounting systems.  Cao Decl. ¶¶ 13-14; Chang Decl. ¶¶ 8, 9, 11.  They observe corporate formalities such as maintaining independent books and records, conducting financial audits, holding board meetings, and publishing corporate bylaws.  Cao Decl. ¶¶ 13-14; Chang Decl. ¶¶ 8, 9, 11.  Their daily operations are carried out independently.  Cao Decl. ¶ 14; Chang Decl. ¶ 11.  And each Moving Defendant has stated plainly and explicitly that it has never acted as the agent of BNBM PLC, CNBM Co., BNBM Group and/or CNBM Group for any purpose related to drywall.  Cao Decl. ¶ 18; Chang Decl. ¶ 14; Zhang Decl. ¶ 9;  Chuan Decl. ¶ 11; Liu Decl. ¶ 8.  Plaintiffs have advanced no credible allegations supporting the conclusion that the Moving Defendants are implied agents of any of the alleged principals.

> **b.       The Moving Defendants Are Not "Alter Egos" of, or Part of a "Single Business Enterprise" with, Taishan.**

Tellingly, Plaintiffs nowhere plead the existence of any relationship between the Moving Defendants and Taishan or TTP.  The Moving Defendants are not alleged to be agents of Taishan or TTP, nor do Plaintiffs contend that these defendants are the "alter egos" of Taishan or any other party.  An alter ego theory of jurisdiction—or "veil piercing," as Plaintiffs have occasionally called it—is therefore not pleaded in this action, and cannot be considered by this Court as a basis for jurisdiction.  *Hargrave*, 710 F.2d at 1159 ("The party seeking to invoke the

court's jurisdiction has the burden of establishing jurisdiction, by making a prima facie showing of the facts upon which it may be based.").

Notwithstanding this complete pleading failure, Plaintiffs have argued that the Court's Findings of Fact and Conclusions of Law ("Findings") regarding class certification in *Germano* already established conclusively that *all* of the Moving Defendants are "a single business enterprise" with Taishan, and—because personal jurisdiction over Taishan was affirmed by the Fifth Circuit—precludes any Moving Defendant from contesting personal jurisdiction.[33] Plaintiffs have repeated this statement over and over and over, asserting in numerous ways and forms that all of the defendants in all of the cases are of a piece—that, as a result of the Findings and the preliminary defaults, personal jurisdiction has been established across the board, liability is established across the board, and all that remains is damages.  This argument is simply and flatly incorrect, and with respect to the Moving Defendants, it is an invitation to error on this basic jurisdictional question that will fatally infect any judgment that is entered in this case.

First and foremost, the Findings do not bind the Moving Defendants.  Plaintiffs gloss over the fact that the Court's findings about an alter ego relationship merely adopted Plaintiffs' Rule 36 Requests for Admission *from Taishan* after *Taishan* failed to respond to those requests.[34] The requests were never served on the Moving Defendants, nor would the Moving Defendants have had opportunity or standing to oppose the "admissions" in *Germano*, a case in which they are not named as defendants.[35]

These admissions therefore do not bind the Moving Defendants because deemed admissions are binding "only on the non-responding party."  *Becerra v. Asher*, 921 F. Supp.

---

[33] MDL 2047, Rec. Doc. 18028 at 6; *Id.*, Rec. Doc. 18694 at 12-13.

[34] MDL 2047, Rec. Doc. 18028 at 14 n.5.

[35] *Germano v. Taishan Gypsum Co.*, MDL 2047, Rec. Doc. 470.

1538, 1544 (S.D. Tex. 1996), *aff'd*, 105 F.3d 1042 (5th Cir. 1997), *as supplemented on denial of reh'g* (Apr. 7, 1997); *see also Riberglass, Inc. v. Techni-Glass Indus., Inc.,* 811 F.2d 565, 566 (11th Cir. 1987) ("the deemed admissions of his codefendants cannot bind [another defendant]"); *Alipour v. State Auto. Mut. Ins. Co.*, 131 F.R.D. 213, 215 (N.D. Ga. 1990); *Kittrick v. GAF Corp.*, 125 F.R.D. 103, 106 (M.D. Pa. 1989); 8B Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2264 at 380-81 & n.9 (2010).  Deemed admissions "cannot justly be imposed upon a party that had no involvement in the failure to respond, and had no means to compel the defaulting party's compliance. Finding otherwise would essentially allow the sins of one party to be visited upon another."  *First Acceptance Ins. Co. v. Ramirez*, No. 3:08-CV-1078-J-34JRK, 2010 WL 779315, at *6 (M.D. Fla. Feb. 26, 2010).  Plaintiffs' attempt to bind the Moving Defendants to an unrelated party's deemed admissions in a case in which they were not involved is simply impermissible.

Plaintiffs cannot rely on the Court's earlier findings for another reason: The Court mistakenly applied forum-state, rather than Chinese law, to determine whether an alter ego relationship existed.[36]  An MDL court "must apply the law of the transferor forum, that is, the law of the state in which the action was filed, *including the transferor forum's choice-of-law rules*."  *In re Vioxx Prod. Liab. Litig.*, 478 F. Supp. 2d 897, 903 (E.D. La. 2007) (emphasis added) (citing *Ferens v. John Deere Co.,* 494 U.S. 516, 524 (1990)).  The states in which these actions were filed apply the law of the state of incorporation to determine corporate separateness. *See Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 647 (5th Cir. 2002) (under Louisiana law, "the law of the state of incorporation governs the determination when to pierce a corporate veil"); *Mukamal v. Bakes*, 378 F. App'x 890, 897 (11th Cir. 2010) (Florida law

---

[36] MDL 2047, Rec. Doc. 18028 at 18-21.

"provides that the internal affairs of a corporation are governed by the laws of the state of incorporation"); *McCarthy v. Giron*, No. 1:13-CV-01559-GBL, 2014 WL 2696660, at *1 (E.D. Va. June 6, 2014) ("Virginia's choice of law principles dictate that the law of the state of incorporation determines whether a corporate veil may be pierced …."). Three defendants—CNBM Group, CNBM Co., and CNBMIT—were incorporated under the law of China. And Taishan, the entity with whom all defendants are purported to be a "single business enterprise," was also incorporated under the law of China. Accordingly, the Court must apply Chinese law to determine whether imputation is appropriate under an alter ego theory.[37]

The attached declaration of Professor Donald Clarke, an expert in the field of Chinese commercial law, confirms that the Moving Defendants are not "alter egos" of each other or of Taishan under Chinese law. Each CNBM entity is independently formed, financed, and governed, as required by Chinese law. Clarke Decl. ¶ 10. Plaintiffs would have to prove that the various defendants have "no independent operation of [their] own" before Chinese courts would disregard their independent corporate structure. *Id.* ¶ 26. Critical factors include commingled finances and loss of operational autonomy. *Id.* ¶¶ 32-39. And, like U.S. law, Chinese law looks

---

[37] Nor, based on the factual record, would an alter ego relationship exist under the forum states' laws, each of which requires a heightened showing of fraud or injustice to support the disregard of corporate separateness. *See, e.g., Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984) (interpreting California law as requiring that plaintiff show that failing to disregard the corporate structure would result in fraud or injustice); *Perpetual Real Estate Servs., Inc. v. Michaelson Props., Inc.*, 974 F.2d 545, 548 (4th Cir.1992) (noting that Virginia "adheres to a rigorous standard requiring proof that the [alleged alter ego] used the corporation to 'disguise' some legal 'wrong'"); *Bona Fide Demolition & Recovery, LLC v. Crosby Constr. Co. of Louisiana*, 690 F. Supp. 2d 435, 443 (E.D. La. 2010) (In Louisiana, "[c]ourts may disregard the concept of corporate separateness, i.e. pierce the corporate veil, when a corporate entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime") (emphasis added); *Erben v. Raymond James Fin., Inc.*, No. 8:11-CV-933-T-23AEP, 2013 WL 2406242, at *3 (M.D. Fla. June 3, 2013), *aff'd sub nom. Erben v. Raymond James European Holdings, Inc.*, 572 F. App'x 707 (11th Cir. 2014) (noting that Florida courts will only disregard corporate separateness if there is evidence of improper conduct, which is only present in "cases in which the corporation was a mere device or sham to accomplish some ulterior purpose … or where the purpose is to evade some statute or accomplish some fraud or illegal purpose" (alteration in original)). As discussed above and attested to in the attached affidavits, the Moving Defendants observe corporate formalities such as maintaining independent books and records, conducting financial audits, holding board meetings, and publishing corporate bylaws.

for "something more, and improper" before piercing a corporate veil – specifically, "*abuse* of corporate separateness and *evasion* of debts." *Id.* ¶¶ 10, 59.[38]  The facts here simply cannot support an alter ego finding.  As Professor Clarke explains, these defendants have an ordinary investor relationship with their subsidiaries, and do not exercise influence over operational decisions except to the extent consistent with their shareholder interests. *Id.* ¶¶ 42, 48-49.  Under both Chinese and U.S. law, exercising controlling shareholder rights falls far short of demonstrating that a subsidiary is so totally subsumed by a shareholder that they should be treated as a single entity. *Id.* ¶¶ 48-49, 59; *see also NML Capital, Ltd. v. Republic of Arg.,* No. C 12-80185 JSW MEJ, 2013 WL 655211, at *2 (N.D. Cal. Feb. 21, 2013) (under California law, "[m]ajority stock ownership, appointment of directors, and control of a board's membership are all insufficient to overcome the presumption of separateness articulated in *Bancec*"); *In re James River Coal Co.*, 360 B.R. 139, 173 (Bankr. E.D. Va. 2007) (under Virginia law, "mere proof that a shareholder may 'dominate or control' the corporation or may treat it as a 'mere department, instrumentality, agency' is not enough to pierce the corporate veil"); *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. Dist. Ct. App. 2008) (under Florida law, "mere ownership of a corporation by a few shareholders, or even one shareholder, is an insufficient reason to pierce the corporate veil"); *Chin v. Roussel*, 456 So. 2d 673, 678 (La. Ct. App. 1984) (under Louisiana law, "[a]n individual's status of being the sole shareholder of a corporation is insufficient to establish the corporation as the individual's alter ego and, hence, insufficient to hold the individual liable for a judgment rendered against the corporation").

Plaintiffs have therefore failed to allege facts sufficient to support attributing Taishan's forum contacts to the Moving Defendants under an alter ego or veil piercing theory.  And, absent the requisite contacts, there is no jurisdiction over these defendants.

---

[38] For comparable standards under U.S. law, see *supra* note 37.

## III.   THE COMPLAINTS AGAINST CNBMIT MUST BE DISMISSED FOR INSUFFICIENT PROCESS AND SERVICE OF PROCESS.

Defendant CNBMIT separately moves to dismiss the Complaints against it pursuant to Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5) for insufficient process and service of process.[39]  Under Federal Rules of Civil Procedure 4(f) & (h), a Chinese corporation such as CNBMIT must be served pursuant to the terms of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.  It is Plaintiffs' burden to establish the sufficiency of service.  *Carimi v. Royal Caribbean Cruise Line, Inc.,* 959 F.2d 1344, 1346 (5th Cir. 1992).  Absent proper service under Rule 4, the Complaints should be dismissed.  Fed. R. Civ. P. 12(b)(4) & (5); *see also Attwell v. LaSalle Nat. Bank*, 607 F.2d 1157, 1159 (5th Cir. 1979) ("It is axiomatic that in order for there to be in personam jurisdiction there must be valid service of process.").

Plaintiffs' process and service of process on CNBMIT were insufficient because CNBMIT was never named in any of the complaints or summons that were purportedly served on it.[40]  In every relevant Complaint, Plaintiffs name only "CNBMI Co., Ltd." as a defendant.[41] This misnomer introduced substantial confusion into the service process—the name "CNBMI"

---

[39] "An objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service," while a Rule 12(b)(5) motion "challeng[es] the mode of delivery or the lack of delivery of the summons and complaint." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 1353. Here, "[w]here the alleged defect is that the defendant is misnamed in the summons, the form of process could be challenged under Rule 12(b)(4) on the theory that the summons does not properly contain the names of the parties, or under Rule 12(b)(5) on the ground that the wrong party—a party not named in the summons—has been served." *Gartin v. Par Pharm. Cos., Inc.*, 289 Fed. App'x 688, 691 n.3 (5th Cir. 2008).

[40] *See* Plaintiffs' Proof of Service on CNBMIT, MDL 2047, Rec. Doc. 17269, at p.5 (requesting service on CNBMI Co., Ltd.) (attached as Daley Decl. Ex. 8); *Amorin v. Taishan Gypsum*, Case No. 11-1395, Rec. Doc. 1, ¶ 35; *Amorin v. Taishan Gypsum*, Case No. 11-1672, Rec. Doc. 1, ¶ 35; *Amorin v. Taishan Gypsum*, Case No. 11-1673, Rec. Doc. 1, ¶ 35; *Abner v. Taishan Gypsum*, Case No. 11-3094, Rec. Doc. 1, ¶ 49.

[41] "CNBMI Co., Ltd." does not exist as a corporate entity.  When a plaintiff files a complaint against a non-existent defendant, the suit is subject to dismissal under Rule 12(b) for insufficient service of process.  *See Gonzalez v. Temple Mountain Ski Resort, Inc.*, 613 F. Supp. 354 (D. Mass. 1985).

could refer to multiple different entities, including CNBM Investment Co., Ltd ("CNBM

Investment") and CNBM International.  There was therefore no meaningful way to determine

which party was intended to be served.  It is only because Plaintiffs informed CNBM counsel in

April 2015 that there was a "typographical error" in the Complaints that CNBMIT even became

aware of its status as a putative defendant in these proceedings.[42]  And yet, as recently as the

June 3, 2015 deposition of Mr. Gang Che, Plaintiffs' counsel questioned the witness regarding

"CNBMI, also known as CNBMI Investment."[43]  It seems that Plaintiffs themselves do not know

what entity they want to sue.

     It is not enough, in these circumstances, for Plaintiffs to argue that CNBMIT was "on

notice" of this litigation by virtue of its incorrect name and approximate service.  Rule 4(a)(1)(B)

expressly requires that a summons "be directed to the defendant."  Even a technical deficiency in

a summons is a basis for dismissal when it fails to reflect distinctions between separate corporate

entities.  *See Gartin v. Par Pharm. Cos., Inc.,* 289 F. App'x 688, 693 (5th Cir. 2008) (dismissing

complaint with prejudice where summons naming "Par Pharmaceuticals Companies, Inc. d/b/a

Par Pharmaceuticals, Inc." was not effective to serve Par Pharmaceuticals, Inc. because the

entities were distinct corporations).  The Complaints against CNBMIT should therefore be

dismissed.

---

[42] *See* Daley Decl., Ex. 9.

[43] Rule 30(b)(6) Deposition of Taishan Gypsum Co. Ltd., 6/2/15 (288:23-24) (attached as Daley Decl. Ex. 10).

## CONCLUSION

For the reasons set forth herein, the Complaints against the Moving Defendants should be dismissed.

Dated: June 16, 2015

Respectfully submitted,

/s/ L. Christopher Vejnoska

L. Christopher Vejnoska (CA Bar No. 96082)
Ian Johnson (CA Bar No. 208713)
Andrew Davidson (CA Bar No. 266506)
Jason Wu (CA Bar No. 279118)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105
Tel:  415-773-5700
Fax: 415-773-5759
E-mail:        cvejnoska@orrick.com
               ijohnson@orrick.com
               adavidson@orrick.com
               jmwu@orrick.com


James L. Stengel (NY Bar No. 1800556)
Xiang Wang (NY Bar No. 4311114)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY, 10019
Tel:  212-506-5000
Fax: 212-506-5151
Email:         jstengel@orrick.com
               xiangwang@orrick.com

Eric A. Shumsky (D.C. Bar No. 477926)
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street NW
Washington, D.C. 20005
Tel: 202-339-8400

47

Fax: 202-339-8500
Email:        eshumsky@orrick.com

Ewell E. Eagan, Jr. (La. Bar No. 5239)
Donna Phillips Currault (La. Bar No. 19533)
Nina Wessel English (La. Bar No. 29176)
Alex B. Rothenberg (La. Bar No. 34740)
GORDON, ARATA, MCCOLLAM, DUPLANTIS &
EAGAN, LLC
201 St. Charles Avenue, 40th Floor
New Orleans, LA 70170-4000
Tel: (504) 582-1111  Fax:  (504) 582-1121
E-mail: eeagan@gordonarata.com
          dcurrault@gordonarata.com
          nenglish@gordonarata.com
          arothenberg@gordonarata.com

*Attorneys for China National Building Materials Group
Corporation, China National Building Materials Company
Limited, CNBM USA Corp., CNBMIT Co. Ltd., and United
Suntech Craft, Inc.*

48

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **Memorandum of Law in Support of Motion to Dismiss the Complaints Pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(4) and 12(b)(5)** has been served on Plaintiffs' Liaison Counsel, Leonard Davis, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 16th day of June, 2015.

/s/ L. Christopher Vejnoska

L. Christopher Vejnoska (CA Bar No. 96082)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105
Tel.:  415-773-5700
Fax.: 415-773-5759
E-mail:cvejnoska@orrick.com

*Counsel for China National Building Materials Group Corporation, China National Building Materials Company Limited, CNBM USA Corp., CNBMIT Co. Ltd., and United Suntech Craft, Inc.*