UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL No. 2:09-md-2047 |
| | SECTION L |
| **THIS DOCUMENT RELATES TO:** | JUDGE ELDON E. FALLON |
| *Gross v. Knauf Gips KG, 2:09-cv-6690* | |
| *Amorin v. Taishan Gypsum, 2:11-cv-1672* | MAGISTRATE JUDGE |
| *Amorin v. Taishan Gypsum, 2:11-cv-1395* | JOSEPH C. WILKINSON, JR. |
| *Amorin v. Taishan Gypsum, 2:11-cv-1673* | |
| *State of Louisiana v. Knauf, 2:10-cv-340* | |
| *Abner v. Taishan Gypsum, 2:11-cv-3094* | |
| *Posey v. BNBM PLC, 2:09-cv-6531* | |
| *Morris v. BNBM PLC, 2:09-cv-6530* | |

## DECLARATION OF JIANGLIN CAO

This declaration is made in accordance with and pursuant to 28 U.S.C. § 1746.

I, Jianglin Cao, declare under penalty of perjury, that the following statements are true and correct:

1.      I am over eighteen (18) years of age, am competent to testify to the matters contained herein, and have personal knowledge of these facts.  My native language is Chinese.  My ability to understand and speak English is limited.  I signed a Chinese version of this Declaration as well as the English version of this Declaration after it was translated for me by a translator with the law firm of Orrick, Herrington & Sutcliffe LLP.

2.      I have been a general manager of CNBM Group since April 2014, and a director of CNBM Group since October 2005.  I have also been the president and an executive director of CNBM Company since March 2005.

3.      CNBM Group is a state-owned entity incorporated under the laws of the People's Republic of China.  It enjoys the property rights of a separate legal person.

1

4.      CNBM Group is directly and wholly owned by the State, i.e. by the whole people, and the State Council exercises the ownership of State-owned assets on behalf of the State. CNBM Group's ownership structure has not changed since this litigation was filed in 2009.

5.      CNBM Group's status as a wholly state-owned company is attested to in its Business License, a true and correct copy of which is attached as Exhibit A.  An English version, translated by the Beijing Golden Olive Translation Center, is included as part of the Exhibit.

6.      CNBM Group's status as a wholly state-owned company is also attested to in articles 5 and 13 of its Articles of Association, a true and correct copy of which is attached as Exhibit B.  An English version, translated by the Beijing Golden Olive Translation Center, is included as part of the Exhibit.

7.      The State-Owned Assets Supervision and Administration Commission (SASAC) is a government commission that supervises CNBM Group and performs the duties of the capital contributor on behalf of the State Council, but it is not the owner of CNBM Group.

8.      To the best of my knowledge, CNBM Group has not had any offices or employees based in the United States, has not been registered to do business in the United States or any individual State, has not owned or leased property in the United States, and has not paid taxes in the United States.

9.      CNBM Group is engaged in the development and advancement of the building products and construction materials industry in China.  CNBM Group does not itself manufacture, produce, market, distribute, ship or sell any building products or construction materials.  CNBM Group has never manufactured, produced, marketed, distributed, shipped or sold drywall in China or anywhere else.

10.      CNBM Group does not conduct business in the United States. To my knowledge, CNBM Group does not have and has not had any contracts for the purchase or sale of goods or provision of services, or service agreements, to be performed in or directly affecting the United

States.  CNBM Group does not market any products or services to or in the United States. CNBM Group does not maintain any bank accounts in the United States.

11.    CNBM Group is a shareholder in several other Chinese entities, including CNBM Company (approximately 12%); BNBM Group (approximately 70%); CNBM Import & Export (100%); and China Building Materials Academy (100%) among others (collectively the "Sharehold Entities").    CNBM Group holds an additional approximately 32% indirect ownership interest in CNBM Co. through BNBM Group, CNBM Import & Export, and China Building Materials Academy, and an additional approximately 30% indirect ownership in BNBM Group through CNBM Import & Export.

12.    Each Sharehold Entity is adequately capitalized and has had sufficient funds for its operations.   To my knowledge, CNBM Group has never had a joint bank account with any Sharehold Entity or had the ability to withdraw or deposit funds in the account of a Sharehold Entity without express authorization of that entity.

13.    Except as required under Chinese laws, regulations, and relevant accounting principles, CNBM Group and the Sharehold Entities prepare independent financial statements and file their tax returns separately.  Where required by law or regulation, Sharehold Entity financial statements are audited by an independent third-party accounting firm.

14.    CNBM Group does not directly manage or make ordinary business decisions for any of the Sharehold Entities.  Each Sharehold Entity is independently incorporated and has its own Articles of Association and, where required by law or regulation, has a separate Board of Directors, Board of Supervisors, and corporate officers that manage the daily operations of the entity and make business decisions regarding that entity.

15.    As a controlling shareholder, CNBM Group is entitled to exercise its right to participate in shareholder votes of the Sharehold Entities.  In exercising that right, CNBM Group does not directly

3

or indirectly interfere with the decision making of the entity or its production operation activities carried out in accordance with the law, or harm the rights and interests of the entity and other shareholders. Important business decisions of the Sharehold Entities are made in accordance with the law by a general meeting of shareholders and the Board of Directors of each entity.  Certain members of the Boards of Directors are also employees of CNBM Group, consistent with CNBM Group's rights as controlling shareholder to nominate directors.  Directors are ultimately elected by a vote of the shareholders.  Those directors vote in their Board of Director roles in a manner consistent with the best interests of the entity.  To my knowledge, CNBM Group has never "vetoed" or "overruled" the vote of a Sharehold Entity Board of Directors.  The directors of the Boards of Directors of the Sharehold Entities are independently overseen by a Board of Supervisors, who supervise the lawfulness and compliances of performance of duties as required under Chinese law.

16.     I am presently aware that BNBM PLC, Taishan Gypsum Co. Ltd ("Taishan"), and Taian Taishan Plasterboard Co. ("TTP") engaged in transactions to sell drywall to United States purchasers.  To my knowledge, BNBM PLC, Taishan and TTP did not consult CNBM Group regarding their decisions to market or sell drywall into the United States.

17.     CNBM Group has no direct investment or shareholder stake in BNBM PLC, Taishan, or TTP, and has never held a majority ownership interest, either directly or indirectly, in either of these entities.

18.     To my knowledge, CNBM Group has never acted as an agent for any of the Sharehold Entities or their subsidiaries for purposes of manufacturing, producing, promoting, marketing, distributing, shipping or selling drywall.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: June 10, 2015

_____

JIANGLIN CAO

路易斯安那州东区美国联邦地区法院

| | |
|---|---|
| 关于：中国制造的石膏墙产品责任诉讼 | 多地合并诉讼第 2047 号 |
| **本文件与下列案件相关联：** | 部门：L |
| *Gross 诉 可耐福, 2:09-cv-6690* | |
| *Amorin 诉 泰山石膏, 2:11-cv-1672* | Fallon 法官 |
| *Amorin 诉 泰山石膏, 2:11-cv-1395* | |
| *Amorin 诉 泰山石膏, 2:11-cv-1673* | WILKINSON 地方法官 |
| *路易斯安娜州 诉 可耐福, 2:10-cv-340* | |
| *Abner 诉 泰山石膏, 2:11-cv-3094* | |
| *Posey 诉 北新建材股份, 2:09-cv-6531* | |
| *Morris 诉 北新建材股份, 2:09-cv-6530* | |

## 曹江林的声明

本声明是符合并根据《美国法典》第 28 卷第 1746 条款作出的。

本人，曹江林，声明下列陈述是真实的和正确的，否则将受到对作伪证的惩罚：

1.　　我已年满十八（18）周岁，有能力对此处包含的事项作证，并且对这些事实具有个人了解。我的母语是中文。我理解和说英语的能力是有限的。我签署了本声明的中文版本以及由美国奥睿律师事务所的一名翻译人员为我翻译后的本声明的英文版本。

2.　　我自 2014 年 4 月以来担任中国建材集团的总经理，以及自 2005 年 10 月以来担任中国建材集团的董事。自 2005 年 3 月以来我也一直担任中国建材股份的总裁和执行董事。

3.　　中国建材集团是根据中华人民共和国法律设立的一个国有实体。其享有独立法人的财产权利。

4.　　中国建材集团直接地和完全地属于国家所有即全民所有，国务院代表国家行使国有资产所有权。中国建材集团的所有权结构自本诉讼于 2009 年提交以来未曾改变。

5.　　中国建材集团作为一个国有独资公司的地位在其营业执照中得到证明，该营业执照的一份真实的和正确的复印件被附于此作为附件 A。一份由北京金橄榄外文翻译中心翻译的英文版本被包含作为该附件的一部分。

6.　　中国建材集团作为一个国有独资公司的地位也在其章程的第 5 和 13 条中得到证明，该章程的一份真实的和正确的复印件被附于此作为附件 B。一份由北京金橄榄外文翻译中心翻译的英文版本被包含作为该附件的一部分。

7.　　国有资产监督管理委员会（"国资委"）是一个代表国务院对中国建材集团进行监管以及履行出资人职责的政府委员会，但其不是中国建材集团的所有人。

8.　　据我所知，中国建材集团从未有过位于美国的任何办公室或在美国工作的任何雇员，未在美国或任何单独的州登记开展业务，未在美国拥有或租赁财产，并且未在美国缴纳税收。

9.　　中国建材集团致力于促进中国的建筑产品和建筑材料的发展和进步。中国建材集团本身并不制造、生产、市场推广、分销、运输或销售任何建筑产品或建筑材料。中国建材集团从未在中国或任何其它地方制造、生产、市场推广、分销、运输或销售石膏墙。

10.　　中国建材集团不在美国进行业务活动。据我所知，中国建材集团没有也不曾有过任何以销售产品或提供服务为目的、在美国履行或直接影响美国的合同或服务协议。中国建材集团没有向美国或在美国进行任何产品或服务的市场推广。中国建材集团没有在美国保留任何银行账户。

11.　　中国建材集团是其他几个中国实体的股东，这些实体包括中国建材股份（约12%）；北新建材集团（约 70%）；中建材集团进出口公司（100%）；和中国建筑材料科学研究总院（100%）等（以下统称"各持股实体"）。中国建材集团另通过北新建材

2

集团、中建材集团进出口公司及中国建筑材料科学研究总院持有中国建材股份约 32%的间接所有者权益，并通过中建材进出口公司另持有北新建材集团约 30%的间接所有者权益。

12.　　每一个持股实体都资本充足，并具有足够的资金开展其业务。据我所知，中国建材集团不曾与任何持股实体共用银行账号，也没有能力在未经一个持股实体明确授权的情况下从该持股实体的账户中取出或存入资金。

13.　　除中国法律、法规及相关会计准则所要求的之外，中国建材集团和各持股实体分别编制独立财务报表和提交他们的报税表。在法律或法规要求的情况下，持股实体财务报表由一个独立的第三方会计师事务所审计。

14.　　中国建材集团没有直接管理任何持股实体或为任何持股实体作出日常商业决策。每一个持股实体独立注册设立并拥有自己的章程，并在法律或法规要求的情况下，有独立的董事会、监事会以及公司高管来管理该实体的日常运作和进行涉及该实体的商业决策。

15.　　作为控股股东，中国建材集团有权行使其参加持股实体的股东投票的权利。在行使该权利时，中国建材集团没有直接或间接干预该实体的决策或依法开展的生产经营活动，也没有损害该实体及其他股东的权益。持股实体的重要商业决策由每个实体的股东大会和董事会依法作出。这些董事会的某些成员也是中国建材集团的雇员，这与中国建材集团作为控股股东提名董事的权利相一致。董事最终由股东投票选举。那些董事以符合该实体最佳利益的方式在董事会职责内投票。据我所知，中国建材集团从未"否决"或"推翻"一个持股实体董事会的投票决定。各持股实体的董事会的董事由监事会独立监管，监事会按照中国法律的要求监管职务履行的合法性和合规性。

16.　目前我知道北新集团建材股份有限公司（"北新建材股份"）、泰山石膏股份有限公司（"泰山"）和泰安泰山纸面石膏板有限公司（"泰安泰山石膏板"）从事过向美国购买者销售石膏板的交易。据我所知，北新建材股份、泰山和泰安泰山石膏板并没有就它们向美国市场推广或销售石膏板的决定向中国建材集团咨询。

17.　中国建材集团在北新建材股份、泰山或泰安泰山石膏板并没有直接的投资或股东利益，且从未直接或间接地在这些实体的任何一个中拥有多数所有者权益。

18.　据我所知，中国建材集团从未为了制造、生产、促销、市场推广、分销、运输或出售石膏墙的目的而作为这些持股实体或其子公司中任何一个的代理人。

本人声明前述内容是真实的和正确的，否则将受到根据美国法律对作伪证的惩罚。

日期：2015年6月10日

曹江林

# EXHIBIT A



# 营 业 执 照

## （副　本）

**注册号**　100000000000485（10-1）

| | |
|---|---|
| **名　　　称** | 中国建筑材料集团有限公司 |
| **类　　　型** | 有限责任公司(国有独资) |
| **住　　　所** | 北京市海淀区复兴路17号国海广场2号楼（B座） |
| **法定代表人** | 宋志平 |
| **注 册 资 本** | 619133.857284 万人民币 |
| **成 立 日 期** | 1981年09月28日 |
| **营 业 期 限** | 长期 |
| **经 营 范 围** | （无）. |

建筑材料及其相关配套原辅材料的生产制造及生产技术、装备的研究开发销售；新型建筑材料体系成套房屋的设计、销售、施工；装饰材料的销售；房屋工程的设计、施工；仓储；建筑材料及相关领域的投资、资产经营、与以上业务相关的技术咨询、信息服务、会展服务；矿产品的加工及销售。（依法须经批准的项目，经相关部门批准后方可开展经营活动）





登 记 机 关

2014 年 12 月 05 日

# Business License

# (Transcript)

**Registration No.: 100000000000485 (10-1)**

| | |
|---|---|
| **Name** | China National Building Materials Group Corporation |
| **Company Type** | Limited Liability Company (wholly state-owned) |
| **Domicile** | No.2 Building (B), Guohai Plaza, No.17 Fuxing Road, Haidian District, Beijing |
| **Name of the Legal Representative** | SONG Zhiping |
| **Registered Capital** | RMB 6,191,338,572.84 |
| **Date of Establishment** | September 28, 1981 |
| **Term of Operation** | Long time |
| **Business Scope** | (None). |

Manufacturing of building materials and related raw and auxiliary materials; and research, development and sales of production technology and equipment; design, sales and construction of complete sets of housing using new building materials; sales of decoration materials; design, construction of housing projects; storage; investment and asset operation of building materials and related fields, technology consulting, information services and exhibition services related to the above business; processing and sales of minerals. (Any item subject to approval pursuant to laws shall be operated after approval of relevant department.)

For purposes of Drywall case.



Registration authority (Seal of the
State Administration of Industry
and Commerce of the PRC)
December 05, 2014

# EXHIBIT B

# 中国建筑材料集团有限公司章程

## 第一章　总则

**第一条**　为维护公司、出资人和债权人的合法权益，规范中国建筑材料集团有限公司的组织和行为，根据《中华人民共和国公司法》（以下简称《公司法》）、《企业国有资产监督管理暂行条例》（以下简称《条例》）等法律、行政法规及规范性文件，制定中国建筑材料集团有限公司章程。

**第二条**　公司名称。

中文全称：中国建筑材料集团有限公司，简称：中国建材集团；

英文全称：CHINA NATIONAL BUILDING MATERIAL GROUP CORPORATION，简称：CNBM。

**第三条**　公司住所：北京市海淀区复兴路 17 号国海广场 2 号楼（B 座）。

邮政编码：100036。

**第四条**　公司注册资本为人民币陆拾壹亿玖仟壹佰叁拾叁万捌仟伍佰柒拾贰元捌角肆分（6,191,338,572.84 元），实收资本为人民币陆拾壹亿玖仟壹佰叁拾叁万捌仟伍佰柒拾贰元捌角肆分（6,191,338,572.84 元）。

**第五条**　公司是依照《公司法》规定设立的国有独资公司，享有法人财产权，并以全部财产对公司的债务承担责任。

**第六条**　公司董事长为公司法定代表人，对外代表公司。

**第七条**　公司依法自主从事经营活动，遵守国家法律、行政法规，遵守社会公德、商业道德，诚实守信，接受政府和社会公众的监督，承担社会责任。

公司的合法权益受法律保护，不受侵犯。

**第八条**　公司根据中国共产党章程的规定，设立中国共产党的组织，开展党的活动。公司中的党组织发挥政治核心作用，参与公司重大问题的决策。公司为党组织的活动提供必要条件。

**第九条**　公司职工依照《中华人民共和国工会法》、《公司法》及有关法律法规的规定，组织工会，开展工会活动，维护职工合法权益；

通过职工代表大会或其他形式，实行民主管理。公司为本公司工会提供必要的活动条件。

第十条　本章程对公司、出资人、董事、监事、高级管理人员均具有法律约束力。

## 第二章　经营宗旨和经营范围

第十一条　公司经营宗旨为：秉承"善用资源，服务建设"的核心理念，以科技创新为先导，对行业和社会资源进行优化整合，坚持循环经济道路，大力推进水泥、玻璃等产业的联合重组、结构调整与节能减排，大力发展新型建材、新型节能房屋、新能源材料和领先的技术及成套装备，为城乡发展与城镇建设、节能省地型建筑和国家重点工程提供优质产品和服务，努力建设创新绩效型、资源节约型、环境友好型、社会责任型企业，成为具有国际竞争力的行业排头兵，为行业和社会的可持续发展贡献力量。

第十二条　公司经营范围为：建材产品、建材与相关行业装备及其配套原辅材料的制造、销售、技术研发与服务、工程与工程设计总承包；新型建筑材料体系成套房屋的设计、制造、销售、工程承包；装饰材料工厂、房屋工程的设计、施工；建筑材料和相关领域的投资、资产经营、国内外贸易与物流、技术咨询、信息服务、会展服务；组织成员企业进行非金属矿的生产与销售。

## 第三章　出资人

第十三条　公司由国家单独出资，国务院国有资产监督管理委员会（以下简称国资委）代表国务院履行出资人职责。

第十四条　公司不设股东会，国资委依照《公司法》、《条例》等法律、行政法规的规定，行使以下职权：

（一）决定公司的经营方针，批准公司主业及调整方案，并从中央企业布局和结构调整方面审核公司的发展战略和规划；

（二）委派和更换非由职工代表担任的董事，决定其报酬事项，对董事会、董事履职进行评价；

（三）依照有关规定代表国务院派出监事会；

（四）批准董事会的报告；

（五）批准监事会的报告；

（六）批准公司的年度财务决算方案，并对公司年度财务预算方案进行备案管理；

（七）批准公司的利润分配方案和弥补亏损方案；

（八）决定公司增加或者减少注册资本；

（九）批准发行公司债券方案；

（十）决定公司合并、分立、解散、清算或者变更公司形式；

（十一）制定或批准公司章程及章程修改方案；

（十二）按照《企业国有资产法》、《企业国有产权转让管理暂行办法》（国资委 财政部令第 3 号）和《国有股东转让所持上市公司股份管理暂行办法》（国资委 证监会令第 19 号）等规定，批准有关非上市公司国有产权转让、上市公司国有股份转让、国有产权无偿划转及公司重大资产处置等事项；批准公司重大会计政策和会计估计变更方案；

（十三）按照《公司法》、《中华人民共和国审计法》、《中央企业财务决算报告管理办法》（国资委令第 5 号）和《中央企业经济责任审计管理暂行办法》（国资委令第 7 号）等规定，对企业年度财务决算、重大事项进行抽查审计，组织开展经济责任审计工作；

（十四）按照国务院和国务院有关部门关于国有资产基础管理、股份制改革、主辅分离、辅业改制和企业重大收入分配等行政法规和部门规章的规定，办理需由国资委批准或出具审核意见的事项；

（十五）国家法律、行政法规规定的其他职权。

**第十五条**　国资委确保公司依法享有的经营自主权，并依照有关规定授权公司董事会行使出资人的部分职权，决定公司有关重大事项。

国资委依照法律、行政法规和章程规定行使出资人权利，不得损害公司或公司债权人的利益。


# 第四章　董事会

## 第一节　董事会组成、职权和义务

第十六条　公司设董事会，由 11 名董事组成，其中外部董事 6 名，职工董事 1 名。

外部董事，指由非本公司职工担任的董事。除董事和董事会专门委员会有关职务外，外部董事不在公司担任其他职务，不负责执行层的事务。

董事会成员由国资委委派；其中职工董事由本公司职工代表担任，由公司职工民主选举产生。

第十七条　公司董事任期不超过 3 年，任期届满，经委派或选举可以连任。

董事任期届满未及时重新委派（职工董事未及时改选），或者董事在任期内辞职导致董事会成员低于法定人数的，在重新委派（或改选）的董事就任前，原董事仍应当依照法律、行政法规和公司章程的规定，履行董事职务。

第十八条　董事会对国资委负责，依照《公司法》和国资委授权行使下列职权：

（一）决定公司的年度经营目标和任期经营目标，并报国资委备案；

（二）决定公司经营计划、投融资计划和方案，批准公司的交易性金融资产投资和非主业投资项目；

（三）批准公司的年度财务预算方案，并报国资委备案；

（四）制订公司的年度财务决算方案，并报国资委批准；

（五）制订公司的利润分配方案和弥补亏损方案；

（六）制订公司增加或减少注册资本的方案及发行公司债券的方案；

（七）制订公司合并、分立、解散和变更公司形式的方案；

（八）制订公司章程草案及公司章程的修改方案；

（九）聘任或解聘公司总经理；负责对总经理的考核，决定其报酬；根据总经理的提名，聘任或解聘公司副总经理、总会计师；根据总经理的提议，决定副总经理、总会计师、总法律顾问的报酬；根据董事长的提名，聘任或解聘董事会秘书，对其进行考核并决定其薪酬；

（十）决定公司内部管理机构的设置、公司分支机构的设立和撤

销；

（十一）制定公司的基本管理制度；

（十二）根据国资委审核意见，决定公司的发展战略和中长期发展规划，并对其实施进行监控；决定公司年度重大固定资产投资计划、股权投资计划，并报国资委备案；

（十三）决定公司的风险管理体系，制订公司重大会计政策和会计估计变更方案，审议公司内部审计报告，决定公司内部审计机构负责人，决定聘用或者解聘负责公司财务会计报告审计业务的会计师事务所及其报酬，决定公司的资产负债率上限，对公司风险实施进行总体监控；

（十四）决定公司整体薪酬分配策略及制度；

（十五）依法对所出资企业（包括全资、控股和主要参股子公司（企业））履行资产受益、重大决策和派出董事、监事等股东职权；

（十六）听取总经理的工作报告，督促、检查董事会决议执行情况；

（十七）批准公司重大资产抵押、质押或对外担保；

（十八）除应由国资委批准的有关方案外，批准公司对外捐赠或赞助，并报国资委备案；

（十九）决定公司内部重大业务重组和改革事项；

（二十）建立与监事会联系的工作机制，按照监事会有关要求报送《企业年度工作报告》等文件并抄报相关材料，督导落实监事会要求纠正和改进的问题；

（二十一）国资委授予行使的出资人的职权；

（二十二）法律、行政法规规定的其他职权。

**第十九条　董事会履行下列义务：**

（一）执行国资委的决定，对出资人负责，维护公司利益；

（二）向国资委报告年度工作；

（三）向国资委提供真实、准确、全面的财务和运营信息，提供董事和经理人员的实际薪酬以及经理人员的提名、聘任和解聘的程序和办法等信息；

（四）维护公司职工、债权人和用户的合法权益；

（五）确保国家法律、行政法规在公司的执行。

第二十条　董事会应建立科学、民主、高效的重大事项决策机制，并制定董事会议事规则。

第二十一条　公司董事会设董事长1名，副董事长1名。董事长、副董事长由国资委从董事会成员中任命。

第二十二条　董事长行使以下职权：

（一）确定董事会会议议题；

（二）召集和主持董事会会议；

（三）组织制订实施董事会运作的各项规章制度，协调董事会的运作；

（四）签署董事会重要文件；

（五）督促、检查董事会决议的实施情况，听取公司经营管理情况的汇报；

（六）负责董事会与国资委的沟通，代表董事会向国资委报告工作；

（七）在发生不可抗力或重大危机情形，无法及时召开董事会会议的紧急状况下，对公司重大事务作出特别决定，并在事后向董事会报告；

（八）董事会授予的其他职权。

## 第二节　董事会会议

第二十三条　董事会会议由董事长召集和主持。董事长因特殊原因不能履行职务时，由董事长指定其他董事召集和主持；董事长不履行职务时，由半数以上董事共同推举一名董事或国资委指定一名董事召集和主持。

第二十四条　定期董事会会议每年至少召开4次，每季度召开一次，首次会议可以根据情况适当后延。

召开定期董事会会议，应在会议召开10日以前通知全体董事、监事会及其他列席人员。

有以下情形之一时，董事长应在接到提议后3个工作日内签发召开临时董事会会议的通知，并在7个工作日内召集和主持董事会会议：

（一）三分之一以上董事提议；

（二）监事会提议；

（三）董事长认为有必要；

（四）国资委认为有必要。

临时董事会会议通知的方式和时限，由董事会另行规定。

会议通知的内容应包括时间、地点、会期、议程、议题、通知发出日期等。

第二十五条  董事会会议应有二分之一以上的董事出席方可举行。

董事会决议分为普通决议和特别决议。董事会决议的表决，实行一人一票。董事会通过普通决议时，应经全体董事过半数同意；通过特别决议时，应经全体董事三分之二以上同意。

董事会审议本章程第十八条第（六）、（七）、（八）项所列事项时，应以特别决议通过；其他事项应以普通决议通过。

第二十六条  凡须经董事会决策的重大事项，应按本章程规定的时限通知所有董事、监事会及其他列席人员，并提供相应资料。

当三分之一以上董事或两名以上外部董事认为资料不充分或论证不明确时，可以书面形式联名提出缓开董事会会议或缓议董事会会议所议议题，董事会应予采纳。

第二十七条  董事会会议一般应以现场会议的形式召开。遇特殊情况，在保证董事能够充分发表意见的条件下，经董事长同意，可采用电话会议或其他方式开会并作出决议。

第二十八条  董事应亲自出席董事会。董事因特殊情况不能亲自出席董事会时，该董事可以提交授权委托书委托其他董事代为出席并行使表决权，授权委托书应载明授权范围。

董事连续两次未亲自出席董事会会议也未委托其他董事的，或者在一年内未出席董事会会议占 3/4 以上的，视为不能履行董事职责，董事会（或监事会）应提请国资委予以解聘。

第二十九条  董事会应对会议所议事项做成会议记录。会议记录应包括会议召开的日期、地点、主持人姓名、出席董事姓名、会议议程、议题、董事发言要点、决议的表决方式和结果（同意、反对或弃

权的票数及投票人姓名）等内容。董事会秘书整理会议记录并形成会议纪要，出席会议的董事和列席会议的董事会秘书应在会议记录上签名。由董事会秘书负责归档保管会议记录和会议纪要，保管期20年。

### 第三节　董事会专门委员会

第三十条　董事会下设战略与投资委员会、提名委员会、薪酬与考核委员会和审计与风险管理委员会。董事会也可根据需要设立其他专门委员会。

董事会专门委员会是董事会下设的专门工作机构，为董事会重大决策提供咨询、建议。除非董事会授权，专门委员会不享有决策权。

董事会可根据需要聘请公司有关专家、学者组成非常设专家咨询机构，为公司提供专业咨询意见。

第三十一条　董事会专门委员会由公司董事组成，成员由董事会选举产生，对董事会负责。召集人由董事长提名，董事会通过。

第三十二条　战略与投资委员会主要负责拟订公司发展战略和中长期发展规划；对须经董事会批准的重大投融资项目、重组及转让公司所持股权、企业改革等事项进行研究并向董事会提出建议。

战略与投资委员会由6名董事组成，其中外部董事3人，由董事长担任召集人。

第三十三条　提名委员会主要负责研究公司总经理及其他高级管理人员的选择标准、程序和方法，向董事会提出建议；对总经理提出的副总经理、总会计师人选，董事长提出的董事会秘书人选进行考察，向董事会提出考察意见；经董事会授权，对子企业董事、监事和不设董事会的子企业总经理人选进行考察，向董事会提出推荐意见。

提名委员会由8名董事组成，其中外部董事4名，由董事长担任召集人。

第三十四条　薪酬与考核委员会主要负责拟订公司总经理、副总经理、总会计师的考核标准、绩效评价程序和薪酬及奖惩办法，提交董事会；评审公司总经理、副总经理、总会计师履职情况并对其进行绩效考核评价；拟订总经理薪酬方案，评审总经理提出的副总经理、总会计师的薪酬方案，并向董事会提出建议。

薪酬与考核委员会由4名外部董事组成，由其中1名外部董事担任召集人，召集人由董事长提名，并经董事会审议通过。

第三十五条　审计与风险管理委员会主要负责评估、监督公司风险管理和内部控制体系的有效运行；建议聘请或更换外部审计机构，拟定其报酬方案；指导和监督公司内部审计机构工作。

审计与风险管理委员会由4名外部董事组成，由其中1名外部董事担任召集人，召集人由董事长提名，并经董事会审议通过。

审计委员会委员应当具备相当的会计、财务管理和法律知识。

第三十六条　董事会专门委员会履行职权时，各董事应充分表达意见，并尽量达成一致意见。意见不一致时，应向董事会提交各项不同意见并作说明。

专门委员会经董事会同意可聘请中介机构，费用由公司承担。

第三十七条　董事会专门委员会应制订工作规则，规定各专门委员会的组成、职责、工作方式、议事程序等内容，经董事会批准后实施。

### 第四节　董事会秘书

第三十八条　公司设董事会秘书1名，由董事长提名，董事会决定聘任或解聘。

公司董事或者其他高级管理人员可以兼任公司董事会秘书。

第三十九条　公司设立董事会办公室作为董事会常设工作机构，董事会秘书负责董事会办公室的工作。

第四十条　董事会秘书的职责：

（一）负责筹备董事会会议，准备董事会会议议案和材料；

（二）列席董事会会议，负责作董事会会议记录；

（三）准备和递交需要由董事会出具的文件；

（四）负责与董事的信息沟通和联络；

（五）为董事会及专门委员会的工作提供服务；

（六）负责公司信息披露事务；

（七）促使董事会的运作符合法律、法规、公司章程及其他有关规定；

（八）董事会授予的其他职责。

## 第五节　董事的权利、义务和责任

**第四十一条**　董事在任职期间享有以下权利：

（一）了解行使董事权利所需的公司有关信息；

（二）出席董事会会议，在董事会会议上充分发表意见，对表决事项行使表决权；

（三）对提交董事会会议的文件、材料提出补充要求；

（四）根据本章程的规定，提出召开临时董事会会议的建议；

（五）按照有关规定领取报酬、津贴；

（六）根据有关规定在履行职务时享有出差、办公等方面的待遇；

（七）向国资委反映有关情况；

（八）法律、行政法规规定的其他权利。

**第四十二条**　董事应承担以下义务：

（一）关注公司业务和事务，投入足够的时间和精力，谨慎、勤勉地履行董事职责；

（二）出席董事会会议和其他董事会活动，及时了解和掌握充分的信息，独立审慎地表决；

（三）遵守法律、行政法规和公司章程的规定，遵守诚信原则，不得利用在公司的地位和职权，为本人或他人谋取私利；

（四）忠实履行职责，维护出资人和公司利益，保守公司的商业秘密。

董事不再担任董事职务后，依照董事服务合约的约定，在一定期限内仍负有相关义务。

**第四十三条**　董事不得有以下行为：

（一）挪用公司资金或者擅自将公司资金借贷给他人；

（二）将公司资金以其个人名义或者其他个人名义开立账户存储；

（三）违反公司章程的规定，擅自以公司财产为他人提供担保；

（四）未经国资委同意，与本公司订立合同或者进行交易；

（五）利用职务便利为自己或者他人谋取属于公司的商业机会，自营或者为他人经营与所任职公司同类的业务；

（六）接受他人与公司交易的佣金；

（七）擅自披露公司的商业秘密；

（八）违反对公司忠实义务的其他行为。

违反前款规定所得的收入应当归公司所有。

董事不得利用职权收受贿赂或其他非法收入，不得侵占公司财产。

第四十四条 外部董事与公司不应存在任何可能影响其公正履行外部董事职务的关系。外部董事本人及其直系亲属近两年内未曾在公司和公司的全资、控股子企业任职，未曾从事与公司有关的商业活动，不持有公司所投资企业的股权，不在公司主管业务有直接竞争或潜在竞争关系的单位兼职。

第四十五条 有下列行为之一的，董事应当承担董事责任：

（一）违反法律、行政法规或者公司章程规定的董事义务，给公司造成损失的；

（二）董事会决议违反法律、行政法规或者公司章程规定，致使公司遭受损失，参与表决的董事无法证明其对该决议投反对票的。

第四十六条 董事主要以下述方式承担董事责任：

（一）经济赔偿。该赔偿系因董事责任导致的公司直接经济损失，或公司因承担连带责任而向第三方支付的赔偿金额；

（二）解聘董事职务；

（三）消除影响等其他方式。


## 第五章 总经理

第四十七条 公司设总经理 1 名，由董事会聘任或者解聘；设副总经理若干名，协助总经理工作，经总经理提名由董事会聘任或者解聘。

第四十八条 总经理对董事会负责，依照《公司法》、章程和董事会的授权行使以下职权：

（一）主持公司的生产经营管理工作，组织实施董事会决议；

（二）拟订并组织实施公司年度经营计划、融资计划和投资方案；

（三）拟订公司财务预算、决算方案；

（四）拟订公司利润分配和弥补亏损方案；

（五）拟订公司职工收入分配方案；

（六）拟订公司内部管理机构设置方案；

（七）拟订公司基本管理制度，制定公司具体规章；

（八）拟订公司改革、重组方案和资产处置方案；

（九）提请董事会聘任或者解聘公司副总经理、总会计师等高级管理人员；

（十）聘任或者解聘除应由董事会聘任或者解聘以外的负责管理人员；

（十一）统筹和协调子公司的经营管理活动；

（十二）提出公司对所出资企业行使资产受益、重大决策和选择企业主要负责人等股东权利相关的工作意见；

（十三）公司章程和董事会授予的其他职权。

**第四十九条**    总经理、副总经理、总会计师在行使职权时，不得变更董事会决议或超越其职权范围。应当根据法律、行政法规和公司章程的规定，履行诚信和勤勉的义务。

本章程第四十二条之（一）、（三）、（四）项以及第四十三条的规定，适用于总经理和公司其他高级管理人员。

**第五十条**    非董事总经理列席董事会会议。

**第五十一条**    公司决定生产经营管理中的重要问题，实行总经理办公会议制度。总经理应当制订工作规则，报董事会批准后实施。

总经理应当按照董事会和监事会的要求，及时报告公司重大合同的签订、执行情况、资金运用情况和盈亏情况等，并保证报告的真实性、客观性和全面性。

**第五十二条**    总经理可以在任期届满以前提出辞职。有关总经理辞职的具体程序和办法由总经理与公司之间的合同规定。

**第五十三条**    有以下情形之一的，董事会可解聘总经理：

（一）因年龄或身体原因，不适合继续担任总经理的；

（二）个人能力和行为不符合公司发展需求和道德规范的；

（三）经营行为违反法律、法规、公司章程规定，或明显损害投资人、公司合法权益，或因经营决策失误导致公司利益受到重大损失

的；

（四）擅自离职的；

（五）《公司法》规定的不适合继续担任总经理的其他情形。

## 第六章    监事会

**第五十四条**    监事会由国资委代表国务院派出，对企业的国有资产保值增值状况实施监督。监事会成员由国资委委派的监事和职工代表组成。其中职工代表 2 名，由公司职工民主选举产生。监事会主席由国资委指定。

**第五十五条**    监事会依照《公司法》、《国有企业监事会暂行条例》等有关规定履行监督职责。

## 第七章    民主管理和劳动管理

**第五十六条**    公司依照宪法和有关法律、行政法规的规定，通过职工代表大会和其他形式，实行民主管理。

**第五十七条**    公司根据《中华人民共和国劳动法》和国家其他有关法律、行政法规的规定，制定适合公司具体情况的劳动用工、工资分配、劳动保险、生活福利、社会保障等制度。

**第五十八条**    公司实行劳动合同制度，依法与职工签订劳动合同。

**第五十九条**    公司研究决定公司生产经营方面的重大问题、制定重要的规章制度，以及有关职工工资、福利、安全生产、劳动保护以及劳动保险等涉及职工切身利益的问题时，应当听取公司工会和职工的意见和建议。

依照法律、行政法规和国家有关规定，需要由公司职工代表大会或者职工大会审议通过的，从其规定。

## 第八章    财务、会计制度和审计

**第六十条**    公司依照法律、行政法规的规定，制定公司的财务、会计制度和内部审计制度。

**第六十一条**    公司会计年度采用公历日历年制，即每年公历 1 月

1 日起至 12 月 31 日止为一个会计年度。

公司采取人民币为记账本位币，账目用中文书写。

第六十二条　公司应当在每一会计年度终了后 120 天内制作财务报告，财务报告应当依照法律、行政法规的规定制作。

公司年度财务报告应经会计师事务所审计，并经公司董事会审议通过。

第六十三条　公司应在当年税后利润中提取 10%，列入公司法定公积金。

当法定公积金累计额达到公司注册资本的 50%时，公司可不再提取法定公积金。

第六十四条　公司在弥补亏损、提取法定公积金后，经国资委批准，可以提取任意公积金。

第六十五条　公司的公积金的用途限于下列各项：

（一）弥补亏损；

（二）扩大公司生产经营；

（三）转增公司注册资本。

资本公积金不得用于弥补公司的亏损。

法定公积金转为资本时，所留存的该项公积金不得少于转增前公司注册资本的 25％。

第六十六条　根据国资委《中央企业内部审计管理暂行办法》的规定，公司建立内部审计制度，配备专职审计人员，实行内部审计监督。

公司内部审计制度和审计人员的职责，应当经董事会批准后实施。内部审计部门接受董事会审计委员会的监督和指导。审计部门负责人向总经理和董事会审计委员会报告工作。


## 第九章　公司的合并、分立、终止和清算

第六十七条　公司合并或者分立，应当由国资委制定方案或者由公司董事会提出方案，报国资委批准。

第六十八条　公司的营业期限为永久存续。

第六十九条 有下列情形之一的，公司应当解散并依法进行清算：

（一）国资委决定解散；

（二）因公司合并或者分立需要解散；

（三）依法被吊销营业执照、责令关闭或者被撤销；

（四）人民法院依照《公司法》的规定予以解散。

第七十条 公司解散时，应依据《公司法》的规定成立清算组对公司进行清算，清算结束后，清算组应当制作清算报告，报股东确认，并报送公司登记机关，申请注销公司登记，公告公司终止。

## 第十章 附则

第七十一条 本章程由公司董事会制订，经国资委批准后生效。

第七十二条 有下列情形之一的，公司应当修改章程：

（一）《公司法》或有关法律、行政法规修改后，章程的规定与修改后的法律、行政法规相抵触；

（二）公司章程规定事项发生重大变化；

（三）国资委决定修改章程。

公司章程的修改，应报国资委批准。涉及公司登记事项变更的，依法办理变更登记。

第七十三条 本章程所称高级管理人员是指公司的总经理、副总经理、总会计师、董事会秘书和总法律顾问。

第七十四条 本章程所称"以上"、"以下"，均包括本数。

第七十五条 本章程由国资委授权公司董事会负责解释。

# China National Building Materials Group Corporation
## Articles of Association

### Chapter 1: General Provisions

**Article 1** For the purpose of safeguarding the legitimate rights and interests of the Company, capital contributors and creditors, and normalizing the organization and behavior of China National Building Material Group Corporation, in accordance with *the Company Law of the People's Republic of China* (hereinafter referred to as "*the Company Law*"), *Interim Regulations on the Supervision and Administration of State-Owned Assets of Enterprises* (hereinafter referred to as *the "Regulations"*) and other relevant laws, administrative regulations and regulatory documents, the Articles of Association for China National Building Materials Group Corporation are hereby formulated.

**Article 2** Company Name

The Chinese full name is 中国建筑材料集团有限公司, 中国建材集团 for short;

The English full name is CHINA NATIONAL BUILDING MATERIALS GROUP CORPORATION, CNBM for short.

**Article 3** Company Domicile: 2nd Building (Tower B), Guohai Plaza, No. 17 Fuxing Road, Haidian District, Beijing.

Zip Code: 100036.

**Article 4** The registered capital of the Company is RMB 6,191,338,572.84 Yuan, and the actual paid-in capital is RMB 6,191,338,572.84 Yuan.

**Article 5** The Company is a wholly state-owned company established in accordance with the provisions of *the Company Law* and shall enjoy the property right of legal person and be liable for its debts with all of its assets.

**Article 6** The chairman of the Company board is the legal representative of the Company and represents the Company to the outside.

**Article 7** The Company legally engages in independent business activities, operates in compliance with the state laws and administrative regulations, and observes social moralities, business ethics, and the principle of honesty and trustworthiness, and accepts supervision from the government and the public, and

1

shoulders social responsibilities. The legitimate rights of the Company are protected by law and shall be inviolable.

**Article 8** The Company shall establish an organization of the Communist Party of China ("CPC") to carry out activities of the CPC pursuant to the Constitution of the Communist Party of China. The organization of the CPC shall play a political core role in decision-making on major issues of the Company. The Company shall provide necessary conditions for the activities of organization of the CPC.

**Article 9** The Company's employees shall form a trade union, carry out activities in the union and safeguard the legitimate rights and interests of employees, in accordance with *Trade Union Law of the People's Republic of China, the Company Law* and relevant laws and regulations; the Company shall implement democratic administration in the form of congress of workers and staff members or other forms. The Company shall provide necessary conditions for the activities of the trade union.

**Article 10** The Articles of Association shall be legally binding on the Company and its capital contributors, directors, supervisors and officers.

## Chapter 2: Business Purpose and Scope

**Article 11** The business purpose of the Company is: adhering to the core concept of "making the best use of resources and serving the construction", with science and technology innovation as a guide, to optimize and integrate the industry and social resources, to adhere to the road of recycling economy, to vigorously promote the consolidation and reorganization, structural adjustment and energy conservation of cement, glass and other industries, to vigorously develop new materials, new energy-efficient housing, new energy materials and cutting-edge technology and complete sets of equipment, to provide high quality products and services to the rural and urban development, urban construction, energy-efficient and land-saving buildings and national key projects, and to strive to build an innovation performance oriented, resource saving and environmentally friendly, socially responsible enterprise, to become an internationally competitive industry pacesetter, and to contribute to the sustainable development of the industry and society.

**Article 12** The business scope of the Company is: manufacture, sales, technology research and development and services, overall contracting of engineering and engineering design of building material products, building materials and related

2

industry equipments as well as supporting raw and auxiliary materials; design, manufacture, sales and engineering contracting of complete sets of housing using new building materials; design and construction of decoration materials factory and building engineering; investment, asset management, trade and logistics at home and abroad, technology consulting, information services and exhibition services in building materials and related fields; organizing member entities to produce and sell non-metallic minerals.

## Chapter 3: Capital Contributors

**Article 13** The capital contribution of the Company is solely made by the State, and the State-owned Assets Supervision and Administration Commission (hereinafter referred to as the SASAC) performs the duties of the capital contributor on behalf of the State Council.

**Article 14** The Company has no shareholders' meeting, and the SASAC shall exercise the following authority pursuant to *the Company Law, Regulations* and other laws and administrative regulations.

(1) Making decisions on the Company's operation guidelines, approving the Company's main business and adjustment scheme, and reviewing the Company's development strategy and plans from the perspective of central enterprises layout and structural adjustment;

(2) Appointing and replacing the directors who are not the representatives of the staff members, making decisions on the matters concerning the remunerations of such directors, and evaluating the performance of the board of directors and the directors;

(3) Appointing the board of supervisors on behalf of the State Council pursuant to relevant provisions;

(4) Approving the reports of the board of directors;

(5) Approving the reports of the board of supervisors;

(6) Approving the annual financial final accounts plans of the Company and carrying out records management of the annual financial budget plans of the Company;

(7) Approving the profit distribution plans and loss recovery plans of the Company;

(8) Making decisions on the increase or decrease of the Company's registered capital;

(9) Approving the issuance of corporate bonds;

(10) Making decisions on the merger, division, dissolution or liquidation of the Company or on the change of the corporate form;

(11) Formulating or approving the Company's Articles of Association and the modification of the Articles of Association;

(12) Approving the matters concerning the transfer of State-owned property rights of non-listed companies, the transfer of State-owned shares of listed companies, gratuitous transfer of State-owned property rights and disposition of Company's major assets, pursuant to *Law on State-Owned Assets of Enterprises*, *Interim Measures for the Administration of the Transfer of State-Owned Property Rights of Enterprises* (Decree No. 3 of the SASAC and the Ministry of Finance) and *Interim Measures for the Administration of the Transfer of Shares of Listed Companies by State-Owned Shareholders* (Decree No. 19 of the SASAC and China Securities Regulatory Commission); and approving significant accounting policies and accounting estimate change schemes of the Company;

(13) Conducting random audit on corporate annual financial final accounts and major issues and organizing economic responsibility audit work pursuant to *the Company Law*, *Audit Law of the People's Republic of China*, *Central Enterprise Financial Account Report Management Measures* (Order No. 5 of the SASAC) and *Interim Measures On Central Enterprise Economic Responsibility Audit Management* (Order No. 7 of the SASAC);

(14) Handling the matters which require the approval or the issuance of review opinions of the SASAC, in accordance with the administrative regulations and departmental rules of the State Council and its relevant departments concerning state-owned assets basic management, shareholding reform, separating secondary businesses from their core businesses, restructuring secondary businesses operations into independent companies and corporate major income distribution.

(15) Exercising other authority specified in state laws and administrative regulations.

**Article 15** The SASAC ensures that the Company enjoys its own managerial decision-making powers, and authorizes the board of directors to exercise some of the

capital contributor's duties and decide major matters of the Company in accordance with relevant provisions.

The SASAC exercises the rights of capital contributor in accordance with laws, administrative regulations and provisions of the Articles of Association, and shall not harm the interests of the Company or creditors of the Company.

## Chapter 4: Board of Directors

### Section 1: Composition, Powers and Obligations of the Board of Directors

**Article 16** The Company has a board of directors, composed of eleven (11) members, among which six (6) are outside directors and one (1) is an employee director.

The outside directors refer to the directors who are not employees of the Company. The outside directors do not hold other positions in the Company, except the position of directors and related positions in the special committee of the board of directors; the outside directors are not responsible for any executive affairs.

The members of the board of directors shall be appointed by the SASAC; among them the employee director shall be from the representatives of the Company and be elected by the staff members through democratic election.

**Article 17** The term of office of a director of the Company shall be subject to a maximum of three years. The term of office of a director may be renewed upon expiry thereof in the case of re-appointment or successful re-election.

Where a new appointment (new election for employee director) is not held in a timely manner upon expiry of the term of office of a director, or where the number of the members of the board of directors is less than the quorum due to the resignation of one or more directors during their term of office, such former director(s) shall continue to perform the director's duties in accordance with laws, administrative regulations and the Company's Articles of Association until the newly-appointed (or newly-elected) director(s) take office.

**Article 18** The board of directors shall be accountable to the SASAC and exercises the following powers pursuant to *the Company Law* and the authorization of SASAC:

5

(1) Making decisions on the annual operation objective and the operation objective during the term of office and reporting to the SASAC for the record;

(2) Making decisions on the operation plans, investment and financing plans of the Company, approving the Company's tradable financial asset investment and non-principal business investment projects;

(3) Approving the annual financial budget plans of the Company, and reporting to the SASAC for the record;

(4) Formulating the annual financial final accounts of the Company, and reporting to the SASAC for approval;

(5) Formulating the profit distribution plans and loss recovery plans of the Company;

(6) Formulating the plans on the increase or reduction of the registered capital of the Company, and on the issuance of corporate bonds;

(7) Formulating the plans on the merger, division, dissolution of the Company, or change of the Company form;

(8) Formulating the draft Articles of Association of the Company and the modification proposal thereof;

(9) Appointing or dismissing the general manager of the Company; making appraisal of the general manager and making decisions on the remuneration of the general manager; employing or dismissing the vice general manager, chief accountant of the Company according to the general manager's suggestion; making decisions on the remuneration of the vice general manager, chief accountant and general counsel according to the general manager's suggestion; appointing or dismissing the secretary of the board of directors according to the chairman's nomination, making appraisal of the secretary and making decisions of the remuneration thereof;

(10) Making decisions on the setting-up of the internal management bodies of the Company, and on the formation and cancellation of branches of the Company;

(11) Formulating the fundamental management systems of the Company;

(12) Making decisions on the development strategies and medium and long-term development plan of the Company according to the review opinions of the SASAC, and supervising the implementation of such strategies and plans; making decisions on the annual major fixed asset investment plan as well as the equity investment plan and submitting to the SASAC for the record;

(13) Making decisions on the risk management system of the Company, formulating the Company's important accounting policies and accounting estimate change program, reviewing the Company's internal audit reports, making decisions on the leading person of the Company's internal audit department, and on hiring or dismissal of the accounting firm responsible for the auditing of the Company's financial accounting reports and its remunerations, and on the cap of the Company's asset-liability ratio, and carrying out an overall monitoring of the Company's risks;

(14) Making decisions on the overall strategy and system of the Company's salary distribution;

(15) Performing the duties of asset-benefited, making major decisions, appointing directors and supervisors to the invested enterprises (including wholly-owned subsidiaries, holding subsidiaries and major joint stock subsidiaries (enterprises) ) and other shareholder's duties according to law;

(16) Hearing the work report of the general manager, supervising and urging, and inspecting the implementation of board resolutions;

(17) Approving the mortgage, pledge or guarantee for external obligations of the Company's major assets;

(18) Approving the Company's contributions and sponsor schemes except for those that shall be approved by the SASAC, and submitting to the SASAC for the record;

(19) Making decisions on the restructuring and reform of the Company's internal major business;

(20) Establishing the operation mechanism associated with the board of supervisors, submitting the corporate annual work report and related documents, and reporting with copies of relevant materials according to the requirements of the board of supervisors, urging and supervising the correction and improvement required by the board of supervisors;

(21) Exercising the powers of capital contributor as authorized by the SASAC; and

(22) Exercising other powers specified in laws and administrative regulations.

**Article 19** The board of directors shall perform the following obligations:

(1) Implementing the decisions of the SASAC, being responsible for the capital contributor and protecting the interests of the Company;

(2) Reporting the annual work to the SASAC;

(3) Providing truthful, accurate and comprehensive financial and operational information to the SASAC, providing the information such as the actual compensations of directors and managers, and procedures and methods of the nomination, employment and dismissal of managers;

(4) Safeguarding the legitimate rights and interests of the Company's employees, creditors and users; and

(5) Ensuring the implementation of state laws and administrative regulations in the Company.

**Article 20** The board of directors shall establish a scientific, democratic and efficient decision-making mechanism on major matters; and shall formulate rules of procedure for the board of directors.

**Article 21** The Company's board of directors shall have one (1) chairman and one (1) vice-chairman. The chairman and vice-chairman shall be appointed by the SASAC from the members of the board of directors.

**Article 22** The chairman of the board of directors shall exercise the following powers:

(1) Determining topics of meetings of the board of directors;

(2) Convening and presiding over meetings of the board of directors;

(3) Organizing, formulating and implementing rules and regulations operated by the board of directors, and coordinating operation of the board of directors;

(4) Signing important documents of the board of directors;

(5) Supervising and urging and inspecting implementation of resolutions of the board of directors, listening to reports of management and administration of the Company;

(6) Being responsible for communications between the board of directors and the SASAC, reporting to the SASAC on behalf of the board of directors;

(7) Making a special decision on the Company's major affairs under an emergency situation when force majeure or a major crisis occurs and it is impossible to convene a timely board meeting and reporting to the board of directors afterwards ; and

(8) Exercising other powers authorized by the board of directors.


**Section 2: Meetings of the Board of Directors**

**Article 23** The chairman of the board of directors shall convene and preside over meetings of the board of directors. If the chairman is unable to perform his/her duties due to special reasons, he or she shall appoint another director to convene and preside over the meetings instead; if the chairman fails to perform his/her duties, a director jointly elected by more than half of all the directors or designated by the SASAC shall convene and preside over the meetings.

**Article 24** The board of directors shall convene at least four regular meetings annually, one time quarterly. The first meeting may be delayed appropriately according to the actual circumstances.

All the directors, the board of supervisors and other attending staff shall be notified ten days before a regular meeting is held.

Under any of the following circumstances, the chairman of the board shall sign and issue the notice of convening an interim board meeting within three (3) working days after receiving the proposal, and convene and preside over the board meeting within seven (7) working days:

(1) The proposal is made by one-third or more directors;

(2) The proposal is made by the board of supervisors;

(3) The chairman finds it necessary; and

(4) The SASAC finds it necessary.

The method of noticing and the time limit shall be separately provided by the board of directors.

The notice shall cover the time, place, meeting period, agenda, topic of the meeting and the date of notice.

**Article 25** A meeting of the board of directors can be held only when more than half of all the directors present.

Resolutions of the board of directors are divided into common resolutions and special resolutions. In voting on a resolution of the board of directors, one person shall be entitled to only one vote. A common resolution of the board of directors shall be passed by more than half of all the directors; and a special resolution of the board of directors shall be passed by more than two thirds of all the directors.

When the board of directors reviews the items set out in the Item 6 , 7, and 8 of Article 18 of the Articles of Association, it shall be passed as a special resolution; for the other items, they shall be passed as common resolutions.

**Article 26** For significant matters subject to decisions of the board of directors, all the directors, board of supervisors and other attending personnel shall be notified according to the time limit specified in the Articles of Association, and related information/materials shall be provided.

When one-third or more of the directors or two or more outside directors think the information/materials is insufficient or the argument is unclear, they can jointly propose to delay the board meeting or delay the discussion of topics of the board meeting in writing, and the board of directors shall adopt the proposal.

**Article 27** The board meetings shall generally be held in the form of on-site meetings. Under special circumstances, with the preconditions that the directors can be ensured to fully express their views and if the chairman of the board agrees, it can be held in the form of conference call or other means and a resolution can be made.

**Article 28** The director shall present at the board meeting in person. When a director cannot present at the meeting in person due to special reasons, the director may present a letter of authorization to appoint another director to attend and vote on his/her behalf. The letter of authorization shall clearly specify the scope of authorization.

When a director, for two consecutive times, does not attend the board meetings in person, nor does he or she appoint another director, or when a director does not attend more than 3/4 of the board meetings within one year, the director shall be deemed unable to perform the duties of a director, and thus the board of directors (or the board of supervisors) shall propose to the SASAC to dismiss the director.

**Article 29** Minutes shall be prepared by the board of directors for the matters discussed at the meeting. The minutes shall include the date and location of the meeting, name of the presiding person, names of the directors presenting at the meeting, the agenda and topics of the meeting, key points of the directors' speech, the voting methods and results of the resolution (the number of consent, objection or abstention votes and the voters' names). The secretary of the board of directors shall make records of the meeting and form the minutes of the meeting. The directors presenting at the meeting and the secretary of the board of directors shall sign their names on the minutes. The secretary of the board of directors shall be responsible for filing and keeping the records and minutes of the meetings. The custody period is 20 years.

**Section 3: Special Committees of the Board of Directors**

**Article 30** The board of directors shall set up a strategy and investment committee, a nomination committee, a remuneration and appraisal committee, and an audit and risk management committee. The board may also set up other special committees according to the actual needs. The special committees of the board are special organizations under the board of directors and shall provide advices and suggestions for the major decisions of the board of directors. Unless authorized by the board, a special committee is not entitled to make decisions. The board may set up a non-permanent expert advisory agency composed of relevant experts and scholars, to provide professional advices to the Company.

**Article 31** The special committee of the board of directors shall be composed of the Company's directors, and the members shall be elected by the board of directors and be accountable to the board of directors. The convener shall be nominated by the chairman of the board and approved by the board of directors.

**Article 32** The strategy and investment committee shall be responsible for formulating the Company's development strategies and medium-and-long-term development plans; researching on the major investment and financing projects approved by the board of directors, restructure and transfer of the equity held by the Company, enterprise reform and the like and making proposals to the board of directors.

The strategy and investment committee shall be composed of six (6) directors, among which three (3) shall be outside directors, and the chairman of the board of directors shall serve as the convener.

**Article 33** The nomination committee shall be mainly responsible for researching criteria, procedures and methods for selecting the Company's general manager and other officers and providing proposals to the board of directors; carrying out investigation on the vice-general manager and chief accountant candidates nominated by the general manager and the board secretary candidate nominated by the chairman of the board and providing investigation opinions to the board of directors; carrying out investigation on the director, supervisor candidates of the subsidiaries and the general manager candidate of the subsidiary enterprise without a board of directors under authorization of the board of directors, and providing recommendation opinions to the board of directors. The nomination

committee shall be composed of eight (8) directors, four (4) of which shall be outside directors, and the chairman shall serve as the convener.

**Article 34** The remuneration and appraisal committee shall be mainly responsible for formulating the assessment criterion, performance evaluation procedures as well as compensation and reward and punishment methods for the Company's general manager, vice-general manager and chief accountant and submitting the same to the board of directors; assessing the performance of duties of the Company's general manager, vice-general manager and chief accountant and conducting performance evaluation thereon; formulating the compensation solution of the general manager, reviewing the compensation solution of the vice-general manager and chief accountant provided by the general manager and providing proposals to the board of directors.

The remuneration and appraisal committee shall be composed of four (4) outside directors, wherein one (1) of them serves as the convener, who shall be nominated by the chairman of the board and be reviewed and approved by the board of directors.

**Article 35** The audit and risk management committee shall be mainly responsible for the assessment and supervision of the Company's risk management system and for the effective operation of the internal control system; giving suggestions on the hiring or replacement of the external audit institution and proposing the remuneration plan of them; instructing and supervising the work of the Company's internal audit institution.

The audit and risk management committee shall be composed of four (4) outside directors, wherein one (1) of them serves as the convener, who shall be nominated by the chairman of the board and be reviewed and approved by the board of directors.

The members of the audit committee shall have considerable knowledge of accounting, financial management and laws.

**Article 36** Each director shall fully express his/her opinions and reach a consensus with each other to the greatest extent when the special committees of the board of directors perform their functions and powers. When opinion is divided, each different opinion shall be submitted to the board of directors with an explanation.

The special committees may hire intermediaries with the consent of the board of directors, and the fees shall be borne by the Company.

12

**Article 37** The special committees of the board shall formulate the working rules which specify the composition, duties, working pattern, meeting procedures and otherwise, and the rules shall be implemented after being approved by the board of directors.

## Section 4: Secretary of the Board of Directors

**Article 38** The Company shall have one (1) secretary of the board of directors, who shall be nominated by the chairman of the board, and the board of directors shall make decisions on the appointment or dismissal of the secretary of the board of directors.

A director or other officer of the Company may concurrently hold the post of the secretary of the board of directors of the Company.

**Article 39** The Company shall establish a director board office as a permanent institution of the board of directors. The secretary of the board of directors shall be responsible for the work of the director board office.

**Article 40** Duties of the secretary of the board of directors are as follows:

(1) Being responsible for preparing for meetings of the board of directors, and for the proposals and materials of the meetings;

(2) Attending meetings of the board of directors as a non-voting participant and being responsible for preparing minutes of meetings of the board of directors;

(3) Preparing and filing documents required to be produced by the board of directors;

(4) Being responsible for the information communication and contact with the directors;

(5) Being responsible for the service to the work of the board of directors and special committees;

(6) Being responsible for disclosing relevant information of the Company;

(7) Making the operation of the board of directors in accordance with laws, regulations and the Company's Articles of Association and other relevant provisions; and

(8) Other duties conferred by the board of directors.

## Section 5 Rights, Obligations and Responsibilities of the Directors

13

**Article 41** The director shall have the following rights during their term of office:

(1) Learning the Company related information for exercising director's rights;

(2) Attending the board meeting, fully expressing their opinions on the board meeting and exercising the voting right to the voting issues;

(3) Making supplementary requests to the documents and materials filed to the board meeting;

(4) Proposing to convene an interim board meeting according to the Articles of the Association;

(5) Receiving the remuneration and allowance according to the relevant provisions;

(6) Enjoying the treatment of travel and work when performing their duties according to the relevant provisions;

(7) Reporting the relevant situation to the SASAC; and

(8) Other rights specified in the laws and administrative regulations.

**Article 42** A director shall assume the following obligations:

(1) Paying attention to the business and affairs of the Company and devoting sufficient time and energy to perform the directors' duties in a prudent and diligent manner;

(2) Attending the board meetings and other activities of the board of directors, learning adequate information in time, and taking a vote in an independent and prudent manner;

(3) Complying with the provisions of laws, administrative regulations and the Articles of Association, adhering to the principle of good faith, and shall not seek for the interests of his/her own or others by taking advantage of his/her position and powers;

(4) Faithfully performing their duties, safeguarding the interests of capital contributors and the Company, and protecting the Company's trade secrets; and

The director shall still assume relevant obligations within a certain period after he/she steps down as the director, according to the service agreement of directors.

**Article 43** The director is prohibited from doing any of the following acts:

(1) Misappropriating funds of the Company or loaning funds of the Company to others without authorization;

(2) Opening an account in his/her own name or the name of any other individual to deposit funds of the Company;

(3) Using the Company's property to provide guarantee for others in violation of the Company's Articles of Association;

(4) Concluding contracts or making deals with the Company without the consent of the SASAC;

(5) Seeking, for the benefit of his/her own or others, any business opportunity that belongs to the Company by taking advantage of his/her powers, and operating for his/her own or for others any business that is of the same type with that of the Company that he or she serves;

(6) Accepting commissions for the transactions between others and the Company;

(7) Disclosing the Company's trade secrets without authorization; or

(8) Committing other acts in violation of his/her obligation of loyalty to the Company.

The income gained from any of the acts listed in the preceding paragraph shall belong to the Company.

No directors may, by abusing their powers, take any bribe or other illegal gains, or encroach on the property of the Company.

**Article 44** An outside director shall not have any relationship that might affect the impartial performance of outside directors. The outside directors and their immediate families shall not hold a post in the Company or its wholly-owned subsidiaries or holding subsidiaries in the recent two years, and shall not conduct business activities related to the Company, nor do they hold any shares of the enterprises invested by the Company, or have a post in the entity maintaining direct or potential competitive relationship with the Company's principal businesses.

**Article 45** A director shall undertake the director's liability for any of the following acts:

(1) Violating the directors' duties specified in laws, administrative regulations or the Company's Articles of Association and causing damages to the Company;

(2) A resolution of the board of directors is in violation of laws, administrative regulations or the Company's Articles of Association and causes losses to the Company, where the director who participates in the resolution is unable to prove that he or she has voted no.

**Article 46** The director shall bear the liability of directors in the following manners:

(1)Economic compensation. The compensation is the Company's direct economic loss due to the director's liability, or the compensation the Company pays to the third party as a result of holding joint liability;

(2)Dismiss of the post of directors;

(3)Elimination of influences and others.

## Chapter 5: General Manager

**Article 47** The Company shall have one (1) general manager, who shall be appointed or dismissed by the board of directors; and have several vice-general managers to assist the general manager, who shall be nominated by the general manager and appointed or dismissed by the board of directors.

**Article 48** The general manager shall be accountable to the board of directors and shall exercise the following powers pursuant to *the Company Law*, the Articles of Association and the authorization of the board of directors:

(1) Taking charge of management of production and business operations of the Company, and organizing implementation of resolutions of the board of directors;

(2) Formulating and organizing implementation of annual operation plans, financing plans and investment plans of the Company;

(3) Formulating financial budget plans and final account plans of the Company;

(4) Drafting profit distribution plans and loss recovery plans of the Company;

(5) Drafting employee income distribution plans of the Company;

(6) Drafting plans on setting-up of internal management bodies of the Company;

(7) Drafting fundamental management systems of the Company and formulating specific regulations of the Company;

(8) Drafting reform, restructuring plans and asset disposal plans;

(9) Proposing to appoint or dismiss vice general manager(s), chief accountant and other officers of the Company to the board of directors;

(10) Making decisions on the appointment or dismissal of the persons in charge of management other than those whose appointment or dismissal shall be subject to the decision of the board of directors;

(11) Coordinating operations and management of the subsidiaries;

(12) Offering the Company's opinions in exercising the powers of a shareholder on the invested enterprises on benefits of assets, major decisions and selection of main responsible persons; and

(13) Exercising other powers conferred by the Company's Articles of Association and the board of directors.

**Article 49** The general manager, vice-general manager, chief accountant, when performing their duties, shall not change the board resolution or go beyond the scope of their duties. They shall exercise the duty of loyalty and diligence according to laws, administrative regulations and the Company's Articles of Association.

The Item 1, 3 and 4 of Article 42 and Article 43 of the Articles of Association shall apply to the general manager and other officers of the Company.

**Article 50** The non-director general manager shall attend meetings of the board of directors as a non-voting participant.

**Article 51** The Company shall make decisions on the important issues in the Company's production, operation and management, and practice the general manager working conference system. The general manager shall formulate the working rules and implement the rules after approval by the board meeting.

The general manager shall report the execution and implementation of major contracts of the Company, and the use of funds and profit and loss pursuant to the requirements of the board of directors and the board of supervisors in time, and he or she shall be responsible for the authenticity, objectivity and comprehensiveness of the report.

**Article 52** The general manager may resign before the expiration of the term. The specific procedures and methods of the general manager's resignation shall be specified by the contract between the Company and the general manager.

**Article 53** The board of directors may dismiss the general manager under any of the following situations:

(1) He or she is found unsuitable to continue serving as the general manager due to age or health reasons;

(2) His or her individual capabilities and behaviors do not meet the Company's development needs and moral ethics;

(3) His or her operation violates the provisions of laws, regulations, the Articles of Association or clearly harms the legitimate interests of the capital contributors and the

Company, or causes significant losses to the Company due to business decision-making errors;

(4) He or she leaves office without notice or approval; and

(5) Other circumstances specified in *the Company Law* under which he or she is not suitable to continue serving as general manager.

## Chapter 6: The Board of Supervisors

**Article 54** The board of supervisors shall be appointed by the SASAC and conducts supervision over the maintenance and appreciation of values of state-owned assets. The members of the board of supervisors shall be composed of supervisors appointed by the SASAC and representatives of the staff. Among them two (2) are representatives of the staff, who are elected democratically by the staff members. The chairman of the board of supervisors shall be appointed by the SASAC.

**Article 55** The board of supervisors shall exercise the supervision duties pursuant to *the Company Law*, *Interim Regulations on the Boards of Supervisors in State-owned Enterprises* and related provisions.

## Chapter 7: Democratic Management and Labor Management

**Article 56** The Company shall carry out democratic management through employee representative congress or in other forms according to the Constitution, relevant laws and administrative regulations.

**Article 57** The Company shall establish the employment system, salary distribution system, labor insurance system, welfare and social security system suitable for the specific situation in the Company, pursuant to *the Labor Law of the People's Republic of China* and other related laws and administrative regulations.

**Article 58** The Company shall implement the labor contract system and enter into labor contracts with employees.

**Article 59** The Company shall listen to the opinions and recommendations of the Company's trade union and employees when deciding on major issues on the Company's production and management, formulating important rules and regulations, and deciding on issues involving the personal interests of staff and workers such as the salary, benefits, safety production, labor protection and labor insurance. In

accordance with laws, administrative regulations and relevant state regulations, if deliberation and approval of the Company's employee representative congress or employees' congress are required, such requirement shall be met.

## Chapter 8: Finance, Accounting System and Audit

**Article 60** The Company shall establish its own financial and accounting systems and internal audit system in accordance with laws and administrative regulations.

**Article 61** The fiscal year of the Company shall be based on the Gregorian calendar system, i.e. a fiscal year commences from January 1 and ends on December 31 of a Gregorian calendar year.

The Company shall use RMB as its functional currency for book keeping in accounting practices, and the accounts shall be prepared in Chinese.

**Article 62** The Company shall prepare financial reports within one hundred and twenty (120) days after the end of each fiscal year according to laws and administrative regulations.

The financial and accounting reports of the Company shall be audited by an accounting firm and get approval of the board of directors of the Company through deliberation.

**Article 63** The Company shall allocate ten percent (10%) of the after-tax profit to its statutory common reserve fund. The Company is not required to do so once the cumulative amount of the statutory common reserve fund reaches fifty percent (50%) or more of the Company's registered capital.

**Article 64** After the Company has made up the losses and drawn the statutory common reserve fund, it may, with approval of the SASAC, extract discretionary common reserve fund.

**Article 65** The use of the common reserve fund of the Company is limited to the following:

(1) Covering the losses;

(2) Expanding the production and operation of the Company;

(3) Converting into the registered capital of the Company;

The capital reserve fund shall not be used to cover the losses of the Company.

Where the statutory common reserve fund is converted into capital, the amount thereof remaining after the conversion shall not be less than twenty percent (25%) of the registered capital of the Company before the increase.

**Article 66** The Company shall establish an internal audit system, employ full time auditors and supervise internally through auditing pursuant to the provisions of *Interim Regulations on Central Enterprise Internal Audit Management Measures*.

The internal audit systems of the Company and the duties of auditors shall be implemented after approval by the board of directors. The internal audit department shall be subject to the guidance and supervision by the audit committee of the board of directors. Leading persons of the audit department shall report to the general manager and the audit committee of the board of directors.

### Chapter 9: Merger, Division, Termination and Liquidation of the Company

**Article 67** The plan of merge or division of the Company shall be formulated by the SASAC, or formulated by the board of directors of the Company and submitted to the SASAC for approval.

**Article 68** The term of operation of the Company is permanent existence.

**Article 69** Under any of the following circumstances, the Company shall be dissolved and liquidation shall be carried out according to law:

(1) The SASAC decides to dissolve the Company;

(2) Dissolution is required by a merge or division of the Company;

(3) The business license of the Company is revoked, or the Company is ordered to close down or is removed, in accordance with the law; or

(4) A people's court decides to dissolve the Company pursuant to *the Company Law*.

**Article 70** Where the Company is dissolved, a liquidation group shall be formed to commence liquidation of the Company pursuant to the provisions of *the Company Law*; after completion of the Company liquidation, the liquidation group shall prepare a liquidation report which shall be submitted to the shareholders for confirmation, and to the relevant Company registration authority for the purpose of applying for Company deregistration and for the public announcement on Company termination.

## Chapter 10: Supplementary Provisions

**Article 71** The Articles of Association is formulated by the board of directors of the Company, and shall go into effect after approval by the SASAC.

**Article 72** The Company shall modify the Articles of Association under any of the following circumstances:

(1) After the modification of *the Company Law* or relevant laws and administrative regulations, the provisions of the Articles of Association are in conflict with the modified laws and administrative regulations;

(2) There are significant changes in the matters stipulated by the Articles of Association;

(3) The SASAC decides to modify the Articles of Association.

The modification of the Articles of Association of the Company shall submit to the SASAC for approval. An amendment registration shall be made where there are changes of the Company's registered particulars.

**Article 73** For the purpose of the Articles of Association, officers refer to the general manager, vice general manager, chief accountant, secretary of the board of directors and general counsel of the Company.

**Article 74** The figures used following the terms of "not less than", "not more than" in the Articles of Association include those figures themselves.

**Article 75** The right to interpret the Articles of Association resides in the SASAC.