# EXHIBIT "C"



Positive

As of: June 4, 2015 6:42 PM EDT

# Tuf Racing Prods., Inc. v. American Suzuki Motor Corp.

United States District Court for the Northern District of Illinois, Western Division

June 3, 1998, Decided ; June 3, 1998, Filed

No. 94 C 50392

**Reporter**
1998 U.S. Dist. LEXIS 8331; 1998 WL 299300

TUF RACING PRODUCTS, INC., Plaintiff, v. AMERICAN SUZUKI MOTOR CORPORATION, Defendant. AMERICAN SUZUKI MOTOR CORPORATION, Counter-Plaintiff, v. TUF RACING PRODUCTS, INC., and DAVID ANTOLAK, Counter-Defendants.

**Notice:** [*1] NOT FOR PUBLICATION

**Disposition:** Defendants' and plaintiff's motions in limine, (docket Nos. 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131 and 132) granted in part and denied in part.

## Core Terms

limine, defense motion, good cause, termination, reasons, damages, motion in limine, mitigation, asserts, notice, lost profits, third amended complaint

## Case Summary

**Procedural Posture**

The matter was before the court on the three motions in limine filed by plaintiff and the nine motions in limine filed by defendant.

**Overview**

Defendant sought to preclude plaintiff from offering any evidence via plaintiff's expert on the issue of lost profits. The court held that the expert was not inadequately qualified to testify as to lost profits. The court also held that the expert was entitled to make assumptions upon which his opinion may rest, provided there was some evidentiary basis for such assumption when he testified. While the court agreed that Daubert applied to expert opinion as to lost profits, the expert's testimony could not be excluded in its entirety under Daubert, noting that the expert's methodology was not so inherently speculative or defective as to render it inadmissible entirely. Plaintiff sought to exclude from evidence any reasons for termination not expressly included in the termination letter. The issue of whether proper notice was given under the Illinois Motor Vehicle Franchise Act was unrelated to the separate issue of good cause for termination. Once a franchisee was timely notified of termination and the process begins, there was nothing improper about allowing the franchisor to submit evidence of additional reasons for termination should they come to light after the initial notice.

**Outcome**

The court granted in part and denied in part defendant's and plaintiff's motions in limine.

## LexisNexis® Headnotes

Civil Procedure > Pretrial Matters > Motions in Limine > General Overview

*HN1* In deciding the motions in limine, the court exercises its discretion as it would with any evidentiary ruling. In applying its discretion, the court notes the important function of the motion in limine which permits the court to eliminate from further consideration evidence that clearly should not be presented to the jury. Some evidentiary submissions, however, cannot be evaluated accurately or sufficiently by the court in such a procedural context. In those instances, it is necessary to defer ruling until during trial, when the court can better assess the impact on the jury.

**Counsel:** FOR PLAINTIFF: John J. Holevas, Williams & McCarthy, Rockford, IL.

FOR PLAINTIFF: Patrick M. Kinnally, Murphy, Hupp, Foote, Mielke & Kinally, Aurora, IL.

FOR DEFENDANT: John F. Hagan, Jr., Alex Dimitrief, Kirkland & Ellis, Chicago, IL.

**Judges:** PHILIP G. REINHARD, JUDGE, UNITED STATES DISTRICT COURT.

**Opinion by:** PHILIP G. REINHARD

## Opinion

### MEMORANDUM OPINION AND ORDER

Plaintiff, Tuf Racing Products, Inc., has filed three motions in limine and defendant, American Suzuki Motor Corporation, has filed nine motions in limine. *HN1* In deciding the motions in limine, the court exercises its discretion as it would with any evidentiary ruling. *See Otto v. Variable Annuity Life Ins. Co., 134 F.3d 841, 852 (7th Cir. 1998)*. In applying its discretion to the present motions, the court notes the important function of the motion in limine which permits the court to eliminate from further consideration evidence that clearly should not be presented to the jury. *See Jonasson v. Lutheran Child and Family Serv.,* [*2] *115 F.3d 436, 440 (7th Cir. 1997)*. Some evidentiary submissions, however, cannot be evaluated accurately or sufficiently by the court in such a procedural context. *Id.* In those instances, it is necessary to defer ruling until during trial, when the court can better assess the impact on the jury. *Id.* The court will address defendant's motions in limine first. [1]

**1.** *Defendant's motion in limine No. 1* [2]

Defendant seeks to preclude plaintiff from offering any evidence via plaintiff's expert, Ronald Heitzman, [*3] on the issue of lost profits. Defendant claims Heitzman's opinion should be barred because: (1) he is not qualified to testify concerning lost profits; (2) his opinions and methodology are completely speculative; and (3)his analysis and methodology do not satisfy the criteria for admissibility of expert opinion under *Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993)*. While the parties have submitted extensive arguments and briefing on these issues, the court considers succinct disposition to be appropriate at this stage of the proceedings.

First, the court finds that Heitzman is not inadequately qualified to testify as to lost profits as a matter of law. Rather, defendant's criticisms go to the weight of Heitzman's credibility and testimony.

Second, Heitzman is entitled to make assumptions upon which his opinion may rest, provided there is some evidentiary basis for such assumption when he testifies. The bases of those assumptions affect the weight to be given his conclusions and opinions. Contrary to what defendant asserts, the assumption as to any interference by defendant in

---

[1] Defendant's motions in limine Nos. 5 and 9 are denied as moot because the claims are based on parts that have been settled.

[2] The court will also address plaintiff's motion in limine to bar the opinion of defendant's expert, M. Laurentius Marais, at this point as it is somewhat interrelated with defendant's motion.

plaintiff's operations is hardly contrary to an **[*4]** undisputed fact. The issue of what level of interference, if any, contributed to what amount of business loss by plaintiff is very much in dispute in this case.

Lastly, while the court agrees that *Daubert* applies to expert opinion as to lost profits, *see Target Market Publishing, Inc. v. Advo, Inc., 136 F.3d 1139 (7th Cir. 1998)*, Heitzman's testimony may not be excluded in its entirety under *Daubert*. His methodology is not so inherently speculative or defective as to render it inadmissible entirely. Rather, it is subject to cross-examination and contrary opinion which the jury can weigh in deciding what credence to give to his opinions.

That being said, the court does note that the issue of whether Heitzman should have used a "risk-free" discount rate may leave Heitzman's opinion in some doubt. The court agrees with defendant and plaintiff that risk must be taken into account in calculating lost profits. It would seem, as defendant asserts, that the Seventh Circuit considers risk a factor which must be applied when a future damages award is discounted to present value. *See, e.g., Price v. Marshall Erdman & Assoc., Inc., 966 F.2d 320, 326-27 (7th Cir. 1992)*; *Douglass* **[*5]** *v. Hustler Magazine, Inc., 769 F.2d 1128, 1143 (7th Cir. 1985)*. Simply taking risk into account for purposes of estimating the length of time profits would have been generated may not, by itself, be a sufficient consideration of risk. Nonetheless, at this stage of the proceedings, the court cannot say Heitzman's opinion is so defective it is rendered entirely inadmissible. Therefore, the court denies defendant's motion to bar Heitzman's testimony.

That leaves plaintiff's motion to bar defendant's expert, M. Laurentius Marais, on the basis of his criticisms of Heitzman. In that regard plaintiff seeks to bar Marais' opinion because: (1) he incorrectly asserts that present cash value should be determined at the time of termination rather than the time of trial, as done by Heitzman; and (2) he asserts that Heitzman's use of a discount rate that does not account for risk is improper.

The court agrees with plaintiff that Marais' testimony regarding the operative date for determining the present cash value should be barred, but not for the reason urged by plaintiff. Rather, the court considers Marais to be rendering a legal opinion not within his expertise. The question of whether present **[*6]** cash value is measured from the point of injury or the time of trial (and it is clearly determined at the time of trial, *see, e.g., In re Air Crash Disaster Near Chicago, Illinois, on May 25, 1979, 644 F.2d 633 (7th Cir. 1981))* is a legal question which a court, not a damages expert, must decide. The actual calculation belongs to the expert, the underlying legal rule does not. Therefore, the court grants plaintiff's motion to bar Marais' opinion as to when to determine present cash value.

The court denies the motion in limine as to Marais' criticism of Heitzman's failure to take risk into account in utilizing a discount rate. As discussed above, such a determination may be subject to criticism and goes to the weight of Marais' as well as Heitzman's testimony.

## 2. *Defendant's motion in limine No. 2*

Defendant seeks to limit the trial testimony of plaintiff's expert, Ronald Heitzman, to the opinion and underlying bases as disclosed in his report [3] and at his deposition. The court agrees with plaintiff that what defendant seeks in its motion is essentially a prophylactic ruling that plaintiff is to comply with the established rules of civil procedure. Such a ruling **[*7]** is unnecessary as it

---

[3] Heitzman submitted his original report on April 15, 1997, and he was deposed on July 23, 1997. Thereafter, on September 9, 1997, Heitzman submitted a revised report pertaining to changes in his lost profits calculations. Defendant's motion in limine refers to both reports.

would be superfluous in light of both plaintiff and defendant's obligations to comply with the rules generally. Absent some specific indication of a likely violation of the rule, accompanied by an articulable and avoidable prejudice resulting therefrom, defendant's motion in limine No. 2 is denied.

### 3. *Defendant's motion in limine No. 3*

Defendant seeks to strike plaintiff's proposed trial exhibit 4, a one-page document which lists various items for purchase by new Suzuki dealers, including, among other things, certain advertising and promotional materials and certain required and recommended signage. Defendant also requests a bar to prevent plaintiff from introducing any evidence referring to exhibit 4. **[\*8]** Defendant contends exhibit 4 should be barred because any claim based on exhibit 4 is time-barred by the applicable four-year statute of limitations and because use of exhibit 4 would confuse and mislead the jury and unduly prejudice defendant. Plaintiff responds by asserting that it does not intend to use exhibit 4 as substantive evidence to support a specific claim based on that document. Rather, plaintiff asserts that it intends to use exhibit 4 to impeach defendant's prior assertions under oath that it did not require dealers to purchase advertising or promotional material and to show defendant had a written corporate policy and course of conduct requiring its dealers to purchase advertising and promotional materials in violation of the Illinois Motor Vehicle Franchise Act (IMVFA).

Based on plaintiff's assertion,(and apparent concession that any claim based on exhibit 4 is barred by the applicable statute of limitations) that it will not use exhibit 4 as substantive evidence, the court grants the motion in limine in that regard. The court further grants the motion as to the use of exhibit 4 for impeachment purposes or to demonstrate cause of conduct. At this stage of the proceedings **[\*9]** the court cannot properly assess the admissibility of exhibit 4 for such purposes. This latter issue may, of course, be revisited during trial should it arise.

### 4. *Defendant's motion in limine No.4*

Defendant moves in limine to bar plaintiff from submitting any evidence related to good cause under the IMVFA. In that regard, defendant contends that plaintiff's third amended complaint does not make a claim under the IMVFA based on lack of good cause, that this court so ruled in an earlier order (*see* Minute Order dated Jan. 7, 1995) and that plaintiff admitted such in its response to defendant's motion to dismiss the second amended complaint. Plaintiff responds that this court's January 7, 1995 order does not bar a claim based on lack of good cause because the then motion to dismiss was directed at the second amended complaint and because the basis of the motion was not directed to the absence of any allegation pertaining to good cause. Alternatively, plaintiff argues that any admission it made regarding the lack of allegations concerning good faith were merely inadvertent and pertained to the second amended complaint which has been superseded by the third amended complaint. **[\*10]** According to plaintiff, paragraph 28 within Count III incorporates paragraph 22 of the general allegations which refers to good cause and, therefore, the third amended complaint does in fact state a claim based on lack of good cause under the IMVFA.

The court grants defendant's motion in limine for a simple reason. Plaintiff has never asserted a claim based on lack of good cause under the IMVFA, at least not until now. When the court issued its January 7 order, ruling on the motion to dismiss, it ruled that neither Count III nor IV was based on good cause. Furthermore, that ruling was based, in part, on plaintiff's assertion at that time that it was not pressing a claim based on lack of good cause. While plaintiff was allowed to file a third amended complaint, it was for reasons unrelated to any claim based on lack of good cause. Additionally, plaintiff never sought

reconsideration of the January 7 order pertaining to the ruling as to good cause. Plaintiff cannot, at the last minute and in response to a motion in limine, attempt to add a claim it has not heretofore asserted.

The court also notes that the third amended complaint does not properly plead a claim for lack of good cause **[*11]** under IMVFA. Count III never mentions lack of good cause and does not specify the specific provision of IMVFA under which such a claim would arise. Even under liberal notice pleadings, such a method of pleading does not fairly apprise defendant or the court of the claim. For all of these reasons, the court grants defendant's motion in limine as to evidence of good cause or lack thereof.

### 6. *Defendant's motion in limine No. 6*

Defendant seeks to preclude plaintiff from presenting any evidence at trial of any "unwarranted allusions to the national origin of Suzuki." In particular, defendant moves to bar plaintiff from presenting any evidence or making any statements to the jury regarding the fact that Suzuki is a Japanese company, the fact that some Suzuki employees are Japanese and the cultural differences between Japan and the United States.

At this point, there is no indication that plaintiff is likely to present such evidence or make such statements at trial. The court will therefore deny the motion in limine at this time. That being said, the court cautions plaintiff that such efforts would be viewed disfavorably and would, upon motion at the time, be effectively **[*12]** addressed.

### 7. *Defendant's motion in limine No. 7*

Defendant seeks to preclude plaintiff from introducing any evidence relating to whether defendant mitigated its damages as to its breach of contract counterclaim. Defendant contends that plaintiff cannot raise the issue of failure to mitigate because it did not plead it as an affirmative defense. Plaintiff responds that it need not plead mitigation of damages as an affirmative defense because its complaint contains matters going to the issue of whether defendant mitigated its damages.

The court need not address the issue of whether plaintiff may forego pleading mitigation of damages as an affirmative defense by raising such matters preemptively in its complaint. Even if it could (which is doubtful), it has not done so here. The matters raised by plaintiff go to issues of liability and not the separate issue of mitigation of damages. As such, plaintiff cannot at this late date interject mitigation of damages as a defense and is barred from presenting any evidence to that end at trial.

### 8. *Defendant's motion in limine No. 8*

Defendant moves to bar any evidence related to how its termination of plaintiff's **[*13]** dealership may have affected David or Karen Antolak's personal finances or affairs. Plaintiff responds that because the Antolaks are sole owners of plaintiff that the financial impact on them is relevant to the issue of damages in this case.

The court rejects plaintiff's argument. The Antolaks, as individuals, are legally separate from the corporate existence of plaintiff. As such, their financial circumstances have no bearing on this case outside the corporation itself. The court considers *Murdaugh Volkswagen, Inc. v. First Nat'l Bank of South Carolina, 801 F.2d 719 (4th Cir. 1986)*, a case relied on by plaintiff, to be distinguishable, as there the individual had standing to press claims on her own behalf. Thus, evidence of her mental and emotional condition was properly before the court. *Id. at 728*. Such is not the case here. Accordingly, the court grants defendant's motion in limine No. 8.

### 9. *Plaintiff's motions in limine*

The court will next address plaintiff's two remaining motions in limine. Plaintiff's first

motion seeks to exclude from evidence any reasons for termination not expressly included in the termination letter of September 26, 1994. Plaintiff [*14] specifically contends in that regard that because any other reasons for termination, including the one set forth in defendant's letter of October 21, 1994, did not comply with the sixty-day notice requirement of the IMVFA and the dealership agreement that they are inadmissible under section 4(d)(6) of the IMVFA.

The issue of whether proper notice was given under the IMFVA is unrelated to the separate issue of good cause for termination. Once a franchisee has been timely notified of termination and the process begins, there is nothing improper about allowing the franchisor to submit evidence of additional reasons for termination should they come to light *after* the initial notice. Cf. *C.C.S. Chicago Recreation, Inc. v. American Suzuki Motor Corp., 1996 U.S. Dist. LEXIS 2459*, No. 90 C 2171, *1996 WL 99906*, at *4 (N.D. Ill. Mar. 1, 1996) (citing *Ormsby Motors, Inc. v. General Motors Corp., 842 F. Supp. 344, 351 (N.D. Ill. 1994)* (Reinhard, J.) (after acquired evidence of reasons for termination admissible to show good cause under section 4(d)(6) of the IMFVA); *David Glen, Inc. v. Saab Cars USA, Inc., 837 F. Supp. 888, 891 (N.D. Ill. 1993)* (citing *Kawasaki Shop of Aurora v. Kawasaki Motors Corp.,* [*15] 188 Ill. App. 3d 664, 544 N.E.2d 457, 463-64, 136 Ill. Dec. 4 (Ill. App. Ct. 1989)* (same proposition)). Of course, it would not be proper for a franchisor to withhold reasons for termination of which it was aware when notice was given and then wheel those out at a later time. In fact, in this case, the one additional reason that was discovered, apparently after the original notice, was pointed out to plaintiff within a reasonable amount of time.

For the foregoing reasons, the court denies plaintiff's motion to bar admission of evidence of any reasons for termination acquired or discovered after the September 26, 1994, notice letter. For these same reasons, the court also denies plaintiff's other motion to bar evidence of the lack of a wholesale floor plan as identified in the October 21, 1994, letter as an additional reason for termination. Of course, if plaintiff can show that any reason not set forth in the September 26, 1994, letter was known to defendant prior to that time then the court will reconsider the issue of admissibility.

**ENTER:**

**PHILIP G. REINHARD, JUDGE**

**UNITED STATES DISTRICT COURT**

**DATED:** *June 3, 1998*