IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION
TO COMPEL PRODUCTION OF 30(b)(6) WITNESS**

## I. INTRODUCTION

The Plaintiffs' Steering Committee respectfully submits this reply brief in support of its

motion to compel production of 30(b)(6) witness (Rec.Doc. 19070).

Taishan Gypsum Co., Ltd and Tai'an Taishan Plasterboard Co., Ltd. ("Taishan") have

responded to plaintiffs' motion to compel production of a knowledgeable 30(b)(6) witness from

Taishan.  Plaintiffs most recently demonstrated in the Second Supplement to their motion

(Rec.Doc. 19109-2) that Taishan's witness, a salesman named Che Gang, was unprepared,

unable and/or unwilling to answer the vast majority of the pertinent questions asked of him

within the scope of this deposition.

In support of their motion, Plaintiffs presented several exhibits in their Second

Supplement, comprised of unfiltered excerpts of Mr. Che's actual testimony, that reveal a

disqualifying lack of knowledge by the witness of Taishan's business from a person designated

to be the most knowledgeable about the business.  Mr. Che repeatedly answered "I don't know"

to substantive questions about the companies' corporate structure almost 50 times (Rec.Doc.Nos.

1

19109-3).  He disclaimed a clear recollection of important corporate details over 25 times

(Rec.Doc.19109-4), and he repeatedly failed to provide substantive answers to relevant questions

by demanding that the Plaintiffs check the commercial registration form that Taishan provided

almost 25 times (Rec.Doc.19109-5).  Where the witness is so unprepared to testify, Taishan

should be compelled to produce a substitute.

## II. ARGUMENT

### A.  Taishan's *Ad Hominem* Attacks Upon Mr. Herman are Offensive and Unfounded

In response to Plaintiffs' calling out the witness's evasive, inaccurate and incomplete

answers, Taishan engaged in a series of *ad hominem* attacks against the examiner, Mr. Russ M.

Herman.  Taishan accused Mr. Herman of "unprofessional and bullying tactics," Taishan Brf. at

2, when Mr. Herman's demeanor was at all times properly composed in the face of a reluctant

and hostile witness.[1]  Taishan's dissembling over a few of the witness's "I don't knows" when

there are over 100 instances of allusive answers by its designee belies the truth about the

witness's incapacity.  Just like the first round of depositions of Taishan's witnesses in Hong

Kong over 4 years ago, the recent production of Mr. Che has devolved into "chaos and old

night."  Out of this experience, the Plaintiffs submit that a new, more knowledgeable witness

should be produced by Taishan since there is no merit to Taishan's arguments.

---

[1] Were the accusation not so slanderous, it would otherwise be dismissed out of hand. After all, Mr. Herman's reputation in the New Orleans legal community is impeccable.  He was the recipient of the E.D.La.'s Federal Bar Association John R. "Jack" Martzell Professionalism Award in 2009.  Further, he has regularly received professional accolades, including "Outstanding Trial Lawyer" by the Louisiana Trial Lawyers Association and other professional associations, since 1977.

Mr. Herman was personally prepared to interrogate any witness from Taishan well before their former counsel withdrew from representing the defaulted defendants. In this regard, plaintiffs had retained a Chinese speaking lawyer, Yan Gao, to review all of the relevant annual reports of the Taishan defendants, including BNBM and CNBM. Having these documents in plaintiffs' possession provided a wealth of information regarding the interconnected and related companies that comprise Taishan's affiliated companies that are now the subject of this Court's contempt violation track discovery. When BNBM and the other Taishan defendants began to re-appear in this Court in late February, 2015, Mr. Herman, as Liaison Counsel, provided the newly appearing counsel with these annual reports, as well as the entire records in the *Germano* and *Hernandez* trials. Possessing this information provided ample background to initiate any deposition against Taishan.

Nevertheless, in anticipation of obtaining full discovery from the defendants, including Taishan, plaintiffs served expedited discovery upon Taishan in March, 2015.[2] Taishan was ordered by the Court to produce to the plaintiffs relevant documents regarding financial ties between it and its affiliate company in English. *See* March 17, 2015 Hearing Transcript at 40 - 42. Despite the Court's Order, Taishan's initial document production of financial records was produced solely in Chinese. To this date, Taishan acknowledges that it has yet to fully comply

---

[2]*See* Rec. Doc. No. 18377 (CNBM (USA) Corp.); Rec. Doc. No. 18379 (United Suntech Craft, Inc.); Rec. Doc. No. 18498 (Beijing New Building Material (Group) Co. Ltd.); Rec. Doc. No. 18499 (Beijing New Building Materials Public Limited Co.); Rec. Doc. No. 18500 (Taishan Gypsum Co. Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.); Rec. Doc. No. 18501 (Tai'an Taishan Plasterboard Co., Ltd. ("TPP"); Rec. Doc. No. 18503 (China National Building Materials Import and Export Corporation); Rec. Doc. No. 18504 (China National Building Materials Group Corporation); Rec. Doc. No. 18505 (CNBM Forest Products (Canada) Ltd.); Rec. Doc. No. 18506 (China National Building Materials Company Limited).

with this Court's Order by producing all of its financial records in English.  Specifically, at the deposition of Mr. Che, counsel for Taishan stated on the record:  "there are some financial documents that are in the process of going through state secret review that you will be receiving. But you don't have them yet[.]"[3]

On May 28, 2015, Plaintiffs' noticed the deposition of the 30(b)(6) witness of Taishan to take place on June 2-4, 2015 (Rec.Doc. 19007).  As the date for that deposition approached, on May 29, 2015, Taishan filed a motion for a protective order to postpone the deposition (Rec.Doc. 19013).  On June 2, 2015, the Court denied Taishan's motion and permitted discovery of the 30(b)(6) witness on matters not only including the Contempt Order violations but alter ego as well (Rec.Doc. 19058).  Taishan's motion alluded to the fact that it would be unduly burdensome to have Mr. Che prepared to testify to all such matters.  And, in fact, he was not prepared.

The deposition of Mr. Che began on June 2, 2015 in the Courthouse of the Eastern District of Louisiana.  At the outset of the deposition it was obvious that Mr. Che was not prepared to testify.  The first question asked of the witness – "You are aware that in 2006 and 2007, Taishan was shipping to the United States of America drywall manufactured by Taishan, isn't that true?" – was answered with, "I'm not sure."  Che Depo. at 26.  Moments later it also became apparent that Mr. Che was a hostile witness who was prepared by his counsel to provide pat, canned responses designed to facially appear responsive to questions, when in fact his answers were non-responsive.  *Id.* at 33-34  (Mr. Che denied any knowledge of control of

---

[3]*See* Deposition of Gang Che, Vol. III (June 4, 2015) at 315 (emphasis added) (comment of Bernard Taylor).  Taishan's reflectance to participate in discovery is ongoing.  As part of their obfuscatory efforts, in connection with plaintiffs' request for production of documents regarding sales in the United States, Taishan instead produced thousands of pages of documents regarding irrelevant sales to over a dozen countries *other* than the United States.

Taishan by CNBM).  Throughout the course of the deposition it was obvious that Mr. Che was an inappropriate witness and one presented because the Chairman, Mr. Jia Tongchun, purportedly has a heart condition that makes him unavailable to travel, and the former foreign trade department manager of Taishan, Peng Wenlong, was unavailable.[4]

The day prior to the beginning of the deposition, June 1, 2015, counsel for Taishan provided to plaintiffs a chart purporting to identify Taishan's affiliated companies. *See* Che Deposition, Exhibit 37.  Mr. Che testified to being the author of the chart (in the Chinese version) who received help from several people who he could not recall or identify with the exception of Mr. Jia.  Che Depo. at 281-283.  Although the chart was intended to identify Taishan's affiliates, Mr. Che admitted that he did not even understand what or who Taishan's "parent companies" were.  *Id.* at 282.  This response from a witness who was represented to be the most knowledgeable person for the company and someone prepared to testify to the structure of the company was incredible, and a dereliction of duty on the part of Taishan to comply with the Federal Rules of Civil Procedure.

As the deposition continued, the repetition of non-responsive and evasive answers from the witness, coupled with numerous speaking objections, lead to significant frustration on the part of the examiners of Mr. Che.  Taishan, in its brief, attempts to paint Mr. Che's inadequate testimony in the best light by directing attention away from the witness and instead onto Mr. Herman.  Taishan's accusations against Mr. Herman are all baseless as the following summary demonstrates.

---

[4]Ironically, Taishan's representation that Mr. Peng's whereabouts were unknown and that he would be unavailable were exposed as false when Mr. Che was able to testify to Mr. Peng's telephone number.  Che Depo. at 106.

Taishan incorrectly contends that Mr. Herman was obliged to provide the witness with a

document when asking open questions.  Indeed, Mr. Che was requesting to see Mr. Herman's

personal notes, which are clearly attorney work product. The Federal Rules of Civil Procedure

do  not require a questioner in a deposition to provide supporting documentation for a question.

Despite that, Mr. Herman attempted to accommodate Mr. Che by rephrasing his question:

```
       BY MR. HERMAN:
11     Q     Do you recall seeing a Taishan document in
12             which is reflected that Mr. Peng indicated that China
13             New Building Material Group, China New Building
14             Material Incorporated, Beijing New Building Material
15             Group, and that China New Building Material
16             Incorporated and Beijing New Building
17             Material Incorporated were affiliates within
18             Judge Fallon's injunction?
19     MR. TAYLOR: Objection, form.
20     MR. MARROCCO: Objection.
21     A     Can you show me the document?
22     MR. HERMAN: I'll break the question up.
23     BY MR. HERMAN:
24     Q     Do you recall -- do you recall reading a
25             Taishan document in which Mr. Peng indicated that
Page 143
1             China New Building Material Group was probably an
2             affiliate within Judge Fallon's injunction?
3     MR. TAYLOR: Objection to form.
4     MR. MARROCCO: Object to form.
5     A     I don't have a clear recollection on that.
```

Che Depo. at 142 - 143.

Taishan also challenges Mr. Herman's use of CNBM's Annual Report, Exhibit 12 to Mr.

Che's deposition, contending that the document was without foundation and because the witness

was unable to read the document without translation by the translator.  Both objections are

unfounded since all that the witness was asked in connection with the publicly available

document was whether he agreed with the definition of "related parties" in the publicly available

report of CNBM. Che Depo. at 67-69. Not surprising, because of the improper objections, the witness provided a non-responsive answer to the question by disagreeing with CNBM's definition of "related parties" while simultaneously denying any understanding of the document. Che Depo. at 69 ("Q. Do you agree with subparagraph (b), Roman numerals (i), (ii), (iii), (iv), (v), (vi), (vii) and the last sentence? * * * A. I disagree. Because there are way too many professional terminologies, I do not know what it is talking about.").

Taishan mistakes Mr. Herman's probing examination as mocking the witness. Mr. Herman's effort to demonstrate the limits of the witnesses' knowledge by asking questions regarding Taishan's parentage in the form of the analogy of a marionette or puppeteer was not inappropriate under the circumstances. Che Depo. at 367 - 368. Mr. Herman was attempting to draw an analogy between puppets, marionettes, ventriloquists, and other demonstrative examples of controlled apparatuses. Apparently, the witness was unfamiliar with those examples.

Taishan wrongly claims that Mr. Herman raised his voice with the witness, and behaved unprofessionally towards the witness. These confected arguments by Taishan's counsel attempt to conceal the fact that Taishan was hampered by an inappropriately designated witness. Further, Mr. Herman did not raise his voice with the witness. Mr. Herman's sonorous voice just signaled that the witness was not paying attention, which is readily discerned by the video record. *Id.* at 148-149, 364. Moreover, the witness never mentioned any discomfort with Mr. Herman's voice level.

Taishan also takes umbrage with Mr. Herman for deliberately turning his back on the witness during questioning about shipments of Taishan Drywall by Taishan to the United States. The documents reflecting those shipments were in the fictitious name of "Bill Cher" which the

witness admitted he "came up with [himself]".   Che Depo. at 168.  In his frustration with the

witness's evasive answers, Mr. Herman, practicing tactics learned from The Art of War,[5] turned

to his associates and to boxes of other documents while questioning the witness in search of

additional material to elicit a truthful response from the witness. Mr. Herman admitted having

done so on the record.  Che Depo. at 169 ("That's absolutely true, and I know of no rule of the

Federal Rule of Evidence or deposition procedure that requires counsel to face the witness,

particularly when counsel feels the witness is being evasive.").[6]

The fact is Mr. Che was unprepared to testify with knowledge during his deposition.

Under these circumstances, Taishan should be compelled to produce a witness competent to

provide true and accurate answers regarding Taishan and its affiliate's violations of the Court's

Contempt Order and alter ego. *See Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416,

432-33 (5th Cir. 2006) ("the deponent must make a conscientious good-faith endeavor to

designate the persons having knowledge of the matters sought by [the party noticing the

deposition] and to prepare those persons in order that they can answer fully, completely,

unevasively, the questions posed ... as to the relevant subject matters . . . If it becomes obvious

---

[5]Sun Tzu, The Art of War ("When we are near, we must make the enemy believe we are far away..."), available at http://www.goodreads.com/work/quotes/3200649---s-nz-b-ngf?page=4.

[6]The remaining contentions of Taishan regarding bathroom breaks and the like are not worth dignifying.  Like all of Taishan's other contentions they are baseless.  For example, as to the bathroom break, after only testifying for an hour, Mr. Che inquired into "how many more minutes do you need" before a rest?" Che Depo. at 208.  To which Mr. Herman responded, "6". *Id.*  Whereupon, Mr. Herman introduced one exhibit, made a brief statement, and then accomodated the witness's request for a break. *Id.* at 208-210.(the interrogation had begun at 10:06 am and concluded at 11:15 am).

that the deposition representative designated by the corporation is deficient, the corporation is obligated to provide a substitute.").

B.     **Taishan Should Not Be Excused From Providing Testimony Relevant to Violations of the Court's Contempt Order or Alter Ego**

Because this Court agreed that alter ego was a proper subject for the deposition of Taishan's designee, Rec.Doc. 19058, Taishan's contention that its witness was not obligated to respond to questions about other companies is mistaken. Mr. Che was to be prepared to testify to reasonably anticipated deposition topics involving Taishan and its affiliate's violations of the Court's Contempt Order and alter ego. His blatant lack of knowledge on these subjects was inexcusable.

C.     **Taishan Should be Compelled to Produce Deposition Preparation Material Used by Mr. Che**

Mr. Che admitted that he reviewed certain documents in preparing for his deposition, Che Depo. at 177 - 179, and took notes also in preparation for his deposition. Counsel for Taishan objected to any inquiry into the identity of such documents. Mr. Herman forthrightly stated that a proper request for these documents would follow. *Id.* at 180. Now, Taishan objects to the revelation of said documents on the grounds of work product privilege. That privilege may be avoided when the witness uses his notes to refresh his recollection, Fed.R.Evid. 612 ("when justice so requires"), which was clearly the case here. This Court's prior ruling on the same subject matter requiring production of the witness's notes should equally apply here. *See* Order Dated November 7, 2012 (Rec. Doc. No. 16127).

Taishan should be compelled to produce the materials employed to prepare Mr. Che, as well as Mr. Che's notes or produce a privilege log setting forth the reasons those notes are being withheld, so this Court may ascertain whether Plaintiffs are entitled to those notes.

## III. CONCLUSION

The PSC respectfully requests that the Court enter an Order requiring Taishan to produce an adequate 30(b)(6) witness or witnesses to testify appropriately and responsively about the matters at issue and also that Taishan provide complete, adequate, and responsive document productions with English translations so that the deposition of Taishan may be more fruitful.

Respectfully submitted,

Dated: June 22, 2015

/s/ Russ M. Herman
Russ M. Herman (LA Bar No. 6819) (on the brief)
Leonard A. Davis (LA Bar No. 14190)
Stephen J. Herman (LA Bar No. 23129)
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin (on the brief)
Fred S. Longer (on the brief)
Sandra L. Duggan (on the brief)
Matthew C. Gaughan (on the brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Peter Prieto
Podhurst Orseck, P.A.
25 Flagler Street, 8ᵗʰ Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Bruce William Steckler
Steckler, LLP
12720 Hillcrest Road, Ste 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Ervin A. Gonzalez
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker Waichman, LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@attorneys4people.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Richard J. Serpe
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr.
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W
Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Anthony D. Irpino
IRPINO LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, which will serve a notice of the uploading in accordance with the procedures established in MDL 2047, on this 22nd day of June, 2015.

/s/ Leonard A. Davis
Leonard A. Davis
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
Plaintiffs' Liaison Counsel
MDL 2047

*Co-counsel for Plaintiffs*

13