UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO: 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: | |
| *Payton, et al v. Knauf Gips, KG, et al.*<br>*Case No. 2:09-cv-07628 (E.D. La.)* | |

**MOTION AND INCORPORATED MEMORANDUM PURSUANT TO FED.R.CIV.P. RULES 60 AND 59(E) FOR RELIEF FROM JUDGMENT, DATED JUNE 4, 2015, WITH RESPECT TO WILLIAM AND KELLY WAYNE'S OBJECTIONTO /MOTION TO APPEAL SPECIAL MASTER DENIAL NOTICE AND FOR REINSTATEMENT OF CLAIM**

NOW INTO COURT, through undersigned counsel, come claimants William Wayne and Kelly Wayne, individually and on behalf of their minor children, who move this Court for an order pursuant to Fed.R.Civ.P. Rules 60 and 59(e) for relief from this Court's judgment, dated June 4, 2015, and represent as follows:

1.

The June 4 judgment incorrectly blames the Waynes for a delay of six months in submitting an expert report (Ex. 1). Those six months ended in February 2015 when the Special Master denied the claim (Ex. 2). The fact is, the Waynes submitted an expert report on October 8, 2014 and waited four of those six months cited for the Special Master to take action, from October 2014 to February 2015.

1

2.

The expert report was their physician's notes to vacate the premises. The Settlement Administrator's website concerning the Waynes' claim lists the physician's notes under the heading "expert report" with the October 8, 2014 submission date (Ex. 3). Given that listing, any litigant would be justified in believing that their submission satisfied that item. Nothing happened until February 10, 2015 -- nothing further was requested of the Waynes and no notices were issued. They simply waited, and then the Special Master issued the denial stating, without elaboration, that there was no expert report. The Special Master did not determine that the report submitted was insufficient. The Special Master simply said there was none. The Waynes immediately appealed and submitted another expert report in connection with the appeal. Nonetheless, the Court held, "Claimants' eventual submission of the expert report was tardy and over six months after the Settlement Administrator first requested the report." That was not factually correct.  The expert report was submitted in two months and the subsequent four month delay was attributable solely to the Special Master.

3.

The order was factually incorrect in other key respects as well. On page 2, the Court held:

> After reviewing the claim and determining that it was incomplete, the Settlement Administrator issued Incomplete Notices on July 23, 2014 and August 27, 2014 requesting submission of an expert report.

This is inaccurate. First, the claimants had not received the initial notice. This was

2

explained to the Settlement Administrator on the appeal of the Incompleteness Denial, to wit, that claimant's counsel had experienced a server crash at the time of the notice (Ex. 4). Prior to that, claimants had abided with every deadline in these proceedings, timely submitting documents over the prior number of years. These included, two profile forms (submitted in January and October 2011), photographs submitted on multiple occasions as requested in 2011 and 2013), their completed questionnaire (submitted 10/28/2011), their floorplan (10/28/2011), then two years later, in 2013, their foreclosure and short sale claim form and supporting documents, including affidavits, foreclosure documents closing documents, mortgage documents, their purchase agreement, their property assessment, another round of photographs, another profile form and questionnaire, an inspection report, and W-9 forms, including the first expert report. All of these are listed in Exhibit 3.

4.

In 2014, the incompleteness notice, which had not been received, requested not only an expert report, as the Court's order indicates, but the following:

    i.    Documents relating to mortgage payments, such as cancelled checks and past due notices
    ii.    Documents evidencing attempts to sell or rent the Affected Property;
    iii.    The expert report;
    iv.    Documents evidencing the appraised value at purchase of the Affected Property. (See, Exhibit 5).

5.

When the non-receipt of the Settlement Administrator's notice was discovered,

claimants timely submitted on October 8, 2014 an appeal to the Special Master with more responsive documents, including: an appraisal, correspondence from claimants' insurance carrier, foreclosures documents, a mortgage payment history, proof of the sale price and documents supporting the assessed value, their Form 1099 for 2011 and the <u>expert report from Kelly Wayne's physician advising the Waynes to vacate their toxic home</u>. (See, Exhibit 3, p. 1). The Waynes went a step further and submitted another affidavit explaining not only every category of documents that had been requested and was being produced by them, but also an explanation on the request for which they possessed no responsive documents, to wit, those regarding attempts to sell or rent the home. Mr. Wayne stated as follows:

> This was a house that was rendered uninhabitable and deemed a health risk by a physician. We left most of our personal items behind because nearly everything had been contaminated with the emissions from the drywall. My wife's obstetrician strongly advised, orally and in writing, that we move out due to the health risks of remaining. I thus made no attempt to pawn the house off on another party unless it was fully remediated. When the house was listed for sale, I noticed that the listing stated something on the order of "possible contaminated drywall." Instead of ignoring it, I took deliberate action to notify the entity listing the house and the sites that hosted the listings to confirm the presence of 'Chinese Drywall' in the house to make sure that any buyer would understand in no uncertain terms that the house needed full remediation.

6.

The Settlement Administrator's website listed all of the supplemental documents submitted on October 8, 2014, including the physician's records as the expert report. This was not a case in which the claimants simply ignored submitting an expert report, as the Special Master and Court suggest. It bears emphasis that at no prior time did the

4

Settlement Administrator or Special Master specify what was required or acceptable as an expert report. It appeared acceptable based on the Settlement Administrator's website listing the medical record as the expert report. (Exhibit 3). The Waynes then waited four months for the Special Master to address the matter, as stated. When that finally happened, the Special Master's determination was contrary to the information listed on the Settlement Administrator. Nothing more was stated by the Special Master. The Special Master apparently overlooked the Settlement Administrator's characterization of the physician's notes as an acceptable expert report.

7.

When the Waynes appealed to this Court in February 2015, the Waynes' counsel inquired of the Settlement Administrator as to what other types of expert reports would be acceptable. The representative could not provide any concrete guidance, but stated that some of the other claimants were submitting reports from real estate agents. The Waynes then submitted yet another expert report, this time from a real estate professional. That was not the only expert report submitted by the Waynes, as this Court stated on page 2 of the order. This was the second one. The Court's holding on page 2 that "Claimants did not submit [an expert] report to the Settlement Administrator" is thus error as is the Court's attributing the delay to the Waynes.

8.

Fed.R.Civ.P. Rule 60(b) provides, in pertinent part, "on motion and just terms, the

court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

   (1)   Mistake, inadvertence, surprise of excusable neglect;
         . . .
   (6)   any other reason that justified relief.

Moreover, under Rule 59(e), the Court has discretion to alter or amend a judgment.

9.

Clearly, a mistake was made here concerning the expert report filed on October 8, 2014. The Special Master mistakenly concluded that no expert report had been filed when the settlement administrator website specifically lists the medical record as such. And the Court attributed a six month delay to the Waynes when in fact the Special Master took four of those months to mistakenly conclude there was no report. It is understood that final judgments should not be lightly disturbed, but here the rule must be employed to achieve substantial justice in this instance for claimants who participated in every step on this proceeding for the last number of years. *See*, this Court's holding in *Martin v. Fidelity National Title*, -- F.3d --, 09-4195 (E.D.La. 2/23/2015):

> To determine whether Rule 60(b) relief is appropriate, a district court considers the following factors: (1) final judgments should not be lightly disturbed; (2) a Rule 60(b) motion is not to be used as a substitute for an appeal; (3) the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was filed within a reasonable time; (5) whether - if the judgment was a default or a dismissal in which there was no consideration of the merits - the interests in deciding cases on the merits outweighs, in this particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether - if the judgment was rendered after a trial on the merits - the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) other

factors relevant to the justice of the judgment under attack. *See, Crutcher v. Aetna Life Ins. Co.*, 746 F.2d 1076, 1082 (5th Cir. 1984).

10.

Consideration of these factors warrants reinstatement of the Waynes' claim. In addition to the unquestionable presence of mistake/inadvertence by the Special Master and Court, and even excusable neglect (the server crash and non-receipt of the first notice) in the handling of the Waynes' claim, the Waynes have still not had their claim determined on the merits after all these years. Their diligent participation in this litigation is manifest from the record and has been sidetracked by confusion over a single document. It would be an extreme and harsh remedy to turn them away now. Moreover, and further supporting the substantial justice and equities factors, time is clearly of the essence. The Court noted in the order the "late stage in the settlement administration process where payments have largely gone out." If the Waynes were to appeal and succeed in reversing the order, that promises to be a time consuming process for a settlement process that is already in its late stages. For the foregoing reasons, the Waynes should be relieved from the effect of the order and their claim reinstated and considered on the merits.

WHEREFORE, it is respectfully requested that claimants William and Kelly Wayne's motion to for relief from order and/or to amend the order be granted in full and their claim be reinstated, together with such other and further relief that the Court deems just and proper.

Dated: Mandeville, Louisiana  
July 1, 2015

Respectfully submitted,

**DAVIS & DUNCAN, LLC**

*/s/ Mark Duncan*

**MARK G. DUNCAN (Bar No. 29161)**
**MICHELLE MAYNE DAVIS (Bar No. 23027)**
849 Galvez Street
Mandeville, Louisiana 70448
Telephone: (985) 626-5770
Facsimile: (985) 626-5771

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing motion upon Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller by U.S. Mail and email, and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pre-trial Order no. 6 and that the foregoing will also be served via the Court's electronic filing system, on this 1st day of July 2015.

*/s/ Mark Duncan*

**MARK G. DUNCAN**