

ORRICK, HERRINGTON & SUTCLIFFE LLP
THE ORRICK BUILDING
405 HOWARD STREET
SAN FRANCISCO, CALIFORNIA 94105-2669

tel +1-415-773-5700
fax +1-415-773-5759

WWW.ORRICK.COM

July 9, 2015

Christopher Vejnoska
(415) 773-5916
cvejnoska@orrick.com

VIA ECF

The Honorable Eldon E. Fallon
Eastern District of Louisiana
United States Court
500 Poydras Street
Room C456
New Orleans, LA  70130

Dear Judge Fallon:

We met and conferred with Plaintiffs on July 6 regarding a possible hearing date and briefing schedule for CNBM Group's motion to dismiss for lack of subject matter jurisdiction pursuant to the Foreign Sovereign Immunities Act (FSIA).  Unfortunately, we were not able to reach an agreement.

The earliest date Plaintiffs suggested for a hearing on CNBM Group's sovereign immunity defense was more than three months after *all* jurisdictional discovery from *all* defendants is complete. However, under well-established Fifth Circuit law, questions of sovereign immunity must be decided at the earliest possible stage of litigation, and discovery in the FSIA context is permitted only to verify allegations of specific facts that are necessary to resolve the immunity determination. Plaintiffs' proposed hearing date ignores both of these requirements.  Moreover, the extensive discovery Plaintiffs have already sought and received (or shortly will receive) from CNBM Group as part of the discovery ongoing since March adequately covers their FSIA allegations and is far broader than what should normally be permitted under the case law.  We therefore request that the Court enter a hearing date of September 16[1] for CNBM Group's FSIA motion, and a corresponding briefing schedule, described below, whereby Plaintiffs' response to the motion is due two weeks after CNBM Group's document production is complete—which also will be two months after the completion of the CNBM Group Rule 30(b)(6) deposition and three weeks after the deposition of the director and general manager of CNBM Group.

While not a subject addressed in detail during our meet and confer with Plaintiffs, the Court has also directed the parties to discuss a schedule for briefing and hearing the CNBM entities' remaining Rule 12 motions relating to personal jurisdiction and service of process.  We had initially proposed that all the Rule 12 motions be heard together and still believe that to be appropriate, as our disputes with Plaintiffs appear to be largely legal rather than factual.  However, we acknowledge that the personal

---

[1] Or, if it is more convenient for the Court, the date of the September monthly status conference.



Honorable Judge Fallon
July 9, 2015
Page 2

jurisdiction and service of process motions are not subject to the same requirements of prompt disposition as CNBM Group's sovereign immunity defense. For that reason, we would not object to these motions trailing disposition of the FSIA motion by a modest period, perhaps 30 days, with a scheduled hearing date no later than October 14.

## I. CNBM Group's Sovereign Immunity Is A Critical Preliminary Issue That Must Be Decided As Soon As Possible

The Fifth Circuit, among others, has been abundantly clear that sovereign immunity is a threshold question, and that "'postponing the determination of subject matter jurisdiction [under the FSIA] until some [later] point'" in the litigation is improper. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (quoting *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 450 (6th Cir. 1988)). Rather, "[i]n order to preserve the full scope of [FSIA] immunity, the district court must make the 'critical preliminary determination' of its own jurisdiction as early in the litigation as possible." *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 39 (D.C. Cir. 2000) (quoting *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 449 (D.C. Cir. 1990)); *see also Coleman v. Alcolac, Inc.*, 888 F. Supp. 1388, 1404 (S.D. Tex. 1995) (rejecting plaintiff's argument that a ruling on sovereign immunity would be premature without further discovery and noting that "this Court is duty-bound to consider the jurisdictional issue of sovereign immunity at the earliest opportunity"). "[T]o defer the question is to 'frustrate the significance and benefit of entitlement to immunity from suit." *Phoenix Consulting Inc.*, 216 F.3d at 39 (internal quotations omitted).

Affirming the critical nature of sovereign immunity determinations, the Fifth Circuit, like the other circuit courts, uniformly treats denials of sovereign immunity defenses as collateral orders eligible for interlocutory appeal. *See, e.g., Stena Rederi AB v. Comision de Contratos*, 923 F.2d 380, 385-86 (5th Cir. 1991); *Rubin v. Islamic Republic of Iran*, 637 F.3d 783, 789-90, 795 (7th Cir. 2011); *World Holdings, LLC v. Federal Republic of Germany*, 613 F.3d 1310, 1314 & n.6 (11th Cir. 2010). Indeed, even where a district court merely postpones determination of a sovereign immunity defense, the circuit court has appellate jurisdiction to review the merits of the defense in an interlocutory appeal. *See Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 667-68 (7th Cir. 2012) (exercising interlocutory appellate jurisdiction over FSIA defense where district court denied the motion to dismiss as "premature" and "not ripe for adjudication," without purporting to rule on its merits). CNBM Group therefore has a right to obtain a prompt resolution of its sovereign immunity defenses, whether here or in the Fifth Circuit.

## II. Sovereign Immunity Includes Immunity from Burdensome and Costly Discovery

Consistent with its call for early resolution of questions of sovereign immunity, the Fifth Circuit has repeatedly reaffirmed that "FSIA immunity is immunity not only from liability, but also from the costs, in time and expense, and other disruptions attendant to litigation." *Kelly v. Syria Shell Petroleum*

OHSUSA:762626098.7


ORRICK

Honorable Judge Fallon
July 9, 2015
Page 3

*Dev. B.V.*, 213 F.3d 841, 849 (5th Cir. 2000); *see also United States v. Moats*, 961 F.2d 1198, 1203 (5th Cir. 1992) ("sovereign immunity is an immunity from the burdens of becoming involved in any part of the litigation process, from pretrial wrangling to trial itself"). And it has specifically recognized— as have numerous other courts—that a defendant asserting sovereign immunity under the FSIA has a "'legitimate claim to immunity from discovery.'" *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 534 (5th Cir. 1992) (quoting *First City, Texas–Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 176 (2d Cir. 1998)); *see also, e.g., Rubin*, 637 F.3d at 795 (it is "widely recognized" that sovereign immunity protects foreign sovereigns from "the cost and aggravation of discovery").

"Accordingly, when FSIA immunity has been claimed, unlimited jurisdictional discovery is *not* permitted as a matter of course." *Kelly*, 213 F.3d at 849. Rather, discovery in an FSIA case is allowed only if it is "'ordered circumspectly … to verify allegations of specific facts crucial to an immunity determination.'" *Id.* (quoting *Arriba*, 962 F.2d at 534); *see also In re Papandreou*, 139 F.3d 247, 253 (D.C. Cir. 1998) ("discovery [authorized] to determine whether immunity bars jurisdiction must proceed with circumspection, lest the evaluation of the immunity itself encroach unduly on the benefits the immunity was to ensure"). That is, FSIA discovery must be "limited to only that which is necessary to determine the preliminary jurisdictional issue." *Moran*, 27 F.3d at 172. As these cases demonstrate, "discovery may be used to confirm specific facts that have been pleaded as a basis for enforcing [an exception to immunity under the statute], but it cannot supplant the pleader's duty to state those facts at the outset of the case." *Arriba*, 962 F.2d at 537 n.17.

### III. Plaintiffs' Proposed Hearing Date Relies on Pursuing Extensive Discovery To Which They Are Not Entitled

Plaintiffs took the position during the meet and confer that the Court should not hear the CNBM entities' motions to dismiss—including CNBM Group's motion to dismiss for lack of subject matter jurisdiction pursuant to the FSIA—until at least three months after it has completed obtaining all jurisdictional discovery from all defendants in the case. (Plaintiffs suggested that, once all discovery has ended, they should have two months to file a response and CNBM Group should have one month after that to file a reply before the motion is heard.) However, Plaintiffs could not say when those three months would start running, as they suggested, for example, that they might request additional depositions after the ones they have already requested: Cao Jianglin, Song Zhiping, Peng Shou, and Rule 30(b)(6) representatives from at least CNBM Forest Products, and perhaps other CNBM entities as well.[2] In short, when asked whether their proposed schedule would delay the proceeding until sometime in 2016, Plaintiffs could offer only their aspiration that it might not take so long.

---

[2] Plaintiffs also referred to supposedly necessary discovery still needed from BNBM and Taishan Gypsum.



Honorable Judge Fallon
July 9, 2015
Page 4

This proposal flouts the uniform and unequivocal FSIA case law described above. By conflating the timing of (and discovery related to) CNBM Group's FSIA defense with the other issues raised in the defendants' motion to dismiss, Plaintiffs ignore the Court's obligation to resolve questions of sovereign immunity and subject-matter jurisdiction at the earliest possible opportunity. And by postponing resolution of the FSIA defense for indefinite and ill-defined discovery, Plaintiffs ignore both CNBM Group's immunity from burdensome discovery as well as their own obligation to identify *specific factual* allegations they seek to verify that could establish jurisdiction under the FSIA. Instead, because the extensive discovery Plaintiffs have already required from CNBM Group adequately covers their conclusory FSIA allegations (and then some), the Court should set the sovereign immunity motion for a hearing on September 16, 2015 (or, if the it more convenient for the Court, the date of the September status conference).

### A. Plaintiffs Have Not Alleged Specific Facts Sufficient to Support Jurisdiction.

Plaintiffs have not identified (indeed, cannot identify) any FSIA-related discovery to which they are entitled because they have failed to allege specific facts that, if true, would defeat CNBM Group's entitlement to sovereign immunity. The Fifth Circuit's decision in *Arriba* is instructive. In that case, the defendant state-owned oil company Pemex moved to dismiss on the ground that it was entitled to sovereign immunity under the FSIA. *See* 962 F.2d at 532. The plaintiff corporation, Arriba, argued that "having alleged jurisdiction under the commercial activity exception, it [wa]s entitled to pursue discovery to support its allegations." *Id.* at 534. And "[t]he district court agreed, drawing an analogy to the usual procedure for resolving contested jurisdictional issues." *Id.*

The Fifth Circuit reversed with instructions to dismiss Arriba's complaint with prejudice. *Id.* at 530. A "necessary prerequisite" to an order for even limited FSIA discovery, the court explained, is a "clear understanding of the plaintiff's claims against a sovereign entity." *Id.* at 534. In each of the cases that allowed limited discovery, it emphasized, "there were allegations of *specific facts* that, if proved, sustained" an exception to immunity in the statute. *Id.* at 537 n.17. The Fifth Circuit thus held that the district court erred in permitting discovery because plaintiffs' allegations, when "[c]arefully read," would not confer jurisdiction over Pemex consistent with the FSIA. *Id.* at 534-37. Specifically, the court noted that because Arriba failed to allege any commercial activity by Pemex that had a connection to the United States and formed the basis of its complaint, it had to rely on a theory attributing other entities' actions to Pemex as its agent or alter ego. *See id.* at 534-35. However, because these attribution allegations did not satisfy the test for defeating a sovereign instrumentality's presumption of separate status pursuant to *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*"), the court concluded that "permitting discovery will not cure the FSIA jurisdictional deficiency." 962 F.2d at 537.

Here too, Plaintiffs have failed to "make the requisite showing for justifying immunity discovery" because they have "*not* alleged specific facts which, if true," would defeat CNBM Group's sovereign



immunity. *Kelly*, 213 F.3d at 851. Like the plaintiff in *Arriba*, they have not alleged that CNBM Group itself engaged in any specific activity sufficient to establish an exception to immunity under the FSIA, and instead rely only on a "broad but vague attribution theory" pointing to actions of other CNBM (and even BNBM and Taishan) entities. 962 F.2d at 536.

Under the FSIA, a plaintiff can overcome a foreign state's presumptive immunity from suit only by showing that one of the statute's narrow exceptions to immunity applies. *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). Plaintiffs have asserted that their claims fall within either the first prong of the commercial activity exception in § 1605(a)(2) or the tort exception in § 1605(a)(5). However, each of these requires that the plaintiff identify relevant conduct by the sovereign defendant *in the United States*. *See* 28 U.S.C. § 1605(a)(2) (requiring that the action be "based upon a commercial activity carried on in the United States by the foreign state"); *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1065 (5th Cir. 1992) (requiring, under § 1605(a)(5), "not only that personal injury or property damage occur in the United States, but also that the [tortious] act or omission occur here"). And here, Plaintiffs have not alleged that CNBM Group engaged in *any* conduct in the United States—much less any drywall-related activity in the United States on which Plaintiffs base their claims. *See Arriba*, 962 F.2d at 534 (that a sovereign defendant may have "some commercial operations in or affecting the United States is inadequate to support a finding of subject matter jurisdiction under the FSIA" because "'[t]he only relevant acts for purposes of jurisdiction under the FSIA are those acts that form the basis of the plaintiff's complaint'") (quoting *Stena*, 923 F.2d at 387-88).

Rather, like in *Arriba*, CNBM Group's "only alleged connection ... in the United States relevant to this case" arises from Plaintiffs' attempt to attribute other entities' actions to CNBM Group under an "agent or alter ego" theory. *Arriba*, 962 F.2d at 534. Plaintiffs allege that the first prong of the commercial activities exception applies here because CNBM Group carried on commercial activities in the United States "along with entities such as CNBM USA, BNBM America, and United Suntech," which, Plaintiffs allege, "acted as agents" for CNBM Group by promoting and marketing drywall to American suppliers.[3] However, as in *Arriba*, this conclusory attribution theory cannot justify permitting discovery against a sovereign instrumentality because Plaintiffs have not made specific factual allegations sufficient to satisfy *Bancec*'s test: *i.e.*, Plaintiffs have not alleged specific facts showing that CNBM Group "extensively controlled" these other entities such that it "was involved in the[ir] day-to-day management." *Bancec*, 462 U.S. at 629; *Hester Int'l Corp. v. Federal Republic of Nigeria*, 879 F.2d 170, 181 (5th Cir. 1989). And Plaintiffs further have "failed to allege any manifestations *by* [CNBM Group], the alleged 'principal' in this agency relationship, that the [other entities] could act *for* [it]." *Arriba*, 962 F.2d at 536. Thus, Plaintiffs' "general allegations" of an agency or alter ego relationship "fall far short of the 'specific facts' this court has required before

---

[3] *E.g.*, *Abner v. Taishan Gypsum Co.*, Case No. 11-3094, Rec. Doc. 1-1 pp. 23-26, 42 at ¶¶ 45-49, 99.



Honorable Judge Fallon
July 9, 2015
Page 6

approving discovery into a foreign sovereign's affairs." *Convington Marine Corp. v. Xiamen Shipbuilding Industry Co., Ltd.*, 504 F. App'x 298, 303 (5th Cir. 2012). Here, as in *Arriba*, "[l]imited jurisdictional discovery, consonant with the comity envisioned by the FSIA, is impossible under these allegations." *Arriba*, 962 F.2d at 537 n.17.[4]

### B. Even if Plaintiffs' Allegations Warranted Some Limited Discovery, They Have Already Had Ample Opportunity to Secure the Evidence They Seek.

As the Court is well aware, Plaintiffs have already been permitted to engage in substantial discovery against CNBM Group and its investment holding entities over the course of the past several months.[5] Through the course of that discovery, Plaintiffs have been permitted to inquire extensively about the role of CNBM Group in the relevant drywall-related commercial transactions, including whether it engaged in any commercial activity within the United States, as well about any alter ego or agency relationships between CNBM Group and its investment holdings. CNBM Group has already produced tens of thousands of pages responsive to the Plaintiffs' document requests, and will continue to produce additional documents on a rolling basis through August 14, when its production should be complete. This ongoing discovery wholly encompasses—and then some—the limited discovery of any facts that could plausibly be characterized as "crucial to an immunity determination." *Arriba*, 962 F.2d at 534.

For example, as part of the Court-ordered discovery process, Plaintiffs have requested "[a]ll documents and communications related to the conduct of any business [by CNBM Group] in the United States," as well as "[a]ll documents and communications evidencing, describing, explaining or reflecting any sales, shipments or deliveries of drywall or any other product to any address in the United States by or on behalf of ... CNBM Group," and "[a]ll communications to or form any board member, chairman, officer, director, supervisor, executive, committee member, manager, or legal representative of your company . . . evidencing, involving or otherwise relating to any sale, purchase, delivery, shipment, income, profit, loss, damage, problem or complaint regarding any drywall ... which was sold or delivered to any person or entity in the United States." May 20, 2015, Amended and Supplemental Notice of Deposition to CNBM Group, Rec. Doc. 18976, pp. 16, 18-19 at ¶¶ 1, 12-13 (document requests). Further, the document requests plainly encompass the entire

---

[4] Nor for that matter have Plaintiffs uncovered evidence, in the extensive discovery they have already conducted, that these other entities actually played any role in the manufacture or sale of the allegedly contaminated drywall sold to these Plaintiffs—much less that they acted as CNBM Group's alter ego or agent in doing so.

[5] CNBM Group has participated in that discovery, despite its sovereign immunity, because the Court ordered all putative defendants to cooperate in discovery in order to preserve their jurisdictional defenses. *See* Mar. 17, 2015 Tr. at 35-36, 44.


ORRICK

Honorable Judge Fallon
July 9, 2015
Page 7

time period relevant to both jurisdiction and liability—each request applies to CNBM Group's activities "at any time from January 1, 2005 to present." *Id.* Plaintiffs also identified similar inquiries as deposition topics, *see id.* pp. 20, 23 at ¶¶1, 12-13 (deposition topics), and have already deposed CNBM Group's general counsel Guoping Zhou and will depose its director and general manager Cao Jianglin on August 4-5.[6] This discovery is more than sufficient to cover Plaintiffs' (conclusory) allegations that CNBM Group engaged in drywall-related commercial activities (or tortious acts or omissions) in the United States upon which Plaintiffs' claims are based, and CNBM Group has cooperated and will continue to cooperate in producing responsive documents and witnesses within the discovery period.

Plaintiffs have also inquired at great length into the relationship between CNBM Group and other corporate entities that allegedly engaged in drywall-related commercial activity in the United States. Indeed, this has been a primary focus of many deposition topics and document requests of CNBM Group to date. *See, e.g.,* March 19, 2015, Notice of Expedited Deposition to CNBM Group, Rec. Doc. 18504, pp. 16-17 at ¶¶ 2-6, 10 (document requests); April 10, 2015, Amended and Supplemental Notice of Deposition to CNBM Group, Rec. Doc. 18649, pp. 14-16, 18 at ¶¶ 2, 6, 17 (document requests); *id.* pp. 29-33 at ¶¶ 2-7, 9, 11-17 (deposition topics); May 20, 2015, Amended and Supplemental Notice of Deposition to CNBM Group, Rec. Doc. 18976, pp. 21-22 at ¶¶ 2, 7-8 (deposition topics). It has also been the subject of extensive third-party discovery, in which Plaintiffs have sought documents and testimony from U.S. companies regarding their relationship with the defendants. And both the Court and Plaintiffs have made clear that inquiring into alter ego relationships among the defendants is included in the scope of the current discovery. *See* Gang Che Deposition Tr., June 2, 2015, at 15 (court rejecting Taishan's motion to limit discovery into alter ego questions because "alter ego … is a part of the contempt track"); Zhangli Chang Deposition Tr., June 7, 2015, at 247-48 (Plaintiffs' counsel noting that the court "ruled that alter ego was definitely within the scope of the inquiry"). The ongoing discovery therefore clearly encompasses Plaintiffs' attempt to attribute other entities' drywall-related activities to CNBM Group pursuant to an alter ego or agency theory.

Through this extensive discovery—which goes far beyond what would normally be permitted in the FSIA context—Plaintiffs have had ample opportunity to secure evidence relevant to the existence of subject-matter jurisdiction. They have not been able to muster the facts necessary to establish a statutory exception to sovereign immunity because no such evidence exists. And, as a result, they are unable to identify with the requisite specificity what more information they actually seek. Because Plaintiffs have "made *no* showing of what they hope[] to obtain by [additional] discovery,

---

[6] Plaintiffs asserted during the meet and confer that they also needed to depose CNBM Group board chair Song Zhiping before filing a response to the FSIA motion, but they never identified what specific factual allegations regarding sovereign immunity Mr. Song could verify that the other deponents could not.



Honorable Judge Fallon
July 9, 2015
Page 8

the court should *not* permit a 'fishing expedition'" beyond what has already occurred. *Kelly*, 213 F.3d 850. No amount of additional discovery will "cure the FSIA jurisdictional deficiency." *Arriba*, 962 F.2d at 537.

### IV. Conclusion

We therefore request—as we proposed during the meet and confer—that the Court set a hearing date for CNBM Group's motion to dismiss for lack of subject matter jurisdiction on September 16 (or the date of the monthly September status conference). We also request that the Court order the following schedule, which we proposed to Plaintiffs and which will allow them to file their response to the FSIA motion to dismiss after CNBM Group's document production is complete:

> August 4-5: Cao Jianglin deposition.
>
> August 14: CNBM Group document production is complete.
>
> August 28: Plaintiffs' responsive briefing to FSIA motion is due.
>
> September 11: CNBM Group's reply is due.
>
> September 16 (or the September status conference): Hearing date for FSIA motion.

We believe this request fairly accommodates Plaintiffs' legitimate discovery needs while fulfilling the court's obligation "to preserve the full scope of [FSIA] immunity" by making the "critical preliminary determination of its own jurisdiction as early in the litigation as possible." *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 39 (D.C. Cir. 2000) (internal quotation marks omitted).

As mentioned above, we further believe the CNBM entities' remaining Rule 12 motions relating to personal jurisdiction and service of process can (and should) be briefed and heard on the same schedule. However, because those issues are not subject to the same requirements of prompt disposition as is CNBM Group's sovereign immunity, we would not object to a schedule for the remaining motions that trailed disposition of the FSIA motion by a modest period, with a scheduled hearing date no later than October 14.

Respectfully,

/s/ L. Christopher Vejnoska