UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>**THIS DOCUMENT RELATES TO:**<br>*Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al., Case No. 2:09-cv-6687 (E.D. La.)* | MDL No. 2:09-md-2047<br><br>SECTION L<br><br>JUDGE ELDON E. FALLON<br><br>MAGISTRATE JUDGE JOSEPH C. WILKINSON, JR. |

**MEMORANDUM IN SUPPORT OF MOTION TO CLARIFY THE JULY 17, 2014 CONTEMPT ORDER, OR IN THE ALTERNATIVE TO VACATE THE ORDER TO THE EXTENT IT PURPORTS TO APPLY TO CNBM GROUP, CNBM COMPANY, CHINA NATIONAL BUILDING MATERIALS & EQUIPMENT IMPORT & EXPORT CORPORATION, CNBM FOREST PRODUCTS (CANADA), CNBMIT, CNBM (USA), AND UNITED SUNTECH**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND ......................................................................................... 2

    A. No Action Or Inaction Of The CNBM Entities Motivated The Contempt Order .................................................................................................... 2

    B. The PSC Keeps Changing The Definition And Scope Of Taishan's "Affiliates." ........................................................................................................ 4

III. THE CONTEMPT ORDER MUST BE CLARIFIED, OR IN THE ALTERNATIVE VACATED IN PART, BECAUSE IT CANNOT LAWFULLY BE APPLIED AGAINST THE CNBM ENTITIES ............................................................ 4

    A. The Contempt Order Cannot Be Interpreted To Apply To The CNBM Entities, Because Such An Order Would Violate Rule 65 .................................. 5

        1. There Is No Evidence That The CNBM Entities Acted In "Active Concert," Aided, Or Abetted Any Violation Of The Injunction ................ 5

        2. The CNBM Entities Are Not Taishan's "Officers, Agents, Servants, Employees Or Attorneys." ........................................................ 6

    B. The CNBM Entities Cannot Be Brought Within The Scope Of The Injunction Based On The Deemed Admissions In The FOFCOL ........................ 8

IV. THE INJUNCTION IS IMPERMISSIBLY VAGUE AND OVERBROAD TO THE EXTENT IT PURPORTS TO APPLY TO THE CNBM ENTITIES ........................ 9

    A. The Injunction Is Impermissibly Vague ............................................................ 10

    B. The Injunction Is Impermissibly Overbroad Because It Restrains Conduct Unrelated To That Which Gave Rise To The Contempt Order .......................... 12

    C. The Contempt Order's Penalties Require Due Process Protections That Have Not Been Afforded ................................................................................... 13

V. CONCLUSION .............................................................................................................. 14

China National Building Materials Group Corporation, China National Building Materials Company, Ltd., China National Building Materials & Equipment Import & Export Corporation, CNBM (USA) Corporation, CNBM Forest Products (Canada) Ltd., China National Building Materials Investment Trading, and United Suntech, Inc. (collectively, the "CNBM Entities"), respectfully move the Court to clarify that the July 17, 2014 Contempt Order (Rec. Doc. 17869, the "Contempt Order" or "Injunction") does not apply to the CNBM Entities or, to the extent the Order purported to do so, to vacate it in relevant part.

## I.     INTRODUCTION

For months, the CNBM Entities have participated in the "Contempt Order discovery track," which has entailed massive and burdensome discovery into whether they are within the scope of the Contempt Order. They did so because the Court required it, on pain of striking the CNBM Entities' defenses,[1] including the fundamental threshold jurisdictional defenses that now have been put before the Court. And they did so to prove that they would participate fully in this litigation. But the Contempt Order does not and cannot apply to the CNBM Entities, and after these many months of good faith participation, the Court should clarify that it does not. Alternatively, to the extent the Order purports to apply to these Entities, the Court should vacate the order in relevant part.

The Contempt Order originated from a decision by **one defendant** (Taishan) to cease active participation in the proceedings before this Court. This course of action is one that civil defendants may choose to take, subject of course to the ordinary consequences. The Court's response to that action here, however, was extraordinary: the Court elected to hold responsible for Taishan's purportedly contumacious action not only Taishan but also a host of other companies the PSC argues fall within the vague and undefined universe of Taishan's "affiliates."

---

[1] Mar. 17, 2015 Tr. at 35-36, 44 ("If you don't participate, I'm just going to strike your pleadings. You have to participate in discovery. If not, then I have a duty and responsibility just to strike it. You can't participate and not participate.").

The PSC subsequently propounded extensive discovery on the CNBM Entities in an effort to show that they are within the scope of the Contempt Order.[2] This discovery has proceeded for months now, without regard for whether the CNBM Entities were subject to suit in the Eastern District of Louisiana, and despite the fact that none of the CNBM Entities were parties to the proceeding in which the Contempt Order was entered.

Moreover, this activity has proceeded against the backdrop of a relentless campaign by the PSC to convince the Court that the CNBM Entities require punishment generally. The PSC has advanced a baseless theory that Taishan, the CNBM Entities and a host of additional parties and non-parties to this action constitute a single and coordinated business enterprise, and therefore all are subject to the Contempt Order. The PSC has painted the CNBM Entities as part of a broader, villainous group of Chinese defendants – regrettably, with some apparent success. That cannot be what the Contempt Order means or where it meant to take the Court and the parties. For these reasons, and as discussed in detail below, the CNBM Entities hereby ask this Court to clarify or vacate the Contempt Order.

## II. FACTUAL BACKGROUND

### A. No Action Or Inaction Of The CNBM Entities Motivated The Contempt Order.

The very fact that the PSC persists in referring to all the Chinese drywall defendants as "the Taishan defendants" reveals the misperceptions and mischaracterizations underlying the Contempt Order from the very beginning. The Contempt Order flowed from Taishan's failure to appear for its debtor's examination in the *Germano* action. And the Order's clear purpose was to require Taishan to reappear in that case – a case in which Taishan was the *only* "Taishan defendant." Indeed, with regard to the CNBM Entities in particular, a review of the events

---

[2] The PSC has propounded numerous deposition notices including hundreds of document requests to the CNBM Entities. *E.g.,* Rec. Doc. Nos. 18420, 18504, 18649, 18799, 18976, 19006 (CNBM Group); 18421, 18506, 18650, 18798, 18975, 19005 (CNBM Company); 18460, 18503, 18651, 18800 (CNBM I&E); 18459, 18505, 18645, 18797 (CNBM Forest Products (Canada)); 18377, 18513, 18562, 18646, 18796 (CNBM (USA)); 18379, 18514, 18795 (United Suntech).

2

leading up to the entry of the Contempt Order demonstrates that the Order was not motivated by or issued in reaction to any action or inaction by the CNBM Entities:

*January 28, 2014*: Fifth Circuit affirms this Court's rulings that it has jurisdiction over Taishan and denying Taishan's motion to vacate the $2.7 million default judgment entered against it in the *Germano* case.[3] The CNBM Entities were not and are not parties in *Germano*.[4]

*June 16, 2014:* PSC files motion to require debtor's examination in *Germano*. Rec. Doc. 17760.

*June 20, 2014*: Order setting judgment debtor's examination of Taishan in New Orleans on July 17, 2014. Order does not command any other party to appear, and does not state any consequences for failure to appear. Rec. Doc. 17774.

*July 17, 2014*: Taishan fails to appear for debtor's examination. That same day, the Court issues Contempt Order imposing monetary fines and penalties upon **Taishan only** for its failure to appear, and enjoins "Taishan and any of its affiliates or subsidiaries" from conducting any business in the United States until **Taishan** "participates in this judicial process." The Order further held that "If **Taishan** violates this injunction, **it** must pay a further penalty of 25% of the profits earned by the company or its affiliates who violate the order, for the year of the violation." (Emphasis supplied.) Rec. Doc. 17869.

*February 17, 2015*: Taishan appears anew in the litigation. *E.g.*, Rec. Doc. 18352.

---

[3] *Germano v. Taishan Gypsum,* 742 F.3d 576, 595 (5th Cir. 2014).

[4] *E.g., Germano v. Taishan Gypsum*, Case No. 2:11-cv-6687, Rec. Doc. 1-1 at 3-5.

3

There has been no showing that Taishan has done business in the United States at any time since July 17, 2014, much less during the so-called Contempt Period between July 17 and when Taishan returned to "participate in this judicial process" in February 2015.[5]

### B. The PSC Keeps Changing The Definition And Scope Of Taishan's "Affiliates."

Initially, in identifying the universe of "affiliates" purportedly subject to the Order, the PSC proposed a definition numbering just five: (1) CNBM Group, (2) CNBM Company, (3) Beijing New Building Materials Group Co., Ltd. ("BNBM Group"), (4) Beijing New Building Materials Limited Co. ("BNBM"); and (5) Tai'an Taishan Plasterboard Co., Ltd. ("TTP"). Rec. Doc. 17883-1 at 2 n.2. The Court adopted that definition in the very limited context of finding "deemed admissions" against Taishan, the party that had failed to appear. That definition was not, and could not be, legally binding against any of the CNBM Entities. In the months that followed, the PSC has promulgated changing and ever-expanding lists of supposed "affiliates." These lists expanded from the original five, to 39, then to 46, and finally to 66. *E.g.,* Rec. Doc. Nos. 18302-14, 18419, and 18645.

### III. THE CONTEMPT ORDER MUST BE CLARIFIED, OR IN THE ALTERNATIVE VACATED IN PART, BECAUSE IT CANNOT LAWFULLY BE APPLIED AGAINST THE CNBM ENTITIES.

The Contempt Order cannot legitimately be applied against the CNBM Entities, and the Court should clarify that it was not meant to do so. As a threshold matter, a Court cannot enjoin parties over which it has no jurisdiction, and the PSC never has established that this Court has jurisdiction over the CNBM Entities, nor could it. Second, if the Order does purport to apply to the CNBM Entities, it would violate Rule 65: None of the CNBM Entities has ever been party to the action giving rise to the Contempt Order, nor are the CNBM Entities "agents or officers" of Taishan or participants in any violation of the Contempt Order – indeed, there is no record that any such violation has ever taken place. Finally, the deemed admissions in the FOFCOL cannot

---

[5] *See, e.g.,* Rec. Doc. 18451.

4

be used against the CNBM Entities at all, much less bring them within the scope of the injunction.

### A. The Contempt Order Cannot Be Interpreted To Apply To The CNBM Entities, Because Such An Order Would Violate Rule 65.

Even if the Court had jurisdiction over the CNBM Entities, the Contempt Order cannot lawfully be interpreted as enjoining anyone but Taishan. The Contempt Order is an injunction, and therefore Rule 65 governs. Rule 65 specifies that an injunction can bind only "parties" to an action; "the parties' officers, agents, servants, employees, and attorneys"; and "other persons who are in active concert or participation with" either the parties or their agents. Persons or entities who are not parties, nor the parties' agents or officers, may not be bound by an injunction (even if identified by name in the order, which is not the case here). *See generally* Wright & Miller, Persons Bound by an Injunction or Restraining Order, 11A Fed. Prac. & Proc. Civ. § 2956 (3d ed.); *see also Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 13, 14 (1945) (injunction cannot be expanded beyond the scope of the Federal Rules of Civil Procedure through the addition of language such as "successors and assigns"; courts may not grant an injunction "so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law"); *Le Tourneau Co. of Ga. v. N.L.R.B.*, 150 F.2d 1012, 1012 (5th Cir. 1945) ("Persons who are not parties . . . cannot be brought within [the scope of the injunction] by naming them.").

Here, the CNBM Entities are not named parties to the action in which the injunction was issued – *Germano v. Taishan Gypsum. See* Rec. Doc. 17869. Accordingly, the Contempt Order cannot apply to the CNBM Entities, let alone the other 60-plus companies listed by the PSC, unless they fall within either of the two remaining enumerated categories. They do not.

### 1. There Is No Evidence That The CNBM Entities Acted In "Active Concert," Aided, Or Abetted Any Violation Of The Injunction.

The Contempt Order cannot be applied to the CNBM Entities under the "active concert" provision of Rule 65. That provision makes an injunction binding on non-parties only if they aid

5

or abet a party in violating the injunction itself. *See, e.g., State Indus. Products Corp. v. Beta Technology Inc.*, 575 F.3d 450, 457-58 (5th Cir. 2009) (Rule 65(d)(2)(C) applies to those aiding and abetting a party "in violating the [] judgment."). The PSC does not and cannot allege that CNBM Entities aided or caused Taishan to do business in the United States during the contempt period. It does not even allege that Taishan did business in the United States during those months. And Taishan denies doing any such business. *See* Rec. Doc. 18451.

This explains why the PSC has repeatedly pressed the Court to make the lesser, legally insufficient finding that the CNBM Entities acted "in privity with their subsidiary Taishan Gypsum in the decision to deliberately disobey the Court's June 20, 2014 Judgment Debtor Examination Order."[6] Under Rule 65, the question is not whether the *CNBM Entities* have violated the injunction against doing business in the United States, or even whether the *CNBM Entities* acted in concert with Taishan when it failed to appear at the judgment debtor examination.[7] The only question is whether Taishan has violated the injunction, and if so, whether the CNBM Entities have aided or abetted Taishan in conducting business in the United States during the contempt period. There is no evidence that Taishan – the enjoined party – has violated the injunction. It necessarily follows that there is no activity for the CNBM Entities to have aided and abetted.

### 2. The CNBM Entities Are Not Taishan's "Officers, Agents, Servants, Employees Or Attorneys."

The PSC has argued that the Contempt Order enjoins not only Taishan, but also its "affiliates," and that the CNBM Entities are brought within the scope of the Order on that basis.

---

[6] *See, e.g.*, Rec. Doc. Nos. 18404-40, 18418-2, and 18447-3.

[7] No matter how much the PSC claims that other "Taishan defendants" were involved in making this decision, the Contempt Order punished Taishan for its failure to appear, and in no way even suggested that it was targeting anyone else for supposed involvement with that decision. Neither the PSC's emoting nor the Court's displeasure with Taishan's decision a year ago can now convert the Order or the injunction into one aimed at discovering, much less punishing, who else might have been involved.

Injunctions, however, may bind only officers, agents, and others over whom the *enjoined* party – and as shown above, this can be Taishan and only Taishan – exercises control.[8]  Thus, an injunction against a subsidiary cannot bind the parent corporation where the parent is not a party to the case and had not had its day in court prior to the entry of the injunction – a rule that applies *a fortiori* to this case, where the PSC's own allegations show that CNBM Company is two levels removed from the party held in contempt (and the other CNBM Entities are even further removed).[9]

For example, in *Zenith Radio Corp. v. Hazeltine Research, Inc.*, the trial court enjoined a parent corporation based on a stipulated admission by the subsidiary company.  395 U.S. 100, 105-107 (1969).  The Supreme Court held this to be improper; the parent of a corporation could not be bound by an injunction against its wholly-owned subsidiary where the parent was not named as a party, was never served, and did not appear prior to the entry of the injunction.  *Id.* at 110-12.  Indeed, the Supreme Court held that even a finding that the parent was the subsidiary's alter ego could not have rendered an injunction binding against the parent, because the parent "never had its day in court on the question of whether it and its subsidiary should be considered the same entity for purposes of [the] litigation."  *Id.*

The connection between the CNBM Entities and Taishan is more attenuated than the connection between the parent and subsidiary in *Zenith*.  CNBM Group and CNBM Company hold indirect minority shareholder interests in Taishan.  China National Building Materials & Equipment Import & Export Corporation, CNBM (USA) Corporation, CNBM Forest Products (Canada) Ltd., CNBMIT, and United Suntech, Inc. hold no ownership interest in Taishan whatsoever.  In addition, the CNBM Entities never even were named as parties in *Germano*, the

---

[8] The PSC does not allege that Taishan controls the CNBM Entities in general, nor CNBM Group and CNBM Company in particular.  Indeed, it alleges the very opposite.  Rec. Doc. 18028.  Thus, the CNBM Entities can hardly be viewed as *Taishan's* "agents."

[9] *E.g.*, Rec. Doc. 17993-1.

one case in which the injunction was issued, and so had no obligation or prior notice that they needed to appear regarding any contempt order proceeding.[10]

### B. The CNBM Entities Cannot Be Brought Within The Scope Of The Injunction Based On The Deemed Admissions In The FOFCOL.

The CNBM Entities do not fall within the scope of Rule 65, and therefore any discussion of whether they might qualify as "affiliates" is ultimately irrelevant. But even assuming that it were legally permissible to enjoin an undefined population of "affiliates," the PSC's reliance on the Court's FOFCOL to support its claim that the CNBM Entities were enjoined during the "Contempt Order period" as "affiliates" and alter egos of Taishan is misplaced.[11] The FOFCOL simply cannot be applied to the CNBM Entities.[12]

**First**, the FOFCOL were issued *after* the Contempt Order, and cannot be used to retroactively clarify the scope of the Order. A contempt order must be clear on its face, without reference to other documents or definitions. *See* Section IV.A.*, infra.* There is no clearer proof of the Order's lack of clarity than the PSC's ever-changing definition of "affiliates."

**Second**, the findings and conclusions referring to the CNBM Entities relied *exclusively* on Rule 36 deemed admissions resulting from *Taishan's* failure to respond to requests directed to and served on *Taishan* (*see, e.g.*, Rec. Doc. 18028 [FOFCOL] ¶¶ 28-29, 32-47), which at most

---

[10] Although Rule 65 acts as a threshold and fatal limitation on the Court's ability to bring the CNBM Entities within the injunction, the Court's authority is separately constrained by the requirement that it have both personal and subject matter jurisdiction over enjoined parties. *See Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 470 (5th Cir. 1985) ("[T]he district court must have both subject matter jurisdiction and '*in personam*' jurisdiction over the party against whom the injunction runs."). The PSC has made no effort to prove that these defendants are subject to jurisdiction in *Germano*. In the event this Court clarifies that the CNBM Entities are included within the scope of the Contempt Order, the CNBM Entities will be separately entitled to challenge this Court's jurisdiction to enforce the Order against them.

[11] Worse still, the PSC apparently contends that no affiliate may do business *now*, well beyond the end of any contempt period. *See, e.g.*, Rec. Doc. 19124 (citing Judge Sparks' abatement of *current* litigation by a CNBM company as "evidence" of "contemptuous activity").

[12] Likewise, as shown in the CNBM Entities' jurisdictional challenge, the CNBM Entities are not alter egos of Taishan. *See, e.g.,* Rec. Doc. 19179-1 at 5-7.

8

can only bind Taishan. As noted in footnote 5 of the FOFCOL, "the PSC served Taishan and TPP [sic] with a Request for Admissions" and "neither Taishan nor TPP [sic] timely responded."[13] *Id.* ¶ 28 n.5. The Court subsequently ruled that the Request for Admissions were deemed admitted in accordance with Rule 36(a)(3). *Id.* Admissions made by a defendant are not binding against co-defendants, let alone non-parties such as the CNBM Entities. *See, e.g., Becerra v. Asher*, 921 F. Supp. 1538, 1544 (S.D. Tex. 1996), *aff'd*, 105 F.3d 1042 (5th Cir. 1997) ("deemed admissions are binding only on the non-responding party, not on co-parties"); *Riberglass, Inc. v. Techni-Glass Indus., Inc.*, 811 F.2d 565, 566 (11th Cir. 1987) (same); *In re Leonetti*, 28 B.R. 1003, 1009 (E.D. Pa.), *aff'd sub nom. Earl Realty, Inc. v. Leonetti*, 725 F.2d 667 (3d Cir. 1983) (same). The FOFCOL and Taishan's deemed admissions therefore cannot be used to retroactively expand the scope of the injunction and enjoin the CNBM Entities.[14] Nor can those admissions be extended to the CNBM Entities by relying upon the FOFCOL's "single business enterprise" holding, since that finding sprang solely from the deemed admissions.

### IV.   THE INJUNCTION IS IMPERMISSIBLY VAGUE AND OVERBROAD TO THE EXTENT IT PURPORTS TO APPLY TO THE CNBM ENTITIES.

The injunctive aspect of the Contempt Order cannot be applied to the CNBM Entities. *First*, it is impermissibly vague in its scope. *Second*, it is overbroad. For example, the PSC

---

[13] The failure to respond surely came as no surprise to anyone: the requests were served on Taishan and Tai'an Taishan Plasterboard (TTP) following their withdrawal from litigation.

[14] Additionally, in signing the PSC's proposed FOFCOL, the Court relied on Louisiana and other domestic law to find that the CNBM Entities are alter egos of Taishan. However, Chinese law should have been applied in making this determination. A federal court sitting in diversity must apply the substantive law of the forum state, including its choice-of-law provisions. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Where a court presides over actions in an MDL, the choice-of-law rules of each jurisdiction in which the transferred actions were originally filed must be applied. *See Van Dusen v. Barrack*, 376 U.S. 612, 639-40 (1964). Because the *Germano* action was filed in Virginia, Virginia's choice-of-law principles control the veil-piercing analysis at issue here. Virginia's choice-of-law principles dictate that the law of the place of incorporation – here, China – determines whether a corporate veil may be pierced. *See, e.g., McCarthy v. Giron*, No. 1:13-CV-01559-GBL, 2014 WL 2696660, at *1 (E.D. Va. June 6, 2014).

9

argues that the Contempt Order forbids continued participation in legal proceedings. This ignores specific statutory law exempting such activities from any "doing business" claim. *Third*, the penalty contemplated by the injunction is excessive, bears no relation to any actual damages suffered or costs incurred by Plaintiffs as a result of Taishan's alleged conduct, and is neither compensatory nor conditional in its nature, as required for civil contempt sanctions such as these. The criminal contempt sanctions that the PSC seeks to impose require stringent due process protections – none of which were afforded here.

A.     **The Injunction Is Impermissibly Vague.**

Rule 65(d)(1) requires that an injunction "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained." FED. R. CIV. P. 65; *see also Sheila's Shine Prods., Inc. v. Sheila Shine, Inc.*, 486 F.2d 114, 129 (5th Cir. 1973) (" [A]n injunction must be worded in such specific terms and with such detail as to put the party enjoined on notice of precisely what he is called upon to do or refrain from doing."). An injunction under Rule 65 must also be clear on its face so "that an ordinary person reading the court's order should be able to ascertain *from the document itself* exactly what conduct is proscribed." *U.S. Steel Corp. v. United Mine Workers of Am.*, 519 F.2d 1236, 1246 n.20 (5th Cir. 1975) (emphasis added). An injunction that is understandable only by reference to other sources does not meet Rule 65's specificity requirement. Omissions or ambiguities in the injunction must be resolved in favor of any person charged with contempt. *E.g.*, *Ford v. Kammerer*, 450 F.2d 279, 280 (3d Cir. 1971).

The injunctive element of the Contempt Order lacks the specificity required by Rule 65. First, the Contempt Order does not define the term "affiliate" or identify the specific entities to be enjoined. This has led the PSC to purport to "define" the term, in ever-shifting fashion, in various motions and discovery requests. But the Order may not be retroactively redefined in this fashion. *See U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010) (injunction may not be modified *nunc pro tunc* to impair the rights of the parties). The PSC's recourse to the FOFCOL, dictionaries, and bankruptcy, securities, and business laws in a belated

attempt to give some meaning to the manifestly indefinite term "affiliate"[15] merely proves that the Contempt Order does not comport with Rule 65(d)(1), which requires that the injunction be clear on its face, to an ordinary person.[16]

Moreover, the Contempt Order does not specify what "business" Taishan or its "affiliates" are enjoined from "conducting." An ordinary person reading the Court's Order would not conclude, for example, that the CNBM Entities could not continue to participate in pre-existing litigation.[17] Yet the PSC contends that continued participation in litigation amounts to a violation. *See, e.g.*, Rec. Doc. 18750 at 8. Contrary to the PSC's arguments, Louisiana law states that "a foreign corporation . . . shall *not* be considered to be transacting business in this state . . . by reason of . . . (A) Maintaining or defending any action or suit . . . or affecting the settlement thereof or the settlement of claims and disputes." La. Rev. Stat. § 12:302 (emphasis added).[18] An ordinary person likewise would not conclude that an American corporate entity's pre-existing investments in shares of a publicly-listed and freely-traded Defendant, and the payment of dividends to shareholders, would constitute "doing business." Yet the PSC continues to allege that even this kind of activity, over which the CNBM Entities have no control, violates the Contempt Order. Rec. Doc. 18834 at 3. These interpretations demonstrate that the

---

[15] *See, e.g.,* Rec. Doc. 18302-1 at 14; Rec. Doc. 18534 at 33-34.

[16] The PSC has itself put a spotlight on the issue through its repeated modifications to the list of "affiliate" entities. *Compare* Rec. Doc. 18302-14 (listing 39 entities as "Taishan Affiliates"); Rec. Doc. Nos. 18419 & 18377-79 (listing **46** "Entities related to Taishan"); Rec. Doc. 18433-31 (listing **37** "Taishan Affiliates"); Rec. Doc. Nos. 18645 & 18649 (listing **66** "Taishan Affiliates and Subsidiaries"). And these shifting sands have invited the Court into similar inconsistency in identifying the entities that might be enjoined, at times mentioning "parents" (Mar. 17, 2015 Tr. at 35:21-23), "associates" (Apr. 24, 2015 Tr. at 5:8-24), and "wholly-owned subsidiaries" (May 7, 2015 Tr. at 27:12-18).

[17] Additionally, insofar as the Court credits the PSC's arguments that its injunction prevents corporations loosely-related to Taishan from accessing courts in other jurisdictions, the injunction interferes with constitutionally-protected rights and is invalid for that reason as well.

[18] Texas law contains a similar definition of "conducting business" that excludes participation in litigation. *See* Tex. Bus. Orgs. Code § 9.251.

prohibition against "conducting business" is far too general to be properly understood – it is not "specific in terms" and "described in reasonable detail," as required by Rule 65. *See Payne v. Travenol Labs., Inc.*, 565 F.2d 895, 897-98 (5th Cir. 1978).

Finally, the injunctive period is unclear. The Contempt Order initially stated that Taishan would be enjoined until it participated in the proceedings. That occurred no later than February 17, 2015, when Taishan's counsel filed its notice of appearance. Rec. Doc. 18352. But later, the Court stated that the injunctive period continued until Taishan not only paid attorneys' fees and penalties, but also the *Germano* default judgment and associated bill of costs – which Taishan accomplished by April 1, 2015. *E.g.,* Rec. Doc. 18725. This is not what the Order stated, and in no way could that Order reasonably be construed to mean such.

### B. The Injunction Is Impermissibly Overbroad Because It Restrains Conduct Unrelated To That Which Gave Rise To The Contempt Order.

An injunction may only restrain conduct that is the subject of litigation. *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 145 (2d Cir. 2011); *see also Lineback v. Spurlino Materials, LLC*, 546 F.3d 491, 504 (7th Cir. 2008) (injunction is overbroad if it results in "likelihood of unwarranted contempt proceedings for acts unlike or unrelated to those originally judged unlawful").

Here, the injunction sought to reverse Taishan's non-participation in litigation. However, the PSC has argued that the Contempt Order sweeps much more broadly than that, contending it enjoins a plethora of companies (most of which hold no direct or even indirect ownership interest in Taishan) from engaging in conduct that has no cognizable relationship to the subject matter of the litigation or to Taishan's non-participation. This assertion goes too far. *See, e.g.*, *Russell C. House Transfer & Stor. Co. v. United States*, 189 F.2d 349, 351 (5th Cir. 1951) ("no decree should be so broad as to place *the entire conduct of one's business* under the jeopardy of punishment for contempt for violating a general injunction.") (emphasis added). The PSC takes this one step further, arguing that the Injunction forbids the CNBM Entities, their parents and subsidiaries (even if not a defendant in the MDL) from accessing the U.S. judicial system. And

if these companies had utilized those courts *before* the Contempt Order was issued, they were obligated to retreat and surrender their rights immediately thereafter.[19]

### C. The Contempt Order's Penalties Require Due Process Protections That Have Not Been Afforded.

The penalties imposed against Taishan and its "affiliates" are criminal in nature. The Order states explicitly that it was holding Taishan in both civil and criminal contempt. But the due process protections necessary to finding criminal contempt have not been afforded here.

A contempt fine is considered civil if it compensates the complainant for losses sustained. *United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 829 (1994). Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge. *Id.* The penalty of 25 percent of profits here is a "fixed, determinate, retrospective fine[] which [the enjoined party] had no opportunity to purge once imposed," rendering it criminal in nature. *Id.* at 837; *see also* 11A Fed. Prac & Proc. § 2960. It bears no relation to any alleged damages suffered or costs incurred by Plaintiffs, much less the PSC, as a result of Taishan's alleged conduct – conduct which was not directed or controlled by the CNBM Group and CNBM Company (which hold only minority indirect ownership interests), let alone other entities with no ownership interest. The class does not benefit from the PSC's pursuit of supposedly contumacious behavior – Plaintiffs will not receive any sums that might be collected under the Contempt Order[20] – raising questions about the use of class resources and judicial efficiency.

The criminal contempt sanctions envisioned here require stringent due process protections, including "a presumption of innocence, the beyond-a-reasonable-doubt burden of

---

[19] *E.g.,* Rec. Doc. 18684 at 21 ("CNBM is using American courts (in Texas and Oregon) . . . in violation of the Court's injunction").

[20] Fines that are not compensatory in nature are not payable to a party. *See Towne v. Gee Const., LLC*, No. CIV.A. 11-1884, 2014 WL 4981442, at *2 (E.D. La. Oct. 6, 2014); *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986); *In re Dinnan*, 625 F.2d 1146, 1149 (5th Cir. 1980). Yet here, the Court has stated that it will simply issue a judgment in favor of the PSC for 25% of Taishan's or its "affiliates'" profits if any of the CNBM Entities or other alleged "affiliates" did business in the United States. (*See* April 17, 2015 Tr. at 8:1-10.)

proof, the right against self-incrimination, the right to notice, the right to be heard, the right to counsel, the right to call witnesses . . . and the right to a jury trial," in addition to the other protections offered by the Federal Rules of Criminal Procedure.  *See, e.g.*, *Crowe v. Smith*, 151 F.3d 217, 227-228 (5th Cir. 1998) (citing *Young v. United States ex rel. Vuitton Et Fils S. A.*, 481 U.S. 787, 798-99 (1987)).  These protections have not been afforded, and the penalties therefore may not be imposed, and certainly not against the CNBM Entities.  *Bagwell*, 512 U.S. at 826 ("criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings.").

## V.     CONCLUSION

The Court's order requiring the CNBM Entities to participate in discovery relating to the Contempt Order before otherwise defending themselves in this litigation has required companies over whom this Court has no jurisdiction to devote extraordinary time, energy, and resources on a seemingly boundless collateral proceeding that bears no relation to the merits of this action.  The Contempt Order, however, cannot be legitimately applied against the CNBM Entities.  Accordingly, and for the foregoing reasons, the CNBM Entities respectfully request that the Court vacate the Contempt Order as applied to the CNBM Entities.

Respectfully submitted,

/s/ L. Christopher Vejnoska

Dated:  July 9, 2015

L. Christopher Vejnoska (CA Bar No. 96082)
Ian Johnson (CA Bar No. 208713)
Andrew Davidson (CA Bar No. 266506)
Jason Wu (CA Bar No. 279118)
Ian Fein (CA Bar No. 281394
Jason Cabot (CA Bar No. 288877)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
San Francisco, CA  94105
Tel.:  415-773-5700
E-mail:   cvejnoska@orrick.com
          ijohnson@orrick.com
          adavidson@orrick.com
          jmwu@orrick.com
          ifein@orrick.com
          jcabot@orrick.com

Ewell E. Eagan, Jr. (LA Bar No. 5239)
Donna Phillips Currault (LA Bar No. 19533)
Nina Wessel English (LA Bar No. 29176)
Alex B. Rothenberg (LA Bar No. 34740)
GORDON ARATA MCCOLLAM DUPLANTIS & EAGAN LLC
201 St. Charles Avenue, 40th Floor
New Orleans, LA 70170-4000
Tel:  (504) 582-1111
E-mail:   eeagan@gordonarata.com
          dcurrault@gordonarata.com
          nenglish@gordonarata.com
          arothenberg@gordonarata.com

James L. Stengel (NY Bar No. 1800556)
Xiang Wang (NY Bar No. 4311114)
Kelly Daley (NY Bar No. 4970117)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY, 10019
Tel:  212-506-5000
Email:   jstengel@orrick.com
         xiangwang@orrick.com
         kdaley@orrick.com

Jonathan Riddell (LA Bar No. 27053)
ORRICK, HERRINGTON & SUTCLIFFE, LLP
400 Capitol Mall, Suite 3000
Sacramento, CA 95814
Tel:  916-447-9200
Email:   jriddell@orrick.com

Eric A. Shumsky (D.C. Bar No. 477926)
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street NW
Washington, D.C. 20005
Tel:  202-339-8400
Email:   eshumsky@orrick.com

*Attorneys for CNBM Entities*

15