# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO:<br><br>*Germano v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 09-6687 (E.D. Va.);<br><br>*Gross v. Knauf Gips, KG*, Case No. 09-6690 (E.D. La.);<br><br>*Wiltz v. Beijing New Building Materials Public Limited Co.,* Case No. 10-361 (E.D. La.);<br><br>*Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 11-1672 (S.D. Fl.);<br><br>*Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 11-1395 (E.D. La.); and<br><br>*Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 11-1673 (E.D. Va.). | |

**TAISHAN GYPSUM CO., LTD AND TAI'AN TAISHAN PLASTERBOARD CO., LTD.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE PLAINTIFFS' CLASS SPREADSHEET**

I.  INTRODUCTION

Plaintiffs' Opposition (Rec. Doc. 19254) explicitly concedes that the class spreadsheet (Exhibit 79) is not supported by the evidence. Therefore, as a matter of law, it cannot support a class-wide damages request. For that reason alone, the Court should not admit into evidence a document the proponent of which concedes is riddled with error.

Plaintiffs cannot minimize the admitted factual problems as "administrative concerns." (Rec. Doc. 19254 at 5). They are not. Plaintiffs admit material, evidentiary errors: "errors in ownership status, product identification, duplicate entries and prior remediation status." *Id.* at 4-5. Notwithstanding, Plaintiffs ask the Court to ignore the fundamental failures in their proof. There is no basis in law for such a remarkable proposal.

Ultimately, Plaintiffs' Opposition and the elaborate individualized claims process set forth in the post hoc Declaration of Jacob Woody simply confirm what Taishan has been arguing all along: Plaintiffs' damages scheme is precisely the kind of illegal aggregate fluid recovery that violates state tort law, the Rules Enabling Act and due process. *See In re Fibreboard Corp.*, 893 F.2d 706 (5th Cir. 1990). In effect, Plaintiffs want to proceed as if this were a settlement of class claims with a specified fund for the payment of individual damage awards. Although perhaps permissible in a settlement scenario, the Court cannot award aggregate tort damages under Fifth Circuit law—especially where a slew of individual issues remain unresolved, which could significantly reduce the amount of damages when ultimately determined. The Court should exclude the class spreadsheet and deny Plaintiffs' motion for damages.

II. ARGUMENT

    A.  **Plaintiffs' Class Spreadsheet Is Wrong**

Plaintiffs confirm that the class spreadsheet is inaccurate. In its Motion, Taishan identified errors in the spreadsheet (and submitted copious supporting evidence) that would

require the removal of hundreds of claimants.  Plaintiffs never dispute those errors—by category or as to any individual claimant.  Instead, Plaintiffs acknowledge the errors and/or lack of supporting information for the following categories in the class spreadsheet:

(1) ownership status,[1]

(2) product identification,[2]

(3) duplicate entries,[3] and

(4) prior remediation status.[4]

Particularly troubling is Mr. Woody's admission that "incomplete information" and "deficiencies" underlie the factual assertions in the current class spreadsheet.[5]

These are not "clerical" errors as in *United States v. Rana*, 129 F. App'x 890, 892 (5th Cir. 2005) (cited in Rec. Doc. 19254 at 3).  Plaintiffs acknowledge that the inaccurate or missing

---

[1] Rec. Doc. 19254 at 4 ("As to ownership status, most of the entries on Defendant Ex. A are not current owners…."); *see also* Rec. Doc. 19254-1 at ¶ 19 ("[I]t is difficult to determine from the documents in our possession whether a person currently owns the property on the Taishan Properties list.  If it is important to determine the current ownership of a property, we would perform a search of public records….").

[2] Rec. Doc. 19254 at 4-5 ("As to product identification, the PSC has already requested that BrownGreer complete its product identification review of all 2,686 properties in Ex. 79….").

[3] *Id.* at 5 ("As to duplicates, the PSC has verified that 13 of the 14 entries identified by Defendants are duplicates….").

[4] *Id.* ("As to prior remediation, the PSC has verified that there are properties for which there exists some sort of permit suggesting drywall remediation….").

[5] Rec. Doc. 19254-1 at ¶ 23 ("Because not every plaintiff on the Taishan Properties list from the June 9, 2015 hearing participated in the Settlement Program, we anticipate that there may be properties on the Taishan Properties list for which we have incomplete information.  We also anticipate that some properties will go through Stage One review and have deficiencies."); *see also id.* at ¶ 19 ("[I]t is difficult to determine from the documents in our possession whether a person currently owns the property on the Taishan Properties list.  If it is important to determine the current ownership of a property, we would perform a search of public records….").

data is important.[6]  The confirmed errors and deficiencies go directly to which claimants are entitled to recover against Taishan.  For example, as discussed below, at least 23% of claimants on the class list are likely not current property owners.  Thus, from just that one category, the class spreadsheet is overstated by at least a hundred million dollars.

The serious errors and deficiencies in the spreadsheet prevent it from being admitted into evidence.  *See United States v. Taylor*, 210 F. 3d 311, 315-16 (5th Cir. 2000) ("A necessary precondition to the admission of summary charts is that they accurately reflect the underlying records or testimony, particularly when they are based, in part, on . . . factual assumptions.") (citing *United States v. Stephens*, 779 F.2d 232, 238-39 (5th Cir. 1985)).  The PSC may not use their class spreadsheet "to assume that which it was required to prove".  *Id.* at 316 (excluding summary chart that "stretched the bounds of permissible . . .  assumptions well beyond the breaking point" of what the evidence supported).  In *United States v. Hart*, 295 F.3d 451, 458-59 (5th Cir. 2002), the Fifth Circuit disapproved an attempt (like here) to prove a "crucial missing element" of the case through the admission of a summary chart and the testimony of the chart's preparer.  The Court should also exclude the class spreadsheet because it "does not accurately summarize the underlying material that is purported to be summarized."  *Weiss v. Allstate Ins. Co.*, 512 F. Supp. 2d 463, 477-78 (E.D. 2007) (Vance, J.) (excluding chart); *cf. Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996) (holding that "evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all.").

Plaintiffs' attempt to finesse their proof problem by distinguishing between weight and admissibility misses the mark.  The class spreadsheet is entitled to no weight because it is wrong.

---

[6] Rec. Doc. 19254 at 4-5 (noting that Mr. Woody's proposed protocol provides for "collection of additional data to accurately verify the presence of Taishan Drywall in class member homes, the size of class members' properties, current property ownership, and remediation status.").

The same is true of Mr. Inglis' damages testimony, which depends entirely on the error-ridden spreadsheet.  As Plaintiffs concede, the law bars the "use [of] speculation to determine . . . damages."  (Rec. Doc. 19254 at 4) (citing *Anthony v. Chevron USA*, 284 F.3d 578 (5th Cir. 2002)).  Yet they encourage this Court to speculate about aggregate damages, and only later go through the necessary process of "verification and correction" of individual damages.  (Rec. Doc. 19254 at 2).

Since filing the Motion to Exclude on June 23, Taishan has continued to identify hundreds of additional facial errors in the class spreadsheet, including:

- An additional 181 properties not owned by the named claimant, bringing the current total of such properties to 621, or **23% of the putative 2,686 class properties**.  *See* **Revised Exhibit A**.

- An additional 281 remediation permits, bringing the current total of such permits to more than 500.  *See* **Revised Exhibit D**.  Plaintiffs concede that each such property will require individualized analysis regarding "the scope and cost of such remediation (and whether it actually occurred)."  (Rec. Doc. 19254 at 5).

- Plaintiffs also concede they currently lack "objective data" on whether thousands of class properties even have Taishan drywall.  (Rec. Doc. 19254 at 4-5).

Taishan agrees with Plaintiffs that individualized inquiry is necessary to correct those mistakes, but it would be lawless to award a fictional aggregate number and then, after the fact, determine whether individual damages awards bear any relation to their fictional share of the aggregate.  Unsurprisingly, none of the cases Plaintiffs cite support ignoring deliberate, material errors in damages calculations.

### B.     The Errors in Plaintiffs' Spreadsheet Illustrate Why the Fifth Circuit and Other Circuits Prohibit Aggregate Damages

Plaintiffs' Opposition and the Woody Declaration finally pull back the curtain all the way on Plaintiffs' illegal aggregate, fluid recovery damages scheme.  Plaintiffs' plan now matches up

with even more precision to the governing and persuasive precedents that preclude such schemes.

First, Plaintiffs now admit openly and repeatedly that they are asking the Court to give them "aggregate remediation damages" and an "aggregate damages award." Rec. Doc. 19254 at 2 and 4; *see also id.* at 4 (contrasting current requested aggregate award to "later proceeding addressing individualized non-aggregate claims"). But Fifth Circuit law explicitly prohibits such aggregate tort damage awards. In *Fibreboard*, the Fifth Circuit issued a writ of mandamus to stop a similar plan seeking what it described as "actual damages in a lump sum," a "total damage award," "total damages," "omnibus damages," and "damages suffered by the class." 893 F.2d at 709-10. The court rejected that aggregate plan because it violated fundamental state law principles to prove damages for "individuals, not groups," and thus violated both "defendants' right to due process" and the rules "enabling acts." *Id.* at 711-12.

Even the tone of Plaintiffs' pleading brings it straight into the teeth of *Fibreboard*. Plaintiffs' Opposition attempts to push aside the many class list errors and other problems raised by Taishan with reassurances that everything will be addressed in later "claims processing." Rec. Doc. 19254 at 4. But the *Fibreboard* court rejected similar sanguine assurances that "the loss of one-to-one engagement infringes no right of defendants." 893 F.2d at 709. Instead of being comforted, the Fifth Circuit panel was "left with a profound disquiet." *Id.* at 710. The court also questioned whether "proof of omnibus damages [was] in fact achievable." *Id.* at 710. Here, we have now seen in high relief that it is not. Plaintiffs' class list is so riddled with admitted errors that it cannot serve as the foundation for a $497 million aggregate damages request.

Plaintiffs' papers also now confirm beyond doubt that Plaintiffs seek a "fluid recovery" damages plan substantially identical to the one rejected by the Second Circuit in *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008), *abrogated on other grounds*, *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).  In that case, the appellate court reversed the district court's conclusion "that plaintiffs could prove collective damages on a class-wide basis, and individual plaintiffs would then claim shares of this fund." *Id.* at 231.  The Second Circuit held that "such an aggregate determination is likely to result in an astronomical damages figure that does not accurately reflect the number of plaintiffs actually injured by defendants and that bears little or no relationship to the amount of economic harm actually caused by defendants." *Id.*  Just like the Fifth Circuit, the Second Circuit held that an aggregate damages award "offends both the Rules Enabling Acts and the Due Process Clause." *Id.*  "When fluid recovery is used to permit the mass aggregation of claims, the right of defendants to challenge the allegations of individual plaintiffs is lost, resulting in a due process violation." *Id.* at 232.  Also like *Fibreboard*, *McLaughlin* expressed "skepticism" that experts could estimate class-wide damages proof "with accuracy." *Id.*

Here, Plaintiffs propose a similarly illegal plan of "[r]oughly estimating gross damages to the class as a whole and only subsequently allowing for the processing of individual claims." *Id.* at 231.  Plaintiffs ask the Court to find "that the aggregate remediation damages are $497,180,467, subject to verification and correction where necessary in claims processing." (Rec. Doc. 19245 at 2).  Plaintiffs have solicited an elaborate multi-step "protocol" from Jacob Woody to allegedly "ensure the accuracy of the data on Exhibit 79." *Id.* at 5.[7]  As Taishan

---

[7] As the Court heard at the June 9 hearing, neither Mr. Woody nor Mr. Inglis could confirm that the Exhibit 79 data is accurate, and Plaintiffs have now confirmed that it is not.

predicted in its proposed FOFCOL (Rec. Doc. 19194 at 33), Plaintiffs and Mr. Woody now confirm that they seek to impose the "GBI Settlement process" (Rec. Doc. 19254-1 at 3) to fix their flawed aggregate damages model. But, as the Supreme Court has recognized, settlements are different from litigation. *See Local Number 93, International Association of Firefighters v. City of Cleveland*, 478 U.S. 501 (1986). Although "some 'fluidity' is permissible in the distribution of settlement proceeds," *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 179, 185 (2d Cir. 1987), fluid recovery of litigated damages is not permitted because it assesses damages while denying defenses to individual claims. *McLaughlin*, 522 F.3d at 228. If, as Plaintiffs seem to imply, their elaborate protocol is intended to permit Taishan all defenses to each individual damages claim, then their initial step of finding an aggregate damages award is entirely unnecessary, even if it were permissible under Fifth Circuit law.[8] Plaintiffs' scheme of inaccurate aggregate damages followed by actual proof of individual damages is contrary to law and logic. The Court should reject that scheme and direct Plaintiffs to propose a legal plan to prove each claimant's damages using accurate, objective data.

## III.  CONCLUSION

For the foregoing reasons, Taishan respectfully requests that the Court grant its Motion to Exclude Plaintiffs' Class Spreadsheet.

---

[8] Plaintiffs claim that "[a]djustment of an aggregate damages award in claims administration is a routine step under Rule 23" (Rec. Doc. 19254 at 4), but they cite only a single district court opinion—unpublished and out-of-circuit. That decision actually decertified the class as to most of the claimed damages. To the extent that the decision permitted aggregate damages and averaging of relatively modest vehicle impound fees, it is directly contrary to *Fibreboard* and *Cimino*, and is factually inapposite to the much broader range of remediation costs about which the Court heard at the June 9 hearing.

Dated: July 8, 2015

Respectfully submitted,

/s Michael P. Kenny
Michael P. Kenny, Esq.
Georgia Bar No. 415064
Bernard Taylor, Esq.
Georgia Bar No. 669625
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
mike.kenny@alston.com
*Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*

Alan Dean Weinberger
LA Bar No. 13331
HANGARTNER, RYDBERG & TERRELL, LLC
One Shell Square
701 Poydras St., Suite 310
New Orleans, Louisiana 70179
Phone: (504) 434-6815
Fax: (504) 522-5689
aweinberger@hanrylaw.com
*Local Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, by U.S. mail and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 8th day of July, 2015.

   /s Michael P. Kenny
Michael P. Kenny, Esq.
Georgia Bar No. 415064
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
mike.kenny@alston.com
*Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*