UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION L<br><br>JUDGE FALLON |

THIS DOCUMENT RELATES TO: ALL CASES

# ORDER & REASONS

## I.   INTRODUCTION

On June 22, 2015, the CNBM entities filed a motion to dismiss (R. Doc. 19179), which included, *inter alia*, CNBM Group's Motion to Dismiss for Lack of Subject Matter Jurisdiction. Pursuant to this Court's order, the parties met and conferred on July 6, 2015 to try and determine an appropriate submission date for CNBM Group's Motion to Dismiss for Lack of Subject Matter Jurisdiction. Notwithstanding their efforts, the Parties were not able to agree upon a satisfactory schedule. The Court received and reviewed letters from the parties and heard arguments from counsel at the July Monthly Status Conference regarding scheduling. The Court has considered these arguments in light of the applicable law and now issues this Order and Reasons to set the hearing date for CNBM Group's Motion to Dismiss for Lack of Subject Matter Jurisdiction.

## II.   BACKGROUND

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used in the construction and refurbishing of homes in coastal areas of the country, notably the Gulf Coast

and East Coast.  Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of smelly gasses, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes.  *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819, 829 (E.D.La. 2012), *aff'd*, 742 F. 3d 576 (5th Cir. 2014).  Accordingly, these homeowners began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall.  Because of the commonality of facts in the various cases, this litigation was designated as multidistrict litigation and all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 2047 in the U.S. District Court, Eastern District of Louisiana.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities, and (2) the Taishan Entities.  The litigation has focused upon these two entities and their downstream associates, and has proceeded on strikingly different tracks for the claims against each group as described as follows.

### A. Knauf Entities

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), manufactured and sold its Chinese drywall in the United States.  The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009.  *See* (R. Doc. 18).  Following a bellwether trial (*Hernandez v. Knauf Gips KG*, Case No. 09-6050) involving a homeowner's claims against KPT for defective drywall where the Court found in favor of the Plaintiffs, the Knauf Entities entered into a pilot remediation program with the Plaintiffs' Steering Committee ("PSC") in the MDL.  The Knauf pilot remediation program is ongoing and is in the process of remediating 2,000 homes containing KPT Chinese drywall.  Further, on December 20, 2011, the

Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which is designed to resolve all Knauf-related, Chinese drywall claims. *See* (R. Doc. 12061-5). Although the Court occasionally must deal with settlement administration and enforcement issues, the Knauf portion of this litigation is largely resolved.

      **B.**    **Chinese Defendants**

In stark contrast to the traditional approach with which the MDL litigation proceeded against the Knauf Defendants, the litigation against the Chinese entities has taken a different tack. The Chinese Defendants in the litigation, include the principal Chinese-based Defendant Taishan, namely, Taishan Gypsum Co. Ltd. ("TG") and its wholly-owned subsidiary, Taian Taishan Plasterboard Co., Ltd. ("TTP") (collectively "Taishan" or "Taishan Entities"). Other Chinese-based Defendants ("Taishan Affiliates") include the CNBM Defendants ("CNBM Entities"), comprised of the China National Building Materials Group Corporation, China National Building Materials Company Limited, China National Building Materials & Equipment Import & Export Corporation, and CNMB Forest Products (Canada) Ltd; and the BNBM Defendants ("BNMB entities"), comprised of Beijing New Building Materials Public Limited Company, and Beijing New Building Material (Group) Co. Ltd. As discussed below, the course of the litigation involving the Taishan Entities has not followed the same trajectory or enjoyed the same measure of resolution as that involving the Knauf Entities.

As an alleged manufacturer of Chinese drywall which has been installed in plaintiffs' properties, Taishan is a named defendant in numerous cases in both the MDL litigation and litigation filed in state courts. The Court's initial inquiry regarding Taishan involved four cases in the MDL in which Taishan was served, entered an appearance, and in two of these cases, subjected to default judgment proceedings. These four cases are: *Germano v. Taishan Gypsum Co., Ltd.*, Case No. 09-6687; *The Mitchell Co., Inc. v. Knauf Gips KG*, Case No. 09-4115; *Gross*

3

*v. Knauf Gips KG*, Case No. 09-6690; and *Wiltz v. Beijing New Building Materials Public Ltd., Co.*, Case No. 10-361.

The first issues in the MDL litigation involving Taishan arose when TG failed to timely answer or otherwise enter an appearance in *Mitchell* and *Germano*, despite the fact that TG had been properly served in each case. *See* (R. Doc. 52); (R. Doc. 1-7) (Case No. 09-6687). As a result, after an extended period of time, the Court entered preliminary defaults against TG in both of these cases. *See* (R. Docs. 277, 487). The Taishan Affiliates have also been held in default with respect to proceedings in *Wiltz, Gross*, and *Amorin*. On February 1, 2011, BNBM, BNBM Group, CNBM, and CNBM Group were held in default in the *Gross* proceedings. *See* (R. Doc. 7302). These same entities were again held in default as to the omnibus intervention complaint that was filed in *Gross* on August 7, 2012. Also, on July 1, 2014, Taishan, TTP, BNBM, CNBM, and CNBM Group were held in default with respect to the *Amorin* complaint.

Taishan eventually entered this litigation on June 10, 2010, the last day to timely do so, by filing an appeal with the Fifth Circuit Court of Appeals. After Taishan entered its appearance in the MDL, it quickly sought to have the Default Judgment in *Germano* and the Preliminary Default in *Mitchell* vacated for lack of personal jurisdiction. *See* (R. Docs. 5436, 5583). The Fifth Circuit returned the case to this Court so that it could allow discovery and, in due course, rule on the jurisdictional issue. Formal personal jurisdiction discovery of Taishan began in October 2010, *see e.g.* (R. Docs. 5839, 5840), and continued over the year-and-a-half leading up to the filing of Taishan's motions to dismiss for lack of jurisdiction. This discovery has often been contentious, requiring close supervision by the Court. On June 29, 2012, over three years since the creation of MDL 2047, and after a year-and-a-half of personal jurisdiction discovery on Taishan, the Court presided over a hearing on Taishan's motions.

On September 4, 2012, this Court issued an order that was subsequently affirmed by two different panels of the Fifth Circuit, regarding Taishan's motions in *Germano*, *Mitchell*, *Gross*, and *Wiltz*, in which the Court denied the motions to vacate, denied the motions to dismiss, and held that it maintained personal jurisdiction over Taishan.  This Court set a judgment debtor examination for July 17, 2014 ordering Taishan to appear; instead of appearing, however, Taishan fired its attorneys and indicated that it was again "withdrawing" from the litigation. The Court held Taishan in contempt of court, enjoining Taishan and its affiliates and subsidiaries from conducting business in the United States until or unless it participated in the judicial process.  (Rec. Doc. 17869).

On July 23, 2014, Plaintiffs filed their Omnibus Motion for Class Certification pursuant to Rule 23(b)(3).  (R. Doc. 17883).  Taishan did not appear and, on September 26, 2014, this Court certified a class of "[a]ll owners of real properties in the United States, who are named Plaintiffs [in the various MDL complaints] asserting claims for remediated damages arising from, or otherwise related, Taishan drywall. (Rec. Doc. 18028 ("Class Certification FOFCOL") at 34-35). The Court so ruled following a motion from the PSC.  (Rec. Doc. 18086).  The motion was unopposed by any party.

The Court set a class damages hearing for February 12, 2015. At that hearing, the BNBM Entites entered an appearance for the first time in this litigation and asked for a continuance to prepare for a class damages hearing. (Rec. Doc. 18331). The Court granted the request for a continuance.  Taishan subsequently entered an appearance with its new counsel. (R. Doc. 18352).  The CNBM Entities also entered an appearance for the first time in this litigation.  The Court continued the damages hearing on two subsequent occasions.  The Damages Hearing was held on June 9, 2015.  Subsequently, on June 22, 2015, almost six years after this MDL was first

created, CNBM Group filed its Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to the Foreign Services Immunity Act ("FSIA") requesting that the Court enter a prompt, if not immediate, hearing date for its motion.

### III. PRESENT ISSUE

The Court heard CNBM Group's arguments for a prompt hearing following the September monthly status conference. CNBM Group argued that it is entitled to sovereign immunity, which is an issue that must be decided as soon as possible because sovereign immunity under FSIA includes immunity from burdensome and costly discovery. (R.Doc. 19267). The PSC argues that CNBM Group is not entitled to sovereign immunity under FSIA because it falls within either or both the commercial activity or tortious conduct exception to FSIA and that it needs a reasonable time to conduct discovery on CNBM Group's activity as it relates to these exceptions. (R. Doc. 19281).

### IV. LAW & ANALYSIS

The FSIA provides that "foreign states"—including their "political subdivisions" and "agencies or instrumentalities"—shall be immune from the jurisdiction of U.S. courts unless one of the exceptions to immunity set forth in the statute applies. 28 U.S.C. § 1603, 1604. The FSIA includes several provisions that define the scope of a foreign state's immunity, which includes immunity from suit (not just liability), and establishes detailed procedural requirements for bringing claims against a sovereign defendant. The exceptions to immunity are set forth in sections 1605 and 1605A of the FSIA.[13] These exceptions include, *inter alia*, certain claims based on commercial activities, expropriation of property, and tortious or terrorist acts by foreign sovereign entities. In most instances, where a claim falls under one of the FSIA exceptions, the

Act provides that the foreign state shall be subject to jurisdiction in the same manner and to the same extent as a private individual.

The "commercial activity" exception, which is codified in Section 1605(a)(2) of the FSIA, provides that a "foreign state shall not be immune from the jurisdiction of" U.S. courts in a case where the action is based:

> [(1)] upon a commercial activity carried on in the United States by the foreign state; or
> [(2)] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or
> [(3)] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States . ..

28 U.S.C. § 1605(a)(2). In other words, foreign states lose their immunity from suit in the United States where their actions are commercial *and* have a nexus to the United States (i.e., are carried out, or cause a direct effect, in the United States). The "tortious activity" exception subjects a sovereign defendant to jurisdiction in the United States for claims based on actions: "[i]n which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment." 28 U.S.C. § 1605(a)(5).

Once the defendant alleges it is a "foreign state", the plaintiff must produce some facts to show that an exception applies but the defendant retains the ultimate burden of proof on immunity. *Arriba v. Petroleos Mexicanos*, 962 F.2d 528, 533 (5th Cir. 1992). Given that sovereign immunity under FSIA is immunity from suit, not just from liability, "postponing the determination of subject matter jurisdiction until some point during or after trial would be inappropriate. *Moran v. Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (quoting *Gould v.*

7

*Pechiney Ugine Kuhlmann*, 853 F.2d 445, 450 (6th Cir. 1988)); *see also Phoenix Consulting v. Angola*, 216 F.3d 36, 39 (D.C. Cir. 2000)("[T]he district court must make the critical preliminary determination of its own jurisdiction as early in the litigation as possible.").

Nonetheless, "[w]hen a party challenges subject matter jurisdiction, the court is given the authority to resolve factual disputes if there be any, along with the discretion to devise a method for making a determination with regard to the jurisdictional issue." *Moran* 27 F.3d at 172. This procedure may include considering affidavits, allowing further discovery, hearing oral testimony, or conducting an evidentiary hearing. *Id*. In *Moran*, the Fifth Circuit held that the District Court did not err when it devised a procedure allowing additional limited discovery on the issue of jurisdictional immunity and, after discovery was complete, considered the allegations along with the evidence produced to discovery, in dismissing the complaint against Saudi Arabia for lack of subject matter and personal jurisdiction. *Id.* at 171-72. Further, the "district court retains considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction, but it must give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *Phoenix Consulting*, 216 F.3d at 40. Accordingly, jurisdictional discovery "should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination. *Aribba*, 962 F.3d at 534.

Notwithstanding the foregoing, the Court does not have the authority to authorize jurisdictional discovery unless it has a clear understanding of the basis of the plaintiff's claim. In other words, FSIA discovery may be useful and/or necessary to confirm that which has been plead as the basis for enforcing an exception to immunity, but it cannot be ordered in the absence of any relevant allegations. *See Arriba*, 962 F.3d. at 534 ("A necessary prerequisite to an order for limited discovery is a district court's clear understanding of the plaintiff's claims against a

8

sovereign entity."). The Court reviewed the Plaintiffs' pleadings, specifically the *Gross* pleading, and the relevant language states, in part:

> Defendant CNBM Group caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold … To the extent Taishan, BNBM, China National Building Material, Co., Ltd., BNBM Group, and CNBM Group are deemed to be foreign sovereign entities, plaintiffs bring their claims against the entities pursuant to U.S.C. § 1605(a)(2), the commercial activity exception to the Foreign Services Immunity Act, or alternatively under § 1605(a)(5), the tortious act exception. Plaintiffs allege that the claims against Taishan, BNBM, China National Building Material Co., Ltd., BNBM Group, and CNBM Group are based upon commercial activities carried on in the United States. The claims also seek monetary damages against a foreign state for damages to the property occurring in the United States, caused by the tortious acts or omissions of that foreign state, or of any official or employee of that foreign state while acting with the course and scope of employment.

(R. Doc. 366 at 20). Furthermore, the Court has presided over this case since 2009. During that time, there has been extensive discovery regarding the type and nature of the defect involved in Chinese drywall, and the scope and extent of the property damage and the required remediation. The Court has also heard testimony regarding the relationship between the various Chinese entities. Thus, based on the pleadings and the Court's experience with this litigation, the Court concludes that it has a clear understanding of the basis of the Plaintiffs' claims. Although the status of CNBM Group may be devoid of factual dispute and able to be decided as a matter of law, the presence, nature, and extent of the exceptions under FSIA are factually pregnant and some discovery is needed. Accordingly, the Court concludes that additional discovery is appropriate under the circumstances and would be helpful to both the parties and the Court in assessing the merits of CNBM Group's sovereign immunity defense. That said, the Court also recognizes that this is not the type of issue that can be discovered indefinitely and without limits. However, since the issues of jurisdiction and the extent of the applicability of the exceptions are

factually dependent, the Court is exercising its discretion to permit further *limited* discovery prior to hearing CNBM Group's motion to dismiss for lack of subject matter jurisdiction.

## V.     CONCLUSION

**IT IS ORDERED** that the PSC be permitted to conduct additional limited discovery on the issue of jurisdictional immunity under FSIA.  In order to give the parties sufficient time to conduct any necessary additional discovery, **IT IS FURTHER ORDERED** that CNBM Group's Motion to Dismiss for Lack of Subject Matter Jurisdiction is set to be heard on the date of the December Chinese Drywall monthly status conference.

Accordingly, **IT IS FURTHER ORDERED** that the Parties conduct and complete any additional discovery on the issue of jurisdictional immunity under FSIA prior to the December hearing date.

New Orleans, Louisiana, this 22nd day of July, 2015.

_____
UNITED STATES DISTRICT JUDGE