1                    UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF LOUISIANA

3

4
     IN RE:  CHINESE-MANUFACTURED   *      Docket 09-MD-2047
5            DRYWALL PRODUCTS        *
             LIABILITY LITIGATION    *      Section L
6                                    *
     Relates to:  10-362             *      New Orleans, Louisiana
7                                    *
                                     *      July 14, 2015
8    * * * * * * * * * * * * * * *   *

9

10                      ORAL ARGUMENT BEFORE
                THE HONORABLE ELDON E. FALLON
11              UNITED STATES DISTRICT JUDGE

12

13   Appearances:

14   For Maurice Kodsi          Levin Fishbein Sedran & Berman
     and Robert Kodsi:          BY:  FREDERICK S. LONGER, ESQ.
15                              510 Walnut Street, Suite 500
                                Philadelphia, Pennsylvania 19106
16

17   For the Knauf             Baker Donelson Bearman
     Defendants:                 Caldwell & Berkowitz, PC
18                              BY:  DANIEL J. DYSART, ESQ.
                                201 St. Charles Avenue, Suite 3600
19                              New Orleans, Louisiana 70170

20

21   Official Court Reporter:  Toni Doyle Tusa, CCR, FCRR
                               500 Poydras Street, HB-275
22                             New Orleans, Louisiana 70130
                               (504) 589-7778
23

24

     Proceedings recorded by mechanical stenography using
25   computer-aided transcription software.

1               **I N D E X**

2                                                   <u>Page</u>

3  Oral Argument

4        Frederick S. Longer, Esq.                   4

5        Daniel J. Dysart, Esq.                     14

6        Frederick S. Longer, Esq.                  22

7        Daniel J. Dysart, Esq.                     24

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**PROCEEDINGS**

**(July 14, 2015)**

**THE COURT:**  Our first motion is Oceanique's motion for Court review of the special master's opinion.  By way of background, in 2006 Oceanique developed new condominiums in Fort Pierce, Florida, using thousands of sheets of drywall it purchased from Banner Supply.  Once the Chinese drywall problem became public, Oceanique lost potential sales.  In order to mitigate future lost sales, Oceanique began demolishing and remediating the apartments one month before the initial transfer that began the MDL proceeding.

According to Oceanique, it was not considering filing a lawsuit at the time the evidence was available for preservation in May.  They then decided to file a lawsuit, but they had already destroyed the material.  When they made a claim, they were not able to show pictures of all of the material.  They showed pictures, I think, of one sheet.

The special master felt he didn't have enough information to justify the position of Oceanique and, therefore, declined the amount that they sought.  They sought several million dollars, and I think he awarded them some $500 because of one or more sheets that they were able to show.  He took the position they didn't comply with the order of the Court and, therefore, they were not entitled to the amount they sought.

10:04    1          I'll hear from the parties.  They are now
10:04    2    appealing to me.
10:04    3          **MR. LONGER:**  Good morning, Your Honor.  Fred Longer
10:04    4    on behalf of Maurice and Robert Kodsi, who are the principals
10:04    5    of Tricon Development, who are the developers of Oceanique.
10:04    6    Mr. Montoya and Mr. Gonzalez were not available, so I am here
10:04    7    on their behalf to argue on behalf of the Kodsis.  They are on
10:04    8    the telephone right now listening in, to my knowledge, sir.
10:04    9          The history that you provided is entirely
10:04   10    accurate.  In 2006 the Kodsis began the development of
10:04   11    Oceanique.  There are 144 units in the building.  There are two
10:05   12    buildings.  One building has 14 units that are affected.  The
10:05   13    other building has 25 units.  All together, there's 39 units
10:05   14    that had affected drywall in them and the common areas.
10:05   15          Sometime in 2009 it became pretty widespread
10:05   16    knowledge throughout southern Florida that there was a drywall
10:05   17    problem.  The Kodsis became aware of that and, acting as
10:05   18    responsible developers, when they recognized the problem, they
10:05   19    addressed it.  They addressed it promptly.  They addressed it
10:05   20    fully.  The instance, as you have described it, Your Honor --
10:05   21    and it's also in affidavits which are part of the record --
10:06   22    confirm that they began the demolition work to repair and
10:06   23    remediate in May of 2009 which, as Your Honor recognized, is
10:06   24    before the existence of MDL 2047.  They completed all of the
10:06   25    remediation or all of the demolition, at least, by

1  October 2009, which also precedes Pretrial Order 1(B) which is

2  dated October 9, 2009.  I'll come back to why that's relevant,

3  Your Honor.

4       Having done that, they felt in good conscience

5  they could participate in the settlement that involves Knauf.

6  They went through the already remediated homes process.  There

7  are several things now that result from that which factually

8  are not in dispute and I wanted to go through them.

9       There's no dispute on Knauf's side that the

10  remediation costs that were incurred by Oceanique were

11  $3.2 million.  There's really no dispute that there were

12  affidavits provided in the record for Robert Kodsi and Maurice

13  Kodsi, who were the developers; for Ian Askew, who was the

14  superintendent; and for Manuel Gamez-Nino, who was responsible

15  for the demolition.  All four witnesses "affided" to the fact

16  that they saw KPT drywall coming out of the remediated units.

17  There's no controversy over that.  There is no controverted

18  fact over that.

19       Another fact that is not disputed is that there

20  was photographic evidence that confirms the testimony of these

21  affiants, and that was in Exhibit H to our papers.  It shows at

22  least 10 photographs of Knauf drywall.  It was interpreted that

23  there was only one photograph that actually complied with

24  PTO 1(B), but there are 10 photographs confirming it.  These

25  are uncontroverted facts, Your Honor.  It's not going to be

disputed.  Plaintiffs also preserved sections of KPT drywall and made them available for inspection.

It's also uncontroverted that Banner Port St. Lucie was the Banner Supply Company -- as you recall, Banner had several subparts in terms of regions.  The Port St. Lucie Banner was the Banner that supplied the drywall to the Kodsis, and there's invoices demonstrating all of these deliveries.  That's part of the record as well.  We have Banner Port St. Lucie's defendant profile form, the supplier profile form, which indicates that that Banner entity had no Taishan board.  It only had KPT drywall.  There's also, as I said, invoices that demonstrate that thousands of sheets were delivered from Banner Port St. Lucie to the Oceanique development.

It's also not going to be disputed, Your Honor, that in the Banner allocation plan, which is part of the Banner settlement, that Knauf has taken contribution from that at the rate of 60 percent because Knauf insisted that they recover 60 percent of anything that Banner did.  It's because of that that we have argued there's a 60/40 split if the Court ever gets to the point of deciding that a reduction should apply to this.  We have used the 60/40 reduction that KPT wanted in the Banner allocation plan.

Finally, as I say, there's really no dispute that Oceanique spent $3,180,499.28 on repairs, which came out

1  to approximately $31.80 a square foot, which is far less than

2  the repair costs that KPT or Knauf is experiencing in the Knauf

3  settlement agreement.

4         So really the savings that are afforded by

5  having Oceanique do its own repairs, as opposed to going

6  through the settlement agreement, should inure to their benefit

7  because it would inure to Knauf's benefit to pay them at that

8  savings rate.

9         The Kodsis were at great hardship to spend that

10  money.  The economy was tanking at the time.  The drywall

11  situation created a huge marketing problem for them.  It was an

12  endurance contest for them to do what they had to do to do the

13  right thing, to repair the units and get it done right.  Having

14  done that, they are now confronted with going into a settlement

15  in good faith, believing that they would be able to recover

16  because their work was done prior to the existence of the MDL,

17  prior to the existence of PTO 1(B).

18         Now, why we are here is because, I believe,

19  Knauf is trying to kill the messenger and avoid its obligation

20  to pay, which was part of the settlement agreement.  Remember,

21  we negotiated in the settlement agreement an already remediated

22  home protocol, recognizing that there would be instances just

23  like this one where there would be uncertainty as to how to

24  calculate the KPT percentage.  That's why the whole provision

25  is there that there would be negotiations on the KPT

percentage, and I want to get into that a little bit more.

In the course of the mediation process, Knauf challenged the proofs that Oceanique put forward, and they are saying that there was insufficient evidence that there was KPT board in the units.  Well, what the settlement agreement provides, in essence, is that -- this is Exhibit A, which is the already remediated homes protocol of the settlement agreement.  It provides that parties going into it -- the plaintiffs going into it, the owners going into it -- had to provide, prior to a negotiation, documentation concerning the remediation of the affected property to the extent that such documentation is in the possession, custody, or control of the owner.

There is a recognition, Your Honor, in this language pregnant with the notion that there may not be evidence.  In fact, paragraph III(A)(1) says that.  It says photographs and/or video images of all drywall removed from the affected property during remediation is to be provided.  For those owners with claims pending, where available, such submission shall be in the form required by PTO 1(B) where it's available.

There's no dispute here that the Kodsis gave all of the information available to them in the course of the mediation process.  Now the question becomes what is the impact of the proofs that they gave.

1    Now, Mr. Balhoff interpreted the settlement

2  agreement in basically a zero sum way.  I suppose I should

3  first tell you what Mr. Balhoff was looking at, which is this

4  paragraph here, which is paragraph IV(D)(4).  That says that

5  the special master and the Court will take into consideration,

6  in determining whether to allow a claim or the amount of claim,

7  whether the owner has complied with Pretrial Order 1(B), if the

8  claim is pending in the MDL, or with applicable state law

9  requirements for preservation of evidence.  Subject to review

10  by the special master or the Court, the failure to preserve

11  evidence as required by law will result in disallowance.  I

12  have emphasized "or reduction in the amount of the claim if the

13  failure has been prejudicial to a determination of the claim."

14    Mr. Balhoff, when he read that, he did not

15  recognize -- he took it as a zero sum sentence.  He interpreted

16  it to mean that these terms -- this is the highlighted language

17  here, Your Honor -- that these terms included any claims not

18  complying with Pretrial Order 1(B) would be disallowed.

19  Indeed, Knauf only agreed to pay certain claimants in the

20  settlements.  These did not include claimants that could not

21  satisfy Pretrial Order 1(B).

22    Well, the provisions I just indicated to

23  Your Honor suggest quite strongly that the protocol

24  contemplated that there would be instances where people could

25  not comply.  That's why there were going to be negotiations,

1    and that's why there was supposed to be instances where the

2    special master had some authority to provide for a reduction in

3    the award.

4              What we have done is to -- and I suggest that we

5    have substantially complied with Pretrial Order 1(B) because,

6    as I said to Your Honor at the beginning, it didn't even exist

7    at the time that the demolition took place.

8              So the Kodsis are faced with a situation where

9    they have already done the demo.  They have preserved evidence.

10   There's photographic proof of it, there's affidavit evidence --

11   which is valid evidence the last I knew in terms of Federal

12   Rules of Evidence -- and yet it was ignored.  That evidence was

13   actually ignored by Mr. Balhoff.  It's not present in his

14   report.

15             Where he comes down is that Pretrial Order 1(B)

16   just outright precludes any proof going forward, but here's

17   where I come down and how I look at Pretrial Order 1(B).  The

18   critical language is right here, "from this date forward,"

19   Pretrial Order 1(B), issued on October 9, 2009, after the

20   demolition had taken place, and it applied prospectively.

21             So the question is:  Someone coming into the

22   settlement, who had done the remediation retrospectively, how

23   do you account for the application of Pretrial Order 1(B)?

24   There's an ambiguity there.  The point there is again repeated

25   because the Court says, "In summary, from this date forward,

all persons or entities who have or who intend to pursue a
claim relating to allegedly defective Chinese-manufactured
drywall and their agents, subsidiaries, and affiliates shall
preserve the following evidence at their own expense, subject
to further order of the Court."  So that was prospective
language, Your Honor, not retrospective language.

Then what they had to do was provide -- and it's
listed here -- drywall.  There are samples.  They were
available for inspection.  There's no dispute about that.
There's photographic evidence.  There's been substantial
compliance with Pretrial Orders 1 and 1(B).

By the way, Your Honor, the Oceanique claim did
not get filed until December 9, 2009.  They are in Florida.  I
don't mean this to be blanketly, but conceptually
Pretrial Order 1 -- which is going to be the fallback argument,
"Well, they were obliged to preserve," and that's what Pretrial
Order 1 said.  Pretrial Order 1(B) became very specific as to
preservation of drywall, but Pretrial Order 1 just talked
generally about preservation language.

The Kodsis or Oceanique were not in suit, so
conceptually it doesn't even apply to them and didn't apply to
them until they began litigation.  Now, we were retained by
them, I think, or the Colson Hicks firm was retained by them
in, I think, December and they got onto the complaint in
December.

1    So the point there is that there had been an
2    effort on their part to preserve evidence.  They have sections
3    of drywall available.  They have photographs of the drywall
4    that they did take down.  There's hundreds of photographs.
5    There's tens of photographs of KPT drywall.  There's hundreds
6    of photographs of the demolition work and the effort that
7    Oceanique went through to remedy the properties themselves, all
8    39 units and the common areas.
9    The kicker to all of this is that there's one
10   unit in the Oceanique property that had Taishan board.  How it
11   got there nobody knows.  It's because of the presence of that
12   that Knauf argued, well, then everything is unreliable.
13   Mr. Balhoff discounted everything that was provided, even
14   though the only proofs that we understand from the defense
15   profile form is that Banner Port St. Lucie only had KPT board.
16   So somehow a fraction of the entire board in
17   this 100,000 square feet remedy, 2,000 square feet -- two
18   percent -- was Taishan board.  The other 98 percent is
19   unaccounted and that's where the slippage is, and that's where
20   the negotiation was supposed to resolve how much drywall there
21   was.
22   What we came up with at the mediation with
23   Mr. Balhoff is that only one board -- one sheet, period,
24   $500 -- was presented as evidence to confirm this claim, and
25   that's just not so.  It's basically denying all of the

10:24   1   affidavit evidence.  It's denying all of the photographic

10:24   2   evidence.  It's denying the fact that -- I have gone through my

10:24   3   laundry list.  It just doesn't recognize what is there.

10:24   4           As a result, Your Honor, we think, quite

10:24   5   honestly, that the proofs are very strong and the equity is

10:24   6   very strong that there should have been a recovery here because

10:25   7   the situation is a unique situation.  The special master and

10:25   8   Knauf on the other side would not address the uniqueness.  They

10:25   9   are very rigid in their position, zero sum, in essence.  That's

10:25   10  not what this whole settlement was supposed to be about.  It

10:25   11  was supposed to be about compensating people who came forward

10:25   12  in good faith and tried to comply with the settlement.  That's

10:25   13  exactly what the Kodsis did.  That's why I think they should be

10:25   14  compensated, Your Honor.

10:25   15          Now, the numbers were $3.2 million.  I'm

10:25   16  rounding off now, $3.2 million.  At a 40 percent reduction to

10:25   17  60 percent, they were asking for $1.9 million.  I think that

10:25   18  the proofs are strong that they should recover their full

10:25   19  recovery, $3.2 million.

10:26   20          To the extent that the Court finds that the

10:26   21  evidence is not 100 percent firm, then a reduction is

10:26   22  applicable.  The reduction that we think is the appropriate

10:26   23  reduction is somewhere between 100 percent and 40 percent, but

10:26   24  it should not be down to practically zero at $500.  That was

10:26   25  wrong, and that's where we are.

10:26  1          THE COURT:  Okay.

10:26  2          MR. LONGER:  There's also an argument, Your Honor,

10:26  3   about timeliness.  I would hope that the fact that we are here

10:26  4   suggests that timeliness is not an issue.  To the extent that

10:26  5   there is, the objection that the Colson Hicks firm filed was

10:26  6   within 20 days of the opinion and decree of Mr. Balhoff.  I

10:26  7   take it that that makes it timely.  I really fail to understand

10:27  8   the argument on timeliness on that side.

10:27  9          THE COURT:  Let me hear from Knauf in response.

10:27  10         MR. DYSART:  Good morning, Your Honor.  May it please

10:27  11  the Court.  Danny Dysart on behalf of the Knauf defendants.

10:27  12             In addition to the special master's opinion and

10:27  13  decree, we have submitted various papers and oppositions in

10:27  14  this matter that is all, for the record, what the special

10:27  15  master reviewed in making his decision.  Therefore, I will try

10:27  16  to keep my arguments brief to the issue, which is the special

10:27  17  master's decision to reduce Oceanique's claim for failure to

10:27  18  preserve and present evidence in accordance with the Knauf

10:28  19  class settlement agreement.

10:28  20             I won't go back through the background again.

10:28  21  Mr. Longer, as he said, there's not many factual issues in

10:28  22  dispute.  I do want to note that, as he said, in May 2009

10:28  23  Oceanique determined defective Chinese drywall and at that

10:28  24  point began remediating up until October.  That consisted of

10:28  25  39 units and over 100,000 square feet.  Of that remediation, he

is correct that only 10 boards were actually preserved, and only one board that was installed on the property was shown to the Knauf defendants.

Now, December 20, 2011, the Knauf class settlement agreement, which was agreed to by Knauf and the PSC and approved by Your Honor, sets forth the class definition and the requirements to have a compensable claim under the settlement agreement.  That settlement also provided ample notice and a full opportunity for claimants to opt out of the settlement agreement should they not want to be bound by the terms.  As the special master recognized in his opinion and decree, Oceanique is a class member.  They did not opt out of the settlement agreement, therefore, they are bound by the terms of the agreement that were agreed back in December of 2011.

That settlement agreement contemplates that Knauf will compensate claimants that have KPT drywall and remediate their homes, the ARH claims, pursuant to the ARH protocol, which, as he said, is Exhibit A.  That ARH protocol has a mechanism to resolve disputes with respect to Knauf and claimants and it utilizes PTO 1(B).

It states that the special master and the Court will take into consideration, in determining whether to allow a claim or the amount of the claim, whether the owner has complied with MDL Pretrial Order 1(B).  It goes on to state

1   that subject to review by the special master or the Court, the

2   failure to preserve evidence, as required by law, will result

3   in disallowance or reduction of the claim if the failure has

4   been prejudicial to the determination of the claim.

5           With respect to PTO 1(B), the fact that PTO 1(B)

6   was entered and went from that date forward by Your Honor's

7   Court does not mean that it's not applicable to the settlement

8   agreement.  That pretrial order was the standard for evidence

9   preservation and presentment for a claim under the settlement

10  agreement.  The parties negotiated that, and it's included in

11  the settlement agreement that that is the standard to look at

12  when an ARH claim comes forward.

13      **THE COURT:**  He says it's forward and he did it in the

14  back; he did it before it was entered.

15      **MR. DYSART:**  Understood, Your Honor.  Now, the

16  parties negotiated and agreed to that, that PTO 1(B) would be

17  included in the Knauf settlement agreement.  Nobody disputes

18  that Oceanique commenced their remediation prior to October of

19  2009.  It went up until 2009.  There's arguments that PTO 1,

20  which also set forth a preservation order, would apply.  Also

21  general considerations of what is required in the litigation

22  sense would be required to prove product identification in a

23  products liability case.

24          That pretrial order was set as the parties'

25  agreement in the Knauf settlement agreement.  If Oceanique

could not meet that standard, they had full opportunity and
equal notice to opt out of the settlement agreement.  They
chose not to.  They chose to bind themselves to these terms.

PTO 1(B) requires that the parties shall
photograph the back side of each Chinese drywall board
immediately after it was removed on site and document a floor
plan, building diagram, or other similar form of documentation,
the location of each full or partial Chinese drywall board
removed from the property and its photograph.  Photographs of
the wall sections should be taken so that any markings on the
back side of the drywall sections are most clearly visible in
the photographs.  As the special master recognized and as
Oceanique even recognized, it is undisputed that they did not
comply with PTO 1(B) or really any measure or preservation
that's close to it.

Now, Oceanique's really three main arguments --
there's a few others I will respond to, but there are three
main arguments -- is that PTO 1(B) does not apply, that the
distribution of drywall to Banner and the Banner settlement
agreement can be used as a method to determine the claim, and
that they have submitted additional affidavit evidence.

With respect to PTO 1(B), they argue that it
cannot apply to this claim.  First, PTO 1(B) was merely a
refinement of PTO 1, which imposed a duty to preserve evidence
and which itself was just general principles in pursuing a

1   claim in litigation.  Oceanique failed to preserve this

2   evidence under any standard, and its failure was prejudicial to

3   Knauf's determination of whether that property contained KPT

4   drywall.

5        More importantly, the timing of PTO 1(B) is

6   really irrelevant with respect to Oceanique because they are a

7   class member.  They did not opt out of the settlement,

8   therefore, they are bound by the terms.  Those terms include

9   that claimants need to comply with PTO 1(B) or they could have

10  their claim disallowed or reduced, as the special master found

11  in this case.

12       With respect to the argument that their claim

13  can be judged based on the drywall that was supplied to Banner,

14  Oceanique's argument fails because, first, the drywall that was

15  distributed to Banner was not so uniform or reliable to apply

16  that to a single property.  There were hundreds of thousands of

17  drywall that Knauf supplied to Banner.  It sounds a lot like a

18  market share or enterprise liability.  In that sense, that is

19  not recognized under the settlement agreement or under

20  Louisiana law, which governs the application of the settlement

21  agreement.

22       Finally, with respects to the affidavits, first,

23  the affidavits are insufficient in that nowhere in the

24  settlement agreement does it say supply affidavits and you can

25  bypass PTO 1(B).  Those affidavits are insufficient evidence to

support a claim under the Knauf class settlement agreement.
Oceanique knew this.  They had an opportunity to opt out.  They
did not.

   **THE COURT:**  They say something about Banner's
Port St. Lucie only supplied KPT and that's where they got it.

   **MR. DYSART:**  They got drywall from both Banner Port
St. Lucie and they -- obviously, if that is correct, then they
must have gotten drywall from other places as well because it's
undisputed that the best evidence in this matter is Unit 801B.
That unit is a 100 percent Taishan unit.  That unit was the
only unit that was fully inspected.  It was 100 percent
Taishan.  The evidence of that is better than the evidence that
was supportive for KPT drywall.

   Second, the affidavits are inaccurate, as I
stated, because they don't even recognize that 801B did have
Taishan board nor did they say they saw any Taishan drywall
coming out of the units.

   Just a couple of other points.  On the
remediation costs issue, I just want to note that at the
mediation the reasonableness of the remediation costs was not
discussed by either the parties or the special master.  This is
something that -- we are not disputing what they are stating
are their remediation costs, but those remediation costs would
have to be viewed in the context of the ARH protocol as to what
is covered and what is not.

1    With respect to the samples, the samples are
2    merely just a confirmation of the very limited, almost
3    nonexistent KPT evidence that was set forth.  We are talking
4    about 10 boards and one board that's installed for over 100,000
5    square feet of a property that this developer, who is a
6    sophisticated developer, would have anticipated that this claim
7    was a product liability litigation and would have had to prove
8    product ID should he want to make a claim against the supplier
9    or the manufacturer.
10        THE COURT:  And you feel that the best evidence is
11   what, the photographs of each board?
12        MR. DYSART:  The best evidence in this matter?
13        THE COURT:  Yes.
14        MR. DYSART:  For the KPT, the only evidence we have
15   of KPT are 10 boards and a single board that is actually
16   installed in the property.  There's better evidence of the
17   inspection report that is more indicative of Taishan being in
18   the property.  None of the other units had inspection reports
19   that said they contain KPT.  There is only a single inspection
20   report for all 39 units and it's 100 percent Taishan.
21        THE COURT:  It's your position that you needed
22   photographs of each board?
23        MR. DYSART:  Your Honor, PTO 1(B) is the standard.
24   Should they not be able to meet PTO 1(B) -- let me go back to
25   Exhibit A, the already remediated protocol.

1    They say that to the extent such documentation

2  is in possession, custody, control, or where available.  What

3  that provision is merely stating is claimants should submit

4  whatever they have.  Obviously they need to submit all the

5  documentation to us.  There's no discovery where we are going

6  back and forth.  This is something you submit your claim; we

7  review it.  However, Section IV(D) follows that and

8  specifically states that, when looking at the claim, you look

9  at Pretrial Order 1(B) in determination of the claim.  So, yes,

10 the best evidence is photographic, documented evidence of KPT

11 Chinese drywall.  In this case we had almost none for the size

12 of this property.

13    Finally, I just want to note that all the

14 evidence submitted today was reviewed and discussed by the

15 parties and reviewed by the special master prior to his

16 decision.  His decision is based on the applicable settlement

17 terms and the facts that govern this claim.  As the special

18 master concluded, based on a full review of all the evidence

19 and papers now before the Court, Oceanique is a class member,

20 they did not opt out of the settlement, and they are bound by

21 the settlement's terms.  They failed to preserve evidence

22 pursuant to the settlement's terms.  The failure is prejudicial

23 to the determination of the claim.  Therefore, Knauf would

24 submit that the special master's opinion and decree be

25 affirmed.

10:37
10:37
10:38
10:38
10:38
10:38
10:38
10:38
10:38
10:38
10:38
10:38
10:38
10:38
10:38
10:39
10:39
10:39
10:39
10:39
10:39
10:39
10:39
10:39
10:39

1          **THE COURT:**  Is that the transcript of the proceeding

2     before the special master?

3          **MR. DYSART:**  What I have before me?

4          **THE COURT:**  Yes.

5          **MR. DYSART:**  I have it, Your Honor.  I have his

6     opinion and decree.  There's no transcript with respect to the

7     mediation.

8          **THE COURT:**  Okay.

9          **MR. LONGER:**  This is an appeal, Your Honor, so I feel

10    like there should be time between arguments.  I listened to

11    what Mr. Dysart said, and I only have a couple points in reply.

12          The first point is that the best evidence

13    that -- I kept hearing that at least twice.  He said the best

14    evidence is one unit that had Taishan board.  I come back to

15    the protocol, which didn't talk about the best evidence.  It

16    said any evidence of KPT drywall and non-KPT Chinese drywall,

17    if any, in the affected property prior to the remediation.

18    "Any evidence."  Not the best.  Not the worst.  Anything you

19    got, bring it forward.

20          Well, we have direct evidence of KPT drywall

21    because there's photographs of it.  We have board that you can

22    hold in your hand.  We have hundreds of invoices from Banner

23    saying that they shipped hundreds of thousands -- about 100,000

24    sheets of drywall to Oceanique.  If the evidence is the best

25    evidence, then the best evidence is that Banner supplied KPT

1   drywall to this unit.  Now, obviously they didn't supply only
2   KPT drywall because one unit got something else, but it's 2,000
3   square feet out of 100,000 square feet.  So there's a big,
4   yawning gap.
5           Then the last point, Your Honor, is the demand
6   for Pretrial Order 1(B) as the standard.  As I said,
7   Your Honor, it applies prospectively, not retrospectively.
8   *Ex post facto* laws are impermissible, and this Court's order
9   can't be given *ex post facto* application.
10          As I said, in this instance -- and it's a unique
11   circumstance of the settlement, the whole program.  Here's
12   somebody who did all of the remediation before the Court's
13   orders applied to this particular situation.  Under these
14   circumstances, where there was an effort to preserve -- we have
15   photographs.  We have hundreds of photographs.  We only have 10
16   photographs that actually meet PTO 1(B), but there was an
17   effort to preserve evidence that would meet the Florida
18   standard of preservation.
19          So in a litigation sense, Your Honor -- forget
20   the settlement.  If we were litigating this case, we would get
21   to a jury, and they would hear from the Kodsis, they would hear
22   from the superintendent, they would hear from the workers, and
23   they would have to make a determination as to what the KPT
24   percentage was.
25          Now we are in a settlement context.  We

10:41  1   presented valid evidence; some of it circumstantial, but it's
10:41  2   evidence nonetheless.  We ask Your Honor to evaluate it in the
10:42  3   sense and the spirit of the settlement, which was to compensate
10:42  4   people who were harmed by this drywall.  Thank you, Your Honor.
10:42  5          THE COURT:  Okay.  Thank you.
10:42  6          Do you have something else?
10:42  7          MR. DYSART:  You just one point, Your Honor.  Going
10:42  8   back to the evidence, this evidence was all heard by the
10:42  9   special master and rejected by the special master.  Based on
10:42  10  the affidavits and inspection reports, this was all
10:42  11  documentation that he reviewed.  Under the terms of the
10:42  12  settlement agreement, which is where we are -- we are in the
10:42  13  four corners of that document with respect to judging this
10:42  14  claim -- the special master made that determination to reduce
10:42  15  the claim.
10:42  16         THE COURT:  Let me take all of the arguments, and I
10:42  17  will come out with an opinion on it.  I'm not going to rule
10:42  18  from the bench.  Thank you.

19                          <u>**CERTIFICATE**</u>

20         I, Toni Doyle Tusa, CCR, FCRR, Official Court
       Reporter for the United States District Court, Eastern District
21     of Louisiana, certify that the foregoing is a true and correct
       transcript, to the best of my ability and understanding, from
22     the record of proceedings in the above-entitled matter.

23

24

25                          <u>*s/ Toni Doyle Tusa*</u>
                            Toni Doyle Tusa, CCR, FCRR
                            Official Court Reporter

**$**

$1.9 [1]  13/17
$1.9 million [1]  13/17
$3,180,499.28 [1]  6/25
$3.2 [4]  5/11 13/15 13/16 13/19
$3.2 million [4]  5/11 13/15 13/16 13/19
$31.80 [1]  7/1
$500 [3]  3/21 12/24 13/24

**0**

09-MD-2047 [1]  1/4

**1**

10 [6]  5/22 5/24 15/1 20/4 20/15 23/15
10-362 [1]  1/6
100 [1]  13/21
100 percent [4]  13/23 19/10 19/11 20/20
100,000 [5]  12/17 14/25 20/4 22/23 23/3
14 [3]  1/7 3/2 4/12
144 [1]  4/11
19106 [1]  1/15

**2**

2,000 [2]  12/17 23/2
20 [2]  14/6 15/4
2006 [2]  3/5 4/10
2009 [9]  4/15 4/23 5/1 5/2 10/19 11/13
14/22 16/19 16/19
201 [1]  1/18
2011 [2]  15/4 15/15
2015 [2]  1/7 3/2
2047 [2]  1/4 4/24
25 [1]  4/13
275 [1]  1/21

**3**

3600 [1]  1/18
362 [1]  1/6
39 [3]  4/13 12/8 20/20
39 units [1]  14/25

**4**

40 [2]  6/20 6/22
40 percent [2]  13/16 13/23

**5**

500 [2]  1/15 1/21
504 [1]  1/22
510 [1]  1/15
589-7778 [1]  1/22

**6**

60 percent [3]  6/18 6/19 13/17
60/40 [2]  6/20 6/22

**7**

70130 [1]  1/21
70170 [1]  1/19
7778 [1]  1/22

**8**

801B [2]  19/9 19/15

**9**

98 percent [1]  12/18

**A**

ability [1]  24/21
able [4]  3/16 3/22 7/15 20/24
about [9]  11/9 11/19 13/10 13/11 14/3
19/4 20/4 22/15 22/23
above [1]  24/22
above-entitled [1]  24/22

accordance [1]  14/18
according [1]  14/2
account [1]  10/23
accurate [1]  4/10
acting [1]  4/17
actually [5]  5/23 10/13 15/1 20/15 23/16
addition [1]  14/12
additional [1]  17/21
address [1]  13/8
addressed [3]  4/19 4/19 4/19
affected [5]  4/12 4/14 8/11 8/18 22/17
affiants [1]  5/21
affidavit [3]  10/10 13/1 17/21
affidavits [8]  4/21 5/12 18/22 18/23
18/24 18/25 19/14 24/10
affided [1]  5/15
affiliates [1]  11/3
affirmed [1]  21/25
afforded [1]  7/4
after [2]  10/19 17/6
again [2]  10/24 14/20
against [1]  20/8
agents [1]  11/3
agreed [4]  9/19 15/5 15/14 16/16
agreement [27]
aided [1]  18/5
all [22]  3/16 4/13 4/24 4/25 5/15 6/7
8/17 8/22 11/1 12/7 12/9 12/25 13/1
14/14 20/20 21/4 21/13 21/18 23/12
24/8 24/10 24/16
allegedly [1]  11/2
allocation [2]  6/16 6/23
allow [2]  9/6 15/23
almost [2]  20/2 21/11
already [6]  3/15 5/6 7/21 8/7 10/9 20/25
also [6]  4/21 5/1 6/1 6/3 6/11 6/15 14/2
15/8 16/20 16/20
am [1]  4/6
ambiguity [1]  10/24
amount [5]  3/20 3/24 9/6 9/12 15/24
ample [1]  15/8
and/or [1]  8/17
Another [1]  5/19
anticipated [1]  20/6
any [9]  9/17 10/16 17/10 17/14 18/2
19/16 22/16 22/17 22/18
anything [2]  6/19 22/18
apartments [1]  3/10
appeal [1]  22/9
appealing [1]  4/2
Appearances [1]  1/12
applicable [4]  9/8 13/22 16/7 21/16
application [3]  10/23 18/20 23/9
applied [2]  10/20 23/13
applies [1]  23/7
apply [7]  6/21 11/21 11/21 16/20 17/18
17/23 18/15
appropriate [1]  13/22
approved [1]  15/6
approximately [1]  7/1
are [44]
areas [2]  4/14 12/8
argue [2]  4/7 17/22
argued [2]  6/20 12/12
argument [6]  1/10 11/15 14/2 14/8 18/12
18/14
arguments [6]  14/16 16/19 17/16 17/18
22/10 24/16
ARH [5]  15/18 15/18 15/19 16/12 19/24
as [33]
ask [1]  24/2
Askew [1]  5/13
asking [1]  13/17

at [21]  3/13 4/25 5/21 6/17 7/7 7/9 7/10
9/7 11/6 11/25 12/6 12/17 13/9 13/16
13/24 14/23 16/11 19/19 21/8 21/9
22/13
authority [1]  10/2
available [9]  3/13 4/6 6/2 8/19 8/21 8/23
11/9 12/3 21/2
Avenue [1]  1/18
award [1]  10/3
awarded [1]  3/21
aware [1]  4/17

**B**

back [10]  5/2 14/20 15/14 16/14 17/5
17/11 20/24 21/6 22/14 24/8
background [2]  3/5 14/20
Baker [1]  1/17
Balhoff [7]  9/1 9/3 9/14 10/13 12/13
12/23 14/6
Banner [22]  3/7 6/3 6/4 6/5 6/6 6/6 6/8
6/10 6/13 6/16 6/16 6/19 6/23 12/15
17/19 17/19 18/13 18/15 18/17 19/6
22/22 22/25
Banner's [1]  19/4
based [4]  18/13 21/16 21/18 24/9
basically [2]  9/2 12/25
be [30]
Bearman [1]  1/17
became [4]  3/8 4/15 4/17 11/17
because [16]  3/22 6/18 6/19 7/7 7/16
7/18 10/5 10/25 12/11 13/6 18/6 18/14
19/8 19/15 22/21 23/2
becomes [1]  8/24
been [5]  9/13 11/10 12/1 13/6 16/4
before [8]  1/10 3/10 4/24 16/14 21/19
22/2 22/3 23/12
began [6]  3/9 3/11 4/10 4/22 11/22
14/24
beginning [1]  10/6
behalf [4]  4/4 4/7 4/7 14/11
being [1]  20/17
believe [1]  7/18
believing [1]  7/15
bench [1]  24/18
benefit [2]  7/6 7/7
Berkowitz [1]  1/17
Berman [1]  1/14
best [11]  19/9 20/10 20/12 21/10 22/12
22/13 22/15 22/18 22/24 22/25 24/21
better [2]  19/12 20/16
between [2]  13/23 22/10
big [1]  23/3
bind [1]  17/3
bit [1]  8/1
blanketly [1]  11/14
board [17]  6/11 8/5 12/10 12/15 12/16
12/18 12/23 15/2 17/5 17/8 19/16 20/4
20/11 20/15 20/22 22/14 22/21
boards [3]  15/1 20/4 20/15
both [1]  19/6
bound [4]  15/10 15/13 18/8 21/20
brief [1]  14/16
bring [1]  22/19
building [4]  4/11 4/12 4/13 17/7
buildings [1]  4/12
but [11]  3/14 5/24 10/16 11/14 11/18
13/23 17/17 19/23 23/2 23/16 24/1
bypass [1]  18/25

**C**

calculate [1]  7/24
Caldwell [1]  1/17

## C

came [3]  6/25 12/22 13/11
can [4]  17/20 18/13 18/24 22/21
can't [1]  23/9
cannot [1]  17/23
case [4]  16/23 18/11 21/11 23/20
CCR [3]  1/20 24/20 24/25
certain [1]  9/19
CERTIFICATE [1]  24/19
certify [1]  24/21
challenged [1]  8/3
Charles [1]  1/18
CHINESE [8]  1/4 3/7 11/2 14/23 17/5
17/8 21/11 22/16
CHINESE-MANUFACTURED [2]  1/4
11/2
chose [2]  17/3 17/3
circumstance [1]  23/11
circumstances [1]  23/14
circumstantial [1]  24/1
claim [32]
claimants [7]  9/19 9/20 15/9 15/17 15/21
18/9 21/3
claims [3]  8/19 9/17 15/18
class [7]  14/19 15/4 15/6 15/12 18/7
19/1 21/19
clearly [1]  17/11
close [1]  17/15
Colson [2]  11/23 14/5
come [4]  5/2 10/17 22/14 24/17
comes [2]  10/15 16/12
coming [3]  5/16 10/21 19/17
commenced [1]  16/18
common [2]  4/14 12/8
Company [1]  6/4
compensable [1]  15/7
compensate [2]  15/17 24/3
compensated [1]  13/14
compensating [1]  13/11
complaint [1]  11/24
completed [1]  4/24
compliance [1]  11/11
complied [4]  5/23 9/7 10/5 15/25
comply [5]  3/23 9/25 13/12 17/14 18/9
complying [1]  9/18
computer [1]  1/25
computer-aided [1]  1/25
conceptually [2]  11/14 11/21
concerning [1]  8/10
concluded [1]  21/18
condominiums [1]  3/5
confirm [2]  4/22 12/24
confirmation [1]  20/2
confirming [1]  5/24
confirms [1]  5/20
confronted [1]  7/14
conscience [1]  5/4
consideration [2]  9/5 15/23
considerations [1]  16/21
considering [1]  3/12
consisted [1]  14/24
contain [1]  20/19
contained [1]  18/3
contemplated [1]  9/24
contemplates [1]  15/16
contest [1]  7/12
context [1]  19/24 23/25
contribution [1]  6/17
control [2]  8/12 21/2
controversy [1]  5/17
controverted [1]  5/17
corners [1]  24/13

correct [3]  15/1 19/7 24/21
costs [3]  5/17 19/23 19/23
19/23
could [5]  5/5 9/20 9/24 17/1 18/9
couple [2]  19/18 22/11
course [2]  8/2 8/23
COURT [18]  1/1 1/20 3/4 3/24 6/20 9/5
9/10 10/25 11/5 13/20 14/11 15/22 16/1
16/7 21/19 24/20 24/20 24/25
Court's [2]  23/8 23/12
covered [1]  19/25
created [1]  7/11
critical [1]  10/18
custody [2]  8/12 21/2

## D

DANIEL [1]  1/18
Danny [1]  14/11
date [3]  10/18 10/25 16/6
dated [1]  5/2
days [1]  14/6
December [5]  11/13 11/24 11/25 15/4
15/14
December 20 [1]  15/4
December 9 [1]  11/13
decided [1]  3/14
deciding [1]  6/21
decision [4]  14/15 14/17 21/16 21/16
declined [1]  3/20
decree [5]  14/6 14/13 15/12 21/24 22/6
defective [1]  11/2 14/23
defendant [1]  6/9
defendants [3]  1/17 14/11 15/3
defense [1]  12/14
definition [1]  15/6
delivered [1]  6/13
deliveries [1]  6/8
demand [1]  23/5
demo [1]  10/9
demolishing [1]  3/9
demolition [6]  4/22 4/25 5/15 10/7 10/20
12/6
demonstrate [1]  6/12
demonstrating [1]  6/7
denying [3]  12/25 13/1 13/2
described [1]  4/20
destroyed [1]  3/15
determination [7]  9/13 16/4 18/3 21/9
21/23 23/23 24/14
determine [1]  17/20
determined [1]  14/23
determining [2]  9/6 15/23
developed [1]  3/5
developer [2]  20/5 20/6
developers [3]  4/5 4/18 5/13
development [3]  4/5 4/10 6/14
diagram [1]  17/7
did [16]  6/19 9/14 9/20 11/12 12/4 13/13
15/12 16/13 16/14 17/13 18/7 19/3
19/15 19/16 21/20 23/12
didn't [6]  3/18 3/23 10/6 11/21 22/15
23/1
direct [1]  22/20
disallowance [2]  9/11 16/3
disallowed [2]  9/18 18/10
discounted [2]  12/13
discovery [1]  21/5
discussed [2]  19/21 21/14
dispute [7]  5/8 5/9 5/11 6/24 8/22 11/9
14/22
disputed [3]  5/19 6/1 6/15
disputes [2]  15/20 16/17
disputing [1]  19/22

distributed [1]  18/15
distribution [1]  12/11
DISTRICT [5]  1/1 1/2 1/11 24/20 24/20
do [8]  7/5 7/12 7/12 7/12 10/23 11/7
14/22 24/6
Docket [1]  1/4
document [2]  17/6 24/13
documentation [6]  8/10 8/12 17/7 21/1
21/5 24/11
documented [1]  21/10
does [3]  16/7 17/18 18/24
doesn't [2]  11/21 13/3
dollars [1]  3/21
don't [2]  11/14 19/15
done [5]  5/4 7/13 7/14 7/16 10/4 10/9
10/22
Donelson [1]  1/17
down [4]  10/15 10/17 12/4 13/24
Doyle [4]  1/20 24/20 24/24 24/25
drywall [41]
during [1]  8/18
duty [1]  17/24
DYSART [3]  1/18 14/11 22/11

## E

each [4]  17/5 17/8 20/11 20/22
EASTERN [2]  1/2 24/20
economy [1]  7/10
effort [4]  12/2 12/6 23/14 23/17
either [1]  19/21
ELDON [1]  1/10
else [2]  23/2 24/6
emphasized [1]  9/12
endurance [1]  7/12
enough [1]  3/18
entered [2]  16/6 16/14
enterprise [1]  18/18
entire [1]  12/16
entirely [1]  4/9
entities [1]  11/1
entity [1]  6/10
equal [1]  17/2
equity [1]  13/5
ESQ [2]  1/14 1/18
essence [2]  8/6 13/9
evaluate [1]  24/2
even [5]  10/6 11/21 12/13 17/13 19/15
ever [1]  6/20
everything [2]  12/12 12/13
evidence [52]
ex [2]  23/8 23/9
ex post facto [2]  23/8 23/9
exactly [1]  13/13
Exhibit [4]  5/21 8/6 15/19 20/25
Exhibit A [1]  15/19
Exhibit H [1]  5/21
exist [1]  10/6
existence [3]  4/24 7/16 7/17
expense [1]  11/4
experiencing [1]  7/2
extent [4]  8/11 13/20 14/4 21/1

## F

faced [1]  10/8
fact [5]  5/15 5/18 5/19 8/16 13/2 14/3
16/5
facto [2]  23/8 23/9
facts [2]  5/25 21/17
factual [1]  14/21
factually [1]  5/7
fail [1]  14/7
failed [2]  18/1 21/21

## F

fails [1] 18/14
failure [7] 9/10 9/13 14/17 16/2 16/3 18/2 21/22
faith [2] 7/15 13/12
fallback [1] 11/15
FALLON [1] 1/10
far [1] 7/1
FCRR [3] 1/20 24/20 24/25
Federal [1] 10/11
feel [2] 20/10 22/9
feet [6] 12/17 12/17 14/25 20/5 23/3 23/3
felt [2] 3/18 5/4
few [1] 17/17
file [1] 3/14
filed [2] 11/13 14/5
filing [1] 3/13
Finally [3] 6/24 18/22 21/13
finds [1] 9/20
firm [3] 11/23 13/21 14/5
first [6] 3/3 9/3 17/23 18/14 18/22 22/12
Fishbein [1] 1/14
floor [1] 17/6
Florida [4] 3/6 4/16 11/13 23/17
following [1] 11/4
follows [1] 21/7
foot [1] 7/1
foregoing [1] 24/21
forget [1] 23/19
form [5] 6/9 6/10 8/20 12/15 17/7
Fort [1] 3/6
Fort Pierce [1] 3/6
forth [4] 15/6 16/20 20/3 21/6
forward [9] 8/3 10/16 10/18 10/25 13/11 16/6 16/12 16/13 22/19
found [1] 18/10
four [2] 5/15 24/13
fraction [1] 12/16
Fred [1] 4/3
FREDERICK [1] 1/14
full [5] 13/18 15/9 17/1 17/8 21/18
fully [2] 4/20 19/11
further [1] 11/5
future [1] 3/9

## G

Gamez [1] 5/14
Gamez-Nino [1] 5/14
gap [1] 23/4
gave [2] 8/22 8/25
general [2] 16/21 17/25
generally [1] 11/19
get [4] 7/13 8/1 11/13 23/20
gets [1] 6/21
given [1] 23/9
go [3] 5/8 14/20 20/24
goes [1] 15/25
going [13] 5/25 6/15 7/5 7/14 8/8 8/9 8/9 9/25 10/16 11/15 21/5 24/7 24/17
gone [1] 13/2
Gonzalez [1] 4/6
good [5] 4/3 5/4 7/5 13/12 14/10
got [6] 11/24 12/11 19/5 19/6 22/19 23/2
gotten [1] 19/8
govern [1] 21/17
governs [1] 18/20
great [1] 7/9

## H

had [20] 3/15 4/14 6/5 6/10 6/11 7/12 8/9 10/2 10/20 10/22 11/7 12/1 12/10
12/15 17/1 19/2 20/7 20/18 21/11 22/14
hand [1] 20/1
hardship [1] 7/9
harmed [1] 24/4
has [8] 4/12 4/13 6/17 9/7 9/13 15/20 15/24 16/3
have [39]
having [5] 5/4 7/5 7/13
HB [1] 1/21
HB-275 [1] 1/21
he [18] 3/18 3/21 3/22 9/14 9/14 9/15 9/15 10/15 14/21 14/22 14/25 15/19 16/13 16/13 16/14 20/8 22/13 24/11
hear [5] 4/1 14/9 23/21 23/21 23/22
heard [1] 24/8
hearing [1] 22/13
here [6] 4/6 7/18 8/22 9/4 9/17 10/18 11/8 13/6 14/3
here's [1] 10/16 23/11
Hicks [2] 11/23 14/5
highlighted [1] 9/16
his [6] 10/13 14/15 15/11 21/15 21/16 22/5
history [1] 4/9
hold [1] 22/22
home [1] 7/22
homes [3] 5/6 8/7 15/18
honestly [1] 13/5
Honor [27]
Honor's [1] 16/6
HONORABLE [1] 1/10
hope [1] 14/3
how [5] 7/23 10/17 10/22 12/10 12/20
However [1] 21/7
huge [1] 7/11
hundreds [6] 12/4 12/5 18/16 22/22 22/23 23/15

## I

I'll [2] 4/1 5/2
I'm [2] 13/15 24/17
Ian [1] 5/13
ID [1] 20/8
identification [1] 16/22
if [9] 6/20 9/7 9/12 16/3 16/25 19/7 22/17 22/24 23/20
ignored [2] 10/12 10/13
III [1] 8/16
images [1] 8/17
immediately [1] 17/6
impact [1] 8/24
impermissible [1] 23/8
importantly [1] 18/5
imposed [1] 17/24
in [91]
inaccurate [1] 19/14
include [2] 10/2 18/8
included [3] 9/17 16/10 16/17
incurred [1] 5/10
Indeed [1] 9/19
indicated [1] 9/22
indicates [1] 6/10
indicative [1] 20/17
information [2] 3/19 8/23
initial [1] 3/10
insisted [1] 6/18
inspected [1] 19/11
inspection [6] 6/2 11/9 20/17 20/18 20/19 24/10
installed [3] 15/2 20/4 20/16
instance [2] 4/20 23/10
instances [3] 7/22 9/24 10/1
insufficient [3] 8/4 18/23 18/25

intend [1] 11/1
into [8] 7/14 8/1 8/8 8/9 8/9 9/5 10/21 15/23
inure [2] 7/6 7/7
invoices [3] 6/7 6/12 22/22
involves [1] 5/5
irrelevant [1] 18/6
is [88]
issue [3] 14/4 14/16 19/19
issued [1] 10/19
issues [1] 14/21
it [57]
it's [21] 4/21 5/25 6/3 6/15 6/19 8/20 10/13 11/7 12/11 12/25 13/1 13/2 16/7 16/10 16/13 19/8 20/20 20/21 23/2 23/10 24/1
its [4] 7/5 7/19 17/9 18/2
itself [1] 17/25
IV [2] 9/4 21/7

## J

JUDGE [1] 1/11
judged [1] 18/13
judging [1] 24/13
July [2] 1/7 3/2
jury [1] 23/21
just [12] 7/22 9/22 10/16 11/18 12/25 13/3 17/25 19/18 19/19 20/21 21/13 24/7
justify [1] 3/19

## K

keep [1] 14/16
kept [1] 22/13
kicker [1] 12/9
kill [1] 7/19
Knauf [25]
Knauf's [3] 5/9 7/7 18/3
knew [2] 10/11 19/2
knowledge [2] 4/8 4/16
knows [1] 12/11
Kodsi [5] 1/14 1/14 4/4 5/12 5/13
Kodsis [10] 4/7 4/10 4/17 6/7 7/9 8/22 10/8 11/20 13/13 23/21
KPT [25]

## L

language [6] 8/15 9/16 10/18 11/6 11/6 11/19
last [2] 10/11 23/5
laundry [1] 13/3
law [4] 9/8 9/11 16/2 18/20
laws [1] 23/8
lawsuit [2] 3/13 3/14
least [3] 4/25 5/22 22/13
less [1] 7/1
let [3] 14/9 20/24 24/16
Levin [1] 1/14
liability [4] 1/5 16/23 18/18 20/7
like [3] 7/23 18/17 22/10
limited [1] 20/2
list [1] 13/3
listed [1] 11/8
listened [1] 22/10
listening [1] 4/8
litigating [1] 23/20
litigation [6] 1/5 11/22 16/21 18/1 20/7 23/19
little [1] 8/1
location [1] 17/8
LONGER [1] 1/14 4/3 14/21
look [3] 10/17 16/11 21/8
looking [2] 9/3 21/8

**L**

lost [2]  3/8 3/9
lot [1]  18/17
LOUISIANA [6]  1/2 1/6 1/19 1/21 18/20 24/21
Lucie [6]  6/4 6/6 6/13 12/15 19/5 19/7
Lucie's [1]  6/9

**M**

made [3]  3/15 6/2 24/14
main [2]  17/16 17/18
make [2]  20/8 23/23
makes [1]  14/7
making [1]  14/15
Manuel [1]  5/14
manufactured [2]  1/4 11/2
manufacturer [1]  20/9
many [1]  14/21
market [1]  18/18
marketing [1]  7/11
markings [1]  17/10
master [18]  3/18 9/5 9/10 10/2 13/7
  14/15 15/11 15/22 16/1 17/12 18/10
  19/21 21/15 21/18 22/2 24/9 24/9 24/14
master's [4]  3/4 14/12 14/17 21/24
material [2]  3/15 3/17
matter [4]  14/14 19/9 20/12 24/22
Maurice [3]  1/14 4/4 5/12
may [5]  3/14 4/23 8/15 14/10 14/22
May 2009 [1]  14/22
MD [1]  1/4
MDL [5]  3/11 4/24 7/16 9/8 15/25
me [5]  4/2 14/9 20/24 22/3 24/16
mean [3]  9/16 11/14 16/7
measure [1]  17/14
mechanical [1]  1/24
mechanism [1]  15/20
mediation [5]  8/2 8/24 12/22 19/20 22/7
meet [4]  17/1 20/24 23/16 23/17
member [3]  15/12 18/7 21/19
merely [3]  17/23 20/2 21/3
messenger [1]  7/19
method [1]  17/20
million [6]  3/21 5/11 13/15 13/16 13/17
  13/19
mitigate [1]  3/9
money [1]  7/10
month [1]  3/10
Montoya [1]  4/6
more [4]  3/22 8/1 18/5 20/17
morning [2]  4/3 14/10
most [1]  17/11
motion [2]  3/3 3/3
Mr. [11]  4/6 4/6 9/1 9/3 9/14 10/13 12/13
  12/23 14/6 14/21 22/11
Mr. Balhoff [7]  9/1 9/3 9/14 10/13 12/13
  12/23 14/6
Mr. Dysart [1]  22/11
Mr. Gonzalez [1]  4/6
Mr. Longer [1]  14/21
Mr. Montoya [1]  4/6
much [1]  12/20
must [1]  19/8
my [4]  4/8 13/2 14/16 24/21

**N**

need [2]  18/9 21/4
needed [1]  20/21
negotiated [3]  7/21 16/10 16/16
negotiation [2]  8/10 12/20
negotiations [2]  7/25 9/25
new [4]  1/6 1/19 1/21 3/5

Nino [1]  5/14
no [10]  3/18 4/18 5/24 7/5 8/3
  8/22 11/9 21/5 22/6
nobody [2]  12/11 16/17
non [1]  22/16
non-KPT [2]  22/16
none [2]  20/18 21/11
nonetheless [1]  12/2
nonexistent [1]  20/3
nor [1]  19/16
not [46]
note [3]  14/22 19/19 21/13
notice [2]  15/9 17/2
notion [1]  8/15
now [16]  4/1 4/8 5/7 7/14 7/18 8/24 9/1
  11/22 13/15 13/16 15/4 16/15 17/16
  21/19 23/1 23/25
nowhere [1]  18/23
numbers [1]  13/15

**O**

objection [1]  14/5
obligation [1]  7/19
obliged [1]  11/16
obviously [3]  19/7 21/4 23/1
Oceanique [26]
Oceanique's [4]  3/3 14/17 17/16 18/14
October [5]  5/1 5/2 10/19 14/24 16/18
October 2009 [1]  5/1
October 9 [2]  5/2 10/19
off [1]  13/16
Official [3]  1/20 24/20 24/25
Okay [3]  14/1 22/8 24/5
on [23]  4/4 4/7 4/7 4/7 5/9 6/25 7/25
  10/19 12/2 13/8 14/8 14/8 14/11 15/2
  15/25 17/6 17/10 18/13 19/18 21/16
  21/18 24/9 24/17
Once [1]  3/7
one [14]  3/10 3/17 3/22 4/12 5/23 7/23
  12/9 12/23 12/23 15/2 20/4 22/14 23/2
  24/7
only [15]  5/23 6/11 9/19 12/14 12/15
  12/23 15/1 15/2 19/5 19/11 20/14 20/19
  22/11 23/1 23/15
onto [1]  11/24
opinion [7]  3/4 14/6 14/12 15/11 21/24
  22/6 24/17
opportunity [3]  15/9 17/1 19/2
opposed [1]  7/5
oppositions [1]  14/13
opt [6]  15/9 15/12 17/2 18/7 19/2 21/20
or [28]
ORAL [1]  1/10
order [23]  3/8 3/23 5/1 9/7 9/18 9/21
  10/5 10/15 10/17 10/19 10/23 11/5
  11/15 11/17 11/17 11/18 15/25 16/8
  16/20 16/24 21/9 23/6 23/8
orders [2]  11/11 23/13
Orleans [3]  1/6 1/19 1/21
other [7]  4/13 12/18 13/8 17/7 19/8
  19/18 20/18
others [1]  17/17
our [2]  3/3 5/21
out [11]  5/16 6/25 15/9 15/12 17/2 18/7
  19/2 19/17 21/20 23/3 24/17
outright [1]  7/16
over [4]  5/17 5/18 14/25 20/4
own [2]  7/5 11/4
owner [3]  8/13 9/7 15/24
owners [2]  8/9 8/19

**P**

Page [1]  2/2

papers [3]  5/21 14/13 21/19
paragraph [1]  7/25
part [5]  4/21 6/8 6/16 7/20 12/2
partial [1]  17/8
participate [1]  5/5
particular [1]  23/13
parties [7]  4/1 8/8 16/10 16/16 17/4
  19/21 21/15
parties' [1]  16/24
pay [3]  7/7 7/20 9/19
PC [1]  1/17
pending [2]  8/19 9/8
Pennsylvania [1]  1/15
people [3]  9/24 13/11 24/4
percent [12]  6/18 6/19 12/18 12/18
  13/16 13/17 13/21 13/23 13/23 19/10
  19/11 20/20
percentage [3]  7/24 8/1 23/24
period [1]  12/23
persons [1]  11/1
Philadelphia [1]  1/15
photograph [3]  5/23 17/5 17/9
photographic [5]  5/20 10/10 11/10 13/1
  21/10
photographs [15]  5/22 5/24 8/17 12/3
  12/4 12/5 12/6 17/9 17/12 20/11 20/22
  22/21 23/15 23/16 23/16
pictures [2]  3/16 3/17
Pierce [1]  3/6
place [2]  10/7 10/20
places [1]  19/8
plaintiffs [2]  6/1 8/9
plan [3]  6/16 6/23 17/7
please [1]  14/10
point [7]  6/21 10/24 12/1 14/24 22/12
  23/5 24/7
points [2]  19/18 22/11
Port [7]  6/4 6/6 6/9 6/13 12/15 19/5 19/6
Port St. Lucie [5]  6/4 6/6 6/13 12/15
  19/5
Port St. Lucie's [1]  6/9
position [4]  3/19 3/23 13/9 20/21
possession [2]  8/12 21/2
post [2]  23/8 23/9
potential [1]  3/8
Poydras [1]  1/21
practically [1]  13/24
precedes [1]  5/1
precludes [1]  10/16
pregnant [1]  8/15
prejudicial [4]  9/13 16/4 18/2 21/22
presence [1]  12/11
present [2]  10/13 14/18
presented [2]  12/24 24/1
presentment [1]  16/9
preservation [8]  3/14 9/9 11/18 11/19
  16/9 16/20 17/14 23/18
preserve [11]  9/10 11/4 11/16 12/2
  14/18 16/2 17/24 18/1 21/21 23/14
  23/17
preserved [3]  6/1 10/9 15/1
pretrial [19]  5/1 9/7 9/18 9/20 10/5 10/15
  10/17 10/19 10/23 11/11 11/15 11/16
  11/17 11/18 15/25 16/8 16/24 21/9 23/6
Pretrial Order [1]  11/15
pretty [1]  4/15
principals [1]  4/4
principles [1]  17/25
prior [6]  7/16 7/17 8/10 16/18 21/15
  22/17
problem [4]  3/7 4/17 4/18 7/11
proceeding [2]  3/11 22/1
proceedings [3]  1/24 3/1 24/22

## P

process [3]  5/6 8/2 8/24
product [3]  16/22 20/7 20/8
products [2]  1/5 16/23
profile [2]  6/9 6/9 12/15
program [1]  23/11
promptly [1]  4/19
proof [2]  10/10 10/16
proofs [5]  8/3 8/25 12/14 13/5 13/18
properties [1]  12/7
property [12]  8/11 8/18 12/10 15/2 17/9
18/3 18/16 20/5 20/16 20/18 21/12
22/17
prospective [1]  11/5
prospectively [2]  10/20 23/7
protocol [8]  7/22 8/7 9/23 15/19 15/19
19/24 20/25 22/15
prove [2]  16/22 20/7
provide [3]  8/10 10/2 11/7
provided [5]  4/9 5/12 8/18 12/13 15/8
provides [2]  8/6 8/8
provision [2]  7/24 21/3
provisions [1]  9/22
PSC [1]  15/5
PTO [20]  5/24 7/17 8/20 15/21 16/5 16/5
16/16 16/19 17/4 17/14 17/18 17/22
17/23 17/24 18/5 18/9 18/25 20/23
20/24 23/16
PTO 1 [10]  5/24 7/17 8/7 8/20 16/5 16/5
16/16 16/19 17/4 17/18 17/22
public [1]  3/8
purchased [1]  3/7
pursuant [2]  15/18 21/22
pursue [1]  11/1
pursuing [1]  17/25
put [1]  8/3

## Q

question [2]  8/24 10/21
quite [2]  9/23 13/4

## R

rate [2]  6/18 7/8
RE [1]  1/4
read [1]  9/14
really [7]  5/11 6/24 7/4 14/7 17/14 17/16
18/6
reasonableness [1]  19/20
recall [1]  6/4
recognition [1]  8/14
recognize [3]  9/15 13/3 19/15
recognized [6]  4/18 4/23 15/11 17/12
17/13 18/19
recognizing [1]  7/22
record [5]  4/21 5/12 6/8 14/14 24/22
recorded [1]  1/24
recover [2]  6/18 7/15 13/18
recovery [2]  13/6 13/19
reduce [2]  14/17 24/14
reduced [1]  18/10
reduction [9]  6/21 6/22 9/12 10/2 13/16
13/21 13/22 13/23 16/3
refinement [1]  17/24
regions [1]  6/5
rejected [1]  24/9
Relates [1]  1/6
relating [1]  11/2
relevant [1]  5/2
reliable [1]  18/15
remediate [2]  4/23 15/18
remediated [5]  5/6 5/16 7/21 8/7 20/25
remediating [2]  3/10 14/24

remediation [13]  4/25 5/10 8/11 8/18
19/23 22/7 23/12
remedy [2]  12/7 12/17
Remember [1]  7/20
removed [3]  8/17 17/6 17/9
repair [3]  4/22 7/2 7/13
repairs [2]  6/25 7/5
repeated [1]  10/24
reply [1]  22/11
report [3]  10/14 20/17 20/20
Reporter [2]  1/20 24/20 24/25
reports [2]  20/18 24/10
required [5]  8/20 9/11 16/2 16/21 16/22
requirements [2]  9/9 15/7
requires [1]  17/4
resolve [2]  12/20 15/20
respect [8]  15/20 16/5 17/22 18/6 18/12
20/1 22/6 22/13
respects [1]  18/22
respond [1]  17/17
response [1]  14/9
responsible [2]  4/18 5/14
result [4]  5/7 9/11 13/4 16/2
retained [2]  11/22 11/23
retrospective [1]  11/6
retrospectively [1]  10/22 23/7
review [5]  3/4 9/9 16/1 21/7 21/18
reviewed [4]  14/15 21/14 21/15 24/11
right [4]  4/8 7/13 7/13 10/18
rigid [1]  13/9
Robert [3]  1/14 4/4 5/12
rounding [1]  13/16
rule [1]  24/17
Rules [1]  10/12

## S

said [21]  6/11 10/6 11/17 14/21 14/22
15/19 20/19 22/11 22/13 22/16 23/6
23/10
sales [2]  3/8 3/9
samples [3]  11/8 20/1 20/1
satisfy [1]  9/21
savings [2]  7/4 7/8
saw [2]  5/16 19/16
say [5]  6/24 18/24 19/4 19/16 21/1
saying [2]  8/4 22/23
says [5]  8/16 8/16 9/4 10/25 16/13
Second [1]  19/14
Section [2]  1/5 21/7
sections [4]  6/1 12/2 17/10 17/11
Sedran [1]  1/14
sense [4]  16/22 18/18 23/19 24/3
sentence [1]  9/15
set [3]  16/20 16/24 20/3
sets [1]  15/6
settlement [39]
settlement's [2]  21/21 21/22
settlements [1]  9/20
several [3]  3/21 5/7 6/5
shall [3]  8/20 11/3 17/4
share [1]  18/18
sheet [2]  3/17 12/23
sheets [4]  3/6 3/22 6/12 22/24
shipped [1]  22/23
should [13]  6/21 7/6 9/2 13/6 13/13
13/18 13/24 15/10 17/10 20/8 20/24
21/3 22/10
show [2]  3/16 3/22
showed [1]  3/17
shown [1]  15/2
shows [1]  5/21
side [5]  5/9 13/8 14/8 17/5 17/11

similar [1]  17/7
simply [1]  17/6
sir [1]  4/8
site [1]  17/6
situation [5]  7/11 10/8 13/7 13/7 23/13
size [1]  21/11
slippage [1]  12/19
so [5]  4/6 7/4 10/8 10/21 11/5 11/20
12/1 12/16 12/25 17/10 18/15 21/9 22/9
23/3 23/19
software [1]  1/25
some [3]  3/21 10/2 24/1
somebody [1]  23/12
somehow [1]  12/16
Someone [1]  10/21
something [5]  19/4 19/22 21/6 23/2 24/6
Sometime [1]  4/15
somewhere [1]  13/23
sophisticated [1]  20/6
sought [3]  3/20 3/20 3/25
sounds [1]  18/17
southern [1]  4/16
special [22]  3/4 3/18 9/5 9/10 10/2 13/7
14/12 14/14 14/16 15/11 15/22 16/1
17/12 18/10 19/21 21/15 21/17 21/24
22/2 24/9 24/9 24/14
specific [1]  11/17
specifically [1]  21/8
spend [1]  7/9
spent [1]  6/25
spirit [1]  24/3
split [1]  6/20
square [7]  7/1 12/17 12/17 14/25 20/5
23/3 23/3
St [1]  1/18
St. [7]  6/4 6/6 6/9 6/13 12/15 15/9 19/7
St. Lucie [1]  19/7
standard [7]  16/8 16/11 17/1 18/2 20/23
23/6 23/18
state [2]  9/8 15/25
stated [1]  19/15
states [5]  1/1 1/11 15/22 21/8 24/20
stating [2]  19/22 21/3
stenography [1]  1/24
Street [2]  1/15 1/21
strong [3]  13/5 13/6 13/18
strongly [1]  9/23
subject [3]  9/9 11/4 16/1
submission [1]  8/20
submit [4]  21/3 21/4 21/6 21/24
submitted [3]  14/13 17/21 21/14
subparts [1]  6/5
subsidiaries [1]  11/3
substantial [1]  11/10
substantially [1]  10/5
such [3]  8/11 8/19 21/1
suggest [2]  23/3 10/4
suggests [1]  14/4
suit [1]  11/20
Suite [2]  1/15 1/18
sum [3]  9/2 9/15 13/9
summary [1]  10/25
superintendent [2]  5/14 23/22
supplied [5]  6/6 18/13 18/17 19/5 22/25
supplier [2]  6/9 20/8
supply [4]  3/7 6/4 18/24 23/1
support [1]  19/1
supportive [1]  19/13
suppose [1]  9/2
supposed [4]  10/1 12/20 13/10 13/11

## T

Taishan [10]  6/10 12/10 12/18 19/10

## T

Taishan... [6] 19/12 19/16 19/16 20/17 20/20 22/14
take [5] 9/5 12/4 14/7 15/23 24/16
taken [3] 6/17 10/20 17/10
talk [1] 22/15
talked [1] 11/18
talking [1] 20/3
tanking [1] 7/10
telephone [1] 4/8
tell [1] 9/3
tens [1] 12/5
terms [13] 6/5 9/16 9/17 10/11 15/11 15/14 17/3 18/8 18/8 21/17 21/21 21/22 24/11
testimony [1] 5/20
than [2] 7/1 19/12
Thank [3] 24/4 24/5 24/18
that [186]
that's [16] 5/2 6/8 7/24 9/25 10/1 11/16 12/19 12/19 12/25 13/9 13/12 13/13 13/25 17/15 19/5 20/4
their [13] 4/7 7/6 7/16 11/3 11/4 12/2 13/9 13/18 15/18 16/18 18/10 18/12 19/23
them [12] 3/21 4/14 5/8 6/2 7/7 7/11 7/12 8/23 11/21 11/22 11/23 11/23
themselves [2] 12/7 17/3
then [7] 3/14 11/7 12/12 13/21 19/7 22/25 23/5
there [36]
there's [28]
therefore [6] 3/20 3/24 14/15 15/13 18/8 21/23
these [8] 5/20 5/24 6/7 9/16 9/17 9/20 17/3 23/13
they [82]
thing [1] 7/13
things [1] 5/7
think [8] 3/17 3/21 11/23 11/24 13/4 13/13 13/17 13/22
this [37]
those [4] 8/19 18/8 18/25 19/23
though [1] 12/14
thousands [4] 3/6 6/12 18/16 22/23
three [2] 17/16 17/17
through [6] 3/13 7/24 8/7 8/7 13/2 14/20
throughout [1] 4/16
time [4] 3/13 7/10 10/7 22/10
timeliness [3] 14/3 14/4 14/8
timely [1] 14/7
timing [1] 18/5
today [1] 21/14
together [1] 4/13
Toni [4] 1/20 24/20 24/24 24/25
took [3] 3/23 9/15 10/7
transcript [3] 22/1 22/6 24/21
transcription [1] 1/25
transfer [1] 3/11
Tricon [1] 4/5
tried [1] 13/12
true [1] 24/21
try [1] 14/15
trying [1] 7/19
Tusa [4] 1/20 24/20 24/24 24/25
twice [1] 22/13
two [2] 4/11 12/17

## U

unaccounted [1] 12/19
uncertainty [1] 7/23
uncontroverted [2] 5/25 6/3

under [8] 15/7 16/9 18/2 18/19 18/19 20/1 23/2 23/6
understand [2] 12/14 14/7
understanding [1] 24/21
Understood [1] 16/15
undisputed [2] 17/13 19/9
uniform [1] 18/15
unique [2] 13/7 23/10
uniqueness [1] 13/8
unit [9] 12/10 19/9 19/10 19/10 19/10 19/11 22/14 23/1 23/2
UNITED [3] 1/1 1/11 24/20
units [12] 4/11 4/12 4/13 4/13 5/16 7/13 8/5 12/8 14/25 19/17 20/18 20/20
unreliable [1] 12/12
until [4] 11/13 11/22 14/24 16/19
up [3] 12/22 14/24 16/19
us [1] 21/5
used [2] 6/22 17/20
using [2] 1/24 3/6
utilizes [1] 15/21

## V

valid [2] 10/11 24/1
various [1] 14/13
very [5] 11/17 13/5 13/6 13/9 20/2
video [1] 8/17
viewed [1] 19/24
visible [1] 17/11

## W

wall [1] 17/10
Walnut [1] 1/15
want [6] 8/1 14/22 15/10 19/19 20/8 21/23
wanted [2] 5/8 6/22
was [61]
way [3] 3/4 9/2 11/12
we [34]
well [7] 6/8 8/5 9/22 11/16 12/12 19/8 22/20
went [4] 5/6 12/7 16/6 16/19
were [22] 3/16 3/22 3/24 4/6 5/10 5/10 5/11 5/13 6/12 7/9 9/25 11/8 11/16 11/20 11/22 13/15 13/17 15/1 15/14 18/16 23/20 24/4
what [21] 7/12 8/5 8/24 9/3 10/4 11/7 11/16 12/22 13/3 13/10 13/13 14/14 16/21 19/22 19/24 19/25 20/11 21/2 22/3 22/11 23/23
whatever [1] 21/4
when [5] 3/15 4/18 9/14 16/12 21/8
where [16] 7/23 8/19 8/20 9/24 10/1 10/8 10/15 10/17 12/19 12/19 13/25 19/5 21/2 21/5 23/14 24/12
whether [5] 9/6 9/7 15/23 15/24 18/3
which [25]
who [12] 4/4 4/5 5/13 5/13 5/14 10/22 11/1 11/1 13/11 20/5 23/12 24/4
whole [3] 7/24 13/10 23/11
why [6] 5/2 7/18 7/24 9/25 10/1 13/13
widespread [1] 4/15
will [8] 9/5 9/11 14/15 15/17 15/23 16/2 17/17 24/17
within [1] 14/6
witnesses [1] 5/15
won't [1] 14/20
work [3] 4/22 7/16 12/6
workers [1] 23/22
worst [1] 22/18
would [22] 7/7 7/15 7/22 7/23 7/25 9/18 9/24 13/8 14/3 16/16 16/20 16/22 19/23 20/6 20/7 21/23 23/17 23/20 23/21 23/21 23/22 23/23

## Y

yawning [1] 23/4
yes [3] 20/13 21/9 22/4
yet [1] 10/12
you [17] 4/9 4/20 6/4 9/3 10/23 18/24 20/10 20/21 21/6 21/8 22/18 22/21 24/4 24/6 24/6 24/7 24/18
your [31]
Your Honor [24] 4/3 4/20 4/23 5/3 5/25 6/15 8/14 9/17 9/23 10/6 11/6 11/12 13/4 14/10 15/6 16/15 20/23 22/5 23/5 23/7 23/19 24/2 24/4 24/7
Your Honor's [1] 16/6

## Z

zero [4] 9/2 9/15 13/9 13/24