UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO:<br>*Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al.*, Case No. 2:09-cv-6687 (E.D. La.) | |

**BEIJING NEW BUILDING MATERIALS PUBLIC LIMITED COMPANY'S AND BEIJING NEW BUILDING MATERIAL (GROUP) CO., LTD.'S NOTICE OF JOINDER IN CNBM ENTITIES' REPLY TO PSC'S OPPOSITION TO MOTION TO CLARIFY OR VACATE THE JULY 17, 2014 CONTEMPT ORDER**

Defendants Beijing New Building Materials Public Limited Company ("BNBM PLC") and Beijing New Building Material (Group) Co., Ltd. ("BNBM Group") hereby join in and adopt the concerns and positions set forth in the CNBM Entities' Reply to the PSC's Response in Opposition to the Motion to Clarify or Vacate the July 17, 2014 Contempt Order (Rec. Doc. 19356-2, the "CNBM Entities' Reply").

BNBM Group and BNBM PLC agree with the CNBM Companies that the PSC's response fails to address the threshold legal infirmities in the Court's July 17, 2014 contempt order, including: (1) the order's attempt to enjoin parties who are identified only as unspecified "affiliates" of Taishan; (2) the order's overly broad and equally vague prohibition against such parties "conducting any business in the United States;" (3) the lack of required due process and procedural safeguards given the admittedly criminal penalties imposed by the contempt order; and (4) whether the Court had personal jurisdiction over either BNBM PLC or BNBM Group.

1

For all of the reasons articulated by the CNBM Companies, the order must be clarified to make clear that it does not apply to BNBM PLC or BNBM Group, or must be vacated in relevant part.[1]

Rather than address these threshold issues, the PSC instead offers an irrelevant and largely post facto recitation of supposed relationships, transactions and alleged misdeeds of the defendant companies, none of which have anything to do with whether the Contempt Order was unduly vague or overly broad on its face, or whether the proper procedural safeguards were employed for a criminal contempt proceeding.

With respect to the BNBM defendants in particular, one aspect of the PSC's response must be addressed. At pages 31-33 of its response, the PSC purports to detail certain BNBM Group transactions they claim violated the injunction. The PSC identifies WH International, Inc. ("WHI"), Hull Forest Products ("Hull"), Baillie Lumber Co. ("Baillie"), Western Wood Lumber Company ("Western Wood") and the Hampton Companies ("Hampton"), (collectively, the "Timber Companies"), as the companies from whom BNBM Group supposedly bought millions of dollars of lumber during the contempt period.[2] While all of these transactions are

---

[1] The Order on its face purports to restrain Taishan and its "subsidiaries and affiliates," but the term "affiliates" is nowhere defined. Neither BNBM PLC nor BNBM Group are Taishan subsidiaries, and on the face of the Order one cannot determine whether either was intended to be covered by the term "affiliates." BNBM Group is owned by CNBM Group (75%) and CNBM Trading (25%), and neither has nor ever had any direct or indirect ownership interest in Taishan. It is therefore difficult to see how BNBM Group can reasonably be characterized as a Taishan "affiliate" under any reasonable definition of the term. BNBM PLC does have a 65% ownership interest in Taishan, but BNBM PLC is not alleged to have engaged in any timber purchases or otherwise done anything that the PSC considers violating the contempt order. Moreover, BNBM PLC and Taishan have separate management and again it is not clear whether that kind of relationship is what was contemplated by the term "affiliates." BNBM Group sold its interest in BNBM PLC in 2005, before BNBM PLC acquired any interest in Taishan.

[2] The PSC does not argue that defendant Beijing New Building Materials Public Limited Company ("BNBM PLC") was doing business in the United States during the contempt period.

2

irrelevant to the questions presented on this motion, the PSC's inaccurate descriptions nonetheless once again require a response.[3]

The record facts demonstrate that in each instance identified by the PSC, BNBM Group was not doing business in the United States. On the contrary, the Timber Companies were selling timber products *into China*. Plaintiffs concede that BNBM Group "act[ed] as an agent for various *Chinese* customers," "would pre-charge a guarantee deposit to its customers, issue a letter of credit to the U.S. companies," "and upon arrival of the goods in China, BNBM Group would facilitate customs clearance." "Ultimately *the Chinese customers of* BNBM Group would pay the company for the goods, in addition to an agency fee to BNBM Group." (Brief at 36 (emphasis added)).[4]

The facts demonstrated in the depositions of the Timber Companies show that BNBM Group sold no products into the United States during the contempt period and that no American company paid any money to BNBM Group during the contempt period.[5] There is no

---

[3] This is not the first time that the PSC has mischaracterized the nature of the Timber Company transactions, and the BNBM Companies have previously addressed many of these same inaccuracies. *See, e.g.*, PSC's Emergency Motion To Extend Discovery Deadline With Respect To The Contempt Track Discovery, filed 6/12/15 (Rec. Doc. 19124), and BNBM's Response thereto, filed 6/15/15 (Rec. Doc. 19136). The uncontroverted record facts simply do not support the PSC's version of the events, and it is unfortunate indeed that the PSC nonetheless persists in advancing these discredited assertions yet again.

[4] The plaintiffs refer to the letters of credit issuing to the "U.S. companies it dealt with," but this characterization is incorrect in two respects: the deposition testimony shows that BNBM Group did not deal with any of the U.S. timber exporters during the contempt period, and the letters of credit issued to their banks, not to the companies.

[5] *See, e.g,* Deposition transcript of Jin Wooh, the 30(b)(6) witness for WHI, May 21, 2015, at 103:10-13. A copy of Mr. Wooh's deposition transcript is attached hereto as exhibit 1 and cited herein as "Wooh tr."; transcript of deposition of Philip Fenwick, the 30(b)(6) witness for Baillie Lumber, at 85:21-86:4 (a copy of Mr. Fenwick's deposition transcript is attached as exhibit 4 and cited herein as "Fenwick tr.").

documentary evidence to the contrary. BNBM Group did not come to the U.S. to meet with the Timber Companies.[6] BNBM Group did not communicate directly with the Timber Companies in the United States, and any communications by BNBM Group with U.S. timber exporters during the contempt period occurred in China with Chinese businessmen.[7] BNBM Group's only role with the Timber Companies was to issue letters of credit or, in the case of Baillie, to arrange for payment on behalf of the Chinese buyer, and to act as the import agent for unrelated Chinese companies that were importing timber.[8] The letters of credit all were issued by Chinese banks.[9] The Chinese companies or the Chinese agents of the U.S. timber companies selected BNBM Group to act in this role.[10] And, in the case of Hampton, the only reference in the underlying documents to a BNBM transaction shows a sale from Hampton's Canadian company in Canada to BNBM PLC in China. (Herman aff. ex. 47, pp. 1-2.[11]). There is no U.S. nexus whatsoever.

Nonetheless, by relying on these transaction in their Opposition, the PSC inadvertently has underscored the very reason why clarification or modification of the July 17, 2014 Contempt Order is required. The term "affiliates" is so broad that PSC is attempting to apply it to BNBM

---

[6] *See, e.g.,* Wooh tr. 98:18-24; transcript of deposition of Samuel I. Hull, 30(b)(6) witness for Hull Forest products, May 13, 2015, at 22:4-8 (a copy of Mr. Hull's deposition transcript is attached as exhibit 2 and cited herein as "Hull tr."); *cf.* transcript of deposition of John Salamanca, the 30(b)(6) witness for Western Wood, at 209:7-16 (a copy of Mr. Salamanca's deposition transcript is attached as exhibit 3 and cited herein as "Salamanca tr."); Fenwick tr. 79:10-80:15.

[7] *See, e.g.,* Wooh tr. 98:11-17, 99:10-100:10, 109:4-23: Salamanca tr. 209:7-16; Hull tr. 20:11-16; Fenwick tr. 17:6-8, 35:14-17, 79:10-80:15.

[8] *See, e.g.,* Wooh tr. 109:24-110:9; Hull tr. 104:16-105:14; Fenwick tr. 11:7-12:18.

[9] *See, e.g.,* Hull tr. Ex. 2; Wooh tr. 88:5-11, 92:1-9, 93:10-19, 94:17-95:1, 96:1-10, Exs. 8-12; Salamanca Exs. 10, 16, & 21.

[10] *See, e.g.,* Hull tr. 21:3-19; Fenwick tr. 11:7-12:18.

[11] A copy of Exhibit 47 to the affidavit of Russ M. Herman is attached hereto as Exhibit 5.

4

Group, an entity that has no direct or indirect ownership interest in Taishan whatsoever. The term "business in the United States" is so broad and undefined that the PSC is attempting to sweep within its terms business done in China with Chinese companies and the China-based agents of American companies, despite that the business involves sales initiated by American sellers through their Chinese agents into China with no negotiations on U.S. soil, no transactions save letter of credit draws or payments on U.S. soil, and no "profits" derived on any ultimate sales of finished product in the U.S.

## CONCLUSION

WHEREFORE, for all the reasons set forth in the CNBM Entities' Reply, BNBM PLC and BNBM Group respectfully request that the Court grant CNBM Entities' Motion to Clarify or Vacate the July 17, 2014 Contempt Order.

Dated:  August 4, 2015                                                   Respectfully submitted,

**DENTONS US LLP**

By: */s/ Michael H. Barr*
Michael H. Barr
New York Bar No. 1744242
Justin N. Kattan
New York Bar No. 3983905
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
michael.barr@dentons.com
justin.kattan@dentons.com

- AND -

Richard L. Fenton
Illinois Bar No. 3121699
Leah R. Bruno
Illinois Bar No. 6269469
233 South Wacker Drive
Suite 5900
Chicago, IL  60606-6306
Telephone:  (312) 876-8000
Facsimile:  (312) 876-7934
richard.fenton@dentons.com
leah.bruno@dentons.com

- AND -

C. Michael Moore
Texas Bar No. 14323600
Gene R. Besen
Texas Bar No. 24045491
2000 McKinney Ave, Suite 1900
Dallas, TX  75201
Telephone:  (214) 259-0900
Facsimile:  (214) 259-0910
mike.moore@dentons.com
gene.besen@dentons.com

**- AND -**

**PHELPS DUNBAR LLP**

Harry Rosenberg
Louisiana Bar No. 11465
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130
harry.rosenberg@phelps.com

*Attorneys for Beijing New Building Material (Group) Co., Ltd. and Beijing New Building Materials Public Limited Company*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Beijing New Building Materials Public Limited Company's and Beijing New Building Material (Group) Co., Ltd.'s Notice of Joinder in CNBM Entities' Reply to PSC's Opposition to Motion to Clarify or Vacate the July 17, 2014 Contempt Order has been served on Plaintiffs' Liaison Counsel, Leonard Davis, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 4th day of August, 2015.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　*/s/     Michael H. Barr*