UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL No. 2:09-md-2047 |
| | SECTION L |
| **THIS DOCUMENT RELATES TO:** | JUDGE ELDON E. FALLON |
| ***Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al., Case No. 2:09-cv-6687 (E.D. La.)*** | MAGISTRATE JUDGE JOSEPH C. WILKINSON, JR. |

**REPLY TO PSC'S RESPONSE IN OPPOSITION TO CNBM ENTITIES' MOTION TO CLARIFY OR VACATE THE JULY 17, 2014 CONTEMPT ORDER**

Plaintiffs have submitted a voluminous response, but the vast bulk of that response concerns an issue that is not even relevant to this motion—i.e., whether certain corporate entities (including entities that are not movants on these papers, nor indeed even defendants in the MDL) are the alter egos of Taishan.  As Plaintiffs concede, that issue is presented in other motions— e.g., the CNBM Entities' Rule 12 Motion to Dismiss—and is the subject of ongoing discovery. And as Plaintiffs also tacitly acknowledge, that issue has no bearing on whether the contempt-related injunction entered by this Court in July 2014 (1) was clear on its face as to the parties and conduct enjoined, as required by Rule 65(d)(1), and (2) could permissibly have been applied to non-parties under Rule 65(d)(2).

What is most telling is that Plaintiffs do not even discuss these questions until page 38 of their opposition, and even then they barely address the clear legal authority on point.  Instead, Plaintiffs argue over and over and over that all entities with any investment in (or invested in by) a company even distantly related to Taishan are one and the same.  They do so only by resort to a misleading misrepresentation of testimony and documents, supported by a lengthy affidavit from Plaintiffs' counsel that consists of argument and is wholly devoid of personal knowledge.  This is

not the time to rebut or correct those factual errors which, again, are not relevant to the legal questions actually presented in the instant motion; the CNBM Entities will address those issues in their proper course.

The questions presently before the Court are narrow:  To whom does the Injunction apply, and what conduct does it preclude?  Simply put, the Contempt Order and accompanying Injunction cannot have been meant to apply to the CNBM Entities, because if they were so broad, they would be flatly contrary to law.  As recent filings have demonstrated, the CNBM Entities are not alone in their request for clarity.  Another federal judge in Texas reviewed this Court's injunction and, at a loss for how to proceed in unrelated litigation with a non-party to the MDL, stayed the case and directed the parties to petition this Court for clarification.  This is precisely the situation that Rule 65 is meant to guard against, and it is why that rule requires that injunctions be both clear on their face, and narrowly circumscribed in their application to non-parties.

If, instead, the Contempt Order were construed to apply to an undefined array of unnamed, non-party corporations and to enjoin a broad and unspecified array of (wholly unrelated) commercial conduct, then the Order would violate both Rule 65 and the constraints of Due Process.  Under the Federal Rules, non-parties may only be enjoined if they are "officers, agents, servants, employees, and attorneys" of parties with actual notice or "other persons who are in active concert" with those individuals. Fed. R. Civ. P. 65(d)(2); Memo in Support of Motion to Clarify or Vacate the Contempt Order, Rec. Doc. 19271-1 at 5 (hereinafter "Motion"). The conduct enjoined must be "describe[d] in reasonable detail" on the face of the order and narrowly tailored to the remedial purpose of the injunction. Fed. R. Civ. P. 65(d)(1); Motion at 10-12.  And, before *criminal* sanctions may be levied, the parties being sanctioned must be given

a host of due process protections that were not afforded here, including "a presumption of innocence, the beyond-a-reasonable-doubt burden of proof, the right against self-incrimination, the right to notice, the right to be heard, the right to counsel, the right to call witnesses ... and the right to a jury trial[.]" *Crowe v. Smith*, 151 F.3d 217, 227-28 (5th Cir. 1998); Motion at 13-14.

Rather than aid the Court in a reasoned resolution of these questions, Plaintiffs engage in a sustained rant that invites this Court into serious legal error.  They disregard Fifth Circuit law plainly holding that a "district court must have both subject matter jurisdiction and '*in personam*' jurisdiction over the party against whom the injunction runs." *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 470 (5th Cir. 1985). *Infra* at 5.  They argue, contrary to Rule 65's requirements of clarity and specificity, that intervening discovery has *retroactively* clarified the scope of the Injunction, but they cannot cite a single authority that an injunction can be given the requisite clarity ex post facto by events occurring long after the injunction was issued. *Infra* at 10.  Plaintiffs also seek to bind the CNBM Entities to the admissions of *another* defendant in a proceeding to which the CNBM Entities were not even parties, citing *the admissions themselves* as proof that they are bound. *Infra* at 8-9.  And, notwithstanding Plaintiffs' own previous reliance on the finding of "criminal contempt" to compel production of documents under the Order, Plaintiffs now argue that the Court's expressly criminal sanctions are in fact and instead a "coercive civil profit penalty," as if labelling them "civil" somehow changes their punitive nature and obviates due process requirements. *Infra* at 13-14.  These arguments are flatly contrary to clear, binding precedent, and they would have the unmistakable effect—and almost certainly the purpose—of prolonging a contempt proceeding that has long since served its purpose by bringing the parties to participate in the litigation.

For the reasons set forth below, and in the CNBM Entities' earlier memorandum supporting their motion, Rec. Doc. 19271-1, the motion should be granted and the Contempt Order clarified or vacated in relevant part.

## I. THE CNBM ENTITIES' MOTION IS BOTH TIMELY AND PROCEDURALLY PROPER.

CNBM Entities moved to clarify or vacate the Contempt Order based on the Court's "inherent procedural power" to modify interlocutory orders and injunctions. *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981); *Thompson v. U.S. Dep't Of Hous. & Urban Dev.*, 404 F.3d 821, 825 (4th Cir. 2005) ("It has long been recognized that courts are vested with the inherent power to modify injunctions they have issued."). Plaintiffs contend that the motion was untimely under Federal Rules of Civil Procedure 59 and 60. *See* PSC's Response in Opposition to CNBM Entities' Motion, Rec. Doc. 19340-2 at 36-37 (hereinafter PSC Response). "Rules 59 and 60, however, apply only to final judgments." *Southern Snow Mfg. Co., Inc. v. SnoWizard Holdings, Inc.*, 921 F. Supp. 2d 548, 564 (E.D. La. 2013). Rule 54(b), by contrast, expressly provides that an interlocutory order "may be revised *at any time*" before entry of a final judgment. Fed. R. Civ. P. 54(b) (emphasis added); *accord McKay v. Novartis Pharmaceutical Corp.*, 751 F.3d 694, 701 (5th Cir. 2014). The motion was timely.

Plaintiffs also err in suggesting that new evidence or a change in the law are necessary "criteria" for clarification or reconsideration. PSC Response at 37-38. To the contrary, the Fifth Circuit has explained that "when a district court rules on an interlocutory order, it is free to reconsider and reverse its decision *for any reason* it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Saqui v. Pride Cent. America, LLC*, 595 F.3d 206, 210 (5th Cir. 2010) (emphasis added, internal quotation marks omitted). Accordingly, CNBM Entities were and are free to move this Court to clarify or modify

its Contempt Order at any time and for any reasons—especially for reasons as compelling and

necessary as those presented herein.

**II.**      **THE CONTEMPT ORDER CANNOT LAWFULLY ENJOIN THE CNBM ENTITIES**

   **A.**      **Personal and Subject Matter Jurisdiction are Necessary Prerequisites to a Valid Injunction.**

The Fifth Circuit could not have stated the rule more clearly:  "The district court has no

power to grant an interlocutory or final injunction against a party over whom it has not acquired

valid jurisdiction, and an order granting an interlocutory injunction in these circumstances"—i.e.,

without first determining whether the court has subject matter and personal jurisdiction—"is

erroneous as a matter of law."  *Enterprises International*, 762 F.2d at 470-71 (internal quotation

marks omitted).

   Plaintiffs respond that the Court may enjoin the CNBM Entities even if it lacks personal

or subject-matter jurisdiction over them.  *See* PSC Response at 39-40.  But in making this

surprising argument, they do not address the binding authority of *Enterprises International*.

Instead, they cite a portion of a case—*United States v. Mine Workers of America*, 330 U.S. 258

(1947)—that discusses the availability of contempt sanctions when a case is rendered moot.  But

a case is moot when there is no longer a live controversy between the parties, not when the court

lacked authority at the outset to act with regard to a party.  *Mine Workers of America* actually

*confirms* that personal and subject-matter jurisdiction are necessary prerequisites to a valid

injunction:  The Supreme Court held that "an order issued by a court *with jurisdiction over the

subject matter and person* must be obeyed by the parties."  *Id.* at 293 (emphasis added); *see also

id.* at 294 (requiring compliance with an injunction where "the elements of federal jurisdiction

were clearly shown").[1]  Indeed, the Fifth Circuit has cited the case for precisely this point.  *See*

*U.S. Steel Corp. v. United Mine Workers of Am.*, 598 F.2d 363, 368 (5th Cir. 1979) (citing 330

U.S. at 293).  Plaintiffs' call to breach this black letter law should not be heeded.

### B.    The Injunction Prong of the Contempt Order Must Comply with Rule 65.

Plaintiffs' attempt to avoid Rule 65 is similarly misguided.  They suggest that Rule 65

does not apply to the Injunction because the Court held Taishan in contempt under Rule

37(b)(2)(A)(vii).  *See* PSC Response at 41.  Never mind that the Court did not cite that Rule as a

basis for its Order or Injunction.  *See* Rec. Doc. 17869.  Regardless, Rule 37(b)(2)(A)(vii) simply

provides that contempt is an available sanction where a party has failed to obey a discovery order.

It does not suggest that an injunction entered as part of such a contempt order is excused from

the requirements of Rule 65(d).  To the contrary, Rule 65(d) by its express terms governs the

"Contents and Scope of *Every Injunction*."  (Emphasis added); *see also* Fed. R. Civ. P.

65(d)(1)(B)-(C) ("*Every order* granting an injunction" must "state its terms specifically" and

"describe in reasonable detail … the act or acts restrained.") (emphasis added).  Thus, an

injunction entered as part of a contempt order or discovery sanction must still comply with the

requirements of Rule 65(d).  Plaintiffs identify no authority to the contrary, much less try to

explain why the specificity and scope requirements of Rule 65(d) would not apply.

Nor are Plaintiffs correct in their arguments about Rule 37 itself.  Plaintiffs suggest that a

Rule 37 contempt order "may reach non-parties."  PSC Response at 41.  But that is true in only a

very limited sense: i.e., that a "a party's officer, director, or managing agent"—or a party's Rule

---

[1] Plaintiffs also cite *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 395-96 (1990).  The Court
in *Cooter & Gell* was asked whether post-litigation developments (there, the voluntary dismissal
of the case by the plaintiff) "divest[ed] the District Court of jurisdiction" to enter sanctions.  *Id.*
at 398.  Of course, divesture assumes the presence of jurisdiction in the first place.  This case
likewise lends no support to Plaintiffs.

30(b)(6) witness—may be sanctioned for disobeying a discovery order.  Fed. R. Civ. P.

37(b)(2)(A).  But this is little different from Rule 65(d) itself, which allows an injunction to bind

"the parties' officers, agents, servants, employees, and attorneys."  Fed. R. Civ. P. 65(d)(2)(B).

Thus there is no reason to think that Rule 37 somehow expands the world of entities that a

district court may permissibly enjoin as part of a discovery sanction.  Indeed, the only case

Plaintiffs cite that specifically addresses the availability of Rule 37 sanctions against non-parties,

*Taddeo v. Am. Invsco Corp.*, No. 2:12-cv-01110-APG-NJK, 2015 WL 751072 (D. Nev. Feb. 20,

2015), itself relies on cases addressing the scope of Rule 65(d).  *See id.* at *3 (citing *United

States v. Laurins,* 857 F.2d 529, 535 (9th Cir. 1988)).  Further, *Taddeo* did not "uphold[]" a Rule

37 sanction against a non-party, as Plaintiffs suggest, PSC Response at 41, but rather *denied* the

sanctions that the plaintiffs had requested.  *See id.* at *1.  The CNBM Entities demonstrated in

support of their motion that they are not Taishan's "officers, agents, servants, employees, and

attorneys" under Rule 65(d), *see* Motion at 6-7; for the same reasons, they are not Taishan's

"officer[s], director[s], or managing agent[s]" under Rule 37(b).  Plaintiffs' reliance on Rule 37

is unavailing.[2]

    **C.**    **Taishan's Deemed Admissions Provide No Basis for Enjoining the CNBM
Entities.**

    Deemed admissions under Rule 36(a)(3) are binding "only on the non-responding party,

not on co-parties."  *Becerra v. Asher*, 921 F. Supp. 1538, 1544 (S.D. Tex. 1996), *aff'd*, 105 F.3d

---

[2] Plaintiffs also repeat their unfounded allegation that the CNBM Entities "played an active role
in causing" Taishan's failure to appear for its debtor's examination and were therefore complicit
in its contempt.  PSC Response at 39, 42.  As the CNBM Entities explained, that allegation (in
addition to being untrue) is immaterial to whether the Injunction complies with Rule 65 if
construed to enjoin the CNBM Entities.  *See* Motion at 6.  And this Court has previously made
clear that it based its contempt finding solely on *Taishan's* decision not to appear at the
examination, and did not target anyone else (including the CNBM Entities) for supposed
involvement with that decision.  *See* Rec. Doc. 17869 at 2-3; *see also, e.g.*, Rec. Doc. 18196 at 6-
7 & n.1.

1042, 1048 (5th Cir. 1997); *see also, e.g.*, *Riberglass, Inc. v. Techni-Glass Indus., Inc.,* 811 F.2d 565, 566 (11th Cir. 1987) (citing authorities); *First Acceptance Ins. Co. v. Ramirez*, No. 3:08-CV-1078-J-34JRK, 2010 WL 779315, at **4-6 (M.D. Fla. Feb. 26, 2010) (same); 8B Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2264 at 380-81 & n.9 (2010) (same).  And it is undisputed that the Court's earlier findings about an alter ego relationship in its FOFCOL merely adopted Plaintiffs' Rule 36 requests for admission *from Taishan* after *Taishan* failed to respond to those requests.  *See* Motion at 8-9.  The requests were never served on the CNBM Entities, who never had an opportunity or even standing to oppose the "admissions" in *Germano*, a case in which they are not named as defendants.[3]

Plaintiffs attempt to duck this clear rule by proposing an exception where co-defendants share an identity of interest.  *See* PSC Response at 44.  However, the case they cite, *United States v. Chang*, No. Civ. 02-4834 (GEB), 2006 WL 757823 (D.N.J. March 20, 2006), *aff'd* 248 F. App'x 414 (3d Cir. 2007), provides no support for their argument.  The court in *Chang* did not use the deemed admissions of corporate entities regarding their alleged alter-ego status against other co-defendants.  To the contrary (and as Plaintiffs note), the court observed that those admissions "do not implicate the [other] Transferee Defendants," and found, further, that the Transferee Defendants *themselves* admitted facts about an alter-ego relationship in both their responsive pleadings and depositions.  *Id.* at *4.[4]  Nor would Plaintiffs' proposed exception, if it

---

[3] Perhaps recognizing the shaky foundations of their desired alter ego finding, Plaintiffs try to pin deemed admissions on CNBM Entities, contending that "[a]s defaulted parties, CNBM [Entities] are deemed to have admitted that they controlled the affairs of Taishan and were responsible for its contemptuous acts."  PSC Response at 42.  But Plaintiffs do not even attempt to explain how the CNBM Entities' default in *other* proceedings could somehow constitute a deemed admission that they were responsible for Taishan's contumacious acts in *Germano*, a proceeding to which they were not even party.

[4] Plaintiffs also quote another district court's musing that "[u]nder *certain* circumstances, *it could be* that responses to Rule 36 requests would be admissible against a co-defendant where the two

did exist, logically apply to the circumstance here.  They contend that the deemed admissions

can be used against CNBM Entities because they are not mere co-defendants, but rather

"*affiliates and alter egos* of Taishan."  PSC Response at 44 (emphasis in original).  But what do

Plaintiffs cite for that proposition?  The FOFCOL, which relied exclusively on Taishan's deemed

admissions. *See* PSC Response at 45.  This is circular reasoning at its worst.[5]

> ### D.    If the Injunction Applies to the CNBM Entities, It Failed to Comply With Rule 65 At the Time It Was Entered.

Plaintiffs do not address the CNBM Entities' other reason why the Court's FOFCOL

cannot bring them within the scope of the injunction: namely, that the FOFCOL were issued

*after* the Contempt Order, and thus cannot be used retroactively to clarify the scope of an earlier

injunction.  *See* Motion at 8.  As longstanding Fifth Circuit precedent confirms, any order

granting an injunction must be clear on its face, without reference to other documents—much

less documents that post-date the issuance of the injunction.  Fed. R. Civ. P. 65(d)(1); *see also U.*

---

defendants had an identity of interest." *In re Leonetti*, 28 B.R. 1003, 1009 (E.D. Pa.), *aff'd mem.*, 725 F.2d 667 (3d Cir. 1983).  But the court did not even suggest what those circumstances might be, much less assert that the admission *would* be binding in such circumstances.  Nor have Plaintiffs identified any case in which a defendant's deemed admissions were used to bind a co-defendant, whether or not there was some relationship or shared interest between them.

[5] Moreover, even if Taishan's deemed admissions *could* bind the CNBM Entities, Plaintiffs cannot counter the legal flaws identified in the FOFCOL.  As the CNBM Entities noted, the FOFCOL mistakenly rely on Louisiana state law to find an alter ego relationship even though, under appropriate choice-of-law principles, Chinese law governs the corporate veil-piercing question as the law of the state of incorporation.  *See* Motion at 9 n.14.  Plaintiffs suggest that Virginia's choice-of-law rule does not necessarily apply to the FOFCOL because they were entered in actions other than *Germano*, so "Louisiana law may therefore apply."  PSC Response at 45 n.6.  But this misses the point entirely.  Even for those cases that originated in Louisiana, that state's *choice-of-law* rule would apply.  *See In re Vioxx Prod. Liab. Litig.*, 478 F. Supp. 2d 897, 903 (E.D. La. 2007).  And under Louisiana's choice-of-law rule (no less than Virginia's) "the law of the state of incorporation governs the determination when to pierce a corporate veil." *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 647 (5th Cir. 2002).

*S. Steel Corp. v. United Mine Workers of Am.*, 519 F.2d 1236, 1246 n.20 (5th Cir. 1975); *Sheila's Shine Products, Inc. v. Sheila Shine, Inc.*, 486 F.2d 114, 129 (5th Cir. 1973); Motion at 10.

Plaintiffs never acknowledge this clear law.  Instead, they rely on supposed "evidence" adduced during subsequent discovery that, according to Plaintiffs, supports an alter ego relationship between CNBM Entities and Taishan.  *See* PSC Response at 45.  The discovery has indicated no such thing.  At the appropriate time and in the proper context—i.e., the CNBM Entities' Motion to Dismiss the Complaints Pursuant to Rule 12—the CNBM Entities will establish that they each maintain a separate and distinct corporate status.  However, for present purposes, it is sufficient to note that Plaintiffs' ex post facto rendition of "evidence" allegedly showing an alter ego relationship—even if accepted at face value—cannot save the Injunction if construed to apply to the non-party CNBM Entities, because its validity and compliance with Rule 65 must be determined based on the record before the Court at the time the Injunction was issued.  Indeed, that Plaintiffs needed a 52-page brief, a 40-page affidavit[6], and 96 exhibits to explain what they believe the Injunction meant and why it was lawful speaks volumes (and volumes and volumes) about just how unclear the Order was that it could have applied to the CNBM Entities.

III.    **THE SCOPE OF THE INJUNCTION IS IMPERMISSIBLY VAGUE AND OVERBROAD IF CONSTRUED TO APPLY TO THE CNBM ENTITIES**

Rule 65(d) requires that every injunction must "state its terms specifically" and "describe in reasonable detail … the act or acts restrained or required."  Fed. R. Civ. P. 65(d).  And, as set

---

[6] In addition to being irrelevant, the lengthy affidavit from Plaintiffs' counsel consists largely of argument and is wholly devoid of personal knowledge, and therefore provides no basis on which the Court may rely.  *See, e.g.*, *Thomas v. Atmos Energy Corp*., 223 F. App'x 368, 374 (5th Cir. 2007) (affirming exclusion of affidavit that "contains legal arguments and conclusions"); *Henderson v. Dept. of Public Safety and Corrections*, 901 F.2d 1288, 1296 (5th Cir. 1990) (counsel's affidavit is "legally insufficient" where "it was not based on personal knowledge").

forth in the Motion, the Contempt Order provided no guidance or clarity about the meaning of the term "affiliate," the meaning of "doing business," or on the timeframe of the injunctive period.  *See* Motion at 10-12.  Under those circumstances, the Injunction cannot permissibly be construed to cover the CNBM Entities.

Plaintiffs counter by citing a handful of orders that contain the words "affiliate" and "doing business."  But the fact that those words have been used before proves nothing—any word or phrase may be sufficiently clear, in context, based on the record before that court.  For instance, Plaintiffs cite *Fringe Ins. Benefits, Inc. v. Beneco, Inc.,* No. A-13-CV-034-AWA, 2015 WL 631181 (S.D. Tex. Feb. 11, 2015), where the court entered an order enjoining a party's "affiliates" where "*the evidence before the Court* clearly demonstrates that wrongful acts were committed by one or more entities referred to and known by all as 'Beneco.'"  *Id.* at *2 (emphasis added).  Similarly, Plaintiffs cite *Chanel, Inc. v. Partnerships and Unincorporated Associations Identified in Schedule "A" and Does 1–1000,* No. H-12-02085, 2013 WL 5425252, *5 (S.D. Tex. Sept. 26, 2013), where (as the case name itself reveals) the court entered a broad injunction that applied to a large number of parties specifically identified in a schedule to the order.  Here, by contrast, Plaintiffs' ever-evolving and expanding list of supposed "affiliates"— from six, to 39, to 46, to 66—conclusively establishes that the term was not clear on its face in this case and context.  *See* Motion Support at 4, 11.  Plaintiffs euphemistically refer to these post hoc expansions as "refinements," PSC Response at 45, but cite no authority that an injunction can be retroactively "refined"—much less through a plaintiff's discovery requests.

Plaintiffs' "doing business" cases are similarly infirm.  Their lead citation—*Harris v. Fairwether,* No. 11 Civ. 2152(PKC), 2011 WL 4538436, *2 (S.D.N.Y. Sept. 29, 2011)—is an order that clarified an injunction precisely because the enjoined party *did not understand what*

*conduct was restrained* when the court ordered it not to "conduct business."  The court agreed

and clarified the order as to specific conduct, also noting in general that "the injunction's reach is

limited to those matters" related to the alleged Lanham Act violations at issue.  *Id.* at *1.

Likewise, the injunction in *TMX Funding, Inc. v. Impero Technologies, Inc.,* No. C 10-00202 JF

(PVT), 2010 WL 2077011, *2 (N.D. Cal. May 21, 2010), expressly applied only to "continuing

to do business" with a discrete and well-defined category of entities specifically related to the

trade secret claims at issue.[7]

      The cases Plaintiffs cite do not support the proposition that an injunction against an

unspecified class of non-party "affiliates" preventing them from "doing business" with anyone,

anywhere in the United States, is sufficiently clear on its face "that an ordinary person reading

the court's order should be able to ascertain from the document itself exactly what conduct is

proscribed."  *U. S. Steel Corp*, 519 F.2d at 1246 n.20.  Nor do Plaintiffs credibly contend that a

court may enjoin this vast array of non-parties from engaging in conduct that has no cognizable

relationship to the subject matter of the litigation (or to Taishan's non-participation).  Fifth

Circuit law is directly to the contrary: "no decree should be so broad as to place *the entire*

*conduct of one's business* under the jeopardy of punishment for contempt for violating a general

---

[7] The injunction Plaintiffs cite in *TMX Funding, Inc.* is a good example of an injunction against business activities that is both sufficiently clear on its face and adequately tailored to the remedial purpose of the order.  In that case, the court enjoined defendants in trade secret litigation from "[c]ontinuing to do business with customers or third party vendors with whom Defendants had been in communication with during their final six months at Teledex for the purpose of furthering Teledex business and from whom Defendants solicited business after December 8, 2009."  In an effort to craft a "narrowly tailored injunction [that] should not interfere unduly with [Defendants'] ongoing business efforts,"  the court ordered that "[n]othing in this Order shall prevent Defendants from otherwise doing business or continuing to do business with customers or third party vendors."  *Id.*  Tellingly, Plaintiffs fail to cite any authority in response to the CNBM Entities' argument that the Injunction here is overbroad.  Motion at 12; PSC Response at 48-49.

injunction."  *Russell C. House Transfer & Stor. Co. v. United States*, 189 F.2d 349, 351 (5th Cir. 1951).

## IV.  PLAINTIFFS THEMSELVES HAVE RECOGNIZED THAT THE CONTEMPT ORDER WAS CRIMINAL IN NATURE

As the CNBM Entities explained, the Contempt Order's criminal penalties are unlawful, if construed to apply to them[8], because the necessary due process protections have not been afforded.  *See* Motion at 13-14.  Plaintiffs now deny that the penalties imposed by the Contempt Order were criminal in nature.  *See* PSC Response at 50-51.  But this claim overlooks the fact that the Court expressly stated that it held Taishan in both criminal and civil contempt, citing Federal Rule of *Criminal* Procedure 42(b) (regarding "Criminal Contempt") as a basis for its order.  *See* Rec. Doc. 17869 at 2-3.  Indeed, Plaintiffs cite the criminal aspect of the Contempt Order at the beginning of their brief, *see* PSC Response at 5-6, before denying that it imposed criminal penalties at the end of their brief, *see* PSC Response at 50-51.  Plaintiffs (and the Court) also previously relied on the criminal contempt finding to invoke the crime-fraud exception to attorney-client privilege asserted by Taishan's former counsel.  *See* Rec. Doc. 18196 at 3, 7.  Plaintiffs cannot have it both ways.

In trying to recharacterize the Order, Plaintiffs now call the fine of 25% of profits a "coercive civil profit penalty."  PSC Response at 50.  But, tellingly, the cases they cite in support of this assertion both involved criminal contempt.  *See In re Oliver*, 333 U.S. 257, 258 (1948) ("the petitioner [was sent] to jail for contempt of court"); *Ocean-Oil Expert Witness, Inc. v. O'Dwyer*, 451 F. App'x 324, 330 (5th Cir. 2001) (discussing the procedures available "to punish

---

[8] Again, the Contempt Order stated only that "[i]f *Taishan* violates this injunction, *it* must pay a further penalty of 25% of the profits earned by the company or its affiliates who violate the order, for the year of the violation."  Rec. Doc. 17869 (emphasis added); *see also* Motion at 3.

someone who commits criminal contempt").  Plaintiffs also suggest that the Court may transform the non-compensatory fine at issue here into a compensatory one by simply awarding the penalty to the class members, and they claim that the CNBM Entities' motion acknowledged this.  *See* PSC Response at 51.  But, directly to the contrary, the CNBM Entities argued precisely the opposite: The class will not benefit from the pursuit of contempt fines because Plaintiffs cannot receive any sums collected under the Contempt Order.  *See* Motion at 13 & n.20.  Plaintiffs entirely ignore the authority that fines which are not compensatory in nature are not payable to a party.  *See, e.g.*, *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986); *In re Dinnan*, 625 F.2d 1146, 1149 (5th Cir. 1980).  And the cases Plaintiffs cite regarding disgorgement of profits as a compensatory fine are entirely inapposite, as they all involved patent, trademark, or trade dress infringement, *see* PSC Response at 50-51, where a defendant's profits from such infringement are considered an appropriate compensation for the harm caused to the rightful possessor of the intellectual property.  Not so here, where any profits that CNBM Entities may have earned in 2014 or 2015 have no relation to the allegedly defective drywall or the unidentified harm Plaintiffs may have faced as a result of *Taishan's* contempt.

Plaintiffs' misguided belief that they can profit from these criminal contempt penalties perhaps explains why they have relentlessly prolonged a proceeding so far afield from resolving the case's merits.  However, they ignore authority that private attorneys with a stake in the outcome cannot prosecute criminal contempt.  *See Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 809 (1987) (counsel representing a party to the original cause may not prosecute criminal contempt charges against another party); *Crowe v. Smith*, 151 F.3d 217, 227-228 (5th Cir. 1998) (same).  And because the CNBM Entities have not been afforded the due process protections necessary to a finding of criminal contempt, the Contempt Order's penalties cannot

lawfully be interpreted as applying to them.  *See id.*; *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 567 (5th Cir. 1990).[9]

## V.   **CONCLUSION**

For the foregoing reasons, as well as those stated in the memorandum supporting the CNBM Entities' motion, the Court should clarify that the Contempt Order does not apply to the CNBM Entities or, in the alternative, vacate the Order in relevant part.

Respectfully submitted,

/s/ L. Christopher Vejnoska

Dated**:**  August 4, 2015

| | |
|---|---|
| L. Christopher Vejnoska (CA Bar No. 96082) | Ewell E. Eagan, Jr. (LA Bar No. 5239) |
| Ian Johnson (CA Bar No. 208713) | Donna Phillips Currault (LA Bar No. 19533) |
| Andrew Davidson (CA Bar No. 266506) | Nina Wessel English (LA Bar No. 29176) |
| Jason Wu (CA Bar No. 279118) | Alex B. Rothenberg (LA Bar No. 34740) |
| Ian Fein (CA Bar No. 281394) | GORDON ARATA MCCOLLAM DUPLANTIS |
| Jason Cabot (CA Bar No. 288877) | & EAGAN LLC |
| ORRICK, HERRINGTON & SUTCLIFFE LLP | 201 St. Charles Avenue, 40th Floor |
| The Orrick Building | New Orleans, LA 70170-4000 |
| San Francisco, CA  94105 | Tel:  (504) 582-1111 |
| Tel.: 415-773-5700 | E-mail:   eeagan@gordonarata.com |
| E-mail:   cvejnoska@orrick.com | dcurrault@gordonarata.com |
| ijohnson@orrick.com | nenglish@gordonarata.com |
| adavidson@orrick.com | arothenberg@gordonarata.com |
| jmwu@orrick.com | |
| ifein@orrick.com | |
| jcabot@orrick.com | |

---

[9] Moreover, because CNBM Group is an agency or instrumentality of a foreign state under the Foreign Sovereign Immunities Act, it is not subject to monetary contempt sanctions—irrespective of whether those penalties are civil or criminal.  *See Af-Cap, Inc. v. Republic of Congo*, 462 F.3d 417, 428-29 (5th Cir. 2006).

James L. Stengel (NY Bar No. 1800556)
Xiang Wang (NY Bar No. 4311114)
Kelly Daley (NY Bar No. 4970117)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY, 10019
Tel:  212-506-5000
Email:     jstengel@orrick.com
           xiangwang@orrick.com
           kdaley@orrick.com

Eric A. Shumsky (D.C. Bar No. 477926)
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street NW
Washington, D.C. 20005
Tel:  202-339-8400
Email:     eshumsky@orrick.com

Jonathan Riddell (LA Bar No. 27053)
ORRICK, HERRINGTON & SUTCLIFFE, LLP
400 Capitol Mall, Suite 3000
Sacramento, CA 95814
Tel:  916-447-9200
Email:     jriddell@orrick.com

*Attorneys for CNBM Entities*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing REPLY TO PSC'S RESPONSE IN OPPOSITION TO CNBM ENTITIES' MOTION TO CLARIFY OR VACATE THE JULY 17, 2014 CONTEMPT ORDER has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all parties by electronically uploading the same to File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 4th day of August, 2015.

/s/ L. Christopher Vejnoska

L. Christopher Vejnoska (CA Bar No. 96082)