UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO:<br>ALL CASES | |

THE PLAINTIFFS' STEERING COMMITTEE'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO COMPEL THE PRODUCTION
OF DOCUMENTS ON A COUNSEL'S PRIVILEGE LOG

**MAY IT PLEASE THE COURT:**

**I.   INTRODUCTION**

This Court already has determined that certain documents listed by counsel for Taishan Gypsum Co. Ltd. ("TG") and Tai'an Taishan Plasterboard Co. Ltd. ("TTP") [collectively "Taishan"] on a Counsel's Privilege Log, were excepted from the attorney-client privilege. This determination has proven especially germane as the PSC continues in a time-consuming and resource-intensive effort to discover documents regarding (a) Taishan's alter-ego and/or "single business enterprise" relationship with other entities, and (b) the activities of Taishan's "affiliates" as constituting possible violations of the Court's Contempt and Sanctions Order.

The PSC now has learned through this discovery that the Counsel's Privilege Log also improperly asserted an attorney-client privilege with respect to documents pertaining to a <u>former</u> employee of TG/TTP, Peng Wenlong. Mr. Peng left the employ of Taishan in March 2014, months prior to the Court's July 2014 contempt order, but it appears he monitored and/or had continued, <u>post-employment</u> participation in a number of discussions and exchanges with

1

counsel for Taishan on matters potentially relevant to the above issues. Since he no longer was an employee of defendants at the time, any asserted "attorney-client" privilege against the disclosure of documents reflecting his participation in or monitoring of these communications, is on its face vitiated.

Plaintiffs accordingly seek to compel the production of these twenty-four (24) additional documents (Items Nos. 127, 131, 132, 133, 134, 136, 141, 160, 164, 166, 173, 174, 181, 189, 191, 194, 195, 196, 207, 213, 214, 221, 222, and 226),[1] as having been improperly withheld under the attorney-client privilege.

## II.  FACTUAL BACKGROUND

This Court's jurisdictional ruling, which subjects Taishan to the authority and orders of the Court, was twice affirmed by the United States Court of Appeals for the Fifth Circuit.[2] Following the finality of that ruling, Taishan nonetheless discharged its original counsel (Hogan Lovells US LLP and Stanley, Reuter, Ross, Thornton, & Alford, LLC) and deliberately refused to appear at the Court-ordered hearing for its Judgment Debtor Examination on July 17, 2014. Already-disclosed documents from discharged counsel indicate that this refusal to participate in the proceedings was not impulsive or reflexive, nor made by one individual acting in isolation. Rather, the decision appears to have been part of a well-orchestrated, and thus willful, flouting of judicial authority and public display of disrespect for this Court, implicating both Taishan and those "affiliate" officials having authority over Taishan.

---

[1] Mr. Peng also appears on Item Nos. 143, 154, 159, 161, 165, 167, 171, 182, 183, 190, 197, 204, and 205. However, these 13 documents were already produced due the Court's finding of the crime-fraud exception.

[2] *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819, 829-30 (E.D.La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014) & 753 F.3d 521 (5th Cir. 2014).

In connection with their efforts to withdraw as attorneys of record for Taishan, counsel produced a Counsel's Privilege Log. [Attached hereto as Exhibit "A"].  The PSC challenged many of the designations of documents on the log.  On December 12, 2014, this Court issued its Order and Reasons finding that certain documents appearing on Counsel's Privilege Log were not protected by the attorney-client privilege, due to the crime-fraud exception to that privilege. *See In re Chinese Manufactured Drywall Prod. Liab. Litig.,* 2014 WL 7135657 (E.D. La. Dec. 12, 2014) [Rec.Doc. No. 18196].  After affording these counsel an opportunity to comment on its ruling, the Court on January 13, 2015 ordered these documents produced.  *In re Chinese Manufactured Drywall Prod. Liab. Litig.,* MDL 2047, Order & Reasons (E.D. La. Jan. 13, 2015) [Rec.Doc. 18256].  Counsel immediately sought a writ of *mandamus* from the Court of Appeals for the Fifth Circuit to challenge the Court's ruling, but the appellate court denied the writ.  *See In re Hogan Lovells US* LLP, 15-30114, Order  (5th Cir. Feb. 20, 2015).

After Taishan reappeared in this litigation through new counsel (Alston & Bird), the Court immediately set upon a course to adjudicate the remaining issue of the class damages owed by these defendants in default.  A FRCP 55(b)(2) hearing was held on June 9, 2015 to address the formulation and calculation of certain damages on a classwide basis.

At the same time, and on separate tracks established by the Court, discovery has continued as to alter-ego and affiliate relationships between Taishan and other entities, as well as potential violations of the "injunction prong" and sanctions of the Contempt Order by either Taishan directly or Taishan through another entity.[3]  In this connection, the PSC deposed

---

[3] In its recent Order and Reasons denying the CNBM/BNBM Motion to Clarify the Court's Contempt Order, the Court confirmed that discovery is to be conducted at this time on whether Taishan did business in the U.S. in violation of the Contempt Order "through its
(continued...)

Taishan's corporate designee, Che Gang, between June 2-4, 2015.  It was during this deposition that Mr. Che disclosed that the manager of Taishan's foreign trade department at times pertinent herein, Mr. Peng Wenlong, actually left the company's employment in March 2014.  *See* Excerpt from 6/2/15 Deposition of Che Gang, at pp.49, 105-106 [Attached hereto as Exhibit "B"].

Prior to Mr. Che's deposition, the PSC had sought to depose Mr. Peng with the belief and understanding he was still employed by Taishan.  Taishan's current counsel had merely informed the PSC that Mr. Peng's whereabouts were unknown.  Contradicting this representation, Mr. Che testified that he actually consulted with Mr. Peng to prepare for his deposition; and he was even able to recite Mr. Peng's telephone number.  *Id.*  It appears the whereabouts of this key witness and former employee, therefore, have <u>not</u> been a mystery to Taishan itself, whatever might be the information this defendant chose to share with it's counsel.

In any event, on becoming aware of Mr. Peng's status as a former employee of Taishan, the PSC revisited Counsel's Privilege log, and determined that, starting with Item No. 127, the Log contains thirty-seven (37) entries in which Mr. Peng's name appears, all in connection with matters taking place *after* his March 2014 departure, as an employee.  Twenty-four (24) of those entries also refer to documents which have not been produced to the PSC, *to-wit*:  Items Nos. 127, 131, 132, 133, 134, 136, 141, 160, 164, 166, 173, 174, 181, 189, 191, 194, 195, 196, 207, 213, 214, 221, 222, and 226.

Mr. Peng's status as a non-employee of the defendants starting in March 2014, surely vitiates and waives any assertion to the effect that an attorney-client privilege or the work-

---

[3](...continued)
affiliates or subsidiaries or as a single business enterprise in conjunction with the BNBM or CNBM entities."  *See* Order & Reasons [Rec.Doc. No. 19392], at p. 3.

4

product doctrine should apply to these documents; and the discovery of these communications leading up to the July 2014 Contempt Order are critical to the PSC efforts to expose all facts pertinent to the discovery of alter ego, "affiliates," and sanction violation issues.  The Court's Contempt Order of July 17, 2014 was an appropriate, and necessary, response to an open rebuke of the judiciary [Rec.Doc.No. 17869].  But there remains the question whether the Court's authority also was flouted by one or more entity's informed violation of the sanction imposed under the Order.  It thus is important to know which Taishan-related entity or entities knew of the sanctions, particularly after having perhaps participated in, or even directed, Taishan's decision to disobey the Court in the act of civil and criminal contempt giving rise to the sanctions.  To the extent any such Taishan-related entities or affiliates may be found to have warranted a forfeiture of profits under the Contempt Order, this record surely should contain all of the facts reflecting privity with the decisions and actions on which these sanctions were based, and the corporate relationships through which the sanctions were, or should have been, communicated to related entities and affiliates.  The sharing of any documents or communications potentially bearing on such matters with Mr. Peng, a non-employee, makes them clearly discoverable.

## III.    ARGUMENT

The foundation for extending the corporation's privilege to conversations with <u>current</u> employees was laid by the Supreme Court's opinion in *Upjohn Co. v. United States*, 449 U.S. 383, 386 (1981), which held that employee communications with outside counsel during an internal investigation were privileged.  The Supreme Court in *Upjohn* specifically declined to address whether this privilege extended to conversations with former employees. *Id.* at 394 n. 3.[4]

---

[4]In a separate concurrence, Chief Justice Burger opined that the privilege should extend to
(continued...)

5

Since *Upjohn* was decided, several courts have declined to extend the privilege to former employees. *See, e.g., Clark Equip. Co. v. Lift Parts Mfg. Co.*, 1985 WL 2917, *5 (N.D.Ill. Oct.1, 1985) (holding former employees are not the "client," and that "post-employment communications with former employees are not within the scope of the attorney-client privilege"); *Infosystems, Inc. v. Ceridian Corp.*, 197 F.R.D. 303, 306 (E.D. Mich. 2000) (corporation failed to meet its burden of showing that the communication necessarily involved the employee's conduct during his employment). Commentators have reflected favorably on these case decisions: "When considered from either a utilitarian or theoretical perspective, it is difficult to rationally argue that the privilege should apply to communications between corporate counsel and past employees of the corporation." *See* Paul R. Rice, 1 Attorney-Client Privilege in the United States § 4:18 (2014).

Although the Fifth Circuit has not yet addressed the issue, a recent decision in the E.D. of La. by Judge Milazzo did extend *Upjohn* 's holding to cover conversations between corporate counsel and former employees of the corporation, but subject to important qualifications, i.e., the discussion must related to the former employee's conduct and knowledge gained <u>during employment</u>, with the purpose being "to assist the attorney in "(a) evaluating whether the employee's conduct has bound or would bind the corporation; (b) assessing the legal

---

⁴(...continued)
former employees as well. *Id*. at 403 (proposing that "a communication is privileged at least when, as here, an employee or former employee speaks at the direction of the management with an attorney regarding conduct or proposed conduct within the scope of employment. The attorney must be one authorized by the management to inquire into the subject and must be seeking information to assist counsel in performing any of the following functions: (a) evaluating whether the employee's conduct has bound or would bind the corporation; (b) assessing the legal consequences, if any, of that conduct; or (c) formulating appropriate legal responses to actions that have been or may be taken by others with regard to that conduct.").

consequences, if any, of that conduct; or (c) formulating appropriate legal responses to actions that have been or may be taken by others with regard to that conduct." *See, e.g., Hanover Ins. Co. v. Plaguemines Parish Gov't.*, 304 F.R.D. 494, 499-500 (E.D. La. 2015)(Milazzo, J.); *see also In re Allen,* 106 F.3d 582, 605–06 (4th Cir.1997) (holding *Upjohn* applies with equal force to former employees provided the employee's conduct must be at issue); *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 658 F.2d 1355, 1361 n. 7 (9th Cir.1981)(same).

Applying the reasoning of *Hanover Ins*. to these proceedings, it is clear that the extension of privilege is not justified.  Mr. Peng's communications with counsel since his departure from Taishan in March 2014 appear to have nothing to do with his conduct as the Foreign Trade Manager while at Taishan, and everything to do with the prospective decision of Taishan, *et al.* to contemptuously ignore Your Honor's authority by not appearing at the Court-ordered Judgment Debtor examination on July 17, 2014.  *See, e.g.*, Item No. 131 ("Email chain – case status, legal strategy, advice to client and/or client instructions concerning withdrawal from litigation/discharge of attorneys/attorney withdrawal"); Item No. 165 ("Email chain – case status, legal strategy, advice to client and/or client instructions concerning Judgment Debtor Exam."). Indeed, it is apparent that none of the factors identified in *Hanover* apply herein.  The decision of Taishan to avoid the Judgement Debtor examination in July 2014 could not possibly implicate (a) an evaluation of whether Mr. Peng's past conduct as a Foreign Trade Manager had bound or would bind the corporation's *future* action; (b) an assessment of the legal consequences, if any, of that conduct; or (c) the formulation of appropriate legal responses to actions that have been or may be taken by others with regard to that conduct.

7

The PSC therefore submits that Mr. Peng's past conduct as a former employee cannot be shown to have had anything to do with Taishan's decision — made after Mr. Peng left the company — to not appear at the July 17, 2014 hearing.[5] Where a party is unable to meet its burden of showing that the communication necessarily involved the employee's conduct *during his employment*, the privilege should not be sustained. *See Infosystems,* 197 F.R.D. at 306.[6]

## IV. CONCLUSION

Based upon this showing, the PSC respectfully requests that this Court should order the production of Item Nos. 127, 131, 132, 133, 134, 136, 141, 160, 164, 166, 173, 174, 181, 189, 191, 194, 195, 196, 207, 213, 214, 221, 222, and 226 in Counsel's Privilege Log.

---

[5]In this regard, Taishan is fortunate that it even has the opportunity to try to make the showing that the attorney-client privilege applies. Had Chinese law applied to these diversity matters, rather than state law, Taishan would have no basis for even asserting such a privilege as China does not recognize either the attorney-client privilege or work-product doctrine. *See Wultz v. Bank of China Ltd.*, 979 F.Supp.2d 479, 492 - 93 (S.D. N.Y. 2013)("Because Chinese law does not recognize the attorney-client privilege or the work-product doctrine, BOC must produce those items listed on its privilege log which are governed by Chinese privilege law.").

[6]Taishan is estopped by its representation that Mr. Peng's whereabouts are unknown. Under these circumstances, and given the undisputed fact that Mr. Peng is a Chinese National, the PSC has no other means of obtaining any statements involving Mr. Peng other than through the items disclosed on Counsel's Privilege Log. It has long been recognized that such material is discoverable, irrespective of the assertion of the attorney work-product doctrine. *See Hickman v. Taylor,* 329 U.S. 495, 509 - 510 (1947).

Dated: August 18, 2015

Respectfully submitted,

/s/ Russ M. Herman
Russ M. Herman, Esquire (LA Bar No. 6819)
Leonard A. Davis, Esquire (LA Bar No. 14190)
Stephen J. Herman, Esquire (LA Bar No. 23129)
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Sandra L. Duggan (On the Brief)
Matthew C. Gaughan
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

**PLAINTIFFS' STEERING COMMITTEE**

| | |
|---|---|
| Dawn M. Barrios | Daniel E. Becnel, Jr. |
| Barrios, Kingsdorf & Casteix, LLP | Becnel Law Firm, LLC |
| 701 Poydras Street, Suite 3650 | 425 W. Airline Highway, Suite B |
| New Orleans, LA 70139 | Laplace, LA 70068 |
| Phone: (504) 524-3300 | Phone: (985) 536-1186 |
| Fax: (504) 524-3313 | Fax: (985) 536-6445 |
| Barrios@bkc-law.com | dbecnel@becnellaw.com |

Peter Prieto
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Bruce William Steckler
Steckler, LLP
12720 Hillcrest Road, Ste 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Ervin A. Gonzalez
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker Waichman, LLP
27300 Riverview Center Blvd.
Suite 103
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@attorneys4people.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr., Esquire
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W
Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Anthony D. Irpino
IRPINO LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 18th day of August, 2015.

      /s/ Leonard A. Davis
      Leonard A. Davis, Esquire
      HERMAN, HERMAN & KATZ, LLP
      820 O'Keefe Avenue
      New Orleans, Louisiana 70113
      Phone: (504) 581-4892
      Fax: (504) 561-6024
      Ldavis@hhklawfirm.com
      Plaintiffs' Liaison Counsel
      MDL 2047

      *Co-counsel for Plaintiffs*