## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| In re: | |
|---|---|
| DEVON INTERNATIONAL INDUSTRIES, INC. | Bankruptcy Case No. 13-13552 (SR) CHAPTER 7 |
| Debtor. | Related Doc. No. 39 |

## JOINDER OF DEBTOR'S MOTION TO REIMPOSE THE AUTOMATIC STAY UNDER 11 U.S.C. §362 OF THE BANKRUPTCY CODE AS TO CLAIMS MADE AGAINST IT BY ACE HOME CENTERS, INC.
## OR OTHERS PURSUANT TO BANKRUPTCY RULE 9024

AND NOW comes The Cincinnati Insurance Company ("CIC"), by and through its undersigned counsel, Bernstein-Burkley, P.C., and hereby files this Joinder with Motion of Debtor to Reimpose the Automatic Stay (the "Joinder Motion"), and states in support thereof as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1332. This matter constitutes a core proceeding within the meaning of 28 U.S.C. §157(b)(2).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

### FACTUAL BACKGROUND

3.      On April 23, 2013 (the "Petition Date"), Devon International Industries, Inc. ("Devon") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, 11 U.S.C. §101, *et seq.* (the "Bankruptcy Code").

4.      Devon International Industries, Inc. ("Devon") is a Pennsylvania corporation which had previously been engaged in the importation of drywall from China.

5.      CIC is an insurance provider.



6.     Devon was a named insured under CIC Insurance Policy No. 365 8338 (the "Policy"), which was in effect from November 20, 2008 through November 20, 2010 (which covered two periods - the first from November 20, 2008 through November 20, 2009; and the second from November 20, 2009 through November 20, 2010).  The Policy included commercial General Liability Coverage ("CGL") and Commercial Umbrella Coverage ("CUC").  Under the Policy, the limit of insurance during each of the policy periods was: (i) $1,000,000 per occurrence and $2,000,000 general aggregate for CGL; and (ii) $1,000,000 per occurrence and $1,000,000 general aggregate for CUC.

7.     In 2006, Devon, who is a sourcing agent from Chinese products, had received an order from the North Pacific Group ("North Pacific") for Chinese Drywall (the "Chinese Drywall").  Devon filled the order by placing an order for Chinese Drywall with Shandong, a Chinese manufacturer, and having it shipped to Florida.

8.     North Pacific accepted delivery of some of the Chinese Drywall, and Devon sold the remaining Chinese Drywall to other individuals and entities.

9.     Sometime thereafter, Devon became aware of claims alleging that the Chinese Drywall contained an improper amount of sulfur, and subsequently faced a number of lawsuits in multiple jurisdictions (the "Drywall Suits").

10.     CIC undertook the defense of Devon under a reservation of rights and has contributed more than $3,000,000 to settle numerous claims brought against Devon in the Drywall Suits.

11.     In 2013, Devon and CIC were parties to an action CIC filed for declaratory judgment (the "Insurance Action") before the Eastern District of Pennsylvania (the "Court"). *Cincinnati Insurance Co. v. Devon International*, 924 F.Supp.2d 587 (E.D.Pa. 2013).

12. The relevant background of the Insurance Action is as follows:

    a. Devon and CIC had agreed that the Policy would cover only bodily injury or property damage if it was "caused by an occurrence that takes place in the coverage territory."

    b. CIC brought an action in the Eastern District of Pennsylvania seeking declaratory judgment defining its obligations under the Policy. The issue was whether the underlying claims against Devon originated from a single occurrence or multiple occurrences under the Policy.

    c. On February 15, 2013, the Court found that all claims arising from the of Chinese Drywall arose out of a single occurrence that took place under the first period of the Policy, and that CIC had no obligation to defend or indemnify Devon for claims arising during the second period of the Policy. Moreover, because coverage under the first period of the Policy had been exhausted as a result of settlement payments made by CIC on behalf of Devon in excess of the policy limits, the Court held that CIC has no obligation to continue to defend or indemnify Devon for claims made by plaintiffs arising from the Chinese Drywall (the "District Court Order").

13. On March 1, 2013, Devon appealed the Insurance Action to the Third Circuit.

14. On November 20, 2014, Ace Home Centers, Inc. ("Ace") filed a motion (the "Motion for Relief from Stay") with the Court requesting an entry of order lifting the automatic stay imposed by 11 U.S.C. §362 for the purpose of allowing Ace to join Devon as a third party defendant in two Lawsuits[1] (the "Lawsuits") alleging personal injuries arising from Chinese

---

[1] The Lawsuits are: (i) In re: Chinese-Manufactured Drywall Products Liability Litigation, MDL No. 2047 in the United States District Court for the Eastern District of Louisiana, specifically the consolidated cases of Braxton and

Drywall sold by Devon to Ace and installed in plaintiffs' homes. The plaintiffs sought to pursue claims against Devon up to the amount of all applicable insurance coverage available to Devon.

15.     In its Motion for Relief from Stay, Ace averred that lifting the automatic stay would not affect Devon's bankruptcy since Devon's insurer would have to defend the Lawsuits and pay any resulting verdict for the personal injuries up to the amount of all applicable coverage. Ace further averred that Devon's insurer had the obligation to defend the suits to the best of its ability, and therefore would adequately represent and protect Devon's interest.

16.     This Court, however, was not informed by Ace in its Motion for Relief from Stay that, due to the District Court Order, Devon had no such continuing liability coverage under its applicable policy with CIC.

17.     Upon information and belief, Devon maintained liability insurance with two other carriers, one of whom has exhausted its policy limits, and another carrier who has denied coverage on Devon's claim and is party to an insurance coverage lawsuit currently pending in Federal court.

18.     The Motion for Relief from Stay was also expressly premised on Ace's assertion that Devon had liability insurance coverage and that joining Devon would not "impinge on Devon's bankruptcy proceedings since Devon's Insurer will have to defend the (actions) and pay any resulting verdict for personal injuries up to the amount of all applicable insurance coverage available to (Devon)." Central to the Motion's argument that there was proper "cause" under bankruptcy law to lift the automatic stay was that the (above-styled actions) "will be defended by Insurer, and will not require substantial efforts from Devon's estate or its counsel."

---

Kerrie Collins v. Bass Homes, Inc., et al. and Jason and Carrie Herrington v. Bass Homes, Inc. et. Al., S.D. Mississippi, C.A. No.: 1:13-00297 and (ii) Gregg and Sherry Wiggins v. Ace Home Centers, Inc., Case No.:30-CV-2013-900145 in Circuit Court of Escambia County, Alabama.

19.     Based upon the representations made in Ace's Motion for Relief from Stay, the Court entered an order granting relief from stay (the "Order") and permitted Ace to join Devon in the Lawsuits as a third party defendant.

20.     In order to assert a defense in the Lawsuits, Devon would have to retain local counsel, thus resulting in substantial hardship to Devon.  Defense of the claims would require Devon to expend substantial time and money to protect its interests and those of Devon's Estate (the "Estate").

21.     Devon has not hired counsel or otherwise defended itself in the Lawsuits.  CIC has not defended Devon in the Lawsuits based on the District Court Order,

22.     On May 26, 2015, Ace filed a Motion for Entry of Default against Devon (the "Default Motion") in the United States District Court for the Eastern District of Louisiana.  The Default Motion noted that no response had been filed despite Ace's counsel having sent correspondence on April 6, 2015 to Devon's General Counsel advising that Devon had been reconsolidated as a Third Party Defendant in the above-styled causes and requesting that Devon file a response.

## RELIEF REQUESTED

23.     CIC hereby joins in Devon's request for entry of an order re-imposing the automatic stay.

24.     The Order was entered based on Ace's claim that Devon was adequately represented in the Lawsuits when, in fact, it was not.  The Court was without sufficient information to make an informed ruling in granting the Order.

25.     CIC avers that had the Court been apprised of the fact that there is no insurance coverage available to Devon with regard to the Lawsuits, it would have understood that lifting of

the automatic stay would require Devon and its counsel to devote substantial time and effort to defend Devon's interests in the suits, which would divert substantial assets from the Estate.

26.     Finally, since there is no insurance coverage for any judgments that may result from the Lawsuits, those judgments would further deplete any estate assets outside of the regular claims process.

## CONCLUSION

For these and all of the foregoing reasons, The Cincinnati Insurance Company respectfully joins Devon in its request that the automatic stay provided under 11 U.S.C. §362 be reimposed as to Ace Home Centers, Inc. and others and for such other and further relief as is just and proper.

Dated: August 11, 2015

Respectfully submitted,

BERNSTEIN-BURKLEY, P.C.
BY: /s/Kirk B. Burkley
Kirk B. Burkley, Esq. (PA ID. No. 89511)
707 Grant Street
Suite 2200 Gulf Tower
Pittsburgh, PA  15219-1900
(412) 456-8100
e-mail:  kburkley@bernsteinlaw.com

*Attorney for The Cincinnati Insurance Company*