UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | CIVIL ACTION |
| | NO. 09-02047 |
| REF: C.A. 10-362 | SECTION "L" (5) |

### ORDER & REASONS

Before this Court is Oceanique's Motion for Court Review of the Special Master's Opinion (Rec. Doc. 19023). Having read the parties' briefs, heard the motion on oral argument, and reviewed the applicable law, the Court now issues this Order & Reasons.

I.   BACKGROUND

Oceanique was the developer of new condominiums in Fort Pierce, Florida. During the initial construction from February to September 2006, Oceanique purchased thousands of sheets of drywall from Banner Supply Company. Oceanique later learned that many, if not all, of the drywall boards it used in construction contained defective Chinese drywall. Thus, to mitigate lost sales, Oceanique promptly began demolition and remediation in May 2009, one month before the initial transfer that initiated MDL 2047. On June 16, 2009, this Court issued Pretrial Order 1, which reminds parties and counsel that "their duty to preserve evidence may be relevant to this action." On October 9, 2009, this Court issued Pretrial Order 1B ("PTO 1B"), which provides detailed requirements regarding the preservation of physical evidence. Oceanique first retained counsel in December 2009, approximately seven months after they began demolition.

After extensive discovery and several bellwether trials, the PSC and Knauf entered into a Settlement Agreement. On December 20, 2011, Knauf filed the Settlement Agreement, which

was later approved by the Court.  It defined the Settlement Class in which Oceanique is a member.  The Settlement Agreement, *inter alia*, required a claimant to produce photographs or samples of the drywall in order to substantiate that it was Knauf ("KPT") drywall.  Oceanique made a claim under this Agreement for remediation costs of $3,180,499.28.  On May 11, 2015, the Special Master issued its opinion and decree regarding Oceanique's claims.  The Special Master concluded that of the approximately 6,000 drywall boards removed from the condominiums, Oceanique only adhered to the preservation requirements of PTO 1B with respect to one board.  Consequently, the Special Master reduced Oceanique's claim by 5,999/6,000.  Accordingly, despite Oceanique's claim for $3,180,499.28 in remediation costs, the Special Master awarded only $530.08 on the grounds that Oceanique's failure to comply with PTO 1B was prejudicial to determining who manufactured the drywall at issue.

## II.     PRESENT MOTION

Oceanique filed the instant motion requesting that the Court overrule the Special Master's decree and increase the Oceanique award.  Oceanique does not dispute that it did not technically comply with PTO 1B.  Rather, it argues that PTO 1B is not strictly applicable to its claim since it incurred remediation costs before the present MDL was formed and before the Court issued PTO 1B, and thus, any failure to fully comply with PTO 1B is excusable.  Oceanique also argues that despite its failure to strictly comply with PTO 1B, it provided ample evidence that KPT drywall existed in the majority of its remediated units, supporting its request for an increased award.

Oceanique began its remediation efforts one month before the formation of the present MDL and several months before the promulgation of PTO 1B.  Focusing on the wording of PTO 1B, which provides parties with detailed instructions on how to preserve evidence "from [October 9, 2009] forward", Oceanique argues that PTO 1B does not apply to it since its

demolition and remediation predate October 9, 2015.  Oceanique further argues that once it retained counsel and became aware of PTO 1B, it did what it could to comply with the rule after-the-fact.  It gathered fifty-two pages of Banner St. Lucie invoices, retained sections of drywall boards and related items, and attempted to fill in the gaps in evidence with sworn affidavits of employees.  In response, Knauf argues that PTO 1B was simply a refinement of the preservation requirement of PTO 1, which itself was a refinement of a potential plaintiff's general duty to preserve evidence in the event of a litigation.  Knauf also argues, by deciding not to opt out of the Knauf Settlement Agreement, Oceanique agreed that its claims would be subject to the Settlement Agreement terms, which included that any claims not complying with PTO 1B would be disallowed or reduced.

### III.    ANALYSIS

The present motion contemplates an exceptional, if not one-of-kind, situation where the necessary remediation of Chinese drywall began before the formation of the present MDL.  Although the Court appreciates Knauf's argument that Oceanique's decision not to opt-out of the Settlement Agreement bound Oceanique to PTO 1B, the Court also acknowledges the ambiguity of the phrase "from this date forward."  Furthermore, considering the uniqueness of Oceanique's position in that it began remediation prior to the promulgation of PTO 1B, the Court recognizes that Oceanique did its best under the circumstances to provide evidence for its claim to be fairly determined.  The evidence provided includes the following:

1. Hundreds of photographs of the removal of drywall.

2. Samples of Knauf drywall and related items that Oceanique preserved.

3. Affidavits from Oceanique employees and subcontractors on the repair/remediation project attesting the presence and use of Knauf drywall.

4. Evidence that Oceanique only bought from Banner Port St. Lucie.

5. Banner Distributor Profile Forms indicating that:
    a. Banner Port St. Lucie could not identify Taishan drywall in what it received and distributed[1];
    b. Banner Port St. Lucie sold Knauf drywall through November 2006[2]; and
    c. Banner Port St. Lucie was the only Banner entity that supplied Oceanique.
6. The Banner Settlement Allocation Plan wherein Knauf recovered 60% of the Banner money allocation.

Contesting the reliability of Oceanique's evidence, Knauf notes that the only Oceanique unit that was professionally inspected was deemed to be 100% Taishan. Knauf further argues that the Special Master's reduction of Oceanique's claim to $530.08 is not in error because only one KPT drywall board was documented so as to satisfy the requirements of PTO 1B. However, to penalize Oceanique by crediting them for only board out of six thousand seems draconian in that it punishes a developer for acting responsibly in trying to immediately remediate the affected property. While this Court greatly appreciates the Special Master's conscientious efforts to uphold the requirements of the Settlement Agreement, strict compliance to PTO 1B is not warranted under these unique circumstances.

The following evidence substantiates Oceanique's claim that the majority of its drywall was Knauf drywall: (i) The Banner profile forms establish that the majority of the drywall sold by Banner was Knauf drywall; (ii) Knauf implicitly acknowledged that the majority of Banner drywall was Knauf drywall by insisting on recovering a minimum of 60% of the money owed by Banner in the Banner Settlement Allocation Plan; and (iii) Oceanique purchased its drywall exclusively from Banner St. Lucie. Accordingly, the Court agrees with Oceanique's argument

---

[1] This is in comparison with three other Banner entities that were able to specifically identify that the received Taishan drywall and the number of sheets they received.

[2] Sales records from Banner Port St. Lucie to Oceanique show the last sale on September 13, 2006.

that the maximum discount that should be applied to Oceanique's claim due to the presence of non-KPT drywall is 40%.

Accordingly, **IT IS ORDERED** Oceanique's Motion for Court Review of the Special Master's Opinion and Decree (Rec. Doc. 19023) is **GRANTED** the Special Master Award of $530.08 is **OVERRRULED.**

**IT IS FURTHER ORDERED** that Oceanique be awarded a total of $1,908,299.57, which represents a 40% reduction from its original claim.

New Orleans, Louisiana this 21st day of August 2015.

_____
UNITED STATES DISTRICT JUDGE