# EXHIBIT B



**BAKER DONELSON**
BEARMAN, CALDWELL & BERKOWITZ, PC

201 ST. CHARLES AVENUE
SUITE 3600
NEW ORLEANS, LOUISIANA 70170
PHONE:   504.566.5200
FAX:        504.636.4000

www.bakerdonelson.com

KERRY J. MILLER
Shareholder
Direct Dial:      (504) 566-8646
Facsimile:       (504) 585-6946
Email:             kjmiller@bakerdonelson.com

***PRIVILEGED AND CONFIDENTIAL SETTLEMENT COMMUNICATIONS***

March 4, 2015

**Via Email and Federal Express: balhoff@pabmb.com**

Mr. Daniel J. Balhoff
Perry, Atkinson, Balhoff, Mengis & Burns, L.L.C.
2141 Quail Run Drive
Baton Rouge LA 70884-3260

      RE:   Oceanique Development

## CONFIDENTIAL POSITION PAPER

Dear Mr. Balhoff:

      In preparation for the March 12, 2015 mediation of the referenced matter, the Knauf Defendants[1] submit the following confidential position paper regarding the claims made by Oceanique Oceanfront Condominium Association, the unit owners, tenants, and Tricon Development of Brevard, Inc. ("Claimants").

### I.     INTRODUCTION

      The Oceanique Development (the "property") is an oceanfront condominium located in Fort Pierce, Florida. The property is split between two buildings: Building A and Building B. Building A contains 14 affected units of which one is owner-occupied. Building B contains 25 affected units of which 5 are owner-occupied.

---

[1] The Knauf Defendants include Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf International GmbH, Knauf Insulation GmbH, Knauf AMF GmbH & Co. KG, Knauf UK GmbH, Knauf do Brasil Ltda., Gebr. Knauf Verwaltungsgesellschaft KG, PT Knauf Gypsum Indonesia, or Knauf Gips KG.

Mr. Daniel J. Balhoff
Oceanique Development
March 4, 2015
Page 2

Construction on the property began in 2005 and was completed in 2008. The property was developed and constructed by Tricon Development of Brevard, Inc. According to Claimants, the existence of Chinese Drywall in the property appears to have been discovered in early 2009.

## II. Background

Claimants, which include a highly sophisticated real estate developer, failed to maintain samples of the alleged Knauf Plasterboard Tianjin ("KPT") Chinese Drywall and have submitted insufficient evidence to support their claim. Evidence of a total of ten KPT Chinese Drywall boards has been provided for a property that is over 100,000 square feet. Prior to mediation, the Knauf Defendants declined to make a settlement offer because:

(1) There is evidence that the property contained Non-KPT ("Taishan") Chinese Drywall;

(2) Claimants failed to adhere to the evidence preservation requirements of Pretrial Order 1 ("PTO 1"), Pretrial Order 1B ("PTO 1B"), and the Knauf Class Settlement Agreement;[2] and

(3) Claimants provided limited and unreliable evidence of KPT Chinese Drywall located on the property.

Since no further documentation was provided regarding KPT or Taishan Chinese Drywall, no further action was taken by the Knauf Defendants to settle the claim.

## III. POSITION OF THE KNAUF DEFENDANTS

**A. Evidence that Taishan Chinese Drywall was located in the property and that additional evidence has been withheld contradicts Claimants' claim submission.**

Evidence that Taishan Chinese Drywall was located in the property, along with the self-serving affidavits, total lack of KPT Chinese Drywall evidence, and omitted documentation lead the Knauf Defendants to the conclusion that Claimants' claim submission is incomplete, fraudulent and not compensable under the Knauf Class Settlement Agreement.

First, Unit 801B's Plaintiff Profile Form ("PPF") is clear that Taishan Chinese Drywall (4 feet x 12 feet x 1/2 inch) was located throughout the unit. It even describes the Taishan

---

[2] Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 and subsequent Amendments to the agreement were filed with the Fourth Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 being the final and controlling agreement.

Mr. Daniel J. Balhoff
Oceanique Development
March 4, 2015
Page 3

markings.[3]  There is no indication that KPT was installed in Unit 801B.  However, neither Claimants' documentation nor their affidavits reference the presence of Taishan Chinese Drywall located in the property.  It would be consistent with other cases in southern Florida if Claimants' property contained most, if not all, Taishan Chinese Drywall.  As the company that supplied Claimants' Chinese Drywall, Banner Supply Company, Inc. ("Banner") provided thousands of sheets of Taishan Chinese Drywall to Claimants' area of Florida during the time the property was constructed.  Further, in MDL-2047, there have been hundreds of cases from Florida where Banner was the supplier and claimants originally alleged KPT Chinese Drywall only to determine later that the properties contained all or mostly all Taishan Chinese Drywall.  Therefore, the veracity of Claimants' claim submission is questioned based on the lack of supporting documentation for the presence of KPT Chinese Drywall, the failure to admit the presence of Taishan Chinese Drywall, and the known fact that Taishan Chinese Drywall was prevalent in southern Florida during this time.

Second, the accuracy of Claimants' claim submission is further questioned by the fact certain information was fraudulently submitted.  For instance, for each of the 39 units on the property, Claimants fraudulently uploaded as evidence of KPT Chinese Drywall the same and only photograph of a single KPT Chinese Drywall board from an unknown unit and location.  Claimant's claim submission also has withheld evidence from the Knauf Defendants.  For example, Unit 801B's PPF is clear that a third-party inspection report was completed by Yanes Security and Investigative Services, Inc. The Knauf defendants have not received the Yanes inspection report or any of the supporting photo and video documentation of Chinese Drywall that typically accompanies it.[4]  Further, in a September 2009 email from a unit owner to Claimants, the unit owner stated that "[i]t is quite clear to us that there is a problem with our unit that is indicative of Chinese Drywall....We have enclosed pictures taken in our unit that match this website's pictures."[5]  Twelve pictures are attached to the email; however, only two have been provided to the Knauf Defendants, and they only show evidence of corrosion on a HVAC unit.  Finally, Claimants' self-serving affidavits also withheld critical evidence.  The affidavits state that Claimants "reviewed photographs of the drywall coming out of the affected units that are attached hereto" and "preserved a number of pieces of drywall that came from the affected units."[6]  However, neither the photo attachment to the affidavits nor the preserved samples of drywall were ever submitted to the Knauf Defendants.

It is the Knauf Defendants' belief that Claimants are selectively submitting evidence of the presence of KPT Chinese Drywall while withholding further evidence of Taishan Chinese Drywall.  Taking into account the presence of Taishan Chinese Drywall and the non-production of evidence, the Knauf Defendants' position is that Claimants' claim submission is incomplete, fraudulent, and not compensable under the Knauf Class Settlement Agreement.

---

[3] *See* Exhibit A: Plaintiff Profile Form of Unit 801B.
[4] *See id.*
[5] *See* Exhibit B: September 2009 Email from Owner of Unit 1101B.
[6] *See* Exhibit C: Affidavits of Claimants from Tricon Development of Brevard, Inc. at para. 16-17.

Mr. Daniel J. Balhoff
Oceanique Development
March 4, 2015
Page 4

**B.   Claimants failed to preserve evidence in accordance with PTO 1, PTO 1B, and the Knauf Class Settlement Agreement.**

Claimants include a highly sophisticated real-estate development company that was allegedly alerted to the possibility of the presence of Chinese Drywall in the first quarter of 2009 and commenced remediation sometime in the summer or fall of same year.[7]   By the time of remediation, the presence of defective Chinese Drywall in southern Florida was widely known and reported through local and national news organizations.[8]   Notwithstanding that the Claimants felt the need to remediate due to "loss of sales and threatened lawsuits,"[9] that the presence of Chinese Drywall was widely known throughout southern Florida, and that Claimants alleged a $3,000,000.00+ claim for remediation, Claimants failed to preserve and submit to the Knauf Defendants a single sample of KPT Chinese Drywall and have submitted photographic evidence of only ten KPT Chinese Drywall boards. Such a complete disregard for preservation of evidence warrants a dismissal of Claimants' claims under PTO 1, PTO 1B, and the Knauf Class Settlement Agreement.

Dated October 9, 2009, PTO 1B established "the Court's expectations, from this date forward, with respect to the preservation of physical evidence from properties that may be repaired by the parties during the course of this litigation." PTO 1B, pg. 1. The Court crystalized the importance of evidence preservation when it proclaimed, "From this date forward, all persons or entities who have or who intend to pursue a claim relating to allegedly defective Chinese-manufactured drywall . . . shall preserve . . . physical evidence at their own expense." PTO 1B pg. 2.

Judge Fallon made it clear that all Claimants were required to preserve physical evidence by following a few basic procedures, including but not limited to the following:

> The parties shall photograph the backside of each Chinese drywall board immediately after it is removed on-site, and, document on a floor plan, building diagram, or other similar form of documentation, the location of each full or partial Chinese drywall board removed from the property and its photograph. Photographs of the wall sections should be taken so that any markings on the backside of the drywall sections are most clearly visible in the photographs.

Claimants failed to adhere to the protocols of PTO 1B based on the extremely limited photo documentation provided to the Knauf Defendants as only one photo of installed KPT Chinese Drywall board was provided for the entire 100,000+ square foot property (39 separate units and

---

[7] *See* Exhibit D: February 4, 2009 email to Rob Kodsi linking Chinese Drywall lawsuits.
[8] *See* Exhibit E: List of Local and National News Reports on Chinese Drywall in 2009.
[9] See Exhibit C: Affidavits of Claimants from Tricon Development of Brevard, Inc. at para. 6.

Mr. Daniel J. Balhoff
Oceanique Development
March 4, 2015
Page 5

common areas). In addition to failing to provide samples and photo documentation, Claimants also failed to adhere to PTO 1B based on the following:

- No third-party inspection report was provided for any of the units or common areas.

- Although the four Claimant affidavits submitted by the employees of Tricon (the company which carried out the remediation) state evidence preservation was completed – none was provided to us.

Claimants will argue that they did not have the benefit of the protocols offered by PTO 1B at the time of the discovery and remediation of the alleged KPT Chinese Drywall, as PTO 1B was issued on October 9, 2009. First, the timeline of alleged KPT Chinese Drywall discovery and remediation in Claimants' affidavits is inconsistent with other documentation provided. For example, Claimants were still receiving inquiries and confirmation of the presence of Chinese Drywall at the property as late as October 2009.[10] Further, as late as December 2009, well after the court-established preservation protocols of PTO 1B were entered, other unit owners at the property were still submitting complaints regarding the continued "measures to eradicate the [Chinese Drywall] problem."[11] Finally, Claimants did not confirm that all Chinese Drywall was removed from the property until January 6, 2010.[12]

Even if Claimants did remediate the affected areas of the property prior to PTO 1B, Claimants, as sophisticated real-estate developers, would have been aware of the presence of Chinese Drywall in southern Florida and the ongoing litigation since Claimants themselves were threatened with lawsuits regarding Chinese Drywall. Further, Claimants would have been on notice of the MDL litigation in New Orleans and PTO 1, which imposed a duty of preservation. Dated June 16, 2009, PTO 1 established that all parties and their counsel have a duty to preserve evidence that may be relevant and the duty extended to "documents, data, and tangible things in possession, custody and control of the parties...." PTO 1, pg. 7. At this early stage of the MDL litigation, the Court put interested parties on notice of the importance of evidence preservation and that "[f]ailure to comply may lead to dismissal of claims, striking of defenses, imposition of adverse inferences, or other dire consequences." PTO 1, pg. 8. Therefore, whether under PTO 1 or PTO 1B, Claimants failed to adhere to necessary and critical preservation protocols ordered by the Court.

Notwithstanding Claimants' anticipated argument that remediation occurred prior to PTO 1 or PTO 1B, Claimants are subject to the Knauf Class Settlement Agreement, which mandates that the review and administration of Already Remediated Home ("ARH") claims is done pursuant to PTO 1B. All claims (39 units and 2 claims for common areas) were included in one

---

[10] *See* Exhibit F: Letter from Attorney of Owner of Unit 301.
[11] *See* Exhibit G: December 2009 email from Owner of Unit 405.
[12] *See* Exhibit H: January 6, 2010 Memorandum from Maurice Kodsi to Frank Guerra.

Mr. Daniel J. Balhoff
Oceanique Development
March 4, 2015
Page 6

or more of the following omnibus complaints subject to the Knauf Class Settlement Agreement: *Payton* (Omni I), *Rodgers* (Omni IV), and *Block* (Omni X). The Knauf Class Settlement Agreement, which was granted final approval by Judge Fallon, states in pertinent part:

> "The Special Master and the Court will take into consideration, in determining whether to allow a claim or the amount of the claim, whether the Owner has complied with MDL Pretrial Order 1B... for preservation of evidence. Subject to review by the Special Master or the Court, the failure to preserve evidence as required by law will result in disallowance or reduction in the amount of the claim if the failure has been prejudicial to a determination of the claim."

*See* Knauf Class Settlement Agreement; Exhibit A at IV(d)(4). Even if Claimants were unaware of the PTO 1B protocols at the time of remediation, which is disputed, Claimants were on notice that the Knauf Class Settlement Agreement would take into consideration whether PTO 1B was followed in determining whether to allow a claim and the amount of the claim. Claimants acknowledge that PTO 1B protocols were not followed in remediating the property yet failed to opt out of the Knauf Class Settlement Agreement.

Therefore, pursuant to PTO 1, PTO 1B, and the Knauf Class Settlement Agreement, Claimants have failed to comply with the necessary preservation protocols and their claims should be dismissed.

C.  **The evidence provided by Claimants' cannot establish a compensable claim under the Knauf Class Settlement Agreement.**

First, evidence of only ten KPT boards for a property that is over 100,000 square feet and an alleged $3,000,000.00+ claim is insufficient to justify a claim under the Knauf Class Settlement Agreement. It is unknown what unit or units the ten photos were taken from. Further, of the ten photos, only a single photo shows a KPT Chinese Drywall board installed, and it is the only evidence of KPT Chinese Drywall allegedly installed in the entire property. In stark contrast to the lack of KPT Chinese Drywall evidence, Claimants have submitted many post-remediation photographs as well as hundreds of documents evidencing costs and expenses associated with the remediation. This evidence offers no support for Claimants' argument that KPT Chinese Drywall was located in the property and ignores the fact that manufacturers other than the Knauf Defendants imported Chinese Drywall to Florida. The lack of supporting evidence and documentation of KPT Chinese Drywall must be reviewed in light of the Knauf Class Settlement Agreement. Therefore, whether to allow a claim or the amount of the claim will be judged on the supporting evidence provided pursuant to PTO 1B. As provided here and above, the provided evidence cannot establish a compensable claim under PTO 1B and the Knauf Class Settlement Agreement.

Mr. Daniel J. Balhoff
Oceanique Development
March 4, 2015
Page 7

  Second, the affidavits that Claimants will rely on are self-serving, insufficient, and unreliable to support their claim that the property contained KPT Chinese Drywall. The four Claimant affidavits provided to the Knauf Defendants (by different Tricon employees) all contain the exact same statements regarding drywall evidence: "viewed the photographs of the drywall coming out of the affected units...containing Knauf-Tianjin markings and/or end tape and they are consistent with what [Claimants] viewed in each unit during the demolition phase."[13] Claimants' affidavits are self-serving and insufficient since there is a lack of supporting evidence to confirm and corroborate their statements. Additionally, despite the Claimants' affidavits that they "only saw drywall that had markings of Knauf Tianjin," Claimants themselves have submitted evidence that the property also contained Knauf Indonesia Drywall.[14] The affidavits are further incorrect and unreliable since there is no admission of the presence of Taishan Chinese Drywall where at least one unit contained Taishan Chinese Drywall throughout the entire unit.[15] Therefore, the affidavits are inadequate to support a finding that KPT Chinese Drywall was located in the property and are inaccurate in that they disregard the non-KPT Chinese Drywall that was in the property.

## IV. CONCLUSION

  First, evidence that Taishan Chinese Drywall was located in the property, along with the fraudulent self-serving affidavits, total lack of KPT Chinese Drywall evidence, and omitted documentation lead the Knauf Defendants to the conclusion that Claimants' claim submission is incomplete, fraudulent and not compensable under the Knauf Class Settlement Agreement. Second, Judge Fallon gave MDL Claimants specific evidence preservation procedures in PTO 1B so their claims could be preserved if they chose to remediate. PTO 1 and/or PTO 1B was in effect at the time of remediation and it was not followed by Claimants. Further, the Knauf Class Settlement Agreement, which controls the Claimants' claims, adopts PTO 1B as a method to determine whether a claim is compensable. Claimants' claim should be dismissed based on a lack of evidence preservation alone. Finally, regardless of the remediation timing, Claimants were on notice that their claims would be reviewed under PTO 1B pursuant to the Knauf Class Settlement Agreement. Claimants have submitted insufficient and unreliable evidence of KPT Chinese Drywall to support a compensable claim under PTO 1B and the Knauf Class Settlement Agreement. Allowing such a claim would be in essence re-writing the Knauf Class Settlement Agreement by shifting the burden of evidence preservation to the Knauf Defendants even though the evidence has at all times been in the Claimants' control.

---

[13] *See* Exhibit C: Affidavits of Claimants from Tricon Development of Brevard, Inc. at para. 16.
[14] See Exhibit I: October 8, 2009 Pre-Remediation Photograph provided by Claimants.
[15] *See* Exhibit A: Plaintiff Profile Form of Unit 801B.

Mr. Daniel J. Balhoff
Oceanique Development
March 4, 2015
Page 8

In short, Claimants appear to have submitted a fraudulent claim or close to it and, in any event, have failed to meet there burden of proof. Therefore, no offer will be made by the Knauf Defendants.

Respectfully submitted,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

KERRY J. MILLER

KJM/DJD/sc