# EXHIBIT D

1                    UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF LOUISIANA

3


4
   IN RE:  CHINESE-MANUFACTURED   *        Docket 09-MD-2047
5          DRYWALL PRODUCTS       *
           LIABILITY LITIGATION   *        Section L
6                                 *
   Relates to:  10-362            *        New Orleans, Louisiana
7                                 *
                                  *        July 14, 2015
8  * * * * * * * * * * * * * * * *

9


10                       ORAL ARGUMENT BEFORE
                  THE HONORABLE ELDON E. FALLON
11                 UNITED STATES DISTRICT JUDGE

12
   Appearances:
13

14 For Maurice Kodsi          Levin Fishbein Sedran & Berman
   and Robert Kodsi:          BY:  FREDERICK S. LONGER, ESQ.
15                            510 Walnut Street, Suite 500
                              Philadelphia, Pennsylvania 19106
16

17 For the Knauf              Baker Donelson Bearman
   Defendants:                 Caldwell & Berkowitz, PC
18                            BY:  DANIEL J. DYSART, ESQ.
                              201 St. Charles Avenue, Suite 3600
19                            New Orleans, Louisiana 70170

20
   Official Court Reporter:   Toni Doyle Tusa, CCR, FCRR
21                            500 Poydras Street, HB-275
                              New Orleans, Louisiana 70130
22                            (504) 589-7778

23


24
   Proceedings recorded by mechanical stenography using
25 computer-aided transcription software.

1                          **I N D E X**

2                                                    <u>Page</u>

3    Oral Argument

4          Frederick S. Longer, Esq.                    4

5          Daniel J. Dysart, Esq.                      14

6          Frederick S. Longer, Esq.                   22

7          Daniel J. Dysart, Esq.                      24

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## PROCEEDINGS

### (July 14, 2015)

THE COURT:  Our first motion is Oceanique's motion for Court review of the special master's opinion.  By way of background, in 2006 Oceanique developed new condominiums in Fort Pierce, Florida, using thousands of sheets of drywall it purchased from Banner Supply.  Once the Chinese drywall problem became public, Oceanique lost potential sales.  In order to mitigate future lost sales, Oceanique began demolishing and remediating the apartments one month before the initial transfer that began the MDL proceeding.

According to Oceanique, it was not considering filing a lawsuit at the time the evidence was available for preservation in May.  They then decided to file a lawsuit, but they had already destroyed the material.  When they made a claim, they were not able to show pictures of all of the material.  They showed pictures, I think, of one sheet.

The special master felt he didn't have enough information to justify the position of Oceanique and, therefore, declined the amount that they sought.  They sought several million dollars, and I think he awarded them some $500 because of one or more sheets that they were able to show.  He took the position they didn't comply with the order of the Court and, therefore, they were not entitled to the amount they sought.

1    I'll hear from the parties.  They are now
2  appealing to me.
3         **MR. LONGER:**  Good morning, Your Honor.  Fred Longer
4  on behalf of Maurice and Robert Kodsi, who are the principals
5  of Tricon Development, who are the developers of Oceanique.
6  Mr. Montoya and Mr. Gonzalez were not available, so I am here
7  on their behalf to argue on behalf of the Kodsis.  They are on
8  the telephone right now listening in, to my knowledge, sir.
9         The history that you provided is entirely
10  accurate.  In 2006 the Kodsis began the development of
11  Oceanique.  There are 144 units in the building.  There are two
12  buildings.  One building has 14 units that are affected.  The
13  other building has 25 units.  All together, there's 39 units
14  that had affected drywall in them and the common areas.
15         Sometime in 2009 it became pretty widespread
16  knowledge throughout southern Florida that there was a drywall
17  problem.  The Kodsis became aware of that and, acting as
18  responsible developers, when they recognized the problem, they
19  addressed it.  They addressed it promptly.  They addressed it
20  fully.  The instance, as you have described it, Your Honor --
21  and it's also in affidavits which are part of the record --
22  confirm that they began the demolition work to repair and
23  remediate in May of 2009 which, as Your Honor recognized, is
24  before the existence of MDL 2047.  They completed all of the
25  remediation or all of the demolition, at least, by

10:06  1   October 2009, which also precedes Pretrial Order 1(B) which is

10:06  2   dated October 9, 2009.  I'll come back to why that's relevant,

10:06  3   Your Honor.

10:06  4        Having done that, they felt in good conscience

10:06  5   they could participate in the settlement that involves Knauf.

10:06  6   They went through the already remediated homes process.  There

10:07  7   are several things now that result from that which factually

10:07  8   are not in dispute and I wanted to go through them.

10:07  9        There's no dispute on Knauf's side that the

10:07  10   remediation costs that were incurred by Oceanique were

10:07  11   $3.2 million.  There's really no dispute that there were

10:07  12   affidavits provided in the record for Robert Kodsi and Maurice

10:07  13   Kodsi, who were the developers; for Ian Askew, who was the

10:07  14   superintendent; and for Manuel Gamez-Nino, who was responsible

10:07  15   for the demolition.  All four witnesses "affided" to the fact

10:07  16   that they saw KPT drywall coming out of the remediated units.

10:07  17   There's no controversy over that.  There is no controverted

10:08  18   fact over that.

10:08  19        Another fact that is not disputed is that there

10:08  20   was photographic evidence that confirms the testimony of these

10:08  21   affiants, and that was in Exhibit H to our papers.  It shows at

10:08  22   least 10 photographs of Knauf drywall.  It was interpreted that

10:08  23   there was only one photograph that actually complied with

10:08  24   PTO 1(B), but there are 10 photographs confirming it.  These

10:08  25   are uncontroverted facts, Your Honor.  It's not going to be

disputed.  Plaintiffs also preserved sections of KPT drywall and made them available for inspection.

It's also uncontroverted that Banner Port St. Lucie was the Banner Supply Company -- as you recall, Banner had several subparts in terms of regions.  The Port St. Lucie Banner was the Banner that supplied the drywall to the Kodsis, and there's invoices demonstrating all of these deliveries.  That's part of the record as well.  We have Banner Port St. Lucie's defendant profile form, the supplier profile form, which indicates that that Banner entity had no Taishan board.  It only had KPT drywall.  There's also, as I said, invoices that demonstrate that thousands of sheets were delivered from Banner Port St. Lucie to the Oceanique development.

It's also not going to be disputed, Your Honor, that in the Banner allocation plan, which is part of the Banner settlement, that Knauf has taken contribution from that at the rate of 60 percent because Knauf insisted that they recover 60 percent of anything that Banner did.  It's because of that that we have argued there's a 60/40 split if the Court ever gets to the point of deciding that a reduction should apply to this.  We have used the 60/40 reduction that KPT wanted in the Banner allocation plan.

Finally, as I say, there's really no dispute that Oceanique spent $3,180,499.28 on repairs, which came out

1  to approximately $31.80 a square foot, which is far less than
2  the repair costs that KPT or Knauf is experiencing in the Knauf
3  settlement agreement.

4  So really the savings that are afforded by
5  having Oceanique do its own repairs, as opposed to going
6  through the settlement agreement, should inure to their benefit
7  because it would inure to Knauf's benefit to pay them at that
8  savings rate.

9  The Kodsis were at great hardship to spend that
10 money.  The economy was tanking at the time.  The drywall
11 situation created a huge marketing problem for them.  It was an
12 endurance contest for them to do what they had to do to do the
13 right thing, to repair the units and get it done right.  Having
14 done that, they are now confronted with going into a settlement
15 in good faith, believing that they would be able to recover
16 because their work was done prior to the existence of the MDL,
17 prior to the existence of PTO 1(B).

18 Now, why we are here is because, I believe,
19 Knauf is trying to kill the messenger and avoid its obligation
20 to pay, which was part of the settlement agreement.  Remember,
21 we negotiated in the settlement agreement an already remediated
22 home protocol, recognizing that there would be instances just
23 like this one where there would be uncertainty as to how to
24 calculate the KPT percentage.  That's why the whole provision
25 is there that there would be negotiations on the KPT

percentage, and I want to get into that a little bit more.

In the course of the mediation process, Knauf challenged the proofs that Oceanique put forward, and they are saying that there was insufficient evidence that there was KPT board in the units.  Well, what the settlement agreement provides, in essence, is that -- this is Exhibit A, which is the already remediated homes protocol of the settlement agreement.  It provides that parties going into it -- the plaintiffs going into it, the owners going into it -- had to provide, prior to a negotiation, documentation concerning the remediation of the affected property to the extent that such documentation is in the possession, custody, or control of the owner.

There is a recognition, Your Honor, in this language pregnant with the notion that there may not be evidence.  In fact, paragraph III(A)(1) says that.  It says photographs and/or video images of all drywall removed from the affected property during remediation is to be provided.  For those owners with claims pending, where available, such submission shall be in the form required by PTO 1(B) where it's available.

There's no dispute here that the Kodsis gave all of the information available to them in the course of the mediation process.  Now the question becomes what is the impact of the proofs that they gave.

10:15  1          Now, Mr. Balhoff interpreted the settlement

10:15  2   agreement in basically a zero sum way.  I suppose I should

10:16  3   first tell you what Mr. Balhoff was looking at, which is this

10:16  4   paragraph here, which is paragraph IV(D)(4).  That says that

10:16  5   the special master and the Court will take into consideration,

10:16  6   in determining whether to allow a claim or the amount of claim,

10:16  7   whether the owner has complied with Pretrial Order 1(B), if the

10:16  8   claim is pending in the MDL, or with applicable state law

10:16  9   requirements for preservation of evidence.  Subject to review

10:16  10  by the special master or the Court, the failure to preserve

10:16  11  evidence as required by law will result in disallowance.  I

10:16  12  have emphasized "or reduction in the amount of the claim if the

10:16  13  failure has been prejudicial to a determination of the claim."

10:17  14          Mr. Balhoff, when he read that, he did not

10:17  15  recognize -- he took it as a zero sum sentence.  He interpreted

10:17  16  it to mean that these terms -- this is the highlighted language

10:17  17  here, Your Honor -- that these terms included any claims not

10:17  18  complying with Pretrial Order 1(B) would be disallowed.

10:17  19  Indeed, Knauf only agreed to pay certain claimants in the

10:17  20  settlements.  These did not include claimants that could not

10:17  21  satisfy Pretrial Order 1(B).

10:17  22          Well, the provisions I just indicated to

10:17  23  Your Honor suggest quite strongly that the protocol

10:17  24  contemplated that there would be instances where people could

10:17  25  not comply.  That's why there were going to be negotiations,

1  and that's why there was supposed to be instances where the
2  special master had some authority to provide for a reduction in
3  the award.
4          What we have done is to -- and I suggest that we
5  have substantially complied with Pretrial Order 1(B) because,
6  as I said to Your Honor at the beginning, it didn't even exist
7  at the time that the demolition took place.
8          So the Kodsis are faced with a situation where
9  they have already done the demo.  They have preserved evidence.
10 There's photographic proof of it, there's affidavit evidence --
11 which is valid evidence the last I knew in terms of Federal
12 Rules of Evidence -- and yet it was ignored.  That evidence was
13 actually ignored by Mr. Balhoff.  It's not present in his
14 report.
15         Where he comes down is that Pretrial Order 1(B)
16 just outright precludes any proof going forward, but here's
17 where I come down and how I look at Pretrial Order 1(B).  The
18 critical language is right here, "from this date forward,"
19 Pretrial Order 1(B), issued on October 9, 2009, after the
20 demolition had taken place, and it applied prospectively.
21         So the question is:  Someone coming into the
22 settlement, who had done the remediation retrospectively, how
23 do you account for the application of Pretrial Order 1(B)?
24 There's an ambiguity there.  The point there is again repeated
25 because the Court says, "In summary, from this date forward,

10:20  1   all persons or entities who have or who intend to pursue a
10:20  2   claim relating to allegedly defective Chinese-manufactured
10:20  3   drywall and their agents, subsidiaries, and affiliates shall
10:20  4   preserve the following evidence at their own expense, subject
10:20  5   to further order of the Court."  So that was prospective
10:20  6   language, Your Honor, not retrospective language.
10:20  7         Then what they had to do was provide -- and it's
10:20  8   listed here -- drywall.  There are samples.  They were
10:20  9   available for inspection.  There's no dispute about that.
10:21  10  There's photographic evidence.  There's been substantial
10:21  11  compliance with Pretrial Orders 1 and 1(B).
10:21  12         By the way, Your Honor, the Oceanique claim did
10:21  13  not get filed until December 9, 2009.  They are in Florida.  I
10:21  14  don't mean this to be blanketly, but conceptually
10:21  15  Pretrial Order 1 -- which is going to be the fallback argument,
10:21  16  "Well, they were obliged to preserve," and that's what Pretrial
10:21  17  Order 1 said.  Pretrial Order 1(B) became very specific as to
10:21  18  preservation of drywall, but Pretrial Order 1 just talked
10:21  19  generally about preservation language.
10:21  20         The Kodsis or Oceanique were not in suit, so
10:21  21  conceptually it doesn't even apply to them and didn't apply to
10:22  22  them until they began litigation.  Now, we were retained by
10:22  23  them, I think, or the Colson Hicks firm was retained by them
10:22  24  in, I think, December and they got onto the complaint in
10:22  25  December.

1    So the point there is that there had been an

2    effort on their part to preserve evidence.  They have sections

3    of drywall available.  They have photographs of the drywall

4    that they did take down.  There's hundreds of photographs.

5    There's tens of photographs of KPT drywall.  There's hundreds

6    of photographs of the demolition work and the effort that

7    Oceanique went through to remedy the properties themselves, all

8    39 units and the common areas.

9    The kicker to all of this is that there's one

10   unit in the Oceanique property that had Taishan board.  How it

11   got there nobody knows.  It's because of the presence of that

12   that Knauf argued, well, then everything is unreliable.

13   Mr. Balhoff discounted everything that was provided, even

14   though the only proofs that we understand from the defense

15   profile form is that Banner Port St. Lucie only had KPT board.

16   So somehow a fraction of the entire board in

17   this 100,000 square feet remedy, 2,000 square feet -- two

18   percent -- was Taishan board.  The other 98 percent is

19   unaccounted and that's where the slippage is, and that's where

20   the negotiation was supposed to resolve how much drywall there

21   was.

22   What we came up with at the mediation with

23   Mr. Balhoff is that only one board -- one sheet, period,

24   $500 -- was presented as evidence to confirm this claim, and

25   that's just not so.  It's basically denying all of the

affidavit evidence.  It's denying all of the photographic
evidence.  It's denying the fact that -- I have gone through my
laundry list.  It just doesn't recognize what is there.

As a result, Your Honor, we think, quite
honestly, that the proofs are very strong and the equity is
very strong that there should have been a recovery here because
the situation is a unique situation.  The special master and
Knauf on the other side would not address the uniqueness.  They
are very rigid in their position, zero sum, in essence.  That's
not what this whole settlement was supposed to be about.  It
was supposed to be about compensating people who came forward
in good faith and tried to comply with the settlement.  That's
exactly what the Kodsis did.  That's why I think they should be
compensated, Your Honor.

Now, the numbers were $3.2 million.  I'm
rounding off now, $3.2 million.  At a 40 percent reduction to
60 percent, they were asking for $1.9 million.  I think that
the proofs are strong that they should recover their full
recovery, $3.2 million.

To the extent that the Court finds that the
evidence is not 100 percent firm, then a reduction is
applicable.  The reduction that we think is the appropriate
reduction is somewhere between 100 percent and 40 percent, but
it should not be down to practically zero at $500.  That was
wrong, and that's where we are.

THE COURT:  Okay.

MR. LONGER:  There's also an argument, Your Honor, about timeliness.  I would hope that the fact that we are here suggests that timeliness is not an issue.  To the extent that there is, the objection that the Colson Hicks firm filed was within 20 days of the opinion and decree of Mr. Balhoff.  I take it that that makes it timely.  I really fail to understand the argument on timeliness on that side.

THE COURT:  Let me hear from Knauf in response.

MR. DYSART:  Good morning, Your Honor.  May it please the Court.  Danny Dysart on behalf of the Knauf defendants.

In addition to the special master's opinion and decree, we have submitted various papers and oppositions in this matter that is all, for the record, what the special master reviewed in making his decision.  Therefore, I will try to keep my arguments brief to the issue, which is the special master's decision to reduce Oceanique's claim for failure to preserve and present evidence in accordance with the Knauf class settlement agreement.

I won't go back through the background again.  Mr. Longer, as he said, there's not many factual issues in dispute.  I do want to note that, as he said, in May 2009 Oceanique determined defective Chinese drywall and at that point began remediating up until October.  That consisted of 39 units and over 100,000 square feet.  Of that remediation, he

is correct that only 10 boards were actually preserved, and only one board that was installed on the property was shown to the Knauf defendants.

Now, December 20, 2011, the Knauf class settlement agreement, which was agreed to by Knauf and the PSC and approved by Your Honor, sets forth the class definition and the requirements to have a compensable claim under the settlement agreement. That settlement also provided ample notice and a full opportunity for claimants to opt out of the settlement agreement should they not want to be bound by the terms. As the special master recognized in his opinion and decree, Oceanique is a class member. They did not opt out of the settlement agreement, therefore, they are bound by the terms of the agreement that were agreed back in December of 2011.

That settlement agreement contemplates that Knauf will compensate claimants that have KPT drywall and remediate their homes, the ARH claims, pursuant to the ARH protocol, which, as he said, is Exhibit A. That ARH protocol has a mechanism to resolve disputes with respect to Knauf and claimants and it utilizes PTO 1(B).

It states that the special master and the Court will take into consideration, in determining whether to allow a claim or the amount of the claim, whether the owner has complied with MDL Pretrial Order 1(B). It goes on to state

1  that subject to review by the special master or the Court, the
2  failure to preserve evidence, as required by law, will result
3  in disallowance or reduction of the claim if the failure has
4  been prejudicial to the determination of the claim.

5          With respect to PTO 1(B), the fact that PTO 1(B)
6  was entered and went from that date forward by Your Honor's
7  Court does not mean that it's not applicable to the settlement
8  agreement.  That pretrial order was the standard for evidence
9  preservation and presentment for a claim under the settlement
10 agreement.  The parties negotiated that, and it's included in
11 the settlement agreement that that is the standard to look at
12 when an ARH claim comes forward.

13     **THE COURT:**  He says it's forward and he did it in the
14 back; he did it before it was entered.

15     **MR. DYSART:**  Understood, Your Honor.  Now, the
16 parties negotiated and agreed to that, that PTO 1(B) would be
17 included in the Knauf settlement agreement.  Nobody disputes
18 that Oceanique commenced their remediation prior to October of
19 2009.  It went up until 2009.  There's arguments that PTO 1,
20 which also set forth a preservation order, would apply.  Also
21 general considerations of what is required in the litigation
22 sense would be required to prove product identification in a
23 products liability case.

24         That pretrial order was set as the parties'
25 agreement in the Knauf settlement agreement.  If Oceanique

1    could not meet that standard, they had full opportunity and

2    equal notice to opt out of the settlement agreement.  They

3    chose not to.  They chose to bind themselves to these terms.

4              PTO 1(B) requires that the parties shall

5    photograph the back side of each Chinese drywall board

6    immediately after it was removed on site and document a floor

7    plan, building diagram, or other similar form of documentation,

8    the location of each full or partial Chinese drywall board

9    removed from the property and its photograph.  Photographs of

10   the wall sections should be taken so that any markings on the

11   back side of the drywall sections are most clearly visible in

12   the photographs.  As the special master recognized and as

13   Oceanique even recognized, it is undisputed that they did not

14   comply with PTO 1(B) or really any measure or preservation

15   that's close to it.

16             Now, Oceanique's really three main arguments --

17   there's a few others I will respond to, but there are three

18   main arguments -- is that PTO 1(B) does not apply, that the

19   distribution of drywall to Banner and the Banner settlement

20   agreement can be used as a method to determine the claim, and

21   that they have submitted additional affidavit evidence.

22             With respect to PTO 1(B), they argue that it

23   cannot apply to this claim.  First, PTO 1(B) was merely a

24   refinement of PTO 1, which imposed a duty to preserve evidence

25   and which itself was just general principles in pursuing a

1   claim in litigation.  Oceanique failed to preserve this

2   evidence under any standard, and its failure was prejudicial to

3   Knauf's determination of whether that property contained KPT

4   drywall.

5           More importantly, the timing of PTO 1(B) is

6   really irrelevant with respect to Oceanique because they are a

7   class member.  They did not opt out of the settlement,

8   therefore, they are bound by the terms.  Those terms include

9   that claimants need to comply with PTO 1(B) or they could have

10  their claim disallowed or reduced, as the special master found

11  in this case.

12          With respect to the argument that their claim

13  can be judged based on the drywall that was supplied to Banner,

14  Oceanique's argument fails because, first, the drywall that was

15  distributed to Banner was not so uniform or reliable to apply

16  that to a single property.  There were hundreds of thousands of

17  drywall that Knauf supplied to Banner.  It sounds a lot like a

18  market share or enterprise liability.  In that sense, that is

19  not recognized under the settlement agreement or under

20  Louisiana law, which governs the application of the settlement

21  agreement.

22          Finally, with respects to the affidavits, first,

23  the affidavits are insufficient in that nowhere in the

24  settlement agreement does it say supply affidavits and you can

25  bypass PTO 1(B).  Those affidavits are insufficient evidence to

support a claim under the Knauf class settlement agreement.
Oceanique knew this.  They had an opportunity to opt out.  They
did not.

**THE COURT:**  They say something about Banner's
Port St. Lucie only supplied KPT and that's where they got it.

**MR. DYSART:**  They got drywall from both Banner Port
St. Lucie and they -- obviously, if that is correct, then they
must have gotten drywall from other places as well because it's
undisputed that the best evidence in this matter is Unit 801B.
That unit is a 100 percent Taishan unit.  That unit was the
only unit that was fully inspected.  It was 100 percent
Taishan.  The evidence of that is better than the evidence that
was supportive for KPT drywall.

Second, the affidavits are inaccurate, as I
stated, because they don't even recognize that 801B did have
Taishan board nor did they say they saw any Taishan drywall
coming out of the units.

Just a couple of other points.  On the
remediation costs issue, I just want to note that at the
mediation the reasonableness of the remediation costs was not
discussed by either the parties or the special master.  This is
something that -- we are not disputing what they are stating
are their remediation costs, but those remediation costs would
have to be viewed in the context of the ARH protocol as to what
is covered and what is not.

                    With respect to the samples, the samples are
merely just a confirmation of the very limited, almost
nonexistent KPT evidence that was set forth.  We are talking
about 10 boards and one board that's installed for over 100,000
square feet of a property that this developer, who is a
sophisticated developer, would have anticipated that this claim
was a product liability litigation and would have had to prove
product ID should he want to make a claim against the supplier
or the manufacturer.

          THE COURT:  And you feel that the best evidence is
what, the photographs of each board?

          MR. DYSART:  The best evidence in this matter?

          THE COURT:  Yes.

          MR. DYSART:  For the KPT, the only evidence we have
of KPT are 10 boards and a single board that is actually
installed in the property.  There's better evidence of the
inspection report that is more indicative of Taishan being in
the property.  None of the other units had inspection reports
that said they contain KPT.  There is only a single inspection
report for all 39 units and it's 100 percent Taishan.

          THE COURT:  It's your position that you needed
photographs of each board?

          MR. DYSART:  Your Honor, PTO 1(B) is the standard.
Should they not be able to meet PTO 1(B) -- let me go back to
Exhibit A, the already remediated protocol.

1    They say that to the extent such documentation
2    is in possession, custody, control, or where available.  What
3    that provision is merely stating is claimants should submit
4    whatever they have.  Obviously they need to submit all the
5    documentation to us.  There's no discovery where we are going
6    back and forth.  This is something you submit your claim; we
7    review it.  However, Section IV(D) follows that and
8    specifically states that, when looking at the claim, you look
9    at Pretrial Order 1(B) in determination of the claim.  So, yes,
10   the best evidence is photographic, documented evidence of KPT
11   Chinese drywall.  In this case we had almost none for the size
12   of this property.
13   Finally, I just want to note that all the
14   evidence submitted today was reviewed and discussed by the
15   parties and reviewed by the special master prior to his
16   decision.  His decision is based on the applicable settlement
17   terms and the facts that govern this claim.  As the special
18   master concluded, based on a full review of all the evidence
19   and papers now before the Court, Oceanique is a class member,
20   they did not opt out of the settlement, and they are bound by
21   the settlement's terms.  They failed to preserve evidence
22   pursuant to the settlement's terms.  The failure is prejudicial
23   to the determination of the claim.  Therefore, Knauf would
24   submit that the special master's opinion and decree be
25   affirmed.

10:37    1        **THE COURT:**  Is that the transcript of the proceeding

10:37    2   before the special master?

10:38    3        **MR. DYSART:**  What I have before me?

10:38    4        **THE COURT:**  Yes.

10:38    5        **MR. DYSART:**  I have it, Your Honor.  I have his

10:38    6   opinion and decree.  There's no transcript with respect to the

10:38    7   mediation.

10:38    8        **THE COURT:**  Okay.

10:38    9        **MR. LONGER:**  This is an appeal, Your Honor, so I feel

10:38   10   like there should be time between arguments.  I listened to

10:38   11   what Mr. Dysart said, and I only have a couple points in reply.

10:38   12        The first point is that the best evidence

10:38   13   that -- I kept hearing that at least twice.  He said the best

10:38   14   evidence is one unit that had Taishan board.  I come back to

10:38   15   the protocol, which didn't talk about the best evidence.  It

10:39   16   said any evidence of KPT drywall and non-KPT Chinese drywall,

10:39   17   if any, in the affected property prior to the remediation.

10:39   18   "Any evidence."  Not the best.  Not the worst.  Anything you

10:39   19   got, bring it forward.

10:39   20        Well, we have direct evidence of KPT drywall

10:39   21   because there's photographs of it.  We have board that you can

10:39   22   hold in your hand.  We have hundreds of invoices from Banner

10:39   23   saying that they shipped hundreds of thousands -- about 100,000

10:39   24   sheets of drywall to Oceanique.  If the evidence is the best

10:39   25   evidence, then the best evidence is that Banner supplied KPT

1   drywall to this unit.  Now, obviously they didn't supply only

2   KPT drywall because one unit got something else, but it's 2,000

3   square feet out of 100,000 square feet.  So there's a big,

4   yawning gap.

5              Then the last point, Your Honor, is the demand

6   for Pretrial Order 1(B) as the standard.  As I said,

7   Your Honor, it applies prospectively, not retrospectively.

8   *Ex post facto* laws are impermissible, and this Court's order

9   can't be given *ex post facto* application.

10             As I said, in this instance -- and it's a unique

11  circumstance of the settlement, the whole program.  Here's

12  somebody who did all of the remediation before the Court's

13  orders applied to this particular situation.  Under these

14  circumstances, where there was an effort to preserve -- we have

15  photographs.  We have hundreds of photographs.  We only have 10

16  photographs that actually meet PTO 1(B), but there was an

17  effort to preserve evidence that would meet the Florida

18  standard of preservation.

19             So in a litigation sense, Your Honor -- forget

20  the settlement.  If we were litigating this case, we would get

21  to a jury, and they would hear from the Kodsis, they would hear

22  from the superintendent, they would hear from the workers, and

23  they would have to make a determination as to what the KPT

24  percentage was.

25             Now we are in a settlement context.  We

10:39
10:40
10:40
10:40
10:40
10:40
10:40
10:40
10:40
10:40
10:40
10:40
10:40
10:41
10:41
10:41
10:41
10:41
10:41
10:41
10:41
10:41
10:41
10:41
10:41

10:41  1   presented valid evidence; some of it circumstantial, but it's
10:41  2   evidence nonetheless.  We ask Your Honor to evaluate it in the
10:42  3   sense and the spirit of the settlement, which was to compensate
10:42  4   people who were harmed by this drywall.  Thank you, Your Honor.
10:42  5          THE COURT:  Okay.  Thank you.
10:42  6              Do you have something else?
10:42  7          MR. DYSART:  You just one point, Your Honor.  Going
10:42  8   back to the evidence, this evidence was all heard by the
10:42  9   special master and rejected by the special master.  Based on
10:42  10  the affidavits and inspection reports, this was all
10:42  11  documentation that he reviewed.  Under the terms of the
10:42  12  settlement agreement, which is where we are -- we are in the
10:42  13  four corners of that document with respect to judging this
10:42  14  claim -- the special master made that determination to reduce
10:42  15  the claim.
10:42  16         THE COURT:  Let me take all of the arguments, and I
10:42  17  will come out with an opinion on it.  I'm not going to rule
10:42  18  from the bench.  Thank you.

19                         **CERTIFICATE**

20          I, Toni Doyle Tusa, CCR, FCRR, Official Court
     Reporter for the United States District Court, Eastern District
21   of Louisiana, certify that the foregoing is a true and correct
     transcript, to the best of my ability and understanding, from
22   the record of proceedings in the above-entitled matter.

23

24
                                   *s/ Toni Doyle Tusa*
25                                 Toni Doyle Tusa, CCR, FCRR
                                   Official Court Reporter

**$**
$1.9 [1] 13/17
$1.9 million [1] 13/17
$3,180,499.28 [1] 6/25
$3.2 [4] 5/11 13/15 13/16 13/19
$3.2 million [4] 5/11 13/15 13/16 13/19
$31.80 [1] 7/1
$500 [3] 3/21 12/24 13/24

**0**
09-MD-2047 [1] 1/4

**1**
10 [6] 5/22 5/24 15/1 20/4 20/15 23/15
10-362 [1] 1/6
100 [1] 13/21
100 percent [4] 13/23 19/10 19/11 20/20
100,000 [5] 12/17 14/25 20/4 22/23 23/3
14 [3] 1/7 3/2 4/12
144 [1] 4/11
19106 [1] 1/15

**2**
2,000 [2] 12/17 23/2
20 [2] 14/6 15/4
2006 [2] 3/5 4/10
2009 [9] 4/15 4/23 5/1 5/2 10/19 11/13
14/22 16/19 16/19
201 [1] 1/18
2011 [2] 15/4 15/15
2015 [2] 1/7 3/2
2047 [2] 1/4 4/24
25 [1] 4/13
275 [1] 1/21

**3**
3600 [1] 1/18
362 [1] 1/6
39 [3] 4/13 12/8 20/20
39 units [1] 14/25

**4**
40 [2] 6/20 6/22
40 percent [2] 13/16 13/23

**5**
500 [2] 1/15 1/21
504 [1] 1/22
510 [1] 1/15
589-7778 [1] 1/22

**6**
60 percent [3] 6/18 6/19 13/17
60/40 [2] 6/20 6/22

**7**
70130 [1] 1/21
70170 [1] 1/19
7778 [1] 1/22

**8**
801B [2] 19/9 19/15

**9**
98 percent [1] 12/18

**A**
ability [1] 24/21
able [4] 3/16 3/22 7/15 20/24
about [9] 11/9 11/19 13/10 13/11 14/3
19/4 20/4 22/15 22/23
above [1] 24/22
above-entitled [1] 24/22

accordance [1] 14/18
according [1] 19/15
account [1] 10/23
accurate [1] 4/10
acting [1] 4/17
actually [5] 5/23 10/13 15/1 20/15 23/16
addition [1] 14/12
additional [1] 17/21
address [1] 13/8
addressed [3] 4/19 4/19 4/19
affected [5] 4/12 4/14 8/11 8/18 22/17
affiants [1] 5/21
affidavit [3] 10/10 13/1 17/21
affidavits [8] 4/21 5/12 18/22 18/23
18/24 18/25 19/14 24/10
affided [1] 5/15
affiliates [1] 11/3
affirmed [1] 21/25
afforded [1] 7/4
after [2] 10/19 17/6
again [2] 10/24 14/20
against [1] 20/8
agents [1] 11/3
agreed [4] 9/19 15/5 15/14 16/16
agreement [27]
aided [1] 1/25
all [22] 3/16 4/13 4/24 4/25 5/15 6/7
8/17 8/22 11/1 12/7 12/9 12/25 13/1
14/14 20/20 21/4 21/13 21/18 23/12
24/8 24/10 24/16
allegedly [1] 11/2
allocation [2] 6/16 6/23
allow [2] 9/6 15/23
almost [2] 20/2 21/11
already [6] 3/15 5/6 7/21 8/7 10/9 20/25
15/8 16/20 16/20
am [1] 4/6
ambiguity [1] 10/24
amount [5] 3/20 3/24 9/6 9/12 15/24
ample [1] 15/8
and/or [1] 8/17
Another [1] 5/19
anticipated [1] 20/6
any [9] 9/17 10/16 17/10 17/14 18/2
19/16 22/16 22/17 22/18
anything [2] 6/19 22/18
apartments [1] 3/10
appeal [1] 22/9
appealing [1] 4/2
Appearances [1] 1/12
applicable [4] 9/8 13/22 16/7 21/16
application [3] 10/23 18/20 23/9
applied [2] 10/20 23/13
applies [1] 23/7
apply [7] 6/21 11/21 11/21 16/20 17/18
17/23 18/15
appropriate [1] 13/22
approved [1] 15/6
approximately [1] 7/1
are [44]
areas [2] 4/14 12/8
argue [2] 4/7 17/22
argued [2] 6/20 12/12
argument [6] 1/10 11/15 14/2 14/8 18/12
18/14
arguments [6] 14/16 16/19 17/16 17/18
22/10 24/16
ARH [5] 15/18 15/18 15/19 16/12 19/24
as [33]
ask [1] 24/2
Askew [1] 5/13
asking [1] 13/17

at [21] 3/13 4/25 5/21 6/17 7/7 7/9 7/10
7/24 13/16 13/24 13/24 14/23 16/11 19/19 21/8 21/9
22/13
authority [1] 10/2
available [9] 3/13 4/6 6/2 8/19 8/21 8/23
11/9 12/3 21/2
Avenue [1] 1/18
avoid [1] 7/19
award [1] 10/3
awarded [1] 3/21
aware [1] 4/17

**B**
back [10] 5/2 14/20 15/14 16/14 17/5
17/11 20/24 21/6 22/14 24/8
background [2] 3/5 14/20
Baker [1] 1/17
Balhoff [7] 9/1 9/3 9/14 10/13 12/13
12/23 14/6
Banner [22] 3/7 6/3 6/4 6/5 6/6 6/6 6/8
6/10 6/13 6/16 6/16 6/19 6/23 12/15
17/19 17/19 18/13 18/15 18/17 19/6
22/22 22/25
Banner's [1] 19/4
based [4] 18/13 21/16 21/18 24/9
basically [2] 9/2 12/25
be [30]
Bearman [1] 1/17
became [4] 3/8 4/15 4/17 11/17
because [16] 3/22 6/18 6/19 7/7 7/16
7/18 10/5 10/25 12/11 13/6 18/6 18/14
19/8 19/15 22/21 23/2
becomes [1] 8/24
been [5] 9/13 11/10 12/1 13/6 16/4
before [8] 1/10 3/10 4/24 16/14 21/19
22/2 22/3 23/12
began [6] 3/9 3/11 4/10 4/22 11/22
14/24
beginning [1] 10/6
behalf [4] 4/4 4/7 4/7 14/11
being [1] 20/17
believe [1] 7/18
believing [1] 7/15
bench [1] 24/18
benefit [2] 7/6 7/7
Berkowitz [1] 1/17
Berman [1] 1/14
best [11] 19/9 20/10 20/12 21/10 22/12
22/13 22/15 22/18 22/24 22/25 24/21
better [2] 19/12 20/16
between [2] 13/23 22/10
big [1] 23/3
bind [1] 17/3
bit [1] 8/1
blankety [1] 11/14
board [17] 6/11 8/5 12/10 12/15 12/16
12/18 12/23 15/2 17/5 17/8 19/16 20/4
20/11 20/15 20/22 22/14 22/21
boards [3] 15/1 20/4 20/15
both [1] 19/6
bound [4] 15/10 15/13 18/8 21/20
brief [1] 14/16
bring [1] 22/19
building [4] 4/11 4/12 4/13 17/7
buildings [1] 4/12
but [11] 3/14 5/24 10/16 11/14 11/18
13/23 17/17 19/23 23/2 23/16 24/1
bypass [1] 18/25

**C**
calculate [1] 7/24
Caldwell [1] 1/17

## C

came [3]  6/25 12/22 13/11
can [4]  17/20 18/13 18/24 22/21
can't [1]  23/9
cannot [1]  17/23
case [4]  16/23 18/11 21/11 23/20
CCR [3]  1/20 24/20 24/25
certain [1]  9/19
CERTIFICATE [1]  24/19
certify [1]  24/21
challenged [1]  8/3
Charles [1]  1/18
CHINESE [8]  1/4 3/7 11/2 14/23 17/5
17/8 21/11 22/16
CHINESE-MANUFACTURED [2]  1/4
11/2
chose [2]  17/3 17/3
circumstance [1]  23/11
circumstances [1]  23/14
circumstantial [1]  24/1
claim [32]
claimants [7]  9/19 9/20 15/9 15/17 15/21
18/9 21/3
claims [3]  8/19 9/17 15/18
class [7]  14/19 15/4 15/6 15/12 18/7
19/1 21/19
clearly [1]  17/11
close [1]  17/15
Colson [2]  11/23 14/5
come [4]  5/2 10/17 22/14 24/17
comes [2]  10/15 16/12
coming [3]  5/16 10/21 19/17
commenced [1]  16/18
common [2]  4/14 12/8
Company [1]  6/4
compensable [1]  15/7
compensate [2]  15/17 24/3
compensated [1]  13/14
compensating [1]  13/11
complaint [1]  11/24
completed [1]  4/24
compliance [1]  11/11
complied [4]  5/23 9/7 10/5 15/25
comply [5]  3/23 9/25 13/12 17/14 18/9
complying [1]  9/18
computer [1]  1/25
computer-aided [1]  1/25
conceptually [2]  11/14 11/21
concerning [1]  8/10
concluded [1]  21/18
condominiums [1]  3/5
confirm [2]  4/22 12/24
confirmation [1]  20/2
confirming [1]  5/24
confirms [1]  5/20
confronted [1]  7/14
conscience [1]  5/4
consideration [2]  9/5 15/23
considerations [1]  16/21
considering [1]  3/12
consisted [1]  14/24
contain [1]  20/19
contained [1]  18/3
contemplated [1]  9/24
contemplates [1]  15/16
contest [1]  7/12
context [1]  19/24 23/25
contribution [1]  6/17
control [2]  8/12 21/2
controversy [1]  5/17
controverted [1]  5/17
corners [1]  24/13

correct [3]  15/1 19/7 24/21
cost [1]  16/13 19/20 19/22 22/21 23/2
19/23
could [5]  5/5 9/20 9/24 17/1 18/9
couple [2]  19/18 22/11
course [2]  8/2 8/23
COURT [18]  1/1 1/20 3/4 3/24 6/20 9/5
9/10 10/25 11/5 13/20 14/11 15/22 16/1
16/7 21/19 24/20 24/20 24/25
Court's [2]  23/8 23/12
covered [1]  19/25
created [1]  7/11
critical [1]  10/18
custody [2]  8/12 21/2

## D

DANIEL [1]  1/18
Danny [1]  14/11
date [3]  10/18 10/25 16/6
dated [1]  5/2
days [1]  14/6
December [5]  11/13 11/24 11/25 15/4
15/14
December 20 [1]  15/4
December 9 [1]  11/13
decided [1]  3/14
deciding [1]  6/21
decision [4]  14/15 14/17 21/16 21/16
declined [1]  3/20
decree [5]  14/6 14/13 15/12 21/24 22/6
defective [1]  11/2 14/23
defendant [1]  6/9
defendants [3]  1/17 14/11 15/3
defense [1]  12/14
definition [1]  15/6
delivered [1]  6/13
deliveries [1]  6/8
demand [1]  23/5
demo [1]  10/9
demolishing [1]  3/9
demolition [6]  4/22 4/25 5/15 10/7 10/20
12/6
demonstrate [1]  6/12
demonstrating [1]  6/7
denying [3]  12/25 13/1 13/2
described [1]  4/20
destroyed [1]  3/15
determination [7]  9/13 16/4 18/3 21/9
21/23 23/23 24/14
determine [1]  17/20
determined [1]  14/23
determining [2]  9/6 15/23
developed [1]  3/5
developer [2]  20/5 20/6
developers [3]  4/5 4/18 5/13
development [3]  4/5 4/10 6/14
diagram [1]  17/7
did [16]  6/19 9/14 9/20 11/12 12/4 13/13
15/12 16/13 16/14 17/13 18/7 19/3
19/15 19/16 21/20 23/12
didn't [6]  3/18 3/23 10/6 11/21 22/15
23/1
direct [1]  22/20
disallowance [1]  9/11 16/3
disallowed [2]  9/18 18/10
discounted [1]  12/13
discovery [1]  21/5
discussed [2]  19/21 21/14
dispute [7]  5/8 5/9 5/11 6/24 8/22 11/9
14/22
disputed [3]  5/19 6/1 6/15
disputes [2]  15/20 16/17
disputing [1]  19/22

distributed [1]  18/15
DISTINCT [1]  18/15
DISTRICT [5]  1/1 1/2 1/11 24/20 24/20
do [8]  7/5 7/12 7/12 7/12 10/23 11/7
14/22 24/6
Docket [1]  1/4
document [2]  17/6 24/13
documentation [6]  8/10 8/12 17/7 21/1
21/5 24/11
documented [1]  21/10
does [3]  16/7 17/18 18/24
doesn't [2]  11/21 13/3
dollars [1]  3/21
don't [2]  11/14 19/15
done [5]  5/4 7/13 7/14 7/16 10/4 10/9
10/22
Donelson [1]  1/17
down [4]  10/15 10/17 12/4 13/24
Doyle [4]  1/20 24/20 24/24 24/25
drywall [41]
during [1]  8/18
duty [1]  17/24
DYSART [3]  1/18 14/11 22/11

## E

each [4]  17/5 17/8 20/11 20/22
EASTERN [2]  1/2 24/20
economy [1]  7/10
effort [4]  12/2 12/6 23/14 23/17
either [1]  19/21
ELDON [1]  1/10
else [2]  23/2 24/6
emphasized [1]  9/12
endurance [1]  7/12
enough [1]  3/18
entered [2]  16/6 16/14
enterprise [1]  18/18
entire [1]  12/16
entirely [1]  4/9
entities [1]  11/1
entitled [2]  3/24 24/22
entity [1]  6/10
equal [1]  17/2
equity [1]  13/5
ESQ [2]  1/14 1/18
essence [2]  8/6 13/9
evaluate [1]  24/2
even [5]  10/6 11/21 12/13 17/13 19/15
ever [1]  6/20
everything [2]  12/12 12/13
evidence [52]
ex [2]  23/8 23/9
ex post facto [2]  23/8 23/9
exactly [1]  13/13
Exhibit [4]  5/21 8/6 15/19 20/25
Exhibit A [1]  15/19
Exhibit H [1]  5/21
exist [1]  10/6
existence [3]  4/24 7/16 7/17
expense [1]  11/4
experiencing [1]  7/2
extent [4]  8/11 13/20 14/4 21/1

## F

faced [1]  10/8
fact [7]  5/15 5/18 5/19 8/16 13/2 14/3
16/5
facto [2]  23/8 23/9
facts [2]  5/25 21/17
factual [1]  14/21
factually [1]  5/7
fail [1]  14/7
failed [2]  18/1 21/21

**F**

fails [1]  18/14
failure [7]  9/10 9/13 14/17 16/2 16/3 18/2 21/22
faith [2]  7/15 13/12
fallback [1]  11/15
FALLON [1]  1/10
far [1]  7/1
FCRR [3]  1/20 24/20 24/25
Federal [1]  10/11
feel [2]  20/10 22/9
feet [6]  12/17 12/17 14/25 20/5 23/3 23/3
felt [2]  3/18 5/4
few [1]  17/17
file [1]  3/14
filed [2]  11/13 14/5
filing [1]  3/13
Finally [3]  6/24 18/22 21/13
finds [1]  10/9
firm [3]  11/23 13/21 14/5
first [6]  3/3 9/3 17/23 18/14 18/22 22/12
Fishbein [1]  1/14
floor [1]  17/6
Florida [4]  3/6 4/16 11/13 23/17
following [1]  11/4
follows [1]  21/7
foot [1]  7/1
foregoing [1]  24/21
forget [1]  23/19
form [5]  6/9 6/10 8/20 12/15 17/7
Fort [1]  3/6
Fort Pierce [1]  3/6
forth [4]  15/6 16/20 20/3 21/6
forward [9]  8/3 10/16 10/18 10/25 13/11 16/6 16/12 16/13 22/19
found [1]  18/10
four [2]  5/15 24/13
fraction [1]  12/16
Fred [1]  4/3
FREDERICK [1]  1/14
full [5]  13/18 15/9 17/1 17/8 21/18
fully [2]  4/20 19/11
further [1]  11/5
future [1]  3/9

**G**

Gamez [1]  5/14
Gamez-Nino [1]  5/14
gap [1]  23/4
gave [2]  8/22 8/25
general [2]  16/21 17/25
generally [1]  11/19
get [4]  7/13 8/1 11/13 23/20
gets [1]  6/21
given [1]  23/9
go [3]  5/8 14/20 20/24
goes [1]  15/25
going [13]  5/25 6/15 7/5 7/14 8/8 8/9 8/9 9/25 10/16 11/15 21/5 24/7 24/17
gone [1]  13/2
Gonzalez [1]  4/6
good [5]  4/3 5/4 7/5 13/12 14/10
got [6]  11/24 12/11 19/5 19/6 22/19 23/2
gotten [1]  19/8
govern [1]  21/17
governs [1]  18/20
great [1]  7/9

**H**

had [20]  3/15 4/14 6/5 6/10 6/11 7/12 8/9 10/2 10/20 10/22 11/7 12/1 12/10

12/15 17/1 19/2 20/7 20/18 21/11 22/14 22/22
hardship [1]  7/9
harmed [1]  24/4
has [8]  4/12 4/13 6/17 9/7 9/13 15/20 15/24 16/3
have [39]
having [5]  5/4 7/5 7/13
HB [1]  1/21
HB-275 [1]  1/21
he [18]  3/18 3/21 3/22 9/14 9/14 9/15 9/15 10/15 14/21 14/22 14/25 15/19 16/13 16/13 16/14 20/8 22/13 24/11
hear [5]  4/1 14/9 23/21 23/21 23/22
heard [1]  24/8
hearing [1]  22/13
here [6]  4/6 7/18 8/22 9/4 9/17 10/18 11/8 13/6 14/3
here's [1]  10/16 23/11
Hicks [2]  11/23 14/5
highlighted [1]  9/16
his [6]  10/13 14/15 15/11 21/15 21/16 22/5
history [1]  4/9
hold [1]  22/22
home [1]  7/22
homes [3]  5/6 8/7 15/18
honestly [1]  13/5
Honor [27]
Honor's [1]  16/6
HONORABLE [1]  1/10
hope [1]  14/3
how [5]  7/23 10/17 10/22 12/10 12/20
However [1]  21/7
huge [1]  7/1
hundreds [6]  12/4 12/5 18/16 22/22 22/23 23/15

**I**

I'll [2]  4/1 5/2
I'm [2]  13/15 24/17
Ian [1]  5/13
ID [1]  20/8
identification [1]  16/22
if [9]  6/20 9/7 9/12 16/3 16/25 19/7 22/17 22/24 23/20
ignored [2]  10/12 10/13
III [1]  8/16
images [1]  8/17
immediately [1]  17/6
impact [1]  8/24
impermissible [1]  23/8
importantly [1]  18/5
imposed [1]  17/24
in [91]
inaccurate [1]  19/14
include [2]  9/10 18/8
included [3]  9/17 16/10 16/17
incurred [1]  5/10
Indeed [1]  9/19
indicated [1]  9/22
indicates [1]  6/10
indicative [1]  20/17
information [2]  3/19 8/23
initial [1]  3/10
insisted [1]  6/18
inspected [1]  19/11
inspection [6]  6/2 11/9 20/17 20/17 20/19 24/10
installed [3]  15/2 20/4 20/16
instance [2]  4/20 23/10
instances [3]  7/22 9/24 10/1
insufficient [3]  8/4 18/23 18/25

intend [1]  11/1
intended [1]  11/6
into [8]  7/14 8/1 8/8 8/9 8/9 9/5 10/21 15/23
inure [2]  7/6 7/7
invoices [2]  6/7 6/12 22/22
involves [1]  5/5
irrelevant [1]  18/6
is [88]
issue [3]  14/4 14/16 19/19
issued [1]  10/19
issues [1]  14/21
it [57]
it's [21]  4/21 5/25 6/3 6/15 6/19 8/20 10/13 11/7 12/11 12/25 13/1 13/2 16/7 16/10 16/13 19/8 20/20 20/21 23/2 23/10 24/1
its [4]  7/5 7/19 17/9 18/2
itself [1]  17/25
IV [2]  9/4 21/7

**J**

JUDGE [1]  1/11
judged [1]  18/13
judging [1]  24/13
July [2]  1/7 3/2
jury [1]  23/21
just [12]  7/22 9/22 10/16 11/18 12/25 13/3 17/25 19/18 19/19 20/2 21/13 24/7
justify [1]  3/19

**K**

keep [1]  14/16
kept [1]  22/13
kicker [1]  12/9
kill [1]  7/19
Knauf [25]
Knauf's [3]  5/9 7/7 18/3
knew [2]  10/11 19/2
knowledge [2]  4/8 4/16
knows [1]  12/11
Kodsi [5]  1/14 1/14 4/4 5/12 5/13
Kodsis [10]  4/7 4/10 4/17 6/7 7/9 8/22 10/8 11/20 13/13 23/21
KPT [25]

**L**

language [6]  8/15 9/16 10/18 11/6 11/19
last [2]  10/11 23/5
laundry [1]  13/3
law [4]  9/8 9/11 16/2 18/20
laws [1]  23/8
lawsuit [2]  3/13 3/14
least [3]  4/25 5/22 22/13
less [1]  7/1
let [3]  14/9 20/24 24/16
Levin [1]  1/14
liability [4]  1/5 16/23 18/18 20/7
like [3]  7/23 18/17 22/10
limited [1]  20/2
list [1]  13/3
listed [1]  11/8
listened [1]  22/10
listening [1]  4/8
litigating [1]  23/20
litigation [6]  1/5 11/22 16/21 18/1 20/7 23/19
little [1]  8/1
location [1]  17/8
LONGER [2]  1/14 4/3 14/21
look [3]  10/17 16/11 21/8
looking [2]  9/3 21/8

## L

lost [2]  3/8 3/9
lot [1]  18/17
LOUISIANA [6]  1/2 1/6 1/19 1/21 18/20
 24/21
Lucie [6]  6/4 6/6 6/13 12/15 19/5 19/7
Lucie's [1]  6/9

## M

made [3]  3/15 6/2 24/14
main [2]  17/16 17/18
make [2]  20/8 23/23
makes [1]  14/7
making [1]  14/15
Manuel [1]  5/14
manufactured [2]  1/4 11/2
manufacturer [1]  20/9
many [1]  14/21
market [1]  18/18
marketing [1]  7/11
markings [1]  17/10
master [18]  3/18 9/5 9/10 10/2 13/7
 14/15 15/11 15/22 16/1 17/12 18/10
 19/21 21/15 21/18 22/2 24/9 24/9 24/14
master's [4]  3/4 14/12 14/17 21/24
material [2]  3/15 3/17
matter [4]  14/14 19/9 20/12 24/22
Maurice [3]  1/14 4/4 5/12
may [5]  3/14 4/23 8/15 14/10 14/22
May 2009 [1]  14/22
MD [1]  1/4
MDL [5]  3/11 4/24 7/16 9/8 15/25
me [5]  4/2 14/9 20/24 22/3 24/16
mean [3]  9/16 11/14 16/7
measure [1]  17/14
mechanical [1]  1/24
mechanism [1]  15/20
mediation [5]  8/2 8/24 12/22 19/20 22/7
meet [4]  17/1 20/24 23/16 23/17
member [3]  15/12 18/7 21/19
merely [3]  17/23 20/2 21/3
messenger [1]  7/19
method [1]  17/20
million [6]  3/21 5/11 13/15 13/16 13/17
 13/19
mitigate [1]  3/9
money [1]  7/10
month [1]  3/10
Montoya [1]  4/6
more [4]  3/22 8/1 18/5 20/17
morning [2]  4/3 14/10
most [1]  17/11
motion [2]  3/3 3/3
Mr. [11]  4/6 4/6 9/1 9/3 9/14 10/13 12/13
 12/23 14/6 14/21 22/11
Mr. Balhoff [7]  9/1 9/3 9/14 10/13 12/13
 12/23 14/6
Mr. Dysart [1]  22/11
Mr. Gonzalez [1]  4/6
Mr. Longer [1]  14/21
Mr. Montoya [1]  4/6
much [1]  12/20
must [1]  9/8
my [4]  4/8 13/2 14/16 24/21

## N

need [2]  18/9 21/4
needed [1]  20/21
negotiated [3]  7/21 16/10 16/16
negotiation [2]  8/10 12/20
negotiations [2]  7/25 9/25
new [4]  1/6 1/19 1/21 3/5

---

Nino [1]  5/14
no [10]  9/16 11/15 13/5 16/24
 8/22 11/9 21/5 22/6
nobody [2]  12/11 16/17
non [1]  22/16
non-KPT [1]  22/16
none [2]  20/18 21/11
nonetheless [1]  14/2
nonexistent [1]  20/3
nor [1]  19/16
not [46]
note [3]  14/22 19/19 21/13
notice [2]  15/9 17/2
notion [1]  8/15
now [6]  4/1 4/8 5/7 7/14 7/18 8/24 9/1
 11/22 13/15 13/16 15/4 16/15 17/16
 21/19 23/1 23/25
nowhere [1]  18/23
numbers [1]  13/15

## O

objection [1]  14/5
obligation [1]  7/19
obliged [1]  11/16
obviously [3]  19/7 21/4 23/1
Oceanique [26]
Oceanique's [4]  3/3 14/17 17/16 18/14
October [5]  5/1 5/2 10/19 14/24 16/18
October 2009 [1]  5/1
October 9 [2]  5/2 10/19
off [1]  13/16
Official [3]  1/20 24/20 24/25
Okay [3]  14/1 22/8 24/5
on [23]  4/4 4/7 4/7 4/7 5/9 6/25 7/25
 10/19 12/2 13/8 14/8 14/8 14/11 15/2
 15/25 17/6 17/10 18/13 19/18 21/16
 21/18 24/9 24/17
Once [1]  3/7
one [14]  3/10 3/17 3/22 4/12 5/23 7/23
 12/9 12/23 12/23 15/2 20/4 22/14 23/2
 24/7
only [15]  5/23 6/11 9/19 12/14 12/15
 12/23 15/1 15/2 19/5 19/11 20/14 20/19
 22/11 23/1 23/15
onto [1]  11/24
opinion [7]  3/4 14/6 14/12 15/11 21/24
 22/6 24/17
opportunity [3]  15/9 17/1 19/2
opposed [1]  7/5
oppositions [1]  14/13
opt [6]  15/9 15/12 17/2 18/7 19/2 21/20
or [28]
ORAL [1]  1/10
order [23]  3/8 3/23 5/1 9/7 9/18 9/21
 10/5 10/15 10/17 10/19 10/23 11/5
 11/15 11/17 11/17 11/18 15/25 16/8
 16/20 16/24 21/9 23/6 23/8
orders [2]  11/11 23/13
Orleans [3]  1/6 1/19 1/21
other [7]  4/13 12/18 13/8 17/7 19/8
 19/18 20/18
others [1]  17/17
our [2]  3/3 5/21
out [11]  5/16 6/25 15/9 15/12 17/2 18/7
 19/2 19/17 21/20 23/3 24/17
outright [1]  14/15
over [4]  5/17 5/18 14/25 20/4
own [2]  7/5 11/4
owner [3]  8/13 9/7 15/24
owners [2]  8/9 8/19

## P

Page [1]  2/2

---

papers [3]  5/21 14/13 21/19
part [5]  4/21 6/8 6/16 7/20 12/2
partial [1]  17/8
participate [1]  5/5
particular [1]  23/13
parties [7]  4/1 8/8 16/10 16/16 17/4
 19/21 21/15
parties' [1]  16/24
pay [3]  7/7 7/20 9/19
PC [1]  1/17
pending [2]  8/19 9/8
Pennsylvania [1]  1/15
people [3]  9/24 13/11 24/4
percent [2]  6/18 6/19 12/18 12/18
 13/16 13/17 13/21 13/23 13/23 19/10
 19/11 20/20
percentage [3]  7/24 8/1 23/24
period [1]  12/23
persons [1]  11/1
Philadelphia [1]  1/15
photograph [3]  5/23 17/5 17/9
photographic [5]  5/20 10/10 11/10 13/1
 21/10
photographs [15]  5/22 5/24 8/17 12/3
 12/4 12/5 12/6 17/9 17/12 20/11 20/22
 22/21 23/15 23/15 23/16
pictures [2]  3/16 3/17
Pierce [1]  3/6
place [2]  10/7 10/20
places [1]  19/8
plaintiffs [2]  6/1 8/9
plan [3]  6/16 6/23 17/7
please [1]  14/10
point [7]  6/21 10/24 12/1 14/24 22/12
 23/5 24/7
points [2]  19/18 22/11
Port [7]  6/4 6/6 6/9 6/13 12/15 19/5 19/6
Port St. Lucie [5]  6/4 6/6 6/13 12/15
 19/5
Port St. Lucie's [1]  6/9
position [4]  3/19 3/23 13/9 20/21
possession [2]  8/12 21/2
post [2]  23/8 23/9
potential [1]  3/8
Poydras [1]  1/21
practically [1]  13/24
precedes [1]  5/1
precludes [1]  10/16
pregnant [1]  8/15
prejudicial [4]  9/13 16/4 18/2 21/22
presence [1]  12/11
present [2]  10/13 14/18
presented [2]  12/24 24/1
presentment [1]  16/9
preservation [8]  3/14 9/9 11/18 11/19
 16/9 16/20 17/14 23/18
preserve [11]  9/10 11/4 11/16 12/2
 14/18 16/2 17/24 18/1 21/21 23/14
 23/17
preserved [3]  6/1 10/9 15/1
pretrial [19]  5/1 9/7 9/18 9/21 10/5 10/15
 10/17 10/19 10/23 11/11 11/15 11/16
 11/17 11/18 15/25 16/8 16/24 21/9 23/6
Pretrial Order [1]  11/15
pretty [1]  4/15
principals [1]  4/4
principles [1]  17/25
prior [6]  7/16 7/17 8/10 16/18 21/15
 22/17
problem [4]  3/7 4/17 4/18 7/11
proceeding [2]  3/11 22/1
proceedings [3]  1/24 3/1 24/22

**P**

process [3]  5/6 8/2 8/24
product [3]  16/22 20/7 20/8
products [2]  1/5 16/23
profile [6]  6/9 6/9 12/15
program [1]  23/11
promptly [1]  4/19
proof [2]  10/10 10/16
proofs [5]  8/3 8/25 12/14 13/5 13/18
properties [1]  12/7
property [12]  8/11 8/18 12/10 15/2 17/9
 18/3 18/16 20/5 20/16 20/18 21/12
 22/17
prospective [1]  11/5
prospectively [2]  10/20 23/7
protocol [8]  7/22 8/7 9/23 15/19 15/19
 19/24 20/25 22/15
prove [2]  16/22 20/7
provide [3]  8/10 10/2 11/7
provided [5]  4/9 5/12 8/18 12/13 15/8
provides [2]  8/6 8/8
provision [2]  7/24 21/3
provisions [1]  9/22
PSC [1]  15/5
PTO [20]  5/24 7/7 8/20 15/21 16/5 16/5
 16/16 16/19 17/4 17/14 17/18 17/22
 17/23 17/24 18/5 18/9 18/25 20/23
 20/24 23/16
PTO 1 [10]  5/24 7/7 8/7 8/20 16/5 16/5
 16/16 16/19 17/4 17/18 17/22
public [1]  3/8
purchased [1]  3/7
pursuant [2]  15/18 21/22
pursue [1]  11/1
pursuing [1]  17/25
put [1]  8/3

**Q**

question [2]  8/24 10/21
quite [2]  9/23 13/4

**R**

rate [2]  6/18 7/8
RE [1]  1/4
read [1]  1/4
really [7]  5/11 6/24 7/4 14/7 17/14 17/16
 18/6
reasonableness [1]  19/20
recall [1]  6/4
recognition [1]  8/14
recognize [3]  9/15 13/3 19/15
recognized [6]  4/18 4/23 15/11 17/12
 17/13 18/19
recognizing [1]  7/22
record [5]  4/21 5/12 6/8 14/14 24/22
recorded [1]  1/24
recover [2]  6/18 7/15 13/18
recovery [2]  13/6 13/19
reduce [2]  14/17 24/14
reduced [1]  18/10
reduction [9]  6/21 6/22 9/12 10/2 13/16
 13/21 13/22 13/23 16/3
refinement [1]  17/24
regions [1]  6/5
rejected [1]  24/9
Relates [1]  1/6
relating [1]  11/2
relevant [1]  5/2
reliable [1]  18/15
remediate [2]  4/23 15/18
remediated [5]  5/6 5/16 7/21 8/7 20/25
remediating [2]  3/10 14/24

remediation [11]  4/25 5/10 8/11 8/18
 10/2 15/16 18/1 18/2 18/3 18/6 19/1
 19/23 22/17 23/12
remedy [2]  12/7 12/17
Remember [1]  7/20
removed [3]  8/17 17/6 17/9
repair [3]  4/22 7/2 7/13
repairs [2]  6/25 7/5
repeated [1]  10/24
reply [1]  22/11
report [3]  10/14 20/17 20/20
Reporter [2]  1/20 24/25
reports [2]  20/18 24/10
required [5]  8/20 9/11 16/2 16/21 16/22
requirements [2]  9/9 15/7
requires [1]  17/4
resolve [2]  12/20 15/20
respect [8]  15/20 16/5 17/22 18/6 18/12
 20/1 22/6 24/13
respects [1]  18/22
respond [1]  17/17
response [1]  14/9
responsible [2]  4/18 5/14
result [4]  5/7 9/11 13/4 16/2
retained [2]  11/22 11/23
retrospective [1]  11/6
retrospectively [1]  10/22 23/7
review [5]  3/4 9/9 16/1 21/7 21/18
reviewed [4]  14/15 21/14 21/15 24/11
right [4]  4/8 7/13 7/13 10/18
rigid [1]  13/9
Robert [3]  1/14 4/4 5/12
rounding [1]  13/16
rule [1]  24/17
Rules [1]  10/12

**S**

said [21]  6/11 10/6 11/17 14/21 14/22
 15/19 20/19 22/11 22/13 22/16 23/6
 23/10
sales [2]  3/8 3/9
samples [3]  11/8 20/1 20/1
satisfy [1]  9/21
savings [2]  7/4 7/8
saw [2]  5/16 19/16
say [5]  6/24 18/24 19/4 19/16 21/1
saying [2]  8/4 22/23
says [5]  8/16 8/16 9/4 10/25 16/13
Second [1]  19/14
Section [2]  1/5 21/7
sections [4]  6/1 12/2 17/10 17/11
Sedran [1]  1/14
sense [4]  16/22 18/18 23/19 24/3
sentence [1]  9/15
set [3]  16/20 16/24 20/3
sets [1]  15/6
settlement [39]
settlement's [2]  21/21 21/22
settlements [1]  9/20
several [3]  3/21 5/7 6/5
shall [3]  8/20 11/3 17/4
share [1]  18/18
sheet [2]  3/17 12/23
sheets [4]  3/6 3/22 6/12 22/24
shipped [1]  22/23
should [13]  6/21 7/6 9/2 13/6 13/13
 13/18 13/24 15/10 17/10 20/8 20/24
 21/3 22/10
show [2]  3/16 3/22
showed [1]  3/17
shown [1]  15/2
shows [1]  5/21
side [5]  5/9 13/8 14/8 17/5 17/11

similar [1]  17/7
similar [2]  17/6
sir [1]  4/8
site [1]  17/6
situation [5]  7/11 10/8 13/7 13/7 23/13
size [1]  21/11
slippage [1]  12/19
so [5]  4/6 7/4 10/8 10/21 11/5 11/20
 12/1 12/16 12/25 17/10 18/15 21/9 22/9
 23/3 23/19
software [1]  1/25
some [3]  3/21 10/2 24/1
somebody [1]  23/12
somehow [1]  12/16
Someone [1]  10/21
something [5]  19/4 19/22 21/6 23/2 24/6
Sometime [1]  4/15
somewhere [1]  13/23
sophisticated [1]  21/6
sought [3]  3/20 3/20 3/25
sounds [1]  18/17
southern [1]  4/16
special [22]  3/4 3/18 9/5 9/10 10/2 13/7
 14/12 14/14 14/16 15/11 15/22 16/1
 17/12 18/10 19/21 21/15 21/17 21/24
 22/2 24/9 24/9 24/14
specific [1]  11/17
specifically [1]  21/8
spend [1]  7/9
spent [1]  6/25
spirit [1]  24/3
split [1]  6/20
square [7]  7/1 12/17 12/17 14/25 20/5
 23/3 23/3
St [1]  1/18
St. [7]  6/4 6/6 6/9 6/13 12/15 15/9 19/7
St. Lucie [1]  19/7
standard [7]  16/8 16/11 17/1 18/2 20/23
 23/6 23/18
state [2]  9/8 15/25
stated [1]  19/15
states [5]  1/1 1/11 15/22 21/8 24/20
stating [2]  19/22 21/3
stenography [1]  1/24
Street [2]  1/15 1/21
strong [3]  13/5 13/6 13/18
strongly [1]  9/23
subject [3]  9/9 11/4 16/1
submission [1]  8/20
submit [4]  21/3 21/4 21/6 21/24
submitted [3]  14/13 17/21 21/14
subparts [1]  6/5
subsidiaries [1]  11/3
substantial [1]  11/10
substantially [1]  10/5
such [3]  8/11 8/19 21/1
suggest [2]  21/23 10/4
suggests [1]  14/4
suit [1]  11/20
Suite [2]  1/15 1/18
sum [3]  9/2 9/15 13/9
summary [1]  10/25
superintendent [2]  5/14 23/22
supplied [5]  6/6 18/13 18/17 19/5 22/25
supplier [2]  6/9 20/8
supply [4]  3/7 6/4 18/24 23/1
support [1]  19/1
supportive [1]  19/13
suppose [1]  9/2
supposed [4]  10/1 12/20 13/10 13/11

**T**

Taishan [10]  6/10 12/10 12/18 19/10

## T

Taishan... [6]  19/12 19/16 19/16 20/17
  20/20 22/14
take [5]  9/5 12/4 14/7 15/23 24/16
taken [3]  6/17 10/20 17/10
talk [1]  22/15
talked [1]  11/18
talking [1]  20/3
tanking [1]  7/10
telephone [1]  4/8
tell [1]  9/3
tens [1]  12/5
terms [13]  6/5 9/16 9/17 10/11 15/11
  15/14 17/3 18/8 18/8 21/17 21/21 21/22
  24/11
testimony [1]  5/20
than [2]  7/1 19/12
Thank [3]  24/4 24/5 24/18
that [186]
that's [16]  5/2 6/8 7/24 9/25 10/1 11/16
  12/19 12/19 12/25 13/9 13/12 13/13
  13/25 17/15 19/5 20/4
their [13]  4/7 7/6 7/16 11/3 11/4 12/2
  13/9 13/18 15/18 16/18 18/10 18/12
  19/23
them [12]  3/21 4/14 5/8 6/2 7/7 7/11
  7/12 8/23 11/21 11/22 11/23 11/23
themselves [2]  12/7 17/3
then [7]  3/14 11/7 12/12 13/21 19/7
  22/25 23/5
there [36]
there's [28]
therefore [6]  3/20 3/24 14/15 15/13 18/8
  21/23
these [8]  5/20 5/24 6/7 9/16 9/17 9/20
  17/3 23/13
they [82]
thing [1]  7/13
things [1]  5/7
think [8]  3/17 3/21 11/23 11/24 13/4
  13/13 13/17 13/22
this [37]
those [4]  8/19 18/8 18/25 19/23
though [1]  12/14
thousands [4]  3/6 6/12 18/16 22/23
three [2]  17/16 17/17
through [6]  5/6 5/8 7/6 12/7 13/2 14/20
throughout [1]  4/16
time [4]  3/13 7/10 10/7 22/10
timeliness [3]  14/3 14/4 14/8
timely [1]  14/7
timing [1]  18/5
today [1]  21/14
together [1]  4/13
Toni [4]  1/20 24/20 24/24 24/25
took [3]  3/23 9/15 10/7
transcript [3]  22/1 22/6 24/21
transcription [1]  1/25
transfer [1]  3/11
Tricon [1]  4/5
tried [1]  13/12
true [1]  24/21
try [1]  14/15
trying [1]  7/19
Tusa [4]  1/20 24/20 24/24 24/25
twice [1]  22/13
two [2]  4/11 12/17

## U

unaccounted [1]  12/19
uncertainty [1]  7/23
uncontroverted [2]  5/25 6/3

under [8]  15/7 16/9 18/2 18/19 18/19
  19/13 24/11 24/14
understand [2]  12/14 14/7
understanding [1]  24/21
Understood [1]  16/15
undisputed [2]  17/13 19/9
uniform [1]  18/15
unique [2]  13/7 23/10
uniqueness [1]  13/8
unit [9]  12/10 19/9 19/10 19/10 19/10
  19/11 22/14 23/1 23/2
UNITED [3]  1/1 1/11 24/20
units [12]  4/11 4/12 4/13 4/13 5/16 7/13
  8/5 12/8 14/25 19/17 20/18 20/20
unreliable [1]  12/12
until [4]  11/13 11/22 14/24 16/19
up [3]  12/22 14/24 16/19
us [1]  21/5
used [2]  6/22 17/20
using [2]  1/24 3/6
utilizes [1]  15/21

## V

valid [2]  10/11 24/1
various [1]  14/13
very [5]  11/17 13/5 13/6 13/9 20/2
video [1]  8/17
viewed [1]  19/24
visible [1]  17/11

## W

wall [1]  17/10
Walnut [1]  1/15
want [6]  8/1 14/22 15/10 19/19 20/8
  21/23
wanted [2]  5/8 6/22
was [61]
way [3]  3/4 9/2 11/12
we [34]
well [7]  6/8 8/5 9/22 11/16 12/12 19/8
  22/20
went [4]  5/6 12/7 16/6 16/19
were [22]  3/16 3/22 3/24 4/6 5/10 5/10
  5/11 5/13 6/12 7/9 9/25 11/8 11/16
  11/20 11/22 13/15 13/17 15/1 15/14
  18/16 23/20 24/4
what [21]  7/12 8/5 8/24 9/3 10/4 11/7
  11/16 12/22 13/3 13/10 13/13 14/14
  16/21 19/22 19/24 19/25 20/11 21/2
  22/3 22/11 23/23
whatever [1]  21/4
when [5]  3/15 4/18 9/14 16/12 21/8
where [6]  7/23 8/19 8/20 9/24 10/1
  10/8 10/15 10/17 12/19 12/19 13/25
  19/5 21/2 21/5 23/14 24/12
whether [5]  9/6 9/7 15/23 15/24 18/3
which [25]
who [12]  4/4 4/5 5/13 5/13 5/14 10/22
  11/1 11/1 13/11 20/5 23/12 24/4
whole [3]  7/24 13/10 23/11
why [6]  5/2 7/18 7/24 9/25 10/1 13/13
widespread [1]  4/15
will [8]  9/5 9/11 14/15 15/17 15/23 16/2
  17/17 24/17
within [1]  14/6
witnesses [1]  5/15
won't [1]  14/20
work [3]  4/22 7/16 12/6
workers [1]  23/22
worst [1]  22/18
would [22]  7/7 7/15 7/22 7/23 7/25 9/18
  9/24 13/8 14/3 16/16 16/20 16/22 19/23
  20/6 20/7 21/23 23/17 23/20 23/21
  23/21 23/22 23/23
19/13 24/11 24/14

## Y

yawning [1]  23/4
yes [3]  20/13 21/9 22/4
yet [1]  10/12
you [17]  4/9 4/20 6/4 9/3 10/23 18/24
  20/10 20/21 21/6 21/8 22/18 22/21 24/4
  24/6 24/6 24/7 24/18
your [31]
Your Honor [24]  4/3 4/20 4/23 5/3 5/25
  6/15 8/14 9/17 9/23 10/6 11/6 11/12
  13/4 14/10 15/6 16/15 20/23 22/5 23/5
  23/7 23/19 24/2 24/4 24/7
Your Honor's [1]  16/6

## Z

zero [4]  9/2 9/15 13/9 13/24