UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO:<br><br>ALL CASES | |

**BEIJING NEW BUILDING MATERIALS PUBLIC LIMITED COMPANY'S AND BEIJING NEW BUILDING MATERIAL (GROUP) CO., LTD.'S OPPOSITION TO THE PLAINTIFFS' STEERING COMMITTEE'S MOTION CONTESTING CLAIM OF PRIVILEGE AND/OR WORK PRODUCT PROTECTION AND FOR *IN CAMERA* INSPECTION**

Defendants Beijing New Building Materials Public Limited Company ("BNBM PLC") and Beijing New Building Material (Group) Co., Ltd. ("BNBM Group") respectfully submit this memorandum of law in opposition to Plaintiffs' Steering Committee's Motion Contesting Claim of Privilege and/or Work Product Protection and for *In Camera* Inspection (Rec. Doc 19434, hereinafter "Plaintiffs' Motion").

**PRELIMINARY STATEMENT**

This Motion involves a single document (Exhibit A to Plaintiffs' Motion), that BNBM PLC appropriately clawed back pursuant to a Rule 502(d) Order entered by this Court. As discussed below, the document is protected by the work-product doctrine and the attorney-client privilege.

Exhibit A is a summary of a meeting held on December 12, 2014, attended by BNBM PLC in-house counsel and representatives from BNBM PLC and CNBM Group. The purpose of the meeting was to develop a strategy for each entity to retain additional outside, American legal counsel for assistance in this litigation. As explained in the supporting declaration, the meeting was conducted outside the ordinary course of business and held specifically to address concerns

1

and questions related to the pending lawsuit. The discussions at and substance of the meeting are protected under the common-interest – joint-defense doctrine. Indeed, within just two months of this meeting, the participants entered this litigation as co-defendants. The PSC has not alleged that this document was shared with anyone other than a defendant in this litigation. Therefore, the Court should uphold BNBM PLC's assertion of work-product protection and attorney-client privilege.

## LEGAL STANDARD

I. Work Product Protection

The work product doctrine protects from disclosure documents and tangible things prepared in anticipation of or during litigation, including "a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements." *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991). The doctrine exists to encourage the full disclosure of pertinent information by clients to their attorneys, as the client has a legitimate interest in securing informed representation without fear of forced disclosure. *In re Grand Jury Subpoena*, 419 F.3d 329, 339 (5th Cir. 2005). In this way, the doctrine promotes the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent. *See Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989). But importantly, work-product protection is not limited to documents prepared by an attorney. *Kansas City S. Ry. Co. v. Nichols Const. Co.*, No. 05-1182, 2007 WL 2127820, at *2 (E.D. La. July 25, 2007). The doctrine protects documents that were either prepared by a party or a representative for that party—including an attorney—for use in imminent litigation or were created with a "primary motivating purpose" of assisting with possible future litigation. *Udoewa v. Plus4 Credit Union*, 457 F. App'x 391, 393 (5th Cir. 2012); *In re Kaiser Aluminum & Chem.*

*Co.*, 214 F.3d 586, 593 (5th Cir. 2000).

If the work-product doctrine applies, its protection cannot be waived simply by a voluntary disclosure to a third person. *Shields*, 864 F.2d at 382; *see also In re Grand Jury Subpoena*, 220 F.3d 406, 409 (5th Cir. 2000) ("[B]ecause the work product privilege looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality, it is not automatically waived by the disclosure to a third party."). Instead, the protection is only waived if the work product is given to an adversary or is treated in a manner that substantially increases the likelihood that an adversary will obtain the material. *See High Tech Comms., Inc. v. Panasonic Co.*, No. 94-1477, 1995 WL 83614, at *8 (E.D. La. Feb. 24, 1995). The burden rests with the party seeking the discovery to establish that a waiver of the protection has occurred. *See Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 379 (5th Cir. 2010) (noting that the party requesting disclosure must present clear evidence that a waiver of work product has occurred).

II. Attorney-client privilege

The attorney-client privilege exists "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *United States v. Zolin*, 491 U.S. 554, 562 (1989). To claim the privilege, a party must show "(1) a confidential communication; (2) to a lawyer or subordinate; (3) for the primary purpose of securing a legal opinion, legal services, or assistance in the legal proceeding." *United States v. Nelson*, 732 F.3d 504, 518 (5th Cir. 2013). In the context of corporations, "it is well settled that attorney-client privilege is not waived merely because the communications involved extend across corporate structures to encompass parent corporations, subsidiary corporations, and affiliated corporations." *Crabb v. KFC Nat. Mgmt. Co.*, 952 F.2d 403, 1992 WL 1321, at *3 (6th Cir. 1992).

III.  Common-Legal-Interest/Joint-Defense Doctrine

The common-legal-interest doctrine (sometimes called the joint-defense doctrine) also protects the exchange of attorney-client communications or work product "for (1) communications between co-defendants in actual litigation and their counsel; and (2) communications between potential co-defendants and their counsel," where there is a "palpable threat of litigation at the time of the communication."  *BCR Safeguard Holding, L.L.C. v. Morgan Stanley Real Estate Advisor, Inc.*, No. 14-31068, 2015 WL 3466110, at *11-12 (5th Cir. June 2, 2015).  Such communications may be protected by the common-legal-interest or joint-defense doctrine if those communications "further a joint or common interest."  *Id.* at *11 (quoting *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001)).  The common-interest/joint-defense doctrine protects confidential communications among co-defendants even before counsel has been retained formally.  *See In re Auclair*, 961 F.2d 65, 69-70 (5th Cir. 1992).

IV.  Crime-Fraud Exception

In limited situations, a claim of privilege can be overcome if the attorney-client communication or work product is intended to further continuing or future criminal or fraudulent activity.  *In re E.E.O.C.,* 207 F. App'x 426, 434 (5th Cir. 2006).  This exception, however, "is a narrow one . . . ."  *United States v. Auster*, No. 06-0289, 2007 WL 148670, at *3 (E.D. La. Jan. 12, 2007), *rev'd on other grounds by* 517 F.3d 312 (5th Cir. 2008).  It "does not extend to all communications made in the course of the attorney-client relationship, but rather is limited to those communications and documents in furtherance of the contemplated or ongoing criminal or fraudulent conduct."  *In re Grand Jury Subpoena*, 419 F.3d 329, 343 (5th Cir. 2005); *see also In re Richard Roe, Inc*., 168 F.3d 69, 71 (2d Cir. 1999) ("Given that the attorney-client privilege

4

and work-product immunity play a critical role in our judicial system, the limited exceptions to them should not be framed so broadly as to vitiate much of the protection they afford.").

To invoke the crime-fraud exception, the party seeking the privileged information bears the burden of establishing that *the particular communication or work product* "is intended to further continuing or future criminal or fraudulent activity." *In re E.E.O.C.*, 207 F. App'x at 434; *see also In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1242 (5th Cir. 1982) ("[T]he party seeking to breach the walls of privilege must make out a prima facie case."). Moreover, the party seeking the material must show that the client, rather than a third party, possessed the requisite fraudulent or criminal intent to invoke the exception. *See United States v. Rakes*, 136 F.3d 1, 5 (1st Cir. 1998) ("Under the crime-fraud exception, we think that it takes wrongful complicity by the privilege holder, not innocent or involuntary action, to forfeit the privilege."); *In re Sealed Case*, 107 F.3d 46, 49 (D.C. Cir. 1997) ("The privilege is the client's, and it is the client's fraudulent or criminal intent that matters. A third party's bad intent cannot remove the protection of the privilege.").

## ANALYSIS

Exhibit A (BNBMPLC-E-0130706-0130707) is a copy of the meeting minutes for a meeting held on December 12, 2014, with representatives from CNBM Group and BNBM PLC. One of the participants, Mr. Yang Fu was acting as an in-house counsel for BNBM PLC. Mr. Fu, Deputy Manager of BNBM PLC's Securities and Legal Department, was at the time and is today an attorney qualified to practice law in the People's Republic of China.[1]

Contrary to the PSC's unsupported assertions, the evidence presented with this brief is that Exhibit A was not prepared in the ordinary course of business because the December 12

---

[1] Declaration of Yang Fu, dated September 6, 2015, at ¶ 2 (the "Fu Decl.," attached as **Exhibit 1**).

5

meeting summarized in the document was not held in the ordinary course of business.[2] Instead, the document reveals the mental impressions, analysis, and litigation strategy formed by BNBM PLC's legal department with regards to the retention of outside counsel for this litigation. As a result, the document is protected from disclosure.

I. Work-Product Protection

Exhibit A is quintessential work product because the purpose of the meeting summarized was to gather information to defend against the pending litigation. In-house counsel and representatives from both companies developed a strategy for retaining outside counsel from the United States.[3] The attendees also discussed the steps each would undertake to respond to the litigation.[4] These strategies and discussions are recorded in Exhibit A, and were made with the "primary motivating purpose" of aiding in the pending litigation.[5] They are thus protected from disclosure. *See United States v. Davis*, 636 F.2d 1028, 1039 (5th Cir. 1981) (defining work product as documents created with "the primary motivating purpose" of aiding litigation); *see also N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975) (holding work-product protection "clearly applies" to documents "which set forth the attorney's theory of the case and his litigation strategy").

None of the PSC's arguments undermine the work-product assertion here. First, the PSC argues any protection is waived because the meeting was conducted in the presence of a third party: CNBM Group. Pls' Mot. at 7. But work-product protection is waived only if the communication is shared in a manner that makes it substantially more likely that the document will be disclosed to an adversarial party. *In re Grand Jury Subpoena*, 220 F.3d 406, 409 (5th

---

[2] Fu Decl. at ¶ 4.
[3] *Id*.
[4] *Id*.
[5] *Id.* at ¶¶ 3-4.

Cir. 2000). Plainly, CNBM Group is not an adversarial party. To the contrary, it is a co-defendant in the litigation as well as an indirect investor in other defendants in the litigation. Nor has the PSC presented any reason to believe, much less any evidence, that CNBM Group's presence at the meeting increased the likelihood that the document (or the communications discussed at the meeting) would be disclosed to an adversary. Indeed, the PSC has offered no evidence that CNBM Group even maintained a copy of the document, which was produced by BNBM PLC.

Furthermore, the document on its face discloses "communications between potential co-defendants and their counsel" concerning a "palpable threat of litigation at the time of the communication"—here, the already pending, instant litigation. The Fifth Circuit held just three months ago that such communications remain privileged. *BCR Safeguard Holding, L.L.C.,* No. 14-31068, 2015 WL 3466110, at *11-12.

The PSC's argument that Exhibit A is not protected because the meeting involved "primarily business strategies and decisions," Pls' Mot. at 7-8, is contradicted by the face of the document. The document discusses the gathering of information that would be used to support a factual defense of the claims against BNBM PLC. Even the PSC acknowledges, as it must, that those strategies and decisions "relate to the instant lawsuit" and could arguably involve "legal advice." *Id*. Even if business decisions were made during the meeting, the *primary* motivating purpose of the meeting was to develop strategies for the retention of legal counsel for the pending litigation.[6] BNBM PLC's in-house counsel that participated in the meeting presents sworn testimony that the meeting was not part of BNBM PLC's ordinary course of business but

---

[6] Fu Decl. at ¶ 4 ("The December 12, 2014 meeting was not held in the ordinary course of BNBM PLC's business but was held to develop a strategy for the drywall litigation.").

instead was conducted to address concerns about the instant litigation.[7] This falls squarely within the protection of the work-product doctrine. The PSC offers no contrary evidence.

Finally, the PSC argues that the crime-fraud exception nullifies BNBM PLC's work-product claim. Pls' Mot. at 8-9. The PSC baldly asserts without evidence or other support that the meeting was "in furtherance of and/or perpetuated Taishan's refusal to appear for the July 17, 2014 Judgment Debtor Examination." *Id*. That argument is frivolous.

To begin with, the chronology contradicts the PSC's theory. The meeting summarized in Exhibit A took place in December 12, 2014—<u>five months after Taishan failed to appear</u>. The PSC ignores this undisputed fact. Second, the face of the document also contradicts the PSC's theory. The document is about preparation <u>to join the litigation</u>, not "perpetuat[ion] [of a] refusal to appear." *See* Pls' Mot. at 9. In fact, within about two months, both participants to the meeting had in fact joined the litigation as co-defendants. Further, the single reference to Taishan discusses <u>independent</u> activity by Taishan (Taishan's selection of its own legal counsel for the instant litigation) and not the alleged concerted, joint activity upon which the PSC's argument hinges. In sum, the PSC's crime-fraud argument is directly contradicted by the face of the document, is expressly refuted by the undisputed testimony of BNBM PLC's in-house counsel, and makes no logical sense. Accordingly, the PSC has failed to meet its burden of establishing that protection under the work-product doctrine has been waived. *See Ecuadorian Plaintiffs*, 619 F.3d at 379.

II. <u>Attorney-Client Privilege</u>

Exhibit A is also protected from disclosure by the attorney-client privilege. The PSC acknowledges that "[s]everal different requirements and/or tasks—related to the instant litigation" are described in Exhibit A because they were discussed at the December 12 meeting.

---

[7] *Id*. at ¶¶ 5-6.

Pls' Mot. at 6. These discussions involved Mr. Fu, a Chinese attorney and in-house counsel for BNBM PLC.[8] Mr. Fu avers that BNBM PLC requested and received legal advice from him regarding the hiring and use of American counsel for this litigation.[9] Exhibit A is therefore protected by the attorney-client privilege.

The presence of CNBM Group at the December 12 meeting does not defeat BNBM PLC's assertion of privilege because the common-interest/joint-defense doctrine protects these types of communications among prospective co-defendants, just as it does for the work-product doctrine, as described above, *supra* at 6-7. The Fifth Circuit has made clear that the common-interest doctrine—a well-established doctrine that the PSC continues to ignore—protects "communications between co-defendants in actual litigation and their counsel." *In re Santa Fe Intern. Corp.*, 272 F.3d 705, 710 (5th Cir. 2001). Nor is the privilege waived by the crime-fraud exception because, as explained above, *supra* at 7-8, the PSC has not established Exhibit A furthered a crime or fraud. *See In re E.E.O.C.*, 207 F. App'x at 434 ("The party seeking discovery of privileged information bears the burden of establishing a prima facie case that the attorney-client relationship was intended to further criminal or fraudulent activity.").

Finally, despite the PSC's speculative arguments to the contrary, the attorneys present at the December 12 meeting gave legal advice, not business advice.[10] Materials from in-house counsel are privileged if there is no clear indication that the attorney provided business advice wholly separate from legal advice. *See Exxon Mobil Corp. v. Hill*, 751 F.3d 379, 382 (5th Cir. 2014) ("Though we recognize that in-house counsel can often play a variety of roles within an organization, this record is devoid of any indication that Stein was providing business advice divorced from its legal implications."). The December 12 meeting was held to create a strategy

---

[8] *Id.* at ¶ 2.
[9] *Id.* at ¶ 5.
[10] *Id.*

9

for the instant litigation.[11]  Mr. Fu, in-house counsel for BNBM PLC, participated in that meeting and in the development of the resulting litigation strategy.[12]  As a result, those communications, as contained in Exhibit A, are privileged.

## CONCLUSION

For the reasons stated above, the PSC's Motion Contesting Claim of Privilege and/or Work Product Protection and for *In Camera* Inspection should be denied.

---

[11] Fu Decl. at ¶¶ 4-5.
[12] *Id*. at ¶¶ 3-5.

Dated:  September 8, 2015

                Respectfully submitted,

                **DENTONS US LLP**

                By: */s/ Michael H. Barr*
                Michael H. Barr
                New York Bar No. 1744242
                Justin N. Kattan
                New York Bar No. 3983905
                1221 Avenue of the Americas
                New York, NY 10020-1089
                Telephone:  (212) 768-6700
                Facsimile:  (212) 768-6800
                michael.barr@dentons.com
                justin.kattan@dentons.com

                      - and -

                Richard L. Fenton
                Illinois Bar No. 3121699
                Leah R. Bruno
                Illinois Bar No. 6269469
                233 South Wacker Drive
                Suite 7800
                Chicago, IL  60606-6306
                Telephone:  (312) 876-8000
                Facsimile:  (312) 876-7934
                richard.fenton@dentons.com
                leah.bruno@dentons.com

                      - and -

                C. Michael Moore
                Texas Bar No. 14323600
                2000 McKinney Ave, Suite 1900
                Dallas, TX  75201
                Telephone:  (214) 259-0900
                Facsimile:  (214) 259-0910
                mike.moore@dentons.com
                gene.besen@dentons.com

                      - and -

**PHELPS DUNBAR LLP**

Harry Rosenberg
Louisiana Bar No. 11465
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Facsimile: (504) 568-9130
harry.rosenberg@phelps.com

*Attorneys for Beijing New Building Material (Group) Co., Ltd. and Beijing New Building Materials Public Limited Company*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **OPPOSITION TO THE PLAINTIFFS' STEERING COMMITTEE'S MOTION CONTESTING CLAIM OF PRIVILEGE AND/OR WORK PRODUCT PROTECTION AND FOR *IN CAMERA* INSPECTION** has been served on Plaintiffs' Liaison Counsel, Leonard Davis, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this September 8, 2015.

/s/     Michael H. Barr