UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO:<br><br>Case No. 10-362 Sec. L. Mg. 2 | |

**PLAINTIFF'S OPPOSITION TO MOTION TO RECONSIDER
ORDER REGARDING OCEANIQUE'S MOTION FOR COURT
REVIEW OF THE SPECIAL MASTER'S OPINION (REC.DOC. 19413)**

**I.     INTRODUCTION**

Oceanique Development Company ("Oceanique") submits this response in opposition to the Knauf Defendants' Motion for Reconsideration of this Court's Order & Reasons of August 21, 2015 [Rec. Doc. 19413]. Knauf contends that it never negotiated or mediated whether Oceanique's claim for recovery of Reimbursable Costs under the Already Remediated Properties Protocol ("ARP Protocol") were Reimbursable Costs that were compensable under the ARP Protocol, and therefore it is now entitled to revisit these costs *after* the Court has already finally resolved the matter. Knauf's motion is disingenuous at best since the reasonableness of Oceanique's Reimbursable Costs were always at issue throughout the presentment of its claim, and, under the express terms of the ARP Protocol, they were *required* considerations for purposes of the Mediation before the Special Master and the final Submission to the Court. Under the terms of the ARP Protocol, by the time any ARP claim reached this Court for review, it was to be resolved once and for all. Knauf apparently disagrees and arrogates for itself the right to recast the ARP Protocol to permit countless "second bites at the apple." Knauf is wrong

to assume such a right; it has no such an entitlement. Thus, reconsideration is improper.

Knauf's attempt to endlessly litigate Oceanique's claim should be denied for several reasons: 1) it is prohibited by the Settlement Agreement which expressly states that the Court's resolution of the matter is final; 2) as a final determination, all of Knauf's contentions regarding Reimbursable Costs were merged into the final determination, and, even assuming for argument's sake that Knauf never challenged these costs (a fact which is denied), Knauf's right to challenge them now has been waived; 3) reconsideration in an exceptional request which under the circumstances is not deserved; and 4) Knauf's characterization of Oceanique's Remediation Claims as being duplicative of Other Loss Claims, such that a double recovery would occur, is a sham that deserves rebuke and should be disregarded.

Each argument will be discussed below.

## II.   FACTUAL BACKGROUND

### A.   The Procedure Contemplated by the Settlement Agreement

The Knauf Settlement Agreement ("SA") created two discrete funds to compensate victims of Knauf's defective drywall – a Remediation Fund and an Other Loss Fund. *See* SA §4.1. The Remediation Fund was established to pay for Remediation Claims, *i.e.*, "claims associated with the KPT Property Owner's or Mixed Property Owner's remediation of the Affected Property prior to the Execution Date, including the reasonable costs of remediation and the Other Covered Expenses," SA §1.61, and, for Commercial Owners, like Oceanique, the Other Loss Fund was established to pay for Lost Use, Sales and Rent, SA §4.7.1.2. Recognizing that Already Remediated Properties were uniquely situated, Knauf agreed to a separate track to address ARP claims. Accordingly, the ARP Protocol was established. *See* SA §4.3.7.1 &

Exhibit A.

The purpose of the ARP Protocol was to create "a process by which to resolve the *Remediation Claims* of Individual Owners who self-remediated their Affected Properties" prior to the execution date of the Settlement Agreement.  ARP Protocol §I (emphasis added).[1]  The ARP Protocol contemplated submissions of all documentation concerning *remediation* of the Affected Property, followed by negotiations by the parties "to attempt to resolve the Owner's Remediation Claims in accordance with Paragraph IV (D) [addressing Reimbursable Costs] and subject to the conditions set forth in Paragraph V [addressing Other Covered Expenses]," ARP Protocol, §IV (A) (1).  If the negotiations of the Owner's Remediation Claims could not be negotiated by the parties, the ARP Protocol required the matter to be submitted to non-binding mediation before the Special Master.  Consideration of whether costs were reimbursable, *i.e.*, reasonable, incurred in remediating the Affected Property, etc., was a condition of mediation that was demanded by KPT at the time the SA was negotiated.  Specifically, the ARP Protocol requires:

> In mediating the Remediation Claims, the Special Master <u>shall</u> follow the provisions set forth in <u>Paragraph IV (D)</u>.

ARP Protocol, §IV (B)(3) (emphasis added).  Section IV (D) provides that Reimbursable Costs are only the "reasonable costs that the Owner incurred in remediating the Affected Party." ARP Protocol §IV (D)(1).  The ARP Protocol provides additional criteria for evaluating Reimbursable

---

[1] Section II makes clear that all defined terms shall have the meanings set forth in the SA. In the SA, "Remediation Claims" are distinctly defined separately from "Other Loss Claims."  In all of the proceedings to date, KPT never argued that some costs presented by Oceanique should be addressed through the Other Loss Fund because the expenses presented by Oceanique properly belong to the Remediation Fund.  At this late juncture, KPT has waived any entitlement to now challenge these expenses.

3

Costs, which included whether the 1) remediation work was "reasonably consistent" with the Remediation Protocol; the costs were only for replacement costs as opposed to upgrades, and that waste and fraud were prohibited. *Id.*

The ARP Protocol also permits a final submission with respect to the Remediation Claims to the Court in the event the mediation is unsuccessful. *Id*., § IV (C) (1). Like the scope of the mediation, "[t]he scope of the Court's review shall be limited to the Reimbursable Costs set forth in Paragraph IV (D)." *Id.*, §IV (C)(2). The Court's determination of the Remediation Claims is to be "final without appeal." *Id.*, §IV (C)(3). As discussed further below, Knauf observes this last provision addressing finality in the breach.

      B.      <u>**THE PROCEEDINGS LEADING TO THIS MOTION**</u>

Pursuant to the ARP Protocol, Oceanique submitted to Knauf its claim for reimbursement of Remediation Costs, *see* SA §4.3.7.1, and separately, it submitted to the Settlement Administrator its claim to the Other Loss Fund, pursuant to SA §4.7.4.1. As to the Remediation Costs, the material presented to Knauf was voluminous and comprehensive. *See* flash drive and Notice of Filing [Rec.Doc. 19026], *cited* in Rec.Doc. 19023-3 at 2 n.2. Knauf was slow to react to this claim or to tender any offer, *e.g.*, Rec. Doc. 19023-7, but eventually it gave notice that it would refuse to pay the claim, which necessitated mediation.

In its March 4, 2015 papers submitted to the Special Master, Knauf originally contended that the claim should be dismissed based upon fraud and lack of evidence. *See* Rec.Doc. 19023-8. In response, Oceanique provided complete information and justified its position that it could not produce with 100% certainty of KPT under PTO 1B but it would negotiate in good faith regarding the totality of the value of its claim, not just the KPT percentage. *See* Rec.Doc. 19023-

4

14.[2] A Mediation occurred at which Knauf backed off of its fraud theory and that Oceanique's claim should be dismissed, and instead argued that with the evidence available only one unit should be compensated. Indeed, in its March 20, 2015 Post-Mediation Submission, Knauf offered "to settle the matter for the sum of $100,000". [Rec.Doc. 19023-15]. Because the Special Master was required by the ARP Protocol to evaluate Reimbursable Costs pursuant to Section IV (D), in his May 11, 2015 Opinion and Decree, the Special Master specifically recognized that "Oceanique's total claim is $3,180,499.28," which he then reduced pursuant to §IV (D)(4) to only $530.08, based on his flawed interpretation of Pretrial Order 1B. *See* Rec. Doc. 19023-4 at 3.

Following the Special Master's ruling, Oceanique sought review by this Court by making a final submission. Throughout the §IV (C) Court Proceeding Knauf never once disputed Oceanique's claims or the Special Master's determination that Oceanique's Reimbursement Costs were approximately $3.2 million. This, despite knowing that the Court's determination would be final, and the explicit limitation on the Court's review "to the Reimbursable Costs set forth in Paragraph IV (D)." ARP Protocol §IV (C)(2) & (4). Indeed, at oral argument Oceanique stated, and <u>Knauf agreed without any objection</u>, that Oceanique's Reimbursable Costs were not in dispute. *See* July 14, 2015 Hearing Transcript at 5 & 14 (By Mr. Longer: "There's no dispute

---

[2]Knauf's contention that the reasonableness of Oceanique's Reimbursable Costs were not at issue at the Mediation is sophistry. It is belied by Oceanique's position paper. It is belied by the volume of supporting material Oceanique provided for its Reimbursable Costs. It is also belied by the Special Master's Opinion and Decree, which accounts for these costs and rather than reach only a KPT Percentage figure, he made a cash award. And, it is completely belied by Knauf's offer to settle all of Oceanique's claims for $100,000. In fact, had Knauf only appeared at the mediation to negotiate the KPT percentage, and not the reasonableness of Oceanique's entire claim, it would have been negotiating in bad faith. Plaintiff doubts that Knauf intends such an inference.

on Knauf's side that the remediation costs that were incurred by Oceanique were $3.2 million. *** By Mr. Dysart: "I won't go back through the background again. Mr. Longer, as he said, there's not many factual issues in dispute."). Thus, the finding in this Court's Order & Reasons that "Oceanique's claim for $3,180,499.28 in remediation costs" was not only justified by the record of such costs presented by Plaintiffs, Rec. Doc. 19023-5, but by Knauf's agreement that such costs were not in dispute.

## III. ARGUMENT

### A. THIS COURT'S ORDER & REASONS IS FINAL AND UNREVIEWABLE

Section IV (C)(4) of the ARP Protocol provides that this Court's determination of the written submission, *i.e.*, the August 21, 2015 Order & Reasons, "shall be final without appeal." This language of the Settlement Agreement is neither vague, nor ambiguous. Knauf therefore has no right to seek review of the Court's ruling, including reconsideration. This is especially the case, where reconsideration seeks to draw in collateral matters (*i.e.*, the reasonableness of Oceanique's Remediation Costs) that not only could have been resolved through negotiation and the Mediation, but contrary to Knauf's dissembling, actually were required subjects of the Mediation and Court Proceeding that were addressed during the proceedings.

Knauf's suggestion that this Court's ruling merely presaged the re-start of negotiations is a callous and misguided interpretation of the SA. Because the Court's Order & Reasons is final to extend even by one more day, the time that Oceanique must wait to be compensated for injuries that occurred in 2006 is not justified.

B.  **KNAUF'S CHALLENGE TO THE REASONABLENESS OF PLAINTIFF'S REIMBURSABLE COSTS WAS MERGED INTO THE COURT PROCEEDING, AND, THEREFORE, BY FAILING TO FULLY PRESENT THE CHALLENGE, KNAUF'S ARGUMENTS WERE WAIVED**

It is black-letter law that, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Comer v. Murphy Oil USA, Inc.,* 718 F.3d 460, 467 (5th Cir 2013), *quoting, Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). In other words, all issues that existed or could have been challenged on a final appeal are merged into that appeal, and lost if not raised at that time. *See Meadaa v. K.A.P. Enterprises, L.L.C.*, 756 F.3d 875, 879 (5th Cir. 2014).

Here, Knauf contends that it held an "ace-up-its-sleeve," because it always "reserved their [sic] arguments regarding which Oceanique costs were Reimbursable Costs." Knauf Brf. at 5. Accepting Knauf at its word, the Defendant was clearly taking a calculated risk that its collateral challenges would be lost if a ruling in favor of Oceanique issued. Knauf's flawed litigation strategy is not Oceanique's concern. Because Knauf deliberately waived the issues it now wishes to re-negotiate, Plaintiff will be prejudiced if required to revisit the reasonableness of its Reimbursable Costs, whose resolution had been the very purpose of the ARP Protocol from its inception, and was encompassed by the Mediation and Court Proceeding.

C.  **RECONSIDERATION IS AN EXCEPTIONAL REQUEST WHOSE MERIT HAS NOT BEEN PROVEN**

The standard for reconsideration is stringent. To be entitled to reconsideration, this Court announced the following standard to follow:

> A motion to reconsider should be granted only where the movant demonstrates: (1) intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or

7

>
> to prevent injustice. "Reconsideration of an order is an extraordinary remedy which courts should use sparingly." Further, motions for reconsideration are not to be used "to redebate the merits of a particular motion."

*In re Vioxx Prod. Liab. Litig.*, 230 F.R.D. 473, 474-475 (E.D. La. 2005)(citations omitted).

Knauf has failed to meet this exacting standard:

First, there is no intervening change in controlling law.

Second, all of the material comprising Oceanique's Reimbursable Costs were produced to Knauf well over a year ago. Oceanique produced its ARP Protocol materials on April 11, 2014. *See* April 11, 2014 Letter of Patrick Montoya [Attached hereto as Exhibit "A"]. In its enclosure letter, Oceanique asked Knauf to review same, and to "let us know if you believe there is anything missing." *Id.* Knauf never informed Oceanique that it considered any materials to be insufficient until the filing of the instant motion. It would be an outright falsehood if Knauf were now to contend that Oceanique's supporting documentation was not previously available to it or that it ever previously suggested that the documentation of Oceanique's expenses were unsupported.

Finally, as discussed above, there is no error of law to correct. Knauf challenges *factual* matters regarding the reasonableness of Oceanique's Reimburseable Costs. In reply, Knauf may contend that its motion describes an injustice, but the facts do not support Knauf. Oceanique long ago provided supporting documentation for all of its Remediation Costs, including invoices and other papers. Oceanique has been waiting years to obtain justice from Knauf for the harm it brought to Plaintiff. It would be an injustice to plaintiff if this Court's award were revisited simply to allow Knauf to haggle over matters as trivial as 27¢, as it apparently intends. *See* Knauf Brf. at 5 n. 3 (challenging the court's computation of a 40% reduction of Reimbursable

Costs).

Knauf wants to "redebate the merits" of Oceanique's claims. *Id*. By the terms of the SA, and, by law, it is prohibited from doing so. Reconsideration should therefore be denied.

### D. KNAUF'S HYPERBOLIC ARGUMENTS THAT PLAINTIFF WILL OBTAIN A "DOUBLE RECOVERY "AND BE "PLACED IN A SUPERIOR POSITION COMPARED TO OTHER CLASS MEMBERS" ARE A SHAM

Oceanique long ago produced documents supportive of its Remediation claim. During the Mediation, Oceanique recognized that because its remedial work was performed prior to the existence of PTO 1(B) it was unable to comply precisely with the terms of that order. The same holds true with regard to the Remediation Protocol. SA, Exhibit F. Oceanique remediated its units long before the Knauf Settlement Agreement's Remediation Protocol was drafted or implemented, and, therefore with this in mind, it negotiated in good faith that a reduction of its Remediation Claim was appropriate. *See* Mediation Brief (recognizing a maximum reduction of 40%.) [Rec. Doc. 19023-14]. The Court agreed with this approach. Now, however, Knauf wants to whittle down even further Oceanique's Reimbursable Cost on the same basis that it did with the KPT Percentage. But the two concepts are symbiotic, *i.e.*, under the ARP Protocol they were not to be treated separately. Knauf's opportunity to address the reasonableness of Oceanique's Reimbursable Costs therefore has come and gone.

To compensate for having waived its defenses, Knauf now asserts (17 months after the presentation of Oceanique's evidence) that Oceanique is recovering $420,000 for expenses more attributable to the Other Loss Fund. Knauf fails to disclose, however, that Oceanique's Other Loss claims that were presented to BrownGreer are supported by different evidence of Lost Sales, Rent and Use than that presented for Remediation Claims and which is only now contested

9

by Knauf. Thus, there is no double recovery.

Knauf further contends that some of Oceanique's costs are non-protocol costs. But this argument, like that regarding PTO 1(B)'s retroactive application, is misplaced. This Court has already recognized that the circumstances applicable to Oceanique are unique. Oceanique's remedial efforts took place prior to the existence of both PTO 1(B)) and the ARP Protocol. Moreover, the latter does not demand exact fealty but only that remedial work be "reasonably consistent" with it. *See* ARP Protocol §IV(D)(1)(a). Knauf cannot at this late time in these proceedings be heard to deny that all of Oceanique's remedial work was reasonably consistent with the ARP Protocol. By now, the settlement should be concluded, not just begun.

Finally, Knauf contends that some of Oceanique's expenses are not substantiated.[3] Knauf's contention is belied by the summary of costs Oceanique presented to Knauf 17 months ago that Knauf never disputed. *See* Rec.Doc. 19023-5. *See also* Exhibit A ( "let us know if you believe there is anything missing").

Given the unique circumstances applicable to Oceanique, Knauf's 11th hour attempt to reargue the merits of matters that were subsumed in all of the prior events leading to the Court

---

[3]Knauf's contentions that matters are not justified are based on its unilateral edict. For example, Knauf contends – without any proof or substantiation of any sort – that "permissible builder overhead and profit is 20%," Knauf Brf. at 8 n.6, and that recovery of supervision and payroll are considered part of overhead which "may" result in double recovery, Knauf Brf. at 9 n.7. But the ARP Protocol only requires that costs be "reasonably consistent" with the protocol. A 5% variance is hardly unreasonable, especially when Oceanique proved that its remediation costs per square foot were far less than Moss, which benefit only inures to Knauf. *See* July 14 Hearing Transcript at 6-7 ("Finally, as I say, there's really no dispute that Oceanique spent $3,180,499.28 on repairs, which came out to approximately $31.80 a square foot, which is far less than the repair costs that KPT or Knauf is experiencing in the Knauf settlement agreement. So really the savings that are afforded by Oceanique do[ing] its own repairs, as opposed to going through the settlement agreement, should inure to their benefit because it would inure to Knauf's benefit to pay them at that savings rate.").

Proceeding and this Court's Order & Reasons of August 21, 2015, should be rejected. Knauf's efforts to embellish the facts attendant to Oceanique are ill-founded, without record support, and unavailing.

### IV.  CONCLUSION

The purpose of the Knauf Settlement Agreement was to expedite the payment of compensation to victims of Knauf's drywall. After Knauf's stone-walling negotiation technique and flawed mediation, Oceanique was forced to submit its Remediation Claim to a Court Proceeding, which this Court recognized was meritorious. Now, Knauf demands to have the parties go back to the drawing board, and begin negotiations again at square one. Nowhere in the Settlement Agreement does such a right exist. Under the express terms of the SA, this Court's August 21, 2015 Order & Reasons is final. This Court should treat it as such, and deny the instant motion for reconsideration.

Respectfully submitted,

Dated:  September 15, 2015

/s/ Fred S. Longer
Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
Flonger@lfsblaw.com

11

        Ervin A. Gonzalez
        Patrick S. Montoya
        Colson, Hicks, Eidson, Colson
         Matthews, Martinez, Gonzales,
         Kalbac & Kane
        255 Alhambra Circle, Penthouse
        Cora Gables, FL 33134
        Phone: (305) 476-7400
        Fax: (305) 476-7444
        Ervin@colson.com
        Patrick@colson.com

        Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 15th day of September, 2015.

        */s/ Fred S. Longer*
        Fred S. Longer