**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047**<br>**SECTION: L**<br>**JUDGE FALLON**<br>**MAG. JUDGE WILKINSON** |
| **THIS DOCUMENT RELATES TO:**<br><br>*ALL ACTIONS* | |

**THE PLAINTIFFS' STEERING COMMITTEE'S MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION TO APPROVE ALTERNATIVE SERVICE OF PROCESS**
**ON THE BNBM AND CNBM ENTITIES PURSUANT TO FED.R.CIV.P. 4(f)(3)**

The Plaintiffs' Steering Committee ("PSC") has been embroiled in efforts to serve

Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd. ("Taishan") and its

subsidiary, Tai'an Taishan Plasterboard Co., Ltd. ("TTP"), as well as the Chinese parent

corporations of these entities, Beijing New Building Materials Public Limited Co. ("BNBM"),

China National Building Material Co., Ltd. ("CNBM"), Beijing New Building Materials (Group)

Co., Ltd. ("BNBM Group"), and China National Building Materials Group Corporation ("CNBM

Group") (collectively the "BNBM and CNBM Entities"), since the outset of this litigation.

Despite these efforts, there is an enormous backlog of complaints that still need to be served on

the BNBM and CNBM Entities in accordance with the onerous requirements of the Hague

Convention.  The service of these complaints under the Hague Convention is fraught with delays

especially since the PSC's process server, APS International ("APS"), has advised that service of

complaints must be staggered so as to avoid any confusion of the Chinese central authority

responsible for serving the complaints on the BNBM and CNBM Entities.[1]  At the current pace

---

[1] For this reason, six complaints are backlogged and will be served on the BNBM and
(continued...)

of service it will take several years to successfully serve the BNBM and CNBM Entities with the outstanding complaints in the absence of an order from this Court authorizing alternative service of process pursuant to Rule 4(f)(3).

Notwithstanding the backlog of complaints that need to be served on the BNBM and CNBM Entities, these defendants have been extremely active in this litigation, yet they continuously refuse to accept service of process.  Through their United States lawyers the BNBM and CNBM Entities have been engaged in these proceedings beginning in March 2015 and have been vigorously participating in briefing and discovery since this time.  Thus, it is evident that the BNBM and CNBM Entities have been extremely active in this litigation and that they have been working closely with their counsel.

While the BNBM and CNBM Entities remain steadfast in their refusal to accept service of process, the enormous expense and delay attributable to this refusal warrants that the Court authorize alternative service of process pursuant to Fed.R.Civ.P. 4(f)(3).  The PSC proposes that such service be accomplished by serving the complaints on the BNBM and CNBM Entities' United States lawyers.  Given the level of participation by the BNBM and CNBM Entities in this litigation, it is respectfully submitted that service on their United States lawyers will comport with Due Process.  Indeed, such service is consistent with this Court's previous rulings permitting service of process on the Taishan Defendants through their United States lawyers.  *See In re Chinese-Manufactured Drywall Products Liability Litigation*, MDL 2047, Order (E.D.La. June 25, 2014), Rec.Doc.No. 17790;  *In re Chinese-Manufactured Drywall*

---

[1](...continued)
CNBM Entities at a future date.  The PSC has obtained extensions of time to serve the defendants with each of these complaints.  *See* Rec.Doc.#s 7138, 8325, 9681, 13733, and 16356.

*Products Liability Litigation*, MDL 2047, Order (E.D.La. December 23, 2014), Rec.Doc.No.

18228; *see also Amorin, et al. v. China Nat'l Building Materials Import and Export Corp., et al.*,

3:15-cv-184 (D.Ore. February 4, 2015) (Order allowing alternate service on counsel in related

litigation), attached hereto as Exhibit "A."

## I.    RELEVANT FACTS

The PSC has been very active in its efforts to serve the BNBM and CNBM Entities with

its various omnibus complaints.  While the PSC has properly undertaken efforts to serve these

defendants consistent with the requirements of the Hague Convention, these efforts have often

been thwarted by the BNBM and CNBM Entities' refusal to accept service of process.  Indeed,

the affidavits of service of record demonstrate that the BNBM and CNBM Entities have refused

to accept the overwhelming majority of the PSC's complaints even after the PSC has gone

through the enormous effort and expense of serving its complaints consistent with the

requirements of the Hague Convention:

- BNBM Group:  Rec.Doc.No. 9306 (proof of service of *Gross* complaint on August 25, 2010 - BNBM Group **refused** to accept service of this complaint); Rec.Doc.No. 13774 (proof of service of supplement to amended class action complaint, order, and amended class action complaint in *Gross* on March 22, 2011 and March 29, 2011 - BNBM Group **refused** to accept service); Rec.Doc.No. 17909 (proof of service of Florida *Amorin* complaint on December 23, 2013 - BNBM Group **refused** to accept service); Rec.Doc.No. 17914 (proof of service of Virginia *Amorin* complaint on December 23, 2013 - BNBM Group **refused** to accept service); and Rec.Doc.No. 17921 (proof of service of Louisiana *Amorin* complaint on December 23, 2013 - BNBM Group **refused** to accept service); Exhibit "B" (proof of service of Omnibus XIX complaint on February 12, 2015 - BNBM Group accepted service).

- BNBM:  Rec.Doc.No. 4217 (proof of service of *Gross* complaint on February 25, 2010 - BNBM **refused** to accept service of this complaint); Rec.Doc.No. 7027 (proof of service of the amended omnibus II complaint in *Wiltz* on August 25, 2010, November 11, 2010, and November 25, 2010 - BNBM **refused** to accept

service of this complaint); Rec.Doc.No. 13775 (proof of service of supplement to amended class action complaint, order, and amended class action complaint in *Gross* on March 22, 2011 and March 29, 2011 - BNBM **refused** to accept service); Rec.Doc.No. 17910 (proof of service of Florida *Amorin* complaint - BNBM **refused** to accept service); Rec.Doc.No. 17915 (proof of service of Virginia *Amorin* on December 23, 2013 - BNBM **refused** to accept service); Rec.Doc.No. 17922 (proof of service of Louisiana *Amorin* on December 23, 2013); Exhibit "C" (proof of service of Omnibus XIX complaint on February 12, 2015 - BNBM accepted service).

- CNBM Group:  Rec.Doc.No. 3256 (proof of service of *Gross* complaint on February 25, 2010 - CNBM Group accepted service of this complaint); Rec.Doc.No. 12942 (proof of service of substituted and amended omnibus III complaint in *Gross* on March 9, 2011 - CNBM Group **refused** to accept service); Rec.Doc.No. 13776 (proof of service of supplement to amended class action complaint, order, and amended class action complaint in *Gross* on March 22, 2011 and March 29, 2011 - CNBM Group **refused** to accept service); Rec.Doc.No. 17911 (proof of service of Florida *Amorin* on December 23, 2013 - CNBM Group **refused** to accept service); Rec.Doc.No. 17916 (proof of service of Virginia *Amorin* on December 23, 2013 - CNBM Group **refused** to accept service); Rec.Doc.No. 17923 (proof of service of Louisiana *Amorin* on December 23, 2013 - CNBM Group **refused** to accept service); Exhibit "D" (proof of service of Omnibus XIX complaint on February 12, 2015 - CNBM Group accepted service).

- CNBM:  Rec.Doc.No. 3257 (proof of service of *Gross* complaint on February 25, 2010 - CNBM accepted service); Rec.Doc.No. 12943 (proof of service of substituted and amended omnibus III complaint in *Gross* on March 9, 2011 - CNBM **refused** to accept service); Rec.Doc.No. 13777 (proof of service of supplement to amended class action complaint, order, and amended class action complaint in *Gross* on March 22, 2011 and March 29, 2011 - CNBM **refused** to accept service); Rec.Doc.No. 16990 (proof of service of Louisiana *Amorin* on April 3, 2013 - CNBM accepted service of this complaint); Rec.Doc.No. 17912 (proof of service of Florida *Amorin* on December 23, 2013 - CNBM **refused** to accept service); Rec.Doc.No. 17917 (proof of service of Virginia *Amorin* on December 23, 2013 - CNBM **refused** to accept service); Exhibit "E" (proof of service of Omnibus XIX complaint on February 12, 2015 - CNBM accepted service).

As demonstrated from the above cited affidavits of service, the BNBM and CNBM

Entities have refused to accept nearly all of the complaints that the PSC has attempted to serve

consistent with the requirements of the Hague Convention.[2]  These refusals to accept service of process highlight the BNBM and CNBM Entities' efforts to delay and evade the instant proceedings.

Pursuant to the advice of APS, six of the complaints involving the BNBM and CNBM Entities are currently on hold and will be served at a later date.[3]  *Id*.  As noted above, APS has advised that Plaintiffs should stagger the service of complaints so as to avoid confusing the Chinese central authority responsible for serving the complaints on the BNBM and CNBM Entities.  *See* Fn. 1, *supra* (the PSC has obtained extensions of time for purposes of serving its complaints).  It frequently takes in excess of six months to serve Chinese defendants.  *See*, *generally*, Rosler, *China's Great Legal Firewall: Extraterritoriality of Chinese Firms in the United States,* U.S. – China Economic and Security Review Comm'n, at 4 (May 5, 2015)( the process is unduly time consuming, and "cooperation cannot always be expected."), available at http://origin.www.uscc.gov/sites/default/files/Research/Extraterritoriality%20of%20Chinese%20 Firms_Research%20Report_0.pdf, *quoting*, Longer, *Service of Process in China*, ABA Section of Litigation 2012 Annual Conf. (2012), available at http://www.americanbar.org/content/ dam/aba/administrative/ litigation/materials/sac_2012/19-1_service_of_process_

---

[2] As a result of their refusal to participate in these proceedings, the BNBM and CNBM Entities have been repeatedly held in default.  *See* Rec. Doc. Nos. 7302, 15687, 7735, 17815 (BNBM and BNBM Group defaults); Rec. Doc. Nos. 7302, 15687, 17814, 17815 (CNBM and CNBM Group defaults).

[3] Service of the following complaints on the BNBM and CNBM Entities is currently on hold: (1) *Wiltz* (omnibus II(a)); (2) *Wiltz* (omnibus II(b)); (3) *Wiltz* (omnibus II(c)); (4) *Gross* (omnibus III(a)); (5) *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* Case No.: 2:11-cv-1395 (E.D.La.) (omnibus XVI); and (6) *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* Case No.: 2:11-cv-1673 (E.D.La.) (omnibus XVII).

in_china.authcheckdam.pdf.  Thus, when it comes time to serve each of the backlogged

complaints, service of each successive complaint can be anticipated to take six months or longer.

     The BNBM and CNBM Entities and their United States lawyers have been heavily

engaged in this litigation following this Court's scheduling of the damages hearing with respect

to the class that has been certified against the Taishan Defendants and the PSC's issuance of

deposition notices to uncover violations of the Court's July 17, 2014 Contempt Order.  Since

entering their appearances back in March 2015, the BNBM and CNBM Entities participated in

the Court's June 9, 2015 damages hearing and have also participated in numerous depositions

involving not only the defendants themselves but also several third-parties, including a series of

depositions that just took place in Hong Kong.  In addition, the BNBM and CNBM Entities have

moved and/or opposed dozens of motions and have participated in argument before the Court.

     In sum, the BNBM and CNBM Entities substantively participated in this litigation for

more than six months and have been extremely active in this litigation since entering their

appearances back in March.  Given the scope of the BNBM and CNBM Entities' litigation

efforts to date, it logically follows that they are in close contact with their United States lawyers.

## II.   <u>ARGUMENT</u>

     The facts of this case clearly warrant that the Court approve alternative service pursuant

to Rule 4(f)(3) and allow Plaintiffs to serve the outstanding complaints on the BNBM and

CNBM Entities through their United States lawyers.  As noted above, if the PSC is forced to

serve the BNBM and CNBM Entities in accordance with the Hague Convention it will take

several years to complete service of the outstanding complaints.  While the PSC is committed to

serving its complaints, the BNBM and CNBM Entities have been actively engaged in this

litigation and have taken full advantage of the American legal system.  Yet the BNBM and

CNBM Entities stubbornly refuse to accept service of process and remain intent on delaying

these proceedings by insisting that Plaintiffs serve each of their complaints consistent with the

Hague Convention.  Given the slow rate confronting Plaintiffs to perfect service of their

complaints under the Hague Convention, it is clear the BNBM and CNBM Entities are taking

advantage of this process to further delay justice to impacted homeowners.

### A.  <u>Alternative Service of Process is Permissible Pursuant to Rule 4(f)(3)</u>

Service on the BNBM and CNBM Entities, as foreign corporations, is governed by Rule

4(f).  *See* Fed.R.Civ.P. 4(h) (stating that a foreign corporation must be served "in a judicial

district of the United States ... or at a place not within any judicial district of the United States, **in**

**any manner prescribed by Rule 4(f)** for serving an individual, except personal delivery")

(emphasis added).  Rule 4(f)(1) permits service outside the United States "by any internationally

agreed means of service that is reasonably calculated to give notice, such as those authorized by

the Hague Convention."[4]  Subject to enumerated restrictions, Rule 4(f)(2) permits alternative

service "if there is no internationally agreed means, or if an international agreement allows but

does not specify other means, by a method that is reasonably calculated to give notice."  Finally,

Rule 4(f)(3) provides that service on a foreign litigant can be effected "by other means not

prohibited by international agreement, as the court orders."  In general, "[t]he decision whether to

allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound

---

[4] China is a signatory to the Hague Convention.  *See* Convention done at the Hague Nov. 15, 1965, art. 10(a), 20 U.S.T. 361, 658 U.N.T.S. 163, C.T.S. 1989/2.  China has objected to Article 10 of the Hague Convention which authorizes service of process by postal channels.  *Id*. *See also Lexmark Int'l, Inc. v. Ink Technologies Printer Supplies, LLC*, 291 F.R.D. 172, 175 (S.D. Ohio 2013).

discretion of the district court." *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 265

(S.D.N.Y.2012) (quoting *Madu, Edozie & Madu, P.C. v. Socketworks Ltd. Nigeria*, 265 F.R.D.

106, 115 (S.D.N.Y.2010)) (internal quotation marks omitted).

Courts have long held that there is "no hierarchy among the subsections in Rule 4(f),"

*Advanced Aerofoil Techs., AG v. Todaro*, 2012 WL 299959, at *1 (S.D.N.Y. Jan. 31, 2012), and

that Rule 4(f)(3) "stands independently, on equal footing" with Rule 4(f)(1), *Rio Props., Inc. v.*

*Rio Int'l Interlink*, 284 F.3d 1007, 1014-15 (9th Cir.2002).  As the Ninth Circuit reasoned in *Rio*

*Properties*:

> As obvious from its plain language, service under Rule 4(f)(3)
> must be (1) directed by the court; and (2) not prohibited by
> international agreement. No other limitations are evident from the
> text ....
>
> By all indications, court-directed service under Rule 4(f)(3) is as
> favored as service available under Rule 4(f)(1) or Rule 4(f)(2)....
> Rule 4(f)(3) is not subsumed within or in any way dominated by
> Rule 4(f)'s other subsections; it stands independently, on equal
> footing. Moreover, no language in Rules 4(f)(1) or 4(f) (2)
> indicates their primacy, and certainly Rule 4(f)(3) includes no
> qualifiers or limitations which indicate its availability only after
> attempting service of process by other means.

*Id.*; *accord GLG Life Tech Corp.*, 287 F.R.D. at 265 (following *Rio Properties*); *Advanced*

*Aerofoil Techs.*, 2012 WL 299959, at *1 (same); *FTC v. PCCare247 Inc.*, 2013 WL 841037, at

*2 (S.D.N.Y. Mar. 7, 2013) (similar).  In other words, Rule 4(f)(3) is "merely one means among

several which enables service of process on an international defendant" and "is neither a 'last

resort' nor 'extraordinary relief.' "  *Rio Props.*, 284 F.3d at 1015 (quoting *Forum Fin. Grp., LLC*

*v. President & Fellows of Harvard Coll.*, 199 F.R.D. 22, 23 (D.Me.2001)).

Applying these principles, "numerous courts have authorized alternative service under

Rule 4(f)(3) even where the Hague Convention applies." *Richmond Techs., Inc. v. Aumtech Bus. Solutions*, 2011 WL 2607158, at *12 (N.D.Cal. July 1, 2011) (citing cases). *See also In re Chinese-Manufactured Drywall Products Liability Litigation*, *supr*a, Rec.Doc.No. 17790; *In re Chinese-Manufactured Drywall Products Liability Litigation*, *supra*, Rec.Doc.No. 18228; *Amorin*, *supra*; *Lexmark Int'l, Inc.*, 291 F.R.D. at 175; *Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508 (S.D.N.Y. 2013); *Russell Brands, LLC v. GVD Int'l Trading, SA*, 282 F.R.D. 21 (D. Mass. 2012). By its terms, Rule 4(f)(3) requires only that service be authorized by a court and "not prohibited by international agreement." So long as those conditions are met, it should not, and does not, matter whether service was attempted pursuant to Rule 4(f)(1) or (2) and, if so, whether or why such service was unsuccessful.[5] Therefore, it is well within this Court's discretion to approve alternative service on the BNBM and CNBM Entities through their United States Lawyers.[6]

---

[5] Before authorizing service pursuant to Rule 4(f)(3), some district courts have nevertheless required " '(1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary.' " *GLG Life Tech Corp.*, 287 F.R.D. at 265–66 (quoting *United States v. Lebanese Canadian Bank SAL*, 285 F.R.D. 262, 267 (S.D.N.Y.2012), and citing cases). To that end, "in cases involving service on a person residing in a country that is a signatory to the Hague Convention, courts have often imposed a requirement that litigants first attempt service by means of the Hague Convention before seeking court-ordered alternative service under section 4(f)(3)." *Id*. at 266 (citing *Devi v. Rajapaska*, 2012 WL 309605, *2 (S.D.N.Y. Jan. 31, 2012)). Such requirements make good sense, if only "to prevent parties from whimsically seeking alternate means of service and thereby increasing the workload of the courts." *Id*. (quoting *Ryan v. Brunswick Corp.*, 2002 WL 1628933, at *2 (W.D.N.Y. May 31, 2002)) (internal quotation mark omitted). In this case, however, the Court need not decide whether or when these requirements apply, as Plaintiffs have fulfilled them given their well documented efforts to serve the BNBM and CNBM Entities through the Hague Convention.

[6] Since the PSC proposes that service be effectuated via serving the BNBM and CNBM Entities' United States lawyers, it is questionable whether the Hague Convention is even

(continued...)

## B. Alternative Service of Process on the BNBM and CNBM Entities is Clearly Justified Under the Facts of this Case

Alternative service on the BNBM and CNBM Entities' United States lawyers is clearly justified in light of the fact that it will take many years to serve the BNBM and CNBM Entities with the outstanding complaints. Not only is there a large backlog of complaints but the history of this litigation suggests it will take a considerable amount of time to effectuate service of the complaints once commenced. This expected delay clearly justifies approval of alternative service on the BNBM and CNBM Entities' United States lawyers. *See Lexmark Int'l, Inc.*, 291 F.R.D. at 175 ("Plaintiff also has shown that the circumstances of the case warrant alternative service. This case has been pending for approximately three years, and the Court is well aware of the difficulties encountered by Plaintiff attempting to locate all of the Defendants in this matter. Plaintiff has demonstrated that service on the Chinese entities could be further delayed by more than four months if formal service pursuant to the Hague Convention is required."); *Lyman*

---

[6](...continued)
applicable. The purpose of the Hague Convention is " 'to create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time.' " *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 300 (2d Cir.2005) (quoting Hague Convention pmbl.); *see also* Hague Convention art. 1 (stating that the Convention applies "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad"). As the Supreme Court has explained, "[t]he only transmittal to which the Convention applies is a transmittal abroad that is required as a necessary part of service." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988) (emphasis added). The Convention has "no further implications," therefore, "[w]here service on a domestic agent is valid and complete under both state law and the Due Process Clause." *Id.*; *see also GLG Life Tech Corp.*, 287 F.R.D. at 267 ("[S]ervice on GLG's counsel ... would not run afoul of the Hague Convention since ... no documents would be transmitted abroad."); *RSM Prod. Corp. v. Fridman*, 2007 WL 2295907, at *3 (S.D.N.Y. Aug. 10, 2007) (holding that the plaintiff's request for court-directed service on the defendant through counsel in the United States pursuant to Rule 4(f)(3) did not implicate the Convention because it involved no transmittal of documents abroad).

10

*Morse Boatbuilding Co., Inc. v. Lee*, 2011 WL 52509, at *3 (D.Me. Jan. 6, 2011) (granting the plaintiff's motion for alternative service pursuant to Fed.R.Civ.P. 4(f)(3), finding not only that the Convention did not prohibit such alternative service but, as well, that "any attempt at formal service through the Brazilian judicial system will be, if not fruitless, prolonged for such an extensive period of time that evidence and testimony may well be affected.").[7]

In light of anticipated delays in serving defendants located in China it should come as no surprise that numerous courts have approved alternative service on Chinese defendants. *See In re LDK Solar Sec. Litig.*, 2008 WL 2415186, * 3-4 (N.D. Cal. June 12, 2008) (permitting service of Chinese subsidiary and individual officers by service on parent company in California because such service is not barred by the Hague Convention); *Lexmark Int'l, Inc.*, 291 F.R.D. at 175 (approving alternative service on Chinese defendant by email); *Jian Zhang*, 293 F.R.D. at 510 (approving alternative service on Chinese defendant's American lawyer); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 1091044, * 4 (N.D. Cal. Mar. 13, 2014) (rejecting Chinese defendant's argument that it had been improperly served after court had approved alternative service under Rule 4(f)(3) on defendant's American lawyers). As noted above, this Court has

---

[7] "Courts have frequently cited delays in service under the Hague Convention as supporting an order of alternative service under Rule 4(f)(3)." *In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. at 266-67. *See, e.g., Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560, 562-66 (C.D.Cal.2012) (ordering alternative service and noting that service of defendant under the Hague Convention would take four to six months); *Ackerman v. Global Vehicles U.S.A., Inc.*, 2011 WL 3847427, at *3-4 (E.D.Mo. Aug. 26, 2011) (authorizing service on defendant's counsel "so as to not further delay" the lawsuit); *The Knit With v. Knitting Fever, Inc.*, 2010 WL 4977944, at *4-5 (E.D.Pa. Dec. 7, 2010) (plaintiff granted leave to serve a defendant via counsel where Hague Convention service would take up to three months and plaintiff sought a waiver of service from the defendant before seeking leave to serve the defendant by alternative means); *LG Elecs., Inc. v. ASKO Appliances, Inc.*, 2009 WL 1811098, at *4 (D.Del. June 23, 2009) (authorizing service on defendant's counsel "to prevent further delays in litigation").

entered prior orders allowing service on defendants' American lawyer.  *See In re Chinese-Manufactured Drywall Products Liability Litigation*, *supr*a, Rec.Doc.No. 17790;  *In re Chinese-Manufactured Drywall Products Liability Litigation*, *supra*, Rec.Doc.No. 18228.  *See also Amorin*, *supra*.

The PSC has experienced considerable delay and expense in serving the BNBM and CNBM Entities with its complaints.  This delay and expense will continue in the absence of relief from the Court.  In order to eliminate the backlog of complaints that need to be served on the BNBM and CNBM Entities and to accomplish justice for injured homeowners, it is respectfully submitted that the Court should approve alternative service of process pursuant to Rule 4(f)(3).

### C. Service on the BNBM and CNBM Entities' United States Lawyers is Permissible and Comports with Due Process

Since ordering alternative service pursuant to Rule 4(f)(3) is within the Court's discretion and is appropriate under the facts of this case, the only remaining question is whether service on the BNBM and CNBM Entities' United States lawyers is a permissible procedure.  A method of alternate service is acceptable if it "(1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process."  *S.E.C. v. Anticevic*, 2009 WL 361739, * 3 (S.D.N.Y. Feb. 13, 2009) (citation omitted).  For a method of service to satisfy due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Service on a party's lawyers "is a common form of service ordered under Rule 4(f)(3)."

*Richmond Techs.*, 2011 WL 2607158, at * 13. *See also Knit With*, 2010 WL 4977944, at *4

("Repeatedly, courts around the country have found that service upon a foreign defendant

through counsel is appropriate to prevent further delays in litigation."); *Brown*, 285 F.R.D. at

565-66 (same); *GLG Life Tech Corp.*, 287 F.R.D. at 267 (citing cases).  Further, **"[n]othing in**

**the Hague Convention prohibits such service**." *Richmond Techs.*, 2011 WL 2607158, at *13

(emphasis added).  Indeed, because service on counsel occurs domestically, and does not involve

transmission of documents abroad, it does not even "implicat[e]" the Hague Convention.

*Volkswagenwerk*, 486 U.S. at 707 ("Where service on a domestic agent is valid and complete

under both state law and the Due Process Clause, our inquiry ends and the Convention has no

further implications."); *accord GLG Life Tech Corp.*, 287 F.R.D. at 267; *RSM Prod. Corp.*, 2007

WL 2295907, at * 3.  *See also*, fn. 7, *supra*.

        In any event, service on the BNBM and CNBM Entities' domestic counsel will clearly

satisfy the requirements of Due Process.  The BNBM and CNBM Entities' United States lawyers

have been continuously representing these defendants since March 2015.  These counsel have

been heavily engaged in this litigation as evidenced by their participation in the Court's June 9,

2015 damages hearing, their attendance at dozens of depositions, and their briefing and argument

on a host of motions that have been considered by the Court.  The facts of this case suggest there

is "adequate communication" between the BNBM and CNBM Entities and their counsel and

there is no information to suggest otherwise.  *GLG Life Tech Corp.*, 287 F.R.D. at 267 (quoting

*Volkswagenwerk*, 486 U.S. at 705); *see also Richmond Techs.*, 2011 WL 2607158, at *13.

Accordingly, it is respectfully submitted that service on the BNBM and CNBM Entities' United

States lawyers will comport with Due Process as it is reasonably calculated to apprise the BNBM

and CNBM Entities of the pendency of the actions against them and will afford them an

opportunity to present any objections.

III.     **CONCLUSION**

Wherefore, the PSC respectfully requests that the Court approve alternative service of

process pursuant to Fed.R.Civ.P. 4(f)(3).

Respectfully submitted,

Dated:  September 18, 2015

/s/ Russ M. Herman
Russ M. Herman, Esquire (LA Bar No. 6819)
Leonard A. Davis, Esquire (LA Bar No. 14190)
Stephen J. Herman, Esquire (LA Bar No. 23129)
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Sandra L. Duggan (On the Brief)
Matthew C. Gaughan (On the Brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

14

### PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Peter Prieto
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Bruce William Steckler
Steckler, LLP
12720 Hillcrest Road, Ste 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Ervin A. Gonzalez
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker Waichman, LLP
27300 Riverview Center Blvd.
Suite 103
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@attorneys4people.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Victor M. Diaz, Jr., Esquire
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W
Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

Anthony D. Irpino
IRPINO LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 18th day of September, 2015.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
HERMAN, HERMAN & KATZ, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
Plaintiffs' Liaison Counsel
MDL 2047

*Co-counsel for Plaintiffs*