

ORRICK, HERRINGTON & SUTCLIFFE LLP
THE ORRICK BUILDING
405 HOWARD STREET
SAN FRANCISCO, CALIFORNIA 94105-2669

tel +1-415-773-5700
fax +1-415-773-5759

WWW.ORRICK.COM

September 23, 2015

Christopher Vejnoska
(415) 773-5916
cvejnoska@orrick.com

VIA ECF

The Honorable Eldon E. Fallon
Eastern District of Louisiana
United States Court
500 Poydras Street
Room C456
New Orleans, LA 70130

Dear Judge Fallon:

    We received the PSC's letter dated September 22 late yesterday. We will not endeavor here to respond to each contention made there, since we continue to assert that any change in the briefing schedule previously set by the Court must be done by formal, noticed motion.

    Briefly, we remind the Court that the only issue here is whether the discovery dispute regarding Peng Wenlong of Taishan requires a change in the briefing schedule on CNBM Group's FSIA motion. While the PSC would like to tar CNBM Group with its charges against Taishan, it still has proffered no evidence that CNBM Group has anything to do with the controversy regarding the whereabouts of either Mr. Peng or his computer. Indeed, all the PSC has submitted to the Court on that issue are excerpts from depositions of various CNBM personnel disclaiming even knowing Mr. Peng.

    Faced with this failure, the PSC's response to our September 21 letter is to toss around more random accusations that have nothing to do with the question at issue. In fact, most of what the PSC proffered last night has absolutely nothing at all to do with either CNBM Group or its sovereign immunity defense. The PSC has informed the Court that Taishan's board had BNBM appointees (item 1); Mr. Jia of Taishan spoke with Mr. Peng of Taishan (item 3); Mr. Peng of Taishan wrote to Hogan Lovells (Taishan's counsel) to say that a decision on the debtor's examination was "complex" (item 5); Mr. Peng of Taishan had many communications with Hogan Lovells, Taishan's counsel (item 7); and Mr. Peng of Taishan had an opinion on the contempt order's use of "affiliates" and shared that opinion with Taishan's counsel (item 8). None of these observations have anything to do with CNBM Group. They cannot be the basis for a change of the FSIA briefing schedule.

    Nor can the few remaining items that do at least mention CNBM Group support a revision of that schedule. Giving the PSC every benefit of the doubt, those remaining arguments show, at most, that Mr. Peng (an employee of Taishan) may have been involved in Taishan's decision not to


ORRICK

Honorable Judge Fallon
September 23, 2015
Page 2

attend the debtor's examination, that Mr. Peng spoke with Taishan's lawyers regarding that decision, and that CNBM Group was informed of Taishan's decision. Indeed, while the PSC baldly alleges "control" by CNBM Group over Taishan (items 9 and 10), by the PSC's own contention CNBM Group did not exercise that purported control regarding the debtor's examination, but rather honored Taishan's corporate separateness by "respecting" Taishan's decision (item 6). Tellingly, the PSC offers no evidence for its representation to the Court that "Peng Wenlong conten[ds] that the decision whether Taishan would absent itself from this jurisdiction was really up to CNBM Group" (pg. 4), and that it must be given the opportunity to question him about that contention.[1]

But even if the PSC could prove its allegations that CNBM Group was involved in Taishan's decision not to appear at the debtor's examination (which it cannot), that still should have no bearing on the FSIA motion or briefing schedule. To defeat CNBM Group's presumption of sovereign immunity, the PSC must demonstrate that one of the statutory exceptions to immunity applies – i.e., that its underlying claims in these actions are based upon drywall-related commercial or tortious activity conducted by CNBM Group in the United States. 28 U.S.C. § 1605(a)(2), (5). The PSC's claims are based on allegedly defective drywall, not Taishan's decision regarding the debtor's examination; and so CNBM Group's (nonexistent) role in the latter, which necessarily occurred years after the facts underlying the PSC's claims, cannot establish the existence of any statutory exception.

Although the PSC has made no effort to tie its litany of bullet points to any relevant legal standard in this litigation, it cites exhibits purportedly showing, rather unremarkably, that CNBM Group requires its subsidiaries to complete annual risk management reports (item 9) and that CNBM Group allegedly has investment guidelines regarding the use of its investment funds by other subsidiary companies (item 10). To the extent the PSC seeks to advance these facts – or its allegations regarding CNBM Group's purported role in Taishan's decision to withdraw – as evidence that CNBM Group has an agency or alter ego relationship with other subsidiary defendants, it misses the mark. Common ownership, investment reporting requirements, coordination of business strategies, and even shared employees are simply realities of the modern corporate structure and not, as the PSC suggests, insidious markers of improper control. Indeed, the Fifth Circuit demands *far more* – finding agency where the agent "had no independent purpose outside of servicing [the principal's] needs," *In re Chinese-Manufactured Drywall Prods.*, 753 F.3d 521, 534 (5th Cir. 2014), and alter ego only where corporate separateness is so completely absent that the corporations "do not in reality constitute separate and distinct corporate entities," *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990); *see also Doe v. Unocal Corp.*, 248 F.3d 915, 928 (9th Cir. 2001) ("no alter ego relationship was created where the parent company guaranteed loans for the subsidiary, reviewed and approved major decisions, placed several of its directors on the subsidiary's board, and

---

[1] It attaches a document authored by Dong Chungang that claims CNBM personnel were "involved" in discussions, but that document does not say Mr. Peng "contends" anything.


Honorable Judge Fallon
September 23, 2015
Page 3

was closely involved in the subsidiary's pricing decisions"). The PSC ignores these fundamental standards and repeatedly asks this Court (through procedurally improper emails) to grant it substantial relief on the assumption that it will one day string innuendo into fact.

Respectfully, this needs to stop. The PSC habitually complains to the Court about delayed relief to plaintiffs, while at the same time seeking to extend discovery for contempt proceedings that have no bearing on the merits of the plaintiffs' claims. This latest effort – calculated to delay resolution of CNBM Group's FSIA defense and severely prejudice its opportunity to meaningfully respond to PSC's opposition brief – defies both reason and the established procedures of the Court.[2] CNBM Group asks this Court to reconsider its decision to grant the PSC's improper and unsupported demand to alter the FSIA briefing schedule.

Respectfully,

/s/ L. Christopher Vejnoska

---

[2] The PSC's remark in its concluding paragraph that a "reply brief is discretionary" ignores that, since CNBM Group filed its FSIA motion in June, the PSC has had months of document discovery and depositions to build a record in opposition to that motion. The idea that CNBM Group would have no meaningful opportunity to respond to the PSC's presentation of that record, or that the Court would want to resolve an issue as important as sovereign immunity without the benefit of a reply, borders on the absurd.

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Reply to the PSC's Response to CNBM Group's Letter Directed to the Court on September 21, 2015 has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 23rd day of September, 2015.

/s/ L. Christopher Vejnoska

L. Christopher Vejnoska (CA Bar No. 96082)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Tel: 415-773-5700
Fax: 415-773-5759
E-mail: cvejnoska@orrick.com

*Counsel for China National Building Materials Group Corporation, China National Building Materials Company Limited, CNBM USA Corp., CNBMIT Co. Ltd., and United Suntech Craft, Inc.*