UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED<br>DRYWALL PRODUCTS LIABILITY<br>LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO:<br><br>ALL CASES | |

**BEIJING NEW BUILDING MATERIALS PUBLIC LIMITED COMPANY'S AND
BEIJING NEW BUILDING MATERIAL (GROUP) CO., LTD.'S
OPPOSITION TO THE PLAINTIFFS' STEERING COMMITTEE'S MOTION TO
APPROVE ALTERNATIVE SERVICE OF PROCESS ON THE BNBM AND CNBM
ENTITIES PURSUANT TO FED. R. CIV. P. 4(f)(3)**

Defendants Beijing New Building Materials Public Limited Company ("BNBMPLC") and Beijing New Building Material (Group) Co., Ltd. ("BNBM Group") respectfully submit this memorandum of law in opposition to the Plaintiffs' Steering Committee's ("PSC") Motion To Approve Alternative Service of Process on the BNBM and CNBM Entities Pursuant to Fed. R. Civ. P. 4(f)(3) (Rec. Doc 19522, hereinafter "PSC's Motion").

**PRELIMINARY STATEMENT**

The PSC's Motion seeks an order that is both unprecedented and contrary to law. The PSC's request does not sit within the authority on which it relies, where alternative service was permitted with respect to an ongoing litigation with amended pleadings or changes to the relevant parties. Here, the PSC does not seek permission for alternative service in a single action. It seeks to blur the line between the separate actions comprising the MDL and obtain authorization for alternative service in dozens of cases—past and apparently future—for which there is an outstanding complaint not yet served. That request is neither fair nor permitted under the federal rules.

1

Under well-established precedent, each action in this MDL is separate and distinct: different plaintiffs asserting a variety of claims against certain defendants. This is supported by the fact that several actions within the MDL have been voluntarily dismissed over the past few months, and the purported *Amorin* class continues to shrink because the PSC has recognized that they lack sufficient evidence to connect the claims from those actions to the named defendants. Many other actions have laid dormant for years with the PSC never having effected service or even produced evidence of any attempted service. Yet still another action has been pending for less than a month. The PSC recently filed a brand new "Omnibus Class Action Complaint" asserting claims on behalf of approximately 800 new plaintiffs that were never part of any prior action before the Court after more than six years of litigation. Importantly, looking to existing pleadings and evidence produced during discovery, it is likely that few, if any, of these new plaintiffs purchased drywall manufactured by BNBMPLC (BNBM Group does not manufacture drywall). Yet despite these significant distinctions, the PSC seeks to merge all of these various actions together and demands that counsel be ordered to accept service of everything. This is improper.

The PSC cannot pile each of the pending actions together and slip them under precedent analyzing alternative service in the context of a single action. Neither BNBMPLC nor BNBM Group have entered an appearance through counsel in the actions for which the PSC seeks alternative service.[1] That counsel is therefore not authorized to accept service on behalf of any

---

[1] BNBMPLC and BNBM Group have appeared through counsel in the following actions and only those actions: *Germano v. Taishan Gypsum Co. Ltd.*, No. 2:09-cv-06687; *Gross v. Knauf Gips KG*, No. 2:09-cv-06690; *Wiltz v. Beijing New Building Material Public Limited Company*, No. 2:10-cv-00361 (no appearance by BNBM Group); *Amorin v. Taishan Gypsum Co. Ltd.*, No. 2:11-cv-01672; *Amorin v. Taishan Gypsum Co. Ltd.*, No. 2:11-cv-01395; *Amorin v. Taishan Gypsum Co. Ltd.*, No. 2:11-cv-01673; *Amorin v. State-Owned Assets Supervision and Admin. Comm'n of the State Council*, No. 2:14-cv-1727. Rec. Docs. 18427, 18428.

defendant in those actions. Instead, the PSC must follow the well-established and mandatory procedures of the Hague Convention—procedures the PSC does not dispute that it could follow.

The PSC's only argument against compliance with the Hague Convention is that it finds those procedures too cumbersome. The PSC's claimed frustrations, however, do not take precedent over the requirements of international law and the rights of every defendant that is haled into a United States litigation. The PSC's Motion must be denied for at least four independent reasons.

First, Federal Rule of Civil Procedure 4(f)(3) does not permit this Court to authorize the method of service proposed by the PSC. That rule, according to its plain terms, authorizes federal courts to authorize "other means" of service only if such service occurs "not within any judicial district of the United States." FED. R. CIV. P. 4(f). In contrast, the PSC undoubtedly seeks a method of service that would occur in the Unites States. Rule 4(f)(3) therefore does not allow the PSC's request.

Second, Rule 4(f)(3) does not permit this Court to authorize the method of service the PSC requests because the Hague Convention prohibits it. The Convention's provisions are mandatory and are automatically triggered when a plaintiff must serve a complaint outside the United States on a defendant located in a signatory country. Regardless of how many complaints are filed, absent an agreement to the contrary, the PSC must serve each of the pending complaints outside the United States because neither BNBMPLC nor BNBM Group has an agent within the United States authorized to accept service on its behalf.

Third, the PSC has not even attempted to satisfy its burden that alternative service is appropriate or necessary. The PSC did not submit with its motion any sworn statement— evidence that could establish the efforts made to properly serve the complaints at issue and that

3

those efforts were sufficient to support the broad authorization the PSC now seeks. Indeed, the PSC readily admits that it seeks this unprecedented relief from proper service for mere convenience rather than actual necessity.

Fourth, the PSC's Motion fails to even define what entities it seeks to serve through which counsel and in which actions. Without this essential information, neither the parties nor this Court can perform the necessary due process analysis required before a request for alternative service can be considered. As such, the Court must deny the PSC's Motion.

## BURDEN OF PROOF

The PSC—as the party seeking an order under Rule 4(f)(3)—bears the burden of proving the proposed alternative method of service is appropriate and permitted by the Federal Rules of Civil Procedure. *See Familia De Boom v. Arosa Mercantil, S.A.*, 629 F.2d 1134, 1139 (5th Cir. 1980) ("As with a challenge to jurisdiction, when service of process is challenged, the party on whose behalf service is made has the burden of establishing its validity.").

## ANALYSIS

### I. Rule 4(f)(3) Does Not Permit Courts To Authorize Service Within The United States.

The PSC's Motion must be denied because the Rule on which the PSC expressly and exclusively relies—Fed. R. Civ. P. 4(f)(3)—does not permit the relief requested. Rule 4(f)(3) only authorizes methods of service *outside* the United States, whereas the PSC undoubtedly seeks to effect service *inside* the United States.

The Supreme Court and the Fifth Circuit have both made clear that courts must "give the Federal Rules of Civil Procedure their plain meaning[.]" *Phillips v. Marine Concrete Structures, Inc.*, 895 F.2d 1033, 1035 (5th Cir. 1990) (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750 n.9 (1980)). The plain meaning of Rule 4(f) is that it only applies when service occurs "at a

4

place not within any judicial district of the United States[.]" *See also* FED. R. CIV. P. 4(h)(2) ("[A] foreign corporation . . . must be served . . . at a place *not within any judicial district of the United States*, in any manner prescribed by Rule 4(f)." (emphasis added)). In other words, if service is to occur under any of the methods provided for under Rule 4(f), it must occur outside the United States.

Multiple federal courts—including courts within this Circuit—have made this important distinction and have emphasized that Rule 4(f)(3) cannot modify service in the United States:

> [B]ased on a textual reading of both subsections (h) and (f)(3) of Rule 4, OPEC's position is correct—service *cannot* occur in the United States because, "unless federal law provides otherwise or OPEC's waiver has been filed, service on an unincorporated association *must* be served at a place *not within any judicial district of the United States*." The rule provides no authorization for service occurring within the United States and seems to explicitly forbid such service absent federal law to the contrary or waiver.

*Freedom Watch, Inc. v. Org. of Petroleum Exporting Countries*, — F. Supp. 3d. —, No. 12-CV-00731, 2015 WL 3506696, at *3 (D.D.C. Jun. 4, 2015) (emphasis in original); *see also Drew Tech., Inc. v. Robert Bosch, L.L.C.*, No. 12-15622, 2013 WL 6797175, at *2-3 (E.D. Mich. Oct. 2, 2013) ("Court ordered service under Rule 4(f)(3) is clearly limited to methods of service made outside of the United States."); *Baker Hughes Inc. v. Homa*, No. 11-3757, 2012 WL 1551727, at *14 (S.D. Tex. Apr. 30, 2012) ("A foreign corporation can be served *outside of the United States* 'in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).'" (emphasis added)).

The PSC is explicit in its request to effect service through "the BNBM and CNBM Entities' United States lawyers." *See* Memorandum in Support of PSC Mot. at 2 (Rec. Doc 19522-1, hereinafter "PSC's Mem.") ("The PSC proposes that such service be accomplished by serving the complaints on the BNBM and CNBM Entities' Unites States lawyers."). Rule 4(f)(3) does not permit this relief, and the PSC's Motion must be denied.

5

## II. The PSC Cannot Circumvent The Mandatory Provisions Of The Hague Convention Through Rule 4(f)(3).

The PSC's Motion also fails under the plain terms of Rule 4(f)(3) because the PSC proposes a method of service that is prohibited by the Hague Convention. *See* FED. R. CIV. P. 4(f)(3) (permitting alternative means of service only where "not prohibited by international agreement").

### A. The Hague Convention's Service Provisions Are Mandatory.

The Supreme Court has left no doubt that use of "the Convention is mandatory in all cases to which it applies." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988). As a result, "[d]efendants of signatory countries can insist on service pursuant to the Hague Convention where it applies." *Blades v. Illinois Cent. R. Co.*, No. 02-3121, 2003 WL 1193662, at *2 (E.D. La. Mar. 12, 2003) (citing *Sheets v. Yamaha Motors Corp.*, 891 F.2d 533, 537 (5th Cir. 1990)). BNBMPLC and BNBM Group—defendants located in China, a signatory country—insist on service under the Hague Convention.

The PSC ignores this precedent and faults BNBMPLC and BNBM Group for "stubbornly refus[ing]" to waive their rights. PSC Mem. at 7. But this is not mere stubborn insistence. The PSC has sat knowingly for years on many of these actions and has failed to diligently attempt service. The PSC cannot now demand that BNBMPLC and BNBM Group ignore that delay and accept service through methods outside the Hague Convention. Stranger still is the PSC's assertion that it must be allowed to serve via alternative means the "Omnibus Class Action Complaint" in *Brooke v. State-Owned Assets Supervision and Administration Commission of the State Council*, No. 2:15-cv-04127 (E.D. La.), which was filed only weeks ago and purportedly on behalf of approximately 800 new plaintiffs. Based on known evidence, it is likely that few, if any, of these plaintiffs can establish they were harmed by BNBMPLC drywall. As a result, it is

6

particularly unwarranted for the PSC to insist that both BNBMPLC and BNBM Group waive their rights as named defendants in that action.

The PSC cannot be given the carte blanche it seeks to effect service outside of the Convention. Nowhere in the PSC's motion does it specify exactly what complaints it seeks to serve on BNBMPLC and BNBM Group—and others—via counsel. Nor does the PSC specify which entities it seeks to serve through the proposed alternative method. The PSC's request is simply untethered from any particular action or party. If for no other reason, this lack of clarity distinguishes the PSC's position from every authority cited in its motion.[2] *See, e.g.*, *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) ("Inasmuch as Rule 4(f)(3) calls upon a court to exercise its discretion, however, each case must be judged on its facts."). As a result, BNBMPLC and BNBM Group are fully within their rights under the Federal Rules to ask that the PSC follow the established procedures under the Hague Convention.

The PSC nonetheless asks this Court to cast those rights and the Convention aside because the PSC deems them inconvenient. In doing so, the PSC relies on a handful of cases to imply Rule 4(f)(3) grants the Court unfettered discretion to authorize alternative methods of service. Those cases are neither binding nor persuasive. Not only has the Supreme Court removed any doubt from this issue, *Schlunk*, 486 U.S. at 699 ("By virtue of the Supremacy Clause . . . the Convention pre-empts inconsistent methods of service . . . in all cases to which it applies."), but the PSC ***fails to cite a single authority*** from a court within this Circuit in its entire

---

[2] A review of the authority cited within the PSC's Motion reveals that each holding is limited to the proposed service of a particular defendant in a particular action. *See, e.g.*, *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007, 1012 (2002) (analyzing request for service on "a Costa Rican entity").

motion and accompanying memorandum in support. And a closer look at the cases the PSC did provide reveals that they do not support the PSC's position.

For example, the PSC relies heavily[3] on the Ninth Circuit's decision in *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007, 1015 (2002), where the court stated that Rule 4(f)(3) is "merely one means among several which enables service of process on an international defendant." That case, however, is irrelevant to the issue before this Court because *Rio Properties* involved service on a defendant located in a country that was not a signatory to the Hague Convention. *Id.* at 1015 n.4. The Convention was immaterial to the court's analysis. And if there was any doubt, the court further explained that its holding should not be applied where—as here—the defendant is located in a signatory country:

> A federal court would be prohibited from issuing a Rule 4(f)(3) order in contravention of an international agreement, including the Hague Convention referenced in Rule 4(f)(1). The parties agree, however, that the Hague Convention does not apply in this case because Costa Rica is not a signatory.

*Id.*; *see also Postal v. Princess Cruises, Inc.*, 163 F.R.D. 497, 499-500 (N.D. Tex. 1995) ("The Hague Convention removes any discretion the court may have had under Rule 4(f)(3) to order service in this manner."). In other words, the Ninth Circuit cautioned against exactly the type of order the PSC now seeks.

Binding precedent in place for nearly three decades requires adherence to the Hague Convention. It cannot merely be discarded at the whim of the PSC because it views the procedures as cumbersome or costly. BNBMPLC, BNBM Group, and each of the other foreign defendants yet to be served have well-established rights under that Convention, and the PSC's Motion must therefore be denied.

---

[3] *See, e.g.*, PSC Mem. at 8.

### B. The Hague Convention Applies To Service On BNBMPLC And BNBM Group Because Neither Entity Has An Agent For Service Located In The United States.

The only argument raised by the PSC to justify its disregard for the Hague Convention is that "the BNBM and CNBM Entities' United States lawyers" may be considered "domestic agent[s]" for purposes of service. PSC Mem. at 9-10 n.6, 13. According to the PSC, service can be effected through lawyers within the United States, and the Convention does not apply. Of course, the PSC does not specify which lawyers may be considered "agents" for which entities and for which actions, so any meaningful analysis of the issue is impossible. And the PSC has presented no evidence that even remotely suggests that any of the counsel involved have been appointed by their clients as agents for service of process in new and previously unserved actions. But even ignoring that glaring omission, the PSC itself acknowledges its argument is "questionable," PSC Mem. at 9-10 n.6, and for good reason.

The PSC's half-hearted argument fails on multiple grounds.[4] First, the PSC has not even presented the applicable law this Court must analyze to consider the PSC's request. In *Schlunk*, the Supreme Court held that the scope of who may be considered an "agent" for purposes of service depends on the law of the forum state. 486 U.S. at 700. As this Court well knows, there are dozens of forum states at issue in this MDL.[5] And the PSC seeks authorization to serve an

---

[4] The PSC's discussion of "agents" is limited to a single sentence and footnote. PSC Mem. at 9-10 n.6, 13. Beyond these bare assertions, the PSC provides no analysis or argument on the issue. The Fifth Circuit, however, has made clear that parties may not rely on courts to craft arguments on their behalf, which are not spelled out and asserted by the parties themselves. *NCDR, LLC v. Mauze & Bagby, PLLC*, 745 F.3d 742, 752 (5th Cir. 2014) ("Merely mentioning a legal issue in general terms is also insufficient; an argument must be raised to such a degree that the trial court may rule on it."); *Ard v. Rishing*, 597 F. App'x 213, 217 (5th Cir. 2014) ("[M]erely intimating an argument is not the same as pressing it."). Under this precedent, the Court need not even consider these arguments.

[5] At the very least, this MDL involves actions filed in Louisiana, Alabama, Mississippi, Florida, Georgia, California, Oregon, North Carolina, Virginia, and Ohio.

untold number of complaints in those actions through means other than the Hague Convention. As a result, to prevail on its motion, the PSC must demonstrate that the forum state *for each action* recognizes the proposed lawyers as agents for service. If they do not, the complaints must be sent abroad to the Chinese defendants, thereby triggering the mandatory procedures of the Hague Convention. *Schlunk*, 486 U.S. at 699-700. The PSC's failure to analyze the applicable law is sufficient grounds to deny the its motion because the PSC has not satisfied its burden to justify an alternative method of service. *See Familia De Boom*, 629 F.2d at 1139.

Even if the PSC had properly made its argument, however, a review of the applicable law in even a few of the relevant forum states demonstrates its position is untenable. To be clear, the PSC's "agent" proposal is unprecedented. In *Schlunk*, the plaintiff served a defendant through its "wholly owned subsidiary" located in the United States, and the parties did not dispute that agency relationship before the Supreme Court. 486 U.S. at 697. Yet, the PSC goes far beyond that situation and suggests that lawyers representing an entity in one action may be considered agents for service in any other subsequent action. That is not the law in the forum states. In Louisiana, for example, "[i]t is only after . . . the appearance of a defendant through counsel that service of all other process *in the suit* may be accepted by his attorney of record." *Jinright v. Glass*, 954 So. 2d 174, 178 (La. Ct. App. 2007) (emphasis added) (quoting *Wadsworth v. Alexius*, 99 So. 2d 77, 80 (La. 1958)). In other words, until an attorney enters an appearance in a particular action, it is not an agent for purposes of serving pleadings in that action.

A review of the cases cited by the PSC reveals that they follow this same standard and do not support the PSC's proposal. In *Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560, 562 n.9, 566 (C.D. Cal. 2012), the court permitted service on a co-defendant's attorney because that attorney had already appeared in the same action nine months earlier and had actively

10

represented a United States corporation for which the unserved defendants were "current officers and/or directors[.]" *See also Brown*, No. 11-2559, Doc. No. 48 (Sep. 30, 2011) (Attorney's notice of appearance). Similarly, in *In re GLG Life Tech Corp. Sec. Lit.*, 287 F.R.D. 262, 263-64 (S.D.N.Y. 2012), the court allowed alternative service on counsel that, as with *Brown*, had already appeared in that action and was actively representing the unserved defendant's employer, a co-defendant. Finally, the court in *Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 515 (S.D.N.Y. 2013), granted alternative service on counsel but did so only after finding that the unserved defendant's "counsel has been representing it continuously ***in this action*** for roughly nine months." (emphasis added). In short, none of the cases on which the PSC relies supports their extraordinary request: that the PSC may serve multiple, unidentified entities through counsel that has not appeared in those actions.[6]

These holdings make logical sense. A counsel's representation of a party cannot and does not automatically make that counsel an "agent" to receive service for new, separate actions for which that counsel has not entered an appearance. That assertion, taken to its conclusion, would lead to absurd results. And yet, that is exactly what the PSC proposes.

In an attempt to avoid this absurd result, the PSC incorrectly treats all actions within the MDL as a single "litigation."[7] In other words, despite the admission that the *Brooke* complaint

---

[6] Much of the PSC's cited caselaw is also distinguishable by the fact that those cases either do not involve the Hague Convention or do not involve requests to serve counsel as "agents." *See, e.g.*, *Lexmark Intern., Inc. v. Ink Tech. Printer Supplies, LLC*, 291 F.R.D. 172, 174-75 (S.D. Ohio 2013) (analyzing request to serve via defendants' email addresses); *Lyman Morse Boatbuilding Co., Inc. v. Lee*, No. 2:10-cv-337, 2011 WL 52509, at *1 (D. Me. Jan. 6, 2011) (seeking alternative service for defendant in country not party to Hague Convention); *In re LDK Solar Sec. Litig.*, No. 07-05182, 2008 WL 2415186, at *3-4 (N.D. Cal. Jun. 12, 2008) (requesting service on parent company in United States).

[7] *See, e.g.*, PSC Mem. at 2 ("[T]he BNBM . . . Entities have been engaged in these proceedings beginning in March 2015."); *id*. at 6 (asserting BNBMPLC and BNBM Group has participated

asserts claims on behalf of 800 proposed class plaintiffs "not included in the [*Amorin*] Certified Class,"[8] A. Levin, Letter to Court (Sep. 8, 2015), the PSC's Motion inexplicably assumes the two actions—and all other actions within the MDL—as one in the same. That is not the law. *See Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 904 (2015) ("[C]ases consolidated for MDL pretrial proceedings ordinarily retain their separate identities . . . ."); *see also* 28 U.S.C. § 1407(a) (requiring each action within an MDL to "be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred"); *Johnson v. Manhattan Ry. Co*., 289 U.S. 479, 496–97 (1933) ("[C]onsolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties . . . ."); *Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1532 (5th Cir. 1993) ("[A]ctions maintain their separate identity even if consolidated.").

The PSC cannot effect service on BNBMPLC's or BNBM Group's counsel in an action for which such counsel has not yet entered an appearance. And neither BNBMPLC nor BNBM Group has entered an appearance through counsel in these unserved, "backlogg[ed]" actions. As a result, the PSC must properly serve the Chinese defendants themselves, triggering the mandatory provisions of the Hague Convention.

### III. The PSC Has Not Met Its Burden That Alternative Service Is Either Appropriate Or Necessary.

Many federal courts allow an alternative means of service under Rule 4(f)(3) only if the plaintiff can establish: "(1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's

---

"in this litigation"); *id*. at 10 (referring to the history of "this litigation").

[8] An initial review of the *Brooke* proposed class list reveals that approximately 30 of the more than 800 listed plaintiffs also appeared on the PSC's proposed class list for the *Amorin* action used at the June 9, 2015 damages hearing.

intervention is necessary." PSC Mem. at 9 n.5 (quoting *In re GLG*, 287 F.R.D. at 265-66). And where, as here, the parties are located in signatory countries, step one "require[s] that litigants first attempt service by means of the Hague Convention." PSC Mem. at 9 n.5 (quoting *In re GLG*, 287 F.R.D. at 266). These requirements "prevent parties from whimsically seeking alternate means of service and thereby increasing the workload of the courts." PSC Mem. at 9 n.5 (quoting *In re GLG*, 287 F.R.D. at 266). The PSC agrees that it "make[s] good sense" to allow alternative methods of service only after these prerequisites have been established. PSC Mem. at 9 n.5. But the PSC has done nothing to meet that burden here.

The PSC presents no evidence with its motion to demonstrate that it has "reasonably attempted to effectuate service" on all defendants not yet served in each of the "backlog[ged]" complaints at issue. Indeed, as explained above, the PSC does not even identify which complaints it seeks to serve via alternative means, let alone provide this Court with evidence of its attempts to serve those complaints. It appears the PSC seeks both a backward- and forward-looking, blanket license to serve via alternative means all named defendants in every complaint within this MDL. This is precisely the type of "whimsically [sought] alternate means of service" that the two-step standard exists to prevent. *In re GLG*, 287 F.R.D. at 266; *see also S.E.C. v. China Ne. Petroleum Holdings Ltd.*, 27 F. Supp. 3d 379, 398 (S.D.N.Y. 2014) ("When courts have allowed for alternative service, they have done so when 'plaintiffs have been unable, despite *diligent efforts*, to serve the defendant in the foreign county according to the Hague Convention procedures." (emphasis in original)).

Moreover, looking only to the filing dates of the complaints within the MDL demonstrates that many have been sitting dormant for years. Only two of the outstanding complaints in which either BNBMPLC or BNBM Group are named defendants, including

13

*Brooke*, were filed within the last three years.  As the PSC notes, it sought and obtained extensions to serve at least some of the pending complaints.  PSC Mem. at 1-2 n.1.  But the last such extension noted by the PSC was granted nearly three years ago.  *See* Rec. Doc. 16356.  The PSC gives no explanation of precisely what it has done in the intervening three years that may constitute "reasonabl[e] attempt[s] to effectuate service" of each complaint.  The PSC has thus failed to satisfy its burden.  *See Compass Bank v. Katz*, 287 F.R.D. 392, 394 (S.D. Tex. 2012) ("In deciding whether defendants' addresses are 'unknown,' courts have repeatedly looked to the efforts plaintiffs have put forth in attempting to discover said addresses.").

The PSC has also failed to demonstrate that the alternative service it seeks is "necessary" rather than merely convenient.  The PSC simply points to what it deems is "the enormous expense and delay" of service through the Hague Convention.  PSC Mem. at 2.  If mere convenience was the standard, every plaintiff would seek to serve a United States attorney rather than comply with the Hague Convention's requirements.  Fortunately, to maintain international comity, courts within this Circuit require much more:

> [A] plaintiff should never seek alternative service under Rule 4(f)(3) merely to "expedite the process and avoid additional costs of service."  Rather a plaintiff must demonstrate why "the facts and circumstances of the present case necessitate the district court's intervention."

*Compass Bank*, 287 F.R.D. at 395 n.4 (quoting *Baker Hughes Inc. v. Homa*, No. 11–3757, 2012 WL 1551727, at *17 (S.D. Tex. Apr. 30, 2012)).  The PSC openly admits its motion is based on a desire to avoid the "delays" and "expense" of service through the Hague Convention.[9]  PSC Mem. 1-2.  These interests alone are not enough.

---

[9] To the extent the PSC asserts it could not serve either BNBMPLC or BNBM Group because of an incorrect address, that problem no longer exists.  The parties have undergone months of discovery, including Fed. R. Civ. P. 30(b)(6) witnesses from both BNBMPLC and BNBM Group.  The PSC now possesses the information needed to serve both entities through the Hague Convention and makes no argument to the contrary.

### IV. The PSC's Request For Alternative Service Does Not Satisfy Due Process Because The PSC Has Not Specified The Actions Or Defendants It Seeks To Serve.

The PSC, as it acknowledges, must establish that the method of service it proposes comports with due process. PSC Mem. at 12-13. This requires a showing that for a particular action, the proposed method of service will "provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action[.]" *Schlunk*, 486 U.S. at 707. The PSC cannot establish that its proposed method of service comports with due process because it has not established that "the BNBM and CNBM Entities' United States lawyers" will be able to promptly notify every party the PSC may seek to serve through those lawyers. The PSC simply has not identified those parties, nor again has it identified which complaints it seeks to serve via alternative means. As a result, this Court cannot analyze "all the circumstances" of each instance of service contemplated by the PSC's Motion. The PSC has therefore failed to demonstrate its proposed method of service will always comport with due process.

### CONCLUSION

For the reasons stated above, the PSC's Motion to Approve Alternative Service of Process on the BNBM and CNBM Entities Pursuant to Fed. R. Civ. P. 4(f)(3) should be denied.

Dated:  September 30, 2015

        Respectfully submitted,

        **DENTONS US LLP**

        By: */s/ Michael H. Barr*
        Michael H. Barr
        New York Bar No. 1744242
        Justin N. Kattan
        New York Bar No. 3983905
        1221 Avenue of the Americas
        New York, NY 10020-1089
        Telephone:  (212) 768-6700
        Facsimile:  (212) 768-6800
        michael.barr@dentons.com
        justin.kattan@dentons.com

        - and -

        Richard L. Fenton
        Illinois Bar No. 3121699
        Leah R. Bruno
        Illinois Bar No. 6269469
        233 South Wacker Drive
        Suite 7800
        Chicago, IL  60606-6306
        Telephone:  (312) 876-8000
        Facsimile:  (312) 876-7934
        richard.fenton@dentons.com
        leah.bruno@dentons.com

        - and -

        C. Michael Moore
        Texas Bar No. 14323600
        Gene R. Besen
        Texas Bar No. 24045491
        2000 McKinney Ave, Suite 1900
        Dallas, TX  75201
        Telephone:  (214) 259-0900
        Facsimile:  (214) 259-0910
        mike.moore@dentons.com
        gene.besen@dentons.com

- and -

**PHELPS DUNBAR LLP**

Harry Rosenberg
Louisiana Bar No. 11465
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Facsimile: (504) 568-9130
harry.rosenberg@phelps.com

*Attorneys for Beijing New Building Material (Group) Co., Ltd. and Beijing New Building Materials Public Limited Company*

17

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing Opposition to the Plaintiffs' Steering Committee's Motion to Approve Alternative Service of Process on the BNBM and CNBM Entities Pursuant to Fed. R. Civ. P. 4(f)(3) has been served on Plaintiffs' Liaison Counsel, Leonard Davis, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this September 30, 2015.

                                                                                               /s/     Michael H. Barr