**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| =============================== | x | ========================= |
| | x | |
| IN RE: CHINESE-MANUFACTURED | x | MDL NO. 2047 |
| DRYWALL PRODUCTS LIABILITY | x | |
| LITIGATION | x | SECTION: L |
| | x | |
| | x | JUDGE FALLON |
| THIS DOCUMENT APPLIES TO ALL | x | |
| CASES | x | MAG. JUDGE WILKINSON |
| | x | |
| =============================== | x | ========================= |

**OCTOBER 13, 2015, 2015 RE-NOTICE OF EXPEDITED ORAL AND
VIDEOTAPED DEPOSITION PURSUANT TO THE COURT'S DIRECTIVE
DURING THE MARCH 17, 2015 SPECIAL HEARING AND MINUTE ENTRY
AND ORDER [REC.DOC. 18493]**

TO:    Jushi USA Fiberglass Co., Ltd.
4982 4th Street
Irwindale, CA 91706
**COUNSEL FOR DEPONENT HAS AGREED TO ACCEPT SERVICE,
AND NOTICE IS BEING ELECTRONCIALLY SERVED ON:**
Michael S. McNamara, Esq.
**Pillsbury Winthrop Shaw Pittman LLP**
1200 Seventeenth Street NW
Washington, DC 20036-3006
michael.mcnamara@pillsburylaw.com

**PLEASE TAKE NOTICE** that pursuant to Rules 26 and 30(b)(6) of the Federal

Rules of Civil Procedure, and the Court's Minute Entry and Order dated March 17, 2015

[Rec. Doc. No. 18493] (attached hereto as Exhibit "1") authorizing expedited discovery

of Taishan and BNBM/CNBM regarding (i) the injunction prong of the Court's July 17,

2014 Order holding Taishan in contempt of court, criminally and civilly [Rec. Doc. No.

17869], and (ii) whether there exist alter ego relationships between and among these

1

entities, plaintiffs, by and through their undersigned attorneys, the Plaintiffs' Steering Committee in the MDL, will take the deposition of **Jushi USA Fiberglass Co., Ltd., on November 17 and 18, 2015 beginning at 9:00 o'clock a.m.  each day(Pacific)(or at another time to be mutually agreed upon), continuing day-to-day until completed,** at **Pillsbury Winthrop Shaw Pittman LLP,  725 South Figueroa Street, Suite 2800, Los Angeles, CA 90017-5406, PH: (213) 488-7100,** or at another location mutually agreed upon by the parties.  Pursuant to Fed. R. Civ. P. 30(b)(6), **Jushi USA Fiberglass Co., Ltd.** shall designate and produce a designated representative or representatives, as may be required, to testify on behalf of **Jushi USA Fiberglass Co., Ltd.** concerning the topics identified in Schedule A attached hereto.  Further, the deponent is requested to produce the documents identified in the attached Schedule "A" to which deposition questions will be asked.

**If you are an attorney of record, please email cdw@golkow.com 48 hours prior to the deposition should you desire to participate by stream to view video/text so you may receive a username and password.**

        Primary Examiners:       A Member of the PSC, or its designee
        Videotaped Deposition: Yes
        Call-In Number:           **888-337-8218**
                                  **Participant Code:  769758**

The deposition will be taken before a person authorized by law to administer oaths, pursuant to Fed. R. Civ. P. 28, and will continue from day-to-day, excluding Sundays and court-recognized holidays, until the examination is completed.

Pursuant to directives provided at the status conference on May 27, 2010, a brief explanation of the subject matter expected at this deposition is as follows:  The deposition

will be conducted in furtherance of discovery related to violations of the Court's July 17, 2014 Contempt Order.  This brief explanation is with full reservation of all rights by the noticing party and is not intended to limit in any way the scope of the deposition noticed herein.  Counsel should be aware that all matters may be discovered in the deposition and that the above explanation is made solely in accordance with the directives provided at the status conference.  This is an MDL "common" fact witness deposition.

Respectfully submitted,

/s/ Russ M. Herman
**Russ M. Herman** (Bar No. 6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
*HERMAN, HERMAN & KATZ, LLC*
820 O'Keefe Avenue
New Orleans, LA  70113
PH:  (504) 581-4892
FAX:  (504) 561-6024
ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin
Fred S. Longer
Matthew C. Gaughan
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
PH:  (215) 592-1500
FAX:  (215) 592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Peter Prieto
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Bruce William Steckler
Steckler, LLP
12720 Hillcrest Road, Ste 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-404
mailto:bsteckler@baronbudd.com
bruce@stecklerlaw.com

Ervin A. Gonzalez
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
ervin@colson.com

Jerrold Seth Parker
Parker Waichman, LLP
27300 Riverview Center Blvd.
Suite 103
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@attorneys4people.com

Christopher Seeger
Seeger Weiss, LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

Victor M. Diaz, Jr., Esquire
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W Suite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Anthony D. Irpino
IRPINO LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing October 13, 2015 Re-Notice of Oral and Videotaped Deposition Pursuant to Fed.R.Civ.P. 30(b)(6) has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 13th day of October, 2015.

  /s/ Leonard A. Davis
Leonard A. Davis
Herman, Herman & Katz, LLC
820 O'Keefe Ave.
New Orleans, LA  70113
PH:  (504) 581-4892
Fax:  (504) 561-6024
ldavis@hhklawfirm.com

# SCHEDULE A

## DEFINITIONS & INSTRUCTIONS

1.      Whenever used in this Request, the following terms shall have the following meanings:

(a)      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

(b)      "Computer" means all devices utilizing microchips to facilitate processing, analysis, or storage of data, including microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (also known as personal digital assistants or PDA's), minicomputers and mainframe computers.

(c)      "Concerning" means relating to, referring to, describing, evidencing, embodying, or constituting.

(d)      "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, electronic or computerized data compilations.  Documents shall include all drafts, including drafts with "track changes," and shall be deemed to be separate documents within the meaning of this term.

(e)      "Electronically stored information" or "ESI" means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments,

annotations, marks, transmission notations, or highlighting of any kind) of writings and data compilations in any form, and of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means.  ESI includes, by way of example only, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts and transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail displaying full e-mail alias's (not merely "display names), electronic calendars, I'm logs, PBX logs, document management system data, operating systems, all metadata, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said ESI consists in an active file, deleted file or file fragment. Electronically stored information includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including,  EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and transmittal.  The term ESI also includes the file, folder tabs and containers and labels appended to, or associated with, any physical storage device associated with each original and copy.

(f)     "Electronic media" means any magnetic or other storage media device used to record electronically stored information.  Electronic media devices may include computer memories, hard disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched

cards, punched tape, computer chips, including, EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and transmittal.

(g)      "Identify" with respect to persons, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.   Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(h)      "Identify" with respect to documents, means to give, to extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

(i)      "Including" or "includes" means including, without limitation.

(j)      "You," or "your" means each of the individual named entities to whom this set of discovery is directed, and any of its domestic or international predecessors in interest, successors in interest, subsidiaries, divisions, subdivisions, affiliates, officers, directors, employees, representatives, independent contractors, consultants, or agents, whether present or former, including but not limited to their attorneys and accountants.

(k)      "Taishan" means Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.

(l)      "Chinese drywall" relates to drywall, plasterboard, or wallboard manufactured in China.

(m)    "Person" means any natural person or any business, legal, or governmental entity or association.

(n)    "Entities related to Taishan" shall include the below listed entities and any of their parents, related entities, subsidiaries, agents and assigns:

    i.    Tai'an Taishan Plasterboard Co., Ltd.;

    ii.    Qinhuangdao Taishan Building Materials Co., Ltd. a/k/a Qinhuang Dao Taishan Building Materials Co., Ltd.;

    iii.    China National Building Material and Equipment Import and Export Company;

    iv.    China Building Materials Academy;

    v.    China Cinda Asset Management Co., Ltd.;

    vi.    China National Building Materials Co., Ltd.;

    vii.    China National Building Materials Company, Ltd.;

    viii.    China National Building Materials Import and Export Company;

    ix.    China National Building Materials Import and Export Corporation;

    x.    CNBM Forest Products (Canada) Ltd.;

    xi.    CNBM Forest Products, Ltd.;

    xii.    Beijing New Building Materials Public Limited Co.;

    xiii.    Beijing New Building Materials Homes;

    xiv.    BND Co., Ltd.;

    xv.    Beijing New Building Materials (Group) Co., Ltd.;

    xvi.    Suzhou Tianfeng New Building Material Co., Ltd.;

    xvii.    Shandong Taihe Dongxin Co., Ltd.;

xviii.   China United Cement Co., Ltd.;

xix.   China United Luhong Cement Co., Ltd.;

xx.   China United Julong Huaihai Cement Co., Ltd.;

xxi.   China United Nanyang Co.;

xxii.   China United Qingzhou Luhong Cement Co., Ltd.;

xxiii.   Zaozuhuang China United Luhong Cement Co., Ltd.;

xxiv.   Xingtai China United Ziyan Co., Ltd.;

xxv.   China Jushi Co., Ltd. (f/k/a China Fiberglass Co., Ltd.);

xxvi.   Jushi Group Co., Ltd.;

xxvii.   Jushi USA Fiberglass Co., Ltd.

xxviii.   China Composites Group Corp., Ltd.;

xxix.   Shenzhen B&Q Decoration & Building Materials Co., Ltd.;

xxx.   Lianzhong Zhongfu Lianzhong Composite Material Group Co., Ltd.;

xxxi.   Changzhou China Composites Tianma Fiberglass Products Co., Ltd.;

xxxii.   Changzhou China Composites Liberty Co., Ltd.;

xxxiii.   Changzhou Liberty TOLI Building Material Co., Ltd.;

xxxiv.   Shanghai Yaohua Pilkington Glass Co., Ltd.;

xxxv.   China Triumph International Engineering Co., Ltd.;

xxxvi.   CTIEC-TECO American Technology Inc. in USA;

xxxvii.   CTIEC-TECO American Technology Inc.;

xxxviii.   CNBM International (USA);

xxxix.  United States Suntech Craft Inc.;

xl.  United Suntech Craft, Inc.;

xli.  CNBM USA Corporation;

xlii.  China Triumph Nanjing Cement Technological Engineering Co., Ltd.;

xliii.  CTIEC Shenzhen Scieno-tech Engineering Co., Ltd.;

xliv.  China Triumph Bengbu Engineering and Technology Co., Ltd.;

xlv.  China National Building Materials Group, Co., Ltd.;

xlvi.  China National Building Materials Group Corporation;

xlvii.  The State-owned Assets Supervision and Administration Commission of the State Counsel.

(o)  "SOEs" shall mean all Chinese state-owned entities including but not limited to the following entities and any of their parents, related entities, subsidiaries, agents and assigns:

i.  China National Nuclear Corporation;

ii.  China Nuclear Engineering Group Corporation;

iii.  China Aerospace Science and Technology Corporation;

iv.  China Aeospace Science and Industry Corporation;

v.  China State Shipbuilding Corporation;

vi.  China Shipbuilding Industry Corporation;

vii.  China North Industries Group Corporation;

viii.  China South Industries Group Corporation;

ix.  China Electronics Technology Group Corporation;

x. China National Petroleum Corporation;

xi. China Petrochemical Corporation;

xii. China National Offshore Oil Corporation;

xiii. State Grid Corporation of China;

xiv. China Southern Power Grid Co., Ltd.;

xv. China Huaneng Group;

xvi. China Datang Corporation;

xvii. China Huadian Corporation;

xviii. China Guodian Corporation;

xix. China Power Investment Corporation;

xx. China Three Gorges Corporation;

xxi. Shenhua Group Corporation Limited;

xxii. China Telecommunications Corporation;

xxiii. China United Network Communication Group Co., Ltd.;

xxiv. China Mobile Communication Corporation;

xxv. China Electronics Corporation;

xxvi. China FAW Group Corportion;

xxvii. Dongfeng Motor Corporation;

xxviii. China First Heavy Industries;

xxix. China Natinal Erzhong Group Co.;

xxx. Harbin Electric Corporation;

xxxi. Dongfang Electric Corporation;

xxxii. Anshan Irion and Steel Group Corporation;

xxxiii.  Baosteel Group Corporation;

xxxiv.  Wuhan Iron and Steel (Group) Corporation;

xxxv.  Aluminum Corporation of China;

xxxvi.  China Ocean Shipping (Group) Company;

xxxvii.  China Shipping (Group) Company;

xxxviii.  China National Aviation Holding Company;

xxxix.  China Eastern Air Holding Company;

xl.  China Southern Air Holding Company;

xli.  Sinochem Group;

xlii.  COFCO Limited;

xliii.  China Minmetals Corporation;

xliv.  China General Technology (Group) Holding, Limited;

xlv.  China State Construction Engineering Corporation;

xlvi.  China Grain Reserves Corporation;

xlvii.  State Development & Investment Corp.;

xlviii.  China Merchants Group;

xlix.  China Resources;

l.  China National Travel Service (HK) Group Corporation [China Travel Service (Holdings) Hong Kong Limited];

li.  State Nuclear Power Technology Corporation Ltd.;

lii.  Commercial Aircraft Corporation of China, Ltd.;

liii.  China Energy Conservation and Environmental Protection Group;

liv.  China Energy Conservation Solar Energy Technologies, Inc.;

lv.   Apollo Solar Energy, Inc.;

lvi.   Sichuan Apollo Solar Science & Technology Co., Ltd.;

lvii.   China International Engineering Consulting Corporation;

lviii.   China Huafu Trade & Development Group Corp.;

lix.   China Chengtong Holdings Group Ltd.;

lx.   China National Coal Group Corp.;

lxi.   China Coal Technology & Engineering Group Corp.;

lxii.   China National Machinery Industry Corporation;

lxiii.   China Academy of Machinery Science & Technology;

lxiv.   Sinosteel Corporation;

lxv.   China Metallurgical Group Corporation;

lxvi.   China Iron & Steel Research Institute Group;

lxvii.   China National Chemical Corporation;

lxviii.   China National Chemical Engineering Group Corporation;

lxix.   Sinolight Corporation;

lxx.   China National Arts & Crafts (Group) Corporation;

lxxi.   China National Salt Industry Corporation;

lxxii.   Huacheng Investment & Management Co., Ltd.;

lxxiii.   China Hengtian Group Co., Ltd.;

lxxiv.   China National Materials Group Corporation Ltd.;

lxxv.   China Nonferrous Metal Mining (Group) Co., Ltd.;

lxxvi.   General Research Institute for Nonferrous Metals;

lxxvii.   Beijing General Research Institute of Mining & Metallurgy;

lxxviii.  China International Intellectech Corporation;

lxxix.  China Academy of Building Research;

lxxx.  China North Locomotive and Rolling Stock Industry (Group) Corporation;

lxxxi.  China South Locomotive & Rolling Stock Corporation Limited;

lxxxii.  China Railway Signal & Communication Corporation;

lxxxiii.  China Railway Group Limited;

lxxxiv.  China Railway Construction Corporation Limited;

lxxxv.  China Communications Construction Company Limited;

lxxxvi.  Potevio Company Limited;

lxxxvii.  China Academy of Telecommunication and Technology;

lxxxviii.  China National Agricultural Development Group Co., Ltd.;

lxxxix.  Chinatex Corporation;

xc.  Sinotrans & CSC Holdings Co., Ltd.;

xci.  China National Silk Import & Export Corporation;

xcii.  China Forestry Group Corporation;

xciii.  China National Pharmaceutical Group Corporation;

xciv.  CITS Group Corporation;

xcv.  China Poly Group Corporation;

xcvi.  Zhuhai ZhenRong Company;

xcvii.  China Architecture Design & Research Group;

xcviii.  China Metallurgical Geology Bureau;

xcix.  China National Administration of Coal Geology;

c.   Xinxing Cathay International Group Co., Ltd.;

ci.   China Travelsky Holding Company;

cii.   China National Aviation Fuel Group Corporation;

ciii.   China Aviation Supplies Holding Company;

civ.   Power Construction Corporation of China;

cv.   China Energy Engineering Group Co., Ltd;

cvi.   China National Gold Group Corporation;

cvii.   China National Cotton Reserves Corporation;

cviii.   China Printing (Group) Corporation;

cix.   China Guangdong Nuclear Power Holding Corporation Ltd.;

cx.   China Hualu Group Co., Ltd.;

cxi.   Alcatel-Lucent Shanghai Bell Co., Ltd.;

cxii.   IRICO Group Corporation;

cxiii.   Wuhan Research Institute of Post and Telecommunications;

cxiv.   OCT Group;

cxv.   Nam Kwong (Group) Company Limited;

cxvi.   China XD Group;

cxvii.   China Railway Materials Commercial Corp.;

cxviii.   China Reform Holdings Corporation Ltd.;

cxix.   Overseas Oil & Gas Corporation, Ltd.;

cxx.   CNOOC (BVI) Limited;

cxxi.   CNOOC Ltd.;

cxxii.   CNOOC International Limited;

cxxiii.   China Offshore Oil Corporation;

cxxiv.   Overseas International Industrial Co., Ltd.;

cxxv.   China Huaneng Group Corporation;

cxxvi.   Sinopec International Petroleum Exploration and Production Corporation;

cxxvii.   Sinopec Petroleum Exploration & Production Co., Ltd.;

cxxviii.   Sinopec Group Company;

cxxix.   China Petroleum & Chemical Corporation;

cxxx.   Sinopec Corporation;

cxxxi.   Sinopec Petroleum USA LLC;

cxxxii.   Sinopec Petroleum USA LLP;

cxxxiii.   Sinopec USA, Inc.;

cxxxiv.   Pacific Century Motors;

cxxxv.   Beijing E-Town International Investment & Development Co, Ltd.;

cxxxvi.   Tempo International Group;

cxxxvii.   AVIC Electromechanical Co. Ltd.;

cxxxviii.   Aviation Industry Corporation of China;

cxxxix.   Greenland Group Co.;

cxl.   Technify Motor (USA) Inc.;

cxli.   AVIC International Holding Corporation;

cxlii.   Shanghai Greenland Group Co.;

cxliii.   Industrial and Commercial Bank of China;

cxliv.  CITIC Securities Co Ltd.;

cxlv.  OOGC America, Inc.;

cxlvi.  OOGC America LLC;

cxlvii.  GNOC Ltd;

cxlviii.  Beijing West Industries Co., Ltd.;

cxlix.  Hotel Acquisition Company LLC;

cl.  Shanghai Jin Jiang International Hotel (Group) Co., Ltd.;

cli.  Devon Energy Corp.;

clii.  Nexen Petroleum Offshore U.S.A. Inc.;

cliii.  InterGen Energy Inc.;

cliv.  Chesapeake Energy Corporation;

clv.  Chesapeake Exploration LLC;

clvi.  Pioneer Natural Resources Company;

clvii.  Nexteer Automotive;

clviii.  Hilite International;

clix.  Cirrus Industries, Inc.;

clx.  Forest City Ratner Companies LLC;

clxi.  Teledyne Technologies Incorporated;

clxii.  The Bank of East Asia (USA) NA;

clxiii.  BTIG LLC;

clxiv.  StatoiHydro ASA Assets;

clxv.  Delphi Corporation;

clxvi.  Interstate Hotels & Resorts, Inc.;

clxvii. People's Bank of China;

clxviii. China Investment Corporation;

clxix. China Investment Corporation International Co., Ltd.;

clxx. Harvest Investment Corporation;

clxxi. Beijing Wonderful Investment, Ltd.;

clxxii. Chengdong Investment Corporation;

clxxiii. Country Forest Ltd.;

clxxiv. Full Blossom Investment Corporation;

clxxv. Country Hill, Ltd.;

clxxvi. Bridge Hill Investment;

clxxvii. Stable Investment Corporation;

clxxviii. Land Breeze S.A.R. I;

clxxix. Land Breeze II;

clxxx. Fengmao Investment Corporation;

clxxxi. Terrific Investment Corporation;

clxxxii. Flourish Investment Corporation;

clxxxiii. Leader Investment Corporation;

clxxxiv. Guangli Investment Corporation;

clxxxv. National Social Security Fund.

2. The following rules of construction apply to all discovery requests:

(a) The terms "all" and "each" shall be construed as all and each;

(b)     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

(c)     The use of the singular form of any word includes the plural and vice versa; and

(d)     Requests that are stated in the present tense include the past tense and those in the past tense include the present tense.

3.     Unless otherwise specifically stated, this Request encompasses documents, which were created, received, or generated or otherwise entered into your possession, custody, or control between January 1, 2012 and the current date (the "Relevant Time Period").

4.     Any document falling within the scope of this Request that is withheld on the basis of a claim of privilege, work product, or any other ground is to be identified in a privilege log, produced in an electronic format that allows text searching and organization of data.  You shall produce a privilege log within 7 days after the production of documents for which privilege is asserted to apply.  For each document for which You assert a privilege applies, you must provide in the privilege log: (a) a statement of the ground alleged for withholding such document; (b) the date of the document; (c) the location of any attachments associated with the document and whether the asserted privilege also applies to such attachments; (d) the identity of its author and signatories; (e) the type of document (*e.g.*, letter); (f) a summary of its content; (g) its present location and custodian; and (h) a listing of all persons to whom the contents of such documents have been disclosed and all persons who have or have had possession, custody, or control

of the documents (or any portions thereof), pursuant to Federal Rule of Civil Procedure 45(d)(2). Notwithstanding the assertion of an objection, any purportedly privileged document containing non-privileged matter must be disclosed with the purportedly privileged portion redacted, with the redacted portion indicated on the document itself and listed on the privilege log to be provided pursuant to this paragraph.

To assist in the prompt resolution of disputed claims of privilege, You shall submit to the Court under seal, unredacted copies of all documents for which it asserts a privilege.

5. If you are unable to comply fully with any of the specific requests, you shall comply to the extent possible and provide an explanation as to why full compliance is not possible. In the event that any documents called for by this Request were formerly in your possession, custody or control, or have been lost or destroyed, those documents are to be identified in writing as follows: persons who prepared or authorized the documents indicated or blind copies; dates of preparation or transmittal; subject matter; number of pages, attachments or appendices; all persons to whom distributed, shown or explained; date or dates of loss or destruction; and if destroyed, the manner of destruction, reason for destruction, persons authorizing destruction and persons destroying the documents.

6. This Request is directed to all documents within your possession, custody or control, or within the possession of any of your agents, or within the possession of any entity associated with you, or within the possession, custody, or control of such entity's directors, officers, agents, servants, employees, consultants, and professionals.

7.     Documents are to be produced in full and in their unexpurgated form. Redacted documents shall not constitute compliance with this Request, unless such documents are redacted pursuant to any claim of privilege as set forth in paragraph 4 above.

8.     Documents shall be produced in their original language (*e.g.*, Mandarin, German) and shall include any translations of such documents, whether such translations were performed prior to or subsequent to the date of these requests.

9.     This Request is intended to be consistent with the Federal Rules of Civil Procedure 26 and 34.

10.     All hard copy documents and electronically stored information (ESI) produced in response to this Request shall be organized and labeled either to correspond with the number of the specific request to which the documents are responsive or shall be produced in the order, format, and manner in which they are kept in the usual course of business.  With respect to the production of electronically stored information, all ESI that is demanded is to be produced in its native usable format, as maintained on the computer storage systems, regardless of whether such ESI exists (and/or may have been copied and/or otherwise converted) in more than one electronic format. Plaintiffs request that the parties meet and confer to discuss the timing and manner of Your production in response to these requests.

## **DOCUMENTS TO BE PRODUCED**

1.        For the period July 17, 2014 to March 31, 2015, all documents and communications involving your business dealings with Taishan, any Entities Related to Taishan, and/or any SOEs with respect to the conduct of business in the United States, including but not limited to:

(a)        All written documents or instruments pertaining to agreements for the purchase and sale of fiberglass and related fiberglass-containing products as well as all documents evidencing business activities undertaken pursuant to such agreements;

(b)        All documents evidencing the purchase or sale of fiberglass and related fiberglass-containing products;

(c)        Any current dealings and commercial activities involving you, Taishan, any Entities Related to Taishan, and/or any SOEs;

2.        All documents or communications regarding whether Taishan, any Entities Related to Taishan, and/or any SOEs have conducted any commercial business or judicial business (litigation, mediation, arbitration, settlement) in the United States from July 17, 2014 through March 31, 2015.

3.        All documents and communications regarding the profits earned by Taishan, any Entities Related to Taishan, and/or any SOEs (by quarter and calendar year), including those of Jushi USA Fiberglass Co., Ltd., China Jushi Co., Ltd. (f/k/a China Fiberglass Co., Ltd.), and Jushi Group Co., Ltd. with respect to their conduct of any business in the United States for the period July 17, 2014 to March 31, 2015.

4.      All documents and communications regarding the profits earned by Taishan, any Entities Related to Taishan, and/or any SOEs, including Jushi USA Fiberglass Co., Ltd., China Jushi Co., Ltd. (f/k/a China Fiberglass Co., Ltd.), and Jushi Group Co., Ltd. (by quarter and calendar year).

5.      All documents or communications regarding any loans, investments, or equity by You in Taishan, any Entities Related to Taishan, and/or any SOEs from July 17, 2014 through March 31, 2015.

6.      All documents or communications regarding any loans, investments or equity by Taishan, any Entities Related to Taishan, and/or any SOEs in You during the relevant time period.

7.      All documents pertaining to any and all agreements and/or memorandums of understanding between You and/or any of Your subsidiaries and/or affiliates and Taishan, any Entities Related to Taishan, and/or any SOEs, including but not limited to the following:

(a)      All written documents or instruments pertaining to the agreement itself as well as all documents evidencing business activities undertaken pursuant to the agreement;

(b)      All documents evidencing the location of projects undertaken pursuant to the agreement;

(c)      All documents pertaining to the shipment of materials or payment of consideration for such materials under the terms of the parties' agreement;

(d)    All documents sufficient to identify all joint ventures between the parties to the agreement;

(e)    All communications between the parties to the agreement.

8.    All documents sufficient to identify the deposition topics listed below.

9.    All documents and communications between or among you and Taishan, any Entities related to Taishan, and/or SOEs (as set forth above) during the Relevant Time Period.

10.    All documents relating to sales and sales invoices of inventory received at distribution centers and/or shipped to various customers in the United States during the relevant time period.

## DEPOSITION TOPICS

Pursuant to Rule 30(b)(6), you shall designate and produce for deposition one or more of your officers, directors, managing agents, or other persons who consent to testify on your behalf concerning the following subject matters:

1.    For the period July 17, 2014 to March 31, 2015, your knowledge regarding your business dealings with Taishan, any Entities Related to Taishan, and/or any SOEs, including but not limited to:

(a)    Agreements for the purchase and sale of fiberglass and fiberglass related products as well as all business activities undertaken pursuant to such agreements;

(b)    All purchases or sales of fiberglass and fiberglass related products;

(c)     Any current dealings and commercial activities involving you, Taishan, any Entities Related to Taishan, and/or any SOEs;

2.     Your knowledge regarding whether Taishan, any Entities Related to Taishan, and/or any SOEs have conducted any commercial business or judicial business (litigation, mediation, arbitration, settlement) in the United States from July 17, 2014 through March 31, 2015.

3.     Your knowledge regarding the profits earned by Taishan, any Entities Related to Taishan, and/or any SOEs (by quarter and calendar year) with respect to their conduct of any business in the United States between July 17, 2014 and March 31, 2015.

4.     Your knowledge regarding the profits earned by Taishan, any Entities Related to Taishan, and/or any SOEs (by quarter and calendar year).

5.     Your knowledge regarding any loans or investments by You in Taishan, any Entities Related to Taishan, and/or any SOEs from July 17, 2014 through March 31, 2015.

6.     Your knowledge regarding any loans investments or equity by Taishan, any Entities Related to Taishan, and/or any SOEs in You during the relevant time period.

7.     All documents produced in response to the above document requests.

8.     The Order entered by the Court on July 17, 2014 [Rec. Doc. 17869](attached hereto as Exhibit "2"), including your awareness, understanding, and/or

implementation of the provision enjoining Taishan and "any of its affiliates or subsidiaries" from conducting business in the United States.

9.     Your knowledge regarding sales and sales invoices of inventory received at distribution centers and/or shipped to various customers in the United States during the relevant time period.

# EXHIBIT "1"


56940008
Mar 18 2015
03:28PM

**MINUTE ENTRY**
**FALLON, J.**
**MARCH 18, 2015**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE MANUFACTURED DRYWALL
PRODUCTS LIABILITY LITIGATION

MDL NO. 2047

SECTION "L"

**THIS DOCUMENT RELATES TO: ALL CASES**

### MINUTE ENTRY AND ORDERS

On this date, the Court heard oral arguments regarding the Plaintiffs' Steering
Committee's motion to preclude Taishan and its affiliates from participating in class damages
proceedings unless and until Taishan purges itself of contempt. (Rec. Doc. 18367). Russ Herman
and Arnold Levin participated on behalf of the Plaintiffs' Steering Committee. Bernard Taylor,
Alan Weinberger, Michael Kenny, and Christina Eikhoff participated on behalf of Taishan
Gypsum Co., Ltd. ("TG") and Tai-an Taishan Plasterboard Co. Ltd. ("TTP"), (TG and TTP
collectively, "Taishan"). James Stengel participated on behalf of China National Building
Materials Group Corporation and China National Building Materials Company Limited
(collectively, "CNBM"). Michael Barr, Michael Moore, Richard Fenton, and Harry Rosenberg
participated on behalf of Beijing New Building Materials Public Limited Company and Beijing
New Building Material (Group) Company Limited (collectively, "BNBM"). The hearing was
transcribed by Ms. Toni Tusa, Official Court Reporter.  Counsel may contact Ms. Tusa at (504)
589-7778 to request a copy of the transcript.

JS10(00:82)

After reviewing the parties' memoranda, reviewing the applicable law, and hearing oral argument from all parties, the Court took the motion to preclude under advisement, subject to the conditions ordered by the Court:

1) **IT IS ORDERED THAT** Taishan must purge itself of contempt of court within two weeks of today's date, that is **March 31, 2015**, before the Court will determine the nature, and extent, of Taishan's participation in these proceedings. To purge itself of contempt, Taishan must (a) pay the $15,000 in attorneys' fees to the PSC; (b) pay the *Germano* judgment that formed the basis of the judgment debtor proceedings, amounting to $2,609,099.99 plus pre-judgment interest of $149,256.53 plus post-judgment interest at the judicial rate under 28 U.S.C. § 1961, as of the date of payment, (Rec. Doc. 3013); and (c) pay the associated bill of costs, (*see* Rec. Docs. 17825, 18034). The Court notes that Taishan has paid the $40,000 contempt penalty. (*See* Rec. Doc. 18448).

2) As neither Taishan nor BNBM/CNBM have demonstrated compliance with the injunction prong of the contempt order, (Rec. Doc. 17869), and the Court cannot yet assess whether there is need to enforce the associated penalty of 25% of profits, **IT IS FURTHER ORDERED THAT** the parties shall immediately commence discovery related to the relationship between Taishan and BNBM/CNBM, including whether affiliate and/or alter ego status exists. Discovery shall conclude no later than **April 28, 2015**, at 9:00 a.m. at which time the Court will hear oral argument on the motion for class damages. **IT IS FURTHER ORDERED** that the previously set March 18, 2015 deadline for responses for the motion for class damages is **CONTINUED** and any responses to the motion for class damages now shall be due on **April 20, 2015**.

3) **IT IS FURTHER ORDERED THAT** Taishan and BNBM/CNBM **SHALL** participate in alter ego discovery. If Taishan and/or BNBM/CNBM do not participate in discovery, the Court will act accordingly to ensure compliance with this and any Court order. The Court may, for example, strike defenses asserted by Taishan and BNBM/CNBM.

4) **IT IS FURTHER ORDERED THAT** that the Plaintiffs' Steering Committee, Taishan, and BNBM/CNBM **SHALL meet and confer** to discuss a discovery plan. Any deposition shall occur in New Orleans, Louisiana, unless all parties agree – with consent of the Court – that the deposition may occur elsewhere.

The Court retains jurisdiction to take any action necessary to enforce its contempt order, and any other order discussed herein. If any party violates any of the Court's orders, the Court "has broad discretion in assessing sanctions to protect the sanctity of its decrees and the legal process." *Test Masters Educational Servs. v. Singh*, 428 F.3d 559 (5th Cir. 2005). This Court "possess[es] the inherent authority to enforce [its] own injunctive decrees," an authority that "runs nationwide." *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985); *see also United States v. Fisher,* 864 F.2d 434, 436 (7th Cir.1988) ("[W]hen a court issues an injunction, it automatically retains jurisdiction to enforce it."). The Court reserves its right to determine whether Taishan and/or BNBM/CNBM must post a bond under Rule 64. The Court further notes that Taishan and BNBM/CNBM's willingness to participate in discovery process will guide the Court's determination of the circumstances under which Taishan and BNBM/CNBM may participate in these proceedings. To allow a party to continue to participate in a proceeding while the party is in contempt for actions taken in those same proceedings would be, in effect,

rewarding the party for its contemptuous conduct. The Court will take any necessary action to

ensure the sanctity of its decrees and the legal process.

UNITED STATES DISTRICT JUDGE

# EXHIBIT "2"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | : : : : : : | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. :

**THIS DOCUMENT RELATES TO:** *Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* **Case No. 2:09-cv-6687 (E.D. La.)**

<u>ORDER</u>

From 2005 to 2008, a housing boom coincided with the destruction caused by Hurricanes Katrina and Rita to sharply increase the demand for construction materials in the Gulf South and East Coast. In response, Chinese companies manufactured, and sold to homeowners throughout the United States, considerable quantities of gypsum wallboard which came to be known as "Chinese drywall." Homeowners experienced problems with the drywall. Specifically, the drywall emits various sulfide gases, damages structural mechanical and plumbing systems of the home, and damages other appliances in the home. The affected parties sued the entities involved in the manufacturing, importing, and installing the Chinese drywall. The cases multiplied and the Judicial Panel on Multidistrict Litigation ("MDL"), declared the matter an MDL and transferred the cases to this Court. After a period of discovery, it became clear that there were two principal manufacturers, (1) the Knauf Entities, and (2) the Taishan Entities. There are four cases in particular in which Taishan Entities have been served (via international means at the Hague, costing at least $100,000 per service of process). These four cases are *Germano*, *Mitchel*, *Gross*, and *Wiltz*. The matters were set to trial and default judgments were entered. In the instant case, *Germano*, Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd ("Taishan") is the

Taishan's contempt. *Pounders v. Watson*, 521 (U.S. 982, 988-89) (1997); Fed. Rule Crim. Pro. 42(b).

In punishing Taishan's contempt, the Court "has broad discretion in assessing sanctions to protect the sanctity of its decrees and the legal process." *Test Masters Educational Servs. v. Singh*, 428 F.3d 559 (5th Cir. 2005). In this massive suit, the harm from Taishan's noncompliance is high and requires strong sanctions to coerce compliance and restore integrity to these proceedings. *Lamar Financial Corp. v. Adams*, 918 F.2d 564, 567 (5th Cir. 1990) (setting forth four factors by which the Court assesses an appropriate contempt sanction); *see Manhattan Industries v. Sweater Bee, Ltd.*, 885 F.2d 1, 6 (2d Cir. 1989) (affirming the propriety of an award of unjust enrichment contempt sanctions aligned with the contemptor's profits to punish the wrongdoing). Accordingly,

**IT IS ORDERED** that Taishan pay **$15,000** in attorneys' fees to Plaintiffs' counsel.

**IT IS FURTHER ORDERED** that Taishan pay **$40,000** as a penalty for contempt.

**IT IS FURTHER ORDERED** that Taishan, and any of its affiliates or subsidiaries, is hereby **ENJOINED** from conducting any business in the United States until or unless it participates in this judicial process. If Taishan violates this injunction, it must pay a further penalty of **25%** of the profits earned by the company or its affiliates who violate the order, for the year of the violation.

**IT IS FURTHER ORDERED** that the clerk of court forward this contempt order to the U.S. Secretary of Commerce, the Chair of the U.S. Senate Committee on Commerce, Science, and Transportation, and the U.S. Attorney General, so that these officials are aware of the seriousness of the situation, and for any appropriate action they may see fit.

New Orleans, Louisiana this 17th day of July, 2014.

UNITED STATES DISTRICT JUDGE

CC:    Secretary Penny Pritzker
U.S. Department of Commerce
1401 Constitution Ave., NW
Washington, DC 20230

U.S. Senator Jay Rockefeller
Chair of U.S. Senate Committee on Commerce, Science, and Transportation
Russell Senate Building, Room 254
2 Constitution Ave., NE
Washington, DC 20002

U.S. Attorney General Eric Holder
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530-0001