```
                        UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF LOUISIANA


****************************************************************

In re:  CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY          MDL DOCKET NO. 09-MD-2047
LITIGATION                          SECTION L
                                    NEW ORLEANS, LOUISIANA
THIS DOCUMENT RELATES TO:           Tuesday, October 13, 2015
                                    3:30 p.m.
ALL CASES


****************************************************************


         TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE PROCEEDINGS
              HEARD BEFORE THE HONORABLE ELDON E. FALLON
                      UNITED STATES DISTRICT JUDGE








     OFFICIAL
     COURT REPORTER:    TERRI A. HOURIGAN, CRR, RPR
                        CERTIFIED REALTIME REPORTER
                        REGISTERED PROFESSIONAL REPORTER
                        500 POYDRAS STREET, ROOM B-275
                        NEW ORLEANS, LOUISIANA  70130
                        (504) 589-7775
                        Terri_Hourigan@laed.uscourts.gov

     PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
     PRODUCED BY COMPUTER.
```

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFFS:        LEVIN, FISHBEIN, SEDRAN & BERMAN
                                BY:  ARNOLD LEVIN, ESQ.
 3                                   FRED S. LONGER, ESQ.
                                     SANDY DUGGAN, ESQ.
 4                              510 Walnut Street, Suite 500
                                Philadelphia, Pennsylvania 19106
 5

 6   THE PLAINTIFF'S LIAISON
     COUNSEL:                   HERMAN, HERMAN & KATZ, LLC
 7                              BY:  LEONARD A. DAVIS, ESQ.
                                820 O'Keefe Avenue
 8                              New Orleans, Louisiana 70113

 9
     DEFENDANT:                 ALSTON & BIRD, LLP
10   TAISHAN AND TTP            BY:  BERNARD TAYLOR, ESQ.
                                     MICHAEL P. KENNY, ESQ.
11                                   CHRISTINA EIKHOFF, ESQ.
                                1201 West Peachtree Street NW
12                              Suite 4200
                                Atlanta, Georgia  30309
13

14   DEFENSE LIAISON COUNSEL:   PHELPS DUNBAR, LLP
                                BY:  HARRY ROSENBERG, ESQ.
15                              365 Canal Street, Suite 2000
                                New Orleans, Louisiana  70130
16

17   ATTORNEY FOR DEFENDANT     GORDON ARATA MCCOLLAM DUPLANTIS &
     CNBM:                      EAGAN, LLC
18                              BY:  DONNA P. CURRAULT, ESQ.
                                     EWELL E. EAGAN, JR., ESQ.
19                              201 St. Charles Avenue, 40th Floor
                                New Orleans, Louisiana  70170
20

21   ATTORNEY FOR DEFENDANT     DENTONS LAW
     BNBM:                      BY:  C. MICHAEL MOORE, ESQ.
22                              1858, 2000 McKinney Avenue, #1900
                                Dallas, Texas 75201
23

24

25
```

```
 1                    P R O C E E D I N G S
 2
 3          THE COURT:  Hello.  Good afternoon, everyone.  This is
 4   Judge Fallon.  Who is on the line for the plaintiffs?
 5          MR. LEVIN:  Arnold Levin, Sandy Duggan, and Fred Longer
 6   and Pearl Robertson and Len Davis for the plaintiff.
 7          MR. TAYLOR:  Your Honor.  Good afternoon, Your Honor.
 8   For Taishan, Bernard Taylor, Mike Kenny, and Kristy Eikhoff.
 9          THE COURT:  Anyone else?
10          MR. ROSENBERG:  Your Honor, Harry Rosenberg as liaison
11   counsel.
12          THE COURT:  Okay.  Anyone else?  I'm sorry that didn't
13   come through.  Who is that?
14          MS. CURRAULT:  Sorry, Your Honor.  Donna Currault and
15   Tim Eagan for CNBM.
16          MR. LEVIN:  Your Honor, Michael Moore is also on the
17   line for BNBM, but he has laryngitis so I will speak for him,
18   at least, as to his name.
19          THE COURT:  Okay.  We're here today to talk with
20   counsel.
21          At our last status conference, issues came up about the
22   November meeting, and I suggested to counsel they meet and
23   confer first and decide -- see if they could come up with some
24   schedule that was reasonable and satisfactory to both sides.
25          Apparently, I have been advised that, at least at this
```

1  stage, they are unable to do so.  So I thought a conference
2  would be in order to get their responses.
3          The purpose of the conference in November is to deal
4  with issues that had come up more recently as a result of
5  depositions in Hong Kong.  Issues of spoliation, contempt,
6  adverse inference, and possible penalties arising from
7  discovery matters related to Wenlong Peng, a former Taishan
8  employee and consultant.
9          As I understood from talking to counsel, that at first
10 Mr. Peng had been an employee, but was no longer an employee
11 and nobody knew of his whereabouts.
12         It later appeared that Taishan's attorney found out
13 more recently that there was a consultant agreement by and
14 between Mr. Peng and Taishan, and he made that disclosure as
15 soon as he found that there was some relationship with Mr. Peng
16 and Taishan.
17         At the depositions, it also appeared that Mr. Peng's
18 whereabouts were known by Taishan, and had been known by
19 Taishan.  What's more, his computer or computers, which
20 heretofore were thought to either have been repurposed or
21 missing or not available because they had been destroyed or
22 weren't able to be retrieved, were indeed found, and that there
23 was some information on it.
24         Because of these matters, I felt that it was important
25 to have some hearing on the facts surrounding that whole

1  situation, so we set a November hearing.
2          In preparation for that November hearing it seemed to
3  be appropriate for the lawyers to get together and see whether
4  or not they could agree upon dates for making certain
5  disclosures of documents and witnesses that they each intended
6  to produce at the hearing.
7          I was looking for them for some guidance on it, but if
8  they can't come up with something, then I will schedule it
9  myself.
10         But let me hear from plaintiffs first.
11         MR. LEVIN:  Your Honor, what we're attempting to do is
12 to lay the facts out in the record for the November hearing,
13 and representations were made both on the record and off the
14 record, initially off the record, in conversations between
15 counsel.  The conversations between counsel are facts as far as
16 we're concerned.
17         Your Honor didn't want us to take depositions of
18 counsel, and I understand that that might get out of hand, and
19 I can appreciate Your Honor's cautionary ruling -- it was more
20 than a cautionary ruling, it was a ruling that we not do that.
21         So in order to establish the facts because the delay is
22 very important for the penalties and for the relief that we
23 propose on the November 10th hearing, we prepared what we
24 thought would be a joint stipulation.
25         Have I gotten all the facts right?  I think we have.

1  But Mr. Taylor thinks that we haven't. And I suggested that he
2  tell us where we're wrong and that I would request that the
3  Court, although, you called it a evidentiary hearing, allow
4  declarations of counsel to avoid cross-examination or allow
5  Russ or myself to take the stand as to these particular
6  conversations at the hearing, and for us to be cross-examined,
7  but we want to get those facts in the record.
8          Along with that, is everything that Your Honor
9  mentioned. We have been hamstrung with everything -- I want to
10 say right up front, we have absolutely no question as to the
11 *bona fides* of Bernard and his colleagues.
12         We think they probably have been abused as much as we
13 have been abused and as much as perhaps the Court has been
14 abused, because it came as a big surprise to us when we got to
15 Hong Kong that everything that we didn't know before Hong Kong
16 suddenly came out during the proceedings in Hong Kong or
17 shortly before the proceedings while we were in Hong Kong.
18         On the last day of the deposition, Mr. Peng faced up
19 that he always knew -- Chairman Gia faced up that he knew where
20 Peng was, and that we even found out that his employer was
21 Chairman Gia's wife. And he basically admitted that he didn't
22 tell the truth because he respected Mr. Peng's wish that his
23 address not be given.
24         Well, I am sure -- I swear on a stack of bibles, that
25 Bernard Taylor did not know that, and he was surprised as we

1    were when it came out.
2         But we do need this particular information, and we need
3    the computers.
4         Now we're told that Grant Thornton is looking at the
5    computers.  Well, that is not our expert.  That is being paid
6    for by the defendants.  So far, we have seen nothing.
7         There is 7,000 e-mails.  We don't want protracted
8    search terms to find them.  We can look through 7,000 e-mails
9    in three or four days.  With our staff collectively of the PSC,
10   we have been able to do that in this litigation.  I mean, it's
11   difficult, but we have got a system and we could do it.
12        If there are privileged documents there, give us a
13   privilege log.  But we are told that the Chinese secrecy law,
14   it has to be given to another attorney to look at it under the
15   Chinese secrecy law.
16        Well, I'm not in China, and I need a log as to the
17   Chinese secrecy law, what documents are being withheld, if in
18   fact, they should be withheld.  But so far we have nothing.
19        We have a motion pending with regard to the computers
20   and our analysis of what we need with the computers, and we
21   filed that two Fridays ago.
22        The due date -- we should have filed an expedited
23   motion.  We didn't.  So there has been a lot of time for
24   Taishan to respond to that motion on the computers.
25        Today we found out that Taishan believes that they

1  don't have to respond, that they could just tell us the things.
2          Well, we need things as a matter of record, because
3  what we learned from counsel for Taishan is what their clients
4  tell them.  And quite frankly, we don't trust their clients.
5          That is basically where we are.  We are -- we have
6  absolutely nothing since we came back from Hong Kong.  We have
7  gotten nothing with regard to this.
8          We have got a hearing set for November 10th.  The date
9  is certain.  We want to proceed.
10         CNBM has said December 8th, they must have a hearing on
11 December 8th.  We have to have this hearing on November 10th
12 concluded, so that we can present evidence on the December 8th
13 hearing, and so far we have got nothing.
14         Now it could be they have real problems but their
15 problems are their problems.  They can't be our problems.
16         Have I missed anything?
17         THE COURT:  Okay.
18         MR. LEVIN:  Mike says I haven't missed anything.
19         THE COURT:  Let me hear -- Bernard, do you want to
20 respond to that?
21         MR. TAYLOR:  Yes, sir, I do.  Thank you for this
22 opportunity to respond.  It looks like we have got a couple of
23 different things going on here.
24         THE COURT:  Yes.
25         MR. TAYLOR:  In regards to the stipulation, Your Honor,

1  I'm certain the other side has sent you the letter we sent to
2  them.
3          THE COURT:  Yes.
4          MR. TAYLOR:  We tried to make it clear that our ethical
5  obligations and the well-established witness advocacy rule
6  makes it difficult for us, actually impossible for us, to be
7  able to respond, especially under the circumstances where they
8  have made it clear that the stipulations should be viewed
9  within the context of they would be the same as if we had been
10 called to testify, that it would be what we would have
11 testified would be what is reflected in the stipulations, which
12 is, in our opinion -- and not casting any aspersions at the
13 other side -- and I understand their problems, but it's trying
14 to get around the rule that the Court articulated in trying to
15 get around the witness advocacy rule that we are restrained by.
16         So that's why we haven't be able to respond, and that's
17 what we have explained to them regarding the stipulations.
18         Now, we have also explained that the stipulations
19 themselves aren't accurate in regards to what we actually said
20 to them, and there are a lot of reasons for that, but not
21 wanting to get into that because there is no need for that
22 fussing and fighting in front of the Court.  So that's one
23 issue.
24         Then we get to the issue of the concerns that they have
25 raised regarding the e-mails, the computers, and the testimony

1      of Mr. Peng.
2              We have worked very diligently and very hard to make
3      sure that we have accomplished getting them information as
4      quickly as possible.
5              Last week we had a discussion with the PSC, and during
6      that discussion, I thought that we agreed -- I don't think
7      anybody is going to dispute this -- that we would make Mr. Peng
8      available for deposition in New York on the 27th and 28th of
9      October.
10             And then the PSC asked if we would get them any
11     documents, the e-mails and all of those documents, that we were
12     going to produce before that date.  We are working hard to make
13     that happen.
14             We're told now that the e-mails are in the U.S., that
15     the state secret review has been conducted at least on the
16     e-mails, we don't know about the other documents yet, but
17     definitely on the e-mails.  Although, we have asked for search
18     terms for the PSC, they may want us to use in searching from
19     the e-mails, we have explained to them we cannot give them all
20     of the 7,000 e-mails until at least we have conducted our
21     search for privilege reasons and created a privilege log, but
22     that we would work hard to make sure we accomplished that by
23     the dates that they said.
24             I think that date was going to be -- I think it's the
25     20th or the 21st of October.  And we are working hard, and we

Case 2:09-md-02047-EEF-MBN   Document 19611   Filed 10/16/15   Page 11 of 18
11

1    think we can make that date occur.
2            Then in regards to Mr. Peng, and in regards to his
3    whereabouts, I understand what the Court said earlier, but we
4    have consistently explained to the Court that we didn't know
5    Mr. Peng's address nor did we know where he worked.
6            The issue of Taishan's knowledge about that has been
7    clearly testified to by Mr. Gia -- Chairman Gia, I'm sorry, and
8    Chairman Gia has made it clear in his testimony what he told us
9    about that.
10           So they're able to get the information on many of the
11   issues that they want us to stipulate to from other sources, or
12   it's already been memorialized in the Court record by comments
13   that I or a member of our firm has made.
14           In regards to -- let me see if there is anything else
15   here -- let's see, the state secrets.
16           We are -- we understood the Court wanted us to agree
17   upon an order regarding the scope and the witnesses and the
18   exhibits.  We are working on that, and we have told the PSC
19   that we will provide them with that, and we -- I suspect we're
20   going to be able to provide that draft proposed order to them
21   this week.
22           THE COURT:  Okay.
23           MR. TAYLOR:  So I think we have done everything that we
24   said we were trying to accomplish.
25           THE COURT:  Okay.  Well, it seems that some progress

1    has been made.  First, the scheduled hearing.  I would like you
2    to follow through with that and give the PSC names of witnesses
3    that you intend to produce and documents that you intend to
4    introduce.
5         From the PSC's standpoint, the way of producing, of
6    making the point regarding what was told, I think that can be
7    done, and with certain comments that were memorialized that
8    Bernard made beforehand.
9         But aside from that, I think that that is an 801(d)(2)
10   thing, and I think it is not hearsay, or if it is hearsay, it's
11   an exception to the hearsay rule.  So that one attorney -- one
12   or more attorneys from the plaintiffs can testify as to what
13   Taishan told them.
14        Taishan -- when Bernard speaks, he really speaks for
15   Taishan.  Taishan has to understand that.  Bernard understands
16   that, but they may not understand that for cultural reasons or
17   whatever it is.  So when he speaks, I assume that Taishan is
18   speaking.
19        Now if Taishan doesn't advise their own counsel of
20   something, then that is their problem, not the counsel's
21   problem.  But whenever Bernard has spoken as counsel for
22   Taishan, he speaks for Taishan.
23        So anything that is in the record as to what he knew, I
24   assume, when he says he knew, Taishan knew.
25        Now if it's adverse to that, then it's adverse to that.

1          I think that counsel for plaintiffs can take the stand
2   and say what was said and prove it up in some fashion.
3          With regard to the e-mails, it's appropriate, Bernard,
4   to give the plaintiffs the material that you can give them.
5   Let's do that within three days, the material you can, and give
6   them additional material on a rotating basis.
7          The material you can't give to them because of
8   privilege, make a privilege log and present the Court with the
9   privilege log as well as an *in camera* presentation of the
10  documents themselves.  I will look at them.  And those
11  documents that are privileged, I won't disclose them.
12         Those documents that are not privileged, I will
13  indicate that they are not privileged and they are to be
14  disclosed.  That's the way of doing it.
15         MR. TAYLOR:  Great.
16         THE COURT:  Now, we're coming close, folks, and I look
17  to you all to recognize that time is moving on this, and I
18  don't -- I would not want to continue one or both of those
19  meetings.  But if something happens that makes it impossible
20  for either one of you all to really be ready for something of
21  this sort, either the plaintiffs or the defendants, then we're
22  going to have to take a look at the dates.
23         Bernard, this is serious situation.  Taishan really
24  ought to be prepared for this.  And from the plaintiffs'
25  standpoint, you ought to be prepared also.

1        So, let's get up to speed on this matter, so by October
2   the 21st, for sure.  When is the deposition of Mr. Peng?
3        MR. TAYLOR:  It's currently scheduled, Your Honor, for
4   the 27th or 28th.  But we have made it clear to the PSC if
5   indeed there is any delay in getting documents for any reason,
6   that we would be willing to move the deposition -- we offered
7   to have the deposition to the first week in November.  It's my
8   understanding that they have agreed to that.
9        MR. LEVIN:  Yes, sir.
10       THE COURT:  Well, start giving them the e-mails,
11  Bernard, on a rotating basis, rather than wait for the 21st.
12       It's not fair to them to dump them 6,000 or 5,000
13  e-mails on the 21st.  You wouldn't like them to do that to you,
14  so you should give it to them on a rotating basis.
15       I better keep in touch with you all.  We had better set
16  some kind of conference.
17       MR. LEVIN:  Your Honor, there is one other issue.  It's
18  a subject of a motion pending with regard to the computers and
19  what have you.  And Mr. Taylor hasn't responded to that motion
20  yet.  His response is not due yet, and I guess we should just
21  hold discussion on that in abeyance and wait for it to become
22  ripe.
23       THE COURT:  All right.  What is the problem, Arnie?
24       MR. LEVIN:  Well, we would like to see the computers.
25  We would like to see -- I'm not computer literate.  We would

1  like to see certain of the data that is in the computers.
2         We understand that they are being looked at by Grant
3  Thornton.  It's not our expert, it's their expert.
4         We don't have -- we can't trace the custody of the
5  computers.  We don't know where they have been.  We don't know
6  if they have been tampered with.  There is so much dealing with
7  those computers.
8         Although, we just found out after our last discussion,
9  there is now a second computer, a laptop.
10        And it's just -- it's mind boggling, and I would like
11 to continue rather than to impose upon the Court with
12 Mr. Taylor to see if we can work this out.
13        This becomes part of the spoliation.  I don't want to
14 jump the gun on it, because he has not responded to our motion
15 nor is it ripe for response.
16        THE COURT:  Okay.  Take a look at that, Bernard.  And
17 there are a couple of ways of dealing with it.
18        MR. TAYLOR:  Okay, Your Honor.
19        THE COURT:  One, is to have the plaintiffs' expert look
20 at the computers.
21        Two, is to have a Court-appointed expert look at the
22 computers to be able to say whatever, you know, that they
23 haven't been tampered with, and whatever the material is.
24        But why don't you all take a look at it and see whether
25 or not you can come up with a creative solution to that.

1       MR. TAYLOR:  Agreed, Your Honor.  Thank you.  The issue
2  there, and that we're sorting through, is the whole issue of
3  state secret issues.  So we will work through that.
4       THE COURT:  Okay.  I understand.
5       MR. LEVIN:  I wouldn't argue state secrets, but if
6  somebody chooses to do business in the United States, I don't
7  know how we can be precluded from our proofs because there is
8  state secrets in China, but it's something we have to discuss,
9  Your Honor.
10      THE COURT:  All right.  Does somebody else have
11 something?  Go ahead.
12      MR. TAYLOR:  Yes, sir.  One other issue.
13      THE COURT:  Yes.
14      MR. TAYLOR:  During our discussions last week, the PSC
15 -- you know that Mr. Peng has agreed to come and give his
16 deposition.
17      THE COURT:  Right.
18      MR. TAYLOR:  We don't control Mr. Peng.
19      THE COURT:  Right.
20      MR. TAYLOR:  He's coming voluntarily.  And the PSC
21 indicated, if I understood them correctly, that after his
22 deposition, they may want him to stay around for a while.  And
23 we're not certain what that is all about, and if there is a
24 risk of that, then we have got to advise Mr. Peng that he will
25 need to seek legal advice on that, because we can't do that.

```
 1              THE COURT:  Let's not go there at this point.
 2              MR. LEVIN:  I can address that, Your Honor.  We thought
 3    there may be problems with the deposition that we might need
 4    your help with that.
 5              THE COURT:  Yes.
 6              MR. LEVIN:  If that had to be the day after the
 7    deposition or two days after the deposition, that is what we
 8    were talking about.
 9              We're not talking about putting Mr. Peng on ice for six
10    months.  That would be wrong.
11              THE COURT:  All right.  Just get to me immediately and
12    I will handle it immediately.  I won't -- we won't delay him.
13    I will handle it immediately.
14              Give me some input.  Should I meet with you all again
15    in a week, or is that too soon?
16              MR. TAYLOR:  That would be great.
17              MR. LEVIN:  I think we need your help.
18              MR. TAYLOR:  I think that is advisable.  I think after
19    the 21st, maybe, or on the 21st, we could meet.  I think that
20    is Wednesday.  That would be probably a good time to meet.
21              THE COURT:  Let me see where I am.
22              LAW CLERK:  3:30 on the 21st, I have something
23    tentatively scheduled, but I could move it to 3:30 on the 22nd.
24    Either of those dates would work, essentially.
25              THE COURT:  The 21st is fine.
```

1      MR. LEVIN: 21st is okay. The 22nd, I'm traveling to
2 New Orleans.
3      THE COURT: Let's do it on the 21st at 3:30, at this
4 time then.
5      If something comes up, you all get to me. Harry, get
6 to me if something comes up immediately.
7      MR. ROSENBERG: I will Judge. Thank you.
8      MR. TAYLOR: Thank you, Your Honor.
9      MR. LEVIN: Thank you very much, Your Honor.

                          *   *   *

REPORTER'S CERTIFICATE

   I, Terri A. Hourigan, Certified Realtime Reporter, Official Court Reporter for the United States District Court, Eastern District of Louisiana, do hereby certify that the foregoing is a true and correct transcript to the best of my ability and understanding from the record of the proceedings in the above-entitled and numbered matter.

                          *s/Terri A. Hourigan*
                          Terri A. Hourigan, CRR, RPR
                          Certified Realtime Reporter
                          Registered Professional Reporter
                          Official Court Reporter
                          United States District Court
                          Terri_Hourigan@laed.uscourts.gov