UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | CIVIL ACTION<br><br>NO. 09-02047<br><br>SECTION "L" (5) |
| THIS DOCUMENT RELATES TO: ALL CASES | |

**ORDER & REASONS**

Before this Court is Plaintiff Victor Zheltkov's Motion for Reconsideration of the Special Master's Decree (R. Doc. 19295). Having read the briefs and heard the parties on oral argument, the Court now issues this Order and Reasons.

### I. Background

Victor Zheltkov ("Plaintiff") was the owner of a dwelling located at 25 Essington Lane, Palm Coast, Florida. Plaintiff participated as a claimant in the Knauf Settlement Agreement, pursuant to which his home was remediated by the Contractor, Moss Construction. After the remediation was complete, Plaintiff asserted that the newly installed laminated flooring was buckling. In support of this assertion, Plaintiff submitted video evidence showing that the current flooring was buckling.

Plaintiff sought a cash payment for the buckling of the laminate floors installed by Moss during the remediation of the property. The parties submitted position papers and, on June 29, 2015, Special Master, Daniel Balhoff, entered his mediation opinion and decree in favor of Knauf. The opinion states as follows:

> While the Special Master cannot conclude that the pre-remediation floor was *not* buckling…, neither can the Special Master conclude that it *was*. But that is not the end of

> the inquiry. While Moss is obligated to replace items with the same quality and finishes as existed prior to the start of the remediation work, Moss is not responsible for defects inherent in the quality of materials (i.e., manufacturing defects) or damage caused by the Property Owner… Furthermore, Moss sent an inspector to the property on July 16, 2014. The inspector found that the indoor temperature of the house was over 80 degrees and the relative humidity was 68%. Knauf submitted manufacturers' specifications, stating: A healthy room climate with room temperature of 64º - 71º and relative humidity of 55%-65% is as important for your laminate floor as it is for your family.

(R. Doc. 19295, Exhibit A) (internal quotations omitted). Given that the Plaintiff did not adhere to the temperature and humidity warning stated by the manufacturer, the Special Master ruled in favor of Knauf on the grounds that any buckling is on behalf of the manufacturer or the Plaintiff, not on behalf of Knauf or Moss. The Plaintiff believes this ruling was in error.

## II.     Parties' Arguments

Plaintiff contends that the laminate flooring that was installed during the original construction of the home by the builder had survived in the home for six years and had not failed despite the fact that the home did not have air conditioning for long stretches of time. Plaintiff compares this to the laminate flooring that was installed by Moss that had only been in the home for two years, during which time the home was without air conditioning for a relatively short period of time. Plaintiff argues that the fact that the original product had not failed during the previous six years while the product installed by Moss failed after only nine months is evidence that Moss did not use laminate flooring that was "of like kind and quality" during the remediation. Knauf opposes this argument on the grounds that, other than Plaintiff's assertion that the pre-existing floors did not fail, Plaintiff has not submitted any evidence in support of his claim that the replacement floors were of a lesser quality than the pre-existing floors. On the contrary, Knauf avers that the same buckling was also apparent in photographs of the pre-mediation flooring, suggesting that the original laminate flooring was also buckling prior to the

Moss remediation. Accordingly, Knauf argues that the Special Master correctly ruled that the damage to the floors was caused by the Plaintiff's failure to air condition the property.

### III.  ANALYSIS

The Sample Agreement between contractor and KPT Property Owner, made part of the Knauf Class Settlement Agreement, does provide that a claimant may request that Knauf correct nonconforming repair work should the contractor fail to correct the work. However, the Agreement does not extend warranties to any inherent defects in the quality of the materials *or to damage caused by a claimant*. In addressing the Plaintiff's concern regarding their failing floors, the Program Contractor hired an independent inspection company to ascertain the reason for the floor's failure. The third-party inspection report found that the Plaintiff's failure to use air conditioning, causing high temperatures and humidity within the house, caused the floors to fail. Plaintiff admits that he turned off the air conditioning and kept the windows closed but he claims that the replacement floors are of a lesser quality than the pre-existing floors. However, he provides no evidence, other than his assertion that the pre-existing floors did not fail, to support this theory. Moreover, the only independent evidence is that of the third-party inspection report, stating that the buckling was due to the Plaintiff's failure to properly control the climate in his home. Given that the only independent evidence provided demonstrates that the damage was caused by the Plaintiff, Knauf is not required to replace the laminate flooring.

### IV.  CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Reconsideration of the Special Master Opinion is **DENIED.**

3