# Shandong Taihe Dongxin Co., Ltd.

# Share Subscription Agreement

_____, 2005

EXHIBIT 9

BNBMPLC0006153

This Agreement is entered into by and among the following parties at _____ on _____, 2005:

Beijing New Building Materials Public Limited Company

Registered address: No.11A, Sanlihe Road, Haidian District, Beijing (hereinafter referred to as "**BNBMPLC**")

Tai'an State-owned Asset Management Company Limited

Registered address: 158 Hushan Road, Tai'an City, Shandong Province (hereinafter referred to as "**SAMC**")

Shandong TaiheDongxin Co., Ltd.

Registered address: Dawenkou, Daiyue District, Tai'an City, Shandong Province (hereinafter referred to as "**Company**")

Shandong Taihe Group ESOP Association

Registered address: Dawenkou, Daiyue District, Tai'an City, Shandong Province (hereinafter referred to as "**ESOP Association**")

JiaTongchun(hereinafter referred to as "**Management I**")

ID Card No.: 370902196002081514

JiaTongchun (authorized to represent other 15 natural person shareholders of the Company, hereinafter referred to as "**Management II**")

ID Card No.: 370902196002081514

Tai'anAnxin Investment & Trade Co., Ltd.

Registered address: No.7 Road, Tai'an Hi-Tech Industrial Development Zone, Tai'an City (within the headquarters of Tongyuan Machinery) (hereinafter referred to as "**Anxin Investment**")

WHEREAS:

(1) The Company is a limited liability company incorporated and validly existing under the laws of China, and its current total share capital is 83,000,000 shares. Its equity structure is as follows: SAMC holds 24,900,000 shares, which accounts for 30% of the Company's total share capital; ESOP Association holds 28,000,000 shares, which accounts for 33.735% of the Company's total share capital; Management I holds 4,150,000 shares, which accounts for 5% of the Company's total share capital; Management II holds 25,950,000 shares, which accounts for 31.265% of the Company's total share capital.

(2) The Company plans to issue 72,625,000 new shares. To be specific, it plans to issue 65,362,500 shares to BNBMPLC, issue 3,631,250 shares to Management I and issue 3,631,250 shares to Anxin Investment. BNBMPLC, Management I and Anxin Investment plan to subscribe to the foregoing new shares proposed by the Company in accordance with the terms and conditions specified in this Agreement.

(3) While the Company is planning to issue new shares, it is also planned that a total of 53,950,000 shares including 28,000,000 shares held by ESOP Association and 25,950,000 shares held by Management II will be transferred to Anxin Investment and another company designated by Management II and ESOP Association (hereinafter referred to as "**Designated Company**").

Through friendly negotiation, all the parties enter into this Agreement on and subject to the terms and conditions set forth below:

## Chapter 1 Definitions

Unless otherwise agreed, the following terms in this Agreement shall have the meanings assigned to them below:

1.1 "Capital Increase" or "Contemplated Capital Increase" means the act of the Company adding its registered capital and all Subscribers (as defined below) subscribing to registered capital added this time.

1.2 "Subscribers" mean BNBMPLC, Management I and Anxin Investment.

1.3 "Existing Shareholders" mean the shareholders of the Company before Contemplated Capital Increase, including SAMC, Management I, Management II and ESOP Association.

1.4 "Parties" mean all parties to this Agreement.

1.5 "Workday" means any day except China's public holidays and legal holidays.

1.6 "Reference Date" means March 31, 2005, in accordance with consensus of the Parties.

1.7 "Completion Date" means the date when the Company receives all funds paid by the Subscribers to the Company for purchase of new shares issued this time.

## Chapter 2 Capital Increase and Share Subscription

2.1 The Company decides to increase its capital by issuing 72,625,000 new shares each with face value of RMB1, among which BNBMPLC will subscribe to 65,362,500 shares, Management I will subscribe to 3,631,250 shares, and Anxin Investment will subscribe to 3,631,250 shares. After completion of Contemplated Capital Increase, the Company's total share capital will be 155,625,000 shares and change to the Company's equity structure will be as follows:

> BNBMPLC will hold 65,362,500 shares, which will account for 42% of the Company's total share capital;

> ESOP Association will hold 28,000,000 shares, which will account for 17.99% of the Company's total share capital;

> Management II will hold 25,950,000 shares, which will account for 16.68% of the Company's total share capital;

> SAMC will hold 24,900,000 shares, which will account for 16% of the Company's total share capital;

> Management I will hold 7,781,250 shares, which will account for 5% of the Company's total share capital;

> Anxin Investment will hold 3,631,250 shares, which will account for 2.33% of the Company's total share capital.

2.2 While the Company is issuing new shares, a total of 53,950,000 shares including 28,000,000 shares held by ESOP Association and 25,950,000 shares held by Management II will be transferred to Anxin Investment and Designated Company. To be specific, 21,268,750 shares will be transferred to Anxin Investment and 32,681,250 shares will be transferred to Designated Company. Through the foregoing share transfer plus Anxin Investment's subscription to 3,631,250 new shares, Anxin Investment will on an accumulative basis hold 24,900,000 shares, which will account for 16% of the Company's total share capital; Designated Company hold 32,681,250 shares, which will account for 21% of the Company's total share capital.

2.3 The agreement of the contemplated share transfer will be separately signed by and among ESOP Association, Management II, Anxin Investment and Designated Company. After completion of the share transfer, change to the Company's equity structure will be as follows:

> BNBMPLC will hold 65,362,500 shares, which will account for 42% of the Company's total share capital;

> Designated Company will hold 32,681,250 shares, which will account for 21% of the Company's total share capital;
>
> SAMCwill hold 24,900,000 shares, which will account for 16% of the Company's total share capital;
>
> Anxin Investment will hold 24,900,000 shares, which will accountfor 16% of the Company's total share capital;
>
> Management I will hold a total of 7,781,250 shares, which will account for 5% of the Company's total share capital.

2.4 Through friendly consultation, the Parties agree that: Subscribers shall subscribe to the foregoing shares at a price of RMB1.80 per share. For the purpose of their respective share subscription, BNBMPLC shall pay RMB117,652,500, Management I shall pay RMB6,536,250, and Anxin Investment shall pay RMB6,536,250. After execution of this Agreement, BNBMPLC shall, in accordance with relevant stipulations of listed companiesregulatory authority, retain an appraisal agency with securities qualifications to appraise the Company with March 31, 2005 as the Reference Date and issue an appraisal report. If the Company's net assets value per share is below RMB1.50 according to the foregoing appraisal report, the price of the new shares issued by the Company shall be adjusted at 1.2 times the appraised net assets value per share.

2.5 The Company shall, within 3 workdays after execution hereof, convene Board meeting andshareholders' meeting to deliberate and adopt a resolution on the Contemplated Capital Increase. ESOP Association, SAMC and Management I, Management II agree to cause the Company'sdirectors to approveand adopt a resolution on the Contemplated Capital Increase, and cast affirmative votes on the Contemplated Capital Increase at the shareholders' meeting. Within 3 workdays after adoption of the foregoing resolution at the shareholders' meeting, the Company shall submit the materials on Contemplated Capital Increase to relevant governmental approval authority (if required) and endeavor to secure the approval as soon as possible, and SAMC shall offer adequate and necessary assistance.

2.6 Anxin Investment shall timely convene Board meeting and shareholders' meeting(if required) to deliberate and adopt a resolution on subscribing to shares involved in the Contemplated Capital Increase.

2.7 Subscribers shall, within 1 month of the effective date of this Agreement, remit into the Company's designated account this Agreement all share subscription funds payable by them as stipulated in Article 2.2 hereof.

2.8 Within 3 workdays after Completion Date, the Companyshall retain a qualified accounting firm to conduct capital verification on share subscription funds and issue a capital verification report.

2.9 On the date of issue of the capital verification report, the Company shall sign and issue shares to Subscribersand enter Subscriber information (including

Subscribername, domicile, number of shares, stock number, date of share acquisition) onto the Company's shareholder register. New shareholders shall begin to exercise shareholders' rights, and the Company shall handle subsequent issues including revision of articles of association and business registration change as soon as practicably possible.

### Chapter 3 Representation, Warranty and Undertaking by the Company and Existing Shareholders

The Company and Existing Shareholdersrepresent, warranty and undertake to BNBMPLC as follows:

3.1 The Company and Existing Shareholders'execution of this Agreement and performance of their respective obligations hereunder does not contravene laws & regulations, articles of association and significant agreements, judgments, orders, rulings or other instruments that are binding upon the Company and Existing Shareholders;

3.2 The Company is acompany limited by shares that is legally established and validly existing under the laws & regulations of China and is entitled to operate all assets and businesses that it is operating as of the date of execution of this Agreement;

3.3 All documents, materials or documentary evidence furnished by the Company and Existing Shareholders to BNBMPLCincluding financial statements are authentic and effective, fairly reflect its financial standing and are free of intentional omission, concealment, alteration, forgery or misleadingstatement; the Company truthfully and completely furnish BNBMPLC with a list of liabilities and external guarantees and relevant documents and materials;

3.4 The Company has not burdened its main assets with any mortgage, pledge, lease, license or other limitations of rights, and will not do so prior to Completion Date;

3.5 All brands (Tai He, Tai Shan, Tai Shan Wang, etc.), patents and intellectual property rights relating to the Company's gypsum board business entirely belong to the Company, and are free from any form of mortgage, pledge, lease, license and other limitations of rights;

3.6 The Company's management team does not invest in, manage or participate in the gypsum board business in any manner outside the Company and the Company's proprietary subsidiaries;

3.7 Before Completion Date, the Company shall not incur any additional debt likely to materially and adversely affect any act hereunder or repay any undue debt;

3.8 The Company and Existing Shareholders have not negotiated with others or signed any document in respect of the Company's capital increase and share transfer,

and will not do so prior to Completion Date;

3.9 Even since its incorporation, the Company has been always abiding by all tax regulations and has paid or made allowance for all taxes and fees payable. The Company has never failed to pay or defaulted in payment of any taxes or government charges, nor received any dunning letters and penalties from taxation or any other competent department;

3.10 The Company is not involved in any legal, arbitral or administrative penalty procedure that deals with any amount or requires the Company toperform certain obligations, and has no potential dispute or risk likely to cause such lawsuit, arbitration or administrative penalty;

3.11 The Company will, prior to Completion Date, operate under the operating model consistent with previous normal practices, and keep an entire operating organization, maintain and conduct normal business operations and maintain the stability of the Company's managerial personnel and employees. Before Completion Date, the Company may not engage in any act that is likely to exert a material and adverse effect on the Company's main assets, business and financial standing;

3.12 The Company and Existing Shareholders warrant that the foregoing representations, warranties and undertakings are authentic, complete and effective, and they are jointly liable therefor.

## Chapter 4 Representation and Warranty by BNBMPLC and Anxin Investment

BNBMPLC and Anxin Investment represent and warrant as follows:

4.1 BNBMPLC is a company limited by shares that is legally established and validly existing under Chinese laws & regulations and is entitled to operate all assets and businesses that it is operating as of the date of execution of this Agreement; Anxin Investment is a limited liability company that is legally established and validly existing under Chinese laws & regulations and is entitled to operate all assets and businesses that it is operating as of the date of execution of this Agreement;

4.2 BNBMPLC and Anxin Investment's execution of this Agreement and performance of their respective obligations hereunder will not contravene any laws & regulations, their articles of association and any significant agreement, judgment, order, ruling or other instrument that is binding upon them.

4.3 BNBMPLC and Anxin Investment warrant that they will perform the obligation of making capital contribution to the Company according to the time and amount stipulated herein.

## Chapter 5 Relevant Covenants

5.1 ESOP Association and Management II warrant that: in accordance with the equity transfer arrangement agreed in Article 2.2 of Chapter 2 of this Agreement, Anxin Investment and Designated Company shall, before being assigned shares previously held by ESOP Association and Management II and becoming the Company's shareholders, issue to all parties to this Agreement a written commitment, which states that they agree to inherit all rights and obligations of ESOP Association and Management II relating to the transferred shares under this Agreement and agree to relevant provisions of this Agreement. Otherwise, ESOP Association and Management II may not transfer the shares held by them, and ESOP Association and Management II shall be held jointly liable therefor.

5.2 All relevant parties that: as from Reference Date, profit and loss shall be shared by new shareholders following Capital Increase according to their shareholding ratios.

5.3 The Partiesagree to take appropriate measures to ensure that BNBMPLC can consolidate the Company's financial statements in accordance with relevant requirements of BNBMPLC as a listed company and relevant stipulations including "Interim Provisions of the Ministry of Finance on Consolidated Financial Statements".

5.4 The Partiesagree that after completion of the Contemplated Capital Increase, the Company'sBoard of Directors will be composed of 7directors including 4 directors appointed by BNBMPLC, 1 director appointed by SAMC and 2 directors jointly appointed by Management I, Anxin Investment and Designated Company.

If SAMC, Management, ESOP Association, Anxin Investmentor Designated Companyplans to transfer the shares held by it to any third party,it shall cause such third party to reach an agreement with BNBMPLC on adoption of the foregoing measures and sign corresponding legal instruments (including but not limited to written consent to the foregoing arrangement on members of the Board of Directors). Otherwise, the shares held by it may not be transferred.

5.5 The Partiesagree that after completion of the Company'scapital increase and shares subscription:

(1) If the Company does further capital increase by issuing more shares, BNBMPLC shall have the pre-emptive right;

(2) If other shareholders of the Company transfer the Company's shares held by them, BNBMPLC shall have the right of first refusal.

## Chapter 6 Liability for Breach of Contract

6.1 If any provision of Chapter 3 of this Agreement is untrue in a material aspect or is violated, the Company and Existing Shareholders shall, within 10 days after receipt of

written notice from BNBMPLC, conduct verification and take measures to indemnify the Company and BNBMPLC from losses. If BNBMPLC suffers losses despite the foregoing measures, the Company and Existing Shareholders shall compensate for direct and indirect economic losses thus incurred to BNBMPLC, provided that the amount of compensation shall in no case exceed the amount of share subscription funds already paid by BNBMPLC to the Company.

6.2 If a Subscriber fails to pay the share subscription funds specified herein within the payment period of share subscription funds as stated in Article 2.3 hereof, it shall pay the Company overdue fine at the daily rate of 0.01% of the delayed payment.

### Chapter 7 Applicable Law and Dispute Resolution

7.1 The formation, validity, interpretation, performance and dispute resolution of this Agreement shall be governed by the laws of China.

7.2 Any dispute arising from performance of this Agreement or in connection herewith shall be first resolved through consultation by parties hereto. If all consultation efforts fail, any party may refer the dispute to China International Economic and Trade Arbitration Commission for arbitration at Beijing in accordance with its arbitration rules then in effect. The arbitration award shall be final and binding upon the Parties hereto.

### Chapter 8 Effectiveness, Modification and Supplementation of Agreement

8.1 This Agreement shall become effective when all of the following conditions are met:

(1) This Agreement is signed by legal representative or authorized agents of the Parties and affixed with the seal of legal entities;

(2) A resolution on approving of the Company's Contemplated Capital Increase is adopted at the shareholders' meeting of the Company, and relevant governmental authority approves the Contemplated Capital Increase. Afterwards, in accordance with relevant stipulations of listed companies, the Board of Directors or the shareholders' meeting (if required) of BNBMPLC approves its subscription to shares issued through the Company's ContemplatedCapital Increase.

8.2 Any modification of this Agreement shall not be effective until executed in writing by the Parties and approved by BNBMPLC's Board of Directors or shareholders' meeting (if required) according to relevant stipulations of listed companies.

8.3 For any matter not covered herein, relevant parties may sign a supplemental

agreement through consultation and agreement. The supplemental agreement shall constitute an integral part of this Agreement and have the same legal effect as this Agreement.

## Chapter 9 Miscellaneous

9.1 The Partiesagree to undertake associated expenses incurred by the Contemplated Capital Increase on their own.

9.2 Annexes to this Agreement shall be an integral part of this Agreement and have the same legal effect as this Agreement.

9.3 This Agreement shall be made in sixteen (16) counterparts, and each party to this Agreement shall have two (2) counterparts and the remaining counterparts shall be kept at the Company for reference. All such counterparts shall be equally authentic.

Annexes: Power of Attorney by Management

(THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK)

(Execution Page)

Beijing New Building Materials Public Limited Company

Legal representative or authorized representative: 

Tai'an State-owned Asset Management Company Limited

Legal representative or authorized representative: 

Shandong TaiheDongxin Co., Ltd.

Legal representative or authorized representative: 

Shandong Taihe Group ESOP Association

Legal representative or authorized representative:

JiaTongchun: 

JiaTongchun: 

(authorized to represent 15 natural person shareholders of the Company)

Tai'anAnxin Investment & Trade Co., Ltd.

Legal representative or authorized representative: 

Annex 1:

## Power of Attorney

I, a shareholder of Shandong TaiheDongxin Co., Ltd., hereby authorizes JiaTongchunto sign "Shandong TaiheDongxin Co., Ltd.'s Share Subscription Agreement" with Tai'an State-owned Asset Management Company Limited, Beijing New Building Materials Public Limited Company, Shandong TaiheDongxin Co., Ltd., Shandong Taihe Group ESOP Association, JiaTongchun and Tai'anAnxin Investment & Trade Co., Ltd. for and on behalf of me. This agreement is legally binding upon me.

Authorizer: [signatures]

\_\_\_\_\_, 2005

BNBMPLC0006164

Annex 1:

**Power of Attorney**

I, a shareholder of Shandong TaiheDongxin Co., Ltd., hereby authorizes JiaTongchun to sign "Shandong TaiheDongxin Co., Ltd.'s Share Subscription Agreement" with Tai'an State-owned Asset Management Company Limited, Beijing New Building Materials Public Limited Company, Shandong TaiheDongxin Co., Ltd., Shandong Taihe Group ESOP Association, JiaTongchun and Tai'anAnxin Investment & Trade Co., Ltd. for and on behalf of me. This agreement is legally binding upon me.

Authorizer: 朱腾高 (住真有效)

\_\_\_\_\_, 2005

BNBMPLC0006165

Annex 1:

## Power of Attorney

I, a shareholder of Shandong TaiheDongxin Co., Ltd., hereby authorizes JiaTongchun to sign "Shandong TaiheDongxin Co., Ltd.'s Share Subscription Agreement" with Tai'an State-owned Asset Management Company Limited, Beijing New Building Materials Public Limited Company, Shandong TaiheDongxin Co., Ltd., Shandong Taihe Group ESOP Association, JiaTongchun and Tai'anAnxin Investment & Trade Co., Ltd. for and on behalf of me. This agreement is legally binding upon me.

Authorizer: _[signature]_

_____, 2005

BNBMPLC0006166

Annex 1:

## Power of Attorney

I, a shareholder of Shandong TaiheDongxin Co., Ltd., hereby authorizes JiaTongchun to sign "Shandong TaiheDongxin Co., Ltd.'s Share Subscription Agreement" with Tai'an State-owned Asset Management Company Limited, Beijing New Building Materials Public Limited Company, Shandong TaiheDongxin Co., Ltd., Shandong Taihe Group ESOP Association, JiaTongchun and Tai'anAnxin Investment & Trade Co., Ltd. for and on behalf of me. This agreement is legally binding upon me.

Authorizer: [signature]

_____, 2005

BNBMPLC0006167

**Power of Attorney**

No.: 2005-001

Authorizer: Beijing New Building Materials Public Limited Company

Legal Representative: Cao Jianglin    Title: Board Chairman

Address:16Jiancaicheng West Road, Haidian District, Beijing

Authorized Person: Wang Bing    Gender: Male

Working Unit: Beijing New Building Materials Public Limited Company

Title: General Manager    ID Card No.: 342823720217721

Address: 16 Jiancaicheng West Road, Haidian District, Beijing

The Authorizer hereby authorizes Wang Bing to act as the agent of the Company with respect to execution of relevant documents and contracts. The Authorizer shall bear all legal liabilities for any and all civil acts done by the Authorized Person within the scope of authorization.

The power of agency of Wang Bing as the Authorized Person: to execute relevant documents and contracts for and on behalf of the Company.

This Power of Attorney takes effect as from the date of issue by the Company and ends on December 31, 2005.

Authorizer: Beijing New Building Materials Public Limited Company

Representative: [signature]

Authorized Person: [signature]

January 1, 2005