UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>**THIS DOCUMENT RELATES TO:**<br>*Gross v. Knauf Gips KG, 2:09-cv-6690*<br>*Amorin v. Taishan Gypsum, 2:11-cv-1672*<br>*Amorin v. Taishan Gypsum, 2:11-cv-1395*<br>*Amorin v. Taishan Gypsum, 2:11-cv-1673*<br>*Amorin v. SASAC, 2:14-cv-1727*<br>*State of Louisiana v. Knauf, 2:10-cv-340*<br>*Abner v. Taishan Gypsum, 2:11-cv-3094*<br>*Posey v. BNBM Co., 2:09-cv-6531*<br>*Morris v. BNBM Co., 2:09-cv-6530* | MDL No. 2:09-md-2047<br><br>SECTION L<br><br>JUDGE ELDON E. FALLON<br><br>MAGISTRATE JUDGE JOSEPH C. WILKINSON, JR. |

## DECLARATION OF DONALD CLARKE

I, DONALD CLARKE, declare as follows:

1.      I am a professor of law at the George Washington University Law School, where I have been employed since 2005. My academic specialization is the law of the People's Republic of China (the "PRC" or "China") in general and the legal regime of economic reform in particular, and I speak and read Chinese fluently. I have published a number of articles, comments, and book reviews pertaining to Chinese law.

2.      I have been asked to provide my opinion on whether the facts of the relationships between various entities with a corporate relationship to CNBM Group Co., as set forth in the documents I have reviewed, would constitute grounds under Chinese law for disregarding their corporate separateness and treating one as the "alter ego" of the other. In this declaration, I shall refer to various relevant entities as follows:

- CNBM Group Co.: "CNBM Group"

- CNBMIT Co. Ltd.: "CNBMIT"

- CNBM USA Corp.: "CNBM USA"

1

EXHIBIT
76

- China National Building Material Co. Ltd.: "CNBM Co."

- United Suntech Craft Inc.: "United Suntech"

- CNBM Group, CNBMIT, CNBM USA, CNBM Co., and United Suntech collectively: the "Five Defendants"

- BNBM PLC.: "BNBM"

- Taishan Gypsum Co.: "Taishan"[1]

- Taian Taishan Plasterboard Co.: "TTP"

- BNBM, Taishan, and TTP collectively: the "Drywall Entities"[2]

### *My Background*

3.      I graduated cum laude from Harvard Law School in 1987, where my studies focused on East Asian legal systems and I served as an editor of the Harvard Law Review. I earned a graduate degree (M.Sc. with Honors) in the Government and Politics of China from the School of Oriental and African Studies at the University of London in 1983. I also studied Chinese history for two years at Beijing University and Nanjing University in China from 1977 to 1979.

4.      From 1988 through 2004, I was on the faculty of the University of Washington School of Law ("UWLS"). From 1995 to 1998, I was on a leave of absence from the UWLS and worked as an attorney at Paul, Weiss, Rifkind, Wharton & Garrison ("Paul, Weiss"), a large United States law firm with a substantial China business practice. During that period, I visited China and Hong Kong approximately twice a year in the course of my work, a substantial amount of which was related to China. From 1998 through 2003, I regularly worked with Paul, Weiss as a consultant on Chinese law matters. Since that time I have maintained an independent consulting practice.

5.      I spent the calendar year 2003 in China conducting research on corporate governance issues as a Fulbright Fellow and Visiting Scholar at Tsinghua University Faculty of Law

---

[1] I understand that the entity named "Taihe" in the 2005 and 2006 Annual Reports of CNBM Co., and named "Shangdong Taihe" in the 2007 Annual Report of CNBM Co., is the same entity as Taishan. *See* Jia Affidavit, Para. 3.

[2] I am informed by counsel that BNBM, Taishan, and TTP are the only relevant entities that engaged in any sales of drywall to the United States from 2005 to 2007, the relevant period for drywall sales. According to the declarations of the Five Defendants, none of these defendants has ever manufactured or sold drywall in the United States.

("Tsinghua"). I visit China frequently and, since 2003, have spent at least three months a year there.

6. I have served as adviser or consultant on Chinese law matters to a number of bodies, including the Asian Development Bank, the Agency for International Development, and the World Bank's Financial Sector Reform and Strengthening Initiative. I have testified on aspects of the Chinese legal system before the Congressional-Executive Commission on China and the United States-China Economic and Security Review Commission. I have been appointed to the Academic Advisory Group to the US-China Working Group of the United States Congress. I am admitted to the practice of law in the state of New York and am a member of the Council on Foreign Relations.

7. I have served as an expert witness on Chinese law matters in over a dozen cases, most of them involving issues of the Chinese legal system or Chinese commercial law.

8. A more complete statement of my credentials, including a list of publications, is set forth in my curriculum vitae, attached as Exhibit A.

***Materials Reviewed***

9. In preparing this declaration, I have reviewed the following materials provided to me by counsel for the defendants:

- Declaration of Jianglin Cao, dated June 10, 2015.

- Declaration of Zhangli Chang, dated June 9, 2015.

- Declaration of Yan Xi Chuan, dated June 12, 2015.

- Declaration of Lina Zhang, dated June 12, 2015.

- Declaration of Weisheng Liu, dated June 11, 2015 (together with the four preceding declarations, collectively "the Five Declarations").

- Affidavit of Tongchun Jia, dated Sept. 16, 2010, in the case of Southern Homes, LLC et al., v. Interior/Exterior Building Supply LP et al., Civil District Court, Parish of Orleans, State of Louisiana (the "Jia Affidavit").

- Deposition of Tongchun Jia, dated April 4, 2011, in the case of In re Chinese-Manufactured Drywall Products Liability Litigation, U.S. District Court for the Southern District of Louisiana (the "Jia Deposition").

3

- China National Building Material Company, Ltd. Global Offering Prospectus, dated March 12, 2006 (Chinese language version).

- Business license of CNBM Group (the "CNBM Group Business License") (attached as Exhibit B).

- Articles of Association of CNBM Group (the "CNBM Group AA") (attached as Exhibit C).

- Portions of the Annual Report of CNBM Co. for 2005, 2006, 2007, 2008, and 2009 ("CNBM Co. Annual Reports") (attached as Exhibit D).

*Summary of Opinion*

10.     I believe it is highly unlikely that a Chinese court would disregard the corporate separateness of the Five Defendants and the Drywall Entities. Each entity is separately organized in the People's Republic of China and to the best of my knowledge observes all of the requirements of corporate independence imposed by Chinese law. Although the Five Defendants are connected by virtue of shared investors, it is normal under Chinese law, as it is under U.S. law, for significant equity stakeholders to exercise influence over a company without for that reason being considered an alter ego of that company or being made liable for that company's debts. Even sole ownership, under Chinese law, is not enough to establish alter ego liability. Something more, and improper, must be shown. Further, the Five Defendants and the Drywall Entities do not appear to commingle finances or property, nor do they disregard corporate form in business transactions. Chinese law sets a high bar for disregarding of the corporate form, especially in firms that are directly or indirectly state-owned. Thus, plaintiffs bear a heavy burden of proof in seeking to make a related company liable for the debts of another under an alter ego theory.

*Requirements of Chinese Law for Independent Corporate Structure*

11.     In general, the requirements under Chinese law for an independent corporate structure are set forth in the 2005 Company Law (the "Company Law")[3] and in the General Principles of Civil Law (the "GPCL").[4]

12.     Under the GPCL, the conditions are set forth in the provisions regarding legal persons:

---

[3]China's first Company Law (the "1993 Company Law") was passed in 1993 and became effective in 1994. It underwent a major revision in 2005. The current version can be found at http://www.law-lib.com/law/law_view.asp?id=445135.

[4]A translation of the GPCL can be found in Whitmore Gray & Henry Ruiheng Zheng (tr.), *General Principles of Civil Law of the People's Republic of China*, 52 L. & CONTEMP. PROBLEMS 27 (1989).

4

a.  Article 36: Legal persons are organizations that have civil capacity, are competent to perform civil acts, and according to law independently enjoy civil rights and assume civil duties. (Remainder omitted.)

b.  Article 37: A legal person must satisfy the following conditions:

1.  Be established in accordance with law;

2.  Possess the necessary property or funds;

3.  Possess its own name, organizational structure, and premises;

4.  Be able to assume civil obligations independently.

13.  The Company Law provides for two basic types of companies: *gufen youxian gongsi*, generally translated as "company limited by shares" ("CLS") and *youxian zeren gongsi*, generally translated as "limited liability company" ("LLC"), although this translation can be misleading, since the Chinese LLC bears little resemblance to the entity known as an LLC in the United States and is modeled on the German corporate entity known as the GmbH (Gesellschaft mit beschränkter Haftung).

14.  A subspecies of the LLC form specially provided for in the Company Law is the Wholly State-Owned LLC ("WSOLLC").

15.  The requirements for the formation of a CLS and an LLC under the Company Law are similar in principle. The specific requirements for LLCs, single-shareholder LLCs, WSOLLCs, and CLSs are set forth respectively in Chapter 2, Section 1; Chapter 2, Section 3; Chapter 2, Section 4; and Chapter 4, Section 1 of the Company Law. A company is deemed incorporated as of the date of the issuance of its business license.

16.  To the best of my knowledge, it is not alleged in the current proceedings that any of the Chinese companies in question were not properly formed, and therefore I shall not address that issue in this declaration.

17.  When a Chinese company is properly formed, its creditors may in general look only to company assets for the payment of obligations.[5] There are, however, certain exceptions.

18.  Where shareholders have not made promised contributions of subscribed capital, they may be required to make up the uncontributed amount. Shareholders may also be liable to some extent for corporate debts if the company is in liquidation and liquidation proceedings are not carried out properly. Shareholders may be liable for the amount of

---

[5]*See* Company Law, Art. 3.

capital unlawfully withdrawn from the company. To the best of my knowledge, none of these circumstances is alleged to be present in the present case, and so I will not discuss them further.

19.     An additional circumstance in which one entity, including a shareholder, can be made liable for the debts of another is when the facts justify the application of a theory of veil-piercing or "alter ego" liability. To the best of my knowledge, it is in the veil-piercing context that "alter ego" theories have been developed in Chinese law, and so I discuss such circumstances below.

### What Is the Chinese law equivalent of "alter ego" law?

20.     Chinese law is in general quite respectful of the corporate form, particularly where entities directly or indirectly owned by the state are involved. Doctrines disregarding corporate structure, such as veil-piercing, are very rarely applied in such a context.[6]

21.     The 1993 Company Law contained no provisions on piercing the corporate veil or alter-ego theories of parent liability. The relevant Chinese statute at present is Art. 20(3) of the Company Law, which states:

> Where the shareholder of a company abuses the independent status of the company as a legal person or the limited liability of shareholders, evades debts and thus seriously damages the interests of the creditors of the company, he shall assume joint and several liability for the debts of the company.

22.     A further gloss in the case of single-shareholder LLCs is added by Art. 64 of the Company Law:

> If the shareholder of a one-member limited liability company is unable to prove that the property of the one-member limited liability company is independent from his own property, he shall bear joint liability for the debts of the company.

23.     An additional source of norms regarding veil-piercing and alter-ego theory is a document issued by the Supreme People's Court (the "SPC") in November 2003 entitled, "Regulations on Several Issues Concerning the Adjudication of Cases Involving Company Disputes (I) (Consultation Draft)" (the "Consultation Draft").[7]  Although this

---

[6]*See* Shuangge Wen, *The Ideals and Reality of a Legal Transplant—The Veil-Piercing Doctrine in China*, 50 STAN. J. INT'L L. 319, 338-42 (2014).

[7]Cited in Chao Xi, *Piercing the Corporate Veil in China: How Did We Get There?*, 2011 J. BUS. L. 413, 418 n.33.

document was never formally adopted by the Supreme People's Court, it seems to have guided, and to continue to guide, adjudication in relevant cases.[8]

24. Article 51 of the Consultation Draft sets forth what looks very much like an "alter ego" theory. Shareholders should bear liability for corporate debts when the company and the shareholders have no separate existence. Separate existence is deemed absent in any of the following circumstances:

   a. Corporate income is not separate from shareholder income, resulting in commingling of accounts;

   b. The company and its controlling shareholders commingle business funds and personal funds, and continuously use the same accounts;

   c. There is a constant commingling of corporate business and personal business, and the company's business transactions are under the complete control of the controlling shareholders.[9]

25. Cases dating from before the 2005 Company Law show these principles in action.

26. In US Minmetals Inc. v. Xiamen United Development (Group) Co. Ltd., a 2004 case (the "Minmetals Case"),[10] the plaintiff entered into a contract with a wholly-owned subsidiary of the defendant ("Sub"). Sub failed to make payment and plaintiff sued the defendant after being unable to collect in full the amount of a judgment against Sub. On appeal, the Supreme People's Court spelled out the conditions for disregarding corporate separateness:

> When a shareholder behind the veil of limited liability abuses corporate personality and harms the interests of the company and its creditors, it means in fact that the shareholder divests assets in order to evade debts and establishes a new company with such assets, or the shareholder withdraws his capital investment in a company after it is established, or the shareholder commingles the assets of the company with those of his own, or the shareholder interferes with the business of the company in such an arbitrary manner that the company has no independent operation of its own.

---

[8]*See* Xi, *supra* note 7, at 420.

[9]This summary is from Xi, *supra* note 7, at 419.

[10]The case is discussed in Xi, *supra* note 7, at 421-22.

7

27.  The SPC found that the plaintiff had failed to prove the existence of any of these factors and therefore found for the defendant.

28.  In China Construction Bank, Chengdu Municipality Jinhe Sub-Branch v. Sichuan Communications Services Co., Sichuan Jinzu Industrial Co. and Sichuan Financial Leasing Joint Stock Co., a 2003 case (the "CCB Case"),[11] the defendant owned 50% of the shares of a subsidiary ("Sub") and seems to have exercised effective control. In Prof. Xi's account of the case,

> The subsidiary's chairman and staff were simultaneously employees of the parent. Funds that the subsidiary had secured from banks were used to finance a project of the parent company. The parent was also in possession of various chops belonging to the subsidiary, which, under Chinese law, in effect enabled the parent to enter into transactions that legally bind the subsidiary. The SPC opined that personnel, assets and business operation of the subsidiary were commingled with those of the parent and that the parent company exercised excessive control over the subsidiary by keeping the latter's chops. On the basis of these circumstances, the court decided to lift the corporate veil and hold the parent company liable for the debts of its subsidiary.[12]

29.  In China Cinda Asset Management Co., Chengdu Office v. Sichuan Tailai Decoration Project Ltd. Co., Sichuan Tailai Real Estate Development Ltd. Co. and Sichuan Tailai Entertainment Ltd. Co., a 2008 case decided under the pre-2005 Company Law,[13] the SPC analyzed a claim for horizontal piercing:

> The court found that the three subsidiaries operated out of the same address, used the same telephone numbers, and for some time shared management and financial personnel. In addition, among other things, bank loans extended to Tailai Decoration Co. were used to finance a project of Tailai Entertainment Co, while the (partial) repayment of the loans was made jointly by the three subsidiaries. Revenue generated from Tailai Entertainment Co,'s project was used to pay for office rentals, utility bills and salaries of all three subsidiaries.[14]

---

[11]The case is discussed in Xi, *supra* note 7, at 422.

[12]*See* Xi, *supra* note 7, at 422.

[13]The case is discussed in Xi, *supra* note 7, at 429-30.

[14]*See* Xi, *supra* note 7, at 429.

30. On the basis of these factual findings, the SPC found that there had been a commingling of corporate personality, and that therefore Tailai Decoration Co. should be liable for the debts of the other two defendants.

31. In a 2013 case, the SPC further elucidated the standards for disregarding corporate separateness on something akin to an "alter ego" theory. In China Great Wall Asset Management Company, Shenyang Office v. New Northeast Electrical (Shenyang) High Pressure Insulated Switch Co. Ltd. et al.(the "China Great Wall case"),[15] the SPC first considered and then rejected a straight piercing claim by the plaintiff under Art. 20(3) of the Company Law. It then separately considered a claim on a commingling (*huntong*) theory. The SPC's analysis is worth quoting at length in order to understand what it requires under this theory, and what kind of facts were found inadequate to establish liability under such a theory.

32. First, the SPC laid out the general standard:

> In deciding whether a company's corporate personality is commingled with that of another [thereby justifying the imposition of liability upon one for the debts of the other], an overall analysis and judgment should be made on the basis of whether there exists a commingling in areas such as finances, organization, and business.

33. The SPC then analyzed financial commingling:

> Financial commingling is an important element in testing whether commingling of corporate personality is present. Its main external manifestations are commingling in areas such as the place of business, main offices, production facilities, and finances. Its essence is that financial commingling violates the basic principles of separateness of corporate property from shareholder property, the maintenance of corporate capital, and the permanence of corporate capital, thus seriously damaging the material basis for the company's ability to repay external indebtedness.

34. In the case in question, the SPC found that financial commingling was not sufficiently present, even though the plaintiff showed that assets formally in the name of one defendant were in fact controlled by another, and that some defendants shared the same business location.

35. The SPC then analyzed organizational commingling:

---

[15]The text of the case is available at http://www.pkulaw.cn/Case/pfnl_121242952.html.

The main external manifestations of organizational commingling are commingling of the shareholders, directors, management, responsible persons, and similar corporate personnel. Its essence is that organizational commingling causes the company to be unable to form an independent will that is based entirely on the company's own interests, such that the company loses its independence and the basis for it to independently bear liability.

36. In the case in question, the SPC found that organizational commingling was not sufficiently present, even though the plaintiff showed that there was some overlap of senior management personnel.

37. Finally, the SPC analyzed business commingling:

The main external manifestations of business commingling are matters such as the continuous commingling of business operations, business behavior, transactional methods, and price-setting. Its essence is that the commingling of business leads to the company losing its operational autonomy and independent personality.

38. In the case in question, the SPC found that business commingling was not sufficiently present, even though the plaintiff showed that there was some overlap in the business scope of the companies involved.

39. In short, concluded the SPC,

Even though the companies showed some overlaps in time and space with respect to place of operations, scope of business, appointment of senior management, and other matters, such that there were several external manifestations of commingling of corporate personalities, the aforementioned external manifestations are insufficient to show that the companies had a continuous period of overlap in finance, organization, business, and other matters . . .

40. The question in this case is whether the relationships between any of the Five Defendants on the one hand and any of the Drywall Entities on the other would constitute grounds under Chinese law for treating one as the "alter ego" of another. In light of the rules and cases canvassed above, and on the basis of the Five Declarations and other evidence cited herein, I believe they would not.

***Relationships Between and Among the Five Defendants and the Drywall Entities in Light of Chinese Alter Ego Theory***

41.　I have been asked to assess the relationships between and among the Five Defendants and the Drywall Entities during the years 2005 to 2009 (the "Relevant Period") in order to express an opinion on whether they might be deemed under Chinese law to belong to a single enterprise under a theory similar to alter ego theory.[16] In order to do so, I have reviewed the documents listed in Paragraph 9 above, and I assume, but have no independent knowledge of, their authenticity and accuracy.

42.　CNBM Group appears to be a typical holding company commonly found in China's system of state-owned enterprises. Its direct and indirect holdings in CNBM Co. from 2005 to 2007 were just over 60%. In 2008 and 2009, it held just under 50%.[17] The portion of the equity not held directly or indirectly by CNBM Group was held almost entirely by public investors ("public investors" being understood here to mean parties who purchase through the stock market without regard to their ownership or corporate status). Although CNBM Group appears to be the controlling shareholder of CNBM Co. throughout the Relevant Period, this fact by itself would not constitute grounds under Chinese law, any more than it would under American law, for disregarding the corporate separateness of the two entities and considering them alter egos of each other. It is normal and expected in both China and the United States for corporations to have controlling shareholders.

43.　According to the Cao Declaration, Para. 12, CNBM Group "has never had a joint bank account with [CNBM Co.] or had the ability to withdraw or deposit funds in the account of [CNBM Co.] without express authorization of that entity." Thus, there does not appear to exist the kind of financial commingling found important in the China Great Wall case.

44.　I note that CNBM Co. is a publicly listed company. To the best of my knowledge, courts in China have never pierced the veil in a publicly listed company.

45.　Given the above facts, I believe it is highly unlikely that a Chinese court would disregard the legal separateness of CNBM Group and CNBM Co. and find them to be a single entity under something akin to an alter ego theory.

46.　CNBM Co. appears to be a second-level holding company below CNBM Group. As noted above, its equity is held (directly and indirectly) in part by CNBM Group, but a

---

[16] I am informed by counsel that Plaintiffs have identified the relevant period of forum contacts for purposes of personal jurisdiction as 2005 through 2009, but that Plaintiffs have not alleged any relevant sales of drywall after July, 2007.

[17] I have obtained this data from the relevant pages of the Annual Report of CNBM Co. for the years 2005 through 2009 ("CNBM Co. Annual Reports"). I have attached the relevant pages as Exhibit D.

majority is held by public investors in the stock market. This type of structure is typical in Chinese state-owned enterprises: there will be a top-level holding company in the form of a WSOLLC directly under SASAC, and then a publicly listed company under the top-level holding company. The publicly-listed holding company could itself be a holding company, an operating company, or a combination of both.

47.    According to the Chang Declaration, Para. 6, CNBM Co.'s equity share in BNBM has varied from 60% in 2005 to 52% in the remaining years of the Relevant Period.[18] CNBM Co. was therefore the controlling shareholder of BNBM during the Relevant Period.

48.    According to the Chang Declaration, Para. 11, CNBM Co. exercises its rights as a controlling shareholder to nominate appointees to the boards of subsidiary corporations. As discussed in Para. 42 above, however, the mere fact of the existence of a controlling shareholder in not sufficient in Chinese law to justify disregarding corporate separateness. Controlling shareholders owe a duty to non-controlling shareholders not to cause the company to act in a way that benefits only themselves, to the detriment of non-controlling shareholders.[19]

49.    Nor does the ability to nominate directors equate to control over those directors in their capacity as member of the subsidiary's board. Corporate directors owe their primary duties of care and loyalty to the company of which they are a director, and not to any shareholder or group of shareholders that were responsible for their nomination and election.[20] Thus, derivative actions may be, and have in fact successfully been, brought

---

[18]*See* CNBM Co. Annual Reports, *supra* note 17. During the Relevant Period, BNBM was a controlling shareholder of Taishan and Taishan was the sole shareholder of TTP since its creation in 2006. *See* Yang Declaration, Para. 8; CNBM Co. Annual Reports, *supra* note 17 (Taishan's ownership); Jia Affidavit, Para. 26; Jia Deposition at 795 (TTP's ownership). The alter ego status of BNBM with respect to the other Drywall Entities, and the alter ego status of Taishan with respect to TTP, are not within the scope of my declaration and so I express no view here.

[19]*See* SHI TIANTAO, GONGSI FA LUN (Treatise on Company Law) 383, 385 (2006); XIANDAI QIYE ZHIDU DA CIDIAN (Encyclopedia of the Modern Enterprise System) 966 (HUANG Yunwu ed. 2006). This principle has been confirmed in litigation. *See, e.g.,* Tort Case of Wuxi City Nanchang District Real Estate Management Company et al. v. Hengtong Group Joint Stock Company et al., Jiangsu Province Higher-Level People's Court, 2000, *available at* http://www.pkulaw.cn/Case/pfnl_117674300.html (lawsuit against controlling shareholder); Shanghai Anlian Information Technology Company v. Shanghai Anju Investment Management Company, Basic-Level People's Court of Changning District, Shanghai, 2010, *available at* http://www.pkulaw.cn/Case/pfnl_120912835.html (lawsuit against controlling shareholder and its appointed director).

[20]*See* LI Renyu & WANG Yiping, *Lun muzi gongsi guanxi zhong dongshi zhongshi yiwu* (On the Duty of Loyalty of Directors in Parent-Subsidiary Corporate Relationships), in SHANGFA YANJIU DI YI JI (Studies in Commercial Law, Volume 1) 242, 244 (XU Xuelu ed. 2000). This principle has been confirmed in litigation. *See, e.g.,* Shanghai Anlian Information Technology Company v. Shanghai Anju Investment Management Company, Basic-Level People's Court of Changning District, Shanghai, 2010, *available at* http://www.pkulaw.cn/Case/pfnl_120912835.html (lawsuit against controlling shareholder and its appointed director); Wuzhou City Xingxin Real Estate Development Company et al. v. Hong Kong Dongyang Group, Guangxi Autonomous Region Higher-Level People's Court, 2007, *available at*

by non-controlling shareholders against directors who, acting at the behest of the controlling shareholders who nominated and elected them, acted to damage the company.[21]

50.     According to the Chang Declaration, Para. 7, CNBM Co. "has never had a joint bank account with [BNBM] or had the ability to withdraw or deposit funds in the account of [BNBM] without express authorization of that entity." As with CNBM Group, then, there does not appear to exist the kind of financial commingling found important in the China Great Wall case.

51.     Given the above facts, I believe it is highly unlikely that a Chinese court would disregard the legal separateness of CNBM Co. and BNBM and find them to be a single entity under something akin to an alter ego theory. If so, then it is even more unlikely that a Chinese court would disregard the corporate separateness of BNBM and CNBM Group, given that the latter company (a minority owner of CNBM Co.) is one step further removed from BNBM.

52.     By the same token, I believe it is highly unlikely that a Chinese court would disregard the legal separateness of CNBM Co. and CNBM Group on the one hand and the Drywall Entities on the other hand, and find them to be a single entity under something akin to an alter ego theory. The only link between the Drywall Entities and CNBM Co. and CNBM Group is BNBM, and in the absence of specific evidence about direct commingling between the Drywall Entities on the one hand and CNBM Co. and CNBM Group on the other, the equity ownership link alone will not suffice under Chinese law.

53.     According to the Zhang Declaration, Para. 4, CNBM USA is currently wholly owned by a company called CNBM International. CNBM International appears to be wholly owned by a company called CNBM Import & Export. In 2006, CNBM Import & Export was authorized by China's Ministry of Commerce to establish CNBM USA as a wholly-owned subsidiary in the United States,[22] and CNBM USA became operational in early

---

http://www.pkulaw.cn/Case/pfnl_117530113.html (lawsuit against directors who allegedly acted on behalf of their appointing shareholder in violation of fiduciary duty to company; although defendants prevailed on appeal, court accepted existence of fiduciary duty as a matter of law).

[21] *See generally* Donald Clarke & Nicholas Howson, *Derivative Actions in the People's Republic of China*, in (ed.), THE DERIVATIVE ACTION IN ASIA: A COMPARATIVE AND FUNCTIONAL APPROACH 243 (Dan W. Puchniak, Harald Baum & Michael Ewing-Chow ed. 2012).

[22] Ministry of Commerce, Certificate of Authorization, dated Aug. 8, 2006 (attached hereto as Exhibit E). The certificate authorizes the establishment of a company to be named "Zhongguo Jiancai Guoji Meiguo Gongsi", which translates literally as "China Building Materials International America Company". I assume this is the company referred to in the Zhang Declaration as "CNBM USA". The company being authorized is "Zhong Jiancai Jituan Jinchukou Gongsi", which translates literally as "China Building Materials Group Import/Export Company". I assume this is the company referred to in Para. 4 of the Zhang Declaration as "CNBM Import & Export".

13

2007.[23] I infer from the Zhang Declaration that CNBM USA remained a wholly-owned subsidiary CNBM Import & Export throughout the Relevant Period.[24]

54.     CNBM Import & Export is a wholly-owned subsidiary of CNBM Group.[25] In other words, CNBM USA was and is completely outside the chain of ownership leading from Taishan and TTP through BNBM and CNBM Co. to CNBM Group. In the absence of specific evidence about direct commingling, then, I believe it is highly unlikely that a Chinese court would disregard the legal separateness of CNBM USA and the Drywall Entities and find them to be a single entity under something akin to an alter ego theory.

55.     CNBMIT's ownership was as follows: (1) Prior to November 2007 in the Relevant Period, CNBMIT was 90% owned by BND Co. ("BND"), a Chinese entity owned by BNBM,[26] which was in turn owned and controlled by CNBM Group.[27] (2) During the remainder of the Relevant Period (from November 2007 through April 2009), CNBMIT was 90% owned by CNBM Investment, the successor company to BND.[28]

56.     United Suntech's ownership was as follows: (1) 2005-2008: 60% owned by BND; (2) 2008-2009: 100% owned by BND's successor company, CNBM Investment.[29]

57.     CNBM Investment was in turn (under the name of BND) owned or controlled by BNBM[30] until 2008. In 2008, CNBM Investment's ownership was transferred from BNBM to CNBM Co.[31]

58.     Both CNBMIT and United Suntech were one level of ownership removed from BNBM. Their parent company, BND/CNBM Investment, was until January 2008 a sibling company of Taishan and TTP; after that date, they were not at all in the chain of ownership connecting Taishan and TTP to CNBM Co. As with CNBM USA, in the absence of specific evidence about direct commingling, I believe it is highly unlikely that

---

[23] *See* Zhang Declaration, Para. 4.

[24] *See* Zhang Declaration, Para. 4.

[25] *See* CNBM Co. Annual Reports, *supra* note 17. I am informed by counsel for the defendants that the entity named "CNBM Trading" in the CNBM Co. Annual Reports is the same entity as that named "CNBM Import & Export".

[26] Chuan Declaration, Para. 4; Liu Declaration, Para. 3.

[27] *See* CNBM Co. Annual Reports, *supra* note 17.

[28] Chuan Declaration, Para. 4.

[29] Liu Declaration, Para. 3.

[30] BNBM was during the Relevant Period a partially-owned subsidiary of CNBM Co., which was in turn a partially-owned subsidiary of CNBM Group. *See* CNBM Co. Annual Reports, *supra* note 17.

[31] Liu Declaration, Para. 3.

14

a Chinese court would disregard the legal separateness of CNBMIT and United Suntech on the one hand and the Drywall Entities on the other and find them to be a single entity under something akin to an alter ego theory.

59.    In summary, Chinese law generally respects the legal separateness provided by the corporate form, and requires a strong showing of commingling in order to negate it, particular in the state-owned sector. The fact that one company owns a controlling equity stake in another and uses that stake to appoint directors is not, by itself, enough to negate the presumption of separateness. Even sole ownership is not by itself enough—if it were, then it would be meaningless for Chinese law to allow single-shareholder companies to exist. There must, in the language of Article 20(3) of the Company Law, be evidence of *abuse* of corporate separateness and *evasion* of debts. There is no support in China, any more than there is in the United States, for the idea that merely owning a controlling stake in another company is *per se* an abuse of corporate separateness.

* * * * *

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 15, 2015, in Washington, D.C.

_____

Donald Clarke

15

# Exhibit A

# DONALD C. CLARKE

David Weaver Research Professor of Law
George Washington University Law School
2000 H Street
Washington, DC 20052
Tel. (202) 994-2830
E-mail: dclarke@law.gwu.edu
World Wide Web: http://donaldclarke.net

## CURRENT POSITION

• Professor, George Washington University Law School, Washington, DC (from Jan. 2005)

        Courses taught:    • Chinese Law
                                • Chinese Business Law
                                • Business Organizations
                                • Law and Development

## OTHER POSITIONS AND VISITORSHIPS

• Visiting Professor, Interdisciplinary Center, Herzliya, Israel (April-May 2013)
• Visiting Professor, Duke University Law School, Durham, NC (Spring 2012)
• Visiting Professor, University of California at Los Angeles School of Law, Los Angeles, CA (Fall 2008)
• Visiting Professor, New York University School of Law, New York, NY (2007-08)
• Professor, University of Washington School of Law, Seattle, Washington (1988-2004)
• Attorney, Paul Weiss Rifkind Wharton & Garrison, New York, New York (Sept. 1995-Aug. 1998) (on leave from University of Washington)
        Areas of practice: Corporate, East Asia (focusing on China)
• Lecturer in Commercial Law of the Far East, Department of Law, School of Oriental and African Studies, University of London, UK (Sept. 1985-July 1988)

## EDUCATION

• *Harvard Law School*, Cambridge, Mass., USA (1983-85, 1986-87)—JD cum laude 1987
        Activities:    Editorial Board, *Harvard Law Review*
                            *Harvard International Law Journal*
• *School of Oriental and African Studies*, University of London, UK (1981-83)—MSc 1983 in Government and Politics of China
        Honors: Award of Distinction for thesis

- *Beijing University and Nanjing University*, People's Republic of China (1977-79) — Non-degree academic exchange program
    Major area of study: Chinese history
- *Princeton University*, Princeton, New Jersey, USA (1973-77) — BA cum laude 1977
    Major areas of study: International affairs (Woodrow Wilson School of Public and International Affairs); Certificate of Proficiency in East Asian Studies

## SCHOLARSHIPS AND FELLOWSHIPS

- Rowdget Young Visiting Fellow, Faculty of Law, University of Hong Kong, June 2005
- Fulbright Research Fellowship, 2003 (Tsinghua University Faculty of Law, Beijing)
- Visiting Fellow, China Law Center, Yale Law School, Fall 2001
- Research Fellowship, National Program, Committee on Scholarly Communication with the People's Republic of China, 1991-92
- Foreign Language and Area Studies Fellowship, 1986-87 (Harvard Law School)
- Foreign Language and Area Studies Fellowship, 1984-85 (Harvard Law School)
- Commonwealth Scholarship, 1981-83 (University of London)
- Canada-China Exchange Scholarship, 1977-79 (Peking University, Nanking University)

## PROFESSIONAL ASSOCIATIONS AND MEMBERSHIPS

- Member, Council on Foreign Relations
- Member, New York Bar
- Member, Executive Committee, East Asian Law & Society Section, Association of American Law Schools (2015-2017)
- Member, Executive Editorial Board, *American Journal of Comparative Law*
- Member, Editorial Board, *The China Quarterly*
- Member, Editorial Board, *Journal of Comparative Law*
- Member, Academic Advisory Group, US-China Working Group, United States Congress
- Affiliate Professor, University of Washington School of Law
- Director, U.S. China Law Society
- Director, Pacific Rim Law and Policy Association (publisher of *Pacific Rim Law and Policy Journal*)
- Member, Advisory Board, Center for Real Estate Law, Peking University Law School

## CONSULTANCIES (SELECTED)

- Financial Sector Reform and Strengthening (FIRST) Initiative, *Amendments to the Securities Law of the People's Republic of China*, 2004-2005
- Asian Development Bank, *Economic Law in the People's Republic of China: Retrospect and Prospect*, 2004-2005
- Asian Development Bank, *Amendments to the Company Law of the People's Republic of China*, 2001-2005

• Agency for International Development, *Commercial Law Reform in the Former Soviet Republics*, 2002
• Asian Development Bank, *China's Legal and Administrative System*, 2001

**PUBLICATIONS**

### Books

*China's Legal System: New Developments, New Challenges* (Cambridge University Press, 2008) (edited volume)

### Articles and Monographs

"China's Urban Land Regime: The Irrelevance of State Ownership," *China Quarterly* (forthcoming 2015)

"Zai fanyizhong yishi? Jianping Zhongguo gongsi fa zhong de yizhiti" (Lost in Translation? Legal Transplants in Chinese Corporate Law), in <u>Ge</u> Pingliang & <u>Liang</u> Jiaolong (ed.), *Waiguo Xuezhe Lun Zhongguo Fa Congshu – Gongsi Fa Fenjuan* (Collection of Works of Foreign Scholars Discussing Chinese Law—Company Law Volume) (Zhongguo Dabaike Quanshu Chubanshe (Great Encyclopedia of China Publishers), forthcoming 2015)

"Judicial Innovation in Chinese Corporate Law," in John O. Haley & Toshiko Takenaka (ed.), *Legal Innovations in Asia: Judicial Law-Making and the Influence of Comparative Law* (Edward Elgar, 2014): 259-272

"China's Stealth Urban Land Revolution," *Am. J. Comp. L.*, vol. 62, no. 2 (Spring 2014): 323-366

"Derivative Actions in the People's Republic of China" (with Nicholas C. Howson), in Dan W. Puchniak, Harald Baum & Michael Ewing-Chow (ed.), *The Derivative Action in Asia: A Comparative and Functional Approach* (Cambridge University Press, 2012): 243-295; *translated as* "Tongwang xiao gudong baohu zhi lujing: Zhongguo paisheng susong," in <u>Ge</u> Pingliang & <u>Liang</u> Jiaolong (ed.), *Waiguo Xuezhe Lun Zhongguo Fa Congshu – Gongsi Fa Fenjuan* (Collection of Works of Foreign Scholars Discussing Chinese Law—Company Law Volume) (Zhongguo Dabaike Quanshu Chubanshe (Great Encyclopedia of China Publishers), forthcoming 2015)

"'Nothing But Wind'? The Past and Future of Comparative Corporate Governance," *Am. J. Comp. L.*, vol. 59, no. 1 (Winter 2011): 75-110

"Law Without Order in Chinese Corporate Governance Institutions," *Nw. J. Int'l L. & Bus.*, vol. 30 (2010): 131-199; *translated as* "Zhongguo gongsi zhili zhidu: you fa er wu zhixu," in <u>Ge</u> Pingliang & <u>Liang</u> Jiaolong (ed.), *Waiguo Xuezhe Lun Zhongguo Fa Congshu – Gongsi Fa Fenjuan* (Collection of Works of Foreign Scholars Discussing

Chinese Law—Company Law Volume) (Zhongguo Dabaike Quanshu Chubanshe (Great Encyclopedia of China Publishers), forthcoming 2015)

"The Private Attorney-General in China: Potential and Pitfalls," *Wash. U. Global Studies L. Rev.*, vol. 8, no. 2 (2009): 241-255

"The Role of Non-Legal Institutions in Chinese Corporate Governance," in Curtis Milhaupt, Kon-Sik Kim and Hideki Kanda (ed.), *Transforming Corporate Governance in East Asia* (Routledge, 2008): 168-192

"The Role of Law in China's Economic Development" (with Peter Murrell and Susan Whiting), in Thomas Rawski and Loren Brandt (ed.), *China's Great Economic Transformation* (Cambridge University Press, 2008): 375-428

"China: Creating a Legal System for a Market Economy," Nov. 7, 2007 (report prepared for the Asian Development Bank) (available at http://ssrn.com/abstract=1097394)

"The Chinese Legal System Since 1995: Steady Development, Striking Continuities," *China Quarterly*, no. 191 (Sept. 2007): 555-566

"Legislating for a Market Economy in China," *China Quarterly*, no. 191 (Sept. 2007): 567-585

"Three Concepts of the Independent Director," *Delaware Journal of Corporate Law*, vol. 32, no. 1 (2007): 73-111 (available at http://ssrn.com/abstract=975111)

"How Do We Know When an Enterprise Exists? Unanswerable Questions and Legal Polycentricity in China," *Columbia Journal of Asian Law*, vol. 19, no. 1 (2005 [2006]): 50-71

"The Independent Director in Chinese Corporate Governance," *Delaware Journal of Corporate Law*, vol. 31, no. 1 (2006): 125-228 (available at http://ssrn.com/abstract=895588)

"Zhengfu chigu yu Zhongguo gongsi zhili" (Government Shareholding and Chinese Corporate Governance), *Hongfan Pinglun* (Hongfan Review [Journal of Legal and Economic Studies]), vol. 2, no. 2 (Sept. 2005): 230-248

"Yige bing buyuan de waiguo yueliang: Meiguo fan neimu jiaoyi falü zhidu" (A Foreign Moon That Is not Round: America's Anti-Insider Trading Legal Regime), *Hongfan Pinglun* (Hongfan Review [Journal of Legal and Economic Studies]), vol. 2, no. 1 (March 2005): 225-238

"Zhongguo xiuding 'Xing Fa' pingjia" (An Assessment of China's Revisions to the "Criminal Law"), in Xu Chuanxi (ed.), *Zhongguo Shehui Zhuanxing Shiqi de Falü Fazhan* (The Development of Law in China's Transitional Society) (Beijing: Falü Chubanshe [Law Press], 2004): 448-492

"Corporate Governance in China: An Overview," *China Economic Review*, vol. 14, no. 4 (2003): 494-507

"Empirical Research in Chinese Law," in Erik Jensen & Thomas Heller (eds.), *Beyond Common Knowledge: Empirical Approaches to the Rule of Law* (Stanford: Stanford University Press, 2003): 164-192

"Duli dongshi yu Zhongguo gongsi zhili" (The Independent Director and Chinese Corporate Governance), in Fang Liufang (ed.), *Fa Da Pinglun* (China University of

Politics and Law Review), vol. 2 (Beijing: Zhongguo Zheng-Fa Daxue Chubanshe [China University of Politics and Law Press], 2003): 99-122 (also in Hamada Michiyo & Wu Zhipan (ed.), *Gongsi Zhili yu Ziben Shichang Jianguan – Bijiao yu Jiejian* (Corporate Governance and the Regulation of Capital Markets: Comparisons and Lessons) (Beijing: Beijing Daxue Chubanshe [Beijing University Press], Jan. 2003)

"The Independent Director in Chinese Corporate Governance and the 'Guidance Opinion on the Establishment of an Independent Director System in Listed Companies'," in Wang Baoshu (ed.), *Touzizhe Liyi Baohu* (The Protection of Investors' Interests) (Beijing: Shehui Kexue Wenxian Chubanshe [Social Sciences Documentation Press], 2003): 142-165

"Economic Development and the Rights Hypothesis: The China Problem," *American Journal of Comparative Law*, vol. 51 (2003): 89-111

"China's Legal System and the WTO: Prospects for Compliance," *Washington University Global Studies Law Review*, vol. 2, no. 1 (2003): 97-118

"Puzzling Observations in Chinese Law: When Is a Riddle Just a Mistake?" in C. Stephen Hsu (ed.), *Understanding China's Legal System* (New York: New York University Press, 2003): 93-121

"Zhongguo de jiufen jiejue" (Dispute Resolution in China), in Jiang Shigong (ed.), *Tiaojie, Fazhi yu Xiandaixing: Zhongguo Tiaojie Zhidu Yanjiu* (Mediation, Legality, and Modernity: Studies in the Chinese Mediation System) (Beijing: Zhongguo Fazhi Chubanshe [China Legal System Press], 2001)

"Zhongguo tudi shiyong guanli zi xia er shang de celüe" (A Bottom-Up Strategy for Land Use Regulation in China), in Chi Fulin (ed.), *Zouru 21 Shiji de Zhongguo Nongcun Tudi Zhidu Gaige* (China's Rural Land System Reform Going Into the 21st Century) (Beijing: Zhongguo Jingji Chubanshe [China Economics Press], 2000): 299-303

"Chûgokuhô kenkyû no apurôchi: 'hô no shihai' paradaimu wo koete" (Approaches to Chinese Law: Beyond the 'Rule of Law' Paradigm), *Hikaku Hôgaku* (Studies in Comparative Law), vol. 34, no. 1 (2000): 73-91

"Alternative Approaches to Chinese Law: Beyond the 'Rule of Law' Paradigm," *Waseda Proceedings of Comparative Law*, vol. 2 (1998-1999): 49-62

"China and the World Trade Organization," in Freshfields (ed.), *Doing Business in China* (Yonkers, N.Y.: Juris Publishing, 1999): I-11.1 to I-11.30

"Private Enforcement of Intellectual Property Rights in China," *NBR Analysis*, vol. 10, no. 2 (April 1999): 29-41

*Wrongs and Rights: A Human Rights Analysis of China's Revised Criminal Code* (New York: Lawyers Committee for Human Rights, December 1998)

"Power and Politics in the Chinese Court System: The Execution of Civil Judgments," *Columbia Journal of Asian Law*, vol. 10, no. 1 (Spring 1996): 1-125

"The Creation of a Legal Structure for Market Institutions in China," in John McMillan & Barry Naughton (eds.), *Reforming Asian Socialism: The Growth of Market Institutions* (Ann Arbor: University of Michigan Press, 1996): 39-59

"The Execution of Civil Judgments in China," *China Quarterly*, no. 141 (March 1995): 65-81; translated into Japanese as "Chûgoku ni okeru minji hanketsu no kyôsei shikkô," in Hikota Koguchi (ed.), *Chûgoku no Keizai Hatten to Hô* (Tokyo: Waseda University Institute of Comparative Law, 1998): 343-367

"Antagonistic Contradictions: Criminal Law and Human Rights in China" (with James V. Feinerman), *China Quarterly*, no. 141 (March 1995): 135-154

"Justice and the Legal System," in Robert Benewick & Paul Wingrove (eds.), *China in the 1990s* (London: Macmillan, 1995): 83-93

"GATT Membership for China?," *University of Puget Sound Law Review*, vol. 17, no. 3 (Spring 1994): 517-531

"Regulation and Its Discontents:  Understanding Economic Law in China," *Stanford Journal of International Law*, vol. 28, no. 2 (Spring 1992): 283-322

"Dispute Resolution in China," *Journal of Chinese Law*, vol. 5, no. 2 (Fall 1991): 245-296

"What's Law Got to Do with It?  Legal Institutions and Economic Reform in China," *UCLA Pacific Basin Law Journal*, vol. 10, no. 1 (Fall 1991): 1-76

"Law, the State and Economic Reform in China," in Gordon White (ed.), *The Chinese State in the Era of Economic Reform:  The Road to Crisis* (London: Macmillan, 1991): 190-211

"Political Power and Authority in Recent Chinese Literature," *China Quarterly*, no. 102 (June 1985): 234-252

"Concepts of Law in the Chinese Anti-Crime Campaign," *Harvard Law Review*, vol. 98, no. 8 (June 1985): 1890-1908

## Blogs

*The Chinese Law Prof Blog*, http://lawprofessors.typepad.com/china_law_prof_blog/
Co-blogger, *ChinaFile*, http://www.chinafile.com (sponsored by the National Committee on US-China Relations)

## Unpublished Working Papers

"Lost in Translation? Corporate Legal Transplants in China" (July 3, 2006), GWU Law School Public Law Research Paper No. 213 (available at http://ssrn.com/abstract=913784)

"The Enforcement of United States Court Judgments in China: A Research Note" (May 27, 2004) (available at http://ssrn.com/abstract=943922)

## Translations

"The Management Liability of Directors," *Law in Japan*, vol. 20 (1987): 150-172 (translation from Japanese of M. Kondô, "Torishimariyaku no keiei sekinin")

**Short Articles, Comments, and Book Reviews**

"Alibaba Shareholder Disenfranchisement: Worse than You Think," *FT Alphaville*, Oct. 20, 2014, http://on.ft.com/1vUEjQl

"The Significance of Recent Detentions for the Rule of Law in China," testimony before the Congressional-Executive Commission on China, in *Understanding China's Crackdown on Rights Advocates: Personal Accounts and Perspectives*, April 8, 2014, *available at* http://1.usa.gov/1j31ZK3

"Why Hefei?", *Caixin Online*, July 27, 2012, http://english.caixin.com/2012-07-27/100416240.html

"Waizi kongzhile Zhongguo hulianwang ma?" (Does Foreign Capital Control the Chinese Internet?), *Caixin Wang* (Caixin Online), July 22, 2011, http://www.caing.com/2011-07-22/100282578.html (Chinese-language version of "Who Owns the Chinese Internet" below)

"Who Owns the Chinese Internet?", *Caixin Online*, July 15, 2011, http://english.caing.com/2011-07-15/100279928.html, also in *Caixin Weekly*, no. 36 (July 25, 2011): 58-60

"China's Jasmine Crackdown and the Legal System," *East Asia Forum* (Australian National University), May 26, 2011, http://www.eastasiaforum.org/2011/05/26/china-s-jasmine-crackdown-and-the-legal-system/ (alternate URL: http://bit.ly/k8eI2U)

"New Approaches to the Study of Political Order in China," *Modern China*, vol. 36, no. 1 (2010): 87-99

"Lawyers and the State: Recent Developments," testimony before the Congressional-Executive Commission on China, Washington, D.C., October 7, 2009

"Lawsuits as Criticism," in "Room for Debate: China's New Rebels," *New York Times*, June 2, 2009, http://nyti.ms/kKt9sl

"Law, Institutions, and Property Rights in China" (with Peter Murrell and Susan Whiting), *Woodrow Wilson International Center for Scholars Asia Program Special Report*, no. 129, 2005: 42-47

"Xintuo zeren de zhenzheng yiyi -- yu Lang Xianping jiaoshou shangque" (The True Meaning of Fiduciary Liability: A Discussion with Professor Lang Xianping), *Zhongguo Zhengquan Bao* (China Securities News), Dec. 5, 2003

"Ruhe quezhi yijia gongsi de cunzai: Zhongguo fa shang de kunhuo he falü duoyuan zhuyi" (How Do We Know When an Enterprise Exists? Unanswerable Questions and Legal Polycentricity in Chinese Law), in Wang Baoshu (ed.), *Quanqiu Jingzheng Tizhi Xia de Gongsi Fa Gaige* (Company Law Reform in a System of Global Competition) (Beijing: Shehui Kexue Wenxian Chubanshe [Social Sciences Documentation Press], 2003): 74-76

"Corporatisation, Not Privatisation," *China Economic Quarterly*, vol. 7, no. 3 (2003): 27-30

Review of Peter Murrell (ed.), *Assessing the Value of Law in Transition Economies* (Ann Arbor: Univ. of Michigan Press, 2001), in *Journal of Economic Literature*, vol. 41 (June 2003): 624-625

"China" (with Nicholas Howson and Lester Ross), in *Insolvency & Restructuring 2003* (London: Law Business Research, 2003): Chapter 9

Statement Before the Congressional-Executive Commission on China (June 6, 2002), in "WTO: Will China Keep Its Promises? Can It?", *Hearing Before the Congressional-Executive Commission on China*, 107th Congress, Second Session (Washington, D.C.: U.S. Government Printing Office, 2002): 66-78

Statement Before the United States-China Security Review Commission (Jan. 18, 2002) [on China's accession to the World Trade Organization], in *Compilation of Hearings Held Before the U.S.-China Security Review Commission*, 107th Congress, First and Second Sessions (Washington, D.C.: U.S. Government Printing Office, 2002): 1171-1181

"China" (with Lester Ross), in *Insolvency & Restructuring 2002* (London: Law Business Research, 2002): 57-63 (Chapter 9)

"Dispute Resolution in China: The Arbitration Option" (with Angela H. Davis), in Asia Law and Practice (ed.), *China 2000: Emerging Investment, Funding and Advisory Opportunities for a New China* (Hong Kong: Euromoney Publications (Jersey) Limited, 1999): 151-162

"State Council Notice Nullifies Statutory Rights of Creditors," *East Asian Executive Reports*, vol. 19, no. 4 (April 15, 1997): 9-15

"China's New Partnership Law" (with Nicholas Howson and Gangliang Qiao), *The China Business Review*, July-August 1997: 30-33

"Shanghai Measures on Land Use by FIEs: An Indication of Coming Changes in the National System?" (with Nicholas C. Howson), *East Asian Executive Reports*, vol. 18, no. 11 (November 15, 1996): 9-13

"Bill Jones: An Appreciation," *Washington University Law Quarterly*, vol. 74 (Fall 1996): 545-546

"Methodologies for Research in Chinese Law," *University of British Columbia Law Review*, vol. 30, no. 1 (1996): 201-209

"One Step Back Permits Two Steps Forward," *China Rights Forum*, Fall 1996: 8-11

"Developing P.R.C. Property and Real Estate Law:  Revised Land Registration Rules" (with Nicholas C. Howson), *East Asian Executive Reports*, vol. 18, no. 4 (April 15, 1996): 9, 13-17

"Implementation of Central Policy and the Law in China," *European Association for Chinese Law Information Bulletin* (1991)

"Foreign Economic Laws and Bureaucracy in China," *European Association for Chinese Law Information Bulletin*, vol. 5, no. 4 (December 1989): 3-7

Review of Frank K. Upham, *Law and Social Change in Postwar Japan* (1987), in *Bulletin of the School of Oriental and African Studies* (1989)

Contribution on the People's Republic of China for "Crime and Punishment" section of the *Encyclopaedia Britannica* (1989)

Review of Michael J. Moser (ed.), *Foreign Trade, Investment, and the Law in the People's Republic of China* (2nd ed. 1987), in *Lloyd's Maritime and Commercial Law Quarterly*, 1989, Part 1: 129-130 (February 1989)

"Relief on the Way for Foreign Investors," *South* (June 1987): 32

Review of J. Oldham (ed.), *China's Legal Development* (1986), in *China Quarterly*, no. 109 (March 1987): 122-123

Review of D.T.C. Wang, *Les sources du droit de la République populaire de Chine* (1982), in *China Quarterly*, no. 108 (December 1986): 727-728

Review of M.D. Pendleton, *Intellectual Property Law in the People's Republic of China* (1986), in *European Intellectual Property Review*, vol. 8, no. 10 (October 1986): 323-324

Review of D. Solinger, *Chinese Business Under Socialism. The Politics of Domestic Commerce, 1949-1980* (1984), in *China Quarterly*, no. 106 (June 1986): 348-350

Review of P. Gladwin & A. Hameed, *Guide to the Patent Law of the People's Republic of China* (1985), in *European Intellectual Property Review*, vol. 8, no. 5 (May 1986): 160

"China's New Rule of Law," *Britain-China*, no. 31 (Spring 1986): 11-14

"Proposed Consent Agreement Between General Motors Corporation and Toyota Motor Corporation," *Harvard International Law Journal*, vol. 25, no. 2 (Spring 1984): 421-427


## LECTURES, INTERVIEWS, PRESENTATIONS, AND CONFERENCE APPEARANCES

"Anti Anti-Orientalism, or Is Chinese Law Different?", invited lecture, University of Michigan Center for Chinese Studies Occasional Lecture Series, Ann Arbor, MI, March 25, 2015

"Anti Anti-Orientalism, or Is Chinese Law Different?", keynote address, *Law and the Legal Profession in China Conference*, University of Pittsburgh School of Law, Pittsburgh, PA, Feb. 27, 2015

"The Bonding Effect in Cross-Listed Chinese Companies: Is It Real?", conference paper presented at *Public and Private Enforcement of Company Law and Securities Regulation — China and the World*, sponsored by Chinese University of Hong Kong, University of Michigan Law School, and University of Michigan Center for Chinese Studies, Hong Kong, Dec. 13, 2014

"China's Stealth Urban Land Revolution," invited lecture at Fall 2014 Speaker Series, Institute for the Study of International Development, McGill University, Montreal, Canada, Nov. 27, 2014

"Fourth Plenum Legal Reforms and Their Implications for US-China Relations," talk presented at conference on *Corruption, Constitutionalism & Control: Implications of the 4th Plenum for China and U.S.-China Relations*, Woodrow Wilson International Center for Scholars, Washington, DC, Nov. 25, 2014

"Local Government Financing Vehicles in China and their Debt: The Legal Picture," talk presented at Sigur Center for Asian Studies, George Washington University, Nov. 25, 2014

"Legal Developments in China Since the Third Plenum," panel presentation at American Association for Chinese Studies Annual Meeting, Washington, DC, Oct. 11, 2014

"The Significance of Recent Detentions for the Rule of Law in China," testimony before the Congressional-Executive Commission on China, Washington, DC, April 8, 2014

Interviewed for the United States-China Policy Foundation's *China Forum*, available at http://youtu.be/7hfwjStUcDs, April 2, 2014

Moderator for panel on "Wider Implications of Asian Maritime Tensions," Mansfield Foundation conference on *Maritime and Territorial Disputes in East Asian Waters*, Washington, DC, Feb. 12, 2014

Speaker at Third Annual China Intellectual Property Conference, George Washington University Law School, Washington, DC, Dec. 11, 2013

"Legal Aspects of Entrepreneurship in China," presentation at US-China Legal Exchange (co-organized by U.S. Department of Commerce and P.R.C. Ministry of Commerce), George Washington University Law School, Washington, DC, Dec. 3, 2013

"China's Stealth Urban Land Revolution," seminar presentation, Yale Law School, April 4, 2013

"China's Stealth Urban Land Revolution," seminar presentation, Columbia Law School, March 1, 2013

Participant in *Fourth Sino-American Dialog on Rule of Law and Human Rights*, sponsored by the National Council on US-China Relations and the China Foundation for Human Rights Development, Haikou, China, Dec. 3-7, 2012

Discussant at *Festschrift Conference in Honor of Professor John Haley: Law in Japan and Its Role in Asia – Between East and West*, University of Washington School of Law, Seattle, Oct. 19, 2012

"China's Stealth Urban Land Revolution," invited lecture at University of Amsterdam, June 18, 2012

"China's Informal Constitutional Order," presentation at *Social Change and the Constitution: A Conference on the Occasion of the 30th Anniversary of the 1982 Constitution of the People's Republic of China*, Free University of Berlin, June 15-17, 2012

"Local Government Bonds in China: What's Behind Them?", presentation at *Shanghai Forum 2012*, sponsored by Fudan University and Korean Foundation for Advanced Studies, Shanghai, May 27, 2012 (in Chinese)

"China's Stealth Urban Land Revolution," presentation at *Perspectives on Chinese Law* conference, George Washington University Law School, Washington, DC, April 13, 2012

Panelist in "Who Makes Your iPhone? China Migration, Labor, and Human Rights," *Program in Public Law*, Duke Law School, Durham, NC, April 4, 2012

Panelist in "China's Environmental Policy," Duke Law School, Durham, NC, March 29, 2012

Interviewed by Radio Australia on recent developments in Chinese law, Mar. 21, 2012

Roundtable participant in conference on *Democracy in China and Southeast Asia: Local and National Perspectives*, Princeton University, Princeton, NJ, March 15, 2012

"China's Stealth Urban Land Revolution," Duke Law School, Durham, NC, Feb. 29, 2012

Participated in panel on "The Rule of Law and Economic Background" at conference on *Patents, Trade, and Innovation in China*, George Washington University Law School, Washington, DC, Dec. 13, 2011

Panelist at NYU Law School's *17th Annual Timothy A. Gelatt Dialogue on the Rule of Law in Asia, China's Quest for Justice: Law and Legal Institutions Since the Empire's Collapse*, Nov. 7, 2011

"Zhongguo de yinxing chengshi tudi geming" (China's Stealth Urban Land Revolution), presentation to Hongfan Institute of Law and Economics, Beijing, June 25, 2011 (in Chinese)

"Recent Developments in China's Legal System and Their Implications for Rule of Law," presentation sponsored by Economist Intelligence Unit, Shanghai, May 27, 2011

"Derivative Actions in China," invited lecture at Hong Kong University Faculty of Law, Hong Kong, May 12, 2011

Commentator, conference on *Criminal Justice in China: Comparative Perspectives*, sponsored by Chinese University of Hong Kong, Hong Kong, May 7-8, 2011

"Derivative Actions in China," presentation to faculty at Fordham University Law School, New York, March 7, 2011

"Derivative Actions in China," presentation to faculty at Duke University Law School, Durham, March 3, 2011

Discussant, *Second Sino-American Dialogue on the Rule of Law and Human Rights*, sponsored by the National Council on US-China Relations and the China Foundation for Human Rights Development, Xiamen, Dec. 7-8, 2011

"Transnational Litigation Involving China," presentation at conference on *Law and Business inChina*, sponsored by the Faculty of Law and the Asian Studies Program of Pontificia Universidad Católica de Chile, Santiago, Nov. 25-26, 2010

"Understanding the Chinese Legal System: Searching for the Right Paradigm," invited lecture at University of Buenos Aires Faculty of Law, Buenos Aires, Nov. 22,2010

"Is Chinese Law Different?", invited lecture at Universidad Torcuato Di Tella Faculty of Law, Buenos Aires, Nov. 22, 2010

"Governance and China's Evolving Relationship with Its Citizens," panel presentation at *Economist* conference *China Summit: China and the New World Disorder*, Beijing, Nov. 3, 2010

"Derivative Actions in the People's Republic of China," presentation at conference on *The Prospect of Structural Reform of the Corporate Legal System*, sponsored by Tsinghua University Faculty of Law, Beijing, Oct. 30-31, 2010

"The Interface Between the Regulation of China's Internal Market and the Global Trading System," seminar presentation, Yale Law School, Oct. 5, 2010

"The Interface Between the Regulation of China's Internal Market and the Global Trading System," seminar presentation, Columbia Law School, New York, Sept. 28, 2010

Commentator at conference on *The Global Financial Crisis and China's Development*, sponsored by the University of Chicago Center in Beijing and Renmin University School of Economics, Beijing, July 30-31, 2010

"Local Experimentation in the Chinese Legislative System," paper presented at *China-US Rule of Law Dialogue*, sponsored by the China-US Exchange Foundation, Beijing, July 29-30, 2010

"Shareholder Derivative Suits in China," invited lecture, Hong Kong University Faculty of Law, Hong Kong, June 1, 2010

Panelist on "Business Law" panel at George Washington University Law School-Georgetown University Law Center conference *Six Decades of Asian Law: A Celebration of Professor Jerome Cohen*, Washington, D.C., February 19, 2010

"Lawyers and the State in China: Recent Developments," testimony at hearing on *Human Rights and Rule of Law in China*, Congressional-Executive Commission on China, Washington, D.C., October 7, 2009

"Trends in Comparative Corporate Law Scholarship," panel presentation at Association of American Law Schools Mid-Year Conference, Long Beach, California, June 9, 2009

"Who and What Matters in Chinese Stock Markets: Implications for Regulation," presentation at symposium *A New Era Dawns for Asian Capital Markets*, Asia Law Society, University of Michigan Law School, Ann Arbor, 21 March 2009

"The Concept of the Extra-Legal in Chinese Law," presentation at Global Law Workshop, George Washington University Law School, Washington, D.C., 23 February 2009

"Is Chinese Law Different?", lecture presented at United States Naval Academy, Annapolis, Maryland, 13 February 2009

"Does Chinese Law Matter?", presentation to United States Treasury Department, Washington, D.C., 12 February 2009

"The Concept of the Extra-Legal in Chinese Law and Its Significance," lecture presented at seminar *Are Politics Really in Command? China and the Rule of Law*, Norwegian Centre for Human Rights, China Programme, Oslo, 16 January 2009

"Private Enforcement of the Public Interest in China: Potential and Pitfalls," lecture presented at UCLA Center for Chinese Studies, Los Angeles, 24 November 2008

"The Ecology of Corporate Governance in China," presentation at UCLA School of Law Faculty Colloquium, Los Angeles, 14 November 2008

"Selfishness in the Public Interest? The 'Private Attorney-General' in China," lecture presented at School of International Relations and Pacific Studies, University of California at San Diego, 30 October 2008

"New Developments in Chinese Property Law," presentation at 2008 US-China Business Law Conference at UCLA, Los Angeles, 24 October 2008

"The Ecology of Corporate Governance in China," presentation at University of Illinois Law School Faculty Workshop, Champaign, Ill., 20 October 2008

"Delaware's Dysfunctional Derivative Suit Doctrine," lecture presented at Faculty of Law, Renmin University, Beijing, 11 June 2008 (in Chinese)

"Three Concepts of the Independent Director," paper presented at Contemporary Corporate Law Scholarship Reading Group (seminar course conducted by Prof. Jeffrey Gordon, Columbia Law School), 23 April 2008

"Chinese Corporate Governance in Global Context," lecture presented at Yale University, sponsored by Yale Working Group on Corporate Governance and Millstein Center for Corporate Governance and Performance, 22 April 2008

"Corporate Governance Institutions in China," presentation at New York University School of Law Faculty Workshop, 14 April 2008

Commentator at *Conference on Law, Commerce and Development*, New York University School of Law, New York, 12 April 2008

Discussant at panel on *New Dimensions in China Watching: Internet Forums and the Study of Contemporary China*, Association for Asian Studies Annual Meeting, Atlanta, 3 April 2008

"Chinese Corporate Governance: All Sizzle, No Steak?", roundtable presentation at Council on Foreign Relations, New York, 19 November 2007

"The Institutional Environment of Chinese Corporate Governance," lecture presented at China House series on *The Legal Infrastructure of New China*, New York University, New York, 14 November 2007

"Forum Non Conveniens Issues in China-Related Litigation," presentation at *Global Justice Forum*, Columbia Law School, New York, 2 November 2007

"The Ecology of Chinese Corporate Governance," presentation at Chinese Law Workshop, Yale Law School, New Haven, 29 October 2007

"Private Attorney-General Litigation in China," paper presented at conference on *Chinese Justice*, Fairbank Center for East Asian Research, Harvard University, 12 October 2007

"The Ecology of Chinese Corporate Governance," lecture delivered at Max Planck Institute, Hamburg, Germany, 30 July 2007

Discussant at panel on *Comparative Corporate Governance: Law in Context*, Law and Society Association Annual Meeting, Berlin, 26 July 2007

"The Ecology of Chinese Corporate Governance," paper presented at panel on *Law and Development: The China Consensus?*, Law and Society Association Annual Meeting, Berlin, 26 July 2007

"China: Creating a Legal System for a Market Economy," report delivered at symposium on *Development and Reform of China's Legal and Judicial System: Review and Prospect*, sponsored by the Asian Development Bank, Beijing, 14-15 May 2007

Commentator, conference on *China's Financial System Reforms and Governance*, School of Advanced International Studies, Johns Hopkins University, Washington DC, 16 April 2007

"Is Chinese Law Different?", public lecture sponsored by East Asian Studies Program, Princeton University, Princeton, New Jersey, 10 April 2007

"The Role of Law in China's Economic Development," public lecture sponsored by Department of Economics, Middlebury College, Middlebury, Vermont, 5 April 2007

Panelist, "The Academic Perspective and Recent Research," *OECD-China Policy Dialogue on Corporate Governance*, sponsored by the OECD, Shanghai Stock Exchange, State Assets Supervision and Administration Commission, Chinese Securities Regulatory Commission, Development Research Center, Government of Japan, Global Corporate Governance Forum, and Millstein Center for Corporate Governance and Performance at Yale School of Management, 29-30 March 2007

Public lecture, "The Ecology of Chinese Corporate Governance," sponsored by Asian Institute of International Financial Law, Faculty of Law, University of Hong Kong, 2 March 2007

"The Rule of Law in China," roundtable discussion (with Jerome A. Cohen), MITRE Corporation, Washington, DC, 2 February 2007

Guest lecturer, National Taiwan University Faculty of Law, "The Institutional Environment of Corporate Governance in China" (in Chinese), 22 December 2006

Guest lecturer, New York University Law School, "Chinese Constitutional Law", 14 November 2006

"The Institutional Environment of Corporate Governance in China", lecture presented as part of Clarke Program Colloquium Series, Cornell Law School, 3 November 2006

"The Role of Non-Legal Institutions in Chinese Corporate Governance", paper presented at authors' workshop on *A Decade After Crisis: The Transformation of Corporate Governance in East Asia* sponsored by the Center of Excellence Program in Soft Law at the University of Tokyo, the Center on Financial Law at Seoul National University, and the Center for Japanese Legal Studies at Columbia Law School, Tokyo, 1 October 2006

"The Institutional Environment of Chinese Corporate Governance", paper presented at panel on *Legal Aspects of the Economic Transformation in China*, annual conference of the International Society for New Institutional Economics, Boulder, Colorado, 23 September 2006

"Law and the Economy in China: The Past Decade", paper presented at authors' workshop on *Developments in Chinese Law: The Last Ten Years*, sponsored by *The China Quarterly* and All Souls College, Oxford University, Oxford, UK, 15 September 2006

"The Institutional Environment of Corporate Governance in China and Its Policy Implications", paper presented at conference on *Corporate Governance in East Asia:*

*Culture, Psychology, Economics and Law*, Berkeley Center for Law, Business and the Economy, Boalt Hall School of Law, 5 May 2006

Guest lecturer, Yale Law School, "Recent Revisions to China's Securities Law", 4 April 2006

Commentator, Roundtable on "China's Emerging Financial Markets: Opportunities and Obstacles," Transactional Studies Program, Columbia Law School, New York, 19 January 2006

Speaker at Timothy A. Gelatt Memorial Dialog on Law and Development in Asia, New York University Law School, New York, 18 January 2006

Speaker and participant in workshop on administrative rule-making under China's new Securities Law, sponsored by the FIRST Initiative, the Finance and Economics Committee of the National People's Congress, and the World Bank, Beijing, 14-15 January 2006

Panelist, "The Globalization of American Law? Comparative Law and the New Legal Transplants", Section on Comparative Law, American Association of Law Schools annual meeting, Washington, DC, 5 January 2006

Panelist, "Improving the Fairness and Transparency of Judicial Decisions", conference on *Rule of Law Developments in China*, sponsored by the Bureau of Democracy, Human Rights, and Labor, Department of State, Washington, DC, 7 November 2005

Interviewed on BBC World Service on recent developments in death penalty procedures in China, 26 October 2005

"Lost in Translation: Legal Transplants in Chinese Corporate Law", Rowdget Young Visiting Fellow Lecture, University of Hong Kong Faculty of Law, Hong Kong, 4 June 2005

"The Independent Director in Chinese Corporate Governance", invited paper presented at 4th Asian Corporate Governance Conference, co-hosted by Asian Institute of Corporate Governance, Korea University and Center for Financial Law, Seoul National University, sponsored by World Bank Global Corporate Governance Forum, Seoul, 19-20 May 2005

"The Legacy of History in China's Legal System", paper presented at conference on *The Rule of Law: Chinese Law and Business*, Centre for Socio-Legal Studies, Oxford University, May 11-13, 2005

"The Emerging Private Sector and China's Legal System", paper presented at conference on *China's Economic and Sociopolitical Transformation: Measuring China's Emerging Private Sector and Its Impact*, Washington, DC, 22 April 2005

"How Do We Know When an Enterprise Exists? Unanswerable Questions and Legal Polycentricity in China", paper presented at conference on *New Scholarship in Chinese Law: A Celebration in Honor of Stanley Lubman*, Center for Chinese Legal Studies, Columbia Law School, New York, 15 April 2005

"Lost in Translation? Corporate Law in China", paper presented at conference on *Asia in a Globalizing World*, Center for East Asian and Pacific Studies, University of Illinois at Urbana-Champaign, 9 April 2005

Guest lecturer in course on "China and Globalization", Prof. Reuven Avi-Yonah, University of Michigan Law School, Ann Arbor, 1 April 2005

"Law, Institutions, and Property Rights", paper presented at conference on *China's Economy: Retrospect and Prospect*, Woodrow Wilson International Center for Scholars, Washington, DC, 2 March 2005

"Insider Trading Law in the United States and China", lecture presented in Chinese at East China University of Politics and Law, Shanghai, 25 November 2004

"Law, Property Rights, and Institutions" (with Peter Murrell and Susan Whiting), paper presented at conference on *China's Economic Transition: Origins, Mechanisms, and Consequences* (Part II), University of Pittsburgh, 5-7 November 2004

"The Independent Director in Chinese Corporate Governance", opening paper presented at conference on *Amendment of the Company Law* organized by the Legislative Affairs Office of the State Council, the China Securities Regulatory Commission, and the Shanghai Stock Exchange, 10 October 2004

"Insider Trading Law in the United States and China", talk presented to Shanghai Institute of Law and Economics, Beijing, 28 September 2004

"China's Proposed Bankruptcy Law", commentator at conference on *Legal and Financial Infrastructure Requirements for Residential Mortgage Securitization in China* organized by Beijing University School of Law, Center for Real Estate Law and Financial Law Institute, Beijing, 17 July 2004

"Does Law Matter in China?", talk presented at Global Business Center, University of Washington School of Business, 15 January 2004

"Why China Should Not Adopt United States Insider Trading Law", paper presented at conference on *Corporate Fraud and Governance: American and Chinese Perspectives* organized by Shanghai Jiaotong University and New York University School of Law, Shanghai, 16 December 2003

"Human Rights and Culture", paper presented at conference on *Sino-U.S. Human Rights Conference* organized by Georgetown University Law Center, Beijing, 14 December 2003

"The History of Corporate Governance in China", commentator at conference organized by Shanghai Institute of Law and Economics, Beijing, 15 November 2003

"Professional Ethics of Defense Lawyers", commentator at conference on *The Defense Functions of Lawyers and Judicial Justice* organized by the All-China Lawyers Association, the American Bar Association, Renmin University of China, and New York University School of Law, Beijing, 21 September 2003

"The Independent Director in Chinese Corporate Governance", lecture presented at Tsinghua University Faculty of Law, Beijing, 10 April 2003

"The Independent Director in Chinese Corporate Governance", paper presented to the School of Business and Management, Hong Kong University of Science and Technology, 7 March 2003

"Assessing the Value of Law in China's Economy" (with Peter Murrell and Susan Whiting), paper presented at conference on *China's Economic Transition: Origins, Mechanisms, and Consequences* (Part I), University of Toronto, 15-17 November 2002

"China's Entry into the WTO: Prospects for Compliance", paper presented at conference on *China's Accession to the World Trade Organization*, Georgetown University Law Center, 10 Oct. 2002

"How Do We Know When an Enterprise Exists? Unanswerable Questions and Legal Polycentricity in China", paper presented at conference on *The Reform of Corporate Law Under Global Competition*, Commercial Law Research Center of the Faculty of Law, Tsinghua University, Beijing, China, 15 Sept. 2002

"Zhongguo youdai fazhan duoyuanhua de jiandu jizhi" (China Has Yet to Develop a Multidimensional Monitoring Mechanism), *21 Shiji Jingji Baodao* (21st Century Economic Report), 19 Aug. 2002, p. 39, col. 1 (interview)

Testified before the Congressional-Executive Commission on China, Washington, D.C., on issues relating to China's compliance with its WTO commitments, 6 June 2002

"Business Regulation in the Bureaucratic State: Enterprise Law in China", paper presented at panel on *The Rule of Law and Enterprise Reform in China*, Association for Asian Studies annual meeting, 5 April 2002

"What WTO Accession Does *Not* Mean for China", paper presented at panel on *WTO and the International Rule of Law*, American Society of International Law annual meeting, 15 March 2002

Testified before United States-China Security Review Commission, Washington, DC, on issues relating to China's WTO accession, 18 Jan. 2002

"The Independent Director in Chinese Corporate Governance", paper presented at conference on "Protection of Investors' Interests: International Experience and Chinese Practice", Commercial Law Research Center of the Faculty of Law, Tsinghua University, Beijing, China, 18-19 November 2001

"Economic Development and the Rights Hypothesis: The China Problem", paper presented at conference on *Law Reform in Developing and Transitional Economies*, Ulaanbaatar, Mongolia, 2-3 July 2001

Interviewed for feature entitled "Detained in China", broadcast on PBS, *The News Hour with Jim Lehrer*, 18 May 2001 <http://www.pbs.org/newshour/bb/asia/jan-june01/detained_05-18.html>

"Empirical Research in Chinese Law," paper presented to Rule of Law Workshop, Stanford Law School, 18 April 2001

"Transparency in China's Regulation of International Trade," presentation made to audiences from Chinese government, business, and academia in Beijing and Shanghai as part of 5-member United States government mission, 13-25 March 2000

"Courts and Markets in Post-Socialist Transition: China," paper presented at workshop on *Courts and Markets in Post-Socialist Transition*, University of Wisconsin School of Law, 3 March 2000

"Incentives and the Top-Down Model of Regulation in Chinese Land Law," paper presented (in Chinese) at *International Conference on the Legal Framework for Rural Land Use Rights in China*, China Institute for Reform and Development, Haikou, Hainan Province, China, 12-14 January 2000

"Corporate Governance in China," paper presented to members of Project on Corporate Governance in China, Stanford University, Stanford, California, 29 October 1999

"Alternative Approaches to Chinese Law," lecture delivered at UCLA School of Law, Los Angeles, 28 October 1999

Panelist on "Rule of Law in China – Recent Developments and Prospects," Inaugural Session of Global Business Briefing Series, Pacific Council on International Relations, Los Angeles, 28 October 1999

"Misunderstanding Chinese Law: The Lure of the 'Rule of Law' Paradigm," lecture delivered at Faculty of Law, City University of Hong Kong, 27 September1999

Guest lecturer, Chinese administrative law class of Prof. Wang Xixin, Beijing University Faculty of Law, Beijing, China, 23 September 1999

"Bankruptcy in Capitalist and Reforming Socialist Economies," brief course taught to delegation of North Korean legal officials and academics at Beijing University, Beijing, China, 20-23 September 1999

"Misunderstanding Chinese Law: The Lure of the 'Rule of Law' Paradigm," lecture delivered at Faculty of Law, Waseda University, Tokyo, Japan, 23 June 1999

"The Enforcement of Civil Judgments in China," lecture delivered at Faculty of Law, Waseda University, Tokyo, Japan, 19 June 1999

"China's Revised Criminal Law," paper presented at conference on *Contemporary Chinese Legal Development*, sponsored by Chinese Law Society of America, Harvard Law School, Cambridge, Mass., 26-27 March 1999

"Alternative Approaches to Chinese Law," lecture delivered at Yale Law School, 25 March 1999

Commentator, conference on *Administrative Law Reform in China*, sponsored by UCLA Center for Chinese Studies, International Studies & Overseas Programs, UCLA School of Law and Southern California China Colloquium, Los Angeles, 6 March 1999

Participant, *U.S.-China Symposium on the Legal Protection of Human Rights*, The Aspen Institute, 11-13 December 1998

"Private Enforcement of Intellectual Property Rights," paper presented at *Sino-U.S. Conference on Intellectual Property Rights and Economic Development: 1998 Chongqing*, sponsored by the National Bureau of Asian Research, Chongqing, China, 16-18 September 1998

Commentator, conference on *Law and Development in Asia*, co-sponsored by Asian Development Bank and Harvard University, Council on Foreign Relations, New York, 21 May 1998

"Introduction to U.S. Capital Markets for Chinese Enterprises," speech (in Chinese) presented at Investment Promotion Forum sponsored by United Nations Industrial Development Organization, Beijing, 31 March 1998

"Legal Order as a Prerequisite for Cooperation: The China Problem," paper presented at *Inaugural University of California at San Diego Social Sciences Research Conference on Cooperation Under Difficult Conditions*, Graduate School of International Relations and Pacific Studies, 18 October 1997

"Recent Developments in Criminal and Administrative Punishments in China," paper presented at University of Washington School of Law Conference on Asian Law, Seattle, Washington, 3 August 1996

"Enforcement of International Awards Involving China and Hong Kong," paper presented at EuroForum conference on *Dispute Resolution in China and Hong Kong*, London, 31 May 1996

"China and the WTO," paper presented at American Conference Institute conference on *Doing Business in China and Hong Kong*, New York, 10 May 1996

"Recent Developments in Chinese Foreign Investment Law," talk presented at conference on *Trade and Investment in Emerging Markets: China and India*, New York University School of Law, 17 November 1995

Commentator on China at *Timothy A. Gelatt Dialogue on Law and Development in Asia*, New York University School of Law, 14 September 1995

"Round Pegs and Square Holes: China and the GATT," paper presented at panel on *China in the World Economic Order* at the annual meeting of the Association for Asian Studies, Washington, DC, April 1995

"Civil Rights in China," talk delivered to Civil Rights Committee of the Seattle-King County Bar Association, Seattle, March 1995

"Foreign Business Law and China's Application to the GATT/WTO," paper presented at 1990 Institute Conference on Chinese Foreign Trade and Investment Law, San Francisco, March 1995

"China and the GATT/WTO," talk delivered to the World Affairs Club, Juneau, Alaska, March 1995

"The Chinese Court System," paper presented at *Winter Workshop on East Asian Law*, Center for Pacific Rim Studies, University of California at Los Angeles, January 1995

"Enforcement of Civil Judgments in a Changing Society: A Chinese Example," paper presented at annual meeting of the Law and Society Association, Phoenix, Arizona, 17 June 1994

"The Enforcement of Civil and Economic Judgments in China," paper presented at symposium on *The Chinese Legal System*, sponsored by the China Quarterly and the

School of Oriental and African Studies, University of London, London, U.K., 10-12 May 1994

"GATT Membership for China?," paper presented at symposium on *Pacific Rim Trade*, University of Puget Sound School of Law, Washington, 5 November 1993

"The Creation of a Legal Structure for Market Institutions in China," paper presented at conference on *The Evolution of Market Institutions in Transition Economies*, Graduate School of International Relations and Pacific Studies, University of California, San Diego, 14-15 May 1993

Chair/discussant at panel on "Theoretical Perspectives in China's Legal Reform," conference on *Chinese Law -- A Re-Examination of the Field: Theoretical and Methodological Approaches to the Study of Chinese Law*, Faculty of Law, University of British Columbia, Vancouver, 22 March 1993

"Research Methodologies in Chinese Law," paper presented at conference on *Chinese Law - - A Re-Examination of the Field: Theoretical and Methodological Approaches to the Study of Chinese Law*, Faculty of Law, University of British Columbia, Vancouver, 22 March 1993

"Enforcement of Civil Judgments in China," talk delivered at *China Studies Seminar*, University of British Columbia, October 1992

Discussant at conference on *The Modernization of Chinese Law on Both Sides of the Taiwan Straits*, National Taiwan University College of Law, September 1992

"Enforcement of Civil Judgments in the People's Republic of China: Notes from the Field," talk delivered at Attorney-General's Chambers, Hong Kong, August 1992

"Dispute Resolution in China," talk delivered at Chinese University of Hong Kong, November 1991

Interviewed on modern Chinese law for program on East Asian legal systems broadcast by BBC World Service (London), September 1991

Discussant at panel on *New Perspectives on Chinese Economic Development*, Western Economic Association Annual Conference, Seattle, 30 June-3 July 1991

"The Trials of the June 4th Defendants," talk delivered at *East Asian Legal Studies Lunchtime Colloquium*, Harvard Law School, 22 March 1991

"What's Law Got to Do with It? Legal Institutions and Economic Reform in China," talk delivered at *East Asian Legal Studies Workshop*, Harvard Law School, 21 March 1991

Guest lecturer, Chinese law class of Prof. William C. Jones, Washington University School of Law, St. Louis, Missouri, 30 January 1991

"Legal Problems of Industrial Economic Reform in China," talk delivered to *Faculty Forum*, Washington University School of Law, St. Louis, Missouri, 30 January 1991

Speaker and panel chairman, "Chinese Business Law," at *China Trade Update: Doing Business with China in the 1990s*, conference sponsored by the Washington State China Relations Council, Seattle, Washington, 5 November 1990

"The Future of Democracy in China," panel discussion sponsored by the Council of International Organizations, Citizens International Center, Seattle, Washington, 21 April 1990

"Why Laws Fail: Central Legislation and the Structure of the Chinese Polity," paper delivered at *Winter Workshop on East Asian Law*, Center for Pacific Rim Studies, University of California at Los Angeles, 20 January 1990

"The Legal Background to the Behavior of State-Owned Enterprises," paper delivered at conference on *Ownership Reforms and Efficiency of State-Owned Enterprises* sponsored by the Institute of Economics of the Chinese Academy of Social Sciences and the Ford Foundation, Shenzhen, China, 6 January 1990

"Implications of Recent Events in China for Sino-U.S. Relations," panel discussion sponsored by U.S.-China People's Friendship Association and the East Asian Resource Centre, University of Washington, 11 July 1989

"Law and Economic Reform in China," *London China Seminar*, School of Oriental and African Studies, University of London, 19 May 1988

"Urban Enterprises and the Role of Law in China's Economic Reforms," Conference on *The Chinese Developmental State: Change and Continuum*, Institute of Development Studies, University of Sussex, 7-9 April 1988

Interviewed for feature entitled "How is China Run?", broadcast on BBC World Service, *The World Today*, 25 March 1988

"The 13th Congress of the Chinese Communist Party and China's Legal Reforms," Asian Studies Centre, St. Antony's College, Oxford University, 8 March 1988

"Chinese Economic and Legal Reforms," John F. Kennedy School of Government, Harvard University, 24 March 1987

Co-organizer and discussant, Conference on *China: Law and Trade 1986*, School of Oriental & African Studies, University of London, 30 June 1986

"The Role of Law in Modern China," Great Britain China Centre, London, 17 April 1986

"The Foreign Economic Contract Law," Law-China Society Seminar on China's Economic Laws, London, 17 April 1986

# Exhibit B



# 营业执照

## （副 本）

注 册 号　100000000000485（10-1）

| | |
|---|---|
| **名　　称** | 中国建筑材料集团有限公司 |
| **类　　型** | 有限责任公司(国有独资) |
| **住　　所** | 北京市海淀区复兴路17号国海广场2号楼（B座） |
| **法定代表人** | 宋志平 |
| **注 册 资 本** | 619133.857284 万人民币 |
| **成 立 日 期** | 1981年09月28日 |
| **营 业 期 限** | 长期 |
| **经 营 范 围** | （无）. |

建筑材料及其相关配套原辅材料的生产制造及生产技术、装备的研究开发销售；新型建筑材料体系成套房屋的设计、销售、施工；装饰材料的销售；房屋工程的设计、施工；仓储；建筑材料及相关领域的投资、资产经营、与以上业务相关的技术咨询、信息服务、会展服务；矿产品的加工及销售。（依法须经批准的项目，经相关部门批准后方可开展经营活动）



仅限　石膏板案件领用

登 记 机 关



2014 年 12 月 05 日

企业信用信息公示系统网址: http://gsxt.saic.gov.cn/zjgs　　　　　　　中华人民共和国国家工商行政管理总局监制

# Exhibit C

# 中国建筑材料集团有限公司章程

## 第一章　总则

**第一条**　为维护公司、出资人和债权人的合法权益，规范中国建筑材料集团有限公司的组织和行为，根据《中华人民共和国公司法》（以下简称《公司法》）、《企业国有资产监督管理暂行条例》（以下简称《条例》）等法律、行政法规及规范性文件，制定中国建筑材料集团有限公司章程。

**第二条**　公司名称。

中文全称：中国建筑材料集团有限公司，简称：中国建材集团；

英文全称：CHINA NATIONAL BUILDING MATERIAL GROUP CORPORATION，简称：CNBM。

**第三条**　公司住所：北京市海淀区复兴路 17 号国海广场 2 号楼（B 座）。

邮政编码：100036。

**第四条**　公司注册资本为人民币陆拾壹亿玖仟壹佰叁拾叁万捌仟伍佰柒拾贰元捌角肆分（6,191,338,572.84 元），实收资本为人民币陆拾壹亿玖仟壹佰叁拾叁万捌仟伍佰柒拾贰元捌角肆分（6,191,338,572.84 元）。

**第五条**　公司是依照《公司法》规定设立的国有独资公司，享有法人财产权，并以全部财产对公司的债务承担责任。

**第六条**　公司董事长为公司法定代表人，对外代表公司。

**第七条**　公司依法自主从事经营活动，遵守国家法律、行政法规，遵守社会公德、商业道德，诚实守信，接受政府和社会公众的监督，承担社会责任。

公司的合法权益受法律保护，不受侵犯。

**第八条**　公司根据中国共产党章程的规定，设立中国共产党的组织，开展党的活动。公司中的党组织发挥政治核心作用，参与公司重大问题的决策。公司为党组织的活动提供必要条件。

**第九条**　公司职工依照《中华人民共和国工会法》、《公司法》及有关法律法规的规定，组织工会，开展工会活动，维护职工合法权益；

通过职工代表大会或其他形式，实行民主管理。公司为本公司工会提供必要的活动条件。

第十条　本章程对公司、出资人、董事、监事、高级管理人员均具有法律约束力。

## 第二章　经营宗旨和经营范围

第十一条　公司经营宗旨为：秉承"善用资源，服务建设"的核心理念，以科技创新为先导，对行业和社会资源进行优化整合，坚持循环经济道路，大力推进水泥、玻璃等产业的联合重组、结构调整与节能减排，大力发展新型建材、新型节能房屋、新能源材料和领先的技术及成套装备，为城乡发展与城镇建设、节能省地型建筑和国家重点工程提供优质产品和服务，努力建设创新绩效型、资源节约型、环境友好型、社会责任型企业，成为具有国际竞争力的行业排头兵，为行业和社会的可持续发展贡献力量。

第十二条　公司经营范围为：建材产品、建材与相关行业装备及其配套原辅材料的制造、销售、技术研发与服务、工程与工程设计总承包；新型建筑材料体系成套房屋的设计、制造、销售、工程承包；装饰材料工厂、房屋工程的设计、施工；建筑材料和相关领域的投资、资产经营、国内外贸易与物流、技术咨询、信息服务、会展服务；组织成员企业进行非金属矿的生产与销售。

## 第三章　出资人

第十三条　公司由国家单独出资，国务院国有资产监督管理委员会（以下简称国资委）代表国务院履行出资人职责。

第十四条　公司不设股东会，国资委依照《公司法》、《条例》等法律、行政法规的规定，行使以下职权：

（一）决定公司的经营方针，批准公司主业及调整方案，并从中央企业布局和结构调整方面审核公司的发展战略和规划；

（二）委派和更换非由职工代表担任的董事，决定其报酬事项，对董事会、董事履职进行评价；

（三）依照有关规定代表国务院派出监事会；

（四）批准董事会的报告；

（五）批准监事会的报告；

（六）批准公司的年度财务决算方案，并对公司年度财务预算方案进行备案管理；

（七）批准公司的利润分配方案和弥补亏损方案；

（八）决定公司增加或者减少注册资本；

（九）批准发行公司债券方案；

（十）决定公司合并、分立、解散、清算或者变更公司形式；

（十一）制定或批准公司章程及章程修改方案；

（十二）按照《企业国有资产法》、《企业国有产权转让管理暂行办法》（国资委 财政部令第 3 号）和《国有股东转让所持上市公司股份管理暂行办法》（国资委 证监会令第 19 号）等规定，批准有关非上市公司国有产权转让、上市公司国有股份转让、国有产权无偿划转及公司重大资产处置等事项；批准公司重大会计政策和会计估计变更方案；

（十三）按照《公司法》、《中华人民共和国审计法》、《中央企业财务决算报告管理办法》（国资委令第 5 号）和《中央企业经济责任审计管理暂行办法》（国资委令第 7 号）等规定，对企业年度财务决算、重大事项进行抽查审计，组织开展经济责任审计工作；

（十四）按照国务院和国务院有关部门关于国有资产基础管理、股份制改革、主辅分离、辅业改制和企业重大收入分配等行政法规和部门规章的规定，办理需由国资委批准或出具审核意见的事项；

（十五）国家法律、行政法规规定的其他职权。

**第十五条** 国资委确保公司依法享有的经营自主权，并依照有关规定授权公司董事会行使出资人的部分职权，决定公司有关重大事项。

国资委依照法律、行政法规和章程规定行使出资人权利，不得损害公司或公司债权人的利益。


## 第四章 董事会

### 第一节 董事会组成、职权和义务

第十六条　公司设董事会，由 11 名董事组成，其中外部董事 6 名，职工董事 1 名。

外部董事，指由非本公司职工担任的董事。除董事和董事会专门委员会有关职务外，外部董事不在公司担任其他职务，不负责执行层的事务。

董事会成员由国资委委派；其中职工董事由本公司职工代表担任，由公司职工民主选举产生。

第十七条　公司董事任期不超过 3 年，任期届满，经委派或选举可以连任。

董事任期届满未及时重新委派（职工董事未及时改选），或者董事在任期内辞职导致董事会成员低于法定人数的，在重新委派（或改选）的董事就任前，原董事仍应当依照法律、行政法规和公司章程的规定，履行董事职务。

第十八条　董事会对国资委负责，依照《公司法》和国资委授权行使下列职权：

（一）决定公司的年度经营目标和任期经营目标，并报国资委备案；

（二）决定公司经营计划、投融资计划和方案，批准公司的交易性金融资产投资和非主业投资项目；

（三）批准公司的年度财务预算方案，并报国资委备案；

（四）制订公司的年度财务决算方案，并报国资委批准；

（五）制订公司的利润分配方案和弥补亏损方案；

（六）制订公司增加或减少注册资本的方案及发行公司债券的方案；

（七）制订公司合并、分立、解散和变更公司形式的方案；

（八）制订公司章程草案及公司章程的修改方案；

（九）聘任或解聘公司总经理；负责对总经理的考核，决定其报酬；根据总经理的提名，聘任或解聘公司副总经理、总会计师；根据总经理的提议，决定副总经理、总会计师、总法律顾问的报酬；根据董事长的提名，聘任或解聘董事会秘书，对其进行考核并决定其薪酬；

（十）决定公司内部管理机构的设置、公司分支机构的设立和撤

销；

（十一）制定公司的基本管理制度；

（十二）根据国资委审核意见，决定公司的发展战略和中长期发展规划，并对其实施进行监控；决定公司年度重大固定资产投资计划、股权投资计划，并报国资委备案；

（十三）决定公司的风险管理体系，制订公司重大会计政策和会计估计变更方案，审议公司内部审计报告，决定公司内部审计机构负责人，决定聘用或者解聘负责公司财务会计报告审计业务的会计师事务所及其报酬，决定公司的资产负债率上限，对公司风险实施进行总体监控；

（十四）决定公司整体薪酬分配策略及制度；

（十五）依法对所出资企业（包括全资、控股和主要参股子公司（企业））履行资产受益、重大决策和派出董事、监事等股东职权；

（十六）听取总经理的工作报告，督促、检查董事会决议执行情况；

（十七）批准公司重大资产抵押、质押或对外担保；

（十八）除应由国资委批准的有关方案外，批准公司对外捐赠或赞助，并报国资委备案；

（十九）决定公司内部重大业务重组和改革事项；

（二十）建立与监事会联系的工作机制，按照监事会有关要求报送《企业年度工作报告》等文件并抄报相关材料，督导落实监事会要求纠正和改进的问题；

（二十一）国资委授予行使的出资人的职权；

（二十二）法律、行政法规规定的其他职权。

**第十九条**　董事会履行下列义务：

（一）执行国资委的决定，对出资人负责，维护公司利益；

（二）向国资委报告年度工作；

（三）向国资委提供真实、准确、全面的财务和运营信息，提供董事和经理人员的实际薪酬以及经理人员的提名、聘任和解聘的程序和办法等信息；

（四）维护公司职工、债权人和用户的合法权益；

（五）确保国家法律、行政法规在公司的执行。

**第二十条** 董事会应建立科学、民主、高效的重大事项决策机制，并制定董事会议事规则。

**第二十一条** 公司董事会设董事长 1 名，副董事长 1 名。董事长、副董事长由国资委从董事会成员中任命。

**第二十二条** 董事长行使以下职权：

（一）确定董事会会议议题；

（二）召集和主持董事会会议；

（三）组织制订实施董事会运作的各项规章制度，协调董事会的运作；

（四）签署董事会重要文件；

（五）督促、检查董事会决议的实施情况，听取公司经营管理情况的汇报；

（六）负责董事会与国资委的沟通，代表董事会向国资委报告工作；

（七）在发生不可抗力或重大危机情形，无法及时召开董事会会议的紧急状况下，对公司重大事务作出特别决定，并在事后向董事会报告；

（八）董事会授予的其他职权。

### 第二节　董事会会议

**第二十三条** 董事会会议由董事长召集和主持。董事长因特殊原因不能履行职务时，由董事长指定其他董事召集和主持；董事长不履行职务时，由半数以上董事共同推举一名董事或国资委指定一名董事召集和主持。

**第二十四条** 定期董事会会议每年至少召开 4 次，每季度召开一次，首次会议可以根据情况适当后延。

召开定期董事会会议，应在会议召开 10 日以前通知全体董事、监事会及其他列席人员。

有以下情形之一时，董事长应在接到提议后 3 个工作日内签发召开临时董事会会议的通知，并在 7 个工作日内召集和主持董事会会议：

（一）三分之一以上董事提议；

（二）监事会提议；

（三）董事长认为有必要；

（四）国资委认为有必要。

临时董事会会议通知的方式和时限，由董事会另行规定。

会议通知的内容应包括时间、地点、会期、议程、议题、通知发出日期等。

**第二十五条**　董事会会议应有二分之一以上的董事出席方可举行。

董事会决议分为普通决议和特别决议。董事会决议的表决，实行一人一票。董事会通过普通决议时，应经全体董事过半数同意；通过特别决议时，应经全体董事三分之二以上同意。

董事会审议本章程第十八条第（六）、（七）、（八）项所列事项时，应以特别决议通过；其他事项应以普通决议通过。

**第二十六条**　凡须经董事会决策的重大事项，应按本章程规定的时限通知所有董事、监事会及其他列席人员，并提供相应资料。

当三分之一以上董事或两名以上外部董事认为资料不充分或论证不明确时，可以书面形式联名提出缓开董事会会议或缓议董事会会议所议议题，董事会应予采纳。

**第二十七条**　董事会会议一般应以现场会议的形式召开。遇特殊情况，在保证董事能够充分发表意见的条件下，经董事长同意，可采用电话会议或其他方式开会并作出决议。

**第二十八条**　董事应亲自出席董事会。董事因特殊情况不能亲自出席董事会时，该董事可以提交授权委托书委托其他董事代为出席并行使表决权，授权委托书应载明授权范围。

董事连续两次未亲自出席董事会会议也未委托其他董事的，或者在一年内未出席董事会会议占 3/4 以上的，视为不能履行董事职责，董事会（或监事会）应提请国资委予以解聘。

**第二十九条**　董事会应对会议所议事项做成会议记录。会议记录应包括会议召开的日期、地点、主持人姓名、出席董事姓名、会议议程、议题、董事发言要点、决议的表决方式和结果（同意、反对或弃

权的票数及投票人姓名）等内容。董事会秘书整理会议记录并形成会议纪要，出席会议的董事和列席会议的董事会秘书应在会议记录上签名。由董事会秘书负责归档保管会议记录和会议纪要，保管期 20 年。

### 第三节　董事会专门委员会

**第三十条**　董事会下设战略与投资委员会、提名委员会、薪酬与考核委员会和审计与风险管理委员会。董事会也可根据需要设立其他专门委员会。

董事会专门委员会是董事会下设的专门工作机构，为董事会重大决策提供咨询、建议。除非董事会授权，专门委员会不享有决策权。

董事会可根据需要聘请公司有关专家、学者组成非常设专家咨询机构，为公司提供专业咨询意见。

**第三十一条**　董事会专门委员会由公司董事组成，成员由董事会选举产生，对董事会负责。召集人由董事长提名，董事会通过。

**第三十二条**　战略与投资委员会主要负责拟订公司发展战略和中长期发展规划；对须经董事会批准的重大投融资项目、重组及转让公司所持股权、企业改革等事项进行研究并向董事会提出建议。

战略与投资委员会由 6 名董事组成，其中外部董事 3 人，由董事长担任召集人。

**第三十三条**　提名委员会主要负责研究公司总经理及其他高级管理人员的选择标准、程序和方法，向董事会提出建议；对总经理提出的副总经理、总会计师人选，董事长提出的董事会秘书人选进行考察，向董事会提出考察意见；经董事会授权，对子企业董事、监事和不设董事会的子企业总经理人选进行考察，向董事会提出推荐意见。

提名委员会由 8 名董事组成，其中外部董事 4 名，由董事长担任召集人。

**第三十四条**　薪酬与考核委员会主要负责拟订公司总经理、副总经理、总会计师的考核标准、绩效评价程序和薪酬及奖惩办法，提交董事会；评审公司总经理、副总经理、总会计师履职情况并对其进行绩效考核评价；拟订总经理薪酬方案，评审总经理提出的副总经理、总会计师的薪酬方案，并向董事会提出建议。

薪酬与考核委员会由 4 名外部董事组成，由其中 1 名外部董事担任召集人，召集人由董事长提名，并经董事会审议通过。

**第三十五条**　审计与风险管理委员会主要负责评估、监督公司风险管理和内部控制体系的有效运行；建议聘请或更换外部审计机构，拟定其报酬方案；指导和监督公司内部审计机构工作。

审计与风险管理委员会由 4 名外部董事组成，由其中 1 名外部董事担任召集人，召集人由董事长提名，并经董事会审议通过。

审计委员会委员应当具备相当的会计、财务管理和法律知识。

**第三十六条**　董事会专门委员会履行职权时，各董事应充分表达意见，并尽量达成一致意见。意见不一致时，应向董事会提交各项不同意见并作说明。

专门委员会经董事会同意可聘请中介机构，费用由公司承担。

**第三十七条**　董事会专门委员会应制订工作规则，规定各专门委员会的组成、职责、工作方式、议事程序等内容，经董事会批准后实施。

### 第四节　董事会秘书

**第三十八条**　公司设董事会秘书 1 名，由董事长提名，董事会决定聘任或解聘。

公司董事或者其他高级管理人员可以兼任公司董事会秘书。

**第三十九条**　公司设立董事会办公室作为董事会常设工作机构，董事会秘书负责董事会办公室的工作。

**第四十条**　董事会秘书的职责：

（一）负责筹备董事会会议，准备董事会会议议案和材料；

（二）列席董事会会议，负责作董事会会议记录；

（三）准备和递交需要由董事会出具的文件；

（四）负责与董事的信息沟通和联络；

（五）为董事会及专门委员会的工作提供服务；

（六）负责公司信息披露事务；

（七）促使董事会的运作符合法律、法规、公司章程及其他有关规定；

（八）董事会授予的其他职责。

## 第五节　董事的权利、义务和责任

**第四十一条**　董事在任职期间享有以下权利：

（一）了解行使董事权利所需的公司有关信息；

（二）出席董事会会议，在董事会会议上充分发表意见，对表决事项行使表决权；

（三）对提交董事会会议的文件、材料提出补充要求；

（四）根据本章程的规定，提出召开临时董事会会议的建议；

（五）按照有关规定领取报酬、津贴；

（六）根据有关规定在履行职务时享有出差、办公等方面的待遇；

（七）向国资委反映有关情况；

（八）法律、行政法规规定的其他权利。

**第四十二条**　董事应承担以下义务：

（一）关注公司业务和事务，投入足够的时间和精力，谨慎、勤勉地履行董事职责；

（二）出席董事会会议和其他董事会活动，及时了解和掌握充分的信息，独立审慎地表决；

（三）遵守法律、行政法规和公司章程的规定，遵守诚信原则，不得利用在公司的地位和职权，为本人或他人谋取私利；

（四）忠实履行职责，维护出资人和公司利益，保守公司的商业秘密。

董事不再担任董事职务后，依照董事服务合约的约定，在一定期限内仍负有相关义务。

**第四十三条**　董事不得有以下行为：

（一）挪用公司资金或者擅自将公司资金借贷给他人；

（二）将公司资金以其个人名义或者其他个人名义开立账户存储；

（三）违反公司章程的规定，擅自以公司财产为他人提供担保；

（四）未经国资委同意，与本公司订立合同或者进行交易；

（五）利用职务便利为自己或者他人谋取属于公司的商业机会，自营或者为他人经营与所任职公司同类的业务；

（六）接受他人与公司交易的佣金；

（七）擅自披露公司的商业秘密；

（八）违反对公司忠实义务的其他行为。

违反前款规定所得的收入应当归公司所有。

董事不得利用职权收受贿赂或其他非法收入，不得侵占公司财产。

**第四十四条**　外部董事与公司不应存在任何可能影响其公正履行外部董事职务的关系。外部董事本人及其直系亲属近两年内未曾在公司和公司的全资、控股子企业任职，未曾从事与公司有关的商业活动，不持有公司所投资企业的股权，不在公司主管业务有直接竞争或潜在竞争关系的单位兼职。

**第四十五条**　有下列行为之一的，董事应当承担董事责任：

（一）违反法律、行政法规或者公司章程规定的董事义务，给公司造成损失的；

（二）董事会决议违反法律、行政法规或者公司章程规定，致使公司遭受损失，参与表决的董事无法证明其对该决议投反对票的。

**第四十六条**　董事主要以下述方式承担董事责任：

（一）经济赔偿。该赔偿系因董事责任导致的公司直接经济损失，或公司因承担连带责任而向第三方支付的赔偿金额；

（二）解聘董事职务；

（三）消除影响等其他方式。

## 第五章　总经理

**第四十七条**　公司设总经理 1 名，由董事会聘任或者解聘；设副总经理若干名，协助总经理工作，经总经理提名由董事会聘任或者解聘。

**第四十八条**　总经理对董事会负责，依照《公司法》、章程和董事会的授权行使以下职权：

（一）主持公司的生产经营管理工作，组织实施董事会决议；

（二）拟订并组织实施公司年度经营计划、融资计划和投资方案；

（三）拟订公司财务预算、决算方案；

（四）拟订公司利润分配和弥补亏损方案；

（五）拟订公司职工收入分配方案；

（六）拟订公司内部管理机构设置方案；

（七）拟订公司基本管理制度，制定公司具体规章；

（八）拟订公司改革、重组方案和资产处置方案；

（九）提请董事会聘任或者解聘公司副总经理、总会计师等高级管理人员；

（十）聘任或者解聘除应由董事会聘任或者解聘以外的负责管理人员；

（十一）统筹和协调子公司的经营管理活动；

（十二）提出公司对所出资企业行使资产受益、重大决策和选择企业主要负责人等股东权利相关的工作意见；

（十三）公司章程和董事会授予的其他职权。

**第四十九条** 总经理、副总经理、总会计师在行使职权时，不得变更董事会决议或超越其职权范围。应当根据法律、行政法规和公司章程的规定，履行诚信和勤勉的义务。

本章程第四十二条之（一）、（三）、（四）项以及第四十三条的规定，适用于总经理和公司其他高级管理人员。

**第五十条** 非董事总经理列席董事会会议。

**第五十一条** 公司决定生产经营管理中的重要问题，实行总经理办公会议制度。总经理应当制订工作规则，报董事会批准后实施。

总经理应当按照董事会和监事会的要求，及时报告公司重大合同的签订、执行情况、资金运用情况和盈亏情况等，并保证报告的真实性、客观性和全面性。

**第五十二条** 总经理可以在任期届满以前提出辞职。有关总经理辞职的具体程序和办法由总经理与公司之间的合同规定。

**第五十三条** 有以下情形之一的，董事会可解聘总经理：

（一）因年龄或身体原因，不适合继续担任总经理的；

（二）个人能力和行为不符合公司发展需求和道德规范的；

（三）经营行为违反法律、法规、公司章程规定，或明显损害投资人、公司合法权益，或因经营决策失误导致公司利益受到重大损失

的;

（四）擅自离职的;

（五）《公司法》规定的不适合继续担任总经理的其他情形。

## 第六章　监事会

**第五十四条**　监事会由国资委代表国务院派出，对企业的国有资产保值增值状况实施监督。监事会成员由国资委委派的监事和职工代表组成。其中职工代表 2 名，由公司职工民主选举产生。监事会主席由国资委指定。

**第五十五条**　监事会依照《公司法》、《国有企业监事会暂行条例》等有关规定履行监督职责。

## 第七章　民主管理和劳动管理

**第五十六条**　公司依照宪法和有关法律、行政法规的规定，通过职工代表大会和其他形式，实行民主管理。

**第五十七条**　公司根据《中华人民共和国劳动法》和国家其他有关法律、行政法规的规定，制定适合公司具体情况的劳动用工、工资分配、劳动保险、生活福利、社会保障等制度。

**第五十八条**　公司实行劳动合同制度，依法与职工签订劳动合同。

**第五十九条**　公司研究决定公司生产经营方面的重大问题、制定重要的规章制度，以及有关职工工资、福利、安全生产、劳动保护以及劳动保险等涉及职工切身利益的问题时，应当听取公司工会和职工的意见和建议。

依照法律、行政法规和国家有关规定，需要由公司职工代表大会或者职工大会审议通过的，从其规定。

## 第八章　财务、会计制度和审计

**第六十条**　公司依照法律、行政法规的规定，制定公司的财务、会计制度和内部审计制度。

**第六十一条**　公司会计年度采用公历日历年制，即每年公历 1 月

1 日起至 12 月 31 日止为一个会计年度。

公司采取人民币为记账本位币，账目用中文书写。

第六十二条　公司应当在每一会计年度终了后 120 天内制作财务报告，财务报告应当依照法律、行政法规的规定制作。

公司年度财务报告应经会计师事务所审计，并经公司董事会审议通过。

第六十三条　公司应在当年税后利润中提取 10%，列入公司法定公积金。

当法定公积金累计额达到公司注册资本的 50%时，公司可不再提取法定公积金。

第六十四条　公司在弥补亏损、提取法定公积金后，经国资委批准，可以提取任意公积金。

第六十五条　公司的公积金的用途限于下列各项：

（一）弥补亏损；

（二）扩大公司生产经营；

（三）转增公司注册资本。

资本公积金不得用于弥补公司的亏损。

法定公积金转为资本时，所留存的该项公积金不得少于转增前公司注册资本的 25％。

第六十六条　根据国资委《中央企业内部审计管理暂行办法》的规定，公司建立内部审计制度，配备专职审计人员，实行内部审计监督。

公司内部审计制度和审计人员的职责，应当经董事会批准后实施。内部审计部门接受董事会审计委员会的监督和指导。审计部门负责人向总经理和董事会审计委员会报告工作。


## 第九章　公司的合并、分立、终止和清算

第六十七条　公司合并或者分立，应当由国资委制定方案或者由公司董事会提出方案，报国资委批准。

第六十八条　公司的营业期限为永久存续。

第六十九条　有下列情形之一的，公司应当解散并依法进行清算：

（一）国资委决定解散；

（二）因公司合并或者分立需要解散；

（三）依法被吊销营业执照、责令关闭或者被撤销；

（四）人民法院依照《公司法》的规定予以解散。

第七十条　公司解散时，应依据《公司法》的规定成立清算组对公司进行清算，清算结束后，清算组应当制作清算报告，报股东确认，并报送公司登记机关，申请注销公司登记，公告公司终止。

## 第十章　附则

第七十一条　本章程由公司董事会制订，经国资委批准后生效。

第七十二条　有下列情形之一的，公司应当修改章程：

（一）《公司法》或有关法律、行政法规修改后，章程的规定与修改后的法律、行政法规相抵触；

（二）公司章程规定事项发生重大变化；

（三）国资委决定修改章程。

公司章程的修改，应报国资委批准。涉及公司登记事项变更的，依法办理变更登记。

第七十三条　本章程所称高级管理人员是指公司的总经理、副总经理、总会计师、董事会秘书和总法律顾问。

第七十四条　本章程所称"以上"、"以下"，均包括本数。

第七十五条　本章程由国资委授权公司董事会负责解释。

# Exhibit D





# Shareholding Structure of the Group

The following charts set out the simplified corporate structure of the Group as at the date of this report:



* *Sum of these shareholding percentages may differ from total due to rounding.*

**10**

# Shareholding Structure of the Group

The following chart sets out the simplified corporate structure of the Group as at the date of this report.



\*  All the above percentages are calculated by rounding to two decimal places.



**ANNUAL REPORT 2006**
**China National Building Material Company Limited**

# Shareholding Structure of the Group



The following chart sets out the simplified corporate structure of the Group as at the date of this report.

- All the above percentages are calculated by rounding to two decimal places.

11

Annual Report 2008

# Shareholding Structure of the Group

The following chart sets out the simplified corporate structure of the Group as at the date of this report.



- All the above percentages are calculated by rounding to two decimal places.

# Shareholding Structure of the Group 

The following chart sets out the simplified corporate structure of the Group as at 31 December 2009.



- All the above percentages are calculated by rounding to two decimal places.

# Exhibit E

# 批 准 证 书

〔2006〕商合境外投资证字第000872号

根据国家有关规定,经审查,同意

中建材集团进出口　　　　　　公司

在　　　美国　　　国家（地区）投资

设立境外企业。

主办单位须凭本证书在一年内办理外汇、银行、国有资产、税务、商检、海关、外事等有关部门所需手续。



二〇〇六年 八 月 八 日

| 境外企业名称 | 中 文 | 中国建材国际美国公司 | | |
|---|---|---|---|---|
| | 外 文 | | | |
| 国家/地区（中文） | | 美国 | 国家/地区（英文） | |
| 企业类别 | ☑ 一般境外投资类 | | ☐ 驻港澳企业类 | ☐ 境外加工贸易类 |
| 设立方式 | ☑ 新设 | ☐ 并购 | ☐ 参股 | ☐ 其他 |
| 投资方 | 中 方 | 中建材集团进出口公司 | | |
| | 其他方 | | | |
| 注册资本 | 10万美元 | 中 方 | 100 % | 其他方 % |
| 投资总额 | 10万美元 | 万美元 | 其他资金 | 万美元 |

| 实际投资 | 中 方 | 10万美元 | 现 汇 | 10万美元 |
|---|---|---|---|---|
| | | | 实 物 | 万美元 |
| | 其他方 | 万美元 | 现 汇 | 万美元 |
| | | | 实 物 | 万美元 |
| 经营年限 | 年 | 雇员数 人 | 内派人员 | 人 |
| 经营范围 | 从事货物和技术的贸易业务 | | | |
| 批准文件 | 商合批[2006]526号 | | | |
| 申报文件 | 中建材外发[2006]30号 | | | |
| 备 注 | | | | |

USD 30.000.-