```
 1              UNITED STATES DISTRICT COURT

 2              EASTERN DISTRICT OF LOUISIANA

 3    ********************************************************

 4    IN RE:  CHINESE-MANUFACTURED  MDL NO. 2047

      DRYWALL PRODUCTS LIABILITY

 5    LITIGATION                  SECTION:  L

 6    THIS DOCUMENT APPLIES TO      JUDGE FALLON

      ALL CASES

 7                                MAG. JUDGE WILKINSON

 8    ********************************************************

 9

             CONFIDENTIAL - SUBJECT TO FURTHER

10                  CONFIDENTIALITY REVIEW

11                 Wednesday, July 8, 2015

12                      — — —

13

14        Continuing Videotaped 30(b)(6) Deposition of

15    BEIJING NEW BUILDING MATERIALS PUBLIC LIMITED CO.

16    through the testimony of YU CHEN, held at the offices

17    of Phelps Dunbar LLP, 365 Canal Street, Suite 2000,

18    New Orleans, Louisiana, commencing at 9:08 a.m., on

19    the above date, before Michael E. Miller, Certified

20    Court Reporter (#27009), Registered Diplomate

21    Reporter, Certified Realtime Reporter.

22                      — — —

23              GOLKOW TECHNOLOGIES, INC.

            877.370.3377 ph | 917.591.5672 fax

24              deps@golkow.com

25
```

EXHIBIT 2

```
 1    A P P E A R A N C E S:
 2    COUNSEL FOR THE PLAINTIFF CLASS:
 3         HERMAN HERMAN & KATZ LLC
           BY:  RUSS M. HERMAN, ESQUIRE
 4              rherman@hhklawfirm.com
           820 O'Keefe Avenue
 5         New Orleans, Louisiana 70113
           (504) 581-4892
 6
 7         LEVIN FISHBEIN SEDRAN & BERMAN
           BY:  ARNOLD LEVIN, ESQUIRE
 8              alevin@lfsblaw.com
                SANDRA L. DUGGAN, ESQUIRE
 9              sduggan@lfsblaw.com
           510 Walnut Street
10         Suite 500
           Philadelphia, Pennsylvania 19106
11         (215) 592-1500
12
           IRPINO LAW FIRM
13         BY:  ANTHONY IRPINO, ESQUIRE
                airpino@irpinolaw.com
14              PEARL A. ROBERTSON, ESQUIRE
                probertson@irpinolaw.com
15         2216 Magazine Street
           New Orleans, Louisiana 70130
16         (504) 525-1500
17
           GAINSBURGH BENJAMIN DAVID MEUNIER &
18         WARSHAUER LLC
           BY:  RACHEL A. STERNLIEB, ESQUIRE
19              rsternlieb@gainsben.com
           2800 Energy Centre
20         1100 Poydras Street
           New Orleans, Louisiana 70163-2800
21         (504) 522-2304
22
           THE LAMBERT FIRM, PLC
23         BY:  HUGH P. LAMBERT, ESQUIRE
                hlambert@thelambertfirm.com
24         701 Magazine Street
           New Orleans, Louisiana 70130-3629
25         (504) 581-1750
```

```
 1    A P P E A R A N C E S:
 2    COUNSEL FOR TAISHAN GYPSUM COMPANY:
 3         ALSTON & BIRD LLP
           BY:  ALIYYA Z. HAQUE, ESQUIRE
 4              aliyya.haque@alston.com
           One Atlantic Center
 5         1201 West Peachtree Street
           Atlanta, Georgia 30309-3424
 6         (404) 881-7000
 7
      COUNSEL FOR BNBM DEFENDANTS:
 8
           DENTONS US LLP
 9         BY:  MICHAEL H. BARR, ESQUIRE
                michael.barr@dentons.com
10         1221 Avenue of the Americas
           New York, New York 10020
11         (212) 768-6700
12
           DENTONS US LLP
13         BY:  C. MICHAEL MOORE, ESQUIRE
                mike.moore@dentons.com
14              MATTHEW T. NICKEL, ESQUIRE
                matt.nickel@dentons.com
15         2000 McKinney Avenue
           Suite 1900
16         Dallas, Texas 75201
           (214) 259-0900
17
18         DENTONS HK LLP
           BY:  TODD LIAO, ESQUIRE
19              todd.liao@dentons.com
                ANNIE QIU, ESQUIRE
20              annie.qiu@dentons.com
           5th Floor The Center
21         989 Changle Road
           Shanghai, 200031 China
22         +86 21 2315 6000
23
24
25
```

```
 1    A P P E A R A N C E S :
 2    COUNSEL FOR BNBM DEFENDANTS:
 3         PHELPS DUNBAR LLP
           BY:  HARRY ROSENBERG, ESQUIRE
 4              harry.rosenberg@phelps.com
           365 Canal Street
 5         Suite 2000
           New Orleans, Louisiana 70130-6534
 6         (504) 566-1311
 7
 8    COUNSEL FOR CNBM DEFENDANTS:
 9         ORRICK HERRINGTON & SUTCLIFFE LLP
           BY:  KELLY M. DALEY, ESQUIRE
10              kdaley@orrick.com
           51 West 52nd Street
11         New York, New York 10119-6142
           (212) 506-5000
12
13         GORDON ARATA McCOLLAM DUPLANTIS & EAGAN LLP
           BY:  EWELL E. EAGAN, JR., ESQUIRE
14              eeagan@gordonarata.com
           201 St. Charles Avenue
15         40th Floor
           New Orleans, Louisiana 70170-4000
16         (504) 582-1111
17
18    COUNSEL FOR THE STATE OF LOUISIANA:
19         PERKINS COIE LLP
           BY:  DAVID L. BLACK, ESQUIRE
20              dblack@perkinscoie.com
           1900 Sixteenth Street
21         Suite 1400
           Denver, Colorado 80202
22         (303) 291-2400
23
24
25
```

Confidential - Subject to Further Confidentiality Review

```
 1    A P P E A R A N C E S:

 2    ALSO PRESENT:

 3         SUNNY WANG, MANDARIN INTERPRETER

 4         TONI XU, HERMAN HERMAN & KATZ LLC

 5         CALDER GABROY, HERMAN HERMAN & KATZ LLC

 6         MELISSA BARDWELL, VIDEOGRAPHER

 7                    —  —  —

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                        INDEX

                        YU CHEN

 2                    July 8, 2015

 3

 4       PROCEEDINGS                              13

 5

 6   EXAMINATION OF YU CHEN:

 7            BY MR. LEVIN                    14

 8            BY MS. DUGGAN                  148

 9

10       REPORTER'S CERTIFICATE                159

11

12

13   MARKED TESTIMONY REQUESTED BY MR. BARR      PAGE

14   Question by Mr. Levin                      80

15

16

17

18

19

20

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                    PROCEEDINGS

 2              (July 8, 2015 at 9:08 a.m.)

 3              THE VIDEOGRAPHER:  We are now on the

 4     record.  My name is Melissa Bardwell,

 5     videographer here for Golkow Technologies.  The

 6     date today is July 8th, 2015.  The time is

 7     approximately 9:08 a.m.

 8              The videotaped deposition is being held

 9     in New Orleans, Louisiana in reference to the

10     Chinese Manufactured Drywall Products Liability

11     Litigation.

12              The deponent today is Beijing New

13     Building Materials Public Limited Company.

14              The reporter is Mike Miller.  The

15     counsel will be noted for the stenographic

16     record, and the court reporter will now swear in

17     the witness.

18                    (Interpreter duly sworn.)

19                    (Witness duly sworn.)

20              MR. LEVIN:  For the record, Arnold

21     Levin, Levin Fishbein Sedran & Berman for the

22     Plaintiffs Steering Committee, and to my left is

23     Sandy Duggan, my partner from Levin Fishbein,

24     and to the right is Pearl Robertson from the

25     Arpino Firm in New Orleans.  And down there is
```

Confidential - Subject to Further Confidentiality Review

```
 1          Russ Herman.
 2               MR. BARR:  Michael Barr from Dentons
 3          U.S. LLP on behalf of BNBM Plc and the witness.
 4          To my left, my partner from Shanghai, Todd Liao,
 5          who will be assisting us to the extent any
 6          translation issues come up.  And I have various
 7          of my other colleagues here as well, but for the
 8          record, since the two of us will be the only
 9          ones speaking, at least that's my expectation at
10          present, I won't introduce further.
11               MR. LEVIN:  That's fine.  Ready on the
12          right?  Ready on the left?  Ready on the firing
13          line.
14                         YU CHEN,
15                having been duly sworn,
16                 testified as follows:
17                       EXAMINATION
18     BY MR. LEVIN:
19          Q    Mr. Chen, good morning.
20          A    Good morning.
21          Q    I'm going to ask you, over the next couple
22     days, a series of questions so I can get to know the
23     company you work for, your affiliates, your
24     subsidiaries, your related companies, and this,
25     really, enterprise that was set up especially in the
```

Confidential - Subject to Further Confidentiality Review

1    it?  The last comment was not a reply to a question,

2    was it, sir?

3              MR. BARR:  Objection.  The witness

4         answered as he answered.

5         A     What else do I need to answer?

6    BY MR. LEVIN:

7         Q     Well, what else do you need to volunteer?

8              MR. LEVIN:  Strike that.

9              MR. BARR:  Thank you.

10   BY MR. LEVIN:

11        Q     Who are the shareholders of Taishan?

12        A     It has five shareholders.  Do I need to list

13   them all?

14        Q     Certainly.

15        A     They include BNBM; and Beijing Donglian,

16   D-O-N-G-L-I-A-N, Investments Company; and Taihe

17   Construction Material Company; and Taian, T-A-I-A-N,

18   G-U-O, dash, T-A-I, dash, M-I-N, dash, A-N, Company,

19   Limited; and J-I-A, space, T-O-N-G, dash, C-H-U-N.

20        Q     What is the percentage of shares that BNBM

21   holds in Taishan?

22        A     BNBM directly owns 42%.

23        Q     And indirectly?

24        A     Another -- another shareholder, Beijing

25   Donglian Investment Company, is 100% owned by BNBM,

Confidential - Subject to Further Confidentiality Review

1    and this company owns 23% of Taishan Gypsum.

2        Q    Okay.  We'll get to the other ones later on.

3             Now, in connection with your

4    employment in BNBM, have you ever traveled to the

5    United States?

6             MR. BARR:  Other than in connection with

7        this deposition?

8             MR. LEVIN:  Yeah, other than in

9        connection with the deposition, which is

10       obviously in connection with your employment.

11       A    This is my first time in the United States.

12   BY MR. LEVIN:

13       Q    Welcome to America.

14       A    Thank you.

15       Q    During the time that you've been at BNBM,

16   from August of 2009 until present, have you witnessed

17   any of your colleagues traveling to the United States

18   in connection with the business of BNBM?

19       A    I don't have a clear recollection of that.

20       Q    Well, do you have an unclear recollection of

21   that, something that you'd like to share with me?

22       A    As far as I know, the staff -- the staff in

23   BNBM from 2009 to present -- well, the time is pretty

24   long.  I'm not sure.

25             THE WITNESS:  May I have a bottle of

Confidential - Subject to Further Confidentiality Review

1      water?

2                  MR. LEVIN:  Sure.

3                  MR. BARR:  He doesn't want yours.

4                  MR. LEVIN:  Nobody wants mine.  I

5      thought he'd put a mask on.

6      BY MR. LEVIN:

7        Q     You are the general manager of BNBM, are you

8      not?

9        A     Correct.

10       Q     You're involved in all of the activities

11     of -- commercial activities of BNBM, are you not?

12                 MR. BARR:  Objection to the form.

13                 You may answer.

14       A     All of them?  I'm only performing my

15     obligation, duty and rights as a general manager.  It

16     does not necessarily mean that I'm involved in all of

17     business activities of the company.

18     BY MR. LEVIN:

19       Q     Okay.  Are you involved in the accounting

20     department of the company?

21       A     Accounting department?  I'm not involved in

22     the financial department.

23       Q     Well, when somebody travels for the company,

24     do they submit travel vouchers, seek reimbursement of

25     expenses and have expenses approved by the company?

Confidential - Subject to Further Confidentiality Review

1     A     Correct.

2     Q     And if somebody came to the United States

3  from BNBM, that document would exist and be part of

4  BNBM's records that they keep in the normal course of

5  business, correct?

6     A     Correct.  For example, the air travel

7  expenses, as well as business travel expenses, would

8  need to be reimbursed, if any.

9     Q     Do you know, sir, who made the search at

10  BNBM of the financial documents to comply with the

11  requirements of the Court, the Eastern District of

12  Louisiana, in the production of documents for this

13  litigation?

14               (Interruption off the stenographic

15               record.)

16     A     If necessary, I would ask the person in

17  charge of the company's financial department to do

18  that.

19               MR. BARR:  I'm sorry, I interrupted the

20          witness.  Could we have the question asked

21          again?  My fault.

22               MS. DUGGAN:  The witness answered.

23               MR. BARR:  Did he?  Just let me see the

24          answer.  That's fine.

25               MR. LEVIN:  Okay.

Confidential - Subject to Further Confidentiality Review

1      A      Nine.

2   BY MR. LEVIN:

3      Q      And who are the shareholders of BNBM here

4   today, in 2014?

5                   MR. BARR:  '15.

6                   MR. LEVIN:  '15.  I'm always behind.

7      A      Shareholders?  We have more than 30,000

8   shareholders, and the numbers of the shareholders is

9   also changing because we are a public traded company.

10  BY MR. LEVIN:

11     Q      Okay.  Who is the -- who are the major

12  shareholders of BNBM?

13     A      The number one shareholder of BNBM is

14  CNBM Company, Limited.

15     Q      And what percentage of the shares does CNBM

16  have?

17     A      45.2%.

18     Q      And going down in the pecking order, who is

19  next in line?

20     A      The next in line are some institutions, and

21  they are also constantly changing.

22     Q      Well, let's talk about today.

23     A      The shareholders are disclosed in our annual

24  report.  If I am presented with the annual report in

25  front of me, I should be able to say it accurately.

Confidential - Subject to Further Confidentiality Review

```
 1              (Translation.)

 2      A     Mr. Jia, as the director of BNBM, would give

 3   a summarized report on Taishan, especially during the

 4   discussion of any report.

 5   BY MR. LEVIN:

 6      Q     And it was important for BNBM to know what

 7   Taishan was doing, was it not?

 8      A     In fact, what does Taishan do is not my

 9   utmost concern, because it is the responsibility of

10   Chairman Jia and Taishan.  For me, as a board director

11   and general manager, Taishan's performances is very

12   important because BNBM is -- is its biggest

13   shareholder.

14      Q     In fact, sir, you market your products

15   jointly, do you not?

16              MR. BARR:  Object to the form.

17      A     Our two companies, each has its independent

18   sales team and sales strategy, and the brand for the

19   sales are also different.

20   BY MR. LEVIN:

21      Q     Sir, isn't it a fact -- strike that.

22              BNBM manufactures DragonBoard; is that

23   correct?  That's your wallboard?

24      A     BNBM manufactures Dragon brand gypsum board.

25      Q     And Taishan manufactures a lesser-quality
```

Confidential - Subject to Further Confidentiality Review

```
 1                    REPORTER'S CERTIFICATE

 2

 3          This transcript is valid only for a transcript

 4     accompanied by my original signature and original

 5     required seal on this page.

 6          I, Michael E. Miller, Certified Court Reporter

 7     (LA Certificate #27009) in and for the State of

 8     Louisiana, as the officer before whom this testimony

 9     was taken, do hereby certify that YU CHEN, after

10     having been duly sworn by me upon authority of

11     R.S. 37:2554, did testify as herein before set forth

12     in the foregoing 162 pages; that this testimony was

13     reported by me in the stenotype reporting method, was

14     prepared and transcribed by me or under my personal

15     direction and supervision, and is a true and correct

16     transcript to the best of my ability and

17     understanding; that the transcript has been prepared

18     in compliance with transcript format guidelines

19     required by statute or by rules of the board, and that

20     I am informed about the complete arrangement,

21     financial or otherwise, with the person or entity

22     making arrangements for deposition services; that I

23     have acted in compliance with the prohibition on

24     contractual relationships, as defined by Louisiana

25     Code of Civil Procedure Article 1434
```

1   and in rules and advisory opinions of the board;

2   that I have no actual knowledge of any prohibited

3   employment or contractual relationship, direct or

4   indirect, between a court reporting firm and any party

5   litigant in this matter nor is there any such

6   relationship between myself and a party litigant in

7   this matter.  I am not related to counsel or to the

8   parties herein, nor am I otherwise interested in the

9   outcome of this matter.

10

11          Signed this ____ day of _____, 2015.

12

13

14          _____

15          MICHAEL E. MILLER, FAPR, RDR, CRR

16          Certified Court Reporter

17          LA Certified Court Reporter #27009

18

19

20

21

22

23

24

25

Confidential - Subject to Further Confidentiality Review

```
 1              UNITED STATES DISTRICT COURT

 2              EASTERN DISTRICT OF LOUISIANA

 3   ******************************************************

 4   IN RE:  CHINESE-MANUFACTURED  MDL NO. 2047

     DRYWALL PRODUCTS LIABILITY

 5   LITIGATION                   SECTION:  L

 6   THIS DOCUMENT APPLIES TO     JUDGE FALLON

     ALL CASES

 7                               MAG. JUDGE WILKINSON

 8   ******************************************************

 9

             CONFIDENTIAL - SUBJECT TO FURTHER

10               CONFIDENTIALITY REVIEW

11               Thursday, July 9, 2015

12                    — — —

13

14       Continuing Videotaped 30(b)(6) Deposition of

15   BEIJING NEW BUILDING MATERIALS PUBLIC LIMITED CO.

16   through the testimony of YU CHEN, held at the offices

17   of Phelps Dunbar LLP, 365 Canal Street, Suite 2000,

18   New Orleans, Louisiana, commencing at 9:09 a.m., on

19   the above date, before Michael E. Miller, Certified

20   Court Reporter (#27009), Registered Diplomate

21   Reporter, Certified Realtime Reporter.

22                    — — —

23           GOLKOW TECHNOLOGIES, INC.

         877.370.3377 ph | 917.591.5672 fax

24             deps@golkow.com

25
```

Confidential - Subject to Further Confidentiality Review

1      A      What do you mean by "commingled"?

2    BY MR. LEVIN:

3      Q      Well, it's all part of a consolidated

4    financial statement, is it not?

5      A      Each company has its own independent

6    financial statements.  As a public traded company,

7    BNBM would need to disclose its consolidated --

8    consolidated financial report, which includes the

9    financial report of Taishan Gypsum.

10     Q      Is it fair to say that the relationship

11   between BNBM and Taishan is all for one and one for

12   all?

13                   MR. BARR:  Object to the form --

14                   (Translation.)

15                   MR. BARR:  Object to the form of the

16        question.

17     A      Of course not.

18   BY MR. LEVIN:

19     Q      Well, BNBM was very much interested in

20   Taishan being a viable company, making money, selling

21   a lot of Chinese drywall board, were they not?

22     A      Very much interested?  We are its big

23   shareholder.

24                   THE INTERPRETER:  May the interpreter

25        inquire with the deponent?

Confidential - Subject to Further Confidentiality Review

1    regulations of public traded company, as well as

2    company charters.

3        Q     Well, my question to you is:  How does

4    company law and your charter make them the actual

5    shareholder -- actual controller?  What attributes do

6    they have to give them that rank?

7        A     First of all, this is a very professional

8    legal question.  My understanding is because it is

9    BNBM's controlling shareholder's controlling

10   shareholder.

11       Q     Well, control gives them certain rights to

12   control, does it not?

13                MR. BARR:  Objection to the form.

14       A     Can you specify what you said about control?

15   BY MR. LEVIN:

16       Q     Well, how does CNBM Group control BNBM?

17                MS. DALEY:  Objection to form.

18                MR. BARR:  Objection to the form.

19       A     Your question is not specific enough.

20   BY MR. LEVIN:

21       Q     Do you know the meaning of the word

22   "control"?

23                MR. BARR:  Objection to the form.

24       A     When it talks about controlling shareholder

25   and actual controller here, let's leave out "actual

Confidential - Subject to Further Confidentiality Review

1  controller" for a moment and only talk about the

2  controlling shareholder.

3          "Controlling shareholder" is referring

4  to that it has significant influence on the company's

5  voting rights.  It does not mean, however, that the

6  controlling shareholder will directly interfere or

7  control BNBM's daily management and operation.

8          BNBM's company charter specifically

9  defined shareholders -- controlling shareholder's

10  rights and obligations.  It has rights to the company,

11  as well as its obligations as the controlling

12  shareholder of the company.

13          THE INTERPRETER:  The interpreter need

14      to clarify with deponent.

15          (Translation.)

16  A     For example, when BNBM does business with

17  the controlling shareholder, the controlling

18  shareholder would shun from voting for a solution.

19          THE INTERPRETER:  Avoid, yeah.

20  A     These rights and obligations are clearly

21  defined in the company charter.

22  BY MR. LEVIN:

23  Q     Well, my question was with regard to --

24  thank you very much for your self-serving explanation.

25          MR. BARR:  Oh, come on, Arnold, cut the

Confidential - Subject to Further Confidentiality Review

1        crap and go -- let's just ask a question here.

2   BY MR. LEVIN:

3        Q     My question was with your actual controller.

4   What does the actual controller do?

5        A     "Actual controller" is also a legal

6   terminology.  It doesn't mean that it can directly

7   involve with, interfere with or control the daily

8   management and operation of BNBM.

9        Q     Well, what does he -- what does it control?

10       A     It is my controlling shareholder's

11  controlling shareholder.

12       Q     Does the actual controller control CNBM?

13              MR. BARR:  Object to the form.

14              MS. DALEY:  Objection, form.

15       A     CNBM Group is a controlling shareholder of

16  CNBM Company, Limited.

17  BY MR. LEVIN:

18       Q     Now, when you gave me this long explanation

19  of what the controlling shareholder and actual

20  controller did, you always couched your answers,

21  "control in the daily activities of BNBM"; is that

22  correct?

23              MR. BARR:  Objection to the form.  The

24         witness' testimony speaks for itself, given his

25         prior answers.

Confidential - Subject to Further Confidentiality Review

1   see whether Mr. Jia had already left the position of

2   director at the time.

3       Q    Well, until he left the position as a

4   director, he owned 5%, did he not?

5       A    Correct.

6       Q    And thereafter, as chairman of your

7   subsidiary, he continued to own 5%; is that correct?

8       A    Well, our company's chairman of the board --

9   our company's chairman of the board is Wang Bing.

10              Mr. Jia, Mr. Jia Tongchun, after he no

11  longer held a position of the director of BNBM, he

12  continued to own 5% of Taishan Gypsum Company's

13  Limited -- Limited share.

14      Q    Now, does this report reflect BNBM's

15  management control of the subsidiaries?

16              MS. EIKHOFF:  Object to form.

17              MR. BARR:  Object to form as well.

18      A    I don't -- I don't think this report

19  reflects that BNBM controls Taishan Gypsum's

20  production, operation and management.

21  BY MR. LEVIN:

22      Q    My question was:  Does the report reflect

23  BNBM's management control of the subsidiaries?

24              MR. BARR:  Objection, asked and

25          answered.

```
 1                    (Translation.)

 2                    MR. BARR:  Objection, asked and

 3          answered.

 4     A     I don't think BNBM controls Taishan Gypsum's

 5    production, operation and management.

 6    BY MR. LEVIN:

 7     Q     Does BNBM require subsidiaries to timely

 8    report important documents, such as the board meeting

 9    resolutions and general meeting resolutions, as well

10    as to regularly submit financial statements at the

11    same time the company -- at the same time?

12                    MR. BARR:  Objection to the form.

13     A     General resolutions here only require them

14    to submit in a timely manner the board of directors

15    resolution, the resolution of the shareholders

16    meeting, and regularly report the financial statement.

17                    MR. LIAO:  Excuse me.  You missed a

18          key --

19                    (Conference out of the hearing of the

20                    reporter.)

21                    MR. BARR:  Let's go off the record for a

22          second.

23                    THE VIDEOGRAPHER:  The time now is

24          3:50 p.m.  We're off the record.

25                    (Discussion off the record.)
```

Confidential - Subject to Further Confidentiality Review

1  supervision, urging and other control system

2  construction measures, and that would necessarily

3  enhance the hierarchy, systemization and effectiveness

4  of internal control?

5         MR. BARR:  Object to the form.

6         You may answer.

7     A    I agree with the internal self-evaluation

8  report.

9  BY MR. LEVIN:

10    Q    And the statement that I characterized from

11 that report?

12    A    I agree.

13    Q    And is it not -- strike that.

14         Is it a fact that BNBM appoints

15 members of Taishan's board?

16    A    There are five members in Taishan's board of

17 directors.  According to Taishan's company charter,

18 BNBM can nominate three.

19    Q    And you nominate three to ensure that

20 Taishan follows the requirements of this report, don't

21 you?

22         MR. BARR:  Object to the form.

23    A    I don't feel like I understood your

24 question.

25 BY MR. LEVIN:

Confidential - Subject to Further Confidentiality Review



19      Q      If you were sitting, sir, at a board meeting

20   of Taishan and you became aware that Taishan violated

21   the tenets of Exhibit 118, what we studied, would you

22   report the same to BNBM?

23                 MR. BARR:  Objection to form.  And

24        Exhibit 118 was which exhibit?  Was that --

25                 MR. LEVIN:  That's the one we're talking

 1         about.

 2                    MR. BARR:  Okay.  Object to the form.

 3                    (Translation.)

 4                    MR. BARR:  Object to the form.

 5      A     Your question had contained much

 6   information.  I don't quite understand it.

 7   BY MR. LEVIN:

 8      Q     Okay.  Let's do it by the numbers.

 9                    You're a director of Taishan, correct?

10      A     Correct.

11      Q     You are an executive of BNBM, correct?

12      A     Correct.  I'm the general manager of BNBM.

13      Q     And at the pleasure of BNBM, you sit on

14   Taishan's board?

15                    MR. BARR:  Object to the form.

16                    MS. EIKHOFF:  Object to form.

17      A     BNBM nominated me as a nominee to the board

18   of directors of Taishan.  This decision was discussed

19   and approved by Taishan Gypsum's shareholders meeting.

20   BY MR. LEVIN:

21      Q     And if you are sitting in your capacity as a

22   director, a member -- strike that, a member of the

23   Taishan board, having been nominated by BNBM, and

24   being general manager for BNBM at the same time, and

25   you determined, sitting there, that Taishan was not

Confidential - Subject to Further Confidentiality Review

1   acting properly, would you report that to BNBM, where

2   you are general manager of BNBM?

3                   MR. BARR:  Object to the form.

4                   You may answer.

5                   (Translation.)

6       A    I would raise --

7                   THE INTERPRETER:  The interpreter needs

8          to clarify with deponent.

9                   (Translation.)

10      A    I would raise these issues in the board

11  meeting of Taishan, if those issues do exist.

12  BY MR. LEVIN:

13      Q    Would you --

14                  MR. LEVIN:  Are you finished?

15                  THE INTERPRETER:  (Nods head.)

16  BY MR. LEVIN:

17      Q    Would you make sure that the principals of

18  BNBM knew what was going on at Taishan during that

19  period of time?

20                  MS. EIKHOFF:  Object to form.

21      A    What time period?  Can you specify?

22  BY MR. LEVIN:

23      Q    The time that you were sitting on the board

24  of Taishan and determined that something was being

25  done improperly by Taishan.

```
 1              MS. EIKHOFF:  That's a hypothetical,

 2        right?

 3              MR. LEVIN:  It's -- it's not my

 4        deposition.

 5              Go ahead.

 6              MS. EIKHOFF:  What do you mean, it's not

 7        your deposition?  You're taking the deposition,

 8        right?

 9              MR. LEVIN:  No, I don't answer your

10        questions.

11              MR. BARR:  Object to the form --

12              (Translation.)

13              MR. BARR:  Object to the form of the

14        question, calls for speculation.

15              THE WITNESS:  Can you reinterpret the

16        question?

17              MR. LEVIN:  No, I stand on that

18        question.  Can you answer the question?

19              MR. BARR:  No, he's asking the

20        interpreter.

21              MR. LEVIN:  Oh, okay.  Thank you.

22              THE INTERPRETER:  The interpreter will

23        reinterpret.

24              (Translation.)

25     A     Ever since I became the director of Taishan
```

Confidential - Subject to Further Confidentiality Review

1   Gypsum, I have not discovered Taishan had done

2   anything improper.

3   BY MR. LEVIN:

4      Q    But you were there to determine whether or

5   not they did anything improper; am I correct in

6   stating that?

7              MR. BARR:  Object to the form.

8      A    As a director, I have the voting rights for

9   the proposals that were submitted to the board of

10  directors.

11             MR. LEVIN:  Could you read that answer

12        again?  I didn't quite understand it.

13             (The following portion of the record was

14        read.)

15             "ANSWER:  As a director, I have the

16        voting rights for the proposals that were

17        submitted to the board of directors."

18  BY MR. LEVIN:

19     Q    And as general manager of Beijing, you were

20  there, in whole or in part, to monitor the activities

21  of Taishan, were you not?

22     A    As general manager of BNBM, I was not

23  involved in any decision-making of Taishan Gypsum.  As

24  a director of Taishan Gypsum, I perform the duties of

25  a director according to the company law, as well as

Confidential - Subject to Further Confidentiality Review

1    company charter.

2                    MR. BARR:  Want to take a break now?

3                    MR. LEVIN:  Yeah, it would be a good

4          idea.  I'm not done with the document, but it

5          would be a good idea.

6                    THE VIDEOGRAPHER:  The time now is

7          4:15 p.m.  We're off the record.

8                    (Recess taken, 4:15 p.m. to 4:29 p.m.)

9                    THE VIDEOGRAPHER:  This begins Disc 5 of

10         today's deposition.  Time now is 4:29 p.m.  We

11         are back on the record.

12   BY MR. LEVIN:

13       Q    One last question on that document:  As

14   general manager of BNBM, are you required to report to

15   BNBM's board of directors if you learn Taishan is

16   acting in contradiction to BNBM's company policies?

17                    THE WITNESS:  Please reinterpret.

18                    THE INTERPRETER:  The interpreter will

19         reinterpret.

20                    (Translation.)

21       A    As a general manager of BNBM, if similar

22   issues were discovered in the subsidiary company that

23   we have controlling shares in, according to the nature

24   of such issue, whether it is a major or a minor issue,

25   and according to necessity, I would report to the

Confidential - Subject to Further Confidentiality Review

1                    REPORTER'S CERTIFICATE

2

3          This transcript is valid only for a transcript

4     accompanied by my original signature and original

5     required seal on this page.

6          I, Michael E. Miller, Certified Court Reporter

7     (LA Certificate #27009) in and for the State of

8     Louisiana, as the officer before whom this testimony

9     was taken, do hereby certify that YU CHEN, after

10    having been duly sworn by me upon authority of

11    R.S. 37:2554, did testify as herein before set forth

12    in the foregoing 147 pages; that this testimony was

13    reported by me in the stenotype reporting method, was

14    prepared and transcribed by me or under my personal

15    direction and supervision, and is a true and correct

16    transcript to the best of my ability and

17    understanding; that the transcript has been prepared

18    in compliance with transcript format guidelines

19    required by statute or by rules of the board, and that

20    I am informed about the complete arrangement,

21    financial or otherwise, with the person or entity

22    making arrangements for deposition services; that I

23    have acted in compliance with the prohibition on

24    contractual relationships, as defined by Louisiana

25    Code of Civil Procedure Article 1434

Confidential - Subject to Further Confidentiality Review

1    and in rules and advisory opinions of the board;

2    that I have no actual knowledge of any prohibited

3    employment or contractual relationship, direct or

4    indirect, between a court reporting firm and any party

5    litigant in this matter nor is there any such

6    relationship between myself and a party litigant in

7    this matter.  I am not related to counsel or to the

8    parties herein, nor am I otherwise interested in the

9    outcome of this matter.

10

11        Signed this ___ day of _____, 2015.

12

13

14        _____

15        MICHAEL E. MILLER, FAPR, RDR, CRR

16        Certified Court Reporter

17        LA Certified Court Reporter #27009

18

19

20

21

22

23

24

25

1              UNITED STATES DISTRICT COURT

2              EASTERN DISTRICT OF LOUISIANA

3     ******************************************************

4     IN RE:  CHINESE-MANUFACTURED  MDL NO. 2047

      DRYWALL PRODUCTS LIABILITY

5     LITIGATION                    SECTION:  L

6     THIS DOCUMENT APPLIES TO      JUDGE FALLON

      ALL CASES

7                                   MAG. JUDGE WILKINSON

8     ******************************************************

9

              CONFIDENTIAL - SUBJECT TO FURTHER

10                 CONFIDENTIALITY REVIEW

11                  Friday, July 10, 2015

12                       — — —

13

14         Continuing Videotaped 30(b)(6) Deposition of

15    BEIJING NEW BUILDING MATERIALS PUBLIC LIMITED CO.

16    through the testimony of YU CHEN, held at the offices

17    of Phelps Dunbar LLP, 365 Canal Street, Suite 2000,

18    New Orleans, Louisiana, commencing at 7:34 a.m., on

19    the above date, before Michael E. Miller, Certified

20    Court Reporter (#27009), Registered Diplomate

21    Reporter, Certified Realtime Reporter.

22                       — — —

23              GOLKOW TECHNOLOGIES, INC.

           877.370.3377 ph | 917.591.5672 fax

24                  deps@golkow.com

25

Confidential - Subject to Further Confidentiality Review

1          record, if the reporter could simply now read

2          the question you just posed.

3                    MR. LEVIN:  Okay.

4                    MR. LIAO:  She just did.

5                    MR. BARR:  Well, I'm saying for Mike to

6          put it in the transcript.

7                    THE INTERPRETER:  The interpreter will

8          reinterpret the question.

9                    (Translation.)

10    A     According to Taishan Gypsum -- Taishan

11    Gypsum's company charter, the decision of Taishan

12    Gypsum has different limitations in authorities.

13                    There are limitations of authorities

14    on the level of the management.  There are limitations

15    of authorities on the levels of board of directors

16    meeting.  There are limitations of authorities on the

17    level of shareholders meeting.

18                    BNBM, as a shareholder, only expresses

19    its opinion on the level of shareholders meeting.

20                    MR. BARR:  Might take a break briefly,

21          if we can.

22                    MR. LEVIN:  Okay.

23                    THE VIDEOGRAPHER:  This is the end of

24          Disc 1.  We're now off the record at 8:33.

25                    (Recess taken, 8:33 a.m. to 8:48 a.m.)

Confidential - Subject to Further Confidentiality Review

1    Gypsum.

2    BY MR. LEVIN:

3        Q     And isn't it a fact, sir, that the best

4    welfare of Taishan Gypsum, on all occasions that you

5    voted, were to vote the way the board of directors,

6    that you're a member of at BNBM, voted?

7                  MR. BARR:  Objection to the form.

8                  THE WITNESS:  Your question is rather

9          long.  I would like the interpreter to

10         reinterpret.

11                 (Translation.)

12       A     No.  When there is a conflict of interest

13   between the voting issues in the board of directors of

14   Taishan Gypsum and BNBM, as a director appointed by

15   BNBM, I would avoid such a vote.

16   BY MR. LEVIN:

17       Q     And if the BNBM directors on Taishan who

18   voted one way on the vote at the board of directors

19   meeting in BM, you would all exclude yourself from the

20   vote at Taishan and let the two non-BNBM members

21   control that particular issue?  Is that your

22   testimony?

23                 MR. BARR:  Objection to the form.

24         Objection, mischaracterizes the witness'

25         testimony.

Confidential - Subject to Further Confidentiality Review

```
 1          Exhibit 138.
 2                  (B:7/8/15-7/11/15 Exhibit 138 marked.)
 3                  MS. DUGGAN:  Plaintiffs offer into the
 4          record Exhibit 138, which is a translation of
 5          BNBMPLC-E-0029161.  This is a chart that was
 6          translated by the PSC, titled "Statistical
 7          Spreadsheet of Gypsum Boards Exported to the
 8          U.S. in the Year 2006 by the International
 9          Business Department."
10                  Following the PSC's translation is a
11          machine translation and a document produced in
12          native format by BNBM with Bates numbers
13          BNBMPLC-E-0029161.
14   BY MR. LEVIN:
15     Q    Sir, have you seen this document before?
16     A    I have seen it.
17     Q    And does the document reflect accurately the
18   information contained on it?
19     A    It's basically accurate.
20     Q    Well, does the accurate -- does the document
21   contain the information of all of the sales documents
22   contained in Exhibit 96?
23                  MR. BARR:  I'm going to object and
24          direct the witness not to answer that.  How
25          could he possibly respond whether it's all the
```

Confidential - Subject to Further Confidentiality Review

1          documents?  Please, I'll ask you to rephrase the

2          question.  I'm going to direct him not to answer

3          that.

4    BY MR. LEVIN:

5          Q     Do you agree, sir, that the shipments

6    reflected on Exhibit 138 and the information contained

7    in Exhibit 110 reflect your product shipped to the

8    United States?

9          A     Where is Exhibit 110?

10               (Document review.)

11         A     Yes.

12   BY MR. LEVIN:

13         Q     And, sir, is it true that BNBM sold and

14   shipped this product to Triorient Trading Inc.?

15               MR. BARR:  Objection to the form, lacks

16         foundation, assumes facts not in evidence.

17               (Translation.)

18               MR. LEVIN:  Exhibit 110 may help you,

19         sir.

20               MR. BARR:  He's already testified that

21         he had never seen Exhibit 110 before.

22               MR. LEVIN:  But he -- come on.

23               MR. BARR:  No, come on.

24               MR. LEVIN:  Come on.  I'm not -- I'm

25         saying it may help him.  He can say it doesn't

Confidential - Subject to Further Confidentiality Review

```
 1                REPORTER'S CERTIFICATE

 2

 3          This transcript is valid only for a transcript

 4     accompanied by my original signature and original

 5     required seal on this page.

 6          I, Michael E. Miller, Certified Court Reporter

 7     (LA Certificate #27009) in and for the State of

 8     Louisiana, as the officer before whom this testimony

 9     was taken, do hereby certify that YU CHEN, after

10     having been duly sworn by me upon authority of

11     R.S. 37:2554, did testify as herein before set forth

12     in the foregoing 221 pages; that this testimony was

13     reported by me in the stenotype reporting method, was

14     prepared and transcribed by me or under my personal

15     direction and supervision, and is a true and correct

16     transcript to the best of my ability and

17     understanding; that the transcript has been prepared

18     in compliance with transcript format guidelines

19     required by statute or by rules of the board, and that

20     I am informed about the complete arrangement,

21     financial or otherwise, with the person or entity

22     making arrangements for deposition services; that I

23     have acted in compliance with the prohibition on

24     contractual relationships, as defined by Louisiana

25     Code of Civil Procedure Article 1434
```

Confidential - Subject to Further Confidentiality Review

1    and in rules and advisory opinions of the board;

2    that I have no actual knowledge of any prohibited

3    employment or contractual relationship, direct or

4    indirect, between a court reporting firm and any party

5    litigant in this matter nor is there any such

6    relationship between myself and a party litigant in

7    this matter.  I am not related to counsel or to the

8    parties herein, nor am I otherwise interested in the

9    outcome of this matter.

10

11         Signed this ____ day of _____, 2015.

12

13

14         _____

15         MICHAEL E. MILLER, FAPR, RDR, CRR

16         Certified Court Reporter

17         LA Certified Court Reporter #27009

18

19

20

21

22

23

24

25

Confidential - Subject to Further Confidentiality Review

1           UNITED STATES DISTRICT COURT

2           EASTERN DISTRICT OF LOUISIANA

3    ******************************************************

4    IN RE:  CHINESE-MANUFACTURED  MDL NO. 2047

     DRYWALL PRODUCTS LIABILITY

5    LITIGATION                  SECTION:  L

6    THIS DOCUMENT APPLIES TO     JUDGE FALLON

     ALL CASES

7                                 MAG. JUDGE WILKINSON

8    ******************************************************

9

10

             CONFIDENTIAL - SUBJECT TO FURTHER

11                CONFIDENTIALITY REVIEW

12                Saturday, July 11, 2015

13                    — — —

14

15      Continuing Videotaped 30(b)(6) Deposition of

16   BEIJING NEW BUILDING MATERIALS PUBLIC LIMITED CO.

17   through the testimony of YU CHEN, held at the offices

18   of Phelps Dunbar LLP, 365 Canal Street, Suite 2000,

19   New Orleans, Louisiana, commencing at 7:41 a.m., on

20   the above date, before Michael E. Miller, Certified

21   Court Reporter (#27009), Registered Diplomate

22   Reporter, Certified Realtime Reporter.

23                    — — —

24           GOLKOW TECHNOLOGIES, INC.

         877.370.3377 ph | 917.591.5672 fax

25              deps@golkow.com

Confidential - Subject to Further Confidentiality Review

```
 1    says "BNBM."

 2              MR. BARR:  Objection to the form of the

 3         question.  Objection, the document speaks for

 4         itself.

 5    A     The pronunciation of these four letters is

 6    "BNBM."

 7    BY MR. LEVIN:

 8    Q     And that's your brand name, is it not?

 9              MR. BARR:  Objection to the form of the

10         question, mischaracterizes the witness'

11         testimony.

12    A     Just like what I had responded to your prior

13    question, as the company's general manager, to my

14    knowledge, we sold the product -- we sold 99% of

15    product in China, and in China, we used the brand

16    Dragon.  I'm not sure what is the brand that we use

17    overseas.

18    BY MR. LEVIN:

19    Q     So let me think about this.  You have a

20    trademark, "BNBM," registered with the United States

21    Government, and the logo is "BNBM," and as general

22    manager of BNBM, you don't know what logo is used

23    overseas?

24              MR. BARR:  Objection to the form of the

25         question.  Objection, mischaracterizes the
```

```
 1                    MR. LEVIN:  But I didn't speak Chinese

 2         to you.

 3                    Let's show Exhibit 107-1 at this point.

 4         Let's go off the record so you can set it up.

 5                    THE VIDEOGRAPHER:  We're now off the

 6         record at 8:01.

 7                    (Discussion off the record.)

 8                    THE VIDEOGRAPHER:  We're now back on the

 9         record.  The time is 8:04.

10                    (Whereupon Exhibit 107-1 was displayed

11                    in the deposition room and was

12                    interpreted for The Witness.)

13    BY MR. LEVIN:

14         Q    Sir, have you -- did you observe the motion

15    picture and video that was put before you?

16         A    I just watched it.

17         Q    That was a lot of drywall in there, wasn't

18    it?

19         A    Yes.

20         Q    Substantial amount of drywall, right?

21                    MR. BARR:  Objection, asked and

22            answered.

23                    MS. EIKHOFF:  Object to form.

24         A    As it is shown in the video.

25    BY MR. LEVIN:
```

Confidential - Subject to Further Confidentiality Review

1    Q    And you saw the markings of your company on

2  that drywall?

3    A    Yes.

4    Q    And that drywall came from China, did it

5  not, your company in China?

6    A    This is our product.

7    Q    Okay.  And it was warehoused in the United

8  States, was it not?

9    A    Did it mention it just now?

10    Q    And the logo on it was "BNBM," not

11  "DragonBoard"; am I correct?

12    A    Correct.

13    Q    And that drywall was manufactured for

14  consumption in the United States, was it not?

15            MR. BARR:  Objection --

16            (Translation.)

17            MR. BARR:  Objection to the form, lacks

18      foundation.

19    A    These are what -- these are what he came to

20  our company and purchased.

21  BY MR. LEVIN:

22    Q    And it was purchased for consumption in the

23  United States, was it not?

24            MR. BARR:  Objection to the form.

25    A    At the time the customer approached us, we

Confidential - Subject to Further Confidentiality Review

1   were not sure where it was to be used.

2   BY MR. LEVIN:

3       Q     Do you know where Davis Construction is

4   located?

5       A     I know it is an American company.

6       Q     In Florida?

7       A     I don't remember.

8               MR. LEVIN:  Let's show him the building.

9           Or will you stipulate that it's in Florida?

10              MR. BARR:  We'll stipulate Davis is in

11          Florida.

12              MR. LEVIN:  Thank you, sir.

13              Let's mark for identification

14          Exhibit 64.

15              (CG:6/16/15-6/18/15 Exhibit 64 marked.)

16  BY MR. LEVIN:

17      Q     Sir, I show you Exhibit 64, which is the

18  deposition of Guardian Building Products

19  Distribution Inc., taken on July 22, 2011.

20      A     Is this a correct exhibit?

21      Q     Yes.

22              MR. BARR:  I think he's looking at the

23          Herman exhibit number 143.

24              MR. LEVIN:  Oh.

25              MR. BARR:  And you might just explain to

Confidential - Subject to Further Confidentiality Review

1       It's been filed on the docket in this

2       litigation, Eastern District of Litigation

3       [sic], at rec doc 1877-15 -- correction,

4       18777-15.  A copy is being provided to the

5       witness and to counsel for defendants.

6               (Translation.)

7               MR. LEVIN:  For the record, it's marked

8       Exhibit 9, but that was from the filing on the

9       motion by the defendants.  For purposes of this

10      deposition, it is Exhibit 145.

11              MS. DUGGAN:  It's also marked as

12      Exhibit 145 in the lower left-hand corner.

13              MR. BARR:  So it is.  Thank you.  We see

14      it.

15  BY MR. LEVIN:

16      Q    Sir, take a look at your declaration, and I

17  have a few questions to ask you with regard to it.

18      A    I am very familiar with the declaration.

19      Q    Now, we've been here for three and a half

20  days, and I want to know, sir, with regard to

21  paragraph 21, "BNBM Plc and Taishan each have their

22  own sales force and marketing forces.  There is no

23  overlap of BNBM Plc's and Taishan's sales and

24  marketing forces."

25              Do you still stand by that statement,

Confidential - Subject to Further Confidentiality Review

1   sir?

2       A     Yes, it is the fact.

3       Q     Paragraph 22, the same question, "Number

4   person -- no person at BNBM Plc controls the finances

5   of Taishan.  Taishan is financially independent, is

6   responsible for its own debt and loss."

7               Do you still, sir, stand by that

8   statement?

9       A     What's your question?

10      Q     Do you still stand by that statement?

11      A     Correct.

12      Q     23 states, "BNBM Plc and Taishan have their

13  own separate management."

14              Do you still stand by that statement?

15      A     Yes.

16      Q     Paragraph 25, "BNBM Plc and Taishan manage

17  and use their own assets separately."

18              Sir, do you still stand by that

19  statement?

20      A     Yes.

21              MR. BARR:  That was not appropriate --

22          go ahead.

23              MR. LEVIN:  What's that?

24              MS. DUGGAN:  I want to make a

25          modification to some representations that I made

Confidential - Subject to Further Confidentiality Review

1          with regard to Exhibit 67 earlier, which is the

2          summary chart of payments prepared by the PSC

3          pursuant to Federal Rule of Evidence 1006.

4               Counsel for BNBM asked me about the

5          red-lines.  On page 2304, which is the Bates

6          page from BNBM's annual 2012 report, red-lines

7          were provided to the PSC on that page, but that

8          did not change any of the amounts stated on the

9          page.

10              The same is true with respect to

11         page 2778 from the 2013 BNBM annual report.  A

12         red-line was provided for that page, but it did

13         not change any of the amounts on the page.

14              And finally, on page 3197, from the --

15         that's the Bates page, the 2014 BNBM annual

16         report, a red-line was provided to that page,

17         but it did not change any of the amounts that

18         are contained in the chart that we provided or

19         on that document.

20              MR. BARR:  Thank you.

21              MR. LEVIN:  At this point, I move for

22         admission of all the exhibits that have been

23         marked for identification in the three and a

24         half days of this deposition.

25              MR. BARR:  Well, we'll take it under

Confidential - Subject to Further Confidentiality Review

1          advisement.  We've stipulated what we stipulate

2          and that's where we stand at this point.

3                    MR. LEVIN:  And it is the PSC's

4          intention to keep the deposition open because

5          document production is still being produced, and

6          the PSC will take under advisement amongst

7          themselves whether, at certain areas, we had the

8          proper 30(b)(6) witness.

9                    With having said that, for the moment,

10          the deposition is concluded.

11                    MR. BARR:  Well, it's not, because I

12          have a few questions for the witness.

13                    MR. LEVIN:  Are you going to go past

14          12:00?

15                    MR. BARR:  No, I am not.

16                         EXAMINATION

17     BY MR. BARR:

18          Q    Mr. Chen, good morning.  And I'm going to be

19     very brief, because this has been a very long series

20     of four days for your deposition.

21          A    All right.  Thank you.

22          Q    Mr. Chen, I'd like to direct your attention

23     to Exhibit 145, which is your declaration.  Are you --

24     I'm going to direct your attention to paragraph 2.

25                    Have you held the position of general

1    manager of BNBM Plc since August 2009?

2        A      Yes.

3        Q      And are you responsible for the daily

4    operation and management matters for BNBM Plc?

5        A      Yes.

6        Q      Do you report to the board of directors of

7    BNBM Plc?

8        A      Yes.

9        Q      Do the three deputy general managers of

10   BNBM Plc report to you?

11       A      Yes.

12       Q      I direct your attention to paragraph 10.

13   Does that statement -- strike that.

14              Paragraph 10 states, "With the

15   exception of Tongchun Jia, who held an honorary title

16   of deputy general manager at BNBM Plc from August 2005

17   to September 2012, Taishan and BNBM Plc have never had

18   overlapping officers or employees."

19              Is that an accurate statement?

20       A      It's accurate.

21       Q      Did Mr. Jia have any actual duties or

22   responsibilities at BNBM Plc during that period of

23   time?

24       A      No.

25       Q      Did he perform any management functions at

```
 1   BNBM Plc during that period?

 2       A    No.

 3       Q    Has BNBM Plc ever paid for any of Taishan's

 4   expenses?

 5       A    No.

 6       Q    Does -- has BNBM Plc ever paid Taishan's

 7   employees' salaries or for Taishan's losses?

 8       A    No.

 9       Q    Does BNBM Plc use the same office spaces,

10   secretarial staff and office supplies as Taishan does?

11       A    No.

12       Q    Do BNBM Plc and Taishan maintain separate

13   production facilities?

14               THE WITNESS:  Reinterpret, please.

15               (Translation.)

16       A    They are independent from each other.

17   BY MR. BARR:

18       Q    During the period of time that you've been

19   general manager at BNBM Plc, to your knowledge, has

20   Taishan ever been authorized to act as an agent of

21   BNBM Plc in entering any contracts that bind Plc?

22               MR. LEVIN:  Objection to the form of the

23          question, calls for a legal conclusion, the word

24          "agent."

25       A    No.
```

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. BARR:

 2       Q     Has BNBM Plc ever been authorized to act as

 3   an agent of Taishan in entering into contracts that

 4   would bind Taishan?

 5               MR. LEVIN:  Objection to the use of the

 6          word "agent," calls for a legal conclusion.

 7               I'm sorry, I'm doing what you're doing.

 8               MR. BARR:  It's hard not to.

 9               MR. LEVIN:  It's catchy.

10               (Translation.)

11               MR. LEVIN:  Objection, it calls for a

12          legal conclusion, the use of the word "agent."

13          Objection as to form.

14               MR. BARR:  Mike, did you get the

15          witness' answer?

16               THE REPORTER:  I did not.

17       A     No.

18   BY MR. BARR:

19       Q     Do BNBM Plc and Taishan each have their own

20   procurement team?

21       A     Yes.

22       Q     Do they each sign procurement contracts

23   separately?

24       A     Yes.

25       Q     Directing your attention to Exhibit 139,
```

Confidential - Subject to Further Confidentiality Review

```
1            production in response to the requests made by

2            the PSC.

3                    And then finally, we are scheduled at

4            dates I cannot recall at the end of August for

5            Wang Bing's deposition --

6                    MR. LEVIN:  Yes.

7                    MR. BARR:  -- who obviously, you know,

8            does have knowledge concerning BNBM Plc's

9            activities.  And other than that --

10                   MR. LEVIN:  What was the last part?

11                   MR. BARR:  Does have knowledge of BNBM

12           Plc's activities.

13                   MR. LEVIN:  Oh.  Yes, that's why we

14           noticed him.

15                   MR. BARR:  We're all done.

16                   MR. LEVIN:  Okay.  Thank you --

17           Mr. Chen, thank you very much.  Have a pleasant

18           trip back to China, and perhaps you'll come to

19           our victory party.

20                   THE VIDEOGRAPHER:  This is the end of

21           Tape 3.  We're now off the record, 11:09.

22                   (Proceedings recessed at 11:09 a.m.)

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1              REPORTER'S CERTIFICATE

 2

 3        This transcript is valid only for a transcript

 4   accompanied by my original signature and original

 5   required seal on this page.

 6        I, Michael E. Miller, Certified Court Reporter

 7   (LA Certificate #27009) in and for the State of

 8   Louisiana, as the officer before whom this testimony

 9   was taken, do hereby certify that YU CHEN, after

10   having been duly sworn by me upon authority of

11   R.S. 37:2554, did testify as herein before set forth

12   in the foregoing 81 pages; that this testimony was

13   reported by me in the stenotype reporting method, was

14   prepared and transcribed by me or under my personal

15   direction and supervision, and is a true and correct

16   transcript to the best of my ability and

17   understanding; that the transcript has been prepared

18   in compliance with transcript format guidelines

19   required by statute or by rules of the board, and that

20   I am informed about the complete arrangement,

21   financial or otherwise, with the person or entity

22   making arrangements for deposition services; that I

23   have acted in compliance with the prohibition on

24   contractual relationships, as defined by Louisiana

25   Code of Civil Procedure Article 1434
```

1   and in rules and advisory opinions of the board;

2   that I have no actual knowledge of any prohibited

3   employment or contractual relationship, direct or

4   indirect, between a court reporting firm and any party

5   litigant in this matter nor is there any such

6   relationship between myself and a party litigant in

7   this matter.  I am not related to counsel or to the

8   parties herein, nor am I otherwise interested in the

9   outcome of this matter.

10

11        Signed this ____ day of _____, 2015.

12

13

14       _____

15       MICHAEL E. MILLER, FAPR, RDR, CRR

16       Certified Court Reporter

17       LA Certified Court Reporter #27009

18

19

20

21

22

23

24

25