China Great Wall Asset Management Company, Shenyang Office v. New Northeast Electrical (Shenyang) High Pressure Insulated Switch Co. Ltd

Supreme People's Court
Civil Judgment

(2013) Min Er Zhong Zi No. 66

Appellant (plaintiff in the original trial): China Great Wall Asset Management Company, Shenyang Office.
Person in charge: Tiejun Mou, general manager of the office.
Agent: Jun Zhu, attorney from Beijing Hantong Law Firm.
Agent: Honglu Li, attorney from Beijing Shidaijiuhe Law Firm

Appellee (defendant in the original trial): New Northeast Electrical (Shenyang) High Pressure Insulated Switch Co. Ltd.
Legal representative: Bing Liu, chairman of the board of the company.
Agent: Yunhe Ma, attorney from Liaoning Tongfang Law Firm.

Appellee (defendant in the original trial): Shenyang Beifu Machinery Manufacturing Co. Ltd.
Legal representative: Hai Jiang, general manager of the company.
Agent: Yunhe Ma, attorney from Liaoning Tongfang Law Firm.

Appellee (defendant in the original trial): Shenyang Xintai Warehouse Logistics Co. Ltd.
Legal representative: Zhiwu Lin, general manager of the company.
Agent: Yunhe Ma, attorney from Liaoning Tongfang Law Firm.

Appellee (defendant in the original trial): Shenyang Zhaoli Electrical Equipment Co. Ltd.
Legal representative: Dongye Zhao, chairman of the board of the company.
Agent: Yunhe Ma, attorney from Liaoning Tongfang Law Firm.

Appellee (defendant in the original trial): Northeast Electric Development Co. Ltd.
Legal representative: Weiguo Su, chairman of the board of the company.
Agent: Donghan Liang, employee of the company.
Agent: Yunhe Ma, attorney from Liaoning Tongfang Law Firm.

Defendant in the original trial: Shenyang High Pressure Switch Co. Ltd.
Legal representative: Desong Chen, chairman of the board of the company.
Agent: Hui Qiu, attorney from Liaoning Tongfang Law Firm.

Defendant in the original trial: Yingjie Wang.
Agent: Hui Qiu, attorney from Liaoning Tongfang Law Firm.

Defendant in the original trial: Zemin Yu.
Agent: Hui Qiu, attorney from Liaoning Tongfang Law Firm.

On December 15, 2010, Liaoning Provincial Higher Peoples Court had made (2009) Liao Min Er Chu Zi No. 12 civil judgment on the case regarding financial non-performing loan repayment dispute among appellant China Great Wall Asset Management Company, Shenyang Office (hereinafter referred to as "**Great Wall AMC**") and appellees New Northeast Electrical (Shenyang) High Pressure Insulated Switch Co. Ltd (hereinafter referred to as "**Insulated Switch Co.**"), Shenyang Beifu Machinery Manufacturing Co. Ltd (hereinafter referred to as "**Beifu**

EXHIBIT 77

**Machinery Manufacturing Co.**"), Shenyang Xintai Warehouse Logistics Co. Ltd (hereinafter referred to as "**Xintai Warehouse Logistics Co.**"), Shenyang Zhaoli Electrical Equipment Co. Ltd (hereinafter referred to as "**Zhaoli Electrical Equipment Co.**"), Northeast Electric Development Co. Ltd (hereinafter referred to as "**Northeast Electric Co.**") and defendants in the original trial Shenyang High Pressure Switch Co. Ltd (hereinafter referred to as "**High Pressure Switch Co.**"), Wang Yingjie and Yu Zemin. Great Wall AMC appealed to the court against the judgment. The court made (2011) Min Er Zhong Zi No. 44 civil ruling that remanded the case to Liaoning Provincial Higher Peoples Court for retrial. After retrial, Liaoning Provincial Higher Peoples Court made (2011) Liao Min Chu Zi No. 31 civil judgment on December 24, 2012. Great Wall AMC appealed to the court against the ruling. A collegiate bench legally formed by judge Dongmin Wang and acting judges Xiangbo Li and Fang Mei tried the case. The trial was recorded by Clerk Jiaming Hou. The trial has been completed now.

The Court of First Trial finds that：：

1.   From December 25, 1986 to September 22, 2003, the Shenyang High Pressure Switch Plant, the High Pressure Switch Co. together with the technology transformation and credit department of the Industrial and Commercial Bank of China Shenyang Branch (Hereinafter referred to as **ICBC Shenyang Branch**) , and the Industrial and Commercial Bank of China Shenyang Branch Shifulu Sub-branch (Hereinafter referred to as **ICBC Shifulu Sub-Branch**) have entered into 40 loan agreements, the accumulative loan amounts of which have amounted to 351.75 million RMB and have not been duly repaid .

On August 24, 1995, the Shenyang High Pressure Switch Plant issued a Letter of Company Name Change to the ICBC Shenyang Branch with its official seal affixed, stating that "We change our name from Shenyang High Pressure Switch Plant to Shenyang High Pressure Switch Co., and, commencing September 1, 2015, will officially continue to operate with a new corporate seal. All the ongoing economic contracts, agreements and businesses we have with you as Shenyang High Pressure Switch Plant will be carried on by Shenyang High Pressure Switch Co. Whereas our bank account number, tax registration number, phone numbers, address and other matters will remain the same."

On March 30, 2003，ICBC Shifulu Sub-branch commenced a debt collection process to recover its loan made before August, 1997, where the High Pressure Switch Co. confirmed its receipt of the Debt Collection Notice with its seal affixed；On February 21 and March 19, 2004 ，the ICBC Shifulu Sub-Branch has respectively issued a Notice of Interest Payment in order to collect the interests of the month generated from outstanding loan, where the High Pressure Switch Co. has accordingly confirmed with its seal affixed；On December 20, 2004 and June 30, 2005 respectively，ICBC Shifulu Sub-Branch made demands for the collection of the principal interests generated therefrom, where the High Pressure Switch Co. had signed upon its confirmation.

On July 15, 2015 Great Wall AMC entered into a Credit Assignment Agreement with the Industrial and Commercial Bank of China Liaoning Branch (Hereinafter referred to as **ICBC Liaoning Branch**), which stipulates that: the scope of the credit assignment only incorporates the loan principal owed by High Pressure Switch Co.to ICBC Liaoning Branch, together with its interests generated therefrom, listed in the appendix to this agreement, expect for the receivable on-balance-sheet interests which have been assigned to China Huarong Asset Management Corporation by ICBC Liaoning Branch; As of April 30, 2005( the base date for assignment), the book value of the assigning credit was 396.75 million RMB in principal with its according

interests. The statement of credit assignment clearly states that: As for the quarterly payment loan, the off-balance-sheet interests balance, as of March 20, 2005, was 11,800,018,35 RMB; As for the monthly payment loan, the off-balance-sheet interests balance, as of May 20, 2005, was 32,035,157 RMB. On November 11, 2005, China Great Wall Asset Management Corporation aligned with ICBC Liaoning Branch issued a Co-Announcement of Credit Assignment and Debt Collection on Liaoning Daily Newspaper, in an effort to both fulfill its obligation to notify High Pressure Switch Co. of the credit assignment and urge High Pressure Switch Co. to pay off its outstanding debt. On September 29, 2007, China Great Wall Corporation published another debt collection announcement on Liaoning Daily Newspaper to publicly demand for loan repayments by debtors including High Pressure Switch Co.

2. On May 26, 1995, Northeast Electric Co., who made a contribution of 144.925 million RMB (48.862 million RMB in cash contribution and 96.063 million RMB in in-kind contribution), set up High Pressure Switch Co. with Jinzhou Electric Power Co. Ltd. (a wholly owned subsidiary of Northeast Electric Co., hereinafter referred to as "**Jinzhou Electric Power**"), who made a contribution of 1 RMB. Therefore, the capital contribution made by Northeast Electric Co. amounts to 99.99% of the overall registered capital of High Pressure Switch Co.

On August 28, 2003, Northeast Electric Co. transferred 49% of its holding shares in High Pressure Switch Co. to Shenyang Chengan Power System Equipment Corporation (Hereinafter referred to as "**Chengan Co.**"). On October 8, 2003, Jinzhou Electric Power transferred its 1 RMB capital contribution to Northeast Electric Co.; On the same day Chengan Co. made a 6.08 million RMB contribution to High Pressure Switch Co. Northeast Electric Co. accordingly held 49% shares of High Pressure Switch Co. while Chengan Co. held 51% shares of High Pressure Switch Co. On March 2, 2004, Chengan Co. assigned its 51% shares in High Pressure Switch Co. to Xinfeng Power Investment Corporation (Herein after referred to as "**Xinfeng Co.**"). On March 15, 2004, Northeast Electric Co. assigned its 49% shares in High Pressure Switch Co. of High Pressure Switch Co. to Chengan Co.

In addition, the industrial and commercial registration record also indicates that, as of March 15, 2004, Northeast had held 98.5% shares in Shenyang Tiansheng Communication Devices Corporation (Hereinafter referred to as "**Tiansheng Co.**"), who held 90% shares in Shenyang Wanli Corporation. (Hereinafter referred to as "**Wanli Co.**"), who held 95% shares in Xinfeng Co., who in turn held 90% shares in Chengan Co. In June, 2004, Tiansheng Co. assigned its 90% shares in Wanli Co. to a natural person named Tao Wang.

3. Zhaoli Power System Equipment Corporation ( such name was changed from Shenyang Northeast Power High Voltage Switch Corporation on June22, 2011) was established on May 15, 2002，as a joint-venture among High Pressure Switch Co., who made an asset contribution of 200 million US dollars (which amounts to 4.2% ownership) , Northeast Electric (Hong Kong) Co. Ltd., Hong Kong Zhongxing Power Co. Ltd. and Northeast Electric Co. On August 13, 2003, High Pressure Switch Co. made an additional asset contribution of 8 million US dollars to Zhaoli Power System Equipment Corporation, making its total contribution 10 million US dollars in total, which equaled to 40% ownership.

Insulated Switch Corporation (such name was changed from Shenyang Xintai High Pressure Electric Corporation on December 21, 2005) was established on February 26, 2004 as a joint-venture between High Pressure Switch Co. through a way of asset contribution of 1.6 million US dollars, and Hong Kong Zhongxing Power Co. Ltd, whereby High Pressure Switch Co. held a 74.4% ownership.

Beifu Machinery Manufacturing Co. ( such name was changed from Shenyang Xintai Electric Corporation on December 26, 2006) was established on March 18, 2004 as a joint-venture between High Pressure Switch Corporation, through a way of asset contribution of 85.5106 million US dollars, and Chengan Co., whereby High Pressure Switch Co. held 74.4% shares.

Xintai Warehouse Logistics Co. was established on March 24, 2004, as a joint-venture between High Pressure Switch Co. through capital asset and land use right that equals to 161.6059 million US dollars and Shenyang Xinwei Logistics Co., whereby High Pressure Switch Co. held a 95% shares.

4.      On March 19, 24 and 25, 2004, High Pressure Switch Co. respectively entered into Share Transfer Agreements with Northeast Electric Co., assigning its 74.4% shares of Insulated Switch Co.,95% shares of Beifu Machinery Manufacturing Co. and 95% shares of Xintai Warehouse Logistics Co. to Northeast Electric Co. On April 7 and 14, 2004, Northeast Electric Co. respectively transferred its 98.5% shares of Tiansheng Co. and 76.66 million RMB bonds of Dongbei Power Transmission Equipment Group Corporation to High Pressure Switch Co. as a consideration of its acquisition of the 74.4% shares of Insulated Switch Co.,95% shares of Beifu Machinery Manufacturing Co. and 95% shares of Xintai Warehouse Logistics Co.

On July 19, 2007, Beijing Supreme People's Court issued a civil judgment, filed as (2004) Gao Min Chu Zi No.802, on dispute regarding loan agreement brought by the National Development Bank against High Pressure Switch Co., Shenyang Transformer Corporation, Northeast Building Installment and Construction Head Corporation, Zhaoli Electrical Equipment Co., Insulated Switch Co., Beifu Machinery Manufacturing Co., Xintai Warehouse Logistics Co. and Northeast Electric Co. The Court rescinded the following agreements in the cause of an unfair bargain and etc., including the equity swap agreement entered into between High Pressure Switch Co. and Northeast Electric Co. of the swap between Beifu Machinery Manufacturing Co. and Xintai Warehouse Logistics Co. The Court also ordered the return of equities and debts swapped between High Pressure Switch Co. and Northeast Electric Co. The National Development Bank, unsatisfactory with the ruling, appealed to the Supreme People's Court of China. On Spetember 5, 2008, the Supreme People's Court of China issued a judgment, filed as (2008) Min Er Zhong Zi No.23, which rescinded the swap between the 74.4% shares of Insulated Switch Co. by High Pressure Switch Co. and the 98.5% shares of Tiansheng Co. by Northeast Electric Co. and ordered both parties to return their shares, while upholding the rest judgment made by the Beijing Supreme People's Court. As a result, the swap agreements entered into by High Pressure Switch Co., trading its ownership in three other corporations with the shares and credits of Northeast Electric Co., were revoked once and for all.

5.      Following the judgment by the Supreme People's Court of China was made, High Pressure Switch Co. re-incorporated all the shares under its own name and completed the corresponding change registration with the Industrial and Commercial Department. Afterwards, High Pressure Switch Co. further transferred the foregoing shares to Shenyang Dejia Commerce and Trade Corporation (hereinafter referred to as "**Dejia Co.**") and completed the corresponding change registration with the Industrial and Commercial Department. The status of Dejia Co. was that: Yingjie Wang held 60% of its ownership while Zemin Yu held 40%; its legal representative was Yingjie Wang; its address was 30 Huahai Road, Shenyang Economic and Technology Development Area, Liaoning Province.

   1) High Pressure Switch Co. and Fuxin Enclosed Busbar Plant (the shareholder of Insulated Switch Co. at that time) signed the share transfer agreement on September 20, 2008, 74.4%

4

shares of Insulated Switch Co. rotated back to High Pressure Switch Co. and processed AIC change registration procedures. High Pressure Switch Co. and Dejia Co. signed the share transfer agreement on September 23, 2008, High Pressure Switch Co. transferred 74.4% shares of Insulated Switch Co. held by it to Dejia Co. and processed AIC change registration procedures. Both parties agreed that Dejia Co. should pay RMB amount which equivalent to USD 16 millions to High Pressure Switch Co. as the share transfer payment.

2) High Pressure Switch Co. and Zhaoli Electrical Equipment Co. (the shareholder of Beifu Machinery Manufacturing Co. at that time) signed the share transfer agreement on September 19, 2008, Zhaoli Electrical Equipment Co. transferred 95% shares of Beifu Machinery Manufacturing Co. held by it to High Pressure Switch Co. and processed AIC change registration procedures on September 22, 2008. On September 23, 2008, High Pressure Switch Co. entered into a shares transfer agreement with Dejia Co., stipulating that the High Pressure Switch Co. would transfer shares valued 85.55 million RMB ( amounting to 95% of the registered capital) to Dejia Co. who would in turn purchase those shares with 80.5 million RMB in cash. On September 23, 2008, Beifu Machinery Manufacturing Co. amended its articles of associations and filed the corresponding registration with the Industrial and Commercial Department.

3)
   3. On September 19, 2008, High Pressure Switch Co. and Shenyang Hengyu Machinery Equipment Co., Ltd. (hereinafter referred to as "Hengyu Co.", as the then shareholder of Xintai Warehouse Logistics Co.) entered into an Equity Transfer Agreement. In such agreement, Hengyu Co. transferred its shareholdings valued RMB161.5 million (which accounted for 82.8% of the registered capital) in Xintai Warehouse Logistics Co. to High Pressure Switch Co., and completed the AIC modification registration procedures. On September 23, 2008, High Pressure Switch Co. and Dejia Co. entered into an Equity Transfer Agreement, which provided that, High Pressure Switch Co. would transfer its shareholdings valued RMB161.5 million in Xintai Warehouse Logistics Co. to Dejia Co. at a price of RMB156 million. On September 23, 2008, Dejia Co. modified the Articles of Association and completed the AIC modification registration procedures.

4) On July 30, 2009, Dejia Co. transferred its shareholdings of 74.4% in Insulated Switch Co. to Zhaoli Electrical Equipment Co. and completed the modification registration procedures. After the modification of shares, Zhaoli Electrical Equipment Co. held 74.4% of the shares in Insulated Switch Co. and Northeast Electric (Hong Kong) Co. (a wholly owned subsidiary of Northeast Electric Co.) held 25.6% of the shares. On February 17, 2011, Zhaoli Electrical Equipment Co. transferred its shareholdings of 74.4% in Insulated Switch Co. to Shenyang Taixin Dingsheng Economic and Trade Co., Ltd. (hereinafter referred to as "Taixin Co.") at a price of RMB132 million. The registered capital of Taixin Co. is RMB0.5 million. The former shareholder and legal representative - Zhaozhong Zhang had been the Vice General Manager, Director and Board Secretary of Northeast Electric Co.. On November 15, 2010, Northeast Electric (Hong Kong) Co., Ltd transferred its shareholdings of 25.6% in Insulated Switch Co. to Xinxu International Co., Ltd. (hereinafter referred to as "Xinxu Co.") at a price of RMB52.8 million. The registered capital of the company was HKD10,000. Under the shareholding structure of Insulated Switch Co., Taixin Co. held 74.4% of the shares and Xinxu Co. held 25.6%.

5) On April 28, 2010, Dejia Co. transferred its shareholdings of 95% in Beifu Machinery Manufacturing Co. and of 82.8% in Xintai Warehouse Logistics Co. to the newly established New Northeast Electric Group Development Co., Ltd. in this lawsuit

5

(hereinafter referred to as "New East Electric Group") at a price of RMB 80.5 million and 156 million respectively. The Legal Representation, Chairman of the Board of Directors and General Manager of the New East Electric Group was Zhaozhong Zhang, who had been the Vice General Manager, Director and Board Secretary of Northeast Electric Co., but was replaced by Lin Qu, who had been the General Manager, Vice Chairman and Chairman of the Board of Northeast Electric Co.. Under the shareholding structure of Beifu Machinery Manufacturing Co., New East Electric Group held 95% of the shares and New East Electric Co. held 5%. Under the shareholding structure of Xintai Warehouse Logistics Co., New East Electric Group held 82.8% of the shares, and Zhaoli Electrical Equipment Co. held 17.2%.

6) After the change of the shareholders of Insulated Switch Co., the Chairman of the Board and Legal Representative was still Bing Liu, who was appointed by Zhaoli Electrical Equipment Co. and had been the Vice General Manager, Director and Board Secretary of Northeast Electric Co. After the change of the shareholders of Beifu Machinery Manufacturing Co., the Legal Representative and Executive Director was still Hai Jiang, who was appointed by Northeast Electric Co. in May 2005. After the change of the shareholders of Xintai Warehouse Logistics Co., the Legal Representative and Executive Director was still Zhiwu Lin, who was appointed by Northeast Electric Co. in May 2005.

7) Dejia Co. was deregistered on December 21, 2010 after the completion of the above shareholdings transfer. The liquidation report of Dejia Co. specified that "in the event that credit and debt disputes arises after the deregistration of the company, the shareholders shall take corresponding responsibilities in proportion to their capital contribution."

VI. Regarding the fixed assets as capital contribution when Northeast Electric Co. established High Pressure Switch Co., the first trial also found:

1. As recorded in the land archives of North Jing Xing Road No.38, on August 1, 2005, Northeast Electric Co. submitted an *Application Regarding the Modification of Registered Name of Land Use Rights* (Dong Bei Dian Gu Fen Fa (2005) No.44) to the Land Bureau of Tiexi District, Shenyang, Liaoning Province, stating that " when our company sponsored the listing in 1995, we established High Pressure Switch Co. on May 26, 1995 according to the requirement of shareholding reform. We contributed to High Pressure Switch Co. with buildings, equipment and land use rights at a price of RMB144.92 million as evaluated and verified by National State-owned Asset Administration. According to relevant regulations during the shareholding reform, the registered name of the title certificate of the real properties and land use right (which was primarily Shenyang High Pressure Switch Plant) shall be firstly modified to our company, and then be modified to High Pressure Switch Co. through reinvestment by our company. Upon the completion of reinvestment, the title certificate shall be held by High Pressure Switch Co.. However, due to the busy work arising out of restructuring and preparing for listing and other reasons, the registration procedures for the modification of title certificate of land use right have not been completed yet. Despite the fact that the land assets were possessed, used and disposed by High Pressure Switch Co. all the time and our company made the actually full contribution, the real owner of the land use right could not be reflected in the title certificate of land use right." On November 2, 2005, Northeast Electric Co. issued a *Statement Regarding the Modification of Registered Name of the Land Use Rights* stating that "in order to broaden business scope and promote cooperation, the company and Shenyang Xinwei Logistics Co. (hereinafter referred to as "Xinwei Co.") jointly established Xintai Warehouse Logistics Co. on March 24, 2004. The Company contributed with the land use rights, plant buildings, equipment and other property asset in the aggregate amount of RMB 161.5 million accounting for 95% of the shareholdings of

Xintai Warehouse Logistics Co…. in order to regulate the above investment and clarify the relationship of the parties, the company intends to modify the registered name of the relevant title certificate of land use right to Xintai Warehouse Logistics Co.." Later, the registered name of the land use rights was directly modified to Xintai Warehouse Logistics Co..

2. As recorded in the land archive of East Shentie Road No. 39, on May 21, 2010, Northeast Electric Co. submitted a *Request for Instruction Regarding the Modification of Registered Name of the Land Use Rights* (Dong Bei Dian Gu Fen Fa (2010) No.14) to Shenyang Land Bureau, stating that "in order to broaden business scope, promote cooperation and actively attract investment, our company conducted reorganization and reform on March 26, 2004, established Shenyang Xintai High Pressure Electric Co., Ltd. (it was renamed to Insulated Switch Co. on December 21, 2005) and introduced Zhongxing Power Co. as strategic investor. Our company contributed with the land use right, plant buildings, equipment and other property assets in the aggregate amount of RMB160 million accounting for 74.4% of the shareholdings in Insulated Switch Co.;… In order to regulate the above investment, clarity the relationship between the parties and perform the obligation of contribution, our company intends to modify the registered name of the relevant title certificate of land use right to Insulated Switch Co." According to the AIC archive, when Insulated Switch Co. was established, High Pressure Switch Co. held 74.4% shareholdings in Insulated Switch Co. and Hong Kong Zhongxing Power Co. held 25.6%. But the land bureau did not approve the modification of the registered name applied by Northeast Electric Co.. The land use right remained registered under the name of Northeast Electric Co.. Due to the loan contract disputes between Northeast Electric Co. and Insulated Switch Co. regarding, the land use right was auctioned by the Shenyang Intermediate People's Court.

3. The real property, with an area of 258391.76 square meters located at North Jing Xing Road No.38, was actually delivered to High Pressure Switch Co. for use when Northeast Electric Co. established High Pressure Switch Co., but the title transfer procedures were not completed. According to the archives of Real Property Administration, the real property was invested into Zhaoli Electrical Equipment Co., Xintai Warehouse Logistics Co. and Beifu Machinery Manufacturing Co. as investment or increased capital by High Pressure Switch Co..

4. After the Supreme Court vocated the shareholding replacement agreement between Northeast Electric Co. and High Pressure Switch Co., Xintai Warehouse Logistics Co., Beifu Machinery Manufacturing Co. and Zhaoli Electrical Equipment Co. successively modified the registered name of the above lands and real properties to Shenyang Zhongying Electrical Equipment Co..

On July 7, 2009, Great Wall AMC filed a lawsuit with the High People's Court of Liaoning Province against High Pressure Switch Co., Insulated Switch Co., Beifu Machinery Manufacturing Co., Xintai Warehouse Logistics Co., Zhaoli Electrical Equipment Co., Northeast Electric Co. and Dejia Co. regarding the loans in this littigation and requested that High Pressure Switch Co. shall repay the loan of RMB351.75 million and the interests overdue; Northeast Electric Co. shall be responsible for the debts of High Pressure Switch Co. to the extent of its false contribution; Northeast Electric Co. and other defendants shall bear the joint and several liability for repaying the debt of High Pressure Switch Co.; all of the defendants shall jointly bear the court costs. On November 30, 2011, Great Wall AMC submitted an application for the change of defendants which changed the defendant Dejia Co. to Yingjie Wang and Zemin Yu and requested Yingjie Wang and ZeminYu to take the liability of Dejia Co..

The first trial held that the loan contract executed between (i) ICBC Shenyang Branch, ICBC Shifulu Sub-branch and (ii) High Pressure Switch Plant and High Pressure Switch Co. was valid, which reflected real intentions of the parties and contained legal contents. After the execution of the contract, ICBC Shenyang Branch and ICBC Shifulu Sub-branch performed their obligation pursuant to the contract, however, High Pressure Switch Plant and High Pressure Switch Co. failed to repay the debt in an amount of RMB351.75 million (principal plus interest) on time, which constituted a breach of the contract and High Pressure Switch Plant and High Pressure Switch Co. shall take relevant liabilities. Great Wall AMC legally obtained the creditor's rights through transfer of creditor's right, who was entitled to the rights and interests which was originally owned by ICBC Shenyang Branch and ICBC Shifulu Sub-branch. High Pressure Switch Co. shall bear liability for breach of contract for Great Wall AMC. The repayment obligation of High Pressure Switch Co. under the loan contract executed by High Pressure Switch Plant was confirmed by the collection notice issued by ICBC affixed with seal, which was consistent with the contents set forth in the Notice of Name Change issued by High Pressure Switch Plant on August 24, 1995. Therefore, since High Pressure Switch Co. admitted to repay the outstanding debts of Shenyang High Pressure Switch Plant, which constituted admission of debtor, High Pressure Switch Co. shall bear liability for breach of contract for the part of the debts for Great Wall AMC.

High Pressure Switch Co. argued that, the loan note attached to the 29th loan (i.e. (96) Ji Dai Zi No. 06 loan agreement) is marked "No. 96-07 loan agreement", therefore, the note can not prove that Great Wall AMC had release the RMB8.5 million loan under (96) Ji Dai Zi No. 06 loan agreement to High Pressure Switch Co. After investigation, the amount under the loan agreement is RMB20 million and Great Wall AMC had issued 3 loan notes with respective amount of RMB8.5 million, RMB8.5 million and RMB3 million. The loan notes numbers are 9614, 9614 and 9616. The number "96-06" and "96-07" was content later added rather than standard content of the loan notes. After the loan agreement expired, borrower and lender entered into 3 extension agreements with amounts corresponding to the above loan notes and which were stated as extension to the (96) Ji Dai Zi No. 06 loan agreement. Therefore, the argument of High Pressure Switch Co. is untenable, it will not be accepted by the court.

High Pressure Switch Co. argued that article 3.1 of the 39th loan (i.e. (2000) Dai Zi No. 10 fixed asset loan agreement) stated that the purpose of the loan is "extension" but doesn't specify which loan to extend, thus it might cause Great Wall AMC to claim against it repeatedly. However, the purpose set forth in the loan note attached to the loan agreement is for equipment purchase rather than extension. Therefore, the argument of High Pressure Switch Co. has not supporting evidence and is untenable.

According to the debt transfer agreement between Great Wall AMC and ICBC Liaoning Branch, the debt transferred to Great Wall AMC does not include on - balance sheet interest and Great Wall AMC didn't claim any specific amount of loan interest. In another case of the court, Great Wall AMC explained the off - balance sheet interest as interest generated after the repayment become overdue for three months, therefore, High Pressure Switch Co. should repay the interest generated rated after the repayment become overdue for three months for each loan, which shall be calculated respectively at the overdue loan interest rates then published by the People's Bank of China.

Although some fixed assets were not registered under High Pressure Switch Co.'s name when Northeast Electric Co. established High Pressure Switch Co., but those assets were actually delivered to High Pressure Switch Co. and were transferred as contribution by High Pressure Switch Co. when it invested in Zhaoli Electrical Equipment Co., Insulated Switch Co., Beifu

8

Machinery Manufacturing Co. and Xintai Warehouse Logistics Co., which were deemed as fully contributed. There is not enough evidence to prove Great Wall AMC's argument that Northeast Electric Co. made a false capital contribution, therefore the argument will not be accepted.

Although at the time of share swap, Northeast Electric Co. actually controlled High Pressure Switch Co. through holding the shares of Tiansheng Co., Wanli Co., Xinfeng Co. and Chengan Co., but the share swap was revoked by the Supreme People's Court and the share was returned to High Pressure Switch Co., thus the liability capacity of High Pressure Switch Co. has been resumed. When High Pressure Switch Co. transferred the shares to Dejia Co., Northeast Electric Co.'s control over High Pressure Switch Co. through shareholding has been cut off because Tiansheng Co. transferred the 90% shares of Wanli Co. to third party on June 2014. There is no other sufficient evidence to prove Northeast Electric Co.'s control over High Pressure Switch Co. There is also no sufficient evidence to prove the transfer of shares and fixed assets by Dejia Co. is related to Northeast Electric Co. Therefore, Northeast Electric Co. should not be held jointly liable with High Pressure Switch Co.

Although Zhaoli Electrical Equipment Co., Insulated Switch Co., Beifu Machinery Manufacturing Co. and Xintai Warehouse Logistics Co. participated in the transfer of physical assets and share assets by High Pressure Switch Co., these are all normal company investment activities. There is no sufficient evidence to hold these companies alter ego with High Pressure Switch Co. Therefore, Zhaoli Electrical Equipment Co., Insulated Switch Co., Beifu Machinery Manufacturing Co. and Xintai Warehouse Logistics Co. shall not be responsible for High Pressure Switch Co.'s liability.

The contribution of assets by High Pressure Switch Co. with other legal persons to establish Zhaoli Electrical Equipment Co., Insulated Switch Co., Beifu Machinery Manufacturing Co. and Xintai Warehouse Logistics Co. is normal company investment activity, which changed the assets of High Pressure Switch Co. from physical assets to share assets and the assets and liability capacity of High Pressure Switch Co. was not reduced or impaired. All the four subsidiaries of High Pressure Switch Co. have independent legal personality and they are not responsible for High Pressure Switch Co.'s liability.

Dejia Co. didn't pay corresponding consideration when it received the shares, so the share transfer was malicious behavior to evade debts, which damaged the legal interest of creditors. Therefore, Dejia Co., shall be jointly liable to High Pressure Switch Co.'s liability to the extent of the relevant assets it received from High Pressure Switch Co. without consideration. The price set forth in the share transfer agreement between High Pressure Switch Co. and Dejia Co. might not be the true value of the shares, thus Dejia Co. should be liable to High Pressure Switch Co.'s liability to the extent of the value of the shares. Since Dejia Co. has been dissolved and it was set forth in the liquidation report that the credit and debt disputes of Dejia Co. shall be undertaken by its original shareholders according to the ratio of investments, therefore the original shareholders Yingjie Wang and Zemin Yu shall be jointly liable to High Pressure Switch Co.'s liability to the extent of the value of the shares Dejia Co. received according to the ratio of investments.

In conclusion, the judicial committee of the original trial court held that, according to Articles 8, 205 and 207 of the *Contract Law of People's Republic of China* and Articles 52 and 128 of the *Civil Procedure Law of the People's Republic of China (Amended in 2007)*, it was held that: (i) High Pressure Switch Co. shall repay Great Wall AMC loan principal of RMB351.75 million within 10 days after the judgment becomes effective; (ii) High Pressure Switch Co. shall repay Great Wall AMC interest of loan principal of RMB351.75 million (based on each loan principals and calculated at the overdue loan interest rates then published by the People's Bank of China

from the date when the repayment become overdue for 3 months to the date of repayment) within 10 days after the judgment becomes effective; if High Pressure Switch Co. fails to perform the repayment duty within the period set forth in the judgment, it shall also pay the late interest according to Article 229 of the *Civil Procedure Law of the People's Republic of China* (before amendment); (iii) Yingjie Wang and Zemin Yu shall be liable to the above liability to the extent of the value of the 74.4% shares of Insulated Switch Co., 95% shares of Beifu Machinery Manufacturing Co. and 82.8% shares of Xintai Warehouse Logistics Co. Dejia Co. received from High Pressure Switch Co. according to the ratio of investments; (iv) other claims of Great Wall AMC are dismissed. The litigation fee is RMB900,275, which shall be born by High Pressure Switch Co.

Great Wall AMC appeals to the court against the above judgment and claims that: I. Northeast Electric Co. making use of its controlling right under High Pressure Switch Co. and other related party companies, by means of in-kind investment, equity replacement, evocation of replacement, equity rotation, equity transfer, in-kind transfer, executives assignment and etc. to plan and control the implementation of debt avoidance actions of High Pressure Switch Co. II. Northeast Electric Co. was established by six plants (including the former Shenyang High Pressure Switch Plant) through shareholding reform, among which the net asset (total assets minus total liabilities) of Shenyang High Pressure Switch Plant have been used for forming Northeast Electric Co. in full. Therefor, Northeast Electric Co. and High Pressure Switch Co. should bear joint and several liability for debts owned by Shenyang High Pressure Switch Plant, i.e. 15 borrowings with total amount of RMB68.11 million. III.

On May 26, 1995, Northeast Electric Co. funded the establishment of High Pressure Switch Co., of which the fixed assets with value of RMB96.06 million have not processed the registration procedure for property transfer. Although Northeast Electric Co. directly transferred the ownership of the property located on No. 38 North Jingxing Street to Xintai Warehouse Logistics Co. and Beifu Machinery Manufacturing Co., directly transferred the land use right of No. 38 North Jingxing Street to Xintai Warehouse Logistics Co. those property transfer procedures did not processed through High Pressure Switch Co. In addition, the land use right of No. 39 East Shentie Road remained under the name of Northeast Electric Co. and then auctioned by Shenyang Intermediate Court. Above factors and land records are sufficient to certify the Northeast Electric Co.'s false capital contribution. Northeast Electric Co. should assume compensation liability for High Pressure Switch Co. within the scope of the principal and interest of RMB96.06 million that failed to contribute. IV. Apparently, Northeast Electric Co., High Pressure Switch Co., Insulated Switch Co., Beifu Machinery Manufacturing Co., Xintai Warehouse Logistics Co. and Zhaoli Electrical Equipment Co. are independent company of each other, while in fact all companies constitute alter ego with performance of commingling of company properties, executives, business, operation places and etc. Thus above companies should assume joint liability for liquidating High Pressure Switch Co.'s debts. V. Insulated Switch Co., Beifu Machinery Manufacturing Co., Xintai Warehouse Logistics Co. and Zhaoli Electrical Equipment Co. received the properties of High Pressure Switch Co. and cooperated with Northeast Electric Co. and High Pressure Switch Co. to transfer properties, participated in the debt avoidance behavior of Northeast Electric Co. and High Pressure Switch Co., which already constituted joint infringement and shall undertake several and joint liability for debts repayment of this case.

Northeast Electric Co., Insulated Switch Co., Xintai Warehouse Logistics Co., Beifu Machinery Manufacturing Co. and Zhaoli Electrical Equipment Co. joint : I. There is no factual and legal basis for the claim of Great Wall AMC requesting that Northeast Electric Co. should bear several and joint liability for repayment of the RMB68.11 millions borrowing owned by Shenyang High Pressure Switch Plant. The Liaoning Provincial People's Government Liao Zheng 1994 No. 66

document certified that the state owned assets under four companies (including Shenyang High Pressure Switch Plant) were allocated management of Northeast Power Transformer Group Company by the Liaoning Provincial People's Government. When Northeast Electric Co. established, Northeast Power Transformer Group Company contributed above state owned assets into the Northeast Electric Co. and became the state-owned legal-person shareholder of Northeast Electric Co. Therefor we could affirm that it is Northeast Power Transformer Group Company rather than Northeast Electric Co. who received the in-kind assets of Shenyang High Pressure Switch Plant. II. When established the High Pressure Switch Co., Northeast Electric Co. has already contributed in place. The fact is certified by the capital verification report issued by Shenyang Accounting Firm. Great Wall AMC regards that the land of No. 38 North Jingxing Street and No. 39 East Shentie Road should have been contributed into High Pressure Switch Co. as assets while did not, in fact, when forming the High Pressure Switch Co. among all the immovable properties only the value of the property itself is sufficient for the subscribed investment amount, that's why no need to contribute land use rights any more. Although the land assets should be contributed into High Pressure Switch Co., Northeast Electric Co. has already transferred the ownership of land assets to Insulated Switch Co., Xintai Warehouse Logistics Co. and Beifu Machinery Manufacturing Co. when they were established by High Pressure Switch Co. Based on the result thus far, contribution should be deemed as paid in place. III. There is no factual and legal basis for the opinion of Great Wall AMC that Northeast Electric Co., Insulated Switch Co., Xintai Warehouse Logistics Co., Beifu Machinery Manufacturing Co. and Zhaoli Electrical Equipment Co. manipulated High Pressure Switch Co. to avoid debts and violated the creditor's right of Great Wall AMC, and claimed them to assume joint infringement liability. The equity swap deal between High Pressure Switch Co. and Northeast Electric Co. has been revoked by the judgment of Supreme People's Court. The equity is actually back to High Pressure Switch Co. and the capacity for responsibility for High Pressure Switch Co. has recovered. There is no relation between the transaction (High Pressure Switch Co. transfer the equity to Dejia Co. again) and Northeast Electric Co. IV. As public list company, Northeast Electric Co. has clear assets, independent business and no alter ego condition exists. Insulated Switch Co., Xintai Warehouse Logistics Co., Beifu Machinery Manufacturing Co. and Zhaoli Electrical Equipment Co. are independent legal person, have independent finance, operate independently, and have independent property to undertake external responsibility. Great Wall AMC has no sufficient certification to disregard of corporate personality of above companies.

After hearing, the court confirms the facts ascertained by the trail court and ascertains that:

On June 22, 1992, the Liaoning Provincial People's Government Economic System Reform Committee issued Shen Ti Gai Fa (1992) No. 33 "Reply regarding the Shareholding Reform Pilot of Northeast Electric Transmission Equipment Group Co., Ltd.", approved the shareholding reform pilot of Northeast Electric Transmission Equipment Group Co., Ltd. The company and other six companies (including the subordinate close tier like Shenyang High Pressure Switch Plant and etc.) served as founders and established Northeast Electric Transmission Equipment Group Co., Ltd. though directed placement.

On May 4 1994, the Liaoning Provincial People's Government issued Liao Zheng (1994) No.66 "Notice Regarding System Matter of Northeast Electric Transmission Equipment Group Co., Ltd.", regulated that: as for the system matter of the corporation, Northeast Electric Transmission Equipment Group Co., Ltd. (hereinafter referred to as "**Group Co.**") should keep remain as corporation group specially designated in the state plan, and reorganized as enterprise entity with legal personality qualification; the former Northeast Electric Transmission Equipment Group Co., Ltd. renamed as Northeast Electric Transmission Equipment Stock Co. (hereinafter referred to as "**Stock Co.**"), the former subordinate close tier Shenyang High Pressure Switch Plant and etc. six

11

companies allocated to Group Co. and reorganized as the wholly subsidiary of the Stock Co.; as for property rights, all the state-owned assets of Shenyang High Pressure Switch Plant and etc. six companies allocated to provinces and then allocated by provinces to the Group Co. and incorporated into the Stock Co.; authorize the Group Co. as the entity of state-owned assets operation, hold, operate and manage the state-owned assets on behalf of the state and collect dividend.

On December 13 1994, Administrative Bureau of State-Owned Property issued Guo Zi Qi Han Fa (1994) No. 151, i.e. " Reply regarding the Share management of Northeast Electric Transmission Equipment Stock Co.", approved the asset restructuring plan of the Northeast Electric Transmission Equipment Stock Co. and incorporated the main productive and subservice assets of Shenyang Transformer Plant, Shenyang High Pressure Switch Plant, Jinzhou Power Capacitor Plant, Fuxin Enclosed Busbar Plant into standardization of shareholding reform scope.

On March 11 1995, Northeast Electric Transmission Equipment Group Co., Ltd. convened meeting of board of directors, resolution contents include: change the net asset that after verification as total equity, among which Northeast Electric Transmission Equipment Group Co., Ltd. holds the state-owned legal person shares; according to the State Administration of Industry and Commerce (1994) Qi Ming Han Zi No. 191 "Approval Notification on Enterprise Name ", changes the company name as Northeast Electric Transmission Equipment Stock Co.; incorporates High Pressure Switch Co. with contribution of RMB14.4925 millions. At the same year, shareholders of High Pressure Switch Co. confirmed the contribution: Northeast Electric Transmission Equipment Stock Co. contributed working capital of RMB 48.862 millions and fixed assets of RMB 96.063 millions, Jinzhou Electric Co. contributed RMB 1.

On December 10 2002, Northeast Power Machinery Manufacturing Co. renamed as Northeast Electric Co.

The court found that, the basic legal relationship in this case is the legal relationship of loan, which also involves the shareholder's capital contribution, disregard of corporate personality, alter ego, tort and other multiple legal relationships. In order to recover its creditor's rights, Great Wall AMC filed a suit not only against High Pressure Switch Co. (as the debtor), but also against Northeast Electric Co. (as the foundation shareholder of High Pressure Switch Co.) and Insulated Switch Co., Beifu Machinery Manufacturing Co., Xintai Warehouse Logistics Co., Zhaoli Electrical Equipment Co. (as the former subsidiaries prior to equity transfer), as well as Yingjie Wang and Zemin Yu (as the shareholders of Dejia Co. which purchased the shares). Among them, Great Wall AMC was unsatisfied with the part of the first trial judgment that Northeast Electric Co., Insulated Switch Co., Beifu Machinery Manufacturing Co., Xintai Warehouse Logistics Co., Zhaoli Electrical Equipment Co. shall not bear the liability for the debts of High Pressure Switch Co. and thus filed an appeal. According to the party's appeal request, reasoning and response, the key issues in this case are: (1) Whether Northeast Electric Co. shall bear joint and several liability for the debts (in the amount of RMB68.11 million) of Shenyang High Pressure Switch Plant; (2) Whether Northeast Electric Co. fully performed its payment obligation of capital contribution when Northeast Electric Co. established High Pressure Switch Co. in 1995; (3) Whether Northeast Electric Co. used its actual control over High Pressure Switch Co. and other related parties, abused the corporate independent status of High Pressure Switch Co., and thus seriously damaged the interest of any creditor of High Pressure Switch Co., and whether should the court pierce the corporate veil of High Pressure Switch Co. and make a decision that Northeast Electric Co. shall bear joint and several liability for the debts of High Pressure Switch Co.; (4) Whether Northeast Electric Co., Insulated Switch Co., Beifu Machinery Manufacturing Co., Xintai Warehouse Logistics Co., Zhaoli Electrical Equipment Co., etc. constituted alter ego; (5) Whether

Insulated Switch Co., Beifu Machinery Manufacturing Co., Xintai Warehouse Logistics Co., Zhaoli Electrical Equipment Co. deliberately participated in the avoidance of debt conducted by Northeast Electric Co. through manipulating High Pressure Switch Co., whether they constituted joint tort, and whether they shall bear joint and several liability for the debts in this case. The court provides the following analysis to the above issues:

1. Whether Northeast Electric Co. shall bear joint and several liability for the debts (in the amount of RMB68.11 million) of Shenyang High Pressure Switch Plant?

According to the facts found in the first trial, the loan of RMB68.11 million was borrowed by Shenyang High Pressure Switch Plant from ICBC Shenyang Branch. With respect to the repayment of this part of loan, according to the Notice of Name Change issued by Shenyang High Pressure Switch Plant to ICBC Shenyang Branch on August 24, 1995 and the receipt of Debt Collection Notice signed by High Pressure Switch Co., High Pressure Switch Co. shall bear the repayment liabilities for such debts. In the second trial, the parties raised no objection in this regard. The current issue in dispute is: whether Northeast Electric Co. shall bear joint and several liability for such part of debts. Great Wall AMC argued that the reason why Northeast Electric Co. shall bear joint and several liability is that, the total net assets of Shenyang High Pressure Switch Plant (in the amount of RMB151.88 million, i.e., the total assets net of the total debts) have been used to set up Northeast Electric Co.. Therefore, the debts of Shenyang High Pressure Switch Plant should also be borne by Northeast Electric Co..

According to the fact found in this case, when Northeast Electric Transmission Equipment Co. experienced shareholding reform in 1992, the People's Government in Liaoning Province issued a Notice Regarding System Matter of Northeast Electric Transmission Equipment Group Co., Ltd.. The Notice expressly provided regulation with respect to the property right relationship among the entities which experienced shareholding reform, i.e., all of the state-owned assets of the six enterprises (including Shenyang High Pressure Switch Plant) shall be first transferred to the provincial government, and then invested by provincial government to the group company, and then invested by the group company to corporation. The group company would hold and operate the state-owned assets on behalf of the country. The property right relationship indicated in this Notice was also evidenced by the board resolutions of Northeast Electric Transmission Equipment Group Co., Ltd. and the company information registered in the Administration of Industry and Commerce. The conclusion can be drawn from the above facts that, all of the state-owned assets of Shenyang High Pressure Switch Plant were transferred to the group company through administrative means. The group company, as the operation entity of the state-owned assets, invested such assets in the Northeast Electric Co., which made Northeast Electric Co. hold the corresponding equity interests of Northeast Electric Co.. That is to say, although Northeast Electric Co. actually received the assets of Shenyang High Pressure Switch Plant, Northeast Electric Co. didn't receive the assets for free. Therefore, the claim filed by Great Wall AMC which requested Northeast Electric Co. to bear joint and several liability for the above debts due to Northeast Electric Co.'s receipt of the assets of Shenyang High Pressure Switch Plant lacks factual and legal basis and is denied by the court.

2. Whether Northeast Electric Co. fully performed its payment obligation of capital contribution when Northeast Electric Co. established High Pressure Switch Co. in 1995?

Based on the following reason, Great Wall AMC argued that Northeast Electric Co. failed to fully perform its payment obligation of capital contribution when Northeast Electric Co. established High Pressure Switch: at present, there are still a part of the land use right which was registered under the name of Northeast Electric Co.. Therefore, Northeast Electric Co. shall bear

compensation liability for the debts of High Pressure Switch Co. to the extent of the unpaid value of fixed assets plus interests in the amount of RMB96.06 million.

According to the facts found in this case, on May 26, 1995, Northeast Electric Co. invested RMB144925000 (including flow funds of RMB48862000 and fixed assets of 96063000) and Jinzhou Electric Power invested RMB1 to set up High Pressure Switch Co.. With respect to the above capital contribution, according to the Capital Verification Report for High Pressure Switch Co. issued by Shenyang accounting firm on April 28, 1995, the capital contribution (in the amount of RMB144925000) by Northeast Power Machinery Manufacturing Co. has been fully paid. However, when High Pressure Switch Co. established Insulated Switch Co., Beifu Machinery Manufacturing Co., Xintai Warehouse Logistics Co. with the above assets in kind, according to the relevant capital verification report, title certificates of the buildings and equipment to be invested by High Pressure Switch Co. were in the possession of Northeast Electric Co.. In this case, Great Wall AMC provided transfer process of the land use right of 38 North Jing Xing Street and 39 East Shen Tie Road to proof that Northeast Electric Co. failed to fully perform its payment obligation of capital contribution.

With respect to the land use right of 38 North Jing Xing Street, the trial court found that, Northeast Electric Co. failed to modify the registered name for such land use right when Northeast Electric Co. established High Pressure Switch Co., but such land use right was actually delivered to High Pressure Switch Co. for use. Then High Pressure Switch Co. invested the above land use right and other assets in kind (with an evaluated price at RMB161605900) into Xintai Warehouse Logistics Co.. Therefore, High Pressure Switch Co. acquired 95% equity interests in Xintai Warehouse Logistics Co.. Northeast Electric Co. applied with Land Bureau of Tie Xi District in Shenyang, Liaoning Province in 2005, in order to directly modify the registered name of such land use right to Xintai Warehouse Logistics Co. With respect to the land use right of 39 East Shen Tie Road, the trial court found that, on February 26, 2004, High Pressure Switch Co. invested such land use right and other assets in kind (in the amount of USD16 million) to jointly establish Insulated Switch Co. with another company. Therefore, High Pressure Switch Co. acquired 74.4% equity interests in Insulated Switch Co.. Because the land use right was registered under the name of Northeast Electric Co., on May 21, 2010, Northeast Electric Co. filed an application to directly modify the registered name to Insulated Switch Co., which application was rejected. In another case which involved disputes between Northeast Electric Co. and Insulated Switch Co. regarding loan contracts, such land use right was auctioned.

From the point of view of the normal transfer process of the land use right, the registered name of such land use right shall be modified from Northeast Electric Co. to High Pressure Switch Co., and then modified from High Pressure Switch Co. to Xintai Warehouse Logistics Co. or Insulated Switch Co.; but the actual transfer process was: the registered name of the land use right of 38 North Jing Xing Street was directly modified from Northeast Electric Co. to Xintai Warehouse Logistics Co., and the registered name of the land use right of 39 East Shen Tie Road remained Northeast Electric Co. until it was auctioned. Indeed, the actual modification of the registered name of the land use right exists some defects. However, whether such defects caused Northeast Electric Co. to bear compensation liability to the creditor of High Pressure Switch Co. shall be determined based on whether such defects damaged the assets maintenance of High Pressure Switch Co. and thus damaged the Great Wall AMC's (as creditor) rights.

According to the facts found in this case, the above two pieces of land have been actually delivered by Northeast Electric Co. to High Pressure Switch Co. for occupation and use, and High Pressure Switch Co. has invested such land use right in the Xintai Warehouse Logistics Co. and Insulated Switch Co.. During such process, High Pressure Switch Co. actually used such land and

14

exchanged for corresponding equity interests in Xintai Warehouse Logistics Co. and Insulated Switch Co.. In such circumstances, the assets of High Pressure Switch Co. was not damaged and was maintained, and Great Wall AMC's (as creditor) right was not damaged. Therefore, this circumstance can be deemed that such land use right was actually and fully contributed by Northeast Electric Co. The claim filed by Great Wall AMC that Northeast Electric Co. shall bear compensation liability for the debts of High Pressure Switch Co. within the scope of RMB96.06 million plus interests is denied by the court.

3. Whether the Northeast Electric Co. has conducted any acts of abusing High Pressure Switch Co.'s independent legal personality and severely damaging the interests of the creditors of High Pressure Switch Co., whether the corporate personality of the High Pressure Switch Co. shall be disregarded and whether the court shall order the Northeast Electric Co. to assume joint and several liability for the debt of High Pressure Switch Co.

The basis on which the Great Wall AMC claimed that the Northeast Electric Co. shall assume joint and several liability for the debt of High Pressure Switch Co. is that, Northeast Electric Co. is the actual controller of the High Pressure Switch Co., it made use of its right of control over High Pressure Switch Co., Insulated Switch Co., Beifu Machinery Manufacturing Co., Xintai Warehouse Logistics Co., Zhaoli Electrical Equipment Co. and other related-party companies, and evaded the debts of High Pressure Switch Co. through share swap and other measures, which violating the principal of establishing the legal person system and damaging the interests of the creditors, thus the corporate veil of High Pressure Switch Co. shall be pierced and the court shall order the actual controller Northeast Electric Co. to assume joint and several liability for repaying the debt of High Pressure Switch Co.

According to the facts found in this case, the Northeast Electric Co. actually controlled the High Pressure Switch Co. through its controlling relationship with Tiansheng Co., Wanli Co., Xinfeng Co. and Chengan Co. when the High Pressure Switch Co. conducted share swap with Northeast Electric Co. in 2004. However, the court has ordered to revoke the act of share swap and thus the shares have actually returned under the name of the High Pressure Switch Co. The capacity for responsibility of High Pressure Switch Co. has been recovered. Then the High Pressure Switch Co. transferred the shares to the Dejia Co.. Because the Tiansheng Co. has already transferred its 90% shares in Wanli Co. to others in July,2004 at that time, the Northeast Electric Co. has lost its controlling relationship with the High Pressure Switch Co. from the equity perspective. With respect to the fact that the High Pressure Switch Co. has transferred the shares to Dejia Co. and then Dejia Co. transferred the shares later, the Great Wall AMC did not provide sufficient evidence proving that it was actually controlled by the Northeast Electric Co. or there is direct relationship with Northeast Electric Co. . Thus the evidence in this case is not sufficient enough to be held that the High Pressure Switch Co. was actually controlled by the Northeast Electric Co. to conduct the act of evading the debts.

In addition, the Great Wall AMC claimed to pierce the High Pressure Switch Co.'s corporate veil, namely to disregard the legal personality of the High Pressure Switch Co. Article 20 of the PRC Company Law regulates the system of disregarding the corporate's legal personality, provided that " The shareholder of the company shall not injure any interests of any creditor of the company by abusing the independent status of legal person or the shareholder's limited liabilities ; Where any of the shareholders of a company evades the payment of its debts by abusing the independent status of legal person or the shareholder's limited liabilities, if it seriously injures the interests of any creditor, it shall bear several and joint liabilities for the debts of the company." In accordance with this article, the application of the disregard of legal personality shall meet the following three requirements: 1) the element of subject, which means the abusive subject shall

15

limit to the shareholders of the company; 2) the element of acts, which means there should exist the act of abusing the company's independent personality and the limited liability of the shareholders ;and 3) the element of consequence, which means it shall severally damage the interests of the company's creditors. In this case, though Northeast Electric Co. was indeed the shareholder of the High Pressure Switch Co. at the time of establishing High Pressure Switch Co., afterwards Northeast Electric Co. transferred all its shares in the High Pressure Switch Co. and no longer being the shareholder of the High Pressure Switch Co. The situation in this case is not satisfied the requirements of applying the above legal personality disregard system. Thus, the court denied Great Wall AMC's claims that the Northeast Electric Co. abused High Pressure Switch Co. 's independent legal personality, damaged the interests of the creditors, and ordered that the corporate veil of the High Pressure Switch Co. shall be pierced, considering that such claims lack of facts and legal basis.

4. Whether the Northeast Electric Co., High Pressure Switch Co. , Insulated Switch Co. , Beifu Machinery Manufacturing Co., Xintai Warehouse Logistics Co. , Zhaoli Electrical Equipment Co. and others constitute the commingling of corporate personality

In deciding whether a company's corporate personality is commingled with that of another, an overall analysis and judgment should be made on the basis of whether there exists a commingling in areas such as finances, organization, and business between the companies. Financial commingling is an important element in testing whether commingling of corporate personality is present. Its main external manifestations are companies' commingling in areas such as the place of business, main offices, production facilities, and finances. Its essence is that financial commingling violates the basic principles of separateness of corporate property from shareholder property, the maintenance of corporate capital and the permanence of corporate capital, thus seriously damaging the material basis for the company's ability to repay external indebtedness. In this case, Great Wall AMC provided evidence to state that the actual occupier of the above partial in kind assets of the company is not conformity with the obligee and the companies used to share the place of business at the same address, but it did not further provide evidence proving that companies' commingling in areas such as production facilities, finances and account books. The main external manifestations of company's organizational commingling are commingling of the shareholders, directors, manager, responsible persons, and similar corporate personnel of the company. Its essence is that organizational commingling causes the company to be unable to form an independent will that is based entirely on the company's own interests, such that the company loses its independence and the basis for it to independently bear liability. In this case, according to the evidence provided by the Great Wall AMC, there actually exists overlapping positions of some management in the above companies, but there is no corresponding evidence to prove that such circumstance is sufficient to cause the company lose independence. The main external manifestations of business commingling are matters such as the continuous commingling of business operations, business behavior, transactional methods, and price-setting between the company. Its essence is that the commingling of business leads to the company losing its operational autonomy and independent personality. In this case, from the perspective of the business scope stated in the legal entity business license of the above company, there exists partial overlapping in the business scope among the High Pressure Switch Co. , Insulated Switch Co. and Zhaoli Electrical Equipment Co. and there is not obvious overlaps in the business scope of other companies; Besides that, the Great Wall AMC did not provide other evidence proving the business commingling among the above companies.

After conducting overall analysis on the above facts and evidence, even though the companies showed some overlaps in time and space with respect to place of operations, scope of business, appointment of senior management and other matters, such that there were several external

manifestations of commingling of corporate personalities, the aforementioned external manifestations are insufficient to show that the companies had a continuous period of overlap in finance, organization, business, and other matters, and it is insufficient to verify that there exists causal relationship between the above external manifestations and the consequence that the High Pressure Switch Co. loses the qualification to independently assume the civil liability claimed by the Great Wall AMC. Therefore, the court denied the Great Wall AMC's claim with respect to the commingling of corporate personalities among the above companies, considering that it lack of facts and legal basis.

5. Whether the Insulated Switch Co. , Beifu Machinery Manufacturing Co., Xintai Warehouse Logistics Co. , Zhaoli Electrical Equipment Co. shall assume joint and several liabilities for the debt of High Pressure Switch Co.

The basis on which the Great Wall AMC claimed that the above four companies shall assume joint and several liability is that, such four companies accepted the assets of the High Pressure Switch Co., cooperated with Pressure Switch Co. and Northeast Electric Co. to transfer assets, participated in the act of evading the debt of High Pressure Switch Co., which constituted contributory infringement.

Based on the facts found in this cases, contribution by High Pressure Switch Co. to set up the above company with other legal entities is company's normal investment behavior as shareholder. It only made the property forms of the High Pressure Switch Co. from in kind to shares, the liability asset of the High Pressure Switch Co. does not thus decrease, and the liability capacity of the High Pressure Switch Co. also has not been injured. After the court revoked the act of share swap between the High Pressure Switch Co. and Northeast Electric Co., High Pressure Switch Co. transferred the shares of the above companies to Dejia Co, and later Dejia Co. transferred such shares. Though the above companies participated in the change process of High Pressure Switch Co.'s in-kind assets and share assets, the court could not hold that the above companies participated in the act of evading debts without sufficient evidence proving that it is commingled with the corporate personality of High Pressure Switch Co. and Northeast Electric Co., and that the Northeast Electric Co. manipulate the evasion of High Pressure Switch Co.' debts. Therefore, the court denied the Great Wall AMC's claim that order the above four companies to assume joint and several liability for the High Pressure Switch Co.' debts., considering that it lack of facts and legal basis.

In conclusion, the judgment of the first trial clearly finds out the facts and apply law correct. The court denied the appeal of the Great Wall AMC considering that it lack of facts and legal basis. In accordance with Article 170(1)1 and 175 of the PRC Civil Procedure Law, the court ordered that:

Dismiss the appeal and uphold the original judgment.

The court acceptance fee of the second trail is 900275 yuan, which shall be born by China Great Wall Asset Management Company, Shenyang Office.

This judgment shall be the final judgment.

Chief Judge Dongming Wang
Acting Judge Xiangbo Li
Acting Judge Fang Mei
December 14, 2013
Court Reporter Jiaming Hou