IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
October 2, 2015

Lyle W. Cayce
Clerk

No. 14-31355
Summary Calendar

IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY
LITIGATION

_____

RALPH MANGIARELLI, JR.,

    Plaintiff - Appellee

v.

SIXTY-FIFTH AND ONE, L.L.C.; BANNER SUPPLY COMPANY
POMPANO, L.L.C.,

    Defendants - Appellants

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:09-MD-2047

Before JOLLY, PRADO, and ELROD, Circuit Judges.

PER CURIAM:*

    Sixty Fifth and One, LLC ("Sixty Fifth") and Banner Supply Company Pompano, LLC ("Banner") appeal the district court's denial of their motions to

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Case: 14-31355    Document: 00513245790    Page: 2    Date Filed: 10/26/2015
Case 2:09-md-02047-EEF-MBN   Document 19648-1   Filed 10/26/15   Page 2 of 7

No. 14-31355

enjoin Plaintiff Ralph Mangiarelli's class-action claims, which are currently pending in Florida state court. Sixty Fifth and Banner contend that the settlement agreements reached in previous federal class actions cover Mangiarelli's current claims. Because the district court properly concluded that Mangiarelli's claims do not fall within the scope of the previous settlement agreements, we affirm.

I.

This appeal concerns Chinese-manufactured drywall ("Chinese Drywall"),[1] which has long been a subject of litigation in the Fifth Circuit. In 2009, the Judicial Panel on Multi-District Litigation transferred all federal actions alleging damages resulting from Chinese Drywall to the United States District Court for the Eastern District of Louisiana. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2:09-MD-2047-EEF-JCW (E.D. La. 2009). Both Banner and Sixty Fifth were defendants in class actions consolidated by the Multi-District Litigation Panel, and both defendants ultimately settled the class-action claims against them. Sixty Fifth's and Banner's separate settlement agreements received final approval from the district court in 2013. These settlement agreements are referred to by the parties here as the "Global" and "Banner" settlement agreements. The question before us is whether the Global and Banner settlement agreements cover Mangiarelli's current class-action claims, which, as we have noted, are pending in Florida state courts.

Mangiarelli owns a condominium unit at Lauderdale One Condominium Complex in Fort Lauderdale, Florida. Sixty Fifth developed Lauderdale One,

---

[1] From 2005–2008, Chinese Drywall was imported into the United States and used in the construction of thousands of buildings. Those who inhabited buildings containing Chinese Drywall began to notice corrosion of metal building components, failure of electrical wiring and appliances, and, at least in some cases, physical ailments, including skin irritation and respiratory problems.

No. 14-31355

and Banner supplied the drywall used to construct the complex. Lauderdale One includes two separate condominium buildings, referred to as "Building One" and "Building Two." Only Building One was constructed using Chinese Drywall. Mangiarelli owns a condo unit in Building Two, which has never contained any Chinese Drywall. Nevertheless, Mangiarelli and other Building Two residents filed a class action complaint in Florida state court. Mangiarelli, the putative class representative, asserts that his condominium has lost market value as a result of the stigma of being associated with Building One.

Invoking the district court's continuing jurisdiction over matters related to the settlement agreements, Sixty Fifth and Banner asked the district court to enjoin Mangiarelli's loss of market value claims, or "stigma" claims. They urged that the claims were covered by the Global and Banner settlement agreements. They further argued that Mangiarelli could not bring the claims individually because he did not opt out of the Global and Banner settlement agreements. The district court, however, rejected these arguments and found that Mangiarelli's claims did not fall within the scope of the settlement agreements. Accordingly, it denied Sixty Fifth and Banner's motions to enjoin the Florida proceeding.[2] Sixty Fifth and Banner moved to reconsider, which the district court also denied. Sixty Fifth and Banner bring this appeal.

## II.

Although the Court usually reviews a district court's denial of injunctive relief under the abuse of discretion standard, we review *de novo* the district court's interpretation of a class action settlement agreement. *See In re Deepwater Horizon*, 732 F.3d 326, 332 (5th Cir. 2013) (citing *Waterfowl LLC v.*

---

[2] The district court initially granted Banner's motion to enjoin, as the motion was not opposed. The district court, however, rescinded its prior grant of Banner's motion to enjoin when ruling on Sixty Fifth's motion, asserting that the reasons for denying Sixty Fifth's motion "appl[ied] with equal force" to Banner.

Case: 14-31355    Document: 00513245790    Page: 4    Date Filed: 10/26/2015
Case 2:09-md-02047-EEF-MBN   Document 19648-1   Filed 10/26/15   Page 4 of 7

No. 14-31355

*United States*, 473 F.3d 135, 141 (5th Cir. 2006)). Pursuant to the district court's order approving the settlement agreements, Louisiana law governs interpretation of the Global settlement agreement, and Florida law governs interpretation of the Banner settlement agreement. The parties agree, however, that there are no important distinctions between those states' laws as relates to this appeal.

## III.

Sixty Fifth and Banner urge that the district court erred in denying their motions to enjoin the state court proceedings, contending that Mangiarelli's stigma claims fall within the scope of the Global and Banner settlement agreements. Sixty Fifth and Banner point to the broad class definition in each settlement agreement. The Global agreement defines the settlement class as consisting of "[a]ll persons or entities . . . with claims, known or unknown, arising from or related to actual or alleged Chinese Drywall purchased, imported, supplied, distributed, marketed, installed, used, sold or in any way alleged to be within the legal responsibility of [Sixty Fifth]." The Banner settlement agreement contains a similar class definition provision, defining the class as "[a]ll persons or entities with claims, known and unknown, against [Banner] arising from, or otherwise related to, Chinese Drywall purchased from, supplied, distributed, marketed, used, sold and/or delivered by Banner."

The district court acknowledged that the settlement agreements contain broad class definitions. The district court noted, however, that language elsewhere in the settlement agreements required that a class member have a significant connection to an "Affected Property." Banner and Sixty Fifth concede that Mangiarelli's building, Building Two, is not an "Affected Property" because it is not alleged to contain Chinese Drywall. Still, the appellants contend that the settlement agreements' class definitions are distinct from any provision concerning "Affected Property"; thus an individual

Case: 14-31355    Document: 00513245790    Page: 5    Date Filed: 10/26/2015
Case 2:09-md-02047-EEF-MBN   Document 19648-1   Filed 10/26/15   Page 5 of 7

No. 14-31355

does not need to own, inhabit, or otherwise have a close tie to an Affected Property to be considered a class member under the agreements. We disagree.

When deciding whether Mangiarelli's stigma claims are within the scope of the Global and Banner settlement agreements, the "Class Member" definitions are not considered in isolation; instead they are to be considered in the context of the agreements as a whole. *See Sw. Eng'g Co. v. Cajun Elec. Power Co-op., Inc.*, 915 F.2d 972, 980 (5th Cir. 1990) (stating that, under Louisiana law, a court must interpret "each provision in a contract . . . in the light of other provisions so that each is given the meaning suggested by the contract as a whole" (citing La. Civ. Code art. 2050)); *see also Khosrow Maleki, P.A. v. M.A. Hajianpour, M.D., P.A.*, 771 So. 2d 628, 631 (Fla. 4th Dist. Ct. App. 2000) ("In construing a contract, the legal effect of its provisions should be determined from the words of the entire contract.").

Although the class definitions in the Global and Banner agreements purport to include all persons with claims arising from or related to Chinese Drywall, language elsewhere in the agreements limits these broad definitions. As the district court pointed out, Section 4.3 of the Global agreement requires that "Class Members agree . . . to apply the settlement proceeds they receive . . . to assist in the remediation of *their Affected Property allegedly damaged by Chinese Drywall*." In addition, the Global agreement's opt-out provisions contemplate only those plaintiffs seeking damages to an "Affected Property." Section 5.6.2 states that "in the event a Class Member opts out from this Settlement, all Parties reserve all claims, defenses and coverage positions . . . against any person or entity alleged to have any liability related to the Chinese Drywall *in the Affected Property of that opt-out Class Member*." *See also* Global Agreement § 8.1.1 (stating that "Class Members with *claims involving more than one Affected Property may opt-out on a property-by-property basis*."). The claimant registration form, approved by the district

Case: 14-31355 Document: 00513245790 Page: 6 Date Filed: 10/26/2015
Case 2:09-md-02047-EEF-MBN Document 19648-1 Filed 10/26/15 Page 6 of 7

No. 14-31355

court as part of the settlement, requires that a claimant submit information regarding his or her "Affected Property."[3]

More importantly, both the Global and the Banner settlement agreements apportion funds based on each "Affected Property." Thus, with the exception of personal injury claimants, the settlement agreements limit recovery to those individuals who own, lease, or otherwise have a close tie to a property containing Chinese Drywall. The appellants acknowledge that the terms of the Global and Banner agreements do not provide compensation for stigma claims like those at issue here. It spurns simple reasoning to require individuals to opt out of a settlement agreement under which they were never entitled to compensation.

Sixty Fifth and Banner argue that it is common for individuals to be "class members" under a settlement agreement, yet to be barred from recovery under the terms of that agreement. The cases the appellants cite in support of this position are, however, easily distinguishable; they all involve individual class members who, through their own actions, lost an opportunity to claim a portion of a limited settlement fund. *See, e.g.*, *In re Oxford Health Plans, Inc.*, 383 F. App'x 43 (2d Cir. 2010) (upholding the district court's denial of a late-filed claim for compensation under a settlement agreement). In contrast, Mangiarelli was *never* entitled to a benefit under the Global and Banner agreements in exchange for releasing his stigma claims. As the district court said, it would be "nonsensical" to find that Mangiarelli was nevertheless a "Class Member" under the Global and Banner settlement agreements.

---

[3] As the district court noted, the Banner agreement contains similar language linking the definition of "Class Member" to those individuals owning or residing in an "Affected Property." Furthermore, Banner does not argue that its settlement agreement is materially different from the Global agreement. Instead, Banner, like Sixty Fifth, argues only that the broad definition of "Class Member" set forth in its settlement agreement is controlling.

Case: 14-31355     Document: 00513245790     Page: 7     Date Filed: 10/26/2015
Case 2:09-md-02047-EEF-MBN   Document 19648-1   Filed 10/26/15   Page 7 of 7

No. 14-31355

Finally, Sixty Fifth and Banner argue for the first time on appeal that, under Florida law, Mangiarelli has a shared ownership interest in the common area of Building One. *See* Fla. Stat. §§ 718.106(2)(a), 718.103(8). The appellants contend that Mangiarelli thus possesses a sufficient connection to an "Affected Property" to make him a class member under the Banner and Global settlement agreements. This Court need not address this argument since, contrary to Sixty Fifth and Banner's assertions, they had ample opportunity to make this argument to the district court. *See XL Specialty Ins. Co. v. Kiewit Offshore Servs., Ltd.*, 513 F.3d 146, 153 (5th Cir. 2008) ("An argument not raised before the district court cannot be asserted for the first time on appeal." (citing *Stokes v. Emerson Elec. Co.*, 217 F.3d 353, 358 n.19 (5th Cir. 2000))).[4]

## IV.

We conclude that the district court did not err in deciding that, for the purposes of his loss of market value claims, Mangiarelli is not a "Class Member" under the Global and Banner settlement agreements. Accordingly, the district court's denial of the appellants' motions to enjoin is

AFFIRMED.

---

[4] Furthermore, even if the Court were to consider the appellants' new argument, it is misguided. Mangiarelli is not suing for damages to the common area of Building One (i.e., the potential "Affected Property"). Instead, he is suing for loss of market value to his own condo unit, which is located in Building Two. Building Two contains no Chinese Drywall, and Banner and Sixty Fifth have never contended that it is an "Affected Property" under the settlement agreements. At least for the purposes of his stigma claims, it is irrelevant that Mangiarelli may have an interest in the common areas of the "Affected Property" that caused his own condo unit to lose market value.