**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |

THIS DOCUMENT RELATES TO:

*Germano v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, **Case No. 09-6687 (E.D. La.);**

*Gross v. Knauf Gips, KG, et al.,* **Case No. 09-6690 (E.D. La.);**

*Wiltz v. Beijing New Building Materials Public Limited Co., et al.*, **Case No. 10-361 (E.D. La.);**

*Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, **Case No. 11-1672 (E.D. La.);**

*Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, **Case No. 11-1395 (E.D. La.);**

*Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, **Case No. 11-1673 (E.D. La.); and**

*Amorin v. State-Owned Assets Supervision and Administration Commission of the State Council, et al.*, **Case No. 14-1727 (E.D. La.).**

**MEMORANDUM OF BEIJING NEW BUILDING MATERIAL (GROUP) CO., LTD. IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINTS PURSUANT TO RULES 12(B)(2) AND 12(B)(5)**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................................... 4

    A.    BNBM Group's Corporate Relationships with the Other Defendants ................................................................................................... 4

    B.    BNBM Group Has Not Conducted Business in The Forum States ............ 8

    C.    BNBM Group Contracted To Act As an Export Agent For BNBM PLC In  Sales Of Drywall To Three American Customers ........................ 9

    D.    Nobody Acted as BNBM Group's Agent in the Forum States ................. 12

    E.    BNBM Group Is Not an Alter Ego of BNBM PLC or Taishan ............... 12

    F.    BNBM Group Is Not an Alter Ego of CNBM ......................................... 15

    G.    BNBM Group Has Not Been Served and The Service Attempts Were Inadequate. ................................................................................... 16

ARGUMENT ............................................................................................................................ 17

    I.    THE PLAINTIFFS' JURISDICTIONAL CONTENTIONS ARE MERITLESS ............................................................................................... 17

        A.    BNBM of America Does Not Provide a Basis for Exercising Jurisdiction ............................................................................................... 17

        B.    Offering Products on the World Wide Web Is Not a Basis to Exercise Jurisdiction ................................................................................ 19

    II.    BNBM GROUP DOES NOT DO BUSINESS IN OR HAVE MINIMUM CONTACTS WITH THE FORUM STATES ...................................................... 21

    III.    THE CONTACTS OF OTHERS CANNOT BE IMPUTED TO BNBM GROUP ......................................................................................................... 23

    IV.    THE ACTIONS SHOULD BE DISMISSED BECAUSE BNBM GROUP HAS NOT BEEN SERVED WITH PROCESS ..................................................... 24

CONCLUSION ......................................................................................................................... 26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action Tapes, Inc. v. Weaver*,
    No. Civ. 3:05-CV-1693-H, 2005 WL 3199706 (N.D. Tex. Nov. 23, 2005)...........................21

*Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*,
    841 F.2d 646 (5th Cir. 1998) ...................................................................................................24

*Boschetto v. Hansing*,
    539 F.3d 1011 (9th Cir. 2008) .................................................................................................21

*BP Prods. N. Am., Inc. v. Dagra*,
    236 F.R.D. 270 (E.D. Va. 2006) ..............................................................................................25

*De Reyes v. Marine Mgmt. & Consulting, Ltd.*,
    586 So. 2d 103 (La. 1991) ......................................................................................................22

*Fluorine On Call, Ltd. v. Fluorogas Ltd.*,
    380 F.3d 849 (5th Cir. 2004) ..................................................................................................19

*Ford v. Mentor Worldwide, LLC*,
    2 F. Supp. 3d 898 (E.D. La. 2014).........................................................................................20

*Gen. Cigar Holdings, Inc. v. Altadis, S.A.*,
    205 F. Supp. 2d 1335 (S.D. Fla. 2002) ..................................................................................22

*Helicopteros Nacionales De Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)................................................................................................................22

*High Island Health, LLC v. Libertybelle Mktg. Ltd.*,
    No. CIV A H-06-2931, 2007 WL 1173631 (S.D. Tex. Apr. 18, 2007)...................................24

*Int'l Steel Trust Co. v. Artec Grp., Inc.*,
    824 So.2d 340 (Fla. 2d DCA 2002) .......................................................................................25

*Johnston v. Multidata Systems Int'l Corp.*,
    523 F.3d 602 (5th Cir. 2008) ..................................................................................................22

*Madara v. Hall*,
    916 F.2d 1510 (11th Cir. 1990) ..............................................................................................22

*McGuire v. Sigma Coatings, Inc.*,
    48 F.3d 902 (5th Cir. 1995) ....................................................................................................24

*Mink v. AAAA Dev. LLC*,
   190 F.3d 333 (5th Cir. 1999) ........................................................................................19, 20

*Morales v. Bayou Concessions Salvage, Inc.*,
   No. 03-657 2004 WL 2381525 (E.D. La. Oct. 22, 2004) ......................................................24

*Polskie Linie Oceaniczne v. Seasafe Transport A/S*,
   795 F.2d 968 (11th Cir. 1986) ...............................................................................................17

*Reiss v. Ocean World, S.A.*,
   11 So.3d 404 (Fla. 4 Dist. Ct. App. 2009) ............................................................................22

*Rio Props., Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) ...............................................................................................25

*S. Copper, Inc. v. Specialloy, Inc.*,
   245 F.3d 791 (5th Cir. 2000) ...........................................................................................19, 20

*SDS-IC v. Fla. Concentrates Int'l, LLC*,
   157 So.3d 389 (Fla. 2 Dist. Ct. App. 2015) ..........................................................................25

*Singletary v. B.R.X., Inc.*,
   828 F.2d 1135 (5th Cir.1987) ................................................................................................20

*United States v. Wallace*,
   961 F. Supp. 969 (N.D. Tex. 1996) .......................................................................................19

*Unspam Techs., Inc. v. Chernuk*,
   716 F.3d 322 (4th Cir. 2013) .................................................................................................22

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) ...............................................................................................................22

**Statutes**

Fla. Stat. Ann. § 48.193 (2013) ......................................................................................21, 22

**Other Authorities**

Fed. R. Civ. P. 4(f)(3) .............................................................................................................25

Fed. R. Civ. P. 12 ........................................................................................................1, 3, 17, 26

Defendant Beijing New Building Material (Group) Co., Ltd. ("BNBM Group") respectfully submits this memorandum in support of its motion pursuant to Rules 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure for an order dismissing the complaints against it for lack of personal jurisdiction and failure of service.  Virtually all of the arguments set forth in the Beijing New Building Materials Public Limited Company's  ("BNBM PLC") motion apply with equal force to this motion.  We do not want to burden the Court by repeating those arguments here, and accordingly incorporate by reference the motion to dismiss under Rules 12(b)(2) and 12(b)(5), filed on October 22, 2015 by co-defendant BNBM PLC, the memorandum in support, and accompanying declarations and exhibits (Rec. Doc. 19631-3).[1]

## INTRODUCTION

Just like BNBM PLC, BNBM Group moves to dismiss the complaints against it because BNBM Group does not have sufficient minimum contacts with the forum states to meet their statutory requirements or to satisfy due process.  Indeed, BNBM Group's contacts with the forum states, based on either a direct contacts or on an alter ego claim, are even more attenuated than those of BNBM PLC, as BNBM Group did not manufacture drywall or make any sales to the forum states, and has no direct ownership interest in either BNBM PLC or Taishan Gypsum Co. Ltd. ("Taishan").

---

[1]   The BNBM PLC Memorandum filed on October 22, 2015 and associated with (Rec. Doc. 19631-3) is referred to herein as the "BNBM PLC Memorandum."  On May 6, 2015, BNBM Group  moved to dismiss the complaints against it for lack of personal jurisdiction and failure of service. (Rec. Doc. 18841).  On May 13, the Court entered a Scheduling Order stating, "after the damages hearing, the Court will set deadlines, briefing schedules, and hearing dates for the contempt track and the jurisdictional track."  (Rec. Doc. 18921, at 2).  On June 12, 2015, the Court denied BNBM Group's motion to dismiss as premature, but provided that "BNBM Group and BNBM PLC reserve the right to re-urge their motions after the appropriate discovery has been conducted." (Rec. Doc. 19127).  In the meantime, the Court has permitted jurisdictional discovery, which has produced further evidence showing that BNBM Group is not subject to the Court's jurisdiction.

BNBM Group's only relation to the events at issue in these cases is that it acted as the export agent for three sales in November 2005 by BNBM PLC to American companies, two in Florida and one in California.  BNBM Group did absolutely nothing in the United States in connection with those sales.  As an export agent, BNBM Group did not negotiate these contracts for sale.  It merely completed the customs declarations in its own name, executed the sale contracts on behalf of BNBM PLC, and collected the payment on behalf of BNBM PLC.  Pursuant to a written contract for each sale, BNBM PLC paid BNBM Group its standard fee for performing these services.  The use of export agents is a common business practice in China and indispensable to international shipping and trade.  The role does not ordinarily, without more, subject an export agent to jurisdiction in the United States in a lawsuit alleging that the goods shipped were defective.

No such basis exists here.  BNBM Group did not make or sell the drywall, never took physical possession of the drywall, did not pack the drywall, and other than to check for damage occurring during transit to the shipping port, never physically inspected the drywall.  No BNBM Group employee traveled to the United States relating to these transactions.  And in all events, as described at length in the accompanying BNBM PLC Memorandum, the BNBM PLC Dragon Brand drywall did not injure anyone.  BNBM Group had absolutely nothing to do with Taishan's drywall sales.

Nor does BNBM Group do any business that could subject it to general jurisdiction in any of the forum states.  It does not market, solicit business directly or through agents, maintain offices, own or lease property or manufacture in the forum states.  It does not sell goods to the forum states or import goods from suppliers based in the forum states.  BNBM Group has no agents in Virginia, Louisiana or Florida who could subject the company to jurisdiction.

2

The plaintiffs have never articulated a theory as to how Taishan's actions can be imputed to BNBM Group on an alter ego theory.  Given the facts, this is no surprise.  BNBM Group owns no shares in Taishan.  BNBM Group owns no shares in BNBM PLC.  It is a separate, wholly owned subsidiary of China National Building Material Group Corporation ("CNBM Group") engaged in the building supply industry.  The most the plaintiffs can say about BNBM Group is that it is a minority shareholder (approximately 30%) of publicly owned China National Building Material Company Limited ("CNBM").  There is zero evidence that BNBM Group directed anyone to make any of the drywall sales at issue in these cases.

The Court also lacks jurisdiction over BNBM Group because it has not been served with process in any case except *Amorin* case no. 14-1727.  In all other cases—*Gross* and *Amorin* cases 11-1672, 11-1395, 11-1673—plaintiffs attempted service on BNBM Group at an incorrect address.  The failure of service is an independent basis to dismiss the complaints under Rule 12(b)(5).

It is hard to understand why the plaintiffs have sued BNBM Group at all, much less why they believe the forum states can exercise jurisdiction.  For the reasons described in this brief and the BNBM PLC Memorandum,  BNBM Group is neither a proper defendant, a necessary party, nor subject to the Court's jurisdiction.  Accordingly, BNBM Group respectfully requests the Court to dismiss the complaints against it under Rule 12(b)(2) and 12(b)(5).

## FACTUAL BACKGROUND

**A.     BNBM Group's Corporate Relationships with the Other Defendants**

BNBM Group can be traced back to the establishment of a single factory, Beijing New Building Materials Testing Factory, in 1977.[2]  Through restructuring in 1996, the company became a wholly state-owned limited liability company, established with the investment of CNBM Group, and renamed Beijing New Building Material (Group) Co., Ltd.[3]  In 1997, BNBM Group, seeking to raise public capital for its drywall manufacturing business, formed BNBM PLC, a public company listed on the Shenzen stock exchange.[4]

BNBM Group stopped manufacturing drywall after BNBM PLC was formed, whereupon BNBM PLC became the sole manufacturer of Dragon Brand drywall.[5]  BNBM Group continued to operate in other sectors of the building materials market.[6]

As part of a 2005 corporate reorganization, BNBM Group transferred its 60.33% interest in BNBM PLC to CNBM.  In consideration, BNBM Group acquired a minority interest in

---

[2]   Ex. 1, China National Building Material Company Limited Global Offering Prospectus, March 13, 2006, Bates range ALRMH-CNBM00000001-0643, at ALRMH-CNBM00000090 (relevant pages attached as Exhibit 1, and cited as "Ex. 1, CNBM Prospectus").

[3]   Ex. 2, BNBM Group 2005 Auditor's Report, Ltd., April 30, 2006, Bates range BNBM(Group)0000427-R-517-R, at BNBM(Group)00000435-R (relevant pages attached as Exhibit 2, and cited as "Ex. 2, 2005 Auditor's Report").

[4]   Ex. 3, Marketing Overview Brochure for BNBM Group (undated), Bates range BNBM(Group)-E-0026245-6270, at BNBM(Group)-E-0026267 ¶ 6 (attached as Exhibit 3, and cited as "Ex. 3, BNBM Group Overview").

[5]   Ex. 4, Transcript of deposition of Yanming Zhao, July 15-17, 2015, at 106:18-107:7, 170:25-171:3, 180:21-25 (relevant pages of Mr. Zhao's deposition transcript are attached as Exhibit 4, and cited as "Ex. 4, Zhao Tr.").

[6]   *See* Ex. 5, BNBM Group 2001 Auditor's Report, March 1, 2002, BNBM(Group)00000031-0059, at BNBM(Group)00000038 (attached as Exhibit 5, and cited as "Ex. 5, 2001 Auditor's Report").

CNBM.[7]  Thus BNBM Group no longer had any direct ownership interest in BNBM PLC at the time BNBM PLC acquired its ownership interest in Shandong Taihe Dongxin Company Limited, a successful drywall manufacturer now known as Taishan Gypsum Co., Ltd. ("Taishan").[8]

At present, BNBM Group owns about 27.5% of CNBM.[9]  BNBM Group does not manage the day-to-day operations of CNBM.[10]  Since over half the shares of CNBM are owned by public investors,[11] there should be no misapprehension that BNBM Group can improperly dominate the affairs of CNBM.  Lest there be any doubt, the limitations on BNBM Group as a stockholder are embodied in the CNBM Articles of Association, which include substantial minority stockholder protections.  Many important business decisions must be decided by a "special resolution," which requires a "more than two thirds of the voting rights represented by the shareholders"—rather than a simple majority—to be "exercised in favour of such a

---

[7]  Ex. 6, BNBM PLC 2005 Annual Report, April 13, 2006, BNBMPLC0000288-BNBMPLC0000380, at BNBMPLC0000327, BNBMPLC0000293 (relevant pages attached as exhibit 6, and cited as "Ex. 6, BNBM PLC 2005 Annual Report").

[8]  *See* Ex. 7, Share Subscription Agreement, March 19, 2005, BNBMPLC006153-6168, at BMBMPLC0006155-6157 (copy attached as Exhibit 7 and cited as "Ex. 7, Taihe Share Subscription Agreement"). Ex. 1, CNBM Prospectus, at ALRMH-CNBM00000089-0091, -0093-0094; Ex. 4, Zhao Tr. 268:17-269:3, 270:5-10, 271:14-16, 424:23-425:4.  CNBM's interest in BNBM PLC, meanwhile, has been steadily reduced by sales of stock to the public. With CNBM's public offering in 2006, its equity in BNBM PLC decreased to 52.4% with 47.6% held by over 67,000 shareholders.  Ex. 8, BNBM PLC 2006 Annual Report, April 9, 2007, Bates range BNBMPLC0000489-0605, at -0498 (relevant pages attached as Exhibit 8, and cited as "Ex. 8, BNBM PLC 2006 Annual Report").  Today, after a private offering of BNBM PLC shares to institutional investors in the fall of 2014, CNBM's interest in BNBM PLC has decreased to 45.2%.  Ex. 9, BNBM PLC 2014 Annual Report, March 18, 2015, Bates range BNBMPLC0003164- 3336, at -3213 (attached as Exhibit 9, and cited as "Ex. 9, BNBM PLC 2014 Annual Report").

[9]  Ex. 10, 2014 CNBM Annual Report, June 5-7, 2015, Bates range ALRMH-CNBM00003662-3883, at ALRMH-CNBM00003723- 3724 (relevant pages attached as Exhibit 10, and cited as "Ex. 10, 2014 CNBM Annual Report."

[10]  Ex. 4, Zhao Tr. 432:20-22.

[11]  Ex. 10, 2014 CNBM Annual Report, at ALRMH-CNBM00003723.

resolution."[12]  Such decisions include increasing or decreasing capital, issuing stock, warrants or

similar securities, issuing bonds, engaging in mergers and spinoffs, undergoing dissolution or

liquidation, amending the articles of association, or taking other actions "likely to have a material

impact" on the company.[13]  BNBM Group also is precluded from assuming management of

CNBM.  "Unless prior approval is obtained at a general meeting" of the shareholders, "the

Company shall not enter into any contract with any persons other than the Directors, supervisors,

general managers and other senior management members pursuant to which such person shall be

responsible for managing the whole or any material part of the Company's business."[14]  There

also are specific restrictions on BNBM Group's actions as a 30% stockholder of CNBM.[15]

BNBM Group may not exercise its voting rights "in a manner prejudicial to the interests of all or

some of the shareholders of the Company."[16]

The CNBM Articles of Association thus significantly limit BNBM Group's power as a

30% owner, requiring two-thirds approval for major decisions, specifically forbidding BNBM

Group from improperly influencing directors or supervisors, and preventing BNBM Group from

assuming operational control of the company.  With only 30% of the shares, BNBM Group

cannot prevail in any significant decision-making without the support of many public

stockholders who can be expected to act in their own interests.[17]  The anti-delegation provisions

---

[12]   Ex. 11, Articles of Association of CNBM, January 17, 2014, at 32, Article 8.16, http://www.hkexnews.hk/ (attached as Exhibit 11, and cited as "Ex. 11, CNBM Articles of Association").

[13]   *Id.* at 34, Article 8.23.

[14]   *Id.* at 27, Article 8.3.

[15]   *See id.* at 25, Article 7.6.

[16]   *Id.* at 25, Article 7.5.

[17]   Only one other stockholder, CNBM Group, owns in excess of ten percent of the stock (12.35%).  Ex. 10, 2014 CNBM Annual Report, at ALRMH-CNBM00003723.

of the articles prevent CNBM from being managed by BNBM Group or anybody except the company's own management team.

The Board of Directors of CNBM, which meets at least quarterly,[18] also provides a check on BNBM Group's ability to control CNBM.  At least five of the thirteen directors are required to be independent, non-executive directors, without links to any stockholder.[19]  Significant decisions require approval by two-thirds of the directors, including formulating the debt and financial policies of the company, changing the amount of registered capital, issuing bonds, planning for substantial acquisition or disposal of company assets, proposing a merger, division or dissolution, and amending the articles of association.[20]  Therefore no such major actions can be taken without the assent of at least one of the independent, non-executive directors.  In addition, if a director, supervisor, manager or other senior official of CNBM is interested in any way, directly or indirectly, in a contract, transaction or arrangement with CNBM, he must declare his interest and recuse himself from participating in the decision-making.[21]  A director is deemed interested if a company he is associated with is interested.[22]

These organizational structures and corporate governance relationships are no different than those of large American corporations.  As Professor Jeffrey Gordon explains in his accompanying expert report, it would require a far-reaching change in customary legal standards

---

[18]  *See* Ex. 11, CNBM Articles of Association, at 44, Article 10.6.

[19]  *Id.* at 41, Article 10.1.

[20]  *Id.* at 42-43, Article 10.3.

[21]  Ex. 1, CNBM Prospectus, at ALRMH-CNBM00000555.

[22]  *Id.*

to decide that BNBM Group's role in the CNBM business group violates the norms of corporate separateness.[23]

### B.   BNBM Group Has Not Conducted Business in The Forum States

BNBM Group has not manufactured drywall since 1997.[24]  During the period relevant to this action, 2005 to 2009, BNBM Group made no drywall sales to the United States. [25]  Indeed, other than the possible delivery of a trial sample of drywall to the United States in 2004, BNBM Group has not sold drywall to American customers since 2001.[26]

BNBM Group has not registered to do business in the United States, maintained an office here, incorporated in any of the United States, paid taxes in the United States, or owned or leased real or personal property in the United States.[27]  BNBM Group has not solicited drywall sales or marketed or advertised drywall in Virginia, Louisiana or Florida.[28]  BNBM Group sales representatives have not traveled to the forum states to market or sell drywall or otherwise conduct business, or solicited American companies to sell products in the forum states or

---

[23]   *See* Ex. 12, Declaration of Professor Jeffrey N. Gordon, October 22, 2015, ¶ 20 n.4 (attached as Exhibit 12 and cited as "Ex. 12, Gordon Decl."). Professor Gordon's Declaration focuses particularly on the impact of the shareholding relationship between BNBM PLC and Taishan. But "[i]t also addresses the separation between CNBM PLC and its subsidiary BNBM PLC. [S]till further remove[d] is BNBM Group, which owned approximately 30% of CNBM PLC in the 2007-2014 period, but did not own directly any BNBM PLC shares or any Taishan shares. [Thus,] [o]n the analysis [of Professor Gordon's] Declaration, BNBM Group is outside of the liability penumbra." *Id*.; *see also* ¶¶ 1-4 (summarizing Professor Gordon's findings, which specifically highlight that "[i]t would require a far-reaching change in customary legal standards to find that those structures, practices, and business relationships [of the CNBM business group] violate the norms of corporate separateness so as to lose the benefits of intra-group or parent-subsidiary limited liability.").

[24]   Ex. 4, Zhao Tr. 106:18-107:7, 170:25-171:13, 180:18-25.

[25]   *Id.* at 171:8-22; Ex. 13, Declaration of Xianfeng Yu, dated April 20, 2015, ¶ 4 (attached as Exhibit 13, and cited as "Ex. 13, Yu Decl.").

[26]   Ex. 13, Yu Decl. ¶ 4.

[27]   *Id*. ¶¶ 6-10.

[28]   *Id.* ¶¶ 4, 11.

elsewhere in the United States.[29]  BNBM Group has not imported products from suppliers in

Virginia, Louisiana or Florida, and does not act as an import agent for suppliers in those states.[30]

### C.   BNBM Group Contracted To Act As an Export Agent For BNBM PLC In Sales Of Drywall To Three American Customers

BNBM Group's only involvement in drywall sales to the United States during the

relevant period came in November 2005, when it acted as the export agent for the first few sales

of BNBM PLC's "Dragon Brand" drywall to three American customers.[31]  Two of these

customers, EAC & Sons Corp ("EAC") and Wood Nation Inc. ("Wood Nation"), were based in

Florida.[32]  The third, Great Western Building Materials ("Great Western"), was based in

California.[33]  Each was seeking wallboard during a domestic shortage, initiated contact with

BNBM PLC and arranged for purchases from BNBM PLC, with the negotiations, contracting

and performance all occurring in China.[34]

---

[29]   *Cf.* Ex. 14, Declaration of Kai Cai, dated April 17, 2015, ¶¶ 4-7 (attached as Exhibit 14 and cited as "Ex. 14, Cai Decl.").

[30]   Ex. 13, Yu Decl. ¶ 22.

[31]   Ex. 4, Zhao Tr. 184:11-185:15, 188:6-17, 188:19-190:19, 191:18-192:10, 193:9-21; Ex. 13, Yu Decl. ¶¶ 5, 12; Ex. 14, Cai Decl. ¶¶ 10(a)-(c).  The evidence shows that the drywall involved in these sales, which was manufactured by BNBM PLC, was not defective.  *See* the BNBM PLC Memorandum, at pages 18-21.

[32]   Ex. 15, Transcript of the deposition of Edgar Chaparro, the 30(b)(6) witness for EAC, taken May 18, 2015, at 7:25-8:5 (relevant pages are attached as Exhibit 15, and cited as "Ex. 15, Chaparro Tr."); Ex. 16, Wood Nation Inc. Purchase Agreement, BNBMPLC0007445-7448, at BNBMPLC0007445 (attached as Exhibit 16 and cited as "Ex. 16 Wood Nation Agreement").

[33]   Ex. 17, Transcript of the deposition of Larry Rogers, the 30(b)(6) witness for Great Western, taken August 4, 2015, at 11:23-12:2 (relevant pages are attached as Exhibit 17, and cited as "Ex. 17, Rogers Tr.").

[34]   Ex. 15, Chaparro Tr. 24:7-25:15, 26:5-27:1, 27:2-28:3, 134:1-135:1, 144:9-25, 155:19-156:1; Ex. 18, Transcript of the deposition of Richard Hannam, owner of Wood Nation, taken February 14, 2011, at 12:16-14:8; 14:15-15:5, 35:19-36:15 (relevant pages are attached as Exhibit 18 and cited as "Ex. 18, 2011 Hannam Tr."); Ex. 17, Rogers Tr. 22:4-23:10, 24:15-19, 39:24-40:6, 65:1-14, 66:3-20; Ex. 19, Transcript of the deposition of Bing Wang, Chairman of the Board of BNBM PLC, taken August 25-27, 2015, at 70:3-13 (foreign customers came to China to

BNBM Group only became involved in these sales when BNBM PLC, having been approached by EAC, Wood Nation and Great Western, turned to BNBM Group and asked it to contract to be the export agent for these shipments.[35]  BNBM Group agreed, and on November 16 and November 30, 2005, entered into three separate agreements with BNBM PLC to serve as its export agent for these sales.[36]

BNBM Group's role as export agent was limited.  Its sole responsibilities under the export agency agreements were to "supply valid verification documents, and to conduct exportation in [its] name[,]," to process the "customs declaration, cargo dispatch, chartering transport and commodity inspection etc.[,]" and "to finish the verification and tax refund process as soon as possible."[37]  In this limited role, BNBM Group had almost no contact with the American purchasers, and certainly none in the United States. [38]

As the export agent, BNBM Group was not involved in negotiating the sales contracts. Instead, under the export agency agreements, BNBM PLC remained "responsible for negotiating and performing all terms of the agreement together with Purchaser (which includes main terms

---

purchase BNBM products) (relevant pages are attached as Exhibit 19, and cited as "Ex. 19, Wang Tr.").

[35]   Ex. 13, Yu Decl. ¶ 13.

[36]   Ex. 20, Wood Nation Export Agency Agreement, November 16, 2005, Bates range BNBMPLC0007452-BNBMPLC0007455 (attached as Exhibit 20 and cited as "Ex. 20, Wood Nation Export Agency Agreement"); Ex. 21, EAC Export Agency Agreement, November 30, 2005, BNBMPLC0007427-7429 (attached as Exhibit 21 and cited as "Ex. 21, EAC Agency Agreement"); Ex. 22, Great Western Export Agency Agreement, November 30, 2005, BNBMPLC0007437-BNBMPLC0007440  (attached as Exhibit 22 and cited as "Ex. 22, Great Western Export Agency Agreement").

[37]   Ex. 20, Wood Nation Export Agency Agreement, at BNBMPLC0007454; Ex. 21, EAC Export Agency Agreement, at 3 BNBMPLC0007429; Ex. 22, Great Western Export Agency Agreement, at BNBMPLC0007439.

[38]   *See* Ex. 14, Cai Decl. ¶¶ 10(a)-(c); Ex. 13, Yu. Decl. ¶¶ 18, 19.

and additional terms); and confirming the right product, its specification, its quantity, and

contacting factories for supplying goods."[39]   Additionally:

> The relationship between Party A [BNBM PLC] and Party B
> [BNBM Group] is of principal and agency nature, the relationship
> between Party B and foreign party (Purchaser) is considered as the
> relationship between Agency of Party A and Purchaser. All terms
> in such agreement between Party B and Purchaser (including the
> main terms and additional terms) shall be determined between and
> by Party A and Purchaser; Party B merely signs agreements on
> behalf of Party A to other parties, but does not participate in
> confirmation and performance of any terms in such agreements.[40]

The conduct of the parties conformed to the terms of the contracts.  Thus, EAC

understood that it had done business with BNBM PLC, with which it negotiated and entered into

the contracts, and did not recall communicating with BNBM Group.[41]   The drywall was

packaged by the seller, not BNBM Group.[42]   BNBM Group also did not take physical possession

of the drywall or inspect it, except to ensure it was undamaged in transit to port.[43]   No BNBM

Group employee traveled to the United States in connection with transactions.[44]

It is a common practice in China's import-export business to utilize export agents to

complete required documentation and execute sales contract on behalf of sellers.[45]   For each of

---

[39]   Ex. 20, Wood Nation Export Agency Agreement, at BNBMPLC0007453; Ex. 21, EAC Export Agency Agreement, at BNBMPLC0007428; Ex. 22, Great Western Export Agency Agreement, at BNBMPLC0007438.

[40]   Ex. 20, Wood Nation Export Agency Agreement, at BNBMPLC0007452-7453; Ex. 21, EAC Export Agency Agreement, at BNBMPLC0007427-28; Ex. 22, Great Western Export Agency Agreement, at BNBMPLC0007437-7438).

[41]   Ex. 15, Chaparro Tr. 57:12-58:23, 61:1-6, 67:9-15, and 128:19-21.

[42]   Ex. 13, Yu Decl. ⁋ 17.

[43]   Ex. 13, Yu Decl. ⁋⁋ 16, 17 ; *see also* Ex. 20, Wood Nation Export Agency Agreement, at BNBMPLC0007453-7454; Ex. 21, EAC Export Agency Agreement, at BNBMPLC0007428; Ex. 22, Great Western Export Agency Agreement, at  BNBMPLC0007438-7439.

[44]   Ex. 13, Yu Decl. ⁋ 19.

[45]   *Id.* ¶ 14.

the three export transactions, BNBM Group charged its normal fees for export agency services and the contracts were negotiated at arms length.[46]  BNBM Group never served as an export agent for sales of Taishan drywall to the United States.[47]

**D.      Nobody Acted as BNBM Group's Agent in the Forum States**

There is no evidence that Taishan or BNBM PLC, or anyone else, acted as BNBM Group's agent in Virginia, Louisiana, Florida or elsewhere.  BNBM Group did not authorize Taishan to act as its agent or vice versa.[48]  BNBM Group did not authorize BNBM PLC to act as its agent or vice versa.[49]  Under the export agency agreements BNBM Group was BNBM PLC's agent (for a limited purpose), not vice versa.[50]  BNBM Group did not sell Taishan or BNBM PLC drywall, or any other drywall, in the forum states during the relevant period.[51]  Nor has BNBM Group ever authorized CNBM or CNBM Group to act as an agent of BNBM Group or enter into contracts that bind BNBM Group.[52]

**E.      BNBM Group Is Not an Alter Ego of BNBM PLC or Taishan**

The relationship, or lack thereof, between BNBM Group on the one hand and either BNBM PLC or Taishan on the other, reflects none of the indicia of alter ego present in cases where the courts have pierced the corporate veil.  BNBM Group has never had a direct or first-

---

[46]   Ex. 13, Yu Decl. ¶ 15.

[47]   *Id.* ¶ 20.

[48]   Ex. 4, Zhao Tr. 426:22-427:8.

[49]   *Id.* at 427:10-15.

[50]   Ex. 20, Wood Nation Export Agency Agreement, at BNBMPLC0007452-7453; Ex. 21, EAC Export Agency Agreement, at BNBMPLC0007427-7428; Ex. 22, Great Western Export Agency Agreement, at BNBMPLC0007437-7438.

[51]   Ex. 4, Zhao Tr. 171:15-172:23.

[52]   *Id.* at 430:21-431:8.

level subsidiary ownership interest in Taishan.[53]  BNBM Group has not had an equity interest in

BNBM PLC since March of 2005, before BNBM PLC acquired any interest in Taishan, and

before any sales of drywall at issue.[54]  As described at length in the BNBM PLC Memorandum,

Taishan and BNBM PLC are both thriving and autonomous companies.[55]  Each is well-

capitalized and has high annual net revenues and profit margins.[56]  They comply with corporate

governance requirements, conduct periodic meetings of directors and stockholders, and obtain

required corporate authorizations for major transactions.[57]  BNBM PLC is publicly traded and

listed on the Shenzhen Stock Exchange, and over half of its equity is publicly held.[58]

      BNBM Group does not exercise control over the management or operation of BNBM

PLC or Taishan.[59]  BNBM Group does not manage the assets of BNBM PLC or Taishan, or vice

versa.[60]  BNBM Group has never provided funding to BNBM PLC or Taishan or paid for any of

their expenses.[61]  BNBM Group has not paid for BNBM PLC's or Taishan's losses.[62]  BNBM

Group has not made payroll for BNBM PLC or Taishan.[63]  BNBM Group has not loaned money

to BNBM PLC or Taishan.[64]

---

[53]  *Id.* at 425:5-7; *see also supra*, Section A.

[54]  *Id.* at 425:2-4; *see also supra*, Section A.

[55]  BNBM PLC Memorandum, at 6-14, 23-25.

[56]  *Id.*

[57]  *Id.* at 25.

[58]  *See* Ex. 9, BNBM PLC 2014 Annual Report, at BNBMPLC0003213.

[59]  Ex. 4, Zhao Tr. 429:4-9.

[60]  *Id.* at 429:10-15.

[61]  *Id.* at 425:16-426:2.

[62]  *Id.* at 426:3-9.

[63]  *Id.* at 426:10-15.

[64]  *Id.* at 427:18-20.

BNBM Group has not used or shared the same office spaces, secretarial staff, or office supplies as BNBM PLC or Taishan.[65]  BNBM Group does not share employees, officers, or directors with BNBM PLC or Taishan.[66]

BNBM Group's finances, financial controls, and accounting functions operate independently of BNBM PLC and Taishan.  No officer, director, or employee of BNBM Group controls the finances of BNBM PLC or Taishan.[67]  Each company is responsible for its own debts, liabilities and losses.[68]  They have never had joint bank accounts.[69]  They have never had centralized accounting or common accounting books.[70]  BNBM Group maintains its own profit and loss statements and its corporate accounting is separate and independent from BNBM PLC and Taishan.[71]  BNBM Group prepares independent financial statements, separately audited by an independent third-party accounting firm that is independent of Taishan and BNBM PLC.[72]  Neither BNBM Group, BNBM PLC, nor Taishan can access the other's bank accounts and there have been no undocumented transfers of funds to or from BNBM Group.[73]  There is no evidence that the finances of BNBM Group, BNBM PLC, and Taishan are intertwined or that they have helped themselves to each other's funds or assets.

---

[65]  *Id.* at 426:16-21.

[66]  *Id.* at 425:8-15.

[67]  *Id.* at 427:24-428:2.

[68]  *See* Zhao Tr. 427:18-429:15, 429:15-433:7; Ex. 12, Gordon Decl. ¶ 20 n.4.

[69]  Ex. 4, Zhao Tr. at 427:21-23.

[70]  *Id.* at 428:3-8.

[71]  *Id.* at 428:21-429:3.

[72]  *Id.* at 428:21-429:3; Ex. 23, Declaration of Yanjun Yang, April 16, 2015, ¶¶ 16, 17 (attached as Exhibit 23, and cited as "Ex. 23, Yang Decl.").

[73]  Ex. 4, Zhao Tr. 428:9-20.

F.     **BNBM Group Is Not an Alter Ego of CNBM**

Plaintiffs have never articulated how BNBM Group could be an alter ego of BNBM PLC or Taishan when BNBM Group holds no direct interest in either company. As attenuated as it may appear, such a claim could only conceivably be based on BNBM Group's minority ownership interest in CNBM. But the facts demonstrate that even this wafer-thin claim is wholly without merit.

CNBM is a successful, autonomous, independently managed and publicly owned company. Last year CNBM had revenue of 122,011 million RMB, profits of 8,672 million RMB, and total assets of 316,482 million RMB.[74]  No significant actions can be taken by CNBM without approval of two-thirds of the stockholders and at least some of the independent directors.[75] CNBM also complies with all corporate governance formalities, conducts quarterly meetings of the board of directors, and has annual shareholder meetings.[76]

There are absolutely no indicators that BNBM Group and CNBM are alter egos. Over half the shares of CNBM are publicly held. There is no financial commingling. BNBM Group has never funded CNBM, paid its salaries or expenses, or made good its losses.[77] BNBM Group does not manage CNBM's assets, or vice versa.[78] BNBM Group does not control CNBM's

---

[74]   Ex. 10, 2014 CNBM Annual Report, at ALRMA-CNBM00003663.

[75]   *See, e.g.*, Ex. 11, CNBM Articles of Association, at 41-44, Articles 10.1, 10.3, 10.6.

[76]   *See, e.g.*, Ex. 10, 2014 CNBM Annual Report, at ALRMA-CNBM00003704-3719.

[77]    Ex. 4, Zhao Tr. at 429:16-430:14.

[78]   *Id.* at 433:1-6.

finances.[79]  They do not have shared accounting or finance functions, reporting or accounts.[80]

There has been no commingling or undocumented transfers of funds.[81]

Nor is there operational commingling.  As described above, the CNBM Articles of

Association effectively preclude BNBM Group from managing CNBM's operations.  In fact,

BNBM Group exercises no control over the daily operations of CNBM.[82]  The two do not share

employees, office space, staff or supplies.[83]  Because BNBM Group and CNBM are

operationally independent, BNBM Group is unfamiliar with the public company's business

records, including bills and invoices.[84]  There is no evidence that BNBM Group has ever held

itself out as CNBM, or vice versa.  CNBM does not contract for BNBM Group, or vice versa.[85]

> **G.    BNBM Group Has Not Been Served and The Service Attempts Were
>           Inadequate.**

It is undisputed that Plaintiffs have not actually served BNBM Group, except with respect

to *Amorin* case no. 14-1727.  Plaintiffs have submitted proofs of service attesting that they

attempted service on BNBM Group in *Gross* and *Amorin* (case nos. 11-1672, 11-1395, 11-1673),

which "were refused."  But these proofs of service show that in each instance Plaintiffs

attempted to serve BNBM Group at an incorrect address. [86]  In fact, on the one occasion the

---

[79]  *Id.* at 431:14-23.

[80]  *Id.* at 431:10-23, 432:12-19.

[81]  *Id.* at 431:24-432:11.

[82]  *Id.* at 432:20-25.

[83]  *Id.* at 430:15-20.

[84]  *Id.* at 22:22-24:19.

[85]  *Id.* at 430:21-431:8.

[86]  *Compare* Ex. 29 to *this* Memorandum, Exhibit 95 to the Transcript of the deposition of
Yanming Zhao (attached as Exhibit 29, and cited as "Ex. 29, Exhibit 95 to Zhao Tr.") (showing
the PSC attempted service at No. 16 West Road Jiancaicheng, Xisanqi, Haidian District, Beijing

Plaintiffs attempted service at the correct address (*Amorin* case no. 14-1727), BNBM Group accepted service.[87]

## ARGUMENT

To avoid burdening the Court with repetitive legal briefing, BNBM Group incorporates by reference each of the arguments set forth in the  BNBM PLC Memorandum, including the applicable legal standards.

## I.      THE PLAINTIFFS' JURISDICTIONAL CONTENTIONS ARE MERITLESS

In jurisdictional discovery and motion practice the plaintiffs have advanced two contentions that they assert permit the exercise of jurisdiction over BNBM Group.  The first involves a short-lived indirect subsidiary of BNBM Group that was active in America half a decade before the drywall sales at issue in this case, and that had nothing to do with those sales. The second is that BNBM Group has advertised products on the internet.  Neither constitutes the doing business and minimum contacts necessary to subject BNBM Group to jurisdiction in the forum states.  On this Rule 12(b)(2) motion, the plaintiffs bear the burden of substantiating the jurisdictional allegations in the complaint by affidavits or other competent proof.  *Polskie Linie Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 972 (11th Cir. 1986).  They cannot begin to meet that burden with respect to BNBM Group.

### A.      BNBM of America Does Not Provide a Basis for Exercising Jurisdiction

The plaintiffs have focused on a former indirect subsidiary of BNBM Group,[88] which operated briefly in Tampa, Florida between 2000 and 2001-03.  This company, called BNBM of

---

100096 China), *with id.* 355:17-20 (BNBM Group testifying that its address is 10/F Building 4, Interwest Business Center, No. 9 South Road, Suouti, Haidian District, Beijing, China).

[87]    *See* (Rec. Doc. 19522-3) (showing that BNBM Group accepted service of the *Amorin v. SASAC* complaint when it was sent to the correct address).

America, Inc., ceased operations before any of the drywall sales at issue in this case, and had no role in any of the matters at issue here.  BNBM of America cannot therefore provide a basis for exercising jurisdiction over BNBM Group.

BNBM of America was incorporated in Oregon on February 22, 2000.[89]  On June 19, 2000, it was redomesticated in Florida and its Articles of Association were adopted.[90]  BNBM of America principally engaged in the sale and marketing of natural stone products.[91]  Witnesses have testified that BNBM of America was involved in the sale of Dragon Brand drywall in 2001, 2002, and perhaps 2003.[92]  BNBM of America stopped doing business no later than July 2005.[93]  The former principal of BNBM of America, Wei Chunshan, has confirmed that BNBM of America no longer existed after 2005.[94]  BNBM of America never sold Taishan manufactured drywall.[95]

---

[88]  Ex. 4, Zhao Tr. 163:1-4.

[89]  Ex. 24 Donald H. Wilson Deposition, taken Decmber 12, 2011, Exhibit 2 (attached as Exhibit 24, and cited as "Ex. 24, Wilson Exhibit").

[90]  *Id.*

[91]  Ex. 4, Zhao Tr. 169:20-170:6; 171:8-18; 230:17-231:1.

[92]  Ex. 25, Transcript of the deposition of Richard Hannam, owner of Wood Nation, taken February 13, 2012, at 74:8-75:14 (relevant pages are attached as Exhibit 26, and cited as "Ex. 25, 2012 Hannam Tr."); *see also* Ex. 4, Zhao Tr. 170:20-173:2.

[93]  Ex. 26, Explanation about the Accounts Receivable of BNBM of America, Inc., BNBM(Group)-E-0001744-1745 (attached as Exhibit 26, and cited as "Ex. 26, Explanation of Accounts"); Ex. 4, Zhao Tr. 175:2-3.

[94]  Ex. 4, Zhao Tr. 171:8-18; 175:2-3.

[95]  *Id.* at 171:20-22, 172:21-23; Ex. 27, BNBM Group 2015 Auditor's Report, February 25, 2015, BNBM(Group)00003274-R-3330-R, at BNBM(Group)00003298-R (relevant pages attached as Exhibit 27, and cited as "Ex. 27, 2015 Auditor's Report").

As these facts reflect, BNBM of America played no role in the events at issue in this case.[96]  The class action complaints allege that plaintiffs were injured by defective drywall, but BNBM of America had no role in selling any of the drywall at issue and plaintiffs have proffered no evidence to the contrary.  BNBM of America was defunct by the time of the first sale of BNBM PLC drywall to the United States in November 2005.  Therefore BNBM of America's contacts with Florida cannot be imputed to BNBM Group.  An alter ego finding, after all, requires the plaintiffs to show that BNBM Group was BNBM of America's alter ego "at the time of the [alleged] wrongful act."  *Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 861-62 (5th Cir. 2004).  "It is illogical, for example, to hold a parent liable for controlling another corporation's debts when it had no control at the time the debts were incurred."  *Id.*  "Under general corporate law principles, the relevant inquiry into the control issue focuses on the relationship between the parent and the subsidiary *at the time the acts complained of took place*."  *United States v. Wallace*, 961 F. Supp. 969, 979 (N.D. Tex. 1996) (emphasis in original).

### B.  Offering Products on the World Wide Web Is Not a Basis to Exercise Jurisdiction

The plaintiffs claim that BNBM Group's internet activities subject it to jurisdiction. This claim is based on BNBM Group's website, its having advertised with Alibaba, and an apparent list of American customers.

BNBM Group maintains the website www.bnbmg.com.cn.  The website exists to advertise the company, but it is a passive website, without on-line order forms.  The purpose of

---

[96]   Richard Hannam of Wood Nation testified that he was involved with BNBM of America in 2000-2001.  When he needed drywall in 2005, he reached out to Mr. Wei in China to see if it would be possible to acquire Chinese drywall.  Mr. Wei made the introduction, but did so as a "favor to a friend," not as an employee of BNBM Group.  Ex. 18, 2011 Hannam Tr. 48:14-49:7; 88:24-89:6.  Mr. Hannam understood that BNBM was not going to be involved.  *Id*. 49:3-11.

the website is to promote BNBM Group.[97]  Maintaining a website that can be accessed in a

forum state does not subject a company to that state's jurisdiction.  As the Fifth Circuit has

explained, while a company may "actively do business over its Internet website by entering into

contracts with residents of other states," at "the other end of the spectrum, there are situations

where a defendant merely establishes a passive website that does nothing more than advertise on

the Internet."  *S. Copper, Inc. v. Specialloy, Inc.*, 245 F.3d 791, at *3 (5th Cir. 2000) (citing *Mink

v. AAAA Dev. LLC,* 190 F.3d 333, 336 (5th Cir. 1999)).  "In those cases, personal jurisdiction is

not proper."  *Id.*  As in *Southern Copper*, this is a case of the latter type of website.

> There is no evidence in the record which demonstrates that
> Specialloy entered into contracts with customers over its website,
> and in contrast to the website in *Mink*, Specialloy's website did not
> provide an order form for purchases.  The website described the
> company and its products in general terms and was used merely for
> advertisement, providing details by which a reader could contact
> the company for more information.  As this court has recognized,
> "advertising in national publications is not in itself sufficient to
> subject a defendant to personal jurisdiction."  Moreover, as the
> district court noted, Southern Copper did not demonstrate that the
> suit "arose out of or was related to" Specialloy's website. *See id*.
> Accordingly, we find the website was not sufficient additional
> contact to support personal jurisdiction over Specialloy.

*Id*.  (omitting citations to *Mink* and *Singletary v. B.R.X., Inc.*, 828 F.2d 1135, 1136 (5th

Cir.1987)); *see also Ford v. Mentor Worldwide, LLC*, 2 F. Supp. 3d 898, 904-05 (E.D. La. 2014).

In July of 2013, BNBM Group entered into a contract with Alibaba, the Chinese

equivalent of Craigslist.[98]  Like all websites, Alibaba's can be accessed internationally.  Alibaba

makes it possible for parties anywhere in the world to negotiate the sales of goods between

themselves.  If the drywall at issue here was purchased from BNBM Group from contacts made

---

[97]  Ex. 4, Zhao Tr. 97:6-8.

[98]  Ex. 28, Service Contract between BNBM Group and Alibaba.com, July 25, 2013,
BNBM(Group)0002794-2801 (attached as Exhibit 28, and cited as "Ex. 28, Alibaba Contract").

through Alibaba, maybe that would give rise to jurisdiction.  But it was not.  In fact, while the Alibaba contract led to three inquiries from potential purchasers in Alabama almost a decade after the relevant period, in 2013 and 2014, it led to no customer inquiries from the forum states, and led to no sales anywhere in the United States.[99]  Therefore the Alibaba contract cannot lead to jurisdiction over BNBM Group.  If there had been sales in response to the Alabama requests for quotation, it would not establish jurisdiction in the forum states.  And even an actual  internet purchase by a resident of a forum state would not suffice to exercise jurisdiction.  *Boschetto v. Hansing*, 539 F.3d 1011, 1017-18 (9th Cir. 2008); *Action Tapes, Inc. v. Weaver*, No. Civ. 3:05-CV-1693-H, 2005 WL 3199706, at *2-3 (N.D. Tex. Nov. 23, 2005).

The plaintiffs claim that BNBM Group sales to the United States are evidenced by an international customer list, which they designated as plaintiffs' deposition exhibit 252.  In fact, the 30(b)(6) witness for BNBM Group testified that, having made inquiry before his deposition, "we have not accomplished any actual transactions with the American company [sic] reflected in the chart."[100]

## II.     BNBM GROUP DOES NOT DO BUSINESS IN OR HAVE MINIMUM CONTACTS WITH THE FORUM STATES

BNBM Group has had no contacts of any kind with Virginia or Louisiana.  The few sales of BNBM PLC "Dragon Brand" drywall for which BNBM Group acted as the export agent did not make it to Virginia or Louisiana or harm anyone there, as evidenced by the absence of plaintiff profile forms from Virginia and Louisiana.[101]

---

[99]   Ex. 4, Zhao Tr. 364:10-13, 434:6-21.

[100]   Ex. 4, Zhao Tr. 434:23-435:17.

[101]   *See* BNBM PLC Memorandum, at 21-22.

Nor has BNBM Group conducted any business in Florida or engaged in any activity that would bring BNBM Group within the Florida long-arm statute.  Fla. Stat. Ann. § 48.193 (2013). The closest BNBM Group came to Florida contacts was acting as the export agent for BNBM PLC in connection with its November 2005 sales of Dragon Brand drywall to EAC and Wood Nation.[102]  This limited export agency, entirely performed in China, does not begin to suffice to exercise jurisdiction over BNBM Group.  BNBM Group did not enter into or perform the export agency agreement in Florida.  It did not commit a tort, much less a substantial aspect of a tort, in Florida.  *Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335, 1345 (S.D. Fla. 2002); *Reiss v. Ocean World, S.A.*, 11 So.3d 404, 406 (Fla. 4 Dist. Ct. App. 2009).  Instead, BNBM Group engaged in no acts in Florida.  In 2005-2006, BNBM Group was not engaged in solicitation or service activities within Florida, and "products, materials, or things processed, serviced or manufactured" by BNBM Group were not used or consumed within Florida.  Fla. Stat. Ann. § 48.193(1)(a)(6) (2013).

Plaintiffs also cannot show that BNBM Group had minimum contacts in the forum states for due process purposes.[103]  BNBM Group did not "purposefully direct" its "activities at residents of the forum" or "purposely avail[] [itself] of the privilege of conducting activities within the forum state," and the litigation does not result from "alleged injuries that arise out of or relate to those activities."  *De Reyes v. Marine Mgmt. & Consulting, Ltd.*, 586 So.2d 103, 106 (La. 1991); *Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 328 (4th Cir. 2013); *Madara v. Hall*, 916 F.2d 1510, 1516-17 (11th Cir. 1990).

BNBM Group did not purposefully avail itself of the benefits of doing business in the forum states simply by acting as the export agent in the three November 2005 transactions.  *Cf.*

---

[102]   *See supra* 9-11,

[103]   *See* BNBM PLC Memorandum, at 78-84.

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (a nonresident may permissibly structure its conduct to avoid being haled into court in a particular state).  Its actions as export agent in dealing with two Florida customers are insufficient minimum contacts to find jurisdiction in any of the forum states.  *See*, *e.g.*, *Nicastro v. J. McIntyre Mach., Ltd*., 131 S.Ct. 2780, 2788 (2011); *Helicopteros Nacionales De Colombia, S.A. v. Hall*, 466 U.S. 408, 416-17 (1984); *Johnston v. Multidata Sys. Int'l Corp*., 523 F.3d 602, 611 (5th Cir. 2008).

Finally, even had BNBM Group taken any actions in or made any contacts with Florida, which it did not, those actions and contacts still would not suffice to establish jurisdiction given the utter lack of evidence that BNBM PLC Dragon Brand drywall injured anyone.[104]

## III.    THE CONTACTS OF OTHERS CANNOT BE IMPUTED TO BNBM GROUP

Taishan's contacts with the forum states, and BNBM PLC's and CNBM's contacts (if any), cannot be imputed to BNBM Group.  Because the question concerns the internal affairs of the corporation, any veil piercing or alter ego analysis related to BNBM Group must be conducted pursuant to the law of China.  As explained in the BNBM PLC Memorandum, Chinese law does not permit piercing the veil in these circumstances, particularly given how far removed BNBM Group is from BNBM PLC and Taishan.[105]

The result is the same if the law of Florida, Louisiana, or Virginia is applied.[106]  There is no indicia of fraud, excessive dominion or control, financial commingling, undercapitalization or non-functioning subsidiary management.  There are no allegations that BNBM Group exploited corporate separateness to perpetrate a fraud.  BNBM Group does not dominate publicly-owned

---

[104]   See BNBM PLC Memorandum, at 18-22.

[105]   *See* BNBM PLC Memorandum, at 51-60.

[106]   The alter ego law of Virginia, Louisiana and Florida is described at pages 60-68 of the BNBM PLC Memorandum.

CNBM, and CNBM does not exist just to serve BNBM Group's purposes.[107]  BNBM Group is

even further removed from exercising any control over BNBM PLC or Taishan.[108]  Nobody

could suggest there has been any commingling.  BNBM Group and CNBM are each well-

capitalized, as are BNBM PLC and Taishan.[109]  The  management of each company at each level

is robust and effective.

      "Courts impose liability on shareholders in only the most rare and extraordinary of

circumstances." *Morales v. Bayou Concessions Salvage, Inc.*, No. 03-657, 2004 WL 2381525, at

*2 (E.D. La. Oct. 22, 2004).  As explained in the BNBM PLC Memorandum and Professor

Gordon's accompanying declaration, the separation between CNBM and its subsidiary BNBM

PLC precludes a finding of alter ego.[110]  BNBM Group is still further removed, owning only

30% of CNBM and with no direct ownership of BNBM PLC or Taishan shares.[111]  Multiple

degrees removed from any defendant with forum contacts, BNBM Group certainly does not

present the rare and extraordinary case needed to pierce the corporate veil and exercise

jurisdiction.

## IV.   THE ACTIONS SHOULD BE DISMISSED BECAUSE BNBM GROUP HAS NOT BEEN SERVED WITH PROCESS

      Because BNBM Group was not properly served with process in any of the actions in

which this Court entered preliminary defaults against them, the Court does not have jurisdiction.

To acquire jurisdiction over the person, "a court must serve on the person a document, 'such as a

---

[107]   *See* Zhao Tr. 429:15-433:7

[108]   *See* Zhao Tr. 427:18-429:15;  *see also supra* note 8.

[109]   *See, e.g.*, Ex. 27, 2015 BNBM Group Auditor's Report; Ex. 10, 2014 CNBM Annual Report; Ex. 9, BNBM PLC 2014 Annual Report.

[110]   Ex. 12, Gordon Decl. ¶ 20 n.4.

[111]   *Id.*

summons, notice, writ, or order.'" *McGuire v. Sigma Coatings, Inc.*, 48 F.3d 902, 907 (5th Cir. 1995). This fundamental tenet applies to default judgments. *See Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*, 841 F.2d 646, 649 (5th Cir. 1998); *High Island Health, LLC v. Libertybelle Mktg. Ltd.*, No. CIV A H-06-2931, 2007 WL 1173631, at *3-7 (S.D. Tex. Apr. 18, 2007) (granting defendant's motion to dismiss after default judgment vacated because of insufficient service of process). Here, the *Gross* and *Amorin* plaintiffs did not succeed in making service on BNBM Group in case numbers 09-6690, 11-1672, 11-1395 and 11-1673, because in each of those cases, the plaintiffs attempted to serve BNBM Group at an incorrect address.[112] The Louisiana Attorney General also has not made service on BNBM Group.

Service on persons outside the United States is required to conform to the provisions of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters. "Statutes governing service of process must be strictly construed, and valid service on a corporation may only be effected by complying with them." *SDS-IC v. Florida Concentrates Int'l, LLC*, 157 So.3d 389, 392 (Fla. 2d DCA 2015) (citing *Int'l Steel Trust Co. v. Artec Grp., Inc.*, 824 So.2d 340, 342 (Fla. 2d DCA 2002) (service on a Chinese corporation was invalid and did not confer personal jurisdiction where the service complied with neither Florida law nor the Hague convention)).

If the Hague Convention procedures on service do not apply, Federal Rule of Civil Procedure 4(f)(3), in certain stiuations, allows service on a foreign defendant "by other means not prohibited by international agreement, as the court orders." *BP Prods. N. Am., Inc. v. Dagra*, 236 F.R.D. 270, 271 (E.D. Va. 2006) (quoting Rule 4(f)(3)). This provision allows the district

---

[112] *Compare* Ex. 29, Exhibit 95 to Zhao Tr. (showing the PSC attempted service at No. 16 West Road Jiancaicheng, Xisanqi, Haidian District, Beijing 100096 China), *with id.* 355:17-20 (BNBM Group testifying that its address is 10/F Building 4, Interwest Business Center, No. 9 South Road, Suouti, Haidian District, Beijing, China).

court to "craft alternate means of service" if warranted and if appropriate under the federal rules. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002). That provision is irrelevant here because the plaintiffs must follow the Hague Convention's service procedures. Simply claiming that service via those procedures is futile or inconvenient is insufficient. Yet that is precisely what the *Gross* and *Amorin* plaintiffs have done here. The Court therefore lacks jurisdiction over BNBM Group. BNBM Group respectfully requests that the complaints against it be dismissed for lack of service, pursuant to Rule 12(b)(5).

## CONCLUSION

For all of the foregoing reasons, and the reasons set forth in the accompanying exhibits, the BNBM PLC Memorandum and the declarations and exhibits thereto, including without limitation the declarations of Professor Jeffrey Gordon and Bruce Deal, BNBM Group respectfully requests the Court to dismiss the complaints against it in this MDL proceeding under Federal Rules 12(b)(2) and 12(b)(5).

Dated: October 26, 2015

Respectfully submitted,

**DENTONS US LLP**

By: */s/ Michael H. Barr*
Michael H. Barr
New York Bar No. 1744242
Justin N. Kattan
New York Bar No. 3983905
1221 Avenue of the Americas
New York, New York 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
michael.barr@dentons.com
justin.kattan@dentons.com

Richard L. Fenton
Illinois Bar No. 3121699
Leah R. Bruno
Illinois Bar No. 6269469
233 South Wacker Drive
Suite 7800
Chicago, Illinois  60606-6306
Telephone:  (312) 876-8000
Facsimile:  (312) 876-7934
richard.fenton@dentons.com
leah.bruno@dentons.com


C. Michael Moore
Texas Bar No. 14323600
Matt Nickel
Texas Bar No. 24056042
2000 McKinney Ave, Suite 1900
Dallas, Texas  75201
Telephone:  (214) 259-0900
Facsimile:  (214) 259-0910
mike.moore@dentons.com
matt.nickel@dentons.com

Kenneth J. Pfaehler
D.C. Bar No. 461718
Drew Marrocco
D.C. Bar No. 453205
1301 K Street N.W.
Suite 600, East Tower
Washington, D.C. 20005
Telephone:  (202) 408-6400
Facsimile:  (202) 408-6399
kenneth.pfaehler@dentons.com
drew.marrocco@dentons.com


- and -

27

**PHELPS DUNBAR LLP**

Harry Rosenberg
Louisiana Bar No. 11465
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130
harry.rosenberg@phelps.com

*Attorneys for Beijing New Building Material (Group) Co., Ltd. and Beijing New Building Materials Public Limited Company*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing **Memorandum In Support of Motion to Dismiss the Complaints Pursuant to Rules 12(b)(2) and 12(b)(5)** has been served on Plaintiffs' Liaison Counsel, Leonard Davis, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with the Pretrial Order No. 6, and that the foregoing was also electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this October 26, 2015.

/s/      *Michael H. Barr*