Confidential - Subject to Further Confidentiality Review

Page 1

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

- - -

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED : | MDL NO. 2047 |
| DRYWALL PRODUCTS LIABILITY  : | SECTION:  L |
| LITIGATION  : | |
|   : | |
| THIS DOCUMENT APPLIES TO ALL : | JUDGE FALLON |
| CASES  : | MAG. JUDGE WILKINSON |

- - -

CONFIDENTIAL - SUBJECT TO FURTHER
CONFIDENTIALITY REVIEW

Tuesday, August 4, 2015

- - -

     Videotaped 30(b)(6) deposition of GREAT WESTERN BUILDING MATERIALS, through its representative, LARRY ROGERS, held at FERGUSON CASE ORR PATERSON, L.L.P., 1050 South Kimball Road, Ventura, California, commencing at approximately 9:05 a.m., before Rosemary Locklear, a Registered Professional Reporter, Certified Realtime Reporter and California CSR (#13969).

- - -

**EXHIBIT 17**

GOLKOW TECHNOLOGIES, INC.
877.370.3377 ph | 971.591.5672 fax
deps@golkow.com

Confidential - Subject to Further Confidentiality Review

Page 6

1  VIDEO OPERATOR: We are now on the record.
2  My name is Jim Lopez. I'm a videographer for
3  Golkow Technologies. Today's date is August 4th, 2015,
4  and the time is approximately 9:05 a.m.
5  This video deposition is being held in Ventura,
6  California, in the matter of In Re. Chinese-Manufactured
7  Drywall Products Liability Litigation, MDL Number 2047,
8  for the United States District Court, Eastern District
9  of Louisiana.
10  The deponent is Larry Rogers, 30(b)(6) witness
11  of Great Western Building Materials.
12  Counsel and all present, will you please
13  identify yourselves.
14  MR. GEORGE: Go ahead.
15  MR. TREDWAY: David Tredway, appearing on behalf
16  of Mr. Rogers.
17  MR. GEORGE: Scott Alan George for the PSC.
18  MR. KATTAN: Justin Kattan from Dentons US,
19  L.L.P., on behalf of BNBM PLC and BNBM (Group).
20  VIDEO OPERATOR: All those on the line?
21  MS. HELLER: This is Mack Heller from Alston &
22  Bird on behalf of Taishan Gypsum Co.
23  VIDEO OPERATOR: Counsel will be noted on the
24  stenographic record.
25  The court reporter is Rosemary Locklear, and she

Confidential - Subject to Further Confidentiality Review

Page 7

1   will now swear in the witness.
2            LARRY ROGERS, having been duly sworn, was
3   examined and testified as follows:
4                      EXAMINATION
5   BY MR. GEORGE:
6   Q.      Good morning, Mr. Rogers.
7   A.      Good morning.
8   Q.      I want to appreciate your -- I appreciate your
9   time today for this deposition.  I don't expect to take
10  more than a couple of hours with you this morning.
11           A couple ground rules will help move things
12  along.  Let me finish my question, pause, and then
13  answer and I'll let you finish your answer and then I'll
14  ask a question.  That way, we'll have a clear record for
15  the reporter to take down and there won't be any
16  confusion.
17           Does that make sense?
18  A.      Okay.
19  Q.      Okay.  And another thing is that if it's a yes
20  or no answer, to give a yes or no and don't do a shaking
21  of the head or nodding.  Unfortunately, the reporter
22  can't take that down, and we need a languaged exchange.
23           Does that make sense?
24  A.      Okay.
25  Q.      Okay.  Have you ever been deposed before?

Confidential - Subject to Further Confidentiality Review

Page 11

1   A.      March of this year.
2   Q.      Was the sale in -- have any relationship to the
3   litigation?
4   A.      No.
5   Q.      Okay.  To whom was it sold?
6   A.      Foundation Building Materials.
7   Q.      Were they already existing as a business?
8   A.      Yes.
9   Q.      So they acquired all of Great Western's
10  business?
11  A.      Yes.
12  Q.      What business are you working for now?
13  A.      Foundation Building Materials.
14  Q.      Okay.  And what's your title?
15  A.      Manager.
16  Q.      How long had you been the owner of Great Western
17  Building Materials?
18  A.      For 43 years.
19  Q.      Okay.  Did you found the business?
20  A.      Yes.
21  Q.      Okay.  Can you just give me a brief sense in the
22  last decade of what Great Western's business was?
23  A.      Great Western is a distributor of building
24  material, various specialty building materials products
25  in California.

Confidential - Subject to Further Confidentiality Review

Page 12

1  Q.     Okay.  So your market is -- was California?
2  A.     Correct.
3  Q.     Any other West Coast states?
4  A.     Arizona.
5  Q.     Anywhere else?
6  A.     No.
7  Q.     When you said specialty, specialty material
8  products, building material products, what does that
9  mean?
10 A.     We distributed products for walls and ceilings,
11 interior and exterior.
12 Q.     So in addition to drywall, what would be some of
13 the major materials you would stock?
14 A.     Exterior stucco products, lath and stucco
15 products, acoustical tile, door materials, insulation,
16 steel studs.
17        MR. GEORGE:  Let the record reflect someone has
18 come in.
19        Who are you, sir?
20        MR. CABOT:  What's that?
21        MR. GEORGE:  Who are you?
22        MR. CABOT:  Jason Cabot from Orrick for CNBM.
23        MR. GEORGE:  Okay.
24        Did you get that, Madam Reporter?
25        THE COURT REPORTER:  Yes.

Confidential - Subject to Further Confidentiality Review

Page 22

1   Q.      Okay.  So you have no understanding of any
2   difference between BNBM (Group) and BNBM PLC?
3   A.      I don't.
4   Q.      How did you first become aware of BNBM?
5   A.      I made a trip with -- with a supplier to Beijing
6   in 2005 and was meeting with -- it was part tourism trip
7   and -- and part business, just to meet some various
8   operations in China, and BNBM was one of the visits
9   that -- that I had when I was there.
10  Q.      Okay.  So BN --
11  A.      That was my first introduction to the company.
12  Q.      Okay.  Before you went on this trip, was the
13  meeting with BNBM arranged?
14  A.      It wasn't arranged by me but the -- the folks
15  that I went with, they had arranged a number of
16  different meetings and -- and -- and tours, plant tours,
17  with different groups.
18  Q.      Okay.  Who was the supplier who made this
19  arrangement?
20  A.      It was a company by the name of USA Wire.
21  Q.      How did you know them?
22  A.      They were one of our suppliers.
23  Q.      Are they based in California?
24  A.      They were.  In Corona, California.
25  Q.      And what was the purpose of your trip?

Confidential - Subject to Further Confidentiality Review

Page 23

1      MR. KATTAN:  Objection.  Asked and answered.
2      THE WITNESS:  They were a steel company, and I
3  believe they had -- you know, they were offering me a
4  chance to see one of the steel factories in China, and
5  then while we were there, there were some other visits
6  that were arranged.
7      MR. GEORGE:  Okay.
8  BY MR. GEORGE:
9  Q.    Including to BNBM?
10 A.    Yes.
11 Q.    Okay.  When you were at BNBM, do you remember
12 who you met with?
13 A.    No.
14 Q.    Did you meet with anybody from BNBM?
15 A.    I -- I believe so.
16 Q.    Okay.  Do you recall if you took any tour of the
17 facilities or manufacturing plants?
18 A.    Yes.
19 Q.    Okay.
20 A.    One of the gypsum manufacturing plants.
21 Q.    Does the name Dragon Board ring a bell to
22 you?
23 A.    No.
24 Q.    Was the tour given in English or Chinese?
25 A.    Well, the people that I was with spoke both.

Confidential - Subject to Further Confidentiality Review

Page 24

```
 1   Q.      Okay.
 2   A.      And so, you know, my portion of the tour was in
 3   English.
 4   Q.      Okay.  Did the people from BNBM who were giving
 5   the tour, did they engage with you in English or did
 6   they engage with you through intermediaries or a
 7   translator?
 8   A.      You know, I don't -- I don't remember.
 9   Q.      You don't remember?
10   A.      No.
11   Q.      You don't speak Chinese?
12   A.      No.
13   Q.      Does anyone at Great Western speak Chinese?
14   A.      No.
15   Q.      And that was in 2005?  When was this?
16   A.      2005.
17   Q.      Okay.  So that was your first encounter with
18   BNBM; correct?
19   A.      Yes.
20   Q.      What was your next encounter with BNBM?
21   A.      It was this transaction.
22   Q.      Okay.  Between the tour in 2005 -- and when you
23   say "this transaction," you mean the documents in
24   Exhibit 2 and 3, the two purchases?
25   A.      Correct.
```

Golkow Technologies, Inc. - 1.877.370.DEPS

Page 39

1  stamp, for and on behalf of BNBM, you don't know that --
2  who that is that signed that?
3  A.      I don't.
4  Q.      Okay.  Why was ASTM certification important for
5  your business?
6  A.      The ASTM is -- is a standard that is required by
7  most building, home builders, building contractors.
8  Q.      And if it didn't have that certification, how
9  would that impact your business?
10 A.      I'm sorry?
11 Q.      If it didn't have that certification of being
12 ASTM-compliant, how would that impact your business?
13 A.      More than likely, we wouldn't have purchased the
14 material if it did not meet that standard.
15 Q.      Okay.  Are there any other standards that you
16 made clear to BNBM that you needed to sell the product
17 on the American market?
18 A.      Nothing other than that it have the correct
19 dimensions.
20 Q.      Okay.  And they assured you that it did?
21 A.      Yes.
22 Q.      Okay.  And when it came here, did it?
23 A.      Yes.
24 Q.      Did they offer you any other size product or did
25 they just give you what you asked for?

Confidential - Subject to Further Confidentiality Review

Page 40

1   A.      That's all I asked for.
2   Q.      Okay.  In the course of these -- while you were
3   in the process of negotiating this first purchase, was
4   there any -- ever any discussions from them or from you
5   about other products of theirs that you could import and
6   sell in the American market?
7           MR. KATTAN:  Objection.  Asked and answered.
8           THE WITNESS:  No.
9           MR. GEORGE:  Okay.
10  BY MR. GEORGE:
11  Q.      Turning to Page 006, the fax we looked at
12  earlier, I assume Mr. Larry refers to you, sir?
13  A.      Yes.
14  Q.      Okay.  From BNBM.
15          It says, Dear Larry, date of shipment, January
16  10th, 2006.
17          Do you know whether that's accurate?
18  A.      I believe so.
19  Q.      Okay.  And this refers to this Contract Number
20  GB25190; correct?
21  A.      As far as I know, yes.
22  Q.      Okay.  In the course of your business with BNBM,
23  with this transaction, did you ever have any reason to
24  see any of these same documents in Chinese or were
25  all the documents you were given in English?

Page 65

1 Q. Okay. You didn't receive an invitation to go to
2 China from BNBM, did you?
3 A. No.
4 Q. Prior to going to China, you were not familiar
5 with BNBM?
6 A. No.
7 Q. Had your suppliers at USA Wire told you that you
8 would be meeting with people from BNBM prior to your
9 departure for China?
10 A. I -- I don't remember hearing the name BNBM
11 prior to the trip.
12 Q. Okay. So as of the time you were leaving for
13 China, you still had never even heard of BNBM; correct?
14 A. Not as far as I can remember.
15 Q. And while you were on this trip in China, you
16 didn't specifically ask to meet with BNBM; correct?
17 A. Correct.
18 Q. Between the time that you returned from your
19 trip to China in the first half of 2005 and the time
20 that you began discussions with the or with respect to
21 the first purchase of drywall from BNBM, do you recall
22 what the time gap there was?
23 A. I don't.
24 Q. Okay. It was a number of months; correct?
25 A. I don't recall.

Confidential - Subject to Further Confidentiality Review

Page 66

```
 1   Q.      Between the time that you returned from China --
 2   withdrawn.
 3           After you returned from China, nobody from BNBM
 4   reached out to contact you, either directly or
 5   indirectly, to solicit business following up on your
 6   meeting; correct?
 7   A.      I don't remember any contact with them.
 8   Q.      I'm talking about either directly or indirectly.
 9   A.      Correct.
10   Q.      And am I correct that sometime towards the end
11   of 2005, it was you, in fact, who reached out through
12   USA Wire to inquire of BNBM about the purchase of
13   drywall; correct?
14   A.      I believe that's the way it happened.
15   Q.      And am I correct that, again, with respect to
16   the second purchase of drywall, the one that occurred
17   sometime in 2006, from BNBM, again, that was as a result
18   of you reaching out to BNBM through USA Wire, not as a
19   result of BNBM soliciting additional business from you?
20   A.      Correct.
21   Q.      Am I correct that no one from BNBM came to the
22   United States in connection with the transactions that
23   you entered into with them?
24   A.      Nobody that I had contact with.
25   Q.      Well, are you aware of someone from BNBM who
```

Confidential - Subject to Further Confidentiality Review

Page 86

```
 1   STATE OF CALIFORNIA             )
 2   COUNTY OF LOS ANGELES           )
 3            I, ROSEMARY LOCKLEAR, a Certified Shorthand
 4   Reporter of the State of California, duly authorized to
 5   administer oaths pursuant to Section 2025 of the
 6   California Code of Civil Procedure, do hereby certify
 7   that
 8            LARRY ROGERS, the witness in the foregoing
 9   deposition, was by me duly sworn to testify the truth,
10   the whole truth and nothing but the truth in the
11   within-entitled cause; that said testimony of said
12   witness was reported by me, a disinterested person, and
13   was thereafter transcribed under my direction into
14   typewriting and is a true and correct transcription of
15   said proceedings.
16            I further certify that I am not of counsel or
17   attorney for either or any of the parties in the
18   foregoing deposition and caption named, nor in any
19   way interested in the outcome of the cause named in
20   said deposition dated the_____ day of
21   _____, 2015.
22
23
24
25   ROSEMARY LOCKLEAR, RPR, CRR, CSR 13969
```