**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

THIS DOCUMENT RELATES TO:

*The State of Louisiana v. Knauf Gips KG, et al.,*
No. 2:10-CV-0340 (E.D. La.).

**MEMORANDUM OF LAW OF DEFENDANTS BEIJING NEW BUILDING
MATERIALS PUBLIC LIMITED COMPANY AND BEIJING NEW BUILDING
MATERIAL (GROUP) CO., LTD.'S IN SUPPORT OF THEIR MOTION TO DISMISS
PURSUANT TO RULES 12(B)(2), 12(B)(5) AND 12(B)(6)**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 5

    A.    The State's Claims .............................................................................................. 5

    B.    BNBM PLC and BNBM Group Have Not Conducted Business in Louisiana ........................................................................................................... 7

    C.    Neither BNBM PLC Nor BNBM Group Injured Anyone in Louisiana ................ 8

    D.    Taishan Is Not An Alter Ego of Either BNBM PLC or BNBM Group ............... 10

ARGUMENT ...................................................................................................................... 13

I.    BNBM PLC AND BNBM GROUP ARE NOT SUBJECT TO JURISDICTION IN LOUISIANA ............................................................................................................ 13

II.    THE PETITION SHOULD BE DISMISSED BECAUSE IT DOES NOT STATE A CLAIM FOR RELIEF AGAINST BNBM PLC AND BNBM GROUP ..................... 16

    A.    The Claims Against BNBM PLC and BNBM Group Are Not Plausible ............ 16

    B.    The Petition Does Not State A Claim Against BNBM PLC and BNBM Group for  Violation of the Louisiana Unfair Trade Practices Act ....................... 19

    C.    The Petition Does Not State a Claim Against BNBM PLC and BNBM Group for  Violation of the Louisiana Products Liability Act ............................. 20

    D.    The Petition Does Not State A Claim for Negligence ......................................... 20

    E.    The Petition Does Not State A Claim for Fraud ................................................. 21

    F.    The Petition Does Not State A Claim for Negligent Misrepresentation .............. 21

III.    THE PETITION SHOULD BE DISMISSED BECAUSE BNBM PLC AND BNBM GROUP HAVE NOT BEEN SERVED WITH PROCESS ............................... 22

CONCLUSION ................................................................................................................... 25

CERTIFICATE OF SERVICE .......................................................................................... 28

Defendants Beijing New Building Materials Public Limited Company ("BNBM PLC") and Beijing New Building Material (Group) Co., Ltd. ("BNBM Group") respectfully submit this memorandum in support of their motion pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5) and 12(b)(6) for an order dismissing the State of Louisiana's Second Amended and Restated Petition (Rec. Doc. 18030, referred to as the "Petition") for lack of personal jurisdiction, failure of service and failure to state a claim upon which relief can be granted. Virtually all of the facts, arguments and authority set forth in the memoranda of law, declarations and exhibits submitted by BNBM PLC and BNBM Group in support of their accompanying motions to dismiss the class actions for lack of jurisdiction and failure of service (the "MDL Dismissal Memoranda") also apply here.  To avoid burdening the Court with repetitive briefing, BNBM PLC and BNBM Group incorporate those facts, arguments and authority by reference in this brief.[1]

## INTRODUCTION

The defendants have reviewed 23,000 profile forms submitted on behalf of all the plaintiff classes in the MDL litigation.  Not one identifies a Louisiana resident who claims to have been harmed by BNBM PLC drywall.  The Attorney General alleges that he is suing BNBM PLC and BNBM Group as *parens patriae* for injured Louisianans and to recoup lost property taxes and expenses incurred by the State or its subdivisions in assisting injured citizens and remediating state buildings.[2]  But with no Louisiana residents claiming injury by BNBM

---

[1]  *See* (Rec. Docs. 19631-2 and 19649-2), including Memorandum of Beijing New Building Materials Public Limited Company in Support of Its Motion to Dismiss the Complaints Pursuant to Rules 12(b)(2) and 12(b)(5), found at (Rec. Doc. 19631-3) (the "BNBM PLC MDL Dismissal Memorandum") and Memorandum of Beijing New Building Materials (Group) Co., Ltd. in Support of Its Motion to Dismiss the Complaints Pursuant to Rules 12(b)(2) and 12(b)(5), found at (Rec. Doc. 19649-3) ("BNBM Group MDL Dismissal Memorandum").

[2]  Petition ¶¶ 191-194.

PLC or BNBM Group, the Attorney General cannot be protecting their interests or seeking to recover losses sustained by state or local government in connection with their injuries.

The absence of any BNBM PLC drywall in Louisiana and any actual harm to the citizens or government is mirrored in the Petition by the absence of any concrete allegations against BNBM PLC or BNBM Group. The Petition contains hundreds of paragraphs of detailed allegations about Knauf Gips KG, Knauf International GMBH and other companies who the Attorney General claims manufactured defective drywall, shipped it into Louisiana and injured residents when the wallboard was hung in their homes. But the Petition contains not a single equivalent paragraph, not a single equivalent detailed allegation, with respect to BNBM PLC or BNBM Group. Indeed, they are mentioned by name in only seven of the Petition's 267 paragraphs. Paragraph 30 conclusorily alleges that BNBM PLC "caused the drywall at issue in this case to be imported, distributed, supplied, inspected, marketed and/or sold," and "consistently exerted control over TG and its subsidiaries when these entities were exporting problematic drywall to the United States;" in paragraph 31, the same conclusory language is bestowed on BNBM Group; paragraphs 32, 33 and 93 state that defendant China National Building Material Co., Ltd. ("CNBM PLC") is "a partially owned subsidiary" of BNBM Group and that "BNBM Group is owned and/or controlled by China National Building Materials Group Co. ('CNBM Group');" paragraph 34 is definitional; and paragraph 133 accuses BNBM PLC of trying to avoid jurisdictional discovery by not appearing earlier in the case.[3] That is it: not a single allegation of any misrepresentation, act of concealment, act of fraud, or act that injured

---

[3]   Petition at ¶¶ 30-34, 93 & 133. Given the extensive jurisdictional discovery that BNBM PLC and BNBM Group have freely, fully and expeditiously responded to and participated in for the last six months—and the failure of the Attorney General to ask a single question of a single BNBM PLC or BNBM Group deposition witness—the Attorney General should withdraw the baseless allegation of avoiding discovery in paragraph 133.

anyone in the State of Louisiana; not a single allegation of a person injured by BNBM PLC drywall.

The State's claims against BNBM PLC and BNBM Group are belied not only by the absence of any Louisianans injured by BNBM PLC drywall, but by the Consumer Product Safety Commission ("CPSC") investigation of Chinese-manufactured drywall—which the Petition discusses at length.[4]  The Petition alleges that BNBM PLC and BNBM Group were "notified by the CPSC and others about defects found in the drywall they manufactured, distributed and sold."[5]  To the contrary, and as the public record of the CPSC investigation shows, the CPSC actually concluded that the samples of BNBM PLC's drywall, or Dragon Brand drywall, it tested "had low or no detectable emissions of hydrogen sulfide" and were comparable to "drywall samples that were manufactured domestically."[6]

Accordingly, the Petition must be dismissed because it fails to state a plausible claim as required by Federal Rule 12(b)(6).  It is not plausible to claim you are suing on behalf of injured citizens when your citizens, in court filings that are a matter of public record, say they are not injured.  It is not plausible to allege that companies were placed on notice of defects by an investigation that concluded that BNBM PLC's drywall was not defective.  The Petition also fails to plead its claims of fraud, misrepresentation, concealment, conspiracy and violations of the Louisiana Unfair Trade Practices Act and Product Liability Act against BNBM PLC and BNBM Group with any factual detail at all, much less the specificity required by Rule 9(b).

---

[4]  Three pages of allegations in the Petition are devoted to the CPSC investigation.  *See* Petition ¶¶ 161-172.

[5]  Petition ¶ 171.

[6]  *See* the discussion of the CPSC investigation and testing at pages 18-21 in the BNBM PLC MDL Dismissal Memorandum.

Given the lack of contacts by BNBM PLC or BNBM Group with Louisiana and the lack of injury in this state, it also is hard to understand why Louisiana thinks the Court can exercise jurisdiction over either company.  The State has not articulated its theory of jurisdiction in the Petition or elsewhere.  Paragraphs 30-33 suggest that the State is seeking to recover against BNBM PLC or BNBM Group on a theory of alter ego liability, and may seek to impute the jurisdictional contacts of Taishan to BNBM PLC and BNBM Group on that basis.  But BNBM PLC or BNBM Group cannot be considered alter egos of Taishan.  Six months of jurisdictional discovery has shown that while BNBM PLC owns a majority of Taishan's stock, there is zero evidence that the companies are alter egos.[7]  After all, BNBM PLC did not create Taishan, which was a thriving, independent business when BNBM PLC acquired its interest in Taishan.  BNBM PLC paid fair value when it purchased Taishan stock, retained the original management team and gave them incentive and autonomy to continue running their own company in their own way, and preserved Taishan's operational, management and financial autonomy.  There are no allegations that Taishan's corporate form has been used to defraud anyone or that there has been any operational, business or financial commingling.  Both Taishan and BNBM PLC have performed exceptionally well, year after year, but Taishan has actually had the higher net revenue and profits.  In other words, and as demonstrated in detail in the MDL Dismissal Memoranda, by every established standard BNBM PLC is not the alter ego of Taishan.

Any alter ego claim against BNBM Group would be even more attenuated.  BNBM Group owns no shares in Taishan or BNBM PLC.  It is a separate, wholly owned subsidiary of CNBM Group engaged in the building supply industry.  The most the State can say about BNBM Group is that it is a minority shareholder (approximately 30%) of publicly-owned CNBM PLC.

---

[7]   *See* BNBM PLC MDL Dismissal Memorandum, at 23-51.

There is no evidence that BNBM Group directed anyone to make any of the drywall sales at issue in these cases.

The Petition also should be dismissed under Rule 12(b)(5) because the State has not served either BNBM PLC or BNBM Group with process. The State claims to have served both defendants in January 2015 by providing copies of the Petition to Hogan Lovells and Stanley, Reuter, Ross, Thornton & Alford, LLC. Yet neither of those firms ever appeared on behalf of BNBM PLC or BNBM Group. Nor can the State lawfully serve BNBM PLC and BNBM Group by serving their United States counsel. Rule 4(f)(3) does not permit such service, and the State has not shown that it made a reasonable attempt to serve either defendant in compliance with the Hague Convention. To the contrary, the state concedes that it never attempted to serve BNBM Group directly. Therefore BNBM PLC and BNBM Group respectfully request the Court to dismiss the Petition against them.

## FACTUAL BACKGROUND

### A.     The State's Claims

The Attorney General alleges that "Louisiana's Port of New Orleans received a large number of shipments of Defendants' Chinese drywall" that were later used to construct, repair or rebuild "Louisiana homes and buildings after Hurricanes Katrina and Rita."[8] The State concedes that the "overwhelming majority" of this defective drywall "came from the Knauf Entities," which are wholly unrelated to BNBM PLC and BNBM Group.[9] Tellingly, the Petition specifies Knauf's and Taishan's alleged efforts to market drywall in Louisiana, and details the harm

---

[8]   Petition ¶¶ 40-41.

[9]   *Id.* ¶ 42. The "Knauf Entities" are defined as defendants Knauf Gips KG, Knauf International GmbH, Knauf Plasterboard (Tianjin) Co. Ltd., Knauf Plasterboard (Wuhu) Co. Ltd., Guangdong Knauf New Building Material Products Co. Ltd., Knauf Insulation, GmbH, and Gebrueder Knauf Verwaltungsgesellschaft, KG. *See* Petition, at 1.

allegedly caused by their defective drywall, but does not claim that any defective drywall in the state was manufactured or sold by BNBM PLC or BNBM Group, or that either company actively marketed wallboard in Louisiana.  Nobody in Louisiana claims to have been harmed by BNBM PLC drywall.

Instead of describing direct injury, the State conclusorily alleges that BNBM PLC and BNBM Group "controlled" Taishan in some unspecified way when Taishan sold its allegedly defective drywall into Louisiana.[10]  This claim of control has been conclusively disproven by the jurisdictional discovery conducted in the MDL.[11]

Based on allegations that the drywall manufactured by Knauf and Taishan and installed in Louisiana was defective, the State seeks to recoup several categories of damages, all for harm allegedly caused to Louisiana citizens, property or governments.  The State brings these claims in its sovereign capacity and as the "trustee, guardian and representative on behalf of all citizens of the State of Louisiana and on behalf of all parishes, municipalities and other local political subdivisions of Louisiana."[12]  The Petition expressly limits the alleged recoverable damages to harm caused within the state by "the presence of Defendants' drywall in this State."[13] Specifically, Louisiana seeks compensation for the cost of inspecting and testing state buildings to determine the presence of defective drywall, "testing and monitoring of homes and other businesses in the state for the presence of Defendants' drywall," community monitoring, reporting and permitting by state agencies, "increased disposal fees" and landfill costs, medical expenses incurred by the state under Medicare, Medicaid and other programs to provide

---

[10]  *Id*. ¶¶ 30-31.

[11]  *See* BNBM PLC MDL Dismissal Memorandum, at 22-34; BNBM Group MDL Dismissal Memorandum, at 11-14.

[12]  *Id*. ¶ 191.

[13]  *See id*. ¶¶ 182-186, 191.

treatment to "eligible citizens" caused by their exposure to defective drywall, losses to the State's "Road Home Program incurred as a result of loans, advances or grants made by it to homeowners who received such funding as a result of Hurricanes Katrina, Rita, Gustav or Ike to repair homes which have been harmed because of" defective drywall, and the loss of anticipated expected property taxes and other revenues.[14]  Simple logic dictates that BNBM PLC and BNBM Group could not have caused any of these alleged damages, since neither company sold drywall into Louisiana, and no one in Louisiana claims to have bought or been harmed by drywall made or sold by either company.

**B.      BNBM PLC and BNBM Group Have Not Conducted Business in Louisiana**

BNBM PLC is a publicly-traded Chinese company that manufactures building materials, including drywall, in China.[15]  BNBM Group is a Chinese company in the business of manufacturing pre-fabricated houses, selling domestic building supplies and exporting goods on behalf of third parties; BNBM Group has not manufactured drywall since 1997.[16]  Neither BNBM PLC nor BNBM Group conducts, or has ever conducted, business in Louisiana.

BNBM PLC's and BNBM Group's lack of jurisdictional contacts in Louisiana are set forth in detail in their MDL motions to dismiss filed contemporaneously with this motion, and we will not burden the Court with a full recitation of the relevant evidence.[17]  It is worth noting here, however, that neither company has ever registered to do business, had an office, paid taxes,

---

[14]   *Id*. ¶¶ 190(h), 194(f).

[15]   *See generally* BNBM PLC Annual Report for 2014, attached as Exhibit 1 to BNBM PLC's October 22, 2015 Motion to Dismiss (Rec. Doc. 19631-4).

[16]   Beijing New Building Material (Group) Co., Ltd. 2001 Auditor's Report, prepared by ShineWing Certified Public Accountants Co., Ltd., March 1, 2002, at BNBM(Group)00000038, attached as exhibit 5 to BNBM Group's Memorandum In Support of Motion to Dismiss the Complaints Pursuant to Rules 12(b)(2) and 12(b)(5); (Rec. Doc. 19649-8).

[17]   (Rec. Doc. 19631-3), at 15-21, 73-75; (Rec. Doc. 19649-2), at 4-15, 17-21.

or owned or leased property in the United States.  Neither company has ever marketed or

advertised drywall in Louisiana.  No sales representatives have ever traveled to Louisiana or

otherwise reached out to Louisiana to market or sell drywall (or any other product).  Although

BNBM PLC, following solicitations from U.S. buyers between November 2005 and July 2006,

sold drywall to five American customers, and BNBM Group acted as export agent for the first

three sales, none of the importers were from Louisiana and no drywall was shipped there.[18]

There is no evidence that BNBM PLC drywall entered Louisiana.[19]  These limited transactions

are insufficient to establish jurisdiction over either BNBM PLC or BNBM Group in any U.S.

forum, much less in Louisiana.

### C.    Neither BNBM PLC Nor BNBM Group Injured Anyone in Louisiana

Apart from the facts that BNBM PLC and BNBM Group never sold drywall into the

State of Louisiana, and that BNBM Group has not even manufactured drywall since 1997,

BNBM PLC's drywall could not have injured anyone in Louisiana because it was not defective.

The CPSC tested BNBM PLC drywall from 2006, obtained in the U.S., and determined that it

did not have the high levels of sulfur emissions found in other drywall manufactured in China.

---

[18]   Declaration of Kai Cai ¶¶ 6, 7, 10(a)-(e), attached as Exhibit 25 to BNBM PLC's October 22, 2015 Motion to Dismiss (Rec. Doc. 19631-28); *see also* the following contracts identifying purchasers as residents of Florida—all of which were filed under seal as exhibits to BNBM PLC's October 22, 2015 Motion to Dismiss: EAC & Sons Purchase Agreement, BNBMPLC0007421-7423, attached as Exhibit 26 (Rec. Doc. 19631-29); Davis Construction Purchase Agreement, BNBMPLC 0007467-7479, attached as Exhibit 27 (Rec. Doc. 19631-30); Wood Nation Inc. Purchase Agreement, BNBMPLC0007445-7448, attached as Exhibit 28 (Rec. Doc. 19631-31); California—Great Western Building Materials Purchase Agreements, BNBMPLC0007430-7433 and BNBMPLC0007441-7444, respectively, attached as Exhibits 29 and 30, respectively (Rec. Docs. 19631-32 and 19631-33, respectively); Connecticut—Triorient Trading Inc. Purchase Confirmations, *Id*. ¶¶ 6, 7, 10(a)-(e); BNBMPLC0007456-7460 and BNBMPLC00007461-7466, attached as Exhibits 31 and 32, respectively (Rec. Docs. 19631-34 and 19631-35, respectively).

[19]   BNBM PLC MDL Dismissal Memorandum, at 15-16, 73-74.

While some Chinese manufactured drywall tested by the CPSC had high emissions levels, "[o]ther Chinese drywall samples had low or no detectable emissions of hydrogen sulfide as did the drywall samples tested that were manufactured domestically.  They include . . . Dragon Brand, Beijing New Building Materials Co. Ltd.: (2006) China."[20]  The BNBM PLC MDL Dismissal Memorandum describes the CPSC testing results and testimony from the American importers that there were no defects in BNBM PLC's drywall, the "Dragon Brand" drywall.[21]

Consistent with that evidence, the profile forms submitted by the MDL plaintiffs reflect that no resident of Louisiana claims to have been injured by drywall manufactured or sold by BNBM PLC or BNBM Group.  On April 3, 2015, BrownGreer PLC produced 23,057 plaintiff profile forms.[22]  In addition, on April 30 BrownGreer served an excel spreadsheet containing a summary of supplemental profile form data for 3,736 plaintiffs; on May 1, 2015, the Plaintiffs Steering Committee served 496 supplemental profile forms in PDF format; and on May 6, 2015, BrownGreer produced 1,806 additional documents, which primarily consisted of supplemental profile forms and inspection reports.[23]  Finally, on October 20, 2015, the Plaintiffs Steering Committee served an additional 229 profile forms on Defendants' Liaison Counsel, Harry Rosenberg.[24]  The original 23,057 profile forms, and all of the supplemental forms and reports

---

[20] While the Petition expressly references the CPSC report, which therefore can be considered in its entirety on this Motion, the State ignores its favorable findings as to BNBM PLC's "Dragon Brand" drywall.  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

[21] (Rec. Doc. 19631-3), at 18-21.

[22] June 8, 2015, Supplemental Declaration of Carolyn F. Taylor in Support of the Federal Rule of Evidence 1006 Summary of Property Owners Identifying BNBM or Dragon Brand Drywall, marked by BNBM PLC and BNBM Group as Defendants' Exhibit 28 at the June 9, 2015 damages hearing before the Court ¶ 3 (attached as Exhibit 1).

[23] *Id*. ¶¶ 11, 13.

[24] Oct. 20, 2015 email from Lenny Davis, Herman Herman & Katz, L.L.C. to Harry Rosenberg, Phelps Dunbar LLP regarding profile forms (attached as Exhibit 2 and cited as "Ex. 2, Oct. 20, 2015 Davis email").

produced by the MDL plaintiffs, have been reviewed, and out of all these claims only 69—less than one quarter of one percent of all forms—used the words "BNBM," "Dragon" or "Beijing" when identifying the manufacturer of the drywall found in their homes (regardless of whether they are even class members), and none of those 69 were property owners in Louisiana.[25]

### D.    Taishan Is Not An Alter Ego of Either BNBM PLC or BNBM Group

The State alleges, erroneously, that BNBM PLC "controlled" Taishan; that BNBM Group, in turn, "controlled" BNBM PLC; and that both entities "caused" Taishan to supply its allegedly defective drywall in Louisiana.[26]   The State, like the plaintiffs in the various class actions before the Court, will no doubt argue that BNBM PLC's and BNBM Group's purported "control" over Taishan allows this Court to exert jurisdiction over BNBM PLC and BNBM Group based on Taishan's contacts.

The MDL Dismissal Memoranda describe in detail the evidence showing that Taishan, BNBM PLC and BNBM Group are not alter egos and why Taishan's jurisdictional contacts with Louisiana cannot be imputed to BNBM PLC and BNBM Group.[27]   Some of the most salient facts include:

- BNBM PLC did not create or incorporate Taishan.  Rather, BNBM PLC acquired its shares through two arm's-length transactions, and paid fair value subject to a third-party audit and asset valuation process.[28]   Through

---

[25]   Ex. 1, Taylor Supp. Decl. ¶ 17 and exhibit 1; Ex. 2, Oct. 20, 2015 Davis email.

[26]   Petition ¶¶ 30-31, 93.

[27]   *See* (Rec. Doc. 19631-3), at 6-14, 22-33, 35-68.

[28]   *See* Declaration of Yanjun Yang ¶ 8, attached as Exhibit 3 to BNBM PLC's October 22, 2015 Motion to Dismiss (Rec. Doc. 19631-6); *see also* Transcript of the Deposition of Tongchun Jia, taken April 2011 and January 2012, at 576:22-578:5, 594:9-17, 595:10-597:16, attached as Exhibit 4 to BNBM PLC's October 22, 2015 Motion to Dismiss (Rec. Doc. 19631-7); BNBM PLC Board Resolution (20050423), BNBMPLC 0004402-4403, attached as Exhibit 5 to BNBM PLC's October 22, 2015 Motion to Dismiss (Rec. Doc. 19631-8) ("Beijing Zhongzheng Appraisal Co., Ltd. qualified for guarantees appraised Shandong Taihe Dongxin Co., Ltd. and issued ZZA Bao Zi [2005] No. 010 Assets Appraisal Report to show that the appraised net assets

these acquisitions, BNBM PLC acquired a 65% equity interest in Taishan during the relevant period.[29]  The other 35% was owned by other investors.[30]

- Taishan is a successful and autonomous company.  The Taishan management team in place when BNBM PLC first acquired its shares largely continues in place today, and Taishan has always maintained separate offices and manufacturing facilities.[31]  Since BNBM PLC's investment, Taishan's annual net revenues and profit margins have exceeded BNBM PLC's.[32]

- There is no financial commingling between the companies.  At least from the time BNBM PLC acquired its interest in Taishan, Taishan has been adequately capitalized and has had sufficient funding for its operations.[33]

---

of Shandong Taihe Dongxin Co., Ltd. is 14,687.65 Yuan in the appraisal base date of Mar. 31, 2005, and the net asset per stock is 1.77 Yuan.  All parties reached an agreement on the basis of the appraisal result above and purchased new stocks of Shandong Taihe Dongxin Co., Ltd, with price of $1.8 Yuan per stock."); BNBM PLC Board Resolution (20060828) BNBMPLC000445R-447R, at BNBMPLC000445R, attached as Exhibit 6 to BNBM PLC's October 22, 2015 Motion to Dismiss (Rec. Doc. 19631-9) ("In accordance with the equity transfer agreement, the company purchased 100% equity of Taian Donglian Investment & Trade Co., Ltd. from Liu Huan and Jiao Wenbo with cash of 114.54 million Yuan"); Equity Purchase Announcement (20060828), BMBMPLC0006218-6220, at BMBMPLC0006218, attached as Exhibit 7 to BNBM PLC's October 22, 2015 Motion to Dismiss (Rec. Doc. 19631-10) ("Beijing Xinghua Public Certified Accountants Co., Ltd. with the securities business qualifications conducted an audit . . . . As of June 30, 2006, the audited total assets of Donglian Company were RMB88.0413mn and its audited net assets were RMB78.6857mn. Zhongshang Assets Appraisal Co., Ltd. with the securities business qualifications conducted an appraisal . . . . With June 30, 2006 as the appraisal reference date, the appraised total assets of Donglian Company were RMB117.097mn and its appraised net assets were RMB107.7414mn.").

[29]  Yang Decl. ¶ 8.

[30]  Transcript of the deposition of Yu Chen, at 76:11-77:1, attached as Exhibit 2 to BNBM PLC's October 22, 2015 Motion to Dismiss (Rec. Doc. 19631-5).

[31]  *Id*. 595:19-596:2.

[32]  Declaration of Professor Jeffrey N. Gordon ¶ 47, attached as Exhibit 12 to BNBM PLC's October 22, 2015 Motion to Dismiss (Rec. Doc. 19631-15).

[33]  Yang Decl. ¶ 9; BNBM PLC Annual Report 2006, BNBMPLC0000490-0605, at BNBMPLC0000516-0517, relevant excerpts attached as Exhibit 49 to BNBM PLC's October 22, 2015 Motion to Dismiss (Rec. Doc. 19631-52); BNBM PLC Annual Report 2007, BNBMPLC0000722-0841, at BNBMPLC0000749, relevant excerpts attached as Exhibit 50 to BNBM PLC's October 22, 2015 Motion to Dismiss (Rec. Doc. 19631-53); BNBM PLC Annual Report 2008, BNBMPLC0000961-1080, at BNBMPLC0000992, relevant excerpts are attached as Exhibit 51 to BNBM PLC's October 22, 2015 Motion to Dismiss (Rec. Doc. 19631-54);

BNBM PLC has never: financed Taishan's operations by providing non-repayable funds; paid debts for Taishan; paid Taishan's expenses; or paid Taishan's losses.[34]

- Taishan and BNBM PLC are managed and operated independently: BNBM PLC and Taishan have never had overlapping executives or employees.[35]  BNBM PLC does not determine the remuneration for Taishan employees or officers.[36]  Taishan does not contract for BNBM PLC or fulfill BNBM PLC's contracts, or vice versa.[37]

- Taishan and BNBM PLC each manufactures products under its own brand names, and the companies focus their sales efforts on different segments

---

BNBM PLC Annual Report 2009, BNBMPLC0001229-1378, at BNBMPLC0001255-1256m relevant excerpts attached as Exhibit 52 to BNBM PLC's October 22, 2015 Motion to Dismiss (Rec. Doc. 19631-55); BNBM PLC Annual Report 2010, BNBMPLC0001542-1695, at BNBMPLC0001569, relevant excerpts attached as Exhibit 53 to BNBM PLC's October 22, 2015 Motion to Dismiss (Rec. Doc. 19631-56); BNBM PLC Annual Report 2011, BNBMPLC0001862-2018, at BNBMPLC0001888, relevant excerpts attached as Exhibit 54 to BNBM PLC's October 22, 2015 Motion to Dismiss (Rec. Doc. 19631-57); BNBM PLC Annual Report 2012, BNBMPLC0002273-2480, at BNBMPLC0002290-2291, relevant excerpts attached as Exhibit 55 to BNBM PLC's October 22, 2015 Motion to Dismiss (Rec. Doc. 19631-58); BNBM PLC Annual Report for 2014, at BNBMPLC0003185; BNBM PLC Annual Report 2013, BNBMPLC0002743-2944, at BNBMPLC0002762, relevant excerpts attached as Exhibit 48 to BNBM PLC's October 22, 2015 Motion to Dismiss (Rec. Doc. 19631-51).

[34]  Yang Decl. ¶¶ 10, 18; Chen Tr. 600:3-8.

[35]  Chen Tr. 595:19-596:2, 596:12-15, 599:14-20; Transcript of the deposition of Gang Che, at196:23-197:2, relevant pages attached as Exhibit 57 to BNBM PLC's October 22, 2015 Motion to Dismiss (Rec. Doc. 19631-60).  The sole exception is Taishan Chairman Tongchun Jia, who held the title of "Deputy General Manager" at BNBM PLC from August, 2005 until September, 2012, but who had no actual duties or responsibilities in that position.  Chen Tr. 599:14-600:2; Jia. 2011 & 2012 Tr. 880:17-23, 935:8-936:3; Che Tr. 97:4-16.  Mr. Jia did "not receive[] a penny for the position" that he had with BNBM as its deputy general manager.  Jia 2011 & 2012 Tr. 935:12-16; *see also* 880:17-23.  "My salary is all from TG."  *Id.* at 935:16-17.

[36]  Transcript of the deposition of Bing Wang, at 247:8-17, relevant pages of the transcript attached as Exhibit 38 to BNBM PLC's October 22, 2015 Motion to Dismiss (Rec. Doc. 19631-41).

[37]  Chen Tr. 601:2-24.

of the drywall market.[38]  To the extent their market segments have overlapped, BNBM PLC has been an "active competitor" of Taishan.[39]

In dealings with American companies, BNBM PLC never held itself out to be Taishan, or vice versa.  To the contrary, and as the drywall marketplace understands, Taishan and BNBM PLC are separate companies.

BNBM Group, for its part, has never had an ownership interest in Taishan and has had no ownership interest in BNBM PLC since 2005.  BNBM Group and BNBM PLC have been managed and operated independently since BNBM PLC was formed in 1997.  There are neither allegations nor any evidence that BNBM Group played any role in Taishan's drywall sales.

## ARGUMENT

**I.    BNBM PLC AND BNBM GROUP ARE NOT SUBJECT TO JURISDICTION IN LOUISIANA**

The burden is on the State of Louisiana to establish personal jurisdiction over BNBM PLC and BNBM Group, and the State has not met its burden.[40]  The evidence and authority illustrating why BNBM PLC and BNBM Group are not subject to personal jurisdiction in

---

[38]   Jia. 2011 & 2012 Tr. 198:20-199:8; China National Building Material Company Limited Global Offering Prospectus, ALRMH-CNBM00000001-0643, at ALRMH-CNBM00000082, -0121, attached as Exhibit 23 to BNBM PLC's October 22, 2015 Motion to Dismiss (Rec. Doc. 19631-26).

[39]   Jia. 2011 & 2012 Tr. 615:4-617:10; *see also* Wang Tr. 133:11-12 (discussing competition between the companies).

[40]   *In re Chinese Manufactured Drywall Prods. Liab. Litig.,* 894 F. Supp. 2d 819, 836 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014); *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521 (5th Cir. 2014) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165, 1174 (5th Cir. 1985))). After a defendant makes a showing of the inapplicability of the long-arm statute, "the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint."  *Polskie Linie Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 972 (11th Cir. 1986).

Louisiana are set forth in full in the MDL Dismissal Memoranda, incorporated here.[41]  Neither

BNBM PLC nor BNBM Group meet any of the criteria that would permit exercise of long-arm

jurisdiction under the relevant subsections of Louisiana Revised Statute Section 13:3201(A):

1.  BNBM PLC and BNBM Group did not transact business in Louisiana.  No sales of

drywall were made to Louisiana purchasers.  The Petition does not allege otherwise and there is

no evidence to the contrary.

2.  Neither BNBM PLC nor BNBM Group contracted to supply services or things,

including drywall, in Louisiana.  There are no such allegations in the Petition and no evidence to

the contrary.

3.  Subsection A(3) of the Louisiana long-arm statute requires the State to establish that

defendants committed a substantial aspect of an alleged tort in Louisiana.  The companies

undertook no actions, much less tortious actions, in Louisiana and the Petition contains no

factual allegations to the contrary.

4.  Neither BNBM PLC nor BNBM Group caused any injury or damage by an offense or

quasi offense committed through an act or omission outside of Louisiana.  BNBM PLC and

BNBM Group have not injured anyone in Louisiana.  No Louisianans have identified BNBM

PLC drywall as the source of their injuries.[42]  BNBM PLC and BNBM Group do not solicit

business, engage in any other persistent course of conduct or derive revenue from goods used or

consumed in Louisiana, nor have they ever done so.

5.  BNBM PLC and BNBM Group have no interest in, and do not use or possess a real

right in, immovable property in Louisiana.

---

[41]  (Rec. Doc. 19631-3), at 15-21, 73-75.

[42]  Ex. 1, Taylor Supp. Decl., at Ex. 1; *see also* Ex. 2, Oct. 20, 2015 Davis email.

6.   Neither BNBM PLC nor BNBM Group have manufactured a product or component that has caused damage or injury in Louisiana.  No Louisianans have identified BNBM PLC drywall as harmful.  There is no reason to believe that BNBM PLC's drywall even reached this state.  The CPSC found that BNBM PLC's drywall was not defective, and no testing has shown otherwise.  The defendants did not have a reason to foresee that BNBM PLC's drywall eventually would be found in Louisiana by reason of  its nature or their marketing practices.[43]

The State's conclusory allegation that BNBM PLC and BNBM Group "controlled" Taishan at the time it sold allegedly defective drywall into Louisiana does not justify the exercise of jurisdiction over either defendant.  The State bears the burden of proving its alter ego claims.[44] The State must do so by presenting "affidavits or other competent proof… not [by] merely reiterat[ing] the factual allegations in the complaint."  *Polski Linie Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 972 (11th Cir. 1986).  The State cannot meet this burden.

As explained in the MDL Dismissal Memoranda, any veil piercing or alter ego analysis must be conducted pursuant to the law of China.  Chinese law would not permit piercing the veil here.  The result would be no different under Louisiana law, which allows the imputation of the contacts of a subsidiary to a parent for purposes of personal jurisdiction only when the subsidiary is an alter ego of the parent.[45]  As the motions to dismiss explain at length and with reference to

---

[43]   *See* (Rec. Doc. 19631-3), at 78-83 (laying out arguments as to why the exercise of jurisdiction over BNBM PLC and BNBM Group does not comport with Due Process).

[44]   *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp.2d 819, 836 (E.D. La. 2012), *aff'd*, 742 F.3d 576, 584-85 (5th Cir. 2014) and *aff'd sub nom. In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521, 529 (5th Cir. 2014).

[45]   *See In re Chinese Manufactured Drywall Products Liab. Litig.*, 894 F. Supp. 2d at 894;  *see also Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 587 (5th Cir. 2010); *Whitener v. Pliva, Inc.*, No. 10–1552, 2012 WL 1343964, at *5 (E.D. La. Apr. 18, 2012); *Puckett v. Advance Sports, Inc.*, No. 2009 CA 0507, 2009 WL 3430283, at *5 (La. App. 1 Cir. Oct. 26, 2009) (unpublished opinion); *Davis v. Dempster, Inc.*, 790 So.2d 43, 48-49 (La. App. 3 Cir. 2000).

extensive, detailed evidence, there are no indications that Taishan is an alter ego of either BNBM Group or BNBM PLC.[46]

## II.   THE PETITION SHOULD BE DISMISSED BECAUSE IT DOES NOT STATE A CLAIM FOR RELIEF AGAINST BNBM PLC AND BNBM GROUP

### A.   The Claims Against BNBM PLC and BNBM Group Are Not Plausible

The Attorney General seeks to recoup several categories of damages on behalf of the State and its municipalities that require injury in Louisiana by defective drywall installed in Louisiana, including lost taxes attributable to decreased property values within the state, increased health care expenses for treatment of drywall-related injuries to Louisiana citizens, and remediation and disposal-related costs for properties within the state, among others.  Yet the Petition does not allege that BNBM PLC or BNBM Group did anything to cause such harm, much less specify what damage is supposedly attributable to BNBM PLC or BNBM Group, as opposed to other defendants.  In fact, the companies did no such thing, as the 23,000 plus plaintiff profile forms reflect.  The Court can consider the profile forms, which the Court required all of the plaintiffs to file, on this 12(b)(6) motion to dismiss, because they are central to the State's claims and a matter of public record.[47]  As the profile forms confirm, there was no injury in Louisiana from defective BNBM PLC drywall.

---

[46]   (Rec. Doc. 19631-3), at 22-33, 34-47.

[47]   The Court can consider the profile forms on this motion because they are "central to [plaintiff's] claim," and because they are a matter of public record.  *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000).  The Petition contends that Louisiana property owners were harmed by defective Chinese drywall, and to the extent that any Louisiana property owners have articulated the specific details regarding the harm they suffered, they have done so exclusively in their profile forms.  In addition, the information contained in the profile forms was introduced without objection and was discussed in open court during the June 9, 2015 Damages Hearing before this Court, and at other times, and therefore they are a matter of public record.  For the Court's convenience, we attach a chart that was entered into evidence at the Damages Hearing that distills the BNBM PLC and BNBM Group-specific information contained in the profile forms.

With publicly filed court papers reflecting that no defective drywall was manufactured or sold by BNBM PLC or BNBM Group in Louisiana, and absent any well-pled allegations in the Petition establishing a basis for liability, there is no plausible theory by which the State can recoup its alleged losses from either defendant. Therefore the Petition fails to "plead 'enough facts to state a claim to relief that is plausible on its face,'" and it must be dismissed under Rule 12(b)(6). *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "facially plausible" only if the plaintiff "pleads facts that allow the court to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Scianneaux v. St. Jude Med. S.C., Inc.*, 961 F. Supp. 2d 808, 810 (E.D. La. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Kan v. OneWest Bank, FSB*, 823 F. Supp. 2d 464, 469 (W.D. Tex. 2011). Determining whether a complaint states a plausible claim for relief "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. While a court must accept all well-pled facts as true, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 678.

The "face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim." *Scianneaux*, 961 F. Supp. 2d at 811 (citing *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009)). Here, however, the "face of the complaint" makes no connection between BNBM PLC and BNBM Group, on the one hand, and the claimed categories of damages, which all arise from the presence of other companies' allegedly defective drywall within the state.

---

This chart shows that no Louisiana resident claims to have been affected by defective BNBM PLC drywall in its property. *See* Ex. 1, Taylor Supp. Decl. ¶ 17 and Exhibit 1; *see also* Supp. Profile Forms.

Moreover, discovery necessarily would confirm what the plaintiffs' profile forms already make clear: BNBM PLC drywall did not harm Louisiana property owners.  Where, as here, "there are insufficient factual allegations to raise a right to relief above the speculative level, [and] it is apparent from the face of the complaint that there is an insuperable bar to relief . . . the claim must be dismissed."  *Id.* (citations omitted).

The Petition's conclusory allegation that BNBM PLC and BNBM Group "controlled" Taishan's sales of drywall into Louisiana is of no avail.[48]  The Court need not accept these bare allegations, which contain no specific factual support, as true.  "Bare assertions," which the Supreme Court held "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, do not meet the standard of Rule 12(b)(6).  *Iqbal*, 556 U.S. at 680-81.  Such "allegations are conclusory and not entitled to be assumed true."  *Id.* at 681 (citing *Twombly*, 550 U.S. at 554-55).  Legal "labels and conclusions" and "naked assertion[s]" without "further factual enhancement" do not state a plausible cause of action.  *Twombly*, 550 U.S. at 555.

The Attorney General's allegations that BNBM PLC's drywall was defective also are devoid of specificity and not plausible.  The Petition alleges that the CPSC investigation found defects in Chinese drywall, which put defendants on notice of the defects.[49]  But the public record reports of CPSC investigation in fact concluded that the tested samples of "Dragon Brand drywall had low or no detectable emissions of hydrogen sulfide" and were comparable to "drywall samples that were manufactured domestically."[50]  The State's conclusory allegations to the contrary are not sufficient, in the teeth of a report the Petition embraces, to state a plausible

---

[48]  Petition ¶¶ 30, 31.

[49]  Petition ¶¶ 161-72.

[50]  *See* (Rec. Doc. 19631-3), at 18-21 (discussing CPSC investigation and testing).

claim.  The Court need give them no credence particularly when, as here, the State has the burden of establishing personal jurisdiction.[51]

### B.  The Petition Does Not State A Claim Against BNBM PLC and BNBM Group for  Violation of the Louisiana Unfair Trade Practices Act

The State's first cause of action, for violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, La Rev. Stat. § 51:1401 *et seq.* ("LUTPA"), is based on allegations that "Defendants fundamentally misrepresented material facts regarding the characteristics of the drywall," omitted and concealed other facts, "unfairly, deceptively, knowingly and fraudulently represented to the public that their drywall was safe, efficacious, well tested, of high quality and free of defects," and acted "with fraud, deceit, or misrepresentations."[52]  "Where a plaintiff's LUTPA claim is based on alleged fraudulent misrepresentation, the LUTPA claim must meet the heightened pleading requirements of Rule 9(b)."  *Brand Coupon Network LLC v. Catalina Mktg. Corp.*, No. 11–00556–BAJ–RLB, 2014 WL 6674034, at *5 (M.D. La. Nov. 24, 2014) (citing *Pinero v. Jackson Hewitt Tax Serv. Inc.*, 594 F. Supp. 2d 710, 721 (E.D. La. 2009).  In pleading fraud, "a party must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  The State has pled no particulars at all with respect to BNBM PLC and BNBM Group, much less any particulars concerning the alleged fraud, concealments and misrepresentations.

The Petition also alleges that the "Taishan Entities," defined to include BNBM PLC and BNBM Group, conspired to violate LUPTA."[53]  A "plaintiff alleging a conspiracy to commit fraud must plead with particularity the conspiracy as well as the overt acts . . .  taken in furtherance of the conspiracy."  *Heck v. Buhler*, No. 07–21–BAJ, 2013 WL 3341057, at *2 (E.D.

---

[51]  *See, e.g.*, *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 836 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014).

[52]  Petition ¶¶ 198, 199, 204-06.

[53]  *Id.* ¶ 212.

La. July 2, 2013); *Davis v. Karl*, No. 10–875, 2010 WL 3312587, at *3 (E.D. La. Aug. 19, 2010).

The Petition contains no such particulars.  Accordingly, the Attorney General has failed to state a

claim for breach of LUTPA, and the First Cause of Action should be dismissed.

> C.    **The Petition Does Not State a Claim Against BNBM PLC and BNBM Group**
>        **for  Violation of the Louisiana Products Liability Act**

The State of Louisiana claims that BNBM PLC and BNBM Group have breached the

Louisiana Products Liability Act, La. Rev. Stat. 9:2800.51 *et seq.*, by failing to adopt a "feasible

alternative design" for the drywall "solely to defraud the public for profit."[54]  The State again

fails to plead fraud with particularity, as required by Rule 9(b).  In addition, the State's claim

under the Products Liability Act alleges in a purely conclusory fashion that the drywall was

"unreasonably dangerous in construction."[55]  Given the opposite conclusion about BNBM PLC

drywall in the CPSC investigation also relied on by the State, as well as the lack of any

particulars, its Products Liability Act claim does not meet the minimum pleading standard under

Rule 12(b)(6) announced by the Supreme Court in *Iqbal* and *Twombly*.  Accordingly, the

Petition's Second Cause of Action should be dismissed.

> D.    **The Petition Does Not State A Claim for Negligence**

The State's cause of action for negligence repeatedly pleads that the drywall at issue

contained defects and "excessive levels of sulfur,"[56] claims that defendants misrepresented "that

the drywall was safe for its intended purpose when, in fact, it was not,"[57] and alleges that

---

[54]   *Id.* ¶ 218.

[55]   *Id*. ¶ 217.

[56]   *Id*. ¶¶ 223(a)-(o).

[57]   *Id*. ¶ 223(q).

defendants otherwise concealed and misrepresented information.[58]   The Petition's conclusory allegations that BNBM PLC drywall was defective is contrary to the CPSC report relied on by the State, and the misrepresentation and concealment allegations are made with no particulars. There is not a single specific allegation regarding any Louisiana property owner who supposedly was injured as a result of drywall manufactured by BNBM PLC or BNBM Group.  Accordingly, the Petition's Third Cause of Action for negligence should be dismissed.

### E.   The Petition Does Not State A Claim for Fraud

Fraud must be pled with particularity.  Fed. R. Civ. P. 9(b).  "Rule 9(b) requires that plaintiffs plead enough facts to illustrate the 'who, what, when, where, and how' of the alleged fraud."  *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006); *accord Frazier v. Riley*, 980 S.2d 714, 715 (La. Ct. App. 2008) ("Louisiana C.C.P. art. 856 provides, in pertinent part, that when 'pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity.'").  The Petition contains no specific allegations of fraud with respect to BNBM PLC or BNBM Group; not a single detail about the supposed who, what, where, when or how.  Accordingly, the Petition's Fourth and Fifth Causes of Action should be dismissed.  *Id.*

### F.   The Petition Does Not State A Claim for Negligent Misrepresentation

"The Fifth Circuit has also subjected ruled [sic] negligent misrepresentation claims to Rule 9(b)'s heightened pleading requirements when the plaintiff's focus rests on the same facts for both fraud and misrepresentation claims."  *Peaker Energy Grp., LLC v. Cargill Inc.*, No. 14–2106, 2015 WL 4879415, at *12 (E.D. La. Aug. 14, 2015) (citing *Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723-24 (5th Cir. 2003) and *Williams v. WMX Techs., Inc.*, 112 F.3d

---

[58]   *Id.* ¶¶ 223(u)-(v).

175, 177 (5th Cir. 1997)).  Therefore, a plaintiff pleading a misrepresentation claim must, at a minimum, "specify the statements" alleged to be false.  *Peaker*, 2015 WL 4879415, at *12. Once again, in a Petition void of any specificity with respect to BNBM PLC and BNBM Group, no specifics are provided about any statements alleged to be false.  Even if the Rule 9(b) standard were not applicable, the State of Louisiana's Second Amended Complaint provides no particulars that would satisfy the *Twombley/Iqbal* standard applicable to all claims. The Petition's Sixth Cause of Action therefore should be dismissed.

## III.    THE PETITION SHOULD BE DISMISSED BECAUSE BNBM PLC AND BNBM GROUP HAVE NOT BEEN SERVED WITH PROCESS

The Petition also should be dismissed pursuant to Rule 12(b)(5) because the State has not properly attempted to serve either BNBM PLC or BNBM Group.  To acquire jurisdiction over the person, "a court must serve on the person a document, 'such as a summons, notice, writ, or order.'"  *McGuire v. Sigma Coatings, Inc.*, 48 F.3d 902, 907 (5th Cir. 1995).  The State purports to have served the Petition on BNBM Group and BNBM PLC in January 2015, after this Court granted the State's motion to approve service "upon United States' counsel for the Taishan Defendants."[59]  At the time, however, neither BNBM PLC nor BNBM Group was represented by "United States counsel."  The State subsequently provided copies of the Petition to Hogan Lovells and Stanley, Reuter, Ross, Thornton & Alford, LLC, neither of which ever represented BNBM PLC or BNBM Group in this (or any) action.

Even if one of those firms had represented BNBM PLC or BNBM Group, service could not be effectuated through them absent the defendants' consent.  Where a defendant resides outside the United States, and service cannot be made under the Hague Convention's procedures,

---

[59]    Memorandum in Support of State of Louisiana's Motion to Approve Alternative Service of Process, December 17, 2014 (Rec Doc. 18213-1), at 1; Order Granting State of Louisiana's Motion to Approve Alternative Service of Process, December 23, 2014 (Rec. Doc. 18228).

the proper route to effectuate service is Federal Rule of Civil Procedure 4(f)(3), which allows

service "at a place not within any judicial district of the United States" "by other means not

prohibited by international agreement, as the Court orders." Fed. R. Civ. P. 4(b)(3); *see also Rio*

*Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002); *BP Prods. N. Am., Inc. v.*

*Dagra*, 236 F.R.D. 270, 271 (E.D. Va. 2006).  It is clear that Rule 4(f)(3) only authorizes

methods of service "***outside*** of the United States[,]" and multiple federal courts, including courts

within this Circuit, have made this important distinction and emphasized that Rule 4(f)(3) cannot

be used to effect service upon a foreign defendant within the United States.  *Freedom Watch,*

*Inc. v. Org. of Petroleum Exporting Countries*, — F. Supp. 3d. —, No. 1:12-CV-00731, 2015

WL 3506696, at *3 (D.D.C. Jun. 4, 2015) (emphasis in original).  "Court ordered service under

Rule 4(f)(3) is clearly limited to methods of service made outside of the United States."  *Drew*

*Tech., Inc. v. Robert Bosch, L.L.C.*, No. 12-15622, 2013 WL 6797175, at *2-3 (E.D. Mich. Oct.

2, 2013).  "A foreign corporation can be served *outside of the United States* 'in any manner

prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).'"

*Baker Hughes Inc. v. Homa*, No. 11-3757, 2012 WL 1551727, at *14 (S.D. Tex. Apr. 30, 2012)

(emphasis added).  Rule 4(f)(3) thus does not allow for the service purportedly effectuated by the

State.

   Moreover, the State has not demonstrated that it made a reasonable effort to serve BNBM

PLC or BNBM Group with process through the Hague Convention before it sought permission to

serve by alternative means.  On the contrary, the State's Motion To Approve Alternative Service

of Process concedes that it never tried to serve BNBM Group directly, and provided no support

for the assertion that BNBM PLC "repeatedly refused" service of the State's original

complaint.[60]  Alternative means of service under Rule 4(f)(3) are allowed only if the plaintiff can establish: "(1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary."  *In re GLG Life Tech Corp. Sec. Lit.*, 287 F.R.D. 262, 265-66 (S.D.N.Y. 2012). Where, as here, the parties are located in signatory countries, "litigants [must] first attempt service by means of the Hague Convention."  *Id.* at 266; *see also Sec. Exch. Comm'n v. Tome*, 833 F.2d 1086, 1092 (2d Cir. 1987) ("Where the plaintiff can show that deliberate avoidance and obstruction by the defendants have made the giving of notice impossible, statutes and caselaw have allowed substitute notice.").  The State concedes that there was no attempted service under the Hague Convention here.

Thus, in *Seiko Epson Corp. v. Glory S. Software Mfg., Inc.*, No. 06-CV-236-BR, 2007 WL 282145, at *2 (D. Or. Jan. 24, 2007), after the plaintiff had provided evidence that it had made *several* failed attempts to serve Chinese defendants personally in China, and had provided "actual notice" of the suit to the defendants by other means, the Court granted the plaintiff's request to effectuate formal service by having the clerk of court send a certified copy of the summons and complaint.  *See also BP Prods. N. Am., Inc.*, 236 F.R.D. at 271 (granting motion to serve Pakistani defendant by alternative means where service under the Hague Convention had proved futile).  Here, by contrast, the State concededly did not make any attempt—much less a "reasonable attempt"—to effectuate service on BNBM Group directly, and the state fails to meet its burden as to BNBM PLC.[61]

---

[60]   *See* Rec Doc. 18213-1, at 1-2.

[61]   For additional arguments concerning why the State is not entitled to serve BNBM PLC or BNBM Group through United States counsel, we respectfully refer the Court to those articulated in Defendants' Opposition To The Plaintiffs' Steering Committee's Motion To Approve Alternative Service of Process, which we adopt and incorporate by reference. (Rec. Doc. 19558).

Nor should the State be permitted to effectuate service by providing a copy of the Petition to the undersigned, which it did earlier this month.[62]  In Louisiana, "[i]t is only after . . . the appearance of a defendant through counsel that service of all other process in the suit may be accepted by his attorney of record."  *Jinright v. Glass*, 954 So.2d 174, 178 (La. Ct. App. 2007) (quoting *Wadsworth v. Alexius*, 99 So.2d 77, 80 (La. 1958)).  Thus, until an attorney enters an appearance in a particular action—which Dentons US LLP had not done when the State purported to serve the Petition—it is not an agent for purposes of serving pleadings in that action.  For all of the reasons discussed above and in BNBM PLC's and BNBM Group's Opposition To The Plaintiffs' Steering Committee's Motion To Approve Alternative Service of Process (Rec. Doc. 19558), the State should not be permitted to circumvent the Hague Convention's requirement that it serve BNBM PLC and BNBM Group directly.

<u>**CONCLUSION**</u>

For the foregoing reasons and the reasons set forth in the BNBM PLC and BNBM Group MDL motions to dismiss and supporting memoranda, declarations and exhibit, defendants BNBM PLC and BNBM Group respectfully request the Court to dismiss the Petition against them.

Dated:  October 26, 2015

---

[62] Ex. 3, Letter from State counsel, David L. Black to BNBM PLC and BNBM Group's counsel Michael H. Barr, dated October 2, 2015 (attached as Exhibit 3).

Respectfully submitted,

**DENTONS US LLP**

By: */s/ Michael H. Barr*
Michael H. Barr
New York Bar No. 1744242
Justin N. Kattan
New York Bar No. 3983905
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
michael.barr@dentons.com
justin.kattan@dentons.com

Richard L. Fenton
Illinois Bar No. 3121699
Leah R. Bruno
Illinois Bar No. 6269469
233 South Wacker Drive
Suite 7800
Chicago, IL  60606-6306
Telephone:  (312) 876-8000
Facsimile:  (312) 876-7934
richard.fenton@dentons.com
leah.bruno@dentons.com

Kenneth J. Pfaehler
D.C. Bar No. 461718
Drew Marrocco
D.C. Bar No. 453205
1301 K Street N.W.
Suite 600, East Tower
Washington, D.C. 20005
Telephone:  (202) 408-6400
Facsimile:  (202) 408-6399
kenneth.pfaehler@dentons.com
drew.marrocco@dentons.com

26

C. Michael Moore
Texas Bar No. 14323600
Matthew T. Nickel
Texas Bar No. 24056042
2000 McKinney Ave, Suite 1900
Dallas, TX  75201
Telephone:  (214) 259-0900
Facsimile:  (214) 259-0910
mike.moore@dentons.com
matt.nickel@dentons.com

- and -

**PHELPS DUNBAR LLP**

Harry Rosenberg
Louisiana Bar No. 11465
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130
harry.rosenberg@phelps.com

***Attorneys for Beijing New Building Materials Public Limited Company and Beijing New Building Material (Group) Co., Ltd.***

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **Memorandum In Support of Motion to Dismiss the Complaints Pursuant to Rules 12(b)(2), 12(b)(5) and 12(b)(6)** has been served on State's counsel David L. Black, Perkins Coie LLP, 1900 Sixteenth Street, Suite 1400, Denver, Colorado, 80202, and Plaintiffs' Liaison Counsel, Leonard Davis, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with the Pretrial Order No. 6, and that the foregoing was also electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this October 26, 2015.

*/s/      Michael H. Barr*