UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL<br>PRODUCTS LIABILITY LITIGATION<br><br><br>THIS DOCUMENT RELATES TO: ALL CASES | CIVIL ACTION<br><br>NO. 09-02047<br><br>SECTION "L" (5) |

## ORDER & REASONS

Before this Court is the Plaintiffs' Steering Committee's ("PSC") motion to approve alternative service of process on the BNBM and CNBM Entities (R. Doc. 19522). Having read the parties' briefs and reviewed the applicable law, the Court now issues this Order and Reasons.

### I.   PRESENT MOTION

The PSC requests that the Court authorize alternative service of process pursuant to Fed. R. Civ. P. 4(f)(3) to permit service on the BNBM and CNBM Entities through their United States lawyers. According to the PSC, in the absence of such an order, it will take several years to successfully serve the BNBM and CNBM Entities with outstanding complaints. Defendants Beijing New Building Materials Public Limited Company ("BNBMPLC") and Beijing New Building Material Co., Ltd. ("BNBM Group") (collectively, the "BNBM Entities") oppose the motion (R. Doc. 19558), an opposition which China National Building Materials Group Corporation ("CNBM Group") and China National Buildings Materials Co., Ltd. ("CNBM Company) (collectively, the "CNBM Entities") subsequently joined. (R. Doc. 19559).

The PSC contends that while it has properly undertaken efforts to serve the BNBM and CNBM Entities (collectively, the "Entities") with various omnibus complaints in a manner consistent with the requirements of the Hague Convention, those efforts have been thwarted by

the Entities' repeated refusal to accept service of process. Currently, there is a backlog of six complaints because APS International ("APS"), the PSC's process server, advised the PSC to stagger the complaints so as to avoid confusing the Chinese central authority responsible for serving the complaints on the BNBM and CNBM Entities. Since entering their appearance in March 2015, the Entities and their United States lawyers have been heavily engaged in this litigation. Therefore, the PSC submits that service of the Entities on their United States lawyers will comport with due process.

The BNBM and CNBM Entities argue that the motion must be denied for the following reasons: (1) Rule 4(f)(3) does not permit the Court to authorize service through the Entities' United States lawyers because the rule, according to its plain terms, permits federal courts to authorize "other means" of service only if such service occurs "not within any judicial district of the United States." Fed. R. Civ. P. 4(f); (2) Rule 4(f)(3) does not permit this Court to authorize the method of service requested by the PSC because the Hague Convention and its mandatory provisions prohibit it; (3) the PSC has not satisfied its burden that alternative service is appropriate or necessary; and (4) the PSC's motion does not satisfy due process because the PSC has not specified the actions or defendants it seeks to serve. Additionally, CNBM Group argues that, as a wholly state-owned company, the rule governing service of process is Rule 4(j)(1), which provides that an "agency or instrumentality [of a foreign state] must be served in accordance with 28 U.S.C. § 1608," i.e., the service provisions of the Foreign Sovereign Immunities Act ("FSIA"). Fed. R. Civ. P. 4(j). The Court will analyze each argument in turn.

  II. **LAW AND ANALYSIS**
    a. **Does Rule 4(f)(3) Require Alternative Service to be made outside of the United States and not on a Person or Entity within the United States?**

Federal Rule of Civil Procedure 4(h)(2) provides for service of corporations in a foreign country "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4. Rule 4(f), in turn, provides as follows:

> **(f) Serving an Individual in a Foreign Country.** *Unless federal law provides otherwise*, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served *at a place not within any judicial district of the United States*:
>
> > **(1)** by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
> >
> > **(2)** if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
> > > **(A)** as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
> > > **(B)** as the foreign authority directs in response to a letter rogatory or letter of request; or
> > > **(C)** unless prohibited by the foreign country's law, by:
> > > > **(i)** delivering a copy of the summons and of the complaint to the individual personally; or
> > > > **ii**) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
> >
> > **3)** by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f) (emphasis added). Focusing on the phrase "at a place not within any judicial district of the United States," the Entities argue that Rule 4(f)(3) does not permit service on United States counsel because it only authorizes service *outside* the United States. *Id.* The PSC contends that the "not within any judicial district of the United States language" simply describes service abroad and is offset by the introductory paragraph of the rule, which states "[u]nless federal law provides otherwise." *Id.* Both parties cite non-binding case law in support of their arguments. It is clear that the opening paragraph of 4(f) is simply an introduction to the following methods of serving a person (or corporation) residing outside of the United States and

3

not a method or restriction.  Notably, this Court has permitted service on foreign nationals through their United States lawyers twice before in this case.  *See* Order of June 25, 2014 (R. Doc. 17790); Order on the State of Louisiana's Motion to Approve Alternative Service of Process of December 23, 2014 (R. Doc. 18228).

> **b. Does the Hague Convention Preclude the Proposed Alternative Service on Counsel?**

In this case, the Entities are located in China, which is a signatory to the Hague Convention referenced in Rule 4(f)(1). The Hague Convention requires signatory countries to establish a Central Authority to receive requests for service of documents from other countries and to serve those documents by methods compatible with the internal laws of the receiving state.  *See Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 698–99 (1988). Service through a country's Central Authority is the principal means of service under the Hague Convention.  Article 10 of Convention also permits other forms of service, such as service "by postal channels" or through judicial officers, provided that the state of destination does not object.  *See* Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, art. 10, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638, 1969 WL 97765 (entered into force Feb. 16, 1969) ("Hague Convention").  However, since China has objected to Article 10, service by mail or through judicial officers is not available.  This, however, does not preclude alternative service by other means.

Neither the Supreme Court nor the Fifth Circuit has provided clear guidance as to how the requirements of the Hague Convention interact with a court's authority to order alternative service under Rule 4(f)(3).  Given the dearth of precedential case law on the issue in this jurisdiction, the Court must look to the case law in other jurisdictions for guidance in making its determination.

4

On the one hand, it is clear that a federal court cannot order service under Rule 4(f)(3) "in contravention of" the Hague Convention. *See Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1015 n.4 (9th Cir. 2002) ("A federal court would be prohibited from issuing a Rule 4(f)(3) order in contravention of an international agreement, including the Hague Convention referenced in Rule 4(f)(1)."). Defendants of signatory countries can insist on service pursuant to the Hague Convention where it applies. *See Sheets v. Yamaha Motors Corp.*, *USA*, 891 F.2d 533, 537 (5th Cir. 1990).

On the other hand, numerous courts have authorized alternative service under Rule 4(f)(3) even where the Hague Convention applies. These courts reason that alternative service may be ordered pursuant to Rule 4(f)(3) as long as the alternative method of service is not expressly prohibited by the Convention or objected to by the receiving state. However, even in cases involving countries like China that have objected to certain alternative forms of service permitted under Article 10 of the Hague Convention, other forms of alternative service has been allowed. *See, e.g.*, *Richmond Techs., Inc. v. Aumtech Bus. Solutions*, No. 11-CV-02460-LHK, 2011 WL 2607158, at *13 (N.D. Cal. July 1, 2011) ("Nothing in the Hague Convention prohibits [service on a foreign defendant's United States-based counsel]."); *In re LDK Solar Sec. Litig.,* No. C 07–05182 WHA, 2008 WL 2415186, at *3-4 (N.D. Cal. June 12, 2008) (permitting service of Chinese subsidiary and individual officers by service on parent company in California because such service is not barred by the Hague Convention).

Furthermore, the Hague Convention may not even be applicable to the PSC's proposed method of service. "The only transmittal to which the Convention applies is a transmittal abroad that is required as a necessary part of service." *Volkswagenwerk*, 486 U.S. at 707. "Where service on a domestic agent is valid and complete under both state law and the Due Process

5

Clause, our inquiry ends and the Convention has no further implications." *Id.* Based on *Volkswagenwerk's* reasoning that the Hague Convention only applies if the law of the forum state requires service of documents abroad, lower courts have reasoned that the Hague Convention is not a barrier to any alternative service that can be performed domestically. *See FMAC Loan Receivables v. Dagra,* 228 F.R.D. 531, 534–35 (E.D. Va. 2005) (ordering service on domestic counsel under Rule 4(f)(3) and finding that Hague Convention would not apply because service would be effected in the United States).

Under Louisiana law, service of process may be made upon a defendant's agent, and an attorney who has appeared on behalf of an entity is appropriately an agent subject to service of process. *See* La. Code Civ. Proc. Ann. art. 1261; *see also Doe v. Delta Women's Clinic of Baton Rouge*, 37 So. 3d 1076, 1079 (La. Ct. App. 2010), *writ denied*, 45 So. 3d 1055 (La. 2010). There are dozens of forum states at issue in this MDL, and it is unclear whether the forum state for each action recognizes proposed lawyers as agents for services. The Entities argue that the PSC's motion must be denied because the PSC neither analyzes nor addresses whether the law of any or all of the relevant states permit the mode of service they seek.

However, this argument fails to appreciate the unique MDL context of the present action. The legislative history of 28 U.S.C. § 1407 "makes it clear that [the statute's] remedial aim is to eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multidistrict related civil actions." *In re Plumbing Fixture Cases,* 298 F. Supp. 484, 491–92 (J.P.M.L. 1968). This purpose would be undermined if the Court were required to apply the law of each forum for preliminary or procedural matters, rather than relying on the law of the transferee forum. *See, e.g., In re Auto. Refinishing Paint Antitrust Litig.*, 229 F.R.D. 482, 486 (E.D. Pa. 2005) (applying the law of the transferee court in adjudicating a motion to

6

compel); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,* MDL No. 1358, 2005 WL 106936, at *5 (S.D.N.Y. Jan. 18, 2005) ("[W]ithout limiting the sources of binding precedent, each motion in multi-district litigation could easily turn into a review of the interpretations of all or most of the circuits, a result at odds with the fundamental purpose of section 1407. This would have a debilitating effect on the court's ability to resolve motions in a timely and efficient manner."); *see also* Richard L. Marcus, *Conflicts Among Circuits and Transfers Within the Federal System,* 93 Yale L.J. 677, 716-17 (1984) ("The stated goal of multidistrict transfer is to allow coordinated or consolidated pretrial preparation....Applying divergent legal standards may undermine consolidation.").

As briefly stated above, Louisiana recognizes counsel as a party's agent for service if that counsel has appeared and participated in the particular action at issue. *See Doe v. Delta Women's Clinic of Baton Rouge*, 37 So. 3d 1076, 1078 (La. Ct. App. 2010), *writ denied*, 45 So. 3d 1055 (La. 2010) (permitting service on counsel who "had participated in that legal proceeding"); *Jinright v. Glass*, 954 So. 2d 174, 178 (La. Ct. App. 2007) ("It is only after…the appearance of a defendant through counsel that service of all other process in the suit may be accepted by his attorney of record.") (quoting *Wadsworth v. Alexius*, 99 So. 2d 77, 80 (La. 1958)).

Since the Entities have not appeared through counsel in any of the actions for which the PSC seeks to use alternative service, they argue that the PSC's request for alternative service must be denied. Again, this argument fails to recognize the uniqueness of the MDL context. While both the Supreme Court and the Fifth Circuit have stated that consolidated cases retain their separate identities, these statements were not made in reference to service of process. *See Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 904 (2015) ("Cases consolidated for MDL pretrial

proceedings ordinarily retain their separate identities, so an order disposing of one of the discrete cases in its entirety should qualify under § 1291 as an appealable final decision."). Motions for service of process are procedural, not substantive motions. Furthermore, the purpose of requiring satisfactory service of process is to assure that the potential litigant receives full, valid and accurate notice of complaints or lawsuits brought against them. Its purpose is not to compel the expenditure of excessive costs, or cause undue delay or encourage evasive action. This lawsuit has been going on for over five years. Numerous depositions have been taken in this country and in China. Dozens of motions have been filed, briefed, and argued. All of the parties have been enthusiastically and competently represented. It is time to focus on substantive issues and not continue to conjure up and construct procedural roadblocks to impede the progress of this litigation.

### c. Is Alternative Service Justified Under the Facts of this Case?

"The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the 'sound discretion of the district court.'" *Brockmeyer v. May*, 383 F.3d 798, 805 (9th Cir. 2004) (quoting *Rio,* 284 F.3d at 1016); *see also Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries*, 766 F.3d 74, 81 (D.C. Cir. 2014). Courts have also recognized that "there is no hierarchy among the subsections in Rule 4(f)." *Advanced Aerofoil Techs., AG v. Todaro,* No. 11 Civ. 9505(ALC)(DCF), 2012 WL 299959, at *1 (S.D.N.Y. Jan. 31, 2012). Accordingly, "court-directed service under Rule 4(f)(3) is as favored as service under Rule 4(f)(1)," inasmuch as "[i]t is merely one means among several which enables service of process on an international defendant." *Rio,* 284 F.3d at 1015. According to the Ninth Circuit, service under Rule 4(f)(3) is "neither a 'last resort' nor 'extraordinary relief.'" *Id.* (quoting *Forum Fin. Group, LLC v. President, Fellows of Harvard College*, 199 F.R.D. 22, 23 (D. Me. 2001)).

Notably, the *Rio* decision involved service on a defendant located in a country that was not a signatory to the Hague Convention. *Id.* at 1015 n.4. The Ninth Circuit emphasized this fact, stating that "[a] federal court would be prohibited from issuing a Rule 4(f)(3) order in contravention of an international agreement, including the Hague Convention referenced in Rule 4(f)(1)." *Id*. However, as discussed *supra*, it is unclear whether the Hague Convention is even implicated by the PSC's proposed alternative service. Furthermore, in this case, the Defendants have refused to accept the documents served under the Convention.

Some district courts permit an alternative means of service under Rule 4(f)(3) if the plaintiff can establish: "(1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary." *In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 265-66 (S.D.N.Y. 2012) (quoting *United States v. Lebanese Canadian Bank SAL*, 285 F.R.D. 262, 267 (S.D.N.Y. 2012)). Imposing such a threshold requirement has been viewed as "necessary in order to prevent parties from whimsically seeking alternate means of service and thereby increasing the workload of the courts." *Ryan v. Brunswick Corp.,* No. 02-CV-0133E(F), 2002 WL 1628933, at *2 (W.D.N.Y. May 31, 2002). Thus, in cases involving service on a person residing in a country that is a signatory to the Hague Convention, courts have often imposed a requirement that litigants first attempt service by means of the Hague Convention before seeking court-ordered alternative service under section 4(f)(3). *See, e.g., Devi v. Rajapaska,* No. 11 Civ. 6634(NRB), 2012 WL 309605, at *2 (S.D.N.Y. Jan. 31, 2012). The PSC is able to meet this burden with regard to service of past complaints on the Entities. *See* (R. Doc. 19522-1 at 3-4) (listing repeated occasions where the Entities have refused service in the past).

Similarly, when a signatory state to the Hague Convention is "dilatory or refused to cooperate for substantive reasons ... resort may be had to the provision set forth in subdivision (f)(3)." Fed. R. Civ. P. 4, advisory committee's notes to 1993 amendment. The Advisory Committee Notes also indicate that Rule 4(f)(3) is appropriately used "in cases of urgency if convention methods will not permit service within the time required by the circumstances." *Id*. These conditions are met in the present case. There are numerous occasions in the past where the Entities should have accepted service of process and initially refused to do so. Also, given that the PSC's process server suggested that the PSC stagger complaints and the fact it frequently takes in excess of six months to serve Chinese defendants through the Hague Convention, the PSC plausibly contends that it may take several years to successfully serve the BNBM and CNBM Entities with the outstanding complaints. This action has already been underway for more than six years and the Court is reluctant to require any action that might further delay justice to the impacted homeowners.

### d. Does the Proposed Alternative Service Satisfy Due Process?

A method of service satisfies due process if the method provides "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The PSC argues that service on the Entities' domestic counsel will satisfy the requirements of due process because the United States lawyers have been continuously representing the Entities and have been heavily engaged in this litigation since March 2015. The Entities argue that the proposed service does not comport with due process because the PSC has failed to show that the Entities' United States lawyers will be able to

promptly notify every party the PSC may seek to serve through those lawyers as the PSC has neither identified the parties nor the complaints which it seeks to serve via alternative means.

Service upon a foreign defendant's United States-based counsel is a common form of service ordered under Rule 4(f)(3). *See Knit With v. Knitting Fever, Inc.*, Nos. 08–4221, 08–4775, 2010 WL 4977944, at *4 (E.D. Pa. Dec.7, 2010) ("Repeatedly, courts around the country have found that service upon a foreign defendant through counsel is appropriate 'to prevent further delays in litigation.'") (quoting *LG Elecs., Inc. v. Asko Appliances, Inc.*, No. 08–828, 2009 WL 1811098, at *4 (D. Del. June 23, 2009)). Nothing in the Hague Convention prohibits such service. *See RSM Prod. Corp. v. Fridman,* No. 06 Civ. 11512(DLC), 2007 WL 2295907, at *3 (S.D.N.Y. Aug. 10, 2007) ("The Hague Service Convention does not prohibit an order pursuant to Rule 4(f)(3) permitting service through American counsel."). However, "the method of service crafted by the district court [under Rule 4(f)(3)] must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Rio,* 284 F.3d at 1016 (quoting *Mullane,* 339 U.S. at 314). The case law suggests that while service of process on foreign corporations through domestic counsel may be appropriate, it depends upon the factual circumstances of the proposed service and requires consideration of whether the service provided adequate notice to the interested parties.

### e. Does the Proposed Alternative Service Comport with the Requirements of FSIA?

CNBM Group argues that, as a wholly state-owned company, the rule governing service of process is Rule 4(j)(1), which provides that an "agency or instrumentality [of a foreign state] must be served in accordance with 28 U.S.C. § 1608," i.e., the service provisions of the Foreign Sovereign Immunities Act ("FSIA"). Fed. R. Civ. P. 4(j). For the purposes of *this motion* and

11

given the fact that there is presumption of immunity in favor of CNBM Group, the Court accepts CNBM Group's argument that service of process is governed by FSIA. Section 1608 of FSIA requires that where the parties have not stipulated to a mode of service, and where the defendant does not have an authorized agent for service of process in the United States, service must be made "in accordance with an applicable international convention on service of judicial documents." 28 U.S.C.A. § 1608(b)(2).

In *Magness v. Russian Fed'n*, the Fifth Circuit held "that substantial compliance with the provisions of service upon an agency or instrumentality of a foreign state—that is, service that gives actual notice of the suit and the consequences thereof to the proper individuals within the agency or instrumentality—is sufficient to effectuate service under section 1608(b)." 247 F.3d 609, 616 (5th Cir. 2001). Where service cannot be made "in accordance with an applicable international convention on service of judicial documents," i.e., the Hague Convention, service be made "as directed by order of the court consistent with the law of the place where service is to made." 28 U.S.C. § 1608(b); *see also First Inv. Corp. of the Marshall Islands v. Fujian Mawei Shipbuilding, Ltd.*, No. 09-3663, 2010 WL 3168371, at *2 n.5 (E.D. La. Aug. 9, 2010) ("The [plaintiffs] have made no effort to comply with the service requirements set forth by the Hague Convention. Only where service of process 'cannot be made' pursuant to §§ 1608(b)(1)-(2), may [plaintiff] effect service of process pursuant to § 1608(b)(3)."). CNBM Group argues that the PSC has not shown that service of process cannot be made pursuant to the Hague Convention as required by FSIA. However, the PSC has demonstrated that service of process pursuant to the Hague Convention would be near impossible in a timely manner as there are six backlogged complaints that need to be staggered and it frequently takes in excess of sixth months to serve Chinese defendants. Additionally, the PSC has made attempts to comply with requirements of

12

the Hague Convention and CNBM Group refused to accept service on five prior occasions. *See* (Rec. Doc. 19522-1 at 4). Finally, in determining that section 1608(b) required only substantial compliance whereas section 1608(a) required strict compliance, the Fifth Circuit derived great significance from the fact that delivery of service under section 1608(b)(3) "is authorized if reasonably calculated to give actual notice. This language reflects the fact that Congress was there concerned with substance rather than form." *Magness*, 247 F.3d at 616 (internal citations and quotations omitted). Here, the proposed alternative service is reasonably calculated to give actual notice.

### III.  CONCLUSION

Although the case law on this issue is both scarce and lacking in clarity, the Court emphasizes that the crux of the issue relates to the purpose of both service of process in general and the Hague Convention in particular. "[T]he core function of service is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections." *Henderson v. United States*, 517 U.S. 654, 672 (1996). The purposes of the Hague Convention are to facilitate service of process abroad and to assure foreign defendants adequate notice. *Volkswagenwerk*, 486 U.S. at 704-05; *see also Burda Media, Inc. v. Viertel*, 417 F.3d 292, 300 (2d Cir. 2005) ("The Hague Convention of 1965 was intended to create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time.") (internal quotation omitted). Thus, the Court's central concern is whether service of the Chinese Defendants by substituted service on their domestic attorneys provides the Entities with adequate notice.

In this case, the Court is confident that service upon domestic counsel of the Entities satisfies the requirements of due process and is reasonably calculated to apprise the Chinese Defendants of the pendency of the action and afford them an opportunity to present their objections. The Entities already have actual notice of the action, and their current United States lawyers are already representing them, and have been since March.  Counsel for the entities have been heavily engaged in this litigation as evidenced by their participation in the Court's June 9, 2015 damages hearing, their attendance at multiple depositions, and their briefing and argument on several motion that have been considered by the Court.  The PSC also has shown that the circumstances of the case warrant alternative service. This case has been pending for approximately six years, and the Court is well aware of the difficulties encountered by the PSC in attempting to serve the Defendants in this matter.  The PSC has demonstrated that service on the Chinese Entities could be further delayed by more than six months if formal service pursuant to the Hague Convention is required.  The purpose of service is to give appropriate notice to allow parties to properly present their substantive arguments and not to create considerable procedural hurdles to delay an action.  In contravention of the purpose of the governing rules and the purpose of the Hague Convention, the Entities have refused to accept service of process in the past and remain intent on further delaying justice to impacted homeowners by insisting on service under the Hague Convention.  This case has been before the Court since 2009, counsel for the Entities have participated since March of 2015, complaints are backlogged, and service under the Hague Convention could take several more years.  Accordingly, **IT IS ORDERED** that the PSC's Motion to Approve Alternative Service of Process on the BNBM and CNBM Entities is **GRANTED**.

Case 2:09-md-02047-EEF-MBN   Document 19713   Filed 11/09/15   Page 15 of 15

New Orleans, Louisiana this 9th day of November 2015.

_____
UNITED STATES DISTRICT JUDGE