UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | : : : : : : | MDL NO. 2047 SECTION L JUDGE FALLON MAGISTRATE JUDGE WILKINSON |
| .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. : | | |

**THIS DOCUMENT RELATES TO ALL CASES**

<u>**ORDER AND REASONS**</u>

Before the Court is an *in camera* review of the privilege log of counsel of record for

Taishan Gypsum Co. Ltd. ("TG") and Tai'an Taishan Plasterboard Co. Ltd. ("TTP"),

(collectively the "Taishan Entities" or "Taishan"). The *in camera* review stems from a discovery

dispute between the Plaintiffs' Steering Committee ("PSC") and counsel for Taishan in relation

to the documents and emails stored on Mr. Wenglong Peng's computer. Having considered the

parties' memoranda, the applicable law, and reviewed the documents at issue, the Court issues

this order and reasons.

## I.    BACKGROUND

From 2005 to 2008, a housing boom coincided with the destruction caused by Hurricanes

Katrina and Rita to sharply increase the demand for construction materials in the Gulf South and

East Coast. In response, Chinese companies manufactured, and sold to homeowners throughout

the United States, considerable quantities of gypsum wallboard which came to be known as

"Chinese drywall." Homeowners experienced problems with the drywall. Specifically, the

drywall emits various sulfide gases, damages structural mechanical and plumbing systems of the

home, and damages other appliances in the home. The affected parties sued the entities involved

in the manufacturing, importing, and installing the Chinese drywall. The cases multiplied and the Judicial Panel on Multidistrict Litigation ("MDL"), declared the matter an MDL and transferred the cases to this Court. After a period of discovery, it became clear that there were two principal manufacturers, (1) the Knauf Entities, and (2) the Taishan Entities.

Taishan initially refused to participate in this litigation, and default judgments were entered in four cases: *Germano*, *Mitchell*, *Gross*, and *Wiltz*. The day before the expiration of the window for appeal, Taishan appeared and appealed to the Fifth Circuit Court of Appeals, arguing – for the first time – that this Court lacked personal jurisdiction. The matters were remanded to this Court for further discovery on the jurisdictional issue. After a period of discovery, this issue was briefed and argued. In due course, this Court rendered an opinion finding it had jurisdiction over the Defendant Taishan. The Defendant appealed the Court's judgment. Ultimately, two separate Fifth Circuit panels affirmed this Court's exercise of jurisdiction over Taishan. The time for seeking writs to the Supreme Court has passed, so such judgment became final and enforceable. In order to execute the judgment, Plaintiffs moved for a Judgment Debtor Examination. The Court ordered Taishan to appear in open court on the morning of July 17, 2014 for a Judgment Debtor Examination (Rec. Doc. 17774). Taishan failed to appear for the July 17, 2014 Judgment Debtor Examination and the Court held Taishan in contempt of court, both criminally and civilly. (Rec. Doc. 17869).

Just prior to the Judgment Debtor Examination, counsel for Taishan filed motions to withdraw as counsel of record, reporting that Taishan had decided to no longer participate in proceedings before this Court and had terminated counsel. (Rec Docs. 17846, 17858). Thereafter, a dispute between Taishan and the PSC ensued regarding the whereabouts of Mr. Peng and his computer.  Recently, Taishan disclosed that they have possession of Mr. Peng's

2

computer and the PSC issued a request for, *inter alia*, production of the hard-drive from Mr. Peng's computer.

## II.     PRESENT MOTION

The PSC now challenges the privilege designation of 342 emails i.e., all of Mr. Peng's communications with attorneys falling within the date range of May 23, 2014 to October 21, 2014. All parties are in agreement that the documents are presumptively privileged. The PSC, however, argues that these emails are subject to the crime-fraud exception to the attorney-client privilege.

## III.     DISCUSSION

### A. Attorney-Client Privilege

The attorney-client privilege is an exception to the general rule that the law is entitled to every man's evidence. The privilege generally protects communications from the client to the attorney, and responsive communications from the attorney to the client. A widely quoted definition of the attorney-client privilege appears in *United States v. United Shoe Machinery Corp.*, 89 F. Supp. 357, 358-59 (D. Mass. 1950):

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. 89 F. Supp. at 358-59.

This definition was adopted by the Fifth Circuit Court of Appeals in 1975 in *In re Grand Jury Proceedings*, 517 F.2d 666, 670 (5th Cir. 1975), and has been generally applied elsewhere. *See*

*generally* PAUL R. RICE, 1 ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES, § 5:2 (Thomson West 2d ed. 1999). It is key, then, that for privilege to attach to a client's communication, the client must be soliciting legal advice from the attorney, as opposed to non-legal services such as business advice. *See* RICE, § 7:1. As explained by the court in *Hercules Inc. v. Exxon Corp.*, 434 F. Supp. 136, 147 (D. Del. 1977), "[o]nly if the attorney is 'acting as a lawyer' – giving advice with respect to the legal implications of a proposed course of conduct – may the privilege be properly invoked.  In addition, if a communication is made primarily for the purpose of soliciting legal advice, an incidental request for business advice does not vitiate the attorney-client privilege."

There are a number of exceptions to the attorney-client privilege, including the crime-fraud exception, which permits disclosure of any communication where the client seeks advice from an attorney in carrying out a crime or fraud. *In re Grand Jury Proceedings,* 43 F.3d 966, 972 (5th Cir.1994). As the Fifth Circuit explained, "[t]he test is whether the *client's* purpose is the furtherance of a future fraud or crime. However, this focus on the client's purpose appears to be driven by the fact that *the attorney-client privilege is, of course, held by the client and not the attorney*." *Id.* (internal citations omitted) (emphasis added).

### B.  Analysis

These emails indeed involve confidential communications made from Taishan to its counsel. Significantly, however, these communications may fall outside the attorney-client privilege if they "seek[s] advice from an attorney in carrying out a crime or fraud." *In re Grand Jury Proceedings,* 43 F.3d at 972. To answer this question, the Court must resolve if, and when, Taishan intended to engage in criminal behavior.  After reviewing the emails, the Court concludes that certain communications are subject to the crime-fraud exception to attorney-client

4

privilege in that they revolve around Taishan's intent to commit criminal contempt.

Accordingly, the following Privilege Log Items are subject to the crime fraud exception, are not protected by attorney-client privilege, and thus need to be produced:

| Document Number[1] | Excepted Communication Begins[2] | Excepted Communication Ends |
|---|---|---|
| 197 | If your company decides | With separate notices when the time comes. |
| 388 | Our company hopes to receive | Both English and Chinese if both sides agree. |
| 1248 | I personally think that if the Company | Needs to be discussed with Hogan Lovells to make a decision. |
| 1249 | Hello, regarding the case developments | To name a few. |
| 1254 | Secondly, it is foreseeable that | For this kind of extreme reactions. |
| 1254 | My personal opinion is that | Chinese courts would change their position in this case. |
| 1269 | Ever since Taishan responded | Choices you have made in this case. |
| 1997 | We have asked Orrick | Specific recommendations in advance. |

IV.   **CONCLUSION**

In light of the foregoing, **IT IS ORDERED** that the motion to compel document production is **GRANTED IN PART** and **DENIED IN PART**.  Notably, for each email referred to above, the privileged parts may be redacted but the information contained in the privilege log i.e., the sender, recipient, subject heading, etc., must also be produced in addition to the portions delineated in the chart above.

---

[1] These document numbers refer to the Privilege Log File Numbers provided in the "Key to Privilege Log#/Begin Bates #."

[2] In order to dictate which parts of the documents need to be produced, the Court refers to the language in the non-machine translations provided to the Court by Taishan in accordance with Rec. Doc. 19700.

New Orleans, Louisiana, this 10th day of November, 2015.

_____
UNITED STATES DISTRICT JUDGE