UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

**TAISHAN'S MEMORANDUM IN SUPPORT OF MOTION TO QUASH PLAINTIFFS' SUBPOENA FOR PRODUCTION OF ITEMS RELATED TO PENG WENLONG**

**I.     INTRODUCTION**

The Court should reject Plaintiffs' new subpoena demand for Taishan to produce Peng Wenlong's physical computers and hard drives at the November 17 hearing. That effort is late, unnecessary and disproportional to the needs of the hearing. In the last few weeks, Plaintiffs have received more than 84,000 documents (totaling over 455,000 pages), and they are taking Mr. Peng's deposition over a three-day period in New York as this Motion is being filed. Plaintiffs do not need the physical hard drives in the courtroom, and they can show no reasonable basis for the time and expense that it would take to produce them. For example, the devices would first have to clear governmental review under China's State Secrets Act before leaving the country, and then they would have to be shipped to the United States.

The Court should also reject the demand for Mr. Peng's "personnel file," which in China is an official government document that is different from standard U.S. employee files. That file is not in Taishan's custody, and it is unnecessary for the hearing.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

The Court has identified two discrete issues for the November 17 hearing: "allegations that: 1. Taishan knew of and refused or intentionally failed to disclose the current (i.e., post-employment) business relationships with and the location or whereabouts of their former employee, Mr. Wenglong Peng; and 2. Taishan knew that Mr. Peng had documents and/or computer-stored information but denied knowing the same or intentionally failed to disclose it and did not take proper measures to protect or collect these documents and/or computer-stored information." (Rec. Doc. 19657 at 1).

On October 2, 2015, Plaintiffs filed a Motion to Compel the production of four categories of documents—even though they never served Taishan with a corresponding formal discovery request. (Rec. Doc. 19599). Nonetheless, Taishan offered to satisfy the Plaintiff's Motion to Compel by producing Mr. Peng's documents, a chain of custody declaration for Mr. Peng's computer, and Mr. Peng's deposition in New York. The Court accepted that proposed solution to the discovery dispute (*see* Rec. Doc. 19656 at 15-16). Taishan produced those items. Taishan also directed Grant Thornton, its e-discovery vendor, to obtain and secure Mr. Peng's devices in GT's China office.

Just a few days before the hearing, Plaintiffs filed subpoenas with the Court demanding that Taishan and Grant Thornton produce the physical computers, hard drives and servers used by Peng Wenlong in his work for Taishan, and Peng Wenlong's "personnel file," at the November 17 hearing. (Rec. Doc. 19708, attached as Exhibit A).[1] Plaintiffs' flippant service method was to hand the subpoena to a receptionist at Alston & Bird's Atlanta office.

---

[1] The subpoena requests that Taishan produce: "1. The personnel file of PENG Wenlong; 2. Any Computer used by PENG Wenlong prior to March 2014; 3. Any Computer used by PENG Wenlong after March 2014; 4. Any hard drive from a Computer or server containing emails from

2

### III.  ARGUMENT AND AUTHORITIES

#### A.  Plaintiffs' Discovery Demands are Duplicative and Disproportional in Light of Taishan's Production of Peng Documents

The Court should not require Taishan on the eve of the hearing to produce the requested items, which are duplicative and disproportional to the needs of the hearing. Taishan has already produced in a very short timeframe the huge number of non-privileged documents contained on the computer devices. Plaintiffs can make no reasonable showing that those documents—or anything else—suggests that production of the physical devices will result in anything relevant to the November 17 hearing. Plaintiffs' duplicative demand violates Rule 45(e)(1)(c), which relieves Taishan from producing the same ESI "in more than one form."

Plaintiffs' late demand also oversteps the scoping bounds of Rule 26. As of December 1, 2015, that Rule will expressly forbid discovery that is not "proportional to the needs of the case." *See* Amendments to Federal Rules of Civil Procedure at 12 (http://www.supremecourt.gov/orders/courtorders/frcv15_5h25.pdf). The current version of Rule 26 also contains an "implicit requirement of proportionality," which the amendment brings into sharper focus, the necessity of which is underscored by Plaintiffs' subpoena. *Uppal v. Rosalind Franklin Univ. of Med. & Science*, --- F. Supp. 3d ---, 2015 WL 5026228, *3 (N.D. Ill. Aug. 26, 2015). The amended Rule's balancing focus directs consideration of "the parties' relative access to relevant information," "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

---

or to PENG Wenlong relating to any of his consultancy or any work for Taishan; and 5. Any Computer(s), hard drive(s) or server(s) produced by Taishan to Grant Thornton containing documents and/or electronically stored information (ESI) of PENG Wenlong."

The PSC's demand puts a deadweight on the balancing scales because:

- They have already received over 84,000 documents – totaling over 455,000 pages.

- Having the devices present at the hearing is irrelevant and unnecessary to resolution of the issues, and Plaintiffs cannot show otherwise.

- The devices contain privileged documents that Taishan has already logged, the vast majority of which the PSC did not challenge, but which would be exposed by production.

- Production would be costly and time-consuming because, among other things, the devices must clear State Secrets Act review by the government before leaving China. Violation of the State Secrets Act can be a capital crime and there is no need to undertake that kind of risk in order to re-produce documents.

Plaintiffs know all of this, which is why they filed their subpoena at the last minute. Based on Plaintiffs' hearing designations so far, they have no evidence to prove either of the two limited topics. Mr. Peng testified at his deposition that he complied with the document-hold instruction he received from Taishan's counsel and did not delete any emails or documents relating to the litigation.[2] That is confirmed by the large volume of Mr. Peng's documents that Taishan produced. The Court should deny the request for a late and unjustified fishing expedition into hard drives.

### B.    Production of Peng Wenlong's Personnel File also is Unnecessary.

The Court also should reject as unnecessary and unjustified Plaintiffs' subpoena demand for Mr. Peng's "personnel file." The file is not in Taishan's custody and raises serious privacy

---

[2] The transcript of Mr. Peng's deposition will be available shortly.

4

concerns. In addition, the limited scope of the hearing and the evidence designated to date prevent Plaintiffs providing any reasonable justification for getting the personnel file.

Chinese personnel dossiers ("dang'an") are different from U.S. employee files, which typically contain only the employer's own records (e.g., performance reviews, employment application, IRS information) of that employee during the time of employment. Chinese personnel dossiers are comprehensive records about Chinese citizens. They contain a wide range of additional information with private details such as family history, religious affiliations, psychological assessments, political views and liabilities. The dossiers are sealed and not accessible to the subject—most Chinese have never seen their own files. The dossiers travel from employer to employer, are maintained by the citizen's current employer, and are ultimately subject to government control.[3]

Taishan does not have custody of Mr. Peng's personnel dossier.[4] Taishan's subpoena obligations are limited to materials in its "possession, custody, or control." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 821 (5th Cir. 2004) (limiting document request in subpoena). As a discretionary matter, the request for the personnel dossier should also be quashed because it is unnecessary to the hearing issues and would invade Mr. Peng's privacy with any need.

---

[3] The New York Times recently interviewed a rare Chinese citizen who was able to view her personnel dossier due to a bureaucratic mistake. See NY Times, A Rare Look Into One's Life on File in China, http://sinosphere.blogs.nytimes.com/2015/03/15/a-rare-look-into-ones-life-on-file-in-china/?_r=0 (last accessed on November 13, 2015).

[4] Taishan's 30(b)(6) witness, Che Gang, explained at his deposition on June 2 that Mr. Peng's personnel file was no longer in Taishan's custody after Mr. Peng left Taishan's employment. (Deposition of Che Gang, 110:4-17, excerpt attached as Exhibit B).

C.  **Plaintiffs' Subpoena Fails to Allow for a Reasonable Time for Taishan to Comply and Improperly Circumvents Standard Discovery Protocol**

The Court should also quash Plaintiffs' subpoena under Federal Rule of Civil Procedure 45(c)(3)(A) because it "fails to allow a reasonable time to comply." Plaintiffs' subpoena demands create needless burden and expense to produce within seven days by 10:30 AM on the day of the hearing.

Plaintiffs have attempted—and the Court has rejected—that tactic before. In 2010, the Court issued Pre-Trial Order No. 24 after Plaintiffs' served over 500 Rule 45 subpoenas, many of which requested document production with only a few days to respond. (Rec. Doc. 2779). The Court ruled that any subpoenas issued to MDL parties must be considered Rule 34 requests, and therefore required response within 30 days of service or within 20 days of the Court's order (whichever came later in time).

Here, Plaintiffs have served Taishan, an MDL defendant, with a Rule 45 subpoena and demanded production in just a few days. This repeat tactic is again improper given the Court's previous correction and Plaintiffs' prior receipt of virtually every item requested in their October 2, 2015 Motion to Compel.

**IV.  CONCLUSION**

For the foregoing reasons, Taishan respectfully requests that the Court quash the Plaintiffs' Subpoena.


Respectfully submitted this 13th day of November, 2015.

/s Christina Hull Eikhoff
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
Michael P. Kenny, Esq.
Georgia Bar No. 415064
Bernard Taylor, Esq.

6

Georgia Bar No. 669625
David Venderbush, Esq.
New York Bar No. 2920817
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
christy.eikhoff@alston.com
*Counsel for Taishan Gypsum Co., Ltd. and*
*Tai'an Taishan Plasterboard Co., Ltd.*

Alan Dean Weinberger
LA Bar No. 13331
HANGARTNER, RYDBERG & TERRELL, LLC
One Shell Square
701 Poydras St., Suite 310
New Orleans, Louisiana  70179
Phone:  (504) 434-6815
Fax: (504) 522-5689
aweinberger@hanrylaw.com
*Local Counsel for Taishan Gypsum Co., Ltd. and*
*Tai'an Taishan Plasterboard Co., Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, by U.S. mail and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 13th day of November, 2015.

/s Christina Hull Eikhoff
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
christy.eikhoff@alston.com
*Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*