```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


 *****************************************************************

 IN RE:  CHINESE-MANUFACTURED   *    Docket No. 09-MDL-2047
 DRYWALL PRODUCTS LIABILITY      *
 LITIGATION                      *
                                 *    November 16, 2015
                                 *
                                 *
 Relates to all cases            *    Section "L"
 *****************************************************************
```

**REPORTER'S OFFICIAL TRANSCRIPT OF THE**

**STATUS CONFERENCE**

**BEFORE THE HONORABLE ELDON E. FALLON,**
**UNITED STATES DISTRICT JUDGE.**

**REPORTED BY:**   Mary Thompson, RMR, FCRR
                    500 Poydras Street, Box 2-13
                    New Orleans, Louisiana  70130
                    (504)589-7783
                    mary_v_thompson@laed.uscourts.gov

**FINAL TRANSCRIPT * FINAL TRANSCRIPT**

**APPEARANCES:**

For the Plaintiffs:                     Herman, Herman & Katz
                                        BY:  RUSS HERMAN
                                             LEONARD DAVIS
                                        820 O'Keefe Avenue
                                        New Orleans, LA  70113


For the Defendants:                     Baker Donelson Bearman
                                        Caldwell & Berkowitz
                                        BY:  KERRY J. MILLER
                                        201 St. Charles Avenue
                                        Ste. 2400
                                        New Orleans, LA  70112

                                        Phelps Dunbar
                                        BY:  HARRY ROSENBERG
                                        365 Canal Boulevard
                                        Ste. 2000
                                        New Orleans, LA  70130

                                        Gordon Arata McCollam
                                        Duplantis & Eagan
                                        BY:  Ewell "Tim" Eagan
                                        201 St. Charles Avenue
                                        40th Floor
                                        New Orleans, LA  70112

**P R O C E E D I N G S**

(Call to order of the court.)

THE COURT:  Be seated, please.

Call the case.

THE CASE MANAGER:  MDL 2407, *Chinese-manufactured Drywall Products Liability litigation*.

THE COURT:  Counsel, make your appearances for the record, please, for liaison.

MR. HERMAN:  Yes, Your Honor.

May it please the Court.  Judge Fallon, it's Russ Herman for the Plaintiff Steering Committee.

MR. MILLER:  Good afternoon, Judge.  It's Kerry Miller on behalf of Knauf and the Defense Liaison Committee.

THE COURT:  Okay.

MR. HERMAN:  May it please the Court.

Mr. Rosenberg may be on the phone as liaison counsel for various defendants and Mr. Tim Egan is here for local counsel.

THE COURT:  Okay.  This is our usual monthly status conference.  We're having it at 2:00 instead of 9:00 because of the hearing tomorrow.

I've received from the parties proposed agenda.  I met with the lead liaison counsel a moment ago to discuss it with them.  We'll take it in the order presented.

Pretrial orders.  Is there anything on the agenda

**FINAL TRANSCRIPT * FINAL TRANSCRIPT**

| | |
|---|---|
| 1 | under No. I? |
| 2 | MR. HERMAN:  No, Your Honor. |
| 3 | THE COURT:  And state court trial settings, anything? |
| 4 | MR. HERMAN:  I understand from Ms. Barrios that |
| 5 | there's nothing new. |
| 6 | THE COURT:  All right.  And any coordination?  Is |
| 7 | there anything? |
| 8 | MR. HERMAN:  (Shakes head.) |
| 9 | THE COURT:  Okay.  Omnibus class action complaints, |
| 10 | anything there? |
| 11 | MR. HERMAN:  No, Your Honor. |
| 12 | THE COURT:  How about the -- |
| 13 | MR. HERMAN:  I have nothing under the plaintiffs' |
| 14 | motions to establish litigation fee and expense fund. |
| 15 | Under the Knauf remediation program, Mr. Miller is |
| 16 | here.  And BrownGreer is also here, Your Honor. |
| 17 | THE COURT:  Let's hear from BrownGreer, then, on the |
| 18 | report, on what's happening. |
| 19 | MR. WOODY:  Good afternoon, Your Honor.  My name is |
| 20 | Jake Woody.  I'm here from BrownGreer to give the monthly status |
| 21 | report for the settlement program. |
| 22 | I'll start with the payments.  We are largely in a |
| 23 | payment mode, as we have been for the past few months. |
| 24 | Our total payments to date are $81,566,167. |
| 25 | Of that number, $60.9 million has been for Global, |

Timestamps (left margin): l4:11:58 (line 5), l4:12:07 (line 10), l4:12:17 (line 15), l4:12:57 (line 20), l4:13:14 (line 25)

**FINAL TRANSCRIPT * FINAL TRANSCRIPT**

1     Banner, and Inex repair and relocation damages.  That's

2     75 percent of our payments.

3            And $20.6 million has been for what we call other loss

4     claims.  That's 25 percent of our total payments.

14:13:28  5            Since the last status conference we have paid out

6     $560,470.

7            Our other loss claims are broken up into seven claim

8     types.

9            Loss of use, rent and sales has received $5.8 million.

14:13:44 10            Pre-remediation alternative living expenses, which we

11    abbreviate here to PRALE, has received 5.3 million.

12            Foreclosure short-sale, $5.1 million.

13            Miscellaneous claims, $4.1 million.

14            Those are largely personal property claims and claims

14:14:01 15    that don't fit into other categories.

16            And finally bodily injury has received $113,000, which

17    is less than 1 percent of the total.

18            Again, the total payments there are $20,664,762.

19            I'll talk briefly about the status of the other loss

14:14:19 20    claims because that is where we are doing all of our work right

21    now.

22            We do have just under 8,000 total claims; 7,985 total

23    claims.

24            Of that number, 5,145 were eligible for some type of

14:14:35 25    compensation.

FINAL TRANSCRIPT * FINAL TRANSCRIPT

1        We denied 2,817.

2        And we have currently 21 incomplete claims.

3        That incomplete number is important because those

4   claims remain open.  Those claimants still are within the time

L4:14:47    5   period to cure the incompleteness.

6        I will note that 18 of the 21 are loss of rent, use

7   and sales claims, and they come from one claimant.  We've been

8   working very closely with that firm to clear up those claims so

9   that we can close them, which is important because we want to

L4:15:04   10   finish the other loss program and pay everyone the remainder of

11   the amounts pending in the other loss fund.

12        THE COURT:  On the denial, that's because of what?

13   More than one person has claimed --

14        MR. WOODY:  Largely the denials here are for

L4:15:20   15   incompleteness.  People just failed to produce the documents

16   that we needed to pay the claims.  I would say that is well over

17   90 percent of the reason we would deny someone.

18        There are a few where they submitted a claim for

19   something that's excluded under the terms of the agreement or a

L4:15:35   20   claim that they're simply not eligible for.  In which case we

21   would deny them.

22        But most of those people were incomplete for one

23   document or another.  They got an incompleteness notice, and a

24   follow-up incompleteness notice, and then an incompleteness

L4:15:48   25   denial.  So they've had ample time to clear those deficiencies

**FINAL TRANSCRIPT * FINAL TRANSCRIPT**

1    and have not done so.

2          THE COURT:  Okay.

3          MR. WOODY:  I'll talk quickly about our eligible other

4    loss claims.

14:16:01    5          Again, 5,138 have received eligibility notices.

6          Of those, 16 remain open meaning they have time to

7    either accept the offer or appeal it.

8          Seven loss of rent, use and sales.

9          Four miscellaneous.

14:16:15    10          And five for tenant loss.

11          So we are getting down to the end of these claims.  We

12    don't have very many more to deal with.

13          We do have -- of the 5,138, 4,375 accepted their offer

14    and we paid them, and those claims are now closed.

14:16:30    15          734 requested special master review of their claim

16    because they felt that the offer that we made them under the

17    terms of PTO 28 was insufficient.

18          We've worked closely with the special master to, A,

19    get him those claims, and get him all the supporting documents

14:16:48    20    submitted by claimants.  He's reviewed almost all of the 734.

21    The only ones he has not reviewed yet are the ones that have

22    come in over the last few days so that's a very small handful.

23          We've worked closely with him to formulate a plan to

24    notify people of the results of his review.  It will be through

14:17:07    25    our portal just like we've done with every other notice.  It

**FINAL TRANSCRIPT * FINAL TRANSCRIPT**

1    will be a formal notice explaining the award, what it means, and

2    what the steps are after that.  And we expect to be able to do

3    that hopefully in the near future.

4             Finally, just a summary of what we've done since the

*l4:17:23*    5    last status conference.

6             We've made 160 payments totalling $560,470.

7             65 other loss claims have been accepted.

8             Again, that's important because it allows us to close

9    those and makes the special master's job easier.

*l4:17:36*    10             156 notices issued.

11             18 incompleteness denials.

12             We talked about that just a moment ago.  Those people

13    are incomplete and we eventually deny them, and we can now close

14    them because they're denied.

*l4:17:48*    15             And 222 claims closed either because we paid them or

16    incompleteness denied them or some other reason.

17             But, again, you can see that we are running out of

18    claims to process and running out of claims to pay, which I

19    think is a good thing.

*l4:18:02*    20             Finally our contact information.  If anyone needs to

21    contact us, they can e-mail us at CDWQuestions@browngreer.com or

22    go to our web portal at www3.browngreer.com/drywall.

23             THE COURT:  Okay.  And as I always remind everyone,

24    this is in addition to the remediation aspects of the Knauf

*l4:18:31*    25    settlement which amounted to -- or is anticipated to amount to

|   |   |
|---|---|
| | 1 | $1 billion or thereabouts. |
| | 2 | MR. WOODY:  Yes. |
| | 3 | THE COURT:  This is in addition to that. |
| | 4 | MR. WOODY:  Yes.  That's correct. |
| 14:18:43 | 5 | Thank you, Your Honor. |
| | 6 | THE COURT:  All right.  Thank you very much. |
| | 7 | MR. HERMAN:  May it please the Court. |
| | 8 | Continuing with Your Honor's agenda, there's nothing |
| | 9 | new in Item No. VII, Inex, Banner, Knauf, L&W, and Global |
| 14:19:00 | 10 | settlements. |
| | 11 | Item VIII, Taishan, BNBM, and CNBM defendants, the |
| | 12 | only matter really to speak to is that tomorrow there will be |
| | 13 | submissions, at the hearing that Your Honor has scheduled, by |
| | 14 | both parties, opening statements and submissions about them. |
| 14:19:26 | 15 | It's no more than an hour each beginning at 10:30. |
| | 16 | And the PSC, with regard to the Foreign Sovereign |
| | 17 | Immunity Act raised by CNBMG, will submit its supplemental brief |
| | 18 | on November 20th [sic] and Your Honor has scheduled a hearing on |
| | 19 | December 8th. |
| 14:19:48 | 20 | It's worth mentioning, I think, that with regard to |
| | 21 | this status conference, the agenda and the status conference |
| | 22 | report will be published on Your Honor's website.  And we will |
| | 23 | be submitting within one week a supplement to the agenda and |
| | 24 | status report after we confer with Mr. Harry Rosenberg, who is |
| 14:20:18 | 25 | liaison counsel for BNBM and CNBM, and will also provide it to |

**FINAL TRANSCRIPT * FINAL TRANSCRIPT**

1    Mr. Taylor for Taishan.

2           The plaintiff and defendant profile forms are

3    continually being updated, and we intend to provide those

4    directly to Mr. Bernard Taylor.

14:20:43    5           Under Item XI, there were no frequently asked

6    questions added.

7           Under No. XII, matters set for hearing following the

8    current status conference, I believe that there are two of

9    those.

14:20:58    10          THE COURT:  We have actually three motions.  I'll take

11    those after the status conference.

12          MR. HERMAN:  Nothing new, Your Honor, on the physical

13    evidence preservation order.

14          On entry of preliminary default, and with respect to

14:21:17    15    already remediated homes, BrownGreer has made its report.

16          And Your Honor will give us a date for the next status

17    conference.

18          THE COURT:  Okay.  And anything from anyone in the

19    audience, any issues that need to be raised by anybody?

14:21:37    20          (No response.)

21          THE COURT:  Okay.  Anything from the government?

22          MR. BECNEL:  Nothing public, Your Honor.

23          THE COURT:  Okay.

24          The next date is then -- oh, yes, ma'am.  You wanted

14:21:56    25    to come forward?

**FINAL TRANSCRIPT * FINAL TRANSCRIPT**

|          |    |                                                          |
|----------|----|----------------------------------------------------------|
|          | 1  | MS. HOHNE:  I do.                                        |
|          | 2  | Hi, Your Honor.  I'm Rebecca Hohne.  I've been here     |
|          | 3  | in July and August.                                      |
|          | 4  | THE COURT:  Okay, Ms. Hohne.                             |
| 14:22:00 | 5  | MS. HOHNE:  And you suggested previously that I hire    |
|          | 6  | an attorney for the issues that I was having with my house, and |
|          | 7  | I talked to only one attorney who would actually take my case |
|          | 8  | and he wants a retainer.  And because of everything that I've |
|          | 9  | been through, I've lost everything.  I don't have the money to |
| 14:22:15 | 10 | hire an attorney.                                        |
|          | 11 | I've been forced into a rental.  It's ruined my         |
|          | 12 | credit.  My credit score has dropped over 200 points, so I can't |
|          | 13 | look at buying another house because no bank or mortgage company |
|          | 14 | would end up loaning me any money for that.              |
| 14:22:32 | 15 | THE COURT:  Okay.  And, Ms. Hohne, as I recall, your    |
|          | 16 | house was remediated but you felt that they remediated it with |
|          | 17 | contaminated drywall?                                    |
|          | 18 | MS. HOHNE:  Well, I don't know if it's -- I think       |
|          | 19 | there needs to be more testing done on my house.  I'm not sure |
| 14:22:45 | 20 | if the drywall itself is contaminated or if it's        |
|          | 21 | cross-contamination from maybe the wood.                 |
|          | 22 | But, I mean, I've got some testing that I can show      |
|          | 23 | you.                                                     |
|          | 24 | THE COURT:  Well, you can give it to me and also the    |
| 14:23:04 | 25 | parties.                                                 |

**FINAL TRANSCRIPT * FINAL TRANSCRIPT**

1      You'll recall that in this type of litigation, what's

2   done is that when the remediation is finished, before the

3   drywall is put back into the house, the house is tested by a

4   chemical company who is assigned to that task, and they have to

L4:23:29      5   give a report.

6      Apparently they gave a report that your house was free

7   of any contamination after the matter was restored, but you feel

8   that, notwithstanding that, you still have had problems with it,

9   and you feel that it's still contaminated?

L4:23:55      10      MS. HOHNE:  Yes, sir.  I mean, me and my son, we moved

11   back in and we started having similar health problems that we

12   did before, and I knew that something wasn't right.

13      And a few month ago, Knauf and Moss representatives,

14   they came to my house for a dog-and-pony show.  They stayed

L4:24:07      15   there maybe ten minutes.  They looked at the house -- I had

16   already pulled out all of the wiring and all of that months and

17   months prior to that -- and they said that they didn't see

18   anything.

19      But the results prove -- and if you look at the

L4:24:24      20   results on here, there's a lot of different testing that was

21   done.  If you look at the results, it proves that the sulfur

22   dioxide levels are higher in my house than any other samples

23   that are from the United States, Canada, and Mexico.

24      I have proof that my house has issues still.  I mean,

L4:24:39      25   this is proof.  I think there needs to be more testing.  And I

**FINAL TRANSCRIPT * FINAL TRANSCRIPT**

14:24:57

14:25:09

14:25:19

14:25:39

14:25:52

1   want Knauf to step up to the plate and pay me for my loss.

2           And I would like to have an immediate settlement

3   because I cannot move on with my life.  You know, my credit has

4   been messed up, which if I look to try to find another job, that

5   will affect me there because a lot of employers nowadays, they

6   check your credit.  So because of this, you know, that could

7   affect me trying to have a better life for me and my child.

8           THE COURT:  Yes, ma'am.  Okay.

9           MS. HOHNE:  And I think that they need to take my

10  still-toxic home off my hands.  I would like to have a

11  settlement, and I would like to be reimbursed for all my losses

12  because they are a lot.

13          THE COURT:  All right.

14          Anything from Knauf?

15          MR. MILLER:  Your Honor, after this came up -- Kerry

16  Miller with Knauf, by the way.  Sorry.

17          After this came up in July or August, as Ms. Hohne

18  points out, we did send to her home representatives from Moss as

19  well as GFA, the third-party inspection company that would have

20  done the inspection after the KPT drywall was removed from her

21  home the first time.

22          And I also sent someone from my office to personally

23  inspect it, Your Honor.

24          And what these inspections revealed to us was, number

25  one, that all drywall in the home -- all new drywall in the home

**FINAL TRANSCRIPT * FINAL TRANSCRIPT**

1    was manufactured in Florida.  It was not Chinese drywall, it was

2    drywall from Florida.

3         Number two, Your Honor, that there was no detectible

4    odor in the home despite the fact that it was August and the air

14:26:10    5    conditioner had been running.

6         And, number three, Your Honor, the property owner is

7    correct that she had pulled out the electrical sockets in the

8    home so you could look at the wires.  There was no tarnishing on

9    the wires in her home.

14:26:27    10   So back in 2009 and 2010 when we did test trials and

11   looked at remediation protocols and those things evolved into

12   the remediation program, we looked at whether or not you could

13   have cross-contamination from the studs into the new drywall,

14   and the answer was no.  And the CPSC has looked at it and

14:26:48    15   various federal and state agencies have looked at it.

16        And there have been thousands of Chinese drywall homes

17   repaired, and once the homes are cleaned and the drywall is

18   removed, there is no cross-contamination from studs into the new

19   drywall.

14:27:01    20        And, then second, Your Honor, you know, this has never

21   been a latent defect case.  The issues with Chinese drywall are

22   the odors and the corrosion, and there were just no symptoms in

23   her home.

24        We've had various scientists take a look at these

14:27:16    25   tests.  These are the same tests we looked at back in August.

FINAL TRANSCRIPT * FINAL TRANSCRIPT

|       |    |                                                                                  |
|-------|----|----------------------------------------------------------------------------------|
|       | 1  | There's just no context for them.  We don't know what was                        |
|       | 2  | sampled or what the purpose was.  You see a range of sulfur                       |
|       | 3  | compounds, but there's no real context.                                          |
|       | 4  |       MS. HOHNE:  But it shows that the sulfur content is |
| 14:27:29 | 5  | higher in my drywall than in the other drywall.                                |
|       | 6  |       THE COURT:  Well, yes, ma'am.  The only way that we |
|       | 7  | can deal with this is that I may have to set an evidentiary                       |
|       | 8  | hearing on it, and you can call your witness and he can be                        |
|       | 9  | examined and cross-examined.  And they can put on their witness                  |
| 14:27:48 | 10 | and you can examine and cross-examine.                                          |
|       | 11 |       That's a difficult thing.  That's why I mentioned to |
|       | 12 | you it would be better to have an attorney, but you have a right                 |
|       | 13 | to represent yourself if that's what you want to do.                             |
|       | 14 |       So we'll have to do that.  Then I'll make an          |
| 14:28:00 | 15 | evidentiary finding one way or the other and then it will be                   |
|       | 16 | resolved.                                                                        |
|       | 17 |       MS. HOHNE:  So are you saying that Lafarge's drywall, |
|       | 18 | the new drywall, they have higher amounts of sulfur so it's not                  |
|       | 19 | cross-contamination?  It's from the new drywall from Lafarge?                    |
| 14:28:15 | 20 | Is that what you're saying?                                                     |
|       | 21 |       MR. MILLER:  I'm not saying that at all.  All I'm     |
|       | 22 | saying is what we found was drywall manufactured in Florida.                     |
|       | 23 |       MS. HOHNE:  But you said they looked at it.  Did they |
|       | 24 | do any kind of testing on the new drywall?                                       |
| 14:28:23 | 25 |       THE COURT:  Well, ma'am, that's not the way we do it. |

**FINAL TRANSCRIPT * FINAL TRANSCRIPT**

1        The way we do it is that we have a hearing, and you

2   can call your witness and let him examine -- and let him tell

3   me, and then they can cross-examine.

4        MS. HOHNE:  But that requires me to come back down

14:28:37   5   here again, is that right?  And it's costing me money, and I'm

6   losing --

7        THE COURT:  Well -- but I'm not able to do it right

8   now.  If I do it right now, it's not going to be good for you.

9        MS. HOHNE:  Well, I just -- I don't understand why

14:28:46   10   this courtroom -- you know, I was put into this just like

11   everybody else.  It didn't work for me, and I just don't know

12   why the U.S. court system is not taking care of it.

13        THE COURT:  Well, they dispute this.  They say that

14   their evidence is not --

14:29:01   15        MS. HOHNE:  They can dispute it, but did they do

16   testing to dispute it?  Do they have facts?

17        THE COURT:  But that's what I have to hear.

18        MS. HOHNE:  Okay.  So I need an attorney for the

19   hearing, is that what you're saying?

14:29:11   20        THE COURT:  Well, you can represent yourself, but I'm

21   going to have to have a hearing.  And you can put on your

22   evidence and they put on their evidence, and then I make a

23   finding of fact.  I can't just believe him or believe you.  I

24   have to hear the evidence.

14:29:23   25        MS. HOHNE:  Well, couldn't you say that there's

|   |   |
|---|---|
| | 1 |
| | 2 |

1   required to be new testing?  Can't you require Knauf or the

2   court system to do some testing on my house?

3           THE COURT:  They say they've done it already, ma'am.

4           MS. HONE:  They haven't done testing.  They came in

14:29:34   5   and they looked at it.  I'm telling you, it was a dog-and-pony

6   show.  They just walked in there, they were there for a few

7   minutes, and they walked out.

8           THE COURT:  Yeah.  Okay.

9           MR. MILLER:  And we didn't find anything.

14:29:42   10           MS. HOHNE:  You didn't do anything.

11           MR. MILLER:  Well the document is not --

12           THE COURT:  All right.  I understand.

13           MR. MILLER:  I'm fine with having an evidentiary

14   hearing.

14:29:47   15           THE COURT:  Yeah, I understand.  I'll have to have an

16   evidentiary hearing, Ms. Hohne.

17           MS. HOHNE:  So when will that be?

18           THE COURT:  I'll put it out.  We have your address?

19           MS. HOHNE:  I've moved.

14:29:56   20           THE COURT:  Okay.

21           MS. HOHNE:  Again.

22           THE COURT:  Give us your address.  And then I'll set

23   it in a minute entry, and I'll let you know.  If you have a

24   problem with the date, let me know and I'll pick a date that you

14:30:05   25   are satisfied with.

**FINAL TRANSCRIPT * FINAL TRANSCRIPT**

1    MS. HOHNE:  Okay.

2    THE COURT:  All right.  Thank you very much.

3    MR. HERMAN:  May it please the Court.  I'm advised I

4  misspoke again.

14:30:13    5    Our brief on the Foreign Sovereign Immunity Act is due

6  on November 30th, not November 20th.

7    THE COURT:  Okay.

8    MR. HERMAN:  And some folks at this side of the table

9  are very anxious that I correct the record.

14:30:26    10    THE COURT:  Okay.  Fine.

11    All right.  I'll be back in five minutes and we'll

12  deal with the motions.  Thank you.

13    (Proceeding concluded.)

14

15    * * * *

16    **CERTIFICATE**

17

18    **I hereby certify this 19th day of November, 2015, that the**

19  **foregoing is, to the best of my ability and understanding, a**

20  **true and correct transcript of the proceedings in the**

21  **above-entitled matter.**

22

23    */s/ Mary V. Thompson*

24    **Official Court Reporter**

25

**FINAL TRANSCRIPT * FINAL TRANSCRIPT**