UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE -MANUFACTURED  MDL NO. 2047
DRYWALL PRODUCTS LIABILITY
LITIGATION  SECTION: L

JUDGE ELDON FALLON
MAGISTRATE WILKINSON

# Opinion and Decree

Jody Ferchaud owns the property located at 6021-6025 Canal Boulevard in New Orleans, Louisiana. Ms. Ferchaud discovered that the building on the property contained Chinese drywall. Ms. Ferchaud chose to participate in the Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047.

Ms. Ferchaud entered into a Work Authorization Agreement with Moss (the Court-Appointed Contractor), providing that remediation work on the property would begin on November 13, 2014, and be completed on February 13, 2015 (the "Construction Duration"). Ms. Ferchaud agreed that Moss would have "complete control" of the property during the Construction Duration; Ms. Ferchaud would only have access to the property after giving advance notice and only if she did not interfere with the repair work. Once the job reached "Substantial Completion," the agreement contemplated that the parties would walk through the property and prepare a punch list of items to be completed or corrected.

On or about December 9, 2014, Moss suspended work because it received notice from the city that it was investigating a possible code violation (that the building was allegedly being used a triplex). Moss notified Ms. Ferchaud, who was in Hawaii at the time. Ms. Ferchaud flew back to New Orleans on or about December 14. By December 16, Ms. Ferchaud determined that the city



had resolved the triplex concern.

The city then conducted a plumbing inspection on December 18. The property failed the inspection. Because the plumbing issues were preexisting, Ms. Ferchaud took "full responsibility" for resolving them. She hired a plumber (not affiliated with Moss) to address the issues. From December 18 forward, Moss never worked on the home again. In fact, on January 9, 2015, Moss formally turned possession of the home over to Ms. Ferchaud, with Ms. Ferchaud having control over the lockbox.

Ms. Ferchaud and Moss communicated numerous times in the ensuing months – by email, by telephone, and in person. However, Ms. Ferchaud never again granted Moss unimpeded access to work on the property.

On May 1, 2015, Moss officially requested that the Special Master make a determination by the undersigned of the parties' respective rights and obligations. The undersigned conducted a hearing on August 6. The parties then submitted post-hearing memoranda.

The parties raise several issues. The Special Master will address each in turn.

First. Ms. Ferchaud claims that Moss is responsible for delay damages under Section 4.3 of the Knauf Settlement Agreement. For this to be true, the Special Master must first conclude that Moss caused the delay. As stated above, the settlement was carefully crafted, anticipating that Moss and the homeowner would agree upon a scope of work, after which Moss would have full control of the property until substantial completion. After reviewing the written evidence and the testimony, the Special Master finds that Ms. Ferchaud upset this arrangement. Indeed, she took steps to exclude Moss from the site, going so far as to seek to have Moss replaced as the Contractor. The delay was not attributable to Moss.

Second. Ms. Ferchaud asks for additional damages (i.e., damages not specified in Section 4.3 of the Knauf Settlement Agreement). However, as stated above, Ms. Ferchaud is making a claim pursuant to the Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047. That Agreement limits a claimant's recovery to Section 4.3 of the Knauf Settlement Agreement. It does not, for instance, allow recovery from the other loss fund as provided in Section 4.7 of the Knauf Settlement Agreement. Indeed, allowing participation in the other loss fund by late-filers would dilute that fund, prejudicing the recovery rights of those who had made claims pursuant to the original Knauf Settlement Agreement. Ms. Ferchaud's rights are confined to the remediation remedies found in Section 4.3

Third. The city has identified several code violations, and the parties dispute who is responsible for addressing them. Fortunately, perhaps the most significant of these has been mooted: On July 7, 2015, the city determined that the structure was substantially damaged; on August 19, 2015, the city withdrew this determination. With respect to the other code violations, the Special Master adopts the division of responsibility urged by Moss in its October 12, 2015 submission.

Fourth. Moss asks the Special Master to direct Ms. Ferchaud to self-remediate the property. After reviewing the Settlement Agreement, the Special Master does not believe he has the authority to impose such a remedy.

Fifth. Both parties ask the Special Master to impose bad faith damages (attorney's fees, expert fees, damages for storage, etc.). The Special Master concludes that it would be more appropriate to defer any decision with respect to the imposition of such damages at this time.

## Decree

The Special Master finds that the Ms. Ferchaud is not entitled to delay payments. The Special Master further finds that Moss must remediate Ms. Ferchaud's property (subject to the limitations outlined in Moss's October 12, 2015 submission), but that Moss is not liable for any other damages to Ms. Ferchaud. The Special Master will defer any finding of bad faith at this time.

The Special Master recommends that the Court give him authority to exercise continuing jurisdiction over this matter, with the authority to impose appropriate sanctions upon any party that he finds to be in bad faith.

The Special Master will tax costs (half to each party) in a supplemental order.

Dated: November 8, 2015                     /s/ Daniel J. Balhoff
                                            Daniel J. Balhoff, Special Master