UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>**THIS DOCUMENT RELATES TO:**<br>*Gross v. Knauf Gips KG*, 2:09-cv-6690<br>*Amorin v. Taishan Gypsum*, 2:11-cv-1672<br>*Amorin v. Taishan Gypsum*, 2:11-cv-1395<br>*Amorin v. Taishan Gypsum*, 2:11-cv-1673<br>*Amorin v. SASAC*, 2:14-cv-1727<br>*State of Louisiana v. Knauf*, 2:10-cv-340<br>*Abner v. Taishan Gypsum*, 2:11-cv-3094<br>*Posey v. BNBM Co.*, 2:09-cv-6531<br>*Morris v. BNBM Co.*, 2:09-cv-6530 | MDL No. 2:09-md-2047<br><br>SECTION L<br><br>JUDGE ELDON E. FALLON<br><br>MAGISTRATE JUDGE<br>JOSEPH C. WILKINSON, JR. |

**CNBM GROUP'S RESPONSE TO THE
PSC'S MOTION TO STRIKE DECLARATIONS**

**I.  INTRODUCTION**

China National Building Materials Group Corporation ("CNBM Group") hereby opposes the PSC's[1] "Motion to Strike untimely declarations of CNBM Group." Rec. Doc. 19800.

After having months to file its opposition to CNBM Group's Motion to Dismiss, the PSC submitted a 116-page Response, along with 135 exhibits.[2] These exhibits include, among many others, a declaration from Professor James Feinerman, a previously-undisclosed expert. *See* PSC's FSIA Ex. 118. The PSC's Response also included novel arguments and misrepresentations that could not have been anticipated and necessitated a further response. For example, the PSC's relied extensively on public annual reports and other documents referring to CNBM Group or CNBM Company as "actual controllers" or "controlling shareholders," as

---

[1] Because the PSC has filed this motion in its own name, we respond to it as such.

[2] On November 30, the PSC submitted an additional 25-page brief, and another 33 exhibits.

defined by relevant securities laws and regulations. *See, e.g.,* PSC Resp. at 1, 5-21, 33, 36, 39.[3]
But these terms of art indicate only shareholder status, *see* Huang Decl. (Rec. Doc. 19798-5) ¶¶ 10-14, and it is well established that majority control of a board of directors or even complete ownership or is insufficient to overcome CNBM Group's presumption of separate status. *See, e.g., Hester Int'l Corp. v. Fed. Repub. of Nigeria*, 879 F.2d 170, 181 (5th Cir. 1989); *Foremost-McKesson, Inc. v. Islamic Repub. of Iran*, 905 F.2d 438, 448 (D.C. Cir. 1990).

Finally, the PSC also relied on numerous misrepresentations, including its repeated assertions that CNBM Group appoints directors and officers "for each of its subsidiaries." *See, e.g.,* PSC's Resp. at 25-28. In fact, the PSC's own exhibits contradict these assertions. *See, e.g.,* PSC Exs. 32 (Taishan Articles of Association) & 22 (CNBM Company 2014 Annual Report) at 52. *See also* CNBM Grp. Reply at 23 nn.18-19. They reflect that directors are nominated and elected by a company's direct shareholders, and that officers are appointed or confirmed by a company's own board of directors.

The Declarations of Jianglin Cao and Professor Robin Huang, which the PSC moves to strike, do nothing more than directly address the PSC's novel legal theories and misrepresentations. CNBM Group has not made any new, untethered legal arguments or presented any facts previously unknown to the PSC (or unsupported by the PSC's own exhibits). Moreover, no case law supports the PSC's argument that CNBM Group must allow the PSC's misrepresentations to go unchallenged. CNBM Group must have the opportunity to correct the

---

[3] The term "controlling shareholder" is repeated sixteen times throughout the PSC's Response, and the term "actual controller" is repeated six times. The PSC's Response also makes dozens of additional references to CNBM Group's or CNBM Company's status as "controlling shareholders." And in the PSC's Supplemental Response, the PSC's opening sentence for its assertion that "CNBM Group Controls the Operations of Its Subsidiaries" is, yet again, that "CNBM Group [is] the [ ] controlling shareholder of CNBM and its subsidiaries." PSC's Supplemental Response at 5 (Rec. Doc. 19817).

- 2 -

record and assist the Court in determining the true facts. In fact, the PSC's own citations support CNBM Group's right to reply to arguments raised in the PSC's Response. *See AAR, Inc. v. Nunez*, 408 F. App'x 828, 830 (5th Cir. 2011) (reply brief properly responds to matters presented by response brief).[4]

## II. ARGUMENT

### A. The Declarations of Jianglin Cao and Professor Robin Huang Do Not Present New Legal Theories or New Legal Arguments

Despite claiming that CNBM Group has raised "new legal arguments" by submitting the Declarations of Mr. Cao and Professor Huang, the PSC fails to identify any alleged "new arguments" or legal theories. In fact, there are none. CNBM Group's Declarations do nothing more than respond <u>directly</u> to the PSC's arguments and allegations. It is well-established that "evidence submitted in direct response to evidence raised in the opposition [ ] is not 'new.'" *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 559 n.60 (C.D. Cal. 2014); *see also Torregano v. Cross*, No. CIV.A. 06-6111, 2008 WL 4059573, at *2 (E.D. La. Aug. 27, 2008) (opinions of previously-undisclosed expert presented in reply was not "new evidence" because expert was simply "used to rebut" opposition's arguments").[5]

#### 1. The Declaration of Mr. Jianglin Cao responds directly to the PSC's factual assertions

Each of the factual assertions in Mr. Cao's Declaration strictly responds to the PSC's own arguments and evidence.

---

[4] The PSC also complains that CNBM Group filed its reply brief "after business hours" on November 24, 2015, even though CNBM Group allowed the PSC several additional <u>days</u> to submit its Response. In any event, the PSC's complaint is legally meritless as Fed. R. Civ. P. 6(a)(4)(A) explicitly provides that electronic filings are timely if filed by "midnight in the court's time zone."

[5] The use of reply affidavits is relatively common in summary judgment proceedings. *See, e.g., Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir. 2004). Moreover, both the PSC and the Louisiana Attorney General have had an opportunity to respond to CNBM Group's oppositions and declarations, and both have done so. *See* Rec. Docs. 19817, 19821.

- Mr. Cao's positions as general manager and director of CNBM Group, and president and director of CNBM Company (¶¶ 2-3[6]), were referenced by the PSC. PSC Resp. at 39.

- Mr. Cao authenticates CNBM Company's publicly-available Articles of Association,[7] and explains that the rights and duties of CNBM Company's shareholders, directors, supervisors and officers are specified therein (¶ 3). CNBM Group does not cite or quote Paragraph 3 or CNBM Company's Articles of Association in its Reply, but the Articles of Association themselves rebut the PSC's claims that CNBM Group "appoints" directors and officers of its subsidiaries. PSC Resp. at 25-28.

- Mr. Cao explains that CNBM Group does not appoint directors of CNBM Company, and that CNBM Company's shareholders nominate and vote to determine the directors of that company (¶ 4). Mr. Cao further clarifies that CNBM Group does not appoint officers of CNBM Company, who are instead hired, dismissed, and/or confirmed by CNBM Company's board of directors (¶ 5). Additionally, Mr. Cao explains that he is aware of no instance in which CNBM Group has nominated or appointed a director or officer of a company in which it holds only an indirect equity interest, such as BNBM PLC or Taishan (¶ 6). All of these statements directly rebut the PSC's claims that CNBM Group "appoints" the directors and officers "for each of its subsidiaries." PSC Response at 25. *See also* CNBM Grp. Reply at 23 & n.18.[8]

- Mr. Cao's statement that "CNBM Group does not possess veto power over decisions made by shareholders or boards of directors" of companies in which it holds an indirect interest, such as BNBM PLC or Taishan, and that CNBM Group does not have veto power over the major decisions of those companies let alone their day-to-day operations (¶ 7), directly responds to the

---

[6] Citations to paragraph numbers in this section refer to the Declaration of Mr. Jianglin Cao, submitted in support of CNBM Group's Reply. Rec. Doc. 19798-3.

[7] *See infra* at page 8.

[8] CNBM Group also cites the PSC's own exhibits (the CNBM Company Annual Reports), which likewise confirm that directors are elected by shareholders—not appointed by CNBM Group.

- 4 -

PSC's assertions that "CNBM Group dictates and controls the business operations and decision-making of its subsidiaries" (PSC. Resp. at 25), that CNBM Group "dictates and controls the conduct of its appointees [sic]" (PSC. Resp. at 27-28), that CNBM Group "controls the operations and finances of its subsidiaries" (PSC Resp. at 29), that CNBM Group's "control of subsidiaries . . . covers nearly all aspects of its business [sic]" (PSC Resp. at 29), and that CNBM Group "dictate[s] the internal business operations of its subsidiaries" (PSC Resp. at 30).

- Mr. Cao's recitation of his responsibilities as the former chairman of Taishan's supervisory committee, and Mr. Cao's explanation that he did not direct Taishan's business decisions, including its sales of drywall (¶ 8), rebut the PSC's allegations that Mr. Cao's position evidences CNBM Group's control over Taishan's day-to-day operations.  *See* PSC Resp. at 39, 68.

- Mr. Cao's assertion that none of CNBM Group's officers, directors of employees is a director, officer or employee of Taishan (¶ 9) merely refutes the PSC's misleading characterization that "there are many overlapping officers and directors among CNBM Group . . . and Taishan."  PSC Resp. at 36, 50 ("overlapping CNBM/BNBM/Taishan Officers and Directors").

- Likewise, his clarification that CNBM Group and Taishan do not share common offices (¶11) refutes the PSC's unsupported accusation that "CNBM/BNBM and Taishan Share Common Offices."  PSC Resp. at 47.

- Mr. Cao's statement that neither CNBM Group, BNBM PLC nor Taishan share a common logo (¶ 10) rebuts the PSC's opposite statement that "Defendants Share a Common Logo."  PSC Resp. at 51.

- Finally, Mr. Cao's explanation that CNBM Group's website does not indicate it is a manufacturer or exporter of building materials including drywall rebuts the PSC's contrary insinuation.  *See* PSC Resp. at 3 (referring to "[CNBM Group's] annual gypsum sales" and CNBM Group's alleged "overseas building material production lines").

### 2. The Declaration of Professor Robin Huang directly responds to the PSC's arguments

Like Mr. Cao, Professor Huang does no more than directly rebut the PSC's arguments. As Professor Huang explains, his Declaration only clarifies that (1) BNBM PLC's reference to CNBM Group as its "actual controller" or "ultimate controller" does not indicate that CNBM Group controls the day-to-day business operations of BNBM PLC (let alone Taishan), and that (2) a supervisory committee's responsibilities do not include control or management over the day-to-day business operations of a company. *See* Huang Decl. (Rec. Doc. No. 19798-5) at ¶¶ 4-5, 8-9.[9]

In its Response, the PSC repeatedly relies on CNBM Group's status as a "controlling shareholder" of CNBM Company and an "actual controller" of BNBM PLC —as defined by Chinese securities laws and regulations—to support its allegation that CNBM Group and Taishan are alter egos. *See, e.g.*, PSC Response at 1, 5-21, 33, 36, 39 and *supra* n.3. The PSC's wordplay—relying on very different and distinct connotations of control—attempts to transform BNBM PLC's statutorily-defined obligation to identify CNBM Group as its "actual controller" into an admission that CNBM Group "controls" BNBM PLC's day-to-day business operations. Professor Huang simply explains the relevant statutory framework and clarifies that BNBM PLC's reference to CNBM Group as its "actual controller" merely indicates that CNBM Group is the ultimate controlling shareholder of BNBM PLC's controlling shareholder, CNBM Company. *See* Huang Decl. at ¶¶ 10-14.

Similarly, as discussed *supra*, the PSC cites Mr. Cao's position on Taishan's supervisory committee as purported "evidence" that CNBM Group and Taishan are alter egos. *See* PSC Resp. at 39, 68. But as Taishan's Articles of Association (PSC FSIA Ex. 32, Articles 96-107)

---

[9] The PSC mistakenly states that Professor Huang "challenge[s] the fact that CNBM Group is the 'actual controller' or 'ultimate controller'" of BNBM PLC. *See* Rec. Doc. 19800-1 at 2. Actually, Professor Huang merely clarifies the meaning of these terms, and states that they do not indicate control over BNBM PLC's day-to-day operations.

and China's Company Law[10] establish, the responsibilities of a supervisory committee do not include management or control over Taishan's day-to-day operations. Professor Huang's Declaration is simply meant to "help the [Court] to understand the evidence" and to put it in proper context. *See* Fed. R. Evid. 702(a).

Because Professor Huang only rebuts the PSC's arguments, his opinions are admissible and are not considered "new evidence" or "new legal arguments." *See, e.g., Torregano*, 2008 WL 4059573, at *2. [11]

**B.** **The PSC Has Suffered No Prejudice**

The PSC's Motion to Strike must also be denied because it has not been prejudiced by Mr. Cao's recitation of facts—well-known to the PSC—or Professor Huang's corrections regarding the PSC's misleading word-play.

For example, although the PSC repeatedly claims that CNBM Group appoints the officers and directors for "each of its subsidiaries," the PSC has long been aware that CNBM Group does not appoint directors or officers of CNBM Company or Taishan. CNBM Company's Articles of Association are publicly-available on CNBM Company's website, and listed along with the 2014 announcements from CNBM Company's Board of Directors relating to this litigation, which the PSC has repeatedly accessed, cited, quoted, and attached to its numerous pleadings. Specifically,

---

[10] *See* Yang Decl. ¶ 6, Ex. C arts. 51-56 (Rec. Doc. 19527-12). CNBM Group requests that the Court take judicial notice of the provisions of China's Company Law pertaining to Boards of Supervisors (Articles 51 through 56). *See* Fed. R. Evid. 201 (Court "must take judicial notice if a party requests it" of any fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" (emphasis added)) & Fed. R. Civ. P. 44.1 ("court may consider any relevant material or source" in determining foreign country's law).

[11] The fact that Professor Huang, like the PSC's Professor Feinerman, was "previously undisclosed" is irrelevant. *Id.* Furthermore, CNBM Group could not have disclosed Professor Huang's opinions before now, since CNBM Group had no reason to seek opinions from him concerning the terms "actual controller" or Taishan's supervisory committee until the PSC advanced these arguments in its Response.

the January 17, 2014 revision of CNBM Company's Articles of Association are published at

http://cnbm.wsfg.hk/preview/?docid=18463 in English, and are also accessible at

http://cnbm.wsfg.hk/index.php?SectionID=Announcements&PageID=2014&Language=eng.

Despite the PSC's complaints that these Articles of Association have "previously never before [been] used or relied upon," Rec. Doc. 19800-1 at 2, CNBM Company's Annual Reports[12] are replete with references to its Articles of Association, for example in describing the responsibilities of the board of directors and the supervisory committee, the rights of investors, the payments of dividends, and so on.  *See, e.g.,* PSC FSIA Ex. 22 (CNBM Company 2014 Annual Report) at 41, 44-46, 52-55, 57, 81-83.[13]  And the mechanisms for the nomination and election of CNBM Company's officers and directors contained in its Articles of Association (and its Annual Reports) have also been confirmed to the PSC through other means.

In June 2015, the PSC served "Expedited Supplemental Interrogatories" on CNBM Company, requesting that it describe how directors were nominated and elected.  CNBM Company responded in July 2015, and informed the PSC that "directors of CNBM Company [are] nominated and selected in accordance with its Articles of Association and the relevant governing laws and regulations in the P.R.C. and Hong Kong."  (Emphasis added.)  Moreover, CNBM Company explained that its eight non-independent directors could be nominated by shareholders holding more than 5% of CNBM Company's voting stock, and that its five independent directors could be nominated by shareholders individually or jointly holding more

---

[12] The PSC spent hours thoroughly questioning CNBM Group's and CNBM Company's witnesses about many of these Annual Reports.

[13] CNBM Company's 2014 Annual Report contains at least 23 references to its Articles of Association.  Its 2005-2013 Annual Reports likewise contain numerous references to these Articles.

than 1% of CNBM Company's voting stock. CNBM Company also stated that the director candidates were "elected by shareholders at the shareholders' general meeting." *See* Cabot Decl., Ex. A. CNBM Company also referred the PSC to page 52 of its 2014 Annual Report (*id.*), which contains a section describing the "Nomination of Directors," and states that "[s]hareholders . . . may nominate directors to the Board directly" and that the "election and the change of Directors shall be considered by the shareholders at the general meetings" and made "[p]ursuant to the Articles of Association." The PSC attached CNBM Company's 2014 Annual Report (along with its 2005-2013 Annual Reports) as an exhibit. *See* PSC FSIA Ex. 22 at 52; *see also* CNBM Grp. Reply at 23 n.18.

The PSC also attached Taishan's Articles of Association, which confirm CNBM Group's lack of involvement in Taishan's nomination and election of its officers and directors. Taishan's Articles state that its directors are nominated and elected by Taishan's *direct* owners, and that its general manager and other officers are selected or confirmed by Taishan's board of directors—not CNBM Group. *See* PSC FSIA Ex. 32, arts. 22(2), 40(5), 54, 84; *see also* CNBM Grp. Reply at 23 n.19-20. CNBM Group could not reasonably anticipate, therefore, that the PSC would knowingly make false assertions about the method of nominating, electing and selecting directors or officers of CNBM Company, BNBM PLC or Taishan.

None of the remaining facts contained in Mr. Cao's Declaration were unknown to the PSC either. That Taishan and CNBM Group do not share offices is no secret. *See* CNBM Grp. Reply at 20 n.12. The PSC's "Chart of Overlapping Executives and Officers" does not identify a single common officer, director or employee between Taishan and CNBM Group. *See* PSC FSIA Ex. 42. Despite the PSC's references to "[CNBM Group's] annual gypsum sales," the PSC knows that CNBM Group is not a gypsum manufacturer or exporter. *See, e.g.,* PSC

- 9 -

Supplemental Resp. at 6 (Rec. Doc. 19817). The PSC undoubtedly knows that CNBM Group does not share a logo with BNBM PLC and Taishan. *See, e.g.,* PSC FSIA Exs. 23 (featuring BNBM PLC logo) & 32 (Taishan logo). And Mr. Cao's responsibilities during his past tenure as Chairman of Taishan's Supervisory Committee are outlined in Taishan's Articles of Association, included as a PSC exhibit. These responsibilities did not include control over Taishan's day-to-day operations or drywall sales. *See* PSC FSIA Ex. 32, Articles 96-107.

Further, the PSC's citations to the definitions of "controlling shareholder" and "control" confirm Professor Huang's opinions and leave no doubt that these accounting and securities-related terms refer simply to ownership and shareholding status, rather than control over day-to-day operations. *See* PSC Resp. at 14-15. In addition, each of BNBM PLC's Annual Reports confirm that BNBM PLC and its controlling shareholder are "totally separated and operate independently of each other." *See, e.g.,* PSC FSIA Ex. 3 (BNBM PLC 2005 Annual Report) at 16; PSC FSIA Ex. 23 (BNBM PLC 2014 Annual Report) at 39 and 64-65; [14] PSC FSIA Ex. 20

---

[14] PSC FSIA Ex. 23 at 39 ("None of the main businesses of [BNBM PLC] will be dependent on or controlled by any related party"), 64 (Section titled "Independence and integrity of [BNBM PLC] relative to its controlling shareholder": "[BNBM PLC] is an independent and complete business entity in its own right and is capable of operating independently"), 65(2) ("[BNBM PLC's] personnel are independent of the controlling shareholder. None of the senior management personnel including the General Manager, the Deputy General Manager, the Chief Financial Officer and the secretary of the Board of Directors hold any position in the controlling shareholder. . . . The Company is completely separated from the controlling shareholder in labor, personnel, and payroll management and manages its personnel independently"), 65(3) ("[BNBM PLC's] assets are independent and complete. There is a clear line of demarcation between [BNBM PLC] and the controlling shareholder in terms of industrial property and non-patented technology; [BNBM PLC] is completely separated from the controlling shareholder and operates independently in production, supply and marketing"), 65(4) ("The Board of Directors, Supervisory Committee and other internal departments of [BNBM PLC] functioned independently"); 65(5) ("[BNBM PLC] is completely financially independent and completely separated from the controlling shareholder, has its own independent finance department, independent financial accounting system and independent financial management system . . . [BNBM PLC] has set up a separate bank account and does not share a bank account with the controlling shareholder").

(BNBM PLC 2013 Annual Report) at 41, 65. Finally, the PSC's deposition of Yu Chen also confirmed that CNBM Group's status as an "actual controller" did not mean that it had the ability or right to "interfere with or control the daily management or operation" of BNBM PLC. PSC FSIA Ex. 40 (Yu Chen Dep.) at 240:5-8.

### III. CONCLUSION

For the foregoing reasons, CNBM Group respectfully requests that the Court DENY the PSC's Motion to Strike.

Respectfully submitted,

/s/ L. Christopher Vejnoska
L. Christopher Vejnoska (CA Bar No. 96082)

| | |
|---|---|
| L. Christopher Vejnoska (CA Bar No. 96082) | Ewell E. Eagan, Jr. (LA Bar No. 5239) |
| Andrew Davidson (CA Bar No. 266506) | Donna Phillips Currault (LA Bar No. 19533) |
| Jason Wu (CA Bar No. 279118) | Alex B. Rothenberg (LA Bar No. 34740) |
| Jason Cabot (CA Bar No. 288877) | GORDON, ARATA, MCCOLLAM, |
| ORRICK, HERRINGTON & SUTCLIFFE LLP | DUPLANTIS & EAGAN, LLC |
| The Orrick Building | 201 St. Charles Avenue, 40th Floor |
| 405 Howard Street | New Orleans, LA 70170-4000 |
| San Francisco, CA 94105 | Tel: (504) 582-1111 |
| Tel.: 415-773-5700 | E-mail: eeagan@gordonarata.com |
| Fax: 415-773-5759 | dcurrault@gordonarata.com |
| E-mail: cvejnoska@orrick.com | nenglish@gordonarata.com |
| ijohnson@orrick.com | arothenberg@gordonarata.com |
| adavidson@orrick.com | |
| jmwu@orrick.com | |
| jcabot@orrick.com | |
| | |
| James L. Stengel (NY Bar No. 1800556) | Jonathan Riddell (LA Bar No. 27053) |
| Xiang Wang (NY Bar No. 4311114) | ORRICK, HERRINGTON & SUTCLIFFE, LLP |
| Kelly Daley (NY Bar No. 4970117) | 400 Capitol Mall |
| ORRICK, HERRINGTON & SUTCLIFFE LLP | Suite 3000 |
| 51 West 52nd Street | Sacramento, CA 95814 |
| New York, NY, 10019 | Tel: 916-447-9200 |
| Tel: 212-506-5000 | Email: jriddell@orrick.com |
| Fax: 212-506-5151 | |
| Email: jstengel@orrick.com | |
| xiangwang@orrick.com | |
| kdaley@orrick.com | |

Eric A. Shumsky (D.C. Bar No. 477926)
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street NW
Washington, D.C. 20005
Tel: 202-339-8400
Fax: 202-339-8500
Email: eshumsky@orrick.com

*Attorneys for CNBM Group*

Dated**:** December 1, 2015

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing CNBM GROUP'S RESPONSE TO THE PSC'S MOTION TO STRIKE and supporting documents have been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all parties by electronically uploading the same to File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 1st day of December, 2015.

/s/ L. Christopher Vejnoska
L. Christopher Vejnoska (CA Bar No. 96082)