UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>**THIS DOCUMENT RELATES TO:**<br>*Gross v. Knauf Gips KG, 2:09-cv-6690*<br>*Amorin v. Taishan Gypsum, 2:11-cv-1672*<br>*Amorin v. Taishan Gypsum, 2:11-cv-1395*<br>*Amorin v. Taishan Gypsum, 2:11-cv-1673*<br>*Amorin v. SASAC, 2:14-cv-1727*<br>*State of Louisiana v. Knauf, 2:10-cv-340*<br>*Abner v. Taishan Gypsum, 2:11-cv-3094*<br>*Posey v. BNBM Co., 2:09-cv-6531*<br>*Morris v. BNBM Co., 2:09-cv-6530* | MDL No. 2:09-md-2047<br><br>SECTION L<br><br>JUDGE ELDON E. FALLON<br><br>MAGISTRATE JUDGE JOSEPH C. WILKINSON, JR. |

**DECLARATION OF JIANGLIN CAO**
**IN SUPPORT OF CNBM GROUP'S REPLY IN SUPPORT OF CNBM GROUP'S MOTION**
**TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

I, Jianglin Cao, declare under penalty of perjury under the laws of the United States of America

that the following statements are true and correct:

1.    I am over eighteen years of age, am competent to testify to the matters contained herein,

and have personal knowledge of these facts. My native language is Chinese. My ability to understand

and speak English is limited. I signed a Chinese version of this Declaration as well as the English

version of this Declaration after it was translated for me by a translator with the law firm Orrick,

Herrington & Sutcliffe LLP.

2.    I have been the general manager of CNBM Group since April 2014, and a director of

CNBM Group since October 2005.

3.    I have also been the president and an executive director of CNBM Company since

March 2005. A true and correct copy of CNBM Company's Articles of Association, which was made

1

pursuant to Chinese corporate laws and is published in Chinese as well as English in accordance with Chinese and Hong Kong regulations, is attached as Exhibit A. The rights, duties and responsibilities of CNBM Company's shareholders, directors, supervisors, and officers are specified in these Articles of Association. CNBM Group may not and does not exceed the rights granted to it as a shareholder of CNBM Company under these Articles.

4.     As specified in CNBM Company's Articles of Association, CNBM Group does not appoint directors of CNBM Company. Rather, CNBM Company's shareholders nominate and vote to determine the directors of CNBM Company.

5.     Likewise, in accordance with CNBM Company's Articles of Association, CNBM Group does not appoint officers of CNBM Company. The President of CNBM Company is hired and dismissed by CNBM Company's board of directors. Other senior management personnel may be nominated by CNBM Company's President but still must be hired and dismissed by CNBM Company's board of directors.

6.     Since taking positions in CNBM Group, I am aware of no instance in which CNBM Group has nominated or appointed a director or officer of a company in which it held only an indirect equity interest, such as BNBM PLC and Taishan. To the best of my knowledge, directors of such companies are nominated and voted upon by their own direct shareholders, in accordance with those companies' articles of association.

7.     While CNBM Group may be notified of changes in management or directors of companies in which it holds an indirect equity interest, CNBM Group does not possess veto power over decisions made by shareholders or boards of directors of such companies. Similarly, while CNBM Group may be informed of major business or investment decisions made by companies in which it holds an indirect equity interest, such as BNBM PLC or Taishan, CNBM Group does not possess veto power over such major decisions, let alone the day-to-day operations of such companies.

2

8.    I was chairman of Taishan's supervisory committee from approximately 2005 to 2011. I understand that the function of a company's supervisory committee is specified in China's Company Law, as well as a company's articles of association. My primary responsibilities as chairman of Taishan's supervisory committee were to monitor the accuracy of Taishan's financial information, to observe board meetings in a non-voting capacity, to monitor the acts of directors or officers but only with regard to preventing violations of laws, administrative regulations and Taishan's Articles of Association, and to request rectification from a director or senior manager if his or her actions were harmful to Taishan's interests. I did not direct, manage, or otherwise control Taishan's business decisions or Taishan's directors, officers or employees, and the supervisory committee did not have any involvement in or control over Taishan's regular business practices, including its sales of drywall, or sales to the United States.

9.    To my knowledge, none of CNBM Group's officers, directors or employees is a director, officer or employee of Taishan. CNBM Group has no shared assets, financial accounts, or corporate records with Taishan.

10.    CNBM Group licenses the use of its red and white octagonal logo to some of its subsidiaries, including CNBM Company. A true and correct copy of the CNBM logo is attached as Exhibit B. However, neither Taishan nor BNBM PLC use or license this logo, and both companies have distinct, separate logos. Taishan's logo, for example, can be seen on its webpage, http://www.taihegroup.com, and is a red circle containing an upward-facing white arrow. A true and correct copy of Taishan's logo is attached as Exhibit C. Likewise, BNBM PLC's logo is simply the letters "BNBM," and is registered as a separate trademark. A true and correct copy of BNBM PLC's logo is attached as Exhibit D.

11.    CNBM Group has its offices at No. 17 Fuxing Road, in Beijing, China. Taishan is located in Tai'an, Shandong Province, which is approximately 500 kilometers away from Beijing.

12.     While CNBM Group's English website states "No. 1 worldwide" in reference to gypsum, fiberglass, and ready-mixed concrete production, this reference and others describe and aggregate the production of all companies in which CNBM Group holds any equity indirectly. CNBM Group itself is not a manufacturer or exporter, but rather an investment holding company.

Dated: November _24_ , 2015

曹三林

JIANGLIN CAO

4

路易斯安那州东区美国联邦地区法院

| | |
|---|---|
| 关于：中国制造的石膏墙产品责任诉讼 | 多地合并诉讼第 2047 号 |
| **本文件与下列案件相关：** | 部门：L |
| *Gross 诉 可耐福, 2:09-cv-6690* | |
| *Amorin 诉 泰山石膏, 2:11-cv-1672* | Fallon 法官 |
| *Amorin 诉 泰山石膏, 2:11-cv-1395* | |
| *Amorin 诉 泰山石膏, 2:11-cv-1673* | WILKINSON 地方法官 |
| *Amorin 诉 国资委, 2:14-cv-1727* | |
| *路易斯安那州 诉 可耐福, 2:10-cv-340* | |
| *Abner 诉 泰山石膏, 2:11-cv-3094* | |
| *Posey 诉 北新建材股份, 2:09-cv-6531* | |
| *Morris 诉 北新建材股份, 2:09-cv-6530* | |

**支持中国建材集团的"支持中国建材集团以缺乏属物管辖权为由提出的驳回动议的答复"的曹江林的声明**

本人，曹江林，声明下列陈述是真实的和正确的，否则将按照美国法律受到对作伪证的惩罚：

1.    我已年满十八（18）周岁，有能力对此处包含的事项作证，并且对这些事实具有个人了解。我的母语是中文。我理解和说英语的能力是有限的。我签署了本声明的中文版本以及由美国奥睿律师事务所的一名翻译人员为我翻译后的本声明的英文版本。

1

2.     我自 2014 年 4 月以来担任中国建材集团的总经理，以及自 2005 年 10 月以来担任中国建材集团的董事。

3.     我自 2005 年 3 月以来担任中国建材股份的总裁和执行董事。根据中国公司法律所制定的、并按照中国和香港法规以中文和英文公布的中国建材股份的公司章程的一份真实且正确的副本被附作证据 <u>A</u>。该公司章程明确了中国建材股份的股东、董事、监事和高管的权利、职责与责任。中国建材集团不能且没有超越该章程授予它的作为中国建材股份的股东的权利。

4.     正如中国建材股份的公司章程所明确的，中国建材集团不任命中国建材股份的董事。更确切地说，由中国建材股份的股东提名和投票决定中国建材股份的董事。

5.     同样地，根据中国建材股份的公司章程，中国建材集团也不任命中国建材股份的高管。中国建材股份的总裁由中国建材股份的董事会任免。其他高级管理人员可以由中国建材股份的总裁提名，但仍须由中国建材股份的董事会任免。

6.     自从我担任中国建材集团各项职务以来，我不曾知道中国建材集团对其只持有间接股权的公司提名或指派任何董事或高管，比方说对北新建材股份和泰山。据我所知，这些公司的董事都是按照这些公司的章程，由它们自己的直接股东提名并投票决定的。

7.     尽管中国建材集团可能会被告知其持有间接股权的各公司的管理层或董事的人员变更，但中国建材集团不拥有对这类公司的股东或董事会作出的决定的否决权。同样地，尽管中国建材集团可能会被告知其持有间接股权的各公司——如北新建材股份

2

或泰山——所作出的重大业务或投资决定，但中国建材集团不拥有对这类重大决定的否决权，更不用说对这类公司的日常运营有否决权了。

8.   从大约 2005 年至 2011 年，我是泰山监事会的主席。我了解公司监事会的职能在中国公司法和公司的章程中有明确规定。作为泰山的监事会主席，我的主要责任是监督泰山的财务信息是否真实、列席董事会会议但不具有投票权、监督董事或高管的行为但仅仅是为了防止违反法律、行政法规和泰山的公司章程，并且当董事或高级经理的行为有损于泰山的利益时，要求其予以纠正。我并不指导、管理或用其他方式控制泰山的业务决定或泰山的董事、高管或雇员，且监事会并不参与或控制泰山的常规业务活动，包括其石膏墙的销售或对美国的销售。

9.   据我了解，没有任何一名中国建材集团的高管、董事或雇员是泰山的董事、高管或雇员。中国建材集团与泰山之间没有共享的资产、财务账户或公司记录。

10.   中国建材集团许可某些其子公司使用其红白八边形标识，这些子公司包括中国建材股份。一个真实且正确的中国建材的标识的副本已附作证据 <u>B</u>。但是，无论是泰山还是北新建材股份都没有使用或许可使用这一标识，且两个公司都有各自独特的标识。例如，泰山的标识可以在其网站——http://www.taihegroup.com——上看到，是一个内含一个向上的白色箭头的红色圆圈。一个真实且正确的泰山的标识的副本已附作证据 <u>C</u>。同样地，北新建材股份的标识是简单的"BNBM"几个字母，且它被注册为独立的商标。一个真实且正确的北新建材股份的标识的副本已附作证据 <u>D</u>。

11.   中国建材集团的办公室位于中国北京复兴路 17 号。泰山位于山东省泰安市，距离北京大约 500 公里。

12.　　尽管中国建材集团的英文网站中在提及石膏、纤维玻璃、预拌混凝土的产能时写道是"世界第一"，但该引述与其他引文只是描述并汇总了中国建材集团持有任何间接股东权益的所有公司的产能。中国建材集团本身并不是一个制造商或出口商，而是一个投资控股公司。

日期：2015 年 11 月 _24_ 日

_____

曹江林

# EXHIBIT A



# CNBM

# China National Building Material Company Limited[*]

# 中 國 建 材 股 份 有 限 公 司

*(a joint stock limited company incorporated in the People's Republic of China with limited liability)*

(Stock Code: 3323)

### China National Building Material Company Limited*
### ARTICLES OF ASSOCIATION

## CONTENTS

Chapter 1 General Provisions   3

Chapter 2 Objectives and Scope of Business   5

Chapter 3 Shares and Registered Capital   6

Chapter 4 Reduction of Capital and Repurchase of Shares   10

Chapter 5 Financial Assistance for the Acquisition of Shares in the Company   13

Chapter 6 Share Certificates and Register of Shareholders   15

Chapter 7 Rights and Obligations of Shareholders   22

Chapter 8 General Meeting   26

Chapter 9 Special Procedures for Voting by Class Shareholders   37

Chapter 10 The Board of Directors   41

Chapter 11 Independent Directors   46

Chapter 12 Secretary of the Board of the Company 48

Chapter 13 Special Committees of the Board 49

Chapter 14 General Manager and
  Other Senior Management Members of the Company 49

Chapter 15 Supervisory Committee 51

Chapter 16 Qualifications and Duties of the Directors, Supervisors,
  General Manager and Other Senior Management Members of the Company 54

Chapter 17 Financial and Accounting System and Profit Distribution 63

Chapter 18 Appointment of Accountants' Firm 69

Chapter 19 Insurance 73

Chapter 20 Labour Management 73

Chapter 21 Trade Union 74

Chapter 22 Merger and Division of the Company 74

Chapter 23 Dissolution and Liquidation of the Company 75

Chapter 24 Procedures for Amendments to the Articles of Association 79

Chapter 25 Settlement of Disputes 80

Chapter 26 Notice 81

Chapter 27 Interpretations and Definitions of the Articles of Association 83

Appendix I   Rules of Procedure
  for Shareholders' General Meetings 86

Appendix II   Rules of Procedure for Board Meetings 117

Appendix III   Rules of Procedure
  for Supervisory Committee Meetings 134

# China National Building Material Company Limited*
# ARTICLES OF ASSOCIATION

## CHAPTER 1 GENERAL PROVISIONS

**Article 1.1**      China National Building Material Company Limited* (the "Company") is a joint stock limited company incorporated pursuant to the Company Law of the People's Republic of China (the "Company Law"), the Special Regulations of the State Council on the Overseas Offer and Listing of Shares by Joint Stock Limited Companies (the "Special Regulations") and other relevant laws and administrative regulations.

With the approval of the State Asset Administration Commission of the State Council ("SAAC") as shown in its document No. [2005] 282, the Company was established on 10 March 2005 by means of promotership and obtained the business licence of the Company following registration with the State Administration for Industry & Commerce ("SAIC") on 28 March 2005 with the Business Licence number of 100000000003498.

Promoters of the Company: China National Building Material Group Corporation, Beijing New Building Material (Group) Company Limited, China National Building Material Import and Export Company, China Cinda Asset Management Co., Ltd. and China Building Materials Academy.

**Article 1.2**      Registered Name of the Company

In Chinese: 中國建材股份有限公司

In English: China National Building Material Company Limited*

**Article 1.3**    The Company's legal residence: Tower 2, Guohai Plaza, No. 17 Fuxing Road, Haidian District, Beijing

Postcode: 100036

Telephone: 010-68138300

Facsimile: 010-68138388

**Article 1.4**    The Company's legal representative is the Chairman of the Board.

**Article 1.5**    The Company is a joint stock limited company with unlimited term of operation.

**Article 1.6**    Upon adoption by special resolution at the general meeting of the Company and approval by the relevant authorities of the PRC, the Articles of Association shall take effect as from the date of registration with the industry and commerce administration authorities, and shall completely replace the articles of association formerly registered with such industry and commerce administration authorities.

From the date of the Articles of Association becoming effective, the Articles of Association constitute a legally binding document regulating the Company's organization and behavior, and the rights and obligations between the Company and its shareholders and between and among the Company's shareholders.

**Article 1.7**    These Articles of Association shall be binding on the Company and its shareholders, Directors, supervisors, general managers and other senior management members, who shall have the right to make any claims and propositions regarding the Company's affairs in accordance with the Articles of Association.

The shareholders of the Company may pursue actions against the Company and the Company may pursue actions against its shareholders, both being on the basis of these Articles of Association. The shareholders of the Company may pursue actions against the Directors, supervisors, general manager and other senior management members of the Company.

The actions aforementioned include the institution of legal proceedings with a court proceedings or application to an arbitration institution for arbitration.

**Article 1.8**   The Company may invest in other limited liability companies and joint stock limited companies, and shall be liable for the invested companies to the extent of the amount of its capital contribution.

Subject to the approval from the company's approving department authorized by the State Council, the Company may operate as a holding company as prescribed in paragraph 2 of Article 12 of the Company Law according to its operational and management needs.

## CHAPTER 2 OBJECTIVES AND SCOPE OF BUSINESS

**Article 2.1**   The business objectives of the Company are: committed to adopting new technologies to provide high-quality building material products and building material project contracting services for industries such as building materials industry, construction industry and real estate industry both at home and abroad. While seeking sustainable growth, the Company adheres to the philosophy of dual focus on both economic and social benefits, cherish the environment, well utilized resources, and ensure the health of its employees and provide them with abundant development opportunities.

**Article 2.2**    The business scope of the Company shall be as approved by the company registration authorities.

The business scope of the Company is: the manufacturing of new style building materials and related products, the technology research and development and manufacturing and sale of new style housing, cement and related products, glass fiber and related products, and composite material and related products; storage, delivery and distribution of building material; technology research and development, project design and project contracting of cement and glass production lines; project design and project contracting of new style building materials; and technology consultation and provision of information services relating to the aforesaid businesses; contracting of overseas building materials, project contracting, survey, consultation, design and supervision for construction and light textile industries; export of the equipment and materials required by the above overseas projects; as well as dispatching labourers required by such overseas projects.

## CHAPTER 3 SHARES AND REGISTERED CAPITAL

**Article 3.1**    The Company shall have ordinary shares at any and all times. Subject to the approval from the companies approving department authorized by the State Council, the Company may issue other classes of shares when needed.

**Article 3.2**    All shares issued by the Company shall have a nominal value, with each share having a nominal value of RMB1 yuan.

**Article 3.3**    Subject to the approval of the securities regulatory authority of the State Council, the Company may issue shares to domestic and foreign investors.

The foreign investors referred to in the preceding paragraph mean those investors from foreign countries, the regions of Hong Kong, Macau or Taiwan who subscribe for shares issued by the Company. Domestic investors mean those investors within the territory of the PRC other than those from the regions referred to in the preceding sentence who subscribe for shares issued by the Company.

**Article 3.4**   Shares issued by the Company to domestic investors for subscription in Renminbi are called domestic shares. Shares issued by the Company to foreign investors for subscription in a foreign currency are called foreign shares. Foreign shares listed outside overseas are called overseas listed foreign shares.

Both the holders of domestic shares and overseas listed foreign shares are the shareholders of ordinary shares, and have the same rights and obligations.

Upon the approval of the State Council or the securities regulatory authority authorized by the State Council, and in accordance with relevant regulations of the Hong Kong Stock Exchange, domestic shares of the Company may be converted to overseas listed foreign shares.

**Article 3.5**   As approved by the companies approving department authorized by the State Council, the number of ordinary shares issued by the Company prior to the initial public offering of H shares totalled 1,387,760,000 shares, all of which were subscribed by the promoters, including:

368,280,000 shares subscribed by China National Building Material Group Corporation through contribution of net assets, representing 26.54% of the total issuable ordinary shares upon establishment of the Company;

820,290,000 shares subscribed by Beijing New Building Material (Group) Company Limited through contribution of net assets, representing 59.11% of the total issuable ordinary shares upon establishment of the Company;

125,740,000 shares subscribed by China National Building Material Import and Export Company through contribution of net assets, representing 9.06% of the total issuable ordinary shares upon establishment of the Company;

72,800,000 shares subscribed by China Cinda Asset Management Co., Ltd. through contribution of net assets, representing 5.24% of the total issuable ordinary shares upon establishment of the Company; and

650,000 shares subscribed by China Building Materials Academy through capital contribution in cash, representing 0.05% of the total issuable ordinary shares upon establishment of the Company.

**Article 3.6**   As approved by the securities regulatory authority of the State Council, the Company issued additional 1,311,753,131 H shares upon its establishment, during which the holders of State-owned shares downsize their holdings in the Company by 127,832,817 shares, and such shares were subsequently converted into H shares.

Upon completion of the aforesaid issue of H shares, the Company's share capital structure was as follows: 2,699,513,131 ordinary shares, of which 333,481,261 shares were held by China National Building Material Group Corporation, a promoter of the Company, representing 12.35% of the Company's total ordinary shares in issue; 742,783,478 shares were held by Beijing New Building Material Group Company Limited, a promoter of the Company, representing 27.52% of the Company's total ordinary shares in issue; 113,859,765 shares were held by China National Building Material Import and Export Company, a promoter of the Company, representing 4.22% of the Company's total ordinary shares in issue; 69,216,154 shares were held by China Cinda Asset Management Co., Ltd., a promoter of the Company, representing 2.56% of the Company's total ordinary shares in issue; 586,525 shares were held by China Building Materials Academy, a promoter of the Company, representing 0.02% of the Company's total ordinary shares in issue; and 1,439,585,948 shares were held by holders of H shares, representing 53.33% of the Company's total ordinary shares in issue.

Upon distribution of bonus shares to the existing shareholders, the Company's share capital structure was as follows: 5,399,026,262 ordinary shares, of which 666,962,522 shares were held by China National Building Material Group Corporation, a promoter of the Company, representing 12.35% of the Company's total ordinary shares in issue; 1,485,566,956 shares were held by Beijing New Building Material Group Company Limited, a promoter of the Company, representing 27.52% of the Company's total ordinary shares in issue; 227,719,530 shares were held by China National Building Material Import and Export Company, a promoter of the Company, representing 4.22% of the Company's total ordinary shares in issue; 138,432,308 shares were held by China Cinda Asset Management Co., Ltd., a promoter of the Company, representing 2.56% of the Company's total ordinary shares in issue; 1,173,050 shares were held by China Building Materials Academy, a promoter of the Company, representing 0.02% of the Company's total ordinary shares in issue; and 2,879,171,896 shares were held by holders of H shares, representing 53.33% of the Company's total ordinary shares in issue.

**Article 3.7**   Upon approval by the securities regulatory authority of the State Council of the proposal for issuing overseas listed foreign shares and domestic shares, the Board may make implementation arrangements of separate issues.

The Company's proposal for separate issues of overseas listed foreign shares and domestic shares pursuant to the preceding paragraph may be implemented within fifteen (15) months from the date of approval by the securities regulatory authority of the State Council.

**Article 3.8**   Where the Company issues overseas listed foreign shares and domestic shares separately within the total number of shares as stated in the issuance proposal, every such issue of the offered shares shall be fully subscribed for in one time. If they cannot be fully subscribed for in one time under special circumstances, these shares may be issued in several issues subject to the approval of the securities regulatory authority of the State Council.

**Article 3.9**   The Company's registered capital is RMB5,399,026,262.

**Article 3.10**   The Company may, based on its operation and development needs and in accordance with the relevant provisions of the Articles of Association, approve an increase of its capital.

The Company may increase its capital in the following manners:

(1)   offer of new shares to unspecified investors;

(2)   rights issue of to existing shareholders;

(3)   allotment of new shares to its existing shareholders;

(4)   any other methods as permitted by laws and administrative regulations.

The Company's increase of its capital by issuing new shares shall, after having been approved in accordance with the provisions of the Articles of Association, be conducted in accordance with the procedures stipulated by the relevant laws and administrative regulations.

**Article 3.11**  Unless otherwise provided by laws and administrative regulations, fully-paid-up shares of the Company are freely transferable and without any liens attached.

## CHAPTER 4 REDUCTION OF CAPITAL AND REPURCHASE OF SHARES

**Article 4.1**  In accordance with the provisions of the Articles of Association, the Company may reduce its registered capital.

**Article 4.2**  The Company shall prepare a balance sheet and an inventory of assets when it reduces its registered capital.

The Company shall notify its creditors within ten (10) days from the date of the Company's resolution on reduction of capital and shall publish a public announcement in the newspapers at least three times within thirty (30) days from the date of such resolution. A creditor has the right, within thirty (30) days of receiving the notice from the Company or, in the case of a creditor who does not receive the notice, within ninety (90) days from the date of the first announcement, to require the Company to repay its debt or provide a corresponding guarantee for such repayment.

The registered share capital of the Company following the reduction of its capital shall not fall below the minimum statutory amount.

**Article 4.3**  The Company may, upon the passing of the procedures under the Articles of Association, and subject to the approval of the relevant governing authority of the state, repurchase its issued shares under the following circumstances:

(1)  to cancel shares for the purpose of capital reduction;

(2)  to merge with another company that holds shares in the Company;

(3)  other circumstances as permitted by laws and administrative regulations.

**Article 4.4**     The Company may, with the approval of the relevant governing authority of the State for repurchasing its shares, conduct the repurchase in one of the following manners:

(1)   to make an offer to repurchase its shares to all of its shareholders on a pro rata basis;

(2)   to repurchase its shares through public trading on a stock exchange;

(3)   to repurchase its shares through an off-market agreement.

**Article 4.5**     Where the Company repurchases its shares through an off-market agreement, it shall seek prior approval of the shareholders at the general meeting in accordance with the Articles of Association. The Company may rescind or vary a contract so entered into by the Company or waive any of its rights thereunder upon prior approval by shareholders at general meeting obtained in the same manner.

The contract to repurchase shares as referred to in the preceding paragraph includes, but not limited to, an agreement whereby obligations to repurchase are undertaken and rights to repurchase are acquired.

The Company shall not assign a contract for repurchasing its shares or any of its right thereunder.

Where the Company has the rights to repurchase the redeemable shares:

(1)   if the repurchases are not made through the market or by tender, it shall be limited to a maximum price;

(2)   if the repurchases are made by tender, the tender shall be available to all shareholders alike.

**Article 4.6**    Shares repurchased in accordance with the laws by the Company shall be cancelled within the period prescribed by laws and administrative regulations and the Company shall apply to the original company registration authority for registration of the change of its registered share capital.

The registered capital of the Company shall be reduced by the aggregate nominal value of the shares cancelled.

**Article 4.7**    Unless the Company is in the course of liquidation, it must comply with the following provisions in respect of repurchase of its issued shares:

(1)   where the Company repurchases its shares at par value, payment shall be made out of book balance of the distributable profits of the Company or out of proceeds of a fresh issue of shares made for that purpose;

(2)   where the Company repurchases its shares at a premium to their par value, payment up to the par value shall be made out of the book balance of distributable profits of the Company or out of the proceeds of a fresh issue of shares made for that purpose. Payment of the portion in excess of the par value shall be effected as follows:

(i)    if the shares being repurchased were issued at par value, payment shall be made out of the book balance of the distributable profits of the Company;

(ii)   if the shares being repurchased were issued at a premium to their par value, payment shall be made out of the book balance of the distributable profits of the Company or out of the proceeds of a fresh issue of shares made for that purpose, provided that the amount paid out of the proceeds of the fresh issue shall not exceed the aggregate of premiums received by the Company on the issue of the shares repurchased nor the amount standing to the credit of the Company's share premium account (or capital reserve account) at the time of such repurchase (including the premiums on the fresh issue);

(3)   payment by the Company for the following purposes shall be made out of the Company's distributable profits:

    (i)   acquisition of rights to repurchase shares of the Company;

    (ii)   variation of any contract for repurchasing shares of the Company;

    (iii)  discharge of any of the Company's obligations under any contract for repurchasing its shares.

(4)   after the Company's registered share capital has been reduced by the total par value of the cancelled shares in accordance with the relevant provisions, the amount deducted from the distributable profits of the Company for payment of the par value portion of the shares repurchased shall be accounted for in the Company's share premium account (or capital reserve account).

## CHAPTER 5 FINANCIAL ASSISTANCE FOR THE REPURCHASE OF SHARES IN THE COMPANY

**Article 5.1**   The Company and its subsidiaries shall not, by any means at any time, provide any kind of financial assistance to a person who is acquiring or is proposing to acquire shares in the Company. The said acquirer of shares in the Company includes a person who directly or indirectly incurs any obligations due to the acquisition of shares in the Company.

The Company and its subsidiaries shall not, by any means at any time, provide financial assistance to the said acquirer for the purpose of reducing or discharging the obligations of that person.

This provision does not apply to the circumstances stated in Article 5.3.

**Article 5.2**   The financial assistance referred to in this Chapter includes (without limitation) financial assistance provided by the following means:

(1)   gift;

(2)   guarantee (including the assumption of liability by the guarantor or the provision of assets by the guarantor to secure the performance of obligations by the obligor), or compensation (other than compensation in respect of the Company's own default) or release or waiver of any rights;

(3)   provision of loan or entry into any agreement under which the obligations of the Company are to be fulfilled before the obligations of other parties, or a change in the parties to, or the assignment of rights under, such loan or agreement;

(4)   any other form of financial assistance given by the Company when the Company is insolvent or has no net assets or when its net assets would thereby be reduced to a material extent.

The expression "Incurring an obligation" referred to in this Chapter includes the incurring of obligations by the obligor as a result of the changing of the its financial position by way of contract or the making of an arrangement (whether enforceable or not, and whether made on its own account or jointly with any other persons), or by any other means.

**Article 5.3**   The following activities shall not be deemed to be activities prohibited by Article 5.1:

(1)   the provision of financial assistance by the Company where the financial assistance is given in good faith in the interest of the Company, and the principal purpose of giving the financial assistance is not for the acquisition of shares in the Company, or the giving of the financial assistance is an incidental part of a master plan of the Company;

(2)   the lawful distribution of the Company's assets by way of dividend;

(3)   the payment of any dividend by way of an allotment of shares;

(4) a reduction of registered capital, a repurchase of shares or a reorganization of the shareholding structure of the Company effected in accordance with these Articles of Association;

(5) the lending of money by the Company within its scope of business and in the ordinary course of its business (provided that the net assets of the Company are not thereby reduced or that, to the extent that such net assets are thereby reduced, such financial assistance is provided out of the distributable profits of the Company);

(6) the provision of money by the Company for contributions to staff and workers' share schemes (provided that the net assets of the Company are not thereby reduced or that, to the extent that such net assets are thereby reduced, such financial assistance is provided out of the distributable profits of the Company).

## CHAPTER 6 SHARE CERTIFICATES AND REGISTER OF SHAREHOLDERS

**Article 6.1**   Share certificates of the Company shall be in registered form.

In addition to those provided in the Company Law, a share certificate of the Company shall also contain any other particulars required to be specified therein by the stock exchange(s) on which the shares of the Company are listed.

**Article 6.2**   Shares in the Company may be transferred, disposed of by way of gift, inherited and pledged in accordance with the relevant laws, administrative regulations and the provisions of these Articles of Association.

Assignment or transfer of such shares shall be registered with the share registrar appointed by the Company.

**Article 6.3**    Share certificates shall be signed by the Chairman. Where the stock exchange on which the shares of the Company are listed requires such share certificates to be signed by other senior management members of the Company, such share certificates shall also be signed by such other senior management members. Such share certificates shall become valid after the seal of the Company has been affixed thereto by way of printing or otherwise. The seal of the Company shall be affixed to such share certificates with the authority of the Board. The signatures of the Chairman of the Company or other relevant senior management members on such share certificates may also be in printed form.

**Article 6.4**    The Company shall establish a register of shareholders, in which the following particulars shall be entered:

(1)   the name, address (residence), occupation or nature of each shareholder;

(2)   the class and number of shares held by each shareholder;

(3)   the amount paid up or payable in respect of shares held by each shareholder;

(4)   the identification numbers of the shares held by each shareholder;

(5)   the date on which each shareholder is registered as such;

(6)   the date on which each shareholder ceases to be such shareholder.

The register of shareholders shall be the sufficient evidence of the shareholders' shareholdings in the Company, except where there is evidence to the contrary.

**Article 6.5**    The Company may, in accordance with the mutual understanding and agreements between the securities regulatory authority of the State Council and overseas securities regulatory authorities, maintain its register of holders of overseas listed foreign shares outside China and appoint overseas agent(s) to manage such register. The original register of holders of overseas listed foreign shares listed in Hong Kong shall be maintained in Hong Kong.

The Company shall keep a copy of its register of holders of overseas listed foreign shares at its address. The overseas agent appointed as aforesaid shall ensure that the original and the copy of such register of holders of overseas listed foreign shares are at all times consistent.

Where the original and the copy of such register of holders of overseas listed foreign shares are inconsistent, the original shall prevail.

**Article 6.6**    The Company shall maintain a complete register of shareholders.

Such register of shareholders shall include the following parts:

(1)  a register of shareholders kept at the Company's legal residence (other than those under items (2) and (3) of this Article);

(2)  a register of holders of overseas listed foreign shares of the Company kept at the place where the overseas stock exchange on which such shares are listed is located;

(3)  any register of shareholders kept at such other place as the Board may consider necessary for the purpose of listing of the Company's shares.

**Article 6.7**    Different parts of the register of shareholders shall not overlap one another. No transfer of the shares registered under any part of the register shall, during the existence of that registration, be registered under any other part of the register of shareholders.

Alteration or rectification of each part of the register of shareholders shall be made in accordance with the laws of the place where that part of the register of shareholders is kept.

**Article 6.8**  All fully paid-up overseas listed foreign shares which are listed in Hong Kong are freely transferable pursuant to these Articles of Association. However, the Board may refuse to recognize any instrument of transfer without giving any reason unless the following conditions are fulfilled:

(1)  HK$2 or such higher fee as may be agreed by the Hong Kong Stock Exchange has been paid to the Company to register the instrument of transfer of shares and other documents relating to or which may affect the title to such shares;

(2)  the instrument of transfer only relates to the overseas listed foreign shares listed in Hong Kong;

(3)  the stamp duty payable on the instrument of transfer has been paid;

(4)  the relevant share certificates and evidence reasonably required by the Board showing that the transferor has the right to transfer such shares have been provided;

(5)  if the shares are to be transferred to joint holders, the number of such joint holders shall not exceed four;

(6)  the Company does not have any lien over the relevant shares.

All transfers of overseas listed foreign shares of the Company which are listed in Hong Kong shall be effected by instruments of transfer in writing in a common or usual form or in any other form acceptable to the Board; Such instruments of transfer may be signed by hand; where the transferor or transferee is a recognized clearing house ("Recognized Clearing House") as defined by the Hong Kong laws or its nominee, the signatures to such instruments of transfer may be affixed by mechanical means. All instruments of transfer shall be kept at the legal address of the Company or such other place as the Board may specify from time to time.

Alteration or rectification of each part of the register of shareholders shall be made in accordance with the laws of the place where such part of the register of shareholders is kept.

**Article 6.9**    Transfers may not be entered in the register of shareholders within thirty (30) days prior to the date of a general meeting or within five (5) days before the record date set by the Company for the purpose of distribution of dividends.

**Article 6.10**   When the Company intends to convene a general meeting, distribute dividends, liquidate and engage in other activities that involve determination of shareholdings, the Board shall designate a day to be the record date for the purpose of such determination. Shareholders whose names appear in the register of shareholders at the end of the record date are shareholders of the Company.

**Article 6.11**   Any person who objects to the register of shareholders and requests to have his name entered in or removed from the register of shareholders may apply to a court of competent jurisdiction for rectification of the register.

**Article 6.12**   Any shareholder who is registered in, or any person who requests to have his name entered in, the register of shareholders may, if his share certificate (the "original certificate") is lost, apply to the Company for a replacement share certificate in respect of such shares (the "relevant shares").

If a holder of domestic shares loses his share certificates and applies for their replacement, it shall be dealt with in accordance with the provisions of Article 144 of the Company Law.

If a holder of overseas listed foreign shares loses his share certificates and applies for their replacement, it may be dealt with in accordance with the relevant laws, the rules of the stock exchange or other relevant regulations of the place where the original register of holders of such overseas listed foreign shares is maintained.

If a holder of overseas listed foreign shares of the Company which are listed in Hong Kong loses his share certificates and applies for their replacement, such replacement shall comply with the following requirements:

(1)  The applicant shall submit an application to the Company in a standard form prescribed by the Company and accompanied by a notarial certificate or statutory declaration, containing the grounds upon which the application is made and the circumstances and evidence of the loss of the share certificates as well as a declaration that no other person shall be entitled to request to be registered as the shareholder in respect of the relevant shares.

(2)  no statement has been received by the Company from any person other than the applicant requesting that such person be registered as the shareholder of the relevant shares before the Company decides to issue the replacement share certificates.

(3)  the Company shall, if it decides to issue any replacement share certificates to the applicant, make an announcement of its intention to issue the replacement share certificates in such newspapers as may be designated by the Board. Such announcement shall be made at least once every thirty (30) days in a period of ninety (90) days.

(4)  the Company shall have, prior to the publication of the announcement of its intention to issue such replacement share certificates, delivered to the stock exchange on which its shares are listed a copy of the announcement to be published. The Company may publish the announcement upon receiving a confirmation from such stock exchange that the announcement has been displayed on the premises of such stock exchange. The announcement shall be displayed on the premises of such stock exchange for a period of ninety (90) days.

In case an application for a replacement share certificate has been made without the consent of the registered holder of the relevant shares, the Company shall send by post to such registered shareholder a copy of the announcement to be published.

(5)  if, upon expiration of the 90-day period under each of items (3) and (4) of this Article, the Company has not received from any person any objection to the issue of such replacement share certificates, the Company may issue such replacement share certificates to the applicant according to his application.

(6)  where the Company issues a replacement share certificate under this Article, it shall forthwith cancel the original share certificate and enter such cancellation and issue in the register of shareholders accordingly.

(7)  all expenses relating to the cancellation of an original share certificate and the issue of a replacement share certificate by the Company shall be borne by the applicant. The Company may refuse to take any action until a reasonable guarantee is provided by the applicant for such expenses.

**Article 6.13**   Where the Company issues a replacement share certificate pursuant to these Articles of Association, the name of a bona fide purchaser who obtains the aforementioned replacement share certificate or a shareholder who thereafter becomes registered as the owner of the relevant shares (in the case that he is a bona fide purchaser) shall not be removed from the register of shareholders.

**Article 6.14**   The Company shall not be liable for any damages sustained by any person by reason of the cancellation of an original share certificate or the issuance of a replacement share certificate, unless the claimant is able to prove that the Company had acted fraudulently.

## CHAPTER 7 RIGHTS AND OBLIGATIONS OF SHAREHOLDERS

**Article 7.1**    A shareholder of the Company is a person who lawfully holds shares of the Company and whose name has been entered in its register of shareholders.

A shareholder shall enjoy the relevant rights and assume the relevant obligations in accordance with the class and number of shares he holds. Shareholders holding the same class of shares shall be entitled to the same rights and assume the same obligations.

The Company shall not exercise any of its powers to freeze or otherwise impair any of the rights attached to any shares of the Company by reason only that a person or persons who are interested directly or indirectly therein have failed to disclose their interests to the Company.

**Article 7.2**    When two or more persons are registered as the joint holders of any share, they shall be deemed to be the joint owners of such share subject to the following restrictions:

(1)   the Company shall not be obliged to register more than four persons as the joint holders of any share;

(2)   all the joint holders of any share shall jointly and severally assume the liability to pay for all amounts payable in respect of such share.

In case one of the joint holders has deceased, only the surviving joint holders shall be deemed by the Company to be the persons having the ownership of such share, but the Board shall have the right, for the purpose of making amendments to the register of shareholders, to require the production of such death certificate in respect of such shareholder as it may deem appropriate;

For joint holding of any share, only the joint holder whose name stands first in the register of shareholders in respect of such share shall be entitled to receive from the Company the certificate for such share, and notices, and to attend and exercise all voting rights attached to such share at general meetings of the Company. Any notice served on such person shall be deemed to have been served on all the joint holders of the such share.

**Article 7.3**     The ordinary shareholders of the Company shall be entitled to the following rights:

(1)   the right to receive dividends and other distributions in proportion to the number of shares held by them;

(2)   the right to attend or appoint a proxy to attend general meetings and to exercise voting rights thereat;

(3)   the right to monitor the business activities of the Company and to put forward proposals or make inquiries relating thereto;

(4)   the right to transfer shares in accordance with the laws, administrative regulations and the provisions of these Articles of Association;

(5)   the right to obtain relevant information in accordance with the provisions of these Articles of Association, including:

    1.   the right to obtain a copy of these Articles of Association, subject to payment of the cost of such copy;

    2.   the right to inspect and copy, subject to payment of a reasonable charge:

        (i)   all parts of the register of shareholders;

        (ii)   personal particulars of each of the Company's Directors, supervisors, general manager and other senior management members, including:

            (A) present name and alias and any former name and alias;

            (B) principal address (residence);

            (C) nationality;

            (D) full-time and all other part-time occupations and offices;

            (E) identification document and its number;

(iii) a statement of the Company's share capital;

(iv) a report showing in respect of each class of shares repurchased by the Company since the end of the last accounting year, the aggregate nominal value and the quantity of, and the maximum and minimum price paid for, such shares so repurchased, and the aggregate amount paid by the Company for such purpose;

(v) minutes of general meetings.

(6) in the event of the termination or liquidation of the Company, the right to participate in the distribution of remaining assets of the Company in accordance with the number of shares held by them;

(7) other rights conferred by laws, administrative regulations and these Articles of Association.

**Article 7.4**   The ordinary shareholders of the Company shall assume the following obligations:

(1) to abide by these Articles of Association;

(2) to pay subscription monies according to the type of shares subscribed for and the method of subscription;

(3) other obligations imposed by laws, administrative regulations and these Articles of Association.

Shareholders are not liable to make any further contribution to the share capital of the Company other than as agreed at the time of their subscription of the relevant shares.

**Article 7.5**    In addition to obligations imposed by laws or administrative regulations or required by the listing rules of the stock exchange on which the shares of the Company are listed, a controlling shareholder shall not exercise his voting rights in a manner prejudicial to the interests of all or some of the shareholders of the Company:

(1)   to relieve a Director or supervisor of his duty to act honestly in the best interests of the Company;

(2)   to approve the expropriation by a Director or supervisor (for his own benefit or for the benefit of another person), in any guise, of the Company's assets, including (without limitation) opportunities beneficial to the Company;

(3)   to approve the expropriation by a Director or supervisor (for his own benefit or for the benefit of another person) of the individual rights of other shareholders, including (without limitation) rights to distributions and voting rights save in respect of a company restructuring submitted to the general meeting of shareholders for approval in accordance with these Articles of Association.

**Article 7.6**    The term "controlling shareholder" referred to in the preceding article means a person who satisfies any one of the following conditions:

(1)   he alone, or acting in concert with others, has the power to elect more than half of the Board members;

(2)   he alone, or acting in concert with others, has the power to exercise or to control the exercise of 30% or more of the voting rights in the Company;

(3)   he alone, or acting in concert with others, holds 30% or more of the issued and outstanding shares of the Company;

(4)   he alone, or acting in concert with others, in any other manner controls the Company in fact.

## CHAPTER 8 GENERAL MEETING

**Article 8.1**   The general meeting is the organ of authority of our Company and shall exercise its functions and powers in accordance with the law.

**Article 8.2**   The general meeting may exercise the following functions and powers:

(1)   to decide on the operating policies and investment plans of the Company;

(2)   to elect and remove Directors and to fix the remuneration of the relevant Directors;

(3)   to elect and remove supervisors (being shareholders' representatives), and to fix the remuneration of the relevant supervisors;

(4)   to examine and approve the reports of the Board;

(5)   to examine and approve the reports of the Supervisory Committee;

(6)   to examine and approve the proposed annual financial budgets and proposed final accounts of the Company;

(7)   to examine and approve the profit distribution plans and loss making-up plans of the Company;

(8)   to adopt resolutions on any increase or reduction of registered capital of the Company;

(9)   to adopt resolutions on matters such as merger, spin-off, dissolution, and liquidation of the Company;

(10) to adopt resolutions on the issue of bonds of the Company;

(11) to adopt resolutions on the appointments, dismissals or non-reappointments of accounting firms;

(12) to amend these Articles of Association;

(13) to consider proposals submitted by shareholders holding not less than 5% of the Company's voting shares;

(14) to consider other matters required by laws, administrative regulations and these Articles of Association to be resolved upon by general meeting of shareholders.

The general meeting may authorize or delegate the Board to deal with such matters as may be authorized or delegated by it.

**Article 8.3** Unless prior approval is obtained at a general meeting, the Company shall not enter into any contract with any person other than the Directors, supervisors, general managers and other senior management members pursuant to which such person shall be responsible for managing the whole or any material part of the Company's business.

**Article 8.4** There shall be annual general meetings and extraordinary general meetings of shareholders. A general meeting of shareholders shall be convened by the Board.

Annual general meetings of shareholders shall be held once every year, with each annual general meeting to be held within six months after the end of the previous accounting year.

The Board shall convene an extraordinary general meeting of shareholders within two months of the occurrence of one of the following circumstances:

(1) the number of Directors is less than the number required by the Company Law or less than two-thirds of the number required by these Articles of Association;

(2) the uncovered losses of the Company amount to one third of its total share capital;

(3) shareholders holding not less than 10% of the Company's issued voting shares request in writing that an extraordinary general meeting be held;

(4) the Board considers it necessary or the Supervisory Committee proposes that such a meeting should be held.

— 27 —

**Article 8.5**   A written notice of a general meeting of the Company shall be given to all the Shareholders whose names appear in the register of Shareholders specifying the matters proposed to be considered and the date and place of the meeting forty-five (45) days prior to the date of the general meeting (including the date of meeting but excluding the date of the notice). Shareholders who intend to attend the meeting shall deliver their written replies stating such intention to the Company twenty (20) days prior to the date of the meeting.

**Article 8.6**   In the case of an annual general meeting, shareholders holding in aggregate 5% or more of the total number of shares carrying voting rights shall be entitled to put forward any new proposal in writing to the Company, and the Company shall include such proposal in the agenda of such meeting to the extent that it falls within the powers of the shareholders' general meeting.

**Article 8.7**   The Company shall, on the basis of the written replies received twenty (20) days before the date of a general meeting, calculate the number of shares carrying voting rights represented by the shareholders who intend to attend the meeting. Such meeting may be held if the number of shares carrying voting rights represented by the shareholders who intend to attend the meeting is more than one-half of the total number of shares of the Company with voting rights; otherwise the Company shall, within five (5) days, by way of an announcement notify the shareholders again of the matters to be considered at the meeting and the date and venue of the meeting. Such meeting may be held after such an announcement has been made.

An extraordinary general meeting shall not decide on matters not specified in the notice of such meeting.

**Article 8.8**   The notice of a general meeting shall meet the following requirements:

(1)   it shall be in written form;

(2)   it shall specify the place, date and time of the meeting;

(3)   it shall state the matters to be considered at the meeting;

(4)  it shall provide shareholders with such information and explanation as are necessary for them to make informed decisions in connection with the matters to be discussed. This principle shall include (but not be limited to), where the Company proposes to merge, repurchase its shares, restructure its share capital or carry out other reorganization, the provision of information on the specific terms and contracts (if any) of the proposed transaction and a proper explanation of the reasons for and effects of the same;

(5)  if any of the Directors, supervisors, general manager and other senior management members has a material interest in any of the matters to be discussed, the nature and extent of such interest shall be disclosed, and if the effect of any of the matters to be discussed on such Director, supervisor, general manager and other senior management member in his capacity as a shareholder is different from the effect of such matter to be discussed on the other shareholders of the same class, such differences shall also be specified;

(6)  it shall contain full text of any special resolution to be proposed at the meeting for consideration and approval;

(7)  it shall contain a clear statement that a shareholder who has the right to attend and vote at the meeting shall have the right to appoint one or more proxies to attend and vote at the meeting on his behalf and that such proxies need not be shareholders;

(8)  it shall state the date and place for the lodging of proxy forms for the meeting.

**Article 8.9**  The notice of a general meeting shall be delivered to shareholders (regardless of whether they have the right to vote at the general meeting) personally or by prepaid mail. The addresses of the recipients shall be such addresses as shown in the register of shareholders. Such notice of the general meeting may also be given to holders of domestic shares by way of an announcement.

The announcement referred to in the preceding paragraph shall be published within a period of forty-five (45) to fifty (50) days prior to the date of the general meeting in one or more newspapers designated by the competent securities authorities under the State Council. Once such an announcement is made, all holders of the domestic shares shall be deemed to have received the notice of the general meeting.

In respect of holders of overseas listed foreign shares, notices of general meetings may also be sent or given by other applicable means specified in Article 26.1 of these Articles of Association, subject to the laws and regulations of the place of listing of the shares of the Company and the relevant requirements of the Hong Kong Stock Exchange.

**Article 8.10**  The accidental omission to give notice of a meeting to, or the non-receipt of notice of a meeting by, any person entitled to receive such notice shall not invalidate the meeting and the resolutions passed thereat.

**Article 8.11**  Any shareholder entitled to attend and vote at a general meeting shall have the right to appoint one or several persons (who may not be shareholders) to act as his proxy or proxies to attend and vote at the meeting on his behalf. The proxy/proxies so appointed may, in accordance with the instructions of such shareholder, exercise the following rights:

(1)  the same right as the shareholder to speak at the meeting;

(2)  the right to demand or join in demanding a poll;

(3)  the right to vote on a show of hands or on a poll provided that where more than one proxy is appointed, the proxies may only vote on a poll.

**Article 8.12**   The instrument appointing a proxy shall be in writing under the hand of the appointer or his attorney duly authorized in writing, or where the appointer is a legal person, either under the seal of such legal person or under the hand of a director of or an executive or attorney duly authorized by such legal person.

**Article 8.13**   The instrument appointing a proxy shall be deposited at the Company's residence or such other place as is specified in the notice of meeting 24 hours before the time appointed for holding the meeting in respect of which such instrument is given, or 24 hours before the time appointed for taking the relevant poll. Where the instrument appointing a proxy is signed by a person under a power of attorney on behalf of the appointer, the power of attorney or other authorization document under which such instrument is signed shall be notarized. A notarially certified copy of that power of attorney or other authorization document shall, together with such instrument, be deposited at the Company's residence or such other place as is specified in the notice of meeting.

In the case of a legal person, its legal representative or such other person as may be authorized by a resolution of its board of directors or other decision-making organ shall, as its representative, attend the general meetings of the Company on its behalf.

Where a shareholder is a recognized clearing house or its nominee, such shareholder is entitled to authorize one or more persons as it deems fit to act on its behalf at any general meeting or any meeting of any class of shareholders; provided that where more than one person is so authorized, the letter of authorization shall specify the number and class of shares in respect of which each such person is so authorized. Such persons so authorized shall be entitled to exercise the rights of the recognized clearing house (or its nominee) on its behalf as if they were individual shareholders of the Company.

**Article 8.14**    Any form issued to a shareholder by the Board for use by him for appointing a proxy shall allow the shareholder to freely instruct the proxy to vote in favour of or against each of the resolutions relating to the matters to be considered at the relevant meeting. Such form shall contain a statement that in the absence of instructions by the shareholder, his proxy may vote as he thinks fit.

**Article 8.15**    Where the appointer has deceased or has been incapacitated from acting or has withdrawn the appointment of his proxy or the power of attorney under which the instrument appointing his proxy has been signed, or where the relevant shares have been transferred, a vote given by such proxy in accordance with such instrument shall remain valid provided that no written notice thereof has been received by the Company prior to the commencement of the relevant meeting.

**Article 8.16**    There shall be two types of resolutions of shareholders' general meetings, namely ordinary resolutions and special resolutions.

For an ordinary resolution to be passed at a general meeting, more than half of the voting rights represented by the shareholders present at the meeting in person or by proxy shall have been exercised in favour of such resolution.

For a special resolution to be passed at a general meeting, more than two-thirds of the voting rights represented by the shareholders present at the meeting in person or by proxy shall have been exercised in favour of such resolution.

**Article 8.17**    A shareholder (including his proxy) when voting at a shareholders' general meeting may exercise voting rights in accordance with the number of shares carrying such voting rights represented by him and shall have one vote for each such share.

**Article 8.18**   Voting at a general meeting shall be by a show of hands unless a poll is (before or after any voting by a show of hands) demanded by the following persons:

(1)   the chairman of the meeting;

(2)   at least two shareholders present in person or by proxy and entitled to vote at the meeting;

(3)   any one or more shareholders present in person or by proxy and representing in the aggregate not less than 10% of all the shares carrying the right to vote at the meeting.

Unless a poll is demanded, a declaration by the chairman that a resolution has been passed on a show of hands and an entry to that effect in the minutes of the meeting shall be conclusive evidence of the fact without proof of the number or proportion of votes in favour of or against such resolution.

The demand for a poll may be withdrawn by the person who makes such demand.

**Article 8.19**   A poll demanded on such matters as the election of chairman or the adjournment of the meeting shall be taken forthwith. A poll demanded on any other matters shall be taken at such time as the chairman may decide, and the meeting may proceed to discuss other matters, and the results of such poll shall still be deemed to be a resolution of that meeting.

**Article 8.20**   On a poll, a shareholder voting in person or by proxy and entitled to two or more votes need not cast all his votes in the same way.

If any shareholder may not exercise any voting rights or may vote only for or only against a particular resolution under the Listing Rules, any vote cast by such shareholder, in person or by proxy in violation of the above limitation or restriction shall not be taken into account when determining the voting results.

**Article 8.21**   In case of an equality of votes (whether on a show of hands or on a poll), the chairman shall have a second vote.

**Article 8.22**   The following shall be approved by an ordinary resolution passed at a shareholders' general meeting:

    (1)   work reports of the Board and the Supervisory Committee;

    (2)   plans formulated by the Board for distribution of profits and for making up losses;

    (3)   the removal of members of the Board and the Supervisory Committee and their remuneration and the methods of payment thereof;

    (4)   the Company's annual financial budgets and final accounts, balance sheets, income statements and other financial statements;

    (5)   matters other than those required by the laws and administrative regulations or by these Articles of Association to be approved by special resolutions.

**Article 8.23**   The following matters shall be approved by a special resolution passed at a shareholders' general meeting:

    (1)   increase or reduction of the share capital of the Company and issue by the Company of shares of any class, warrants or other similar securities;

    (2)   issuance of bonds of the Company;

    (3)   any spin-off, merger, dissolution or liquidation of the Company;

    (4)   amendments to these Articles of Association;

    (5)   any other matters considered by the shareholders' general meeting, by way of an ordinary resolution, to be likely to have a material impact on the Company and as matters requiring approval by a special resolution.

**Article 8.24**  The following procedures shall be followed by shareholders requesting the convening of extraordinary general meetings or class meetings:

(1) two or more shareholders holding in the aggregate 10% or more of the shares carrying the right to vote at the proposed meeting may request the Board to convene an extraordinary general meeting or a class meeting by signing and submitting one or several written requests which are the same in form and content and in which the matters for consideration at the meeting shall be set out clearly. An extraordinary meeting or a class meeting shall be convened by the Board as soon as practicable after receipt of the aforesaid written request. For the purposes of the preceding requirement relating to the number of voting shares held, such number shall be calculated on the basis of the number of such voting shares held on the date of submission of such written request.

(2) if the Board fails to issue a notice convening such meeting within thirty (30) days after receipt of the aforesaid written request, the shareholders requesting such meeting may, within four (4) months after the Board's receipt of such request, convene such meeting by themselves by following procedures which shall, as far as practicable, be the same as the procedure for convening a shareholders' meeting by the Board.

Reasonable expenses incurred by shareholders in convening and holding such meeting due to the Board's failure to convene such meeting in response to the aforesaid request shall be borne by the Company. Such expenses shall be deducted from the amounts due from the Company to the defaulting Director(s).

**Article 8.25**    A shareholders' general meeting shall be convened and presided over by the Chairman. In the event that the Chairman is unable to attend the meeting for any reason, the Vice Chairman shall convene the meeting and act as the chairman thereof; in the event that both the Chairman and the Vice Chairman are unable to attend the meeting, the Board may designate a Director to convene and preside over the meeting on their behalf. In the event that no chairman of the meeting is so designated, the attending shareholders shall elect one (1) person to act as the chairman of the meeting. In the event that, for any reasons, the shareholders fail to elect a chairman, then the shareholder holding the largest number of voting shares present in person or by proxy shall be the chairman of the meeting.

**Article 8.26**    The chairman of the meeting shall determine whether or not a resolution of the general meeting shall be passed. His decision shall be final and conclusive and shall be announced at the meeting and recorded in the minutes of the meeting.

**Article 8.27**    In the event that the chairman of the meeting has any doubt as to the voting result in respect of a resolution, he may have the votes counted. In the event that the chairman of the meeting does not have the votes counted, any shareholder present in person or by proxy who objects to the result announced by the chairman of the meeting may demand that the votes be counted immediately after the declaration of the voting result, in which case the chairman of the meeting shall have the votes counted immediately.

**Article 8.28**    In the event that the votes are counted at the shareholders' general meeting, the counting results shall be recorded in the minutes of the meeting.

Minutes shall be kept of the decisions on the matters considered at a general meeting. Directors present at the meeting shall sign the minutes of the meeting.

Minutes of general meetings together with the attendance book containing the signatures of those shareholders present at general meetings and proxy forms shall be kept at the Company's residence.

**Article 8.29**   Copies of such minutes of general meetings shall be available for inspection during business hours of the Company by any shareholder without charge. If a shareholder demands from the Company a copy of such minutes, the Company shall send a copy to him within seven (7) days after receipt of reasonable charges.

## CHAPTER 9 SPECIAL PROCEDURES FOR VOTING BY CLASS SHAREHOLDERS

**Article 9.1**   Shareholders holding different classes of shares shall be class shareholders.

Class shareholders shall be entitled to rights and assume obligations pursuant to he provisions of laws, administrative regulations and these Articles of Association.

**Article 9.2**   Any variation or abrogation of the rights of any class of shareholders proposed by he Company may only be effected with the approval of a special resolution passed at a shareholders' general meeting and the approval of the shareholders of that affected class at a separate meeting held in accordance with Articles 9.4 to 9.8.

**Article 9.3**   The following circumstances shall be deemed to be a variation or abrogation of the rights of shareholders of a certain class:

(1)   to increase or decrease the number of shares of a particular class, or increase or decrease the number of shares of another class having rights on voting, distribution or other privileges equal or superior to those of the shares of such class;

(2)   to effect an exchange of all or part of shares of such class into shares of other classes, or to effect an exchange or grant a right of exchange of all or part of the shares of other classes into shares of such class;

(3)   to remove or reduce rights to accrued dividends or cumulative dividends attached to shares of such class;

(4)   to reduce or remove the rights to a dividend preference or a liquidation preference to distribution of property attached to shares of such class;

(5)   to add, remove or reduce the rights to conversion, options, voting, transfer, pre-emptive rights to placement and acquire securities of the Company attached to shares of such class;

(6)   to remove or reduce rights to receive payment payable by the Company in particular currency attached to shares of such class;

(7)   to create a new class of shares having rights on voting, distribution or other privileges equal or superior to those of the shares of such class;

(8)   to impose restriction on the transfer or ownership of the shares of such class or increase such restrictions;

(9)   to issue subscription rights or share conversion rights for shares of such class or other classes;

(10) to increase the rights and privileges of shares of other classes;

(11) to restructure the Company where the proposed restructuring scheme will result in different classes of shareholders bearing a disproportionate burden of obligations to such restructuring;

(12) to vary or abrogate the terms provided in this chapter.

**Article 9.4**    Shareholders of the affected class, whether or not having the right to vote at the shareholders' general meeting, shall nevertheless have the right to vote at class meetings on matters referred to in paragraph (2) to (8) and (11) to (12) of Article 9.3 hereof, but interested shareholders shall not be entitled to vote at class meetings.

The interested shareholders mentioned in the preceding paragraph shall have the following meanings:

(1)    in the case of a repurchase of its own shares by the Company by making offers to all shareholders on a same pro rata basis or through public dealing on a stock exchange in accordance with Article 4.4 hereof, "interested shareholder" shall refer to the controlling shareholders as defined in Article 7.6 hereof;

(2)    in the case of a repurchase of its own shares by the Company through an off-market agreement in accordance with the provisions of Article 4.4 hereof, "interested shareholders" shall refer to the shareholders to which the proposed agreement relates;

(3)    in the case of a restructuring of the Company, "interested shareholder" shall refer to a shareholder within a class who bears liabilities less than the proportion burden imposed on other shareholders of that class or who has interests different from those held by shareholders of the same class.

**Article 9.5**    A resolution of the class meeting shall be voted on and passed in accordance with Article 9.4 hereof by shareholders present in the meeting representing not less than two-thirds of voting rights.

**Article 9.6**    Written notice of a class meeting convened by the Company shall be dispatched forty-five (45) days prior to the date of such class meeting to all shareholders of such class whose names appear on the register of members, specifying the matters to be considered and the date and place of such meeting. Shareholders who intend to attend such meeting shall serve on the Company written replies of their intention to attend twenty (20) days prior to the date of such meeting.

If the number of voting shares at such meeting held by shareholders who intend to attend such meeting reaches not less than one-half of the total number of voting shares at such meeting, the Company may hold such class meeting; if this cannot be attained, the Company shall further notify the shareholders by way of announcement within five (5) days thereof specifying the matters to be considered and the date and place of such meeting. After such announcement has been given, the Company may then hold the class meeting.

**Article 9.7**    Notices of a class meeting only need to be delivered to shareholders entitled to vote thereat.

The procedures for holding a class meeting shall be similar to those for holding a shareholders' general meeting as far as possible, and the provisions in the Articles of Association relating to the procedures for a shareholders' general meeting shall apply to a class meeting.

**Article 9.8**     Save for shareholders of shares of other classes, the shareholders of domestic shares and shareholders of overseas listed foreign shares are deemed to be different classes of shareholders.

The special procedures for voting by class shareholders shall not apply in the following circumstances:

(1)   where the Company issues, upon approval by a special resolution at a shareholders' general meeting, domestic shares and overseas listed foreign shares every twelve (12) months, either separately or concurrently, and the respective numbers of domestic shares and overseas listed foreign shares proposed to be issued do not exceed 20% of the respective numbers of the issued and outstanding domestic shares and overseas listed foreign shares;

(2)   where the Company's plan to issue domestic shares and overseas listed foreign shares at the time of its incorporation is carried out within fifteen (15) months from the date of approval by the securities regulatory authorities under the State Council.

### CHAPTER 10 THE BOARD OF DIRECTORS

**Article 10.1**   The Company shall establish a Board which is responsible to and reports on its work to shareholders' general meeting. The Board consists of thirteen (13) Directors. The Board shall comprise one (1) Chairman and twelve (12) Directors, including five (5) independent non-executive Directors.

**Article 10.2**   Directors shall be elected at the shareholders' general meeting. The term of office of the Directors shall be three (3) years, commencing from the date on which his/her election comes into effect. Upon expiration of the current term of office, a Director may serve consecutive terms if re-elected upon the expiration of his/her term of office.

A notice of the intention to propose a candidate for election as a Director and a notice by such candidate stating his/her willingness to be elected shall be given to the Company at least seven (7) days in advance.

The period for the delivery of the aforesaid notices shall commence from the date when a notice of meeting in respect of such election is dispatched and end no later than seven (7) days prior to the date of such meeting.

The Chairman shall be elected and removed by votes of more than one-half of all Directors. The term of office of the Chairman shall be three (3) years. Chairman may serve consecutive terms if re-elected upon the expiration of his/her term of office.

The shareholders' general meeting may by ordinary resolution remove any Director before the expiration of his/her term of office (but without prejudice to such Director's right to claim damages according to any contract), subject to full compliance with the relevant laws and administrative regulations.

The Directors shall not be required to hold shares of the Company.

**Article 10.3**  The Board shall be responsible to the shareholders' general meeting and exercise the following functions and powers:

(1)  to convene shareholders' general meetings and report on its work to the shareholders' general meeting;

(2)  to implement the resolutions of shareholders' general meetings;

(3)  to decide on the Company's operation plans and investment plans;

(4)  to formulate the Company's plans on annual financial budgets and final accounts;

(5)  to formulate the Company's plans for profit distribution (including plans for payment of dividends at the end of year) and making up the losses;

(6)  to formulate the debt and financial policies of the Company, the proposal for increasing or decreasing the registered capital of the Company and issuance of bonds of the Company;

(7)  to formulate plans for substantial acquisition or disposal of the Company and proposals for merger, division and dissolution of the Company;

(8)  to determine the establishment of the Company's internal management structure;

(9)  to appoint or dismiss general managers and, based on the nomination by the general manager, to appoint or dismiss deputy general manager and responsible persons in charge of financial affairs the Company and to determine upon matters concerning their remunerations;

(10) to formulate the basic management system of the Company, including financial and personnel management systems;

(11) to formulate proposals for amendment to the Articles of Association.

Where the Board makes a resolution in respect of the above matters, except for the Board resolutions in respect of the matters specified in paragraphs (6), (7) and (11) of this Article which shall be voted on and passed by not less than two-thirds of the Directors, the Board resolutions in respect of all other matters may be voted on and passed by more than one-half (50%) of the Directors.

**Article 10.4**  In cases where the expected value of fixed assets proposed for disposal by the Board, when aggregated with value of fixed assets disposed within four (4) month before the proposed disposal, exceeds 33% of the fixed assets value shown in the latest balance sheet considered at the shareholders' general meetings, the Board shall not dispose or agree to dispose such fixed assets without prior approval of the shareholders' general meeting.

The disposal of fixed assets referred in this Article includes (among other things) the transfer of certain interests in assets, but does not include the provision of guarantees created over fixed assets.

The validity of transactions regarding disposal of fixed assets by the Company shall not be affected due to a breach of the first paragraph of this Article.

**Article 10.5**    The Chairman shall exercise the following functions and powers:

(1)  to preside over shareholders' general meetings, and to convene and preside over Board meetings;

(2)  to check on the implementation of resolutions of the Board;

(3)  to sign the securities issued by the Company;

(4)  to exercise other functions and powers as conferred by the Board.

In cases where the Chairman is unable to perform his/her functions and powers, the Chairman may designate other Directors to perform such functions and powers on his/her behalf.

**Article 10.6**    Meetings of the Board shall be held at least four times (including two regular meetings) a year, which shall be convened by the Chairman. All of the Directors shall be notified of the meetings fourteen (14) days before the date of such regular meetings.

In case of emergencies, an extraordinary Board meeting may be convened if proposed by more than one-third (including one-third) of the Directors or the general manager of the Company.

**Article 10.7**    Notices of extraordinary Board meetings should be delivered by hand, post, facsimile or email, or by phone, provided that a written confirmation is received afterward from the person being notified.

Time limit for such notices: five (5) days prior to the date of the meeting.

**Article 10.8**    The Board meetings may not be held unless not less than one-half of all Directors are present.

Each Director shall have a vote. Any resolution of the Board shall be adopted by the affirmative votes of more than one-half of all Directors.

In case of a tie vote, the Chairman shall have a second vote.

**Article 10.9**  Board meetings shall be attended by the Directors in person. If they are not able to attend the meeting due to certain reasons, they may authorize other Directors in writing to attend the meeting on their behalf. A power of attorney shall indicate the scope of authorization.

The appointed Director attending the meeting shall exercise the rights of a Director within the scope of authorization. If a Director does not attend a meeting of the Board in person, and does not authorize any representatives to attend the meeting for him/her, he/she shall be deemed to have waived the voting right in such meeting.

**Article 10.10**  The Board shall keep minutes of resolutions on matters discussed at meetings. The minutes of a meeting shall be signed by the Directors present at the meeting and the person who recorded the minutes. The Directors shall be liable for the resolutions of the Board. If a resolution of the Board violates the laws, administrative regulations or the Articles of Association and thus causes serious losses to the Company, then the Directors participating in the adoption of such a resolution shall be liable for compensation to the Company. However, if a Director is proved to have expressly objected to such a resolution when it was put to a vote, and such objection is recorded in the minutes of that meeting, such Director may be released from such liability.

**Article 10.11**  In addition to the on-site meetings, meetings of the Board may be held by telephone or with similar communication equipment, so as to meet the needs of each director for immediate and sufficient communication. When holding such meetings, all the directors attending the meeting shall be viewed as attending in person as long as they can clearly hear and communicate with each other. Except for the meeting stipulated in Paragraph 1 of article 10.6, the Board may adopt a resolution in writing instead of holding a Board meeting, but the draft of such resolution shall be sent to each of the Directors by one of following means: by hand, by post, by facsimile or by email. If the relevant written resolution has been distributed to all Directors, and the number of Directors having signed on one or several copies of the draft (in the same form and content) indicating his/her consent reaches the necessary quorum to pass the resolution, such resolutions shall become a resolution passed by the Board upon the same having been sent to the Secretary of the Board in any of the aforesaid means and no Board meeting shall be further required to be held.

**Article 10.12**  Where a Director or any of his/her associates (as defined in the Listing Rules) has interest in any resolution proposed at a Board meeting, such Director shall not be present and shall not have right to vote on such resolution. Such Director shall not be counted in the quorum of the relevant meeting.

## CHAPTER 11 INDEPENDENT DIRECTORS

**Article 11.1**  The Company adopts the Independent Director system. An Independent Director shall exercise his/her functions and powers and perform his/her responsibilities in accordance with the relevant laws, administrative regulations, the Articles of Association and the Rules of Procedure for Board Meetings.

**Article 11.2**  Independent Directors shall be independent of the Company and its shareholders, and shall not hold any other positions in the Company other than being an Independent Director.

Independent Directors may report directly to the shareholders' general meeting, securities regulatory authority under the State Council and other relevant authorities.

**Article 11.3**  The Independent Directors have the obligation to act in good faith and diligently for the Company and its all shareholders. An Independent Director shall perform his/her responsibilities conscientiously in accordance with the requirements of relevant laws, administrative regulations and the Articles of Association of the Company to protect the interests of the Company as a whole, especially the legal interests of minority shareholders. An Independent Director shall perform his/her responsibilities independently and not be affected by the Company's substantial shareholders, de facto controller or other entities or individuals who are interested in the listed companies.

**Article 11.4**  In order to ensure the effective performance of their responsibilities by the Independent Directors, the Company shall facilitate the Independent Directors with the following:

(1) The Company shall ensure Independent Directors have the same right of access to information as its other Directors. For any matter that is subject to Board decision, the Company shall serve notice on Independent Directors in advance within the legally prescribed period of time and provide sufficient information to them. If Independent Directors are of the view that the information provided is insufficient, they may request for supplementary information. When two Independent Directors consider the information provided as insufficient or inadequately explained, they may jointly propose to the Board in writing for a postponement of the Board meeting or for a postponement of review and discussion of the matters concerned. Such proposal shall be adopted by the Board. Information provided by the Company to Independent Directors shall be kept by the Company and the Independent Directors respectively for at least five (5) years;

(2) The Company shall provide necessary working conditions to Independent Directors for the performance of their responsibilities. The Secretary to the Board shall actively offer assistance to Independent Directors to facilitate their work, such as providing background information and materials. Where independent opinions, proposals and written statements made by Independent Directors shall be announced, the Secretary of the Board shall make timely arrangement with relevant stock exchange for such announcement;

(3) In the exercise of functions and powers by the Independent Directors, relevant personnel of the Company shall offer active cooperation, shall not reject, hinder or conceal, or interfere with their exercise of functions and powers independently;

(4) The Company shall offer appropriate allowances to Independent Directors. The rate of such allowances shall be proposed by the Board for consideration and approval by shareholders' meetings, and disclosed in the Company's annual report.

Apart from the above mentioned allowances, the Independent Directors shall obtain no other additional and undisclosed interests from the Company, its substantial shareholders or any interested institutions and individuals.

**Article 11.5**    Except otherwise specified in the Articles of Association, the provisions of Chapter 16 hereof in relation to Directors apply to Independent Directors.

## CHAPTER 12 SECRETARY OF THE BOARD OF THE COMPANY

**Article 12.1**    The Company shall have one Secretary of the Board, who is a senior management member of the Company.

The Board may establish its secretarial department if necessary.

**Article 12.2**    Secretary of the Board of the Company shall be a natural person with requisite professional knowledge and experience, and shall be appointed by the Board. His/her primary responsibilities are:

(1)   to ensure that the Company has complete organizational documents and records;

(2)   to ensure that the Company prepares and delivers the reports and documents required by competent authorities in accordance with the laws;

(3)   to ensure that the Company's registers of shareholders are properly maintained, and that persons entitled to access to relevant records and documents are furnished with such records and documents without delay.

**Article 12.3**    Directors or other senior management members may also act as the Secretary of the Board. The accountant(s) of the certified public accountants appointed by the Company shall not act as the Secretary of the Board.

Where the office of the Secretary of the Board is held concurrently by a Director, if an act is required to be made by a Director and the Secretary of the Board separately, the person who concurrently holds the offices of Director and Secretary of the Board shall not make such act in dual capacity.

## CHAPTER 13 SPECIAL COMMITTEES OF THE BOARD

**Article 13.1**   Where necessary, the Board may establish special committees of strategic-decision, audit, remuneration and performance appraisal, nomination etc. The Board shall seek the opinion of the special committees before making any resolutions.

**Article 13.2**   Members of each special committee under the Board shall only be Directors and be elected by the Board.

**Article 13.3**   Each special committee shall have one (1) convener who shall be responsible for convening the meetings of the special committee. The composition, responsibility and operational system of each special committee shall be determined by the Board and shall be in compliance with the laws and regulations of the PRC and the place where the shares of the Company are listed, as well as the relevant requirements of the Hong Kong Stock Exchange.

## CHAPTER 14 GENERAL MANAGER AND OTHER SENIOR MANAGEMENT MEMBERS OF THE COMPANY

**Article 14.1**   The Company shall have one (1) general manager (i.e. the president) who shall be appointed and dismissed by the Board.

**Article 14.2**   The Company shall have several deputy general managers (i.e. the deputy presidents) and one (1) person who is charge of financial affairs (i.e. chief financial officer) who shall assist the general manager in his work. They are all senior management members.

Deputy general managers and chief financial officer shall be nominated by the general manager, and shall be appointed or dismissed by the Board.

**Article 14.3**   The general manager of the Company shall be responsible to the Board and exercise the following functions and powers:

(1)   to be in charge of the Company's production, operation and management, and to organize resources to carry out the Board's resolutions;

(2)   to organize the implementation of the Company's annual business plans and investment plans;

(3)   to draft plans for the establishment of the Company's internal management structure;

(4)   to draft plans for the establishment of branches of the Company;

(5)   to draft the Company's basic management system;

(6)   to formulate the basic rules and regulations of Company;

(7)   to propose the appointment or dismissal of the Company's deputy manager(s) and chief financial officer;

(8)   to appoint or dismiss management personnel other than those who shall be appointed or dismissed by the Board;

(9)   to exercise other functions and powers conferred by the Articles of Association and the Board.

**Article 14.4**   The general manager of the Company shall attend Board meetings and be entitled to receive notices of meetings and other relevant documents. The general manager who is not a Director shall not have any voting rights at Board meetings.

**Article 14.5**   The general manager, in exercising his/her functions and powers, shall act honestly and diligently in accordance with the laws, administrative regulations and the Articles of Association.

## CHAPTER 15 SUPERVISORY COMMITTEE

**Article 15.1**    The Company shall establish a supervisory committee.

**Article 15.2**    The supervisory committee shall be composed of six (6) supervisors. One of its members shall act as the chairman of the committee. The term of office of a supervisor shall be three years. A supervisor may serve consecutive terms if re-elected upon the expiration of his/her term of office.

The appointment and dismissal of the chairman of the supervisory committee shall be voted on and passed by not less than two-thirds of its members.

**Article 15.3**    The supervisory committee shall comprise of two shareholder representatives, two independent supervisors and two staff representatives. Shareholder representatives and independent supervisors shall be elected or replaced by the shareholders' general meeting, while staff representatives shall be elected or replaced by the staff.

**Article 15.4**    The Directors, general manager and chief financial officer of the Company shall not hold the position of supervisors.

**Article 15.5**    Meetings of the supervisory committee shall be held at least twice a year, and convened by the chairman of the supervisory committee. Notices of the meetings shall be served on all of the supervisors ten (10) days before the date of the meeting. In case of emergencies, an extraordinary meeting of the supervisory committee may be convened if proposed by more than one-third (including one-third) of supervisors. Such meeting shall not be subject to the following requirements to the notices of supervisory committee.

In principle, meetings of the supervisory committee shall be held at the Company's legal residence. However, it can be held at any other places in the PRC as approved by a resolution of the meeting of supervisory committee.

Notices of the meetings of the supervisory committee shall be served in the following manner:

(1) Where the time and place of regular meetings of the Supervisory Committee have been specified by the supervisory committee in advance, no notice shall be served;

(2) Except otherwise provided in paragraph (1) of this article, where the time and place of the meeting of the Supervisory Committee have not been specified by the supervisory committee in advance, notices of the meetings of the supervisory committee specifying the time and place of such meetings shall be given by the chairman to the supervisors by telex, cable, facsimile, courier, registered mail or by hand at least ten (10) days (but not more than thirty (30) days) before the date of such meeting;

(3) The notices shall be made in Chinese and, if necessary, an English version of the same shall be enclosed therein and the notices shall include agenda of relevant meetings. Any supervisor may waive the right to receive notices of the meetings of the supervisory committee.

A supervisor shall be deemed to have received the notice of meeting if he/she is present at the meeting and does not raise the issue of the non-receipt of such notice prior to or at the time of his/her arrival at the meeting.

**Article 15.6** The supervisory committee shall be responsible to the shareholders' general meeting and exercise the following functions and powers in accordance with the laws:

(1) to examine the Company's financial affairs;

(2) to supervise the acts of Directors, the general manager and other senior management members with regard to violation of laws, administrative regulations and the Articles of Association during the performance of their responsibilities;

(3) to demand rectification from a Director, the general manager and any other senior management members when the acts of such persons are harmful to the Company's interest;

(4)   to examine the financial information such as the financial report, business report and plans for distribution of profits to be submitted by the Board to the shareholders' general meetings and, should any queries arise, to engage, in the name of the Company, certified public accountants and practicing auditors to conduct a re-audit;

(5)   to propose the convening of an extraordinary general meeting;

(6)   to deal with or take legal actions against Directors on behalf of the Company;

(7)   to exercise other functions and powers specified herein.

The supervisory committee may express its opinion on the appointment of a certified public accountants by the Company. It may appoint a different certified public accountants if necessary on behalf of the Company to examine the financial position of the Company independently, and may directly report to the securities regulatory authority under the State Council and other relevant authorities.

The external supervisors shall report independently to the shareholders' general meeting the performance of the senior management members of the Company in relation to their integrity and diligence.

Supervisors shall attend the Board meeting.

**Article 15.7**   The meetings of the supervisory committee shall be attended by the supervisors in person. If they are not able to attend the meeting due to certain reasons, they may authorize other supervisors in writing to attend the meeting on their behalf. The power of attorney shall indicate the scope of authorization.

The authorized supervisor attending the meeting shall exercise the rights of a supervisor within the scope of authorization. If a supervisor does not attend a meeting of the supervisory committee in person, and does not authorize any representatives to attend the meeting on his/her behalf, he/she shall be deemed to have waived the voting right in such meeting.

Resolutions of the supervisory committee shall be voted on and passed by not less than two-thirds of its members.

**Article 15.8**  All reasonable expenses incurred in respect of the employment of professionals such as lawyers, certified public accountants or practicing auditors by the supervisory committee in exercising its functions and powers shall be borne by the Company.

**Article 15.9**  A supervisor shall carry out his/her responsibilities honestly and faithfully in accordance with the laws, administrative regulations and the Articles of Association.

## CHAPTER 16 QUALIFICATIONS AND OBLIGATIONS OF THE DIRECTORS, SUPERVISORS , GENERAL MANAGER AND OTHER SENIOR MANAGEMENT MEMBERS OF THE COMPANY

**Article 16.1**  A person may not serve as a Director, supervisor, general manager or any other senior management member of the Company if any of the following circumstances applies:

(1)  a person without civil capacity or with restricted legal capacity;

(2)  a person who has committed an offence of corruption, bribery, infringement of property, misappropriation of property or sabotaging the social economic order or has been punished because of committing such offence; or who has been deprived of his/her political rights, in each case where less than five (5) years have elapsed since the date of the completion of implementation of such punishment or deprivation;

(3)  a person who is a former director, factory manager or general manager of a company or enterprise which has entered into insolvent liquidation because of mismanagement and he/she is personally liable for the insolvency of such company or enterprise, where less than three (3) years have elapsed since the date of the completion of the insolvency and liquidation of the company or enterprise;

(4)   a person who is a former legal representative of a company or enterprise which had its business licence revoked due to a violation of the law and who incurred personal liability, where less than three (3) years has elapsed since the date of the revocation of the business license;

(5)   a person who has a relatively large amount of debts due and outstanding;

(6)   a person who is under criminal investigation by a judicial organization for violation of the criminal law where said investigation is not yet concluded;

(7)   a person who is not eligible for being enterprise leader according to laws and administrative regulations;

(8)   a non-natural person;

(9)   a person convicted of the contravention of provisions of relevant securities regulations by a relevant competent authority, and such conviction involves a finding that he has acted fraudulently or dishonestly, where less than five (5) years has elapsed since the date of such conviction.

**Article 16.2**   The validity of an act of a Director, general manager or any other senior management member on behalf of the Company is not, vis-a-vis a bona fide third party, affected by any non-compliance in his/her office, election or any defect in his qualification.

**Article 16.3**   In addition to obligations imposed by laws, administrative regulations or required by listing rules of the stock exchanges on which the Company's shares are listed, each of the Company's Directors, supervisors, general manager and other senior management members shall have the following obligations to each shareholder, in the exercise of the functions and powers of the Company entrusted to him/her:

(1)  not to cause the Company to exceed the business scope stipulated in its business licence;

(2)  to act honestly and in good faith in the best interest of the Company;

(3)  not to expropriate in any way the Company's property, including (without limitation) usurpation of opportunities advantageous to the Company;

(4)  not to expropriate the individual rights of shareholders, including (without limitation) rights to distribution and voting rights, except for a restructuring of the Company submitted to shareholders' general meeting for approval in accordance with the Articles of Association.

**Article 16.4**  Each of the Company's Directors, supervisors, general manager and other senior management members shall have obligations, in the exercise of his/her rights and performance of his/her obligations, to exercise the care, diligence and skill that a reasonably prudent person would exercise in comparable circumstances.

**Article 16.5**  Each of the Company's Directors, supervisors, general manager and other senior management members shall perform his/her responsibilities in accordance with the principle of integrity and shall not put himself/herself in a position where his/her obligations and his/her interest may conflict. This principle includes (without limitation) performing the following obligations:

(1)  to act honestly and in good faith in the best interests of the Company;

(2)  to exercise powers within the scope of his/her functions and powers and not to exceed such scope;

(3)  to exercise the discretion vested in him/her personally and not to allow himself/herself to act under the control of another and, unless and to the extent permitted by laws, administrative regulations or with the informed consent of shareholders given in a general meeting, not to delegate the exercise of his/her discretion;

(4)  to treat shareholders of the same class equally and to treat shareholders of different classes fairly;

(5)   except in accordance with the Articles of Association or with the informed consent of shareholders given in general meeting, not to enter into any contract, transaction or arrangement with the Company;

(6)   without the informed consent of shareholders given in general meeting, not to use the Company's property for his/her own benefit by any means;

(7)   not to exploit his/her position to accept bribes or other illegal income or expropriate the Company's property by any means, including (without limitation) opportunities advantageous to the Company;

(8)   without the informed consent of shareholders given in general meeting, not to accept commissions in connection with the Company's transactions;

(9)   to abide by the Articles of Association, faithfully execute his/her official responsibilities and protect the Company's interests, and not to exploit his/her position and power in the Company to advance his/her own private interests;

(10)  not to compete with the Company in any form unless with the informed consent of shareholders given in general meeting;

(11)  not to misappropriate the Company's funds or lend Company's fund to others, not to open accounts in his/her own name or other names for the deposit of the Company's assets and not to provide a guarantee for debts of the shareholder(s) of the Company or other individual(s) over the Company's assets;

(12)  unless otherwise permitted by informed shareholders in general meeting, to keep in confidence information relating to the Company acquired by him/her in the course of and during his/her tenure and not to use such information in purposes other than in furtherance of the interests of the Company, save that disclosure of such information to the court or other governmental authorities is permitted if:

     (i)   disclosure is made according to the law;

(ii)  disclosure required by the interests of the public;

(iii) disclosure required by the interests of the relevant Director, supervisor, general manager or other senior management member.

**Article 16.6**   Director, supervisor, general manager or other senior management member of the Company shall not procure the following persons or institutions ("associates") to do what he/she is prohibited from doing:

(1)  the spouse or minor child of that Director, supervisor, general manager and other senior management member;

(2)  a person acting in the capacity of trustee of that Director, supervisor, general manager or other senior management member or any person referred to in paragraph (1) of this Article;

(3)  a person acting in the capacity of partner of that Director, supervisor, general manager or other senior management member or any person referred to in paragraphs (1) and (2) of this Article;

(4)  a company in which that Director, supervisor, general manager or other senior management member, alone or jointly with one or more persons referred to in paragraphs (1), (2) and (3) above or other Directors, supervisors, general manager and other senior management members of the Company have a de facto controlling interest;

(5)  the Directors, supervisors, general manager and other senior management members of the controlled company referred to in paragraph (4) above of this Article.

**Article 16.7**   The integrity obligations of the Directors, supervisors, general manager and other senior management members of the Company do not necessarily cease with the termination of their tenure. The obligation of confidence in relation to trade secrets of the Company survives the termination of their tenure. Other obligations may continue for such period as fairness may require depending on the time lapse between the termination of tenure and the occurrence of the event concerned and the circumstances under which the relationships between them and the Company are terminated.

**Article 16.8**   Except for circumstances prescribed in Article 7.5 hereof, a Director, supervisor, general manager and other senior management member of the Company may be relieved of liability for specific breaches of his/her obligations by the informed consent of shareholders given at a general meeting.

**Article 16.9**   Where a Director, supervisor, general manager and other senior management member of the Company is in any way, directly or indirectly, materially interested in a contract, transaction or arrangement or proposed contract, transaction or arrangement with the Company, (other than his contract of service with the Company), he shall disclose the nature and extent of his interests to the Board as soon as possible, whether or not the contract, transaction or arrangement or proposal is normally subject to the approval of the Board.

A Director shall not vote on the resolution matters of the Board in relation to any Contract, transaction, arrangement or proposal in which he or any of his associates (as defined in the Listing Rules) is materially interested, and shall not be included In the quorum of the meeting, unless otherwise permitted by the Listing Rules or the Stock Exchange.

Unless the interested Director, supervisor, general manager or other senior management member has disclosed his interests in accordance with the preceding paragraph of this Article and the matter has been approved by the Board at a meeting in which the interested Director, supervisor, general Manager or other senior management member has not been counted in the quorum and refrained from voting, the Company may rescind that contract, transaction or arrangement except as against a bona fide Party thereto acting without notice of the breach of duty by the interested Director, general manager or other senior management member.

A Director, supervisor, general manager or other senior management member of the Company is deemed to be interested in a contract, transaction or arrangement in which an associate (as defined in the Listing Rules) of him is interested.

**Article 16.10** If a Director, supervisor, general manager or other senior management member of the Company, before the company considers entering to the relevant contract, transaction or arrangement at the first time, gives to the Board a general notice in writing stating that, by reason of the facts specified in the notice, he is interested in contracts, transactions or arrangements of any description which may subsequently be made by the Company, such notice shall be deemed for the purposes of the preceding paragraph of this Article to have made a disclosure under the preceding Articles to the extent of the matters set out in that notice.

**Article 16.11** The Company shall not in any manner pay taxes for or on behalf of its Directors, supervisors, general manager or other senior members.

**Article 16.12** The Company shall not directly or indirectly make a loan to, or provide any guarantee in connection with, the making of a loan to a Director, supervisor, general manager or other senior management member of the Company or of the Company's parent company or any of their respective associates.

However, the following transactions are not subject to such prohibition:

(1)   the provision by the Company of a loan or a guarantee for a loan to a company which is a subsidiary of the Company;

(2)   the provision by the Company of a loan or a guarantee in connection with the making of a loan or any other funds to any of its Directors, supervisors, general manager or other senior management members to meet expenditure incurred or to be incurred by him for the purposes of the Company or for the purpose of enabling him to perform his duties properly, in accordance with the terms of a service contract approved by the shareholders in general meeting; and

(3)   The Company may make a loan or provide a guarantee in connection with the making of a loan to any of the relevant Directors, Supervisors, general manager or other senior management members or their respective associates in the ordinary course of its business on normal commercial terms, provided that the ordinary course of business of the Company includes the lending of money or the giving of guarantees.

**Article 16.13** A loan made by the Company in breach of the above provisions shall be forthwith repayable immediately by the recipient of the loan regardless of the terms of the loan.

**Article 16.14** A loan guarantee provided by the Company in breach of the first paragraph of Article 16.12 shall be unenforceable against the Company, except the followings:

(1)   lender did not know the relevant circumstances at the time the loan was advanced to an associate of any of the Directors, supervisors, general manager and other senior management members of the Company or of the Company's parent company ; or

(2)   the security provided by the Company has been lawfully disposed of by the lender to a bona fide purchaser.

**Article 16.15** For the purposes of the foregoing provisions of this Chapter, a "guarantee" includes an undertaking of obligations or the provision of the security over the property by the guarantor to secure the performance of obligations of the obligor.

**Article 16.16** In addition to any rights and remedies provided by the laws and administrative regulations, where a Director, supervisor, general manager and other senior management members of the Company is in breach of his duties to the Company, the Company has a right to:

(1)   claim damages from the relevant Director, supervisor, general manager and other senior management members in compensation for losses sustained by the Company as a result of such breach;

(2)   rescind any contract or transaction entered into by the Company with the relevant Director, supervisor, general manager and other senior management members or with a third party (where such third party knows or should know that there is such a breach of duties by such Director, supervisor, general manager and other senior management members);

(3) demand the relevant Director, supervisor, general manager and other senior management members to surrender the profits made by him in breach of his duties;

(4) recover any monies received by the relevant Director, supervisor, general manager and other senior management members which should have been otherwise received by the Company, including (without limitation) commissions; and

(5) demand payment of the interest earned or which may have been earned by the relevant Director, supervisor, general manager and other senior management members on the monies that should have been paid to the Company.

**Article 16.17** The Company shall, with the prior approval of shareholders in general meeting, enter into a contract in writing with a Director or supervisor wherein his emoluments are stipulated, including;

(1) emoluments in respect of his service as Director, supervisor or senior management member of the Company;

(2) emoluments in respect of his service as Director, supervisor or senior management member of any subsidiary of the Company;

(3) emoluments in respect of the provision of other services in connection with the management of the affairs of the Company or any of its subsidiaries; and

(4) compensation for loss of office, or as consideration for or in connection with his retirement from office.

Except under a contract entered into in accordance with the foregoing, no proceedings may be brought by a Director or supervisor against the Company for any benefits in respect of the matters mentioned above.

**Article 16.18**  The contract for emoluments entered into between the Company and its Directors or supervisors should provide that in the event of a takeover of the Company, the Company's Directors and supervisors shall, subject to the prior approval of the shareholders in general meeting, have the right to receive compensation or other payment for loss of office or retirement.

A takeover of the Company as referred to above means:

(1)  a takeover offer made by any person to all shareholders of the Company; or

(2)  a takeover offer made by any person with a view to the offer or to become a controlling shareholder within the meaning of Article 7.6.

If the relevant Director or supervisor does not comply with this Article, any sum so received by him shall belong to those persons who have sold their shares as a result of the said offer made. The expenses incurred in making a pro rata distribution of such monies shall be borne by the relevant Director or supervisor and shall not be paid out of that sum.

## CHAPTER 17 FINANCIAL AND ACCOUNTING SYSTEM AND PROFIT DISTRIBUTION

**Article 17.1**  The Company shall establish its financial and accounting system in accordance with the laws, administrative regulations and PRC accounting standards formulated by the finance regulatory department of the State Council.

**Article 17.2**  At the end of each fiscal year, the Company shall prepare a financial report which shall be audited and validated in compliance with the laws.

**Article 17.3**  The fiscal year of the Company shall coincide with the Gregorian calendar year, i.e. from January 1 to December 31 on the Gregorian calendar. The Company's accounts shall be prepared in Chinese with RMB as the reporting currency.

**Article 17.4**    The Board shall place before the shareholders at every annual general meeting a financial report prepared by the Company as are required by relevant laws, administrative regulations or normative documents promulgated by competent regional government and regulatory authorities.

**Article 17.5**    The Company's financial reports shall be made available for shareholders' inspection at the Company twenty (20) days before the date of annual shareholders' general meeting. Each shareholder shall be entitled to obtain a copy of the financial reports referred to in this Chapter.

The Company shall at least send to each shareholder of overseas listed foreign shares by prepaid mail the abovementioned reports not later than twenty-one (21) days before the date of annual shareholders' general meeting, or send or deliver by other means as stipulated in Article 26.1 herein provided that the laws and regulations of the place where the Company's shares are listed and the relevant rules of the Hong Kong Stock Exchange are complied with.

**Article 17.6**    The financial statements of the Company shall, in addition to being prepared in accordance with PRC accounting standards and regulations, be prepared in accordance with either international accounting standards or that of the overseas place where the Company's shares are listed. If there is any material difference between the financial statements prepared respectively in accordance with the two accounting standards, such difference shall be specified in the notes to the financial statements. When the Company is to distribute its after-tax profits in respective of the relevant financial year, the lower amount of the after-tax profits as shown in the two financial statements shall be adopted.

**Article 17.7**    The interim results or financial information published or disclosed by the Company must also be prepared and presented in accordance with PRC accounting standards and regulations, and also in accordance with either international accounting standards or that of the overseas place where the Company's shares are listed.

**Article 17.8**  The Company shall publish its financial reports twice in every fiscal year, that is, the interim financial report shall be published within sixty (60) days after the end of the first six (6) months of each fiscal year and the annual financial report shall be published within one hundred and twenty (120) days after the end of each fiscal year.

**Article 17.9**  The Company shall not keep books of accounts other than those provided by law.

**Article 17.10**  The interim reports and annual reports of the Company shall, when completed, proceed with formalities and be disclosed pursuant to the relevant PRC securities laws, regulations and regulations of the stock exchange(s) where the Company's shares are listed.

**Article 17.11**  The profits of the Company after making allowances for taxes and levies shall be allocated in the following order:

(1)  making up for losses;

(2)  allocation to statutory common reserve fund;

(3)  allocation to discretionary common reserve fund;

(4)  payment of dividends in respect of ordinary shares.

The detailed distribution proportions in respect of paragraph (3) to (4) above for any year shall be formulated by the Board in accordance with the operational conditions and development need of the Company and subject to the approval of the shareholders' general meeting.

**Article 17.12**  The Company shall allocate 10% of its after-tax profit for the Company's statutory common reserve fund. When the aggregate balance in the statutory common reserve fund has reached 50% or more of the Company's registered capital, the Company need not make any further allocations to that fund.

**Article 17.13**  Allocation to the discretionary common reserve fund shall be made separately from the profit of the Company after the allocation to statutory common reserve fund is made, in accordance with the resolution of the shareholders' general meeting.

**Article 17.14** The Company shall not distribute dividends or proceed with other distributions in the form of bonus dividends before offsetting the Company's losses and making allocation to the statutory common reserve fund. No dividends of the Company shall bear interest unless the Company fails to pay the relevant dividends to the shareholders on the dividend payment date.

The payment made for any shares prior to the making of calls for payment for the subscribed shares are entitled to receive interest but shareholders shall not be entitled to claim dividends in respect of their advance payments for shares.

**Article 17.15** Capital reserve fund includes the following items:

(1)   premium received when shares are issued at a premium to their par value;

(2)   other income required to be included in the capital reserve fund by the finance regulatory department of the State Council.

**Article 17.16** The common reserve funds of the Company can only be used for the following purposes:

(1)   making up losses, however, the capital reserve fund shall not be applied to make up losses of the Company;

(2)   expansion of the Company's production and operation;

(3)   be converted into increase the capital of the Company. The Company may, in accordance with relevant regulations, convert its common reserve fund into capital upon a resolution adopted in shareholders' general meeting and issue new shares or increase the par value of each share to existing shareholders in proportion to their original shareholdings, provided, however, that when the statutory common reserve fund is converted into capital, the balance of such reserve fund shall not fall below 25% of the Company's registered capital.

**Article 17.17** Subject to Article 17.11, 17.12 and 17.14, annual dividends shall be distributed in proportion to the shareholdings of the shareholders within six (6) months after the end of each fiscal year.

**Article 17.18** The Company may distribute dividends in the following manner:

(1)  in cash; or

(2)  by shares.

**Article 17.19** Cash dividends or other payments payable by the Company to holders of its domestic shares shall be paid in RMB, and those payable to holders of overseas listed foreign shares shall be declared and calculated in RMB and paid in accordance with the relevant foreign exchange regulations of the State.

**Article 17.20** Unless otherwise stipulated by relevant laws and administrative regulations, when cash dividends and other payments are paid in Hong Kong dollars, the exchange rate shall be equal to the average of the People's Bank of China's closing rate of exchange on each day of the week immediately preceding the date of declaration of payment of such dividends and other payments.

**Article 17.21** When distributing dividends to its shareholders, the Company shall, in accordance with the tax law of the PRC, withhold and pay on behalf of shareholders the tax payable on their dividend income.

**Article 17.22** Upon being authorized by the shareholders' general meeting and in compliance with the Article 8.2 and paragraph (16) of Article 10.3 herein, the Board may resolve to distribute an interim or special dividend.

**Article 17.23** The Company shall appoint receiving agents on behalf of the holders of overseas listed foreign shares to receive on behalf of such shareholders dividends declared and all other monies owing by the Company in respect of such shares.

The receiving agents appointed by the Company shall satisfy the relevant requirements of the laws of the place or relevant regulations of the stock exchange where the Company's shares are listed.

The receiving agents appointed on behalf of holders of overseas listed foreign shares listed on the Hong Kong Stock Exchange shall be a trust company registered under the Trustee Ordinance of Hong Kong.

**Article 17.24** In relation to the receipt of dividends by shareholders, the Company is entitled to forfeit unclaimed dividends, provided that such power shall not exercised within six (6) years from the date of declaration of the dividends.

**Article 17.25** The Company may send dividend warrants to its shareholders, either directly or by mail through receiving agents. If the said dividend warrants are not cashed, the Company shall have the right to stop sending dividend warrants either directly or by mail through collecting agents, but the said right shall not be exercised unless such dividend warrants are not cashed for two consecutive occasions. However, where the said dividend warrants are returned upon failure of delivery to the recipients for the first time, the Company may also exercise such right.

**Article 17.26** The Company has the right to sell, as permitted by the laws, any shares of a shareholder who is untraceable in any of the following circumstances:

(1) dividends have been declared the relevant shares for at least 3 times in respect of such shares within twelve (12) years, but none of such dividends was claimed; and

(2) the Company, after the expiration of a period of twelve (12) years, has made the advertisements on the newspaper(s) stating its intention to sell such shares, and has notified the Hong Kong Stock Exchange of such intention.

## CHAPTER 18 APPOINTMENT OF ACCOUNTANTS' FIRM

**Article 18.1**   The Company shall appoint an independent accountants' firm which is qualified under the relevant regulations of the State to audit the Company's annual financial statements and review the Company's other financial reports.

The first accountants' firm of the Company may be appointed by the inaugural meeting of the Company before the first annual general meeting of shareholders and the accountants' firm so appointed shall hold office until the conclusion of the first annual general meeting.

If the inaugural meeting fails to exercise its aforesaid powers, those powers shall be exercised by the Board.

**Article 18.2**   The term of appointment of an accountants' firm appointed by the Company shall commence from the conclusion of the annual general meeting of shareholders at which the appointment is made until the conclusion of the next annual meeting of shareholders.

**Article 18.3**   The accountants' firm appointed by the Company shall have the following rights:

(1)   to inspect at any time the books, records or vouchers of the Company, and to require the Directors, general manager and other senior management members of the Company to provide any relevant information and explanation thereof;

(2)   to require the Company to take all reasonable steps to obtain from its subsidiaries such information and explanation as are necessary for the performance of duties of such accountants' firm;

(3)   to attend shareholders' general meetings and to receive all notices of, and other communications relating to, any shareholders' general meeting which any shareholder is entitled to receive, and to speak at any shareholders' general meeting in relation to matters concerning its role as the accountants' firm of the Company.

**Article 18.4**   If a casual vacancy arises in the office of the accountants' firm, the Board may, prior to the holding of a shareholders' general meeting appoint an accountants' firm to fill the vacancy, but if during the continuation of any such casual vacancy the Company has another accountants' firm in office, that accountants' firm may continue to act.

**Article 18.5**   The shareholders in general meeting may, by ordinary resolution, remove an accountants' firm before the expiration of its term of office, notwithstanding the stipulations in the contract between the Company and the firm, but without prejudice to the firm's right to claim, if any, for compensation arising from such removal.

**Article 18.6**   The remuneration of an accountants' firm or the manner in which such firm is to be remunerated shall be determined by the shareholders in general meeting. The remuneration of an accountants' firm appointed by the Board shall be determined by the Board.

**Article 18.7**   The Company's appointment of, removal of and non-reappointment of an accountants' firm shall be resolved by shareholders in general meeting. The resolution of the shareholders' general meeting shall be filed with the State Council's securities regulatory authority.

**Article 18.8**   Where it is proposed that any resolution be passed at a shareholders' general meeting concerning the appointment of an accountants' firm, which is not an incumbent firm, to replace an existing accountants' firm or to fill a casual vacancy in the office of the accountants' firm, or to reappoint a retiring accountants' firm which was appointed by the Board to fill a casual vacancy, or to remove the accountants' firm before the expiration of its term of office, the following provisions shall apply:

(1)   about the proposed resolution for appointment or removal shall be sent to the firm proposed to be appointed or proposing to leave office or the firm which has left office in the relevant fiscal year (leaving includes leaving by removal, resignation and retirement) before notice of meeting is given to the shareholders.

(2)  If the accountants' firm leaving office makes representations in writing and requests the Company to notify the shareholders of such representations, the Company shall implement the following measures (unless the representations are received too late):

(i)   in any notice given to shareholders about a resolution to be made, state the representations that have been made by the accountants' firm which is about to leave; and

(ii)  attach a copy of the representations to the notice and deliver it to the shareholders in the manner stipulated in the Articles of Association.

(3)  If the firm's representations are not dispatched by the Company in accordance with paragraph (2) above, the relevant firm may require that such representations be read out at the shareholders' general meeting and may lodge further complaints.

(4)  An accountants' firm which is leaving office shall be entitled to attend:

(i)   the shareholders' general meeting relating to the expiry of its term of office;

(ii)  the shareholders' general meeting at which it is proposed to fill the vacancy arising from its removal; and

(iii) the shareholders' general meeting convened on its resignation;

An accountants' firm which is leaving office shall be entitled to receive all notices of, and other communications relating to, any such meetings, and to speak at any such meeting in relation to matters concerning its role as the former accountants' firm of the Company.

— 71 —

**Article 18.9**   Prior to the removal or the non-renewal of the appointment of an accountants' firm of the Company, notice of such removal or non-renewal shall be given to the accountants' firm concerned and such firm shall be entitled to present its views at the shareholders' general meeting. Where the accountants' firm tendering resignation shall inform the shareholders' general meeting as to whether there has been any impropriety on the part of the Company.

**Article 18.10**   An accountants' firm may resign from its office by depositing at the Company's legal residence a resignation notice which shall become effective on the date of such deposit or on such later date as may be stipulated in such notice. Such notice shall include either of the following:

(1)   a statement to the effect that there are no circumstances connected with its resignation which it considers should be brought to the notice of the shareholders or creditors of the Company; or

(2)   a statement of any matters of which an account should be given.

The Company shall within fourteen (14) days upon its receipt of the written notice mentioned above send a copy of the notice to the supervisory authority. If the notice contains a statement referred to in subparagraph (2) above, a copy of such statement shall be placed at the Company for shareholders' inspection. The Company shall also send a copy of such statement to every holder of overseas listed foreign shares by other appropriate means specified in Article 26.1 of these Articles of Association. If such statement is sent by prepaid post, it shall be sent to the addresses recorded in the register of shareholders.

Where the notice of resignation of an accountants' firm contains a statement of any matters of which an account should be given, the accountants' firm may require the Board to convene a shareholders' extraordinary general meeting for the purpose of giving an explanation of the circumstances connected with its resignation.

## CHAPTER 19 INSURANCE

**Article 19.1** The Company's various types of insurance shall be taken out with insurance companies that are registered in the PRC and are permitted by the PRC laws to provide insurance to PRC companies.

**Article 19.2** The insurance types, the insured amounts, the insured periods and other insured terms shall be discussed and decided by the Board by reference to the practices of companies of the same trade in other countries and the practices and legal requirements in the PRC.

## CHAPTER 20 LABOUR MANAGEMENT

**Article 20.1** The Company formulates its systems regarding labour management, personnel management, wages and welfare and social insurance in accordance with the laws, rules and relevant administrative regulations of the PRC.

**Article 20.2** The Company implements the system of appointment for all levels of management personnel and a contract system for ordinary employees. The Company may decide by itself on its staffing, and may exercise its own discretion to recruit and, dismiss management personnel as well as employees in accordance with the laws and the terms of contracts,.

**Article 20.3** The Company shall have the right to, based on its own economic efficiency, decide by itself the levels of wages and welfare benefits of various levels of management personnel and other employees to the extent as provided for in the relevant administrative regulations.

**Article 20.4** The Company shall arrange for medical insurance, retirement insurance and unemployment insurance for its management personnel and other employees in accordance with relevant administrative regulations of the PRC central and local government, and shall comply with the laws, regulations and relevant requirements regarding labour insurance for retired and unemployed staff.

## CHAPTER 21 TRADE UNION

**Article 21.1**   The Company's employees shall have the right to organize a trade union and engages in trade union activities in accordance with the Trade Union Law of the PRC. The activities of the trade union shall be conducted in non-working hours, unless otherwise specified by the Board.

The Company shall make a monthly contribution to the trade union fund at two (2) per cent of the total amount of monthly wages paid to its employees. Such funds shall be used by the trade union of the Company in accordance with the Measures for the Management of Trade Union Funds formulated by the All China Federation of Trade Unions.

## CHAPTER 22 MERGER AND DIVISION OF THE COMPANY

**Article 22.1**   In the event of the merger or division of the Company, a plan shall be proposed by the Board and shall be approved in accordance with the procedures stipulated in the Articles of Association and the relevant examining and approving procedures shall be carried out as required by law. Shareholders who oppose the plan of merger or division of the Company shall have the right to request that the Company or the shareholders who consent to such plan purchase their shares at a fair price. A special document of the Company's resolution on the merger or division should be prepared for inspection by the shareholders.

The aforesaid document should also be dispatched to the holders of overseas listed foreign shares by post.

**Article 22.2**   The merger of the Company may take the form of either merger by absorption or merger by new establishment.

In the event of a merger of the Company, all parties to the merger shall enter into a merger agreement and prepare balance sheets and inventories of assets. The Company shall notify its creditors within ten (10) days of the date of the Company's resolution on merger and shall make a public announcement in newspapers at least three (3) times within thirty (30) days of the date of the passing of a resolution on merger.

After the merger the Company, the rights and liabilities of parties to the merger shall be assumed by the company which continues to exist after the merger or the newly established company.

**Article 22.3**   When the Company is divided, its assets shall be split up accordingly.

In the event of a division of the Company, all parties to the division shall enter into a division agreement and prepare balance sheets and inventories of assets. The Company shall notify its creditors within ten (10) days of the date of the Company's resolution on division and shall make a public announcement in newspapers at least three (3) times within thirty (30) days of the date of the passing of a resolution on division.

The liabilities incurred by the Company before its division shall be assumed by the companies after the division in accordance with the agreement reached.

**Article 22.4**   Changes to registered particulars arising from a merger or division of the Company shall be registered with the company registration authority in accordance with the law. When the Company is dissolved, the Company shall cancel its registration in accordance with the law. When a new company is established, its establishment shall be registered in accordance with the law.

## CHAPTER 23 DISSOLUTION AND LIQUIDATION OF THE COMPANY

**Article 23.1**   The Company shall be dissolved and liquidated in accordance with the law upon the occurrence of any of the following events:

(1) a resolution on dissolution is passed by shareholders at a general meeting;

(2) dissolution is necessary due to a merger or division of the Company;

(3) the Company is legally declared bankrupt due to its failure to repay debts due;

(4) the Company is ordered to close down according to law because of its violation of laws and administrative regulations.

**Article 23.2**   Where the Company is dissolved under paragraph (1) of the preceding Article, a liquidation committee shall be set up within fifteen (15) days, and its members shall be determined by shareholders at a general meeting by way of ordinary resolution.

Where the Company is dissolved pursuant to paragraph (3) of the preceding Article, the people's court shall, according to the relevant laws, organize to establish a liquidation committee comprising the shareholders, relevant authorities and relevant professionals to carry out the liquidation.

Where the Company is dissolved pursuant to paragraph (4) of the preceding Article, relevant supervisory authorities shall establish a liquidation committee comprising the shareholders, relevant authorities and relevant professionals to carry out the liquidation.

**Article 23.3**   Where the Board proposes to liquidate the Company (other than a liquidation of the Company as a result of a declaration of insolvency), the Board shall include a statement in its notice convening a shareholders' general meeting to consider the proposal to the effect that, after having made a full inquiry into the affairs of the Company, it is of the opinion that the Company will be able to pay its debts in full within twelve (12) months from the commencement of the liquidation.

Upon the passing of a resolution by the shareholders in general meeting for the liquidation of the Company, all functions and powers of the Board shall cease immediately.

The liquidation committee shall act in accordance with the instructions of the shareholders' general meeting to make a report at least once every year to the shareholders' general meeting on the committee's income and expenditure, the business of the Company and the progress of the liquidation and to present a final report to the shareholders' general meeting on completion of the liquidation.

**Article 23.4**   The liquidation committee shall notify creditors within ten (10) days from the date of its establishment and make a public announcement in newspapers at least three (3) times within sixty (60) days of that date. The liquidation committee shall register the creditor's claims.

**Article 23.5**   During the liquidation period, the liquidation committee shall exercise the following functions and powers:

(1)   to ascertain the Company's assets and separately prepare a balance sheet and an inventory of assets;

(2)   to notify creditors by sending notice or by making announcement;

(3)   to deal with and settle the Company's outstanding business deals in relation to the liquidation;

(4)   to settle outstanding tax payment ;

(5)   to ascertain all claims and debts;

(6)   to dispose of the remaining assets of the Company after the repayment of debts;

(7)   to represent the Company in any civil proceedings.

**Article 23.6**   After checking the Company's assets and preparing a balance sheet and an inventory of assets, the liquidation committee shall formulate a liquidation plan and submit the same to a shareholders' general meeting or relevant supervisory authorities for confirmation.

The assets of the Company shall be applied for liquidation in the following order of priority:

(1)   liquidation costs;

(2)   outstanding salaries, social insurance premiums payable to the employees of the Company;

(3)   outstanding taxes;

(4)   bank loans and other debts of the Company.

The remaining assets of the Company after repayment of its debts in accordance with the provisions above shall be distributed to the shareholders of the Company according to the class of shares held by them and in proportion to their respective shareholdings.

During the liquidation period, the Company shall not carry out any new business activities.

**Article 23.7**   In the event of Company's liquidation owing to dissolution, if the liquidation committee, after ascertaining the Company's assets and preparing a balance sheet and an inventory of assets, discovers that the Company's assets are insufficient to repay its debts, it shall immediately apply to the people's court for a declaration of bankruptcy.

After the Company is declared bankrupt by a ruling of the people's court, the liquidation committee shall transfer the liquidation matters to the people's court.

**Article 23.8**   Following the completion of liquidation, the liquidation committee shall present a report on liquidation and prepare a statement of the income and expenditure and the financial books of accounts for the period of the liquidation which shall be audited by PRC certified public accountants and then submitted to the shareholders' general meeting or relevant supervisory authorities for confirmation.

The liquidation committee shall also within thirty (30) days after such confirmation, submit the documents referred to in the preceding paragraph to the company registration authority and apply for cancellation of registration of the Company, and make a public announcement of the termination of the Company.

# CHAPTER 24 PROCEDURES FOR AMENDMENTS TO THE ARTICLES OF ASSOCIATION

**Article 24.1**   These Articles of Association may be amended in accordance with the laws, administrative regulations and the provisions of the Articles of Association.

**Article 24.2**   Except as otherwise provided in Article 8.6 and 8.25 hereof, any amendment to the Articles of Association shall be made in the following procedures:

(1)   the Board shall, in accordance with the Articles of Association, adopt a resolution to propose to the shareholders' general meeting to amend the Articles of Association, and draw up a proposal for such amendments;

(2)   the amendment proposal shall be notified to shareholders, and a shareholders' general meeting shall be convened to vote on the proposal;

(3)   subject to the relevant provisions of the Articles of Association, the amendments submitted to the shareholders' general meeting for approval shall be approved by way of special resolution.

**Article 24.3**   Any amendment to the Articles of Association involving anything set out in the Mandatory Provisions shall become effective upon approval by the department in charge of company approval affairs authorized by the State Council and by the China Securities Regulatory Commission. If there is any change relating to the registered particulars of the Company, application shall be made for registration of the changes in accordance with the laws.

## CHAPTER 25 SETTLEMENT OF DISPUTES

**Article 25.1**  The Company shall act according to the following principles to settle disputes:

(1) Whenever any disputes or claims arise between holders of the overseas listed foreign shares and the Company, holders of the overseas listed foreign shares and the Company's Directors, supervisors, general managers or other senior management members, or holders of the overseas listed foreign shares and holders of domestic shares, based on the Articles of Association or any rights or obligations conferred or imposed by the PRC Company Law or any other relevant laws and administrative regulations concerning the affairs of the Company, such disputes or claims shall be referred by the relevant parties to arbitration.

Where a dispute or claim of rights abovementioned is referred to arbitration, the entire claim or dispute must be referred to arbitration and any person (being the Company or a shareholder, Director, supervisor, general manager or other senior management members of the Company) who has a cause of action based on the same facts giving rise to the dispute or claim or whose participation is necessary for the resolution of such dispute or claim, shall abide by the arbitration.

Disputes in relation to the identification of shareholders and disputes in relation to the register of shareholders need not be resolved by arbitration.

(2) A claimant may elect arbitration at either the China International Economic and Trade Arbitration Commission in accordance with its rules or the Hong Kong International Arbitration Centre in accordance with its Securities Arbitration Rules. Once a claimant refers a dispute or claim to arbitration, the other party must submit to the arbitral body elected by the claimant.

If a claimant elects arbitration at Hong Kong International Arbitration Centre, any party to the dispute or claim may apply for a hearing to take place in Shenzhen in accordance with the Securities Arbitration Rules of the Hong Kong International Arbitration Centre.

(3) If any disputes or claims of rights prescribed in paragraph (1) above are referred to arbitration, the laws of the People's Republic of China shall apply, save as otherwise provided in laws and administrative regulations.

(4) The award of an arbitration body shall be final and conclusive and binding on all parties.

## CHAPTER 26 NOTICE

**Article 26.1**  Save as otherwise provided in the Articles of Association and subject to the laws and administrative regulations and the listing rules of the place of listing, any corporate communications to be issued by the Company may be sent by any of the following means:

(1) by hand;

(2) by post;

(3) by facsimile, electronic mail, disc or other electronic means;

(4) in a manner of publishing on the website designated by the Company and the Hong Kong Stock Exchange;

(5) in the form of an announcement;

(6) by other means agreed in advance between the Company and the recipient or such other approved means as notified to the recipient; or

(7) by any other means approved by the regulatory authority of the place of listing or provided in these Articles of Association.

The "announcements" referred to in these Articles of Association, except as the context otherwise required, shall, in respect of the notices sent to holders of domestic shares or required to be sent in the PRC under the relevant provisions and these Articles of Association, mean the public announcements published on the newspapers and magazines in the PRC as specified by the laws or administrative regulations of the PRC or by the securities regulatory authority under the State Council; or shall, in respect of the notices sent to the holders of foreign shares or required to be sent in Hong Kong under the relevant provisions and these Articles of Association, be sent in accordance with the Hong Kong Listing Rules or other applicable rules and regulations.

In respect of the methods which can be used by the Company to send or serve corporate communications to holders of overseas listed foreign shares in accordance with the Listing Rules, the Company may also send or serve the corporate communications to or on such holders by electronic means or by using websites, subject to the laws and regulations of the place of listing of the shares of the Company and the relevant listing rules.

"Corporate communications" shall mean any documents sent or to be sent by the Company for reference or taking actions by any holders of securities of the Company, including but not limited to the following:

(1)  annual reports, including report of the Board, annual accounts of the Company together with the auditor's report and (if applicable) summary financial report;

(2)  interim reports and (if applicable) summary interim reports;

(3)  notices of meetings;

(4)  listing documents;

(5)  circulars; and

(6)  forms of proxy.

**Article 26.2**    Any notices delivered by hand shall be deemed to be served upon delivery. Where a notice is to be sent by post, it shall be placed in an envelope properly addressed with the name of the person addressed, postage prepaid and posted and, any such notice shall be deemed to have been received by shareholders forty-eight (48) hours after posting. For any notices sent by the Company by way of facsimile or electronic mail or published on websites, the date of first publication shall be the date of service. For any notices issued by the Company by way of public announcement on newspapers and magazines, the date of first publication shall be the date of service, and the announcement shall be published on newspapers specified in the relevant provisions.

**Article 26.3**    Any notice, document, information or written statement to be served by a shareholder or Director to the Company shall be delivered by hand or by registered mail to the legal address of the Company.

**Article 26.4**    Shareholders or Directors of the Company who want to prove that certain notices, documents, information or written statements have been served on the Company shall provide evidential materials showing the same has been served on the Company in accordance with Article 26.3 within the designated periods, which shall mean in respect of those sent by hand, receipt confirmation of the Company, or in respect of those sent by registered mail, evidential materials showing that the mailing address is correct and the postage is fully paid.

## CHAPTER 27 INTERPRETATIONS AND DEFINITIONS OF THE ARTICLES OF ASSOCIATION

**Article 27.1**    These Articles of Association shall be interpreted by the Board, and any matters not covered herein shall be proposed at shareholders' general meetings by the Board and passed by resolution.

**Article 27.2**    These Articles of Association are written in English; the Chinese version shall prevail.

**Article 27.3**  In the Articles of Association, unless the context requires otherwise, the following terms and expressions shall have the following meanings:

| | |
|---|---|
| "Articles of Association" | the articles of association of the Company |
| "Board" | the board of Directors of the Company |
| "Chairman" | the chairman of the Board |
| "Director(s)" | any director(s) of the Company |
| "overseas listed foreign shares" | any overseas listed foreign shares of the Company |
| "Company's legal residence" | No. A-11 Sanlihe Road, Haidian District, Beijing |
| "RMB" or "Renminbi" | Renminbi, the lawful currency of the PRC |
| "Secretary of the Board" | the company secretary appointed by the Board |
| "PRC" and "State" | the People's Republic of China |
| "HK" | the Hong Kong dollar, the lawful currency of Hong Kong |
| "Hong Kong Stock Exchange" | The Stock Exchange of Hong Kong Limited |
| "Listing Rules" | the Listing Rules issued by the Hong Kong Stock Exchange |
| "Company" | China National Building Material Company Limited* |
| "accountants' firm" | having the same meaning as "auditors" referred to in the Rules Governing the Listing of Securities on the Stock Exchange of Hong Kong Limited |

| | |
|---|---|
| "MP" | Mandatory Provisions for Articles of Association of Companies Listing Overseas (Zheng Wei Fa [1994] No. 21) promulgated by the former China Securities Committee under the State Council and the former State Committee on Economic System Reform; |
| "APP3" | Appendix 3 of the Listing Rules promulgated by the Stock Exchange of Hong Kong Limited |
| "A13D" | Appendix 13D of the Listing Rules promulgated by the Stock Exchange of Hong Kong Limited |
| "LR19A" | Chapter 19A of the Listing Rules promulgated by the Stock Exchange of Hong Kong Limited |
| "Zheng Jian Hai Han" | Circular Regarding Comments on the Amendment of Articles of Association of Companies Listing Overseas in Hong Kong (Zheng Jian Hai Han [1995] No. 1), which was promulgated by the Overseas-Listing Department of China Securities Regulatory Commission and the Production System Department of the former State Committee on Economic System Reform |

**APPENDIX I:**

# RULES OF PROCEDURE FOR SHAREHOLDERS' GENERAL MEETINGS

## CHAPTER I   GENERAL PROVISIONS

**Article 1**    Pursuant to the Company Law of the People's Republic of China (the "Company Law"), the Securities Law of the People's Republic of China (the "Securities Law"), the listing rules of the stock exchanges on which the Company's shares are listed (hereinafter referred to as the "Listing Rules"), the Articles of Association of China National Building Material Company Limited* (the "Articles of Association") and other relevant requirements, the Company has formulated these rules of procedure for general meetings (the "Rules") in order to regulate the acts, and to ensure the lawful exercise of the powers of the general meetings, of China National Building Material Company Limited* (the "Company").

**Article 2**    The general meetings of the Company shall be held in strict compliance with the relevant requirements of laws, administrative regulations, the Listing Rules and the Articles of Association in order to ensure that the rights of shareholders can be exercised in accordance with the law.

**Article 3**    The Board of Directors of the Company shall conscientiously perform its duties, and organize general meetings in a serious and timely manner. All Directors of the Company shall diligently and conscientiously ensure that general meetings are properly held and the powers of general meetings are exercised in accordance with the laws.

## CHAPTER II   GENERAL RULES OF GENERAL MEETINGS

**Article 4**     The general meeting is the organ of authority of the Company, and shall exercise the following powers in accordance with law:

(1)   to determine the business policies and investment plans of the Company;

(2)   to elect and replace Directors who are not staff representatives and to fix the remuneration of such Directors;

(3)   to elect and replace supervisors who are not staff representatives, and to fix the remuneration of such supervisors;

(4)   to examine and approve the reports of the Board of Directors;

(5)   to examine and approve the reports of the supervisory committee;

(6)   to examine and approve the proposed annual financial budgets and proposed final accounts of the Company;

(7)   to examine and approve the profit distribution plans and loss make-up plans of the Company;

(8)   to adopt resolutions on any increase or reduction of the registered capital of and the acquisition of shares in the Company;

(9)   to adopt resolutions on matters such as merger, spin-off, dissolution and liquidation of the Company;

(10) to adopt resolutions on the issue of bonds of the Company;

(11) to adopt resolutions on the appointment, dismissal or non-reappointment of the accountants of the Company;

(12) to amend the Articles of Association;

(13) to examine resolutions proposed by shareholders holding more than 3% of the Company's voting shares;

(14) other matters required by laws, administrative regulations, regulatory rules of the jurisdiction in which the Company's shares are listed and the Articles of Association to be resolved upon at a general meeting.

The general meeting may authorize or delegate the Board of Directors to deal with such matters as may be authorized or delegated by it in accordance with the Company Law, the Listing Rules and the Articles of Association.

Article 5    General meetings are divided into annual general meetings (AGMs) and extraordinary general meetings. The general meeting shall be convened by the Board of Directors.

Annual general meetings shall be held once every year. Each AGM shall be held within six months after the end of the previous financial year.

The Board of Directors shall hold an extraordinary general meeting within two months upon the occurrence of one of the following circumstances:

(1) the number of Directors is less than the number required by the Company Law or less than two-thirds of the number required by the Articles of Association;

(2) the uncovered losses of the Company reach one third of its total share capital;

(3) shareholders holding more than 10% of the Company's issued shares with voting rights request the holding of an extraordinary general meeting in writing;

(4) the Board of Directors considers it necessary or the supervisory committee proposes that an extraordinary general meeting should be held;

(5)  such other circumstances as may be provided for by laws, administrative regulations, the Listing Rules or the Articles of Association.

In any of the circumstances referred to in (3) and (4) above, the matter for consideration proposed by the party requesting the holding of the extraordinary general meeting shall be included in the agenda of such meeting.

**Article 6**  The place for holding the general meeting of the Company shall be the domicile of the Company or such other location as informed by the convenor of the general meeting.

A general meeting shall have a venue where it shall be held. The Company will also provide internet or other forms of access to facilitate the participation by shareholders in a general meeting. Shareholders participating in a general meeting by any of the aforesaid means shall be deemed to be present at the meeting.

## CHAPTER III   CONVENING OF GENERAL MEETINGS

**Article 7**  The Board of Directors shall convene general meetings pursuant to the time limit stipulated herein.

**Article 8**  Upon the approval of more than 1/2 of the Independent Directors, the Independent Directors may make a proposal to the Board of Directors for the holding of an extraordinary general meeting. In respect of such proposal by the Independent Directors, the Board of Directors shall, in accordance with laws, administrative regulations and the Articles of Association, make a written response as to whether or not it agrees that an extraordinary general meeting should be held within 10 days after receipt of such proposal.

If the Board of Directors agrees that an extraordinary general meeting should be held, a notice of such meeting will be issued within five days after the passing of a relevant resolution of the Board of Directors. If the Board of Directors does not agree that an extraordinary general meeting should be held, it shall give an explanation of the reasons therefor.

**Article 9**     The supervisory committee shall have the right to make a proposal to the Board of Directors for the holding of an extraordinary general meeting, which proposal shall be in writing. The Board of Directors shall, in accordance with laws, administrative regulations and the Articles of Association, make a written response as to whether or not it agrees that an extraordinary general meeting should be held within 10 days after receipt of such proposal.

If the Board of Directors agrees that an extraordinary general meeting should be held, a notice of such meeting will be issued within five days after the passing of a relevant resolution by the Board of Directors. Changes made to the original proposal set out in the notice shall be subject to the approval of the supervisory committee.

If the Board of Directors does not agree that an extraordinary general meeting shall be held, or gives no response within 10 days after receipt of such proposal, the Board of Directors shall be deemed to be unable or to have failed to perform its duty to convene the general meeting, and the supervisory committee may convene and preside over such meeting by itself.

**Article 10**     The following procedures shall be followed by shareholders requesting the convening of extraordinary general meetings or class meetings:

(1)   two or more shareholders jointly holding more than 10% (including 10%) of the voting shares relating to a proposed meeting may request the Board of Directors to convene such extraordinary general meeting or class meeting by signing and submitting one or several written requests with the same format and contents in which the matters for consideration at the meeting shall be set out clearly. An extraordinary general meeting or a class meeting shall be convened by the Board of Directors as soon as practicable after receipt of the aforesaid written request. For the purposes of the preceding requirement relating to the number of voting shares held, such number shall be calculated on the basis of the number of relevant voting shares held on the date of submission of such written request.

(2)  if the Board of Directors fails to issue a notice of such meeting within 30 days after receipt of the aforesaid written request, the shareholders submitting such request may convene such meeting by themselves within 4 months after the Board of Directors' receipt of such request in which case, the convening procedures shall, as far as practicable, follow the procedure for convening a shareholders' meeting by the Board of Directors.

Reasonable expenses incurred by shareholders in convening and holding such meeting due to the Board of Directors' failure to convene such meeting in response to the aforesaid request shall be borne by the Company. Such expenses shall be deducted from the amounts due by the Company to the defaulting Director(s).

**Article 11**   When the supervisory committee or shareholders decide to convene a general meeting by themselves, they shall notify the Board of Directors in writing.

Prior to the announcement of the resolutions of the general meeting, the proportion of shares held by the convening shareholders in aggregate shall not be less than 10%.

**Article 12**   The Board of Directors and the Secretary of the Board shall provide support in relation to general meetings convened by the supervisory committee or shareholders. The Board of Directors shall provide the register of members as at the shareholding record date. If the Board of Directors fails to provide the register of members, the convener may apply to the relevant securities registration and clearing company or agent to obtain a copy of such register by presentation of the relevant notice or announcement relating to the holding of the general meeting. The register of members so obtained by the convener shall not be used for any purpose other than the holding of the general meeting.

**Article 13**   Necessary expenses incurred in connection with general meetings convened by the supervisory committee or shareholders shall be borne by the Company.

# CHAPTER IV   PROPOSED RESOLUTIONS AND NOTICES
# OF GENERAL MEETINGS

**Article 14**   A proposed resolution for a general meeting shall meet the following requirements:

(1)   its contents shall not be in conflict with the laws, administrative regulations and the Articles of Association and shall be within the scope of business of the Company and the powers of the general meeting;

(2)   it shall set out specific matters for consideration and resolution;

(3)   it shall be submitted or delivered to the Board of Directors in written form.

**Article 15**   The Board of Directors, the supervisory committee, and shareholders individually or jointly holding 3% or more of the Company's shares shall have the right to submit proposed resolutions to the Company for a general meeting of the Company.

Shareholders individually or jointly holding 3% or more of the Company's shares may submit extra proposed resolutions to the convener of a general meeting in writing 10 days prior to the meeting. The Company shall include such proposal in the agenda of such meeting to the extent that it falls within the powers of the shareholders' general meeting. The convener shall issue a supplementary notice of the general meeting and announce the contents of such extra proposed resolutions within 2 days after receipt thereof.

No voting shall be conducted and no resolution shall be passed at a general meeting on the basis of any proposed resolution that is not set out in the notice of the general meeting or that does not meet the requirements of these Rules.

**Article 16**    A written notice of a general meeting to be held by the Company shall be given to all shareholders, whose names appear in the register of members, 45 days before the meeting is held, specifying the matters to be considered at the date and place of the meeting. A shareholder who intends to attend the general meeting shall deliver a written reply slip confirming his intention to attend the meeting to the Company 20 days before the meeting is held.

The date of holding the meeting shall be counted, but the date of issuing the notice shall not be counted, for the purpose of determining any time limit hereunder.

**Article 17**    A notice of a general meeting shall meet the following requirements:

(1)  it shall be in written form;

(2)  it shall specify the place, date and time of the meeting;

(3)  it shall state the matters to be discussed at the meeting;

(4)  it shall state the shareholding record date in relation to eligibility of shareholders for participation in the general meeting;

(5)  it shall provide shareholders with such information and explanation as are necessary for them to make sensible decisions in connection with the matters to be discussed. This principle shall include (but shall not be limited to), where the Company proposes to merge, repurchase its shares, restructure share capital or undergo other reorganization. The requirement for the specific terms and contracts (if any) of the proposed transaction to be provided and the reasons for and effects of the same are to be properly explained;

(6)  if any Director, supervisor, general manager (president), deputy general manager (vice president) and other senior management members have material interests in the matters to be discussed, the nature and extent of such material interests shall be disclosed, and if the effect of the matters to be discussed on such Director, supervisor, president, vice president and other senior management members in their capacity as shareholders is different from the effect thereof on other shareholders of the same class, the differences shall be stated;

(7)  it shall contain the full text of any special resolution to be proposed at the meeting for consideration and approval;

(8)  it shall contain a clear statement that a shareholder who has the right to attend and vote at the meeting shall have the right to appoint one or more proxies to attend and vote at the meeting on his behalf and that such proxies need not be shareholders;

(9)  it shall state the date and place for delivery of the proxy forms for the meeting;

(10) it shall state the names and telephone numbers of the contact persons in connection with the meeting.

**Article 18**  The Company shall calculate the number of voting shares represented by shareholders who intend to attend a general meeting on the basis of the written replies it has received 20 days before the date of the general meeting. In the event that the number of voting shares represented by shareholders who intend to attend the meeting is more than half of the total number of the voting shares of the Company, the Company may hold the general meeting; if not, the Company shall, within 5 days, notify shareholders again of the matters to be considered at, and the date and place for, the meeting by public announcement. The Company may hold the general meeting after such an announcement has been made.

**Article 19**   Where the election of Directors and supervisors are to be discussed at a general meeting, the notice of the general meeting shall fully disclose the particulars of the candidates for election as Directors and supervisors, which at least shall include:

(1)   Personal particulars of the candidates such as full name, age, educational background, experience (including any directorships held in the last three years in any public companies the securities of which are listed on any securities market in Hong Kong or overseas and any other major appointment and professional qualifications), and concurrent positions;

(2)   Positions in the Company or other group members;

(3)   Length or proposed length of service as Director or supervisor of the Company;

(4)   Relationship with any Directors, senior management, substantial shareholders or controlling shareholders of the Company;

(5)   Any interests in shares of the Company within the meaning of Part XV of the Hong Kong Securities and Futures Ordinance;

(6)   Emoluments of Directors or supervisors, the basis of determining the emoluments of Directors or supervisors (including any bonus payments, whether fixed or discretionary in nature, irrespective of whether or not the relevant Directors or supervisors have entered into service contracts) and the amount covered by a service contract;

(7)   Details of any public sanction made against the candidate by law or regulatory authority and other information required to be disclosed to shareholders in accordance with the Company Law, the Listing Rules and the Articles of Associations; and

(8)   Other information required to be disclosed in accordance with the Listing Rules.

Save in the case of the election of Directors and supervisors on a cumulative voting basis, a separate resolution shall be proposed for each of the candidates for election as Directors or supervisors.

**Article 20**   The notice of a general meeting shall be sent to shareholders (regardless of whether they are entitled to vote at the general meeting) by personal delivery or by prepaid mail. The addresses of the recipients shall be such addresses as shown in the register of members. For holders of domestic-invested shares, such notice of the general meeting may also be given by way of announcement.

The Company, when giving notice of a general meeting, shall ensure that holders of foreign-invested shares, whose registered addresses are in Hong Kong, will have sufficient time to exercise their rights or act in accordance with the terms of the notice.

In the light of the methods which can be used by the Company to send or provide corporate communications to holders of overseas listed foreign-invested shares in accordance with the requirements of the Hong Kong Listing Rules, the Company may also send or provide corporate communications to such holders by electronic means or by publication thereof on its website, subject to compliance with the laws and regulations of the place where the Company's shares are listed and relevant Listing Rules.

**Article 21**   Subsequent to the issue of the notice of the general meeting, the general meeting shall not be postponed or cancelled without proper reasons, and the proposed resolutions set out in the notice of the general meeting shall not be withdrawn. Where the meeting has to be postponed or cancelled, the convener shall make an announcement and give reasons therefor at least two working days prior to the original date of the meeting. Where there is any other requirement in respect of the aforesaid matters under the Listing Rules, such requirement shall prevail.

## CHAPTER V   HOLDING OF GENERAL MEETINGS

**Article 22**   The Board of Directors of the Company or any other convener shall take necessary measures to ensure the proper order of a general meeting. The Board of Directors shall take measures to stop and promptly report to relevant departments for investigation any acts of interfering with a general meeting, or acts of a provocative nature or causing troubles or infringing upon the lawful rights and interests of shareholders.

**Article 23**   All shareholders whose names appear on the register of members on the relevant shareholding record dates or their proxies shall be entitled to attend general meetings and exercise their voting rights thereat in accordance with relevant laws, regulations and the Articles of Association.

Shareholders may attend general meetings in person or appoint proxies to attend and vote at general meetings on their behalf.

**Article 24**   Individual shareholders attending a general meeting in person shall produce their identity cards or other valid proof or evidence of their identities as well as stock account certificates and, in the case of attendance by proxies, the proxies shall produce valid proof of their identities and the proxy forms from shareholders.

Where a shareholder is a legal entity, its legal representative or a proxy shall attend a general meeting on behalf of such legal entity. In case of attendance by legal representatives, they shall produce their identity cards and valid proof of their capacities as legal representatives and, in the case of attendance by proxies of such legal representatives, such proxies shall produce their identity cards and the letters of authorization duly issued by the relevant shareholder.

**Article 25**    Any shareholder entitled to attend and vote at a general meeting shall have the right to appoint one or several persons (who may not be shareholders) to act as his proxy to attend and vote at the meeting on his behalf. The proxy(ies) so appointed by the shareholder may, pursuant to the instructions of the shareholder, exercise the following rights:

    (1)   the right to speak as the shareholder at a general meeting;

    (2)   the right to demand a poll alone or jointly with others;

    (3)   the right to exercise voting rights on a show of hands or on a poll, unless otherwise required by the Listing Rules or other securities laws and regulations, provided that where over one proxy is appointed, the proxies may only exercise such voting rights on a poll.

**Article 26**    The proxy form issued by a shareholder appointing another person to attend a general meeting on his behalf shall specify the following:

    (1)   the name of the proxy;

    (2)   whether or not the proxy is entitled to vote;

    (3)   the instructions as to whether the proxy should vote for or against or abstain from voting on each item to be considered at the general meeting;

    (4)   the date and period of validity of the proxy form;

    (5)   the signature (or seal) of the appointing party. Where the appointing party is a legal entity shareholder, either the seal of such legal person or the signature of a Director or a duly authorised executive or attorney.

**Article 27**    A proxy form shall indicate whether or not, in the absence of specific instructions by the relevant shareholder, the proxy of the shareholder may vote as he thinks fit.

**Article 28**    The instrument appointing a proxy shall be in writing under the hand of the appointing shareholder or his attorney duly authorized in writing; where the appointing shareholder is a legal person, such instrument shall be under its seal or under the hand of its Director or executive duly authorized or attorney duly authorized.

**Article 29**    Proxy forms appointing proxies with the authority to vote shall be deposited at the address of the Company or such other place as may be specified in the notice of the relevant meeting at least 24 hours before the relevant meeting at which such proxies are authorized to vote under such proxy forms, or 24 hours before the designated time for the relevant voting. Where a proxy form is signed by a person under a power of attorney on behalf of the appointor, such power of attorney or other authorization document shall be notarized. A notarized copy of that power of attorney or other authorization document, together with the proxy form appointing a proxy with the authority to vote, shall be deposited at the address of the Company or such other place as may be specified in the notice of the relevant meeting.

Where the appointor is a legal person, its legal representative or any other person as authorized by resolution of its Board of Directors or other decision-making authority shall attend the general meetings of the Company on its behalf.

Save for the above, where such shareholder is a Recognized Clearing House defined under Hong Kong laws (hereinafter referred to as the "Recognized Clearing House") or its nominee, such shareholder is entitled to appoint one or more persons as it deems fit to act on its behalf at any general meeting or any class meeting, provided that where more than one person is so authorized, the letter of authorization shall specify the number and class of shares in respect of which each such person is so authorized. Such persons so authorized may exercise the rights of the Recognized Clearing House (or its nominee) on its behalf as if they were individual shareholders of the Company.

**Article 30**      Any form issued to a shareholder by the Board of Directors for use by him for appointing a proxy shall allow the shareholder to freely instruct the proxy to vote in favour of or against each resolution relating to each matter to be considered at the relevant meeting. Such form shall contain a statement that in the absence of instructions by the shareholder, his proxy may vote as he thinks fit.

**Article 31**      Where the appointor has deceased or has been incapacitated, or the appointment of a proxy or the power of attorney under which a proxy form is signed has been withdrawn, or the relevant shares have been transferred prior to the relevant voting, a vote given in accordance with the proxy form shall remain valid provided that no written notice of such event has been received by the Company prior to the commencement of the relevant meeting.

**Article 32**      A register of attendance at general meetings shall be prepared by the Company. Such register shall set forth the names of attendees (or the names of the companies they represent), their identity card numbers, residential address, number of voting shares held or represented, and the names of the appointors of proxies (or the appointing companies), etc.

**Article 33**      In convening a general meeting, the legal eligibility of shareholders based on the register of members shall be verified and the names of the shareholders as well as the number of their voting shares shall be registered. The registration for a meeting shall end before the chairman of the meeting announces the number of shareholders and proxies attending the meeting and the total number of voting shares held or represented by them.

**Article 34**      All Directors, supervisors and the Secretary of the Board may attend any general meetings. The president, vice president(s) and other senior management members may also be present at the meetings without the right to vote.

**Article 35**    A shareholders' general meeting shall be convened and presided over by the Chairman (chairman of the Board of Directors). In the event that the Chairman is unable to attend the meeting for any reason, the Vice Chairman (vice chairman of the Board of Directors) shall convene the meeting and act as the chairman thereof; in the event that both the Chairman and the Vice Chairman are unable to attend the meeting, the Board of Directors may designate a Director to convene and preside over the meeting on their behalf. In the event that no chairman of the meeting is so designated, the attending shareholders shall elect one person to act as the chairman of the meeting. In the event that, for any reasons, the shareholders fail to elect a chairman, then the shareholder holding the largest number of voting shares present in person or by proxy shall be the chairman of the meeting.

For a general meeting convened by the supervisory committee, such meeting shall be presided over by the chairman of the supervisory committee. If the chairman of the supervisory committee is unable to perform or fails to perform his duties, a supervisor designated by the chairman of the supervisory committee shall preside over the meeting; Where the chairman of the supervisory committee fails to designate such a supervisor, a supervisor jointly elected by more than one half of all supervisors shall preside over the meeting.

For a general meeting convened by the shareholders themselves, such meeting shall be presided over by a representative elected by the convening shareholders.

During the course of a general meeting, if the chairman of the meeting is in breach of these Rules and renders it impossible for the meeting to continue, with the consent of shareholders present at the meeting and representing more than half of the total voting rights held by all shareholders so present, the general meeting may elect one individual to be the chairman of the meeting and the meeting shall continue.

**Article 36**    During an annual general meeting, the Board of Directors and the supervisory committee shall respectively give a report on their work in the previous year to the general meeting.

**Article 37**      Directors, supervisors and senior management shall make representations and give explanation in response to inquiries and suggestions made by shareholders at general meetings.

**Article 38**      The chairman of a general meeting shall, prior to voting, announce the number of shareholders and proxies present at the meeting as well as the total number of voting shares held or represented by them, which shall be as recorded in the register of attendance in respect of the meeting.

**Article 39**      Minutes of general meetings shall be kept by the Secretariat of the Board of Directors. Such minutes shall contain the following items:

(1)   the date, place and agenda of the meeting, and the name of the convener;

(2)   the name of the chairman of the meeting, and the names of Directors, supervisors, managers and other senior management members of the Company attending the meeting (with or without the right to vote);

(3)   the number of shareholders and proxies attending the meeting, the total number of voting shares held or represented by them and the percentage thereof in relation to the total number of shares in the Company;

(4)   the discussions carried out, major comments made, and voting result in respect of each resolution;

(5)   details of the queries or suggestions of the shareholders, and the corresponding answers or explanations;

(6)   the names of vote counting officers and scrutineer;

(7)   such other matters which shall be recorded in the minutes of the meeting in accordance with the provisions of the Articles of Association.

**Article 40**    The convener of a general meeting shall ensure the truthfulness, accuracy and completeness of the minutes of the meeting. The Directors, supervisors, the Secretary of the Board, the convener or his representative and the chairman of the meeting present at the meeting shall sign the minutes of the meeting. The minutes of the meeting and the signed attendance record of the shareholders who attended in person, the proxy forms and the valid information relating to voting online and by other means shall be kept together for a term of 15 years.

**Article 41**    The convener of a general meeting shall ensure that the meeting is held continuously until final resolutions are passed. In the event that the general meeting is suspended or no resolution can be passed thereat due to force majeure or other special reasons, necessary measures shall be taken to resume the meeting as soon as possible or the meeting shall be terminated and an announcement of such termination shall be made promptly.

## CHAPTER VI   VOTING AT AND RESOLUTIONS OF GENERAL MEETINGS

**Article 42**    Resolutions of general meetings are divided into ordinary resolutions and special resolutions.

An ordinary resolution of a general meeting shall be passed with the approval of shareholders (including proxies) present at the meeting who together hold or represent more than one-half of the voting rights held or represented by all the shareholders (including proxies) present at the meeting.

A special resolution of a general meeting shall be passed with the approval of shareholders (including proxies) present at the meeting who together hold or represent more than two-thirds of the voting rights held or represented by all the shareholders (including proxies) present at the meeting.

**Article 43**    The following matters shall be approved by ordinary resolutions of a general meeting:

(1)    the work reports of the Board of Directors and the supervisory committee;

(2)   the plans formulated by the Board of Directors for profit distribution and making up losses;

(3)   the appointment and removal of members of the Board of Directors and the supervisory committee (who are not staff representatives) and their remuneration and the methods of payment thereof;

(4)   the Company's annual financial budgets and final accounts, balance sheets, income statements and other financial statements;

(5)   other matters other than those required by laws, administrative regulations, the Articles of Association or the Listing Rules to be approved by special resolutions.

**Article 44**   The following matters shall be approved by special resolutions of a general meeting:

(1)   the increase or reduction of the Company's share capital, the repurchase of shares and the issue of any class of shares, warrants and other similar securities of the Company;

(2)   the issue of corporate bonds;

(3)   any spin-off, merger, dissolution, liquidation or change of the form of the Company;

(4)   the amendments to the Articles of Association;

(5)   such other matters as may be required by laws, administrative regulations, the Articles of Association or the Listing Rules or which, pursuant to ordinary resolutions passed at general meetings, are considered to have material effects on the Company and require approval by special resolutions.

**Article 45**   Shareholders (including proxies) shall exercise their voting rights at a general meeting according to the number of voting shares they represent, with one vote for each share. Shares in the Company which are held by the Company do not carry any voting rights, and shall not be counted in the total number of voting shares represented by shareholders present at a general meeting.

The Board of Directors, Independent Directors and shareholders who meet the relevant requirements may collect votes from shareholders.

**Article 46**   When connected (related) transactions are being considered at a general meeting, the connected shareholders shall abstain from voting, and the number of voting shares held by them shall not be counted toward the total number of valid votes. An announcement of the resolutions of the general meeting shall fully disclose the results of voting by shareholders who are not connected to such transactions.

The abstention and voting procedures for connected transactions shall be as follows:

(1)   when a connected transaction is to be considered at a general meeting, the chairman of the meeting shall announce the list of connected shareholders, and the total number of voting shares held by shareholders not connected to such transaction and present at the meeting, and the percentage of such voting shares in relation to the total number of shares in the Company.

(2)   the connected shareholders shall, on their own initiative, propose to the Board of Directors to abstain from voting, and the chairman of the meeting shall demand that the connected shareholders shall abstain from voting.

(3)   if the Chairman of the Board of Directors attends the meeting as the proxies of the connected shareholders, the Chairman of the Board of Directors shall delegate another Director to preside over the meeting when such connected transaction is being considered and voted upon.

(4)  If the connected shareholders disagree with the decision of the convener, they shall have the right to report to the relevant securities regulatory authorities and may obtain a decision from a people's court as to whether or not they are connected to and entitled to vote upon the connected transaction, but before a final and valid decision is made by the relevant securities regulatory authority or the people's court, such shareholders shall abstain from voting, and the number of voting shares they represent shall not be counted toward the total number of valid votes.

(5)  connected shareholders who shall abstain from voting may participate in the discussion relating to the connected transaction to which they are connected, and make explanation and representations to the general meeting in relation to the reasons for and the background of the transaction and as to whether or not the transaction is fair and lawful.

**Article 47**  Any vote of shareholders at a general meeting shall be taken by poll except where the chairman of a general meeting, acting in good faith, decides to allow a resolution which relates purely to a procedural or administrative matter to be voted on by a show of hands.

**Article 48**  A poll demanded on such matters as the election of chairman or the adjournment of the meeting, shall be taken forthwith. A poll demanded on any other matters shall be taken at such time as the chairman may decide, and the meeting may proceed to discuss other matters, while the results of the poll shall still be deemed to be a resolution of that meeting.

**Article 49**  On a poll taken at a meeting, a shareholder (including proxy) entitled to 2 or more votes need not cast all his votes for or against in the same way.

**Article 50**  Save where the Company is in a crisis or other special circumstances, without the prior approval of a special resolution of a general meeting, the Company shall not enter into a contract with a person other than a Director, president, vice president or other senior management members whereby the management of all or a material part of the business of the Company is delegated to such person.

**Article 51**   The manner in which Directors and supervisors shall be nominated and the procedure for such nomination are as follows:

(1)   shareholders individually or jointly holding more than 3% of the Company's total issued shares with voting rights may nominate non-staff representatives as candidates for election as Directors or supervisors by way of a proposed resolution to the general meeting in writing, but the number of persons nominated shall comply with the Articles of Association and shall not be greater than the number of Directors or supervisors proposed to be elected. Such proposed resolution shall be delivered to the Company at least 14 days before the date of the relevant general meeting;

(2)   subject to the number of persons specified in the Articles of Association, and in accordance with the number of Directors or supervisors proposed to be elected, the Board of Directors or the supervisory committee may propose and submit a list of candidates for election as Directors or supervisors to the Board of Directors or the supervisory committee for examination. Subject to the examination and the passing of a relevant resolution confirming such candidates for election as Directors or supervisors by the Board of Directors or the supervisory committee, such candidates shall be proposed by the Board of Directors or the supervisory committee by way of a proposed resolution to the general meeting in writing;

(3)   the manner in which Independent Directors shall be nominated and the procedure for such nomination shall be in compliance with the relevant provisions of the Rules;

(4)   written notices of the intention to nominate candidates for election as Directors or supervisors and of the nominees' acceptance of such nominations and relevant written materials providing information on such nominees shall be sent to the Company at least seven days before the date of the relevant general meeting. The Board of Directors and the supervisory committee shall provide the biographies and background of the candidates for election as Directors and supervisors to shareholders;

(5) the time period allowed by the Company for the submission of the aforesaid notices and documents by the relevant nominators and nominees (which shall commence from the next day after the date of issue of the notice of the relevant general meeting) shall be no less than seven days;

(6) voting in respect of each of the candidates for election as Directors and supervisors shall be conducted separately at the relevant general meeting; and

(7) in relation to the casual appointment of additional Directors or supervisors, the Board of Directors or the supervisory committee shall put forward a proposal for the election or replacement of Directors or supervisors for consideration at a general meeting.

Necessary adjustments may be made to the above provisions if cumulative voting is applicable to the election of Directors and supervisors.

**Article 52**   Independent Directors of the Company shall be nominated in following manner and in compliance with the following procedure:

(1) The Board of Directors, the supervisory committee, and shareholders individually or jointly holding more than 1% of the issued shares of the Company shall have the right to nominate candidates for election as Independent Directors at general meetings;

(2) The nominator of an Independent Director shall obtain the consent of the nominee before making a nomination. The nominator shall have adequate knowledge of the profession, education, professional title and detailed work experience of, and concurrent positions held by the nominee. The nominator shall express his views on the competence and independence of the nominee as an Independent Director;

(3) Prior to the general meeting for the election of Independent Directors, the Board of Directors of the Company shall announce the above information in accordance with the relevant provisions;

(4)   Dissenting opinions of the Board of Directors with regard to such nominees, if any, shall be submitted in written form.

**Article 53**   The lists of candidates for election as Directors and supervisors shall be submitted to the relevant general meetings in the form of proposed resolutions.

For voting at a general meeting in relation to the election of Directors and supervisors, the cumulative voting system may be adopted in accordance with the provisions of the Articles of Association or a resolution of the general meeting.

The cumulative voting system referred to in the preceding paragraph means a system used in the election of Directors or supervisors at a general meeting where the holder of each share shall have such number of votes as is equivalent to the number of Directors or supervisors to be elected, which votes may be cast for a single candidate. The Board of Directors shall make an announcement to shareholders concerning the biographies and background of the candidates for election as Directors and supervisors in accordance with the provisions of the Listing Rules and the Articles of Association.

**Article 54**   Save for the accumulative voting system, all proposals shall be voted at the general meeting separately. Where there are different proposals for the same matter, such proposals shall be voted upon according to the order in which they are proposed. Unless a general meeting is suspended or no resolution can be adopted due to force majeure or other special reasons, no proposal shall be set aside or rejected for voting at the general meeting.

**Article 55**   When considering a proposed resolution at the general meeting, no change shall be made thereto. Otherwise, any change made thereto shall be treated as a new proposed resolution which shall not be voted upon at such general meeting.

**Article 56**   The same vote may only be cast once at the venue of a general meeting, or by online voting or by other means. In the event of multiple casting of the same vote, only the outcome of the first casting of such vote shall be counted.

**Article 57**    In the event of a poll at a general meeting, before the relevant proposed resolution is voted on at the general meeting, two representatives of the shareholders shall be elected to take part in counting the votes and scrutinizing the conduct of the poll. Any shareholder who is interested in the matter under consideration and his proxy shall not take part in counting the votes or scrutinizing the conduct of the poll.

When the relevant proposed resolution is being voted on at the general meeting, the shareholders' representatives and supervisors' representatives shall be jointly responsible for counting the votes and scrutinizing the conduct of the poll, and the voting result shall be announced at the meeting. The voting results relating to such proposed resolution shall be recorded in the minutes of the meeting.

**Article 58**    The chairman of a general meeting shall determine whether or not a resolution tabled at the general meeting has been adopted. His decision shall be final and conclusive and shall be announced at the meeting and recorded in the minutes of the meeting.

**Article 59**    Shareholders attending a general meeting shall vote for, against or abstain from voting in respect of resolutions tabled at the meeting.

Where ballot papers have not been completed or have been incorrectly completed or are illegible or have not been cast, the relevant shareholders shall be deemed to have abstained from voting, in respect of the number of shares they hold.

**Article 60**    In the event that the chairman of a general meeting has any doubt as to the voting result in respect of a resolution tabled at the meeting, he may check the numbers of relevant votes cast. If the chairman of the meeting fails to do so, any shareholder or proxy present at the meeting who objects to the result announced by the chairman of the meeting shall have the right to demand that the numbers of relevant votes cast be checked immediately after the declaration of the voting result, in which case the chairman of the meeting shall have the numbers of relevant votes cast checked immediately.

**Article 61**     In the event that the numbers of votes cast are checked at a general meeting, the results of such checking shall be recorded in the minutes of the meeting.

Minutes shall be kept of the resolutions of general meetings in respect of the matters considered thereat, which shall be signed by the Directors present thereat.

The minutes of a general meeting together with the register of attendance signed by shareholders present at the meeting and the proxy forms for proxies attending the meeting shall be kept at the address of the Company.

**Article 62**     The resolutions of a general meeting shall be announced promptly pursuant to the requirements of the Listing Rules, and the relevant announcement shall indicate the number of shareholders and proxies that attended the meeting, the total number of voting shares represented by them, the percentage of such voting shares in relation to the total number of voting shares in the Company, the total number of shares entitling to attend the general meeting but shall abstain from voting for a resolution pursuant to the Listing Rules, the total number of shares held by the holders who shall abstain from voting pursuant the Listing Rules, the voting method, the total number of shares actually voted for and against a resolution, and detailed contents of each resolution passed.

**Article 63**     Where a proposed resolution has not been adopted or a resolution of a previous general meeting has been modified in the current general meeting, the same shall be noted in the announcement of the resolutions of the general meeting.

**Article 64**     Where a proposed resolution in relation to the election of Directors or supervisors has been adopted at a general meeting, the appointment of the new Directors or supervisors shall take effect at the time stipulated in the relevant resolution.

**Article 65**     Where a proposed resolution in relation to the payment of cash dividends, the issue of bonus shares or the capitalisation of capital reserves has been passed at a general meeting, the Company shall implement the specific plans after the conclusion of the general meeting.

**Article 66**     Shareholders may inspect copies of the minutes of general meetings free of charge during the business hours of the Company. Where any shareholder requests the Company to provide copies of such minutes, the Company shall send such copies within seven days after receipt of a reasonable charge.

## CHAPTER VII   SPECIAL PROCEDURES FOR VOTING BY CLASS SHAREHOLDERS

**Article 67**     Shareholders holding different classes of shares shall be class shareholders.

Class shareholders shall enjoy rights and assume obligations pursuant to the provisions of laws, administrative regulations and the Articles of Association.

**Article 68**     Any variation or abrogation of the rights of any class of shareholders proposed by the Company shall be approved by a special resolution of a general meeting and by the shareholders of the affected class at a separate class meeting convened in accordance with these Rules.

**Article 69**     The following circumstances shall be deemed to be circumstances where the variation or abrogation of the rights of shareholders of a certain class is involved:

(1)     increasing or decreasing the number of shares of that class, or increasing or decreasing the number of shares of another class having the same or more rights of or to voting, distribution or other privileges when compared with shares of such class;

(2)     converting all or part of the shares of such class into shares of other classes, or converting all or part of the shares of other classes into shares of such class or granting rights to effect such conversion;

(3)   removing or reducing rights to accrued dividends or cumulative dividends attached to shares of such class;

(4)   reducing or removing the right to receive priority dividends or, in the event of the liquidation of the Company, to receive priority distribution of property attached to shares of such class;

(5)   increasing, removing or reducing the right of conversion, options, voting rights, the right to transfer, priority in placement and the right to acquire securities of the Company attached to shares of such class;

(6)   removing or reducing the right to receive sums payable by the Company in particular currencies attached to shares of such class;

(7)   creating a new class of shares having the same or more rights of or to voting, distribution or other privileges when compared with the shares of such class;

(8)   imposing restrictions on the transfer or ownership of the shares of such class or increasing such restrictions;

(9)   issuing subscription rights or share conversion rights in respect of shares of such class or another classes;

(10)  increasing the rights and privileges of shares of another classes;

(11)  proposing to restructure the Company where the proposed restructuring scheme will result in different classes of shareholders having to assume disproportionate liabilities in such restructuring;

(12)  varying or repealing the terms provided in this chapter.

**Article 70**  Shareholders of the affected class, whether or not having the right to vote at general meetings, shall have the right to vote at the relevant class meeting in relation to any of the matters under Articles 69(2) to (8) and Articles 69(11) to (12) of these Rules, but interested shareholders shall not be entitled to vote at the relevant class meeting.

Interested shareholders mentioned in the preceding paragraph shall have the following meanings:

(1)  in the case of an offer by the Company to repurchase its own shares to all shareholders on a pro rata basis or a repurchase by the Company of its own shares on a stock exchange in accordance with the provisions of the Articles of Association, "interested shareholder" shall mean the controlling shareholder as defined in the Articles of Association;

(2)  in the case of a repurchase by the Company of its own shares by an off-market agreement in accordance with the provisions of the Articles of Association, "interested shareholders" shall mean the shareholders connected with such agreement;

(3)  in the case of a proposed restructuring of the Company, "interested shareholder" shall mean a shareholder of a class assuming a smaller proportion of liabilities than the other shareholders of that class or who has interests different from those of the other shareholders of the same class.

**Article 71**  A resolution of a class meeting shall be passed in accordance with these Rules by at least a two-thirds majority calculated on the basis of the voting rights held by the shareholders present and entitled to vote at the class meeting.

**Article 72**  Written notice of a meeting of any class of shareholders of the Company shall be issued 45 days prior to the date of the class meeting to all shareholders of such class whose names appear on the register of members, specifying the matters to be considered at and the date and place of the meeting. Shareholders who intend to attend the meeting shall deliver to the Company written replies of their intention to attend 20 days prior to the date of the meeting.

If the number of voting shares represented by the shareholders who intend to attend such meeting reaches more than one-half of the total number of voting shares of such class, the Company may hold such class meeting; otherwise, the Company shall again notify the relevant shareholders, by way of announcement within five days, of the matters to be considered at and the date and place of the meeting. After such announcement has been made, the Company may then hold the class meeting.

**Article 73**  Notice of a class meeting only needs to be given to shareholders entitled to vote thereat.

The procedure for class meetings shall be as similar as possible to that for general meetings, and the provisions in the Articles of Association relating to the procedure for general meetings shall apply to class meetings.

**Article 74**  In addition to holders of shares of other classes, the holders of domestic-invested shares and holders of overseas listed foreign-invested shares are deemed to be different classes of shareholders.

The special procedures for voting by class shareholders shall not apply in the following circumstances:

(1)  where the Company issues, subject to approval by a special resolution of a general meeting, domestic-invested shares and overseas listed foreign-invested shares once every 12 months, either separately or concurrently, and the numbers of domestic-invested shares and overseas listed foreign-invested shares proposed to be issued do not exceed 20% of its issued domestic-invested shares and overseas listed foreign-invested shares respectively;

(2)  where the Company's plan to issue domestic-invested shares and overseas listed foreign-invested shares at the time of incorporation is carried out within 15 months from the date of approval by the securities regulatory authorities of the State Council.

## CHAPTER VIII SUPPLEMENTARY PROVISIONS

**Article 75**     Unless the context otherwise requires, any reference to an "announcement" in these Rules shall, in respect of an announcement to be issued to Shareholders or required to be issued in Hong Kong pursuant to relevant regulations and the Articles of Association, be a reference to an announcement which must be published on relevant websites as required by relevant Listing Rules.

Unless otherwise provided for in these Rules, notices issued by the Company to holders of overseas listed foreign-invested shares in the form of announcement shall be published on the websites of The Stock Exchange of Hong Kong Limited and the Company respectively on the same date as required by the Listing Rules.

Any supplementary notice of a general meeting to be given under these Rules shall be published in or on the same designated websites as those on which the notice of such meeting was published.

**Article 76**     Matters not covered in these Rules shall be dealt with in accordance with relevant national laws, administrative regulations and rules, Listing Rules and the Articles of Association. In the event that these Rules are in conflict with any laws, administrative regulations, rules to be promulgated by relevant departments or authorities of the PRC or the Listing Rules or any lawful amendments to the Articles of Association, the laws, administrative regulations, rules to be promulgated by relevant departments or authorities of the PRC, the Listing Rules and the Articles of Association shall prevail, and corresponding amendments to theses Rules shall be made and submitted to a general meeting for consideration and approval.

**Article 77**     In these Rules, any reference to "more than" a number shall include the number itself, whereas any reference to "less than" a number shall not include the number itself.

**Article 78**     These Rules shall be interpreted and amended by the Board of Directors in accordance with the Company Law, administrative regulations, the Listing Rules, the Articles of Association and other relevant requirements.

**Article 79**     These Rules shall be appended to the Articles of Association and shall become effective upon the consideration and approval at the general meeting.

**APPENDIX II**:

# RULES OF PROCEDURE FOR BOARD MEETINGS

**Article 1**     **Purpose**

In order to further regulate the transaction of business and decision-making procedures of the Board of Directors of China National Building Material Company Limited* (hereinafter referred to as the "Company"), procure the Directors and the Board of Directors to effectively perform their duties and enhance the Board of Directors in terms of standardized operations and efficiency in decision-making, the Company has formulated these procedural rules (hereinafter referred to as the "Rules") in accordance with the Company Law of the People's Republic of China (hereinafter referred to as "Company Law"), the Securities Law of the People's Republic of China (hereinafter referred to as "Securities Law"), the listing rules of stock exchanges on which the Company's shares are listed (hereinafter referred to as the "Listing Rules"), the articles of association of China National Building Material Company Limited* (hereinafter referred to as the "Articles of Association") and other relevant rules and regulations.

**Article 2**     **The Secretariat of the Board**

The Secretariat of the Board is established by the Board of Directors which is responsible for attending to the daily affairs of the Board of Directors.

**Article 3**     **Regular Meetings**

The meetings of the Board of Directors shall be in the form of either regular meetings or interim meetings.

At least two regular meetings of the Board of Directors shall be held each year which shall be held in principle once per half year and be convened by the Chairman of the Board, All Directors shall be noticed fourteen days before holding the regular meetings.

When in emergency, an extraordinary meeting of the board of Directors may be held as proposed by more than one third (inclusive of one third) of the Directors or the general manager (the president) with five days notice before such meeting.

The Board shall hold four meetings not by way of circulation of written proposals (including regular and extraordinary meetings). Such meetings shall be held on-site, through telephone conference or similar communication equipment so as to meet the needs of each Director for immediate communication.

**Article 4**       **Proposals for Regular Meetings**

Before the notice of a regular meeting of the Board of Directors is dispatched, the Secretariat of the Board shall seek the opinions of the specialized committees of the Board of Directors, the Directors and the president in an adequate manner to form preliminary resolutions for the meeting to be submitted to the Chairman of the Board who shall finalize such proposals.

Before finalizing the proposals, the Chairman of the Board shall, where necessary, seek the opinions of the president, deputy general managers (vice president) and other senior management members.

Proposals included in the meeting agenda shall be drafted by the proponent or relevant functional departments of the Company, and reviewed and confirmed by the proponent. Upon receiving the proposals and relevant materials reviewed and confirmed by the proponent, the Secretariat of the Board shall forward it to the Secretary of the Board on the same day for standardization and compliance review. The proponent or the proposing department shall revise the proposals or provide additional relevant materials based on the review opinion of the Secretary of the Board. All formal proposals of the Board of Directors shall be submitted to the Secretary of the Board three days prior to the meeting of the Board of Directors or its specialized committees.

The Secretary of the Board shall submit the documents subject to the consideration of a specialized committee to members of the specialized committee and other related persons three days prior to the relevant meeting of the specialized committee. The agenda of a meeting of the Board of Directors and all proposals shall be submitted to all the Directors three days prior to the meeting of the Board of Directors.

Amendments to the documents relating to a meeting of the Board of Directors, if necessary, shall be made in compliance with the requirements under Article 10 after such documents have been dispatched in accordance with the timeframe provided in the preceding paragraph.

**Article 5**      **Interim Meetings**

The Board of Directors shall convene an interim meeting in any of the following circumstances:

(1)   when proposed by shareholders representing 10% or more of the voting rights in the Company;

(2)   when proposed by more than one third of the Directors;

(3)   when proposed by the Supervisory Committee;

(4)   when deemed necessary by the Chairman of the Board;

(5)   when proposed by more than one-half of the Independent Directors;

(6)   when proposed by the president;

(7)   any other circumstances as prescribed by relevant laws and regulations, Listing Rules or by the Articles of Association.

**Article 6**    **Proposing Procedures for Interim Meetings**

Where an interim meeting of the Board of Directors is proposed in accordance with the provisions set out in the preceding article, a written proposal signed under the hand or seal of the proponent shall be submitted through the Secretariat of the Board or directly to the Chairman of the Board. The following shall be specified in the written proposal:

(1)  the name of the proponent;

(2)  the reasons for the proposal or objective facts/causes on which the proposal is based;

(3)  the time or timeframe, venue and manner at, within or in which the proposed meeting is to be held;

(4)  proposed resolutions in clear and specific terms;

(5)  the contact information of the proponent and the date of the proposal, etc.

The proposed resolutions shall be concerning matters that fall within the terms of reference of the Board of Directors as prescribed in the Articles of Association, and be submitted together with the relevant materials.

After receiving the aforesaid written proposal and the relevant materials, the Secretariat of the Board shall, on the date of receipt, forward such proposal and materials to the Secretary of the Board for standardization and compliance review. If the Secretary of the Board considers the contents of the proposed resolutions not clear and not specific, or considers the relevant materials insufficient, the Secretary of the Board may request the proponent to revise or supplement the relevant contents. Upon completion of the review by the Secretary of the Board, the written proposal and the relevant materials shall be submitted to the Chairman of the Board for review and finalizing.

The Secretary of the Board shall submit the documents subject to the consideration of a specialized committee to members of the specialized committee and other related persons three days prior to the relevant meeting of the specialized committee. The agenda of a meeting of the Board of Directors and all proposals shall be submitted to all the Directors three days prior to the proposed meeting of the Board of Directors.

A meeting of the Board of Directors shall be convened by the Chairman of the Board within 10 days after the receipt of a proposal. The Chairman of the Board shall preside over the meeting.

**Article 7        Convening and Presiding over the Meeting**

The meeting of the Board of Directors shall be convened and presided over by the Chairman of the Board. Where the Chairman of the Board is unable or fails to perform his duties, one Director designated by the Chairman of the Board shall perform his duties; where the Chairman of the Board fails to designate such a Director, one of the Directors to be elected by more than half of the Directors shall perform his duties.

**Article 8        Notice of Meeting**

To convene a regular or interim meeting of the Board of Directors, the Secretariat of the Board shall, in accordance with the request of the convener of the meeting, submit a notice of the meeting to all Directors, supervisors, the president and the Secretary of the Board through direct delivery, e-mail, telegraph, telex, facsimile, express post, registered post or any other means 14 days in advance in case of a regular meeting or 5 days in advance in case of an interim meeting.

Where the circumstance is urgent and requires an interim meeting of the Board of Directors to be held as soon as practicable, the notice of the meeting may be given at any time by phone or other verbal means, but the convener shall make explanations at the meeting.

**Article 9**      **Contents of the Notice of Meeting**

A written notice of meeting shall at least include:

(1)  the time and venue of the meeting;

(2)  the form in which the meeting is to be held;

(3)  the matters to be considered (the proposals to be tabled at the meeting);

(4)  the convener and the chairman of the meeting and, in the case of an interim meeting, the proponent of the interim meeting as well as the relevant written proposal;

(5)  documents needed for Directors to vote;

(6)  the requirement that the Directors shall attend the meeting in person or appoint another Director as his proxy to attend the meeting;

(7)  the contact person and contact method;

(8)  the date of the notice.

A verbal notice of meeting shall at least include the contents set out in (1) and (2) above, as well as explanations for the need to convene an interim meeting of the Board of Directors as soon as possible under urgent circumstances.

In principle, a meeting of the Board of Directors shall not consider matters not set out in the notice of the meeting. Where the addition of a new item to the agenda on an ad hoc basis is required, the consent of over half of the Directors present has to be obtained before such new item may be considered and put forward for voting.

**Article 10        Alterations to the Notice of Meeting**

After a written notice of a regular meeting of the Board of Directors is given, if such details as the time and venue of the meeting need to be changed or the proposed resolutions for the meeting are to be increased, revised or cancelled, a written notice of changes specifying the circumstances, the relevant details of the new proposals and the relevant materials shall be given three days before the scheduled date of the meeting. If the meeting is less than three days away, the meeting shall be postponed accordingly or, subject to the approval of all attending Directors, held as originally scheduled.

After a notice of an interim meeting of the Board of Directors is issued, if such details as the time and venue of the meeting need to be changed or the proposed resolutions for the meeting are to be increased, changed or cancelled, prior approval of all the attending Directors shall be obtained and corresponding records shall be made.

**Article 11        Holding of the Meetings**

A meeting of the Board of Directors shall be held only when over half of the Directors attend the meeting. If a quorum cannot be formed as a result of Directors' refusal to attend or Directors' absence without reasons, the Chairman of the Board and the Secretary of the Board may report such circumstances to the regulatory authority.

Except for the cases where the supervisors are required to abstain from attending pursuant to laws, Listing Rules and the Articles of Association, they may attend at the meetings of the Board of Directors (without the right to vote). The president shall attend at the meetings of the Board of Directors (without the right to vote). Vice president and the Secretary of the Board shall, if they are not Directors of the Company, attend meetings of the Board of Directors (without the right to vote). If considered necessary, the chairman of a Board meeting may notify other relevant persons to attend at the meeting (without the right to vote).

**Article 12**      **Attendance in Person or by Proxy**

Directors shall attend a meeting of the Board of Directors in person. A Director who is not able to attend the meeting due to certain reasons may authorise another Director in writing to attend the meeting on his behalf. Such written authority shall specify the name(s) of the proxy, matters of entrustment, the scope of authorization and its period of validity, and shall be signed or sealed by the appointing Director.

In case a Director authorizes any other Director to sign a written confirmation for a regular report on his behalf, he shall make a special authorization in such written authority.

The Director so authorized shall submit the written authority to the chairman of the meeting, stating the details of his authority.

A Director attending a Board meeting on behalf of another Director shall exercise the rights of a Director within the scope of authorization. If a Director does not attend a meeting of the Board of Directors, and does not authorize any representative to attend the meeting, he/she shall be deemed to have waived his voting right in the meeting.

**Article 13**      **Restrictions on Attendance by Proxy**

The following principles shall be observed by Directors appointing proxies to attend meetings of the Board of Directors and the proxies so appointed:

(1)  where a related (connected) transaction is to be considered at a Board meeting, a Director who is not a connected party shall not appoint a Director who is a connected party to attend the meeting on his behalf, and a Director who is a connected party shall not accept such appointment by any Director who is not a connected party;

(2)  an Independent Director shall not appoint any Non-independent Director to attend a Board meeting on his behalf, and a Non-independent Director shall not accept such appointment by any Independent Director;

(3)  a Director shall not appoint any other Director to attend a Board meeting with full discretion to act on his/her behalf without stating his opinions and voting intentions in respect of the proposals to be tabled at the meeting, and such other Director shall not accept such appointment with unclear authorization;

(4)  a Director shall not accept the appointment by over two Directors, or appoint any Director who has accepted the appointment by two other Directors to attend the meeting on their behalf.

**Article 14      Manner in which a Meeting is Held**

In principle, meetings of the Board of Directors shall be held on-site. When necessary, a Board meeting may also be held and voting thereat conducted by way of video or telephone conferencing, facsimile, mail or e-mail, etc. subject to the consent of the convener (chairman) and the proponent of the meeting and provided that the Directors are able to fully express their opinions. A meeting of the Board of Directors can also be held on-site and simultaneously by other means. Subject to the Articles of Association, the Company Law, the Listing Rules and other laws and regulations, the Directors can be deemed as attending a meeting of the Board of Directors in person if they attended a meeting through electronic channels such as telephone or video conference, etc.

In the case of any meeting of the Board of Directors not held on-site or where any Directors attending the meeting are not physically present at the meeting, the number of attending Directors shall be calculated having regard to the Directors who are present by way of video conferencing, the Directors who have expressed opinions by way of telephone conferencing, valid documents actually received within the prescribed period by way of facsimile, mail or e-mail or written confirmation letters submitted by Directors after the meeting confirming that they have attended the meeting.

Subject to the approval of the Chairman of the Board, the holding of a meeting of the Board of Directors may be replaced by the circulation of written proposals. Generally only under urgent circumstances where a meeting of the Board of Directors cannot be held on-site or by way of telephone or video conferencing due to certain reasons may the holding of the meeting be replaced by the circulation of written resolutions. Where the holding of a Board meeting is to be replaced by the circulation of written resolutions, subject to the approval of the Chairman of the Board, the Secretary of the Board may distribute the relevant resolutions at any time provided that the Directors shall be given reasonable time for consideration and decision making. Directors' opinions expressed in respect of the resolutions considered in such manner shall be recorded and communicated to all Directors by the Secretary of the Board. The draft proposals shall be delivered to each Director through personal delivery, mail, facsimile or e-mail. Where the number of Directors signing one or several copies of the same resolution reaches the number required by law for making the relevant decision, such resolution shall, upon delivery to the Secretary of the Board by any of the said methods, become a resolution of the Board, and no further meeting of the Board of Directors shall have to be convened.

Resolutions of the Board of Directors may not be passed by way of circulation of written proposals in respect of:

(1)  matters subject to the approval of the shareholders' meeting as provided by the Listing Rules, the Articles of Association or other laws or administrative regulations;

(2)  regular meetings of the Board of Directors;

(3)  matters to be considered by the Board of Directors for which, in the opinion of the Board of Directors, any substantial shareholder or any Director has a material conflict of interest;

(4)  appointment or dismissal of company secretary or other matters in respect of which resolutions of the Board of Directors shall not be passed by way of circulation of written proposals pursuant to the Listing Rules.

**Article 15**     **Procedures of Board Meetings**

The chairman of a Board meeting shall request all the Directors attending the meeting of the Board of Directors to clearly express their views in respect of all the proposals tabled at the meeting.

The chairman of Board meeting shall in a timely manner stop any Director from obstructing the normal conduct of the meeting or interrupting while other Directors are speaking at the meeting.

Unless it is agreed upon by over half of the Directors present, a meeting of the Board of Directors shall not vote on any proposal not included in the notice of the meeting. A Director attending a meeting of the Board of Directors as the proxy of another Director shall not vote on any proposal not included in the notice of the meeting on behalf of such other Director.

**Article 16**     **Expressing Opinions**

The Directors shall seriously read the relevant meeting materials, and independently and prudently express their opinions on the basis of a full understanding thereof.

A Director may, prior to a Board meeting, inquire the Secretariat of the Board, the convener of the meeting, the president, vice president and other senior management members, all specialized committees, the relevant accounting firm, the relevant legal firm and other relevant persons and institutions about necessary information for decision-making, and may also make a proposal to the chairman during the course of the meeting for requesting such persons or the representatives of such institutions to give relevant explanations at the meeting.

**Article 17**     **Voting at Board Meetings**

After each proposal has been fully discussed, the chairman shall in due course submit it for voting by the attending Directors. A show of hands shall be adopted at meetings of the Board of Directors and each Director shall have one vote.

Directors may vote for, against or abstain from voting in respect of a resolution. The attending Directors shall choose any one of the aforesaid voting intentions. If a Director does not choose any intention or chooses two or more intentions simultaneously, the chairman shall require such Director to make a new choice. If such Director refuses to do so, he/she shall be deemed as abstaining from voting. If any Director leaves the venue of a Board meeting in the middle of the meeting and without making a choice, he/she shall be deemed to have abstained from voting.

**Article 18    Calculation of Voting Results**

The chairman of a Board meeting shall announce the voting results at the meeting. Where any Director votes after the chairman has announced the voting results or after the deadline for voting, such vote shall not be counted in the voting results.

**Article 19    Passing of Resolutions**

Except for the circumstances prescribed in Article 20 of these Rules, proposals tabled at a meeting of the Board of Directors may be passed only with the consent of over half of all the Directors of the Company. When the number of votes for and against a proposal is the same, the chairman of the Board shall be entitled to cast one more vote. Where the consent of more Directors is required by any provision in any law, administrative regulations or the Articles of Association for the passing of resolutions by the Board of Directors, such provision shall prevail.

In case there is any conflict between different resolutions passed in terms of content and substance, the resolution passed at a later time shall prevail.

**Article 20    Abstaining from Voting**

A Director shall abstain from the voting on a proposal in any of the following circumstances:

(1)   where the Director's abstention is required by the Listing Rules;

(2)   where the Director is of the view that he/she should abstain;

(3) any other circumstances under which the Director shall abstain as a result of his being connected to the enterprise involved in the proposal as prescribed in the Articles of Association.

Under circumstances where any Director abstains from voting, the relevant meeting of the Board of Directors can be held if over half of the non-connected Directors attend the meeting, and the relevant resolution shall be passed by over half of the non-connected Directors. Where there are less than three non-connected Directors present at the meeting, voting on the relevant proposal shall not be conducted, and the relevant matters shall instead be submitted to the general meeting for consideration.

## Article 21    Compliance with Scope of Authority

The Board of Directors shall act in strict compliance with the authority conferred on it by the general meeting and the Articles of Association, and shall not pass any resolution beyond its authority.

## Article 22    Stay of Voting

Where more than half of the attending Directors or more than two Independent Directors consider that any resolution is not clear and specific, or that such Directors are not able to make a judgment on the relevant matter due to other reasons such as the insufficiency of conference materials, such Directors may jointly request that the relevant meeting of the Board of Directors or the consideration of certain matters to be considered at such meeting be stayed, and the Board of Directors shall accept such request.

The Directors proposing the stay of voting shall put forward specific requirements to be met by any resolution re-submitted for consideration.

## Article 23    Audio Records of Meeting

Audio records, where necessary, may be made throughout a meeting of the Board of Directors held on-site or by way of video or telephone conferencing.

**Article 24**     **Minutes**

The Secretary of the Board shall arrange the staff members of the Secretariat of the Board to prepare minutes for meetings of the Board of Directors. Such minutes shall include details of the following:

(1)   the session/number, time, venue of the meeting and the manner in which it is held;

(2)   the issue of the notice of the meeting;

(3)   the convener and the chairman of the meeting;

(4)   the names of the Directors present in person and the names of the proxies present at the meeting;

(5)   the proposals considered at the meeting, the major comments and opinions of each Director on the relevant matters and his voting intentions in respect of the proposals tabled at the meeting;

(6)   the voting results for each of the proposals tabled at the meeting (specifying the numbers of votes for and against and abstentions in respect of such proposals);

(7)   other matters the recording of which is considered necessary by the attending Directors.

**Article 25**     **Meeting Summary and Resolution Records**

In addition to minutes, the Secretary of the Board may, where necessary, also arrange the staff members of the Secretariat of the Board to prepare concise summaries of Board meetings, and to prepare separate records of the resolutions passed at Board meetings on the basis of voting results.

**Article 26      Signature of Directors**

The minutes of and the resolutions passed at each meeting of the Board of Directors shall be submitted to the attending Directors for review immediately after the meeting. The attending Directors shall sign and confirm such minutes of the meeting and resolutions for themselves and on behalf of the Directors who appointed them to attend the meeting on their behalf. If any Director holds dissenting opinions on such minutes of the meeting or resolutions, he may make a written explanation when signing. Where necessary, the Director shall promptly report the same to the regulatory authority or may make a public declaration. If the minutes of a Board meeting and the resolutions passed thereat cannot be submitted to the attending Directors for their review immediately after the meeting, the Secretary of the Board shall provide the same to the attending Directors within two days after the meeting for their review. Save for any omission, Directors shall not request to include in the minutes of a Board meeting any opinions not expressed by them at such meeting and relevant explanations.

If a Director does not sign and confirm in accordance with the preceding paragraph, and does not provide a written explanation in respect of his/her dissenting opinions or report the same to the regulatory authority or make a public declaration relating thereto, such Director shall be deemed to be in total agreement with the contents of the relevant minutes and resolutions.

If a meeting of the Board of Directors is held by way of telephone or video conferencing or by means of any other similar communication devices, the minutes of the meeting and the resolutions passed thereat may be signed by way of facsimile.

If the issuance of a single resolution of the Board of Directors in respect of a matter considered at a meeting of the Board of Directors is required, such resolution shall be drafted by the functional department of the Company which is in charge of the matter and submitted together with the relevant proposal. Such resolution shall be submitted to the Directors for signature after examination by the Secretary of the Board.

**Article 27**     **Announcement of Resolutions**

The announcement of the resolutions passed by the Board of Directors shall be made by the Secretary of the Board according to the relevant provisions of the stock exchange on which the Company's shares are listed. Before the announcement of such resolutions, the attending Directors, the persons attending without the right to vote at the relevant meeting, the personnel for recording and other services, etc. shall be obliged to keep the resolutions confidential.

**Article 28**     **Implementation of Resolutions**

The chairman of the Board shall procure the relevant persons to implement the resolutions of the Board of Directors, check the implementation of such resolutions, and report to the Directors on the implementation of resolutions in time.

**Article 29**     **Keeping of Meeting Records**

Records of meetings of the Board of Directors, including the notices of such meetings, conference materials, letters of authority in relation to the appointment of proxies, the audio records of such meetings, the minutes of such meetings, meeting summaries (if any), resolution records (if any) and resolutions, etc. as signed and confirmed by the attending Directors, etc., shall be maintained by the Secretary of the Board.

The records of the meetings of the Board of Directors shall be kept for 15 years. Where any Director needs to inspect such records, the Company Secretary shall allow such Director to inspect the relevant records in a reasonable manner and at a reasonable time upon receipt of a reasonable notice from such Director.

**Article 30**      **Supplementary Provisions**

Matters not covered in these Rules shall be dealt with in accordance with relevant national laws, administrative regulations and rules, Listing Rules and the Articles of Association. In the event that these Rules are in conflict with any laws, administrative regulations, rules to be promulgated by relevant departments or authorities of the PRC or the Listing Rules or any lawful amendments to the Articles of Association, the laws, administrative regulations, rules to be promulgated by relevant departments or authorities of the PRC, the Listing Rules and the Articles of Association shall prevail, and corresponding amendments to these Rules shall be made and submitted to the general meeting for consideration and approval.

In these Rules, any references to "more than" a number shall include the number itself.

These Rules shall be interpreted and amended by the Board of Directors pursuant to the laws, the Listing Rules, the Articles of Association and other relevant regulations.

These Rules shall be appended to the Articles of Association and shall become effective upon the consideration and approval at the general meeting.

**APPENDIX III**:

## RULES OF PROCEDURE FOR SUPERVISORY COMMITTEE MEETINGS

**Article 1**       **Purpose**

In order to further regulate the rules of procedure and decision-making procedures of the supervisory committee of China National Building Material Company Limited* (hereinafter referred to as the "Company"), to procure the supervisors and the supervisory committee to effectively perform their duties, and to improve the governance structure of the legal person of the Company, the Company has formulated these procedural rules (hereinafter referred to as the "Rules") in accordance with the Company Law of the People's Republic of China (hereinafter referred to as "Company Law"), the Securities Law of the People's Republic of China (hereinafter referred to as "Securities Law"), the listing rules of stock exchanges on which the Company's shares are listed (hereinafter referred to as the "Listing Rules"), the articles of association of China National Building Material Company Limited* (hereinafter referred to as the "Articles of Association") and other relevant rules and regulations.

**Article 2**       **Work Organization of the Supervisory Committee**

The Company shall establish or designate a relevant department as the work organization of the supervisory committee, for handling the daily affairs of the supervisory committee and keeping the seal of the supervisory committee.

**Article 3**       **Regular Meetings and Interim Meetings of the Supervisory Committee**

The meetings of the supervisory committee shall be in the form of either regular meetings or interim meetings.

Meetings of the supervisory committee, which should be convened by the Chairman of the supervisory committee and notify all the supervisors 10 days prior to the meetings, shall be held at least once in each of the first half and second half of the year.

An interim meeting of the supervisory committee shall be held within 10 days under any of the following circumstances:

(1)   when proposed by any of the supervisors;

(2)   at the general meeting or the meeting of the Board of Directors a resolution that is against laws, rules, regulations, various provisions and requirements of the regulatory authority, the Articles of Association, resolutions of the general meetings of the Company or other relevant provisions has been approved;

(3)   when the misconduct of Directors and senior officers may cause material damage to the Company or affect the market in a reprehensible way;

(4)   when the Company, Directors, supervisors or senior officers are sued by shareholders;

(5)   when the Company, Directors, supervisors or senior officers are punished by securities regulatory authorities or publicly denounced by the stock exchange on which the Company's shares are listed;

(6)   when required by the securities regulatory authorities;

(7)   any other circumstances as prescribed by the Articles of Association.

**Article 4**      **Proposals for Regular Meetings**

The work organization of the supervisory committee shall collect the proposals from all the supervisors and solicit the opinions of the Company's employees as necessary. When collecting proposals and soliciting opinions, it shall be clarified that it shall focus on the supervision of the standardized operation of the Company and the duties of Directors and senior officers, rather than decision-making of the Company's operation and management.

**Article 5**         **Proposing Procedures for Interim Meetings**

Where a supervisor proposes an interim meeting of the supervisory committee, a written proposal signed by the proposing supervisor shall be submitted through the work organisation of the supervisory committee or directly to the Chairman of the supervisory committee. The written proposal shall indicate:

(1)   the name of the proponent;

(2)   the reasons for the proposal or objective facts/causes on which the proposal is based;

(3)   the proposed timing or timeframe, venue and way of the meeting;

(4)   the proposals in clear and specific terms;

(5)   the contact information of the proposing supervisor and the date of the proposal, etc.

The work organization of the supervisory committee shall issue a notice of the interim meeting of the supervisory committee within three days upon receipt of supervisors' written proposals by the work organization of the supervisory committee, if conditions of convening interim meetings are fulfilled.

In the event that the work organization of the supervisory committee delays the issue of the notice of such meeting, the proposing supervisor shall, in a timely manner, report such delay to the regulatory authority.

**Article 6**         **Convening and Presiding over the Meeting**

The meeting of the supervisory committee shall be convened and presided by the Chairman of the supervisory committee. Where the Chairman of the supervisory committee is unable or fails to perform his duties, a supervisor jointly elected by not less than half of all supervisors shall convene and preside over the meeting.

**Article 7**       **Notice of the Meeting**

To hold a regular or interim meeting of the supervisory committee, the work organisation of the supervisory committee shall submit a notice of the meeting to all the supervisors through direct delivery, facsimile, e-mail or any other means 10 days in advance in case of a regular meeting and 5 days in advance in case of an interim meeting.

Where the circumstance is urgent and requires an interim meeting of the supervisory committee to be held as soon as practical, the notice of the meeting may be circulated at any time by phone or other verbal means, but the convener shall make explanations at the meeting.

**Article 8**       **Contents of the Notice of the Meeting**

A written notice of the meeting shall at least include:

(1)   the time, venue and duration of the meeting;

(2)   the matters to be considered (proposals of the meeting);

(3)   the convener and the presider of the meeting and the proponent of the interim meeting as well as the written proposals;

(4)   documents of the meeting needed for supervisors to vote;

(5)   the requirement that the supervisors shall attend the meeting in person or appoint other supervisors as proxies to attend the meeting;

(6)   the contact person and contact method;

(7)   the date of issuance of the notice.

A verbal notice of meeting shall at least include the contents set out in clauses(1) and (2) above as well as explanations for convening an interim meeting of the supervisory committee as soon as possible under urgent circumstances.

**Article 9**          **Form in which a Meeting is Convened**

In principle, the meeting of the supervisory committee shall be held on-site. When necessary, the meeting may be held via telephone, video or any other similar communication devices. During such meetings, so long as the supervisors attending the meeting can clearly hear the speeches of other supervisors and communicate with each other, all attending supervisors shall be deemed as present in person at the meeting.

During the voting on a communication basis, supervisors shall facsimile their written opinions and voting intentions on the matters reviewed together with their signatures to the work organization of the supervisory committee.

A meeting of the supervisory committee may be replaced by circulation of written proposals if the Chairman of the supervisory committee or over one-half of supervisors put forward such a proposal.

**Article 10**          **Personal Attendance and Proxy Attendance at the Meeting**

Supervisors shall attend the meeting of the supervisory committee in person. If they are not able to attend the meeting due to certain reasons, they may appoint other supervisors with letter of authorization to attend the meeting on their behalf (for independent supervisors who cannot attend the meeting in person, they should appoint other independent supervisors as their proxies).

A letter of authorization shall indicate:

(1)  names of the appointor and the proxy;

(2)  the scope of authorization of the appointor and instructions concerning the voting intentions for the proposals;

(3)  the signature of the appointor and the date, etc.

The appointed supervisor attending the meeting shall exercise the rights of a supervisor within the scope of authorization. If a supervisor does not attend a meeting of the supervisory committee, and does not authorize any representative to attend the meeting, he/she shall be deemed to have waived the voting right in the meeting.

**Article 11**  **Review Procedures of the Meetings**

The presider shall request all the attending supervisors to expressly specify their views on each proposal.

The presider of the meeting shall, in response to the supervisors' proposals, request the Directors, senior officers, other staff of the Company or business personnel of relevant intermediaries to attend the meeting and respond to the relevant inquires.

**Article 12**  **Resolution of the Supervisory Committee**

Voting by a show of hands shall be adopted at the meeting of the supervisory committee and each supervisor shall only have one vote.

Supervisors may vote for or against a resolution. They may also choose to abstain. The attending supervisors shall choose any one of the aforesaid voting intentions. If a supervisor does not choose any intentions or chooses two or more intentions simultaneously, the presider shall require such supervisor to make a new choice. If such supervisor refuses to do so, he/she shall be deemed to have abstained from voting. If any supervisor leaves the venue halfway and thus does not make a choice, he/she shall be deemed to have abstained.

A resolution of the supervisory committee shall be approved by more than two thirds of all supervisors.

**Article 13**  **Audio Records of Meetings**

Audio records may be made throughout the meeting of the supervisory committee where necessary.

**Article 14     Meeting Records**

Staff members of the work organisation of the supervisory committee shall keep minutes for on-site meetings of the supervisory committee. The minutes of the meeting shall include the following:

(1)   the number of session, time, venue of the meeting and the form in which it is convened;

(2)   the dispatch of the notice of the meeting;

(3)   the convener and the presider of the meeting;

(4)   the attendance of the meeting;

(5)   the proposals considered at the meeting, the major comments and opinions of each supervisor on the relevant matters;

(6)   the voting results of each proposal (the number of affirmative, dissenting and abstaining votes shall be specifically indicated);

(7)   other matters, the recording of which are considered necessary by the attending supervisors.

In the event of a meeting of the supervisory committee held by way of communication devices, the work organization of the supervisory committee shall compile the minutes of the meeting in accordance with the aforesaid requirements. In the event of a meeting of the supervisory committee held by circulating the written proposals, supervisors shall sign one or several copies of the resolution with the same contents, and it is not necessary to prepare any minutes of the meeting.

**Article 15**     **Signature of Supervisors**

The attending supervisors shall sign their names on the minutes of the meeting for confirmation on behalf of themselves or other supervisors who appoint them to attend the meeting. In the event that the meeting of the supervisory committee is held via telephone, video, or any other similar communication devices, such minutes may be signed by way of facsimile. If any supervisor holds dissenting opinions to the minutes of the meeting, he may make a written explanation when signing his name. Where necessary, the supervisor may report it to the regulatory authority or make a public declaration of the same in a timely manner. Save for any omission, the supervisors shall not request to include in the minutes of the meeting their opinions and explanations not expressed at the meeting of the supervisory committee.

If any supervisor refuses to sign and confirm in accordance with the preceding paragraph, and does not express his/her dissenting opinions with written explanations, report the same to the regulatory authority or deliver a public declaration, such supervisor shall be deemed to be in total agreement with the contents of the minutes of the meeting.

**Article 16**     **Announcement of Resolutions**

The resolutions approved by the supervisory committee shall be announced by the Secretary of the Board in accordance with the relevant provisions of the stock exchange on which the Company's shares are listed.

**Article 17**     **Implementation of Resolutions**

The supervisors shall procure the relevant persons to implement the resolutions approved by the supervisory committee. The chairman of the supervisory committee shall, at a future meeting of the supervisory committee, report to the supervisors on the implementation of resolutions already adopted.

**Article 18**        **Filing of Meeting Records**

The records of meetings of the supervisory committee, including the notices on the meeting, conference materials, the letters of authorization on appointing other supervisors to attend the meeting, the audio records of the meeting, the minutes of the meeting and resolutions, etc. as signed and confirmed by the attending supervisors, etc., shall be maintained by the Secretary of the Board.

The meeting records of the meeting of the supervisory committee shall be kept for 15 years.

**Article 19**        **Supplementary Provisions**

Matters not covered in the Rules shall be executed in accordance with relevant national laws, administrative regulations and rules, Listing Rules and the Articles of Association. In the event that these Rules is in conflict with any laws, administrative regulations or rules to be promulgated by relevant national departments or institutions, the Listing Rules or the Articles of Association that are legally amended, the laws, administrative regulations and rules to be promulgated by relevant national departments or institutions, the Listing Rules and the Articles of Association shall prevail, and the Rules shall be amended accordingly subject to approval by the general meeting.

In these Rules, references to "more than" a number shall include the number itself.

The Rules shall be subject to interpretation and amendments by the supervisory committee.

The Rules shall be appended to the Articles of Association and shall become effective upon consideration and approval at the general meeting.

*If there is any discrepancy between the English version and the Chinese version in respect of this document the Chinese version shall prevail.*

# EXHIBIT B



# EXHIBIT C



# EXHIBIT D

