UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>**THIS DOCUMENT RELATES TO:**<br>*Gross v. Knauf Gips KG*, *2:09-cv-6690*<br>*Amorin v. Taishan Gypsum, 2:11-cv-1672*<br>*Amorin v. Taishan Gypsum, 2:11-cv-1395*<br>*Amorin v. Taishan Gypsum, 2:11-cv-1673*<br>*Amorin v. SASAC, 2:14-cv-1727*<br>*State of Louisiana v. Knauf, 2:10-cv-340*<br>*Abner v. Taishan Gypsum, 2:11-cv-3094*<br>*Posey v. BNBM Co., 2:09-cv-6531*<br>*Morris v. BNBM Co., 2:09-cv-6530* | MDL No. 2:09-md-2047<br><br>SECTION L<br><br>JUDGE ELDON E. FALLON<br><br>MAGISTRATE JUDGE JOSEPH C. WILKINSON, JR. |

**DECLARATION OF PROFESSOR ROBIN HUI HUANG
IN SUPPORT OF CNBM GROUP'S REPLY IN SUPPORT OF CNBM GROUP'S
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

I, Professor Robin Hui Huang, of Hong Kong, a Special Administrative Region of the People's Republic of China, hereby declare:

1. I am a Professor of Law at the Faculty of Law, Chinese University of Hong Kong, currently serving as Executive Director of the Centre for Financial Regulations and Economic Development.  I am also an Adjunct Professor at the University of New South Wales, Faculty of Law; an Adjunct Professor at the China University of Political Science and Law; and a Senior Fellow in the Melbourne Law School.  I am an elected member of the Executive Council of the China Commercial Law Society.

2. I obtained a Bachelors of Law and a Masters of Law from Tsinghua University, in Beijing China, and a PhD from the University of New South Wales, in Sydney Australia.

1

3. My research focuses on, among other things, corporate law and securities regulation, with a particular focus on Chinese and comparative law. My research also focuses on Chinese law concerning corporate veil-piercing. I have authored more than ten books or book chapters in these areas, as well as dozens of articles for peer-reviewed academic journals. A copy of my curriculum vitae, taken from my profile on the Chinese University of Hong Kong website, is attached as Exhibit A.

4. I have been asked to provide my opinion on whether Beijing New Building Materials PLC's (hereinafter, "BNBM PLC") reference to China National Building Materials Group Corporation (hereinafter, "CNBM Group") as its "actual controller" or "ultimate controller" is an indication that CNBM Group controls the day-to-day business operations of BNBM PLC.

5. I have also been asked to describe the function of a company's board of supervisors, or supervisory committee, under Chinese corporate law, and to express an opinion on whether a board of supervisors or a supervisory committee would manage a company's day-to-day business operations.

6. I am fluent in the languages of Chinese and English.

*Materials Reviewed*

7. In preparing this declaration, I have reviewed the following materials provided to me by counsel for CNBM Group:

- 2005 Annual Report for BNBM PLC

- 2014 Annual Report for BNBM PLC

- 2005 Annual Report for China National Building Materials Co., Ltd. (hereinafter, "CNBM Company")

- 2014 Annual Report for CNBM Company

- Articles of Association of Taishan Gypsum Co., Ltd. (hereinafter "Taishan Gypsum")

*Summary of Opinions*

8.     I believe that BNBM PLC's reference, in its annual reports, to CNBM Group as its "actual controller" or "ultimate controller" simply reflects general ownership structure relating to BNBM PLC and CNBM Group, and does not indicate that CNBM Group controls or manages or the day-to-day operations of BNBM PLC.  Since 2005, CNBM Company has been BNBM PLC's largest shareholder.  Due to its ownership of a majority or plurality of BNBM PLC's shares since 2005, and its corresponding rights to nominate and vote for directors of BNBM PLC, CNBM Company is the controlling shareholder of BNBM PLC as that term is defined in Chinese corporate law and the Shenzhen securities regulations.  In turn, CNBM Group and other entities owned, directly and indirectly, by CNBM Group (such as CNBM Equipment & Import & Export Corporation (hereinafter, "CNBM Trading") and Beijing New Building Materials (Group) Co. (hereinafter "BNBM Group")) were CNBM Company's promoters and have owned a majority or plurality of CNBM Company's shares since 2005.  As CNBM Company states in its annual reports, CNBM Group is its controlling shareholder and parent corporation.  By referring to its "actual controller" as CNBM Group, BNBM Company is merely identifying its ultimate controlling shareholder, in other words the controlling shareholder of its controlling shareholder, up to the highest-level controlling shareholder.

9.     The requirement and function of a limited liability company's supervisory committee is specified in Articles 51 through 53 of China's Company Law.  Taishan Gypsum's Articles of Association also specify the functions of its supervisory committee, which track the functions enumerated in China's Company Law.  As defined by China's Company Law and

Taishan Gypsum's Articles of Association, Taishan Gypsum's supervisory committee would not control or manage the day-to-day business operations of the company.

*Actual Controller*

10. Pursuant to the 2014 Stock Listing Rules of the Shenzhen Stock Exchange, a controlling shareholder refers to a shareholder who owns 50% or more of a company's stock, or alternatively one who owns less than 50% but still exerts significant influence on shareholder votes due to the shareholder structure. For example, in its 2014 annual report, BNBM PLC referred to CNBM Company as its controlling shareholder because, although CNBM Company owned slightly less than 50% of its shares, CNBM Company was the single largest shareholder and could therefore exert more influence relative to smaller shareholders, whose influence is more attenuated.

11. The fact that one company is a controlling shareholder of another, however, does not justify disregarding their separate corporate existences under Chinese law, or for that matter under the corporate laws of other countries. Many corporations have controlling shareholders, either individuals or corporate entities, who own either a majority or plurality of another company's stock, or are otherwise able to exert significant influence through shareholder voting rights. However, under Chinese law, as under other legal systems, controlling shareholders cannot abuse their status to cause injury or loss to non-controlling shareholders.

12. Many securities laws and regulations in China, including the Shenzhen Stock Exchange listing rules, require a publicly-traded company to identify its actual or ultimate controllers in addition to any controlling shareholders, and to list changes to the identities of such controlling shareholders or actual controllers. The term "actual controller" appears throughout China's Securities Laws, which is the basic framework regulating the issuance and transaction of

securities in the People's Republic of China.  Article 21 of China's Company Law also refers to "actual controllers," and provides that neither controlling shareholders nor actual controllers may take advantage of their status to damage the interests of a company.  An "actual controller," in the context of Chinese corporate law, refers to an entity or individual that is not a direct shareholder of a company, but may nonetheless exert influence or control over the company through means of an investment relationship or other arrangement with a shareholder.  The disclosure requirements concerning actual controllers are meant to provide more information and transparency to public investors, who might otherwise be able to identify a company's controlling shareholder, but could lack sufficient information about the interests of the controlling shareholder to make informed investing decisions, especially if the controlling shareholder is privately owned.  In the absence of such disclosure requirements, an individual or entity could theoretically attempt to avoid being identified as a controlling shareholder by making investments through a privately-owned subsidiary, or by entering into a voting agreement with a controlling shareholder.  By requiring that a publicly-traded company disclose its "actual controllers," Chinese law and regulations ensure that public investors will be able determine the ownership structure and voting interests of any entities or individuals who may be able to exert influence over the publicly-traded company, even if those entities or individuals are not direct shareholders.

       13.     Controlling shareholders and actual controllers may undertake activities that are consistent with investor status, such as supervising finances and helping to set corporate policy, without being directly involved in day-to-day management or operations.  A company's Articles of Association delineates the rights granted to shareholders, including controlling shareholders.

14. The fact that CNBM Group is identified as BNBM PLC's "actual controller" is not an indication that CNBM Group controls the day-to-day operations of BNBM PLC. It simply indicates that CNBM Group has the ability to exert influence over BNBM PLC because CNBM Group is a controlling shareholder of CNBM Company, which in turn is a controlling shareholder of BNBM PLC. CNBM Group's status as BNBM PLC's "actual controller" does not provide evidence that CNBM Group and BNBM PLC are indistinguishable or alter egos of one another, nor does it even establish that CNBM Group purposefully exerts any direct control over BNBM PLC.

*Supervisory Committee*

15. The Supervisory Committee is a requirement imposed by China's Company Law. Specifically, Article 51 of China's Company Law (2013 revision) provides that limited liability companies must have a board of supervisors, composed of no less than three members for large-scale companies. Article 53 specifies the functions and powers of such supervisors, which include (1) examining the financial affairs of the company; (2) supervising the acts of the directors and managers to ensure they do not violate the laws, administrative rules and regulations, or articles of association of the company; (3) demanding that directors and managers make corrections if their acts are found to have damaged the interests of the company; (4) proposing the convening of extraordinary shareholders' meetings; and (5) other functions and powers as stipulated in the articles of association of the company. Article 53 also specifies that supervisors of a company shall attend meetings of the board of directors in a non-voting capacity.

16. Article 51 of the Company Law imposes restrictions on the identity of supervisors. For example, directors, managers, and chief financial officers may not serve as

supervisors, because a supervisor is responsible for ensuring that such individuals do not violate laws. Some supervisors are representatives of, and elected by, shareholders, while others are representatives of and elected by a company's employees, as specified in a company's Articles of Association.

17. Chapter Seven of Taishan Gypsum's Articles of Association, which I have reviewed, describes the existence, rights and functions of its supervisory committee. In particular, Article 102 lists the powers and duties of Taishan Gypsum's board of supervisors, which are consistent with China's Company Law. These duties include inspecting Taishan Gypsum's financial affairs; supervising directors, the general manager and other senior management personnel and proposing the removal of any directors, general manager or other senior management personnel who violate laws, regulations or Taishan Gypsum's Articles of Association; proposing the convening of extraordinary shareholders' meetings; and observing board meetings in a non-voting capacity.

18. While both China's Company Law and Taishan Gypsum's Articles of Association provide that the board of supervisors must supervise directors and senior officers to ensure they do not violate laws or regulations, supervisors are not vested with authority (under either Company Law or Taishan Gypsum's Articles of Association) to manage Taishan Gypsum's day-to-day business operations. The fact that an individual is elected as a supervisor is not an indication that the individual, or his employer, controls the day-to-day operations of a company.

19. Consistent with China's Company Law, Taishan's Articles of Association state that a supervisor must not be a director, general manager or other senior management personnel. Article 98 specifies that shareholder supervisors are elected at the shareholders' general meeting.

20. Because a shareholder supervisor is elected by shareholders, it is common for a supervisor to have some relation to a controlling shareholder. For example, shareholder supervisors are frequently directors, managers, or senior employees of a parent corporation. This would not be an indication that the parent corporation controls the day-to-day operations of a subsidiary, however.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 25, 2015 in Hong Kong.

_____

ROBIN HUI HUANG

# EXHIBIT A



ABOUT US   STUDENT INTRANET   STAFF INTRANET   WORK WITH US   CONTACT

STUDY WITH US   PEOPLE   RESEARCH & EXPERTISE   STUDENT LIFE   STUDENT CAREERS   ALUMNI & FRIENDS

### PEOPLE

Deans & Programme Directors

Academic
- Academic Staff
- Visiting Staff
- Research Staff
- Part time Teachers

Honorary Professors

Emeritus Professor

Visiting Professors

Administrative

Law Library Staff

## ACADEMIC STAFF

**PROF. HUI ROBIN HUANG 黃輝教授**
Professor 教授

| | |
|---|---|
| Tel | (852) 3943 1805 |
| Fax | (852) 2994 2505 |
| Email | robinhuang@cuhk.edu.hk |
| Office | Room 521, Faculty of Law, 5/F, Lee Shau Kee Building, The Chinese University of Hong Kong Sha Tin, NT, Hong Kong SAR |

Back to Lists

### QUICK LINKS

By Alphabetical Order

By Research Interest

View All Staff

Robin Hui HUANG is Professor of Law in the Faculty of Law, Chinese University of Hong Kong (CUHK), currently serving as Executive Director of Centre for Financial Regulation and Economic Development as well as Assistant Dean (External Affairs – Asia). Prior to joining CUHK, Professor Huang was a tenured staff member in the Faculty of Law at the University of New South Wales (UNSW), where he now holds a position of Adjunct Professor. He is also Adjunct Professor at the China University of Political Science and Law, Senior Fellow in the Melbourne Law School, as well as an elected member of the Executive Council of China Commercial Law Society. He received two bachelor degrees – in mechanical engineering and in law – and a Masters degree in law, from Tsinghua University in Beijing China, and a PhD from the Faculty of Law, UNSW.

Professor Huang specializes in corporate law, securities regulation, financial law, financial dispute resolution, and foreign investment, with a particular focus on Chinese and comparative law issues. He has written extensively in his areas of expertise, with articles published in some of the top-rated journals in the US, the UK, Australia, Canada, Hong Kong, Mainland China, and elsewhere. These include leading comparative law journals such as the *American Journal of Comparative Law*; leading international arbitration journals such as *Arbitration International*; leading specialist journals in various jurisdictions such as the *Delaware Journal of Corporate Law* (US), *Berkeley Business Law Journal* (US), *Journal of Corporate Law Studies* (UK), *Journal of Business Law* (UK), *Company and Securities Law Journal* (Australia), *Australian Journal of Corporate Law* (Australia), *Banking and Finance Law Review* (Canada); and well-regarded generalist journals such as *University of New South Wales Law Journal* (Australia), *Hong Kong Law Journal, Chinese Journal of Law [Faxue Yanjiu], Tsinghua Law Review [Qinghua Faxue]*. He has also published numerous books and book chapters with reputable publishers such as the Oxford University Press, Cambridge University Press, Kluwer Law International, Routledge, Peking University Press and Tsinghua University Press, including *Securities and Capital Markets Law in China* (Oxford University Press, 2014) and *Comparative Corporate Law: International Experiences and Suggestions for China* (Tsinghua University Press, 2011).

Professor Huang has received many awards in recognition of his excellence of research, including best conference paper prizes in Australia and China, CUHK Research Excellence Award and Young Researcher Award. His research has been supported by various research grant bodies such as Australian Research Council and Hong Kong Research Grant Council. He has held visiting posts at prestigious institutions (such

as Harvard Law School, Cambridge Law School) and has been engaged as an expert by international organizations (such as the World Bank), government agencies (such as Hong Kong Securities and Futures Commission), professional bodies (such as Hong Kong Securities Institute) and private firms.

EDUCATION AND PROFESSIONAL QUALIFICATIONS

- PhD (University of New South Wales)
- LLM (Tsinghua University)
- LLB (Tsinghua University)
- B.M.E. (Tsinghua University)
- Attorney at Law (PRC)

AWARDS

- Young Researcher Award, CUHK, 2012
- Research Excellence Award, CUHK, 2010-2011
- The Prize for Excellent Conference Paper, China Commercial Law Society Conference, 2008
- The Prize for Best Conference Paper, Australian Corporate Law Teachers Association Conference, 2005

RESEARCH INTERESTS

- Company Law, Securities Regulation, Financial Law
- Chinese Law & Comparative Law
- Law and Economics
- Empirical Legal Study

SELECTED PUBLICATIONS

Books

- *Securities and Capital Markets Law in China* (UK, Oxford University Press, 2014)
- *Institutional Structure of Financial Regulation: Fundamental Theories and International Experiences* (co-editor: Professor Dirk Schoenmaker) (London, Routeledge, 2015)
- *Comparative Corporate Law: International Experiences and Suggestions for China* (Beijing, Tsinghua University Press, 2011).
- *International Securities Markets: Insider Trading Law in China* (London, Kluwer Law International, 2006) (reviewed and discussed at a high-level international symposium held at George Mason University, Washington D.C., USA. Two book reviews were later published in (2008) 4(2) *Journal of Law, Economics and Policy*).

Book Chapters

- 'Shadow Banking and Its Regulation: The Case of China' in Ross Buckley, Douglas Arner and Avgouleas Emilios (eds), *Rethinking Global Finance and Its Regulation* (Cambridge University Press, forthcoming).
- 'Securities Litigation and Enforcement in China: An Empirical Inquiry' in Martin Gelter and Pierre-Henri Conac (eds), *Global Securities Litigation and Enforcement* (Cambridge University Press, forthcoming).
- 'The Regulation of Insider Trading in China: Law and Enforcement' in Stephen M. Bainbridge (ed), *Research Handbook on Insider Trading* (Edward Elgar Publishing Ltd, 2013), ch 16.
- 'The Regulation of Foreign Investment in China: Post-WTO Developments and Trends' in John Garrick (ed), *China: Power, Wealth and Law Reform* (Routledge, UK, 2011), 130.
- 'An Evaluation of Classic Theories of Corporate Law: A Chinese Perspective' in Professor Wang Baoshu (ed), *The Latest Developments in The Areas of Commercial Law and Economic Law* (Beijing, Law Press, 2010), 259.
- 'The Chinese Insider Trading Regulation: Current Issues and Suggested Reforms' in *C Vidya (ed),Insider Trading: Regulatory Perspectives* (ICFAI University Press, India, 2007), 185.
- 'Fiduciary Duties of Controlling Shareholders: A Comparative Analysis and Reform Suggestions for China' in Professor Wang Baoshu (ed), *Modernizing Company Law in Transformation* (Social Sciences Academic Press, China, 2006), 570.

Journal Articles

- 'The Regulation of Shadow Banking in China: International and Comparative Perspectives' (2015) 30 *Banking and Finance Law Review* 481

- 'The Use of Empirical Legal Research Methodologies in China' (2013) 6 *Faxue Yanjiu [Chinese Journal of Law]* 15.

- 'Private Enforcement of Securities Law in China: A Ten-year Retrospective and Empirical Assessment' (2013) 61(4) *American Journal of Comparative Law* 757

- 'Convergence and Persistence in Corporate Governance: A Chinese Perspective' (2013) 5 *Bijiaofa Yanjiu [Journal of Comparative Law]* 61

- 'Shareholder Derivative Litigation in China: Empirical Findings and Comparative Analysis' (2012) 27(4) *Banking and Finance Law Review* 619

- 'Insider Trading and the Regulation on China's Securities Market: Where Are We Now and Where Do We Go From Here?' (2012) 5 *Journal of Business Law* 379

- 'Piercing the Corporate Veil in China: Where Is It Now and Where Is It Heading?' (2012) 60 *American Journal of Comparative Law* 743

- 'Governing Financial Disputes in China: What Have We Learnt From the Global Financial Crisis of 2008?' (2012) 7(1) *University of Pennsylvania East Asia Law Review* 195 (with Shahla Ali)

- 'Financial Dispute Resolution in China: Arbitration or Court Litigation?' (2012) 28(1) *Arbitration International* 77 (with Shahla Ali)

- 'In the Aftermath of the Global Financial Crisis: The Proposed Establishment of a Financial Dispute Resolution Centre in Hong Kong' (2011) 85 *Australian Law Journal* 726

- 'The Regulation of Securities Offerings in China: Reconsidering the Merit Review Element in Light of the Global Financial Crisis' (2011) 41(10) *Hong Kong Law Journal* 261.

- 'China's Legal Responses to the Global Financial Crisis: From Domestic Reform to International Engagement' (2010) 12(2) *Australian Journal of Asian Law* 157

- 'Gatekeeper and Corporate Governance: Regulatory Reflections on Market Collapse from the Enron Scandal to the Financial Crisis of 2008' (2010) 46 *Minshangfa Luncong [Civil and Commercial Law Review] (editor-in-chief: Professor Liang Huixing)* 248.

- 'Institutional Structure of Financial Regulation in China: Lessons from the Global Financial Crisis' (2010) 10(1) *The Journal of Corporate Law Studies* 219. (the author was invited to give a talk on this paper at the World Bank, Washington D.C., USA)

- 'The Overlapping Relationship between Corporate Takeover Regime and Corporate Restructuring Regime' (2009) 2 *Zhongguo Ziben Shichang Fazhi Pinglun [Law Review on the Financial Markets in China] (editor-in-chief: Professor Liu Junhai)* 245.

- 'The Regulation of Foreign Investment in Post-WTO China: A Political Economy Analysis' (2009) 23(1) *Columbia Journal of Asia Law* 185. (published in a special issue celebrating the 60th anniversary of the People's Republic of China)

- 'Financial Regulatory Modernization: Experiences and Lessons from Common Law Jurisdictions' (2009) 1 *Guangdong Shehui Kexue [Guangdong Social Science]* 181.

- 'Redefining Market Manipulation in Australia: The Role of an Implied Intent Element' (2009) 27 *Company and Securities Law Journal* 8. (Cited with approval by the High Court of the Republic of Singapore in *Monetary Authority of Singapore vs Tan Chong Koay and another* [2010] SGHC 277)

- 'Statutory Shareholder Remedies in Australia' (2008) 13 *Gongsifa Pinglun [Corporate Law Review] (editor-in-chief: Professor Zhao Xudong)* 209.

- 'The New Takeover Regulation in China: Evolution and Enhancement' (2008) 42(1) *The International Lawyer* 153. (the author was invited to give a talk on this paper at Columbia Law School, New York, USA)

- 'A Comparative Analysis of Australian Law governing Corporate Groups' (2008) 15 *Shangshifa Lunji [Commercial Law Review] (editor-in-chief: Professor Wang Baoshu)* 95.

- 'China's New Regulation on Foreign M&A: Green Light or Red Flag?' (2007) 30(3) *The University of New South Wales Law Journal* 804.

- 'Chinese Walls in Large Financial and Market Institutions: Experiences and Lessons from Common Law Jurisdictions' (2007) 1(1) *Qinghua Faxue [Tsinghua Law Review]* 149. (reprinted in *Frontiers of Law in China* (2009) 4(4) 489.)

- 'The Statutory Derivative Action in China: Critical Analysis and Recommendations for Reform' (2007) 4(2) *Berkeley Business Law Journal* 227. (translated and reprinted in 王保树教授主编，《实践中的公司法》，社会科学文献出版社，2008)

- 'Directors' Duties in Australian Corporate Law: A Comparative Analysis' (2007) 13 *Shangshifa Lunji [Commercial Law Review](editor-in-chief: Professor Wang Baoshu)* 145.

- 'Share Registration and Transfer: The Australian Experience and Its Relevance to China' (2007) 8 *Gongsifa Pinglun [Corporate Law Review] (editor-in-chief: Professor Zhao Xudong)* 1.

- 'Compensation for Insider Trading: Who should be Eligible Claimants?' (2006) 20(1) *Australian Journal of Corporate Law* 84.

- 'Accountants' Civil Liability for Misrepresentation in Initial Public Offerings' (2006) 11 *Shangshifa Lunji [Commercial Law Review](editor-in-chief: Professor Wang Baoshu)* 165.

- 'China's new Company Law and Securities Law: An overview and assessment'(2006) 19(2) *Australian Journal of Corporate Law* 229 (with Professor Baoshu Wang)
- 'The Evolution of the Basel Accord: New Issues of Banking Regulation and New Solutions' (2006) 28(1) *Huanqiu Falu Pinglun [Global Law Review]* 100.
- 'The Insider Trading "Possession versus Use" Debate: An International Analysis' (2006) 33(2) *Securities Regulation Law Journal* 130. (published in an SSCI-listed journal)
- 'Financial Regulatory Reform: International Comparison and Analysis' (2006) 10 *Shangshifa Lunji [Commercial Law Review](editor-in-chief: Professor Wang Baoshu)* 222.
- 'China's Takeover Law: A Comparative Analysis and Proposals for Reform,' (2005) 30(1) *Delaware Journal of Corporate Law* 145.
- 'The Regulation of Insider Trading in China: A Critical Review and Proposals for Reform,' (2005) 17(3) *Australian Journal of Corporate Law* 281. (awarded 'The Prize for Best Conference Paper' at the Australian Corporate Law Teachers Association Conference 2005, Sydney Australia)
- 'Research on the Derivative Suit System,' 2003 (7) *Shangshifa Lunji [Commercial Law Review] (editor-in-chief: Professor Wang Baoshu)* 332.
- 'Legal Duties of Securities Investment Fund Managers,' 2001(1) *Dangdai Faxue Yanjiu [FuDan University Law Journal]* 29.
- 'The Issue of Land Ownership in China,' 2001(4) *Xiandai Faxue [Law Journal of Southwest University of Political Science and Law]* 116.
- 'The Legal Liability for Complimentary Goods' 1999(4) *Beijing Keji Daxue Xuebao (Shehui Kexue) [Social Sciences Journal of Beijing Science and Technology University]* 73. (reprinted in *Renda Baokan Fuyin Ziliao (Minshang Faxue) [China Renmin University Information Centre for Select Journal Articles (Civil and Commercial Law)]* (2000) Vol 5.)

**Book Review**

- *International Capital Markets: Law and Institution,* Cally Jordan, [Oxford University Press, U.K., 2014] in (2015) 45(2) *Hong Kong Law Journal*

**Translations**

- John C. Coffee, Jr. *Gatekeepers: The Professions and Corporate Governance* (New York: Oxford University Press, 2006); translation published with Peking University Press (2011) (with Changhe Wang et al)
- Frank H. Easterbrook and Daniel R. Fischel, 'The Corporate Contract' (1989) 89 *Columbia Law Review* 1416; translation published in *Qinghua Faxue [Tsinghua Law Review]* (2007) 4, 260.
- Jeffery N. Gordon, 'The Mandatory Structure of Corporate Law' (1989) 89 *Columbia Law Review* 1549; translation published in *Shangshifa Lunji [Commercial Law Review] (editor-in-chief: Professor Wang Baoshu)* (2007) 12, 131.
- Bernard S. Black, 'The Core Fiduciary Duties of Outside Directors' (2001) July *Asia Business Law Review* 3; translation published in *Shangshifa Lunji [Commercial Law Review] (editor-in-chief: Professor Wang Baoshu)* (2006) 11, 215.
- Ronald J. Gilson, 'Globalizing Corporate Governance: Convergence of Form or Function' (2001) 49 *American Journal of Comparative Law* 329; translation published in *Shangshifa Lunji [Commercial Law Review] (editor-in-chief: Professor Wang Baoshu)* (2006) 11, 245.
- Henry Hansmann and Reinier Kraakman, 'The End of History for Corporate Law' (2001) 89 *Georgetown Law Journal* 439; translation published in *Shangshifa Lunji [Commercial Law Review] (editor-in-chief: Professor Wang Baoshu)* (2006) 10, 331.
- Lucian A. Bebchuk and Mark J. Roe, 'A Theory of Path Independence in Corporate Governance and Ownership' (1999) 52 *Stanford Law Review* 127; translation published in *Shangshifa Lunji [Commercial Law Review] (editor-in-chief: Professor Wang Baoshu)* (2006) 10, 363.
- Bernard S. Black, 'Shareholder Activism and Corporate Governance in the United States' in Peter Newman (ed.), *The New Palgrave Dictionary of Economics and the Law* (1998); translation published in *Zhengquan Falv Pinglun [Securities Law Review] (editor-in-chief: Professor Guo Feng)* (2005) 4, 573.
- Margaret M. Blair and Lynn A. Stout, 'A Team Production Theory of Corporate Law' (1999) 85 *Virginia Law Review* 247; translation published in (2005) 9 *Shangshifa Lunji [Commercial Law Review] (editor-in-chief: Professor Wang Baoshu)* 267.

Back to Lists