UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>**THIS DOCUMENT RELATES TO:**<br>*Gross v. Knauf Gips KG*, 2:09-cv-6690<br>*Amorin v. Taishan Gypsum*, 2:11-cv-1672<br>*Amorin v. Taishan Gypsum*, 2:11-cv-1395<br>*Amorin v. Taishan Gypsum*, 2:11-cv-1673<br>*Amorin v. SASAC*, 2:14-cv-1727<br>*State of Louisiana v. Knauf*, 2:10-cv-340<br>*Abner v. Taishan Gypsum*, 2:11-cv-3094<br>*Posey v. BNBM Co.*, 2:09-cv-6531<br>*Morris v. BNBM Co.*, 2:09-cv-6530 | MDL No. 2:09-md-2047<br><br>SECTION L<br><br>JUDGE ELDON E. FALLON<br><br>MAGISTRATE JUDGE<br>JOSEPH C. WILKINSON, JR. |

### REPLY TO SUPPLEMENTAL RESPONSES TO CNBM GROUP'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION UNDER THE FSIA

After scheduling a hearing about discovery issues related to a Taishan witness, the Court permitted Plaintiffs to file a supplemental opposition to China National Building Materials Group Corporation's ("CNBM Group") motion to dismiss "if relevant information is disclosed at the spoliation hearing which bears on the exceptions" to sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA"). Rec. Doc. 19693. Although Plaintiffs and the State of Louisiana have filed supplemental responses (citing some evidence that has nothing at all to do with the hearing), they do not even attempt to argue that any new information establishes an exception to immunity against CNBM Group directly. This is because the evidence continues to confirm that Plaintiffs' claims are not "based upon" any act by CNBM Group itself.

1

Instead, Plaintiffs again try to bootstrap jurisdiction by suggesting that the evidence supports an alter ego relationship between CNBM Group and the companies that actually manufactured and sold the allegedly defective drywall. But Plaintiffs' latest effort suffers for the same reasons as their previous attempts: none of their evidence shows that CNBM Group controlled these other companies' day-to-day operations, as is necessary to overcome its well-recognized presumption of separate status. The evidence shows only that CNBM Group exercised occasional high-level supervision befitting a typical corporate parent. But the Fifth Circuit is clear that "supervisory control" over a subsidiary company is insufficient to attribute that company's commercial activities to a sovereign parent and deprive it of sovereign immunity. *See Hester Int'l Corp. v. Federal Republic of Nigeria*, 879 F.2d 170, 181 (5th Cir. 1989).

Accordingly, CNBM Group must be dismissed from this litigation because no exception to immunity applies, and this Court lacks subject matter jurisdiction over the claims against it.

**I.    CNBM Group Engaged In No Activity That Establishes An Exception To Immunity.**

At the end of their supplemental response, Plaintiffs assert that CNBM Group "engaged in commercial activity and tortious conduct related to Plaintiffs' claims." PSC Supp. Resp. at 24. But Plaintiffs never identify the specific activity or conduct to which they refer, and for that matter do not cite *any* evidence of drywall-related activity by CNBM Group before this litigation was filed. Moreover, it is not sufficient for purposes of the FSIA to show that a sovereign defendant's acts are "related to" the plaintiff's claims. Under 28 U.S.C. § 1605(a)(2), the lawsuit must be "based upon" the defendant's own commercial activity. And as CNBM Group has repeatedly explained, *see* Amended Motion to Dismiss at 12-14 (Rec. Doc. 19527-2) (hereinafter "Mot."); Reply ISO Motion to Dismiss at 6-8 (Rec. Doc. 19798-2) (hereinafter "Reply"), and the Supreme Court reaffirmed this week, "an action is 'based upon' the 'particular conduct' that

constitutes the 'gravamen' of the suit." *OBB Personenverkehr AG v. Sachs*, 577 U.S. __, No. 13-1067, slip. op. 7 (S. Ct. Dec. 1, 2015) (quoting *Saudi Arabia v. Nelson*, 507 U.S. 349, 356-57 (1993)). That is, in applying the commercial activity exception, this Court must focus on "the core" of Plaintiffs' suit and the "acts that actually injured them." *Id.* Here, of course, the core of the product liability litigation is Plaintiffs' allegation that they were injured by the manufacture and sale of defective drywall. But Plaintiffs do not cite any evidence in their supplemental response that CNBM Group engaged in the "particular conduct" that injured them. And they finally admit, for perhaps the first time, that CNBM Group did not "physically" manufacture anything. PSC Supp. Resp. at 6.

## II. CNBM Group Does Not Control Its Subsidiaries' Day-To-Day Operations.

Plaintiffs and Louisiana instead suggest that the additional exhibits they present are relevant to "the issue of alter ego relationships." PSC Supp. Resp. at 4; La. Supp. Resp. at 2. But the latest documents are really just a rehash of earlier evidence that reflects only high-level supervision frequently exercised by corporate parents. For example, Plaintiffs allege (again) that CNBM Group: asks subsidiaries to prepare annual risk management reports (*compare* PSC Supp. Resp. at 7, *with* Reply at 26-27); sometimes aggregates the production numbers of companies in which it holds an interest[1] (*compare* PSC Supp. Resp. at 7-8, *with* Reply at 20 n.13); coordinates periodic meetings involving "supervision" of subsidiaries' leadership teams (*compare* PSC Supp. Resp. at 8-9, *with* Reply at 27); and occasionally requests export data from subsidiaries in response to significant events[2] (*compare* PSC Supp. Resp. at 9-10 & n.36, *with* Reply at 25

---

[1] And in fact, the report on which Plaintiffs rely clearly details which subsidiary companies are responsible for the production in each building sector. *See* PSC FSIA Ex. 146 at 8-9.
[2] CNBM Group requested export data in November 2008 because of the global "financial crisis." PSC FSIA Ex. 149. And contrary to Plaintiffs' suggestion that CNBM Group "placed specific requests for information from Taishan," PSC Supp. Resp. at 9, the email chain that Plaintiffs cite reflects that CNBM Group conducted generalized information gathering from all of its subsidiaries and, in fact, did not even send the request directly to Taishan.

3

n.21). But, now as before, none of this indicates an alter ego relationship or shows that CNBM Group was involved in its subsidiaries' day-to-day operations.

Indeed, Plaintiffs devote the bulk of their supplemental response to their recurring allegations that CNBM Group helped coordinate its subsidiaries' response to this litigation. *See* PSC Supp. Resp. at 10-19. But as CNBM Group explained, *see* Reply at 28, responding to "hundreds of U.S. lawsuits" against numerous subsidiary entities hardly qualifies as day-to-day business. PSC Supp. Resp. at 11. Rather, Plaintiffs' evidence suggests merely that CNBM Group "attached great importance" to widespread litigation involving its subsidiaries—as any corporate parent would. PSC FSIA Ex. 161.[3]

The other "evidence" that Plaintiffs cite provides no further support for their alter ego allegations. For example, Plaintiffs and Louisiana both rely heavily on statements from Morgan Stanley suggesting that *CNBM Company*—not CNBM Group—exercised some control over its subsidiaries.[4] *See* PSC Supp. Resp. at 5-6; La. Supp. Resp. at 2-3. They conveniently neglect to mention, however, that the control Morgan Stanley described was nothing out of the ordinary. Rather, as Morgan Stanley's testimony made clear, its statements merely reflected that CNBM Company exercised what it regarded to be "appropriate influence" and "a normal level of involvement in the business of their subsidiaries," and that it did not abuse the corporate form of any of its subsidiaries. Keyes Dep. at 91:15-18, 92:6-14, 408:11-410:17 (PSC FSIA Ex. 165).

---

[3] In a feat of circular logic, Plaintiffs cite as purported "evidence" of an alter ego relationship comments by a CNBM Group official that emphasized the importance of corporate separateness and described Plaintiffs' veil-piercing arguments in this litigation—i.e., acknowledging Plaintiffs' *allegation* that Taishan is "not independent," even though it is a separate limited company. PSC Supp. Resp. at 18-19.

[4] CNBM Group objects to the deposition testimony of Morgan Stanley's corporate witness cited by Plaintiffs insofar as it relates to CNBM Group or CNBM Company's intent. Fed. R. Evid. 602 requires evidence sufficient to support a finding that the witness has personal knowledge of the matter with respect to which he is testifying. And Rule 702 does not allow opinion testimony by a lay witness that is not based on the witness's own perception. Speculation is admissible. Yet no foundation supports the deponent's opinion testimony concerning how "CNBM" presented itself, let alone how *CNBM* "intended" to present itself. *See* Keyes Dep. (PSC FSIA Ex. 165) at 253:8-15, 254:7-14. While Morgan Stanley's deponent is free to explain *Morgan Stanley's* intent or how "Morgan Stanley marketed" CNBM Company (PSC Ex. 166 at 2 (emphasis added)), his speculation as to CNBM Group or CNBM Company is inadmissible.

And although Louisiana relies on CNBM Company's publication of consolidated accounting reports that aggregated its subsidiaries' financial data, Morgan Stanley explained that CNBM Company was required to do so as a publicly listed company just like "any company on the New York Stock Exchange."[5] Keyes Dep. at 32:11-33:3 (PSC FSIA Ex. 165). Plaintiffs also ignore other contemporaneous documents prepared with assistance from Morgan Stanley that highlighted CNBM Company's independence from CNBM Group, *see, e.g.*, 2006 Global Offering Prospectus at 157-58 (PSC FSIA Ex. 5) (noting that CNBM Group directors "are only involved in the high level decision-making of important strategic and policy matters" and do not "have any involvement in the day-to-day management"), and disclosed as a potential risk to investors that CNBM Company was unable to direct the activities of publicly listed subsidiaries like BNBM PLC, *see id.* at 39.

Finally, Plaintiffs allege that Taishan conducts its operations pursuant to CNBM Group "policies and procedures," PSC Supp. Resp. at 6, and cite to a draft safety code for manufacturing entities prepared in 2013 or 2014.[6] But as CNBM Group previously explained, *see* Reply at 27, issuing "policies and procedures" for a subsidiary is perfectly "consistent with the parent's investor status." *United States v. Bestfoods*, 524 U.S. 51, 72 (1998). And here, the safety code on which Plaintiffs rely falls well within "accepted norms of parental oversight of a subsidiary's facility." *Id.* Indeed, the policies merely seek to comply with "national regulations and standards" regarding employee safety "approved by the State Administration of Work Safety (SAWS)," PSC FSIA Ex. 144—as if a U.S. parent corporation issued policies to ensure that its

---

[5] Louisiana also asserts (without a citation to any evidence) that "from the beginning, the CNBM entities have made clear that they are targeting the United States for drywall sales." La. Supp. Resp. at 4. But to the contrary, the final version of another document Louisiana cites in the same paragraph makes clear that the United States was "not the target market" of drywall products. PSC FSIA Ex. 161. And Morgan Stanley's deposition testimony noted that "with regard to CNBM [Company]'s business, the focus was very much on serving the Chinese domestic market." Keyes Dep. at 101:19-22 (PSC FSIA Ex. 165).

[6] It is not clear why Plaintiffs addressed this document for the first time in its supplemental response, given that CNBM Group produced it as part of the ongoing discovery on August 1, 2015.

subsidiaries complied with relevant regulations promulgated by the Occupational Safety and Health Administration (OSHA).  Further, as Plaintiffs acknowledge, CNBM Group did not even draft the code at issue, but rather left that task to the actual drywall manufacturer itself, BNBM PLC.  *Id.*; *see also* PSC Supp. Resp. at 6.

In sum, Plaintiffs still cannot point to any evidence that CNBM Group controlled other companies' day-to-day operations during the period when those companies manufactured and sold the allegedly defective drywall.  And that is because no such evidence exists.  Nor can Plaintiffs identify *any* case that found an alter ego relationship and overcame an instrumentality's presumption of separate status based on the type of evidence they have produced.  The cases make clear that even a "significant amount of supervisory control" will not "overcome the presumption of separateness."  *First Inv. Corp. of Marsh. Is. v. Fujian Mawei Shipbuilding Ltd.*, 858 F. Supp. 2d 658, 676 (E.D. La.), *aff'd* 703 F.3d 742 (5th Cir. 2012).  Plaintiffs' evidence therefore falls short "because whatever control [CNBM Group] exerted was not tied to [its subsidiaries'] *day-to-day* operations."  *EM Ltd. v. Banco Central De La Republica Argentina*, 800 F.3d 78, 92 (2d Cir. 2015).[7]

## CONCLUSION

For the foregoing reasons, as well as those stated in the memorandum and earlier reply supporting CNBM Group's motion, this Court should dismiss the claims against CNBM Group for lack of subject matter jurisdiction.

---

[7] Plaintiffs' supplemental response also repeats their request to further delay resolution of CNBM Group's FSIA defense.  *See* PSC Supp. Resp. at 1-4, 23-24.  CNBM Group has addressed, and will address, Plaintiffs' discovery-related complaints in appropriate filings.  *See, e.g.*, Response to PSC's Motion to Strike, Rec. Doc. 19834; PSC's Motion to Compel 30(b)(6) Depositions, Rec. Doc. 19815.  But their baseless accusation that CNBM "strategically" timed document productions to prejudice Plaintiffs is without merit.  PSC Supp. Resp. at 1.  And in any event, as CNBM Group has explained, Plaintiffs have already received far more discovery than is warranted in the FSIA context.  *See* Reply at 32-36.  Granting CNBM Group's motion and dismissing it from this litigation after nine months of discovery—and four separate response briefs attaching 168 exhibits—is anything but a "rush to adjudicate" its sovereign immunity defense "based only on a snapshot of evidence."  PSC Supp. Resp. at 24.

Dated: December 3, 2015

        Respectfully submitted,

        /s/ L. Christopher Vejnoska

| | |
|---|---|
| L. Christopher Vejnoska (CA Bar No. 96082) | Ewell E. Eagan, Jr. (LA Bar No. 5239) |
| Ian Johnson (CA Bar No. 208713) | Donna Phillips Currault (LA Bar No. 19533) |
| Andrew Davidson (CA Bar No. 266506) | Alex B. Rothenberg (LA Bar No. 34740) |
| Jason Wu (CA Bar No. 279118) | GORDON, ARATA, MCCOLLAM, |
| ORRICK, HERRINGTON & SUTCLIFFE LLP | DUPLANTIS & EAGAN, LLC |
| The Orrick Building | 201 St. Charles Avenue, 40th Floor |
| San Francisco, CA 94105 | New Orleans, LA 70170-4000 |
| Tel: 415-773-5700 | Tel: 504-582-1111 |
| Email: cvejnoska@orrick.com | Email: eeagan@gordonarata.com |
|      ijohnson@orrick.com |      dcurrault@gordonarata.com |
|      adavidson@orrick.com |      arothenberg@gordonarata.com |
|      jmwu@orrick.com | |
| | |
| James L. Stengel (NY Bar No. 1800556) | Eric A. Shumsky (D.C. Bar No. 477926) |
| Xiang Wang (NY Bar No. 4311114) | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| ORRICK, HERRINGTON & SUTCLIFFE LLP | Columbia Center |
| 51 West 52nd Street | 1152 15th Street NW |
| New York, NY, 10019 | Washington, D.C. 20005 |
| Tel: 212-506-5000 | Tel: 202-339-8400 |
| Email: jstengel@orrick.com | Email: eshumsky@orrick.com |
|      xiangwang@orrick.com | |

*Counsel for CNBM Group*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing **Reply to Supplemental Responses to CNBM Group's Motion to Dismiss for Lack of Subject Matter Jurisdiction Under the FSIA** and accompanying documents have been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all parties by electronically uploading the same to File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on December 3, 2015.

/s/ L. Christopher Vejnoska

L. Christopher Vejnoska (CA Bar No. 96082)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105
Tel:  415-773-5700
Fax: 415-773-5759
Email: cvejnoska@orrick.com

*Counsel for CNBM Group*