November 27, 2015


RECEIVED
DEC 01 2015
CHAMBERS OF
U.S. DISTRICT JUDGE
ELDON E. FALLON

Judge Eldon E. Fallon

500 Poydras Street

Room C-456

New Orleans, Louisiana 70130

        RE: Chinese Drywall Case

        Geraldine B. Billups

        Damaged property: 1476-78 N. Miro Street

        Case number 105251

Dear Judge Fallon:

    First I must apologize for having to come back to the court requesting further assistance. Again, I was urged to try and get help with yet another drywall matter.

    Enclosed is a copy of my initial letter to you. It will bring you forward to where I am now. I was, with your help, able to be considered for loss use/foreclosure section of the Chinese Drywall lawsuit. I thank you for that. Now, strictly due to Wells Fargo's lingering process of foreclosure I have been removed and closed out for consideration. Brown –Greer has received every requested and required piece of documentation accept the final foreclosure papers from Wells Fargo. Trust me I have lost my home and now I am about to lose any chance of recovering any money through the drywall suit.

    Speaking with a Brown-Greer representative ,she again stated that only the Judge can allow them to reopen my case to be reconsidered for the loss use/foreclosure funds.

    I am completely at the mercy of Wells Fargo and they can only tell me that the foreclosure is in process and cannot give a definite date of completion.

    I am respectfully requesting that my case be reopened for consideration and allowed to remain open until Wells Fargo completes their foreclosure process.

    Any assistance in this matter would be greatly appreciated.

Sincerely,

Geraldine B. Billups

Attachments

January 28, 2015

Judge Eldon E. Fallon

500 Poydras St

Room C-456

New Orleans, LA 70130

RECEIVED JAN 30 2015 CHAMBERS OF U.S. DISTRICT JUDGE ELDON E. FALLON

Re: Chinese Drywall Case

Geraldine B. Billups   Damaged Property 1476-78 N. Miro St 70119

Case ID 105251

I'm writing to you as suggested by the representative with Brown-Greer. On Monday, I spoke with Ms Ashley Barriere who advised me forward a copy of my foreclosure information along with an explanation of what transpired with the property.

I filed to become a part of the Chinese Drywall suit in October, 2012 because I secured drywall from China that was tainted and placed it throughout my house that was being totally renovated. Over this time period, I have been fighting through the court system against a bad contractor who ran off with money (approx. $25,000.00) that was part of my retirement, money I was using for the renovation. He did substandard work and placed the Chinese drywall in the property.

The contractor lost the case, but the money that was awarded in the case and I have not received it. He is avoiding paying and I may never receive a dime from him.

At the time the drywall suit started I was not in foreclosure, but I am now. I would like to be considered for loss of property/use section so that I can perhaps get some money to help recovery from all my loses. I have not worked since 2008 and I am now disable due to multiple surgeries and a chronic autoimmune disease. That house would have been my first home and part of my retirement plan and at 63 losing my home along with everything I owned from Katrina is a tremendous blow both emotionally and financially.

I have enclosed a copy of my foreclosure papers and hope that you would approve me for compensation for my loses. Any consideration of this request would be most appreciated.

Sincerely,

*Geraldine B. Billups*
Geraldine B. Billups

3122 Chester Ct Apt A Metairie, LA 70006
(504) 710-3353

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION L<br><br>JUDGE FALLON<br>MAGISTRATE JUDGE WILKINSON |

**THIS DOCUMENT RELATES TO:** ALL CASES

### ORDER

The Court received and reviewed the attached correspondence from Ms. Geraldine Billups.

**IT IS ORDERED** that the attached correspondence be entered into the record.

**IT IS FURTHER ORDERED** that Plaintiffs' Liaison Counsel review the correspondence and take any appropriate action.

New Orleans, Louisiana, this 30th day of January, 2015.

_____
UNITED STATES DISTRICT JUDGE

cc:

Ms. Geraldine Billups
3122 Chester Ct.
Apt. A
Metairie, LA 70006



1

VS. NO. 10 – 11435

SECTION 14

BY: _____
DEPUTY CLERK

**GERALDINE BILLUPS**

## PETITION TO ENFORCE SECURITY INTEREST BY ORDINARY PROCESS

NOW INTO COURT, through the undersigned counsel, comes **WELLS FARGO BANK, NA**, who respectfully represents:

1.

Made defendant herein is **GERALDINE BILLUPS**, a major resident of Orleans Parish, Louisiana, owner of the property.

2.

Plaintiff is entitled to enforce the note, dated the 29th day of August, 2008, in the original principal sum of $169,632.00, bearing interest from date, payable in monthly installments, and executed by **GERALDINE BILLUPS**, as maker (the "note").

3.

The note being enforced herein is paraphed for identification with an act of mortgage of even date therewith affecting the property located in Orleans Parish, Louisiana, and more particularly described in the mortgage attached hereto as Exhibit "B".

4.

The obligor has defaulted on the note and mortgage by failing to pay, when due, the monthly installment for August 1, 2010 and obligor remained in default thereafter by failing to pay in full such installment and all successive monthly installments and other amounts due on the note and mortgage before plaintiff, pursuant to the provisions of the note and mortgage, accelerated the entire indebtedness represented by the note and mortgage, which entire indebtedness remains unpaid.

5.

Plaintiff is owed the following amounts under the note and mortgage: (a) principal of $185,538.90 with interest thereon at 4.8750% per annum from July 01, 2010, until paid; (b) all expenses incurred in enforcing the note and mortgage including reasonable attorney's fees not to

protection and preservation of the lien of the mortgage, for the protection and preservation of the mortgagee's interest thereunder, and other amounts provided by the mortgage and applicable law, such as late charges, escrow advances for the payment of taxes and insurance, corporate advances, property appraisals, inspection fees, prior attorney fees and expenses, abstract and title charges, NSF charges, attorney fees and expenses, and other charges which plaintiff is permitted to prove by affidavit filed or submitted before distribution by the sheriff of the proceeds of the judicial sale herein; and (d) all law charges, costs, fees and expenses including sheriff's commission.

6.

The indebtedness due plaintiff and the obligations owed under the mortgage are represented by the following:

(a) Copy of the note. (Exhibit "A");

(b) Copy of the act of mortgage. (Exhibit "B")

(c) Copy of Loan Modification (Exhibit "C")

7.

Plaintiff is entitled to enforce the aforedescribed mortgage and hereby requests recognition of same, which affects the property located in Orleans Parish, more particularly described in the mortgage attached as Exhibit "B".

8.

Plaintiff requests that the court render judgment in favor of the plaintiff in the amount set forth in Paragraph 5 hereof and that the aforedescribed mortgage be recognized and declared enforceable in accordance with law.

9.

As to any obligor herein which has been discharged in bankruptcy, if any, this proceeding shall be in rem and shall not seek personal liability.

WHEREFORE, PLAINTIFF PRAYS that judgment be rendered herein in its favor and against the obligor in the full sum of (a) principal of $185,538.90 with interest thereon at 4.8750% per annum from July 01, 2010, until paid; (b) all expenses incurred in enforcing the

preservation, repair and recovery of the property, for the protection and preservation of the lien of the mortgage, for the protection and preservation of the mortgagee's interest thereunder, and other amounts provided by the mortgage and applicable law, such as late charges, escrow advances for the payment of taxes and insurance, corporate advances, property appraisals, inspection fees, prior attorney fees and expenses, abstract and title charges, NSF charges, attorney fees and expenses, and other charges which plaintiff is permitted to prove by affidavit filed or submitted before distribution by the sheriff of the proceeds of the judicial sale herein; and (d) all law charges, costs, fees and expenses including sheriff's commission; and

PLAINTIFF FURTHER PRAYS that the mortgage in its favor be recognized and declared enforceable in accordance with the law.

Respectfully submitted,

DEAN MORRIS, L.L.P.
1505 North 19th Street
P.O. Box 2867
Monroe, Louisiana 71207-2867
(318) 388-1440

BY: _____
JOHN C. MORRIS, IV (#31887)
ATTORNEYS FOR PLAINTIFF

PLEASE SERVE DEFENDANT AT:

GERALDINE BILLUPS
1476-78 NORTH MIRO STREET
NEW ORLEANS, LA 70119

IF NOT AT THIS ADDRESS, PLEASE TRY:
5379 CHATHAM DRIVE
NEW ORLEANS, LA 70122

THE ADDRESS OF THE PROPERTY IS BELIEVED TO BE:

1476-7 NORTH MIRO STREET
NEW ORLEANS, LA 70119

1476-78 NORTH MIRO ST, NEW ORLEANS, LA 70119

[Property Address]

### 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means WELLS FARGO BANK, N.A.

and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of ONE HUNDRED SIXTY NINE THOUSAND SIX HUNDRED THIRTY TWO AND 00/100

Dollars (U.S. $ ****169,632.00     ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of SIX AND SEVEN-EIGHTHS percent (  6.875          %) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

(A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on OCTOBER 01      , 2008      . Any principal and interest remaining on the first day of SEPTEMBER 2038     , will be due on that date, which is called the "Maturity Date."

(B) Place

Payment shall be made at WELLS FARGO HOME MORTGAGE, P.O. BOX 11701, NEWARK, NJ 071014701                                                         or at such place as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $   ******1,114.36       . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge   ☐ Growing Equity Allonge   ☐ Other [specify]

### 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

FHA Louisiana Fixed Rate Note - 10/95

VMP -1R(LA) (9801).01

VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 2                             Initials: AB

Exhibit A

VERIFIED
ANGELIA BELL

(B) **Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C) **Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses for enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable and customary attorneys' fees of 25 % of the sums due under this Note, but not less than U.S. $ 2,500.00. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)   /s/ Geraldine Billups  8/29/08 (Seal)
-Borrower                         GERALDINE BILLUPS              -Borrower

_____ (Seal)   _____ (Seal)
-Borrower                         -Borrower

_____ (Seal)   _____ (Seal)
-Borrower                         -Borrower

_____ (Seal)   _____ (Seal)
-Borrower                         -Borrower

"NE VARIETUR" for identification with a mortgage given before me on AUGUST 29TH, 2008

A CERTIFIED COPY

Notary qualified in ORLEANS   IRL R. SILVERSTEIN   Parish, Louisiana.

NOTARY PUBLIC

VMP-1R(LA) (9601).01           Page 2 of 2

Return To:
WFHM FINAL DOCS X9999-01M

1000 BLUE GENTIAN ROAD
EAGAN, MN 55121
Prepared By:
WELLS FARGO BANK, N.A.

175 SULLY'S TRAIL, SUITE 201, PITTSFORD, NY 145340000

———————————[Space Above This Line For Recording Data]———————————

State of Louisiana         **MORTGAGE**      FHA Case No.
                                             221-4060839 702

THIS MORTGAGE ("Security Instrument") is given on **AUGUST 29, 2008**,
before me,
a Notary in and for **ORLEANS**                                Parish, Louisiana, and
in the presence of the undersigned witnesses, by **GERALDINE BILLUPS, A SINGLE PERSON**

("Borrower"), a person(s) of the full majority and a resident(s) of **ORLEANS**
Parish, Louisiana, whose permanent mailing address is the Property Address stated
below. Borrower declared and acknowledged that Borrower owes **WELLS FARGO BANK, N.A.**

a corporation organized and existing under the laws of **THE UNITED STATES**       and whose
permanent mailing address is **P.O. BOX 11701, NEWARK, NJ  071014701**
                                                                    ("Lender"), the principal sum of
**ONE HUNDRED SIXTY NINE THOUSAND SIX HUNDRED THIRTY TWO AND 00/100**
                                     Dollars (U.S. $ *******169,632.00 ).

0090155201
FHA Louisiana Mortgage - 4/96
-4R(LA) (0305)            Amended 3/97
Page 1 of 8              Initials:
VMP Mortgage Solutions (800)521-7291



the full debt, if not paid earlier, due and payable on **SEPTEMBER 01, 2038**. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and attorneys' fees, together with all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage and hypothecate to the Lender the following described property located in **ORLEANS** Parish, Louisiana:
**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.**

**PROVISIONS PERTAINING TO THE RELEASES ARE CONTAINED IN THE REHABILITATION LOAN RIDER WHICH IS ATTACHED TO THIS MORTGAGE AND**

**THIS IS A PURCHASE MONEY SECURITY INSTRUMENT.**
**TAX STATEMENTS SHOULD BE SENT TO: WELLS FARGO HOME MORTGAGE, P.O. BOX 11701, NEWARK, NJ 071014701**

Municipal Number:
which has the address of **1476-76NORTH MIRO ST** [Street]
**NEW ORLEANS** [City], Louisiana **70119** [Zip Code]
("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage and hypothecate the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable

Initials: _____

-4R(LA) (0309)   Page 2 of 8

A CERTAIN PIECE OR PORTION OF GROUND, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the THIRD DISTRICT of the City of New Orleans, SQUARE NO. 1043, bounded by N. Miro, N. Galvez, Columbus and Kerlerec Streets, designated as LOT NO. 33-B on the blueprint of survey made by Gilbert & Kelly Surveyors, dated November 27, 1944, a copy of which is annexed to act passed before Jennie von Behren, Notary Public, dated December 5, 1944, and according thereto, said portion of ground commences at a distance of sixty-two feet, ten inches from the corner of N. Miro and Columbus Streets, measures thence sixty-four feet, ten inches and six lines in width in the rear, by a depth on the side line in the rear, by a depth on the side line towards Columbus Street of eighty-two feet, eight inches and six lines, is composed of the rear portion of original Lots Nos. 31, 32, and 33.

The improvements bear the Municipal Number 1476-78 N. Miro St.

exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or

any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

   (a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

   (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

   (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

   (b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

Initials: _____

VMP-4R(LA) (0309)                Page 4 of 8

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

Initials: 

 -4R(LA) (0309)   Page 5 of 8

# Office DEPOT. OfficeMax®
## complimentary fax cover sheet

number of pages including cover sheet: __2__

attention to: __Katy Sanderson__   date: __6/29/15__

company: __Brown Greer__   from: __Geraldine Billups__

phone #: __(804) 521-7200__   company: __Claim # 105 251__

fax #: __(804) 521-7299__   senders phone #: __(504) 710-3353__

comments: ____

By sending this fax at Office Depot, inc., the sender agrees not to use this fax to: (I) transmit material whose transmission is unlawful, harassing, libelous, abusive, threatening, harmful, vulgar, obscene, pornographic or otherwise objectionable; (II) create a false identity, or otherwise attempt to mislead others as to the identity of the sender or the origin of this fax; (III) post or transmit any material that may infringe the copyright, trade secret, or other rights of any third party; (IV) violate any federal, state or local law in the location, or (V) conduct activities related to gambling, sweepstakes, raffles, lotteries, contests, ponzi schemes or the like.

Please note that Office Depot, inc., does not review the contents of any fax sent using its services. The sender of this fax hereby agrees to indemnify Office Depot inc., to the fullest extent of the law and for any and all claims, suits, or damages arising out or in connection with the request to send, or sending this fax.

| local first page | long distance first page | international first page |
|---|---|---|
|  |  |  |
| 833071 | 833081 | 833191 |
| local additional page | long distance additional page | international additional page |
|  |  |  |
| 456687 | 833091 | 833201 |

depot|max store 6493
1000 S. Clearview Pkwy. Suite 120
Harahan, LA 70123
p: 504.736.0215 f: 504.736.0288
ods06493cpc@officedepot.com

**Office DEPOT.**

rev 9/6/14

June 18, ~~1951~~ 2015

CLAIMANT NO. 105251

TO WHOM IT MAY CONCERN:

I, Geraldine B. Billups am the owner of the property located at 1476-78 North Miro St, New Orleans, Louisiana 70119 along with Wells Fargo Bank. The property is now in foreclosure and I am awaiting to sign the final paperwork. All final and completed documents to be forwarded to Brown-Greer. Initial papers on the foreclosure have already been forwarded.

*Geraldine B. Billups*

Geraldine B. Billups

June 18, 2015

RE: Sale or Rental of the property at 1476-78 North Miro St, New Orleans, LA 70119

I have spoken with two real estate agents who looked at the property and due to the condition of the property, which has been vacant for several years, incompleteness of the renovation and the Chinese drywall throughout the dwelling, the property can not be rented.  The sale of the property in this present condition would not make enough on the sale to satisfy the Wells Fargo bank loan of $169.000.00.

It was their opinion that the most I could list the property for would be $75,000.00 and that it would most likely be sold for less than that amount.



• Home and Commercial Building Inspections
• Mold Sampling and Testing • Thermal Imaging
• Certified Stucco Inspections • Engineering Services
• Construction Management

**Engineering and Inspections**

622 City Park Avenue     (504) 486-8500     www.gurtlerbros.com
New Orleans, LA 70119     (504) 486-8777 Fax     inspections@gurtlerbros.com

June 24, 2015

13-2077.03a

Ms. Geraldine Billups
Via email to c.billups@cox.net

Subject: 1476 & 1478 N. Miro St.
New Orleans, Louisiana

Ms. Billups:

Clearly the subject property was renovated with contaminated sheetrock. The house had an extremely strong odor and could not be lived in either by the homeowner or a tenant. Because the house could not be lived in or rented, your ability to pay any mortgage on the house was impacted.

If you have any questions regarding this report or need further assistance, please call.

Yours very truly,

GURTLER BROS. CONSULTANTS, INC.
Louisiana Engineering Company License #C-2475

Michael K. A. Gurtler
President
Louisiana State Contractors License #30228