# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 |
| --- | --- |
| | SECTION "L" |
| | JUDGE FALLON |
| | MAG. WILKINSON |

## BRIEF IN SUPPORT OF OBJECTION TO SPECIAL MASTER'S OPINION AND DECREE

**MAY IT PLEASE THE COURT:**

On November 8, 2015, Special Master Daniel J. Balhoff (hereinafter "Special Master") rendered an *Opinion and Decree* regarding a dispute between Mrs. Jody Ferchaud (hereinafter "Mrs. Ferchaud") and Moss & Associates, LLC (hereinafter "Moss").  As explained in more detail throughout this brief, the Special Master erred in his *Opinion and Decree* by:  (1) finding that Mrs. Ferchaud is responsible for the delay in the remediation and in determining that Moss did not have to make delay payments; (2) only determining the party responsible for code issues/deficiencies addressed by the City of New Orleans in its June 23, 2015 correspondence, and not determining all issues before him in this matter; (3) adopting the entire October 12, 2015 submission of Moss; (4) finding that Mrs. Ferchaud is not entitled to additional/other damages.

## INTRODUCTION

Mrs. Ferchaud as a KPT Property Owner took part in the Remediation Protocol in the above referenced matter.  During remediation, a dispute arose between Mrs. Ferchaud and Moss, who is the lead contractor for purposes of the above multi-district litigation action.  On May 1,

2015, Moss requested that the Special Master make a determination of the parties' respective rights and obligations.

Pursuant to the request of the Special Master, the parties submitted memoranda regarding this matter.  On July 23, 2015, Mrs. Ferchaud submitted her mediation position paper with exhibits.  On July 29, 2015, Mrs. Ferchaud submitted an Errata Number 1 for Mr. Flettrich's *Preliminary Expert Report*.  On July 31, 2015, Moss submitted its mediation position paper with exhibits.  On August 5, 2015, Mrs. Ferchaud submitted a reply to the mediation position paper of Moss.  Mrs. Ferchaud's reply also attached an exhibit, which was Mr. Flettrich's (expert of Mrs. Ferchaud) comments on the position paper of Moss.  On August 6, 2015, the Special Master conducted a mediation hearing which was transcribed by a court reporter that Mrs. Ferchaud obtained.

On October 2, 2015, Moss requested the opportunity to provide a brief supplement to **only** address code violations listed by the City of New Orleans (in correspondence sent to the parties, as explained below) which Moss stated had not been addressed during mediation.  On October 12, 2015, Moss submitted the brief supplement with exhibits.  On October 21, 2015, Mrs. Ferchaud submitted a reply to the supplement of Moss.  The above submissions and transcript comprised the record before the Special Master when he rendered his November 8, 2015 opinion.[1]

On November 8, 2015, the Special Master rendered an *Opinion and Decree*[2], which, among other things:  (1) found that Moss was not responsible for the delay in this matter and that Mrs. Ferchaud was not entitled to delay payments; (2) found that Mrs. Ferchaud was not entitled

---

[1]  Please see Exhibit "A":  the record before the Special Master when he rendered his November 8, 2015 *Opinion and Decree*.

[2]  Please see Exhibit "B":  November 8, 2015 Special Master's *Opinion and Decree*.

to other/additional damages; and (3) adopted the division of responsibility urged by Moss in its October 12, 2015 submission.

On November 23, 2015, Mrs. Ferchaud filed an Objection to Special Master's *Opinion and Decree* (Rec. Doc. 19786) which respectfully requested, among other things, that this matter be set for a hearing, including oral argument, and that the parties be allowed to submit further evidentiary submissions/briefing.  On November 24, 2015, this Honorable Court issued an Order regarding the Objection.  (Rec. Doc. 19799).  The Court ordered that Mrs. Ferchaud needed to submit further evidentiary submissions/briefing regarding the Special Master's *Opinion and Decree* by December 14, 2015.   The Court further ordered that Moss must submit a response/opposition to Mrs. Ferchaud's further evidentiary submissions/briefing regarding the Special Master's *Opinion and Decree* by January 8, 2016.  The Court also ordered that this matter be heard on January 14, 2016 at 9:00 a.m.

## <u>LAW</u>

### A.  <u>FEDERAL RULE OF CIVIL PROCEDURE 53</u>

Pursuant to Fed. R. Civ. P. 53 (f) (1),

> In acting on a master's order, report, or recommendations, the court must give the parties notice and an opportunity to be heard; may receive evidence; and may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions.

Pursuant to Fed. R. Civ. P. 53 (f) (3),

> The court must decide de novo all objections to findings of fact made or recommended by a master…

Pursuant to Fed. R. Civ. P. 53 (f) (4),

> The court must decide de novo all objections to conclusions of law made or recommended by a master.

Pursuant to Federal Rule of Civil Procedure 53, Mrs. Ferchaud respectfully requests that after the January 14, 2016 evidentiary hearing on this matter, that this Honorable Court sustain her objection to the Special Master's November 8, 2015 *Opinion and Decree* and that this Honorable Court find that: Moss is responsible for the delay and therefore, Mrs. Ferchaud is entitled to delay payments; Mrs. Ferchaud is entitled to other/additional damages; the Special Master erred in only determining responsibility for code issues/violations addressed by the City of New Orleans in its June 23, 2015 correspondence, and therefore, a determination needs to be made on the responsibility for all issues/violations that exist at Mrs. Ferchaud's property, and as are outlined in the submissions to the Special Master, including the *Preliminary Expert Report* of Mr. Flettrich; the Special Master erred in adopting the division of responsibility urged by Moss in its October 12, 2015 submission, including for the following items:  Building/General:  Items 1, 2, and 4; Electrical:  Item 6; and Mechanical:  Items 5, 6, and 13; for the items in the June 23, 2015 City of New Orleans correspondence, which Moss admitted that it was either responsible for or that it was willing to remedy, even though it did not believe it was responsible for, Moss must provide proof that it has remedied the item, and that the remedy is code compliant and that there are no issues with the item alleged to be remedied.

## ARGUMENT

### A. SPECIAL MASTER ERRED IN FINDING THAT MRS. FERCHAUD IS RESPONSIBLE FOR THE DELAY

The Special Master, in his November 8, 2015 *Opinion and Decree*, found that "[t]he delay was not attributable to Moss."[3]  In supporting his decision, the Special Master reasoned that "the settlement was carefully crafted, anticipating that Moss and the homeowner would agree upon a scope of work, after which Moss would have full control of the property until

---

[3] Please see Exhibit "B":  November 8, 2015 Special Master's *Opinion and Decree,* p. 2.

substantial completion."[4]  The Special Master stated, "[a]fter reviewing the written evidence and the testimony, the Special Master finds that Ms. Ferchaud upset this arrangement" and that "she took steps to exclude Moss from the site, going so far as to seek to have Moss replaced as the Contractor."[5]  However, for the reasons stated below, the Special Master erred in finding that Mrs. Ferchaud is responsible for the delay in the remediation and in determining that Moss did not have to make delay payments.

On August 22, 2014, a Move-Out Notice was issued by Moss regarding 6021 Canal Boulevard and 6025 Canal Boulevard.  In each Move-Out Notice (one for each dwelling), Moss stated that the move out date was November 4, 2014 and that the completion date was February 4, 2015.[6]  On September 5, 2014, a Revised Move-Out Notice was issued by Moss regarding 6021 Canal Boulevard and 6025 Canal Boulevard.  In each Revised Move-Out Notice (one for each dwelling), Moss stated that the move out date was November 13, 2014 and that the completion date was February 13, 2015.[7]  According to Mr. Flettrich, "[a] three month project completion time period for a project of this magnitude is grossly inadequate."[8]

Moss had full control of the property, and in fact, one of the most important facts in this case, is that Mrs. Ferchaud would have never came to New Orleans (on December 14, 2014) had she and/or the previous law firm handling her case not received certain emails from Moss in December of 2014 which stated that the remediation at Mrs. Ferchaud's property was put on hold because of alleged violations.  For the reasons explained below, these alleged violations were a

---

[4]  *Id.*

[5]  *Id.*

[6]  Please see Exhibit "C":  August 22, 2014 Move-Out Notice for 6021 Canal Blvd. and 6025 Canal Blvd.

[7]  Please see Attachment 37 to the *Preliminary Expert Report* of Mr. David C. Flettrich, A Professional Engineering Corporation, which is part of Exhibit "A" to this brief.

[8]  Please see p. 2 of the *Preliminary Expert Report* of Mr. David C. Flettrich, A Professional Engineering Corporation, which is part of Exhibit "A" to this brief.

misrepresentation by Moss, as no violations or inspections existed on 6021-25 Canal Blvd. at the time these December emails were sent by Moss.

On December 9, 2014, Mr. Justin Smith with Moss sent an email stating "that the CDW remediation schedule is on hold at this time as of 12/9/2014 for pre existing code violations including but not limited to previously performed unpermitted work, and structural violations."[9] According to Mr. Flettrich, "Mr. Smith's allegation of pre-existing code violations is unsupported and contradictory to the City of New Orleans permit records"[10] and that "[a] review of the building permit records stored on the City of New Orleans One Stop Shop website will reveal that there were no pre-existing code violations for either the 6021 dwelling or the 6025 dwelling."[11]  On December 10, 2014, Mr. Smith sent an email regarding revising his December 9, 2014 email explained above.  In his December 10, 2014 email, Mr. Smith stated, "[o]ur field personnel failed to reach out to the homeowner, and are doing so first thing in the morning."[12] Mr. Smith also stated, "…please be advised that due to pre existing homeowner code violations the CDW remediation schedule is on hold as of 12/11/2014 instead of 12/9/2014." [13]  Since Moss failed to contact Mrs. Ferchaud on December 9, 2014 regarding the alleged code violations, Moss revised the remediation schedule hold date.[14]

Due to the fact that Mrs. Ferchaud still had not received the necessary information from Moss regarding the alleged violations and in order for her to resolve the alleged pre-existing

---

[9]  Please see Attachment 49 to the *Preliminary Expert Report* of Mr. David C. Flettrich, A Professional Engineering Corporation, which is part of Exhibit "A" to this brief.
[10]  Please see p. 12 of the *Preliminary Expert Report* of Mr. David C. Flettrich, A Professional Engineering Corporation, which is part of Exhibit "A" to this brief.
[11]  *Id*.  The City of New Orleans One Stop Shop website can be accessed at http://www.nola.gov/onestop/.
[12]  Please see Attachment 50 to the *Preliminary Expert Report* of Mr. David C. Flettrich, A Professional Engineering Corporation, which is part of Exhibit "A" to this brief.
[13]  *Id.*
[14]  Exhibit "D":  December 11, 2014 email from Vickie Lory to Mrs. Ferchaud re: CDW Remediation Schedule Hold.

code violations, Mrs. Ferchaud's previous law firm handling her case asked for a copy of the alleged fail report on December 11, 2014.[15]

In response to the above request, on December 11, 2014, Mr. Smith sent an email which stated,

> Attached is the fail report.  The City failed this duplex because in their eyes it has been turned into an illegal 3 plex.  MOSS is at the mercy of City inspectors.  This is how the project was when we took the home over.  MOSS is currently attempting to contact the City for further information on this pre existing homeowner code violation.  As of receipt of this email, and attached report, the CDW remediation is at a stand still.[16]

After communicating with the City of New Orleans, Mrs. Ferchaud responded to the alleged fail report produced by Moss and informed Moss that the City of New Orleans had no record of any inspection done at 6021-25 Canal Blvd.  Despite this, Moss continued to falsely allege that 6021-25 Canal Blvd. had failed inspection.  However, the only piece of information offered by Moss to support the alleged failure of the inspection was a LAMA Incident Summary.  According to Mr. Flettrich,

> The basis of Mr. Smith's false allegation that the building had been illegally converted into a 3 plex was an incident summary report with a pending inspection date of November 13, 2014 that Mr. Smith obtained from the City of New Orleans One Stop Shop website.  A copy of this incident report was attached to Mr. Smith's… December 11, 2014 e-mail…[17]

A review of the incident report clearly shows that there is no mention of a violation and only a mention of a pending inspection.  Moss has never provided proof of any violations alleged in the December emails discussed above.  To the contrary, not only did the incident summary report only state that there was a pending inspection, but on December 16, 2014, Mr. Steven Dwyer,

---

[15]  Please see Attachment 50 to the *Preliminary Expert Report* of Mr. David C. Flettrich, A Professional Engineering Corporation, which is part of Exhibit "A" to this brief.
[16]  *Id.*
[17]  Please see p. 13 of the *Preliminary Expert Report* of Mr. David C. Flettrich, A Professional Engineering Corporation, which is part of Exhibit "A" to this brief.

with the City of New Orleans Code Enforcement Property Inspection/Violation Listing department, performed an inspection and reported that there was no code violation with respect to an illegal 3rd unit at the rear of the 6021 dwelling.[18]   For all of these reasons, the above described delays were caused by the misrepresentations of Moss that violations existed.   These delays were not caused by Mrs. Ferchaud.

Another delay caused in this matter relates to rough inspections requested by Moss, and made by Mr. Bryan Surgi, a third party inspector employed or retained by IECI, LLC and/or IECI & Associates.  On December 9, 2014, Mr. Surgi made a rough inspection of the mechanical work performed by Moss on 6025 Canal Boulevard.  According to Mr. Flettrich,

> At the conclusion of his inspection, Mr. Surgi placed an inspection sticker on the 6025 dwelling which erroneously indicated that mechanical work performed by Moss on the 6025 dwelling "passed" his rough inspection.[19]

On December 12, 2014, Mr. Surgi made a rough inspection of the electrical work performed by Moss on both dwellings.  According to Mr. Flettrich,

> At the conclusion of his inspection, Mr. Surgi placed an inspection sticker on the 6025 dwelling which erroneously indicated that electrical work performed by Moss on both the 6021 dwelling and the 6025 dwelling "passed" his rough inspection.[20]

On December 17, 2014, Mr. Surgi made a rough inspection of the mechanical work performed by Moss on 6021 Canal Boulevard.  According to Mr. Flettrich,

> At the conclusion of his inspection, Mr. Surgi placed an inspection sticker on the 6021 dwelling which erroneously indicated that mechanical work performed by Moss on the 6021 dwelling "passed" his rough inspection.[21]

---

[18]  Please see Attachment 42 to the *Preliminary Expert Report* of Mr. David C. Flettrich, A Professional Engineering Corporation, which is part of Exhibit "A" to this brief.  Please also see Exhibit "E":  December 16, 2014 No Violation Inspection Status from the City of New Orleans.

[19]  Please see p. 12 of the *Preliminary Expert Report* of Mr. David C. Flettrich, A Professional Engineering Corporation, which is part of Exhibit "A" to this brief.

[20]  Please see p. 13 of the *Preliminary Expert Report* of Mr. David C. Flettrich, A Professional Engineering Corporation, which is part of Exhibit "A" to this brief.

[21]  Please see p. 14 of the *Preliminary Expert Report* of Mr. David C. Flettrich, A Professional Engineering Corporation, which is part of Exhibit "A" to this brief.

Because Mrs. Ferchaud had to come to New Orleans to deal with the alleged Moss violations, as explained above, Mrs. Ferchaud was in New Orleans before the last rough inspection was completed by Mr. Surgi.  Mrs. Ferchaud, who is not a lead contractor, noticed numerous problems in the dwellings by simply walking through each dwelling.  Because of this, Mrs. Ferchaud knew that the above described rough inspections should not have passed, and informed Moss of the same.  However, as explained in more detail below, Moss, although a lead contractor, continued to falsely rely on these rough inspections.  In order to prevent Moss from permanently concealing from view life safety code violations and to prevent Moss from permanently creating both a life safety hazard and a property damage hazard, Mrs. Ferchaud was forced to hire experts to inspect the residential building located at 6021-6025 Canal Boulevard.  Had she not done this, Moss would have been able to close in the walls and ceilings, and permanently conceal from view the life safety code violations, identified in Mr. Flettrich's *Preliminary Expert Report*, and would have permanently created a life safety hazard and a property damage hazard.  Moss cannot dispute this fact, because of the subsequent inspections to Mr. Surgi's inspections, including inspections by the City of New Orleans.

Subsequent to Mr. Surgi's inspections, experts hired by Mrs. Ferchaud performed inspections and determined that code violations/issues exist including violations/issues regarding electrical and mechanical work performed by Moss on both the 6021 dwelling and the 6025 dwelling.  Mr. Flettrich's *Preliminary Expert Report* contains reasons why Mr. Surgi's rough inspections should not have passed.[22]  Mr. Flettrich's *Preliminary Expert Report* also contains electrical, plumbing, mechanical, and building code issues, building permit issues, miscellaneous

---

[22]  Please see pp. 26 and 28 of the *Preliminary Expert Report* of Mr. David C. Flettrich, A Professional Engineering Corporation, which is part of Exhibit "A" to this brief.

issues, design errors and construction defects, which are briefly summarized below.  However, according to Mr. Flettrich,

> Despite being provided clear and indisputable evidence in Flettrich's April 13, 2015 report that the mechanical and electrical systems that had been installed by Moss were in violation of the applicable mechanical and electrical codes, Moss continued to falsely assert in Mr. William Coates' April 23, 2015 e-mail to Ferchaud that their work was in accordance with all applicable codes and has passed rough inspections by the City of New Orleans… Mr. Coates is an assistant project manager with Moss.[23]

In addition, subsequent to Mr. Surgi's inspections, the City of New Orleans inspected the property and determined that both the 6021 dwelling and the 6025 dwelling have mechanical, electrical and building code deficiencies/violations/issues, as explained in more detail in Section B. below.   In fact, according to Mr. Flettrich, on May 19, 2015,

> Mr. Hardouin and Mr. Bordelon, along with Mr. Brian Medus, Assistant Chief Mechanical Inspector for the City of New Orleans Department of Safety & Permits, performed a follow-up third party audit inspection related to the mechanical and electrical work performed by Moss and/or Moss' subcontractors.
>
> During this inspection, Mr. Bordelon placed a "FAILED" electrical inspection sticker on each dwelling…Each inspection sticker stated that the walls and ceilings could not be closed until approved by a building inspector.[24]

Instead of working with Mrs. Ferchaud initially, and thereafter complying with the clear and indisputable evidence in Mr. Flettrich's April 13, 2015 report, Moss chose to continue "to falsely assert…that their work was in accordance with all applicable codes and has passed rough inspections by the City of New Orleans…"[25]  Mr. Flettrich's clear and indisputable evidence of violations has subsequently been confirmed by the City of New Orleans in its June 23, 2015

---

[23]  Please see p. 4 of the *Preliminary Expert Report* of Mr. David C. Flettrich, A Professional Engineering Corporation, which is part of Exhibit "A" to this brief.  Please also see paragraphs 1, 15, 18 and 26 in Attachment 9 of the *Preliminary Expert Report*.   Please also see pp. 18-19 of the *Preliminary Expert Report*.

[24]  Please see p. 21 of the *Preliminary Expert Report* of Mr. David C. Flettrich, A Professional Engineering Corporation, which is part of Exhibit "A" to this brief.  Please also see Photo 18 and 19 of Attachment 56 of the *Preliminary Expert Report*.

[25]  Please see p. 4 of the *Preliminary Expert Report* of Mr. David C. Flettrich, A Professional Engineering Corporation, which is part of Exhibit "A" to this brief.  Please also see paragraphs 1, 15, 18 and 26 in Attachment 9 of the *Preliminary Expert Report*.   Please also see pp. 18-19 of the *Preliminary Expert Report*.

correspondence, which is explained in section B. below.  Had Moss complied with Mrs. Ferchaud and/or her experts regarding these code violations, any delay in this matter would have been minimized or eliminated.  However, because Moss chose to falsely rely on the rough inspections of Mr. Surgi, Moss has caused substantial delays in this matter.  As important as the fact that Mrs. Ferchaud would have never came to New Orleans had Moss not sent the December 2014 emails regarding alleged code violations, is the fact that Mrs. Ferchaud is not the only person stating that the residence at 6021-25 Canal Blvd. has code violations.  This has been confirmed by Mrs. Ferchaud's experts as well as the City of New Orleans.

Another delay caused in this matter relates to a plumbing inspection on December 18, 2015.  On December 18, 2015, Moss paid the City of New Orleans to perform a special inspection report regarding plumbing.  The December 18, 2015 inspection found plumbing code violations.[26]  On December 19, 2014, Mrs. Ferchaud sent an email which stated that she was still waiting to see the itemized budget from the plumber.  On December 19, 2015, Justin Smith responded and stated, among other things, that it was Mrs. Ferchaud's "option to Subcontract these repairs with our plumber, or subcontract with one of your own."[27]  However, this was another misrepresentation by Moss.  As Mr. Leonard A. Davis' December 22, 2014 email shows, Moss' plumber did not desire to do the work, "and therefore, Ms. Ferchaud has been requested to have her own plumber address code issues before the balance of the work is completed by Moss."[28]  Importantly, Mr. Davis states, "[i]t is imperative that Moss and Ms. Ferchaud address the issues and that the project proceed to completion."[29]  In fact, Mrs. Ferchaud spent $4,800.00 to fix these plumbing issues, even though Mr. Tim Harris (Moss) said that Moss was responsible

---

[26]  Please see Exhibit "F": December 18, 2014 Special Inspector's Report.
[27]  Please see Exhibit "G":  December 18 – 19, 2014 emails regarding plumbing code violations.
[28]  Please see Exhibit "H":  December 22, 2014 email from Leonard A. Davis regarding 6021-6025 Canal Blvd.
[29]  *Id.*

for bringing up any original plumbing that did not meet code.  Mr. Davis' email, along with Mrs. Ferchaud paying this amount, clearly shows that Mrs. Ferchaud was doing anything but delaying this matter.  Instead, the party delaying this matter was Moss and only Moss.

According to the Special Master, "[f]rom December 18 forward, Moss never worked on the home again.  In fact, on January 9, 2015, Moss formally turned possession of the home over to Ms. Ferchaud, with Ms. Ferchaud having control over the lockbox."[30]  However, this is incorrect.  For example, between January 20 through January 25, 2015, Verges electric worked at the property.  In addition, on March 23, 2015 Moss entered the property and had its HVAC contractor perform remedial HVAC work.  On this same date, Moss also moved a container off the property even though Mrs. Ferchaud secured permission from the owner of the lot next door to leave the container there.  Additionally, emails from Moss in February of 2015 show that Moss was still involved with the codes for the Ferchaud residence.[31]

Another delay caused in this matter relates to the City of New Orleans' July 7, 2015 amended letter.  Although this issue has been resolve, as the City of New Orleans has amended its July 7, 2015 correspondence on August 19, 2015, this issue still caused delay and costs in this matter, as the parties had to address this issue outlined by the City of New Orleans.  According to the City of New Orleans' July 7, 2015 amended letter to all interested parties regarding the permit application amounts for construction: 14-25226 ($94,815) and 14-25267 ($99,776),

> The permit applications were in the following amounts for work on this property.  Based on the appraisal performed by Atherton Services (dated 6/29/2015) the cost of work applied for by Moss Construction would designate this structure as a substantially damaged.  This value would merit the elevation of any low areas to meet or exceed -2.5' NAVD.  This value is not met in the rear enclosed area and

---

[30]  Please see Exhibit "B":  November 8, 2015 Special Master's *Opinion and Decree*, p. 2.
[31]  Please see Exhibit 16 to the July 31, 2015 mediation position paper of Moss which is part of Exhibit "A" to this brief.

some mechanical equipment.  The areas should be elevated to meet the FEMA requirement."[32]

Mr. Flettrich in his *Preliminary Expert Report*, states,

> Although the total cost of the first version Final Cost Estimates (FCEs) that were approved on June 17, 2014 was $267,735.34, the total value of the proposed CDW remediation work listed by Moss on its two building permit applications dated August 13, 2014 was only $194,591.00.

> As described in detail elsewhere herein, Moss misrepresented the value, i.e., the cost, of the CDW repair work to the City of New Orleans Department of Safety &Permits in its two building permit applications.

> If Moss had listed the correct and significantly increased CDW repair costs on its two August 13, 2014 building permit applications, in all likelihood the following would have occurred:

> 1) The correct and significantly increased CDW repair costs would have immediately triggered a substantial damage (SD) evaluation by the City of New Orleans Department of Safety & Permits.

> 2) As a result of this SD evaluation, the City of New Orleans Department of Safety & Permits would have promptly issued a determination letter to Moss similar to, if not identical to, Mr. Zachary Smith's amended July 7, 2015 SD letter to all interested parties. Regardless of its exact text, this determination letter would have informed Moss of the following:

> a. That its building permit applications constituted substantial damage.

> b. That any low areas of the building must be elevated to meet or exceed -2.5' NAVD.

> 3) The City of New Orleans Department of Safety & Permits would not have issued the existing two existing building permits to Moss.

> 4) The City of New Orleans Department of Safety & Permits would not have issued a building permit to Moss for either dwelling until Moss revised (and resubmitted) its two building permit applications as follows:

> a. Each building permit application would be accompanied by design documents prepared by a design professional as required by Section R106.1 of IRC 201.

---

[32]  Please see Attachment 29 to the *Preliminary Expert Report* of Mr. David C. Flettrich, A Professional Engineering Corporation, which is part of Exhibit "A" to this brief for additional misrepresentations by Moss.

b. Each building permit application would include a sufficient value of proposed CDW remediation work to ensure that all building elevations would meet or exceed -2.5' NAVD.[33]

The record before this Honorable Court, including the mediation testimony, Mr. Flettrich's *Preliminary Expert Report* and his August 5, 2015 comments to the July 31, 2015 mediation position paper and exhibits of Moss[34] shows that the delays in this matter were caused by Moss not Mrs. Ferchaud.  In addition, the record shows that any delays allegedly caused by Mrs. Ferchaud were justified, in response to misrepresentations by Moss, and were to prevent the permanent creation of life safety and property damage hazards.[35]  For these reasons, Mrs. Ferchaud objects to the Special Master's *Opinion and Decree.*

## B. <u>THE SPECIAL MASTER ERRED IN ONLY ADDRESSING CODE ISSUES/VIOLATIONS ADDRESSED BY THE CITY OF NEW ORLEANS</u>

On June 23, 2015, the City of New Orleans issued correspondence to the parties regarding code issues/deficiencies at Mrs. Ferchaud's property.[36]  The June 23, 2015 City of New Orleans correspondence listed five (5) building/general violations/deficiencies; seven (7) electrical violations/deficiencies; and fifteen (15) mechanical violations/deficiencies.  As described in more detail below in section C., the October 12, 2015 submission to the Special Master by Moss was limited to code violations listed by the City of New Orleans in its June 23, 2015 correspondence.  When the Special Master adopted the division of responsibility urged by

---

[33]  Please see pp. 5-6, 9-11, 56-63 of the *Preliminary Expert Report* of Mr. David C. Flettrich, A Professional Engineering Corporation, which is part of Exhibit "A" to this brief for additional misrepresentations by Moss. Please also see Mr. Flettrich's August 5, 2015 comments to the mediation position paper and exhibits of Moss which is part of Exhibit "A" to this brief.

[34]  Please see Mr. Flettrich's August 5, 2015 comments to the mediation position paper and exhibits of Moss which is part of Exhibit "A" to this brief.

[35]  Please see the *Preliminary Expert Report* of Mr. David C. Flettrich, A Professional Engineering Corporation, which is part of Exhibit "A" to this brief for additional misrepresentations by Moss.  Please also see Mr. Flettrich's August 5, 2015 comments to the mediation position paper and exhibits of Moss which is part of Exhibit "A" to this brief.

[36]  Please see Attachment 27 of the *Preliminary Expert Report* of Mr. David C. Flettrich, A Professional Engineering Corporation, which is part of Exhibit "A" to this brief.

Moss in its October 12, 2015 submission, he only addressed the code issues/deficiencies addressed by the City of New Orleans in its June 23, 2015 correspondence.  This is a problem for the following reasons:  (1) in its June 23, 2015 correspondence, the City of New Orleans stated, "[t]his list is by far not comprehensive and the City of New Orleans reserves the right to amend this as needed for safety or compliance issues during any time of inspection"[37]; and (2) David C. Flettrich, A Professional Engineering Corporation hired by Mrs. Ferchaud generated a *Preliminary Expert Report* which identified life safety and code compliance issues related to the Chinese drywall repair work being performed by Moss on Mrs. Ferchaud's property, and all of these life safety and code compliance issues were not addressed by the City of New Orleans in its June 23, 2015 correspondence.  Further, these issues were before the Special Master, as Mrs. Ferchaud brought these issues before him when she submitted her mediation position paper with exhibits.

As previously explained in Mrs. Ferchaud's mediation position paper, the *Preliminary Expert Report* of Mr. Flettrich summarizes "the results of a preliminary study performed by David C. Flettrich, A Professional Engineering Corporation to identify life safety and code compliance issues"[38] related to the Chinese drywall repair work being performed by Moss on Mrs. Ferchaud's residential building.  In the *Preliminary Expert Report,* Mr. Flettrich has a *Milestones* section that chronologically lists important dates and events in this matter.  Mr. Flettrich's report details electrical, plumbing, mechanical, and building code issues, building permit issues, miscellaneous issues, design errors and construction defects. Mr. Flettrich also made conclusions related to: (1) Electrical Code Issues; (2) Plumbing Code Issues; (3) Mechanical Code Issues; (4) Building Code Issues; (5) Building Permit Issues; and (6)

---

[37]  *Id.*
[38]  Please see p. 1 of the *Preliminary Expert Report* of Mr. David C. Flettrich, A Professional Engineering Corporation, which is part of Exhibit "A" to this brief.

Miscellaneous Issues. The conclusions include problem, cause, discussion and solution selections. The conclusions also look at and discuss the June 23, 2015 amended code violations report from Mr. Zachary Smith, which violations report confirms conclusions made by Mr. Flettrich. Mr. Flettrich also details whether Moss or Mrs. Ferchaud is responsible for the violations/issues.

Below is a basic summary of Mr. Flettrich's conclusions. A detailed discussion regarding the conclusions related to: (1) Electrical Code Issues; (2) Plumbing Code Issues; (3) Mechanical Code Issues; (4) Building Code Issues; (5) Building Permit Issues; and (6) Miscellaneous Issues is in Mr. Flettrich's *Preliminary Expert Report.* Mr. Flettrich concluded the following:

**Electrical Code Issues:** (1) As presently installed in both the 6021 dwelling and the 6025 dwelling, the bonding clamp which connects the bonding jumper to the gas piping will be a violation of NEC 2011 when the finished ceilings are installed; (2) The lack of physical protection for non-metallic sheathed cable installed perpendicular to framing members in both dwellings is a violation of NEC 2011; (3) The lack of physical protection for non-metallic sheathed cable installed parallel to framing members in both dwellings is a violation of NEC 2011; (4) The lack of a bushing or grommet in the knockout located in the lower right section of the service entrance panel serving the 6021 dwelling is a violation of NEC 2011; (5) The lack of the required quantities of receptacle outlets in both dwellings is a violation of NEC 2011; (6) The burned electrical wire located in the ceiling joist space of the den of the 6021 dwelling should be replaced; and (7) Miscellaneous Electrical Issues.

**Plumbing Code Issues:**  (1) The burned PVC plumbing pipe located in the rear wall stud space of the laundry room of the 6025 dwelling should be replaced; (2) Pipe Leak Issues; (3) Pipe Pressure Testing Issues; and (4) Unresolved Plumbing Issues.

**Mechanical Code Issues:**  (1) The lack of adequate appliance access for inspection, service, repair and replacement of equipment located in the attic of both dwellings is a violation of IRC 2012; (2) The HVAC system heating and cooling equipment serving both dwellings was not sized in accordance with the requirements of IRC 2012; (3) The HVAC air distribution systems serving both dwellings were not sized and installed in accordance with the requirements of IRC 2012; (4) The HVAC system flexible ducts serving both dwellings were not installed in accordance with the requirements of IRC 2012; (5) The cooling coil condensate piping serving each of the building's two HVAC systems does not comply with the requirements of section M1411.3 of IRC 2012; (6) HVAC Test and Balance Issues; (7) HVAC System Supply and Return Air Grille/diffuser Issues; (8) Domestic Water Pipe Insulation Issues; (9) Gas Piping Issues; (10) Flue Piping Issues; (11) Attic Ventilation Issues; and (12) Miscellaneous Mechanical Issues.

**Building Code Issues:**  (1) Moss failed to address in its Permit Application the clear and unambiguous IRC 2012 fire resistant code requirements pertaining to the common wall which separates the 6021 dwelling from the 6025 dwelling; (2) The wood flooring system was damaged by moisture during the CDW repair project; (3) Marc Dahlman Report Issues; and (4) Miscellaneous Building Issues.

**Building Permit Issues:**  (1) Moss misrepresented the value, i.e., the cost, of the CDW repair work in its two building permit applications to the City of New Orleans

Department of Safety & Permits; (2) Revised Final Cost Estimates (FCEs); and (3) Owner Change Orders.

**Miscellaneous Issues:**  (1) Storage Pod Issues, e.g., Storage of Kitchen Cabinets; (2) Furniture Issues; (3) Documentation Issues; (4) Wall and Ceiling Insulation Issues; (5) Common Wall Sound Board Issues; (6) Plaster Credit Issues; (7) Plumbing Credit Issues; (8) Plumbing Fixture Credit Issues; (9) Wood Flooring Issues;  (10) Substantial Damage Issues; (11) Delay Issues; (12) Damage Issues and (13) Building Issues Not Identified in this Report.

As the division of responsibility for all of the above issues, including Mrs. Ferchaud's belief that Moss has breached its contract with her and has acted in bad faith, were not decided by the Special Master, Mrs. Ferchaud objects to the Special Master's *Opinion and Decree.*

## C. <u>SPECIAL MASTER ERRED IN ADOPTING THE ENTIRE OCTOBER 12, 2015 SUBMISSION OF MOSS</u>

In addition to the reasons explained in Section B. above, the Special Master also erred in adopting the entire October 12, 2015 submission of Moss for the following reasons:  (1) throughout its submissions to the Special Master, Moss provided no proof which supports its allegations that the majority of the deficiencies noted by the City of New Orleans are "preexisting, outside the scope of the remediation, and therefore, Mrs. Ferchaud's responsibility."  Moss also provided no proof that the deficiencies are homeowner issues.  In fact, Mrs. Ferchaud's submissions clearly show the contrary; and (2) Mr. Fletrrich's *Preliminary Expert Report* as well as his August 5, 2015 comments[39] to the mediation position paper and exhibits of Moss shows what issues/violations are the responsibility of Moss.

---

[39]  Please see the *Preliminary Expert Report* of Mr. David C. Flettrich, A Professional Engineering Corporation, and Mr. Flettrich's August 5, 2015 comments to the mediation position paper and exhibits of Moss which are both part of Exhibit "A" to this brief.

Regarding the June 23, 2015 City of New Orleans correspondence, Moss admitted that it was either responsible for or that it was willing to remedy, even though it did not believe it was responsible for, the following violations/deficiencies:  Building/General:  Items 3 and 5; Electrical:  Items 1, 2, 3, 4, 5, and 7; and Mechanical:  Items 4, 7, 8, 9, 10, 11, 12, 14, and 15. Mrs. Ferchaud's expert said that Mrs. Ferchaud was responsible for the following violations/deficiencies in the June 23, 2015 correspondence:  Mechanical:  Items 1, 2, and 3. Therefore, as far as the June 23, 2015 City of New Orleans correspondence, the remaining items that seem to be disputed are Building/General:  Items 1, 2, and 4; Electrical:  Item 6; and Mechanical:  Items 5, 6, and 13.  The record before this Honorable Court shows that Moss is responsible for these items.  As stated above, Mr. Flettrich has addressed numerous issues in his *Preliminary Expert Report*.  In addition, he has specifically addressed the position of Moss that it is not responsible for certain items detailed in the June 23, 2015 City of New Orleans correspondence.[40]  Some examples of this are as follows:  Regarding the HVAC system, Mr. Flettrich states,

> 3)   Under paragraph 4 beginning on page 3 of the Work Authorization Agreement, Moss is required to perform all CDW repair work in accordance with applicable codes and regulations.  Since replacement of the entire HVAC system was necessitated by the CDW problem and since a cooling coil condensate piping system is a part of an HVAC system, under the Work Authorization Agreement Moss is obligated to perform all HVAC related work at its cost in accordance with code.  Consequently, all HVAC system related code violations and deficiencies, including item 1 in the Building/General section of Mr. Smith's June 23, 2015 code violation letter, are the responsibility of Moss.[41]

Regarding the deficiencies associated with the common wall, Mr. Flettrich states that it is the responsibility of Moss for two reasons:

---

[40] Please see Mr. Flettrich's August 5, 2015 comments to the mediation position paper and exhibits of Moss which is part of Exhibit "A" to this brief.
[41] *Id.*

1)     Prior to the CDW problem, there was no pre-existing code violation related to the common wall, i.e., prior to the CDW problem, the common wall was not required (A) to have a fire resistance rating not less than 1-hour (B) to extend to and be tight against the exterior wall and (C) to extend from the foundation to the underside of the roof sheathing.

2)     Under paragraph 4 beginning on page 3 of the Work Authorization Agreement, Moss is required to perform all CDW repair work in accordance with applicable codes and regulations.  Since common wall repair work was necessitated by the CDW problem, under the Work Authorization Agreement Moss is obligated to perform all common wall work at its cost and in accordance with code., i.e., in accordance with section R302.3 of the 2012 IRC.[42]

Regarding the electrical deficiencies noted by the City of New Orleans, Mr. Flettrich states,

Under paragraph 4 beginning on page 3 of the Work Authorization Agreement, Moss is required to perform all CDW repair work in accordance with applicable codes and regulations.  Since electrical work was necessitated by the CDW problem, under the Work Authorization Agreement Moss is obligated to perform all electrical work at its cost and in accordance with code.  Consequently, all electrical code violations and deficiencies, including the seven (7) electrical code violations and deficiencies listed in Mr. Smith's June 23, 2015 code violation letter, are the responsibility of Moss.[43]

Regarding the mechanical deficiencies noted by the City of New Orleans, Mr. Flettrich states,

Under paragraph 4 beginning on page 3 of the Work Authorization Agreement, Moss is required to perform all CDW repair work in accordance with applicable codes and regulations.  Since the 12 mechanical code violations and deficiencies listed in items 4 through 15 in the mechanical section of Mr. Smith's June 23, 2015 code violation letter are related to mechanical work necessitated by the CDW problem, under the Work Authorization Agreement Moss is obligated to perform all corrective work associated with mechanical items 4 through 15 at its costs and in accordance with code.  Consequently, all 12 mechanical code violations and deficiencies associated with items 4 through 15 in the mechanical section of Mr. Smith's June 23, 2015 code violation letter, are the responsibility of Moss.

---

[42] *Id.*

[43] *Id.*

However, since the 3 mechanical code violations and deficiencies listed in items 1 through 3 in the mechanical section of Mr. Smith's June 23, 2015 code violation letter are not related to mechanical work necessitated by the CDW problem, Ms. Ferchaud is obligated to perform all corrective work associated with mechanical code items 1 through 3 at her cost and in accordance with code.[44]

This last paragraph is very important because it shows that Mrs. Ferchaud is not trying to recover from this settlement, anything that she does not believe she is entitled to.  As stated throughout Mrs. Ferchaud's submissions, all Mrs. Ferchaud wanted and expected, was for her once beautiful residence to be returned to her as it was before the defective Chinese drywall repair (remediation) work was performed by Moss.  For this to happen, Moss needed to provide Mrs. Ferchaud with a residential building which was free of Chinese drywall and in which Moss, under the terms and conditions of each Work Authorization Agreement, had performed all repair (remediation) work in compliance with the applicable NFPA Codes, References, and Standards and applicable International Residential Codes.   In addition to paragraph 4 of the Work Authorization Agreement, which is explained above, and in more detail in Mr. Flettrich's *Preliminary Expert Report*, under 4.5.1 of the Knauf Settlement,

> [i]n conducting their duties, the Lead Contractor and Other Approved Contractors shall conduct the remediation work so as to achieve, on a cost effective basis, the removal of all KPT Chinese Drywall, KPT Chinese Drywall-related odors and contamination; and to leave the home with the same construction quality and finishes, including remediating any damage to such quality and finishes that was caused by the KPT Chinese Drywall, as existed prior to the start of the remediation or damages caused by the remediation work…

Likewise, under Exhibit F of the Knauf Settlement, titled *Remediation Protocol,*

> [i]n conducting the remediation work and in resolving any disputes pursuant to the dispute resolute process in the Settlement Agreement (reprinted in Paragraph V below), the KPT Property Owner and Lead Contractor or Other Assigned Contractor agree that the objective of the remediation work is to remove on a cost effective basis all drywall, problem drywall-related odors, and contamination, including, but not limited to corrosion, tarnishing and pitting ('Contamination'); and to leave the KPT Property with the same construction quality and finishes,

---

[44] *Id.*

including remediating any damage to such quality and finishes that was caused by the drywall, as existed prior to the start of the remediation work.

Pursuant to above documentation, as well as additional documentation cited in Mrs. Ferchaud's submissions to the Special Master, and pursuant to the representations by Moss, Mrs. Ferchaud believed that Moss was supposed to take the building as it was, remove the Chinese drywall, and perform all repair (remediation) work in compliance with the applicable NFPA Codes, References, and Standards and applicable International Residential Codes.  If something was out of compliance and not touched/repaired by Moss, then Moss had no responsibility to bring it to compliance.  However, if Moss touched/repaired something, then it was the responsibility of Moss to make sure it was in compliance.  Unfortunately, as more thoroughly explained in Mr. Flettrich's *Preliminary Expert Report*, Moss failed to do the repair (remediation) work correctly and in compliance with the applicable NFPA Codes, References, and Standards, and applicable International Residential Codes.  As Mr. Flettrich explains in his *Preliminary Expert Report*, 6021 Canal Blvd. and 6025 Canal Blvd. have code issues, permit issues and other issues.  6021 Canal Blvd. and 6025 Canal Blvd. also have design errors and construction defects.  Some of these issues/errors/defects have also been noted in Mr. Marc Dahlman's reports and Mr. Zachary Smith's reports.  Because of this, Moss breached its contract with Mrs. Ferchaud.  Additionally, as stated in section B. above, the division of responsibility for all of the issues in this matter, including Mrs. Ferchaud's belief that Moss has breached its contract with her and has acted in bad faith, were not decided by the Special Master.  For this reason alone, Mrs. Ferchaud's Objection to the Special Master's *Opinion and Decree* should be sustained.

In addition, for the items in the June 23, 2015 City of New Orleans correspondence, which Moss admitted that it was either responsible for or that it was willing to remedy, even though it did not believe it was responsible for, Moss must provide proof that it has remedied the

item, and that the remedy is code compliant and that there are no issues with the item alleged to be remedied.  Considering the misrepresentations in this matter, as stated above, this proof is necessary to ensure that the items at Mrs. Ferchaud's residence are code compliant and have no issues.  Thus, Mrs. Ferchaud objects to the Special Master's *Opinion and Decree*.

### D.  <u>SPECIAL MASTER ERRED IN FINDING THAT MRS. FERCHAUD IS NOT ENTITLED TO OTHER/ADDITIONAL DAMAGES</u>

The Special Master, in his November 8, 2015 *Opinion and Decree*, found that Mrs. Ferchaud's "rights are confined to the remediation remedies found in Section 4.3"[45] of the Knauf Settlement Agreement.  In supporting his decision, the Special Master reasoned that Mrs. Ferchaud "is making a claim pursuant to the Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047"[46] and stated that "[t]hat Agreement limits a claimant's recovery to Section 4.3 of the Knauf Settlement Agreement."[47] According to the Special Master, "[i]t does not, for instance, allow recovery from the other loss fund as provided in Section 4.7 of the Knauf Settlement Agreement." [48]

Mrs. Ferchaud believes that the Special Master erred in this ruling, and believes that the record before this Honorable Court shows that Mrs. Ferchaud is entitled to other/additional damages which she requested in her mediation position paper.  However, even if the Special Master did not err, the circumstances in this matter are truly unique and for this reason, Mrs. Ferchaud respectfully requests that the Special Master and/or this Honorable Court uses its discretion to award Mrs. Ferchaud the requested other/additional damages.  The misrepresentations of Moss, as well as the defective remediation work performed by Moss and/or its subcontractors, has caused the remediation of 6021-25 Canal Blvd. to be delayed and, in fact,

---

[45] Please see Exhibit "B":  November 8, 2015 Special Master's *Opinion and Decree*.
[46] *Id*.
[47] *Id*.
[48] *Id*.

the projected CDW Repair project substantial completion date is indeterminate and the projected building occupancy date is indeterminate.  Because of this, Mrs. Ferchaud has incurred expenses she never imagined she would have to incur under this remediation.  Although it was impossible for Mrs. Ferchaud to quantify some damages, and although she was not sure all damages could be identified at the time of submission of her mediation position paper, Mrs. Ferchaud submitted an incomplete list of damages, which were attached to and listed in Mrs. Ferchaud's mediation position paper.  Pursuant to the Work Authorization Agreements between Moss and Mrs. Ferchaud, Moss was supposed to perform all repair (remediation) work in compliance with the applicable NFPA Codes, References, and Standards and applicable International Residential Codes.  Had Moss done this, this remediation would have been complete.  Had Moss listened to Mrs. Ferchaud and/or her experts regarding the various code issues/violations, this remediation would have been complete.  Because of these unique circumstances, even if this Honorable Court determines that Mrs. Ferchaud is limited to Section 4.3 of the Knauf Settlement Agreement, Mrs. Ferchaud respectfully requests that the Special Master and/or this Honorable Court uses its discretion to award Mrs. Ferchaud the requested other/additional damages.

Pursuant to section 4.7.3.1 of the Knauf Class Settlement,

> [t]he Special Master and the MDL Court may, in their discretion, consider and allow claims that are not explicitly provided in Sections 4.7.1.1, 4.7.1.2, 4.7.1.3, 4.7.14, 4.7.1.5 and 4.7.1.6, so long as the claims are equitably justified and do not involve claims for the specifically enumerated Other Loss Exclusions.  In considering any such additional claims, the Special Master and the MDL Court may, in their discretion, adjust the amount of the claims so as to protect Other Loss funds for other Settlement Class Members.

For these reasons, Mrs. Ferchaud objects to the Special Master's *Opinion and Decree.*

## **CONCLUSION**

For the reasons explained above, Mrs. Ferchaud respectfully moves this Honorable Court

for an Order sustaining her objection to the Special Master's November 8, 2015 *Opinion and Decree* and that this Honorable Court find that: (1) Moss is responsible for the delay and therefore, Mrs. Ferchaud is entitled to delay payments; (2) Mrs. Ferchaud is entitled to other/additional damages; (3) the Special Master erred in only determining responsibility for code issues/violations addressed by the City of New Orleans in its June 23, 2015 correspondence, and therefore, a determination needs to be made on the responsibility for all issues/violations that exist at Mrs. Ferchaud's property, and as are outlined in the submissions to the Special Master, including the *Preliminary Expert Report* of Mr. Flettrich; (4) the Special Master erred in adopting the division of responsibility urged by Moss in its October 12, 2015 submission, including for the following items:  Building/General:  Items 1, 2, and 4; Electrical: Item 6; and Mechanical:  Items 5, 6, and 13; (5) for the items in the June 23, 2015 City of New Orleans correspondence, which Moss admitted that it was either responsible for or that it was willing to remedy, even though it did not believe it was responsible for, Moss must provide proof that it has remedied the item, and that the remedy is code compliant and that there are no issues with the item alleged to be remedied.

Respectfully submitted:

/s/ Joseph M. Bruno
Joseph M. Bruno, (LA Bar No. 3604)
Bruno & Bruno, LLP
855 Baronne Street
New Orleans, Louisiana  70113
Telephone:  (504) 525-1335
Facsimile:  (504) 561-6775

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above Brief has been served upon all counsel of record by electronic notice via the Court's CM/ECF system this 14th day of December, 2015.

/s/ Joseph M. Bruno
