# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION

*This pleading relates to:  10-362*

CIVIL ACTION NO. 2:09-md-2047

SECTION "L", MAG. 2

JUDGE ELDON E. FALLON

MAGISTRATE JOSEPH WILKINSON


### KNAUF DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING OCEANIQUE DEVELOPMENT COMPANY EVIDENTIARY HEARING


BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

KERRY J. MILLER (#24562), T.A.
DANIEL J. DYSART (#33812)
201 St. Charles Avenue
Suite 3600
New Orleans, LA  70170
Telephone:    (504) 566-8646
Facsimile:    (504) 585-6946
Email:        kjmiller@bakerdonelson.com
*Counsel for the Knauf Defendants*

## TABLE OF CONTENTS

I.     PROPOSED FINDINGS OF FACT ................................................................... 1

     A.     MDL Proceedings Related to the Oceanique Evidentiary Hearing. ........................1

     B.     Prior Proceedings Regarding Oceanique Development Company. ........................6

     C.     Construction, Remediation, and Presentment of Oceanique's Remediation
             Claim.............................................................................................................11

     D.     Oceanique's Remediation Claim to the Remediation Fund Includes
             Claimed Costs that were Already Compensated or are Covered Under the
             Other Loss Fund...........................................................................................14

     E.     Oceanique's Remediation Claim Includes Claimed Costs Unsupported by
             Any Documentation. .....................................................................................16

     F.     Oceanique's Remediation Claim Includes Claimed Costs that Are Not
             Covered by the Already Remediated Properties Protocol, the Remediation
             Protocol, and Are Not Reasonable Costs.....................................................24

II.    PROPOSED CONCLUSIONS OF LAW ...................................................... 30

     A.     Oceanique is a Commercial Owner Class Member and Bound by the Knauf
             Class Settlement Agreement, including the Already Remediated Properties
             Protocol and the Remediation Protocol. ....................................................30

     B.     Louisiana Law on Special Damages. ...........................................................32

     C.     Oceanique Already Received an Award from the Other Loss Fund and is
             Precluded from Obtaining a Double Recovery............................................33

     D.     Oceanique is Precluded from Seeking an Award from the Remediation
             Fund for Benefits Eligible Only Under the Other Loss Fund.......................34

     E.     Oceanique May Not Seek Reimbursement for Other Covered Expenses.............35

     F.     Oceanique's Failure to Properly Submit Documentation to Support its
             Claimed Costs Precludes an Award for Reasonable Reimbursable Costs............36

     G.     Oceanique's Claimed Costs for Remediation Work Inconsistent with the
             Knauf Remediation Protocol Precludes an Award for Reasonable
             Reimbursable Costs. .....................................................................................37

ii

H.     Oceanique is Bound by the Court's Prior Ruling Regarding Reasonable Overhead and Profit and is Precluded from an Award for Attorneys' Fees...........38

I.     Conclusion ........................................................................................................38

CERTIFICATE OF SERVICE ................................................................................................ 41

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | CIVIL ACTION NO. 2:09-md-2047 |
| | SECTION "L", MAG. 2 |
| | JUDGE ELDON E. FALLON |
| *This pleading relates to:  10-362* | MAGISTRATE JOSEPH WILKINSON |

KNAUF DEFENDANTS' PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW REGARDING
OCEANIQUE DEVELOPMENT COMPANY EVIDENTIARY HEARING

**NOW INTO COURT**, through undersigned counsel, come the Knauf Defendants[1], who

submit their proposed Findings of Fact and Conclusions of Law regarding the December 7, 2015

Oceanique Development Company ("Oceanique") evidentiary hearing:

I.      **PROPOSED FINDINGS OF FACT**

   A.      **MDL Proceedings Related to the Oceanique Evidentiary Hearing.**

   1.      On June 15, 2009, the Judicial Panel on Multi-District Litigation ("JPML")

transferred nine actions to the Eastern District of Louisiana and, with the consent of that court,

were assigned to the Honorable Eldon E. Fallon for coordinated and consolidated pretrial

proceedings.  R. Doc. 1 (Transfer Order from MDL Panel).

---

[1] The Knauf Defendants include Knauf Plasterboard (Tianjin) Co., Ltd., Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH, Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda., and PT Knauf Gypsum Indonesia.

2.      On June 16, 2009, this Court issued Pretrial Order 1 ("PTO 1"), which reminded parties and counsel of "their duty to preserve evidence that may be relevant to this action." R. Doc. 2 (PTO 1).

3.      On October 9, 2009, this Court issued Pretrial Order 1B ("PTO 1B"), which provided detailed requirements regarding the preservation of physical evidence, including the identification and recording of the manufacturer markings of each drywall board removed during remediation. R. Doc. 337 (PTO 1B).

4.      On December 9, 2009, the PSC filed Plaintiffs' Omnibus Class Action Complaint (I) ("Omnibus Complaint I") against the Knauf Defendants and several other defendants. R. Doc. 1, 2:09-CV-7628.  Oceanique is a named plaintiff in Omnibus Complaint I.  *Id.*

5.      On December 20, 2011, after extensive discovery and several bellwether trials, and seeking to avoid the effort, expense, and risk of continued litigation, the Knauf Defendants and the PSC entered into a Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL 2047, in part to resolve claims of property owners who self-remediated their properties containing KPT Chinese Drywall[2] or entered into a contract to remediate their properties prior to the Class Settlement Agreement.  R. Doc. 12061-5 (Original Knauf Class Settlement Agreement).

6.      On February 7, 2013, the MDL Court issued an Order granting Final Approval to the Third Amended Knauf Class Settlement Agreement. R. Doc. 16570.

7.      On October 3, 2013, the Knauf Defendants and the PSC filed the Fourth Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL

---

[2] All capitalized terms not defined herein have the same definition as the Knauf Class Settlement Agreement.  R. Doc. 16407-3.

2047, which amends certain sections of the Third Amended Class Settlement Agreement (collectively, the "Knauf Class Settlement Agreement").  R. Doc. 16407-3 (Third Amended Knauf Class Settlement Agreement); R. Doc. 17165-1 (Fourth Amended Knauf Class Settlement Agreement).  On November 1, 2013, the MDL Court issued an Order granting Approval of the Fourth Amended Class Settlement Agreement. R. Doc. 17220.

8.      The Knauf Class Settlement Agreement shall be governed by, and construed and enforced in accordance with, the substantive laws of the State of Louisiana without regard to conflict of laws principles. R. Doc. 16407-3 at § 18.10 (Third Amended Knauf Class Settlement Agreement).

9.      Pursuant to the Knauf Class Settlement Agreement, the Knauf Defendants established two Settlement Funds: a Remediation Fund and an Other Loss Fund.  *Id*. at §§ 1.69; 4.1; 4.2; 4.6.

10.      Owners who have self-remediated Affected Properties may seek benefits to resolve their Remediation Claims as provided in the Already Remediated Properties Protocol. *Id*. at § 4.3.7.

11.      Remediation Claims shall be paid by the Remediation Fund.  *Id*. at §§ 4.2-4.5. Remediation Claims include claims associated with reasonable remediation costs and Other Covered Expenses. *Id*. at § 1.61. Other Covered Expenses include alternative living expenses, personal property damage, maintenance of property during remediation, including utility bills, insurance, property taxes, and moving and storage expenses *Id*. at §1.47.   Other Covered Expenses are paid by the Lump Sum Payment from the Remediation Fund to Residential

3

Owners, but not Commercial Owners. *Id*. at § 4.3.1.1; Defense Exhibit 1, R. Doc. 12061-6 at § V (Already Remediated Properties Protocol).

12.     The Already Remediated Properties Protocol creates a process by which to resolve the Remediation Claims of individual owners who self-remediated properties affected by KPT Chinese Drywall prior to the Execution Date (December 20, 2011) of the Knauf Class Settlement Agreement on a property-by-property basis. Defense Exhibit 1, R. Doc. 12061-6 (Already Remediated Properties Protocol).  This process consists of: (1) the property owner's provision of documents concerning the remediation; (2) a negotiation period; (3) a mediation, if necessary; and (4) if the mediation fails, a proceeding before the Court to resolve the Remediation Claims. *Id*. at § I.

13.     Owners of Already Remediated Properties are required to submit the following documentation concerning remediation of the property: (1) photographs and/or video images of all drywall removed from the property during remediation (for owners with claims pending in MDL 2047, the submission shall be in the form required by MDL Pretrial Order 1B); (2) any evidence of KPT Chinese Drywall and Non-KPT Chinese Drywall, if any, in the property prior to remediation; (3) proof of corrosion or other evidence that the KPT Chinese Drywall was reactive; (4) interior photographs of the property immediately prior to the commencement of, and following completion of, the remediation, including photographs and/or video images of the flooring and major components such as cabinets, moldings, doors, intercom systems, and fixtures for every room and bathroom, and, to the extent possible, security systems, appliances and audio such as surround sound; (5) the remediation contract and an itemization from the contractor who performed the remediation work of the materials used during the remediation, including, but not

4

limited to, manufacturer, model number, and quantity; (6) an itemized invoice [or ledger] from the contractor who performed the remediation work; (7) proof of payment, such as cancelled checks, credit card statements, etc; (8) A floor plan of the property with dimensions; (9) an environmental certificate; and (10) an Owner Disclosure Affidavit, which includes a certification that the materials provided comprise all of the available documentation regarding the claim. *Id.* at § III.

14.     If a Remediation Claim cannot be resolved by the Owner and the Knauf Defendants, the Knauf Defendants and the Owner shall submit the owner's Remediation Claim to the Special Master. *Id.* at § IV(B).  The Special Master will then conduct a mediation and issue an opinion and decree regarding the Remediation Claim. *Id.*

15.     Following the Special Master's opinion and decree, either the Knauf Defendants or the Owner may seek review from the Court.  *Id.*  If the Court reviews an Owner's Remediation Claim, the scope of the Court's review shall be limited to the Reimbursable Costs set forth in Section IV(D) of the Already Remediated Properties Protocol.  *Id.* at § IV(C).

16.     In determining Reimbursable Costs, the Court shall employ certain criteria including: (1) whether the work was consistent with the Remediation Protocol; (2) whether the costs are attributable to contractor double billing, waste, or fraud; (3) whether the costs are attributable to upgrades; and (4) the KPT drywall percentage.  *Id.* at § IV(D).

17.     The Remediation Fund will also pay Residential Owners for Other Covered Expenses by issuing a Lump Sum Payment pursuant to Section 4.3.1.1 of the Knauf Class Settlement Agreement. *Id.* at § V.  Commercial Owners are not eligible to receive Other Covered

Expenses or the Lump Sum Payment.  *Id*; R. Doc. 16047-3 at § 4.3.1.1 (Third Amended Knauf Class Settlement Agreement).

18.    Separate and apart from Remediation Claims to the Remediation Fund, Residential and Commercial Owner Class Members may also seek benefits from the Other Loss Fund as defined in Section 1.47 of the Knauf Class Settlement Agreement. *Id*. at § VI.

19.    Other Loss Fund benefits permitted by the Knauf Class Settlement Agreement include pre-remediation alternative living expenses (PRALE); loss use, sales, and rentals; foreclosures; sales in mitigation; tenant losses; and bodily injury. R. Doc. 16407-3 at § 4.7 (Third Amended Knauf Class Settlement Agreement).

20.    Residential and Commercial Owner Class Members of the Knauf Class Settlement Agreement can also make a Miscellaneous claim to the Other Loss Fund that operates as a catch-all for claims not compensable from the Remediation Fund.  Transcript at 53:6-14.

21.     If an Owner who is qualified to obtain benefits under the Other Loss Fund section of the Knauf Class Settlement Agreement has outstanding loans on the property, the Owner may file a Lost Sales claim to the Other Loss Fund seeking the lost value resulting from the delay in selling the property and interest (but not principal) on the loan or loans, but only to the extent that the Owner was unable to sell the property due to KPT Chinese Drywall.  R. Doc. 16407-3 at § 4.7.1.2 (Third Amended Knauf Class Settlement Agreement).

**B.    Prior Proceedings Regarding Oceanique Development Company.**

22.    Oceanique Development Company, Inc. ("Oceanique") is a developer of condominiums in Fort Pierce, Florida and constructed the Oceanique Development. Transcript at

85:9-16. Maurice Kodsi and his son, Robert are principals and owners of Oceanique.  Transcript 58:18-60:7.

23.     Due to the alleged presence of KPT Chinese Drywall in the Oceanique Development, Oceanique was named as a Plaintiff in Omnibus Complaint I, which was filed on December 9, 2009. R. Doc. 1, 09-cv-07628.  Omnibus Complaint I was resolved as part of the Knauf Class Settlement Agreement.  R. Doc. 16407-3.

24.     Oceanique is a Class Member and part of the Commercial Owner subclass to the Knauf Class Settlement Agreement.  Defense Exhibit 9 (Owner Disclosure Affidavit); R. Doc. 16407-3 at § 1.1.2.2.  Despite receiving full opportunity and notice pursuant to the Knauf Class Settlement Agreement, Oceanique did not opt-out of the Knauf Class Settlement Agreement.

25.     Pursuant to the Already Remediated Properties Protocol, and as a Commercial Owner Class Member of the Knauf Class Settlement Agreement, Oceanique made a Remediation Claim to the Remediation Fund for $3,180,499.28 for 39 units and 3 commons areas. Defense Exhibit 9 (Owner Disclosure Affidavit); Defense Exhibit 4 (Ledger).

26.     Oceanique's Remediation Claim was for reimbursement of remediation costs allegedly incurred in connection with the remediation of 39 units and 3 commons areas at the Oceanique Development.  Defense Exhibit 4 (Owner Disclosure Affidavit).

27.     On or about April 23, 2012, Oceanique submitted an incomplete Owner Disclosure Affidavit.  Defense Exhibit 9 (Owner Disclosure Affidavit).  The Owner Disclosure Affidavit was required by the Already Remediated Properties Protocol and required the claimant attach supporting documentation.  R. Doc. 12061-6 (Already Remediated Properties Protocol).

28.     On or about September 12, 2014 Oceanique submitted three binders of documentation in support of its Remediation Claim. Defense Exhibit 3 (In Globo Binders).

29.     Following a review of the drywall documentation, the Knauf Defendants' position was that Oceanique failed to preserve and present evidence in support of its claim as required under the Knauf Class Settlement Agreement. R. Doc. 19413 at p. 3 (August 21, 2015 Order & Reasons).

30.     The only Oceanique Development unit that was inspected professionally was Unit 801B.  Defense Exhibit 14 (August 27, 2009 Inspection Report); Defense Exhibit 15 (September 30, 2009 Collection Report).   For that unit, a pre-remediation inspection report with photographs was provided to the Knauf Defendants in March 2015 by Oceanique's counsel, which affirmed that the unit was a 100% Taishan unit.  *Id.*

31.     Pursuant to the Knauf Class Settlement Agreement, the matter was submitted to the Special Master, Dan Balhoff. R. Doc. 19413 at p. 2 (August 21, 2015 Order & Reasons).  On May 11, 2015, the Special Master issued an Opinion and Decree in the matter. *Id.*

32.     The Special Master found that Oceanique failed to present evidence of KPT Chinese Drywall consistent with PTO 1B, and that the Knauf Class Settlement Agreement and the Knauf Defendants were prejudiced by the failure of Oceanique to preserve evidence. *Id*. The Special Master determined that only a single KPT Chinese Drywall board was properly documented and presented consistent with PTO 1B.  *Id*. Based on the premise that the Oceanique Development contained 6,000 drywall boards (calculated using the total square footage), the Special Master reduced Oceanique's claim to the amount of KPT Chinese Drywall properly documented and submitted pursuant to PTO 1B (1/6000).  *Id*.  Because the Knauf Defendants

8

and Oceanique did not address the issue of Reimbursable Costs, the Special Master awarded Oceanique 1/6000 of its claimed amount: $530.08. *Id*.

33.    On May 29, 2015, following the Special Master's Opinion and Decree, Oceanique filed an Objection and Motion for Court Review of the Special Master's Opinion and Decree. R. Doc. 19023 (Objection and Motion for Court Review).

34.    Following additional briefing by the Knauf Defendants and Oceanique, the Court heard oral argument on July 14, 2015 regarding the Objection and Motion for Court Review of the Special Master's Opinion and Decree. R. Doc. 19298 (Minute Entry).

35.    On August 21, 2015, the Court issued Order and Reasons that granted the Motion for Court Review of the Special Master's Opinion and Decree and overruled the Special Master's award. R. Doc. 19413 (August 21, 2015 Order and Reasons).  In reversing the Special Master's award, the Court ordered that the KPT Percentage of the Oceanique Development was 60%.  *Id*. Based on the KPT Percentage and Oceanique's claimed amount, the Court awarded Oceanique $1,908,299.57. *Id*.

36.    On August 31, 2015, following the Court's Order and Reasons, the Knauf Defendants filed a Motion for Reconsideration on the basis that Oceanique is limited to reasonable Reimbursable Costs under the Knauf Class Settlement Agreement. R. Doc. 19428 (Motion for Reconsideration).

37.    Following additional briefing by the Knauf Defendants and Oceanique, the Court heard oral argument on November 3, 2015 regarding the Motion for Reconsideration. R. Doc. 19686 (Minute Entry of Motion for Reconsideration).

9

38.    The Court granted the Knauf Defendant's Motion for Reconsideration on the basis that the Court's review of the Oceanique claim was not limited to the reasonable Reimbursable Costs under the Knauf Class Settlement Agreement and ordered that the Knauf Defendants and Oceanique conduct an evidentiary hearing regarding the issue of Reimbursable Costs.  *Id.*

39.    On December 7, 2015, the Knauf Defendants presented evidence and testimony with two witnesses: Phillip A. Adams of Moss and Associates, and Jacob Woody of BrownGreer.  R. Doc. 19890 (Minute Entry of 12/7/15 Evidentiary Hearing).  Oceanique presented evidence and testimony with two witnesses: Maurice Kodsi and Robert Kodsi, both of owners and principals of Oceanique.  *Id*.

40.    Mr. Kodsi's testimony establishes that ***his prior sworn affidavit testimony regarding the remediation commencement date, the remediation completion date, and KPT percentage evidence in the Oceanique Development is completely false***.  Transcript 100:2-101:11; 120:15-122:8; 114:4-116:18.  For example, Mr. Kodsi's testimony establishes that ***Oceanique did not commence remediation until after PTO 1 and Oceanique was still demolishing at least six units after this Court entered PTO 1B***.  Transcript 100:2-101:11; 120:15-122:8.  Further, it was shown through cross-examination that Mr. Kodsi's prior sworn affidavit ***testimony regarding KPT evidence at Oceanique***, which was relied on in determining the KPT percentage, ***was completely false***. Transcript 114:4-116:18.

41.    In addition to providing false testimony, ***Mr. Kodsi's testimony was also evasive, ambivalent, and incredulous*** throughout his cross-examination, ***as he refused to answer questions on cross-examination***.  Transcript 108:11-110:18; 122:14-123:19; 87:7-88:25; 128:9-130:8.  For example, in responding to questions regarding a purported construction loan, Mr.

10

Kodsi refused to identify the source of the loan, admitted he had no cancelled checks, loan statements, or any other documentation to support payment of the loan or interest, and asked the Court to rely solely on his testimony that it was paid.  Transcript 128:9-130:8.  Furthermore, five years after first filing his claim against the Knauf Defendants, ***Mr. Kodsi unbelievably attempted to produce new evidence at the hearing that was never previously produced to the Knauf Defendants***, or his own counsel.  Transcript 111:11-112:12; 130:25-131:11.

42.     Following the December 7, 2015 evidentiary hearing, the Court ordered the Knauf Defendants and Oceanique to submit proposed Findings of Fact and Conclusions of Law for the Court's consideration.  R. Doc. 19890 (Minute Entry).

**C.     Construction, Remediation, and Presentment of Oceanique's Remediation Claim.**

43.     The Oceanique Development is a two-tower, 144-unit condominium complex developed by Oceanique Development Company, Inc.  Oceanique's owners and principals are Maurice Kodsi and Robert Kodsi.  Transcript 58:18-60:7; 85:9-16.

44.     Construction of the Oceanique Development commenced in 2005.  Transcript 60:8-9.  The north tower was completed in January 2007. Transcript 60:19-21.   The south tower was completed in 2009. Transcript 60:22-23.    During the initial construction from February to September 2006, Oceanique purchased thousands of sheets of drywall from Banner Supply Company.  Transcript 60:10-13.  In the second quarter of 2009, Oceanique learned that some of the drywall boards it used in construction were comprised of defective Chinese drywall. R. Doc. 19413 (August 21, 2015 Order & Reasons).

45.     Oceanique remediated 39 condominium units and 3 common areas at the Oceanique Development.  Transcript 66:12-13; Defense Exhibit 9 (Owner Disclosure Affidavit).  Oceanique had only sold six affected units at the time of remediation.  Transcript 98:9-17.

46.     From 2008 - 2012, there was a recession in the construction and condominium industries in Florida. Transcript 89:10-90:9.  Oceanique submits its remediation efforts commenced in May 2009, one month before the formation of the present MDL and several months before the promulgation of the Court's second evidence preservation order, PTO 1B.  Defense Exhibit 12. (Affidavit of Maurice Kodsi).  However, the earliest permits for the Oceanique Development were generated in September 2009, after PTO 1 was issued.  Transcript 100:2-101:11; Defense Exhibit 10 (Permits).

47.     Oceanique submits that all Chinese drywall was removed from  the affected units and common areas by October 2009, prior to PTO 1B. Defense Exhibit 12. (Affidavit of Maurice Kodsi).  However, invoices from its subcontractors establish that at least six units contained Chinese drywall in November 2009, one month after the implementation of PTO 1B.  Defense Exhibit 16 (McPhilany Invoices); Transcript 120:15-122:8.

48.     Maurice Kodsi testified that he personally observed the demolition and repair/remediation of all 39 units and 3 common areas at the Oceanique Development. Defense Exhibit 12. (Affidavit of Maurice Kodsi).  According to Maurice Kodsi's testimony, each of the units and commons areas, including Unit 801B, contained numerous sheets of KPT Chinese Drywall.  *Id*.  Maurice Kodsi testified that he knew it was KPT Chinese Drywall that was removed from 39 units and 3 common areas at Oceanique because of the distinctive Knauf-Tianjin markings on the reverse side of the drywall identical to that in the Court's photographic

catalog contained in PTO 10.  *Id*.  Based upon Maurice Kodsi's review of PTO 10, Kodsi testified that he only saw drywall that had markings of Knauf Tianjin.  *Id*.

49.     Unit 801B was one of the affected units at the Oceanique Development, and was owned by Lincoln and America Mendez.  Defense Exhibit 13 (PPF of Unit 801B); Transcript 115:11-16.  Following inspections by Yanes Inspection Services on August 27, 2009 and September 30, 2009, it was confirmed that unit 801B contained 100% Taishan Chinese Drywall. Defense Exhibits 14 (Inspection Report); Defense Exhibit 15 (Collection Report).  Unit 801B was one of the units specifically identified by Mr. Kodsi as a unit that contained only KPT Chinese drywall in a sworn affidavit, thereby making his testimony false.  Defense Exhibit 12 (Affidavit of Maurice Kodsi); Transcript 115:24-116:7.

50.     Almost three years after remediation of the Oceanique Development, Oceanique submitted an incomplete Owner Disclosure Affidavit.  Defense Exhibit 9 (Owner Disclosure Affidavit) and almost five years after the remediation submitted three binders of documentation in support of its Remediation Claim.  Defense Exhibits 4, 3, (Ledger, In Globo Binders).  The week before the December 7, 2015 evidentiary hearing, Oceanique submitted additional materials based on documentation that was missing.  Defense Exhibit 3 (In Globo Binders). These materials contained the demolition invoices and permit checks that contradict Mr. Kodsi's prior sworn affidavit testimony regarding the remediation commencement and completion dates at the Oceanique Development.  Defense Exhibit 16 (McPhilany Invoices); Transcript 120:15-122:8; Transcript 100:2-101:11; Defense Exhibit 10 (Permits).

51.     Oceanique claims $3,180,498.84 in remediation costs. Defense Exhibit 4 (Ledger).

### D. Oceanique's Remediation Claim to the Remediation Fund Includes Claimed Costs that were Already Compensated or are Covered Under the Other Loss Fund.

52.     Oceanique seeks $200,000.00 for Interest on Property, $220,954.00 for Interest on Construction Costs, and $350,000.00 for Condo Fees and Real Estate Taxes.[3] Defense Exhibit 4. (Ledger).

53.     Like all other class members, Oceanique may seek (1) compensation for remediation costs that are reasonable Reimbursable Costs, as the term is defined by the Knauf Class Settlement Agreement, by making a Remediation Claim to the Remediation Fund, and (2) Other Loss Benefits from the Other Loss Fund by making one or more of the seven types of claims available under the Other Loss Fund.  R. Doc. 16407-3 at § 4.2, 4.6 (Third Amended Knauf Class Settlement Agreement). Remediation and Other Loss Fund claims are mutually exclusive and act as two distinct funds or "pots." *Id*. at §§ 1.69; 4.1; 4.2; 4.6.  The Knauf Class Settlement Agreement does not provide for a double recovery. *Id*. The distinction between the settlement "pots" was made abundantly clear in the Knauf Defendants' redirect examination of Jacob Woody:

> **1** Mr. Woody, you have given presentations in the past
> **2** to this Court, in fact, today, regarding the various pots in
> **3** the settlement, correct?
> **4 A. Yes.**
> **5 Q.** And the Remediation Fund is one pot?
> **6 A. Yes.**
> **7 Q.** The Other Loss Fund is another?
> **8 A. Yes.**
> **9 Q.** And the Settlement Agreement, you would agree that based
> **10** on the type of claim, that claim would go into one or the other
> **11** pot?

---

[3] The Condo Fees and Real Estate Taxes claim is for 100 total units although only 39 units were allegedly affected by Chinese Drywall and remediated.

**12 A. Correct.**

Transcript 57:1-12.

54.     Pursuant to the Knauf Class Settlement Agreement, Oceanique's claims for Interest on Property, Interest on Construction Costs, and Condo Fees and Real Estates Taxes are Other Loss Benefits through the Other Loss Fund, not the Remediation Fund. *Id*. at § 4.7.1.

55.     Oceanique's claims for Interest on Property, Interest on Construction Costs, and Condo Fees and Real Estates Taxes were already compensated out of the Other Loss Fund in connection with Oceanique's Lost Sales claims.  Defense Exhibit 6; (Oceanique's Other Loss Fund Summary); Transcript 52:17-25.

56.     Oceanique previously made 42 Lost Sales claims to the Other Loss Fund for the 39 units and 3 common areas remediated.  Defense Exhibit 6 (Oceanique's Other Loss Fund Summary); Transcript 52:17-25; 48:19-23.   Under its Lost Sale claim to the Other Loss Fund, Oceanique was eligible to receive the lost value resulting from the delay in selling the Affected Properties. R. Doc. 16407-3 at § 4.7.1.2.3 (Third Amended Knauf Class Settlement Agreement); Transcript 49:15-23.   Further, Oceanique was entitled to recover interest, but not principal payments, on any loan or loans on the property, but only to the extent that the owner was unable to sell the affected property due to KPT Chinese Drywall.  *Id*. at § 4.7.1.2.3; Transcript 50:8-51:19.

57.     For its Lost Sales claim to the Other Loss Fund, Oceanique was granted the maximum award ($10,000.00) for each of its 42 Lost Sales claims to the Other Loss Fund, including Unit 801B, totaling $420,000.00.  Defense Exhibit 6 (Oceanique's Other Loss Fund Summary); Transcript 52:17-25.

58.     $10,000.00 is the maximum award for a Lost Sales claim to the Other Loss Fund because it is a capped fund.   Transcript 54:17-25.   The Settlement Administrator, the Knauf Defendants, and the PSC worked to develop PTO 29, which sets out the maximum amounts that can be awarded for each claim type. R. Doc. 18232 (PTO 29); Transcript 52:17-25 .

59.     Oceanique also had the opportunity to file other types of claims to the Other Loss Fund, including: Foreclosure, Short Sale, Pre-remediation Alternative Living Expenses, Bodily Injury, Tenant Loss, and the Miscellaneous claim type.   R. Doc. 16407-3 at § 4.7; Transcript 53:4-25.

60.     Miscellaneous claims allow for claimants to make claims that are not specifically included in any of the other Other Loss Fund claim types provided for in the Knauf Class Settlement Agreement.    Transcript 53:4-54:3.   The Miscellaneous claim type would cover compensation for carrying costs such as interest, condo fees, and real estate taxes.   Transcript 53:15-19.

61.     Oceanique did not file any other claims to the Other Loss Fund other than the 42 Lost Sales claims.   Transcript 54:1-3.   Had Oceanique filed a Miscellaneous claim to the Other Loss Fund, the maximum award allowable would have been $2,500.00 per claim.   Transcript 53:22-25.

**E.      Oceanique's Remediation Claim Includes Claimed Costs Unsupported by Any Documentation.**

62.     Oceanique seeks amounts for Payroll, MK Supervision, Appliances, Storage, Moving/Hauling, Engineer Letters, and Punch Out/Warranty/Reserve/Contingency. Defense Exhibit 4 (Ledger).   These claimed amounts are completely or partially unsupported by evidence.

16

Defense Exhibit 3 (In Globo Binders). The record does not establish that the claimed amounts were either incurred or reasonable in the construction industry.

63.     Oceanique submitted claimed costs in the amount of $360,000.00 for Payroll. Defense Exhibit 4 (Ledger).   Oceanique submits this claimed cost is for payroll expenses incurred by Oceanique in connection with the remediation of the Oceanique Development. Transcript 104:11-105:7.

64.     As a Commercial Owner Class Member to the Knauf Class Settlement Agreement, Oceanique was obligated to submit itemized payroll invoices and/or records and proof of payment, such as cancelled checks, payroll statements, or other documentation to evidence that the cost was incurred.  R. Doc. 10261-6 at § III (Already Remediation Properties Protocol).

65.     It was Oceanique's responsibility to maintain and provide invoices, proof of payment, and other documentation to prove $360,000.00 in payroll expenses were incurred in connection with the remediation of the Oceanique Development.   Transcript 9:17-10:13.

66.     Oceanique failed to provide any documentation to support any of the $360,000.00 in claimed payroll expenses.[4]  Transcript 16:15-18; 104:11-107:15.  In the construction industry, it is not reasonable for a well-established developer like Oceanique to fail to maintain payroll records to support a $360,000.00 claim.  Transcript 16:19-22; 45:21-23.

67.     The testimony of Maurice Kodsi regarding payroll expenses is insufficient to support the claimed amount under the Knauf Class Settlement Agreement, which requires that

---

[4] Oceanique may not seek to supplement documentation through documents first produced at the December 7, 2015 hearing as the Knauf Defendants' Motion to Strike was granted precluding any admission of documents not previously produced.

Claimants submit documentation in support of claimed amounts. Transcript 104:11-107:15; Defense Exhibit 1, R. Doc. 12061-6 at § III (Already Remediated Properties Protocol). Further, Mr. Kodsi is not credible and his testimony is unreliable in light of Mr. Kodsi's refusal to answer questions and his false testimony regarding Oceanique's remediation commencement date, completion date, and lack of Taishan Chinese Drywall in the Oceanique development.[5] Transcript 100:2-101:11; 120:15-122:8; 114:4-116:18.

68.   Oceanique submitted claimed costs in the amount of $120,000.00 for MK Supervision. Defense Exhibit 4 (Ledger). Oceanique submits this cost was incurred for remediation supervision by Maurice Kodsi. Transcript 107:16-21.

69.   As a Commercial Owner Class Member to the Knauf Class Settlement Agreement, Oceanique was obligated to submit itemized payroll invoices and/or records and proof of payment, such as cancelled checks, payroll statements, or other documentation to evidence that the supervision cost was incurred. R. Doc. 12061-6 at § III (Already Remediation Properties Protocol).

70.   It was Oceanique's responsibility to maintain and provide invoices, proof of payment, and/or other documentation to establish that $120,000.00 in supervision expenses were incurred in connection with the remediation of the Oceanique Development. Transcript 9:17-10:3.

---

[5] *See In re Houston Drywall, Inc*., No. 05-95161-H4-7, 2008 WL 2754526, at *9 (Bankr. S.D. Tex. July 10, 2008)(witness testimony not credible where witness was "evasive and refused, on various occasions, to concede the obvious"); *In re Ritz*, 459 B.R. 623, 629 (Bankr. S.D. Tex. 2011) aff'd, 513 B.R. 510 (S.D. Tex. 2014) aff'd, 787 F.3d 312 (5th Cir. 2015)(finding witness not credible where witness gave answers which directly contradicted answers he had previously given in discovery and was evasive, frequently giving non-responsive answers to questions which were unambiguous); *see also Quinones v. U.S. Fid. & Guar. Co*., 630 So. 2d 1303, 1308 (La. 1994)(citation omitted) (noting that an appellate court may find trial court's credibility determination erroneous where documents or objective evidence so contradicts the witness' story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story).

71.     Oceanique failed to provide any documentation to support any of the $120,000.00 in claimed supervision expenses.[6]  Transcript 17:8-11.  In the construction industry, it is not reasonable for a well-established developer like Oceanique to not maintain records to support a $120,000.00 claim.  Transcript 17:12-15.  Furthermore, Maurice Kodsi confirmed he was not actually paid for his supervision.  Transcript 111:15-20.

72.     Mr. Kodsi's testimony to establish supervision expenses is insufficient to support the claimed amount under the Knauf Class Settlement Agreement, which requires Claimants submit documentation in support of claimed amounts. Defense Exhibit 1, R. Doc. 12061-6 at § III (Already Remediated Properties Protocol).  Further, Mr. Kodsi is not credible and his testimony is unreliable in light of Mr. Kodsi's refusal to answer questions and his false testimony regarding Oceanique's remediation commencement date, completion date, and lack of Taishan Chinese Drywall in the Oceanique development. Transcript 100:2-101:11; 120:15-122:8; 114:4-116:18.

73.     Oceanique submitted claimed costs in the amount of $274,000.00 for Appliances. Defense Exhibit 4 (Ledger).  Oceanique submits this is for the cost of appliance replacement in the affected units at the Oceanique Development.  Transcript 71:6-16.

74.     As a Commercial Owner Class Member to the Knauf Class Settlement Agreement, Oceanique was obligated to submit itemized invoices and proof of payment, such as cancelled checks, credit card statements, or other documentation to evidence that the cost was incurred. R. Doc. 12061-6 at § III (Already Remediation Properties Protocol).

---

[6] Oceanique may not seek to supplement documentation through documents first produced at the December 7, 2015 hearing as the Knauf Defendants' Motion to Strike was granted precluding any admission of documents not previously produced. Transcript 131:4-11.

75.     It was Oceanique's responsibility to maintain and provide invoices, proof of payment, and other documentation to establish that $274,000.00 in appliance replacement expenses were incurred in connection with the remediation of the Oceanique Development. Transcript 9:17-10:13.

76.     Oceanique failed to provide any documentation to support any of the $274,000.00 in claimed appliance replacement expenses.[7]   Transcript 17:16-18:12.   In the construction industry, it is not reasonable for a well-established developer like Oceanique to fail to maintain appliance expense records to support a $274,000.00 claim, especially since the payment documentation would contain information required for any future manufacturer warranty or recall issues with the appliances. *Id; see also id.* at 16:19-22; 45:21-23.

77.     The testimony of Maurice Kodsi regarding appliance replacement is insufficient to support the claimed amount under the Knauf Class Settlement Agreement, which requires Claimants submit documentation in support of claimed amounts.  Transcript 71:6-16; Defense Exhibit 1, R. Doc. R. Doc. 12061-6 at § III (Already Remediated Properties Protocol).   Further, Mr. Kodsi is not credible and his testimony is unreliable in light of Mr. Kodsi's refusal to answer questions and his false testimony regarding Oceanique's remediation commencement date, completion date, and lack of Taishan Chinese Drywall in the Oceanique Development. Transcript 100:2-101:11; 120:15-122:8; 114:4-116:18.

---

[7] Oceanique may not seek to supplement documentation through documents first produced at the December 7, 2015 hearing as the Knauf Defendants' Motion to Strike was granted precluding any admission of documents not previously produced. Transcript 131:4-11.

78.     Oceanique submitted claimed costs in the amount of $24,000.00 for Storage. Defense Exhibit 4 (Ledger).   Oceanique provided no testimony or exhibits regarding the $24,000.00 in storage costs.

79.     As a Commercial Owner Class Member to the Knauf Class Settlement Agreement, Oceanique was obligated to submit invoices and proof of payment, such as cancelled checks, credit card statements, or other documentation to evidence that the cost was incurred. Defense Exhibit 1, R. Doc. 12061-6 at § III (Already Remediated Properties Protocol).

80.     It was Oceanique's responsibility to maintain and provide documentation to establish that $24,000.00 in storage costs were incurred in connection with the remediation of the Oceanique Development. Transcript 16:19-22; 45:21-23.

81.     Oceanique failed to provide any evidence to support any of the $24,000.00 in claimed storage costs.[8]  Transcript 19:17-21.

82.     Oceanique submitted claimed costs in the amount of $20,000.00 for Moving/Hauling.  Defense Exhibit 4 (Ledger).  Oceanique submits this claimed cost is for costs incurred by Oceanique in connection with the moving materials and fixtures between units during the remediation of the Oceanique Development.   Transcript 72:9-73:2.

83.     As a Commercial Owner Class Member to the Knauf Class Settlement Agreement, Oceanique was obligated to submit invoices and proof of payment, such as cancelled checks, credit card statements, or other documentation to evidence that the cost was incurred. Defense Exhibit 1,  R. Doc. 12061-6 (Already Remediated Properties Protocol).

---

[8] Oceanique may not seek to supplement documentation through documents first produced at the December 7, 2015 hearing as the Knauf Defendants' Motion to Strike was granted precluding any admission of documents not previously produced.

84.     It was Oceanique's responsibility to maintain and provide documentation to establish that $20,000.00 in moving expenses were incurred in connection with the remediation of the Oceanique Development. Transcript 16:19-22; 45:21-23.

85.     Oceanique's only submission for Moving/Hauling is a one-page statement from Tricon Development of Brevard, Inc. ("Tricon"), which is the contractor company for the Oceanique Development and is also owned by Maurice and Robert Kodsi.  Defense Exhibit 3 (In Globo Binders); Transcript 19:22-20:4.  The invoice is not signed, dated, and contains no level of specificity to identify the work that was done.  *Id*.  There is no evidence that Tricon billed or received payment from Oceanique in the amount of $20,000.00.

86.     Oceanique provided no evidence that $20,000.00 in costs were incurred for moving expenses in connection with the Oceanique Development remediation.  Further, the testimony of Maurice Kodsi regarding moving expenses is insufficient to support the claimed amount under the Knauf Class Settlement Agreement, which requires Claimants submit documentation in support of claimed amounts.  Transcript 72:17-73:2; Defense Exhibit 1, R. Doc. 12061-6 (Already Remediated Properties Protocol).  Further, Mr. Kodsi's testimony is not credible and his testimony is unreliable in light of Mr. Kodsi's refusal to answer questions and his false testimony regarding Oceanique's remediation commencement date, completion date, and lack of Taishan Chinese Drywall in the Oceanique development.  Transcript 100:2-101:11; 120:15-122:8; 114:4-116:18.

87.     Oceanique submitted claimed costs in the amount of $14,523.00 for Engineering Letters.  Defense Exhibit 4 (Ledger).  It is unknown what this claimed cost is for, since

Oceanique provided no documentation other than cancelled checks to HSA Golden.  Transcript 20:12-25.

88.    As a Commercial Owner Class Member to the Knauf Class Settlement Agreement, Oceanique was obligated to submit invoices and proof of payment to evidence that the cost was incurred. Defense Exhibit 1, R. Doc. 12061-6 at § III (Already Remediated Properties Protocol).

89.    It was Oceanique's responsibility to maintain and provide documentation to establish the engineering scope of work for the $14,523.00 in expenses incurred. Transcript 16:19-22; 45:21-23.  Oceanique failed to provide any documentation to identify the scope of work for the $14,523.00 in claimed engineering expenses and failed to provide the engineering reports themselves. Transcript 20:12-25.

90.    Oceanique submitted claimed costs in the amount of $770,954.00 for Interest on Construction Loan, Interest on Property, Condo Fees and Real Estate Taxes.  Defense Exhibit 4 (Ledger).  Aside from these items being non-remediation costs, Oceanique submitted no evidence to support any of these amounts and refused to even identify the source of the alleged construction loan. Transcript 46:7-12; 128:9-129:4.

91.    Oceanique submitted claimed costs in the amount of $200,000.00 for Punch Out/Warranty/Reserve/Contingency. Defense Exhibit 4 (Ledger). Oceanique submits this claimed cost is a contingency for warranty items.  Transcript 81:22-82:23.

92.    As a Commercial Owner Class Member to the Knauf Class Settlement Agreement, Oceanique was obligated to submit invoices and proof of payment to evidence that

the cost was incurred for the contingency expenses. Defense Exhibit 1, R. Doc. 12061-6 at § III (Already Remediated Properties Protocol).

93.     It was Oceanique's responsibility to maintain and provide documentation to establish that $200,000.00 in contingency expenses were incurred in connection with the remediation of the Oceanique Development.  Transcript 16:19-22; 45:21-23.

94.     Oceanique failed to provide any evidence to support any of the $200,000.00 in claimed contingency expenses.[9] Transcript 130:17-131:11; 25:10-20.

95.     The testimony of Maurice Kodsi regarding contingency items is insufficient to support the claimed amount under the Knauf Class Settlement Agreement, which requires Claimants submit documentation in support of claimed amounts and which requires actual expenditures.  Transcript 81:22-82:23; Defense Exhibit 1, R. Doc. 12061-6 at § III (Already Remediated Properties Protocol).  Further, Mr. Kodsi is not credible and his testimony is unreliable in light of Mr. Kodsi's refusal to answer questions and his false testimony regarding Oceanique's remediation commencement date, completion date, and lack of Taishan Chinese Drywall in the development.  Transcript 100:2-101:11; 120:15-122:8; 114:4-116:18.

   **F.     Oceanique's Remediation Claim Includes Claimed Costs that Are Not Covered by the Already Remediated Properties Protocol, the Remediation Protocol, and Are Not Reasonable Costs.**

96.     Oceanique seeks amounts for Trim & Paint Labor Charlie [McPhilany], Storage, Moving/Hauling, Utilities, Scratched/Delaminated Glass, Asphalt Repair, Redo Decks, Plumbing

---

[9] Oceanique may not seek to supplement documentation through documents first produced at the December 7, 2015 hearing as the Knauf Defendants' Motion to Strike was granted precluding any admission of documents not previously produced.

Repairs, Door/Lock Repairs, Builder Overhead/Profit/Legal/Accounting and Punch Out/Warranty/Reserve/Contingency.  Defense Exhibit 4 (Ledger).

97.     Oceanique seeks $38,550.00 for labor and work provided by Charles McPhilany during the remediation of the Oceanique Development.  *Id*.  Of the claimed amount, $3,060.00 are for invoices related to shutter crank installation.  Transcript 19:7-14; Defense Exhibit 16 (McPhilany Invoices).

98.     Shutter cranks are not part of the Already Remediated Properties Protocol or the Remediation Protocol, and costs incurred in connection with shutter cranks are not reasonable because  the cranks are not affected by Chinese Drywall.  Defense Exhibit 1, R. Doc. 12061-6 (Already Remediated Properties Protocol); Defense Exhibit 2, R. Doc. 12061-14 (Remediation Protocol);  Transcript 19:7-16.

99.     Oceanique provided no testimony or evidence to support its claim regarding shutter cranks.

100.    Oceanique seeks $24,000.00 for Storage, $20,000.00 for Moving/Hauling, $15,000.00 for Utilities-FPL, and $12,000.00 in Utilities - Water and Sewer.  Defense Exhibit 4 (Ledger).

101.    Storage, moving, and utilities are Other Covered Expenses under the Knauf Class Settlement Agreement.  Rec. Doc. 16407-3 § 1:47 (Third Amended Knauf Class Settlement Agreement).

102.    Oceanique submitted claimed costs in the amount of $11,308.19 for Scratched/Delaminate Glass.  Defense Exhibit 4 (Ledger)

103.    Glass repair or replacement is not part of the Already Remediated Properties Protocol or the Remediation Protocol and costs incurred in connection with glass repair or replacement are not reasonable because the glass is not affected by Chinese Drywall. Defense Exhibit 1, R. Doc. 12061-6 (Already Remediated Properties Protocol); Defense Exhibit 2, R. Doc. 12061-14 (Remediation Protocol); Transcript 22:5-17.

104.    Damage to glass during the Oceanique remediation is a cost to be borne by the remediation contractor.  Transcript 22:5-17.  If the Oceanique Development remediation was conducted by the Knauf Class Settlement Agreement program contractor, Moss and Associates, the contractor, and not Knauf, would incur the cost of replacing damaged or broken glass during the remediation due to contractor negligence.  Transcript 22:5-17.

105.    Oceanique submitted claimed costs in the amount of $7,200.00 for Asphalt Repairs. Defense Exhibit 4 (Ledger).  The asphalt repair work was to seal and stripe the asphalt areas.  Transcript 22:20-23:11.

106.    Asphalt repair is not part of the Already Remediated Properties Protocol or the Remediation Protocol and costs incurred in connection with asphalt repair are not reasonable because the asphalt is not affected by Chinese Drywall.  Defense Exhibit 1, R. Doc. 12061-6 (Already Remediated Properties Protocol); Defense Exhibit 2, R. Doc. 12061-14 (Remediation Protocol); Transcript 22:20-23:11.

107.    Oceanique failed to provide any evidence that the asphalt repair was reasonably related to the Oceanique Development remediation.  The testimony of Maurice Kodsi regarding asphalt repair is insufficient, unreliable, and is not credible in light of Mr. Kodsi's refusal to answer questions and his false testimony regarding Oceanique's remediation commencement

date, completion date, and lack of Taishan Chinese Drywall in the Oceanique development. Transcript 100:2-101:11; 120:15-122:8; 114:4-116:18.

108.    Oceanique submitted claimed costs in the amount of $6,716.01 for Redo Decks. Defense Exhibit 4 (Ledger). This claimed amount was for leveling of ponding areas on balconies.  Transcript 23:6-9.

109.    Repair of balcony decking to reduce pooling is not part of the Already Remediated Properties Protocol or the Remediation Protocol, and costs incurred in connection with balcony decking are not reasonable because the balcony decking is not affected by Chinese Drywall. Defense Exhibit 1, R. Doc. 12061-6 (Already Remediated Properties Protocol); Defense Exhibit 2, R. Doc. 12061-14 (Remediation Protocol); Transcript 23:6-11; 25:21-26:5

110.    Oceanique failed to provide any evidence that the decking work was reasonably related to the Oceanique Development remediation.  The testimony of Maurice Kodsi regarding damaging to decking is insufficient, unreliable, and is not credible in light of Mr. Kodsi's refusal to answer questions and his false testimony regarding Oceanique's remediation commencement date, completion date, and lack of Taishan Chinese Drywall in the development. Transcript 100:2-101:11; 120:15-122:8; 114:4-116:18.

111.    Oceanique submitted claimed costs in the amount of $3,726.73 for Plumbing Repairs.  Defense Exhibit 4 (Ledger).  This claimed amount is for cleaning of main drains. Transcript 23:12-21; Defense Exhibit 17 (Plumbing Invoices).

112.    Plumbing services to clean out  main drains is not part of the Already Remediated Properties Protocol or the Remediation Protocol and costs incurred in connection with plumbing cleaning are not reasonable because plumbing drains are not affected by Chinese Drywall.

27

Defense Exhibit 1, R. Doc. 12061-6 (Already Remediated Properties Protocol); Defense Exhibit 2, R. Doc. 12061-14 (Remediation Protocol); Transcript 23:12-21.

113.    Oceanique failed to provide any evidence that the plumbing repairs were reasonably related to the Oceanique Development remediation.  The testimony of Maurice Kodsi regarding plumbing repairs is insufficient, unreliable, and is not credible in light of Mr. Kodsi's refusal to answer questions and his false testimony regarding Oceanique's remediation commencement date, completion date, and lack of Taishan Chinese Drywall in the Oceanique development.  Transcript 100:2-101:11; 120:15-122:8; 114:4-116:18.

114.    Oceanique submitted claimed costs in the amount of $1,590.76 for Door/Locks Repair.  Defense Exhibit 4 (Ledger).  This claimed amount is for re-keying of locks and replacement of certain doors at the Oceanique Development. Transcript 23:22-24:4.

115.    Rekeying locks and replacing doors are not part of the Already Remediated Properties Protocol or the Remediation Protocol, and costs incurred in connection with re-keying locks and replacing doors are not reasonable because doors and locks are not affected by Chinese Drywall.  Defense Exhibit 1, R. Doc. 12061-6 (Already Remediated Properties Protocol); Defense Exhibit 2, R. Doc. 12061-14 (Remediation Protocol); Transcript 23:22-24:4.

116.    Oceanique failed to provide any evidence that the door or lock repairs were reasonably related to the Oceanique Development remediation.  The testimony of Maurice Kodsi regarding lock and door repairs is insufficient, unreliable, and is not credible in light of Mr. Kodsi's refusal to answer questions and his false testimony regarding Oceanique's remediation commencement date, completion date, and Taishan Chinese Drywall in the Oceanique development.  Transcript 100:2-101:11; 120:15-122:8; 114:4-116:18.

117.    Oceanique submitted claimed costs in the amount of $200,000.00 for contingency items.  Defense Exhibit 4 (Ledger); Transcript 25:10-20.  These items are not part of the Already Remediated Properties Protocol or the Remediation Protocol and are not reasonable because they are not incurred costs, but rather contingencies. Defense Exhibit 1, R. Doc. 12061-6 (Already Remediated Properties Protocol); Defense Exhibit 2, R. Doc. 12061-14 (Remediation Protocol); Transcript 25:10-20.

118.    Oceanique failed to provide any evidence that the contingency costs were incurred or reasonably related to the Oceanique Development remediation.  The testimony of Maurice Kodsi regarding contingency expenses is insufficient, unreliable, and is not credible in light of Mr. Kodsi's refusal to answer questions and his false testimony regarding Oceanique's remediation commencement date, completion date, and lack of Taishan Chinese Drywall in the Oceanique development.  Transcript 100:2-101:11; 120:15-122:8; 114:4-116:18.

119.    Oceanique submitted claimed costs for Builder Overhead and Profit, Legal and Accounting in the amount of $441,909.00.   Defense Exhibit 4 (Ledger); Transcript 24:5-20.

120.    This amount is not reasonable because it is greater than the reasonable industry standard and is greater than the reasonable amount of builder overhead and profit previously allowed by the Court. R. Doc. 2713 (*Hernandez* Findings of Fact and Conclusions of Law).   In *Hernandez*, the Court permitted reasonable builder overhead and profit of 20% of construction costs, which is industry standard. *Id*; Transcript 24:5-20.

121.    Further, Oceanique's claimed amount for Builder Overhead and Profit, Legal, and Accounting is not reasonable because it was applied to the incorrect amount of remediation costs.   Transcript 24:5-20.

122.    Finally, in the Knauf Class Settlement Agreement, legal fees and expenses are paid out of a separate $160,000.000.00 fund for legal fees and expenses and are not to be claimed against the Knauf Defendants through the Remediation Fund.  R. Doc. 16407-3 at § 14 (Third Amended Knauf Class Settlement Agreement).

## II.    PROPOSED CONCLUSIONS OF LAW

### A.    Oceanique is a Commercial Owner Class Member and Bound by the Knauf Class Settlement Agreement, including the Already Remediated Properties Protocol and the Remediation Protocol.

123.    Oceanique is a Commercial Owner Class Member of the Knauf Class Settlement Agreement. Defense Exhibit 9 (ODA); R. Doc. 16407-3 at § 1.1.2.2 (Third Amended Knauf Class Settlement Agreement).

124.    Oceanique had full opportunity and notice to opt-out of the Knauf Class Settlement Agreement.  R. Doc. 16407-3 at §§ 7, 8 (Third Amended Knauf Class Settlement Agreement).  Oceanique did not opt out of the Knauf Class Settlement Agreement.  Therefore, Oceanique is bound by the terms and provisions of the Knauf Class Settlement Agreement, which has been given final approval by the Court, including the Already Remediated Properties Protocol and the Remediation Protocol. *Id*. at § 8.1; R. Doc. 17220 (Order Approving Knauf Class Settlement Agreement).

125.    Oceanique is a Commercial Owner of an Already Remediated Property under the Knauf Class Settlement Agreement. Defense Exhibit 9 (Owner Disclosure Affidavit); R. Doc. 16407-3 at § 4.3.7.1 (Third Amended Knauf Class Settlement Agreement).  Because Oceanique self-remediated the Oceanique Development prior to the Execution Date (December 20, 2011), it may be entitled to benefits from the Remediation Fund to resolve its Remediation Claims as

30

provided in the Already Remediated Properties Protocol.  *Id*. at § 4.3.7.1.  Separate and apart from its Remediation Claims to the Remediation Fund, Oceanique was also permitted to seek benefits under the Other Loss Fund as defined in Section 1.47 of the Knauf Class Settlement Agreement. *Id*. at § 4.3.7.1; R. Doc. 12061-6 at § VI (Already Remediated Properties Protocol).

126.    The "Already Remediated Properties Protocol" governs the process by which Owners may resolve the Remediation Claims when they self-remediated properties.  Defense Exhibit 1, R. Doc. 12061-6 at § I (Already Remediated Properties Protocol). As a Commercial Owner Class Member, Oceanique is bound by the Already Remediated Properties Protocol. R. Doc. 16407-3 at § 8.1 (Third Amended Knauf Class Settlement Agreement).

127.    Pursuant to the Already Remediated Properties Protocol, Oceanique may seek reimbursement for its Remediation Claim from the Remediation Fund only for reasonable Reimbursable Costs. Defense Exhibit 1, R. Doc. 12061-6 at § IV (Already Remediated Properties Protocol). In determining Reimbursable Costs, the Court shall review whether the remediation work was reasonably consistent with the Remediation Protocol. *Id.*

128.    The Remediation Protocol identifies the scope of work for remediation of KPT Chinese Drywall properties and provides guidance for what is a reasonable Reimbursable Cost. Defense Exhibit 2, R. Doc. 12061-14 (Remediation Protocol).  As a Commercial Owner Class Member, Oceanique is bound by the Remediation Protocol.

129.    As a Commercial Owner, Oceanique is not entitled to obtain Other Covered Expenses from the Remediation Fund in the form of the Lump Sum Payment. Defense Exhibit 1, R. Doc. 12061-6 at § V (Already Remediated Properties Protocol); 16407-3 at § 4.3.1.1 (Third Amended Knauf Class Settlement Agreement).

### B.    Louisiana Law on Special Damages.

Under Louisiana Law, which applies to the Knauf Class Settlement Agreement, "[a] plaintiff bears the burden of establishing with a legal certainty each and every element of damage claimed." *Anderson v. Heck*, 554 So. 2d 695, 704 (La. Ct. App. 1989) *writ denied*, 558 So. 2d 605 (La. 1990)(citation omitted); *Romano v. Jefferson Par. Sheriff's Office*, 13-803 (La. App. 5 Cir. 3/26/14), 138 So. 3d 688, 694 (La. Ct. App.) *writ denied*, 2014-0700 (La. 5/16/14), 139 So. 3d 1028.  This burden must be borne by competent evidence showing the extent of the damage. *Anderson*, 554 So. 2d at 704 (citations omitted). A plaintiff's own uncorroborated "personal estimate" of loss is insufficient to satisfy that burden of proving with legal certainty every item of damages. *See Tudor Chateau Creole Apartments Partnership v. D.A. Exterminating Co., Inc.,* 96–0951 (La.App. 1 Cir. 2/14/97), 691 So.2d 1259, 1264; *Anderson v. Heck,* 554 So.2d 695, 704–05 (La.App. 1 Cir.1989), *writ denied,* 558 So.2d 605 (La.1990), *cert. denied,* 498 U.S. 846, 111 S.Ct. 132, 112 L.Ed.2d 100 (1990).

Furthermore, "[a] claimant seeking recovery for services performed himself in the repair of his property must support such claim by testimony reflecting the number of hours worked and the monetary value thereof." *Lambert*, 195 So. 2d at 700. "If the damaged property has been restored to its former condition by repair, the proper basis for assessing the damage is the repair bill." *Id.* Where property damage alleged is readily susceptible of specific determination and a plaintiff fails to produce evidence of  invoices, statements or records of accounts expended, or the like, the plaintiff fails to meet his burden. *Id.* at 701-02; *see Tudor Chateau*, 691 So. 2d at 1264 (finding that where plaintiff offered only his own uncorroborated testimony as to out-of-pocket expenses, with no invoices, checks, or work orders presented, plaintiff failed to meet his

burden); *Anderson*, 554 So. 2d 704-05 (plaintiff failed to meet burden by preponderance of the evidence where plaintiff provided only approximations and general testimony concerning the alleged loss resulting from the return of equipment, and failed to provide any invoices, checks, or other competent evidence).

**C.     Oceanique Already Received an Award from the Other Loss Fund and is Precluded from Obtaining a Double Recovery.**

130.    In addition to a Remediation Claim to the Remediation Fund, Oceanique was entitled to seek benefits from the Other Loss Fund.  Defense Exhibit 1, R. Doc. 12061-6 at § VI (Already Remediated Properties Protocol); R. Doc. 16407-3 at § 4.3.7.1 (Third Amended Knauf Class Settlement Agreement).

131.    Oceanique submitted Lost Sales claims to the Other Loss Fund and was awarded the maximum award,  $10,000.00, for each of its 42 separate Lost Sales Claims to the Other Loss Fund for a total award of $420,000.00.   Transcript 52:17-25; Defense Exhibit 6 (Oceanique's Other Loss Fund Summary). Lost Sales includes compensation for lost value resulting from the delay in selling the property and recovery for interest (but not principal) payments on loans to the extent the Commercial Owner was unable to sell the property due to the presence of KPT Chinese Drywall.   R. Doc. 16407-3 at § 4.7.1.2.3 (Third Amended Knauf Class Settlement Agreement).

132.    Oceanique's Remediation Claim to the Remediation Fund for interest on property and interest on construction loan cost ($441,000.00) is improperly submitted under the Knauf Class Settlement Agreement.   These claims are not Remediation Claims to be paid from the Remediation Fund.   Instead, these claims and any eligible benefits are covered by the Lost Sales

claim and award received through the Other Loss Fund.  Transcript 52:17-25; Defense Exhibit 6 (Oceanique's Other Loss Fund Summary); R. Doc. 16407-3 at § 4.7.

133.    Any additional award for these claims would result in an impermissible double-recovery, which is not supported by the Knauf Class Settlement Agreement or as a matter of Louisiana law. R. Doc. 16407-3 (Third Amended Knauf Class Settlement Agreement); *see also Kennedy-Fagan v. Estate of Graves*, 2007-1062 (La. App. 1 Cir. 7/21/08), 993 So. 2d 255, 268 (La. Ct. App.) ("It is a well-settled premise that Louisiana law does not allow for double recovery of the same element of damages." (citing *Albert v. Farm Bureau Ins. Co*., 05-2496 (La. 10/17/06), 940 So.2d 620, 622)), *writ denied*, 2008-2079 (La. 11/10/08), 996 So. 2d 1073.

**D.    Oceanique is Precluded from Seeking an Award from the Remediation Fund for Benefits Eligible Only Under the Other Loss Fund.**

134.    In addition to Lost Sales, Oceanique was entitled to seek other claims and benefits from the Other Loss Fund. R. Doc. 16407-3 at § 4.7 (Third Amended Knauf Class Settlement Agreement); Transcript 53:4-25. The Other Loss Fund provides benefits for: Pre-Remediation Alternative Living Expenses; Lost Use, Sales, and Rentals; Foreclosures; Sales in Mitigation; Tenant Losses; Bodily Injury; and Miscellaneous claims.  R. Doc. 16407-3 at § 4.7 (Third Amended Knauf Class Settlement Agreement); Transcript 53:4-25.

135.    Oceanique did not submit any claims to the Other Loss Fund for Pre-Remediation Alternative Living Expenses, Lost Use or Rentals, Foreclosures, Sales in Mitigation, Tenant Losses, or Bodily Injury.  Transcript 54:1-3.

136.    Pursuant to PTO 29, the Other Loss Fund also provides benefits to Class Members for Miscellaneous claims up to $2,500.00 per claim. Transcript 53:4-54:3; R. Doc.

18232 (PTO 29).  Commercial Owner Class Members may seek costs associated with carrying the property by making a Miscellaneous Claim to the Other Loss Fund.  Transcript 53:15-19.

137.    Oceanique's Remediation Claim to the Remediation Fund for Condo Fees and Real Estate Taxes ($350,000.00 ) should have been sought as a Miscellaneous claim to the Other Loss Fund.  Because Oceanique did not submit any Miscellaneous claims to the Other Loss Fund, Oceanique is precluded from recovering an award for Condo Fees and Real Estate Taxes from the Other Loss Fund and may not seek them from the separate, and distinct Remediation Fund.[10] Transcript 54:1-3.

### E.    Oceanique May Not Seek Reimbursement for Other Covered Expenses.

138.    Oceanique's Remediation Claim to the Remediation Fund for Condo Fees and Real Estate Taxes ($350,000), Utilities - Florida Power & Light ($15,000.00), Utilities - Water and Sewers ($12,000.00), Moving ($20,000.00), and Storage ($24,000.00),  are Other Covered Expenses.  Defense Exhibit 4 (Ledger).  R. Doc. 16407-3 at § 1.47 (Knauf Class Settlement Agreement).

139.    The Remediation Fund will pay only Residential Owners a Lump Sum Payment for Other Covered Expenses pursuant to Section 4.3.1.1 of the Knauf Class Settlement Agreement. R. Doc. 16407-3 at § 4.3.1.1 (Knauf Class Settlement Agreement).

140.    Oceanique is a Commercial Owner Class Member in the Knauf Class Settlement Agreement  *Id.* at § 1.1.2.2.  Commercial Owners are not eligible to recover Other Covered Expenses from the Remediation Fund. *Id.* at §4.3.1.1; Defense Exhibit 1, Rec. Doc. 12061-6 at §

---

[10] To the extent Condo Fees and Real Estate Taxes are considered Remediation Claims, they are Other Covered Expenses paid through the Lump Sum Payment to Residential Owners only.  As a Commercial Owner, Oceanique is precluded from recovering Other Covered Expenses through the Lump Sum Payment.

VI (Already Remediated Property Protocol). Therefore, Oceanique, as a Commercial Owner, may not obtain benefits from the Remediation Fund for Other Covered Expenses, including Real Estate Taxes, Utilities - Florida Power Line ($15,000.00), Utilities - Water and Sewers ($12,000.00), Moving ($20,000.00), and Storage ($24,000.00).R. Doc. 16407-3 at § 1.47; 4.3.1.1 (Third Amended Knauf Class Settlement Agreement); Defense Exhibit 1, R. Doc. 12061-6 at § VI (Already Remediated Properties Protocol).

      **F.**      **Oceanique's Failure to Properly Submit Documentation to Support its Claimed Costs Precludes an Award for Reasonable Reimbursable Costs.**

141.    Oceanique may seek an award only for reasonable Reimbursable Costs. Defense Exhibit 1, R. Doc. 12061-6 at § IV (Already Remediated Properties Protocol).  In seeking an award for Reasonable Reimbursable Costs, Oceanique was required to provide documentation in support of its claim, including itemized invoices and proof of payment, including cancelled checks, credit card statements, etc.  *Id.*; Transcript 7:21-10:9.

142.    Oceanique made a Remediation Claim for reimbursement from the Remediation Fund for Payroll ($360,000.00), Supervision of Maurice Kodsi ($120,000.00), Appliances ($274,000.00), Storage ($24,000.00), Moving ($20,000.00), Engineering Letters ($14,523.00), Interest on Property ($200,000.00), Interest on Construction Costs ($220.95), Condo Fees and Real Estate Taxes ($350,000.00), and Punch/Warranty/Reserve/Contingency ($200,000.00). Defense Exhibit 4 (Ledger).

143.    For these items, Oceanique failed to provide any documentation sufficient to conclude these costs were actually incurred and were reasonable Reimbursable Costs. Oceanique is precluded from seeking an award for reasonable Reimbursable Costs from the Remediation Fund where there is no evidence that costs were incurred.  These undocumented items are not

reimbursable to Oceanique as reasonable Reimbursable Costs. *See Anderson v. Heck*, 554 So. 2d 695, 704 (La. Ct. App. 1989) *writ denied*, 558 So. 2d 605 (La. 1990)(citation omitted); *Romano v. Jefferson Par. Sheriff's Office*, 13-803 (La. App. 5 Cir. 3/26/14), 138 So. 3d 688, 694 (La. Ct. App.) writ denied, 2014-0700 (La. 5/16/14), 139 So. 3d 1028; s*ee also Tudor Chateau Creole Apartments Partnership v. D.A. Exterminating Co., Inc.,* 96–0951 (La.App. 1 Cir. 2/14/97), 691 So.2d 1259, 1264.

### G.   Oceanique's Claimed Costs for Remediation Work Inconsistent with the Knauf Remediation Protocol Precludes an Award for Reasonable Reimbursable Costs.

144.   In determining Reimbursable Costs, the Court shall employ certain criteria including, but not limited to: (1) whether the work was consistent with the Remediation Protocol; (2) whether the costs are attributable to contractor double billing, waste, or fraud; (3) whether the costs are attributable to upgrades; and (4) the KPT Drywall Percentage.  R. Doc. 12061-6 at § IV (Already Remediated Properties Protocol).

145.   Oceanique's Remediation Claim to the Remediation Fund includes claims for shutter cranks reinstallation ($3,060.00), Scratched/Delaminate Glass ($11,308.19), Asphalt Repair ($7,200.00), Redo Decks ($6,716.01), Plumbing Repairs ($3,726,73), and Door/Lock Repairs ($1590.76). Defense Exhibit 4 (Ledger); Defense Exhibit 16 (McPhilany Invoices).

146.   Shutter crank reinstallation, scratched and delaminated glass, asphalt repair, recompletion of balcony decks, plumbing repairs, and rekeying locks and replacing doors are not consistent with the Remediation Protocol. Scratched or delaminated glass is also attributable to contractor waste.   Defense Exhibit 1, R. Doc. 12061-6 at § IV (Already Remediated Properties Protocol); Defense Exhibit 2, Rec. Doc. 12061-14 (Remediation Protocol).

37

147.    Therefore, these items are not reimbursable to Oceanique as reasonable Reimbursable Costs.

**H.    Oceanique is Bound by the Court's Prior Ruling Regarding Reasonable Overhead and Profit and is Precluded from an Award for Attorneys' Fees.**

148.    Within MDL 2047, this Court has already considered and provided for 10% builder overhead and 10% builder profit, which is industry standard.   R. Doc. 2713 (*Hernandez* Findings of Fact and Conclusions of Law); Transcript 24:5-20.

149.    Considering the Court's prior rulings and the industry standard, Oceanique is limited to Builder Overhead and Profit equaling 20% for the Court determined reasonable remediation costs.

150.    Because the Knauf Class Settlement Agreement has a separate capped fund for the payment of all attorneys' fees, Oceanique is precluded recovering any legal fees through the Remediation Fund for its Already Remediated Property Remediation Claim. R. Doc. 16407-3 at § 14. (Knauf Class Settlement Agreement).

**I.    Conclusion**

151.    Taking into account deductions for claimed amounts unsupported by documentation, non-protocol items, Other Covered Expenses, and expenses compensable only through the Other Loss Fund, the Court finds that Oceanique's reasonable remediation costs are: $895,899.15

152.    Applying 20% to the reasonable remediation costs results in Builder Profit and Overhead in the amount of : $179,179.83

153.    Oceanique's Remediation Claim award must be reduced by the KPT Drywall Percentage, which the Court previously set at 60%.

38

154.    Therefore, in connection with its Remediation Claim under the Knauf Class Settlement Agreement, Oceanique is awarded reasonable Reimbursable Costs in the amount of **$645,047.38**.

155.    Below is a summary Oceanique's reasonable Reimbursable Costs award:

| | | | |
|---|---|---|---|
| 1 | PAYROLL | $    360,000.00 | No Documentation . |
| 2 | MK- SUPERVISION | $    120,000.00 | No Documentation. |
| 3 | APPLIANCES | $    274,000.00 | No Documentation. |
| 4 | TRIM/PAINT LABOR· KOBI | $    156,580.00 | |
| 5 | DW LABOR | $    130,746.74 | |
| 6 | DW MATERIAL | $    85,692.59 | |
| 7 | A/C Mat'l & LABOR· Mtn AIR | $    80,452.41 | |
| 8 | TRIM MATERIAL | $    70,154.18 | |
| 9 | FLOOR COVERING | $    61,701.86 | |
| 10 | TEMP LABOR | $    50,733.38 | |
| 11 | GRANITE | $    43,432.28 | |
| 12 | PAINT MATERIAL-SHERWIN WILLIAMS | $    42,807.82 | |
| 13 | TRIM/PAINT LABOR - CHARLIE | $    35,490 .00 | $3,060.00 of original amount is non-protocol. |
| 14 | HAULING/REMOVAL COSTS | $    32,124.84 | |
| 15 | MIRROR | $    31,314.25 | |
| 16 | STORAGE | $    24,000.00 | No Documentation; Other Covered Expense. |
| 17 | HOME DEPOT· INSULATION/SHELVING/MISC | $    23,637.41 | |
| 18 | MOVING/HAULING | $    20,000.00 | No Documentation; Other Covered Expense. |
| 19 | UTILITIES- FPL | $    15,000.00 | Other Covered Expense. |
| 20 | ENGINEER LETTERS | $    14,523.00 | Insufficient Documentation. |
| 21 | PERMIT FEES | $    15,075.00 | |
| 22 | UTILITIES- WATER/SEWER | $    12,000.00 | Other Covered Expense. |
| 23 | SCRATCHED/DELAMINATE GLASS | $    11,308.19 | Non-Protocol; Contractor Waste. |
| 24 | LOWES· HWH/MISC | $    10,894.19 | |
| 25 | ASPHALT REPAIR | $    7,200.00 | Non-Protocol. |
| 26 | REDO DECKS | $    6,716.01 | Non-Protocol. |
| 27 | ENERGY CALCS | $    6,660.00 | |

| 28 | CRANE· SIMS | $        6,075.00 | |
|---|---|---|---|
| 29 | FIRE SPRINKLER REPAIRS | $        5,259.79 | |
| 30 | PLUMBING REPAIRS | $        3,726.73 | Non-Protocol. |
| 31 | SEA COAST SUPPLY | $        2,422.67 | |
| 32 | PLUMBING FIXTURES | $        2,122.00 | |
| 33 | DOOR/LOCKS REPAIR | $        1,590.76 | Non-Protocol. |
| 34 | ELECTRICAL· D&E/ADVANCED | $          637.63 | |
| 35 | MISC - DAYTONA NUT & BOLT/OMEGA | $          635.11 | |
| 36 | ELEVATOR REPAIR | $          550.00 | |
| 37 | A/C GRILLS | $          326.14 | |
| 38 | BLUEPRINTS | $          155.97 | |
| 39 | PORTALET | $          151.27 | |
| 40 | EQUIPMENT RENTAL· SUNBELT | $            67.62 | |
| 41 | TUB REPAIRS· SURFACE APPEAL | $            60.00 | |
| 42 | NOC FEES | $            39.00 | |
| | **REASONABLE REMEDIATION COSTS** | **$ 895,899.15** | |
| 43 | BUILDER OVERHEAD AND PROFIT | $ 179,179.83 | 10% Overhead; 10% Profit. |
| 44 | INTEREST ON PROPERTY· 3 mos(1%) x$20M | $ 200,000.00 | Other Loss Fund; No Documentation . |
| 45 | INTEREST ON CONSTR COSTS· ($2,209,544 x 10%) | $ 220.95 | Other Loss Fund; No Documentation . |
| 46 | CONDO FEES & RE TAXES· 3 MOS. X 100 UNITS | $ 350,000.00 | Other Loss Fund; Other Covered Expense; No Documentation. |
| 47 | PUNCH OUT/WARRANTY/RESERVE/CONTINGENCY | $ 200,000.00 | No Documentation. |
| | TOTAL REIMBURSABLE COSTS | $ 1,075,078.98 | |
| | KPT PERCENTAGE | 60% | |
| | **OCEANIQUE'S REIMBURSABLE COSTS** | **$  645,047.38** | |

Respectfully submitted,

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**


*/s/ Kerry J. Miller*
**KERRY J. MILLER (#24562), T.A.
DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, Suite 3600
New Orleans, LA 70170
Telephone:     (504) 566-8646
Facsimile:     (504) 585-6946
Email:         kjmiller@bakerdonelson.com

***Counsel for the Knauf Defendants***


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the above and foregoing pleading has been served upon
Russ Herman, Plaintiffs' Liaison Counsel, by email, and to all parties by electronically uploading
the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the
foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of
Louisiana, on this 21st day of December, 2015.

*/s/ Kerry J. Miller*
KERRY J. MILLER