UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL No. 2:09-md-2047 |
| | SECTION L |
| **THIS DOCUMENT RELATES TO:** | JUDGE ELDON E. FALLON |
| *Gross v. Knauf Gips KG, 2:09-cv-6690* | |
| *Amorin v. Taishan Gypsum, 2:11-cv-1672* | MAGISTRATE JUDGE |
| *Amorin v. Taishan Gypsum, 2:11-cv-1395* | JOSEPH C. WILKINSON, JR. |
| *Amorin v. Taishan Gypsum, 2:11-cv-1673* | |
| *Amorin v. SASAC, 2:14-cv-1727* | |
| *State of Louisiana v. Knauf, 2:10-cv-340* | |
| *Abner v. Taishan Gypsum, 2:11-cv-3094* | |
| *Posey v. BNBM Co., 2:09-cv-6531* | |
| *Morris v. BNBM Co., 2:09-cv-6530* | |

**CNBM GROUP'S SECOND SUPPLEMENTAL REPLY IN SUPPORT OF ITS MOTION
TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION UNDER THE FSIA**

Plaintiffs break no new ground in their *second* supplemental response—and the *fifth* response brief overall—to China National Building Materials Group Corporation's ("CNBM Group") FSIA motion to dismiss.  The deposition of Jinyu Hu provides no support for Plaintiffs' allegation that CNBM Group extensively controlled the day-to-day operations of any subsidiary that manufactured or sold drywall, as is necessary to overcome its well-recognized presumption of separate status.  *See Hester Int'l Corp. v. Federal Republic of Nigeria*, 879 F.2d 170, 180-81 (5th Cir. 1989).  Rather, her testimony further confirms that CNBM Group exercised—at most—only occasional high-level supervision typical of a corporate parent.  Thus, Plaintiffs' evidence still falls "far short of the type of control necessary to establish an alter ego relationship."  *First Inv. Corp. of Marshall Isl. v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 754 (5th Cir. 2012).[1]

Ms. Hu manages the audit department of CNBM *Company* and holds various positions at other CNBM Company subsidiaries, but notably does *not* hold any position with CNBM *Group*. And Plaintiffs mischaracterize her position and testimony to suggest that she performed work on CNBM Group's behalf.  Ms. Hu testified that she carried out tasks issued by CNBM *Company*'s board of directors and audit committee, *see* Hu Depo. at 29:5-13, 101:25-102:15 (PSC's FSIA Ex. 169); that she submitted internal audit policies for approval to CNBM *Company* work meetings[2], *see id.* at 32:21-33:11; and that she shared audit findings with other CNBM *Company* officials, departments, and audited subsidiaries, *see id.* at 39:17-40:8, 46:18-47:13, 103:15-25.  Most

---

[1] Plaintiffs again present no evidence that counters CNBM Group's clear status as a sovereign entity under the FSIA or shows that CNBM Group itself engaged in activity sufficient to establish a statutory exception to immunity.  And although Plaintiffs' proffered basis for this Court's jurisdiction now rests entirely on their strained alter ego theory, they remarkably still have not cited a *single* case finding an alter ego relationship in the FSIA context—much less one that based jurisdiction over a sovereign entity on the type of innocuous evidence that Plaintiffs cite.

[2] Contrary to Plaintiffs' characterization, *see* PSC Second Supp. FSIA Resp. at 2, there is no evidence or indication that any person attends the CNBM Company working meetings on behalf of CNBM Group.  Ms. Hu's testimony and the meeting minutes show they are hosted by the CNBM *Company* President (and not the CNBM *Group* Chairman, as Plaintiffs assert), and that others attend the meetings on behalf of CNBM Company or its direct and indirect subsidiaries.  *See* Hu Depo. at 31:9-16; PSC FSIA Ex. 170.  Although some officials like Song Zhiping may also hold positions at CNBM Group, Plaintiffs (again) ignore clear Supreme Court precedent that it is "entirely appropriate" and "normal" for a parent and subsidiary to "have identical directors and officers" who "can and do 'change hats' to represent the two corporations separately."  *United States v. Bestfoods*, 524 U.S. 51, 70 (1998).

significantly, Ms. Hu testified that her department had no involvement with, and did not receive materials from, other audits that CNBM *Group* carried out independently.  *See id.* at 81:9-17, 94:15-95:5.  And she testified repeatedly that she was not aware of any specific directives from CNBM Group.[3]  *See id.* at 54:18-55:10, 77:4-78:14, 93:12-19, 95:7-12.  Ms. Hu's deposition thus does not support Plaintiffs' baseless assertions that her work allowed "CNBM Group to maintain its discipline over its subsidiaries," PSC Second Supp. FSIA Resp. at 1, or that CNBM Company "implements and enforces the directives of CNBM Group," *id.* at 3.

If anything, Ms. Hu's testimony supports the corporate independence of CNBM Group, CNBM Company, and indirect subsidiaries like Taishan.[4]  Occasional audits help to protect shareholders' interests and ensure that subsidiaries are complying with the law and other corporate formality requirements.  "[M]onitoring of the subsidiary's performance," including "supervision of the subsidiary's finance and capital budget decisions," is "consistent with the parent's investor status."  *United States v. Bestfoods*, 524 U.S. 51, 72 (1998) (internal quotation marks omitted).  Unsurprisingly, then, courts repeatedly hold that audits do not support an alter ego relationship.[5]

Plaintiffs focus on Ms. Hu's testimony that the semi-annual reports of CNBM Company's direct and indirect subsidiaries are managed "in the form of a cascade."  PSC Second Supp. FSIA Resp. at 3.  But Ms. Hu decidedly did not testify that CNBM "*controls* its audit process tier-by-tier," as Plaintiffs suggest.  *Id.* (emphasis added).  Quite the contrary, Ms. Hu explained that CNBM Company "*cannot* require the third-tier subsidiaries"—i.e., its indirect subsidiaries like Taishan—to make or submit any internal plans and reports.  Hu Depo. at 111:15-17 (emphasis

---

[3] Plaintiffs also assert, without any support, that certain unidentified documents drafted by Ms. Hu demonstrate CNBM Group's control.  PSC Second FSIA Supp. Resp. at 2.  But if Ms. Hu had drafted any such document, presumably Plaintiffs would have included it with their brief (as she did not draft any of the attached exhibits).
[4] For example, in citing Ms. Hu's testimony that CNBM Group and various subsidiary companies *separately* occupy *different* floors of an office building in Beijing, *see* Hu Depo at 14:2-16:17, Plaintiffs notably fail (again) to acknowledge that Taishan's offices are located *hundreds of miles away*, *see* CNBM Group FSIA Reply at 20 & n.12.
[5] *See, e.g.*, *Iragorri v. United Techs.*, 285 F. Supp. 2d 230, 238 n.4 (D. Conn. 2003), *reconsidered on other grounds*, 314 F. Supp. 2d 110 (2004); *United States v. Pangang Grp.*, 879 F. Supp. 2d 1052, 1067-68 (N.D. Cal. 2012).

added).   Any such requirement—to the extent it even exists—would have to come from the second-tier subsidiaries themselves.  *See id.*  Requiring a subsidiary to prepare and submit periodic reports reflects only normal supervision by a corporate parent, and does not constitute "extensive control" over day-to-day operations.  *See, e.g.*, CNBM Group FSIA Reply at 26-27.  And because CNBM Company lacks the ability even to require such audit reports from its indirect subsidiaries like Taishan, it follows a fortiori that CNBM Group—which is still yet one more step removed in the corporate structure—does not extensively control Taishan.

Nor do the exhibits that Plaintiffs attach to their brief demonstrate anything remotely resembling day-to-day control by CNBM Group.[6]  They show merely that CNBM Group may have exercised occasional high-level supervision by requesting that subsidiaries take steps to comply with national law and policies, *see* PSC FSIA Exs. 171 (Trade Union Law), 172 (governance of private coffers), and by performing an audit of Taishan in or around 2011—years after the events underlying this litigation, *see* PSC FSIA Ex. 173.  Attributing indirect subsidiaries' actions to CNBM Group based on evidence of such high-level supervision would contravene binding FSIA precedent.  *See Hester*, 879 F.2d at 181.

For the foregoing reasons, as well as those stated in CNBM Group's opening memorandum and earlier reply briefs, this Court should dismiss the claims against CNBM Group for lack of subject matter jurisdiction, and should do so without further delay.

---

[6] Plaintiffs blatantly ignore this Court's explicit instruction limiting their second supplemental response to the deposition of Ms. Hu (Rec. Doc. 19953) by quoting a 2006 CNBM Company document that was never discussed in that deposition and was attached to Plaintiffs first response filed over two months ago.  *See* PSC Second Supp. Resp at 1 n.1 (quoting PSC FSIA Ex. 37).  In any event, that document does *not* state that CNBM Group ever controlled Taishan's daily operations, as Plaintiffs suggest.  In fact, the quoted paragraph does not reference movant China National Building Materials Group Corporation at all.  Although the document does use the term "CNBM Group," that document expressly defines "CNBM Group" as "[CNBM] *Company* and its subsidiaries."  PSC FSIA Ex. 37 at Q000012 (emphasis added).  And other paragraphs on both the first and third pages make clear that the document refers to movant CNBM Group only by its full name: "China National Building Material Group Corporation," which it describes as "the parent company and a substantial shareholder of [CNBM] Company."  *Id.* at Q000010-12.  Because movant CNBM Group is a corporate parent—and not a subsidiary—of CNBM Company, the excerpt on which Plaintiffs rely does not so much as reference movant CNBM Group, and thus is plainly not an admission that CNBM Group ever intended to control the day-to-day operations of Taishan, let alone proof that it actually did so.

Dated: January 12, 2016

Respectfully submitted,

/s/ L. Christopher Vejnoska

| | |
|---|---|
| L. Christopher Vejnoska (CA Bar No. 96082) | Ewell E. Eagan, Jr. (LA Bar No. 5239) |
| Ian Johnson (CA Bar No. 208713) | Donna Phillips Currault (LA Bar No. 19533) |
| Andrew Davidson (CA Bar No. 266506) | Alex B. Rothenberg (LA Bar No. 34740) |
| Jason Wu (CA Bar No. 279118) | GORDON, ARATA, MCCOLLAM, |
| ORRICK, HERRINGTON & SUTCLIFFE LLP | DUPLANTIS & EAGAN, LLC |
| The Orrick Building | 201 St. Charles Avenue, 40th Floor |
| San Francisco, CA  94105 | New Orleans, LA 70170-4000 |
| Tel:  415-773-5700 | Tel: 504-582-1111 |
| Email:  cvejnoska@orrick.com | Email: eeagan@gordonarata.com |
|   ijohnson@orrick.com |   dcurrault@gordonarata.com |
|   adavidson@orrick.com |   arothenberg@gordonarata.com |
|   jmwu@orrick.com | |
| | |
| James L. Stengel (NY Bar No. 1800556) | Eric A. Shumsky (D.C. Bar No. 477926) |
| Xiang Wang (NY Bar No. 4311114) | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| ORRICK, HERRINGTON & SUTCLIFFE LLP | Columbia Center |
| 51 West 52nd Street | 1152 15th Street NW |
| New York, NY, 10019 | Washington, D.C. 20005 |
| Tel: 212-506-5000 | Tel: 202-339-8400 |
| Email:  jstengel@orrick.com | Email: eshumsky@orrick.com |
|   xiangwang@orrick.com | |

*Counsel for CNBM Group*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **Second Supplemental Reply in Support of CNBM Group's Motion to Dismiss for Lack of Subject Matter Jurisdiction Under the FSIA** has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all parties by electronically uploading the same to File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on January 12, 2016.

/s/ L. Christopher Vejnoska

L. Christopher Vejnoska (CA Bar No. 96082)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105
Tel:  415-773-5700
Fax: 415-773-5759
Email: cvejnoska@orrick.com

*Counsel for CNBM Group*