## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

**THIS DOCUMENT RELATES TO:**

*Brooke et al. v. State-Owned Assets Supervision and Administration Commission of the State Council, et al.,* **Case No. 15-4127 (E.D. La.).**

**BEIJING NEW BUILDING MATERIALS PUBLIC LIMITED COMPANY'S AND BEIJING NEW BUILDING MATERIAL (GROUP) CO., LTD.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS <u>PURSUANT TO RULES 12(b)(2), 12(b)(5), 12(b)(6), 8 AND 9(b)</u>**

# TABLE OF CONTENTS

PENDING RULE 12(b)(2) MOTIONS ............................................................ 1

INTRODUCTION ........................................................................................... 1

FACTUAL BACKGROUND ........................................................................... 4

   I.   MDL Background And The Allegations Of The *Brooke* Complaint................................. 4

   II.  BNBM PLC And BNBM Group Did Not Conduct Business In Louisiana...................... 6

   III.  BNBM PLC And BNBM Group Did Not Injure Anyone In Louisiana. ......................... 7

   IV.  Taishan Is Not An Alter-Ego Of Either BNBM PLC Or BNBM Group............................ 8

ARGUMENT .................................................................................................... 9

   I.   BNBM PLC AND BNBM GROUP ARE NOT SUBJECT TO JURISDICTION IN LOUISIANA........................................................... 9

   II.  THE PSC CANNOT IMPUTE TAISHAN'S CONTACTS TO BNBM PLC OR BNBM GROUP........................................................ 10

      A.   The PSC Does Not Adequately Plead Alter-Ego........................................ 11

      B.   The Evidence Demonstrates That BNBM PLC and BNBM Group Are Not Alter-Egos Of Taishan Or Any Other Defendant. .......................................... 12

   III.  PLAINTIFFS' CLAIMS ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS............................................... 14

      A.   Brooke's Causes of Action Are Time barred............................................ 14

      B.   No Tolling Applies ....................................................................... 17

   IV.  PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM................................................................. 19

      A.   Plaintiffs' Claims Are Inadequately Pled With Conclusory Allegations That Lump All Defendants Together. ................................................. 20

      B.   Louisiana Law Does Not Permit Plaintiffs' Claims For Negligence, Negligence Per Se, Strict Liability, Express Or Implied Warranty, Private Nuisance, and Unjust Enrichment. ...................................................... 22

      C.   Plaintiffs' Negligence and Negligence Per Se Claims Should Be Dismissed. ............. 23

i

D.    Plaintiffs' Strict Liability Claim Should be Dismissed..................................................... 24

E.    Plaintiffs' Private Nuisance Claim Should Be Dismissed. ............................................. 24

F.    Plaintiffs' Unjust Enrichment Claim Should Be Dismissed. ........................................ 25

G.    Plaintiffs' Redhibition Claim Should Be Dismissed. .................................................... 26

H.    Plaintiffs' Claim For Violation of the Louisiana Products Liability Act Should Be
       Dismissed. ............................................................................................................. 28

I.    Plaintiffs' Claim Under The Consumer Protection Acts Should Be Dismissed........... 28

V.   THE *BROOKE* COMPLAINT SHOULD BE DISMISSED BECAUSE BNBM PLC
       AND BNBM GROUP HAVE NOT PROPERLY BEEN SERVED WITH PROCESS.. 29

CONCLUSION.................................................................................................................... 30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Actimmune Marketing Litig.*,
No. C 08-02376, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009)................................................14

*Ameresco Solar, LLC v. Sader*,
No. 14-2890, 2015 WL 3952771 (E.D. La. Jun. 15, 2015) ..............................................10, 11

*American Pipe & Constr. Co. v. Utah*,
414 US 538 (1974)...............................................................................................2, 13, 16, 18

*Ashcroft v. Iqbal*,
556 U.S 662 (2009)......................................................................................................18, 19, 22

*Atuahene v. City of Hartford*,
10 F. App'x 33 (2d Cir. 2001) ...............................................................................................19

*Barasich v. Columbia Gulf Transmission Co.*,
467 F. Supp. 2d 676 (E.D. La. 2006) .....................................................................................24

*Barasich v. Shell Pipeline Co.*,
No. 05-4180, 2006 U.S. Dist. LEXIS 84389 (E.D. La. Nov. 20, 2006) ................................24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................................18, 19

*Bellsouth Telecomms., Inc. v. Eustis Eng'g Co.*,
974 So. 2d 749 (La. Ct. App. 2007)........................................................................................22

*Brand Coupon Network LLC v. Catalina Mktg. Corp.*,
No. 11–00556, 2014 WL 6674034 (M.D. La. Nov. 24, 2014) ...............................................28

*Brooks v. Menifee*,
269 F. App'x 441 (5th Cir. 2008) ...........................................................................................18

*Canon v. Towns*,
99 So. 3d 1122 (La. Ct. App. 2012).........................................................................................8

*Chaverri v. Dole Food Co.*,
546 F. App'x 409 (5th Cir. 2013) .....................................................................................16, 17

*Chaverri v. Dole Food Co.*,
896 F. Supp. 2d 566 (E.D. La. 2012)......................................................................................17

*In re Chinese Manufactured Drywall Prods. Liab. Litig.*,
 753 F.3d 521 (5th Cir. 2014) ..................................................................................8

*Cunard Line Ltd. v. Datrex, Inc.*,
 926 So. 2d 109 (La. Ct. App. 2006)........................................................................26

*Darden v. DaimlerChrysler N. Am. Holding Corp.*,
 191 F. Supp. 2d 382 (S.D.N.Y. 2002).......................................................................3

*Del Castillo v. PMI Holdings N. Am. Inc.*,
 No. 4:14-CV-3435, 2015 WL 3833447 (S.D. Tex. June 22, 2015)........................20

*Fogleman v. Cajun Bag & Supply Co.*,
 638 So. 2d 706 (La. Ct. App. 1994)........................................................................24

*Galloway v. State Dep't. of Transp.& Dev.*,
 654 So. 2d 1345 (La. 1995) ....................................................................................22

*Green v. Champion Ins. Co.*,
 577 So. 2d 249 (La. Ct. App. 1991)........................................................................12

*Griffin v. HSBC Mortgage Servs., Inc.*,
 No. 4:14-CV-00132-DMB, 2015 WL 4041657 (N.D. Miss. July 1, 2015)...........19

*Hall v. Variable Annuity Life Ins. Co.*,
 727 F.3d 372 (5th Cir. 2013) ..................................................................................13

*Henderson v. Dasa*,
 No. 13-8, 2013 WL 4774773 (E.D. La. Sept. 4, 2013)..........................................21

*Hillard v. United States*,
 No. 06-2576, 2007 WL 647292 (E.D. La. Feb. 28, 2007)......................................21

*Hollybrook Cottonseed Processing, LLC v. Carver, Inc.*,
 No. 09-0750, 2010 WL 892869 (W.D. La. Mar. 11, 2010).............................25, 26

*Iberia Credit Bureau, Inc., v. Cingular Wireless LLC*,
 379 F.3d 159 (5th Cir. 2004) ..................................................................................28

*IMC Exploration Co. v. Texaco Inc.*,
 No. 04-cv-1004, 2005 WL 161178 (E.D. La. Jan. 24, 2005) ...........................10, 12

*Jackson v. Tanfoglio Giuseppe, S.R.L.*,
 615 F.3d 579 (5th Cir. 2010) ........................................................................10, 12, 13

*Jefferson v. Lead Indus. Ass'n*,
 930 F. Supp. 241 (E.D. La. 1996)...........................................................................22

*Jones v. Alcoa, Inc.*,
339 F.3d 359 (5th Cir. 2003) ...................................................................16

*King v. Bayer Pharm. Corp.*,
No. 09-0465, 2009 WL 2135223 (W.D. La. Jul. 13, 2009)......................................21

*Lanzas v. Am. Tobacco Co.*,
No. 00-cv-2262, 2001 WL 1223600 (E.D. La. Oct. 11, 2001)...........................................2, 17

*Marchesani v. Pellerin-Milnor Corp.*,
269 F.3d 481 (5th Cir. 2001) ...................................................................14

*McGee v. State Farm Fire & Casualty Co.*,
515 F. App'x 291 (5th Cir. 2013) ...................................................................18

*Mumford v. Jackson Nat. Life Ins. Co.*,
No. 2006-CA-1412, 2007 WL 7711472 (La. Ct. App. Nov. 7, 2007)....................................26

*Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*,
526 U.S. 344 (1999)...................................................................3

*Murry v. Aran Energy Corp.*,
863 F. Supp. 315 (E.D. La. 1994)...................................................................23

*Nagle v. Gusman*,
61 F. Supp. 3d 609 (E.D. La. 2014)...................................................................22

*In re Packaged Ice Antitrust Lit.*,
779 F. Supp. 2d 642 (E.D. Mich. 2011)...................................................................14

*Patrick v. Wal-Mart, Inc. – Store # 155*,
681 F.3d 614 (5th Cir. 2012) ...................................................................19

*In re Pharm. Indus. Average Wholesale Price Litig.*,
230 F.R.D. 61 (D. Mass. 2005)...................................................................28

*Pierson v. Orlando Reg'l Healthcare Sys., Inc.*,
619 F. Supp. 2d 1260 (M.D. Fla. 2009)...................................................................20

*Pinsonneault v. Merchants & Farmers Bank & Tr. Co.*,
816 So. 2d 270 (La. 2002) ...................................................................22

*Pitre v. Yamaha Motor Co.*,
51 F. Supp. 3d 644 (E.D. La. 2014)...................................................................21, 24

*Prejean v. Sonatrach, Inc.*,
652 F.2d 1260 (5th Cir. 1981) ...................................................................10

*Quinn v. La. Citizens Prop. Ins. Corp.*,
  118 So. 3d 1011 (La. 2012) .................................................................................2, 17, 18

*R2 Investments LDC v. Phillips*,
  401 F.3d 638 (5th Cir. 2005) .........................................................................................19

*Revell v. Lidov*,
  317 F.3d 467 (5th Cir. 2002) ...........................................................................................3

*Rodriguez v. Copeland*,
  475 So. 2d 1071 (La. 1985) ...........................................................................................24

*Rutherford v. Equifax*,
  No. 10-1988, 2011 WL 3606964 (E.D. La. Aug. 16, 2011) ..........................................19

*Sadler v. Int'l Paper Co.*,
  No. 09-1254, 2010 WL 5125502 (W.D. La. Dec. 9, 2010) ...........................................23

*Salazar-Calderon v. Presidio Valley Farmers Ass'n*,
  765 F. 2d 1334 (5th Cir. 1985) ......................................................................................17

*Smith v. Cutter Biological*,
  770 So. 2d 392 (La. Ct. App. 2000).................................................................................17

*Stroderd v. Yamaha Motor Corp., U.S.A.*,
  No. 04-3040, 2005 WL 2037419 (E.D. La. Aug. 4, 2005) ...........................................25

*Turner v. Murphy Oil USA, Inc.*,
  234 F.R.D. 597 (E.D. La. 2006)......................................................................................23

*Univ. Fed. Credit Union v. Grayson*,
  878 So. 2d 280 (Ala. 2003)............................................................................................28

*In re Vioxx Prods. Liability Litig.*,
  522 F. Supp. 2d 799 (E.D. La. 2007) .............................................................................16

*In re Vioxx Products Liab. Litig.*,
  478 F. Supp. 2d 897 (E.D. La. 2007)......................................................................2, 13, 17

*Whitener v. Pliva, Inc.*,
  No. 10-cv-1552, 2012 WL 1343964 (E.D. La. Apr. 18, 2012)................................10, 12

**Statutes**

Ala. Code 1975 § 8-19-1, *et seq*. (Alabama Deceptive Trade Practices Act)................................5

Ala. Code § 8-19-10.................................................................................................................27

Ala. Code § 8-19-14 ...........................................................................................................14, 15

F.S. § 95.11(3)(F) ...........................................................................................................14, 15

F.S. § 501.201, *et seq*. (Florida Deceptive and Unfair Trade Practices Act)..................5

LA. CIV. CODE art. 596 ..................................................................................................2, 17

LA. CIV. CODE art. 667 ................................................................................................23, 24

LA. CIV. CODE art. 2520 .............................................................................................25, 26

LA. CIV. CODE art. 2534 .............................................................................................14, 15

LA. CIV. CODE art. 3492 .............................................................................................14, 15

LA. CIV. CODE art. 3499 ...................................................................................................15

LA. CIV. CODE art. 3549(A) ..............................................................................................14

La. Rev. Stat. § 9:2800.52............................................................................................21

La. Rev. Stat § 13:3201...................................................................................................8

La. Rev. Stat. § 51:1409 (A) ...........................................................................................27

MISS. CODE ANN. § 15-1-49 .......................................................................................14, 15

MISS. CODE ANN. § 75-24-15...........................................................................................27

N.C. GEN. STAT. § 75-1.1, *et seq*. (North Carolina Consumer Protection Act).............5

N.C. GEN. STAT. § 75-16.2 .........................................................................................14, 15

TEX. BUS. & COM. CODE  § 17.41, *et seq*. (Texas Deceptive Trade Practices-
    Consumer Protection Act); MISS. CODE ANN. § 75-24-1, *et seq*. (Mississippi
    Consumer Protection Act).........................................................................................5

TEX. BUS. & COM. CODE § 17.565 .............................................................................14, 15

VA. CODE ANN. § 59.1-196, *et seq*. (Virginia Consumer Protection Act) .......................5

VA. CODE ANN. § 59.1-204.1(A).................................................................................14, 15

Defendants Beijing New Building Materials Public Limited Company ("BNBM PLC") and Beijing New Building Material (Group) Co., Ltd. ("BNBM Group") respectfully submit this memorandum of law in support of their motion pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), 12(b)(6), 8 and 9(b) for an order dismissing Plaintiffs' First Amended Complaint (Rec. Doc. 19625, the "*Brooke* Complaint") for lack of personal jurisdiction, failure of service, and failure to state a claim upon which relief can be granted.

### PENDING RULE 12(b)(2) MOTIONS

The Court has scheduled argument for February 18, 2016 on the fully briefed BNBM PLC and BNBM Group motions to dismiss for lack of jurisdiction and failure of service in the *Amorin, Wiltz, Gross* and *Germano* cases. The *Brooke* case shares many of the jurisdictional infirmities of those cases, and if those motions are successful, the Complaint in this action necessarily will have to be dismissed as well.   This memorandum accordingly does not present in full the jurisdictional arguments that the Court already has before it.   It does raise, however, additional grounds for dismissal pursuant to Rules 12(b)(2), 12(b)(6), 8 and 9(b), which we respectfully submit need not be addressed until the pending motions are resolved.[1]

---

[1]   BNBM PLC and BNBM Group hereby incorporate by reference the facts and arguments set forth in the memoranda of law, declarations and exhibits submitted by BNBM PLC and BNBM Group in support of their motions to dismiss the class actions for lack of jurisdiction and failure of service.  *See* (Rec. Doc. 19631) and (19664), including Memorandum of Beijing New Building Materials Public Limited Company in Support of Its Motion to Dismiss the Complaints Pursuant to Rules 12(b)(2) and 12(b)(5) (Rec. Doc. 19631-3)("BNBM PLC MDL Dismissal Memorandum," and Memorandum of Beijing New Building Materials (Group) Co., Ltd. in Support of Its Motion to Dismiss the Complaints Pursuant to Rules 12(b)(2) and 12(b)(5) (Rec. Doc. 19664-1)("BNBM Group MDL Dismissal Memorandum").

## INTRODUCTION

Years into this MDL proceeding concerning Chinese drywall, and after six months of intensive discovery, the *Brooke* Complaint filed by the Plaintiffs Steering Committee (the "PSC") reads as if it was the first pleading.  Filed long after the applicable statutes of limitations have run, *Brooke* consists of many of the same conclusory allegations as the complaints filed in 2009 and the intervening years.  Once again, we have a complaint that substitutes for specific allegations against BNBM PLC and BNBM Group the fiction that they, together with other named Defendants, are a single, undifferentiated entity, and thus all are responsible for the alleged "problematic drywall" manufactured by Taishan Gypsum Co, Ltd. ("Taishan").  The only conclusion that can be drawn is that six months of discovery has not yielded any specific evidence supporting liability against BNBM PLC and BNBM Group.  Instead, discovery has confirmed that BNBM PLC and  BNBM Group operate independently on a day-to-day basis from the other Defendants, observe and conform to all corporate formalities, are not financially or otherwise commingled, and did not injure any plaintiff.  They do not have sufficient minimum contacts with Louisiana to satisfy due process.

BNBM Group and BNBM PLC did no business in Louisiana during the relevant period.  BNBM PLC did not sell drywall to Louisiana importers or ship drywall to Louisiana.  No profile form from a *Brooke* Louisiana plaintiff identifies BNBM drywall.  Indeed, the over  29,000 profile forms submitted in the MDL do not include a single Louisianan who claims BNBM drywall was found in his or her home.  The *Brooke* Complaint does not allege that Plaintiffs purchased BNBM drywall in Louisiana or were harmed by it here.  Even if BNBM drywall had made it to Louisiana, it would not have harmed anyone.  The Consumer Product Safety Commission ("CPSC") tested BNBM PLC drywall exported to America and determined that it did not have the problems found in other Chinese drywall.  Similarly, the purchasers of BNBM

1

PLC drywall experienced no problems with BNBM drywall and received no complaints from their customers.

Even if this Court properly had jurisdiction, the claims in *Brooke* are time barred. Approximately 800 plaintiffs in *Brooke* were never part of any other complaint. The longest statute of limitations applicable to the Plaintiffs' claims is four years (except unjust enrichment, which is preempted by the Louisiana Products Liability Act). BNBM PLC has not sold drywall to any American customer since 2006, nearly ten years ago, which cannot be reconciled with the *Brooke* Complaint's allegations that off-gassing from drywall began immediately and damaged property rapidly.

Plaintiffs cannot rely on *American Pipe* tolling to preserve their time barred claims because this is a diversity class-action, and Louisiana law does not recognize class-action tolling for out-of-state class-actions. *In re Vioxx Products Liab. Litig.,* 478 F. Supp. 2d 897, 907-08 (E.D. La. 2007). Louisiana applies a "no piggyback rule," which prevents tolling by a later class-action, and Louisiana Code of Civil Procedure article 596 prohibits cross-jurisdictional tolling in class-action proceedings. *Lanzas v. Am. Tobacco Co*., No. 00-cv-2262, 2001 WL 1223600, at *2 (E.D. La. Oct. 11, 2001); *Quinn v. La. Citizens Prop. Ins. Corp.*, 118 So. 3d 1011, 1022-23 (La. 2012). Moreover, Plaintiffs concede that 800 members of the *Brooke* class were not included in the earlier certified class, and therefore *American Pipe* tolling would not benefit them even if Louisiana recognized class-action tolling. The claims pled in the Complaint are time barred.

The Complaint also should be dismissed because it fails to state a claim upon which relief can be granted. After six months of alter-ego discovery that was designed to see if there is any merit to the PSC's alter-ego contention, *Brooke* is devoid of any concrete allegations against

BNBM PLC or BNBM Group.  It is difficult to imagine a clearer confirmation of the futility of the PSC's alter-ego discovery in these MDL proceedings.  The *Brooke Complaint* contents itself with merely stating that defendant China National Building Materials Group Co. ("CNBM Group") controlled "its subsidiary entities."  Period.  That allegation is followed by scores of generalized allegations against "all Defendants."  But simply alleging an alter-ego relationship is not a cognizable substitute for pleading with the required specificity.  The *Brooke* Complaint does not provide BNBM PLC or BNBM Group with notice of the basis for the alter-ego claims, or even which allegations apply to them and which apply to other Defendants.  This confusion is amplified by the fact that most of the allegations could not possibly apply to BNBM PLC or BNBM Group.

This Court lacks jurisdiction over BNBM PLC and BNBM Group, the claims are time barred and the PSC has failed to state a claim upon which relief can be granted.  BNBM PLC and BNBM Group respectfully request the Court to dismiss the *Brooke* Complaint as against them.

## FACTUAL BACKGROUND[2]

I.    **MDL Background And The Allegations Of The *Brooke* Complaint.**

The *Brooke* Complaint is labeled as the twentieth "Omnibus Complaint" filed by the PSC

in this MDL.  Yet in a September 8, 2015 letter to the Court providing a "Status of Damages

Claims against Taishan," the PSC asserted that this new complaint was intended to represent

"approximately 800" properties "that may not have been included in the Certified [*Amorin*] Class

and which were presented by clients to individual counsel."

The PSC filed the original *Brooke* Complaint in this action on September 4, 2015, and then filed

an amended complaint on October 10, 2015.  The PSC did not try to serve either the original or

amended complaint through the Hague Convention.   The PSC moved the Court to approve

alternative service of process because of the allegedly "enormous expense and delay attributable"

to attempt service of process in China.  (Rec. Doc. 19522-1, at 1-2).  After the Court granted the

PSC's motion for alternative service, the PSC served BNBM PLC and BNBM Group by mailing

---

[2]   This Court may properly consider evidence beyond the pleadings in considering a motion to dismiss under Fed. R. Civ. P. 12(b)(2) and 12(b)(5).  *See Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc*., 526 U.S. 344, 350 (1999) ("Before a . . . court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."); *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) ("In considering a motion to dismiss for lack of personal jurisdiction a district court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."); *Darden v. DaimlerChrysler N. Am. Holding Corp*., 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002) ("Similar to a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, in considering a motion to dismiss pursuant to 12(b)(5) for insufficiency of process, a Court must look to matters outside the complaint to determine whether it has jurisdiction.").

a copy of the summons and Complaint to counsel representing them in other actions in this MDL.[3]

Although this action purports to represent 800 new plaintiffs, the PSC's claims are often identical to those filed in prior "omnibus" class-actions.[4]  Like those prior actions, the basis of the PSC's allegations is "problematic drywall" that was allegedly manufactured and shipped to the United States from China and harmed the property of each purported class member.  *Brooke* Complaint at ¶ 2.  As a result of the alleged manufacture and sale of such problematic drywall, the PSC asserts the following causes of action against each named Defendant: (1) negligence; (2) negligence per se; (3) strict liability; (4) breach of warranties; (5) redhibition; (6) violation of the Louisiana Products Liability Act; (7) private nuisance; (8) unjust enrichment; (9) violation of consumer protection acts;[5] and (10) and equitable and injunctive relief.  Two of the claims (*e.g.*, redhibition and the alleged violation of the Louisiana Products Liability Act) are Louisiana statutory claims and are asserted only by a subset of Plaintiffs, labeled by the PSC as "Louisiana Plaintiffs."  *See Brooke* Complaint at 19-22.

---

[3]   (Rec. Doc. 19847).  BNBM PLC and BNBM Group respectfully disagree with the Court's ruling that counsel is an appropriate agent for service of process, and hereby preserve their arguments on this issue.

[4]   *See, e.g.*, Omnibus Complaint in Intervention (XVI), *Amorin, et al. v. Taishan Gypsum Co. Ltd., et al.*, No. 11-CV-1395 (E.D. La.) (Rec. Doc. 16227); Omnibus Complaint in Intervention (XVII), *Amorin, et al. v. Taishan Gypsum Co. Ltd., et al*., No. 11-CV-1673 (E.D. La.) (Rec. Doc. 16228); Omnibus Complaint in Intervention (III(A)), *Gross, et al. v. Knauf Gips KG, et al*., No. 09-CV-6690 (E.D. La.) (Rec. Doc. 5580).

[5]   The *Brooke* Complaint specifically asserts claims under L.SA-R.S. 51:1401, *et seq*. (Louisiana Unfair Trade Practices and Consumer Protection Law); Ala. Code 1975 § 8-19-1, *et seq*. (Alabama Deceptive Trade Practices Act); N.C. GEN. STAT. § 75-1.1, *et seq*. (North Carolina Consumer Protection Act); F.S. § 501.201, *et seq*. (Florida Deceptive and Unfair Trade Practices Act); VA. CODE. ANN. § 59.1-196, *et seq*. (Virginia Consumer Protection Act); TEX. BUS. & COM. CODE § 17.41, *et seq*. (Texas Deceptive Trade Practices-Consumer Protection Act); MISS. CODE ANN. § 75-24-1, *et seq*. (Mississippi Consumer Protection Act).

Although the PSC's allegations are based on the manufacture and sale of "problematic drywall," the PSC never specifies in *Brooke* which of the seven named Defendants it believes actually manufactured, shipped, or sold such drywall.  The Complaint does not allege that any of the *Brooke* Plaintiffs were harmed by drywall manufactured, sold or shipped by BNBM PLC or BNBM Group.  Instead, it lumps all defendants together and alleges that each caused the harm "together with its affiliates and/or actual or apparent agents."  *Brooke* Complaint at 3-8.  To support alter-ego liability, the PSC alleges in the most conclusory terms that "CNBM Group has exerted control over its subsidiary entities" and that the "Company culture of CNBM Group establishes a 'Parent-subsidiary' company that is managed and directed strictly from the top down."[6]

## II.     BNBM PLC And BNBM Group Did Not Conduct Business In Louisiana

Neither BNBM PLC nor BNBM Group has ever conducted business in Louisiana. BNBM PLC's and BNBM Group's lack of jurisdictional contacts in Louisiana are detailed in the MDL Dismissal Memoranda.[7]  Of particular note, however, neither company registered to do business, maintained an office, paid taxes, or owned or leased property in Louisiana or anywhere else in the United States.[8]  Neither company marketed or advertised drywall in Louisiana.[9]  No BNBM PLC sales representatives traveled to Louisiana or otherwise reached out to the state to

---

[6] *Brooke* Complaint at ¶¶ 8-9.

[7] *See* BNBM PLC MDL Dismissal Memorandum, at 15-22, 70-75, 79-81; BNBM Group MDL Dismissal Memorandum, at 8-12, 21-23.

[8]   BNBM PLC MDL Dismissal Memorandum, at 15; BNBM Group MDL Dismissal Memorandum, at 8.

[9] *See* BNBM PLC MDL Dismissal Memorandum, at 15-18; BNBM Group MDL Dismissal Memorandum, at 8.

market or sell drywall, or any other product.[10]  The only sales of drywall made by BNBM PLC to American companies occurred between November 2005 and July 2006, and none of those purchasers were from Louisiana.[11]  No drywall was shipped to the state.[12]  There is no evidence that BNBM PLC drywall was installed in Louisiana.[13]

## III.    BNBM PLC And BNBM Group Did Not Injure Anyone In Louisiana.

BNBM PLC's drywall did not injure anyone in Louisiana because it was not defective. CPSC tested a sample of BNBM PLC's drywall in 2006, obtained in the United States, and determined that it did not have the problems found in other drywall manufactured in China.[14] The BNBM PLC MDL Dismissal Memorandum describes the CPSC testing results and testimony from the American importers establishing that there were no defects in BNBM PLC's drywall.[15]

Consistent with that evidence, the profile forms submitted by the MDL Plaintiffs reflect that no Louisiana resident claims to have been injured by drywall manufactured or sold by

---

[10] BNBM PLC MDL Dismissal Memorandum, at 17.

[11] *Id.* at 16.

[12] Declaration of Kai Cai ¶¶ 6, 7, 10(a)-(e), attached as Exhibit 25 to BNBM PLC MDL Dismissal Memorandum (Rec. Doc. 19631-28); *see also* the following contracts identifying purchasers as residents of Florida—all of which were filed under seal as exhibits to BNBM PLC MDL Dismissal Memorandum: EAC & Sons Purchase Agreement, BNBMPLC0007421-7423, attached as Exhibit 26 (Rec. Doc. 19631-29); Davis Construction Purchase Agreement, BNBMPLC0007467-7479, attached as Exhibit 27 (Rec. Doc. 19631-30); Wood Nation Inc. Purchase Agreement, BNBMPLC0007445-7448, attached as Exhibit 28 (Rec. Doc. 19631-31); California—Great Western Building Materials Purchase Agreements, BNBMPLC0007430-7433 and BNBMPLC0007441-7444, respectively, attached as Exhibits 29 and 30, respectively (Rec. Docs. 19631-32 and 19631-33, respectively); [Connecticut—Triorient Trading Inc. Purchase Confirmations; BNBMPLC0007456-7460 and BNBMPLC00007461-7466, attached as Exhibits 31 and 32, respectively (Rec. Docs. 19631-34 and 19631-35, respectively].

[13] BNBM PLC MDL Dismissal Memorandum, at 15-16, 73-74.

[14]  BNBM PLC MDL Dismissal Memorandum, at 18-21.

[15] *Id.*

BNBM PLC or BNBM Group.  Between April 3 and October 20, 2015, BrownGreer PLC and the PSC produced 29,324 profile forms or equivalent documents in the MDL.  Not one Louisiana property owner used the words "BNBM," "Dragon" or "Beijing" when identifying the manufacturer of the drywall found in their homes.[16]  Since September 4, 2015, when *Brooke* was filed, the PSC has served 886 additional profile forms and not a single Louisiana property owner reported having BNBM drywall in their homes.[17]

## IV.    Taishan Is Not An Alter-Ego Of Either BNBM PLC Or BNBM Group.

The *Brooke* Plaintiffs base their jurisdictional allegations, slim as they are, on the contention that Taishan's jurisdictional contacts can be imputed to BNBM PLC and BNBM Group based on an alter-ego theory.  As shown in the MDL jurisdictional motions, Taishan is not an alter-ego of BNBM PLC or BNBM Group.  We respectfully refer the Court to pages 6-14, 22-33 and 35-68 of the BNBM PLC MDL Memorandum in support of its motion to dismiss the *Amorin, Wiltz, Gross* and *Germano* cases and the evidentiary support described and referenced therein. We do not want to burden the Court by repeating such evidence, given that the Court already will soon be ruling on the motions.

---

[16] June 8, 2015, Supplemental Declaration of Carolyn F. Taylor in Support of the Federal Rule of Evidence 1006 Summary of Property Owners Identifying BNBM or Dragon Brand Drywall, marked by BNBM PLC and BNBM Group as Defendants' Exhibit 28 at the June 9, 2015 damages hearing before the Court ¶¶ 3, 11, 13, 17 (the Taylor declaration is attached as Exhibit 45 to BNBM PLC MDL Dismissal Memorandum (hereinafter "Taylor Supp. Decl.")); Exhibit 1, "June 8, 2015 Federal Rule of Evidence 1006 Summary Regarding Plaintiffs Identifying BNBM or Dragon Brand Drywall"; Oct. 20, 2015 Supp. Profile Forms Identifying BNBM PLC Drywall, Faber, F. 0001-0007, Jagat, H. 0001-0004, Ryan, F. 0001-0004 (attached as Ex. 64 to BNBM PLC MDL Dismissal Memorandum (hereinafter "Supp. Profile Forms")).

[17] *See* January 12, 2016 Declaration of Carolyn F. Taylor, attached as Exhibit 1.

## ARGUMENT

**I.     BNBM PLC AND BNBM GROUP ARE NOT SUBJECT TO JURISDICTION IN LOUISIANA.**

Louisiana's long-arm statute, La. Rev. Stat § 13:3201, only permits specific jurisdiction over a nonresident "if the defendant has *purposefully directed* his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Canon v. Towns*, 99 So. 3d 1122, 1127 (La. Ct. App. 2012) (quoting *de Reyes v. Marine Mgmt. & Consulting, Ltd.*, 586 So. 2d 103, 106 (La. 1991)).  The burden to prove such "minimum contacts" within Louisiana over BNBM PLC and BNBM Group lies squarely with Plaintiffs.  *See de Reyes*, 586 So. 2d at 107; *see also In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521, 529 (5th Cir. 2014).  After six months of jurisdictional discovery in this MDL, the PSC has not adduced any evidence to meet this burden.

The MDL Dismissal Memoranda, incorporated by reference, detail evidence and authority demonstrating why BNBM PLC and BNBM Group are not subject to jurisdiction in Louisiana, including the following:

- Neither BNBM PLC nor BNBM Group transacted business in Louisiana or sold drywall to Louisiana purchasers.  The PSC has adduced no contrary evidence.

- Neither BNBM PLC nor BNBM Group contracted to supply services or things, including drywall, in Louisiana.  The PSC has adduced no contrary evidence.

- Neither BNBM PLC nor BNBM Group solicited business, engaged in any other persistent course of conduct, or derived revenue from goods used or consumed in Louisiana. The PSC has adduced no contrary evidence.

- Neither BNBM PLC nor BNBM Group manufactured a product that has caused damage or injury in Louisiana.  There is no evidence that BNBM PLC's drywall ever reached Louisiana.  No Louisiana class member in any of the MDL actions has identified BNBM drywall as the source of his or her injury. The CPSC found that BNBM PLC's drywall was not defective.  The PSC has adduced no contrary evidence.

9

In short, neither BNBM PLC nor BNBM Group have directed any activities toward Louisiana, and Plaintiffs have pled no specific facts to the contrary. Plaintiffs cannot simply rely on conclusory alter-ego allegations to create jurisdiction. It is insufficient to plead that BNBM PLC's or BNBM Group's "affiliates and/or actual or apparent agents" did something. Plaintiffs bear the burden of establishing the purported alter-ego relationship as to each Defendant specifically, and they cannot.

The exercise of jurisdiction over either BNBM PLC or BNBM Group would also violate Constitutional due process. No Louisiana resident submitted a profile form claiming to have been harmed by BNBM PLC-manufactured drywall, and therefore the PSC Plaintiffs cannot demonstrate the requisite nexus between their claims and any alleged BNBM PLC or BNBM Group conduct directed at Louisiana. *See Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1269 (5th Cir. 1981).

## II.   THE PSC CANNOT IMPUTE TAISHAN'S CONTACTS TO BNBM PLC OR BNBM GROUP.

Louisiana will only impute the contacts of a subsidiary to a parent for purposes of personal jurisdiction if the subsidiary is the alter-ego of the parent. *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 587 (5th Cir. 2010); *Whitener v. Pliva, Inc.*, No. 10-cv-1552, 2012 WL 1343964, at *5 (E.D. La. Apr. 18, 2012). As BNBM PLC and BNBM Group have explained in the MDL Dismissal Memoranda, Taishan's contacts with Louisiana cannot be imputed to BNBM PLC or BNBM Group on the basis of alter-ego.[18]

### A.     The PSC Does Not Adequately Plead Alter-Ego.

"Parent-subsidiary corporations are presumed to be independent of one another for purposes of determining whether one corporation's contacts with a forum can form the basis of a related corporation's contacts for purposes of the personal jurisdiction inquiry." *IMC Exploration Co. v. Texaco Inc.*, No. 04-cv-1004, 2005 WL 161178, at *3 (E.D. La. Jan. 24, 2005). "While this presumption can be overcome by clear evidence that one corporation is the alter-ego of another, the party alleging the alter-ego relationship bears the burden of proving it." *Id.* In looking for "clear evidence" to overcome the presumption of independent corporations, Louisiana courts consider factors such as "1) commingling of corporate and shareholder funds; 2) failure to follow statutory formalities for incorporating and transacting corporate affairs; 3) undercapitalization; 4) failure to provide separate bank accounts and bookkeeping records; and 5) failure to hold regular shareholder and director meetings." *Ameresco Solar, LLC v. Sader*, No. 14-2890, 2015 WL 3952771, at *4 (E.D. La. Jun. 15, 2015) (quoting *Riggins v. Dixie Shoring Co.*, 590 So. 2d 1164, 1169 (La. 1991)). At the pleading stage, Plaintiffs must "allege sufficient

---

[18] BNBM PLC MDL Dismissal Memorandum, at 6-15, 22-70; BNBM Group MDL Dismissal Memorandum, at 12-14; 23-24.

facts that would demonstrate alter-ego liability and those facts must be well-plead." *Ameresco Solar*, at \*5. Courts are "not obligated to consider conclusory statements" of alter-ego. *Id*.

In *Ameresco Solar*, for example, the complaint alleged, among other things, that a member of the limited liability company "executed and submitted a credit application and guarantee" for the company and that the company was undercapitalized. *Id*. at \*4. The court dismissed those allegations as "conclusory statements," which at most demonstrated "the failure to follow corporate formalities and undercapitalization," but nonetheless failed to allege well-pled facts sufficient "to rise above the speculative level" of an alter-ego. *Id*. at \*5.

The PSC's allegations, here, are even less specific than in *Ameresco Solar*. The *Brooke* Complaint contains only a single paragraph alleging an alter-ego relationship. *Brooke* Complaint at ¶ 17. That lone paragraph contains only conclusory allegations of a CNBM Group "scheme of appointing overlapping officers and directors of subsidiary entities" and that CNBM Group "exerted control over its subsidiary entities" through "directives" and the "use of notices and management reports." *Id*. The PSC does not make a single, fact-specific allegation as to why BNBM PLC or BNBM Group is an alter-ego of any other company and thus fails to state a "plausible" alter-ego claim that rises "above the speculative level." *Ameresco Solar*, at \*5.

**B.      The Evidence Demonstrates That BNBM PLC and BNBM Group Are Not Alter-Egos Of Taishan Or Any Other Defendant.**

Even if the PSC had adequately pled facts to support their alter-ego allegation, the evidence discussed in BNBM PLC's and BNBM Group's MDL Dismissal Memoranda demonstrates that neither entity is the alter-ego of any other Defendant, including Taishan.[19] Instead, the evidence establishes that the relationship between BNBM PLC and Taishan is that of

---

[19]   BNBM PLC MDL Dismissal Memorandum, at 22-68.   BNBM Group MDL Dismissal Memorandum, at 4-8, 12-16, 23-24.

a typical parent and subsidiary, which "are presumed to be independent of one another" under Louisiana law. *IMC Exploration Co.*, 2005 WL 161178, at *3.

To overcome the presumption of independence, the PSC must present "'clear evidence,' which requires a showing of something beyond' the mere existence of a corporate relationship between [the related entities]." *Whitener v. Pliva, Inc.*, No. 10-1552, 2012 WL 1343964, at *5 (E.D. La. Apr. 18, 2012) (quoting *Freudensprung v. Offshore Tech. Servs.*, Inc., 379 F.3d 327, 346 (5th Cir. 2004)). No such evidence exists here. BNBM PLC and Taishan have not held themselves out as a single entity, they have not operated in a way such that the entities' brands and products appear identical, their business relationships are not deeply intertwined, there is no evidence of undocumented transfers of funds between the entities, Taishan has its own robust business, financial activities are properly reflected in the books of each entity, funds have not been transferred between entities without a repayment schedule, and they do not pay each others' employees.[20] *Cf. Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 587 (5th Cir. 2010) (providing relevant factors of alter-ego relationship under Louisiana law, which include: (1) operating in a way that the entities' brands and products appear identical and their business relationships are deeply intertwined; (2) shared phone numbers; common officers and directors; (3) evidence of undocumented transfers of funds between the entities; (4) one entity's payment of the employee salaries of the other); *Whitener*, 2012 WL 1343964, at *6-7 (same); *Green v. Champion Ins. Co.*, 577 So. 2d 249, 257–59 (La. Ct. App. 1991) (listing factors); *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 767 F. Supp. 2d 649, 667 (E.D. La. 2011) (same). It is undisputed that none of the *Jackson* factors are present here.

---

[20] *See* BNBM PLC MDL Dismissal Memorandum, at 23-32.

The connections between Taishan and BNBM Group are even more attenuated.  BNBM Group has never had a direct or first-level subsidiary ownership interest in Taishan.[21]  BNBM Group likewise owns no shares in BNBM PLC, but rather is a separate, wholly owned subsidiary of CNBM Group.[22]  After months of discovery, the Plaintiffs have uncovered no evidence to support their conclusory alter-ego contentions.  Thus, they cannot impute Taishan's contacts to either BNBM PLC or BNBM Group.

## III.   PLAINTIFFS' CLAIMS ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS.

Plaintiffs' claims are barred because the applicable limitation periods expired on the face of the Complaint prior to September 4, 2015, when it was filed.  "Class action lawsuits, like any other lawsuit, are subject to statutes of limitation and repose that limit the time within which a suit must be brought."  *Hall v. Variable Annuity Life Ins. Co.*, 727 F.3d 372, 375 (5th Cir. 2013). The only cause of action not time barred is unjust enrichment, with a ten-year statute, but that claim is preempted by the Louisiana Products Liability Act.

### A.   Brooke's Causes of Action Are Time barred

Plaintiffs asserts claims under Louisiana statutes (redhibition and the Louisiana Products Liability Act), various states' consumer protection statutes, and state common law.  None of these claims enjoy a limitations period beyond four years.[23]  Louisiana imposes a one-year

---

[21]  BNBM Group MDL Dismissal Memorandum, at 12-13.

[22]  *Id.* at 3, 13.

[23]  Plaintiffs cannot rely on *American Pipe* tolling to preserve their time-barred claims because this is a diversity class action.  *See In re Vioxx Products Liab. Litig*., 478 F. Supp. 2d 897, 907-08 (E.D. La. 2007) ("[T]he Court cannot uniformly apply the *American Pipe* doctrine in the instant cases, but must instead examine each state's tolling law to determine whether or not the states recognize class action tolling...").

limitations period for each of the PSC's state common law claims other than unjust enrichment.[24]
*See* LA. CIV. CODE art. 3492.  Actions under the Louisiana Products Liability Act and under the
Louisiana Unfair Trade Practices & Consumer Protection Law similarly have a one-year
limitations period.  *See* LA. CIV. CODE art. 3492.  Louisiana breach-of-warranty and redhibition
actions are governed by a statute of limitations that runs for four years from delivery of the
product or one year from the day the defect was discovered by the buyer, whichever occurs first.
LA. CIV. CODE art. 2534.  The asserted consumer-protection-act claims have limitations periods
ranging from one year (Alabama) to four years (North Carolina).  *See* ALA. CODE § 8-19-14;
N.C. GEN. STAT. § 75-16.2; F.S. § 95.11(3)(F); VA. CODE ANN. § 59.1-204.1(A); TEX. BUS. &
COM. CODE § 17.565; MISS. CODE ANN. § 15-1-49.

The following chart outlines the applicable limitations periods for the claims asserted in
the *Brooke* Complaint:

| State | Cause of Action | Period | Statute |
|-------|-----------------|--------|---------|
| Louisiana | Negligence | 1 year | LA. CIV. CODE art. 3492 |
| Louisiana | Negligence per se | 1 year | LA. CIV. CODE art. 3492 |
| Louisiana | Strict liability | 1 year | LA. CIV. CODE art. 3492 |

---

[24]  To the extent Louisiana substantive law governs the merits of the common law causes of
action, Louisiana's prescription and preemption laws also apply.  *See* LA. CIV. CODE art.
3549(A); *see also Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 491 (5th Cir. 2001)
(Article 3549 sets a "high standard[] for displacing Louisiana's law of prescription").  The
*Brooke* Complaint explains that venue is proper in Louisiana because "Plaintiffs . . . reside in this
jurisdiction."  *Brooke* Complaint at ¶ 2.  As residents of Louisiana, Plaintiffs "lack standing to
assert claims under the laws of the states in which they do not reside or in which they suffered no
injury."  *In re Packaged Ice Antitrust Lit.*, 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011); *see also
In re Actimmune Marketing Litig.*, No. C 08-02376, 2009 WL 3740648, *17 (N.D. Cal. Nov. 6,
2009) ("Where, as here, a representative plaintiff is lacking for a particular state, all claims based
on that state's laws are subject to dismissal.").

| State | Cause of Action | Period | Statute |
|-------|-----------------|--------|---------|
| Louisiana | Breach of express and/or implied warranties | 1 year/4 years[25] | La. Civ. Code art. 2534 |
| Louisiana | Redhibition | 1 year/4 years[26] | La. Civ. Code art. 2534 |
| Louisiana | Louisiana Products Liability Act | 1 year | La. Civ. Code art. 3492 |
| Louisiana | Private nuisance | 1 year | La. Civ. Code art. 3492 |
| Louisiana | Unjust enrichment | 10 years | La. Civ. Code art. 3499 |
| Louisiana | Louisiana Unfair Trade Practices & Consumer Protection Law | 1 year | La. Civ. Code art. 3492 |
| Alabama | Alabama Deceptive Trade Practices Act | 1 year | Ala. Code § 8-19-14 |
| North Carolina | North Carolina Consumer Protection Act | 4 years | N.C. Gen. Stat. § 75-16.2 |
| Florida | Florida Deceptive & Unfair Trade Practices Act | 2 years | F.S. § 95.11(3)(f) |
| Virginia | Virginia Consumer Protection Act | 2 years | Va. Code § 59.1-204.1(A) |
| Texas | Texas Deceptive Trade Practices-Consumer Protection Act | 2 years | Tex. Bus. & Com. Code § 17.565 |
| Mississippi | Mississippi Consumer Protection Act | 3 years | Miss. Code Ann. § 15-1-49 |

The *Brooke* Complaint fails to allege any acts within these prescription periods, undertaken by BNBM PLC or BNBM Group, which gave rise to the harm alleged. Moreover, the facts already established in the MDL Dismissal Memoranda show they could not have committed any such acts, let alone within the prescription periods. Neither BNBM Group nor BNBM PLC sold drywall to U.S. customers after 2006.[27] The first lawsuit involving Taishan-

---

[25] Under La. Civ. Code article 2534, an action prescribes four years from the day of delivery of the product or one year from the day the defect was discovered by the buyer, whichever occurs first.

[26] Under La. Civ. Code article 2534, an action prescribes four years from the day of delivery of the product or one year from the day the defect was discovered by the buyer, whichever occurs first.

[27] BNBM PLC MDL Dismissal Memorandum, at 15-16; BNBM Group MDL Dismissal Memorandum, at 4, 9-10.

16

manufactured drywall was filed on or about January 30, 2009.[28]   On June 15, 2009, this Court

was designated as the transferee court for all federal cases involving Chinese-manufactured

drywall.   On May 25, 2010, the CPSC issued a public release identifying manufacturers of

problematic drywall.[29]   Widespread press coverage of the issues have continued throughout the

litigation.   National and local media coverage of Chinese drywall were sufficient to put Plaintiffs

on notice of a potential link between their alleged injuries and the Chinese drywall in their

homes.   *See In re Vioxx Prods. Liability Litig.*, 522 F. Supp. 2d 799, 810 (E.D. La. 2007)

(widespread media coverage is ample notice triggering statute of limitations).   Thus, all of

Plaintiffs' purported claims against BNBM PLC or BNBM Group arose well before September

2011, and all are barred by the applicable statute of limitations.

### B.     No Tolling Applies

If limitations periods have expired on the face of a complaint, plaintiffs have the "burden

of establishing some rule of suspension, interruption or other exception to save these facially-

prescribed claims."   *Chaverri v. Dole Food Co.*, 546 F. App'x 409, 414 (5th Cir. 2013); *Jones v.*

*Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).   No tolling doctrines apply, and the *Brooke*

Plaintiffs have not pled any.

Plaintiffs cannot rely on *American Pipe* tolling to preserve their time barred claims

because this is a diversity class-action.   The "Court cannot uniformly apply the American Pipe

doctrine in the instant cases, but must instead examine each state's tolling law to determine

---

[28]   *Allen v. Knauf Plasterboard (Tianjin) Co., Ltd*., No. 2:09-54 (M.D. Fla. 2009).   The first
transfer order to this MDL Court was on June 15, 2009.

[29]   Consumer Prot. Safety Bd., CPSC Identifies Manufacturers Of Problem Drywall
Made In China, Release No. 10-243 (May 25, 2010), attached as exhibit 42 to BNBM PLC
MDL Dismissal Memorandum.

whether or not the states recognize class-action tolling." *In re Vioxx Products Liab. Litig.,* 478 F. Supp. 2d 897, 907-08 (E.D. La. 2007). Louisiana law does not.

Plaintiffs cannot rely on multiple previously filed class-actions to interrupt or suspend the limitations period. The "courts apply a 'no piggyback rule,' which prevents tolling by a later class-action." *Lanzas v. Am. Tobacco Co.*, No. 00-cv-2262, 2001 WL 1223600, at *2 (E.D. La. Oct. 11, 2001). "Plaintiffs may not stack one class-action on top of another and continue to toll the statute of limitations indefinitely." *Smith v. Cutter Biological*, 770 So. 2d 392, 410 (La. Ct. App. 2000). Allowing Plaintiffs to "continue the interruption of the prescriptive period would border on the acceptance of 'piggy backing' or 'stacking' of class-actions on top of one another, a practice which Louisiana courts have firmly rejected." *Chaverri v. Dole Food Co.*, 896 F. Supp. 2d 566, 572 (E.D. La. 2012) (footnote omitted). "Permitting such tactics would allow lawyers to file successive putative class-actions with the hope of attracting more potential plaintiffs and perpetually tolling the statute of limitations as to all such potential litigants, regardless of how many times a court declines to certify the class." *Smith*, 770 So. 2d at 410; *see also Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F. 2d 1334, 1351 (5th Cir. 1985).

Louisiana Code of Civil Procedure article 596 reflects that the Louisiana legislature has rejected cross-jurisdictional tolling in class-action proceedings. The "plain language of La. C.C.P art. 596 dictates that the suspension of prescription provided therein applies only to 'petition[s] brought on behalf of a class' in the state courts of Louisiana." *Quinn v. La. Citizens Prop. Ins. Corp.*, 118 So. 3d 1011, 1022-23 (La. 2012) (footnote omitted); *see also Chaverri*, 546 F. App'x at 414. Article 596, which provides tolling of individual class member claims, applies *only* to petitions brought on behalf of a class in the *state* courts of Louisiana. As the Fifth Circuit recently explained:

18

[T]he Louisiana Supreme Court held that "the suspension of prescription provided [under Article 596] applies only to 'petition[s]' brought on behalf of a class in the state courts of Louisiana." As a federal class-action petition, the [complaint] cannot suspend prescription under Article 596 as a matter of law.

*McGee v. State Farm Fire & Casualty Co.*, 515 F. App'x 291, 294 (5th Cir. 2013) (citation omitted); *Quinn*, 118 So. 3d at 1020-21.

Even if Louisiana recognized class-action tolling, it is not available here. The *American Pipe* doctrine tolls the statute of limitations for the claims of unnamed class members. *American Pipe & Constr. Co. v. Utah*, 414 US 538 (1974). But in their September 8, 2015 letter, the PSC advised the Court that the *Brooke* Complaint is intended to represent "approximately 800" property owners "that may not have been included in the Certified Class" (referring to the class certified in *Amorin*). Counsel for BNBM PLC and BNBM Group have reviewed the *Brooke* class member list and have confirmed that 85-90% of the *Brooke* class members were not included in the certified class. For the vast majority of the *Brooke* class, then, *American Pipe* tolling would be unavailable even if Louisiana permitted it in these circumstances. Equitable tolling principles also do not apply here. "[E]quitable tolling applies only rarely, usually where the plaintiff is actively misled by the defendant or is prevented in some extraordinary way from asserting his rights." *See Brooks v. Menifee*, 269 F. App'x 441, 442 (5th Cir. 2008). Plaintiffs allegations do not meet this standard.

## IV. PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Labels and conclusions or a formulaic recitation of the elements of a cause of action are insufficient. *Ashcroft v. Iqbal*, 556 U.S 662, 678 (2009). Similarly, the Fifth

Circuit has warned that courts "will not strain to find inferences favorable to the plaintiffs" nor will they accept "conclusory allegations, unwarranted deductions, or legal conclusions." *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005). Instead, a plaintiff's complaint must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Patrick v. Wal-Mart, Inc. – Store # 155,* 681 F.3d 614, 617 (5th Cir. 2012).

### A. Plaintiffs' Claims Are Inadequately Pled With Conclusory Allegations That Lump All Defendants Together.

The *Brooke* Complaint should be dismissed with respect to BNBM PLC and BNBM Group because Plaintiffs' allegations are inadequately pled in violation of Fed. R. Civ. P. 8. Plaintiffs make no attempt to specify conduct attributable to either BNBM PLC or BNBM Group. Instead, they make only common allegations regarding the actions of the "Defendants" (referring to all seven Defendants as a group) and "Defendants' drywall."

"In complex cases involving multiple defendants and multiple counts, it is imperative that litigants ensure compliance with basic pleading requirements." *Griffin v. HSBC Mortgage Servs., Inc.*, No. 4:14-CV-00132-DMB, 2015 WL 4041657, at *6 n.11 (N.D. Miss. July 1, 2015). Accordingly, it is well settled that "lumping" defendants together in a complaint fails to satisfy Rule 8's standards. *See Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct," the plaintiff's complaint failed to satisfy the minimum standard); *Rutherford v. Equifax*, No. 10-1988, 2011 WL 3606964, at *1 (E.D. La. Aug. 16, 2011) (granting motion to dismiss for plaintiff's failure to "specify the basis of his claim against each particular defendant separately, rather than lumping them together"). "A complaint does not satisfy the requirements of *Iqbal* and *Twombly* by lumping together all defendants, while providing no factual basis to

distinguish their conduct." *Del Castillo v. PMI Holdings N. Am. Inc.*, No. 4:14-CV-3435, 2015 WL 3833447, at *6 (S.D. Tex. June 22, 2015);  *see also Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1273-74 (M.D. Fla. 2009) ("Because of the grouping together of these Defendants without differentiation or some sort of description of actions that could provide 'fair notice' of the basis for the claims against them, the claims against [them] are not sufficiently pled.").

After Plaintiffs identify each Defendant in paragraphs 6-18 of the *Brooke* Complaint, they do not make a single factual allegation specific to BNBM PLC or BNBM Group.  Indeed, none of the allegations made within any of the counts in the *Brooke* Complaint even mention either BNBM PLC or BNBM Group.  Plaintiffs simply make dozens of general allegations about the "Defendants" and "Defendants' problematic drywall" without attempting to specify responsibility or conduct attributable to any defendant independently.  *See, e.g.*, *Brooke* Complaint at ¶¶ 19-29, 41-123.  The PSC is unable to make any specific allegations against BNBM PLC or BNBM Group because the simple fact is that extensive discovery to date has demonstrated that neither entity produced any drywall that harmed Plaintiffs.  In fact, the CPSC found that BNBM PLC's drywall—or Dragon Brand drywall—found in the United States "had low or no detectable emissions of hydrogen sulfide" and was comparable to "drywall samples that were manufactured domestically."  *See* BNBM PLC MDL Dismissal Memorandum, at 18-21 (discussing CPSC investigation and testing).  In other words, BNBM PLC's drywall was not defective.  To avoid the requirement that it plead specific facts establishing jurisdiction over and liability of BNBM PLC or BNBM Group, Plaintiffs have improperly tried to make it appear that all named Defendants are one and the same.  Such improper group pleading warrants dismissal of the Complaint against BNBM PLC and BNBM Group.

**B.      Louisiana Law Does Not Permit Plaintiffs' Claims For Negligence, Negligence Per Se, Strict Liability, Express Or Implied Warranty, Private Nuisance, and Unjust Enrichment.**

The Louisiana Product Liability Act ("LPLA") statute provides "the exclusive theories of liability for manufacturers for damage caused by their products."  La. Rev. Stat. § 9:2800.52.  A plaintiff "may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in [the LPLA]."  *Id*.  Pursuant "to the LPLA, Plaintiffs' claims against Defendants for strict liability, negligence and negligence per se are not viable as independent theories of recovery outside of the LPLA framework."  *King v. Bayer Pharm. Corp.*, No. 09-0465, 2009 WL 2135223, at *3 (W.D. La. Jul. 13, 2009).   Yet that is exactly what Plaintiffs attempt here.

The *Brooke* Complaint alleges that "problematic drywall" was manufactured by one of the Defendants, and Plaintiffs seek damages because of that drywall.  As a result, as a matter of law, Plaintiffs' claims for negligence, negligence per se, strict liability, private nuisance, and unjust enrichment should be dismissed with prejudice as barred by the LPLA.  *See Pitre v. Yamaha Motor Co*., 51 F. Supp. 3d 644, 661 (E.D. La. 2014) ("The LPLA does not provide [a] cause[] of action for . . . unjust enrichment.  Thus, Plaintiffs may not individually maintain actions under Louisiana law "based on this theory.")  *See Pitre*, 51 F. Supp. 3d at 661.  "Louisiana law explicitly precludes general negligence claims against manufacturer defendants."  *Henderson v. Dasa*, No. 13-8, 2013 WL 4774773, at *3 (E.D. La. Sept. 4, 2013); *see also, e.g., Hillard v. United States*, No. 06-2576, 2007 WL 647292, at *4 (E.D. La. Feb. 28, 2007) (dismissing negligence, negligence per se, and strict liability claims as barred under LPLA).  "While the statutory ways of establishing that a product is unreasonably dangerous are predicated on principles of strict liability, negligence, or warranty, respectively, neither negligence, strict liability, nor breach of express warranty is any longer viable as an independent

22

theory of recovery against a manufacturer." *Jefferson v. Lead Indus. Ass'n,* 930 F. Supp. 241, 245 (E.D. La. 1996).

### C.     Plaintiffs' Negligence and Negligence Per Se Claims Should Be Dismissed.

Even without the preclusive effect of the LPLA, Plaintiffs cannot state a claim for negligence per se and negligence.  First, the "doctrine of negligence per se has been rejected in Louisiana."  *Galloway v. State Dep't. of Transp.& Dev.*, 654 So. 2d 1345, 1347 (La. 1995); *Bellsouth Telecomms., Inc. v. Eustis Eng'g Co.*, 974 So. 2d 749, 752 (La. Ct. App. 2007). Second, Plaintiffs have not pled all of the elements of a negligence claim.  To prove negligence, a plaintiff must show: (1) the defendant had a duty to conform his conduct to a specific standard of care, (2) the defendant's conduct failed to conform to the appropriate standard of care, (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries, (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries, and (5) actual damages.  *Nagle v. Gusman*, 61 F. Supp. 3d 609, 620 (E.D. La. 2014); *Pinsonneault v. Merchants & Farmers Bank & Tr. Co.*, 816 So. 2d 270, 275-76 (La. 2002).

Here, Plaintiffs' conclusory allegations do not explain how either BNBM PLC or BNBM Group breached their duty to exercise reasonable care in "designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling th[e] drywall."  *See Brooke* Complaint ¶ 44.  There are no factual allegations that "Defendants knew or should have known that their wrongful acts and omissions would result in harm."  *Id*. at ¶ 43. Instead, the cause of action for negligence asserts only that the drywall at issue was "problematic" without addressing how defendants "knew or should have known that their product could, and would, cause harm."  *Id.* at ¶ 47.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

23

### D.      Plaintiffs' Strict Liability Claim Should be Dismissed.

Louisiana has largely eliminated strict liability.  Strict liability applies to only a handful of situations, none of which are even arguably relevant here.  *See Sadler v. Int'l Paper Co.*, No. 09-1254, 2010 WL 5125502, at *3 n.4 (W.D. La. Dec. 9, 2010) ("Strict liability applies in the following circumstances: to dog owners, explosives users, pile drivers, parents of minor children, and persons exposed to vicarious liability.").

Even if strict liability could apply here, it requires showing that: "1) the thing which caused the damages was in the care custody and control of the defendant; 2) the thing had a vice or defect which created an unreasonable risk of harm; and 3) the injuries were caused by the defect."  *Murry v. Aran Energy Corp.*, 863 F. Supp. 315, 319 n.1 (E.D. La. 1994).  The *Brooke* Complaint does not contain sufficient factual allegations pleading that the drywall "had a vice or defect which created an unreasonable risk of harm."  *Id.*  Plaintiffs merely plead that the drywall was "problematic and unreasonably dangerous because Defendants failed to adequately warn and instruct Class Members of their negligent design."  *See Brooke* Complaint ¶ 69.  Moreover, this allegation is contradicted by the evidence that BNBM PLC's drywall was not defective.[30]

### E.      Plaintiffs' Private Nuisance Claim Should Be Dismissed.

Plaintiffs have failed to allege that either BNBM PLC or BNBM Group has caused a nuisance under Louisiana law because there is no "neighbor-proprietor" relationship. Louisiana's nuisance laws ensure that one estate owner does not "deprive[] his neighbor of enjoyment or causes damage to him . . . ."  LA. CIV. CODE art. 667.  "Article 667 provides that a landowner is liable for any activity on his property that would deprive his neighbor of enjoyment of his property or cause damage to him."  *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 607-

---

[30]   *See* BNBM PLC MDL Dismissal Memorandum, at 18-21.

08 (E.D. La. 2006).  In other words, article 667 merely impose "obligations of neighborhood." *Rodriguez v. Copeland*, 475 So. 2d 1071, 1078 (La. 1985).  Thus, without a neighbor-proprietor relationship between defendant and plaintiff, there can be no claim for nuisance.  *See Barasich v. Shell Pipeline Co.*, No. 05-4180, 2006 U.S. Dist. LEXIS 84389, at *26 (E.D. La. Nov. 20, 2006) (interpreting "private nuisance" claims under article 667 and dismissing property owners' claims resulting from rupture of defendant's crude oil pipeline for private nuisance because, "[w]hile it may be conceivable that some property owners might be able to show they were in fact 'neighbors' within the meaning of article 667, that is not what the putative class has pled in this case."); *Barasich v. Columbia Gulf Transmission Co.*, 467 F. Supp. 2d 676, 690 (E.D. La. 2006) ("The statute applies only in the case of damage done to neighbors.")

Here, of course, no such relationship exists.  Neither BNBM PLC nor BNBM Group own *any* neighboring property.  Plaintiffs thus fail to state a claim for private nuisance under Louisiana law.

**F.      Plaintiffs' Unjust Enrichment Claim Should Be Dismissed.**

An unjust enrichment claim in these circumstances is preempted by the Louisiana Products Liability Act.  "The LPLA does not provide [a] cause[] of action for . . . unjust enrichment.  Thus, Plaintiffs may not individually maintain actions under Louisiana law based on [this] theor[y]."  *See Pitre*, 51 F. Supp. 3d at 661.

Even were it not preempted, the *Brooke* Complaint fails to state a claim for unjust enrichment.  The five prerequisites necessary to support an action for unjust enrichment are: "1) there must be an enrichment, 2) there must be an impoverishment, 3) there must be a causal relationship between the enrichment and the impoverishment, 4) there must be an absence of justification or cause for the enrichment or impoverishment, and 5) there must be no other remedy at law."  *Fogleman v. Cajun Bag & Supply Co.*, 638 So. 2d 706, 709 (La. Ct. App.

1994).  Because BNBM PLC and BNBM Group did not sell the allegedly defective drywall to Plaintiffs, the companies have not received anything of value from them.  Moreover, because BNBM PLC's drywall was not defective, Plaintiffs cannot demonstrate "an absence of justification" for any alleged enrichment.  Thus Plaintiffs have failed to plead the first, third, and fourth elements necessary to establish an unjust enrichment claim.

>      **G.      Plaintiffs' Redhibition Claim Should Be Dismissed.**

In Count V, Plaintiffs appear to allege two distinct causes of action under Louisiana's Civil Code: (1) liability under article 2520, for violating the "Warranty Against Redhibitory Defects," *see* ¶¶ 85-86; and (2) liability under article 2524, for violating the statutory "Warranty of Fitness." *See* ¶¶ 93-84.  But as this Court has held, a plaintiff cannot claim under both articles simultaneously.

Both article 2520 and article 2524 create a cause of action based on breach of an implied warranty.  *See Hollybrook Cottonseed Processing, LLC v. Carver, Inc.*, No. 09-0750, 2010 WL 892869, at *7 (W.D. La. Mar. 11, 2010).  An article 2520 redhibitory defect is one that "renders the thing useless or its use so inconvenient" or "diminishes its usefulness or its value" so that it is "presumed that a buyer would not have bought the thing had he known of the defect; or . . . would still have bought it but for a lesser price."  La. Civ. Code art. 2520.  Article 2524 requires that a "thing sold must be reasonably fit for its ordinary use."  No article 2524 claim can exist where, as here, a plaintiff alleges the existence of a redhibitory defect under article 2520. *See Stroderd v. Yamaha Motor Corp., U.S.A.*, No. 04-3040, 2005 WL 2037419, at *3 (E.D. La. Aug. 4, 2005) ("Comment (b) [to article 2524] implies that a breach of contract of fitness for ordinary use claim is only an independent cause of action when an item is free from redhibitory defects. This proposition has consistently been endorsed by the courts.") (citing *PPG Indus., Inc. v. Industrial Laminates Corp.*, 664 F.2d 1332, 1335 (5th Cir.1982) ("courts in Louisiana have held

unequivocally that actions based on a breach of warranty against defects are to be brought in redhibition instead of as a breach of contract")).

"Regardless of the language" in which a plaintiff couches its cause of action, where "it is evident that [the] cause of action arose out of the allegedly defective condition" of the product— and thus "a properly functioning [product] would . . . meet . . . [plaintiffs'] needs or purposes"— no article 2520 claim exists. *Cunard Line Ltd. v. Datrex, Inc*., 926 So. 2d 109, 113-14 (La. Ct. App. 2006). "Courts have interpreted comment b to indicate that a breach of the warranty of fitness claim is subsumed by the breach of the warranty against redhibitory defects when there is a redhibitory defect in the thing sold. In other words, breach of warranty of fitness applies only in situations where the claim is based on fitness and not the defective nature of the thing." *Hollybrook Cottonseed Processing, LLC* 2010 WL 892869, at *7 (internal citations omitted); *see also Mumford v. Jackson Nat. Life Ins. Co*., No. 2006-CA-1412, 2007 WL 7711472, at *6 (La. Ct. App. Nov. 7, 2007). Here, Plaintiffs have alleged "*Although the drywall functions according to its intended purpose as a building component*, it is unfit for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants." *Brooke* Complaint ¶ 22 (emphasis added). Accordingly, Plaintiffs' article 2520 statutory warranty of fitness claims must be dismissed.

Moreover, Plaintiffs' redhibition claim under either article fails because they have not specifically alleged that BNBM PLC's drywall contained any "redhibitory defect." Given the CPSC's findings regarding BNBM PLC's drywall, and Plaintiffs' failure to allege facts to the contrary, this provides an additional basis to dismiss the claim.

**H.    Plaintiffs' Claim For Violation of the Louisiana Products Liability Act Should Be Dismissed.**

Plaintiffs allege that "Defendants are liable to Louisiana Plaintiffs under the [LPLA]" because "Defendants' drywall is unreasonably dangerous" and "Defendants knew that their drywall was unreasonably dangerous and/or problematic." *Brooke* Complaint ¶¶ 92-102. Plaintiffs' allegations amount to accusations of fraud, and they must therefore "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Plaintiffs, however, have pled no particulars with respect to either BNBM PLC or BNBM Group. As discussed above, neither BNBM entity is mentioned by name in Plaintiffs' allegations for this cause of action. In light of Plaintiffs' failure to plead with particularity, and in light of evidence from the CPSC directly contradicting any allegation that BNBM PLC's drywall was defective, Plaintiffs' LPLA claim does not meet the minimum pleading requirements under Rules 8 and 9(b) of the Federal Rules of Civil Procedure.

**I.    Plaintiffs' Claim Under The Consumer Protection Acts Should Be Dismissed.**

The Mississippi, Alabama, and Louisiana Consumer Protection Statutes cited in the *Brooke* Complaint all expressly prohibit what Plaintiffs attempt here:  the pursuit of claims on behalf of a class. *See* MISS. CODE ANN. § 75-24-15 (4) ("Nothing in this chapter shall be construed to permit any class-action or suit, but every private action must be maintained in the name of and for the sole use and benefit of the individual person."); La. Rev. Stat. § 51:1409 (A) ("Any person who suffers any ascertainable loss of money or movable property . . . as a result of . . . an unfair or deceptive method, act, or practice declared unlawful . . . may bring an action individually but not in a representative capacity to cover damages"); Ala. Code § 8-19-10 ("A

consumer or other person bringing an action under this chapter may not bring an action on behalf of a class.").[31]

Moreover, the factual allegations in support of this claim are limited to paragraph 117 of the *Brooke* Complaint, wherein Plaintiffs allege a "knowing misrepresentation or failure to disclose the . . . quality of problematic drywall." *Brooke* Complaint at ¶ 117.  Because this allegation sounds in fraud, plaintiffs must meet the heightened pleading requirement of Rule 9(b).  *See Brand Coupon Network LLC v. Catalina Mktg. Corp.*, No. 11–00556, 2014 WL 6674034, at *5 (M.D. La. Nov. 24, 2014) ("Where a plaintiff's [Louisiana Unfair Trade Practices and Consumer Protection Law] claim is based on alleged fraudulent misrepresentation, the LUPTA claim must meet the heightened pleading requirements of Rule 9(b).").  Plaintiffs have not pled fraud, concealment or misrepresentation with particularity as required by Rule 9(b).

## V.   THE *BROOKE* COMPLAINT SHOULD BE DISMISSED BECAUSE BNBM PLC AND BNBM GROUP HAVE NOT PROPERLY BEEN SERVED WITH PROCESS.

The *Brooke* Plaintiffs concede that they never attempted proper service on BNBM PLC or BNBM Group through the Hague Convention.[32]   As the Court knows, BNBM PLC and

---

[31]   Multiple courts have recognized these express limitations.  *See, e.g.*, *Iberia Credit Bureau, Inc., v. Cingular Wireless LLC*, 379 F.3d 159, 174-75 (5th Cir. 2004) ("(LUTPA), which is one basis of the plaintiffs' claims, does not permit individuals to bring class actions"); *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 84 (D. Mass. 2005) (excluding "out of hand" consumers from "Alabama . . . Louisiana, [and] Mississippi" from nationwide class because "there is no right to bring a class action to enforce the consumer protection statutes"); *Univ. Fed. Credit Union v. Grayson*, 878 So. 2d 280, 285 n.2 (Ala. 2003) (citing Ala. Code § 8-19-10(f)) ("[w]hile it is not clear whether the trial court intended to certify the deceptive trade-practices claim, we hold that the trial court exceeded its discretion if it did so").

[32]   BNBM PLC and BNBM Group hereby preserve their respective objections to Plaintiffs' improper attempts at service.  BNBM PLC and BNBM Group incorporate by reference and adopt in full the arguments they raised in their previously filed Opposition to the Plaintiffs' Steering Committee's Motion to Approve Alternative Service of Process. (Rec. Doc. 19558).

BNBM Group respectfully disagree with the Court's conclusion that alternative service on counsel is permitted in this action.

## **<u>CONCLUSION</u>**

For the foregoing reasons and the reasons set forth in the BNBM PLC and BNBM Group MDL Motions to Dismiss and supporting memoranda, declarations, and exhibits, BNBM PLC and BNBM Group move the Court to dismiss the *Brooke* Complaint.

Dated:  January 12, 2016

Respectfully submitted,

**DENTONS US LLP**

By: */s/ Michael H. Barr*
Michael H. Barr
New York Bar No. 1744242
Justin N. Kattan
New York Bar No. 3983905
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
michael.barr@dentons.com
justin.kattan@dentons.com

Richard L. Fenton
Illinois Bar No. 3121699
Leah R. Bruno
Illinois Bar No. 6269469
233 South Wacker Drive
Suite 5900
Chicago, IL  60606-6306
Telephone:  (312) 876-8000
Facsimile:  (312) 876-7934
richard.fenton@dentons.com
leah.bruno@dentons.com

Kenneth J. Pfaehler
D.C. Bar No. 461718
Drew W. Marrocco
D.C. Bar No. 453205
1301 K Street, N.W.
Suite 600, East Tower
Washington, D.C. 20005
Telephone: (202) 408-6400
Facsimile: (202) 408-6399
kenneth.pfaehler@dentons.com
drew.marrocco@dentons.com

31

C. Michael Moore
Texas Bar No. 14323600
Matt Nickel
Texas Bar No. 24056042
2000 McKinney Ave, Suite 1900
Dallas, TX  75201
Telephone:  (214) 259-0900
Facsimile:  (214) 259-0910
mike.moore@dentons.com
matt.nickel@dentons.com

**PHELPS DUNBAR LLP**

Harry Rosenberg
Louisiana Bar No. 11465
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130
harry.rosenberg@phelps.com

*Attorneys for Beijing New Building Material (Group) Co., Ltd. and Beijing New Building Materials Public Limited Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing **Beijing New Building Materials Public Limited Company and Beijing New Building Material (Group) Co., Ltd.'s Memorandum of Law in Support of Their Motion to Dismiss** has been served on Plaintiffs' Liaison Counsel, Leonard Davis, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this January 12, 2016.

<u>/s/     Michael H. Barr</u>

85759993