UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 |
| | SECTION "L" |
| | JUDGE FALLON |
| | MAG. WILKINSON |

**REPLY BRIEF IN SUPPORT OF OBJECTION TO SPECIAL MASTER'S OPINION AND DECREE**

**MAY IT PLEASE THE COURT:**

Mrs. Jody Ferchaud (hereinafter "Mrs. Ferchaud") hereby replies to the *Response Brief in Opposition to Mrs. Ferchaud's Objection to Special Master's Opinion and Decree and Brief in Support* (Rec. Doc. 19961) which was filed by Moss & Associates, LLC (hereinafter "Moss") on January 11, 2016.

**ARGUMENT IN REPLY**

**A. SPECIAL MASTER ERRED IN FINDING THAT MRS. FERCHAUD IS RESPONSIBLE FOR THE DELAY**

In its response brief, Moss continues to falsely rely on the rough inspections conducted by Mr. Bryan Surgi to support its position that Mrs. Ferchaud is responsible for the delay in this case. The reliance of Moss on Mr. Surgi's rough inspections has been a problem throughout the remediation work on Mrs. Ferchaud's property and is one of the reasons that Mrs. Ferchaud believes that Moss is responsible for the delays in this case. As Mr. Flettrich stated in his *Preliminary Expert Report*,

> Despite being provided clear and indisputable evidence in Flettrich's April 13, 2015 report that the mechanical and electrical systems that had been installed by Moss were in violation of the applicable mechanical and electrical codes, Moss continued to falsely assert in Mr. William Coates' April 23, 2015 e-mail to

Ferchaud that their work was in accordance with all applicable codes and has passed rough inspections by the City of New Orleans (see paragraphs 1, 15, 18 and 26 in **ATTACHMENT 9**). Mr. Coates is an assistant project manager with Moss.[1]

As the record before this Honorable Court shows, the reliance of Moss on Mr. Surgi's rough inspections is misplaced, as the rough inspections conducted by Mr. Surgi were not only determined to be erroneously passed by Mr. Flettrich, but were also determined to be erroneously passed by the City of New Orleans.  According to Mr. Flettrich, on May 19, 2015,

> Mr. Hardouin and Mr. Bordelon, along with Mr. Brian Medus, Assistant Chief Mechanical Inspector for the City of New Orleans Department of Safety & Permits, performed a follow-up third party audit inspection related to the mechanical and electrical work performed by Moss and/or Moss' subcontractors.
>
> During this inspection, Mr. Bordelon placed a "FAILED" electrical inspection sticker on each dwelling…Each inspection sticker stated that the walls and ceilings could not be closed until approved by a building inspector.[2]

Likewise, Mr. Flettrich's clear and indisputable evidence of violations has subsequently been confirmed by the City of New Orleans in its June 23, 2015 correspondence, which was explained under the Argument section in section B. of the *Brief in Support of Objection to Special Master's Opinion and Decree* (Rec. Doc. 19909) (hereinafter "Mrs. Ferchaud's brief").

Moss alleges that the City of New Orleans ultimately failed these rough inspections, because of Mrs. Ferchaud's actions, including her spending innumerable money hiring independent experts because she did not agree with the results of the rough inspections. However, the reason that the City of New Orleans ultimately failed these rough inspections is because the rough inspections were erroneously passed and because the mechanical and electrical systems that had been installed by Moss were in violation of the applicable mechanical

---

[1] Please see p. 4 of the *Preliminary Expert Report* of Mr. David C. Flettrich, A Professional Engineering Corporation (hereinafter "*Preliminary Expert Report*") which is part of Exhibit "A" to Mrs. Ferchaud's brief.  Please also see paragraphs 1, 15, 18 and 26 in Attachment 9 of the *Preliminary Expert Report*.  Please also see pp. 18-19 of the *Preliminary Expert Report*.

[2] Please see p. 21 of the *Preliminary Expert* Report which is part of Exhibit "A" to Mrs. Ferchaud's brief.  Please also see Photo 18 and 19 of Attachment 56 of the *Preliminary Expert Report*.

and electrical codes. The record before this Honorable Court clearly shows this and Moss cannot dispute that the City of New Orleans subsequently failed Mrs. Ferchaud's property.

On December 16, 2014, Mrs. Ferchaud met with Justin Smith of Moss and Justin Smith showed her a passed inspection sticker for the mechanical work on the 6025 dwelling and showed her a passed inspection sticker for the electrical work on both dwellings. However, Mrs. Ferchaud noticed numerous problems in both dwellings by simply walking through each dwelling, including that there were no air ducts in both dens. Mrs. Ferchaud knew that the above described rough inspections should not have passed, and informed Moss of this. Moss, however, continued to falsely rely on these rough inspections, as they continue to do so today. In order to prevent Moss from permanently concealing from view life safety code violations and to prevent Moss from permanently creating both a life safety hazard and a property damage hazard, Mrs. Ferchaud was forced to hire experts to inspect the residential building located at 6021-6025 Canal Boulevard. (Including Natal's Air Conditioning, Mr. Flettrich and Mr. Marc Dahlman).[3] Had she not done this, Moss would have been able to close in the walls and ceilings, and permanently conceal from view the life safety code violations, identified in Mr. Flettrich's *Preliminary Expert Report*, and would have permanently created a life safety hazard and a property damage hazard. Additionally, as explained by Mr. Flettrich in his brief comments related to Moss's position paper and its 20 exhibits, Mrs. Ferchaud and the City of New Orleans were authorized to do this. According to Mr. Flettrich,

> ...Moss's allegation in Section I of its position paper that Ms. Ferchaud convinced the City of New Orleans that the inspections Moss had passed should be amended to indicate failure is false for the following reasons:

---

[3] On March 12, 2015, Natal's Air Conditioning issued an Inspection Report on a quick inspection that Mr. Frank D. Natal III performed on Mrs. Ferchaud's property. Please see attached Exhibit "A": Natal's Air Conditioning Inspection Report. After the quick inspection, Natal's informed Mrs. Ferchaud that more evaluation was needed and recommended that a Professional Engineer be hired by Mrs. Ferchaud. Subsequently, Mrs. Ferchaud hired Mr. Flettrich.

…

    B. Section 110 of the New Orleans Building code is entitled "Inspections".
    C. Under the provisions of section 110 of the New Orleans Building Code, Ms. Ferchaud had the right to request that the City of New Orleans Department of Safety & Permits perform a third-party audit inspection to verify the accuracy and reliability of the third-party inspections performed by Mr. Bryan Surgi.
    D. Under the provisions of section 110 of the New Orleans Building Code, the City of New Orleans Department of Safety & Permits had the authority to perform a third-party audit inspection to verify the accuracy and reliability of the third-party inspections performed by Mr. Surgi.
    E. Under the provisions of section 110 of the New Orleans Building Code, the City of New Orleans Department of Safety & Permits had the authority to invalidate, i.e., fail, the third-party inspections performed by Mr. Surgi and issue the June 23, 2015 code violation letter written by Mr. Zachary Smith, the Chief Building Official for the Department of Safety & Permits for the City of New Orleans. **ATTACHMENT 27** to Mr. Flettrich's July 23, 2015 report is a copy of Mr. Smith's June 23, 2015 amended code violation letter.[4]

Instead of working with Mrs. Ferchaud and/or her experts regarding the code violations, which would have minimized or eliminated any delays in this matter, Moss chose to and continues to choose to falsely rely on the rough inspections of Mr. Surgi, which has caused substantial delays in this matter. Had Mrs. Ferchaud allowed Moss to rely on these rough inspections, Moss would have permanently concealed from view life safety code violations and permanently created both a life safety hazard and a property damage hazard.

Moss to this day, also continues to allege that Mrs. Ferchaud's property had preexisting violations, including an "Illegal 3-plex, 3rd unit in rear" violation. However, as explained in Mrs. Ferchaud's brief, Moss has never provided proof of any violations alleged in their December 2014 emails regarding any preexisting code violations including but not limited to previously performed unpermitted work, and structural violations and/or an illegal 3 plex. A review of the documentation provided by Moss and Mrs. Ferchaud clearly shows this. Additionally, on

---

[4] Please see Mr. Flettrich's August 5, 2015 comments to the mediation position paper and exhibits of Moss which is part of Exhibit "A" to Mrs. Ferchaud's brief.

4

December 16, 2014, Mr. Steven Dwyer, with the City of New Orleans Code Enforcement Property Inspection/Violation Listing department, performed an inspection and reported that there was no code violation with respect to an illegal 3rd unit at the rear of the 6021 dwelling.[5]

Moss, although having no proof that code violations/deficiencies are preexisting, continues to rely on the statement of the City of New Orleans in the City's June 23, 2015 correspondence that the City's "report does not differentiate between issues that may or may not have been present prior to the remediation renovations"[6] to support Moss's position that some of the violations/deficiencies are preexisting and therefore not their responsibility. However, on January 16, 2016 in an email, Mr. Zachary Smith with the City of New Orleans stated,

> Looking over the record, there is no documented example of any violations or unpermitted work on 6021/6025 Canal Blvd prior to the noted courtesy inspections and permit activity of late 2014 thru present.
>
> I hope this clarifies our statement from my letter dated June 23, 2015 that used the language, "this report does not differentiate between issues that may or may not have been present prior to the remediation renovations." We can only comment on what we see. It is impossible to know when or who may have caused it.[7]

Moss also alleges that Mrs. Ferchaud has waived any delay damages. However, Mrs. Ferchaud did not waive her rights to any delay damages entitled to her for delays caused by Moss. For this reason, Mrs. Ferchaud is entitled to delay damages for delays caused by Moss, including the delays caused by Moss which were explained in Mrs. Ferchaud's brief.

Moss further alleges that "Mrs. Ferchaud also had different workers in and out of the property presumably working on the property and altering items outside the presence of the Lead

---

[5] Please see Attachment 42 to the *Preliminary Expert Report* which is part of Exhibit "A" to Mrs. Ferchaud's brief. Please also see Exhibit "E" to Mrs. Ferchaud's brief.

[6] The City of New Orleans' June 23, 2015 correspondence was attached as part of Exhibit "A" to Mrs. Ferchaud's brief.

[7] Please see attached Exhibit "B": January 12, 2016 email from Mr. Zachary R. Smith, City of New Orleans to Mrs. Ferchaud regarding Pre-existing code violations.

Contractor Moss or its subcontractors."[8] However, just like the alleged preexisting violations, Moss has provided no proof that Mrs. Ferchaud has had workers working on the property and altering items outside the presence of Moss.

Moss also discusses the term "like for like" in their response brief. However, as Mr. Flettrich explains in his *Preliminary Expert Report* in discussing Mr. William Coates' April 23, 2015 e-mail to Mrs. Ferchaud that their work was in accordance with all applicable codes and has passed rough inspections by the City of New Orleans,

> Mr. Coates' statement in paragraph 1 on page 1 of his April 23, 2015 e-mail to Ferchaud that "this work is as close to like for like as possible while meeting the code requirements for the City of New Orleans" is not applicable to this case/project (see **ATTACHMENT 9**). The phrase "like for like" does not appear in either the Work Authorization Agreement or the Scope of Work. However, the phrase "of like kind and quality" does appear on pages 14 and 15 of the copy of the unexecuted Work Authorization Agreement that was attached to Mr. Coates April 23, 2015 e-mail to Ferchaud, i.e.:
>
> - The first sentence on page 14 of the Work Authorization Agreement reads as follows:
>
>   "In accordance with the Remediation Protocol, existing finishes and trim that are removed during the remediation will be replaced with new finishes and trim of like kind and quality."
>
> - The second paragraph on page 15 of the Work Authorization Agreement reads as follows:
>
>   "Appliances, fixtures and equipment will be replaced with units of like kind and quality to those listed in the Appliance, Fixture and Equipment Schedule."
>
> The phase "of like kind and quality" refers to the type and quality of appliances, fixtures, equipment and materials only and is unrelated to Moss' contractual obligations to perform all work in a workmanlike manner and in accordance with industry standards and all applicable codes.[9]

---

[8] Please see p. 8 of the *Response Brief in Opposition to Mrs. Ferchaud's Objection to Special Master's Opinion and Decree and Brief in Support* (Rec. Doc. 19961).

[9] Please see pp. 18-20 of the *Preliminary Expert Report* which is part of Exhibit "A" to Mrs. Ferchaud's brief.

6

Moss further alleges that Mrs. Ferchaud's belief that additional delays resulted to the remediation due to the July 7, 2015 correspondence from the City of New Orleans is a red herring because the correspondence was issued when the "home was already on a hold initiated and maintained by Mrs. Ferchaud and subsequent to Moss' request for the Special Master's intervention."[10]  However, Moss did not address in their response brief the reasons Mrs. Ferchaud believes that additional delays resulted to the remediation because of the misrepresentation by Moss.[11]  The misrepresentations of Moss as explained herein and in Mrs. Ferchaud's brief have caused the delays in this matter and therefore the Special Master erred in finding that Mrs. Ferchaud is responsible for the delay and not awarding her delay damages.

### B. SPECIAL MASTER ERRED IN ONLY ADDRESSING THE CODE ISSUES/VIOLATIONS ADDRESSED BY THE CITY OF NEW ORLEANS

Moss alleges that Mrs. Ferchaud did not state "that additional code violations should be ruled upon by the Special Master"[12] in her October 21, 2015 reply to the October 12, 2015 supplement of Moss.  However, Mrs. Ferchaud was not required to.  On July 23, 2015, Mrs. Ferchaud submitted her position paper to the Special Master.  Attached to that position paper was Mr. Flettrich's *Preliminary Expert Report*.  The position paper outlined all of the issues addressed by Mr. Flettrich in his *Preliminary Expert Report*, and therefore, these issues were before the Special Master.  In addition, the October 12, 2015 submission by Moss was submitted to **only** address code violations listed by the City of New Orleans in the City's June 23, 2015 correspondence sent to the parties, which Moss stated had not been addressed during mediation.

---

[10] Please see p. 10 of the *Response Brief in Opposition to Mrs. Ferchaud's Objection to Special Master's Opinion and Decree and Brief in Support* (Rec. Doc. 19961).
[11] Please see pp. 12-14 of Mrs. Ferchaud's brief.
[12] Please see p. 10 of the *Response Brief in Opposition to Mrs. Ferchaud's Objection to Special Master's Opinion and Decree and Brief in Support*. (Rec. Doc. 19961).

Therefore, Mrs. Ferchaud's October 21, 2015 reply only addressed those code violations. Importantly, Mrs. Ferchaud in her October 21, 2015 reply stated in footnote 1,

> In an effort to keep this Reply to the Supplement of Moss as short as possible, please refer to the previous submissions of Mrs. Ferchaud, including Mr. Flettrich's *Preliminary Expert Report*, and Exhibit "A" of Mrs. Ferchaud's Reply to Moss's Position Paper for a more detailed discussion of the issues.

Further, the October 12, 2015 submission by Moss was not the entire record before the Special Master when he rendered his November 8, 2014 *Opinion and Decree*. The entire record composed of the documents attached as Exhibit "A" to Mrs. Ferchaud's brief. This record included other submissions by Moss. For Moss to suggest/imply that the October 12, 2015 and the October 21, 2015 submissions addressed all issues before the Special Master is incorrect.

Next, in attempting to downplay all of the issues addressed by Mr. Flettrich in his *Preliminary Expert Report*, Moss alleges that "the remediation work is governed by the City of New Orleans Building Department and whichever inspectors they elect to contract with for inspection purposes."[13] Further, Moss once again blames Mrs. Ferchaud for the City of New Orleans subsequently failing Mrs. Ferchaud's property. However, Moss misses the main point, which is that the City of New Orleans failed the rough inspections because the rough inspections were erroneously passed and because the mechanical and electrical systems that had been installed by Moss were in violation of the applicable mechanical and electrical codes. Moss also misses the point, that Mr. Flettrich's clear and indisputable evidence of violations has subsequently been confirmed by the City of New Orleans in the City's June 23, 2015 correspondence. Moss also, in arguing that the Special Master correctly determined all issues, ignores a statement in the same June 23, 2015 correspondence by the City of New Orleans which Moss relies on to allege that certain conditions on Mrs. Ferchaud's property were preexisting. In

---

[13] Please see p. 11 of the *Response Brief in Opposition to Mrs. Ferchaud's Objection to Special Master's Opinion and Decree and Brief in Support* (Rec. Doc. 19961).

the June 23, 2015 correspondence, the City of New Orleans also states, "[t]his list is by far not comprehensive and the City of New Orleans reserves the right to amend this as needed for safety or compliance issues during any time of inspection."[14]  A report which is more comprehensive than the City of New Orleans' June 23, 2015 correspondence is the *Preliminary Expert Report of Mr. Flettrich* which was attached to Mrs. Ferchaud's submissions to the Special Master.

### C. SPECIAL MASTER ERRED IN ADOPTING THE DIVISION OF RESPONSIBILITY FOR THE CODE VIOLATIONS SET FORTH IN THE OCTOBER 12, 2015 BRIEF SUPPLEMENT TO THE MEDIATION

Contrary to the allegations of Moss, throughout its submissions to the Special Master, Moss provided no proof which supports its allegations that the majority of the deficiencies noted by the City of New Orleans are preexisting, outside the scope of the remediation, and therefore, Mrs. Ferchaud's responsibility.  Moss also provided no proof that the deficiencies are homeowner issues.  Mrs. Ferchaud's submissions clearly show the contrary.  In addition, Mr. Flettrich's *Preliminary Expert Report* as well as his August 5, 2015 comments to the mediation position paper and exhibits of Moss shows, with reasons, what issues/violations are the responsibility of Moss and what issues/violations are the responsibility of Mrs. Ferchaud.  Some examples of this were discussed on pages 19 through 21 of Mrs. Ferchaud's brief.  Further examples of this can be found in Mr. Flettrich's *Preliminary Expert Report* and in his August 5, 2015 comments to the mediation position paper and exhibits of Moss, which were both attached as part of Exhibit "A" to Mrs. Ferchaud's brief.  Finally, as explained above, on January 16, 2016, Mr. Zachary Smith with the City of New Orleans stated that "there [wa]s no documented

---

[14] The City of New Orleans' June 23, 2015 correspondence was attached as part of Exhibit "A" to Mrs. Ferchaud's brief.

9

example of any violations or unpermitted work on 6021/6025 Canal Blvd prior to the noted courtesy inspections and permit activity of late 2014 thru present."[15]

### D. SPECIAL MASTER ERRED IN FINDING THAT MRS. FERCHAUD WAS NOT ENTITLED TO OTHER/ADDITIONAL DAMAGES

As stated in her brief, Mrs. Ferchaud believes that the record before this Honorable Court shows that Mrs. Ferchaud is entitled to other/additional damages which she requested. However, even if she is not entitled to these damages, Mrs. Ferchaud believes that this Honorable Court has the discretion to award her the requested other/additional damages due to the truly unique circumstances in this matter.

### CONCLUSION

For the reasons explained in Mrs. Ferchaud's brief and the brief's attachments and for the reasons explained herein, Mrs. Ferchaud respectfully moves this Honorable Court for an Order sustaining her objection to the Special Master's November 8, 2015 *Opinion and Decree* and that this Honorable Court rule in her favor as respectfully requested in her *Brief in Support of Objection to Special Master's Opinion and Decree* (Rec. Doc. 19909).

Respectfully submitted:

/s/ Joseph M. Bruno
Joseph M. Bruno, (LA Bar No. 3604)
Bruno & Bruno, LLP
855 Baronne Street
New Orleans, Louisiana  70113
Telephone:  (504) 525-1335
Facsimile:   (504) 561-6775

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the above brief has been served upon all counsel of record by electronic notice via the Court's CM/ECF system this 12th day of January, 2016.

/s/ Joseph M. Bruno

---

[15] Please see attached Exhibit "B":  January 12, 2016 email from Mr. Zachary R. Smith, City of New Orleans to Mrs. Ferchaud regarding Pre-existing code violations.

10