UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


IN RE:  CHINESE-MANUFACTURED   *       09-MD-2047
        DRYWALL PRODUCTS       *
        LIABILITY LITIGATION   *       Section L
                               *
Relates to:  Jody Ferchaud    *       January 14, 2016
                               *
* * * * * * * * * * * * * * * *


ORAL ARGUMENT BEFORE THE
HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE


<u>Appearances</u>:


For Jody Ferchaud:              Bruno & Bruno, LLP
                               BY:  JOSEPH M. BRUNO, ESQ.
                               855 Baronne Street
                               New Orleans, Louisiana 70113


For Moss & Associates, LLC:    Tripp Scott, P.A.
                               BY:  STEPHANIE C. MAZZOLA, ESQ.
                               110 Southeast Sixth Street
                               Suite 1500
                               Fort Lauderdale, Florida 33301

Official Court Reporter:       Toni Doyle Tusa, CCR, FCRR
                               500 Poydras Street, Room B-275
                               New Orleans, Louisiana 70130
                               (504) 589-7778


Proceedings recorded by mechanical stenography using
computer-aided transcription software.

## <u>INDEX</u>

|                                | <u>Page</u> |
|--------------------------------|------|
| Joseph M. Bruno, Esq.          | 4    |
| Stephanie C. Mazzola, Esq.     | 9    |
| Joseph M. Bruno, Esq.          | 17   |
| Jody Ferchaud                  | 18   |

1 <u>**PROCEEDINGS**</u>

2 **(January 14, 2016)**

3 **THE COURT:**  Be seated, please.

4 Let's call the matter.

5 **THE DEPUTY CLERK:**  09-2047, *In Re:*

6 *Chinese-Manufactured Drywall Products Liability Litigation.*

7 **THE COURT:**  We have a motion today.  Would counsel

8 make their appearance for the record.

9 **MR. BRUNO:**  Good morning, Your Honor.  Joseph Bruno

10 on behalf of Mrs. Ferchaud.

11 **MS. MAZZOLA:**  Good morning, Your Honor.  Stephanie

12 Mazzola on behalf of lead contractor, Moss & Associates.

13 **THE COURT:**  In connection with this, by way of

14 background, the Knauf entities entered into a settlement

15 discussion with the PSC several years ago and agreed upon a

16 program to remediate the homes.  The program had certain

17 specific areas that defined the remediation program, the scope

18 of the remediation program, and also provided that if the homes

19 were remediated and a homeowner felt that it was not properly

20 done in connection with the remediation program, they had a

21 right to bring that to the attention of a special master who I

22 appointed to handle these matters.

23 The special master then would look into it and

24 also take evidence from each side and make a recommendation or

25 a ruling.  If the homeowner or anyone felt that that ruling

09:37

1   ought to be appealed, they would then have an appeal to me.

2   That was done in this particular case.  The special master took

3   evidence, wrote an opinion, and the claimant homeowner has now

4   appealed to me and we have oral argument on this appeal.

5                    I will hear from the homeowner's attorney.

6           **MR. BRUNO:**  Good morning, Your Honor.  Once again,

7   thank you very much for giving us this opportunity to argue

8   before you.

9                    Judge, as you well know, the nature of the

10  settlement is such that Mrs. Ferchaud didn't choose Moss and

11  Moss didn't choose Mrs. Ferchaud.  While it is true that some

12  arranged marriages work, many, many arranged marriages just do

13  not.  While I know that there has been some sharp criticism of

14  Mrs. Ferchaud, my client, I would like to just share a few

15  points.

16                   I know that we have a big record.  We have

17  invested an enormous amount of time and effort putting before

18  the Court records and documents, but I would just like to hit

19  on a few points.  The reason I'm hitting on these points is

20  just to give the Court some understanding of why it is that

21  Mrs. Ferchaud feels the way that she does.

22                   As the record reflects, she was brought back to

23  New Orleans because of an allegation of a code violation

24  regarding whether it was a two- or three-bedroom unit.  She was

25  able to resolve that without conflict.  While there, there was

1  an electrical inspection and a mechanical inspection performed

2  by a gentleman by the name of Surgi, who was a third-party

3  building inspector.  This gentleman certified that the house

4  had passed both the electrical and the mechanical inspection.

5        When Mrs. Ferchaud went through the house, she

6  observed that some of the ducts had not been installed -- I

7  mean, they were just not there -- and, quite frankly, panicked

8  because she thought to herself, well, how on earth can this

9  mechanical inspection have demonstrated that it complied with

10  the code when the ducts were not physically present.

11        That provoked her to say to herself, "Well, you

12  know what, I better see what's going on."  So she contacted the

13  City, as is her right, and she asked the City to perform its

14  own inspection.  Sure enough, both the electrical and the

15  mechanical inspections failed.

16        I will share with you -- it's not evidence, of

17  course, but I went through the house myself.  The electrical

18  outlets were not in the right locations.  There's supposed to

19  be boarding provided in the attic so that mechanical service

20  people don't fall through the floor.  It wasn't there.  It was,

21  quite frankly, less than the best.

22        That provoked Mrs. Ferchaud to hire a gentleman

23  by the name of David Flettrich, who is a professional engineer,

24  who went through the entire house to evaluate whether or not

25  there were some other potential code violations.  Mr. Flettrich

has billed her $50,000 so far, so she has that enormous expense.  She has spent $25,000 of her money with this gentleman.

If that wasn't enough of an insult to her, at some point in the process the City issued an order stopping the work, on its belief that the house was substantially demolished, which would have required that the house be demolished and raised to meet the new flood standard.  During mediation, I prevailed upon my client to allow Moss to go back to the City and attempt to work that out.  All indications are that they were successful in persuading the City to remove that stop work order.  Of course, my client is concerned that, City government being what it is, they may well change their mind.

So in terms of where we are vis-à-vis Moss, my client is extremely uncomfortable with the way that the job has proceeded.  Is she the normal client?  No.  She is high-strung.  She is deeply concerned.  She lives in Hawaii.  She has to travel back and forth.

I make no excuse.  There have been things said on both sides that have been unfortunate, and we are sorry for them.  Frankly, it's the reason why I intervened.  I had the prayer -- you may remember "Wayne the pain" from the *Murphy Oil* case.  I did the same thing there to no avail.  It is a bad habit of mine, and I will continue to do so in the future.  My hope was to get some resolution.

09:42

1        The other major problem, Judge, that we have is

2   with regard to the center wall.  The center wall divided this

3   property into two different apartments.  It was a plaster wall.

4   Now, interestingly, the original estimates for the work did not

5   include the removal of this plaster wall because obviously

6   there was no Chinese drywall behind it or in it.  For reasons

7   unknown to Mrs. Ferchaud, the wall was removed; that is, not

8   the stud, but the plaster was removed.

9        Now, two problems arise.  So the City comes in

10  and says, "Oh, well, now you have this wall that you have done

11  substantial work on, and you need to continue the rafters all

12  the way to the peak of the roof," which they do for fire safety

13  purposes.  You bring the two-by-fours up to the peak of the

14  roof, and you put fire-retardant materials on both sides

15  obviously to prevent the fire from going -- it starts on one

16  side and it doesn't go to the other side.  Before the Chinese

17  drywall incident, the City was quite content and quite happy

18  and it met the code, and there was no issue.  Now, the big

19  problem for Mrs. Ferchaud is that the special master has

20  suggested that that is a preexisting issue for which she must

21  bear the cost for change.

22        So where we are is that she has $50,000 owed to

23  this PE.  She has to bear all the extra expense of adding the

24  center wall to come into code compliance.  There is a

25  fundamental lack of trust with the entire situation.  Then

1    finally, in my many attempts to discuss -- and I know

2    settlement is not -- just to give you the idea that we have

3    explored both a resolution under A, under B, and under C, she

4    is due a credit for the removal of the plaster wall, which is

5    about $60,000.

6              I think where we are procedurally -- let's talk

7    about that first.  We have no choice but to, at the moment,

8    request that Moss finish the house in compliance with the

9    settlement agreement.  We suggest that Special Master Balhoff

10   was in error in making the determination that -- the center

11   wall improvements, I guess for lack of a better word, should be

12   born by Moss and not her.  She should also be paid the delay

13   damages because, frankly, there is no explanation, nor can

14   there be, for why it would be that there was an inspection

15   which indicated the pass when the City itself found that they

16   hadn't passed.

17             Remarkably -- I shouldn't say "remarkably."

18   With regard to each of the problems found by the City which

19   would have failed the electrical inspection and the mechanical

20   inspection, Moss has agreed to fix them, to their credit.  From

21   Mrs. Ferchaud's perspective, she is thinking, "Well, had I not

22   gone through the effort of contacting the City and hiring the

23   PE, those things would still be there, and my house would be a

24   potential danger to me and those who might work on the house."

25   So that is some small explanation as to where we are.

1    So with respect, Judge, we ask, one, that the

2  Court overturn the determination of the special master with

3  regard to requiring Mrs. Ferchaud to pay for the changes to the

4  center wall, that that be born by Moss; that she be awarded

5  $50,000 to pay for -- which is not an award to her but to pay

6  Flettrich for his report; and, finally, that she be awarded

7  some damage for delay because there is a note on the house,

8  which she has paid continuously.  It's a rental house.  We have

9  not had the folks there to rent the house.  She has

10 substantial, substantial damages and, therefore, we ask you to

11 consider that request.  Thank you, Judge.

12          **THE COURT:**  Thank you very much.  I appreciate your

13 presence today.

14          Let me hear a response.

15          **MS. MAZZOLA:**  Good morning, Your Honor.  We are here

16 today on Mrs. Ferchaud's objections to the special master's

17 opinion and decree.

18          Within the special master's opinion and decree,

19 he issued essentially three rulings:  (1) that Mrs. Ferchaud

20 was not entitled to delay damages; (2) that Mrs. Ferchaud was

21 not entitled to other damages that she was claiming, including

22 rental expenses, insurance, travel expenses; and (3) that the

23 code violations addressed by the City of New Orleans on June 23

24 should be divided in accordance with Moss' submission dated

25 October 12, 2015.  I'll start with the first issue, the delay

09:47

1    damages.

2              This home kicked off November 14, 2014.  Within

3    two weeks of kickoff, we were able to achieve the GFA

4    certificate indicating that all drywall had been removed.  That

5    was achieved on December 1.  From that point forward, issues

6    began to arise that were homeowner-related issues.

7              On December 9, Moss was contacted that they had

8    been advised by the City of an illegal triplex issue that

9    needed to be resolved at the property.  Promptly upon receiving

10   that notice, which was on the New Orleans website, City of

11   New Orleans One Stop Shop, where it stated "illegal triplex,

12   third unit in rear," we contacted Mrs. Ferchaud's counsel.

13   Counsel then contacted Mrs. Ferchaud, and she flew in from

14   Hawaii, where she permanently resides, to New Orleans to

15   address this matter.  She was able to speak with the City, and

16   that issue was resolved by December 16.  So there was a

17   five-day period where the house was on a homeowner hold due to

18   that.

19             On December 16, Mrs. Ferchaud began inquiring of

20   Moss to make additional changes to the property that were

21   outside the scope of the remediation.  Based on normal

22   protocol, Mrs. Ferchaud was presented with a schedule work

23   waiver.  That schedule work waiver is attached as an exhibit to

24   our response brief, and that schedule work waiver indicates

25   that the homeowner will not be entitled to delay damages for

09:49

1    issues that she requests additional to the remediation, outside

2    the scope of remediation.  She signed that document on

3    December 16.

4               In the period following December 16, she had a

5    plumbing inspection.  The City of New Orleans failed the

6    plumbing due to preexisting code violations on the property.

7    This was acknowledged in front of the ombudsman.  Mrs. Ferchaud

8    indicated that she would be responsible for the repairs, and

9    she was going to go ahead and seek a third-party plumber not

10   relating to one of Moss' subs.  Initially, there was some

11   communication regarding Moss' sub performing the work, but it

12   turned out that Mrs. Ferchaud utilized a third-party contractor

13   of her own.

14               From December 18 forward, the home was again on

15   a homeowner hold.  January came around and there were issues

16   and correspondence back and forth between Moss and

17   Mrs. Ferchaud regarding some electrical issues.  Moss promptly

18   addressed all of her concerns.  They were at the property when

19   they were allowed to be at the property.  As of January 9, the

20   lockbox was changed on the home so that she fully retained

21   possession, and Moss was not allowed to enter the property

22   without her permission or consent.

23               So no work has been done on this property

24   officially since January 9, 2015.  This was a 90-day

25   remediation that was scheduled to finish February 13.  We have

09:50

1  now been on a homeowner hold or a preexisting code violation

2  hold since December 18 and then January 9.

3          Mrs. Ferchaud reaffirmed the hold on remediation

4  through various e-mails.  There's e-mails through her counsel

5  on February 9, March 24, and then April 16 where Mrs. Ferchaud

6  herself expresses to the special master, Dan Balhoff, she wants

7  the home to continue on hold.

8          In the time that the home has been on hold,

9  multiple other contractors have been in there, at her request,

10 working on issues that we are not aware of.  We don't know the

11 status of the property as we have not been in the home since

12 that time.

13         Respectfully, we would request that you affirm

14 the special master's decision regarding delay damages.  Moss

15 has not wanted to delay this home.  They have acted promptly

16 with all of her requests, but no responses to her requests have

17 been sufficient for Mrs. Ferchaud.  She has retained three

18 separate independent inspectors to prepare extensive reports

19 and present them with numerous issues that we have addressed

20 with her, and she is not satisfied with the responses to any of

21 those issues.

22         The special master in this case has not just

23 been involved since May 1, when Moss requested intervention and

24 mediation under the Knauf settlement agreement; he has been

25 involved prior to that time.  There were meetings with the

09:52

1    special master in April.  He is intimately familiar with this

2    home.  He heard all of the evidence at mediation as well as the

3    supplemental submissions before and after.

4              On the second issue, Mrs. Ferchaud is claiming

5    that she is entitled to other damages that are outside the

6    scope of the settlement agreement governing her claims.

7    Mrs. Ferchaud is a late claimant.  She opted into the

8    remediation around July 28, 2014.  That means that she is

9    governed by the December 9, 2011, claims settlement agreement.

10             That settlement agreement specifically limits a

11   claimant's right to certain damages.  It's limited to

12   Section 4.3 of the original settlement, the third amended Knauf

13   settlement, which states that you get, under Option 1, your

14   lump sum and delay payments only.  As she is not entitled to

15   delay payments, the only other damages she would be entitled to

16   is the lump sum.

17             Travel expenses, annual expenses, loss of

18   rentals, and expert fees, as well as the laundry list of her

19   items she requested in her briefing, would fall under the other

20   covered expenses, which only apply to residential owners.

21   Mrs. Ferchaud's property in New Orleans is a commercial

22   property.  It's been rented over the years and she resides in

23   Hawaii, so she would not be entitled to those other covered

24   expenses.

25             To address the third issue that Mr. Bruno spent

09:53

1    some time on, the existing code violations, as Your Honor may

2    have read in these submissions, mechanical and electrical

3    rough-in inspections were performed in December of 2014.  They

4    were performed by a third-party contractor that's approved by

5    the City of New Orleans.  When those inspections were

6    performed, they were passed by the third-party contractor, and

7    then the City of New Orleans entered that pass report into

8    their system.

9                Mrs. Ferchaud took issue with the passing of

10   these inspections, and thus began the five-month course of

11   hiring three separate experts to come into the property and

12   contacting the City on time and time again to reinspect.

13               Reinspections took place on May 20, 2015, and

14   what Moss actually received after that first reinspection was a

15   very brief e-mail from the City on the electrical.  That e-mail

16   stated:  need nail protector plates because of holes drilled

17   too close to the face of the studs; need to add outlets to

18   comply with code; 6021 needs a nipple through the brick to

19   protect the wires.  Those are the three issues that the City of

20   New Orleans inspector noted on May 20, 2015, when he came back

21   to the property.  Those are minor issues that Moss agreed to

22   address and has formally told Mrs. Ferchaud they would agree to

23   address.

24               The City then issued a lengthier correspondence

25   on June 23, 2015, that summarized their findings on electrical,

09:55

1  building general, and mechanical.  I think, in total, there
2  were over 30 findings.  Building general may have been the
3  longest list.  We have addressed each of these findings in kind
4  with Mrs. Ferchaud on various occasions.  We have explained to
5  Mrs. Ferchaud that this is a like-for-like program.  Items not
6  touched by the lead contractor on this project are not the lead
7  contractor's responsibilities.

8       There's a very clear example in the work
9  authorization agreement that if the lead contractor is not to
10  address items on the roof and there is a code violation on the
11  roof, they don't need to go and then replace the roof under the
12  protocol.  Their job is to come in, remove the Chinese drywall,
13  and put the home back together like for like, as it existed
14  prior to.  That's what was being done by Moss and what they
15  were attempting to accomplish before they were placed on hold
16  by Mrs. Ferchaud on December 18, January 9, and every month
17  thereafter.

18       There have been some additional issues,
19  including the substantial damage designation that Mrs. Ferchaud
20  has raised in her briefing.  The substantial damage
21  designation, as Mr. Bruno did note, was reversed by the City of
22  New Orleans on August 12, 2015; therefore, Mrs. Ferchaud is not
23  required to elevate her property.  The City has confirmed in
24  writing that based on an appraisal report conducted by Murphy
25  Appraisal, it meets the requirements for not needing to be

09:56   1   elevated based on the cost of work that was permitted.

2              This is an issue that appears to be a point of

3   contention as Mrs. Ferchaud has indicated she would like them

4   to now go back on their word, but prior to Moss contacting the

5   City on this issue, she entered into a stipulation with Moss

6   that she was not to interfere with the process to have the

7   substantial damage determination reversed, and now that is

8   exactly what she is doing is trying to reverse that

9   determination.

10              Moss is respectfully requesting that this Court

11   affirm the special master's opinion and decree on all issues.

12   They have promptly and diligently acted to respond to all

13   requests of Mrs. Ferchaud during this process.  As noted during

14   the status conference earlier, there are 2,800 homes that have

15   been completed in this project.  Moss has been the lead

16   contractor on those homes, and there have never been issues

17   such as the issues we are seeing here in this case.

18              The special master reviewed all of the

19   submissions.  He reviewed all of the evidence.  He heard the

20   parties' arguments.  He took testimony from Mrs. Ferchaud.  He

21   took testimony from a representative of Moss.  He concluded

22   that the delay damages were not attributable to Moss, that the

23   other damages sought by Mrs. Ferchaud were not appropriate

24   under the settlement agreement, and that the code violations,

25   as they existed according to the City of New Orleans, should be

1    determined based on whether they were preexisting or whether

2    they were part of the remediation, and that determination is

3    correct.

4            So, in closing, we would just request an

5    affirmance on all issues ruled upon by the special master.  We

6    would also indicate that anything outside the scope of the

7    special master's ruling should not be heard by this Court

8    today, and it should be limited to the briefings and the

9    objections that were made to the opinion and decree.  Thank

10   you, Your Honor.

11           **THE COURT:**  Any response from the attorney?

12           **MR. BRUNO:**  Very briefly, Judge.  I think that

13   counsel basically has admitted, with regard to the central

14   issue that Mrs. Ferchaud faces with the wall, they touched the

15   wall.  Had they not touched the wall, we wouldn't have that

16   problem with having the rafters go to the peak.

17           Judge, your time is so valuable, and I wish --

18   I'm trying to figure out a best way to move forward here

19   without spending large sums of money.  I will share with you

20   that I will endeavor to work to resolution.  To that end, my

21   client has asked for the opportunity to address you.  I

22   promised her that I would make that request, and I will sit

23   down.  Thank you, Judge.

24           **THE COURT:**  Ma'am, look, when you have an attorney,

25   the attorney speaks for you.  I don't have litigants --

09:59

1          **MRS. FERCHAUD:**  Your Honor, there's fraud in the
2    Court.  There's fraud in the Court, Your Honor.
3          **THE COURT:**  I understand.
4          **MRS. FERCHAUD:**  Moss misrepresented throughout its
5    pleadings, Your Honor --
6          **THE COURT:**  Ma'am --
7          **MRS. FERCHAUD:**  -- that I have preexisting code
8    violations on my property.  Your Honor, that is not correct,
9    and for that reason --
10          **THE COURT:**  All right.  Fine.
11          **MRS. FERCHAUD:**  -- Mr. Balhoff's ruling should be
12    vacated, sir.
13          **THE COURT:**  Thank you very much.  I appreciate it.
14          **MRS. FERCHAUD:**  Why won't you hear me, Your Honor?
15          **THE COURT:**  Because you have an attorney.  When you
16    have an attorney, the attorney speaks for you.  That's why you
17    have an attorney.
18          **MRS. FERCHAUD:**  Lenny Davis invited me to speak
19    before you --
20          **THE COURT:**  But that's because you didn't have an
21    attorney, ma'am.  You have an attorney now.  You have to let
22    the attorney handle the case.  That's what you hire an attorney
23    for.
24          **MRS. FERCHAUD:**  But, Your Honor, the facts are not
25    straight.

09:59

1          **THE COURT:**  Thank you very much.  I appreciate it.

2    Court will stand in recess.

3          **THE DEPUTY CLERK:**  All rise.

4          **MR. BRUNO:**  Thank you, Your Honor.

5          **THE COURT:**  Yes.  Thank you.

6          (Proceedings adjourned.)

7                        * * *

8                     <u>**CERTIFICATE**</u>

9          I, Toni Doyle Tusa, CCR, FCRR, Official Court

10   Reporter for the United States District Court, Eastern District

11   of Louisiana, certify that the foregoing is a true and correct

12   transcript, to the best of my ability and understanding, from

13   the record of proceedings in the above-entitled matter.

14

15

16                              _s/ Toni Doyle Tusa_
                                Toni Doyle Tusa, CCR, FCRR
17                              Official Court Reporter

18

19

20

21

22

23

24

25

**$**

$25,000 [1]  6/2
$50,000 [3]  6/1 7/22 9/5
$60,000 [1]  8/5

**0**

09-2047 [1]  3/5
09-MD-2047 [1]  1/4

**1**

110 [1]  1/18
12 [2]  9/25 15/22
13 [1]  11/25
14 [3]  1/6 3/2 10/2
1500 [1]  1/18
16 [5]  10/16 10/19 11/3 11/4 12/5
18 [4]  2/6 11/14 12/2 15/16

**2**

2,800 [1]  16/14
20 [2]  14/13 14/20
2011 [1]  13/9
2014 [3]  10/2 13/8 14/3
2015 [6]  9/25 11/24 14/13 14/20 14/25 15/22
2016 [2]  1/6 3/2
2047 [2]  1/4 3/5
23 [2]  9/23 14/25
24 [1]  1/25
275 [1]  1/20
28 [1]  13/8

**3**

30 [1]  15/2
33301 [1]  1/19

**4**

4.3 [1]  13/12

**5**

500 [1]  1/20
504 [1]  1/21
589-7778 [1]  1/21

**6**

6021 [1]  14/18

**7**

70113 [1]  1/15
70130 [1]  1/21
7778 [1]  1/21

**8**

855 [1]  1/15

**9**

90-day [1]  11/24

**A**

ability [1]  19/12
able [3]  4/25 10/3 10/15
about [2]  8/5 8/7
above [1]  19/13
above-entitled [1]  19/13
accomplish [1]  15/15
accordance [1]  9/24
according [1]  16/25
achieve [1]  10/3
achieved [1]  10/5
acknowledged [1]  11/7
acted [2]  12/15 16/12
actually [1]  14/14
add [1]  14/17

adding [1]  7/23
addition [2]  10/20 16/18
address [6]  10/15 13/25 14/22 14/23 15/10 17/21
addressed [4]  9/23 11/18 12/19 15/3
adjourned [1]  19/6
admitted [1]  17/13
advised [1]  10/8
affirm [2]  12/13 16/11
affirmance [1]  17/5
after [2]  13/3 14/14
again [3]  4/6 11/14 14/12
ago [1]  3/15
agree [1]  14/22
agreed [3]  3/15 8/20 14/21
agreement [7]  8/9 12/24 13/6 13/9 13/10 15/9 16/24
ahead [1]  11/9
aided [1]  1/25
all [14]  6/10 7/11 7/23 10/4 11/18 12/16 13/2 16/11 16/12 16/18 16/19 17/5 18/10 19/3
allegation [1]  4/23
allow [1]  6/9
allowed [2]  11/19 11/21
also [4]  3/18 3/24 8/12 17/6
amended [1]  13/12
amount [1]  4/7
annual [1]  13/17
any [2]  12/20 17/11
anyone [1]  3/25
anything [1]  17/6
apartments [1]  7/3
appeal [2]  4/1 4/4
appealed [2]  4/1 4/4
appearance [1]  3/8
Appearances [1]  1/12
appears [1]  16/2
apply [1]  13/20
appointed [1]  3/22
appraisal [2]  15/24 15/25
appreciate [3]  9/12 18/13 19/1
appropriate [1]  16/23
approved [1]  14/4
April [2]  12/5 13/1
April 16 [1]  12/5
are [15]  6/10 6/14 6/20 7/22 8/6 8/25 9/15 12/10 13/5 14/19 14/21 15/6 16/14 16/17 18/24
areas [1]  3/17
argue [1]  4/7
argument [2]  1/9 4/4
arguments [1]  16/20
arise [2]  7/9 10/6
around [1]  11/15 13/8
arranged [2]  4/12 4/12
as [19]  4/9 4/22 5/3 8/25 10/23 11/19 12/11 13/2 13/2 13/14 13/18 13/18 14/1 15/13 15/21 16/3 16/13 16/17 16/25
ask [2]  9/1 9/10
asked [2]  5/13 17/21
Associates [2]  1/17 3/12
at [7]  6/4 8/7 10/9 11/18 11/19 12/9 13/2
attached [1]  10/23
attempt [1]  6/10
attempting [1]  15/15
attempts [1]  8/1
attention [1]  3/21
attic [1]  5/19
attorney [12]  4/5 17/11 17/24 17/25 18/15 18/16 18/16 18/17 18/21 18/21 18/22 18/22
attributable [1]  16/22

August [1]  15/22
authorization [1]  5/9
avail [1]  6/23
award [1]  9/5
awarded [2]  9/4 9/6
aware [1]  12/10

**B**

B-275 [1]  1/20
back [7]  4/22 6/9 6/18 11/16 14/20 15/13 16/4
background [1]  3/14
bad [1]  6/23
Balhoff [2]  8/9 12/6
Balhoff's [1]  18/11
Baronne [1]  1/15
based [4]  10/21 15/24 16/1 17/1
basically [1]  17/13
be [26]
bear [2]  7/21 7/23
because [8]  4/23 5/8 7/5 8/13 9/7 14/16 18/15 18/20
bedroom [1]  4/24
been [20]
before [7]  1/9 4/8 4/17 7/16 13/3 15/15 18/19
began [3]  10/6 10/19 14/10
behalf [2]  3/10 3/12
behind [1]  7/6
being [2]  6/13 15/14
belief [1]  6/6
best [3]  5/21 17/18 19/12
better [2]  5/12 8/11
between [1]  11/16
big [2]  4/16 7/18
billed [1]  6/1
boarding [1]  5/19
born [2]  8/12 9/4
both [5]  5/4 5/14 6/20 7/14 8/3
brick [1]  14/18
brief [2]  10/24 14/15
briefing [2]  13/19 15/20
briefings [1]  17/8
briefly [1]  17/12
bring [2]  3/21 7/13
brought [1]  4/22
Bruno [6]  1/14 1/14 1/14 3/9 13/25 15/21
building [3]  5/3 15/1 15/2
but [10]  4/18 5/17 7/8 8/7 9/5 11/11 12/16 16/4 18/20 18/24

**C**

call [1]  3/4
came [2]  11/15 14/20
can [2]  5/8 8/13
case [5]  4/2 6/23 12/22 16/17 18/22
CCR [3]  1/20 19/9 19/16
center [5]  7/2 7/2 7/24 8/10 9/4
central [1]  17/13
certain [2]  3/16 13/11
certificate [1]  10/4 19/8
certified [1]  5/3
certify [1]  19/11
change [2]  6/13 7/21
changed [1]  11/20
changes [2]  9/3 10/20
CHINESE [5]  1/4 3/6 7/6 7/16 15/12
CHINESE-MANUFACTURED [2]  1/4 3/6
choice [1]  8/7
choose [2]  4/10 4/11
City [26]
claimant [2]  4/3 13/7

## C

claimant's [1] 13/11
claiming [2] 9/21 13/4
claims [2] 13/6 13/9
clear [1] 15/8
client [6] 4/14 6/9 6/12 6/15 6/16 17/21
close [1] 14/17
closing [1] 17/4
code [13] 4/23 5/10 5/25 7/18 7/24 9/23 11/6 12/1 14/1 14/18 15/10 16/24 18/7
come [3] 7/24 14/11 15/12
comes [1] 7/9
commercial [1] 13/21
communication [1] 11/11
completed [1] 16/15
compliance [2] 7/24 8/8
complied [1] 5/9
comply [1] 14/18
computer [1] 1/25
computer-aided [1] 1/25
concerned [2] 6/12 6/17
concerns [1] 11/18
concluded [1] 16/21
conducted [1] 15/24
conference [1] 16/14
confirmed [1] 15/23
conflict [1] 4/25
connection [2] 3/13 3/20
consent [1] 11/22
consider [1] 9/11
contacted [4] 5/12 10/7 10/12 10/13
contacting [3] 8/22 14/12 16/4
content [1] 7/17
contention [1] 16/3
continue [3] 6/24 7/11 12/7
continuously [1] 9/8
contractor [7] 3/12 11/12 14/4 14/6 15/6 15/9 16/16
contractor's [1] 15/7
contractors [1] 12/9
correct [3] 17/3 18/8 19/11
correspondence [2] 11/16 14/24
cost [2] 7/21 16/1
counsel [5] 3/7 10/12 10/13 12/4 17/13
course [3] 5/17 6/12 14/10
COURT [13] 1/1 1/20 4/18 4/20 9/2 16/10 17/7 18/2 18/2 19/2 19/9 19/10 19/17
covered [2] 13/20 13/23
credit [2] 8/4 8/20
criticism [1] 4/13

## D

damage [4] 9/7 15/19 15/20 16/7
damages [12] 8/13 9/10 9/20 9/21 10/1 10/25 12/14 13/5 13/11 13/15 16/22 16/23
Dan [1] 12/6
danger [1] 8/24
dated [1] 9/24
David [1] 5/23
Davis [1] 18/18
day [2] 10/17 11/24
December [11] 10/5 10/7 10/16 10/19 11/3 11/4 11/14 11/24 13/9 14/3 15/16
December 1 [1] 10/5
December 16 [4] 10/16 10/19 11/3 11/4
December 18 [3] 11/14 12/2 15/16
December 9 [2] 10/7 13/9
decision [1] 12/14
decree [4] 9/17 9/18 16/11 17/9
deeply [1] 6/17

defined [1] 3/17
delay [1] 8/8
demolished [2] 6/7 6/8
demonstrated [1] 5/9
designation [2] 15/19 15/21
determination [5] 8/10 9/2 16/7 16/9 17/2
determined [1] 17/1
did [6] 6/23 7/4 15/21
didn't [3] 4/10 4/11 18/20
different [1] 7/3
diligently [1] 16/12
discuss [1] 8/1
discussion [1] 3/15
DISTRICT [5] 1/1 1/2 1/10 19/10 19/10
divided [2] 7/2 9/24
do [3] 4/12 6/24 7/12
document [1] 11/2
documents [1] 4/18
does [1] 4/21
doesn't [1] 7/16
doing [1] 16/8
don't [4] 5/20 12/10 15/11 17/25
done [5] 3/20 4/2 7/10 11/23 15/14
down [1] 17/23
Doyle [4] 1/20 19/9 19/16 19/16
drilled [1] 14/1
drywall [6] 1/5 3/6 7/6 7/17 10/4 15/12
ducts [2] 5/6 5/10
due [3] 8/4 10/17 11/6
during [3] 6/8 16/13 16/13

## E

e-mail [2] 14/15 14/15
e-mails [2] 12/4 12/4
each [3] 3/24 8/18 15/3
earlier [1] 16/14
earth [1] 5/8
EASTERN [2] 1/2 19/10
effort [2] 4/17 8/22
ELDON [1] 1/10
electrical [9] 5/1 5/4 5/14 5/17 8/19 11/17 14/2 14/15 14/25
elevate [1] 15/23
elevated [1] 16/1
end [1] 17/20
endeavor [1] 17/20
engineer [1] 5/23
enormous [2] 4/17 6/1
enough [2] 5/14 6/4
enter [1] 11/21
entered [3] 3/14 14/7 16/5
entire [2] 5/24 7/25
entities [1] 3/14
entitled [8] 9/20 9/21 10/25 13/5 13/14 13/15 13/23 19/13
error [1] 8/10
ESQ [2] 1/14 1/17
essentially [1] 9/19
estimates [1] 7/4
evaluate [1] 5/24
every [1] 15/16
evidence [5] 3/24 4/3 5/16 13/2 16/19
exactly [1] 16/8
example [1] 15/8
excuse [1] 6/19
exhibit [1] 10/23
existed [2] 15/13 16/25
existing [1] 14/1
expense [1] 6/2 7/23
expenses [6] 9/22 9/22 13/17 13/17 13/20 13/24

expert [1] 13/18
explained [1] 15/4
explanation [2] 8/13 8/25
explored [1] 8/3
expresses [1] 12/6
extensive [1] 12/18
extra [1] 7/23
extremely [1] 6/15

## F

face [1] 14/17
faces [1] 17/14
facts [1] 18/24
failed [3] 5/15 8/19 11/5
fall [2] 5/20 13/19
FALLON [1] 1/10
familiar [1] 13/1
far [1] 6/1
FCRR [3] 1/20 19/9 19/16
February [2] 11/25 12/5
February 13 [1] 11/25
February 9 [1] 12/5
feels [1] 4/21
fees [1] 13/18
felt [2] 3/19 3/25
Ferchaud [38]
Ferchaud's [4] 8/21 9/16 10/12 13/21
few [2] 4/14 4/19
figure [1] 17/18
finally [2] 8/1 9/6
findings [3] 14/25 15/2 15/3
Fine [1] 18/10
finish [2] 8/8 11/25
fire [3] 7/12 7/14 7/15
fire-retardant [1] 7/14
first [3] 8/7 9/25 14/14
five [2] 10/17 14/10
five-day [1] 10/17
five-month [1] 14/10
fix [1] 8/20
Flettrich [3] 5/23 5/25 9/6
flew [1] 10/13
flood [1] 6/8
floor [1] 5/20
Florida [1] 1/19
folks [1] 9/9
following [1] 11/4
foregoing [1] 19/11
formally [1] 14/22
Fort [1] 1/19
forth [2] 6/18 11/16
forward [2] 10/5 11/14 17/18
found [2] 8/15 8/18
fours [1] 7/13
frankly [4] 5/7 5/21 6/21 8/13
fraud [2] 18/1 18/2
front [1] 11/7
fully [1] 11/20
fundamental [1] 7/25
future [1] 6/24

## G

general [2] 15/1 15/2
gentleman [4] 5/2 5/3 5/22 6/3
get [2] 6/25 13/13
GFA [1] 10/3
give [2] 4/20 8/2
giving [1] 4/7
go [6] 6/9 7/16 11/9 15/11 16/4 17/16
going [3] 5/12 7/15 11/9
gone [1] 8/22
Good [4] 3/9 3/11 4/6 9/15

**G**

governed [1]  13/9
governing [1]  13/6
government [1]  6/13
guess [1]  8/11

**H**

habit [1]  6/24
had [11]  3/16 3/20 5/4 5/6 6/21 8/21 9/9
 10/4 10/7 11/4 17/15
hadn't [1]  8/16
handle [2]  3/22 18/22
happy [1]  7/17
has [26]
have [41]
having [1]  17/16
Hawaii [3]  6/17 10/14 13/23
he [10]  9/19 12/24 13/1 13/2 14/20
 16/19 16/19 16/20 16/20 16/21
hear [3]  4/5 9/14 18/14
heard [3]  13/2 16/19 17/7
her [21]
here [3]  9/15 16/17 17/18
herself [5]  5/8 5/11 12/6
high [1]  6/16
high-strung [1]  6/16
hire [2]  5/22 18/22
hiring [2]  8/22 14/11
his [1]  9/6
hit [1]  4/18
hitting [1]  4/19
hold [8]  10/17 11/15 12/1 12/2 12/3 12/7
 12/8 15/15
holes [1]  14/16
home [9]  10/2 11/14 11/20 12/7 12/8
 12/11 12/15 13/2 15/13
homeowner [8]  3/19 3/25 4/3 10/6 10/17
 10/25 11/15 12/1
homeowner's [1]  4/5
homeowner-related [1]  10/6
homes [4]  3/16 3/18 16/14 16/16
Honor [13]  3/9 3/11 4/6 9/15 14/1 17/10
 18/1 18/2 18/5 18/8 18/14 18/24 19/4
HONORABLE [1]  1/10
hope [1]  6/25
house [13]  5/3 5/5 5/17 5/24 6/6 6/7 8/8
 8/23 8/24 9/7 9/8 9/9 10/17
how [1]  5/8

**I**

I'll [1]  9/25
I'm [2]  4/19 17/18
idea [1]  8/2
if [4]  3/18 3/25 6/4 15/9
illegal [2]  10/8 10/11
improvements [1]  8/11
in [47]
In Re [1]  3/5
incident [1]  7/17
include [1]  7/5
including [2]  9/21 15/19
independent [1]  12/18
INDEX [1]  2/1
indicate [1]  17/6
indicated [3]  8/15 11/8 16/3
indicates [1]  10/24
indicating [1]  17/6
indications [1]  6/10
Initially [1]  11/10
inquiring [1]  10/19
inspection [9]  5/1 5/1 5/4 5/9 5/14 8/14
 8/19 8/20 11/5

inspections [4]  5/15 14/3 14/5 14/10
inspector [2]  14/11 14/20
inspectors [1]  12/18
installed [1]  5/6
insult [1]  6/4
insurance [1]  9/22
interestingly [1]  7/4
interfere [1]  16/6
intervened [1]  6/21
intervention [1]  12/23
intimately [1]  13/1
into [3]  3/14 3/23 7/3 7/24 13/7 14/7
 14/11 16/5
invested [1]  4/17
invited [1]  18/18
involved [2]  12/23 12/25
is [51]
issue [11]  7/18 7/20 9/25 10/8 10/16
 13/4 13/25 14/9 16/5 16/25 16/7 17/14
issued [2]  6/5 9/19 14/24
issues [15]  10/5 10/6 11/1 11/15 11/17
 12/10 12/19 12/21 14/19 14/21 15/18
 16/11 16/16 16/17 17/5
it [24]
it's [5]  5/16 6/21 9/8 13/11 13/22
items [3]  13/19 15/5 15/10
its [3]  5/13 6/6 18/4
itself [1]  8/15

**J**

January [7]  1/6 3/2 11/15 11/19 11/24
 12/2 15/16
January 9 [4]  11/19 11/24 12/2 15/16
job [2]  6/15 15/12
Jody [3]  1/6 1/14 2/6
JOSEPH [2]  1/14 3/9
JUDGE [8]  1/10 4/9 7/1 9/1 9/11 17/12
 17/17 17/23
July [1]  13/8
July 28 [1]  13/8
June [2]  9/23 14/25
June 23 [2]  9/23 14/25
just [8]  4/12 4/14 4/18 4/20 5/7 8/22
 12/22 17/4

**K**

kicked [1]  10/2
kickoff [1]  10/3
kind [1]  15/3
Knauf [3]  3/14 12/24 13/12
know [6]  4/9 4/13 4/16 5/12 8/1 12/10

**L**

lack [2]  7/25 8/11
large [1]  17/19
late [1]  13/7
Lauderdale [1]  1/19
laundry [1]  13/18
lead [5]  3/12 15/6 15/6 15/9 16/15
lengthier [1]  14/24
Lenny [1]  18/18
less [1]  5/21
let [2]  9/14 18/21
let's [2]  3/4 8/6
LIABILITY [2]  1/5 3/6
like [7]  4/14 4/18 15/5 15/5 15/13 15/13
 16/3
like-for-like [1]  15/5
limited [2]  13/11 17/8
limits [1]  13/10
list [2]  13/18 15/3
litigants [1]  17/25
LITIGATION [2]  1/5 3/6

lives [1]  6/17
LLP [1]  1/14
locations [1]  5/18
lockbox [1]  11/20
longest [1]  15/3
look [2]  3/23 17/24
loss [1]  13/17
LOUISIANA [4]  1/2 1/15 1/21 19/11
lump [2]  13/14 13/16

**M**

ma'am [3]  17/24 18/6 18/21
made [1]  17/9
mail [2]  14/15 14/15
mails [2]  12/4 12/4
major [1]  7/1
make [5]  3/8 3/24 6/19 10/20 17/22
making [1]  8/10
MANUFACTURED [2]  1/4 3/6
many [3]  4/12 4/12 8/1
March [1]  12/5
March 24 [1]  12/5
marriages [2]  4/12 4/12
master [11]  3/21 3/23 4/2 7/19 8/9 9/2
 12/6 12/22 13/1 16/18 17/5
master's [5]  9/16 9/18 12/14 16/11 17/7
materials [1]  7/14
matter [3]  3/4 10/15 19/13
matters [1]  3/22
may [7]  6/13 6/22 12/23 14/1 14/13
 14/20 15/2
May 1 [1]  12/23
May 20 [2]  14/13 14/20
MAZZOLA [2]  1/17 3/12
MD [1]  1/4
me [6]  4/1 4/4 8/24 9/14 18/14 18/18
mean [1]  5/7
means [1]  13/8
mechanical [9]  1/24 5/1 5/4 5/9 5/15
 5/19 8/19 14/2 15/1
mediation [3]  6/9 12/24 13/2
meet [1]  6/8
meetings [1]  12/25
meets [1]  15/25
met [1]  7/18
might [1]  8/24
mind [1]  6/13
mine [1]  6/24
minor [1]  14/21
misrepresented [1]  18/4
moment [1]  8/7
money [2]  6/2 17/19
month [2]  14/10 15/16
morning [4]  3/9 3/11 4/6 9/15
Moss [27]
Moss' [3]  9/24 11/10 11/11
motion [1]  3/7
move [1]  17/18
Mr [1]  18/11
Mr. [3]  5/25 13/25 15/21
Mr. Bruno [2]  13/25 15/21
Mr. Flettrich [1]  5/25
Mrs [4]  3/10 11/12 16/3 16/13
Mrs. [35]
Mrs. Ferchaud [31]
Mrs. Ferchaud's [4]  8/21 9/16 10/12
 13/21
much [4]  4/7 9/12 18/13 19/1
multiple [1]  12/9
Murphy [2]  6/22 15/24
must [1]  7/20
my [10]  4/14 6/9 6/12 6/14 6/24 8/1 8/23

## M

my... [3] 17/20 18/8 19/12
myself [1] 5/17

## N

nail [1] 14/16
name [2] 5/2 5/23
nature [1] 4/9
need [4] 7/11 14/16 14/17 15/11
needed [1] 10/9
needing [1] 15/25
needs [1] 14/18
never [1] 16/16
new [15] 1/15 1/21 4/23 6/8 9/23 10/10
 10/11 10/14 11/5 13/21 14/5 14/7 14/20
 15/22 16/25
New Orleans [11] 4/23 9/23 10/10 10/11
 10/14 11/5 13/21 14/7 14/20 15/22
 16/25
nipple [1] 14/18
no [9] 6/16 6/19 6/23 7/6 7/18 8/7 8/13
 11/23 12/16
nor [1] 8/13
normal [2] 6/16 10/21
not [39]
note [2] 9/7 15/21
noted [2] 14/20 16/13
notice [1] 10/10
November [1] 10/2
November 14 [1] 10/2
now [9] 4/3 7/4 7/9 7/10 7/18 12/1 16/4
 16/7 18/21
numerous [1] 12/19

## O

objections [2] 9/16 17/9
observed [1] 5/6
obviously [2] 7/5 7/15
occasions [1] 15/4
October [1] 9/25
off [1] 10/2
Official [3] 1/20 19/9 19/17
officially [1] 11/24
Oh [1] 7/10
Oil [1] 6/22
ombudsman [1] 11/7
on [57]
Once [1] 4/6
one [4] 7/15 9/1 10/11 11/10
only [3] 13/14 13/15 13/20
opinion [5] 4/3 9/17 9/18 16/11 17/9
opportunity [2] 4/7 17/21
opted [1] 13/7
Option [1] 13/13
or [8] 3/24 3/25 4/24 5/24 7/6 11/22 12/1
 17/1
oral [2] 1/9 4/4
order [2] 6/5 6/12
original [2] 7/4 13/12
Orleans [14] 1/15 1/21 4/23 9/23 10/10
 10/11 10/14 11/5 13/21 14/5 14/7 14/20
 15/22 16/25
other [10] 5/25 7/1 7/16 9/21 12/9 13/5
 13/15 13/19 13/23 16/23
ought [1] 4/1
our [1] 10/24
out [3] 6/10 11/12 17/18
outlets [2] 5/18 14/17
outside [4] 10/21 11/1 13/5 17/6
over [2] 13/22 15/2
overturn [1] 9/2
owed [1] 7/22

own [2] 5/14 11/13
owners [1] 11/20

## P

P.A [1] 1/17
Page [1] 2/2
paid [2] 8/12 9/8
pain [1] 6/22
panicked [1] 5/7
part [1] 17/2
particular [1] 4/2
parties' [1] 16/20
party [5] 5/2 11/9 11/12 14/4 14/6
pass [2] 8/15 14/7
passed [3] 5/4 8/16 14/6
passing [1] 14/9
pay [3] 9/3 9/5 9/5
payments [2] 13/14 13/15
PE [2] 7/23 8/23
peak [3] 7/12 7/13 17/16
people [1] 5/20
perform [1] 5/13
performed [4] 5/1 14/3 14/4 14/6
performing [1] 11/11
period [2] 10/17 11/4
permanently [1] 10/14
permission [1] 11/22
permitted [1] 16/1
perspective [1] 8/21
persuading [1] 6/11
physically [1] 5/10
place [1] 14/13
placed [1] 15/15
plaster [4] 7/3 7/5 7/8 8/4
plates [1] 14/16
pleadings [1] 18/5
please [1] 3/3
plumber [1] 11/9
plumbing [2] 11/5 11/6
point [3] 6/5 10/5 16/2
points [3] 4/15 4/19 4/19
possession [1] 11/21
potential [2] 5/25 8/24
Poydras [1] 1/20
prayer [1] 6/22
preexisting [5] 7/20 11/6 12/1 17/1 18/7
prepare [1] 12/18
presence [1] 9/13
present [2] 5/10 12/19
presented [1] 10/22
prevailed [1] 6/9
prevent [1] 7/15
prior [3] 12/25 15/14 16/4
problem [3] 7/1 7/19 17/16
problems [2] 7/9 8/18
procedurally [1] 8/6
proceeded [1] 6/16
proceedings [4] 1/24 3/1 19/6 19/13
process [3] 6/5 16/6 16/13
PRODUCTS [2] 1/5 3/6
professional [1] 5/23
program [6] 3/16 3/16 3/17 3/18 3/20
 15/5
project [2] 15/6 16/15
promised [1] 17/22
promptly [4] 10/9 11/17 12/15 16/12
properly [1] 3/19
property [15] 7/3 10/9 10/20 11/6 11/18
 11/19 11/21 11/23 12/11 13/21 13/22
 14/11 14/21 15/23 18/8
protect [1] 14/19
protector [1] 14/16
protocol [2] 10/22 15/12

provided [2] 3/18 5/19
provoked [2] 9/1 9/2
PSC [1] 3/15
purposes [1] 7/13
put [2] 7/14 15/13
putting [1] 4/17

## Q

quite [4] 5/7 5/21 7/17 7/17

## R

rafters [2] 7/11 17/16
raised [2] 6/8 15/20
RE [2] 1/4 3/5
read [1] 14/2
reaffirmed [1] 12/3
rear [1] 10/12
reason [3] 4/19 6/21 18/9
reasons [1] 7/6
received [1] 14/14
receiving [1] 10/9
recess [1] 19/2
recommendation [1] 3/24
record [4] 3/8 4/16 4/22 19/13
recorded [1] 1/24
records [1] 4/18
reflects [1] 4/22
regard [4] 7/2 8/18 9/3 17/13
regarding [4] 4/24 11/11 11/17 12/14
reinspect [1] 14/12
reinspection [1] 14/14
Reinspections [1] 14/13
related [1] 10/6
Relates [1] 1/6
relating [1] 11/10
remarkably [2] 8/17 8/17
remediate [1] 3/16
remediated [1] 3/19
remediation [10] 3/17 3/18 3/20 10/21
 11/1 11/2 11/25 12/3 13/8 17/2
remember [1] 6/22
removal [2] 7/5 8/4
remove [2] 6/11 15/12
removed [3] 7/7 7/8 10/4
rent [1] 9/9
rental [2] 9/8 9/22
rentals [1] 13/18
rented [1] 13/22
repairs [1] 11/8
replace [1] 15/11
report [3] 9/6 14/7 15/24
Reporter [3] 1/20 19/10 19/17
reports [1] 12/18
representative [1] 16/21
request [6] 8/8 9/11 12/9 12/13 17/4
 17/22
requested [2] 12/23 13/19
requesting [1] 16/10
requests [4] 11/1 12/16 12/16 16/13
required [2] 6/7 15/23
requirements [1] 15/25
requiring [1] 9/3
residential [1] 13/20
resides [2] 10/14 13/22
resolution [3] 6/25 8/3 17/20
resolve [1] 4/25
resolved [2] 10/9 10/16
respect [1] 9/1
respectfully [2] 12/13 16/10
respond [1] 16/12
response [3] 9/14 10/24 17/11
responses [2] 12/16 12/20
responsibilities [1] 15/7

## R

responsible [1] 11/8
retained [2] 11/20 12/17
retardant [1] 7/14
reverse [1] 16/8
reversed [2] 15/21 16/7
reviewed [2] 16/18 16/19
right [5] 3/21 5/13 5/18 13/11 18/10
rise [1] 19/3
roof [5] 7/12 7/14 15/10 15/11 15/11
Room [1] 1/20
rough [1] 14/3
rough-in [1] 14/3
ruled [1] 17/5
ruling [4] 3/25 3/25 17/7 18/11
rulings [1] 9/19

## S

safety [1] 7/12
said [1] 6/19
same [1] 6/23
satisfied [1] 12/20
say [2] 5/11 8/17
says [1] 7/10
schedule [3] 10/22 10/23 10/24
scheduled [1] 11/25
scope [5] 3/17 10/21 11/2 13/6 17/6
Scott [1] 1/17
seated [1] 3/3
second [1] 13/4
Section [2] 1/5 13/12
Section 4.3 [1] 13/12
see [1] 5/12
seeing [1] 16/17
seek [1] 11/9
separate [2] 12/18 14/11
service [1] 5/19
settlement [11] 3/14 4/10 8/2 8/9 12/24
  13/6 13/9 13/10 13/12 13/13 16/24
several [1] 3/15
share [3] 4/14 5/16 17/19
sharp [1] 4/13
she [49]
Shop [1] 10/11
should [7] 8/11 8/12 9/24 16/25 17/7
  17/8 18/11
shouldn't [1] 8/17
side [3] 3/24 7/16 7/16
sides [2] 6/20 7/14
signed [1] 11/2
since [4] 11/24 12/2 12/11 12/23
sir [1] 18/12
sit [1] 17/22
situation [1] 7/25
Sixth [1] 1/18
small [1] 8/25
so [16] 5/12 5/19 6/1 6/1 6/14 6/24 7/9
  7/22 8/25 9/1 10/16 11/20 11/23 13/23
  17/4 17/17
software [1] 1/25
some [13] 4/11 4/13 4/20 5/6 5/25 6/5
  6/25 8/25 9/7 11/10 11/17 14/1 15/18
sorry [1] 6/20
sought [1] 16/23
Southeast [1] 1/19
speak [2] 10/15 18/18
speaks [2] 17/25 18/16
special [16] 3/21 3/23 4/2 7/19 8/9 9/2
  9/16 9/18 12/6 12/14 12/22 13/1 16/11
  16/18 17/5 17/7
specific [1] 3/17
specifically [1] 13/10

spending [1] 17/19
spent [3] 6/2 16/3
stand [1] 19/2
standard [1] 6/8
start [1] 9/25
starts [1] 7/15
stated [2] 10/11 14/16
states [4] 1/1 11/10 13/13 19/10
status [2] 12/11 16/14
stenography [1] 1/24
STEPHANIE [2] 1/17 3/11
still [1] 8/23
stipulation [1] 16/5
stop [2] 6/12 10/11
stopping [1] 6/5
straight [1] 18/25
Street [3] 1/15 1/18 1/20
strung [1] 6/16
stud [1] 7/8
studs [1] 14/17
sub [1] 11/10
submission [1] 9/24
submissions [3] 13/3 14/2 16/19
subs [1] 11/10
substantial [6] 7/11 9/10 9/10 15/19
  15/20 16/7
substantially [1] 6/6
successful [1] 6/11
such [2] 4/10 16/17
sufficient [1] 12/17
suggest [1] 8/9
suggested [1] 7/20
Suite [1] 1/18
sum [2] 13/14 13/16
summarized [1] 14/25
sums [1] 17/19
supplemental [1] 13/3
supposed [1] 5/18
Sure [1] 5/14
Surgi [1] 5/2
system [1] 14/8

## T

take [1] 3/24
talk [1] 8/6
terms [1] 6/14
testimony [2] 16/20 16/21
than [1] 5/21
thank [9] 4/7 9/11 9/12 17/9 17/23 18/13
  19/1 19/4 19/5
that [121]
that's [5] 14/4 15/14 18/16 18/20 18/22
their [7] 3/8 6/13 8/20 14/8 14/25 15/12
  16/4
them [6] 6/21 8/20 12/19 16/3
then [9] 3/23 4/1 7/25 10/13 12/2 12/5
  14/7 14/24 15/11
there [27]
there's [5] 5/18 12/4 15/8 18/1 18/2
thereafter [1] 15/17
therefore [2] 9/10 15/22
these [5] 3/22 4/19 14/2 14/10 15/3
they [23]
thing [1] 6/23
things [2] 6/19 8/23
think [3] 8/6 15/1 17/12
thinking [1] 8/21
third [8] 5/2 10/12 11/9 11/12 13/12
  13/25 14/4 14/6
third-party [5] 5/2 11/9 11/12 14/4 14/6
this [28]
those [8] 8/23 8/24 12/21 13/23 14/5
  14/19 14/21 16/16

thought [1] 5/8
three [2] 16/8 16/8
three-bedroom [1] 4/24
through [8] 5/5 5/17 5/20 5/24 8/22 12/4
  12/4 14/18
throughout [1] 18/4
thus [1] 14/10
time [8] 4/17 12/8 12/12 12/25 14/1
  14/12 14/12 17/17
today [4] 3/7 9/13 9/16 17/8
together [1] 15/13
told [1] 14/22
Toni [4] 1/20 19/9 19/16 19/16
too [1] 14/17
took [5] 4/2 14/9 14/13 16/20 16/21
total [1] 15/1
touched [3] 15/6 17/14 17/15
transcript [1] 19/12
transcription [1] 1/24
travel [3] 6/18 9/22 13/17
triplex [2] 10/8 10/11
Tripp [1] 1/17
true [2] 4/11 19/11
trust [1] 7/25
trying [2] 16/8 17/18
turned [1] 11/12
Tusa [4] 1/20 19/9 19/16 19/16
two [5] 4/24 7/3 7/9 7/13 10/3
two-by-fours [1] 7/13

## U

uncomfortable [1] 6/15
under [8] 8/3 8/3 8/3 12/24 13/13 13/19
  15/11 16/24
understand [1] 18/3
understanding [2] 4/20 19/12
unfortunate [1] 6/20
unit [2] 4/24 10/12
UNITED [3] 1/1 1/10 19/10
unknown [1] 7/7
up [1] 7/13
upon [4] 3/15 6/9 10/9 17/5
us [1] 4/7
using [1] 1/24
utilized [1] 11/12

## V

vacated [1] 18/12
valuable [1] 17/17
various [2] 12/4 15/4
very [7] 4/7 9/12 14/15 15/8 17/12 18/13
  19/1
violation [3] 4/23 12/1 15/10
violations [6] 5/25 9/23 11/6 14/1 16/24
  18/8
vis [2] 6/14 6/14
vis-à-vis [1] 6/14

## W

waiver [3] 10/23 10/23 10/24
wall [13] 7/2 7/2 7/3 7/5 7/7 7/10 7/24
  8/4 8/11 9/4 17/14 17/15 17/15
wanted [1] 12/15
wants [1] 12/6
was [42]
wasn't [2] 5/20 6/4
way [5] 3/13 4/21 6/15 7/12 17/18
Wayne [1] 6/22
we [31]
website [1] 10/10
weeks [1] 10/3
well [8] 4/9 5/8 5/11 6/13 7/10 8/21 13/2
  13/18

## W

went [3]  5/5 5/17 5/24
were [25]
what [7]  5/12 6/13 14/14 15/14 15/14
16/8 18/22
what's [1]  5/12
when [9]  5/5 5/10 8/15 11/18 12/23 14/5
14/20 17/24 18/15
where [8]  6/14 7/22 8/6 8/25 10/11
10/14 10/17 12/5
whether [4]  4/24 5/24 17/1 17/1
which [11]  6/7 7/12 7/20 8/4 8/15 8/18
9/5 9/8 10/10 13/13 13/20
While [3]  4/11 4/13 4/25
who [5]  3/21 5/2 5/23 5/24 8/24
why [5]  4/20 6/21 8/14 18/14 18/16
will [8]  4/5 5/16 6/24 10/25 17/19 17/20
17/22 19/2
wires [1]  14/19
wish [1]  17/17
Within [2]  9/18 10/2
without [3]  4/25 11/22 17/19
won't [1]  18/14
word [2]  8/11 16/4
work [15]  4/12 6/6 6/10 6/12 7/4 7/11
8/24 10/22 10/23 10/24 11/11 11/23
15/8 16/1 17/20
working [1]  12/10
would [20]
wouldn't [1]  17/15
writing [1]  15/24
wrote [1]  4/3

## Y

years [2]  3/15 13/22
Yes [1]  19/5
you [37]
your [16]  3/9 3/11 4/6 9/12 9/15 13/13
14/1 17/10 17/17 18/1 18/2 18/5 18/8
18/14 18/24 19/4
Your Honor [8]  4/6 9/15 14/1 17/10 18/1
18/8 18/24 19/4