UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION                                                    MDL NO. 2047

                                                              SECTION: L

                                                              JUDGE FALLON
                                                              MAG. JUDGE WILKINSON

THIS DOCUMENT RELATES TO:
*ALL ACTIONS*
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF
MOTION FOR REMEDIATION FUND BENEFITS**

**MAY IT PLEASE THE COURT:**

Residential Owners/Class Members Stephen and Isis Silva ("Silva") submit this memorandum in support of their Motion for Remediation Fund Benefits.

In 1998, Silva purchased a parcel of ground containing 20 acres of land in Folsom, Louisiana. Silva built a home on that property and in approximately 1999 Silva, his wife and two children moved into the newly constructed property. At that time there was no debt on the property or the home. In 2002, Silva took out a mortgage and began construction of an additional home on the same 20 acre property. Silva was his own contractor. The move-in date was to be in December 2009. Prior to the move-in date, Silva discovered that the home contained Chinese drywall and all construction was stopped. The property was subject to a mortgage of approximately $800.00 per month and the mortgage continues in full force and effect.

Silva requests benefits pursuant to the Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 ("Knauf Settlement") [Rec. Doc 16407-3]. Silva is a

1

Class Member that timely submitted all documentation to the Settlement Administrator, BrownGreer, necessary to receive Remediation Fund Benefits in accordance with the terms and conditions of the Knauf Settlement.

Section 4.3 of the Knauf Settlement grants KPT Property Owner Sub-Class Members the right to elect from one of three options, namely: (Option 1) Program Contractor Remediation Option/Property Not Yet Remediated; (Option 2) Self Remediation Option; or (Option 3) Cash-Out Option.

Silva originally was enrolled in the Court's Pilot Program. As the Court is intimately familiar with the Pilot Program, Silva will not set forth the terms and conditions. Suffice it to say, the Pilot Program was intended to provide prompt remediation benefits to homeowners so that they could get back into their properties. It was originally envisioned that contractors would be retained to perform the remediation. Because Silva originally constructed his own property and was a "self-contractor," Silva desired to make the repairs to his own property. There were no impediments by governmental administrators or Silva to act as his own contractor in making any repairs to his property even though Silva would not be "an insured and bonded licensd contractor." It was due to these unique circumstances regarding Silva's property that remediation work did not proceed under the Pilot Program. This caused tremendous frustration to Silva and required Silva to continue owning the property in its Chinese drywall impacted condition. On March 27, 2012, Moss provided a Work Authorization Agreement which was not approved by Silva.

The Silva property was ultimately placed into the Remediation Program of the Knauf Settlement and on February 9, 2012, an Xactimate estimate was provided. Silva disputed the February 9, 2012 Xactimate and, thereafter, Moss issued a Cost Estimate Lump Sum

Submission/Final Cost Estimate on March 6, 2012 indicating the remediation square feet of 3,039 for an amount of $139,343.69.  None of these delays were caused by Silva.

The Silva property is unique in that the property was originally constructed by the homeowner, Silva.  Silva is not a licensed contractor; however, permits were provided to Silva at the time of the original construction of the property.  The identification of KPT drywall did not take place until March 2009 while the home was in the process of being constructed and at that time all construction activity was suspended.  The Silva property is located in Tangipahoa Parish, State of Louisiana, where Silva is identified as the contractor on record and the original permit identified the building as "owner-contractor".  Throughout construction, the property passed parish inspections.  Silva consistently advised that he desired to continue with the construction of his property and continued to be the owner-contractor.  Silva was willing to follow the remediation guidelines as set forth in the Knauf Settlement and has already received an Environmental Certification, which was completed on August 10, 2015.

Option 2 of the Knauf Settlement provides that the Remediation Fund pay the KPT Property Owner's chosen contractor an amount equal to the higher of the Final Cost Estimate prepared by the Lead Contractor or 65% of the Xactimate prepared by the Lead Contractor to remediate the KPT Property under the Remediation Protocol.  Moss, the Lead Contractor, has already provided the Final Cost Estimate and Xactimate to the Settlement Administrator and Silva.  To exercise this option in accordance with Section 4.3.2.1. of the Knauf Settlement, the KPT Property Owner <u>must submit a binding contract with an insured and bonded licensed contractor</u> and the contract must include a representation that the contractor is insured for residential construction and that it is bonded.  Payments are made to the licensed contractor in accordance with Section 4.3.2.2. of the Knauf Settlement upon a determination by the Settlement

3

Administrator that the licensed contractor has performed satisfactory work consistent with the contract. That Section provides for graduated payments beginning with 30% paid to the licensed contractor for building permits and fees, 30% upon providing an Environmental Certificate and Certification of the removal of the electrical wiring, home security equipment and copper gas line, 30% upon completion of drywall installation, and the remaining 10% upon submission of proof that the remediation has been completed. The following is a breakdown of the funds that would be available to Silva based upon Option 2 in the Settlement Agreement:

| MILESTONE 1 | $ 41,803.11 (start up) |
|---|---|
| MILESTONE 2 | $ 41,803.11 (after Environmental Certificate) |
| MILESTONE 3 | $ 41,803.11 (after new drywall up) |
| MILESTONE 4 | $ 13,934.37 (upon completion) |
| **TOTAL:** | **$139,343.69** |

In addition to the remediation payments under Option 2, a claimant is entitled to recover Lump Sum Payments under Section 4.3.1.1., but not the Delay Payment under Section 4.3.1.2. Section 4.3.1.1.1. of the Settlement Agreement provides that KPT properties with an Under Air Area less than or equal to 3,500 shall receive a single payment of $8.50 per square foot ("Lump Sum Payment"). Silva's Option 2 payment should therefore be $139,343.69, plus the Lump Sum Payment provided in Section 4.3.1.1. of the Knauf Settlement ($8.50 X 3,039 = $25,831.50), for a grand total of $165,175.19.

Silva is not a licensed contractor as contemplated under the Knauf Settlement. However, because Silva is the owner-contractor and has previously been recognized and approved to

construct the property, there should be no impediment to Silva electing the self remediation option.

More than five (5) years has gone by and Silva has been out of his property due to the inability of Silva to have remediation benefits. Throughout this five (5) year span, Silva has been forced to continue making payments on the mortgage for the property. Furthermore, Silva has not been able to afford to remediate or finish construction of the property. As a result, Silva was forced to live in the original property that was constructed on the property in 1999, which property was to be a rental income producing property at the time Silva moved in to the newly constructed property which had Chinese drywall. Silva has suffered tremendous hardship during this timeframe and therefore should be entitled to recover all of the Option 2 payments at this time. At present, Silva desire to sell the property in its present condition. This would mean that Silva has already achieved Milestone 1 and 2, which would entitle Silva to recover $83,606.22, as well as the Lump Sum Payment of $25,831.50. If Silva sells the property, Silva would not be putting new drywall up or completing the property, but instead would be selling the property at a substantial discount due to its existing partial built condition, the impact of Chinese drywall, and the delays due to the lack of remediation.

The alternative, which Knauf suggests would be appropriate in these circumstances, is for Silva to be forced to accept an Option 3 Cash Out. Option 3 of the Settlement Agreement applies when "The KPT Property Owner is not remediating that KPT Property and therefore to account for additional risk to the Knauf Defendants and the fact that the KPT Property Owner will not incur alternative living expenses, such amount shall be reduced by $7.50 per square foot and the KPT Property Owner shall be entitled to a reduced Lump Sum Payment of $350.00 per square foot…" Further, the KPT Property Owner may select this option only if there is no

5

mortgage or other lien on the property or if a release by the mortgagee or lienholder is provided, if the KPT Property Owner records the existence of reactive Chinese drywall in the local property Clerk's office, and covenants to inform subsequent purchasers of the presence and agree to defend and indemnify the Knauf Defendants.  These requirements should not be applicable to Silva because Silva desires to sell the property in its present condition after receiving an Environmental Certification that the property no longer contains Chinese drywall.  Furthermore, the Silva property presently has a mortgage on it and Silva has incurred substantial mortgage payments for property which he has not been able to use.  It would be prejudicial and burdensome to Silva if Silva were penalized for being a self-made contractor who attempted to do the right thing by rebuilding his home, making mortgage payments and then having award benefits reduced.

Silva requests that the Court award him the complete benefits immediately for an Option 2 self-remediation.  This would result in Silva providing the appropriate release under the Settlement Program for an Option 2 claimant and Silva receiving a one time payment of $165,175.19.

Dated:  January 21, 2016                    Respectfully submitted,

/s/ Leonard A. Davis
Russ M. Herman, Esquire (LA Bar No. 6819)
Leonard A. Davis, Esquire (LA Bar No. 14190)
Stephen J. Herman, Esquire (LA Bar No. 23129)
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhklawfirm.com
*Counsel for Stephen and Isis Silva*

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 21st day of January, 2016.

    /s/ Leonard A. Davis
Leonard A. Davis, Esquire
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com