UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | : : : : : : : | MDL NO. 2047<br>SECTION L<br>JUDGE FALLON<br>MAGISTRATE JUDGE WILKINSON |

**THIS DOCUMENT RELATES TO:** ALL CASES

### FINDINGS OF FACTS AND CONCLUSIONS OF LAW REGARDING THE DECEMBER 7, 2015 OCEANIQUE EVIDENTIARY HEARING

**I.    INTRODUCTION**

This is an appeal from a Special Master's award pursuant to the Knauf settlement program in the Chinese Drywall litigation. The Knauf Defendants and the Plaintiffs' Steering Committee ("PSC") entered into a Class Settlement Agreement that established two funds intended to reimburse class members for different types of losses: a Remediation Fund and an Other Loss Fund. (R. Doc. 16407-3). Property owners who had remediated properties themselves could seek reimbursement from the Remediation Fund according to the Already Remediated Properties Protocol, which limits Reimbursable Costs using certain criteria related to the remediation. (R. Doc. 19428-1 at 3). These property owners can also seek reimbursement from the Other Loss Fund for miscellaneous expenses that do not stem from remediation, including loss of use, sales in mitigation, tenant losses, etc. (R. Doc. 19428-1 at 4).

Plaintiff Oceanique Development Company ("Oceanique") remediated 39 of its affected residential units containing Chinese drywall in 2009 and subsequently requested reimbursement in the amount of $3,180,499.28. (R. Doc. 19428-1 at 4). Knauf contested this request necessitating mediation in accordance with the settlement program. Mediation occurred in

1

March, 2015 before the Special Master, but the mediation only addressed the issue of the sufficiency of evidence with regard to the presence and amount of Knauf drywall and did not include negotiation concerning which costs of the requested total were eligible as Reimbursable Costs. (R. Doc. 19428-1 at 4). Plaintiff requested a review of the Special Master's determination regarding the board composition question (*i.e.*, the percentage of Knauf-manufactured drywall involved), and the Court resolved in the property by holding that the evidence supported a conclusion that 60% of the drywall at issue was manufactured by Knauf and awarded Oceanique 60% of its claimed costs for a total recovery of $1,908,299.57. (R. Doc. 19428-1 at 5). The Court's review only addressed the percentage of drywall assigned to the Knauf Defendants, rather than the eligibility of all costs included in the total amount requested by Plaintiff. (R. Doc. 19428-1 at 5). The Knauf Defendants believe this award was in error, and that Plaintiff was only entitled to 60% of its eligible Reimbursable Costs, which Defendants argue were significantly less than the total costs for which Plaintiff sought reimbursement.

Defendants do not request a reconsideration of the 60% KPT board composition percentage assigned by the Court in that Order, but rather seek reconsideration of the total amount of Reimbursable Costs to which the 60% was applied. (R. Doc. 19428 at 1). Pursuant to Defendants' request for Reconsideration, on December 7, 2015, this Court held an Evidentiary Hearing to determine the proper amount of reimbursable cost pursuant to the terms of the settlement program. (R. Doc. 19428 at 1). Having reviewed the evidence presented at the Hearing, the Court now issues the following Findings of Fact and Conclusions of Law.

II. **FINDINGS OF FACT**

    A. **MDL Proceedings Related to the Oceanique Evidentiary Hearing**

1.     On June 15, 2009, the Judicial Panel on Multi-District Litigation ("JPML") transferred all federal civil actions alleging damages from Chinese Drywall to the United States District Court for the Eastern District of Louisiana for coordinated and consolidated pretrial proceedings in MDL 2047 pursuant to 28 U.S.C. § 1407. *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 626 F. Supp. 2d 1346 (J.P.M.L. 2009).

2.     On June 16, 2009 this Court issued Pretrial Order 1 ("PTO 1"), which reminded parties and counsel of "their duty to preserve evidence that may be relevant to this action." (R. Doc. 2).

3.     On October 9, 2009, this Court issued Pretrial Order 1B ("PTO 1B"), which provides detailed requirements regarding the preservation of physical evidence.

4.     On December 9, 2009, the PSC filed Plaintiffs' Omnibus Class Action Complaint (I) ("Omnibus Complaint I") against the Knauf Defendants and several other defendants. (R. Doc. 1, 2:09-cv-7628). Oceanique is named plaintiff in Omnibus Complaint I.

5.     On December 20, 2011, after extensive discovery and several bellwether trials, and seeking to avoid the effort, expense, and risk of continued litigation, the Knauf Defendants and the PSC entered into a Settlement Agreement regarding claims against the Knauf Defendants in MDL 2047. (R. Doc. 12061-5).

6.     After approving several amended version of the Settlement Agreement, on November 1, 2013, this Court issued an Order granting approval to the fourth and final Knauf Class Settlement Agreement (the "Settlement Agreement"). (R. Doc. 17220).

7.     The Settlement Agreement is governed by, and construed and enforced in accordance with, the substantive laws of the State of Louisiana without regard to conflict of laws principles. (R. Doc. 16407-3 at § 18.10).

8. Pursuant to the Settlement Agreement, the Knauf Defendants established two Settlement Funds: a remediation Fund and an Other Loss Fund. *Id*. at §§ 1.69, 4.1, 4.2, 4.6.

9. Owners who have self-remediated Affected Properties may seek benefits to resolve their Remediation Claims as provided in the Already Remediated Properties Protocol (the "ARP Protocol"). *Id.* at § 4.3.7.

10. Remediation Claims are to be paid by the Remediation Fund. *Id.* at § 4.2-4.5. Remediation Claims include claims associated with reasonable remediation costs and Other Covered Expenses. *Id.* at § 1.61. Other Covered Expenses include alternative living expenses, personal property damage, maintenance of property during remediation, including utility bills, insurance, property taxes, and moving and storage expenses. *Id.* at § 1.47. Other Covered Expenses are paid by the Lump Sum Payment from the Remediation Fund to Residential Owners, but not commercial owners. *Id.* at § 4.3.1.1.

11. The ARP Protocol creates a process by which to resolve the Remediation Claims of individual owners who self-remediated properties affected by KPT Chinse Drywall prior to the execution date (December 20, 2011) of the Knauf Class Settlement Agreement on a property-by-property basis. (R. Doc. 12061-6 at § V). This process consists of: (1) the property owner's provision of documents concerning remediation; (2) a negotiation period; (3) a mediation, if necessary; and (4) if the mediation fails, a proceeding before the Court to resolve the Remediation Claims. *Id.* at § I.

12. Owners of Already Remediated Properties are required to submit documentation concerning the remediation of the property including, *inter alia*: (1) photographs of all the drywall removed from the property; (2) evidence of KPT Chinese Drywall; (3) photographs of the property immediately prior to the commencement of, and following completion of, the

remediation; (4) an itemized invoice or ledger from the contractor who performed the remediation work; (5) proof of payment, such as cancelled checks, credit card statements, etc.; and (6) an Owner Disclosure Affidavit, which includes a certification that the materials provided comprise of all of the available documentation regarding the claim. *Id.* at § III.

13. If a Remediation Claim cannot be resolved by the Owner and the Knauf Defendants, the parties shall submit the Owner's Remediation Claim to the Special Master. *Id.* at § IV(B). The Special Master will then conduct a mediation and issue an opinion and decree regarding the Remediation Claim. *Id.*

14. Following the Special Master's opinion and decree, either party may seek review from the Court. *Id.* The scope of the Court's review shall be limited to the Reimbursable costs set forth in Section IV(D) of the ARP Protocol. *Id.* at § IV(C).

15. Separate and apart from Remediation Claims to the Remediation Fund, Residential and Commercial Owner Class Members may also seek benefits from the Other Loss Fund as defined in Section 1.47 of the Settlement Agreement, which includes pre-remediation alternative living expenses; loss use, sales, and rentals; foreclosures; sales in mitigation; tenant losses; bodily injury; and miscellaneous claims. (R. Doc. 16407-3 at § 4.7).

### B. Prior Proceedings Regarding Oceanique

16. Oceanique is a developer of condominiums in Fort Pierce, Florida. Oceaique constructed and marketed the Oceanique Development, which consisted of two towers containing 144 condominium units. Tr. at 85:9-16. Maurice Kodsi and his son, Robert, are principals and owners of Oceanique. Tr. at 58:18-60:7.

17. Oceanique is a Class Member and part of the Commercial Owner subclass to the Knauf Class Settlement Agreement.

18. Pursuant to the ARP Protocol, Oceanique made a Remediation Claim to the Remediation Fund for $3,180,499.28 for the reimbursement of remediation costs allegedly incurred in connection with the remediation of 39 units and 3 common areas at the Oceanique Development. The remediation was largely concluded by October 2009, prior to the issuance of PTO 1B.[1]

19. Following a review of the drywall documentation submitted by Oceanique, the Knauf Defendants' position was that Oceanique failed to preserve and present evidence in support of its claim as required under the Knauf Class Settlement Agreement. (R. Doc. 19413 at p. 3).

20. Pursuant to the Knauf Class Settlement Agreement, the matter was submitted to the Special Master, Dan Balhoff. On May 11, 2015, the Special Master issued an Opinion and Decree, finding that Oceanique failed to present sufficient evidence of the presence and amount of KPT Chinese Drywall consistent with the requirements of PTO 1B and Knauf was prejudiced by this failure to preserve evidence. (R. Doc. 19413 at p. 2). The Special Master determined that only a single KPT Chinese Drywall board (out of 6,000) was properly documented consistent with PTO 1B. *Id.* Because Knauf and Oceanique did not address the issue of Reimbursable Costs, the Special Master awarded Oceanique 1/6000 of its claimed amount: $530.08. *Id.*

21. Oceanique appealed the Special Master's May 11, 2015 Opinion and Decree to this Court, arguing in part that the bulk of the remediation was performed prior to the

---

[1] Invoices from Oceanique's subcontractors suggest that six of the thirty-nine units still contained Chinese Drywall in November 2009, one month after the implementation of PTO 1B. Tr. 100:2-101:11.

issuance of PTO 1B, which provided a detailed preservation protocol for drywall, and Oceanique began demolition and remediation in May 2009 one month before the initial transfer that initiated this MDL. Thus, much of the evidence required by PTO 1B was not retained and other evidence including testimony and drywall purchase orders should be considered. (R. Doc. 19023).

22. On July 14, 2015, this Court heard oral argument in Oceanique's appeal.

23. By Order and Reasons dated August 21, 2015 (R. Doc. 19413), this Court overruled the Special Master finding that in this case other evidence was sufficient to support the claim and applied a 40% reduction to Oceanique's total claim of $3,180,499.28 based on insufficient proof of KPT percentage, which would result in an award to Oceanique of $1,908,299.57.

24. On August 31, 2015, Knauf moved this Court to reconsider its Order and Reasons on the grounds that Oceanique is limited to reasonable reimbursable costs under the Knauf Class Settlement Agreement and this Court's adoption of the approximately $3 million total value of Oceanique's claim had not been fully vetted as "Reimbursable Costs," as set forth in Paragraph IV(D) Protocol. (R. Doc. 19413). This Court heard oral argument on Knauf's motion for reconsideration. The Court granted Knauf's motion for reconsideration and ordered that Knauf and Oceanique conduct an evidentiary hearing regarding the issue of Reimbursable Costs. (R. Doc. 19735).

25. The evidentiary hearing took place on December 7, 2015. Knauf presented evidence and testimony from two witnesses: Phillip Adams of Moss and Jacob Woody of Brown Greer. Oceanique presented evidence and testimony from two witnesses: Maurice and Robert Kodsi, both owners and principals of Oceanique.

26. Knauf challenged 19 entries on Oceanique's ledger which Oceanique presented in connection with its claim for Remediation costs. Specifically, Knauf challenged the following ledger entries:

1. Payroll

2. MK – Supervision

3. Appliances

13. Trim/Paint Labor – Charlie

16. Storage

18. Moving/Hauling

19. Utilities – FPL

20. Engineer Letters

21. Permit Fees[2]

22. Utilities – Water/Sewer

23. Scratched/Delaminate Glass

25. Asphalt Repair

26. Redo Decks

30. Plumbing Repairs

33. Door/Locks Repair

43. BLDR Profit/Overhead/Legal/ACCTG – 25%

44. Interest on Property – 3mos (1%) x $20M

45. Interest on Constr. Costs ($2,209,544 x 10%)

46. Condo Fees and RE Taxes – 3 mos. x 100 Units;

---

[2] Item No. 21, regarding permit fee expenses in the amount of $13,687, was not disputed by Knauf at the Evidentiary Hearing. In fact, Knauf agreed that the reimbursable permit fees should in fact be more, *i.e.*, $15,075.00

8

     47. Punch Out/Warranty/Reserve/Contingency

The Court will discuss these objections in turn.

  27. Oceanique submitted claimed costs in the amount of the $360,000.00 for Payroll (Item No. 1). Tr. 104:11-105:7. It was Oceanique's responsibility to maintain and provide invoices, proof of payment, and other documentation to prove $360,000.00 in payroll expenses were incurred in connection with the remediation of the Oceanique Development. Tr. 9:17-10:13. Oceanique failed to provide any documentation to support any of the $360,000.00 in claimed payroll expenses.[3] Tr. 16:15-18; 104:11-107:15. In the construction industry, it is not reasonable or credible for a well-established developer like Oceanique to fail to maintain payroll records to support a $360,000.00 claim. Tr. 16:19-22; 45:21-23. The testimony of Maurice Kodsi regarding payroll expenses is inadequate to support the claimed amount without any supporting documentation.

  28. Oceanique submitted claimed costs in the amount of the $120,000.00 for remediation supervision by Maurice Kodsi (Item No. 2). It was Oceanique's responsibility to maintain and provide invoices, proof of payment, and other documentation to establish that $120,000.00 in supervision expenses were incurred in connection with the remediation of the Oceanique Development. Tr. 9:17-10:3. Oceanique failed to provide any documentation to support any of the $120,000.00 in claimed supervision expenses. Tr. 17:8-11. In the construction industry, it is not reasonable or credible for a well-established developer like Oceanique to fail to maintain records to support a $120,000.00 claim. Moreover, the document produced by Maurice Kodsi to support the $120,000.00 supervision claim was

---

[3] Oceanique may not seek to supplement documentation through documents first produced at the December 7, 2015 hearing as the Knauf Defendants' Motion to Strike was granted, precluding any admission of documents not previously produced. Tr. 131:4-11.

generated in connection with the hearing and not in connection with the payment.[4] Tr. 109:10-110:12. Additionally, Maurice Kodsi confirmed he was not actually paid for his supervision. Tr. 111:15-20. Accordingly, the testimony of Maurice Kodsi regarding payroll expenses is inadequate to support the claimed amount without any credible supporting documentation.

29. Oceanique submitted claimed costs in the amount of $274,000.00 for appliances (Item No. 3). Oceanique submits this is for the cost of appliance replacement in the affected units at the Oceanique Development. Tr. 71:6-16. However, despite the Quickbooks statement identifying GE appliance costs, there was insufficient documentation to evidence that this appliance cost was incurred. Tr. 17:18-18:10. There were no supporting invoices, proof of payment and the Quickbooks statement did not relate to individual units. *Id.* In the construction industry, it is not reasonable or credible for a well-established developer like Oceanique to fail to maintain appliance expense records to support a $274,000.00 claim, especially since the payment documentation would contain information required for any future manufacturer warranty or recall issues with the appliances. Tr. 17:16-18:12; 16:19-22; 45:21-23. The testimony of Maurice Kodsi is inadequate to support the claimed amount without more reliable and specific documentation.

30. Oceanique submitted claimed costs in the amount of $24,000.00 for storage (Item No. 16). Oceanique provided no testimony or exhibits regarding the $24,000.00 in storage costs. It was Oceanique's responsibility to maintain and provide documentation to establish that $24,000.00 in storage costs were incurred in connection with the remediation of the

---

[4] Oceanique may not seek to supplement documentation through documents first produced at the December 7, 2015 hearing as the Knauf Defendants' Motion to Strike was granted, precluding any admission of documents not previously produced. Tr. 131:4-11.

Oceanique Development. Tr. 16:19-22; 45:21-23. Oceanique failed to provide any evidence, including testimony, to support any of the $24,000.00 in claimed storage costs.[5] Tr. 19:17-21.

31. Oceanique submitted claimed costs in the amount of $20,000.00 for moving and hauling (Item No. 18). Oceanique's only documentation supporting this expense is a one-page statement from the Tricon Development of Brevard, Inc., which is the contractor company for the Oceanique Development and is also owned by Maurice and Robert Kodsi. Defense Exhibit 3. The invoice is neither signed nor dated, and contains no level of specificity to identify the work that was done. *Id.* There is no evidence that Tricon billed or received payment from Oceanique in the amount of $20,000.00. Further, the testimony of Maurice Kodsi is inadequate to support the claimed amount without additional and more reliable supporting documentation.

32. Oceanique submitted claimed costs in the amount of $14,523.00 for Engineering Letters (Item No. 20). Oceanique provided no documentation in connection with this cost other than cancelled checks to HAS Golden. Although Maurice Kodsi testified that the engineer letters were necessary to pass quality control concerns, this testimony is inadequate to support the claimed amount without additional and more reliable supporting documentation. It was Oceanique's responsibility to maintain and provide documentation to establish the engineering scope of work for the $14,523.00 in expenses incurred. Oceanique did not provide any documentation to identify the scope of work for the $14,523.00 in

---

[5] Oceanique may not seek to supplement documentation through documents first produced at the December 7, 2015 hearing as the Knauf Defendants' Motion to Strike was granted, precluding any admission of documents not previously produced. Tr. 131:4-11.

11

claimed engineering expenses and failed to provide the engineering reports themselves. Tr. 20:12-25.

33.   Oceanique submitted claimed costs in the amount of $770,954.00 for Interest on Construction Loan, Interest on Property, Condo Fees and Real Estate Taxes (Items No. 44, 45, and 46). Oceanique submitted no evidence to support any of these amounts and refused to even identify the source of the alleged construction loan. Tr. 46:7-12; 128:9-129:4.

34.   Oceanique submitted claimed costs in the amount of $200,000.00 for Punch Out/Warranty/Reserve/Contingency (Item No. 47). Oceanique admits that this claimed cost is a contingency for warranty items. Tr. 81:22-82:23. It was Oceanique's responsibility to maintain and provide documentation to establish that $200,000 in contingency expenses were actually incurred in connection with the remediation of the Oceanique Development. Tr. 16:19-22; 45:21-23. Oceanique failed to provide any documentation to support any of the $200,000.00 in claimed contingency expenses.[6] Tr. 130:17-131:11; 25:10-20. The testimony of Maurice Kodsi regarding contingency expenses is insufficient to support the claimed amount in light of the lack of supporting documentation.

35.   Oceanique seeks $38,550.00 for labor and work provided by Charles McPhilany during the remediation of the Oceanique Development (Item No. 13). Of the claimed amount, $3,060.00 are for invoices related to shutter crank installation. Tr. 19:7-14; Defense Exhibit 16. Shutter Cranks are not part of the ARP Protocol or the Remediation Protocol, and costs incurred in connection with shutter cranks are not reasonable or credible because

---

[6] Oceanique may not seek to supplement documentation through documents first produced at the December 7, 2015 hearing as the Knauf Defendants' Motion to Strike was granted, precluding any admission of documents not previously produced. Tr. 131:4-11.

the cranks are not affected by Chinese Drywall. (R. Docs. 12061-6, 12061-14); Tr.19:7-16. Oceanique provided no testimony or evidence to support its claim regarding shutter cranks.

36. Oceanique seeks $15,000 for Utilities-FPL (Item No. 19) and $12,000 for Utilities-Water/Sewer (Item No. 22). Utilities are Other Covered Expenses under the Knauf Class Settlement Agreement. (R. Doc. 16407-3 § 1:47.

37. Oceanique submitted claimed costs in the amount of $11,308.19 for Scratched/Delaminate Glass (Item No. 23). Glass repair or replacement is not part of the ARP Protocol or the Remediation Protocol, and costs incurred in connection with glass repair or replacement are not reasonable or credible because glass is not affected by Chinese Drywall. (R. Docs. 12061-6, 12061-14); Tr. 22:5-17. Damage to glass during the Oceanique remediation is a cost to be borne by the remediation contractor. Tr. 22:5-17. If the Oceanique Development remediation was conducted by the Knauf Class Settlement Agreement program contractor, Moss and Associates, the contractor, and not Knauf, would incur the costs of replacing damaged or broken glass during the remediation due to contractor negligence. Tr. 22:5-17.

38. Oceanique submitted claimed costs in the amount of $7,200.00 for Asphalt Repairs (Item No. 25) to seal and stripe the asphalt areas; $6,716.01 for Redo Decks (Item No. 26) for leveling of ponding areas on balconies; $3,726.73 for Plumbing Repairs (Item No. 30) for cleaning drains; and $1,590.76 for Doors/Locks (Item No. 33) for re-keying of locks and replacement of certain doors at the Oceanique Development. None of these costs are part of the ARP Protocol or the Remediation Protocol, and costs incurred in connection with asphalt repair, repair of balcony decking, plumbing services to clean drains, or re-keying locks and replacing doors are not reasonable or recoverable. (R. Docs. 12061-6, 12061-14).

Neither asphalt, balcony decking, plumbing drains, nor doors and locks are affected by Chinese Drywall. Tr. 22:20-24:4; 25:21-26:5. Oceanique failed to provide any evidence that these repairs were reasonably related to the Oceanique Development remediation and the testimony of Maurice Kodsi regarding these repairs is insufficient, and is not credible in light of Mr. Kodsi's evasive testimony. Tr. 100:2-101:11; 120:15-122:8; 114:4-116:18.

39. Oceanique submitted claimed costs for Builder Overheard and Profit, Legal and Accounting (Item No. 43) in the amount of $441,909.00. This amount is not reasonable because it is greater than the reasonable industry standard and is greater than the reasonable amount of builder overheard and profit previously allowed by the Court. (R. Doc. 2713) (*Hernandez* Findings of Fact and Conclusions of Law). In *Hernandez*, the Court permitted reasonable builder overhead and profit of 20% of construction costs, which is industry standard. *Id.*; tr. 24:5-20. Further, Oceanique's claimed amount for Builder Overhead and Profit, Legal, and Accounting is not reasonable because it was applied to an inflated amount of remediation costs. Tr. 24:5-20.

40. Finally, in the Knauf Class Settlement Agreement, legal fees and expenses are paid out of a separate $160,000,000.00 fund for legal fees and expenses are not to be claimed against the Knauf Defendants through the Remediation Fund. (R. Doc. 16407-3 at § 14).

### III. CONCLUSIONS OF LAW

41. Oceanique is a Commercial Owner Class Member of the Knauf Class Settlement Agreement. (R. Doc. 16407-3 at § 1.1.2.2).

42. Because Oceanique self-remediated the Oceanique Development, it may be entitled to benefits to resolve its Remediation Claims as provided in the ARP Protocol contained within the Settlement Agreement *Id.* at § 4.3.7.1.

43.     Pursuant to the ARP Protocol, Oceanique may seek reimbursement for *reasonable* reimbursable costs. (R. Doc. 12061-6 at § IV). In determining reimbursable costs, the Court shall review whether the remediation work was reasonably consistent with the Remediation Protocol. *Id.* The Remediation Protocol identifies the scope of work for remediation of KPT Chinese Drywall properties and provides guidance for what is a reasonable reimbursable cost. (R. Doc. 12061-14).

44.     In seeking an award for Reasonable Reimbursable Costs, Oceanique was required to provide documentation in support of its claim, including itemized invoices and proof of payment, including cancelled checks, credit card statements, etc.

45.     Oceanique made a Remediation Claim for reimbursement from the Remediation Fund for Payroll ($360,000), Supervision by Maurice Kodsi ($120,000), Appliances ($274,000), Storage ($24,000), Moving/Hauling ($20,000), Engineering Letters ($14,523), Interest on Property ($200,000), Interest on Construction Costs ($220,954) Condo Fees and Real Estate Taxes ($350,000), and Punch/Warranty/Reserve/Contingency ($200,000).

46.     For these items, Oceanique failed to provide any documentation sufficient to conclude these costs were actually incurred and were reasonable Reimbursable Costs. Oceanique is precluded from seeking an award for reasonable Reimbursable Costs from the Remediation Fund where there is no credible evidence that the costs were incurred. Accordingly, these undocumented items are not reimbursable to Oceanique.

47.     As a Commercial Owner Class Member, Oceanique is bound by the Remediation Protocol and is not entitled to obtain Other Covered Expenses from the Remediation Fund in the form of a lump sum payment. (R. Docs. 12061-6 at § V, 16407-3 at § 4.3.1.1).

48. Oceanique's Remediation Claim to the Remediation Fund for Utilities – Florida Power & Light ($15,000) and Utilities – Water and Sewers ($12,000) are Other Covered Expenses.

49. The Remediation Fund will pay only *Residential* Owners a lump sum payment for Other Covered Expenses. (R. Doc. 16407-3 at § 4.3.1.1). Oceanique is a Commercial Owner Class Member and may not obtain benefits from the Remediation Fund for Other Covered Expenses, including utility expenses.

50. Oceanique's Remediation Claim to the Remediation Fund includes claims for shutter cranks reinstallation ($3,060), Scratched/Delaminate Glass ($11,308.19), Asphalt Repair ($7,200), Redo Decks ($6,716.01), Plumbing Repairs ($3,726.73), and Door/Lock Repair ($1,590.76).

51. In determining Reimbursable Costs, the court shall employ certain criteria including, but not limited to: (1) whether the work was consistent with the Remediation Protocol; (2) whether the costs are attributable to contractor double billing, waste, or fraud; and (3) whether the costs are attributable to upgrades. (R. Doc. 12061-6 at § IV).

52. Shutter crank reinstallation, scratched and delaminated glass, asphalt repair, recompletion of balcony decks, plumbing repairs, and rekeying of locks and replacing doors are not consistent with or covered by the Remediation Protocol. Scratched or delaminated glass is also attributable to contractor waste. (R. Docs. 12061-6 at § IV, 12061-14). Therefore, these items are not reimbursable to Oceanique as reasonable Reimbursable Costs.

53. Within MDL 2047, this Court has already considered and provided for 10% builder overhead and 10% builder profit, which is industry standard. (R. Doc. 2713).

Accordingly, Oceanique is limited to Builder Overhead and Profit equaling 20% of the Court-determined reasonable remediation costs.

54. Finally, because the Knauf Class Settlement Agreement has a separate capped fund for the payment of all attorney's fees, Oceanique is precluded from recovering any legal fees through the Remediation Fund for its Already Remediated Property Remediation Claim. (R. Doc. 16407-3 at § 14).

## IV.   CONCLUSION

Taking into account deductions for claimed amounts unsupported by documentation, non-protocol items, and Other Covered Expenses, the Court finds that Oceanique's reasonable remediation costs are $895,899.15.  Applying 20% to the reasonable remediation costs results in Builder Profit and Overhead in the amount of $179,179.83.  Oceanique's Remediation Claim award must be reduced by the KPT Drywall Precentage, which this Court previously set at 60%. Therefore, in connection with its Remediation Claim under the Knauf Class Settlement Agreement, Oceanique is awarded reasonable Reimbursable Costs in the amount of **$645,047.39**.

Below is a summary of the award:

| No. | Item | Claimed Cost ($) | Awarded Cost ($) |
|---|---|---|---|
| 1 | Payroll | 360,000.00 | 0.00 |
| 2 | MK Supervision | 120,000.00 | 0.00 |
| 3 | Appliances | 274,000.00 | 0.00 |
| 4 | Trim/Paint Labor – Kobi | 156,580.00 | 156,580.00 |
| 5 | DW Labor | 130,746.74 | 130,746.74 |
| 6 | DW Material | 85,592.59 | 85,592.59 |
| 7 | A/C Mat'l & Labor | 80,452.41 | 80,452.41 |
| 8 | Trim Material | 70,154.18 | 70,154.18 |
| 9 | Floor Covering | 61,701.86 | 61,701.86 |
| 10 | Temp Labor | 50,733.38 | 50,733.38 |
| 11 | Granit | 43,432.28 | 43,432.28 |
| 12 | Paint Material | 42,807.82 | 42,807.82 |
| 13 | Trim/Paint Labor – Charlie | 38,550.00 | 35,490.00 |
| 14 | Hauling/Removal Costs | 32,124.84 | 32,124.84 |
| 15 | Mirror | 31,314.25 | 31,314.25 |
| 16 | Storage | 24,000.00 | 0.00 |
| 17 | Home Depot | 23,637.41 | 23,637.41 |
| 18 | Moving/Hauling | 20,000.00 | 0.00 |
| 19 | Utilities – FPL | 15,000.00 | 0.00 |
| 20 | Engineer Letters | 14,523.00 | 0.00 |

| 21 | Permit Fees | 13,687.00 | 15,075.00 |
|---|---|---|---|
| 22 | Utilities – Water/Sewer | 12,000.00 | 0.00 |
| 23 | Scratched/Delaminate Glass | 11,308.19 | 0.00 |
| 24 | Lowes | 10,894.19 | 10,894.19 |
| 25 | Asphalt Repair | 7,200.00 | 0.00 |
| 26 | Redo Decks | 6,716.01 | 0.00 |
| 27 | Energy Calcs | 6,660.00 | 6,660.00 |
| 28 | Crane | 6,075.00 | 6,075.00 |
| 29 | Fire Sprinkler Repairs | 5,259.79 | 5,259.79 |
| 30 | Plumbing Repairs | 3,726.73 | 0.00 |
| 31 | Sea Coast Supply | 2,422.67 | 2,422.67 |
| 32 | Plumbing Fixtures | 2,122.00 | 2,122.00 |
| 33 | Door/Locks Repair | 1,590.76 | 0.00 |
| 34 | Electrical | 637.63 | 637.63 |
| 35 | Misc | 635.11 | 635.11 |
| 36 | Elevator Repair | 550.00 | 550.00 |
| 37 | A/C Grills | 326.14 | 326.14 |
| 38 | Blueprints | 155.97 | 155.97 |
| 39 | Portalet | 151.27 | 151.27 |
| 40 | Equipment Rental | 67.62 | 67.62 |
| 41 | Tub Repairs | 60.00 | 60.00 |
| 42 | NOC Fees | 39.00 | 39.00 |
| SUBTOTAL | SUBTOTAL | 1,767,635.84 | 895,899.15 |
| 43 | Bldr Profit/Overhead/Legal/ACCTG – 25% | 441,909.00 | 179,179.83 |
| 44 | Interest on Property | 200,000.00 | 0.00 |
| 45 | Interest on Construction Costs | 220,954.00 | 0.00 |
| 46 | Condo Fees & Re Taxes | 350,000.00 | 0.00 |
| 47 | Punch Out/Warranty/Reserve/Contigency | 200,000.00 | 0.00 |
| TOTAL | TOTAL REIMBURSABLE COST | 3,180,498.84 | 1,075,078.98 |
| KPT % | 60% | | |
| | OCEANIQUE'S REIMBURSABLE COSTS | 1,908,299.30 | **645,047.39** |

New Orleans, Louisiana, this 20th day of January, 2016.

_____
UNITED STATES DISTRICT JUDGE