**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: *Rochelle and Jose Abner, et al. v. Taishan Gypsum Co., Ltd. F/K/A Shandong Taihe Dongxin Co., Ltd., et al.,* No. 11-3094 (E.D. La.). | |

**MEMORANDUM OF LAW OF DEFENDANTS BEIJING NEW BUILDING MATERIALS PUBLIC LIMITED COMPANY AND BEIJING NEW BUILDING MATERIAL (GROUP) CO., LTD.'S IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO RULES 12(b)(2), 12(b)(5), 12(b)(6), 8, and 9(b)**

## TABLE OF CONTENTS

**Page**

PENDING RULE 12(b)(2) MOTIONS ............................................................................ 1

INTRODUCTION ....................................................................................................... 1

PROCEDURAL POSTURE ......................................................................................... 5

FACTUAL BACKGROUND ....................................................................................... 7

    A.    BNBM PLC and BNBM Group Have Not Conducted Business in
California ........................................................................................................ 7

    B.    Neither BNBM PLC Nor BNBM Group Injured Anyone in California .............. 11

    C.    Taishan Is Not An Alter Ego of Either BNBM PLC or BNBM Group ............... 12

ARGUMENT .......................................................................................................... 13

I.     BNBM PLC AND BNBM GROUP ARE NOT SUBJECT TO JURISDICTION
IN CALIFORNIA ............................................................................................. 13

    A.    BNBM PLC and BNBM Group Do Not Have Sufficient "Minimum
Contacts" with California To Establish Long Arm Jurisdiction or Satisfy
Due Process .................................................................................................. 13

    B.    Taishan's Purported Contacts Cannot Be Imputed To BNBM PLC or
BNBM Group ................................................................................................ 15

        1.    Plaintiffs Do Not Adequately Plead Alter Ego ......................................... 16

        2.    The Evidence Demonstrates That BNBM PLC and BNBM Group
Are Not Alter Egos of Taishan or of One Another .................................... 18

    C.    BNBM of America Does Not Provide a Basis for Exercising Jurisdiction .......... 20

II.    THE COURT SHOULD DISMISS THIS DUPLICATIVE LITIGATION ..................... 21

III.   PLAINTIFFS DO NOT STATE A PLAUSIBLE CLAIM FOR RELIEF
AGAINST BNBM PLC AND BNBM GROUP AS REQUIRED BY RULE
12(b)(6) ....................................................................................................... 22

    A.    Plaintiffs Do Not Allege Any Actual Injury Caused By BNBM PLC or
BNBM Group ................................................................................................ 22

    B.    Plaintiffs' Claims Are Inadequately Pled with Conclusory Allegations
That Lump All Defendants Together ................................................................ 25

    C.    Plaintiffs' Louisiana Statutory Claims (Causes of Action V and VI) Do
Not State A Claim Upon Which Relief Can Be Granted ...................................... 26

IV.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER ANY OF THE STATE
CONSUMER PROTECTION STATUTES CITED IN THE COMPLAINT
(CAUSE OF ACTION IX) ................................................................................. 28

A.       Plaintiffs Cannot Assert Claims Under Consumer Protection Statutes of States In Which No Named Plaintiff Resides or Was Injured, And Cannot Bring Claims as a Class .................................................................................... 28

B.       Plaintiffs Fail To Meet The Rule 9(b) Pleading Standard Applicable To Their Consumer Protection Act Claims.................................................................. 29

V.       PLAINTIFFS' COMMON LAW CLAIMS MUST BE DISMISSED ............................ 30

A.       Plaintiffs Fail To State A Claim For Breach of Express And/Or Implied Warranties (Cause of Action IV) ........................................................................ 31

B.       Plaintiffs Fail To State A Claim for Negligence, Negligence Per Se, Strict Liability or Private Nuisance (Causes of Action I-III, VII)................................. 33

C.       Plaintiffs' Negligence Per Se (Count II), Unjust Enrichment (Count VIII) and Injunctive Relief/Medical Monitoring (Count X) Claims Should Be Dismissed Because They Are Not Recognized Causes of Action ........................ 34

1.       Plaintiffs Cannot Bring an Independent "Negligence Per Se" Claim ....... 34

2.       Plaintiffs Fail To State A Claim For Unjust Enrichment (Cause of Action VIII) ............................................................................................... 35

3.       Plaintiffs Cannot Bring an Independent "Injunctive Relief And Medical Monitoring" Claim.................................................................... 35

VI.      PLAINTIFFS' CLAIMS ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS............................................................................................................ 36

VII.     THE COMPLAINT SHOULD BE DISMISSED BECAUSE BNBM PLC AND BNBM GROUP HAVE NOT PROPERLY BEEN SERVED WITH PROCESS............ 39

CONCLUSION.......................................................................................................................... 39

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Actimmune Marketing Litig.*,
  No. C 08-02376, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009)...................................28, 29, 35

*In re Amerijet Int'l, Inc.*,
  785 F.3d 967 (5th Cir. 2015) ...............................................................................................22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................24, 25, 27

*Atuahene v. City of Hartford*,
  10 F. App'x 33 (2d Cir. 2001) ..............................................................................................25

*Balthazar v. Apple, Inc.*,
  No. CV-10-3231-JF, 2011 WL 3795013 (N.D. Cal. Aug. 26, 2011) .....................................32

*Bearry v. Beech Aircraft Corp.*,
  818 F.2d 370 (5th Cir. 1987) ...............................................................................................14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................................4, 25, 27

*Brand Coupon Network LLC v. Catalina Mktg. Corp.*,
  No. 11–00556, 2014 WL 6674034 (M.D. La. Nov. 24, 2014) ...............................................30

*Brooks v. Menifee*,
  269 F. App'x 441 (5th Cir. 2008) .........................................................................................37

*Brown v. Sibley*,
  650 F.2d 760 (5th Cir. 1981) ...............................................................................................23

*Cardoza v. Pat Clark Pontiac, Inc.*,
  No. E054120, 2013 WL 2650293 (Cal. Ct. App. June 13, 2013)...........................................15

*Carretti v. Italpast*,
  101 Cal. App. 4th 1236 (2002) ........................................................................................14, 15

*In re Chocolate Confectionary Antitrust Litig.*,
  602 F. Supp. 2d 538 (M.D. Pa. 2009)...................................................................................30

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008) .............................................................................................32

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) ...........................................................................23

*Del Castillo v. PMI Holdings N. Am. Inc.*,
No. 4:14-CV-3435, 2015 WL 3833447 (S.D. Tex. June 22, 2015).........................25

*Dinosaur Dev., Inc. v. White*,
216 Cal. App. 3d 1310 (1989) ...........................................................................35

*Doe v. Unocal Corp.*,
248 F.3d 915 (9th Cir. 2001) ...........................................................16, 17, 18, 19

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
536 F. Supp. 2d 1129 (N.D. Cal. 2008) .............................................................31

*Everett v. Mountains Recreation and Conservancy Auth.*,
239 Cal. App. 4th 541 (2015) ...........................................................................35

*Griffin v. Dugger*,
823 F.2d 1476 (11th Cir. 1987) ....................................................................23, 27

*H.N. & Frances C. Berger Found. v. Perez*,
218 Cal. App. 4th 37 (2013) .............................................................................33

*Hall v. Variable Annuity Life Ins. Co.*,
727 F.3d 372 (5th Cir. 2013) ............................................................................36

*Hamilton Beach Brands, Inc. v. Metric & Inch Tools, Inc.*,
614 F. Supp. 2d 1080 (C.D. Cal. 2009) .........................................................16, 19

*Hillard v. U.S.*,
No. 06-2576, 2007 WL 647292 (E.D. La. Feb. 28, 2007).....................................28

*Holmes v. Johnson & Johnson*,
617 F.Appx. 639 (9th Cir. 2015).......................................................................29

*Iberia Credit Bureau, Inc., v. Cingular Wireless LLC*,
379 F.3d 159 (5th Cir. 2004) ............................................................................29

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945)........................................................................................15

*Jacobs v Prudential Ins. Co. of Am.*,
F. Supp. 3d., No. 13–0146, 2015 WL 4621743 (E.D. La. Jul. 31, 2015) ...............37

*Jefferson v. Lead Indus. Ass'n, Inc.*,
930 F. Supp. 241 (E.D. La. 1996).....................................................................28

*Johnston v. Multidata Sys. Int'l Corp.*,
    523 F.3d 602 (5th Cir. 2008) ................................................................................14

*Jordan v. Sony BMG Music Entm't, Inc.*,
    637 F. Supp. 2d 442 (S.D. Tex. 2008) ...................................................................37

*Kan v. OneWest Bank, FSB*,
    823 F. Supp. 2d 464 (W.D. Tex. 2011)...................................................................24

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) ................................................................................24

*Kent v. Hewlett–Packard Co.*,
    No. 09–cv–05341–JF, 2010 WL 2681767 (N.D. Cal. July 6, 2010) ......................32

*Koschene v. Hutchinson*,
    No. CL06-476, 2007 WL 6013037 (Va. Cir. Ct. Mar. 16, 2007) ...........................30

*Kramer Motors, Inc. v. British Leyland, Ltd.*,
    628 F.2d 1175 (9th Cir. 1980) ..............................................................................17

*Lomboy v. SCME Mortg. Bankers*,
    No. C-09-1160, 2009 WL 1457738 (N.D. Cal. May 26, 2009)...............................35

*McGuire v. BMW of N. Am., LLC*,
    No. 13-7356, 2014 WL 2566132 (D.N.J. June 6, 2014)........................................23

*Melchior v. New Line Prod., Inc.*,
    106 Cal. App. 4th 779 (2003) ...............................................................................35

*In re Niaspan Antitrust Litig.*,
    42 F. Supp. 3d 735 (E.D. Pa. 2014) ......................................................................23

*Norris v. Hearst Trust*,
    500 F.3d 454 (5th Cir. 2007) ................................................................................23

*Oliney v. Gardner*,
    771 F.2d 856 (5th Cir. 1985) ................................................................................22

*Orosa v. Therakos, Inc.*,
    No. C-11-2143, 2011 WL 3667485 (N.D. Cal. Aug. 22, 2011) ...........................16, 17, 18, 19

*In re Packaged Ice Antitrust Litig.*,
    779 F. Supp. 2d 642 (E.D. Mich. 2011)......................................................23, 27, 28, 30

*Paramount Farms Inter. LLC v. Ventilex B.V.*,
    500 F. App'x. 586 (9th Cir. 2012) .........................................................................32

*Pavlovich v. Superior Court*,
58 P.3d 2 (Cal. 2002) ........................................................................................13, 14

*In re Pharm. Indus. Average Wholesale Price Litig.*,
230 F.R.D. 61 (D. Mass. 2005) ...................................................................................29

*Pitre v. Yamaha Motor Co., Ltd.*,
51 F. Supp. 3d 644 (E.D. La. 2014) ............................................................................28

*Potter v. Firestone Tire & Rubber Co.*,
863 P.2d 795 (Cal. 1993) .............................................................................................35

*Prejean v. Sonatrach, Inc.*,
652 F.2d 1260 (5th Cir. 1981) .....................................................................................15

*Quiroz v. Seventh Avenue Center*,
140 Cal. App. 4th 1256 (2006) ....................................................................................34

*Rutherford v. Equifax*,
No. 10-1988, 2011 WL 3606964 (E.D. La. August 16, 2011) ....................................25

*S. Snow Mfg. Co., Inc. v. SnoWizard Holdings, Inc.*,
921 F. Supp. 2d 527 (E.D. La. 2013) ..........................................................................22

*Scianneaux v. St. Jude Med. S.C., Inc.*,
961 F. Supp. 2d 808 (E.D. La. 2013) ..........................................................................24

*Shisler v. Sanfer Sports Cars, Inc.*,
146 Cal. App. 4th 1254 (2006) ...............................................................................13, 14

*Sonora Diamond Corp. v. Superior Court*,
83 Cal. App. 4th 523 (2000) ...................................................................................16, 20

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV
Television Litig.*,
758 F. Supp. 2d 1077 (S.D. Cal. 2010) ...................................................................32, 33

*Stearns v. Select Comfort Retail Corp.*,
763 F. Supp. 2d 1128 (N.D. Cal. 2010) .......................................................................31

*Tomaselli v. Transam. Ins. Co.*,
25 Cal. App. 4th 1269 (1994) ......................................................................................19

*Univ. Fed. Credit Union v. Grayson*,
878 So. 2d 280 (Ala. 2003) ..........................................................................................29

*Valencia v. Volkswagen Grp. of Am. Inc.*,
No. 15-CV-00887, 2015 WL 4747533 (N.D. Cal. Aug. 11, 2015) ............................33

*In re Vioxx Prod. Liab. Litig.*,
    478 F. Supp. 2d 897 (E.D. La. 2007) ................................................................36

*In re Vioxx Prod. Liab. Litig.*,
    522 F. Supp. 2d 799 (E.D. La. 2007) ................................................................38

*W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*,
    751 F.2d 721 (5th Cir. 1985) ...........................................................................22

**Statutes**

ALA. CODE § 8-19-10 ................................................................................................29

ALA. CODE § 8-19-14 ................................................................................................36

CAL. BUS. & PROF. CODE § 17208 ...........................................................................36

CAL. CIV. CODE § 1783 .............................................................................................36

CAL. CIV. PROC. CODE § 335.1 .................................................................................37

CAL. CIV. PROC. CODE § 338 ....................................................................................37

CAL. CIV. PROC. CODE § 410.10 ...............................................................................13

CAL. COM. CODE § 2725 ..........................................................................................37

FLA. STAT. § 95.11(3)(f) ...........................................................................................36

LA. CIV. CODE art. 2520 and art. 2545 ....................................................................26

LA. CIV. CODE art. 2534 ...........................................................................................36

LA. CIV. CODE art. 3492 ...........................................................................................36

La. Rev. Stat. Ann. § 9:2800.51, *et seq.* .................................................................27

La. Rev. Stat. Ann. § 9:2800.52 ...............................................................................28

La. Rev. Stat. Ann. § 51:1409 (A) ............................................................................29

La. Rev. Stat. Ann. § 3492 ........................................................................................36

MISS. CODE ANN. § 15-1-49 ......................................................................................36

MISS. CODE ANN. § 75-24-15(1) ...............................................................................28

N.C. GEN. STAT. § 75-16.2 ........................................................................................36

TEX. BUS. & COM. CODE § 17.565 ...................................................................................................36

VA. CODE § 59.1-204.1(A).............................................................................................................36

Defendants Beijing New Building Materials Public Limited Company ("BNBM PLC") and Beijing New Building Material (Group) Co., Ltd. ("BNBM Group") respectfully submit this memorandum in support of their motion, made pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), 12(b)(6), 8, and 9(b), to dismiss the Complaint (Rec. Doc. 1-1, No. 2:11-cv-03094) for lack of personal jurisdiction, failure of service, and failure to state a claim upon which relief can be granted.

## PENDING RULE 12(b)(2) MOTIONS

The Court has scheduled argument for February 18, 2016 on the fully briefed BNBM PLC and BNBM Group motions to dismiss for lack of jurisdiction and failure of service in the *Amorin*, *Wiltz*, *Gross* and *Germano* cases.  The *Abner* case shares many of the jurisdictional infirmities of those cases, and if the motions are successful the Complaint in this action necessarily will have to be dismissed as well.[1]  This memorandum accordingly does not present in full the jurisdictional arguments that the Court already has before it.  It does raise, however, additional grounds for dismissal pursuant to Rules 12(b)(2), 12(b)(6), 9(b) and 8, which we respectfully submit need not be addressed until the pending motions are resolved.

## INTRODUCTION

Plaintiffs filed the *Abner* Complaint in November, 2011 in federal court in California.  It was transferred to the MDL that December.  Plaintiffs then allowed the case to lie dormant for

---

[1]  BNBM PLC and BNBM Group hereby incorporate by reference the facts and arguments set forth in the memoranda of law, declarations and exhibits submitted by BNBM PLC and BNBM Group in support of their motions to dismiss the class actions for lack of jurisdiction and failure of service.  *See* Rec. Doc. 19631 and 19664, including Memorandum of Beijing New Building Materials Public Limited Company in Support of Its Motion to Dismiss the Complaints Pursuant to Rules 12(b)(2) and 12(b)(5) Rec. Doc. 19631-3 ("BNBM PLC MDL Dismissal Memorandum,") and Memorandum of Beijing New Building Materials (Group) Co., Ltd. in Support of Its Motion to Dismiss the Complaints Pursuant to Rules 12(b)(2) and 12(b)(5) Rec. Doc. 19664-3 ("BNBM Group MDL Dismissal Memorandum").

four years.  They did not attempt to serve BNBM PLC or BNBM Group until December, 2015.

They have offered no explanation for their long slumber or abrupt awakening.  Their decision to

revive this action now is particularly inexplicable because the Complaint repeats, nearly

verbatim, the allegations and causes of action presented in the *Amorin* complaints that are the

subject of BNBM PLC's and BNBM Group's pending motions to dismiss.  Even more

inexplicable, some of the *Abner* plaintiffs are the same people who filed the copycat *Amorin*

class action complaints, or were part of the classes certified in Virginia, Louisiana and Florida.[2]

Plaintiffs' original choice of a California court for this complaint is equally inexplicable.

With but a few exceptions, Plaintiffs are not Californians. And *none* of the Californians in *Abner*

claim to have been injured by drywall manufactured or sold by BNBM PLC or BNBM Group.

Indeed, the 29,324 profile forms produced in the MDL do not include a single Californian who

identifies BNBM drywall.  Not surprisingly, then, the *Abner* Complaint does not allege that

Plaintiffs purchased in California drywall sold or made by BNBM PLC or BNBM Group, used

BNBM wallboard in California, or were harmed by it there.

The reason the requisite jurisdictional allegations are missing is because, as we now have

confirmed, there is no evidence to support them.  In the last six months substantial jurisdictional

discovery has been taken.  As the profile forms reflect, BNBM PLC-manufactured drywall

harmed no one in California.  This is to be expected, given that the U.S. Consumer Product

Safety Commission ("CPSC") found that BNBM PLC's Dragon Brand drywall "had low or no

---

[2]   The *Amorin/Abner* Plaintiffs also have never offered a justification for filing four identical
actions in four different federal courts, or how those federal courts will deal with the myriad
complexities of this needlessly baroque procedure if the cases survive dismissal and are
remanded for trial after completion of pre-trial MDL procedures.  The only plausible explanation
is trial-court forum shopping.

detectable emissions of hydrogen sulfide" and was comparable to "drywall samples that were manufactured domestically."[3]

Moreover, BNBM PLC made only two sales of drywall to only one California purchaser, Great Western Building Materials, Inc. ("Great Western"), in November, 2005 and February, 2006.  The Plaintiffs' Steering Committee ("PSC") deposed Great Western.  Its owner, president, chief executive officer and 30(b)(6) witness, Larry Rogers, testified that the purchases were initiated by him through a supplier (which was not affiliated with BNBM) during the American drywall shortage.  All contacts went through the supplier and, with the exception of one fax, Mr. Rogers never communicated with BNBM PLC.[4]  The facts about these sales have been corroborated by BNBM PLC's former General Manager for International Business.[5]  The PSC took no other depositions concerning California contacts, and after six months of jurisdictional discovery the PSC has adduced no contrary evidence.  Equally uncontradicted is the evidence that BNBM Group did not manufacture drywall, or sell drywall to the United States, during the 2005-2006 time period relevant to this matter.  Neither company had  sufficient minimum contacts to establish jurisdiction under California's long-arm statute or satisfy Constitutional due process.

The *Abner* Plaintiffs have pled alter ego liability in only the most conclusory fashion, but we presume will nevertheless seek to impute to BNBM PLC and BNBM Group the California

---

[3] CONSUMER PROT. SAFETY BD., CPSC IDENTIFIES MANUFACTURERS OF PROBLEM DRYWALL MADE IN CHINA, RELEASE NO. 10-243 (May 25, 2010), attached as Exhibit 42 to Rec. Doc. 19631 (hereinafter "CPSC Release").

[4]  Transcript of the deposition of Larry Rogers, 30(b)(6) witness for Great Western, August 4, 2015 at 51:12-14, 65:1-11, 66:3-67:7, 70:18-71:3, 75:18-23, 76:20-77:23.  A complete copy of the transcript is attached as Exhibit 1 (hereinafter, "Rogers Tr.").

[5]  Declaration of Kai Cai ¶¶ 10(a)-(e), 11, attached as Exhibit 25 to Rec. Doc. 19631 (hereinafter "Cai Decl.").

jurisdictional contacts of Taishan Gypsum Co, Ltd. ("Taishan").  For the reasons explained in the pending MDL Rule 12(b)(2) motion papers, overwhelming evidence shows that Taishan's jurisdictional contacts cannot be imputed to BNBM PLC or BNBM Group.  Given the Court's orders, the *Abner* Plaintiffs cannot seek additional jurisdictional discovery.  Nor is additional discovery unique to *Abner* needed to supplement the record.

The Complaint also fails to state a claim upon which relief can be granted.  The Complaint does not specify how Plaintiffs were harmed and what any particular defendant did to harm them.  Plaintiffs' formulaic recitations that they were "harmed" by "Defendants" do not satisfy the pleading standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), which requires a plaintiff to come forward with more than conclusory allegations in order to state a plausible claim.  None of Plaintiffs' claims are pled with the required specificity, and several of their claims are not recognized as independent torts.  The claims of named plaintiffs, who were not parties to earlier actions, were not timely even four years ago.  These unique *Abner* Plaintiffs filed suit more than five years after BNBM PLC drywall was last sold in the United States, Complaint's which cannot be reconciled with the allegations that the defective drywall off-gases and thus causes "rapid sulfidation and damage to personal property."[6]  None of the putative causes of action have a statute of limitations longer than four years.

Given that the threshold jurisdictional (including alter-ego) issues relevant to *Abner* will be decided by the pending MDL jurisdictional motions to dismiss, and that *Abner* raises no new factual allegations or substantive legal issues, there is no reason to allow this duplicative action to continue.  BNBM PLC and BNBM Group respectfully request the Court to dismiss the Complaint as against them.

---

[6] Complaint ¶¶ 118, 122.

**PROCEDURAL POSTURE**

Plaintiffs filed the Complaint in the U.S. District Court for the Central District of California on or about November 18, 2011.[7]  The case was transferred to this Court as part of the ongoing MDL on or about December 28, 2011.[8]  Plaintiffs did not attempt to serve the Complaint on either BNBM PLC or BNBM Group, and the action sat completely dormant until last month.  Plaintiffs served BNBM PLC and BNBM Group by mailing a copy of the summons and Complaint to counsel representing them in other actions in this MDL.[9]

Substantively, the Complaint is identical to those filed in several other putative class actions, including the *Amorin* actions filed in federal courts in Virginia, Louisiana and Florida, and *Brooke v. State-Owned Assets Supervision and Administration of the State Council, et al.*, No. 2:15-cv-04127, filed in this Court in November, 2015, the latter of which BNBM PLC and BNBM Group have concurrently moved to dismiss.  And although this copycat complaint has been filed in California, it purports to assert state law claims from across the country.  Plaintiffs allege Louisiana statutory claims for Redhibition (Count V), brought on behalf of Louisiana plaintiffs only, and violation of the Louisiana Products Liability Act (Count VI), oddly brought on behalf of all plaintiffs.  Plaintiffs bring claims for the violation of the Consumer Protection Statutes of North Carolina, Texas, Mississippi, Louisiana, Alabama, Florida, Virginia, and California—even though none of the named plaintiffs reside in North Carolina, Texas or Mississippi.  The Complaint also attempts to plead a variety of common law claims.

---

[7] *See* Complaint.

[8] Rec. Doc. 12084.

[9]  Plaintiffs effected this alternative service pursuant to Court order.  BNBM PLC and BNBM Group respectfully disagree with the Court's ruling and hereby preserve their arguments on this issue.  Rec. Doc. 19713.

Most of the named plaintiffs are not new litigants and have sought redress either as parties to other actions that are part of this MDL, or as part of the *Amorin* class the Court certified in September 2014, or both.  The named plaintiffs are residents of Alabama, California, Florida, Louisiana and Virginia who claim to have "incurred damages caused by the drywall distributed by the Taishan Defendants," and who purport to represent "similarly situated individuals."[10]  The Complaint offers no specifics as to what kind of "damages" any named plaintiff allegedly suffered or the amount of damages incurred.  Every plaintiff is described in a paragraph identically alleging that "Plaintiffs have incurred damages caused by the drywall distributed by the Taishan Defendants and are participating as class representatives for similarly situated individuals."[11]  No more detail than that is given about the harm to any plaintiff.

No plaintiff specifically alleges that drywall made or sold by BNBM PLC or BNBM Group harmed him or her.  Rather, Plaintiffs allege that Taishan is "owned and/or controlled by" BNBM PLC, and in that capacity BNBM PLC "caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold."[12]  BNBM PLC allegedly exerted this "control" largely through Tongchun Jia, Taishan's Chairman.[13]  The Complaint offers no specifics as to when or how BNBM PLC exerted this allegedly improper control through Mr. Jia.  As explained in the MDL jurisdictional motions, it is uncontroverted that Mr. Jia was part of the original management and ownership of Taishan before BNBM PLC

---

[10] Complaint ¶¶ 5-18.

[11] *See id.*

[12] *Id.* ¶ 40.

[13] *Id.* ¶ 41.

purchased its first shares, and was not placed into Taishan by BNBM PLC or CNBM or anyone else.[14]

As to BNBM Group, the Complaint alleges only that it "owned and/or controlled" BNBM PLC, and "caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold."[15]  But as explained in the jurisdictional briefs, ownership or control is not, without a lot more, grounds to impute jurisdictional contacts under an alter ego theory.  Moreover, BNBM Group did not own or control BNBM PLC during the relevant period, or since.  And after six months of jurisdictional discovery, there is no evidence to justify the exercise of jurisdiction over BNBM Group for "caus[ing] the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold," either directly or through its relationship to BNBM PLC in the CNBM business group.

## FACTUAL BACKGROUND

### A.    BNBM PLC and BNBM Group Have Not Conducted Business in California

The facts relevant to this 12(b)(2) motion are described in BNBM PLC's and BNBM Group's previously filed motions to dismiss, which we adopt and incorporate in full.  We discuss briefly here some of the key facts that demonstrate BNBM PLC's and BNBM Group's lack of contact with California.

Neither BNBM PLC nor BNBM Group has conducted business in California.  Neither company has registered to do business, had an office, paid taxes, or owned or leased property in California or the balance of the United States for that matter.  Neither company has ever marketed or advertised drywall in California.  No sales representatives have ever traveled to

---

[14]  *See* BNBM PLC MDL Dismissal Memorandum at 22-34; BNBM Group MDL Dismissal Memorandum at 11-14.

[15]  *Id.* ¶ 43.

California or otherwise reached out to California to market or sell drywall (or any other product).[16]

Although in December, 2005 and February, 2006 BNBM PLC made two drywall sales to California customer Great Western, undisputed facts developed in the last six months of discovery show that those transactions are insufficient to establish jurisdiction in California over either BNBM PLC or BNBM Group.  BNBM PLC did not solicit either sale.  Rather, Great Western reached out to BNBM PLC on its own initiative, following a trip to China arranged by one of Great Western's suppliers:

> Q:  Okay. You didn't receive an invitation to go to China from BNBM, did you?
>
> A:  No.
>
> Q:  Prior to going to China, you were not familiar with BNBM?
>
> A:  No.
>
> Q:  Had your suppliers at USA Wire told you that you would be meeting with people from BNBM prior to your departure for China?
>
> A:  . . . I don't remember hearing the name BNBM prior to the trip.
>
> . . . .
>
> Q:  After you returned from China, nobody from BNBM reached out to contact you, either directly or indirectly, to solicit business following up on your meeting; correct?
>
> A:  I don't remember any contact with them.
>
> . . . .
>
> Q:  And am I correct that sometime towards the end of 2005, it was you, in fact, who reached out through USA Wire to inquire of BNBM about the purchase of drywall; correct?

---

[16] *See* Declaration of Xianfeng Yu at ¶¶ 3-14, 18-21, attached as Exhibit 13 to Rec. Doc. 19664 (hereinafter "Yu Decl."); Cai Decl. ¶¶ 3-11.

A:  I believe that's the way it happened.

Q:  And am I correct that, again, with respect to the second purchase of drywall . . . sometime in 2006, from BNBM, again, that was as a result of you reaching out to BNBM through USA Wire, not as a result of BNBM soliciting additional business from you?

A:  Correct.[17]

No BNBM PLC employees visited America in connection with either sale.[18]  The contracts were performed in China, and Great Western took possession of the drywall in China.[19] Great Western designated California as the destination for the drywall shipments, but did not inform BNBM PLC where it intended to sell the drywall it purchased.[20]  Other than possibly a one-page fax BNBM PLC sent to confirm that the drywall had shipped, Great Western "had no direct communications with BNBM in connection with either of the two purchases of drywall," and the parties did not discuss either additional transactions or a broader, long-term business relationship.[21]  The sales were a *de minimis* portion of BNBM PLC's business; BNBM PLC sells 99% of its product in China.[22]  BNBM PLC made no subsequent sales to Great Western or any

---

[17] Rogers Tr. 65:1-11, 66:3-20.

[18] Cai Decl. ¶¶ 6, 7, 10(a)-(e); Rogers Tr. 66:21-67:7.

[19] Cai Decl. ¶¶ 6-9, 10(b); Great Western Building Materials Purchase Agreements, respective Bates ranges BNBMPLC0007430-7433 and 7441-7444 at 7430-7431 and 7441-7444, respectively (Pricing terms are "CFR Los Angeles" and "Port of Shipment: Tinajin, China"), attached as Exhibits 29 and 30 to Rec. Doc. 19631 (hereinafter collectively cited "Great Western Agreements").

[20] Rogers Tr. 70:18-71:3; Chen Tr. 547:14-549:7; Cai Decl. ¶¶ 10(a), (c)-(e).

[21] Rogers Tr. 51:12-14, 75:18-23, 76:20-77:23.

[22] Chen Tr. 543:12-17.

other customer in California.[23]  Larry Rogers of Great Western specifically testified that his

company received no complaints about BNBM PLC's drywall.[24]

 BNBM Group, which acted as export agent for one of those two transactions, had no

contact with Great Western whatsoever.[25]  BNBM Group's sole responsibilities under its export

agency agreement with BNBM PLC were to "supply valid verification documents, and to

conduct exportation in [its] name," to process the "customs declaration, cargo dispatch,

chartering transport and commodity inspection etc.," and to "finish the verification and tax

refund process as soon as possible."[26]

 BNBM Group was not involved in negotiating the sales to Great Western.  Rather, under

the export agency agreement BNBM PLC remained "responsible for negotiating and performing

all terms of the agreement together with Purchaser (which includes main terms and additional

terms); and confirming the right product, its specification, its quantity, and contacting factories

for supplying goods."[27]  The relevant aspects of BNBM Group's export agency agreement with

BNBM PLC and its duties as an export agent are discussed in greater detail in BNBM Group's

MDL Dismissal Memorandum.[28]

---

[23] Cai Decl. ¶¶ 5, 10 (stating that BNBM PLC has made no drywall sales to American customers since mid-2006).

[24] Rogers Tr. 70:5-7.

[25] Yu. Decl. ¶¶ 18, 19.

[26] Great Western Export Agency Agreement, BNBMPLC0007437-7440 at -7439, attached as Exhibit 22 to Rec. Doc. 19664.

[27] Wood Nation Export Agency Agreement, BNBMPLC0007452-7455 at 7453, attached as Exhibit 20 to Rec. Doc. 19664; EAC Export Agency Agreement, BNBMPLC0007427-7429 at -7428, attached as Exhibit 21 to Rec. Doc. 19664; Great Western Export Agency Agreement at BNBMPLC0007438.

[28] Rec. Doc. 19664-1 at 10-11.

### B.      Neither BNBM PLC Nor BNBM Group Injured Anyone in California

BNBM PLC's drywall did not injure anyone in California because it was not defective. The CPSC tested BNBM PLC drywall from 2006, obtained in America, and determined that it did not have the high levels of sulfur emissions found in other drywall manufactured in China.[29] While some Chinese-manufactured drywall tested by the CPSC had high emissions levels, "[o]ther Chinese drywall samples had low or no detectable emissions of hydrogen sulfide as did the drywall samples tested that were manufactured domestically.  They include . . . Dragon Brand, Beijing New Building Materials Co. Ltd.: (2006) China . . . ."[30]  The BNBM PLC MDL Dismissal Memorandum describes the CPSC testing results and testimony from the American importers that there were no defects in the "Dragon Brand" drywall.[31]  Great Western received no complaints concerning the BNBM drywall it sold.[32]

Consistent with that evidence, the profile forms submitted by the MDL plaintiffs reflect that no resident of California claims to have been injured by drywall manufactured or sold by BNBM PLC or BNBM Group.  On April 3, 2015, BrownGreer PLC produced 23,057 plaintiff profile forms, and between April 30 and October 20 the PSC and BrownGreer served a summary spreadsheet, profile forms and inspection reports detailing 6,267 more plaintiffs.[33]  The original

---

[29] CPSC Release.

[30] *Id.*

[31] Rec. Doc. 19631-3 at 18-21.

[32] Rogers Tr. 70:5-7.

[33] June 8, 2015, Supplemental Declaration of Carolyn F. Taylor in Support of the Federal Rule of Evidence 1006 Summary of Property Owners Identifying BNBM or Dragon Brand Drywall, marked by BNBM PLC and BNBM Group as Defendants' Exhibit 28 at the June 9, 2015 damages hearing before the Court ¶¶ 3, 11-13, attached as Exhibit 45 to Rec. Doc. 19631 (hereinafter "Taylor Supp. Decl.");  Oct. 20, 2015 Supp. Profile Forms Identifying BNBM PLC Drywall, Faber, F. 0001-0007, Jagat, H. 0001-0004, Ryan, F. 0001-0004, attached as Exhibit 64 to Rec. Doc. 19631 (hereinafter "Supp. Profile Forms").

23,057 profile forms, and all of the supplemental forms and reports produced by the MDL plaintiffs, have been reviewed, and not one California property owner used the words "BNBM," "Dragon" or "Beijing" when identifying the manufacturer of the drywall found in their homes.[34] Out of the more than two dozen named plaintiffs in *Abner*, only one, Florida resident Arledys Gallardo, has submitted a profile form indicating that "BNBM" drywall was found in her house.[35]

### C.       Taishan Is Not An Alter Ego of Either BNBM PLC or BNBM Group

Plaintiffs base their jurisdictional allegations, slim as they are, on the contention that Taishan's alleged California jurisdictional contacts can be imputed to BNBM PLC and BNBM Group based on an alter ego theory.  As shown in the MDL jurisdictional memoranda, Taishan is not an alter ego of BNBM PLC or BNBM Group, and we respectfully refer the Court to pages 6-14, 22-33, and 35-68 of the BNBM PLC MDL Memorandum in support of its motion to dismiss *Amorin*, *Wiltz*, *Gross* and *Germano* cases and the evidence in support described and referenced therein.[36]  We do not want to burden the Court by repeating such evidence, given that the Court already will have ruled on the motions.

---

[34] *See* Taylor Supp. Decl. ¶ 17 and Exhibit 1, "June 8, 2015 Federal Rule of Evidence 1006 Summary Regarding Plaintiffs Identifying BNBM or Dragon Brand Drywall"; Supp. Profile Forms.

[35] *See id.*

[36] *See also* Rec. Doc. 19664-1 at 4-8, 12-16, 23-24.

## ARGUMENT

I.   **BNBM PLC AND BNBM GROUP ARE NOT SUBJECT TO JURISDICTION IN CALIFORNIA**

   A.   **BNBM PLC and BNBM Group Do Not Have Sufficient "Minimum Contacts" with California To Establish Long Arm Jurisdiction or Satisfy Due Process**

The Complaint should be dismissed under Fed. R. Civ. P. 12(b)(2).  The evidence adduced during discovery in the MDL demonstrates that neither BNBM PLC nor BNBM Group is subject to jurisdiction in California. The state's long-arm statute provides:

> A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.[37]

To satisfy due process, a defendant must have "such minimum contacts with the state that the assertion of jurisdiction does not violate 'traditional notions of fair play and substantial justice.'" *Pavlovich v. Superior Court*, 58 P.3d 2, 6 (Cal. 2002) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  A nonresident defendant is subject to personal jurisdiction in California only if a plaintiff proffers evidence of the defendant's "express aiming or intentional targeting" of the forum state.  *Id*. at 9; *Shisler v. Sanfer Sports Cars, Inc.*, 146 Cal. App. 4th 1254, 1260 (2006).

Here, BNBM PLC's two drywall sales within a two-month period to a single California customer who unilaterally initiated contact with BNBM PLC do not constitute "express aiming or intentional targeting" sufficient to satisfy due process.  As California's Court of Appeal held in *Shisler*, "a one-time transaction," where there is "no evidence that defendant ever expressly reached out to California in search of this or any other business opportunity," and "no ongoing business relationship" between plaintiff and defendant, is insufficient to confer specific

---

[37] CAL. CODE CIV. PROC. § 410.10.

jurisdiction over a foreign defendant.  *Shisler*, 146 Cal. App. 4th at 1262; *see also Carretti v. Italpast*, 101 Cal. App. 4th 1236, 1253 (2002) (no specific jurisdiction over non-resident defendant where "[t]here is no evidence that at the time of sale [defendant] knew its machines were being delivered to California, except on one occasion, and even then, it did not know if California was the ultimate destination, or just the port of entry").

BNBM PLC or BNBM Group have done nothing else to establish "minimum contacts" with California, or any other state, sufficient to satisfy Constitutional due process.  As demonstrated in BNBM PLC's and BNBM Group's pending jurisdictional motions to dismiss, neither defendant has "purposely avail[ed]" itself of the privilege of conducting activities in California, thereby invoking the benefits and protections of its laws.[38]  Instead, BNBM PLC *avoided* availing itself of the benefits of doing business in California by completing its drywall sales entirely in China, while BNBM Group made no sales whatsoever.

The importation of Dragon Brand drywall into California does not constitute sufficient minimum contacts.  Such contacts are present only when the Court "finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state."  *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987).  "[M]ere foreseeability is not enough for jurisdiction."  *Pavlovich*, 58 P.3d at 12.  Nor does the "fortuitous 'unilateral activity' of a third party" in a forum state subject a defendant to personal jurisdiction in that state."  *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 611 (5th Cir. 2008) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416-17 (1984)).  Here, any "sales to California users took place through the unilateral activity of" Great Western, and there is no "evidence of any knowledge on [BNBM

---

[38] Rec. Doc. 19631-3 at 78-84; Rec. Doc. 19664-1 at 21-23.

PLC's] part as to whether, or how often its products were resold in California." *Carretti*, 101 Cal. App. 4th at 1254.

The exercise of jurisdiction over BNBM PLC or BNBM Group would not comport with Constitutional due process for the additional reason that Plaintiffs' causes of action did not arise out of either defendant's limited contacts with California. *See Int'l Shoe*, 326 U.S. at 316. Given that not a single California resident submitted a profile form on which it claims to have been harmed by drywall sold or made by BNBM PLC or BNBM Group, Plaintiffs cannot demonstrate the requisite nexus between their claims and any alleged BNBM PLC or BNBM Group conduct directed at the State. *See Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1269 (5th Cir. 1981); *Cardoza v. Pat Clark Pontiac, Inc.*, No. E054120, 2013 WL 2650293, at *5 (Cal. Ct. App. June 13, 2013). "In a products liability case, specific personal jurisdiction cannot be established where the allegedly defective good was sold outside the forum and caused injury outside the forum, and the supplier has no other contacts with the forum." *Cardoza*, 2013 WL 2650293 at *5 (citation omitted).

### B.    Taishan's Purported Contacts Cannot Be Imputed To BNBM PLC or BNBM Group

As explained in BNBM PLC's and BNBM Group's MDL motions to dismiss, Taishan's alleged contacts with California cannot be imputed to BNBM PLC or BNBM Group.[39]  Any veil piercing or alter-ego analysis must be conducted pursuant to Chinese law, which does not permit

---

[39] The Complaint does not allege that CNBM had any direct contacts with California, therefore BNBM PLC's and BNBM Group's relationship with CNBM is irrelevant for purposes of the jurisdictional analysis before the Court on this motion.  That said, the facts demonstrating why neither BNBM PLC nor BNBM Group are alter egos of CNBM are set forth at length in their respective MDL Dismissal Memoranda.  *See* Rec. Doc. 19631-3 at 6-14, 22-33, 35-68; Rec. Doc. 19664-1 at 4-8, 12-16, 23-24.

piercing the veil here.[40]  The result is the same under California law, which recognizes the

possibility of imputing contacts of a subsidiary to a parent for purposes of personal jurisdiction

only when the subsidiary is an alter ego of the parent.  *Doe v. Unocal Corp.*, 248 F.3d 915, 926

(9th Cir. 2001).  "Alter ego is an extreme remedy, sparingly used."  *Sonora Diamond Corp. v.*

*Superior Court*, 83 Cal. App. 4th 523, 538 (2000).

> 1.   Plaintiffs Do Not Adequately Plead Alter Ego

California law provides that "the party seeking to have the corporate entity disregarded

has the burden of proving that the alter ego theory should be applied."  *Hamilton Beach Brands,*

*Inc. v. Metric & Inch Tools, Inc.*, 614 F. Supp. 2d 1080, 1083 (C.D. Cal. 2009).  To demonstrate

that a "parent and subsidiary are 'not really separate entities' and satisfy the alter ego exception

to the general rule that a subsidiary and the parent are separate entities," Plaintiffs must show

"(1) that there is such unity of interest and ownership that the separate personalities [of the two

entities] no longer exist and (2) that failure to disregard [their separate entities] would result in

fraud or injustice." *Unocal Corp.*, 248 F.3d at 926 (alterations in original) (citing *Am. Tel. & Tel.*

*Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996)); *Orosa v. Therakos, Inc.*,

No. C-11-2143, 2011 WL 3667485, at *6 (N.D. Cal. Aug. 22, 2011).  The first part of the test

requires "showing that the parent controls the subsidiary to such a degree as to render the latter

the mere instrumentality of the former"—i.e., the parent either uses its subsidiary to shield itself

from liability or "dictates every facet of the subsidiary's business-from broad policy decisions to

routine matters of day-to-day operation."  *Unocal Corp.*, 248 F.3d at 926 (citations omitted).

> Conclusory allegations of "alter ego" status are insufficient to state
> a claim.  Rather, a plaintiff must allege specifically both of the
> elements of alter ego liability, as well as facts supporting each.

---

[40] Rec. Doc. 19631-3 at 51-60.

*Orosa*, 2011 WL 3667485, at *6 (citation omitted).

Plaintiffs do not meet their pleading burden. For the "unity of interest" part of the alter-ego analysis, the Complaint merely alleges that "BNBM [PLC] consistently exerted control over Taishan and its subsidiaries when these entities were exporting problematic drywall to the United States," without specifying how BNBM PLC purportedly "dictates" Taishan's day-to-day operations.[41] Plaintiffs contend that Tongchun Jia's concurrent positions as a BNBM PLC board member and Chairman of the board of directors and general manager of Taishan allowed BNBM PLC to exert the requisite control over Taishan, without alleging any specific facts evidencing that Mr. Jia actually exerted any improper control on behalf of BNBM. The Ninth Circuit has rejected such allegations as a basis for piercing the corporate veil under California law. In *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir. 1980), the Court held that although directors of the British defendants also sat on the board of the defendants' United States subsidiary, the latter was not an alter ego or agent of the British defendants for jurisdiction purposes because Plaintiffs failed to show that the British defendants controlled the subsidiary's internal affairs or its board. *See also Unocal Corp.*, 248 F.3d at 927-28.

Plaintiffs' alter-ego allegations against BNBM Group are even more threadbare. The Complaint merely alleges that "[u]pon information and belief, [BNBM PLC] is owned and/or controlled by defendant [BNBM Group]," and that "BNBM Group caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold."[42] Plaintiffs have thus failed to plead the specific facts regarding "control" necessary to support an alter-ego claim.

---

[41] Complaint ¶ 41.

[42] *Id*. ¶ 43.

Plaintiffs likewise do not plead facts to establish the second prong of the alter-ego analysis. "Merely alleging that Plaintiff will suffer an inequitable result if [BNBM PLC] is not a defendant is not sufficient." *Orosa*, 2011 WL 3667485 at *7 (citing *Neilson v. Union Bank of California*, 290 F. Supp. 2d 1101, 1117 (C.D. Cal. 2003) (pleading failed to allege injustice prong of alter-ego theory when it stated that plaintiff would suffer an inequitable result but "fail[ed] to allege facts supporting this statement")). Yet Plaintiffs here do not do even that much. The Complaint does not allege that some inequity would result absent an alter-ego finding. Nor could Plaintiffs credibly make such a claim. Taishan is a thriving company, well-capitalized, with high annual net revenues and profit margins.[43]

2.    <u>The Evidence Demonstrates That BNBM PLC and BNBM Group Are Not Alter Egos of Taishan or of One Another</u>

Even if Plaintiffs had adequately pled facts to support an alter ego theory, the evidence discussed in BNBM PLC's and BNBM Group's MDL Dismissal Memoranda demonstrates that Taishan is not an alter ego of either.[44] Instead, the record reflects that the relationship between BNBM PLC and Taishan is that of a typical parent and subsidiary, and that the companies "observe all of the corporate formalities necessary to maintain corporate separateness." *Unocal Corp.*, 248 F.3d at 928. BNBM Group has never had a direct or first-level subsidiary ownership interest in Taishan.[45] BNBM Group likewise owns no shares in BNBM PLC, but rather is a separate, wholly owned subsidiary of CNBM Group.[46]

---

[43] Rec. Doc. 19631-3 at 6-14, 23-25.

[44] *Id*. at 22-33, 34-47, 35-68; Rec. Doc. 19664-1 at 4-8, 12-16, 23-24.

[45]   Transcript of deposition of Yanming Zhou, July 15-17, 2015 at 425:5-7, attached as Exhibit 4 to Rec. Doc. 19664 (hereinafter "Zhou Tr.").

[46]   *Id.* at 425:2-4.

Under California law, such ordinary aspects of parent-subsidiary relationships are not enough to meet the "unity of interest" element of the alter-ego test.  For example, in *Unocal* the Ninth Circuit affirmed dismissal for lack of personal jurisdiction and rejected plaintiff's claim that a French corporation was merely an alter ago of its California and other U.S. subsidiaries, despite the fact that the French defendant was heavily involved in its subsidiaries' acquisitions, divestments and capital expenditures, formulated the subsidiaries' general business policies and strategies, provided loans to its subsidiaries, and maintained overlapping directors and officers with the subsidiaries.  248 F.3d at 927-28.  The court held that the "evidence here establishes only that Total is an active parent corporation involved directly in decision-making about its subsidiaries' holdings."  *Id.* at 928.

Similarly, in *Orosa v. Therakos, Inc.*, the court granted defendants' motion to dismiss and held that the plaintiff, an employee of a company in the Johnson & Johnson ("J&J") "family" of companies, failed to state a claim against J&J for wrongful termination under an alter-ego theory, when the plaintiff alleged that her employer, Therakos, did not maintain an office independent from J&J, "that J&J covers much of Therakos's financial obligations, and that J&J moves managers around between the companies."  2011 WL 3667485, at *6.  In *Hamilton Beach Brands, Inc. v. Metric & Inch Tools, Inc.*, the district court held that "sister companies" were not alter egos despite having similar shareholders and directors and sharing a president, and where one company paid royalties due under the other's written licensing agreements.  614 F. Supp. 2d at 1083-84.  In *Tomaselli v. Transam. Ins. Co.*, the California appellate court found that companies were not alter egos despite the fact that the "parent company owned 100% of the subsidiary's stock; shared office space and policy manuals with the subsidiary; had some common personnel, and [issued] consolidated financial statements." 25 Cal. App. 4th 1269, 1285

(1994); *see also, e.g.*, *Sonora Diamond*, 83 Cal. App. 4th at 538 ("consolidated reporting is standard business practice" and shared directors are insufficient to show lack of corporate separateness).

Because the evidence shows that BNBM PLC and BNBM Group have not used Taishan to "shield from liability" and do not "dictate every facet" of Taishan's operations, the *Abner* Plaintiffs cannot satisfy the alter-ego test under California law.

### C.   BNBM of America Does Not Provide a Basis for Exercising Jurisdiction

The Complaint also focuses on defendant BNBM of America, Inc. ("BNBM of America"), a former indirect subsidiary of BNBM Group,[47] which operated briefly in Tampa, Florida between 2000 and 2003.[48]   The facts detailed in BNBM Group's MDL Dismissal Memorandum reflect that BNBM of America ceased operations before any of the drywall sales at issue in this case, and had no other role in any of the matters at issue here.[49]   BNBM of America made no sales to, and had no other contacts with, California.   BNBM of America never sold Taishan-manufactured drywall.[50]   BNBM PLC has never had any direct or indirect ownership interest in BNBM of America.   BNBM of America cannot therefore provide a basis for exercising jurisdiction over BNBM Group or BNBM PLC.

---

[47] Zhou Tr. 163:1-4.

[48] Explanation about the Accounts Receivable of BNBM of America, Inc., BNBM(Group)-E-0001744-1745, attached as Exhibit 26 to Rec. Doc. 19664 (hereinafter Explanation of Accounts"); Zhou Tr. 175:2-3.   We do not bring this motion on behalf of BNBM of America, which ceased to exist no later than 2005.   We address the allegations in the Complaint concerning that defendant only to the extent Plaintiffs rely on them as a basis to assert jurisdiction over BNBM PLC and BNBM Group.

[49] Rec. Doc. 19664-1 at 17-19.

[50] Zhou Tr. 171:20-22, 172:21-23; BNBM Group 2015 Auditor's Report, February 25, 2015, BNBM(Group)00003274-R-3330-R at -3298-R, relevant pages attached as Exhibit 27 to Rec. Doc. 19664.

## II.     THE COURT SHOULD DISMISS THIS DUPLICATIVE LITIGATION

Even if a California court could assert jurisdiction over BNBM PLC or BNBM Group, there is no reason for Plaintiffs to move forward with this duplicative action.  The *Abner* Complaint repeats—almost verbatim—complaints the PSC previously filed in Federal Court in Virginia, Louisiana and Florida.[51]  These and other actions assert identical or nearly identical causes of action.[52]  Most of the named plaintiffs themselves have sought redress as part of other actions, either as named plaintiffs in the PSC's previously filed actions or as identified members of the class that this Court certified in 2014.

Since the *Abner* Complaint, like all of its predecessors, fails to allege any specific harm caused by drywall manufactured or sold by BNBM PLC or BNBM Group, the *Abner* Plaintiffs' claims rest entirely on their theory that BNBM PLC and BNBM Group are "alter egos" of Taishan and somehow caused Taishan to sell its drywall in the United States.  The *Abner* Complaint does not plead any unique facts relating to the alter-ego question.  Because the *Abner* complaint merely duplicates its predecessors, legal and factual questions determinative of its sufficiency will be resolved by the motions to dismiss that are currently *pending* before the Court.  Likewise, the question of whether BNBM PLC or BNBM Group engaged in sufficient business to establish "minimum contacts" in any of the forum states also will be argued next month.

The *Abner* Plaintiffs are not entitled to multiple, identical bites at the apple.  Where, as here, the "only explanation for the duplicative litigation … is to expand Plaintiffs' procedural

---

[51] *See, e.g.*, *Amorin, et al. v. Taishan Gypsum Co., Ltd., et al.*, No. 2:11-CV-377 (E.D. Va.); *Amorin, et al. v. Taishan Gypsum Co., Ltd., et al.*, No. 11-1395 (E.D. La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd., et al*., No. 11-CV-1673 (E.D. La.); *see also Gross v. Knauf Gips KG, et al.*, 09-6690 (E.D. La.) (asserting identical or nearly identicalcauses of action as *Abner*).

[52] *Compare* Complaint ¶¶ 153-244, *with Amorin, et al.*, No. 11-1395 Rec. Doc. 1 ¶¶ 130-208, *and Gross et al.*, No. 09-6690 Rec. Doc. 366 ¶¶ 240-285.

rights, upset the trial schedule, harass Defendants, and avoid the requirements of amendment of Plaintiffs' claims," the duplicative action should be dismissed.  *S. Snow Mfg. Co., Inc. v. SnoWizard Holdings, Inc.*, 921 F. Supp. 2d 527, 543 (E.D. La. 2013), *aff'd in part, rev'd in part on other grounds*, 567 F.App'x 945 (Fed. Cir. 2014).  A plaintiff has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendants."  *Oliney v. Gardner*, 771 F.2d 856, 859 (5th Cir. 1985) (quoting *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977)).  The "general principle is to avoid duplicative litigation… to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.  [T]o avoid these ills, a district court may dismiss an action where the issues presented can be resolved in an earlier-filed action."  *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985).[53]  Because the parties, claims and legal issues raised in *Abner* are virtually identical to those presented in the *Amorin* cases and other previously filed actions, *Abner* should be dismissed.

### III.     PLAINTIFFS DO NOT STATE A PLAUSIBLE CLAIM FOR RELIEF AGAINST BNBM PLC AND BNBM GROUP AS REQUIRED BY RULE 12(b)(6)

#### A.     Plaintiffs Do Not Allege Any Actual Injury Caused By BNBM PLC or BNBM Group

The Complaint must be dismissed under Fed. R. Civ. P. 12(b)(6) because it fails to state a plausible claim against either defendant.  It does not allege that drywall sold or manufactured by BNBM PLC or BNBM Group did anything to cause Plaintiffs harm, and it fails to specify any damage attributable to BNBM PLC or BNBM Group, as opposed to other defendants.  The 29,324 profile forms that this Court required the MDL plaintiffs to submit confirm that there is no alleged injury to any plaintiff in California, Alabama, Louisiana or Virginia from defective

---

[53] At a minimum, *Abner* should be stayed pending resolution of the *Amorin* and other duplicative cases that are already underway. *See In re Amerijet Int'l, Inc.*, 785 F.3d 967, 976 (5th Cir. 2015).

BNBM PLC drywall.[54]  The sole Florida named plaintiff in *Abner* who submitted a profile form

identifying BNBM drywall is already part of the *Amorin* class action.  As a Florida resident, she

has no basis to file suit in California.

Plaintiffs' inability to allege any injury caused by BNBM PLC or BNBM Group is fatal

to the Complaint.  "Named plaintiffs lack standing to assert claims under the laws of states in

which they do not reside ***or in which they suffered no injury***."  *In re Packaged Ice Antitrust

Litig.*, 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011) (emphasis added).  "A named plaintiff in a

class action who cannot establish the requisite case or controversy between himself and the

defendants simply cannot seek relief for anyone—not for himself, and not for any other member

of the class."  *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987); *see also In re Niaspan

Antitrust Litig.*, 42 F. Supp. 3d 735, 758 (E.D. Pa. 2014) (dismissing state law claims and holding

that named plaintiffs lacked standing to assert claims under laws of states in which they did not

reside or in which they suffered no injury); *McGuire v. BMW of N. Am., LLC*, No. 13-7356, 2014

WL 2566132, *5-6 (D.N.J. June 6, 2014) (same).  Where a named plaintiff has not suffered the

"particular injury" asserted on behalf of the class, the named plaintiff lacks standing not only to

represent the class, but to bring the action on his or her own behalf.  *Brown v. Sibley*, 650 F.2d

760, 771 (5th Cir. 1981).  Where a named plaintiff lacks standing to bring a claim, "the proper

procedure is to dismiss the complaint, not to deny the class for inadequate representation or to

allow other class representatives to step forward."  *Id*.  Plaintiffs have not alleged that they were

injured by drywall made or sold by BNBM PLC or BNBM Group in any of the states in which

---

[54] Taylor Supp. Decl. and Exhibit 1; *see also* Supp. Prof. Forms.  The Court can consider the
profile forms at this stage because they are "central to the claim," and because they are a matter
of public record.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000);
*Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

they reside, and the evidence confirms that they did not suffer any such injury.[55]  Plaintiffs

therefore lack standing to bring this action against BNBM PLC and BNBM Group.

Furthermore, because the Complaint fails to "plead 'enough facts to state a claim to relief

that is plausible on its face,'" it must be dismissed under Rule 12(b)(6).  *In re Katrina Canal*

*Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)).  A claim is "facially plausible" only if the plaintiff "pleads facts that allow the

court to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'"

*Scianneaux v. St. Jude Med. S.C., Inc.*, 961 F. Supp. 2d 808, 810 (E.D. La. 2013) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Kan v. OneWest Bank, FSB*, 823 F. Supp. 2d 464,

469 (W.D. Tex. 2011).  Determining whether a complaint states a plausible claim for relief

"requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556

U.S. at 679.  While all well-pled facts must be accepted as true on this motion, the Court is "not

bound to accept as true a legal conclusion couched as a factual allegation."  *Id*. at 678.

The "face of the complaint must contain enough factual matter to raise a reasonable

expectation that discovery will reveal evidence of each element of the plaintiff's claim."

*Scianneaux*, 961 F. Supp. 2d at 811 (citing *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257

(5th Cir. 2009)).  Here, however, the "face of the complaint" makes no connection between

BNBM PLC and BNBM Group and the claimed damages.  Where, as here, "there are insufficient

factual allegations to raise a right to relief above the speculative level, [and] it is apparent from

the face of the complaint that there is an insuperable bar to relief … the claim must be

dismissed."  *Id.* (citations omitted).

---

[55] To the extent that the Florida resident who identified "BNBM" drywall in her profile form can
be said to have "alleged" that she was injured by BNBM PLC-made drywall, her claims will be
addressed as part of the *Amorin* class action in which she is a class member.

Plaintiffs' conclusory allegation that BNBM PLC and BNBM Group "controlled" Taishan when Taishan sold its purportedly defective drywall is inadequate.[56]  The Court need not accept these conclusory allegations, accompanied by no specific factual allegations, as true. "Bare assertions," which "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, do not meet the standard of Rule 12(b)(6).  *Iqbal*, 556 U.S. at 680-81.  Such "allegations are conclusory and not entitled to be assumed true."  *Id.* at 681.  Similarly, Plaintiffs' bare assertions concerning BNBM PLC's and BNBM Group's "control" over Taishan are entirely conclusory and thus also not entitled to be presumed true.  Legal "labels and conclusions" and "naked assertion[s]" without "further factual enhancement" do not state a plausible cause of action.  *Twombly*, 550 U.S. at 555.

### B. Plaintiffs' Claims Are Inadequately Pled with Conclusory Allegations That Lump All Defendants Together

The Complaint also fails to state a plausible claim because it improperly lumps BNBM PLC and BNBM Group together with all other "Defendants" as one group, without alleging that BNBM PLC or BNBM Group engaged in any specific conduct that caused Plaintiffs harm. Courts in this Circuit and elsewhere have repeatedly held that simply "lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct [fails] to satisfy th[e] minimum standard" required by Rule 8 of the Federal Rules of Civil Procedure.  *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001); *Del Castillo v. PMI Holdings N. Am. Inc.*, No. 4:14-CV-3435, 2015 WL 3833447, at *6 (S.D. Tex. June 22, 2015) ("A complaint does not satisfy the requirements of *Iqbal* and *Twombly* by lumping together all defendants, while providing no factual basis to distinguish their conduct."); *Rutherford v. Equifax*, No. 10-1988, 2011 WL 3606964, at *1 (E.D. La. August 16, 2011) (granting motion to dismiss for plaintiff's

---

[56] Complaint ¶¶ 5-18.

failure to "specify the basis of his claim against each particular defendant separately, rather than lumping them together").  Yet that is precisely what Plaintiffs have done here, bringing their claims against all "Defendants" and referring generally to "Defendants' drywall."[57]

Plaintiffs' decision to soldier on with a complaint that fails to differentiate among the Defendants is particularly inappropriate since Plaintiffs know from the extensive evidence generated in the MDL discovery that the "Chinese Defendants" are not interchangeable.  Rather, discovery shows without dispute that BNBM PLC manufactured and sold its own brand of drywall distinct from Taishan's and other Chinese manufacturers' products, that BNBM PLC's drywall was found not to be defective, and that BNBM Group did not manufacture or sell drywall during the relevant time period.  While Plaintiffs' insistence on "lumping" all "Defendants" together undoubtedly reflects their theory that all the Defendants are alter egos of one another, the evidence discussed above and in BNBM PLC's and BNBM Group's previously filed motions to dismiss precludes that theory.  Plaintiffs have no other basis to make allegations against all "Defendants" as though they are one and the same.

Plaintiffs have had sufficient opportunity to try to build a record sufficient to support specific claims against BNBM PLC and BNBM Group and have failed to do so.  Since they do not (and cannot) plead allegations specific to BNBM PLC or BNBM Group, their Complaint must be dismissed.

**C.    Plaintiffs' Louisiana Statutory Claims (Causes of Action V and VI) Do Not State A Claim Upon Which Relief Can Be Granted**

Plaintiffs' claims for redhibition under La. Civ. Code art. 2520 and art. 2545[58], and for violation of the LPLA, La. Rev. Stat. Ann. § 9:2800.51, *et seq.*, both must be dismissed because,

---

[57] *See, e.g.*, Complaint ¶¶ 113-242.

as discussed above, putative named plaintiffs cannot assert claims "under the laws of states… in which they suffered no injury." *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d at 657 (dismissing claims arising under laws of states in which named plaintiffs did not reside and suffered no injury); *Griffin*, 823 F.2d at 1483. None of the named Louisiana-resident plaintiffs claim to have had BNBM PLC-manufactured drywall in their homes, and the complaint does not allege that drywall sold or manufactured by BNBM PLC or BNBM Group made its way to Louisiana. The omission of such allegations was no oversight. The MDL discovery confirms that neither defendant sold drywall in Louisiana or shipped it there, and the thousands of profile forms submitted by Louisiana property owners, including several of the named plaintiffs here, reflect that no one from the state claims to have been affected by drywall sold or manufactured by BNBM PLC or BNBM Group.

Plaintiffs' inability to plead a "connection" between BNBM PLC and BNBM Group, on the one hand, and their alleged injuries in Louisiana, on the other hand, means that Plaintiffs cannot assert a "plausible" claim. *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d at 658 (citing *Twombly*, 550 U.S. at 570). In particular, Plaintiffs claim under the LPLA alleges in a purely conclusory fashion that the "Defendants" drywall was "unreasonably dangerous" by virtue of "unreasonable emission of sulfur compounds."[59] Given the opposite conclusion about BNBM PLC drywall in the CPSC investigation, Plaintiffs' LPLA claim does not meet the minimum pleading standard under Rule 12(b)(6) announced by the Supreme Court in *Iqbal* and *Twombly*.[60]

---

[58] Although articles 2520 and 2545 provide the bases for two distinct causes of action, both causes must be dismissed for the same reason.

[59] Complaint ¶ 207.

[60] Assuming, *arguendo*, that Plaintiffs are entitled to maintain their LPLA cause of action, then their negligence, negligence per se, strict liability, breach of express and/or implied warranty,

IV.   **PLAINTIFFS FAIL TO STATE A CLAIM UNDER ANY OF THE STATE CONSUMER PROTECTION STATUTES CITED IN THE COMPLAINT (CAUSE OF ACTION IX)**

A.   **Plaintiffs Cannot Assert Claims Under Consumer Protection Statutes of States In Which No Named Plaintiff Resides or Was Injured, And Cannot Bring Claims as a Class**

Plaintiffs purport to bring claims under eight state Consumer Protection statutes, including those of three states—North Carolina, Texas and Mississippi—in which no plaintiff either resides or is alleged to own affected property and to which, the evidence shows, BNBM PLC and BNBM Group neither sold, shipped nor otherwise provided drywall.  Plaintiffs therefore lack standing to bring putative claims under those statutes, and their putative claims based on the Mississippi, North Carolina and Texas statutes must be dismissed.  *In re Actimmune Marketing Litig.*, No. C 08-02376, 2009 WL 3740648, at *17 (N.D. Cal. Nov. 6, 2009); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d at 657.

Similarly, only allegedly injured Louisiana residents are permitted to recover under the Louisiana Unfair Trade Practices Act.  La. Stat. Ann. § 51:1418 ("LUTPA").  Since no Louisianan claims to have been harmed by drywall sold or manufactured by either BNBM PLC or BNBM Group, the LUTPA claim must be dismissed.

In addition, LUTPA and the Mississippi and Alabama Consumer Protection statutes expressly prohibit Plaintiffs from pursuing claims on behalf of a putative class.  *See* Miss. Code

---

private nuisance, and unjust enrichment claims must be dismissed.  The LPLA provides "the exclusive theories of liability for manufacturers for damage caused by their products," and precludes "recover[y] from a manufacturer for damage caused by a product," other than on the basis set out in the statute itself.  La. Rev. Stat. Ann. § 9:2800.52.  *See, e.g.*, *Pitre v. Yamaha Motor Co., Ltd.*, 51 F. Supp. 3d 644, 661 (E.D. La. 2014) (dismissing unjust enrichment claim precluded by LPLA); *Hillard v. U.S.*, No. 06-2576, 2007 WL 647292, at *4 (E.D. La. Feb. 28, 2007) (dismissing negligence, negligence per se, and strict liability claims as barred under LPLA); *Jefferson v. Lead Indus. Ass'n, Inc.*, 930 F. Supp. 241, 245 (E.D. La. 1996) ("neither negligence, strict liability, nor breach of express warranty is any longer viable as an independent theory of recovery against a manufacturer").

Ann. § 75-24-15(1) ("Nothing in this chapter shall be construed to permit any class action or suit, but every private action must be maintained in the name of and for the sole use and benefit of the individual person"); La. Rev. Stat. Ann. § 51:1409 (A)  ("Any person who suffers any ascertainable loss of money or movable property… as a result of… an unfair or deceptive method, act, or practice declared unlawful… may bring an action individually but not in a representative capacity to recover damages"); Ala. Code § 8-19-10 ("A consumer or other person bringing an action under this chapter may not bring an action on behalf of a class").[61]

### B.   Plaintiffs Fail To Meet The Rule 9(b) Pleading Standard Applicable To Their Consumer Protection Act Claims

Plaintiffs' claims under the assorted Consumer Protection statutes are also barred because Plaintiffs have failed to plead them with the requisite particularity.  Plaintiffs' claims, which are based on Defendants' alleged "misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of problematic drywall,"[62] are subject to the heightened pleading standards of Rule 9(b).  *See Holmes v. Johnson & Johnson*, 617 F.Appx. 639, 644 (9th Cir. 2015) (where a California Unfair Competition Law claim is "grounded in fraud," the complaint "as a whole must satisfy the particularity requirement of Rule 9(b)"); *In re Actimmune Mktg. Litig.*, 2009 WL 3740648, at *16 (holding claims brought under the California Legal Remedies Act ("CLRA") that "sound in fraud… must satisfy Rule 9(b)" and dismissing

---

[61] *See also Iberia Credit Bureau, Inc., v. Cingular Wireless LLC*, 379 F.3d 159, 174-75 (5th Cir. 2004) ("[LUTPA], which is one basis of the plaintiffs' claims, does not permit individuals to bring class actions"); *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 84 (D. Mass. 2005) (excluding "out of hand" consumers from "Alabama… Louisiana, [and] Mississippi" from nationwide class because "there is no right to bring a class action to enforce the consumer protection statutes"); *Univ. Fed. Credit Union v. Grayson*, 878 So. 2d 280, 285 n.2 (Ala. 2003) (citing Ala. Code § 8-19-10(f)) ("[W]hile it is not clear whether the trial court intended to certify the deceptive-trade-practices claim, we hold that the trial court exceeded its discretion if it did so").

[62] Complaint ¶ 229.

CLRA claim for failing to plead claim with the requisite specificity); *Brand Coupon Network LLC v. Catalina Mktg. Corp.*, No. 11–00556, 2014 WL 6674034, at *5 (M.D. La. Nov. 24, 2014) (citing *Pinero v. Jackson Hewitt Tax Serv. Inc.*, 594 F. Supp. 2d 710, 721 (E.D. La. 2009) ("Where a plaintiff's LUTPA claim is based on alleged fraudulent misrepresentation, the LUTPA claim must meet the heightened pleading requirements of Rule 9(b)")); *In re Packaged Ice Antitrust Litig.*, 779 F.Supp.2d at 665 (dismissing Florida Unfair Trade Practices Act claim where "Plaintiffs have pled no facts which would meet the more stringent requirements of Rule 9(b)"); *Koschene v. Hutchinson*, No. CL06-476, 2007 WL 6013037, at *4 (Va. Cir. Ct. Mar. 16, 2007) ("A plaintiff must allege a fraudulent misrepresentation of fact to state a cause of action for violation of the Virginia Consumer Protection Act.  Common law standards of what constitutes a misrepresentation of fact govern such an inquiry.") (citing *Lambert v. Downtown Garage, Inc.*, 553 S.E.2d 714, 716 (Va. 2001)).  Plaintiffs' generic allegation concerning unspecified "knowing misrepresentation[s]" made by "Defendants," without identifying any company or individual in particular, falls well short of this heightened standard.

Rather than "state with particularity the circumstances constituting fraud," as Plaintiffs are required to do under Rule 9(b), Plaintiffs have pled no particularized allegations against BNBM PLC and BNBM Group whatsoever.  Plaintiffs' Ninth Cause of Action must therefore be dismissed.

## V.    PLAINTIFFS' COMMON LAW CLAIMS MUST BE DISMISSED

The Complaint fails to identify any specific state law under which the named plaintiffs purport to proceed on their common law claims.  This astonishing pleading failure alone is grounds to dismiss Plaintiffs' common law claims.  *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d at 667-68; *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 587 (M.D. Pa. 2009).  A complaint is inconsistent with Rule 8 pleading standards when it neglects to

identify the state under whose law a claim is made.  *In re Dynamic Random Access Memory*

*(DRAM) Antitrust Litig.*, 536 F. Supp. 2d 1129, 1145 (N.D. Cal. 2008).

We analyze the common law claims under California law on the assumption that

Plaintiffs may have filed the complaint there to take advantage of that state's law.  Applying

California law, Plaintiffs have failed to state a claim on any of their common law causes of

action.[63]

### A.      Plaintiffs Fail To State A Claim For Breach of Express And/Or Implied Warranties (Cause of Action IV)

Plaintiffs' claim for breach of an "express" warranty against BNBM PLC and BNBM

Group must be dismissed because Plaintiffs fail to plead the threshold element of their claim, that

there was an "explicit promise with respect to the quality of goods" that either defendant made.

*Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1142 (N.D. Cal. 2010).  To plead a

claim for breach of express warranty, it is not enough for the buyer to allege that the seller "made

an affirmation of fact or promise or provided a description of its goods . . . . Such a claim must

describe the exact terms of the warranty."  *Id*.  The Complaint does not describe such "exact

terms" of the supposed warranty.  In fact, there is not a single allegation that BNBM PLC or

BNBM Group made any promises concerning their drywall on which any buyer reasonably

relied.  While Plaintiffs contend that "Taishan's website" and unspecified "Taishan employees"

provided "assurances" that its drywall complied with American quality standards[64] , those

purported "assurances"—which in all events are not adequately described to satisfy Plaintiffs'

---

[63] Applying California law is particularly appropriate here given that Plaintiffs have filed virtually identical actions, and are seeking to certify an identically defined class, in the other states in which the named plaintiffs reside.  Issues particular to those states' laws are therefore addressed in those actions.

[64] Complaint ¶ 104.

pleading burden[65]—cannot be attributed to BNBM PLC or BNBM Group for all of the reasons discussed above.

Plaintiffs' implied warranty claim fares no better.[66]  "Vertical privity, or in other words, privity of contract, is required to sustain an implied warranty claim in California."  *Paramount Farms Inter. LLC v. Ventilex B.V.*, 500 F. App'x. 586, 588 (9th Cir. 2012).  "To state a claim for breach of an implied warranty, plaintiffs must establish vertical privity with the warrantor."  *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1100 (S.D. Cal. 2010).  An end-use consumer "who buys from a retailer is not in privity with a manufacturer."  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008).  Plaintiffs have not alleged vertical privity—nor can they make any such allegation, given that BNBM PLC sold drywall only to a limited number of U.S. purchasers, none of whom are parties here, and no Plaintiff purchased BNBM PLC-manufactured drywall or otherwise dealt with BNBM PLC or BNBM Group.  *See Paramount Farms Inter. LLC*, 500 F. App'x. at 588 (affirming dismissal of implied warranty claim where plaintiff never "entered into a contract

---

[65] *See also Balthazar v. Apple, Inc.*, No. CV-10-3231-JF, 2011 WL 3795013, at *3 (N.D. Cal. Aug. 26, 2011) (dismissing breach of express warranty claim and holding that advertising images which "mak[e] no explicit guarantees" are not sufficient to create an express warranty).

[66] Plaintiffs do not specify whether their implied warranty claim is based on an alleged breach of the implied warranty of fitness for a particular purpose or the implied warranty of merchantability.  The language of Plaintiffs' Fourth Cause of Action suggests that Plaintiffs are attempting to plead a breach of the latter.  *See* Complaint ¶ 190 ("Although the drywall functions according to its intended purpose as a building component, it is… not merchantable for this purpose due to the damaging side effects . . . .").  To the extent Plaintiffs now argue that their claim is for breach of the implied warranty of fitness for a particular purpose, the claim must be dismissed because Plaintiffs "have not alleged that they used the [drywall] for anything other than [its] ordinary purpose."  *Kent v. Hewlett–Packard Co.*, No. 09–cv–05341-JF, 2010 WL 2681767, at *5 (N.D. Cal. July 6, 2010).

with [defendant manufacturer], nor engaged in significant 'direct dealings' with" defendant manufacturer).

Although Plaintiffs contend that they "were foreseeable third party beneficiaries of any warranty," that conclusory allegation is not enough to save their claim.[67]  A "person seeking to enforce a contract as a third party beneficiary must plead a contract which was made expressly for his benefit and one in which it clearly appears that he was a beneficiary."  *H.N. & Frances C. Berger Found. v. Perez*, 218 Cal. App. 4th 37, 43 (2013).  Plaintiffs do not (and cannot) allege that any such contract exists or that BNBM PLC made any drywall sales in order to benefit them.

Plaintiffs' breach of implied warranty claim also fails because they have not alleged that any alleged harm manifested within one year of when the drywall was sold.  "California law expressly limits, by statute, implied warranties to one year or less."  *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d at 1100 (citing Cal. Civ. Code 1791.1).  Assuming that Plaintiffs could allege that the defects in their drywall presented within a year of when it was sold, "they were required to plead that fact in the operative complaint."  *Valencia v. Volkswagen Grp. of Am. Inc.*, No. 15-CV-00887, 2015 WL 4747533, at *5 (N.D. Cal. Aug. 11, 2015).

**B.      Plaintiffs Fail To State A Claim for Negligence, Negligence Per Se, Strict Liability or Private Nuisance (Causes of Action I-III, VII).**

Plaintiffs' negligence, negligence per se, strict liability and nuisance causes of action fail for the same reasons.  The Complaint makes only generic allegations aimed at all "Defendants," lumped together, without identifying any harm caused by drywall manufactured or sold by BNBM PLC or BNBM Group.  Moreover, the Complaint's conclusory allegations that BNBM

---

[67] Complaint ¶ 187.

PLC drywall was defective is contrary to the CPSC report.  Accordingly, Plaintiffs' First,

Second, Third and Seventh Causes of Action should be dismissed.

> **C.**     **Plaintiffs' Negligence Per Se (Count II), Unjust Enrichment (Count VIII) and Injunctive Relief/Medical Monitoring (Count X) Claims Should Be Dismissed Because They Are Not Recognized Causes of Action**
>
> > 1.     Plaintiffs Cannot Bring an Independent "Negligence Per Se" Claim

Plaintiffs' Second Cause of Action is for "Negligence Per Se," which California law does

not recognize as an independent tort.  As the Sixth District Court of Appeal stated in *Quiroz v.*

*Seventh Avenue Center*, 140 Cal. App. 4th 1256, 1285 (2006):

> [T]he doctrine of negligence per se does not establish tort liability.
> Rather, it merely codifies the rule that a presumption of negligence arises
> from the violation of a statute which was enacted to protect a class of
> persons of which the plaintiff is a member against the type of harm that
> the plaintiff suffered as a result of the violation…. ***Accordingly, to apply***
> ***negligence per se is not to state an independent cause of action***.

(emphasis added).

Plaintiffs have even failed to plead the requisite elements of negligence per se that would

entitle them the evidentiary presumption of negligence—specifically, that the "Defendants'"

negligence "arises from the violation of a statute," and that Plaintiffs are members of a "class"

the statute was enacted in order to protect.  *Id*.  Plaintiffs generally invoke "the International

Building Code and other State and local Building Codes,"[68] without identifying any particular

provisions that BNBM PLC or BNBM Group allegedly violated, and without alleging that the

named plaintiffs are members of a class that these unspecified "building codes" were enacted to

protect.  Plaintiffs also claim that "Defendants" violated ASTM standards for Gypsum Board.

The ASTM standards, however, are not statutory—ASTM International is a private organization

that develops and publishes ***voluntary*** technical standards for a wide range of products.

---

[68] Complaint ¶ 164.

2.    Plaintiffs Fail To State A Claim For Unjust Enrichment (Cause of Action VIII)

"There is no cause of action in California for unjust enrichment," therefore Plaintiffs' Eighth Cause of Action must be dismissed.  *Everett v. Mountains Recreation and Conservancy Auth.*, 239 Cal. App. 4th 541, 553 (2015); *Melchior v. New Line Prod., Inc.*, 106 Cal. App. 4th 779, 793 (2003).  Moreover, since BNBM PLC and BNBM Group are not alleged to have sold defective drywall, they have not received an "unjust" benefit that would entitle Plaintiffs to restitution.  *In re Actimmune Marketing Litig.*, 2009 WL 3740648 at *16; *Dinosaur Dev., Inc. v. White*, 216 Cal. App. 3d 1310, 1316 (1989).

3.    Plaintiffs Cannot Bring an Independent "Injunctive Relief And Medical Monitoring" Claim

Finally, neither "injunctive relief" nor "medical monitoring"—the stated bases of Plaintiffs' Tenth Cause of Action—are independent causes of action.  "Injunctive relief is a remedy and not, in itself, a cause of action."  *Lomboy v. SCME Mortg. Bankers*, No. C-09-1160, 2009 WL 1457738, at *7 (N.D. Cal. May 26, 2009) (quoting *Shell Oil Co. v. Richter*, 52 Cal. App. 2d 164, 168 (1942) (granting 12(b)(6) motion to dismiss)).

Similarly, medical monitoring is an item of damages, not a standalone tort.  As the California Supreme Court stated in *Potter v. Firestone Tire & Rubber Co.*:

> [A] reasonably certain need for medical monitoring is an item of damage for which compensation should be allowed.  Recognition that a defendant's conduct has created the need for future medical monitoring does not create a new tort.  It is simply a compensable item of damage when liability is established under traditional tort theories of recovery.

863 P.2d 795, 823 (Cal. 1993).

Plaintiffs' Tenth Cause of Action must be dismissed.

## VI.    PLAINTIFFS' CLAIMS ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS

Absent a demonstrable basis for *American Pipe* tolling, which would not apply to any plaintiff not named in the prior class actions, each of the Plaintiffs' putative causes of action are barred by the applicable statutes of limitation.  "Class action lawsuits, like any other lawsuit, are subject to statutes of limitation and repose that limit the time within which a suit must be brought."  *See Hall v. Variable Annuity Life Ins. Co.*, 727 F.3d 372, 375 (5th Cir. 2013).[69]  The following chart outlines the applicable limitations periods for the claims asserted in the Complaint:

| State | Cause of Action | Period | Statute |
|---|---|---|---|
| Louisiana | Redhibition | 1 year/4 years[70] | LA. CIV. CODE art. 2534 |
| Louisiana | Louisiana Products Liability Act | 1 year | LA. CIV. CODE art. 3492 |
| Louisiana | Louisiana Unfair Trade Practices & Consumer Protection Law | 1 year | LA. REV. STAT. § 3492 |
| Alabama | Alabama Deceptive Trade Practices Act | 1 year | ALA. CODE § 8-19-14 |
| California | California Unfair Competition Law | 4 years | CAL. BUS. & PROF. CODE § 17208 |
| California | California Legal Remedies Act | 3 years | CAL. CIV. CODE § 1783 |
| North Carolina | North Carolina Consumer Protection Act | 4 years | N.C. GEN. STAT. § 75-16.2 |
| Florida | Florida Deceptive & Unfair Trade Practices Act | 2 years | FLA. STAT. § 95.11(3)(f) |
| Virginia | Virginia Consumer Protection Act | 2 years | VA. CODE § 59.1-204.1(A) |
| Texas | Texas Deceptive Trade Practices-Consumer Protection Act | 2 years | TEX. BUS. & COM. CODE § 17.565 |

---

[69] MDL Courts apply the choice-of-law rules of the state of transferor forum, that is, the law of the state in which the action was filed.  *In re Vioxx Prod. Liab. Litig.*, 478 F. Supp. 2d 897, 903 (E.D. La. 2007).

[70] Under LA. CIV. CODE article 2534, an action prescribes four years from the day of delivery of the product or one year from the day the defect was discovered by the buyer, whichever occurs first.

36

| State | Cause of Action | Period | Statute |
|-------|-----------------|--------|---------|
| Mississippi | Mississippi Consumer Protection Act | 3 years | MISS. CODE ANN. § 15-1-49 |
| California | Negligence/Strict Liability/Private Nuisance[71] | 2 years (personal injury)<br><br>3 years (property damage) | CAL. CIV. PROC. CODE § 335.1<br><br>CAL. CIV. PROC. CODE § 338 |
| California | Breach of express and/or implied warranties | 4 years | CAL. COM. CODE § 2725 |

Plaintiffs filed the *Abner* Complaint in November 2011, over 5 ½ years after BNBM PLC last sold drywall to U.S. customers and BNBM Group acted as an import agent for U.S. sales, in 2006.[72]  Plaintiffs allege that off-gassing begins immediately and causes rapid damage to many aspects of a home, all while giving off a strong odor.  Therefore, none of Plaintiffs' claims are timely.

Well aware that their claims are time barred, Plaintiffs vaguely assert that they are "entitled to equitable tolling of their claims."[73]  Yet Plaintiffs do not allege that either BNBM PLC or BNBM Group took any "affirmative steps to lull the plaintiff[s] into inaction," as would be required to toll the limitations period on Plaintiffs' claims.  *Jordan v. Sony BMG Music Entm't, Inc.*, 637 F. Supp. 2d 442, 456 (S.D. Tex. 2008).  As this Court recently stated while refusing to toll the limitations period on an otherwise time-barred claim, equitable tolling applies only where a litigant "(1) has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *Jacobs v Prudential Ins. Co. of Am.*, —F. Supp. 3d.—, No. 13–0146, 2015 WL 4621743, at *7 (E.D. La. Jul. 31, 2015) (Fallon, J.); *see also Brooks v. Menifee*,

---

[71] California does not recognize "negligence per se" or "unjust enrichment" as independent causes of action, therefore there are no specific statutes of limitation applicable to those claims. *See* § V(3)(a),(b), *supra*.

[72] Rec. Doc. 19631-3 at 15-16.

[73] Complaint ¶¶ 113-115.

269 F. App'x 441, 442 (5th Cir. 2008) (equitable tolling applies only "where the plaintiff is actively misled by the defendant or is prevented in some extraordinary way from asserting his rights").  Plaintiffs allege nothing of the sort.

While Plaintiffs allege that Defendants "made it difficult for injured parties to identify the parties responsible for the manufacture, distribution and sale of the drywall installed in their homes"[74] by using export agents that differed from the manufacturers, the evidence shows that BNBM Group did not act as an export agent in order to conceal the true manufacturer of the drywall at issue.

Even if Plaintiffs could invoke equitable tolling, they were undoubtedly on notice of the basis for their claims several years before they filed suit in November 2011.  Lawsuits alleging problems with defective Chinese drywall were filed en masse starting in 2009, and on June 15, 2009, this Court was designated as the transferee court for all federal cases involving Chinese-manufactured drywall.  On May 25, 2010, the CPSC issued a public release identifying manufacturers of problematic drywall.[75]  Both national and local media coverage of Chinese drywall were sufficient to put all Plaintiffs on notice of a potential link between their alleged injuries and the Chinese drywall in their homes.  *See In re Vioxx Prod. Liab. Litig.*, 522 F. Supp. 2d 799, 810 (E.D. La. 2007) (citing to widespread media coverage as ample notice triggering statute of limitations).  Thus, at a minimum, all causes of action with a one- or two-year statute of limitations—the vast majority of Plaintiffs' claims—are unquestionably time barred.

---

[74] *Id*. ¶ 114.

[75] *See* CPSC Release.

**VII.  THE COMPLAINT SHOULD BE DISMISSED BECAUSE BNBM PLC AND BNBM GROUP HAVE NOT PROPERLY BEEN SERVED WITH PROCESS.**

Plaintiffs concede that they never attempted proper service on BNBM PLC or BNBM Group through the Hague Convention.  As the Court knows, BNBM PLC and BNBM Group respectfully disagree with the Court's conclusion that alternative service on counsel is permitted in this action. [76]

<u>**CONCLUSION**</u>

For the foregoing reasons and the reasons set forth in the BNBM PLC and BNBM Group MDL jurisdictional motions to dismiss and supporting briefs, declarations and exhibit, Defendants BNBM PLC and BNBM Group respectfully request the Court to dismiss the Complaint against them.

Dated:  January 12, 2016

Respectfully submitted,

**DENTONS US LLP**

By: *<u>/s/ Michael H. Barr</u>*
Michael H. Barr
New York Bar No. 1744242
Justin N. Kattan
New York Bar No. 3983905
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
michael.barr@dentons.com
justin.kattan@dentons.com

---

[76] BNBM PLC and BNBM Group hereby preserve their respective objections to Plaintiffs' improper attempts at service.  BNBM PLC and BNBM Group incorporate by reference and adopt in full the arguments they raised in their previously-filed Opposition to the Plaintiffs' Steering Committee's Motion to Approve Alternative Service of Process. Rec. Doc. 19558.

Richard L. Fenton
Illinois Bar No. 3121699
Leah R. Bruno
Illinois Bar No. 6269469
233 South Wacker Drive
Suite 7800
Chicago, IL  60606-6306
Telephone:  (312) 876-8000
Facsimile:  (312) 876-7934
richard.fenton@dentons.com
leah.bruno@dentons.com

Kenneth J. Pfaehler
D.C. Bar No.
Drew Marrocco
D.C. Bar No.
1301 K Street N.W.
Suite 600, East Tower
Washington, D.C. 20005
Telephone:  (202) 408-6400
Facsimile:  (202) 408-6399
kenneth.pfaehler@dentons.com
drew.marrocco@dentons.com

C. Michael Moore
Texas Bar No. 14323600
Matt T. Nickel
Texas Bar No. 24056042
2000 McKinney Ave, Suite 1900
Dallas, TX  75201
Telephone:  (214) 259-0900
Facsimile:  (214) 259-0910
mike.moore@dentons.com
matt.nickel@dentons.com

- and -

**PHELPS DUNBAR LLP**

Harry Rosenberg
Louisiana Bar No. 11465
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130
harry.rosenberg@phelps.com

*Attorneys for Beijing New Building Materials Public Limited Company and Beijing New Building Material (Group) Co., Ltd.*

41

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing **Memorandum In Support of Motion to Dismiss the Complaint Pursuant to Rules 12(b)(2), 12(b)(5) ,12(b)(6), 8, and 9(b)** has been served on Plaintiffs' Liaison Counsel, Leonard Davis, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with the Pretrial Order No. 6, and that the foregoing was also electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this January 12, 2016.

/s/      *Michael H. Barr*

94003848