# LEVIN, FISHBEIN, SEDRAN & BERMAN
*Counsellors at Law and Proctors in Admiralty*

ARNOLD LEVIN
MICHAEL D. FISHBEIN
HOWARD J. SEDRAN
LAURENCE S. BERMAN
FRED S. LONGER *
DANIEL C. LEVIN
CHARLES E. SCHAFFER
AUSTIN B. COHEN *
MICHAEL M. WEINKOWITZ * †
MATTHEW C. GAUGHAN * †
KEITH J. VERRIER *
BRIAN F. FOX
LUKE T. PEPPER

510 WALNUT STREET
SUITE 500
PHILADELPHIA, PA 19106-3697
www.lfsblaw.com

TELEPHONE (215) 592-1500
FACSIMILE (215) 592-4663

OF COUNSEL:
SANDRA L. DUGGAN

\* also admitted in New Jersey
† also admitted in New York



January 22, 2016

**Via Federal Express**
The Honorable John F. Kerry
Secretary of State
Office of the Secretary
United States Department of State
2201 C Street NW
Washington, DC 20520

    **Re:**    *In re: Chinese Drywall Litigation – MDL No. 2047*

Dear Secretary Kerry:

This letter is written in response to a letter of December 18, 2015 by the Embassy of the People's Republic of China to the Department of State. We respectfully request that your office provide this letter to the person or department that is the recipient of the letter from the Chinese Embassy.

We are responding to the letter from the Chinese Embassy in our capacity as the court appointed Plaintiffs' Liaison Counsel and Plaintiffs' Lead Counsel in the Chinese Drywall MDL proceedings now pending before the Honorable Eldon E. Fallon in the United States District Court for the Eastern District of Louisiana.[1] Our response is on behalf of the court appointed Plaintiffs' Steering Committee ("PSC") in the Chinese drywall proceedings.[2]

In its letter to the State Department, the Chinese Embassy contends that the Chinese State-

---

[1] *In Re: Chinese-Manufactured Drywall Products Liability Litigation*, MDL 2047 (E.D.La.).

[2] The December 18, 2015 letter forwarded the State Department a diplomatic note dated October 30, 2015. This letter is attached hereto as Exhibit "A". The *ex parte* communication was forwarded to Judge Fallon who had the same docketed in the Chinese Drywall MDL proceedings.

**LEVIN, FISHBEIN, SEDRAN & BERMAN**

The Honorable John F. Kerry
January 22, 2016
Page 2

Owned Asset Supervision and Administration Commission ("SASAC")[3] enjoys unlimited sovereign immunity and can never be a defendant in an American court under any circumstances. Notwithstanding this contention by the Chinese Embassy, SASAC is subject to federal jurisdiction through at least two exceptions to the Foreign Sovereign Immunities Act, 28 U.S.C. §1602, *et seq.* ("FSIA"), addressing "commercial activity" or "tortious acts."

The underlying litigation at issue involves thousands of homeowners primarily along the East Coast and in the Gulf Coast States, mostly in Florida, Louisiana, and Virginia, who suffered damages including but not limited to having their homes stripped to the studs as a result of corrosive gasses emanating from the Chinese Defendants' defective gypsum wallboard ("Chinese drywall") that was installed in their properties from 2005-2008. These homeowners have awaited redress for more than six years since MDL No. 2047 began in June 2009, from the manufacturers of the drywall and their controlling parent entities, including Taishan Gypsum Co., Ltd. ("Taishan"), Tai'an Taishan Plasterboard Co., Ltd. ("TTP"), Beijing New Building Materials Public Limited Company ("BNBM" or "BNBM PLC"), Beijing New Building Materials Group Co., Ltd. ("BNBM Group"), China National Building Materials Co., Ltd. ("CNBM"), and China National Building Materials Group Corporation ("CNBM Group").

After the devastation of Hurricanes Katrina and Rita at the end of the summer in 2005, and as a result of a housing boom in this country at that time, there was a shortage of drywall available in the United States. This created an opportunity for Chinese manufacturers to sell their drywall and related building materials to American customers. Beginning in the fall of 2005 and continuing through 2008, hundreds of millions of square feet of Chinese drywall were exported to the United States and installed in the homes of American citizens. Taishan and its wholly-owned subsidiary and alter ego TTP took advantage of this opportunity, shipping almost 86 million square feet of their Chinese drywall to customers in the United States. *See, generally, In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014) & 753 F.3d 521 (5th Cir. 2014).

Taishan's parent BNBM, with assistance from BNBM Group, also targeted customers in the United States, and in 2006, the BNBM Entities exported over 68 million square feet of BNBM's Chinese drywall to the United States. This Chinese Drywall has been installed in the homes of customers in Florida, and possibly elsewhere in the United States.

---

[3] SASAC is the controlling shareholder entity that appointed and manages CNBM Group and by extension the subsidiaries of CNBM Group. SASAC is a special commission of the People's Republic of China, directly under the State Council. SASAC is responsible for managing state-owned enterprises ("SOEs"), including appointing top executives and approving any mergers or sales of stock or assets, as well as drafting laws related to SOEs.

**LEVIN, FISHBEIN, SEDRAN & BERMAN**

The Honorable John F. Kerry
January 22, 2016
Page 3

CNBM Group, which is owned by SASAC, is the ultimate controlling shareholder and alter ego of a conglomerate of companies, including CNBM, BNBM Group, BNBM, Taishan, and TTP. CNBM Group exercises complete domination over its subsidiaries. CNBM Group controlled the actions of CNBM, the BNBM Entities and Taishan during the period that these entities exported Chinese drywall to the United States. The Chinese group corporate structure permits CNBM Group, known within its ranks as the "Big Group Corporation," to dominate and control each of its lesser subsidiaries. This controlling corporate structure is so well-known and commonly understood that commentators now recognize the "Chinese party state as a multi-faceted and over-bearing economic actor spawning a parade of politically well-endowed controlling shareholders uniquely positioned to dominate subsidiary corporations established as passive vehicles to attract public capital markets financing, and entirely in their own interest."[4]

While the above Chinese defendants have stubbornly refused to give redress to the nearly four thousand homeowners who have been impacted by their defective Chinese Drywall, in contrast to this, the other major manufacturer of Chinese Drywall, Knauf, a German entity who owned a Chinese wallboard company, settled the claims against it years ago. Knauf has remediated over four thousand homes at a cost of over $1 billion. Thus, there are several communities where a large number of homes that contained Knauf drywall have been remediated while their unfortunate neighbors, who own properties with Taishan and/or BNBM drywall, have seen no redress. Many of these individuals have either lost their homes to foreclosure, short-sales, or have been forced to relocate away from their homes.

Although all of these Chinese defendants were properly served with Complaints and related pleadings pursuant to the Hague Convention in the underlying litigation, they have refused to accept service of complaints pursuant to instructions from CNBM Group. Despite proper service, these Chinese Defendants sat out of the litigation, closely monitored the MDL proceedings, and deliberately allowed default judgments to be entered against them.

---

[4] *See* Nicolas C. Howson, *Protecting the State from Itself? Regulatory Intervention in Corporate Governance and the Financing of China's "State Capitalism,"* U. of Mich. Public Law Research Paper No. 423 at 19 n.27 (Jan. 13, 2015), available at http://ssrn.com/abstract=2515383. *See also* Adam Hersh, *Assessing China's Economic Reform Agenda*, Center for American Progress at 4 (May 1, 2014) ("These reorganized corporations assume many of the trappings of a modern global business, often including publicly traded shares and corporate boards with ostensibly independent external directors. But function does not necessarily follow form. In practice, these firms operate under quite different decision-making mechanisms, through official capacities or otherwise, than do comparable firms in the United States or other advanced economies."), available at https://www.americanprogress.org/issues/economy/report/2014/05/01/88864/assessing-chinas-economic-reform-agenda.

**LEVIN, FISHBEIN, SEDRAN & BERMAN**

The Honorable John F. Kerry
January 22, 2016
Page 4

In September 2012, Judge Fallon found he had personal jurisdiction over Taishan and TTP, and that Taishan and TTP are alter egos. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819 (E.D. La. 2012). Two separate panels of the Fifth Circuit have affirmed these rulings. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576 & 753 F.3d 521 (5th Cir. 2014).[5] Once these appeals were successfully concluded in favor of the PSC, the PSC proceeded to enforce the default judgment entered against Taishan. Taishan had other plans. At the direction of CNBM Group, it fired its American lawyers and on July 17, 2014, Taishan refused to appear for a Judgment Debtor Examination. Based on this brazen display of contempt, Judge Fallon entered a Contempt Order and enjoined Taishan and its affiliates and subsidiaries from doing business in the United States unless or until Taishan participates in the proceedings.

The next day, on July 18, 2014, CNBM and BNBM announced publicly that they disagreed with the Fifth Circuit's jurisdictional rulings. CNBM taunted its American victims by declaring that "since the major assets of the Company, BNBM and Taishan Gypsum are all located in China, ... the possibility of the US judgments being enforced in China is very low," because "there is no convention or treaty on mutual recognition and enforcement of judgments between China and the US."[6] Thus, they attempted to leave the homeowners without a remedy and without a home. Further, CNBM Group informed its affiliates and subsidiaries that they should no longer deposit funds in New York banks since foreign funds can be attached by proceeding against American subsidiaries. *See Koehler v. Bank of Bermuda, Ltd.*, 12 N.Y.3d 533, 883 N.Y.S.2d 763, 911 N.E.2d 825 (N.Y. 2009. These entities were also informed that they should only be using personal email addresses so as email correspondences would be more difficult to trace back to a specific corporate entity.

On September 26, 2014, Judge Fallon determined that BNBM PLC, CNBM, BNBM Group, and CNBM Group are affiliates of Taishan. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2014 WL 4809520, *6 (E.D. La. Sept. 26, 2014). After dozens of third-party depositions and 30(b)(6) depositions of the Chinese Defendants, and a review of over a million pages of documents, the PSC has uncovered substantial evidence that Taishan and its affiliated companies continued to do business in the United States in violation of Judge Fallon's Contempt Order. Indeed, Taishan's

---

[5] After sitting out of the litigation for more than five years, and despite the fact that two panels of the Fifth Circuit affirmed personal jurisdiction over Taishan and TTP, the CNBM and BNBM Entities have filed motions challenging the jurisdiction of the MDL Court. Thus, a matter that should have been addressed at the preliminary stages of this litigation is just now being considered nearly seven years into the litigation. This unprecedented delay is a direct result of the Chinese Defendants' deliberate decision to evade service of process and to avoid the proceedings before Judge Fallon.

[6] *See*, July 18, 2014 Announcement of CNBM, available at http://cnbm.wsfg.hk/preview/?docid=20045.

LEVIN, FISHBEIN, SEDRAN & BERMAN

The Honorable John F. Kerry
January 22, 2016
Page 5

affiliates have been so brazen as to institute litigation in United States courts and using our judicial system to recoup money damages all the while avoiding the proceedings before Judge Fallon in Louisiana. *See China National Building Material Investment Co., Ltd. v. BNK International, LLC and Jeffrey Chang*, No. 14-701 (W.D.Tex.).

While all of this underlying activity relating to violations of the Court's Contempt Order was proceeding against Taishan and its affiliates, separately, on July 29, 2014, the PSC filed a new Complaint directed against SASAC, *see Amorin v. SASAC*, 2:14-cv-1727 (E.D.La.) (it is this recent complaint which the Chinese Embassy's December 18, 2015 letter seeks to address). Immediately after filing the complaint in *Amorin v. SASAC*, the PSC began efforts to serve SASAC under the Hague Convention. As noted above, SASAC is the controlling shareholder that appointed and manages CNBM Group and by extension the subsidiaries of CNBM Group. On February 3, 2015, the Ministry of Justice for the People's Republic of China refused service of the Compliant against SASAC on the grounds that "[SASAC] is the Chinese central government agency which shall enjoy sovereign immunity and not be subject to foreign jurisdiction." Attached hereto as Exhibit "B" (emphasis supplied). On April 17, 2015, Judge Fallon authorized service upon SASAC pursuant to 28 U.S.C. § 1608(a)(3) [for a foreign state] and alternatively § 1608(b)(3)(B) [for an agency or instrumentality of a foreign state], which the Clerk of Court dispatched on April 29, 2015. The PSC also served SASAC through diplomatic channels on October 23, 2015. Accordingly, service on SASAC, as an agency of a foreign state, has been accomplished pursuant to the FSIA. Nevertheless, as the December 18, 2015 letter of the Embassy of China demonstrates, SASAC refuses to acknowledge that its progeny have been commercially active in the United States and have committed tortious acts here, as well.

Remarkably, the Vice Premier of China recently published an editorial in the WALL STREET JOURNAL, in which he refutes the very foundation laid by the Embassy of China in its letter to the Court.[7] Specifically, Mr. Wang Yang acknowledges in the editorial that he wrote and caused to be published that State-Owned Enterprises are not state agencies entitled to immunity: "over 95% of Chinese businesses are privately owned or controlled, and ... state-owned enterprises are responsible for their own operations, rather than being simply dictated to by the state." As a consequence, it follows that direct involvement of the State Department, the Embassy of China and other diplomatic channels, are unnecessary to resolve this litigation (other than to assist in service).

The Plaintiffs named on the *Amorin v. SASAC* Complaint are United States citizens who allege property damage due to the negligence of SASAC and its affiliated companies. These Plaintiffs are entitled to Due Process under the 5th and 14th Amendments of the United States

---

[7] Wang Yang, *U.S.-China Dialogue Pays Dividends*, WALL STREET JOURNAL (June 21, 2015), available at http://www.wsj.com/articles/u-s-china-dialogue-pays-dividends-1434922739.

LEVIN, FISHBEIN, SEDRAN & BERMAN

The Honorable John F. Kerry
January 22, 2016
Page 6

Constitution. SASAC's affiliates take issue with this basic tenet of American jurisprudence. SASAC and the other Taishan Defendants are not trustworthy.

It is respectfully submitted that the State Department should disregard the Chinese Embassy's entreaties.

The docket of the proceedings before Judge Fallon is voluminous and the Chinese defendants have designated many of the documents that have been produced in this litigation as confidential. Since the PSC believes many of these confidentiality designations are improper, the PSC would support an effort by the State Department to unseal documents and filings that have been improperly designated as confidential, as it is apparent that the only "true secret" unraveled in the litigation is the manner in which the Chinese defendants have conducted themselves in this litigation.[8]

Respectfully,

Arnold Levin
*Plaintiffs' Lead Counsel*

Russ Herman
*Plaintiffs' Liaison Counsel*

Encls.
cc:   The Honorable Eldon E. Fallon (via FedEx)

Ministry of Foreign Affairs of the People's Republic of China,
Department of Treaty and Law (via International FedEx)

Embassy of the People's Republic of China (via FedEx)

The Honorable Mitch McConnell (via FedEx)
Senate Majority Leader - Kentucky

---

[8] If the State Department is inclined to request the unsealing of documents filed in this litigation, the PSC would suggest that recent briefing on foreign sovereign immunity and personal jurisdiction defenses may be the most insightful to the State Department.

**LEVIN, FISHBEIN, SEDRAN & BERMAN**

The Honorable John F. Kerry
January 22, 2016
Page 7

       The Honorable Harry Reid (via FedEx)
       Senate Minority Leader - Nevada

       The Honorable Paul Ryan (via FedEx)
       Speaker of the United States House of Representatives

       The Honorable Nancy Pelosi (via FedEx)
       Minority Leader of the United States House of Representatives

       The Honorable Loretta E. Lynch (via FedEx)
       Attorney General of the United States

       The Honorable Max Baucus (via International FedEx)
       Ambassador of the United States of America to the People's Republic of China

       The Honorable Bill Nelson (via FedEx)
       US Senator - Florida

       The Honorable Marco Rubio (via FedEx)
       US Senator - Florida

       The Honorable Mark R. Warner (via FedEx)
       US Senator - Virginia

       The Honorable Timothy M. Kaine (via FedEx)
       US Senator - Virginia

       The Honorable David Vitter (via FedEx)
       US Senator - Louisiana

       The Honorable Bill Cassidy (via FedEx)
       US Senator - Louisiana

       Harry Rosenberg, Esquire (Defendants' Liaison Counsel) (via email)
       Bernard Taylor, Esquire (Counsel for Taishan Defendants) (via email)
       Christina Hull Eikhoff, Esquire (Counsel for Taishan Defendants) (via email)
       Michael H. Barr, Esquire (Counsel for BNBM Defendants) (via email)
       C. Michael Moore, Esquire (Counsel for BNBM Defendants)  (via email)
       Christopher Vejnoska, Esquire (Counsel for CNBM Defendants) (via email)
       James L. Stengel, Esquire (Counsel for CNBM Defendants) (via email)



中 华 人 民 共 和 国 大 使 馆
**EMBASSY OF THE PEOPLE'S REPUBLIC OF CHINA**
3505 International Place, N.W. Washington, D.C. 20008

CE204/15

The Embassy of the People's Republic of China presents its compliments to the Department of State of the United States of America and with respect to the lawsuit in the United States District Court for the Eastern District of Louisiana(Case No.: 2:14-cv-1727), against the State-owned Assets Supervision and Administration Commission of the State Council of the People's Republic of China (SASAC), has the honor to inform the latter as follows:

On October 30, 2015, the Ministry of Foreign Affairs of the People's Republic of China presented a diplomatic note（(2015)Bu Tiao Zi No. 212）to the Embassy of the United States of America in Beijing, elucidating the stance of the Chinese government on sovereign immunity enjoyed by SASAC from jurisdiction of US courts and requesting effective measures to be taken by the US side. The note is enclosed herewith, with a view to urging once again the US side to move for dismissal of the unwarranted lawsuit against SASAC.

The Embassy of the People's Republic of China avails itself of this opportunity to renew to the Department of State of the United States of America the assurances of its highest consideration.

Washington, D.C. December 18, 2015

Department of State
United States of America
Washington, D.C.

Cc: Department of Justice
   United States of America
   Washington, D.C.

Cc: Honorable Eldon E. Fallon
   US District Judge
   Case No.: 2:14-cv-1727
   US District Court for the Eastern District of Louisiana



# 中华人民共和国外交部

(2015)部条字第212号

美利坚合众国驻华大使馆：

　　中华人民共和国外交部向美利坚合众国驻华大使馆致意，并谨就中华人民共和国国务院国有资产监督管理委员会（以下简称"中国国资委"）在美被诉案陈述如下：

　　2014年以来，美国多名原告以中国有关企业输美石膏板质量存在问题为由向美法院提起诉讼，起诉中国国资委和中国建材集团及其下属五家企业，并将中国国资委列为第一被告，要求中国国资委承担连带赔偿责任，索赔金额超过15亿美元。美国路易斯安那州东区联邦地区法院受理了此案。近日美方试图通过外交途径向中方实施送达，中方对此表示不满和关切，并重申如下立场：

　　一、根据国际法上的国家主权平等原则，未经一国明示放弃司法管辖豁免，另一国不得受理和审理以该国为被告的诉讼，也不得对该国国家财产采取任何强制措施。中国国资委与外交部、财政部等单位一样，是中国中央政府的组成部门之一，无可争辩享有主权豁免。美国法院对中

国国资委没有管辖权，无权受理针对中国国资案的诉讼。

二、中国国资委与该案根本没有关系，在美国未从事涉及该案的任何行为。原告错误地认为中国国资委广泛控制中国建筑材料集团有限公司及其下属企业，在中国制造的石膏板出口美国一事中与各企业存在同谋和共同行动，甚至与这些企业构成"单一企业"。这是十分荒谬的，没有任何法律依据，中方不能接受。

三、美法院受理此案并试图通过各种途径向中方实施送达，严重侵犯了中国国家主权和国家利益。中方对此表示强烈不满和坚决反对，对此案继续发展可能导致的负面影响表示关切。希望美方从中美关系大局出发，高度重视中方关切，切实采取有效措施，妥善处理此案，并向法院出具利益声明，制止滥诉，避免此案给中美关系和两国经贸往来造成干扰和破坏。

顺致崇高敬意。



二〇一五年十月三十日于北京

( translation )

(2015) Bu Tiao Zi No. 212

The Ministry of Foreign Affairs of the People's Republic of China presents its compliments to the Embassy of the United States of America in Beijing and has the honour to make the following statement on the litigation in which the State-owned Assets Supervision and Administration Commission of the State Council of the People's Republic of China ( SASAC ) was sued in the United States of America.

Since 2014, several U.S. plaintiffs instituted a lawsuit in the U.S. against SASAC, China National Building Materials Group Corporation and five of its affiliates, on the ground that the drywalls exported to the U.S. by the relevant Chinese enterprises had quality defects, listing SASAC as the first defendant to be jointly and severally liable for compensation amounted to 1.5 billion U.S. Dollars. The United States District Court for the Eastern District of Louisiana accepted the lawsuit. Recently, the U.S. side attempted to serve on SASAC through diplomatic channels. The Chinese government hereby expresses its discontent and concerns with such action, and reiterates its positions as follows:

I. In accordance with the principle of sovereign equality of States under international law, a State may not accept or hear any lawsuit in which another State is a defendant, nor may it impose any compulsory measures against the State-owned properties of that State, unless the latter expressly waives its jurisdictional immunity. Like the Ministry of Foreign Affairs and the Ministry of Finance, SASAC is one of the ministries and commissions composing the Chinese central government and enjoys undisputed sovereign immunity. The U.S. court has no jurisdiction over SASAC, therefor no power to accept the lawsuit against SASAC.

II. SASAC is irrelevant to the case whatsoever and has not engaged in any activity in the United States of America that is related to this case. The plaintiffs mistakenly believed that SASAC has an extensive control over China National Building Materials Group Corporation and its affiliates, planned and acted jointly with relevant enterprises in exporting Chinese-made drywalls to the United States of America, and even constitutes a "single enterprise" with these enterprises. This is extremely ridiculous and

holds no legal grounds. The Chinese side could not accept it.

III. The U.S. court's acceptance of the lawsuit and the attempt to serve on SASAC through various channels has seriously infringed on the national sovereignty and interests of China. The Chinese side expresses its strong discontent with and resolute objection to such action, as well as serious concerns about the negative impacts that may be brought about by the development of the case. The Chinese side urges the U.S. government, from the perspective of the overall China-U.S. relationship, attach great importance to the concerns of the Chinese side and take effective measures to properly handle this case. It is also expected that a statement of interest be issued to the court to stop the abuse of judicial procedures, so as to avoid any disruption or damage to the China-U.S. Relationship, as well as the economic and trade ties between the two nations.

The Ministry of Foreign Affairs of the People's Republic of China avails itself of this opportunity to renew to the Embassy of the United States of America in Beijing the assurances of its highest consideration.

30 October, 2015

# 中华人民共和国司法部
## Ministry of Justice, People's Republic of China
No. 6, Chaoyangmen Nandajie, Chaoyang District, Beijing 100020, China
Tel: +86 10 6515 3113  Fax: +86 10 6515 3144

Beijing, 3 February 2015

Our Ref. No.: 2015-SXH-4

Your Case No.: 2:14-cv-1727 SECT L. Mag2

Jeff J. Karsten
APS INTERNATIONAL, LTD
APS International Plaza
7800 Glenroy Road
Minneapolis, Minnesota 55439-3122
USA

The request for service of documents has been received.

It is regretful to return the request because it does not comply with the provisions of the *Hague Convention on the Service abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters* (hereinafter referred to as the Convention), and the *Declaration* made by the People's Republic of China at the time of its accession. The specific reasons for the return are as follows (the item/items below which is/are marked with X):

( ) The address of the person to be served upon is not sufficiently provided (Paragraph 2 of Article 1).
( ) The form of the Request does not conform to the model annexed to the Convention (Paragraph 1 of Article 1).
( ) The terms in the Request are not written in the languages specified by the Convention (Article 7).
( ) The Request and the documents to be served are not furnished in duplicate (Paragraph 2 of Article 3).
( ) The documents to be served are not written in, or translated into Chinese (Article 5).
( ) The case relating to the request does not fall into the scope of the Convention (Paragraph 1 of Article 1).
(X) The execution of the request would infringe the sovereignty or security of the People's Republic of China (Article 13).
(X) Others: The State-Owned Assets Supervision and Administration Commission of the State Council is the Chinese central government agency which shall enjoy sovereign immunity and not be subject to foreign jurisdiction.

International Legal Cooperation Center
Ministry of Justice of the People's Republic of China
Contact: Tel: +86 10 6515 3113; Fax: +86 10 6515 3144; Email: ivylee319@vip.sina.com

* Enclosures: Documents forwarded by the applicant

CC to: United States District Court for the Eastern District of Louisiana

APPLICANT IS AUTHORIZED TO SERVE JUDICIAL PROCESS UNDER THE UNITED STATES FEDERAL RULES OF CIVIL PROCEDURE AND UNDER THE RULES OF CIVIL PROCEDURE OF THE STATE OF: Louisiana

# REQUEST

## FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS

### DEMANDE
### AUX FINS DE SIGNIFICATION OU DE NOTIFICATION A L'ÉTRANGER
### D'UN ACTE JUDICIAIRE OU EXTRAJUDICIAIRE

Convention on the Service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965.

*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile ou commerciale, signée à La Haye, le 15 Novembre 1965.*

| Identity and address of the applicant<br>*Identité et adresse du requérant* | Address of receiving authority<br>*Adresse de l'autorité destinataire* |
|---|---|
| Jeff J. Karsten<br>APS INTERNATIONAL, LTD<br>APS International Plaza<br>7800 Glenroy Road<br>Minneapolis, Minnesota 55439-3122<br>U.S.A.<br>Tel. 952.831.7776   Fax: 952.831.8150<br>Email: JKarsten@CivilActionGroup.com | Ministry of Justice<br>International Legal Cooperation Center (ILCC)<br>6, Chaoyangmen Nandajie<br>Chaoyang District<br>Beijing<br><br>P.C. 100020<br>People's Republic of China |

The undersigned applicant has the honour to transmit -- in duplicate -- the documents listed below and, in conformity with article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.,
(identity and address)

*Le requérant soussigné a l'honneur de faire parvenir -- en double exemplaire -- à l'autorité destinataire les documents ci-dessous énumérés, en la priant conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au destinataire, savoir:*

(identité et adresse)   The State-Owned Assets Supervision and Administration Commission of the State Council
No. 26, Xidajie, Xuanwumen, Xicheng District, Beijing, China, 100053

[X] (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention.*
   *a) selon les formes légales (article 5, alinéa premier, lettre a).*

[ ] (b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5)*:
   *b) selon la forme particulière suivante (article 5, alinéa premier, lettre b):* _____

[ ] (c) by delivery to the addressee, if he accepts it voluntarily (second paragraph of article 5)*.
   *c) le cas échéant, par remise simple (article 5, alinéa 2).*

The authority is requested to return or to have returned to the applicant a copy of the documents -- and of the annexes* -- with a certificate as provided on the reverse side.

*Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte -- et de ses annexes -- avec l'attestation figurant au verso.*

List of documents
*Énumération des pièces*

Summary of the Document to be Served
Summons in a Civil Action
Omnibus Class Action Complaint (XIX)
Translations

Done at   Minneapolis, Minnesota, U.S.A.   , the 19 August 2014
*Fait à*

Signature and/or stamp.
*Signature et/ou cachet.*

(Formerly OBD-116 which was formerly LAA-116,   USM-94
both of which may still be used)   (Est. 11/22/77)

* Delete if inappropriate.
*Rayer les mentions inutiles*

273626 - 1

Case Name: Amorin (Omni XIX) v. The State-Owned Assets Supervision and Administration Commission of the State Council
Defendant: The State-Owned Assets Supervision and Administration Commission of the State Council
Court Case No.: 14-1727 Section L   MDL 2047

## CERTIFICATE
## *ATTESTATION*

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,
*L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,*

1)  that the document has been served*
*1.  que la demande a été exécutée*
- the (date)
- *le (date)* _____
- at (place, street, number)
- *à (localité, rue numéro)* _____

- in one of the following methods authorised by article 5-
- *dans une des formes suivantes prévues à l'article 5:*
   [ ] (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention*.
       *a)   selon les formes légales (article 5, alinéa premier, lettre a).*
   [ ] (b) in accordance with the following particular method*:
       *b)   selon la forme particulière suivante:* _____

   [ ] (c) by delivery to the addressee, who accepted it voluntarily.*
       *c)   par remise simple*

The documents referred to in the request have been delivered to:
*Les documents mentionnés dans la demande ont été remis à:*
- (identity and description of person)
- *(identité et qualité de la personne)* _____

- relationship to the addressee (family, business or other):
- *liens de parenté, de subordination o autres, avec le destinataire de l'acte:* _____

2)  that the document has not been served, by reason of the following facts*:
*2.  que la demande n'a pas été exécutée, en raison des faits suivants:*
_____
_____
_____

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement*.

*Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint.*

LIST OF DOCUMENTS: Summary of the Document to be Served, Summons in a Civil Action, Omnibus Class Action Complaint (XIX), Translations

Annexes
*Annexes*
Documents returned:
*Pièces renvoyées:*

_____
_____

In appropriate cases, documents establishing the service:
*Le cas échéant, les documents justificatifs de l'exécution:*
_____
_____
_____

Done at _____, the
*Fait à* _____, *le* _____

Signature and/or stamp.
*Signature et/ou cachet.*

_____

* Delete if inappropriate.
  *Rayer les mentions inutiles.*

2

273626-1