UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>**THIS DOCUMENT RELATES TO:**<br>***Gross v. Knauf Gips KG, 2:09-cv-6690***<br>***Amorin v. Taishan Gypsum, 2:11-cv-1672***<br>***Amorin v. Taishan Gypsum, 2:11-cv-1395***<br>***Amorin v. Taishan Gypsum, 2:11-cv-1673***<br>***Amorin v. SASAC, 2:14-cv-1727***<br>***State of Louisiana v. Knauf, 2:10-cv-340***<br>***Abner v. Taishan Gypsum, 2:11-cv-3094***<br>***Posey v. BNBM Co., 2:09-cv-6531***<br>***Morris v. BNBM Co., 2:09-cv-6530*** | MDL No. 2:09-md-2047<br><br>SECTION L<br><br>JUDGE ELDON E. FALLON<br><br>MAGISTRATE JUDGE JOSEPH C. WILKINSON, JR. |

## DECLARATION OF DONALD CLARKE

I, DONALD CLARKE, declare as follows:

20.     I am a professor of law at the George Washington University Law School, where I have been employed since 2005. My academic specialization is the law of the People's Republic of China (the "PRC" or "China") in general and the legal regime of economic reform in particular, and I speak and read Chinese fluently. I have published a number of articles, comments, and book reviews pertaining to Chinese law.

21.     I previously provided a declaration in this case on or about June 15, 2015 (the "First Clarke Declaration").

3.     I have been asked to provide my opinion concerning whether the evidence proffered by Plaintiffs in their response to the Defendants' Motion to Dismiss would constitute grounds under Chinese law for piercing the corporate veil and rendering CNBM Group, CNBM Co., or CNBMIT liable for the debts or obligations of Taishan, TTP or BNBM PLC. In this declaration, I shall refer to various relevant entities as follows:

- China National Building Materials Group Corporation: "CNBM Group"

- CNBMIT Co. Ltd.: "CNBMIT"

- China National Building Material Co. Ltd.: "CNBM Co."

- CNBM Group, CNBM Co. and CNBMIT collectively: the "C-entity Defendants"

- Beijing New Building Materials Public Limited Company.: "BNBM PLC"

- Taishan Gypsum Co.: "Taishan"

- Taian Taishan Plasterboard Co.: "TTP"

- BNBM PLC, Taishan, and TTP collectively: the "Drywall Entities"

### *My Background*

4.    I graduated cum laude from Harvard Law School in 1987, where my studies focused on East Asian legal systems and I served as an editor of the Harvard Law Review. I earned a graduate degree (M.Sc. with Honors) in the Government and Politics of China from the School of Oriental and African Studies at the University of London in 1983. I also studied Chinese history for two years at Beijing University and Nanjing University in China from 1977 to 1979.

5.    From 1988 through 2004, I was on the faculty of the University of Washington School of Law ("UWLS"). From 1995 to 1998, I was on a leave of absence from the UWLS and worked as an attorney at Paul, Weiss, Rifkind, Wharton & Garrison ("Paul, Weiss"), a large United States law firm with a substantial China business practice. During that period, I visited China and Hong Kong approximately twice a year in the course of my work, a substantial amount of which was related to China. From 1998 through 2003, I regularly worked with Paul, Weiss as a consultant on Chinese law matters. Since that time I have maintained an independent consulting practice.

6.    I spent the calendar year 2003 in China conducting research on corporate governance issues as a Fulbright Fellow and Visiting Scholar at Tsinghua University Faculty of Law ("Tsinghua"). I visit China frequently and, from 2003 through 2014, spent at least three months a year there.

7.    I have served as adviser or consultant on Chinese law matters to a number of bodies, including the Asian Development Bank, the Agency for International Development, and the World Bank's Financial Sector Reform and Strengthening Initiative. I have testified on aspects of the Chinese legal system before the Congressional-Executive Commission on China and the United States-China Economic and Security Review Commission. I have been appointed to the Academic Advisory Group to the US-China Working Group of the United States Congress. I am admitted to the practice of law in the state of New York and am a member of the Council on Foreign Relations.

2

8.     I have served as an expert witness on Chinese law matters in over a dozen cases, most of them involving issues of the Chinese legal system or Chinese commercial law.

9.     A more complete statement of my credentials, including a list of publications, is set forth in my curriculum vitae, attached as Exhibit A.

*Materials Reviewed*

10.    In preparing this declaration, in addition to documents listed in my previous declaration, I have reviewed the PSC Response to the Motions to Dismiss (the "PSC Response") as well as various exhibits thereto.

*Summary of Opinion*

11.    In light of the specific factual bases alleged by Plaintiffs to pierce the corporate veil, I believe it is highly unlikely that a Chinese court, applying Chinese law, would pierce the corporate veils of the Drywall Entities through to the C-entity Defendants. While the evidence offered in the PSC Response appears to show that the C-entity Defendants exert some control and influence over subsidiaries, the level of control and influence exerted by the C-entity Defendants does not amount to the kind of "abuse of the independent status of the company" necessary for veil-piercing under Chinese law.  It does not appear that the C-entity Defendants are commingling funds, employees or businesses with the Drywall Entities; those are the factors a court typically examines when determining whether to pierce the corporate veil under Chinese law.

12.    As I explained in the First Clarke Declaration, Article 20(3) of the Company Law also requires *evasion* of debts to pierce the corporate veil.  I have seen no evidence that the C-entity Defendants or the Drywall Entities have used features of the corporate form to evade debts.[1]

13.    As I explained in the First Clarke Declaration, Chinese law sets a high bar for disregarding of the corporate form, even in businesses that are not state-owned. Moreover, no Chinese court has, to my knowledge, ever pierced the veil of a publicly-traded company, and I understand that both BNBM PLC and CNBM Co. are publicly-traded.  Thus, plaintiffs bear a heavy burden of proof in seeking to make the C-entity Defendants liable for the debts of the Drywall Entities pursuant to a veil-piercing theory under Chinese law.  In my opinion, a Chinese court is unlikely to find that that burden has been met.

---

[1] I recognize that it is the Plaintiffs' position that the C-entity Defendants should be liable for the debts of the Drywall Entities and are in that sense "evading" those debts, but that can only be the *conclusion* of a legal analysis, not the premise of one.

14.    Without opining on the validity of Plaintiffs' piercing arguments under various state laws, to the extent Plaintiffs are correct that state laws support piercing the corporate veil in this instance, a clear difference exists between Chinese law and the laws of the states at issue.  Moreover, to the best of my knowledge, Chinese law draws no distinction between veil-piercing in the liability and the jurisdictional contexts.

### *Alter-Ego Analysis under Chinese law*

15.    As I explained in the First Clarke Declaration, Chinese law permits veil-piercing, but is in general quite respectful of the corporate form.  Chinese courts recognize that veil-piercing is an extraordinary remedy.  According to a recent study, and to the best of my own knowledge, Chinese courts (like U.S. courts) have never pierced the veil of a publicly-traded company.[2]

16.    The relevant Chinese statute at present is Art. 20(3) of the Company Law, which states:

> Where the shareholder of a company abuses the independent status of the company as a legal person or the limited liability of shareholders, evades debts and thus seriously damages the interests of the creditors of the company, he shall assume joint and several liability for the debts of the company.

17.    As I explained in the First Clarke Declaration, Chinese courts look at a number of factors when determining whether to pierce the veil.[3]  These include, for example (1) whether the company and shareholder(s) commingle financial accounts or assets; (2) whether the company and shareholder(s) commingle organizationally, *i.e.*, in personnel; and (3) whether the company and shareholder(s) commingle in business: in short, whether the company has a meaningful separate existence.

18.    While Chinese courts also evaluate whether the company and its shareholder(s) have commingled business or personnel, as I explained in my previous declaration, limited overlap in directors, executives, or business scope (as opposed to entirely identical directors, officers and operations) is insufficient to pierce the corporate veil.  Indeed, corporate groups in China and throughout the world often have some level of interlocking directors and officers.

---

[2] *See* Robin Hui Huang, *Piercing the Corporate Veil in China Where Is It Now And Where Is It Heading?*, 60 AM. J. COMP. L. 743, 748 (2012). This study includes only reported cases, and therefore does not include cases that were dismissed before they reached the reporting stage or (because they were deemed hopeless) were never brought at all.

[3] *See* First Clarke Declaration, ¶¶ 21-39.

19.   Reported cases show that Chinese courts are willing to pierce the veils of closely-held companies, and suggest[4] that they may be particularly willing to do so in the case of single-owner companies. As of 2012, however, there were no reported cases in which a Chinese court had pierced the corporate veil of a company with six or more shareholders.[5]  This result is likely explained by two factors.  First, China's Company Law reverses the burden of proof in the case of a single-member limited liability company, and requires the sole member of such a company to prove that assets are not commingled.  Second, it may be that a company with numerous shareholders is more likely to respect corporate formalities and less likely to engage in commingling.

20.   I am aware of no cases in which a Chinese court has cited a corporate group's administrative measures, group-wide policies, audits, training seminars, loans or loan guarantees in determining to pierce a corporate veil.

*Opinion*

21.   I have reviewed the PSC's Response to the Motions to Dismiss and well as numerous exhibits relating to CNBM cited by Plaintiffs.  In general, and without intending to recite every allegation, I understand that the following facts are reflected in the record, unless noted otherwise:

    a.   CNBM Group is the controlling shareholder of CNBM Company.  In turn, CNBM Company is the controlling shareholder of BNBM PLC and BNBM PLC is the controlling shareholder of Taishan.  CNBM Group is also the ultimate controller of BNBM PLC as defined by the Shenzhen stock listing regulations.  I understand that CNBM Company's interest in BNBM PLC has varied from 60.3% in 2005 to 35.8% in 2015.  I understand that CNBM Company's indirect interest in Taishan has varied from approximately 25% in 2005 to 23% in 2015.  I also understand that CNBM Group's indirect interest in BNBM PLC has varied from approximately 41% in 2005 to 15.81% in 2015, and that its indirect interest in Taishan has varied from approximately 17% in 2005 to approximately 10.2% in 2015.

    b.   Certain officers or directors of CNBM Group have concurrent positions at CNBM Company, notably the Chairman Zhiping Song and the General Manager Jianglin Cao.  There is no allegation that non-executive employees of CNBM Group or CNBM Company overlap.  Likewise, some officers or directors of CNBM Company overlap or have overlapped with those of BNBM PLC, notably

---

[4] Subject to the caveat stated in note 2 above.

[5] *See* Huang, *supra* note 2, at 754.

President Jianglin Cao (who was also the Chairman of BNBM PLC from October 2004 to August 2009), Bing Wang and Zhangli Chang.  Again, there is no allegation that non-executive employees of CNBM Company or BNBM PLC overlap.  Finally, there are or were some interlocking directors of BNBM PLC and Taishan, namely Bing Wang and Tongchun Jia.  Once again, there is no allegation that non-executive employees of BNBM PLC or Taishan overlap.  There appears to be minimal overlap between the officers or directors of CNBM Company and Taishan (Bing Wang), and no overlap between the officers and directors of CNBM Group and those of Taishan.

c.      CNBM Group has issued certain administrative-measures or policies, including "measures for appointing representatives of capital contributors," which suggests that CNBM Group requests that its representatives consult with it concerning "significant decisions" made by a subsidiary.  CNBM Group has also disseminated other "administrative measures."  I understand that directors and officers of CNBM Company, BNBM PLC and Taishan are nominated, elected or confirmed in accordance with each company's respective articles of association.

d.      CNBM Group or CNBM Company have audit policies and have audited downstream entities and made corrective recommendations.

e.      CNBM Group has authored a document suggesting that it "guides" subsidiaries in adhering to a strategy in order to accomplish "strategic goals," that it exercises decision-making power on "major issues" such as investing, financing, and restructuring, that it "coordinates resources," and that it "guides" subsidiaries to establish a "set of unified enterprise cultur[al] values."

f.      CNBM Group or CNBM Company has authored various policies concerning issues such as the establishment of trade unions, risk management, and the management of loans and guarantees.

g.      CNBM Group held a 3-day seminar for group executives concerning leadership and management psychology.

h.      CNBM Company issued a statement in 2006 in which it stated that it intended to "participate more actively in the daily operations and management of [Taishan] with a view to improving its profitability."  I understand, however, that Chairman Tongchun Jia and others have denied that CNBM Company or CNBM Group are involved in Taishan's daily operations or management.

i.      CNBM Company has guaranteed loans of BNBM PLC.

k. CNBM Group, CNBM Company, BNBM Group and BNBM PLC at various times had offices located in the same building but on different floors. I understand that CNBM Group and CNBM Company maintain separate offices from Taishan, although Plaintiffs allege that Taishan has at times held shareholder meetings at CNBM offices.

l. When CNBM Group created CNBM Company, and prior to BNBM PLC's acquisition of Taishan, CNBM Group reorganized certain of its assets and those of other wholly-owned subsidiaries.

m. I understand that Plaintiffs allege that CNBM Group and CNBM Company have coordinated the litigation of this case with downstream entities.

n. I understand that Plaintiffs also allege a commingling of funds between CNBM Co. and Taishan. However, according to the Declaration of Zhangli Chang, the transaction in question was actually a loan from CNBM Co. to BNBM PLC, which BNBM PLC on-lent to Taishan, and which was subsequently repaid. Chang Decl., ¶ 6.

o. There do not appear to be any allegations relevant to an alter-ego determination with respect to CNBMIT contained in the Plaintiffs' Motion.

22. These factual allegations are not inconsistent with my previous opinion that Chinese law would not pierce the veil of the Drywall Entities through to the C-entity Defendants. As I explained in the First Clarke Declaration, CNBM Group's or CNBM Company's status as controlling shareholder on its own would not render them an alter ego of the controlled entity under Chinese law for veil-piercing purposes.

a. It does not appear that CNBM Group or CNBM Company have commingled assets with the Drywall Entities.

b. The overlap of officers and directors between CNBM Group and CNBM Company on the one hand, and BNBM PLC on the other hand, is limited.

c. The overlap of officers and directors between CNBM Group and CNBM Company on the one hand, and Taishan on the other hand, is even more limited. There does not appear to be any commingling of non-executive employees.

d. The offices of each of the companies appear to be separate, even if the offices of some of the entities (but not Taishan) are or were located in the same building on different floors.

7

e.    Taishan appears to have separate operations, and as Plaintiffs' expert Professor Milhaupt confirmed in his deposition, Taishan is not a shell company and does not appear to have been organized or used for fraudulent purposes.

23.    I have reviewed the declaration of Professor Milhaupt.  Both he and I agree that CNBM Group appears to be a typical Chinese SOE corporate group.  Regardless of whether it is governed by the formal norms of corporate law or the informal norms of Chinese politics, the point is that it is a business group that invests in other limited-liability subsidiaries to grow, just like business groups in the United States and many other countries. The mere fact of common purpose or common control is not sufficient in China to warrant piercing the corporate veil. The avenue through which that common purpose or common control is carried out is irrelevant. What is relevant under Chinese law is whether specific abuses took place: most notably, fraud or commingling of assets.

24.    The PSC Response cites a number of policies and administrative measures implemented within the entities associated with CNBM Group. Having reviewed the academic studies cited in this declaration and the First Clarke Declaration, I am aware of no cases in which a Chinese court has relied on such types of policies or administrative measures in deciding to pierce the corporate veil.  In my opinion, these types of policies and administrative measures do not provide a basis for piercing the veil under Chinese law.

25.    Likewise, the other factual allegations such as loans, loan guarantees, training seminars, audits, and coordination of this joint litigation do not reflect the factors that are associated with Chinese courts' decisions to pierce the corporate veil.

26.    I note that both CNBM Co. and BNBM PLC are publicly listed companies. To the best of my knowledge, courts in China have never pierced the veil in a publicly listed company.

27.    Given the above, I believe it is highly unlikely that a Chinese court would disregard the legal separateness of CNBM Group and CNBM Co. and find them to be a single entity or alter egos with the Drywall Entities.

28.    As reflected in the First Clarke Declaration, I understand that CNBMIT is not a direct or indirect owner of, and is not directly or indirectly owned by, BNBM PLC or Taishan. There are no allegations of commingling of assets, persons or business between CNBMIT on the one hand and BNBM PLC or Taishan on the other.  As there are no specific factual allegations concerning CNBMIT and its interactions with the Drywall Entities, I believe it is highly unlikely that a Chinese court would disregard the legal separateness of CNBMIT and find it to be a single entity or alter ego with them.

29.    While I am not opining on whether Plaintiffs' characterization or application of the state laws of Virginia, Florida or Louisiana concerning piercing the corporate veil in the

8

jurisdictional context are correct, *if* they are correct, then significant differences exist between Chinese law and the laws of the US states at issue.

30.    First, to the best of my knowledge, Chinese law makes no distinction between piercing the veil in the jurisdictional context and in the liability context, and the only Chinese veil-piercing statute I am aware of applies in the liability context.

31.    Second, as noted generally in this declaration and in the First Clarke Declaration, to succeed in piercing the corporate veil in China, it is not enough to show that the parent controls or influences the subsidiary; that is normal in corporate groups in many countries, including China and the United States, and is not considered an abuse of the corporate form or grounds for piercing the veil. Veil-piercing under Chinese law also requires an intention by the shareholders to wrongfully evade debts, typically by transferring assets from the controlled entity or in some other way defrauding creditors.[6] I note that there appear to be no such allegations here.  Thus, I believe it would be highly unlikely for a Chinese court to pierce the corporate veils in this instance.

32.    Therefore, to the extent that Plaintiffs are correct that Virginia law, Florida law or Louisiana law supports piercing the corporate veil here, then a significant conflict of law exists because Chinese courts, applying Chinese law, would be highly unlikely to pierce the corporate veils for the reasons I have discussed.

33.    In summary, Chinese law generally respects the legal separateness provided by the corporate form, and requires a strong showing of commingling of finances, personnel, or business—particularly finances—in order to negate it, especially in the state-owned sector and as to publicly-traded companies. The fact that one company owns a controlling equity stake in another and uses that stake to nominate and elect directors, involve itself in strategic decisions, issue high-level administrative procedures and measures, and conduct audits is not enough to negate the presumption of separateness under Chinese law. As I explained in the First Clarke Declaration, Article 20(3) of the Company Law requires the existence of *abuse* of corporate separateness and *evasion* of debts.  Even putting aside the fact that CNBM Group is a state-owned enterprise, in my opinion, it would be highly unlikely for a Chinese court to pierce the corporate veils and find that the Drywall Entities and the C-entity Defendants are alter egos in this instance.

* * * * *

---

[6] As I noted in the First Clarke Declaration, one of the classic grounds for piercing in American law, undercapitalization, is not technically grounds for piercing under Chinese law. At most, the shareholder will be required to make up the amount by which the company was undercapitalized. Chinese law does not provide grounds for going further. *See* First Clarke Declaration, ¶¶ 18. In any case, there appears to be no allegation of undercapitalization here.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 11, 2016, in Washington, D.C.

_____

Donald Clarke

# Exhibit A

DONALD C. CLARKE

David Weaver Research Professor of Law
George Washington University Law School
2000 H Street
Washington, DC 20052
Tel. (202) 994-2830
E-mail: dclarke@law.gwu.edu
World Wide Web: http://donaldclarke.net

CURRENT POSITION

• Professor, George Washington University Law School, Washington, DC (from Jan. 2005)

             Courses taught:    • Chinese Law
                                  • Chinese Business Law
                                  • Business Organizations
                                  • Law and Development

OTHER POSITIONS AND VISITORSHIPS

• Visiting Professor, Interdisciplinary Center, Herzliya, Israel (April-May 2013)
• Visiting Professor, Duke University Law School, Durham, NC (Spring 2012)
• Visiting Professor, University of California at Los Angeles School of Law, Los Angeles, CA (Fall 2008)
• Visiting Professor, New York University School of Law, New York, NY (2007-08)
• Professor, University of Washington School of Law, Seattle, Washington (1988-2004)
• Attorney, Paul Weiss Rifkind Wharton & Garrison, New York, New York (Sept. 1995-Aug. 1998) (on leave from University of Washington)
        Areas of practice: Corporate, East Asia (focusing on China)
• Lecturer in Commercial Law of the Far East, Department of Law, School of Oriental and African Studies, University of London, UK (Sept. 1985-July 1988)

EDUCATION

• *Harvard Law School*, Cambridge, Mass., USA (1983-85, 1986-87)—JD cum laude 1987
        Activities:      Editorial Board, *Harvard Law Review*
                            *Harvard International Law Journal*
• *School of Oriental and African Studies*, University of London, UK (1981-83)—MSc 1983 in Government and Politics of China
        Honors: Award of Distinction for thesis

- *Beijing University and Nanjing University*, People's Republic of China (1977-79) — Non-degree academic exchange program
    Major area of study: Chinese history
- *Princeton University*, Princeton, New Jersey, USA (1973-77) — BA cum laude 1977
    Major areas of study: International affairs (Woodrow Wilson School of Public and International Affairs); Certificate of Proficiency in East Asian Studies

## SCHOLARSHIPS AND FELLOWSHIPS

- Rowdget Young Visiting Fellow, Faculty of Law, University of Hong Kong, June 2005
- Fulbright Research Fellowship, 2003 (Tsinghua University Faculty of Law, Beijing)
- Visiting Fellow, China Law Center, Yale Law School, Fall 2001
- Research Fellowship, National Program, Committee on Scholarly Communication with the People's Republic of China, 1991-92
- Foreign Language and Area Studies Fellowship, 1986-87 (Harvard Law School)
- Foreign Language and Area Studies Fellowship, 1984-85 (Harvard Law School)
- Commonwealth Scholarship, 1981-83 (University of London)
- Canada-China Exchange Scholarship, 1977-79 (Peking University, Nanking University)

## PROFESSIONAL ASSOCIATIONS AND MEMBERSHIPS

- Member, Council on Foreign Relations
- Member, New York Bar
- Member, Executive Committee, East Asian Law & Society Section, Association of American Law Schools (2015-2017)
- Member, Executive Editorial Board, *American Journal of Comparative Law*
- Member, Editorial Board, *The China Quarterly*
- Member, Editorial Board, *Journal of Comparative Law*
- Member, Academic Advisory Group, US-China Working Group, United States Congress
- Affiliate Professor, University of Washington School of Law
- Director, U.S. China Law Society
- Director, Pacific Rim Law and Policy Association (publisher of *Pacific Rim Law and Policy Journal*)
- Member, Advisory Board, Center for Real Estate Law, Peking University Law School

## CONSULTANCIES (SELECTED)

- Financial Sector Reform and Strengthening (FIRST) Initiative, *Amendments to the Securities Law of the People's Republic of China*, 2004-2005
- Asian Development Bank, *Economic Law in the People's Republic of China: Retrospect and Prospect*, 2004-2005
- Asian Development Bank, *Amendments to the Company Law of the People's Republic of China*, 2001-2005

• Agency for International Development, *Commercial Law Reform in the Former Soviet Republics*, 2002
• Asian Development Bank, *China's Legal and Administrative System*, 2001

PUBLICATIONS

**Books**

*China's Legal System: New Developments, New Challenges* (Cambridge University Press, 2008) (edited volume)

**Articles and Monographs**

"China's Urban Land Regime: The Irrelevance of State Ownership," *China Quarterly* (forthcoming 2015)

"Zai fanyizhong yishi? Jianping Zhongguo gongsi fa zhong de yizhiti" (Lost in Translation? Legal Transplants in Chinese Corporate Law), in <u>Ge</u> Pingliang & <u>Liang</u> Jiaolong (ed.), *Waiguo Xuezhe Lun Zhongguo Fa Congshu – Gongsi Fa Fenjuan* (Collection of Works of Foreign Scholars Discussing Chinese Law—Company Law Volume) (Zhongguo Dabaike Quanshu Chubanshe (Great Encyclopedia of China Publishers), forthcoming 2015)

"Judicial Innovation in Chinese Corporate Law," in John O. Haley & Toshiko Takenaka (ed.), *Legal Innovations in Asia: Judicial Law-Making and the Influence of Comparative Law* (Edward Elgar, 2014): 259-272

"China's Stealth Urban Land Revolution," *Am. J. Comp. L.*, vol. 62, no. 2 (Spring 2014): 323-366

"Derivative Actions in the People's Republic of China" (with Nicholas C. Howson), in Dan W. Puchniak, Harald Baum & Michael Ewing-Chow (ed.), *The Derivative Action in Asia: A Comparative and Functional Approach* (Cambridge University Press, 2012): 243-295; *translated as* "Tongwang xiao gudong baohu zhi lujing: Zhongguo paisheng susong," in <u>Ge</u> Pingliang & <u>Liang</u> Jiaolong (ed.), *Waiguo Xuezhe Lun Zhongguo Fa Congshu – Gongsi Fa Fenjuan* (Collection of Works of Foreign Scholars Discussing Chinese Law—Company Law Volume) (Zhongguo Dabaike Quanshu Chubanshe (Great Encyclopedia of China Publishers), forthcoming 2015)

"'Nothing But Wind'? The Past and Future of Comparative Corporate Governance," *Am. J. Comp. L.*, vol. 59, no. 1 (Winter 2011): 75-110

"Law Without Order in Chinese Corporate Governance Institutions," *Nw. J. Int'l L. & Bus.*, vol. 30 (2010): 131-199; *translated as* "Zhongguo gongsi zhili zhidu: you fa er wu zhixu," in <u>Ge</u> Pingliang & <u>Liang</u> Jiaolong (ed.), *Waiguo Xuezhe Lun Zhongguo Fa Congshu – Gongsi Fa Fenjuan* (Collection of Works of Foreign Scholars Discussing

Chinese Law—Company Law Volume) (Zhongguo Dabaike Quanshu Chubanshe (Great Encyclopedia of China Publishers), forthcoming 2015)

"The Private Attorney-General in China: Potential and Pitfalls," *Wash. U. Global Studies L. Rev.*, vol. 8, no. 2 (2009): 241-255

"The Role of Non-Legal Institutions in Chinese Corporate Governance," in Curtis Milhaupt, Kon-Sik Kim and Hideki Kanda (ed.), *Transforming Corporate Governance in East Asia* (Routledge, 2008): 168-192

"The Role of Law in China's Economic Development" (with Peter Murrell and Susan Whiting), in Thomas Rawski and Loren Brandt (ed.), *China's Great Economic Transformation* (Cambridge University Press, 2008): 375-428

"China: Creating a Legal System for a Market Economy," Nov. 7, 2007 (report prepared for the Asian Development Bank) (available at http://ssrn.com/abstract=1097394)

"The Chinese Legal System Since 1995: Steady Development, Striking Continuities," *China Quarterly*, no. 191 (Sept. 2007): 555-566

"Legislating for a Market Economy in China," *China Quarterly*, no. 191 (Sept. 2007): 567-585

"Three Concepts of the Independent Director," *Delaware Journal of Corporate Law*, vol. 32, no. 1 (2007): 73-111 (available at http://ssrn.com/abstract=975111)

"How Do We Know When an Enterprise Exists? Unanswerable Questions and Legal Polycentricity in China," *Columbia Journal of Asian Law*, vol. 19, no. 1 (2005 [2006]): 50-71

"The Independent Director in Chinese Corporate Governance," *Delaware Journal of Corporate Law*, vol. 31, no. 1 (2006): 125-228 (available at http://ssrn.com/abstract=895588)

"Zhengfu chigu yu Zhongguo gongsi zhili" (Government Shareholding and Chinese Corporate Governance), *Hongfan Pinglun* (Hongfan Review [Journal of Legal and Economic Studies]), vol. 2, no. 2 (Sept. 2005): 230-248

"Yige bing buyuan de waiguo yueliang: Meiguo fan neimu jiaoyi falü zhidu" (A Foreign Moon That Is not Round: America's Anti-Insider Trading Legal Regime), *Hongfan Pinglun* (Hongfan Review [Journal of Legal and Economic Studies]), vol. 2, no. 1 (March 2005): 225-238

"Zhongguo xiuding 'Xing Fa' pingjia" (An Assessment of China's Revisions to the "Criminal Law"), in Xu Chuanxi (ed.), *Zhongguo Shehui Zhuanxing Shiqi de Falü Fazhan* (The Development of Law in China's Transitional Society) (Beijing: Falü Chubanshe [Law Press], 2004): 448-492

"Corporate Governance in China: An Overview," *China Economic Review*, vol. 14, no. 4 (2003): 494-507

"Empirical Research in Chinese Law," in Erik Jensen & Thomas Heller (eds.), *Beyond Common Knowledge: Empirical Approaches to the Rule of Law* (Stanford: Stanford University Press, 2003): 164-192

"Duli dongshi yu Zhongguo gongsi zhili" (The Independent Director and Chinese Corporate Governance), in Fang Liufang (ed.), *Fa Da Pinglun* (China University of

Politics and Law Review), vol. 2 (Beijing: Zhongguo Zheng-Fa Daxue Chubanshe [China University of Politics and Law Press], 2003): 99-122 (also in Hamada Michiyo & Wu Zhipan (ed.), *Gongsi Zhili yu Ziben Shichang Jianguan – Bijiao yu Jiejian* (Corporate Governance and the Regulation of Capital Markets: Comparisons and Lessons) (Beijing: Beijing Daxue Chubanshe [Beijing University Press], Jan. 2003)

"The Independent Director in Chinese Corporate Governance and the 'Guidance Opinion on the Establishment of an Independent Director System in Listed Companies'," in Wang Baoshu (ed.), *Touzizhe Liyi Baohu* (The Protection of Investors' Interests) (Beijing: Shehui Kexue Wenxian Chubanshe [Social Sciences Documentation Press], 2003): 142-165

"Economic Development and the Rights Hypothesis: The China Problem," *American Journal of Comparative Law*, vol. 51 (2003): 89-111

"China's Legal System and the WTO: Prospects for Compliance," *Washington University Global Studies Law Review*, vol. 2, no. 1 (2003): 97-118

"Puzzling Observations in Chinese Law: When Is a Riddle Just a Mistake?" in C. Stephen Hsu (ed.), *Understanding China's Legal System* (New York: New York University Press, 2003): 93-121

"Zhongguo de jiufen jiejue" (Dispute Resolution in China), in Jiang Shigong (ed.), *Tiaojie, Fazhi yu Xiandaixing: Zhongguo Tiaojie Zhidu Yanjiu* (Mediation, Legality, and Modernity: Studies in the Chinese Mediation System) (Beijing: Zhongguo Fazhi Chubanshe [China Legal System Press], 2001)

"Zhongguo tudi shiyong guanli zi xia er shang de celüe" (A Bottom-Up Strategy for Land Use Regulation in China), in Chi Fulin (ed.), *Zouru 21 Shiji de Zhongguo Nongcun Tudi Zhidu Gaige* (China's Rural Land System Reform Going Into the 21st Century) (Beijing: Zhongguo Jingji Chubanshe [China Economics Press], 2000): 299-303

"Chûgokuhô kenkyû no apurôchi: 'hô no shihai' paradaimu wo koete" (Approaches to Chinese Law: Beyond the 'Rule of Law' Paradigm), *Hikaku Hôgaku* (Studies in Comparative Law), vol. 34, no. 1 (2000): 73-91

"Alternative Approaches to Chinese Law: Beyond the 'Rule of Law' Paradigm," *Waseda Proceedings of Comparative Law*, vol. 2 (1998-1999): 49-62

"China and the World Trade Organization," in Freshfields (ed.), *Doing Business in China* (Yonkers, N.Y.: Juris Publishing, 1999): I-11.1 to I-11.30

"Private Enforcement of Intellectual Property Rights in China," *NBR Analysis*, vol. 10, no. 2 (April 1999): 29-41

*Wrongs and Rights: A Human Rights Analysis of China's Revised Criminal Code* (New York: Lawyers Committee for Human Rights, December 1998)

"Power and Politics in the Chinese Court System: The Execution of Civil Judgments," *Columbia Journal of Asian Law*, vol. 10, no. 1 (Spring 1996): 1-125

"The Creation of a Legal Structure for Market Institutions in China," in John McMillan & Barry Naughton (eds.), *Reforming Asian Socialism: The Growth of Market Institutions* (Ann Arbor: University of Michigan Press, 1996): 39-59

"The Execution of Civil Judgments in China," *China Quarterly*, no. 141 (March 1995): 65-81; translated into Japanese as "Chûgoku ni okeru minji hanketsu no kyôsei shikkô," in Hikota Koguchi (ed.), *Chûgoku no Keizai Hatten to Hô* (Tokyo: Waseda University Institute of Comparative Law, 1998): 343-367

"Antagonistic Contradictions: Criminal Law and Human Rights in China" (with James V. Feinerman), *China Quarterly*, no. 141 (March 1995): 135-154

"Justice and the Legal System," in Robert Benewick & Paul Wingrove (eds.), *China in the 1990s* (London: Macmillan, 1995): 83-93

"GATT Membership for China?," *University of Puget Sound Law Review*, vol. 17, no. 3 (Spring 1994): 517-531

"Regulation and Its Discontents:  Understanding Economic Law in China," *Stanford Journal of International Law*, vol. 28, no. 2 (Spring 1992): 283-322

"Dispute Resolution in China," *Journal of Chinese Law*, vol. 5, no. 2 (Fall 1991): 245-296

"What's Law Got to Do with It?  Legal Institutions and Economic Reform in China," *UCLA Pacific Basin Law Journal*, vol. 10, no. 1 (Fall 1991): 1-76

"Law, the State and Economic Reform in China," in Gordon White (ed.), *The Chinese State in the Era of Economic Reform:  The Road to Crisis* (London: Macmillan, 1991): 190-211

"Political Power and Authority in Recent Chinese Literature," *China Quarterly*, no. 102 (June 1985): 234-252

"Concepts of Law in the Chinese Anti-Crime Campaign," *Harvard Law Review*, vol. 98, no. 8 (June 1985): 1890-1908

## Blogs

*The Chinese Law Prof Blog*, http://lawprofessors.typepad.com/china_law_prof_blog/
Co-blogger, *ChinaFile*, http://www.chinafile.com (sponsored by the National Committee on US-China Relations)

## Unpublished Working Papers

"Lost in Translation? Corporate Legal Transplants in China" (July 3, 2006), GWU Law School Public Law Research Paper No. 213 (available at http://ssrn.com/abstract=913784)

"The Enforcement of United States Court Judgments in China: A Research Note" (May 27, 2004) (available at http://ssrn.com/abstract=943922)

## Translations

"The Management Liability of Directors," *Law in Japan*, vol. 20 (1987): 150-172 (translation from Japanese of M. Kondô, "Torishimariyaku no keiei sekinin")

## Short Articles, Comments, and Book Reviews

"Alibaba Shareholder Disenfranchisement: Worse than You Think," *FT Alphaville*, Oct. 20, 2014, http://on.ft.com/1vUEjQl

"The Significance of Recent Detentions for the Rule of Law in China," testimony before the Congressional-Executive Commission on China, in *Understanding China's Crackdown on Rights Advocates: Personal Accounts and Perspectives*, April 8, 2014, *available at* http://1.usa.gov/1j31ZK3

"Why Hefei?", *Caixin Online*, July 27, 2012, http://english.caixin.com/2012-07-27/100416240.html

"Waizi kongzhile Zhongguo hulianwang ma?" (Does Foreign Capital Control the Chinese Internet?), *Caixin Wang* (Caixin Online), July 22, 2011, http://www.caing.com/2011-07-22/100282578.html (Chinese-language version of "Who Owns the Chinese Internet" below)

"Who Owns the Chinese Internet?", *Caixin Online*, July 15, 2011, http://english.caing.com/2011-07-15/100279928.html, also in *Caixin Weekly*, no. 36 (July 25, 2011): 58-60

"China's Jasmine Crackdown and the Legal System," *East Asia Forum* (Australian National University), May 26, 2011, http://www.eastasiaforum.org/2011/05/26/china-s-jasmine-crackdown-and-the-legal-system/ (alternate URL: http://bit.ly/k8eI2U)

"New Approaches to the Study of Political Order in China," *Modern China*, vol. 36, no. 1 (2010): 87-99

"Lawyers and the State: Recent Developments," testimony before the Congressional-Executive Commission on China, Washington, D.C., October 7, 2009

"Lawsuits as Criticism," in "Room for Debate: China's New Rebels," *New York Times*, June 2, 2009, http://nyti.ms/kKt9sl

"Law, Institutions, and Property Rights in China" (with Peter Murrell and Susan Whiting), *Woodrow Wilson International Center for Scholars Asia Program Special Report*, no. 129, 2005: 42-47

"Xintuo zeren de zhenzheng yiyi -- yu Lang Xianping jiaoshou shangque" (The True Meaning of Fiduciary Liability: A Discussion with Professor Lang Xianping), *Zhongguo Zhengquan Bao* (China Securities News), Dec. 5, 2003

"Ruhe quezhi yijia gongsi de cunzai: Zhongguo fa shang de kunhuo he falü duoyuan zhuyi" (How Do We Know When an Enterprise Exists? Unanswerable Questions and Legal Polycentricity in Chinese Law), in Wang Baoshu (ed.), *Quanqiu Jingzheng Tizhi Xia de Gongsi Fa Gaige* (Company Law Reform in a System of Global Competition) (Beijing: Shehui Kexue Wenxian Chubanshe [Social Sciences Documentation Press], 2003): 74-76

"Corporatisation, Not Privatisation," *China Economic Quarterly*, vol. 7, no. 3 (2003): 27-30

Review of Peter Murrell (ed.), *Assessing the Value of Law in Transition Economies* (Ann Arbor: Univ. of Michigan Press, 2001), in *Journal of Economic Literature*, vol. 41 (June 2003): 624-625

"China" (with Nicholas Howson and Lester Ross), in *Insolvency & Restructuring 2003* (London: Law Business Research, 2003): Chapter 9

Statement Before the Congressional-Executive Commission on China (June 6, 2002), in "WTO: Will China Keep Its Promises? Can It?", *Hearing Before the Congressional-Executive Commission on China*, 107th Congress, Second Session (Washington, D.C.: U.S. Government Printing Office, 2002): 66-78

Statement Before the United States-China Security Review Commission (Jan. 18, 2002) [on China's accession to the World Trade Organization], in *Compilation of Hearings Held Before the U.S.-China Security Review Commission*, 107th Congress, First and Second Sessions (Washington, D.C.: U.S. Government Printing Office, 2002): 1171-1181

"China" (with Lester Ross), in *Insolvency & Restructuring 2002* (London: Law Business Research, 2002): 57-63 (Chapter 9)

"Dispute Resolution in China: The Arbitration Option" (with Angela H. Davis), in Asia Law and Practice (ed.), *China 2000: Emerging Investment, Funding and Advisory Opportunities for a New China* (Hong Kong: Euromoney Publications (Jersey) Limited, 1999): 151-162

"State Council Notice Nullifies Statutory Rights of Creditors," *East Asian Executive Reports*, vol. 19, no. 4 (April 15, 1997): 9-15

"China's New Partnership Law" (with Nicholas Howson and Gangliang Qiao), *The China Business Review*, July-August 1997: 30-33

"Shanghai Measures on Land Use by FIEs: An Indication of Coming Changes in the National System?" (with Nicholas C. Howson), *East Asian Executive Reports*, vol. 18, no. 11 (November 15, 1996): 9-13

"Bill Jones: An Appreciation," *Washington University Law Quarterly*, vol. 74 (Fall 1996): 545-546

"Methodologies for Research in Chinese Law," *University of British Columbia Law Review*, vol. 30, no. 1 (1996): 201-209

"One Step Back Permits Two Steps Forward," *China Rights Forum*, Fall 1996: 8-11

"Developing P.R.C. Property and Real Estate Law: Revised Land Registration Rules" (with Nicholas C. Howson), *East Asian Executive Reports*, vol. 18, no. 4 (April 15, 1996): 9, 13-17

"Implementation of Central Policy and the Law in China," *European Association for Chinese Law Information Bulletin* (1991)

"Foreign Economic Laws and Bureaucracy in China," *European Association for Chinese Law Information Bulletin*, vol. 5, no. 4 (December 1989): 3-7

Review of Frank K. Upham, *Law and Social Change in Postwar Japan* (1987), in *Bulletin of the School of Oriental and African Studies* (1989)

Contribution on the People's Republic of China for "Crime and Punishment" section of the *Encyclopaedia Britannica* (1989)

Review of Michael J. Moser (ed.), *Foreign Trade, Investment, and the Law in the People's Republic of China* (2nd ed. 1987), in *Lloyd's Maritime and Commercial Law Quarterly*, 1989, Part 1: 129-130 (February 1989)

"Relief on the Way for Foreign Investors," *South* (June 1987): 32

Review of J. Oldham (ed.), *China's Legal Development* (1986), in *China Quarterly*, no. 109 (March 1987): 122-123

Review of D.T.C. Wang, *Les sources du droit de la République populaire de Chine* (1982), in *China Quarterly*, no. 108 (December 1986): 727-728

Review of M.D. Pendleton, *Intellectual Property Law in the People's Republic of China* (1986), in *European Intellectual Property Review*, vol. 8, no. 10 (October 1986): 323-324

Review of D. Solinger, *Chinese Business Under Socialism. The Politics of Domestic Commerce, 1949-1980* (1984), in *China Quarterly*, no. 106 (June 1986): 348-350

Review of P. Gladwin & A. Hameed, *Guide to the Patent Law of the People's Republic of China* (1985), in *European Intellectual Property Review*, vol. 8, no. 5 (May 1986): 160

"China's New Rule of Law," *Britain-China*, no. 31 (Spring 1986): 11-14

"Proposed Consent Agreement Between General Motors Corporation and Toyota Motor Corporation," *Harvard International Law Journal*, vol. 25, no. 2 (Spring 1984): 421-427

## LECTURES, INTERVIEWS, PRESENTATIONS, AND CONFERENCE APPEARANCES

"Anti Anti-Orientalism, or Is Chinese Law Different?", invited lecture, University of Michigan Center for Chinese Studies Occasional Lecture Series, Ann Arbor, MI, March 25, 2015

"Anti Anti-Orientalism, or Is Chinese Law Different?", keynote address, *Law and the Legal Profession in China Conference*, University of Pittsburgh School of Law, Pittsburgh, PA, Feb. 27, 2015

"The Bonding Effect in Cross-Listed Chinese Companies: Is It Real?", conference paper presented at *Public and Private Enforcement of Company Law and Securities Regulation — China and the World*, sponsored by Chinese University of Hong Kong, University of Michigan Law School, and University of Michigan Center for Chinese Studies, Hong Kong, Dec. 13, 2014

"China's Stealth Urban Land Revolution," invited lecture at Fall 2014 Speaker Series, Institute for the Study of International Development, McGill University, Montreal, Canada, Nov. 27, 2014

"Fourth Plenum Legal Reforms and Their Implications for US-China Relations," talk presented at conference on *Corruption, Constitutionalism & Control: Implications of the 4th Plenum for China and U.S.-China Relations*, Woodrow Wilson International Center for Scholars, Washington, DC, Nov. 25, 2014

"Local Government Financing Vehicles in China and their Debt: The Legal Picture," talk presented at Sigur Center for Asian Studies, George Washington University, Nov. 25, 2014

"Legal Developments in China Since the Third Plenum," panel presentation at American Association for Chinese Studies Annual Meeting, Washington, DC, Oct. 11, 2014

"The Significance of Recent Detentions for the Rule of Law in China," testimony before the Congressional-Executive Commission on China, Washington, DC, April 8, 2014

Interviewed for the United States-China Policy Foundation's *China Forum*, available at http://youtu.be/7hfwjStUcDs, April 2, 2014

Moderator for panel on "Wider Implications of Asian Maritime Tensions," Mansfield Foundation conference on *Maritime and Territorial Disputes in East Asian Waters*, Washington, DC, Feb. 12, 2014

Speaker at Third Annual China Intellectual Property Conference, George Washington University Law School, Washington, DC, Dec. 11, 2013

"Legal Aspects of Entrepreneurship in China," presentation at US-China Legal Exchange (co-organized by U.S. Department of Commerce and P.R.C. Ministry of Commerce), George Washington University Law School, Washington, DC, Dec. 3, 2013

"China's Stealth Urban Land Revolution," seminar presentation, Yale Law School, April 4, 2013

"China's Stealth Urban Land Revolution," seminar presentation, Columbia Law School, March 1, 2013

Participant in *Fourth Sino-American Dialog on Rule of Law and Human Rights*, sponsored by the National Council on US-China Relations and the China Foundation for Human Rights Development, Haikou, China, Dec. 3-7, 2012

Discussant at *Festschrift Conference in Honor of Professor John Haley: Law in Japan and Its Role in Asia – Between East and West*, University of Washington School of Law, Seattle, Oct. 19, 2012

"China's Stealth Urban Land Revolution," invited lecture at University of Amsterdam, June 18, 2012

"China's Informal Constitutional Order," presentation at *Social Change and the Constitution: A Conference on the Occasion of the 30th Anniversary of the 1982 Constitution of the People's Republic of China*, Free University of Berlin, June 15-17, 2012

"Local Government Bonds in China: What's Behind Them?", presentation at *Shanghai Forum 2012*, sponsored by Fudan University and Korean Foundation for Advanced Studies, Shanghai, May 27, 2012 (in Chinese)

"China's Stealth Urban Land Revolution," presentation at *Perspectives on Chinese Law* conference, George Washington University Law School, Washington, DC, April 13, 2012

Panelist in "Who Makes Your iPhone? China Migration, Labor, and Human Rights," *Program in Public Law*, Duke Law School, Durham, NC, April 4, 2012

Panelist in "China's Environmental Policy," Duke Law School, Durham, NC, March 29, 2012

Interviewed by Radio Australia on recent developments in Chinese law, Mar. 21, 2012

Roundtable participant in conference on *Democracy in China and Southeast Asia: Local and National Perspectives*, Princeton University, Princeton, NJ, March 15, 2012

"China's Stealth Urban Land Revolution," Duke Law School, Durham, NC, Feb. 29, 2012

Participated in panel on "The Rule of Law and Economic Background" at conference on *Patents, Trade, and Innovation in China,* George Washington University Law School, Washington, DC, Dec. 13, 2011

Panelist at NYU Law School's *17th Annual Timothy A. Gelatt Dialogue on the Rule of Law in Asia, China's Quest for Justice: Law and Legal Institutions Since the Empire's Collapse*, Nov. 7, 2011

"Zhongguo de yinxing chengshi tudi geming" (China's Stealth Urban Land Revolution), presentation to Hongfan Institute of Law and Economics, Beijing, June 25, 2011 (in Chinese)

"Recent Developments in China's Legal System and Their Implications for Rule of Law," presentation sponsored by Economist Intelligence Unit, Shanghai, May 27, 2011

"Derivative Actions in China," invited lecture at Hong Kong University Faculty of Law, Hong Kong, May 12, 2011

Commentator, conference on *Criminal Justice in China: Comparative Perspectives*, sponsored by Chinese University of Hong Kong, Hong Kong, May 7-8, 2011

"Derivative Actions in China," presentation to faculty at Fordham University Law School, New York, March 7, 2011

"Derivative Actions in China," presentation to faculty at Duke University Law School, Durham, March 3, 2011

Discussant, *Second Sino-American Dialogue on the Rule of Law and Human Rights*, sponsored by the National Council on US-China Relations and the China Foundation for Human Rights Development, Xiamen, Dec. 7-8, 2011

"Transnational Litigation Involving China," presentation at conference on *Law and Business in China*, sponsored by the Faculty of Law and the Asian Studies Program of Pontificia Universidad Católica de Chile, Santiago, Nov. 25-26, 2010

"Understanding the Chinese Legal System: Searching for the Right Paradigm," invited lecture at University of Buenos Aires Faculty of Law, Buenos Aires, Nov. 22,2010

"Is Chinese Law Different?", invited lecture at Universidad Torcuato Di Tella Faculty of Law, Buenos Aires, Nov. 22, 2010

"Governance and China's Evolving Relationship with Its Citizens," panel presentation at *Economist* conference *China Summit: China and the New World Disorder*, Beijing, Nov. 3, 2010

"Derivative Actions in the People's Republic of China," presentation at conference on *The Prospect of Structural Reform of the Corporate Legal System*, sponsored by Tsinghua University Faculty of Law, Beijing, Oct. 30-31, 2010

"The Interface Between the Regulation of China's Internal Market and the Global Trading System," seminar presentation, Yale Law School, Oct. 5, 2010

"The Interface Between the Regulation of China's Internal Market and the Global Trading System," seminar presentation, Columbia Law School, New York, Sept. 28, 2010

Commentator at conference on *The Global Financial Crisis and China's Development*, sponsored by the University of Chicago Center in Beijing and Renmin University School of Economics, Beijing, July 30-31, 2010

"Local Experimentation in the Chinese Legislative System," paper presented at *China-US Rule of Law Dialogue*, sponsored by the China-US Exchange Foundation, Beijing, July 29-30, 2010

"Shareholder Derivative Suits in China," invited lecture, Hong Kong University Faculty of Law, Hong Kong, June 1, 2010

Panelist on "Business Law" panel at George Washington University Law School-Georgetown University Law Center conference *Six Decades of Asian Law: A Celebration of Professor Jerome Cohen*, Washington, D.C., February 19, 2010

"Lawyers and the State in China: Recent Developments," testimony at hearing on *Human Rights and Rule of Law in China*, Congressional-Executive Commission on China, Washington, D.C., October 7, 2009

"Trends in Comparative Corporate Law Scholarship," panel presentation at Association of American Law Schools Mid-Year Conference, Long Beach, California, June 9, 2009

"Who and What Matters in Chinese Stock Markets: Implications for Regulation," presentation at symposium *A New Era Dawns for Asian Capital Markets*, Asia Law Society, University of Michigan Law School, Ann Arbor, 21 March 2009

"The Concept of the Extra-Legal in Chinese Law," presentation at Global Law Workshop, George Washington University Law School, Washington, D.C., 23 February 2009

"Is Chinese Law Different?", lecture presented at United States Naval Academy, Annapolis, Maryland, 13 February 2009

"Does Chinese Law Matter?", presentation to United States Treasury Department, Washington, D.C., 12 February 2009

"The Concept of the Extra-Legal in Chinese Law and Its Significance," lecture presented at seminar *Are Politics Really in Command? China and the Rule of Law*, Norwegian Centre for Human Rights, China Programme, Oslo, 16 January 2009

"Private Enforcement of the Public Interest in China: Potential and Pitfalls," lecture presented at UCLA Center for Chinese Studies, Los Angeles, 24 November 2008

"The Ecology of Corporate Governance in China," presentation at UCLA School of Law Faculty Colloquium, Los Angeles, 14 November 2008

"Selfishness in the Public Interest? The 'Private Attorney-General' in China," lecture presented at School of International Relations and Pacific Studies, University of California at San Diego, 30 October 2008

"New Developments in Chinese Property Law," presentation at 2008 US-China Business Law Conference at UCLA, Los Angeles, 24 October 2008

"The Ecology of Corporate Governance in China," presentation at University of Illinois Law School Faculty Workshop, Champaign, Ill., 20 October 2008

"Delaware's Dysfunctional Derivative Suit Doctrine," lecture presented at Faculty of Law, Renmin University, Beijing, 11 June 2008 (in Chinese)

"Three Concepts of the Independent Director," paper presented at Contemporary Corporate Law Scholarship Reading Group (seminar course conducted by Prof. Jeffrey Gordon, Columbia Law School), 23 April 2008

"Chinese Corporate Governance in Global Context," lecture presented at Yale University, sponsored by Yale Working Group on Corporate Governance and Millstein Center for Corporate Governance and Performance, 22 April 2008

"Corporate Governance Institutions in China," presentation at New York University School of Law Faculty Workshop, 14 April 2008

Commentator at *Conference on Law, Commerce and Development*, New York University School of Law, New York, 12 April 2008

Discussant at panel on *New Dimensions in China Watching: Internet Forums and the Study of Contemporary China*, Association for Asian Studies Annual Meeting, Atlanta, 3 April 2008

"Chinese Corporate Governance: All Sizzle, No Steak?", roundtable presentation at Council on Foreign Relations, New York, 19 November 2007

"The Institutional Environment of Chinese Corporate Governance," lecture presented at China House series on *The Legal Infrastructure of New China*, New York University, New York, 14 November 2007

"Forum Non Conveniens Issues in China-Related Litigation," presentation at *Global Justice Forum*, Columbia Law School, New York, 2 November 2007

"The Ecology of Chinese Corporate Governance," presentation at Chinese Law Workshop, Yale Law School, New Haven, 29 October 2007

"Private Attorney-General Litigation in China," paper presented at conference on *Chinese Justice*, Fairbank Center for East Asian Research, Harvard University, 12 October 2007

"The Ecology of Chinese Corporate Governance," lecture delivered at Max Planck Institute, Hamburg, Germany, 30 July 2007

Discussant at panel on *Comparative Corporate Governance: Law in Context*, Law and Society Association Annual Meeting, Berlin, 26 July 2007

"The Ecology of Chinese Corporate Governance," paper presented at panel on *Law and Development: The China Consensus?*, Law and Society Association Annual Meeting, Berlin, 26 July 2007

"China: Creating a Legal System for a Market Economy," report delivered at symposium on *Development and Reform of China's Legal and Judicial System: Review and Prospect*, sponsored by the Asian Development Bank, Beijing, 14-15 May 2007

Commentator, conference on *China's Financial System Reforms and Governance*, School of Advanced International Studies, Johns Hopkins University, Washington DC, 16 April 2007

"Is Chinese Law Different?", public lecture sponsored by East Asian Studies Program, Princeton University, Princeton, New Jersey, 10 April 2007

"The Role of Law in China's Economic Development," public lecture sponsored by Department of Economics, Middlebury College, Middlebury, Vermont, 5 April 2007

Panelist, "The Academic Perspective and Recent Research," *OECD-China Policy Dialogue on Corporate Governance*, sponsored by the OECD, Shanghai Stock Exchange, State Assets Supervision and Administration Commission, Chinese Securities Regulatory Commission, Development Research Center, Government of Japan, Global Corporate Governance Forum, and Millstein Center for Corporate Governance and Performance at Yale School of Management, 29-30 March 2007

Public lecture, "The Ecology of Chinese Corporate Governance," sponsored by Asian Institute of International Financial Law, Faculty of Law, University of Hong Kong, 2 March 2007

"The Rule of Law in China," roundtable discussion (with Jerome A. Cohen), MITRE Corporation, Washington, DC, 2 February 2007

Guest lecturer, National Taiwan University Faculty of Law, "The Institutional Environment of Corporate Governance in China" (in Chinese), 22 December 2006

Guest lecturer, New York University Law School, "Chinese Constitutional Law", 14 November 2006

"The Institutional Environment of Corporate Governance in China", lecture presented as part of Clarke Program Colloquium Series, Cornell Law School, 3 November 2006

"The Role of Non-Legal Institutions in Chinese Corporate Governance", paper presented at authors' workshop on *A Decade After Crisis: The Transformation of Corporate Governance in East Asia* sponsored by the Center of Excellence Program in Soft Law at the University of Tokyo, the Center on Financial Law at Seoul National University, and the Center for Japanese Legal Studies at Columbia Law School, Tokyo, 1 October 2006

"The Institutional Environment of Chinese Corporate Governance", paper presented at panel on *Legal Aspects of the Economic Transformation in China*, annual conference of the International Society for New Institutional Economics, Boulder, Colorado, 23 September 2006

"Law and the Economy in China: The Past Decade", paper presented at authors' workshop on *Developments in Chinese Law: The Last Ten Years*, sponsored by *The China Quarterly* and All Souls College, Oxford University, Oxford, UK, 15 September 2006

"The Institutional Environment of Corporate Governance in China and Its Policy Implications", paper presented at conference on *Corporate Governance in East Asia:*

*Culture, Psychology, Economics and Law*, Berkeley Center for Law, Business and the Economy, Boalt Hall School of Law, 5 May 2006

Guest lecturer, Yale Law School, "Recent Revisions to China's Securities Law", 4 April 2006

Commentator, Roundtable on "China's Emerging Financial Markets: Opportunities and Obstacles," Transactional Studies Program, Columbia Law School, New York, 19 January 2006

Speaker at Timothy A. Gelatt Memorial Dialog on Law and Development in Asia, New York University Law School, New York, 18 January 2006

Speaker and participant in workshop on administrative rule-making under China's new Securities Law, sponsored by the FIRST Initiative, the Finance and Economics Committee of the National People's Congress, and the World Bank, Beijing, 14-15 January 2006

Panelist, "The Globalization of American Law? Comparative Law and the New Legal Transplants", Section on Comparative Law, American Association of Law Schools annual meeting, Washington, DC, 5 January 2006

Panelist, "Improving the Fairness and Transparency of Judicial Decisions", conference on *Rule of Law Developments in China*, sponsored by the Bureau of Democracy, Human Rights, and Labor, Department of State, Washington, DC, 7 November 2005

Interviewed on BBC World Service on recent developments in death penalty procedures in China, 26 October 2005

"Lost in Translation: Legal Transplants in Chinese Corporate Law", Rowdget Young Visiting Fellow Lecture, University of Hong Kong Faculty of Law, Hong Kong, 4 June 2005

"The Independent Director in Chinese Corporate Governance", invited paper presented at 4th Asian Corporate Governance Conference, co-hosted by Asian Institute of Corporate Governance, Korea University and Center for Financial Law, Seoul National University, sponsored by World Bank Global Corporate Governance Forum, Seoul, 19-20 May 2005

"The Legacy of History in China's Legal System", paper presented at conference on *The Rule of Law: Chinese Law and Business*, Centre for Socio-Legal Studies, Oxford University, May 11-13, 2005

"The Emerging Private Sector and China's Legal System", paper presented at conference on *China's Economic and Sociopolitical Transformation: Measuring China's Emerging Private Sector and Its Impact*, Washington, DC, 22 April 2005

"How Do We Know When an Enterprise Exists? Unanswerable Questions and Legal Polycentricity in China", paper presented at conference on *New Scholarship in Chinese Law: A Celebration in Honor of Stanley Lubman*, Center for Chinese Legal Studies, Columbia Law School, New York, 15 April 2005

"Lost in Translation? Corporate Law in China", paper presented at conference on *Asia in a Globalizing World*, Center for East Asian and Pacific Studies, University of Illinois at Urbana-Champaign, 9 April 2005

Guest lecturer in course on "China and Globalization", Prof. Reuven Avi-Yonah, University of Michigan Law School, Ann Arbor, 1 April 2005

"Law, Institutions, and Property Rights", paper presented at conference on *China's Economy: Retrospect and Prospect*, Woodrow Wilson International Center for Scholars, Washington, DC, 2 March 2005

"Insider Trading Law in the United States and China", lecture presented in Chinese at East China University of Politics and Law, Shanghai, 25 November 2004

"Law, Property Rights, and Institutions" (with Peter Murrell and Susan Whiting), paper presented at conference on *China's Economic Transition: Origins, Mechanisms, and Consequences* (Part II), University of Pittsburgh, 5-7 November 2004

"The Independent Director in Chinese Corporate Governance", opening paper presented at conference on *Amendment of the Company Law* organized by the Legislative Affairs Office of the State Council, the China Securities Regulatory Commission, and the Shanghai Stock Exchange, 10 October 2004

"Insider Trading Law in the United States and China", talk presented to Shanghai Institute of Law and Economics, Beijing, 28 September 2004

"China's Proposed Bankruptcy Law", commentator at conference on *Legal and Financial Infrastructure Requirements for Residential Mortgage Securitization in China* organized by Beijing University School of Law, Center for Real Estate Law and Financial Law Institute, Beijing, 17 July 2004

"Does Law Matter in China?", talk presented at Global Business Center, University of Washington School of Business, 15 January 2004

"Why China Should Not Adopt United States Insider Trading Law", paper presented at conference on *Corporate Fraud and Governance: American and Chinese Perspectives* organized by Shanghai Jiaotong University and New York University School of Law, Shanghai, 16 December 2003

"Human Rights and Culture", paper presented at conference on *Sino-U.S. Human Rights Conference* organized by Georgetown University Law Center, Beijing, 14 December 2003

"The History of Corporate Governance in China", commentator at conference organized by Shanghai Institute of Law and Economics, Beijing, 15 November 2003

"Professional Ethics of Defense Lawyers", commentator at conference on *The Defense Functions of Lawyers and Judicial Justice* organized by the All-China Lawyers Association, the American Bar Association, Renmin University of China, and New York University School of Law, Beijing, 21 September 2003

"The Independent Director in Chinese Corporate Governance", lecture presented at Tsinghua University Faculty of Law, Beijing, 10 April 2003

"The Independent Director in Chinese Corporate Governance", paper presented to the School of Business and Management, Hong Kong University of Science and Technology, 7 March 2003

"Assessing the Value of Law in China's Economy" (with Peter Murrell and Susan Whiting), paper presented at conference on *China's Economic Transition: Origins, Mechanisms, and Consequences* (Part I), University of Toronto, 15-17 November 2002

"China's Entry into the WTO: Prospects for Compliance", paper presented at conference on *China's Accession to the World Trade Organization*, Georgetown University Law Center, 10 Oct. 2002

"How Do We Know When an Enterprise Exists? Unanswerable Questions and Legal Polycentricity in China", paper presented at conference on *The Reform of Corporate Law Under Global Competition*, Commercial Law Research Center of the Faculty of Law, Tsinghua University, Beijing, China, 15 Sept. 2002

"Zhongguo youdai fazhan duoyuanhua de jiandu jizhi" (China Has Yet to Develop a Multidimensional Monitoring Mechanism), *21 Shiji Jingji Baodao* (21st Century Economic Report), 19 Aug. 2002, p. 39, col. 1 (interview)

Testified before the Congressional-Executive Commission on China, Washington, D.C., on issues relating to China's compliance with its WTO commitments, 6 June 2002

"Business Regulation in the Bureaucratic State: Enterprise Law in China", paper presented at panel on *The Rule of Law and Enterprise Reform in China*, Association for Asian Studies annual meeting, 5 April 2002

"What WTO Accession Does *Not* Mean for China", paper presented at panel on *WTO and the International Rule of Law*, American Society of International Law annual meeting, 15 March 2002

Testified before United States-China Security Review Commission, Washington, DC, on issues relating to China's WTO accession, 18 Jan. 2002

"The Independent Director in Chinese Corporate Governance", paper presented at conference on "Protection of Investors' Interests: International Experience and Chinese Practice", Commercial Law Research Center of the Faculty of Law, Tsinghua University, Beijing, China, 18-19 November 2001

"Economic Development and the Rights Hypothesis: The China Problem", paper presented at conference on *Law Reform in Developing and Transitional Economies*, Ulaanbaatar, Mongolia, 2-3 July 2001

Interviewed for feature entitled "Detained in China", broadcast on PBS, *The News Hour with Jim Lehrer*, 18 May 2001 <http://www.pbs.org/newshour/bb/asia/jan-june01/detained_05-18.html>

"Empirical Research in Chinese Law," paper presented to Rule of Law Workshop, Stanford Law School, 18 April 2001

"Transparency in China's Regulation of International Trade," presentation made to audiences from Chinese government, business, and academia in Beijing and Shanghai as part of 5-member United States government mission, 13-25 March 2000

"Courts and Markets in Post-Socialist Transition: China," paper presented at workshop on *Courts and Markets in Post-Socialist Transition*, University of Wisconsin School of Law, 3 March 2000

"Incentives and the Top-Down Model of Regulation in Chinese Land Law," paper presented (in Chinese) at *International Conference on the Legal Framework for Rural Land Use Rights in China*, China Institute for Reform and Development, Haikou, Hainan Province, China, 12-14 January 2000

"Corporate Governance in China," paper presented to members of Project on Corporate Governance in China, Stanford University, Stanford, California, 29 October 1999

"Alternative Approaches to Chinese Law," lecture delivered at UCLA School of Law, Los Angeles, 28 October 1999

Panelist on "Rule of Law in China – Recent Developments and Prospects," Inaugural Session of Global Business Briefing Series, Pacific Council on International Relations, Los Angeles, 28 October 1999

"Misunderstanding Chinese Law: The Lure of the 'Rule of Law' Paradigm," lecture delivered at Faculty of Law, City University of Hong Kong, 27 September1999

Guest lecturer, Chinese administrative law class of Prof. Wang Xixin, Beijing University Faculty of Law, Beijing, China, 23 September 1999

"Bankruptcy in Capitalist and Reforming Socialist Economies," brief course taught to delegation of North Korean legal officials and academics at Beijing University, Beijing, China, 20-23 September 1999

"Misunderstanding Chinese Law: The Lure of the 'Rule of Law' Paradigm," lecture delivered at Faculty of Law, Waseda University, Tokyo, Japan, 23 June 1999

"The Enforcement of Civil Judgments in China," lecture delivered at Faculty of Law, Waseda University, Tokyo, Japan, 19 June 1999

"China's Revised Criminal Law," paper presented at conference on *Contemporary Chinese Legal Development*, sponsored by Chinese Law Society of America, Harvard Law School, Cambridge, Mass., 26-27 March 1999

"Alternative Approaches to Chinese Law," lecture delivered at Yale Law School, 25 March 1999

Commentator, conference on *Administrative Law Reform in China*, sponsored by UCLA Center for Chinese Studies, International Studies & Overseas Programs, UCLA School of Law and Southern California China Colloquium, Los Angeles, 6 March 1999

Participant, *U.S.-China Symposium on the Legal Protection of Human Rights*, The Aspen Institute, 11-13 December 1998

"Private Enforcement of Intellectual Property Rights," paper presented at *Sino-U.S. Conference on Intellectual Property Rights and Economic Development: 1998 Chongqing*, sponsored by the National Bureau of Asian Research, Chongqing, China, 16-18 September 1998

Commentator, conference on *Law and Development in Asia*, co-sponsored by Asian
Development Bank and Harvard University, Council on Foreign Relations, New
York, 21 May 1998

"Introduction to U.S. Capital Markets for Chinese Enterprises," speech (in Chinese)
presented at Investment Promotion Forum sponsored by United Nations Industrial
Development Organization, Beijing, 31 March 1998

"Legal Order as a Prerequisite for Cooperation: The China Problem," paper presented at
*Inaugural University of California at San Diego Social Sciences Research Conference on
Cooperation Under Difficult Conditions*, Graduate School of International Relations
and Pacific Studies, 18 October 1997

"Recent Developments in Criminal and Administrative Punishments in China," paper
presented at University of Washington School of Law Conference on Asian Law,
Seattle, Washington, 3 August 1996

"Enforcement of International Awards Involving China and Hong Kong," paper presented
at EuroForum conference on *Dispute Resolution in China and Hong Kong*, London, 31
May 1996

"China and the WTO," paper presented at American Conference Institute conference on
*Doing Business in China and Hong Kong*, New York, 10 May 1996

"Recent Developments in Chinese Foreign Investment Law," talk presented at conference
on *Trade and Investment in Emerging Markets: China and India*, New York University
School of Law, 17 November 1995

Commentator on China at *Timothy A. Gelatt Dialogue on Law and Development in Asia*, New
York University School of Law, 14 September 1995

"Round Pegs and Square Holes: China and the GATT," paper presented at panel on *China
in the World Economic Order* at the annual meeting of the Association for Asian
Studies, Washington, DC, April 1995

"Civil Rights in China," talk delivered to Civil Rights Committee of the Seattle-King
County Bar Association, Seattle, March 1995

"Foreign Business Law and China's Application to the GATT/WTO," paper presented at
1990 Institute Conference on Chinese Foreign Trade and Investment Law, San
Francisco, March 1995

"China and the GATT/WTO," talk delivered to the World Affairs Club, Juneau, Alaska,
March 1995

"The Chinese Court System," paper presented at *Winter Workshop on East Asian Law*,
Center for Pacific Rim Studies, University of California at Los Angeles, January
1995

"Enforcement of Civil Judgments in a Changing Society: A Chinese Example," paper
presented at annual meeting of the Law and Society Association, Phoenix, Arizona,
17 June 1994

"The Enforcement of Civil and Economic Judgments in China," paper presented at
symposium on *The Chinese Legal System*, sponsored by the China Quarterly and the

School of Oriental and African Studies, University of London, London, U.K., 10-12 May 1994

"GATT Membership for China?," paper presented at symposium on *Pacific Rim Trade*, University of Puget Sound School of Law, Washington, 5 November 1993

"The Creation of a Legal Structure for Market Institutions in China," paper presented at conference on *The Evolution of Market Institutions in Transition Economies*, Graduate School of International Relations and Pacific Studies, University of California, San Diego, 14-15 May 1993

Chair/discussant at panel on "Theoretical Perspectives in China's Legal Reform," conference on *Chinese Law -- A Re-Examination of the Field: Theoretical and Methodological Approaches to the Study of Chinese Law*, Faculty of Law, University of British Columbia, Vancouver, 22 March 1993

"Research Methodologies in Chinese Law," paper presented at conference on *Chinese Law - - A Re-Examination of the Field: Theoretical and Methodological Approaches to the Study of Chinese Law*, Faculty of Law, University of British Columbia, Vancouver, 22 March 1993

"Enforcement of Civil Judgments in China," talk delivered at *China Studies Seminar*, University of British Columbia, October 1992

Discussant at conference on *The Modernization of Chinese Law on Both Sides of the Taiwan Straits*, National Taiwan University College of Law, September 1992

"Enforcement of Civil Judgments in the People's Republic of China: Notes from the Field," talk delivered at Attorney-General's Chambers, Hong Kong, August 1992

"Dispute Resolution in China," talk delivered at Chinese University of Hong Kong, November 1991

Interviewed on modern Chinese law for program on East Asian legal systems broadcast by BBC World Service (London), September 1991

Discussant at panel on *New Perspectives on Chinese Economic Development*, Western Economic Association Annual Conference, Seattle, 30 June-3 July 1991

"The Trials of the June 4th Defendants," talk delivered at *East Asian Legal Studies Lunchtime Colloquium*, Harvard Law School, 22 March 1991

"What's Law Got to Do with It? Legal Institutions and Economic Reform in China," talk delivered at *East Asian Legal Studies Workshop*, Harvard Law School, 21 March 1991

Guest lecturer, Chinese law class of Prof. William C. Jones, Washington University School of Law, St. Louis, Missouri, 30 January 1991

"Legal Problems of Industrial Economic Reform in China," talk delivered to *Faculty Forum*, Washington University School of Law, St. Louis, Missouri, 30 January 1991

Speaker and panel chairman, "Chinese Business Law," at *China Trade Update: Doing Business with China in the 1990s*, conference sponsored by the Washington State China Relations Council, Seattle, Washington, 5 November 1990

"The Future of Democracy in China," panel discussion sponsored by the Council of
    International Organizations, Citizens International Center, Seattle, Washington, 21
    April 1990

"Why Laws Fail: Central Legislation and the Structure of the Chinese Polity," paper
    delivered at *Winter Workshop on East Asian Law*, Center for Pacific Rim Studies,
    University of California at Los Angeles, 20 January 1990

"The Legal Background to the Behavior of State-Owned Enterprises," paper delivered at
    conference on *Ownership Reforms and Efficiency of State-Owned Enterprises* sponsored
    by the Institute of Economics of the Chinese Academy of Social Sciences and the
    Ford Foundation, Shenzhen, China, 6 January 1990

"Implications of Recent Events in China for Sino-U.S. Relations," panel discussion
    sponsored by U.S.-China People's Friendship Association and the East Asian
    Resource Centre, University of Washington, 11 July 1989

"Law and Economic Reform in China," *London China Seminar*, School of Oriental and
    African Studies, University of London, 19 May 1988

"Urban Enterprises and the Role of Law in China's Economic Reforms," Conference on *The
    Chinese Developmental State: Change and Continuum*, Institute of Development
    Studies, University of Sussex, 7-9 April 1988

Interviewed for feature entitled "How is China Run?", broadcast on BBC World Service,
    *The World Today*, 25 March 1988

"The 13th Congress of the Chinese Communist Party and China's Legal Reforms," Asian
    Studies Centre, St. Antony's College, Oxford University, 8 March 1988

"Chinese Economic and Legal Reforms," John F. Kennedy School of Government, Harvard
    University, 24 March 1987

Co-organizer and discussant, Conference on *China: Law and Trade 1986*, School of Oriental
    & African Studies, University of London, 30 June 1986

"The Role of Law in Modern China," Great Britain China Centre, London, 17 April 1986

"The Foreign Economic Contract Law," Law-China Society Seminar on China's Economic
    Laws, London, 17 April 1986