## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO:<br><br>*The State of Louisiana v. Knauf Gips KG, et al.,*<br>No. 2:10-CV-0340 (E.D. La.). | |

**REPLY MEMORANDUM OF LAW OF DEFENDANTS BEIJING NEW BUILDING MATERIALS PUBLIC LIMITED COMPANY AND BEIJING NEW BUILDING MATERIAL (GROUP) CO., LTD.'S IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE STATE OF LOUISIANA'S SECOND AMENDED AND RESTATED PETITION PURSUANT TO RULES 12(B)(2), 12(B)(5) AND 12(B)(6)**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 5

I.    BNBM PLC AND BNBM GROUP ARE NOT SUBJECT TO JURISDICTION IN LOUISIANA ........................................................... 5

    A.    BNBM PLC and BNBM Group Are Not Alter Egos or Agents of Taishan ......................................................................... 5

    B.    Neither BNBM PLC Nor BNBM Group Had Direct Contacts With Louisiana Sufficient To Assert Long-Arm Jurisdiction............................ 9

II.    THE PETITION SHOULD BE DISMISSED BECAUSE IT DOES NOT STATE A PLAUSIBLE CLAIM FOR RELIEF AGAINST BNBM PLC AND BNBM GROUP ........................................................................ 11

    A.    The Claims Against BNBM PLC and BNBM Group Are Not Plausible........................................................................... 11

    B.    The Petition Does Not Adequately Plead Fraud or Other Actionable Misconduct by BNBM PLC or BNBM Group Sufficient To State A Claim for Relief ...................................... 12

III.    THE PETITION SHOULD BE DISMISSED BECAUSE BNBM PLC AND BNBM GROUP HAVE NOT BEEN SERVED WITH PROCESS ........... 14

CONCLUSION.................................................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACG Mediaworks, L.L.C. v. Ford*,
    870 So. 2d 1097 (La. App. 5 Cir. 2004) ...............................................................10

*Admin. of the Tulane Educ. Fund v. Ipsen, S.A.*,
    450 F. App'x 326 (5th Cir. 2011) ...........................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...........................................................................................4, 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...........................................................................................4, 11

*BioClin, BV v. MultiGyn USA, LLC*,
    129 So. 3d 633 (La. App. 4 Cir. 2013) ..................................................................10

*In re Ford Motor Co. Bronco II Prod. Liab. Litig.*,
    982 F. Supp. 388 (E.D. La. 1997) .........................................................................13

*Gardemal v. Westin Hotel Co.*,
    186 F.3d 588 (5th Cir. 1999) ..................................................................................7

*McFadin v. Gerber*,
    587 F.3d 753 (5th Cir. 2009) ................................................................................10

*Prejean v. Sonatrach, Inc.*,
    652 F.2d 1260 (5th Cir. 1981) ..............................................................................10

*Scianneaux v. St. Jude Med. S.C., Inc.*,
    961 F. Supp. 2d 808 (E.D. La. 2013) ......................................................................6

*Shelton v. Standard/700 Assocs.*,
    798 So. 2d 60 (La. 2001) ......................................................................................13

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ..................................................................................................7

**Statutes**

La. Civ. Code Ann. art. 1954 (1985) .........................................................................13

**Other Authorities**

Fed. R. Civ. P. 12(b)(2) ...............................................................................1, 6, 11

Fed. R. Civ. P. 12(b)(5)..................................................................................................................1, 6

Fed. R. Civ. P. 12(b)(6)..............................................................................................................1, 4, 6, 11

Defendants Beijing New Building Materials Public Limited Company ("BNBM PLC") and Beijing New Building Material (Group) Co., Ltd. ("BNBM Group") respectfully submit this reply memorandum in support of their motion pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5) and 12(b)(6) for an order dismissing the State of Louisiana's Second Amended and Restated Petition (Rec. Doc. 18030, referred to as the "Petition") for lack of personal jurisdiction, failure of service and failure to state a claim upon which relief can be granted. Because the State adopts wholesale the arguments and evidence cited in the PSC's Omnibus Response In Opposition To Defendants' Motions To Dismiss (Rec. Doc. 19995, referred to as the "PSC Omnibus Brief"), BNBM PLC and BNBM Group will rely on and incorporate by reference in this brief the facts, arguments and authority set out in their contemporaneously filed reply memoranda[1] in support of their respective Motions To Dismiss the MDL class actions.[2]  In order to avoid repetition, this reply brief will respond to the limited arguments the State specifically raises in its papers.

## INTRODUCTION

The State does not address, much less refute, the two central arguments of BNBM PLC and BNBM Group's Motion To Dismiss: (1) that there is no allegation, and certainly no evidence, that any drywall sold or manufactured by BNBM PLC or BNBM Group made its way

---

[1]  *See* Reply Memorandum of Beijing New Building Materials Public Limited Company in Further Support of Its Motion to Dismiss the Complaints Pursuant to Rules 12(b)(2) and 12(b)(5), Rec. Doc. 20038-2 (the "BNBM PLC MDL Reply Mem.") and Reply Memorandum of Beijing New Building Materials (Group) Co., Ltd. in Further Support of Its Motion to Dismiss the Complaints Pursuant to Rules 12(b)(2) and 12(b)(5), Rec. Doc. 20040-2  ("BNBM Group MDL Reply Mem.").

[2]  BNBM PLC Mem. in Supp. of Mot. to Dismiss Complaints Pursuant to Rules 12(b)(2) and (12(b)(5), Rec. Doc. 19646-1 ("BNBM PLC Dismissal Mem."); BNBM Group Mem. in Supp. of Mot. to Dismiss Complaints Pursuant to Rules 12(b)(2) and (12(b)(5), Rec. Doc. 19664-1 ("BNBM Group Dismissal Mem.").

into Louisiana and caused harm in the State; and (2) that not one single Louisiana property owner submitted an MDL profile form claiming to have been injured by drywall made or sold by BNBM PLC or BNBM Group, thus confirming that neither defendant could have caused the State to incur any damages.  The State has conceded these critical points.  Therefore, there is no basis to assert jurisdiction over BNBM PLC or BNBM Group in Louisiana, because neither defendant had sufficient "minimum contacts" with the State, and because the Attorney General's claims do not "arise from" either defendant's activities in Louisiana.  Nor does the Petition, which exclusively seeks to recoup damages attributable to "the presence of Defendants' drywall in this State,"[3] state a plausible claim for relief against either BNBM PLC or BNBM Group, because the Petition does not allege—and the evidence **disproves**—that there was drywall made or sold by either defendant in the State.

Unable to counter these dispositive points, the State instead focuses on two meritless arguments.  First, citing no evidence, and merely relying on the PSC's contemporaneous Omnibus Brief, the Attorney General repeats the well-worn—and demonstrably false—assertion that Taishan, BNBM PLC and BNBM Group are alter egos of one another, and that Taishan's jurisdictional contacts and the damages attributable to its allegedly defective drywall can be imputed to BNBM PLC and BNBM Group.  As the BNBM PLC MDL Reply Memorandum makes clear, the PSC, and by extension the State, has failed to meet its burden to show alter ego.

Neither the PSC nor the State dispute that BNBM Group has never had an ownership stake in Taishan and has not had an ownership interest in BNBM PLC since 2005.  They do not dispute that that BNBM Group has not manufactured drywall since 2003.  And there is absolutely no evidence proffered by the PSC or the Attorney General indicating that BNBM

---

[3]  Petition ¶ 191.

Group in any way controlled or interfered in the affairs of Taishan, and no evidence (as will be shown with respect to BNBM PLC) that the CNBM business group as a whole was run as alter egos or a single-business enterprise.

Similarly, nothing in the record establishes that BNBM PLC misused Taishan to perpetrate a fraud, or that Taishan's assets were comingled such that Taishan was a mere "shell." On the contrary, the undisputed evidence shows that: Taishan is a separate company, with separate management, operations, facilities, accounts and products; Taishan has net assets exceeding RMB 3.74 billion in value, an eight-fold increase since BNBM PLC first invested in the company; Taishan's annual revenue exceeds RMB 3 billion, and has grown 30% per year since BNBM PLC first invested; and Taishan's net profits exceed RMB $1 billion, and have grown an astounding 43% per year since BNBM PLC first invested.  Neither the State nor the PSC points to a single case in which the veil has been pierced where the subsidiary has prospered like Taishan has during the period when BNBM PLC has had an ownership stake.

Second, the State contends that jurisdiction over BNBM PLC is proper by virtue of its purported contact with a Louisiana drywall importer, Interior Exterior Building Supply, L.P. ("InEx").  However, InEx initiated contact with BNBM PLC through a third-party intermediary in China, and never purchased drywall, from or transacted any other business with, BNBM PLC. Not surprisingly, the State cites no authority to support the exercise of jurisdiction over a defendant who merely *discussed* doing business in a forum state.  Louisiana courts can assert long-arm jurisdiction over a foreign defendant only where that defendant *actually* conducts business and *purposely* directs its activities to Louisiana, and the claims at issue arise from those activities.

The Attorney General's effort to avoid dismissal under Fed. R. Civ. P. 12(b)(6) is similarly unavailing. Astoundingly, the State contends that its Petition states a viable claim against BNBM PLC and BNBM Group because it generally alleges that "Defendants"—without distinguishing among them—"caused damages" to the State, without describing how BNBM PLC or BNBM Group allegedly caused such damages, or what damages in particular either of those defendants is responsible for. The State completely ignores *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), among other cases, which require that a complaint contain specific "facts to state a claim to relief that is plausible on its face" in order to survive a motion to dismiss. Moreover, the State's position ignores the dispositive evidence, including the CPSC's testing results and the 25,000 Plaintiff Profile Forms, which demonstrate that the State's attempt to attribute some unspecified "damages" to BNBM PLC and BNBM Group is simply not plausible.

The State also contends that, while there is no evidence or allegation that BNBM PLC or BNBM Group acted fraudulently during the relevant time period, their decision "not to participate," and their unspecified purported efforts to "thwart discovery," in the MDL somehow support a cause of action. Nonsense. This case seeks to recover damages allegedly caused by the sale of defective drywall in 2005-2006, not damages attributable to BNBM PLC's or BNBM Group's purported conduct years later during the course of the MDL. In any event, the State does not explain how it could have been damaged by BNBM PLC's and BNBM Group's alleged conduct relating to an MDL comprised of actions filed by private citizens seeking to recoup their own personal damages, none of whom are Louisianans who were harmed by BNBM PLC or BNBM Group.

The State has not pled specific, plausible allegations of misconduct by BNBM PLC and BNBM Group.  In its opposition papers, the State does not refute the dispositive proofs BNBM PLC and BNBM Group submitted in their motions to dismiss.  Therefore, for all of the reasons set forth in this brief, in BNBM PLC's and BNBM Group's opening papers, and in the MDL Dismissal and Reply Memoranda, the Petition should be dismissed with prejudice.

## ARGUMENT

## I.     BNBM PLC AND BNBM GROUP ARE NOT SUBJECT TO JURISDICTION IN LOUISIANA

### A.     BNBM PLC and BNBM Group Are Not Alter Egos or Agents of Taishan

BNBM PLC's and BNBM Group's moving papers in support of their motions to dismiss the MDL, as well as each defendant's MDL Reply Memorandum, set forth the evidence showing that neither defendant is an "alter ego" or "agent" of Taishan, and that Taishan is a well-capitalized company with its own operations and is not a mere "shell."[4]  The undisputed record reflects that while BNBM PLC and BNBM Group are part of the larger CNBM business group, there is no evidence that the companies within that family have abused the corporate form or engaged in a fraud to evade creditors.[5]  In fact, the "CNBM business group has adopted organizational structures, business relationships, internal financing practices, and corporate governance relationships similar to those that exist among many large US public corporations."[6]  There is thus no basis to impute Taishan's alleged jurisdictional contacts to BNBM PLC or BNBM Group.

---

[4]   BNBM PLC Dismissal Mem. 6-15, 22-33, 35-68; BNBM Group Dismissal Mem. 4-8, 12-17.

[5]   BNBM PLC Dismissal Mem. 6-15, 47-68; BNBM Group Dismissal Mem. 4-8, 12-17, 23-24.

[6]   Declaration of Professor Jeffrey N. Gordon ¶ 14, attached as Ex. 80 to BNBM PLC MDL Reply Mem. (hereinafter "BNBM PLC Ex. 80, Gordon Dec."); *see also* BNBM PLC MDL Reply Mem. at 19-22, 27-32.

The State does not dispute that the Petition itself lacks specific facts showing that BNBM PLC or BNBM Group "controlled" Taishan at the time it sold allegedly defective drywall into Louisiana.  It is the State's burden to provide "enough factual matter" to support its jurisdictional allegations, *Scianneaux v. St. Jude Med. S.C., Inc.*, 961 F. Supp. 2d 808, 811 (E.D. La. 2013) (citing *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009)), and it has provided none.  The State responds to the compelling evidence put forth by BNBM PLC and BNBM Group by making the conclusory statement that "Taishan is the alter ego and the agent of BNBM," and then asking this Court to "*See generally* PSC Omnibus Response pp. 6-115" for the purported support for its claim.[7]  Even assuming, *arguendo*, that the State can salvage its insufficient Petition by citing to and incorporating 100 pages of the PSC's brief, rather than by specifying what evidence purportedly supports the assertion of jurisdiction here, the State's alter-ego allegations fail for the same reasons set forth in the MDL Reply Memoranda.

Taishan is not a mere "shell" nor was it created to somehow perpetrate a fraud.  Taishan is, and at all relevant times has been, a thriving company, with assets approximating RMB 3.74 billion, net profits in excess of RMB 1 billion, annual revenue in excess of RMB 3 billion, and a 16% annual average profit margin.[8]  It would be unprecedented to find that a company with assets, revenues and profits of Taishan's magnitude is a "shell," a mere alter ego or a "single-business enterprise" with its corporate family, particularly when those assets, revenues and profits have grown dramatically over the challenged period.

The State also purports to "emphasize[]" certain facts identified in the PSC's papers that, the State contends, demonstrate the "alter ego, principal-agent relationship between BNBM and

---

[7]   Louisiana's Response to Defendants BNBM PLC's and BNBM Group's Motion to Dismiss Pursuant to Rules 12(b)(2), 12(b)(5) and 12(b)(6) 11, n.16 (hereinafter "LA Opp.").

[8]   *See* BNBM PLC MDL Reply Mem. at 11-13, 59-60.

Taishan," but tellingly cites no *evidence* to support its list of so-called "facts."[9]  The State's litany consists primarily of legally irrelevant features of the normal parent-subsidiary relationships between BNBM PLC, BNBM Group and the other companies in the CNBM business group, such as the sharing of directors, auditors and accounting firms.[10]  As the MDL Reply Memoranda make clear, these matters are typical of parent-subsidiary relationships—not only in China, but in America, including in flagship companies such as Walt Disney and Federal Express.[11]

The Attorney General also resorts to mischaracterizations of the record.  For example, the State claims that "Defendants have admitted that through BNBM they controlled the daily operations and decision-making of Taishan."[12]  There is no such admission, and the State fails to cite to any evidence in that regard.  Similarly, the State generally states that "[t]he CNBM/BNBM and Taishan defendants failed to follow corporate procedure," without offering any specific examples or addressing the evidence BNBM PLC and BNBM Group have put before this Court demonstrating that they adhere to corporate formalities.[13]

---

[9]  LA Opp. at 11.

[10]  *Id.*

[11]  BNBM PLC Ex. 80, Gordon Dec. ¶¶ 66-78; *see also United States v. Bestfoods*, 524 U.S. 51, 61-62 (1998) ("the exercise of the 'control' which stock ownership gives to the stockholders . . . will not create liability beyond the assets of the subsidiary.  That 'control' includes the election of directors, the making of by-laws and the doing of all other acts incident to the legal status of stockholders.  Nor will a duplication of some or all of the directors or executive officers be fatal."); *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 594 (5th Cir. 1999) (affirming dismissal for lack of personal jurisdiction and holding that "one-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying the alter ego theory to pierce the corporate veil").

[12]  LA Opp. at 11.

[13]  *Id.*  To the extent the State is referring to the portion of the PSC Omnibus Brief in which it criticizes BNBM PLC and Taishan for things like accounting mistakes, confusion about arrearages on loans, and missing certificates of property ownership, BNBM PLC respectfully

The State's other assertions are demonstrably false. To avoid repetition, we will not lay out here all of the evidence disproving the State's purported "facts." We respectfully direct the Court to the BNBM PLC MDL Reply Memorandum for a more fulsome discussion of the relevant evidence.[14]

Finally, there is no evidence that Taishan acted as BNBM PLC's or BNBM Group's "agent" in Louisiana in connection with the sale of drywall. On the contrary, Taishan never sold or marketed goods on BNBM PLC's or BNBM Group's behalf in Louisiana.[15] Notably, InEx, which, after deciding *not* to purchase BNBM PLC's "Dragon Brand" drywall, bought Taishan drywall, did so without being aware of any relationship between the two companies.[16] The State does not allege, and there is no evidence, that there was an "express authorization for [Taishan] to act as [BNBM PLC's or BNBM Group's] agent" with regard to the sale of drywall. *See Admin. of the Tulane Educ. Fund v. Ipsen, S.A.*, 450 F. App'x 326, 333 (5th Cir. 2011) (requiring express authorization). Nor does the State claim that it relied on any representations by BNBM PLC or BNBM Group that Taishan was acting on their behalf. Therefore, Taishan's jurisdictional contacts cannot be imputed to BNBM PLC or BNBM Group under an agency theory. *Id*.

---

refers the Court to pages 26-27 of BNBM PLC MDL Reply Memorandum for the discussion of that evidence.

[14]   BNBM PLC MDL Reply Mem. 38-39 (BNBM PLC and Taishan do not share common offices), 40-44 (BNBM PLC does not "control" Taishan), 37-38 (CNBM Group did not transfer assets among its subsidiaries for "nil consideration"); 39-40 (there is no evidence that CNBM Group "exercises cascading control over the internal business operations and affairs" of its subsidiaries), 59-65 (BNBM PLC and Taishan do not share a "corporate identit[y]" and do not advertise or sell one another's products).

[15]   BNBM PLC MDL Dismissal Mem. 22; BNBM Group MDL Dismissal Mem. 12.

[16]   Deposition Transcript of Clay Geary 28:14-23, Oct. 1, 2012, attached as Exhibit 1 ("Ex. 1, C. Geary Tr.").

**B.    Neither BNBM PLC Nor BNBM Group Had Direct Contacts With Louisiana Sufficient To Assert Long-Arm Jurisdiction**

Unable to impute Taishan's alleged Louisiana contacts to either BNBM PLC or BNBM Group, the State proffers no other basis for this Court to assert jurisdiction over either defendant. The State does not dispute that BNBM Group—which itself has not manufactured drywall since 1997—had no direct contacts with Louisiana.  And while the PSC has effectively conceded the same for BNBM PLC, the State, desperate to find some basis to assert jurisdiction over BNBM PLC in Louisiana directly, argues that BNBM PLC's purported dealings with InEx, which did ***not*** buy BNBM drywall, somehow evidences that "BNBM targeted Louisiana for drywall sales."[17]  In fact, the evidence shows the complete opposite.

InEx reached out to BNBM PLC by its own initiative, through an intermediary located in China.[18]  That outreach did not result in any sales of drywall or other business, as Clay Geary individually, and as Clay and James Geary InEx's 30(b)(6) witnesses, testified:

> Q. And do you know who Susan Li is?
>
> A. Susan Li is -- was with Weida Freight.
>
> Q. And can you tell me who she is?
>
> A. J.W. Allen, who was our freight forwarder, hired Weida Freight to inspect some of the product as it was being loaded onto the ships. In addition, Susan Li contacted BNBM for us and tried to develop a relationship so that we could possibly get board from those guys.[19]
>
> ****
>
> Q. Okay. And was it Weida Freight that recommended to you that you might want to look into buying drywall from BNBM[?]
>
> A. Yes.

---

[17]  LA Opp. at 2.

[18]  Ex. 1, C. Geary Tr. 15:20-16:3.

[19]  *Id.*

. . . .

Q. And have you ever heard of Dragon wallboard?

A. No. Not prior to this.

. . . .

Q. And am I correct that at the end of the day, for whatever reason, Interior/Exterior decided not to buy drywall from BNBM?

A. We never got any BNBM product.[20]

The Fifth Circuit has held that "communications relating to the performance of a contract themselves are insufficient to establish minimum contacts." *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009); *see also ACG Mediaworks, L.L.C. v. Ford*, 870 So. 2d 1097, 1104 (La. App. 5 Cir. 2004) (holding no "minimum contacts" over foreign defendant based solely on contract negotiations with a Louisiana company).  Moreover, there is no basis to assert specific jurisdiction here because the State's claims against BNBM PLC do not "arise from" this contemplated but unconsummated transaction with InEx.  *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1269 (5th Cir. 1981); *BioClin, BV v. MultiGyn USA, LLC*, 129 So. 3d 633, 637 (La. App. 4 Cir. 2013).  The State's damages allegedly arise from defective drywall that was ***actually*** sold into and used in Louisiana.  The evidence clearly shows that no such drywall was made or sold in Louisiana by BNBM PLC.  Therefore there is no basis for long-arm jurisdiction in Louisiana over BNBM PLC.

---

[20]   Deposition of Clayton Geary and James Geary, Joint 30(b)(6) Representatives of the Interior/Exterior Building Supply, LP 115:12-116:20, Feb. 5, 2010, attached as Ex. 2 ("Ex. 2, Joint Geary Tr."); *see also* Deposition Transcript of James Geary 36:2-8, Oct. 1, 2012  (testifying that while InEx may have had "conversations with BNBM PLC about getting some of their product[, i]t never came to fruition"), attached as Exhibit 3 ("Ex. 3, J. Geary Tr.").

## II.   THE PETITION SHOULD BE DISMISSED BECAUSE IT DOES NOT STATE A PLAUSIBLE CLAIM FOR RELIEF AGAINST BNBM PLC AND BNBM GROUP

### A.      The Claims Against BNBM PLC and BNBM Group Are Not Plausible

Like the Petition itself, the State's opposition brief relies on generalities and conclusory assertions rather than specific detail concerning how BNBM PLC or BNBM Group allegedly caused damage to the State.  While the State contends that the Petition adequately alleges that "BNBM caused injury and damage in Louisiana,"[21] the Petition simply states that "Defendants' Chinese drywall has caused, and is continuing to cause, damages to the State, to political subdivisions of the State and to the citizens of Louisiana."[22]  The State ignores the U.S. Supreme Court's decisions in *Iqbal* and *Twombly*, as well as the other dispositive, on-point precedent BNBM PLC and BNBM Group cite in their moving brief, which establish that such generalized allegations are inadequate to state a plausible claim for relief under Fed. R. Civ. P. 12(b)(6).[23]

Moreover, the State makes no mention whatsoever of the Plaintiff Profile Forms, which establish conclusively that no drywall manufactured or sold by either defendant harmed anyone in Louisiana.  There is not a single Louisiana resident who claims to have been harmed by BNBM PLC's drywall.[24]  The fact that the State's jurisdictional argument is premised on one failed outreach by a Louisiana company to BNBM PLC,[25] as opposed to *actual* sales or shipments of drywall into the State, further proves that drywall made or sold by either BNBM

---

[21]   LA Opp. at 15 (citing Petition ¶¶ 5, 13-14, 30-31).

[22]   Petition ¶ 13.

[23]   Memorandum of Law of BNBM PLC and BNBM Group in Support of Their Motion to Dismiss Pursuant to Rules 12(b)(2), 12(b)(5), and 12(b)(6) at 17, Rec. Doc. 19653-3 (hereinafter "LA AG Dismissal Mem.").

[24]   *Id*. at 1-3, 9, 17, 21.

[25]   LA Opp. at 2.

PLC or BNBM Group never harmed anyone in Louisiana, because it never made its way into Louisiana.

Finally, the State's argument that "BNBM drywall is defective" is belied by the only evidence the State cites to support it—the CPSC report—which expressly finds that the 2006 sample of BNBM PLC's "Dragon Brand" drywall had emissions on par with, or less than, domestically-produced drywall.[26]  BNBM Group, of course, did not even manufacture drywall during the relevant period.[27]

### B.   The Petition Does Not Adequately Plead Fraud or Other Actionable Misconduct by BNBM PLC or BNBM Group Sufficient To State A Claim for Relief

The State does not, and cannot, credibly contend that it pled fraudulent conduct on the part of BNBM PLC or BNBM Group with the requisite particularity to support any of the State's causes of action.  Citing to paragraphs 133 and 171-72 of the Petition, the Attorney General generally asserts that "Louisiana has alleged that BNBM acted fraudulently."[28]  However, the relevant allegations do not attribute any specific conduct to BNBM PLC or BNBM Group, much less identify any misrepresentations, omissions or other fraudulent conduct by either defendant. Rather, those paragraphs merely state that 1) "the Taishan Entities" worked "in concert with one another" to "thwart discovery" in this and other litigations,[29] and that 2) the "Taishan Entities were . . . notified by the CPSC and others about defects found in the drywall they manufactured,

---

[26]   BNBM PLC MDL Dismissal Mem. at 19.

[27]   BNBM Group MDL Dismissal Mem. at 4.

[28]   LA Opp. at 16.

[29]   Petition ¶ 133.

distributed and sold," but that they "made no attempt to inform anyone about such findings."[30] Neither allegation is a plausible basis for a fraud claim.

The State's claims cannot be based on "the Taishan Entities" allegedly hiding the results of the CPSC's testing because the CPSC made those results publicly available, and in any event those tests were conducted in 2010[31]—four or five years after the alleged sales of defective drywall that give rise to the State's claims. *See* LA. CIV. CODE ANN. art. 1954 (1985) ("Fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill."); *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 982 F. Supp. 388, 397 (E.D. La. 1997) ("[T]here can be no concealment when plaintiff has access to the allegedly concealed information."). Of course, the CPSC testing shows that BNBM PLC's "Dragon Brand" drywall was not harmful, meaning that there was no information "about defects" for BNBM PLC or BNBM Group to conceal.[32]

With regard to the State's claim that Defendants deliberately "thwart[ed] discovery" in this and other cases, the State wholly fails to explain how any alleged litigation conduct somehow caused the specific damages it seeks to recoup here. The State's claims are exclusively tied to "the presence of Defendants' drywall in the State." [33] Any purported litigation conduct by BNBM PLC and BNBM Group which occurred years after the underlying events that form the basis for the State's Petition "are irrelevant to plaintiff's fraud allegation." *See Shelton v.*

---

[30] *Id*. ¶¶ 171-72.

[31] *See* BNBM PLC MDL Dismissal Mem. at 19; *see also* CONSUMER PROT. SAFETY BD., CPSC IDENTIFIES MANUFACTURERS OF PROBLEM DRYWALL MADE IN CHINA, RELEASE NO. 10-243 (May 25, 2010), attached as Ex. 42 to BNBM PLC MDL Dismissal Mem. (hereinafter "BNBM PLC Ex. 42, CPSC Release.")

[32] BNBM PLC MDL Dismissal Mem. at 19 (citing BNBM PLC Ex. 42, CPSC Release).

[33] Petition ¶ 191.

*Standard/700 Assocs.*, 798 So. 2d 60, 65 (La. 2001) (ruling that subsequent events and conduct were irrelevant to fraud allegation).

## III.  THE PETITION SHOULD BE DISMISSED BECAUSE BNBM PLC AND BNBM GROUP HAVE NOT BEEN SERVED WITH PROCESS

The State concedes that it has never attempted proper service on BNBM PLC or BNBM Group through the Hague Convention.  Rather, the State contends that it should be excused from serving BNBM PLC and BNBM Group based on the demonstrably false premise that service of process on Taishan is sufficient because it is the alter ego of BNBM PLC and BNBM Group.  As demonstrated above, that circular argument is totally meritless.  The State also does not dispute that this Court's December 17, 2014 order approving service through U.S. counsel on the "Taishan Defendants" could not have applied to BNBM PLC and BNBM Group because they did not have U.S. counsel at the time, and because the State did not make a proper showing of reasonable efforts to serve BNBM PLC and BNBM Group specifically.[34]  As the Court knows, BNBM PLC and BNBM Group respectfully disagree with the Court's conclusion that alternative service on counsel is permitted in this action.[35]

## CONCLUSION

For the foregoing reasons, defendants BNBM PLC and BNBM Group respectfully request that the Court dismiss the Petition against them.

---

[34]  LA AG Dismissal Mem. at 1, 22; Order Granting State of Louisiana's Motion to Approve Alternative Service of Process, December 23, 2014, Rec. Doc. 18228.

[35]  BNBM PLC and BNBM Group hereby preserve their objections to the PSC's and the State's improper attempts at service.  BNBM PLC and BNBM Group incorporate by reference and adopt in full the arguments raised in their previously-filed Opposition to the Plaintiffs' Steering Committee's Motion to Approve Alternative Service of Process. Rec. Doc. 19558.

Dated:  February 12, 2016

Respectfully submitted,

**DENTONS US LLP**

By: */s/ Michael H. Barr*
Michael H. Barr
New York Bar No. 1744242
Justin N. Kattan
New York Bar No. 3983905
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
michael.barr@dentons.com
justin.kattan@dentons.com

Richard L. Fenton
Illinois Bar No. 3121699
Leah R. Bruno
Illinois Bar No. 6269469
233 South Wacker Drive
Suite 7800
Chicago, IL  60606-6306
Telephone:  (312) 876-8000
Facsimile:  (312) 876-7934
richard.fenton@dentons.com
leah.bruno@dentons.com

Kenneth J. Pfaehler
D.C. Bar No. 461718
Drew Marrocco
D.C. Bar No. 453205
1301 K Street N.W.
Suite 600, East Tower
Washington, D.C. 20005
Telephone:  (202) 408-6400
Facsimile:  (202) 408-6399
kenneth.pfaehler@dentons.com
drew.marrocco@dentons.com

C. Michael Moore
Texas Bar No. 14323600
Matthew T. Nickel
Texas Bar No. 24056042
2000 McKinney Ave, Suite 1900
Dallas, TX  75201
Telephone:  (214) 259-0900
Facsimile:  (214) 259-0910
mike.moore@dentons.com
matt.nickel@dentons.com

- and -

**PHELPS DUNBAR LLP**

Harry Rosenberg
Louisiana Bar No. 11465
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130
harry.rosenberg@phelps.com

***Attorneys for Beijing New Building Materials Public Limited Company and Beijing New Building Material (Group) Co., Ltd.***

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing **Reply Memorandum In Further Support of Motion to Dismiss the State of Louisiana Second Amended and Restated Petition Pursuant to Rules 12(b)(2), 12(b)(5) and 12(b)(6)** has been served on the State's counsel David L. Black, Perkins Coie LLP, 1900 Sixteenth Street, Suite 1400, Denver, Colorado, 80202, Plaintiffs' Liaison Counsel, Leonard Davis, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this February 12, 2016.

*/s/      Michael H. Barr*