## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |

**THIS DOCUMENT RELATES TO:**

*Germano v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 09-6687 (E.D. La.);

*Gross v. Knauf Gips, KG, et al.,* Case No. 09-6690 (E.D. La.);

*Wiltz v. Beijing New Building Materials Public Limited Co., et al.*, Case No. 10-361 (E.D. La.);

*Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Case No. 11-1672 (E.D. La.);

*Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Case No. 11-1395 (E.D. La.);

*Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Case No. 11-1673 (E.D. La.); and

*Amorin v. State-Owned Assets Supervision and Administration Commission of the State Council, et al.*, Case No. 14-1727 (E.D. La.).

## REPLY MEMORANDUM OF BEIJING NEW BUILDING MATERIAL (GROUP) CO., LTD. IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINTS PURSUANT TO RULES 12(B)(2) AND 12(B)(5)

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 2

I.    Taishan's Jurisdictional Contacts cannot be imputed to BNBM Group as An Alter Ego    2

II.   BNBM Group Lacks Sufficient Contacts With Florida for the Exercise of Jurisdiction ................................................................................................................ 6

    A.    BNBM Group's Limited Role As An Export Agent For Two Drywall Shipments Did Not Give Rise to Jurisdiction in Florida ........................................ 7

        1.    Due Process ........................................................................................ 7

        2.    Florida's Long-Arm Statute .............................................................. 10

    B.    BNBM of America Does Not Provide a Basis for Florida Jurisdiction Over BNBM Group ................................................................................................ 12

III.  BNBM Group Was Never Properly Served .................................................... 13

    A.    The PSC Did Not Properly Serve BNBM Group with the *Gross* Complaint ....... 14

    B.    The PSC Did Not Properly Serve BNBM Group with the *Amorin* Complaints ................................................................................................... 15

CONCLUSION ......................................................................................................... 16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arch Aluminum & Glass Co. v. Haney*,
    964 So. 2d 228 (Fla. Dist. Ct. App. 2007) ...............................................................13

*Buckingham, Doolittle & Burroughs, LLP v. Kar Kare Auto. Grp., Inc.*,
    987 So. 2d 818 (Fla. Dist. Ct. App. 2008) ...............................................................13

*Burger King Corp. v. Rudzewicz*,
    417 U.S. 462 (1985)..............................................................................................7, 8

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
    753 F.3d 521 (5th Cir. 2014) .............................................................................7, 10

*Cosmos Trading Corp. of Panama v. Banco Nacional De Cuba*,
    No. 06-cv-2935, 2006 WL 4515304 (E.D. La. Nov. 2, 2006)................................16

*Doty v. Magnum Research, Inc.*,
    994 F. Supp. 894 (N.D. Ohio 1997)......................................................................15

*Foster, Pepper & Riviera v. Hansard*,
    611 So. 2d 581, 582 (Fla. Dist. Ct. App. 1992) .....................................................11

*Hardy v. Sanyei Hong Kong, Ltd.*,
    448 So. 2d 1215, 1216 (Fla. Dist. Ct. App. 1984) ..............................................9, 10

*Le-Bolton v. Koppers Inc.*,
    No. 1:10-CV-253-MCR-GRJ, 2013 WL 5674324 (N.D. Fla. Oct. 17, 2013) ........12

*Peterson v. Sealed Air Corp.*,
    902 F.2d 1232 (7th Cir. 1990) ...............................................................................15

*Rao v. Era Alaska Airlines*,
    22 F. Supp. 3d 529 (D. Md. 2014).............................................................................7

*Relco Shoe Mach., Ltd. v. Gonzalez*,
    559 So. 2d 1251 (Fla. Dist. Ct. App. 1990) ........................................................9, 10

*Rockwell Automation, Inc. v. Kontron Modular Computers*,
    No. 12cv566-WQH, 2012 WL 5197934 (S.D. Cal. Oct. 19, 2012)........................15

*Scott v. Lance Aviation, Inc.*,
    No. 8:09-cv-986, 2010 WL 3075714 (M.D. Fla. Aug. 5, 2010)............................11

i

*Singer v. Unibilt Dev. Co.*,
  43 So. 3d 784 (Fla. Dist. Ct. App. 2010) ...................................................................13

*Stuart v. Spademan*,
  772 F.2d 1185 (5th Cir. 1985) .....................................................................................6

*Tomashevsky v. Komori Printing Machinery Co., Ltd.*,
  691 F. Supp. 336 (S.D. Fla. 1988) ...............................................................................9

*Walden v. Fiore*,
  134 S. Ct. 1115 (2014) .......................................................................................7, 8, 10

*Zodiac Enterprises, Ltd. v. Jones*,
  707 So. 2d 890 (Fla. Dist. Ct. App. 1998) ...................................................................9

**Statutes**

Fla. Stat. Ann. § 48.193(1)(a)(1).............................................................................10, 11

Fla. Stat. Ann. § 48.193(2)..............................................................................................12

Fla. Stat. Ann. Subsections 48.193(1)(a)(2) and (6) ......................................................11

**Other Authorities**

Fed. R. Civ. P. 12...................................................................................................1, 2, 16

Defendant Beijing New Building Material (Group) Co., Ltd. ("BNBM Group") respectfully submits this reply memorandum in support of its motion pursuant to Rules 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure for an order dismissing the complaints against it for lack of personal jurisdiction and failure of service. Virtually all of the arguments set forth in Beijing New Building Materials Public Limited Company's ("BNBM PLC") briefing on its motion to dismiss under Rules 12(b)(2) and 12(b)(5) apply with equal force to BNBM Group's motion. We do not want to burden the Court by repeating those arguments here, and accordingly incorporate by reference the briefing and accompanying declarations and exhibits submitted by BNBM PLC in support of its motion, including those filed on October 22, 2015 and February 12, 2016. (Rec. Doc. 19646 and Rec Doc. 20038-2).[1]

## INTRODUCTION

BNBM Group is a sidelight in the PSC's efforts to impute Taishan's jurisdictional contacts to others within the CNBM business group based on alter ego or piercing the corporate veil. As the PSC knows, BNBM Group has no direct ownership interest in BNBM PLC, much less Taishan. Thus it is not surprising that there is no evidence in the record indicating any BNBM Group "influence" over BNBM PLC or Taishan, much less any clearly articulated direction to BNBM PLC or Taishan to do anything. The PSC offers nothing in the way of facts showing that BNBM Group had or exercised control over Taishan or BNBM PLC.

Moreover, the PSC also knows that BNBM Group's role in any drywall sales was highly circumscribed, confined to serving as the export agent for three drywall shipments of BNBM

---

[1] The BNBM PLC Memorandum filed on October 22, 2015 (Rec. Doc. 19631-3) is referred to herein as the "BNBM PLC Memorandum."

PLC "Dragon Brand" drywall.[2]  Since an export agent has essentially no contact with the purchasers, and BNBM Group played no role outside of China, it is unsurprising that it had no jurisdictional contacts of its own with the forum states.  Exercising jurisdiction over BNBM Group in the absence of any indicia or purposeful availment would violate Constitutional due process and the state long-arm statutes.

Even if jurisdiction were somehow otherwise proper, the complaints against BNBM Group still must be dismissed because it has never been properly served in any of these actions.

## ARGUMENT

### I.    TAISHAN'S JURISDICTIONAL CONTACTS CANNOT BE IMPUTED TO BNBM GROUP AS AN ALTER EGO

The PSC has abdicated its burden of establishing that BNBM Group is an alter ego of Taishan for purposes of imputing Taishan's jurisdictional contacts.  Its opposition to the motion cites to no evidence that BNBM Group has improperly used or manipulated the corporate form to evade liability.  The PSC has proffered no evidence that BNBM Group influenced BNBM PLC or Taishan or ever gave them an express directive. The plaintiffs provide no evidence of

---

[2]   The PSC does not allege, and certainly offers no proof, that "Dragon Brand" drywall has been found to be defective.  When the Consumer Products Safety Commission tested various drywall brands in 2009, "Dragon Brand" drywall was found to be well within acceptable safety standards and comparable to U.S. products.  *See* May 25, 2010 CONSUMER PROT. SAFETY BD., CPSC IDENTIFIES MANUFACTURERS OF PROBLEM DRYWALL MADE IN CHINA, RELEASE NO. 10-243, Ex. 42 to BNBM PLC Memorandum.

Citations to "Ex. ___" refer to exhibits filed in support of BNBM Group's Motion to Dismiss the Complaints Pursuant to Rules 12(b)(2) and 12(b)(5).  Exhibits 1-29 were attached to BNBM Group's opening brief, Rec. Doc. 19649-3.  For the Court's convenience, the exhibits in this brief are numbered sequentially following the exhibits BNBM Group initially filed.  Exhibits 30-33 are attached to this Reply.  Citations to "PSC MTD Ex. __" refer to exhibits filed with the Plaintiffs' Steering Committee's Omnibus Response in Opposition to Defendants' Motions to Dismiss, Rec. Doc. 19995 (cited herein as "Opp.").

domination.  Indeed, the PSC proffers virtually no evidence of *any* interactions between BNBM Group and BNBM PLC or Taishan.

Instead, the PSC makes exactly two alter ego arguments specific to BNBM Group. Both are based on misreading the evidence.

*First*, the PSC claims that BNBM Group issued loan guarantees in 2013 for Taishan, signed by BNBM PLC Chairman Bing Wang.[3]  However, the PSC is relying on mistranslated documents produced by Taishan.[4]  The properly translated documents, produced last year by BNBM PLC, show that BNBM PLC, not BNBM Group, issued the guarantees.[5]  On February 10, 2016, Taishan produced a corrected translations of these documents, which supersedes the originals.[6]  Therefore the PSC's contention that BNBM Group guaranteed Taishan's loans is based on  erroneous translations of two loan guarantees.

*Second*, the PSC claims that as part of the reorganization of the business group in 2004-2005, CNBM Group directed BNBM Group to transfer 37.79% of its equity interest in China Fiberglass (now called China Jushi) to CNBM Equipment for "nil consideration" and to transfer its 60.33% equity ownership in BNBM PLC to CNBM Group "without compensation thus making CNBM Group the controlling shareholder of BNBM PLC."[7]  As shown in Section III(B)(2) of the BNBM PLC MDL Reply Brief, these transfers in fact were made for substantial

---

[3]  Opp. at 51.

[4]  *Compare* incorrect translations of January 10, 2013 BNBM PLC loan guarantee, PSC MTD Ex. 87 and July 11, 2013 BNBM PLC loan guarantee, PSC MTD Ex. 88, discussed at Opp. at 51, *with* February 11, 2016 Declaration of Janet Tan, a professional translator, attached here as Exhibit 30.

[5]  *See* correct translations of January 10, 2013 and July 11, 2013 BNBM PLC loan guarantees at, respectively, BNBMPLC0006998-7006 & BNBMPLC0007007-7017, attached here as Exhibits 31 and 32.

[6]  Attached here as Exhibit 33.

[7]  Opp. at 63-65.

consideration.  In return for the transfers, BNBM Group received a 59.11% equity interest in

CNBM PLC.[8]  The assets contributed by BNBM Group were independently appraised at RMB

1,261,969,800; thus the almost 60% of the CNBM PLC share capital received by BNBM Group

was more than ample consideration, given that CNBM PLC had assets of nearly RMB 14 billion

and gross profits of RMB 1.3 billion in 2006.[9]  And so examination of the undisputed facts of the

transaction establishes that BNBM Group transferred its shares of BNBM PLC and China

Fiberglass for substantial consideration.  In any event, the PSC does not explain what those

transactions had to do with drywall sales to the United States during the relevant period.

These are the only specific claims the PSC makes about BNBM Group to support its

alter-ego arguments, and the undisputed evidence does not supports either claim.  In addition, the

PSC has not contested the following salient facts established in BNBM Group's moving papers:

(1) BNBM Group has never had a direct or first-level subsidiary ownership in Taishan and has

not had an equity interest in BNBM PLC since 2005 (before BNBM PLC acquired any interest in

Taishan and before any of the drywall sales at issue here).[10]  (2) BNBM PLC and Taishan are

both thriving and autonomous companies, well-capitalized and boasting high annual net revenues

and profit margins.  (3) BNBM Group, BNBM PLC and Taishan all comply with corporate

governance requirements, conduct periodic meetings of directors and shareholders and obtain

required corporate authorizations for major transactions.  (4) BNBM Group does not exercise

control over the management or daily operations of BNBM PLC or Taishan.  (5) BNBM Group

has never provided funding to BNBM PLC or Taishan or paid any of their expenses.  (6) There is

---

[8]   2006 CNBM Global Offering Prospectus at ALRMH-CNBM00000099, PSC MTD Ex. 38.

[9]   *Id.*; 2006 CNBM PLC Annual Report at ALRMH-CNBM00004118-4119, PSC MTD Ex. 18.

[10]   *See* BNBM Group Mem. in Supp. of Mot. to Dismiss Complaints Pursuant to Rules 12(b)(2)
and 12(b)(5) 4-5, Rec. Doc. 19649-3 ("BNBM Group Dismissal Mem.").

no financial or operational commingling.  (7) BNBM Group's offices in Beijing are 300 miles

away from Taishan's.  (8) Each company is responsible for its own contracts and debts, none

contracts for, or acts as the agent of, any other company, and the finances of BNBM Group,

BNBM PLC and Taishan are not intertwined.[11]  Those undisputed facts, which the PSC for all its

heated rhetoric does not and cannot contest, dispel any basis for finding an alter-ego relationship

between Taishan, BNBM Group or BNBM PLC here.

       The evidence likewise fails to support the PSC's argument that BNBM Group is an alter

ego of CNBM PLC, and that CNBM PLC somehow dominates and directs the actions of Taishan

and BNBM PLC through "cascade management."[12]  BNBM Group is a limited liability company

incorporated on August 4, 1984.[13]  BNBM Group's primary business is manufacturing pre-

fabricated houses, domestic sales of building supplies, and importing and exporting goods.  Since

1996, CNBM Group has directly and indirectly held 100% of BNBM Group's equity.[14]  BNBM

Group has ownership interests in over a dozen companies, including a 27.52% equity share of

publicly held CNBM PLC.[15]  With its moving brief BNBM Group proffered evidence that

CNBM  PLC is a successful, autonomous independently managed and publicly owned company,

with 2014 revenue of 122,011 million RMB, profits of 8,672 million RMB and total assets of

316,482 million RMB, and is traded on the Hong Kong Stock Exchange.[16]  CNBM PLC

complies with all corporate governance formalities, conducts quarterly meetings of the board of

---

[11]  *See* BNBM Group Dismissal Mem. at 4-14.

[12]  *See, e.g.*, BNBM PLC MDL Reply Mem., Rec. Doc. 20038-2, Section III(B)(4).

[13]  2006 CNBM Global Offering Prospectus at ALRMH-CNBM00000022, PSC MTD Ex. 38.

[14]  *See* 2008 BNBM Group Financial Statement at BNBM(Group)0000755-R, PSC MTD
Ex. 24.

[15]  2014 CNBM PLC Annual Report at ALRMH-CNBM00003676, Ex. 10.

[16]  BNBM Group Dismissal Mem. at 15-16; 2014 CNBM PLC Annual Report at ALRMA-
CNBM00003666-3675, Ex. 10.

directors and has annual shareholder meetings.[17]  The companies operate independently, BNBM

Group has no role in CNBM PLC's daily operations or management, and there is no financial or

operational commingling.[18]  Indeed, CNBM PLC's Articles of Association preclude BNBM

Group from managing the operations of CNBM PLC.[19]  None of this is disputed.

      To impute Taishan's jurisdictional contacts to BNBM Group, the PSC bears the burden

of demonstrating that Taishan, BNBM PLC and CNBM PLC had, as to the transactions at issue

and at the time of the transactions at issue, no separate mind, will or existence of their own.[20]

The PSC must show that they are mere shell corporations serving BNBM Group, or fraud on the

part of BNBM Group with respect to their corporate forms.[21]  The voluminous unrebutted

evidence and testimony, combined with the PSC's failing to make any effort to meet its burden

on this motion, means that Taishan's jurisdictional contacts cannot be imputed to BNBM Group.

Being part of a business group does not, without more, warrant piercing BNBM Group's

corporate veil.

## II.  BNBM GROUP LACKS SUFFICIENT CONTACTS WITH FLORIDA FOR THE EXERCISE OF JURISDICTION

      As with their claims against BNBM PLC, the plaintiffs effectively concede that if

Taishan's jurisdictional contacts are not imputed to BNBM Group, there is no long-arm

jurisdiction over claims arising in Virginia or Louisiana. The plaintiffs brief the applicability of

---

[17]  *See generally* BNBM Group Dismissal Mem. at 15-16 (describing companies' efforts to comply with letter and spirit of both corporate regulations and principles of common law); *see also* 2014 CNBM PLC Annual Report at ALRMA-CNBM00003704-3719, Ex. 10.

[18]  *See id.*

[19]  *See* January 17, 2014 CNBM Articles of Association 41-44, Articles 10.1, 10.3, 10.6, Ex. 11.

[20]  *See* BNBM PLC MDL Reply Mem., Rec. Doc. 20038-2, Section III(C).

[21]  *Stuart v. Spademan*, 772 F.2d 1185, 1198 n.12 (5th Cir. 1985).

only Florida's long-arm statute, not Louisiana's or Virginia's.[22]  It is now resolved, therefore, that in the absence of imputed contacts, the actions brought in Virginia and Louisiana against BNBM Group must be dismissed for lack of jurisdiction.  *See, e.g., Rao v. Era Alaska Airlines*, 22 F. Supp. 3d 529, 540 (D. Md. 2014) (dismissing for lack of jurisdiction where plaintiff failed to address argument in response to motion to dismiss).

While the PSC  has briefed specific jurisdiction under the Florida statute, it has failed to establish jurisdiction over BNBM Group in the state because BNBM Group had no contacts with Florida.  As with alter ego, the PSC makes exactly two arguments for specific jurisdiction.  The PSC claims that jurisdiction can be exercised over BNBM Group in Florida (1) based on its role as an export agent for two of the shipments of BNBM PLC Dragon Brand drywall to Florida and, (2) based on the existence of BNBM of America, Inc. (BNBM of America) offices in Florida from 2000-2003.  Neither argument has any merit.

### A.     BNBM Group's Limited Role As An Export Agent For Two Drywall Shipments Did Not Give Rise to Jurisdiction in Florida

The PSC must prove that jurisdiction over BNBM Group in these actions comports with due process and Florida's long-arm statute.  *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521, 529, 535 (5th Cir. 2014).  It has failed to meet either burden.

### 1.     Due Process

Specific jurisdiction over a defendant exists only where "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State."  *Walden v. Fiore*, 134 S. Ct. 1115, 1121-22 (2014).  The "relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State.'"  *Id*. at 1122 (quoting *Burger King Corp. v. Rudzewicz*, 417 U.S. 462, 475 (1985)).  A "defendant's relationship with a plaintiff or third party, standing alone, is an

---

[22]  *Cf.* Opp. 184-89.

insufficient basis for jurisdiction." *Id*. at 1123. "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id*. (quoting *Burger King*, 417 U.S. at 475).

The PSC's only claim of Florida contacts by BNBM Group are its actions as the export agent for two shipments of BNBM PLC "Dragon Brand" drywall in 2005 and 2006 to EAC (acting as agent for Davis) and Wood Nation Inc.[23] Despite this limited role, the PSC compares BNBM Group to Taishan—an entity that manufactured and sold drywall in the United States—to assert that because this Court and the Fifth Circuit found jurisdiction proper over Taishan, jurisdiction must therefore be proper over BNBM Group for the same reasons.[24] But unlike Taishan—and as the PSC even fails to allege—BNBM Group did not manufacture or sell drywall to anyone, let alone Florida residents. Thus, the analogy to Taishan fails.

BNBM Group's role as export agent on the two relevant drywall shipments was extremely limited, and its activities were confined to China. Under the export agency agreements, BNBM Group was to "supply valid verification documents, and to conduct exportation in its name;" to process the "customs declaration, cargo dispatch, chartering transport and commodity inspection etc.;" and "to finish the verification and tax refund process as soon as possible."[25] As the export agent, BNBM Group was not involved in negotiating the sales

---

[23]   *See* Opp. at 186-87, 197. The PSC does not appear to be contradicting, and certainly offers no evidence to contradict, the evidence provided in BNBM Group's opening brief that its involvement with Florida was limited to acting as the export agent for the shipments made to EAC and Wood Nation. *See* BNBM Group Dismissal Mem. at 9-10; *see also* Opp. at 125-26 (alleging BNBM Group's involvement as export agent only for sales to EAC and Wood Nation).

[24]   Opp. at 187-88, 196-201.

[25]   Ex. 20, Wood Nation Export Agency Agreement, at 3 (BNBMPLC0007454); Ex. 21, EAC Export Agency Agreement, at 3 (BNBMPLC0007429); Ex. 22, Great Western Export Agency Agreement, at 3 (BNBMPLC0007439).

contracts.[26]  In this limited role BNBM Group had almost no contact with the American

purchasers, and certainly none in the United States.[27]

Under Florida law contacts of an exporter or importer of an allegedly defective product,

as opposed to a manufacturer, are insufficient to create personal jurisdiction.  *See, e.g.*, *Zodiac*

*Enterprises, Ltd. v. Jones*, 707 So. 2d 890, 891-92 (Fla. Dist. Ct. App. 1998) (dismissing for lack

of jurisdiction defendant that "was not the manufacturer, but a middleman or distributor of an

allegedly defective product, who neither intentionally involved itself in, nor availed itself of, the

Florida market"); *Relco Shoe Mach., Ltd. v. Gonzalez*, 559 So. 2d 1251, 1252 (Fla. Dist. Ct. App.

1990) (no jurisdiction over importing defendant that "arranged for the sale and shipment of the

machine . . . directly from Taiwan to Southern Florida" because "contact with Florida was

insubstantial").  Florida also may not exercise jurisdiction over a defendant whose sales to

Florida are "sporadic," not continuous.  *See Tomashevsky v. Komori Printing Machinery Co.,*

*Ltd.*, 691 F. Supp. 336, 338-39 (S.D. Fla. 1988) (finding lack of jurisdiction over defendant that

imported allegedly defective printing press from Japan manufactured by another defendant and

sold to Florida purchasers "on a sporadic basis at wholesale").

In *Hardy v. Sanyei Hong Kong, Ltd*., for example, the defendant moved to dismiss for a

lack of jurisdiction where it obtained and sold the allegedly defective product in Hong Kong and

then shipped it to the purchaser "at various destinations in the United States, including Florida."

448 So. 2d 1215, 1216 (Fla. Dist. Ct. App. 1984).  Even though the defendant shipped "large

quantities" of the product to the United States and sent personnel from time to time, the court

found evidence of minimum contacts lacking.  *Id*.  In dismissing, the court emphasized that the

---

[26]   Ex. 20, Wood Nation Export Agency Agreement, at 2 (BNBMPLC0007453); Ex. 21, EAC
Export Agency Agreement, at 2 (BNBMPLC0007428); Ex. 22, Great Western Export Agency
Agreement, at 2 (BNBMPLC0007438).

[27]   Ex. 14, Cai Decl. ¶¶ 10(a)-(c); Ex. 13, Yu. Decl. ¶¶ 18, 19.

defendant "was not the manufacturer of the product, nor a distributor thereof." *Id*.  BNBM

Group's contacts here are even less substantial.  It was an export agent, not a manufacturer,

marketer, seller or distributor.  Its activities were confined to China.  The drywall sales for which

it acted as export agent were initiated by the purchasers in China.  The purchasers took title to

the drywall in China pursuant to contracts negotiated in China. *Cf. Relco Shoe Mach.*, *Ltd.,* 559

So. 2d at 1252 (dismissing for lack of jurisdiction in part because the sale was initiated by the

purchaser in Canada).  In short, in discharging its limited duties as export agent, BNBM Group

had no contacts with Florida, let alone the kind of  "minimum contacts" that due process requires

to establish jurisdiction. *Walden v. Fiore*, 134 S. Ct. 1115, 1121-22 (2014).  So plaintiffs'

attempt to base jurisdiction on BNBM Group's actions as export agent for two shipments of

Dragon Brand drywall fails as a constitutional matter.

## 2.    Florida's Long-Arm Statute

Due process aside, the PSC's attempt to assert jurisdiction over BNBM Group still fails

under Florida's long-arm statute, which "is to be strictly construed."  *In re Chinese-*

*Manufactured  Drywall Prod. Liab. Litig*., 753 F.3d at 535.  The Florida statute "requires more

activities or contacts" than the "minimum" needed to satisfy due process. *Id*.; *see also* Opp. at

184.

The PSC's primary basis for asserting jurisdiction is Fla. Stat. Ann. § 48.193(1)(a)(1),

which permits jurisdiction over a defendant "carrying on a business or business venture in this

state."[28]  The PSC's argument for jurisdiction under this Section relies entirely on the Court's

prior finding that jurisdiction over Taishan was proper under this Section.[29]  As we have

explained, the Court's finding with respect to Taishan cannot be applied to BNBM Group given

---

[28]   Opp. at 185-87.

[29]   *Id.* at 187-88.

the vast disparity in their roles in Florida drywall sales.  Unlike Taishan, BNBM Group is not a manufacturer of drywall and sold no drywall in the United States.  Its limited role as a Chinese export agent for two sales of BNBM PLC drywall did not involve "carrying on a business or business venture" in the State of Florida.

Considered on the merits, jurisdiction over BNBM Group certainly does not lie under § 48.193(1)(a)(1) because it did not engage in "a general course of business activity in the State for pecuniary benefits."  *Foster, Pepper & Riviera v. Hansard*, 611 So. 2d 581, 582 (Fla. Dist. Ct. App. 1992).  During the relevant period BNBM Group had no office, employee or agent in Florida; never owned property, paid taxes, or was licensed to do business in *any* U.S. state; and merely acted, in Beijing, as the export agent for two shipments of drywall following a sale that was completed outside the state and outside the country.[30]  These contacts are insufficient under § 48.193(1)(a)(1).  *Cf. Scott v. Lance Aviation, Inc.*, No. 8:09-cv-986, 2010 WL 3075714, at *4-5 (M.D. Fla. Aug. 5, 2010) (jurisdiction lacking over Canadian company that engaged in 27 business transactions with Florida entities, where the transactions were completed in Canada and the defendant had no further connection with Florida).

The PSC also makes the conclusory allegation, in a single sentence, that BNBM Group's actions satisfy Fla. Stat. Ann. Subsections 48.193(1)(a)(2) and (6) by "selling defective drywall in the State of Florida."[31]  It is undisputed, however, that BNBM Group never sold any drywall in Florida, defective or otherwise.  As a result the PSC fails to demonstrate that BNBM Group's actions warrant the exercise of jurisdiction under either Subsection (a)(2) (permitting jurisdiction over defendants that "commit[] a tortious act within this state") or (a)(6) (permitting jurisdiction where defendant processed, serviced, or manufactured goods used in the state).

---

[30]   *See* BNBM Group Dismissal Mem. at 2, 8-11.

[31]   Opp. at 188.

### B.    BNBM of America Does Not Provide a Basis for Florida Jurisdiction Over BNBM Group

The PSC suggests, without explaining its reasoning, that BNBM of America's Florida contacts create general jurisdiction over BNBM Group.[32]  BNBM of America was a defunct subsidiary of BNBM Group that had nothing to do with the Dragon Brand drywall shipped to Florida in 2006, however, and the PSC does not contend otherwise.  Indeed, the PSC admits that BNBM of America did not import *any* drywall into the United States after 2000.[33]  Witnesses have testified that BNBM of America made no drywall sales at all after 2002, and their testimony is unrebutted.[34]  The PSC concedes that BNBM of America was not involved in the Dragon brand drywall shipped to Florida in 2006.[35]

The PSC also admits that BNBM of America ceased operations in 2005 and filed a certificate of dissolution in early 2006.[36]  So, even putting aside whether the activities of BNBM of America could be imputed to BNBM Group, they clearly do not establish a basis for jurisdiction here.  Florida's long-arm statute only authorizes general jurisdiction over a "defendant *who is engaged* in substantial and not isolated activity within this state."  Fla. Stat. Ann. § 48.193(2) (emphasis added).  Florida courts interpret that statute's use of the term "is engaged" to mean that the defendant must be engaged in substantial activities in Florida at the time the lawsuit is filed.  *See Le-Bolton v. Koppers Inc.*, No. 1:10-CV-253-MCR-GRJ, 2013 WL

---

[32]  Opp. at 118-19.

[33]  Opp. at 116 n.492 (noting that BNBM Group's last export to BNBM of America occurred in 2000).  Mr. Hannam also testified that BNBM of America made no additional drywall sales after 2002 or 2003. Deposition Transcript of Richard Hannam 75:8-14, Feb. 13, 2012, PSC MTD Ex. 213 ("Hannam Tr.").

[34]  Hannam Tr.75:8-14; Deposition Transcript of Yanming Zhou, 30(b)(6) Deponent for BNBM Group 170:20-171:18, July 15, 2015, PSC MTD Ex. 5 ("Zhou Tr.").

[35]  Opp. at 119.

[36]  Opp. at 119; Hannam Tr.74:8-15.

5674324, at *4 (N.D. Fla. Oct. 17, 2013) ("the relevant inquiry is whether the Defendants were engaged in substantial activities in Florida when they were sued"); *see also Singer v. Unibilt Dev. Co.*, 43 So. 3d 784, 789 (Fla. Dist. Ct. App. 2010) (the defendant's "substantial activity" in Florida must occur at least within a reasonable period of time prior to filing the complaint). There is no general jurisdiction where a defendant ceases its Florida operations years before a lawsuit is filed. *See Buckingham, Doolittle & Burroughs, LLP v. Kar Kare Auto. Grp., Inc.*, 987 So. 2d 818, 822 (Fla. Dist. Ct. App. 2008) (no general jurisdiction existed when defendant stopped doing business in Florida more than eighteen months before the lawsuit); *Arch Aluminum & Glass Co. v. Haney*, 964 So. 2d 228, 237-38 (Fla. Dist. Ct. App. 2007) (no general jurisdiction existed when defendant stopped working in Florida three years prior to the lawsuit). Here, BNBM of America cannot be subject to general jurisdiction in Florida, because it ended its Florida operations five or six years before the instant lawsuits were filed in 2009. Its contacts, then, cannot be used to assert Florida jurisdiction over BNBM Group.

## III.    BNBM GROUP WAS NEVER PROPERLY SERVED

The PSC's Response confirms that the PSC did not properly serve BNBM Group with either the *Gross* or *Amorin* complaints. Because service was never properly effected in these cases, the Court lacks jurisdiction over BNBM Group in these cases.

As the Court knows, BNBM Group respectfully disagrees with the Court's conclusion that alternative service on counsel is permitted in this action.[37] Because the service to BNBM Group was particularly lacking, we respectfully submit that it remains worthy of the Court's consideration as a basis for dismissal, and address it in this section.

---

[37]   BNBM Group hereby preserves its objections to the plaintiffs' improper attempts at service, and incorporates by reference and adopts in full the arguments raised in the previously filed Opposition to the Plaintiffs' Steering Committee's Motion to Approve Alternative Service of Process. Rec. Doc. 19558.

### A.       The PSC Did Not Properly Serve BNBM Group with the *Gross* Complaint

The PSC states that it attempted to serve BNBM Group in *Gross* at No. 16 West Road, Jiancaicheng, Xisanqi, Haidian District, Beijing, China ("No. 16 West Road").[38]  However, BNBM Group's registered address since at least 2008 has been 1001#, 10/F, Building 4, Interwest Business Center, No.9 South Shouti Road, Haidian District, Beijing, China.[39]  Thus the PSC attempted to serve BNBM Group at a building it no longer occupied.  The PSC's service attempts in *Gross* were refused by the occupant at No. 16 West Road because it was not BNBM Group.  Indeed, the June 27, 2011 service document was returned with a handwritten note indicating that "The company has moved - the current address is unknown."[40]

The PSC claims that "at the time the PSC was attempting service, BNBM Group was still representing to the World that it was located at the No. 16, West Road address," referencing BNBM Group auditor's reports from 2008-2014 and the deposition testimony of Zhao Yanming.[41]  But both the auditor's reports and the testimony of Mr. Zhao show that BNBM Group's registered address at the time was "1001#, 10/F, Building 4, Interwest Business Center, No.9 South Shouti Road, Haidian District, Beijing, China.[42]

---

[38]   Opp. at 211.

[39]   *See* 2008 BNBM Group Auditor's Report at BNBM(Group)0000755-R, PSC MTD Ex. 34.

[40]   *See* Ex. 29.

[41]   Opp. at 212 n.711.

[42]   *See* 2008 BNBM Group Auditor's Report at BNBM(Group)0000755-R, PSC MTD Ex. 34; *see also* 2009 BNBM Group Auditor's Report at BNBM(Group)0000858-R, PSC MTD Ex. 275; 2010 BNBM Group Auditor's Report at BNBM(Group)0000965-R, PSC MTD Ex. 276; 2011 BNBM Group Auditor's Report at BNBM(Group)0001063-R, PSC MTD Ex. 277; 2012 BNBM Group Auditor's Report at BNBM(Group)0001163-R, PSC MTD Ex. 93; 2013 BNBM Group Auditor's Report at BNBM(Group)0001275-R, PSC MTD Ex. 94; 2014 BNBM Group Auditor's Report at BNBM(Group)0003283-R, PSC MTD Ex. 95; Zhou Tr. 325:20-327:14.

**B.      The PSC Did Not Properly Serve BNBM Group with the *Amorin* Complaints**

The PSC never properly served BNBM Group with the *Amorin* complaints.  The PSC

attempted to serve the *Amorin* complaints on BNBM Group at BNBM PLC's address:  15/F,

Tower 2, Guohai Plaza, 17 Fuxing Road, Haidian District, Beijing, China.[43]  As discussed,

BNBM Group's address during this time was 10/F, Building 4, Interwest Business Center.

The PSC attempts to circumvent this service error by relying on the supposed "alter ego

relationship" between BNBM Group and BNBM PLC.[44]  But this argument is tautological: the

PSC has not proven an alter ego relationship in the case and it cannot prove that relationship as

to BNBM Group without the court having jurisdiction, which requires service. Moreover, in each

of the cases relied upon by the PSC there was proof that the entity to be served had actual notice

of the litigation and was not prejudiced by the service through the "agent" or "alter ego."  *See,

e.g.*, *Peterson v. Sealed Air Corp*., 902 F.2d 1232, 1237 (7th Cir. 1990) ("The [registered] agent

has actual notice.  Because corporations are nothing but bundles of agency relations, there is no

other person to whom the 'real' notice comes after an agent gets notice"); *Rockwell Automation,

Inc. v. Kontron Modular Computers*, No. 12cv566-WQH (WMc), 2012 WL 5197934, at *5 (S.D.

Cal. Oct. 19, 2012) ("Here, Kontron Modular did in fact receive notice of the action"); *Doty v.

Magnum Research, Inc*., 994 F. Supp. 894, 897 (N.D. Ohio 1997) ("There is no doubt that IMI

has received actual notice and IMI has not suffered prejudice from service of process").

Nothing in the PSC's lengthy brief shows that BNBM Group, as opposed to BNBM PLC,

had actual notice of the litigation and the claims pending against it.  To the contrary, BNBM

Group's corporate representative testified unequivocally that BNBM Group did not know of

these actions until 2015:

---

[43]   Opp. at 212.

[44]   Opp. at 212-13.

> Q.      Was it BNBMG[roup's] opinion that they were not
> involved in this litigation prior to receiving process from the
> Beijing court?
> . . . .
>
> A.      Before February 2015 when we received document from
> Beijing People's Supreme Court, we did not know that
> BNBMG[roup] was involved in this litigation as a party.[45]

"Before we had received document from Beijing Supreme Court, we did not think

BNBMG was a defendant."[46] The PSC, as the party attempting service of process, "bears the

burden of proving that [BNBM Group] received actual notice."  *Cosmos Trading Corp. of

Panama v. Banco Nacional De Cuba*, No. 06-cv-2935, 2006 WL 4515304, at *4 (E.D. La. Nov.

2, 2006).  It has not met that burden

## **CONCLUSION**

For all of the foregoing reasons and the reasons set forth in the accompanying exhibits, its

moving brief and the declarations and exhibits that accompanied it, as well as the papers and

evidence filed by BNBM PLC in support of its motion to dismiss for lack of jurisdiction, BNBM

Group respectfully requests the Court to dismiss the complaints against it in this MDL

proceeding under Federal Rules 12(b)(2) and 12(b)(5).

Dated:  February 12, 2016

                                                            Respectfully submitted,

---

[45]   Zhou Tr. 58:12-59:2, 220:14-221:1.

[46]   *Id*. at 219:9-13.

**DENTONS US LLP**

By: */s/ Michael H. Barr*
Michael H. Barr
New York Bar No. 1744242
Justin N. Kattan
New York Bar No. 3983905
1221 Avenue of the Americas
New York, New York 10020-1089
Telephone:  (212) 768-6700
Facsimile:  (212) 768-6800
michael.barr@dentons.com
justin.kattan@dentons.com


Richard L. Fenton
Illinois Bar No. 3121699
Leah R. Bruno
Illinois Bar No. 6269469
233 South Wacker Drive
Suite 5900
Chicago, Illinois  60606-6306
Telephone:  (312) 876-8000
Facsimile:  (312) 876-7934
richard.fenton@dentons.com
leah.bruno@dentons.com


C. Michael Moore
Texas Bar No. 14323600
Matt Nickel
Texas Bar No. 24056042
2000 McKinney Ave, Suite 1900
Dallas, Texas  75201
Telephone:  (214) 259-0900
Facsimile:  (214) 259-0910
mike.moore@dentons.com
matt.nickel@dentons.com

17

Kenneth J. Pfaehler
D.C. Bar No. 461718
Drew Marrocco
D.C. Bar No. 453205
1301 K Street N.W.
Suite 600, East Tower
Washington, D.C. 20005
Telephone:  (202) 408-6400
Facsimile:  (202) 408-6399
kenneth.pfaehler@dentons.com
drew.marrocco@dentons.com

- and -

**PHELPS DUNBAR LLP**

Harry Rosenberg
Louisiana Bar No. 11465
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130
harry.rosenberg@phelps.com

***Attorneys for Beijing New Building
Material (Group) Co., Ltd.***

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing **Reply Memorandum In Support of Motion to Dismiss the Complaints Pursuant to Rules 12(b)(2) and 12(b)(5)** has been served on Plaintiffs' Liaison Counsel, Leonard Davis, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with the Pretrial Order No. 6, and that the foregoing was also electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this February 12, 2016.

*/s/      Michael H. Barr*