UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

---------------------------------------------------------------x
IN RE:                                              : MDL NO. 2047
                                                    : SECTION L
                                                    :
CHINESE MANUFACTURED DRYWALL            : JUDGE FALLON
PRODUCTS LITIGATION                                 :
                                                    : MAG. JUDGE WILKINSON
---------------------------------------------------------------x
                                                    :
THIS DOCUMENT RELATED TO:                           :
                                                    :
*Arndt v. Gebrueder Knauf*                          :
*Verualtungsgesellschaft KG, et al.*                :
Case No.: 2:11-cv-02349 (E.D. La.)                  :
                                                    :
---------------------------------------------------------------x

**APPEAL FROM SPECIAL MASTER AWARD OF $0.00
REGARDING THE BODILY INJURY CLAIM OF
RAY BOURGEOIS, III (CDW CLAIMANT_100068)**

**MAY IT PLEASE THE COURT:**

The Special Master[1] ("SM") and the Chinese Drywall Settlement Administrator[2] ("CDW SA") offered Ray Bourgeois on behalf of his minor daughter, Ray Bourgeois, III[3] exactly $0.00 to resolve his bodily injury claim. For the reasons that follow, this take-nothing offer is contrary to the law and evidence available to the SM, the CDW SA, and now this Honorable Court. Rather than analyze Ray Bourgeois on behalf of his minor child, Ray Bourgeois, III' specific bodily injury claims discretely, the SM and the CDW SA have offered indiscriminate, global offers to all CDW claimants like Ray Bourgeois on behalf of his minor child, Ray Bourgeois, III who have

---

[1] Attorney John Perry serves as the Special Master regarding this matter; as detailed herein, undersigned counsel has communicated with both John Perry and attorney Dan Balhoff regarding this appeal.
[2] BrownGreer, PLC; as detailed herein, undersigned counsel has communicated with attorney Jake Woody regarding this appeal.
[3] Ray Burgeois, III is a CDW plaintiff (No. 100068) and an affected "Class Member" as that term is defined in the Settlement Agreement.

asserted bodily injury claims. The current $0.00 offer is inequitable, inaccurate, and unfair; and Ray Bourgeois on behalf of his minor child, Ray Bourgeois, III now respectfully appeals to this Honorable Court to review this matter and render a fair and just award.

## PROCEDURAL BACKGROUND

Claimant timely filed his claim for bodily injury on September 27, 2013.

On January 13, 2015, the CDW SA notified Claimant of its decision regarding his bodily injury claim; in short, the CDW SA offered Claimant a "Resolution Offer" of $1,000.00 to settle his claim. See attached Exhibit 1. This notice afforded Claimant the right to "request a different amount by filing for a Special Master Award" within 30 days. Other than the perfunctory language found in Exhibit 1, the CDW SA offered no explanation to Claimant regarding why such a low offer was extended. In fact, upon information and belief, the CDW SA made a blanket, global "Resolution Offer" to all Claimants who filed bodily injury claims.[4]

On February 12, 2015, Claimant timely filed a request with the Special Master to award a greater amount than $1,000.00. See attached Exhibit 2.

On December 3, 2015, the CDW SA offered Claimant zero dollars ($0.00), reporting that the SM made the determination that Claimant was not entitled to any recovery at all—and that the original offer of $1,000.00 should be withdrawn. See attached Exhibit 3. Upon information and belief, the CDW SA and/or SM offered a blanket $0.00 to all claimants such as Ray Bourgeois on behalf of his minor child, Ray Bourgeois, III seeking bodily injury damages; and again, neither the CDW SA nor the SM explained the basis of their indiscriminate, take-nothing offer in any way. This notice afforded Claimant the right to request reconsideration from the SM.

---

[4] Indeed, all Claimants represented by undersigned counsel who made individual bodily injury claims were made identical $1,000.00 offers. Furthermore, undersigned counsel regrets the necessity of filing seven (7) substantially identical APPEALS this date for other Claimants similarly situated.

2

On December 16, 2015, Claimant timely filed a request for reconsideration with the SM. See attached Exhibit 4.

On February 12, 2016, the CDW SA notified Claimant via email that the SM denied his request for reconsideration and again offered Claimant $0.00. See attached Exhibit 5. This notice directed Claimant that his "only option at this time is to appeal this determination directly to the Court" pursuant to "Section 4.2.9 of the Third Amended Knauf Settlement." This appeal follows.

**APPEAL PROCESS OF SECTION 4.2.9 OF THE SETTLEMENT AGREEMENT**

Claimant has fifteen (15) days to appeal the SM's $0.00 offer of February 12, 2016. Section 4.2.9 of the Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 (Rec.Doc. 16407-3) provides:

> Unless otherwise final and binding pursuant to the relevant sections below, decisions of the Special Master with respect to the Remediation Fund may be appealed by Settlement Class Counsel, the Knauf Defendants or an affected Class Member within 15 days of service of the Special Master's decision by filing an objection with the Court, but only after Settlement Class Counsel, the Knauf Defendants, and, if applicable, an affected Class Member's counsel meet and confer in an attempt to resolve such issue. Unless the Court orders otherwise, appeals will be based on the record and briefing before the Special Master without further evidentiary submissions, briefing or argument. Any Party may, at its own expense, request that proceedings before the Special Master be transcribed. The Court's decision on any objections will be final, with no further appeals permitted.

On February 19, 2016, to comply with the "meet and confer" requirement of Section 4.2.9, Claimant notified the SM, the CDW SA, and the Settlement Class Counsel[5] (the "SCC") that a telephone conference involving all parties would be held on February 23, 2016, at 3:00 pm, CST. See attached Exhibit 6. In lieu of this scheduled telephone conference, and with the cooperation

---

[5] Levin, Fishbein, Sedran & Berman and Herman, Herman, Katz & Coltar, LLP; as detailed herein, undersigned counsel has communicated with attorney Lenny Davis with the Herman firm reading this appeal.

3

and consent of all involved, undersigned counsel conferred with attorney Lenny Davis (o/b/o the SCC), attorney Jake Woody (o/b/o the CDW SA), and attorneys John Perry and Dan Balhoff (o/b/o SM), on several occasions via email and over the telephone in an effort to resolve this matter prior to filing this appeal. Although it was verbally suggested by counsel for the CDW SA and the SM that the original offer of $1,000.00 could be "re-made" to Ray Bourgeois on behalf of his minor child, Ray Bourgeois, III, any such take-it-or-leave-it verbal offer for $1,000.00 was rejected as being unworkable and grossly inequitable under the circumstances—all for the reasons set forth below. No formal settlement offer was made to Claimant. And no documents or any written explanation was given to Claimant regarding this effective denial of his bodily injury claims at any time prior to this appeal.

This appeal is filed timely pursuant to Section 4.2.9 of the Settlement Agreement.

## MERITS OF CLAIMANT'S BODILY INJURY CLAIM

According to the required protocol set forth in the Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 (Rec.Doc. 12061-5)(the "Settlement Agreement"), Claimant had to obtain and submit (a) "all pharmacy records since January 1, 2005" (Sec. 4.7.2.3); (b) "all medical records from healthcare providers since January 1, 2005" (Sec. 4.7.2.3); (c) an affidavit from each claimant stating that all such pharmacy and medical records have been obtained (Sec. 4.7.2.4); and (d) a report from a qualified expert who has reviewed all relevant pharmacy and medical records stating that "the alleged bodily injury was substantially caused" by CDW (Sec. 4.7.2.5).

Claimant complied with the directives of the CDW SA and SM as instructed by timely submitting all of the detailed information necessary to support his claim for bodily injury because of his exposure to the CDW in his home before it was remediated. Specifically, please see:

4

| | |
|---|---|
| Exhibit 7 | Claimant's Pharmacy and Medical Records |
| Exhibit 8 | Claimant's Affidavit certifying all medical records |
| Exhibit 9 | Expert Report of Dr. David Goldstein |

As is clearly supported by the attached evidence submitted to the CDW SA almost three (3) years ago, there is no doubt that Ray Bourgeois on behalf of his minor child, Ray Bourgeois, III sustained very real, albeit temporary, personal injuries as a result of his approximately seven (7) years of exposure to the CDW in his home.

A Board Certified Pulmonologist and Internist, Dr. David H. Goldstein, has reviewed all of Claimant's relevant medical records. Attached as Exhibit 10 is a copy of Dr. Goldstein's C.V. Dr. Goldstein further consulted relevant medical and scientific studies and literature to support his opinions, and referenced the same in his expert report; attached are copies of these articles:

| | |
|---|---|
| Exhibit 11 | "Imported Drywall and Health—A Guide for Healthcare Providers"; National Center for Environmental Health |
| Exhibit 12 | "Imported Drywall and Your Home"; National Center for Environmental Health (5/2/14) |
| Exhibit 13 | "Drywall Sampling Analysis"; U.S. Environmental Protection Agency |
| Exhibit 14 | "Draft Report on Preliminary Microbiological Assessment of Chinese Drywall"; (3/26/10) |

And in short, based upon Dr. Goldstein's education, training, and experience, and after review of the relevant records and studies, it is Dr. Goldstein's expert opinion that:

> Based upon my review and analysis of the above-listed records, documents, and materials, in my expert opinion, the patient's allergic rhinitis was significantly aggravated by the patient's exposure to CDW at his home at 18066 Willow Tree Lane, Prairieville, LA 70769 exposure dates listed above.

> Specifically, in my opinion, the allergic rhinitis was aggravated by chemicals released by the CDW. This caused his multiple repeat visits for this problem after he moved into his home.
>
> The medical and scientific basis for my opinion is based on the evidence that reactive sulfur compounds can be respiratory irritants especially in susceptible individuals such as Ray Bourgeois, III.
>
> In general, the chemicals found in Chinese Drywall including reactive sulfur chemicals and sulfates can aggravate the medical conditions experienced by Ray Bourgeois. Specifically, given that Ray Bourgeois, III was continuously exposed to the Chinese Drywall found in his home for over 7 years, in my opinion, the listed specific medical conditions and bodily injuries experienced by Ray Bourgeois, III were substantially caused by this exposure.

Exhibit 11. According to the National Center for Environmental Health: "Exposures to sulfur compounds at the level estimated from [CDW] . . . may be associated with such effects as: Headaches; Irritation of eyes, nose, and throat; Feeling tired, and; Problems controlling respiratory conditions (like asthma)." Indeed, even the most recent edition of Wikipedia reports:

> There are few studies exploring the effects of long-term low-level exposure to sulfur gases. However, it is believed that short-term exposure, over the period of a few hours, can result in sore throat, eye irritation, cough, shortness of breath, chest pain, and nausea. Long term exposure, over a period of weeks, is believed to cause chronic fatigue, insomnia, loss of appetite, dizziness, irritability, headaches, and memory loss.
>
> The Center for Disease Control, in collaboration with The Agency for Toxic Substances and Disease Registry released a guide indicating the residents of affected homes reported irritated and itchy eyes and skin, difficulty breathing, persistent cough, bloody noses, runny noses, recurrent headaches, sinus infection, and asthma attacks.

(citing Exhibit 11). That a person's respiratory condition may be adversely affected by exposure to CDW is beyond question.

### CLAIMANT'S EXPERT REPORT SATISFIES *DAUBERT*

In support of his "bodily injury" claim, Ray Bourgeois has submitted competent expert evidence that satisfies Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms.,*

6

*Inc.,* 509 U.S. 579 (1993) and its progeny. As such, there is a more than an adequate evidentiary basis for Claimant's "bodily injury" claim. Indeed, as a matter of medical science, common sense, and uncontested fact, anyone who has spent any time in a home containing CDW knows that your body and respiratory system is affected as long as you are exposed, *inter alia,* to the reactive sulfur compounds found in CDW. To deny that someone like Claimant who lived in a CDW infested home for an extended period of time sustained no (zero) temporary personal injuries is indefensible.

As a general rule, the factual basis for an expert's opinion goes to the credibility of the testimony, not its admissibility, and it is up to the opposing party to examine the factual basis of the opinion in cross examination. *See, e.g., Sims v. Liberty Mut. Ins. Co.*, 897 So.2d 834 (La.App. 3d Cir. 3/2/05); *Amoco Prod. Co. v. Texaco, Inc.*, 838 So.2d 821, 839 (La. App. 3 Cir. 1/29/03), *writs denied*, 845 So.2d 1096 (La. 6/6/03)(quoting *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir.1988); Fed.R.Evid. 702, Advisory Committee Notes (2000 Amendments) (stating that "[a] review of the case law after *Daubert* shows that rejection of expert testimony is the exception rather than the rule...Vigorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

When addressing non-scientific, medical testimony, the Court in its gatekeeping function is required to take a flexible approach and to apply only those *Daubert* factors that it considers relevant to the specific factual inquiry before it, and the Court is given great discretion and leeway in determining whether expert testimony is admissible and what factors it considers important to that determination. As stated in *Kumho Tire v. Carmichael*, 526 U.S. 137, 141; 119 S.Ct. 1167, 1171 (3/23/99):

> [T]he test of reliability is flexible, and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination.

The trial court's inquiry must be tied to the specific facts of the particular case. *Id.*

In a very instructive Louisiana case, *Dinett v. Lakeside Hospital*, 811 So.2d 116 (La.App. 4th Cir. 2/20/02), *writ denied*, 816 So.2d 853 (La. 5/24/02), the fourth circuit found that the routine practice of a physician to give opinion testimony as to the cause of a patient's condition based upon the history provided by patient is a reliable methodology. According to the appellate court:

> It is a routine and well established practice for a physician to give opinion testimony as to the cause of a patient's condition based upon the history provided by the patient. In the instant case, however, the trial court excluded the testimony on the sole basis of the testimony of another physician, Dr. Sandler, because it is scientifically impossible to determine with any certainty that the transfusion was the source of Mrs. Dinett's infection, any opinion to that effect is merely a "guess." We find the trial court erred in excluding the testimony on this basis. *Daubert* is inapplicable to the instant situation because it is not the experts' methodology that is being questioned; rather, it is the conclusions they reached in applying that methodology to the instant facts.

*Id.* at 119. The court further reasoned that, because plaintiff's burden is to prove causation more probably than not, not to a scientific certainty, the trial judge usurped the jury's function by excluding the physician's testimony on causation as unreliable. Other jurisdictions have reached similar conclusions. *See, e.g., Turner v. Iowa Fire Equipment Co.*, 229 F.3d 1202 (8th Cir. 2000), *reh'g denied* (2000); *Globetti v. Sandoz Pharmaceuticals Corp.*, 111 F.Supp.2d 1174 (N.D. Ala. 2000); *Keener v. Mid-Continent Cas.*, 817 So.2d 347 (La. App. 5th Cir. 04/30/02).

Here, just like in *Dinett*, Claimant has provided an expert report from a qualified physician that states his medical causation opinion, based upon Claimant's medical records and history, that his respiratory condition was aggravated by his exposure to the CDW found in his home. While the Knuaf defendants will presumably submit opposing expert reports stating that Claimant's documented respiratory problems were completely unrelated to his exposure to CDW, such a

dispute between experts is not properly decided pursuant to a *Daubert* motion. Indeed, to date, neither the SM nor the CDW SA has provided Claimant with any expert reports—or evidence of any kind for that matter—which calls Claimant's expert report into question in any way.

### CLAIMANT'S EXPENSES REGARDING HIS BODILY INJURY CLAIM

According to Section 4.7.2.7 of the Settlement Agreement:

> Each side will bear its own fees and costs with respect to establishing or refuting a claim of bodily injury. Class Members and their counsel may not seek fees or costs under Section 14 in pursuing a bodily injury claim. Any attorneys' fees and costs in connection with a bodily injury claim will come from the award, if any.

The very terms of the Settlement Agreement placed Claimant in a Catch-22 situation regarding his very real bodily injury claims: either incur the necessary expenses to assert a bodily injury claim (i.e., pay for all medical records and for a qualified expert to review the same and render a report), or do not, and see how fast the CDW SA dismisses any bodily injury claim you may file. Furthermore, Section 4.7.2.7 mandates that these <u>necessary</u> expenses (not to mention any attorneys' fees regarding the same) incurred to pursue such bodily injury claims "will come from the award, if any." Here, Ray Bourgeois on behalf of his minor child, Ray Bourgeois, III incurred a total of $1,719.10 in expenses to support his bodily injury claims. See attached Exhibit 16, itemization of costs. Given the mandate of Section 4.7.2.7, the $1,000.00 originally offered by the CDW SA was not really an offer at all that could be seriously considered: if accepted, $1,000.00 would only pay for about 2/3rd of Claimant's necessary costs, Claimant would receive nothing, and no attorneys' fees would be earned.

The gross inequity of forcing Claimants like Ray Bourgeois on behalf of his minor child, Ray Bourgeois, III to purchase all of their medical records and pay for a qualified medical expert to review the same and render a report in order to state a colorable bodily injury claim, only to offer enough money to not even cover these <u>necessary</u> costs, is obvious. Needless to say, offering

9

such Claimants $0.00 for their trouble is even more inequitable.  The current situation is truly Kafkaesque.

Your Honor is undoubtedly familiar with the personal turmoil, stress, and utter displacement caused by CDW being found in a person's home.  Through no fault of their own, folks with CDW had to deal with numerous problems for an extended period of time just to reclaim their own home as being safe and worth living in again.  Claimants like Ray Bourgeois on behalf of his minor child, Ray Bourgeois, III also had the additional burden of having their respiratory condition aggravated because of exposure to CDW.  The SM's and CDW SA's take-nothing, $0.00 offer reminds me of a recent town hall meeting in Flint, Michigan:  An out-of-town "official" told an audience that their water was safe to drink; someone in the crowd suggested that the "official" should first move to Flint, drink the water himself, and let his family drink it before giving such advice.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## CONCLUSION

For all of the foregoing reasons, Claimant respectfully requests that his APPEAL be deemed good and proper and that, after due consideration, that this Honorable Court render an award in his favor that is fair and just under the circumstances. Furthermore, pursuant to Section 4.2.9 of the Settlement Agreement, Claimant respectfully requests that this APPEAL and that Your Honor's award "be based upon the record and briefing before the Special Master without further evidentiary submissions, briefing or argument."[6] Claimant is requesting a fair and independent review of this matter by Your Honor; Claimant is not interested in incurring additional litigation expenses and undergoing the additional delay and stress that such continued litigation will all but certainly entail. In short, claimant prays for substantial justice without further delay or expense.

Respectfully submitted,

/s/ J. E. Cullens, Jr.

J. E. Cullens, Jr., La Bar Roll 23011
Jennifer Wise Moroux, La. Bar Roll 31368
**WALTERS, PAPILLION,
THOMAS, CULLENS, LLC**
12345 Perkins Road, Building One
Baton Rouge, LA 70810
(225) 236-3636
cullens@lawbr.net

---

[6] Section 4.2.9 further provides that Your Honor's "decision on any objections will be final, with no further appeals permitted."

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing APPEAL FROM SPECIAL MASTER AWARD OF $0.00 REGARDING THE BODILY INJURY CLAIM OF RAY BOURGEOIS, III (CDW CLAIMANT 100068) was served on all counsel of record herein via the Court's electronic notification system on this 29th day of February, 2016.

/s/ J. E. Cullens, Jr.
_____
J. E. Cullens, Jr.