UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re:  CHINESE-MANUFACTURED | * | MDL 2047 |
| DRYWALL PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to: All Cases | * | |
| | * | MAGISTRATE JUDGE WILKINSON |
| | * | |

* * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF THE MOTION TO EXTINGUISH ANY FURTHER SETTLEMENT OBLIGATIONS OF THE KNAUF DEFENDANTS, PLAINTIFFS' STEERING COMMITTEE, LEAD CONTRACTOR, SETTLEMENT ADMINISTRATOR, SPECIAL MASTER, AND OMBUDSMAN TO CLAIMANTS 6025 CANAL BLVD, LLC, AND JODY FERCHAUD UPON CASH PAYMENT**

The Knauf Defendants[1] file this Motion to Extinguish Any Further Settlement Obligations of the Knauf Defendants, Plaintiffs' Steering Committee, Lead Contractor, Settlement Administrator, Special Master, and Ombudsman to Claimants 6025 Canal Blvd., LLC, and Jody Ferchaud Upon Cash Payment. The Knauf Defendants seek to make a one-time cash payment to 6025 Canal Blvd., LLC, and Jody Ferchaud (collectively "Ferchaud")[2] in the full amount of the remaining remediation budget to fully settle all Chinese drywall-related claims of Ferchaud. Any obligations of the above-listed parties to Ferchaud should be extinguished upon payment by the Knauf Defendants in the amount of $225,516.13.[3]

---

[1] The Knauf Defendants include Knauf Plasterboard (Tianjin) Co., Ltd., Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH, Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda., and PT Knauf Gypsum Indonesia.

[2] The Affected Property is owned by 6025 Canal Blvd., LLC, which is itself owned by its sole member, Jody Ferchaud. The Affected Property address is 6021 and 6025 Canal Boulevard, New Orleans, LA 70124 (hereinafter "Property" or "Properties").

[3] *See* Exhibit A, Breakdown of Cash-Out Payment.

1

As further described below, this Court is empowered to use its discretion in solving disputes between the Knauf Defendants, Lead Contractor and Chinese drywall claimants. The equitable relief sought by the Knauf Defendants would make Ferchaud whole and allow Ferchaud to remediate the Property using her choice of contractors.

## I.  BACKGROUND

Although not a member of an omnibus complaint, Ferchaud filed claims with the Settlement Administrator[4] prior to the October 25, 2013 deadline in the Chinese drywall MDL. The Knauf Defendants agreed to settle these claims pursuant to the *Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047* ("New Claims Settlement Agreement"),[5] and on July 28, 2014, Ferchaud executed a Work Authorization ("WA") Agreement for each of her two attached Affected Properties.[6]

Remediation commenced on the Ferchaud Properties on or about November 13, 2014, and the Properties were issued environmental certificates by GFA International on or about December 2, 2014, certifying that the Properties were free of Chinese drywall, drywall dust, residue, etc.[7] GFA International documented the gutted Properties, free of Chinese drywall, drywall dust, and residue with photographs.[8] The remediation duration estimate for the Properties was only three months.

Throughout the next year, as the Court is aware, Ferchaud caused numerous delays, sought additional relief not granted by the relevant settlement agreements or WA Agreements,

---

[4] Unless otherwise noted, all capitalized terms herein carry the same definitions as those provided in the Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047, Rec. Doc. 16407-3.
[5] Rec. Doc. 16978-1.
[6] See Exhibit B, Work Authorization Agreements.
[7] *See* Exhibit C, Environmental Certificates.
[8] *See* Exhibit D, GFA International photographs at time of environmental inspection.

and sought to shift the burden of resolving pre-existing code violations in the Properties to the Lead Contractor, among other obstacles that were created by Ferchaud. Pursuant to the dispute resolution mechanism created by the *Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047*, as amended by the Fourth amended agreement (collectively "Knauf Class Settlement Agreement"), to which Ferchaud is bound, the Special Master ruled in favor of the Lead Contractor and Knauf Defendants.[9] Ferchaud appealed the Special Master's Opinion and Decree, and the Court, after allowing briefs to be filed by Ferchaud and the Lead Contractor, affirmed the Special Master's Opinion and Decree on February 1, 2016.[10]

Since the Court issued its February 1 Order, the obstruction and delays by Ferchaud have only intensified. Ferchaud is now attempting to make additional non-protocol claims against the Lead Contractor and to re-litigate issues already covered by the February 1 Order. Ferchaud has sent to the Lead Contractor, through its counsel, approximately fifty emails since February 1. The following is a timeline since February 1, 2016, and an example of the content of the numerous emails sent by Ferchaud:

- On **February 11**, Ferchaud communicates that she has fired her attorney, Joe Bruno, and is now a pro se plaintiff.  Ferchaud further indicates that:
    - she will enter her property every day during the remainder of the remediation
    - she will be present for all City of New Orleans inspections
    - the home will be inspected by her own expert before the walls are closed and by her own inspector after completion of the remediation
    - the Lead Contractor owes Ferchaud credits.

- **February 11- 22**, Ferchaud considers a settlement.

- On **February 22**, Ferchaud communicates that she has a new attorney, Matthew Moeller, and that he will review the terms of any settlement.

---

[9] *See* Exhibit E, Special Master's Opinion and Decree, dated November 8, 2015.
[10] Rec. Doc. 20025.

- On **February 22**, the Lead Contractor provides terms and conditions for moving forward with the remediation in an efficient manner.

- On **February 23**, Ferchaud sends numerous emails relating to cabinets being damaged and claims they were damaged during demolition or when the PODS were moved. However, the cabinets were documented as having pre-existing damage. Further, because the delay of now more than one year was attributed to Ferchaud by the Special Master and the Court, any damage to the POD contents due to storage of more than three months is Ferchaud's responsibility.

- On **February 23**, Ferchaud responds to Moss' terms and conditions. The response includes the following:
    - that Ferchaud be awarded $25,000 to pay her expert
    - that the Lead Contractor breached the WA Agreement
    - that Ferchaud's own expert must inspect the property
    - that Ferchaud will not rely upon any City of New Orleans inspectors
    - that floors were damaged, though this was previously pointed out as preexisting during kick off and signed off by Mr. Ferchaud
    - that the Lead Contractor produce a new scope of work, which would include adding sound board and insulation in all interior walls on the first level.

- On **February 23**, Ferchaud forwards an email from Matthew Moeller indicating that he no longer represents her.

- On **February 24**, Ferchaud communicates that she is looking to speak with Zach Smith of the City of New Orleans to clarify any issues with the common wall that were determined to be her responsibility by the Court. She requests a copy of the Lead Contractor's contract with the Knauf Defendants.

- On **February 24**, Ferchaud requests a copy of all Benchmark photos taken during the phases of demolition.

- On **February 24**, Ferchaud communicates that there is a leaking pipe that has not been soldered. Ferchaud also communicates that the Lead Contractor must move the HVAC equipment per her expert's report.

- On **February 24**, Ferchaud communicates that there is missing framing, the HVAC system is not like-for-like and requests all photos and videos during demolition.

- On **February 25**, Ferchaud communicates that her plumber cannot move the gas lines until the Lead Contractor moves the appliances in the attic. Ferchaud also raises the same issue with a leaking pipe that she claims is the Lead Contractor's responsibility. Ferchaud again requests the Lead Contractor's contract with the Knauf Defendants.

- On **February 25**, Ferchaud communicates that she met with the City of New Orleans. Ferchaud attempts to shift responsibility to the lead Contractor on the issue of

the electrical receptacles, though this issue was already addressed by the Special Master and the Court.

- On **February 26**, Ferchaud communicates that there are missing furdowns and that the current ductwork is not up to code.

- On **February 26**, Ferchaud communicates that there are missing ducts in the upstairs bathrooms and in the master bedroom, an issue that was already reviewed by Ombudsman Louis Velez, a year ago.

- On **February 26**, Ferchaud communicates that no third party inspectors should be allowed on her Property and that Ferchaud's expert must be allowed to check the work of the City of New Orleans.

- On **February 27**, Ferchaud communicates that the current ductwork does not meet industry standards.

- On **March 2**, the Special Master issues a decree regarding the protocol that must be followed to proceed with remediation.

- On **March 6**, Ferchaud communicates through various emails that the Properties should not have passed the GFA environmental inspections on December 1, 2014, attaching various photos purporting to show drywall dust in her Properties.

- On **March 8**, Ferchaud requests that all cabinets and doors be removed from the PODS so that a construction defect consultant can write a report to bolster an appeal to Judge Fallon.

- **March 8**, Ferchaud communicates that she will appeal the protocol established by the Special Master.

Many of the above items were already addressed by the Ombudsman and the Special Master. Others are non-protocol or pre-existing code violations. However, the Lead Contractor has worked diligently to address Ferchaud's issues in a timely manner. Unfortunately, the issues only increase over time, making the prospect of completing the remediation within the program highly unlikely.

The obstruction by Ferchaud has not been limited to her relationship with the Lead Contractor. Ferchaud has been represented by numerous attorneys for her Chinese drywall claims, including Herman Herman & Katz, Daniel Becnel, Bruno & Bruno, and the Moeller

Firm, relationships which were all ended within the timeframe of this remediation. The Lead Contractor, Knauf Defendants, Ombudsman, Plaintiffs' Steering Committee, Special Master, and Settlement Administrator have likewise worked diligently to bring Ferchaud's concerns and demands to an amicable resolution. However, Ferchaud has not provided the above-listed parties with the corresponding willingness or effort to resolve the purported issues. Ferchaud has demonstrated that there is no chance at reconciliation and no chance of completing the remediation within the program.

As the record indicates, the parties are now at an impasse. It is clear that attempting to complete the remediation of the Ferchaud Properties within the Knauf remediation program is futile. Ferchaud will never allow the remediation to be completed, and the Knauf Defendants and Lead Contractor will not be able to complete the remediation in a cost-effective manner. The Knauf Defendants, therefore, request equitable relief from this Court in order to make Ferchaud whole.

## II. LAW & ARGUMENT

Ferchaud's remediation claims are settled pursuant to the WA Agreements and the New Claims Settlement Agreement, which itself incorporates the remediation program of the Knauf Class Settlement Agreement. The WA Agreements signed by Ferchaud explicitly state in bold lettering at the very top that the terms of the WA Agreements are subject to the New Claims Settlement Agreement. The WA Agreements also incorporate, in the Repair Work section, the dispute resolution mechanisms created by the Knauf Class Settlement Agreement.

> In conducting the Repair Work and in resolving any disputes pursuant to the dispute resolution process described in Sections 4.5.1.2.1 and 4.5.1.2.2 of the Knauf Class Settlement Agreement, the Property Owner and Contractor agree that the objective of the

> Repair Work is to remove on a cost effective basis all drywall and Chinese drywall-related odors and contamination…[11]

The record is clear that the remediation of the Ferchaud Properties on a cost-effective basis is not possible. The Knauf Defendants, Lead Contractor, Settlement Administrator, Special Master, Ombudsman, and Plaintiffs' Steering Committee have unsuccessfully expended great resources in order to remediate the Properties. The Knauf Class Settlement Agreement's dispute resolution system has not moved the claims any closer to resolution; in fact, Ferchaud now seeks to re-litigate issues that were already decided by both the Special Master and this Court.

Though the Knauf Defendants believe that the Special Master has the authority to grant the relief that is sought here,[12] the New Claims Settlement Agreement, to which Ferchaud is bound, grants this Court the exclusive jurisdiction and authority to finally resolve the disputes at issue. Section VII(B) of the New Claims Settlement Agreement grants this Court the exclusive jurisdiction to administer, supervise, construe and enforce the Agreement. Section VIII(H) of the Agreement grants the Court the authority to resolve disputes:

> Any disputes under this Agreement shall be presented for resolution to the MDL Court. The MDL Court's determination shall be final with no appeal.[13]

The Knauf Defendants, therefore, request that the Court extinguish the obligations of the Knauf Defendants, the Lead Contractor, the Special Master, the Ombudsman, the Settlement Administrator, and the Plaintiffs' Steering Committee upon payment to Ferchaud by the Knauf Defendants in the amount of $225,516.13, which represents the Final Cost Estimate, plus credits, minus the costs incurred to date in remediating the Properties. Ordinarily, cash-outs in the Knauf

---

[11] *Id*. at page 3 of 15.
[12] Section 4.5.1.2.1 of the Knauf Class Settlement Agreement provides the Special Master with great latitude in resolving disputes: "In the event that a dispute arises between a KPT Property Owner and the Lead Contractor or Other Approved Contractor over the Remediation Protocol for the individual KPT Property, such dispute shall be submitted to the Special Master who will resolve the dispute…"
[13] Section VIII (H), New Claims Settlement Agreement.

remediation program are discounted by $7.50 per square foot and do not include owner credits. However, the Knauf Defendants seek to pay Ferchaud an undiscounted cash-out payment in order to allow Ferchaud to complete the remediation with a different contractor.

### III. CONCLUSION

Considering the above and foregoing and the exclusive jurisdiction of this Court to resolve the dispute between Ferchaud, the Lead Contractor and the Knauf Defendants, the Knauf Defendants respectfully request that the Court extinguish any remaining settlement obligations of the Knauf Defendants, Plaintiffs' Steering Committee, Lead Contractor, Settlement Administrator, Special Master, and Ombudsman to Ferchaud upon the Knauf Defendants' one-time payment to Ferchaud in the amount of $225,516.13. Such payment will fully and finally settle all Chinese drywall-related claims of Ferchaud.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**

/s/ *Kerry J. Miller*_____
**KERRY J. MILLER (#24562), T.A.
DANIEL J. DYSART (#33812)
RENÉ A. MERINO (#34408)**
201 St. Charles Avenue, Suite 3600
New Orleans, LA 70170
Ph: (504) 566-8646
Fax: (504) 585-6946
Email: kjmiller@bakerdonelson.com

*Counsel for the Knauf Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing Motion to Extinguish Any Further Settlement Obligations of the Knauf Defendants, Plaintiffs' Steering Committee, Lead Contractor, Settlement Administrator, Special Master, and Ombudsman to Claimants 6025 Canal Blvd., LLC, and Jody Ferchaud Upon Cash Payment has been served to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system which will send a Notice of Electronic Filing in accord with the procedures established in MDL 2047, on this 10th day of March, 2016.

I further certify that this document is being served this day on Ferchaud via email.

/s/ *Kerry J. Miller*