EXHIBIT "C"





***Lightning Lien Letters, Inc.***
***1909 Tyler Street, Suite 302***
***Hollywood, Fl 33020***
*Office: 954-929-9363   Fax: 954-929-9322 or 929-5548*
Email: searchorder@lienletter.com

---

## CLIENT SHOULD ALSO REVIEW CONTENT OF SEARCH!

*Search Update*

To: Kahane & Associates, P.A.      *From:  Karina Orellana*

Attn: Tina McCabe                        Date sent:  09-28-2010
                                                  Total pages:  13
For review

---

Message: Please find completed search for:
File #:  10-09094
Folio#:  06-46-24-55-0000A.0103
Property address:   11001 Gulf Reflections Drive #103 Fort Myers, Florida 33908.
This property is under the jurisdiction of:  Lee County.

CITY LIENS:            N/A

CODE VIOLATIONS:        ____YES   __X__NO
(See attached code search.) The contact number for code enforcement is 239-533-8329.

OPEN/EXPIRED PERMITS:    PER YOUR REQUEST THIS INFORMATION IS NOT INCLUDED.

UTILITY:
ACTIVE:                      MASTER METER

SOLID WASTE:  Solid waste fees are included in the tax statement.

PROPERTY TAXES:  2009 Taxes are in paid status.  See attached tax record.
(Not to be used in lieu of title search.)

TANGIBLE TAXES:   None

ASSESSMENTS:  Included in the tax statement.

MISCELLANEOUS:  ATTACHED PLEASE FIND THE PROPERTY APPRAISER FACT SHEET.

Attached is Invoice#10 2287
Thank you for choosing L.L.L. Inc.
Lightning Lien Letters, Inc. is not responsible for errors and or omissions by city or county providing
attached information.

### UPDATE FEE ATTACHED

Status: Search for a Permit/Case                     Page 1 of 1

**Home**            **Status**            **Parcel**            **Help**

## Search for a Permit/Case – Review Status

Fill in the form below to search for a permit/case. Fields may be left blank to show more results and do not use periods in your search. You can see a sample of this query by clicking here.

**You must use all UPPER CASE letters in your search**

#### Search by Permit/Case Number or Strap Number

| | | |
|---|---|---|
| **Permit/Case Number:** | | Example: USE UPPER CASE ONLY – RES2004-00001, COM2004-00001, ELE2004-00001 |
| **Strap Number:** | | Example: 32341679895931648 (17 digit property id) |

#### Search by Project Name

| | | |
|---|---|---|
| **Project Name:** | | Example: Subdivision Name, Park Name |

#### Search by Company Name

| | | |
|---|---|---|
| **Company Name:** | | Example: LEE COUNTY CONSTRUCTION CO. |
| **License Number:** | | Example: CGC12345 |

#### Search by Address

| | | |
|---|---|---|
| **Number** | 11001 | Example: 20 |
| **Duplex Number** | | Example: /22 |
| **Street** | GULF REFLECTIONS | Example: Cleveland |

| Clear | Search |
|---|---|

**Top of Page**



**Version: 3.5.3.20051221.03**

Copyright © 2005 by Accela, Inc.
To comment on this page, send email to eConnect@leegov.com or call (239) 533-8329.

No open code violations

Status: Permits Matching Your Search  Page 1 of 3

| Home | Status | Parcel | Help |

## Permits/Cases Matching Your Search

```
Back to Search
```

Below is a list of permits matching your search criteria. Up to 25 permits are displayed per page. To open a permit, click the permit number.

Total Permits: 16     Displayed Permits: 16     Page: 1 of 1 Previous   Next

| Permit/Case Number Description | Project Name | Owner Name | Address | Status | Strap Number |
|---|---|---|---|---|---|
| COM2005-02491 | GULF REFLECTIONS BLDG A | PINE RIDGE REAL ESTATE | 11001 GULF REFLECTIONS DRIVE FORT MYERS 33908 | Finaled | 06462400000080000 |
| 30 Unit Condo | | | | | |
| COM2006-00617 | GULF REFECTIONS | PINE RIDGE REAL ESTATE | 11001 GULF REFLECTIONS DRIVE BLDG A FORT MYERS 33908 | Closed | 06462400000080000 |
| 6 bay covered parking | | | | | |
| COM2006-00618 | GULF REFLECTIONS | PINE RIDGE REAL ESTATE | 11001 GULF REFLECTIONS DRIVE BLDG A FORT MYERS 33908 | Received | 06462400000080000 |
| 4 bay parking carport | | | | | |
| COM2006-00619 | GULF REFLECTIONS | PINE RIDGE REAL ESTATE | 11001 GULF REFLECTIONS DRIVE BLDG A FORT MYERS 33908 | Received | 06462400000080000 |
| 10 bay parking carport | | | | | |
| COM2006-00620 | GULF REFLECTIONS | PINE RIDGE REAL ESTATE | 11001 GULF REFLECTIONS DRIVE BLDG A FORT MYERS 33908 | Received | 06462400000080000 |
| 8 bay parking carport | | | | | |
| COM2006-00621 | GULF REFLECTIONS | PINE RIDGE REAL ESTATE | 11001 GULF REFLECTIONS DRIVE BLDG A FORT MYERS 33908 | Received | 06462400000080000 |
| 8 bay garage detached | | | | | |
| COM2006-01608 | GULF REFLECTIONS | PINE RIDGE REAL ESTATE | 11001 GULF REFLECTIONS | Finaled | 064624350000A0000 |

Status: Permits Matching Your Search   Page 2 of 3

| | | | DR FORT MYERS 33908 | | |
|---|---|---|---|---|---|
| 4 BAY CARPORT | | | | | |

| COM2006-01609 | GULF REFLECTIONS | PINE RIDGE REAL ESTATE | 11001 GULF REFLECTIONS DRIVE BLDG A FORT MYERS 33908 | Received | 06462400000080000 |
|---|---|---|---|---|---|
| bay garage detached | | | | | |

| COM2006-01610 | GULF REFLECTIONS | PINE RIDGE REAL ESTATE | 11001 GULF REFLECTIONS DR BLD A FORT MYERS 33908 | Finaled | 064624350000A0000 |
|---|---|---|---|---|---|
| 6 BAY CARPORT | | | | | |

| COM2006-01611 | GULF REFLECTIONS | PINE RIDGE REAL ESTATE | 11001 GULF REFLECTIONS DR BLD A FORT MYERS 33908 | Finaled | 064624350000A0000 |
|---|---|---|---|---|---|
| 10 BAY CARPORT | | | | | |

| COM2006-03297 | GULF REFLECTIONS | PINE RIDGE REAL ESTATE | 11041 GULF REFLECTIONS DRIVE FORT MYERS 33908 | Archived | 064624350000A0000 |
|---|---|---|---|---|---|
| CONSTRUCT (8) BAY CARPORT | | | | | |

| COM2007-02183 | GULF REFLECTIONS | PINE RIDGE REAL ESTATE | 11001 GULF REFLECTIONS DR BLD A FORT MYERS 33908 | Finaled | 0646243500000000CE |
|---|---|---|---|---|---|
| 8 BAY GARAGE BUILDING A | | | | | |

| FIR2006-00342 | GULF REFLECTIONS BLDG A | PINE RIDGE REAL ESTATE | 11001 GULF REFLECTIONS DRIVE FORT MYERS 33908 | Finaled | 06462400000080000 |
|---|---|---|---|---|---|
| FIRE ALARM WITH 20 DEVICES AND MONITORING SYSTEM | | | | | |

| FIR2006-00770 | GULF REFLECTIONS BLDG A | PINE RIDGE REAL ESTATE | 11001 GULF REFLECTIONS DRIVE FORT MYERS 33908 | Finaled | 06462400000080000 |
|---|---|---|---|---|---|
| SPRINKLERS 520 HEADS | | | | | |

| FIR2009-01010 | GULF REFLECTIONS | PINE RIDGE REAL ESTATE | 11001 GULF REFLECTIONS DR BLD A FORT MYERS 33908 | Expired | 0646243500000000CE |
|---|---|---|---|---|---|
| FIRE ALARM MONITORING TAKE OVER | | | | | |



| ROW2006-00379 | PINE RIDGE ROAD | COMCAST COMMUNICATIONS | PINE RIDGE ROAD | Finaled | 064624350000A0000 |
|---|---|---|---|---|---|
| CONTACT: BRUCE DRACKETT 941/721-0757 WAIVER REC'D MAILED 5/19/06 | | | | | |

Total Permits: 16          Displayed Permits: 16          Page: 1 of 1 Previous    Next

Back to Search        Top of Page



Version: 3.5.3.20051221.03

Copyright © 2005 by Accela, Inc.
To comment on this page, send email to eConnect@leegov.com or call (239) 533-8329.

 

# Property Search

To search for a specific property, please enter your search criteria and then click the "Find" button to begin the search process.

| Site Address |  11001 Gulf Reflections D | Find |

**Nothing found on this STRAP number.**

**REQUESTED INFORMATION MAY BE PROTECTED.**

**If information on your MSTBU assessment is not available at this site, fax your request _specifying project information_, to (239) 485-2149.**

**Lien search is to be done at leeclerk.org.**

No Special Road Assessments

Lee County Tax Collector - Print Results





| Account/ Real Property Account | Tax Year | Name/ Address | Status/ Outstanding Balance | |
|---|---|---|---|---|
| BR 00 2865 02 06-46-24-35-0000A.0101 | 2009 | FMY VENTURES LLC JWR CONSTRUCTION SERVICES 11001 GULF REFLECTIONS DR | ZEROTAX | Details |
| BR 00 4959 22 06-46-24-35-0000A.0202 | 2009 | KIRBY JAY & NINA 11001 GULF REFLECTIONS DR | ZEROTAX | Details |
| BR 00 9361 04 06-46-24-35-0000A.0304 | 2009 | WHITE JILL L 11001 GULF REFLECTIONS DR | PAID | Details |

No Tangible Taxes

Lee County Tax Collector - Print Results





| Account | Name/Address | Business Description | Outstanding Balance | |
|---------|--------------|---------------------|--------------------|---|
| 1003756 | KRISTI KRANSEL YACHT SERVICE<br>KRANSEL KRISTI M<br>11001 GULF REFLECTIONS DR UNIT 107<br>FT MYERS FL 33908 | BOAT MISC REPAIR & DETAILING | $50.00 | Details<br>Add to Cart |

No Business Taxes

Lee County Property Appraiser Online Parcel Inquiry                     Page 1 of 1

 **Lee County Property Appraiser**                              Tax Year [    ]

Next Lower Parcel Number  Next Higher Parcel Number  Tax Estimator  Tax Bills  Print

## Property Data for Parcel 06-46-24-35-0000A.0103

**Owner Of Record**

INDYMAC BANK FSB
888 EAST WALNUT ST
PASADENA CA 91101

**Site Address**

11001 GULF REFLECTIONS DR 103
FORT MYERS FL 33908

**Legal Description**

GULF REFLECTIONS
DESC OR 4546 PG 3735
PHASE I BLDG A UNIT 103

**Classification / DOR Code**

CONDOMINIUM / 04

[ Viewer ] Tax Map [ Print ]

[ Pictometry Aerial Viewer ]

Image of Structure

< Photo Date April of 2008 >

### Property Values (2010 Preliminary Roll)

| | |
|---|---|
| Just | 95,600 |
| Assessed | 95,600 |
| Portability Applied | 0 |
| Assessed SOH | 95,600 |
| Taxable | 95,600 |
| Building | 95,600 |
| Building Features | Incl. in bldg value |
| Land | 0 |
| Land Features | Incl. in land value |
| SOH Difference | 0 |

### Exemptions

| | |
|---|---|
| Homestead | 0 |
| Additional Homestead | 0 |
| Widow | 0 |
| Widower | 0 |
| Disability | 0 |
| Wholly | 0 |
| Senior | 0 |
| Agriculture | 0 |

### Attributes

| | |
|---|---|
| Land Units of Measure | |
| Total Number of Land Units | 0.0 |
| Frontage | 0 |
| Depth | 0 |
| Total Number of Buildings | 0 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2.0 |
| Total Buildings Sq Ft | 1,500 |
| 1st Year Building on Tax Roll | 2007 |
| Historic District | No |

| + | Taxing Authorities |
|---|---|
| + | Sales / Transactions |
| + | Parcel Numbering History |
| + | Solid Waste (Garbage) Roll Data |
| + | Elevation Information |
| + | Appraisal Details |

TRIM (proposed tax) Notices are available for the following tax years
[ 2000 2001 2002 2003 2004 2005 2006 2007 2008 2009 2010 ]

Next Lower Parcel Number   Next Higher Parcel Number   New Query   Search Results   Home

SEE ADDENDUM TO PURCHASE AGREEMENT
"SUBJECT TO" ATTACHED
AND MADE A PART HEREOF

REDC AUCTION ITEM NO.   FF-1170

# PURCHASE AGREEMENT WITH JOINT ESCROW INSTRUCTIONS

This Purchase Agreement with Joint Escrow Instructions (this *"Agreement"*) is executed by and between the Buyer and Seller, who agree as follows:

LIMITATION OF SELLER'S LIABILITY AND BUYER'S WAIVER OF IMPORTANT RIGHTS:

BUYER UNDERSTANDS AND ACKNOWLEDGES THAT SELLER HAS OR MAY HAVE ACQUIRED THE PROPERTY THROUGH FORECLOSURE, DEED-IN-LIEU OF FORECLOSURE, OR SIMILAR PROCESS, SELLER HAS NEVER OCCUPIED THE PROPERTY, AND SELLER HAS LITTLE OR NO DIRECT KNOWLEDGE ABOUT THE CONDITION OF THE PROPERTY.  BUYER FURTHER UNDERSTANDS AND ACKNOWLEDGES THAT THE SELLER MAY BE SELLING THE PROPERTY AS LAND ONLY, IN ITS PRESENT AND EXISTING PHYSICAL CONDITION AND MAKES NO REPRESENTATIONS OR WARRANTIES AS TO WHETHER THE PROPERTY CONTAINS ANY STRUCTURES OF ANY KIND.  BUYER AGREES THAT BUYER IS BUYING THE PROPERTY "AS IS, WHERE IS" (AS MORE FULLY SET FORTH IN *SECTION 9* OF THIS AGREEMENT).

NOTWITHSTANDING ANY PROVISION TO THE CONTRARY IN THIS AGREEMENT, SELLER'S LIABILITY AND BUYER'S SOLE AND EXCLUSIVE REMEDY IN ALL CIRCUMSTANCES AND FOR ALL CLAIMS (AS THE TERM IS DEFINED IN *SECTION 9* OF THIS AGREEMENT, AND ALL REFERENCES IN THIS AGREEMENT TO "CLAIMS," "CLAIM," "Claims," or "Claim" SHALL HAVE SUCH MEANING) ARISING OUT OF OR RELATING IN ANY WAY TO THIS AGREEMENT OR THE SALE OF THE PROPERTY TO BUYER INCLUDING, BUT NOT LIMITED TO, SELLER'S BREACH OR TERMINATION OF THIS AGREEMENT, THE CONDITION OF THE PROPERTY, SELLER'S TITLE TO THE PROPERTY, THE OCCUPANCY STATUS OF THE PROPERTY, THE SIZE, SQUARE FOOTAGE, BOUNDARIES, OR LOCATION OF THE PROPERTY, ANY COST OR EXPENSE INCURRED BY BUYER IN SELLING A CURRENT OR PRIOR RESIDENCE OR TERMINATING A LEASE ON A CURRENT OR PRIOR RESIDENCE, OBTAINING OTHER LIVING ACCOMMODATIONS, MOVING, STORAGE OR RELOCATION EXPENSES, OR ANY OTHER COSTS OR EXPENSES INCURRED BY BUYER IN CONNECTION WITH THIS AGREEMENT SHALL BE LIMITED TO NO MORE THAN:

(A)  A RETURN OF BUYER'S EARNEST MONEY DEPOSIT IF THE SALE TO BUYER DOES NOT CLOSE AS FURTHER SET FORTH HEREIN; AND

(B)  THE LESSER OF BUYER'S ACTUAL DAMAGES OR $5,000.00 IF THE SALE TO BUYER CLOSES.

BUYER SHALL NOT BE ENTITLED TO A RETURN OF BUYER'S EARNEST MONEY DEPOSIT IF BUYER MATERIALLY BREACHES THIS AGREEMENT.

BUYER AGREES THAT SELLER SHALL NOT BE LIABLE TO BUYER UNDER ANY CIRCUMSTANCES FOR ANY SPECIAL, CONSEQUENTIAL, OR PUNITIVE DAMAGES WHATSOEVER, WHETHER IN CONTRACT, TORT (INCLUDING NEGLIGENCE AND STRICT LIABILITY), OR ANY OTHER LEGAL OR EQUITABLE PRINCIPLE, THEORY, OR CAUSE OF ACTION ARISING OUT OF OR RELATED IN ANY WAY TO ANY CLAIM, INCLUDING, BUT NOT LIMITED TO, THE AFOREMENTIONED CLAIMS.

ANY REFERENCE TO A RETURN OF THE BUYER'S EARNEST MONEY DEPOSIT CONTAINED IN THIS AGREEMENT SHALL MEAN A RETURN OF THE EARNEST MONEY DEPOSIT, LESS ANY ESCROW CANCELLATION FEES APPLICABLE TO THE BUYER UNDER THIS AGREEMENT AND LESS FEES AND COSTS PAYABLE FOR SERVICES AND PRODUCTS PROVIDED DURING ESCROW AT THE BUYER'S REQUEST. TO THE FULLEST EXTENT PERMITTED BY LAW THE BUYER WAIVES ANY CLAIMS THAT THE PROPERTY IS UNIQUE AND THE BUYER ACKNOWLEDGES THAT A RETURN OF ITS EARNEST MONEY DEPOSIT CAN ADEQUATELY AND FAIRLY COMPENSATE THE BUYER FOR ALL CLAIMS. UPON RETURN OF THE EARNEST MONEY DEPOSIT TO THE BUYER, THIS AGREEMENT SHALL BE TERMINATED, AND THE BUYER AND THE SELLER SHALL HAVE NO FURTHER LIABILITY, OBLIGATION, OR RESPONSIBILITY TO EACH OTHER IN CONNECTION WITH THIS AGREEMENT. IF THE SALE TO BUYER CLOSES AND SELLER COMPENSATES BUYER AS PROVIDED ABOVE FOR BUYER'S ACTUAL DAMAGES, IF ANY, THEN THE BUYER AND THE SELLER SHALL HAVE NO FURTHER LIABILITY, OBLIGATION, OR RESPONSIBILITY TO EACH OTHER IN CONNECTION WITH THIS AGREEMENT.

SELLER'S LIMITATION OF LIABILITY AND BUYER'S WAIVERS PROVIDED IN THIS AGREEMENT ARE A MATERIAL PART OF THE CONSIDERATION TO BE RECEIVED BY THE SELLER UNDER THIS AGREEMENT AS NEGOTIATED AND AGREED TO BY THE BUYER AND THE SELLER.

THE BUYER FURTHER WAIVES THE FOLLOWING, TO THE FULLEST EXTENT PERMITTED BY LAW:

(A)  ALL RIGHTS TO FILE AND MAINTAIN AN ACTION AGAINST THE SELLER FOR SPECIFIC PERFORMANCE;

(B)  RIGHT TO RECORD A LIS PENDENS AGAINST THE PROPERTY OR TO RECORD THIS AGREEMENT OR A MEMORANDUM THEREOF IN THE REAL PROPERTY RECORDS;

(C)  RIGHT TO INVOKE ANY EQUITABLE REMEDY THAT WOULD PREVENT THE SELLER FROM CONVEYING THE PROPERTY TO A THIRD PARTY BUYER;

(D)  ANY CLAIMS ARISING FROM THE ADJUSTMENTS OR PRORATIONS OR ERRORS IN CALCULATING THE ADJUSTMENTS OR PRORATIONS THAT ARE OR MAY BE DISCOVERED AFTER CLOSING UNLESS SUCH CLAIMS ARE MATERIAL AND BUYER NOTIFIES SELLER IN WRITING OF SUCH CLAIMS WITHIN THIRTY (30) DAYS OF THE CLOSING DATE;

(E)  ANY REMEDY OF ANY KIND THAT THE BUYER MIGHT OTHERWISE BE ENTITLED TO AT LAW OR EQUITY (INCLUDING, BUT NOT LIMITED TO, RESCISSION OF THIS AGREEMENT), EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT;

(F)  ANY RIGHT TO A TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED IN ANY WAY TO THIS AGREEMENT;

(G)  ANY RIGHT TO AVOID THE SALE OF THE PROPERTY OR REDUCE THE PRICE OR HOLD THE SELLER LIABLE FOR ANY CLAIMS ARISING OUT OF OR RELATED IN ANY WAY TO THE CONDITION, CONSTRUCTION, REPAIR, OR TREATMENT OF THE PROPERTY, OR ANY DEFECTS, APPARENT OR LATENT, THAT MAY NOW OR HEREAFTER EXIST WITH RESPECT TO THE PROPERTY, INCLUDING BUT NOT LIMITED TO ANY CLAIMS RELATING TO ANY ORDINANCES AND ANY REPAIR COSTS REQUIRED THEREUNDER;

(H)  ANY CLAIMS ARISING OUT OF OR RELATING IN ANY WAY TO ENCROACHMENTS, EASEMENTS, BOUNDARIES, SHORTAGES IN AREA OR ANY OTHER MATTER THAT WOULD BE DISCLOSED OR REVEALED BY A SURVEY OR INSPECTION OF THE PROPERTY OR SEARCH OF PUBLIC RECORDS; AND

(I)  ANY CLAIMS ARISING OUT OF OR RELATING IN ANY WAY TO THE SQUARE FOOTAGE, SIZE, OR LOCATION OF THE PROPERTY, OR ANY INFORMATION PROVIDED ON THE MULTIPLE LISTING SERVICE, OR BROCHURES OR WEB SITES OF SELLER OR SELLER'S AGENT OR BROKER.

THE ABOVE PROVISIONS SHALL SURVIVE THE CLOSING OF THE TRANSACTION CONTEMPLATED HEREBY, OR THE EARLIER TERMINATION OF THE AGREEMENT.

SELLER'S INITIALS _____          BUYER'S INITIALS _____

1. **KEY TERMS:**

   A. **SELLER:**     OneWest Services LLC

   B. **BUYER:**      _Labb Investments_
                      BUYER PRINTED NAME

   _____
   CO-BUYER PRINTED NAME, IF ANY

   _1198 Meredith Ave_
   ADDRESS

   _Mississwayer , ONT   L5E2E5_
   CITY, STATE, ZIP

   Home Phone No.:   _647·705·5007_

   Cell Phone No.:   _786-306·9090_

   Work Phone No.:   _____

   Fax Phone No.:   _____

   Email Address:   _alb_pilot@live.com_

   C. **PURCHASE PRICE:**

   Total Purchase Price Calculation:

   Winning Bid Amount:                        _37,500.⁰⁰_

   plus Buyer's Premium (greater of 5% or $2,500):   _2,500.⁰⁰_

   equals TOTAL PURCHASE PRICE:               _40,000.⁰⁰_

   Earnest Money Deposit* from Buyer:         _6,000.⁰⁰_

   Earnest Money Deposit Components:

   ☐   **CHECK BOX** if first property acquired at auction (*Earnest Money Deposit to be 5% of
       Total Purchase Price or $2,500, whichever is greater.  First $2,500 of Earnest
       Money Deposit shall be in the form of a cashier's check or cash.)

   ☑   **CHECK BOX** if not first property acquired at auction (*Earnest Money Deposit to be 15%
       of Total Purchase Price or $5,000, whichever is greater.  First $5,000 of Earnest
       Money Deposit shall be in the form of a cashier's check or cash.)

   D. **PROPERTY:**

   Property Address:   11001 GULF REFLECTIONS DR _# 103_

   FT MYERS _____, FL  33908

   Legal Description of Property:   See Exhibit A (if the legal description of the Property is not
   complete or is inaccurate, this Agreement shall not be invalid and the legal description shall be
   completed or corrected to meet the requirements of the title company issuing the owner's title policy
   referenced below).

   E. **CLOSING DATE:**   _10/26/10_                (Subject to *Section 6*)

F.  **ESCROW/CLOSING AGENT:**  KAHANE ASSOC

ANDREW HAWRONSKY

8201 Peters Road Suite 3000 Plantation, FL 33324

Telephone:  954-382-5695

Facsimile:

G.  **TITLE INSURANCE COMPANY:**

2.  **PURCHASE AND SALE.** On and subject to the terms of this Agreement, Seller agrees to sell to Buyer and Buyer agrees to purchase from Seller the real property identified above in *Section 1* and a legal description of which is attached hereto as Exhibit A and incorporated by this reference *(the "Property")* for the price identified above in *Section 1* as the Total Purchase Price (the *"Purchase Price")*. The Property includes the improvements thereon, including those items which Florida law provides is part of the Property, at the Closing. Seller makes no representation or warranty as to the existence or condition of such items. Seller makes no representation or warranty as to the existence, condition, ownership or right of possession of any personal property located on the Property.

3.  **PAYMENT OF PURCHASE PRICE.** Buyer shall pay Seller the Total Purchase Price as follows:

A.  Buyer will deposit with Escrow/Closing Agent identified in *Section 1* above (the *"Escrow/Closing Agent")* (or cause to be deposited with Escrow/Closing Agent) the Earnest Money Deposit described above in *Section 1* (the *"Earnest Money Deposit")* on the date Buyer signs this Agreement. The Earnest Money Deposit is to be comprised of (1) a cashier's check or cash in the amount of Two Thousand Five Hundred Dollars ($2,500) (or Five Thousand Dollars ($5,000) as may be required by Seller for the second or subsequent purchase) plus (2) a cashier's check, cash, or personal check equal to the difference between the total Earnest Money Deposit minus the value of the cashier's check or cash in *Section 3A(1)*.

B.  Prior to Closing as determined under *Section 6* below, Buyer shall deposit with the Escrow/Closing Agent in immediately available funds an amount equal to the balance of the Purchase Price, plus Buyer's share of closing costs and prorations, plus Buyer's expenses provided herein.

4.  **FINANCING.**

A.  Buyer understands and acknowledges that the purchase of the Property and this Agreement IS NOT contingent on the Buyer obtaining financing for the purchase of the Property. Notwithstanding that there is no financing contingency, the Seller may require Buyer to obtain pre-qualification at or prior to entering into this Agreement. If required, Buyer agrees to pre-qualify with Seller's lender at the auction of the Property and cooperate with such lender in the processing of this transaction.

                                                        **BUYER'S INITIALS** _____

B.  Buyer understands and acknowledges that Seller shall make no concessions or discount fees or costs for any financing programs such as VA, FHA, Bond assisted, City Assisted, or other loan programs nor will escrow be extended for such purpose.

C.  Buyer hereby authorizes Seller and/or its agent to check and such lender to report to Seller or Seller's agent regarding Buyer's current credit and loan status. If Buyer is obtaining financing, Buyer acknowledges that Buyer is doing so at Buyer's sole cost and expense. Buyer understands and agrees that the obtaining of any financing is and shall remain Buyer's (and not Seller's) obligation. Buyer hereby authorizes any such lender to release copies of any written loan approval and commitment to Escrow/Closing Agent and/or Seller.

D.  REDC is not providing financial or lending services in this transaction. Neither REDC nor Seller are affiliated with any lender unless otherwise disclosed.

Joint Purchase Agreement (FL) 052010                     -4-

5.  **COMMENCEMENT OF TRANSACTION.** In consideration of Seller paying for and providing the Owner's Policy of Title Insurance as set forth in *Sections 6 and 11*, Seller and Buyer shall open an escrow account related to this Agreement for the sale of the Property with the Escrow/Closing Agent designated in *Section 1* above (this *"Escrow"*) immediately upon execution of this Agreement by the Buyer by depositing a copy of this Agreement with the Escrow/Closing Agent. This Agreement shall constitute joint escrow instructions to the Escrow/Closing Agent who shall handle and close this transaction as set forth herein. Escrow shall be "open" upon the occurrence of the following: (A) Escrow/Closing Agent has received this Agreement executed by Buyer; and (B) Escrow/Closing Agent has received the Earnest Money Deposit from Buyer.

BUYER'S INITIALS _____

6.  **CLOSING.**

  A.  **CLOSING DATE.** Escrow/Closing Agent shall close the transaction contemplated by this Agreement (the *"Close of Escrow"* or *"Closing"*) on the earlier of the date set forth in *Section 1* above or the date that is forty-five (45) days after the date this Agreement is executed by Buyer. If such date falls on a weekend or a state or federally recognized holiday, such Closing Date shall be the next business day. Escrow/Closing Agent is instructed to close Escrow on such date, subject to *Section 6B*, below.

  B.  Escrow/Closing Agent is instructed to close Escrow on such dates set forth in *Section 1* and *Section 6A* above, subject to each of the following:

  (1)  If Seller is unable to close the transaction contemplated by this Agreement on or before the original Closing Date, then such Closing Date shall be automatically extended for thirty (30) days; provided, however, that Seller, Seller's agent, or the Escrow/Closing Agent may give Buyer written notice during such thirty (30) day period that it is ready to close and such closing shall occur within five (5) days following such written notice. If Seller is unable to close the transaction contemplated by this Agreement on or before the first extended Closing Date, then such Closing Date shall be automatically extended for another thirty (30) days; provided, however, that Seller, Seller's agent, or the Escrow/Closing Agent may give Buyer written notice during such thirty (30) day period that Seller is ready to close and such closing shall occur within five (5) days following such written notice. No further extensions by Seller may be given unless agreed to in writing by Buyer.

  (2)  If Seller is unable to deliver insurable title to Buyer as required in this Agreement at or prior to the Closing Date, as may be extended herein, then Escrow shall not close, in which case such inability shall be deemed no fault of Seller, and Seller may cancel this Agreement and the provisions of *Section 6G(2)* below and *Section 10* shall apply.

  (3)  If this transaction has been cancelled or terminated as permitted elsewhere in this Agreement, then Escrow/Closing Agent will not close Escrow.

  (4)  If Buyer requests an extension of the Closing Date in writing at least five (5) calendar days prior to the scheduled Closing Date, and Seller, in its sole and absolute discretion (after consultation with Seller's Broker) grants, in writing, an extension, Buyer agrees to pay to the Seller a non-refundable per diem of **$150.00** (the "Extension Fee") through and including the Closing Date as specified in the written extension. Such extension shall specify the Closing Date. Any extension failing to specify the Closing Date shall be void. This fee will NOT be credited towards the Purchase Price. In the event the transaction fails to close, such accrued Extension Fee shall immediately be due and owing to Seller (See *Section 12*).

  (5)  If the Closing Date is extended pursuant to an Addendum to this Agreement or mutual escrow instructions executed by both Seller and Buyer, then Escrow/Closing Agent shall close Escrow on the Closing Date as so extended.

  C.  **CONDITIONS PRECEDENT.** Closing is further subject to each of the following conditions precedent (the failure of any of which shall not, in and of itself, relieve any party of its obligations set forth elsewhere in this Agreement): (1) Seller shall have delivered the Seller's Deliveries set forth in

*Section 6F* below, (2) Buyer shall have delivered the Buyer's Deliveries set forth in *Section 6F* below, (3) Seller shall not have given written notice to Escrow/Closing Agent that Buyer is in default of this Agreement, and (4) the Title Insurance Company identified in *Section 1* above (the "*Title Company*") shall have irrevocably committed to issue to Buyer an owner's policy of title insurance covering the Property showing coverage in the amount of the Purchase Price and showing insurable title to the Property vested as stated in *Section 1* above, subject to any and/or all of the following (the failure of which shall not be deemed a default of Seller):

(1) Title Company's standard exceptions.

(2) The following encumbrances and other matters:
   (i) Liens for all current general and special real property taxes and assessments not yet due and payable;
   (ii) Covenants, conditions, restrictions, reservations, rights, rights of way, and easements of record, if any;
   (iii) The lien of supplemental taxes, if any;
   (iv) New First Mortgage (if any) to be recorded;
   (v) The standard exceptions in the printed form of the ALTA Standard Coverage Owner's Title Insurance Policy or Lender's Title Insurance Policy and any other exceptions or other matters contained or disclosed in the preliminary title report with respect to the Property;
   (vi) Any state of facts an accurate survey and/or a personal inspection of the Property may disclose;
   (vii) Any laws, regulations, ordinances (including, but not limited to zoning, building and environmental) as to the use, occupancy, subdivision or improvement of the Property adopted or imposed by any governmental body, or the effect of any noncompliance with or any violation thereof, including but not limited to any disclosure and/or report required by ordinance;
   (viii) Rights of existing tenants and/or occupants of the Property, if any; and,
   (ix) Any other matter for which the Title Company agrees to provide insurance at no additional cost to the Buyer.

D. **CLOSING INSTRUCTIONS TO ESCROW/CLOSING AGENT.** At Closing, Escrow/Closing Agent is hereby irrevocably instructed to complete the following:

(1) Record the Deed conveying title to the Property to Buyer. The term "*Deed*" shall mean a Special Warranty, Limited Warranty, Quitclaim or Bargain and Sale Deed or other form of deed acceptable to Seller in Seller's sole and absolute discretion). The Deed to be delivered at Closing shall be a deed that grants you whatever title that grantor may have and that grantor will only defend title against persons claiming by, through, or under the grantor, but not otherwise;

(2) Pay all fees, costs, deed and transfer taxes for the sale of the Property which are required to be paid by Seller under this Agreement, the portion of any fees charged by the Escrow/Closing Agent which are payable by Seller (if any) and other expenses relating to the sale of the Property which are required to be paid by Seller under this Agreement;

(3) Pay all fees, costs and transfer taxes for the sale of the Property which are required to be paid by Buyer under this Agreement, the portion of any fees charged by the Escrow/Closing Agent which are payable by Buyer (if any) and other expenses relating to the sale of the Property which are required to be paid by Buyer under this Agreement, including but not limited to those relating to any New First Mortgage Loan;

(4) Pay all property management and broker related fees and commissions to be paid by Seller including fees and commissions to the Seller's Broker and to the Buyer's broker identified on the signature page of this Agreement as well as any such fees and commissions contemplated under any separate written agreement executed by Seller; and

(5) Pay to Seller the balance of the Purchase Price and any other funds remaining after Closing.

E. **PREVIOUS ESCROW/TRANSACTION.** If there was previous transaction, and/or a separate contract exists by and between Seller and any third party, covering the sale of the Property ("*Previous Transaction*"), then Closing under this Agreement is subject to and contingent upon Seller's ability to successfully cancel the Previous Transaction, if any, prior to or concurrently with the Closing of the transaction contemplated by this Agreement. This condition precedent shall be deemed satisfied when Escrow/Closing Agent is in possession of a copy of signed cancellation instructions from the Seller and the buyer in the Previous Transaction. Failure to cancel such Previous Transaction shall not be deemed a default of Seller hereunder and the provisions of *Section 6B(2)* and *Section 10* shall apply.

F. **DELIVERIES TO ESCROW/CLOSING AGENT.**

(1) **BY SELLER.** Prior to Closing, Seller shall deposit with the Escrow/Closing Agent (the "*Seller's Deliveries*"): (i) a Deed transferring Seller's interest in the Property to Buyer executed by Seller and acknowledged pursuant to law; and (ii) a Non-Foreign Transferor Declaration executed by Seller or evidence reasonably acceptable to Escrow/Closing Agent that Seller is exempt from the withholding requirements of the Foreign Investment in Real Property Tax Act (FIRPTA), Internal Revenue Code Section 1445.

(2) **BY BUYER.** Prior to close of the Escrow, Buyer shall deposit with the Escrow/Closing Agent (the "*Buyer's Deliveries*"): (i) immediately available good funds, as defined in *Section 6F(3)*, below, in an amount equal to the Purchase Price less the Earnest Money Deposit previously deposited into Escrow, plus Buyer's share of closing costs and pro rations provided herein, plus Buyer's expenses set forth in *Section 11* below, and (ii) any and all other instruments required by Lender, Escrow/Closing Agent or otherwise to consummate Buyer's acquisition of the Property.

(3) **FINAL CASH TO CLOSE.** All parties acknowledge that good funds are required to close this Escrow. "Good funds" are defined as cash or electronic transfer (wired funds) such that Escrow/Closing Agent can disburse the funds on the same business day as the business day of the deposit. In the case of deposit with the Escrow/Closing Agent in the form of cashier's or certified checks drawn on Florida depositories, the Escrow/Closing Agent can disburse the funds on the next business day after the business day of receipt. Out-of-state checks and all drafts are subject to waiting periods that can delay Closing and do not constitute good funds until the money is actually transferred to the Escrow/Closing Agent's account.

G. **CANCELLATION OF TRANSACTION.**

(1) **DEFAULT.** If, due to a failure of a party to perform any of its obligations hereunder, the transaction does not close by no later than the date stated above subject to *Section 6* for Closing, then the non-defaulting party may cancel the transaction by written notice to the defaulting party and the Escrow/Closing Agent and the defaulting party shall pay all cancellation fees of the Escrow/Closing Agent and the Title Company. The parties shall be further subject to the provisions of *Section 12* below.

(2) **NO DEFAULT.** If any of the conditions precedent to Closing are not satisfied or not waived by the date for Closing, and both parties have performed all of their respective obligations hereunder, then either party may cancel the transaction by written notice to the other party and the Escrow/Closing Agent. In such event, Escrow/Closing Agent shall return to Buyer (as Buyer's sole and exclusive remedy) the Earnest Money Deposit less an amount equal to Buyer's expenses set forth in *Section 11* below, and Seller and Buyer shall each bear one-half (1/2) of the cancellation fees of the Escrow/Closing Agent and the Title Company. Upon return of the Earnest Money Deposit as provided in this Section, this Agreement shall be terminated, and Buyer and Seller shall be released from any further obligation, each to the other, in connection with this Agreement. Buyer grants Seller the unilateral right to execute cancellation instructions in the event that Seller elects to cancel Escrow.

H. **ADDITIONAL ESCROW INSTRUCTIONS.** Seller and Buyer have read and agreed to all of the additional escrow instructions attached hereto as Exhibit C and incorporated in this Agreement, if any. In the event of a conflict between the escrow instructions set forth in Exhibit C and this Agreement,

including all Exhibits and Addendums hereto, the terms of this Agreement, and its other Exhibits and Addendums shall control.

7. **BUYER'S INSPECTION.**

   A.  **REPRESENTATIONS/WARRANTIES.** Buyer represents and warrants to Seller that: (1) prior to the execution of this Agreement Buyer has had adequate time and access to the Property to conduct a complete and thorough inspection of the Property, examine all title matters concerning the Property and all agreements relating to the Property including but not limited to the any disclosures and reports required by any ordinance, (2) prior to the execution of this Agreement Buyer has conducted and completed such inspections, or has freely and voluntarily waived the right to conduct any such inspections, (3) Buyer is purchasing the Property based solely upon Buyer's own inspection of the Property, (4) prior to the execution of this Agreement Buyer has satisfied himself/herself/itself in all respects as to the Property and the condition thereof, including, without limitation, its location, its insurability, its physical condition, its environmental condition, the structural integrity of any and all improvements on the Property, all title matters concerning the Property, all applicable common interest community condominium and unit owner's or homeowner's association documents, rules and regulations concerning the Property, and all other matters with respect to the Property, and (5) Buyer is aware of all laws, ordinances and requirements affecting the use, condition and ownership of the Property, including, without limitation, all applicable zoning and land use regulations and local ordinance. Seller makes no representation or warranty, and Buyer has investigated to Buyer's satisfaction, regarding whether the location of the Property is in an earthquake fault zone, seismic hazard zone, flood hazard zone, state responsibility area (fire hazard area), very high fire hazard severity zone, or area of potential flooding, or whether the Property is subject to any flood disaster or other insurance requirements or whether the Property contains wetlands or other environmental constraints.

      Buyer further understands and acknowledges that the Seller may be selling the Property as LAND ONLY, in its present and existing physical condition. Buyer acknowledges and agrees that prior to entering into the Purchase Agreement, Buyer had the opportunity to conduct his/her/its own due diligence, such due diligence and investigation having included investigations of the entire Property in order to determine its present condition since Seller may not be aware of all the defects affecting the Property or other factors that Buyer considered important. Neither Seller nor Seller's Broker makes any representations or warranties regarding suitability to build or inhabit, lot size, property lines, legal or physical access and boundaries including features of the Property shared in common with adjoining landowners, such as walls, fences, roads and driveways, whose use or responsibility for maintenance may have an effect on the Property and any encroachments, easements or similar matters that may affect the Property. Fences, hedges, walls and other natural or constructed barriers or markers do not necessarily identify true Property boundaries.

   B.  **SURVEY.** A survey of the property shall not be a condition or contingency with respect to this transaction. Buyer acknowledges that, at Buyer's sole option and expense, Buyer may obtain a survey from a registered Florida Surveyor. Seller is under no obligation to deliver a survey to Buyer or cure any encroachments disclosed on any such survey obtained by Buyer either before or after Closing.

   C.  **BUYER INDEMNITY AND SELLER PROTECTION FOR ENTRY UPON PROPERTY.** In connection with any due diligence, inspection, visit and/or investigation of the Property (*"Buyer's Inspection"*) by Buyer or any person/entity on Buyer's behalf, Buyer shall (1) keep the Property free and clear of liens, (2) repair all damage arising from Buyer's Inspection, and (3) indemnify, defend and hold Seller harmless from all liability, claims, demands, damages and/or costs directly or indirectly arising therefrom. Buyer shall carry, or require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Inspection prior to Closing. Notwithstanding any other provision of this Agreement, the obligations and agreements of Buyer under this *Section 7C* shall survive the Closing of the transaction contemplated by this Agreement or the earlier termination of this Agreement.

8. **DISCLOSURES**.

A. Buyer acknowledges that the purchase of the Property may have resulted from a transfer made by a Seller who acquired the Property at a sale conducted pursuant to a foreclosure action under Florida state laws or deed in lieu thereof. Therefore, Seller has not made any disclosures regarding the Property, and as a result, any rights Buyer may have in connection with any disclosure statements required under Florida law shall not be available, including without limitation any right to terminate this Agreement. Buyer expressly waives the right to receive any such disclosure statement regarding the condition of the property. Further, regardless of how Seller obtained title, Seller is not familiar with the condition of the Property, other than as may be disclosed in any inspection reports obtained by or on behalf of Seller, Seller's representatives or agents or that Seller may have received otherwise. Any such reports furnished by Seller or its agents in connection herewith shall be for informational purposes only, are not made part of this Agreement, and Seller makes no representations or warranties about their accuracy or completeness. Buyer acknowledges that in consideration of Seller's execution of this Agreement, Buyer, on behalf of itself and all other parties having any Claims, covenants that neither Buyer nor any such other party will sue, commence, prosecute or in any way participate in any judicial, administrative, or other regulatory proceedings for breach of contract based on any disclosures relating to any alleged breach or violation of any state law, rule or regulation by Seller, or any other party engaged on Seller's behalf, including, without limitation any real estate broker or agent representing Seller.

B. **OTHER DISCLOSURES**.

   (1) **ASSESSMENTS**. If the Property is subject to a special assessment lien imposed by a public body payable in installments which continue beyond Closing, the Buyer shall be responsible for and pay all amounts which become due after Closing.

   (2) **RADON**. Radon is a naturally occurring radioactive gas that when accumulated in a building in sufficient quantities may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines may have been found in buildings in Florida. Additional information regarding radon or radon testing may be obtained from your County Public Health unit. Additional information regarding radon and radon testing may be obtained from your county or state health unit. Buyer represents and warrants that he/she/it has not relied on the accuracy or completeness of any representations that have been made by the Seller and/or Seller's broker or auctioneer as to the presence of radon and that the Buyer has not relied on the Seller's or Seller's broker's failure to provide information regarding the presence or effects of any radon found on the Property. Real estate brokers and agents are not generally qualified to advise buyers on radon treatment or its health and safety risks.

   (3) **MOLD**. Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or desires additional information regarding mold, Buyer should contact an appropriate professional. Real property (including, but not limited to, the basement) is or may be affected by water or moisture damage, toxic mold, and/or other environmental hazards or conditions. Seller further advises Buyer that as a consequence of possible water damage and/or excessive moisture, the Property may be or has been irrevocably contaminated with mildew, mold, and/or other microscopic organisms. Buyer is being advised that exposure to certain species of mold may pose serious health risks, and that individuals with immune system deficiencies, infants, children, the elderly, individuals with allergies or respiratory problems, and pets are particularly susceptible to experiencing adverse health effects from mold exposure. Buyer acknowledges that Seller has advised Buyer to make his/her own evaluation of the Property and to have the Property thoroughly inspected. Buyer has been further advised by Seller that all areas contaminated with mold, and/or other environmental hazards or conditions, should be properly and thoroughly remediated. Additionally, Buyer has been advised by Seller that habitation of the Property without complete remediation may subject the inhabitants to potentially serious health risks and/or bodily injury. Buyer acknowledges that it is the sole responsibility of Buyer to conduct any remediation on the Property. Buyer also acknowledges that Buyer is buying the Property AS IS, WHERE IS. Buyer represents and warrants to Seller that Buyer has made his own inspection and evaluation of the Property to Buyer's complete satisfaction, and Buyer accepts the Property AS IS, WHERE IS at the time of Closing. Buyer is

electing to purchase the Property from Seller in an ˙AS IS, WHERE IS condition with full knowledge of the potential condition of the Property, the potentially serious health risks, and the potential liability that Buyer could incur as the owner of the Property for claims, losses, and damages arising out of any toxic mold contamination, and/or other environmental hazards or conditions on the Property.  Buyer agrees that the purchase price of the Property reflects the agreed upon value of the Property AS IS, WHERE IS taking into account the aforementioned disclosures.

(4)  **LEAD-BASED PAINT DISCLOSURE.**  If the Property was built prior to 1978, the Seller shall (i) notify the Buyer of any known lead-based paint ("*LBP*") or LBP hazards in the Property; (ii) provide the Buyer with any LBP risk assessments or inspections of the Property in the Seller's possession; (iii) provide the Buyer with the Disclosure of Information on LBP and Lead-Based Paint Hazards, and any report, records, pamphlets, and/or other materials references therein, including the pamphlet "Protect Your Family From Lead In Your Home" (collectively "*LBP Information*").  Buyer shall return a signed copy of the Disclosure of Information on LBP and Lead-Based Paint Hazards to Seller prior to the Closing of the Transaction.

LBP Information was provided prior to Agreement Acceptance and Buyer acknowledges the opportunity to conduct LBP risk assessments or inspections during the Inspections.  Buyer hereby waives the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint or lead-based paint hazards.

BUYER'S INITIALS _LS_

(5)  **PROPERTY TAX DISCLOSURE SUMMARY.** Buyer should not rely on the Seller's current property taxes as the amount of property taxes that the Buyer may be obligated to pay in the year subsequent to purchase.  A change of ownership, use, or property improvements may trigger reassessments of the Property that could result in higher property taxes. If you have any questions concerning valuation, contact the county property appraiser's office for information.

(6)  **PERMITS AND REPAIRS.**  If the Property is located in a jurisdiction that requires a certificate of occupancy, smoke detector certification, septic certification or any similar certification or permit or any form of improvement or repair to the Property (collectively, "*Permits and Repairs*"), Buyer acknowledges and agrees that Buyer shall be responsible for obtaining any and all of the Permits and Repairs at Buyer's sole cost and expense, including but not limited to any certificate of use or other certification required by the ordinance.  Buyer shall make application for all Permits and Repairs within ten (10) days of the Seller's Acceptance Date, such date to be the date of execution of this Agreement and any Exhibits and Addenda hereto.  Seller makes no representations or warranties regarding compliance or conformity with any building codes, laws, rules or regulations.

(7)  **CONDOMINIUM/PUD/HOMEOWNERS ASSOCIATION.**  If the Property is in a common interest community, condominium community or planned community, unless otherwise required by law, Buyer acknowledges that Buyer, at Buyer's own expense, was and is responsible for (a) obtaining and (b) reviewing the declaration of covenants, conditions, restrictions and/or bylaws and other documentation regarding such common interest community, condominium community or planned community and Buyer acknowledges that, prior to Buyer's execution of this Agreement, Buyer has reviewed such documentation to the fullest extent Buyer deems necessary and, upon execution of this Agreement, Buyer is deemed to have accepted the declaration of covenants, conditions, restrictions, declaration of condominium and/or bylaws of the common interest community, condominium community or planned community.

(8)  **BUILDING AND ZONING CODES.**  Buyer should consult the local jurisdiction for information on building and zoning codes or information about transportation beltways and/or planned or anticipated land use within proximity of the Property.  Seller makes no representations or warranties regarding compliance or conformity with any building codes, laws, rules, or regulations.

Joint Purchase Agreement (FL) 052010                    **-10-**

(9) **SQUARE FOOTAGE:** Buyer acknowledges that the square footage of the Property has not been measured by Seller, Seller's broker or its auctioneer (including the square footage of the lot and home) and the square footage quoted on any marketing tools such as advertisements, brochures, MLS data, and any other information provided based on information supplied to Seller and is deemed approximate and not guaranteed. Buyer further acknowledges that Buyer has not relied upon any such marketing tool and that such tools are not representations and/or warranties of Seller. Buyer is buying the Property "As is, Where is" and acknowledges Buyer's responsibility to perform all due diligence and investigation regarding Buyer's acquisition of the Property, including the measurement of or confirmation of square footage of the Property.

(10) **ENERGY-EFFICIENCY RATING BROCHURE.** Buyer acknowledges receipt of the Florida Energy-Efficiency Rating information Brochure required by Section 553.996, F.S.

(11) **CHINESE OR DEFECTIVE DRYWALL.** If a residence or other improvement has been built or renovated on the Property during the approximate time frame of 2004 to present, the Buyer is hereby notified that such Property may contain defective drywall primarily manufactured in China. The presence of this Chinese or defective drywall seems to coincide with and may cause corrosion and damage to structural systems in such a residence or improvement and corrode and destroy system components. The damage done may be extensive enough to require them to be replaced at substantial expense. Chinese or defective drywall is apparently known to emit a strong sulfur-like odor or fume which may cause the residents·of the home to experience health problems. The presence of this odor and/or the aforementioned damages may indicate the presence of Chinese or defective drywall, and the prospective buyer should investigate. The only known way to eliminate the fumes and the health problems and to stop the damage to the structural systems and system components is to remove and replace all of the defective drywall in the residence, which can be very costly. Finally, the presence of Chinese or defective drywall, the fumes, and the damaged systems, if not remedied, can impact the value or salability of the property. Further information on Chinese or defective drywall may be obtained from the Florida Department of Health, (850) 245-4250 or the local county Health Department where the Property is located.

C. **RECEIPT OF DISCLOSURES.** Buyer acknowledges and agrees that Buyer has received and/or had adequate opportunity to read and understand all disclosures and documents regarding the Property made available by Seller, Seller's broker or its auctioneer in print or electronic form   (the *"Disclosures"*), including without limitation:

(1) The pamphlet "Protect Your Family From Lead in Your Home";

(2) The documents and information made available on the internet at *www.auction.com*;

(3) The written disclosures made available at the Property and at the location where the sale of the Property is conducted;

(4) Any real estate brokerage relationship disclosures, such disclosures made available and provided to Buyer during the registration process, prior to bidding at auction and prior to entering into any Agreement for the purchase and sale of the Property; and,

(5) The disclosures listed herein and on Exhibits attached to this Agreement, which Exhibits are incorporated into this Agreement by reference herein.

Buyer understands and acknowledges that any information provided by or on behalf of Seller with respect to the Property, including without limitation, all information in the Disclosures and the Brochure as defined in *Section 8D* below was obtained from a variety of sources and that Seller and Seller's Broker(s) have not made any independent investigation or verification of such information and make no representations as to the accuracy or completeness of such information. Buyer shall not have the right to cancel this Agreement by reason of any information, facts, condition or other aspect of the Property discovered by Buyer subsequent to Buyer's execution of this Agreement. Buyer further waives the right under 42 U.S.C. § 4852d and any other applicable law to conduct a risk assessment or inspection for the presence of lead-based paint hazards.

D. **BROCHURE.** Buyer represents and warrants that Buyer has received, read and accepts the terms and conditions pertaining to the sale of the Property which are set forth in the Auction Brochure if any (the "*Brochure*"), and available at www.auction.com, which terms and conditions are incorporated herein by reference. In the event of any conflict or inconsistency between the terms and conditions of this Agreement and the terms and conditions of the auction, the terms and conditions of this Agreement shall control and prevail in all respects.

E. **NO REPAIRS.** Buyer acknowledges and agrees that Seller is selling the Property "As Is, Where Is" with all faults and Seller shall have no liability for or any obligation to make any repairs or improvements of any kind to the Property including but not limited to the inability of Buyer to obtain a certificate of occupancy, certificate of use or municipal code compliance certificate, if required, for the Property.  Seller shall comply with municipal laws and ordinances regarding the presence of smoke detector(s), carbon monoxide detectors and/or fire extinguishers required at the Property, if any.  Any and all additional smoke detector(s), carbon monoxide detectors and/or fire extinguishers required by local ordinance shall be installed by Buyer at Buyer's cost and expense prior to the Closing Date.  In some municipalities, a certificate of occupancy, certificate of use or municipal code compliance certificate may be required in order to transfer and/or occupy the Property.  If a certificate of occupancy, certificate of use or municipal code compliance certificate is required to be obtained in order for the Property to be transferred to or occupied by Buyer, Buyer shall obtain such certificate of occupancy, certificate of use or municipal code compliance certificate at Buyer's sole cost and expense.  If any violations at the Property shall be required to be corrected by the municipality or other work performed at the Property to obtain a certificate of occupancy, certificate of use or municipal code compliance certificate, Buyer shall correct and/or perform same at Buyer's sole cost and expense. Seller makes no representation as to whether a certificate of occupancy, certificate of use or municipal code compliance certificate is required or whether the Property may be occupied by Buyer.  Buyer shall indemnify, defend and hold Seller harmless from and against all fines, penalties, costs, expenses, claims and liabilities arising out of or relating to Buyer's obtaining or its failure to obtain a certificate of occupancy, certificate of use or municipal code compliance certificate if one is required. This indemnification shall survive the Closing Date and shall not be deemed to have merged into any of the documents executed or delivered at Closing.  Seller makes no representations or warranties regarding compliance or conformity with any building codes, laws, rules or regulations.

F. **PRELIMINARY TITLE REPORT.**  Buyer represents and warrants that Buyer has read, received and approved copies of (1) a preliminary title report or commitment for the Property, (2) the recorded master deed, covenants, conditions, restrictions, reservations, rights, rights of way and easements of record, if any, affecting the Property, and (3) any and all other matters disclosed in the preliminary title report or commitment.  If a survey is required to close, Buyer shall bear the cost, expense and sole responsibility of obtaining a survey acceptable to the Title Company and any lender.

G. **EXECUTION OF DISCLOSURES BY BUYER.**  Buyer shall execute, deliver and deposit with the Escrow/Closing Agent, at or prior to the date set for Close of Escrow, all federal, state and local disclosures concerning the Property that Buyer is required to execute under applicable laws and regulations or required by the Escrow/Closing Agent.

H. **OCCUPIED PROPERTY.**  Seller makes no representations or warranties as to whether the Property is occupied as of the Closing Date.

   (1)  If the Property is occupied, Seller will endeavor (but shall not be obligated) to evict or remove the occupants prior to the Closing Date.  Buyer expressly waives any right to cancel this Agreement based on the status of occupancy of the Property.

   (2)  Buyer acknowledges that Buyer may be subject to the Protecting Tenant's at Foreclosure Act of 2009, set forth as Division A, Title VII of the Helping Families Save Their Homes Act of 2009 [Publ.L. 111-22, 123 Stat. 1632, S. 896, enacted May 20, 2009] (the "Act") or state law, as applicable.

(3) The Property may be subject to leasehold interests of various tenants. Seller has included in the Disclosures true copies of all leases and amendments, if any, in Seller's possession. Seller makes no warranties or representations as to whether or not other leases of the Property are or will be in force; whether or not anyone else has a right of possession; whether or not any rent concessions were given to any tenant; whether or not any other agreements were made with the tenants; whether or not any rent charged violates any applicable rent control ordinance, statute, or law; whether or not any other violations of any applicable ordinance, statute or law exist; and whether or not Seller or any tenant is in default under any lease. Because the Property was acquired by Seller through foreclosure, trustee's sale pursuant to a power of sale under a deed of trust, power of sale under a mortgage, sheriff's sale or deed in lieu of foreclosure, Seller has no security deposits or last month's rent to surrender to Buyer. Buyer shall be responsible for notifying tenants of the transfer of ownership of the Property, and shall be liable to any and all tenants for repayment of any outstanding security deposit, less lawful deductions. This provision shall survive the Closing and shall not be deemed to have merged into any of the documents executed or delivered at closing. Buyer shall defend, indemnify and hold harmless Seller, its affiliates, parent companies, officers, directors, shareholders, agents, attorneys and representatives from and against any claims, demands, actions or expenses, including reasonable attorney's fees, arising out of any and all actions concerning security deposits, and for any eviction or unlawful detainer or other litigation arising out of the tenancy, occupancy or lease of the Property after the Closing Date, including but not limited to, any violation of any state of federal law, rule or regulation regarding tenant's occupancy of the Property.

(4) Buyer shall be responsible for installing new locks on the Property immediately after the Closing, and Buyer shall hold Seller and Seller's representatives and agents harmless from and indemnify Seller and Seller's representatives and agents against any and all damages, claims, liens, liabilities, costs, injuries, attorney's fees and expenses of every kind and nature that may be made against Seller as a result of Buyer's failure to install new locks on the Property.

I.    **POSSESSION.** The Seller shall deliver possession of the Property to the Buyer at Close of Escrow and funding of the sale. Buyer shall have no further right to access or inspect the Property prior to Close of Escrow. The delivery of possession shall be subject to the rights of any tenants or parties in possession per *Section 8H*. If the Buyer alters the Property or causes the Property to be altered in any way and/or occupies the Property or allows any other person to occupy the Property prior to Close of Escrow and funding without the prior written consent of the Seller, then: (A) Such event shall constitute a material breach by the Buyer under this Agreement; (B) The Seller may terminate the Agreement; (C) The Buyer shall be liable to the Seller for all Claims caused by any such alteration or occupation of the Property prior to Close of Escrow and funding; and (D) Buyer waives all Claims for improvements made by the Buyer to the Property including, but not limited to, any Claims for unjust enrichment.

(1) **KEYS AND REMOTES.** At Close of Escrow, Seller shall provide Buyer with a key to the front door of the Property to the extent in Seller's possession. Any and all keys, including garage door keys, pool keys, security keys, and mail box keys, may not be provided by Seller and, if not provided, Buyer must obtain same at Buyer's own expense. All remote control devices must also be obtained by Buyer at Buyer's own cost and expense.

9.   **"AS IS, WHERE IS" SALE.** BUYER IS ACQUIRING THE PROPERTY "AS IS, WHERE IS", IN ITS PRESENT STATE AND CONDITION, WITH ALL DEFECTS, BOTH PATENT AND LATENT, AND WITH ALL FAULTS OF THE PROPERTY WHETHER KNOWN OR UNKNOWN, PRESENTLY EXISTING OR THAT MAY HEREAFTER ARISE, INCLUDING, WITHOUT LIMITATION, ALL EXISTING CONDITIONS, IF ANY, OF LEAD PAINT, MOLD OR OTHER ENVIRONMENTAL OR HEALTH HAZARDS ("ENVIRONMENTAL MATTERS"). SELLER MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EITHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, WITH RESPECT TO THE PROPERTY, INCLUDING WITHOUT LIMITATION: (A) THE VALUE, NATURE, QUALITY OR CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL AND GEOLOGY; (B) THE INCOME TO BE DERIVED FROM THE PROPERTY; (C) THE SUITABILITY OF THE PROPERTY FOR ANY AND ALL PURPOSES, ACTIVITIES AND USES WHICH BUYER MAY CONDUCT THEREON; (D) THE COMPLIANCE OF OR BY THE PROPERTY OR ITS OPERATION WITH ANY LAWS, RULES, ORDINANCES OR REGULATIONS OF ANY APPLICABLE GOVERNMENTAL AUTHORITY OR BODY; (E) THE HABITABILITY, MERCHANTABILITY, MARKETABILITY, PROFITABILITY, TENANTABILITY OR FITNESS FOR A PARTICULAR

PURPOSE OF THE PROPERTY; (F) THE MANNER OR QUALITY OF THE CONSTRUCTION OR MATERIALS, IF ANY, INCORPORATED INTO THE PROPERTY; (G) THE MANNER, QUALITY, STATE OF REPAIR OR LACK OF REPAIR OF THE PROPERTY; (H) THE EXISTENCE OF ANY VIEW FROM THE PROPERTY OR THAT ANY EXISTING VIEW WILL NOT BE OBSTRUCTED IN THE FUTURE; (I) ANY OTHER MATTER WITH RESPECT TO THE PROPERTY, (J) THE STRUCTURAL INTEGRITY OF ANY IMPROVEMENTS ON THE PROPERTY, (K) THE CONFORMITY OF ANY IMPROVEMENTS TO ANY PLANS OR SPECIFICATIONS FOR THE PROPERTY THAT MAY BE PROVIDED TO BUYER, (L) THE CONFORMITY OF THE PROPERTY TO APPLICABLE ZONING OR BUILDING CODE REQUIREMENTS, (M) THE EXISTENCE OF SOIL INSTABILITY, PAST SOIL REPAIRS, SUSCEPTIBILITY TO LANDSLIDES, SUFFICIENCY OF UNDER-SHORING, SUFFICIENCY OF DRAINAGE, OR ANY OTHER MATTER AFFECTING THE STABILITY OR INTEGRITY OF THE LAND OR ANY BUILDINGS OR IMPROVEMENTS SITUATED THEREON, OR (N) WHETHER THE PROPERTY IS LOCATED IN A HISTORIC PRESERVATION DISTRICT OR SUBJECT TO SPECIAL REGULATIONS RELATED TO HISTORIC PRESERVATION, (O) WHETHER THE PROPERTY IS LOCATED IN A SPECIAL STUDIES ZONE UNDER THE PUBLIC RESOURCES CODE OR A SEISMIC HAZARDS ZONE OR A STATE RESPONSIBILITY AREA, OR A SPECIAL FLOOD HAZARD ZONE OR FLOOD PLAIN, OR IN THE PRESENCE OF WETLANDS OR SHORELAND. BUYER ACKNOWLEDGES THAT THE PROPERTY MAY NOT BE IN COMPLIANCE WITH APPLICABLE ZONING, BUILDING, HEALTH OR OTHER LAW OR CODES, AND NEITHER SELLER NOR ANY PERSON ACTING AS SELLER'S REPRESENTATIVE OR AGENT HAS OCCUPIED THE PROPERTY AND THAT THE PROPERTY MAY NOT BE IN HABITABLE CONDITION.

BUYER FURTHER ACKNOWLEDGES AND AGREES THAT, WITHOUT LIMITATION, SELLER HAS NOT MADE, DOES NOT MAKE, AND SPECIFICALLY DISCLAIMS ANY REPRESENTATIONS REGARDING COMPLIANCE WITH THE AMERICANS WITH DISABILITIES ACT OR WITH ANY ENVIRONMENTAL PROTECTION, POLLUTION OR LAND USE LAWS, RULES, REGULATIONS, ORDERS OR REQUIREMENTS, AS DEFINED BY THE U.S. ENVIRONMENTAL PROTECTION AGENCY REGULATIONS AND ANY OTHER STATE, FEDERAL OR LOCAL ENVIRONMENTAL LAWS AND REGULATIONS APPLICABLE TO THE PROPERTY, OR THE DISPOSAL OR EXISTENCE, IN OR ON THE PROPERTY OR ANY ADJACENT OR NEARBY PROPERTY, OF ANY HAZARDOUS SUBSTANCE, AS DEFINED BY THE COMPREHENSIVE ENVIRONMENTAL RESPONSE COMPENSATION AND LIABILITY ACT OF 1980, AS AMENDED, AND REGULATIONS PROMULGATED THEREUNDER AND ANY OTHER STATE, FEDERAL OR LOCAL ENVIRONMENTAL LAWS AND REGULATIONS APPLICABLE TO THE PROPERTY.

UPON CLOSING, BUYER ACKNOWLEDGES AND AGREES THAT SELLER AND ITS AGENTS AND ASSIGNS HAVE NO FURTHER RESPONSIBILITY, OBLIGATION OR LIABILITY TO BUYER. BUYER AGREES THAT SELLER AND ITS AGENTS AND ASSIGNS SHALL HAVE NO LIABILITY FOR ANY CLAIM OR LOSSES BUYER OR BUYER'S HEIRS, SUCCESSORS AND ASSIGNS MAY INCUR AS A RESULT OF DEFECTS THAT MAY NOW OR MAY HEREAFTER EXIST WITH RESPECT TO THE PROPERTY, AND BUYER SHALL HOLD HARMLESS, INDEMNIFY AND DEFEND SELLER FROM ANY SUCH CLAIM. THE OBLIGATIONS AND AGREEMENTS OF BUYER UNDER THIS SECTION SHALL SURVIVE THE CLOSING OF THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT OR THE EARLIER TERMINATION OF THIS AGREEMENT.

BUYER AND ANYONE CLAIMING BY, THROUGH OR UNDER THE SAME HEREBY FULLY AND IRREVOCABLY RELEASES SELLER AND ITS EMPLOYEES, OFFICERS, DIRECTORS, REPRESENTATIVES, ATTORNEYS, BROKERS AND AGENTS FROM ANY AND ALL CLAIMS THAT HE/SHE/IT OR THEY MAY NOW HAVE OR HEREAFTER ACQUIRE AGAINST SELLER AND ITS EMPLOYEES, OFFICERS, DIRECTORS, REPRESENTATIVES, ATTORNEYS, BROKERS AND AGENTS FROM ANY AND ALL CLAIMS, CAUSES OF ACTION, WHETHER ADMINISTRATIVE OR JUDICIAL, LOSSES, COSTS (INCLUDING ANY AND ALL REASONABLE ATTORNEYS' FEES, COURT COSTS, AND REASONABLE COSTS OF INVESTIGATION, LITIGATION, AND SETTLEMENT), EXPENSES, SANCTIONS, CURTAILMENTS, INTEREST, LIABILITIES, PENALTIES, FINES, DEMANDS, EXPENSES, LIENS, JUDGMENTS, COMPENSATION, FEES, LOSS OF PROFITS, INJURIES, DEATH, AND/OR DAMAGES, OF ANY KIND WHATSOEVER, WHETHER KNOWN OR UNKNOWN, FIXED OR CONTINGENT, JOINT OR SEVERAL, CRIMINAL OR CIVIL, OR IN LAW OR IN EQUITY ("CLAIMS") ARISING FROM OR RELATING TO THE BUYER'S BREACH OF OR FAILURE TO COMPLY FULLY WITH ANY PROVISION IN THIS AGREEMENT, INSPECTIONS OR REPAIRS MADE BY THE BUYER OR HIS/HER/ITS AGENTS, REPRESENTATIVES, BROKERS, EMPLOYEES, CONTRACTORS, SUCCESSORS OR ASSIGNS, THE IMPOSITION OF ANY FINE OR PENALTY IMPOSED BY ANY GOVERNMENTAL ENTITY RESULTING FROM THE BUYER'S FAILURE TO TIMELY OBTAIN ANY CERTIFICATE OF OCCUPANCY OR TO COMPLY WITH EQUIVALENT LAWS AND REGULATIONS, CONSTRUCTION DEFECTS, ERRORS, OMISSIONS OR OTHER CONDITIONS, INCLUDING ENVIRONMENTAL MATTERS, AFFECTING THE PROPERTY, OR ANY PORTION THEREOF. THIS RELEASE INCLUDES CLAIMS OF WHICH BUYER IS PRESENTLY UNAWARE OR DOES NOT PRESENTLY SUSPECT TO EXIST IN HIS/HER/ITS FAVOR WHICH, IF KNOWN BY BUYER, WOULD MATERIALLY AFFECT BUYER'S RELEASE OF SELLER.

10. **CONVEYANCE OF TITLE.** Insurable title shall be delivered to Buyer by Deed on a form acceptable to Seller in Seller's sole and absolute discretion. Seller shall be under no obligation to (A) remove any exception (B) bring any action or proceeding or bear any expense in order to enable Seller to convey title to the Property in accordance with this Agreement or (C) otherwise make the title to the Property insurable. Any attempt by the Seller to remove such title exceptions shall not impose an obligation upon the Seller to remove those exceptions. The Buyer acknowledges that the Seller's title to the Property may be subject to court approval of foreclosure or to a mortgagor's right of redemption. IF, FOR ANY REASON, SELLER (A) IS UNABLE TO MAKE THE TITLE INSURABLE OR CORRECT TITLE PROBLEMS OR (B) IS UNABLE TO OBTAIN TITLE INSURANCE FOR THE PROPERTY FROM A REPUTABLE TITLE INSURANCE COMPANY OR (C) DETERMINES THAT IT IS UNABLE OR IT IS ECONOMICALLY NOT FEASIBLE TO CONVEY GOOD AND MARKETABLE TITLE TO THE PROPERTY INSURABLE BY A REPUTABLE TITLE INSURANCE COMPANY AT REGULAR RATES, AT THE CLOSING DATE AND SUCH ESCROW CLOSING DATE IS NOT EXTENDED OR OTHERWISE AMENDED IN THE SOLE AND ABSOLUTE DISCRETION OF SELLER AS SET FORTH ELSEWHERE IN THIS AGREEMENT, THEN THE SELLER MAY CANCEL THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT AND THIS AGREEMENT BY WRITTEN NOTICE TO THE OTHER PARTY AND THE ESCROW/CLOSING AGENT. IN SUCH EVENT, ESCROW/CLOSING AGENT SHALL RETURN TO BUYER (AS BUYER'S SOLE AND EXCLUSIVE REMEDY) THE EARNEST MONEY DEPOSIT LESS AN AMOUNT EQUAL TO BUYER'S EXPENSES SET FORTH IN *SECTION 11* BELOW, AND SELLER AND BUYER SHALL EACH BEAR ONE-HALF (1/2) OF THE CANCELLATION FEES OF THE ESCROW/CLOSING AGENT AND THE TITLE COMPANY. UPON RETURN OF THE EARNEST MONEY DEPOSIT AS PROVIDED IN THIS SECTION, THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT SHALL BE TERMINATED, AND BUYER AND SELLER SHALL BE RELEASED FROM ANY FURTHER OBLIGATION, EACH TO THE OTHER, IN CONNECTION WITH THIS AGREEMENT EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN. BUYER GRANTS SELLER THE UNILATERAL RIGHT TO EXECUTE CANCELLATION INSTRUCTIONS IN THE EVENT THAT SELLER ELECTS TO CANCEL THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT AND THIS AGREEMENT.

11. **COSTS AND PRORATIONS.**

   A. **PRORATIONS.** The Escrow/Closing Agent shall prorate the following expenses as of the Closing Date: all real property taxes and assessments, municipal water and sewer charges, rents, condominium or planned unit development or similar community assessments, cooperative fees, maintenance fees, homeowner association regular, special and emergency dues and assessments imposed prior to the Closing Date, payments on bonds, and other special assessment district bonds and assessments imposed prior to the Closing. Payment of special assessment district bonds and assessments, and payments of homeowner's associations or condominium association special assessments shall be paid current with payments not yet due and owing to be assumed by Buyer without credit toward the Purchase Price. Seller shall provide Escrow/Closing Agent with any rent rolls in Seller's possession that would assist Escrow/Closing Agent in prorating rents. If the regular homeowner association dues were paid prior to the date of Close of Escrow for a period of time subsequent to such date, then Buyer shall pay to Seller that portion of the assessment attributable to the period of time after the date of the Close of Escrow. Any homeowners' association or condominium association transfer fees or document fees payable in connection with the sale of the Property from Seller to Buyer shall be paid by Buyer. Insurance premiums will not be prorated. Seller cannot endorse or assign existing insurance policies (if any) to Buyer, and Seller may cancel any existing insurance on the Property as of the date of Close of Escrow.

   B. **SELLER'S EXPENSES.** Seller shall pay the premium for the owner's title insurance policy identified in *Section 6* above, a title search fee and a Seller's closing fee, Seller's share of prorations under *Section 11A* above, and any Florida documentary stamp taxes or other documentary transfer tax or deed tax that may be imposed upon the Seller by Florida law. Except as provided herein, Seller shall not be responsible for any amounts due, paid or to be paid after Closing. In the event Seller has paid any taxes, special assessments or other fees at or prior to Closing and there is a refund of any such taxes, assessments or fees after the Closing, and Buyer as current owner of the Property receives the payment, Buyer will immediately submit the refund to Seller. Escrow/Closing Agent is hereby authorized to pay from Seller's proceeds Seller's expenses set forth in this Section.

   C. **BUYER'S EXPENSES.** Buyer shall pay all costs of credit reports, loan fees, loan points and other costs of obtaining the New First Mortgage Loan, lender's title insurance charges for the policy of the lender of the New First Mortgage Loan, escrow fees and charges, tax service fees, recordation fees for the

deed of conveyance and any mortgage, Buyer's share of prorations and charges under **Section 11A** above, and first month's condominium/homeowner's association membership fees and assessments, if any, all escrow fees and charges unless otherwise required by law or agreed to in writing by Seller, and other closing costs of Buyer. All other costs and expenses, including any cost, expense or transfer tax imposed by any state or local entity not otherwise addressed herein, shall be paid by Buyer. Any and all termite clearances and reports and any inspections required by any lender, and/or repairs recommended or required by any termite and/or property inspection report including, but not limited to, any roof certifications shall all be at the sole cost and expense of Buyer. Buyer authorizes Escrow/Closing Agent to debit the Buyer's account in the amount of Twenty Dollar ($20.00) fee at Closing in the event Buyer fails to deposit with Escrow/Closing Agent a change of ownership statement, if and to the extent any such statement is required. The foregoing costs and expenses shall be paid by Escrow/Closing Agent on Buyer's behalf from funds deposited into Escrow by Buyer.

D. **PRE-CLOSING EXPENSES.** Buyer and Seller are aware that the Escrow/Closing Agent may incur certain expenses during the course of processing this transaction which must be paid prior to Closing. Such costs may include, but are not limited to, demand request fees, homeowner association document fees, courier fees, overnight mail service and building and/or inspection reports, if applicable. Escrow/Closing Agent is authorized and instructed to release funds for payment of such costs prior to Closing from funds deposited into Escrow by Buyer. The parties acknowledge that said funds are not refundable and Escrow/Closing Agent is specifically released from all responsibility and/or liability for payment of any funds pre-released through the Escrow. At Closing, Escrow/Closing Agent is authorized to charge the appropriate party for costs incurred or credit either one if necessary.

E. **POST-CLOSING TAX ADJUSTMENTS.** Buyer agrees to pay any shortages in taxes directly to the taxing authority, if such shortages were attributable to the time period from and after Closing. Seller agrees to pay any shortages in taxes attributable to periods of time prior to Closing upon notification of such shortages by Buyer to Seller. Notwithstanding the foregoing, Seller shall have no obligation to pay such shortages unless Buyer notifies Seller in writing and submits the tax bill to Seller not later than ten (10) days from the date of Closing.

12. **DEFAULT AND REMEDIES.** By initialing below, Buyer and Seller elect for this entire Section to apply:

A. **BUYER DEFAULT.** BUYER AND SELLER AGREE THAT IF BUYER FAILS TO COMPLETE THIS PURCHASE BY REASON OF ANY DEFAULT OF BUYER, AS DETERMINED BY SELLER IN ITS SOLE DISCRETION: (1) SELLER SHALL BE RELEASED FROM OBLIGATION TO SELL THE PROPERTY TO THE BUYER, AND (2) BUYER AND SELLER EXPRESSLY AGREE THAT IT WOULD BE EXTREMELY DIFFICULT TO DETERMINE SELLER'S ACTUAL DAMAGES AS A RESULT OF SUCH A DEFAULT BY BUYER, THEREFORE THE PARTIES AGREE THAT SELLER SHALL RETAIN AS LIQUIDATED DAMAGES AND NOT AS A PENALTY AND AS A REASONABLE PRE-ESTIMATE OF SELLER'S ACTUAL DAMAGES FOR BREACH OF THIS AGREEMENT AN AMOUNT EQUAL TO THE EARNEST MONEY DEPOSIT (PROVIDED, HOWEVER, THE AMOUNT RETAINED SHALL BE NO MORE THAN FIVE PERCENT (5%) OF THE TOTAL PURCHASE PRICE, ANY EXCESS SHALL BE PROMPTLY RETURNED TO BUYER). NOTWITHSTANDING ALL OF THE FOREGOING, SELLER RETAINS THE RIGHT TO PROCEED AGAINST BUYER FOR ENFORCEMENT OF BUYER'S INDEMNIFICATION/DEFENSE/HOLD HARMLESS OBLIGATIONS UNDER THIS AGREEMENT. IN NO EVENT SHALL BUYER HAVE THE RIGHT TO SEEK OR OBTAIN SPECIFIC ENFORCEMENT OF THIS AGREEMENT.

B. **SELLER DEFAULT.** BUYER AND SELLER AGREE THAT IF SELLER IS UNABLE TO PERFORM AS REQUIRED BY THIS AGREEMENT, THEN THIS AGREEMENT MAY BE CANCELLED UPON SELLER'S WRITTEN NOTICE TO BUYER. IN SUCH EVENT, BUYER'S EARNEST MONEY DEPOSIT SHALL BE RETURNED TO BUYER; SUCH RETURN OF BUYER'S EARNEST MONEY DEPOSIT SHALL BE BUYER'S SOLE AND EXCLUSIVE REMEDY IN SUCH EVENT. IN NO EVENT SHALL BUYER HAVE THE RIGHT TO SEEK OR OBTAIN SPECIFIC ENFORCEMENT OF THIS AGREEMENT.

C. **WAIVER OF SPECIFIC PERFORMANCE REMEDY.** AS A MATERIAL PART OF THE CONSIDERATION TO BE RECEIVED BY SELLER UNDER THIS AGREEMENT, BUYER WAIVES ALL RIGHTS TO FILE AND MAINTAIN AN ACTION AGAINST SELLER FOR SPECIFIC PERFORMANCE AND TO RECORD A LIS

PENDENS AGAINST THE PROPERTY IF A DISPUTE ARISES CONCERNING THIS AGREEMENT. BUYER AGREES THAT THE PROPERTY IS NOT UNIQUE AND THAT IN THE EVENT OF SELLER'S DEFAULT OR MATERIAL BREACH OF THE AGREEMENT, BUYER CAN BE ADEQUATELY AND FAIRLY COMPENSATED SOLELY BY RECEIVING A RETURN OF BUYER'S DEPOSIT. UPON RETURN OF BUYER'S DEPOSIT, THE AGREEMENT SHALL BE TERMINATED, AND BUYER AND SELLER HEREBY IRREVOCABLY INSTRUCT ESCROW/CLOSING AGENT TO RETURN ALL FUNDS AND DOCUMENTS TO THE PARTY THAT DEPOSITED THEM WITHOUT FURTHER DIRECTION. IN NO EVENT SHALL BUYER HAVE THE RIGHT TO SEEK OR OBTAIN SPECIFIC ENFORCEMENT OF THIS AGREEMENT.

D. BUYER ACKNOWLEDGES AND AGREES AND CONFIRMS TO THE ESCROW/CLOSING AGENT THAT BY SIGNING THIS AGREEMENT, SELLER SHALL HAVE THE RIGHT TO RETAIN OR SEEK THE RELEASE OF THE EARNEST MONEY DEPOSIT UNDER THIS *SECTION 12*, OR CANCEL THE TRANSACTION UNDER *SECTION 6*, WITHOUT ANY FURTHER ACTION, CONSENT OR DOCUMENT FROM BUYER.

SELLER'S INITIALS _____          BUYER'S INITIALS _____

13. **DISPUTE RESOLUTION**

A. **MEDIATION.** AT THE REQUEST OF EITHER PARTY, ANY DISPUTE ARISING UNDER THIS AGREEMENT SHALL BE FIRST SUBMITTED TO MEDIATION BEFORE RESORTING TO OR INITIATING ARBITRATION OR COURT ACTION. MEDIATION FEES SHALL BE DIVIDED EQUALLY AND EACH PARTY SHALL BEAR HIS OR ITS OWN ATTORNEY'S FEES AND COSTS. NEITHER PARTY MAY REQUIRE BINDING ARBITRATION PRIOR TO COMMENCEMENT OF COURT ACTION, ALTHOUGH THE PARTIES MAY MUTUALLY AGREE TO SUCH ARBITRATION BY INITIALING THIS SECTION AS SET FORTH BELOW.

B. **ARBITRATION OF DISPUTES.** BUYER AND SELLER AGREE THAT ANY DISPUTE OR CLAIM IN LAW OR EQUITY ARISING BETWEEN THEM OUT OF THIS AGREEMENT SHALL BE DECIDED BY NEUTRAL, BINDING ARBITRATION HELD IN MIAMI-DADE COUNTY, WITH AND UNDER THE DISPUTE RESOLUTION RULES OF THE AAA. IN ADDITION, ANY DISPUTE ARISING OUT OF THIS AGREEMENT, INCLUDING ITS INTERPRETATION, ENFORCEABILITY, AND THE ARBITRABILITY OF DISPUTES BETWEEN THE PARTIES WILL BE DECIDED BY THE ARBITRATOR. JUDGMENT UPON THE AWARD RENDERED BY THE ARBITRATOR(S) MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF.

SUBJECT TO *SECTION 13A* ABOVE, BY INITIALING IN THE SPACE BELOW, BUYER AND SELLER ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES PROVISION DECIDED BY NEUTRAL BINDING ARBITRATION AS PROVIDED BY FLORIDA LAW AND ARE GIVING UP ANY RIGHTS BUYER AND SELLER MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW, BUYER AND SELLER ARE GIVING UP THEIR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION. IF EITHER PARTY REFUSES TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, THAT PARTY MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE FLORIDA CODE OF CIVIL PROCEDURE. BUYER'S AND SELLER'S AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.

C. WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THIS "DISPUTE RESOLUTION" PROVISION TO MEDIATION AND/OR NEUTRAL BINDING ARBITRATION.

SELLER'S INITIALS _____          BUYER'S INITIALS _____

14. **RISK OF LOSS.** If any material portion of the Property is damaged or destroyed prior to Closing, Seller shall give Buyer written notice thereof. Buyer shall have the option, exercisable within ten (10) business days after receipt of such written notice, to either (a) terminate this Agreement, or (b) consummate this Agreement in accordance with its terms. In any event, Seller shall not be deemed in default under this Agreement as a result of such damage or destruction. Buyer shall be deemed to have waived its right to terminate this Agreement if Buyer does not notify Seller in writing of its election to terminate this Agreement within ten (10) business days after receipt of Seller's written notice of material damage. Notwithstanding the foregoing, any termination notice given by Buyer under this Section shall be rendered ineffective if, within five (5) calendar days after Seller's receipt of such written notice, Seller

delivers to Buyer Seller's written agreement to repair at its sole cost and expense all such damage. In such event the date for Closing shall be deemed automatically extended to the third (3rd) business day following Seller's completion of such repair. Buyer shall not be entitled to any insurance proceeds or obtain any rights which respect to any claims Seller may have with regard to insurance maintained by Seller with respect to the Property.

15. <u>JOINT CLOSING INSTRUCTIONS TO ESCROW/CLOSING AGENT.</u> The applicable portions of this Agreement constitute the joint closing instructions of Buyer and Seller to Escrow/Closing Agent, which Escrow/Closing Agent is to use along with any related additional closing instructions as referred to in *Section 6*, general provisions and/or mutual instructions to close the transaction contemplated by this Agreement.

16. <u>MISCELLANEOUS MATTERS.</u>

    A. <u>ASSIGNMENT OF BUYER'S INTEREST.</u> Buyer may not assign or record his, her, their and/or its right, title or interest in this transaction without the express prior written consent of the Seller which consent may be withheld in the sole and absolute discretion of Seller.

    B. <u>MULTIPLE LISTING SERVICE.</u> If Broker is a participant of an Association/Board multiple listing service ("*MLS*"), the Broker is authorized to report the sale, its price, terms, and financing for the publication, dissemination, information and use of the MLS, its parent entity, authorized members, participants and subscribers.

    C. <u>TITLES, HEADINGS, AND CAPTIONS.</u> All titles, headings, and captions used in this Agreement have been included for administrative convenience only and do not constitute matters to be construed in interpreting this Agreement.

    D. <u>OTHER AGREEMENTS.</u> This Agreement constitutes the entire agreement between Buyer and Seller concerning the subject matter hereof and there are no oral or other written agreements between Buyer and Seller. All negotiations are merged into this Agreement. This Agreement shall not be modified or amended except by an instrument in writing signed by Buyer and Seller. No oral promises, representations (express or implied), warranties or agreements made by the Seller or Broker shall be deemed valid or binding upon the Seller unless expressly included in this Agreement.

    E. <u>ATTORNEYS' FEES.</u> In any action, proceeding or arbitration arising out of this Agreement, the prevailing party (defined as the party who prevails as to a substantial part of the litigation or claim) shall be entitled to reasonable attorney's fees and costs.

    F. <u>SEVERABILITY/INTERPRETATION.</u> In the event that any portion of this Agreement shall be judicially determined to be invalid or unenforceable, the same shall, to that extent, be deemed severable from this Agreement and the invalidity or unenforceability thereof shall not affect the validity and enforceability of the remaining portion of this Agreement. The remainder of this Agreement shall remain in full force and effect and shall be construed to fulfill the intention of the parties hereto. Buyer and Seller acknowledge that each party has reviewed this Agreement and has had adequate opportunity to consult legal counsel with respect thereto and that the rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement or any amendments hereto.

    G. <u>TIME IS OF THE ESSENCE.</u> Time is of the essence for the performance of each and every covenant of Buyer under this Agreement and the satisfaction of each and every condition imposed upon Buyer under this Agreement.

    H. <u>GOVERNING LAW AND VENUE.</u> All questions with respect to the construction of this Agreement, and the rights and liabilities of the parties hereto, shall be governed by the laws of the State of Florida in the courts located in Miami-Dade County. The state and federal courts located in that County shall be proper forums for any legal controversy between the parties arising in connection with this Agreement, which courts shall be the exclusive forums for all such suits, actions or proceedings.

I. **COUNTERPARTS.** This Agreement may be executed in multiple counterparts by the parties hereto. All counterparts so executed shall constitute one agreement binding upon all parties, notwithstanding that all parties are not signatories to the original or the same counterpart. Each counterpart shall be deemed an original Agreement all of which shall constitute one agreement to be valid as of the date of this Agreement. Facsimile, documents executed, scanned and transmitted electronically and electronic signatures shall be deemed original signatures for purposes of this Agreement and all matters related thereto, with such facsimile, scanned and electronic signatures having the same legal effect as original signatures.

J. **FURTHER ASSURANCES.** The parties hereto hereby agree to execute such other documents, and to take such other actions as may reasonably be necessary, to further the purposes of this Agreement.

K. **GENDER/NUMBER/REFERENCES TO SELLER.** Whenever the context indicates that such is the intent, words in the singular number shall include the plural and vice versa, and the masculine shall include the feminine and vice versa. Pronouns shall be deemed to refer to all genders. All provisions herein for the benefit of Seller shall be deemed to be for the benefit of Seller and all of Seller's agents and sub-agents (including without limitation REDC, auctioneer(s) and any Seller's broker(s)) and each of their respective officers, directors, shareholders, employees, attorneys, representatives, affiliates, subsidiaries.

L. **SURVIVAL OF INDEMNIFICATION/DEFENSE/HOLD HARMLESS.** Any indemnification, defense or hold harmless obligation of Buyer for the benefit of Seller in this Agreement shall survive the Closing and/or termination of this Agreement.

M. **FORCE MAJEURE.** No Party shall be responsible for delays or failure of performance resulting from acts of God, riots, acts of war, epidemics, power failures, earthquakes or other disasters, providing such delay or failure of performance could not have been prevented by reasonable precautions and cannot reasonably be circumvented by such Party through use of alternate sources, workaround plans, or other means except as provided in *Section 14* of this Agreement.

N. **EMINENT DOMAIN.** In the event that the Seller's interest in the Property, or any part thereof, shall have been taken by eminent domain, or shall be in the process of being taken on or before the Closing Date, either Party may terminate this Agreement and the Earnest Money Deposit shall be returned to the Buyer and neither Party shall have any further rights or liabilities hereunder, except as otherwise specifically provided in this Agreement.

O. **FULL PERFORMANCE.** Seller's delivery of the Deed to the Property to Escrow/Closing Agent shall be deemed to be full performance and discharge of all of Seller's obligations under this Agreement.

P. **ADDITIONAL DOCUMENTS.** All parties signing this Agreement hereby acknowledge receipt of a copy of this Agreement and any Addenda attached thereto.

Q. **NOTICE.** This Agreement shall bind and inure to the benefit of the parties and their successors in interest. All notices, approvals, and other communications contemplated, given, or required under this Agreement shall be in writing and shall be deemed given and received upon receipt if: (a) delivered personally; or (b) mailed by registered or certified mail return receipt requested, postage prepaid; (c) sent by a nationally recognized overnight courier; and/or (d) delivered via facsimile transmission, provided receipt is confirmed by telephone or by a statement generated by the transmitting machine, in any case to the Parties at the following addresses or facsimile numbers (or at such address or facsimile number for a Party as will be specified by like notice). Notice to the Buyer shall be given as set forth in *Section 1B* herein and to the Seller with a copy to: Seller, c/o REDC, One Mauchly, Irvine, CA 92618, facsimile number (949) 454-7456 or to such other address or addresses as may from time to time be designated by either party by written notice to the other.

R. **AUCTION/SALE PROCESS.** Neither Seller, Seller's broker nor auctioneer is making any representation or warranty as to the manner in which the sale process will be managed. Seller may select the winning bid in its sole and absolute discretion. No obligation to sell shall be binding on Seller unless and until a written contract of sale or purchase agreement is signed and delivered by Seller. Seller may rescind any oral acceptance of a winning bid prior to the execution and delivery of

this Purchase Agreement for any reason, including, but not limited to the receipt of a subsequent higher bid or offer to purchase whether such higher bid or offer to purchase was received pursuant to the Auction Terms and Conditions or otherwise.

S. **PROHIBITED PERSONS AND TRANSACTIONS.** Each party represents and warrants to the other that neither it, nor any of its affiliates, nor any of their members, directors or other equity owners (excluding holders of publicly traded shares), and none of their principal officers and employees: (i) is listed as a "specifically designated national and blocked person" on the most current list published by the U.S. Treasury Department Office of Foreign Asset Control ("OFAC"); (ii) is a person or entity with whom U.S. persons or entities are restricted from doing business under OFAC regulations or any other statute or executive order (including the September 24, 2001 "Executive Order Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism"); and (iii) is engaged in prohibited dealings or transactions with any such persons or entities.

T. **AUTHORITY TO EXECUTE.** If Buyer is a partnership, association, corporation, limited liability company or trust, the signatory hereto represents and warrants that he/she/it is duly authorized under applicable law to enter into this Agreement on behalf of such entity.

U. **LEGALLY BINDING CONTRACT.** THIS IS A LEGALLY BINDING CONTRACT.  IF YOU DO NOT UNDERSTAND THE TERMS AND CONDITIONS, CONSULT LEGAL OR OTHER COUNSEL BEFORE SIGNING.  BUYER HAS BEEN ADVISED BY SELLER, SELLER'S BROKER AND AUCTIONEER TO SEEK LEGAL, FINANCIAL, CONSTRUCTION, AIR QUALITY, ENVIRONMENTAL AND/OR PROFESSIONAL INSPECTIONS BY QUALIFIED PROFESSIONALS REGARDING BUYER'S PURCHASE OF THE PROPERTY AND THE TERMS OF THIS AGREEMENT. BY SIGNING THIS AGREEMENT, BUYER REPRESENTS AND WARRANTS THAT HE/SHE/IT HAS CONSULTED WITH, HAD THE OPPORTUNITY TO CONSULT WITH OR WAIVED THE RIGHT TO CONSULT WITH LEGAL OR OTHER PROFESSIONALS BUYER DEEMS NECESSARY.

V. **LANGUAGE IN BOLD OR CAPITALIZED.**  FOR EMPHASIS AND BUYER'S BENEFIT, SOME PROVISIONS HAVE BEEN BOLDED AND/OR CAPITALIZED (LIKE THIS SECTION), BUT EACH AND EVERY PROVISION IN THIS AGREEMENT IS SIGNIFICANT AND SHOULD BE REVIEWED AND UNDERSTOOD.  NO PROVISION SHOULD BE IGNORED OR DISREGARDED BECAUSE IT IS NOT IN BOLD OR EMPHASIZED IN SOME MANNER, AND THE FAILURE TO BOLD, CAPITALIZE, OR EMPHASIZE IN SOME MANNER ANY TERMS OR PROVISIONS IN THIS AGREEMENT SHALL NOT AFFECT THE ENFORCEABILITY OF ANY TERMS OR PROVISIONS.

Dated: 9/27/10                          Dated: 9/26/2010

SELLER:                                 BUYER(S):

                                        Labb Investments Inc
                                        by Laurent Shaboni, President
                                        PRINTED NAME

By: _____                     _____

Title: _____                  _____

                                        PRINTED NAME

SEE ADDENDUM TO PURCHASE AGREEMENT "SUBJECT TO" ATTACHED AND MADE A PART HEREOF

**BUYER'S AGENT/BROKER (if any):**

Buyer's  Agent/Broker hereby represents that he/she has registered prior to the Auction pursuant to the Auction Terms and Conditions as a Registered Agent/Broker, that he/she accepts the Auction Terms and Conditions in their entirety and specifically as to the compensation due to the cooperating Agent/Broker set forth below , if any, and that this is the only compensation Agent/Broker shall receive or is entitled to for this transaction from Seller, Seller's broker or auctioneer. Agent/Broker further represents that he/she is not a principal in the transaction (as such terms are defined in the Auction Terms and Conditions):

PRINTED NAME _____

BROKERAGE NAME _____

By: _____

License Number: _____

**ESCROW/CLOSING AGENT ACKNOWLEDGEMENT:**

Escrow/Closing Agent acknowledges receipt of a copy of this Agreement and earnest money deposit in the amount of $_____6,000.00_____ and agrees to act as Escrow/Closing Agent subject to the terms and conditions of this Agreement, the terms of Escrow/Closing Agent's general provisions set forth in Exhibit C, and any supplemental escrow instructions agreed upon by the parties.

By: _____

EXHIBIT A

LEGAL DESCRIPTION OF THE PROPERTY

**Please see preliminary title report or title commitment for full and complete legal description.**

Seller Initials _____

Buyer Initials _____

Exhibit A

**EXHIBIT B**

**ADDITIONAL DISCLOSURES**

Real Estate Agency Disclosure
Lead Based Paint – Lead Based Paint Hazard Disclosure and Acknowledgement (if pre-1978), if applicable
Pamphlet: "Protect Your Family From Lead in Your Home"
Florida Energy-Efficiency Rating Information Brochure
Fair Housing Disclosure (SEE BELOW)
Notice Regarding Predatory Offender Information (SEE BELOW)
Coastal Construction Control Line (SEE BELOW)
Homeowner Association Disclosure (if applicable)
Condominium Association Disclosure (if applicable)

**FAIR HOUSING ACT DISCLOSURE.** Under the Federal Fair Housing Act, it is illegal to discriminate in the rental or sale of housing on the basis of race, color, national origin, religion, sex, handicap, or familial status.

**NOTICE REGARDING PREDATORY OFFENDER INFORMATION.**
Information regarding the predatory offender registry and persons registered with the Florida Department of Law Enforcement pursuant to the Florida Sexual Predators Act and the Public Safety Information Act (PSIA) in Florida may be obtained by contacting the local law enforcement offices in the community where the Property is located or the from the Florida Department of Law Enforcement at 1 (888) 357-7332 or the website at http://www.fdle.state.fl.us/.

**COASTAL CONSTRUCTION CONTROL LINE.**
The Real Property which is the subject of this Agreement may be located either partially or totally seaward of the Coastal Construction Control Line ("CCCL"), as defined in Florida Statute 161.053, and is therefore subject to governmental regulation.  Florida law requires Seller to provide Buyer with an affidavit, or a survey meeting the requirements of Chapter 472 of the Florida Statutes, delineating the location of the CCCL on the Property at or prior to the Closing, unless Buyer waives this requirement in writing.  This Property may be in the Coastal Building Zone ("CBZ") and therefore be subject to governmental regulations.

☒ Buyer waives the right to receive a CCCL affidavit or survey.
☐ Buyer requests a CCCL affidavit or survey within the time allowed to deliver evidence of title.

SELLER'S SIGNATURE                                                     BUYER'S SIGNATURE

**AIRPORT NOISE.**  Buyers should investigate the impact of airport flight paths and the noise levels at different times of the day over that property. For more information on airport noise, visit the Florida Department of Transportation.

**ENVIRONMENTAL HAZARDS.**  Seller is not aware of a defect or hazard however this does not mean that it does not exist. It is the buyer's responsibility to be informed and take additional steps to further investigate.

Some potential hazards that may be found in Florida include:
- Radon (www.epa.gov/radon)
- Floods (www.epa.gov/ebtpages/emernaturaldisastefloods.html)
- Methamphetamine Labs
- Wood-Burning Devices (www.epa.gov/iaq/pubs/combust.html)
- Underground Storage Tanks (www.epa.gov)
- Well & Septic Systems (www.epa.gov/ebtpages/wategroundwaterwells.html)
- Contaminated Soils (www.epa.gov/ebtpages/pollsoilcontaminants.html)
- Groundwater (www.epa.gov/safewater/protect/citguide.html)
For more information on environmental hazards, visit www.epa.gov.

Joint Purchase Agreement (FL) 052010                   Exhibit B-1                   Buyer's Initials  L S,

**EXHIBIT C**

**ADDITIONAL ESCROW INSTRUCTIONS**

This page left intentionally blank.

Seller Initials

Buyer Initials_____

Buyer Initials_____

Exhibit C

REDC AUCTION ITEM NO. FF-1170                    # 103

PROPERTY ADDRESS:   11001 GULF REFLECTIONS DR FT MYERS FL 33908

ADDENDUM TO
PURCHASE AGREEMENT WITH JOINT ESCROW INSTRUCTIONS
OneWest Services, LLC

This Addendum to Purchase Agreement with Joint Escrow Instructions (this *Addendum*) is entered into by and between the Buyer and Seller, with regard to the property identified above ("Property"), who agree as follows:

BUYER SHALL PAY TO SELLER A DOCUMENT REVIEW FEE OF SEVENTY-FIVE DOLLARS ($75.00) ON THE CLOSING DATE.  THIS FEE SHALL BE NOTED SEPARATELY FROM SELLER PROCEEDS ON THE SETTLEMENT STATEMENT/HUD-1 AT CLOSING.

All other terms and conditions as set forth in the Purchase Agreement shall remain in full force and effect.

Dated: 9/27/10                          Dated: 9/26/2010

SELLER:                                 BUYER(S):

OneWest Services, LLC

_____                 _____
                                         Rabb Investments Inc
By: _____                  by Laurent Shabani, President
                                         PRINTED NAME
Title: _____

                                         _____


                                         _____
                                         PRINTED NAME

REDC Auction Item No. _PF1170_

Property Address: _11001  Gulf Reflections Dr #103,  Ft Myers, FL  33908_

## ADDENDUM TO PURCHASE AGREEMENT
## "SUBJECT TO"

      This Addendum to Purchase Agreement (this "Addendum"), is entered into by and between Seller and Buyer(s), who are parties to that certain Purchase Agreement dated ___9/26/2010___ (the "Agreement").

      This is a reserve auction and all Properties have a reserve price ("Reserve Price"), meaning the Seller of each Property can accept or reject any bid and has also established an unpublished, minimum selling price. Buyer(s) and Seller agree that Seller may terminate the Agreement, in Seller's sole and absolute discretion, in the event the Seller does not approve the sale where it is noted that it is Subject To Seller's Confirmation.  Seller shall make such election within fifteen (15) business days (excludes weekends and holidays) from the date of the Agreement.  If accepted, Seller or Seller's designee, will provide written notice to Buyer(s) within such fifteen (15) business-day period via overnight courier (FedEx, UPS or USPS Express Mail) or registered mail (return receipt requested), with Notice deemed given upon the date of sending of such Notice. If Seller or Seller's designee does not provide a Notice, then the Agreement shall be deemed cancelled without further action.

      If Seller elects NOT to approve the Agreement and elects to cancel the Agreement and terminate the Escrow and Transaction, Escrow/Closing Agent shall return to Buyer(s) any Earnest Money Deposit given by Buyer(s) to Escrow/Closing Agent, such return contingent upon the Escrow/Closing Agent's confirmation of the Earnest Money Deposit having been received as "good funds" as defined in the Agreement.  Auctioneer is authorized to provide the necessary instruction to Escrow/Closing Agent directing that Escrow/Closing Agent return to Buyer(s) any Earnest Money Deposit given by Buyer(s) to Escrow/Closing Agent and the Escrow/Closing Agent shall release such monies to Buyer(s) pursuant to this Addendum. Effective upon release of the Earnest Money Deposit to Buyer(s), the Agreement shall be cancelled and Buyer and Seller shall be relieved of any further liability and/or obligation to each other under the Agreement.  Buyer(s) agrees to release Seller, Seller's Broker, Auctioneer, and Escrow/Closing Agent from and against any and all liabilities in connection with the transaction and the Agreement.  Buyer grants Seller the unilateral right to execute cancellation instructions in the event that Seller elects to cancel and terminate escrow pursuant to the terms of this Addendum.

      If Seller elects to approve and confirm the Agreement, then the Agreement shall continue in full force and effect and the Closing Date shall occur no later than thirty (30) days following the date of Seller's acceptance for cash transactions or forty-five (45) days following the date of Seller's acceptance for transactions being financed, except as may otherwise be allowed pursuant to the terms of the Agreement.

Dated: ___9/27/10___         Dated: ___9/26/2010___

SELLER:                    BUYER(S):

                                 _Lebo Investments Inc_

By: _____            _by Laurent Shabani, President_

Title: _____        PRINTED NAME

                             _____

                             PRINTED NAME

REDC Auction Item No. _____FF1170_____

## ADDENDUM TO WINNING BIDDER CONFIRMATION

## SOLD "SUBJECT TO"

Buyer acknowledges and agrees that Winning Bidder's purchase is subject to, and contingent upon, the Seller approving the purchase, which shall be given or denied at their sole and absolute discretion in accordance with the terms of the Purchase Agreement and Addendum thereto.

Buyer(s):

_____          _____

_____          _____
Printed Name                                   Printed Name

012010

REDC Auction Item No.  FF-1170

# REAL ESTATE AGENCY DISCLOSURE- FLORIDA

### NOTICE OF NONREPRESENTATION

FLORIDA LAW REQUIRES THAT REAL ESTATE LICENSEES PROVIDE THIS NOTICE AT FIRST CONTACT TO POTENTIAL SELLERS AND BUYERS OF REAL ESTATE.

You are hereby notified that REAL ESTATE DISPOSITITION CORPORATION does not represent you in any capacity. You should not assume that any real estate broker or salesperson represents you unless you agree to engage a real estate licensee in an authorized brokerage relationship, either as a single agent or as a transaction broker.   You are advised not to disclose any information you want to be held in confidence until you make a decision on representation.

### Florida State Statute Requirements

Florida law requires that agency disclosure be made to all buyers and sellers of real estate at the point of first contact. The Brokerage Relationship Disclosure Act found in Section 475.2701 of the Florida Statutes requires that all licensed Real Estate agents must disclose agency relationship prior to showing property, first meeting or prior to discussion of negotiations, price, terms, or conditions of a potential sale. In order for a real estate licensee to establish one of the four authorized relationships, a specific type of written disclosure must be given to the customer on a form prescribed by the legislature and at a designated time in the formation of the relationship agreed upon between the licensee and the principal.  A licensee must also be mindful of the duties and responsibilities that go along with each type of relationship and must act accordingly at all times. Failure of any licensee to timely give appropriate disclosure forms will subject the licensee to disciplinary action by the Florida Real Estate Commission. In addition to disciplinary action by the Florida Real Estate Commission failure to make the disclosure or to abide by the duties of a particular type of relationship will also subject the licensee to civil liability. You should not assume that any real estate broker or salesperson represents you unless you agree to engage the services of a real estate licensee in an authorized relationship, either as a single agent or as a transaction broker. You are advised not to disclose any information you want to be held in confidence until you make a decision on representation. In order to eliminate confusion and provide for a better understanding on the part of customers in real estate transactions, the Legislature finds that the intent of the Brokerage Relationship Disclosure Act is to provide that:

(1) Disclosed dual agency as an authorized form of representation by a real estate licensee in this state is expressly revoked;

(2) Disclosure requirements for real estate licensees relating to authorized forms of brokerage representation are established;

(3) Single agents may represent either a buyer or a seller, but not both, in a real estate transaction; and

(4) Transaction brokers provide a limited form of nonfiduciary representation to a buyer, a seller, or both in a real estate transaction.

### Single Agency Representation

Single Agency Representation does not mean additional cost to the buyer or seller.

Real Estate Disposition Corporation (Lic. # CQ1031187) is acting as a Broker EXCLUSIVELY FOR THE SELLER

Single Agent is when a licensee represents, as a fiduciary, either the buyer or the seller. As a single agent, a licensee may not represent both buyer and seller in the same transaction. A fiduciary relationship is one of trust and confidence between the licensee as agent and the seller or buyer as principal (section 475.01(1) (f) and (k), (Florida Statute).

The duties a single agent owes to a buyer or seller include the following:

1. Dealing honestly and fairly

2. Loyalty

3. Confidence

Real Estate Agency Disclosure – Florida (2010)
Page 1

4. Obedience (within the scope of the law)

5. Disclosure

6. Accounting for all funds

7. Skill, care and diligence in the transaction

8. Presenting all offers and counteroffers in a timely manner, unless a party has previously directed the licensee otherwise in writing

9. Disclose all known facts that materially affect the value of residential property and are not readily observable

**Transaction Broker**

Owes no Fiduciary duties to the Buyer or Seller

A Transaction Broker owes a buyer or seller limited confidentiality. The agent does not owe confidence, obedience or loyalty to either party. A Transaction Broker can not represent both parties in the same transaction and owes no fiduciary duties to either buyer or seller. The licensee only agrees to facilitate the transaction. No form of representation exists.

Transaction Broker Relationship

Transaction broker-duties of limited representation.--A transaction broker provides a limited form of representation to a buyer, a seller, or both in a real estate transaction but does not represent either in a fiduciary capacity or as a single agent. The duties of the real estate licensee in this limited form of representation include the following:

1. Dealing honestly and fairly;

2. Accounting for all funds;

3. Using skill, care, and diligence in the transaction;

4. Disclosing all known facts that materially affect the value of residential real property and are not readily observable to the buyer;

5. Presenting all offers and counteroffers in a timely manner, unless a party has previously directed the licensee otherwise in writing;

6. Limited confidentiality, unless waived in writing by a party. This limited confidentiality will prevent disclosure that the seller will accept a price less than the asking or listed price, that the buyer will pay a price greater than the price submitted in a written offer, of the motivation of any party for selling or buying property, that a seller or buyer will agree to financing terms other than those offered, or of any other information requested by a party to remain confidential; and

7. Any additional duties that are mutually agreed to with a party.

---

Real Estate Disposition Corporation (Lic. # CQ1031187) is acting as a Broker EXCLUSIVELY FOR THE SELLER

BUYER'S HEREBY ACKNOWLEDGE RECEIPT OF THIS REAL ESTATE AGENCY DISCLOSURE.

Date: _____8/26/2010_____          Date: _____

Print Name: _Kato Investments Inc_          Print Name: _____
_by Laurent Shabani, President_

Real Estate Agency Disclosure – Florida (2010)
Page 2

REDC Auction Item No. FF-1170

## LEAD-BASED PAINT / LEAD-BASED PAINT HAZARD
## DISCLOSURE AND ACKNOWLEDGMENT

### LEAD WARNING STATEMENT

Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase, at purchaser's expense.

**SELLER'S DISCLOSURE** (Seller initial both lines 1&2)

_____ 1.   Presence of lead-based paint and/or lead-based paint hazards (check one below):

☐   Known lead-based paint and/or lead-based paint hazards are present in the housing (explain):

_____

☑   Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

_____ 2.   Records and reports available to the Seller (check one below):

☐   Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/o
lead-based paint hazards in the housing (list documents): _____

_____

☑   Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the
housing

**PURCHASER'S ACKNOWLEDGMENT** (Buyer initial lines 3, 4 & 5)

_L.S_ 3.   Purchaser has received copies of all information listed in 2 above, if any.

_L.S_ 4.   Purchaser has received the pamphlet *Protect Your Family From Lead in Your Home.*

_L.S_ 5.   Purchaser has (check one below):

☐   Received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or
inspection for the presence of lead-based paint and/or lead-based paint hazards; or

☑   Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint
and/or lead-based paint hazards.

**PURCHASER AGREES THEY ARE PURCHASING THE PROPERTY "AS IS," WITHOUT ANY REPRESENTATIONS OR WARRANTIES WHATSOEVER AS TO THE CONDITION OF THE PROPERTY. PURCHASER FURTHER AGREES THAT SELLER AND ITS SERVICERS, REPRESENTATIVES, AGENTS, BROKERS, AUCTIONEER, ATTORNEYS, OFFICERS, DIRECTORS, EMPLOYEES, SUCCESSORS AND ASSIGNS HAS NO RESPONSIBILITY OR LIABILITY FOR, AND PURCHASER HEREBY UNCONDITIONALLY RELEASES SELLER AND IT'S SERVICERS, REPRESENTATIVES, AGENTS, BROKERS, AUCTIONEERS, ATTORNEYS, OFFICERS, DIRECTORS, EMPLOYEES, SUCCESSORS AND ASSIGNS FROM, ANY AND ALL LIABILITY, BOTH KNOWN AND UNKNOWN, PRESENT AND FUTURE, THAT IS BASED UPON, OR RELATED TO, THE EXISTENCE OF LEAD OR LEAD-BASED PAINT ON OR ABOUT THE PROPERTY.**

**AGENT'S ACKNOWLEDGMENT**

6.   REDC and/or the Seller's Broker has informed the seller of the seller's obligations under 42 U.S.C. 4852d
and is aware of his/her responsibility to ensure compliance.

**CERTIFICATION OF ACCURACY**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate.

| | | | |
|---|---|---|---|
| _____ | _9/27/10_ | _____ | _9/26/2010_ |
| SELLER | Date | BUYER | Date |
| _____ | _____ | _____ | _____ |
| SELLER | Date | BUYER | Date |

REDC Auction Item No. _FF1170_

Property Address: _11001 Gulf Reflection Dr #103, Fort Myers, FL 33908_

## CONDOMINIUM ASSOCIATION DISCLOSURE - FLORIDA

If initialed by all parties, the clauses below will be incorporated into the Joint Purchase Agreement between the Seller and Buyer named herein relating to the Property described therein.

**1.     CONDOMINIUM ASSOCIATION APPROVAL; RELATED FEES:**

The Association's approval of Buyer (CHECK ONLY ONE) ☐ is ☐ is not required.  If approval is required, the Agreement is contingent upon Buyer being approved by the Association no later than _____ days prior to Closing. Buyer shall apply for approval within _____ days after Effective Date and shall use diligent effort to obtain such approval, including making personal appearances if required. Buyer and Seller shall sign and deliver any documents required by the Association in order to complete the transfer of the Property and shall divide equally all application and transfer fees charged by the Association. If Buyer is not approved within the stated time period, the deposit(s) will be returned to the Buyer and the Agreement will terminate.

**2.     RIGHT OF FIRST REFUSAL; RELATED FEES:**

(a)     The Association (CHECK ONLY ONE) ☐ has ☐ does not have a right of first refusal ("Right").  If the Association has a Right, the closing on the Agreement is contingent upon the first to occur of the Association providing written confirmation to Buyer that the Association is not exercising that Right or upon the expiration of the time permitted for the exercise of such Right, without the exercise of same, pursuant to the terms of the Declaration of Condominium ("Declaration," which reference includes all amendments thereto). Buyer and Seller shall, within _____ days after Effective Date, sign and deliver any documents required as a condition precedent to the exercise of the Right, shall use diligent effort to submit and process the matter with the Association, including personal appearances, if required, and shall divide equally any application and transfer fees charged by the Association.

(b)     The members of the Association (CHECK ONLY ONE) ☐ have ☐ do not have a Right. If the members do have a Right, the closing on the Agreement is contingent upon the first to occur of the Association providing written confirmation to the Buyer that the members of the Association have not elected to exercise that Right or upon the expiration of the time permitted for the exercise of such Right, without the exercise of same, pursuant to the terms of the Declaration.

(c)     If, without the stated time period, the Association or the members of the Association fail to provide the written confirmation or if the Right does not otherwise expire or if the Association or a member thereof exercises the Right, then the deposit(s) will be returned to the Buyer and the Agreement will terminate.

**3.     FEES; ASSESSMENTS; PRORATIONS:**

Seller represents that the current maintenance assessment is $ _350_ per month. All assessments levied by the Association and rent on recreational areas, if any, shall be made current by Seller at closing, and Buyer shall reimburse Seller for prepayments. Seller shall pay special assessments levied by the Association prior to the closing date, unless otherwise agreed in writing after Seller's full written disclosure to Buyer of pending amounts. Buyer shall pay special assessments levied by the Association on or after the closing date. Association assets and liabilities, including Association reserve accounts, shall not be prorated. A special assessment shall be deemed "levied" for purposes of this paragraph on the date when the Association's Board of Administration or the required percentage of unit owners, or both, has voted in accordance with Florida law and the condominium documents to approve the special assessment. Seller has no knowledge of any pending special assessment except as follows: $ _____ imposed for the following purposes: _____

Seller's Initials: _WC_

Buyer's Initials: _LS_

CONDOMINIUM ASSOCIATION DISCLOSURE – FLORIDA

- 1 -

4.      NON-DEVELOPER DISCLOSURE:

(CHECK ONLY ONE)

(a)      ☐ THE BUYER HEREBY ACKNOWLEDGES THAT BUYER HAS BEEN PROVIDED A CURRENT COPY OF THE DECLARATION OF CONDOMINIUM, ARTICLES OF INCORPORATION OF THE ASSOCIATION, BYLAWS, RULES OF THE ASSOCIATION, A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND THE QUESTION AND ANSWER SHEET MORE THAN THREE (3) DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND LEGAL HOLIDAYS, PRIOR TO EXECUTION OF THIS AGREEMENT.

(b)      ☐ THIS AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN THREE (3) DAYS, EXCLUDING SATURDAY, SUNDAYS, AND LEGAL HOLIDAYS, AFTER THE DATE OF EXECUTION OF THIS AGREEMENT BY THE BUYER AND RECEIPT BY BUYER OF A CURRENT COPY OF THE DECLARATION OF CONDOMINIUM, ARTICLES OF INCORPORATION, BYLAWS, AND RULES OF THE ASSOCIATION, A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND QUESTION AND ANSWER SHEET IF SO REQUESTED IN WRITING.  ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. BUYER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN THREE (3) DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND LEGAL HOLIDAYS, AFTER THE BUYER RECEIVES THE DECLARATION, ARTICLES OF INCORPORATION, BYLAWS, RULES, AND QUESTION AND ANSWER SHEET IF REQUESTED IN WRITING.  BUYER'S RIGHT TO VOID THIS AGREEMENT SHALL TERMINATE AT CLOSING.

5.      BUYER'S REQUEST FOR DOCUMENTS:

Buyer is entitled, at Seller's expense, to current copies of the condominium documents specified in Paragraph 4, above.  Buyer (CHECK ONLY ONE) ☐ requests ☐ does not request a current copy of the documents specified in Paragraph 4, above.  If this Agreement does not close, Buyer shall immediately return the documents to Seller or reimburse Seller for the cost of the documents.

6.      BUYER'S RECEIPT OF DOCUMENTS:

(COMPLETE AND CHECK ONLY IF CORRECT) ☐ Buyer received the documents described in Paragraph 4, above, on the _____ day of _____, _____.

7.      COMMON ELEMENTS; PARKING:

The Property includes the unit being purchased and an undivided interest in the common elements and any appurtenant limited common elements of the condominium, as specified in the Declaration.  Seller's right and interest in or to the use of the following parking space(s), garage, and other areas are included in the sale of the Property and shall be assigned to Buyer at closing, subject to the Declaration: ☐ Parking Space(s) #_____ ☐ Garage #_____ ☐ Other: _____.

BUYER(S):

_Knubb Investments Inc_
Print Name:   by Laurent Shabani, President      Print Name: _____

REDC Auction Item No. _FF1170_

Property Address: _11001 Gulf Reflections Dr #103, Fort Myers, FL 33908_

## HOMEOWNERS' ASSOCIATION DISCLOSURE - FLORIDA

Disclosure Summary for _____

_(Name of Community)_

1. AS A BUYER OF PROPERTY IN THIS COMMUNITY, YOU WILL BE OBLIGATED TO BE A MEMBER OF A HOMEOWNERS' ASSOCIATION ("ASSOCIATION").

2. THERE HAVE BEEN OR WILL BE RECORDED RESTRICTIVE COVENANTS ("COVENANTS") GOVERNING THE USE AND OCCUPANCY OF PROPERTIES IN THIS COMMUNITY.

3. THERE MAY BE AN OBLIGATION TO PAY RENT OR LAND USE FEES FOR RECREATIONAL OR OTHER COMMONLY USED FACILITIES AS AN OBLIGATION OF MEMBERSHIP IN THE HOMEOWNERS' ASSOCIATION. IF APPLICABLE, THE CURRENT AMOUNT IS $_____ PER _____.

4. THE DEVELOPER MAY HAVE THE RIGHT TO AMEND THE RESTRICTIVE COVENANTS WITHOUT THE APPROVAL OF THE ASSOCIATION MEMBERSHIP OR THE APPROVAL OF THE PARCEL OWNERS.

5. THE STATEMENTS CONTAINED IN THIS DISCLOSURE FORM ARE ONLY SUMMARY IN NATURE, AND, AS A PROSPECTIVE BUYER, YOU SHOULD REFER TO THE COVENANTS AND THE ASSOCIATION GOVERNING DOCUMENTS BEFORE PURCHASING PROPERTY.

6. THESE DOCUMENTS ARE EITHER MATTERS OF PUBLIC RECORD AND CAN BE OBTAINED FROM THE RECORD OFFICE IN THE COUNTY WHERE THE PROPERTY IS LOCATED, OR ARE NOT RECORDED AND CAN BE OBTAINED FROM THE ORIGINAL DEVELOPER.

7. IF THE DISCLOSURE SUMMARY REQUIRED BY CHAPTER 720, FLORIDA STATUTES, HAS NOT BEEN PROVIDED TO THE PROSPECTIVE BUYER BEFORE EXECUTING THIS AGREEMENT OR ADDENDUM, THE AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING TO SELLER OR SELLER'S AGENT OR REPRESENTATIVE WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS AFTER RECEIPT OF THE DISCLOSURE SUMMARY OR PRIOR TO CLOSING, WHICHEVER OCCURS FIRST. ANY PURPORTED WAIVER OF THIS VOIDABILITY RIGHT HAS NO EFFECT. BUYER'S RIGHT TO VOID THE AGREEMENT SHALL TERMINATE AT CLOSING.

BUYER SHOULD NOT EXECUTE THIS AGREEMENT OR ADDENDUM UNTIL BUYER HAS RECEIVED AND READ THIS DISCLOSURE.

A. YOU WILL BE OBLIGATED TO PAY ASSESSMENTS TO THE ASSOCIATION. ASSESSMENTS MAY BE SUBJECT TO PERIODIC CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $_____ PER _____.

B. YOU MAY BE OBLIGATED TO PAY SPECIAL ASSESSMENTS TO THE RESPECTIVE MUNICIPALITY, COUNTY, OR SPECIAL DISTRICT. ALL ASSESSMENTS ARE SUBJECT TO PERIODIC CHANGE.

C. YOUR FAILURE TO PAY SPECIAL ASSESSMENTS OR ASSESSMENTS LEVIED BY A MANDATORY HOMEOWNERS' ASSOCIATION COULD RESULT IN A LIEN ON YOUR PROPERTY.

BUYER(S):

Dated: _9/26/2010_

Print Name: _Labe Investments Inc_
_by Laurent Shabazi, President_

Dated: _____

Print Name: _____

-1-

# NON-FNMA BUYER FACT SHEET

REDC ID ___1170___                                    BIDDER # __650__

| CASH BUYERS ONLY |
|---|

**SOURCE OF FUNDS:**

How do you intend to pay for your purchase?

____X____ Liquid Bank Account (Checking, Savings, Money Market, etc)

_____ Brokerage Account (Stocks/Bonds/Mutual Funds, 401(k), IRA, etc)

_____ Certificate of Deposit Account

_____ Existing Home Equity Line

_____ Personal Line of Credit

_____ 1031 Exchange (Date of Availability _____ )

Estimated balance of account listed above: $ _____174K_____

**CLOSE OF ESCROW PERIOD:**

To ensure a closing on or before your contractual close date we must set a tentative delivery day for all remaining funds to close and to sign your closing documents.

*What day are you available that is at least 7 business days prior to the Close of Escrow date of
__10-19-2010__

Buyer tentative signing date ____10-19-2010____

(* Cash Transaction Purchases Less Than $25,000. For transactions with a Total Purchase Price of less than Twenty-Five Thousand Dollars ($25,000), Winning Bidders electing to pay cash for their purchase will be required to immediately deposit the Total Purchase Price with the Escrow/Closing Agent concurrent with the execution of the purchase documentation and in accordance with these terms. The closing of the transaction shall occur within twenty (20) days of the closing of the auction or the date set forth in the purchase documentation.)

_____

By signing this document you hereby acknowledge that the information contained on this document is accurate to the best of your knowledge. Information contained on this document will be shared with company's holding relationships with REDC.

X _____   Sept 26/10   X _____   _____

Buyer                        Date          Co Buyer              Date

Print Name: _Laurent Shabani_          Print Name: _____

For Ministry Use Only
À l'usage exclusif du ministère

Ontario

Ministry of
Government Services

Ministère des
Services Gouvernementaux

Ontario Corporation Number
Numéro de la société en Ontario

**1828845**

**CERTIFICATE**
This is to certify that these articles
are effective on

**CERTIFICAT**
Ceci certifie que les présents statuts
entrent en vigueur le

L JUNE   2 4   JUIN   2010

Director / Directrice
Business Corporations Act / Loi sur les sociétés par actions

## ARTICLES OF INCORPORATION
## STATUTS CONSTITUTIFS

Form 1
Business
Corporations
Act

Formule 1
Loi sur les
sociétés par
actions

1. The name of the corporation is: (Set out in BLOCK CAPITAL LETTERS)
   Dénomination sociale de la société : (Écrire en LETTRES MAJUSCULES SEULEMENT)

   LABB INVESTMENTS INC.

2. The address of the registered office is:
   Adresse du siège social :

   1198 Meredith Ave Mississauga, ON
   (Street & Number or R.R. Number & if Multi-Office Building give Room No.)
   (Rue et numéro ou numéro de la R.R. et, s'il s'agit d'un édifice à bureaux, numéro du bureau)

   **ONTARIO**   L5E 2E3

   (Name of Municipality or Post Office)          (Postal Code)
   (Nom de la municipalité ou du bureau de poste)  (Code postal)

3. Number of directors is/are:          Fixed number    2    OR  minimum and maximum
   Nombre d'administrateurs :           Nombre fixe           OU  minimum et maximum

4. The first director(s) is/are:
   Premier(s) administrateur(s) :

| First name, middle name and surname<br>Prénom, autres Prénoms et nom de famille | Address for service, giving Street & No. or R.R. No.,<br>Municipality, Province, Country and Postal Code<br>Domicile élu, y compris la rue et le numéro, le numéro de la<br>R.R. ou le nom de la municipalité, la province, le pays et le<br>code postal | Resident Canadian?<br>Yes or No<br>Résident canadien?<br>Oui/Non |
|---|---|---|
| LAURENT SHABANI | 1198 Meredith Ave<br>Mississauga, ON L5E 2E3 | YES |
| Reshat Shabani | 1198 Meredith Ave<br>Mississauga, ON L5E 2E3 | Yes |

Best Ontario

© Copyright 1999-2008
Best Ontario Inc. BCA 1

10.  The names and addresses of the incorporators are
     *Noms et adresses des fondateurs :*

6

| First name, middle names and surname or corporate name *Prénom, autres prénoms et nom de famille ou dénomination sociale* | Full address for service or if a corporation, the address of the registered or head office giving street & No. or R.R. No., municipality, province, country and postal code *Domicile élu au complet ou, dans le cas d'une société, adresse du siège social ou adresse de l'établissement principal, y compris la rue et le numéro ou le numéro de la R.R., la municipalité, la province, le pays et le code postal* |
|---|---|
| LAURENT SHABANI | 1198 Meredith Ave Mississauga, ON L5E 2E3 |
| Reshat Shaboni | 1198 Meredith Ave Mississauga, ON L5E 2E3 |

These articles are signed in duplicate.
*Les présents statuts sont signés en double exemplaire.*

Full name(s) and signature(s) of Incorporator(s). In the case of a corporation set out the name of the corporation and the name and office of the person signing on behalf of the corporation
*Nom(s) au complet et signature(s) du ou des fondateurs. Si le fondateur est une société, indiquer la dénomination sociale et le nom et le titre de la personne signant au nom de la société*

_____
Signature / signature

LAURENT SHABANI
Name of Incorporator (or corporation name & signatories name and office)
*Nom du fondateur (ou dénomination sociale et nom et titre du signataire)*

_____
Signature / signature

Reshat Shabani
Name of Incorporator (or corporation name & signatories name and office)
*Nom du fondateur (ou dénomination sociale et nom et titre du signataire)*

_____
Signature / signature

Name of Incorporator (or corporation name & signatories name and office)
*Nom du fondateur (ou dénomination sociale et nom et titre du signataire)*

_____
Signature / signature

Name of Incorporator (or corporation name & signatories name and office)
*Nom du fondateur (ou dénomination sociale et nom et titre du signataire)*

© Copyright 1999-2008
Best Ontario Inc. BCA 1

 

# Kahane & Associates, P.A.

8201 Peters Road, Suite 3000
Plantation, FL 33324
TELEPHONE (954) 382-3486
FACSIMILE (954) 382-5792

Jan 7, 2011

Labb Investments Inc.
1198 Meredith Avenue
Mississauga, Ontario
Canada L5E 2E3

RE:   Property: 11001 Gulf Reflections Drive #103, Fort Myers, FL, 33908
      Our File No.: 10-09094

Dear Buyer:

In connection with your purchase of the above-mentioned property, enclosed please find the following:

1.  Original Title Insurance Policy
2.  Original recorded Special Warranty Deed
3.  Copy of Settlement Statement

Should you have any questions or if I may be of further assistance, please do not hesitate to call.

Sincerely,

Kahane & Associates, P.A.

Darleen Alexander
Enclosures



**Owner's Policy of Title Insurance**

*Fidelity National Title Insurance Company*
A Stock Company

**Policy Number**  FL4706-10-10-09094-2010.2710609-82359786

## OWNER'S POLICY OF TITLE INSURANCE

*SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, FIDELITY NATIONAL TITLE INSURANCE COMPANY, a California corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:*

1. *Title to the estate or interest described in Schedule A being vested other than as stated therein;*

2. *Any defect in or lien or encumbrance on the title;*

3. *Unmarketability of the title;*

4. *Lack of a right of access to and from the land.*

*The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title, as insured, but only to the extent provided in the Conditions and Stipulations.*

*This policy shall not be valid or binding until Schedule A has been countersigned by either a duly authorized agent or representative of the Company and Schedule B has been attached hereto.*

*IN WITNESS WHEREOF, FIDELITY NATIONAL TITLE INSURANCE COMPANY has caused this policy to be signed and sealed by its duly authorized officers as of Date of Policy shown in Schedule A.*

FL4706        10-09094
Kahane & Associates, PA
8201 Peters Rd, Ste 3000
Plantation , FL 33324
Tel:(954) 920-4000
Fax:(954) 920-2999

*Fidelity National Title Insurance Company*

SEAL

By:

ATTEST                                        President

                                              Secretary

Countersigned:

Authorized Signature
Jane E. Hawronsky

FORM 1332 (7/05) (2710609)                    ALTA Owner's Policy (10-17-92) with Florida Modifications



# OWNER'S POLICY OF TITLE INSURANCE

Issued by

*Fidelity National Title Insurance Company*

### SCHEDULE A

Name and Address of Title Insurance Company:
**Kahane & Associates, P.A.**
**8201 Peters Road, Suite 3000, Plantation, FL, 33324**

File No.: **10-09094**

Policy No.: **2010.2710609-82359786**

Address Reference: **11001 Gulf Reflections Drive #103, Fort Myers, FL  33908**

Amount of Insurance: **$40,000.00**

Date of Policy: **November 2, 2010, at 04:07pm**

Premium: **$230.00**

1.     Name of Insured:

    **Labb Investments Inc., an Ontario Canada Corporation**

2.     The estate or interest in the Land that is insured by this policy is:

    **Fee Simple**

3.     Title is vested in:

    **Labb Investments Inc., an Ontario Canada Corporation**

4.     The Land referred to in this policy is described as follows:

    Condominium Unit No. 103, Building A, of GULF REFLECTIONS, a Condominium, according to the Declaration of Condominium thereof, as recorded in Official Records Book 4546, at Page 3735, of the Public Records of Lee County, Florida.

Countersigned
Kahane & Associates, P.A.

By _____
     Jane E. Hawronsky

*Schedule A*

Page 1

 

# OWNER'S POLICY OF TITLE INSURANCE

Issued by

## *Fidelity National Title Insurance Company*

### SCHEDULE B

File No.: 10-09094

Policy No.: 2010.2710609-82359786

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of:

1.  Any facts, rights, interests or claims which are not shown by the public records but which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof.

2.  Any lien or right to a lien, for services, labor or material theretofore or hereafter furnished, imposed by law and not shown by the public records.

3.  Encroachments, overlaps, boundary line disputes and any matters which would be disclosed by an accurate survey and inspection of the premises.

4.  Rights of parties in actual possession of all or any part of the premises.

5.  Easements or claims of easements, not shown by the public records.

6.  The lien of all taxes for the year 2010 and thereafter, which are not yet due and payable.

7.  Any lien provided by County Ordinance or by Ch. 159, F.S., in favor of any city, town, village or port authority, for unpaid service charges for services by any water systems, sewer systems or gas systems serving the land described herein; and any lien for waste fees in favor of any county or municipality.

8.  This policy does not insure or guarantee any interest in and to personal property attached or unattached to the real estate or building.

9.  Roads, ways, streams or easements, if any, not shown by the public records, riparian rights and the title to any filled-in lands.

10. Lee County Ordinances 86-14 and 86-38 providing for mandatory solid waste collection and the imposition of special assessments for said collection services. The special assessments for the current tax year are payable with the ad valorem taxes.

11. Dedications, Easements, Reservations and Restrictions as shown on the Plat recorded in Plat Book 3 Page 68, of the Public Records of Lee County, Florida.

12. Easement as recorded in Official Records Book 2304, Page 4658, of the Public Records of Lee County, Florida.

13. Development Contract as recorded in Official Records Book 3989, Page 2721, as amended in Official Records Book 4062, Page 203, of the Public Records of Lee County, Florida.

14. Notice of Development Order as recorded in Official Records Book 4628, Page 1207, of the Public Records of Lee County, Florida.

*Schedule B*

 

**SCHEDULE B**
Continued

Policy No.: 2010.2710609-82359786

15.   Easement granted to Florida Power & Light Company by instrument filed in Instrument No. 2006000135325, of the Public Records of Lee County, Florida.

16.   Easement granted to Florida Power & Light Company by instrument filed in Instrument No. 2006000135335, of the Public Records of Lee County, Florida.

17.   Terms, provisions, restrictive covenants, conditions, reservations and easements contained in Declaration of Condominium recorded in Official Records Book 4546 Page 3735, as amended of the Public Records of Lee County, Florida.

18.   Any loss or damage for unpaid assessments pursuant to Sec. 718.116(1) (a), F.S.

Note: All of the recording information contained herein refers to the Public Records of Lee County, Florida, unless otherwise indicated. Any reference herein to a Book and Page is a reference to the Official Record Books of said county, unless indicated to the contrary.

 

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

    (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land had been recorded in the public records at Date of Policy.

2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3.  Defects, liens, encumbrances, adverse claims or other matters:

    (a) created, suffered, assumed or agreed to by the insured claimant;

    (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

    (c) resulting in no loss or damage to the insured claimant;

    (d) attaching or created subsequent to Date of Policy; or

    (e) resulting in loss or damage which would not have been sustained in the insured claimant had paid value for the estate or interest insured by this policy

4.  Any claim which arises out of the transaction vesting in the Insured the estate or interest by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:

    (a) the transaction creating the estate or interest insured by this policy being deemed a fraudulent conveyance or fraudulent transfer; or

    (b) the transaction creating the estate or interest insured by this policy being deemed a preferential transfer except where the preferential transfer results from the failure:

       (i) to timely record the instrument of transfer; or

       (ii) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

## CONDITIONS AND STIPULATIONS

### 1. DEFINITIONS OF TERMS

The following terms when used in this policy mean:

(a) "insured": the insured named in Schedule A, and, subject to any rights or defenses the company would have had against the named insured, those who succeed to the interest of the named insured by operation of law as distinguished from purchase including, but not limited to, heirs, distributes, devisees, survivors, personal representatives, next of kin, or corporate or fiduciary successors.

(b) "insured claimant": and insured claiming loss or damage.

(c) "knowledge" or "known": actual knowledge, not constructive knowledge or notice which may be imputed to an insured by reason of the public records as defined in this policy or any other records which impart constructive notice of matters affecting the land.

(d) "land": the land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.

(e) "mortgage": mortgage, deed of trust, trust deed, or other security instrument.

(f) "public records": records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge. With respect to Section 1(a)(iv) of the Exclusions From Coverage, "public records" shall also include environmental protection liens in the records of the clerk of the United States district court for the district in which the land is located.

(g) "unmarketability of the title": an alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest described in Schedule A or the insured mortgage to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title.

### 2. CONTINUATION OF INSURANCE AFTER CONVEYANCE OF TITLE

The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer conveyance of the estate or interest. This policy shall not continue in force in favor of any purchaser from the insured of either (i) an estate or interest in the land, or (ii) an indebtedness secured by a purchase money mortgage given to the insured.

### 3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT

The insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 4(a) below, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest, as insured, and which might cause loss or damage for which the company may be liable by virtue of this policy, or (ii) if title to the estate or interest, as insured, is rejected as unmarketable. If prompt



notice shall not be given to the company, then as to the insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

## 4. DEFENSE AND PROSECUTION OF ACTIONS: DUTY OF INSURED CLAIMANT TO COOPERATE

(a) Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, cost or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

(b) The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the term of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(c) Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

(d) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the insured for this purpose. Whenever requested by the Company, the insured, at the Company's expense, shall give the Company all reasonable aid (i) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding , or effecting settlement, and (ii) in any other lawful act which I the opinion of the Company may be necessary or desirable to establish the title to the estate or interest, as insured. If the Company is prejudiced by the failure of the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

## 5. PROOF OF LOSS OR DAMAGE

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the company, a proof of loss or damage signed and sworn to by the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect in, or lien or encumbrance on the title, other matter insured against by this policy which constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the insured

claimant to provide the required proof of loss or damage, the Company's obligations to the insure under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such proof of loss or damage.

In addition, the insure claimant may reasonably be required to submit to examination under oath by an authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by an authorized representative of the Company the insured claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the insured claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in this paragraph shall terminate any liability of the Company under this policy as to that claim.

## 6. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance

To pay or tender payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment or tender of payment and which were authorized by the Company, up to the time of payment or tender of payment and which the Company is obligated to pay.

Upon the exercise by the Company of this option, all liability and obligations to the insured under this policy, other than to make the payment required, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation and the policy shall be surrendered to the Company for cancellation.

(b) To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant

(i) to pay or otherwise settle with other parties for or in the name of an insured claimant any claim insured against under this policy, together with any costs, attorneys; fees and expenses incurred by the insure claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay; or

(ii) to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in paragraphs b(i) or (ii), the Company's obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including



any liability or obligation to defend, prosecute or continue any litigation.

## 7. DETERMINATION, EXTENT OF LIABILITY AND COINSURANCE

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a) The liability of the Company under this policy shall not exceed the least of:

(i) the Amount of Insurance stated I Schedule A; or,

(ii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

(b) The Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

## 8. APPORTIONMENT

If the land described in Schedule A consists of two or more parcels which are not used as a single site, and a loss is established affecting one or more of the parcels but not all, the loss shall be computed and settled on a pro rata basis as if the amount of insurance under this policy was divided pro rata as to the value on Date of Policy of each separate parcel to the whole, exclusive of any improvements made subsequent to Date of Policy, unless a liability or value has otherwise been agreed upon as to each parcel by the Company and the insured at the time of the issuance of this policy and shown by an express statement or by an endorsement attached to this policy.

## 9. LIMITATION OF LIABILITY

(a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title, as insured.

(c) The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

## 10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY

All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto.

## 11. LIABILITY NONCUMULATIVE

It is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy to the insured owner.

## 12. PAYMENT OF LOSS

(a) No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

(b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.

## 13. SUBROGATION UPON PAYMENT OR SETTLEMENT

(a) The Company's Right of Subrogation.

Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.

The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company the insured claimant shall transfer to the Company all rights and remedies against any person or property necessary to order to perfect this right of subrogation. The insured claimant shall permit the company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated to these rights and remedies in the proportion which the Company's payment bears to the whole amount of the loss.

If loss should result from any act of the insured claimant, as stated above, that act shall not void this policy, but the Company, in that event, shall be required to pay only that part of any losses insured against by this policy which shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.

(b) The Company's Rights Against Non-Insured Obligors.

The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments which provide for subrogation rights by reason of this policy.

## 14. ARBITRATION

Unless prohibited by applicable law, arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association may be demanded if agreed to by both the Company and the insured. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

ALTA Owner's Policy (10-17-92) with Florida Modifications

 

INSTR # 2010000273225, Doc Type D, Pages 3, Recorded 11/02/2010 at 04:07 PM,
Charlie Green, Lee County Clerk of Circuit Court, Deed Doc. D $280.00 Rec. Fee
$27.00 Deputy Clerk ERECORD

Prepared by and return to:
Grace Philius
Kahane & Associates, P.A.
8201 Peters Road, Suite 3000
Plantation, FL 33324

File Number: 10-09094
Loan Number: 1009442482
Consideration: $40,000.00

(space above this line for recording data)

# Special Warranty Deed

This Special Warranty Deed made this $\underline{4}$ day of October, 2010, between Deutsche Bank National Trust Company, as Trustee of the IndyMac IMSC Mortgage Loan Trust 2007-AR1, Mortgage Pass-Through Certificates, Series 2007-AR1 under the Pooling and Servicing Agreement dated June 1, 2007 whose post office address is 460 Sierra Madre Villa Avenue, Suite 101, Pasadena, CA 91107, grantor, and Lubb Investments Inc., an Ontario Canada Corporation whose post office address is 1198 Meredith Avenue, Mississwayer, Ontario L5E2E, grantee:

(Whenever used herein the terms grantor and grantee include all the parties to this instrument and the heirs, legal representatives, and assigns of individuals, and the successors and assigns of corporations, trusts and trustees)

Witnesseth, that said grantor, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable considerations to said grantor in hand paid by said grantee, the receipt whereof is hereby acknowledged, has granted, bargained, and sold to the said grantee, and grantee's heirs and assigns forever, the following described land, situate, lying and being in Lee County, Florida, to-wit:

Condominium Unit No. 103, Building A, of GULF REFLECTIONS, a Condominium, according to the Declaration of Condominium thereof, as recorded in Official Records Book 4546, at Page 3735, of the Public Records of Lee County, Florida.

Parcel Identification Number: 06-46-24-35-0000A.0103

**CERTIFICATE OF APPROVAL IS ATTACHED HERETO AND MADE A PART HEREOF**

Together with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

To Have and to Hold, the same in fee simple forever.

And the grantor hereby covenants with said grantee that the grantor is lawfully seized of said land in fee simple; that the grantor has good right and lawful authority to sell and convey said land; that the grantor hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons claiming by, through or under grantors.

In Witness Whereof, grantor has hereunto set grantor's hand and seal the day and year first above written.

*Special Warranty Deed - Page 1*

Prepared by and return to:
**Grace Philius**
**Kahane & Associates, P.A.**
**8201 Peters Road, Suite 3000**
**Plantation, FL 33324**

**File Number: 10-09094**
**Loan Number: 1009442482**
**Consideration: $40,000.00**

Recorded Electronically
ID 2010 000193226 Type
County Lee Page 3
Date 11-02-10 Time 4:07 PM
Simplifile.com 800.460.5657

(space above this line for recording data)

# Special Warranty Deed

**This Special Warranty Deed** made this ___4___ day of October, 2010, between Deutsche Bank National Trust Company, as Trustee of the IndyMac IMSC Mortgage Loan Trust 2007-AR1, Mortgage Pass-Through Certificates, Series 2007-AR1 under the Pooling and Servicing Agreement dated June 1, 2007 whose post office address is 460 Sierra Madre Villa Avenue, Suite 101, Pasadena, CA 91107, grantor, and Labb Investments Inc., an Ontario Canada Corporation whose post office address is 1198 Meredith Avenue, Mississwayer, Ontario L5E2E, grantee:

(Whenever used herein the terms grantor and grantee include all the parties to this instrument and the heirs, legal representatives, and assigns of individuals, and the successors and assigns of corporations, trusts and trustees)

Witnesseth, that said grantor, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable considerations to said grantor in hand paid by said grantee, the receipt whereof is hereby acknowledged, has granted, bargained, and sold to the said grantee, and grantee's heirs and assigns forever, the following described land, situate, lying and being in Lee County, Florida, to-wit:

Condominium Unit No. 103, Building A, of GULF REFLECTIONS, a Condominium, according to the Declaration of Condominium thereof, as recorded in Official Records Book 4546, at Page 3735, of the Public Records of Lee County, Florida.

Parcel Identification Number: 06-46-24-35-0000A.0103

**\*\*CERTIFICATE OF APPROVAL IS ATTACHED HERETO AND MADE A PART HEREOF\*\***

Together with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

To Have and to Hold, the same in fee simple forever.

And the grantor hereby covenants with said grantee that the grantor is lawfully seized of said land in fee simple; that the grantor has good right and lawful authority to sell and convey said land; that the grantor hereby fully warrants the title to said land and will defend the same against the lawful claims of all persons claiming by, through or under grantors.

In Witness Whereof, grantor has hereunto set grantor's hand and seal the day and year first above written.

Signed, sealed and delivered in our presence:

Witness Name: _____
Stacey Francis
Closer

Witness Name: _____
Alex Bob*
REO Closer

Deutsche Bank National Trust Company, as Trustee of the IndyMac IMSC Mortgage Loan Trust 2007-AR1, Mortgage Pass-Through Certificates, Series 2007-AR1 under the Pooling and Servicing Agreement dated June 1, 2007, by OneWest Bank, FSB, Attorney in Fact

By: _____
Louise Chavez
AVP

State of:   Texas
County of:   Travis

The foregoing instrument was acknowledged before me this ____4____ day of  October, 2010, by ___Louise Chavez___ AVP _____

of OneWest Bank, FSB, Attorney in Fact  for Deutsche Bank National Trust Company, as Trustee of the IndyMac IMSC

Mortgage Loan Trust 2007-AR1, Mortgage Pass-Through Certificates, Series 2007-AR1 under the Pooling and Servicing

Agreement dated June 1, 2007,  who ( X ) is personally known to me or (   ) has produced _____ as identification.

Notary Public _____

Printed Name: _____

My Commission Expires: _____

Recorded Electronically
ID E2010 00027922 5 Type D
County Lee
Date 11·08·10 Time 4·07 PM
Simplifile.com   800.460.5657

### <u>CONSENT TO TRANSER</u>

This CONSENT TO TRANSFER, granted by GULF REFLECTIONS CONDOMINIUM

ASSOCIATION OF  INC., hereinafter called the Association, unto Indymac Bank, FSB,

WHEREAS, Indymac Bank, FSB are the owners of 11001 Gulf Reflections Drive, Unit

A103, and is desirous of selling said unit to Labb Investments, Inc.

WHEREAS, the Association has consented to the transfer of said property pursuant to the

authority granted unto the Association by reason of Condominium Declaration as recorded in the

Public records of Lee County, Florida.

NOW, THEREFORE, in consideration of the premises, the Association does herewith

consent to the transfer and sale of 11001 Gulf Reflections Drive, Unit A103, by Indymac Bank,

FSB to Labb Investments, Inc.

' IN WITNESS WHEREOF, the Association has caused its hand and seal to be affixed this

25th day of October, 2010.


GULF REFLECTIONS CONDOMINIUM  ASSOCIATION, INC.

By: _____

Carla DeYorgi, Managing Agent


STATE OF FLORIDA  }
COUNTY OF LEE     )

Sworn to (or affirmed) and subscribed before me this 25th day of October, 2010.

_____
(Signature of Notary Public)

NOTARY PUBLIC-STATE OF FLORIDA
Dianne M. Racine
Commission #DD900872
Expires:  JULY 02, 2013
BONDED THRU ATLANTIC BONDING CO., INC.

_____
(Name of Notary Typed, Printed or Stamped)


THIS DOCUMENT PREPARED BY:
BENSON'S, INC.
12650 WHITEHALL DR
FORT MYERS, FL 33907

A. **Settlement Statement** 

U.S. Department of Housing and Urban Development

OMB No. 2502-0265

**B. Type of Loan**

| | | |
|---|---|---|
| 1. ☐ FHA  2. ☐ FmHA  3. ☐ Conv Unins | 6. File Number 10-09094 | 7. Loan Number |
| 4. ☐ VA  5. ☐ Conv Ins.  6. ☐ Seller Finance | | 8. Mortgage Ins Case Number |

C. Note:   This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower | E. Name & Address of Seller | F. Name & Address of Lender |
|---|---|---|
| Labb Investments Inc., an Ontario Canada Corporation 1398 Meredith Avenue Mississauyer, Ontario L5E2E | Deutsche Bank National Trust Company, as Trustee of the IndyMac IMSC Mortgage Loan Trust 2007-AR1, Mortgage Pass-Through Certificates, Series 2007-AR1 under the Pooling and Servicing Agreement dated June 1, 2007 | |

| G. Property Location | H. Settlement Agent Name |
|---|---|
| Gulf Reflections Desc  Phase 1 Bldg A, Unit 103 11001 Gulf Reflections Drive #103 Fort Myers, FL  33908 | Kahane & Associates, P.A. 8201 Peters Road, Suite 3000 Plantation, FL  33324  Tax ID: 80-113554 Underwritten By: Fidelity |

| | Place of Settlement | I. Settlement Date 10/27/2010 |
|---|---|---|
| | Kahane & Associates, P.A. 8201 Peters Rd., Suite 3000 Plantation, FL  33324 | Fund: 10/27/2010 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross Amount Due from Borrower | | 400. Gross Amount Due to Seller | |
| 101. Contract Sales Price | $40,000.00 | 401. Contract Sales Price | $40,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to borrower | $1,427.50 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. County taxes | | 406. County taxes | |
| 107. HOA Dues        10/28/10 thru 12/31/10 | $741.85 | 407. HOA Dues        10/28/10 thru 12/31/10 | $741.85 |
| 108. | | 408. | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 416. | |
| 120. Gross Amount Due From Borrower | $42,169.35 | 420. Gross Amount Due to Seller | $40,741.85 |
| 200. Amounts Paid By Or in Behalf Of Borrower | | 500. Reductions In Amount Due to Seller | |
| 201. Deposit or earnest money | $6,000.00 | 501. Excess Deposit | |
| 202. Principal amount of new loan(s) | | 502. Settlement Charges to Seller (line 1400) | $14,012.83 |
| 203. Existing loan(s) taken subject to | | 503. Existing Loan(s) Taken Subject to | |
| 204. Loan Amount 2nd Lien | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. County taxes        01/01/10 thru 10/27/10 | $1,409.56 | 510. County taxes        01/01/10 thru 10/27/10 | $1,409.56 |
| 211. HOA Dues | | 511. HOA Dues | |
| 212. | | 512. | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | $7,409.56 | 520. Total Reduction Amount Due Seller | $15,422.44 |
| 300. Cash At Settlement From/To Borrower | | 600. Cash At Settlement To/From Seller | |
| 301. Gross Amount due from borrower (line 120) | $42,169.35 | 601. Gross Amount due to seller (line 420) | $40,741.85 |
| 302. Less amounts paid by/for borrower (line 220) | $7,409.56 | 602. Less reductions in amt. due seller (line 520) | $15,422.44 |
| 303. Cash From Borrower | $34,759.79 | 603. Cash To Seller | $25,319.41 |

Section 5 of the Real Estate Settlement Procedures Act (RESPA) requires the following: • HUD must develop a Special Information Booklet to help persons borrowing money to finance the purchase of residential real estate to better understand the nature and costs of real estate settlement services; • Each lender must provide the booklet to all applicants from whom it receives or for whom it prepares a written application to borrow money to finance the purchase of residential real estate; • Lenders must prepare and distribute with the Booklet a Good Faith Estimate of the settlement costs that the borrower is likely to incur in connection with the settlement.  These disclosures are mandatory.

Section 4(a) of RESPA mandates that HUD develop and prescribe this standard form to be used at the time of loan settlement to provide full disclosure of all charges imposed upon the borrower and seller.  These are third party disclosures that are designed to provide the borrower with pertinent information during the settlement process in order to be a better shopper. The Public Reporting Burden for this collection of information is estimated to average one hour per response, including the time for reviewing instructions searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number. The information requested does not lend itself to confidentiality.

File No. 10-09094

## L. Settlement Charges

| | | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|---|
| 700. Total Sales/Broker's Commission based on price $37,500.00 @ % = $1,875.00 | | | | |
| Division of Commission (line 700) as follows: | | | | |
| 701. $400.00 | to | Home and Land Brokers, Inc. | | |
| 702. $1,475.00 | to | REDC | | |
| 703. Commission Paid at Settlement | | | $0.00 | $1,875.00 |
| 800. Items Payable in Connection with Loan | | | | |
| 801. Loan Origination Fee    % | to | | | |
| 802. Loan Discount    % | to | | | |
| 803. Appraisal Fee | to | | | |
| 804. Credit Report | to | | | |
| 805. Lender's Inspection Fee | to | | | |
| 806. Mortgage Insurance Application | to | | | |
| 807. Assumption Fee | to | | | |
| 900. Items Required by Lender To Be Paid in Advance | | | | |
| 901. Interest from 10/27/2010 to 11/1/2010 @ $0/day | | | | |
| 902. Mortgage Insurance Premium for months | to | | | |
| 903. Hazard Insurance Premium for years | to | | | |
| 1000. Reserves Deposited With Lender | | | | |
| 1001. Hazard insurance | months @ | $0.00 per month | $0.00 | |
| 1002. Mortgage insurance | months @ | $0.00 per month | $0.00 | |
| 1003. City property taxes | months @ | $0.00 per month | $0.00 | |
| 1004. County taxes | months @ | $0.00 per month | $0.00 | |
| 1005. Assessment Taxes | months @ | $0.00 per month | $0.00 | |
| 1006. School property taxes | months @ | $0.00 per month | $0.00 | |
| 1007. HOA Dues | months @ | $0.00 per month | $0.00 | |
| 1008. Other taxes | months @ | $0.00 per month | $0.00 | |
| 1009. Flood Insurance | 0 months @ | $0.00 per month | $0.00 | |
| 1011. Aggregate Adjustment | | | $0.00 | |
| 1100. Title Charges | | | | |
| 1101. Closing Services | to | Kahane & Associates, P.A. | $475.00 | $585.00 |
| 1102. Abstract or title search | to | Kahane & Assoc./Fidelity National Title | | $395.00 |
| 1103. Title examination | to | | | |
| 1104. Title insurance binder | to | | | |
| 1105. Document preparation | to | | | |
| 1106. Mobile Closer Fee | to | | | |
| 1107. Attorney's fees | to | | | |
| (includes above items numbers: | | ) | | |
| 1108. Title insurance | to | Kahane & Assoc./Fidelity National Title | | |
| (includes above items numbers: | | ) | | |
| 1109. Lender's coverage | $0.00/$0.00 . | | | |
| 1110. Owner's coverage | $40,000.00/$0.00 | | | |
| 1111. Lien Search | to | Lightning Lien Letters | | $144.00 |
| 1112. | to | | | |
| 1200. Government Recording and Transfer Charges | | | | |
| 1201. Recording Fees    Deed $27.50 ; Mortgage ; Rel | to Clerk of Court Lee County | | $27.50 | |
| 1202. City/county tax/stamps    Deed ; Mortgage | to Clerk of Court Lee County | | | |
| 1203. State tax/stamps    Deed $280.00 ; Mortgage | to Clerk of Court Lee County | | | $280.00 |
| 1204. Recordings (QCDPOA, Aff, Rel, Res, Etc. ) | to | Clerk of Court Lee County | | $89.20 |
| 1205. | to | | | |
| 1300. Additional Settlement Charges | | | | |
| 1301. Reimbursement of estoppel fees | to | Kahane & Associates, P.A. | | $312.00 |
| 1302. Curative Fee | to | LPS Default Title and Closing | | $50.00 |
| 1303. Doc Review Fee | to | OneWest Services, LLC | $75.00 | |
| 1304. Management Fee | to | OneWest Services, LLC | | $350.00 |
| 1305. 2009 Property Taxes- Paid 11/25/09 | to | Lee County Tax Collector    POC $1,646.37 | | |
| 1306. O/S Utilities | to | | | |
| 1307. HOA Working Capital | to | Benson's Inc | | $700.00 |
| 1308. HOA Assessments thru | to | Benson's Inc | | $6,741.68 |
| 1309. HOA Transfer Fee | to | Benson's Inc | $700.00 | |
| 1310. HOA Post Closing Fee | to | Benson's Inc | $150.00 | |
| 1311. Buyer's Premium | to | REDC | | $2,500.00 |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | | $1,427.50 | $14,012.88 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a completed copy of pages 1, 2 and 3 of this HUD-1 Settlement Statement.

File No. 10-09094

Laurent Shabani,

President

Deutsche Bank National Trust Company, as Trustee of the IndyMac IMSC Mortgage Loan Trust 2007-AR1, Mortgage Pass-Through Certificates, Series 2007-AR1 under the Pooling and Servicing Agreement dated June 1, 2007.

BY: _____

## SETTLEMENT AGENT CERTIFICATION

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused the funds to be disbursed in accordance with this statement.

Grace Phillius                                          10/27/10
                                                              Date

**Warning:** It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

 

This document was prepared by:

Kahane and Associates, P.A.
8201 Peters Road, Ste 3000
Plantation, Fl 33324
File #

# TITLE AFFIDAVIT

STATE OF
COUNTY OF

The undersigned Affiant,                          being duly sworn, deposes and says:

                                                                    is purchasing the following

described property from D

That I have personal knowledge of the facts stated herein.

Affiant ,                          is authorized by the Board members of
                                                          to sign on their behalf for the purchase of the
property located at                                                                                    e
Board Members  as personal knowledge of the facts recited herein. That the Board of
of the corporation have ratified and approved the subject transaction and
authorized Affiant to execute any and all documentation with respect thereto for
the property described as follows:

All recording references set forth herein are to the Public Records of
in the State of Florida unless otherwise noted. This affidavit is given for the
purpose of clearing any possible question or objection to the title to the above
referenced property and for the purpose of inducing Kahane & Associates, P.A.
and Fidelity National title Insurance Company to issue title insurance on the
subject property, with the knowledge that said title companies are relying upon
the statements set forth herein.

The Company is duly incorporated, existing and operating under the laws of the
State of Florida and is in good standing under the laws of said state. Said
corporation has not been dissolved or otherwise terminated.  Affiant further
states they are familiar with the nature of an oath, and with the penalties as
provided by the laws of the State of          for falsely swearing to statements
made in an instrument of this nature. Affiant further certifies they have read, or
heard read to them, the full facts of this affidavit, and understand its contents.

FURTHER AFFIANT SAYETH NAUGHT.

Province
STATE OF: Ontario                          By
COUNTY OF Peel                              Laurent Shabani, President

I HEREBY CERTIFY that on this day personally appeared before me,
, duly authorized to administer oaths and take acknowledgments, and who are who
produced Drivers License          as identification, and who acknowledged that they signed
the foregoing document.

WITNESS my hand and official seal this  28    day of October 2010

My Commission Expires:                     NOTARY PUBLIC -

          Indefinite

# Name and Signature Affidavit

BEFORE ME, the undersigned Notary Public, on this day personally appeared the person who signed this Affidavit, and who, after being duly sworn by me, did on his or her oath state the following:

My legal name is:

*Laurent Shabani*

(Print or Type Name)

My legal signature is:

Signature (exactly as I signed the Security Instrument)

I am also known as:

_____
(Print or Type Name)

_____
(Print or Type Name)

_____
(Print or Type Name)

_____
(Print or Type Name)

State of   Ontario
County of   Peel

The foregoing instrument was sworn to and subscribed before me this  25  day of October, 2010 by    who is personally known or has produced a driver's license as identification.

_____
Notary Public

Printed Name:   Stuart Reddington

My Commission Expires:   I do Este

Prepared by:  Grace Philius
Kahane and Associates, P.A.
8201 Peters Road, Suite 4100
Plantation, FL 33324

File Number:  10-09094

 

# "As-Is" Property Condition
# Acknowledgment

Seller:      Deutsche Bank National Trust Company, as Trustee of the IndyMac IMSC Mortgage
             Loan Trust 2007-AR1, Mortgage Pass-Through Certificates, Series 2007-AR1 under the
             Pooling and Servicing Agreement dated June 1, 2007
Buyer:       Labb Investments inc., an Ontario Canada Corporation
Property:    11001 Gulf Reflections Drive #103, Fort Myers, FL 33908
Closing Date: October 27, 2010
Loan Number: FF1170
File Number: 10-09094

Buyer hereby certifies that Buyer has investigated the adequacy and conditions of the above referenced property and is satisfied with the "as-is" condition. Buyer is aware that Buyer is purchasing the property without the benefit of a warranty.

The above is certified to be true and correct. Buyer shall include singular or plural as the context so requires or admits.

Laurent Shabani,

President



# Closing Affidavit
## (Buyer)

**Before me,** the undersigned authority, personally appeared , Laurent Shabani of LABB INVESTMENTS INC., AN ONTARIO CANADA CORPORATION, on behalf of the Corporation, ("Affiant"), who being by me first duly sworn, on oath, depose(s) and say(s) that:

1.  Labb Investments inc., an Ontario Canada Corporation ("Buyer") , is purchasing the following described property from Deutsche Bank National Trust Company, as Trustee of the IndyMac IMSC Mortgage Loan Trust 2007-AR1, Mortgage Pass-Through Certificates, Series 2007-AR1 under the Pooling and Servicing Agreement dated June 1, 2007, to wit:

    Condominium Unit No. 103, Building A, of GULF REFLECTIONS, a Condominium, according to the Declaration of Condominium thereof, as recorded in Official Records Book 4546, at Page 3735, of the Public Records of Lee County, Florida.

2.  Buyer's marital status as reflected in this affidavit and the other closing documents is true and correct.  The Buyer is of legal age and has never been adjudged incompetent.  There are no matters pending against the Buyer that could give rise to a lien that would attach to the property prior to the recording of the interests to be insured, and Buyer has not and will not execute any instrument (nor permit any action to be taken) that would adversely affect the title or interests to be insured.  There are no judgments or liens against Buyer and no bankruptcy proceedings are currently pending with respect to Buyer.

3.  To the best of Buyer's knowledge, information, and belief: (a) within the past 90 days there have been no improvements, alterations, or repairs to the above described property for which the costs thereof remain unpaid, and that within the past 90 days there have been no claims for labor or material furnished for repairing or improving the same, which remain unpaid; (b) there are no actual or potential mechanic's, materialmen's, or laborer's liens against the property; (c) there are no tenancies, leases or other occupancies (oral or written) affecting the property; (d) no other person or entity has any contract to purchase, option to purchase, right of first refusal, or other potential claim of right to purchase the property.

4.  Buyer knows of no violations of municipal ordinances pertaining to the property, or any action or proceeding relating to the property which is pending in any court, nor does the Buyer know of any judgment, tax lien, or matter of any nature whatsoever which could create a lien or charge upon the property.  Buyer has no knowledge of any matters that could or does create a cloud on the title to the subject property.

5.  This affidavit is given for the purpose of clearing any possible question or objection to the title to the above referenced property and, for the purpose of inducing Kahane & Associates, P.A. and Fidelity National Title Insurance Company  to issue title insurance on the subject property, with knowledge that said title companies relying upon the statements set forth herein.

6.  Buyer hereby holds Kahane & Associates, P.A. and Fidelity National Title Insurance Company harmless and fully indemnifies same (including but not limited to attorney's fees, whether suit be brought or not, and at trial and all appellate levels, and court costs and other litigation expenses) with respect to the matters set forth herein. "Affiant", "Seller" and "Buyer" include singular or plural as context so requires or admits.  This affidavit is made under the laws of the penalties of perjury.  Buyer is familiar with the nature of an oath and with the penalties as provided by the laws of the United States and the State of Florida for falsely swearing to statements made in an instrument of this nature.  Buyer has read, or heard read, the full facts of this Affidavit and understands its context.

*Closing Affidavit (Buyer)* - Page 1
File Number:  10-09094

Further Affiant sayeth not.

Laurent Shabani,

President

State of _Ontario_
~~P-vinie~~

County of _Peel_

The foregoing instrument was acknowledged before me this _28_ day of October, 2010, by _Laurent Shabani_
, _President_     of LABB INVESTMENTS INC., AN ONTARIO CANADA CORPORATION, on behalf of the
Corporation, he/she ( ) is personally known to me or (X) has produced _Drivers License_ as identification.

_____
Notary Public

Printed Name: _Stuart Reddington_

My Commission Expires: _Indefinite_

*Closing Affidavit (Buyer)* - Page 2
File Number: 10-09094




# Closing Statement Addendum

Seller:     Deutsche Bank National Trust Company, as Trustee of the IndyMac IMSC Mortgage Loan Trust 2007-AR1, Mortgage Pass-Through Certificates, Series 2007-AR1 under the Pooling and Servicing Agreement dated June 1, 2007

Buyer:     Labb Investments inc., an Ontario Canada Corporation

Property:     11001 Gulf Reflections Drive #103 Fort Myers, FL 33908

Closing Agent:     Kahane and Associates, P.A.

Closing Date:     October 27, 2010

File Number:     10-09094

**TAX RE-PRORATION AGREEMENT:** If the most recent property tax bill issued does not cover through the closing date, then the tax prorations set forth on the settlement statement are based upon an estimate. The basis of proration as set forth on the settlement statement is hereby accepted by the parties to this transaction. It is hereby understood and agreed that the actual taxes, if different, will NOT be adjusted between the parties upon demand. Closing Agent is not liable or responsible for adjustment or re-proration of taxes. Closing Agent is not responsible or liable for additional taxes, other charges or tax refunds, if any, and shall not be liable should any of the parties to this transaction fail or refuse to re-prorate the taxes.

**AGREEMENT TO COOPERATE:** If requested by Lender (if any), Closing Agent, Title Agent or Title Underwriter, the parties agree to fully cooperate and adjust for clerical errors, including the execution or re-execution of any reasonable documentation and/or the remittance of any additional sums.

**HOMEOWNER'S/CONDOMINIUM ASSOCIATIONS:** The Buyer(s) acknowledge(s) the existence of any homeowner's and/or condominium association(s) and is aware that monthly, quarterly or annual maintenance assessments may be due to said association(s). Said association(s) may also have the authority to regulate and enforce community covenants and restrictions. The Buyer hereby acknowledges receipt of a copy of any association estoppel letters for the subject transaction.

**MISCELLANEOUS:** Closing Agent does not make any representations or warranties nor assumes any liability with respect to the physical condition of the property, or any repairs to the property. Buyer has been advised and encouraged to secure hazard insurance coverage prior to completion of closing. If a survey was prepared for the subject transaction, then the Buyer hereby acknowledges receipt of a copy thereof. The buyer has reviewed said survey and accepts title subject to the matters set forth thereon. Buyer has received and reviewed the proposed deed and is satisfied with and approves the manner which title is being held.

**DISBURSEMENT AUTHORIZATION, ETC:** Closing Agent does not adjust or assume liability for charges for water, rents, gas, electricity, taxes on personal property, garbage taxes or fees, license fees or taxes, service/maintenance contracts (pest control, appliance maintenance, pool care, lawn care, alarm systems, etc.), association assessments or dues, or estoppel information furnished by mortgagees or others. The settlement statement has been reviewed and approved and Closing Agent is irrevocably authorized and directed to complete the closing of the transaction and make disbursement in accordance therewith. In the event of mortgage assumption, if Seller has received a credit for the escrow account balance, then Seller hereby assigns all right, title and interest in said account to Buyer. Seller, Buyer, and Borrower are used for singular or plural, as the context so requires or admits. This Agreement is being provided as an inducement for Closing Agent to serve as the closing agent and for Title Agent and Title Underwriter to issue title insurance on the subject transaction.

Buyer:

Laurent Shabes

President