# EXHIBIT A

2016 WL 1092414, 26 Wage & Hour Cas.2d (BNA) 297, 16 Cal. Daily Op. Serv. 3006

2016 WL 1092414
Supreme Court of the United States

TYSON FOODS, INC., Petitioner
v.
Peg BOUAPHAKEO, et al., individually and
on behalf of all others similarly situated.

No. 14–1146.
|
Argued Nov. 10, 2015.
|
Decided March 22, 2016.

**Synopsis**

**Background:** Employees of Iowa meat processing facility sued employer for not paying overtime wages due under Fair Labor Standards Act (FLSA) and Iowa Wage Payment Collection Law (IWPCL), relating to time spent donning and doffing protective gear. FLSA claim was certified as collective action and IWPCL claim as class action. The United States District Court for the Northern District of Iowa, John A. Jarvey, J., 2011 WL 3793962, denied employer's motion for decertification of Rule 23 class and, after jury returned verdict for class, denied employer's motion for judgment as matter of law (JMOL) and motion to decertify or, in the alternative, for new trial on damages, 2012 WL 4471119. Employer appealed. The United States Court of Appeals for the Eighth Circuit, Benton, Circuit Judge, 765 F.3d 791, affirmed, and denied rehearing and rehearing en banc, 593 Fed.Appx. 578. Certiorari was granted.

**[Holding:]** The Supreme Court, Justice Kennedy, held that representative proof from a sample, based on an expert witness's estimation of average time that employees spent donning and doffing protective gear, could be used to show predominance of common questions of law or fact.

Affirmed.

Chief Justice Roberts filed a concurring opinion, which Justice Alito joined in part.

Justice Thomas filed a dissenting opinion, which Justice Alito joined.

West Headnotes (12)

**[1]    Labor and Employment**
    ⬤ Notice and Opting-In

While a class, for a class action under the federal rules of civil procedure, includes all unnamed members who fall within the class definition, the sole consequence of conditional certification of a collective action under the FLSA is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court. Fair Labor Standards Act of 1938, § 16, 29 U.S.C.A. § 216; Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

Cases that cite this headnote

**[2]    Federal Civil Procedure**
    ⬤ Common Interest in Subject Matter, Questions and Relief; Damages Issues

The predominance inquiry regarding whether questions of law or fact common to class members predominate over any questions affecting only individual members, as basis for class certification, tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

2 Cases that cite this headnote

**[3]    Federal Civil Procedure**
    ⬤ Common Interest in Subject Matter, Questions and Relief; Damages Issues

An individual question, for purposes of predominance inquiry regarding whether questions of law or fact common to class members predominate over any questions affecting only individual members, as basis for class certification, is one where members of a

proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof. Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

3 Cases that cite this headnote

**[4]     Federal Civil Procedure**
         ☞ Common Interest in Subject Matter, Questions and Relief; Damages Issues

The predominance inquiry regarding whether questions of law or fact common to class members predominate over any questions affecting only individual members, as basis for class certification, asks whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating individual issues. Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

2 Cases that cite this headnote

**[5]     Federal Civil Procedure**
         ☞ Common Interest in Subject Matter, Questions and Relief; Damages Issues

When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper for class certification even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members. Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

Cases that cite this headnote

**[6]     Evidence**
         ☞ Nature and Source of Evidence in General
         **Federal Civil Procedure**

☞ Evidence; Pleadings and Supplementary Material

A representative or statistical sample, like all evidence, is a means to establish or defend against liability, and its permissibility turns not on the form a proceeding takes, be it a class action or individual action, but on the degree to which the evidence is reliable in proving or disproving the elements of the relevant cause of action. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.; Fed.Rules Evid.Rules 401, 403, 702, 28 U.S.C.A.

Cases that cite this headnote

**[7]     Federal Civil Procedure**
         ☞ Evidence; Pleadings and Supplementary Material

Whether and when statistical evidence can be used to establish classwide liability will depend on the purpose for which the evidence is being introduced and on the elements of the underlying cause of action. Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

Cases that cite this headnote

**[8]     Federal Civil Procedure**
         ☞ Evidence; Pleadings and Supplementary Material

In a case where representative evidence is relevant in proving a plaintiff's individual claim, that evidence cannot be deemed improper merely because the claim is brought on behalf of a class; to so hold would ignore the Rules Enabling Act's pellucid instruction that use of the class device cannot abridge any substantive right. 28 U.S.C.A. § 2072(b); Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

Cases that cite this headnote

**[9]     Labor and Employment**
         ☞ Working Time

**Tyson Foods, Inc. v. Bouaphakeo, --- S.Ct. ---- (2016)**

2016 WL 1092414, 26 Wage & Hour Cas.2d (BNA) 297, 16 Cal. Daily Op. Serv. 3006

When employers violate their statutory duty to keep proper records, and employees thereby have no way to establish the time spent doing uncompensated work, the remedial nature of the FLSA and the great public policy which it embodies militate against making the burden of proving uncompensated work an impossible hurdle for the employee, and an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference; under these circumstances, the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. Fair Labor Standards Act of 1938, § 1 et seq., 29 U.S.C.A. § 201 et seq.

Cases that cite this headnote

**[10]**    **Federal Civil Procedure**
    ⚬ Evidence; Pleadings and Supplementary Material

**Federal Civil Procedure**
    ⚬ Employees

**Labor and Employment**
    ⚬ Employees Similarly Situated

Representative proof from a sample, based on an expert witness's estimation of average time that employees at pork processing plant spent donning and doffing protective gear, could be used by employees to fill the evidentiary gap created by employer's failure to keep adequate records of time spent donning and doffing, for purposes of employees showing the predominance of common questions of law or fact, as basis for class certification of overtime claims under Iowa Wage Payment Collection Law (IWPCL) and certification of collective action for overtime pay under the FLSA; each class member likely could have relied on the sample to establish liability if he or she had brought an individual action, since employees

worked in same facility, they did similar work, and they were paid under same policy. Fair Labor Standards Act of 1938, §§ 7(a), 16, 29 U.S.C.A. §§ 207(a), 216; Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

Cases that cite this headnote

**[11]**    **Federal Civil Procedure**
    ⚬ Consideration of Merits

**Federal Civil Procedure**
    ⚬ Matters Affecting Right to Judgment

When the concern about the proposed class is not that it exhibits some fatal dissimilarity but, rather, a fatal similarity, i.e., an alleged failure of proof as to an element of the plaintiffs' cause of action, courts should engage that question as a matter of summary judgment, not class certification. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

1 Cases that cite this headnote

**[12]**    **Federal Civil Procedure**
    ⚬ Weight and Sufficiency of Evidence

Once a district court finds evidence to be admissible, its persuasiveness is, in general, a matter for the jury.

Cases that cite this headnote

*Syllabus* [*]

**\*1** Respondents, employees of petitioner Tyson Foods, work in the kill, cut, and retrim departments of a pork processing plant in Iowa. Respondents' work requires them to wear protective gear, but the exact composition of the gear depends on the tasks a worker performs on a given day. Petitioner compensated some, but not all, employees for this donning and doffing, and did not record the time each employee spent on those activities. Respondents filed suit, alleging that the donning and doffing were integral and indispensable to their hazardous work and that petitioner's

policy not to pay for those activities denied them overtime compensation required by the Fair Labor Standards Act of 1938 (FLSA). Respondents also raised a claim under an Iowa wage law. They sought certification of their state claims as a class action under Federal Rule of Civil Procedure 23 and certification of their FLSA claims as a "collective action." See 29 U.S.C. § 216. Petitioner objected to certification of both classes, arguing that, because of the variance in protective gear each employee wore, the employees' claims were not sufficiently similar to be resolved on a classwide basis. The District Court concluded that common questions, such as whether donning and doffing protective gear were compensable under the FLSA, were susceptible to classwide resolution even if not all of the workers wore the same gear. To recover for a violation of the FLSA's overtime provision, the employees had to show that they each worked more than 40 hours a week, inclusive of the time spent donning and doffing. Because petitioner failed to keep records of this time, the employees primarily relied on a study performed by an industrial relations expert, Dr. Kenneth Mericle. Mericle conducted videotaped observations analyzing how long various donning and doffing activities took, and then averaged the time taken to produce an estimate of 18 minutes a day for the cut and retrim departments and 21.25 minutes for the kill department. These estimates were then added to the timesheets of each employee to ascertain which class members worked more than 40 hours a week and the value of classwide recovery. Petitioner argued that the varying amounts of time it took employees to don and doff different protective gear made reliance on Mericle's sample improper, and that its use would lead to recovery for individuals who, in fact, had not worked the requisite 40 hours. The jury awarded the class about $2.9 million in unpaid wages. The award has not yet been disbursed to individual employees. The Eighth Circuit affirmed the judgment and the award.

*Held* : The District Court did not err in certifying and maintaining the class. Pp. ——— ———.

(a) Before certifying a class under Rule 23(b)(3), a district court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members." The parties agree that the most significant question common to the class is whether donning and doffing protective gear is compensable under the FLSA. Petitioner claims, however, that individual inquiries into the time each worker spent donning and doffing predominate over this common question. Respondents argue that individual inquiries are unnecessary because it can be assumed each employee donned and doffed for the same average time observed in Mericle's sample.

Whether and when statistical evidence such as Mericle's sample can be used to establish classwide liability depends on the purpose for which the evidence is being introduced and on "the elements of the underlying cause of action," *Erica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. 804, 809, 131 S.Ct. 2179, 180 L.Ed.2d 24. Because a representative sample may be the only feasible way to establish liability, it cannot be deemed improper merely because the claim is brought on behalf of a class. Respondents can show that Mericle's sample is a permissible means of establishing hours worked in a class action by showing that each class member could have relied on that sample to establish liability had each brought an individual action.

*\*2* *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515, shows why Mericle's sample was permissible in the circumstances of this case. There, where an employer violated its statutory duty to keep proper records, the Court concluded the employees could meet their burden by proving that they in fact "performed work for which [they were] improperly compensated and ... produc[ing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.,* at 687, 66 S.Ct. 1187. Here, similarly, respondents sought to introduce a representative sample to fill an evidentiary gap created by the employer's failure to keep adequate records. Had the employees proceeded with individual lawsuits, each employee likely would have had to introduce Mericle's study to prove the hours he or she worked. The representative evidence was a permissible means of showing individual hours worked.

This holding is in accord with *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 131 S.Ct. 2541, 180 L.Ed.2d 374, where the underlying question was, as here, whether the sample at issue could have been used to establish liability in an individual action. There, the employees were not similarly situated, so none of them could have prevailed in an individual suit by relying on depositions detailing the ways in which other employees were discriminated against by their particular store managers. In contrast, the employees here, who worked in the same facility, did similar work, and were paid under the same

**Tyson Foods, Inc. v. Bouaphakeo, --- S.Ct. ---- (2016)**

2016 WL 1092414, 26 Wage & Hour Cas.2d (BNA) 297, 16 Cal. Daily Op. Serv. 3006

policy, could have introduced Mericle's study in a series of individual suits.

This case presents no occasion for adoption of broad and categorical rules governing the use of representative and statistical evidence in class actions. Rather, the ability to use a representative sample to establish classwide liability will depend on the purpose for which the sample is being introduced and on the underlying cause of action. In FLSA actions, inferring the hours an employee has worked from a study such as Mericle's has been permitted by the Court so long as the study is otherwise admissible. *Mt. Clemens, supra,* at 687, 66 S.Ct. 1187. Pp. ——– ——.

(b) Petitioner contends that respondents are required to demonstrate that uninjured class members will not recover damages here. That question is not yet fairly presented by this case, because the damages award has not yet been disbursed and the record does not indicate how it will be disbursed. Petitioner may raise a challenge to the allocation method when the case returns to the District Court for disbursal of the award. Pp. ——– ——.

**\*3** 765 F.3d 791, affirmed and remanded.

KENNEDY, J., delivered the opinion of the Court, in which ROBERTS, C.J., and GINSBURG, BREYER, SOTOMAYOR, and KAGAN, JJ., joined. ROBERTS, C.J., filed a concurring opinion, in which ALITO, J., joined as to Part II. THOMAS, J., filed a dissenting opinion, in which ALITO, J., joined.

**Attorneys and Law Firms**

Carter G. Phillips, Washington, DC, for Petitioner.

David C. Frederick, Washington, DC, for Respondents.

Elizabeth B. Prelogar, for the United States as amicus curiae, by special leave of the Court, supporting the respondents.

Robert L. Wiggins, Jr., Wiggins, Childs, Quinn, & Pantazis, LLC, Birmingham, AL, Scott Michelman, Counsel of Record, Scott L. Nelson, Public Citizen, Litigation Group, Washington, DC, for Respondents.

Michael J. Mueller, Emily Burkhardt, Vicente, Evangeline C. Paschal, Hunton & Williams, Washington, DC, Carter G. Phillips, Joseph R. Guerra, C. Frederick Beckner III, Kathleen Moriarty, Mueller, Christopher A. Eiswerth, Sidley Austin LLP, Washington, DC, for Petitioner.

David C. Frederick, Derek T. Ho, Matthew A. Seligman, Kellogg, Huber, Hansen, Todd, Evans & Figel, PLLC, Washington, DC, Robert L. Wiggins, Jr., Wiggins, Childs, Pantazis, Fisher & Goldfarb, LLC, Birmingham, AL, Scott Michelman, Scott L. Nelson, Allison M. Zieve, Public Citizen, Litigation Group, Washington, DC, Eric Schnapper, Univ. of Washington, School of Law, Seattle, WA, for Respondents.

**Opinion**

Justice KENNEDY delivered the opinion of the Court.

Following a jury trial, a class of employees recovered $2.9 million in compensatory damages from their employer for a violation of the Fair Labor Standards Act of 1938 (FLSA), 52 Stat. 1060, as amended, 29 U.S.C. § 201 *et seq.* The employees' primary grievance was that they did not receive statutorily mandated overtime pay for time spent donning and doffing protective equipment.

The employer seeks to reverse the judgment. It makes two arguments. Both relate to whether it was proper to permit the employees to pursue their claims as a class. First, the employer argues the class should not have been certified because the primary method of proving injury assumed each employee spent the same time donning and doffing protective gear, even though differences in the composition of that gear may have meant that, in fact, employees took different amounts of time to don and doff. Second, the employer argues certification was improper because the damages awarded to the class may be distributed to some persons who did not work any uncompensated overtime.

The Court of Appeals for the Eighth Circuit concluded there was no error in the District Court's decision to certify and maintain the class. This Court granted certiorari. 576 U.S. ——, 135 S.Ct. 2806, 192 L.Ed.2d 846 (2015).

2016 WL 1092414, 26 Wage & Hour Cas.2d (BNA) 297, 16 Cal. Daily Op. Serv. 3006

I

*4 Respondents are employees at petitioner Tyson Foods' pork processing plant in Storm Lake, Iowa. They work in the plant's kill, cut, and retrim departments, where hogs are slaughtered, trimmed, and prepared for shipment. Grueling and dangerous, the work requires employees to wear certain protective gear. The exact composition of the gear depends on the tasks a worker performs on a given day.

Until 1998, employees at the plant were paid under a system called "gang-time." This compensated them only for time spent at their workstations, not for the time required to put on and take off their protective gear. In response to a federal-court injunction, and a Department of Labor suit to enforce that injunction, Tyson in 1998 began to pay all its employees for an additional four minutes a day for what it called "K-code time." The 4–minute period was the amount of time Tyson estimated employees needed to don and doff their gear. In 2007, Tyson stopped paying K-code time uniformly to all employees. Instead, it compensated some employees for between four and eight minutes but paid others nothing beyond their gang-time wages. At no point did Tyson record the time each employee spent donning and doffing.

Unsatisfied by these changes, respondents filed suit in the United States District Court for the Northern District of Iowa, alleging violations of the FLSA. The FLSA requires that a covered employee who works more than 40 hours a week receive compensation for excess time worked "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). In 1947, nine years after the FLSA was first enacted, Congress passed the Portal–to–Portal Act, which clarified that compensable work does not include time spent walking to and from the employee's workstation or other "preliminary or postliminary activities." § 254(d). The FLSA, however, still requires employers to pay employees for activities "integral and indispensable" to their regular work, even if those activities do not occur at the employee's workstation. *Steiner v. Mitchell,* 350 U.S. 247, 249, 255, 76 S.Ct. 330, 100 L.Ed. 267 (1956). The FLSA also requires an employer to "make, keep, and preserve ... records of the persons employed by him and of the wages, hours, and other conditions and practices of employment." § 211(c).

In their complaint, respondents alleged that donning and doffing protective gear were integral and indispensable to their hazardous work and that petitioner's policy not to pay for those activities denied them overtime compensation required by the FLSA. Respondents also raised a claim under the Iowa Wage Payment Collection Law. This statute provides for recovery under state law when an employer fails to pay its employees "all wages due," which includes FLSA-mandated overtime. Iowa Code § 91A.3 (2013); cf. *Anthony v. State,* 632 N.W.2d 897, 901–902 (Iowa 2001).

Respondents sought certification of their Iowa law claims as a class action under Rule 23 of the Federal Rules of Civil Procedure. Rule 23 permits one or more individuals to sue as "representative parties on behalf of all members" of a class if certain preconditions are met. Fed. Rule Civ. Proc. 23(a). Respondents also sought certification of their federal claims as a "collective action" under 29 U.S.C. § 216. Section 216 is a provision of the FLSA that permits employees to sue on behalf of "themselves and other employees similarly situated." § 216(b).

*5 Tyson objected to the certification of both classes on the same ground. It contended that, because of the variance in protective gear each employee wore, the employees' claims were not sufficiently similar to be resolved on a classwide basis. The District Court rejected that position. It concluded there were common questions susceptible to classwide resolution, such as "whether the donning and doffing of [protective gear] is considered work under the FLSA, whether such work is integral and [in]dispensable, and whether any compensable work is *de minim[i]s.*" 564 F.Supp.2d 870, 899 (N.D.Iowa 2008). The District Court acknowledged that the workers did not all wear the same protective gear, but found that "when the putative plaintiffs are limited to those that are paid via a gang time system, there are far more factual similarities than dissimilarities." *Id.,* at 899–900. As a result, the District Court certified the following classes:

"All current and former employees of Tyson's Storm Lake, Iowa, processing facility who have been employed at any time from February 7, 2004 [in the case of the FLSA collective action and February 7, 2005, in the case of the state-law class action], to the present, and who are or were paid under a 'gang time' compensation system in the Kill, Cut, or Retrim departments." *Id.,* at 901.

**[1]** The only difference in definition between the classes was the date at which the class period began. The size of the class certified under Rule 23, however, was larger than that certified under § 216. This is because, while a class under Rule 23 includes all unnamed members who fall within the class definition, the "sole consequence of conditional certification [under § 216] is the sending of court-approved written notice to employees ... who in turn become parties to a collective action only by filing written consent with the court." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. ——, ——, 133 S.Ct. 1523, 1530, 185 L.Ed.2d 636 (2013). A total of 444 employees joined the collective action, while the Rule 23 class contained 3,344 members.

The case proceeded to trial before a jury. The parties stipulated that the employees were entitled to be paid for donning and doffing of certain equipment worn to protect from knife cuts. The jury was left to determine whether the time spent donning and doffing other protective equipment was compensable; whether Tyson was required to pay for donning and doffing during meal breaks; and the total amount of time spent on work that was not compensated under Tyson's gang-time system.

Since the employees' claims relate only to overtime, each employee had to show he or she worked more than 40 hours a week, inclusive of time spent donning and doffing, in order to recover. As a result of Tyson's failure to keep records of donning and doffing time, however, the employees were forced to rely on what the parties describe as "representative evidence." This evidence included employee testimony, video recordings of donning and doffing at the plant, and, most important, a study performed by an industrial relations expert, Dr. Kenneth Mericle. Mericle conducted 744 videotaped observations and analyzed how long various donning and doffing activities took. He then averaged the time taken in the observations to produce an estimate of 18 minutes a day for the cut and retrim departments and 21.25 minutes for the kill department.

**\*6** Although it had not kept records for time spent donning and doffing, Tyson had information regarding each employee's gang-time and K-code time. Using this data, the employees' other expert, Dr. Liesl Fox, was able to estimate the amount of uncompensated work each employee did by adding Mericle's estimated average donning and doffing time

to the gang-time each employee worked and then subtracting any K-code time. For example, if an employee in the kill department had worked 39.125 hours of gang-time in a 6-day workweek and had been paid an hour of K-code time, the estimated number of compensable hours the employee worked would be: 39.125 (individual number of gang-time hours worked) + 2.125 (the average donning and doffing hours for a 6–day week, based on Mericle's estimated average of 21.25 minutes a day) - 1 (K-code hours) = 40.25. That would mean the employee was being undercompensated by a quarter of an hour of overtime a week, in violation of the FLSA. On the other hand, if the employee's records showed only 38 hours of gang-time and an hour of K-code time, the calculation would be: 38 + 2.125 - 1 = 39.125. Having worked less than 40 hours, that employee would not be entitled to overtime pay and would not have proved an FLSA violation.

Using this methodology, Fox stated that 212 employees did not meet the 40–hour threshold and could not recover. The remaining class members, Fox maintained, had potentially been undercompensated to some degree.

Respondents proposed to bifurcate proceedings. They requested that, first, a trial be conducted on the questions whether time spent in donning and doffing was compensable work under the FLSA and how long those activities took to perform on average; and, second, that Fox's methodology be used to determine which employees suffered an FLSA violation and how much each was entitled to recover. Petitioner insisted upon a single proceeding in which damages would be calculated in the aggregate and by the jury. The District Court submitted both issues of liability and damages to the jury.

Petitioner did not move for a hearing regarding the statistical validity of respondents' studies under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), nor did it attempt to discredit the evidence with testimony from a rebuttal expert. Instead, as it had done in its opposition to class certification, petitioner argued to the jury that the varying amounts of time it took employees to don and doff different protective equipment made the lawsuit too speculative for classwide recovery. Petitioner also argued that Mericle's study overstated the average donning and doffing time. The jury was instructed that nontestifying members of the class could only recover if the evidence established they "suffered the same harm as a

result of the same unlawful decision or policy." App. 471–472.

Fox's calculations supported an aggregate award of approximately $6.7 million in unpaid wages. The jury returned a special verdict finding that time spent in donning and doffing protective gear at the beginning and end of the day was compensable work but that time during meal breaks was not. The jury more than halved the damages recommended by Fox. It awarded the class about $2.9 million in unpaid wages. That damages award has not yet been disbursed to the individual employees.

*7 Tyson moved to set aside the jury verdict, arguing, among other things, that, in light of the variation in donning and doffing time, the classes should not have been certified. The District Court denied Tyson's motion, and the Court of Appeals for the Eighth Circuit affirmed the judgment and the award.

The Court of Appeals recognized that a verdict for the employees "require[d] inference" from their representative proof, but it held that "this inference is allowable under *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686–688, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946)." 765 F.3d 791, 797 (8th Cir.2014). The Court of Appeals rejected petitioner's challenge to the sufficiency of the evidence for similar reasons, holding that, under the facts of this case, the jury could have drawn "a 'reasonable inference' of class-wide liability." *Id.,* at 799 (quoting *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946)). Judge Beam dissented, stating that, in his view, the class should not have been certified.

For the reasons that follow, this Court now affirms.

## II

Petitioner challenges the class certification of the state-law claims and the certification of the FLSA collective action. The parties do not dispute that the standard for certifying a collective action under the FLSA is no more stringent than the standard for certifying a class under the Federal Rules of Civil Procedure. This opinion assumes, without deciding, that this is correct. For purposes of this case then, if certification of respondents' class action under the Federal Rules was proper, certification of the collective action was proper as well.

Furthermore, as noted above, Iowa's Wage Payment Collection Law was used in this litigation as a state-law mechanism for recovery of FLSA-mandated overtime pay. The parties do not dispute that, in order to prove a violation of the Iowa statute, the employees had to do no more than demonstrate a violation of the FLSA. In this opinion, then, no distinction is made between the requirements for the class action raising the state-law claims and the collective action raising the federal claims.

### A

[2] [3] [4] [5] Federal Rule of Civil Procedure 23(b)(3) requires that, before a class is certified under that subsection, a district court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members." The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). This calls upon courts to give careful scrutiny to the relation between common and individual questions in a case. An individual question is one where "members of a proposed class will need to present evidence that varies from member to member," while a common question is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012) (internal quotation marks omitted). The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.,* § 4:49, at 195–196. When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–124 (3d ed. 2005) (footnotes omitted).

2016 WL 1092414, 26 Wage & Hour Cas.2d (BNA) 297, 16 Cal. Daily Op. Serv. 3006

Here, the parties do not dispute that there are important questions common to all class members, the most significant of which is whether time spent donning and doffing the required protective gear is compensable work under the FLSA. Cf. *IBP, Inc. v. Alvarez,* 546 U.S. 21, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005) (holding that time spent walking between the locker room and the production area after donning protective gear is compensable work under the FLSA). To be entitled to recovery, however, each employee must prove that the amount of time spent donning and doffing, when added to his or her regular hours, amounted to more than 40 hours in a given week. Petitioner argues that these necessarily person-specific inquiries into individual work time predominate over the common questions raised by respondents' claims, making class certification improper.

**\*8** Respondents counter that these individual inquiries are unnecessary because it can be assumed each employee donned and doffed for the same average time observed in Mericle's sample. Whether this inference is permissible becomes the central dispute in this case. Petitioner contends that Mericle's study manufactures predominance by assuming away the very differences that make the case inappropriate for classwide resolution. Reliance on a representative sample, petitioner argues, absolves each employee of the responsibility to prove personal injury, and thus deprives petitioner of any ability to litigate its defenses to individual claims.

**[6]** Calling this unfair, petitioner and various of its *amici* maintain that the Court should announce a broad rule against the use in class actions of what the parties call representative evidence. A categorical exclusion of that sort, however, would make little sense. A representative or statistical sample, like all evidence, is a means to establish or defend against liability. Its permissibility turns not on the form a proceeding takes—be it a class or individual action—but on the degree to which the evidence is reliable in proving or disproving the elements of the relevant cause of action. See Fed. Rules Evid. 401, 403, and 702.

**[7]** It follows that the Court would reach too far were it to establish general rules governing the use of statistical evidence, or so-called representative evidence, in all class-action cases. Evidence of this type is used in various substantive realms of the law. Brief for Complex Litigation Law Professors as *Amici Curiae* 5–9; Brief for Economists

et al. as *Amici Curiae* 8–10. Whether and when statistical evidence can be used to establish classwide liability will depend on the purpose for which the evidence is being introduced and on "the elements of the underlying cause of action," *Erica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. 804, 809, 131 S.Ct. 2179, 180 L.Ed.2d 24 (2011).

**[8]** In many cases, a representative sample is "the only practicable means to collect and present relevant data" establishing a defendant's liability. Manual of Complex Litigation § 11.493, p. 102 (4th ed. 2004). In a case where representative evidence is relevant in proving a plaintiff's individual claim, that evidence cannot be deemed improper merely because the claim is brought on behalf of a class. To so hold would ignore the Rules Enabling Act's pellucid instruction that use of the class device cannot "abridge ... any substantive right." 28 U.S.C. § 2072(b).

One way for respondents to show, then, that the sample relied upon here is a permissible method of proving classwide liability is by showing that each class member could have relied on that sample to establish liability if he or she had brought an individual action. If the sample could have sustained a reasonable jury finding as to hours worked in each employee's individual action, that sample is a permissible means of establishing the employees' hours worked in a class action.

**\*9** This Court's decision in *Anderson v. Mt. Clemens* explains why Mericle's sample was permissible in the circumstances of this case. In *Mt. Clemens,* 7 employees and their union, seeking to represent over 300 others, brought a collective action against their employer for failing to compensate them for time spent walking to and from their workstations. The variance in walking time among workers was alleged to be upwards of 10 minutes a day, which is roughly consistent with the variances in donning and doffing times here. 328 U.S., at 685, 66 S.Ct. 1187.

**[9]** The Court in *Mt. Clemens* held that when employers violate their statutory duty to keep proper records, and employees thereby have no way to establish the time spent doing uncompensated work, the "remedial nature of [the FLSA] and the great public policy which it embodies ... militate against making" the burden of proving uncompensated work "an impossible hurdle for the employee." *Id.,* at 687, 66 S.Ct. 1187; see also *Hoffmann–*

*La Roche Inc. v. Sperling,* 493 U.S. 165, 173, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989) ("The broad remedial goal of the statute should be enforced to the full extent of its terms"). Instead of punishing "the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work," the Court held "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." 328 U.S., at 687, 66 S.Ct. 1187. Under these circumstances, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.,* at 687–688, 66 S.Ct. 1187.

**[10]** In this suit, as in *Mt. Clemens,* respondents sought to introduce a representative sample to fill an evidentiary gap created by the employer's failure to keep adequate records. If the employees had proceeded with 3,344 individual lawsuits, each employee likely would have had to introduce Mericle's study to prove the hours he or she worked. Rather than absolving the employees from proving individual injury, the representative evidence here was a permissible means of making that very showing.

**[11]** Reliance on Mericle's study did not deprive petitioner of its ability to litigate individual defenses. Since there were no alternative means for the employees to establish their hours worked, petitioner's primary defense was to show that Mericle's study was unrepresentative or inaccurate. That defense is itself common to the claims made by all class members. Respondents' "failure of proof on th[is] common question" likely would have ended "the litigation and thus [would not have] cause[d] individual questions ... to overwhelm questions common to the class." *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds,* 568 U.S. ——, ——, 133 S.Ct. 1184, 1196, 185 L.Ed.2d 308 (2013). When, as here, "the concern about the proposed class is not that it exhibits some fatal dissimilarity but, rather, a fatal similarity—[an alleged] failure of proof as to an element of the plaintiffs' cause of action—courts should engage that question as a matter of summary judgment, not class certification." Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 107 (2009).

**\*10** Petitioner's reliance on *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011), is misplaced. *Wal–Mart* does not stand for the broad proposition that a representative sample is an impermissible means of establishing classwide liability.

*Wal–Mart* involved a nationwide Title VII class of over 1½ million employees. In reversing class certification, this Court did not reach Rule 23(b)(3)'s predominance prong, holding instead that the class failed to meet even Rule 23(a)'s more basic requirement that class members share a common question of fact or law. The plaintiffs in *Wal–Mart* did not provide significant proof of a common policy of discrimination to which each employee was subject. "The only corporate policy that the plaintiffs' evidence convincingly establishe[d was] Wal–Mart's 'policy' of allowing discretion by local supervisors over employment matters"; and even then, the plaintiffs could not identify "a common mode of exercising discretion that pervade[d] the entire company." *Id.,* at 355–356, 131 S.Ct. 2541 (emphasis deleted).

The plaintiffs in *Wal–Mart* proposed to use representative evidence as a means of overcoming this absence of a common policy. Under their proposed methodology, a "sample set of the class members would be selected, as to whom liability for sex discrimination and the backpay owing as a result would be determined in depositions supervised by a master." *Id.,* at 367, 131 S.Ct. 2541. The aggregate damages award was to be derived by taking the "percentage of claims determined to be valid" from this sample and applying it to the rest of the class, and then multiplying the "number of (presumptively) valid claims" by "the average backpay award in the sample set." *Ibid.* The Court held that this "Trial By Formula" was contrary to the Rules Enabling Act because it " ' 'enlarge[d]' " the class members' " 'substantive right[s]' " and deprived defendants of their right to litigate statutory defenses to individual claims. *Ibid.*

The Court's holding in the instant case is in accord with *Wal–Mart.* The underlying question in *Wal–Mart,* as here, was whether the sample at issue could have been used to establish liability in an individual action. Since the Court held that the employees were not similarly situated, none of them could have prevailed in an individual suit by relying on depositions detailing the ways in which other employees were discriminated against by their particular store managers. By

extension, if the employees had brought 1½million individual suits, there would be little or no role for representative evidence. Permitting the use of that sample in a class action, therefore, would have violated the Rules Enabling Act by giving plaintiffs and defendants different rights in a class proceeding than they could have asserted in an individual action.

**\*11** In contrast, the study here could have been sufficient to sustain a jury finding as to hours worked if it were introduced in each employee's individual action. While the experiences of the employees in *Wal–Mart* bore little relationship to one another, in this case each employee worked in the same facility, did similar work, and was paid under the same policy. As *Mt. Clemens* confirms, under these circumstances the experiences of a subset of employees can be probative as to the experiences of all of them.

This is not to say that all inferences drawn from representative evidence in an FLSA case are "just and reasonable." *Mt. Clemens*, 328 U.S., at 687, 66 S.Ct. 1187. Representative evidence that is statistically inadequate or based on implausible assumptions could not lead to a fair or accurate estimate of the uncompensated hours an employee has worked. Petitioner, however, did not raise a challenge to respondents' experts' methodology under *Daubert* ; and, as a result, there is no basis in the record to conclude it was legal error to admit that evidence.

**[12]** Once a district court finds evidence to be admissible, its persuasiveness is, in general, a matter for the jury. Reasonable minds may differ as to whether the average time Mericle calculated is probative as to the time actually worked by each employee. Resolving that question, however, is the near-exclusive province of the jury. The District Court could have denied class certification on this ground only if it concluded that no reasonable juror could have believed that the employees spent roughly equal time donning and doffing. Cf. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The District Court made no such finding, and the record here provides no basis for this Court to second-guess that conclusion.

The Court reiterates that, while petitioner, respondents, or their respective *amici* may urge adoption of broad and categorical rules governing the use of representative and statistical evidence in class actions, this case provides no

occasion to do so. Whether a representative sample may be used to establish classwide liability will depend on the purpose for which the sample is being introduced and on the underlying cause of action. In FLSA actions, inferring the hours an employee has worked from a study such as Mericle's has been permitted by the Court so long as the study is otherwise admissible. *Mt. Clemens, supra,* at 687, 66 S.Ct. 1187; see also Fed. Rules Evid. 402 and 702. The fairness and utility of statistical methods in contexts other than those presented here will depend on facts and circumstances particular to those cases.


**B**

**\*12** In its petition for certiorari petitioner framed its second question presented as whether a class may be certified if it contains "members who were not injured and have no legal right to any damages." Pet. for Cert. i. In its merits brief, however, petitioner reframes its argument. It now concedes that "[t]he fact that federal courts lack authority to compensate persons who cannot prove injury does not mean that a class action (or collective action) can never be certified in the absence of proof that all class members were injured." Brief for Petitioner 49. In light of petitioner's abandonment of its argument from the petition, the Court need not, and does not, address it.

Petitioner's new argument is that, "where class plaintiffs cannot offer" proof that all class members are injured, "they must demonstrate instead that there is some mechanism to identify the uninjured class members prior to judgment and ensure that uninjured members (1) do not contribute to the size of any damage award and (2) cannot recover such damages." *Ibid.* Petitioner contends that respondents have not demonstrated any mechanism for ensuring that uninjured class members do not recover damages here.

Petitioner's new argument is predicated on the assumption that the damages award cannot be apportioned so that only those class members who suffered an FLSA violation recover. According to petitioner, because Fox's mechanism for determining who had worked over 40 hours depended on Mericle's estimate of donning and doffing time, and because the jury must have rejected Mericle's estimate when it reduced

2016 WL 1092414, 26 Wage & Hour Cas.2d (BNA) 297, 16 Cal. Daily Op. Serv. 3006

the damages award by more than half, it will not be possible to know which workers are entitled to share in the award.

As petitioner and its *amici* stress, the question whether uninjured class members may recover is one of great importance. See, *e.g.*, Brief for Consumer Data Industry Association as *Amicus Curiae*. It is not, however, a question yet fairly presented by this case, because the damages award has not yet been disbursed, nor does the record indicate how it will be disbursed.

Respondents allege there remain ways of distributing the award to only those individuals who worked more than 40 hours. For example, by working backwards from the damages award, and assuming each employee donned and doffed for an identical amount of time (an assumption that follows from the jury's finding that the employees suffered equivalent harm under the policy), it may be possible to calculate the average donning and doffing time the jury necessarily must have found, and then apply this figure to each employee's known gang-time hours to determine which employees worked more than 40 hours.

Whether that or some other methodology will be successful in identifying uninjured class members is a question that, on this record, is premature. Petitioner may raise a challenge to the proposed method of allocation when the case returns to the District Court for disbursal of the award.

Finally, it bears emphasis that this problem appears to be one of petitioner's own making. Respondents proposed bifurcating between the liability and damages phases of this proceeding for the precise reason that it may be difficult to remove uninjured individuals from the class after an award is rendered. It was petitioner who argued against that option and now seeks to profit from the difficulty it caused. Whether, in light of the foregoing, any error should be deemed invited, is a question for the District Court to address in the first instance.

3

**\*13** The judgment of the Court of Appeals for the Eighth Circuit is affirmed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

Chief Justice ROBERTS, with whom Justice ALITO joins as to Part II, concurring.

Petitioner Tyson Foods. presents two primary arguments. First, it claims that class certification was improper because each individual plaintiff spent different amounts of time donning and doffing protective gear. Therefore, according to Tyson, whether and to what extent it owed damages to each individual employee for uncompensated overtime was not a question capable of resolution on a class-wide basis. Second, Tyson argues that the verdict cannot stand because, while no one disputes that the class as certified contains hundreds of uninjured employees, the plaintiffs have not come up with any way to ensure that those employees do not recover damages from the jury's lump-sum award.

The Court rejects the first argument and leaves the second for initial resolution by the lower courts. I join the Court's opinion in full. I write separately to explain my understanding of the Court's resolution of the case and to express my concern that the District Court may not be able to fashion a method for awarding damages only to those class members who suffered an actual injury.

I

A class may be certified under Federal Rule of Civil Procedure 23(b)(3) only if "questions of law or fact common to class members predominate over any questions affecting only individual members." A common question is one in which "the issue is susceptible to generalized, class-wide proof." *Ante*, at —— (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012)) (internal quotation marks omitted).

To prove liability and damages, respondents had to establish the amount of compensable (but uncompensated) donning and doffing time for each individual plaintiff. The Court properly concludes that despite the differences in donning and doffing time for individual class members, respondents could adequately prove the amount of time for each individual through generalized, class-wide proof. That proof was Dr. Mericle's representative study. As the Court observes, "each class-member could have relied on that [study] to establish liability if he or she had brought an individual action." *Ante*,

at ——. And when representative evidence would suffice to prove a plaintiff's individual claim, that evidence cannot be deemed improper merely because the claim is brought as part of a class action. See *ante,* at —— — ——.

I agree with Justice THOMAS that our decision in *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), does not provide a "special, relaxed rule authorizing plaintiffs to use otherwise inadequate representative evidence in FLSA-based cases." *Post,* at —— (dissenting opinion). But I do not read the Court's opinion to be inconsistent with that conclusion. Rather, I take the Court to conclude that Dr. Mericle's study constituted sufficient proof from which the jury could find "the amount and extent of [each individual respondent's] work as a matter of just and reasonable inference"—the same standard of proof that would apply in any case. *Ante,* at —— (internal quotation marks omitted). It is with that understanding that I join the opinion of the Court.

II

**\*14** As for Tyson's second argument, it is undisputed that hundreds of class members suffered no injury in this case. See Brief for Respondents 52–53; Tr. of Oral Arg. 30. The question is: which ones? The only way to know is to figure out how much donning and doffing time the jury found Tyson owed the workers in each department. But the jury returned a lump-sum verdict of $2.9 million on a class-wide basis, without specifying any particular amount of donning and doffing time used to calculate that number. If we knew that the jury had accepted the plaintiffs' proposed average donning and doffing times in calculating the verdict, we could easily overcome this problem. But we know the jury did no such thing. And with no way to reverse engineer the verdict to determine how much donning and doffing time the jury found Tyson owed workers in each department, we do not know which plaintiffs the jury found to be injured (or not).

Tyson contends that unless the District Court can fashion a means of identifying those class members not entitled to damages, it must throw out the jury's verdict and decertify the class. I agree with the Court's decision to leave that issue to be addressed in the first instance by the District Court. But I am not convinced that the District Court will be able to devise a means of distributing the aggregate award only to injured class members.

As the Court explains, each plaintiff in this case suffered actual harm only if he: (1) was not compensated for at least some compensable donning and doffing time; *and* (2) worked more than 40 hours in a workweek, including any compensable donning and doffing time. See *ante,* at —— — ——. In other words, it is not enough that a plaintiff was uncompensated for compensable donning and doffing time; unless that plaintiff also worked more than 40 hours in a week (including compensable donning and doffing time), he is owed no overtime pay and therefore suffered no injury.

If the jury credited Dr. Mericle's averages—18 minutes per day of donning and doffing time for employees in the fabrication (cut and retrim) departments, 21.25 for employees in the kill department—the District Court could have assumed that the jury found that each plaintiff from those departments donned and doffed the average amounts of time and used those averages to determine which plaintiffs had worked more than 40 hours (and awarded damages on that understanding).

The problem is that the jury obviously did not credit Dr. Mericle's averages. According to Dr. Fox, another of the plaintiffs' experts, those averages would have resulted in a $6.7 million verdict across the 3,344 member class. *Ante,* at ——. The jury, however, awarded the plaintiffs only $2.9 million.

**\*15** How, then, did the jury arrive at that $2.9 million figure? The jury might have determined that Dr. Mericle's average was correct for the kill department, but overstated for the fabrication departments. Or vice versa. Or the jury might have found that Dr. Mericle's averages overstated the donning and doffing time in all departments, by varying degrees. Any of those conclusions would have been permissible on these facts, and any of those options would have reduced the jury verdict from the $6.7 million proposed by Dr. Fox. But in arriving at the $2.9 million verdict, we have no way of knowing how much donning and doffing time the jury actually found to have occurred in the kill and fabrication departments, respectively.

And there's the rub. We know that the jury must have found at least one of Dr. Mericle's two averages to be too high. And we know, as Dr. Fox testified, that if Dr. Mericle's averages were

even slightly too high, hundreds of class members would fall short of the 40–hour workweek threshold that would entitle them to damages. See *post,* at ⸺ – ⸺. But because we do not know how much donning and doffing time the jury found to have occurred in each department, we have no way of knowing which plaintiffs failed to cross that 40–hour threshold.

To illustrate: Take a fabrication employee and a kill employee, each of whom worked a 39–hour workweek before counting any compensable donning and doffing time. If the jury credited Dr. Mericle's kill department average but discounted his fabrication average to below one hour per week, the jury would have found that the kill employee was injured, while the fabrication employee was not. But the jury also might have done the exact opposite. We just don't know —and so we have no way to determine which plaintiffs the jury concluded were injured.

The plaintiffs believe they can surmount this obstacle. As the Court explains, they propose to work backward from the damages award by assuming that each employee donned and doffed for an identical amount of time. *Ante,* at ⸺ – ⸺. That won't work, however, because there is no indication that the jury made the same assumption. Indeed, the most reasonable guess is that the jury did *not* find that employees in different departments donned and doffed for identical amounts of time. After all, the plaintiffs' own expert indicated that employees in different departments donned and doffed for *different* amounts of time.

Given this difficulty, it remains to be seen whether the jury verdict can stand. The Court observes in dicta that the problem of distributing the damages award "appears to be one of petitioner's own making." *Ante,* at ⸺. Perhaps. But Tyson's insistence on a lump-sum jury award cannot overcome the limitations placed on the federal courts by the Constitution. Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not. The Judiciary's role is limited "to provid[ing] relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm." *Lewis v. Casey,* 518 U.S. 343, 349, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Therefore, if there is no way to ensure that the jury's damages award goes only to injured class members, that award cannot stand. This issue should be considered by the District Court

in the first instance. As the Court properly concludes, the problem is not presently ripe for our review.

Justice THOMAS, with whom Justice ALITO joins, dissenting.

**\*16** Our precedents generally prohibit plaintiffs from maintaining a class action when an important element of liability depends on facts that vary among individual class members. This case concerns whether and when class-action plaintiffs can overcome that general rule by using representative evidence as common proof of an otherwise individualized issue. Our precedents resolve that question: Before class-action plaintiffs can use representative evidence in this way, district courts must undertake a rigorous analysis to ensure that such evidence is sufficiently probative of the individual issue to make it susceptible to classwide proof. The District Court did not satisfy that obligation here, and its failure to do so prejudiced defendant Tyson Foods at trial. The majority reaches a contrary conclusion by redefining class-action requirements and devising an unsound special evidentiary rule for cases under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 *et seq.* I respectfully dissent.

I

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend,* 569 U.S. ⸺, ⸺, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013) (internal quotation marks omitted). Plaintiffs thus "must affirmatively demonstrate [their] compliance" with Rule 23. *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). Where, as here, a putative class seeks money damages, plaintiffs also must satisfy the "demanding" standard of predominance, *Comcast, supra,* at ⸺, 133 S.Ct., at 1432, by proving that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. Rule Civ. Proc. 23(b)(3).

District courts must also ensure continued compliance with Rule 23 throughout the case. When a district court erroneously certifies a class, then holds a trial, reversal is required when the record shows that improper certification

prejudiced the defendant. And an incorrect class certification decision almost inevitably prejudices the defendant. When a district court allows class plaintiffs to prove an individualized issue with classwide evidence, the court relieves them of their burden to prove each element of their claim for each class member and impedes the defendant's efforts to mount an effective defense.

Here, the District Court misconstrued the elements of the plaintiffs' claims. And it failed to recognize that one critical element of those claims raised an individual issue that would predominate over any common issues. The court therefore did not ask whether that individual issue was susceptible to common proof. That error, at the class certification stage, then prejudiced Tyson at trial. It was only at trial that the plaintiffs introduced the critical evidence at issue in this case. They introduced, as representative of the class, a study by the plaintiffs' expert, Dr. Kenneth Mericle. The District Court still declined to consider whether this evidence was appropriate common proof—even though the study showed wide variations among class members on an important individual issue. These errors prejudiced Tyson and warrant reversal.

A

*17 The District Court erred at the class certification stage by holding that the plaintiffs satisfied Rule 23's predominance requirement. The plaintiffs alleged that Tyson failed to adequately pay workers overtime for donning and doffing protective gear, in violation of the Iowa Wage Payment Collection Law, Iowa Code § 91A.3 (2013). This Iowa law mirrors the FLSA.[1] An employer violates these laws if it employs someone "for a workweek longer than forty hours" and fails to adequately compensate him for the overtime. 29 U.S.C. § 207(a)(1). Here, the plaintiffs could establish Tyson's liability to all class members only if: (1) the donning and doffing at issue is compensable work; (2) all employees worked over 40 hours, including donning and doffing time; and (3) Tyson failed to compensate each employee for all overtime.

The District Court should have begun its predominance inquiry by determining which elements of the plaintiffs' claims present common or individual issues, and assessed whether individual issues would overwhelm common ones. See *Halliburton Co. v. Erica P. John Fund, Inc.,* 573 U.S. ——, ——, 134 S.Ct. 2398, 2413–2414, 189 L.Ed.2d 339 (2014); *Erica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. 804, 809, 131 S.Ct. 2179, 180 L.Ed.2d 24 (2011). The plaintiffs' claims here had one element that was clearly individualized: whether each employee worked over 40 hours without receiving full overtime pay. The amount of time that employees spent on donning and doffing varied by person because individuals take different amounts of time to don and doff the same gear, and their gear varied. This issue was critical to determining Tyson's liability because some employees would not have worked over 40 hours per week without counting time spent on donning and doffing. The critical issue for class certification thus was whether the individualized nature of employees' donning and doffing times defeated predominance.

The District Court, however, certified a 3,344–member class without acknowledging the significance of this individual issue, let alone addressing whether it was susceptible to common proof. The court acknowledged that "[i]ndividual questions may exist" and that Tyson was objecting to being "forced to defend against *un* common evidence" because the plaintiffs had no common evidence establishing what gear all employees wore "or how long [they] spend donning and doffing their [gear]." 564 F.Supp.2d 870, 900, 909 (N.D.Iowa 2008). But, in the District Court's view, common issues predominated because the plaintiffs could establish classwide liability just by showing that Tyson was not paying any employee for the time it took to don or doff basic gear. *Id.,* at 909; see *id.,* at 900, 904, 905 (similar).

The District Court thus did not give proper consideration to the significance of variable donning and doffing times. Establishing an FLSA violation across the entire class was impossible without evidence that *each* employee would have worked over 40 hours per week if donning and doffing time were included. But the District Court did not fully appreciate that this was a critical individual issue that defined Tyson's liability, and it did not analyze, in any way, whether this issue was susceptible to common proof. As a result, the District Court erred when it certified the class.

**Tyson Foods, Inc. v. Bouaphakeo, --- S.Ct. ---- (2016)**

2016 WL 1092414, 26 Wage & Hour Cas.2d (BNA) 297, 16 Cal. Daily Op. Serv. 3006

B

**\*18** It was only later at trial that the plaintiffs introduced the critical evidence that they claimed could establish all employees' donning and doffing times on a classwide basis. This evidence came from the plaintiffs' expert, Dr. Mericle, who studied how long certain Tyson employees took to don and doff various gear. This was the "most important" evidence at trial. *Ante,* at ——. Without it, the plaintiffs almost certainly could not have obtained a classwide verdict. But rather than showing that employees' donning and doffing times were susceptible to classwide proof, Mericle's evidence showed that employees' donning and doffing times varied materially. Mericle's evidence thus confirmed the inappropriateness of class treatment.

Mericle used about 53 employees per donning- or doffing-related activity to extrapolate averages for the 3,344–person class. By averaging the times that sample employees spent per activity, Mericle estimated that all cut or retrim department employees spent 18 minutes per day on uncompensated activities (including donning and doffing), while kill department employees averaged 21.25 minutes.

Mericle's data, however, revealed material variances in the amount of time that individual employees spent on the same activities. Cut and retrim employees took between 0.583 minutes and over 10 minutes to don preshift equipment at their lockers. Postshift doffing took one employee less than two minutes, and another over nine minutes. Kill department employees had similar variances. No two employees performed the same activity in the same amount of time, and Mericle observed "a lot of variation within the activity." App. 387.

The plaintiffs' trial evidence also showed that variances in the amount of time that employees spent on donning and doffing activities significantly affected the number of class members who could assert overtime claims. The plaintiffs' other expert, Dr. Liesl Fox, added Mericle's average times to individual employees' timesheets to determine which class members had overtime claims. She discovered that 212 of the 3,344 class members had no claims at all because they had not worked over 40 hours per week. If Mericle's averages even slightly overestimated average donning and doffing times,

another 282 class members would have no overtime claims. If average donning or doffing times dropped from 18–21 minutes to 15 minutes, Fox stated, another 110 employees had no overtime claims. According to Fox, incremental changes to donning and doffing times mattered so much that her estimated damages figure ($6.6 million) would be meaningless if the jury discounted Mericle's data at all. Yet the jury ultimately rejected that damages figure—seemingly disagreeing that Mericle's average times reflected the amount of time that every class member spent donning and doffing.

Because the District Court did not evaluate Mericle's and Fox's evidence in its initial class certification decision, it should have revisited certification when faced with this evidence at trial. It declined to do so even after Tyson objected to using this evidence to establish the amount of time all class members spent donning and doffing. See 2011 WL 3793962 (N.D.Iowa, Aug. 25, 2011) (rejecting decertification motion); 2012 WL 4471119 (N.D.Iowa, Sept. 26, 2012) (summarily denying post-trial decertification). The court thus never made findings or analyzed whether, under Rule 23(b)(3), Mericle's study could be used as common proof of an individual issue that would otherwise preclude class treatment.

The District Court's jury instructions did not cure this deficiency. No instruction could remedy a court's failure to address why an individual issue was susceptible to common proof. In any event, the court instructed the jury that "expert testimony"—like Mericle's—should get "as much weight as you think it deserves." App. 471. The court also let the jury rely on representative evidence to establish each class member's claim even if the jury believed that employees' donning and doffing times varied considerably. See *ibid.*

**\*19** In sum, the plaintiffs at no time had to justify whether the variability among class members here was too much for representative evidence to fill the gap with common proof. Nor did the District Court address whether Mericle's study —which showed significant variability in how much time employees spent on donning and doffing—was permissible common proof. These errors created an unacceptable risk that Tyson would be held liable to a large class without adequate proof that each individual class member was owed overtime. Before defendants can be forced to defend against a class action, courts must be sure that Rule 23's criteria are met. The District Court's failure to do so warrants reversal.

## II

The majority reaches a contrary result by erring in three significant ways. First, the majority alters the predominance inquiry so that important individual issues are less likely to defeat class certification. Next, the majority creates a special, relaxed rule authorizing plaintiffs to use otherwise inadequate representative evidence in FLSA-based cases by misreading *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). Finally, the majority points to Tyson's litigation strategy and purported differences from prior Rule 23 precedents. None of these justifications withstands scrutiny.

## A

The majority begins by redefining the predominance standard. According to the majority, if some " 'central issues' " present common questions, " 'the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.' " *Ante,* at —— (quoting, 7AA C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure § 1778, pp. 123–124 (3d ed. 2005; footnotes omitted)).

We recently—and correctly—held the opposite. In *Comcast,* we deemed the lack of a common methodology for proving damages fatal to predominance because "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." 569 U.S., at ——, 133 S.Ct., at 1433.[2] If, as the majority states, this case presents "no occasion" to announce "broad and categorical rules governing the use of representative and statistical evidence in class actions," *ante,* at ——, it should most certainly not present an occasion to transform basic aspects of the predominance inquiry.

## B

*20 The majority further errs in concluding that the representative evidence here showed that class members' claims were susceptible to common proof. See *ante,* at ——

——. As the majority observes, representative evidence can be used to prove an individual issue on a classwide basis if each class member, in an individual action, could rely on that evidence to prove his individual claim. *Ante,* at ——. But that premise should doom the plaintiffs' case. Even testifying class members would seem unable to use Mericle's averages. For instance, Mericle's study estimated that kill department employees took an average 6.4 minutes to don equipment at their lockers before their shift—but employee Donald Brown testified that this activity took him around 2 minutes. Others also testified to donning and doffing times that diverged markedly from Mericle's estimates. So Mericle's study could not sustain a jury verdict in favor of these plaintiffs, had they brought individual suits.

According to the majority, this disparity between average times and individual times poses no problem because *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515, allows plaintiffs to use such representative evidence as common proof. See *ante,* at ————. In the majority's view, *Mt. Clemens* established that (1) if the employer did not record the time that employees spent on compensable work, employees can use representative evidence to establish the employer's liability, *ante,* at ——; and (2) employees can use "the experiences of a subset of employees" to establish "the experiences of all of them" if "each employee worked in the same facility, did similar work[,] and was paid under the same policy," *ante,* at ——.

The majority's reliance on *Mt. Clemens* is questionable given that decision's shaky foundations. Seventy years ago, *Mt. Clemens* construed the FLSA broadly to vindicate the Court's understanding of the FLSA's "remedial" purposes. 328 U.S., at 687, 66 S.Ct. 1187. Within a year, Congress rejected that interpretation. Citing the "emergency" this Court had created by spurring "excessive and needless litigation," Congress repudiated this Court's understanding of what the FLSA meant by "work" and the "workweek" and limited employees' ability to sue collectively. 29 U.S.C. §§ 251(a)-(b); see *Integrity Staffing Solutions, Inc. v. Busk,* 574 U.S. ——, ——, 135 S.Ct. 513, 516–517, 190 L.Ed.2d 410 (2014) (noting repudiation in the Portal–to–Portal Act of 1947); *Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 173, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989) (noting repudiation of representative actions). Since then, this Court has decided many FLSA cases, but has never relied on *Mt. Clemens* to do so.[3]

Putting these concerns aside, the majority today goes beyond what *Mt. Clemens* held. First, *Mt. Clemens* does not hold that employees can use representative evidence in FLSA cases to prove an otherwise uncertain element of liability. *Mt. Clemens* involved an employer's alleged failure to pay employees for time they spent walking to and from their work spaces and on preshift preparatory activities. See 328 U.S., at 684–685, 66 S.Ct. 1187. The Court held that the FLSA required employers to compensate employees for those activities. *Id.,* at 690–692, 66 S.Ct. 1187 (overruled by 29 U.S.C. §§ 252, 254). The employer was thus presumptively liable to all employees because they all claimed to work 40 hours per week. See Record in *Mt. Clemens,* O.T. 1945, No. 342 (Record), pp. 10–11 (complaint). All additional uncompensated work was necessarily unpaid overtime. That explains why the Court "assum[ed] that the employee has proved that he has performed work and has not been paid in accordance with the statute." 328 U.S., at 688, 66 S.Ct. 1187.

**\*21** *Mt. Clemens* also rejected the notion that employees who had *already* established the employer's liability had to prove damages using precise, employee-specific records. *Id.,* at 687, 66 S.Ct. 1187. Rather, if the employer failed to keep records but its liability was certain, employees could use evidence that "show[s] the amount and extent of that work as a matter of just and reasonable inference." *Ibid.* The Court, however, limited this holding to instances where the employer's FLSA violation was "certain," as in *Mt. Clemens* itself. *Id.,* at 688, 66 S.Ct. 1187; see *ibid.* (inference permissible "as to the extent of the damages"). *Mt. Clemens* does not justify the use of representative evidence in this case, where Tyson's liability to many class members was uncertain.

Second, the majority misreads *Mt. Clemens* as "confirm[ing]" that when employees "worked in the same facility, did similar work and w[ere] paid under the same policy," representative evidence can prove all of their claims. *Ante,* at ——. *Mt. Clemens* said nothing about whether or why the employees there shared sufficient similarities for their claims to be susceptible to common proof. The *Mt. Clemens* plaintiffs were the local union and seven employees. See 328 U.S., at 684, 66 S.Ct. 1187. They brought a representative action, a type of collective action that allowed employees to designate a union to pursue their claims for them. See § 16(b), 52 Stat. 1069; Record 7 (complaint). Some 300 employees did so. See *Mt. Clemens Pottery Co. v. Anderson,* 149 F.2d, 461

(C.A.6 1945); Record 33–41. The District Court did not make findings about what made these employees similar, instead reasoning that the FLSA's broad objectives supported a liberal approach to allowing class suits. Record 29–32 (June 13, 1941, order). This Court also said nothing about whether the employees suffered the same harm in the same manner; that issue was not before it. In *Mt. Clemens* ' aftermath, however, Congress eliminated representative actions, like the one in *Mt. Clemens,* that required too few similarities among plaintiffs and allowed plaintiffs "not themselves possessing claims" to sue. *Hoffman–La Roche, supra,* at 173, 110 S.Ct. 482. *Mt. Clemens* thus offers no guidance about what degree of similarity among employees suffices for representative evidence to establish all employees' experiences.

In any event, *Mt. Clemens* did not accept that the representative evidence there would be probative even were the employees sufficiently similar. All *Mt. Clemens* decided was that the lack of precise data about the amount of time each employee worked was not fatal to their case. 328 U.S., at 686–687, 66 S.Ct. 1187. The Court then remanded the case, leaving the lower courts to "draw whatever reasonable inferences can be drawn from the employees' evidence," if any. *Id.,* at 693–694, 66 S.Ct. 1187.[4] *Mt. Clemens* therefore does not support the majority's conclusion that representative evidence can prove thousands of employees' FLSA claims if they share a facility, job functions, and pay policies. See *ante,* at ——.

**\*22** By focusing on similarities irrelevant to whether employees spend variable times on the task for which they are allegedly undercompensated, the majority would allow representative evidence to establish classwide liability even where much of the class might not have overtime claims at all. Whether employees work in one plant or many, have similar job functions, or are paid at the same rate has nothing to do with how fast they walk, don, or doff—the key variables here for FLSA liability.

The majority suggests that *Mt. Clemens* ' evidentiary rule is limited to cases where the employer breaches its obligation to keep records of employees' compensable work. See *ante,* at ——————. But that limitation is illusory. FLSA cases often involve allegations that a particular activity is uncompensated work. Just last Term, we rejected class-action plaintiffs' theory that waiting in an antitheft security screening line

**Tyson Foods, Inc. v. Bouaphakeo, --- S.Ct. ---- (2016)**

2016 WL 1092414, 26 Wage & Hour Cas.2d (BNA) 297, 16 Cal. Daily Op. Serv. 3006

constitutes work. See *Integrity Staffing Solutions, Inc.,* 574 U.S. at ——, 135 S.Ct., at 516. The majority thus puts employers to an untenable choice. They must either track any time that might be the subject of an innovative lawsuit, or they must defend class actions against representative evidence that unfairly homogenizes an individual issue. Either way, the majority's misinterpretation of *Mt. Clemens* will profoundly affect future FLSA-based class actions—which have already increased dramatically in recent years. Erichson, CAFA's Impact On Class Action Lawyers, 156 U. Pa. L. Rev. 1593, 1617 (2008).

C

The majority makes several other arguments why Mericle's study was adequate common proof of all class members' experiences. None has merit.

First, the majority contends that, because Tyson's trial defense —that Mericle's study was unrepresentative or inaccurate— was "itself common," Tyson was "not deprive[d] ... of its ability to litigate individual defenses." *Ante,* at ——. But looking to what defenses remained available is an unsound way to gauge whether the class-action device prevented the defendant from mounting individualized defenses. That Tyson was able to mount only a *common* defense confirms its disadvantage. Testifying class members attested to spending less time on donning and doffing than Mericle's averages would suggest. Had Tyson been able to cross-examine more than four of them, it may have incurred far less liability. See *supra,* at —— – ——.

Second, the majority argues that Tyson's failure to challenge Mericle's testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), left to the jury any remaining questions about the value of this evidence. *Ante,* at —— – ——. But *Comcast* rejected this argument. Failing to challenge evidence under *Daubert* precludes defendants from "argu[ing] that [the] testimony was not admissible," but it does not preclude defendants from "argu[ing] that the evidence failed to show that the case is susceptible to awarding damages on a class-wide basis." *Comcast,* 569 U.S., at ——, n. 4, 133 S.Ct., at 1432, n. 4 (internal quotation marks omitted).

**\*23** Finally, the majority's attempts to distinguish this case from *Wal–Mart* are unavailing. See *ante,* at —— – ——. *Wal–Mart* involved a nationwide Title VII class action alleging that Wal–Mart's policy of delegating employment decisions to individual store managers exercise their discretion in a discriminatory manner. See 564 U.S., at 342, 131 S.Ct. 2541. We held that discretionary decisionmaking could not be a common policy uniting all class members' claims because managers presumptively exercise their discretion in an individualized manner. See *id.,* at 355–356, 131 S.Ct. 2541. Some may rely on performance-based criteria; others may use tests; yet others might intentionally discriminate. *Ibid.* Because of this variability, "demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's." *Ibid.*

Moreover, the *Wal–Mart* plaintiffs' representative evidence —120 employee anecdotes—did not make this individualized issue susceptible to common proof. *Id.,* at 358, 131 S.Ct. 2541. Using 120 anecdotes to represent the experiences of 1.5 million class members was too far below the 1:8 ratio of anecdotes to class members that our prior cases accepted. *Ibid.* Thus, this representative evidence was "too weak to raise any inference that all the individual, discretionary personnel decisions are discriminatory." *Ibid.*

The plaintiffs' reliance on Mericle's study fails for the same reasons. Just as individual managers inherently make discretionary decisions differently, so too do individual employees inherently spend different amounts of time donning and doffing. And, just as 120 employee anecdotes could not establish that all 1.5 million class members faced discrimination, neither can Mericle's study establish that all 3,344 class members spent the same amount of time donning and doffing. Like the 120 Wal–Mart anecdotes, Mericle's study—which used about 57 employees per activity to extrapolate times for 3,344—falls short of the 1:8 ratio this Court deems "significant" to the probative value of representative evidence. See *id.,* at 358, 131 S.Ct. 2541.

III

**Tyson Foods, Inc. v. Bouaphakeo, --- S.Ct. ---- (2016)**

2016 WL 1092414, 26 Wage & Hour Cas.2d (BNA) 297, 16 Cal. Daily Op. Serv. 3006

\*24  I agree with the majority's conclusion in Part II–B that we should not address whether a class action can be maintained if a class contains uninjured members. Given that conclusion, however, I am perplexed by the majority's readiness to suggest, in dicta, that Tyson's opposition to bifurcating the proceedings might be invited error. *Ante,* at ——. I see no reason to opine on this issue.

3

I respectfully dissent.

**All Citations**

--- S.Ct. ----, 2016 WL 1092414, 26 Wage & Hour Cas.2d (BNA) 297, 16 Cal. Daily Op. Serv. 3006

Footnotes

\*      The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.,* 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

1      The plaintiffs also brought a collective action under the FLSA. Because the jury verdict combined the two actions, deficiencies in the class action require reversal of the entire judgment.

2      The majority relies on the same treatise citations that the *Comcast* dissent invoked to argue that individualized damages calculations should never defeat predominance. 569 U.S., at —— – ——, 133 S.Ct., at 1436–1437 (opinion of BREYER, J.). Since then, these treatises have acknowledged the tension between their views of predominance and *Comcast.* See 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, § 1778, p. 37 (3d ed. Supp. 2015); 2 W. Rubenstein, Newberg on Class Actions § 4:54, p. 21 (5th ed. Supp. June 2015).

3      THE CHIEF JUSTICE believes that the majority does not actually depend upon *Mt. Clemens* as a special evidentiary rule, and instead applies "the same standard of proof that would apply in any case." *Ante,* at ——. That interpretation is difficult to credit given that the majority never explains why Dr. Mericle's representative evidence could have sustained a jury finding in favor of any individual employee in an individual case, and instead devotes several paragraphs to the proposition that "[t]his Court's decision in [*Mt. Clemens* ] explains why Dr. Mericle's sample was permissible in the circumstances of this case." *Ante,* at ——; see *id.,* at —— – ——.

4      If anything, *Mt. Clemens* suggests that the representative evidence here is impermissible. The Court affirmed that the District Court's proposed "formula of compensation," calculated based on estimated average times it derived from employees' representative testimony, was impermissible. 328 U.S., at 689, 66 S.Ct. 1187; see 149 F.2d, at 465 ("It does not suffice for the employee to base his right to recover on a mere estimated average of overtime worked.").

**End of Document**
© 2016 Thomson Reuters. No claim to original U.S. Government Works.

© 2016 Thomson Reuters. No claim to original U.S. Government Works.