UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE MANUFACTURED          MDL NO.   2047
DRYWALL PRODUCTS LIABILITY            SECTION:  L
LITIGATION                            JUDGE FALLON
                                      MAG. JUDGE WILKINSON

THIS DOCUMENT RELATES TO:

JOSE CRUZ, SR.

_____/

### JOSE CRUZ'S OBJECTION TO SPECIAL MASTER'S DECISION REGARDING CLAIMANT #111702; CLAIM FOR OPTION 3 REMEDIATION BENEFITS UNDER THE SETTLEMENT AGREEEMENT

MAY IT PLEASE THE COURT, the Plaintiff, JOSE CRUZ, SR. (hereinafter "Claimant"), by and through the undersigned counsel, respectfully submits this Objection to the Decision made by the Special Master Denying Claim under Option 3 Remediation Program made by Claimant.  Claimant hereby moves this Honorable Court to set aside the decision of the Special Master and award Claimant a recovery consistent with the Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047, Rec. Doc. 16407-3 (hereinafter "Settlement Agreement").  As grounds thereof, the Claimant would state as follows:

### PROCEDURAL HISTORY

Jose Cruz is listed as a claimant on Exhibit B of the *Beane* Complaint;[1] therefore, his claim is governed by the *Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047* (hereinafter the "New Settlement Agreement"). *See* Rec. Doc. 16978-1.  Pursuant to this agreement, Exhibit B claimants whose property is

---

[1] *Paul Beane, et al. v. Gebrueder Knauf Verwaltungsgesellschaft KG, et al.*, NO. 13-609 (ED. La.).

confirmed by inspection to contain Knauf Chinese Drywall shall be treated as Exhibit A claimants. *Id*, at 3, Section III (B). Claimant has met this requirement. *See* Document ID 126154. Accordingly, Claimant is entitled to select Remediation Fund Benefits from among the options set forth in Section 4.3 of the Settlement Agreement. *See* Rec. Doc. 16978-1 at 2, Section II (A).

In this case, Claimant presented an Option 3 Remediation Claim and fully complied with all the requirements outlined in the Settlement Agreement. However, after a year of providing information and producing documents to the Knauf Defendants, they decided to deny his claim outright. The Defense relies on the New Settlement Agreement which does not provide benefits to claimants who purchased the property with knowledge that it contained Chinese drywall (hereinafter "CDW"). Furthermore, the New Settlement Agreement requires a claimant to have made a "reasonable inquiry" in determining whether the property they purchased contained CDW. *Id.* at 4, Section IV (D). Here, the Defense contends that Claimant failed to make a reasonable inquiry and took a calculated risk in purchasing his property; thus, he is not entitled to benefits under the Settlement Agreement. Of note, the New Settlement Agreement does not define or outline what a "reasonable inquiry" entails.

As a result of this denial, Claimant requested mediation with Special Master, Daniel Balhoff, in order to compel the Defendants to honor the Settlement Agreement. On April 23, 2016, after mediation was completed, Mr. Balhoff issued his Opinion and Decree, finding for the Knauf Defendants. *See* Opinion and Decree as Exhibit A. Mr. Balhoff was of the opinion that Claimant did not make a reasonable inquiry into the presence of CDW in the property. Claimant objects to the Special Master's ruling for reasons discussed below. It is Claimant's position that

he did not possess knowledge his home contained defective CDW and he made a reasonable inquiry in accordance with the New Settlement Agreement.

## FACTUAL BACKGROUND AND ARGUMENT

In this case, Defendants attempt to impute a higher standard to Claimant based on the fact that he is a realtor. However, by the time Claimant purchased the subject property, he was an eighty (80) year old man with declining mental health that had not practiced in realty for several years. Nevertheless, Claimant acted reasonably in the purchase of his home by making several inquiries into whether the property was free of defective drywall. First, Claimant pulled the MLS report for the subject property which made no mention of CDW in the property. *See* MLS listing as Exhibit B. Second, Claimant pulled the comparable listings at the time which indicated he actually overpaid for the property. *See* Comparables as Exhibit C. At that time, the average cost of a similar property sold in the community was $42,404, well below the $53,000 Claimant paid for his property. Contrary to what the Defense alleges, the sales price of the home was not indicative of CDW. The price of Claimant's home was most likely due to the housing market at the time and not something wrong or defective with the property. Furthermore, Claimant was not an investor taking a gamble on the property as he was simply searching for a new home for his family.

Third, Claimant requested a home inspection in the subject property prior to closing. *See* Inspection Report as Exhibit D. The qualified inspector did not observe or discovery any defective drywall in the property and informed Claimant as such who was present during the inspection. The Defense contends this inspection was not sufficient because it was as a "general inspection" limited to visible and accessible areas only, however, that is not accurate. The inspector specifically checked for defective drywall by opening a hole in the wall behind the

refrigerator and was not able to find any CDW (affidavit is currently being obtained by inspector and will be filed as a supplemental exhibit upon receipt). In fact, the inspector concluded that the sheetrock came from Chicago. *See* Exhibit D at page 4. Irrespective of those facts, Claimant incurred this expense to specifically make sure his new home would be free of defective drywall. Although Claimant made a reasonable inquiry into this home through a thorough inspection, it was not sufficient to apprise him of the Defendant's defective product. It was not until Moss and Associates inspected the home after the fact that it was determined there was defective CDW. This was well after Claimant had invested over $15,000.00 in renovations to his home. *See* Renovation Documents and Receipts as Exhibit E. It is abundantly clear that Claimant had no knowledge the property contained CDW, despite making several inquiries to determine same.

The Defense's principal argument is that Claimant had knowledge of the CDW or should have made an inquiry into its presence simply because it was marked under section 19, "Addenda and Additional Terms", of the residential sales contract. *See* relevant pages from Sales Contract as Exhibit F. Section 19 of the residential sales contract states specifically, "[t]he following additional terms **are included in the attached addenda** and incorporated into this Contract." It was determined after mediation that Claimant's realtor prepared the sales contract and was actually the one who marked the defective drywall entry simply to request information regarding CDW, given the timeframe in which the home was built. *See* realtor's supplemental affidavit as Exhibit G. Claimant was informed there was no CDW in the property and no actual addendum disclosing same was ever produced or is in existence. This fourth step taken by Claimant, through his realtor, of inquiring directly in the contract as to whether the property

contained CDW unequivocally meets the "reasonable inquiry" standard in the New Settlement Agreement.

Additionally, a comprehensive and exhaustive disclosure list labeled "Condominium Disclosure Statement" (CDS) was provided as part of the sales contract. *See* CDS as Exhibit H. In this document, there is no mention of the property containing defective CDW or even the remote implication that the seller had knowledge of it. Of note, the CDS has a section labeled, "Environment", where the sellers state they were not aware of any substances, materials, fixtures, or otherwise that may be an environmental hazard. Furthermore, the same section also indicates that there had not been any cleanup or remediation to the property due to any hazardous material or product.

Finally, Claimant was able to obtain affidavits from both the seller and his realtor that state neither had knowledge the subject property had defective CDW. *See* Seller and Realtor's Affidavit as Exhibit I. The Defendant's fixation on the marked entry is unfair and inconsequential, as it does not demonstrate Claimant had actual knowledge or that he should have known he purchased the property with defective CDW.

## **CONCLUSION**

Defendant's defective product has taken a heavy, emotional and financial toll on Claimant and his family. To date, Claimant is not aware of Defendants having to pay damages to any person or entity as a result of their defective product. As the current homeowner, Claimant has complied with all the requirements in the Settlement Agreements and a recovery is justified. Claimant sufficiently inquired into the presence of CDW in his home as illustrated by his actions and attached affidavits. There is no fact from which one can conclude that Claimant is trying to obtain some form of "double recovery" or take advantage of an opportunity in the purchase of

his home. Claimant and his family are victims in this matter, and in the interest of fairness, we respectfully request this Honorable Court to award a recovery to Claimant pursuant to the Settlement Agreement.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing Motion has been provided to Plaintiff's Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all parties by electronically uploading the same to File & Serve Xpress f/k/a LexisNexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 5th day of May, 2016.

FRANCISCO A. ALBITES, ESQ.
Florida Bar NO. 78046
PARKER WAICHMAN LLP
27300 Riverview Center Blvd., Suite 103
Bonita Springs, FL 34134
Phone: (239) 390-1000
Direct: (239) 390-8612
Fax: (239) 390-0055
PWFLPleadings@yourlawyer.com