UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL<br>PRODUCTS LIABILITY LITIGATION<br><br><br>THIS DOCUMENT RELATES TO: ALL CASES | CIVIL ACTION<br><br>NO. 09-02047<br><br>SECTION "L" (5) |

### ORDER & REASONS

Before the Court is Jodi Ferchaud's ("Ferchaud") Motion for a New Trial (R. Doc. 20208). Having read the parties' briefs[1], and reviewed the applicable law, the Court now issues this Order and Reasons.

### I.   BACKGROUND

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used in the construction and refurbishing of homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of smelly gasses, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *In re*

---

[1] Additionally, Ferchaud requests that the Court strike Knauf's Opposition (R. Doc. 20241), filed by Kerry Miller on May 5, 2016, as untimely pursuant to local rule 7.5, which requires filing 8 days before the noticed submission date of May 11, 2016. The Court denies this request, noting that local rules regarding submission dates are not strictly enforced in connection with this MDL proceeding. While the local rules require a party to file a notice of submission in connection with the filing of a motion, it has been the practice of this Court throughout this MDL to set its own timeline regarding submissions and deadlines. In fact, with regard to the instant motion, during the pre-meeting before the monthly status conference on April 26, 2016, the Court instructed Knauf to submit its opposition on or before May 5, 2015. Therefore, the opposition was timely filed and the Court will consider it.

*Chinese-Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819, 829 (E.D.La. 2012), *aff'd*, 742 F. 3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall. Accordingly, these homeowners began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 2047 in the U.S. District Court, Eastern District of Louisiana.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities, and (2) the Taishan Entities. The litigation has focused upon these two entities and their downstream associates. The present motion relates to the proceedings against the Knauf Entities.

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts. The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009. *See* (R. Doc. 18). On November 2, 2009, in Pretrial Order No. 17, KPT agreed to a limited waiver of service. *See* (R. Doc. 401). On March 15-19, 2010, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. *See* (R. Doc. 2713). For purposes of the trial, KPT stipulated that its

Chinese drywall "emits certain reduced sulfur gases and the drywall emits an odor." *Id*. The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law ("*Hernandez* FOFCOL"), *see id.*, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46, which represented a cost of $81.13 per square foot based on the footprint square footage of the house. *See* (R. Doc. 3012).

Thereafter, on October 14, 2010, the Knauf Entities entered into a pilot remediation program with the Plaintiffs' Steering Committee ("PSC") in the MDL. This program was largely based upon the remediation protocol formulated by the Court in *Hernandez*. The Knauf pilot remediation program is ongoing and has, at present, remediated over 2,000 homes containing KPT Chinese drywall using the same protocol.

The instant motion arises out of this Court's order granting Knauf's Motion to Extinguish Settlement Obligations to Ferchaud (R. Doc. 20178) with respect to the Chinese Drywall remediation project that was in progress at Ferchaud's rental properties located at 6021-6025 Canal Boulevard, New Orleans, Louisiana 70124 (the "Properties"), and, instead, pay her what it would have cost to remediate her properties. Ferchaud's properties were damaged during Hurricane Katrina. It was repaired following the storm but, unfortunately, Knauf Chinese drywall was used. Ferchaud filed a claim in this MDL and, when Knauf entered into a settlement agreement, Ferchaud joined in that agreement.

Specifically, as an affected KPT property owner, Ferchaud took part in the Remediation Protocol outlined in the *Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL 2047* (the "Knauf Class Settlement") (R. Doc. 16407-3). Remediation commenced on the Properties on or about November 13, 2014, and the Properties

3

were issued environmental certificates by GFA International on or about December 2, 2014, certifying that the Properties were free of Chinese drywall, drywall dust, residue, etc. GFA International documented the gutted Properties, free of Chinese drywall, drywall dust, and residue with photographs. The remediation duration estimate for the Properties was only three months.

However, throughout the next year, Ferchaud caused numerous delays, sought additional relief not granted by the relevant settlement agreements or WA Agreements, and sought to shift the burden of resolving pre-existing code violations in the Properties to the Lead Contractor, among other obstacles that were created by Ferchaud. She has retained and fired three attorneys who sought to assist her in her pursuit. Moreover, the Lead Contractor, Knauf's counsel, the PSC, and the Special Master made good faith efforts to assist her to no avail.

Pursuant to the dispute resolution mechanism created by the *Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047*, as amended by the Fourth amended agreement (collectively "Knauf Class Settlement Agreement"), to which Ferchaud is bound, the Special Master ruled in favor of the Lead Contractor and Knauf Defendants. The Special Master adopted Moss's October 12, 2015 recommended division of responsibility for code violations, finding that the majority of the deficiencies were Ferchaud's responsibility. The Special Master's opinion also concluded that Ferchaud was responsible for the delay in remediation and was therefore not entitled to receive delay payments or any other/additional damages from Moss. Ferchaud appealed the Special Master's Opinion and Decree, and the Court, after allowing briefs to be filed by Ferchaud and the Lead Contractor, affirmed the Special Master's Opinion and Decree on February 1, 2016, finding that the Special Master correctly determined that (1) Ferchaud was responsible for the delay in remediation, and,

therefore, was not entitled to delay payments; (2) the majority of the code violations outlined by the City of New Orleans in its June 23, 2015 correspondence were the responsibility of Ferchaud; and (3) Ferchaud was not entitled to the other damages claimed under the Remediation Fund and/or Other Loss Fund since her lawsuit is governed by the New Claims Settlement Agreement.  (R. Doc. 20025).

Since this Court issued its Order affirming the Special Master, the obstruction and delays by Ferchaud have only intensified. Ferchaud is now attempting to make additional non-protocol claims against the Lead Contractor and to re-litigate issues already covered by the Court's Order. For example, Ferchaud sent to the Lead Contractor, through its counsel, approximately fifty emails since this Court's February 1 Order and Reasons.  Many of the items about which Ferchaud complained were already addressed by the Ombudsman and the Special Master. Others are non-protocol or pre-existing code violations.  Nonetheless, the Lead Contractor worked diligently to address Ferchaud's issues in a timely manner. Unfortunately, the issues have only increased over time, making the prospect of completing the remediation within the program highly unlikely.  Despite the diligent efforts by the Lead Contractor, Knauf Defendants, Ombudsman, Plaintiffs' Steering Committee, Special Master, and Settlement Administrator to bring Ferchaud's concerns and demands to an amicable resolution, Ferchaud has not responded with any corresponding willingness or effort to resolve the purported issues.  Thus, given that the parties were at an impasse and it was clear that attempting to complete the remediation of the Ferchaud Properties within the Knauf remediation program would be futile, the Knauf Defendants requested equitable relief from this Court in order to make Ferchaud whole. (R. Doc. 20145).

Specifically, the Knauf Defendants filed a Motion to extinguish settlement obligations to Ferchaud upon payment by the Knauf Defendants to Ferchaud in the amount of the remaining remediation funds allocated for the remediation of the property by Moss & Associates, the Lead Contractor. *Id.* The Court granted the Knauf Defendants' Motion and issued an Order extinguishing the settlement obligations of the Knauf Defendants, Plaintiffs' Steering Committee, Lead Contractor, Settlement Administrator, Special Master and Ombudsman upon payment to Ferchaud in the amount of $225,516.13. (R. Doc. 20178). In response to that Order, Ferchaud filed the instant motion for a new trial, which is more properly characterized as motion for reconsideration of a judgment. (R. Doc. 20208).

## II.    LAW AND ANALYSIS

Reconsideration of a judgment is an "extraordinary remedy that should be used sparingly." *Templet v. Hydrochem Inc.*, 367 F.3d 473 (5th Cir. 2004). In deciding whether to reconsider a judgment under Rule 59 of the Federal Rules of Civil Procedure, the Court is tasked with striking the proper balance between two competing interests: finality and the need to render just decisions on the basis of all the facts. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167 (5th Cir. 1991); *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350 (5th Cir. 1993); and *Southern Snow Mfg. Co., Inc. v. SnoWizard Holdings, Inc.*, 921 F.Supp.2d 548 (E.D. La. 2013). To strike the correct balance between justice and finality, the standard in the Eastern District of Louisiana is to consider whether any of the following four factors exist:

1. the motion is necessary to correct a manifest error of law or fact upon which the judgment is based;
2. the movant presents newly discovered or previously unavailable evidence;
3. the motion is necessary in order to prevent manifest injustice; or

6

4.      the motion is justified by an intervening change in controlling law.

*SnoWizard* at 565.

The Court denies Ferchaud's motion as none of the above factors are present in the instant matter.  The interests of both justice and finality are served by denying Ferchaud's Motion and allowing Ferchaud to complete the remediation of her property using the contractor of her choice.

First, there is no manifest error of law or fact upon which the judgment is based. Ferchaud's Chinese drywall-related claims are controlled by the *Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047* (hereinafter "New Claims Settlement Agreement"), (R. Doc. 16978-1), as well as the July 28, 2014 Work Authorization Agreements executed by Ferchaud. This Court is empowered by the New Claims Settlement Agreement with the exclusive jurisdiction to settle disputes between the parties and effectively did so with its Order.  Ferchaud has presented no manifest error of fact or law upon which the Court based its judgment. The present Motion is a continuation of Ferchaud's past obstructions and delays.

Second, the report provided by Ferchaud fails to provide newly discovered or previously unavailable evidence.  Ferchaud bases her motion on the fact that she should have been allowed to file an opposition to the prior motion to extinguish by Knauf.  This argument is unavailing as her opposition would undoubtedly be based on the report attached to her instant motion, which this Court has nonetheless reviewed.  Specifically, Ferchaud filed, as Exhibit Ferchaud-1 to the Motion for New Trial, a report by Air Testing Associates, LLC. The report's conclusion that the property is still suffering the effects of defective drywall is mere conjecture. Every statement to this effect in the report is preceded by language that qualifies the conclusion as uncertain. The

laboratory results are equally inconclusive. They report a "low amount of sulfur (S), most likely as copper sulfides/sulfates" in two copper wire samples. The exact amount is not given. Results from analysis of an alcohol wipe of a third sample came back normal. In addition to the inconclusiveness of the inspection and lab reports, they do not rule out other environmental causes for the alleged corrosion, such as sewer gas or natural gas exposure, nor do they address the typical tarnishing of copper with age.  Therefore, the reports do not provide any new evidence.

Regardless of the contents of Ferchaud's report, the information it contains has been available to Ferchaud for a considerable time. At the time of this latest inspection and harvesting of samples by Ferchaud's chosen company, the Lead Contractor had been denied access to the property by Ferchaud for more than one year. Ferchaud has been in exclusive possession of the home since January 9, 2015, when the lockbox code was changed, and since that time Ferchaud has had her own contractors and consultants in the property. The Lead Contractor and the Knauf Defendants had absolutely no access to or control over the property or its contents during this lengthy delay.

The new allegations, based on conjecture, represent continued obstruction and delay by Ferchaud, who scheduled the inspection to be performed the day after the issuance of the Order extinguishing the Lead Contractor's involvement, though Ferchaud had exclusive access to the property for the past 15 months. The contents of the report — however speculative — were available to Ferchaud at the time the Court issued its Order and prior to then.  Ultimately, however, the information provided within Ferchaud's report does not contain evidence of the continued presence of defective drywall.

Third, there is no manifest injustice to be prevented. The amount awarded to Ferchaud in the Order is more than sufficient to complete the remediation. The settlement agreement with Ferchaud provides three options: (1) remediation by the Lead Contractor, (2) remediation by a contractor of Ferchaud's choosing, and (3) a cash out. Although Ferchaud chose the first option, this Court finds that that option is no longer workable due to the continued obstruction ande delay on the part of Ferchaud. The extinguishment order, however, allows Ferchaud to benefit from change orders and credits that are normally not available to claimants choosing options 2 or 3, such as credits for replacing plaster with drywall. The plaster credits and change orders amount to approximately $70,000 alone, and Ferchaud is not bound to use credits in any specific way. If the Court allows its Order to stand, the total amount that would be paid to Ferchaud in change orders and credits alone — this is on top of the original remediation budget — is $136,865.74. The total payment to Ferchaud for completion of the remediation would be $225,516.13. Ferchaud has failed to demonstrate how the Order creates a manifest injustice from which she deserves relief. The amount that the Order grants to Ferchaud represents the cost of completion *plus* added credits. Ferchaud has failed to show how this amount is unjust or insufficient for the completion of the remediation.

Finally, there has been no intervening change in controlling law.

### III.   CONCLUSION

**IT IS ORDERED** that Ferchaud's Motion for a New Trial, understood as a Motion for Reconsideration, is **DENIED**.

New Orleans, Louisiana this 10th day of May, 2016.

*/s/ Eldon E. Fallon*
UNITED STATES DISTRICT JUDGE