UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: CHINESE-MANUFACTURED | * | MDL 2047 |
| DRYWALL PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION L |
| | * | |
| This document relates to: All Cases | * | JUDGE FALLON |
| | * | |
| | * | MAGISTRATE JUDGE WILKINSON |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * *

### WAYNE CLARKE'S REPLY TO KNAUF DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS (REC. DOCS. 20114 AND 20184) TO SPECIAL MASTER'S DETERMINATION DENYING REMEDIATION FUND BENEFITS

Wayne Clarke files this Reply to Knauf Defendants' ("Defendants") Response to Plaintiff's Objections (Rec. 20114 and 20184) to Special Master's Determination Denying Remediation Fund Benefits, per the oral agreement between Plaintiff's counsel, Defense counsel, and Special Master, to allow Plaintiff Wayne Clarke.

**I.   BACKGROUND**

Wayne Clarke ("Clarke") served twenty years in the United States Navy and was prepping for retirement when he lost his retirement home in 2005 due to Hurricane Katrina. Clarke took out a Small Business Loan ("SBA loan") to repair his home, and, unbeknownst to him, used defective Knauf Chinese drywall in his repairs. Clarke began renting the property after the repairs were completed and did so continuously until the defective drywall was discovered. After discovering Defendants' drywall was defective, Clarke informed his tenants, who then moved out of the house. Clarke filed suit against Knauf Defendants in 2009.[1] Due to the loss of rental income Clarke could not pay the monthly payments on the SBA loan. With his inability to

---

[1] *Payton, et al. v. Knauf Gips KG, et al.*, 2:09-cv-07628 (E.D. La. 2009).

rent or sell the property due to the presence of defective Knauf Chinese drywall, Clarke's attorneys submitted a hardship claim under the Knauf Remediation Program. This claim was denied. Despite Clarke's best efforts, the house went into foreclosure on August 24, 2011.

Two claims have been filed for Clarke seeking relief from both the Remediation Funds and the Other Loss Funds outlined in the Settlement Agreement.[2] Clarke is eligible for the relief for both of his claims but both claims have been denied by the Special Master.

## II.   ARGUMENT

This Court should reverse the denial of Clarke's claims because Clarke clearly meets the conditions and terms established by the Settlement Agreement for relief from the Other Loss Funds as well as the Remediation Funds. Clarke is entitled to $3,900.00[3] in Lost Rental under Section 4.7.1.2, a Remediation Lump Sum payment of $14,195.00[4] under Section 4.3.5.1, $31,403.46 in Lost Equity under Section 4.7.1.3[5], and $185,000.00 in Other Economic Losses under Section 4.7.1.2. Defendants incorrectly argued in their response that Clarke is not entitled to relief from the Remediation Fund Benefits, claiming that: (1) Clarke did not confer with the Knauf Defendants regarding Remediation Fund Benefits, (2) As a Commercial Owner Clarke is not eligible for the Lump Sum Payment, and (3) Clarke's Affected Property was never inspected by an Approved Inspector. The allegations in Defendants' Response are factually incorrect for the following reasons: (1) Clarke *did* confer with Defendants regarding Remediation Fund Benefits, as required by Section 4.2.9 of the Knauf Class Settlement Agreement ("Settlement Agreement") (attached hereto as Exhibit A), (2) Clarke is a Commercial Owner under the terms

---

[2] Claim # 12175 – Miscellaneous Claim for Lost Rental Income and Remediation Lump Sum Payment.
   Claim # 6799 – Foreclosure Claim for Lost Equity and Other Economic Losses.
[3] $1,300 per month times three (3) months.
[4] $8.50 per square foot under air times 1,670 square foot under air.
[5] Principal Payments on VA Loan = $17,236.0
   Principal Payments on SBA Loan = $14,166.56

of Section 4.3.5 of the Settlement Agreement and *is* eligible for the Lump Sum Payment, and (3) Clarke's home *was* inspected and determined to contain KPT drywall and a copy of this report with supporting evidence has been submitted to the Court (attached hereto as Exhibit B).

### A. Clarke met and conferred with Defendants regarding Remediation Fund Benefits through several email exchanges.

Defendants argue that "Clarke failed to inform the Knauf Defendants that any objection would relate to the Special Master's denial of the Lump Sum Payment, which is a Remediation Fund Benefit."[6] In an email dated February 19, 2016, Clarke's attorney's office confirmed with Rene Merino, defense counsel, that the meet and confer requirement had been met:

> "Rene, from our earlier phone conversation, this is to confirm our discussion regarding the meet and confer required for our Claimant, Wayne Clarke, ID 100055, to file an objection to the Final Special Master decision of $0.00 Award for Miscellaneous Claim, Claim ID 12175."

See Exhibit A. Merino responded, "Confirmed. Thanks." *Id.*

To ensure total clarity, Clarke's attorneys' office wrote back:

> "Rene, does this satisfy the requirement of the meet and confer? **Can the objection now be filed appealing this denial directly to the Court?** Just want to clarify." (emphasis added).

*Id.* Merino responded "Yes." *Id.*

Clarke's claim requesting the Remediation Lump Sum Payment was, in fact, included in Miscellaneous Claim #12175 – the same claim number referenced in the February 19th conversation above where Merino informed Clarke's attorney's office that the meet and confer requirement was satisfied. Defendants claim that they only were consulted about an appeal related to the Other Loss Fund. That conversation did not occur almost a month later on March 17, 2016, and dealt with a second and entirely separate claim.[7] Clarke made all good faith efforts

---

[6] Defendants' Response at 3-4.
[7] *See* Exhibit A.

3

to comply with all of the requirements of the Settlement Agreement, including contacting Defendants for meet and confers prior to filing any objections.

### B. Clarke is a Commercial Owner and is eligible for the Remediation Lump Sum Payment under Section 4.3.5 of the Settlement Agreement.

As Defendants noted, it is undisputed that Clarke is a Commercial Owner under the terms of the Settlement Agreement. However, Defendants' argument that the Settlement Agreement excludes Commercial Owners from the relief of a Lump Sum Payment is factually incorrect and fails to take into account all relevant sections of the Settlement Agreement.

Section 4.3.5.1 of the Settlement Agreement qualifies Owners, including Commercial Owners, prior to foreclosure of Affected Properties to the Remediation Lump Sum Payment outlined in Section 4.3.1.1. Specifically, Section 4.3.5.1 states:

> "For foreclosed properties, (a) the Mortgagee shall be entitled to the benefits under Sections 4.3.1, 4.3.2, or 4.3.3, except for the Other Covered Expenses, but only if the Mortgagee became the owner after foreclosure and remains the Owner of the Affected Property and the Mortgagee provides a release to the Knauf Defendants and Other Releases; **and (b) the *Owner* prior to the foreclosure shall be entitled to the Lump Sum Payment under Section 4.3.1.1, but not the Delay Period Payment under Section 4.3.1.2.**" (emphasis added).

Third Amended Settlement Agreement, Section 4.3.5.1. For further clarification, Section 1.1.2.3 of the Settlement Agreement states, "The Residential Owner Subclass and the Commercial Owner Subclass shall be referred to collectively as the "Owner Subclasses." *Id.* at Section 1.1.2.3

The Settlement Agreement makes it clear under Section 1.1.2.3 that the term "Owner," when used throughout the Agreement, includes both Residential and Commercial Owners. Defendant's argument that "nowhere in the Agreement are the Lump Sum Payment or the Other Covered Expenses granted to Commercial Owners" is simply incorrect and inapplicable here. Plaintiff never asked for "Other Covered Expenses" in any claims. Section 4.3.5.1 clearly states

4

that the "Owner" prior to foreclosure is entitled to the Remediation Lump Sum Payment set forth in 4.3.1.1 – this includes Commercial Owners. Moreover, the Settlement Agreement plainly states in Section 4.1:

> "In consideration of settlement of all claims against the Knauf Defendants by Participating Class Members, the Knuaf Defendants shall establish two funds, a Remediation Fund and an Other Loss Fund. **Only the Owner Subclasses are eligible to participate in the Remediation Fund. Both the Owner Subclasses and the Tenant Subclass are eligible to participate in the Other Loss Fund."** (emphasis added).

*Id.* at Section 4.1. Contrary to Defendants' argument, the terms of the Settlement Agreement state that both Residential and Commercial Owners are entitled to Remediation Funds.

### C. Clarke's home was inspected and determined to contain KPT drywall, and the report and supporting evidence has been submitted to the Court.

Clarke has submitted substantial evidence to the Court supporting the fact that his home contained KPT drywall, thus qualifying him to the Remediation Lump Sum Payment under Section 4.3.5.1 (referenced above). A list of such evidence is attached hereto as Exhibit C. Defendants claim that: (1) Clarke's property was never inspected by an "Approved Inspector," so there is no proof that Clarke's house was a KPT property and it is "impossible" to calculate the Lump Sum Payment, and (2) Clarke does not meet the qualifying procedures outlined in Section 4.4 – a section in the Settlement Agreement that pertains to KPT property owners. These arguments confuse the facts and misinterpret the terms of the Settlement Agreement.

#### 1. Clarke's home went into foreclosure more than a year prior to the date that the Settlement Agreement was filed, rendering it impossible for him to know its terms or its requirements for home inspections.

Defendants argue that there is no proof that Clarke's house was never inspected by an "Approved Inspector" nor deemed a KPT property, so it is "impossible" to calculate a Lump Sum Payment under Section 4.3.1.1. This argument fails to take into account specific and

5

important facts concerning Clarke's case. Clarke's home entered into foreclosure on August 24, 2011. The Settlement Agreement was filed on December 11, 2012 – approximately one year and four months later. Accordingly, Clarke was unaware of any requirements regarding "Approved Inspectors," what was deemed a "KPT Property," or what was deemed a "Mixed Property" at the time that he still had possession of his house prior to foreclosure. Nonetheless, Clarke still took the initiative to have an inspection done and submit the report and corresponding evidence to the Court before the Settlement Agreement later outlined its requirements for such.[8]

In an email exchange between Plaintiff's attorney's office and the Claims Administrator regarding stipends, the Claims Administrator **admits** that Clarke had a KPT property (email attached hereto as Exhibit D). Specifically, the Claims Administrator said, "We agree with your dispute, **that Wayne Clark had a KPT property** and therefore the $1,000 stipend is appropriate."[9] (emphasis added).

Not only was it impossible for Clarke to adhere to the specific inspection requirements in the Settlement Agreement because he no longer had possession of the house due to foreclosure, Clarke still went out of his way to submit substantial evidence to the Court that his house contained the defective Chinese drywall.[10] Despite the fact that Clarke submitted evidence and the Claims Administrator admitted the house was a KPT property, Defendants' position is that it is "impossible" to calculate an appropriate Lump Sum Payment, and that Clarke should be awarded nothing. This position to completely exclude Clarke from relief breaches the very terms of the Settlement Agreement per Section 4.3.5.1 and completely ignores substantial evidence submitted to the Court that shows that Clarke's house contained defective Chinese drywall.

---

[8] *See* Exhibit B.
[9] *See* Exhibit D.
[10] *See* Exhibit C.

### 2. Despite the fact that Section 4.4 does not pertain to Clarke, he still substantially met the requirements.

Defendants argue that Clarke does not meet the qualifying procedures set out in Section 4.4 of the Settlement Agreement and is therefore excluded from receiving a Remediation Lump Sum Payment.[11] However, Defendants fail to recognize a key distinction in the language of Section 4.4 that makes it inapplicable to the facts here. In part, Section 4.4 reads:

> "In order to qualify for benefits of the Remediation Fund an **Owner** Subclass Member whose property has not already been remediated must submit **physical proof such as photographic evidence or inspection reports satisfactory to the Settlement Administrator that the property has KPT Chinese Drywall.**" (emphasis added).

Third Amended Settlement Agreement, Section 4.4. The plain language of Section 4.4 states that to qualify for Remediation Fund benefits, an **Owner** must adhere to the procedures laid out within the section. At the time that the Settlement Agreement was filed, Clarke was no longer an Owner of his Affected Property *because the house had already gone into foreclosure more than a year prior.* Because he lost his house to foreclosure, the Section that qualifies Clarke for the Lump Sum Payment under the Settlement Agreement is Section 4.3.5.1 that relates to Foreclosed Properties – NOT Section 4.4. Even though Clarke, as a non-owner at the time, was not required to have met the qualifying procedures under Section 4.4, he *still* substantially met the requirements on his own by submitting an inspection report and evidence to the Court.

Moreover, the language of the Section 4.4 states that plaintiffs must submit "physical proof such as photographic evidence or inspection reports to the Settlement Administrator [showing] that the property has KPT Chinese Drywall." As mentioned above, Clarke submitted such evidence and the Claims Administrator admitted that property was a KPT property – thus demonstrating that the evidence submitted to the Court was satisfactory.

---

[11] Defendants' Response at 5-7.

7

**III.     CONCLUSION**

Due to Hurricane Katrina, Clarke lost his largest retirement asset. Due to the presence of defective Chinese drywall, Clarke has not only lost his home, but he has been left with a liability of a $185,000.00 SBA loan, garnished wages, ruined credit, and a debt that will, without relief here, burden him for the rest of his life. For the foregoing reasons, the Court should reverse Special Master's denial related to the Remediation Fund benefits, including the Lump Sum Payment and Lost Equity claims, as well as the Other Loss Fund benefits for Lost Rental.

Respectfully Submitted,

By: /s/ *David M. McMullan, Jr.*
David M. McMullan, Jr.
DON BARRETT, P.A.
404 Court Square
Lexington, Mississippi 39095
Telephone: (662) 834-2488
Fax: (662) 834-2628
dmcmullan@barrettlawgroup.com

*Counsel for Plaintiff Wayne Clarke*

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that a copy of the foregoing pleading has been served upon all counsel by electronic notice via the Court's CM/ECF system on this 13th day of May, 2016.

                                                                     /s/ *David M. McMullan, Jr.*
                                                                     David M. McMullan, Jr.