UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | * * * * | MDL 2047 SECTION L |
| This document relates to: All Cases | * * * * | JUDGE FALLON MAGISTRATE JUDGE WILKINSON |

* * * * * * * * * * * * * * * * * *

### KNAUF DEFENDANTS' OPPOSITION TO JOSE CRUZ'S OBJECTION TO SPECIAL MASTER'S DECISION (REC. DOC. 20239)

**MAY IT PLEASE THE COURT:**

The Knauf Defendants[1] file this Opposition to *Jose Cruz's Objection to Special Master's Decision Regarding Claimant #111702; Claim for Option 3 Remediation benefits Under the Settlement Agreement*.[2] The Motion filed by Jose Cruz ("Cruz") should be denied because the Special Master did not err in his finding that Cruz failed to make a reasonable inquiry into the presence of Chinese drywall prior to purchasing the Affected Property.[3] The Knauf Defendants respectfully request that the Court deny Cruz's Motion and dismiss his claims without prejudice.

---

[1] The Knauf Defendants include Knauf Plasterboard (Tianjin) Co., Ltd., Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH, Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda., and PT Knauf Gypsum Indonesia. All capitalized terms herein have the same definitions as set forth in the Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 (the "Knauf Class Settlement Agreement"), Rec. Doc. 16407-3.

[2] Rec. Doc. 20239.

[3] Unless otherwise defined herein, all capitalized terms carry the same meanings given to them in the Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 (the "Knauf Class Settlement Agreement"), Rec. Doc. 16407-3.

## I. BACKGROUND

Cruz purchased the Affected Property, 2519 SE 12th Court, Homestead, FL, in "as is" condition via a short sale in 2011 for $53,000. Though the Property was in an area known to be a Chinese drywall hotspot,[4] and the Chinese drywall addendum was conspicuously missing from his real estate contract (though it should have been attached),[5] Cruz failed to have a Chinese drywall inspection performed on the property prior to purchase. Cruz later filed a claim and was listed in Exhibit B of the *Beane* omnibus complaint.[6] The claim is controlled by the *Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047* (hereinafter "New Claims Settlement Agreement"),[7] which does not provide benefits to claimants who purchased Affected Properties without making a *reasonable inquiry* into the presence of Chinese drywall.[8]

The Special Master correctly ruled that the subjective knowledge of the buyers and sellers regarding the presence of Chinese drywall in the Affected Property is not at issue and is irrelevant to the determination of whether Cruz made a reasonable inquiry under the circumstances. The only issue presented here is whether Cruz made a reasonable inquiry into the presence of Chinese drywall in the property. The Special Master, after reviewing all the evidence and hearing from all the parties, correctly concluded that Cruz failed to make a reasonable inquiry. Cruz now seeks to impermissibly provide additional information that was not submitted to the Special Master and that is inconsistent with the previously-provided evidence.

---

[4] At least 50 properties within approximately one mile of the Cruz Property were already publicly in litigation at the time Cruz purchased his Property in 2011, and at least 70 properties within approximately 2.5 miles were already publicly in litigation at that time.

[5] Cruz's Exhibit A, Special Master's Opinion and Decree, p. 1.

[6] *Paul Beane, et al. v. Gebrueder Knauf Verwaltungsgesellschaft KG, et al.*, No. 13-609 (E.D. La. 2013).

[7] Rec. Doc. 16978-1.

[8] *Id*. at Section IV(D).

## II. LAW & ARGUMENT

Cruz's Chinese drywall-related claims are controlled by the New Claims Settlement Agreement,[9] which empowers this Court with the exclusive jurisdiction to settle disputes between the parties.[10] After mediation, the filing of briefs, and oral argument, the Special Master ruled in favor of the Knauf Defendants, stating that "Mr. Cruz did not act reasonably under the circumstances" which "should have given Mr. Cruz enough concern to take affirmative steps to ascertain whether or not Chinese drywall was in fact present on the property."[11]

The New Claims Settlement Agreement requires that claimants meet an objective "reasonable inquiry" standard to qualify for benefits:

> Any Exhibit A Claimant or Exhibit B Claimant who purchased the Affected Property with knowledge that there was reactive Chinese Drywall in the Affected Property, or who purchased after December 9, 2009 and failed to make a reasonable inquiry, is not eligible for benefits under this Agreement absent the Knauf Defendants' consent, unless the Claimant was legally assigned the claim owned by the seller of the Affected Property. The claims of any such Exhibit A or Exhibit B Claimant shall be dismissed without prejudice from the Beane Complaint.

In 2011, Cruz failed to make a reasonable inquiry and took the calculated risk of purchasing a short sale property in "as is" condition in an area known to have a multitude of Chinese drywall properties. Cruz did not have a Chinese drywall inspection conducted, though he now provides an affidavit from his inspector,[12] who is now asserting at the eleventh hour that his general inspection was indeed a Chinese drywall inspection too. With this, Cruz seeks to overturn the

---

[9] The New Claims Settlement Agreement incorporates portions of the Knauf Class Settlement Agreement, specifically sections related to the Remediation Fund and Remediation Fund benefits available to claimants under the New Claims Settlement Agreement.

[10] *Id*. at Section VIII(H).

[11] Cruz's Exhibit A, Special Master's Opinion and Decree, p. 3.

[12] Rec. Doc. 20258.

Special Master's Opinion and Decree and have the Knauf Defendants insure his $53,000 gamble. The New Claims Settlement Agreement was written to eliminate this specific situation.

The circumstances surrounding the Cruz purchase would have led a reasonable purchaser in the same position as Cruz to perform a Chinese drywall inspection: the Chinese drywall addendum to the contract was missing; the Property's microwave oven was broken and the air conditioner required a deep cleaning, signs that could have led a qualified inspector to find Chinese drywall; and in 2011, the area where the Property was purchased was known as a Chinese drywall hotspot. In addition to not conducting a Chinese drywall inspection, which would have been easy to obtain in the Miami area in 2011, Cruz failed to even request the missing Defective Drywall Addendum that should have been provided with the purchase contract. This, in itself, shows that a reasonable inquiry was not made. Cruz, who was a real estate agent, did not act as a reasonable purchaser would have acted, much less how a reasonable real estate agent or former real estate agent would have acted.

As the Special Master's Opinion and Decree shows, Cruz's purchase contract included an "Addenda" section. Four of the boxes in this section were checked off, meaning that those addenda were to be attached and incorporated into the purchase contract. It is undisputed that three of the addenda were in fact attached to the contract. However, the fourth addendum, the Defective Drywall Addendum, was not attached. It is also undisputed that Cruz made *no inquiry* into the missing Defective Drywall Addendum. The Special Master correctly found that Cruz's failure to do more when confronted with this missing contract addendum equates with a failure to make a reasonable inquiry, as required by the New Claims Settlement Agreement.

To prove that a sufficient inquiry was made, Cruz asserts that he requested his inspector to check for Chinese drywall. If true, this proves that Cruz was aware of the potential of Chinese

drywall and failed to act reasonably, which under the circumstances would have been to perform an actual Chinese drywall inspection by an inspector qualified to perform such an inspection. In 2011, Chinese drywall inspectors were prevalent and relatively inexpensive in the Miami area.

The general inspection that Cruz conducted on the property found an air conditioner that needed a deep cleaning,[13] as well as a broken microwave oven.[14] Had Cruz conducted a reasonable inquiry, these damaged appliances could have alerted a Chinese drywall inspector of potential contamination. Two tell-tale symptoms of Chinese drywall are blackened air conditioner coils and broken appliances. Again, after these symptoms were discovered, no further inquiry was made by Cruz.

On May 20, 2016, well after the mediation with the Special Master and after the Special Master's issuing of his *Opinion & Decree*, which correctly finds that the inspection ordered by Cruz was a *general inspection* and not one geared to discover Chinese drywall, Cruz filed with the Court an affidavit from his inspector who is now attempting to re-characterize his inspection as a Chinese drywall inspection. The Court should give this affidavit no weight in its review of the Special Master's *Opinion & Decree*, for two reasons: (1) the relevant provision of the Knauf Class Settlement Agreement limits the Court's review, barring an exceptional circumstance, to that which was provided to the Special Master, and (2) the affidavit is unreliable.

The New Claims Settlement Agreement incorporates from the Knauf Class Settlement Agreement the procedures associated with the Remediation Fund (as opposed to those associated with the Other Loss Fund, which it does not incorporate). Section 4.2.9 of the Knauf Class Settlement Agreement, in the section of the Agreement pertaining to the administration of the Remediation Fund, provides that "[u]nless the Court orders otherwise, appeals will be based on

---

[13] *See* Cruz's Exhibit D, inspection report, page 6.

[14] *Id*. at 8.

the record and briefing before the Special Master without further evidentiary submissions, briefing or argument." Cruz, however, filed the last-minute affidavit to rebut both the Knauf Defendants and the Special Master's conclusion that his inspection was not a Chinese drywall inspection.

The affidavit, however, is completely unreliable. It contradicts the inspection report itself, which makes no mention of a hole being cut into the drywall and no mention of any outlets being checked for corrosion.[15] In fact, the inspection report describes an inspection that was limited to visible areas only.[16] A review of the inspection report by the Court would quickly demonstrate that the inspection was one of a general nature, limited to visible areas, and inconsistent with the late-filed affidavit. Neither the inspection report nor the affidavit provide any qualifications of the inspector to perform Chinese drywall inspections. As previously mentioned, the inspection report includes information that likely would have led a qualified Chinese drywall inspector to discover Chinese drywall. Further, the affidavit provided by Cruz's inspector was executed more than five years after the inspection of the Cruz property. This affidavit is unreliable at best.

### III.   CONCLUSION

The Special Master correctly ruled that Cruz's claim cannot be settled through the New Claims Settlement Agreement for Cruz's failure to make a reasonable inquiry. Given the circumstances under which Cruz purchased the Affected Property, a reasonable purchaser would have hired a qualified Chinese drywall inspector to perform a Chinese drywall inspection. A reasonable purchaser also would have requested the missing Defective Drywall Addendum. For the foregoing reasons, the Court should deny Cruz's motion and dismiss his claim without prejudice.

---

[15] See Cruz's Exhibit D, inspection report.

[16] *Id*. Throughout the report the inspection is described as limited to visible areas.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**

/s/ *Kerry J. Miller*
**KERRY J. MILLER (#24562), T.A.
DANIEL J. DYSART (#33812)
RENE A. MERINO (#34408)**
201 St. Charles Avenue, Suite 3600
New Orleans, LA 70170
Phone: (504) 566-8646
Fax: (504) 585-6946
Email: kjmiller@bakerdonelson.com

*Counsel for the Knauf Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 24th day of May, 2016.

/s/ *Kerry J. Miller*
**KERRY J. MILLER**