UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE - MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION

MDL Docket No. 2047

THIS DOCUMENT RELATES TO:

SECTION l

*Payton, et al v. Knauf Gips KG, et al.;*
*Cause No. 09-7628*

JUDGE FALLON

MAGISTRATE JUDGE WILKINSON

*Rogers, et al v. Knauf Gips, KG, et al.;*
*Cause No. 10-0362*

*Block, et al. v. Gebrueder Knauf*
*Verwaltungsgesellschaft, KG, et al.*
*Cause No. 11-2349*
_____/

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF MAGDALENA GARDENS
CONDOMINIUM ASSOCIATION, INC.'S MOTION TO ENFORCE THE KNAUF
SETTLEMENT AGREEMENT**

**MAY IT PLEASE THE COURT:**

**I.    INTRODUCTION AND FACTUAL BACKGROUND**

Plaintiff Magdalena Gardens Condominium Association, Inc. (hereinafter "the Association") is the governing body of the condominiums located at 240 West End Drive in Punta Gorda, Florida.  In 2009, defective Chinese drywall was discovered in over 70 units within the Magdalena Gardens Condominiums.  This included drywall later identified as "KPT Chinese Drywall", as defined in the Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 (hereinafter "the Knauf Settlement Agreement"), Section 1.26., and "Non-KPT Chinese Drywall", as defined in Section 1.43. of the Knauf Settlement Agreement.  The Association filed its Chinese drywall claims related to numerous condominium units, including units 1322 and 1521 at issue in this Motion, against the Knauf Defendants in

Omnibus Complaints I, I(A), I(B), IV, and X.  Units 1322 and 1521, along with numerous other units within Magdalena Gardens Condominiums were submitted to the Knauf Pilot Program.  Units 1322 and 1521, along with several other units within the Magdalena Gardens Condominiums, were inspected by Benchmark per the Inspection Protocol set forth in the Knauf Settlement Agreement, and were found to contain both KPT and Non-KPT drywall.  Thereafter, a Benchmark inspection report was issued for units 1322 and 1521 which found the units to be "Mixed Propert[ies]", as defined in Section 1.36. of the Knauf Settlement Agreement. See Exhibit A (filed under seal).   The "KPT Drywall Percentage", as defined in Section 1.27. of the Knauf Settlement Agreement, was found to be 20 percent for unit 1322 and 50 percent for unit 1521.

A walk through for preparation of the "Xactimate" and "Final Cost Estimate", as defined in Sections 1.77. and 1.14., respectively, of the Knauf Settlement Agreement, was conducted by Moss & Associates, LLC (hereinafter "Moss") on or around May 14, 2012, for both units.  A Final Cost Estimate was prepared and executed by Moss on or around July 19, 2012, for both units.  See Exhibit B (filed under seal).  As Units 1322 and 1521 were classified as Mixed Properties, these properties were not eligible for Option 1 remediation under the Knauf Settlement, and the undersigned counsel was instructed by Brown Greer, settlement administrator for the Chinese Drywall Settlements, and Kyle Spaulding of Frilot, LLC, former counsel for the Knauf Defendants, that Mixed Properties would be addressed at a later date.

On September 4, 2013, Kyle Spaulding advised the undersigned that the release to be signed by the Association for its Mixed Properties to receive Option 3 funds had been approved by the Knauf Defendants.  Thereafter, the Association began submitting Option 3 paperwork for all of its Mixed Properties, and received funds for units 921, 1221, 1223, and 1313.  Despite the

same paperwork as was submitted for units 921, 1221, 1223, and 1313 being submitted for units 922, 1322, and 1521, unbeknownst to the undersigned, the claims related to these three latter units were not paid.

In October of 2014, approximately 6 months after submitting Option 3 paperwork for units 922, 1322, and 1521, the Association commenced the partial remediation of units 1322 and 1521. The units were only partially remediated due to the limited resources of the Association resulting from only partial recovery of Chinese drywall remediation damages for many of the Magdalena Gardens Condominium units.

On or around July 16, 2015, the undersigned learned that the Association had not received payment on its Option 3 claims related to units 922, 1322, and 1521. The undersigned had not been notified by either Knauf or Brown Greer that these claims had been denied, but discovered that they had not been paid when Brown Greer provided a spreadsheet to the undersigned detailing benefits conferred under the Knauf Settlement to all clients. The spreadsheet showed that no funds were issued for units 922, 1322, and 1521. Under the Pilot Program procedures, claimants receive a wire transfer directly from Brown Greer, and counsel is not notified when each claim is paid.

After several follow ups with Brown Greer, the undersigned was informed that Knauf had denied the claims related to units 922, 1322, and 1521 on the reasoning that the unit owners of these units, who were not the claimants of the Option 3 funds, had purchased the units with knowledge of the Chinese drywall[1]. The undersigned immediately contacted Rene Merino,

---

[1] At the time the Option 3 settlement paperwork was submitted for units 922, 1322, and 1521 in early 2014, only Unit 922 was owned by a unit owner who purchased with knowledge of Chinese drywall. Unit 1321 was subsequently purchased by a unit owner with knowledge of Chinese drywall in September of 2014, and Unit 1521 is still owned by the original unit owner who purchased the condominium in 2007, well before Chinese drywall was discovered in the Magdalena Gardens Condominiums. Thus, Knauf's initial denial of the claims related to units 1322 and 1521 at issue in this Motion was improper even using Knauf's own basis for the denial. However, more

counsel for Knauf, and explained, as was explained to him previously when Knauf attempted to deny the Association's claims for similarly situated units, that the unit owner was not the claimant, and his or her purchase of the unit with knowledge of Chinese drywall is irrelevant. The undersigned reminded Mr. Merino that the Association has standing to bring claims for all affected units and that the sale of a unit (notably, numerous units have been bought and sold since the filing of the initial claim) does not affect the Association's claims. Indeed, this issue was previously discussed with Mr. Merino and resolved in favor of the Association.

Next, Knauf's counsel presented a new argument, claiming that the claims related to units 922, 1322, and 1521 were denied because the individual unit owners had remediated the properties, and paying the Association on its Option 3 claims would present a "double recovery" to the Association. The undersigned then advised Knauf's counsel that it was the <u>Association,</u> not the individual unit owners, who paid for a partial remediation of units 1322 and 1521, and thus the "double recovery" it claimed was not applicable.[2]

Next, Knauf's counsel advised the undersigned that Knauf now intended to treat units 1322 and 1521 as "Already Remediated Properties" on the reasoning that the Association did not submit all of its Option 3 paperwork to Brown Greer prior to the units being remediated, and thus Knauf was now only obligated to pay them the KPT portion of the partial remediation costs. Upon receiving proof that the Association did in fact submit all Option 3 paperwork for units 1322 and 1521 approximately 6 months prior to the commencement of remediation, Knauf's counsel advised that it would still treat these properties as Already Remediated Properties and only offer the KPT portion of the total remediation costs spent.

---

importantly the Association is the claimant for each of these claims, and the individual unit owners are not seeking compensation from the Knauf Settlement.
[2] The Association's claim related to unit 922 has been withdrawn.

## II.     ARGUMENT

Per the Knauf Settlement, Section 4.3.4., Mixed Properties are eligible for benefits under Option 2, the self-remediation option, which requires the claimant to contribute the non-KPT portion of the remediation costs set forth in the Final Cost Estimate, or Option 3, the cash out option.  Because many claimants with a Mixed Property, like the Association, are not able to contribute the non-KPT portion of the remediation costs, Option 3 is the only option available. Per Section 4.3.4.2. of the Knauf Settlement, the Option 3 remediation payment is calculated by multiplying the Final Cost Estimate by the KPT Drywall Percentage.  Notwithstanding the above, after over 4 years of the Association waiting for its remediation benefits for units 1322 and 1521, Knauf now contends that these units should be treated as Already Remediated Properties.  Such interpretation is in direct contravention of the express language of the Knauf Settlement.  Further, Knauf's interpretation would unfairly result in a lower payment to the Association.

The Knauf Settlement also provides that properties remediated by the property owner or for which a remediation contract was entered into <u>prior to the December 20, 2011 execution date of the settlement</u> shall be resolved by the "Already Remediated Properties Protocol".  The classification of a property as an Already Remediated Property can significantly affect the benefits a claimant is entitled to  because the Already Remediated Properties Protocol bases Knauf's payment on the actual remediation cost spent vs. the amount of Moss's Final Cost estimate.  This difference in settlement benefits is particularly significant when applied to a partially remediated property, such as units 1322 and 1521.

Again, the two units at issue in this Motion were partially, not fully remediated, by the Association beginning in <u>October of 2014</u>, after being properly submitted to the Pilot Program,

receiving a Benchmark inspection, receiving a Final Cost estimate, and submitting all paperwork required under Option 3 of the Knauf Settlement for Mixed Properties. They clearly do not fall within the definition of Already Remediated Properties. Furthermore, it would be unjust to allow Knauf to compensate the Association based on the amount spent on a partial remediation instead of the KPT portion of the full remediation value to which the Association is entitled. Again, the settlement provides no support for this position, and it is in fact in direct contravention of the express language of the Knauf Settlement.

Finally, this is a class settlement wherein class members in the same position must be treated similarly. Knauf has no valid justification for treating units 1322 and 1521 differently than other similarly situated condominium units in Magdalena Gardens and in other condominium groups the undersigned represents. In the four years the undersigned has spent ushering clients through the Knauf Settlement, the undersigned has never seen an inquiry undertaken by Knauf until now regarding whether a unit was remediated after Option 3 was chosen and paperwork submitted, but before the claim was paid; much less, Knauf attempting to use the subsequent remediation of a property as a basis to disqualify it from Option 3. The Knauf Settlement does not provide for such a result.

### III.  CONCLUSION

For the reasons set forth in detail above, Plaintiff Magdalena Gardens Condominium Association, Inc. respectfully requests that the Court enforce the terms of the Knauf Settlement Agreement and Order the immediate payment by the Knauf Defendants of the Association's Option 3 claims related to Magdalena Gardens Condominium units 1322 and 1521.

Dated: May 31, 2016

Respectfully Submitted,

/s/ Holly R. Werkema
Holly R. Werkema
Florida Bar No. 71133
Baron & Budd, P.C.
3102 Oak Lawn Ave., Ste. 1100
Dallas, TX  75219
hwerkema@baronbudd.com
Phone: (214) 521-3605
Fax:  (214) 520-1181

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Kerry Miller and Rene Merino, counsel for the Knauf Defendants, Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U. S. Mail and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in Accordance with Pre-trial Order No. 6 and that the foregoing was electronically filed with Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with the procedure established in MDL 2047, on this 31st day of May, 2016.

/s/ Holly R. Werkema
Holly R. Werkema