71, Ulleswater Road,

Southgate,

London,

N14 7BN

England.

13th June 2016

The Hon. Eldon E Fallon,

United States District Court,

Eastern District of Louisiana.

BY FAX: +1504 589 6966

**Re: Chinese Drywall MDL No. 2047 and**

**Re: 313 James Circle, Lake Alfred, Florida, 33850.**

Dear Judge,

I write further to today's telephone conversation between my wife and Elisa from the Court Office and as advised by Elisa.

My wife, Neeraj Kapur and I are resident in the UK at 71, Ulleswater Road, Southgate, London, N14 7BN. United Kingdom. This is our address for correspondence purposes

My contact telephone numbers are: Mobile +447973 724 598; Landline +44208 882 6212. My wife's number is +447917223202.

Our email addresses are as follows: deepakkkapur@yahoo.co.uk and navroh@hotmail.com

In September 2006 my wife and I bought property 313 James Circle, Lake Alfred, Florida, 33850. This was purchased from Meritage Homes. That property has been let for a number of years after purchase and we continued to reside in the UK.

As a result of visiting electrician who came to fix some electrical sockets we were told there was soot visible, we commissioned a report in October 2015 and that report from Lakeland Laboratories identified an issue of high sulphur content.

It was as a result of this report and the subsequent enquiries we made, we first became aware of the issue of Chinese Drywall.

We then contacted Meritage Homes in relation to this issue and invited them to inspect and remedy. After an unsatisfactory exchange of emails we then wrote to Meritage furnishing them with a Notice on the 25th October 2015 inviting Meritage to inspect remedy and or repair.

That Notice was met with a letter of 3rd November 2015 from Greenberg Traurig effectively telling us that we were barred from pursuing a claim against Mertiage Homes because of MDL2047. The letter further directed us to various links.

Over the subsequent months we have made extensive inquiries and sought legal advice. The whole process has been rather confusing and conflicting but what we have done is commissioned a report on whether or not the property suffers from Chinese Drywall. It has now been confirmed by Kross Inspectors that it does suffer from Chinese Drywall and the manufacturer label referred to in the report is Knauf Plasterboard (Tianjin) Co Ltd (KPT).

The first we ever became aware of the issue of Chinese Drywall was when we got the report from Lakeland Laboratories in October 2015. Up to then at no stage had we been alerted to any such issues surrounding the property. We have at no stage been contacted by Meritage Homes nor by anyone on their behalf of the problems relating to Chinese Drywall and any related remediation programme or any litigation pending or otherwise.

Thus throughout we have been oblivious to what we now know to be MDL No. 2047.

We have been told that remediation will cost something like $40/50 per square metre. The property is 3500 square feet.

Can you assist by letting us know what our position is in relation to MDL No. 2047 and the position as suggested by Greenberg Traurig as to whether we are barred from seeking redress?

Having discovered more in relation to MDL No. 2047 and having obtained the details from the Court's website we did yesterday send emails to the Plaintiff's Liaison Counsel, Russ Herman of Herman, Herman & Katz LLP and also to Brown Greer PLC, c/o Chinese Drywall Settlement Administrator.

We have heard back from the administrator at Brown Greer PLC advising us that the deadline for registering and filing claims in the Chinese Drywall Settlement Program expired on the 10/25/13 and that claims cannot be accepted after the deadline without the Court's approval. We have also been advised to contact Knauf Plasterboard Tianjin's Attorneys.

My wife spoke with Lenny Davis, of the Plaintiff's Liaison Counsel at Herman, Herman & Katz LLP. He too advised contacting Knauf Plasterboard Tianjin's Attorneys.

Pursuant to this exchange my wife spoke to Elisa at the Court offices and she advised us to write and fax to the Court a brief summary of our current predicament so that it can be placed on the record and in the hope that you may be able to make appropriate directions.

If appropriate please treat this as our desire to join the settlement programme if we are still able do so.

If you need any further information then please do not hesitate in contacting us. In the meantime we are also sending a copy of the, Kross Inspectors report and the letter from Greenberg Traurig.

Our address for correspondence purposes is 71, Ulleswater Road, Southgate, London, N14 7BN. UK.

Our contact telephone numbers are: Mobile +447973 724 598 (DKK); Landline +44208 882 6212. My wife's number is +447917223202 (NK).

Our email addresses are as follows: dcepakkkapur@yahoo.co.uk and navroh@hotmail.com

Deepak K. Kapur and
Neeraj Kapur

By Fax to: +1504 589 6966



Mark A. Salky
Tel. (305) 579-0816
Fax (305) 579-0717
salkym@gtlaw.com

November 3, 2015

**VIA REGISTERED E-MAIL**
**(navroh@hotmail.com)**
**& UPS OVERNIGHT INTERNATIONAL DELIVERY**

Deepak K. Kapur
Neeraj Kapur
71, Ulleswater Road,
Southgate,
London,
N14 7BN
England.

    Re:    313 James Circle, Lake Alfred, Florida 33850 (the "Home")

Dear Gentlemen:

    Our firm represents Meritage Homes of Florida, Inc. ("Meritage") in connection with issues related to defective Chinese-manufactured drywall ("Chinese Drywall") and, in particular, Neeraj Kapur's email and telephone communications with Derek Morgan of Meritage earlier this month, as well as your letter to Meritage dated October 25, 2015. These communications purport to provide Meritage with notice of your intention to make a warranty claim against Meritage based on the alleged presence of Chinese Drywall in the Home.

    As you may be aware, Meritage agreed to participate in a settlement in the multidistrict litigation pending before the United States District Court for the Eastern District of Louisiana, captioned *In re: Chinese-Manufactured Drywall Products Liability Litigation* (the "MDL"). That settlement, which is titled the Settlement Agreement in MDL No. 2047 Regarding Claims Involving Builders, Installers, Suppliers, and Participating Insurers (the "Global Settlement"),[1] defines "Class Members" as "all persons . . . with claims, **known or unknown**, arising from or related to actual or alleged Chinese Drywall purchased, imported, supplied, distributed, marketed, installed, used, sold or in any way alleged to be within the legal responsibility of any Participating Defendant." *See* Global Settlement, at § 1.1.1 (emphasis added). You fit squarely within the definition of Class Members under the Global Settlement.

---

[1] Information about the Global Settlement, as well as other settlements in the MDL, can be accessed at: http://www.laed.uscourts.gov/Drywall/Settlements.htm.

GREENBERG TRAURIG, P.A. ● ATTORNEYS AT LAW ● WWW.GTLAW.COM
333 S.E. 2nd Avenue ● Suite 4400 ● Miami, FL 33131-3238 ● Tel 305.579.0500 ● Fax 305.579.0717

Deepak K. Kapur
Neeraj Kapur
November 3, 2015
Page 2

---

The Global Settlement resolved all Class Members' claims related to Chinese Drywall against participating builders, installers, suppliers, and their insurers (the "Settling Parties"), including Meritage, and includes a complete release of Settling Parties from all homeowner claims "arising out of, or in any manner related to, Chinese Drywall." Global Settlement, at § 5.1. The language used in the release to define "Released Claims" expressly includes a release of, among other things, "any and all past, present, and/or future claims arising out of, or related to . . . breach of contract, breach of duty or duties, negligent investigation, **breach of warranty**, failure to warn, breach of implied warranty, breach of good faith and fair dealing, . . . and/or any other alleged misconduct, omission, or wrongdoing of any kind, of whatever nature or source, known or unknown, related to any or all of the claims described . . . above." Global Settlement, at § 5.1. (emphasis added). Therefore, the Global Settlement's release includes claims based on a homeowner's discovery of Chinese Drywall in their home, even if such discovery is alleged to have occurred after the time for filing claims in the Global Settlement expired.

In approving the Global Settlement, the MDL Court enjoined and forever barred Class Members under the Global Settlement from "maintaining, continuing, prosecuting, and/or commencing" any claim or action against the Settling Parties "that arises from, concerns, or otherwise relates, directly or indirectly, to Chinese Drywall" (the "Bar Order"). Because you are Class Members who did not opt out of the Global Settlement, and Meritage is a Settling Party under the Global Settlement, you are precluded pursuant to the Bar Order from maintaining, continuing, prosecuting, and/or commencing any claims against Meritage relating to the possible presence of Chinese Drywall in the Home. Accordingly, and without even needing to address the fact that any applicable warranty for your Home has expired, Meritage rejects your claim as having been released as part of the Global Settlement.

Finally, if you have any questions regarding the Global Settlement, or wish to learn more about the MDL, you may obtain additional information by visiting the MDL Court's website at http://www.laed.uscourts.gov/drywall/Drywall.htm. If you have any additional questions or concerns, please do not hesitate to contact me.

Very truly yours,

*/s/ Mark A. Salky*

Mark A. Salky

cc: Shalendar Moman (via Registered Email)
(shalendarm@gmail.com)

# DRYWALL INSPECTION REPORT

**Report Number**
65

## Subject Property



**313 James Circle**
Lake Alfred, FL
33850

## Client Information

**Client Name:** **Neeraj and Deepak Kapur**

## Inspected on

**Inspection Date:** **06/09/2016**
**Inspection Time:** **10:00 am**

## Inspection Conducted By



**Kross Inspectors**
12155 Metro Parkway, Unit 4
Fort Myers, FL., 33966
Phone: (239) 677-4403
(877) 496-4662
Fax: (239) 214-2684
E'Mail: Office@krossinspectors.com
Web: www.krossinspectors.com

**Inspected by:**
Jim Kreider
**Inspector's Signature:**

**Signature Date**
6/9/2016
, Date:

Processed By: kwikreports.com

1

# DRYWALL INSPECTION REPORT

**Report Number**
65

## INTRODUCTION

Kross Inspectors has been engaged by the Client named within the report to perform a comprehensive inspection to determine if the subject property is affected by installed drywall that emits gases which produce corrosion of non ferrous metal components, commonly described by media and public agencies as "Chinese Drywall", "Problem Drywall", "Toxic Drywall", and "Problem Drywall". For the purposes of this assignment, the Inspector will reference the deficiency as "Problem Drywall". The intended user of this report is the Client only, unless otherwise amended or noted within.

This inspection is a specialized inspection and is not to be considered a substitution for a Complete Home or Building Inspection. The methods utilized by the Inspector are incorporated only to identify if drywall installed within the interior of the building is defective and affecting certain elements of the building (electrical, HVAC, and plumbing). The Inspector is not liable for reporting any defects other than those known to be caused by Problem Drywall installed in the building. This report itself is not to be considered a warranty or guarantee.

As of the inspection date, state, local, and federal agencies have not issued or endorsed an official inspection protocol to determine if a building is affected by Problem Drywall. However, on March 18, 2011, the Consumer Product Safety Commission (CPSC) and the U.S. Department of Housing and Urban Development (HUD) issued a communication labeled "Summary of Identification Guidance For Homes With Corrosion From Problem Drywall As of March 18, 2011". The inspection process described within adheres to the guidance issued by these agencies for the Threshold Inspection described within the communication. Within the interim guidance for identification issued by the CPSC and HUD is guidance for corroborating evidence. The inspection process described within includes one condition of corroborating evidence (identification of confirmed markings of Chinese origin). The inspection process utilized for this inspection includes a visual search to identify markings on unfinished surfaces of the building's installed drywall. These markings are then compared to photographs cataloged by the United States District Court Eastern District of Louisiana.

The interim guidance for identification issued by the CPSC and HUD includes additional corroborating evidence guidelines via laboratory analysis of drywall samples from the subject property. Additional testing procedures are available from Kross Inspectors to provide further corroborating evidence should Client wish to modify the Scope of the Inspection. Client should consider the intended use of the inspection report prior to proceeding with additional testing which includes destructive inspection techniques.

Although ASTM Standard C 36 may be identified in this report, this in itself does not identify Problem Drywall. As of December 1, 2004, a single ASTM international reference, ASTM C 1396/C 1396M, has replaced nine standards previously used to designate specific gypsum boards (drywall) employed in commercial and residential construction. ASTM Standard C 36 was the withdrawn standard specification for Gypsum Wallboard. The new standard combined all nine wallboard applications under one standard (C 1396/C 1396M).

Home builder and drywall manufacturers may be identified within this report, at the request of the consumer. Home builder information is obtained from public record and drywall manufacturer identification(s) are obtained onsite during the inspection process.

Should the subject property of the inspection report be a condominium or single family attached unit, the intended user of the report should use caution as to not make an assumption in which the inspection report may be representative of a similar outcome should inspections be performed on other units located within the same building or development. Research and data performed by Kross Inspectors has proven that often separate units within the same

building do contain different manufacturer brands of drywall. Therefore a single inspection report cannot be used to determine if other units within the subject's building are or are not affected by Problem Drywall.

Kross Inspectors does not perform mitigation or remediation services for buildings found to have Problem Drywall installed.

Kross Inspectors and the Inspector do not have any financial interest in the property being inspected and compensation for this assignment is not based on a predetermined outcome.

## PROCEDURE

This inspection was completed through the efforts of the Inspector exhausting all possible means of identifying the manufacturer or country of origin of a representative amount of your home's installed drywall. Special attention was made to observe the common symptoms produced by the suspected Problem Drywall found in this area such as identification of distinctive effects of problem drywall off gassing on copper components such as electrical wiring, plumbing components, and air conditioning materials. Further testing shall also include a review of the performance of the air conditioning system in order to discover if any refrigerant loss due to effects of problem drywall are possible.

A limitation of this process is that it is physically impossible to positively identify the manufacturer or origin of the entire building's installed drywall without a full destructive and invasive inspection.

The standard procedure for conducting this inspection is as follows: A walk through examination is performed visiting finished rooms and areas of the home in an attempt to detect the distinctive odor emitted by Problem Drywall.

A representative number of electrical switches and outlets are inspected by removing covers to permit a visual examination of wire termination and device terminals. The user should note that at times outlets and switches have been removed by others prior to our arrival. We will make reasonable attempts to secure these outlets and/or switches for safety. However, as the Home Inspector does not carry typical hardware and/or parts to perform some repairs, we will note in the report which outlets and/or switches were not corrected. It is recommended that any unsecured outlets and/or switches be corrected immediately to prevent injury to others.

The intent of the visual examination is to determine the presence or absence of non-typical oxides or corrosion on nonferrous metals.

A representative number of plumbing fixtures, components, and copper tubing containing nonferrous metals are inspected, with the objective of identifying non-typical oxidation or corrosion.

If present and accessible, the evaporator coils of the air conditioner is examined for presence or absence of non-typical oxidation or corrosion. The Inspector will also test the air conditioning system using normal controls in an attempt to detect any refrigerant loss due to presence of problem drywall.

As presented by opportunity, the inspector will note and report other occurrences of oxidation or corrosion on visible oxidation or corrosion of nonferrous components or items.

As permitted by non destructive examination, the inspector will use a micro inspection camera to examine the unfinished side of the drywall as an to attempt to identify the manufacturer of the drywall.

The user should note that certain limitations may placed on the inspection such as stored items, furniture, missing components, etc.

## EQUIPMENT
Specialized Equipment used during this inspection include:

Micro Inspection Camera
- Infrared Thermometer

## LOCATIONS INSPECTED
Items and primary components inspected within this home included:

All accessible principle rooms, areas, and hallways containing drywall finishes
- Attic
- Interior components of the air conditioning unit
- Storage cabinets where nonferrous metallic items could potentially be stored

## COMPONENTS INSPECTED
Installed components and devices that were inspected include:

Representative number of electrical outlets and switches
- Air conditioner evaporator coil(s)
- Plumbing fixtures and components
- Cable/telephone/security panels where accessible
- Cabinets and storage areas where nonferrous metals may typically be observed.

Kross Inspectors will utulize additional methods outlined within the Kross Inspectors Chinese Drywall Inspection Protocol as necessary in order to provide credible results for Client. Warranties or Guarantees may only be provided upon completion of laboratory testing of all drywall installed within the subject property.

# DRYWALL INSPECTION REPORT

Report Number
65

## DETERMINATIONS AND OBSERVATIONS
1) Drywall Manufacturer: As permitted by opportunity and where efforts do not require intrusive or destructive action drywall was observed to be sourced from:
Some Locations Not Visible
Knauf Plasterboard (Tianjin) Co Ltd (KPT)

2) Drywall Specification/Standard Applied [if determined]:
Not Determined

3) Builder [if identified]: 4) Plumbing Defects Observed: Corrosion observed at fixtures
Heavy layer of soot observed

5) Electrical Wiring Defects Observed: Heavy layer of soot observed

6) Air Conditioning Component Defects Observed: Heavy layer of soot observed

7) Odor Observed: Distinct odor typical of problem drywall observed

8) Personal Property Affected:
Note: this listing of personal property items is intended to be neither exhaustive nor complete. The listed items are intended to be supplementative to all other indicators used in the determination for the conclusion of either the presence or absence of Problem Drywall.

## COMMENTS AND RECOMMENDATIONS
Results of this inspection for problem drywall are positive. Symptoms of problem drywall were found.

Distinctive odor emitted by problem drywall was detected.

Inspected exposed copper wiring was observed to be darkened and/or displayed excessive corrosion.

Inspected copper and brass plumbing components were observed to be darkened and/or displayed excessive corrosion.

The air conditioner evaporator coils were observed to be darkened and/or displayed excessive corrosion.

Layer of soot was observed on some inspected components.

Due to the symptoms displayed and based on the Inspector's extensive exposure to homes containing problem drywall, it is the Inspector's opinion that the subject property does contain problem drywall. The results of this non destructive inspection are considered among the Home Inspection Industry and the U.S. Federal Court System as credible and reliable, however further scientific testing via destructive methods is available at the Client's request.

PHOTO REPORT

**1.**

Processed By: kwikreports.com

5

  

**Location:** Throughout **System:** Drywall **Condition:** Heavy layer of soot observed
**Explanation:** Soot Observed
**Impact Consequences:** Distinctive soot of problem drywall observed on inspected component. Further consultation with a qualified problem drywall remediation contractor for corrective measures is required. It is further recommended to consult with the Inspector regarding third party documentation of the remediation efforts considered for the subject property.
**Recommended Action:** Consult Remediation Specialist
Click here to find out more about this item

2.

  

**Location:** Throughout **System:** Drywall **Condition:** Plumbing Fixture; Pitting Observed
**Explanation:** Pitting Observed
**Impact Consequences:** Distinctive pitting of problem drywall observed on inspected component. Further consultation with a qualified problem drywall remediation contractor for corrective measures is required. It is further recommended to consult with the Inspector regarding third party documentation of the remediation efforts considered for the subject property.
**Recommended Action:** Consult Remediation Specialist
Click here to find out more about this item

3.



**Location:** Garage **System:** Drywall **Condition:** Heavy layer of soot observed
**Explanation:** Soot Observed
**Impact Consequences:** Distinctive soot of problem drywall observed on inspected component. Further consultation with a qualified problem drywall remediation contractor for corrective measures is required. It is further recommended to consult with the Inspector regarding third party documentation of the remediation efforts considered for the subject property.

**Recommended Action:** Consult Remediation Specialist
Click here to find out more about this item

### 4.



**Location:** Garage **System:** Drywall **Condition:** AC Copper Tubing; Typical Oxidation; Soot Not Observed
**Explanation:** Soot Not Observed
**Impact Consequences:** Distinctive soot of problem drywall not found on inspected component.
**Recommended Action:** No Further Action Required
Click here to find out more about this item

### 5.



**Location:** 2nd Floor Closet **System:** Drywall **Condition:** Evaporator Coils; Typical Oxidation; Soot Not Observed
**Explanation:** Soot Not Observed
**Impact Consequences:** Distinctive soot of problem drywall not found on inspected component.
**Recommended Action:** No Further Action Required
Click here to find out more about this item

### 6.



**Location:** 2nd Floor Closet **System:** Drywall **Condition:** AC Copper Tubing; Typical Oxidation; Soot Not Observed
**Explanation:** Soot Not Observed
**Impact Consequences:** Distinctive soot of problem drywall not found on inspected component.
**Recommended Action:** No Further Action Required
Click here to find out more about this item

**7.**



**Location:** Throughout **System:** Drywall **Condition:** De Silvering Observed
**Explanation:** De Silvering Observed
**Impact Consequences:** Distinctive de silvering of problem drywall observed on inspected component. Further consultation with a qualified problem drywall remediation contractor for corrective measures is required. It is further recommended to consult with the Inspector regarding third party documentation of the remediation efforts considered for the subject property.
**Recommended Action:** Consult Remediation Specialist
Click here to find out more about this item

**8.**



**Location:** Bathroom **System:** Drywall **Condition:** Label is from Suspect Company
**Explanation:** Needs Attention
**Impact Consequences:** Needs Attention
**Recommended Action:** Consult Specialist
Click here to find out more about this item

Report Number:

65

## Professional Services Certification and Disclosure

I have personally made an inspection of the property that is the subject of this Report.

I do not have any undisclosed conflict of interest with the client, nor any undisclosed commissions, rebates, profits or other benefits resulting from the completion of this assignment.

I have not accepted any disclosed or undisclosed commissions, rebates, profits, or other benefit from Real Estate Brokers, Agents, or any other parties having financial interest in the subject property.

Kross Inspectors, and the designated inspector for this assignment, have not been offered or provided any disclosed or undisclosed financial compensation directly or indirectly to any Real Estate Broker, Agent, or Real Estate Company for inclusion on lists of preferred and/or affiliated inspectors or inspection companies.

I have not and shall not communicate any information about this inspection to anyone except the named client without prior consent of the client, except where it may affect the safety of others or violate a law or statute.

I have not offered to perform any repairs to the subject property nor shall I accept or induce a referral fee from any contractor of which I refer a client to for repairs.



**Kross Inspectors**
12155 Metro Parkway, Unit 4
Fort Myers, FL, 33966
Phone: (239) 677-4403
(877) 496-4662
Fax: (239) 214-2684
E'Mail: Office@krossinspectors.com
Web: www.krossinspectors.com

**Inspected by:**
Jim Kreider
**Inspector's Signature:**

**Signature Date**
6/9/2016
, Date:

Processed By: kwikreports.com

9