UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | CIVIL ACTION |
| | NO. 09-02047 |
| | SECTION "L" (5) |
| THIS DOCUMENT RELATES TO: ALL CASES | |

ORDER & REASONS

**I.      INTRODUCTION**

Before this Court are four appeals of the Special Master's final determinations on lost use, sales and rental claims (Rec. Docs. 20188, 20189, 20190, 20191).  Having read the parties' briefs, reviewed the applicable law, and heard several of the parties on oral argument, the Court now issues this Order and Reasons.

**II.     BACKGROUND**

**a.  Procedural Background**

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall.  As a result, drywall manufactured in China was brought into the United States and used in the construction and refurbishing of homes in coastal areas of the country, notably the Gulf Coast and East Coast.  Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of smelly gasses, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes.  *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819, 829 (E.D.La. 2012),

*aff'd*, 742 F. 3d 576 (5th Cir. 2014).  Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall.  Accordingly, these homeowners began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall.  Because of the commonality of facts in the various cases, this litigation was designated as multidistrict litigation.  Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 2047 in the U.S. District Court, Eastern District of Louisiana.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities, and (2) the Taishan Entities.  The instant appeals before the Court related to the Knauf Entities.

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States.  The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts. The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009.  *See* (R. Doc. 18).  On November 2, 2009, in Pretrial Order No. 17, KPT agreed to a limited waiver of service.  *See* (R. Doc. 401).  On March 15-19, 2010, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall.  *See* (R. Doc. 2713).  For purposes of the trial, KPT stipulated that its Chinese drywall "emits certain reduced sulfur gases and the drywall emits an odor."  *Id*.  The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and

Conclusions of Law ("*Hernandez* FOFCOL"), *see id.*, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46, which represented a cost of $81.13 per square foot based on the footprint square footage of the house. *See* (R. Doc. 3012).

Thereafter, on October 14, 2010, the Knauf Entities entered into a pilot remediation program with the Plaintiffs' Steering Committee ("PSC") in the MDL. This program was largely based upon the remediation protocol formulated by the Court in *Hernandez*. The Knauf pilot remediation program is ongoing and has, at present, remediated over 2,000 homes containing KPT Chinese drywall using the same protocol. At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which is designed to resolve all Knauf-related, Chinese drywall claims. *See* (R. Doc. 16407-3). Although there are numerous settlement agreements with defendants in the chain-of-commerce with the Knauf Entities, the instant appeals related specifically to the Knauf Settlement Agreement.

### b.  The Knauf Settlement Agreement

The Knauf Settlement Agreement provides for the complete remediation of the contaminated structure in accordance with an evidence based protocol developed from various different trial. In addition, the Agreement allows Claimants to submit a number of different claims for compensation due to damage allegedly caused by Chinese Drywall. Claims unrelated to remediation of a property are known as "Other Loss Claims." During the course of the Chinese Drywall Settlement Program, the Settlement Administrator received 7,986 Other Loss claims. These claims were reviewed by the Settlement Administrator, who reviewed claim

documentation for completeness and issued an eligibility notice using amounts set forth in PTO 29. Claimants who were dissatisfied with this award had the option to appeal their award to the Special Master. The Special Master independently reviewed these claims and issued a new award determination. Pursuant to Section 4.6.8 of the Knauf Settlement Agreement, Claimants who remained unsatisfied with the Special Master's award had the additional option to appeal directly to the Court.  Specifically, the Knauf Settlement Agreement provides that:

> Unless otherwise final and binding pursuant to the relevant sections below, decisions of the Special Master with respect to the Other Loss Fund may be appealed by Settlement Class Counsel, the Knauf Defendants or an affected Class Member within 15 days of service of the Special Master's decision by filing an objection with the Court, but only after Settlement Class Counsel, the Knauf Defendants, and, if applicable, an affected Class Member's counsel meet and confer in an attempt to resolve such issue. Unless the Court orders otherwise, appeals will be based on the record and briefing before the Special Master without further evidentiary submissions, briefing or argument. Any Party may, at its own expense, request that proceedings before the Special Master be transcribed. The Court's decision on any objections will be final, with no further appeals permitted.

Knauf Settlement Agreement, Section 4.6.8.  Out of the starting population of 7,986 claims, only 64 claimants appealed to the Court, including three appealed lost use, sales and rental claims.

The appealed lost use, sales and rental claims were filed pursuant to Section 4.7.1.2 of the Knauf Settlement Agreement, which provides that:

> For Commercial Owners, economic loss for a period not to exceed three months, arising from the inability to use or rent Affected Property during remediation, and economic losses arising from the inability to sell Affected Property as a result of property damage caused by KPT Chinese Drywall, but only to the extent that such economic loss could not be mitigated or has not been reimbursed by insurance. For Commercial Owners, Other Loss shall not include alternative living expenses during remediation and personal property damage.
>
> > 4.7.1.2.1. To obtain benefits under this Section, a Commercial Owner must establish that the lost use, sales or rentals were substantially caused by KPT Chinese Drywall.

4

4.7.1.2.2. To obtain benefits under this Section, the Commercial Owner must submit the following:

> a. physical proof such as photographic evidence or inspection reports satisfactory to the Settlement Administrator that the Affected Property has KPT Chinese Drywall and proof of corrosion or other acceptable evidence that the KPT Chinese Drywall was reactive;

> b. proof of purchase of the Affected Property;

> c. purchase price and appraised value at purchase of the Affected Property;

> d. all documents relating to communications with third parties, including but not limited to, real estate agents and contractors, regarding using, leasing or sale of the Affected Property;

> e. all documents relating to mortgage or lease payments, including but not limited to, cancelled checks, past due notices and late fees or other charges;

> f. all documents regarding the inability to use, rent or sell the Affected Property as a result of property damage caused by KPT Chinese Drywall;

> g. tax returns for each of the three years prior to the inability to use, rent or sell the Affected Property as a result of property damage caused by KPT Chinese Drywall and up to the date of the submission;

> h. profit and loss statements for the three years prior to the inability to use, rent or sell the Affected Property as a result of property damage caused by KPT Chinese Drywall and up to the date of the submission;

> i. affidavits from the Commercial Owner in support of the claim with supporting documentation;
> …

> The Court's ruling on any such motion shall be final with no appeals.

4.7.1.2.3. The Special Master shall consider the following principles in evaluating a claim by a Commercial Owner for economic loss arising from the inability to sell Affected Property due to KPT Chinese Drywall:

> a. The Special Master shall assume that the Affected Property or any units within a Multiple Unit Property will be sold at a fair market value after the remediation is completed.

5

b. The Commercial Owner shall be entitled only to the lost value of money resulting from the delay in selling the Affected Property or units within a Multiple Unit Property.

c. If a Commercial Owner who is qualified to obtain benefits under this Section has outstanding loans on the Affected Property, the Commercial Owner shall be entitled to recover interest (but not principal) payments on the loan or loans, but only to the extent that the Commercial Owner was unable to sell the Affected Property due to KPT Chinese Drywall.

Pursuant to the aforementioned terms of the Knauf Settlement Agreement, the Court reviews the following appealed lost use, sales and rental claims in turn.

### III.    LOST USE, SALES AND RENTAL CLAIMS

### a.  **Terrence and Tonya DeMots** (R. Doc. 20189)

On October 25, 2013, Claimants timely filed the Lost Rent Claim Form for consideration for recovery from the Knauf Settlement Other Loss Fund.  On September 14, 2015, Claimants received an Other Loss Eligibility Notice in the amount of $5,400.00 for their Lost Rent claim. On September 17, 2015, Claimants requested Special Master consideration for their Lost Rent claim.  On December 3, 2015, the Special Master, consistent with the initial offer, awarded Claimants $5,400.00 for their Lost Rent claim.  On December 18, 2015, Claimants requested reconsideration of the Special Master's award.  On March 11, 2016, the Special Master issued a post-reconsideration award, consistent with his earlier award, in the amount of $5,400.00, from which Claimants now appeal.

Claimants seek compensation for Lost Rent outside the three month remediation period. The damages sought by Claimants for Lost Rent outside of the three month remediation period are not justified.  The Agreement allows Claimants to recover lost rent for a period not to exceed three months.  Considering that Claimants submitted proper documentation to demonstrate Lost Rent in the amount of $5,400.00 within the three month remediation period, and have not submitted

6

any additional documentation since their prior review by the Special Master, **IT IS ORDERED** the Special Master Post-Reconsideration Award of $5,400.00 for Claimants' Lost Rent claim is affirmed.  This award will be distributed to the Claimants on a pro rata basis once all the remaining other loss objections are resolved.

      **b.  Paul Doering** (R. Docs. 20190, 20191).

On October 11, 2013, Claimant timely filed two Lost Rent Claim Forms for consideration for recovery from the Knauf Settlement Other Loss Fund.  Claimant received two Other Loss Eligibility Notices in the amount of $2,550.00 for his first Lost Rent claim and $1,950.00 for his second Lost Rent claim. Claimant requested Special Master consideration for both Lost Rent claims.  On December 3, 2015, the Special Master, consistent with the initial offers, awarded Claimant $2,550.00 for his first Lost Rent claim and $1,950.00 for his second Lost Rent claim. On December 18, 2015, Claimant requested reconsideration of the Special Master's awards.  On March 11, 2016, the Special Master, after reviewing additional documentation, issued increased post-reconsideration awards, in the amount of $2,850.00 for his first Lost Rent claim and $2,400.00 for his second Lost Rent claim, from which Claimant now appeal.

For both claims, Claimant seeks compensation for Lost Rent outside the three month remediation period.  The damages sought by Claimant for Lost Rent outside of the three month remediation period are not justified.  The Agreement allows Claimant to recover lost rent for a period not to exceed three months.  Considering that Claimants submitted proper documentation to demonstrate Lost Rent in the amount of $2,850.00 for his first Lost Rent claim and $2,400.00 for his second Lost Rent claim (totaling $5,250.00) within the three month remediation period, and has not submitted any additional documentation since his reconsideration by the Special Master, **IT IS ORDERED** the Special Master Post-Reconsideration Award of $2,850.00 for his first Lost Rent claim and $2,400.00 for his second Lost Rent claim (totaling $5,250.00) is affirmed.  This award

will be distributed to the Claimants on a pro rata basis once all the remaining other loss objections are resolved.

      **c.  1100 Valencia LLC** (R. Doc. 20188).

On October 25, 2013, Claimant timely submitted its Lost Rent, Use or Sales Claim form. On February 4, 2015, Claimant received an Other Loss Eligibility Notice in the amount of $10,000.00 for its Lost Use or Sales claim. Thereafter, Claimant requested Special Master consideration for its Lost Use or Sales claim. On December 3, 2015, the Special Master returned an award of $0.00 on Claimant's Lost Use or Sales claim. On December 17, 2015, Claimant requested reconsideration of the Special Master's award. Thereafter, the Special Master issued a post-reconsideration award in the amount of $41,338.98.00, from which Claimant now appeals.

Claimant seeks reimbursement for $330,684.86 in carrying costs (including interest payments on the construction loan, property taxes, insurance, and pre-remediation maintenance/repairs), a $299,379.91 initial deposit and down payment for the pre-development purchase of the Affected Property, and $61,688.58 in pre-claim submission interest. The Settlement Administrator reviewed the material submitted in support of this appeal and determined that the award should be increased by the amount of interest payments the Claimant made on the property. Accordingly, **IT IS ORDERED** that Claimant be awarded $304,858.34 for its Lost Use or Sales Claim. This award will be distributed to the Claimants on a pro rata basis once all the remaining other loss objections are resolved.

## IV.    CONCLUSION

Considering the foregoing, **IT IS ORDERED** that the following claimants are **GRANTED** the following awards:

The Court **GRANTS** Terrance and Tonya DeMots (R. Doc. 20189) $5,400.00.

The Court **GRANTS** Paul Doering (R. Docs. 20190, 20191) $5,250.00.

The Court **GRANTS** 1100 Valencia (R. Doc. 20188) $304,858.34.

These awards will be distributed on a pro rata basis once all the remaining other loss claim objections are resolved.


New Orleans, Louisiana this 14th day of June, 2016.

_____

United States District Judge