UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | CIVIL ACTION |
| | NO. 09-02047 |
| | SECTION "L" (5) |
| THIS DOCUMENT RELATES TO: ALL CASES | |

**ORDER & REASONS**

**I.     INTRODUCTION**

Before this Court are four appeals of the Special Master's final determinations on foreclosure/short sale claims (Rec. Docs. 20183, 20195, 20193, 20194). Having read the parties' briefs, reviewed the applicable law, and heard several of the parties on oral argument, the Court now issues this Order and Reasons.

**II.    BACKGROUND**

   a.  **Procedural Background**

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used in the construction and refurbishing of homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of smelly gasses, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819, 829 (E.D.La. 2012),

*aff'd*, 742 F. 3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall. Accordingly, these homeowners began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 2047 in the U.S. District Court, Eastern District of Louisiana.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities, and (2) the Taishan Entities. The instant appeals before the Court related to the Knauf Entities.

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States. The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts. The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009. *See* (R. Doc. 18). On November 2, 2009, in Pretrial Order No. 17, KPT agreed to a limited waiver of service. *See* (R. Doc. 401). On March 15-19, 2010, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall. *See* (R. Doc. 2713). For purposes of the trial, KPT stipulated that its Chinese drywall "emits certain reduced sulfur gases and the drywall emits an odor." *Id*. The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and

Conclusions of Law ("*Hernandez* FOFCOL"), *see id.*, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46, which represented a cost of $81.13 per square foot based on the footprint square footage of the house. *See* (R. Doc. 3012).

Thereafter, on October 14, 2010, the Knauf Entities entered into a pilot remediation program with the Plaintiffs' Steering Committee ("PSC") in the MDL. This program was largely based upon the remediation protocol formulated by the Court in *Hernandez*. The Knauf pilot remediation program is ongoing and has, at present, remediated over 2,000 homes containing KPT Chinese drywall using the same protocol. At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which is designed to resolve all Knauf-related, Chinese drywall claims. *See* (R. Doc. 16407-3). Although there are numerous settlement agreements with defendants in the chain-of-commerce with the Knauf Entities, the instant appeals related specifically to the Knauf Settlement Agreement.

### b. The Knauf Settlement Agreement

The Knauf Settlement Agreement provides for the complete remediation of the contaminated structure in accordance with an evidence based protocol developed from various different trial. In addition, the Agreement allows Claimants to submit a number of different claims for compensation due to damage allegedly caused by Chinese Drywall. Claims unrelated to remediation of a property are known as "Other Loss Claims." During the course of the Chinese Drywall Settlement Program, the Settlement Administrator received 7,986 Other Loss claims. These claims were reviewed by the Settlement Administrator, who reviewed claim

documentation for completeness and issued an eligibility notice using amounts set forth in PTO 29. Claimants who were dissatisfied with this award had the option to appeal their award to the Special Master. The Special Master independently reviewed these claims and issued a new award determination. Pursuant to Section 4.6.8 of the Knauf Settlement Agreement, Claimants who remained unsatisfied with the Special Master's award had the additional option to appeal directly to the Court.  Specifically, the Knauf Settlement Agreement provides that:

> Unless otherwise final and binding pursuant to the relevant sections below, decisions of the Special Master with respect to the Other Loss Fund may be appealed by Settlement Class Counsel, the Knauf Defendants or an affected Class Member within 15 days of service of the Special Master's decision by filing an objection with the Court, but only after Settlement Class Counsel, the Knauf Defendants, and, if applicable, an affected Class Member's counsel meet and confer in an attempt to resolve such issue. Unless the Court orders otherwise, appeals will be based on the record and briefing before the Special Master without further evidentiary submissions, briefing or argument. Any Party may, at its own expense, request that proceedings before the Special Master be transcribed. The Court's decision on any objections will be final, with no further appeals permitted.

Knauf Settlement Agreement, Section 4.6.8.  Out of the starting population of 7,986 claims, only 64 claimants appealed to the Court, including five appealed foreclosure/short sale claims.

The appealed foreclosure claims were filed pursuant to Section 4.7.1.3 of the Knauf Settlement Agreement, which provides that:

> With respect to Foreclosed Properties, for Owners prior to foreclosure, an amount to be determined by the Special Master for Lost Equity (but not lost anticipated market value) in the Foreclosed Property less the Owners' recovery under Section 4.3.5.1(b).
>
> > 4.7.1.3.1. To obtain benefits under this Section, an Owner must establish that the foreclosure was substantially caused by KPT Chinese Drywall.
> >
> > 4.7.1.3.2. To obtain benefits under Section 4.7.1.3, an Owner must establish the following

> a. For a Residential Owner Subclass Member who owned the Foreclosed Property prior to foreclosure, he or she must establish that the KPT Chinese Drywall substantially caused the foreclosure.
>
> b. For a Commercial Owner Subclass Member who owned the Foreclosed Property prior to foreclosure, he or she must establish that the KPT Chinese Drywall substantially caused (i) the Tenants of the Foreclosed Property to vacate, causing the Commercial Owner to lose rent, or (ii) decreased revenue to the Commercial Owner's business.
>
> c. For the Owner of a Foreclosed Property where the Foreclosure is attributable to circumstances other than those described in 4.7.1.3.2.a or 4.7.1.3.2.b above, such as economic downturns, personal financial losses and/or loss of employment, the Owner shall not be entitled to payments under Section 4.7.1.3
> …
>
> The Court's ruling on any such motion shall be final with no appeals.

Pursuant to the aforementioned terms of the Knauf Settlement Agreement, the Court reviews the following appealed foreclosure/short sale claims in turn.

### III. FORECLOSURE/SHORT SALE CLAIMS

#### a. Mirtha Arias (R. Doc. 20183)

Claimant filed a Foreclosure Claim Form for consideration for recovery from the Knauf Settlement Other Loss Fund. Claimant received an Other Loss Eligibility Notice in the amount of $10,000 for her Foreclosure claim. Thereafter, Claimant requested Special Master consideration for her Foreclosure claim and the Special Master returned an award of $78,600.00 for Claimant's Foreclosure claim. Claimant then requested reconsideration of the Special Master's award. On March 11, 2016, the Special Master issued a post-reconsideration award, increasing his earlier award, in the amount of $80,526.49, from which Claimant now appeals.

Claimant seeks reimbursements for her inability to rent the affected property. On appeal, Claimant submitted additional proof of lost rent from July 2009 to July 2009. The Settlement Administrator reviewed this additional proof and determined that these costs, which total $37,200, should be included in her total award amount. Accordingly, **IT IS ORDERED** that Mirtha Arias is entitled to $117,726.49 for her Foreclosure claim. This award will be distributed to the Claimant on a pro rata basis once all the remaining other loss objections are resolved.

      **b.  Domenico Bellitti (R. Doc. 20195)**

Claimant filed a Foreclosure Claim Form for consideration for recovery from the Knauf Settlement Other Loss Fund. Claimant received an Other Loss Eligibility Notice in the amount of $10,000 for his Foreclosure claim. Thereafter, Claimant requested Special Master consideration for her Foreclosure claim and the Special Master returned an award of $82,652.63 for Claimant's Foreclosure claim. Claimant then requested reconsideration of the Special Master's award. The Special Master issued a post-reconsideration award, consistent with his earlier award, in the amount of $82,652.63, from which Claimant now appeals.

Claimant seeks reimbursement for his closing costs, interest payments, carrying costs and lost rental income. The majority of these expenses i.e., closing costs, interest payments, and carrying costs, are not compensable under the Settlement Agreement. On appeal, however, Claimant submitted evidence that demonstrates a total lost rent in the amount of $3,825. The Settlement Administrator reviewed this additional proof and determined that Claimant's award should be increased by this amount, $3,825. Accordingly, **IT IS ORDERED** that Domenico Bellitti is entitled to $86,477.63 for his Foreclosure claim. This award will be distributed to the Claimant on a pro rata basis once all the remaining other loss objections are resolved.

### c. Monica Fergusson (R. Doc. 20193)

Claimant timely filed a Foreclosure Claim Form for consideration for recovery from the Knauf Settlement Other Loss Fund.  On January 15, 2015, Claimant received an Other Loss Eligibility Notice in the amount of $10,000 for her Foreclosure claim. On February 9, 2015, Claimant requested Special Master consideration for her Foreclosure claim.  On December 3, 2015, the Special Master returned an award of $0.00 for Claimant's Foreclosure claim.  On December 18, 2015, Claimant requested reconsideration of the Special Master's award.  On March 11, 2016, the Special Master issued a post-reconsideration award, consistent with his earlier award, in the amount of $0.00, from which Claimant now appeals.

Claimant seek reimbursements of a $100,000.00 deposit at the time of closing, as well as $61,786.68 for expenses that she categorizes as capital improvements. With regard to the $100,000.00 deposit, Claimant is entitled to $75,000 for her deposit on the Affected Property. However, the remaining $25,000.000 of the deposit is related to closing costs and settlement charges which are not considered by the Lost Equity formula described in Section 4.7.1.7(a) of the Knauf Settlement Agreement.  *See* (R. Doc. 16407-3 at 42).  Additionally, in the days preceding the hearing on this matter, Claimant submitted copies of cancelled checks to support her assertion of $61,786.68 in capital improvements.  The Settlement Administrator reviewed this new evidence and determined that these costs should be included in her total award amount.  Accordingly, **IT IS ORDERED** that Monica Fergusson is entitled to $136,786.68 for her Foreclosure claim.  This award will be distributed to the Claimant on a pro rata basis once all the remaining other loss objections are resolved.

### d. Henry and Naneth Perdomo (R. Doc. 20194)

Claimants timely filed a Foreclosure Claim Form for consideration for recovery from the Knauf Settlement Other Loss Fund.  On January 15, 2015, Claimants received an Other Loss

7

Eligibility Notice in the amount of $10,000 for their Foreclosure claim. On February 9, 2015, Claimants requested Special Master consideration for their Foreclosure claim. On December 3, 2015, the Special Master returned an award of $71,060.13 for Claimants' Foreclosure claim. On December 18, 2015, Claimant requested reconsideration of the Special Master's award. Thereafter, the Special Master issued a post-reconsideration award, decreasing his earlier award, in the amount of $44,394.57, from which Claimants now appeal.

Claimants seek reimbursement for satisfying a $83,646.31 deficiency balance, but did not submit documentation verifying the deficiency was paid in full. However, after the deadline to respond to all appeals, the Perdomos submitted proof of additional payments on the loan deficiency balance after the short sale. The Settlement Administrator reviewed this new evidence and determined that these costs, totaling approximately $5,500, should be included in their total award amount, which would increase their award from $44,394.57 to $49,857.63. However, recognizing Claimants' good faith attempt to comply with terms of the Settlement Agreement, this Court does not want to penalize the Perdomos for exercising their right to request reconsideration on their claim. Accordingly, **IT IS FURTHER ORDERED** that the Settlement Administrator restore the Special Master's initial offer of $71,060.13 for Claimants' foreclosure claim, which will be distributed on a pro rata basis once all of the other loss objections are resolved.

### IV.   CONCLUSION

Considering the foregoing, **IT IS ORDERED** that the following claimants are **GRANTED** the following awards:

The Court **GRANTS** Mirtha Arias $117,726.49 for her claim.

The Court **GRANTS** Henry and Naneth Perdomo $71,060.13 for their claim.

The Court **GRANTS** Monica Fergusson $136,786.68 for her claim.

The Court **GRANTS** Domenico Bellitti $86,477.63 for his claim

These awards will be distributed on a pro rata basis once all the remaining other loss claim objections are resolved.

        New Orleans, Louisiana this 20th day of June, 2016.

                              *Eldon E. Fallon*
                              United States District Judge