UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  CHINESE-MANUFACTURED | * | MDL 2047 |
| DRYWALL PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to: All Cases | * | |
| | * | MAGISTRATE JUDGE WILKINSON |
| | * | |
| * * * * * * * * * * * * * * * * * | | |

### KNAUF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE THE KNAUF SETTLEMENT AGREEMENT (REC. DOC. 20296)

**MAY IT PLEASE THE COURT:**

The Knauf Defendants[1] file this Opposition to *Plaintiffs' Motion to Enforce the Knauf Settlement Agreement*.[2] Notwithstanding the Plaintiffs' circumvention of a review by the Special Master, their motion should nonetheless be denied because the Settlement Administrator did not err in withholding Lump Sum Payments from the Plaintiffs, who are Commercial Owners under the terms of the *Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047* ("Knauf Class Settlement Agreement"),[3] and who are, as Commercial Owners, not eligible to receive Lump Sum Payments.[4]

---

[1] The Knauf Defendants include Knauf Plasterboard (Tianjin) Co., Ltd., Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH, Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda., and PT Knauf Gypsum Indonesia. All capitalized terms herein have the same definitions as set forth in the Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 (the "Knauf Class Settlement Agreement"), Rec. Doc. 16407-3.

[2] Rec. Doc. 20296.

[3] Rec. Doc. 16407-3, as amended by the Fourth Amendment, Rec. Doc. 17165-1.

[4] Unless otherwise defined herein, all capitalized terms carry the same meanings given to them in the Knauf Class Settlement Agreement.

1

The Knauf Defendants respectfully request that the Court either remand the issue to the Special Master or deny the Plaintiffs' Motion.

## I. BACKGROUND

In addition to providing remediation benefits, the Knauf Class Settlement Agreement was carefully crafted to provide Residential Owners with supplemental benefits, through a Lump Sum Payment, to compensate for Other Covered Expenses,[5] which include alternative living expenses, personal property damage, and moving and storage expenses.[6] Residential Owners are defined as "members of the Class who are owners of and reside or have resided in Affected Property."[7] The Lump Sum Payment was established to cover precisely the type of costs that an owner residing in Affected Property would incur, both before and during remediation.

Likewise, the Agreement provides Commercial Owners with additional benefits through the Other Loss Fund, which covers economic losses such as lost use, sales and rentals. Commercial Owners, defined as "members of the Class who are owners of Affected Property for the purpose of selling or renting the Affected Property or using the Affected Property to conduct a business and who do not reside in the Affected Property,"[8] are not entitled to the Lump Sum Payment because they would not have incurred the types of expenses the Lump Sum Payment is designed to reimburse. The Plaintiffs listed below used their Affected Properties as income-producing rentals at all relevant times, meaning these claimants are Commercial Owners who are impermissibly seeking Lump Sum Payments.

---

[5] Knauf Class Settlement Agreement, Section 4.3.1., et seq. (Rec. Doc. 16407-3).
[6] *Id*. at Section 1.47.
[7] *Id*. at Section 1.1.2.1.
[8] *Id*. at Section 1.1.2.2.

These Plaintiffs are all either listed in the *Beane* omnibus complaint,[9] or filed late claims that were accepted for settlement by the Knauf Defendants prior to October 25, 2013. Their claims are, therefore, all controlled by the *Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047* ("New Claims Settlement Agreement"),[10] which incorporates the Lump Sum Payment provisions of the Knauf Class Settlement Agreement,[11] including the distinction between Commercial Owners and Residential Owners.[12]

## II.  LAW & ARGUMENT

The Plaintiffs' claims should have first been filed with and reviewed by the Special Master, who is "the person or entity appointed by the Court responsible for reviewing information submitted by Participating Class Members and making determinations concerning individual Participating Class Members' benefits under the Settlement Funds."[13] However, should the Court choose to decide these disputes pursuant to Section VIII(H) of the New Claims Settlement Agreement,[14] the Knauf Defendants provide the following information to demonstrate that the below Plaintiffs are Commercial Owners, ineligible to receive Lump Sum Payments, and that the Settlement Administrator did not err in withholding the Lump Sum Payments.

---

[9] *Paul Beane, et al. v. Gebrueder Knauf Verwaltungsgesellschaft KG, et al.*, No. 13-609 (E.D. La. 2013).

[10] Rec. Doc. 16978-1.

[11] New Claims Settlement Agreement, Sections II(A) and III(B).

[12] To streamline claims submissions, the Settlement Administrator created a Lump Sum Payment Eligibility Form, which each Plaintiff herein had executed. The execution of these forms by the Plaintiffs and their counsel has proved unreliable at best.

[13] Knauf Class Settlement Agreement, Section 1.72.

[14] Section VIII(H) provides that "[A]ny disputes under this Agreement shall be presented for resolution to the MDL Court. The MDL Court's determination shall be final with no appeal." (Rec. Doc. 16978-1).

### a. Adedeji, 11803 Honey Bear Lane, Saucier, MS[15]

Moses and Fola Adedeji's Option 2 remediation was funded in October 2014. At that time, though they sought the Lump Sum Payment that is only for Residential owners, these claimants were Commercial owners, and the property was a rental. The property was being advertised for sale as "tenant-occupied."[16] The claimants, according to their own responses on the Lump Sum Payment Eligibility Form, had not lived in the property since January 2011, more than a year and a half prior to the discovery of Chinese drywall. Mr. Adedeji has lived in Dallas, TX, since 2011.[17]

Upon information and belief, no less than four other families (renters) have resided in the subject property since 2011,[18] yet the Lump Sum Payment Eligibility Form executed by opposing counsel makes no mention of the property being a rental. When the Chinese drywall was discovered in the Adedeji property, in August 2012, the claimants were Commercial Owners, who did not incur the type of expenses that the Lump Sum Payment was created to compensate.

For the foregoing reasons, the Lump Sum Payment Eligibility Form of Adedeji should be given no weight, and the Lump Sum Payment claim should be denied.

### b. Butts/Steward, 15902, 15904, & 15906 Innerarity Point Rd., Pensacola, FL[19]

Lowell Butts and Darrell Steward own three properties in the Innerarity Point community. Though they purchased these units in April and May 2013, well after it was public knowledge that these units contained Chinese drywall, the Knauf Defendants nevertheless agreed

---

[15] Exhibit ADEDEJI-1, Lump Sum Payment Eligibility Form of Adedeji.

[16] Exhibit ADEDEJI-2, property listing, accessed October 2, 2014.

[17] Exhibit ADEDEJI-3, biography of Moses Adedeji, Southwestern Medical Center, accessed October 2, 2014.

[18] Upon the Court's request, the Knauf Defendants would file TransUnion "Address Reports" under seal, showing that the Adedeji property has been a rental since 2011.

[19] Exhibit BUTTS-1, Lump Sum Payment Eligibility Forms of Butts and Steward for their three properties.

4

to pay for the remediations. Their Option 2 remediations were funded in August 2014, but these two individuals claim that they are still owed the Lump Sum Payments for Residential properties *because they claim all three properties are their secondary residences*. In fact, they claim that all three properties were *simultaneously* secondary residences. This absurd position is further exposed by the fact that there is evidence that these were rental units at all times, and there is *no record* of these two claimants ever occupying these properties.[20] These are Commercial, rental properties.

The Knauf Defendants have already provided more than adequate settlement funds to these claimants, who likely purchased these investment properties with knowledge that they contained Chinese drywall. As Commercial owners, they are not owed the Lump Sum Payment for any of these three properties.

For the foregoing reasons, the Court should give no weight to the Lump Sum Payment Eligibility Forms of Butts and Steward and deny their Lump Sum Payment claims.

### c. Damani, 2368 Arbor Glenn, Hoover, AL[21]

Salimah Damani owns two properties that obtained Chinese drywall remediations pursuant to the Knauf settlement. Damani received the Lump Sum Payment for the first property (approximately $22,000),[22] which was remediated in 2013, and now Damani seeks a second Lump Sum Payment for a property that sits only one-tenth of a mile away from the first property.[23] The Knauf Defendants first raised concerns regarding the second Lump Sum Payment when confronted with the improbability that someone owns a secondary residence

---

[20] Upon the Court's request, the Knauf Defendants would file TransUnion "Address Reports" under seal, showing that other persons reside and have resided in these properties at all relevant times and that there is no evidence that the claimants ever resided in these properties.

[21] Exhibit DAMANI-1, Lump Sum Payment Eligibility Form of Damani for the subject property.

[22] Exhibit DAMANI-2, Settlement Administrator overview for 3078 Arbor Bend, Birmingham, AL.

[23] Exhibit DAMANI-3, Google Map showing Damani's properties are one-tenth of a mile from each other.

within a tenth of a mile of their primary residence in suburban Birmingham, Alabama, instead of in a more typical and further vacation destination. Upon information and belief, Damani has never resided in the subject property, which is and has been at all relevant times a rental, Commercial property that does not qualify for the Lump Sum Payment.[24] The claimant's Lump Sum Payment Eligibility Form, like those of the other claimants addressed in this opposition, is simply not corroborated by the facts.

Even if Damani's Lump Sum Payment Eligibility Form were to be taken at face value, Damani makes clear that Chinese drywall was not discovered until 5-1/2 years after Damani no longer lived in the property. Therefore, Damani would not have incurred the types of expenses the Lump Sum Payment was created to compensate. However, considering the fact that Damani has not disclosed the true nature of the property, the Lump Sum Payment Eligibility Form should carry no weight.

On September 12, 2013, the subject property underwent the settlement-mandated confirmatory inspection. Present at the inspection was Belinda Webb, Damani's *tenant*. According to the inspection report, the tenant had been a renter at the property for a year and a half at the time of the inspection.[25] However, seven months later, on April 10, 2014, counsel for Damani omitted from the Lump Sum Payment Eligibility Form any reference to the property being a rental, Commercial property. The "prior use" was marked as a primary residence, and the "current use" was marked as a secondary residence. It is clear that the Lump Sum Payment Eligibility Form was filled-in with the sole purpose of misinforming Knauf and obtaining a

---

[24] Upon the Court's request, the Knauf Defendants would file TransUnion "Address Reports" under seal, showing that other persons reside and have resided in the Damani property and that there is no evidence that Damani has ever resided in the subject property.

[25] Exhibit DAMANI-4, Morse Associates report, page 2.

second Lump Sum Payment for Damani, regardless of the facts. This Commercial property is currently advertised for rent.[26]

For the foregoing reasons, the Lump Sum Payment claim of Salimah Damani should be denied.

### d.  Zhu, 15916, 15938, 16002 Innerarity Point Road, Pensacola, FL[27]

Jinxi Zhu owns three properties in the Innerarity Point community. Though Zhu purchased these units in late-March 2013, well after it was public knowledge that these units contained Chinese drywall, the Knauf Defendants nevertheless agreed to pay for the remediations. Zhu's Option 2 remediations were initially funded in September and October 2014, but *Zhu claims that three Lump Sum Payments are still owed because all three properties are vacation properties*. This absurd position is further exposed by the fact that there is evidence of renters occupying all three properties throughout Zhu's ownership.[28] These are Commercial, rental properties, and Zhu is a Commercial Owner under the settlement.

The Commercial nature of these properties is further evidenced by the fact that Zhu owned these properties "for the purpose of selling." Zhu purchased units 15916 and 16002 in 2013 for a combined $164,800 and sold these units in 2015, after remediation, for a combined *profit* of $135,200.[29] The facts suggest that these properties were Commercial at all times.

The Knauf Defendants have already provided more than adequate settlement funds to Zhu, who likely purchased the properties with knowledge that they contained Chinese drywall.

---

[26] Exhibit DAMANI-5, current advertisement, accessed June 21, 2016.

[27] Exhibit ZHU-1, Lump Sum Payment Eligibility Forms of Zhu for three subject properties.

[28] Upon the Court's request, the Knauf Defendants would file TransUnion "Address Reports" under seal, showing that other persons reside and have resided in these properties at all relevant times.

[29] Exhibit ZHU-2, Escambia County Property Appraiser sales information.

As a Commercial Owner, Zhu is not owed the Lump Sum Payment for any of these three properties.

For the foregoing reasons, the Court should deny the Lump Sum Payment claims of Jinxi Zhu and rule that these are Commercial properties under the Knauf Class Settlement Agreement.

### e. Holmes, 6152 Longmeadow Way, Trussville, AL[30]

The Option 2 remediation of Chad and Shanna Holmes' property was funded by the Knauf Defendants in August 2014. The Lump Sum Payment was not issued, however, because the Lump Sum Payment Eligibility Form executed by the claimants was found to be inaccurate. The Lump Sum Payment Eligibility Form labeled the current and prior uses of the property as a "Primary Residence," but there was in fact a renter present when the settlement's Approved Inspector confirmed KPT Chinese Drywall in the property.[31] Because rental properties are not eligible for the Lump Sum Payment and because the Lump Sum Payment Eligibility Form proved to be unreliable in this case, the Lump Sum Payment was not paid.

For the foregoing reasons, the Lump Sum Payment Claim of Chad and Shanna Holmes should be denied.

## III. CONCLUSION

Commercial Owners are ineligible for the Lump Sum Payment, which is a settlement benefit crafted for the compensation of Residential Owners for the type of costs incurred by Residential Owners. Plaintiffs, all Commercial Owners, filed incorrect and misleading Lump Sum Payment Eligibility Forms with the Settlement Administrator in an effort to impermissibly receive Lump Sum Payments. For the foregoing reasons, the Court should either remand the

---

[30] Exhibit HOLMES-1, Lump Sum Payment Eligibility Form of Holmes.
[31] Exhibit HOLMES-2, Morse Associates inspection report, page 2.

issue to the Special Master or deny the Plaintiffs' Motion because the Plaintiffs are Commercial Owners ineligible to receive Lump Sum Payments.

        Respectfully submitted,

        **BAKER, DONELSON, BEARMAN,**
        **CALDWELL & BERKOWITZ, PC**

        /s/ *Kerry J. Miller*
        **KERRY J. MILLER (#24562), T.A.**
        **DANIEL J. DYSART (#33812)**
        **RENE A. MERINO (#34408)**
        201 St. Charles Avenue, Suite 3600
        New Orleans, LA 70170
        Telephone:  (504) 566-8646
        Facsimile:  (504) 585-6946
        Email:  kjmiller@bakerdonelson.com

        *Counsel for the Knauf Defendants*

## CERTIFICATE OF SERVICE

     I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6 and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 22nd day of June 2016.

        /s/ *Kerry J. Miller*