UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | CIVIL ACTION<br><br>NO. 09-02047<br><br>SECTION "L" (5) |
| THIS DOCUMENT RELATES TO: ALL CASES | |

## ORDER & REASONS

### I.     INTRODUCTION

Before this Court is Prime Homes' appeal of the Special Master's final determination on its miscellaneous appealed claim (R. Doc. 20134). Having read the parties' briefs, reviewed the applicable law, and heard the parties on oral argument, the Court now issues this Order and Reasons.

### II.    BACKGROUND

####         a.  Procedural Background

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used in the construction and refurbishing of homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of smelly gasses, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819, 829 (E.D.La. 2012),

*aff'd*, 742 F. 3d 576 (5th Cir. 2014).  Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall.  Accordingly, these homeowners began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall.  Because of the commonality of facts in the various cases, this litigation was designated as multidistrict litigation.  Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 2047 in the U.S. District Court, Eastern District of Louisiana.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities, and (2) the Taishan Entities.  The instant appeals before the Court related to the Knauf Entities.

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States.  The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts.  The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009.  *See* (R. Doc. 18).  On November 2, 2009, in Pretrial Order No. 17, KPT agreed to a limited waiver of service.  *See* (R. Doc. 401).  On March 15-19, 2010, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall.  *See* (R. Doc. 2713).  For purposes of the trial, KPT stipulated that its Chinese drywall "emits certain reduced sulfur gases and the drywall emits an odor." *Id*.  The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and

Conclusions of Law ("*Hernandez* FOFCOL"), *see id.*, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46, which represented a cost of $81.13 per square foot based on the footprint square footage of the house. *See* (R. Doc. 3012).

Thereafter, on October 14, 2010, the Knauf Entities entered into a pilot remediation program with the Plaintiffs' Steering Committee ("PSC") in the MDL. This program was largely based upon the remediation protocol formulated by the Court in *Hernandez*. The Knauf pilot remediation program is ongoing and has, at present, remediated over 2,000 homes containing KPT Chinese drywall using the same protocol. At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which is designed to resolve all Knauf-related, Chinese drywall claims. *See* (R. Doc. 16407-3). Although there are numerous settlement agreements with defendants in the chain-of-commerce with the Knauf Entities, the instant appeals related specifically to the Knauf Settlement Agreement.

### b. The Knauf Settlement Agreement

The Knauf Settlement Agreement provides for the complete remediation of the contaminated structure in accordance with an evidence based protocol developed from various different trial. In addition, the Agreement allows Claimants to submit a number of different claims for compensation due to damage allegedly caused by Chinese Drywall. Claims unrelated to remediation of a property are known as "Other Loss Claims." During the course of the Chinese Drywall Settlement Program, the Settlement Administrator received 7,986 Other Loss claims. These claims were reviewed by the Settlement Administrator, who reviewed claim

documentation for completeness and issued an eligibility notice using amounts set forth in PTO 29. Claimants who were dissatisfied with this award had the option to appeal their award to the Special Master. The Special Master independently reviewed these claims and issued a new award determination. Pursuant to Section 4.6.8 of the Knauf Settlement Agreement, Claimants who remained unsatisfied with the Special Master's award had the additional option to appeal directly to the Court.  Specifically, the Knauf Settlement Agreement provides that:

> Unless otherwise final and binding pursuant to the relevant sections below, decisions of the Special Master with respect to the Other Loss Fund may be appealed by Settlement Class Counsel, the Knauf Defendants or an affected Class Member within 15 days of service of the Special Master's decision by filing an objection with the Court, but only after Settlement Class Counsel, the Knauf Defendants, and, if applicable, an affected Class Member's counsel meet and confer in an attempt to resolve such issue. Unless the Court orders otherwise, appeals will be based on the record and briefing before the Special Master without further evidentiary submissions, briefing or argument. Any Party may, at its own expense, request that proceedings before the Special Master be transcribed. The Court's decision on any objections will be final, with no further appeals permitted.

Knauf Settlement Agreement, Section 4.6.8.  Out of the starting population of 7,986 claims, only 64 claimants appealed to the Court, including ten appealed miscellaneous claims.

The appealed miscellaneous claims were filed pursuant to Section 4.7.3.1 of the Knauf Settlement Agreement, which provides that:

> The Special Master and the MDL Court may, in their discretion, consider and allow claims [other than Pre-Remediation Alternative Living Expenses claims, Lost use, sales and rentals claims, foreclosure claims, sales in mitigation claims, tenant loss claims and bodily injury claims] so long as the claims are equitably justified and do not involve claims for the specifically enumerated Other Loss Exclusions. In considering any such additional claims, the Special Master and the MDL Court may, in their discretion, adjust the amount of the claims so as to protect Other Loss funds for other Settlement Class Members.

4

Knauf Settlement Agreement, Section 4.7.3.1.  The specifically enumerated Other Loss Exclusions include "damage or loss for stigma, injury to reputation, loss of enjoyment of home, psychological or emotional injury, medical monitoring, injury to reputation, credit rating loss, legal and accounting expenses, loss of investment opportunity…"  Knauf Settlement Agreement, Section 4.7.3.  Pursuant to the aforementioned terms of the Knauf Settlement Agreement, the Court reviews the following appealed miscellaneous claims in turn.

### III.     APPEALED MISCELLANEOUS CLAIMS

Prime Homes ("Claimant") timely submitted miscellaneous claims for nineteen properties for recovery from the Knauf Settlement Other Loss Fund.  Claimant received an Other Loss Eligibility Notice in the amount of $2,500 for each property. On June 14, 2015, Claimant requested Special Master consideration for its miscellaneous claims.  On December 3, 2015, the Special Master awarded Claimants $0.00 for each miscellaneous claim for each property.  On December 18, 2015, Claimant requested reconsideration of the Special Master's award. Thereafter, the Special Master issued a post-reconsideration award, consistent with his earlier award, in the amount of $0.00 for each property, from which Claimant now appeals.

Claimant seek compensation for expenses related to carrying costs, maintenance costs for the replacement of stucco and HVAC units damaged by Chinese drywall totaling $4,476.758.00. The Special Master determined that the damages sought by this Claimant were not equitably justified. Replacement of stucco is explicitly excluded under the Miscellaneous claim type as it is covered under the Global, Banner, InEx, Repair and Relocation Expenses claim type. The Claimant also failed to provide receipts specifically allocating and detailing the HVAC expenses for each of the 19 units referenced in its appeal.  However, two days prior to the hearing, Claimant's counsel filed additional documentation verifying $56,666.02 in HVAC-related

5

expenses.  Accordingly, **IT IS ORDERED** that Claimant be awarded $56,666.02 for his miscellaneous claim.  This award will be distributed to the Claimants on a pro rata basis once all the remaining other loss objections are resolved.

New Orleans, Louisiana this 24th day of June, 2016.

_____
United States District Judge