# Exhibit 2

## AFFIDAVIT OF K. EDWARD SEXTON, II

Before me, the undersigned authority, in and for said county and said state, personally appeared K. Edward Sexton, II, and after being duly sworn and deposed, states upon his oath as follows:

My name is K. Edward Sexton, II. I am a licensed attorney in the State of Alabama. I have been continuously licensed and practice primarily in the area of plaintiff litigation.

I have been class counsel in numerous cases and have been involved extensively in other complex litigation recovering more than $100,000,000 for plaintiffs in class actions, complex banking, insurance and consumer matters. I have represented plaintiffs in complex product liability, general personal injury and wrongful death cases. I have tried cases in federal courts in Mississippi and Alabama and multiple cases in state court in Alabama. I have been successful in appeals and arguing cases in the Fifth Circuit and Eleventh Court of Appeals and the Alabama Supreme Court. In the class actions, I have been involved in, the number of class members would typically dwarf the number of class members in the KPT Settlement.

Prior to filing one of the first class actions in Alabama for clients damaged by Chinese drywall, I spent substantial time and resources developing a theory and model for a successful result.

Given that there was no MDL or other consortium of Chinese drywall lawyers, I involved myself in researching and in obtaining records of importers bringing Chinese drywall into Pensacola and other ports on the gulf coast. I met with and obtained the records from the Harbor Master in Pensacola. In an effort to assist the PSC, I provided my research and the records to the PSC or their representatives. The Harbor Master in

1

Pensacola had advised me that no one else had requested his records and I thought it would be helpful to the class of people damaged by Chinese drywall.

Approximately 5 months after I filed my first cases in Alabama, MDL 2047 began. At the time I filed the first class action in Alabama against KPT and other defendants, and throughout this litigation, my firm and Eric Hoaglund's firm have been ready, willing and able to fully litigate our cases. In fact when my cases were first filed, there was no MDL pending and those cases were filed with the expectation of fully litigating those claims.

Once the MDL began, I was involved in meeting with potential PSC members and involved in the process of submitting cases for potential Bellwether hearings. Specifically, I gathered information and prepared the submission of materials in *McDuffie, et al v. KPT, et al*, as one of the cases to be tried in the bellwether process.

In the beginning there was no real protocol for inspections or inclusion in the MDL. The PPF did not require pictures or samples of the drywall. As litigation progressed, it was learned through trial and error that additional information would be required. As a result, virtually all of these properties required multiple inspections and continued lengthy communications with the client.

Due to the great expense and time commitment these cases required in the early stages of this litigation, Eric Hoaglund's firm and my firm entered into an agreement to jointly prosecute the client's claims we each had at that time, and any new client's claims going forward.

I have, in conjunction with Eric Hoaglund, inspected hundreds of homes and/or commercial properties and approximately 400 condominium units for the purpose of determining whether or not they contained reactive Chinese drywall. I have inspected and

viewed warehouses where major builders stored their drywall, and warehouses and storage facilities where it was offloaded from overseas.

In the initial phase, I was in contact with committees or members of the PSC and we were continually asked to obtain and provide information to the PSC about insurance, foreclosures, square footage, builders, suppliers, warranties and many other factual matters. Without this information, the PSC in my opinion would have been unable to obtain much of the information they needed to negotiate the settlements they claim were produced primarily by their efforts.

Eric Hoaglund and I have been extensively involved in the process of remediation and more than 160 of our clients have had their homes remediated or recovered benefits. While these properties are being considered as part of the KPT Settlement, many of our clients had resolved their claims with KPT and other defendants prior to the KPT Settlement announced in December of 2011, and prior to the term sheet the FC references that was signed in October 2011. In fact as of August 2011, we had the majority of our properties cleared for inspection by Knauf (Exhibit A) for the purpose having them remediated. While we had attempted on multiple occasions to have our properties included in the Pilot Program, they were never added by the PSC. Due to our inability to have our cases moved forward by the PSC and the Pilot Program having failed to get off the ground, we began direct communications with the defendants.

The reference to the extensive time and expenses of our firms is not meant to infer that we obtained no benefit from the PSC and its efforts. However, it is provided so that the Court could have evidence before it regarding our involvement, nature of work performed and expenses incurred by our firms as compared to the PSC's claim that private

3

attorneys had a minor role in the resolution and success of these settlements.

I have reviewed Eric Hoaglund's Affidavit, and agree with his description of work and resources that were required in cases involving clients' homes and the health concerns of their families.

We learned early on, that even the initial client meeting would be unlike meetings with clients in other types of litigation.  Prior to entering into an attorney-client relationship with a client it would often require many hours answering questions as to how we could help, discussing medical and financial issues with them and walking them through the potential outcome.

I have had husbands and wives collapse sobbing at their kitchen table over their fears that defective drywall was causing, and had caused physical injury to family members.  They were afraid they would lose their home and largest investment.  Many of my clients spent  thousands of dollars replacing appliances and HVAC units.  In short, many of them were at their ropes proverbial end with respect to providing shelter and financial security for their family.  Even at this stage of a client's journey, I would be hard pressed to say that a paralegal or non-lawyer could have handled these preliminary matters.  There was no MDL and certainly no  proposed settlement when we met with many of these clients, and a careful and reasoned decision was made before we agreed to their representation.  We were willing to do what it took to help them.

From the date the initial attorney-client relationship was formed and throughout the litigation, we were required to give a great deal of individual attention and time to these clients.  We were called in to provide general legal advice, advice on tax matters, remediation process, effect of settlements, medical concerns, financial issues and the legal

4

consequences or effects of matters that weighed on these families and their future.

The Settlement Agreement which was filed for preliminary approval in December of 2011 was unlike other settlements in class litigation, or MDL matters. Generally, these types of cases simply involve the private attorney meeting with the client and getting them to sign a release and pick up a check. In some cases the PC would be required to assist with the claim form and documentation to prove that they are entitled to the recovery.

In this case, the settlement required the review and legal interpretation of multiple complex documents, in order to advise clients to participate in settlements or the remediation or other settlement program options. We were required to advise clients on multiple legal issues and consequences attached.

The paperwork required to be executed and reviewed by our clients prior to the Settlement in December of 2011 was substantially the same as the requirements prescribed in the December 2011 Settlement. The client would have to make a decision based on a variety of circumstances and factors, such as their financial condition, health factors and family circumstances. The client's decision could not reasonably be made without legal advice. In fact, we tried letting non-lawyer staff handle these issues, and the clients demanded to deal with their lawyer rather than accept legal advice of a paralegal. Our legal and ethical obligations required our personal attention as lawyers representing our clients.

Once we obtained the approval of Knauf to be considered for settlement, as all the inspections and preliminary matters were completed, the client was required to make a selection between Option 1, 2 or 3. Given the extreme differences in the 3 options, and consequences and affect on our clients, legal advice and interpretation of legal documents

5

were required.

While we advised most clients to choose Option1, it was often times a heated exchange when they found out that the contractor was selected by Knauf, a company which they felt had damaged their financial future and family's health. However, given the substantially reduced benefits of Option 2 and Option 3, most clients accepted our advice.

Once the selection was made under the options available, the documents would be returned. If Option 1 was selected, then a Work Authorization and release would be provided and another meeting would be scheduled to review and explain the documents and their legal consequences to the clients.

The documents would be returned to Knauf and eventually a Move-Out Notice and a Kick-Off Meeting would be scheduled. We would spend additional time with clients, calming their fears and concerns that they had about not knowing the name of or having any way to check the builder qualifications, and assuring them that when they met the builder for the first time, we would be present. Moreover, they wanted assurances that we would closely monitor the demolition and reconstruction of their home, as the Agreement provided that they would have limited access to their home during remediation. Throughout the construction process, we had to be in touch with and accessible by telephone and on-site to resolve conflicts with the contractor, uncertainties with the requirements of the Settlement Agreement and work scope. In fact, early on we would request interpretation of provisions of the settlement from the PSC only to learn that they did not know or were not aware of specific provisions or their consequences.

Without an attorney assisting the client through the remediation process and fighting for them, many damaged items wouldn't have been repaired. There would have been

6

additional problems arise and worsen as without any presence and hands on representation many homes would have been completed in accordance with the Settlement protocol.

Despite the fact that our homes were not included in the Pilot Program released by the PSC, we had the first of the initial MZA inspections performed. Months prior to the December 2011 Settlement, we had the first homes inspected by Knauf. The inspectors initially did not have an acceptable or workable protocol to inspect Alabama houses and even argued with us about KPT being in the ceiling. The first batch of inspectors had never been in a home with Chinese drywall. We learned that they had minimal training earlier in the week. Eric Hoaglund and I accompanied them on virtually every inspection and on may occasions would have to show them where the KPT was located, as they were unable to locate it. If the initial inspectors failed to find the drywall, the client's home would have been ineligible for remediation or any settlement benefits.

While the majority of meetings with clients, builders, inspectors, government inspectors and Knauf attorneys were attended by Eric Hoaglund and me, we delegated as much as possible to staff. My legal assistant handled thousands of calls, emails and letters and would meet with clients and handle matters where we as lawyers with obligations and duties to clients felt they could handle and which wouldn't require legal advice.

Throughout the inspection process and through the completion of remediation for the last several years, we were spending most of our day on Chinese drywall, issues for clients. I never saw a member of the PSC, or one member of their staff present and did not receive their assistance.

Eric Hoaglund and I scheduled and attended town hall meetings, and included the

7

Alabama Attorney General, Luther Strange and were in communication with his office staff to help them monitor Chinese drywall.  We invited members of the PSC and participated with them at the one town hall meeting that they attended, at our request.

Eric Hoaglund and I became concerned that we were fast approaching a statute of limitations issue in the Alabama cases.  While the majority of our cases had been pending in the MDL, those cases did not include suits against the Alabama builders.  We were concerned that even if those builders were added as defendants' jurisdictional defenses may preclude recovery.  As a result in 2010 and 2011 we filed multiple lawsuits in state court against builders.

The state claims we filed required us to spend substantial time and energy preparing and positioning those cases for our clients' maximum benefit.  We were faced with demands for arbitration which we had to defend, as well as other pleadings and matters which required response and analysis to further a strategical and beneficial result.

Shortly after filing some of our state cases, we decided to try and force a quick mediation.  The Presiding Judge of Jefferson County, Alabama, the Honorable Scott Vowell, granted our Motion to Compel and ordered mediation.  The attorneys for the builders in other cases started filing motions to join InEx as a third party defendant, then InEx began to file third party complaints to bring Knauf in the suits in Alabama.

During this period of time, other attorneys in the state started filing lawsuits against builders.  In an effort to conserve and manage judicial resources, Eric Hoaglund and I were appointed as MDL Liaison counsel in Alabama (Exhibit B).

In the role as Liaison counsel, we communicated with the defense attorneys and judges from the circuits in Alabama.  This included a meeting in Jefferson County, where

8

the Alabama Supreme Court Chief Justice, Sue Bell Cobb and many presiding judges for circuits around the state met to discuss the most efficient way to handle these cases.

Following that meeting, and our appointment as Liaison counsel, we established track assignments dealing with discovery, mediation and trial preparation.  We were involved in and responded to motions to stay Alabama state court proceedings which were filed by Knauf and INEX and argued those motions before the Court.

Once the PSC announced the Pilot Program, we undertook additional reviews of each file to determine if they were eligible for the program and discussed and advised our clients on the legal ramifications of that program.  Although we did not have any of our cases selected in the Pilot Program, we continued to posture and present our cases to the PSC for inclusion.

In early 2011, when we had been unable to have any of our clients added to the Pilot Program, we made the decision to provide information to Knauf's counsel on our homes.  In early 2011, we met with InEx and Knauf's counsel in New Orleans for a mediation of one of our multi-unit properties, Gulf Shores Surf & Racquet Club.  The mediation was successful and by April of 2011, we were provided with a Term Sheet from Knauf and Inex (Exhibit C - 04/28/2011 email from Angela Vicari with Kay Scholer).

I spent substantial time and expense finalizing the settlement and eventual remediation of the Gulf Shores Surf & Racquet Club, including multiple meetings with the COA and individual unit owners, before and after the remediation began.

The demolition and construction process began in late summer and early fall of 2011.  The Gulf Shores Surf & Racquet Club project was the first project remediated in Alabama (Exhibit D).  Due to there being no prior remediations, substantial time was

9

required of the PC discussing and reviewing the protocol and legal documents to insure the construction was in compliance with our Settlement Agreement.

During this mid to late 2011 time frame, we continued to work directly with Knauf's attorneys to establish a protocol for inspections to be performed by MZA to verify Knauf board was present, so that a property could be included in any settlement and eventual remediation program.

I spent hundreds of hours working directly with Knauf attorneys to come up with a workable list of homes that could be remediated as the Pilot Program appeared to be stalled. We compiled listings of our homes based on zip codes, subdivisions and value of homes. We also worked with Knauf in establishing and reviewing a remediation protocol for high end homes, which came to be known as homes more than 3,500 square feet.

Throughout 2011 and 2012, after the proposed settlement was filed in December of 2011, we continued to work directly with Knauf. By June or July of 2012. We had the majority that Knauf had inspected in Alabama cleared for remediation. Approximately 65 of the 68 homes being remediated or scheduled were PC homes in July 2012, according to BrownGreer's report.

The homes and properties being remediated required constant monitoring and consultations with contractors, clients and on occasion, the PSC. In light of the settlement terms and the remediation protocol the legal attention that had to be dedicated to homes and properties being remediated precluded Eric Hoaglund and I from undertaking other legal work and constituted approximately 70% of my time from 2009 through 2015.

There were many remediations where the contractor we discovered would attempt to short cut the protocol, and decide on its own what work had to be done. Many of these

10

homes required me to make multiple trips to the property both, before, during and after the remediation.   Conflicts and disputes over workmanship and quality as well as protocol compliance issues required our attendance, as often times there were legal issues involved and interpretation issues involving legal documents or code.

While I understand there was an Ombudsman to handle certain issues, many of these issues we faced required daily communication and contact over several days or intermittently throughout the entire project.  We represented the clients, and were required to represent their best interest and communicate with them timely on all issues involving their claim.   These matters could not have reasonably been entrusted to a paralegal. There were remediations we handled that took over one year to complete.

In some cases we had multiple inspections over the course of a year on the same property.  The inspections had to be coordinated with opposing counsel and the scope of the inspection worked out with opposing counsel.  In fact, defense counsel from New Orleans attended an inspection and review of at least one of the multi-unit properties.

Properties being remediated often required us to meet with city or county building inspectors, Fire Marshalls and a host of subcontractors or specialty trades.

Once a property was remediated, I was required to have ongoing communications and provide legal counsel to clients regarding warranty claims and other construction problems that arose.

I was required to frequently review the various settlements and claims to determine if clients were eligible, advise the clients on the terms and benefits.   I was required to obtain additional materials and information from the clients and assist in the processing and timely compliance of deadlines and requirements.   In fact, many of the terms and

compliance dates changed years after the Settlement was announced.  I was never authorized to file time or expense reimbursement requests for common benefit work, as we were never authorized or directed by the PSC to perform that work even though we believe substantial hours we spent provided and increased the class members' recovery and contributed to the common benefit.  We had objected to the Settlement and the PTO's dealing with common benefit which expressly disallowed any claim we could make for common benefit.

Due to our early involvement in the inspection process, remediation process, we worked with Moss and contributed to a modified schedule or protocol to include replacement of the interior air handlers for all remediated homes in Alabama.

Sexton/Hoaglund also established the protocol and drafted certain documents necessary to make a claim under Option 2 and 3.  While the settlement options were reflected in the December 2011 agreement, the framework was only skeletal.  We worked directly with Knauf to develop the documents and protocol used to qualify and recover under Option 2 and 3.  This work was done without assistance of the PSC, but was required to move the Settlement forward.

Additionally, as stated in our Objection to Preliminary Approval of the December 2011 Settlement, but which was withdrawn voluntarily we obtained enhanced benefits for the class.  We were able to obtain a recovery for lowercase Knauf whereby those members would make a partial recovery of benefits from InEx and Global Settlements. Sexton/Hoaglund was also able to increase the benefits of lowercase clients by an agreement to let them participate in the Miscellaneous Claims Fund and, also have holes cut for inspection repaired under the Settlement.

Sexton/Hoaglund were also involved in the Virginia claims or Venture cases and incurred expenses and time in connection with that litigation. Specifically, Sexton and Hoaglund were selected as class counsel for the Alabama class in the Venture litigation. However, when that case was resolved, and the Settlement was approved, we were not included and as such, were unable to claim our expenses and time incurred in that portion of the litigation.

Finally, given the cutoff in the KPT Settlement and claims not filed prior to December 11, 2011, we undertook action to protect the claimants who were *ex post facto* carved out of that Settlement.

While the people who had not filed claims by December 11, 2011 had been included under the class definition in the Omnibus complaints they were left without a remedy. On behalf of a putative class of owners who had not filed claims prior to December 11, 2011, we filed a class action complaint in the Northern District of Alabama. Knauf's counsel, Sexton and Hoaglund worked out an Agreement whereby service of the Knauf entities would be tolled so that attempts could be made to pursue a resolution. (Exhibit E - Tolling Agreement with Knauf).

We approached the PSC about using the Bragan case for the protection and potential resolution of claims barred by the earlier settlement and no agreement could be reached with the PSC. We continued to negotiate with Knauf's counsel and were able to obtain relief for our clients and a frame work for the resolution of the previously barred claims. After the Agreement was reached on our claims, the PSC entered into an agreement to resolve additional claims that had been barred. (Exhibit F).

As previously stated, Sexton/Hoaglund are not claiming that the PSC provided no

13

benefit, but are claiming that the work and expenses incurred after the Settlement announcement in December of 2011, by our firms, was substantial. The Chinese drywall and related matters we were required to deal with required the services of a lawyer, and could not have been done by paralegals or clerical staff. Eric and I had contractual and legal obligations with our clients to represent their individual interests. As lawyers, we used our skill and knowledge to determine how to properly represent our clients. To effectively reduce our contract with our clients to 10% is not justified or supported. I will be available at the Court's convenience to discuss or provide any further information Your Honor may require.

K. Edward Sexton, II

STATE OF ALABAMA    )
COUNTY OF SHELBY     )

I, the undersigned authority, a Notary Public, in and for said County in said State, hereby certify that K. Edward Sexton, II, whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that being informed of the contents of said instrument, he executed the same voluntarily on the date the same bears date.

SWORN TO AND SUBSCRIBED to before me this the 27th day of June, 2016.

Notary Public

My Commission Expires:

MY COMMISSION EXPIRES:
May 24, 2019

14

# EXHIBIT A

**Eddie Sexton**

| | |
|---|---|
| **From:** | Elizabeth Davis <edavis@mhcilaw.com> |
| **Sent:** | Thursday, August 25, 2011 3:49 PM |
| **To:** | Arlene J. Ecker; Lori Marler; Eddie Sexton; dzehnter; mdivine; tbuhl@mzaconsulting.com; avicari@kayescholer.com; Eric Hoaglund; Elizabeth Davis |
| **Subject:** | Knauf Inspections |
| **Attachments:** | Hoaglund-Sexton Alabama Information Submitted to Knauf Updated 8-24-11.xlsx |

Attached is the latest updated chart for the Hoaglund/Sexton files that have been submitted to Knauf.  It is my understanding that each of the homes contained on the list except for number 42 (Gatlin) has now been cleared by Knauf for inspection.  The files highlighted in yellow are the remaining files which need to be set for inspection.  By my count there are approximately fifty-one (51) homes left to be inspected.

The homes that are highlighted in blue have been cleared for inspection and/or set for inspection but we have been unable to get them inspected for various reasons.  As for now, do not schedule additional inspections for the homes in blue and I will attempt to resolve the problems.

It is my understanding we are attempting to schedule inspections for next week.  Given that it is late Thursday afternoon, it may be difficult to schedule inspections for Monday at this point.  However, we can take a shot at it if we have them early in the morning.

By way of warning, next weekend is labor day weekend and we will not be conducting any inspections on Saturday, September 3rd, Sunday, September 4th,  and Monday, September 5th.

I look forward to hearing from you.

Eric

Lib Davis
Secretary to Eric D. Hoaglund
McCallum, Hoaglund, Cook & Irby
905 Montgomery Highway
Suite 201
Vestavia Hills, Alabama 35216
205-824-7767 Telephone
205-824-7768  Facsimile

1

# EXHIBIT B

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA

IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION

THIS DOCUMENT RELATES TO ALL CASES:

BIRMINGHAM DIVISION

CASE NOS.: CV-08-317, CV-10-901753, CV-10-900906, CV-10-901890, CV-10-2944, CV-10-903410, CV-09-900456, CV-10-904442, CV-10-903185, CV-10-3112, CV-10-904507, CV-10-901754, CV-10-3110, CV-10-3109, CV-10-902864, CV-08-316, CV-10-2942, CV-10-904537, CV-10-2945, CV-2010-1165, CV-10-2343, CV-10-3113, CV-10-903404, CV-10-904465, CV-2010-901053, CV-10-902555, CV-10-2943, CV-10-3111, CV-10-3114, CV-10-1470, CV-10-2440, CV-10-903631, CV-10-902973, CV-10-2569, CV-10-9044, CV-10-904442, CV-10-904414, CV-10-904411, CV-11-900361, CV-11-900271, CV-11-900122, CV-11-900255, CV-11-900045, CV-2011-900049, CV-10-904412, CV-10-904537, CV-10-2942, CV-10-90442, CV-10-901167

BESSEMER DIVISION

CASE NOS.: CV-10-900669, CV-10-900670, CV-10-900671, CV-10-900672, CV-10-900673, CV-10-900674, CV-10-900675, CV-10-900677, CV-10-676, CV-10-650, CV-10-651, CV-10-652, CV-10-653, CV-10-900653, CV-10-900679, CV-10-900696, CV-10-900678, CV-10-900694, CV-11-900014, CV-10-900676, CV-10-900652, CV-10-900690, CV-10-900699, CV-10-900650

---

## CASE MANAGEMENT ORDER NO. 2

---

This matter came to be heard on this the 4th day of March, 2011.  Having considered the caseload and management problems created by the number of Chinese-manufactured drywall cases in Jefferson County, and in order to better facilitate case management and in the interest of justice, the Court finds that good cause exists for entry of this Order.  This Order shall apply to all cases involving allegations of the presence of, and damage from, Chinese-manufactured drywall that are currently pending in, or that may be hereafter filed in or transferred to the Circuit Court of Jefferson County, Alabama.  This Order is intended to facilitate the administration of Chinese-manufactured drywall cases filed in the Circuit Court of Jefferson County, Alabama, by reducing

1

multiple and duplicative filings and hearings and by setting up orders for the orderly disposition of these cases.  Therefore, it is ORDERED, ADJUDGED and DECREED that:

1. These cases are hereby placed on the Administrative Docket of the judges to which they are assigned.

2. These cases are hereby consolidated before Judge G. Nicole Still for all discovery and pretrial proceedings pursuant to Rule 42(a) of the Alabama Rules of Civil Procedure.  If the parties are unable to resolve them after the completion of discovery and other pretrial proceedings, they will be referred back to the judges to which they are assigned for separate trials pursuant to Rule 42(b) of the Alabama Rules of Civil Procedure.

3. In order to facilitate management of these cases, the Court will look to the following attorneys to provide coordination and communication with other counsel in each individual case.

 A. **Plaintiffs' Liaison and Coordinating Counsel:**

> W. Brian Collins
> David L. Horsley
> COLLINS & HORSLEY, P.C.
> 2021 Morris Avenue, Suite 200
> Birmingham, Alabama 35203
> Telephone: (205) 324-1834
> Facsimile: (205) 324-1946
> Email:  brian@collinsdowney.com
>    david@collinsdowney.com
>
> H. Arthur Edge, III
> H. Arthur Edge, III, P.C.
> 2021 Morris Avenue, Suite 300
> Birmingham, Alabama 35203
> Telephone: (205) 453-0322
> Facsimile: (205) 453-0326
> Email: art@edgelawyers.com
>
> Eric D. Hoaglund
> McCallum, Hoaglund, Cook & Irby, LLP
> 905 Montgomery Highway, Suite 201
> Vestavia Hills, Alabama 35216
> Telephone: (205) 824-7767
> Facsimile: (205) 824-7768

Email: ehoaglund@mhcilaw.com

K. Edward Sexton, II
Gentle, Turner & Sexton
501 Riverchase Parkway East, Suite 100
Hoover, Alabama 35244
Telephone: (205) 716-3000
Facsimile: (205) 716-3010
Email: esexton@gtandslaw.com

B.     **Defendants' Liaison and Coordinating Counsel:**

**Manufacturer Defendants**

Douglas E. McCoy
E. Luckett Robinson, II
HAND ARENDALL LLC
Post Office Box 123
Mobile, Alabama 36601
Telephone: (251) 694-6255
Facsimile: (251) 544-1622
Email: dmccoy@handarendall.com
       lrobinson@handarendall.com

John E. Rollins
HAND ARENDALL LLC
1200 Park Place Tower
2001 Park Place North
Birmingham, Alabama 35203
Telephone: (205) 324-4400
Email: jrollins@handarendall.com

**Distributor Defendants**

Vincent A. Noletto, Jr.
Heather M. Houston
CARR ALLISON
6251 Monroe Street, Suite 200
Daphne, Alabama 36526
Telephone: (251) 626-9340
Facsimile: (251) 626-8928
Email: vnoletto@carrallison.com
       hhouston@carrallison.com

Sean C. Pierce
CARR ALLISON
100 Vestavia Parkway
Birmingham, Alabama 35216

3

Telephone: (205) 822-2006
Facsimile: (205) 822-2057
Email: spierce@carrallison.com

**Homebuilder Defendants**

James A. Kee, Jr.
Angela C. Shields
Lucy W. Jordan
Kee Law Firm, LLC
1900 International Park Drive, Suite 220
Birmingham, Alabama 35243
Telephone: (205) 968-9907
Facsimile: (205) 968-9909
Email: jk@keeselby.com
       as@keeselby.com
       lj@keeselby.com

**Subcontractor Defendants**

Steve R. Burford
Simpson, McMahan, Glick & Burford, PLLC
The Mountain Brook Center
Highway 280, Suite 203W
Birmingham, Alabama 35223-2468
Telephone: (205) 876-1603
Facsimile: (205) 876-1616
Email: SRBurford@sgblawyers.com

The Court will consider the appointment of additional liaison and/or coordinating counsel

as requested by the parties.

DONE and ORDERED this the 4th day of March, 2011.

_____
J. SCOTT VOWELL, PRESIDING JUDGE

4

# EXHIBIT C

**Arlene J. Ecker**

| | |
|---|---|
| **From:** | Eddie Sexton |
| **Sent:** | Thursday, April 28, 2011 4:32 PM |
| **To:** | Arlene J. Ecker |
| **Subject:** | FW: Gulf Shores |
| **Attachments:** | 32128288.docx; Manifestation Exhibit - Pilot Program (01848520).doc |

**From:** Vicari, Angela [mailto:AVicari@kayescholer.com]
**Sent:** Thursday, April 28, 2011 3:46 PM
**To:** Eddie Sexton; ehoaglund@mhcilaw.com; Bert Taylor
**Subject:** Gulf Shores

Eddie, Eric, and Bert,

Attached please find an execution version of the term sheet for the Gulf Shores remediation. Please sign and return to me.

Eddie and Eric – I've also attached a form that each of the Gulf Shores unit owners needs to complete for INEX. Once completed, you can return these to me also. Thanks.

**Angela R. Vicari**
**Kaye Scholer LLP**
425 Park Avenue • New York, NY 10022
Phone: 212.836.7408 · Fax: 212.836.6495
avicari@kayescholer.com
www.kayescholer.com

\*   \*   \*   \*

```
IRS CIRCULAR 230 DISCLOSURE:  To ensure compliance with Treasury
Department regulations, we inform you that any U.S. federal tax advice
contained in this correspondence (including any attachments) is not
intended or written to be used, and cannot be used for the purpose of (i)
avoiding penalties that may be imposed under the U.S. Internal
Revenue Code or (ii) promoting, marketing or recommending to another
party any transaction or matter addressed herein.
```

1

# EXHIBIT D



Home > Press Releases

# Birmingham law firms reach agreement with Chinese drywall manufacturer to provide inspections for affected homes

Published: Wednesday, September 07, 2011, 3:28 PM   Updated: Wednesday, September 07, 2011, 3:28 PM

**By** STYLE Advertising, Marketing & Public Relations
Follow

Recommend    2 recommendations. Sign Up to see what your friends
recommend.                                                              0        Share

                                                                         0        Email

                                                                0                 Print

BIRMINGHAM, Ala. - Eric D. Hoaglund of McCallum, Hoaglund, Cook & Irby, LLP and K. Edward Sexton, II of Gentle, Turner & Sexton have reached an agreement with Knauf Plasterboard (Tianjin) Co., Ltd. (KPT) - a manufacturer of defective Chinese drywall - to begin inspections of Alabama homes in an effort to potentially resolve homeowners' claims through a remediation program.

The two Birmingham law firms are among the first to have homes in Alabama inspected by KPT for the remediation program. In addition, the firms are the first to reach an agreement with KPT and other defendants to repair a condominium complex in Gulf Shores, Ala. The repair of this condominium project will be among the first remediations conducted by KPT in the state of Alabama.

"This is a welcomed development for Alabama homeowners with Chinese drywall, and the inspections by KPT are a major step toward the potential resolution of homeowners' claims," says Hoaglund.

"From the outset, KPT has been committed to assessing ways to address issues pertaining to its drywall and remains the only drywall manufacturer to actively seek a solution via our court-endorsed remediation program" said Greg Wallance, on behalf of KPT. "The remediation program, which is carried out at no cost to homeowners, highlights the quickest and most realistic method for those affected by KPT's drywall to receive assistance. KPT looks forward to the success of the program in Alabama and we hope other residents will join in as they watch the process taking place in their neighborhoods."

Thousands of homes throughout the United States and hundreds in the state of Alabama have been damaged by the gases released by defective Chinese drywall. It also causes electrical, plumbing and air conditioner damage, and significant devaluation of property. To properly repair homes containing Chinese drywall, the defective sheetrock must be removed from the home and all damaged materials must be replaced.

The Chinese drywall was imported and installed in homes primarily during the 2006 timeframe as a result of a shortage of domestic-manufactured drywall. Affected homeowners have been pursuing claims against KPT and other defendants in Federal Multi-District Litigation pending in Louisiana.

ABOUT MCCALLUM HOAGLUND COOK & IRBY, LLP

McCallum Hoaglund Cook & Irby, LLP provides sophisticated advice and representation to businesses and individuals throughout the state of Alabama. Our versatile practice covers a wide range of legal territory including construction law, residential real estate, securities litigation, business litigation and broker fraud. We strive to provide exemplary legal representation and personal, attentive and compassionate service to each and every client. For more information, visit www.mhcilaw.com.

ABOUT GENTLE TURNER & SEXTON

Our knowledge of the complexities of the law, the nuances of interpersonal relationships, and our experience has allowed us the distinction of being hired and appointed by lawyers and federal and state courts to mediate and to administer multi-billion and multi-million dollar mass tort and class action cases. For more than 20 years, Gentle Turner & Sexton has represented individuals, companies and governmental entities in personal injury, business, tax and commercial matters. For more information, visit www.gtandslaw.com.

For more information or to reach Eric Hoaglund or Edward Sexton, please contact Audrey Pannell at 205.503.5955 or Audrey@styleadvertising.com.

Inappropriate post? Alert us.



# Birmingham News

Latest Birmingham News
[ Go! ]

Contact Us

- Birmingham News
- Privacy Policy
- Contact Us



www.Sport-Player.com

## Manufacturer inspecting Birmingham area homes with Chinese drywall – The Birmingham News

August 16 | Posted by BirminghamNews | Birmingham Top Stories Tags: birmingham, stories, top

Reverse Mortgage    Mortgage Refinance    Fire damage restoration    Homeowners    Homeowner

Chinese drywall was imported during the U.S. housing boom of the mid-2000s and is believed to be tainted with sulfuric compounds. (The Birmingham News file)

Birmingham area homeowners who trace property damage and health problems to tainted Chinese drywall could be one step closer to a resolution of their claims against a key manufacturer.

Representatives of Knauf Plasterboard (Tianjin) Co. Ltd., or KPT, are in Birmingham this week, inspecting homes with the defective wallboard.

A majority of the 200-plus homeowners represented by three local lawyers will have their homes inspected. Then, KPT will determine whether to accept them into a remediation program to repair their homes.

"I think this is the first step towards Knauf taking responsibility for the Chinese drywall problem, and I expect they will cooperate following these inspections and begin to fix some homes," said one of the lawyers, Eric Hoaglund.

Most of the homeowners are encouraged that the company is paying attention to the problem in Birmingham, he said.

Greg Wallance, spokesman for KPT, said the remediation program is done at no cost to homeowners.

"KPT looks forward to the success of the program in Alabama and we hope other residents will join in as they watch the process taking place in their neighborhoods," he said in a prepared statement.

Thad Hunter, who lives in Hoover's Ross Bridge community and had his home inspected by KPT on Monday, is hopeful about a fix to the problem his family has been dealing with for several years.

"Until we cross the finish line, so to speak, I'm cautiously optimistic that we're gaining some traction," he said.

Hoaglund, Edward Sexton and Brian Collins represent the majority of area homeowners who have Chinese drywall, which was imported during the U.S. housing boom of the mid-2000s and is believed to be tainted with sulfuric compounds.

Experts say the toxins in the drywall combine with moisture in the air to corrode all types of metal, including the wires in household appliances.

# EXHIBIT E

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

```
-----------------------------------------------------x
IN RE: CHINESE MANUFACTURED        :      MDL NO. 2047
DRYWALL PRODUCTS LIABILITY         :
LITIGATION                          :      SECTION L
-----------------------------------------------------x
THIS DOCUMENT RELATES TO:          :      JUDGE FALLON
                                    :
Bragan, et al. v. Knauf Investment Assets,  :   MAG. JUDGE WILKINSON
et al., No. 12-cv-00163            :
-----------------------------------------------------x
```

## STIPULATION

IT IS HEREBY STIPULATED AND AGREED:

1.     The time limit for service set forth in Federal Rule of Civil Procedure 4(m) is extended through and including December 31, 2012 and for tolling purposes this Stipulation will preclude any defenses raised relating to timely service or any claim that this action was not commenced on the date of the filing of the initial complaint.

2.     Nothing in this Stipulation shall constitute a waiver of service or consent to the Court's jurisdiction.

3.     The Plaintiffs do not waive any right to seek remand to the transferor court and the Defendants agree that any time restriction to seek remand shall be tolled.

4.     This Stipulation shall remain confidential between the parties, except as necessary to enforce the terms of the Stipulation.

Dated: March 15, 2012

K. Edward Sexton, II
GENTLE, TURNER & SEXTON
501 Riverchase Parkway East, Suite 100
Hoover, Alabama 35244

*Attorneys for Plaintiffs*

60661071.DOCX

Dated: March 20, 2012

*Steven Glickstein (RH)*

Steven Glickstein
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022

*Attorneys for Defendants*

# EXHIBIT F

**Arlene J. Ecker**

| | |
|---|---|
| **From:** | Eddie Sexton |
| **Sent:** | Thursday, January 16, 2014 2:16 AM |
| **To:** | Arlene J. Ecker |
| **Subject:** | Fwd: Additions to Tolling Agreement |

Eddie Sexton

Begin forwarded message:

**From:** Eddie Sexton <IMCEAEX-
_O=DOTNETPANEL_OU=EXCHANGE+20ADMINISTRATIVE+20GROUP+20+28FYDIBOHF23SPDLT+29_CN=RECIPIENTS_CN=
ESEXTON+5FGTS@exch026.domain.local>
**Date:** April 18, 2013 at 9:48:15 PM CDT
**To:** Lenny Davis <LDAVIS@hhklawfirm.com>
**Cc:** Eric Hoaglund <ehoaglund@mhcilaw.com>
**Subject:** Re: Additions to Tolling Agreement

Lenny I think the class action Eric and I filed in Alabama in December 2011 or January of 2012 tolled the statute for all those left out of the settlement announced in December of 2011 that precluded claims that weren't filed by December 9th of 2011. The class definition was basically all those who didn't have a suit filed by the cutoff. It also included any opt outs or former class members that received no benefits under that settlement.
   I think we sent you a copy of it in case the steering committee wanted to use it to pick up those excluded that had KPT. It may be useful to the PSC now if there is concern about any people losing their claim. I know you guys are slammed and it has been over a year so I did not know if you remembered it. I can send it again tomorrow if you do not have a copy. The statute should be tolled by that case for everybody and I don't see how Knauf could argue otherwise or try to require more than the Fed Rules require or supersede the tolling provisions of rule 23 by requiring indicia bc it's already tolled. Maybe it will give you some leverage now that there must be some discussion of another complaint.
   If the PSC decides to file another complaint let me know. I'm not sure how the rules of abatement may affect later filed cases.
   Lastly Knauf has already agreed to settle most of the ones we had on your matrix and a few of them have already been scheduled for moss to do takeoff so do they even need to be on your list for tolling. I think they were all cases that were not filed or we did not sign up until after December 9, 2011. We tried to get them added into settlement but they were refused. You don't think by putting them on the list it will slow them down since they are already settled-do you. If so we may want to pull them off the list because it may be forever before they get remediated if they get stuck in limbo while a decision is made about whether to file another case is made. Mr. Kevin and Fred Longer did not sound very hopeful about that when we met with them after the settlement was announced. I think that same day we met with Greg Wallance and Steve Glickstein and discussed our class and they indicated that they weren't interested in settling as a class even if it provided notice and time to file a claim or be forever barred by a drop dead date. I was a little confused as to why they did not want an end to the case and it seemed like a second class would have accomplished that and helped homeowners who were left out of the settlement have hope of getting their homes repaired. Since the settlement with Knauf is over and I think Alabama has jurisdiction over Knauf due to all the work they did here and by taking an assignment of pending state claims by our plaintiffs maybe we should file a motion to remand that case to Alabama since all the claims in the MDL have been resolved against Knauf. I think Judge Fallon ruled that cases after December of 2011 could not use or have access to any discovery taken in the MDL and were precluded from trying to collect from any Knauf assets that may be used to satisfy the earlier settlement. Since the case here can't use any discovery or try to recover from Knauf assets it does not seem like it would be covered under MDL rules or any benefit from being in New

Orleans. Judge Proctor who just got appointed to hear the blue cross mdl and has done others was assigned our case so it would come back to him. Do you see any reason why we shouldn't try to get it out of the MDL and move it forward. Let me know what if anything you think and I apologize for rambling. If we don't have indicia for some and Knauf is rejecting them is there any reason we need to advise anybody in the MDL what we do with them. We can just push the one here and start filing state court cases against the builders and suppliers. Maybe that will give some leverage. When we flooded our courts here and Knauf started getting ordered to mediation here it seemed to tip the cart in the first round and speed things up. Have a good night and if you have any free time next week it would be great to see you. E


Eddie Sexton

On Apr 18, 2013, at 8:40 PM, "Lenny Davis" <LDAVIS@hhklawfirm.com> wrote:

Knauf won't accept it without indicia.

Sent from my iPhone

On Apr 18, 2013, at 8:37 PM, "Eric Hoaglund" <ehoaglund@mhcilaw.com> wrote:

> I am somewhat confused by why we would need indicia to include the names on a tolling agreement. Shouldn't we include them on the list and when Knauf requests the indicia we provide it at that time.
>
> Eric D. Hoaglund
> McCallum, Hoaglund, Cook & Irby, LLP
> 905 Montgomery Highway, Suite 200
> Vestavia Hills, Alabama. 35216
> Tel: (205)824-7767
> Fax: (205)824-7768
> Sent from my iPad
>
> On Apr 18, 2013, at 8:27 PM, "Lenny Davis" <LDAVIS@hhklawfirm.com> wrote:
>
>> For both
>>
>> Sent from my iPhone
>>
>> On Apr 18, 2013, at 7:21 PM, "Eric Hoaglund" <ehoaglund@mhcilaw.com> wrote:
>>
>>> To place them on the tolling agreement or to take them to Knauf?
>>>
>>> Eric D. Hoaglund
>>> McCallum, Hoaglund, Cook & Irby, LLP
>>> 905 Montgomery Highway, Suite 200
>>> Vestavia Hills, Alabama. 35216
>>> Tel: (205)824-7767
>>> Fax: (205)824-7768
>>> Sent from my iPad
>>>
>>> On Apr 18, 2013, at 7:09 PM, "Lenny Davis" <LDAVIS@hhklawfirm.com> wrote:

We must receive proof indicia

Sent from my iPhone

On Apr 18, 2013, at 4:59 PM, "Elizabeth Davis" <edavis@mhcilaw.com> wrote:

Lenny,

I have reviewed the Exhibit A to the Tolling Agreement and need to add the following properties:

1.     Todd & Amy Bragan
       8530 Highlands Trace
       Trussville, Alabama 35173

2.     Fidel Waters
       2138 Timberline Drive
       Calera, Alabama 35040

3.     David Bonamy
       5246 Greys tone Way
       Birmingham, Al. 35242

4.     John Seay
       2468 Arbor Glenn
       Hoover, Al. 35244

5.     Sanibel Condo Owners Association
       1504 West Beach Blvd.
       Gulf Shores, Ala. 36542

6.     Fort Bayou Apartments
       3230 Cumberland Road
       Ocean Springs, MS.

7.     Oak Glen Condominiums and Marina
       2130 Cumberland Rd.
       Ocean Springs, MS.

For items 6 and 7 are obtaining the correct legal names of the owners, but wanted to provide the property addresses. Please let me know if you need additional information.

3

Eric

cc:    Eddie Sexton

         Arlene


_____

**Sent by:  Lib Davis**
**Secretary to Eric D. Hoaglund**
McCallum, Hoaglund, Cook & Irby
905 Montgomery Highway
Suite 201
Vestavia Hills, Alabama 35216
205-824-7767  Telephone
205-824-7768  Facsimile
Email: edavis@mhcilaw.com

CONFIDENTIAL ATTORNEY WORK PRODUCT
This e-mail message contains
confidential, privileged information
intended
solely for the addressee.  Please do not
read, copy, or disseminate it unless
you are the addressee.  If you have
received it in error, please call us
(collect) immediately at (504) 581-4892
and ask to speak with the message
sender.  Also, we would appreciate your
forwarding the message back to us and
deleting it from your system.  Thank you.
CONFIDENTIAL ATTORNEY WORK PRODUCT
This e-mail message contains confidential, privileged information
intended
solely for the addressee.  Please do not read, copy, or
disseminate it unless
you are the addressee.  If you have received it in error, please
call us
(collect) immediately at (504) 581-4892 and ask to speak with the
message
sender.  Also, we would appreciate your forwarding the message
back to us and
deleting it from your system.  Thank you.
CONFIDENTIAL ATTORNEY WORK PRODUCT
This e-mail message contains confidential, privileged information intended
solely for the addressee.  Please do not read, copy, or disseminate it unless
you are the addressee.  If you have received it in error, please call us
(collect) immediately at (504) 581-4892 and ask to speak with the message
sender.  Also, we would appreciate your forwarding the message back to us and
deleting it from your system.  Thank you.