UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) MDL NO. 2047 ) ) ) SECTION: L ) |
| THIS DOCUMENT RELATES TO: | ) ) ) |
| ALL CASES | ) JUDGE FALLON ) MAG. JUDGE WILKINSON ) ) |

**AFFIDAVIT OF DAVID DURKEE IN SUPPORT OF OPPOSITION OF PLAINTIFFS REPRESENTED BY MILSTEIN ADELMAN, LLP AND ROBERTS AND DURKEE, LLP TO THE MOTION OF THE PSC FEE COMMITTEE FOR ALLOCATION OF THE GLOBAL FEE AWARD BETWEEN COMMON BENEFIT FEES AND INDIVIDUAL COUNSEL FEES PURSUANT TO PTO 28(F)**

STATE OF FLORIDA

COUNTY/PARISH OF DADE

BEFORE ME, the undersigned authority;

PERSONALLY CAME AND APPEARED;

David Durkee, who, after being first duly sworn, under penalty of perjury, did depose and declare that the following are true and correct:

1. I am a partner in the law firm of Roberts & Durkee PA.

2. The address of the law firm identified in paragraph no. 1 is 2665 South Bayshore Drive, Suite 300, Coconut Grove, Florida 33133.

3. This Affidavit is submitted in support of the Opposition of Plaintiffs in the above-captioned matter, represented by the firm identified in paragraph no. 1 and by Milstein Adelman, LLP (herein collectively "Counsel") to the Fee Committee's Motion for Allocation of the Global Fee Award Between Common Benefit Fees and Individual Counsel Fees Pursuant to PTO 28(F).

1

4. The following discussion concerns actions taken by Counsel during the course of their involvement in Chinese Drywall litigation since 2008. It is not intended to be all-inclusive:

    a. Counsel first became involved in the Chinese drywall litigation in 2008. The litigation is an extraordinarily complicated mass tort involving foreign and domestic entities, hundreds of defendants, and thousands of plaintiffs. At the time Counsel first became involved, the subject matter and its application in law were unknown and Counsel could not possibly speculate as to its ultimate outcome. This litigation has been far from an "open and shut case."

    Counsel's involvement in this matter has focused on homes located in Florida. From the outset, Counsel played a key role in mobilizing Florida citizens with affected properties to bring suit against the Defendants in this action. Counsel spent significant time educating citizens of Florida of the widespread problem. Counsel appeared on news broadcasts and held town hall meetings, explaining the subject matter as well as how to identify symptoms of defective Chinese drywall.

    Three Florida counties coordinated their Chinese drywall actions due to the extraordinary amount of cases filed in those counties. Counsel was appointed Plaintiffs' Liaison Counsel in West Palm Beach, and was appointed to the Plaintiffs' Steering Committee in Miami-Dade and Broward. Filing over 200 individual actions across sixteen Florida counties, coupled with Counsel's positions in the three coordinated counties, provided Counsel with significant responsibility for prosecuting the Chinese drywall litigation in Florida. Currently, Counsel represents clients with 281 affected residential properties in the state of Florida.

    b. Counsel's primary role as Plaintiffs' Liaison Counsel ("PLC") for West Palm Beach County, Florida was facilitating all communications between the respective parties in the litigation and the court overseeing the litigation. Counsel's additional responsibilities as PLC included:

- Presenting, through briefs and oral argument, to the court and opposing parties, the position of the plaintiffs on all matters arising during pretrial proceedings (all "omnibus" matters), on behalf of all plaintiffs relative to the master docket of the litigation;
- Formulating and drafting a "master complaint" to be used on behalf of all plaintiffs;
- Developing and proposing to the court schedules for all omnibus issues, discovery disputes and trial settings;
- Drafting discovery on behalf of all plaintiffs;
- Selecting cases for trial;
- Maintaining a current master service list of counsel of record;

2

- Maintaining and distributing to plaintiffs' counsel and to defendants' liaison counsel an up-to-date service list as to plaintiffs;
- Maintaining complete files, with copies of all documents served upon them, and making those files available to plaintiffs;
- Preparing and entering into stipulations with opposing counsel as necessary for the conducting of the litigation;
- Acting as spokesperson for all plaintiffs at pretrial proceedings and in response to any inquiries by defendants and/or by the court; and
- Advising the court and counsel of the course of the MDL proceedings on a consistent and ongoing basis.

Both Miami-Dade and Broward County courts appointed Plaintiffs' Steering Committees, each comprising five attorneys. Counsel was among the five attorneys appointed to the Plaintiffs' Steering Committee for both Miami-Dade and Broward.

Counsel's duties as a member of the PSC included:

- Drafting master discovery to be propounded on defendants on behalf of plaintiffs;
- Facilitating communications between the respective parties in the litigation and the court overseeing the litigation;
- Submitting and arguing motions to the court and filing all briefs in opposition to motions, on behalf of all plaintiffs relative to the master docket of the litigation;
- Maintaining a current master service list of counsel of record; maintaining and distributing to plaintiffs' counsel and to defendants' liaison counsel an up-to-date service list as to plaintiffs;
- Maintaining complete files, with copies of all documents served upon them, and made those files available to plaintiffs; and
- Advising the court of the course of the MDL proceeding.

The majority of the attorneys on the PSC for both Broward and Miami-Dade were also members of the MDL PSC. Because their role in the MDL provided them with a pecuniary interest should the Florida litigation conclude, Counsel fought alone when Defendants sought to end the Florida litigation.

Specifically, Defendants in Florida state court attempted to use the MDL as a shield, seeking to stay all Florida litigation pending resolution of the MDL. Nearly all Defendants filed motions to stay the Florida litigation pending resolution of the MDL. Counsel's role became increasingly necessary as Counsel did not have a conflicted interest with the MDL PSC, and further, Counsel knew Florida was needed as a battleground running parallel to the MDL. Consequently, Counsel alone fought to maintain a dual track whereby pressure would remain on Defendants and

    insurers in both Florida state court as well as the MDL. Counsel vigorously fought to keep the Florida litigation alive. Counsel briefed, argued and prevailed on the Constitutional basis that the Plaintiffs have the Due Process right to litigate in the court of their choosing. Counsel prevailed on the issue, thereby keeping pressure on the Defendants and insurers, and pushing them towards the ultimate settlements.

c. In Counsel's individual cases, Counsel propounded substantial discovery requests to all Defendants. Counsel requested information as to Defendants' roles with respect to the handling, installation, purchase and supply of defective, Chinese drywall, as well as comprehensive insurance documentation and each Defendants' corporate structure and financial history. Counsel sought necessary information for Plaintiffs to properly evaluate any potential recovery. Defendants fought to withhold company financials and information as to corporate structure. Counsel, however, fought and ultimately prevailed on this issue. This Plaintiff victory further pushed Defendants toward settlement.

d. In all, I estimate that Counsel have expended more than 15,000 collective hours working on these matters. On average, I personally have devoted more than 50% of my time to Chinese drywall litigation from the commencement of the first action, entitled *Dowdy v. Engle Homes*, in March, 2009 to the present time. Roberts & Durkee PA employed an associate who spent more than 90% of her time on these cases during the course of her employment with the firm. I worked significantly during this time period with an associate at the firm of Milstein Adelman, LLP, whom I am informed and believe spent 95% of her time on Chinese drywall litigation during the relevant time period. I am further informed and believe that Mark Milstein spent no less than 20% of his time during the relevant time period on matters related to Chinese drywall.

e. On June 7, 2016, settlement administrator Brown-Greer sent an e-mail stating the total amount of the recovery under the settlements of $658,713,629.62. Of this amount, claimants represented by Counsel are shown to have recovered $20,637,048.03, over three percent of the total. See **Exhibit 1** attached hereto.

f. Counsel's Retainer Agreement with their clients in the Chinese drywall litigation typically specifies fees in the amount of 40% of the total recovery. See **Exhibit 2** attached hereto.

4

_June 28, 2016_  
Date

_[signature]_  
David Durkee, Esq.

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 28 DAY OF
June, 2016.

_[signature]_
NOTARY PUBLIC
Print Name: ESTHER COLLAZO
MY COMMISSION EXPIRES:

ESTHER COLLAZO
MY COMMISSION #FF145524
EXPIRES July 27, 2018
(407) 398-0153   FloridaNotaryService.com