**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

**MEMORANDUM IN SUPPORT OF TAYLOR MARTINO, P.C.'S OPPOSITION TO THE FEE COMMITTEE'S FEE ALLOCATION MOTION**

**MAY IT PLEASE THE COURT:**

Taylor Martino, P.C. ("TM"), submits the following Memorandum in support of its Opposition to the Fee Committee's Motion to Determine the Allocation of the Global Fee Award As Between Common Benefit Fees and Individual Counsel Fees Pursuant to PTO 28(F) (the "Fee Allocation Motion"):

**I. INTRODUCTION**

Concurrently with this Opposition, TM and its client, Plaintiff Prichard Housing Authority ("PHA"), have filed a Motion for Payment of Attorneys' Fees and Expenses Pursuant to Stand-Alone Settlement Agreement with Knauf. This Opposition is an alternative position, in the event the Court should find that TM's stand-alone fee agreement with Knauf is unenforceable or invalid. In that event, TM should receive common-benefit fees from the Global Fee Award, or if TM is entitled only to its fee from its private contract with PHA, the recovered value of PHA's claims against Knauf should be added to the BrownGreer PLC listing of claimants' actual recovery amounts, so TM can be paid a reasonable attorneys' fee out of the fee monies allocated in the Plaintiffs' Steering Committee's ("PSC") settlement with Knauf. If the latter, the Fee Committee's ("FC") 59.37% allocation should not be applied to TM, because TM is uniquely and differently situated compared to the other privately retained Plaintiffs' attorneys ("private

attorneys") in this MDL.

As matters now stand, TM will receive *no fee* if its stand-alone fee agreement with Knauf is not enforced, because it has not been designated to receive common-benefit fees or private-attorneys' fees.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

In order to provide this Court with a complete picture of the relevant facts, TM sets out below the facts pertaining to both its Opposition and its stand-alone fee agreement with Knauf.

### A. The PHA State-Court Litigation

In 2006, PHA contracted with The Mitchell Company, a general contractor, to build 36 HUD homes under the Federal Hope VI program in Mobile, Alabama. PHA initially owned all 36 homes in the Bessemer Subdivision, but seven of the homes were sold by PHA, leaving PHA with the 29 homes at issue in this litigation. In late 2008, Knauf KPT Chinese Drywall was discovered in all 29 of the PHA-owned homes. Most, if not all, of the homes were under a "rent-to-own" program aiding low-income families in their quest to gain home ownership. The houses were quickly vacated after PHA discovered the Chinese Drywall. As a result, PHA sustained substantial damages, including lost rents and reduction in property values due to vandalism.

On June 17, 2009, PHA, represented by TM, filed a lawsuit against The Mitchell Company in the Circuit Court of Mobile County, Alabama, bearing Civil Action No. CV-2009-9011118. (Exh. A, the filed complaint). The Mitchell Company in turn filed third-party complaints against Interior Exterior ("INEX"), Creola Ace Hardware (a local supplier) and George's Drywall (the installer). INEX brought Knauf Plasterboard Tiajin

("KPT"), the manufacturer, into the lawsuit with a fifth-party complaint and KPT answered the pleading on November 3, 2010. (Exh. B). Thus, the Circuit Court of Mobile County had personal jurisdiction over KPT.

A separate law firm represented the seven homeowners who had purchased homes in the Bessemer Subdivision. The homeowners filed lawsuits and named PHA as a defendant. The state-court judge consolidated all the cases. Thus, TM was prosecuting the case for PHA and assisting in the defense of PHA.

The consolidated cases were vigorously litigated by the parties in state court, including taking and defending numerous depositions, preparing, filing and defending various motions – including motions for summary judgment – voluminous document production, and an extensive pleading practice. (Exh. C, the Mobile County Circuit Court docket sheet). TM incurred $53,660.21 in litigation costs. (Exh. D).

While the PHA case was being litigated, the PSC began soliciting TM to join this MDL. After several meetings and phone calls with PSC members regarding the alleged benefits of joining the MDL proceedings, PHA joined the MDL litigation on December 9, 2009, based on the solicitations and representations of the PSC. It was included in MDL Omnibus I Complaint as Plaintiff 1117. So, PHA had the same cause of action filed in two separate courts, but no parties objected to the dual path. The seven homeowners consolidated in the PHA's state-court action did not join the MDL. Thus, the state-court action continued to move forward and PHA continued to vigorously litigate the state-court action after it was persuaded to join the MDL proceedings. TM estimates it spent 552.7 hours litigating the case in state court, with 392 of those hours representing common-benefit hours. (Exh. E, Decl. of Richard H. Taylor, Par. 7).

**B. PHA's Stand-Alone Settlement with Knauf**

Steve Usdin with the New Orleans law firm of Barrasso, Usdin, counsel for The Mitchell Company, suggested a mediation with all the state-court parties, including KPT. Mr. Usdin arranged for KPT to attend. The first mediation was held on October 18, 2010, in New Orleans. A verbal agreement on terms was reached at the end of the October 2010 mediation, but a final written agreement could not be reached. Knauf filed a motion with this Court to enforce the verbal agreement and PHA joined Knauf in the motion. The Court, after hearing arguments, ordered all parties to a second mediation, which occurred in New Orleans on June 24, 2011, eight months after the failed first mediation.

The attorneys for PHA had to prepare for and mediate the new issue of the vandalism that damaged the PHA properties during the eight-month disagreement. Counsel for PHA were successful in obtaining an additional $125,000.00 for the vandalism. The case was finally settled in the Fall of 2011 with Knauf agreeing to remediate the 29 houses for a total cost of over $2 million. The Defendants also agreed to pay PHA $597,500 cash, with Knauf paying $95,000 of that sum. Knauf also agreed at mediation to pay TM's reasonable attorneys' fees and expenses. A copy of the formal executed settlement agreement is attached. (Exh. F, Doc. 17581). The stand-alone settlement agreement between PHA and Knauf was reached before the PSC's settlement agreement with Knauf was executed on December 20, 2011. (Doc. 12061-5, p. 4, § 1.13). The stand-alone settlement agreement was also reached outside the Pilot Program. A letter sent to TM on June 10, 2016, via e-mail from BrownGreer PLC, the Court-appointed Settlement Administrator, states: "Pritchard [sic] Housing Authority

4

was not included on your firm's Attorney Fee Report because the claims were settled outside the Pilot Program." (Exh. G).

The attorneys for PHA have a private contingency-fee agreement with PHA for one-third of any recovery, in addition to payment of expenses. A copy of the Contingency Fee Contract is attached. (Exh. H). TM must also pay a one-third referral fee. (Exh. E, Taylor Decl., Par. 10).

The stand-alone settlement agreement between PHA and Knauf states:

> 1.4 Payment of Costs and Attorneys' Fees by Knauf.
> In accordance with Section X of the Remediation Agreement—and in addition to the other monetary payments provided herein—KNAUF agrees to pay the costs and reasonable attorneys' fees in accordance with paragraphs 9 and 10 of the Remediation Agreement. Prichard [PHA] shall not move the Court for payment of attorneys' fees until at least thirty (30) days after remediation pursuant to section 1.3 is complete."

(Exh. F, p.2, § 1.4).

The term "Remediation Agreement" means the Settlement Agreement for the Demonstration Remediation of Homes with KPT Drywall. (Exh. F, p.2, § 1.3). Section X of the Remediation Agreement provides:

> **X. Attorney Fees**
> Subject to, and consistent with, any order entered by the MDL Court and the 11th Judicial Circuit of Florida governing Attorneys' Fees, the parties agree that the PSC, including Harrell Class Counsel, common benefit attorneys, and the counsel for the homeowner are entitled to Attorneys' Fees, the calculation and/or amount of which will be determined by a separate agreement(s) between the PSC, including Harrell class counsel, and the Knauf Entities, which agreement(s) will be submitted to the MDL Court for approval and, in the case of the Harrell Remediation Homes, to the 11th Judicial Circuit of Florida, unless these respective courts, upon application of the PSC, including Harrell Class Counsel, direct otherwise. In the event the parties are unable to agree

5

>       on the calculation and/or amount of Attorney's Fees within six months of the execution of this Demonstration Remediation Agreement, then the dispute will be submitted to the MDL Court for resolution and/or to the 11th Judicial Circuit of Florida.  In either event, (i) no distribution of Attorneys' Fees will take place without the approval of the MDL Court and, as to the Harrell Class Action, the 11th Judicial Circuit Court of Florida; (ii) and the rulings of those courts regarding Attorneys' Fees shall be non-appealable.

(Exh. I, p.11).

Remediation of the PHA's homes was finalized on July 25, 2012, so TM sent a letter to Knauf's counsel seeking payment of the attorneys' fees and expenses.  (Exh. J & K).[1]  Counsel for Knauf responded with a letter stating that "it is premature at this time to prioritize for attorney fee purposes any one set of claims over any of the additional claims." (Exh. L).

On March 31, 2014, PHA filed a Motion for Payment of Attorney Fees and Expenses based on the stand-alone settlement agreement, which allows PHA to seek payment of fees 30 days after remediation is complete.  (Doc. 17581-2).  On April 8, 2014, the Court denied the motion as premature, but granted leave to re-file the motion at a later time, if appropriate.  (Doc. 17605).

Knauf and the PSC had not agreed on a reasonable attorneys' fee when TM filed its previous motion seeking payment of fees and expenses, and they still have not agreed.  No agreement on a reasonable attorneys' fee has been communicated to TM. (Exh. E, Taylor Decl., Par. 12).  On June 14, 2016, TM sent a letter via email to Knauf's counsel and the PSC's Arnold Levin, advising that if Knauf did not agree to pay as a

---

[1] Exhibit K is a letter from Kasie M. Braswell of the Braswell Murphy, LLC, law firm.  Ms. Braswell was associated with TM during the litigation and settlement of PHA's claims against Knauf, and has an interest in the attorneys'-fee award.

reasonable attorneys' fee one-third of the total value conferred on PHA by the settlement, before the close of business on June 20, 2016, TM would file an appropriate motion with this Court. (Exh. M). Neither Knauf nor the PSC responded. (Exh. E, Taylor Decl., Par. 12). The total value conferred upon PHA consists of the amount spent on the remediation of the PHA homes ($2,032,653.26) plus the cash amount of the settlement ($597,500), for a total $2,630,153.26. (Exh. E, Taylor Decl., Par. 12). One-third of this sum is $876,717.75. (*Id.,* Par. 12).

The PSC's settlement with Knauf, in its attorneys'-fee provisions, states:

> The Court's award of attorneys' fees and costs shall settle and finally resolve any claim for attorneys' fees or costs that can be claimed by any counsel representing or working for the benefit of either a Participating Class Member or the Class. The award for attorneys" fees and costs shall include, but not be limited to: .... (vi) any other previous settlement between Knauf and any other party relating to claims arising from KPT Chinese Drywall *unless attorneys' fees and reasonable costs have already been separately addressed under such settlement.*

(Doc. 12061-5, p. 62, § 14.3)(emphasis added). TM's fees and costs have already been separately addressed under the stand-alone settlement agreement with Knauf.

### III. TM's OPPOSITION TO THE FEE ALLOCATION MOTION

If the Court should determine that TM's stand-alone fee agreement with Knauf is unenforceable or invalid, there is only one source from which TM can be compensated for its time and efforts on behalf of PHA: the MDL's Global Fee Award. If the Court makes such a determination, TM's primary opposition to the Fee Allocation Motion is that TM has been *excluded* from the group of firms receiving common-benefit fees for

common-benefit time expended, *and* excluded from the group of firms receiving private-attorney fees. Thus, as matters now stand, TM will be paid nothing for its successful representation of PHA, if the Court finds the stand-alone fee agreement unenforceable or invalid. That result would be fundamentally inequitable.

TM was assured early on that it would receive a common-benefit fee. The PSC's first substantive involvement with the PHA case was when Leonard Davis and Arnold Levin appeared at the first (failed) mediation to discuss fees. TM's attorneys expressed their attorney-fee concerns to Mr. Levin at the mediation. TM explained that the PHA case should not be treated like all other cases because of the time and expense TM had invested in the state-court proceedings. Mr. Levin advised that the PSC would allow the time spent by PHA attorneys litigating the state-court action to be treated as "common-benefit time" in the MDL. That is, the PHA attorneys would receive a portion of the common-benefit fee at the conclusion of the MDL. (Exh. N, letter to Mr. Levin confirming this). Based on these representations,[2] TM and its staff spent countless hours reconstructing the common-benefit time expended in the state-court litigation. TM determined it had invested 552.7 hours, but only claimed 392 hours as common-benefit time in order to be indisputably fair and accurate in that regard.

---

[2] Mr. Levin's representations, made during the first, failed mediation, are irrelevant to PHA's stand-alone settlement agreement with Knauf, which was reached after the second mediation, because the stand-alone agreement contains a merger clause. (Exh. F, p. 6, § 12). Under Alabama law, which governs the stand-alone agreement (*Id.,* p. 5, § 7), merger clauses create a presumption that the writing represents an integrated, that is, the final and complete, agreement of the parties. *Ex parte Palm Harbor Homes, Inc.,* 798 So.2d 656, 660 (Ala.2001). Mr. Levin's representations are, however, relevant to whether TM's attorneys' fee should be included in the fee provisions of the PSC's settlement with Knauf, as common-benefit fees or as private-attorneys' fees, and to whether TM is due a fee under quantum meruit, if the stand-alone settlement agreement or its fee provision is deemed unenforceable or invalid.

The PSC also instructed TM to deposit the depositions taken in the state-court action into the MDL deposition depository, to support TM's common-benefit fee, which TM did. (Exh. O, is an Affidavit previously submitted in this litigation by TM attorney Richard H. Taylor, which details TM's common-benefit contributions).

The PHA attorneys met via teleconference with the Fee Committee ("FC") long ago. TM reminded Mr. Levin and the other members of the FC that TM performed 99.9% of the work and that Mr. Levin had represented that the time spent litigating the state-court action would be considered common-benefit time. TM learned that the members of the FC contacted other common-benefit law firms and informed those law firms generally how much money they would be entitled to from the common-benefit fund. TM was never contacted by the FC.

TM called and sent emails to Mr. Levin and other members of the FC, but the letters and phone calls were to no avail. TM was told Mr. Levin and the other FC members were too busy, the emails were not replied to, and the telephone calls were not returned. TM submits one of these email communications evidencing its attempts to determine what, if any, common-benefit funds would be allocated to TM for the PHA litigation. (Exh. P). Significantly, TM was never told that it would receive no common-benefit fees because it had reached a stand-alone fee agreement with Knauf. Instead, TM was stonewalled. This, coupled with the failure of Knauf and the PSC to respond to TM's letter of June 14, 2016, suggests that TM has simply been shut out, for whatever reason.

As for private-attorneys' fees, if TM is not entitled to common-benefit fees, the recovered value of PHA's claims against Knauf should be added to the BrownGreer

listing of claimants' actual recovery amounts, so TM can be paid a reasonable attorneys' fee out of the fee monies allocated in the PSC's settlement with Knauf. If the PHA's claims against Knauf are not included in the BrownGreer listing, TM will not receive a private-attorneys' fee. If PHA's claims are added to the listing, TM opposes the 59.37% common-benefit apportionment in the Fee Allocation Motion for the reasons set out below.

PHA stands in a unique position when compared to most, if not all, of the other plaintiffs in the MDL class-action settlement, because PHA's counsel spent considerable time and expense litigating this case independent of the MDL or the PSC. PHA and TM thought they would benefit from joining the MDL, but the only thing the PSC did was attend a failed mediation for a few hours, and now it seeks an unearned fee.

PHA does not dispute the quantity and quality of work that common-benefit/class counsel have performed, that their work benefited most, if not all, of the private attorneys, and that they are entitled to a reasonable fee. Nonetheless, the FC's sweeping statements in its memorandum advocating 59.37% of *all* fees do not apply to PHA. For example, the FC recites numerous litigation activities that common-benefit/class counsel engaged in. (Doc. 20290-4, FC's Memorandum, pp. 58-59). The FC then states:

> The FC respectfully submits that the overwhelming majority of these necessary services were carried out and performed on behalf of *all* plaintiffs by common benefit/class counsel in this case. (*Id.,* p. 60)(emphasis added).

This representation is simply not true with regard to the PHA case. These litigation activities were performed by TM. As a practical matter, the only service

performed by common-benefit/class counsel specific to the PHA case was when PSC members attended a mediation, that eventually failed, for a few hours in New Orleans, Louisiana, in October 2010. One matter that warrants particular mention is the FC's apparent insistence that the PSC brought Knauf to the mediation. This may be true for the other private attorneys in the MDL, but it is inaccurate with respect to the PHA case. Knauf was made a fifth-party defendant in the PHA state-court case, such that the state court acquired personal jurisdiction over Knauf, before the PHA stand-alone settlement with Knauf was reached.

In the final analysis, TM should be awarded a quantum meruit fee from the fees allocated in the PSC's settlement with Knauf. The *Peebles* factors addressed above govern the determination of a fee under the doctrine of quantum meruit. Quantum meruit only applies where no express contract exists, and is a request for equitable relief based on the principle "that if one knowingly accepts services rendered by another, and the benefit and result thereof, the law implies a promise on the part of the one who so accepts with knowledge, to pay the reasonable value of such services rendered." *Carroll v. LJC Defense Contracting, Inc.,* 24 So.3d 438, 458-59 (Ala.Civ.App.2009)(quotation marks omitted. Louisiana law, which governs the PSC's settlement with Knauf (Doc. 12061-5, p. 72, §18.10), is identical. *Sam Staub Enterprises, Inc. v. Chapital,* 88 So.3d 690, 696 (La.App.4th Cir.2012). The PSC would be unjustly enriched if it were allowed to absorb the services TM rendered for PHA, and TM's corresponding fee, without reasonably compensating TM.

WHEREFORE, TM respectfully moves the Court to set a hearing date and enter an Order concerning the payment of attorneys' fees and expenses in accordance with

the relief requested herein, as alternative relief in the event the Court does not grant PHA's and TM"s Motion for Payment of Attorneys' Fees and Expenses Pursuant to Stand-Alone Settlement Agreement with Knauf.

        Respectfully submitted,

        Attorneys for Plaintiff, Prichard Housing Authority

    By:    /s/ Richard H. Taylor
            RICHARD H. TAYLOR
            TAYLOR MARTINO, P.C.
            51 St. Joseph Street
            Mobile, Alabama 36602
            T: (251) 433-3131
            F: (251) 433-4207
            richardtaylor@taylormartino.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum in Support of Taylor Martino, P.C.'s Opposition to the Fee Committee's Fee Allocation Motion has been served on Plaintiffs' Liaison Counsel, Russ M. Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to File & ServeXpress in accordance with Pre-Trial Order No. 6 and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this the 28th day of June, 2016.

    By:    /s/ Richard H. Taylor
            RICHARD H. TAYLOR