IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION

**SECOND AFFIDAVIT OF TAYLOR MARTINO, P.C. IN CONNECTION WITH REQUEST FOR ALLOCATION OF COMMON BENEFIT FEE AND COST AWARD**

STATE OF ALABAMA

COUNTY OF MOBILE

BEFORE ME, the undersigned authority, on this 11th day of April, 2014;

PERSONALLY CAME AND APPEARED:

RICHARD H. TAYLOR

who, after being first duly sworn, under penalty of perjury, did depose and declare that the following are true correct:

1. I am a partner in the law firm of Taylor Martino, P.C. ("TM").

2. The address of the law firm identified in number 1 above is 51 Saint Joseph Street, Mobile, Alabama (36602); Phone: (251) 433-3131.

3. I have complied with Pre Trial Order No. 9 or 9A in all material aspects and the law firm identified herein has submitted true and correct time and expense submissions pursuant to the Court's Pre Trial Orders. It should be noted that on April 9, 2014, the Court entered an Order allowing TM to submit time and expenses out of time. This Affidavit is submitted on behalf of all the members of the law firm of which I am a partner.

4. The Court may rely on the information submitted by my firm to Philip Garrett, the Court appointed Certified Public Accountant which is contained in his Case Cost Management System in this litigation.

5. The extent to which the law firm identified in paragraph no. 1 above made a substantial common benefit contribution to the outcome of the litigation is described as follows:

**EXHIBIT O**

a. The consistency quantum, duration, and intensity of the firm's commitment to the litigation is as follows:

The work performed by TM is basically in two groups. The first group of work was performed in the Prichard Housing Authority ("PHA") case that was filed in Mobile County, Alabama State Court on behalf of 29 HUD homes on June 19, 2009. The second group of work was performed in the MDL at the request of the PSC and Co-Lead Counsel. We will address both separately.

The state court litigation on behalf of the 29 PHA homes included defendants that were common to the MDL. These defendants included The Mitchell Company (a contractor), Knauf USA and Interior Exterior. The quantum, duration and intensity of the firm's commitment to this litigation is detailed in PHA's Motion for Payment of Attorney's Fees and Expenses. Instead of reciting these details, TM attaches as Exhibit A to this affidavit the motion and exhibits. Note the state court docket sheet details the quantity of TM's litigation in this case (Exhibit to Exhibit A).

TM entered into settlement negotiations with Knauf Plasterboard Tiajin ("KPT") to settle approximately 29 commercial properties. The mediated settlement represented, to TM's knowledge, one of the first settlements with KPT before the class action was certified. The mediated settlement was "groundbreaking" because it was one of the first settlements under the remediation program. Also, the remediation program was designed for residential properties, not commercial property and the settlement revealed to both the PSC and KPT the difficulties and problems of settling a commercial property under the Residential Remediation Program. For example, lost profits were not properly addressed in the remediation program, but TM negotiated a substantial lost profit recovery for PHA.

The PHA litigation was eventually settled with KPT agreeing to remediate the 29 homes at the cost of $2,032,653.26. Additionally, KPT and the other defendants paid $597,500 in cash. The expenses incurred by TM in the PHA state court litigation were $53,660.21. TM did not take a fee from the cash settlement, nor has TM been paid a fee for the remediation. The expenses have not been paid by KPT.

TM submitted 392 hours representing only a portion of the time TM spent in the PHA state court litigation. TM incurred substantially more than 392 hours, but included only time that TM believes was beneficial to the MDL. That is, TM only submitted PHA time for litigation specific to the three common defendants. In fact, the depositions taken of these defendants and others were deposited in the MDL deposition bank. TM is seeking full compensation for its work in the PHA case and for its contribution to the MDL litigation.

The other work performed by TM was common benefit work performed at the request of Co-Lead Counsel and the PSC. TM acted as "Alabama Liaison

Counsel" for the PSC. Attorneys at TM met with Dawn Barrios and Jim Reeves in 2009 at TM's Mobile office at the request of the PSC. TM was asked to "recruit" Alabama lawyers to file their case in the MDL as opposed to filing CDW cases in Alabama State Court. TM agreed to do this "recruiting" and it was beneficial to the MDL litigation. In fact, TM searched and identified 583 CDW cases filed in Alabama State Courts and supplied this information to the PSC. We understand this request came from Judge Fallon. Additionally, TM made several calls and other communications to Alabama lawyers at the request of the PSC.

The PSC and Co-Lead Counsel in the MDL gave TM assignments which included the research of Alabama law regarding the economic loss rule, emotional damages, liability of third party suppliers and manufacturer's liability. TM also issued subpoenas throughout the state of Alabama at the request of the PSC. Upon receipt of the documents, the documents were reviewed, organized and delivered to the PSC. TM prepared for, and took the depositions of parties, common to the MDL litigation, in its state court action. These depositions were deposited in the MDL deposition bank. TM submitted 140 hours for this common benefit work.

b. The level of partner participation by the firm is as follows:

The level of partner participation by the firm included work by partner, Richard H. Taylor of TM. It also included substantial work by Edward P. Rowan and Kasie M. Braswell who were associates with the firm. However, Richard H. Taylor is only one of two partners in this law firm and he spent a substantial amount of time in this litigation.

c. The firm's membership and leadership on the Plaintiffs'
Steering Committee ("PSC") is as follows:

No members or associates of TM were formal members, or held formal leadership positions on the Plaintiffs Steering Committee ("PSC") to TM's knowledge.

d. The firm's participation and leadership in discovery
(motions, depositions) is as follows:

TM prepared for and took the 30(b)(6) deposition of MDL defendant, The Mitchell Company, in addition to the preparation for deposition of Interior Exterior. TM took additional depositions in the PHA litigation, all of which should be on deposit with the MDL.

e. The firm's participation and leadership in law and briefing
matters is as follows:

TM was "Alabama Liaison Counsel" for Alabama law issues, recruitment of Alabama lawyers to the MDL and the "go to" law firm for Alabama CDW work. See information above.

3

f. The firm's participation and leadership in science and experts matters is as follows:

TM developed experts in the PHA litigation that were shared or available to the PSC.

g. The firm's participation and leadership in document review is as follows:

TM reviewed documents subpoenaed at the request of the PSC in addition to the review of numerous documents produced in the state court action, some of which were deposited as deposition exhibits. TM gathered docket sheet information on 583 CDW cases filed in Alabama State Court as requested by the PSC and Judge Fallon.

h. The firm's activities in support or conduct trials of individual Chinese Drywall claimants, including bellwether trials and non-MDL trials which impacted proceedings on a common benefit level (identify the claimant, docket number and venue of each trial and outcome) is as follows:

TM's activities in the PHA case and for the PSC are described above.

i. The firm's participation and leadership in settlement negotiations, drafting of settlement documentation and closing papers, and administration of settlement agreements (excluding individual representations) is as follows:

See above for settlement and drafting of settlement documents in the PHA litigation.

j. The firm's activities of common benefit work in the following non-MDL jurisdictions:

See above information relating to PHA litigation and work performed at the request of the PSC.

k. The following members of the firm held leadership positions on the regular committees engaged in common benefit work (state position and committee):

"Alabama Liaison Counsel" as described above.

l. The firm's participation in ongoing activities, such as the Fee Committee, Settlement Claims Administration, Court

Appointed Committees (e.g. Settlement Allocation Committees, Claims Administration Committee, Fee Committee, etc.), that is intended to provide common benefit included the following:

TM did not participate formally on any committees other than performing work at the request of PSC and Co-Lead Counsel as stated above.

m. Counsel in the firm were or were not involved in the Chinese Drywall litigation prior to the JPMDL, and the time and expense incurred during such time period outlined below was for common benefit:

TM's first involvement in the Chinese Drywall litigation was the filing of a complaint in Alabama State Court on behalf of the PHA on June 16, 2009. All activities in the PHA litigation are described above.

TM incurred $53,660.21 in the PHA litigation. PHA reimbursed TM for these expenses out of its cash settlement, but KPT should reimburse PHA for this expense since KPT agreed to do so in the settlement. TM incurred approximately $70,000 in expenses for the representation of individual claimants in the MDL. However, TM incurred no "common benefit expenses" as TM understands the definition of "common benefit expenses."

n. The firm made the following significant contributions to the funding of the litigation (include all assessments made to the MDL) and the amount of any sums reimbursed and date(s) of reimbursement:

TM incurred $53,660.21 in the PHA litigation. PHA reimbursed TM for these expenses out of its cash settlement, but KPT should reimburse PHA for this expense as the settlement agreement with KPT states. TM incurred approximately $70,000 in expenses for the representation of individual claimants in the MDL. However, TM incurred no "common benefit expenses" as TM understands the definition of "common benefit expenses."

o. The members of the firm who were PSC members or committee members whose commitment to the litigation did not ebb included:

No members of TM were formal PSC members or formal committee members. However, TM performed work at the request of PSC members and Co-Lead Counsel and acted as "Alabama Liaison Counsel."

p. A complete and accurate listing of all sources and amounts of prior payments received from a Chinese Drywall

claimant or other sources (identify amounts paid for fees
and amounts paid for costs) to the firm:

As stated above, TM settled the PHA litigation with KPT agreeing to remediate
the 29 PHA homes.   Based upon information provided to TM, the cost of
remediation was $2,032,653.26. See Exhibit "G" to PHA's Motion for Attorney
Fees and Expenses. PHA also received $597,500 as cash payment from the
collective defendants. The cash payment was given to PHA and TM did not take
a fee. However, TM deducted from PHA's cash settlement, the expenses of
$53,660.21. Again, KPT should reimburse PHA for this expense that remains
outstanding from KPT. In short, TM has not received a dime of compensation to
date in this litigation.

q.   The other relevant factors which applicant requests be
considered by the Court:

Nothing further.

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 11ᵗʰ DAY OF
APRIL , 2014
NOTARY PUBLIC
Print Name: Sarah Millett
My commission expires: 7/25/17
[APPLY SEAL]

6