**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

**MEMORANDUM IN SUPPORT OF PRICHARD HOUSING AUTHORITY'S AND TAYLOR MARTINO, P.C.'S MOTION FOR PAYMENT OF ATTORNEYS' FEES AND EXPENSES PURSUANT TO STAND-ALONE SETTLEMENT  AGREEMENT WITH KNAUF**

**MAY IT PLEASE THE COURT:**

Prichard Housing Authority ("PHA") and Taylor Martino, P.C. ("TM"), submit the following Memorandum in Support of their Motion for Payment of Attorney's Fees and Expenses Pursuant to Stand-Alone Settlement Agreement with Knauf:

**I. INTRODUCTION**

As will be seen, PHA entered into a stand-alone settlement agreement with various Knauf entities ("Knauf") in 2011, before the Plaintiffs' Steering Committee's ("PSC") settlement with Knauf (Doc.12061-5) was executed.  As part of this stand-alone settlement, Knauf agreed to pay TM's costs and reasonable attorneys' fees. Accordingly, TM is due to be paid its costs and reasonable attorneys' fees by Knauf pursuant to the stand-alone settlement with Knauf, outside the attorney's-fee provisions of the PSC's settlement with Knauf and outside the ambit of the Fee Committee's Fee Allocation Motion.  Under the terms of the stand-alone settlement agreement, because there has been no agreement on the calculation or amount of a reasonable attorneys' fee, the matter is to be submitted to this Court for a non-appealable determination of a reasonable fee.

Concurrently with this Motion, TM has separately filed an Opposition to the Fee

Committee's Fee Allocation Motion. For the Court's information in considering this Motion, the Opposition is an alternative position, in the event the Court should find that TM's stand-alone fee agreement with Knauf is unenforceable or invalid. In that event, the Opposition explains why TM should receive common-benefit fees from the Global Fee Award, or a reasonable fee from the private-attorneys'-fee monies allocated in the PSC's settlement with Knauf, without the Fee Committee's ("FC") 59.37% allocation. As matters now stand, TM will receive *no fee* if its stand-alone fee agreement with Knauf is not enforced, because it has not been designated to receive common-benefit fees or private-attorneys' fees.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The PHA State-Court Litigation

In 2006, PHA contracted with The Mitchell Company, a general contractor, to build 36 HUD homes under the Federal Hope VI program in Mobile, Alabama. PHA initially owned all 36 homes in the Bessemer Subdivision, but seven of the homes were sold by PHA, leaving PHA with the 29 homes at issue in this litigation. In late 2008, Knauf KPT Chinese Drywall was discovered in all 29 of the PHA-owned homes. Most, if not all, of the homes were under a "rent-to-own" program aiding low-income families in their quest to gain home ownership. The houses were quickly vacated after PHA discovered the Chinese Drywall. As a result, PHA sustained substantial damages, including lost rents and reduction in property values due to vandalism.

On June 17, 2009, PHA, represented by TM, filed a lawsuit against The Mitchell Company in the Circuit Court of Mobile County, Alabama, bearing Civil Action No. CV-2009-9011118. (Exh. A, the filed complaint). The Mitchell Company in turn filed third-

party complaints against Interior Exterior ("INEX"), Creola Ace Hardware (a local supplier) and George's Drywall (the installer). INEX brought Knauf Plasterboard Tiajin ("KPT"), the manufacturer, into the lawsuit with a fifth-party complaint and KPT answered the pleading on November 3, 2010. (Exh. B). Thus, the Circuit Court of Mobile County had personal jurisdiction over KPT.

A separate law firm represented the seven homeowners who had purchased homes in the Bessemer Subdivision. The homeowners filed lawsuits and named PHA as a defendant. The state-court judge consolidated all the cases. Thus, TM was prosecuting the case for PHA and assisting in the defense of PHA.

The consolidated cases were vigorously litigated by the parties in state court, including taking and defending numerous depositions, preparing, filing and defending various motions – including motions for summary judgment – voluminous document production, and an extensive pleading practice. (Exh. C, the Mobile County Circuit Court docket sheet). TM incurred $53,660.21 in litigation costs. (Exh. D).

While the PHA case was being litigated, the PSC began soliciting TM to join this MDL. After several meetings and phone calls with PSC members regarding the alleged benefits of joining the MDL proceedings, PHA joined the MDL litigation on December 9, 2009, based on the solicitations and representations of the PSC. It was included in MDL Omnibus I Complaint as Plaintiff 1117. So, PHA had the same cause of action filed in two separate courts, but no parties objected to the dual path. The seven homeowners consolidated in the PHA's state-court action did not join the MDL. Thus, the state-court action continued to move forward and PHA continued to vigorously litigate the state-court action after it was persuaded to join the MDL proceedings. TM estimates it spent

552.7 hours litigating the case in state court, with 392 of those hours representing common-benefit hours. (Exh. E, Decl. of Richard H. Taylor, Par. 7).

### B.     PHA's Stand-Alone Settlement with Knauf

Steve Usdin with the New Orleans law firm of Barrasso, Usdin, counsel for The Mitchell Company, suggested a mediation with all the state-court parties, including KPT. Mr. Usdin arranged for KPT to attend. The first mediation was held on October 18, 2010, in New Orleans. A verbal agreement on terms was reached at the end of the October 2010 mediation, but a final written agreement could not be reached. Knauf filed a motion with this Court to enforce the verbal agreement and PHA joined Knauf in the motion. The Court, after hearing arguments, ordered all parties to a second mediation, which occurred in New Orleans on June 24, 2011, eight months after the failed first mediation.

The attorneys for PHA had to prepare for and mediate the new issue of the vandalism that damaged the PHA properties during the eight-month disagreement. Counsel for PHA were successful in obtaining an additional $125,000.00 for the vandalism. The case was finally settled in the Fall of 2011 with Knauf agreeing to remediate the 29 houses for a total cost of over $2 million. The Defendants also agreed to pay PHA $597,500 cash, with Knauf paying $95,000 of that sum. Knauf also agreed at mediation to pay TM's reasonable attorneys' fees and expenses. A copy of the formal executed settlement agreement is attached. (Exh. F, Doc. 17581). The stand-alone settlement agreement between PHA and Knauf was reached before the PSC's settlement agreement with Knauf was executed on December 20, 2011. (Doc. 12061-5, p. 4, § 1.13). The stand-alone settlement agreement was also reached outside the

Pilot Program. A letter sent to TM on June 10, 2016, via e-mail from BrownGreer PLC, the Court-appointed Settlement Administrator, states: "Pritchard [sic] Housing Authority was not included on your firm's Attorney Fee Report because the claims were settled outside the Pilot Program." (Exh. G).

The attorneys for PHA have a private contingency-fee agreement with PHA for one-third of any recovery, in addition to payment of expenses. A copy of the Contingency Fee Contract is attached. (Exh. H). TM must also pay a one-third referral fee. (Exh. E, Taylor Decl., Par. 10).

The stand-alone settlement agreement between PHA and Knauf states:

> 1.4 Payment of Costs and Attorneys' Fees by Knauf.
> In accordance with Section X of the Remediation Agreement—and in addition to the other monetary payments provided herein—KNAUF agrees to pay the costs and reasonable attorneys' fees in accordance with paragraphs 9 and 10 of the Remediation Agreement. Prichard [PHA] shall not move the Court for payment of attorneys' fees until at least thirty (30) days after remediation pursuant to section 1.3 is complete."

(Exh. F, p.2, § 1.4).

The term "Remediation Agreement" means the Settlement Agreement for the Demonstration Remediation of Homes with KPT Drywall. (Exh. F, p.2, § 1.3). Section X of the Remediation Agreement provides:

> **X. Attorney Fees**
> Subject to, and consistent with, any order entered by the MDL Court and the 11th Judicial Circuit of Florida governing Attorneys' Fees, the parties agree that the PSC, including Harrell Class Counsel, common benefit attorneys, and the counsel for the homeowner are entitled to Attorneys' Fees, the calculation and/or amount of which will be determined by a separate agreement(s) between the PSC, including Harrell class counsel, and the Knauf Entities, which agreement(s) will be submitted to the MDL Court for approval and, in the

5

> case of the Harrell Remediation Homes, to the 11th Judicial Circuit of Florida, unless these respective courts, upon application of the PSC, including Harrell Class Counsel, direct otherwise. In the event the parties are unable to agree on the calculation and/or amount of Attorney's Fees within six months of the execution of this Demonstration Remediation Agreement, then the dispute will be submitted to the MDL Court for resolution and/or to the 11th Judicial Circuit of Florida. In either event, (i) no distribution of Attorneys' Fees will take place without the approval of the MDL Court and, as to the Harrell Class Action, the 11th Judicial Circuit Court of Florida; (ii) and the rulings of those courts regarding Attorneys' Fees shall be non-appealable.

(Exh. I, p.11).

Remediation of the PHA's homes was finalized on July 25, 2012, so TM sent a letter to Knauf's counsel seeking payment of the attorneys' fees and expenses. (Exh. J & K).[1] Counsel for Knauf responded with a letter stating that "it is premature at this time to prioritize for attorney fee purposes any one set of claims over any of the additional claims." (Exh. L).

On March 31, 2014, PHA filed a Motion for Payment of Attorney Fees and Expenses based on the stand-alone settlement agreement, which allows PHA to seek payment of fees 30 days after remediation is complete. (Doc. 17581-2). On April 8, 2014, the Court denied the motion as premature, but granted leave to re-file the motion at a later time, if appropriate. (Doc. 17605).

Knauf and the PSC had not agreed on a reasonable attorneys' fee when TM filed its previous motion seeking payment of fees and expenses, and they still have not agreed. No agreement on a reasonable attorneys' fee has been communicated to TM.

---

[1] Exhibit K is a letter from Kasie M. Braswell of the Braswell Murphy, LLC, law firm. Ms. Braswell was associated with TM during the litigation and settlement of PHA's claims against Knauf, and has an interest in the attorneys'-fee award.

6

(Exh. E, Taylor Decl., Par. 12).  On June 14, 2016, TM sent a letter via email to Knauf's counsel and the PSC's Arnold Levin, advising that if Knauf did not agree to pay as a reasonable attorneys' fee one-third of the total value conferred on PHA by the settlement, before the close of business on June 20, 2016, TM would file an appropriate motion with this Court.  (Exh. M).  Neither Knauf nor the PSC responded.  (Exh. E, Taylor Decl., Par. 12).  The total value conferred upon PHA consists of the amount spent on the remediation of the PHA homes ($2,032,653.26) plus the cash amount of the settlement ($597,500), for a total $2,630,153.26.  (Exh. E, Taylor Decl., Par. 12).  One-third of this sum is $876,717.75.  (*Id.,* Par. 12).

The PSC's settlement with Knauf, in its attorneys'-fee provisions, states:

> The Court's award of attorneys' fees and costs shall settle and finally resolve any claim for attorneys' fees or costs that can be claimed by any counsel representing or working for the benefit of either a Participating Class Member or the Class.  The award for attorneys'' fees and costs shall include, but not be limited to: .... (vi) any other previous settlement between Knauf and any other party relating to claims arising from KPT Chinese Drywall <u>unless attorneys' fees and reasonable costs have already been separately addressed under such settlement.</u>

(Doc. 12061-5, p. 62, § 14.3)(emphasis added).  TM's fees and costs have already been separately addressed under the stand-alone settlement agreement with Knauf.

### III. PHA'S STAND-ALONE SETTLEMENT AGREEMENT WITH KNAUF, AND TM'S STAND-ALONE FEE AGREEMENT WITH KNAUF, ARE VALID AND ENFORCEABLE, AND TM IS DUE TO BE AWARDED ITS REASONABLE ATTORNEYS' FEES AND EXPENSES TO BE PAID BY KNAUF.

PHA's stand-alone settlement agreement with Knauf preceded the PSC's settlement with Knauf.  TM's stand-alone settlement was finally executed in counterpart

by all parties in the Fall of 2011.  (Exh. F, pp. 9-14).  Although the date of execution by the various Knauf entities does not appear on the signature pages, all Knauf entities had signed in August of 2011.   (Exh. E, Taylor Decl., Par. 9).  The PSC's settlement with Knauf was executed on December 20, 2011.  (Doc. 12061-5, p. 4, §1.13).  So, PHA's stand-alone settlement with Knauf is outside the scope of the PSC's settlement with Knauf.

Moreover, the attorneys' fee Knauf agreed to pay TM in the stand-alone settlement agreement is definitionally excluded from the PSC's settlement with Knauf.  The attorney's fees encompassed by the PSC's settlement exclude "any other previous settlement between Knauf and any other party" relating to Chinese Drywall claims where "attorneys' fees and reasonable costs have already been separately addressed under such settlement."  (Doc. 12061-5, p. 62, § 14.3).

Furthermore, PHA's stand-alone settlement with Knauf was reached outside the Pilot Program.  The email from BrownGreer PLC, to TM, confirms that the PHA-Knauf stand-alone settlement was outside the Pilot Program.  It states, "Pritchard [sic] Housing Authority was not included on your firm's Attorney Fee Report because the claims were settled outside the Pilot Program."  (Exh. G).  So, the BrownGreer PLC email further demonstrates that the attorneys' fees in the PHA's stand-alone settlement with Knauf are outside the ambit of the attorneys' fees covered by the PSC's settlement with Knauf.

The attorneys'-fee provision of the stand-alone settlement agreement provides:

> In accordance with Section X of the Remediation Agreement—and in addition to the other monetary payments provided herein—KNAUF agrees to pay the costs and reasonable attorneys' fees in accordance with paragraphs 9 and 10 of the Remediation Agreement.

8

(Exh. F, p. 2, § 1.4).

The first clause of this sentence refers to Section X of the Remediation Agreement, while the final clause of the sentence refers to Paragraphs 9 and 10 of the Remediation Agreement. The Remediation Agreement, however, while containing a Section X titled "Attorney Fees," does not contain any paragraphs with the Arabic numbers 9 and 10. (Exh. I). So, there is an inconsistency in this sentence, which requires Knauf to pay attorneys' fees "in accordance with" *both* Section X *and* paragraphs 9 and 10 of the Remediation Agreement. The inconsistency between these two clauses must be resolved under Alabama law, because the stand-alone settlement agreement provides, "This Settlement Agreement shall be governed and interpreted according to the laws of the State of Alabama, regardless of its choice-of-law principles." (Exh. F, p. 5, § 7).

Under Alabama law, inconsistent terms in a contract are to be reconciled, if they are susceptible of reconciliation. *Advance Tank and Const. Co., Inc. v. Gulf Coast Asphalt Co., L.L.C.*, 968 So.2d 520, 526 (Ala.2006). If, however, there is inconsistency between two clauses of a contract which cannot be reconciled, the inconsistency must be resolved in favor of the prior clause, unless an intention to thereafter qualify is plainly expressed. *Homes of Legend, Inc. v. McCollough,* 776 So.2d 741, 746 (Ala.2000); *Voyager Life Ins. Co., Inc. v. Whitson,* 703 So.2d 944, 949 (Ala.1997). So, the first clause of the sentence at issue applies, and the determination of a reasonable attorneys' fee is governed by Section X of the Remediation Agreement. Applying Section X to PHA's stand-alone settlement agreement, if the PSC and Knauf cannot agree on the calculation and/or amount of an attorneys' fee, the matter will be submitted

9

to the MDL Court – this Court – for resolution.   (Exh. I, p. 11, Section X).

In Alabama, a reasonable attorneys' fee is determined by applying the factors set out in *Peebles v. Miley*, 439 So.2d 137 (Ala.1983).[2]  TM will now address the *Peebles* factors.

(1) <u>The nature and value of the subject matter of the employment.</u>  PHA owned 29 homes that were on a rent-to-own program for low-income families and PHA discovered all of the homes were contaminated with KPT drywall.  The nature and value of the subject matter of the employment was therefore of the utmost importance to PHA.  TM had to coordinate with PHA and HUD concerning the problem.  TM and executives with the PHA had to meet with the homeowners and inform them they had to vacate the homes, which resulted in zero income to PHA.  When the PHA homes were vacated due to the presence of KPT drywall, the housing complex began to deteriorate and became subject to vandalism.  TM has undertaken substantial responsibility on behalf of PHA and TM's representation of PHA was of great value to PHA.

(2) <u>The learning, skill, and labor requisite to the employment's proper discharge.</u>  After TM was retained, several members of the firm had to educate themselves on Chinese drywall at the outset.   TM then had to review numerous construction documents to determine the rights and responsibilities of the parties during the construction process.   TM has been involved in several construction-litigation cases over the years and recognizes that it is time consuming and expensive to pursue construction litigation.  TM has also been involved in many product-defect cases.  The

---

[2] The *Peebles* factors are virtually identical to those applied in the Fifth Circuit for determining a reasonable attorneys' fee, under *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir.1974).

PHA litigation required the skills of TM's lawyers in both areas. TM employed investigators, inspectors, paralegals, associates, and independent contractors to identify and confirm the presence of KPT drywall in each home. TM then filed a lawsuit against The Mitchell Company and strenuously litigated with numerous parties for approximately five years before the case was finally settled through the efforts of TM.

(3) <u>The time consumed.</u> TM had two partners and three to four associates when it litigated the PHA case. One of its partners, Richard Taylor, was lead counsel. Kasie Braswell was an associate at the time. Lead counsel Mr. Taylor and Ms. Braswell spent hundreds of hours on this litigation. TM reconstructed its time in the PHA litigation after the PSC represented to TM that TM could submit the hours spent in the state-court litigation as common-benefit time. TM spent hours, days, and weeks reconstructing this time, which consists of 552.7 hours. This is a conservative estimate of the time TM consumed on this litigation.

(4) <u>The professional experience and reputation of the attorney.</u> TM has been in existence for over 30 years and has an excellent reputation with the Mobile County, Alabama, bench and bar. Mr. Taylor has been licensed to practice in Alabama and Mississippi for approximately thirty years, and has appeared in many other state courts and many federal courts. Mr. Taylor has tried hundreds of cases, many of which involved construction litigation and defective products. He is peer-review rated AV-Preeminent in Martindale-Hubbell. Ms. Braswell is a member of the Alabama and Mississippi bars who worked with a defense firm before joining TM. Ms. Braswell has extensive litigation experience and likewise has an excellent reputation with the Mobile County bench and bar.

(5) <u>The weight of the attorney's responsibilities.</u>  TM took on a huge responsibility with regard to the PHA case.  The houses were practically new and all were occupied by renters or rent-to-own tenants.  Seven of the houses had been sold on the rent-to-own program and these tenants in turn sued PHA.  TM not only prosecuted PHA's case against The Mitchell Company, but also participated in defending PHA against the seven homeowners who were on the rent-to-own program.  The occupancy rate of the 36 homes went from 36 to zero.  The income from the property went to zero, the property began to deteriorate, and the property was subject to vandalism.  PHA and TM were also accountable to HUD since the construction was partly financed by HUD.  The longer the litigation dragged on, the greater the loss of income and property value.  Therefore, TM had a great responsibility in taking on representation of PHA.

(6) <u>The measure of success achieved; (7) The reasonable expenses incurred.</u>  TM litigated extensively for approximately five years until Steve Usdin, the attorney for defendant The Mitchell Company, suggested a mediation in New Orleans, Louisiana.  TM obtained an excellent result for PHA.  Twenty-nine homes were remediated for over $2,000,000 and the Defendants collectively paid $597,500.  The total value of the settlement was $2,630,153.26.  TM did not take an attorneys' fee from the cash settlement because of the stand-alone fee agreement with Knauf, and has yet to receive a fee.  TM incurred $53,660.21 in expenses.  This litigation cost was deducted from the settlement's cash proceeds; nonetheless, Knauf agreed to pay reasonable litigation costs and once they are paid, PHA will be reimbursed for the litigation expenses it incurred and paid.

(8)  <u>Whether the fee is fixed or contingent.</u>  PHA signed a one-third contingency-

fee agreement with TM. The case was referred to TM and TM must pay a one-third referral fee. TM will typically charge 40% in a case of this magnitude and complexity. Nonetheless, TM agreed to a one-third contingency fee because TM was concerned that a greater contingency fee would result in PHA not being made whole. When TM entered into the one-third contingency fee agreement, it was unknown that Knauf would eventually agree to pay fees and expenses in addition to remediating the properties.

(9) <u>The nature and the length of the professional relationship.</u> TM had never represented PHA prior to this case. PHA's regular attorney, Greg Harris, referred the case to TM. Mr. Harris and TM have had a professional relationship for over 25 years. TM began its representation of PHA in 2006 and the litigation relationship continues to this day, as TM attempts to recoup the litigation costs paid by PHA. In short, the relationship has existed for over a decade.

(10) <u>The fee customarily charged in the locality for similar legal services.</u> It is customary in Mobile County to charge a one-third to fifty-percent fee in a complex product-defect case. In a construction case it is customary to charge one-third to forty percent. TM entered into a one-third contingency-fee contract with PHA, which is in the low end of fees customarily charged.

(11) <u>The likelihood that a particular employment may preclude other employment.</u> Without question, TM had to turn down cases as a result of the time demands of the PHA litigation. TM had only two partners and three to four associates during this period.

(12) <u>The time limitations imposed by the client or by the circumstances.</u> Time was of the essence in TM's representation of PHA. Again, the property went from 100% occupancy to 0% occupancy. The income went to zero, the property was abandoned,

and vandalism became rampant. TM was accountable to PHA and HUD to obtain compensation, so PHA could remediate the property, find new tenants, and generate income. TM met often with PHA's Board and regular attorney during the course of the litigation.

TM submits that application of the *Peebles* factors in this case clearly justifies one-third of the total value conferred upon PHA as a reasonable attorneys' fee. This yields an attorneys' fee of $876,717.75. TM also incurred reasonable expenses of $53,660.21, which Knauf agreed to pay.

WHEREFORE, the PHA and TM respectfully move the Court to set a hearing date and enter an Order concerning the payment of attorneys' fees and expenses in accordance with the relief requested herein.

Respectfully submitted,

Attorneys for Plaintiff, Prichard Housing Authority

By:  /s/ Richard H. Taylor
RICHARD H. TAYLOR
TAYLOR MARTINO, P.C.
51 St. Joseph Street
Mobile, Alabama 36602
T: (251) 433-3131
F: (251) 433-4207
richardtaylor@taylormartino.com

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing Memorandum in Support of Prichard Housing Authority's and Taylor Martino, P.C.'s Motion for Payment of Attorneys' Fees and Expenses Pursuant to Stand-Alone Settlement Agreement with Knauf has been served on Plaintiffs' Liaison Counsel, Russ M. Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail and upon all parties by electronically uploading the same to File & ServeXpress in accordance with Pre-Trial Order No. 6 and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this the 28th day of June, 2016.

                        By:    /s/ Richard H. Taylor
                                    RICHARD H. TAYLOR