For Settlement Purposes Only
Subject to Execution

## Settlement Agreement For The
## Demonstration Remediation Of Homes With KPT Drywall

This Agreement ("Demonstration Remediation Agreement" or "Agreement") is entered into by and between the MDL Plaintiffs' Steering Committee (the "PSC") in *In re: Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047 (the "MDL"), including class counsel in *Harrell v. South Kendall Construction Corp, et al.*, No. 09-08401 (11th Judicial Circuit of Florida) ("Harrell Class Action"), and Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co. Ltd., Guandong Knauf New Building Material Product Co. Ltd., Knauf International GmbH, Knauf Insulation GmbH (referred to in MDL 2047 as Knauf Insulation USA), Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda., Gebr., Knauf Verwaltungsgesellschaft, PT.Knauf Gypsum Indonesia, and Knauf Gips KG (collectively the "Knauf Entities").

## RECITALS

WHEREAS, the parties have concluded that it is in their best interests to explore means of resolving lawsuits arising from alleged defects in drywall manufactured and exported to the United States by KPT (the "KPT Drywall Litigations");

WHEREAS, the parties agree that nothing in this Agreement constitutes a waiver of any claims or defenses, except as expressly stated below, and that nothing in this Agreement constitutes an admission of liability by the Knauf Entities;

WHEREAS, in an effort to resolve the KPT Drywall Litigations, the Knauf Entities have agreed to remediate up to 300 homes with KPT drywall, pursuant to the terms described below, the purpose of which is to serve as a model for a possible future global remediation program;

WHEREAS, suppliers and builders who installed or supplied KPT drywall to the homes and their insurers ("Other Participating Companies"), have already agreed, or may agree in the future, to contribute to the cost of remediation of these homes as described below;

NOW, THEREFORE, for the good and valuable consideration described below, the sufficiency of which is hereby acknowledged, the parties, each and all intending to be legally bound, hereby stipulate and agree as follows:

## TERMS AND CONDITIONS

I.  Purpose of the Demonstration Remediation Agreement

This Demonstration Remediation Agreement creates a program by which the Knauf Entities will remediate up to 300 homes ("the Remediation Homes") whose owners acquired title to their homes prior to the execution of this Agreement ("homeowners"), have claims against the Knauf Entities and the Other Participating Companies pending in the MDL (the "Demonstration Remediation Program" or "Program").

**EXHIBIT I**

II. **Eligible Homes**

    A. **Eligible Homes.** Homes eligible for the Program ("Eligible Homes") must (1) contain all or substantially all KPT drywall board ("KPT board") in terms of the number of KPT boards compared to the total number of drywall boards in the home; (2) not contain other defective Chinese drywall board ("Chinese drywall") (*i.e.*, homes with a mix of defective Chinese drywall will not be eligible for the Program); (3) be located in 4 states: Florida, Louisiana, Alabama, or Mississippi; and (4) have been built, or had KPT drywall board supplied by, one or more of the Other Participating Companies. For purposes of this Agreement, "substantially all" is defined to mean 95% or more KPT board; however, the Knauf Entities may at their sole discretion waive such requirement.

    B. **Identified Eligible Homes.** For purposes of expeditiously commencing the Demonstration Remediation Program, the PSC and the Knauf Entities have identified Eligible Homes, listed on Exhibit A, other than the Harrell Remediation Homes (defined below) in Florida listed and identified therein, satisfying the conditions in Paragraph II (A), and have selected, from these homes, the homes listed on Exhibit B for which the remediation process will commence as soon as practicable after the execution of this Agreement. The Harrell Remediation Homes listed on Exhibit A, which are the subject of the Harrell Class Action, are subject to approval by the Knauf Entities as Eligible Homes and to the conditions listed in Paragraph II (C).

    C. **Identification of Harrell Remediation Homes in Florida.** Class Counsel in the Harrell Class Action ("Harrell Class Counsel") and the Knauf Entities have reached an agreement, subject to the satisfaction of certain conditions precedent and the execution of definitive documentation and approval by the 11th Judicial Circuit of Florida, as part of a class action settlement, to include in the Program homes of class members that satisfy the conditions in Paragraph II (A) ("the Harrell Remediation Homes"). For purposes of this Agreement, references to the Harrell Class Counsel's undertakings, rights and obligations concern only the Harrell Remediation Homes.

    D. **Identification of Other Eligible Homes.** Within 30 business days of the execution of this Demonstration Remediation Agreement, the PSC will identify any other potentially Eligible Homes in the above four states, at its own expense, by using a reliable and effective method of inspection and provide the results of such inspection to the Knauf Entities. Within 30 business days of the notice by the PSC of identification of potentially Eligible Homes, and receipt of the results of such inspections, the Knauf Entities, at their sole discretion and expense, will determine, based on the results of such drywall inspections, whether the other potentially Eligible Homes, in fact, contain all or substantially all KPT board and are therefore Eligible Homes, notify the PSC of its determination, and, as soon as practicable, commence the remediation process as to any Eligible Home meeting the requirements of Paragraph II (A). In the event that the Knauf Entities determine that a potentially Eligible Home does not meet the requirements of

Paragraph II (A), the Knauf Entities will provide an explanation, and any supporting documentation, to the PSC, including as to the Harrell Remediation Homes, to Harrell Class Counsel. The foregoing deadlines may be extended by mutual consent in writing of the parties, such consent not to be unreasonably withheld.

E. **Homeowner Affirmations.** As part of the above-described identification process, the PSC, including, Harrell Class Counsel, will submit in the case of potentially Eligible Homes, not listed on Exhibit A, to the Knauf Entities (i) an affirmation from the homeowner, in the form annexed as Exhibit C, that, to the best of the homeowner's information and belief, the potentially Eligible Home contains all or substantially all KPT board as described in Paragraph II (A), and (ii) all documents in the PSC or homeowner's possession (or the possession of the homeowner's counsel if other than the undersigned PSC attorneys) that in any way identify the manufacturer of the drywall in the potentially Eligible Home including, but not limited to, home building contracts, drywall supply agreements, and home repair or renovation contracts ("Supporting Materials").

F. **Contributions by Other Participating Companies.**

1. As regards Eligible Homes, as identified on Exhibit A, and the Harrell Remediation Homes, the Other Participating Companies will contribute funds pursuant to separate settlement agreements with the Knauf Entities and the anticipated class action settlement in the Harrell Class Action ("the Funds").

2. As regards other potentially Eligible Homes in the four states above that may be included in the Program, the Knauf Entities reserve the right to select Eligible Homes for which a contribution to the costs of the Program can be obtained from Other Participating Companies.

3. Funds contributed by Other Participating Companies shall be used solely by the Knauf Entities for remediation, and/or payment of Other Covered Expenses (defined below) of those Eligible Homes for which the contributing Other Participating Companies supplied or installed drywall, and/or satisfaction of the Knauf Entities' obligations under Paragraph X.

4. In the event that Funds allocable to an Eligible Home are not used for the remediation of that Eligible Home, or in the event that the Program is terminated by either Party before such Eligible Home is remediated, then the Funds allocated to the unremediated Eligible Home shall be returned to the Other Participating Company and any release provided by the homeowner of such Eligible Home shall be null and void.

5. Agreements with Other Participating Companies, including the allocation of Funds to Eligible Homes, will be disclosed by the Knauf Entities to lead and liaison counsel for the PSC and to the MDL Court under seal. In

order to ensure confidentiality of those agreements, such agreements shall be marked "Confidential – Not for Public Distribution" prior to any such disclosure, not disclosed other than as stated above, and filed under seal in the MDL Court, absent mutual agreement of lead and liaison counsel for the PSC and the Knauf Entities ("the Confidentiality Procedures").

G. **Scope of Demonstration Remediation Agreement.** Nothing in this Demonstration Remediation Agreement obligates the PSC or the Knauf Entities to include in the Program (i) more than 300 homes; or (ii) any specific potentially Eligible Home that is found prior to remediation to fail to satisfy the requirements of Paragraph II (A). Further, the PSC, including Harrell Class Counsel, and the Knauf Entities reserve the discretion to terminate this Program at any time (other than as to any Eligible Homes for which the remediation process has begun) for example and without limitation, if upon commencing remediation, the Knauf Entities learn that the homes undergoing remediation in the Program do not contain all or substantially all KPT board. As to the Harrell Remediation Homes, subject to the satisfaction of certain conditions precedent and execution of definitive documentation, the Knauf Entities and the Harrell Class Counsel have agreed that the Knauf Entities will be reimbursed, subject to a maximum amount agreed upon between the Harrell Class Counsel and the Knauf Entities, from settlement proceeds in connection with, and resulting from, the claims asserted in the Harrell Class Action for the following remediation costs of the Harrell Remediation Homes: (i) full reimbursement for remediation arising from any non-KPT drywall board installed in the home that was manufactured by other Chinese companies and (ii) partial reimbursement for non-KPT drywall board, installed in the home, manufactured by domestic companies. The amount of such partial reimbursement in (ii) will be derived by multiplying the total cost of remediation of the non-KPT domestic drywall board by the ratio of non-KPT drywall board manufactured by other Chinese companies to all Chinese-manufactured drywall board. For purposes of calculating the foregoing reimbursement obligations (i) the above ratios will be based on the number of boards removed from the home in each category, that is, respectively, domestic, KPT and non-KPT Chinese drywall board and (ii) the Knauf Entities' remediation costs will be calculated on the basis of their actual costs of remediation, as set forth in the Statement described in Paragraph VI (C), plus the Other Covered Expenses, as set forth in Paragraph III (B), less contribution from Other Participating Companies, as provided for in Paragraph II (F).

H. **Geographical Distribution of Eligible Homes.** To the extent possible, the PSC and the Knauf Entities have or will select for remediation the Eligible Homes in Florida, Louisiana, Mississippi and Alabama based on an equitable distribution of Eligible Homes among these states. Eligible Homes in each state will be selected to the maximum extent feasible, in order to realize economies of scale, in clusters.

I. **Execution of This Demonstration Remediation Agreement by Counsel for an Eligible Home.** Counsel for the owner of an Eligible Home, if other than the signatories on behalf of the PSC below, must, as a precondition to any

4

Remediation Work, as described below, agree in writing to the terms and conditions of this Demonstration Remediation Agreement.

III. Remediation Work and Other Covered Expenses

   A. **Scope of Remediation Work.** The Remediation Homes, that is, those Eligible Homes selected for remediation, will be remediated pursuant to the Scope of Work set forth in Exhibit D (the "Remediation Work").

   B. **Other Covered Expenses.** The Knauf Entities will make the following payments to the owner of a Remediation Home as reimbursement of all alternative living expenses, personal property damage, maintenance of the house during the Remediation Work, including, but not limited to, payment of all utility bills, insurance, property taxes and maintenance of landscaping, and moving and storage expenses ("Other Covered Expenses"):

   1. A single payment ("Lump Sum Payment") of $8.50 per square foot of the Remediation Home "under air," as determined by the Assigned Contractor or Substitute Contractor identified in Paragraph IV and Exhibit E ("Under Air Area") and as set forth in the Work Authorization Agreement (defined in Paragraph IV (D) below), a copy of which, including all exhibits, will be furnished to the PSC for each of the homes on Exhibit B. The Lump Sum Payment will be paid to the homeowner as soon as practicable, but not more than five business days, after the homeowner and the Knauf Entities receive notice of the actual move-out date pursuant to the Work Authorization Agreement.

   2. In the event that the Remediation Work is not substantially complete at the end of the three-month period commencing with the move-out date that the contractor provides to the homeowner pursuant to the Work Authorization Agreement, on not less than 20 business days notice, or on such other date as the homeowner and the contractor agree, with the approval of the Knauf Entities, an additional $1.50 per square foot of the Under Air Area for each additional month that the homeowner is displaced from his home during the remediation period until 10 business days after the homeowner has received either by hand delivery or by overnight Federal Express both a Certificate of Occupancy and an Environmental Certification from the contractor ("the Delay Period"). Such payments will be made on a monthly basis in advance ("the Delay Period Payment").

   3. In the event that the Delay Period is less than one full month, the homeowner will refund on a pro rata basis the amount of the Delay Period Payment for that part of the month which is not within the Delay Period, unless the homeowner provides documentation adequate to establish that the entire Delay Period Payment was required to meet Other Covered Expenses.

5

        4. Garages, attics, or basements containing all or substantially all KPT board shall be remediated, but the square footage of such garages, attics, or basements shall not be used to calculate the Under Air Area used as the basis for the Lump Sum Payment and Delay Period Payment.

    C. In the event that a homeowner of a Remediation Home has remediated their property prior to the date of this agreement, and/or is in foreclosure proceedings or been foreclosed upon by a financial institution, and/or has vacated his home prior to remediation, such homeowner's claim or the claim, if any, of a financial institution, shall be the subject of additional negotiations.

## IV. Contractors

    A. The Knauf Entities, in consultation with the PSC have selected the Assigned Contractor identified on Exhibit E to undertake the Remediation Work described herein.

    B. The Knauf Entities, in consultation with the PSC, will finalize the list of Substitute Contractors on Exhibit E. In finalizing such list, the PSC shall have the right to face-to-face interviews with the Substitute Contractors and to review their marketing materials and firm descriptions.

    C. After finalization of the list of Substitute Contractors on Exhibit E, the Knauf Entities reserve the right to assign a Substitute Contractor to perform and/or oversee the Remediation Work in a particular Remediation Home for any reason, including, but not limited to, circumstances in which the Assigned Contractor is unable to perform and/or oversee the performance of the Remediation Work in a particular Remediation Home.

    D. Ordinary and customary construction performance, *inter alia*, completion of punch list items, definitions of terms such as "Substantial Completion," and warranties shall be included in, governed by, and/or determined in accordance with agreements between the owner of the Eligible Home and the Assigned Contractor, or the Substitute Contractor, which shall be executed prior to commencement of the Remediation Work, substantially in the form of the Work Authorization Agreement in Exhibit F. In the event of a conflict between the terms of the Work Authorization Agreement and this Agreement, this Agreement shall govern.

    E. Copies of agreements between the Assigned Contractor or any Substitute Contractors, and any payments made pursuant to those contracts to the Contractors in relation to the Remediation Work, shall be promptly disclosed to the lead and liaison counsel for the PSC and Harrell Class Counsel, subject to the Confidentiality Procedures.

V. **Contractor and Environmental Certification**

   A. At the conclusion of the Remediation Work on a Remediation Home, the Assigned Contractor, or Substitute Contractor, will provide the homeowner with a Contractor Certification substantially in the form of Exhibit G.

   B. Pursuant to the Work Authorization Agreement, after receiving the Contractor Certification, the Knauf Entities will assign one environmental inspector from the list on Exhibit H ("Environmental Inspector"), which list is subject to finalization prior to the commencement of any remediation of any Eligible Home and in consultation with the PSC (which consultation shall include face-to-face interviews), to each Remediation Home to certify, in accordance with Exhibit D, the absence in the Home of any remaining problem drywall-associated odors and contamination, including, but not limited to, corrosion, tarnish, and pitting.

      1. If the Environmental Inspector concludes the Remediation Home is free of any and all problem drywall-associated odors and contamination, the Environmental Inspector will provide a certification substantially in the form set forth in Exhibit I ("Environmental Certification") to the Assigned Contractor, or the Substitute Contractor, and to the homeowner for that Remediation Home that, in accordance with Exhibit D, the home is free of any and all problem drywall-associated odors and contamination.

      2. If the Environmental Inspector concludes the Remediation Home is not free of any and all problem drywall-associated odors and contamination, the Assigned Contractor, or the Substitute Contractor, will continue to remediate any issues identified by the Environmental Inspector until such time that the Environmental Inspector concludes the Remediation Home is free of any and all problem drywall-associated odors and contamination, in which case the Environmental Inspector will provide the Environmental Certification in the form of Exhibit I as specified in the above subparagraph V (B) (1).

      3. The Homeowner and/or his counsel, upon sufficient notice, shall have the right to be present, but not to interfere with, any environmental inspection by the Environmental Inspector, and to videotape, or otherwise make a record of, such inspection. The costs of the Environmental Inspector will be paid by the Knauf Entities.

VI. **The Remediation Fund**

   A. For each Remediation Home, the Assigned Contractor, or the Substitute Contractor, will provide to the lead and liaison counsel for the PSC, including Harrell Class Counsel, and the Knauf Entities a detailed estimate of the cost to do the Remediation Work in the Remediation Home ("Cost Estimate"), which Cost Estimates are subject to the Confidentiality Procedures.

B. The Knauf Entities, using their own funds and the funds contributed by the Other Participating Companies shall create a Remediation Fund in the amount of (i) the Cost Estimate plus an additional 10% of the Cost Estimate ("the Excess Amount") and (ii) the Lump Sum Payment (collectively the "Remediation Fund"). Within 10 business days of the execution of the Work Authorization Agreement by the homeowner, the Knauf Entities and the Assigned Contractor, or a Substitute Contractor, the Knauf Entities will fund the Remediation Fund by wire transferring an amount equal to the Remediation Fund, with notice to the homeowner's counsel, to an escrow account with U.S. Bank, a national banking association (the "Escrow Agent"), with final wire instructions to be provided at the time such funds become due; provided, however, that such wire transfer takes place in sufficient time for the Knauf Entities to meet their obligations under Paragraph III (B) including, but not limited to, payment of the Lump Sum Payment to the homeowner within the timeframe provided for therein. The Knauf Entities will use an interest-bearing U.S. Bank escrow account for all Remediation Funds established pursuant to this Agreement, and will be responsible for the costs of the Escrow Agent. Interest from such escrow account may be used by the Knauf Entities to pay any taxes due on such interest and the Escrow Agent's costs.

C. Upon completion of the Remediation Work and receipt of the Certifications pursuant to Paragraph V, the Assigned Contractor, or the Substitute Contractor, shall submit a final statement to the lead and liaison counsel for the PSC, including Harrell Class Counsel, and the Knauf Entities describing the Remediation Work and its cost (the "Statement").

D. The Remediation Fund will be used to pay the Assigned Contractor, or the Substitute Contractor, for the performance of the Remediation Work, including punch list work, and to pay the Other Covered Expenses to the homeowner. Upon completion of the Remediation Work, receipt of the Certifications pursuant to Paragraph V, payment to the Assigned Contractor, or the Substitute Contractor, for the Remediation Work and punch list work, and payment of the Other Covered Expenses to the homeowner, any funds remaining in the escrow account, including any accrued interest, will be returned to the Knauf Entities.

VII. **Warranty of Remediation Work And Lien Clearance**

A. The Assigned Contractor to a Remediation Home, or the Substitute Contractor, will provide the homeowner with a warranty substantially in the form of the warranty provided for in the Work Authorization Agreement in Exhibit F.

B. If the Assigned Contractor, or the Substitute Contractor, does not perform, or is unable to perform, work required by the warranty described in subparagraph VII (A), the Knauf Entities will assume responsibility for procuring substitute performance under the warranty ("Guaranty of Warranty").

      C.     The Assigned Contractor, or the Substitute Contractor, is responsible for clearing all material and labor liens placed on the property in connection with the Remediation Work as described in Paragraph IX (B).

## VIII. Dispute Resolution

      A.     In the event that a dispute arises between the homeowner and the contractor over the Scope of Work in Exhibit D for an individual Remediation Home, such dispute will be submitted to John W. Perry, Jr. of Perry Atkinson, Balhoff, Mengis & Burns, LLC ("the Mediator"), the MDL Court-appointed mediator, who, with the assistance of any technical experts hired by the Mediator with notice to and input from the PSC, including Harrell Class Counsel, and the Knauf Entities, will resolve the dispute (the "Dispute Resolution Process"). Such technical experts shall be unaffiliated with the Assigned Contractor, or the Substitute Contractors, and any Environmental Inspectors. The parties shall cooperate with the Mediator to resolve any disputes expeditiously and avoid to the maximum extent possible any delay in the remediation. The Mediator's decisions shall be binding.

      B.     Any expenses associated with a homeowner-contractor dispute ("Mediation Expenses") as regards the Scope of Work, including progress and quality, and the warranty and Guaranty of Warranty described in Paragraph VII, will be jointly shared by the Knauf Entities and the homeowner, except that Mediation Expenses associated with the Dispute Resolution Process as regards the interpretation and administration of this Demonstration Remediation Agreement will be jointly shared by the Knauf Entities and the PSC, including, if Harrell Remediation Homes are involved, Harrell Class Counsel. In the event that disputes asserted by a party, either singly or in combination, delay the remediation by two days, the Mediator may in his discretion direct that, thereafter, the Mediation Expenses incurred in resolving any disputes asserted by that party will be paid by same, regardless of whether the Mediator resolves the dispute in that party's favor; otherwise, expenses will be shared equally by the parties to the dispute. The Mediator's decisions shall be binding.

## IX. Release and Stipulation of Dismissal With Prejudice

      A.     As consideration for the funding by the Knauf Entities and Other Participating Companies of the Remediation Work for the Remediation Homes in Louisiana, Florida, Alabama and Mississippi and the payment to the homeowner in those states pursuant to Paragraph III (B) and the Guaranty of Warranty pursuant to Paragraph VII (B), the homeowners of the Remediation Homes in those states shall release the Knauf Entities and Other Participating Companies, and any party that supplied, installed or facilitated and/or assisted in such supply or installation of KPT drywall in Remediation Homes, and without limitation, their successors, predecessors, assigns, affiliates, shareholders, investors, and their past, present, and future officers, directors, partners, attorneys, agents, employees, parent companies, partnerships, subsidiaries, sister corporations and representatives

(collectively, "Released Parties") from and against all claims and future claims relating to his/her home, except for claims (the "Reserved Claims") against the Knauf Entities by (i) the homeowner for bodily injury, (ii) a singular attorneys fee (to be allocated between individual retained counsel and common benefit counsel) and reasonable and appropriate expenses (collectively "Attorneys' Fees") against the Knauf Entities, and (iii) claims in connection with the performance of, and any obligations arising under, the Demonstration Remediation Agreement, including, but not limited to, warranty claims and punch list items (the "Release"). The Knauf Entities reserve all defenses, including but not limited to jurisdictional defenses, against bodily injury claims. As to Attorneys' Fees, the Knauf Entities only reserve the right to dispute the reasonableness of the PSC's claims, including Harrell Class Counsel.

B.  The Release will be executed and provided by the homeowner upon the establishment of the Remediation Fund for that homeowner's Remediation Home but held in escrow by counsel for the Knauf Entities, and will become effective only upon (i) Certification pursuant to Paragraph V, (ii) "Substantial Completion" as that term is defined in the Work Authorization Agreement, and (iii) production by the Assigned Contractor, or the Substitute Contractor, to the homeowner, of a final release of lien or liens, or such other sufficient evidence, demonstrating that any actual or potential liens filed in relation to the Remediation Work have been either released or bonded off such that the homeowner's title is clear of all liens related to the Remediation Work, except that, subject to Paragraph II (F) (4), such release shall be effective as to the Other Participating Companies on the date of its execution. A sample Form Release is attached as Exhibit J.

C.  The Knauf Entities and Other Participating Companies shall, in their agreement by which the Other Participating Companies are providing funds, release, and indemnify and otherwise hold harmless, each other and without limitation, their successors, predecessors, assigns, affiliates, shareholders, investors, and their past, present, and future officers, directors, partners, attorneys, agents, employees, parent companies, partnerships, subsidiaries, sister corporations and representatives from and against all claims and future claims relating to any Remediation Homes as to which the Other Participating Companies or Parties have contributed funds for the remediation with the exception that the foregoing indemnity obligations shall not apply to the Reserved Claims and any ongoing obligations or undertakings agreed to by these parties. A sample Agreement and Release is attached as Exhibit K.

D.  The counsel for the homeowner of a Remediation Home, within 5 business days of the effective dates of the Release described in Paragraph IX (B) above, shall file stipulations of dismissal with prejudice with the MDL Court of the homeowner's lawsuit against the Other Participating Companies and the Knauf Entities, respectively, which will provide for the Court to 'so order" the dismissals with prejudice, in the form annexed as Exhibit L. Counsel for the homeowner shall cooperate with the Knauf Entities and the Other Participating Companies in any way necessary to obtain such dismissals with prejudice.

10

X. **Attorney Fees**

    Subject to, and consistent with, any order entered by the MDL Court and the 11th Judicial Circuit of Florida governing Attorneys' Fees, the parties agree that the PSC, including Harrell Class Counsel, common benefit attorneys, and the counsel for the homeowner are entitled to Attorneys' Fees, the calculation and/or amount of which will be determined by a separate agreement(s) between the PSC, including Harrell class counsel, and the Knauf Entities, which agreement(s) will be submitted to the MDL Court for approval and, in the case of the Harrell Remediation Homes, to the 11th Judicial Circuit of Florida, unless these respective courts, upon application of the PSC, including Harrell Class Counsel, direct otherwise. In the event the parties are unable to agree on the calculation and/or amount of Attorney's Fees within six months of the execution of this Demonstration Remediation Agreement, then the dispute will be submitted to the MDL Court for resolution and/or to the 11th Judicial Circuit of Florida. In either event, (i) no distribution of Attorneys' Fees will take place without the approval of the MDL Court and, as to the Harrell Class Action, the 11th Judicial Circuit Court of Florida; (ii) and the rulings of those courts regarding Attorneys' Fees shall be non-appealable.

XI. **Court Oversight**

    Solely and exclusively for purposes of the Program, and the obligations incurred thereunder, as to any home remediated pursuant to this Program, the Knauf Entities consent to the jurisdiction of the MDL Court, which will oversee implementation of the Program and the Dispute Resolution Process outlined in Paragraph VIII and to the jurisdiction of the 11th Judicial Circuit of Florida, which will exercise oversight of the implementation of the Program and the Dispute Resolution Process as to the Harrell Remediation Homes, and their oversight rulings shall be non-appealable. All other jurisdictional defenses, arguments and rights are fully reserved by the Knauf Entities and nothing in the Demonstration Remediation Agreement is intended to prejudice the assertion in any forum against any party of those jurisdictional defenses, arguments and rights.

XII. **Miscellaneous**

    A.    **No Admission of Liability.** Nothing in this Agreement shall constitute any (i) admission of liability or fault of any kind on the part of the Knauf Entities, who expressly deny any liability to the plaintiffs and who are entering into this Agreement to avoid the expense and uncertainty of litigation; (ii) an admission of or consent to jurisdiction or waiver of any defenses, jurisdictional or otherwise, except as provided in Paragraphs X and XI; and (iii) consent to service by the Knauf Entities. Neither this Agreement nor any Release shall be admissible in evidence in any proceedings except in an action to enforce the terms of the Agreement or the Releases.

B. **Continuation of Litigation.** Nothing in this Agreement shall stay, or otherwise delay or interfere with, ongoing discovery and other proceedings in the MDL or any State Court.

C. **Non-Binding Effect as to Other Homes.** Subject to Paragraph II (G), nothing in this Agreement obligates or binds either the PSC, including Harrell Class Counsel, or the Knauf Entities to any course of conduct, including but not limited to the scope of work for any remediation of homes not within the scope of this Agreement.

D. **Best Efforts Obligations.** Prospectively, unless and until the Program is terminated, the Knauf Entities, without waiving any rights under Paragraph XII (C), (i) shall use best efforts to settle any lawsuits by homeowners of homes with all or substantially all KPT drywall in accordance with the substantive terms of this Agreement (ii) and will disclose any such settlement agreements to lead and liaison counsel for the PSC and the MDL Court pursuant to the Confidentiality Procedures. The PSC, including Harrell Class Counsel, shall use best efforts to inform counsel for homeowners of such homes of the terms of the Program, which have been negotiated at arm's length. Both parties recognize that the decision whether to participate in the Program is ultimately the decision of a homeowner based on the advice of the homeowner's counsel.

E. **Representation Regarding Knauf Insulation GmbH.** The Knauf Entities represent that Knauf Insulation GmbH is a corporate entity which is doing business in the United States with its U.S. corporate offices in Shelbyville, Indiana. The Knauf Entities further represent that Knauf Insulation GmbH owns substantially all of the Knauf Entities' assets in the United States.

F. **Notice of Liquidation or Asset Disposition.** The Knauf Entities shall provide 10 business days notice to the PSC, including Harrell Class Counsel, of insolvency, bankruptcy, receivership, and any liquidation or disposition of all or substantially all of the U.S. assets of Knauf Insulation GmbH. Such notice obligations expire upon termination of the Program.

G. **No Presumption as to Drafting.** This Agreement is the product of arm's length negotiations between the PSC, including Harrell Class Counsel, and the Knauf Entities. Neither the PSC, including Harrell Class Counsel, or the Knauf Entities shall be deemed to be the drafter of this Agreement or any provision thereof. No presumption shall be deemed to exist in favor of or against either the PSC, including Harrell class counsel, or the Knauf Entities, as a result of the preparation or negotiation of this Agreement.

H. **Inadvertent Errors.** The Parties recognize that inadvertent errors may occur in the information provided by the PSC, including Harrell class counsel, and the Knauf Entities relating to the Remediation Homes and/or the Knauf Entities' and/or the PSC's and the Harrell Class Counsel's processing of that information. If, and to the extent that, such inadvertent errors occur, the parties agree to work

12

together to correct the error and to resolve the matter in a manner consistent with the overall intent of this Agreement.

I. **Compliance With Ethical Requirements and Guidelines.** The parties have been advised and believe that this Agreement comports in all respects with applicable ethical requirements and guidelines and is fully in the interests of their respective clients. However, if a mutually agreed-upon ethics expert or a Court or a disciplinary body concludes that any provision of this Agreement violates any applicable ethics requirement, the parties shall immediately negotiate in good faith for a mutually satisfactory substitute provision that shall comply with all applicable ethical requirements while preserving insofar as possible the substance of the original provision.

J. **Not Affected by Change in Law.** This Agreement shall be binding on the parties regardless of any change in the law that might occur after the date the PSC, Harrell Class Counsel, and the Knauf Entities have all signed this Agreement.

K. **Applicable Law.** This Agreement is being executed and delivered, and is intended to be performed, in the State in which the Remediation Home is located. The substantive laws of the State in which the Remediation Home is located, irrespective of choice of law principles, shall govern the validity, construction, and interpretation of this Agreement. For purposes of any enforcement proceeding, the MDL court, or with respect to enforcement proceedings regarding Harrell Remediation Homes, the 11th Judicial Circuit of Florida, will determine the applicable law.

L. **Enforceability and Severability.** In case any provision (or any part of any provision) contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Agreement, but this Agreement shall be construed as if such invalid, illegal or unenforceable provision (or any part thereof), had never been contained herein, but only to the extent it is invalid, illegal or unenforceable. In the event that the 11th Judicial Circuit of Florida rejects, or otherwise modifies the terms of, the class settlement of the Harrell Class Action, all other terms of this Agreement shall remain in full force and effect, and the Program will be implemented pursuant to those terms.

M. **Entire Agreement.** The parties acknowledge that this Agreement is the entire agreement between the PSC, including Harrell Class Counsel and the Knauf Entities. The parties have not received or relied on any agreements or promises other than as contained in writing in this Agreement.

N. **Agreement Photocopies.** A photocopy of the fully executed original of this Agreement shall be deemed to be an original for any and all purposes.

O.  **Amendments or Assignments in Writing.** This Agreement may not be modified or amended, or assigned in whole or in part, unless such modification, amendment or assignment is in writing executed by all parties.

P.  **Authority to Enter Agreement.** Each of the signatories hereto hereby warrants that he or she is authorized to enter into this Agreement on behalf of the parties on whose behalf he or she has executed this Agreement.

Q.  **Effective Date.** With respect to all homes, except for homes subject to the Harrell Class Action, this Agreement is effective upon execution by the PSC and the Knauf Entities. As to the homes subject to the Harrell Class Action, this Agreement shall be effective upon execution by Harrell Class Counsel.

R.  **Execution.** This Agreement may be executed in multiple counterparts, all of which taken together shall constitute one and the same Agreement.

S.  **Notification.** All notices and other communications under this Agreement shall be in writing and shall be sent by hand delivery or overnight courier (e.g., Express Mail, Overnight UPS or Federal Express) to: For the Knauf Entities: Gregory J. Wallance, Kaye Scholer LLP, 425 Park Avenue, New York, New York 10022; For the PSC: Arnold Levin (lead counsel for the PSC), Levin, Fishbein, Sedran & Berman, 510 Walnut Street, Suite 500, Philadelphia, Pennsylvania 19106, Russ Herman (liaison counsel for the PSC), Herman, Herman, Katz & Cotler, LLP, 820 O'Keefe Avenue, Suite 100, New Orleans, Louisiana 70113, Christopher A. Seeger (trial team chair), Seeger Weiss, LLP, 1 William Street, New York, New York 10004; For Harrell Class Counsel: Victor M. Diaz, Podhurst Orseck, P.A., 25 West Flagler Street, Suite 800, Miami, Florida 33130.

**Agreed to By**

For Knauf Entities

| | |
|---|---|
| Gregory J. Wallance<br>Kaye Scholer LLP<br>425 Park Avenue<br>New York, New York 10022<br>Phone: (212) 836-8000<br>Fax: (212) 836-6478<br>gwallance@kayescholer.com | Kerry J. Miller<br>Frilot L.L.C.<br>Suite 3700<br>1100 Poydras Street<br>New Orleans, LA 70163<br>Phone: (504) 599-8000<br>Fax: (504) 599-8145<br>kmiller@frilot.com |

On Behalf of, and With the Full Authority of The Plaintiffs' Steering Committee

Arnold Levin (lead counsel)
Fred S. Longer
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
alevin@lfsblaw.com

Christopher A. Seeger (trial team chair)
Seeger Weiss, LLP
1 William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Russ Herman (ex-officio and liaison))
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue, Suite 100
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
rherman@hhke.com

For Harrell Class Counsel

Victor M. Diaz
Podhurst Orseck, P.A.
25 West Flagler Street, Suite 800
Miami, Flrida 33130
Phone: (305)-358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com