**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

**DECLARATION OF KASIE M. BRASWELL**

I, Kasie M. Braswell, declare as follows:

1. My name is Kasie M. Braswell. I am over the age of nineteen years and competent to testify. I am an attorney licensed to practice law in the states of Alabama and Mississippi, including federal courts in both states. I was an associate in the law firm of Taylor Martino, P.C. ("TM") during the relevant time period. TM represents Prichard Housing Authority ("PHA") in the above-referenced litigation.

2. I concur with the facts presented by Mr. Taylor in paragraphs two-four of his declaration and shall not repeat them herein.

3. While the PHA case was being litigated, the PSC began soliciting TM to join MDL 2047; I was present at these meetings and during several teleconferences. After several meetings and phone calls with PSC members regarding the alleged benefits of joining the MDL proceedings, PHA joined the MDL litigation on December 9, 2009, based on the solicitations and representations of the PSC. It was included in MDL Omnibus I Complaint as Plaintiff 1117. PHA then had the same case filed in two separate courts, but no one objected to this. The seven homeowners consolidated in the PHA's state-court action did not join the MDL. Thus, the state-court action continued to move forward and PHA continued to vigorously litigate the state-court action after it was persuaded to join the MDL proceedings.

4.       Prior to joining the MDL, I spent numerous hours inside CDW homes (in hot attics, inside vacant homes, and removing sheetrock/drywall myself in order to determine manufacturer, property damage, etc.); researching potential experts; meeting with experts; drafting state-court pleadings, etc.  After joining the MDL, I was asked to conduct research regarding Alabama law that was sent to the PSC for use during the MDL.

5.       Steve Usdin with the New Orleans law firm of Barrasso, Usdin, counsel for The Mitchell Company, suggested a mediation with all the state-court parties, including KPT.  Mr. Usdin arranged for KPT to attend.  The first mediation was held on October 18, 2010, in New Orleans.  A verbal agreement on terms was reached at the end of the October 2010 mediation, but a final written agreement could not be reached.  Knauf filed a motion with this Court to enforce the verbal agreement and PHA joined Knauf in the motion.  The Court, after hearing arguments, ordered all parties to a second mediation, which occurred in New Orleans on June 24, 2011, eight months after the failed first mediation.  During the eight months between said mediations, the vacant PHA homes were severely vandalized.

6.       The attorneys for PHA had to prepare for and mediate the new issue of the vandalism that damaged the PHA properties during the eight-month disagreement. Counsel for PHA were successful in obtaining an additional $125,000.00 for the vandalism.  The case was finally settled in the Fall of 2011 with Knauf agreeing to remediate the 29 houses for a total cost of over $2 million. The Defendants also agreed to pay PHA $597,500 cash, with Knauf paying $95,000 of that sum.  Knauf also agreed at mediation to pay TM's reasonable attorneys' fees and expenses.  Taylor Declaration

Exhibit F is a copy of the formal executed settlement agreement. The stand-alone settlement agreement between PHA and Knauf was reached before the PSC's settlement agreement with Knauf was executed on December 20, 2011. Although the date of execution of the stand-alone settlement agreement by the various Knauf entities does not appear on the signature pages, all Knauf entities had signed by August of 2011 to the best of my recollection. Accordingly, the stand-alone settlement agreement was finally executed in counterpart by all parties in the Fall of 2011. The stand-alone settlement agreement was reached outside the Pilot Program. An email from BrownGreer PLC, the Court-appointed Settlement Administrator, confirms this. The email is Taylor Declaration Exhibit G.

7. TM has a private contingency-fee agreement with PHA for one-third of any recovery, in addition to payment of expenses. Taylor Declaration Exhibit H is the Contingency Fee Contract. TM must also pay a one-third referral fee.

8. The Remediation Agreement referred to in the stand-alone settlement agreement is Taylor Declaration Exhibit I. Remediation of the PHA's homes was finalized on July 25, 2012, so TM sent a letter to Knauf's counsel seeking payment of the attorneys' fees and expenses. This letter is Taylor Declaration Exhibit J. Taylor Declaration Exhibit K is a letter from me, Kasie M. Braswell, of the Braswell Murphy, LLC, law firm. As stated earlier, I was associated with TM during the litigation and settlement of PHA's claims against Knauf, and I have an interest in the attorneys'-fee award. Counsel for Knauf responded with a letter stating that "it is premature at this time to prioritize for attorney fee purposes any one set of claims over any of the additional claims." This letter is Taylor Declaration Exhibit L.

9. Knauf and the PSC had not agreed on a reasonable attorneys' fee when TM filed its previous motion seeking payment of fees and expenses, and they still have not agreed. No agreement on a reasonable attorneys' fee has been communicated to TM. On June 14, 2016, TM sent a letter via email to Knauf's counsel and the PSC's Arnold Levin, advising that if Knauf did not agree to pay as a reasonable attorneys' fee one-third of the total value conferred on PHA by the settlement, before the close of business on June 20, 2016, TM would file an appropriate motion with this Court. This letter is Taylor Declaration Exhibit M. Neither Knauf nor the PSC responded. The total value conferred upon PHA consists of the amount spent on the remediation of the PHA homes ($2,032,653.26) plus the cash amount of the settlement ($597,500), for a total $2,630,153.26. One-third of this sum is $876,717.75. Taylor Declaration Exhibit R confirms the cash value of the remediation.

10. I will defer to Mr. Taylor's address of the *Peebles* factors applicable under Alabama law for the determination of a reasonable attorneys' fee with the addition of the following:

Professional experience and reputation of the attorney. I have been licensed to practice in Alabama and Mississippi for approximately thirteen years, and I have appeared in many other state courts and many federal courts. I have tried numerous cases in both State and Federal courts. I am peer-review rated AV-Preeminent in Martindale-Hubbell. Prior to joining TM, I worked at a large defense firm where I handled multi-million dollar cases for years. I have extensive litigation experience and an excellent reputation with the Mobile County bench and bar.

4

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 28, 2016, at Mobile, Alabama.

_____
KASIE M. BRASWELL