## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED | ) | |
| DRYWALL PRODUCTS | ) | MDL NO. 2047 |
| LIABILITY LITIGATION | ) | |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | SECTION: L |
| | ) | |
| *Hobbie, et al. v.* | ) | JUDGE FALLON |
| *RCR Holdings II, LLC, et al.,* | ) | |
| | ) | |
| No. 10-1113 | ) | MAG. JUDGE WILKINSON |
| _____ | ) | |

### VILLA LAGO PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR A FINAL AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND IN OPPOSITION TO ALLOCATION MOTION PURSUANT TO PRE-TRIAL ORDER NO. 28(F) [D.E. 20282]

Coastal Settlement Class Counsel ("Class Counsel") hereby submit the following Memorandum in Support of Motion for a Final Award of Attorneys' Fees and Reimbursement of Costs. Class Counsel previously moved for a partial award of attorneys' fees in the amount of **$1,709,605.58,** and certain costs the parties agreed to reimburse from the Settlement Fund in the amount of **$380,946,** both as a partial payment. [Doc. No. 17320]. Class Counsel's Motion was granted. [Doc. No. 17368]. Class Counsel now request payment of the balance of the costs and fees owed and payable from the Banner, Global and Knauf Settlements (the "Class Action Settlements") as expressly set forth in the Coastal Settlement Agreement [Doc. No. 16741-2], the Knauf Settlement Term Sheet, and Arnold Levin's Letter to Class Counsel, dated August 8, 2013 ("Levin Letter").[1] Specifically, Class Counsel request from the Class Action Settlements: (1) a fee award of **$6,421,516.36,** and (2) an award of costs of **$232,996**.00. Further, Class Counsel

---

[1] Exhibits 1, 2 & 3, respectively, to Declaration of Gary E. Mason in Support of Award of Attorneys' Fees and Reimbursement of Costs and Opposition to Allocation Motion Pursuant To Pre-Trial Order No. 28(F), being filed concurrently with this Motion.

object to any imposition of a common benefit fee in excess of 5% of the benefit realized by the members of the Coastal Settlement Class.[2]


## I.  FACTUAL BACKGROUND

### A.  The Litigation and Coastal Settlement

The *Hobbie* action was filed on September 21, 2009, in the Circuit Court for Palm Beach County, Florida against RCR Holdings II, LLC ("RCR"), Coastal Construction of South Florida, Inc., d/b/a/ Coastal Condominiums ("Coastal"), Precision Drywall, Inc. ("Precision"), La Suprema Enterprise, Inc., La Suprema Trading, Inc., and Banner Supply Company, Inc. ("Banner"). It involved a multi-unit residential building located in Boynton Beach, Florida, known as Villa Lago, built from 2005 through 2007.  It is part of a large mixed use development project known as Renaissance Commons, and is composed of 328 residential condominium units.[3] The *Hobbie* action was removed by Banner on February 26, 2010, then transferred to this Court pursuant to MDL procedures. The majority of the Class Members in this action have also been named on Class Action Omnibus Complaints in MDL No. 2047.

On March 28, 2013, the parties reached a settlement in this matter. This Court granted preliminary approval of the Settlement Agreement on April 24, 2013.  The settlement created the Villa Lago Settlement Fund in order to facilitate the funding of the remediation of all units at Villa Lago at Renaissance Commons containing Chinese Drywall, regardless of the manufacturer of the Chinese Drywall.  The proposed Settlement, therefore, together with the Banner, Knauf, RCR and global settlements with suppliers, builders, installers and their insurers, resolved all

---

[2] Class Counsel incorporate herein by reference the  Opposition of Whitfield Bryson & Mason LLP, Pendley Baudin & Coffin, Rhine Law Firm, and Luckey & Mullins to Fee Committee's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Fees and Individual Counsel Fees Pursuant to PTO 28(F) ("Opposition Brf.")(filed June 28, 2016).
[3] RCR owns 130 of these units.

claims arising out of the manufacture, sale, distribution, use, installation or remediation of the allegedly defective Chinese Drywall at Villa Lago.  Class Counsel disseminated class notice via first-class mail on May 9, 2013, and also caused notice of the settlement to be published in media outlets.  The notice, *inter alia*, apprised class members of class counsel's anticipation of filing the instant motion for fees and costs, stating:

> At a later date, Class Counsel will ask the Court for attorneys' fees based on their work on this litigation. Pursuant to the Settlement Agreement, the parties have agreed to attorneys' fees of $2,670,960.62 and costs of $380,946.00 for a total of $3,051,906.63. <u>Class Counsel may seek additional attorneys' fees from any other settlement or recovery obtained</u>. Any payment to the attorneys will be subject to Court approval and the Court may award less than the requested amount. The fees, costs, expenses and awards that the Court orders, plus the costs to administer the Settlement, will come out of the Settlement Fund.

*See* Long-Form Notice, at  7 (Apr. 8, 2013) (emphasis added) [Doc. No. 16741-5].  The deadline to opt out of or object to the Settlement was July 8, 2013.  No requests for exclusion from the Settlement were received from any Class Member.  Class Counsel received one objection from an owner of an unaffected unit, which was not to be remediated because it was unaffected.  This Court entered an order granting final approval on October 22, 2013. On December 19, 2013, the Court issued an Order Granting Partial Award of Attorney's Fees and Partial Reimbursement of Costs [Doc. No.  17368].

After this Court certified the settlement class pursuant to the Coastal Settlement Agreement, Villa Lago Class Counsel administered the settlement independent of the PSC, including engaging in lengthy coordination with Moss Construction regarding the scope of the remediation prior to the commencement of work, hosting on-site town hall meetings to coordinate the actual remediation itself, and successfully pursuing this Court's appointment of a

receiver to handle remediation issues for foreclosed units within Villa Lago.[4] Prior to the administration of the Coastal Class Settlement, Class Counsel had performed more than 8500 hours of billable work in the litigation independent of the PSC.[5] The Coastal Class Settlement has now been fully administered and Villa Lago completely remediated.

**B.   The Qualified Settlement Fund and Payment of Partial Fees and Costs**

On October 25, 2013, this Court established the Villa Lago Qualified Settlement Fund ("QSF") [Doc No. 17210]. Pursuant to the Coastal Settlement Agreement, the Coastal Defendants deposited $7,200,000 into the QSF. Another $4,800,000 was transferred into the Villa Lago QSF from the RCR Settlement Fund [Doc No. 17369], totaling $12,000,000. Of that amount, $8,729,189.80 was transferred from the QSF to the Knauf Remediation Fund, leaving a balance of $3,270,810.20 available to pay Plaintiffs' "soft costs," partial attorneys' fees, the PSC holdback, and one-half of the agreed attorneys' expenses. Coastal Settlement Class Counsel moved for distribution of these amounts [Doc. No.  17320], and after notice and hearing, the Court ordered the distribution as requested [Doc. No. 17368]. Class Counsel received from the QSF a partial award of attorneys' fees in the amount of **$1,709,605.58** and the amount of **$380,946** as a partial reimbursement of attorneys' expenses.  Class Counsel thereafter paid **$908,227.96** to the Court pursuant to the Voluntary Payment Order for Common Benefit. [Doc. No. 17368].

---

[4] *See* Villa Lago Class Counsels' Motion for Appointment of a Receiver, Dec. 9, 2013 [Doc. No. 17315], Memorandum of Law in Support of Motion for Appointment of Receiver, Dec. 9, 2013 [Doc. No. 17315-1] and Order Appointing Receiver, Dec. 20, 2013 [Doc. No. 17370].
[5] Class Counsels' Memorandum of Law in Support of Partial Payment of Attorneys' Fees, Dec. 20, 2013 [Doc. No. 17320-1].

C. **The Unpaid Knauf and Non-Knauf Class Counsel Fees and Expenses**

The Coastal Settlement Agreement provides Class Counsel with $2,670,960.63 - a 20 percent fee - for the benefit obtained for non-KPT units.[6] This amount was expressly agreed to come from three sources: 1) the QSF ($1,709,605.58); 2) the Banner Settlement ($500,505.05); and 3) the Global Settlement ($460,800.00). *Id.* The amount expected from the QSF has been paid, together with one-half of the agreed expenses of $380,946.00. To date, Class Counsel have not requested (nor received) fees from the Banner Settlement or from the Global Settlement. They do so now.

With respect to the Knauf fee for the benefit obtained for the Knauf units, it was anticipated that a fee request would be made against the Knauf settlement fund for a fee of at least 20 percent of the benefit created for the Knauf units. *See* Coastal Settlement Agreement, § 13, *see also* Knauf Settlement Term Sheet, ¶7. The Coastal Settlement further contemplated that the balance of the attorneys' expenses would come from the Knauf Settlement. *See* Coastal Settlement Agreement, Exhibit A ("Legal Costs (50% of $761,892, with Knauf part paid in Knauf fee deal)"). With this Motion, Class Counsel herein seek payment of: 1) **21 percent of the $26,001,006.26 additional benefit obtained for Villa Lago units from the Class Action Settlements or $5,460,211.31;** 2) **$961,305.05** due from the Banner and Global Settlements; and 3) reimbursement of the remaining agreed costs of **$380,946.00**, payable from the funds approved by the Court for payment of attorneys' fees and costs.[7]

---

[6] Coastal Settlement Agreement, Exhibit A.

[7] Class Counsel have received a stipend payment of $147,950. Declaration of Gary E. Mason, ¶ 10 ("Mason Decl."). Applying this payment to the outstanding costs owed by Knauf leaves a difference of $232,996. Class Counsels' objection to the proposed cost award was briefed in detail in Villa Lago Plaintiffs' Motion for Payments of Costs Pursuant to Coastal Settlement Agreement, Oct. 21, 2013 [Doc. No. 17177], and Alternative Response to Fee Committee's Inspection Costs and Hold Back Motion, Oct. 23, 2014 [Doc. No. 18081], which is incorporated by reference herein. In short, as a significant inducement for RCR and other Class Members to enter into the Coastal Settlement Agreement, the Defendants agreed to specifically pay a total of $761,892 in costs to the Coastal

In sum, Class Counsel rerquest an additional fee and cost award from the fee and cost fund totaling **$6,802,462.36** Class Counsel has already received a stipend payment of **$147,950.** Accordingly, the net fee and cost amount requested by Class Counsel is **$6,654,512.36.**  Upon the data provided by BrownGreer, Class Counsel are scheduled to receive fees for their Villa Lago units collectively amounting to **$3,094,638.00**. Mason Decl., ¶ 9.  Consequently, Class Counsel are seeking an increase in fees and costs of **$3,559,874.36** over the scheduled amount.

### D.  <u>The Petition and Approval of Class Counsel Fees</u>

In May, 2014, the FC and PSC jointly petitioned the Court for an award of class counsel fees totaling $193,552,383.68.  This request was later amended and on May 17, 2016, the Court entered an order granting the joint petition for a global award of attorneys' fees and costs totaling $192,981,363.35. [Doc. No. 20257].  The Attorney Fee Reconciliation prepared by Philip Garrett CPA indicates that, as of February 28, 2016, the full amount available for payment of attorneys' fees and costs totals $233,078,270.33.  The FC values the benefits created by this litigation as $1,120,313,305.90. [Doc. No. 20290-4, at 49]. Thus, the percentage of the benefit awarded by the Court is 17 percent, if measured by the net amount approved for payment of fees, or 21 percent if measured by the gross attorneys' fees received for distribution.

### E.  <u>The Voluntary Payment Order</u>

The Court's Voluntary Payment Order [Doc. No. 8545] required settling parties to voluntarily deposit with the Court 17 percent of all settlement proceeds.  Ultimately, $3,332,058.62 was deposited with the Court pursuant to this Order.  Class Counsel paid

---

Settlement Class. The Court approved  the Coastal Settlement Agreement, inclusive of that specific term; however, payment of only half of that amount has occurred and the proposed cost stipend will not satisfy the requirement of the Coastal Settlement Agreement.

$908,227.96 to the Court pursuant to the Voluntary Payment Order for common benefit. [Doc. No. 17368].

## II.  THE METHODOLOGY FOR DETERMINING COMMON BENEFIT FEES

### A.  Generally

The use of a common fund to pay attorneys' fees in class action settlements has a long lineage. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The method of calculating the fees in common fund cases, however, is unsettled in the Fifth Circuit as it is the only circuit to not have expressly adopted the percentage method in which the court assigns an appropriate percentage of the overall recovery award as a reasonable attorneys' fee. *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 651 (E.D. La. 2010) (citing Manual for Complex Litigation (Fourth) § 14.121 (2004)). District courts in the Fifth Circuit instead commonly use the 'blended percentage method." *See, e.g., Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 860 (E.D. La. 2007). Under this approach, the court first establishes a benchmark fee by referencing the percentage method and adjusts this amount upward or downward based on factors articulated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See In re Vioxx Prods. Liab. Litig.*, MDL 1657, 2013 WL 5295707, at * 3 (E.D. La. Sept. 18, 2013). The court next conducts a rough lodestar analysis to "cross-check" the reasonableness of the fee award. *Id.*; *Turner*, 472 F. Supp. 2d at 861.

Here, the Court granted the joint petition for a global award of attorneys' fees and costs in the amount of $192,981,363.35. [Doc. No. 20257].  The Attorney Fee Reconciliation disclosed the full amount available for payment of attorneys' fees and costs as $233,078,270.33. Class Counsel submit that the balance of their fees and costs are appropriately payable from the fee fund pursuant to the Coastal Settlement Agreement, the Knauf Term Sheet and the Levin Letter.

**B.  Valuation of the Benefit Obtained**

Based upon data provided by BrownGreer, the actual recovery amount for Villa Lago claimants from the Class Action Settlements is $26,001,006.26.  Mason Decl., ¶ 11. If the fees scheduled to be paid to Class Counsel are included, the benefit would be $29,095,644.26. *Id.* The total benefit to Villa Lago claimants must also include the benefits of $16,126,375.25 obtained by the Coastal Settlement.  *See* Coastal Settlement, Exhibit A.  Thus, without including the additional fees Class Counsel request from the Knauf settlement, the total value of the benefit obtained is $45,220,019.51. *Id.*, ¶ 11.

**C.  The Benchmark Percentage**

Class Counsel submit the appropriate percentage for a fee award is 21 percent.  This percentage is consistent with the 22 "blended" percentage requested by the PSC with its Global Fee Petition and approved by this court.  It is also consistent with the total amount available in this case to pay fees and costs relative to the benefit obtained (Opposition Brf. at 6), also 21 percent. Finally, it is consistent with the 20 percent the parties agreed and allocated with respect to the non-Knauf portion of the Coastal Settlement.

Indeed, the Plaintiffs' Steering Committee here argues that a fee award in the Banner and Global Settlements of as much as 32 percent is fair and reasonable for work performed in the Chinese Drywall MDL. The fee of 21 percent Class Counsel seeks here is significantly less than 32 percent  and well-below the benchmark fee in the Fifth Circuit. *See In re Vioxx Products Liab. Litig.*, 2013 WL 5295707, at * 3-4 (citing Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Award,* 7 J. Empirical Legal Stud. 811, 833 (2010); *Turner*, 472 F. Supp. 2d at 863.

III.   **ARGUMENT**

The Court previously approved a partial payment of fees from the non-Knauf portion of the Coastal Settlement based on a benchmark percentage of 20 percent. A payment of fees from the Banner Settlement of **$500,505.05** and of fees from the Global Settlement of **$460,800.00** were included in that calculation and should now be approved for all the same reasons set forth in Class Counsel's prior Motion for an Award of Attorneys' Fees and Reimbursement of Expenses to Settlement Class Counsel (Dec. 20, 2013), incorporated herein by reference. [Doc. No. 17320]

The pending request for an additional payment of 21 percent of the $26,001.006.22 benefit obtained for the Villa Lago units from the class settlements (or **$5,460,211.31**) is eminently fair and reasonable for the reasons set forth below.

### A.  The *Johnson* Factors Support the Requested Fee Award

In *Johnson*, the Fifth Circuit articulated the following twelve factors to ensure "a reasonable fee": (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases. *Id*. at 717-720; *Union Asset Mgmt. Holding A.G. v. Dell, Inc.,* 669 F.3d 632, 642, n. 25 (5th Cir.2012). Although courts are to address the *Johnson* factors, "rarely are all the *Johnson* factors applicable;

9

this is particularly so in a common fund situation." *Di Giacomo v. Plains All Am. Pipeline*, No.

A.H.-99-4137 and No. A.H.-99-4212, 2001 WL 34633373, at * 9 (S.D. Tex. Dec. 19, 2001).

   1.  **The Time and Labor Required; Time Limitations Imposed By the Client or the Circumstance the Preclusion of Other Employment by the Attorney Due to Acceptance of the Case.**

   The work performed by Class Counsel was in many respects co-extensive with the work done by individual counsel claims within MDL 2047, but Class Counsel also performed substantially more work as this was one of the few cases within the MDL that was independently litigated and negotiated to resolution. In particular, Class Counsel: (1) conducted significant independent investigation and litigation prior to settlement; (2) negotiated the settlement during multiple mediations, in Florida and Louisiana, over multiple days; (3) independently handled gaining preliminary and final approval of the Coastal Settlement Agreement, including independently handling class notice and all hearings related to approval; and, (4) administered the settlement, including hosting "town hall" meetings, appointing a receiver to handle foreclosed units, and other significant coordination with the general contractor for a year-long remediation.

   As the previously submitted affirmations demonstrate, the hours and rates claimed by Class Counsel are reasonable and fully support the fee request. Class Counsel worked collaboratively on a complex case with significant discovery and motion practice, spending a total of greater than 8,500 hours.   This case was hotly contested from the start through the date that the settlement was reached. Hours were spent on a wide variety of necessary activities in this litigation, including discovery, research, briefing, and Court appearances. *See* Mason Decl., Exhibit 4 (Declaration of Gary E. Mason in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses to Settlement Class Counsel, at ¶ 6 (Dec. 10,

2013) ) and Exhibit 5 (Declaration of Gregory S. Weiss in Support of Plaintiffs' Motion for an Award of Attorneys' Fees). Moreover, Plaintiffs' counsel exercised reasonable judgment insofar as they did not incur unnecessary time or duplicate effort. *Id*. In addition, Settlement Class Counsel remained heavily involved in the remediation of Villa Lago. This process took over a year and required extensive client counseling and coordination by Class Counsel.

Class counsel are all affiliated with small firms. Thus, they must exercise utmost discretion before taking on a matter, knowing that it will require expending significant energy and scarce resources. Here, the attention required to diligently and properly litigate issues of first impression on a class-wide basis required plaintiffs to forego profitable work over several years.

### 2.      Novelty and difficulty of the issues presented.

This case was exceedingly complex, implicating wide-ranging legal issues. Although Class Counsel have always believed in the merits of the case against the Defendants and in their ability to prevail, they recognized that Plaintiffs would face serious obstacles to establishing both liability and damages should the cases proceed to trial. For instance, Coastal agued that Plaintiffs' causes of action in tort for economic damages against it should be barred because Plaintiffs are in privity with Coastal and are seeking damages related to the repair or replacement of their homes for which recovery in tort is unavailable.[8] In addition, Coastal argued that privity bars Plaintiffs' claim for breach of implied warranty of fitness and Chinese drywall is not a product upon which a strict liability claim may be based.[9] Coastal also proffered complete legal defenses from the language of the contract for construction of Villa Lago. Another obstacle to Plaintiffs' recovery was the existence of judicial decisions denying Plaintiffs' claims under

---

[8] *See* Defendant Coastal Construction of South Florida, Inc.'s Answer and Affirmative Defenses, March 8, 2010,Case No. 50 2009CA032471 (Cir. Ct. Palm Beach County).
[9] *Id*.

insurance policies containing pollution exclusion clauses.[10] The legal obstacles that Class

Counsel faced provide further justification for the modest fee award sought here.

### 3. Skill required to perform the legal; The Experience, Reputation and Ability of the Attorneys; Whether the Fee is Fixed or Contingent.

Class Counsel adeptly navigated the complex issues, proffered multiple sophisticated

legal theories and argued against complex and potentially complete defenses to the claims,

reviewed complex and voluminous documents and conducted numerous multi-party mediations.

Settlement Class Counsel successfully litigated other consumer class actions. These and other

successes illustrating Plaintiffs' experience and ability are enumerated in Plaintiffs' resumes,

attached to the Joint Motion for an Order (1) Preliminarily Approving Settlement Agreement

Against Coastal Construction of South Florida, Inc., Related to Villa Lago at Renaissance

Commons in MDL 2047; (2) Conditionally Certifying a Settlement Class; (3) Approving the

form of Notice and Authorizing the Dissemination of the Notice; (4) Scheduling a Fairness

Hearing; and (5) Staying the Litigation Against Coastal Construction of South Florida, Inc.,

April 8, 2013. [D.E. 16741-4] As a matter of judicial economy that pleading is incorporated

herein by reference.

The Plaintiffs' Steering Committee argue for a fee award in the Banner and Global

Settlements of 32 percent as fair and reasonable for work performed in the Chinese Drywall

---

[10] See e.g. Granite State Ins. Co. v. Am. Bldg. Materials, Inc., No. 8:10-1542, 2011 WL 6025655 (M.D. Fla. Dec. 5, 2011); Vintage Props., Inc. v. Mid-Continent Cas. Co., 10-cv-80836 (S.D. Fla. Aug. 23, 2011); CDC Builders, Inc. v. Amerisure Mut. Ins. Co., No. 10-21678, 2011 WL 4454937 (S.D. Fla. Aug. 16, 2011).; FCCI Ins. Co. v. Swedberg Enter., Inc. d/b/a Florida Drywall, 51 2010 CA 005680 (6th Jud. Cir. Ct. Pasco Cty., Fla. Oct. 7, 2011); FCCI Ins. Co. v. S3 Enter., Inc., 10-CA- 2850 (20th Jud. Cir. Ct. Lee Cty., Fla. Sept. 16, 2011); FCCI Commercial Ins. Co. v. Residential Drywall, Inc., 10-23495 (13th Jud. Cir. Ct. Hillsborough Cty., Fla. Sept. 7, 2011); FCCI Advantage Ins. Co. v. Gulfcoast Eng'r, LLC, 10-CA-2862 (20th Jud. Cir. Ct. Lee Cty., Fla. Aug. 8, 2011); FCCI Commercial Ins. Co. v. Shirley Constr. & Drywall, Inc., 102979-CA (20th Jud. Cir. Ct. Charlotte Cty., Fla. Aug. 1, 2011); FCCI Commercial Ins. Co. v. S.D. & Assocs., Inc., 10-29152-18 (17th Jud. Cir. Ct. Broward Cty., Fla. Jul. 20, 2011); FCCI Commercial Ins. Co. v. MDW Drywall, Inc. f/k/a McCoy Drywall, 10-CA-7389 (12th Jud. Cir. Ct., Sarasota Cty., Fla. Jul. 6, 2011); FCCI Commercial Ins. Co. v. Ocean Constr., Inc., 10-CA-2841 (20th Jud. Cir. Ct., Lee Cty. Fla. Jun. 6, 2011); FCCI Commercial Ins. Co. v. Al Brothers, Inc., 10-CA-2840 (20th Jud. Cir. Ct., Lee Cty., Fla. Apr. 19, 2011).

MDL. The 20 percent fee Class Counsel seeks here is significantly less than 32 percent, and well-below the benchmark fee in the Fifth Circuit. *See In re Vioxx Products Liab. Litig.*, 2013 WL 5295707, at * 3-4 (citing Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Award,* 7 J. Empirical Legal Stud. 811, 833 (2010); *Turner*, 472 F. Supp. 2d at 863.

Examination of this factor is intended to "demonstrat[e] the attorney's fee expectations when he accepted the case." *Johnson*, 488 F.2d at 718. Plaintiffs took the case on a contingent fee basis and, therefore, "understood that [they were] embarking on complex, potentially expensive and lengthy litigation. Recovery was not assured." *King v. United SA Fed. Credit Union*, 744 F. Supp. 2d 607, 615 (W.D. Tex. 2010). This factor, too, confirms that a 21 percent benchmark is reasonable here. *See Klein v O'Neal, Inc.*, 705 F. Supp. 2d 632, 678 (N.D. Tenn. 2010) (finding that the contingent nature of the work favored an increase in the benchmark percentage).

### 4.   The Amount Involved and the Results Obtained.

The United States Supreme Court and the Fifth Circuit have held that "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *In re Enron Corp. Sec., Derivatives & ERISA Litig.*, 586 F. Supp. 2d 732, 796 (S.D. Tex. 2008) (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992); *Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1047 (5th Cir. 1998)).

The settlement created funds that completely remediate all Residences in this 328-unit, two building condominium development, containing reactive Chinese Drywall, regardless of the manufacturer of the Chinese Drywall. As a direct result of the Coastal Settlement and the Class Action Settlements, all Villa Lago units with corrosive Chinese Drywall have been remediated,

including both Knauf units and non-Knauf units. In addition, current and prior non-Knauf unit owners received the same or comparable "soft cost" benefits as current and prior Knauf unit owners.

### 5.  The undesirability of the case.

"Class action cases often carry with them elevated risks, a requirement of lengthy investigation through informal discovery, and a possibility of no recovery, all of which speak to the undesirability of such a case." *In re Dell Inc.,* No. 06-726, 2010 WL 2371834, at * 19 (W.D. Tex. June 11, 2010). Here, the complexity of the class action litigation and the uncertainty of contingency-based work confirm the reasonableness of Plaintiffs' fee request.

### 6.  Awards in similar cases.

In its discussion above of the benchmark fee, Plaintiffs establish that their request of 21 percent is appreciably below fees granted in similar cases.  The total fee requested by Class for this matter is **$8,131,211.80**.[11]  This represents 17 percent of the total benefit obtained for the Coastal Settlement Class.[12]  The Court previously awarded 17 percent of the benefit as a global award of attorneys' fees and costs, *see, supra,* I.D. at 6, further showing the reasonableness of the fee request. This percentage is also identical to the percentage of the actual compensation to all claimants requested by the Fee Committee for a common benefit fee.[13]

### B.  **Lodestar Cross-Check**

Courts conduct a cross-check by first analyzing the request under the lodestar method of multiplying the recorded hours worked by a reasonable hourly rate. *See, e.g., Klein*, 705 F.

---

[11] $1,709,695.58 prior award + $6,421,516.36 = $8,131,211.80
[12] $8,131,211.80 / $45,220,019.51 = .17
[13] As reported by BrownGreer, the "Total Amount of Recovery Paid to All Claimants" is $658,713,629.62. The common benefit fee request of $114,581,308.82  therefore represents 17 percent of the total recovery to all claimants.

Supp. 2d at 679 (citing *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996)). Then,

courts assess the reasonableness of Plaintiffs' fee request by determining the multiple required to

reach plaintiffs' proposed fee and assessing whether factors unique to the case merit the multiple.

*In re Enron,* 586 F. Supp. 2d at 751.

Class Counsel previously provided records of billable hours expended on this

litigation from inception to December 3, 2013. The total of all attorneys' time was greater than

8,500 hours. These hours are reasonable and commensurate with other complex class actions,

many of which Class Counsel have themselves litigated. Based on precedent as well

as the experience of counsel, a reasonable rate for attorneys' time for a class action of this kind is

$500 per hour. *See* Affidavits attached to Motion for Fees. In ascertaining the reasonable hourly

rate, courts examine the reasonable hourly rate for attorneys of a similar caliber practicing in the

community. *In re OCA, Inc. Secs. & Derivative Litig.,* No. 05-2165, 2009 WL 512081, at * 25

(E.D. La. March 2, 2009). The court must consider the attorneys' regular rates in assessing the

reasonableness of the hourly rate claimed. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328

(5th Cir. 1995). When an attorney requests a rate within the range of prevailing market rates and

that rate is not contested, it is *prima facie* reasonable. *Id.* at 328.

Here, multiplying the hourly rate by the number of hours worked results in a lodestar fee

of greater than $4,250,000 (i.e. $500 per hour x (at least) 8500 total hours). This does not include

the significant amount of time Class Counsel spent in connection with the year-long remediation.

"The purpose of a lodestar cross-check of the results of a percentage fee award is to avoid

windfall fees, i.e., to ensure that the percentage approach does not lead to a fee that represents an

extraordinary lodestar multiple." *In re Enron,* 586 F. Supp. 2d at 751 (internal quotation marks

omitted). In order to assess the reasonableness of the multiple, courts examine the *Johnson*

factors. *See id.* at 752; *Turner*, 472 F. Supp. 2d at 869. Here, based on the overall fee request of **$7,429,826.95** the multiplier Class Counsel's lodestar  of $4,250,000 is less than **1.7.** This multiple is well within the range of multiples for class action settlements in this Circuit. *See, e.g., Forbush*, 98 F.3d at 824 (affirming district court's use of multiplier of two); *Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 751 (E.D. Tenn. 2007) (applying a multiplier of 2.26); *Turner*, 472 F. Supp. 2d at 869 ("[T]he Court finds that a lodestar multiplier range of 2.5 to 3.5 would be appropriate and reasonable in this case."); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1133 (W. D. La. 1997) ("Multipliers ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied."); *Garza v. Sporting Goods Props., Inc.*, No. SA-93-CA-108, 1996 WL 56247, at * 33 (W.D. Tex. Feb. 6, 1996) ("The range of multipliers in large and complicated class actions have ranged from 2.26 to 4.5."). Consequently, the Court should conclude that the fee award requested is eminently fair and reasonable.

## IV.  CLASS COUNSELS' REQUEST FOR REIMBURSEMENT OF EXPENSES SHOULD BE APPROVED

Settlement Class Counsel requests reimbursement of expenses as contemplated in the Coastal Settlement in the amount of $380,946.00,   less **$147,950,  or $232,096.**  Half the expenses were previously approved for reimbursement as fair and reasonable.  The balance should be reimbursed at this time from the global fee and costs fund.

## V.  COMMON BENEFIT FEE AND COST CONTRIBUTION

Class Counsel paid $908,227.96 to the Voluntary Assessment Fund.  For the reasons set forth below and in a separate memorandum, incorporated herein by reference, Class Counsel contend that a fair and reasonable "common benefit" fee in this MDL, and in this class action in particular, should be based on a benchmark of 6.5 percent. When applied to the value of the Coastal Settlement of $45,220,019.51, a fair and reasonable fee for the PSC in this matter would

be $2,939,301.23.    Class Counsel submit that the balance of the common benefit fee ($2,0312,073.27) should be awarded to the PSC from the fee fund.

## VI.    CLASS COUNSELS' OBJECTION TO FC PROPOSED FEE

Class Counsel object to the FC's proposed allocation of the global fee award as it appears that the FC intends to disregard this Court's approval of the Coastal Settlement Agreement, certification of the Coastal Settlement Class and appointment of the undersigned as Class Counsel, and instead treat Class Counsel as Individual Counsel and include their remaining fee within the global fee allocation. As argued above, Class Counsel is entitled to attorneys' fees and costs independent of the FC process based upon this Court's prior order, the Coastal Settlement Agreement and Levin Letter. To the extent the Court intends to allocate a fee for Coastal Class Counsel as Individual Counsel, and Class Counsel is otherwise unable to secure their full fee herein due to the proposed allocation, the common benefit fee should be adjusted and/or the Voluntary Payment should be returned to Class Counsel so that full compensation can be obtained.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Motion for a Final Award of Attorneys' Fees and Reimbursement of Costs should be granted in its entirety.

Dated: June 28, 2016

Respectfully submitted,

*/s/ Gary E. Mason*
Gary E. Mason
WHITFIELD BRYSON & MASON LLP
5101 Wisconsin Avenue NW, Suite 305
Washington, D.C. 20016
Telephone: (202) 429-2290
Facsimile: (202) 429-2294
gmason@wbmllp.com

17

Joel R. Rhine
RHINE LAW FIRM
1612 Military Cutoff Rd
Suite 300
Wilmington, NC 28403
Telephone: (910) 772-9960
Facsimile: (910) 772-9062
jrr@rhinelawfirm.com

Adam C. Linkhorst, Esq.
LINKHORST & HOCKIN, P.A.
515 North Flagler Drive, 20th Floor
West Palm Beach, Florida 33401
Telephone: (561) 832-5900
Facsimile: (954) 562-9199
alinkhorst@ciklinlubitz.com

*Counsel for the Coastal Settlement Class*

Gregory S. Weiss (Fla. Bar No. 163430)
Mracheck, Fitzgerald, Rose, Konopka & Dow, P.A.
505 S. Flagler Drive, Suite 600
West Palm Beach, FL 33401
Tel.: (561) 655-2250
Fax: (561) 655-5537
gweiss@mrachek-law.com
psymons@mrachek-law.com

*Counsel for RCR Holdings II, LLC*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and forgoing has been served upon Plaintiffs'
Liaison Counsel, Russ Herman, by U.S. Mail and email or hand delivery and email and upon all
parties by electronically uploading same to Lexis Nexis File and Serve® in accordance with Pre-
Trial Order No.: 6, and that the foregoing was electronically filed with the Clerk of Court of the
United States District Court for the Eastern District of Louisiana by using the CM/ECF System,
which will send a notice of electronic filing in accordance with procedures established in MDL
2047 on this 28th day of June, 2016.


/s/ Gary E. Mason

Gary E. Mason