**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br><br>All cases. | JUDGE ELDON FALLON<br>MAG. JUDGE WILKINSON |

**MEMORANDUM IN SUPPORT OF DOYLE LAW FIRM'S OBJECTIONS TO THE FEE COMMITTEE'S MOTION TO DETERMINE THE ALLOCATION OF THE GLOBAL FEE AWARD AS BETWEEN COMMON BENEFIT FEES AND INDIVIDUAL COUNSEL'S FEES PURSUANT TO PTO 28(F)**

The PSC Fee Committee (hereinafter "PSC") has filed a motion to determine the division of attorneys' fees held in a common fund being overseen by the Chinese Drywall Settlement Administrator, Brown Greer, PLC (Doc. 20290). The Court has determined that $192,981,363.35 is now available for distribution to attorneys. The PSC has suggested a methodology to the Court in support of their request for payment of 60+% of the fees to common benefit counsel. Such a division would be a windfall for common benefit work to a degree not seen in any other MDL to date. James V. Doyle, Jr. of Doyle Law Firm, PC (hereinafter "Doyle Firm") appears now to oppose the PSC's motion for a windfall payment in several specific ways that will result in a significant reduction in the dollar amount payable to common benefit counsel, but the objections and resulting corrections will ensure that the division of fees is consistent with the accepted practice in similar product liability MDL cases.

1

**INTRODUCTION**

MDL Number 2047 was consolidated to manage the *product liability litigation* related to Chinese-manufactured drywall. Since 2011, there have been multiple settlements, both in this MDL and in state courts that have allowed attorneys' fees to accumulate in various qualified settlement funds.  The terms of these settlements have not been uniform and the methodology for calculating attorneys' fees and expenses have varied in almost every instance; some settlements have utilized a percentage of gross recovery method[1]; one settlement included a lump-sum payment of fees and expenses with no provision for additional fees or expenses to be paid[2]; and, one settlement utilized a flat fee per qualifying settled case[3].

Since 2011, this Court has approved multiple payments to the PSC from the accumulated fees on deposit in the qualified settlement funds.  In fact, this Court has approved the payment of all accrued expenses (over $40 million to date) submitted by the PSC through December 31, 2013, the cutoff date for KPT-related expenses specified in PTO 28.  Since that cutoff date, there have been no KPT-related litigation expenses incurred by the PSC as all KPT-related claims through Omni XVIII have now been settled and the administrative cost of the Chinese Drywall Settlement Administrator have been paid by the settling defendants; however, in 2015, the PSC moved this Court for a "set aside" of $10 million from the KPT-related attorneys' fees on deposit.  Those funds are not in the PSC's accounting and those funds are not available now for distribution or recognized as a setoff against any PSC member's payment of allocated fees.

This Court has decided that the fee division issue is now ripe and the court appears ready to decide on a fair and reasonable allocation under the specific circumstances of this litigation.

---

[1]  See Global Banner and INEX settlement.
[2] See 2011 KPT Settlement.
[3] See Post-2011 KPT Settlement Agreement reached in 2013.

This Court must now use its independent judgment to determine the reasonableness of an award of attorney's fees. *See* Fed. R. Civ. P. 23, advisory committee note of 2003 ("whether or not there are formal objections, the court must determine whether a fee award is justified and, if so, set a reasonable fee"); *see also Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980) ("the District Court abdicated its responsibility to assess the reasonableness of attorneys' fees proposed under a settlement of a class action, and its approval of the settlement must be reversed on this ground alone"). Doyle Firm does not oppose a fair and reasonable payment to common benefit counsel; however, the fee of over $119 million sought by the PSC (over 60% of the funds on deposit) is excessive and could not possibly meet the definition of fair or reasonable under any circumstances if the correct legal standard and cross-checks are utilized by this court. It would be a windfall for the common benefit counsel, comprised primarily of PSC members.

The following objections are meant to point out several areas where the PSC's motion and memorandum is flawed; consequently, Doyle Firm contends this court should reduce the gross common benefit payment significantly to an amount under $40 million if it intends to be consistent with other similar product liability lawsuits consolidated as MDLs in federal court.

## A.    Percentage of Fund Method

The full attorneys' fee fund is now established and it will not expand due to the variability of any settlement reached to date. It is a closed fund. Apart from the $10 million "set aside," now in the hands of the PSC, no additional funds are missing in the PSC's motion or Phil Garrett's accounting to the court. Because the full fund is established, containing both individual and common benefit fees, this Court is positioned to decide the split  - or the percentage of the fund due to be paid to common benefit counsel.  It is one way of determining common benefit fess and the only method that makes sense under the current circumstances.

3

This exact methodology was utilized in this Court's handling of the Vioxx litigation, resulting in a 20.9% payment of all attorneys' fees to common benefit counsel. *See* Exhibit A for additional information regarding other product liability MDL common benefit orders.

The other methodologies (percentage of gross recovery and lodestar) will only serve as "cross-checks." Utilization of a percentage method is complicated and makes sense only if this court is cognizant about what the percentage does and does not represent. The percentage of fund paid to common benefit counsel is essentially a tax on individual plaintiffs' attorneys. The court has discretion to devise a methodology that is fair and equitable; however, the Doyle Firm urges this Court to keep in mind that this exercise is a zero sum game and all fees paid to common benefit counsel are necessarily taxed solely against individual counsel, not clients or defendants. Through this prism, the court must consider whether a 60% tax is appropriate. Doyle Firm contends that a 60% tax rate is excessive by almost any definition.

**B.     Alternative Methodology:  Sliding Scale**

Some courts over the years have utilized a sliding scale for common benefit fees in order to dampen the payment of excessive fees. This methodology involves paying a progressively higher or lower percentage of a common fund to common benefit counsel as the size of the fund increases. A decreasing percentage of the common fund is certainly one method that this court should entertain as it considers its ruling. *See fn. 5, infra*, for citations.

**C.     "Cross-Checks:" Percentage of Funds & Lodestar Methods.**

There are two broadly-accepted methods for determining the amount of a reasonable award of attorney's fees. The first is known as the "percentage of funds" approach. This method involves calculating a fee based on the gross monetary recovery. The size of the percentage is adjusted upwards or downwards from a presumptive starting point, depending on a number of

4

relevant factors (i.e., *Johnson* Factors). The Fifth Circuit has ruled that its district courts have discretion to use either the percentage of funds approach or a lodestar approach. *See In re Combustion, Inc.*, 968 F. Supp. 1116, 1135 (W.D. La. 1997) (although Fifth circuit law allows use of either lodestar or percentage of fund methods in common fund cases, most district courts in this circuit use the percentage of funds method).

A number of courts have favored lodestar as a backup or cross-check on the percentage of fund method when fees might be excessive. *See, e.g., Bowling v. Pfizer, Inc*., 102 F.3d 777, 780 (6th Cir. 1996) (upholding a district court fee award based on a percentage of the common fund and then cross-checking against the class counsel's lodestar); *In re Gen. Motors Corp*., 55 F. 3d at 820 (finding it "sensible for a court to use a second method of fee approval to cross check its conclusion under the first method").  The lodestar is problematic in settlements involving a common fund, because it tempts lawyers to run up their hours, and compels district courts to perform line-item fee audits.  *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 121 (2nd Cir. 2005) (district court was within its discretion in utilizing percentage method); *see also In re Rite Aid Corp. Sec. Litig*. 396 F.3d 294, 300 (3rd. Cir. 2005) (percentage of recovery method is usually favored in common fund cases because it rewards counsel for success and penalizes counsel for failure).

For the precise reasons articulated in *Rite Aid*, in addition to the fact that all common benefit time data is under seal, this court is likely best served by disregarding the lodestar amount proposed by the PSC and utilizing the percentage of recovery method for its cross check of the PSC's percentage of recovery fee request.  Unless the court is interested in appointing a special master to scrutinize the lodestar data, it should not be considered at this point as it is inherently unreliable and undoubtedly filled with entries unrelated to the KPT litigation or it is

likely to contain excessive, duplicative, or insufficiently described activity.  Either way, those improper entries must be struck and the lodestar recalculated (downward).

**I.      Doyle Firm Objects to the PSC's Suggestion That A Benchmark of 8% Is Fair, Reasonable, And Consistent With Similar Product Liability Cases.**

The PSC has suggested an "appropriate" benchmark percentage of 8% as a starting point for assessing common benefit fees, before application of the *Johnson* Factors[4].  Only the Ninth and Third Circuits have adopted a standard initial set aside for common benefit fees and expenses. The Fifth Circuit has not adopted a "benchmark" of 8% to guide its MDLs regarding an initial set aside of the gross monetary recovery.  Instead, MDLs sitting within the Fifth Circuit have attempted to allocate fees to common benefit counsel in a way that is fair, equitable and consistent with other like cases.  A "blended" methodology, utilizing a percentage of fund starting point with a lodestar cross-check, has gained traction in the Fifth Circuit.  *See Common benefit Fees*, 74 La. L. Rev. at 381.  But, for the reasons stated above, the lodestar amount must be disregarded at this point and only the percentage of the gross monetary recovery is a reasonable cross-check of the PSC's request.

The application of a benchmark percentage for unusually large funds may result in a windfall for the common benefit or lead counsel work.  *See In re Washington Pub. Power Supply Sys. Litig.*, 19 F.3d 1291, 1297-98 (9th Cir. 1994); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 350-351 & nn. 75, 76 (N.D. Ga. 1993) and cases cited therein (listing declining percentages based on case law).  Where a windfall payment is a concern, some courts have used a sliding scale, with the percentage decreasing as the "magnitude of the fund increases."  *See Manual for Complex Litigation* (4th ed. 2011), §14.121 at Page 260 for

---

[4] *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

applicable cases[5].

      As this is a product liability-based action, the appropriate comparisons are with other product liability MDLs to determine the correct range for a starting point.   In virtually all product liability MDLs, the common fund created with settlement funds occurs when a percentage of the gross monetary recovery is set aside in a segregated fund for payment of common benefit fees and expenses at a later date – fees accumulate on a rolling basis, as the cases individually settle.  Although MDL-2047 differs in this respect – no attorneys' fees have been released to either individual counsel or common benefit counsel to date (only $40 million of expenses have been paid to the PSC) – the result is essentially the same; a fund containing fees (in this case, both individual counsel and common benefit fees that are commingled) must be divided by order of this Court so that disbursement can finally take place for all attorneys.

      Exhibit A to this memorandum is a compilation of set asides approved by various federal product liability MDL courts across this nation. In this court's immediate exercise, valuation of the various settlements is only useful for the purpose of fee division, since the attorneys' fee fund has accumulated a net of over $192 million[6] based on the terms of each settlement reached prior to 2014.  All fees from all settlements have been paid into the qualified settlement funds (now fully consolidated into one account) and only common benefit expenses have been paid (over $40 million), leaving only $192, 981,363.35 for division among the interested attorneys.

---

[5] *See In re First Fid. Bancorporation Sec. Litig*., 750 F.Supp. 160 (D.N.J. 1990) (30% of the first $10 million, 20% of the next $10 million, 10% of any recovery greater than $20 million); *Sala v. Nat'l R.R. Passenger Corp*. 128 F.R.D. 210 (E.D. Pa. 1989) (33% of first $1 million, 30% of amount between $1 million and $2 million); The Third Circuit 2001 Task Force identified adherents of both decreasing and increasing percentages and concluded that either approach might reasonably be used. *Third circuit 2001 Task Force Report on Selection of Class Counsel*, 74 Temp. L. Rev. 689, 707 (2001).

[6] Over $40 million of the attorneys' fees have been paid to the PSC for expenses, including a $10 million "set aside" in 2015 now being used to fund non-Knauf litigation activities expenses.

As justification for the windfall payment it seeks, the PSC is attempting to convince this Court that a "benchmark" of 8% is fair and reasonable starting point consistent with 5th Circuit precedent in *Turner* and *Vioxx*. Both cases, as well as the other class actions and non-product liability settlements, are included in the PSC memorandum as part of their effort to mislead this Court. The chart included on Pages 51-52 of the PSC memorandum is filled with securities, antitrust, and ERISA-related settlements, not product liability settlements.

Exhibit A to this memorandum is a chart of fee and expense common benefit set aside orders in other similar product liability MDLs. For the Court's convenience, Exhibit A includes separate columns for both fees and expenses. Based on the common benefit orders issued in the similar product liability MDLs detailed in Exhibit A, the consensus is nowhere near an 8% allocation for fees; instead, the consensus tends to indicate that a mean set aside of 3.5% of the gross monetary recovery is appropriate for attorneys' fees.

Based on the consensus among other product liability MDLs, Doyle Firm requests that this honorable court adjust the PSC's starting point ("benchmark") downward from 8% to 3.5% of the gross monetary recovery to comport with the rulings in similar MDL cases. The resulting gross fee would be $39,210,965.71 (3.5% of $1,120,313,305.90) or 20.3% of fees in the common fund. And, because the PSC has already received $10 million as a "set aside" which is now being used to fund non-Knauf-related litigation activity, it should be considered an offset. The net resulting payment to common benefit counsel should be $29, 210,965.71, after the $10 million set aside is applied as an offset.

## II.    Doyle Firm Objects To The PSC's Use Of Non-Knauf Hourly Entries In Their Lodestar "Cross-Check" Of Their Fee Request.

The PSC has suggested that a time-based fee of $131,588,525.35 would result for the calendar period addressed in the FC fee request. This is their proposed figure for a lodestar

"cross-check."  In the past, some courts utilized a lodestar figure for comparison and to evaluate the reasonableness of a suggested fee.  In this instance, the Court should not utilize this figure without significant additional review. The PSC has previously disclosed that much of the time they're claiming is related to non-Knauf Chinese drywall litigation; thus, it is wholly inapplicable and due to be disregarded.  Their unverified lodestar figure is meaningless at this point.

As the PSC's time submissions were filed directly with Mr. Garrett and virtually all underlying data related to these time submissions are under seal, Doyle Firm urges this court to either: 1) appoint a special master to evaluate all common benefit counsel time entries for relatedness to the Knauf litigation (and to strike all entries that are excessive, duplicative, or insufficiently described); or 2) disregard their hourly entries as a cross check entirely.  Mr. Phil Garrett is a CPA, not a lawyer, and certainly not an expert equipped to evaluate the time entries in a common benefit fee petition context.   Moreover, there is no evidence that Mr. Garrett was ever tasked with scrutinizing the time entries he received in any way.  Therefore, this Court can gain nothing from the PSC lodestar calculation until the time entries are strictly scrutinized by a special master.

## III.   Doyle Firm Objects to PSC's Misapplication Of The *Johnson* Factors As No Enhancement  Is Warranted.

The Court instructed the PSC to consider the *Johnson* Factors[7] and recommend whether an enhancement is appropriate in this case.  To the surprise of no one, the PSC determined that an enhancement was in fact appropriate.  Doyle Firm disagrees and offers the following independent application of the *Johnson* Factors for this Court's consideration:

---

[7] *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

## A.     Time and Labor Required For The Legal Services In Question

The PSC claims a total of 232,309.35 hours purportedly related to Knauf litigation.  As stated in the previous objection, none of these hours have been verified by a special master review.  Mr. Garrett is a CPA and is in no way qualified to scrutinize the submissions by common benefit counsel.  In addition, the PSC's own memorandum raises serious concerns regarding the applicability of the hourly total.  The PSC admits that they included non-Knauf entries.  See Doc. 20290-4 at Page 23 (discussion of *Germano* and *North River* cases by PSC – both are non-Knauf).   So, at this point, the court cannot determine whether the time entries support any adjustment as the PSC suggests.

Additionally, the PSC spends considerable time in this section trying to convince the court that doing their job (i.e., negotiating and reaching settlements) is in some way extraordinary and deserving of an enhancement. Nothing in the PSC rationale suggests that the time, effort or labor expended in this litigation is extraordinary; thus, no upward adjustment or enhancement should be approved based on this factor.

## B.     Novelty and Difficulty of the Issues

This case presented no particularly novel or difficult issues.  These are straight-forward product liability lawsuits. Therefore, there should be no upward adjustment based on this factor.

## C.     Skill Required to Perform the Legal Services Properly

Class counsel participated in the negotiation of several settlements after filing the civil actions and participating in the trial of one KPT-related case (*Hernandez*).  The settlement agreements are not particularly complex and the terms of each enable the settling plaintiffs to recover some, but not all, compensatory damages.  Nothing about the skill displayed by the PSC members, class counsel, or common benefit counsel suggests that extraordinary skill was

necessary or utilized to achieve the results memorialized in the settlement agreements or the verdict achieved at trial; therefore, there should be no upward adjustment based on this factor.

**D.      Preclusion of Other Employment**

PSC members were active in other litigation during the two years (2009-2011) that this litigation was active and "uncertain."  No affidavits by the movants have been offered regarding this factor and the time entries under seal in the possession of Phil Garrett, CPA, cannot be properly scrutinized at this point by anyone.  Doyle Firm urges this court to appoint a special master to scrutinize the time entries submitted by the common benefit petitioners for relatedness to the settlements under consideration, as well as for excessiveness, duplication, or insufficient documentation or description.

Without certification by a special master after sufficient scrutiny, this factor cannot be the basis of an upward adjustment.

**E.      Customary Fee**

The customary fee in this type of litigation (i.e., consolidated product liability litigation) can be found on Exhibit A to this memorandum.  Doyle Firm has previously suggested that 3.5% of the gross monetary recovery is a proper cross-check of the percentage of fund method. Consequently, common benefit counsel should receive $29, 210,965.71 of the fees on deposit after the $10 million offset is applied.

The PSC and common benefit counsel negotiated a series of settlements that resulted in partial compensatory damages payable to settling plaintiffs.  The customary fee of 3.5% should be more than adequate to compensate them for the results achieved and no upward adjustment is warranted based on this factor.

**F.     Whether the Fee is Fixed or Contingent**

Doyle Firm agrees with the PSC – no upward adjustment is warranted based on this factor.

**G.     Time Limitations**

There were no significant or compelling time limitations that forced class counsel, PSC members, and other non-PSC common benefit attorneys to increase their allocation of lawyer resources to this litigation.  No affidavits by the movants have been offered regarding this factor and the time entries under seal and in the possession of Phil Garrett, CPA, cannot be properly scrutinized at this point by anyone.  Doyle Firm urges this court to appoint a special master to scrutinize the time entries submitted by the common benefit petitioners for relatedness to the settlements under consideration, as well as for excessiveness, duplication, or insufficient documentation or description.

Without certification by a special master after sufficient scrutiny, this factor cannot be the basis of an upward adjustment.

**H.     Amount Involved and Results Obtained**

These cases were settled by agreement of the parties.  They were negotiated by class counsel, the PSC, and other non-PSC common benefit counsel – the parties now moving this court for common benefit fees. The attorneys' fees now in the consolidated attorneys' fees fund are there as a direct result of the PSC's negotiating skill; therefore, it is humorous for them to now argue that the result obtained is anything other than adequate. No upward adjustment is warranted for this factor.

**I.      Experience, Reputation and Ability**

This is a non-factor in these settlements.   The experience, reputation and ability of the PSC lawyers was considered by the Court at the outset when it appointed PSC members. Nothing about their reputation, experience or skill warrants an enhancement.

**J.      Undesirability of the Case**

Like in any litigation, there are risks; however, the risks in this litigation were minimal. The defendants responsible for the defective Knauf products that made their way into the U.S. marketplace are well capitalized and a going concern. This case was not "undesirable" and the court should not adjust the percentage of fund upward based on this factor.

**K.      Nature and Length of Professional Relationship with the Client**

Doyle Firm agrees with the PSC – no upward adjustment is warranted based on this factor.

**L.      Awards in Similar Cases**

Exhibit A to this memorandum provides this court with information regarding awards in similar product liability cases. The Court should set the initial percentage of total recovery for this case at 3.5% in order to comport with other similar MDL common benefit orders for attorneys' fees (with no appropriate deviation from this percentage due to *Johnson* Factors).   The result obtained by the PSC and other common benefit counsel is not extraordinary and the attorneys' fee fund is adequate to compensate them at a level comparable to other product liability MDL allocations.   As a reminder, all expenses have been paid to the PSC (none to individual counsel) and no further payment is sought by the PSC in their motion.

Should this Court agree with the application of the *Johnson* Factors contained herein, no upward adjustment is appropriate; thus, the PSC is due to receive a gross common benefit award

of $39,210,965.71 (3.5% of $1,120,313,305.90) or 20.3% of fees in the common fund.   And,
again, because the PSC has already received $10 million as a "set aside" which is now being
used to fund non-Knauf-related litigation activity, it should be considered an offset.  Therefore,
the net payment to common benefit counsel should be $29, 210,965.71, after the $10 million set
aside is applied as an offset.

**IV.    Doyle Firm Objects To PSC's Failure To Fully Account For The $10 million of
Knauf-Related Attorneys' Fees Taken From The Attorney Fee Fund In 2015 As A
"Set Aside" Which Is Now Being Used By The PSC For Non-Knauf Litigation
Activity.**

The PSC is in possession of $10 million of attorneys' fees taken directly from the
consolidated Knauf-related attorneys' fee fund.  It has not been used to reimburse the PSC or
common benefit counsel for expenses incurred in this litigation; rather, it has apparently been
used to fund the Taishan-related litigation activities.  Doyle Firm objects to the use of these
funds by the PSC in this manner and urges the Court to apply the $10 million as a setoff to the
gross common benefit attorneys' fee approved by this court at the conclusion of this process.

## CONCLUSION

The PSC motion now pending with this Court seeks an excessive fee that would be a
windfall to PSC and non-PSC common benefit counsel.  Other like cases (i.e., product liability
MDL cases) suggest that a 3.5% percentage of the gross monetary recovery is an appropriate
attorneys' fee.  The lodestar method is not appropriate at this time – and should the court wish to
utilize this method, appointment of a special master is necessary.  Otherwise, the unverified
hourly entries presented by the PSC are flawed and intentionally inflated; thus, the use of the
PSC's hourly figure is insufficient to calculate a lodestar for use as a cross-check.

14

Doyle Firm urges this Court to  enter an order approving a gross common benefit fee in

the amount of $39,210,965.71, but a net payment of $29, 210,965.71, after the $10 million set

aside is applied as an offset.


/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 205-414-7528
jimmy@doylefirm.com
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Doyle Law Firm's Objections to the Fee Committee's Motion To Determine The Allocation of the Global Fee Award As Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F) has been served on Plaintiffs' Liaision Counsel, Russ Herman, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 28th day of June, 2016.


/s/ *James V. Doyle, Jr.*
James V. Doyle, Jr.
DOYLE LAW FIRM, PC

16