Jim Reeves†

Matthew G. Mestayer

Of Counsel:
  Mark Lumpkin**



160 Main Street (39530)
P.O. Drawer 1388
Biloxi, MS 39533

Phone 228.374.5151
Tollfree 855.558.2977
Fax 228.374.6630
www.rmlawcall.com

April 6, 2016

†Also Licensed in Alabama

**Also Licensed in Louisiana

Mr. Dan Balhoff                                          Via email to Balhoff@pabmb.com
Perry Balhoff Mengis & Burns, LLC                             and Overnight Delivery
2141 Quail Run Drive
Baton Rouge, Louisiana   70808

   Re:   **Confidential Mediation Position Paper**
         Lauren Cortelyou/Daniel Cowart
         32793 Water View Drive East
         Loxley, Alabama 36551

Dear Dan:

       We look forward to mediating this case.  Below is a summary of our position.

       We represent Daniel Cowart and his wife Lauren Cortelyou.  They are stellar
citizens in Loxley, Alabama, a small suburb of Mobile.  Mr. Cowart has owned his own
business for nearly 35 years.  Ms. Cortelyou was formerly employed by Airbus.  They
are both active in the local community, their church, the local Waterfront Mission,
Habitat for Humanity, and run their own ministry entitled Fellowship Ministries.

       The Defendants have wrongfully denied payment of this claim asserting that the
Homeowners did not make the required reasonable inquiry pursuant to the Settlement
Agreement.  (Exhibit "1".)  Therefore, this is the sole issue in this case.  A fair review of
the record indicates that these Homeowners made any and all reasonable and
necessary inquiries that would have been expected of them under the circumstances.

       As you know, the standard as set forth in the Settlement Agreement for post-
December 9, 2011, claims says in Section IV(D) that claimants cannot recover if they
either (1) had actual knowledge or (2) failed to make a reasonable inquiry concerning
the presence of Chinese drywall at the time of purchase.

       The relevant facts are as follows:

2/27/12    Daniel Cowart purchased the subject property.  At that time, Mr. Cowart
           obtained a walk-through courtesy inspection provided by Roberts Brothers
           Realtors.  He also had an additional informal inspection by a local builder.

Mr. Dan Balhoff
April 6, 2016
Page 2


6/26/12        Mr. Cowart deeded the property to his wife, Lauren Cortelyou.

4/23/13        This office inspected the property and confirmed the presence of defective
               KPT drywall.

        First, Knauf does not content that my clients had actual knowledge of the
presence of Chinese drywall.  In fact, my clients had never heard of the defective
Chinese drywall problem at the time they purchased the home on 2/27/12.  It should be
noted that the Homeowners do not live in Florida, Mississippi or Louisiana (the states
most affected by the Chinese drywall problem.)  Rather they live in Coastal Alabama
where publicity related to the Chinese drywall has always been much less intense.  In
addition, although they did not obtain a formal inspection with regard to the Chinese
drywall, they did obtain a walk-through informal inspection from the realtor involved and
another from a local builder.  It is clear that this was reasonable under the
circumstances as they were not on notice and had no reason to demand any additional
inspections, especially one that pertained to Chinese drywall.  It is simply unreasonable
to say that they should have inspected for something of which they had no knowledge
even existed.  My clients has not one, but two, informal inspections.  Neither detected
the KPT drywall.

        Enclosed to be included for the file are the following documents:

1.      The MLS listing;
2.      The purchase agreement dated 2/27/2012, including attachments;
3.      The settlement statement for the purchase dated 3/20/12.

        Based upon the foregoing, we respectfully request a finding that the property in
question is eligible for settlement benefits and for such other and further relief to which
you find the Homeowners may be entitled.

                                        Respectfully submitted,

                                        /s/ Jim Reeves
                                        JIM REEVES

JR/khs
cc:     Rene A. Merino, Esq.
Attachments

## Joan Bowers

| | |
|---|---|
| **From:** | Merino, Rene <rmerino@bakerdonelson.com> |
| **Sent:** | Friday, January 22, 2016 12:56 PM |
| **To:** | Joan Bowers |
| **Cc:** | Dysart, Danny; Jim Reeves |
| **Subject:** | RE: CDW - CORTELYOU |

**Categories:**          PRINTED FOR JRR TO REVIEW

Hello Joan,

Pursuant to the Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants (Rec. Doc. 16978-1), it is our position that this claim is ineligible because when Cowart/Cortelyou purchased from Desocio no inspection was done. Therefore, the claimants did not make the required "reasonable inquiry" pursuant to the Settlement Agreement.

Regards,

René

**René Merino**
Attorney

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
201 St. Charles Avenue
Suite 3600
New Orleans, LA 70170
Direct: 504.566.5237
Fax: 504-585-6937
E-mail: rmerino@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
represents clients across the U.S. and abroad from offices
in Alabama, Georgia, Louisiana, Mississippi, Tennessee

1



EXHIBIT

and Washington, D.C.

 Please consider the environment before printing this e-mail.

---

**From:** Joan Bowers [mailto:jdb@rmlawcall.com]
**Sent:** Wednesday, January 20, 2016 12:55 PM
**To:** Merino, Rene
**Cc:** Dysart, Danny; Matt Divine; Jim Reeves
**Subject:** RE: CDW - CORTELYOU

Please confirm if this property has been released to MZA for inspection. Thanks

**_JOAN BOWERS – CP, PP_**
REEVES and MESTAYER PLLC
228-546-9928
www.rmlawcall.com



**From:** Joan Bowers [mailto:jdb@rmlawcall.com]
**Sent:** Monday, December 14, 2015 10:49 AM
**To:** 'Merino, Rene' <rmerino@bakerdonelson.com>
**Cc:** 'Dysart, Danny' <ddysart@bakerdonelson.com>; Matt Divine <MDivine@morse-associates.com>
**Subject:** CDW - CORTELYOU

Please confirm if this property has been released to MZA for inspection. Thanks

**_JOAN BOWERS – CP, PP_**
REEVES and MESTAYER PLLC
228-546-9928
www.rmlawcall.com



---

Under requirements imposed by the IRS, we inform you that, if any advice concerning one or more U.S. federal tax issues is contained in this communication (including in any attachments and, if this communication is by email, then in any part of the same series of emails), such advice was not intended or written by the sender or by Baker, Donelson, Bearman, Caldwell & Berkowitz, PC to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any transaction or tax-related matter addressed herein.

This electronic mail transmission may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail, so that our address record can be corrected.

JOHN A. ROBERTS, JR.
PRESIDENT

MAILING ADDRESS
P.O. Box 6217, MOBILE, AL 36660-0217





## WALK-THROUGH/SYSTEMS CHECK INSPECTION FORM

We hereby declare that we have inspected the house, the property on which it is located and the heating, air conditioning equipment, including any window units, plumbing and electrical systems and all included appliances that we are buying at _____
32793 WATERVIEW DRIVE, LOXLEY, AL 36551

this _19_ day of _MARCH_, _2012_, and that without any reservations, we accept this house, the property on which it is located and the heating, air conditioning equipment, including any window units, plumbing and electrical systems, and all included appliances in their present "AS IS" condition. We understand that Roberts Brothers DOES NOT WAR-RANT the condition of this house, the property on which it is located or any of the heating, air conditioning equipment, including any window units, plumbing and electrical systems or any appliances. We understand that the Seller(s) DOES NOT WARRANT the condition of this house, the property on which it is located or any of the heating, air conditioning equipment, including any window units, plumbing and electrical systems or any appliances, other than as stated in the purchase agreement. We also understand that the responsibility for this house, the property on which it is located and the above described systems and appliances are OUR responsibility as of the date of the closing of the sale of the house.

We further understand that the real estate agent is accompanying us on this walk-through as a courtesy, not as a person qualified to inspect, detect or repair structural defects, malfunctioning systems, equipment, or appliances.

Prior to this date, we have been given the opportunity to have a qualified person of our choice inspect the property and HAVE ☐ HAVE NOT ☐ chosen to do so. (The appropriate response is to be circled with the purchasers initialing the appropriate blank.)

We hereby affirm that all conditions of the Purchase Agreement dated the _27_ day of _FEBRUARY_, _2012_, have been complied with by the seller(s).
Exceptions: _____
_____

Seller acknowledges that he has read this entire agreement.

_____
Seller

_____
Seller

Purchaser acknowledges that he/has read this entire agreement.

_____
Purchaser

_____
Purchaser

6/07

STATE OF ALABAMA
COUNTY OF MOBILE

### DEED FROM DANIEL A. COWART TO
### LAUREN C. COWART OF JUNE 26, 2012

KNOW ALL MEN BY THESE PRESENTS, that **Daniel A. Cowart** (hereinafter sometimes referred to as GRANTOR), for and in consideration of the sum of Ten and No/100 ($10.00) Dollars and other good and valuable consideration in hand paid to the GRANTOR by **Lauren C. Cowart**, of 32793-A Waterview Drive, Loxley, Alabama 36551 (hereinafter sometimes referred to as the GRANTEE), the receipt and sufficiency whereof is hereby acknowledged by the said GRANTOR, does hereby, subject to the terms hereinafter contained, GRANT, BARGAIN, SELL and CONVEY unto the said GRANTEE, all of GRANTOR'S interest in that certain parcel of real property, lying and being in the County of Baldwin, State of Alabama, as more particularly described as follows, to-wit:.

LOT 2 OF THE RESUBDIVISION OF LOTS 1 THROUGH 9 OF LAKEVIEW AT STEELWOOD, ACCORDING TO MAP OR PLAT THEREOF RECORDED IN SLIDE 2234-E OF THE RECORDS MAINTAINED IN THE OFFICE OF THE JUDGE OF PROBATE OF BALDWIN COUNTY, ALABAMA.

SUBJECT TO such restrictions, limitations, mortgages, and encumbrances of record.

TOGETHER WITH ALL AND SINGULAR, the rights, members, privileges and appurtenances thereunto belonging or in anywise appertaining.

TO HAVE AND TO HOLD the above described property unto the said GRANTEE, their successors, heirs and assigns, forever.

IN WITNESS WHEREOF, the Grantor has hereunto set his hand and seal to this instrument on this the 26th day of June, 2012.

_____(SEAL)
Daniel A. Cowart

STATE OF ALABAMA
COUNTY OF MOBILE

I, the undersigned Notary Public, in and for said State and County, do hereby certify that **Daniel A. Cowart**, whose name is signed to the above and foregoing instrument, and who is known to me, acknowledged before me on this day, that, being informed of the contents of said instrument, he executed the same voluntarily on the day the same bears date.

1

Given under my hand and official seal of office on this the 26th day of June, 2012.

Official Notary Public Seal
Jessica L. Wright
State of Alabama at Large
Principal Office in Mobile Co.

_Jessica Wright_
NOTARY PUBLIC

[AFFIX SEAL HERE]

THIS INSTRUMENT WAS PREPARED BY:
Brian K. Smithweck
SILVER, VOIT & THOMPSON
Attorneys at Law, P.C.
4317 Midmost Drive
Mobile, Alabama 36609-5589
Telephone: 251/343-0800
LS-4765--14248

2

# Drywall Inspection Report

## HOMEOWNER INFORMATION

Name of Owner(s): _Lauren A Cortelyou_

Property Address: _32793 Water View Dr #A_

Date of Inspection: _4/24/213_

## IDENTIFICATION OF CONTAMINATED DRYWALL(ATTEMPT TO LOCATE AT LEAST SIX (6) SEPARATE LOCATIONS) & POTOGRAPHS

*WRITE WORDING OF MARKINGS ACTUALLY OBSERVED ON SHEETROCK:*

_Knouf —_

**PHOTOGRAPHS OF MARKINGS ATTACHED:** _Yes._

## PROPERTY DESCRIPTION

| SECTION | BRIEF DESCRIPTION OF SECTION |
|---|---|
| Type of Construction | wood frame |
| Use of Structure | single family Dwelling |
| Approximate Age | ? yr. |
| Stories / Levels | one story |
| Roof System | shingle |
| Exterior Walls | Brick + wood sides |
| Foundation | pilling |
| Flooring | wood |
| Interior Walls | wood and sheet Rock |
| Interior Ceilings | wood |
| Square Footage | 2600 |
| Attach Photos of Exterior | yes |
| Attach Photos on Interior | yes |
| Attach Diagram or Sketch of floor plan | yes |

Page 1 of 3

## OCCUPANCY INFORMATION

| SECTION | BRIEF DESCRIPTION OF SECTION |
|---|---|
| Year of construction/renovation | 2006 |
| Building Contractor | |
| Brand of Sheetrock | KNAUF |
| Date First Occupancy after renovation | 2006 |

**Interview with Clients:**

Odor Complaints: _____ Yes.

Physical Symptoms/Illnesses: _____ yes (respatory) problem

Malfunctioning/Repaired Appliances, Components or Equipment : AC coel change

3 Tim - ICE Maker -

Attach copies of any relevant construction, renovation, repair, purchase or insurance documents.

## IF CHINESE DRYWALL IS IDENTIFIED OR CLIENTS HAVE SIGNIFICANT COMPLAINTS OR EQUIPMENT FAILURES, THEN BEGIN INSPECTION OF HOME.

| WATER HEATER INFORMATION | |
|---|---|
| **Water Heater** | **Water Lines, Visual Condition** |
| Location . | |
| Overall Condition | Bad |
| Supply Lines | |

| PLUMBING SYSTEM COMPONENTS | |
|---|---|
| **Room** | **Supply Water Lines, Visual Condition** |
| Location | |
| Overall Condition | Bad |
| Supply Lines | |

## AIR CONDITIONING & HEATING COMPONENTS

| A/C System, #1 | Visual Conditions |
|---|---|
| Location | Closet |
| Make and Type | Carrier |
| Age and Condition | Change coils 3 Times |
| Condition of Evaporator Coils | Bad |
| Condition of Metal Components | Bad |
| Components Replaced | Bad |

| A/C System, #2 | Visual Conditions |
|---|---|
| Location | |
| Make and Type | |
| Age and Condition | |
| Condition of Evaporator Coils | |
| Condition of Other Metal Parts | |
| Components Replaced | |

## ELECTRICAL SYSTEM AND COMPONENTS

| Main Electrical Panel | Visual Conditions |
|---|---|
| Location – Laundry Room | |
| Condition of Exposed Wire | |
| Condition of Buss Bar | Bad |
| Condition of Breakers | |
| Condition of Other Metals | |

## ELECTRICAL SYSTEM AND COMPONENTS

| Sub-Electrical Panel | Visual Conditions |
|---|---|
| Location NONE | |
| Condition of Exposed Wire | |
| Condition of Buss Bar | Bad |
| Condition of Breakers | |
| Condition of Other Metals | |

| Receptacles/ Switches Location | Visual Conditions of Receptacles or Switches |
|---|---|
| Living Room | |
| Kitchen | |
| Dining Room | Bad |
| Bedroom | |
| Bedroom | |

| Electrical - Fixtures Location | Visual Conditions of Fixtures |
|---|---|
| Throughout Home | |

**COMPLETE AND ATTACH PLAINTIFF PROFILE FORM (SHOULD BE SIGNED BY CLIENT)** _____

**REMOVE 4 INCH BY 4 INCH SECTION OF DRYWALL AND SEAL IN ZIPLOCK BAG (LABEL EACH BAG AND EACH SAMPLE WITH CLIENT'S NAME)** _____









Trip to:
**32793 Water View Dr E # A**
Loxley, AL 36551-2571
86.22 miles / 1 hour 32 minutes

Notes
Residence

Lauren Cardelu
702/314/0372

160 Main St, Biloxi, MS 39530-3806

1. Start out going south on Main St toward How








































mapquest

Trip to:
**32760 Steelwood Ridge Rd Unit 7**
Loxley, AL 3655 (-257
0.42 miles (1 minute)
Notes
Rental

32793 Water View Dr E # A Loxley, AL 36551-2

1. Start out going southeast on Waterview Dr E/ward Lakevie


























**MLS #: R186571C (Closed)   List Price: $399,000** (308 Views) **32793 West Water View Drive Loxley, AL 36551**

| | |
|---|---|
| **SELLING PRICE:** $345,000 | **SOLD DATE:** 3/20/2012   **FINANCING:** Cash |
| **SELLING OFFICE NAME:** Roberts Brothers West | **SELLING AGENT NAME:** Barbara Sims (Removed)   **SELLER CONTRIBUTIONS:** |
| (#:259) | (#:137)   $0 |
| **FSBO:** | **NON MEMBER:** |



**BEDROOMS:** 3
**BATHS:** 2
**HALF BATHS:** 0
**APX YEAR BUILT:** 2006
**APX AGE:** 1-5
**APX LIVING AREA:** 1605
**APX LIVING AREA RANGE:** 1600-1799
**STYLE:** Cottage
**STORIES:** One
**WATERFRONT PROPERTY:** Lake Access
(Walking Distance <=1/4 Mi)

**VRM:**
**AREA:** Loxley (36551)
**STREET 2:**
**STREET NAME 2:**
**SUBDIVSN OR COMMNTY:** Steelwood
**COUNTY:** Baldwin
**SCHOOL AREA:** Loxley
**ZONING:** Single Family Residence

**INTERSECTING STREET:**
**LOT/BLOCK/UNIT:** Lot 2           **TAX PPIN #:** 262465
**LIFETIME LEASE:** No           **TAXES OR RENT:**
**LEAD PAINT DISCLOSURE:**
**LOT DESCRIPTION:** Less than .25 acre
**SUBDIVISION AMENS:** Kiddie Pool, Outdoor Pool, Gated

**RESTRICTIVE COVENANTS:** Yes
**LOT SIZE:** 57.6X160.4 IRR
**MONTHLY FEES:** 433
**HOME WARRANTY:** No

**APX ACREAGE:** 0
**MULTIPLE LOTS:**
**ONE TIME FEES:**

| | Level: | Dim: | | Level: | Dim: | | Level: | Dim: | | Level: | Dim: |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Foyer: | | | Living Room: | 1 | 19X18 | Great Room: | | | Dining Room: | | |
| Den: | | | Kitchen: | 1 | 11X13 | Breakfast: | | | Rec Room: | | |
| Utility: | | | Other Room: | | | Master Bdrm: | 1 | 13X12 | Bedroom 2: | 1 | 11X10 |
| Bedroom 3: | 1 | 11X10 | Bedroom 4: | | | Bedroom 5: | | | | | |

**DINING AREA:** Breakfast Area-Kitchen
**OTHER ROOMS:**

**CONSTRUCTION/FOUNDATION:** Wood Frame, Piers
**FINISH:** Concrete Board
**ROOF:** Composition Shingle
**FLOORS/WALLS:** Natural Stone, Wood, Sheetrock/Drywall
**HEAT/COOLING:** Central Electric
**UTILITIES:** Gas-Propane, Sewage-City, Water-City, Satellite,
Grinder Pump

**FIREPLACE:** Living Room, Woodburning, Outdoor
**APPLIANCES:** Dishwasher, Disposal, Dryer, Microwave, Range-Electric, Refrigerator, Smoke Detector, Washer, Wine Coolers, Icemaker
**GARAGE:** Golf Cart
**MISC SEARCH:** Automatic Garage Door, Burglar/Fire Alarm, Enclosed Porch, Fireplace, Sprinkler System, Termite Contract, Storm Shutters, Furnishings Negotiable
**BOAT FACILITIES:** None
**ENERGY SAVING FEATURES:**

**REMARKS:** Entered as comp
**DIRECTIONS:** Co Rd 49 to Truck Trail 17. Gatehouse on left.
**AGENT REMARKS:**
**OFFICE REMARKS:**
**SUB AGENT COMM:** 0     **BUYER/BROKER COMM:** 2.5     **REFER TO ML#:**     **PROJECTED CLOSING DATE:** 3/20/2012
**POSSESSION/SHOWING INST:** At Closing, Appointment Only          **TERMS OF SALE:** Cash, Conventional
**TYPE OF LISTING:** Exclusive Agency Listing Agreement          **DAYS ON MARKET:** 2
**DISPLAY ON THE INTERNET:** Yes     **DISPLAY ADDRESS:** Yes     **ALLOW AVM:** No     **ALLOW COMMENTS:** No

**OFFICE NAME:** The Property Shop (#:1175)
**MAIN:** (251) 210-1818

**LISTING AGENT:** The Property Shop Team (#:213)
**AGENT EMAIL:** Stacy@PropertyShopRE.com
**CONTACT #:** (251) 233-8585
**TEAM MEMBER:** Stacy Cramton (#:213)
**AGENT EMAIL:** Stacy@PropertyShopRE.com
**TEAM CONTACT #:** (251) 422-4698
**TEAM MEMBER:** Candice Smith (#:213)
**AGENT EMAIL:** Candice@PropertyShopRE.com
**TEAM CONTACT #:** (251) 233-8585

Information Herein Deemed Reliable but Not Guaranteed



# PURCHASE AGREEMENT

Date _2/27/2012_

 

This contract constitutes the sole agreement between the parties hereto and any modification of this contract shall be signed by all parties to this agreement. No representation, promise, or inducement not included in this contract shall be binding upon any party hereto. Nondiscrimination: Buyers and Sellers agree not to discriminate based on race, color, religion, sex, national origin, handicap or familial status.

**AGENCY DISCLOSURE:  SELLER(S) INITIALS _____**   **BUYER(S) INITIALS _____**

The listing company _The Property Shop_ is:
(two blocks may be checked)
☑ An agent of the seller.
☐ An agent of the buyer.
☐ An agent of both the seller and buyer and is acting as a limited consensual dual agent.
☐ Assisting the ____ buyer ____ seller as a transaction broker.

The selling company _Roberts Brothers_ is:
(two blocks may be checked)
☐ An agent of the seller.
☐ An agent of the buyer.
☐ An agent of both the seller and buyer and is acting as a limited consensual dual agent.
☑ Assisting the ✓ buyer ____ seller as a transaction broker.

**BUYER'S OFFER**
THE UNDERSIGNED, HEREINAFTER CALLED THE BUYER, HEREBY OFFERS TO BUY THE PROPERTY located in _Loxley_, Alabama commonly known as _35793 Walkerview Dr_ and legally described as: _lot 2, Lakeview at___
_Tree law sub_
subject to any existing building and use restrictions, previous mineral exclusions, zoning ordinances, if any, for the sum of
☐ _Three hundred forty five thousand + 00/100___ ($ _345,000_ ).

**1. THE TERMS OF PURCHASE SHALL BE AS MARKED BELOW** (unmarked statements do not apply):
**CASH**  ☐ The full purchase price upon execution and delivery of Warranty Deed, paying one-half closing fee and recording fee. This offer
☐ IS ☐ IS NOT contingent upon the property appraising for at least the purchase price. If offer is subject to said appraisal, Seller
is to be notified in writing within ____ business days from the date of acceptance of offer as to whether this contingency has been
satisfied. The appraisal shall be at the Buyer's expense. Buyer has been given the opportunity to have said appraisal and hereby
declines. _____ BUYER(S) INITIALS

**NEW MORTGAGE**  ☐ The full purchase price upon execution and delivery of Warranty Deed, contingent upon Buyer's ability to obtain a ____ year
____ type mortgage in the amount of approximately $ ____ or ____ % of the purchase price
PLUS ☐ PMI, ☐ MIP, ☐ FUNDING FEE, ☐ CLOSING COSTS AT AN INTEREST RATE NOT TO EXCEED
____ %, which Buyer agrees to apply for immediately and accept promptly if tendered. THE APPRAISAL FEE, UNLESS
THE OFFER IS CONTINGENT ON A PROFESSIONAL INSPECTION IN PARAGRAPH 4, AND CREDIT REPORT
FEE, SHALL BE PAID BY THE BUYER AT TIME OF APPLICATION AND ORDERED IMMEDIATELY UNLESS
OTHERWISE AGREED UPON IN WRITING BY ALL PARTIES. Seller shall have the option to cancel this contract if Buyer
fails to apply for a mortgage loan within ____ business days after the date of acceptance of this offer. Buyer is to furnish Seller
within ____ business days of the date of acceptance of offer written confirmation from lender that Buyer's ability to obtain
financing under the terms of this agreement is within the lender's guidelines for approval. Said written confirmation must be
satisfactory to Seller. This offer is contingent on the property appraising for at least the purchase price. BUYER TO PAY ALL loan
closing costs, unless otherwise noted, including prepaid items and recording fees (unless not allowed by current FHA/VA
regulations). Buyer to pay or finance VA Funding Fee if applicable. DISCOUNT POINTS to be paid as follows: NOT TO
EXCEED ____ Points by Buyer; ____ Points by Seller. Seller to make repairs or replacements as required by appraisal or
for mortgage loan purposes not to exceed $ ____ but not including repairs as may be required by paragraphs 4, 5 and 9 below.

**VENDOR'S LIEN DEED**  ☐ See Attached "Vendor's Lien Addendum."

2. A new survey shall be paid for by ☐ BUYER ☐ SELLER and ordered by ☐ LISTING BROKER ☐ SELLING BROKER. Buyer has been given the opportunity to get a new survey and hereby declines._____  BUYER(S) INITIALS

3. "Seller's Disclosure Statement" is acknowledged by BUYER(S) INITIALS and "X" below (unmarked statements do not apply).
____ ☐ Buyer acknowledges and accepts "Seller's Disclosure Statement."
____ ☐ This agreement is contingent upon Buyer's written acceptance of "Seller's Disclosure Statement." and return with accepted contract.
____ ☑ Buyer and Seller agree to waive execution of "Seller's Disclosure Statement."

4. BUYER IS AWARE that professional inspections may be made, by a representative of Buyer's choosing, of home structure, systems and ☐pool
☐N/A. SALE ☐ IS ☐ IS NOT contingent upon said inspection, satisfactory to Buyer. If sale is subject to said inspection, BUYER agrees to pay for
same. Seller is to be notified in writing within ____ business days of acceptance of this agreement as to whether inspection is or is not satisfactory to
Buyer. Providing unity availability, if necessary, for this inspection is the responsibility of the ☐ BUYER ☐ SELLER. Seller is not obligated to pay for
any repairs recommended by such professional inspection except as may be required by other provisions of this purchase agreement. Buyer to furnish
Seller/finance, if requested, a copy of all inspection reports obtained at no cost. IF THIS OFFER IS CONTINGENT ON A PROFESSIONAL
INSPECTION, THE APPRAISAL SHALL BE ORDERED IMMEDIATELY UPON THE REMOVAL OF THIS CONTINGENCY. Buyer has
been given the opportunity to have said inspection and hereby declines._____  BUYER(S) INITIALS

5. BUYER HAS EXAMINED THIS PROPERTY and agrees to accept same in its "As Is" condition, except as may be specified herein. HEATING, AIR
CONDITIONING EQUIPMENT INCLUDING ANY WINDOW UNITS, PLUMBING AND ELECTRICAL SYSTEMS and all INCLUDED
APPLIANCES shall be warranted by Seller to be in working order at time of conveyance. Buyer is to be responsible for inspection of same prior to
conveyance. Buyer shall be required to sign a final WALK-THROUGH/SYSTEMS CHECK INSPECTION FORM, indicating that the inspection was
completed and the property is acceptable in its "As Is" condition, unless otherwise noted on such form. Providing unity availability, if necessary, for
this inspection is the responsibility of the ☐ BUYER ☐ SELLER. Buyer understands that if a salesperson accompanies the Buyer on this final
inspection, it will be as a courtesy only and not as a person qualified to detect any defects. SELLER TO REMOVE ALL DEBRIS AND BE
RESPONSIBLE FOR ANY "MOVE OUT" RELATED DAMAGES THAT MAY OCCUR PRIOR TO POSSESSION.

6. This contract ☐ IS ☑ IS NOT contingent upon Buyer obtaining homeowners and/or flood insurance coverage at price and terms acceptable to Buyer
and Buyer(s)' Lender within ____ business days of acceptance of this agreement.

7. A HOME WARRANTY through ____ (warranty company) subject to limitations, exclusions and deductibles, to
be ordered at a cost not to exceed $ ____ by ____ (real estate company) at the expense of the
☐ BUYER ☐ SELLER. If there is an existing home warranty on home at time of acceptance it is to be kept in effect by Seller and transferred to Buyer
at closing. Buyer has been given the opportunity to have such coverage and hereby declines._____  BUYER(S) INITIALS

8. ALL IMPROVEMENTS and APPURTENANCES ARE INCLUDED in the purchase price, including if now in or on the property, the following:
lighting fixtures and their shades, ceiling fans, drapery hardware and curtain hardware, window shades and blinds, window and door screens, stationary
laundry tubs, water heater, smoke detectors, carbon monoxide detectors and built-in security systems, TV antenna, satellite dish, mailbox, remote control
garage door opener(s), water pump and pressure tank, built-in kitchen appliances, vacuflex attachments, attached gas grill, gas logs and gas log remote
control unit(s) as they starter key, awnings, all plantings and heating and air conditioning equipment including any window units. Affixed television
screen(s) ☐ IS ☐ IS NOT ☐ N/A included. All bathroom mirrors ☑ WILL ☐ WILL NOT remain. Seller to provide to buyer or selling broker at
closing a key to each differently keyed door of dwelling and/or outbuildings. Exceptions for leased equipment: ____

Seller's Initials _____   Buyer's Initials _____   11/09

PROPERTY ADDRESS _32793 Waterview Drive_
NO ITEM OF PERSONAL PROPERTY SHALL BE TRANSFERRED TO BUYER UNLESS SPECIFICALLY ITEMIZED HEREIN: _all furniture and accessories_
Personal property/free-standing appliances that remain are of NO VALUE for appraisal and mortgage loan purposes unless otherwise noted.

9. SELLER IS TO FURNISH AT SELLER'S EXPENSE an Alabama Wood Infestation Report from a bonded and licensed termite control company stating that a visual inspection of accessible areas of the dwelling and garage and/or carport and any detached buildings given value by appraisal indicates there is no visible sign of infestation or damage by wood destroying insects or fungus. If new construction, a soil treatment letter is acceptable in lieu of an Alabama Wood Infestation Report. This Purchase Agreement is contingent upon said report being satisfactory to both Buyer and Seller. Report to be ordered from the company holding the current termite contract, if possible. Additionally, it is understood that this is neither a structural damage report nor a warranty as to the absence of wood destroying insects or fungus. If active infestation and/or fungus is reported, treatment of the entire dwelling will be required unless property is under a current termite contract in which case a re-treatment of the affected area will be permitted. Treatment will also be required in affected outbuildings if required by lender. A structural inspection by a licensed contractor at Seller's expense may be required by the lender if any evidence of previous infestation and/or damage is found. If not required by the lender, Buyer may order a structural inspection, satisfactory to Buyer at Buyer's expense. If there is a termite replacement contract in effect at time of acceptance, it is to be kept current by Seller and transferred to Buyer at closing, subject to termite company's approval and at the expense of ☐ BUYER ☑ SELLER not to exceed $ _200_ (excluding the Alabama Wood Infestation Report). Formosan coverage ☐ SHALL ☑ SHALL NOT be added to the existing termite replacement contract if not presently included at the expense of ☐ BUYER ☑ SELLER. A termite replacement contract ☑ WITH ☐ WITHOUT Formosan coverage shall be provided to the Buyer through _____ (termite company) at ☐ BUYER'S ☐ SELLER'S expense.

10. ALL PROPERTY TAXES, Homeowners Association fees and any rentals being collected from existing tenants to be prorated at time of closing. Any Homeowners Association transfer fees to be paid by buyer. Lease agreements and any security deposits associated with said leases to be transferred to buyer at closing, subject to current lease agreement and any management agreement. NOTE: Taxes are prorated based upon current information furnished by the Tax Assessor's office. Brokers and salespeople cannot and do not assume any responsibility for any change, modification, or adjustment to the current tax assessment by the Tax Assessor's office.

11. PROPERTY ASSESSMENTS which become a lien on the property prior to closing date shall be paid by the Seller, without proration. Any public improvements, now installed but not yet a lien, shall be assumed by the Buyer.

12. AN OWNER'S POLICY OF TITLE INSURANCE (STANDARD), in the amount of the purchase price, and a warranty deed is to be furnished by Seller at Seller's expense. Title search fees or other casualty that the Buyer will incur shall be conveyed. If single tax colony property is being conveyed, its undersigned conveyance will be by a warranty bill of sale, subject to a 99-year lease and transfer fee to be paid by Buyer.

13. SALE TO BE CLOSED within _10_ days after all necessary documents are ready, no sooner than _March 9 2012_ but not later than _March 16, 2012_. TITLE TO BE TAKEN IN NAMES (S) OF _Daniel A. Conway_
☐ WITH ☑ WITHOUT Right of Survivorship.

14. A FURTHER PERIOD OF FIVE (5) days shall be allowed for closing if: (A) the closing is delayed by reason of abstracting or by title defects which can be readily corrected, or (B) the terms of purchase require a new mortgage and the lender issues an unconditional written commitment by the date of closing but is delayed in consummating the mortgage.

15. POSSESSION TO BE GIVEN ☑ at close or _____ days after close at _____ ☐ am ☐ pm ☐ WITH ☐ WITHOUT payment of rent by Seller for any portion of property occupied by Seller after closing but prior to possession date and shall be paid as follows: _____

16. FOR VALUABLE CONSIDERATION, Buyer gives the LISTING BROKER above named until _____ ☐ am ☐ pm to obtain the written acceptance of this offer and agrees that this offer when signed, will constitute a binding agreement between Buyer and Seller and herewith deposits $ _10,000_ in the form of _check/escrow_ evidencing Buyer's good faith to be deposited in escrow by said SELLING BROKER upon acceptance of offer and to be applied to the purchase price. If this offer is not accepted or the title is not marketable, or if the terms of purchase are contingent upon ability to obtain new mortgage or other contingencies which cannot be met, this deposit is to be refunded, otherwise to be retained. In the event of default by Buyer, all deposits made hereunder may be forfeited as liquidated damages at Seller's election, or alternatively, Seller may retain such deposits in Broker's Escrow Account as part of the purchase price and pursue his legal or equitable remedies hereunder against Buyer. In the event of default by Seller, Buyer may pursue his legal or equitable remedies hereunder against the Seller. In the event this sale does not close, a separate mutual release signed by all parties to this contract will be required before any funds will be released. In the event of a dispute, the Broker may interplead funds into the appropriate court. The parties agree that all fees and expenses related to interpleader shall be paid from the escrowed funds. If said funds are not adequate to pay the fees and expenses, the parties agree to be jointly and severally responsible for the fees and expenses in excess of the escrowed funds. In the event an offer or counteroffer is not accepted, earnest money shall be returned to the Buyer without a signed release.

17. THE PURCHASE PRICE AND TERMS OF THIS SALE MAY BE DISCLOSED after closing to the members and affiliate members of the Mobile Area Association of Realtors, Baldwin County Association of Realtors and any applicable MLS systems for use in the ordinary conduct of their business. Real estate brokers/salespeople may benefit financially as a result of recommending real estate services to clients and customers.

18. REAL ESTATE BROKERS AND/OR SALESPERSONS ARE NOT PHYSICIANS and are not to be held liable for any conditions or non-performance of this agreement and have not given any professional, legal or tax advice.

19. BUYER ACKNOWLEDGES THAT HE HAS READ THIS ENTIRE AGREEMENT INCLUDING ALL ADDENDUMS, if any, which are made part of this Purchase Agreement and has received copies. ☐ Lead Base Paint Disclosure ☐ FHA/VA ☐ Buyer Disclosure ☐ Other _____

20. Other provisions: _____

Buyer X _(signature)_  Print Name _Daniel A. Conway_  Date _3/8/12_  ☐ am ☑ pm
Buyer X _____  Print Name _____  Date _____  ☐ am ☐ pm
Buyer's Address _____  Witness X _____
Selling Salesperson _Barbara Sims_ Phone: (Cell) _251-510-3588_ (Office) _251-661-4660_

SELLER'S ACCEPTANCE OF OFFER
21. THE ABOVE OFFER IS HEREBY ☑ ACCEPTED or ☐ COUNTERED
_____
_____
Provisions of the original offer not changed by the counteroffer shall remain in effect.

22. IN THE EVENT A COUNTEROFFER is made, it shall expire on _____ ☐ am ☐ pm if Buyer has not given prior written acceptance.

23. SELLER ACKNOWLEDGES THAT HE HAS READ THIS ENTIRE AGREEMENT INCLUDING ALL ADDENDUMS, if any, which are made part of this Purchase Agreement and has received copies. ☐ Lead Based Paint Disclosure ☑ FHA/VA ☐ Buyer Disclosure ☐ Other _____
Seller X _(signature)_  Print Name _Peter J. Decock_  Date _3/9/12_  ☐ am ☐ pm
Seller X _____  Print Name _____  Date _____  ☐ am ☐ pm
Witness X _____  Listing Salesperson _Jim Crapin_ Phone: (Cell) _477.1099_ (Off) _____

BUYER'S ACCEPTANCE OF OFFER
24. The Seller's offer as detailed in #21 above is hereby ☐ accepted or ☐ countered as per attached Addendum. Provisions of the original offer not changed by the counteroffer remain in effect.
Buyer X _____  Date _____  ☐ am ☐ pm Witness X _____
Buyer X _____  Date _____  ☐ am ☐ pm Witness X _____

11/02



## BUYER'S DISCLOSURE STATEMENT

### VERY IMPORTANT DOCUMENT • PLEASE READ CAREFULLY

This Disclosure Statement has been completed by the Buyer and not a Real Estate Broker or Salesperson. It is hereby attached and made a part of the Purchase Agreement dated 2/27/12 regarding the Property located at 32743 Water View Drive

1. **BUYER UNDERSTANDS THAT BUYER SHOULD, EITHER PERSONALLY OR THROUGH OTHERS OF BUYER'S CHOOSING, INSPECT THE PROPERTY AND NOT RELY ON ANY VERBAL, PRINTED OR WRITTEN DESCRIPTION OF PROPERTY BY ANY REAL ESTATE BROKER OR SALESPERSON. Buyer's Initials** _____

2. Buyer understands that Buyer, not a Real Estate Broker or Salesperson, has the obligation to determine any and all conditions of the property material to Buyer's decision to buy the property, including, but not limited to: the condition of heating, air conditioning equipment including any window units, plumbing and electrical systems and any built-in appliances; the roof and basement, including leaks therein; the square footage of the structure; construction materials including floors; structural condition; lead-based paint; utility and sewer or septic tank availability and condition; swimming pool, (including but not limited to: light, pump, liner & apron) subsurface conditions, including radon and other hazardous gases, draining, grading or standing water problems; fireball; termites; sprinkler systems; fire/burglar system; fireplace; chimney; gas logs; urea formaldehyde from insulation or any asbestos material. Buyer's Initials _____

3. Buyer understands that any statements as to the square footage and room sizes (living area) of the structure is an estimate only and is not warranted to be exact or accurate by the Seller or Real Estate Broker or Salesperson. Buyer also understands that Buyer, not a Real Estate Broker or Salesperson, is responsible for calculating square footage of the structure. Buyer further understands that buyer, not a Real Estate Broker or Salesperson, is responsible for resolving any issues related in any way to square footage. Buyer's Initials _____

4. Buyer has been aware of the availability of professional home inspections. Buyer understands that Real Estate Brokers and Salespeople are not professional inspectors. Buyer also understands that Real Estate Brokers and Salespeople have not and will not conduct any inspections. Buyer's Initials _____

5. Buyer understands that Lenders or Buyer may require certain inspections such as termite inspection, mold inspection, septic tank inspection, well water inspection, inspection of repairs required by real completed as per appraisal; and that although the results of these inspections may satisfy the requirements of those authorities, they may not meet the requirements of the Buyer. Buyer, not a Real Estate Broker or Salesperson, is responsible for determining any of the above conditions of the property material to Buyer's decision to buy the property. Buyer's Initials _____

6. Buyer understands that Seller is not obligated to make repairs to the property except those specifically stated in the purchase agreement. Repairs noted in "new mortgage" paragraph of the Purchase Agreement are only repairs required by appraiser. Neither the Seller nor the Buyer is obligated to make repairs required by the appraiser, if any, that cost in excess of the amount stated in said paragraph. Buyer should not rely on an appraiser to require or discover needed repairs. An appraiser is not a licensed or qualified home inspector. Buyer's Initials _____

7. Buyer understands that a Real Estate Broker or Salesperson is not responsible for the performance of any repairs, replacements and/or improvements to the property. Buyer's Initials _____

8. A Home Warranty should not be purchased in lieu of a professional inspection. A Home Warranty is subject to many exclusions including, but not limited to, any conditions that the price at the purchase of the property. Buyer is responsible for reviewing the home warranty and being satisfied with the scope of coverage. Buyer's Initials _____

9. Note the words "in working order" in the Purchase Agreement. This does not obligate the Seller to repair or leave work done to put appliances and/or systems in perfect or better working condition i.e., cleaning the heating units, working on plumbing with slow drains or low water pressure/etc. These conditions need to be handled before the inspection contingency is removed and tin the "walk-through" just before closing. Buyer's Initials _____

10. Buyer understands that the Alabama Wood Infestation Report provided by the Seller is a VISUAL inspection of ACCESSIBLE areas. This inspection does not guarantee that there are no termites, other wood destroying insects, any type of insects or fungus in inaccessible areas. There are no warranties after this inspection except those covered under a Termite Contract (bond-with no limitations, exclusions and conditions). Real Estate Brokers and Salespeople are not liable for infestation, damage, or fungus detected or not detected by termite inspection companies. Buyer's Initials _____

11. Buyer has been made aware of the opportunity to have the property covered under a termite replacement contract (with or without a Formosan rider). Buyer's Initials _____

12. Buyer understands that any statements including, but not limited to, easements, encroachments, overlaps, location of property lines, fences off true property lines, boundary line disputes or flood zones are not warranted to be accurate by Seller, Real Estate Brokers or Salespeople. Whether a survey is required or not by the Lender, Buyer should obtain a current survey of the property to verify the above. Buyer's Initials _____

13. Buyer understands property may be affected by Historical District restrictions. Buyer, not a Real Estate Broker or Salesperson, is responsible for determining what, if any, restrictions may apply. Buyer's Initials _____

14. Buyer understands that the property may require buyer to be a member of a homeowner's / property owner's association. Buyer understands that Buyer, not a Real Estate Broker or Salesperson, is responsible for obtaining any and all information concerning the association including, but not limited to, all membership requirements, fees, assessments, penalties, transfers costs, liens, and/or enforcement procedures. Buyer's Initials _____

15. Buyer understands that Buyer, not a Real Estate Broker or Salesperson, is responsible for determining that the property can't be used for the purpose for which it is purchased, including but not limited to zoning, zoning variances, restrictive covenants, and deed restrictions. Buyer's Initials _____

16. Buyer understands that any statements to the property being connected to public sewer is not warranted to be accurate by the Seller, Real Estate Broker or Salespeople. Buyer, not a Real Estate Broker or Salesperson, is responsible for determining if connection is or is not in place if the issue would be material to Buyer's decision to buy property. Buyer's Initials _____

17. Buyer understands that Buyer, not a Real Estate Broker or Salesperson, is responsible for determining the status of any outstanding fees or assessments including, but not limited to, sewer, paving and/or street maintenance, or water connection. Buyer's Initials _____

18. Buyer understands that Real Estate Brokers and Salespeople DO NOT WARRANT the condition of this house, the property on which it is located or any of the heating, air conditioning equipment including any window units, plumbing and electrical systems or any appliances. Buyer understands the Seller DOES NOT WARRANT the condition of this house or the property on which it is located or any of the heating, air conditioning equipment including any window units, plumbing and electrical systems or any appliances other than as stated in the Purchase Agreement. Buyer's Initials _____

19. Buyer understands and agrees that any recommendations by a Real Estate Broker or Salesperson of professional contractors or inspectors is strictly as a courtesy to the Buyer; Buyer's choice of contractors or inspectors is the responsibility of the Buyer; Real Estate Brokers and Salespeople are not responsible or liable for any conditions of property that have not be detected by inspections performed by Buyers, any one acting on behalf of Buyers including, but not limited to, contractors and inspectors. Buyer's Initials _____

20. Buyer understands that it may be beneficial to contact a homeowner's insurance company as much in advance of the day of closing as possible. Buyer's Initials _____

21. Buyer understands the closing costs prepared for Buyers and Sellers are approximate figures only. Buyer's Initials _____

22. Buyer understands that Buyer, not a Real Estate Broker or Salesperson, is responsible for addressing any concerns of Buyer as to the property being affected by the Community Notification Act (Megan's Law). Buyer's Initials _____

SELLER ACKNOWLEDGES THAT HE HAS READ THIS ENTIRE DOCUMENT AND RECEIVED A COPY.

SELLER _____ Date 3/9/12

SELLER _____ Date

BUYER ACKNOWLEDGES THAT HE HAS READ THIS ENTIRE DOCUMENT AND RECEIVED A COPY.

BUYER _____ Date 3/8/12

BUYER _____ Date

9/2011

*handwritten:* HOUSE BUILT 2006
2257 SQ.FT.
BASE 1570 SQ.FT.

## Settlement Statement

U.S. Department of Housing
and Urban Development

Form Approved OMB No. 2502-0265

| Type of Loan | | |
|---|---|---|
| ☐ FHA | 2.☐ FmHA | 3.☐ Conv. Unins. |
| ☐ VA | 5.☐ Conv.Ins | 6.☐ None (Cash). |

6. File Number: 06-11875B

7. Loan Number:

8. Mortgage Insurance Case Number:

Note: This form is furnished to give you a statement of actual settlement costs. Amounts Paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name and Address of Borrower: | E. Name and Address of Seller: | F. Name and Address of Lender: |
|---|---|---|
| Daniel A. Cowart | Peter J. DeSocio | |
| | 1400 Park st. | |
| | Evansville, IN  47710 | |

G. Property Location:
32793 Waterview Drive E.
Loxley, AL 36551
→ A

H. Settlement Agent:
Alabama Land Title Company Inc.

Place of Settlement:
8477-A County Road 64, Ste 2.
Daphne, Alabama 36527

I. Settlement Date:
March 20, 2012
Disbursement Date:

PARCEL ID: 05-33-06-13-0-000-001.077

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract sales price | 345,000.00 | 401. Contract sales price | 345,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 893.00 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| *Adjustments for items paid by seller in advance* | | *Adjustments for items paid by seller in advance* | |
| 106. City/town taxes          to | | 406. City/town taxes          to | |
| 107. County taxes          to | | 407. County taxes          to | |
| 108. Assessments   03/20/2012 to 12/31/2012 | 4,077.60 | 408. Assessments   03/20/2012 to 12/31/2012 | 4,077.60 |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 349,970.60 | **420. GROSS AMOUNT DUE TO SELLER** | 349,077.60 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201. Deposit or earnest money | 10,000.00 | 501. Excess deposit (see instruction) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (line 1400) | 21,606.94 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| | | Evansville Commerce Bank | 557,941.70 |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments for items unpaid by seller* | | *Adjustments for items unpaid by seller* | |
| 210. City/town taxes          to | | 510. City/town taxes          to | |
| 211. County taxes   10/01/2011 to 03/20/2012 | 1,102.72 | 511. County taxes   10/01/2011 to 03/20/2012 | 1,102.72 |
| 212. Assessments          to | | 512. Assessments          to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 11,102.72 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 580,651.36 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER** | | **600. CASH AT SETTLEMENT TO/FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 349,970.60 | 601. Gross amount due to seller (line 420) | 349,077.60 |
| 302. Less amount paid by/for borrower (line 220) | 11,102.72 | 602. Less reduction amount due seller (line 520) | 580,651.36 |
| **303. CASH     DUE FROM   BORROWER** | 338,867.88 | **603. CASH     DUE FROM   SELLER** | 231,573.76 |



REV HUD-1(3/86)

SETTLEMENT STATEMENT     PAGE 2

| L. SETTLEMENT CHARGES | | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $ 345,000.00 | | @ 5.00 % = | 17,250.00 | | |
| Division of Commission (line 700) as follows: | | | | | |
| 701. Listing Agent | $ | 8,625.00 to The Property Shop | | | |
| 702. Selling Agent | $ | 8,625.00 to Roberts Brothers | | | |
| 703. Commission paid at Settlement | | | | | 17,250.00 |
| 704. | | | | | |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | | | | |
| 801. Loan Origination Fee | % of | 0.00 to | | | |
| 802. Loan Discount | % of | 0.00 to | | | |
| 803. Appraisal Fee | | to | | | |
| 804. Credit Report | | to | | | |
| 805. | | to | | | |
| 806. | | to | | | |
| 807. | | to | | | |
| 808. | | to | | | |
| 809. | | to | | | |
| 810. | | to | | | |
| 811. | | to | | | |
| 812. | | to | | | |
| 813. | | to | | | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | | | |
| 901. Interest from   March 30, 2012 to | | Days @ $     May | | | |
| 902. Mortgage Insurance Premium for | | to | | | |
| 903. Hazard Insurance Premium for | | to | | | |
| 904. | | to | | | |
| 905. | | to | | | |
| 1000. RESERVES DEPOSITED WITH LENDER | | | | | |
| 1001. Hazard insurance | mo.@ $ | /mo. | | | |
| 1002. Mortgage insurance | mo.@ $ | /mo. | | | |
| 1003. City property taxes | mo.@ $ | /mo. | | | |
| 1004. County property taxes | mo.@ $ | /mo. | | | |
| 1005. Annual assessments | mo.@ $ | /mo. | | | |
| 1006. | mo.@ $ | /mo. | | | |
| 1007. | mo.@ $ | /mo. | | | |
| 1008. | | to | | | |
| 1100. TITLE CHARGES | | | | | |
| 1101. Settlement or closing fee | | 350.00 to Alabama Land Title Company Inc. | | 350.00 | |
| 1102. | | to | | | |
| 1103. | | to | | | |
| 1104. | | to | | | |
| 1105. | | to | | | |
| 1106. Deed Prep | | 85.00 to Lori Meadows Attorney at Law | | | 85.00 |
| 1107. | | to | | | |
| (includes above item No: ) | | | | | |
| 1108. Title Insurance | | 921.94 to Alabama Land Title Company Inc. | | | 921.94 |
| (includes above item No: ) | | | | | |
| 1109. Lender's coverage | | | | | |
| 1110. Owner's coverage | | | | | |
| 1111. Admin Fee | | to Alabama Land Title Company Inc. | | 50.00 | 50.00 |
| 1112. | | to | | | |
| 1113. | | to | | | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | | | | |
| 1201. Recording fees: | Deed $ | 18.00  ; Mortgage $         ; Release $ | | 18.00 | |
| 1202. City/County tax/stamps: | Deed $ | 345.00  ; Mortgage $ | | 345.00 | |
| 1203. State tax/stamps: | Deed $ | ; Mortgage $ | | | |
| 1204. | | to | | | |
| 1205. | | to | | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | | | | |
| 1301. | | to | | | |
| 1302. Pest Inspection and Bond | | 130.00 to KBillingsworth | | 130.00 | 100.00 |
| 1303. Bal Due on Association Dues | | 3,300.00 to Steelwood POA | | | 3,300.00 |
| 1304. | | to | | | |
| 1305. | | to | | | |
| 1306. | | to | | | |
| 1307. | | to | | | |
| 1308. | | to | | | |
| 1400. TOTAL SETTLEMENT CHARGES (enter on lines 103, Section J and 502, Section K) | | | | 893.00 | 21,606.94 |

CERTIFICATION  I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction.  I further certify that I have received a copy of the HUD-1 Settlement Statement.

_____                    _____
                                             Peter J. DeSoto
Borrowers                                                                        Sellers
The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction.  I have caused the funds to be disbursed in accordance with this statement.

                                             March 30, 2012
_____                    _____                    _____
Austin C Brown                               Settlement Agent                             Date
WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form.  Penalties upon conviction can include a fine and imprisonment.  For details see: Title 18, U.S. Code Section 1001 and Section 1010.

REV HUD-1 (3/86)

# WARRANTY DEED

STATE OF ALABAMA:

COUNTY OF BALDWIN:

KNOW ALL MEN BY THESE PRESENTS, that to PETER J. DESOCIO, a
_Married_ man, the GRANTOR, for and in consideration of the sum of TEN DOLLARS ($10.00)
and other good and valuable consideration hereby acknowledge to have been paid to the said GRANTOR by to
DANIEL A. COWART, the GRANTEE, does hereby GRANT, BARGAIN, SELL AND CONVEY unto the said
GRANTEE, in fee simple, subject to the provisions hereinafter contained, all that real property in said County, State
of Alabama described as follows, to-wit:

LOT 2 OF THE RESUBDIVISION OF LOTS 1 THROUGH 9 OF LAKEVIEW AT
STEELWOOD, ACCORDING TO MAP OR PLAT THEREOF RECORDED IN SLIDE
2234-E OF THE RECORDS MAINTAINED IN THE OFFICE OF THE JUDGE OF
PROBATE OF BALDWIN COUNTY, ALABAMA.

THIS CONVEYANCE AND THE WARRANTIES HEREUNDER ARE SUBJECT TO
THE FOLLOWING:

1. Reservation of oil, gas and other minerals and all rights in connection therewith as contained
   in deed from United States Steel Corporation to International Paper Company dated January
   3, 1975 and filed for record in Deed Book 467, page 441, and re-recorded and corrected in
   Deed Book 471, page 757 and amended and modified by partial Release of Mineral and
   Surface Rights by USX Corporation (formerly United States Steel) to International Paper
   Realty Corporation by instrument dated July 2, 1991 and filed for record in Real Property
   Book 429, page 1530.
2. Easement and right-of-way by Northbay Vineyards, Ltd. to I P Timberlands Operating
   Company, Ltd. dated July 16, 1992 and filed for record in Real Property Book 470, page
   1700.
3. Road Use Agreement by and between Northbay Vineyards, Ltd. and I P Timberlands
   Operating Company, Ltd. dated July 16, 1992 and filed for record in Real Property Book 470,
   page 1705.
4. Declaration of Rights, Covenants, Restrictions, Affirmative Obligations and Conditions
   Applicable to Steelwood, Unit One, dated October 1, 1997 and filed for record in
   Miscellaneous Book 95, page 1449, amended in Miscellaneous Book 101, page 1972, and
   amended as Instrument Number 501169, and further amended as Instrument Number 688556,
   and all amendments thereto.
5. Easement from Steelwood Ltd. to The Steelwood Property Owners Association, dated
   October 7, 1997 and filed for record in Real Property Book 781, page 732.
6. Articles of Incorporation of The Steelwood Property Owners Association, dated October 7,
   1997 and filed for record in Miscellaneous Book 95, page 1496, and all amendments thereto.
7. By-Laws for The Steelwood Property Owners Association, filed for record in Miscellaneous
   Book 95, page 1507, and all amendments thereto.
8. Easement granted Baldwin County Electric Membership Corporation by Steelwood, Ltd.,
   dated October 7, 1997 and filed for record in Real Property Book 781, page 743.

1

9. Easement granted Gulf Telephone Company by Steelwood, Ltd., dated October 7, 1997 and filed for record in Real Property Book 781, page 737 and Instrument Number 513748.

10. Right-of-Way conveyed to Baldwin County, Alabama by Steelwood, Ltd., dated October 7, 1997 and filed for record in Real Property Book 781, page 722.

11. Roadway easement from IP Timberlands Operating Company, Ltd. to Steelwood, Ltd., dated July 24, 1997, filed for record October 9, 1997 in Real Property Book 781, page 726.

12. First Supplement to and Amendment of the Declaration of Rights, Covenants, Restrictions, Affirmative Obligations and Conditions applicable to Steelwood Unit One, a Planned Unit Development, dated December 1, 1998 and filed for record in Miscellaneous Book 101, page 1971.

13. Second Supplement to and Amendment of the Declaration of Rights, Covenants, Restrictions, Affirmative Obligations and Conditions applicable to The Villas at Steelwood and Steelwood Unit Two, Phase I, a Planned Unit Development, dated July 9, 1999 and filed for record as Instrument Number 501169.

14. Third Supplement to and Amendment of the Declaration of Rights, Covenants, Restrictions, Affirmative Obligations and Conditions applicable to Steelwood, Unit One, The Villas at Steelwood, Steelwood, Unit Two, Phase I, Steelwood, Unit Two, Phase II, The Cabins at Steelwood, and The Suites at Steelwood, a Condominium, filed for record as Instrument Number 663282.

15. Fourth Supplement to and Amendment of the Declaration of Rights, Covenants, Restrictions, Affirmative Obligations and Conditions applicable to Steelwood, Unit One, The Villas at Steelwood, Steelwood, Unit Two, Phase I, Steelwood, Unit Two, Phase II, The Cabins at Steelwood, and The Suites at Steelwood, a Condominium, and Steelwood, Unit Three, filed for record as Instrument Number 688556.

16. Fifth Supplement to and Amendment of the Declaration of Rights, Covenants, Restrictions, Affirmative Obligations and Conditions applicable to Steelwood, Unit One, The Villas at Steelwood, Steelwood, Unit Two, Phase I, Steelwood, Unit Two, Phase II, The Cabins at Steelwood, and The Suites at Steelwood, a Condominium, and Steelwood, Unit Three, and The Cabins at Steelwood, Phase II, filed for record as Instrument Number 720478.

17. Sixth Supplement to and Amendment of the Declaration of Rights, Covenants, Restrictions, Affirmative Obligations and Conditions applicable to Steelwood, Unit One, The Villas at Steelwood, Steelwood, Unit Two, Phase I, Steelwood, Unit Two, Phase II, The Cabins at Steelwood, and The Suites at Steelwood, a Condominium, and Steelwood, Unit Three, and The Cabins at Steelwood, Phase II, and Steelwood, Unit Four, filed for record as Instrument Number 771859, and all amendments thereto.

18. Seventh Supplement to and Amendment of the Declaration of Rights, Covenants, Restrictions, Affirmative Obligations and Conditions applicable to Steelwood, Unit One, The Villas at Steelwood, Steelwood, Unit Two, Phase I, Steelwood, Unit Two, Phase II, The Cabins at Steelwood, and The Suites at Steelwood, a Condominium, and Steelwood, Unit Three, and The Cabins at Steelwood, Phase II, Steelwood, Unit Four, and Rabbit Run filed for record as Instrument Number 862035, and all amendments thereto.

19. Eighth Supplement to and Amendment of the Declaration of Rights, Covenants, Restrictions, Affirmative Obligations and Conditions applicable to Steelwood, Unit One, The Villas at Steelwood, Steelwood, Unit Two, Phase I, Steelwood, Unit Two, Phase II, The Cabins at Steelwood, and The Suites at Steelwood, a Condominium, and Steelwood, Unit Three, and The Cabins at Steelwood, Phase II, Steelwood, Unit Four, Rabbit Run, and The Villas at Steelwood, Phase II filed for record as Instrument Number 867592, and all amendments thereto.

20. Consent to Lease and Rental and Waiver and Relinquishment of Certain Requirements Pertaining to Leases by Steelwood, Ltd., dated February 14, 2005, filed for record February 17, 2005 as Instrument Number 870940.

21. Reservation of oil, gas and other minerals, and all rights in connection therewith as contained in deed from Steelwood, Ltd. to CABB Development, LLC, dated May 24, 2005, filed for record June 2, 2005 as Instrument Number 896058.

22. Ninth Supplement to and Amendment of the Declaration of Rights, Covenants, Restrictions, Affirmative Obligations and Conditions applicable to Steelwood, Unit One, The Villas at Steelwood, Steelwood, Unit Two, Phase I, Steelwood, Unit Two, Phase II, The Cabins at Steelwood, and The Suites at Steelwood, a Condominium, and Steelwood, Unit Three, and The Cabins at Steelwood, Phase II, Steelwood, Unit Four, Rabbit Run, and The Villas at Steelwood, Phase II, Roans Creek, The Bluff, The Circle, and Lakeview at Steelwood, filed for record as Instrument Number 896060, and all amendments thereto.

23. Tenth Supplement to and Amendment of the Declaration of Rights, Covenants, Restrictions, Affirmative Obligations and Conditions applicable to Steelwood, Unit One, The Villas at Steelwood, Steelwood, Unit Two, Phase I, Steelwood, Unit Two, Phase II, The Cabins at Steelwood, and The Suites at Steelwood, a Condominium, and Steelwood, Unit Three, and The Cabins at Steelwood, Phase II, Steelwood, Unit Four, Rabbit Run, and The Villas, Phase II, The Circle at Steelwood, Lakeview at Steelwood, and Roans Creek at Steelwood, dated June 30, 2005, filed for record July 6, 2005 as Instrument Number 903693, and all amendments thereto.

24. Eleventh Supplement to and Amendment of the Declaration of Rights, Covenants, Restrictions, Affirmative Obligations and Conditions applicable to Steelwood, Unit One, The Villas at Steelwood, Steelwood, Unit Two, Phase I, Steelwood, Unit Two, Phase II, The Cabins at Steelwood, and The Suites at Steelwood, a Condominium, and Steelwood, Unit

Three, and The Cabins at Steelwood, Phase II, Steelwood, Unit Four, Rabbit Run, and The Villas, Phase II, The Circle at Steelwood, Lakeview at Steelwood, and Roans Creek at Steelwood, and Chapel Grove at Steelwood, dated September 29, 2005, filed for record September 30, 2005 as Instrument Number 926709, and all amendments thereto.

25. Declaration of Covenants, Conditions and Restrictions of Lakeview at Steelwood by CABB Development, LLC, dated September 30, 2005, filed for record September 30, 2005 as Instrument Number 926711, and all amendments thereto.

26. Articles of Incorporation of Lakeview at Steelwood Property Owners' Association, Inc., dated September 30, 2005, filed for record September 30, 2005 as Instrument Number 926714, and all amendments thereto.

27. By-Laws of Lakeview at Steelwood Property Owners' Association, Inc., dated September 30, 2005, filed for record September 30, 2005 as Instrument Number 926717, and all amendments thereto.

28. Building setback lines, easements, restrictions and all other matters as set out on recorded plat of Partial Resubdivision of Lots 1 through 9, Lakeview at Steelwood recorded on Slide 2234-E.

29. Terms and conditions of that Indemnity and Hold Harmless Agreement by and between CABB Development, LLC and Steelwood, Ltd., and the Town of Loxley dated September 29, 2005, filed for record November 10, 2005 as Instrument Number 935543.

30. Twelfth Supplement to and Amendment of the Declaration of Rights, Covenants, Restrictions, Affirmative Obligations and Conditions applicable to Steelwood, Unit One, The Villas at Steelwood, Steelwood, Unit Two, Phase I, Steelwood, Unit Two, Phase II, The Cabins at Steelwood, and The Suites at Steelwood, a Condominium, and Steelwood, Unit Three, and The Cabins at Steelwood, Phase II, Steelwood, Unit Four, Rabbit Run, and The Villas, Phase II, The Circle at Steelwood, Lakeview at Steelwood, Roans Creek at Steelwood, Chapel Grove at Steelwood, and The Bluff Resubdivision at Steelwood, dated February 21, 2006, filed for record February 21, 2006 as Instrument Number 957411, and all amendments thereto.

31. Terms and conditions of that Notice of Abandonment of Easement, Creation of Drainage Easement and Agreement Regarding Maintenance of Easement, by and between CABB Development, LLC and Steelwood, Ltd. dated March 28, 2006, filed for record March 31, 2006 as Instrument Number 965605.

**If married, Grantor hereby certifies that the above described property does not constitute his homestead or the homestead of his spouse.**

TOGETHER WITH ALL AND SINGULAR the rights, privileges, tenements, hereditaments and appurtenances hereunto belonging, or in anywise appertaining; TO HAVE AND TO HOLD unto the said GRANTEE, and to the heirs and assigns of said GRANTEE, in fee simple, FOREVER.

And, except as to the above and taxes hereafter falling due, which are assumed by the GRANTEE, the GRANTOR, for GRANTOR and for the heirs and assigns of GRANTOR, does hereby COVENANT AND WARRANT to and with the said GRANTEE, the heirs and assigns of said GRANTEE, that GRANTOR is seized of an indefeasible estate in fee simple in and to said real property, and has a good and lawful right to sell and convey the same; that GRANTOR is in quiet and peaceable possession thereof; and that said real property is, except as is recited above, free and clear of all liens and encumbrances of every kind and nature whatsoever; and GRANTOR does hereby WARRANT AND WILL FOREVER DEFEND the title to said real property, and the possession thereof, unto the said GRANTEE, and the heirs and assigns of said GRANTEE, against the lawful claims and demands of all persons whomsoever.

IN WITNESS WHEREOF, GRANTOR has set his hand and seal on this the ____19th____ day of

_____March_____, 2012.


_____
PETER J. DESOCIO

STATE OF                                  :

COUNTY OF                                 :

I, the undersigned authority, a Notary Public in and for said State and County, hereby certify that **PETER J. DESOCIO**, whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, (s)he executed the same voluntarily on the same bears date.

Given under my hand and seal on this ___19___ day of ___March___, 2012.

_Susan K. Montgomery_
NOTARY PUBLIC
My Commission Expires: 1-12-2020

*This instrument prepared by:*
*Lori Meadows, P.C.*
*24407 Lander Place*
*Orange Beach, AL 36561*
*(251) 942-5541*

**Grantor's address:**

**Grantee's address:**
3580 Lakefront De
Mobile AL 36695

4