UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE MANUFACTURED DRYWALL       MDL NO. 2047
PRODUCTS LIABILITY LITIGATION

SECTION: L

THIS DOCUMENT RELATES TO: 11-1395 *(Amorin)*       JUDGE FALLON
MAG. JUDGE WILKINSON

### DECLARATION OF LAN ZHE

This is a Declaration being made in accordance with and pursuant to 28 U.S.C. § 1746.

I, LAN ZHE, declare under penalty of perjury under the laws of the United States of

America that the following statements are true and correct:

1.    I am over eighteen (18) years of age, am competent to testify to the matters

contained herein, and have personal knowledge of these facts.

2.    I am certified as a Registered Interpreter of Mandarin Chinese on the Louisiana

Supreme Court registry of court interpreters.

3.    I am also a Mandarin Chinese Language Instructor at the Louisiana State

University in Baton Rouge.  A copy of my curriculum vitae is attached hereto as Exhibit A.

4.    I am a translator, and I am fluent in both Chinese and English.

5.    Based upon my experience and my ability to speak, read and write Chinese and

English fluently, I translated Affidavit One, which was signed by Zheng Yi, from Chinese to

English.  Attached hereto as Exhibit B is a true and correct copy of Affidavit One in Chinese.

Attached hereto as Exhibit C is a true and correct copy of Affidavit One translated from Chinese

to English.

1

6.     Based upon my experience and my ability to speak, read and write Chinese and English fluently, I have been asked to translate Affidavit Two, which was signed by Zheng Yi, from Chinese to English.  Attached hereto as Exhibit D is a true and correct copy of Affidavit Two in Chinese.   Attached hereto as Exhibit E is a true and correct copy of Affidavit Two translated from Chinese to English.

7.     I hereby certify that I translated Affidavit One and Affidavit Two from Chinese into English to the best of my ability and experience.  I further certify that these translations are true and accurate to the best of my knowledge.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on *Feb. 9*, 2015

*Lan Zhe*
LAN ZHE

2

EXHIBIT "A"

**Lan Zhe**
4955 Sweet Birch Dr., Baton Rouge, LA 70816
(225) 315-2661; lanlanzhe@gmail.com

<u>**Work experience**</u>

♦ **Mandarin Chinese Instructor,** *Louisiana State University, Baton Rouge, Louisiana, USA* – has taught beginning, intermediate and advanced Mandarin Chinese language courses as well as Chinese cinema (Aug. 2013-present)

♦ **Part-time Mandarin Chinese Court Interpreter and Translator,** *Baton Rouge City Court, Baton Rouge, Louisiana, USA* – working on an as-needed basis (Dec. 2014-present)

♦ **Mandarin Chinese Instructor,** *Institute for International Education, Guangdong University of Foreign Studies, Guangzhou, China* – taught various levels of Mandarin Chinese language courses (Sept. 2011-Apr. 2013)

♦ **English Instructor,** *College of Continuing Education, Guangdong University of Foreign Studies, Guangzhou, China* – taught various English language courses, including Interpreting and Business English; also organized and managed several intensive English training programs (Aug. 2010-Apr. 2013)

♦ **Part-time English Instructor,** *various locations, Guangzhou, China* – taught IELTS preparation and English courses in the Guangdong University of Foreign Studies, South China Normal University and Global IELTS Education (Mar. 2009-Aug. 2010)

♦ **Part-time Translation and Interpreting Teacher ,** *Tom-on-line Training Center, Guangzhou, China* – taught the CATTI online translation course and CATTI classroom interpreting course (May 2008-Aug. 2010)

♦ **Part-time Translator and Interpreter,** *various companies, Guangzhou, China* – worked as an independent Contractor on numerous translation and interpreting projects (Aug. 2008-Aug. 2010)

♦ **English and Chinese Teacher ,** *International Department, Tsinghua Experimental School in Shenzhen, China* – taught high school English; taught Chinese to Western teachers; organized school projects; served as an interpreter and translator on various school projects; supervised study trip to England (July 2003-Aug. 2008)

♦ **Part-time Translator,** *Shanghai Junnan Translation Company, Shanghai, China* – translated documents such as contracts and instruction books (June 2005-Oct. 2006)

<u>**Education and certifications**</u>

♦ **M.A. Translation Studies,** *College of Translation and Interpreting, Guangdong University of Foreign Studies, Guangzhou, China* – focus on translation between Chinese and English; Thesis: "A Comprehensive Survey of the Current Situation of E-learning Programs in Interpreting Training" (Sept. 2008-July 2010)

♦ **B.A. English,** *Sichuan International Studies University, Chongqing, China* – focus on Language and Culture; won scholarship awards four times (Sept. 1999-July 2003)

♦ **Registered Interpreter of Mandarin Chinese,** *Louisiana Supreme Court, Baton Rouge, Louisiana, USA* – completed training and passed exams (May 2014)

♦ **National Higher Education Lecturer,** *Ministry of Education, China* – obtained

3456825.1

university-level lecturer certification (May 2013)

♦ **Senior Chinese Language Teacher**, *International Profession Certification Association (USA)* – completed training and passed exam with distinction (Dec. 2011)

♦ **National Higher Education Teacher**, *Ministry of Education, China* – completed training and obtained university-level certification (Oct. 2011)

♦ **Level 2 Rank A National Mandarin Proficiency Certificate**, *State Language Affairs Commission, China* – passed exam to meet the language qualification for a Mandarin Chinese teacher in China (Apr. 2011)

♦ **CATTI *(China Accreditation Test for Translators and Interpreters)* Level 2 Translator**, *Ministry of Personnel, China* – completed training and passed exam for translator certification (highest obtainable level at that time) (Nov. 2007)

♦ **TEM-8 National English Examination Certificate**, *Ministry of Education, China* – highest level of English proficiency test for English majors in China (March 2003)

♦ **Level 3 English for Business Certificate**, *London Chamber of Commerce and Industry Examinations Board* – completed training and passed with credit (July 2002)

♦ **Level 2 National Computer Examination Certificate**, *Ministry of Education, China* – passed with distinction (Sept. 2001)

### Additional Information

♦ **Status**: natural-born Chinese citizen with permanent residence status in the USA

♦ **Language**: native Chinese speaker; fluent speaker of English; also studied Japanese

♦ **Awards**: won excellent teacher award eight times, *College of Continuing Education, Guangdong University of Foreign Studies, Guangzhou, China (*Aug. 2010-Apr. 2013)

♦ **Publications**: published articles with topics on interpreting teaching, translation and intercultural communication in various academic journals in China, including The Science Education Article Collects, *Wen Jiao Zi Liao* (translation: Documents of Culture and Education) and China Education Innovation Herald (Aug. 2010-July 2012)

♦ **Other experience**: an experienced emcee; plays piano; has enjoyed rich travel experiences throughout China and the U.S. as well as to other countries including Japan, South Korea, Canada, England and Australia

EXHIBIT "B"

# 公 证 书

中华人民共和国上海市东方公证处

### 第一项证言

郑亦亲自在本人面前经依法宣誓作证如下：

我是郑亦，担任东方国际集团上海市对外贸易有限公司总经理助理、业务十二部经理，经宣誓，基于我本人了解的情况以及我本人对有关东方国际集团上海市对外贸易有限公司（"东方外贸"）向美国密歇根州绍斯菲尔德市的 Metro Resources Corporation（"Metro"）出口Gypsum石膏板的的 东方外贸 业务记录的审阅，作出本声明。

#### I.

本证言和声明的作出是基于我本人通过与东方外贸主管人员和高级管理人员谈话所了解到的情况、我本人的经验以及我对以下材料的审查或审阅：

A. 东方外贸在 2006 年至 2012 年期间的公司账簿、记录和备案文件，但不包括会计记录；

B. 东方外贸 在 2006 年至 2012 年期间向国有资产监督管理委员会提交的报告；

C. 我本人对 2006 年适用的中国出口法律的了解和审阅。

#### II.

东方外贸 在1988年1月1日作为"一家全民所有制企业"设立；设立时的公司名称是上海市对外贸易公司。在1996年下半年，东方外贸 作为一家全资子公司并入东方国际（集团）有限公司（"东方国际集团"），并且自那时起，东方国际集团一直是东方外贸的唯一母公司。同时，公司名称变更为东方国际集团上海市对外贸易有限公司，即现在的公司名称。在提交给政府登记机关并由政府登记机关实际接受和批准的申请材料中，公司性质当时是"有限责任公司（国有独资）"。2006年5月，东方外贸 向政府登记机关提交了关于将其公司性质从"有限责任公司（国有独资）"变更为"一人有限责任公司（法人独资）"的申请，并且获得了政府登记机关的批准。东方国际（集团）有限公司当时便成

为东方外贸的唯一股东，它是一家国有独资有限责任公司，由上海市政府国有资产监督管理委员会（"上海国资委"）管理。因此，自2006年5月以来，东方外贸已经是东方国际（集团）有限公司的全资子公司，而东方国际（集团）有限公司则是由上海国资委（上海市政府）独资拥有。

III.

东方外贸 是一家由经营决策委员会管理的公司，经营决策委员会有四到五名委员组成，包含公司执行董事、东方外贸 的总经理、党委书记及东方国际（集团）有限公司有关部门负责人。所有委员都由东方国际（集团）有限公司委派或更换。

IV.

东方外贸的经营决策委员会由东方国际（集团）有限公司委派。东方国际（集团）有限公司由上海国资委控制和管理。东方外贸的执行董事由东方国际（集团）有限公司委派并在东方国际（集团）有限公司的监督下任职。执行董事和经营决策委员会对东方外贸的经营具有实际的控制、权力和影响力。但是，由于东方国际（集团）有限公司是 东方外贸 的唯一股东并且是有限责任的国有企业，因此它实际上由上海国资委管理。

V.

东方外贸 必须将其经营活动限于符合中华人民共和国法律的出口活动。东方国际（集团）有限公司和上海国资委会根据不时需求直接或间接地领导和指示东方外贸的活动。

VII.

东方外贸 是上海市政府和中华人民共和国政府的一个机构，并且作为一个在东方国际（集团）有限公司和上海国资委监督和指导下遵守中国出口法律的实体存在。

VIII.

在根据中国法规收取与出口中国制造的产品有关的费用和关税过程中，东方外贸以管理中国产品出口的形式扮演着准政府的角色。具体而言，1991年8月29日颁布实施的《关于对外贸易代理制的暂行规定》（"暂行规定"）第2条规定：无对外贸易经营权的公司、企业、事业单位及个人(委托人) 需要进口或出口商品(包括货物和技术)，须委托有该类商品外贸经营权的公司、企业(受托人)依据 国家有关规定办理。东方外贸 在 2006 年就是在那些规定下的这样一个"受托人"。这些规定在2008年度止。

IX.

根据暂行规定，2006年涉案交易发生时，像东方外贸这样的机构必须在出口环节起到作用，像泰山纸面石膏板有限公司以及美国密歇根州绍斯菲尔德市的 Metro这样的公司必须通过东方外贸这样的公司或机构出口和进口货物。

X.

东方外贸 对泰山纸面石膏板有限公司无所有权或控制权，且泰山纸面石膏板有限公司也不拥有或控制 东方外贸。东方外贸对美国密歇根州绍斯菲尔德市的 Metro无所有权或控制权，且 Metro 也不拥有或控制 东方外贸。

证人

2014. 12. 16

3

<h1 style="text-align:center">公　证　书</h1>

(2014)沪东证外字第 72338 号

申请人：郑亦，男，一九六七年十一月五日出生
　　　　公民身份号码：310107196711055017

　　公证事项：签名
　　兹证明郑亦于二〇一四年十二月十六日来到我处，在本公证员的面前，在前面的文件上签名。

中华人民共和国上海市东方公证处

公 证 员　

二〇一四年十二月十六日

ⅠⅠ49796882

Translation

NOTARIAL CERTIFICATE

(2014)H.D. Z.W.Z.No.72338

Applicant:
ZHENG Yi, male, born on November 5, 1967
Citizen ID No.: 310107196711055017

Notarized Matter: Signature
This is to certify that ZHENG Yi came to this office and affixed signature to the foregoing document before the notary public on December 16, 2014.

HUANG Xin (Seal)
Notary Public

The People's Republic of China
Shanghai Oriental Notary Public Office
(Seal)

December 16, 2014

I I 65356015

# 公　证　书

(2014)沪东证外字第 72339 号

申请人：郑亦，男，一九六七年十一月五日出生

公民身份号码：310107196711055017

公证事项：译文与原本相符

兹证明前面的英文译本内容与郑亦的(2014)沪东证外字第 72338 号公证书中文原本相符。

中华人民共和国上海市东方公证处

公　证　员　

二〇一四年十二月十六日

[ |40796886

<u>Translation</u>

## NOTARIAL CERTIFICATE

(2014)H.D. Z.W.Z.No.72339

Applicant:

ZHENG Yi, male, born on November 5, 1967

Citizen ID No.: 310107196711055017

Notarized Matter: True and Faithful Translation

This is to certify that the foregoing English translation is true and faithful to the original Chinese (2014)H.Z.W.Z. No. 72338 Notarial Certificate for ZHENG Yi.

HUANG Xin (Seal)
Notary Public

The People's Republic of China
Shanghai Oriental Notary Public Office
(Seal)

December 16, 2014

I I 65356019

EXHIBIT "C"

### Affidavit One

ZHENG Yi took an oath in accordance with the law and testified before me as follows:

My name is ZHENG Yi, and I am the general manager's assistant of Orient International Holding Shanghai Foreign Trade Co., Ltd. and the manager of the twelfth business section. After taking an oath, I made this statement based on the situation as I knew it as well as on the review of the business record of the Gypsum plasterboard exported from Orient International Holding Shanghai Foreign Trade Co., Ltd ("SFTC") to Metro Resources Corporation ("Metro") in Southfield, Michigan, U.S.A, as recorded by SFTC.

I

This affidavit and statement is based upon the situation as I knew it through communicating with the supervising staff and senior management of SFTC, my own experience, and my examination or review of the following materials:

A.     SFTC's company account-book, records and filed documents from 2006 to 2012, not including accountant records;

B.     SFTC's reports submitted to the State-owned Asset Supervision and Administration Commission from 2006 to 2012;

C.     My own understanding and review of the export law applied in China in 2006.

II

SFTC was founded as "a State-Owned Enterprise" on Jan. 1st, 1988, and its founding name was Shanghai Foreign Trade Co. In the second half of 1996, SFTC was merged into Orient International Holding Co., Inc. ("OIHC") as a wholly-owned subsidiary, and from that time, OIHC has always been the sole parent company of SFTC. At the same time, the company name was changed to Orient International Holding Shanghai Foreign Trade Co., Ltd., which is the current company name. The application materials of SFTC which were submitted to and got accepted and approved by the government registration authority showed that SFTC's company type was "Company with Limited Liability (Exclusively State-Funded)" at that time. In May 2006, SFTC submitted the application for changing its company type from "Company with Limited Liability (Exclusively State-Funded)" to "Company with Limited Liability and One-Person Authority (Exclusively Legal-Representative-Funded)" to the government registration authority, and this application was approved by the government registration authority. Orient International Holding Co., Inc. became the sole shareholder of SFTC at that time. OIHC is a wholly state-funded

ZHENG (Affiant's signed last name)

limited-liability company administered by the State-owned Asset Supervision and Administration Commission of the Shanghai Municipal Government ("SH-SASAC"). Therefore, since May 2006, SFTC has been a wholly-owned subsidiary of the Orient International Holding Co. Inc., while Orient International Holding Co. Inc. is exclusively funded and owned by SH-SASAC (Shanghai Municipal Government).

III

SFTC is managed by its Business Decision Committee, which is composed of four to five committee members, including the company's executive director, SFTC's general manager, the secretary of the Communist Party committee, and the related department head(s) from Orient International Holding Co., Inc. All the committee members are appointed or reassigned by Orient International Holding Co., Inc.

IV

SFTC's Business Decision Committee is appointed by Orient International Holding Co., Inc., and Orient International Holding Co., Inc. is controlled and managed by SH-SASAC. The executive director of SFTC is appointed and supervised by Orient International Holding Co., Inc. The executive director and the Business Decision Committee have actual control, power and influence over the operation of SFTC. However, Orient International Holding Co., Inc. is the only shareholder of SFTC, and OIHC is a state-owned enterprise with limited liability, so SFTC is actually managed by SH-SASAC.

V

SFTC is obligated to limit its business activities to export activities in accordance with the laws of the People's Republic of China. Orient International Holding Co., Inc. and SH-SASAC directly or indirectly lead and instruct SFTC in its activities based on need and demand.

VII

SFTC is an organization of the Shanghai Municipal Government and the government of the People's Republic of China. It is an entity which is supervised and guided by Orient International Holding Co., Inc. and SH-SASAC to abide by the export laws of China.

ZHENG (Affiant's signed last name)

2

## VIII

In the process of charging fees and tariffs relevant to exporting made-in-China products according to the laws and regulations of China, SFTC plays a quasi-government role by managing the export of Chinese products. Specifically speaking, the Interim Provisions on Foreign Trade Agency System ("Interim Provisions") was issued and put into effect on Aug. 29th, 1991. Article 2 of Interim Provisions states that companies, enterprises, institutions or individuals with no foreign trade operation rights (an entrusting entity), when they need to import or export merchandise (including goods and technology), they have to entrust companies or enterprises which have the foreign trade operation rights for that specific type of merchandise (the entrusted entity) to handle affairs according to the related regulations of China. SFTC was such an "entrusted entity" under those regulations in 2006. These regulations were abolished in 2008.

## IX

According to Interim Provisions, when the transaction involved in this case was done in 2006, organizations such as SFTC were required to play a role in the export process. Companies like Tain Taishan Plasterboard, Company, Ltd. and Metro of Southfield, Michigan, U.S.A. had to go through companies or organizations such as SFTC to import and export goods.

## X

SFTC does not have ownership or control power over Tain Taishan Plasterboard, Company, Ltd, nor does Tain Taishan Plasterboard, Company, Ltd own or control SFTC. SFTC does not have ownership or control power over Metro of Southfield, Michigan, U.S.A., nor does Metro own or control SFTC.

ZHENG Yi (Signature)

Affiant

Dec. 16th, 2014

3

EXHIBIT "D"

# 公 证 书

## 中华人民共和国上海市东方公证处

<u>第二项证言</u>

郑亦亲自在本人面前经依法宣誓作证如下：

我是郑亦，担任东方国际集团上海市对外贸易有限公司总经理助理、业务十二部经理，经宣誓，基于我本人了解的情况以及我本人对有关东方国际集团上海市对外贸易有限公司（"东方外贸"）向美国密歇根州绍斯菲尔德市的 Metro Resources Corporation（"Metro"）出口纸面石膏板的的东方外贸业务记录的审阅，作出本声明。

I.

证人未亲自参与东方外贸在2006年向Metro出口由泰山纸面石膏板有限公司（"泰山"）制造的纸面石膏板的交易。但是，证人当时被告知了这笔交易并亲自审阅了相关的东方外贸公司记录。泰山和东方外贸是无关联的公司。Metro和东方外贸也是无关联的公司。

II.

2006年4月12日，东方外贸同意帮助向Metro出口和销售由泰山制造的两种尺寸的纸面石膏板：½ 英寸（12.7 毫米） x 4 英尺（1220毫米） x 12 英尺（3660毫米）和 ½ 英寸（12.7毫米） x 4 英尺（1220毫米） x 8 英尺（2440毫米）。这个请求是由Metro 提出的，并且Metro 将东方外贸介绍给了泰山。东方外贸完全是一家出口公司，不生产纸面石膏板。所购买的纸面石膏板符合 Metro 的规格，并进行包装以用于运输，并交付至中国青岛，以便由泰山运输。

III.

东方外贸安排了代表 Metro 向生产商泰山购买纸面石膏板的事宜。这些石膏板是专门为出口而订购的，具有以下规格：

新

A. 纸面石膏板是根据国家建筑材料工业装饰装修建筑材料质量监督检测测试中心出具的第062019号检测报告生产的，需要符合ASTM C1396标准。这份报告证明，石膏墙经测试符合ASTM C-473-03标准，可以出口到美国。

B. 所生产的货物不含石棉，并且没有潮湿、发霉或损坏的货物被包装起来。

C. 货物由泰山标记为"中国制造""符合或超过 ASTM C1396-04 标准"，并贴上了"泰山"胶带。

D. 货物由泰山在托盘上用集装箱包装，以进行海运。

E. 货物由泰山交付至中国青岛港，带有检测证书和有效的增值税发票。

F. 货物按两种尺寸生产：½ 英寸（12.7 毫米）x 4 英尺（1220毫米）x 12 英尺（3660毫米）和 ½ 英寸（12.7毫米）x 4 英尺（1220毫米）x 8 英尺（2440毫米）。

IV.

东方外贸从未实际占有纸面石膏板，这些石膏板在泰山的工厂里进行包装，并直接放在集装箱里交付至中国青岛港，以用于运输。东方外贸从未实际检验个别货物，这些货物被装入集装箱，以用于海运，并且东方外贸从未独立检测、修改纸面石膏板或对纸面石膏板进行重新包装或重新贴标签。由于东方外贸是一家出口公司，根据《关于对外贸易代理制的暂行规定》（"暂行规定"）第8条，东方外贸需要购买、出口和转售纸面石膏板。2006年，根据出口规定，所有合同都是以外贸公司东方外贸的名义签署的。

V.

国家建筑材料工业装饰装修建筑材料质量监督检测测试中心向 东方外贸提供了纸面石膏板的一份测试报告，日期为2006年2月16日。这份测试报告显示，泰山生产的纸面

石膏板根据ASTM C473-3进行了测试，并且经测试符合ASTM C1396-C、和 C1396-M-04标准。

VI.

纸面石膏板由泰山通过陆路运输到中国青岛港，以用于运输至美国佛罗里达州埃弗格莱兹港口并交付给Metro。2006年4月27日，208,000千克（毛重）纸面石膏板从青岛运输给Metro，以在美国佛罗里达州埃弗格莱兹港口交货。

VII.

2006年5月7日，208,000千克（毛重）纸面石膏板从中国青岛运输给Metro，在美国佛罗里达州埃弗格莱兹港口交货。

VIII.

2006年5月28日，260,000千克（毛重）纸面石膏板从中国青岛运输给Metro，在美国佛罗里达州埃弗格莱兹港口交货。

IX.

2006年6月4日，156,000千克纸面石膏板运输给Metro，在美国佛罗里达州埃弗格莱兹港口交货。

X.

所运输的纸面石膏板的总出口价值和数量为26,880件、832,000千克（毛重）。

XI.

记录显示，Metro向东方外贸支付了两笔款项：每一笔金额为38,571.20美元，总计77,142.20美元。这包括货款和运费。

XII.

东方外贸未获悉与2006年纸面石膏板运输或出口有关的任何投诉、不满或争议。纸面石膏板在运输和交货过程中无任何损坏，且东方外贸从未从Metro处收到任何投诉或货物损坏通知或货物拒收通知或关于货物状况的不满。

XIII.

Metro根据双方之间的协议及时向东方外贸支付了货款，无任何意外事件发生。Metro当时未对出口过程、交易或货物状况表示任何不满。

XIV.

在涉及向Metro出口和销售纸面石膏板的交易之前的任何时间，东方外贸未以任何方式获悉关于由泰山生产的纸面石膏板的质量或安全性的不满。东方外贸是一家出口商，不是生产商或检测机构，因此根据暂行规定，其对此次交易的参与仅限于石膏板的出口。东方外贸在任何时候均未对纸面石膏板有任何设计、生产、贴标或检测等行为。

证人　邓永

2014.12.16

4

# 公　证　书

(2014)沪东证外字第 72340 号

申请人：郑亦，男，一九六七年十一月五日出生
　　公民身份号码：310107196711055017

公证事项：签名
兹证明郑亦于二〇一四年十二月十六日来到我处，在本公证员的面前，在前面的文件上签名。

中华人民共和国上海市东方公证处

公证员　

二〇一四年十二月十六日

Ⅱ 49796892

Translation

NOTARIAL CERTIFICATE

(2014)H.D. Z.W.Z.No.72340

Applicant:

ZHENG Yi, male, born on November 5, 1967
Citizen ID No.: 310107196711055017

Notarized Matter: Signature

This is to certify that ZHENG Yi came to this office and affixed signature to the foregoing document before the notary public on December 16, 2014.

HUANG Xin (Seal)
Notary Public

The People's Republic of China
Shanghai Oriental Notary Public Office
(Seal)

December 16, 2014

I I 65356025

# 公　证　书

(2014)沪东证外字第 72341 号

申请人：郑亦，男，一九六七年十一月五日出生
公民身份号码：310107196711055017

公证事项：译文与原本相符
　　兹证明前面的英文译本内容与郑亦的 (2014)沪东证
外字第 72340 号公证书中文原本相符。

中华人民共和国上海市东方公证处

公证员 

二〇一四年十二月十六日

I I 49796895

Translation

NOTARIAL CERTIFICATE

(2014)H.D. Z.W.Z.No.72341

Applicant:

ZHENG Yi, male, born on November 5, 1967

Citizen ID No.: 310107196711055017

Notarized Matter: True and Faithful Translation

This is to certify that the foregoing English translation is true and faithful to the original Chinese (2014)H.D.Z.W.Z. No. 72340 Notarial Certificate for ZHENG Yi.

HUANG Xin (Seal)
Notary Public

The People's Republic of China
Shanghai Oriental Notary Public Office
(Seal)

December 16, 2014

1165356029

EXHIBIT "E"

## Affidavit Two

ZHENG Yi took an oath in accordance with the law and testified before me as follows:

My name is ZHENG Yi, and I am the general manager's assistant of Orient International Holding Shanghai Foreign Trade Co., Ltd. and the manager of the twelfth business section. After taking an oath, I made this statement based on the situation as I knew it as well as on the review of the business record of the gypsum plasterboard exported from Orient International Holding Shanghai Foreign Trade Co., Ltd ("SFTC") to Metro Resources Corporation ("Metro") in Southfield, Michigan, U.S.A, as recorded by SFTC.

I

The affiant did not personally take part in SFTC's transaction of the export of gypsum plasterboard manufactured by Tain Taishan Plasterboard, Company, Ltd ("Taishan") to Metro. However, the affiant was notified of this transaction and personally reviewed the relevant SFTC company records at that time. Taishan and SFTC are companies with no affiliation. Metro and SFTC are also companies with no affiliation.

II

On Apr. 12th, 2006, SFTC agreed to assist in the export and sale to Metro of two sizes of gypsum plasterboard manufactured by Taishan: 1/2 in (12.7mm) x 4 ft (1220mm) x 12 ft (3660mm), and 1/2 in (12.7mm) x 4 ft (1220mm) x 8 ft (2440mm). This request was proposed by Metro, and Metro introduced SFTC to Taishan. SFTC is solely an export company, and it does not manufacture gypsum plasterboard. The purchased gypsum plasterboard met the specification required by Metro, and it was packaged for transport. It was delivered to Qingdao, China in order to be transported by Taishan.

III

SFTC made the arrangements representing Metro for the purchase of gypsum plasterboard from the manufacturer Taishan. These plasterboards were specifically ordered for export. They had the following specifications:

ZHENG (Affiant's signed last name)

1

A. The gypsum plasterboard was manufactured according to the Inspection Report No. 062019 issued by the Quality Supervision and Inspection Center of National Building Materials Industry for Decoration and Finishing Building Materials. It was required to meet the ASTM C1396 Standard. This report certified that the plaster wall met the ASTM C-473-03 Standard after being tested, and it could be exported to the U.S.A.

B. The manufactured goods did not contain asbestos, and there were no damp, moldy or damaged goods being packaged.

C. The goods were labeled "Made in China" and "Meets or exceeds the ASTM C1396-04 Standard" by Taishan, and also taped with "Taishan" tape.

D. The goods were packaged in containers on pallets by Taishan to be transported by sea.

E. The goods were delivered to the Port of Qingdao, China by Taishan. The goods also contained inspection certificates and valid value-added tax receipts.

F. The goods were manufactured according to two sizes: 1/2 in (12.7mm) x 4 ft (1220mm) x 12 ft (3660mm), and 1/2 in (12.7mm) x 4 ft (1220mm) x 8 ft (2440mm).

IV

SFTC never took physical possession of the gypsum plasterboard. These plasterboards were packaged in the factory of Taishan and were directly placed into containers to be delivered to the Port of Qingdao, China for transport. SFTC never physically inspected the individual goods. These goods were placed into containers to be transported by sea. Furthermore, SFTC never independently inspected or altered the gypsum plasterboard, nor repackaged or relabeled the gypsum plasterboard. Since SFTC is an export company, according to Article 8 of the Interim Provisions on Foreign Trade Agency System ("Interim Provisions"), SFTC was required to purchase, export and resell the gypsum plasterboard. In 2006, in accordance with the export regulations, all contracts were signed in the name of the foreign trade company SFTC.

V

The Quality Supervision and Inspection Center of National Building Materials Industry for Decoration and Finishing Building Materials provided SFTC with an inspection report of the gypsum plasterboard on Feb. 16th, 2006. This inspection

ZHENG (Affiant's signed last name)

2

report showed that the gypsum plasterboard manufactured by Taishan was tested according to ASTM C473-3, and it met the standards of ASTM C1396-C and C1396-M-04 after being tested.

## VI

The gypsum plasterboard was transported by land by Taishan to the Port of Qingdao, China to be transported to Port Everglades, Florida, U.S.A. to be delivered to Metro. On Apr. 27th, 2006, the gypsum plasterboard weighing 208,000 kg (gross weight) shipped from Qingdao destined for Metro was to be delivered to Port Everglades, Florida, U.S.A.

## VII

On May 7th, 2006, the gypsum plasterboard weighing 208,000 kg (gross weight) shipped from Qingdao, China destined for Metro was delivered to Port Everglades, Florida, U.S.A.

## VIII

On May 28th, 2006, the gypsum plasterboard weighing 260,000 kg (gross weight) shipped from Qingdao, China destined for Metro was delivered to Port Everglades, Florida, U.S.A.

## IX

On June 4th, 2006, the gypsum plasterboard weighing 156,000 kg destined for Metro was delivered to Port Everglades, Florida, U.S.A.

## X

The total export value and quantity of the shipped gypsum plasterboard was 26,880 pieces and 832,000 kg (gross weight).

## XI

The records showed that Metro paid SFTC with two payments; each payment was USD $38,571.20, and the total amount was USD $77,142.20. This included the payment for the goods and the transport expenses.

ZHENG (Affiant's signed last name)

3

## XII

SFTC did not learn of any complaint, dissatisfaction or dispute related to the transport or export of the gypsum plasterboard delivered in 2006. There was no damage to the gypsum plasterboard in the process of transport and delivery, and SFTC never received any complaint, notice of damaged goods, notice of any refusal to accept the goods, nor any dissatisfaction with the condition of the goods.

## XIII

Metro made timely payments to SFTC for the goods in accordance with the agreement between the two parties, and no unexpected events occurred. Metro did not express any dissatisfaction with the export process, the transaction or the condition of the goods at that time.

## XIV

At no time prior to SFTC's involvement with the transaction of exporting and selling gypsum plasterboard to Metro did SFTC learn in any way of any dissatisfaction with the quality or safety of the gypsum plasterboard manufactured by Taishan. SFTC is an exporter, not a manufacturer or an inspection organization. Therefore, according to Interim Provisions, SFTC's involvement with this transaction was limited only to the export of the plasterboard. SFTC has not conducted any activities such as the design, production, labeling or inspection of gypsum plasterboard at any time.

Affiant      ZHENG Yi (Signature)

Dec. 16th, 2014

*Lan Zhe*

*Feb. 9, 2015*

4