# EXHIBIT 2

IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION

**AFFIDAVIT OF ALLISON GRANT, ESQ.**

STATE OF NORTH CAROLINA  )
                          ) SS
COUNTY OF BUNCOMBE        )

BEFORE ME, the undersigned authority personally appeared ALLISON GRANT, ESQ., who, after being first duly sworn, under penalty of perjury, did depose and declare that the following are true and correct:

1. I have been a member of the Florida Bar since 1990 and at all times have remained in good standing.

2. I am currently the sole proprietor and member of the law firm of Allison Grant, P.A.

3. Allison Grant, P.A. currently represents property owners and condominium associations who have asserted claims in the instant litigation related to approximately 192 properties.

4. Allison Grant, P.A. also jointly represents with its co-counsel, Baron & Budd, PC., approximately 868 property owners and condominium associations who have asserted claims in the instant litigation.

5. The undersigned, initially as a partner of Shapiro Blasi Wasserman & Gora, P.A. until December 2010, and since that time as a sole proprietor and member of the law firm of Allison Grant, P.A., has worked tirelessly and almost exclusively for the last seven years on these cases.

6. As a victim of Chinese drywall, the undersigned began investigating Chinese drywall in the fall of 2008. The undersigned worked with the Florida Department of Health and several inspectors and other experts around the country to assist in developing an inspection protocol for properties with suspected Chinese drywall, which would later be utilized for the benefit of the undersigned's clients.

7. At the outset, the undersigned was involved in virtually every aspect of the case including, but not limited to, signing up clients, counseling clients on the litigation and numerous matters outside the four corners of the complaint (such as foreclosures, health issues, personal property issues, homeowner's insurance, bankruptcies and tax abatements), identifying and locating builders, installers and suppliers, often attending property inspections, assisting with the preparation of statutory "Chapter 558" notice letters sent to defendants, communicating with counsel for many builders, assisting clients with tax assessment reductions, communicating with lenders to assist clients with mortgage forbearances, preparing the necessary paperwork for the MDL (including plaintiff profile forms), submitting the necessary paperwork for enrollment in the Pilot Program, often attending inspections conducted by Benchmark, reviewing inspection reports, attending numerous Moss's walk-throughs, counseling clients regarding settlement and completion of required paperwork, observing and monitoring the progress of construction, addressing issues that arose during construction, punch list items and warranty issues. At the outset, the undersigned also communicated with Knauf's counsel almost on

a daily basis. Continued communication was required throughout the Pilot Program.

8.  Significant time was also spent on representing condominium associations. The undersigned and Baron & Budd represented the association for the first large scale condominium building (95 units in total) in Miami, Florida to be remediated through the Knauf Settlement. This was a herculean task. Aside from the unique construction issues that had to be addressed, there was tremendous work and coordination with unit owners, defense counsel and Moss. Additionally, the undersigned and Baron & Budd negotiated a Term Sheet specifically for condominiums, including a specific release for unit owners and tenants. There were also owners who did not have Chinese drywall, but nonetheless many had to vacate during remediation. There were countless meetings and communications with Moss, unit owners and the condominium association throughout the remediation process – roughly one year. Thereafter, Baron & Budd and Allison Grant did the same for a 107 unit building in Fort Lauderdale, Florida, and several other smaller condominium communities.

9.  Significant time was also expended on the GBI settlement, including appeals, as well as submitting claims to the Other Loss Fund. To this day, the undersigned continues to spend significant time counseling clients on various matters, including self-remediation, preserving evidence, making proper disclosures in the event of a sale (including addenda), as well as keeping clients and lenders informed regarding the status of the litigation.

10.  The above is a small sample of the work performed by the

undersigned over the last seven years. The undersigned has personally expended approximately 16,395 hours representing clients with claims in the instant litigation. This does not include any common benefit time that has been submitted to Philip Garret pursuant to Pre-Trial Order No. 9. Additionally, staff expended approximately 4,480 hours to assist me with the representation of these clients.

Allison Grant, Esq.

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 28th DAY OF
June, 2016.

NOTARY PUBLIC
Print Name: Alesia H Presley
MY COMMISSION EXPIRES: 2/18/2021
[APPLY SEAL]