UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO:<br>Hobbie, et al. v.<br>RCR Holdings II, LLC, et al. (No. 10-1113) | |

**THE FEE COMMITTEE'S RESPONSE TO THE VILLA LAGO PLAINTIFFS' MOTION FOR A FINAL AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF COSTS AND IN OPPOSITION TO ALLOCATION MOTION
<u>PURSUANT TO PRE-TRIAL ORDER NO 28(F)</u>**

**I.    INTRODUCTION**

The Fee Committee ("FC") hereby submits this response to the Villa Lago Plaintiffs' Motion for Final Award of Attorneys' Fees and Reimbursement of Costs and in Opposition to Allocation Motion Pursuant to Pretrial Order 28(F)[1] (Rec.Doc. 20347).  For the reasons set forth below the Villa Lago Plaintiffs' motion should be denied.

Pretrial Order No. 28 was issued by this Court to establish the procedures and guidelines for determining the appropriate award of attorneys' fees and costs from the inter-related settlements and voluntary payments,[2] and then the appropriate allocations from any such award. The funds addressed by PTO No. 28 are intended to be the source for attorneys' fees and the

---

[1]  The Fee Committee will address separately and as part of a global response to the various objections filed to the Allocation Plan the points raised by counsel for Villa Lago (D.E. 20347). With this Memorandum of Law, the Fee Committee is only opposing the request by counsel for Villa Lago for special payment from the Global Fee Award and a treatment unique among all of the individual counsel involved in this litigation.

[2]  On March 25, 2011, the Court entered an Order establishing a procedure whereby settling parties could voluntarily set-aside payments from any settlement proceeds received outside of the inter-related class settlements and others at issue here ("Voluntary Common Benefit Payments"), in order to compensate common benefit counsel "at a future date" [Rec. Doc. #8389].

1

reimbursement of reasonable expenses for all attorneys participating in these proceedings. Accordingly, this Court took great care to delineate the methods and manner by which consideration of compensation will be equitably determined in MDL 2047.

Against this Court's directives, the Villa Lago plaintiffs seek special dispensation and unique, even preferential, treatment from all others participating in the fee and cost allocation process described by Pretrial Order No. 28.  These class members contend that when the Coastal settlement was negotiated a material inducement offered by the Villa Lago defendants to them was a provision in their settlement agreement where these class members made clear their intention to seek a payment for fees from the Knauf, Banner and Global Settlements on which their settlement was largely built.  *See* Coastal Settlement Agreement (Rec.Doc. 16741-2).

Unstated by the Villa Lago Plaintiffs is the important, and undisputed truth that the PSC, as representative of over 10,000 plaintiffs, was not a party to this agreement.  Implicitly acknowledged in movants' papers is the fact that <u>all</u> of the other settlement funds from which these plaintiffs seek to draw payment of counsel fees and costs (*i.e.*, the Knauf, Banner & Global settlements) were created through settlements that were separately negotiated by the PSC. Neglected in the movants' papers is the acknowledgement that their settlement was a pilot house built atop of these global settlements, including the remediation program established with Knauf. *See e.g.* Villa Lago Settlement Term Sheet with Knauf at ¶ 1 (Rec. Doc. 20347-4).  Ignored by the Villa Lago Plaintiffs is the fact that the Motion puts their counsel in a direct conflict of interest with counsels' other Chinese drywall clients, benefitting themselves from the limited fund for counsel fees no available, and also in conflict with their counsel's other individually retained clients that are not participating in the Villa Lago class.

But the Coastal Settlement Agreement is irrelevant at this juncture since the settlement had already been taken into consideration by the PSC and the Court in the deliberate process undertaken to allocate fees and costs to counsel in this litigation.  Instead, PTO No. 28 controls.  In fact, the Coastal Settlement Agreement recognizes that PTO No. 28 controls.  Gradually, PTO 28 and each of its subsequent iterations have guided a process into which the Motion by the Villa Lago plaintiffs does not fit.  On December 17, 2014, this Court granted evenly distributed per property stipends for reimbursement of individual costs.[3]  Rec. Doc. 18215.  On May 17, 2016, the Court granted the First Amendment to the Joint Petition for a Global Award of Attorneys' Fees and Reimbursement of Expenses and established the limited funds from which all attorneys' fees costs were to be paid: both Common Benefit Fees and Individual Counsel Fees.  Rec. Doc. 20257.

With PTO 28(F), entered on May 25, 2016, the Court directed that the process for allocation of these funds would move forward to determine the allocation of funds for Common Benefit Fees and the allocation of funds for the Individual Counsel Fees: by June 8, 2016, the FC was to file an Allocation Motion; by June 28, 2016, oppositions were to be filed; and by July 11, 2016, the FC will reply to the oppositions.[4]  Rec. Doc, 20282.  No provision is made under PTO 28(F) or the earlier stipend award for special petition by any individual counsel to create a third path to the limited fund for the payment of fees through their own motion.

Rather, the Court made clear individual awards were to follow a clearly outlined path.  Individual costs were allocated on an equal basis by property (distinguishing KPT properties from

---

[3] The Villa Lago Plaintiffs already tried to obtain special treatment, petitioning the Court on February 10, 2015, for an award of their individual costs notwithstanding the stipend award.  Rec. Doc. 18314.  On March 4, 2015, the FC addressed this other effort by the Villa Lago Plaintiffs to "jump the gun" and get preferential treatment for their costs under the global settlements Rec. Doc. 18423. The Court took this motion under advisement without oral argument.  Rec.Doc 18354.   The Court has yet to issue a decision on that earlier motion.

[4] On June 14, 2016, the Court reiterated this limited schedule of briefing and set the hearing on the Allocation Motion for July 27, 2016.   Rec. Doc. 20304.

non-KPT properties). Rec. Doc. 18215. Individual fees will be determined later, on the basis of a mathematical formula to be applied equally to each property, once the fund for individual claimants' fees is determined. PTO 28(F) at ¶ 5.

Because the Villa Lago plaintiffs are mistaken about the import of their own Settlement Agreement, which agreement is of no moment any longer as the Villa Lago Plaintiffs are bound by the terms of the inter-related settlements, as well as procedures and the requirements of PTO No. 28, the Fee Committee must oppose their motion which must be denied.

## II. FACTUAL BACKGROUND

At the outset of this litigation, the Court appointed individual plaintiffs' counsel to the Plaintiffs' Steering Committee ("PSC"), which committee was authorized to manage prosecution of the claims of all plaintiffs participating in this MDL.[5] Amongst the many responsibilities assigned to the PSC was the obligation to "explore, develop and pursue all settlement options" in the MDL. *In re Chinese Manufactured Drywall Products Liability Litigation*, MDL 2047, PTO No. 8 at 4 (E.D. La. July 27, 2009).

To this end, the PSC engaged in extensive efforts to resolve this litigation. Over the past six years, the PSC has achieved a landmark global resolution approved by this Court on February 7, 2013. *See* Order & Judgment (E.D. La. Feb. 7, 2013) (Rec.Doc. No. 16570). As a result of protracted and arm's-length negotiations with hundreds of builders, installers, suppliers and manufacturer Defendants and their insurers, the PSC secured for plaintiffs a series of separate but inter-related and inter-dependent class settlements with: (1) supplier Interior Exterior Building Supply, LP ("InEx") and its insurers[6] (the "InEx Settlement"); (2) the Banner entities[7] and their

---

[5] *In re Chinese Manufactured Drywall Products Liability Litigation*, MDL 2047, PTO No. 8B (E.D. La. March 19, 2012).

[6] InEx's Insurers that have entered into a class settlement include Arch Insurance Company ("Arch") and

4

insurers [8] (the "Banner Settlement"); (3) L&W Supply Corporation ("L&W") and USG Corporation (the "L&W Settlement"); (4) the Knauf Defendants[9] (the "Knauf Settlement"); and (5) more than 700 additional Participating Builders, Suppliers, Installers, and their Participating Insurers (the "Global Settlement"), as well as four other Virginia settlements. These settlements have all been finally approved by the Court and are providing necessary remediation and monetary relief to the thousands of claimants impacted by Chinese Drywall, many of whom have been displaced from their homes, lost their properties due to foreclosure or sales in mitigation and suffered loss of personal property. In addition, in recognition of the PSC's common benefit efforts, the PSC has received over $2.7 million in payments pursuant to this Court's Voluntary Payment Order.

Coincident to these efforts, the PSC assisted numerous counsel for property owners in their separate efforts to resolve litigation against the Defendants and others, *e.g.*, the Harrell class, the Pritchard Housing Authority, and to the point of the instant motion, the Villa Lago class.[10]

The Villa Lago class settlement involved several settlements that depended upon the inter-related settlements that were funded in part by the Knauf, Banner & Global settlements that were negotiated by the PSC. *See, e.g.*, discussion in footnote 3; Third Amended Knauf

---

Liberty Mutual Fire Insurance Company ("Liberty").

[7] The Banner entities include: Banner Supply Co., Banner Supply Co. Pompano, LLC, Banner Supply Co. Port St. Lucie, LLC, Banner Supply Co. Ft. Myers, LLC, Banner Supply Co. Tampa, LLC, Banner Supply International, LLC, and any other entity insured under the Banner Insurance Policies (collectively, "Banner").

[8] Banner's Insurers include: Chartis, FCCI, Hanover, and Maryland Casualty.

[9] The Knauf Defendants include: Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH ("KI"), Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda. and PT Knauf Gypsum Indonesia.

[10] For example, the PSC consented to credits in the amount of $3,936,000 for the Coastal Construction Group of South Florida, Inc., and $2,376,000 (collectively $6,312,000) from the Global Settlement funds to accommodate the Villa Lago/Coastal Settlement. *See* Amended Global Settlement, Sections 4.2 & 4.2.1 (Rec.Doc. 15965-2). In agreeing to this accommodation, the PSC benefitted the Villa Lago plaintiffs by affording them the opportunity to receive money from the Global settlement in advance of its final approval.

Settlement Agreement Section 14.7 (Rec.Doc. 17398). The Coastal Settlement Agreement was filed with the Court on April 8, 2013. Proof of the connectedness of the Villa Lago Settlement to the inter-related settlements is evident in the Coastal Settlement Agreement's provisions addressing attorneys' fees and costs. *See* Coastal Settlement Agreement (Rec.Doc. 16741-2). In this arena, the Coastal Settlement Agreement basically defers to the procedures intended by this Court to apply to the inter-related settlements. For example, Section 13.1 of the Coastal Settlement Agreement, in relevant part, provides:

> Settlement Class Counsel shall be awarded such fees and reimbursed such costs and expenses from the Villa Lago Settlement Fund <u>as are approved by the Court</u>. However, <u>subject to Court approval</u>, the parties have agreed to attorneys' fees of $2,670,960.62 and costs of $380,946 for a total of $3,051,906.63 as shown on Exhibit "A," which amount includes, but is not limited by the projected award of attorneys fees and costs settlement class counsel **may receive** from the Banner Settlement and Global Settlement and that **may be paid** to the Villa Lago Settlement Fund consistent with any fee applications that Settlement Class Counsel may submit to the Court in the Banner Settlement and in the Global Settlement.

*Id.* (emphasis added).

Section 13.4 of the Coastal Settlement Agreement confirms that the payment of costs from the inter-related settlements is dependent on the established procedures applicable to all fee applicants against those funds. In particular, Section 13.4 states:

> The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys fees, costs, and expenses to be paid out of the Villa Lago Settlement Fund, and any plan for distribution of the Villa Lago Settlement Fund to class members, are not part of the Settlement Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any order or proceeding relating to the Fee and Expense Application or any plan of distribution . . ..

From these two provisions of the Coastal Settlement it is plain that "any order or proceeding relating to the Fee and Expense Application" of Villa Lago Class counsel is separate from the terms of the Coastal Settlement agreement itself. The Villa Lago Class understood at the inception that any award provided by the Court was always conditional and contingent upon the intercourse between their settlement and the other inter-related settlements from which funds were being drawn to accommodate the Villa Lago settlement, and that the award and allocation were always subject to Court approval.

Following the announcement of the Coastal settlement, and after receiving inquiries about the interplay between the Villa Lago Settlement and the inter-related settlements, Lead Counsel Arnold Levin on August 22, 2013 confirmed in writing an agreement between Villa Lago Class Counsel and the PSC regarding fees and costs. *See* Letter of Arnold Levin (August 22, 2013)(Rec.Doc. 17700-7). Therein it was made clear that, "there can be no distribution of any monies until our joint MDL petition for counsel fees and costs is presented to the Court." *Id.* To emphasize this point, it was repeated that judicial approval of fees and costs was paramount:

> As stated above, all fees and costs on individual retainer agreements and common benefit fees are covered by the Knauf, Banner and Global settlement agreements. <u>They will be distributed only upon order of the Court after filing of a petition relative to the same</u>.

*Id.* (emphasis added).[11]

In sum, the parties to the Coastal Settlement acknowledged that there may be a later award of additional fees and costs from the Banner, Global and Knauf settlements, but were only assured to receive a petitioned payment of fees from the Coastal Settlement and only from those funds that

---

[11] The August 22, 2013 letter agreement was filed with the Court on May 20, 2014 as an exhibit to the Consolidated Joint Petition of the Fee Committee and the Plaintiffs' Steering Committee for a Global Award of Attorneys' Fees and Reimbursement of Expenses, Filed Pursuant to Pretrial Order No. 28 (Rec.Doc. 17700-7).

were generated by that individual settlement.[12] At no time were the projected or hoped-for fees from other sources promised or even provided as a right or part of the global settlements. Rather, the Villa Lago Plaintiffs stood in the Banner, Global and Knauf Settlements as other individual claimants who were benefitted by these global settlements negotiated by the PSC.

Thereafter, on January 10, 2014, this Court issued PTO No. 28, which was intended "to provide for the orderly and efficient presentation and determination of a request for the award of attorneys' fees and reimbursement of litigation expenses" from the inter-related settlement funds. *In re Chinese Manufactured Drywall Products Liab. Litig.*, MDL No. 2047, PTO No. 28 at 2 (E.D.La. Jan. 17, 2014)(Rec. Doc. 17379). PTO No. 28 appointed the Fee Committee ("FC"), and set out a staged process with "guidelines for the efficient presentation to this Court to allow for the determination of making an award of attorneys' fees and reimbursement of litigation expenses, and subsequently an allocation from such an award." *Id.* Since January 2014, the FC has diligently reviewed all submitted Initial and Second Affidavits and conducted, attorney interviews, etc., as part of a deliberative process, consistent with established jurisprudence, including *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974); *In re High Sulfur Gulf Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 226 n.6 (5th Cir. 2008); *In re: Vioxx Products Liability Litig.*, 802 F.Supp.2d 740 (E.D. La. 2011); and *Union Asset Mgmt. Holding AG v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012), to work towards a recommendation for the Court's consideration.

Following Court directives, the FC filed its Consolidated Joint Petition of the Fee Committee and the Plaintiffs' Steering Committee for a Global Award of Attorneys' Fees and

---

[12] Thus, the "Coastal Defendants", that is the defendants who were unique to the Coastal Settlement, were the ones making payment of the absolute bulk of the settlement contributions made to the Coastal Settlement fund. *See* Coastal Settlement Agreement, ¶ 2.1 (Rec.Doc. 16741-2). The Villa Lago Plaintiffs acknowledge that they petitioned for a payment of fees and costs from those funds. Villa Lago Br. at 3.

Reimbursement of Expenses, Filed Pursuant to Pretrial Order No. 28 (Rec.Doc. 17700). Thereafter, on July 9, 2014, the PSC filed its Motion for Additional Common Benefit Assessments, Filed Pursuant to Pretrial Order No. 28 (Rec.Doc. 17831), which *inter alia* sought assessments in the Villa Lago matter. The motion was joined by the FC. Thereafter, on December 17, 2014, the Court approved the FC's recommendation and granted per property stipends of $1,000 for those properties where KPT Chinese drywall was present (including homes with mixed boards); $150 for properties with non-KPT Chinese drywall only; and a reasonable holdback of other funds "for use in connection with on-going remaining litigation and settlement administration work." Rec Doc. 18215.

Most recently, on May 17, 2016, the Court granted the First Amendment to the Joint Petition for a Global Award of Attorneys' Fees and Reimbursement of Expenses and established the limited funds from which all attorneys' fees costs were to be paid. Rec. Doc. 20257. Pursuant to PTO 28(F), the FC has been following the procedure for this next phase of the allocation process, the FC filed its Allocation Motion on June 8, 2016 and is currently preparing its responses to the objections that were filed by June 28, 2016. This process will determine the allocation of monies between two sets of counsel: Common Benefit counsel and contract attorneys on their individual claimants' retainer agreements.

No provision is made for special petition by any individual counsel to create a third path to the limited fund for the payment of fees through their own motion. And no provision was made for individual petition for reimbursement of individual costs. Rather, the Court made clear individual awards were to follow a clearly outlined path: "Following the Court's ruling with regards to the Allocation Motion [establishing the Common Benefit and Individual Claimant funds]. . . the Court will determine the appropriate compensation to be awarded to counsel for

individual claimants who seek compensation for handling an individual Chinese drywall claim that is eligible in any of the various settlements." *Id.* at ¶ 5.

Moreover, the Court has established the measure of compensation individual counsel will receive: the ratio of the actual recovery for a claimant to the total amount of recovery by all claimants multiplied by the total amount that will be allocated to the Individual Counsel Fees fund:

$$\frac{\text{the actual recovery amount of the claimant}}{\text{The total amount of recovery paid to all claimants}} \times \text{The total amount awarded in the Allocation Motion for individual counsel fees}$$

For example, if an individual property owner has recovered $100,000 in the settlement and the total amount of recovery paid to all claimants in the settlement equals $500 million and the total amount awarded in the Allocation Motion for individual counsel fees is $100 million, then the total amount to be awarded to the individual counsel shall be $20,000.00 [$100,000.00 ÷ $500 million X $100 million = $20,000].

The Villa Lago Plaintiffs are not entitled to any different award or extraordinary treatment.

Indeed, with their demand for $6,421,516.36 in fees, the Villa Lago Plaintiffs are effectively seeking to be paid over 8% of the total fund recognized by the Court for the payment of individual counsel fees. Rec. Doc. 20293-4. Tacking on their additional demand for $232,996.00 in costs, the Villa Lago Plaintiffs want to receive 8.5% of the total fund. Even if a different allocation is ultimately made between the payment for common benefit counsel fees and payment for individual counsel fees, the disparity will not be significantly diminished. As a handful of the over 10,000 members of the global settlements, the Villa Lago Plaintiffs offer no basis for such entitlement.

### III. ARGUMENT

The Villa Lago Plaintiffs are not entitled to any special treatment. The mere fact that the Coastal Settlement Agreement provided for a mechanism by which certain fees and costs are to be

considered, has no preemptive effect on the orderly proceedings set forth by Pretrial Order No. 28 and its later iterations. To the contrary, the Coastal Settlement Agreement agrees to abide by this Court's processes, and whatever rulings this Court should ultimately make in regards to fees and costs will be determinative of the issue. The Villa Lago Plaintiffs confirmed their commitment to this process as detailed in the separate letter agreement with Plaintiffs' Lead Counsel.

Nowhere in the Villa Lago Plaintiffs' papers is any attempt made to explain why their motion is being presented now or why they are entitled to "leap frog" over the process contemplated by PTO No. 28 and seek a uniquely tailored award. Nor do the Villa Lago Plaintiffs explain why they should be permitted to circumvent this Court's Pretrial Order 28(F) which outlines how and when and how payment of fees to individual counsel will take place. Under the aegis of PTO No. 28, all attorneys' fees and costs issues will be deliberated <u>at one time</u>, and all claims to such entitlement will be treated in parity with one another in conformance with the uniform standards imposed by this Court's Orders.

Accordingly, the FC prefers that this Court continue to follow the process set forth by PTO No. 28 and carried out by the FC. To allow individual parties like the Villa Lago Plaintiffs to seek independent treatment is antithetical to the procedures outlined in PTO No. 28, and the compromise reflected in this Court's Orders. There will be a limited fund available for the payment of each of the counsel for the plaintiffs in the global settlements. No individual counsel should receive preferential treatment outside of the process that has governed these proceedings for all counsel involved. Otherwise, individual counsel will be vying among one another to claim a greater award for their clients, robbing from one another for the common benefits in which each of their clients are partaking under the global settlements. Or, as in the case with counsel for the Villa Lago Plaintiffs, seeking preferential treatment for one set of their clients at the expense of

11

their others. Those counsel who have participated in and abided by the process established and overseen by the Court rightly expect an even and fair distribution of fees and costs.

## IV. CONCLUSION

For the reasons set forth above, the Villa Lago Plaintiffs' Motion for a Final Award of Attorneys' Fees and Reimbursement of Costs in Opposition to Allocation Motion Pursuant to Pre-Trial Order No. 28(F) [D.E. 20282] should be denied.

Respectfully submitted,

Dated: July 11, 2016

/s/ Russ M. Herman
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel in MDL 2047*
*Fee Committee Co-Chair/Secretary*

Arnold Levin (on the brief)
Fred S. Longer (on the brief)
Sandra L. Duggan
Matthew C. Gaughan
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel in MDL 2047*
*Fee Committee Chair*

Dawn M. Barrios
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com
*Fee Committee Member*

Christopher A. Seeger
Scott Alan George
SEEGER WEISS, LLP
77 Water Street, 26th Floor
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com
*Fee Committee Member*

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Richard J. Serpe
LAW OFFICES OF RICHARD J. SERPE
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com
*Fee Committee Member*

Michael J. Ryan
KRUPNICK CAMPBELL MALONE
BUSER SLAMA HANCOCK LIBERMAN
12 S.E. Seventh Street, Suite 801
Fort Lauderdale, FL 33301
Phone: (954) 763-8181
Fax: (954) 763-8292
*Fee Committee Member*

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 11th day of July, 2016.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
Plaintiffs' Liaison Counsel
MDL 2047

*Co-counsel for Plaintiffs*