UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION

MDL 2047

SECTION: L

JUDGE FALLON
MAG. JUDGE WILKINSON

THIS DOCUMENT RELATES TO:
*ALL CASES*

## RESPONSE IN OPPOSITION TO FEE COMMITTEE'S MOTION TO DETERMINE THE ALLOCATION OF THE GLOBAL FEE AWARD AS BETWEEN COMMON BENEFIT FEES AND INDIVIDUAL COUNSEL'S FEES PURSUANT TO PTO 28(f)

**COME NOW** individual claimant's counsel (sometimes referred to herein as private counsel or primary attorneys) and respectfully object to the Fee Committee's requested fee allocation as set forth in its Motion to determine the Allocation of the Global Fee Award as Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(f) [Doc. 20290] ("FC's Motion").

### INTRODUCTION AND BACKGROUND FACTS

The Court is presented with the issue of how to fairly and equitably allocate funds between common benefit counsel and individually retained counsel for the plaintiffs, or "primary attorneys." Please see *Eldon E. Fallon Common Benefit Fees in Multidistrict Litigation*, 74 La. L. Rev. 371, 376 (2014) (defining "primary attorney" as "the attorney who has the representation

agreement with the claimant"). In its motion, the Fee Committee (FC) requests *nearly 60%* (59.37%) of the limited fund to pay common benefit fees. It is respectfully submitted that the FC's proposed allocation is inequitable and should be denied.

In so arguing, undersigned counsel do not seek to deny the value of PSC counsel's services to the Plaintiffs. The PSC has performed a great deal of highly skilled work critical to the ultimate outcome. The PSC lawyers are entitled to a fair common benefit fee.

It is submitted, however, that the FC's Motion unfairly discounts the contractual rights of the primary lawyers. The motion minimizes or ignores the work of the individual plaintiff's lawyers while seeking to pay the common benefit lawyers in full and undercompensating primary counsel. The motion places undue emphasis on what *would* constitute a fair fee to the PSC *as if* the fund in question were not limited and inadequate. It disparately treats the two sets of counsel when it comes to expenses. The reality here is the PSC negotiated fund is inadequate and it cannot fairly compensate both common benefit fund work and contractually retained counsel's work. Under these circumstances or under any circumstances, the FC's proposal to take 60% of the limited fund is unreasonable.

The formula set forth by the FC has the effect of reducing each of undersigned counsel's 40% lawyer-client fee contracts down to approximately 11% with no additional payment for expenses per the attorney fee contracts. The PSC has devalued the contribution of the non-PSC attorneys to such an extent that, should the PSC be allowed to reduce the non-PSC attorney fees as they seek, it will have a detrimental, chilling effect on the future of all MDL proceedings. It is submitted there would be absolutely no incentive for any attorneys to put their cases into an MDL if their fees are subject to being so drastically slashed.

The total capped compensation fund is $192,981,363.35, representing 29% of the total value paid to the claimants ($658,713,629.52) and less than 20% of the calculated $1.1B valuation figure represented by the FC to be the total settlement value. The FC seeks an award of 10.65% of the purported full settlement value or roughly 60% of the available PSC-negotiated compensation fund.

The FC's Motion focuses on whether $119,313,367.08 can be justified as reasonable compensation for the highly skilled common benefit representation that the Plaintiffs received. However, the FC's analysis is one-sided, while both justice and equity charge this Court to strike a fair balance between the competing interests. It is respectfully submitted that the PSC's approach is unsupported by the applicable case law, factually flawed and unjust.

The undersigned primary attorneys represent homeowners and condominium associations who have brought claims in this MDL. The gross settlement value of the cases brought by undersigned counsel, according to the settlement administrator's calculations, is $5,024,200.63. Undersigned counsel's contracts with the individual homeowners provide for undersigned to be paid 40% of the gross recovery in attorneys' fees, which would result in a payment of attorneys' fees in the amount of $2,009,680.25 per undersigned counsel's client contracts.

Unlike defective drug litigation where primary counsel identifies qualifying claimants, files a complaint, completes a plaintiff's fact sheet, and waits for a settlement, primary counsel here was required to provide counsel as to whether to accept a variety of settled upon options and then oversee a time consuming equitable settlement, negotiating between the home owner, Moss, Brown and Greer, independent contractors, and in many instances mortgage companies.

The FC's proposal would leave undersigned counsel with a *total* recovery – i.e., fees *and* expenses– in the amount of $597,980.04, representing only an 11.9% attorneys' fee. This

3

equates to a 71% reduction in the fee to which undersigned counsel would otherwise be entitled under their lawyer-client contracts. Additionally, undersigned counsel's contracts entitle them to be fully repaid all litigation related expenses and costs. The FC's proposed allocation woefully under-compensates the primary attorneys and (other than the inadequate expense stipend previously paid out) fails to adequately compensate undersigned counsel for costs and expenses incidental to the representation.

For reasons more fully set forth herein, the undersigned primary attorneys respectfully object to the Fee Committee's proposal to allocate roughly 60% of the compensation fund for common benefit work. It is submitted that under the facts and circumstances of this litigation, applying applicable law and considerations, an appropriate allocation would be one in line with the PSC's share in the Vioxx litigation, 20% discussed more *infra*. It is submitted that such an allocation would compensate the PSC for work benefitting all plaintiffs and effectively tax the individual plaintiff lawyers to more appropriately represent the unique circumstances of the litigation. It is respectfully submitted that a 60-40 split in favor of the PSC is on its face patently unfair.

Additionally, the primary attorneys disagree with the FC's manipulation of the numbers. In its motion, the FC uses the sum of $1.1 billion as the benefit number to which the PSC's contingent multiplier applies; however, when it comes to calculating Primary counsel's fees, the Settlement Administrator uses a far lower number, $658MM. This is one way in which the Motion overstates the PSC's work relative to private counsel's work.

Moreover, the primary attorneys will not be compensated in full for their out-of-pocket expenses, whereas the PSC will be reimbursed in full under the terms of the FC motion. Still further, Primary Counsel with individual Plaintiffs under contract were not fairly informed that

4

the settlement agreements' various terms would result in the reductions proposed in the FC Motion. Yes, counsel agreed that a fair and reasonable common benefit fee would be awarded in the event of an aggregate settlement of claims in the MDL. However undersigned counsel could not have reasonably anticipated that their lawyer-client contracts would be slashed by over 70% in order to pay the PSC's work and expenses in full. The PSC is entitled to a fair common benefit fee but a tax on non-PSC lawyers to the tune of 60% is unreasonable and fails to meet the universal fairness standard that must be applied. The FC's Motion should be denied.

## ARGUMENT

Upon considering the instant motion, this Court's duty to the public, litigants and counsel is to "ensure that the attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel." *See In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220, 227-28 (5th Cir. 2008). Respectfully, the FC Motion fails to "'apply a *universally fair* standard of allocation to all participants, including itself.'" *See In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220, 232 (5th Cir. 2008) (case cited in Motion, p. 3) (reversing decision to accept fee allocation determined by a Fee Committee; parenthetically quoting *In re Vitamins Antitrust Litig.*, 398 F. Supp. 2d 209, 234 (D. D.C. 2005)) (emphasis added).

The focus should be on all plaintiffs' attorneys, not just the Fee Committee's allocations and contributions. *See High Sulfur*, 517 F.3d at 232 (reversing and criticizing order accepting a fee committee allocation for its failure to make meaningful comparison); *see also id.* at 234 (criticizing the situation in which "five attorneys ... declare how an award will cover themselves and seventy-four other attorneys with no meaningful judicial supervision or review"). Upon close scrutiny, the FC's Motion should be denied because it does not propose a universally fair distribution of available funds to all counsel.

The FC previously recognized the unique pressures, responsibilities, and legal work required by the lawyers responsible for the claims of individuals whose homes were uninhabitable or otherwise severely damaged [Doc. 17687-3, pp. 32-38]. Now, however, the FC's focus has shifted for the purpose of justifying its fee for common benefit work – a proposed fee that disproportionately under-compensates the primary attorneys. Upon closer scrutiny and applying the "universal fairness" standard, it is submitted this Court should deny the FC's proposal to pay itself 60% of the PSC-negotiated compensation.

**PRIVATE COUNSEL'S WORK AND RISK SHOULD BE DULY CONSIDERED**

The FC's analysis overlooks the value of the attorney client relationship and the years of work and expense the private attorneys invested for the benefit of their clients and the litigation as a whole. For seven years, undersigned has been responsible for client communications and updates regarding the status of the litigation. Representing individual clients has required significant staff and attorney time to keep what have been understandably distressed clients informed of the pending litigation and to provide them with legal advice on myriad issues throughout the long life of the case.

Additionally, contrary to the FC's suggestion that the primary attorneys are relieved of the risk of a litigation of this type, that is absolutely not the case. Undersigned counsel's small firm, along with other small firms associated in this matter, expended tremendous resources in both time and payment of case-related expenses, both before and after the formation of the MDL.

Significant work continued to be performed by primary counsel throughout the litigation, well after the formation of the MDL and appointment of the members of the PSC. Client contact and counseling took place daily at times during course of this litigation. Primary counsel first identified the defective products and determined the precise manufacturer. Thereafter, primary

counsel contracted with clients, diligently researched the legal issues and potential pitfalls. Prior to the existence of the "omnibus complaints" counsel prepared, filed, and contemplated international service. The real work for the primary counsel began once the parties reached a settlement. There were multiple inspections as primary counsel negotiated with Moss, independent contractors, mortgage holders, and homeowners to ensure quality workmanship.

As discussed above, at issue is a limited attorney fee fund, which must be allocated fairly and equitably between common benefit counsel and individually retained counsel. The undersigned Contractually Retained Counsel request fair division of the available fees based on the contributions made, with 30% of the available fees reserved for common benefit counsel and 70% of the available fees to be divided between individual plaintiffs' counsel.

The FC's motion cites no authority for the proposition that the common benefit lawyers should be fully compensated for their out-of-pocket litigation expenses while the primary attorneys are denied their right to recoup their out-of-pocket expenses under their lawyer-client contracts. It is submitted there is no authority for such a result and yet that is what the FC's motion proposes.

**THE APPLICATION OF THE VIOXX CASE**

Throughout its brief, the FC draws multiple comparisons to the Vioxx litigation. However, the FC ultimately declines to make a side-by-side comparison of the actual award, fees and fee allocation. A comparison is in order.

This Court valued the settlement for myocardial infarctions and ischemic strokes at $4.85BB. *In re Vioxx Products Liability Litigation*, 760 F. Supp. 2d 640, 652 (E.D. La. 2010). In that litigation, the Court imposed a "cap" upon the attorney contingency fee of 32%. *Id.* at 646. Applying that percentage to the total compensation, it appears that the total attorneys' fees

in that litigation came to $1.552BB.

After careful analysis, this Court ultimately awarded a Common Benefit Fee of $315,250,000.00 or 6.5% of the value of the recovery. Thus, leaving the remainder of the attorney's fees to private non-PSC lawyers, the private fees totaled $1.23675BB. Reducing the division of fees to percentages, this amounted to 20% for the PSC and 80% for the private lawyers.

Compare this division to this instant case. Here, the attorneys' fees are fixed at about $192,980,000.00. Here, according the fee committee's brief, the value of the recovery is $1.1BB. However, the more accurate value of the settlement is the sum of the value allocated to remediated homes, consequential damages awarded, cash out settlements and already remediated homes. A sum of these values the settlement at approximately $763,000,000.00. Dividing the fixed attorney's fees by the true value of the settlement, the attorney fees equal about 25.29% of the settlement value, a percentage far less than the capped amount established in Vioxx. Of that amount, the FC is requesting approximately $119,320,00.00 dollars or about 60% of the total attorney's fees, leaving the private lawyers approximately $73,660,000.00 or about 40% of the total attorney's fees.

The comparison between the two settlements, the fees, and fee divisions reveal indisputable inequities. For example, here the FC seeks a common benefit fee equal 40% of the attorney fee earned in Vioxx, when the value of the settlement is 85% smaller than the Vioxx settlement. Stated in round figures, the FC in the instant case is seeking a fee roughly 1/2 the size of the fee in Vioxx when the instant settlement in nearly 1/10 of the settlement in Vioxx. Such is patently inequitable and it is submitted that this Court's analysis in Vioxx does not support the FC's proposed allocation in this case.

**OTHER CASES**

The FC's reliance on *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830 (E.D. La. 2007), is also misplaced. The FC's Motion states in the margin that, "[i]t is important to note that the fee at issue in *Turner* was earmarked for the payment of a class counsel fee only (and not private fees)." [Doc. 20290-4, p. 12 n.8]. This distinction belies the FC's attempt to spin *Turner* as reconcilable with its claimed entitlement to keep most of the shared limited fund for the Committee members and other common benefit contributors. The *Turner* fee dispute was between the *Turner* PSC and the defendant, which per settlement had to pay a reasonable fee in the amount set by the Court. The PSC there requested $115,544,100 in fees and the Court instead awarded $33,746,241.88 plus expenses. The award came out of the defendant's pocket, and the Court did not elevate the common benefit doctrine over counsels' rights to receive compensation from the clients who hired them.

The FC's lengthy discussion of the normal fee range is irrelevant here because the cases invoked in the Motion were not setting a reasonable rate for court-appointed counsel *at the expense of* the lawyers that the plaintiffs in the case had actually agreed to pay. *See, e.g., Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991) (the discussion of 20-30% as a benchmark was in the context of a dispute between the settling defendant and class counsel); *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041 (5th Cir. 1998) (fee dispute in Title VII case was between plaintiff and defendant).

Further, several opinions cited in the FC's Motion, as support for the general proposition that the common benefit fund doctrine exists, are distinguishable. None of those cases so drastically slashed the contract rights of counsel in favor of payment in full to the PSC and none granted common benefit fund assessments as high as the FC's request in the first instance. *See,*

*e.g., In re Clearsky Shipping co.*, no. 96-4099 *et al.*, 2003 WL 1563820, at *5 (E.D. La. Feb. 26, 2003) (cited at FC's Motion, p. 5 n.4) (4% common benefit fund); *In re Ruzulin prod. Liab. Litig.* MDL No. 1348 2002 WL 441342 (S.D. N.Y. March 20, 2002) (cited at FC's Motion, p. 4) (6% common benefit fund, 4% for electives); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993) (5.25% fee award).

## CONCLUSION

The proposed fee allocation in the FC Motion fails to meet the universal fairness test. The work and resources of all attorneys – the primary attorneys as well as those on the PSC—should be fairly considered in the analysis. It is submitted that under the circumstances presented, the FC's proposal drastically overreaches in favor of the common benefit lawyers.

Undersigned respectfully urge this Honorable Court to deny the FC's Motion to pay themselves 60% of the available funds. It is respectfully submitted that an equitable result would be to award 20% of the available compensation funds to the PSC and 80% to the primary attorneys, more in line with the Court's Vioxx decision as to fee allocation.

Respectfully submitted, this the \_\_\_\_\_ day of July, 2016.

BY: _____

BY: _____

John Hawkins, Esq. (MS Bar #9556)
Edward Gibson, Esq. (LA Bar #29053)
HAWKINS | GIBSON, PLLC
153 Main St.
Bay St. Louis, MS 39520
Tel. 228-467-4225
Fax. 228-467-4212
egibson@hgattorneys.com
john@hgattorneys.com

Carroll H. Ingram, Esquire
Jennifer Ingram Wilkinson, Esquire
INGRAM WILKINSON, PLLC
Post Office Box 15039
Hattiesburg, MS 39404-5039

David W. Baria, Esquire
BARIA JONES
544 Main Street
Bay St. Louis, MS 39520

John Corlew, Esquire
CORLEW MUMFORD & SMITH
Post Office Box 16807
Jackson, MS 39236-6807

Robert W. Moak, Esquire
ATTORNEY AT LAW
Post Office Box 242
Bogue Chitto, MS 39629-0242

Charles E. Gibson, III, Esquire,
THE GIBSON LAW FIRM
447 Northpark Drive
Ridgeland, MS 39157

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Counsel, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047.

SO CERTIFIED this the _____ day of July, 2016

_____