UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF PRICHARD HOUSING AUTHORITY'S AND TAYLOR MARTINO, P.C.'S MOTION FOR PAYMENT OF ATTORNEYS' FEES AND EXPENSES PURSUANT TO STAND-ALONE SETTLEMENT AGREEMENT WITH KNAUF**

**MAY IT PLEASE THE COURT:**

Prichard Housing Authority ("PHA") and its counsel, Taylor Martino, P.C. ("TM"), submit this Reply Memorandum in further support of their Motion for Payment of Attorneys' Fees and Expenses Pursuant to Stand-Alone Settlement Agreement with Knauf.

The Oppositions of the Fee Committee ("FC") and the Knauf Defendants ("Knauf") are entirely dependent upon an incorrect premise: the operative language of the attorneys'-fee provision in PHA's stand-alone settlement agreement with Knauf means that TM's attorneys' fees are to be paid as part of the fee allocation in the MDL settlement between the Plaintiffs' Steering Committee ("PSC") and Knauf. This conclusory assertion, however, is advanced with no supporting analysis, ignores the dictionary definition of the operative term in the stand-alone fee agreement, and further ignores other provisions of the stand-alone fee agreement which confirm that it calls for the payment of a separate fee by Knauf, outside the ambit of the PSC's settlement agreement with Knauf.

In PHA's and TM's opening memorandum, they pointed out (Doc. 20341-1, p. 7) that the attorneys'-fee provisions of the PSC's settlement agreement with Knauf exclude

**EXHIBIT A**

attorneys' fees and costs that had already been separately addressed under a previous settlement with Knauf.  (Doc. 12061-5, p. 62 § 14.3).  Hence, TM's attorneys' fees and costs, separately addressed under PHA's stand-alone settlement agreement with Knauf, are outside the attorneys'-fee provisions of the PSC's subsequent settlement agreement with Knauf.[1]  Of considerable salience, Knauf has now admitted in its Opposition that "the Knauf Class Settlement Agreement makes an exception for attorneys' fees and reasonable costs already separately addressed under a previous settlement."  (Doc. 20397, p. 5).  According to Knauf, however, the exception does not apply because, it says, "the Knauf-PHA Agreement explicitly provides for the fees to come out of the PSC-negotiated $160 million."  (*Id.*).  This assertion ignores the operative language of the attorneys'-fee provision in PHA's stand-alone settlement agreement with Knauf, which states:

> 1.4 Payment of Costs and Attorneys' Fees by Knauf.
> In accordance with Section X of the Remediation Agreement—and in addition to the other monetary payments provided herein—KNAUF agrees to pay the costs and reasonable attorneys' fees in accordance with paragraphs 9 and 10 of the Remediation Agreement. Prichard [PHA] shall not move the Court for payment of attorneys' fees until at least thirty (30) days after remediation pursuant to section 1.3 is complete.

(Doc. 17581, p. 2).

---

[1] Knauf argues that a separate fee payable under the PHA's stand-alone settlement agreement would violate the $160 million cap on fees specified in the PSC's settlement agreement with Knauf.  This argument is a red herring, because the fees addressed in PHA's prior stand-alone settlement agreement with Knauf are expressly excluded from the fee provisions of the PSC's settlement agreement with Knauf.

2

Knauf thus agreed to pay TM's costs and reasonable attorneys' fees "[i]n accordance with Section X of the Remediation Agreement."[2] The FC's and Knauf's assertions, that this means payment under the MDL settlement agreement, ignore the ordinary meaning of the term "in accordance with."

As will be seen, "in accordance with" means "in conformity with," that is, "in the same manner." The attorneys'-fee issue is before this Court in the same manner as prescribed in Section X of the Remediation Agreement. Section X provided that the PSC and Knauf were to agree on an attorneys' fee, and if they did not do so within six months after the execution of the Remediation Agreement, the matter would be submitted to the MDL Court for a non-appealable resolution. (Doc. 20341-10, p. 11). The PSC and Knauf have not reached an agreement, and the six-month period has long since expired; hence, PHA and TM have moved the Court to determine and award a reasonable attorneys' fee.

Alabama law governs the stand-alone settlement agreement. (Doc. 17581, p. 5, § 7). Under Alabama law, "Where there is no indication that the terms of the contract are used in a special or technical sense, they will be given their ordinary, plain, and natural meaning." *City of Gadsden v. Bowman,* 143 So. 3d 695, 704 (Ala.2013). "Accordance" means "conformity." "Accordance." Def.1. MERRIAM-WEBSTER ONLINE DICTIONARY, 2015. http://www.merriam-webster.com (19 July 2016). Oxford Dictionaries defines "accordance" as "in a manner conforming with." "Accordance." Full Def.1.

---

[2] PHA and TM pointed out in their opening memorandum that the language, "in accordance with paragraphs 9 and 10 of the Remediation Agreement," should be disregarded under Alabama law, which governs the PHA's stand-alone settlement agreement, because there are no paragraphs 9 and 10, leaving "[i]n accordance with Section X" as the operative language. The FC and Knauf have not taken issue with this position.

OXFORD DICTIONARIES ONLINE (U.S. ENGLISH), 2016. http://www.oxforddictionaries.com (19 July 2016).  Merriam-Webster defines "conformity" as "correspondence in form, manner, or character."  "Conformity."  MERRIAM-WEBSTER ONLINE DICTIONARY, 2015. http://merriam-webster.com (19 July 2016).  Synonyms for "in accordance with" include "in the same manner," "likewise," "the same way," and "correspondingly."  ROGET'S 21ST CENTURY THESAURUS (3d ed.2013).  http://www.thesaurus.com (19 July 2016).

From this, it is clear that "in accordance with" *does not mean* "as part of" or "included in," as the FC and Knauf advocate.  The term means "in the same manner."  This invites the question why the parties to the stand-alone settlement agreement did not use language precisely stating what the FC and Knauf say they meant, when it would have been simple – indeed, self-evident – to do so.  For example, "Knauf agrees to pay – in addition to the other monetary payments provided herein – costs and reasonable attorneys' fees which shall be determined as part of Section X of the Remediation Agreement."  Or, "Knauf agrees to pay – in addition to the other monetary payments provided herein – costs and reasonable attorneys' fees to be included in Section X of the Remediation Agreement."

It is revealing that the FC says the stand-alone settlement agreement "expressly state[s] that fees and costs will be awarded under the MDL settlement agreements." (Doc. 20382, p. 1).  Of course, the stand-alone settlement agreement *does not say that*, which illustrates how the "in accordance with" language *must be rewritten* to reach the FC's and Knauf's desired result.  Obviously, the parties could easily have said just that, if it was what they had wanted to say: "Knauf agrees to pay – in addition to the other monetary payments provided herein – costs and reasonable attorney's fees to be

4

awarded under the MDL settlement agreements." Instead, costs and attorneys' fees are to be determined *in the same manner* as in Section X of the Remediation Agreement, that is, by negotiations between the PSC and Knauf, with this Court to determine the fee if there is no agreement.

Moreover, the fee portion of the stand-alone settlement agreement contains other provisions which confirm that Knauf was to pay a fee separate from fees to be awarded under the MDL settlement agreement. The provisions of a contract are interpreted in context. *Booth v. Newport Television, LLC,* 111 So. 3d 719, 725 (Ala.Civ.App. 2011). The intent of the contracting parties is discerned from the whole of the contract. *Homes of Legend, Inc. v. McCollough,* 776 So.2d 741, 746 (Ala.2000).

Section 1.4 of the stand-alone settlement agreement states, "Prichard [PHA] shall not move the Court for payment of attorneys' fees until at least thirty (30) days after remediation pursuant to section 1.3 is complete." (Doc. 17581, p. 2). There is no corresponding or comparable provision in the Remediation Agreement, or in the PSC's settlement agreement with Knauf, the fee provisions of which subsumed the fee portion of the Remediation Agreement. This provision is applicable only to PHA's settlement and to no other plaintiffs' attorneys' fees. It would be incongruous for the stand-alone settlement agreement to assign the determination of PHA's attorneys' fees to the MDL settlement agreement, when PHA had a right to move the Court for payment of attorneys' fees that no plaintiff subject to the MDL settlement agreement has.

The stand-alone settlement agreement also sets out what will happen "[i]f the attorneys' fees payable pursuant to this Agreement are in any way determined by the cost of remediation." (*Id.*). In that event, the PSC, Knauf, the Mitchell entities, and the

5

Mitchell contractors and subcontractors were all obligated to "account to Prichard [PHA] for all costs associated with the remediation process," upon PHA's written request. (*Id.*). This included providing PHA's counsel "with all bills, receipts, estimates, bids, cancelled checks and any such documents relating to the cost of remediation." (*Id.*, p. 2-3). Moreover, PHA had the right to conduct an audit to determine the cost of the remediation, to submit any dispute concerning the cost of remediation to a mediator, and if mediation failed, to petition this Court for a final, non-appealable decision. (*Id.*, p. 2).

Again, there is no corresponding or comparable provision in the Remediation Agreement or in the PSC's settlement agreement with Knauf. There is no plaintiff in the MDL settlement agreement with such extensive rights attached to the determination of its attorneys' fees. Thus, this provision also confirms that attorneys' fees under the stand-alone settlement agreement are separate from fees awarded as part of the Remediation Agreement or the PSC's settlement agreement with Knauf. Both this provision and the provision addressing PHA's right to move the Court for payment of attorneys' fees confer individual rights on PHA, when no plaintiff subject to the fee provisions of the MDL settlement agreement has any individual rights.

The term "in accordance with" is unambiguous, and its meaning is supported by the other fee provisions of the stand-alone settlement agreement. If the terms of a contract are unambiguous, a court will presume the parties intended what they stated and will enforce the contract as written. *Homes of Legend,* 776 So.2d at 746. "A term in a contract is ambiguous only if, when given the context, the term can reasonably be open to different interpretations by people of ordinary intelligence." *Lambert v. Coregis*

6

*Ins. Co.,* 950 So.2d 1156, 1162 (Ala.2006).  A contract is not ambiguous simply because the parties allege different constructions of it.  *Black Diamond Development, Inc. v. Thompson,* 979 So.2d 47, 50 (Ala.2007).

Knauf touts the FC's "agreement" with Knauf's position on TM's attorneys' fees, but Knauf has agreed to pay $160 million in attorneys' fees under its settlement with the PSC, doubtless wishes to pay no more, and the FC, an organ of the PSC, simply echoes its new fee partner's argument in its rather tepid Opposition.  Under governing Alabama law, Knauf's and the FC's contentions cannot override PHA's unambiguous, stand-alone fee agreement with Knauf.

Moreover, as TM pointed out in its opening memorandum, the stand-alone settlement agreement was reached outside the Pilot Program, which an email from BrownGreer PLC, the Court-appointed Settlement Administrator, confirms.  (Doc. 20341-6, Para. 8; Doc. 20341-8).  The Remediation Agreement ultimately became the Pilot Program, so there can be no doubt that the stand-alone settlement agreement, and its attorneys'-fee provision, are separate from the PSC's settlement with Knauf.

Knauf states that TM anticipated receiving common-benefit attorneys' fees from the MDL settlement, and expresses surprise that TM "now" takes the position that its fees under the stand-alone settlement agreement fall outside the MDL fee allocation. (Doc. 20397, pp.4, 5).  But as TM has previously explained, the PSC represented to TM that it could submit its hours in PHA's state-court litigation as common-benefit hours to offset any deduction the PSC might take from TM's fee in the PHA case. (Doc. 20341-6, Para. 16).  A deduction could have been forthcoming, because TM's stand-alone fee was to be determined in the same manner as in Section X of the Remediation

7

Agreement, that is, negotiated by the PSC with Knauf.  As TM has made clear, however, it now seeks common-benefit fees only as an alternative, in the event the Court finds its stand-alone fee agreement with Knauf is not viable for whatever reason.[3]

TM submits that its attorneys' fees were to be determined *in the same manner as* attorneys' fees under Section X of the Remediation Agreement, and were not to be determined *as part of* Section X, as the FC and Knauf contend.  The "in accordance with" language of the fee agreement unambiguously so states, and it is confirmed by other provisions of the fee agreement demonstrating that the fee agreement was indeed stand-alone, as well as by the settlement of PHA's claims outside the Pilot Program.  PHA and TM submit that the Court should award TM reasonable attorneys' fees and costs, to be paid directly by Knauf outside the MDL settlement agreement.

        Respectfully submitted,

        Attorneys for Plaintiff, Prichard Housing Authority

By:    /s/ Richard H. Taylor
        RICHARD H. TAYLOR
        TAYLOR MARTINO, P.C.
        51 St. Joseph Street
        Mobile, Alabama 36602
        T: (251) 433-3131
        F: (251) 433-4207
        richardtaylor@taylormartino.com

---

[3] Thus, Knauf is mistaken when it repeatedly asserts that TM's Motion seeks "additional" attorneys' fees, on top of those allocated in the MDL settlement agreement.   Moreover, TM has explained that as things now stand, it has been allocated no common-benefit fees or private-attorneys' fees under the MDL settlement agreement.

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Reply Memorandum in Further Support of Their Motion for Payment of Attorneys' Fees and Expenses Pursuant to Stand-Alone Settlement Agreement with Knauf has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>and</u> upon all parties by electronically uploading the same to File & ServeXpress in accordance with Pre-Trial Order No. 6 and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this the 20th day of July, 2016.

                         By:    <u>/s/ Richard H. Taylor</u>
                                 RICHARD H. TAYLOR