UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | CIVIL ACTION<br><br>NO. 09-02047<br><br>SECTION "L" (5) |
| THIS DOCUMENT RELATES TO: ALL CASES | |

## ORDER & REASONS

Before this Court are Plaintiff Wayne Clarke's Objections (Rec. Docs. 20114, 20184) to the Special Master's Determination Denying Remediation Fund Benefits. Having read the parties' briefs and reviewed the applicable law, the Court now issues this Order and Reasons.

### I.    BACKGROUND

####    a.    Procedural Background

From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used in the construction and refurbishing of homes in coastal areas of the country, notably the Gulf Coast and East Coast. Sometime after the installation of the Chinese drywall, homeowners began to complain of emissions of smelly gasses, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819, 829 (E.D.La. 2012), *aff'd*, 742 F. 3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to be caused by the Chinese drywall. Accordingly, these

homeowners began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall.  Because of the commonality of facts in the various cases, this litigation was designated as multidistrict litigation.  Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 2047 in the U.S. District Court, Eastern District of Louisiana.

The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities, and (2) the Taishan Entities.  The instant appeals before the Court related to the Knauf Entities.

The Knauf Entities are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), advertised and sold its Chinese drywall in the United States.  The Knauf Entities are named defendants in numerous cases consolidated with the MDL litigation and litigation in state courts. The Knauf Entities first entered their appearance in the MDL litigation on July 2, 2009.  *See* (R. Doc. 18).  On November 2, 2009, in Pretrial Order No. 17, KPT agreed to a limited waiver of service.  *See* (R. Doc. 401).  On March 15-19, 2010, the Court presided over a bellwether trial in *Hernandez v. Knauf Gips KG*, Case No. 09-6050, involving a homeowner's claims against KPT for defective drywall.  *See* (R. Doc. 2713).  For purposes of the trial, KPT stipulated that its Chinese drywall "emits certain reduced sulfur gases and the drywall emits an odor." *Id*.  The Court found in favor of the plaintiff family in *Hernandez*, issued a detailed Findings of Fact and Conclusions of Law ("*Hernandez* FOFCOL"), *see id.*, and entered a Judgment in the amount of $164,049.64, including remediation damages in the amount of $136,940.46, which represented a

cost of $81.13 per square foot based on the footprint square footage of the house. *See* (R. Doc. 3012).

Thereafter, on October 14, 2010, the Knauf Entities entered into a pilot remediation program with the Plaintiffs' Steering Committee ("PSC") in the MDL. This program was largely based upon the remediation protocol formulated by the Court in *Hernandez*. The Knauf pilot remediation program is ongoing and has, at present, remediated over 2,000 homes containing KPT Chinese drywall using the same protocol. At the Court's urging, the parties began working together to monetize this program and make it available to a broader class of plaintiffs.

On December 20, 2011, the Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Settlement Agreement"), which is designed to resolve all Knauf-related, Chinese drywall claims. *See* (R. Doc. 16407-3). Although there are numerous settlement agreements with defendants in the chain-of-commerce with the Knauf Entities, the instant appeals related specifically to the Knauf Settlement Agreement.

### b. The Knauf Settlement Agreement

The Knauf Settlement Agreement allows Claimants to submit a number of different claims for compensation due to damage allegedly caused by Chinese Drywall. Claims unrelated to remediation of a property are known as "Other Loss Claims." During the course of the Chinese Drywall Settlement Program, the Settlement Administrator received 7,986 Other Loss claims. These claims were reviewed by the Settlement Administrator, who reviewed claim documentation for completeness and issued an eligibility notice using amounts set forth in PTO 29. Claimants who were unsatisfied with this award had the option to appeal their award to the Special Master. The Special Master independently reviewed these claims and through the Settlement Administrator, issued a new award determination. Pursuant to Section 4.6.8 of the

Knauf Settlement Agreement, Claimants who remained unsatisfied with the Special Master's award had the option to appeal directly to the Court.  Specifically, the Knauf Settlement Agreement provides that:

> Unless otherwise final and binding pursuant to the relevant sections below, decisions of the Special Master with respect to the Other Loss Fund may be appealed by Settlement Class Counsel, the Knauf Defendants or an affected Class Member within 15 days of service of the Special Master's decision by filing an objection with the Court, but only after Settlement Class Counsel, the Knauf Defendants, and, if applicable, an affected Class Member's counsel meet and confer in an attempt to resolve such issue. Unless the Court orders otherwise, appeals will be based on the record and briefing before the Special Master without further evidentiary submissions, briefing or argument. Any Party may, at its own expense, request that proceedings before the Special Master be transcribed. The Court's decision on any objections will be final, with no further appeals permitted.

Knauf Settlement Agreement, Section 4.6.8.  Out of the starting population of 7,986 claims, 64 claimants appealed to the Court, including ten appealed miscellaneous claims.

The appealed miscellaneous claims were filed pursuant to Section 4.7.3.1 of the Knauf Settlement Agreement, which provides that:

> The Special Master and the MDL Court may, in their discretion, consider and allow claims [other than Pre-Remediation Alternative Living Expenses claims, Lost use, sales and rentals claims, foreclosure claims, sales in mitigation claims, tenant loss claims and bodily injury claims] so long as the claims are equitably justified and do not involve claims for the specifically enumerated Other Loss Exclusions. In considering any such additional claims, the Special Master and the MDL Court may, in their discretion, adjust the amount of the claims so as to protect Other Loss funds for other Settlement Class Members.

Knauf Settlement Agreement, Section 4.7.3.1.  The specifically enumerated Other Loss Exclusions include "damage or loss for stigma, injury to reputation, loss of enjoyment of home, psychological or emotional injury, medical monitoring, injury to reputation, credit rating loss, legal and accounting expenses, loss of investment opportunity…"  Knauf Settlement Agreement,

4

Section 4.7.3.  Pursuant to the aforementioned terms of the Knauf Settlement Agreement, the Court reviews the appealed miscellaneous claim as well as the foreclosure short sale claim.

**II.     APPEALED CLAIMS**

Plaintiff, Wayne Clarke, a claimant in the *Payton* omnibus complaint who did not opt out of the Knauf Class Settlement Agreement, is a Class Member, as defined in the Knauf Class Settlement Agreement (the "Agreement"). Prior to any remediation, Plaintiff's affected property, 1205 Magnolia Street, Ocean Springs, Mississippi, was lost to foreclosure due to Plaintiff's inability to rent the property, the income for which was necessary to make his monthly mortgage payments.  Claimant's loss of rental income was caused by the discovery of defective Chinese drywall. Consequently, Claimant filed claims to the Other Loss Fund seeking benefits related to lost rents and foreclosure, but he also included a claim for the Lump Sum Payment — a Remediation Fund benefit — within the Miscellaneous Claim Form filed with the Special Master.  Plaintiff seeks the Lump Sum Payment pursuant to Section 4.3.5.1 of the Knauf Class Settlement Agreement.  The Lump Sum payment was denied and, thereafter, Plaintiff filed the instant objection.

Mr. Clarke submitted two Other Loss claims: a Foreclosure/Short Sale claim and a Miscellaneous claim.  In his Foreclosure claim, Mr. Clarke sought damages related to equity lost when he lost his property to foreclosure.  In his Miscellaneous claim, he sought damages related to rent lost after the discovery of Chinese Drywall.  The Settlement Administrator initially determined that Mr. Clarke was eligible for the maximum allowable offer for both claims and issued notices offering $2,500 for the Miscellaneous claim and $10,000 for the Foreclosure/Short Sale claim.

Mr. Clarke appealed these awards to the Court. On appeal, Mr. Clarke submitted additional documents related to loss of rental income that allow the Settlement Administrator to increase the award amount under the Foreclosure/Short clam to $30,494.11, which increases his total award for both Other Loss claims to $32,994.11.

Mr. Clarke also filed a motion seeking payment of $8.50 per square foot from Knauf pursuant to Section 4.3.5 of the Knauf Settlement Agreement. (R. Doc. 20114). Knauf contends that Mr. Clarke is not entitled to this payment because the property was a commercial property and because the property has not been inspected by an approved inspector. (See R. Doc. 20204). Mr. Clarke argues that he lost the property to foreclosure prior to the existence of the Settlement Agreement, and therefore could not have requested a program inspection prior to foreclosure.

This Court agrees with Knauf that a program inspection is required in order to trigger eligibility for remediation benefits. *See* Knauf Settlement Agreement, Section 4.4.1 ("[a]n Owner Subclass Member who has submitted satisfactory physical proof must submit his property for an inspection pursuant to the Inspection Protocol by an inspector retained by the Knauf Defendants…"). However, there is no dispute that Mr. Clarke could not have had the property inspected by a program inspector prior to foreclosure because he lost the property before the Settlement Agreement existed.

Section 4.7.3.1 of the Settlement Agreement provides that:

> The Special Master and the MDL Court may, in their discretion, consider and allow claims that are not explicitly provided in Sections 4.7.1.1, 4.7.1.2, 4.7.1.3, 4.7.1.4, 4.7.1.5 and 4.7.1.6, so long as the claims are equitably justified and do not involve claims for the specifically enumerated Other Loss Exclusions.

Given the fact that it was impossible for Mr. Clarke to obtain the necessary inspection, the Court finds that his claim for lump sum benefits is equitably justified and does not involve a claim for an enumerated Other Loss Exclusion. Therefore the Court finds that the amount sought

6

by Mr. Clarke should be included as part of Mr. Clarke's Miscellaneous claim to be paid from the Other Loss Fund. The Settlement Administrator has calculated the lump sum payment as $13,880.50. Thus, the total of Mr. Clarke's awards is $46,874.61, subject to the standard pro rata reduction for Other Loss Claim Payments.

### III.     CONCLUSION

For the foregoing reasons *i.e.*, Plaintiff's property could not have been inspected by an Approved Inspector, the Court **GRANTS** Plaintiff's Objections as a Miscellaneous claim to be paid from the Other Loss Fund.

New Orleans, Louisiana, this 22nd day of July, 2016.

*[signature: Eldon E. Fallon]*
UNITED STATES DISTRICT JUDGE