UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION                              MDL NO. 2047

                                        SECTION: L

                                        JUDGE FALLON
                                        MAG. JUDGE WILKINSON

THIS DOCUMENT RELATES TO:
*ALL CASES*
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### THE FEE COMMITTEE'S RESPONSE IN OPPOSITION TO OBJECTING COUNSEL'S MOTION FOR IMMEDIATE DISBURSEMENT OF UNDISPUTED FEES

**I.   INTRODUCTION**

The Fee Committee ("FC") submits this response in opposition to "Objecting Counsel's"[1] Motion for Immediate Disbursement of Undisputed Fees (Rec. Doc. 20434).  After sitting idle and offering no opposition to the protocols set forth in *any* iteration of this Court's Pretrial 28, the Consolidated Joint Petition of the Fee Committee and the Plaintiffs' Steering Committee for a Global Award of Attorneys' Fees and Reimbursement of Expenses (Rec. Doc. 17687), the First Amendment to the Joint Fee Petition (Rec. Doc. 20205), or this Court's May 17, 2016 Order setting forth the funds available for distribution at this time (Rec. Doc. 20257), the Objectors now assert that this Court should immediately disburse the so-called "*undisputed* portion of the total available attorneys' fees." Objectors' Motion at 1 (emphasis in original).  But in their haste

---

[1] "Objecting Counsel" or "Objectors" include:  Faircloth, Melton & Sobel, LLC; Liska, Exnicios & Nungesser; Baron & Budd, P.C.; Gentle, Turner, Sexton & Harbison, LLC; McCallum, Hoaglund, Cook & Irby, LLP; Milstein, Adelman, Jackson, Fairchild & Wade, LLP; Roberts and Durkee, LLP; Willis & Buckley, APC; Collins & Horsley, P.C.; Allison Grant, P.A.; Hawkins Gibson, PLLC; Yance Law Firm, LLC; and Gieger, LaBorde & Laperouse, LLC.  Separately, the law firm of Krupnick Campbell Malone, *et al.* submitted a Joinder in Primary Counsel's [sic] Motion for Immediate Disbursement of Undisputed Fees (Rec. Doc. 20436).  This Joinder was submitted solely on behalf of the Krupnick firm, and not in its role as a member of the FC.

1

to obtain the immediate gratification of payment, the Objectors overlook, fail to understand, or fail to address, the many substantive and procedural hurdles necessary to make such an award.

In particular, Objecting Counsel, including their proposed new-to-the-litigation Liaison Counsel, disregard a number of factors that work against such relief, including:

> 1) this Court has been ably administering these proceedings for the past seven years and has established a well-recognized general protocol to resolve such matters consistent with Fed.R.Civ.P. 23 and *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974);[2]
>
> 2) this Court has appointed a Special Master to specifically address the matter and make a recommendation, which process would be disrupted by an interim award;
>
> 3) allocations by Brown Greer, the Claims Administrator, still need to be adjusted to address *pro rata* reductions now that the inter-related settlements' appeal process has concluded and the refunds due under the Memorandum of Understanding with the Homebuilders which affect the amounts available for distribution;
>
> 4) by raising their objections to the FC's proposed fee allocation the Objectors have not only challenged this Court's May 17, 2016 Order but placed into question their own entitlement to attorney's fee such that there is no "undisputed" portion of attorney's fees subject to distribution; and
>
> 5) that their proposal will not create any greater efficiencies, will more likely delay proceedings, and may actually incentivize the objectors to become even more disruptive and demanding in their *in terrorem* discovery requests, which will only demand reciprocal discovery requests on the FC's part.[3]

---

[2] *See* Eldon E. Fallon, *Common Benefit Fees in Multidistrict Litigation,* 74 Tulane L. Rev. 371, 387 (2014) (Noting that while it is the Court's responsibility to determine the fee award, it is "helpful" for the court to receive the committee's recommendation and that of a third party, *i.e.*, a Special Master).

[3] In the submission of Objectors' Counsel, *i.e.*, Primary Counsel's Motion For A Case Management Order Providing For Discovery, The Unsealing Of Records Regarding Common Benefit Fees, And The Appointment Of A Special Master (Rec. Doc. 20394), certain counsel submitted a Rule 30(b)(6) Notice of Deposition and Request for Production of Documents (Rec. Doc. 20394-3) which encompassed 11 areas of inquiry and 11 separate requests for production of documents. These requests seek production of "*all* records of *all* time spent in the performance of common benefit work," which would include virtually every email communication, every letter, every note, and every draft of every pleading prepared or received by the PSC and other Common Benefit Counsel in this litigation throughout a five-year period of time. *See Id.*, Request for Production #1 (emphasis added); Areas of Inquiry #1 and #2. Numerous additional depositions of FC members and others were also requested. The Special Master is working with the parties to streamline this plainly overbroad and disproportional discovery to avoid this fee dispute from devolving into unnecessary satellite litigation.

Forgoing the protocols established by this Court beginning over two years ago to expedite payment of attorney's fees that may be subject to a subsequent sequestration does not inure to the benefit of any of the counsel involved in these proceedings. For the reasons set forth in greater detail below, the FC objects to the immediate distribution of counsel fees.

II.     FACTUAL BACKGROUND

In its January 10, 2014, Pretrial Order No. 28, this Court embarked upon a process to insure that all plaintiffs' counsel participating in MDL 2047 would be properly compensated. The Court developed a series of stepped procedures "to provide for the orderly and efficient presentation and determination of a request for the award of attorneys' fees and reimbursement of litigation expenses." PTO 28 at 2. These initial steps required counsel to review and correct their time and expense records, submit Initial Affidavits, for the FC to submit a Joint Fee Petition, for the Court to allocate between common benefit counsel and individually retained counsel, and for the FC to recommend an allocation of any common benefit fee award.

Pursuant to the Court's directive, the FC filed on May 16, 2014, the Consolidated Joint Petition of the Fee Committee and the Plaintiffs' Steering Committee for a Global Award of Attorneys' Fees and Reimbursement of Expenses (Rec. Doc. 17687). Therein, the elaborate history of this litigation was explained and the enormous efforts of common benefit counsel to achieve the landmark results of this litigation was explicated. None of the current objectors voiced any opposition to the Consolidated Joint Petition.

On April 15, 2016, the FC along with the PSC filed their First Amendment to the Joint Fee Petition (Rec. Doc. 20205), as certain events had intervened between the time of the initial petition. In particular, additional settlement funds had become available from Knauf in the amount of $13,592,762.95.

On May 17, 2016, this Court granted the Amended Petition and meted out a global award of attorneys' fees and reimbursement of expenses in the amount of $192,981,363.35. As before, none of the current Objectors filed any opposition to this Order.

Following the Court's global award, PTO 28(F) issued, which reiterated the total amount of funds available for distribution, and prescribed further procedures towards resolving the allocation of attorney's fees, including a requirement that the FC recommend an appropriate allocation through the filing of a Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Fees and Individual Counsel's Fees (the "Allocation Motion"). PTO 28(F) also noted the ongoing need to address BrownGreer's evaluation of stipend award appeals, and the need for the FC to make a recommendation regarding the Homebuilders' reimbursement,[4] both of which would materially impact the final allocation awards. Ignoring these latter points, Objecting Counsel and others raised objections to the FC's recommendation for the allocation of attorney's fees, and even sought extraordinary amounts of discovery from the FC merely to challenge its recommendation. Of course, initiating such broad discovery engenders reciprocity since information may emerge which would justify the Court allocating fees between private and common benefit counsel in a way that even *diminishes* the share of private fees in comparison to what has been recommended currently by the common benefit members of the Fee Committee. Obviously aware of the Supreme Court's admonition to avoid

---

[4] BrownGreer has advised that as a result of the conclusion of all appeals to the Court from the Special Master it is finally able to resolve the *pro rata* distributions available to all applicable claimants. In addition, a further percentage of Homebuilders received a holdback which is being determined by BrownGreer and when these figures become available will be integrated into an amended MOU which will impact the calculation of the funds available for distribution. Further, due to the diligence of the FC, it was able to reach a resolution of the dispute with the Homebuilders regarding their reimbursement of an attorney's fee holdback. *See* Notice of Filing (Rec.Doc. 20381). Therein, the Homebuilders accepted the FC's recommended allocation of 59.37%/40.63%. Shortly, the FC will file a motion to confirm the MOU as amended (after the above adjustments), which will impact on the monies available to be distributed based upon the return of remaining portion of the 32% attorneys fee set asides from the Banner and Global Settlements and the other holdback. To the FC's knowledge, all Homebuilders with one exception have agreed to the terms of the MOU and that singular Homebuilder's dispute regarding its attribution as an active litigant remains to be resolved through motions practice.

"a second major litigation" over attorneys' fees, *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), this Court appointed Mr. Balhoff to act as Special Master to supervise discovery over these matters, and "to make appropriate recommendations regarding [the allocation and discovery] motions and objections." *See* Order of July 18, 2016 (Rec. Doc. 20410).

Although proceedings before Mr. Balhoff have only just recently begun, Objecting Counsel impulsively filed the matter *sub judice* which undermines the orderly process contemplated by the Court, preempts the recommendation of the Special Master required by this Court's Order of July 18, 2016, disregards the impact of related proceedings,[5] and improperly accelerates this Court's determination of a global fee allocation by proposing an impossible to achieve interim award.

### III. ARGUMENT

#### A. The Protocol Established by this Court Should be Obeyed

After seven years of litigation, in which over two years have involved the adjudication of attorney's fees, the Objecting Counsel have come forward to request a drastic change in the proceedings: an immediate distribution of attorneys' fees. Their proposal is not well founded.

To begin, this Court has on many occasions opined on the optimum procedures it follows regarding the award of attorneys' fees to comport with Rule 23 jurisprudence in the Fifth Circuit. In *Common Benefit Fees*, this Court noted the history of procedures it developed in cases like *Vioxx* and *Murphy Oil* to address the award of counsel fees. *See Common Benefit Fees*, 74

---

[5] In addition to the impact of BrownGreer's *pro rata* analysis, and the Homebuilders' MOU, Objecting Counsel overlook the potential impact of other objections filed that must be taken into account prior to any adjudication of the allocation between common benefit counsel and individually retained counsel. *See, e.g.,* Rec. Doc. Nos. 20415 (Acadian Residential Contractors, LLC); 20341 (Pritchard Housing Authority); 20347 (Villa Lago). Needless to say, the FC opposes the positions of these objectors. Notably, Villa Lago's counsel is particularly unique in that they continue to seek additional funds from the individually retained counsel's funds which is to the detriment of their fellow Objectors.

Tulane L. Rev. at 387. Traditionally, this Court first requests the recommendation of a Fee Committee (whose members are appointed due to their intimate knowledge of the litigation). Next, it appoints a Special Master to evaluate the fee committee's recommendation and triage any matters that require appropriate resolution, *e.g.*, discovery disputes. Finally, after receiving both recommendations, the Court undertakes its own evaluation of the efforts of counsel to make its own determination and ruling. *Id*. We are presently at the Special Master phase of this process and Mr. Balhoff is diligently proceeding with his role in the process.

By affording counsel all of these opportunities to address issues relevant to the award of attorney's fees, this Court amply meets the due process requirements addressed in *In re High Sulfer Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220 (5th Cir. 2008). Because the Court is addressing the award of common benefit work derived from a class action common fund, it naturally looks to the methodology typically employed by Courts in the Fifth Circuit, *i.e.,* the blended methodology. *See, e.g., Union Asset Mgmt. Holding, A.G. v. Dell, Inc.*, 669, F.3d 632, 644 (5th Cir.), *cert. denied*, 133 S. Ct. 317 (2012). *See also Common Benefit Fees*, 74 Tulane L. Rev. at 381. The blended method employs the percentage-of-fund analysis which references the so-called "*Johnson* factors," coupled with a lodestar cross-check. *See In re Vioxx Products Liab. Litig.*, 760 F.Supp.2d 640, 652 (E.D. La. 2010). Because a *Johnson* factor analysis is such an intrinsic part of the blended methodology, it does not readily lend itself to the short-cut of an interim fee award suggested by Objecting Counsel.

Without any reference or analysis of the *Johnson* factors, objecting counsel suggest this Court may simply deem a 41% award an appropriate measure for interim distribution. For this proposition, Objecting Counsel rely upon the *Diet Drug* opinion of Judge Bartle. *See In re Diet Drugs ((Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, 2002 WL 3215497

(E.D. Pa. Oct. 3, 2002) (Bartle, J.).[6]  Even in the *Diet Drug* case, however, where the litigation was concluded and settlement administration was still ongoing, Judge Bartle actually engaged in an analysis of a "modified version of *Gunter* Factors," PTO 2622 at 38.[7]  Objecting Counsel make no such proposal.  They invite this Court into error by demanding immediate payment without any of the predicate analysis necessary to make any fee award, let alone an interim fee award.  Since a *Johnson* factor analysis is necessary in any case, allowing a brief hiatus to engage in the "limited discovery" contemplated by the Court's July 18, 2016 Order, is beneficial, not prejudicial, and will act to streamline matters when the Court finally engages in the requisite *Johnson* factor analysis.

While Objecting Counsel may wish to short-circuit the procedures in place in their haste to get paid, prudence dictates that due process be observed and followed.  The Procedures *in situ* should continue to be enforced.

### B.  The Special Master Should be Afforded Time to Make His Recommendation

The July 18, 2016 Order appointing Mr. Balhoff as Special Master has only been in place for approximately four (4) weeks, but already the Special Master has been diligently assessing the matter, gathering relevant material, and communicating with counsel.  In short order, it is expected that Mr. Balhoff will make his determination regarding what limited discovery will be permitted, and thereafter whatever his recommendation will be regarding FC's Allocation Motion after taking into account the objections submitted thereto.  In practice, the short delay between now and then is only a matter of weeks.  To expedite these proceedings in order to have this Court immediately order the disbursement of the so-called "undisputed" fee allocation, is an

---

[6] The *Diet Drug* opinion of PTO 2622 published on Westlaw is incomplete.  Therefore, an actual copy of the order is attached hereto as Exhibit "A".

[7] In the Third Circuit, the equivalent case to *Johnson* is *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000).

unjustified breach in protocol, which will only serve to hamper these proceedings, not help them. Objecting Counsel's demand for expeditious treatment disregards the due process requirements required by this Court to insure that the treatment of attorney's fee is in accord with established jurisprudence. Since the short delay contemplated by permitting Mr. Balhoff to process the Objectors' positions is not prejudicial to the parties (and actually inures to the benefit of all), there is every justifiable reason that the Special Master should be encouraged complete his efforts and recommendation.

### C. The Allocation Must Be Based on Final Numbers Obtained from the Claims Administrator

The Objectors are either unaware or indifferent to the fact that the allocation process still requires the completion of the efforts of the Claims Administrator to calculate certain holdbacks before a final allocation may be issued with certitude. As previously discussed, BrownGreer has only recently resolved the *pro rata* distributions available to all applicable claimants. Further work is necessary for the Claims Administrator to complete its analysis of the holdback issued upon Homebuilders and the effects of the Amended MOU. These matters will affect the final numbers of the funds available for distribution of attorneys' fees and costs. As a consequence, no analysis of the distribution can be finally calculated without this information, and the Court should await any allocation until it knows with certainty the final figures available for any such calculation.

### D. There is no Undisputed Portion of the Total Available Attorneys' Fees to Distribute as a Result of the Objectors' Positions

The initiative now taken by Objectors necessarily implicates the private fee interests of most counsel, and not just the small cadre of Objecting Counsel. Indeed, at the end of this process initiated by these Objectors, information may emerge which would justify the Court

allocating fees between private and common benefit counsel in a way that even reduces the share of private fees in comparison to what has been recommended currently by the FC. Since all private counsel may have their fee interests adversely affected by the process at hand as a result of the potential "slippery slope" initiated by the Objectors, there simply is no "undisputed" portion of attorney's fees subject to distribution.

Since the premise of the Objecting Counsel's motion -- that there is a sum certain of $78,400,054.43 available for immediate distribution – is not correct, the motion may be denied on this basis alone.

### E. Efficiency Suggests that the Procedures in Place Will Produce the Fastest Result

This is not the first time this Court has allocated common benefit fees from class action funds. Not surprisingly, this Court has implemented a time-proven and established protocol for evaluating the allocation process. The nature of the Court's plan is designed to complete the evaluation once and for all. The Objectors seek to short-circuit this Court's process by having it engage in piecemeal, incomplete and imprecise allocations to allow them to get paid immediately through an interim award of attorney's fees. Their proposal is fraught with peril and risks fragmented and incomplete appeals because of their proposed bifurcation of the allocation process. Sometimes the tried and true method is the best. This is one of those times. The process contemplated by PTO 28 is the most efficient means to arrive at a final determination that fairly addresses all the parties' due process concerns swiftly and equitably. Issuing an interim award to pay Individually Retained counsel with funds that may be subject to later requests for refund is not the most efficient means to resolve this matter. There is no reason to divert from the established protocol.

## IV.     CONCLUSION

For the reasons set forth above, the Motion for Immediate Distribution of Undisputed Fees is not well founded, replete with erroneous assumptions and incorrect.  The motion should be denied.

                                      Respectfully submitted,

Dated: August 16, 2016    /s/ Russ M. Herman
Russ M. Herman (Bar No. 6819) (on the brief)
Leonard A. Davis (Bar No. 14190) (on the brief)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN & KATZ, L.L.C.
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel MDL 2047*
*Co-Chair/Secretary Fee Committee*

Arnold Levin (on the brief)
Fred S. Longer (on the brief)
Sandra L. Duggan (on the brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone:  (215) 592-1500
Fax:  (215) 592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel MDL 2047*
*Chair Fee Committee*

>Gerald E. Meunier (LA Bar No. 9471)
>Gainsburgh, Benjamin, David,
>  Meunier & Warshauer, LLC
>2800 Energy Centre
>1100 Poydras Street
>New Orleans, LA 70163-2800
>Phone: (504) 522-2304
>Fax: (504) 528-9973
>gmeunier@gainsben.com
>*Co-Counsel for Plaintiffs and PSC Member*
>*Fee Committee Member*

**ON BEHALF OF THE FEE COMMITTEE**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 16th day of August, 2016.

>/s/ Leonard A. Davis
>Leonard A. Davis, Esquire
>Herman, Herman & Katz, L.L.C.
>820 O'Keefe Avenue
>New Orleans, Louisiana 70113
>Phone: (504) 581-4892
>Fax: (504) 561-6024
>Ldavis@hhklawfirm.com
>Plaintiffs' Liaison Counsel MDL 2047
>*Co-counsel for Plaintiffs*