

201 ST. CHARLES AVENUE
SUITE 3600
NEW ORLEANS, LOUISIANA 70170
PHONE:  504.566.5200
FACSIMILE:  504.636.4000

www.bakerdonelson.com

**DANNY DYSART**
**Direct Dial**: (504) 566-5206
**Direct Fax**: (504) 696-3906
**E-Mail Address**: ddysart@bakerdonelson.com

***PRIVILEGED AND CONFIDENTIAL SETTLEMENT COMMUNICATIONS***

February 26, 2016

<u>Via Email:</u>
Mr. Dan Balhoff
Perry, Atkinson, Balhoff, Mengis, Burns & Ellis, LLC
P. O. Box 83260
2141 Quail Run Drive
Baton Rouge, LA 70884-3260
Balhoff@pabmb.com

> RE:   Howard and Chari Rapp
> 249 Gulfside Street, Waveland, MS 39576
> 300 Gulfside Street, Waveland MS, 39576

**SUPPLEMENTAL CONFIDENTIAL POSITION PAPER**

Dear Mr. Balhoff:

Pursuant to the February 17, 2016 mediation of the above-referenced matter, the Knauf Defendants[1] submit the following supplemental confidential position paper regarding the claims made by Howard and Chari Rapp (the "Rapps").

**I.      Introduction**

The Rapps have failed to show that a KPT-related Chinese drywall remediation took place at the above-referenced addresses. Although the Rapps were represented by current counsel prior to the commencement of the alleged remediations, the claimants have failed to present competent evidence of KPT Chinese Drywall or construction costs incurred. Both the cost documentation and the drywall board composition documentation fail to document KPT Chinese Drywall or a Chinese drywall remediation in accordance with the Knauf Class Settlement Agreement, the Already Remediated Properties Protocol, PTO 1(B), PTO 1, or general evidence preservation standards. The photographs provided as before and after photos of the properties do not show that any remediation has taken place. Finally, by the Rapps' own

---

[1] The Knauf Defendants include Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf International GmbH, Knauf Insulation GmbH, Knauf AMF GmbH & Co. KG, Knauf UK GmbH, Knauf do Brasil Ltda., Gebr. Knauf Verwaltungsgesellschaft KG, PT Knauf Gypsum Indonesia, or Knauf Gips KG.

admission, the KPT evidence provided by them does not show KPT drywall boards from the subject properties.

**II.     The photographic evidence of KPT Chinese Drywall provided by the Rapps could not possibly depict the drywall boards from the subject properties.**

Photographic evidence of KPT Chinese drywall submitted for the two properties was minimal until 2016, though the alleged remediation of these properties occurred back in 2009. In fact, no photos of KPT Chinese drywall were provided for 249 Gulfside Street until late 2015 and 2016. The Rapps claim that counsel for Knauf must have lost documentation when moving law firms, but a review of the BrownGreer portal, where documentation is uploaded for these claims, makes clear that Chinese drywall photos were virtually nonexistent for these claims for the span of five years.

Only after the Rapps remediated two other properties with funds received from the Knauf Class Settlement (Option 3 Cash-Out), in late 2015 and early 2016, did photos of large KPT boards appear in the record for the subject properties. However, during the mediation when counsel for Knauf was given the opportunity to question the Rapps concerning evidence preservation, *the Rapps were clear that the only pieces of Chinese drywall board ever collected or photographed from the subject properties were small, six-inch-by-six-inch pieces, collected and photographed by their counsel's inspector.* (The Knauf Defendants have not received those photographs to date). The Rapps stated that no drywall boards were kept or photographed during the alleged remediation of the subject properties.

It is worth noting that even had these large samples been removed from the subject properties, the Rapps' production of close to 100 photographs that actually depict only a handful of boards is grossly misleading and not at all in line with the spirit of PTO 1(B), which undoubtedly controls the production of evidence in 2016. PTO 1(B) calls for one photo of each board only. The Rapp's recent production of nearly one hundred photographs of a handful of drywall boards never installed in the subject properties, a third of which were duplicated and used as documentation for both units, reinforces the Knauf Defendants' argument that these claims lack the reliable documentation necessary to make up a valid ARH claim.

The vast majority of the photographic evidence for these claims could not possibly depict the small, six-inch boards collected in 2009, as these new photographs show large pieces of drywall board. It is the Rapps' own testimony, regardless of any new affidavit provided by opposing counsel, that the drywall boards removed from their properties were six-by-six-inch boards. Based on the testimony of the Rapps, the drywall boards depicted in the photographic documentation were not gathered from the subject properties. Therefore, these claims remain woefully unsupported.

**III.    The cost documentation provided by the Rapps is inconsistent with a Chinese drywall remediation and, even if remediation did occur, the cost documentation contradicts the supposed pre-PTO 1(B) start date alleged by the Rapps.**

Though the Rapps had the assistance of counsel throughout the relevant time periods, they rely on a pre-PTO 1(B) start date to shield themselves from any consequences of failing to

preserve evidence. The Rapps' own cost documentation, however, conflicts with their alleged start date and also calls into question whether remediation even took place.

For 300 Gulfside Street, a Lowe's receipt, dated May 4, 2010, was provided for foil insulation. This would be installed prior to new drywall, meaning that if demolition began before October 2009, then the property remained gutted for seven months, which is inconsistent with the Rapps' testimony. When questioned on the possibility that one property was remediated prior to PTO 1(B) and one property after PTO 1(B), the Rapps testified that both remediations were done simultaneously. Yet again, however, the documentation provided by the Rapps does not fit their arguments. For example, the air conditioning and flooring receipts for 249 Gulfside are from November 2009 but the corresponding receipts for 300 Gulfside are from April 2010;  the appliance receipts for 249 Gulfside are from January 2010 but the corresponding receipts for 300 Gulfside are from April 2010.

Additional cost documentation calls into question the Rapps' claim for 249 Gulfside Street. If remediation began around September 2009, as the Rapps claim, why were receipts for doors (8/25/2009), wallboard and hinges (7/13/2009), and a bath tub spout (8/14/2009) provided to document the remediation? Apparently, the Rapps collected receipts from their various properties and projects in order to put a Chinese drywall claim together.

The testimony of the Rapps did not clear up any of the confusion brought on by their documentation. Most notably, the Rapps stated during the mediation that only the lower four feet of drywall was removed from the properties. This statement, however, is inconsistent with the cost documentation provided; for example, the electrical work that requires entire walls to be removed could not have possibly been done if only the bottom four feet of drywall was removed.

Finally, the Rapps include line items for city inspections in their invoices, yet the City of Waveland has no record of a Chinese drywall remediation at either of the subject properties, and the Rapps testified during mediation that they in fact did not pull permits for the Chinese drywall remediation. The cost documentation provided by the Rapps is unreliable at best.

## IV.   Conclusion

Taken as a whole — the lack of photo documentation, the attempt to inflate the KPT evidence by providing numerous photographs of the same boards, the duplication of KPT photos between the claims, the unreliability of the drywall photos (which, again, based on the Rapps' own testimony, could not have come from the subject properties), the conflicting cost documentation, and the lack of any real evidence that remediation even took place — these claims do not reach the level of compensable claims. The Already Remediated Homes Protocol lays down the Claimants' requirements for compensation, and these claims do not even come close to living up to that standard.

Opposing counsel now wishes to introduce an inspection report from 2009 with a supporting affidavit and blames their tardiness on the Knauf Defendants for not asking for these documents. Opposing counsel also blames the Knauf Defendants for not inspecting samples allegedly collected from the subject properties. These arguments turn the Settlement Agreement on its head. The new documents should not be given any weight for the following reasons. It is

the Rapps' responsibility to prove their claim. The Knauf Defendants do not have the responsibility of figuring out what documents claimants may have and then explicitly asking for them. It is the Rapps' responsibility, pursuant to the ARH protocol, the Knauf Class Settlement Agreement, and the pre-trial orders, to collect and provide the documentation for their own claim. Lastly, this new documentation contradicts the Rapps' own testimony concerning the samples taken from their properties.

The Rapps had the assistance of counsel at all relevant times, yet are also attempting to use PTO 1(B) to excuse their failure to preserve evidence. However, even using PTO 1 as the standard, the Rapps' noncompliance has prejudiced the Knauf Defendants to the extent that an analysis of the claims is not possible. PTO 1 provides in its evidence preservation section, Section 14, that:

> All parties and their counsel are reminded of their duty to preserve evidence that may be relevant to this action. The duty extends to documents, data, and tangible things in possession, custody and control of the parties to this action, and any employees, agents, contractors, carriers, bailees, or other nonparties who possess materials reasonably anticipated to be subject to discovery in this action. "Documents, data, and tangible things" is to be interpreted broadly…

The evidence preservation section of PTO 1 goes on to state that "failure to comply may lead to dismissal of claims, striking of defenses, imposition of adverse inferences or other dire consequences."

The Knauf Defendants urge the Special Master to review the evidence submitted for the Rapp claims and to find that the claims do not have merit based on the Knauf Class Settlement, the Already Remediated Properties Protocol, PTO 1, PTO 1(B), and general evidence preservation standards. Lastly, the Knauf Defendants dispute the Rapps' claimed costs. If a remediation actually occurred, the Rapps would be limited to the Reimbursable Costs pursuant to the Knauf Class Settlement Agreement.

Respectfully submitted,

BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC

/s/ *Danny Dysart*___
DANNY DYSART

4