UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to All Cases | MDL NO. 2047<br><br>SECTION: L<br><br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

### MEMORANDUM IN SUPPORT OF HOLSTON VAUGHAN, LLC'S SHOW CAUSE RESPONSE TO SETTLEMENT ADMINISTRATOR'S MOTION REGARDING STIPEND DISPUTES FOR THE CHINESE DRYWALL SETTLEMENT PROGRAM (REC.DOC. 20339)

**MAY IT PLEASE THE COURT:**

Class Claimant VIT, Inc. ("VIT") and its counsel, Holston Vaughan, LLC ("HV"), submit the following Memorandum in Support of their response to Settlement Administrator BrownGreer, PLC's ("BrownGreer") Motion Regarding Stipend Disputes for the Chinese Drywall Settlement Program. (claims with dual representation) (Rec.Doc.20339) ("Settlement Program"), and hereby shows cause to this Honorable Court as to why HV is the <u>only</u> firm entitled to the stipend payment (and, ultimately, an attorneys fee) related to the remediated property owned located at 11374 Elysian Circle, Daphne, Alabama 36526 (the "Property"):

### I. INTRODUCTION

BrownGreer seeks guidance from the Court as to which law firm is entitled to the stipend payment associated with the Property in the Settlement Program because the Property is the subject of two claims brought by different claimants with different attorneys. HV brought claims on behalf of the proper claimant, VIT.  Gentle, Turner, Sexton & Harbison ("GTSH") brought claims on behalf of ineligible claimants, Nellie and Tim Amey ("Ameys") for the Property.  However, HV is the only firm

entitled to the stipend payment for the Property under the Global Settlement Agreement governing the Settlement Program because 1) VIT owned the property before, during and after the discovery of the defective Chinese Drywall; 2) GTSH's claimants did not have an eligible claim in the Settlement Program; and 3) HV was the only firm that handled the inspections, settlement negotiations and remediation concerning the Property.

## II.     FACTUAL BACKGROUND

### A.     Rights and Interests of Claimants in the Property

VIT was in the business of construction and real estate ownership. (Complaint attached as Exhibit "1"). In December of 2005, VIT unknowingly purchased defective Chinese drywall for construction of the Property. (Exhibit 1). In 2007, VIT put the Property on the market for sale. On June 19, 2007, the Ameys attempted to purchase the Property through a Vendor's Lien Deed and corresponding twelve (12) month Promissory Note in hopes of obtaining permanent financing within one year. (Declaratory Judgment filed Against the Ameys attached as Exhibit "2", Exhibits A and B). However, the <u>Ameys began defaulting on their payments due under the terms of the Note and Vendor's Lien Deed on March 1, 2008 and before either the Ameys or VIT were aware of the presence of defective drywall</u>. (January 11, 2013 Affidavit of VIT by Ira Turner attached as Exhibit "3" and Exhibit 2 at Exhibit F).[1]  Additionally, <u>the Ameys further defaulted on the Note when they failed place homeowners insurance on the Property, and failed to pay property taxes – thus causing the Property to be sold to a</u>

---

[1] On June 21, 2011, HV filed a state court action on behalf of VIT against Ace Hardware as the result of the presence and resulting damage of defective Chinese drywall. The case was styled as *VIT, Inc. v. Ace Andrews Hardware Company, Inc.*, et al., In the Circuit Court of Baldwin County, Alabama; CV-2011-636. ("State Action"). Exhibit F is the deposition of VIT and its owner, Ira Turner taken in the State Action.

third-party investment company on May 27, 2008 via an unpaid tax lien sale. (Exhibit 2 at Exhibits F and H).  On January 6, 2010, VIT applied to redeem the subject property from the investment company and was granted redemption of the Property after paying $10,216.80 to the Baldwin County Revenue Commissioner for back taxes not paid by the Ameys.  (Id.).  These additional defaults by the Ameys under the Note were prior to any knowledge of the presence of defective Chinese Drywall. (Exhibit 2 at Exhibit F and Exhibit 3).

The Ameys continued defaulting on their obligations under the Note and Deed beginning on March 1, 2008 causing VIT to conduct a foreclosure sale upon the Property at which VIT was the highest bidder. (Exhibit 2 at Exhibit C). The sale was conducted on December 4, 2009 and the Ameys were given notice of said sale before it occurred. (Exhibit 2 at Exhibits C and F). On December 11, 2009, VIT recorded its Foreclosure Deed in the Baldwin County Probate Court. (Id.).  The Ameys made no efforts to redeem the Property or vacate it even though they were given notice of the foreclosure sale. (Exhibit 2 at Exhibits C, F and H and Letter from Eddie Sexton attached as Exhibit "4"). Instead, they remained on the Property under a six (6) month lease with a start date of April 1, 2010.  (Exhibit 2 at Exhibits D and F).  The Ameys then defaulted under the terms of the Lease for non-payment of rent repeatedly beginning on May 1, 2010, causing VIT to not renew the lease.  (Exhibit 2 at Exhibit F and Exhibit 3).

B.  **Validity of the Ameys' Settlement Program Claim**

VIT did not suspect defective drywall in the Property until the fall of 2010 after VIT was continually replacing appliances and HVAC units in the Property. (Exhibit 2 at Exhibit F). The Ameys defaults under the Note, Deed and Lease Agreement began in

3

March of 2008 and were not related to the presence of defective drywall because the defaults occurred prior to any knowledge of defective drywall. (Id.). GTSH has stipulated that VIT was the owner of the Property after the foreclosure sale on December 4, 2009. (Exhibit 4 and Order entered in Declaratory Judgment for Ownership attached as Exhibit "5"). However, GTSH's position is that the Ameys are still entitled to Settlement Program damages because they were foreclosed upon while owners of the Property. (Id.).

On December 9, 2009, five (5) days after a foreclosure sale was conducted by VIT for various non-payment defaults under the Note and Deed, the Ameys through GTSH, filed a lawsuit in the United States District Court for the Eastern District of Louisiana styled as *Payton v. Knauf GIPS KG*, et al.; Class Action Complaint Case cv-2009-07628 ("Amey's Class Action") <u>incorrectly claiming they were the owners of the Property</u> and incurred damages as the result of the presence of defective Chinese drywall at the Property. (Exhibit 2 at Exhibit G). VIT was not named in the Ameys' Class Action even though VIT was the builder of the Property and the Ameys knew they were in default of the Note for reasons unrelated to the drywall at the time of filing the Ameys' Class Action. (Exhibit 2 at Exhibits C and F and Exhibit 3). The first time VIT learned of the Ameys' Class Action was in the fall of 2011, when Mr. Amey called Mr. Turner to request entry into the Property so that Knauf could inspect it to confirm the presence of defective drywall for purposes of the Ameys' Suit. (Exhibit 2 at Exhibit F). Furthermore, the Ameys did not own the Property on December 9, 2009 because they failed to pay the taxes for the Property. (Exhibit 2 at Exhibit H).

Once VIT learned on the Ameys' Class Action and claim of ownership, HV began communicating with GTSH in order to inform them of VIT's ownership and place them on notice of a potential Alabama Litigation Accountability Act claim if they pursued their claims on behalf of the Ameys in relation to the Property. (Letter from HV to GTSH attached as Exhibit "6").  This letter was sent after Knauf placed a hold on remediation of the Property per HV's request due to the Ameys claim of ownership forcing HV on behalf of VIT to file a declaratory judgment for purposes of obtaining a court order as to ownership of the Property.  (Exhibit 2 at p.14, et seq. and Letter from HV to Knauf's counsel attached as Exhibit "7"). On October 23, 2012, VIT's declaratory judgment action resulted in a summary judgment in favor of VIT as to ownership, as well as tenant damages caused by the Ameys. (Exhibit 4).  In November of 2012, HV received an email from Knauf's counsel stating that GTSH represented to him that VIT purchased the Property from a bank and knew that the house contained defective drywall at the time VIT purchased it. (Email from HV to Knauf's counsel, Kyle Spaulding, attached as Exhibit "8"). HV responded to inform Knauf that GTSH's account of the facts were incorrect. (Id.).

C.     HV's Handling of the Eligible Claims Concerning the Property

HV filed the State Action for VIT pertaining to all of its claims related to defective Chinese drywall present in the Property. (Exhibit 1). HV filed the declaratory judgment action in order to get a court order regarding legal ownership of the Property so that it could be remediated. (Exhibit 2). HV alerted Knauf and Moss Construction of the ruling by the Court in the declaratory judgment action that VIT was the legal owner of the Property and soon thereafter, remediation of the Property resumed.  (Exhibit 7 and

5

Email from HV to Knauf's counsel, Angela Vicari, attached as Exhibit "9"). HV handled the mortgage loan extension/forbearance for the loan obtained by VIT where the Property was collateral for said loan in order for the Property to be remediated. (Exhibits 7, 8 and 9). HV dealt with and attended all site inspections and negotiations regarding the actually remediation of the Property and settlement proceeds from said remediation. (Exhibits 7, 8, 9; August 17, 2016 Affidavit of Ira Turner attached as Exhibit "10" and Moss Construction Scope of Work, p. 1 and HV Communications dealing with the remediation attached as Exhibit "11"). VIT was the only claimant to sign any settlement agreements, work authorizations and final inspections pertaining to the remediation of the Property. (Documents Related to the Remediation attached as Exhibit "12").

HV filed all claims associated with the Property for VIT in MDL 2047 as part of the Settlement Program. (Exhibit 10). Specifically, HV filed for VIT Settlement Program claims for lost rent, use and sales and miscellaneous claims. VIT's Settlement Program claims were both found to be eligible and were paid to HV. HV and its attorneys were the only lawyers that ever represented VIT regarding any claims related to the Property as the result of Chinese drywall. (Exhibit 10). Ira Turner, part-owner and vice president of VIT, has never spoken to or met anyone from GTSH, much less given anyone from GTSH authority to perform any legal services on its behalf or related the Property on its behalf. (Exhibit 10).

### III. ARGUMENT

HV is entitled to the entire stipend payment for the Property because it's client, VIT, owned the Property at the time of the discovery of the Chinese drywall, as well as

was the only law firm that assisted VIT with its claims resulting from the presence of defective Chinese drywall and the remediation of the Property.  Additionally, HV is entitled to the full stipend amount because GTSH's claimants, the Ameys, did not have an eligible claim related to the Property in the Settlement Program at the time GTSH filed the Amey's Class Action.  Furthermore, GTSH never had authority to perform any legal services for VIT nor did they perform any work in relation to the remediation and settlement negotiations surrounding the Property. Therefore, HV's representation of VIT meets the requirements placed in the Settlement Program for the allowance of payment of the full amount of the stipend payment related to the Property; however, GTSH's representation of the Ameys does not.

     The MDL 2047 Global Settlement Agreement defines "Class Members" or "Settlement Class" as all members that of one of the following Subclasses: "The Residential Owner Subclass", "The Commercial Owner Subclass".  (Rec.Doc 15742-2). VIT's Settlement Program claims were paid because it was a Commercial Owner Subclass. (Rec.Doc.15742-2 and Exhibits 1-10). The Ameys' Class Action was based on their claim that they qualified as Class Members through the Residential Owner Subclass. (Exhibit 2 at G). Furthermore, the Ameys through GTSH filed for and were paid Other Loss Fund Benefits in the Settlement Program based the Ameys claim they qualified for "Foreclosure" benefits under 4.7.1.3 of the Global Settlement Agreement. (Rec.Doc.15742-2, p.47). However, under the Global Settlement Agreement in order for a Class Member to qualify for Foreclosure benefits they must have "owned the Foreclosed Property prior to foreclosure" and they "must establish that the foreclosure was substantially caused by KPT Chinese Drywall". (Id.). Additionally, for a Foreclosed

Property where the Foreclosure is attributable to circumstances other than caused by substantially by KPT Chinese Drywall, such as economic downturns, personal financial losses and/or loss of employment, the Class Member (or Owner) will not be entitled to Foreclosure Other Loss Fund payments. (Id.). The Ameys would not qualify as any other Class Members entitled to any type of Other Loss Fund benefit in the Settlement Program because of VIT's established ownership rights and Subclass qualification. (Exhibits 1-12)(Rec.Doc.15742-2, p.47). Therefore, an analysis as to whether the Ameys' paid Settlement Program claim qualified as Other Loss Fund "Foreclosure" benefit is the only analysis needed to determine whether the Ameys claim was eligible for payment in the Settlement Program.

There is no longer any dispute as to whether VIT was the rightful and legal owner of the Property before it sold it to the Ameys in June of 2007. (Exhibits 1-12). Furthermore, there is no dispute that when the Ameys were foreclosed upon by VIT on December 4, 2009, VIT once again became the sole owner of the Property. (Exhibits 2-12). Furthermore, there is no dispute that the Ameys failed to redeem the Property after being foreclosed upon. (Exhibits 2, 4 and 5). There is also no dispute that VIT's foreclosure on the Ameys was due to non-payment of the amounts due under the Note and Deed. (Exhibits 2 and 3). Lastly, there is no dispute that Ameys did not own the Property at the time VIT foreclosed on it. (Exhibit 2 at Exhibit H). Therefore, the only item in dispute and that if proven would allow the Ameys to have an eligible claim in the Settlement Program is whether VIT's foreclosure on the Ameys was substantially caused by KPT Chinese Drywall, instead of unrelated economic downturns, personal financial losses and/or loss of employment. If the Ameys cannot prove this, then the

Ameys' Settlement Program claim was wrongfully paid and GTSH is ineligible for any amount of the stipend payment for the Property.

Mr. Turner, VIT's part owner and vice president, has repeatedly testified that 1) the Ameys defaults under the Note and Deed which led to the foreclosure began years before VIT's discovery of the Chinese Drywall at the Property – default began March 1, 2008 and VIT's discovery was in fall of 2010, 2) the foreclosure had nothing to do with the defective drywall and 3) VIT, not the Ameys, paid for all repairs associated with electronic failures at the Property caused by the defective drywall.  (Exhibit 2 at Exhibits E and F and Exhibits 3 and 10). Additionally, the Ameys' Class Action was not filed until December 9, 2009, which is over a year after they began defaulting on their Note and Deed with VIT. (Exhibit 2 at Exhibits A, B, C, D, F, G and H and Exhibit 3).  Clearly the reason for foreclosure by VIT on the Ameys had nothing to do with KPT Chinese Drywall, but instead, was due to unrelated economic problems experienced by the Ameys starting in March of 2008 and continued through the time the Lease Agreement was non-renewed due to the Ameys' non-payment of rent.  (Exhibits 2 and 3).  Therefore, the Ameys' Settlement Program claim was ineligible, which disqualifies GTSH from payment of the stipend payment related to the Property.

Furthermore, GTSH is not entitled to the stipend payment for the Property because it never represented an actual Class Member with eligible claims for the Property.  (Exhibits 1-12). Instead, HV is the only law firm and attorneys that ever had authority from VIT to litigate and negotiate a settlement on its behalf, as well as the only law firm and attorneys that actually handled the remediation and eligible claims for the Property. (Exhibits 10, 11 and 12). Therefore, GTSH is not the proper party entitled to

receipt of the cost stipend (required in Pre-Trial Order No. 30 in order for this Court to disperse the Property stipend). (Rec.Doc.19787).

It is clear what happened here. GTSH appears to have engaged in a mass acquisition of Chinese drywall claimants to submit to the MDL, and – apparently – inadvertently picked up this case from an ineligible claimant who <u>did not own the property</u>. They lumped the Ameys in with the other claims they filed without doing any due diligence to determine whether or not their claims were proper. Then – even after they had been advised that their claimants were improper - they nevertheless left them in the MDL and made – and received – claim payments on their behalf. It remains a mystery to HV as to how the Ameys were paid $10,000 out of a Global Settlement Fund when thousands of claimants in MDL 2047 were paid pennies on the dollar for their legitimate eligible claims. This is especially troubling when it is now clear that GTSH was fully aware of all of the circumstances surrounding the foreclosure on the Ameys by VIT once VIT filed its declaratory judgment action. (Exhibits 2, 3, 6 and 10).

## IV. CONCLUSION

WHEREFORE, HV and VIT respectfully move the Court to order the entire stipend amount owed for the Property to be disbursed to HV and further order that GTSH is owed no stipend or other money related in any way to the Property. HV and VIT further move for this Court to enter any other aorder it determines is reasonable and necessary in relation to the ineligible claims of the Ameys filed by GTSH or any further relief ordered by this Court that corresponds with the facts presented herein and are in accordance with the presiding law.

Respectfully submitted,

By:/s/ *Richard H. Holston*
RICHARD H. HOLSTON (HOLSR5536)
Electronic Mail: rhh@holstonvaughan.com
GREGORY E. VAUGHAN (VAUGG6227)
Electronic Mail: gev@holstonvaughan.com

**HOLSTON VAUGHAN, LLC**
Post Office Box 195
Mobile, Alabama 36601
Telephone: (251) 432-8883
Facsimile: (251) 432-8884
**ATTORNEY FOR VIT, INC.**

**BY:**/s/ *K. Amanda Herndon Barton*
K. AMANDA HERNDON BARTON (AL Bar # ASB-4561-I62H)
Electronic Mail: kab@bartonlawpractice.com

**BARTON LAW, LLC**
Post Office Box 2412
Mobile, Alabama 36652
Telephone: (251) 300-2503
Facsimile: (251) 431-6006
**ATTORNEY FOR VIT, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on the Settlement Administrator, BrownGreer, PLC, Jacob S. Woody, Esq. and Eddie Sexton, Esq. by U.S. Mail and e-mail and upon all parties by electronically uploading the same to File & ServeXpress in accordance with Pre-Trial Order No. 6 and that the foregoing was electronically filed with the Clerk of the Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this the 17th day of August, 2016

/s/ *Richard H. Holston*
**RICHARD H. HOLSTON**