## IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

**VIT INC.**

      **Plaintiff,**            *

**vs.**                  *

**ACE ANDREWS HARDWARE**    *   **Civil Action Case Number:**
**COMPANY, INC.** and **Fictitious**
**Defendants A; B; C; and/or D,** whether   *   CV-2011-_636_
singular or plural, being those persons,
firms, or other legal entities that      *
manufactured, formulated, designed,
processed, distributed, delivered, imported,   *
supplied, inspected, tested, marketed, sold,
warranted, advertised, used, serviced,    *
applied and/or failed to warn concerning
the defective drywall at issue;        *

      **Defendants.**



## COMPLAINT AND DEMAND FOR A JURY TRIAL

    The Plaintiff, **VIT INC.,** comes before this Honorable Court to bring the above styled action alleging the following against the Defendants listed below separately and severally, including all Fictitious Defendants:

    1.    The Plaintiff brings this action seeking actual damages, equitable relief (including restitution and disgorgement of profits), and all other relief available under the laws of the State of Alabama.

    2.    The claims set forth below arise out of the defective Chinese drywall within the Plaintiff's home, namely, the manufacture, formulation, design, processing, distribution, delivery, importation, supplying, inspection, testing, marketing, sale, warranting, advertising, use, application, and/or failure to warn concerning Chinese

1

# EXHIBIT 1

drywall which the Defendants knew or should have known was defective and fundamentally unsuitable for its intended purpose.

3.     As a direct and proximate result of the Defendants' conduct, both individually and in concert or conspiracy with one another, defective, unfit and unsuitable Chinese drywall was installed in the Plaintiff's home, and has and continues to damage the Plaintiff and its property.

## PARTIES, JURISDICTION AND VENUE

4.     The house that is subject of this lawsuit is located in Baldwin County, Alabama at 11374 Elysian Circle, Daphne, Alabama 36526 (Lot 41, Austin Park).

5.     The Plaintiff, **VIT, INC.**, is an Alabama domestic corporation doing business in Baldwin County, Alabama that owns the house which is the subject of this lawsuit.

6.     Defendant **ACE ANDREWS HARDWARE COMPANY, INC.** is an Alabama domestic corporation doing business in Mobile Counties, Alabama.  Defendant **ACE ANDREWS HARDWARE COMPANY, INC.** sold, delivered, supplied, inspected, marketed, warranted, and/or advertised the defective Chinese drywall that was installed at the Plaintiff' residence.

7.     **Fictitious Defendants A** through **D** are the persons, firms, or other legal entities that manufactured, formulated, designed, processed, distributed, delivered, imported, supplied, inspected, tested, marketed, sold, warranted, advertised, used, applied and/or failed to warn concerning the defective drywall at issue;   that misrepresented the condition, content and fitness of the defective drywall at issue; who

2

acted or conspired to act to suppress, misrepresent, conceal, cover up and hide the defects and their discovery; and/or that breached the sales contract; all whose true and correct identities are unknown to the Plaintiff at this time, but will be added by amendment, jointly and individually, when ascertained, or who are presently non-US entities suspected of wrongdoing, but who are unavailable for practical and affordable service due to treaties or conventions.

8.     This Court has personal jurisdiction over Defendants because they are engaged in substantial business activity within this State. Additionally, Plaintiff's causes of action arise from Defendants personally, or through their agents, causing injury to real and personal property within Baldwin County, Alabama and at the time of the injury, products, materials, or things manufactured, distributed and supplied by the Defendants were used within the State of Alabama in the ordinary course of commerce, trade, or use.   Said products were distributed, sold, supplied, or otherwise provided by Defendants **ACE ANDREWS HARDWARE COMPANY, INC.** and **Fictitious Defendants A** through **D** in the ordinary course of commerce, trade or use and shipped into the State of Alabama.

9.     The Defendants **ACE ANDREWS HARDWARE COMPANY, INC.,** and **Fictitious Defendants A** through **D** are referred throughout this Complaint collectively as "Defendants."

10.    Venue and jurisdiction are proper in this Court.


## FACTS

11.    In the Fall of 2005, Plaintiff began building a house on property located at

3

11374 Elysian Circle, Daphne, AL 36526, with the intention of selling the house for profit. On December 27, 2005, Plaintiff purchased drywall for the construction of the subject house from Defendant **ACE ANDREWS HARDWARE COMPANY, INC.,** which purchased said drywall from and **FICTITIOUS DEFENDANTS A** through **D.** began construction on building Plaintiff's house.

12.     The house built by Plaintiff contains defective Chinese drywall, which was purchased from and sold by Defendant **ACE ANDREWS HARDWARE COMPANY, INC.**, which purchased said defective Chinese drywall from **FICTITIOUS DEFENDANTS A** through **D**.

13.     The Defendants purchased these drywall materials, directly or indirectly, from German and/or Chinese entities and/or **Fictitious Defendants A** through **D**.

14.     The drywall materials in question were manufactured in China.

15.     The Defendants improperly manufactured, formulated, designed, processed, distributed, delivered, imported, supplied, inspected, tested, marketed, sold, warranted, advertised, used, applied, serviced and/or failed to warn concerning the defective drywall materials.

16.     Said drywall materials were and are uniformly and inherently defective when used for their intended purposes. The drywall materials were made from waste material – also known as "fly ash" – collected from scrubbers at coal-fired power plants located in China, or alternatively were made with gypsum mined from one or more locations in China where the natural gypsum contained high levels of sulfur.

17.     The defective drywall materials emit a combination of sulfide gases which produce a distinctive chemical odor, and cause corrosion to copper and other metal

4

materials such as those used in HVAC systems, electrical systems, gas fuel systems and many appliances, electronics, equipment and other items commonly located in residential dwellings.

18.     The Defendants knew of the defective nature of the Chinese drywall materials at the time they improperly manufactured, formulated, designed, processed, distributed, delivered, imported, supplied, inspected, tested, marketed, sold, warranted, advertised, used, applied, serviced and/or failed to warn concerning same. Alternatively, the Defendants should reasonably have known or discovered the defective nature of the Chinese drywall materials prior to its use in the Plaintiff's home.

19.     The Defendants suppressed, misrepresented, concealed, covered up and hid the defective nature of the Chinese drywall materials from the general public, including the Plaintiff. The Plaintiff could not reasonably have discovered the existence of the defect in the Chinese drywall material and did not discover the existence of the problem until the Fall of 2010.

20.     As a direct and proximate result of the gas emissions from the defective Chinese drywall materials used in the construction of their home, as well as a direct and proximate result of the conduct, breaches, acts and omissions of the defendants, each of the Plaintiff has suffered the following damages:

        a.  Loss of enjoyment of the home;

        b.  Increased utility and servicing costs;

        c.  Past and future lost rents;

        d.  Property damage including **resulting** damage to other product and property;

5

e.  Property damage to the HVAC system, electrical systems, and other systems in the home;

f.  Property damage to appliances, electronics, equipment and other items located in the home;

g.  Cleaning expenses and costs;

h.  The loss of the financial and time investment in the home;

i.  Remediation/repair expenses;

j.  Stigma; and

k.  Such severe, regular and systematic failures of the HVAC systems, electrical systems, and other residential home systems/components so as to render the home uninhabitable;

21.     Plaintiff was at all times the direct or intended third-party beneficiary of the multiple contracts, agreements and trade practices between and among the various Defendants and others since the clear and manifest intent of Defendants was to primarily, directly and ultimately benefit the Plaintiff.  Each of the Defendants at all relevant and material times knew, appreciated and understood this fact.

22.     At all times relevant and material to the allegations contained herein, each of Defendants acted directly, or alternatively acted as the actual and/or apparent agent of one or more of the other Defendants named herein, including Fictitious Defendants. The acts and omissions alleged herein were committed within the line and scope of one or more of such actual or apparent agency relationships, and/or were thereafter ratified by the principal with consequential benefit.

23.     Defendants knew or had reason to know of the defective nature of the Chinese drywall, or alternatively discovered the defect prior to the Plaintiff.  Defendants

knew or had reason to know that the Plaintiff could not and would not discover the defective nature of the Chinese drywall, or even the existence and presence of the Chinese drywall in its home, due to Plaintiff lacking knowledge and understanding of the origins and composition of the materials used in the construction of the home. Defendants thereafter suppressed, concealed, hid and failed to warn and advise the Plaintiff of the property damage risks associated with the defective Chinese drywall.

## FIRST CAUSE OF ACTION
### (Negligence / Wantonness)

24.     The Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

25.     Defendants, including Fictitious Defendants A through D, owed a duty to Plaintiff to exercise reasonable and ordinary care in the manufacture, formulation, design, processing, distribution, delivery, importation, supplying, inspection, testing, marketing, sale, warranting, advertising, use, application, and/or warnings concerning the Chinese drywall.

26.     Defendants negligently and/or wantonly breached their duty to Plaintiff by formulating, inadequately testing, designing, manufacturing, marketing, advertising, selling, using, applying, or otherwise placing into the stream of commerce the defective Chinese drywall that is unsuitable and unfit for its intended purpose.  Defendants did so with the understanding, appreciation and/or knowledge that it would ultimately be installed into the homes of ordinary consumers like the Plaintiff.  Defendants further failed to warn the Plaintiff and others of the defective nature of the Chinese drywall and

the risks created by its presence in a home.   Defendants further failed to promptly remove or recall the drywall from the marketplace or take other appropriate remedial action.

27.   Defendants knew or reasonably should have known that the Chinese drywall was defective, would cause other building components and property to fail prematurely, was not suitable for its intended use in construction and otherwise was not as warranted and represented by the Defendants.

28.   Defendants possessed superior knowledge about the composition and defective nature of the drywall, and also knew or reasonably should have known that the said defect would cause damage to Plaintiff's home and property; would require repair and/or replacement of damaged property; and would otherwise inflict significant damage on the Plaintiff's home.

29.   As a direct and proximate result of the Defendants' negligence and/or wantonness, defective design, and/or manufacture, sale, and/or use of the drywall, and the defendants placement of same into the stream of commerce, Plaintiff has suffered or are substantially certain to suffer damages, including damage to property, and have incurred, or are substantially certain to incur, the costs of testing, repairing and replacing defective Chinese drywall, and other components, remediation of consequential and resulting property damage, loss of rents, loss of the use and enjoyment of the home, diminished value of the home, loss of the investment in their home, interest paid, and other damages as alleged herein.

30.   Defendants' employees also engaged in this wrongful conduct with the active and knowing participation of Defendants' officers, directors or managers.

8

31.     Defendants' conduct also constituted wantonness in that it was so willful, wanton, reckless, or wanting in care that it constituted a conscious disregard or indifference to the rights of Plaintiff.

32.     As a direct and proximate result of the Defendants' negligence and/or wantonness, the Plaintiff suffered damages as set forth above.

WHEREFORE, the premises considered, the Plaintiff demands judgment against the Defendants, including Fictitious Defendants A through D, separately and severally, for compensatory and punitive damages, equitable relief, interest, costs, appropriate and reasonable attorney's fees, and such other or further relief as may be warranted by the evidence and the findings of this Court.

## SECOND CAUSE OF ACTION
### (Strict Products Liability)

33.     The Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

34.     At all relevant times, Defendants, including Fictitious Defendants A through D, were engaged in the business of designing, manufacturing, marketing, advertising, and/or selling into the stream of commerce the Chinese drywall that is the subject of this action.

35.     The Chinese drywall installed in the Plaintiff's home was and is defective and unfit for its intended use.

36.     Defendants knew and expected that the Chinese drywall would reach, and it did reach, the Plaintiff without any substantial change in its condition.

9

37.    Under normal use, as alleged above, the Chinese drywall fails to perform in accordance with the reasonable expectations of Plaintiff and ordinary consumers.

38.    The risks of harm posed by the failure of the Chinese drywall outweigh the benefits of its design.

39.    The Defendants, in exercising reasonable care, should have produced and used properly-designed drywall.  Had they done so, this would have prevented or reduced the damages suffered by Plaintiff.

40.    As a direct and proximate cause of the Defendants' defective design, and/or manufacture of the drywall, and Defendants' sale, and/or use of the drywall, and the defendants placement of same into the stream of commerce. Plaintiff has suffered or are substantially certain to suffer damages, including damage to property, and have incurred, or are substantially certain to incur, the costs of testing, repairing and replacing defective Chinese drywall and other components, remediation of consequential and resulting property damage, loss of earnings, loss of the use and enjoyment of their home, diminished value of their home, loss of the investment in their home, interest paid, emotional distress and other damages as alleged herein.

41.    Defendants knew or should have known of the risks posed by the Chinese drywall, but failed to provide adequate warnings of the known or foreseeable risks. Defendants had a duty not to put on the market products that posed a serious danger without first testing it and/or issuing warnings to the Plaintiff and other consumers.

42.    Defendants breached their duty to warn by unreasonably failing to provide warnings concerning any of the facts alleged herein to the Plaintiff and other consumers.

43. Defendants' failure to warn as alleged herein, proximately caused reasonably foreseeable damages to Plaintiff. The Plaintiff would have heeded legally adequate warnings, and not purchased the defective drywall, but would have purchased other drywall to build their home. The absence of warnings by the Defendants was the proximate cause of present and future damages sustained by Plaintiff.

44. Defendants' wrongful conduct, alleged in the foregoing paragraphs, was intentional and or reckless, in that Defendants' managing agents, primary owners, and/or other officers or directors acted with actual or constructive knowledge of the wrongfulness of their conduct and of the high probability that damage to the Plaintiff would result and, despite that knowledge, intentionally or recklessly sold Chinese drywall without proper testing, concealed the defect, and failed to warn purchaser's of the defective Chinese drywall.

45. Defendants' employees also engaged in this wrongful conduct with the active and knowing participation of Defendant entities and/or the knowing endorsement, ratification, and consent of Defendants' officers, directors, or managers.

46. Defendants' conduct also constituted wantonness, in that it was so willful, wanton, reckless, or wanting in care that it constituted a conscious disregard or indifference to the rights of Plaintiff.

47. As a direct and proximate result of the Defendants' conduct, the Plaintiff suffered damages as set forth above.

WHEREFORE, the premises considered, the Plaintiff demands judgment against the Defendants, including Fictitious Defendants A through D, separately and severally, for compensatory and punitive damages, equitable relief, interest, costs, appropriate

and reasonable attorney's fees, and such other or further relief as may be warranted by the evidence and the findings of this Court.

## THIRD CAUSE OF ACTION
### (Alabama Extended Manufacturers' Liability Doctrine)

48.     The Plaintiff incorporates by reference the allegations in the preceding paragraphs.

49.     At all relevant times, Defendants, including Fictitious Defendants A through D, were engaged in the business of designing, manufacturing, marketing, advertising, and/or selling into the stream of commerce the Chinese drywall that is the subject of this action.

50.     Defendants knew and expected that the Chinese drywall would reach, and it did reach, the Plaintiff without any substantial change in its condition.

51.     The Chinese drywall installed in the Plaintiff's home was and is defective, unfit for its intended use, and unreasonably dangerous to the Plaintiff as the ultimate user or consumer.

52.     Under normal use, as alleged above, the Chinese drywall fails to perform in accordance with the reasonable expectations of Plaintiff and ordinary consumers.

53.     As a direct and proximate cause of the Defendants' defective design, and/or manufacture of the drywall, and Defendants' sale, and/or use of the drywall, and the defendants placement of same into the stream of commerce. Plaintiff has suffered or are substantially certain to suffer damages, including damage to property, and have incurred, or are substantially certain to incur, the costs of testing, repairing and

replacing defective Chinese drywall and other components, remediation of consequential and resulting property damage, loss of earnings, loss of the use and enjoyment of their home, diminished value of their home, loss of the investment in their home, interest paid, emotional distress and other damages as alleged herein.

54.     As a direct and proximate result of the Defendants' conduct, the Plaintiff suffered damages as set forth above.

WHEREFORE, the premises considered, the Plaintiff demands judgment against the Defendants, including Fictitious Defendants A through D, separately and severally, for compensatory and punitive damages, equitable relief, interest, costs, appropriate and reasonable attorney's fees, and such other or further relief as may be warranted by the evidence and the findings of this Court.

## FOURTH CAUSE OF ACTION
### (Unjust Enrichment)

55.     The Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

56.     Defendants, including Fictitious Defendants A through D, have been unjustly enriched in that they have wrongfully acquired a benefit, i.e., funds and profits, by their wrongful behavior described above.

57.     Defendants have continued to acquire funds and profits despite their knowledge of the defectiveness of, and risks posed by, the defective Chinese drywall.

58.     The circumstances under which Defendants profited from the sale of the drywall make it inequitable for them to retain those funds and profits.

13

59.     Plaintiff demands that Defendants be ordered to disgorge, for the benefit of the Plaintiff, all or part of their ill-gotten profits received from the sale of the defective drywall, and/or make full restitution to Plaintiff for damages as set forth herein.

WHEREFORE, the premises considered, the Plaintiff demands judgment against the Defendants, including Fictitious Defendants A through D, separately and severally, for equitable relief, interest, costs, appropriate and reasonable attorney's fees, and such other or further relief as may be warranted by the evidence and the findings of this Court.


## FIFTH CAUSE OF ACTION
### (Implied Warranty of Fitness for a Particular Purpose)

60.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

61.     Each of Defendants, including Fictitious Defendants A through D, is a merchant, supplier, and/or distributor of gypsum drywall.

62.     Under the law of Alabama, Defendants impliedly warranted directly to Plaintiff or to its predecessors in title, that the drywall was reasonably fit for the ordinary purposes for which they are used.

63.     Plaintiff is known, an identified and/or intended third-party beneficiary of the warranties given by Defendants, and the clear and manifest intent of the Defendants sales contracts, agreements and trade practices was to primarily, directly and ultimately benefit the Plaintiff.

64.     At the time the defendants manufactured, formulated, designed,

14

processed, distributed, delivered, imported, supplied, inspected, tested, marketed, sold, warranted, advertised, used, applied and/or failed to warn concerning the defective drywall materials, the said defendants knew or had reason to know that the Chinese drywall was being acquired for the particular purpose of installation in the Plaintiff's home, and that the Plaintiff was relying upon the Defendants superior skill, judgment and experience to select and furnish materials suitable and fit for this particular purpose.

65.     Defendants breached the implied warranty of fitness for a particular purpose by selling certain Chinese drywall that was defective and not reasonably fit for the ordinary purpose for which they are used.

66.     Specifically, certain of the drywall supplied by Defendants and installed in the Plaintiff's home is defective because it has caused damage to Plaintiff's property as alleged herein.

67.     Defendants received actual notice of the defective Chinese drywall, but have failed to repair or replace the defective Chinese drywall, or otherwise take remedial measures.

68.     As a direct and proximate result of the Defendants' breach of the warranty of fitness for a particular purpose, the Plaintiff suffered damages as set forth above.

WHEREFORE, the premises considered, the Plaintiff demands judgment against the Defendants, including Fictitious Defendants A through D, separately and severally, for compensatory and punitive damages, equitable relief, interest, costs, appropriate and reasonable attorney's fees, and such other or further relief as may be warranted by the evidence and the findings of this Court.

## SIXTH CAUSE OF ACTION
### (Implied Warranty of Merchantability)

69.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

70.     Each of the Defendants, including Fictitious Defendants A through D, is a merchant, supplier, or distributor of gypsum drywall.

71.     Under the law of Alabama, Defendants impliedly warranted directly to Plaintiff that the drywall was merchantable and reasonably fit for the ordinary purposes for which they are used.

72.     Plaintiff is a known, identified and/or intended third-party beneficiary of the warranties given by Defendants, and the clear and manifest intent of the Defendants sales contracts, agreements and trade practices was to primarily, directly and ultimately benefit the Plaintiff.

73.     At the time the Defendants manufactured, formulated, designed, processed, distributed, delivered, imported, supplied, inspected, tested, marketed, sold, warranted, advertised, used, applied and/or failed to warn concerning the defective drywall materials, the said defendants knew or had reason to know that the Chinese drywall was being acquired for the purpose of installation in the Plaintiff's home, and that the Plaintiff was relying upon the Defendants superior skill, judgment and experience to select and furnish materials suitable, fit and merchantable for use in this manner.

74.     Defendants breached the implied warranty of merchantability by selling certain Chinese drywall that was defective and not reasonably fit for the ordinary

16

purposes for which they are used.

75.     Specifically, certain of the drywall supplied by Defendants and installed in the Plaintiff's home is defective because it has caused damage to Plaintiff's property as alleged herein.

76.     Defendants received actual notice of the defective Chinese drywall, but have failed to repair or replace the defective Chinese drywall or otherwise take remedial measures.

77.     As a direct and proximate result of the Defendants' breach of the warranty of merchantability, the Plaintiff suffered damages as set forth above.

WHEREFORE, the premises considered, the Plaintiff demands judgment against the Defendants, including Fictitious Defendants A through D, separately and severally, for compensatory and punitive damages, equitable relief, interest, costs, appropriate and reasonable attorney's fees, and such other or further relief as may be warranted by the evidence and the findings of this Court.

## SEVENTH CAUSE OF ACTION
### (Express Warranty)

78.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

79.     Defendants, including Fictitious Defendants A through D, provided express written warranties with the sale of the subject drywall.

80.     Defendants, including Fictitious Defendants A through D, also expressly affirmed that the product they were selling to the Plaintiff for use in its home was

17

gypsum drywall.  By trade custom and practice, said warranty included an affirmation that the product was essentially gypsum, a paper backing, and nothing else.  That affirmation constitutes an express warranty under the laws of Alabama.  Plaintiff relied on said express warranty in accepting the subject drywall.

81.    Defendants breached said express warranties by selling a product that did not conform to said affirmations, namely that the product was contaminated with a compound containing high sulfur content such that it is not essentially gypsum.

82.    Specifically, certain of the drywall supplied by Defendants and installed in the Plaintiff' home is defective because it has caused damage to Plaintiff' property as alleged herein.

83.    Defendants received actual notice of the defective Chinese drywall, but have failed to repair or replace the defective Chinese drywall or otherwise take remedial measures.

84.    As a direct and proximate result of the Defendants' breach of express warranties, the Plaintiff suffered damages as set forth above.

WHEREFORE, the premises considered, the Plaintiff demands judgment against the Defendants, including Fictitious Defendants A through O, separately and severally, for compensatory and punitive damages, equitable relief, interest, costs, appropriate and reasonable attorney's fees, and such other or further relief as may be warranted by the evidence and the findings of this Court.

## EIGHTH CAUSE OF ACTION
### (Breach of Contract)

85.    Plaintiff incorporates by reference the allegations contained in the

preceding paragraphs of this Complaint.

86.    The Defendants, including Fictitious Defendants A through D, entered into an express and/or implied agreement with the Plaintiff directly, and/or with the Plaintiff as an intended third-party beneficiary, to deliver, sell, convey, grant and provide drywall suitable for use, and constructed/manufactured within accepted construction standards and guidelines, and/or otherwise built in accordance with the contractual obligations undertaken.

87.    The Defendants breached their contract with the Plaintiff by failing to deliver, sell, convey, grant and provide suitable drywall.

88.    As a direct and proximate result of the Defendants' said breach, the Plaintiff suffered damages as set forth above.

WHEREFORE, the premises considered, the Plaintiff demands judgment against the Defendants, including Fictitious Defendants A through D, separately and severally, for compensatory and punitive damages, mental anguish and emotional distress, equitable relief, interest, costs, appropriate and reasonable attorney's fees, and such other or further relief as may be warranted by the evidence and the findings of this Court.

## NINTH CAUSE OF ACTION
### (Fraudulent Misrepresentation)

89.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

90.    Defendants, including Fictitious Defendants A through D, falsely and fraudulently represented to Plaintiff and/or the consuming public in general that

Defendants' Chinese drywall had been tested and was found to be appropriate and effective for use.

91.     The representations made by Defendants were, in fact, false.

92.     When said representations were made by Defendants, upon information and belief, they knew those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

93.     These representations were made by Defendants with the intent of defrauding and deceiving the Plaintiff and/or the public, all of which evidence reckless, willful, indifference to the property and interests of the Plaintiff.

94.     At the time the aforesaid representations were made by the Defendants the Plaintiff was unaware of the falsity of said representations and reasonably believed them to be true.

95.     In reliance upon said representations, the Plaintiff's home was built using Defendants' Chinese drywall, thereby sustaining damage and/or being at an increased risk of sustaining damage in the future.

96.     Said Defendants knew and were aware, or should have been aware, that Defendants' Chinese drywall had not been sufficiently tested, was defectively manufactured and/or lacked adequate and/or sufficient warnings.

97.     Defendants knew, or should have known, that Defendants' Chinese drywall had a potential to, could, and would cause severe damage to the Plaintiff's Property.

98.     Defendants brought Defendants' Chinese drywall to the market and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiff.

20

99.     As a direct and proximate result of the Defendants' said fraudulent misrepresentations, the Plaintiff suffered damages as set forth above

WHEREFORE, the premises considered, the Plaintiff demands judgment against the Defendants, including Fictitious Defendants A through D, separately and severally, for compensatory and punitive damages, equitable relief, interest, costs, appropriate and reasonable attorney's fees, and such other or further relief as may be warranted by the evidence and the findings of this Court.

## TENTH CAUSE OF ACTION
### (Fraudulent Concealment/Suppression)

100.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

101.    Defendants, including Fictitious Defendants A through D, fraudulently concealed, and/or intentionally omitted, the fact that Defendants' Chinese drywall used and installed in Plaintiff's home caused corrosion to air-conditioning and refrigerator units, electrical wires and copper tubes.

102.    Defendants were under a duty to disclose to Plaintiff the aforementioned as it pertains to Defendants' Chinese drywall.

103.    Defendants' concealment and omissions of material facts concerning the harmful nature of the Chinese drywall was made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiff into reliance and continued use of Defendants' product, and did in fact so mislead the Plaintiff into such reliance and continued use.

104.    Defendants knew that Plaintiff had no way to determine the truth behind Defendants' concealment and omissions and that these included material omissions of

21

facts surrounding Defendants' drywall as alleged herein.

105.   As a direct and proximate result of the Defendants' said fraudulent concealment/suppression, the Plaintiff suffered damages as set forth above.

WHEREFORE, the premises considered, the Plaintiff demands judgment against the Defendants, including Fictitious Defendants A through D, separately and severally, for compensatory and punitive damages, equitable relief, interest, costs, appropriate and reasonable attorney's fees, and such other or further relief as may be warranted by the evidence and the findings of this Court.

Respectfully submitted,

HOLSTON ♦ VAUGHAN, LLC
**Attorneys for the Plaintiff**

**/s GREGORY E. VAUGHAN**
Gregory E. Vaughan, Esq. (VAU013)
Post Office Box 195
Mobile, AL  36601
(251) 432-8883
gevlaw@bellsouth.net

**/s K. AMANDA HERNDON**
K. Amanda Herndon, Esq. (HER048)
Post Office Box 195
Mobile, AL  36601
(251) 432-8883
kahlaw@bellsouth.net

**PLAINTIFF RESPECTFULLY DEMANDS A TRIAL BY STRUCK JURY**

**K. AMANDA HERNDON**

## PLEASE SERVE THE NAMED DEFENDANT VIA SHERIFF AS FOLLOWS:

Ace Andrews Hardware Company, Inc.
19750 North 3rd Street
Citronelle, AL 36522-3060