UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  CHINESE-MANUFACTURED | * | MDL 2047 |
| DRYWALL PRODUCTS | * | |
| LIABILITY LITIGATION | * | SECTION L |
| | * | |
| | * | JUDGE FALLON |
| This document relates to: All Cases | * | |
| | * | MAGISTRATE JUDGE WILKINSON |
| | * | |

\* \* \* \*\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**KNAUF DEFENDANTS' OPPOSITION TO MOTION FOR RECONSIDERATION
OF SPECIAL MASTER'S OPINION AND DECREE
BY PLAINTIFF LABB INVESTMENTS (REC. DOC. 20450)**

**MAY IT PLEASE THE COURT:**

The Knauf Defendants[1] file this Opposition to Plaintiff's Motion for Reconsideration of Special Master's Opinion and Decree (Rec. Doc. 20450). The motion filed by Plaintiffs should be denied, because the Special Master correctly ruled that Plaintiff, LABB Investments ("LABB") failed to make the required "reasonable inquiry" into the Chinese drywall prior to purchasing the property, which results in a disallowance of the claim.  The Special Master also correctly ruled that LABB failed to present evidence in compliance with PTO 1B, which also results in a disallowance of the claim.  Therefore, the Knauf Defendants respectfully request that the Court affirm the Special Master's decision.

---

[1] The Knauf Defendants include Knauf Plasterboard (Tianjin) Co., Ltd., Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH, Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda., and PT Knauf Gypsum Indonesia. All capitalized terms herein have the same definitions as set forth in the Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047 (the "Knauf Class Settlement Agreement"), Rec. Doc. 16407-3.

1

I.     BACKGROUND

LABB is the owner of record of the property located at 11001 Gulf Reflections Drive, unit #103, Fort Myers, FL 33908 ("Property").  LABB purchased the Property in October 2010.  LABB did not perform any inspection prior to their purchase of the Property.

LABB seeks remediation benefits through a settlement agreement with the Knauf Defendants that disqualifies claimants who failed to make pre-purchase "reasonable inquiries" into the possibility of Chinese drywall in their Affected Properties.  Here, LABB failed to make a reasonable inquiry by failing to obtain property disclosures from the prior owner and failing to conduct a general pre-purchase inspection, which is standard in real estate transactions.  Furthermore, LABB allegedly commenced self-remediation of the Property in March 2011, almost two years after PTO 1(B) was entered by this Court.  Although compliance with PTO 1(B) and presentation of evidence is within the sole responsibility of the claimant, LABB provided evidence of a single, partial sample confirming KPT Chinese Drywall for the Property.

After the Knauf Defendants and LABB failed to agree on LABB's settlement eligibility, the issue was submitted to the Special Master for determination.  The Special Master, in his Opinion and Decree,[2] correctly agreed with the Knauf Defendants[3] and ruled that LABB failed to make the "reasonable inquiry" required by the *Settlement Agreement Regarding Post-December 9, 2011 Claims Against the Knauf Defendants in MDL No. 2047* (hereinafter "New Claims Settlement Agreement"),[4] and also failed to present evidence in accordance with PTO 1(B).

---

[2] Rec. Doc. 20450-1, Special Master's Opinion and Decree.
[3] Exhibit A, Knauf Defendants' Mediation Position Paper.
[4] Rec. Doc. 16978-1, New Claims Settlement Agreement.

## II.     ARGUMENT

### A.     LABB is governed by the New Claims Settlement Agreement.

It is undisputed that LABB is a claimant pursuant to the New Claims Settlement Agreement.  LABB did not file a lawsuit at all and the Knauf Defendants were first put on notice of LABB's claim in May 2013 when it registered for the settlement program.[5]  The Knauf Defendants' agreed to accept claimants that gave notice prior to October 25, 2013 pursuant to the New Claims Settlement Agreement (Rec. Doc. 16978-1).[6]  Therefore, the LABB claim is controlled by the New Claims Settlement Agreement, which does not provide benefits to claimants who purchased a property with knowledge that it contained Chinese drywall or without making a reasonable inquiry into the presence of Chinese drywall.

### B.     LABB Had Actual Knowledge And/Or Failed to Make a Reasonable Inquiry.

The New Claims Settlement Agreement does not provide benefits to claimants who purchased Affected Property with knowledge that it contained Chinese drywall or without making a *reasonable inquiry* into the presence of Chinese drywall.  The New Claims Settlement Agreement states:

> Any [] Claimant who purchased the Affected Property with knowledge that there was reactive Chinese Drywall in the Affected Property, or who purchased after December 9, 2009 and failed to make a reasonable inquiry, is not eligible for benefits under this Agreement absent the Knauf Defendants' consent...[7]

Based on the information provided by LABB, it is clear that LABB failed to make a reasonable inquiry, and is therefore not eligible to receive settlement benefits.  First, the Property

---

[5] Exhibit B, Labb Investments' Mediation Position Paper.
[6] The New Claims Settlement Agreement is separate from the Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL 2047 (the "Old Claims Settlement Agreement"), which defines the Class as owners "who, as of December 9, 2011, filed a lawsuit in the Litigation as a named plaintiff…" Rec. Doc. 16407-3.
[7] Rec. Doc. 16978-1, New Claims Settlement Agreement, Section IV(D).

was purchased in October 2010,[8] over a year after the formation of MDL 2047, and at a time when 15 other units at Gulf Reflections were in litigation.[9]  Second, the disclosures for the sale of the Property explicitly state and warn of the potential presence of Chinese drywall.[10]  After being warned of the presence of Chinese drywall, LABB waived the opportunity to inspect the Property,[11] and instead closed on the Property for the rock-bottom price of $40,000.00.[12]  In totality, the purchase date, the existing formation of MDL 2047, the other units in litigation, the disclosures identifying the risk of Chinese drywall, LABB's waiver of its right to inspect the Property prior to closing, and the low purchase price all confirm that the Property was purchased with prior knowledge of Chinese drywall, and/or that LABB failed to make a reasonable inquiry into the presence of Chinese drywall.

### C. Alternatively, LABB Failed to Present Evidence of KPT Drywall and Violated PTO 1(B).

Under the Knauf Class Settlement Agreement, Claimants who have self-remediated Affected Properties may seek benefits to resolve their Remediation Claims as provided in the Already Remediated Properties Protocol.  The Already Remediated Properties Protocol creates a process by which to resolve the Remediation Claims of individual owners whose self-remediated properties were affected by KPT Chinese Drywall.  Rec. Doc. 12061-6.  Owners of Already Remediated Properties (also referred to as Already Remediated Homes or ARHs) are required to submit documentation, including but not limited to evidence of KPT Chinese Drywall and Non-

---

[8] Rec. Doc. 20450-3, LABB's Owner Disclosure Affidavit.
[9] Units in litigation at time of October 2010:  Unit A101 (*Payton*, December 2009); A106 (*Payton*, December 2009); A107 (*Gross*, March 2010); A108 (*Gross*, March 2010); A201 (*Gross*, March 2010); A204 (*Rogers*, February 2010); A208 (*Gross*, March 2010); A302 (*Gross*, March 2010); A304 (*Gross*, March 2010); A306 (*Gross*, March 2010); A308 (*Gross*, March 2010); A403 (*Gross*, March 2010); A405 (*Gross*, March 2010); A406 (*Gross*, March 2010); A407 (*Gross*, March 2010).
[10] Exhibit C at p. 22, Section 8(B)(11) of the Purchase Agreement with Joint Escrow.
[11] Exhibit C at p. 19, Section 7(A) of the Purchase Agreement with Joint Escrow.
[12] Exhibit D, 11001 Gulf Reflections Drive #103 Realtor Sale Confirmation.  The market value for the property is estimated at $164,079.00 according to Zillow.com and sold for $234,900.00 less than three years prior to LABB's purchase.

KPT Chinese Drywall, if any, in the property prior to remediation, as well as photographs and/or video images of all drywall removed from the property during remediation. *Id*. at § III. Presentation of materials in support of an ARH claim are within the sole responsibility of the Claimant and should be consistent with PTO 1(B).

PTO 1(B) established the Court's requirements "with respect to the preservation of physical evidence from properties that may be repaired by the parties during the course of this litigation."[13] The Court made it clear that all parties were and are required to present physical evidence by following a few basic procedures, including but not limited to the following:

> The parties shall photograph the backside of each Chinese drywall board immediately after it is removed on-site, and, document on a floor plan, building diagram, or other similar form of documentation, the location of each full or partial Chinese drywall board removed from the property and its photograph. Photographs of the wall sections should be taken so that any markings on the backside of the drywall sections are most clearly visible in the photographs.

*Id*. at p. 3. The party responsible for failing to present evidence may be subject to the claim or defense of spoliation. *Id*. at p. 7.

LABB admits that evidence was not presented in accordance with the Knauf Class Settlement Agreement, the Already Remediated Properties Protocol, and PTO 1(B).[14] LABB allegedly remediated the Property between March and June 2011, which is long after the formation of MDL 2047 (June 2009) and the issuance of PTO 1(B) (October 2009). All videos and photos of the remediation have been provided, and of the approximately 150 boards that were installed in the Property, the evidence presented amounts to confirmation of only a single KPT board within the entire Property.

The Knauf Class Settlement Agreement states in pertinent part: "The Special Master and the Court ***will take into consideration***, in determining whether to allow a claim…***whether the***

---

[13] Rec. Doc. 337, PTO 1(B).
[14] Rec. Doc. 20450-2 at p. 4.

***Owner has complied with MDL Pretrial Order 1B***…." (Rec. Doc. 12061-6). The failure to present evidence as required by law will result in disallowance or reduction in the amount of the claim, if the failure has been prejudicial to a determination of the claim. *Id*. at § IV(D)(4). Because LABB failed to present KPT evidence in accordance with the Knauf Class Settlement Agreement, the Already Remediated Properties Protocol, and PTO 1(B), the Knauf Defendants have been prejudiced in a determination of the claim, and therefore, LABB's claim should be disallowed.[15]

### III.  CONCLUSION

LABB has not met the *reasonable inquiry* standard required by the New Claims Settlement Agreement, and the Special Master did not err in finding that Plaintiffs failed to conduct the required reasonable inquiry. Furthermore, LABB also failed to present KPT evidence in accordance with the Knauf Class Settlement Agreement, the Already Remediated Properties Protocol, and PTO 1(B). Therefore, the Special Master correctly disallowed the claim. For the foregoing reasons, the Court should affirm the Special Master's decision.

---

[15] Should the claim be compensable under the Knauf Class Settlement Agreement, it is limited to Reimbursable Costs ($30,200.00) multiplied by the KPT percentage (unknown). Furthermore, LABB is not entitled to the lump-sum payment because it is not a Residential Owner under the Knauf Class Settlement Agreement and never "resided" in the Property prior to the alleged remediation. These issues were not briefed or discussed with the Special Master and the Knauf Defendants reserve their right to limit any recovery to LABB Investments based on the Knauf Class Settlement Agreement.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ, PC**

/s/ *Kerry J. Miller*
**KERRY J. MILLER (#24562), T.A.**
**DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, Suite 3600
New Orleans, LA 70170
Telephone:   (504) 566-8646
Facsimile:    (504) 585-6946
Email:         kjmiller@bakerdonelson.com

*Counsel for the Knauf Defendants*

### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 15th day of September, 2016.

/s/ *Kerry J. Miller*
**KERRY J. MILLER**