# Exhibit B

# ROBERTS & DURKEE, P.A.
### ATTORNEYS AT LAW

H. CLAY ROBERTS
ROBERTS@RDLAWNET.COM

C. DAVID DURKEE
DURKEE@RDLAWNET.COM

JAVIER A. BASNUEVO
BASNUEVO@RDLAWNET.COM

MORRIS C. PROENZA (1940-1995)

OFFICES AT GRAND BAY PLAZA
2665 SOUTH BAYSHORE DRIVE
SUITE 300
COCONUT GROVE, FLORIDA 33133

(305) 442-1700 TELEPHONE
(305) 442-2559 FACSIMILE
www.robertsanddurkee.com

June 1, 2016

<u>Via email: balhoff@pabmb.com</u>
Dan J. Balhoff
Perry, Atkinson, Balhoff, et al.
2141 Quail Run Drive
Baton Rouge, Louisiana 70808

       **RE:** *Labb Investment*
             *Chinese drywall property located at: 11001 Gulf Reflections Dr., Unit A103*

Dear Mr. Balhoff:

      Plaintiff, Labb Investments, timely provided and completed the Chinese Drywall Settlement Program Registration Form on May 24, 2013. Once the Plaintiff properly completed this form, all of the condition precedents to make this Plaintiff entitled to the settlement funds, the funds established by the Knauf settlement, were satisfied. Labb Investments has made a claim under the Knauf settlement so that he would be reimbursed for the funds he spent remediating his home. Based on the materials that have been provided, Labb Investments is entitled to reasonable reimbursement for the remediation cost associated with the repair of the condominium unit or $35,000.00. **(See Owner Disclosure Affidavit attached hereto as Exhibit "A").** Based on Labb Investments eligibility and claim for damages Plaintiff should be reimbursed $35,000.00. This should be considered Plainiff's prayer for relief with reference to this appeal.

      The Defendant has raised two specific Affirmative Defenses in an effort to deny this claim:

    1.    ***Purchased with Prior Knowledge of CDW***

        *The property was purchased in October 2010 for the very low price of $42,000.00. In October 2010, the CDW issue was well known in Florida and was well known in the Gulf Reflections units as at least six other units were determined to have CDW before claimant's purchase in October 2010. Prior to the purchase, the claimant had the opportunity to inspect the unit but waived the opportunity and failed to do so. Most importantly, the disclosures for the sale explicitly stated and warned of the potential presence of CDW. Based on the sale date, the low sales*

*price, the prior determinations of CDW in other neighboring units, and the fact the claimant was warned of the presence of Chinse drywall prior to the purchase, it is Knauf's position that the property was purchased with prior knowledge of CDW and is ineligible for settlement benefits under the Knauf Class Settlement Agreement.*

2. **Failure to Comply with PTO 1B**

*Claimants are subject to the Knauf Class Settlement Agreement, which mandates that the review and administration of Already Remediated Home ("ARH") claims is done pursuant to PTO 1B. The Knauf Class Settlement Agreement, which was granted final approval by Judge Fallon, states in pertinent part: "The Special Master and the Court will take into consideration, in determining whether to allow a claim or the amount of the claim, whether the Owner has complied with MDL Pretrial Order 1B... for preservation of evidence. Subject to review by the Special Master or the Court, the failure to preserve evidence as required by law will result in disallowance or reduction in the amount of the claim if the failure has been prejudicial to a determination of the claim." See Knauf Class Settlement Agreement; Exhibit A at IV(d)(4).*

*PTO 1B established that all Claimants were required to preserve physical evidence by following a few basic procedures, including but not limited to the following: "The parties shall photograph the backside of each Chinese drywall board immediately after it is removed on-site, and, document on a floor plan, building diagram, or other similar form of documentation, the location of each full or partial Chinese drywall board removed from the property and its photograph. Photographs of the wall sections should be taken so that any markings on the backside of the drywall sections are most clearly visible in the photographs."*

*Of the approximately 150 boards that would be contained in the property, only 1 KPT board was confirmed and it was a removed sample. Further, it is well known that other units in Gulf Reflections contained Taishan drywall. Therefore, this claim is also not compensable due to the known risk of Taishan being in the unit and the claimant's failure to preserve, document, and produce evidence consistent with what is required under the settlement agreement.*

**Plaintiff's Position as to Each of the Defendant's Affirmative Defenses:**

1. **Purchased with Prior Knowledge of CDW**

As Plaintiff has stated in Plaintiff's affidavit, LABB INVESTMENTS had no knowledge at the time of purchase that the unit contained defective Chinese drywall. ***(See Plaintiff's***

ROBERTS & DURKEE, P.A.

*Affidavit attached hereto as Exhibit "B")*. This sworn testimony is ***direct*** evidence that supports his lack of knowledge at the time of purchase. Once the Plaintiff has proffered this evidence and he meets his burden of proof, which he has done based on this sworn testimony, the burden of proof then shifts. The Defendant must then establish, through evidence, that the Plaintiff did in fact have knowledge of the defective drywall at the time he purchased this unit. The defendant, in order to successfully refute this claim, must establish that Labb Investments had actual knowledge of the defective product prior to purchasing the unit. The Defendant cannot deny this claim based on a claim that Labb Investments had "constructive knowledge" or "should have known" of the defect, but can only win by proving that Labb Investments had actual knowledge. Defendant has not provided any evidence that Labb Investments knew of Chinese drywall in the unit prior to the time it was purchased by lab Investments. The only evidence that has been argued by the defendant is based on circumstantial evidence or innuendo:

1. The defendant claims that he had a chance to inspect prior to the time of purchase, but chose not to do so. This is technically incorrect. Since the unit was purchased at an auction, Labb Investments was not allowed to perform an inspection prior to the purchase of the property. *(See purchase documents as reference attached hereto as Exhibit "C").* Further, the fact that he did not do an inspection, actually proves that he could not have known of the defective drywall prior to the time of purchase.
2. The defendant attempts to prove that Labb Investments must have known of the defective drywall prior to the time he purchased, because neighboring units contained defective drywall and these had already been discovered. However, again, since the property was purchased through an auction the Plaintiff was not aware of the neighboring units. There is no evidence that Labb Investments know of these other units prior to the time of purchase.
3. The Defendant attempts to argue that since the purchase documents had some vague "release" of liability, that he must have known of defective drywall. However, this release is very vague and is not a disclosure that the unit has or may have Chinese drywall. Paragraph (11) only generally states that "if" the property has Chinese drywall then the Purchaser cannot sue the seller. However, this clause never discloses the fact that the unit does indeed have Chinese drywall that is defective.

2. *Failure to Comply with PTO 1B*

The Plaintiff admits that there was, unfortunately, not strict compliance with PTO 1B. However, the non compliance was not done intentionally or in "bad faith". Further, this flaw is not fatal to the cause of action. PTO 1B is a mear suggestion. It states that "The Special Master and the Court will take into consideration, in determining whether to allow a claim or the amount of the claim, whether the Owner has complied with MDL Pretrial Order 1B." This provision does not state that if the Plaintiff is somehow unable to strictly comply with PTO 1B then the claim will automatically be denied. For to do so in this case would be manifestly unjust. If one is to look at the evidence that has been provided, then the Court should rule that the Plaintiff substantially complied with PTO 1B and, as a result, is eligible for the settlement funds. Specifically, the evidence that has been provided is as follows:

ROBERTS & DURKEE, P.A.

**Pretrial Order 1B – Preservation of Evidence**

1. Drywall: Plaintiff does not have strict compliance but has reasonable compliance. Drywall continues to be stored in storage near Bonita Springs, Florida.
2. HVAC Coil – Don't have strict compliance however the Defendant's have been provided with the video which depicts the unit during remediation.
3. Plumbing Component: Don't have strict compliance however the Defendant's have been provided with the video which depicts the unit during remediation.
4. Electrical Component Samples: Don't have strict compliance however the Defendant's have been provided with the video which depicts the unit during remediation.
5. Photographs or video: All photographs and video in Plaintiff's possession has been provided to the Defendant.
6. A diagram and an affidavit as to where the defective drywall was found within the unit at the time of demolition is also attached.

There is sufficient evidence to prove Plaintiff has not acted in bad faith and that the drywall discovered in this unit was Knauf and no other type of drywall was discovered at the time of the inspection therefore the Plaintiff should be compensated.

Very truly yours,

C. David Durkee

CDD:es
Enclosures
Cc:   Danny Dysart, Esq.

**ROBERTS & DURKEE, P.A.**