UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL DOCKET: 2047 |
| | SECTION: L |
| | JUDGE FALLON |
| **THIS DOCUMENT RELATES TO:** *ALL CASES* | MAG. JUDGE WILKINSON |

**MOTION OF TAYLOR MORRISON, INC., THE RYLAND GROUP, INC., AND LWH, LLC FOR DETERMINATION OF ACTIVE BUILDERS STATUS WITH INCORPORATED MEMORANDUM**

COMES NOW Taylor Morrison, Inc., The Ryland Group, Inc. n/k/a CalAtlantic Group, Inc., and LWH, LLC. (collectively, "Movants"), who respectfully request this Honorable Court enter an Order finding that the Movants are "Active Builders" as defined in the Memorandum of Understanding attached hereto as Exhibit "I" [Rec. Doc. 20381-1].

**I. BACKROUND OF BANNER AND GLOBAL SETTLEMENTS "SET ASIDE" RELATED TO BUILDER PAYMENTS**

Under the Banner and Global Settlements, 32% of the gross settlement amount related to home claims was "set aside" for an award of attorneys' fees. *See* Banner Settlement, as amended, Paragraph 14.7 [Rec. Doc. No. 10033]; *see also* Second Amended Banner Allocation Plan, Paragraph 3 [Rec. Doc. No. 16527-1], and Global Settlement, as amended, Paragraph 16.6 [Rec. Doc. No. 15695]; Second Amended Allocation Plan, Paragraph 4 [Rec. Doc. No. 16528-1].

There was a dispute between the Homebuilders on the one hand, and the Plaintiffs' Lead Counsel and Liaison Counsel on the other hand, relative to the amount of

common benefit fee owed from the set aside amounts. In an effort to resolve this dispute, on July 11, 2016, a Memorandum of Understanding was entered into between the Various Homebuilders and the Plaintiffs' Counsel and Liaison Counsel [Rec. Doc. No. 20381-1]. The substance of the Memorandum of Understanding was that all Homebuilders would receive 13% of the 32% set aside (i.e. the common benefit fee for Plaintiffs' Lead Counsel would not exceed 19% of any Homebuilder payment from the Global and Banner Settlement), and "Active Builders" would be entitled to 22% of the set aside amount (i.e. the common benefit fee would be 10% of the set aside for Active Builders).[1]

The Memorandum of Understanding also states at page. 2, fn. 2 that the Movants herein shall be permitted to file a motion requesting that Judge Fallon determine them to be Active Builders at the appropriate time. In the interim, Movants are entitled to receive the 13% that all Homebuilders would receive. This Motion is filed for the purpose of placing that issue before the Court for determination.

II.     **AMOUNTS IN DISPUTE**

The amounts in dispute relative to the 9% differential between an "active" and a "nonactive" Builder status for Movants are as follows:

1. Taylor Morrison: $885,732.84 x 9% = $79,715.95
2. Ryland Group, Inc., (n/k/a CalAtlantic): $242,307.08 x 9% = $30,807.63
3. LWH, LLC: $16,942.24 x 9% = $1,524.88

---

[1] In addition to the common benefit fee, the Various Homebuilders (including Movants) have agreed to pay the legal fees of Co-Class Counsel, Dorothy Wimberly.

2

Thus, the total amount in dispute relative to Movants is $112,048.46. If this Court determines that they are Active Builders, then this is the additional amount that the Movants respectfully request be paid to them.

**GENERAL ACTIVITY BY MOVANTS' AND THEIR COUNSEL IN THIS MDL PROCEEDING**

Prior to the filing of the MDL cases, a putative class action (later removed to the MDL), concerning Chinese drywall was filed in the Middle District Court of Florida against Taylor Morrison, *Culliton v. Taylor Morrison Services, Inc*., Case No. 08:09-cv-00589-JDW-TGW. Plaintiff in that case filed a motion to prevent Taylor Morrison from communicating with the putative class members in order to reach an agreement to repair the homes under the applicable warranties. Movant's counsel successfully defended against the motion. This ruling allowed Taylor Morrison (and by implication other builders) to begin repairs even before this MDL class action was initiated. See Composite Exhibit "A." The repair agreements included an assignment to Taylor Morrison of the claims against Banner and the Global Defendants.

Upon the filing of the MDL cases which included Movants as Defendants (as well as claims made before the MDL, which actions against Movants were later removed to the MDL), Movants evaluated how best to respond to the allegations of defective CDW. Movants' counsel assisted his clients in setting up an inspection program for homeowners who wished to determine whether they had defective CDW in their home. For those homeowners of Movants who had defective CDW, Movants agreed to make the repairs and drafted remediation agreements for homeowners who were willing to allow Movants to repair their homes (those agreements also provided compensation for storage, moving expenses, etc.).

3

Movants' counsel was appointed to the Homebuilders' Steering Committee at the beginning stages of this case.  Movants' counsel attended most of the monthly status conferences during the active stages of this case, argued numerous motions, assisted in drafting most if not all of the motions that were filed by the Homebuilders' Steering Committee, and was extensively involved in negotiations for all settlements, including the Banner and Global Settlements.  In addition, Movants' counsel was actively involved in litigation throughout this proceeding against subcontractors and insurers that were part of the Global Settlement, as well as Banner.

Movants' counsel, early in the case, participated in negotiating and finalizing the evidence preservation and inspection protocols for each affected home with all of the steering committees.  Those protocols (and subsequent orders) were used throughout this case.

During the course of these proceedings, Movants' counsel argued successfully on behalf of the Homebuilders before Judge Fallon (on two occasions) that the Homebuilders, including Movants, should be entitled to repair their homes with CDW through direct agreements with the homeowners.  See Composite Exhibits "B" & "F."  Based upon these rulings, Movants repaired homes with defective CDW (using the court approved repair protocol) and established their damages claims against Banner and the global defendants.

Taylor Morrison was one of the three builders permitted to intervene as a claimant in the Vickers case.  See Exhibit "H."

Movants' counsel was actively involved in assisting to develop the repair protocol for homes with defective CDW.  Movants, through their counsel, drafted and entered into

remediation agreements with most of their homeowners which, among other things, assigned the claims against Banner and the subcontractors to Movants. Movants then repaired each of the homes and set up procedures for storage of personal property and reimbursement of move out expenses to the homeowners.

During the repairs, Movants set up a procedure for a second inspection by their retained expert, preserved evidence of the defective CDW with its expert witness, and supervised the preparation of a report for each home that formed the basis for the claims filed against Banner and the global defendants. That report "mapped" the location of the defective CDW, the square footage of each home, and the type of CDW discovered.

There is no definition of what an "Active Builder" is under the original "set asides" or the Memorandum of Understanding. Movants' counsel was one of only two law firms representing individual homebuilders who were active members of the Homebuilders Steering Committee throughout the relevant portion of this case prior to the Banner and Global settlements (Greenberg Traurig being the other). In addition, most of the other homebuilders' counsel did not actively pursue claims against Banner, the subcontractors, and the insurers of the subcontractors. Finally, Movants' counsel was more actively involved with creating the initial MDL repair protocol, negotiation the settlement negotiations with Banner and the subcontractor insurers, and making arguments on behalf of the homebuilders than any other homebuilder counsel, excluding Greenberg Traurig.

In connection with this motion, Movants' counsel has submitted his time records for each Movant under seal. See Exhibits "J," "K" & "L." Those records support the activities described above through the date of receipt of the majority of the settlement

payments. If the Special Master or the Court believes time records after this date are relevant, those later time records can also be produced. In addition to those time records, Movants' counsel is producing with this motion copies of complaints to recover repair costs filed against Banner (for Taylor Morrison) and against installers and their insurers relating to CDW.

### III. SPECIFIC ACTIVITY RELATIVE TO GLOBAL SETTLEMENT BY MOVANTS' COUNSEL

Early in this proceeding, Movants' counsel assisted in retaining expert witnesses (Environ and DriRite) and negotiating an acceptable repair protocol within this case that was approved by this Court. Movants' counsel also objected to any change in the repair protocol that was suggested to this Court by the insurers' counsel, and successfully preserved that protocol. In order to establish claims against the Global and Banner defendants, Movants' counsel interacted with Environ or DriRite to have each home inspected, to have each home's defective drywall preserved for evidentiary purposes, and to prepare a chart showing where within the home the defective drywall was located and removed.

Movants' counsel determined which drywall subcontractor worked on each home, evaluated the liability of each subcontractor to Movants, and reviewed and evaluated the insurance information relative to each subcontractor. This process involved reviewing the subcontracts and insurance policies of each subcontractor and providing Florida statutory defect notices (under FS §558), to each. Thereafter, Movants' counsel assisted in compiling data and determining repair costs expended by each of the Movants with regard to each home that was repaired, and later made a part of these settlements.

Movants' counsel met with the Insurance Steering Committee members (led by Minor Pipes) on several occasions to address settlement issues related to Homebuilder claims.

During the course of these proceedings, Movant Taylor Morrison, through counsel, filed cross claims against several of its subcontractors in this case. See Exhibit "E." Those subcontractors, or their carriers, were participants in the Global Settlement.

Taylor Morrison filed a separate lawsuit against subcontractor, Cothern Construction Company, and its insurance carrier, Mid-Continent Casualty Company, in the U.S. District Court, Middle District of Florida, Case No. 2:09-cv-00823-JES-DNF. See Exhibit "D." The case proceeded to the summary judgement stage. A summary judgment hearing was scheduled and the matter fully briefed. On the day of the hearing, Judge Fallon called the Middle District Court Judge and asked him to hold off on a final ruling, which the Judge did. The case involved extensive discovery, drafting and responding to motions (including a Motion for Summary Judgment), and preparing for the summary judgment hearing. The ruling in the case related to the "pollution exclusion" which would have had substantial impact on all of Movants' claims against subcontractors and their carriers.

Another subcontractor and its carrier were sued in a separate action by Taylor Morrison, Scottsdale Insurance Company, the carrier for NuWay Drywall, LLC. *Taylor Woodrow Homes Central Florida Division, LLC and Morrison Homes, Inc., n/k/a Taylor Morrison Services, Inc., v. Scottsdale Indemnity Company d/b/a Scottsdale Insurance Company*, U.S. District Court for the Eastern District of Louisiana, Case No. 2:10-cv-

00555-EEF-JCW.  See Exhibit "C."  The two claims above were resolved through the Global Settlement.

Once the repairs were done by Movants and the amount of claims established, Movants submitted the claims with substantial supporting documentation (including photos and mapping) to Brown Greer.  Brown Greer had extensive communications relative to each of the Movants, which resulted in the recoveries that are the subject of this Motion.

## IV.   ACTIVITY WITH RESPECT TO BANNER

Early in the case, Movants' Taylor Morrison and Ryland (n/k/a CalAtlantic) each negotiated settlements with Banner for a portion of the homes in question, which were approved by this Court.  Other homes that were not included within that settlement were paid out as part of the Banner Settlement.  Prior to reaching settlements with Banner, counsel for Movants evaluated potential claims against Banner and its insurers, provided the statutory defect notices, and compiled supporting documentation for damage claims.

Taylor Morrison, filed a separate lawsuit against Banner, and filed a cross-claim in this case.  Several motions and discovery were filed in the state court action.  _Taylor Morrison Services, Inc. f/k/a Morrison Homes, Inc. and Taylor Woodrow Communities at Vasari, LLC v. Banner Supply Co_., filed in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Complex Business Litigation Division, Case No. 10-CA-16414.  See Exhibit "G."

Due to the Banner Settlements, no final resolution was needed in the state court proceeding against Banner.  In order to finalize the settlements, Movants' counsel met privately on several occasions with Banner's counsel, both in New Orleans and Miami, to

8

work out the details relative to the Settlements and amounts paid thereto. Thereafter, on a regular basis, documentation was submitted to Banner for newly repaired homes with CDW.

Like with the Global Settlement, the Banner Settlement required that each home needed to be "mapped" to determine the type of CDW, the squire footage of the home, and the repair costs. Said costs were documented and the evidence of defective CW preserved. In addition, documentation of the purchase of defective CDW from Banner needed to be requested and reviewed for the Movants' homes.

Movants' counsel also prepared and submitted the claims (with supporting documents) to Brown Greer for Banner Settlements that are the subject of this Motion.

## V. ACTIVITY NOT RELEVANT TO THIS MOTION

Movants' counsel did substantial work early in this proceeding on Movants' claims against Knauf and secured a settlement with Knauf. However, none of the "set aside" funds at issue for Movants relate to the claims against Knauf or Taishan. Therefore, work done relative to those claims is not relevant to this Motion and will not be summarized herein.

It should be noted that Plaintiffs' Lead Counsel has previously stated that the undersigned counsel did not attend depositions in China or Germany, whereas one other counsel for the homebuilders did so (Greenberg Traurig). Since Movants had resolved their claims with Knauf early on, and there are no "set aside" funds relative to either the Knauf or Taishan claims for Movants, such activity is not relevant to the pending Motion.

## **CONCLUSION**

Movants respectfully request that they be paid the additional "set aside" amounts stated at page two herein as "Active Builders."  Pursuant to the Memorandum of Understanding, Active Builders are charged with 10% common benefit fee to the Plaintiffs' Lead Counsel and Plaintiffs' Liaison Counsel relative to the Global and Banner Settlements of Movants.  Given the extensive work and expense incurred by Movants, it is respectfully asserted that a 10% common benefit fee hold back is sufficient for their settlements.  All funds recovered from the set aside are to be paid to the Movants.  None of these funds will be paid to undersigned counsel.

Given the relatively modest amount at issue, and the considerable firsthand knowledge of this Court, it is respectively requested that the Special Master and/or the Court allow oral arguments prior to ruling on this Motion.

WHEREFORE, Movants respectfully request that this Court enter an Order finding them to be Active Builders and that, accordingly, the common benefit fee for the Banner and Global Settlements as to the settlements in the chart attached to the Memorandum of Understanding be limited to 10%.  The common benefit fee attributable to Taylor Morrison, Inc. for the Banner and Global Settlements should be $88,532.28; the total common benefit fee for The Ryland Group, Inc. should be $34,230.70; and the common benefit fee for LWH, LLC should be $1,694.22.

    Respectfully submitted,

    /s/ Neal A. Sivyer
    Neal A. Sivyer
    Florida Bar No. 373745
    **SIVYER BARLOW & WATSON, P.A.**
    401 East Jackson Street, Suite 2225

Tampa, Florida 33602
Telephone: (813) 221-4242
Facsimile: (813) 227-8598
nsivyer@sbwlegal.com
*Counsel for Taylor Morrison, Inc., The Ryland Group, Inc., and LWH, LLC.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2016, the foregoing pleading has been served on the Special Master, Daniel J. Balhoff, Esq., Plaintiffs' Liaison Counsel, Russ Herman, Esq., Homebuilders' Liaison Counsel, Dorothy Wimberly, Esq., and on Arnold Levin, Esq. by e-mail, and I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in the MDL 2027 proceeding, and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pretrial Order No. 6.

/s/ Neal A. Sivyer
Neal A. Sivyer