# COMPOSITE EXHIBIT "B"



26932126

Sep 3 2009
4:29PM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED DRYWALL        )        MDL NO. 2047
  PRODUCTS LIABILITY LITIGATION                      )
                                         )        SECTION: L
                                         )
                                         )        JUDGE FALLON
                                         )        MAG. JUDGE WILKINSON
_____)

**THIS DOCUMENT RELATES TO ALL CASES**

<u>**EMERGENCY MOTION TO PROTECT CLASS**</u>
<u>**MEMBERS AND FAIRLY CONDUCT THE ACTION**</u>

      NOW COMES, the Plaintiffs' Steering Committee ("PSC"), who upon suggesting to the

Court that:

1.

      The PSC appointed by this Court seeks emergent relief, for good cause shown, so that the

abusive activities of the class of builders before this Court is curtailed.  It has become well-known

that builders in this litigation are seeking general releases that far exceed the benefits bestowed upon

absent class member owners of homes and other premises.  In many instances, these releases provide

third parties a release for no compensation whatsoever or assign all claims against third parties again

for no compensation.

2.

      The PSC moves under Fed. R. Civ. P. 23(d)(2) to protect Class Members and fairly conduct

the action by (a) requiring curative notice, approved by the Court, prepared and sent to all putative

Class Members at the expense of the Homebuilders, to remedy the harm caused by the

Homebuilders' improper communications to date; (b) that putative class action defendant builders

shall cease and desist contacting or soliciting any putative class member property owners about releasing their claims against said builder under certain conditions;  (c) that any proposed release of any putative class action defendant builder shall also contain a Court approved statement; (d) that no putative class action defendant builder shall initiate contact with any individual who has not previously contacted that builder; (e) that each putative class action defendant builder shall comply with Rule 4.2 of the Louisiana Rules of Professional Conduct, or its state court analog in each jurisdiction in which each putative class action defendant builder is soliciting releases in exchange for remediation or repair work, and not communicate with persons already represented by counsel; (f) that putative class member property owners have an opportunity to rescind any previously entered agreement to release or waive their claims; and (g) that each class action defendant builder shall produce each release or waiver of claims of putative class members.

3.

The PSC adopts and incorporates herein its memorandum filed contemporaneously with this motion.

WHEREFORE the PSC prays that its emergent Motion to Protect Class Members and Fairly Conduct the Action be granted.

Dated: September 3, 2009

Respectfully submitted,

/s/ Russ M. Herman
Russ M. Herman, Esquire
Leonard A. Davis, Esquire
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
*Plaintiffs' Liaison Counsel*
*MDL 2047*

2

**PLAINTIFFS' STEERING COMMITTEE**

Arnold Levin (on the brief)
Fred S. Longer (on the brief)
Matthew C. Gaughan (on the brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*


Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Victor Manuel Diaz
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
 Matthews, Martinez, Gonzales,
 Kalbac & Kane
255 Aragon Avenue, 2nd Floor
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020   bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seith Parker
Parker, Waichman, Alonso LLP
27399 Riverview Center Blvd.
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 3rd day of September, 2009.

/s/ Leonard A. Davis
Leonard A. Davis
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Ave.
New Orleans, LA  70113
PH:  (504) 581-4892
Fax:  (504) 561-6024
ldavis@hhkc.com

4



26932126

Sep 3 2009
4:29PM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED DRYWALL          )          MDL NO. 2047
  PRODUCTS LIABILITY LITIGATION               )
                                              )          SECTION: L
                                              )
                                              )          JUDGE FALLON
                                              )          MAG. JUDGE WILKINSON
_____  )

**THIS DOCUMENT RELATES TO ALL CASES**

**MEMORANDUM IN SUPPORT OF
EMERGENCY MOTION TO PROTECT CLASS
MEMBERS AND FAIRLY CONDUCT THE ACTION**

## I.    INTRODUCTION

The Plaintiffs' Steering Committee (PSC) appointed by this Court seeks emergent relief, for

good cause shown, so that the abusive activities of the class of builders before this Court is curtailed.

It has become well-known that builders in this litigation are seeking general releases that far exceed

the benefits bestowed upon absent class member owners of homes and other premises.  In many

instances, these releases provide third parties a release for no compensation whatsoever or assign

all claims against third parties again for no compensation.

To cure and prevent these abusive practices, the PSC moves under Fed. R. Civ. P. 23(d)(2)

to protect Class Members and fairly conduct the action by (a) requiring curative notice, approved

by the Court, prepared and sent to all putative Class Members at the expense of the Homebuilders,

to remedy the harm caused by the Homebuilders' improper communications to date; (b) that putative

class action defendant builders shall cease and desist contacting or soliciting any putative class

member property owners about releasing their claims against said builder under certain conditions;

(c) that any proposed release of any putative class action defendant builder shall also contain a Court

1

approved statement; (d) that no putative class action defendant builder shall initiate contact with any individual who has not previously contacted that builder; (e) that each putative class action defendant builder shall comply with Rule 4.2 of the Louisiana Rules of Professional Conduct, or its state court analog in each jurisdiction in which each putative class action defendant builder is soliciting releases in exchange for remediation or repair work, and not communicate with persons already represented by counsel; (f) that putative class member property owners have an opportunity to rescind any previously entered agreement to release or waive their claims; and (g) that each class action defendant builder shall produce each release or waiver of claims of putative class members.

## II.    FACTUAL BACKGROUND

Since the filing of the actions comprising this MDL, Builders have contacted putative Class Members to settle putative Class Members' claims related to the defects in the Chinese drywall installed in their homes.  Builders have settled and are still attempting to settle, putative Class Members' claims without fully advising them of the true nature and scope of defects in the Chinese drywall, the pendency of this litigation, and their right to participate in this litigation.

Appendix A, attached hereto under seal, is the PSC's analysis of the releases provided by 13 representative builders that have improperly sought avoid their exposure to liability by trampling upon the rights of absent class members.  This compendium of releases is filed under seal to preserve the confidences of those persons and/or parties whose agreements are or have been attempt to be negotiated.

2

III.   **ARGUMENT**

    A.    **The Court Has Broad Authority to Prohibit and Regulate Homebuilders' Improper Communication and Solicitation Campaign to Settle Putative <u>Class Members' Claims Pursuant to Federal Rule of Civil Procedure 23(d)</u>**

District courts have broad discretionary powers under Fed.R.Civ.P. 23(d) to supervise communications with class members.  Rule 23(d), in relevant part, states:

> **Conducting the Actions.** (1) In General.  In conducting an action under this rule, the court may issue orders that:
>
>     (B) require – to protect class members and fairly conduct the action – giving appropriate notice to some or all class members of:
>
>     (I) any step in the action …
>
>     (iii) the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action.

Fed. R. Civ. P. 23(d)(1)(B)(I, iii).  Many courts have found that this regulatory power is adjunct to the authority of the courts themselves.  In *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981), the Supreme Court explained these plenary powers:

> [A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.

*Id.* at 100.  *See also Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985) and *In re Federal Skywalk Cases*, 97 F.R.D. 370, 377 (W.D.Mo. 1983); *Burford v. Cargill, Inc.*, 2007 WL 81667 (W.D.La. June 9, 2007) (Hicks, J.).  Rule 23(d) provides this Court broad authority to manage the conduct of class actions at "any step in the action," not only after class certification.  *See Hoffman-LaRoche Inc. v. Sperling*, 110 S.Ct. 482, 486 (1989); *See also Gulf Oil Co.*, 452 U.S. at 101.

3

Courts have long recognized the potential for abuse that may occur when a defendant or its counsel communicate with members of a class or proposed class. *See Gulf Oil Co.*, 452 U.S. at 99-100; *In re School Asbestos Litig.*, 842 F.d 671, 679 -80 (3d Cir. 1988); *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 601-02 (2d Cir. 1986); *Kleiner*, 751 F.2d at 101-03. Specifically, misleading communications to class members or putative class members regarding the litigation pose a significant threat to the fairness of the proceedings, the fundamental rights of parties, the adequacy of representation and the general administration of justice generally. *In re School Asbestos Litig.*, 842 F.2d at 680; *See Waldo v. Lakeshore Estates, Inc.*, 433 F.Supp. 783, 790-91 (E.D. La. 1977), *appeal dismissed*, 579 F.2d 642 (5th Cir. 1978) ("Unapproved communications to class members that misrepresent the status or effect of the pending action also have an obvious potential for confusion and/or adversely affecting the administration of justice."). "Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of one-sided presentation of the facts, without opportunity for rebuttal. The damage from misstatements could be irreparable." *Kleiner*, 751 F.2d at 1203.

Because of the potential for abuse, district courts have "both the duty and the broad authority to...enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co.*, 452 U.S. at 100; *In re School Asbestos Litig.*, 842 F.2d at 679-80. In *Gulf Oil v. Bernard*, the Supreme Court advised courts that any order regulating communications with putative class members should be "based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil*, 452 U.S. at 101.[1]

---

[1] In *Gulf Oil*, the Court ultimately found invalid an order that imposed a complete ban on all communications concerning the class action between the parties or their counsel and any actual or potential class member not a party without prior approval of a court. *Gulf Oil*, 452 U.S. at 102-04.

4

In discussing the requirements for an order regulating communications with potential class members, the Supreme Court in *Gulf Oil* quoted *Coles v. Marsh*, 560 F.2d 186 (3d Cir. 1977), *cert. denied*, 434 U.S. 985 (1977):

> [T]o the extent that the district court is empowered...to restrict certain communications in order to prevent frustration of the policies of Rule 23, it may not exercise the power without a specific record showing by the moving party of the particular abuses by which it is threatened. Moreover, the district court must find that the showing provides a satisfactory basis for relief and that the relief sought would be consistent with the policies of Rule 23 giving explicit consideration to the narrowest possible relief which would protect the respected parties.

*Coles*, 560 F.2d at 189 (quoted in *Gulf Oil,* 452 U.S. at 102).   In seeking an order limiting defendants' communications with putative Class Members, plaintiffs must show that a restricting order would guard against the likelihood of serious abuses.  *Gulf Oil*, 452 U.S. at 104.  Plaintiffs do not have to show actual harm.  *See Jennifer v. Delaware Sold Waste Authority*, 1999 WL 117762 (D. Del. Feb. 25, 1999).  Showing that the "interests embodied in Rule 23 might be hindered is a sufficient finding upon which to base an order limiting contacts."  *See Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 633 (N.D. Tex. 1994).

Recently, the Court, in *Burford, supra.,* was confronted with defendants that admitted to contacting putative class members and soliciting their consent to a general release.  The court found "the use of the general receipt and release which is being used by the defendants in regards to putative class members, without notification of the pending putative class action, is misleading as a matter of law." *Id*., 2007 WL 81667 at *2.  Indeed, by not advising of the pending class litigation, the court found that "such misleading communications are abusive and threaten the proper functioning" of class actions.  *Id*.  To correct this abuse, the court therefore ordered that an

5

appropriate notice issue to apprise class members of the pendency of the action and the nature of the claims, it consented to a standstill agreement of the parties, and further ordered the defendants to disclose and produce copies of each release obtained.  *Id.*

Following *Gulf Oil*, many courts have been confronted with the need to supervise inherently coercive communications with absent class members.  That is the issue presented in this litigation. In these situations, courts, almost uniformly order limitations on such communications, if not curtailing the communications altogether.  *In re School Asbestos Litig.*, 842 F.2d 671 (3d Cir. 1988); *In re Community Bank of Northern Virginia*,  418 F.3d 277 (3d Cir. 2005); *Georgine v. Amchem Prods., Inc.*, 160 F.R.D. 478 (E.D. PA. 1995); *Haffer v. Temple University*, 115 F.R.D. 506, 512 (E.D. PA. 1987); *See Kleiner v. First National Bank of Atlanta*, 751.2d 1193 (11th Cir. 1985); *Erhardt v. Prudential Group, Inc.*, 629 F.2d 843, 845 (2d Cir. 1980); *In re Federal Skywalk Cases*, 97 F.R.D. 370, 377 (W.D. Mo. 1983); *Impervious Paint Industries, Inc. v. Ashland Oil*, 508 F.Supp. 720, 722-24 (W.D. Ky. ) *appeal dismissed without opinion*, 659 F. 1081 (6th Cir. 1981); *Tedesco v. Mishkin*, 629 F.Supp. 1474, 1484 (S.D.N.Y. 1986); *Resnick v. American Dental Ass'n*, 95 F.R.D. 372, 376-377 (N.D. Ill. 1982); *Bower v. Bunker Hill Co.*, 689 F.Supp. 1032, 1033-34 (E.D. Wash. 1985); *Zarate v. Younglove*, 86 F.R.D.  80 (C.D. Cal. 1982); *Ralph Oldsmobile, Inc. v. General Motors Corp.*, 2001 WL 1035132, *2 (S.D. N.Y. Sept. 7, 2001); *Jennifer v. Delaware Solid Waste Authority*, 1999 WL 117762 (D. Del. Feb. 25, 1999); *Burrell v. Crown Ent. Petroleum, Inc.*, 176 F.R.D. 239, 242-43 (E.D. Tex. 1997).

In *Erhardt*, the court recognized that it was the responsibility of the district court to prevent any unauthorized notices to class members:

> It is the responsibility of the court to direct the "best notices practicable" to class members, Rule 23(c)(2), and to safeguard them

> from unauthorized, misleading communications from the parties or their counsel.  Unapproved notices to class members which are factually or legally incomplete, lack objectivity and neutrality, or contain untruths will surely result in confusion and adversely affect the administration of justice.  To prevent abusive practices in the absence of a local rule, the court should include in its order of notice a provision limiting within constitutional parameters any unauthorized correspondence by parties and their counsel with class members.

*Erhardt*, 629 F.2d at 846.

Of particular concern are communications by defendants with putative class members that are misleading as to a proposed settlement, the status of pending class action, or that induce class members to opt-out or not cooperate with class counsel.  *In re School Asbestos Litigation*, 842 F.2d at 682, *In re Community Bank of Northern* Virginia, 418 F.3d at 311-312; *Georgine*, 160 F.R.D. at 490; *Haffer*, 115 F.R.D. at 512-513;  See *Kleiner*, 751 F.2d at 1202; *Ralph Oldsmobile, Inc.*, 2001 WL 1035132 at *4-6; *Jennifer*, 1999 WL 117762 at *2; *Hampton Hardware*, 156 F.R.D. at 633, *Impervious Paint*, 508 F. Supp. at 721-723.

In *Impervious Paint Industries*, an antitrust class action where one defendant improperly contacted absent class members, the court noted that plaintiffs' counsel's relation to the absent class members is unusual during the period between the filing of the class action complaint and the opt-out period.  *Impervious Paint Industries*, 508 F.Supp. at 722.  The court found that class counsel must treat absent class members as clients and avoiding  "compromising the rights of the class members," while at the same time avoid unethical solicitation by treating class members as non-clients.  *Id.*  Significantly, the court held that defendants' counsel's role is likewise restricted during this same period:

> However, we cannot conclude that the corollary of this peculiar circumstance is that the class counsel's adversary has diminished

7

> responsibilities.  While it is technically correct that a class member
> does not abandon its claim by opting out of the class, it is beyond
> cavil that it is in defendants' interest for class members to elect to
> remove themselves from the action.  Reading DR 7-104 as a whole,
> we believe the implicating is unavoidable that defendants' counsel
> must treat plaintiff class members as represented by counsel, and
> must conduct themselves in accordance with both sections of DR 7-
> 104.

*Id.* at 723 (emphasis added).   Thus, even before the class is certified, defense counsel are obligated

to treat absent class members as represented by class counsel in accordance with the ethical

restraints of the rules of the rules of professional conduct.  *Id.*;  *See also Resnick*, 95 F.R.D. at 378-

79 ("[Defendant] cannot lift language from *Gulf Oil* out of context to insulate communications from

its counsel to actual class members.  Indeed, even were *Gulf Oil* applicable to the latter situation

(which it is not)...").  The rationale for this treatment is that "the imbalance in knowledge and skill

which exists between class members and defense counsel presents an extreme potential for prejudice

to class members' rights."  *Bower*, 698 F.Supp. at 1034.

In *Jennifer,* plaintiffs sought to enjoin defendants from communicating with putative class

members where defendants were attempting to coerce putative class members not to participate in

litigation and/or settle their claims by executing a release.  *Jennifer*, 1999 WL 117762 at *2.  The

court held that there was potential that certain members of the putative class would be completely

unaware of the litigation and by signing a release would waive their right to participate in the class

action.  *Id.* at *7.  The court stated in pertinent part:

> While the defendant may seek to settle individual claims prior to
> certification, the putative class member should know the essence of
> the claim they would be giving up in response to the solicitation of
> DSWA.  Those who sign the DSWA three-year contract may be
> completely unaware of this litigation and by signing the contract
> would waive their right to participate in the class action.  Some
> potential plaintiffs may wish to participate in the action and,

> therefore, should be given the necessary information and opportunity
> to choose between signing the contract and participating in the
> differential pricing program or not participating, but have the right to
> ship waste out of the state.

*Id*. at *7.  The same concerns apply in this litigation.  The court in *Jennifer* required defendants to properly notify each class member at the time it seeks a signing of the release so that they have sufficient notice of the pendency of the action.  *Id*.  In addition, the court required that a similar notification must be provided to those putative class members who already received settlement information."  *Id*.

Similarly, in *Ralph Oldsmobile, Inc.,* the court addressed the potential abuse of defendant's settlement communications and obtaining releases from unknowing putative class members.  The class representative plaintiff moved, pursuant to Fed. R. Civ. P. 23, for an order requiring defendant "to seek and desist his practice of obtaining *ex parte* releases from putative class members," voiding those releases already obtained, and requiring defendant "to send a court-approved corrected notice" that any such releases had been voided.  *Ralph Oldsmobile, Inc.*, 2001 WL 1035132 at *1.  Like Judge Hicks in *Burford*, the district court in *Ralph Oldsmobile, Inc.* found that the record supported findings of <u>potential</u> <u>abuse</u> in defendants' communications with putative class members resulting from the potentially unknowing waivers of rights or claims by the execution of a release by putative class members. *Id.* at *3.  The court specifically pointed out the release purported to waive claims, but failed to mention the class action, which resulted in risk that class members may sign a release without knowing what they were releasing.  *Id.*  The same concerns apply in this litigation.  The court determined that an unknowing release is abusive and ordered relief in the form of curative

9

notice be given in future settlements and releases.  *Id.*[4]

In the instant matter, Homebuilders' solicitations of settlements from individual putative Class Members have obstructed plaintiffs' counsel.  An Order protecting Class Members and otherwise protecting the integrity of the class action process is therefore appropriate.

### B.    Homebuilders Do Not Have an Untrammeled Right to Communicate With Putative Class Members.  Non-commercial Speech May be Limited to Meet <u>the Requirements of Rule 23.</u>

An order restricting communications between parties and putative class member must take into account the rights of the parties under the First Amendment.  *In re School Asbestos Litig.*, 842 F.2d 671, 680 (3d Cir. 1988).  However, misleading, false or deceptive speech has no protection under the First Amendment.[5]   Indeed, the rights of Homebuilders to engage in commercial speech may be regulated further than the right to pure speech.  *See Friedman v. Rogers*, 440 U.S. 1, 11 n.9 (1979)(*quoting Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447 (1978)):

> When dealing with restrictions on commercial speech we frame our decisions narrowly "allowing modes of regulations [of commercial speech] that might be impermissible in the realm of non-commercial expression."

*See also Virginia Pharmacy Board v. Virginia Citizens Consumers Council*, 425 U.S. 748, 771-72

---

[4]     The Court declined to void the releases that already had been executed, however, it agreed to consider applications to void a release made by any class member who signed such a release prior to receiving notice.  *Id.* at *7,

[5]     *See Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 556, 566 (1980) ("For commercial speech to come within [the First Amendment], it at least must...not be misleading."); *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626, 638 (1985) ("The States and the Federal Government are free to prevent the dissemination of commercial speech that is false, deceptive, or misleading..."); *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 949 (3d Cir. 1993) ("[F]alse commercial speech is not protected by the First Amendment and may be banned entirely.").

(1976)( "the first amendment, as we construe it today, does not prohibit the state from insuring that the stream of commercial information flow cleanly as well as freely").

In the instant litigation, there can be no serious question that Homebuilders' proposed speech is commercial and therefore can be prohibited by this Court. *See Kliener,* 751 F.2d at 1203 (District Court's order protected class members against possible one-sided, unsupervised, unreviewable communications was upheld under the commercial speech standard).  The Court of Appeals in *Kleiner* with respect to the defendant's commercial speech stated:

> The Bank's entreaties indubitably amounted to speech of a commercial bent.  Commercial Speech consists of expression related largely or solely to the economic interests of the speaker and the audience.  Commercial speech encompasses not merely direct invitations to trade, but also communications designed to advance business interests, exclusive of beliefs and ideas.

*Id*. at 1203 n. 22 (citations omitted).  Clearly, proposed settlement communications with Class Members qualify as commercial speech.

Homebuilders may argue that the First Amendment provides them with the right to engage in alleged accurate but one-sided commercial speech, irrespective of the potential harmful effects on the class and individual Class Members.  The Supreme Court, however, has rejected such an argument.  For example, in *Posadas de Puerto Rico Associates v. Tourism Co. of Puerto Rico*, 478 U.S. 328 (1986), the Supreme Court upheld a Puerto Rican statute prohibiting local casinos from advertising their gambling facilities to residents of Puerto Rico, but allowing them to advertise to potential tourists in the continental United States and elsewhere.  The Supreme Court held that Puerto Rico could curtail commercial speech where its legislative body reasonably found that such speech could potentially have a harmful effect on its audience.  The Supreme Court found that the legislation was not overly restrictive since such regulation would reduce gambling more than

11

"promulgating additional speech designed to discourage gambling." *Id.* at 344.

In *Kleiner*, the court recognized that restrictions on commercial speech are not entitled to the strict prior restraint doctrine applied to pure speech. *Kleiner*, 751 F.2d at 1205. As the court there held:

> In the domain of commercial speech, as discussed, the Supreme Court had issued repeated admonitions against the wholesale incorporation of the law of prior restraint. *Athena Products*, 654 F.2d at 367. We therefore judge petitioner's prior restraint argument under a relaxed standard of scrutiny better suited to the hardiness of commercial speech. *Cf. In re San Juan Star Co.*, 662 F.2d 108, 116 (1st Cir. 1981) (relaxed standard for review of order prohibiting dissemination to press of communications produced during discovery).

*Id.* Thus, the court in *Kleiner*, under a "heightened sensitivity" approach, upheld the district court's ban on exclusion solicitations through the end of the exclusion period.

Additionally, it has long been recognized that even the right of pure speech can be abridged in the litigation process. In *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 n. 18 (1984), the Supreme Court held:

> Although litigants do not "surrender their First Amendment rights at the courthouse door," *In re Halkin*, 194 U.S. App. D.C., at 268, 598 F.2d at 186, those rights may be subordinated to other interests that arise in this setting. For instance, on several occasions this Court has approved restriction on the communications of trial participants where necessary to ensure a fair trial for a criminal defendant. . . . In the conduct of a case, a court often finds it necessary to restrict the free expression of participants, including counsel, witnesses, and jurors.

*Id.* (footnotes omitted). *See also Gulf Oil,* 452 U.S. at 104 n. 21.

Based on the above, the solicitations to settle in this litigation by providing overly broad releases, some of which, release claims against third parties such as manufacturers is palpably

12

misleading speech.  Therefore, any order regulating such speech does not pose any First Amendment concerns.

### C.      The Misleading Settlement Communications by Homebuilders Requires Appropriate Relief, Including Curative Notice.

An injunction-like order may be issued by this Court pursuant to Rule 23(d), without regard to the requirements for a preliminary injunction under Rule 65.  In *Kleiner*, the court upheld just such an order which did not satisfy the requirements of Rule 65:

> [W]e do not fault the orders for perceived procedural defects under Fed.R.Civ.P. 65(d).  Rule 65(d) states that injunctions and restraining orders must set forth the reasons for their issuance and identify, with reasonable detail, the acts to be restrained.  The orders at issue, however, are of a different ilk.  The lower court correctly characterized the rulings as directives to counsel in their capacity as officers of the court, pursuant to the court's inherent power to manage its cases.  *See* Fed.R.Civ.P. 23(d)(2).  The more relaxed prerequisites of Rule 23(d)(2) therefore [are] applied, as the district court noted:
>
> Findings of fact and technical precision are unnecessary for such direction to be valid; rather the direction must only be (a) within the Court's power and (b) specific enough so that counsel may understand what conduct or action is required.
>
> Opinion of the district court at 34.  The trial court justifiably found that both criteria were "amply met in the instant case."

751 F.d at 1201.  Thus, a ban, on solicitations to settle absent class members' claims, and curative notice may be issued pursuant to the Court's inherent authority under Rule 23(d) to protect the integrity of the Rule 23 class action device and to protect class members; it is not an injunction sought pursuant to Rule 65.  However, like any injunction, a violation of the Court's order may be punished by this Court regardless of where the violation occurs.  *See United States Steel Corp. v. Multistate Tax Comm'n*, 367 F.Supp. 107, 117 (S.D.N.Y. 1973).

The dangers of the settlement communications with putative Class Members are that they are inaccurate, one-sided, coercive, and misleading. *See In re Community Back of Northern Virginia*, 418 F.3d at 310-311; *Georgine*, 160 F.R.D. at 498; *Haffer*, 115 F.R.D. at 512; *Kleiner*, 751 A. 2d at 1202; *Ralph Oldsmobile, Inc.*, 2000 WL 1035132 at *3-4; *Jennifer*, 1999 WL 117762 at *7; *Hampton Hardware*, 156 F.R.D. at 633; *Impervious Paint Industries*, 528 F.Supp. at 721-723; *Burford*, 2007 WL 81667 at *2. The settlement communications also raise the potential abuse of unknowing waivers of claims and rights by putative class members. *See Ralph Oldsmobile, Inc.*, 2000 WL 1035132 at *3-4; *Jennifer*, 1999 WL 117762 at *7.

The unsupervised communications by Homebuilders to settle create "possibilities for deception" and therefore threaten Rule 23. Such communications should not be sanctioned by the Court. *See Impervious Paint Industries, supra* (the court enjoined defendants from seeking class member exclusions). In *Impervious Paint Industries*, the court discussed the importance of the independence of the class member's decision to participate in class litigation and the responsibility of the court to assure this independent participation:

> It is essential that the class member's decision to participate or to withdraw be made on the basis of an independent analysis of its own self-interest. It is the responsibility of the court as a neutral arbiter and of the attorneys in their adversarial capacity, to ensure this type of free and unfettered decision. The mechanism selected for accomplishing this is the class notice, which is designed to present the relevant facts in an unbiased format.

*Id.* 508 F.Supp. at 723 (emphasis added). And here, as in *Impervious Paint Industries*, the Court must protect the Class Members' right to make an independent, uncoerced decision with respect to participating in the class action or settling their claims with Homebuilders on their own:

> In this type of case, both sides are subject to tremendous pressure to step over the thin line between vigorous advocacy and overreaching.

14

> It is essential that the class member's decision to participate or to withdraw be made on the basis of an independent analysis of its own self-interest.  It is the responsibility of the court as a neutral arbiter, and of the attorneys in their adversarial capacity to insure this type of free and unfettered decision.
>
> The mechanism selected for accomplishing this is the class notice, which is designed to present the relevant facts in an unbiased format.

*Id.*

Of particular concern are the attempts by Homebuilders to have putative class members unknowingly release rights or claims by the signing of releases.  *See Jennifer*, 1999 WL 117762 at *7; *Ralph Oldsmobile, Inc.*, 2001 WL 1035132 at *3-4; *Burford*, *supra*.  Courts have prohibited such attempts by defendants and have ordered that curative notices be sent to putative Class Members who have received a release and to all potential Class Members in the future when defendant seeks the signing of a release.  *Id.  See also Jaffee v. United States,* 592 F.2d 712, 719-20 (3d Cir. 1979), where the court affirmed an order directing the federal government to warn all soldiers who were ordered to be present at an atomic blast about the medical risks facing them at the government's expense.

In this litigation, Homebuilders have misled putative Class Members in an effort to resolve their claims related to the defective drywall.  Along with the letter seeking to resolve the putative Class Member's claims, Homebuilders have enclosed releases for the putative Class Members to execute.  Both the letter and releases are misleading and have material omissions in several respects. First, the letters fail to inform the intended recipients that plaintiffs have filed class actions on their behalf and that the Court has appointed a Plaintiffs Steering Committee.  Second, the letters fail to inform the intended recipients that the class action complaints seek compensation beyond what is being offered by the Homebuilders.  Third, the letters fail to inform the intended recipients that Class

Counsel has determined that the settlement offers undervalue the claims and releases claims without adequate redress.  Fourth, the letters fail to inform the intended recipient that he or she is releasing all claims both past and present for the defective drywall which is still affixed to his or her home. Fifth, the letters fail to inform the intended recipient that the remaining drywall on his or her home is defective.

The conduct described above is the same type of abusive and coercive conduct that have caused the courts in *Jennifer*, *Ralph Oldsmobile, Inc.*, and *Burford* to intervene in order to correct through curative notices.  Given the importance that potential class members have sufficient information to make an informed decision and not knowingly waive rights or claims by executing a release, curative notice is warranted to protect absent class members from the homebuilders' abuses.

Respectfully submitted,

Dated: September 3, 2009

/s/ Russ M. Herman
Russ M. Herman, Esquire
Leonard A. Davis, Esquire
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
*Plaintiffs' Liaison Counsel*
*MDL 2047*

16

**PLAINTIFFS' STEERING COMMITTEE**

Arnold Levin (on the brief)
Fred S. Longer (on the brief)
Matthew C. Gaughan (on the brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Victor Manuel Diaz
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Aragon Avenue, 2nd Floor
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
  Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020   bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

Jerrold Seith Parker
Parker, Waichman, Alonso LLP
27399 Riverview Center Blvd.
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

## CERTIFICATE OF SERVICE

        I hereby certify that the above and foregoing pleading has been served on Defendants'
Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon
all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-
Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the
United States District Court for the Eastern District of Louisiana by using the CM/ECF System,
which will send a notice of electronic filing in accordance with the procedures established in MDL
2047, on this 3rd  day of September, 2009.

                                                /s/ Leonard A. Davis
                                                Leonard A. Davis
                                                Herman, Herman, Katz & Cotlar, LLP
                                                820 O'Keefe Ave.
                                                New Orleans, LA  70113
                                                PH:  (504) 581-4892
                                                Fax:  (504) 561-6024
                                                ldavis@hhkc.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED DRYWALL          MDL No. 2047
PRODUCTS LIABILITY LITIGATION

SECTION: L

This Document Relates to:  All Cases          Judge Fallon
Mag. Judge Wilkinson

_____/

**HOMEBUILDERS' STEERING COMMITTEE'S RESPONSE IN OPPOSITION TO
THE EMERGENCY MOTION TO PROTECT CLASS MEMBERS
AND FAIRLY CONDUCT THE ACTION**

The Homebuilders' Steering Committee ("HSC"), opposes the Plaintiffs' Steering Committee's ("PSC") Emergency Motion to Protect Class Members and Fairly Conduct the Action, and their supporting memorandum ("PSC's Motion") for the reasons set forth below.

**I.      Introduction**

The PSC seeks to punish homebuilders for being the only parties to step up to the plate and repair homes, even during one of the worst economic times for homebuilders since the Great Depression.  The Court should deny the PSC's Motion for the same reasons two other federal courts denied virtually identical motions filed in Chinese Drywall cases before they were transferred to this MDL proceeding — *there is no clear record of misleading information or coercive communications by homebuilders*.  The Supreme Court of the United States has rejected prohibitions on pre-certification communications between counsel and putative class members where, as here, there is no clear record demonstrating misleading information or coercive communication.  *See Gulf Oil v. Bernard,* 452 U.S. 89, 101-02 (1981).  Lower courts have consistently applied this rule since the *Gulf Oil* decision.

Moreover, the PSC seeks relief that is wholly inconsistent with its own recent request for authority to conduct town hall meetings with homeowners with whom they have no relationship,

1

as well as its ongoing efforts through websites and media interviews to solicit clients as class members. And any effort by the PSC to stop homebuilders from repairing their customers' homes is in direct conflict with what homeowners want and are demanding from homebuilders — *repaired homes*. Moreover, stopping repairs would violate the Florida homebuilders' (and homeowners') rights under Chapter 558, Florida Statutes. Accordingly, the Court should deny the PSC's Motion.

## II. Factual Background

In late 2008, the media began reporting that Chinese-manufactured drywall was causing corrosion of building components and a sulfur or "rotten egg" smell. Several homebuilders, including MDL defendants Beazer Homes, Lennar, M/I Homes, and Taylor Morrison, ("Homebuilders"), began investigating and learned that a small number of homes they built had some of those symptoms. While the facts relating to the individual Homebuilders vary somewhat, typically, beginning in 2009, the Homebuilders notified homeowners of the media reports and offered to inspect their homes. In some instances, homeowners contacted the Homebuilders first. Some homeowners corresponded with the Homebuilders through legal counsel. Most homeowners accepted the Homebuilders' offer of an inspection.

During the course of the inspections, the Homebuilders learned that subcontractors had installed Chinese drywall in some of their homes. In those instances, the Homebuilders offered to pay for temporary relocation expenses, to replace the Chinese drywall with non-defective domestic drywall, to conduct extensive additional repairs, and in some instances, to warrant the work and to compensate the homeowners for incidental costs. In exchange, the Homebuilders requested from homeowners an assignment and a release for property damage claims only.

2

As is evident from the materials the PSC filed in support of its Motion, no Homebuilder in the MDL requested a release of personal injury claims. And all Homebuilders in the MDL are making the repairs without any monetary contribution from homeowners or others despite the enormous costs involved.

After the Homebuilders began investigating — and in some instances repairing homes — several different groups of law firms began filing both individual and putative class actions in various jurisdictions. Shortly thereafter, some of those lawyers began trying to stop Homebuilders from repairing homes. The plaintiffs' lawyers in at least two putative class actions filed motions virtually identical to the PSC's Motion in federal courts in Florida and Ohio. Both federal courts denied those motions based on *Gulf Oil* and its progeny. The motion, the hearing transcript, and the court's order in *Kristin Culliton v. Taylor Morrison Services, inc., et al,* U.S. Dist. Court, Middle Dist. of Florida, Case No. 09-cv-00589-JDW-TGW (MDL Case No. 09-4114) are attached hereto as composite Exhibit A. The motion, the hearing transcript, and the court's order in *Steven Minafri v. M/I Homes, Inc., et. al*, U.S. Dist. Court, Southern Dist. of Ohio, Case No. 2:09-cv-167 (MDL Case No. 09-4120) are attached hereto as composite Exhibit B.

Similarly, in response to the PSC's recent "Motion to Approve Town Hall Meetings," this Court stated both Plaintiffs' counsel and Defendants' counsel are free to contact non-party homeowners. *See Transcript of September 3, 2009, Status Conference (not yet available from the reporter).* This Court's statement is consistent with the Supreme Court's decision in *Gulf Oil*, other courts that have considered this issue since *Gulf Oil*, and the recent decisions in the *Culliton* and *Minafri* cases.

3

## III.    Legal Argument

The PSC argues, and the Homebuilders agree, that the Court has "broad discretionary powers....to supervise communications [by defense counsel] with class members." *See PSC's Motion, citing Fed. R. Civ. P. 23(d)*. It is uncontradicted, however, that the Homebuilders' customers are not "class members" because no class has been certified in this MDL or in any case transferred to it. The PSC also ignores the First Amendment limitations that circumscribe the Court's "broad discretionary powers" in this context. Contrary to the PSC's argument, federal courts generally hold that parties cannot be prohibited from communicating with putative class members, prior to class certification, unless there is a clear finding that the communications are misleading or coercive, and that this outweighs the infringement of the parties' right to communicate with non-parties. *See Section III.A. below*. Indeed, as demonstrated in section III.C. below, cases on which the PSC relies emphasize courts' limited authority to restrict parties' rights to communicate with putative class members.

### A.    The Homebuilders are legally permitted to communicate with homeowners and to negotiate settlements prior to certification of a class, so long as their communications are not misleading or coercive

The starting point for this analysis is the Supreme Court's decision in *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981). In *Gulf Oil*, the Court struck down a district court order prohibiting communications between the plaintiffs' counsel in an uncertified class action and putative class members. The Supreme Court found that "the order was an abuse of discretion," explaining:

> [A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties. But this discretion is not unlimited.... The record reveals no grounds on which the District Court could have determined that it was necessary or appropriate to impose this order....[T]he order involved serious

4

> restrains on expression. This fact, at minimum, counsels caution on a part of a district court in drafting such an order, and attention to whether the restraint is justified by a likelihood of serious abuses.

452 U.S. at 100, 103-04. Although the Court recognized that parties' communications with putative class members might result in abuses in some circumstances, it held that "the mere possibility of abuses does not justify routine adoption of a communications ban." *Id.* at 104. A court may enter "a carefully drawn order that limits speech as little as possible" but it can do so only on the basis of a "clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101-02.

After *Gulf Oil*, the federal courts have generally agreed that parties cannot be prohibited from communicating with putative class members, prior to class certification, unless there is a clear finding that the communications are misleading or coercive and that this outweighs the infringement of the parties' right to communicate with non-parties.. For example in *Payne v. Goodyear Tire & Rubber Co.*, 207 F.R.D. 16 (D. Mass. 2002), homeowners brought a putative class action case against the manufacturer of allegedly defective floor heating hoses. The homeowners moved to prevent the manufacturer from communicating with putative class members and inspecting homes. The court denied the request and refused to order the manufacturer to modify its website. It explained: "Considering all of the evidence put forth by the plaintiffs, an order barring ex parte communication with absent plaintiffs is not justified by the record currently before the court." *Id.* at 20. "What remains on Goodyear's website regarding Entran II hose is, in essence, the company's opinion on the hose's functionality." *Id.*

Even cases predating *Gulf Oil* generally allowed communications to "putative" class members. In *Weight Watchers of Philadelphia, Inc., v. Weight Watchers International, Inc.*, 455 F.2d 770 (2d Cir. 1972), a franchisee brought a class action alleging antitrust violations. The

chairman of the defendant's board of directors sent a letter to all putative class member franchisees stating, among other things, that the lawsuit would have a detrimental affect on the image of the parent company. The plaintiff moved to preclude the defendant from communicating with any potential member of the class and attempting to settle the claims of potential class members. The court held:

> Indeed, we are unable to perceive any legal theory that would endow a plaintiff who has brought what would have been a "spurious" class action under former Rule 23 with a right to prevent negotiation of settlements between the defendant and other potential members of the class who are of the mind to do this; it is only the settlement of the class action itself without court approval that Fed.R.Civ.P. 23(e) prohibits.

*Id.* at 773.

The *Weight Watchers* court further held that "even if defendant should succeed in settling with so many franchisees that the court will be forced to deny class action status, plaintiff's complaint will remain untouched." *Id.* at 775. Similarly, here, the named Plaintiffs' claims will not be impacted by settlements with non-party homeowners. According to the PSC, there remain "thousands" of affected homeowners that could form a class if they so desire. *See Miami Herald article attached as Exhibit C.*

As stated in the current version of the Manual for Complex Litigation: "Defendants and their counsel generally may communicate with potential class members in the ordinary course of business, including discussing settlement before certification, but may not give false, misleading, or intimidating information, conceal material information, or attempt to influence the decision about whether to request exclusion from a class certified under Rule 23(b)(3)." *Manual for Complex Litigation (4th Ed.), §21.12 - Precertification Communications with the Proposed Class.* The Manual adds that "[m]ost judges are reluctant to restrict communications between

6

the parties or their counsel and potential class members, except when necessary to prevent serious misconduct." *Id.*

Consistent with this rule, in response to the PSC's recent "Motion to "Motion to Approve Town Hall Meetings," this Court ruled that both Plaintiffs' counsel and Defendants' counsel are free to contact non-party homeowners. *See Transcript of September 3, 2009, Status Conference (not yet available from the reporter).* This Court made a similar ruling in *Patrick Turner v. Murphy Oil*, Civil Action No. 05-4206, U.S. Dist. Court, Eastern Dist. of Louisiana, when it denied the plaintiffs' motion to preclude ex parte communications between Murphy Oil and putative class members, and required that such issues be raised on a case by case basis. *See October 4, 2005, Minute Entry.*

The PSC must make an evidentiary showing of two kinds of proof. First, it must show that a particular form of communication has occurred or is threatened to occur. Second, the PSC must show that the particular form of communication at issue is abusive and that it threatens the proper functioning of the litigation. *Cox Nuclear Medicine v. Gold Cup Coffee Svcs., Inc.*, 214 F.R.D. 696, 697-98 (S.D. Ala. 2003). The PSC has provided **no** actual evidence of a single misleading or abusive communication. Evidence that Homebuilders have repaired their customers' homes and obtained releases in exchange for their expenditures can hardly be deemed *per se* abusive. "Claims that the defendant merely communicated a settlement offer to a putative plaintiff will not provide the basis for a limitation. Absent any specific evidence that the communication is abusive, a limitation is in appropriate." *The Kay Co. v. Equitable Production Co.*, 246 F.R.D. 260, 263 (S.D.W.Va. 2007) (finding defendant contact with putative class members regarding settlement was not abusive).

7

**B.     The Homebuilders' communications with homeowners are not misleading or coercive**

The materials the PSC filed in support of the PSC's Motion demonstrate the Homebuilders are not providing misleading or coercive information to their customers. Tellingly, the PSC fails to identify any misleading or coercive information.  The PSC merely asserts, without evidentiary support, that the Homebuilders' failure to advise homeowners of this MDL proceeding is somehow inherently misleading.  It is not.  The Homebuilders respectfully suggest that this MDL proceeding should be used as a forum to consolidate pretrial discovery for cases in numerous district courts, not as a means to solicit clients for the PSC.

The PSC also contends that it has authority to control settlement discussions and opine on the validity of the releases for all plaintiffs and non-plaintiffs who own affected homes in Florida.  Notably, it cites no authority for this novel proposition either.  Homeowners can make their own choices about repairs and counsel, and whether to participate in this litigation or settle their claims.

In addition to requesting that the Homebuilders not contact homeowners relative to repairs and inspections, the PSC seeks to prohibit future settlement agreements and rescind those already executed.  But in making this argument, the PSC inaccurately depicts the scope and benefits of the settlement agreements with homeowners.  The PSC incorrectly asserts that the Homebuilders "have improperly sought [to] avoid their exposure to liability by trampling upon the rights of absent class members" *See PSC's Motion at p. 2*.  The PSC fails to support this conclusory assertion with any facts.  The PSC also argues that "[i]t is well-known that builders in this litigation are seeking general releases that far exceed the benefits bestowed upon absent class member owners." *See PSC's Motion at p. 1*.  These bald assertions are patently false.

The PSC's bald assertions are also misleading. First, they assume that participating homeowners have and want claims that are a part of any action, let alone the action filed by one or more of the putative class representatives. Second, in making these assertions in support of its purported effort to "protect the interests of putative class members," the PSC presumptuously seeks to substitute its intentions and desires with regard to the issues presented in this action for those of the other homeowners (several of whom have their own attorneys). In fact, many of the homeowners who have had contact with the Homebuilders, some of whom are represented by counsel in these proceedings, have contacted the Homebuilders directly and have expressed a desire to have their homes repaired. Third, many Homebuilders are providing a new warranty for the repairs. Thus, if the repairs are insufficient or incorrect, the homeowners have a legal remedy. Fourth, most Homebuilders, in response to the homeowners' requests that they repair their homes, have delivered or mailed the applicable agreement to the homeowners and provided them the opportunity to review the agreement and confer with whomever they like, including legal counsel. And nothing in those documents is misleading or coercive. Indeed, in many cases, the release, assignment, and other pertinent provisions appear as headings or are otherwise prominently displayed in bold typeface.

The PSC would have this Court believe that without their guidance the homeowners are incapable of contacting a lawyer, asking questions of or negotiating with the Homebuilders, or considering their options. For example, at least one of the Homebuilders sold homes that ranged from $300,000-$840,000. *See affidavit of Todd Merrill at par. 7 & 8, attached hereto as Exhibit D.* Owners of those homes are not uneducated people and are not incapable of reading documents or retaining counsel, if they desire.

9

In sum, the Homebuilders have not made any misleading or coercive communications –
regarding the nature and extent of the releases, the repairs offered, or otherwise. And the PSC
has not provided any evidence either.

**C.     The PSC's Motion is not supported by law**

The PSC's Motion is not supported by federal case law in general or by the cases upon
which the PSC relies in particular. Courts have agreed that parties cannot be prohibited from
communicating with putative class members, prior to class certification, unless there is a clear
finding that the communications are misleading or coercive, and that this outweighs the
infringement of the parties' right to communicate with non-parties.

The relief the PSC seeks here would prohibit the Homebuilders from continuing their
ongoing communications with customers simply because the PSC has included them in various
proposed class definitions. However, most of the cases the PSC cites do not even address that
issue; they address the very different question of whether defense counsel can be prohibited from
communicating with parties, *i.e.,* members of a class that has been certified and who therefore
are represented by counsel. *See, e.g., Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193 (11th
Cir. 1985), where the court found that it was improper for defendant to conduct a massive
telephone campaign to convince members of a certified class "to withdraw from the class" so
that the defendant could reduce its potential liability. The telephone calls violated two previous
court orders, but the Court's ruling was based upon the "ethical duty" that "a lawyer shall not
communicate about the subject of the representation with a party the lawyer knows to be
represented by another lawyer in the matter." *Id.* at 1207. That rule does not apply here because
no classes have been certified and the PSC does not represent putative class members.

10

As noted, the PSC is relying on cases that involved communications with actual members of certified classes who were parties to the litigation and thus were represented by class counsel. *See, e.g., Resnick v. American Dental Association*, 95 F.R.D. 372, 376-377 (N.D. Ill. 1984) ("unnamed class members, once the class has been certified, are represented by the class counsel", and therefore "the reasons for the prohibition of a lawyer's direct dealing with an adverse party represented by counsel . . . apply here") (citation and internal punctuation omitted); and *In re Federal Skywalk Cases*, 97 F.R.D. 370, 376 (W.D. Mo. 1983) (finding that communications between defense counsel and class members were improper because "this Court expressly created an attorney-client relationship between the counsel appointed to represent the class and those class members" when it certified the class). Other cases the PSC cites that involve post-certification communication with parties include *Bower v. Bunker Hill Co.*, 689 F.Supp. 1032 (E.D. Wash. 1985); *Tedesco v. Mishkin*, 629 F. Supp. 1474 (S.D. N.Y. 1986); *In re School Asbestos Litigation*, 842 F.2d 671 (3d Cir. 1988); *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986); *Haffer v. Temple University*, 115 F.R.D. 506 (E.D. Pa. 1987); *Erhardt v. Prudential Group, Inc.* 629 F.2d 843 (2d Cir. 1980); *Georgine v. Amchem Products*, 160 F.R.D. 478 (E.D. Pa. 1995); *In re Community Bank of Northern Virginia*, 418 F.3d 277 (3d Cir. 2005); and *Impervious Paint Industries, Inc. v. Ashland Oil Co.*, 508 F. Supp. 720 (W.D. Ky. 1981).

In addition, most of the cases the PSC cites, including those that address pre-certification communications with putative class members, were decided *before* the Supreme Court changed the rule in *Gulf Oil, supra*, and held that prohibitions on pre-certification communications between parties and putative class members should be ordered with "caution" and must be based upon a clear record showing that the communications are misleading, coercive, or otherwise

11

threaten the fairness of the proceedings, and that this outweighs the resulting infringement of the parties' rights to communicate with non parties. 452 U.S. at 104. Many of these courts expressly relied upon a previous provision in the Manual for Complex Litigation that had allowed similar prohibitions, before the *Gulf Oil* ruling. *See e.g., Waldo v. Lakeshore Estates, Inc.*, 433 F. Supp. 782 (E.D. La. 1977) (upholding an order restricting communications with putative class members prior to class certification because, *inter alia*, it was "drawn verbatim from . . . the Manual for Complex Litigation," an "appropriate reference"); *Impervious Paint Industries, Inc. v. Ashland Oil Co.* 508 F. Supp. 720 (W.D. Ky. 1981); and *Erhardt v. Prudential Group, Inc.*, 629 F.2d 843 (2d Cir. 1980).[1] At that time, the Manual recommended "that the court at pretrial enter an order 'forbidding unapproved direct or indirect written and oral communications by formal parties or their counsel with potential and actual class members.' " *See Erhardt,* 629 F.2d at 845.

This is precisely the type of blanket prohibition that the Supreme Court struck down in *Gulf Oil,* and the Manual was radically changed after *Gulf Oil.* The Manual now provides that "[d]efendants and their counsel generally may communicate with potential class members in the ordinary course of business, including discussing settlement before certification, but may not give false, misleading, or intimidating information, conceal material information, or attempt to influence the decision about whether to request exclusion from a class certified under Rule 23(b)(3)." *Manual for Complex Litigation (4th Ed.), § 21.12 - Precertification Communications*

---

[1] Further distinguishing some of these cases from the instant case is their reliance upon Rule 23 as it existed prior to the 2003 amendment which clarified when the court can refuse to approve a settlement. The 2003 amendment makes it clear that court approval is not required for the pre-certification settlement of the claims of a putative class member. The current version of Rule 23 (e) requires court approval and notice of settlements or compromise only as to certified classes. Thus, the court has no obligation, under Rule 23, to "protect" putative class members from pre-certification contact and settlement discussions with a defendant absent clear evidence of misleading or coercive communications.

12

*with the Proposed Class.* The Manual observes that "[m]ost judges are reluctant to restrict communications between the parties or their counsel and potential class members, except when necessary to prevent serious misconduct." *Id.*

Significantly, many of the cases the PSC cites involved communications that occurred after formal class *notice* was approved. Courts are particularly concerned about misleading attempts to influence class members during the "opt-out" period when they must decide whether to exclude themselves from a class. For example, in *In re Community Bank of Northern Virginia*, 418 F.3d 277, 287 (3d Cir. 2005), several law firms mailed letters to class members after notice of a proposed class settlement, encouraging them to opt out of the class and to contact the law firms to discuss their claims. The court recognized in that case that "district courts must closely monitor the notice process and take steps to safeguard members from unauthorized and misleading communications," even though it acknowledged a "broad and sweeping . . . ban on communications" is a "serious restraint[ ] on expression" that "counsels caution." 418 F.3d at 310. The fact that the communications occurred after class notice was also significant to the courts in *Kleiner,* 751 F.2d at 1201-02; *Georgine,* 160 F.R.D. at 490; *Impervious Paint,* 508 F. Supp. at 723; and *Erhardt,* 629 F.2d at 845.

Most importantly, many courts have expressly recognized that a defendant may properly engage in communications with putative class members, including settlement discussions, before a class is certified. For example, in *Cada v. Costa Line, Inc.,* 93 F.R.D. 95, 98 (N.D. 111. 1981), the court held that "[i]ndividual class members who choose to settle (or to litigate or indeed just to forget about) their claims are simply opting out of the class, an opportunity available to them until there has been a class determination under Rule 23(c) and the date specified in the class notice in accordance with Rule 23 (c)(2)(A)..has passed. Rule 23(e) is aimed at a different

13

target. It requires court approval of settlement of the class action itself, not of individual claims." *See also, In re M.L. Stern Overtime Litigation,* 250 F.R.D. 492, 499-500 (S.D. Cal. 2008) (holding that a letter from a defendant to putative class members in which it offered to settle their claims was not "improper, misleading, or coercive", in the absence of a clear record of "particular abuses," the Court refused to "impose limitations based on speculation and conjecture"); *Keystone Tobacco Co. v. United States Tobacco Co.,* 238 F. Supp. 2d 151, 157 (D. D.C. 2002) (where the court held that a defendant could properly communicate with putative class members about potential settlement prior to class certification where "the correspondence itself does not appear to contain any incorrect assertions of fact regarding the current class action or the terms of the settlement" and does not contain "inaccurate or misleading" statements); *Jenifer v. Delaware Solid Waste Auth.,* No. Civ. A 98-270, 98-565, 1999 WL 117762, (D. Del. Feb. 25, 1999), (where the Court cited the post-*Gulf Oil* provision of the Manual on Complex Litigation regarding pre-certification communications with putative class members in concluding the communications at issue were not improper); and *American Finance System, Inc. v. Harlow,* 65 F.R.D. 572, 575 (D. Md. 1974) (rejecting plaintiffs' "erroneous presumption that [defendant] is absolutely prohibited from negotiating compromises with individual class members" prior to class certification).[2] Likewise, in this case, no class has been certified, so the Homebuilders may properly communicate with homeowners and settle claims.

### D. Two federal courts have already rejected the PSC's arguments in Chinese Drywall cases that are now pending in this MDL

---

[2] The PSC also relies on the "memorandum order" entered in *Burford v. Cargill, Inc.,* No. 05-0283, 2007 WL 81667 (W.D. La. June 9, 2007), an unpublished opinion, and *Ralph Oldsmobile, Inc. v. General Motors Corp.,* No. 99-Civ-4567, 2001 WL 1035132 (S.D.N.Y. Sept. 7, 2001). *Burford* required the parties to negotiate notice language regarding the pending litigation. The *Burford* court did not prohibit releases from being negotiated. The Homebuilders respectfully submit that *Burford* is against the weight of authority rejecting the forced inclusion of such notice language in a pre-certification communication. *Ralph* is distinguishable because, unlike here, the putative class members there were dependent on the defendant for future business, including information, supplies, and credit, such that the court found the potential for coercion. That is not the case here.

Two federal courts have already denied motions almost identical to the PSC's Motion. In *Kristin Culliton v. Taylor Morrison Services, inc., et al*, U.S. Dist. Court, Middle Dist. of Florida, Case No. 09-cv-00589-JDW-TGW (MDL Case No. 09-4114), a putative class action, Magistrate Judge Thomas Wilson conducted a hearing on May 12, 2009, on the plaintiff's Motion for Protective Order. There the plaintiff sought, among other things, to prohibit Taylor Morrison from enforcing the releases, to declare the release and assignments void, to require the homebuilder to distribute a court-approved notice or information sheet, and to require the homebuilder to identify any homes to which repairs and relocation agreements have been sought. Judge Wilson denied all of the above stated relief requested by the plaintiff.[3] During the proceedings, counsel for the Culliton (Mr. Casper) stated as follows:

*    *    *    *

MR. CASPER: Well, Your Honor, one side has lawyers. A lot of people on the other side don't. That's not a fair situation.

THE COURT: Well, why? Why? Because they want their house fixed. If their house gets fixed, then what - - why would they need a lawyer?

MR. CASPER: The way the agreements are written, there's no assurance the house is going to be fixed and put in the condition it would have been absent the defective drywall that was installed. The agreement says they'll put it back - -

THE COURT: Well, then you have the warranty, the old one as well as the new one.

MR. CASPER: The release releases any claims related to the defective Chinese drywall, right in Paragraph 15.

THE COURT: Well, of course. They are taking up that old drywall and putting in new drywall; then you get a year warranty.

*See Hearing transcript at p. 32-33, attached hereto as Exhibit A.*

---

[3] Judge Wilson did require the homebuilder to notify homeowners that they have the right to have an attorney review the release, if they choose to retain one. This insert was included in all future packets provided by the homebuilder.

15

\*     \*     \*     \*

The court also addressed the plaintiff's contention that the release and assignments were misleading:

\*     \*     \*     \*

> THE COURT:  I've read all this stuff.  I didn't find it particularly misleading.  The only thing I find that's - - that has some persuasiveness is some statement to contact a lawyer, period, not you guys, not the other guys, not anybody, but a statement in their facts that there should be some - - that you may wish to contact a lawyer before you sign this document.

> MR. CASPER:  **But, Your Honor, why not clearer language on the assignment and release issue as well?  I don't think it's clear to a lot of people in reading this that this means you're done; this is all you're going to get.**

> THE COURT:  No.  That's why you contact a lawyer.  **I don't think there's anything misleading about that, so I'm not going to say, yeah, you ought to change that.  If I'm reading that, I understand what it means.  If you don't want to do that, okay, then fine.  Then you don't accept their deal.** You get a lawyer; you bring your own lawsuit - - not necessarily yours but their own lawsuit, and they can ask for a class.  So I'm not changing that one because I don't see anything  wrong with that one.  And I don't see anything wrong with the other stuff.  I didn't find this a misleading statement at all.

\*     \*     \*     \*

*Id at p. 39-40.*

Similarly, in *Steven Minafri v. M/I Homes, Inc., et. al*, U.S. Dist. Court, Southern Dist. of Ohio, Case No. 2:09-cv-167 (MDL Case No. 09-4120), a putative class action, after a hearing, Judge Algenon Marbley denied the plaintiff's motion for temporary restraining order to prevent M/I Homes from contacting homeowners, repairing homes, and settling potential property damage claims.  At the hearing, Judge Marbley ruled that "precertification communications to potential class members by both parties generally are permitted and are also considered to constitute constitutionally-protected speech."  *See Hearing Transcript at p. 45, attached hereto*

16

*as Exhibit B.* Importantly, Judge Marbley found "nothing coercive" and "nothing false" about M/I Homes' communication. *Id.* at 46. And Judge Marbley found "compelling the fact that the putative class members, should they enter into [the] agreement, would not give up any of their personal injury claims and they can still remain members of the class." *Id.* In his order denying the plaintiff's motion, Judge Marbley found "there is no clear record demonstrating misleading information in the Letter or inherently coercive behavior on the part of Defendant M/I Homes." *See Order denying motion for temporary restraining order, attached hereto as Exhibit B.* This Court should be persuaded by the decisions in *Culliton* and *Minafri.*

### E. Florida Homebuilders have a statutory right to make repairs and settle potential claims

Chapter 558, Florida Statutes, provides the Homebuilders the right to make repairs or payment that would result in resolution of potential claims. Chapter 558 requires claimants to advise a potentially responsible defendant of any construction defect and bars any claims upon acceptable repair or payment. Section 558.004, Fla. Stat., provides:

Notice and opportunity to repair –

(1) " In actions brought alleging a construction defect, the claimant shall, at least 60 days before filing any action, or at least 120 days before filing an action involving an association representing more than 20 parcels, serve written notice of claim on the contractor, subcontractor, supplier, or design professional, as applicable, which notice shall refer to this chapter. If the construction defect claim arises from work performed under a contract, the written notice of claim must be served on the person with whom the claimant contracted. The notice of claim must describe the claim in reasonable detail sufficient to determine the general nature of each alleged construction defect and a description of the damage or loss resulting from the defect, if known.

*       *       *       *

(5) "Within 45 days after receiving the notice of claim, or within 75 days after receipt of a copy of the notice of claim involving an association representing more than 20 parcels, the person who received notice under subsection (1) must serve a written response to the claimant. The response shall be served to the attention of

17

the person who signed the notice of claim, unless otherwise designated in the notice of claim. The written response must provide:

     (a) A written offer to remedy the alleged construction defect at no cost to the claimant, a detailed description of the proposed repairs necessary to remedy the defect, and a timetable for the completion of such repairs;

     (b) A written offer to compromise and settle the claim by monetary payment, that will not obligate the person's insurer, and a timetable for making payment;

     (c) A written offer to compromise and settle the claim by a combination of repairs and monetary payment, that will not obligate the person's insurer, that includes a detailed description of the proposed repairs and a timetable for the completion of such repairs and making payment;"

*    *    *    *

   **(8) ".....If the offeror makes payment or repairs the defect within the agreed time and in the agreed manner, the claimant is barred from proceeding with an action for the claim described in the notice of claim or as otherwise provided in the accepted settlement offer."**

Therefore, the Homebuilders are permitted to contact both represented and unrepresented homeowners pursuant to Chapter 558, which is intended to facilitate resolution of claimed construction defects directly between claimants (homeowners) and builders to avoid the expenditure of judicial resources. Larry R. Leiby and Steven B. Lesser, *How to Comply with Chapter 558 Florida Statutes: Current Challenges and Future Changes*, 83 FLA. B.J. 42 (February 2009), provides:

    ....F.S. Ch. 558 requires an owner (claimant) to give notice and an opportunity to cure with respect to a building defect(s). The statute sets forth its purpose as to create **"an alternative method to resolve construction disputes that would reduce the need for litigation as well as protect the rights of the property owners". In more practical terms, it is intended to allow both claimants and participants to design and construction to resolve alleged defects before both sides run to the courthouse and spend a pile of money on lawyers...**

18

In addition, many of the Homebuilders have the right to make repairs or offer payment pursuant to their warranties. For example, Taylor Morrison provides a structural warranty (in addition to a separate two year comprehensive warranty) which provides:

E.   WHAT HAPPENS AFTER YOU SUBMIT A CLAIM?

1.   "Morrison Homes is entitled to assess claimed defects and decide upon an appropriate repair plan. Morrison Homes is also entitled to choose to repair or replace, or to pay you the fair value of the repair or the replacement of a covered defect."

2.   "…..By accepting the benefits of this Ten-Year Limited Structural Warranty you agree to grant access to Morrison Homes and its contractors to conduct tests and to inspect and repair your home, as Morrison Homes deems appropriate. Failure to grant such access to Morrison Homes shall automatically void this warranty."

\*     \*     \*     \*

5.   "As noted, Morrison Homes, in its sole discretion, may choose to perform the required repairs, if any, or to pay its fair value…."

The various settlement agreements satisfy the Homebuilders warranty obligations and offer benefits far beyond that.

The PSC seeks to prevent unrepresented homeowners from having their homes repaired and from complying with Chapter 558, apparently to create a larger class. Nothing in Chapter 558 prevents the Homebuilders from requesting a release and assignment. Most of the releases do not release future personal injury claims, and most contain a new warranty for repair work, as well as cash payments for certain items.

## IV.   Conclusion

The Court should deny the PSC's Motion because the Homebuilders are permitted by law to communicate with homeowners regarding inspections, repairs, releases and assignments, and otherwise, so long as their communications are not misleading or coercive, and there is no evidence, let alone a clear record, of misleading or coercive communications.

19

Moreover, two federal courts have already considered and decided this issue, and denied the very relief the PSC seeks. Moreover, the Florida Homebuilders are permitted to make repairs and settle claims in accordance with Chapter 558, Florida Statutes. Accordingly, the Court should deny the PSC's Motion.

| | |
|---|---|
| **STONE PIGMAN WALTHER WITTMANN**<br>*Local Lead Counsel of the HSC*<br>*Local Counsel for several homebuilders*<br>546 Carondelet Street<br>New Orleans, LA 70130<br>Telephone: (504) 593-0804<br>Facsimile: (504) 593-0804<br>E-mail: pwittmann@stonepigman.com<br><br>By:   /s/ Phillip A. Wittmann<br>       PHILLIP A. WITTMANN<br>       Louisiana Bar No. 13625 | **GREENBERG TRAURIG, P.A.**<br>*Lead Counsel for the HSC*<br>*Counsel for Lennar Corporation, Lennar*<br>*Homes, LLC, and U.S. Home Corporation*<br>1221 Brickell Avenue<br>Miami, Florida 33131<br>Telephone: (305) 579-0500<br>Facsimile: (305) 579-0717<br>Email: bassh@gtlaw.com<br><br>By:   /s/ Hilarie Bass<br>       HILARIE BASS<br>       Florida Bar No. 334323 |
| **SIVYER BARLOW & WATSON**<br>*Counsel for Taylor Woodrow Communities at*<br>*Vasari, LLC and Taylor Morrison Services, Inc.*<br>100 S Ashley Drive, Suite 2150<br>Tampa, FL 33602<br>Telephone: (813) 221-4242<br>Facsimile: (813) 227-8598<br>Email: nsivyer@sbwlegal.com<br><br>By:   /s/ Neal Allen Sivyer<br>       NEAL A. SIVYER<br>       Florida Bar No. 373745 | **KING & SPALDING LLP**<br>*Counsel for Beazer Homes Corp.*<br>1180 Peachtree Street, NE<br>Atlanta, GA 30309<br>Telephone: (404) 572-4600<br>Facsimile: (404) 572-5100<br>Email: kbuster@kslaw.com<br><br>By:   /s/ J Kevin Buster<br>       J. KEVIN BUSTER<br>       Georgia Bar No. 099267 |
| **CARLTON FIELDS, P.A.**<br>*Counsel for M/I Homes, Inc.*<br>PO Box 3239<br>Tampa, Florida 33601<br>Telephone: (813) 223-7000<br>Facsimile: (813) 229-4133<br>Email: jfuente@carltonfields.com<br><br>By:   /s/ Jaret J. Fuente<br>       JARET J. FUENTE<br>       Florida Bar No. 146773 | **SCHWARTZ & HORWITZ, PLC**<br>*Counsel for South Kendall Construction*<br>6751 North Federal Highway, Suite 400<br>Boca Raton, Florida 33487<br>Telephone: (561) 395-4747<br>Facsimile: (561) 367-1550<br>Email: sgs@sandhlawfirm.com<br><br>By:   /s/ Steven G. Schwartz<br>       STEVEN G. SCHWARTZ<br>       Florida Bar No. 911471 |

| LEIFF CABRASER HEIMANN & BERNSTEIN, LLP<br>*Counsel for The Mitchell Company, Inc.*<br>Embarcadero Center West<br>275 Battery Street. Suite 3000<br>San Francisco, California 94111-3339<br>Telephone: (415) 956-1000<br>Facsimile: (415) 956-1008<br>Email: ecabraser@lchb.com<br><br>By: /s/ Elizabeth J. Cabraser<br>ELIZABETH J. CABRASER<br>California Bar No. 83151 | CUNNINGHAM BOUNDS, LLC<br>*Counsel for The Mitchell Company, Inc.*<br>Post Office Box 66705<br>Mobile, Alabama 36660<br>Telephone: (251) 471-6191<br>Facsimile: (251) 479-1031<br>Email: sln@cunninghambounds.com<br><br>By: /s/ Steven L. Nicholas<br>STEVEN L. NICHOLAS<br>Alabama Bar No. ASB-2021-N35S |

## CERTIFICATE OF SERVICE

I HEREBY certify that on September 21, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_____
Attorney

15681885.1

MINUTE ENTRY
FALLON, J.
SEPTEMBER 24, 2009

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED          MDL NO. 2047
    DRYWALL PRODUCTS
    LIABILITY LITIGATION            SECTION: L

                                        JUDGE FALLON

THIS DOCUMENT RELATES TO ALL CASES          MAGISTRATE WILKINSON

BEFORE JUDGE ELDON E. FALLON
Case Manager: Gaylyn Lambert
Court Reporter: Toni Tusa

Appearances: Arnold Levin, Esq. And Russ Herman, Esq. For Plaintiff Steering Committee
              Neil Sivyer, Esq. And Kevin Buster, Esq. For defendants

1. Motion of the PSC to Protect Class Members and Fairly Conduct the Action (208)

Argument - DENIED with the right to refile. The Court expects the parties to advise property owners that they have the right to consult with counsel. Henceforth, property owners should be advised of the multi-district litigation and website address. On a case by case basis, the plaintiffs retain the right to challenge the release.

2. Motion of the PSC to Expedite Discovery (220)

Argument - GRANTED with oral reasons given. The Court will not restrict the parties on discovery on a general basis, but the Court will entertain specific objections on specific matters. However, before making objections to the Court, the parties should meet and confer on these issues.

JS10:  :55