# EXHIBIT "E"



30992305

May  7 2010
1:25PM

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION

**THIS DOCUMENT RELATES TO
CASE NO. 2:09cv-07628**

_____/

MDL DOCKET: 2047
SECTION:  L

JUDGE FALLON
MAG. JUDGE WILKINSON

TAYLOR MORRISON SERVICES, INC., a
foreign corporation, and TAYLOR
WOODROW COMMUNITIES AT
VASARI, LLC, a Florida limited liability
company,

       Defendants/Crossclaim Plaintiffs,

v.

KNAUF GIPS KG, a German corporation,
KNAUF PLASTERBOARD (TIANJIN) CO.,
LTD., a Chinese limited liability corporation,
BANNER SUPPLY CO., a Florida
corporation, RESIDENTIAL DRYWALL,
INC., a Florida corporation, NU WAY
DRYWALL, LLC, a Florida limited liability
company, FLORIDA STYLE SERVICES,
INC., a Florida corporation,

       Crossclaim Defendants,

COTHERN CONSTRUCTION COMPANY,
a Florida corporation,

       Third-Party Defendant,

_____/

**CROSSCLAIM OF TAYLOR MORRISON SERVICES, INC.**
**F/K/A MORRISON HOMES, INC. AND CROSSCLAIM AND THIRD-PARTY**
**CLAIM OF TAYLOR WOODROW COMMUNITIES AT VASARI, L.L.C.**

Defendants/Crossclaimants, TAYLOR MORRISON SERVICES, INC. f/k/a MORRISON HOMES, INC. ("**Taylor Morrison**") and TAYLOR WOODROW COMMUNITIES AT VASARI, L.L.C. ("**Taylor Woodrow**") (collectively, the "**Taylor Plaintiffs**"), hereby sue Crossclaim Defendants KNAUF GIPS KG, a German Corporation, ("**Knauf Gips**"), KNAUF PLASTERBOARD (TIANJIN) CO., LTD., a Chinese limited liability corporation, ("**Knauf Tianjin**"), BANNER SUPPLY CO., a Florida Corporation, ("**Banner**"), Taylor Morrison also crossclaim against NU WAY DRYWALL, LLC, a Florida limited liability company ("**Nu Way**"), RESIDENTIAL DRYWALL, INC. ("**Residential**"), and FLORIDA STYLE SERVICES, INC. ("**Florida Style**").   Taylor Woodrow also hereby sues Third-Party Defendant, Cothern Construction Company ("**Cothern**").   The Taylor Plaintiffs allege as follows:

**The Parties, Jurisdiction and Venue**

1.     This is within the original jurisdiction of the United States District Court, Eastern District of Louisiana, and pursuant to 28 U.S.C. §§ 1332(d) and 1367, as set forth in the Omnibus Complaint (I), paragraphs 1 and 2 of which are incorporated herein.

2.     Venue is proper by virtue of and as set forth in the Omnibus Complaint (I), paragraph 3 of which is incorporated herein.

3.     Taylor Morrison is a Delaware corporation with a principal place of business in Scottsdale, Arizona, authorized to do and doing business in the State of Florida.

4.      Taylor Woodrow is a Florida limited liability company with a principal place of business in Tampa, Florida.

5.     The Taylor Plaintiffs are affiliates of Taylor Morrison, Inc., one of the nation's leading builders of quality homes.

6.     The Taylor Plaintiffs are developers of homes.

7.     Crossclaim Defendant Knauf Gips is a German corporation doing business in the State of Louisiana.  Knauf Gips is a leading manufacturer of building materials and systems. Knauf Gips, together with its affiliates, including Knauf Tianjin, provides building materials and systems to customers in over 50 countries, including the United States.  Upon information and belief, at all material times hereto, Knauf Gips supervised, operated, trained and otherwise exercised control and/or had the right to control the operations of Knauf Tianjin, and its agents, apparent agents, and employees.

8.     Among other things, in 1995, Knauf Gips introduced its advanced production techniques and technology into China. From 1997 through 2001, Knauf Gips invested in China and established three plasterboard plants which are located in Tianjin, Wuhu, and Dongguan. The product quality of all Knauf Gips' plants in China, including Knauf Tianjin, are strictly controlled according to the requirements of Knauf Gips' headquarters in Germany.  Moreover, Knauf Gips' sales and technical support teams support Knauf Gips' businesses throughout the world, including Knauf Tianjin in China. Knauf Tianjin and its employees are the actual and/or apparent agents of Knauf Gips.

9.     Upon information and belief, Knauf Gips, together with its affiliates and/or actual or apparent agents, including Knauf Tianjin, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within the states of Louisiana and Florida.  Upon information and belief, Knauf Gips and/or Knauf Tianjin has continuously and

3

systematically distributed and sold drywall to numerous purchasers in the states of Louisiana and Florida and their drywall is installed in numerous homes in Louisiana and Florida. As discussed more fully below, Knauf Gips and/or Knauf Tianjin manufactured and sold, directly and indirectly, to certain suppliers in the states of Louisiana and Florida, including Crossclaim Defendant Banner, defective gypsum drywall that was installed, by, among others, Nu Way, Florida Style, Residential and Cothern, in homes being built by the Taylor Plaintiffs, thereby causing substantial damage to the Taylor Plaintiffs in Florida and subjecting the Taylor Plaintiffs to suit in Florida and Louisiana. Moreover, Knauf Gips and/or Knauf Tianjin purposefully availed themselves of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State of Louisiana and by hiring agents within the State of Louisiana to investigate the very allegations at issue in this lawsuit.

10. Crossclaim Defendant Knauf Tianjin is a Chinese corporation doing business in the State of Louisiana. Knauf Tianjin is involved in the manufacturing and sale of gypsum drywall. Knauf Tianjin is the actual agent and/or apparent agent of Knauf Gips. Upon information and belief, Knauf Tianjin, individually and/or together with and at the direction and control of its principal, Knauf Gips, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within the states of Louisiana and Florida.

11. This Court has personal jurisdiction over Knauf Gips and Knauf Tianjin by virtue of their acceptance of service of the Omnibus Complaint and their appearance in this case.

12. Crossclaim Defendant Banner is a Florida corporation, having its principal place of business in Miami-Dade County, Florida.

13.     Crossclaim Defendant Nu Way is a Florida limited liability company conducting business as a construction contractor in the State of Florida, having its principal place of business in Bradenton, Manatee County, Florida.

14.     Crossclaim Defendant Residential is a Florida corporation conducting business as a construction contractor in the State of Florida, having its principal place of business in Tampa, Hillsborough County, Florida.

15.     Crossclaim Defendant Florida Style is a Florida corporation conducting business as a construction contractor in the State of Florida, having its principal place of business in Punta Gorda, Charlotte County, Florida.

16.     Third-Party Defendant Cothern is a Florida corporation conducting business as a construction contractor in the State of Florida, having its principal place of business in Port Charlotte, Charlotte County, Florida.

17.     The Taylor Plaintiffs' have retained the law firm of Sivyer Barlow & Watson, P.A., to represent them in this action, and have agreed to pay the firm its reasonable attorneys' fees and costs.  The Taylor Plaintiffs have and will continue to incur fees and costs in bringing this action and defending the original action.

18.     All conditions precedent to bringing this action have been waived, excused, performed, or have otherwise occurred.

## General Allegations

19.     In connection with the construction of homes in the State of Florida, the Taylor Plaintiffs entered into subcontract agreements with Nu Way, Residential, Florida Style, and Cothern (collectively, the "**Installers**") for the installation of gypsum drywall in certain homes, including, but not limited to, those of Plaintiffs, Christine and Robert Akers, Patrick Dinitto and

Hevanilson Magalhaes, Larry and Rene Galvin, Allan Neumann, Jim Tarzy, Robert and Maria Hay, Jason and Shanique Herbert, and Grant and Kathryn Reid (together, "**Plaintiffs**").

20.     In performing the subcontracts, the Installers purchased gypsum drywall, either directly or indirectly, from various suppliers, including, but without limitation, Crossclaim Defendant Banner.

21.     Upon information and belief, Banner purchased, directly and/or indirectly, gypsum drywall that was manufactured in China by Knauf Gips and Knauf Tianjin (collectively, the "**Manufacturers**"), and possibly other unknown Chinese manufacturers.

22.     Because of the Taylor Plaintiffs' commitment to delivering quality, value and service, the Taylor Plaintiffs monitor every repair request in all of their homes.  The Taylor Plaintiffs received complaints regarding noxious smells and HVAC system problems in certain of the homes constructed by the Taylor Plaintiffs.  As a result, the Taylor Plaintiffs began an extensive investigation into the source of the problem.

23.     Through this extensive investigation, the Taylor Plaintiffs discovered that certain gypsum drywall installed in certain homes, including, but not limited to, the Plaintiffs' homes, (the "**Affected Homes**") had a latent defect.

24.     The defective drywall in the Affected Homes was provided and installed by, among others, the Installers, who, in turn, had purchased the defective drywall from, among others, Banner.  Upon information and belief, Banner received the defective drywall directly or indirectly from the Manufacturers, who manufactured the defective drywall in China.

25.     Through scientific testing and analysis, the Taylor Plaintiffs' learned that the drywall, because of its defective nature, appears to be interacting with other conditions and elements, causing damage to other property within the Affected Homes, including, but not

limited to, HVAC coils, certain electrical and plumbing components, and other affected materials and items, including personal property (collectively, the "**Other Property**").  This corrosion and damage is observable as a black surface accumulation on the Other Property.

26.     The Taylor Plaintiffs' further determined through, among other methods, electron microscopy, that the corrosion of HVAC coils in the Affected Homes was occurring to the point that the copper surface of the HVAC coil had pitted deeply enough to cause holes in the coil, which in turn caused the coils to fail.  This breakthrough explained the unusual number of HVAC system problems the Affected Homes had experienced.

27.     The Taylor Plaintiffs have also undertaken an intensive effort to notify and engage all responsible parties, demanding that they commit to doing precisely what the Taylor Plaintiffs have committed to doing for their homeowners -- standing behind their products.

28.      All named defendants with whom the Taylor Plaintiffs have communicated have refused to take responsibility.   The Taylor Plaintiffs, on the other hand, have accepted responsibility and stand behind their homes and homeowners.  Many homes have already been repaired.

29.     At the same time, the Taylor Plaintiffs stand alongside their homeowners as victims of the Manufacturers, Banner, and the Installers, who allowed this defective drywall to be manufactured, supplied, and installed in the Affected Homes.  The Taylor Plaintiffs remain committed to fully rectifying these problems and otherwise addressing their homeowners' concerns and the real harm that this defective drywall has caused them.  Indeed, the Taylor Plaintiffs have already begun the expensive and time-consuming process of repairing many of the Affected Homes.  The Taylor Plaintiffs have already temporarily relocated some of their homeowners so that they can remove and replace all of the defective gypsum drywall and repair

or replace the Other Property and other materials and items damaged as a result of the defective drywall. In order to repair or replace the Other Property, the Taylor Plaintiffs have also been forced to remove other building materials from the Affected Homes, including certain defective and non-defective gypsum drywall.

30.     While many of their homeowners have praised the Taylor Plaintiffs' proactive response and commitment, the defective drywall has caused substantial damage to the Taylor Plaintiffs' goodwill and business reputation. As a direct result of the manufacture, supply, and installation of defective gypsum drywall by the Defendants, the Taylor Plaintiffs have also suffered additional economic damages which include, but are not limited to: the cost to fully repair the Affected Homes, which includes replacing the defective gypsum drywall and repairing and replacing the damage to the Other Property in the Affected Homes as a result of the deficient and defective gypsum drywall; all costs incurred by the Taylor Plaintiffs in relocating their homeowners to suitable temporary housing facilities while the Affected Homes are undergoing such repairs; all costs of moving and storing the personal property of the homeowners during the repair process; payments to homeowners for Other Property damaged by the defective gypsum drywall; and attorneys' fees, expert fees and costs incurred in defending the claims against them and in bringing this action.

### COUNT I
### (Against Knauf Gips for Vicarious Liability)

31.     The Taylor Plaintiffs reassert and reallege the allegations in paragraphs 1 through 30 above as if fully set forth herein.

32.     This is an action by the Taylor Plaintiffs for vicarious liability against Knauf Gips for the negligent and wrongful acts of its actual and/or apparent agent, Knauf Tianjin.

33. Knauf Gips was responsible for introducing its advanced production technology into China, and for establishing Knauf Tianjin in China. Knauf Gips exercises strict control over Knauf Tianjin's operations, and is responsible for implementing and supervising the quality control measures to be used by Knauf Tianjin. Indeed, the product quality of all Knauf Gips' plants in China, including Knauf Tianjin, are strictly controlled according to the requirements of Knauf Gips' headquarters in Germany.

34. By establishing Knauf Tianjin in China, and by exercising strict control over Knauf Tianjin's conduct and operations, Knauf Gips acknowledged that Knauf Tianjin would act on its behalf as its actual and/or apparent agent.

35. Knauf Tianjin accepted the undertaking to act on Knauf Gips' behalf.

36. Upon information and belief, Knauf Gips supervises, monitors, and controls Knauf Tianjin's daily conduct and operations, including the manufacturing, distribution, marketing, and sale of Knauf Tianjin's drywall products. Moreover, upon information and belief, Knauf Gips is responsible for establishing, implementing, supervising, and maintaining the quality control mechanisms utilized by Knauf Tianjin.

37. As such, Knauf Gips is vicariously liable for all of the damages caused by the negligent and wrongful conduct of its actual and/or apparent agent, Knauf Tianjin. As a result of Knauf Gips' and/or Knauf Tianjin's wrongful conduct, the Taylor Plaintiffs have been damaged. These damages include, but are not limited to, the cost to fully repair the Affected Homes, which includes replacing the defective gypsum drywall and repairing and replacing the damage to the Other Property in the Affected Homes as a result of the deficient and defective gypsum drywall. These damages also include all costs incurred by the Taylor Plaintiffs in relocating their homeowners to suitable temporary housing facilities and moving and storing their personal

property while the Affected Homes are undergoing such repairs, payment for damage to Other Property, as well as damages for loss of goodwill and reputation, and attorneys' fees, expert fees and costs incurred in defending the claims against them and in bringing this action.

WHEREFORE, the Taylor Plaintiffs demand judgment for damages against Knauf Gips in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

## COUNT II
### (Against Knauf Gips and Knauf Tianjin for Common Law Indemnity)

38.     The Taylor Plaintiffs reassert and reallege the allegations in paragraphs 1 through 30 above as if fully set forth herein.

39.     This is an action by the Taylor Plaintiffs for common law indemnity against Knauf Gips and Knauf Tianjin.

40.     Knauf Gips and/or Knauf Tianjin manufactured the defective gypsum drywall that was installed in certain of the Affected Homes.

41.     The deficient and defective gypsum drywall manufactured by Knauf Gips and/or Knauf Tianjin has caused damage to Other Property within the Affected Homes.

42.     Because of the defective drywall installed in the Affected Homes, the Taylor Plaintiffs have been forced to undertake an expensive and time consuming process to thoroughly and completely repair the Affected Homes, which includes replacing the defective gypsum drywall and repairing or replacing the Other Property and other materials damaged as a result of the defective drywall.

43.     The Taylor Plaintiffs have incurred and will continue to incur monetary damages resulting from the repair and replacement of defective drywall and Other Property in the Affected Homes.

44.     The Taylor Plaintiffs are entirely without fault for the damage to the Affected Homes and Other Property.

45.     As the manufacturers of the defective gypsum drywall, Knauf Gips and/or Knauf Tianjin are wholly at fault and responsible for all damages resulting from the defective gypsum drywall.

46.     As a result of Knauf Gips' and/or Knauf Tianjin's wrongful conduct, the Taylor Plaintiffs have been damaged.  These damages include, but are not limited to, the cost to fully repair the Affected Homes, which includes replacing the defective gypsum drywall and repairing and replacing the damage to the Other Property in the Affected Homes as a result of the deficient and defective gypsum drywall. These damages also include all costs incurred by the Taylor Plaintiffs in relocating their homeowners to suitable temporary housing facilities and moving and storing their personal property while the Affected Homes are undergoing such repairs, payment for damage to Other Property, as well as damages for loss of goodwill and reputation, and attorneys' fees, expert fees and costs incurred in defending the claims against them and in bringing this action.

47.     Because the Taylor Plaintiffs, through no fault of their own, are vicariously, constructively, derivatively, or technically responsible -- and unlike Knauf Gips and/or Knauf Tianjin have already taken responsibility -- for the defective gypsum drywall manufactured by Knauf Gips and/or Knauf Tianjin and installed in the Affected Homes, a special relationship exists between the Taylor Plaintiffs and Knauf Gips and/or Knauf Tianjin pursuant to which the Taylor Plaintiffs have the right to be indemnified for all damages sustained as a result of Knauf Gips' and/or Knauf Tianjin's defective gypsum drywall, including all attorneys' fees and costs incurred in connection with this lawsuit.

11

WHEREFORE, the Taylor Plaintiffs demand judgment against Knauf Gips and/or Knauf Tianjin for damages in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

### COUNT III
### (Against Knauf Gips and Knauf Tianjin for Strict Liability)

48.     The Taylor Plaintiffs reassert and reallege the allegations in paragraphs 1 through 30 above as if fully set forth herein.

49.     This is an action by the Taylor Plaintiffs for strict liability in tort against Knauf Gips and Knauf Tianjin.

50.     Knauf Gips and/or Knauf Tianjin manufactured the defective gypsum drywall that was installed in certain of the Affected Homes.

51.     The defective gypsum drywall manufactured by Knauf Gips and/or Knauf Tianjin is defective because it has caused damages to Other Property in the Affected Homes.

52.     Knauf Gips and/or Knauf Tianjin expected the defective gypsum drywall to reach the Affected Homes without substantial change affecting its condition, and the defective gypsum drywall did in fact reach the Affected Homes without substantial change affecting that condition.

53.     The defective gypsum drywall manufactured by Knauf Gips and/or Knauf Tianjin directly and proximately caused damage to the Other Property in the Affected Homes including, but not limited to, copper HVAC coils, certain electrical and plumbing components, and other affected materials and items.

54.     As a result, the Taylor Plaintiffs have been damaged. These damages include, but are not limited to, the cost to fully repair the Affected Homes, which includes replacing the defective gypsum drywall and repairing and replacing the damage to the Other Property in the Affected Homes as a result of the deficient and defective gypsum drywall. These damages also

12

include all costs incurred by the Taylor Plaintiffs in relocating their homeowners to suitable temporary housing facilities and moving and storing their personal property while the Affected Homes are undergoing such repairs, payment for damage to Other Property, as well as damages for loss of goodwill and reputation, and attorneys' fees, expert fees and costs incurred in defending the claims against them and in bringing this action.

WHEREFORE, the Taylor Plaintiffs demand judgment for damages against Knauf Gips and/or Knauf Tianjin in an amount to be determined at trial, plus attorneys' fees and costs and for such further and other relief as the Court deems just and proper.

## COUNT IV
### (Against Knauf Gips and Knauf Tianjin for Negligence)

55. The Taylor Plaintiffs reassert and reallege the allegations in paragraphs 1 through 30 above as if fully set forth herein.

56. This is an action by the Taylor Plaintiffs for negligence against Knauf Gips and Knauf Tianjin.

57. Knauf Gips and/or Knauf Tianjin manufactured the defective gypsum drywall that was installed in certain of the Affected Homes.

58. The Taylor Plaintiffs were foreseeable users of the gypsum drywall being manufactured, distributed, and sold by Knauf Gips and/or Knauf Tianjin. As such, Knauf Gips and/or Knauf Tianjin owed a duty to the Taylor Plaintiffs to exercise reasonable care in the manufacture, distribution, and sale of gypsum drywall and to ensure that the gypsum drywall was free of defects.

59. Knauf Gips and/or Knauf Tianjin breached this duty by negligently manufacturing, distributing, and selling gypsum drywall that was defective, and failing to warn its customers that the drywall was defective. Moreover, Knauf Gips and/or Knauf Tianjin failed

13

to implement proper quality control mechanisms for detecting defects in the gypsum drywall they were manufacturing, distributing, and selling.

60.     The defective gypsum drywall negligently manufactured by Knauf Gips and/or Knauf Tianjin directly and proximately caused damage to the Other Property in the Affected Homes including, but not limited to, copper HVAC coils, certain electrical and plumbing components, and other affected materials and items.

61.     As a result, the Taylor Plaintiffs have been damaged.  These damages include, but are not limited to, the cost to fully repair the Affected Homes, which includes replacing the defective gypsum drywall and repairing and replacing the damage to the Other Property in the Affected Homes as a result of the deficient and defective gypsum drywall. These damages also include all costs incurred by the Taylor Plaintiffs in relocating their homeowners to suitable temporary housing facilities and moving and storing their personal property while the Affected Homes are undergoing such repairs, payment for damage to Other Property, as well as damages for loss of goodwill and reputation, and attorneys' fees, expert fees and costs incurred in defending the claims against them and in bringing this action.

WHEREFORE, the Taylor Plaintiffs demand judgment for damages against Knauf Gips and/or Knauf Tianjin in an amount to be determined at trial, plus attorneys' fees and costs and for such further and other relief as the Court deems just and proper.

### COUNT V
### (Against Knauf Gips and Knauf Tianjin for Equitable Subrogation)

62.     The Taylor Plaintiffs reassert and reallege the allegations in paragraphs 1 through 30 above as if fully set forth herein.

63.     This is an action for equitable subrogation against Knauf Gips and Knauf Tianjin.

64.     The Taylor Plaintiffs have and continue to repair Affected Homes and repair and replace Other Property damaged by defective gypsum drywall manufactured by Knauf Gips and/or Knauf Tianjin in order to protect the Taylor Plaintiffs from, among other things, exposure to further and additional claims for damages.

65.     The Taylor Plaintiffs are not primarily liable for the damages suffered by the owners of the Affected Homes and Other Property or for the costs and damages incurred in repairing the Affected Homes and repairing and replacing Other Property.  Rather, as the manufacturer of the defective gypsum drywall, Knauf Gips and/or Knauf Tianjin should ultimately be held responsible for the damages caused by their product.

66.     The Taylor Plaintiffs have not voluntarily made any repairs to Affected Homes nor voluntarily made payments for replaced or repaired Other Property.

67.     By repairing the Affected Homes and making payments for or repairing and replacing Other Property, the Taylor Plaintiffs have entirely resolved the property damage claim of each homeowner for whom repair work has been completed, for which the Taylor Plaintiffs seek equitable relief herein.

68.     The equitable subrogation sought herein would not work any injustice to the rights of any third party.

69.     Based upon the foregoing, the Taylor Plaintiffs are entitled to equitably subrogate against Knauf Gips and Knauf Tianjin for damages incurred as a result of the defective gypsum drywall manufactured by Knauf Gips and/or Knauf Tianjin.  These damages include, but are not limited to, the cost to fully repair the Affected Homes, which includes replacing the defective gypsum drywall and repairing and replacing the damage to the Other Property in the Affected Homes as a result of the deficient and defective gypsum drywall. These damages also include all

costs incurred by the Taylor Plaintiffs in relocating their homeowners to suitable temporary housing facilities and moving and storing their personal property while the Affected Homes are undergoing such repairs, payment for damage to Other Property, as well as damages for loss of goodwill and reputation, and attorneys' fees, expert fees and costs incurred in defending the claims against them and in bringing this action.

WHEREFORE, the Taylor Plaintiffs demand judgment for damages against Knauf Gips and Knauf Tianjin in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

## COUNT VI
### (Against Knauf Gips and Knauf Tianjin for Contribution)

70.     The Taylor Plaintiffs reassert and reallege the allegations in paragraphs 1 through 30 above as if fully set forth herein.

71.     This is an action, in the alternative, for contribution against Knauf Gips and Knauf Tianjin.

72.     The Taylor Plaintiffs did not intentionally, willfully, or wantonly cause or contribute to the Plaintiffs' injuries.

73.     To the extent the Taylor Plaintiffs are called on to pay more than their pro rata share of the common liability, the Taylor Plaintiffs seek to recover from Knauf Gips and Knauf Tianjin for the amounts paid by the Taylor Plaintiffs in excess of their pro rata share.

WHEREFORE, the Taylor Plaintiffs demand judgment for damages against Knauf Gips and Knauf Tianjin in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

## COUNT VII
### (Against Banner for Breach of the Implied Warranty of Merchantability
### Under Common Law and/or Florida Statute Section 672.314)

74.     The Taylor Plaintiffs reassert and reallege the allegations in paragraphs 1 through 30 above as if fully set forth herein.

75.     This is an action by the Taylor Plaintiffs against Banner for breach of the implied warranty of merchantability under the common law and/or Florida Statute § 672.314.

76.     Banner is a merchant of gypsum drywall.

77.     The Installers entered into contracts with Banner to purchase gypsum drywall that was to be installed in the Affected Homes.

78.     The Taylor Plaintiffs are intended third party beneficiaries of those contracts because it was the clear and manifest intent of the Installers and Banner that the contracts were to primarily and directly benefit the Taylor Plaintiffs.

79.     Pursuant to Florida Statutes Section 672.314 and/or common law, Banner warranted that the gypsum drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used.

80.     Banner breached the implied warranty of merchantability by selling certain gypsum drywall that was defective and not reasonably fit for the ordinary purpose for which gypsum drywall is used.

81.     Specifically, certain of the drywall supplied by Banner and installed in the Affected Homes is defective because it has caused damage to Other Property in the Affected Homes.

82.     Banner has been timely notified of the defective gypsum drywall, but Banner has failed to repair or replace the defective gypsum drywall.

83.     As a result of Banner's breaches of the implied warranty of merchantability, the Taylor Plaintiffs have been damaged.  These damages include, but are not limited to, the cost to fully repair the Affected Homes, which includes replacing the defective gypsum drywall and repairing and replacing the damage to the Other Property in the Affected Homes as a result of the deficient and defective gypsum drywall. These damages also include all costs incurred by the Taylor Plaintiffs in relocating their homeowners to suitable temporary housing facilities and moving and storing their personal property while the Affected Homes are undergoing such repairs, payment for damage to Other Property, as well as damages for loss of goodwill and reputation, and attorneys' fees, expert fees and costs incurred in defending the claims against them and in bringing this action.

WHEREFORE, the Taylor Plaintiffs demand judgment for damages against Banner in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

### COUNT VIII
### (Against Banner for Breach of the Implied Warranty of Fitness for a
### Particular Purpose Under Common Law and/or Florida Statute Section 672.315)

84.     The Taylor Plaintiffs reassert and reallege the allegations in paragraphs 1 through 30 above as if fully set forth herein.

85.     This is an action by the Taylor Plaintiffs against Banner for breach of the implied warranty of fitness for a particular purpose under the common law and/or Florida Statutes § 672.315.

86.     Banner is a supplier of gypsum drywall.

87.     The Installers entered into contracts with Banner to purchase gypsum drywall that was to be installed in the Affected Homes.

88.     The Taylor Plaintiffs are intended third party beneficiaries of those contracts because it was the clear and manifest intent of the Installers and Banner that the contracts were to primarily and directly benefit the Taylor Plaintiffs.

89.     At the time Banner entered into the contracts with the Installers, Banner had reason to know that the Installers were purchasing gypsum drywall for the particular purpose of being installed in homes being built by the Taylor Plaintiffs, including the Affected Homes, and that the Installers were relying on Banner's skill and judgment to select and furnish to the Installers gypsum drywall that was suitable for this particular purpose.

90.     The Installers relied on Banner's judgment in furnishing to the Installers gypsum drywall that was suitable for the particular purpose of being installed in the Affected Homes.

91.     Pursuant to Florida Statutes § 672.315 and/or common law, Banner warranted that the gypsum drywall was fit for the particular purpose of being installed in the Affected Homes.

92.     Banner breached the implied warranty of fitness for a particular purpose by selling certain gypsum drywall that was defective and not fit for the particular purpose of being installed in homes, including the Affected Homes.

93.     Specifically, certain of the drywall supplied by Banner and installed in the Affected Homes is defective because it has caused damage to Other Property in the Affected Homes.

94.     The Taylor Plaintiffs timely notified Banner of the defective gypsum drywall, but Banner has failed to repair or replace the defective gypsum drywall.

95.     As a result of Banner's breaches of the implied warranty of fitness for a particular purpose, the Taylor Plaintiffs have been damaged.  These damages include, but are not limited to, the cost to fully repair the Affected Homes, which includes replacing the defective gypsum

drywall and repairing and replacing the damage to the Other Property in the Affected Homes as a result of the deficient and defective gypsum drywall. These damages also include all costs incurred by the Taylor Plaintiffs in relocating their homeowners to suitable temporary housing facilities and moving and storing their personal property while the Affected Homes are undergoing such repairs, payment for damage to Other Property, as well as damages for loss of goodwill and reputation, and attorneys' fees, expert fees and costs incurred in defending the claims against them and in bringing this action.

WHEREFORE, the Taylor Plaintiffs demand judgment for damages against Banner in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

## COUNT IX
## (Against Banner for Strict Liability)

96.     The Taylor Plaintiffs reassert and reallege the allegations in paragraphs 1 through 30 above as if fully set forth herein.

97.     This is an action by the Taylor Plaintiffs for strict liability in tort against Banner.

98.     The defective gypsum drywall installed in the Affected Homes was supplied by, among other suppliers, Banner.

99.     The defective gypsum drywall supplied by Banner is defective because it has caused damage to Other Property in the Affected Homes.

100.     Banner expected the defective gypsum drywall to reach the Affected Homes without substantial change affecting its condition, and the defective gypsum drywall did in fact reach the Affected Homes without substantial change affecting that condition.

101.    The defective gypsum drywall supplied by Banner directly and proximately caused damage to the Other Property in the Affected Homes including, but not limited to, copper HVAC coils, certain electrical and plumbing components, and other affected materials and items.

102.    As a result, the Taylor Plaintiffs have been damaged.  These damages include, but are not limited to, the cost to fully repair the Affected Homes, which includes replacing the defective gypsum drywall and repairing and replacing the damage to the Other Property in the Affected Homes as a result of the deficient and defective gypsum drywall. These damages also include all costs incurred by the Taylor Plaintiffs in relocating their homeowners to suitable temporary housing facilities and moving and storing their personal property while the Affected Homes are undergoing such repairs, payment for damage to Other Property, as well as damages for loss of goodwill and reputation, and attorneys' fees, expert fees and costs incurred in defending the claims against them and in bringing this action.

WHEREFORE, the Taylor Plaintiffs demand judgment for damages against Banner in an amount to be determined at trial, plus attorneys' fees and costs and for such further and other relief as the Court deems just and proper.

## COUNT X
### (Against Banner for Common Law Indemnity)

103.    The Taylor Plaintiffs reassert and reallege the allegations in paragraphs 1 through 30 above as if fully set forth herein.

104.    This is an action by the Taylor Plaintiffs for common law indemnity against Banner.

105.    Banner sold and supplied the defective gypsum drywall that was installed in certain of the Affected Homes.

21

106.    The deficient and defective gypsum drywall sold and supplied by Banner has caused damage to Other Property within the Affected Homes.

107.    Because of the defective drywall installed in the Affected Homes, the Taylor Plaintiffs have been forced to undertake an expensive and time consuming process to thoroughly and completely repair the Affected Homes, which includes replacing the defective gypsum drywall and repairing or replacing the Other Property and other materials damaged as a result of the defective drywall.

108.    The Taylor Plaintiffs have incurred and will continue to incur monetary damages from the repair and replacement of defective drywall and Other Property in the Affected Homes.

109.    The Taylor Plaintiffs are entirely without fault for the damage to the Affected Homes and Other Property.

110.    As seller and supplier of the defective gypsum drywall, Banner is wholly at fault and responsible for all damages resulting from the defective gypsum drywall.

111.    As a result of Banner's wrongful conduct, the Taylor Plaintiffs have been damaged.  These damages include, but are not limited to, the cost to fully repair the Affected Homes, which includes replacing the defective gypsum drywall and repairing and replacing the damage to the Other Property in the Affected Homes as a result of the deficient and defective gypsum drywall. These damages also include all costs incurred by the Taylor Plaintiffs in relocating their homeowners to suitable temporary housing facilities and moving and storing their personal property while the Affected Homes are undergoing such repairs, payment for damage to Other Property, as well as damages for loss of goodwill and reputation, and attorneys' fees, expert fees and costs incurred in defending the claims against them and in bringing this action.

112.    Because the Taylor Plaintiffs, through no fault of their own, are vicariously, constructively, derivatively, or technically responsible -- and unlike Banner have already taken responsibility -- for the defective gypsum drywall sold and supplied by Banner and installed in the Affected Homes, and because Banner sold and supplied the defective gypsum drywall knowing that it was to be used in the Affected Homes, a special relationship exists between the Taylor Plaintiffs and Banner pursuant to which the Taylor Plaintiffs have the right to be indemnified for all damages sustained as a result of Banner's defective gypsum drywall, including all attorneys' fees and costs incurred in connection with this lawsuit.

WHEREFORE, the Taylor Plaintiffs demand judgment against Banner for damages in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

## COUNT XI
### (Against Banner for Equitable Subrogation)

113.    The Taylor Plaintiffs reassert and reallege the allegations in paragraphs 1 through 30 above as if fully set forth herein.

114.    This is an action for equitable subrogation against Banner.

115.    The Taylor Plaintiffs have and continue to repair Affected Homes and repair and replace Other Property damaged by defective gypsum drywall supplied by Banner in order to protect the Taylor Plaintiffs from, among other things, exposure to further and additional claims for damages.

116.    The Taylor Plaintiffs are not primarily liable for the damages suffered by the owners of the Affected Homes and Other Property or for the costs and damages incurred in repairing the Affected Homes and repairing and replacing Other Property.  Rather, as the

supplier of the defective gypsum drywall, Banner should ultimately be held responsible for the damages caused by the product it supplied.

117.    The Taylor Plaintiffs have not voluntarily made any repairs to Affected Homes nor voluntarily made payments for replaced or repaired Other Property.

118.    By repairing the Affected Homes and making payments for or repairing and replacing Other Property, the Taylor Plaintiffs have entirely resolved the property damage claim of each homeowner for whom repair work has been completed, for which the Taylor Plaintiffs seek equitable relief herein.

119.    The equitable subrogation sought herein would not work any injustice to the rights of any third party.

120.    Based upon the foregoing, the Taylor Plaintiffs are entitled to equitably subrogate against Banner for damages incurred as a result of the defective gypsum drywall supplied by Banner.  These damages include, but are not limited to, the cost to fully repair the Affected Homes, which includes replacing the defective gypsum drywall and repairing and replacing the damage to the Other Property in the Affected Homes as a result of the deficient and defective gypsum drywall. These damages also include all costs incurred by the Taylor Plaintiffs in relocating their homeowners to suitable temporary housing facilities and moving and storing their personal property while the Affected Homes are undergoing such repairs, payment for damage to Other Property, as well as damages for loss of goodwill and reputation, and attorneys' fees, expert fees and costs incurred in defending the claims against them and in bringing this action.

WHEREFORE, the Taylor Plaintiffs demand judgment for damages against Banner in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

**COUNT XII**
**(Against Banner for Contribution)**

121.    The Taylor Plaintiffs reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

122.    This is an action, in the alternative, for contribution against Banner.

123.    The Taylor Plaintiffs did not intentionally, willfully, or wantonly cause or contribute to the Plaintiffs' injuries.

124.    To the extent the Taylor Plaintiffs are called on to pay more than their pro rata share of the common liability, the Taylor Plaintiffs seek to recover from Banner for the amounts paid by the Taylor Plaintiffs in excess of their pro rata share.

WHEREFORE, the Taylor Plaintiffs demand judgment for damages against Banner in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

**COUNT XIII**
**(Against Nu Way for Breach of Contract)**

125.    Taylor Morrison reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

126.    This is an action by Taylor Morrison for breach of contract against Nu Way.

127.    In connection with the construction of certain Affected Homes in the State of Florida, Taylor Morrison entered into a Subcontract Agreement with Nu Way on or about March 9, 2006 (the "**Nu Way Agreement**").  A copy of the Nu Way Agreement is attached hereto as Exhibit "A" and incorporated herein.

128.    The Nu Way Agreement governs Nu Way's installation of gypsum drywall in the homes in which it performed work, some of which are at issue in this lawsuit, during the time period for which the Nu Way performed work under the Nu Way agreement.

129.    The Nu Way Agreement specifies Nu Way's obligations with respect to the performance and quality of the work in those homes.

130.    The March 9, 2006 Nu Way Agreement states:

1.    Work

    (a)    Subcontractor shall perform the work described above at the Project in accordance with the Plans and Specifications attached hereto as Exhibit "A" and the Trade Specifications/Scope of work attached hereto as Exhibit "B" (the Documents)… The Work shall be performed in strict compliance with this Subcontract Agreement and the Documents.  In addition to complying with the Documents, the Work shall also comply with all applicable building codes, laws, regulations and standards, including, but not limited to, all applicable OSHA, FHA, VA, and City standards.  Subcontractor shall furnish all labor, materials, tools, equipment and services needed to properly perform the Work in a sound, professional, and high quality manner.

    (b)    Subcontractor shall perform all labor in a good and professional manner, according to standard practice in this area, and warrants that all labor done and any materials furnished by Subcontractor will meet or exceed FHA minimum property standards, VA minimum requirements, and all applicable building code requirements, notwithstanding the provisions of the plans and specifications provided by Morrison.

***

    (j)    Subcontractor will use the materials specified in the Documents and will not make substitutions without the express written consent of Morrison.  If Subcontractor believes other materials will be more appropriate, or if Subcontractor is not able to obtain the materials specified, then Subcontractor will give prompt written notice to Morrison.   If exact specifications are not given,

26

Subcontractor will request clarification from Morrison.  In all events, Subcontractor will use new, high quality materials.  All Work shall be performed by qualified tradespersons.  Morrison reserves the right to reject any materials which do not, in Morrison's opinion, comply with the terms of the Agreement.  All materials shall be installed in accordance with manufacturer's specifications.

*** 

Exhibit "B" – Scope of Work

B.   All work performed under this subcontract shall be in accordance with the model homes, other production units, plans, Morrison Homes specifications, and safety guidelines, OSHA regulations, FHA and VA Minimum Property Standards, local municipalities and/or governmental agencies, State of Florida codes, ordinances and statutes, the specifications hereinafter set forth and any standard production.

C.   **SPECIFICATIONS**

1.   All drywall installed at the interior of the home shall be ½" regular board on walls, ½" high strength ceiling board, or 5/8" on ceilings, per local code requirement.  All tub/showers surrounds shall have Dens shield on wall behind the tile areas.  Lanai ceilings to be 5/8 exterior soffit board.  All installation shall be performed in accordance with the stated codes, ordinances and statutes listed in Paragraph "B."  All gypsum board shall be manufactured by U.S. Gypsum, Gold Bond or equal as approved in writing by the contractor.

*** 

Nu Way Agreement, ¶ 1 and Exhibit "B."

131.   The Nu Way Agreement also contains express warranties pursuant to which Nu Way guaranteed all the work to be performed and all the materials to be furnished under the Nu Way Agreement against defects in material or workmanship.  Specifically, the express warranties in the Nu Way Agreement provide, in pertinent part:

*** 

27

11. Subcontractor represents, warrants and covenants that the Work shall be of high quality, fit for the purpose for which intended and shall fully comply with the other requirements of this Agreement. Subcontractor shall promptly repair any Work which does not conform to these requirements and shall be responsible for any damage to other property or other expenses arising because of a defect in the Work. This warranty of materials and workmanship shall extend for a period equal to the greater of 2 year(s) from the date on which a housing unit constructed hereunder closes escrow with Morrison's buyer. This warranty shall be in addition to, and not in limitation of, any other rights Morrison has under this Agreement or law.

*** 

Nu Way Agreement, ¶11.

132.  Although Nu Way agreed to install drywall manufactured by U.S. Gypsum, Gold Bond, or an equivalent, and warranted that the materials furnished under the Nu Way Agreement were of high quality and fit for the purpose for which intended, the gypsum drywall provided and installed by Nu Way in certain of the homes was in fact deficient and defective and in breach of the Nu Way Agreement.

133.  Specifically, the drywall provided and installed by Nu Way in certain of the homes was not manufactured by U.S. Gypsum, Gold Bond or an equivalent, and is defective because it has caused damage to Other Property in the homes (the "**Affected Nu Way Homes**").

134.  Upon discovery of the defective drywall, Taylor Morrison notified Nu Way of the defects and demanded that Nu Way repair or replace the defective drywall and the damage to the Other Property in the Affected Nu Way Homes in accordance with the Nu Way Agreement.

135.  Nu Way, however, has failed to honor its contractual obligation to repair and replace the defective drywall and the damage to the Other Property in the Affected Nu Way Homes.

136.     Based on the foregoing, Nu Way has breached the Nu Way Agreement by, among other things, (i) installing deficient and defective gypsum drywall, (ii) installing gypsum drywall from a manufacturer other than U.S. Gypsum, Gold Bond, or an equivalent, and (iii) failing and refusing to correct, repair, or replace the deficient and defective work as required by the Nu Way Agreement.

137.     As a result of Nu Way's breaches of the Nu Way Agreement, Taylor Morrison has been damaged.  These damages include, but are not limited to, the costs of fully repairing the Affected Nu Way Homes, which includes replacing the defective gypsum drywall and repairing or replacing the damage to the Other Property in the Affected Nu Way Homes as a result of the deficient and defective gypsum drywall.  These damages also include all costs incurred by Taylor Morrison in relocating its homeowners to suitable temporary housing facilities while the Affected Nu Way Homes are undergoing such repairs, including storage fees, and payment for damage to Other Property, as well as damages for loss of goodwill and reputation, and attorneys' fees, expert fees and costs incurred in defending the claims against it and in bringing this action.

138.     Pursuant to the Nu Way Agreement, Taylor Morrison is entitled to recover from Nu Way any and all loss, damage or expense, directly or indirectly suffered as a result of such failures by Nu Way, including attorneys' fees and costs.  Nu Way further agreed to:

***

9.     **Indemnification**

(a)     Subcontractor shall indemnify, hold harmless and defend Morrison, its officers, directors, employees, agents, shareholders and affiliates from and against all claims, costs, losses, damages, liability and expense (including but not limited to all fees and charges of engineers, architect, attorneys and other professionals and all dispute resolution costs) (all of the foregoing a "Claim'') resulting or rising or alleged to arise from any and all injuries or death of any person or damage to any property

29

> resulting from any act or omission or neglect of Subcontractor, its subcontractors or suppliers or their employees, agents, guests, or affiliates regardless of whether caused in part by a person or entity indemnified hereunder, provided that Subcontractor shall not be responsible to an indemnified person for any Claim arising solely from the negligence of that indemnified person. Morrison may, at its option, offset amounts due from Subcontractor under this provision against any amounts due to Subcontractor from Morrison.

Nu Way Agreement ¶ 9(a).

WHEREFORE, Taylor Morrison demands judgment for damages against Nu Way in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

## COUNT XIV
## (Against Nu Way for Breach of Express Warranty)

139.    Taylor Morrison reasserts and realleges the allegations in paragraphs 1 through 30 and 127 through 138 above as if fully set forth herein.

140.    This is an action by Taylor Morrison for breach of express warranty against Nu Way.

141.    As discussed more fully above, the Nu Way Agreement contains an express warranty pursuant to which Nu Way agreed:

***

> 11. Subcontractor represents, warrants and covenants that the Work shall be of high quality, fit for the purpose for which intended and shall fully comply with the other requirements of this Agreement. Subcontractor shall promptly repair any Work which does not conform to these requirements and shall be responsible for any damage to other property or other expenses arising because of a defect in the Work. This warranty of materials and workmanship shall extend for a period equal to the greater of 2 year(s) from the date on which a housing unit constructed hereunder closes escrow with

30

> Morrison's buyer. This warranty shall be in addition to, and not in limitation of, any other rights Morrison has under this Agreement or law.

Nu Way Agreement, ¶11.

142.    Additionally, as set forth above, Nu Way expressly warranted that the drywall provided and installed by Nu Way pursuant to the Nu Way Agreement would be manufactured by U.S. Gypsum, Gold Bond or an equivalent.

143.    Taylor Morrison relied on the express warranties in approving the Nu Way Agreement and allowing Nu Way to install gypsum drywall in the homes.

144.    Nu Way breached its express warranties by providing and installing non-conforming, deficient, and defective gypsum drywall in the Affected Nu Way Homes.

145.    Taylor Morrison timely notified Nu Way of the non-conforming, deficient, and defective gypsum drywall, but Nu Way has failed to honor its contractual obligation to repair or replace the defective gypsum drywall.

146.    As a result of Nu Way's breaches of the express warranties, Taylor Morrison has been damaged.  These damages include, but are not limited to, the costs of fully repairing the Affected Nu Way Homes, which includes replacing the non-conforming, deficient, and defective gypsum drywall and repairing or replacing the damage to the Other Property in the Affected Nu Way Homes as a result of the non-conforming, deficient, and defective gypsum drywall.  These damages also include all costs incurred by Taylor Morrison in relocating its homeowners to suitable temporary housing facilities while the Affected Nu Way Homes are undergoing such repairs, including storage fees, and payment for damage to Other Property, damages for loss of goodwill and reputation, and attorneys' fees, expert fees and costs incurred in defending the claims against it and in bringing this action.

WHEREFORE, Taylor Morrison demands judgment for damages against Nu Way in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

## COUNT XV
### (Against Nu Way for Breach of Implied Warranty)

147.    The Taylor Morrison reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

148.    This is an action by Taylor Morrison for breach of implied warranty against Nu Way.

149.    Nu Way, as the installer of the defective drywall in the Affected Nu Way Homes, warranted to Taylor Morrison that the drywall was reasonably fit for its ordinary use and fit for the particular purpose of being installed in the Affected Homes.

150.    Taylor Morrison relied on these implied warranties in allowing Nu Way to provide and install drywall in the Affected Nu Way Homes.

151.    Nu Way breached its implied warranties to Taylor Morrison by providing and installing deficient and defective gypsum drywall in the Affected Nu Way Homes.  The defective gypsum drywall is not fit for the particular purpose of being installed in the Affected Nu Way Homes, nor is it reasonably fit for the general purpose for which gypsum drywall is used.

152.    Taylor Morrison timely notified Nu Way of the defective gypsum drywall, but Nu Way has failed to honor its contractual obligation to repair or replace the defective gypsum drywall.

153.    As a result of Nu Way's breaches of the implied warranties, Taylor Morrison has been damaged.  These damages include, but are not limited to, the costs of fully repairing the Affected Nu Way Homes, which includes replacing the defective gypsum drywall and repairing

or replacing the damage to the Other Property in the Affected Nu Way Homes as a result of the deficient and defective gypsum drywall. These damages also include all costs incurred by Taylor Morrison in relocating its homeowners to suitable temporary housing facilities while the Affected Nu Way Homes are undergoing such repairs, including storage fees, and payment for damage to Other Property, damages for loss of goodwill and reputation, and attorneys' fees, expert fees and costs incurred in defending the claims against it and in bringing this action.

WHEREFORE, Taylor Morrison demands judgment for damages against Nu Way in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

### COUNT XVI
### (Against Nu Way for Contractual Indemnity)

154.    Taylor Morrison reasserts and realleges the allegations in paragraphs 1 through 30 and 127 through 138 above as if fully set forth herein.

155.    This is an action by Taylor Morrison for contractual indemnity against Nu Way.

156.    As set forth above, Nu Way has a contractual obligation to indemnify Taylor Morrison. More specifically, the Nu Way Agreement states:

***

9.    Indemnification

(a) Subcontractor shall indemnify, hold harmless and defend Morrison, its officers, directors, employees, agents, shareholders and affiliates from and against all claims, costs, losses, damages, liability and expense (including but not limited to all fees and charges of engineers, architect, attorneys and other professionals and all dispute resolution costs) (all of the foregoing a "Claim'') resulting or rising or alleged to arise from any and all injuries or death of any person or damage to any property resulting from any act or omission or neglect of Subcontractor, its subcontractors or suppliers or their employees, agents, guests, or affiliates regardless of

> whether caused in part by a person or entity indemnified hereunder, provided that Subcontractor shall not be responsible to an indemnified person for any Claim arising solely from the negligence of that indemnified person. Morrison may, at its option, offset amounts due from Subcontractor under this provision against any amounts due to Subcontractor from Morrison.

Nu Way Agreement ¶ 9(a).

157.    Numerous claims have been made against Taylor Morrison and costs, losses, damages, and expenses suffered by Taylor Morrison as a result of the defective drywall provided and installed by Nu Way in the Affected Nu Way Homes.

158.    Taylor Morrison timely notified Nu Way of the claims, costs, losses, damages, and expenses being incurred by Taylor Morrison, but Nu Way has failed to honor its contractual obligation to indemnify Taylor Morrison.

159.    As a result of Nu Way's breaches of its contractual obligation to indemnify Taylor Morrison, Taylor Morrison has been damaged.  These damages include, but are not limited to, the costs of fully repairing the Affected Nu Way Homes, which includes replacing the defective gypsum drywall and repairing or replacing the damage to the Other Property in the Affected Nu Way Homes as a result of the deficient and defective gypsum drywall.  These damages also include all costs incurred by Taylor Morrison in relocating its homeowners to suitable temporary housing facilities while the Affected Nu Way Homes are undergoing such repairs, including storage fees, and payment for damage to Other Property, damages for loss of goodwill and reputation, and attorneys' fees, expert fees and costs incurred in defending the claims against it and in bringing this action.

WHEREFORE, Taylor Morrison demands judgment for damages against Nu Way in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

## COUNT XVII
### (Against Nu Way for Common Law Indemnity)

160.     Taylor Morrison reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

161.     This is an action by Taylor Morrison for common law indemnity against Nu Way.

162.     Nu Way supplied and installed the defective gypsum drywall in the Affected Nu Way Homes.

163.     The deficient and defective gypsum drywall supplied and installed by Nu Way has caused damage to Other Property within the Affected Nu Way Homes.

164.     Because of the defective drywall installed in the Affected Nu Way Homes, Taylor Morrison has been forced to undertake an expensive and time consuming process to thoroughly and completely repair the Affected Nu Way Homes, which includes replacing the defective gypsum drywall and repairing or replacing the Other Property and other materials damaged as a result of the defective drywall.

165.     Taylor Morrison has incurred and will continue to incur monetary damages from the repair and replacement of defective drywall and Other Property in the Affected Nu Way Homes.

166.     Taylor Morrison is entirely without fault for the damage to the Affected Nu Way Homes and Other Property.

167.     As supplier and installer of the defective gypsum drywall, Nu Way is wholly at fault and responsible for all damages resulting from the defective gypsum drywall.

168.     As a result of Nu Way's wrongful conduct, Taylor Morrison has been damaged. These damages include, but are not limited to, the cost to fully repair the Affected Nu Way Homes, which includes replacing the defective gypsum drywall and repairing and replacing the

damage to the Other Property in the Affected Nu Way Homes as a result of the deficient and defective gypsum drywall.  These damages also include all costs incurred by Taylor Morrison in relocating its homeowners to suitable temporary housing facilities while the Affected Nu Way Homes are undergoing such repairs, including storage fees, and payment for damage to Other Property, as well as damages for loss of goodwill and reputation and attorneys' fees, expert fees and costs incurred in defending the claims against it and in bringing this action.

169.    Because Taylor Morrison, through no fault of its own, is vicariously, constructively, derivatively, or technically responsible -- and unlike Nu Way has already taken responsibility -- for the defective gypsum drywall supplied and installed by Nu Way in the Affected Nu Way Homes, and because Nu Way supplied and installed the defective gypsum drywall knowing that Taylor Morrison was relying on Nu Way to supply and install gypsum drywall that was free of defects, a special relationship exists between Taylor Morrison and Nu Way pursuant to which Taylor Morrison has the right to be indemnified for all damages sustained as a result of Nu Way's defective gypsum drywall, including all attorneys' fees and costs incurred in connection with this lawsuit.

WHEREFORE, Taylor Morrison demands judgment against Nu Way for damages in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

## COUNT XVIII
### (Against Nu Way for Equitable Subrogation)

170.    Taylor Morrison reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

171.    This is an action for equitable subrogation by Taylor Morrison against Nu Way.

172.    Taylor Morrison has and continues to repair Affected Homes and repair and replace Other Property damaged by defective gypsum drywall installed by Nu Way in order to protect Taylor Morrison from, among other things, exposure to further and additional claims for damages.

173.    Taylor Morrison is not primarily liable for the damages suffered by the owners of the Affected Homes and Other Property or for the costs and damages incurred in repairing the Affected Homes and repairing and replacing Other Property.   Rather, as the installer of the defective gypsum drywall, Nu Way should ultimately be held responsible for the damages caused by the product it installed.

174.    Taylor Morrison has not voluntarily made any repairs to Affected Homes nor voluntarily made payments for replaced or repaired Other Property.

175.    By repairing the Affected Homes and making payments for or repairing and replacing Other Property, Taylor Morrison has entirely resolved the property damage claim of each homeowner for whom repair work has been completed, for which Taylor Morrison seeks equitable relief herein.

176.    The equitable subrogation sought herein would not work any injustice to the rights of any third party.

177.    Based upon the foregoing, Taylor Morrison is entitled to equitably subrogate against Nu Way for damages incurred as a result of the defective gypsum drywall installed by Nu Way.   These damages include, but are not limited to, the cost to fully repair the Affected Homes, which includes replacing the defective gypsum drywall and repairing and replacing the damage to the Other Property in the Affected Homes as a result of the deficient and defective gypsum drywall.   These damages also include all costs incurred by Taylor Morrison in relocating its

homeowners to suitable temporary housing facilities while the Affected Homes are undergoing such repairs, including storage fees, and payment for damage to Other Property, as well as damages for loss of goodwill and reputation and attorneys' fees, expert fees and costs incurred in defending the claims against it and in bringing this action.

WHEREFORE, Taylor Morrison demands judgment for damages against Nu Way in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

### COUNT XIX
### (Against Nu Way for Contribution)

178.    Taylor Morrison reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

179.    This is an action by Taylor Morrison, in the alternative, for contribution against Nu Way.

180.    Taylor Morrison did not intentionally, willfully, or wantonly cause or contribute to the Plaintiffs' injuries.

181.    To the extent Taylor Morrison is called on to pay more than its pro rata share of the common liability, Taylor Morrison seeks to recover from Nu Way for the amounts paid by Taylor Morrison in excess of its pro rata share.

WHEREFORE, Taylor Morrison demands judgment for damages against Nu Way in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

### COUNT XX
### (Against Florida Style for Breach of Contract)

182.    Taylor Morrison reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

183.   This is an action by Taylor Morrison for breach of contract against Florida Style.

184.   In connection with the construction of certain homes in the State of Florida, Taylor Morrison entered into a Subcontract Agreement with Florida Style on or about April 20, 2006 (the "**Florida Style Agreement**").   A copy of the Florida Style Agreement is attached hereto as Exhibit "B" and incorporated herein.

185.   The Florida Style Agreement governs Florida Style's installation of gypsum drywall in the homes in which it performed work, during the time period for which Florida Style performed work under the Florida Style Agreement.

186.   The Florida Style Agreement specifies Florida Style's obligations with respect to the performance and quality of the work in those homes.

187.   The April 20, 2006 Florida Style Agreement states:

1.   **Work**

(a)   Subcontractor shall perform the work described above at the Project in accordance with the Plans and Specifications attached hereto as Exhibit "A" and the Trade Specifications/Scope of work attached hereto as Exhibit "B" (the Documents)… The Work shall be performed in strict compliance with this Subcontract Agreement and the Documents.  In addition to complying with the Documents, the Work shall also comply with all applicable building codes, laws, regulations and standards, including, but not limited to, all applicable OSHA, FHA, VA, and City standards.  Subcontractor shall furnish all labor, materials, tools, equipment and services needed to properly perform the Work in a sound, professional, and high quality manner.

(b)   Subcontractor shall perform all labor in a good and professional manner, according to standard practice in this area, and warrants that all labor done and any materials furnished by Subcontractor will meet or exceed FHA minimum property standards, VA minimum requirements, and all applicable building code requirements, notwithstanding the provisions of the plans and specifications provided by Morrison.

\*\*\*

(j)   Subcontractor will use the materials specified in the Documents and will not make substitutions without the express written consent of Morrison.   If Subcontractor believes other materials will be more appropriate, or if Subcontractor is not able to obtain the materials specified, then Subcontractor will give prompt written notice to Morrison.    If exact specifications are not given, Subcontractor will request clarification from Morrison. In all events, Subcontractor will use new, high quality materials.   All Work shall be performed by qualified tradespersons.   Morrison reserves the right to reject any materials which do not, ~~in Morrison's opinion,~~ comply with the terms of the Agreement.   All materials shall be installed in accordance with manufacturer's specifications.

Florida Style Agreement, ¶ 1.

188.    The Florida Style Agreement also contains express warranties pursuant to which Florida Style guaranteed all the work to be performed and all the materials to be furnished under the Florida Style Agreement against defects in material or workmanship.   Specifically, the express warranties in the Florida Style Agreement provide, in pertinent part:

\*\*\*

5.   Warranty.

Contractor shall perform all labor in a workmanlike manner, according to standard practice in this area, but in any event, meeting all manufacturers installation instructions and warrants that all labor done and any materials furnished by Contractor will meet or exceed FHA minimum property standards, VA minimum requirement, and all applicable building code requirements, notwithstanding the provisions of the ~~plans and specifications~~ [Bid Prints] provided by Morrison.  Subcontractor represents, warrants, and covenants that the Work shall be, of high, quality, fit for the purpose for which intended and shall fully comply with the other requirements of this Agreement.  Contractor further warrants all labor and material furnished by him to be free of defect for a period of at ~~least two (2)~~ [one (1)] years from the date of the Deed conveying the property from Morrison to the ~~ultimate~~

40

> purchaser.   Contractor shall furnish all warranties and/or
> guarantees by manufacturers ~~on appliances and equipment~~ and
> shall further furnish all certificates required by any
> municipality and/or VA and/or FHA. This warranty shall be in
> addition to, and not in limitation of, any other rights Morrison
> has under this Agreement or law.

<div align="center">***</div>

Florida Style Agreement , ¶5.

189.   Although Florida Style warranted that the materials furnished under the Florida Style Agreement were of good quality and free of defects, the gypsum drywall provided and installed by Florida Style in certain of the homes was in fact deficient and defective.

190.   Specifically, the drywall provided and installed by Florida Style in certain of the homes is defective because it has caused damage to Other Property in the homes (the "**Affected Florida Style Homes**").

191.   Upon discovery of the defective drywall, Taylor Morrison notified Florida Style of the defects and demanded that Florida Style repair or replace the defective drywall and the damage to the Other Property in the Affected Florida Style Homes in accordance with the Florida Style Agreement.

192.   Florida Style, however, has failed to honor its contractual obligation to repair and replace the defective drywall and the damage to the Other Property in the Affected Florida Style Homes.

193.   Based on the foregoing, Florida Style has breached the Florida Style Agreement by, among other things, (i) installing deficient and defective gypsum drywall, and (ii) failing and refusing to correct, repair, or replace the deficient and defective work as required by the Florida Style Agreement.

194.    As a result of Florida Style's breaches of the Florida Style Agreement, Taylor Morrison has been damaged.  These damages include, but are not limited to, the costs of fully repairing the Affected Florida Style Homes, which includes replacing the defective gypsum drywall and repairing or replacing the damage to the Other Property in the Affected Florida Style Homes as a result of the deficient and defective gypsum drywall.  These damages also include all costs incurred by Taylor Morrison in relocating its homeowners to suitable temporary housing facilities while the Affected Florida Style Homes are undergoing such repairs, including storage fees, and payment for damage to Other Property, as well as damages for loss of goodwill and reputation and attorneys' fees, expert fees and costs incurred in defending the claims against it and in bringing this action.

195.    Pursuant to the Florida Style Agreement, Taylor Morrison is entitled to recover from Florida Style any and all loss, damage or expense, directly or indirectly suffered by Taylor Morrison for such failure by Florida Style, including attorneys' fees and costs.  Florida Style further agreed to:

*** 

10. <u>Indemnity</u>.

(a) Subcontractor shall indemnify, hold harmless and defend Morrison, its officers, directors, employees, agents, shareholders and affiliates from and against all claims, costs, losses, damages, liability and expense (including but not limited to all fees and charges of engineers, architect, attorneys and other professionals and all dispute resolution costs) (all of the foregoing a "Claim") resulting or rising or alleged to arise from any and all injuries or death of any person or damage to any property resulting from any act or omission or neglect of Subcontractor, its subcontractors or suppliers or their employees, agents, guests, or affiliates regardless of whether caused in part by a person or entity indemnified hereunder, provided that Subcontractor shall, not be responsible to an indemnified person for any Claim arising solely from the negligence

42

> of that indemnified person.  Morrison may, at its option,
> offset amounts due from Subcontractor under this
> provision against an) amounts due to Subcontractor from
> Morrison.

Florida Style Agreement ¶ 10.

WHEREFORE, Taylor Morrison demands judgment for damages against Florida Style in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

### COUNT XXI
### (Against Florida Style for Breach of Express Warranty)

196.    Taylor Morrison reasserts and realleges the allegations in paragraphs 1 through 30 and 184 through 195 above as if fully set forth herein.

197.    This is an action by Taylor Morrison for breach of express warranty against Florida Style.

198.    As discussed more fully above, the Florida Style Agreement contain an express warranty pursuant to which Florida Style agreed:

<div align="center">***</div>

5.    <u>Warranty</u>.

> Contractor shall perform all labor in a workmanlike manner,
> according to standard practice in this area, but in any event,
> meeting all manufacturers installation instructions and
> warrants that all labor done and any materials furnished by
> Contractor will meet or exceed FHA minimum property
> standards, VA minimum requirement, and all applicable
> building code requirements, notwithstanding the provisions of
> the ~~plans and specifications~~ [Bid Prints] provided by
> Morrison.  Subcontractor represents, warrants, and covenants
> that the Work shall be, of high, quality, fit for the purpose for
> which intended and shall fully comply with the other
> requirements of this Agreement.  Contractor further warrants
> all labor and material furnished by him to be free of defect for
> a period of at ~~least two (2)~~ [one (1)] years from the date of the
> Deed conveying the property from Morrison to the ~~ultimate~~

> purchaser.   Contractor shall furnish all warranties and/or guarantees by manufacturers ~~on appliances and equipment~~ and shall further furnish all certificates required by any municipality and/or VA and/or FHA. This warranty shall be in addition to, and not in limitation of, any other rights Morrison has under this Agreement or law.

<p align="center">***</p>

Florida Style Agreement , ¶5.

199.   Taylor Morrison relied on the express warranty in approving the Florida Style Agreement and allowing Florida Style to install gypsum drywall in the homes.

200.   Florida Style breached its express warranty by providing and installing deficient and defective gypsum drywall in the Affected Florida Style Homes.

201.   Taylor Morrison timely notified Florida Style of the defective gypsum drywall, but Florida Style has failed to honor its contractual obligation to repair or replace the defective gypsum drywall.

202.   As a result of Florida Style's breaches of the express warranty, Taylor Morrison has been damaged.  These damages include, but are not limited to, the costs of fully repairing the Affected Florida Style Homes, which includes replacing the defective gypsum drywall and repairing or replacing the damage to the Other Property in the Affected Florida Style Homes as a result of the deficient and defective gypsum drywall. These damages also include all costs incurred by Taylor Morrison in relocating its homeowners to suitable temporary housing facilities while the Affected Florida Style Homes are undergoing such repairs, including storage fees, and payment for damage to Other Property, damages for loss of goodwill and reputation, and attorneys' fees, expert fees and costs incurred in defending the claims against it and in bringing this action.

WHEREFORE, Taylor Morrison demands judgment for damages against Florida Style in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

## COUNT XXII
### (Against Florida Style for Breach of Implied Warranty)

203.    Taylor Morrison reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

204.    This is an action by Taylor Morrison for breach of implied warranty against Florida Style.

205.    Florida Style, as the installer of the defective drywall in the Affected Florida Style Homes, warranted to Taylor Morrison that the drywall was reasonably fit for its ordinary use and fit for the particular purpose of being installed in the Affected Florida Style Homes.

206.    Taylor Morrison relied on these implied warranties in allowing Florida Style to provide and install drywall in the Affected Florida Style Homes.

207.    Florida Style breached its implied warranties to Taylor Morrison by providing and installing deficient and defective gypsum drywall in the Affected Florida Style Homes.  The defective gypsum drywall is not fit for the particular purpose of being installed in the Affected Florida Style Homes, nor is it reasonably fit for the general purpose for which gypsum drywall is used.

208.    Taylor Morrison timely notified Florida Style of the defective gypsum drywall, but Florida Style has failed to honor its contractual obligation to repair or replace the defective gypsum drywall.

209.    As a result of Florida Style's breaches of the implied warranties, Taylor Morrison has been damaged.  These damages include, but are not limited to, the costs of fully repairing the

Affected Florida Style Homes, which includes replacing the defective gypsum drywall and repairing or replacing the damage to the Other Property in the Affected Florida Style Homes as a result of the deficient and defective gypsum drywall.  These damages also include all costs incurred by Taylor Morrison in relocating its homeowners to suitable temporary housing facilities while the Affected Florida Style Homes are undergoing such repairs, including storage fees, and payment for damage to Other Property, damages for loss of goodwill and reputation, and attorneys' fees, expert fees and costs incurred in defending the claims against it and in bringing this action.

WHEREFORE, Taylor Morrison demands judgment for damages against Florida Style in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

## COUNT XXIII
### (Against Florida Style for Contractual Indemnity)

210.    Taylor Morrison reasserts and realleges the allegations in paragraphs 1 through 30 and 184 through 195 above as if fully set forth herein.

211.    This is an action by Taylor Morrison for contractual indemnity against Florida Style.

212.    As set forth above, Florida Style has a contractual obligation to indemnify Taylor Morrison.  More specifically, the Florida Style Agreement states:

***

10.  Indemnity.

(a)  Subcontractor shall indemnify, hold harmless and defend Morrison, its officers, directors, employees, agents, shareholders and affiliates from and against all claims, costs, losses, damages, liability and expense (including but not limited to all fees and charges of engineers, architect, attorneys and other professionals and all dispute

46

resolution costs) (all of the foregoing a "Claim") resulting or rising or alleged to arise from any and all injuries or death of any person or damage to any property resulting from any act or omission or neglect of Subcontractor, its subcontractors or suppliers or their employees, agents, guests, or affiliates regardless of whether caused in part by a person or entity indemnified hereunder, provided that Subcontractor shall, not be responsible to an indemnified person for any Claim arising solely from the negligence of that indemnified person. Morrison may, at its option, offset amounts due from Subcontractor under this provision against an) amounts due to Subcontractor from Morrison.

Florida Style Agreement, ¶ 10.

213.    Numerous claims have been made against Taylor Morrison and costs, losses, damages, and expenses suffered by Taylor Morrison as a result of the defective drywall provided and installed by Florida Style in the Affected Florida Style Homes.

214.    Taylor Morrison timely notified Florida Style of the claims, costs, losses, damages, and expenses being incurred by Taylor Morrison, but Florida Style has failed to honor its contractual obligation to indemnify Taylor Morrison.

215.    As a result of Florida Style's breaches of its contractual obligation to indemnify Taylor Morrison, Taylor Morrison has been damaged.  These damages include, but are not limited to, the costs of fully repairing the Affected Florida Style Homes, which includes replacing the defective gypsum drywall and repairing or replacing the damage to the Other Property in the Affected Florida Style Homes as a result of the deficient and defective gypsum drywall.  These damages also include all costs incurred by Taylor Morrison in relocating its homeowners to suitable temporary housing facilities while the Affected Florida Style Homes are undergoing such repairs, including storage fees, and payment for damage to Other Property, damages for loss of goodwill and reputation, and attorneys' fees, expert fees and costs incurred in defending the claims against it and in bringing this action.

WHEREFORE, Taylor Morrison demands judgment for damages against Florida Style in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

<div align="center">

**COUNT XXIV**
**(Against Florida Style for Common Law Indemnity)**

</div>

216.    Taylor Morrison reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

217.    This is an action by Taylor Morrison for common law indemnity against Florida Style.

218.    Florida Style supplied and installed the defective gypsum drywall in certain of the Affected Homes.

219.    The deficient and defective gypsum drywall supplied and installed by Florida Style has caused damage to Other Property within the Affected Florida Style Homes.

220.    Because of the defective drywall installed in the Affected Florida Style Homes, Taylor Morrison has been forced to undertake an expensive and time consuming process to thoroughly and completely repair the Affected Florida Style Homes, which includes replacing the defective gypsum drywall and repairing or replacing the Other Property and other materials damaged as a result of the defective drywall.

221.    Taylor Morrison has incurred and will continue to incur monetary damages from the repair and replacement of defective drywall and Other Property in the Affected Florida Style Homes.

222.    Taylor Morrison is entirely without fault for the damage to the Affected Florida Style Homes and Other Property.

<div align="center">48</div>

223.    As supplier and installer of the defective gypsum drywall, Florida Style is wholly at fault and responsible for all damages resulting from the defective gypsum drywall.

224.    As a result of Florida Style's wrongful conduct, Taylor Morrison has been damaged.  These damages include, but are not limited to, the cost to fully repair the Affected Florida Style Homes, which includes replacing the defective gypsum drywall and repairing and replacing the damage to the Other Property in the Affected Florida Style Homes as a result of the deficient and defective gypsum drywall.  These damages also include all costs incurred by Taylor Morrison in relocating its homeowners to suitable temporary housing facilities while the Affected Florida Style Homes are undergoing such repairs, including storage fees, and payment for damage to Other Property, as well as damages for loss of goodwill and reputation and attorneys' fees, expert fees and costs incurred in defending the claims against it and in bringing this action.

225.    Because Taylor Morrison, through no fault of its own, is vicariously, constructively, derivatively, or technically responsible -- and unlike Florida Style has already taken responsibility -- for the defective gypsum drywall supplied and installed by Florida Style in the Affected Florida Style Homes, and because Florida Style supplied and installed the defective gypsum drywall knowing that Taylor Morrison was relying on Florida Style to supply and install gypsum drywall that was free of defects, a special relationship exists between Taylor Morrison and Florida Style pursuant to which Taylor Morrison has the right to be indemnified for all damages sustained as a result of Florida Style's defective gypsum drywall, including all attorneys' fees and costs incurred in connection with this lawsuit.

WHEREFORE, Taylor Morrison demands judgment against Florida Style for damages in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

**COUNT XXV**
**(Against Florida Style for Equitable Subrogation)**

226.    Taylor Morrison reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

227.    This is an action for equitable subrogation by Taylor Morrison against Florida Style.

228.    Taylor Morrison has and continues to repair Affected Homes and repair and replace Other Property damaged by defective gypsum drywall installed by Florida Style in order to protect Taylor Morrison from, among other things, exposure to further and additional claims for damages.

229.    Taylor Morrison is not primarily liable for the damages suffered by the owners of the Affected Homes and Other Property or for the costs and damages incurred in repairing the Affected Homes and repairing and replacing Other Property.   Rather, as the installer of the defective gypsum drywall, Florida Style should ultimately be held responsible for the damages caused by the product it installed.

230.    Taylor Morrison has not voluntarily made any repairs to Affected Homes nor voluntarily made payments for replaced or repaired Other Property.

231.    By repairing the Affected Homes and making payments for or repairing and replacing Other Property, Taylor Morrison has entirely resolved the property damage claim of each homeowner for whom repair work has been completed, for which Taylor Morrison seeks equitable relief herein.

232.    The equitable subrogation sought herein would not work any injustice to the rights of any third party.

233.    Based upon the foregoing, Taylor Morrison is entitled to equitably subrogate against Florida Style for damages incurred as a result of the defective gypsum drywall installed by Florida Style.  These damages include, but are not limited to, the cost to fully repair the Affected Homes, which includes replacing the defective gypsum drywall and repairing and replacing the damage to the Other Property in the Affected Homes as a result of the deficient and defective gypsum drywall.  These damages also include all costs incurred by Taylor Morrison in relocating its homeowners to suitable temporary housing facilities while the Affected Homes are undergoing such repairs, including storage fees, and payment for damage to Other Property, as well as damages for loss of goodwill and reputation. and attorneys' fees, expert fees and costs incurred in defending the claims against it and in bringing this action.

WHEREFORE, Taylor Morrison demands judgment for damages against Florida Style in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

**COUNT XXVI**
**(Against Florida Style for Contribution)**

234.    Taylor Morrison reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

235.    This is an action, in the alternative, for contribution against Florida Style.

236.    Taylor Morrison did not intentionally, willfully, or wantonly cause or contribute to the Plaintiffs' injuries.

237.    To the extent Taylor Morrison is called on to pay more than its pro rata share of the common liability, Taylor Morrison seeks to recover from Florida Style for the amounts paid by Taylor Morrison in excess of its pro rata share.

WHEREFORE, Taylor Morrison demands judgment for damages against Florida Style in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

<div align="center">

**COUNT XXVII**
**(Against Residential for Breach of Contract)**

</div>

238.    Taylor Morrison reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

239.    This is an action by Taylor Morrison for breach of contract against Residential.

240.    In connection with the construction of homes in the State of Florida, Residential entered into a Subcontract Agreement on or about March 9, 2006 (the "**Residential Agreement**") to provide and install drywall in homes being built by Taylor Morrison.  A copy of the Residential Agreement is attached hereto as Exhibit "C" and incorporated herein.

241.    The Residential Agreement governs Residential's installation of gypsum drywall in all homes in which it performed work, including those being built by Taylor Morrison, some of which are at issue in this lawsuit, during the time period for which Residential performed work under the Residential Agreement.

242.    The Residential Agreement specifies Residential's obligations with respect to the performance and quality of the work in those homes.

243.    The March 9, 2006 Residential Agreement states:

1.   **Work**

    (a) Subcontractor shall perform the work described above at the Project in accordance with the Plans and

<div align="center">52</div>

Specifications attached hereto as Exhibit "A" and the Trade Specifications/Scope of work attached hereto as Exhibit "B" (the Documents)… The Work shall be performed in strict compliance with this Subcontract Agreement and the Documents. In addition to complying with the Documents, the Work shall also comply with all applicable building codes, laws, regulations and standards, including, but not limited to, all applicable OSHA, FHA, VA, and City standards. Subcontractor shall furnish all labor, materials, tools, equipment and services needed to properly perform the Work in a sound, professional, and high quality manner.

(b) Subcontractor shall perform all labor in a good and professional manner, according to standard practice in this area, and warrants that all labor done and any materials furnished by Subcontractor will meet or exceed FHA minimum property standards, VA minimum requirements, and all applicable building code requirements, notwithstanding the provisions of the plans and specifications provided by Morrison.

\*\*\*

(j) Subcontractor will use the materials specified in the Documents and will not make substitutions without the express written consent of Morrison. If Subcontractor believes other materials will be more appropriate, or if Subcontractor is not able to obtain the materials specified, then Subcontractor will give prompt written notice to Morrison. If exact specifications are not given, Subcontractor will request clarification from Morrison. In all events, Subcontractor will use new, high quality materials. All Work shall be performed by qualified tradespersons. Morrison reserves the right to reject any materials which do not, in Morrison's opinion, comply with the terms of the Agreement. All materials shall be installed in accordance with manufacturer's specifications.

\*\*\*

Exhibit "B" – Scope of Work

B. All work performed under this subcontract shall be in accordance with the model homes, other production units, plans, Morrison Homes specifications, and safety guidelines, OSHA regulations, FHA and VA Minimum

53

Property Standards, local municipalities and/or governmental agencies, State of Florida codes, ordinances and statutes, the specifications hereinafter set forth and any standard production.

C. **SPECIFICATIONS**

1. All drywall installed at the interior of the home shall be ½" regular board on walls, ½" high strength ceiling board, or 5/8" on ceilings, per local code requirement. All tub/showers surrounds shall have Dens shield on wall behind the tile areas. Lanai ceilings to be 5/8 exterior soffit board. All installation shall be performed in accordance with the stated codes, ordinances and statutes listed in Paragraph "B." All gypsum board shall be manufactured by U.S. Gypsum, Gold Bond or equal as approved in writing by the contractor.

Residential Agreement ¶ 1, and Exhibit "B."

244. The Residential Agreement also contain express warranties pursuant to which Residential guaranteed all the work to be performed and all the materials to be furnished under this Contract against defects in material or workmanship. Specifically, the express warranties provide, in pertinent part, in the Residential Agreement:

\*\*\*

11. Warranty

Subcontractor represents, warrants and covenants that the Work shall be of high quality, fit for the purpose for which intended and shall fully comply with the other requirements of this Agreement. Subcontractor shall promptly repair any Work which does not conform to these requirements and shall be responsible for any damage to other property or other expenses arising because of a defect in the Work. This warranty of materials and workmanship shall extend for a period equal to the greater of 2 year(s) from the date on which a housing unit constructed hereunder closes escrow with Morrison's buyer. This warranty shall be in addition to, and not in limitation of, any other rights Morrison has under this Agreement or law.

\*\*\*

Residential Agreement , ¶11.

245.    Although Residential agreed to install drywall manufactured by U.S. Gypsum, Gold Bond, or an equivalent, and warranted that the materials furnished under the Residential Agreement were of high quality and fit for the purpose for which intended, the gypsum drywall provided and installed by Residential in certain of the homes was in fact deficient and defective and in breach of the Residential Agreement.

246.    Specifically, the drywall provided and installed by Residential in certain of the homes was not manufactured by U.S. Gypsum, Gold Bond or an equivalent, and is defective because it has caused damage to Other Property in the homes (the "**Affected Residential Homes**").

247.    Upon discovery of the defective drywall, Taylor Morrison notified Residential of the defects and demanded that Residential repair or replace the defective drywall and the damage to the Other Property in the Affected Residential Homes in accordance with the Residential Agreement.

248.    Residential, however, has failed to honor its contractual obligation to repair and replace the defective drywall and the damage to the Other Property in the Affected Residential Homes.

249.    Based on the foregoing, Residential has breached the Residential Agreement by, among other things, (i) installing deficient and defective gypsum drywall, (ii) installing gypsum drywall from a manufacturer other than U.S. Gypsum, Gold Bond, or an equivalent, and (iii) failing and refusing to correct, repair, or replace the deficient and defective work as required by the Residential Agreement.

250.    As a result of Residential's breaches of the Residential Agreement, Taylor Morrison has been damaged.  These damages include, but are not limited to, the costs of fully repairing the Affected Residential Homes, which includes replacing the defective gypsum drywall and repairing or replacing the damage to the Other Property in the Affected Residential Homes as a result of the deficient and defective gypsum drywall.  These damages also include all costs incurred by Taylor Morrison in relocating its homeowners to suitable temporary housing facilities while the Affected Residential Homes are undergoing such repairs, including storage fees, and payment for damage to Other Property, as well as damages for loss of goodwill and reputation and attorneys' fees, expert fees and costs incurred in defending the claims against it and in bringing this action.

251.    Pursuant to the Residential Agreements, Taylor Morrison is entitled to recover from Residential any and all loss, damage or expense, directly or indirectly suffered by Contractor for such failure by Residential, including attorneys' fees and costs.  Residential further agreed to:

> 9.    <u>Indemnification</u>
>
>> (a)  Subcontractor shall indemnify, hold harmless and defend Morrison, its officers, directors, employees, agents, shareholders and affiliates from and against all claims, costs, losses, damages, liability and expense (including but not limited to all fees and charges of engineers, architect, attorneys and other professionals and all dispute resolution costs) (all of the foregoing a "Claim'') resulting or rising or alleged to arise from any and all injuries or death of any person or damage to any property resulting from any act or omission or neglect of Subcontractor, its subcontractors or suppliers or their employees, agents, guests, or affiliates regardless of whether caused in part by a person or entity indemnified hereunder, provided that Subcontractor shall not be responsible to an indemnified person for any Claim arising solely from the negligence of that indemnified person. Morrison may, at its option, offset amounts due

56

from Subcontractor under this provision against any
amounts due to Subcontractor from Morrison.

Residential Agreement ¶ 9(a).

WHEREFORE, Taylor Morrison demands judgment for damages against Residential in
an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other
relief as the Court deems just and proper.

## COUNT XXVIII
### (Against Residential for Breach of Express Warranty)

252.    Taylor Morrison reasserts and realleges the allegations in paragraphs 1 through 30
and 240 through 251 above as if fully set forth herein.

253.    This is an action by Taylor Morrison for breach of express warranty against
Residential.

254.    As discussed more fully above, the Residential Agreement contains an express
warranty pursuant to which Residential agreed:

<div align="center">***</div>

Subcontractor represents, warrants and covenants that the
Work shall be of high quality, fit for the purpose for which
intended and shall fully comply with the other requirements of
this Agreement. Subcontractor shall promptly repair any Work
which does not conform to these requirements and shall be
responsible for any damage to other property or other
expenses arising because of a defect in the Work. This
warranty of materials and workmanship shall extend for a
period equal to the greater of 2 year(s) from the date on which
a housing unit constructed hereunder closes escrow with
Morrison's buyer. This warranty shall be in addition to, and
not in limitation of, any other rights Morrison has under this
Agreement or law.

Residential Agreement, ¶11.

255.    Additionally, as set forth above, Residential expressly warranted that the drywall provided and installed by Residential pursuant to the Residential Agreement would be manufactured by U.S. Gypsum, Gold Bond or an equivalent.

256.    Taylor Morrison relied on the express warranties in approving the Residential Agreement and allowing Residential to install gypsum drywall in the Affected Residential Homes.

257.    Residential breached its express warranties by providing and installing non-conforming, deficient, and defective gypsum drywall in the Affected Residential Homes.

258.    Taylor Morrison timely notified Residential of the defective gypsum drywall, but Residential has failed to honor its contractual obligation to repair or replace the non-conforming, deficient, and defective gypsum drywall.

259.    As a result of Residential's breaches of the express warranty, Taylor Morrison has been damaged.  These damages include, but are not limited to, the costs of fully repairing the Affected Residential Homes, which includes replacing the non-conforming, deficient, and defective gypsum drywall and repairing or replacing the damage to the Other Property in the Affected Residential Homes as a result of the non-conforming, deficient, and defective gypsum drywall.  These damages also include all costs incurred by Taylor Morrison in relocating its homeowners to suitable temporary housing facilities while the Affected Residential Homes are undergoing such repairs, including storage fees, and payment for damage to Other Property, damages for loss of goodwill and reputation, and attorneys' fees, expert fees and costs incurred in defending the claims against it and in bringing this action.

WHEREFORE, Taylor Morrison demands judgment for damages against Residential in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief *as* the Court deems just and proper.

## COUNT XXIX
### (Against Residential for Breach of Implied Warranty)

260.    Taylor Morrison reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

261.    This is an action by Taylor Morrison for breach of implied warranty against Residential.

262.    Residential, as the installer of the defective drywall in the Affected Residential Homes, warranted to Taylor Morrison that the drywall was reasonably fit for its ordinary use and fit for the particular purpose of being installed in the Affected Residential Homes.

263.    Taylor Morrison relied on these implied warranties in allowing Residential to provide and install drywall in the Affected Residential Homes.

264.    Residential breached its implied warranties to Taylor Morrison by providing and installing deficient and defective gypsum drywall in the Affected Residential Homes.  The defective gypsum drywall is not fit for the particular purpose of being installed in the Affected Residential Homes, nor is it reasonably fit for the general purpose for which gypsum drywall is used.

265.    Taylor Morrison timely notified Residential of the defective gypsum drywall, but Residential has failed to honor its contractual obligation to repair or replace the defective gypsum drywall.

266.    As a result of Residential's breaches of the implied warranties, Taylor Morrison has been damaged.  These damages include, but are not limited to, the costs of fully repairing the

Affected Residential Homes, which includes replacing the defective gypsum drywall and repairing or replacing the damage to the Other Property in the Affected Residential Homes as a result of the deficient and defective gypsum drywall. These damages also include all costs incurred by Taylor Morrison in relocating its homeowners to suitable temporary housing facilities while the Affected Residential Homes are undergoing such repairs, including storage fees, and payment for damage to Other Property, damages for loss of goodwill and reputation, and attorneys' fees, expert fees and costs incurred in defending the claims against it and in bringing this action.

WHEREFORE, Taylor Morrison demands judgment for damages against Residential in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

## COUNT XXX
### (Against Residential for Contractual Indemnity)

267.   The Taylor Plaintiffs reasserts and realleges the allegations in paragraphs 1 through 30 and 240 through 251 above as if fully set forth herein.

268.   This is an action by Taylor Morrison for contractual indemnity against Residential.

269.   As set forth above, Residential has a contractual obligation to indemnify Taylor Morrison. More specifically, the Residential Agreement states:

*** 

9.   Indemnification

    (a)   Subcontractor shall indemnify, hold harmless and defend Morrison, its officers, directors, employees, agents, shareholders and affiliates from and against all claims, costs, losses, damages, liability and expense (including but not limited to all fees and charges of engineers, architect, attorneys and other professionals and all dispute

60

> resolution costs) (all of the foregoing a "Claim")
> resulting or rising or alleged to arise from any and all
> injuries or death of any person or damage to any property
> resulting from any act or omission or neglect of
> Subcontractor, its subcontractors or suppliers or their
> employees, agents, guests, or affiliates regardless of
> whether caused in part by a person or entity indemnified
> hereunder, provided that Subcontractor shall not be
> responsible to an indemnified person for any Claim
> arising solely from the negligence of that indemnified
> person. Morrison may, at its option, offset amounts due
> from Subcontractor under this provision against any
> amounts due to Subcontractor from Morrison.

Residential Agreement, ¶ 9.

270.    Numerous claims have been made against Taylor Morrison and costs, losses, damages, and expenses suffered by Taylor Morrison as a result of the defective drywall provided and installed by Residential in the Affected Residential Homes.

271.    Taylor Morrison timely notified Residential of the claims, costs, losses, damages, and expenses being incurred by Taylor Morrison, but Residential has failed to honor its contractual obligation to indemnify Taylor Morrison.

272.    As a result of Residential's breaches of its contractual obligation to indemnify Taylor Morrison, Taylor Morrison has been damaged.  These damages include, but are not limited to, the costs of fully repairing the Affected Residential Homes, which includes replacing the defective gypsum drywall and repairing or replacing the damage to the Other Property in the Affected Residential Homes as a result of the deficient and defective gypsum drywall.  These damages also include all costs incurred by Taylor Morrison in relocating its homeowners to suitable temporary housing facilities while the Affected Residential Homes are undergoing such repairs, including storage fees, and payment for damage to Other Property, damages for loss of goodwill and reputation, and attorneys' fees, expert fees and costs incurred in defending the claims against it.

WHEREFORE, Taylor Morrison demands judgment for damages against Residential in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

## COUNT XXXI
## (Against Residential for Common Law Indemnity)

273.     Taylor Morrison reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

274.     This is an action by Taylor Morrison for common law indemnity against Residential.

275.     Residential supplied and installed the defective gypsum drywall in the Affected Residential Homes.

276.     The deficient and defective gypsum drywall supplied and installed by Residential has caused damage to Other Property within the Affected Residential Homes.

277.     Because of the defective drywall installed in the Affected Residential Homes, Taylor Morrison has been forced to undertake an expensive and time consuming process to thoroughly and completely repair the Affected Residential Homes, which includes replacing the defective gypsum drywall and repairing or replacing the Other Property and other materials damaged as a result of the defective drywall.

278.     Taylor Morrison has incurred and will continue to incur monetary damages from the repair and replacement of defective drywall and Other Property in the Affected Residential Homes.

279.     Taylor Morrison is entirely without fault for the damage to the Affected Residential Homes and Other Property.

280.    As supplier and installer of the defective gypsum drywall, Residential is wholly at fault and responsible for all damages resulting from the defective gypsum drywall.

281.    As a result of Residential's wrongful conduct, Taylor Morrison has been damaged.  These damages include, but are not limited to, the cost to fully repair the Affected Residential Homes, which includes replacing the defective gypsum drywall and repairing and replacing the damage to the Other Property in the Affected Residential Homes as a result of the deficient and defective gypsum drywall.  These damages also include all costs incurred by Taylor Morrison in relocating its homeowners to suitable temporary housing facilities while the Affected Residential Homes are undergoing such repairs, including storage fees, and payment for damage to Other Property, as well as damages for loss of goodwill and reputation and attorneys' fees, expert fees and costs incurred in defending the claims against it and in bringing this action.

282.    Because Taylor Morrison, through no fault of its own, is vicariously, constructively, derivatively, or technically responsible -- and unlike Residential has already taken responsibility -- for the defective gypsum drywall supplied and installed by Residential in the Affected Residential Homes, and because Residential supplied and installed the defective gypsum drywall knowing that Taylor Morrison was relying on Residential to supply and install gypsum drywall that was free of defects, a special relationship exists between Taylor Morrison and Residential pursuant to which Taylor Morrison has the right to be indemnified for all damages sustained as a result of Residential's defective gypsum drywall, including all attorneys' fees and costs incurred in defending claims against it and in connection with this lawsuit.

WHEREFORE, Taylor Morrison demands judgment against Residential for damages in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

## COUNT XXXII
## (Against Residential for Equitable Subrogation)

283.    Taylor Morrison reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

284.    This is an action for equitable subrogation by Taylor Morrison against Residential.

285.    Taylor Morrison has and continues to repair Affected Homes and repair and replace Other Property damaged by defective gypsum drywall installed by Residential in order to protect Taylor Morrison from, among other things, exposure to further and additional claims for damages.

286.    Taylor Morrison is not primarily liable for the damages suffered by the owners of the Affected Homes and Other Property or for the costs and damages incurred in repairing the Affected Homes and repairing and replacing Other Property.   Rather, as the installer of the defective gypsum drywall, Residential should ultimately be held responsible for the damages caused by the product it installed.

287.    Taylor Morrison has not voluntarily made any repairs to Affected Homes nor voluntarily made payments for replaced or repaired Other Property.

288.    By repairing the Affected Homes and making payments for or repairing and replacing Other Property, Taylor Morrison has entirely resolved the property damage claim of each homeowner for whom repair work has been completed, for which Taylor Morrison seeks equitable relief herein.

289.    The equitable subrogation sought herein would not work any injustice to the rights of any third party.

290.     Based upon the foregoing, Taylor Morrison is entitled to equitably subrogate against Residential for damages incurred as a result of the defective gypsum drywall installed by Residential.  These damages include, but are not limited to, the cost to fully repair the Affected Homes, which includes replacing the defective gypsum drywall and repairing and replacing the damage to the Other Property in the Affected Homes as a result of the deficient and defective gypsum drywall.  These damages also include all costs incurred by Taylor Morrison in relocating its homeowners to suitable temporary housing facilities while the Affected Homes are undergoing such repairs, including storage fees, and payment for damage to Other Property, as well as damages for loss of goodwill and reputation and attorneys' fees, expert fees and costs incurred in defending the claims against it and in bringing this action.

WHEREFORE, Taylor Morrison demands judgment for damages against Residential in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

## COUNT XXXIII
### (Against Residential for Contribution)

291.     Taylor Morrison reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

292.     This is an action, in the alternative, for contribution against Residential.

293.     Taylor Morrison did not intentionally, willfully, or wantonly cause or contribute to the Plaintiffs' injuries.

294.     To the extent Taylor Morrison is called on to pay more than its pro rata share of the common liability, Taylor Morrison seeks to recover from Residential for the amounts paid by Taylor Morrison in excess of its pro rata share.

WHEREFORE, Taylor Morrison demands judgment for damages against Residential in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

### COUNT XXXIV
### (Against Cothern for Breach of Contract)

295.    Taylor Woodrow reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

296.    This is an action by Taylor Woodrow for breach of contract against Cothern.

297.    In connection with the construction of certain homes in the State of Florida, Taylor Woodrow entered into a subcontract agreement with Cothern on or about February 21, 2007.

298.    Cothern also performed work under a subcontract agreement between Taylor Woodrow and R&G Plastering, Inc. ("**R&G**").  Cothern assumed the subcontract agreement with R&G and was obligated to perform in accordance therewith.  The subcontract agreements under which Cothern performed work for Taylor Woodrow are collectively referred to herein as the (the "**Cothern Agreements**").  Copies of the Cothern Agreements are attached hereto as Exhibit "D" and incorporated herein.

299.    The Cothern Agreements govern Cothern's installation of gypsum drywall in the homes in which it performed work, during the time period for which Cothern performed work under the Cothern Agreements.

300.    The Cothern Agreements specify Cothern's obligations with respect to the performance, quality, and warranty of the work in those homes.

301.    The Cothern Agreements state:

> Subcontractor agrees that all Work shall be done in a good
> and workmanlike manner and free from defects in materials

and workmanship. All Work, including, without limitation, materials furnished by Subcontractor, shall (i) be new, (ii) meet or exceed requirements of the Plans and Specifications, manufacturers' recommendations, applicable governmental authorities and the Contractor's Best Practices Guidelines attached hereto as Schedule "E" (if applicable to the Work of the Subcontractor) and (iii) pass all tests and inspections required by applicable public officials. … approval by Contractor shall not be construed to relieve Subcontractor of liability for defects due to faulty or improper materials or workmanship or Work that does not fully comply with the Plans and Specifications, manufacturers' recommendations, the Contractor's Best Practices Guidelines and/or applicable laws (hereafter "**Defects**"). … Without limiting any remedy or right Contractor has against Subcontractor under this Agreement or applicable law, Subcontractor specifically agrees to remedy all Defects which appear during construction, and to further remedy all Defects which appear during the term set forth in the Contractor's 2-10 Solid Gold Limited Warranty, as amended from time to time, if Residence is a single-family residential dwelling unit, or in Fla. Stat. §718.203 if Residence is a condominium dwelling unit (the "**Warranty**"). … Subcontractor will have a period of five (5) days in which to correct or repair such Defects, including any other items damaged during the repair of such Defects. If Subcontractor falls to make the specified repairs within five (5) days after notice from Contractor, Contractor may have the Defects repaired or replaced by others, and hold Subcontractor liable for Contractor's overhead and the cost of such remedial work.

Cothern Agreements, ¶ 6.

302.    As set forth above, the Cothern Agreements also contain express warranties pursuant to which Cothern guaranteed all the work to be performed and all the materials to be furnished under the Cothern Agreement against defects in material or workmanship.

303.    Although Cothern warranted that the materials furnished under the Cothern Agreements were of good quality and free of defects, the gypsum drywall provided and installed by Cothern in certain of the homes was in fact deficient and defective.

304. Specifically, the drywall provided and installed by Cothern in certain of the homes is defective because it has caused damage to Other Property in the homes (the "**Affected Cothern Homes**").

305. Upon discovery of the defective drywall, Taylor Woodrow notified Cothern of the defects and demanded that Cothern repair or replace the defective drywall and the damage to the Other Property in the Affected Cothern Homes in accordance with the Cothern Agreements.

306. Cothern, however, has failed to honor its contractual obligation to repair and replace the defective drywall and the damage to the Other Property in the Affected Cothern Homes.

307. Based on the foregoing, Cothern has breached the Cothern Agreements by, among other things, (i) installing deficient and defective gypsum drywall, and (ii) failing and refusing to correct, repair, or replace the deficient and defective work as required by the Cothern Agreements.

308. As a result of Cothern's breaches of the Cothern Agreements, Taylor Woodrow has been damaged. These damages include, but are not limited to, the costs of fully repairing the Affected Cothern Homes, which includes replacing the defective gypsum drywall and repairing or replacing the damage to the Other Property in the Affected Cothern Homes as a result of the deficient and defective gypsum drywall. These damages also include all costs incurred by Taylor Woodrow in relocating its homeowners to suitable temporary housing facilities while the Affected Cothern Homes are undergoing such repairs, including storage fees, and payment for damage to Other Property, as well as damages for loss of goodwill and reputation and attorneys' fees, expert fees and costs incurred in defending the claims against it and in bringing this claim.

309.    Taylor Woodrow is entitled to recover from Cothern any and all loss, damage or expense, directly or indirectly suffered by Taylor Woodrow for such failure by Cothern, including attorneys' fees and costs pursuant to the Cothern Agreements.  In that regard, Cothern further agreed:

***

All costs, losses, damages, and expenses including attorneys' fees incurred in the prosecution or defense or enforcement of any arbitration, suit or action (at the trial, appellate, bankruptcy, and post-judgment levels) incurred by or resulting to Contractor arising from this Agreement shall be borne by and charged against Subcontractor and shall be deemed to be included among the damages for breach of this Agreement, and Subcontractor agrees to pay Contractor such costs, losses, damages, expenses and attorneys' fees.

***

21. **Indemnification**.

To the fullest extent permitted by law, Subcontractor shall assume the defense of, and indemnify, protect and save harmless Contractor, its subsidiaries, affiliates, officers and employees from all claims, judgments, liability, loss, damage or injuries of any kind or nature whatsoever (including, without limitation, bodily injury, death and any damage to the Work or the work of other subcontractors caused in whole or in part by the Subcontractor), directly or indirectly resulting from the negligence, willful misconduct, performance or failure to perform the Work by Subcontractor, Its employees, agents, laborers, or Sub-subcontractors, or any other obligation of Subcontractor under this Agreement or applicable law, and will defend any and all claims or actions which may be brought against Contractor on account of any such accidents, claims, liability, loss, damage or injury. and will reimburse Contractor for any expenditures that Contractor may make by reason of such occurrence. The foregoing indemnity is independent of and not limited to proceeds payable from any of the insurance policies required pursuant to Paragraph 4 of this Agreement.

Cothern Agreements ¶ 21.

WHEREFORE, Taylor Woodrow demands judgment for damages against Cothern in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

## COUNT XXXV
### (Against Cothern for Breach of Express Warranty)

310.   Taylor Woodrow reasserts and realleges the allegations in paragraphs 1 through 30 and 297 through 309 above as if fully set forth herein.

311.   This is an action by Taylor Woodrow for breach of express warranty against Cothern.

312.   As discussed more fully above, the Cothern Agreements contain an express warranty pursuant to which Cothern agreed:

> Subcontractor agrees that all Work shall be done in a good and workmanlike manner and free from defects in materials and workmanship.  All Work, including, without limitation, materials furnished by Subcontractor, shall (i) be new, (ii) meet or exceed requirements of the Plans and Specifications, manufacturers' recommendations, applicable governmental authorities and the Contractor's Best Practices Guidelines attached hereto as Schedule "E" (if applicable to the Work of the Subcontractor) and (iii) pass all tests and inspections required by applicable public officials. … approval by Contractor shall not be construed to relieve Subcontractor of liability for defects due to faulty or improper materials or workmanship or Work that does not fully comply with the Plans and Specifications, manufacturers' recommendations, the Contractor's Best Practices Guidelines and/or applicable laws (hereafter "**Defects**"). … Without limiting any remedy or right Contractor has against Subcontractor under this Agreement or applicable law, Subcontractor specifically agrees to remedy all Defects which appear during construction, and to further remedy all Defects which appear during the term set forth in the Contractor's 2-10 Solid Gold Limited Warranty, as amended from time to time, if Residence is a single-family residential dwelling unit, or in Fla. Stat.

> §718.203 if Residence is a condominium dwelling unit (the
> "**Warranty**"). … Subcontractor will have a period of five
> (5) days in which to correct or repair such Defects,
> including any other items damaged during the repair of
> such Defects. If Subcontractor falls to make the specified
> repairs within five (5) days after notice from Contractor,
> Contractor may have the Defects repaired or replaced by
> others, and hold Subcontractor liable for Contractor's
> overhead and the cost of such remedial work.

Cothern Agreements, ¶6.

313.   Taylor Woodrow relied on the express warranty in approving the Cothern

Agreements and allowing Cothern to install gypsum drywall in the homes.

314.   Cothern breached its express warranty by providing and installing deficient and

defective gypsum drywall in the Affected Cothern Homes.

315.   Taylor Woodrow timely notified Cothern of the defective gypsum drywall, but

Cothern has failed to honor its contractual obligation to repair or replace the defective gypsum

drywall.

316.   As a result of Cothern's breaches of the express warranty, Taylor Woodrow has

been damaged.  These damages include, but are not limited to, the costs of fully repairing the

Affected Cothern Homes, which includes replacing the defective gypsum drywall and repairing

or replacing the damage to the Other Property in the Affected Cothern Homes as a result of the

deficient and defective gypsum drywall.  These damages also include all costs incurred by

Taylor Woodrow in relocating its homeowners to suitable temporary housing facilities while the

Affected Cothern Homes are undergoing such repairs, including storage fees, and payment for

damage to Other Property, damages for loss of goodwill and reputation, and attorneys' fees,

expert fees and costs incurred in defending the claims against it and in bringing this action.

WHEREFORE, Taylor Woodrow demands judgment for damages against Cothern in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

## COUNT XXXVI
### (Against Cothern for Breach of Implied Warranty)

317.    Taylor Woodrow reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

318.    This is an action by Taylor Woodrow for breach of implied warranty against Cothern.

319.    Cothern, as the installer of the defective drywall in the Affected Cothern Homes, warranted to Taylor Woodrow that the drywall was reasonably fit for its ordinary use and fit for the particular purpose of being installed in the Affected Cothern Homes.

320.    Taylor Woodrow relied on these implied warranties in allowing Cothern to provide and install drywall in the Affected Cothern Homes.

321.    Cothern breached its implied warranties to Taylor Woodrow by providing and installing deficient and defective gypsum drywall in the Affected Cothern Homes.  The defective gypsum drywall is not fit for the particular purpose of being installed in the Affected Cothern Homes, nor is it reasonably fit for the general purpose for which gypsum drywall is used.

322.    Taylor Woodrow timely notified Cothern of the defective gypsum drywall, but Cothern has failed to honor its contractual obligation to repair or replace the defective gypsum drywall.

323.    As a result of Cothern's breaches of the implied warranties, Taylor Woodrow has been damaged.  These damages include, but are not limited to, the costs of fully repairing the Affected Cothern Homes, which includes replacing the defective gypsum drywall and repairing

or replacing the damage to the Other Property in the Affected Cothern Homes as a result of the deficient and defective gypsum drywall.  These damages also include all costs incurred by Taylor Woodrow in relocating its homeowners to suitable temporary housing facilities while the Affected Cothern Homes are undergoing such repairs, including storage fees, and payment for damage to Other Property, damages for loss of goodwill and reputation, and attorneys' fees, expert fees and costs incurred in defending lawsuits against it and in bringing this action.

WHEREFORE, Taylor Woodrow demands judgment for damages against Cothern in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

### COUNT XXXVII
### (Against Cothern for Contractual Indemnity)

324.    Taylor Woodrow reasserts and realleges the allegations in paragraphs 1 through 30 and 297 through 309 above as if fully set forth herein.

325.    This is an action by Taylor Woodrow for contractual indemnity against Cothern.

326.    As set forth above, Cothern has a contractual obligation to indemnify Taylor Woodrow.  More specifically, the Cothern Agreement states:

*** 

> All costs, losses, damages, and expenses including attorneys' fees incurred in the prosecution or defense or enforcement of any arbitration, suit or action (at the trial, appellate, bankruptcy, and post-judgment levels) incurred by or resulting to Contractor arising from this Agreement shall be borne by and charged against Subcontractor and shall be deemed to be included among the damages for breach of this Agreement, and Subcontractor agrees to pay Contractor such costs, losses, damages, expenses and attorneys' fees.

***

21.  **Indemnification**.

> To the fullest extent permitted by law, Subcontractor shall
> assume the defense of, and indemnify, protect and save
> harmless Contractor, its subsidiaries, affiliates, officers and
> employees from all claims, judgments, liability, loss,
> damage or injuries of any kind or nature whatsoever
> (including, without limitation, bodily injury, death and any
> damage to the Work or the work of other subcontractors
> caused in whole or in part by the Subcontractor), directly or
> indirectly resulting from the negligence, willful
> misconduct, performance or failure to perform the Work by
> Subcontractor, Its employees, agents, laborers, or Sub-
> subcontractors, or any other obligation of Subcontractor
> under this Agreement or applicable law, and will defend
> any and all claims or actions which may be brought against
> Contractor on account of any such accidents, claims,
> liability, loss, damage or injury. and will reimburse
> Contractor for any expenditures that Contractor may make
> by reason of such occurrence. The foregoing indemnity is
> independent of and not limited to proceeds payable from
> any of the insurance policies required pursuant to
> Paragraph 4 of this Agreement.

Cothern Agreements, ¶ 21.

327.  Numerous claims have been made against Taylor Woodrow and costs, losses, damages, and expenses suffered by Taylor Woodrow as a result of the defective drywall provided and installed by Cothern in the Affected Cothern Homes.

328.  Taylor Woodrow timely notified Cothern of the claims, costs, losses, damages, and expenses being incurred by Taylor Woodrow, but Cothern has failed to honor its contractual obligation to indemnify Taylor Woodrow.

329.  As a result of Cothern's breaches of its contractual obligation to indemnify Taylor Woodrow, Taylor Woodrow has been damaged.  These damages include, but are not limited to, the costs of fully repairing the Affected Cothern Homes, which includes replacing the defective gypsum drywall and repairing or replacing the damage to the Other Property in the Affected Cothern Homes as a result of the deficient and defective gypsum drywall.  These damages also

include all costs incurred by Taylor Woodrow in relocating its homeowners to suitable temporary housing facilities while the Affected Cothern Homes are undergoing such repairs, including storage fees, and payment for damage to Other Property, damages for loss of goodwill and reputation, and attorneys' fees, expert fees and costs incurred in defending the claims against it and in bringing this action.

WHEREFORE, Taylor Woodrow demands judgment for damages against Cothern in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

## COUNT XXXVIII
### (Against Cothern for Common Law Indemnity)

330.    Taylor Woodrow reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

331.    This is an action by Taylor Woodrow for common law indemnity against Cothern.

332.    Cothern supplied and installed the defective gypsum drywall in certain of the Affected Homes.

333.    The deficient and defective gypsum drywall supplied and installed by Cothern has caused damage to Other Property within the Affected Cothern Homes.

334.    Because of the defective drywall installed in the Affected Cothern Homes, Taylor Woodrow has been forced to undertake an expensive and time consuming process to thoroughly and completely repair the Affected Cothern Homes, which includes replacing the defective gypsum drywall and repairing or replacing the Other Property and other materials damaged as a result of the defective drywall.

335.   Taylor Woodrow has incurred and will continue to incur monetary damages from the repair and replacement of defective drywall and Other Property in the Affected Cothern Homes.

336.   Taylor Woodrow is entirely without fault for the damage to the Affected Cothern Homes and Other Property.

337.   As supplier and installer of the defective gypsum drywall, Cothern is wholly at fault and responsible for all damages resulting from the defective gypsum drywall.

338.   As a result of Cothern's wrongful conduct, Taylor Woodrow has been damaged. These damages include, but are not limited to, the cost to fully repair the Affected Cothern Homes, which includes replacing the defective gypsum drywall and repairing and replacing the damage to the Other Property in the Affected Cothern Homes as a result of the deficient and defective gypsum drywall.  These damages also include all costs incurred by Taylor Woodrow in relocating its homeowners to suitable temporary housing facilities while the Affected Cothern Homes are undergoing such repairs, including storage fees, and payment for damage to Other Property, as well as damages for loss of goodwill and reputation and attorneys' fees, expert fees and costs incurred in defending the claims against it and in bringing this action.

339.   Because Taylor Woodrow, through no fault of its own, is vicariously, constructively, derivatively, or technically responsible -- and unlike Cothern has already taken responsibility -- for the defective gypsum drywall supplied and installed by Cothern in the Affected Cothern Homes, and because Cothern supplied and installed the defective gypsum drywall knowing that Taylor Woodrow was relying on Cothern to supply and install gypsum drywall that was free of defects, a special relationship exists between Taylor Woodrow and Cothern pursuant to which Taylor Woodrow has the right to be indemnified for all damages

sustained as a result of Cothern's defective gypsum drywall, including all attorneys' fees and costs incurred in defending lawsuits filed against it and in connection with this lawsuit.

WHEREFORE, Taylor Woodrow demands judgment against Cothern for damages in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

## COUNT XXXIX
### (Against Cothern for Equitable Subrogation)

340.   Taylor Woodrow reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

341.   This is an action for equitable subrogation by Taylor Woodrow against Cothern.

342.   Taylor Woodrow has and continues to repair Affected Homes and repair and replace Other Property damaged by defective gypsum drywall installed by Cothern in order to protect Taylor Woodrow from, among other things, exposure to further and additional claims for damages.

343.   Taylor Woodrow is not primarily liable for the damages suffered by the owners of the Affected Homes and Other Property or for the costs and damages incurred in repairing the Affected Homes and repairing and replacing Other Property.  Rather, as the installer of the defective gypsum drywall, Cothern should ultimately be held responsible for the damages caused by the product it installed.

344.   Taylor Morrison has not voluntarily made any repairs to Affected Homes nor voluntarily made payments for replaced or repaired Other Property.

345.   By repairing the Affected Homes and making payments for or repairing and replacing Other Property, Taylor Morrison has entirely resolved the property damage claim of

each homeowner for whom repair work has been completed, for which Taylor Morrison seeks equitable relief herein.

346.    The equitable subrogation sought herein would not work any injustice to the rights of any third party.

347.    Based upon the foregoing, Taylor Woodrow is entitled to equitably subrogate against Cothern for damages incurred as a result of the defective gypsum drywall installed by Cothern.  These damages include, but are not limited to, the cost to fully repair the Affected Homes, which includes replacing the defective gypsum drywall and repairing and replacing the damage to the Other Property in the Affected Homes as a result of the deficient and defective gypsum drywall.  These damages also include all costs incurred by Taylor Woodrow in relocating its homeowners to suitable temporary housing facilities while the Affected Homes are undergoing such repairs, including storage fees, and payment for damage to Other Property, as well as damages for loss of goodwill and reputation and attorneys' fees, expert fees and costs incurred in defending the claims against it and in bringing this action.

WHEREFORE, Taylor Woodrow demands judgment for damages against Cothern in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

### COUNT XL
### (Against Cothern for Contribution)

348.    Taylor Woodrow reasserts and realleges the allegations in paragraphs 1 through 30 above as if fully set forth herein.

349.    This is an action, in the alternative, for contribution against Cothern.

350.    Taylor Woodrow did not intentionally, willfully, or wantonly cause or contribute to the Plaintiffs' injuries.

351.   To the extent Taylor Woodrow is called on to pay more than its pro rata share of the common liability, Taylor Woodrow seeks to recover from Cothern for the amounts paid by Taylor Woodrow in excess of its pro rata share.

WHEREFORE, Taylor Woodrow demands judgment for damages against Cothern in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

Dated this 7th day of May, 2010.

/s/ Neal A. Sivyer
Neal A. Sivyer
Florida Bar No. 373745
Stephen E. Walker
Florida Bar No. 0497851
**SIVYER BARLOW & WATSON,  P.A.**
401 E. Jackson Street, Suite 2225
Tampa, Florida  33602
Telephone:  (813) 221-4242
Facsimile:  (813) 227-8598
*Attorneys for Taylor Morrison Services, Inc., and Taylor Woodrow Communities at Vasari, LLC*


CERTIFICATE OF SERVICE


I HEREBY certify that on May 7, 2010, this document has been served on Plaintiffs' Liaison Counsel, Hugh P. Lambert, Esq., and Russ Herman, Esq., and Defendants' Liaison Counsel, Kerry Miller, Esq., and Homebuilders' Steering Committee Dorothy Wimberly by U.S. mail and/or email or by hand delivery and I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and upon all parties by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No.: 6.

/s/ Neal A. Sivyer
Neal A. Sivyer