# COMPOSITE EXHIBIT "F"



32018402

Jul 7 2010 7:40PM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 <br><br> SECTION: L |
| THIS DOCUMENT RELATES TO: <br><br> *Payton, et al. v. Knauf Gips, KG, et al.* No. 09-7628 (E.D.La) <br><br> *Rogers, et al. v. Knauf Gips, KG, et al.*, No. 10-362 (E.D.La.) | JUDGE FALLON <br><br> MAG. JUDGE WILKINSON |

## PLAINTIFFS' STEERING COMMITTEE'S MOTION RESTRICTING COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS

The Plaintiffs Steering Committee (PSC) hereby moves this Honorable Court pursuant to Federal Rule of Civil Procedure 23(d)(1)(B) to protect the putative class by prohibiting the Knauf Defendants, *i.e.*, Knauf GIPS KG; Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"); Knauf Plasterboard (Wuhu), Co., Ltd.; and Guangdong Knauf New Building Materials Products Co., Ltd. a/k/a Knauf Plasterboard (Dongguan) Co., Ltd., and any of the builder defendants named in any of the Omni Complaints in MDL No. 2047[1], from engaging in improper communications with putative class members.  For the reasons set forth in the accompanying memorandum, the PSC submits this motion should be granted.

---

[1] A complete list of the builder defendants named in the Omni Complaints is attached hereto as Exhibit A.

Dated: July 7, 2010

Respectfully submitted,

/s/ Russ M. Herman

Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Victor Manuel Diaz
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Aragon Avenue, 2nd Floor
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
  Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
  & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W
Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Jeremy W. Alters
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 N.E. 2nd Avenue, Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@abbrclaw.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Plaintiffs' Steering Committee's Motion Restricting Communications with Putative Class Members has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 7th day of July, 2010.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com
Plaintiffs' Liaison Counsel
MDL 2047

-4-



32018402

Jul 7 2010 7:40PM

# EXHIBIT A

| LIST OF BUILDERS INCLUDED IN OMNIS I THROUGH IV | |
|---|---|
| 3180 Lamb Court Acquisition, LLC | KB Home Jacksonville, LLC |
| 616 LLC/ Andy Ziffer | KB Home Orlando, LLC |
| A & C Development, LLC | KB Home/Shaw Louisiana, L.L.C. |
| A.R.B.C. Corporation | KB Home Tampa, LLC |
| A& D Homes, Inc. | KB Homes |
| Aarco, LLC | KB Homes Fort Myers, LLC |
| Aburton Homes, Inc. | KC2 Investments, LLC |
| Acadian Builders of Gonzales, Inc. | Ken Roberts |
| Acadian Builders and Contractors, LLC | Kenneth B. Speights Construction Co. |
| Adams Homes Realty, Inc. | Kensington Woods, LLC |
| Adams Homes of North West Florida, Inc. | Kenwood Homes, Inc. |
| Adrian Kornman | Kimball Hill Homes Florida, Inc. |
| Advantage Builders of America, Inc. a/k/a Advantage Builders of SWFL, Inc. | L.A. Homes, Inc. |
| Affordable Homes & Land, LLC | L'Oasis Builders Incorporated |
| AHJV, LLC | L&J Builders, Inc. |
| Ainslie Group, Inc. | La Homes and Properties Inc. |
| Alana Development Corporation | Lake Ashton Development Group II LLC |
| Albanese-Popkin the Oaks Development Group, L.P. | Lakeridge Builders, Inc. |
| Albert Howard, Jr. | Lakeside Village Development, L.L.C. 1 |
| Alternative Source, Inc. | Land Resources LLC |
| Alvian Homes, Inc. | Laporte Builders, Inc. |
| Alvin Royes, Jr., LLC | Laporte Family Properties, LLC |
| America's First Home, Inc. | Las Playas LLC |
| American Dream Builders, Inc. | Last Minute Properties, LLC |
| American Eastern, Inc. | Lavish Holding Corp. |
| American Gallery Development Group, LLC d/b/a American Gallery Homes | Lawrence Migliar LLJ Construction |
| American Homes | Lee Harbor Homes, Inc. |
| Amerisouth, Inc. | Lee Harbor Homes of Florida, Inc. |

| LIST OF BUILDERS INCLUDED IN OMNIS I THROUGH IV | |
|---|---|
| Andre Rodgers, Carpenter | Lee Roy Jenkins Builder, Inc. |
| Angel Developments, LLC | Lee Wetherington Homes, Inc. |
| Anthony F. Marino General Contractor, LLC | Legend Custom Builders, Inc. |
| Anthony Raggs | Lennar Corporation |
| Anthony Skrmetti | Lennar Homes, Corp. |
| Antilles Vero Beach, LLC | Lennar Homes, LLC |
| Aranda Homes, Inc. | Leroy Laporte, Jr. |
| Aranda Homes of Florida, Inc. | Liberty Home Builders, Inc. |
| Arizen Homes, Inc. | Lifescape Buildings, LLC |
| ARM Structural, Inc. | Linel Consulting, LLC |
| Arthur Homes (JL Arthur) | Liongate Design Structure, LLC |
| Atchafalaya Homes | Littles Construction of Central Florida, Inc. |
| Atlantic Homes Development Corporation | Lloyd & Sons Construction, Inc. |
| Atlantic Homes, LLC | Louran Builders, Inc. |
| Aubuchon Homes, Inc. | Louran Gips KG |
| Avalon Building Corporation of Tampa Bay | LPR Builders, Inc. |
| Avalon Preserve Developers, L.L.C. | LTL Construction, Inc. |
| B & E Construction Miami Corp. | Lucas Construction Corporation |
| B&W Complete Construction, Inc. | Lucra Investments, Inc. |
| Bagley Construction, LLC | Lynch Builders, LLC |
| Banner Homes of Florida, Inc. | M/I Homes, Inc. |
| Barony Homes, Inc. | M/I Homes of Tampa, LLC |
| Bass Homes, Inc. | M J F Construction Corporation |
| Bauhaus Inc. | M.E. Gibbens, Inc. |
| Bauhaus Solutions, Inc. | MacGlen Builders, Inc. |
| Bay Colony-Gateway, Inc. | Magnum Development, LLC |
| BBL - Florida, LLC | Majestic Homes and Realty SW LLC |
| BDG Waterstone, LLC | Majestic Homes, Inc. |
| Beazer Homes Corp. | Majestic Homes of Port St. Lucie, Inc. |

| LIST OF BUILDERS INCLUDED IN OMNIS I THROUGH IV | |
|---|---|
| Belfor USA Group, Inc. | Majestic Homes of Vero Beach, Inc. |
| Bell Construction | Mandalay Homes, Inc. |
| Belmont Lakes Investments, LLC | Manuel Gonzales Terra Group Intl. |
| Bender Construction & Development, Inc. | Marigold Court, LLC |
| Benoit Builders, LLC f/k/a Benoit Builders & Realtors, Inc. | Mariner Village Townhomes, Inc. |
| Berrywood Estates a Senior Community, LLC | Maronda Homes, Inc. of Florida |
| Big Bear Const. Co. | Master Builders of South Florida, Inc. |
| Big River Construction and Remodeling Co., Inc. | Mat D Construction |
| BJ&K Construction, Inc. | Mayeaux Construction, Inc. |
| Blackhawk Partners, LLC | McCar Homes, Inc. |
| Blanchard Homes, Inc. | McCar Homes-Tampa, LLC |
| BO Builders, LLC | McCombs Services, LLC |
| Bonita Beachwalk, LLC | McDowell Builders, LLC |
| Bove Company | MCM Building Enterprise, Inc. |
| Brantly Homes, Inc. | Meadows of Estero-Bonita Springs Limited Partnership d/b/a Shelby Homes |
| Breakwater Homes Association | Medallion Homes Gulf Coast, Inc. |
| Brighton Home Builders, Inc. | Medallion Homes, LLC |
| Brightwater Community 1 LLC | Melvin Prange, Jr. Construction, L.L.C. |
| Bristol Corner, LLC | Meridian Homes USA, Inc. |
| Brothers Properties LA, LLC | Merit Homes, Inc. |
| Buquoi Construction, LLC | Meritage Homes of Florida, Inc. |
| Buras Construction LLC, | Methodical Builders, Inc. |
| Burmaster Construction, Inc. | MGB Construction |
| Burnett Construction Co. | Midwest Construction & Development LLC |
| Bush Construction Corp. | Mike Jones Construction, Inc. |
| C & N Construction Co. LLC | Millennium Homes & Development, Inc. |
| C. Adams Construction and Design, LLC | Miller Construction Company |
| C&C Homebuilders, Inc. | Miller Professional Contracting, Inc. |

| LIST OF BUILDERS INCLUDED IN OMNIS I THROUGH IV ||
|---|---|
| Cabot Homes | Ming K Wong |
| Cajun Construction & Development, LLC | Mitchell Homes, Inc. |
| Calmar Construction Company, Inc. | Modern Construction Group, Inc. |
| Calvin P. Williams | Monopoly Builders, Inc. |
| Cardel Master Builder, Inc. d/b/a Cardel Homes | Monzelle Diles |
| Caribe Central, LLC | Morrison Homes, Inc. |
| Caribe East LLC | MW Johnson Construction of Florida, Inc. |
| Carribean Custom Builders and Developers | Nathanial Crump |
| Carter Custom Homes, Inc. | Negotiable Remodeling |
| Catalano Custom Homes, LLC | Neslo, Contracting |
| CB Creek, Inc. | Nice Homes, Inc. |
| CB Dupree Construction, LLC | North Palm Estates Homes, Inc. |
| CDC Builders, Inc. | Northstar Holdings at B and A LLC |
| Centerline Homes at Delray, Inc. | Northstar Homebuilders, Inc. |
| Centerline Homes at Georgetown LLC | Northstar Homes |
| Centerline Homes at Port St. Lucie, LLC | O'Neal Homes, Inc. |
| Centerline Homes at Tradition, LLC | O'Neill/Holliman Corporation |
| Centerline Homes Construction Inc. | Oak Avenue, LLC |
| Centerline Homes, Inc. | Oak Tree Construction |
| Centerra Homes, LLC | Oakbrook Building and Design, Inc. |
| Central Peninsula Contracting LLC | Oscar Jiles d/b/a. JJ Construction |
| Centurion Homes of Louisiana, LLC | Overlook, LLC |
| Century Homebuilders, LLC | Overlook Point, LLC |
| CGF Construction | Oyster Bay Homes, Inc. |
| Chabot Enterprises, Inc. | P N K Builders, LLC |
| Chase Construction, Inc. | Palm Coast Construction, LLC |
| Chateau Bourbon, LLC | Palm Isles Holdings, LLC |
| Chateau Development LLC | Par-Self, Inc. |
| Chris Booty | Paradise Builders of SW Florida, Inc. |

| LIST OF BUILDERS INCLUDED IN OMNIS I THROUGH IV | |
|---|---|
| Chris Cadis | Paragon Homes, Corporation |
| Chris P. Roberts | Paramount Quality Homes Corp. |
| Christopher M. Odom | Parellel Design and Development LLC |
| CL Architects & Contractors Corp. | Parkview Homes Realty, Inc. |
| Clark-Whitehill Enterprises, Inc. | Parr-Self, Inc. |
| Cloutier Brothers, Inc. | Patter Construction Services |
| Cockerham Construction, LLC | Paul Homes |
| Comfort Home Builders, Inc. | Paul Homes, Inc. a/k/a Management Services of Lee County, Inc. |
| Completed Communities II, LLC | Paul Hyde Homes |
| Conti Construction Company, Inc. | Peak Building Corporation |
| Core Construction, LLC | Penn Construction Co., LLC |
| Core Construction Services Southeast, Inc. | Philip Latapie |
| Cornerstone Builders, LLC | Pine Ridge Development, Inc. |
| Cornerstone Group | Pine Ridge Real Estate Enterprises, LLC |
| Cornerstone Group Development, LLC | Pioneer Construction, LLC |
| Country Walk Sales, LLC | Plantation Group, LLC |
| Craftmaster, LLC | Pod Homes, LLC |
| Craftsmen Builders, Inc. | Ponce Riviera, LLC |
| Cretin Homes, LLC (EL Cretin, d/b/a Cretin Homes) | Port St. Lucie Builders, Inc. |
| CRF Management Co., Inc. | Portofino Homes, Inc. |
| Crosby Development Company, LLC | Premier Communities, Inc. |
| Crossroad Homes, Inc. | Premier International Realty d/b/a Henin Realty |
| Curb Appeal Home Builders, Inc. | Premiere Design Homes, Inc. |
| Curington Contracting, Inc. | Preserve Development, LLC |
| Curtis Lee Wimberly General Contractor Incorporated | Prestige Development, Inc. |
| Custom Homes by Kaye, Inc. | Prestige Properties |
| Cypress Builders, Inc | Pride Homes of Lakes by the Bay-Parcel H, LLC |
| D. R. Horton, Inc. | Princeton Homes, Inc. |

| LIST OF BUILDERS INCLUDED IN OMNIS I THROUGH IV | |
|---|---|
| D.R. Horton, Texas, Ltd. | Promenade Developers, Ltd. |
| D&W Homes, LLC | Pukka Development, Inc. |
| Daelen of Tangiaphoa, LLC | Pulte Home Corporation |
| Daniel Dæ Loughy Homes, Inc. d/b/a Tropical Homes | Punta Gorda Partners, LLC |
| Daniel Wayne Homes, Inc. | Pyramid Construction Corporation |
| Darwin Sharp Construction , LLC | R & B Construction of Northwest, FL, Inc. |
| Dave Walker Construction, Inc. | R A Grant Corporation |
| David Daniels, individually | R. Fry Builders, Inc. |
| David Ray Gavins | R.J. Homes, LLC |
| David W. Stewart, Inc. | Rafuls & Associates Construction Co., Inc. |
| Davis General Contractors | Randal Maranto Builders, LLC |
| DC Builders, LLC | Ray Bec Inc. |
| Deangelis Diamond Construction, Inc. | RCR Holdings I and II, LL |
| Deangelis Diamond Homes, Inc. | RCR Holdings II, LLC |
| Dedicated Builders, LLC | Reed Builders, LLC |
| Delacruz Enterprise's, Inc. | Regatta Construction, LLC |
| Delta- Eden, Inc. | Regency Homes, Inc. |
| DeMorgan Homes of Bradenton, Inc. a/k/a Mtn Homes Southwest, Inc. | Renar Development Company |
| Derby Homes, Inc. | Residential Drywall, Inc. |
| Design Contractors, LLC | Resource Rental & Renovation LLC |
| Design Drywall of South Florida, LLC | RFC Homes |
| Development Co. of Boca, Inc. d/b/a Boca Developers | Richard Jones Construction Company, Inc. |
| Devonshire Properties, Inc. | Rivercrest, LLC/The St. Joe Company |
| Diamond Court Construction Company | Riverstreet Homes, Inc. |
| DMH Development, Co. | RJM Builders North, Inc. |
| Dorado Homes Development, Ltd. | RNB Construction |
| Dunn Wright Construction, Inc. | Robert Champagne, Great Southern Builders, LLC |
| Dupont Builders, Inc. | Rocky Ruckman |

| LIST OF BUILDERS INCLUDED IN OMNIS I THROUGH IV | |
|---|---|
| Dupree Construction Company, Inc. n/k/a Dupree Construction Company, LLC | Rookery Park Estates, LLC |
| E. Jacob Construction, Inc. | Ross Home Builders, Inc. |
| E. Jacob Fakouri Construction, Inc. | Rottlund Homes of Florida, Inc. |
| E.B. Developers, Inc. | Royal Homes (Anthony Marino) |
| E.N. Suttin Construction Company | Royal Homes, LLC |
| Eagle Builders, Inc. | Russ Mills |
| Eastern Construction Group, Inc. | Rylex Homes, Inc. |
| Eastmond Enterprises, Inc. | S. Petersen Homes, Inc. |
| Edwards Construction Company | S&D Specialists, Inc. |
| Edweaard Development Company, LLC | S&O Investments, LLC |
| EH Building Group | Safeway Contractors, L.L.C. |
| Elite Construction Co. SW Inc. | Santa Barbara Estates, Inc. |
| Elite Home Construction Inc. | Santa Barbara Townhomes, Inc. |
| Empire Construction, LLC | Santa Maria Builders, LLC |
| Empire Properties, LLC | Saturno Construction AB Inc. |
| Enchanted Homes, Inc. | SC Builders, L.L.C. |
| Eric Bolden | Scott Colson |
| Excel Construction of S.W. Florida, Inc. | Seaside Development, LLC |
| Executive Home Builders, LLC | Sedgwick Developers, Inc. |
| Federal Construction Specialist, Inc. | Shelby Homes at Meadows, Inc. |
| FHBF Partners, LLP, f/k/a First Home Builders of Florida | Shelby Homes, Inc. |
| First Choice Homes of S.W. Florida, Inc. | Shoma Homes Splendido, Inc. |
| First Construction Corporation | Signature Series Homes, Inc. |
| First Home Builders, Inc. | Smith and Core, Inc. |
| First Home Builders of Florida I, Inc. | Smith Family Homes Corporation |
| First Home Builders of Florida I, LLC | South Kendall Construction Corp. |
| Fisher & Son Contractors, LLC | Southern Bay Homes, Inc. |
| Fleetwood Homes of Florida, Inc. | Southern Community Homes, Inc. |

| LIST OF BUILDERS INCLUDED IN OMNIS I THROUGH IV | |
|---|---|
| Fleetwood Homes of GA, Inc. | Southern Homes, LLC |
| Floridian Gulf Coast Homes, Inc. | Southern Homes of Broward XI, Inc. |
| Font Builders, Inc. | Southern Star Construction Company, Inc. |
| Fortis Construction, LLC | Southwell Homes, LLC |
| Franciscus Homes, Inc. | Sovereign Homes, LLC |
| Freemar Homes, Inc. | Springhill, LLC |
| Fusion Building Concepts, Inc. | Standard Pacific d/b/a Standard Pacific of Colorado, Inc. |
| G & F Drywall | Standard Pacific Homes of South Florida, GP, Inc. |
| G. Drywalls Corporation | Standard Pacific of South Florida GP, Inc. |
| G.L. Homes of Boynton Beach Associates IX, Ltd. | Standard Pacific of Southwest Florida GP, Inc. |
| Gabourel's Construction, L.L.C. | Standard Pacific of Tampa GP, Inc. f/k/a Westfield Homes of Florida, Inc. |
| Galloway Sunset Estates, Inc. | Star Homes of Florida LLC |
| Gant & Shivers | Statewide Associates, Inc. |
| Garram Homes, Inc. | Stephen Shivers |
| Gatco Construction, Inc. | Sterling Communities Inc. |
| Gavins Construction Company | Sterling Communities Realty Inc. |
| Genesis Group, Inc. | Steve Harrington Homes, Inc. |
| Genesis Residential Group, Inc. | Steven R. Carter, Inc. |
| GHO Development Corporation | Stone Development, LLC |
| GL Homes Limited Corporation a/k/a GL Homes Limited Corporation | Stonebrook Estates, Inc. |
| Global Home Builders, Inc. | Stonebrook Homes, LLC |
| Global Home Builders, LLC | Stuart South Group, L.C. |
| Global Home Builders of the Treasure Coast, Inc. | Suarez Housing Corporation |
| GMI Construction, Inc. | Summit Contractors, Inc. |
| Gold Coast Homes of SW Florida | Summit Homes, LLC n/k/a Phl Construction, LLC |
| Gooden Homes, LLC | Summit Homes of LA, Inc. |
| Governor's Pointe, LLC | Sun Construction, LLC |

| LIST OF BUILDERS INCLUDED IN OMNIS I THROUGH IV | |
|---|---|
| Grand Harbour Homes, Inc. | Sun Construction, LLC d/b/a Sunrise Homes |
| Grand Palazzo Hendricks, LLC | Sunrise Construction and Development, LLC |
| Great Southern Homes, Inc. | Sunrise Construction, LLC |
| Greensprings Condominiums, LLC | Sunrise Custom Homes & Construction, LLC |
| Greensprings Plantation, Inc. | Suntree Homes, Inc. |
| Gregan Construction Corp. | Supreme Builders |
| Gregg Nieberg, Inc. | Symphony Builders, Inc. |
| Gremillion Homes, Inc. | Taber Construction |
| Greystoke Homes at South Point II LLC | Tad Brown |
| Groff Construction, Inc. | Tallow Creek, LLC |
| Grogan Construction and Real Estate, Inc. | Tapia Brothers Constructions, Inc. |
| Grove Hammocks Investments, LLC | Tapia Construction, Inc. |
| Groza Builders, Inc. | Taylor Morrison, Inc. |
| Gryphon Construction, LLC | Taylor Morrison of Florida, Inc. |
| Gryphon Corporation (GC) | Taylor Morrison Services, Inc. |
| Guillermo Permuy | Taylor-Woodrow Communities at Vasari, Inc. |
| Gulfstream Development, LLC | Team Work Construction, LLC |
| Gulfstream Homes, Inc. | Tepeyac, LLC |
| Gwen Core | The Haskell Company |
| H & H Custom Homebuilders | The Jade Organization, Inc. |
| H.C. Owen Builder, Inc. | The Kabar Group, LLC |
| Hallmark Homes, Inc. | The Mitchell Co. |
| Hammer Constructions Services, Ltd. | The New Morning, LLC |
| Hansen Homes, Inc. | The Ryland Group, Inc. |
| Hansen Homes of South Florida, Inc. | The Sterling Collection, Inc. |
| Harbor Walk Development, LLC | Thomas R. Gould, Inc. |
| Heights Custom Homes, LLC a/k/a Heights Properties, LLC | Thompson Wood Products, Inc. |
| Heights Properties, L.L.C. | Three J's Remodeling, Incorporated |

| LIST OF BUILDERS INCLUDED IN OMNIS I THROUGH IV | |
|---|---|
| Heritage Homes, Inc. | Tikal Construction Co. |
| HHJV, LLC | Tillman Construction, Inc. |
| Highland Lakes, LLC d/b/a Eddleman Homes, LLC | Timberline Builders, Inc. |
| Hilliard Butler Construction Company, Inc. | Timberline Homes |
| Holiday Builders Construction of Florida, Inc. | Toll Estero Ltd. Partnership, d/b/a Toll Brothers |
| Holiday Builders, Inc. | Tony Helton Construction, LLC |
| Home DevCo, LLC | Total Contracting and Roofing, Inc. |
| Home One Homes | Touchstone At Rapallo, Inc. |
| Homes of Merit, Inc. | Traderscove Corporation d/b/a the Henin Group |
| Horton Homes, Inc. | Treasure Coast |
| Hovnanian Developments of Florida, Inc. | Treasure Coast Communities, Inc. |
| Hovstone Properties of Florida, LLC | Triumph Construction |
| HPH Homes | Trust America Homes, Inc. |
| HPH Properties, LLC | Tudela Classic Homes, LLC |
| Hulsey-Nezlo Construction, LLC | Turn Key Home Builders, Inc. |
| Hutchinson Homes, Inc. | Tuscan-Harvey Estate Homes, Inc. |
| In-line Contractors, LLC | Tuscan-Harvey Estates |
| Infinity Homes, Inc | Twin Lakes Reserve & Golf Club, Inc. |
| Inman Construction Services, Inc. | United Home Builders, Inc. |
| International Property Investments of Central Florida, Inc. d/b/a Henin International Services | United Homes, Inc. |
| Investment Properties Unlimited Inc. | United Homes International, Inc. |
| Ironwood Properties, Inc. | United-Bilt Homes, LLC |
| J. Cherry and Sons, Inc. | US Home Corporation, a Delaware Corporation |
| J. Galloway Construction, Inc. | Van Aller Construction |
| J. Helms Construction, Inc. d/b/a Sundown Development | Vasquez Construction Company, LLC |
| J&J Builders Northshore, Inc. | Veal Enterprises, Inc. |
| Jade Organization General Contractor, LLC | Velvet Pines Construction, LLC |
| James Kayser | Venture Homes |

| LIST OF BUILDERS INCLUDED IN OMNIS I THROUGH IV | |
|---|---|
| James LeBlanc | Venus Street, LLC |
| James Stokley d/b/a Choctaw Builders, Inc. | Vernon Construction Corporation |
| Jerome Henin, individually | Vet Construction, Inc. |
| Jim Korn Builders, LLC | Vicinity Drywall, Inc. |
| Jim Morris & Sons, Inc. | Viking Homes of S.W. Florida, Inc. |
| Jim Walter Homes, Inc. | Villa Development, Inc. |
| Jim Walter Homes, L.L.C. | Vintage Properties, Inc. |
| JJK&A Holding Corporation | Vizcaya Custom Homes, Inc. |
| John Korn Builders, LLC | Walker Homes, Inc. |
| John L. Crosby, L.L.C. | Waterways Joint Venture IV, LLC |
| John P. Gregg | WB Construction Company, Inc. |
| John Paul George d/b/a JPG Enterprises, Inc. | Wellington LLC |
| John T. Grab, III | Wellington Shores-Wellington Limited Partnership |
| Johnson & Johnson Home Repairs, L.L.C. | Wermers Development, Inc. |
| Jonathan Scott Shewmake | West Construction, Inc. |
| Joseph E. Clouse, Inc. | Westerheim Properties, Inc. |
| Joseph Scott | Westminster Builders, Inc. |
| JP Renovations, Inc. | William P. Joseph Jr. Construction, Inc. |
| JPG Enterprises, Inc. d/b/a Majestic Homes | Wilson Heights Development, Inc. |
| JST Properties, LLC of Mississippi | Woodall, LLC |
| Judson Construction Group, LLC | Woodland Enterprises, Inc. |
| K. Hovnanian First Homes, LLC d/b/a First Home Builders of Florida | Woodside f/k/a GHO Properties |
| K&B Homes, Inc. | Woodside Homes of Southeast Florida, LLC |
| Kaye Homes, Inc. | Wyndwil, LLC |
| Kaye Homes of South Florida, Inc. | Ybarzabal Contractors, LLC |
| KB Home Florida, LLC | Zamora Corporation |
| KB Home Fort Myers, LLC | |



32018402

Jul 7 2010 7:40PM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 |
| | SECTION: L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
| *Payton, et al. v. Knauf Gips, KG, et al.* No. 09-7628 (E.D.La) | MAG. JUDGE WILKINSON |
| *Rogers, et al. v. Knauf Gips, KG, et al.*, No. 10-362 (E.D.La.) | |

PLAINTIFFS' STEERING COMMITTEE'S
MEMORANDUM IN SUPPORT OF MOTION RESTRICTING
COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS

I.     INTRODUCTION

The Plaintiffs Steering Committee (PSC) hereby moves this Honorable Court pursuant to

Federal Rule of Civil Procedure 23(d)(1)(B) to protect the putative class by prohibiting the Knauf

Defendants, *i.e.*, Knauf GIPS KG; Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"); Knauf

Plasterboard (Wuhu), Co., Ltd.; and Guangdong Knauf New Building Materials Products Co.,

Ltd. a/k/a Knauf Plasterboard (Dongguan) Co., Ltd., and any of the builder defendants named in

any of the Omni Complaints in MDL No. 2047[1], from engaging in improper communications

with putative class members.   Since the inception of this MDL, the Knauf Defendants,

---

[1]A complete list of the builder defendants named in the Omni Complaints is attached as
Exhibit A to the PSC's motion.

particularly KPT, have been engaged in litigation and actively defending themselves.

It has recently come to the PSC's attention through public and private channels, however, that Knauf is engaged in a campaign to settle putative class members' claims through a focused effort to settle with several of the builders of the putative class members' properties. By circumventing the putative class members and negotiating settlements with their builders instead, the fair conduct of the class procedure is being eroded by Knauf with the builders' assistance. Unless Knauf and the builders are required to advise putative class members of the protections afforded by existing class litigation and the empirical value of their claims established by this Court's rulings in *Germano* and *Hernandez*, putative class members will be unfairly treated in the resulting settlements that Knauf may enter into with home builders. Without the class members being fully advised of the true nature and scope of Knauf's and the home builders' liability and the defect in their products, the pendency of this litigation and class members' rights to participate in this litigation, the putative class is being unfairly disadvantaged and harmed by Knauf's conduct and that of the home builders. The PSC therefore respectfully requests that this Court curtail the improper behavior of Knauf and the home builders and approve a curative notice to all putative class members at the expense of Knauf and the home builders to remedy the harm caused by Knauf's improper communications to the putative class through the class members' builders.

## II.     FACTUAL BACKGROUND

The Judicial Panel on Multidistrict Litigation entered its initial Transfer Order establishing this litigation in June 2009. *See In re Chinese Manufacture Products Liability Litig.*, 626 F.Supp.2d 1346 (J.P.M.L. 2009). Since that initial Transfer Order, this Court has

-2-

expedited the litigation. Although the MDL is only at its first anniversary of the initial Transfer Order, already this Court has presided over eight bench trials resulting in judgments and has witnessed the settlement of yet two other bellwether cases on the eve of trial.

In the *Germano* case, this Court made numerous findings of fact and conclusions of law regarding the nature of the product defect in Taishan's drywall and established the parameters involving the scope of remediation.[2] In particular, the Court found the cost of repairing the affected homes was on average $86.00 per square foot.[3] In the *Hernandez* trial, the Court made similar findings related to Knauf's defective drywall.[4] Therein, the Court found the total cost for remediation of the Hernandez home to be $136,940.46, when divided by the square footage of the home (1,688) left a result similar to the *Germano* finding, *i.e.*, $81.00 a square foot.[5]

On May 11, 2010, the Court entered judgment against Knauf in connection with its findings of fact and conclusions of law in the *Hernandez* matter. Knauf apparently disagrees with the Court's findings. Not only has it taken an appeal from the judgment, but it has engaged in extra-judicial efforts to avoid the result of *Hernandez*. In particular, Knauf has publicly engaged in a program of settlement negotiations with home builders of putative class members. For example, on May 17, 2010, CBS News reported that KPT reached a joint settlement with the

---

[2]*See In re Chinese-Manufactured Drywall Products Liability Litigation*, 2010 WL 1445684 (E.D.La. Apr. 8, 2010)["*Germano*"].

[3]*Id.* at *28.

[4]*See In re Chinese-Manufactured Drywall Products Liability Litigation*, 2010 WL 1710434 (E.D.La. Apr. 27, 2010)["*Hernandez*"].

[5]*Id.* at *3 & *20.

Atlanta-based home builder Beazer Homes USA, Inc. *See Chinese Drywall Maker Settles its First Lawsuit*, available at http://www.cbsnews.com/8301-31727_162-20005167-10391695.html.[6] News of Knauf's settlement efforts spread rapidly over the internet. *See, e.g., Knauf Plasterboard's Chinese Drywall Settlement Offers Starting Low*, available at http://www.newsinferno.com/archives/20045.[7] Knauf's notorious efforts to resolve claims with home builders necessarily implicates the rights of putative class members. Knauf's settlement with home builders will not result in putative class members receiving the scope of remedial work deemed appropriate by this Court in both *Germano* and *Hernandez*. Nor will the reported settlements result in recoveries for homeowners at the average per square foot rates determined by this Court as necessary to accomplish full remedial work. And more importantly, the putative class members whose rights will be affected by the settlement with home builders, will not be informed of this Court's findings of fact and conclusions of law in either *Germano* or *Hernandez*. Thus, the putative class members will be distinctly disadvantaged by not being fully apprised of the nature of the damages to their home and the appropriate scope of remediation judicially determined by this Court. *See In re Chinese-Manufactured Drywall Products Liability Litigation*, 2010 WL 1445684 (E.D.La. Apr. 8, 2010).

As a consequence, the PSC is compelled to move this Court to require a curative notice for the putative class so that putative class members can meaningfully decide whether to accept any remediation program proposed to them by their home builders.

---

[6]Attached hereto as Exhibit "A".

[7]Attached hereto as Exhibit "B".

## III.   ARGUMENT

### A.   This Court Has Broad Authority to Prohibit and Regulate Knauf's and the Home Builders' Improper Communication and Solicitation Campaign to Settle Putative Class Members' Claims Pursuant to Federal Rule of Civil Procedure 23(d)(1)(B)

District courts have broad discretionary powers under Fed.R.Civ.P. 23(d) to supervise

communications with class members.  Rule 23(d), in relevant part, states:

> **Conducting the Action.**  In conducting an action under this rule,
> the court may issue orders that: . . . require – to protect class
> members and fairly conduct the action – giving appropriate notice
> to some or all class members of . . . any step in the action.

Fed. R. Civ. P. 23(d)(1)(B)(I).  Many courts have found that this regulatory power is adjunct to

the authority of the courts themselves.  In *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981), the

Supreme Court explained these plenary powers:

> [A] district court has both the duty and the broad authority to
> exercise control over a class action and to enter appropriate orders
> governing the conduct of counsel and parties.

*Id.* at 100.  *See also Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985) and

*In re Federal Skywalk Cases*, 97 F.R.D. 370, 377 (W.D.Mo. 1983).  Rule 23(d) provides this

Court broad authority to manage the conduct of class actions at "any step in the action," not only

after class certification.  *See Hoffman-LaRoche Inc. v. Sperling*, 110 S.Ct. 482, 486 (1989); *See

also Gulf Oil Co.*, 452 U.S. at 101.

Courts have long recognized the potential for abuse that may occur when a defendant or

its counsel communicate with members of a class or proposed class.  *See Gulf Oil Co.*, 452 U.S.

at 99-100; *In re School Asbestos Litig.*, 842 F.d 671, 679 -80 (3d Cir. 1988); *Rossini v. Ogilvy &

Mather, Inc.*, 798 F.2d 590, 601-02 (2d Cir. 1986); *Kleiner*, 751 F.2d at 101-03.  Specifically,

misleading communications to class members or putative class members regarding the litigation

pose a significant threat to the fairness of the proceedings, the fundamental rights of parties, the

adequacy of representation and the general administration of justice generally. *In re School*

*Asbestos Litig.*, 842 F.2d at 680; *See Waldo v. Lakeshore Estates, Inc.*, 433 F.Supp. 783, 790-91

(E.D. La. 1977), *appeal dismissed*, 579 F.2d 642 (5ᵗʰ Cir. 1978) ("Unapproved communications

to class members that misrepresent the status or effect of the pending action also have an obvious

potential for confusion and/or adversely affecting the administration of justice."). "Unsupervised,

unilateral communications with the plaintiff class sabotage the goal of informed consent by

urging exclusion on the basis of one-sided presentation of the facts, without opportunity for

rebuttal. The damage from misstatements could be irreparable." *Kleiner*, 751 F.2d at 1203.

Because of the potential for abuse, district courts have "both the duty and the broad

authority to...enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil*

*Co.*, 452 U.S. at 100; *In re School Asbestos Litig.*, 842 F.2d at 679-80. In *Gulf Oil v. Bernard*,

the Supreme Court advised courts that any order regulating communications with putative class

members should be "based on a clear record and specific findings that reflect a weighing of the

need for a limitation and the potential interference with the rights of the parties." *Gulf Oil*, 452

U.S. at 101.[8]

In discussing the requirements for an order regulating communications with potential

class members, the Supreme Court in *Gulf Oil* quoted *Coles v. Marsh*, 560 F.2d 186 (3d Cir.

1977), *cert. denied*, 434 U.S. 985 (1977):

---

[8]     In *Gulf Oil*, the Court ultimately found invalid an order that imposed a complete ban on
all communications concerning the class action between the parties or their counsel and any actual or
potential class member not a party without prior approval of a court. *Gulf Oil*, 452 U.S. at 102-04.

> [T]o the extent that the district court is empowered...to restrict
> certain communications in order to prevent frustration of the
> policies of Rule 23, it may not exercise the power without a
> specific record showing by the moving party of the particular
> abuses by which it is threatened.  Moreover, the district court must
> find that the showing provides a satisfactory basis for relief and
> that the relief sought would be consistent with the policies of Rule
> 23 giving explicit consideration to the narrowest possible relief
> which would protect the respected parties.

*Coles*, 560 F.2d at 189 (quoted in *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 (1981)).[9]  In seeking

an order limiting defendants' communications with putative Class Members, plaintiffs must

show that a restricting order would guard against the likelihood of serious abuses.  *Gulf Oil*, 452

U.S. at 104.  Plaintiffs do not have to show actual harm.  *See Jennifer v. Delaware Sold Waste*

*Authority*, 1999 WL 117762 (D. Del. Feb. 25, 1999).  Showing that the "interests embodied in

Rule 23 might be hindered is a sufficient finding upon which to base an order limiting contacts."

*See Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 633 (N.D. Tex. 1994).

Following *Gulf Oil*, many courts have been confronted with the need to supervise

inherently coercive communications with absent class members.  That is the issue before the

Court now.  In these situations, courts, almost uniformly order limitations on such

communications, if not curtailing the communications altogether.  *In re School Asbestos Litig.*,

842 F.2d 671 (3d Cir. 1988); *In re Community Bank of Northern Virginia*, 418 F.3d 277 (3d Cir.

2005); *Georgine v. Amchem Prods., Inc.*, 160 F.R.D. 478 (E.D. PA. 1995); *Haffer v. Temple*

---

[9]      *See also* D.F. Herr, *Manual for Complex Litig. Fourth*, ¶ 21.33 (2006) ("The judge has
ultimate control over communications among the parties, third parties, or their agents and Class Members
on the subject matter of the litigation to ensure the integrity of the proceedings and protection of the
class. . . .  If improper communication occur, curative action might be necessary, such as extending
deadlines for opting out, intervening or responding to a proposed settlement, or voiding improperly
solicited opt-out and providing new opportunity to opt-out.")

*University*, 115 F.R.D. 506, 512 (E.D. PA. 1987);  *Kleiner v. First National Bank of Atlanta*, 751.2d 1193 (11th Cir. 1985); *Erhardt v. Prudential Group, Inc.*, 629 F.2d 843, 845 (2d Cir. 1980); *In re Federal Skywalk Cases*, 97 F.R.D. 370, 377 (W.D. Mo. 1983); *Impervious Paint Industries, Inc. v. Ashland Oil*, 508 F.Supp. 720, 722-24 (W.D. Ky. ) *appeal dismissed without opinion*, 659 F. 1081 (6th Cir. 1981); *Tedesco v. Mishkin*, 629 F.Supp. 1474, 1484 (S.D.N.Y. 1986); *Resnick v. American Dental Ass'n*, 95 F.R.D. 372, 376-377 (N.D. Ill. 1982); *Bower v. Bunker Hill Co.*, 689 F.Supp. 1032, 1033-34 (E.D. Wash. 1985); *Zarate v. Younglove*, 86 F.R.D. 80 (C.D. Cal. 1982); *Ralph Oldsmobile, Inc. v. General Motors Corp.*, 2001 WL 1035132, *2 (S.D. N.Y. Sept. 7, 2001); *Jennifer v. Delaware Solid Waste Authority*, 1999 WL 117762 (D. Del. Feb. 25, 1999); *Burrell v. Crown Ent. Petroleum, Inc.*, 176 F.R.D. 239, 242-43 (E.D. Tex. 1997). *See also Turner v. Murphy Oil USA, Inc.*, 2006 WL 286009 (E.D.La. Feb. 6, 2006).

In *Murphy Oil*, this Court was confronted with the unusual situation where after certifying a class action that became  the subject of an interlocutory appeal, a settlement program was instituted by the defendant while the appeal was ongoing.  The defendant was desirous of obtaining opt-outs during the appeal, while class counsel were concerned about the effect such exclusions might have prior to the official notice of the pendency of the class..  The court determined that "class members who wish to participate in the Murphy settlement program should be notified of the consequences of such participation." *Id.* at *2.  The court ordered that notice should issue to the class as a protective measure.  Citing *Kleiner*, the court reasoned that "[p]art of the Court's role in class action litigation is to protect the class and to provide neutral information to class members such that their decisions to opt-out of the class are fully informed, and are not based upon any economic coercion." *Id.*  A judicially crafted notice was

subsequently approved for the class.

In *Erhardt*, the court recognized that it was the responsibility of the district court to prevent any unauthorized notices to class members:

> It is the responsibility of the court to direct the "best notices practicable" to class members, Rule 23(c)(2), and to safeguard them from unauthorized, misleading communications from the parties or their counsel. Unapproved notices to class members which are factually or legally incomplete, lack objectivity and neutrality, or contain untruths will surely result in confusion and adversely affect the administration of justice. To prevent abusive practices in the absence of a local rule, the court should include in its order of notice a provision limiting within constitutional parameters any unauthorized correspondence by parties and their counsel with class members.

*Erhardt*, 629 F.2d at 846.

Of particular concern are communications by defendants with putative class members that are misleading as to the status of pending class action, or that induce class members to opt-out or not cooperate with class counsel. *In re School Asbestos Litigation*, 842 F.2d at 682, *In re Community Bank of Northern* Virginia, 418 F.3d at 311-312; *Georgine*, 160 F.R.D. at 490; *Haffer*, 115 F.R.D. at 512-513; See *Kleiner*, 751 A.2d at 1202; *Ralph Oldsmobile, Inc.*, 2001 WL 1035132 at *4-6; *Jennifer*, 1999 WL 117762 at *2; *Hampton Hardware*, 156 F.R.D. at 633, *Impervious Paint*, 508 F. Supp. at 721-723.

In *Impervious Paint Industries*, an antitrust class action where one defendant improperly contacted absent class members, the court noted that plaintiffs' counsel's relation to the absent class members is unusual during the period between the filing of the class action complaint and the opt-out period, similar to the posture of the case here. *Impervious Paint Industries*, 508 F.Supp. at 722. The court found that class counsel must treat absent class members as clients and

avoid "compromising the rights of the class members," while at the same time avoid unethical solicitation by treating class members as non-clients. *Id.* Significantly, the court held that defendants' counsel's role is likewise restricted during this same period:

> However, we cannot conclude that the corollary of this peculiar circumstance is that the class counsel's adversary has diminished responsibilities. While it is technically correct that a class member does not abandon its claim by opting out of the class, it is beyond cavil that it is in defendants' interest for class members to elect to remove themselves from the action. Reading DR 7-104 as a whole, we believe the implicating is unavoidable that defendants' counsel must treat plaintiff class members as represented by counsel, and must conduct themselves in accordance with both sections of DR 7-104.

*Id.* at 723 (emphasis added). Thus, even before the class is certified, defense counsel are obligated to treat absent class members as represented by class counsel in accordance with ethical restraints and the Federal Rules of Civil Procedure. *Id.*; *See also Resnick*, 95 F.R.D. at 378-79 ("[Defendant] cannot lift language from *Gulf Oil* out of context to insulate communications from its counsel to actual class members."). The rationale for this treatment is that "the imbalance in knowledge and skill which exists between class members and defense counsel presents an extreme potential for prejudice to class members' rights." *Bower*, 698 F.Supp. at 1034.

In *Jennifer*, plaintiffs sought to enjoin defendants from communicating with putative class members where defendants were attempting to coerce putative class members not to participate in litigation and/or settle their claims by executing a release. *Jennifer*, 1999 WL 117762 at *2. The court held that there was potential that certain members of the putative class would be completely unaware of the litigation and by signing a release would waive their right to participate in the class action. *Id.* at *7. The court stated in pertinent part:

> While the defendant may seek to settle individual claims prior to
> certification, the putative class member should know the essence of
> the claim they would be giving up in response tot he solicitation of
> DSWA.  Those who sign the DSWA three-year contract may be
> completely unaware of this litigation and by signing the contract
> would waive their right to participate in the class action.  Some
> potential plaintiffs may wish to participate in the action and,
> therefore, should be given the necessary information and
> opportunity to choose between signing the contract and
> participating in the differential pricing program or not
> participating, but have the right to ship waste out of the state.

*Id.* at *7. The same concerns apply to this matter.  The court in *Jennifer* required defendants to

properly notify each class member at the time it seeks a signing of the release so that they have

sufficient notice of the pendency of the action.  *Id.*  In addition, the court required that a similar

notification must be provided to those putative class members who already received settlement

information." *Id.*

 Similarly, in *Ralph Oldsmobile, Inc.,* the court addressed the potential abuse of

defendant's settlement communications and obtaining releases from unknowing putative class

members.  The class representative plaintiff moved, pursuant to Fed. R. Civ. P. 23, for an order

requiring defendant "to seek and desist his practice of obtaining *ex parte* releases from putative

class members," voiding those releases already obtained, and requiring defendant "to send a

court-approved corrected notice" that any such releases had been voided.  *Ralph Oldsmobile,*

*Inc.*, 2001 WL 1035132 at *1.  This is the same scenario before this Court. The district court in

*Ralph Oldsmobile, Inc.* found that the record supported findings of <u>potential</u> <u>abuse</u> in defendants'

communications with putative class members resulting from the potentially unknowing waivers

of rights or claims by the execution of a release by putative class members.  *Id.* at *3.  The court

specifically pointed out the release purported to waive claims, but failed to mention the class

-11-

action, which resulted in risk that class members may sign a release without knowing what they were releasing. *Id.* The same concerns apply to this matter. The court determined that an unknowing release is abusive and ordered relief in the form of curative notice be given in future settlements and releases. *Id.*[10]

In the instant matter, Knauf's settlements with builders obfuscates or avoids informing putative class members of the pendency of this action and the results obtained by the PSC in the bellwether trials to date. This behavior will obstruct the PSC and this Court's duty to protect class members and otherwise protect the integrity of the class action process.

**B.    Neither Knauf Nor the Homebuilders Have an Untrammeled Right to Communicate With Putative Class Members.  Non-commercial Speech May be Limited to Meet the Requirements of Rule 23.**

An order restricting communications between parties and putative class member must take into account the rights of the parties under the First Amendment. *In re School Asbestos Litig.*, 842 F.2d 671, 680 (3d Cir. 1988). However, misleading, false or deceptive speech has no protection under the First Amendment.[11] Indeed, Knauf's rights to engage in commercial speech may be regulated further than the right to pure speech. *See Friedman v. Rogers*, 440 U.S. 1, 11

---

[10]     The Court declined to void the releases that already had been executed. *Id.* at *7. Rather the Court decided that it would consider an application to void a release made by any class member who signed such a releases prior to receiving notice. Such a statement would be included in the notice to all potential class members and it would advise the class members of their rights. *Id.*

[11]     *See Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 556, 566 (1980) ("For commercial speech to come within [the First Amendment], it at least must...not be misleading."); *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626, 638 (1985) ("The States and the Federal Government are free to prevent the dissemination of commercial speech that is false, deceptive, or misleading...'); *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 949 (3d Cir. 1993) ("[F]alse commercial speech is not protected by the First Amendment and may be banned entirely.").

-12-

n.9 (1979)(*quoting Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447 (1978)):

> When dealing with restrictions on commercial speech we frame
> our decisions narrowly "allowing modes of regulations [of
> commercial speech] that might be impermissible in the realm of
> non-commercial expression."

*See also Virginia Pharmacy Board v. Virginia Citizens Consumers Council*, 425 U.S. 748, 771-

72 (1976)( "the first amendment, as we construe it today, does not prohibit the state from

insuring that the stream of commercial information flow cleanly as well as freely").

In the case at bar, there can be no serious question that defendants' proposed speech is

commercial and therefore can be prohibited by this Court. *See Kliener v. First National Bank of

Atlanta*, 751 F.2d 1193 (11th Cir. 1985)(District Court's order protected class members against

possible one-sided, unsupervised, unreviewable communications was upheld under the

commercial speech standard). The Court of Appeals in *Kleiner* with respect to the defendant's

commercial speech stated:

> The Bank's entreaties indubitably amounted to speech of a
> commercial bent. Commercial Speech consists of expression
> related largely or solely to the economic interests of the speaker
> and the audience. Commercial speech encompasses not merely
> direct invitations to trade, but also communications designed to
> advance business interests, exclusive of beliefs and ideas.

*Id.* at 1203 n. 22 (citations omitted). Clearly, the defendants' settlement efforts result in

inaccurate communications with class members that involve commercial speech.

Knauf or the home builders may argue that the First Amendment provides them the right

to engage in alleged accurate but one-sided commercial speech, irrespective of the potential

harmful effects on the class and individual Class Members. The Supreme Court, however, has

rejected such an argument. For example, in *Posadas de Puerto Rico Associates v. Tourism Co.*

-13-

*of Puerto Rico*, 478 U.S. 328 (1986), the Supreme Court upheld a Puerto Rican statute

prohibiting local casinos from advertising their gambling facilities to residents of Puerto Rico,

but allowing them to advertise to potential tourists in the continental United States and

elsewhere. The Supreme Court held that Puerto Rico could curtail commercial speech where its

legislative body reasonably found that such speech could potentially have a harmful effect on its

audience. The Supreme Court found that the legislation was not overly restrictive since such

regulation would reduce gambling more than "promulgating additional speech designed to

discourage gambling." *Id*. at 344.

   In *Kleiner*, the court recognized that restrictions on commercial speech are not entitled to

the strict prior restraint doctrine applied to pure speech. *Kleiner*, 751 F.2d at 1205. As the court

there held:

> In the domain of commercial speech, as discussed, the Supreme
> Court had issued repeated admonitions against the wholesale
> incorporation of the law of prior restraint. *Athena Products*, 654
> F.2d at 367. We therefore judge petitioner's prior restraint
> argument under a relaxed standard of scrutiny better suited to the
> hardiness of commercial speech. *Cf. In re San Juan Star Co.*, 662
> F.2d 108, 116 (1ˢᵗ Cir. 1981) (relaxed standard for review of order
> prohibiting dissemination to press of communications produced
> during discovery).

*Id*. Thus, the court in *Kleiner*, under a "heightened sensitivity" approach, upheld the district

court's ban on exclusion solicitations through the end of the exclusion period.

   Additionally, it has long been recognized that even the right of pure speech can be

abridged in the litigation process. In *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 n. 18

(1984), the Supreme Court held:

> Although litigants do not "surrender their First Amendment rights

> at the courthouse door," *In re Halkin*, 194 U.S. App. D.C., at 268,
> 598 F.2d at 186, those rights may be subordinated to other interests
> that arise in this setting.  For instance, on several occasions this
> Court has approved restriction on the communications of trial
> participants where necessary to ensure a fair trial for a criminal
> defendant. . . .  In the conduct of a case, a court often finds it
> necessary to restrict the free expression of participants, including
> counsel, witnesses, and jurors.

*Id.* (footnotes omitted).  *See also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 104 n. 21 (1981).

Based on the above, Knauf's settlement overtures to builders is misleading speech viz. putative class members.  Therefore, any order regulating such speech does not pose any First Amendment concerns.

### C.   Knauf's and the Homebuilders' Misleading Settlement Communications Requires Appropriate Relief, Including Curative Notice.

An injunction-like order may be issued by this Court pursuant to Rule 23(d), without regard to the requirements for a preliminary injunction under Rule 65.  In *Kleiner*, the court upheld just such an order which did not satisfy the requirements of Rule 65:

> [W]e do not fault the orders for perceived procedural defects under
> Fed.R.Civ.P. 65(d).  Rule 65(d) states that injunctions and
> restraining orders must set forth the reasons for their issuance and
> identify, with reasonable detail, the acts to be restrained.  The
> orders at issue, however, are of a different ilk.  The lower court
> correctly characterized the rulings as directives to counsel in their
> capacity as officers of the court, pursuant to the court's inherent
> power to manage its cases.  *See* Fed.R.Civ.P. 23(d)(2).  The more
> relaxed prerequisites of Rule 23(d)(2) *therefore* [are] applied, as
> the district court noted:
>
> > Findings of fact and technical precision are
> > unnecessary for such direction to be valid; rather the
> > direction must only be (a) within the Court's power
> > and (b) specific enough so that counsel may
> > understand what conduct or action is required.

-15-

Opinion of the district court at 34.  The trial court justifiably found
that both criteria were "amply met in the instant case."

*Kleiner*, 751 F.d at 1201.  Thus, to ban settlements between Knauf and builders that fail to

inform putative class members of their rights and curative notice sought by Plaintiffs may be

issued pursuant to this Court's inherent authority under Rule 23(d)(2) to protect the integrity of

the Rule 23 class action device and to protect class members; it is not an injunction sought

pursuant to Rule 65.  However, like any injunction issued by this Court, a violation of this

Court's order may be punished by this Court regardless of where the violation occurs.  *See*

*United States Steel Corp. v. Multistate Tax Comm'n*, 367 F.Supp. 107, 117 (S.D.N.Y. 1973).

The dangers of Knauf's settlement communications with homebuilders is that the

communications are directed to putative Class Members and that they are inaccurate, one-sided,

coercive, and misleading.  *See In re Community Back of Northern Virginia*, 418 F.3d at 310-311;

*Georgine*, 160 F.R.D. at 498; *Haffer*, 115 F.R.D. at 512; *Kleiner*, 751 A. 2d at 1202; *Ralph*

*Oldsmobile, Inc.*, 2000 WL 1035132 at *3-4; *Jennifer*, 1999 WL 117762 at *7; *Hampton*

*Hardware*, 156 F.R.D. at 633; *Impervious Paint Industries*, 528 F.Supp. at 721-723.  The

settlement communications also raise the potential abuse of unknowing waivers of claims and

rights by putative class members.  *See Ralph Oldsmobile, Inc.*, 2000 WL 1035132 at *3-4;

*Jennifer*, 1999 WL 117762 at *7.

Knauf's unsupervised communications to settle with Class Members create "possibilities

for deception" and therefore threaten Rule 23.  Such communications should not be sanctioned

by this Court.  *See Impervious Paint Industries v. Ashland Oil*, 508 F.Supp. 720 (W.D. Ky.),

*appeal dismissed without opinion*, 659 F.2d 1081 (6th Cir. 1981)(the court enjoined defendants

-16-

from seeking class member exclusions).   In *Impervious Paint Industries*, the court discussed the importance of the independence of the class member's decision to participate in class litigation and the responsibility of the court to assure this independent participation:

> It is essential that the class member's decision to participate or to withdraw be made on the basis of an independent analysis of its own self-interest.  It is the responsibility of the court as a neutral arbiter and of the attorneys in their adversarial capacity, to ensure this type of free and unfettered decision.  The mechanism selected for accomplishing this is the class notice, which is designed to present the relevant facts in an unbiased format.

*Id.* at 723 (emphasis added).  And here, as in *Impervious Paint Industries*, the Court must protect the Class Members' right to make an independent, uncoerced decision with respect to participating in the class action or settling their claims with home builders on their own:

> In this type of case, both sides are subject to tremendous pressure to step over the thin line between vigorous advocacy and overreaching.  It is essential that the class member's decision to participate or to withdraw be made on the basis of an independent analysis of its own self-interest.  It is the responsibility of the court as a neutral arbiter, and of the attorneys in their adversarial capacity to insure this type of free and unfettered decision.
>
> The mechanism selected for accomplishing this is the class notice, which is designed to present the relevant facts in an unbiased format.

*Id.*

Of particular concern is Knauf's attempt to have putative class members unknowingly release rights or claims by the signing of a release by not disclosing the significant findings of fact by this Court in both *Germano* and *Hernandez* regarding the value of their claims, as well as holdings from state court trials. *See Jennifer*, 1999 WL 117762 at *7; *Ralph Oldsmobile, Inc.*, 2001 WL 1035132 at *3-4.  Courts have prohibited such attempts by defendants and ordered

-17-

curative notices be sent to putative Class Members who have received a release and to all

potential Class Members in the future when defendant seeks a signing of a release. *Id.* The court

in *Ralph Oldsmobile, Inc.*, stressed the importance that the putative Class Members have

sufficient information to make an informed decision and not unknowingly waive rights or claims

by executing a release. *Ralph Oldsmobile*, 2001 WL 1035132 at *4-6. Such an unknowing

release would be abusive and warrants relief in the form of curative notice. *Id.* This is a point

made in the Manual for Complex Litigation Fourth ¶ 21:33 (2006), where the authors note:

> The judge has ultimate control over communications among the
> parties, third parties, or their agents and Class Members on the
> subject matter of the litigation to ensure the integrity of the
> proceedings and protection of the class. . . If improper
> communication occur, curative action might be necessary, such as
> extending deadlines for opting out, intervening or responding to a
> proposed settlement, or voiding improperly solicited opt-out and
> providing new opportunity to opt-out.

Plainly, this Court has authority to enjoin Knauf's and home builders' conduct and

approve a curative notice to rectify the harm caused by withholding material information from

putative class members pursuant to Rule 23(d). In light of the aforementioned reasons, plaintiffs

request that the Court issue an appropriate order directing the conduct of this action and approve

a curative notice.

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant the PSC's motion. A proposed form of

notice is attached hereto as Exhibit "C".

Respectfully submitted,

Dated: July 7, 2010

/s/ Russ M. Herman
Russ M. Herman, Esquire (Bar No. 6819)
Leonard A. Davis, Esquire (Bar No. 14190)
Stephen J. Herman, Esquire (Bar No. 23129)
HERMAN, HERMAN, KATZ & COTLAR, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin (On the Brief)
Fred S. Longer (On the Brief)
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

-19-

Victor Manuel Diaz
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Aragon Avenue, 2nd Floor
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
  Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

Bruce William Steckler
Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
  & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seth Parker
Parker, Waichman, Alonso LLP
3301 Bonita Beach Road
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

James Robert Reeves
Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W
Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
rlewis@hausfeldllp.com

Jeremy W. Alters
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 N.E. 2nd Avenue, Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@abbrclaw.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
rserpe@serpefirm.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Plaintiffs' Steering Committee's Memorandum in Support of Motion Restricting Communications with Putative Class Members has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 7th day of July, 2010.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
LDavis@hhkc.com
Plaintiffs' Liaison Counsel
MDL 2047

-21-



32018402

Jul 7 2010 7:40PM

# EXHIBIT A

CBS News Investigates May 17, 2010 3:52 PM

# Chinese Drywall Maker Settles its First Lawsuit

**Posted by CBS News Investigates**



The Chinese manufacturer at the center of the defective drywall controversy has settled its first lawsuit.

Knauf Plasterboard Tianjin Co. reached a joint settlement Friday with the Atlanta-based homebuilder Beazer Homes USA, Inc. according to an email statement by the law firm representing Knauf.

The details of the settlement will be made public in the coming days.

CBS News has also been told that Knauf is in confidential settlement talks with 6 to 10 other builders that, like Beazer Homes, unknowingly used the bad drywall to constructed homes and were then forced to repair the damage.

Knauf is facing about 200 federal lawsuits from U.S. homeowners and builders accusing the company of making defective drywall that is said to destroy homes, in part, by causing extreme accelerated corrosion, rotting everything inside. As a result, the homes built with the bad drywall are, in most cases, worthless and unlivable.

As of Monday, the Consumer Product Safety Commission has received a total of 3,296 complaints from homeowners in 37 states plus the District of Columbia, American Samoa, and Puerto Rico who claim to have defective drywall made by a variety of drywall companies. The root cause of the problem is still highly debated and unknown.

Last month, a federal judge in New Orleans, who is presiding over all the defective drywall cases against Chinese drywall makers, ruled that Knauf must pay $164,000 in damages, plus attorneys' fees and court costs, to a Louisiana couple.

In March, in a separate case, the same judge ruled that another Chinese drywall manufacturer, Taishan Gypsum Company, must pay a total of $2.6 million to seven Virginia homeowners. In June, the judge will decide on how to deal with the class-action lawsuits.

In the email statement, Knauf's lawyer Don Hayden said "the settlement with Beazer is part of [Knauf's] effort to get this issue behind them and move forward." The statement does not address whether or not Knauf plans to settle any lawsuits filed by homeowners. However, Knauf's Louisiana-based lawyer, Kerry Miller, told CBS News that Knauf would "love to have settlements with homeowners too." But, he said, homeowners are represented by attorneys making it difficult for Knauf to negotiate with them directly.

Connect with CBS NewsFacebookTwitterX



32018402

Jul 7 2010 7:40PM

# EXHIBIT B

| Home | Categories | Partnerships | Contact Us |

**Search The Inferno**

[        Search    ]

## News Categories

*Accident* (275)

*Bus Accident* (5)

*Cellular Phone* (17)

*Chinese Drywall* (64)

*Class Action Lawsuits* (14)

*Construction Accidents* (9)

*Consumer Fraud* (82)

*Defective Medical Devices* (415)

*Defective Products* (1267)

*Denture Cream* (23)

*Discrimination* (5)

*Food Poisoning* (858)

*Health Concerns* (2089)

*Legal News* (4365)

*Oil Spills* (64)

*Pharmaceuticals* (1597)

*Press Releases* (4)

*Product Recalls* (1109)

*Stock Fraud* (196)

*YAZ Birth Control* (16)

## Hot News Topics

*Vioxx*

*Zyprexa*

*Asbestos*

## Government Notices

*FDA*

*FTC*

*CPSC*

# Knauf Plasterboard's Chinese Drywall Settlement Offers Starting Low

Date Published: Monday, May 3rd, 2010

[ BOOKMARK  ] [ PRINT THIS ARTICLE ] [ SEND TO A FRIEND ]

Knauf Plasterboard Tianjin Co. Ltd., one of the Chinese manufacturers at the center of the defective *Chinese drywall debacle*, has reportedly been offering some builders settlement offers. But according to a report in the Sarasota Herald Tribune, those offers – in the neighborhood of $18 per square foot – are substantially lower than what a federal judge awarded last week to a Louisiana couple that had sued Knauf over the tainted wallboard.

Last week U.S. District Judge Eldon E. Fallon awarded over $164,000 to the plaintiffs in that lawsuit. The case was the first contested trial in the Chinese drywall multidistrict litigation underway in federal court in Louisiana. It was considered a bellwether case, and could serve as a guideline in other suits.

The ruling by Judge Fallon mandated that the plaintiffs' home be gutted down to the studs. The Judge also ruled that the plaintiffs were entitled to damages for the cost of personal property damaged by the drywall gases, relocation costs, and loss of use and enjoyment of the home. The award was based, in part, on Judge Fallon's determination that it would cost about $81 per square foot to remediate the home.

Some attorneys interviewed by the Herald-Tribune said a figure like the $18 per square foot that Knauf has reportedly offered builders may be a way for the company to test the waters for a possible settlement. As the report pointed out, that amount is even lower than what Knauf had pushed for in the case decided last week. The company had argued the home only needed to have drywall removed and replaced, something it said could be achieved for $49 per square foot. Judge Fallon categorically rejected that assessment.

Because Judge Fallon rejected its argument, the Herald-Tribune said Knauf may now believe it's in its best interest to settle Chinese drywall cases and cut its losses.

It is also possible the lower figure being bandied about by Knauf is based on the assumption that builders would require less money to remediate homes, due to factors like discounts they would

Knauf Plasterboard's Chinese Drywall Settlement Offers Starting Low                          Page 2 of 3

EPA

NHTSB

FAA

## Archives

June 2010

May 2010

April 2010

March 2010

February 2010

January 2010

December 2009

November 2009

October 2009

September 2009

August 2009

July 2009

June 2009

May 2009

April 2009

March 2009

February 2009

January 2009

December 2008

November 2008

October 2008

September 2008

August 2008

July 2008

June 2008

May 2008

April 2008

March 2008

February 2008

January 2008

December 2007

November 2007

October 2007

September 2007

August 2007

July 2007

receive on materials. However, according to the Herald-Tribune, remediating a home according to Judge Fallon's specifications would still cost builders as much as $75 per square foot.

The report also said it would be legally risky for any builder not to follow the guidelines set forth by Judge Fallon.

<

This entry was posted on Monday, May 3rd, 2010 at 8:07 am and is filed under Chinese Drywall.

You can skip to the end and leave a response. Pinging is currently not allowed.

« Lead Paint Violations Prompt Recall Of Sports Balls

FDA Warns on Vita Breath Dietary Supplements »

## Leave a Reply

Name (required)

E—mail address(will not be published) (required)

Please enter the verification code*   `hzizzmrd`

Submit Comment



Jul 7 2010 7:40PM

# EXHIBIT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 <br><br> SECTION: L |
| THIS DOCUMENT RELATES TO: <br><br> *Payton, et al. v. Knauf Gips, KG, et al.* No. 09-7628 (E.D.La) <br><br> *Rogers, et al. v. Knauf Gips, KG, et al.*, No. 10-362 (E.D.La.) | JUDGE FALLON <br><br> MAG. JUDGE WILKINSON |

### OFFICIAL COURT NOTICE

TO:   All owners and residents (past or present) of real property located in the United States containing defective Chinese drywall manufactured, sold, distributed, and/or supplied by Knauf.

**PLEASE READ THIS NOTICE CAREFULLY AS YOUR LEGAL RIGHTS MAY BE AFFECTED BY THE CLASS ACTION LAWSUIT NOW PENDING IN THIS COURT.**

On June 15, 2009, the Judicial Panel on Multidistrict Litigation determined that all actions sharing factual questions concerning drywall manufactured in China, imported to and distributed in the United States, and used in the construction of houses in which plaintiffs alleged that the drywall emits smelly, corrosive gases, should be centralized in this court for pretrial purposes.  This court is now presiding over the multidistrict litigation in which class action lawsuits against several related defendants, including Knauf GIPS KG; Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"); Knauf Plasterboard (Wuhu), Co., Ltd.; and Guangdong Knauf New Building Materials Products Co., Ltd. a/k/a Knauf Plasterboard (Dongguan) Co., Ltd, *i.e.,* the

"Knauf Defendants," and numerous homebuilders are alleged to have manufactured, distributed and sold in the United States defective drywall that was manufactured in China. In these cases, the plaintiffs are alleging claims sounding in negligence, negligence per se, strict liability, breach of warranty, breach of contract, redhibition, nuisance, negligent discharge of a corrosive substance, unjust enrichment, violation of consumer protection laws, and other equitable claims. The Court has not yet decided whether these actions can proceed as class actions nor has the court made any determination of the Knauf Defendants' or homebuilders' liability in connection with the claims asserted in these class actions.

Since the inception of this litigation, this Court has presided over two trials involving eight homeowners. The first trial involved default proceedings against a Chinese manufacturer (Taishan Gypsum Co., Ltd.) on behalf of seven homeowners in Virginia. The Court made detailed findings of fact and conclusions of law and awarded these seven homeowners $2,609,129.99, along with attorneys fees and costs. The Court's ruling is available at http://www.laed.uscourts.gov/Drywall/Orders/Germano.FFCL.pdf. After the issuance of this ruling, Taishan Gypsum Co., Ltd. entered its appearance in the case and has appealed the Court's ruling to the United States Court of Appeals for the Fifth Circuit.

In the second trial, *Hernandez v. Knauf GIPS KG*, No. 09-6050 (E.D.La.), the Knauf entity, KPT, was the only defendant. In the *Hernandez* litigation, KPT participated and defended itself against the claims of a homeowner whose home was constructed with KPT drywall that the home must be remediated. At the conclusion of the trial, the Court found in favor of the plaintiff homeowner and against KPT in the amount of $164,049.64, along with attorneys fees and costs. The Court entered Findings of Fact and Conclusions of Law specific to the homeowner's claim

on April 27, 2010.  Amongst the several findings, the Court determined the following remedial measures were required:

    \* All drywall must be replaced

    \* All cabinets and fixtures must be replaced

    \* All electrical appliances must be replaced

    \* All components of the HVAC system, including ductwork, must be replaced

    \* All copper piping must be replaced

    \* A micro-cleaning of all surfaces must occur

    \* Certification of remediation from an independent contractor must be provided

    \* Moving expenses and other costs incidental to the repair work and displacement must be provided

A full copy of the court's findings from the Hernandez trial is available at http://www.laed.uscourts.gov/Drywall/MinuteEntries/Hernandez.FFCL.pdf.  Following the above determinations, the Court entered judgment on behalf of the Hernandez's on May 11, 2010.  KPT has appealed the Court's rulings and that matter is currently pending in the United States Court of Appeals for the Fifth Circuit.

After the trial of the *Hernandez* case, other cases involving two homeowners with claims against KPT were scheduled for trial before this Court on June 23, 2010.  On the eve of trial that matter was resolved.

Additionally, this Court is aware of and is coordinating litigation that has been ongoing in state courts.  In a Florida case involving homeowners of property constructed with KPT drywall,. *Seifart v. Banner Supply Co.*, Case No. 09-38887 CA 01 (42) (Miami-Dade Cty. Cir.Ct), a jury

3

verdict was obtained in favor of the homeowners against their drywall supplier on June 18, 2010. The jury awarded the Seifarts $2,465,359.53 for remediation costs, replacement costs, temporary housing, cleaning costs, additional utilities, storage costs, additional interest on credit cards, loss of use and enjoyment and diminished value of the property.

     In the meantime, the Court has been advised that the Knauf defendants have been engaged in settlement discussions with homebuilders that in the past constructed homes with Knauf's Chinese manufactured drywall. The Court has been further apprized that the Knauf defendants have entered into confidential settlement agreements with certain home builders. Because the terms of these settlement agreements are confidential, putative class members are not being informed of the pendency of the class actions in this Court, the judgments entered by this Court against Chinese drywall manufacturers, and settlements obtained under the supervision of this Court against KPT. Because the Court has determined that this information might be material to a homeowner in connection with the homeowner's decision to accept the terms of any home builder that has resolved its claims with the Knauf defendants, the Court has authorized this Notice. You do not have to accept or reject any settlement offer by your home builder as a result of this Notice. The Court has merely determined that you should be aware of these findings when making any decision about any settlement offer including any remediation plan offered to you.

     In addition, the Court does not intend for this notice to be considered an endorsement of any of the activities in the pending class actions. At an appropriate time, the court will consider the merits of the class actions and if it is deemed proper, you will be provided a separate notice informing you of your rights and obligations in those cases.

If you have any questions concerning the activities taking place in this litigation, more information is available on the Court's Web site, www.laed.uscourts.gov (follow the "Drywall MDL" link).  You may also contact your own lawyer or any of the lawyers participating in these cases.

The above notice is approved for publication this _____ day of _____, 2010.

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL No. 2047 |
| | SECTION: L |
| This Document Relates to: | |
| | Judge Fallon |
| Payton, et al. v Knauf Gips, KG, et al. No. 09-7628 | |
| | Mag. Judge Wilkinson |
| Rogers, et al. v. Knauf Gips, KG, et al. Not. 10-362 | |

_____/

### HOMEBUILDERS' STEERING COMMITTEE'S RESPONSE IN OPPOSITION TO THE PLAINTIFFS' STEERING COMMITTEE'S MOTION RESTRICTING COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS

The Homebuilders' Steering Committee ("HSC"), opposes the Plaintiffs' Steering Committee's ("PSC") Motion Restricting Communications with Putative Class, and their supporting memorandum ("PSC's Motion") for the reasons set forth below.

### I.      Introduction

For the second time in this litigation, the PSC has filed a baseless motion seeking to restrict homebuilders from engaging in settlement talks with other parties.  In their first motion, without having any factual basis, the PSC sought to prevent homebuilders from entering into agreements to repair their homeowners' homes.  The Court denied the relief sought in the PSC's first motion by order dated September 24, 2009 (while requiring language notifying homeowners of the MDL case) . [D.E. 278]

Now, again with no factual basis, the PSC seeks to prevent homebuilders from settling with one of the manufacturers (Knauf) of the defective drywall at issue in these cases.  The ostensible, and patently unfounded, basis for their motion is that the homebuilders are somehow "improperly" communicating with homeowners by engaging in settlement talks with Knauf.

1

However, nowhere in the PSC's motion or brief is there a single piece of evidence that any homebuilder has communicated with any homeowner in connection with any settlement discussions with Knauf, much less any evidence of "improper" communications. Indeed, at no point in their motion or brief does the PSC explain how they arrived at the notion that homebuilders would be communicating with homeowners in seeking reimbursement from Knauf for the considerable costs these homebuilders are incurring in repairing these homeowners' homes and relocating these homeowners during the period of repair. To the contrary, communicating with homeowners is not necessary in this context.

Moreover, even if homebuilder-homeowner communications had occurred in this context, unless the PSC has evidence that those communications ran afoul of the Court's September 24, 2009 order, there is no basis for the motion. Yet, in their brief, the PSC never even mentions the Court's prior order, much less presents evidence that any homebuilder has violated it.

Thus, the entire factual premise of the PSC's motion is missing. In addition, the thrust of the motion is troubling. When one considers the PSC's prior motion in combination with the instant motion, it seems that the PSC does not want putative class members' homes to be repaired, and does not want homebuilders--the only ones who have stepped up to the plate and actually repaired homes--to have any avenue available to recover some portion of their costs expended in doing so. None of this is factually or legally grounded, nor does it appear to be in the interest of homeowners. The PSC's motion should be denied.

## II.    Factual Background

While the facts relating to the individual homebuilders vary somewhat, typically, beginning in 2009, the larger homebuilders notified homeowners of the media reports and

2

offered to inspect their homes. In some instances, homeowners contacted the homebuilders first. Many homeowners corresponded with the homebuilders through legal counsel. Most homeowners accepted the homebuilders' offer of an inspection.

During the course of the inspections, the homebuilders learned that subcontractors had installed defective Chinese-manufactured drywall in some of their homes. In those instances, the homebuilders offered to pay for temporary relocation expenses, to replace the defective Chinese-manufactured drywall with non-defective domestic drywall, to conduct extensive additional repairs, and in some instances, to warrant the work and to compensate the homeowners for incidental costs. In exchange, the homebuilders requested from homeowners an assignment and a release **for property damage claims only**.

No large homebuilder in the MDL requested a release of personal injury claims. The homebuilders in the MDL made repairs without any monetary contribution from homeowners or others despite the enormous costs involved (although Beazer apparently has now received a settlement payment from Knauf). Some smaller homebuilders have now been added to the MDL who simply do not have sufficient assets to make the repairs.

The plaintiffs' lawyers in at least two putative drywall class actions filed motions virtually identical to the PSC's Motion in federal courts in Florida and Ohio. Both federal courts denied those motions based on *Gulf Oil* and its progeny. The motion, the hearing transcript, and the court's order in *Kristin Culliton v. Taylor Morrison Services, inc., et al.,* U.S. Dist. Court, Middle Dist. of Florida, Case No. 09-cv-00589-JDW-TGW (MDL Case No. 09-4114) was previously filed in opposition to the PSC's original motion to prohibit settlement communications between homebuilders and homeowners. The motion, the hearing transcript,

and the court's order in *Steven Minafri v. M/I Homes, Inc., et al.*, U.S. Dist. Court, Southern Dist. of Ohio, Case No. 2:09-cv-167 (MDL Case No. 09-4120) was also filed.

Thereafter, the PSC filed an almost identical motion in this MDL proceeding seeking to restrict the homebuilders from discussing settlements with homeowners. During the hearing on September 24, 2009, this Court held:

> I look to the *Gulf Oil* case. In *Gulf Oil v. Bernard*, the United States Supreme Court indicated that the order limiting communication should be based on a clear record and specific findings, weighing the need for restrictions against the interference with the parties' first amendment rights.
>
> I have a small record before me. I have all of the releases given to me by the plaintiffs and also some affidavits given to me by defendants of individuals who have signed the releases. The releases that I have looked at, all but perhaps three specifically say that personal injury claims are excluded. The three don't specifically that, but they dwell on only property damage.
>
> A review of the material indicates that at the present time there's no clear record demonstrating misleading information or coercive or abusive communication. Also, I note that under 558, the builders have a right and perhaps even a duty to seek and to remedy the conditions caused by their installation of the defective Chinese drywall.
>
> At the present time, I have no record of showing that there's any abuses. As I read the law, that's what's necessary. I'm going to deny the motion, but I do also advise the parties that I expect them to tell the clients that the parties who have signed the releases have a right to counsel before they sign the releases. Henceforth, I also want you to advise them of the MDL proceeding and give them the Court's website to that particular proceeding. I also mention to the parties that this does not mean that they can't move on specific releases to set aside the releases, for various reasons, if they have good reason."

9/24/09 Hearing Transcript at p. 15 (3-25) to p. 16 (1-7)

The PSC never followed up with any motion directed to a specific home or specific release and nearly a year has passed. The current motion by the PSC is even more far reaching, as it extends to settlement discussions to which the PSC and the homeowners are not even parties.

4

## III.     Legal Argument

The PSC argues, and the HSC agrees, that the Court has "broad discretionary powers…to supervise communications [by defense counsel] with class members." *See PSC's Motion, citing Fed. R. Civ. P. 23(d).*  It is uncontradicted, however, that the homebuilders' customers are not "class members" because no class has been certified in this MDL or in any case transferred to it. The PSC also ignores the First Amendment limitations that circumscribe the Court's "broad discretionary powers" in this context.  Contrary to the PSC's argument, federal courts generally hold that parties cannot be prohibited from communicating with putative class members, prior to class certification, unless there is a clear finding that the communications are misleading or coercive, and that this outweighs the infringement of the parties' right to communicate with non-parties. *See Section III.A. below.*  Indeed, as demonstrated in section III.C. below, cases on which the PSC relies emphasize courts' limited authority to restrict parties' rights to communicate with putative class members.

### A.     The Homebuilders are legally permitted to communicate with Knauf or homeowners to negotiate settlements prior to certification of a class, so long as their communications are not misleading or coercive

The starting point for this analysis is the Supreme Court's decision in *Gulf Oil Co. v. Bernard,* 452 U.S. 89 (1981).  In *Gulf Oil*, the Court struck down a district court order prohibiting communications between the plaintiffs' counsel in an uncertified class action and putative class members.  The Supreme Court found that "the order was an abuse of discretion," explaining:

> [A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties. But this discretion is not unlimited…. The record reveals no grounds on which the District Court could have determined that it was necessary or appropriate to impose this order….[T]he order involved serious restrains on expression.  This fact, at minimum, counsels caution on a part of a district court in

5

drafting such an order, and attention to whether the restraint is justified by a likelihood of serious abuses.

452 U.S. at 100, 103-04.  Although the Court recognized that parties' communications with putative class members might result in abuses in some circumstances, it held that "the mere possibility of abuses does not justify routine adoption of a communications ban."  *Id.* at 104.  A court may enter "a carefully drawn order that limits speech as little as possible" but it can do so only on the basis of a "clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties."  *Id.* at 101-02.

After *Gulf Oil*, the federal courts have generally agreed that parties cannot be prohibited from communicating with putative class members, prior to class certification, unless there is a clear finding that the communications are misleading or coercive and that this outweighs the infringement of the parties' right to communicate with non-parties.  For example, in *Payne v. Goodyear Tire & Rubber Co.,* 207 F.R.D. 16 (D. Mass. 2002), homeowners brought a putative class action case against the manufacturer of allegedly defective floor heating hoses.  The homeowners moved to prevent the manufacturer from communicating with putative class members and inspecting homes.  The court denied the request and refused to order the manufacturer to modify its website.  It explained: "Considering all of the evidence put forth by the plaintiffs, an order barring ex parte communication with absent plaintiffs is not justified by the record currently before the court."  *Id.* at 20. "What remains on Goodyear's website regarding Entran II hose is, in essence, the company's opinion on the hose's functionality." *Id.*

Even cases predating *Gulf Oil* generally allowed communications to "putative" class members.  In *Weight Watchers of Philadelphia, Inc., v. Weight Watchers International, Inc.,* 455 F.2d 770 (2d Cir. 1972), a franchisee brought a class action alleging antitrust violations.  The chairman of the defendant's board of directors sent a letter to all putative class member

6

franchisees stating, among other things, that the lawsuit would have a detrimental affect on the image of the parent company. The plaintiff moved to preclude the defendant from communicating with any potential member of the class and attempting to settle the claims of potential class members. The court held:

> Indeed, we are unable to perceive any legal theory that would endow a plaintiff who has brought what would have been a "spurious" class action under former Rule 23 with a right to prevent negotiation of settlements between the defendant and other potential members of the class who are of the mind to do this; it is only the settlement of the class action itself without court approval that Fed.R.Civ.P. 23(e) prohibits.

*Id.* at 773.

The *Weight Watchers* court further held that "even if defendant should succeed in settling with so many franchisees that the court will be forced to deny class action status, plaintiff's complaint will remain untouched." *Id.* at 775. Similarly, here, the named plaintiffs' claims will not be impacted by settlements that may be reached between homebuilders and Knauf.

As stated in the current version of the Manual for Complex Litigation: "Defendants and their counsel generally may communicate with potential class members in the ordinary course of business, including discussing settlement before certification, but may not give false, misleading, or intimidating information, conceal material information, or attempt to influence the decision about whether to request exclusion from a class certified under Rule 23(b)(3)." *Manual for Complex Litigation (4th Ed.), §21.12 - Precertification Communications with the Proposed Class.* The Manual adds that "[m]ost judges are reluctant to restrict communications between the parties or their counsel and potential class members, except when necessary to prevent serious misconduct." *Id.*

This Court made a similar ruling in *Patrick Turner v. Murphy Oil*, Civil Action No. 05-4206, U.S. Dist. Court, Eastern Dist. of Louisiana, when it denied the plaintiffs' motion to

preclude *ex parte* communications between Murphy Oil and putative class members, and required that such issues be raised on a case by case basis. *See October 4, 2005, Minute Entry.*

The PSC must make an evidentiary showing of two kinds of proof. First, it must show that a particular form of communication has occurred or is threatened to occur. Second, the PSC must show that the particular form of communication at issue is abusive and that it threatens the proper functioning of the litigation. *Cox Nuclear Medicine v. Gold Cup Coffee Svcs., Inc.,* 214 F.R.D. 696, 697-98 (S.D. Ala. 2003). The PSC has provided **no** actual evidence of a single misleading or abusive communication. Evidence that one or more homebuilders have repaired their customers' homes and are now attempting to negotiate with Knauf for reimbursement of their considerable repair, relocation and other associated expenses can hardly be deemed *per se* abusive. "Claims that the defendant merely communicated a settlement offer to a putative plaintiff will not provide the basis for a limitation. Absent any specific evidence that the communication is abusive, a limitation is in appropriate." *The Kay Co. v. Equitable Production Co.,* 246 F.R.D. 260, 263 (S.D.W.Va. 2007) (finding defendant contact with putative class members regarding settlement was not abusive).

The PSC's only "evidence" is a copy of a newspaper article indicating that Knauf is attempting to settle with builders. The article is not admissible evidence and does not show any misleading or abusive communications. Frankly, the article fails to even address the alleged communications **with the plaintiffs** about which the PSC complains.

**B.** **The Homebuilders' communications with Knauf are not misleading or coercive to the homeowners**

The only materials the PSC filed in support of the PSC's Motion are articles discussing a settlement reached between Knauf and Beazer. There is no evidence that homebuilders are providing misleading or coercive information to their customers. Tellingly, the PSC fails to

8

identify any misleading or coercive information **to the homeowners**. The PSC merely asserts, without evidentiary support, that the homebuilders' failure to advise homeowners of results in two trials is somehow inherently misleading.

The PSC also contends that it has authority to control settlement discussions and opine on the fairness of settlement negotiations between Knauf and the homebuilders. Notably, it cites no authority for this novel proposition. The PSC further fails to explain how the homeowners' claims could possibly be affected by settlement discussions between Knauf and the homebuilders.

The PSC seeks to prohibit future settlement agreements **to which their clients are not even a party**. The PSC also presumptuously seeks to substitute its intentions and desires with regard to the issues presented in this action for homeowners that are not even represented by the PSC (several of whom have their own attorneys). In fact, many of the homeowners who have had contact with the homebuilders, some of whom are represented by counsel in these proceedings, have contacted the homebuilders directly and have expressed a desire to have their homes repaired. Third, many homebuilders are providing a new warranty for the repairs. Thus, if the repairs are insufficient or incorrect, the homeowners have a legal remedy. Fourth, most homebuilders, in response to the homeowners' requests that they repair their homes, have delivered or mailed the applicable agreement to the homeowners and provided them the opportunity to review the agreement and confer with whomever they like, including legal counsel.

In sum, the homebuilders have not made any misleading or coercive communications – regarding the nature and extent of the releases, the repairs offered, or otherwise. And the PSC

9

has not provided any evidence to the contrary.  Moreover, the homebuilders cannot release the claims of the homeowners by settling with Knauf.

      **C.**      **The PSC's Motion is not supported by law**

      The PSC's Motion is not supported by federal case law in general or by the cases upon which the PSC relies in particular.  Courts have agreed that parties cannot be prohibited from communicating with putative class members, prior to class certification, unless there is a clear finding that the communications are misleading or coercive, and that this outweighs the infringement of the parties' right to communicate with non-parties.   After losing this argument previously, and ignoring the Court's prior ruling on this issue, the PSC now attempts to prohibit negotiations between parties the PSC does not even represent: Knauf and the homebuilders.

      Most of the cases the PSC cites address the very different question of whether defense counsel can be prohibited from communicating with parties, *i.e.,* members of a class that has been certified and who therefore are represented by counsel.  *See, e.g., Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985), where the court found that it was improper for defendant to conduct a massive telephone campaign to convince members of a certified class "to withdraw from the class" so that the defendant could reduce its potential liability.  The telephone calls violated two previous court orders, but the Court's ruling was based upon the "ethical duty" that "a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter."   *Id*. at 1207.  That rule does not apply here because no class has been certified and the PSC does not represent putative class members, much less the homebuilders or Knauf.

      As noted, the PSC is relying on cases that involved communications with actual members of certified classes who were parties to the litigation and thus were represented by class counsel.

*See, e.g., Resnick v. American Dental Association*, 95 F.R.D. 372, 376-377 (N.D. Ill. 1984) ("unnamed class members, once the class has been certified, are represented by the class counsel", and therefore "the reasons for the prohibition of a lawyer's direct dealing with an adverse party represented by counsel . . . apply here") (citation and internal punctuation omitted); and *In re Federal Skywalk Cases*, 97 F.R.D. 370, 376 (W.D. Mo. 1983) (finding that communications between defense counsel and class members were improper because "this Court expressly created an attorney-client relationship between the counsel appointed to represent the class and those class members" when it certified the class). Other cases the PSC cites or cited previously that involve post-certification communication with parties include *Bower v. Bunker Hill Co.*, 689 F.Supp. 1032 (E.D. Wash. 1985); *Tedesco v. Mishkin*, 629 F. Supp. 1474 (S.D. N.Y. 1986); *In re School Asbestos Litigation*, 842 F.2d 671 (3d Cir. 1988); *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590 (2d Cir. 1986); *Haffer v. Temple University*, 115 F.R.D. 506 (E.D. Pa. 1987); *Erhardt v. Prudential Group, Inc.* 629 F.2d 843 (2d Cir. 1980); *Georgine v. Amchem Products*, 160 F.R.D. 478 (E.D. Pa. 1995); *In re Community Bank of Northern Virginia*, 418 F.3d 277 (3d Cir. 2005); and *Impervious Paint Industries, Inc. v. Ashland Oil Co.*, 508 F. Supp. 720 (W.D. Ky. 1981).

In addition, most of the cases the PSC cites, including those that address pre-certification communications with putative class members, were decided *before* the Supreme Court changed the rule in *Gulf Oil, supra*, and held that prohibitions on pre-certification communications between parties and putative class members should be ordered with "caution" and must be based upon a clear record showing that the communications are misleading, coercive, or otherwise threaten the fairness of the proceedings, and that this outweighs the resulting infringement of the parties' rights to communicate with non parties. 452 U.S. at 104. Many of these courts

11

expressly relied upon a previous provision in the Manual for Complex Litigation that had allowed similar prohibitions, before the *Gulf Oil* ruling. At that time, the Manual recommended "that the court at pretrial enter an order 'forbidding unapproved direct or indirect written and oral communications by formal parties or their counsel with potential and actual class members.'" *See Erhardt,* 629 F.2d at 845.

This is precisely the type of blanket prohibition that the Supreme Court struck down in *Gulf Oil*, and the Manual was radically changed after *Gulf Oil*. The Manual now provides that "[d]efendants and their counsel generally may communicate with potential class members in the ordinary course of business, including discussing settlement before certification, but may not give false, misleading, or intimidating information, conceal material information, or attempt to influence the decision about whether to request exclusion from a class certified under Rule 23(b)(3)." *Manual for Complex Litigation (4th Ed.), § 21.12 - Precertification Communications with the Proposed Class.* The Manual observes that "[m]ost judges are reluctant to restrict communications between the parties or their counsel and potential class members, except when necessary to prevent serious misconduct." *Id.*

Significantly, many of the cases the PSC cites involved communications that occurred after formal class *notice* was approved. Courts are particularly concerned about misleading attempts to influence class members during the "opt-out" period when they must decide whether to exclude themselves from a class. The fact that the communications occurred after class notice was also significant to the courts in *Kleiner,* 751 F.2d at 1201-02; *Georgine,* 160 F.R.D. at 490; *Impervious Paint,* 508 F. Supp. at 723; and *Erhardt,* 629 F.2d at 845.

Most importantly, many courts have expressly recognized that a defendant may properly engage in communications with putative class members, including settlement discussions, before

12

a class is certified. For example, in *Cada v. Costa Line, Inc.,* 93 F.R.D. 95, 98 (N.D.Ill. 1981), the court held that "[i]ndividual class members who choose to settle (or to litigate or indeed just to forget about) their claims are simply opting out of the class, an opportunity available to them until there has been a class determination under Rule 23(c) and the date specified in the class notice in accordance with Rule 23 (c)(2)(A)..has passed. Rule 23(e) is aimed at a different target. It requires court approval of settlement of the class action itself, not of individual claims."

**D. Two federal courts and this court have already rejected the PSC's arguments in Chinese Drywall cases that settlement discussions should be prohibited.**

Two federal courts have already denied motions almost identical to the PSC's Motion. In *Kristin Culliton v. Taylor Morrison Services, inc., et al.,* U.S. Dist. Court, Middle Dist. of Florida, Case No. 09-cv-00589-JDW-TGW (MDL Case No. 09-4114), a putative class action, Magistrate Judge Thomas Wilson conducted a hearing on May 12, 2009, on the plaintiff's Motion for Protective Order. There, the plaintiff sought, among other things, to prohibit Taylor Morrison from enforcing the releases, to declare the release and assignments void, to require the homebuilder to distribute a court-approved notice or information sheet, and to require the homebuilder to identify any homes to which repairs and relocation agreements have been sought. Judge Wilson denied all of the above stated relief requested by the plaintiff.[1] During the proceedings, counsel for the Culliton (Mr. Casper) stated as follows:

*       *       *       *

> MR. CASPER: Well, Your Honor, one side has lawyers. A lot of people
> on the other side don't. That's not a fair situation.

---

[1] Judge Wilson did require the homebuilder to notify homeowners that they have the right to have an attorney review the release, if they choose to retain one. This insert was included in all future packets provided by the homebuilder.

13

THE COURT: Well, why? Why? Because they want their house fixed. If their house gets fixed, then what - - why would they need a lawyer?

MR. CASPER: The way the agreements are written, there's no assurance the house is going to be fixed and put in the condition it would have been absent the defective drywall that was installed. The agreement says they'll put it back - -

THE COURT: Well, then you have the warranty, the old one as well as the new one.

MR. CASPER: The release releases any claims related to the defective Chinese drywall, right in Paragraph 15.

THE COURT: Well, of course. They are taking up that old drywall and putting in new drywall; then you get a year warranty.

*See Hearing transcript at p. 32-33, attached hereto as Exhibit A.*

\* \* \* \*

The court also addressed the plaintiff's contention that the release and assignments were misleading:

\* \* \* \*

THE COURT: I've read all this stuff. I didn't find it particularly misleading. The only thing I find that's - - that has some persuasiveness is some statement to contact a lawyer, period, not you guys, not the other guys, not anybody, but a statement in their facts that there should be some - - that you may wish to contact a lawyer before you sign this document.

MR. CASPER: **But, Your Honor, why not clearer language on the assignment and release issue as well? I don't think it's clear to a lot of people in reading this that this means you're done; this is all you're going to get.**

THE COURT: No. That's why you contact a lawyer. **I don't think there's anything misleading about that, so I'm not going to say, yeah, you ought to change that. If I'm reading that, I understand what it means. If you don't want to do that, okay, then fine. Then you don't accept their deal.** You get a lawyer; you bring your own lawsuit - - not necessarily yours but their own lawsuit, and they can ask for a class. So I'm not changing that one because I don't see anything wrong with that one. And I don't see anything wrong with the other stuff. I didn't find this a misleading statement at all.

\* \* \* \*

14

*Id at p. 39-40.*

Similarly, in *Steven Minafri v. M/I Homes, Inc., et al.*, U.S. Dist. Court, Southern Dist. of Ohio, Case No. 2:09-cv-167 (MDL Case No. 09-4120), a putative class action, after a hearing, Judge Algenon Marbley denied the plaintiff's motion for temporary restraining order to prevent M/I Homes from contacting homeowners, repairing homes, and settling potential property damage claims. At the hearing, Judge Marbley ruled that "precertification communications to potential class members by both parties generally are permitted and are also considered to constitute constitutionally-protected speech." *See Hearing Transcript at p. 45, attached hereto as Exhibit B.* Importantly, Judge Marbley found "nothing coercive" and "nothing false" about M/I Homes' communication. *Id.* at 46. And Judge Marbley found "compelling the fact that the putative class members, should they enter into [the] agreement, would not give up any of their personal injury claims and they can still remain members of the class." *Id.* In his order denying the plaintiff's motion, Judge Marbley found "there is no clear record demonstrating misleading information in the Letter or inherently coercive behavior on the part of Defendant M/I Homes." *See Order denying motion for temporary restraining order, attached hereto as Exhibit B.* This Court should be persuaded by the decisions in *Culliton* and *Minafri.*

The current motion by the PSC is even broader. It would prohibit settlement discussions **between Knauf and the homebuilders**.

### E. Florida Homebuilders have a statutory right to make repairs and settle potential claims

Chapter 558, Florida Statutes, provides the homebuilders the right to make repairs or payment that would result in resolution of potential claims. Chapter 558 requires claimants to advise a potentially responsible defendant of any construction defect and bars any claims upon acceptable repair or payment. Section 558.004, Fla. Stat., provides:

15

Notice and opportunity to repair –

(1) " In actions brought alleging a construction defect, the claimant shall, at least 60 days before filing any action, or at least 120 days before filing an action involving an association representing more than 20 parcels, serve written notice of claim on the contractor, subcontractor, supplier, or design professional, as applicable, which notice shall refer to this chapter. If the construction defect claim arises from work performed under a contract, the written notice of claim must be served on the person with whom the claimant contracted. The notice of claim must describe the claim in reasonable detail sufficient to determine the general nature of each alleged construction defect and a description of the damage or loss resulting from the defect, if known.

*    *    *    *

(5) "Within 45 days after receiving the notice of claim, or within 75 days after receipt of a copy of the notice of claim involving an association representing more than 20 parcels, the person who received notice under subsection (1) must serve a written response to the claimant. The response shall be served to the attention of the person who signed the notice of claim, unless otherwise designated in the notice of claim. The written response must provide:

    (a) A written offer to remedy the alleged construction defect at no cost to the claimant, a detailed description of the proposed repairs necessary to remedy the defect, and a timetable for the completion of such repairs;

    (b) A written offer to compromise and settle the claim by monetary payment, that will not obligate the person's insurer, and a timetable for making payment;

    (c) A written offer to compromise and settle the claim by a combination of repairs and monetary payment, that will not obligate the person's insurer, that includes a detailed description of the proposed repairs and a timetable for the completion of such repairs and making payment;"

*    *    *    *

**(8) "…..If the offeror makes payment or repairs the defect within the agreed time and in the agreed manner, the claimant is barred from proceeding with an action for the claim described in the notice of claim or as otherwise provided in the accepted settlement offer."**

Therefore, the homebuilders are permitted to communicate with both represented and

unrepresented homeowners pursuant to Chapter 558, which is intended to facilitate resolution of

16

claimed construction defects directly between claimants (homeowners) and builders to avoid the expenditure of judicial resources. Larry R. Leiby and Steven B. Lesser, *How to Comply with Chapter 558 Florida Statutes: Current Challenges and Future Changes*, 83 FLA. B.J. 42 (February 2009), provides:

> ….F.S. Ch. 558 requires an owner (claimant) to give notice and an opportunity to cure with respect to a building defect(s). The statute sets forth its purpose as to create "**an alternative method to resolve construction disputes that would reduce the need for litigation as well as protect the rights of the property owners**". **In more practical terms, it is intended to allow both claimants and participants to design and construction to resolve alleged defects before both sides run to the courthouse and spend a pile of money on lawyers…**

Nothing in Chapter 558 prevents the homebuilders from requesting a release and assignment. Most of the releases do not release future personal injury claims, and most contain a new warranty for repair work, as well as cash payments for certain items.

## IV. Conclusion

The Court should deny the PSC's Motion because the homebuilders are free to negotiate with Knauf to resolve any claims the homebuilders may have against Knauf. These negotiations do not involve homeowners, whose claims could not possibly be released by homebuilders. Even if the negotiations did involve homeowners, the homebuilders are permitted by law to communicate with homeowners regarding inspections, repairs, releases and assignments, and otherwise, so long as their communications are not misleading or coercive, and there is no evidence, let alone a clear record, of misleading or coercive communications. This Court should follow its prior ruling and deny the PSC's Motion.

Respectfully submitted,

By: Neal A. Sivyer
        NEAL A. SIVYER
        Fla. Bar No. 373745
        E-mail: NSivyer@sbwlegal.com
        Sivyer Barlow & Watson, P.A.
        Suntrust Financial Center
        401 E. Jackson Street
        Suite 2225
        Tampa, Florida 33602
        Tel. 813-221-4242
        Fax. 813-227-8598

| **STONE PIGMAN WALTHER WITTMANN** | **GREENBERG TRAURIG, P.A.** |
|---|---|
| *Local Lead Counsel of the HSC* | *Lead Counsel for the HSC* |
| *Local Counsel for several homebuilders* | *Counsel for Lennar Corporation, Lennar Homes, LLC, and U.S. Home Corporation* |
| 546 Carondelet Street | 1221 Brickell Avenue |
| New Orleans, LA 70130 | Miami, Florida 33131 |
| Telephone: (504) 593-0804 | Telephone: (305) 579-0500 |
| Facsimile: (504) 593-0804 | Facsimile: (305) 579-0717 |
| E-mail: pwittmann@stonepigman.com | Email: bassh@gtlaw.com |
| | |
| By: /s/ Phillip A. Wittmann | By: /s/ Hilarie Bass |
| PHILLIP A. WITTMANN | HILARIE BASS |
| Louisiana Bar No. 13625 | Florida Bar No. 334323 |
| **SIVYER BARLOW & WATSON** | **KING & SPALDING LLP** |
| *Counsel for Taylor Woodrow Communities at Vasari, LLC and Taylor Morrison Services, Inc.* | *Counsel for Beazer Homes Corp.* |
| 100 S Ashley Drive, Suite 2150 | 1180 Peachtree Street, NE |
| Tampa, FL 33602 | Atlanta, GA 30309 |
| Telephone: (813) 221-4242 | Telephone: (404) 572-4600 |
| Facsimile: (813) 227-8598 | Facsimile: (404) 572-5100 |
| Email: nsivyer@sbwlegal.com | Email: kbuster@kslaw.com |
| | |
| By: /s/ Neal Allen Sivyer | By: /s/ J Kevin Buster |
| NEAL A. SIVYER | J. KEVIN BUSTER |
| Florida Bar No. 373745 | Georgia Bar No. 099267 |
| | |
| | |

18

| **LEIFF CABRASER HEIMANN &** | **CUNNINGHAM BOUNDS, LLC** |
|---|---|
| **BERNSTEIN, LLP** | *Counsel for The Mitchell Company, Inc.* |
| *Counsel for The Mitchell Company, Inc.* | Post Office Box 66705 |
| Embarcadero Center West | Mobile, Alabama 36660 |
| 275 Battery Street. Suite 3000 | Telephone: (251) 471-6191 |
| San Francisco, California 94111-3339 | Facsimile: (251) 479-1031 |
| Telephone: (415) 956-1000 | Email: sln@cunninghambounds.com |
| Facsimile: (415) 956-1008 | |
| Email: ecabraser@lchb.com | By:  /s/ Steven L. Nicholas |
| | STEVEN L. NICHOLAS |
| By:  /s/ Elizabeth J. Cabraser | Alabama Bar No. ASB-2021-N35S |
| ELIZABETH J. CABRASER | |
| California Bar No. 83151 | |

## CERTIFICATE OF SERVICE

I HEREBY certify that on August 4, 2010, this document has been served on Plaintiffs' Liaison Counsel, Hugh P. Lambert, Esq., and Russ Herman, Esq., and Defendants' Liaison Counsel, Kerry Miller, Esq., and Homebuilders' Steering Committee Dorothy Wimberly and Richard S. Lewis, Insurer Defendants' Liaison Counsel, Judy Y. Barrasso, Esq. by U.S. mail and/or email or by hand delivery and I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and upon all parties by electronically uploading the same to Lexis/Nexis File & Serve in accordance with Pretrial Order No.: 6.

/s/ Neal A. Sivyer

1

<pre>
 1                      UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF LOUISIANA
 2                             NEW ORLEANS

 3

 4   IN RE:  CHINESE MANUFACTURED        CIVIL ACTION
              DRYWALL PRODUCTS
 5            LIABILITY LITIGATION       NO. 09-MD-2047

 6   This Document Relates to All Cases  NEW ORLEANS, LOUISIANA

 7                                       THURSDAY, AUGUST 12, 2010

 8                                       9:16 A.M.

 9             STATUS CONFERENCE AND VARIOUS MOTIONS
               BEFORE THE HONORABLE ELDON E. FALLON
10                  UNITED STATES DISTRICT JUDGE

11
     APPEARANCES:
12
     FOR THE PLC:                HERMAN, HERMAN KATZ & COTLAR, LLP
13                               BY:  RUSS M. HERMAN
                                      LEONARD A. DAVIS
14                               820 O'Keefe Avenue
                                 New Orleans, Louisiana  70113
15                               Telephone:  (504) 581-4892

16   FOR THE DLC:                FRILOT, LLC
                                 BY:  KERRY J. MILLER
17                               1100 Poydras Street, Suite 3700
                                 New Orleans, Louisiana 70163
18                               Telephone:  (504) 599-8000

19   FOR STATE LIAISON
     COMMITTEE:                  BARRIOS, KINGSDORF & CASTEIX
20                               BY:  DAWN BARRIOS
                                 701 Poydras Street
21                               New Orleans, Louisiana  70130
                                 Telephone:  (504) 524-3300

22
     FOR THE INSURER STEERING    BARRASSO, USDIN, KUPPERMAN,
23   COMMITTEE:                  FREEMAN & SARVER
                                 BY:  JUDY W. BARRASSO
24                               909 Poydras Street
                                 New Orleans, Louisiana  70112
25                               Telephone:  (504) 589-9700
</pre>

1  not without prejudice.  And they want the issue tied up now.

2  There have been some cases that the insurance companies like

3  what was said in those cases and feel that now is the

4  appropriate time for this Court to focus on it.

5          The plaintiffs take the opposite view, but I will

6  hear from the parties as they express themselves a little

7  better.

8          I will take a 10-minute break at this time and return

9  and deal with those motions.  Court will stand in recess.

10              (THE COURT RECESSED AT 9:50 A.M.,

11          AND THEN THE COURT RECONVENED AT 10:02 A.M.)

12          THE COURT:  Be seated, please.  I am taking motions

13  up for oral argument.  The first motion is the motion

14  Restricting Communications with Putative Class Members, record

15  document 4338.  The moving party?

16          MR. LEVIN:  Arnold Levin from the Steering Committee.

17  We have been through this before.  The Court has been through

18  it in Murphy Oil, and the terrain is always changing.  Right

19  now we have contact with absent class members.  There is no

20  certified class dealing with settlement.  And we seek only in

21  our proposed notice that those that contact them advise them of

22  the Germano and Hernandez verdicts, Your Honor's findings so

23  that the poor souls have the information that this Court and

24  everybody in this room has, and it is not being withheld from

25  them.  We have invested a lot of time to achieve those results,

1  and the Court has invested a lot of time even in the default

2  judgment to evaluate the case and evaluate what it costs to

3  remediate.  And for that reason we feel at the present time

4  that it is necessary to exercise Rule 23(b) and have a

5  prophylactic order entered, scout's honor, that those who speak

6  to the homeowners give them the Court order.  And then they can

7  do what they want to do.  We are not restricting settlements in

8  this case.  All we are doing is creating an even playing field.

9       This is not unusual.  In Murphy Oil, a motion was

10  brought, and the plaintiffs said, stop, as I understand it,

11  stop them from settling with our clients.  And I think Your

12  Honor was negative on that.  But Your Honor did say they have

13  to tell them certain things, like you can get an attorney, you

14  can do this, you can do that.

15       In this particular case, we want them to be told of

16  the verdicts, what the costs are involved, what a Court has

17  found, the Court who has invested a lot of time and effort has

18  found, what the Court has found to be the proper science, the

19  proper approach to remediation, having ruled on Daubert

20  motions.  And that's simply all that we want.

21       And the fact that the class is not certified does not

22  restrict the Court's supervisory power to effectuate a notice.

23  It has been done in the Kliner case.  That's the grand case of

24  it all in the Third Circuit.  We had it done in the School

25  Direction asbestos.  It has been done in the Pyrus Paint.  It

1  has been done over, and over, and over again, and the kinds of

2  mischief that occurs out there is all you have to do is look at

3  the Georgia settlement, and that's just another effort that if

4  the market place of homeowners who have been impacted by

5  Chinese Drywall does not have the knowledge, they can end up

6  with a smart card for $50.00.

7      THE COURT:  They take the position, though, that

8  under the prior Court orders, the homeowners are directed to

9  the Court's website, and that all of this information is on the

10  Court's website.  How do you respond to that?

11      MR. LEVIN:  It is not enough.  I mean, the homeowner

12  could be me with the website.  They should be given the

13  information, because at this point in time the website is not

14  enough.  Because people do not take the time and effort to get

15  it from the website.  And if it is on the website and available

16  to the homeowner, then the defendants who have objected to this

17  should not have any problem with the same thing being handed to

18  the homeowner, a piece of paper and a Court notice.  The fact

19  that they don't want that to happen is proof positive that they

20  know that most homeowners will not go to the website.

21      Now, at this point in time it is different than the

22  last point in time, as I said.  And I will sit down if the

23  Court has no questions, because now we have findings of this

24  Court that are relevant and that the homeowners should know.

25      THE COURT:  Okay, let me hear from your opponent.

25

1          MR. SIVYER:  Good morning.  Neal Sivyer for the
2     homebuilders.  As the Court has pointed out in its questioning,
3     we have done exactly what you ordered us to do, and we have
4     done exactly what the prior Federal Judges who have considered
5     similar motions have required us to do.  Your Honor, there has
6     to be for you to enter an order precluding our communications,
7     which is actually what they have asked for in their motion,
8     their motion is much broader than the relief that has been
9     requested this morning.  And what they have asked for is to
10    restrict communications with homeowners before a class is
11    certified, which is contrary to the Gulf Oil ruling in U.S.
12    District Court, contrary to Rule 23 and contrary to your local
13    rule.
14          Your Honor, the object here in this case is to get
15    homes repaired.  Lots of people out there want to get their
16    homes fixed.  They get paid for their relocation expenses.
17    They get paid for their personal property, and the homes are
18    fixed.  They really want to do it that way, rather than to go
19    through a group of lawyers and a trial.  In Florida, we have a
20    procedure, Chapter 558, which mandates that, and we have
21    followed that.  And, Your Honor, in order for you to enter an
22    order precluding or restricting communications, there has to be
23    specific statutory findings and there has to be evidence in the
24    record.  Your Honor, no evidence has been presented here today
25    at all.  Two (2) newspaper articles were attached to their

1  motion.  Newspaper articles are not evidence.  That's all that

2  has been filed when you denied their motion previously.

3      While requiring us to refer to the website, you

4  invited them to bring forward specific instances of misconduct

5  or misleading communications.  We are one year since that

6  hearing, and there are none identified.  Curative notice has

7  been proposed.  What are we curing?  There is nothing that has

8  been done improperly.  Curative notice mentions the damage

9  awards.  Suspiciously absent from the curative notice is any

10  reference that the motion for attorneys' fees was denied or

11  that the significant plaintiffs' depositions were denied, or

12  that the lost wages were denied.  And, Your Honor, if we do

13  curative notice this morning, we have our trial in October, do

14  we have to revise the curative notice again?  And what happens

15  if there is a negative result?  Do we have to address that

16  curative notice?

17      Your Honor, there is simply no evidence or finding of

18  any abuse or misleading communication.

19      And, Your Honor, with regard to our negotiating with

20  Knauf, which was the basis that I read in the motion, these are

21  not homeowners' claims.  These folks are not parties.  These

22  are repaired homes where we have releases, and the people are

23  not plaintiffs.  We are plaintiffs too, Your Honor.  We have

24  spent millions of dollars to do the right thing to fix the

25  houses.  We have not recovered a nickel.  We feel like we are

1  entitled to go and negotiate with Knauf to recover a portion of

2  our damages.

3        With respect to homes that are not part of the MDL,

4  there is nothing to prevent us from doing that.  That was the

5  sum and substance of the motion and memorandum, Your Honor.

6        THE COURT:  Well, I don't think he's asking that.

7        MR. LEVIN:  I am not asking for that.  If you want to

8  go --

9        THE COURT:  He said that in the memo, but he doesn't.

10        MR. LEVIN:  I don't want that.  You can rest assured

11  that you can be my guest with Knauf.  I have dealt with them.

12        THE COURT:  I do understand the issue.

13        MR. LEVIN:  Fair enough.

14        THE COURT:  I am ready to rule on the matter.

15        MR. SIVYER:  I will sit down and shut up since my

16  experience has been that's the prudent thing to do.

17        THE COURT:  I have read the record, and I have read

18  the briefs in this matter.  The law is clear that before the

19  Court issues such an order, it must have a clear record of

20  specific findings under Rule 23, the order must be carefully

21  drawn and be specific.  I instructed counsel before to inform

22  the plaintiffs who signed a release that they have a right to

23  counsel, that there is an existing MDL in litigation and that

24  there is a website, and give them the website.  I am going to

25  put all of this stuff on the website as it comes about, and I

28

1   am going to highlight it and make it clear that that's the

2   first thing that pops up.  So I am going to deny the motion.  I

3   don't think a clear record has been shown, and I think enough

4   information has been given with regard to the documents that

5   are filed.  There should not be any misunderstanding.  I am not

6   talking about the homebuilders' discussions with Knauf, or what

7   they are doing with Knauf, or whether they are doing anything

8   or not.  That's between the homebuilders and Knauf, and not the

9   plaintiffs.

10           With regard to the plaintiff claimants, the

11  homeowners, I want them to continue to highlight the website

12  and to advise them of their right to counsel, and advise them

13  that an MDL proceeding is in order.  That's the best we can do,

14  folks.  If somebody is not interested in pursuing it, they are

15  not interested in looking at the website, then that's their

16  problem and not the Court's problem.  I can only tell them to

17  look at the website, and tell them they have a right to

18  counsel, and they have to then do something for themselves.  I

19  do not feel badly about that.

20           The next motion for argument is the motion for

21  sanctions, motion for sanctions and to compel production of

22  Knauf documents, record document number 4754.  Anything on

23  that?

24           MR. DAVIS:  Leonard Davis, good morning.

25           THE COURT:  Len, as I said before, you and Kerry see

MINUTE ENTRY
FALLON, J.
AUGUST 12, 2010

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED        MDL NO. 2047
       DRYWALL PRODUCTS
       LIABILITY LITIGATION          SECTION: L

THIS DOCUMENT RELATES TO: All Cases       JUDGE FALLON
             MAGISTRATE WILKINSON

BEFORE JUDGE ELDON E. FALLON
Case Manager: Gaylyn Lambert
Court Reporter: David Zarek

Appearances:   Arnold Levin, Esq., Lenny Davis, Esq., Casey Peterson, Esq. For PSC
               Neal Sivyer, Esq. For Homebuilders Steering Committee
               Steve Glickstein, Esq. For Knauf
               Steve Nicholas, Esq. For Mitchell Company
               Ralph Hubbard, Esq. For Standard Fire Insurance Company
               Jason Foote, Esq. For ASI Lloyds

I.  PSC's Motion Restricting Communications With Putative Class Members,    Rec. Doc. No.
    4338
    Argument - The motion is DENIED.

II. Motion to Intervene as Plaintiffs in *Payton*, Rec. Doc. No. 4346
    The motion is CONTINUED to be set for hearing at a future date by the Court.

III.  Motion to Intervene as Plaintiffs in *Wiltz*, Rec. Doc. No. 4347
     The motion is CONTINUED to be set for hearing at a future date by the Court.

IV.  Motion to Intervene as Plaintiffs in *Rogers*, Rec. Doc. No. 4349
     The motion is CONTINUED to be set for hearing at a future date by the Court.

V.  Motion to Intervene as Plaintiffs in *Gross*, Rec. Doc. No. 4350
     The motion is CONTINUED to be set for hearing at a future date by the Court.

VI.  *Germano* Plaintiffs' Motion to Impose Bond Requirement on Taishan, Rec. Doc. No.
    4356
     The motion is GRANTED.  Bond is set at $5,000.00

JS10:     :40

In Re: Chinese Drywall Litigation                                    MDL 2047- L
Minutes of August 12, 2010                                                 Page 2

VII.  PSC's Rule 6(b) Motion for Extension of Time for Service of Process Under Rule 4(m)
       in *Wiltz*,  Rec. Doc. No. 4385
       The motion is GRANTED.

VIII.  PSC's Rule 6(b) Motion for Extension of Time for Service of Process Under Rule 4(m)
        in *Rogers*, Rec. Doc. No. 4387
        The motion is GRANTED.

IX.  PSC's Rule 6(b) Motion for Extension of Time for Service of Process Under Rule 4(m) in
      *Gross*, Rec. Doc. No. 4388
      The motion is GRANTED.

X.  PSC's Rule 6(b) Motion for Extension of Time for Service of Process Under Rule 4(m) in
     *Amato*,  Rec. Doc. No. 4443
     The motion is GRANTED.

XI.  PSC's Motion to Establish a Plaintiffs' Litigation Expense Fund to Compensate and
      Reimburse Attorneys for Services Performed and Expenses Incurred for MDL
      Administration and Common Benefit, Rec. Doc. No. 4603
      The motion is CONTINUED to be set for hearing at a future date by the Court.

XII.  PSC's Motion for Sanctions and to Compel Production of Knauf Defendant Documents,
       Rec. Doc. No. 4754
       Argument - GRANTED IN PART insofar as the Court directs Knauf to produce
       documents in response to the PSC's discovery requests pursuant to the Federal Rules of
       Civil Procedure and insofar as Knauf is directed to inform the Court within ten (10) days
       of an estimate of time for deposing non-30(b)(6) witnesses; and DENIED IN PART
       insofar as the PSC's request for sanctions which was withdrawn orally and all other
       issues raised in the Motion which the parties informed the Court were resolved prior to
       the hearing.

XIII.  PSC's Motion to Lift Stay as to Various Pending Motions, Rec. Doc. No. 4946
        The motion is GRANTED with any Motions listed therein not resolved on this date to
        be set for hearing by the Court at a later date.

XIV.  The Mitchell Company's Motion to Lift Stay as to the Pending Class Certification
        Motions,  Rec. Doc. No. 5010
        The motion is GRANTED with the Motion listed therein to be set for hearing by the
        Court at a later date.

In Re: Chinese Drywall Litigation                                    MDL 2047 - L
Minutes of August 12, 2010                                              Page 3


XV.  Plaintiffs' Motion to Dismiss Defendant ASI Lloyds without Prejudice, Rec. Doc.4834
         Argument - The motion is DENIED.

XVI.  Plaintiff's Motion to Dismiss Defendant Standard Fire Insurance Company Without
         Prejudice, Rec. Doc. No. 4835
         Argument - The motion is DENIED.