# EXHIBIT "G"

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
COMPLEX BUSINESS LITIGATION DIVISION

TAYLOR MORRISON SERVICES, INC.,
f/k/a MORRISON HOMES, INC., a foreign        CASE NUMBER: 10-16414
corporation, and TAYLOR WOODROW
COMMUNITIES AT VASARI, LLC, a                CIVIL DIVISION:        L
Florida limited liability company,

      Plaintiffs,

v.

BANNER SUPPLY CO., a Florida
corporation,

      Defendant,

_____/

## AMENDED COMPLAINT

TAYLOR MORRISON SERVICES, INC. f/k/a MORRISON HOMES, INC. ("**Taylor Morrison**") and TAYLOR WOODROW COMMUNITIES AT VASARI, L.L.C. ("**Taylor Woodrow**") (collectively, the "**Taylor Plaintiffs**"), by and through their undersigned counsel hereby sue, BANNER SUPPLY CO. ("**Banner**"), and allege as follows:

### The Parties, Jurisdiction and Venue

1.      This is an action for damages in excess of $15,000.00, exclusive of interest, costs and attorneys' fees.

2.      Taylor Morrison is a Delaware corporation with a principal place of business in Scottsdale, Arizona, authorized to do and doing business in the State of Florida.

3.      Taylor Woodrow is a Florida limited liability company with a principal place of business in Tampa, Florida.

4.      Defendant Banner is a Florida corporation, having its principal place of business in Miami-Dade County, Florida.

5.      Venue is proper before this Court pursuant to Ch. 47, Florida Statutes.  At all times relevant and material hereto, Banner was engaged in the business of supplying gypsum drywall for installation in homes being built by Taylor Morrison in, among other places, Hillsborough County, Florida.

## General Allegations

6.      The Taylor Plaintiffs are affiliates of Taylor Morrison, Inc., one of the nation's leading builders of quality homes.

7.      The Taylor Plaintiffs are builders and developers of homes.

8.      In connection with the construction of homes in the State of Florida, the Taylor Plaintiffs entered into subcontract agreements with subcontractors (collectively, the "**Installers**") for the installation of gypsum drywall in certain homes.

9.      In performing the subcontracts, the Installers purchased gypsum drywall, either directly or indirectly, from Banner, and installed that gypsum drywall in homes being built by the Taylor Plaintiffs (the "**Affected Homes**").  By ordering gypsum drywall to be delivered to a particular Affected Home, the Installers and Banner entered into a written or oral contract for the sale, delivery, and supply of the defective gypsum drywall which was expressly for the benefit of the Taylor Plaintiffs and/or the Homeowners and from which, by virtue of being the ultimate recipient and user of the defective gypsum drywall, it was clearly apparent that the Taylor Plaintiffs and/or Homeowners were the intended beneficiaries.

10.      Banner knew that the gypsum drywall sold to the Installers was intended for and installed in the Affected Homes, which were subsequently sold to individual owners (the "**Homeowners**").  Banner delivered the defective gypsum drywall to the residences in which it was installed and knew or should have known that the defective gypsum drywall was intended for and being installed in residences being built by the Taylor Plaintiffs for the Homeowners.

Upon information and belief, Banner is, and was at all times material hereto, in possession of information and documents, including, but not limited to, invoices and delivery tickets that reflect the lot number and/or address of each residence to which it delivered and supplied defective gypsum drywall.

11.     Upon information and belief, the gypsum drywall that was installed by the Installers in the Affected Homes was manufactured in China and purchased by Banner, directly and/or indirectly, from Knauf Gips and Knauf Tianjin (collectively, the "**Manufacturers**"), and possibly other unknown Chinese manufacturers.

12.     The gypsum drywall manufactured by the Manufacturers, supplied by Banner, and installed by the Installers in the Affected Homes was defective in that it appears to be interacting with other conditions and elements, causing corrosion and damage to other property within the Affected Homes, including, but not limited to, HVAC coils, certain electrical and plumbing components, and other affected materials and items, including personal property (collectively, the "**Other Property**").   This corrosion and damage is observable as a black surface accumulation on the Other Property.

13.     Prior to supplying the Installers, and, ultimately, the Taylor Plaintiffs and Homeowners, with defective gypsum drywall, Banner knew or should have known that the defective gypsum drywall was defective and would cause damage to Other Property and failed to notify the Homeowners, the Installers or the Taylor Plaintiffs of the defective nature of the gypsum drywall.

14.     Banner, along with the Manufacturers, investigated and confirmed the defective nature of the gypsum drywall prior to supplying same to the Installers, the Taylor Plaintiffs, and the Homeowners.  After confirming the defective nature of the gypsum drywall, Banner entered into a confidential agreement with the Manufacturers whereby Banner unlawfully agreed to not

inform the Homeowners, the Installers or the Taylor Plaintiffs, among others, of the defective nature of the gypsum drywall.

15.     Because of the Taylor Plaintiffs' commitment to delivering quality, value and service, the Taylor Plaintiffs monitor every repair request in all of their homes.  The Taylor Plaintiffs received complaints from some of the Homeowners regarding noxious smells and HVAC system failures in the Affected Homes.  As a result, the Taylor Plaintiffs began an extensive investigation into the source of the problem.

16.     Through this extensive investigation, the Taylor Plaintiffs discovered that certain gypsum drywall installed in the Affected Homes had a latent defect.

17.     The Taylor Plaintiffs' further determined through, among other methods, electron microscopy, that the corrosion of HVAC coils in the Affected Homes was occurring to the point that the copper surface of the HVAC coils had pitted deeply enough to cause holes in the coils, which in turn caused the coils to fail.  This breakthrough explained the unusual number of HVAC system problems the Affected Homes had experienced.

18.     The Taylor Plaintiffs have also undertaken an intensive effort to notify and engage all responsible parties, including Banner, demanding that they commit to do precisely what the Taylor Plaintiffs have committed to do for their homeowners -- stand behind their products.

19.      Banner has refused to take responsibility.  The Taylor Plaintiffs, on the other hand, have accepted responsibility and stand behind their homes and Homeowners.  Many homes have already been repaired.

20.     At the same time, the Taylor Plaintiffs stand alongside the Homeowners as victims of Banner, who knew or should have known of the latent defect in the gypsum drywall

and not only failed to notify the Installers, the Taylor Plaintiffs, or the Homeowners of the problems with the defective gypsum drywall but allowed the defective drywall to be supplied, delivered, and installed in the Affected Homes.

21.    The Taylor Plaintiffs remain committed to fully rectifying these problems and otherwise addressing their homeowners' concerns and the real harm that this defective drywall has caused them.  Indeed, the Taylor Plaintiffs have already begun the expensive and time-consuming process of repairing many of the Affected Homes.  The Taylor Plaintiffs have already temporarily relocated some of the Homeowners so that they can remove and replace all of the defective gypsum drywall and repair or replace the Other Property and other materials and items damaged as a result of the defective drywall.  In order to repair or replace the Other Property, the Taylor Plaintiffs have also been forced to remove other building materials from the Affected Homes, including certain defective and non-defective gypsum drywall.

22.    In doing so, the Taylor Plaintiffs have completely resolved some of the Homeowners property damage claims and obtained assignments from some Homeowners of their claims against Banner, among others.

23.    While many of the Homeowners have praised the Taylor Plaintiffs' proactive response and commitment, the defective drywall has caused substantial damage to the Taylor Plaintiffs' goodwill and business reputation.  As a direct result of the supply of defective gypsum drywall by Banner and the failure of Banner to notify the Installers, the Taylor Plaintiffs, or the Homeowners of the latent defect in the gypsum drywall, the Homeowners have made claims for personal injury, Taylor Plaintiffs have been subject to claims for personal injury, and the Taylor Plaintiffs have also suffered additional economic damages which include, but are not limited to: the cost to fully repair the Affected Homes, which includes replacing the defective gypsum drywall and repairing and replacing the damage to the Other Property in the Affected Homes as a

5

result of the deficient and defective gypsum drywall; all costs incurred by the Taylor Plaintiffs in relocating their Homeowners to suitable temporary housing facilities while the Affected Homes are undergoing such repairs; all costs of moving and storing the personal property of the Homeowners during the repair process; payments to Homeowners for Other Property damaged by the defective gypsum drywall; and attorneys' fees, expert fees and costs incurred in defending and responding to the claims against them and in bringing this action.

24.     The Taylor Plaintiffs have been named as defendants in lawsuits filed by certain Homeowners which have been consolidated and are now pending before Judge Eldon E. Fallon in *In Re: Chinese-Manufactured Drywall Products Liability Litigation*, MDL No. 2047 (the "**MDL Action**").  This action does not seek damages related to homes that are the subject of lawsuits pending in the MDL Action.

25.     The Taylor Plaintiffs' have retained the law firm of Sivyer Barlow & Watson, P.A., to represent them in this action, and have agreed to pay the firm its reasonable attorneys' fees and costs.  The Taylor Plaintiffs have and will continue to incur fees and costs in bringing this action and defending the MDL action.

26.     All conditions precedent to bringing this action have been waived, excused, performed, or have otherwise occurred.

### COUNT I
### (Breach of the Implied Warranty of Merchantability Under Common Law and/or Florida Statute Section 672.314)

27.     The Taylor Plaintiffs reassert and reallege the allegations in paragraphs 1 through 26 above as if fully set forth herein.

28.     This is an action by the Taylor Plaintiffs, individually and as assignee of the Homeowners, against Banner for breach of the implied warranty of merchantability under the common law and/or Florida Statute § 672.314.

29.     Banner is a merchant of gypsum drywall.

30.     The Installers entered into contracts with Banner to purchase gypsum drywall that was to be installed in the Affected Homes owned by the Homeowners.

31.     The Taylor Plaintiffs and Homeowners are intended third party beneficiaries of those contracts because it was the clear and manifest intent of the Installers and Banner that the contracts were to primarily and directly benefit the Taylor Plaintiffs and Homeowners.

32.     Pursuant to Florida Statutes Section 672.314 and/or common law, Banner warranted that the gypsum drywall was merchantable and reasonably fit for the ordinary purpose for which gypsum drywall is used.

33.     Banner breached the implied warranty of merchantability by selling certain gypsum drywall that was defective and not reasonably fit for the ordinary purpose for which gypsum drywall is used.

34.     Specifically, certain of the drywall supplied by Banner and installed in the Affected Homes is defective because it has caused damage to Other Property in the Affected Homes.

35.     Banner has been timely notified of the defective gypsum drywall, but Banner has failed to repair or replace the defective gypsum drywall.

36.     As a result of Banner's breaches of the implied warranty of merchantability, the Taylor Plaintiffs and the Homeowners have been damaged.  These damages include, but are not limited to, the cost to fully repair the Affected Homes, which includes replacing the defective gypsum drywall and repairing and replacing the damage to the Other Property in the Affected Homes as a result of the deficient and defective gypsum drywall. These damages also include all costs incurred in relocating the Homeowners to suitable temporary housing facilities and moving and storing their personal property while the Affected Homes are undergoing such repairs,

damage to Other Property, as well as damages for loss of goodwill and reputation, and attorneys' fees, expert fees and costs incurred in defending and responding to the claims against them and in bringing this action.

WHEREFORE, the Taylor Plaintiffs demand judgment for damages against Banner in an amount to be determined at trial, plus costs, and for such further and other relief as the Court deems just and proper.

## COUNT II
### (Breach of the Implied Warranty of Fitness for a Particular Purpose Under Common Law and/or Florida Statute Section 672.315)

37.    The Taylor Plaintiffs reassert and reallege the allegations in paragraphs 1 through 26 above as if fully set forth herein.

38.    This is an action by the Taylor Plaintiffs, individually and as assignee of the Homeowners, against Banner for breach of the implied warranty of fitness for a particular purpose under the common law and/or Florida Statutes § 672.315.

39.    Banner is a supplier of gypsum drywall.

40.    The Installers entered into contracts with Banner to purchase gypsum drywall that was to be installed in the Affected Homes owned by the Homeowners.

41.    The Taylor Plaintiffs and Homeowners are intended third party beneficiaries of those contracts because it was the clear and manifest intent of the Installers and Banner that the contracts were to primarily and directly benefit the Taylor Plaintiffs and the Homeowners.

42.    At the time Banner entered into the contracts with the Installers, Banner knew or had reason to know that the Installers were purchasing gypsum drywall for the particular purpose of being installed in homes being built by the Taylor Plaintiffs for the Homeowners, including the Affected Homes, and that the Installers were relying on Banner's skill and judgment to select

and furnish to the Installers non-defective gypsum drywall that was suitable for this particular purpose.

43.     In purchasing gypsum drywall from the Installers, the Taylor Plaintiffs and the Homeowners relied on Banner's judgment in furnishing to the Installers, the Taylor Plaintiffs, and the Homeowners gypsum drywall that was suitable for the particular purpose of being installed in the Affected Homes.

44.     Pursuant to Florida Statutes § 672.315 and/or common law, Banner warranted that the gypsum drywall was fit for the particular purpose of being installed in new residential structures, including the Affected Homes.

45.     Banner breached the implied warranty of fitness for a particular purpose by selling certain gypsum drywall that was defective and not fit for the particular purpose of being installed in new residential structures, including the Affected Homes.

46.     Specifically, certain of the drywall supplied by Banner and installed in the Affected Homes is defective because it has caused damage to Other Property in the Affected Homes.

47.     The Taylor Plaintiffs timely notified Banner of the defective gypsum drywall, but Banner has failed to repair or replace the defective gypsum drywall.

48.     As a result of Banner's breaches of the implied warranty of fitness for a particular purpose, the Taylor Plaintiffs and Homeowners have been damaged.  These damages include, but are not limited to, the cost to fully repair the Affected Homes, which includes replacing the defective gypsum drywall and repairing and replacing the damage to the Other Property in the Affected Homes as a result of the deficient and defective gypsum drywall. These damages also include all costs incurred in relocating the Homeowners to suitable temporary housing facilities and moving and storing their personal property while the Affected Homes are undergoing such

repairs, damage to Other Property, as well as damages for loss of goodwill and reputation, and attorneys' fees, expert fees and costs incurred in defending and responding to the claims against them and in bringing this action.

WHEREFORE, the Taylor Plaintiffs demand judgment for damages against Banner in an amount to be determined at trial, plus costs, and for such further and other relief as the Court deems just and proper.

## COUNT III
### (Strict Liability)

49.     The Taylor Plaintiffs reassert and reallege the allegations in paragraphs 1 through 26 above as if fully set forth herein.

50.     This is an action by the Taylor Plaintiffs, individually and as assignee of the Homeowners, for strict liability in tort against Banner.

51.     The defective gypsum drywall installed in the Affected Homes was supplied by Banner.

52.     The defective gypsum drywall supplied by Banner is defective because it has caused damage to Other Property in the Affected Homes.

53.     Banner expected the defective gypsum drywall to reach the Affected Homes without substantial change affecting its condition, and the defective gypsum drywall did in fact reach the Affected Homes without substantial change affecting that condition.

54.     At the time Banner sold and supplied the defective gypsum drywall, Banner delivered the defective gypsum drywall to the construction site but did not install it.  As such, the defective gypsum drywall delivered by Banner was not a structural improvement but a product.

55.     Once installed, the defective gypsum drywall supplied by Banner directly and proximately caused damage to the Other Property in the Affected Homes including, but not

limited to, copper HVAC coils, certain electrical and plumbing components, and other affected materials and items.

56.    As a result, the Taylor Plaintiffs and Homeowners have been damaged.  These damages include, but are not limited to, the cost to fully repair the Affected Homes, which includes replacing the defective gypsum drywall and repairing and replacing the damage to the Other Property in the Affected Homes as a result of the deficient and defective gypsum drywall. These damages also include all costs incurred in relocating the Homeowners to suitable temporary housing facilities and moving and storing their personal property while the Affected Homes are undergoing such repairs, damage to Other Property, as well as damages for loss of goodwill and reputation, and attorneys' fees, expert fees and costs incurred in defending and responding to the claims against them and in bringing this action.

WHEREFORE, the Taylor Plaintiffs demand judgment for damages against Banner in an amount to be determined at trial, plus costs and for such further and other relief as the Court deems just and proper.

## COUNT IV
### (Common Law Indemnity)

57.    The Taylor Plaintiffs reassert and reallege the allegations in paragraphs 1 through 26 above as if fully set forth herein.

58.    This is an action by the Taylor Plaintiffs, individually, for common law indemnity against Banner.

59.    Banner sold and supplied the defective gypsum drywall that was installed in certain of the Affected Homes.

60.    The deficient and defective gypsum drywall sold and supplied by Banner has caused damage to Other Property within the Affected Homes.

61. Because of the defective drywall installed in the Affected Homes, the Taylor Plaintiffs have been forced to undertake an expensive and time consuming process to thoroughly and completely repair the Affected Homes, which includes replacing the defective gypsum drywall and repairing or replacing the Other Property and other materials damaged as a result of the defective drywall.

62. The Taylor Plaintiffs have incurred and will continue to incur monetary damages from the repair and replacement of defective drywall and Other Property in the Affected Homes and, possibly, from claims for personal injury.

63. The Taylor Plaintiffs are entirely without fault for the damage to the Affected Homes and Other Property.

64. As seller and supplier of the defective gypsum drywall, Banner is wholly at fault and responsible for all damages resulting from the defective gypsum drywall.

65. As a result of Banner's wrongful conduct, the Taylor Plaintiffs have been damaged. These damages include, but are not limited to, the cost to fully repair the Affected Homes, which includes replacing the defective gypsum drywall and repairing and replacing the damage to the Other Property in the Affected Homes as a result of the deficient and defective gypsum drywall. These damages also include all costs incurred by the Taylor Plaintiffs in relocating their homeowners to suitable temporary housing facilities and moving and storing their personal property while the Affected Homes are undergoing such repairs, payment for damage to Other Property, as well as damages for loss of goodwill and reputation, and attorneys' fees, expert fees and costs incurred in defending and responding to the claims against them and in bringing this action.

66. Because the Taylor Plaintiffs, through no fault of their own, are vicariously, constructively, derivatively, or technically responsible – and, unlike Banner, have already taken

responsibility -- for the defective gypsum drywall sold and supplied by Banner and installed in the Affected Homes, and because Banner sold and supplied the defective gypsum drywall knowing that it was defective and knowing that it was to be used in the Affected Homes, a special relationship exists between the Taylor Plaintiffs and Banner pursuant to which the Taylor Plaintiffs have the right to be indemnified for all damages sustained as a result of Banner's defective gypsum drywall, including all attorneys' fees and costs incurred defending and responding to the claims of Homeowners and in connection with this lawsuit.

WHEREFORE, the Taylor Plaintiffs demand judgment against Banner for damages in an amount to be determined at trial, plus costs, and for such further and other relief as the Court deems just and proper.

## COUNT V
### (Equitable Subrogation)

67.     The Taylor Plaintiffs reassert and reallege the allegations in paragraphs 1 through 26 above as if fully set forth herein.

68.     This is an action by the Taylor Plaintiffs, individually, for equitable subrogation against Banner.

69.     The Taylor Plaintiffs have and continue to repair Affected Homes and repair and replace Other Property damaged by defective gypsum drywall supplied by Banner in order to protect the Taylor Plaintiffs from, among other things, exposure to further and additional claims for damages.

70.     The Taylor Plaintiffs are not primarily liable for the damages suffered by the owners of the Affected Homes and Other Property or for the costs and damages incurred in repairing the Affected Homes and repairing and replacing Other Property.   Rather, as the

supplier of the defective gypsum drywall, Banner should ultimately be held responsible for the damages caused by the product it supplied.

71.     The Taylor Plaintiffs have not voluntarily made any repairs to Affected Homes or voluntarily made payments for replaced or repaired Other Property.

72.     By repairing the Affected Homes and making payments for or repairing and replacing Other Property, the Taylor Plaintiffs have entirely resolved the property damage claim of each Homeowner for whom repair work has been completed, for which the Taylor Plaintiffs seek equitable relief herein.

73.     The equitable subrogation sought herein would not work any injustice to the rights of any third party.

74.     Based upon the foregoing, the Taylor Plaintiffs are entitled to equitably subrogate against Banner for damages incurred as a result of the defective gypsum drywall supplied by Banner.  These damages include, but are not limited to, the cost to fully repair the Affected Homes, which includes replacing the defective gypsum drywall and repairing and replacing the damage to the Other Property in the Affected Homes as a result of the deficient and defective gypsum drywall. These damages also include all costs incurred by the Taylor Plaintiffs in relocating the Homeowners to suitable temporary housing facilities and moving and storing their personal property while the Affected Homes are undergoing such repairs, payment for damage to Other Property, as well as damages for loss of goodwill and reputation, and attorneys' fees, expert fees and costs incurred in defending and responding to the claims brought against them by Homeowners and in bringing this action.

WHEREFORE, the Taylor Plaintiffs demand judgment for damages against Banner in an amount to be determined at trial, plus costs, and for such further and other relief as the Court deems just and proper.

## COUNT VI
## (<u>Contribution</u>)

75.     The Taylor Plaintiffs reasserts and reallege the allegations in paragraphs 1 through 26 above as if fully set forth herein.

76.     This is an action by the Taylor Plaintiffs, individually, in the alternative, for contribution against Banner.

77.     The Taylor Plaintiffs did not intentionally, willfully, or wantonly cause or contribute to the Homeowners' injuries.

78.     To the extent the Taylor Plaintiffs are called on to pay more than their pro rata share of the common liability, the Taylor Plaintiffs seek to recover from Banner for the amounts paid by the Taylor Plaintiffs in excess of their pro rata share.

WHEREFORE, the Taylor Plaintiffs demand judgment for damages against Banner in an amount to be determined at trial, plus costs, and for such further and other relief as the Court deems just and proper.

## COUNT VII
## (<u>Florida Deceptive and Unfair Trade Practices Act</u>)

79.     The Taylor Plaintiffs reassert and reallege the allegations in paragraphs 1 through 26 above as if fully set forth herein.

80.     This is an action by the Taylor Plaintiffs, individually and as assignee of the Homeowners, for relief under the Florida Deceptive and Unfair Trade Practices Act, F.S. § 501.201, *et seq.*

81.     Banner's selling, supplying, and delivering defective gypsum drywall to the Installers, for installation in homes owned and being constructed by the Taylor Plaintiffs, and ultimately purchased by the Homeowners was unconscionable, unfair, and/or deceptive and

constitutes a violation of the provisions of the Florida Deceptive and Unfair Trade Practices Act ("**FDUTPA**").

82.     Banner's failure to notify the Installers, the Taylor Plaintiffs, or the Homeowners of the latent defect in the gypsum drywall supplied and installed in the Affected Homes and that the defective gypsum drywall would cause damage to Other Property was unfair and/or deceptive and constitutes a violation of the provisions of FDUTPA.

83.     By intentionally selling, supplying, and delivering defective gypsum drywall and intentionally failing to inform and notify the Installers, the Taylor Plaintiffs, and/or the Homeowners of the defective nature of the gypsum drywall, Banner engaged in an omission and practice that was likely to mislead the Installers, the Taylor Plaintiffs, and the Homeowners regarding the nature of the gypsum drywall and the sufficiency of the gypsum drywall for its intended purpose.

84.     As a direct and proximate cause of Banner's violations of FDUTPA, the Taylor Plaintiffs and Homeowners have been damaged.  These damages include, but are not limited to, the cost to fully repair the Affected Homes, which includes replacing the defective gypsum drywall and repairing and replacing the damage to the Other Property in the Affected Homes as a result of the deficient and defective gypsum drywall.  These damages also include all costs incurred by the Taylor Plaintiffs in relocating the Homeowners to suitable temporary housing facilities and moving and storing their personal property while the Affected Homes are undergoing such repairs, payment for damage to Other Property, as well as damages for loss of goodwill and reputation, and attorneys' fees, expert fees and costs incurred in defending and responding to the claims brought against them by the Homeowners and in bringing this action.

WHEREFORE, the Taylor Plaintiffs demand judgment for damages against Banner in an amount to be determined at trial, plus attorneys' fees and costs, and for such further and other relief as the Court deems just and proper.

## COUNT VIII
### (Negligently Supplying Information for the Guidance of Others)

85.     The Taylor Plaintiffs reassert and reallege the allegations in paragraphs 1 through 26 above as if fully set forth herein.

86.     This is an action by the Taylor Plaintiffs, individually and as assignee of the Homeowners, in the alternative, for negligently supplying information for the guidance of others.

87.     Banner owed a duty to the Installers, the Taylor Plaintiffs, and to the Homeowners to inform them of the nature and origin of the defective gypsum drywall.

88.     In omitting information about the origin and nature of the defective gypsum drywall sold and supplied to the Installers and the Taylor Plaintiffs, Banner breached its duty while acting in the course of its business or in the course of a transaction in which it had a pecuniary interest.

89.     The condition and nature of the gypsum drywall supplied by Banner was a fact material to the purchase and supply of drywall by Banner to the Installers, to the Taylor Plaintiffs, and to the Homeowners

90.     By selling, supplying, and delivering the defective gypsum drywall to the Affected Homes for installation by the Installers, Banner represented to the Installers and the Taylor Plaintiffs, and ultimately, to the Homeowners, that the defective gypsum drywall was not defective and was appropriate for installation into the Affected Homes.

91.     Banner's failure to notify the Installers, the Taylor Plaintiffs, or the Homeowners of the latent defect in the gypsum drywall supplied and installed in the Affected Homes and that

17

the gypsum drywall would cause damage to Other Property was negligent in that Banner knew or should have known that the gypsum drywall supplied to the Installers, the Taylor Plaintiffs, and the Homeowners was defective and would cause damage to Other Property and that if Banner notified the Installers, the Taylor Plaintiffs, or the Homeowners that the gypsum drywall contained a latent defect that would cause damage to Other Property, neither the Installers, nor the Taylor Plaintiffs, would purchase or accept delivery of the defective gypsum drywall and the Homeowners would not purchase the Affected Homes

92.     Banner intended for the Installers, the Taylor Plaintiffs, and ultimately, the Homeowners to rely on Banner's expertise, representations, and omissions, in supplying gypsum drywall.

93.     The Installers and Taylor Plaintiffs did indeed rely on the expertise, representations and omissions of Banner in deciding to purchase and accept delivery of gypsum drywall from Banner.   Consequently, the Homeowners relied on the expertise, representations, and omissions of Banner in deciding to purchase and accept delivery of the Affected Homes containing defective gypsum drywall sold and supplied by Banner.

94.     Banner knew or intended that representations and omissions made to the Installers regarding the gypsum drywall would be conveyed to or received by the Taylor Plaintiffs and, ultimately, the Homeowners

95.     By negligently omitting and failing to notify the Installers and the Taylor Plaintiffs of the latent defect in the gypsum drywall and that it would cause damage to Other Property, Banner intended to influence the Installers and the Taylor Plaintiffs in that they would rely on this lack of negative information in deciding to purchase and accept delivery of gypsum drywall from Banner.

96.     The Installers, the Taylor Plaintiffs, and, ultimately, the Homeowners did rely on the representations, omission and failure of Banner to notify them of the latent defect in the gypsum drywall and that it would cause damage to Other Property.  But for Banner's representations, omission and failure to notify of the defective nature of the gypsum drywall and that it would cause damage to Other Property, the Installers and the Taylor Plaintiffs would not have purchased or accepted delivery of the gypsum drywall from Banner and the Homeowners would not have purchased or accepted the Affected Homes

97.     As a direct and proximate cause of Banner's negligence, the Taylor Plaintiffs and Homeowners have been damaged.  These damages include, but are not limited to, the cost to fully repair the Affected Homes, which includes replacing the defective gypsum drywall and repairing and replacing the damage to the Other Property in the Affected Homes as a result of the deficient and defective gypsum drywall. These damages also include all costs incurred by the Taylor Plaintiffs in relocating the Homeowners to suitable temporary housing facilities and moving and storing their personal property while the Affected Homes are undergoing such repairs, payment for damage to Other Property, as well as damages for loss of goodwill and reputation, and attorneys' fees, expert fees and costs incurred in defending the claims against them and in bringing this action.

WHEREFORE, the Taylor Plaintiffs demand judgment for damages against Banner in an amount to be determined at trial, plus costs, and for such further and other relief as the Court deems just and proper.

### COUNT IX
### (Negligence)

98.     The Taylor Plaintiffs reassert and reallege the allegations in paragraphs 1 through 26 above as if fully set forth herein.

99.     This is an action, in the alternative, by the Taylor Plaintiffs, individually and as assignee of the Homeowners, for negligence.

100.    Banner owed a duty to the Installers, the Taylor Plaintiffs, and to the Homeowners, to sell, supply, and deliver non-defective gypsum drywall.

101.    Prior to selling, supplying, and delivering the defective gypsum drywall to the Affected Homes, Banner owed a duty to the Installers, the Taylor Plaintiffs, and to the Homeowners to inform and warn them of the origin and defective nature of the gypsum drywall.

102.    After learning of the origin and defective nature of the gypsum drywall, Banner owed a duty to the Installers, the Taylor Plaintiffs, and to the Homeowners to notify them, that the gypsum drywall sold, supplied, and delivered by Banner was defective.

103.    In omitting information about the origin and nature of the defective gypsum drywall sold and supplied to the Installers and the Taylor Plaintiffs, Banner breached its duty while acting in the course of its business or in the course of a transaction in which it had a pecuniary interest.

104.    By selling, supplying, and delivering the defective gypsum drywall to the Affected Homes for installation by the Installers, and by failing to notify or disclose the defective nature of the gypsum drywall, Banner breached its duties to the Installers and the Taylor Plaintiffs, and ultimately, to the Homeowners.

105.    Banner's failure to notify the Installers, the Taylor Plaintiffs, or the Homeowners of the latent defect in the gypsum drywall supplied and installed in the Affected Homes and that the gypsum drywall would cause damage to Other Property was negligent in that Banner knew or should have known that the gypsum drywall supplied to the Installers, the Taylor Plaintiffs, and the Homeowners was defective and would cause damage to Other Property and that if Banner notified the Installers, the Taylor Plaintiffs, or the Homeowners that the gypsum drywall

contained a latent defect that would cause damage to Other Property, neither the Installers, nor the Taylor Plaintiffs, would purchase or accept delivery of the defective gypsum drywall and the Homeowners would not purchase the Affected Homes

106.    Banner intended for the Installers, the Taylor Plaintiffs, and ultimately, the Homeowners to rely on Banner's expertise, representations, and omissions, in supplying gypsum drywall.

107.    The Installers and Taylor Plaintiffs did indeed rely on the expertise, representations and omissions of Banner in deciding to purchase and accept delivery of gypsum drywall from Banner.  Consequently, the Homeowners relied on the expertise, representations, and omissions of Banner in deciding to purchase and accept delivery of the Affected Homes containing defective gypsum drywall sold and supplied by Banner.

108.    Banner knew or intended that representations and omissions made to the Installers regarding the gypsum drywall would be received by or conveyed to the Taylor Plaintiffs and, ultimately, to the Homeowners

109.    As a direct and proximate cause of Banner's negligence, the Taylor Plaintiffs and Homeowners have been damaged.  These damages include, but are not limited to, the cost to fully repair the Affected Homes, which includes replacing the defective gypsum drywall and repairing and replacing the damage to the Other Property in the Affected Homes as a result of the deficient and defective gypsum drywall. These damages also include all costs incurred by the Taylor Plaintiffs in relocating the Homeowners to suitable temporary housing facilities and moving and storing their personal property while the Affected Homes are undergoing such repairs, payment for damage to Other Property, as well as damages for loss of goodwill and reputation, and attorneys' fees, expert fees and costs incurred in defending the claims against them and in bringing this action.

WHEREFORE, the Taylor Plaintiffs demand judgment for damages against Banner in an amount to be determined at trial, plus costs, and for such further and other relief as the Court deems just and proper.

s/ Stephen E. Walker
Neal A. Sivyer
Florida Bar No. 373745
Stephen E. Walker
Florida Bar No. 0497851
**SIVYER BARLOW & WATSON,  P.A.**
401 E. Jackson Street, Suite 2225
Tampa, Florida  33602
Telephone:  (813) 221-4242
Facsimile:   (813) 227-8598
*Attorneys for Taylor Morrison Services, Inc., and
Taylor Woodrow Communities at Vasari, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 25, 2010, I electronically filed the foregoing with the Clerk of Court by using the ECF system and that a true and correct follow-up copy was mailed to the Clerk of Court.  I further certify that a true and correct copy of the foregoing was served by facsimile and U.S. Mail to:

Todd R. Ehrenreich, Esq.
Seth V. Alhadeff, Esq.
Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC
2601 S. Bayshore Drive, Suite 850
Coconut Grove, Florida 33133
tehrenreich@wwhgd.com
salhadeff@wwhgd.com
*Attorneys for Banner*

s/Stephen E. Walker
Stephen E. Walker

22