UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
| ALL *CASES* | MAG. JUDGE WILKINSON |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**OBJECTION AND REQUEST TO MODIFY
SPECIAL MASTER CASE MANAGEMENT ORDER NO. 1**

COMES NOW Primary Counsel[1] who object to Special Master Case Management Order No. 1 ("CMO No. 1") insofar as it requires Primary Counsel/Objectors to designate an "Objectors' Designee" to be deposed on the fee dispute before the Court. As further explained below, such testimony is irrelevant to the Court's limited authority to extract a common benefit fee from the Global Fee, which belongs entirely to the attorneys with individual fee contracts. Moreover, as there is no formal class or committee of attorneys for individual claimants, it is impossible to designate a witness who can answer questions about the work of other primary attorneys. This Objection is made for the purpose of bringing CMO No. 1 into compliance with the purpose, policy and law regarding factors and considerations that are relevant to a determination of a benchmark or award to common benefit counsel out of the fees that belong to Primary Counsel.

---

[1] Primary Counsel are those firms listed or otherwise designated in the signature block.

This Objection should be granted for the following reasons:

## AUTHORITY FOR AWARDING FEES

1. Primary Counsel have contingency fee contracts with the individual claimants who were joined in this Multi-District Litigation ("MDL"). Those fee contracts create a constitutionally protected property interest in the payment of attorneys' fees. *See Fontana v. Barham*, 707 F.2d 221 (5th Cir. 1983), citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982). Unlike Primary Counsel, the PSC and common benefit counsel, as such,[2] do not have a contractual right to attorneys' fees.

2. "By and large, the legal bases relied on by the courts that have reviewed and altered contingent fee agreements in MDL cases for reasonableness are similar to the justifications for creating a common fee fund, namely: (1) a court's equitable authority to oversee the administration of a global settlement, (2) a court's inherent authority to exercise ethical supervision over parties, and (3) the court's express authority pursuant to the terms of the MDL settlement agreement." Eldon E. Fallon, *Common Benefit Fees in Multi-District Litigation,* 74 La. L. Rev. 371, 379 (2014) (hereinafter "*Common Benefit Fees*"). Only the first is implicated in this instance.

3. This dispute is among attorneys over a fixed sum *after* approval of a satisfactory settlement between claimants and the defendants. There is no issue regarding the reasonableness of any individual contingency fee for any individual claimant or defendant, nor is there a dispute regarding the reasonableness of the aggregate of all contingency fees as to all claimants or

---

[2] Many firms fall into both categories. As the Fee Committee ("FC") pointed out, several Primary Counsel have performed Common Benefit Work [Rec. Doc. 20384-2, p. 11] and a few are members of the PSC [Rec. Doc. 20384-2, fn. 7].

defendants.[3] Simply put, the rights of the MDL parties are not at issue and are not threatened by this fee dispute.

4. Furthermore, this matter does not involve a dispute over fees awarded under Rule 23,[4] notwithstanding the FC's repeated attempts to rely on class action jurisprudence to justify their overreaching request.

5. Boiled to its essentials, the FC's allocation motion urges the Court to extend its equitable administrative authority to new lengths, to effectively invalidate private fee contracts for the benefit of common benefit counsel and to force Primary Counsel to prove their entitlement to individual fees against the collective worth of all common benefit work. This is directly contrary to the established fee paradigm in mass litigation and poses grave consequences on the MDL device.[5]

6. At most, the Court's MDL authority permits the creation of a common benefit fund based on the extent and value of common benefit work, which may be "extracted from the fee of primary attorneys." Fallon, *supra* at 376. The remainder of the fees will be allocated among Primary Counsel based on the formula established by Pretrial Order No. 28(F) [Rec. Doc. 20282].[6]

---

[3] *Compare In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 658 (E.D. La. 2010) (capping contingency fees at 32% as part of the approval of claimants' settlement).

[4] Fed. R. Civ. P. 23(g)(1)(C), 23(h) (stating that "[i]n appointing class counsel, the court … may order potential class counsel … to propose terms for attorney fees" and that "[i]n a certified class action, the court may award reasonable attorney's fees").

[5] This dilemma is the subject of a 2012 article published by the University of Texas School of Law, noting the limitations and potential implications of *In re Vioxx* and *Zyprexa Prod. Liab. Litig.*, 424 F.Supp.2d 488 (E.D.N.Y. 2006). *See Aimee Lewis, Limiting Justice: The Problem of Judicially Imposed Caps on Contingent Fees in Mass Actions*, 31 Rev. Litig. 209 (Winter 2012).

[6] Pretrial Order No. 28(F) establishes a formula for a pro rata distribution of fees among Primary Counsel from the pool of funds dedicated to payment of attorneys' fees.

7. A proper application of the common benefit doctrine would effectively require Primary Counsel to pay the common benefit fee *from* their contractual fees, as explained in *Common Benefit Fees*. *Id.* ("Thus in MDLs, the claimant does not pay the common benefit fee; the primary attorney who is the beneficiary of the common benefit work pays it."). The doctrine does not support throwing out contingency fee contracts and forcing Primary Counsel to prove the value of their work for their individual client(s) against the value of common benefit work on behalf of all claimants.

8. Because common benefit counsel lack independent authority for fees, the Court must conduct a fact intensive inquiry into the type, timing, volume, necessity, and value of the alleged common benefit work in order to determine an appropriate common benefit fee.[7] This weighing exercise based on "equity and her blood brother, quantum meruit"[8] does *not* apply to Primary Counsel, whose rights are established by the fee contracts.

9. On Motion of Primary Counsel [Rec. Doc. 20394], the Special Master was appointed to oversee discovery and, thereafter, recommend to the Court an appropriate common benefit fee under the circumstances. Rec. Doc. 20410. The FC *opposed* Primary Counsel's request for discovery. Rec. Doc. 20411.

---

[7] This is confirmed by Pretrial Order No. 28 which requires the Fee Committee ("FC") to consider the *Johnson* factors. Rec. Doc. 17379 at ¶ 14.

[8] Fallon, *supra* at 376.

4

10. As a matter of law, the value of time and labor by Primary Counsel based on quantum meruit is not before the Court for adjudication and should not be the subject of discovery by the PSC and/or FC.

## THE OBJECTIONABLE DISCOVERY ORDER

11. CMO No. 1, which defines the scope of discovery, requires Primary Counsel to select and put forth an "Objectors' Designee" for deposition by the FC "in the following areas of inquiry: (1) The efforts and work performed by counsel for individual claimants who seek compensation for handling an individual Chinese drywall claim eligible in any of the various settlements, and (2) Oppositions to the Fee Committee's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F) [Rec. Doc. 20293]." See CMO No. 1 at § VII.D. This provision is clear error.

12. First, as set forth above, the value of Primary Counsel's work is not before the Special Master and is not a proper subject for discovery, as their compensation is due by virtue of contracts with individual claimants. The real issue, in simple terms, is what percentage of Primary Counsels' fees should be taken from them to compensate common benefit counsel for the value of their work. As aptly stated in *Common Benefit Fees*, ". . . common benefit fee comes out of the fee of the primary attorney - a slice out of that pie . . . ." Fallon, *supra* at 379. The pie, in this instance, is the Global Fee award. The slice is the yet to be determined common benefit allocation.[9]

---

[9] The common benefit slice requested in this matter exceeds 60% of the total attorneys' fees available for distribution. Compare to *Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, awarding common benefit fees of approximately 20% of the total attorneys' fees available.

13. Granting the FC a right in the initial case management order to conduct discovery regarding work performed by Primary Counsel sets this process on a course that conflicts with the unique and narrow authority for awarding common benefit fees in an MDL, particularly where the fee fund is already fixed and the rights of the MDL parties are not implicated.[10]

14. Second, Primary Counsel cannot comply with the Special Master's directive because there is no Objector class or formal committee of individual attorneys, as with the PSC, FC and others committees sanctioned by the Court. Each individual objecting attorney represents his/her individual clients and can testify only regarding his/her own work, which likely varied from client to client depending on the circumstances. There may also be matters of attorney-client privilege that cannot be shared with a designee.

15. Finally, to the extent that general information regarding the role of Primary Counsel is needed by the Court or Special Master for context or background, many of the Objectors have filed detailed affidavits describing the inordinate amount of time and expenses required in this matter. The PSC and FC acknowledged these efforts in their Global Fee Petition, filed on May 16, 2014. *See* Rec. Doc. 17700 and 17700-1.

## APPROPRIATE METHODOLOGY

16. The FC attempts to analyze and justify its fee recommendation based on a class action model. That approach is not fully applicable to mass tort claims in an MDL. *See* Fallon, *supra* at 376 (explaining "the difference" between common benefit fees in a class action versus an

---

[10] Primary Counsel also take issue with other aspects of the CMO, such as the denial of Primary Counsel's request to depose the leadership of the PSC and FC. Those concerns have been addressed in a request for reconsideration directed to the Special Master and are not a part of this Objection.

6

MDL).[11] *See also* William Rubenstein, *On What a "Common Benefit Fee" Is, Is Not, and Should Be*, 3 Class Action Attorney Fee Digest 87 (Mar. 2009) ("the one thing a common benefit fee is not, is a class action fee award.").[12]

17. The Special's Master's focus in the attorneys' fee allocation dispute should be on establishing the appropriate benchmark as opposed to a weighing exercise of work done by common benefit counsel versus work required by Primary Counsel that contributed to the Settlement or its implementation. The efforts of Primary Counsel are irrelevant because their fee is established by contract. This was implicit in the Court's requirement that **_common benefit counsel_** keep detailed records of all time for which common benefit fees would be sought. *See* Pre-trial Order Nos. 9 [Rec. Doc. 147] and 9A [Rec. Doc. 12961] (emphasis added). Notably, no such requirement was ordered or suggested by the Court for individual plaintiffs' counsel. Further,

---

[11] "The common fund doctrine was originally, and perhaps still is, most commonly applied to awards of attorneys' fees in class actions. But this doctrine is not limited solely to class actions: It has been used in complex litigation to compensate attorneys whose work benefits others similarly situated. As class actions were combined with individual actions to form MDLs, as is the modern trend, the common benefit concept migrated into the latter area. It has been used to compensate attorneys who render legal services beneficial to all MDL plaintiffs. Courts have justified this approach by postulating that MDLs are quasi-class actions because, like class actions, they involve large numbers of cases grouped together and handled by one judge for efficiency, consistency, and coordination. The theoretical bases for the application of the common fund concept to MDLs are the same as for class actions-namely, equity and her blood brother, quantum meriut [sic]. However, there is a difference: In class actions the beneficiary of the common benefit work is the claimant; in MDLs the beneficiary is the primary attorney (the attorney who has the representation agreement with the claimant). For this reason, in MDLs, the common benefit fee is extracted from the fee of the primary attorney and not the claimant, as is the case with class actions. Thus in MDLs, the claimant does not pay the common benefit fee; the primary attorney who is the beneficiary of the common benefit work pays it." Fallon, *supra* at 376-377 (internal citations omitted).

[12] Professor Rubenstein provided the following example of why the difference matters: "It is fair to ask why the common benefit fee need be lower than the class action fee . . . the common benefit attorneys who helped manufacture the benefit might also even have a lodestar that with same multiplier, justify [an award of 100% of the attorneys' fees]. But here's the hitch, in the mass tort case there are also local counsel who have contingent fee contracts with the claimants, and more importantly, who contributed important attorney work to producing the settlement as well. The common benefit lawyers simply do not do 100% of the legal work in the case." *Id.*

Primary Counsel are placed in the impossible position of defending their contingency fees under a quantum meruit analysis measured against the value of the collective common benefit. That approach is legally wrong and patently unfair.

18. Multiple MDL decisions provide guidance in arriving at a benchmark and other factors to consider in determining the percentage of Primary Counsel fees that should be withheld.[13] Importantly, those decisions only address the efforts of common benefit counsel.[14]

19. The jurisprudence is clear that the efforts and value of individual attorneys on behalf of individual claimants are not relevant to application of the appropriate methodology for calculating a common benefit fee in any proceeding, let alone an MDL proceeding where the fee "pie" is already determined and the recovery of the individual claimants is not implicated by the allocation of attorneys' fees.

## CONCLUSION

For the reasons stated herein, based on the applicable laws, policies and purposes of MDL actions and an award of common benefit fees and expenses, Primary Counsel seek an Order

---

[13] Nearly all courts considering requests for common benefit fees have set a benchmark of 4% to 6% as a common benefit award. *See, e.g., In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, 2012 WL 161194 (E.D. La. 2012) (ordering a 6% assessment to private plaintiffs and 4% to governmental claimants).

[14] *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640 (finding by that 6% is a reasonable benchmark for common fee awards); *In re Diet Drugs (Phentermine, Fenfluramine, Desfenfluramine) Prods. Liab. Litig.*, 553 F. Supp. 2d 442, 457-58, 491-96 (E.D. Pa. 2008) (settling on 6% and 4% in federal and state assessments); *In re Zyprexa Prods. Liab. Litig.*, 467 F. Supp. 2d 256, 261-63 (E.D. N.Y. 2006)(1% and 3% of separate settlement amounts); *In re Sulzer Hip Prosthesis and Knee Prosthesis Liab. Litig.,* 268 F. Supp. 2d 907, 909, 919, n. 19 (N.D. Ohio 2003)(awarding common benefit fees representing 4.8% of settlement value); *In re Rezulin Prods. Liab. Litig*. MDL No. 1348, 2002 WL 441342, at *1 (S.D.N.Y. Mar 20, 2000) (6% withholding in federal cases, 4% in participating state cases); *see also* 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 14:9 (4th ed. 2002) ("Most courts have assessed common benefit fees at about a 4-6% level ...").

revising CMO No. 1 by removing the provision requiring the deposition of a Primary Counsel designee.

Respectfully submitted this the 21st day of October 2016.

Respectfully submitted:

| **FAIRCLOTH, MELTON & SOBEL, LLC** | **LISKA, EXNICIOS & NUNGESSER** |
|---|---|
| By: /s/ *Jimmy R. Faircloth, Jr.*<br>Jimmy R. Faircloth, Jr., Co-Liaison Counsel (LA #20645)<br>jfaircloth@fairclothlaw.com<br>Brook L. Villa (LA #31988)<br>bvilla@fairclothlaw.com<br>Franklin "Drew" Hoffmann (LA #35824)<br>dhoffmann@fairclothlaw.com<br>301 Main Street, Suite 920<br>Baton Rouge, LA 70801<br>Phone: (225) 343-9535<br>Fax: (225) 343-9538<br><br>*Attorneys for Parker Waichman LLP* | By: /s/ *Val Patrick Exnicios*<br>Val Patrick Exnicios, Esq., Co-Liaison Counsel<br>vpexnicios@exnicioslaw.com<br>1515 Poydras Street<br>14th Floor, Ste. 1400<br>New Orleans, LA. 70112<br>Phone: (504) 410-9611<br>Fax: (504) 410-9937<br>Cell: (504) 495-9666<br><br>*Attorneys for Whitfield Bryson & Mason LLP, Pendley Baudin & Coffin, Rhine Law Firm, and Luckey & Mullins* |
| **BARON & BUDD, P.C.** | **GENTLE, TURNER, SEXTON & HARBISON, LLC** |
| By: /s/ *Russell W. Budd*<br>Russell W. Budd (TX #03312400)<br>rbudd@baronbudd.com<br>S. Ann Saucer (TX #00797885; LA #21368)<br>asaucer@baronbudd.com<br>3102 Oak Lawn Avenue, Suite 1100<br>Dallas, TX 75219<br>Phone: 214-521-3605<br>Fax: 214-520-1181 | By: /s/ *K. Edward Sexton, II*<br>K. Edward Sexton, II<br>esexton@gentlelaw.com<br>501 Riverchase Parkway East<br>Suite 100<br>Hoover, Alabama 35244<br>Phone: (205) 716-3000 |

**MCCALLUM, HOAGLUND, COOK & IRBY, LLP**

By:     /s/ *Eric D. Hoaglund*
    Eric D. Hoaglund
    ehoaglund@mhcilaw.com
    905 Montgomery Highway, Suite 201
    Vestavia Hills, Alabama 35216
    Phone: (205) 824-7767
    Fax: (205) 824-7768

**MRACHEK, FITZGERALD, ROSE, KONOPKA, THOMAS & WEISS, P.A**

By:     /s/ *Gregory S. Weiss*
    Gregory S. Weiss (FL #163430)
    gweiss@mrachek-law.com
    505 S. Flagler Drive, Suite 600
    West Palm Beach, FL 33401
    Phone: (561) 655-2250
    Fax: (561) 655-5537

**ALLISON GRANT, P.A.**

By:     /s/ *Allison Grant*
    Allison Grant (FL #858330)
    agrant@allisongrantpa.com
    14 SE 4th St
    Boca Raton, FL 33432-6111
    Phone: 561-994-9646
    Fax: 561-431-4627

**MILSTEIN, ADELMAN, JACKSON, FAIRCHILD & WADE, LLP**

By:     /s/ *Mark Milstein*
    Mark Milstein
    mmilstein@majfw.com
    10250 Constellation Blvd., 14th Floor
    Los Angeles, CA 90067
    Phone: (310) 396-9600
    Fax: (310) 396-9635

**COLLINS & HORSLEY, P.C.**

By:     /s/ *David L Horsley*
    David L Horsley (AL #6090-I47H)
    david@collinshorsley.com
    2021 Morris Avenue, Suite 200
    Birmingham, Alabama
    Phone: 205-324-1834
    Fax: 205-324-1846

**ALTERS LAW FIRM, P.A.**

By:     /s/ *Jeremy W. Alters*
    Jeremy W. Alters (FL #111790)
    jeremy@alterslaw.com
    Justin D. Grosz (FL #984000)
    justin@alterslaw.com
    Matthew T. Moore, Of Counsel (FL #70034)
    matthew@alterslaw.com
    1855 Griffin Road, Suite C470
    Dania Beach, FL 33004
    Phone: (305) 571-8550
    Fax: (305) 571-8558

Case 2:09-md-02047-EEF-MBN   Document 20520   Filed 10/21/16   Page 11 of 11

| | |
|---|---|
| **GIEGER, LABORDE & LAPEROUSE, LLC** | **YANCE LAW FIRM, LLC** |
| By:   /s/ *Victoria E. Emmerling*<br>       Andrew A. Braun (LA #3415)<br>       abraun@glllaw.com<br>       Victoria E. Emmerling (LA #33117)<br>       temmerling@glllaw.com<br>       701 Poydras Street, Suite 4800<br>       New Orleans, Louisiana 70139-4800<br>       Phone: (504) 561-0400<br>       Fax: (504) 561-1011 | By:   /s/ *R. Tucker Yance*<br>       R. Tucker Yance (AL #ASB-9775-H71Y)<br>       rty@yancelaw.com<br>       169 Dauphin Street Suite 318<br>       Mobile, AL 36602<br>       Phone: (251) 432-8003<br>       Fax: (251) 432-8009 |

*Attorneys for Morris Bart, L.L.C*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Objection and Request to Modify Special Master Case Management Order No. 1 has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 21st day of October, 2016.

          /s/ *Jimmy R. Faircloth, Jr.*
              OF COUNSEL