UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| | : | MDL NO. 2047 |
| IN RE: CHINESE MANUFACTURED DRYWALL | : | |
| PRODUCTS LIABILITY LITIGATION | : | SECTION L |
| | : | |
| | : | JUDGE FALLON |
| | : | MAGISTRATE JUDGE |
| .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. | : | WILKINSON |

**THIS DOCUMENT RELATES TO:** ALL CASES

### ORDER AND REASONS

Before the Court is Plaintiff's Counsel Holston Vaughan ("Holston") Motion requesting this Court order Knauf to pay Plaintiffs' Counsel attorneys' fees and expenses pursuant to a stand-alone settlement agreement outside the MDL. R. Doc. 20340. Plaintiffs Prichard Housing Authority and their counsel, Taylor Martino, P.C., have filed a similar motion seeking the same relief. R. Doc. 20341. Both the Fee Committee and Defendant Knauf oppose the motions. R. Docs. 20382, 20397. Having read the partys' motions and statements at oral argument, the Court issues this Order and Reasons.

**I.    BACKGROUND**

From 2005 to 2008, a housing boom coincided with the destruction caused by Hurricanes Katrina and Rita to sharply increase the demand for construction materials in the Gulf South and East Coast.  In response, Chinese companies manufactured and sold to homeowners throughout the United States considerable quantities of gypsum wallboard which came to be known as "Chinese drywall."  Homeowners experienced problems with the drywall.  Specifically, the drywall emits various sulfide gases, damages structural mechanical and plumbing systems of the home, and damages other appliances in the home.  The affected parties sued the entities involved

in the manufacturing, importing, and installing the Chinese drywall. The cases multiplied and the Judicial Panel on Multidistrict Litigation ("MDL") declared the matter an MDL and transferred the cases to this Court. After a period of discovery, it became clear that there were two principal manufacturers: the Knauf Entities and the Taishan Entities. The Knauf Entities, along with the related downstream defendants, entered into various settlement agreements, including the Global, Banner, and InEx Settlements. *See generally* http://www.laed.uscourts.gov/Drywall/Drywall.htm.

Prichard Housing Authority ("PHA") filed suit against the Knauf Entities in Alabama state court and the Drywall MDL regarding 29 properties with allegedly defective drywall. Holston Vaughan ("Holston") represented seven homeowners in the same subdivision as the PHA properties, and filed suit against the Knauf Entities in Alabama state court. The PHA claims settled between August and October 2011, and the Holston cases settled in July 2012. Both settlements included provisions regarding attorneys' fees. The relevant portions of the agreements state:

> "Knauf agrees to compensate Plaintiff's Counsel pursuant to the Class Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL 2047." (Holston Agreement)
>
> "In accordance with Section X of the Remediation Agreement . . . Knauf agrees to pay the costs and reasonable attorneys' fees in accordance with paragraphs 9 and 10 of the Remediation Agreement." (PHA Agreement)

Plaintiffs now claim they are entitled to be paid attorneys' fees separate from the MDL funds, while Defendants and the Fee Committee contend that any payments should be made from the funds Knauf already set-aside within the MDL.

## II.  PRESENT MOTIONS

### a.  Plaintiff Holston Vaughan's Motion (R. Doc. 20340)

In their motion, Plaintiffs argue they are entitled to be paid fees pursuant to a stand-alone settlement agreement they made with Knauf outside of the MDL. R. Doc. 20340 at 1. According

2

to Plaintiffs, this agreement provided that attorney fees would be paid outside of the Global Fee Award in the MDL, but were to be consistent with those amounts. R. Doc. 20340 at 1. Further, Plaintiffs emphasize that they have not asserted remediation or relocation claims in the MDL, and the Plaintiffs' claims for fees and expenses were not included in the PSC's PTO 28(F). R. Doc. 20340 at 1. Finally, Plaintiffs contend that they have not been paid for the remediation and relocation benefits they secured for their clients. R. Doc. 20340 at 1.

These claims arise from state court lawsuits that were filed against Knauf on behalf of 7 Plaintiffs who discovered defective drywall in homes they had purchased in Mobile County, Alabama in 2007 and 2008. R. Doc. 20340 at 2-3. Eventually, the parties reached a settlement agreement in January 2012, which was executed in August 2012. R. Doc. 20340 at 4; see Ex. D.

Plaintiffs aver that in the settlement agreement, Knauf agreed to pay Holston Vaughan attorneys' fees and litigation expenses in relation to the settled claims. R. Doc. 20340 at 5; see Holston Agreement. Plaintiffs contend that this agreement was reached outside of the MDL settlement, and therefore they should receive funds outside of the Global Fee Award in a percentage "consistent with the amounts paid similar claims pursuant to MDL 2047." R. Doc. 20340 at 5-6. According to Plaintiffs, their clients received $582,284.30 in remediation costs and $101,396.50 in relocation expenses. R. Doc. 20340 at 7. Thus, Plaintiffs argue they are entitled to 29.3% of these funds, or $200,318.47, in addition to $29,723.34 in expenses incurred in the litigation. R. Doc. 20340 at 7.

If the Court determines that the stand-alone agreement is unenforceable or invalid, Plaintiffs argue in the alternative they should be included in the MDL's Global Fee Award. R. Doc. 20340 at 8. Therefore, they object to the Fee Allocation Motion to the extent they were not included in the group of law firms receiving private attorney fees. R. Doc. 20340 at 8. Specifically,

3

Plaintiffs argue that the funds they recovered should be added to the BrownGreer listing of claimants' recovery amounts so Holston Vaughan can be paid from the PSC's settlement. R. Doc. 20340 at 8. If their clients' recovery is included in the BrownGreer funds, Plaintiffs also object to the common benefit apportionment. R. Doc. 20340 at 8.

### b. Plaintiff Prichard Martino's Motion (R. Doc 20341)

Plaintiffs Prichard Housing Authority ("PHA") and Taylor Martino, P.C. ("TM") have filed a similar motion, also seeking attorneys' fees pursuant to a stand-alone settlement agreement with Knauf. R. Doc. 20341. PHA argues they entered a settlement agreement with Knauf wherein Knauf agreed to pay TM's costs and reasonable attorney fees. R. Doc. 20341 at 1. Plaintiffs have also filed an alternative motion with the Court, arguing that if the stand-alone agreement is unenforceable, TM is entitled to common-benefit fees from the Global Fee Award. See R. Doc. 20341 at 2.

The cases at issue here arose from a contract where PHA agreed to build 36 homes in Mobile Alabama. R. Doc. 20341 at 2. In 2008, PHA still owned 29 of the homes, and Knauf drywall was discovered in each property. R. Doc. 20341 at 2. Plaintiffs filed a lawsuit in Alabama state court, and TM incurred substantial litigation costs. R. Doc. 20341 at 3. PHA also joined the MDL, but did not withdraw or transfer the state action. R. Doc. 20341 at 3. According to Plaintiffs, no one objected to this "dual track." This matter eventually settled, and Knauf agreed to remediate the houses, pay PHA nearly $600,000 in cash, and pay TM's reasonable attorneys' fees and expenses. R. Doc. 20341 at 4; see PHA/TM agreement. According to Plaintiffs, this agreement was outside the remediation Pilot Program. R. Doc. 20341 at 5. Plaintiff argues that Knauf and the PSC have still not agreed on reasonable attorneys' fees, and thus Knauf should immediately pay

4

TM one-third the value of the PHA settlement. R. Doc. 20341 at 7. Plaintiff contends that one-third of the PHA settlement is $876,717.75. R. Doc. 20341 at 7.

Plaintiffs then address whether the claimed fees are reasonable. Under Alabama law, the Court should consider a variety of factors, including the value of the subject matter of the employment, the learning, skill, and labor required, the professional reputation and experience of the attorney, the measure of success achieved, expenses incurred, whether the fees are fixed or contingent, the fee typically charged for similar legal services, and the likelihood that this employment precluded other opportunities. R. Doc. 20341 at 10-14. According to Plaintiffs, these factors more than demonstrate attorneys' fees of $876,717.75 and $53,660.21 in costs are reasonable in this case. R. Doc. 20341 at 14.

c. **Fee Committee's Opposition to both motions (R. Doc. 20382)**

The Fee Committee filed one memorandum in opposition to both motions. R. Doc. 20382. According to the Fee Committee, the cases filed by Holston and TM were "eventually resolved with the assistance of the PSC." R. Doc. 20382 at 1. The Fee Committee argues these stand-alone settlement agreements indicated that fees and costs would be paid under the MDL settlement agreement. R. Doc. 20382 at 1.

The Fee Committee agrees that the stand-alone agreement with PHA states that "in accordance with Section X of the Remediation Agreement . . . Knauf agrees to pay the costs and reasonable attorneys' fees in accordance with . . . the Remediation Agreement." R. Doc. 20382 at 3. However, the Fee Committee argues that the "Remediation Agreement" refers to the MDL's Pilot Program, and therefore TM must recover fees and costs in accordance with the settlement program in the MDL. R. Doc. 20382 at 2. According to the Fee Committee, the agreement demonstrates that TM falls within the category of contract attorneys who will receive

5

compensation through the MDL. R. Doc. 20382 at 3. Additionally, the Fee Committee notes that TM has submitted a request to the Fee Committee to recover from the common benefit fund, and now seeks to be paid twice for the same work.

The Fee Committee makes similar arguments in response to the Holston Plaintiffs' Motion. First, the Fee Committee argues that the stand-alone settlement agreement states that costs and fees will be awarded pursuant to the MDL settlement. R. Doc. 20382 at 3. As such, the Fee Committee argues that the Holston Plaintiffs' should be compensated from the MDL settlement funds. R. Doc. 20382 at 4.

### d.  Defendant Knauf's Opposition to both motions (R. Doc. 20397)

Defendant Knauf has also filed one response to both Plaintiffs' Motions. R. Doc. 20397. According to Knauf, the settlement agreements in each of these matters indicated that attorney fees and costs were to be paid pursuant to the MDL fee allocation process. R. Doc. 20397 at 1. Knauf argues that they have already paid these fees to the MDL, and thus, any additional payments would be in contravention of, not pursuant to, the MDL agreement. R. Doc. 20397 at 1-2.

Defendant argues that the plain language of the settlement agreement supports their position that attorney fees to both TM and Holston should be paid from MDL funds. R. Doc. 20397 at 3. Defendant also contend that the Class Settlement Agreement emphasized that Knauf would not make additional payments to Class Member attorneys. R. Doc. 20397 at 3. Knauf argues that because TM and Holston represented Class Members, per the Knauf settlement agreement, their attorneys' fees must also come from the Class Member fund. R. Doc. 20397 at 4. Knauf emphasizes that not only does TM admit they joined the MDL, but TM also believed they would receive attorney fees from the MDL settlement. R. Doc. 20397 at 4.

### e. Plaintiff Holston Vaughan's Reply (R. Doc. 20479)

Plaintiff Holston adopts TM's reply memo, discussed below. In addition, Holston argues they are not seeking common benefit funds, and unless they receive payment pursuant to the stand-alone settlement agreement, will not be paid for their work on this case. R. Doc. 20479. Holston also disputes the Fee Committee's argument that the PCS assisted in resolving the case. R. Doc. 20479 at 2. Holston contends the PSC did not attend to participate in the mediation, and there are no emails, records, or other correspondence to support the PSC's involvement in these claims. R. Doc. 20479 at 2. Holston also argues that the Plaintiffs they represent are not class members, as the settlement agreement expressly excludes them from the MDL. R. Doc. 20479 at 2.

### f. Plaintiffs' PHA and TM's Reply (R. Doc 20471)

Plaintiffs PHA and TM reply, and argue that the plain language of the agreement supports their position. Specifically, Plaintiffs contend that the phrase "in accordance with Section X of the Remediation Agreement" means "in the same manner as the Remediation Agreement." R. Doc. 20471 at 3. Additionally, Plaintiffs argue that in their motion, the Fee Committee explains that the fees were to be paid "under the MDL," which proves that if they had meant this in the stand-alone settlements, they simply would have revised the language to reflect such. R. Doc. 20471 at 4. Finally, Plaintiffs argue that the additional provisions in the stand-alone agreements – regarding the 30 day waiting period before moving for attorney fees, the obligation to provide PHA with detailed proof of the costs of remediation, and to submit the suit to a mediator – demonstrates that the fee provisions in the stand-alone settlement agreements were separate and apart from the fee provisions in the MDL. R. Doc. 20471 at 5-6

### III. ANALYSIS

At the outset, it is important to acknowledge the work that both Holston and TM did in this litigation. Thirty-six houses were remediated, and they are entitled to compensation for their role in ensuring those Plaintiffs were made whole. However, during oral argument, both Plaintiffs explained that while they initially litigated these claims in state court, these claimants were part of the Class Settlement Agreement in this case. In fact, TM has even filed a request for common-benefit fees. This alone indicated they believed they would be compensated with settlement funds.

While these attorneys did indeed do some work outside of the Class Agreement, once their clients became part of the settlement class, they came fully within the parameters of the Agreement – including the Class Settlement Agreement's framework for attorneys' fees. It would be nonsensical to allow claimants to become part of and benefit from the Class Settlement Agreement, but then require Defendants to pay their attorney fees pursuant to a separate agreement entirely apart from the Class. That being said, both TM and Holston are entitled to file claims for fees as contract attorneys and under the common benefit fund within the Chinese Drywall MDL. Those requests will be determined by the Special Master.

### IV. CONCLUSION

Therefore, for the reasons stated above,

**IT IS ORDERED** that the Plaintiffs' Motions for Fees Outside the MDL, R. Docs. 20340 and 20341, are **DENIED**.

New Orleans, Louisiana, this 17th day of November, 2016.

*Eldon E. Fallon*
UNITED STATES DISTRICT JUDGE