**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
| ALL *CASES* | MAG. JUDGE WILKINSON |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PRIMARY COUNSEL'S OBJECTION TO
SPECIAL MASTER'S RULING CONCERNING OBJECTORS' REQUEST TO
MODIFY SPECIAL MASTER CMO NO. 1 AND REQUEST FOR EXPEDITED
CONSIDERATION**

COMES NOW Primary Counsel[1] who object to those portions of *Special Master's Ruling Concerning Objectors' October 7, 2016 Request to Modify Special Master Case Management Order No. 1* (the "Ruling") [Rec. Doc. 20533] issued October 28, 2016, denying Primary Counsel's requests for the production of specific, narrowly tailored categories of discovery.  As further explained below, the requested documents are directly relevant to the "time and expense" submissions allegedly attributable to the common benefit and "procedures" utilized by the Fee Committee ("FC") for assigning value to the common benefit.  *See* Rec. Doc. 20410.  Because depositions are scheduled to begin on December 14, 2016, and the requested documents are necessary to prepare for and participate in these depositions, Primary Counsel request expedited consideration of this matter.

---

[1] Primary Counsel are those firms listed or otherwise designated in the signature block of this pleading.

I.      **BRIEF PROCEDURAL HISTORY LEADING TO THIS OPPOSITION**

In connection with the FC's unprecedented common benefit fee request of $119,313,367 (roughly 60-65% of all attorneys' fees), the Court appointed the Special Master to oversee and make recommendations regarding "all pending attorneys' fee issues. . . ."  [Rec. Doc. 20478].  On September 25, 2016, the Special Master issued Case Management Order No. 1 ("CMO No. 1"),[2] requiring, inter alia, the FC to produce only the Initial Affidavits submitted by common benefit counsel rather than all common benefit time submissions and other related documents, as requested by Primary Counsel.  CMO No. 1 also required Philip Garrett, the court-appointed CPA, to produce certain reports showing total common benefit hours by firm and employee, held costs, and shared costs, which are not the subject of this Objection.

Thereafter, Primary Counsel, in accordance with the terms of CMO No. 1, requested an order providing for expanded discovery from the FC.  Ex. 1, Letter from Primary Counsel to Special Master on October 7, 2016.  After response from the FC[3] and a reply from Primary Counsel,[4] the Special Master issued the Ruling modifying CMO No. 1, but declining to allow Primary Counsel to discover additional documents held by the FC that relate directly to the fee dispute before the Court – including those that were created and maintained pursuant to orders of the Court for the very purpose of creating a common benefit record.  [Rec. Doc. 20533].

---

[2] *See* Order (requiring CMO No. 1 to be entered into the record).  [Rec. Doc. 20518.]

[3] Ex. 2, Letter from FC to Special Master on October 13, 2016.

[4] Ex. 3, Letter from Primary Counsel to Special Master on October 18, 2016.

## II.     EXPANDED DISCOVERY IS NECESSARY FOR PRIMARY COUNSEL TO PROTECT THEIR PROPERTY INTERESTS

An allocation of fees to common benefit counsel will necessarily deprive Primary Counsel of attorneys' fees to which they have a constitutionally protected property interest.  *See Fontana v. Barham*, 707 F.2d 221 (5th Cir. 1983), citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982).  As such, Due Process requires Primary Counsel to have the same access as the FC to evidence relating to the allocation of fees and an opportunity to "present whatever objections they might have concerning the fairness and reasonableness of [the FC's] fee request."  *Yamada v. Nobel Biocare Holding AG*, No. 14-55263, 2016 WL 3207650, at *7 (9th Cir. Apr. 20, 2016, amended June 9, 2016).  Similarly, they must be allowed "a viable means (comparable to the means afforded the [FC]) of . . . questioning the [FC and] PSC members regarding their work."  *In re Nineteen Appeals*, 982 F.2d 603, 615 (1st Cir. 1992) (cited with approval in *In re High Sulphur Content Gasoline Products Liability Litigation*, 517 F.3d 220, 231 (5th Cir. 2008)). [5]  The limited discovery allowed by CMO No. 1 and the subsequent Ruling do not fulfill this mandate.

The Ruling denies Primary Counsel access to documents containing the most basic and fundamental information at the epicenter of this fee dispute, those necessary to determine *what*

---

[5] Primary Counsel fully briefed their Due Process argument to this Court in Primary Counsel's Memorandum in Support of their *Motion for a Case Management Order Providing for Discovery, the Unsealing of Records Regarding Common Benefit Fees, and the Appointment of a Special Master*.  Rec. Doc. 20394-1, p. 4-16.  Rather than repeat that argument in toto, Primary Counsel hereby adopt and incorporate it as if contained herein.

common benefit work was performed,[6] *why* such work was performed, and *how* such work allegedly contributed to the common benefit.  Additionally, this Ruling limits Primary Counsel's ability to determine whether some of the shared and held costs were in fact for the common benefit and whether they should be deducted from the total amount of attorneys' fees.  Unlike Primary Counsel who are entitled to fees by virtue of contracts with individual claimants, common benefit attorneys were required by Court order (Pretrial Order Nos. 9, 9A and 28) to create and maintain documents sought by Primary Counsel for the very purpose of establishing a record to support a request for common benefit fees.  Denying Primary Counsel access to those documents will deny them a fair opportunity to respond to the FC's common benefit fee request.

## III.   SPECIFIC NATURE AND GROUNDS NECESSITATING ADDITIONAL DISCOVERY

Primary Counsel have requested the following documents to assess the legitimacy, necessity and value of common benefit counsel's work, along with the reasonableness of the expenses.[7]

### A.   All transcripts, agenda and minutes of PSC meetings and FC meetings

First and foremost, these materials were created and maintained for the very purpose of creating a common benefit record.  *See* Pretrial Order No. 8 [Rec. Doc. 144-2] (mandating the

---

[6] Arguably, Primary Counsel may gain a general understanding of the common benefit work performed from the general representations contained in the Initial Affidavits produced by Phillip Garret.  Nevertheless, to fully appreciate what common benefit work was performed (and approved), Primary Counsel must be allowed to access the source timesheets.  The Ruling provides that the Special Master will determine the necessity to produce those timesheets "after the deposition of the Court-appointed CPA, and possibly after the depositions of the members of the Fee Committee and/or PSC members. . . ."   Rec. Doc. 20533, at p. 13.

[7] According to Mr. Garrett, as of December 31, 2013, properly documented held expenses were $3,664,579.15.  Rec. Doc. 20290-5, p. 9 at ¶ 18.  As of December 31, 2014, properly documented held costs were $3,842,737.87.  *Id.*  As of December 31, 2013, properly documented shared expenses were $13,583.536.25.  *Id.* at ¶ 20.

PSC to "[a]ct as spokesperson for all plaintiffs at pretrial proceedings and in response to any inquiries by the Court…."). Further, Plaintiffs' Lead Counsel and Liaison Counsel are required to "coordinate the responsibilities of the PSC, schedule PSC meetings, keep minutes or transcripts of these meetings, appear at periodic court noticed status conferences, perform other necessary administrative or logistic functions of the PSC, and carry out any other duty as the Court may order." *Id.* Indeed, Plaintiffs' Liaison Counsel[8] has acknowledged carrying out these court-ordered duties: "Together [Herman, Herman & Katz, L.L.C.] and [Levin Fishbein Sedran & Berman] coordinated the responsibilities of the PSC, scheduled PSC meetings, kept transcripts of meetings, appeared at periodic court noticed status conferences and performed other necessary administrative and logistic functions of the PSC." Memorandum in Support of Initial Affidavit of Russ M. Herman, p. 1. Affidavit of Russ Herman, Exhibit 20 to Declaration of Russ M. Herman and Arnold Levin, Rec. Doc. 17700-2 (filed under seal).

The *Fee Committee's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F)* (this Motion and memorandum in support thereof are collectively referred to herein as the "Allocation Motion") alleges a "Herculean effort" of common benefit counsel as justification for the unprecedented common benefit fee request of 60-65% of the attorneys' fees. Certainly, given that this alleged Herculean effort will be compensated out of Primary's Counsel's attorney fees, Primary Counsel are entitled to view documents substantiating this effort and the value it produced. The transcripts,

---

[8] Liaison Counsel's duties are set forth in Pretrial Order Nos. 1 [Rec. Doc. 2], 3 [Rec. Doc. 21], 5 [Rec. Doc. 24], 5A [Rec. Doc. 94], and include serving as the recipient of communications from the Court and the defendants for all plaintiffs and speaking to the Court and the defendants on behalf of all plaintiffs.

5

agenda and minutes of FC and PSC meetings, kept pursuant to court order, should reveal *why* certain common benefit work was done and *how* that work benefits all claimants, including the nature, extent, necessity, approval and/or disapproval of common benefit time and expenses expended in this litigation.  More specifically, these documents will contain dialogue or records regarding various common benefit tasks, why and how such tasks were necessary to the common benefit, and whether such tasks were approved by the PSC.  Because this information will not be contained in the documents produced thus far in this dispute, the FC and/or PSC should be required to undergo the minimal burden necessary to gather and produce them.

Further, pursuant to PTO 8, the PSC was appointed as the leadership committee entrusted with the authority to speak on behalf of all plaintiffs, litigate claims on behalf of all plaintiffs, and negotiate settlements on behalf of all plaintiffs.  This appointment created a duty to those plaintiffs and their counsel, and as such Primary Counsel are entitled to documents confirming that duty was upheld.  At minimum this should include the requested agenda, minutes, and transcripts of the PSC's meetings which were ordered by the Court to be kept.

**B. All emails, written communications and other documents**:
1. **To the PSC or any other member of the PSC requesting authorization to conduct common benefit work pursuant to Pretrial Order No. 9 [Rec. Doc. 147]; or**
2. **From the PSC or any member of the PSC authorizing, requesting or denying common benefit work pursuant to Pretrial Order No. 9 [Rec. Doc. No. 147].**

The PSC serves as a gatekeeper for common benefit time and expenses, as Pretrial Order No. 9 [Rec. Doc. 147] requires "[a]ll [common benefit] time and expenses submitted [to] be incurred only for work authorized in advance by the [PSC]."  Pretrial Order No. 28 [Rec. Doc. 17379] further states "[o]nly time and expenses that are accurate and solely related to approved

and assigned common benefit work shall be eligible for consideration of reimbursement for common benefit time and expenses. Counsel shall only include in its claim for consideration of reimbursement for common benefit time and expenses only time or expenses authorized by Pretrial Order Nos. 9, 9A or this Order." This preapproval should be documented by the PSC as Pretrial Order No. 8 [Rec. Doc. 144-2] requires the PSC to "[m]aintain adequate files of all pretrial matters. . . ."

Prior to *subjectively* considering the merits, quality or necessity of common benefit work, Primary Counsel must first *objectively* determine whether such work was pre-approved by the PSC as required by the Court. Absent such approval, the time and expenses are not properly reimbursable and, therefore, should not be considered in the allocation. This request goes directly to the procedures governing reimbursable common benefit time as required by the Court and thus is highly relevant to the amount of fees earned by common benefit counsel.

### C. All emails, written communications and other documents to, from or by FC member(s) or PSC member(s) discussing or relating to:

#### 1. Allocation of fees between common benefit counsel and primary counsel

Primary Counsel are entitled to see all communications and documents relating to the FC's recommended allocation to determine whether all parties' interests were fairly considered and, thereafter, compose an informed response to such claims. Further, this request relates directly to the procedures set forth in Pretrial Order Nos. 28 [Rec. Doc. 17379] and 28(F) [Rec. Doc. 20282], on which the Court has explicitly allowed discovery to proceed. *See* Rec. Doc. 20410.

#### 2. Claims against Taishan and/or other non-settling defendants

The FC and PSC have gone to great lengths to commingle the Taishan claim and the claims against other non-settling defendants with the settled claims to substantiate the excessive common

benefit request.[9]  The FC asserts that inclusion of Taishan time and expenses as common benefit is proper because of the "interrelatedness of the settlements" including a secret deal the PSC reached with the Knauf defendants to pursue the Taishan defendants.[10]  Such backroom agreements, unbeknownst to and unapproved by Primary Counsel, reached with one defendant to pursue another defendant certainly raise issues regarding the propriety of the alleged common benefit time spent in fulfilling such agreements.

Any inclusion of time or expenses related to the pursuit of non-settling defendants in the FC's common benefit fee request is wholly inappropriate.  *See In re Rite Aid Corp. Sec. Litig*., 396 F.3d 294, 302 n.11 (3d Cir. 2005) (district courts cautioned that they should "not conflate [ ] two distinct settlements ....").  *See also Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208, 1214 (3d Cir. 1978) (holding the district court should have excluded from its award of attorney fees against one defendant those fees which were incurred prosecuting other defendants.) The FC's efforts in pursuing the Taishan defendants have not produced a benefit to the claimants, and as such the FC's request for common benefit compensation for its pursuit of Taishan is premature.

Even putting aside any improprieties of the previously undisclosed deal reached with the Knauf defendants or the FC's undisguised and legally unsupported attempt to use this secret deal to justify its compensation in full for its time spent pursuing Taishan, it is of great significance that

---

[9] Omnibus Response to Objections to the Fee Committee's Motion to Determine the Allocation of the Global Fee Award (the "Omnibus Response") [Rec. Doc. 20384-2, p. 18, fn 22]  ("As part of the PSC's global settlement with the Knauf Defendants, the PSC agreed to continue the labor intensive task of pursuing the Taishan Defendants. . . .").

[10] "These objectors are likely unaware of the commitment that the PSC made to the Knauf Defendants in connection with the Knauf Settlement to continue to prosecute the class' claims against the Taishan Defendants, which was in addition to our ongoing responsibility to pursue these claims for Taishan claimants."  *Id.* at 10, fn 7.

Primary Counsel and their clients agreed to the Knauf Settlement on the now false premise that the $160 million initially set aside from the original Knauf Settlement for attorneys' fees and the $13 million later set aside from the second Knauf Settlement for attorneys' fees would be used to compensate counsel solely for their pursuit of claims against Knauf. To now dilute the attorneys' fees properly due under the Knauf Settlement by compensating common benefit counsel from that fund for claims pursued against non-settling defendants materially alters ex post facto the terms of the agreement to which claimants and their counsel agreed.

The documents requested above are necessary for Primary Counsel to evaluate the extent of the FC's inclusion of time and expenses related to non-settling defendants in the FC's common benefit fee request. Further, the requested documents are critical to determining why the FC believes such inclusion is justified given the purported unwritten, clandestine agreement with the Knauf defendants.

### 3.   Whether a particular activity or expense was for the common benefit

This request is related to the request for communications regarding prior authorization of common benefit work. *Supra*, section III.B. Prior to conducting common benefit work, counsel were required by Pretrial Order Nos. 9, 9A, and 28 to obtain pre-approval or assignment of such work from the PSC. Once the work was complete, Pretrial Order No. 28 [Rec. Doc. 17379] charged the FC with reviewing time and expense records, determining their propriety, and evaluating the relevant contribution the activity made toward generation of the settlement funds. Communications and documents created during this process, which discuss whether a particular activity or expense was for the common benefit, are critical to Primary Counsel's understanding of what the FC properly included as common benefit time pursuant to Pretrial Order Nos. 9, 9A, and 28, and are highly relevant to the FC's ultimate recommendation of the fee allocation. This

9

request is squarely within the Court's Order allowing discovery on the "procedures" leading to the FC's fee allocation recommendation.  *See* Rec. Doc. 20410.  Without these communications, Primary Counsel are hampered in understanding the process and principles the FC used when vetting common benefit time, which common benefit time it included, and whether any work that it disputes as common benefit was included as support for its proposed fee allocation.  Primary Counsel have the right to independently confirm that the FC appropriately carried out the Court's Orders during this process and to traverse the FC's representation that the work it includes as support for its proposed allocation was, in fact, considered by the FC to be common benefit through the use of such procedures.

### 4.  Allowance or disallowance of common benefit time or expenses

This request is closely related to section 3, and is necessary for the reasons cited above.

### 5.  Value of all benefits conferred upon claimants by either common benefit counsel or individually retained counsel

Like the previous categories, this request targets information necessary for Primary Counsel to value the contributions of common benefit counsel.  Pretrial Order No. 28 requires the FC to consider the *Johnson* factors "and other matters considered by the courts to evaluate the fee allocations."  Rec. Doc. l7379, p. 10, ¶14; *see also* Allocation Motion, [Rec. Doc. 20293-1, pp. 17-51] (discussing the *Johnson* factors).  The eighth *Johnson* factor is "the amount involved and the results obtained."  *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 718 (5th Cir. 1974), *abrogated by Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989).  As pointed out by the FC in the Allocation Motion, "[T]he U.S. Supreme Court has observed that 'the most critical factor in determining the reasonableness of a fee award is the degree of success obtained.'"  Rec. Doc. 20293-1, p. 35 (citing *Hensley v. Eckerhart*, 461 US. 424, 436 (1983).

For purposes of supporting the common benefit fee request, the FC claims that $1.1 billion in benefits were bestowed upon claimants in this MDL.  Rec. Doc. 20293-1, p. 36.  Despite this inflated figure, for purposes of calculating Primary Counsel's fees, the FC reports the total settlement value received by claimants is substantially less – $658,713,629.62.[11]  Primary Counsel cannot reconcile these figures.  Tables prepared by the FC and BrownGreer reflecting the components of each proposed valuation, $1.1 billion and $658 million, demonstrate the inconsistencies in the FC's position.[12]  As such, Primary Counsel are entitled to discovery to determine the true value of the benefit conferred upon claimants without resorting to the FC's apparently unreliable and contradicting methodologies for calculating alleged value.  The importance and relevance of this information is unquestionable.  Basic due process requires that Primary Counsel have access to documents and communications referring and relating to both of these calculations to allow Primary Counsel to formulate an educated and informed response to the FC's fee request.

> **D. Memoranda, reports, ledgers, spreadsheets or other documents prepared by or with input from Sandra Duggan regarding, discussing or relating to:**
> 1. **Common benefit time and/or expenses;**
> 2. **Whether a particular activity or expense was for the common benefit;**
> 3. **The allowance or disallowance of common benefit time or expenses; or**
> 4. **The value of benefits conferred upon claimants by either common benefit counsel or individually retained counsel.**

---

[11] Emails disseminated to individual plaintiffs' counsel pursuant to Pretrial Order 28(F) from BrownGreer, the Court appointed settlement administrator, value the total benefit conferred upon claimants by individual plaintiffs' counsel at $658,713,629.62.

[12] A table, reflecting each component of the alleged $1.1 billion class settlement, was filed with the Allocation Motion. Rec. Doc. 20290-6.  These figures cannot be reconciled with a similar table prepared by BrownGreer, the Court appointed settlement administrator.  Ex. 4, Email from J. Woody to E. Hoaglund (June 17, 2016, 14:32 CDT) (reflecting "total benefits issued to homeowners during Settlement Program.").

Sandra Duggan of Levin, Fishbein, Sedran & Berman was intimately involved in scrutinizing the common benefit time and expense submissions in this matter. The Ruling at issue permits Primary Counsel to depose Ms. Duggan, but illogically denies discovery of her work product on which her testimony will be based. There is no doubt that Ms. Duggan reviewed and analyzed the submissions, participated in meetings with counsel who performed common benefit work and prepared reports for the FC related to each firm's common benefit time and expenses submitted and its contribution made. As evidenced by the Appendices filed by the FC with its Omnibus Response,[13] Ms. Duggan prepared an analysis for the FC of each firm's common benefit time and expense submissions. This analysis noted general problems with the reporting firm's time and expense submissions, a summary of the time and expenses submitted and highlighted entries that appeared problematic.

Ms. Duggan played an important role in assessing and valuing the common benefit time for which fees are sought. She has knowledge critical to understanding the value of the common benefit work. Communications and documents related to the FC's determination of what is or is not properly submitted and included as reimbursable common benefit time (pursuant to Pretrial Order Nos. 9, 9A, and 28) are highly relevant to determining the appropriate size of the slice to be awarded to common benefit counsel. This request is clearly within the Court's Order allowing discovery on the "procedures" leading to the FC's recommended fee allocation. *See* Rec. Doc. 20410. Without access to these communications and documents, Primary Counsel is excluded from critical information needed to understand the process and principles the FC used when vetting

---

[13] *See* Rec. Doc. 20417, Appendices A-G filed under seal.

common benefit time and to confirm that the representations made by the FC to support its proposed allocation are consistent with the outcomes of this vetting procedure.  Primary Counsel have the right to independently confirm that the FC appropriately carried out the Court's Orders during this process.

## IV.    DOCUMENTS MUST BE PRODUCED IN NATIVE FORMAT

CMO No. 1 does not provide a format for the production of documents.  The Court has explained that "time is of the essence so that distributions can be expedited."  Pretrial Order No. 28 [Rec. Doc. 17379, ¶ 24).  To expedite the review of the documents produced, Primary Counsel request an order requiring the documents to be produced in the following manner:

a.    Native format of the original.

b.    To the extent the document must be produced as an image, the file produced should maintain the integrity of all source, application, embedded, related file system metadata, and extracted text.

c.    No alteration shall be made to file names or extensions for responsive native electronic files. Electronic mail should include attachments.

d.    Electronically Stored Information ("ESI") shall be produced in word searchable (OCR'd) TIFF files, Bates numbered with the metadata as set forth on Attachment A and in the format set forth on Attachment B (attached to Ex. 1, Letter from Primary Counsel to Special Master on October 7, 2016).

e.    ESI shall be produced on CD ROMs, DVD-Rs, external hard drives, flash drives or uploaded via secured FTP, as the volume of data requires.

Production in this manner will allow Primary Counsel to streamline their review, cull duplicates, sort information, and more easily pinpoint the most relevant documents.

## V.     CONCLUSION

For the foregoing reasons, based on the applicable laws, policies and purposes of MDL actions and an award of common benefit fees and expenses, Primary Counsel respectfully request the Court to expeditiously consider this Objection and thereafter issue an Order revising the above referenced provisions of the Special Master's Ruling and expanding discovery in this fee dispute.

Respectfully submitted:

**FAIRCLOTH, MELTON & SOBEL, LLC**

By:    /s/ *Jimmy R. Faircloth, Jr.*
    Jimmy R. Faircloth, Jr. (Objectors' Co-Liaison Counsel) (LA #20645)
    jfaircloth@fairclothlaw.com
    Brook L. Villa (LA #31988)
    bvilla@fairclothlaw.com
    Franklin "Drew" Hoffmann (LA #35824)
    dhoffmann@fairclothlaw.com
    301 Main Street, Suite 920
    Baton Rouge, LA 70801
    Phone: (225) 343-9535
    Fax: (225) 343-9538

    *Attorneys for Parker Waichman LLP*

**GENTLE, TURNER, SEXTON & HARBISON, LLC**

By:    /s/ *K. Edward Sexton, II*
    K. Edward Sexton, II
    esexton@gentlelaw.com
    501 Riverchase Parkway East, Suite 100
    Hoover, Alabama 35244
    Phone: (205) 716-3000

**BARON & BUDD, P.C.**

By:    /s/ *Russell W. Budd*
    Russell W. Budd (TX #03312400)
    rbudd@baronbudd.com

**LISKA, EXNICIOS & NUNGESSER**

By:    /s/ *Val Patrick Exnicios*
    Val Patrick Exnicios, Esq., (Objectors' Co-Liaison Counsel)
    vpexnicios@exnicioslaw.com
    1515 Poydras Street
    14th Floor, Ste. 1400
    New Orleans, LA. 70112
    Phone: (504) 410-9611
    Fax: (504) 410-9937
    Cell: (504) 495-9666

    *Attorneys for Whitfield Bryson & Mason LLP, Pendley Baudin & Coffin, Rhine Law Firm, and Luckey & Mullins*

**ALLISON GRANT, P.A.**

By:    /s/ *Allison Grant*
    Allison Grant (FL #858330)
    agrant@allisongrantpa.com
    14 SE 4th St
    Boca Raton, FL 33432-6111
    Phone: 561-994-9646
    Fax: 561-431-4627

**ALTERS LAW FIRM, P.A.**

By:    /s/ *Jeremy W. Alters*
    Jeremy W. Alters (FL #111790)
    jeremy@alterslaw.com

S. Ann Saucer (TX #00797885;
LA #21368)
asaucer@baronbudd.com
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
Phone: 214-521-3605
Fax: 214-520-1181

**MCCALLUM, HOAGLUND, COOK & IRBY, LLP**

By: ___/s/ *Eric D. Hoaglund*___
    Eric D. Hoaglund
    ehoaglund@mhcilaw.com
    905 Montgomery Highway, Suite 201
    Vestavia Hills, Alabama 35216
    Phone: (205) 824-7767
    Fax: (205) 824-7768

**GIEGER, LABORDE & LAPEROUSE, LLC**

By: ___/s/ *Victoria E. Emmerling*___
    Andrew A. Braun (LA #3415)
    abraun@glllaw.com
    Victoria E. Emmerling (LA #33117)
    temmerling@glllaw.com
    701 Poydras Street, Suite 4800
    New Orleans, Louisiana 70139-4800
    Phone: (504) 561-0400
    Fax: (504) 561-1011

    *Attorneys for Morris Bart, L.L.C.*

**DOYLE LAW FIRM, PC**

By: ___/s/ *James V. Doyle, Jr.*___
    James V. Doyle, Jr.
    jimmy@doylefirm.com
    2100 Southbridge Pkwy., Suite 650
    Birmingham, AL 35209
    Phone: 205-533-9500
    Fax: 205-414-7528

Justin D. Grosz (FL #984000)
justin@alterslaw.com
Matthew T. Moore, Of Counsel (FL #70034)
matthew@alterslaw.com
1855 Griffin Road, Suite C470
Dania Beach, FL 33004
Phone: (305) 571-8550
Fax: (305) 571-8558

**MILSTEIN, ADELMAN, JACKSON, FAIRCHILD & WADE, LLP**

By: ___/s/ *Mark Milstein*___
    Mark Milstein
    mmilstein@majfw.com
    10250 Constellation Blvd., 14th Floor
    Los Angeles, CA 90067
    Phone: (310) 396-9600
    Fax: (310) 396-9635

**ROBERTS AND DURKEE, LLP**

By: ___/s/ *C. David Durkee*___
    C. David Durkee
    durkee@rdlawnet.com
    2665 South Bayshore Drive, Suite 300
    Coconut Grove, FL 33133
    Phone: (305) 442-1700
    Fax: (305) 442-2559

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Primary Counsel's Objection to Special Master's Ruling Concerning Objectors' October 7, 2016 Request to Modify Special Master Case Management Order No. 1 has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 18th day of November, 2016.

_/s/ Jimmy R. Faircloth, Jr._
OF COUNSEL

16