# EXHIBIT B

                        UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF LOUISIANA


     ***************************************************************

     IN RE:  CHINESE-MANUFACTURED
     DRYWALL PRODUCTS
     LIABILITY LITIGATION

                                CIVIL DOCKET NO. 09-MD-2047 "L"
                                NEW ORLEANS, LOUISIANA
                                THURSDAY, OCTOBER 20, 2016, 9:00 A.M.

     THIS DOCUMENT RELATES TO
     ALL CASES

     ***************************************************************


                  TRANSCRIPT OF MOTION HEARING PROCEEDINGS
                 HEARD BEFORE THE HONORABLE ELDON E. FALLON
                      UNITED STATES DISTRICT JUDGE



     APPEARANCES:



     FOR THE PLAINTIFFS'
     LIAISON COUNSEL:              LEVIN, FISHBEIN, SEDRAN & BERMAN
                                   BY:  ARNOLD LEVIN, ESQUIRE
                                        SANDRA L. DUGGAN, ESQUIRE
                                   510 WALNUT STREET, SUITE 500
                                   PHILADELPHIA, PA  19106


                                   GAINSBURGH BENJAMIN DAVID
                                   MEUNIER AND WARSHAUER
                                   BY:  GERALD E. MEUNIER, ESQUIRE
                                   2800 ENERGY CENTRE
                                   1100 POYDRAS STREET, SUITE 2800
                                   NEW ORLEANS LA  70163




                            *OFFICIAL TRANSCRIPT*

1  APPEARANCES CONTINUED:

2

3  FOR THE KNAUF
   LIAISON COUNSEL:              BAKER DONELSON BEARMAN
4                                CALDWELL & BERKOWITZ
                                 BY:   KERRY J. MILLER, ESQUIRE
5                                      DANIEL S. DYSART, ESQUIRE
                                 201 ST. CHARLES AVENUE, SUITE 3600
6                                NEW ORLEANS LA  70170

7

   FOR THE TAISHAN, BNBM
8  ENTITIES AND CNBM ENTITIES
   LIAISON COUNSEL:              PHELPS DUNBAR
9                                BY:  HARRY ROSENBERG, ESQUIRE
                                 365 CANAL STREET, SUITE 2000
10                               NEW ORLEANS, LA  70130

11

12 ALSO PRESENT:                 SPECIAL MASTER DANIEL BALHOFF
                                 JAKE WOODY, BROWN GREER
13
                                 TAYLOR MARTINO
14                               BY:  RICHARD H. TAYLOR, ESQUIRE
                                 51 SAINT JOSEPH STREET
15                               MOBILE, AL  36601

16
                                 HOLSTON VAUGHAN
17                               BY:  RICHARD H. HOLSTON, ESQUIRE
                                 211 SOUTH CEDAR STREET
18                               MOBILE, AL  36601

19

20 OFFICIAL COURT REPORTER:      CATHY PEPPER, CRR, RMR, CCR
                                 CERTIFIED REALTIME REPORTER
21                               CERTIFIED MERIT REPORTER
                                 500 POYDRAS STREET, ROOM B-275
22                               NEW ORLEANS, LA  70130
                                 (504) 589-7779
23                               Cathy_Pepper@laed.uscourts.gov

24

   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
25 PRODUCED BY COMPUTER.

*OFFICIAL TRANSCRIPT*

1                           **I N D E X**

2

3                                                              <u>PAGE</u>

4

5    MOTIONS.............................................    4

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*OFFICIAL TRANSCRIPT*

**P-R-O-C-E-E-D-I-N-G-S**

THURSDAY, OCTOBER 20, 2016

M O R N I N G   S E S S I O N

(COURT CALLED TO ORDER)

09:05:31     THE COURT:  Let's take up the Motions.

09:05:32         I have two motions before me regarding attorneys'

09:05:37 fees and costs.  Apparently, these two motions have similar

09:05:44 issues.  The attorneys represent claimants, primarily builders,

09:05:53 but also some homeowners.  They indicate that they negotiated a

09:06:00 settlement with Knauf that was separate and apart from the

09:06:06 class action settlement, and Knauf agreed to pay attorneys'

09:06:16 fees in connection -- or they related it to the settlement

09:06:23 agreement in the Knauf case, in the settlement case.  The

09:06:30 question is whether or not this is separate and apart.

09:06:37         In the two cases, Knauf agrees to compensate

09:06:41 plaintiffs' counsel pursuant to the class action settlement

09:06:44 agreement regarding claims against Knauf defendants.

09:06:46         Then the other one, it's in accordance with

09:06:49 Section X of the Remediation Agreement, Knauf agrees to pay

09:06:54 costs and reasonable attorneys' fees in accordance with

09:06:58 Paragraphs 9 and 10 of the Remediation Agreement.

09:07:00         The plaintiffs in this case take the position

09:07:02 that that verbiage indicates that Knauf will pay the

*OFFICIAL TRANSCRIPT*

09:07:12 1    proportion -- that their fees are outside of the agreement;

09:07:16 2    that reference to the agreement only means that Knauf will use

09:07:20 3    the same procedure in paying attorneys' fees.

09:07:28 4              I'll hear from the parties at this point.

09:07:37 5              So I guess the key issue is whether or not this

09:07:39 6    is a standalone agreement or part of the class action

09:07:47 7    settlement.

09:07:48 8              MR. TAYLOR:  Yes.  If it please the Court, I'm

09:07:50 9    Richard Taylor, from Mobile, and I'm here speaking on behalf of

09:07:55 10   the Prichard Housing Authority and our law firm, Taylor,

09:07:58 11   Martino.

09:07:59 12             Just a little background.  You know, the case was

09:08:04 13   filed in the Circuit Court of Mobile County, Alabama, in 2009,

09:08:10 14   vigorously litigated in Mobile Count Circuit Court,

09:08:15 15   depositions, 30(b)(6), motions for summary judgment.

09:08:18 16             Steve Usdin eventually said -- who was also

09:08:24 17   representing a defendant in the MDL, The Mitchell Company --

09:08:28 18   said, I can arrange a mediation.  Knauf, KPT, was a defendant

09:08:34 19   in Mobile County Circuit Court.  The Mitchell Company, Interior

09:08:40 20   Exterior, a lot of the defendants in the MDL were defendants in

09:08:43 21   the Mobile County Circuit Court, and our law firm did 100

09:08:48 22   percent of the litigation work.

09:08:50 23             We came to New Orleans to mediate.  As you know,

09:08:58 24   the first mediation kind of fell through.  We came to

09:09:02 25   Your Honor.  You sent us back to mediation, and we reached a

**OFFICIAL TRANSCRIPT**

09:09:08  1    final agreement in the fall of 2011.

09:09:09  2             As I stand before the Court now, our law firm --

09:09:17  3    well, the settlement was $2.6 million, plus our firm incurred

09:09:22  4    $53,000 in expenses.  As I stand before Your Honor, we have

09:09:28  5    apparently fallen through the cracks in the MDL because

09:09:33  6    BrownGreer has said, you're not on the list of contract

09:09:37  7    attorneys because your case was settled outside the pilot

09:09:41  8    program, so you're not getting paid with the contract

09:09:44  9    attorneys.

09:09:46 10             The PSC and the fee committee said, we're not

09:09:50 11    paying you either.  Knauf says, we're not paying you.  So we

09:09:55 12    have been in this case -- I guess, I was a young 52 years old

09:09:57 13    when I started back in '08 or '09 -- and we're being told,

09:10:01 14    you're not getting paid; there is no source of payment for you

09:10:05 15    in this case.  So we've kind of fallen into a black hole, and

09:10:11 16    we're here for relief from the Court.

09:10:13 17             Now, we've got two grounds for payment of what

09:10:16 18    we're owed.  We're not here asking for a nickel or a dime more

09:10:20 19    than what we've accomplished for our client, but we're here to

09:10:25 20    just simply get paid for the work that we did and for the

09:10:29 21    successful prosecution of this case for the 29 homes in Mobile.

09:10:36 22             Now, when we came -- so our first grounds for

09:10:40 23    being paid is that we take the position that we entered into a

09:10:44 24    standalone settlement agreement with Knauf.  The settlement

09:10:49 25    agreement was reached before there was a class action

*OFFICIAL TRANSCRIPT*

settlement.  It was reached before the pilot program was established.  It was reached in the fall of 2011.  So, in Alabama, contract law applies to the agreement according to the agreement.

So we're just asking the Court, as our first grounds, to just simply look at the four corners of the agreement.  The four corners of the agreement, the settlement agreement says:  Knauf agrees to pay fees and expenses in accordance with Section Roman Numeral X of the remediation agreement.

It also says in accordance with paragraphs 9 and 10, but there are no paragraphs 9 and 10 in the remediation agreement.

So, obviously, we have to look at Section X of the remediation agreement, but the settlement agreement also says that we will not move for payment of attorney fees until 30 days after remediation.  Now, that indicates to me that there was an intent to pay us when our clients' homes were remediated, and they were remediated in 2012.  So according to the settlement agreement, we filed a motion to be paid, and that was denied.

So if you look at the remediation agreement, just the four corners of the contract, it basically says that attorney fees will be determined by separate agreement between the PSC and Knauf.  If the parties cannot agree, the MDL court

*OFFICIAL TRANSCRIPT*

09:12:23 1    will decide.  That's basically what it says.

09:12:26 2             So, we have written Knauf, and we have written

09:12:31 3    the PSC to say, well, have y'all agreed on how much we get

09:12:35 4    paid.  Basically, nothing.  You're not getting paid.  You know,

09:12:40 5    you're in with the contract attorneys.

09:12:42 6             BrownGreer says, oh, no, you're not.  You're not

09:12:46 7    getting paid with the contract attorneys.

09:12:46 8             Again, we were -- so the class action, they say,

09:12:53 9    well, you were in the class action.  There is a provision in

09:12:57 10   the class action settlement that says, basically, this is the

09:13:02 11   attorney fee we're going to pay, 160 million, unless attorney

09:13:07 12   fees and costs have been already separately addressed.

09:13:10 13            Well, we take the position that our fees had been

09:13:15 14   separately addressed in the standalone agreement.  So they want

09:13:21 15   to bring us into the class action fee agreement, but we had a

09:13:29 16   standalone agreement, and so we're definitionally excluded from

09:13:37 17   the class action fee provision.

09:13:38 18            The PSC and Knauf filed responses to our motion.

09:13:44 19   Among the things that they say in their motion is we negotiated

09:13:48 20   to be paid pursuant to the MDL allocation with funds available

09:13:53 21   in the MDL framework.  Well, that's not in the four corners of

09:13:59 22   the agreement.  The agreement doesn't say that.

09:14:01 23            They also say:  Knauf and PHA agreement

09:14:05 24   explicitly provides the fee is out of the negotiated

09:14:10 25   $160 million.  That's not in the four corners of the agreement.

*OFFICIAL TRANSCRIPT*

09:14:13 1  We didn't agree to that. We didn't sign a deal that said those

09:14:18 2  two things.

09:14:20 3        They also say Knauf's settlement agreement with

09:14:22 4  the PSC says fees will not be increased by additional payments.

09:14:27 5  The four corners of the agreement doesn't say that.

09:14:30 6        In their response, they ignore what we have in

09:14:35 7  our brief, that the class action settlement says, you know,

09:14:40 8  these are the attorney fees unless the attorney fees and

09:14:44 9  reasonable costs have already been separately addressed under

09:14:46 10  such settlement. That's us.

09:14:50 11        Again, we fall outside because we had a

09:14:55 12  standalone agreement before there was a class action, before

09:14:58 13  there was a pilot program.

09:14:59 14        The settlement agreement also has a merger

09:15:04 15  clause, you know, where this is the agreement, the four corners

09:15:07 16  of the agreement. So they are making arguments and making

09:15:12 17  statements about what the PSC and Knauf's intent may have

09:15:16 18  been -- or I don't know what discussions they had behind closed

09:15:20 19  doors -- but we're asking the Court to, first of all, just look

09:15:24 20  at the four corners of the agreement. It says Knauf will pay

09:15:28 21  reasonable attorney fees and expenses.

09:15:31 22        So the first thing we ask the Court to do is to

09:15:35 23  just enforce the four corners of the agreement, pay us our

09:15:40 24  one-third attorney fee and our expenses. Asterisk, we did get

09:15:47 25  $21,000 from the -- what do you call it -- stipend payments.

*OFFICIAL TRANSCRIPT*

09:15:55  1    The settlement was, again, two million dollars for remediation

09:15:59  2    costs, about $600,000 in cash.  We didn't take a nickel or a

09:16:04  3    dime in fee.  $2.6 million.

09:16:07  4            Our expenses are $53,000.  We did ask the client

09:16:13  5    to reimburse us for our expenses.  So the client, the Prichard

09:16:18  6    Housing Authority, is due the expenses, less the $21,000 paid

09:16:23  7    under the stipend program.  So my client's out $30,000.

09:16:28  8            So that's the first grounds that we have to get

09:16:33  9    paid in this case is under the standalone settlement agreement.

09:16:37 10        THE COURT:  What's your interpretation of the

09:16:41 11    reference?  You're referring to a standalone agreement, but it

09:16:46 12    refers to Section X -- or it refers to the agreement, the class

09:16:52 13    action settlement agreement.  What's your reference?  Why did

09:16:58 14    it do that?

09:16:59 15        MR. TAYLOR:  Well, it refers to Section X of the

09:17:04 16    remediation agreement, which I say is incorporated into the

09:17:07 17    agreement, but Section X doesn't say anything about the class

09:17:10 18    action.

09:17:10 19        THE COURT:  It says:  Knauf agrees to pay the cost and

09:17:13 20    reasonable attorneys' fees in accordance with paragraph 9 and

09:17:17 21    10 of the remediation agreement, PHA agreement.

09:17:21 22        MR. TAYLOR:  Yeah, there is no 9 and 10 in the

09:17:25 23    agreement.  When you look at the agreement, it's not there.

09:17:28 24        THE COURT:  So you would write that out?

09:17:30 25        MR. TAYLOR:  I think under contract law under Alabama

***OFFICIAL TRANSCRIPT***

09:17:33  1    and any state, if you're referring to something that doesn't

09:17:36  2    exist, you have to write it out.  There is no paragraph 9 or 10

09:17:40  3    anywhere in the remediation agreement.

09:17:46  4         They drafted the contract, but the -- I think the

09:17:49  5    clear intent was for us to get paid.  I don't think the result

09:17:54  6    was supposed to be you get zero.

09:17:58  7         That's the first grounds of our argument, to get

09:18:05  8    paid something, somehow, from somebody.  I don't know if the

09:18:09  9    Court wants us to go to our second argument.

09:18:12 10         THE COURT:  Well, the second argument is that if you

09:18:16 11    are governed by the agreement, then you want to participate in

09:18:21 12    the class action agreement in accordance with the agreement.

09:18:27 13         MR. TAYLOR:  Close.  May I be heard on that?

09:18:31 14         THE COURT:  Sure.

09:18:31 15         MR. TAYLOR:  Well, let me say, you know, the fee

09:18:38 16    committee filed a motion saying we want 60 percent of the fee,

09:18:44 17    we did all of this work, this litigation work.  Then the

09:18:45 18    contract attorneys filed a motion saying, no, we want

09:18:48 19    60 percent because we did all this work.  The Court has seen

09:18:52 20    that.

09:18:52 21         THE COURT:  Right.

09:18:52 22         MR. TAYLOR:  Well, in this particular case, we did both

09:18:54 23    of them.  The PSC did nothing other than attend the mediation

09:19:02 24    for a few hours, and that one even failed.  So we don't think

09:19:07 25    it's equitable or fair for the PSC or anybody to get 40, 50, 60

*OFFICIAL TRANSCRIPT*

09:19:15 1    percent of our fee when we did 100 percent of the work.

09:19:18 2           So whenever we were in the mediation, Mr. Levin

09:19:23 3    showed up with another member of the PSC.  I said, Mr. Levin, I

09:19:31 4    said, you know, it wouldn't be fair for the fee committee or

09:19:37 5    the PSC to tax our case just as they tax all other cases, I

09:19:43 6    said, because y'all didn't do anything.  We did a hundred

09:19:45 7    percent of the work.

09:19:47 8           Mr. Levin said, well, this is what we'll do.  The

09:19:51 9    time that y'all spent in the prosecution of the state case can

09:19:57 10   go as common benefit.  So, he said, reconstruct your time.

09:20:02 11          So I sent a letter to Mr. Levin confirming that.

09:20:07 12   Our office got all the boxes -- I mean, we hadn't kept a single

09:20:10 13   hour, and this is three years after -- you know.  So we spent

09:20:14 14   hours upon hours upon hours reconstructing our time.  We came

09:20:20 15   up with I think it's 590 hours or something, but we only said,

09:20:27 16   truly common benefit fairness is, I think, 292, because we had

09:20:32 17   the same defendants, we had the same -- you know, we put our

09:20:37 18   depositions in the deposition bank.  So to be made whole, and I

09:20:43 19   thought that was a reasonable agreement.  So we spent countless

09:20:48 20   hours, countless people reconstructing that time over several

09:20:52 21   months and submitted it.

09:20:58 22          We have been pretty much told by the fee

09:21:00 23   committee, you're not getting any common benefit.  After doing

09:21:03 24   all of that, and after, you know, trying to do right, you're

09:21:08 25   not getting common benefit, you're not getting contractor fee.

**OFFICIAL TRANSCRIPT**

09:21:11  1           So I just -- you know, I don't mind the PSC or

09:21:18  2      anybody getting paid for what they do.  That's just right.  But

09:21:21  3      it's not right to get paid for what you didn't do.  We did all

09:21:25  4      the work, 100 percent of the litigation work.

09:21:28  5           I'm not opposed to the PSC getting a portion of

09:21:31  6      our fee, but 40, 50, 60 percent, when we did 99.9 percent of

09:21:36  7      the work.  So we don't want to be just thrown into the gumbo

09:21:41  8      with all the other contract attorneys and come out with 40 to

09:21:46  9      50 percent.  That's not fair and equitable, and that's not the

09:21:48 10      agreement I had.

09:21:49 11           THE COURT:  So what I'm hearing you say is that under

09:21:52 12      your second approach, you want to participate both in the class

09:21:54 13      action portion and in the contract portion?

09:21:58 14           MR. TAYLOR:  Well, Your Honor, we just want to get paid

09:22:00 15      for what we did.  I don't care if it's a standalone agreement,

09:22:02 16      or if we're in there with the contract attorneys, and then we

09:22:06 17      get some money from the PSC for common benefit.  It doesn't

09:22:11 18      matter.  We did the work, we ought to be paid, and our expenses

09:22:14 19      ought to be paid, but right now we're getting zero.

09:22:16 20           THE COURT:  I've got it.

09:22:17 21           Let me hear a response.

09:22:18 22           MR. LEVIN:  Your Honor, if we can go out of turn and I

09:22:22 23      state the fee committee's position, it may help with the

09:22:25 24      entire --

09:22:27 25           THE COURT:  Okay.  You're on the second case?

*OFFICIAL TRANSCRIPT*

09:22:28 1          MR. HOLSTON:  We're the second case, right.

09:22:28 2          THE COURT:  Let me hear the first one, and then I'll

09:22:36 3     give you an opportunity to do it.

09:22:36 4          MR. LEVIN:  Your Honor, this occurred at the very

09:22:39 5     beginning of the litigation where there was a pilot program,

09:22:44 6     and it was anticipated that there would be a prolix, complex

09:22:51 7     settlement of both Knauf and what we began to call the

09:22:55 8     low-hanging fruit of Banner, INEX, L&W, and eventually to

09:23:03 9     Global.  So it was all put together.

09:23:09 10         We negotiated the pilot program, the PSC.  We

09:23:14 11    were present at the mediation and partook in the mediation.

09:23:21 12         There is no question that Taylor, Martino should

09:23:27 13    be paid.  It's a question of how they get paid.

09:23:30 14         There is now pending before Mr. Balhoff an issue

09:23:39 15    as to the split between private attorneys and common benefit

09:23:44 16    attorneys.  The way I would look at this, sitting here today

09:23:48 17    and hearing his argument and knowing what Mr. Miller is about

09:23:52 18    to say, is he had 29 homes.  Figure a T-square, like in and

09:24:00 19    out, but this is common benefit and retained attorneys.  His 29

09:24:06 20    homes should be on -- this is my view -- the retained

09:24:12 21    attorneys, which they now call private counsel, so that he gets

09:24:16 22    compensated for those homes.

09:24:18 23         The fact that he got a stipend of 21,000, that's

09:24:22 24    the way we distributed the costs as to them.  21,000, looks

09:24:28 25    like 29 homes, and maybe there is an issue as to five.

*OFFICIAL TRANSCRIPT*

09:24:34  1          As to the common benefit, we've taken our

09:24:38  2     position what it is, but we haven't gotten to an allocation of

09:24:42  3     the common benefit fees.  We had hearings on the common benefit

09:24:48  4     fees.  I believe Mr. Palmer was at the hearing and presented

09:24:55  5     his position.  That hasn't been determined as yet.  That will

09:25:04  6     eventually be determined before Mr. Balhoff, and the positions

09:25:10  7     will be made on that allocation, not the 60/40 or whatever

09:25:14  8     percentage it is, but on what common benefit attorneys.  It's

09:25:19  9     at that time he has made his application as a common benefit

09:25:23 10     attorney.

09:25:23 11          Now, obviously, he was representing the

09:25:27 12     individual homeowners, like everybody else; but, to the extent

09:25:32 13     that that representation conferred a benefit on the overall --

09:25:38 14     whatever that is and however that is quantified -- that will be

09:25:42 15     before Mr. Balhoff.

09:25:46 16          I think that would put things in its perspective

09:25:48 17     here.

09:25:49 18          MR. MILLER:  Thank you, Judge.  Kerry Miller on behalf

09:25:52 19     of Knauf.

09:25:53 20          Judge, I think Mr. Martino's timeline is

09:25:57 21     seriously flawed.  When you put this in context, it's very easy

09:26:00 22     to reach a conclusion as to why, in the Prichard Knauf

09:26:04 23     settlement agreement, the attorney fees had a reference to the

09:26:08 24     pilot program agreement.

09:26:09 25          All you have to do is remember sort of the basic

**OFFICIAL TRANSCRIPT**

09:26:13  1    history of this MDL proceeding, Your Honor.  You became the MDL

09:26:16  2    judge in MDL 2047 in the summer of 2009.  By the spring and

09:26:23  3    summer of 2010, we were already conducting several bellwether

09:26:28  4    trials.  So between your appointment in the summer of 2009, and

09:26:34  5    2010 spring and summer, we were doing discovery.

09:26:37  6            We did the bellwether trials.  We got lots of

09:26:43  7    information on both the scope of the repair and also on the

09:26:48  8    cost of the repair.  We also got information on the universe of

09:26:52  9    claimants as they were coming into this MDL through the profile

09:26:55 10    forms that were utilized.

09:26:57 11            What that allowed us to do, Your Honor, is, by

09:27:01 12    the fall of 2010, have Mr. Balhoff's partner, Mr. Perry,

09:27:08 13    mediate initial settlements involving Knauf, the PSC, and what

09:27:15 14    Arnie termed the low-hanging fruit.

09:27:17 15            So we had discussions.  For lots of reasons, the

09:27:20 16    parties weren't yet prepared to enter into a global agreement,

09:27:23 17    so we entered into a pilot program agreement in late 2010.

09:27:26 18            So the Prichard agreement that Mr. Martino was

09:27:33 19    talking about was entered in October of 2011.  That's the only

09:27:37 20    reason why that Prichard agreement was able to reference to the

09:27:41 21    pilot program agreement because the pilot program agreement

09:27:44 22    came first.

09:27:45 23            When we entered into the pilot program agreement,

09:27:48 24    we decided we weren't going to complicate that agreement with a

09:27:53 25    fee discussion.  We simply said, if we can reach a further,

*OFFICIAL TRANSCRIPT*

09:27:57  1    broader agreement, pilot program fees will be incorporated in

09:28:02  2    the broader agreement fees; and, you know what, if we can't

09:28:05  3    ever reach a broader agreement, we were going to just tee up

09:28:08  4    the fees to you.  That's what the pilot program said about

09:28:11  5    fees.

09:28:11  6            Now, throughout the course of 2011, we're in

09:28:15  7    negotiations on a weekly, if not daily, basis because it was

09:28:20  8    very complicated, putting Knauf with Banner and INEX and Global

09:28:24  9    and the homebuilders all sort of together.

09:28:28 10            You've told the story many times.  You've never

09:28:30 11    had a case involving a thousand defendants.  So that's really

09:28:33 12    what we were focusing on in 2011 is figuring out a way to make

09:28:36 13    that work.

09:28:37 14            Mr. Martino (verbatim) is right.  In the summer,

09:28:41 15    early fall of 2011, as the pilot program was taking shape and

09:28:47 16    was working in the field, as I was having negotiations with

09:28:51 17    Mr. Herman, Mr. Levin, the homebuilders, Banner, the insurers,

09:28:56 18    Mr. Pipes, so on and so forth, Mr. Usdin did come to us, and he

09:29:01 19    said, look, I think we have a good candidate for the pilot

09:29:06 20    program.  It's 29 homes.  They're all self-contained.  I

09:29:10 21    represent the defendant, Mitchell Homes.  By the way, I think

09:29:12 22    they just want the homes fixed.  It looks exactly like what you

09:29:17 23    guys are doing in the pilot program.

09:29:18 24            So we met.  We had yet another mediation.  Those

09:29:21 25    homes were effectively put into the pilot program in October of

*OFFICIAL TRANSCRIPT*

09:29:26  1   2011.  In December of 2011 is when we signed our settlement

09:29:31  2   agreement where we agreed to $160 million in fees.

09:29:35  3             Your Honor will remember the Knauf PSC settlement

09:29:38  4   agreement was a unique agreement in that the universe of class

09:29:41  5   members were every known claimant at the time in the MDL and in

09:29:46  6   state court that we could account for.  That's how we

09:29:48  7   calculated the fee amount.

09:29:50  8             It's important to note, Your Honor, that

09:29:54  9   Prichard, the claimant in this case, never opted out of our

09:29:59 10   settlement agreement.  So when you look back at the timeline,

09:30:01 11   you have the pilot program agreement in December of 2010;

09:30:05 12   Prichard in October of 2011, which relates back to the pilot

09:30:09 13   program with respect to fees and costs; and then, in December

09:30:16 14   of 2011, Knauf and the PSC reach a class action settlement

09:30:18 15   agreement of all known claimants, and included in that is an

09:30:22 16   agreement for Knauf to pay up to $160 million in fees and costs

09:30:25 17   for all known claimants as of that time.

09:30:28 18             After the settlement agreement became final and

09:30:34 19   Your Honor approved the full $160 million, Knauf promptly

09:30:38 20   deposited that amount of money in an escrow account, where it

09:30:42 21   sat for over three years now.  We then reached a separate

09:30:46 22   agreement in 2014 on the later filed homes.  We calculated the

09:30:49 23   fees on that.  That amount of money was put in the escrow

09:30:52 24   agreement.  Now Mr. Balhoff is doing his work to allocate fees

09:30:58 25   between common benefit and private counsel.

*OFFICIAL TRANSCRIPT*

09:30:59 1     Your Honor, if these Prichard homes weren't to be

09:31:03 2 included in the $160 million fee of the Knauf PSC agreement and

09:31:07 3 of the broader agreements, there would have been no reference

09:31:09 4 in the Knauf Prichard agreement at all.

09:31:12 5     THE COURT:  He says that you referenced 9 and 10, and

09:31:15 6 there is no such paragraph.

09:31:17 7     MR. MILLER:  I'm not sure what he's talking about,

09:31:19 8 Your Honor, because if you look at page 3 of my response,

09:31:22 9 that's Record Doc 20397, what it says is the attorney fees

09:31:29 10 section of the Knauf PHA agreement provides for Knauf's payment

09:31:34 11 of attorneys' fees, open quotes, in accordance with Section X,

09:31:38 12 Roman X, of the pilot program agreement.

09:31:42 13     In Section X of the pilot program agreement,

09:31:46 14 Roman section X, in turn provides that attorney fees, open

09:31:50 15 quotes, will be determined by a separate agreement between the

09:31:54 16 PSC and the Knauf entities.

09:31:55 17     The separate agreement was the class action

09:31:58 18 settlement agreement that came 60 days later that we were

09:32:01 19 negotiating throughout 2011.

09:32:03 20     So Roman X of the pilot program agreement is the

09:32:07 21 operative term for attorney fees.  The PHA Knauf agreement

09:32:12 22 kicks attorney fees over to Roman X of the pilot program, which

09:32:16 23 then says they are all going to be adjudicated as part of the

09:32:20 24 class action settlement when that agreement is reached.  That's

09:32:22 25 the way it works.

*OFFICIAL TRANSCRIPT*

09:32:27 1        THE COURT:  Okay.

09:32:28 2        MR. TAYLOR:  Your Honor, may I respond?

09:32:29 3        THE COURT:  Sure.

09:32:30 4        MR. TAYLOR:  Here is the remediation agreement.  There
09:32:34 5   is no Paragraph 9 and 10.  It's just not there.

09:32:36 6            In, you know, the history of the Chinese drywall
09:32:40 7   litigation, what they intended -- or, you know, when the class
09:32:46 8   action was settled months or years later, they intended us to
09:32:50 9   be there.

09:32:50 10           Again, Your Honor, we ask that you just look at
09:32:55 11  the four corners of the agreement.  This reminds me of the BP
09:32:58 12  class action settlement when, after BP reached it, they were
09:33:01 13  going, well, we didn't mean for farmers in the Delta to get
09:33:05 14  paid.

09:33:05 15       THE COURT:  How do you respond to the fact that you're
09:33:10 16  a member of the class, though, and this is a class action
09:33:11 17  settlement agreement?

09:33:12 18           You're a member of the class because you didn't
09:33:14 19  opt out.  You knew there was a notice of class certification,
09:33:23 20  and you didn't opt out.  You didn't say, I'm out of there
09:33:26 21  because I've already settled.

09:33:30 22       MR. TAYLOR:  Judge, the class action has a provision
09:33:32 23  for attorney fees, and we cited it in our brief.  It says,
09:33:36 24  basically, this is the attorney fees, 160,000.  It says --

09:33:41 25       THE COURT:  Million.

**OFFICIAL TRANSCRIPT**

09:33:42 1     MR. TAYLOR:  -- in the definition:  Unless attorney

09:33:44 2 fees and costs have already been separately addressed.

09:33:47 3     Well, when that was -- we had already had a

09:33:50 4 signed deal.  We had a contract with Knauf.  The PSC is not a

09:33:58 5 member, not even a party to the settlement agreement.  It's

09:34:01 6 between Knauf and the PHA.  By definition, our settlement is

09:34:07 7 excluded because we had already had a separately addressed,

09:34:12 8 written, signed, agreed-upon contract.

09:34:16 9     THE COURT:  You have a contract with Knauf to pay you a

09:34:18 10 third?

09:34:20 11     MR. TAYLOR:  I've got a contract with Knauf that says

09:34:22 12 they will pay a reasonable attorney fee.

09:34:25 13     THE COURT:  Well, what's reasonable?

09:34:27 14     MR. TAYLOR:  Well, in this case, I filed an affidavit.

09:34:31 15     THE COURT:  But do I determine what's reasonable?

09:34:33 16     MR. TAYLOR:  Yes.  Yes, sir.  Because the agreement

09:34:36 17 that we entered into with Knauf says the PSC and Knauf will

09:34:41 18 decide, and then, if we can't decide, then the MDL court will

09:34:47 19 decide.

09:34:47 20     So, yes, Your Honor, this Court does decide what

09:34:51 21 is a reasonable fee.  That's why we're here, because the

09:34:54 22 agreement, the contract we had with Knauf, says that we can

09:34:58 23 file a motion with this Court 30 days after remediation.

09:35:04 24     THE COURT:  I understand your argument.  I agree with

09:35:05 25 you in the sense that you are entitled to some fee.  There is

*OFFICIAL TRANSCRIPT*

09:35:08 1    no question about that.  You did work, you're entitled to a

09:35:11 2    fee.  The question is how you get the fee.

09:35:14 3                So let me take your comments under advisement,

09:35:17 4    and I'll come out with an opinion on it.

09:35:19 5         MR. TAYLOR:  Your Honor, I've got one more thing.  I'm

09:35:22 6    not sure what Mr. Levin was saying, is that we are entitled

09:35:25 7    to --

09:35:25 8         THE COURT:  Well, he said you're entitled to make a

09:35:27 9    claim, both in the contract attorney aspect and also the common

09:35:34 10   benefit aspect.

09:35:36 11        MR. TAYLOR:  We did that.

09:35:39 12        THE COURT:  What's happened is, is that Mr. Balhoff,

09:35:48 13   Special Master, is in the process of recommending to me what

09:35:55 14   the break-up should be, what the percentage should be for

09:36:01 15   contract attorneys, percentage should be for common benefit

09:36:05 16   attorneys.

09:36:06 17                What Mr. Levin says is that you have an

09:36:10 18   opportunity to file for both, both the contract attorney, which

09:36:14 19   you are, and a common benefit attorney, which you say you are,

09:36:18 20   so.

09:36:20 21        MR. TAYLOR:  Well, I mean, we've filed for common

09:36:22 22   benefit.  As far as I know, we've been told no.

09:36:24 23        THE COURT:  Well, you haven't been told no because --

09:36:29 24   you can file it, but it's going to be in the process is what --

09:36:35 25        MR. TAYLOR:  So Mr. Balhoff will decide.  I understand.

*OFFICIAL TRANSCRIPT*

09:36:39 1        THE COURT:  In these cases, what I try to do is get
09:36:41 2    some process.  I create a fee allocation committee that gives
09:36:48 3    an opportunity to the parties to make a claim and explain the
09:36:53 4    support of their claim.  They give me a recommendation.
09:36:56 5            Then I appointment Mr. Balhoff to look at the
09:37:00 6    situation and also give me a recommendation.
09:37:03 7            I've got the insiders, and I've got a neutral.
09:37:07 8    When I get that, I get all the material together, and then I'll
09:37:10 9    make the decision as to how it's divided and who gets what.
09:37:14 10       MR. TAYLOR:  So Mr. Balhoff will decide if we get --
09:37:17 11       THE COURT:  Well, no, he won't decide.  I'll decide.
09:37:19 12       MR. TAYLOR:  Yeah.  He'll make a recommendation --
09:37:21 13       THE COURT:  He'll make a recommendation to me.
09:37:23 14       MR. TAYLOR:  -- whether we get common benefit money.
09:37:25 15       THE COURT:  Yes.
09:37:26 16       MR. TAYLOR:  I understand.  Thank you.
09:37:28 17       MR. HOLSTON:  Your Honor, Rick Holston, from Mobile,
09:37:32 18   Alabama.  I represent seven homeowners in the same subdivision.
09:37:36 19   I appreciate your hearing our argument today.
09:37:38 20           I'm going to try to be very brief because a lot
09:37:41 21   of what Mr. Taylor has said applies to my case, but there are a
09:37:43 22   couple of distinctions and a couple of things that may be
09:37:45 23   different in my situation.
09:37:46 24           To remind you of who we are, this was 36 homes in
09:37:49 25   this subdivision.  It was a build ownership program.  Seven of

*OFFICIAL TRANSCRIPT*

09:37:54   1    the homes had been sold by the housing authority to my seven

09:37:58   2    clients.

09:37:58   3           So I represented those seven.  Mr. Taylor and his

09:38:01   4    firm represented the PHA that owned the remaining 29 homes.  We

09:38:06   5    actually sued them.  So we were involved in this extensive

09:38:10   6    litigation in Mobile, where we took depositions, a 25-page

09:38:14   7    docket sheet.  A lot of time was spent over there.  Then we

09:38:17   8    were stayed.  We were stayed by your order.

09:38:19   9           So we came over here.  I don't know if you

09:38:22  10    remember or not -- you probably don't, but it's the only time

09:38:25  11    I've seen you or met you before -- we came over here to ask you

09:38:28  12    to relieve us from the stay just to mediate the case, just to

09:38:33  13    mediate our case.

09:38:34  14           You granted us that permission.  We mediated the

09:38:37  15    case under our state court judge.  He appointed a mediator in

09:38:41  16    Mobile.  It was not anybody over here.  We had been to the

09:38:43  17    mediation over here, but did not participate in it, with

09:38:46  18    Mr. Perry, Mr. Balhoff's partner.

09:38:51  19           He got it settled.  Ultimately, it took about

09:38:52  20    three or four months after that, but in early 2011, we got the

09:38:57  21    case settled through a Mobile County mediation, completely

09:39:00  22    separate and distinct from over here.  So everything we did was

09:39:03  23    in Mobile County.

09:39:04  24           Now, when I sort of went through that with

09:39:10  25    Mr. Balhoff, we also have a settlement agreement that says

*OFFICIAL TRANSCRIPT*

09:39:14  1    that -- very much like what Mr. Taylor's says -- that pursuant

09:39:21  2    to Section XIV of the settlement agreement.  But it's

09:39:24  3    important, Judge, that after it says pursuant to Section XIV

09:39:28  4    for your attorneys' fees, you'll be paid consistent with what

09:39:32  5    lawyers in the MDL are paid for similar claims.  So we're not

09:39:37  6    in the MDL.

09:39:38  7          But ours goes one step further.  In the next

09:39:43  8    sentence, it says:  Plaintiff and Knauf agree that Plaintiff's

09:39:48  9    participation in Section XIV of the class settlement agreement

09:39:52 10    regarding determination of attorneys' fees and costs does not

09:39:58 11    imply Plaintiff's submission to jurisdiction of the

09:40:02 12    United States District Court for the Eastern District of

09:40:04 13    Louisiana for the reserved claims, which is what we were

09:40:08 14    holding back.

09:40:10 15          So our agreement expressly says we're not in the

09:40:12 16    MDL.  We are not participating in the MDL.  We're settling this

09:40:15 17    case separately.

09:40:17 18          Most importantly, what Mr. Miller said a few

09:40:20 19    moments ago, we opted out.  Our seven clients, actually all the

09:40:23 20    family members in our clients' homes, opted out of the MDL.  At

09:40:28 21    the time we settled this case, we were not in the MDL, and we

09:40:31 22    had opted out of the MDL and participation in the class.

09:40:35 23          So, that's where we are.  I explained all this to

09:40:38 24    Mr. Balhoff a couple of meetings ago when we were talking about

09:40:42 25    this.  He said, well, why are you here?  That was a good

09:40:45 1   question, why are we over here on our attorneys' fees when we

09:40:48 2   settled separately.

09:40:49 3          The easy answer or the simple answer to that is

09:40:51 4   that because our agreement says that the state court has the

09:40:56 5   right to enforce our agreement.  Any motions to enforce a

09:41:00 6   settlement agreement or get it done goes to state court, except

09:41:03 7   for attorneys' fees.  They wanted you to decide attorneys'

09:41:05 8   fees.  So that's why we're here to file it before you.

09:41:09 9          But the real question is, and what's really

09:41:12 10  interesting, is why is that provision in there?  It's very

09:41:15 11  clear.  I dealt with not Mr. Miller directly, but other lawyers

09:41:18 12  in his law firm, and my partner dealt with them.  The reason

09:41:22 13  that they didn't want to go ahead and pay us attorneys' fees

09:41:25 14  back in 2011 and '12 when we settled this case was because they

09:41:29 15  didn't want to set a precedent because attorneys' fees had not

09:41:33 16  been set in the MDL, weren't even close to that at this point.

09:41:35 17         So they came to us, and they said, look, we don't

09:41:38 18  want to set a precedent.  We don't want to pay you a third, or

09:41:41 19  we don't want to pay you 35 percent, or whatever those fees

09:41:44 20  are, and then later have that held against us or used in the

09:41:47 21  federal court proceedings to try to set attorneys' fees at that

09:41:50 22  amount.  That made sense to us.

09:41:53 23         Our problem was we had seven families that were

09:41:56 24  still living in their homes.  Now, unlike a lot of the homes,

09:41:59 25  and unlike Richard's clients, they didn't have anybody living

*OFFICIAL TRANSCRIPT*

09:42:02  1    in those homes, but our families were there.  We had to get

09:42:05  2    those cases remediated.

09:42:07  3           So to get that done, we agreed that, okay, we'll

09:42:10  4    wait, we'll get paid consistent with what lawyers in the MDL

09:42:13  5    get paid.  We'll the wait and see how that goes.  We'll go

09:42:16  6    ahead and get our clients' homes remediated.

09:42:18  7           We did.  Our total remediation and relocation

09:42:23  8    expenses in this case are just under $685,000, so we're talking

09:42:28  9    about fees on that 685,000.  We do not have a common fund

09:42:31 10    claim.  We're not trying to claim common fund benefits.  We

09:42:34 11    just want to be paid pursuant to this agreement that we had

09:42:37 12    with Knauf.

09:42:37 13           Judge, a couple of more things.  As Richard said,

09:42:41 14    if you look at the four corners of this agreement, it says

09:42:44 15    Knauf will pay us.  It says they will pay us consistent with

09:42:48 16    what other lawyers receive in the MDL.

09:42:50 17           Now, I guess my point would be is that if they

09:42:55 18    had wanted us to be paid from the pot in the MDL, from MDL

09:43:02 19    resources, that could easily be in the agreement.  It could be

09:43:05 20    in the contract.  All that would take is a couple of sentences

09:43:08 21    saying that we're not going to pay you any more.  We're not

09:43:11 22    going to pay you outside.  You get paid from the MDL, just like

09:43:15 23    you were an MDL lawyer.

09:43:17 24           But it doesn't say that.  It doesn't say that

09:43:18 25    because that's not what the agreement was.  The agreement was

*OFFICIAL TRANSCRIPT*

09:43:21  1    they would pay us consistent with what lawyers in the MDL.

09:43:25  2    There is just no way to interpret that other than we're outside

09:43:28  3    the MDL, but we're going to pay you like you were -- the

09:43:31  4    equivalent or a consistent amount with what's in the MDL.

09:43:35  5            So there is no provision that we are paid from

09:43:37  6    the MDL.  There is no provision that the agreement doesn't mean

09:43:42  7    that there is going to be additional payments.  They want to

09:43:46  8    imply new terms into this contract that aren't there.  That's

09:43:50  9    really what it comes down to.

09:43:52 10            They have sort of looked at this later and said,

09:43:53 11    wait a minute, we don't want to pay this extra amount, so they

09:43:56 12    are trying to imply new terms into this agreement, and those

09:44:00 13    terms just aren't there, Judge.  The four corners of the

09:44:02 14    document clearly results in them owing us this outside the

09:44:06 15    settlement.

09:44:07 16            But the last point I want to make, Judge, is that

09:44:08 17    we should not be compensated by the MDL.  We weren't in the

09:44:12 18    MDL.  When we opted out at the time of the settlement -- and in

09:44:17 19    the interest of complete candor, we opted back in later to make

09:44:21 20    other loss claims, only to make those other loss claims, which

09:44:26 21    were ultimately denied.  That's reserved expressly in our

09:44:29 22    settlement agreement, that we can choose to do that later, to

09:44:32 23    make the other loss claims.

09:44:34 24            But at the time we settled it, we were opted out,

09:44:36 25    and we did not opt in until after the settlement agreement had

**OFFICIAL TRANSCRIPT**

been reached.  So they can't say that we were in the class at the time we reached this agreement.  The opt-in later was for different purposes completely and actually carved out expressly from the agreement.

But, Judge, we shouldn't be paid from the MDL because we weren't MDL lawyers.  I am an MDL lawyer on some other cases, some other homes that are unrelated to these.  As an MDL lawyer, I would be upset if Knauf is going around settling cases around the country promising MDL resources to pay the lawyers in those cases.

Our settlement agreement was so different that we used a different contractor, and the state court judge retained the right to enforce our settlement.  If they're making settlements and using the MDL resources to do that, they need to go check with somebody first.

But you weren't consulted on this settlement agreement.  The PSC was never consulted on this settlement agreement.  They didn't sign off on it.  This is purely an agreement between my clients and my law firm and Knauf.  That's it.  Those are the only are parties to the fee dispute that we're here on today.  The other parties settled out as well.  But those are the only parties to it.

So for them to come in now and say, well, we need to use the MDL money to pay you guys this settlement that we reached outside and we didn't consult with anybody on and we

*OFFICIAL TRANSCRIPT*

09:45:54  1   didn't meet with anybody on -- nice, guys, great guys.  I've
09:45:59  2   never met anybody on the plaintiffs' fee committee -- or the
09:46:02  3   Plaintiffs' Steering Committee.  I've never had an e-mail
09:46:05  4   exchange or a telephone call that I remember.  We've had no
09:46:07  5   dealings with them at all.  They didn't come to our mediation.
09:46:09  6   They didn't participate in it at all.  We settled our case
09:46:13  7   separately and distinctly from the MDL.  There is just no
09:46:17  8   question about that, and the agreement confirms that.
09:46:22  9          So we're just asking Your Honor to direct that
09:46:25 10   they go ahead and pay us.  I do have a breakdown, Judge.  This
09:46:29 11   came from their numbers.  If you look at the total amount of
09:46:33 12   remediation and the total amount of Knauf's contribution for
09:46:37 13   attorneys' fees is 29.3 percent.  That's the amount of
09:46:40 14   attorneys' fees that are being paid to plaintiffs' counsel in
09:46:42 15   the MDL.  So for us to be paid consistent with what lawyers in
09:46:46 16   the MDL are receiving, we should get 29.3 percent.
09:46:51 17          Plus, we had seven homes.  I think there is a
09:46:57 18   $1,000 stipend for each of those homes.  Now, we actually
09:47:00 19   expended $29,000 in expenses in the litigation that we
09:47:04 20   conducted in Mobile, but I think it's a stipend of a thousand
09:47:07 21   dollars.  We were under the same agreement.  We agree to be
09:47:10 22   compensated consistent with what the MDL lawyers are getting.
09:47:12 23   So the 29.3 percent of the $685,000, plus 1,000 stipend for
09:47:20 24   each house.  That's what we're asking.
09:47:22 25          THE COURT:  Let me hear from you.  He says he's

*OFFICIAL TRANSCRIPT*

09:47:25  1    different because he opted out.  How do you deal with that?

09:47:27  2         MR. MILLER:  Your Honor, I don't know how a lawyer

09:47:30  3    could come up here with a straight face and tell you that

09:47:32  4    because after he said, we are different because we opted out,

09:47:35  5    ten minutes later he said, but, in true candor, we opted back

09:47:39  6    in.  But that's not significant.

09:47:40  7              Your Honor will recall that we had a lot of

09:47:44  8    initial opt-outs.  We worked long and hard on getting opt-outs

09:47:49  9    to opt back in.  But once you opted back in, you were an

09:47:54 10    opt-in, and you were an opt-in for all purposes of the

09:47:56 11    settlement.

09:47:57 12              I recall Your Honor getting on a plane and going

09:48:00 13    to Miami, Florida, to speak with a group of opt-outs, with

09:48:05 14    Mr. Levin and others and lawyers down in Florida.  The whole

09:48:08 15    process there was to talk about the settlement and get people

09:48:10 16    to opt back in.

09:48:11 17              Every single one of those people in that big

09:48:14 18    conference room in Miami who opted back in got their fees paid

09:48:18 19    out of the MDL settlement.  That was the deal.  That was the

09:48:22 20    quid pro quo.

09:48:22 21              What I can't figure out, what's different, the

09:48:26 22    only difference between Prichard and Little is that Prichard

09:48:31 23    was settled in October of 2011, which was after the pilot

09:48:37 24    program agreement, but two months before the class action

09:48:40 25    settlement agreement.  That's why the Prichard Knauf settlement

09:48:43  1    agreement referenced Paragraph X, Roman numeral X, of the pilot

09:48:48  2    program for attorneys' fees.

09:48:49  3            Well, what does the Little settlement reference

09:48:53  4    for attorneys' fees?  Paragraph 14 of the PSC Knauf settlement

09:48:57  5    agreement as the operative paragraph for attorney fees.

09:49:02  6            The reason why it referenced paragraph 14 was

09:49:06  7    because when Knauf settled with Little, it was July of 2012.

09:49:10  8    We had a class action settlement agreement to reference.  At

09:49:13  9    that point in time, what we were trying to do was to capture

09:49:17 10    all of these claimants into the remediation program, and that's

09:49:22 11    what we did.

09:49:24 12            There were 36 homes in this public housing

09:49:26 13    project in Mobile.  29 were owned by the Housing Authority.

09:49:30 14    That's Mr. Martino's (verbatim) client.  7 were owned by

09:49:34 15    private individuals.  That's immediate prior counsel's clients.

09:49:39 16            The 29 homes were fixed by the time we settled

09:49:44 17    with them.  We were trying to capture the rest of the homes.

09:49:47 18    People saw the fix.  The remediation program was gaining

09:49:52 19    momentum.  But the deal was, if you had opted out, when you opt

09:49:55 20    back in, you opt back in.

09:49:56 21            So, yeah, now they can make another loss claim

09:49:59 22    against BrownGreer, the other fund in Knauf's settlement, the

09:50:01 23    other pot that we've talked about throughout the course of this

09:50:03 24    mediation.

09:50:03 25            But to come here and tell the Court that we're

*OFFICIAL TRANSCRIPT*

09:50:08  1   different because we opted out is a lie to the Court because,

09:50:12  2   for all intents and purposes, they opted back in.  They opted

09:50:15  3   back in to get the remediation relief to file another loss

09:50:20  4   claim with BrownGreer and to participate in the fee agreement

09:50:23  5   we reached with the PSC.

09:50:28  6            THE COURT:  Anything from the PSC?

09:50:29  7            MR. LEVIN:  I don't know what to say.  This really is

09:50:34  8   between Mr. Currie and your decision.  Your Honor, whatever you

09:50:41  9   decide.

09:50:41 10            If these homes, either the Taylor, Martino homes

09:50:47 11   or these seven homes, are somehow not on the BrownGreer list of

09:50:53 12   homes for compensation, and Your Honor rules that that's where

09:50:57 13   they belong, we will make sure that BrownGreer readjusts those

09:51:04 14   particular schedules so that they are in the same place as

09:51:08 15   every other homeowner.

09:51:11 16            THE COURT:  All right.  Do you have any response?  I

09:51:15 17   want to give you an opportunity if you have any.

09:51:17 18            MR. HOLSTON:  Your Honor, I just want to say that I'm a

09:51:20 19   little offended by being called a liar in open court.  The

09:51:23 20   opt-outs were in existence at the time we entered into the

09:51:28 21   agreement.  We were not in the MDL.  The only reason we opted

09:51:32 22   back in later was for the other loss claims.

09:51:34 23            If you read our agreement, there is a whole

09:51:37 24   paragraph that talks about that.  It talks about how the other

09:51:40 25   loss claims don't make us under the jurisdiction of the MDL for

**_OFFICIAL TRANSCRIPT_**

09:51:43  1   purposes of the fee determination.  That's all I want to add,

09:51:46  2   Your Honor.

09:51:46  3          THE COURT:  I understand.  I'll be coming out with my

09:51:51  4   ruling very quick, so you all have the opportunity to do what

09:51:52  5   you need to do.

09:51:53  6              Thank you very much.  Court will stand in recess.

          7          THE DEPUTY CLERK:  All rise.

          8          (WHEREUPON, at 9:51 a.m., the Court was in recess.)

          9                         *    *    *

         10

         11                   REPORTER'S CERTIFICATE

         12

         13          I, Cathy Pepper, Certified Realtime Reporter, Registered

         14   Merit Reporter, Certified Court Reporter in and for the State

         15   of Louisiana, Official Court Reporter for the United States

         16   District Court, Eastern District of Louisiana, do hereby

         17   certify that the foregoing is a true and correct transcript to

         18   the best of my ability and understanding from the record of the

         19   proceedings in the above-entitled and numbered matter.

         20

         21                              *s/Cathy Pepper*
                                         _____

         22                              Cathy Pepper, CRR, RMR, CCR
                                         Certified Realtime Reporter
         23                              Registered Merit Reporter
                                         Official Court Reporter
         24                              United States District Court
                                         Cathy_Pepper@laed.uscourts.gov
         25

                              *OFFICIAL TRANSCRIPT*

## $

**$1,000** [1] - 30:18
**$160** [5] - 8:25, 18:2, 18:16, 18:19, 19:2
**$21,000** [2] - 9:25, 10:6
**$29,000** [1] - 30:19
**$30,000** [1] - 10:7
**$53,000** [2] - 6:4, 10:4
**$600,000** [1] - 10:2
**$685,000** [2] - 27:8, 30:23

## '

**'08** [1] - 6:13
**'09** [1] - 6:13
**'12** [1] - 26:14

## 0

**09-MD-2047** [1] - 1:6

## 1

**1,000** [1] - 30:23
**10** [8] - 4:23, 7:12, 10:21, 10:22, 11:2, 19:5, 20:5
**100** [3] - 5:21, 12:1, 13:4
**1100** [1] - 1:23
**14** [2] - 32:4, 32:6
**160** [1] - 8:11
**160,000** [1] - 20:24
**19106** [1] - 1:19

## 2

**2.6** [2] - 6:3, 10:3
**20** [2] - 1:7, 4:2
**2000** [1] - 2:9
**2009** [3] - 5:13, 16:2, 16:4
**201** [1] - 2:5
**2010** [5] - 16:3, 16:5, 16:12, 16:17, 18:11
**2011** [14] - 6:1, 7:2, 16:19, 17:6, 17:12, 17:15, 18:1, 18:12, 18:14, 19:19, 24:20, 26:14, 31:23
**2012** [2] - 7:19, 32:7
**2014** [1] - 18:22
**2016** [2] - 1:7, 4:2

**20397** [1] - 19:9
**2047** [1] - 16:2
**21,000** [2] - 14:23, 14:24
**211** [1] - 2:17
**25-page** [1] - 24:6
**2800** [2] - 1:22, 1:23
**29** [8] - 6:21, 14:18, 14:19, 14:25, 17:20, 24:4, 32:13, 32:16
**29.3** [3] - 30:13, 30:16, 30:23
**292** [1] - 12:16

## 3

**3** [1] - 19:8
**30** [2] - 7:17, 21:23
**30(b)(6** [1] - 5:15
**35** [1] - 26:19
**36** [2] - 23:24, 32:12
**3600** [1] - 2:5
**365** [1] - 2:9
**36601** [2] - 2:15, 2:18

## 4

**4** [1] - 3:5
**40** [3] - 11:25, 13:6, 13:8

## 5

**50** [3] - 11:25, 13:6, 13:9
**500** [2] - 1:19, 2:21
**504** [1] - 2:22
**51** [1] - 2:14
**510** [1] - 1:19
**52** [1] - 6:12
**589-7779** [1] - 2:22
**590** [1] - 12:15

## 6

**60** [5] - 11:16, 11:19, 11:25, 13:6, 19:18
**60/40** [1] - 15:7
**685,000** [1] - 27:9

## 7

**7** [1] - 32:14
**70130** [2] - 2:10, 2:22
**70163** [1] - 1:23
**70170** [1] - 2:6

## 9

**9** [8] - 4:23, 7:11, 7:12, 10:20, 10:22, 11:2, 19:5, 20:5
**99.9** [1] - 13:6
**9:00** [1] - 1:7
**9:51** [1] - 34:8

## A

**A.M** [1] - 1:7
**a.m** [1] - 34:8
**ability** [1] - 34:18
**able** [1] - 16:20
**above-entitled** [1] - 34:19
**accomplished** [1] - 6:19
**accordance** [7] - 4:20, 4:22, 7:9, 7:11, 10:20, 11:12, 19:11
**according** [2] - 7:3, 7:19
**account** [2] - 18:6, 18:20
**action** [24] - 4:13, 4:18, 5:6, 6:25, 8:8, 8:9, 8:10, 8:15, 8:17, 9:7, 9:12, 10:13, 10:18, 11:12, 13:13, 18:14, 19:17, 19:24, 20:8, 20:12, 20:16, 20:22, 31:24, 32:8
**add** [1] - 34:1
**additional** [2] - 9:4, 28:7
**addressed** [5] - 8:12, 8:14, 9:9, 21:2, 21:7
**adjudicated** [1] - 19:23
**advisement** [1] - 22:3
**affidavit** [1] - 21:14
**ago** [2] - 25:19, 25:24
**agree** [5] - 7:25, 9:1, 21:24, 25:8, 30:21
**agreed** [5] - 4:13, 8:3, 18:2, 21:8, 27:3
**agreed-upon** [1] - 21:8
**Agreement** [2] - 4:21, 4:23
**agreement** [124] - 4:15, 4:19, 5:1, 5:2, 5:6, 6:1, 6:24, 6:25, 7:3, 7:4, 7:7, 7:8, 7:10, 7:13, 7:15, 7:20, 7:22, 7:24,

8:14, 8:15, 8:16, 8:22, 8:23, 8:25, 9:3, 9:5, 9:12, 9:14, 9:15, 9:16, 9:20, 9:23, 10:9, 10:11, 10:12, 10:13, 10:16, 10:17, 10:21, 10:23, 11:3, 11:11, 11:12, 12:19, 13:10, 13:15, 15:23, 15:24, 16:16, 16:17, 16:18, 16:20, 16:21, 16:23, 16:24, 17:1, 17:2, 17:3, 18:2, 18:4, 18:10, 18:11, 18:15, 18:16, 18:18, 18:22, 18:24, 19:2, 19:4, 19:10, 19:12, 19:13, 19:15, 19:17, 19:18, 19:20, 19:21, 19:24, 20:4, 20:11, 20:17, 21:5, 21:16, 21:22, 24:25, 25:2, 25:9, 25:15, 26:4, 26:5, 26:6, 27:11, 27:14, 27:19, 27:25, 28:6, 28:12, 28:22, 28:25, 29:2, 29:4, 29:11, 29:17, 29:18, 29:19, 30:8, 30:21, 31:24, 31:25, 32:1, 32:5, 32:8, 33:4, 33:21, 33:23
**agreements** [1] - 19:3
**agrees** [4] - 4:17, 4:21, 7:8, 10:19
**ahead** [2] - 26:13, 27:6, 30:10
**AL** [2] - 2:15, 2:18
**Alabama** [4] - 5:13, 7:3, 10:25, 23:18
**ALL** [1] - 1:9
**allocate** [1] - 18:24
**allocation** [4] - 8:20, 15:2, 15:7, 23:2
**allowed** [1] - 16:11
**ALSO** [1] - 2:12
**amount** [9] - 18:7, 18:20, 18:23, 26:22, 28:4, 28:11, 30:11, 30:12, 30:13
**AND** [2] - 1:21, 2:8
**answer** [2] - 26:3
**anticipated** [1] - 14:6
**apart** [2] - 4:12, 4:16
**APPEARANCES** [2] - 1:15, 2:1
**application** [1] - 15:9
**applies** [2] - 7:3, 23:21
**appointed** [1] - 24:15
**appointment** [2] -

16:4, 23:5
**appreciate** [1] - 23:19
**approach** [1] - 13:12
**approved** [1] - 18:19
**argument** [6] - 11:7, 11:9, 11:10, 14:17, 21:24, 23:19
**arguments** [1] - 9:16
**Arnie** [1] - 16:14
**ARNOLD** [1] - 1:18
**arrange** [1] - 5:18
**aspect** [2] - 22:9, 22:10
**asterisk** [1] - 9:24
**attend** [1] - 11:23
**attorney** [22] - 7:16, 7:24, 8:11, 9:8, 9:21, 9:24, 15:10, 15:23, 19:9, 19:14, 19:21, 19:22, 20:23, 20:24, 21:1, 21:12, 22:9, 22:18, 22:19, 32:5
**attorneys** [15] - 4:10, 6:7, 6:9, 8:5, 8:7, 11:18, 13:8, 13:16, 14:15, 14:16, 14:19, 14:21, 15:8, 22:15, 22:16
**attorneys'** [18] - 4:8, 4:13, 4:22, 5:3, 10:20, 19:11, 25:4, 25:10, 26:1, 26:7, 26:13, 26:15, 26:21, 30:13, 30:14, 32:2, 32:4
**authority** [1] - 24:1
**Authority** [3] - 5:10, 10:6, 32:13
**available** [1] - 8:20
**AVENUE** [1] - 2:5

## B

**B-275** [1] - 2:21
**background** [1] - 5:12
**BAKER** [1] - 2:3
**balhoff** [1] - 15:15
**Balhoff** [9] - 14:14, 15:6, 18:24, 22:12, 22:25, 23:5, 23:10, 24:25, 25:24
**BALHOFF** [1] - 2:12
**balhoff's** [1] - 24:18
**Balhoff's** [1] - 16:12
**bank** [1] - 12:18
**Banner** [3] - 14:8, 17:8, 17:17
**basic** [1] - 15:25
**basis** [1] - 17:7

**BEARMAN** [1] - 2:3
**became** [2] - 16:1, 18:18
**BEFORE** [1] - 1:12
**began** [1] - 14:7
**beginning** [1] - 14:5
**behalf** [2] - 5:9, 15:18
**behind** [1] - 9:18
**bellwether** [2] - 16:3, 16:6
**belong** [1] - 33:13
**benefit** [19] - 12:10, 12:16, 12:23, 12:25, 13:17, 14:15, 14:19, 15:1, 15:3, 15:8, 15:9, 15:13, 18:25, 22:10, 22:15, 22:19, 22:22, 23:14
**benefits** [1] - 27:10
**BENJAMIN** [1] - 1:21
**BERKOWITZ** [1] - 2:4
**BERMAN** [1] - 1:17
**best** [1] - 34:18
**between** [9] - 7:24, 14:15, 16:4, 18:25, 19:15, 21:6, 29:19, 31:22, 33:8
**big** [1] - 31:17
**black** [1] - 6:15
**BNBM** [1] - 2:7
**boxes** [1] - 12:12
**BP** [2] - 20:11, 20:12
**break** [1] - 22:14
**break-up** [1] - 22:14
**breakdown** [1] - 30:10
**brief** [3] - 9:7, 20:23, 23:20
**bring** [1] - 8:15
**broader** [4] - 17:1, 17:2, 17:3, 19:3
**BROWN** [1] - 2:12
**BrownGreer** [6] - 6:6, 8:6, 32:22, 33:4, 33:11, 33:13
**build** [1] - 23:25
**builders** [1] - 4:10
**BY** [7] - 1:18, 1:22, 2:4, 2:9, 2:14, 2:24, 2:25

## C

**calculated** [2] - 18:7, 18:22
**CALDWELL** [1] - 2:4
**CALLED** [1] - 4:4
**CANAL** [1] - 2:9
**candidate** [1] - 17:19
**candor** [2] - 28:19,

31:5
**cannot** [1] - 7:25
**capture** [2] - 32:9, 32:17
**care** [1] - 13:15
**carved** [1] - 29:3
**case** [27] - 4:15, 4:24, 5:12, 6:7, 6:12, 6:15, 6:21, 10:9, 11:22, 12:5, 12:9, 13:25, 14:1, 17:11, 18:9, 21:14, 23:21, 24:12, 24:13, 24:15, 24:21, 25:17, 25:21, 26:14, 27:8, 30:6
**CASES** [1] - 1:9
**cases** [7] - 4:17, 12:5, 23:1, 27:2, 29:7, 29:9, 29:10
**cash** [1] - 10:2
**Cathy** [2] - 34:13, 34:22
**CATHY** [1] - 2:20
**Cathy_Pepper@laed .uscourts.gov** [2] - 2:23, 34:24
**CCR** [2] - 2:20, 34:22
**CEDAR** [1] - 2:17
**CENTRE** [1] - 1:22
**CERTIFICATE** [1] - 34:11
**certification** [1] - 20:19
**CERTIFIED** [2] - 2:20, 2:21
**Certified** [3] - 34:13, 34:14, 34:22
**certify** [1] - 34:17
**CHARLES** [1] - 2:5
**check** [1] - 29:15
**CHINESE** [1] - 1:4
**Chinese** [1] - 20:6
**CHINESE- MANUFACTURED** [1] - 1:4
**choose** [1] - 28:22
**Circuit** [4] - 5:13, 5:14, 5:19, 5:21
**cited** [1] - 20:23
**CIVIL** [1] - 1:6
**claim** [7] - 22:9, 23:3, 23:4, 27:10, 32:21, 32:23
**claimant** [2] - 18:5, 18:9
**claimants** [5] - 4:10, 16:9, 18:15, 18:17, 32:10
**claims** [8] - 4:19, 25:5, 25:13, 28:20, 28:23,

33:22, 33:25
**class** [31] - 4:13, 4:18, 5:6, 6:25, 8:8, 8:9, 8:10, 8:15, 8:17, 9:7, 9:12, 10:12, 10:17, 11:12, 13:12, 18:4, 18:14, 19:17, 19:24, 20:7, 20:12, 20:16, 20:18, 20:19, 20:22, 25:9, 25:22, 29:1, 31:24, 32:8
**clause** [1] - 9:15
**clear** [2] - 11:5, 26:11
**clearly** [1] - 28:14
**CLERK** [1] - 34:7
**client** [4] - 6:19, 10:4, 10:5, 32:14
**client's** [1] - 10:7
**clients** [5] - 24:2, 25:19, 26:25, 29:19, 32:15
**clients'** [3] - 7:18, 25:20, 27:6
**close** [2] - 11:13, 26:16
**closed** [1] - 9:18
**CNBM** [1] - 2:8
**coming** [2] - 16:9, 34:3
**comments** [1] - 22:3
**committee** [6] - 6:10, 11:16, 12:4, 12:23, 23:2, 30:2
**Committee** [1] - 30:3
**committee's** [1] - 13:23
**common** [20] - 12:10, 12:16, 12:23, 12:25, 13:17, 14:15, 14:19, 15:1, 15:3, 15:8, 15:9, 18:25, 22:9, 22:15, 22:19, 22:21, 23:14, 27:9, 27:10
**Company** [2] - 5:17, 5:19
**compensate** [1] - 4:17
**compensated** [3] - 14:22, 28:17, 30:22
**compensation** [1] - 33:12
**complete** [1] - 28:19
**completely** [2] - 24:21, 29:3
**complex** [1] - 14:6
**complicate** [1] - 16:24
**complicated** [1] - 17:8
**COMPUTER** [1] - 2:25
**conclusion** [1] - 15:22
**conducted** [1] - 30:20
**conducting** [1] - 16:3

**conference** [1] - 31:18
**conferred** [1] - 15:13
**confirming** [1] - 12:11
**confirms** [1] - 30:8
**connection** [1] - 4:14
**consistent** [7] - 25:4, 27:4, 27:15, 28:1, 28:4, 30:15, 30:22
**consult** [1] - 29:25
**consulted** [2] - 29:16, 29:17
**contained** [1] - 17:20
**context** [1] - 15:21
**CONTINUED** [1] - 2:1
**contract** [22] - 6:6, 6:8, 7:3, 7:23, 8:5, 8:7, 10:25, 11:4, 11:18, 13:8, 13:13, 13:16, 21:4, 21:8, 21:9, 21:11, 21:22, 22:9, 22:15, 22:18, 27:20, 28:8
**contractor** [2] - 12:25, 29:12
**contribution** [1] - 30:12
**corners** [12] - 7:6, 7:7, 7:23, 8:21, 8:25, 9:5, 9:15, 9:20, 9:23, 20:11, 27:14, 28:13
**correct** [1] - 34:17
**cost** [2] - 10:19, 16:8
**costs** [10] - 4:9, 4:22, 8:12, 9:9, 10:2, 14:24, 18:13, 18:16, 21:2, 25:10
**COUNSEL** [3] - 1:17, 2:3, 2:8
**counsel** [4] - 4:18, 14:21, 18:25, 30:14
**counsel's** [1] - 32:15
**Count** [1] - 5:14
**countless** [2] - 12:19, 12:20
**country** [1] - 29:9
**County** [5] - 5:13, 5:19, 5:21, 24:21, 24:23
**couple** [5] - 23:22, 25:24, 27:13, 27:20
**course** [2] - 17:6, 32:23
**court** [10] - 7:25, 18:6, 21:18, 24:15, 26:4, 26:6, 26:21, 29:12, 33:19, 34:6
**Court** [23] - 5:8, 5:13, 5:14, 5:19, 5:21, 6:2, 6:16, 7:5, 9:19, 9:22, 11:9, 11:19, 21:20,

21:23, 25:12, 32:25, 33:1, 34:8, 34:14, 34:15, 34:16, 34:23, 34:24
**COURT** [34] - 1:1, 2:20, 4:4, 4:7, 10:10, 10:19, 10:24, 11:10, 11:14, 11:21, 13:11, 13:20, 13:25, 14:2, 19:5, 20:1, 20:3, 20:15, 20:25, 21:9, 21:13, 21:15, 21:24, 22:8, 22:12, 22:23, 23:1, 23:11, 23:13, 23:15, 30:25, 33:6, 33:16, 34:3
**cracks** [1] - 6:5
**create** [1] - 23:2
**CRR** [2] - 2:20, 34:22
**Currie** [1] - 33:8

## D

**daily** [1] - 17:7
**DANIEL** [2] - 2:5, 2:12
**DAVID** [1] - 1:21
**days** [3] - 7:17, 19:18, 21:23
**deal** [5] - 9:1, 21:4, 31:1, 31:19, 32:19
**dealings** [1] - 30:5
**dealt** [2] - 26:11, 26:12
**December** [3] - 18:1, 18:11, 18:13
**decide** [11] - 8:1, 21:18, 21:19, 21:20, 22:25, 23:10, 23:11, 26:7, 33:9
**decided** [1] - 16:24
**decision** [2] - 23:9, 33:8
**defendant** [3] - 5:17, 5:18, 17:21
**defendants** [5] - 4:19, 5:20, 12:17, 17:11
**definition** [2] - 21:1, 21:6
**definitionally** [1] - 8:16
**Delta** [1] - 20:13
**denied** [2] - 7:21, 28:21
**deposited** [1] - 18:20
**deposition** [1] - 12:18
**depositions** [3] - 5:15, 12:18, 24:6
**DEPUTY** [1] - 34:7
**determination** [2] - 25:10, 34:1

*OFFICIAL TRANSCRIPT*

**determine** [1] - 21:15
**determined** [4] - 7:24, 15:5, 15:6, 19:15
**difference** [1] - 31:22
**different** [8] - 23:23, 29:3, 29:11, 29:12, 31:1, 31:4, 31:21, 33:1
**dime** [2] - 6:18, 10:3
**direct** [1] - 30:9
**directly** [1] - 26:11
**discovery** [1] - 16:5
**discussion** [1] - 16:25
**discussions** [2] - 9:18, 16:15
**dispute** [1] - 29:20
**distinct** [1] - 24:22
**distinctions** [1] - 23:22
**distinctly** [1] - 30:7
**distributed** [1] - 14:24
**District** [5] - 25:12, 34:16, 34:24
**DISTRICT** [3] - 1:1, 1:1, 1:13
**divided** [1] - 23:9
**Doc** [1] - 19:9
**DOCKET** [1] - 1:6
**docket** [1] - 24:7
**document** [1] - 28:14
**DOCUMENT** [1] - 1:8
**dollars** [2] - 10:1, 30:21
**done** [2] - 26:6, 27:3
**DONELSON** [1] - 2:3
**doors** [1] - 9:19
**down** [2] - 28:9, 31:14
**drafted** [1] - 11:4
**DRYWALL** [1] - 1:5
**drywall** [1] - 20:6
**due** [1] - 10:6
**DUGGAN** [1] - 1:18
**DUNBAR** [1] - 2:8
**DYSART** [1] - 2:5

## E

**e-mail** [1] - 30:3
**early** [2] - 17:15, 24:20
**easily** [1] - 27:19
**Eastern** [2] - 25:12, 34:16
**EASTERN** [1] - 1:1
**easy** [2] - 15:21, 26:3
**effectively** [1] - 17:25
**either** [2] - 6:11, 33:10
**ELDON** [1] - 1:12
**ENERGY** [1] - 1:22
**enforce** [4] - 9:23,

26:5, 29:13
**enter** [1] - 16:16
**entered** [6] - 6:23, 16:17, 16:19, 16:23, 21:17, 33:20
**entire** [1] - 13:24
**entities** [1] - 19:16
**ENTITIES** [2] - 2:8
**entitled** [5] - 21:25, 22:1, 22:6, 22:8, 34:19
**equitable** [2] - 11:25, 13:9
**equivalent** [1] - 28:4
**escrow** [2] - 18:20, 18:23
**ESQUIRE** [8] - 1:18, 1:18, 1:22, 2:4, 2:5, 2:9, 2:14, 2:17
**established** [1] - 7:2
**eventually** [3] - 5:16, 14:8, 15:6
**exactly** [1] - 17:22
**except** [1] - 26:6
**exchange** [1] - 30:4
**excluded** [2] - 8:16, 21:7
**exist** [1] - 11:2
**existence** [1] - 33:20
**expended** [1] - 30:19
**expenses** [10] - 6:4, 7:8, 9:21, 9:24, 10:4, 10:5, 10:6, 13:18, 27:8, 30:19
**explain** [1] - 23:3
**explained** [1] - 25:23
**explicitly** [1] - 8:24
**expressly** [3] - 25:15, 28:21, 29:3
**extensive** [1] - 24:5
**extent** [1] - 15:12
**Exterior** [1] - 5:20
**extra** [1] - 28:11

## F

**face** [1] - 31:3
**fact** [2] - 14:23, 20:15
**failed** [1] - 11:24
**fair** [3] - 11:25, 12:4, 13:9
**fairness** [1] - 12:16
**fall** [5] - 6:1, 7:2, 9:11, 16:12, 17:15
**fallen** [2] - 6:5, 6:15
**FALLON** [1] - 1:12
**families** [2] - 26:23, 27:1
**family** [1] - 25:20

**far** [1] - 22:22
**farmers** [1] - 20:13
**federal** [1] - 26:21
**fee** [28] - 6:10, 8:11, 8:15, 8:17, 8:24, 9:24, 10:3, 11:15, 11:16, 12:1, 12:4, 12:22, 12:25, 13:6, 13:23, 16:25, 18:7, 19:2, 21:12, 21:21, 21:25, 22:2, 23:2, 29:20, 30:2, 33:4, 34:1
**fees** [51] - 4:9, 4:14, 4:22, 5:1, 5:3, 7:8, 7:16, 7:24, 8:12, 8:13, 9:4, 9:8, 9:21, 10:20, 15:3, 15:4, 15:23, 17:1, 17:2, 17:4, 17:5, 18:2, 18:13, 18:16, 18:23, 18:24, 19:9, 19:11, 19:14, 19:21, 19:22, 20:23, 20:24, 21:2, 25:4, 25:10, 26:1, 26:7, 26:8, 26:13, 26:15, 26:19, 26:21, 27:9, 30:13, 30:14, 31:18, 32:2, 32:4, 32:5
**fell** [1] - 5:24
**few** [2] - 11:24, 25:18
**field** [1] - 17:16
**figure** [2] - 14:18, 31:21
**figuring** [1] - 17:12
**file** [5] - 21:23, 22:18, 22:24, 26:8, 33:3
**filed** [8] - 5:13, 7:20, 8:18, 11:16, 11:18, 18:22, 21:14, 22:21
**final** [2] - 6:1, 18:18
**firm** [7] - 5:10, 5:21, 6:2, 6:3, 24:4, 26:12, 29:19
**first** [10] - 5:24, 6:22, 7:5, 9:19, 9:22, 10:8, 11:7, 14:2, 16:22, 29:15
**FISHBEIN** [1] - 1:17
**five** [1] - 14:25
**fix** [1] - 32:18
**fixed** [2] - 17:22, 32:16
**flawed** [1] - 15:21
**Florida** [2] - 31:13, 31:14
**focusing** [1] - 17:12
**FOR** [3] - 1:17, 2:3, 2:7
**foregoing** [1] - 34:17

**forms** [1] - 16:10
**forth** [1] - 17:18
**four** [13] - 7:6, 7:7, 7:23, 8:21, 8:25, 9:5, 9:15, 9:20, 9:23, 20:11, 24:20, 27:14, 28:13
**framework** [1] - 8:21
**fruit** [2] - 14:8, 16:14
**full** [1] - 18:19
**fund** [3] - 27:9, 27:10, 32:22
**funds** [1] - 8:20

## G

**gaining** [1] - 32:18
**GAINSBURGH** [1] - 1:21
**GERALD** [1] - 1:22
**Global** [2] - 14:9, 17:8
**global** [1] - 16:16
**governed** [1] - 11:11
**granted** [1] - 24:14
**great** [1] - 30:1
**GREER** [1] - 2:12
**grounds** [5] - 6:17, 6:22, 7:6, 10:8, 11:7
**group** [1] - 31:13
**guess** [3] - 5:5, 6:12, 27:17
**gumbo** [1] - 13:7
**guys** [4] - 17:23, 29:24, 30:1

## H

**hanging** [1] - 14:8, 16:14
**hard** [1] - 31:8
**HARRY** [1] - 2:9
**hear** [4] - 5:4, 13:21, 14:2, 30:25
**HEARD** [1] - 1:12
**heard** [1] - 11:13
**hearing** [4] - 13:11, 14:17, 15:4, 23:19
**HEARING** [1] - 1:12
**hearings** [1] - 15:3
**held** [1] - 26:20
**help** [1] - 13:23
**hereby** [1] - 34:16
**Herman** [1] - 17:17
**history** [2] - 16:1, 20:6
**holding** [1] - 25:14
**hole** [1] - 6:15
**HOLSTON** [2] - 2:16, 2:17, 14:1, 23:17,

33:18
**Holston** [1] - 23:17
**homebuilders** [2] - 17:9, 17:17
**homeowner** [1] - 33:15
**homeowners** [3] - 4:11, 15:12, 23:18
**Homes** [1] - 17:21
**homes** [29] - 6:21, 7:18, 14:18, 14:20, 14:22, 14:25, 17:20, 17:22, 17:25, 18:22, 19:1, 23:24, 24:1, 24:4, 25:20, 26:24, 27:1, 27:6, 29:7, 30:17, 30:18, 32:12, 32:16, 32:17, 33:10, 33:11, 33:12
**Honor** [25] - 5:25, 6:4, 13:14, 13:22, 14:4, 16:1, 16:11, 18:3, 18:8, 18:19, 19:1, 19:8, 20:2, 20:10, 21:20, 22:5, 23:17, 30:9, 31:2, 31:7, 31:12, 33:8, 33:12, 33:18, 34:2
**HONORABLE** [1] - 1:12
**hour** [1] - 12:13
**hours** [6] - 11:24, 12:14, 12:15, 12:20
**house** [1] - 30:24
**Housing** [3] - 5:10, 10:6, 32:13
**housing** [2] - 24:1, 32:12
**hundred** [1] - 12:6

## I

**ignore** [1] - 9:6
**immediate** [1] - 32:15
**imply** [3] - 25:11, 28:8, 28:12
**important** [2] - 18:8, 25:3
**importantly** [1] - 25:18
**IN** [1] - 1:4
**included** [2] - 18:15, 19:2
**incorporated** [2] - 10:16, 17:1
**increased** [1] - 9:4
**incurred** [1] - 6:3
**indicate** [1] - 4:11
**indicates** [2] - 4:25, 7:17

*OFFICIAL  TRANSCRIPT*

**individual** [1] - 15:12
**individuals** [1] - 32:15
**INEX** [2] - 14:8, 17:8
**information** [2] - 16:7, 16:8
**initial** [2] - 16:13, 31:8
**insiders** [1] - 23:7
**insurers** [1] - 17:17
**intended** [2] - 20:7, 20:8
**intent** [3] - 7:18, 9:17, 11:5
**intents** [1] - 33:2
**interest** [1] - 28:19
**interesting** [1] - 26:10
**Interior** [1] - 5:19
**interpret** [1] - 28:2
**interpretation** [1] - 10:10
**involved** [1] - 24:5
**involving** [2] - 16:13, 17:11
**issue** [3] - 5:5, 14:14, 14:25
**issues** [1] - 4:10

## J

**JAKE** [1] - 2:12
**JOSEPH** [1] - 2:14
**Judge** [7] - 15:18, 15:20, 25:3, 28:13, 28:16, 29:5, 30:10
**JUDGE** [1] - 1:13
**judge** [5] - 16:2, 20:22, 24:15, 27:13, 29:12
**judgment** [1] - 5:15
**July** [1] - 32:7
**jurisdiction** [2] - 25:11, 33:25

## K

**kept** [1] - 12:12
**KERRY** [1] - 2:4
**Kerry** [1] - 15:18
**key** [1] - 5:5
**kicks** [1] - 19:22
**kind** [2] - 5:24, 6:15
**Knauf** [47] - 4:12, 4:13, 4:15, 4:17, 4:19, 4:21, 4:25, 5:2, 5:18, 6:11, 6:24, 7:8, 7:25, 8:2, 8:18, 8:23, 9:20, 10:19, 14:7, 15:19, 15:22, 16:13, 17:8, 18:3, 18:14,

18:16, 18:19, 19:2, 19:4, 19:10, 19:16, 19:21, 21:4, 21:6, 21:9, 21:11, 21:17, 21:22, 25:8, 27:12, 27:15, 29:8, 29:19, 31:25, 32:4, 32:7
**KNAUF** [1] - 2:3
**Knauf's** [5] - 9:3, 9:17, 19:10, 30:12, 32:22
**knowing** [1] - 14:17
**known** [3] - 18:5, 18:15, 18:17
**KPT** [1] - 5:18

## L

**L&W** [1] - 14:8
**LA** [4] - 1:23, 2:6, 2:10, 2:22
**last** [1] - 28:16
**late** [1] - 16:17
**law** [7] - 5:10, 5:21, 6:2, 7:3, 10:25, 26:12, 29:19
**lawyer** [4] - 27:23, 29:6, 29:8, 31:2
**lawyers** [10] - 25:5, 26:11, 27:4, 27:16, 28:1, 29:6, 29:10, 30:15, 30:22, 31:14
**less** [1] - 10:6
**letter** [1] - 12:11
**LEVIN** [5] - 1:17, 1:18, 13:22, 14:4, 33:7
**Levin** [8] - 12:2, 12:3, 12:8, 12:11, 17:17, 22:6, 22:17, 31:14
**LIABILITY** [1] - 1:5
**LIAISON** [3] - 1:17, 2:3, 2:8
**liar** [1] - 33:19
**lie** [1] - 33:1
**list** [2] - 6:6, 33:11
**litigated** [1] - 5:14
**LITIGATION** [1] - 1:5
**litigation** [7] - 5:22, 11:17, 13:4, 14:5, 20:7, 24:6, 30:19
**living** [2] - 26:24, 26:25
**look** [14] - 7:6, 7:14, 7:22, 9:19, 10:23, 14:16, 17:19, 18:10, 19:8, 20:10, 23:5, 26:17, 27:14, 30:11
**looked** [1] - 28:10
**looks** [2] - 14:24, 17:22

**loss** [7] - 28:20, 28:23, 32:21, 33:3, 33:22, 33:25
**Louisiana** [3] - 25:13, 34:15, 34:16
**LOUISIANA** [2] - 1:1, 1:7
**low** [2] - 14:8, 16:14
**low-hanging** [2] - 14:8, 16:14

## M

**mail** [1] - 30:3
**MANUFACTURED** [1] - 1:4
**MARTINO** [1] - 2:13
**Martino** [5] - 5:11, 14:12, 16:18, 17:14, 33:10
**Martino's** [2] - 15:20, 32:14
**MASTER** [1] - 2:12
**Master** [1] - 22:13
**material** [1] - 23:8
**matter** [2] - 13:18, 34:19
**MDL** [46] - 5:17, 5:20, 6:5, 7:25, 8:20, 8:21, 16:1, 16:2, 16:9, 18:5, 21:18, 25:5, 25:6, 25:16, 25:20, 25:21, 25:22, 26:16, 27:4, 27:16, 27:18, 27:22, 27:23, 28:1, 28:3, 28:4, 28:6, 28:17, 28:18, 29:5, 29:6, 29:8, 29:9, 29:14, 29:24, 30:7, 30:15, 30:16, 30:22, 31:19, 33:21, 33:25
**mean** [4] - 12:12, 20:13, 22:21, 28:6
**means** [1] - 5:2
**MECHANICAL** [1] - 2:24
**mediate** [4] - 5:23, 16:13, 24:12, 24:13
**mediated** [1] - 24:14
**mediation** [12] - 5:18, 5:24, 5:25, 11:23, 12:2, 14:11, 17:24, 24:17, 24:21, 30:5, 32:24
**mediator** [1] - 24:15
**meet** [1] - 30:1
**meetings** [1] - 25:24
**member** [4] - 12:3, 20:16, 20:18, 21:5

**members** [2] - 18:5, 25:20
**merger** [1] - 9:14
**MERIT** [1] - 2:21
**Merit** [2] - 34:14, 34:23
**met** [3] - 17:24, 24:11, 30:2
**MEUNIER** [2] - 1:21, 1:22
**Miami** [2] - 31:13, 31:18
**Miller** [4] - 14:17, 15:18, 25:18, 26:11
**MILLER** [4] - 2:4, 15:18, 19:7, 31:2
**million** [6] - 6:3, 8:11, 8:25, 10:1, 10:3, 18:2, 18:16, 18:19, 19:2, 20:25
**mind** [1] - 13:1
**minute** [1] - 28:11
**minutes** [1] - 31:5
**Mitchell** [3] - 5:17, 5:19, 17:21
**MOBILE** [2] - 2:15, 2:18
**Mobile** [13] - 5:9, 5:13, 5:14, 5:19, 5:21, 6:21, 23:17, 24:6, 24:16, 24:21, 24:23, 30:20, 32:13
**moments** [1] - 25:19
**momentum** [1] - 32:19
**money** [5] - 13:17, 18:20, 18:23, 23:14, 29:24
**months** [4] - 12:21, 20:8, 24:20, 31:24
**most** [1] - 25:18
**motion** [6] - 7:20, 8:18, 8:19, 11:16, 11:18, 21:23
**MOTION** [1] - 1:12
**Motions** [1] - 4:7
**motions** [4] - 4:8, 4:9, 5:15, 26:5
**MOTIONS.................** [1] - 3:5
**move** [1] - 7:16
**MR** [32] - 5:8, 10:15, 10:22, 10:25, 11:13, 11:15, 11:22, 13:14, 13:22, 14:1, 14:4, 15:18, 19:7, 20:2, 20:4, 20:22, 21:1, 21:11, 21:14, 21:16, 22:5, 22:11, 22:21, 22:25, 23:10, 23:12,

23:14, 23:16, 23:17, 31:2, 33:7, 33:18

## N

**need** [3] - 29:14, 29:23, 34:5
**negotiated** [4] - 4:11, 8:19, 8:24, 14:10
**negotiating** [1] - 19:19
**negotiations** [2] - 17:7, 17:16
**neutral** [1] - 23:7
**never** [5] - 17:10, 18:9, 29:17, 30:2, 30:3
**New** [1] - 5:23
**new** [2] - 28:8, 28:12
**NEW** [5] - 1:7, 1:23, 2:6, 2:10, 2:22
**next** [1] - 25:7
**nice** [1] - 30:1
**nickel** [2] - 6:18, 10:2
**NO** [1] - 1:6
**note** [1] - 18:8
**nothing** [2] - 8:4, 11:23
**notice** [1] - 20:19
**numbered** [1] - 34:19
**numbers** [1] - 30:11
**Numeral** [1] - 7:9
**numeral** [1] - 32:1

## O

**obviously** [2] - 7:14, 15:11
**occurred** [1] - 14:4
**OCTOBER** [2] - 1:7, 4:2
**October** [4] - 16:19, 17:25, 18:12, 31:23
**OF** [2] - 1:1, 1:12
**offended** [1] - 33:19
**office** [1] - 12:12
**OFFICIAL** [1] - 2:20
**Official** [2] - 34:15, 34:23
**old** [1] - 6:12
**once** [1] - 31:9
**one** [7] - 4:20, 9:24, 11:24, 14:2, 22:5, 25:7, 31:17
**one-third** [1] - 9:24
**open** [3] - 19:11, 19:14, 33:19
**operative** [1] - 19:21, 32:5

**opinion** [1] - 22:4
**opportunity** [5] - 14:3, 22:18, 23:3, 33:17, 34:4
**opposed** [1] - 13:5
**opt** [14] - 20:19, 20:20, 28:25, 29:2, 31:8, 31:9, 31:10, 31:13, 31:16, 32:19, 32:20, 33:20
**opt-in** [3] - 29:2, 31:10
**opt-outs** [4] - 31:8, 31:13, 33:20
**opted** [17] - 18:9, 25:19, 25:20, 25:22, 28:18, 28:19, 28:24, 31:1, 31:4, 31:5, 31:9, 31:18, 32:19, 33:1, 33:2, 33:21
**order** [1] - 24:8
**ORDER** [1] - 4:4
**ORLEANS** [5] - 1:7, 1:23, 2:6, 2:10, 2:22
**Orleans** [1] - 5:23
**ought** [2] - 13:18, 13:19
**outs** [4] - 31:8, 31:13, 33:20
**outside** [7] - 5:1, 6:7, 9:11, 27:22, 28:2, 28:14, 29:25
**overall** [1] - 15:13
**owed** [1] - 6:18
**owing** [1] - 28:14
**owned** [3] - 24:4, 32:13, 32:14
**ownership** [1] - 23:25

**P**

**PA** [1] - 1:19
**PAGE** [1] - 3:3
**page** [1] - 19:8
**paid** [33] - 6:8, 6:14, 6:20, 6:23, 7:20, 8:4, 8:7, 8:20, 10:6, 10:9, 11:5, 11:8, 13:2, 13:3, 13:14, 13:18, 13:19, 14:13, 20:14, 25:4, 25:5, 27:4, 27:5, 27:11, 27:18, 27:22, 28:5, 29:5, 30:14, 30:15, 31:18
**Palmer** [1] - 15:4
**paragraph** [7] - 10:20, 11:2, 19:6, 32:4, 32:5, 32:6, 33:24
**Paragraph** [2] - 20:5, 32:1

**Paragraphs** [1] - 4:23
**paragraphs** [2] - 7:11, 7:12
**part** [2] - 5:6, 19:23
**participate** [5] - 11:11, 13:12, 24:17, 30:6, 33:4
**participating** [1] - 25:16
**participation** [2] - 25:9, 25:22
**particular** [2] - 11:22, 33:14
**parties** [7] - 5:4, 7:25, 16:16, 23:3, 29:20, 29:21, 29:22
**partner** [3] - 16:12, 24:18, 26:12
**partook** [1] - 14:11
**party** [1] - 21:5
**pay** [25] - 4:13, 4:21, 4:25, 7:8, 7:18, 8:11, 9:20, 9:23, 10:19, 18:16, 21:9, 21:12, 26:13, 26:18, 26:19, 27:15, 27:21, 27:22, 28:1, 28:3, 28:11, 29:10, 29:24, 30:10
**paying** [3] - 5:3, 6:11
**payment** [4] - 6:14, 6:17, 7:16, 19:10
**payments** [3] - 9:4, 9:25, 28:7
**pending** [1] - 14:14
**people** [4] - 12:20, 31:15, 31:17, 32:18
**Pepper** [3] - 34:13, 34:21, 34:22
**PEPPER** [1] - 2:20
**percent** [14] - 5:22, 11:16, 11:19, 12:1, 12:7, 13:4, 13:6, 13:9, 26:19, 30:13, 30:16, 30:23
**percentage** [3] - 15:8, 22:14, 22:15
**permission** [1] - 24:14
**Perry** [2] - 16:12, 24:18
**perspective** [1] - 15:16
**PHA** [6] - 8:23, 10:21, 19:10, 19:21, 21:6, 24:4
**PHELPS** [1] - 2:8
**PHILADELPHIA** [1] - 1:19
**pilot** [24] - 6:7, 7:1, 9:13, 14:5, 14:10, 15:24, 16:17, 16:21,

16:23, 17:1, 17:4, 17:15, 17:19, 17:23, 17:25, 18:11, 18:12, 19:12, 19:13, 19:20, 19:22, 31:23, 32:1
**Pipes** [1] - 17:18
**place** [1] - 33:14
**plaintiff** [1] - 25:8
**Plaintiff's** [2] - 25:8, 25:11
**plaintiffs** [1] - 4:24
**PLAINTIFFS'** [1] - 1:17
**Plaintiffs'** [1] - 30:3
**plaintiffs'** [4] - 4:18, 30:2, 30:14
**plane** [1] - 31:12
**plus** [3] - 6:3, 30:17, 30:23
**point** [5] - 5:4, 26:16, 27:17, 28:16, 32:9
**portion** [3] - 13:5, 13:13
**position** [6] - 4:24, 6:23, 8:13, 13:23, 15:2, 15:5
**positions** [1] - 15:6
**pot** [2] - 27:18, 32:23
**POYDRAS** [2] - 1:23, 2:21
**precedent** [2] - 26:15, 26:18
**prepared** [1] - 16:16
**PRESENT** [1] - 2:12
**present** [1] - 14:11
**presented** [1] - 15:4
**pretty** [1] - 12:22
**Prichard** [12] - 5:10, 10:5, 15:22, 16:18, 16:20, 18:9, 18:12, 19:1, 19:4, 31:22, 31:25
**primarily** [1] - 4:10
**private** [4] - 14:15, 14:21, 18:25, 32:15
**pro** [1] - 31:20
**problem** [1] - 26:23
**procedure** [1] - 5:3
**proceeding** [1] - 16:1
**PROCEEDINGS** [3] - 1:12, 2:24, 4:1
**proceedings** [2] - 26:21, 34:19
**process** [4] - 22:13, 22:24, 23:2, 31:15
**PRODUCED** [1] - 2:25
**PRODUCTS** [1] - 1:5
**profile** [1] - 16:9
**program** [28] - 6:8, 7:1, 9:13, 10:7, 14:5, 14:10, 15:24, 16:17,

16:21, 16:23, 17:1, 17:4, 17:15, 17:20, 17:23, 17:25, 18:11, 18:13, 19:12, 19:13, 19:20, 19:22, 23:25, 31:24, 32:2, 32:10, 32:18
**project** [1] - 32:13
**prolix** [1] - 14:6
**promising** [1] - 29:9
**promptly** [1] - 18:19
**proportion** [1] - 5:1
**prosecution** [2] - 6:21, 12:9
**provides** [3] - 8:24, 19:10, 19:14
**provision** [6] - 8:9, 8:17, 20:22, 26:10, 28:5, 28:6
**PSC** [25] - 6:10, 7:25, 8:3, 8:18, 9:4, 9:17, 11:23, 11:25, 12:3, 12:5, 13:1, 13:5, 13:17, 14:10, 16:13, 18:3, 18:14, 19:2, 19:16, 21:4, 21:17, 29:17, 32:4, 33:5, 33:6
**public** [1] - 32:12
**purely** [1] - 29:18
**purposes** [4] - 29:3, 31:10, 33:2, 34:1
**pursuant** [5] - 4:18, 8:20, 25:1, 25:3, 27:11
**put** [6] - 12:17, 14:9, 15:16, 15:21, 17:25, 18:23
**putting** [1] - 17:8

**Q**

**quantified** [1] - 15:14
**quick** [1] - 34:4
**quid** [1] - 31:20
**quo** [1] - 31:20
**quotes** [2] - 19:11, 19:15

**R**

**RE** [1] - 1:4
**reach** [4] - 15:22, 16:25, 17:3, 18:14
**reached** [1] - 5:25, 6:25, 7:1, 7:2, 18:21, 19:24, 20:12, 29:1, 29:2, 29:25, 33:5
**read** [1] - 33:23

16:21, 16:23, 17:1, 17:4, 17:15, 17:20, 17:23, 17:25, 18:11, 18:13, 19:12, 19:13, 19:20, 19:22, 23:25, 31:24, 32:2, 32:10, 32:18
**readjusts** [1] - 33:13
**real** [1] - 26:9
**really** [4] - 17:11, 26:9, 28:9, 33:7
**REALTIME** [1] - 2:20
**Realtime** [2] - 34:13, 34:22
**reason** [4] - 16:20, 26:12, 32:6, 33:21
**reasonable** [9] - 4:22, 9:9, 9:21, 10:20, 12:19, 21:12, 21:13, 21:15, 21:21
**reasons** [1] - 16:15
**receive** [1] - 27:16
**receiving** [1] - 30:16
**recess** [2] - 34:6, 34:8
**recommendation** [4] - 23:4, 23:6, 23:12, 23:13
**recommending** [1] - 22:13
**reconstruct** [1] - 12:10
**reconstructing** [2] - 12:14, 12:20
**record** [1] - 34:18
**Record** [1] - 19:9
**RECORDED** [1] - 2:24
**reference** [8] - 5:2, 10:11, 10:13, 15:23, 16:20, 19:3, 32:3, 32:8
**referenced** [3] - 19:5, 32:1, 32:6
**referring** [2] - 10:11, 11:1
**refers** [3] - 10:12, 10:15
**regarding** [3] - 4:8, 4:19, 25:10
**Registered** [1] - 34:13
**registered** [1] - 34:23
**reimburse** [1] - 10:5
**related** [1] - 4:14
**RELATES** [1] - 1:8
**relates** [1] - 18:12
**relief** [2] - 6:16, 33:3
**relieve** [1] - 24:12
**relocation** [1] - 27:7
**remaining** [1] - 24:4
**remediated** [4] - 7:19, 27:2, 27:6
**Remediation** [2] - 4:21, 4:23
**remediation** [16] - 7:9, 7:12, 7:15, 7:17, 7:22, 10:1, 10:16, 10:21, 11:3, 20:4, 21:23, 27:7, 30:12,

32:10, 32:18, 33:3
**remember** [4] - 15:25, 18:3, 24:10, 30:4
**remind** [1] - 23:24
**reminds** [1] - 20:11
**repair** [2] - 16:7, 16:8
**REPORTER** [3] - 2:20, 2:20, 2:21
**Reporter** [7] - 34:13, 34:14, 34:15, 34:22, 34:23, 34:23
**REPORTER'S** [1] - 34:11
**represent** [3] - 4:10, 17:21, 23:18
**representation** [1] - 15:13
**represented** [2] - 24:3, 24:4
**representing** [2] - 5:17, 15:11
**reserved** [2] - 25:13, 28:21
**resources** [3] - 27:19, 29:9, 29:14
**respect** [1] - 18:13
**respond** [2] - 20:2, 20:15
**response** [4] - 9:6, 13:21, 19:8, 33:16
**responses** [1] - 8:18
**rest** [1] - 32:17
**result** [1] - 11:5
**results** [1] - 28:14
**retained** [3] - 14:19, 14:20, 29:12
**Richard** [2] - 5:9, 27:13
**RICHARD** [2] - 2:14, 2:17
**Richard's** [1] - 26:25
**Rick** [1] - 23:17
**rise** [1] - 34:7
**RMR** [2] - 2:20, 34:22
**Roman** [6] - 7:9, 19:12, 19:14, 19:20, 19:22, 32:1
**room** [1] - 31:18
**ROOM** [1] - 2:21
**ROSENBERG** [1] - 2:9
**rules** [1] - 33:12
**ruling** [1] - 34:4

## S

**s/Cathy** [1] - 34:21
**SAINT** [1] - 2:14
**SANDRA** [1] - 1:18
**sat** [1] - 18:21

**saw** [1] - 32:18
**schedules** [1] - 33:14
**scope** [1] - 16:7
**second** [5] - 11:9, 11:10, 13:12, 13:25, 14:1
**section** [2] - 19:10, 19:14
**Section** [11] - 4:21, 7:9, 7:14, 10:12, 10:15, 10:17, 19:11, 19:13, 25:2, 25:3, 25:9
**SEDRAN** [1] - 1:17
**see** [1] - 27:5
**self** [1] - 17:20
**self-contained** [1] - 17:20
**sense** [2] - 21:25, 26:22
**sent** [2] - 5:25, 12:11
**sentence** [1] - 25:8
**sentences** [1] - 27:20
**separate** [7] - 4:12, 4:16, 7:24, 18:21, 19:15, 19:17, 24:22
**separately** [8] - 8:12, 8:14, 9:9, 21:2, 21:7, 25:17, 26:2, 30:7
**seriously** [1] - 15:21
**set** [4] - 26:15, 26:16, 26:18, 26:21
**settled** [14] - 6:7, 20:8, 20:21, 24:19, 24:21, 25:21, 26:2, 26:14, 28:24, 29:21, 30:6, 31:23, 32:7, 32:16
**settlement** [56] - 4:12, 4:13, 4:14, 4:15, 4:18, 5:7, 6:3, 6:24, 7:1, 7:7, 7:15, 7:20, 8:10, 9:3, 9:7, 9:10, 9:14, 10:1, 10:9, 10:13, 14:7, 15:23, 18:1, 18:3, 18:10, 18:14, 18:18, 19:18, 19:24, 20:12, 20:17, 21:5, 21:6, 24:25, 25:2, 25:9, 26:6, 28:15, 28:18, 28:22, 28:25, 29:11, 29:13, 29:16, 29:17, 29:24, 31:11, 31:15, 31:19, 31:25, 32:3, 32:4, 32:8, 32:22
**settlements** [2] - 16:13, 29:14
**settling** [2] - 25:16, 29:9
**seven** [8] - 23:18,

23:25, 24:1, 24:3, 25:19, 26:23, 30:17, 33:11
**several** [2] - 12:20, 16:3
**shape** [1] - 17:15
**sheet** [1] - 24:7
**showed** [1] - 12:3
**sign** [2] - 9:1, 29:18
**signed** [3] - 18:1, 21:4, 21:8
**significant** [1] - 31:6
**similar** [2] - 4:9, 25:5
**simple** [1] - 26:3
**simply** [3] - 6:20, 7:6, 16:25
**single** [2] - 12:12, 31:17
**sitting** [1] - 14:16
**situation** [2] - 23:6, 23:23
**sold** [1] - 24:1
**sort** [4] - 15:25, 17:9, 24:24, 28:10
**source** [1] - 6:14
**SOUTH** [1] - 2:17
**speaking** [1] - 5:9
**SPECIAL** [1] - 2:12
**Special** [1] - 22:13
**spent** [4] - 12:9, 12:13, 12:19, 24:7
**split** [1] - 14:15
**spring** [2] - 16:2, 16:5
**square** [1] - 14:18
**ST** [1] - 2:5
**stand** [3] - 6:2, 6:4, 34:6
**standalone** [8] - 5:6, 6:24, 8:14, 8:16, 9:12, 10:9, 10:11, 13:15
**started** [1] - 6:13
**State** [1] - 34:14
**state** [8] - 11:1, 12:9, 13:23, 18:6, 24:15, 26:4, 26:6, 29:12
**statements** [1] - 9:17
**STATES** [2] - 1:1, 1:13
**States** [3] - 25:12, 34:15, 34:24
**stay** [1] - 24:12
**stayed** [2] - 24:8
**Steering** [1] - 30:3
**STENOGRAPHY** [1] - 2:24
**step** [1] - 25:7
**Steve** [1] - 5:16
**still** [1] - 26:24
**stipend** [6] - 9:25,

10:7, 14:23, 30:18, 30:20, 30:23
**story** [1] - 17:10
**straight** [1] - 31:3
**STREET** [6] - 1:19, 1:23, 2:9, 2:14, 2:17, 2:21
**subdivision** [2] - 23:18, 23:25
**submission** [1] - 25:11
**submitted** [1] - 12:21
**successful** [1] - 6:21
**sued** [1] - 24:5
**SUITE** [4] - 1:19, 1:23, 2:5, 2:9
**summary** [1] - 5:15
**summer** [5] - 16:2, 16:3, 16:4, 16:5, 17:14
**support** [1] - 23:4
**supposed** [1] - 11:6

## T

**T-square** [1] - 14:18
**TAISHAN** [1] - 2:7
**talks** [1] - 33:24
**tax** [2] - 12:5
**TAYLOR** [25] - 2:13, 2:14, 5:8, 10:15, 10:22, 10:25, 11:13, 11:15, 11:22, 13:14, 20:2, 20:4, 20:22, 21:1, 21:11, 21:14, 21:16, 22:5, 22:11, 22:21, 22:25, 23:10, 23:12, 23:14, 23:16
**Taylor** [6] - 5:9, 5:10, 14:12, 23:21, 24:3, 33:10
**Taylor's** [1] - 25:1
**tee** [1] - 17:3
**telephone** [1] - 30:4
**ten** [1] - 31:5
**term** [1] - 19:21
**termed** [1] - 16:14
**terms** [3] - 28:8, 28:12, 28:13
**THE** [36] - 1:12, 1:17, 2:3, 2:7, 4:7, 10:10, 10:19, 10:24, 11:10, 11:14, 11:21, 13:11, 13:20, 13:25, 14:2, 19:5, 20:1, 20:3, 20:15, 20:25, 21:9, 21:13, 21:15, 21:24, 22:8, 22:12, 22:23, 23:1, 23:11, 23:13,

23:15, 30:25, 33:6, 33:16, 34:3, 34:7
**third** [3] - 9:24, 21:10, 26:18
**THIS** [1] - 1:8
**thousand** [2] - 17:11, 30:20
**three** [3] - 12:13, 18:21, 24:20
**throughout** [3] - 17:6, 19:19, 32:23
**thrown** [1] - 13:7
**THURSDAY** [2] - 1:7, 4:2
**timeline** [1] - 15:20, 18:10
**TO** [2] - 1:8, 4:4
**today** [3] - 14:16, 23:19, 29:21
**together** [3] - 14:9, 17:9, 23:8
**took** [2] - 24:6, 24:19
**total** [2] - 27:7, 30:11, 30:12
**transcript** [1] - 34:17
**TRANSCRIPT** [2] - 1:12, 2:24
**trials** [2] - 16:4, 16:6
**true** [2] - 31:5, 34:17
**truly** [1] - 12:16
**try** [3] - 23:1, 23:20, 26:21
**trying** [5] - 12:24, 27:10, 28:12, 32:9, 32:17
**turn** [2] - 13:22, 19:14
**two** [7] - 4:8, 4:9, 4:17, 6:17, 9:2, 10:1, 31:24

## U

**ultimately** [2] - 24:19, 28:21
**under** [11] - 9:9, 10:7, 10:9, 10:25, 13:11, 22:3, 24:15, 27:8, 30:21, 33:25
**unique** [1] - 18:4
**United** [3] - 25:12, 34:15, 34:24
**UNITED** [2] - 1:1, 1:13
**universe** [2] - 16:8, 18:4
**unless** [3] - 8:11, 9:8, 21:1
**unlike** [2] - 26:24, 26:25
**unrelated** [1] - 29:7

**up** [7] - 4:7, 12:3,
  12:15, 17:3, 18:16,
  22:14, 31:3
**upset** [1] - 29:8
**Usdin** [2] - 5:16, 17:18
**utilized** [1] - 16:10

## V

**VAUGHAN** [1] - 2:16
**verbatim** [2] - 17:14,
  32:14
**verbiage** [1] - 4:25
**view** [1] - 14:20
**vigorously** [1] - 5:14

## W

**wait** [3] - 27:4, 27:5,
  28:11
**WALNUT** [1] - 1:19
**wants** [1] - 11:9
**WARSHAUER** [1] -
  1:21
**weekly** [1] - 17:7
**WHEREUPON** [1] -
  34:8
**whole** [3] - 12:18,
  31:14, 33:23
**WOODY** [1] - 2:12
**works** [1] - 19:25
**write** [2] - 10:24, 11:2
**written** [3] - 8:2, 21:8

## X

**XIV** [3] - 25:2, 25:3,
  25:9

## Y

**y'all** [3] - 8:3, 12:6,
  12:9
**years** [4] - 6:12, 12:13,
  18:21, 20:8
**young** [1] - 6:12

## Z

**zero** [2] - 11:6, 13:19

*OFFICIAL TRANSCRIPT*