# EXHIBIT D

**Debbie Murphy**

| | |
|---|---|
| **From:** | Brook Landry Villa <bvilla@fairclothlaw.com> |
| **Sent:** | Friday, July 29, 2016 6:29 PM |
| **To:** | balhoff@pbmbllc.com |
| **Cc:** | rbudd@baronbudd.com; tleopold@cohenmilstein.com; gweiss@mrachek-law.com; david@collinshorsley.com; esexton@gtandslaw.com; paul@favretlea.com; agrant@allisongrantpa.com; sweinstein@forthepeople.com; temmerling@glllaw.com; Jimmy Faircloth; Drew Hoffmann; jeremy@alterslaw.com; jimmy@doylefirm.com; ehoaglund@mhcilaw.com; john@hgattorneys.com; mmilstein@majfw.com; durkee@rdlawnet.com; Abraun@glllaw.com; RichardTaylor@taylormartino.com; vpexnicios@exnicioslaw.com; billwblaw@bellsouth.net; rty@yancelaw.com; Fred Longer; Sandy Duggan; Lenny Davis; Arnold Levin; RHERMAN@hhklawfirm.com; asaucer@baronbudd.com |
| **Subject:** | Chinese Drywall - Letter to SM Balhoff re Proposed Discovery Plan 7.29.16 |
| **Attachments:** | Out- Spec Master re Primary Counsel Proposed Discovery Plan 7.29.16.pdf |

Dear Special Master Balhoff,

Please see the attached correspondence containing a proposed discovery plan.

Sincerely,

Brook Landry Villa
Attorney
FAIRCLOTH, MELTON & SOBEL, LLC
301 Main Street, Suite 920
Baton Rouge, LA  70817
(225) 343-9535 (o)
(225) 205-7819 (c)
(225) 343-9538 (f)

**CONFIDENTIALITY STATEMENT**
This electronic message contains information from Faircloth, Melton & Sobel, LLC, and is confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you have received this electronic message in error, please notify us immediately by telephone at (225) 343-9535.

# FAIRCLOTH, MELTON & SOBEL, LLC

## *ATTORNEYS*

JIMMY R. FAIRCLOTH, JR. [1]
BARBARA BELL MELTON
DAVID R. SOBEL [2]
CHRISTIE C. WOOD
BROOK LANDRY VILLA
MATTHEW L. NOWLIN
DREW HOFFMANN

ONE AMERICAN PLACE
301 MAIN STREET, SUITE 920
BATON ROUGE, LA 70801
PHONE (225) 343-9535
FAX (225) 343-9538
www.fairclothlaw.com
jfaircloth@fairclothlaw.com

*OF COUNSEL*
WILSON & WILSON
JENA, LA

[1] L.L.M. IN LITIGATION
[2] ALSO ADMITTED IN TEXAS

July 29, 2016

Mr. Daniel J. Balhoff
PERRY, BALHOFF, MENGIS & BURNS, LLC
2141 Quail Run Drive
Baton Rouge, LA 70808

> **RE:**  ***In re: Chinese-Manufactured Drywall Products Liability Litigation*, MDL 2047 (E.D. La.) – Primary Counsel's Proposed Discovery Plan Pertaining to the Allocation of Attorneys' Fees Between Primary Counsel and Common Benefit Counsel**

Dear Special Master Balhoff:

     In accordance with your request, Primary Counsel[1] propose the following plan of discovery to fairly defend their contractual interests and to assist you in making an informed recommendation regarding the allocation of common benefit fees appropriate in this instance:

A.  **Context:**

    1.  Primary Counsel are participating in this MDL proceeding by virtue of private contracts executed in several different states.  Judge Fallon has issued no orders impacting the terms or efficacy of those contracts.  Common benefit counsel, on

---

[1] Primary Counsel consist of those firms represented or otherwise designated in the signature block of this correspondence.

the other hand, are participating by virtue of the Court's administrative authority over this MDL proceeding and have no contractual rights to, nor statutory authority for, attorney fees. As described by Judge Fallon, in a proceeding such as this, "the common benefit fee comes out of the fee for the primary attorney – a slice out of that pie, so to speak." Eldon E. Fallon, *Common Benefit Fees in Multi-District Litigation*, 74 La. L. Rev. 371, 379 (2014).

2.   The FC seeks a total common benefit fee of at least $119,313,367.00, roughly 60-65% of the entire global fee depending upon the actual total sum available.[2] To accomplish such an allocation under these circumstances, where the recovery of the claimants is not implicated, the Court would have to drastically reduce the contractual fees of Primary Counsel *for the benefit of common benefit counsel.* The nature and extent of the FC's request is unprecedented in the federal jurisprudence and would turn the concept of "primary" attorney on its head.[3]

3.   In addition to objecting to such an excessive common benefit percentage, Primary Counsel believe that the total fees available for distribution may be higher and that the FC's calculation of the benefit conferred is erroneous.

4.   Judge Fallon has already established a formula for calculating the fees of individual primary counsel (i.e., a pro rata division of the fees per firm based on the total benefit conferred). *See* PTO 28(F) (Doc. 20282). The only unknown factor is the

---

[2] This amount is 10.65% (i.e., $114,581,308.82 out of the purportedly available fund of $192,981,363.35) of what the PSC considers to be the total benefit conferred, plus an additional $4,732,058.26 which the PSC has apparently reserved for itself even though said funds have not been allocated by the Court.

[3] Compare for instance the Vioxx MDL where the Court capped contingency fees at 32% based on its "inherent authority" to assure the adequacy of the recovery for the claimants, and then allocated 6.5% of those fees for the common benefit. *In re Vioxx Products Liability Litigation*, 760 F. Supp.2d 640 (E.D. La. 2010). In this instance, the Court is being asked to exercise its inherent authority to alter private fee agreements for the benefit of common benefit counsel, not claimants. By doing so, the FC invites the Court to enter uncharted territory regarding its authority to award fees in an MDL proceeding. See Charles Silver, Geoffrey P. Miller, *The Quasi-Class Action Method of Managing Multi-District Litigation: Problems and a Proposal*, 63 Vand. L. Rev. 107 (2010).

total sum of all such fees, which will depend on the size of the "slice" allotted to the common benefit.  Simply put, the labor of Primary Counsel is not at issue.

5.    Judge Fallon also has already determined that Primary Counsel are entitled to conduct discovery as a matter of basic Due Process.  That issue was fully briefed by the parties and summarily disposed of without the need for even a Hearing, much less oral argument. See Doc. 20410.

6.    In accordance with the Court's directive, Primary Counsel seek discovery of information relevant to calculating the size of the fee award requested by the FC for the common benefit, in particular information that relates to the PSC's "time and expense submissions, procedures, and the relevant work of Philip [Garrett], CPA." Doc. 20410.

7.    Considering the extent and the circumstances of the FC's request, the scope of discovery sought by Primary Counsel is hardly disproportionate to the expense and burden on the PSC, which has no contractual or statutory rights and was obligated to maintain evidence to support its entitlement to common benefit fees in any event.

B.  **Scope of Discovery**:  In accordance with Judge Fallon's Order (Doc. 20410), Primary Counsel seek the following information regarding the "time and expense" submissions allegedly attributable to the common benefit, the "procedures" utilized by the FC for assigning value to the common benefit in this instance, and the relevant work of Phillip Garrett relating thereto:[4]

1.    An accounting of all fees subject to distribution for common benefit work and expenses claimed;

---

[4] This Discovery Plan addresses the proposed subjects of discovery, not the actual discovery devices. *See* the proposed Notice of 30(b)(6) Deposition & Requests for Production attached as Exhibit B to *Primary Counsel's Motion for a Case Management Order Providing for Discovery, the Unsealing of Records Regarding Common Benefit Fees, and the Appointment of a Special Master* (Doc. 20394-3).

2.   The particulars of the common benefit work and expenses claimed, including whether said work and expenses were necessary, accurate and/or encompass the prosecution of Taishan (or other non-settling Defendants) claims;

3.   Any agreements entered into with the FC and/or PSC and Primary Counsel regarding fees and costs;

4.   Work performed by third parties (i.e., non PSC members and/or their associates and/or their staff) that is being claimed as common benefit work or a common benefit bestowed upon the class, the alleged basis for those assignments and entitlement to compensation for said work;

5.   The PSC's alleged entitlement to and accounting of $10,000,000.00 (Ten million dollars) from the proceeds of the settlements with Knauf and other settling defendants (hereinafter, collectively referred to as "Knauf") to fund:

    a.  prosecution of claims against Taishan and/or other non-settling defendants, including but not limited to "the commitment that the PSC made to the Knauf Defendants in connection with the Knauf Settlement to continue to prosecute the class claims against the Taishan Defendants. . . ." (*The Fee Committee's Omnibus Response to Objections to the Fee Committee's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F)*, Doc. 20384-2, p. 10, fn.7); and

    b.  work unrelated to prosecution, settlement and/or administration of Knauf claims;

6.   The PSC's expenses and the amount reimbursed to date, including the PSC's shared and held cost and expense reimbursements;

7.   The PSC's knowledge of any and all work performed by privately retained counsel:

    a.   at the time the PSC negotiated the Knauf attorneys' fee and cost settlement sum, which was signed on or about December 20, 2011 and at the time the second settlement was signed on or about August 12, 2013;

    b.   in administering the claims necessitated by the settlements; and/or

    c.   to date;

8.   All time and expense submissions related to or resulting from the lawsuit styled, *Cataphora, Inc. v. Parker, et al.* in the Northern District of California (3:09-cv-05749), including the facts and circumstances surrounding and leading up to that lawsuit, the outcome of the lawsuit whether by settlement or otherwise, and the PSC's decisions affecting the common benefit relating thereto;

9.   The PSC/FC's procedure for computing the proposed allocation of fees as set forth in the *Memorandum in Support of the Fee Committee's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F)* (Doc. 20293-1);

10.   The PSC's calculation and various components of the total benefit conferred by the settlements entered in this MDL which it alleges to be $1,120,313,305.90;

11.   The PSC's calculation and various components of the total benefit provided by individual counsel (i.e., $658,713,629.62);

12.   Funds paid to pro se claimants and whether those funds are included in the total benefit provided by individual counsel (i.e., $658,713,629.62);

13. The basis(es) for the attorneys' fee negotiated by the PSC in each of the settlement agreements reached as a result of this MDL and the PSC's belief that the fee was fair and adequate to compensate all fees, costs, and expenses of common benefit counsel, and fees of primary counsel for the work performed;

14. The value placed by the PSC on the various settlements entered and approved in this MDL;

15. The approval of, negotiation of and authority to enter the *Memorandum of Understanding* (Doc. 20381-1) and resulting reimbursement of attorneys' fees to Various Homebuilders from those settlements identified in the *Memorandum of Understanding*;

16. The total square footage of all properties known to the PSC to contain Knauf drywall at the time the first Knauf settlement was signed on or about December 20, 2011 and at the time of the second Knauf settlement signed on or about August 12, 2013;

17. Information and documents submitted to, received from, prepared by and/or exchanged with Philip Garrett;

18. Voluntary assessments deposited into the registry of the court and disclosed to Philip Garrett pursuant to Court Order dated March 24, 2011 (Doc. 8389);

19. Accounting of the Knauf claims that were settled directly with builder or other contractors;

20. The Other Loss Fund, including but not limited to the administration of and the PSC's valuation and accounting of the Other Loss Fund and claims made against the Other Loss Fund at the time the first Knauf settlement was signed on or about December 20, 2011 and an accounting of the fund which comprises the Other Loss Fund; and

21.    The prosecution of contempt proceedings against Taishan and/or other non-settling Defendants and the funds received pursuant thereto.

C.    **Unsealing of Records**:  Many of the documents regarding common benefit time and expenses have been filed under seal. The PSC/FC and Primary Counsel shall, within seven (7) days of your issuance of a discovery plan, submit a joint motion to unseal all records relating to the subjects set forth in subpart B of this proposed discovery plan.

D.    **Completion of Discovery**:  Discovery shall be completed within ninety (90) days of the PSC/FC providing documents requested by Primary Counsel.

E.    **Additional Briefing**:  Within twenty-one (21) days of the completion of discovery, the PSC/FC and Primary Counsel shall submit to you any additional briefing they deem appropriate and/or that you request to make a recommendation.

F.    **Official Record**:  Upon your final recommendation regarding the allocation of fees, the parties shall jointly file, *in globo*, with the District Court all correspondence, briefs, reports, recommendations, and submissions to and/or from you and/or transcripts in connection with the proceeding before you.  Such documents shall form a part of the official court record.

G.    **Interrogatories**:  Primary Counsel shall be entitled to twenty-five (25) interrogatories, excluding subparts.

H.    **Depositions**:  Primary counsel shall be entitled to take the following depositions:

1.    30(b)(6) deposition of the PSC;

2.    30(b)(6) deposition of the FC;

3.    Depositions of all PSC/FC members, including but not limited to:

a.    Russ Herman (Plaintiffs' Liaison Counsel, Co-Chair/Secretary of FC and PSC member) and

b.    Arnold Levin (Lead Counsel, FC Chair and PSC member);

4.  Sandra Dugan

5.  Fred Longer

6.  Phillip Garrett, the Court-appointed CPA; and

7.  30(b)(6) deposition of BrownGreer, PC, the Court-appointed settlement administrator.

I.  **Request for Production of Documents**:  Primary Counsel shall be allowed to request and/or subpoena any and all documents relevant to the subjects identified in subpart B, including those relevant documents filed under seal;

J.  **Production of Electronically Stored Information ("ESI") and Other Information**:

1.  <u>Relevant information</u>: While not aware of the full extent of relevant information that may be stored electronically, Primary Counsel contemplate that most of the relevant information is stored electronically.

2.  <u>Form of production/preservation</u>: ESI shall be produced in the native format of the original document.  To the extent the document must be produced as an image:

    a.  The file produced should maintain the integrity of all source, application, embedded, related file system metadata, and extracted text.

    b.  No alteration shall be made to file names or extensions for responsive native electronic files. Electronic mail should include attachments.

    c.  ESI shall be produced in word searchable (OCR'd) TIFF files, Bates numbered with the metadata as set forth on Attachment A and in the format set forth on Attachment B

3.  <u>Media Format</u>:  ESI shall be produced on CD ROMs, DVD-Rs, external hard drives, flash drives or uploaded via secured FTP, as the volume of data requires.

We look forward to working with you in this matter.

Sincerely,

**FAIRCLOTH, MELTON & SOBEL, LLC**

By:   /s/ Jimmy R. Faircloth, Jr.
    Jimmy R. Faircloth, Jr.
    jfaircloth@fairclothlaw.com
    Brook L. Villa
    bvilla@fairclothlaw.com
    Franklin "Drew" Hoffmann
    dhoffmann@fairclothlaw.com
    301 Main Street, Suite 920
    Baton Rouge, LA 70801
    Phone: (225) 343-9535
    Fax: (225) 343-9538

    *Attorneys for Parker Waichman LLP*

**BARON & BUDD, P.C.**

By:   /s/ Russell W. Budd
    Russell W. Budd
    rbudd@baronbudd.com
    S. Ann Saucer
    asaucer@baronbudd.com
    3102 Oak Lawn Avenue, Suite 1100
    Dallas, TX 75219
    Phone: 214-521-3605
    Fax: 214-520-1181

**MCCALLUM, HOAGLUND, COOK & IRBY, LLP**

By:   /s/ Eric D. Hoaglund
    Eric D. Hoaglund
    ehoaglund@mhcilaw.com
    905 Montgomery Highway, Suite 201
    Vestavia Hills, Alabama 35216
    Phone: (205) 824-7767
    Fax: (205) 824-7768

**LISKA, EXNICIOS & NUNGESSER**

By:   /s/ Val Patrick Exnicios
    Val Patrick Exnicios, Esq.
    vpexnicios@exnicioslaw.com
    1515 Poydras Street
    14th Floor, Ste. 1400
    New Orleans, LA. 70112
    Phone: (504) 410-9611
    Fax: (504) 410-9937
    Cell: (504) 495-9666

    *Attorneys for Whitfield Bryson & Mason LLP, Pendley Baudin & Coffin, Rhine Law Firm, and Luckey & Mullins*

**ALLISON GRANT, P.A.**

By:   /s/ Allison Grant
    Allison Grant
    agrant@allisongrantpa.com
    14 SE 4th St
    Boca Raton, FL 33432-6111
    Phone: 561-994-9646
    Fax: 561-431-4627

**MILSTEIN, ADELMAN, JACKSON, FAIRCHILD & WADE, LLP**

By:   /s/ Mark Milstein
    Mark Milstein
    mmilstein@majfw.com
    10250 Constellation Blvd., 14th Floor
    Los Angeles, CA 90067
    Phone: (310) 396-9600
    Fax: (310) 396-9635

**GIEGER, LABORDE & LAPEROUSE, LLC**

By: ___/s/ *Victoria E. Emmerling*_____
    Andrew A. Braun
    abraun@glllaw.com
    Victoria E. Emmerling MI
    temmerling@glllaw.com
    701 Poydras Street, Suite 4800
    New Orleans, Louisiana 70139-4800
    Phone: (504) 561-0400
    Fax: (504) 561-1011

    *Attorneys for Morris Bart, L.L.C.*

**ROBERTS AND DURKEE, LLP**

By: ___/s/ *C. David Durkee*_____
    C. David Durkee
    durkee@rdlawnet.com
    2665 South Bayshore Drive
    Suite 300
    Coconut Grove, FL  33133
    Phone (305) 442-1700
    Fax: (305)442-2559

## Attachment A: ESI Metadata and Coding Fields

| Field Name | Populated For (Email, Edoc, or Both) | Field Description |
|---|---|---|
| ProdBeg | Both | Control Numbers |
| ProdEnd | Both | Control Numbers |
| BegAttach | Both | Control Numbers (First production bates number of the first document of the family) |
| EndAttach | Both | Control Numbers (Last production bates number of the last document of the family) |
| PgCount | Both | Page Count |
| Custodian | Both | Custodian name (ex. John Doe) |
| Native File | Both | Native File Link |
| EmailSubject | Email | Subject line of email |
| DateSent | Email | Date email was sent |
| DateMod | Edoc | Date the document was modified |
| TimeSent | Email | Time email was sent |
| To | Email | All recipients that were included on the "To" line of the email |
| From | Email | The name and email address of the sender of the email |
| CC | Email | All recipients that were included on the "CC" line of the email |
| BCC | Email | All recipients that were included on the "BCC" line of the email |
| Attach | Email | The file name(s) of the attached documents |
| DateCreated | Edoc | Date the document was created |
| FileName | Both | File name of the edoc or email (for emails which are not attachments to another email this is the subject line of the email with its applicable extension) |
| Title | Edoc | Any value populated in the Title field of the document properties |
| Subject | Edoc | Any value populated in the Subject field of the document properties |
| Author | Edoc | Any value populated in the Author field of the document properties |
| DocExt | Both | File extension of the document |
| Text | Both | Text extracted from the email or edoc |

| Confidentiality | Both | Indicates if document has been designated as "Confidential" or "Highly Confidential" under the Protective Order |
|---|---|---|
| FileSize | Both | File size |
| Source | Both | Name of Party producing document |
| TextPath | Both | Filepath for OCR or extracted text files |
| MSGID | Email | Where applicable, Email system identifier assigned by the host email system. This value is extracted from parent message during processing |
| PST_OST_Filename | Email | Where applicable, Filename of PST or OST container from which email was collected |
| FilePath | Edoc | Original file/path of the location where the item resided at the time of preservation. This should include location, file name, and file source extension |
| Folder | Email | Where applicable, Folder location of the email within the PST or OST |
| AttachBates | Email | Bates numbers of the first pages of each attachment, separated by semi-colons |
| AttachCount | Email | Number of email attachments |
| AttachNames | Email | Names of the attachments as listed in the email, separated by semi-colons |
| DateReceived | Email | Date received |
| OutlookItemType | Email | Where applicable, Outlook item type, e.g., email, calendar item, contact, etc. |
| LastModBy | Edoc | Where applicable, Last person who modified a document |
| DocumentType | Both | Email, Edoc or Physical (for scanned documents) |
| HashValue | Both | MD5 or SHA1 hash value |
| Redacted | Both | "yes" if document was redacted |
| ProdVol | Both | Name of production media |
| Other Paths | Both | The full file paths, including file names, or in the case of emails, the folder names, of each copy of the document not being produced from this custodian, separate by semi-colons. |
| KrollControlNo | Both | Only for Clone Documents |

## Attachment B: File Formats

<u>Image Load Files</u>

- The name of the image load file should mirror the name of the delivery volume, and should have an .LFP extension (i.e., ABC001.LFP)

- The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.)

- There should be one row in the load file per TIFF image.

- Every image in the delivery volume should be contained in the image load file.

- The image key should be named the same as bates number of the page.

- Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.), *i.e.*, a separate volume should be created for each piece of media delivered.

- Files that are the first page of a logical document should include a "D" where appropriate. Files that are the first page of an attachment to an e-mail should include a "C" where appropriate.  Subsequent pages of all documents (regular document, e-mail, or attachment) should include a blank in the appropriate position.

```
IM,VN00000001,D,0,@29502601;295026001\0000;VN00000001.TIF;2
IM,VN00000002, ,0,@29502601;295026001\0000;VN00000002.TIF;2
IM,VN00000003, ,0,@29502601;295026001\0000;VN00000003.TIF;2
IM,VN00000004, ,0,@29502601;295026001\0000;VN00000004.TIF;2
IM,VN00000005,D,0,@29502601;295026001\0000;VN00000005.TIF;2
IM,VN00000006, ,0,@29502601;295026001\0000;VN00000006.TIF;2
IM,VN00000007, ,0,@29502601;295026001\0000;VN00000007.TIF;2
IM,VN00000008, ,0,@29502601;295026001\0000;VN00000008.TIF;2
IM,VN00000009,D,0,@29502601;295026001\0000;VN00000009.TIF;2
IM,VN00000010, ,0,@29502601;295026001\0000;VN00000010.TIF;2
```

Opticon Delimited File:

```
MSC000001,MSC001,D:\IMAGES\001\MSC000001.TIF,Y,,,3
MSC000002,MSC001,D:\IMAGES\001\MSC000002.TIF,Y,,,,
MSC000003,MSC001,D:\IMAGES\001\MSC000003.TIF,Y,,,,
MSC000004,MSC001,D:\IMAGES\001\MSC000004.TIF,Y,,,2
MSC000005,MSC001,D:\IMAGES\001\MSC000005.TIF,Y,,,,
```

Summation DII File:

```
@C HASIMAGE YES
@T EPRG036023 2
@D D:\FILES\PRODUCTION\CD0004\VOL0011\Images
```

EPRG036023.tif
EPRG036024.tif

Concordance Delimited Files:

þBegDocþþEndDocþþBegAttachþþEndAttachþþCustodianþ

- The data load file should use standard Concordance delimiters:

  o Comma – ¶ (ASCII 20)

  o Quote – þ (ASCII 254)

  o Newline – ® (ASCII174)

- The first record should contain the field names in the order of the data;

- All date fields should be produced in mm/dd/yyyy format;

- Use carriage-return line-feed to indicate the start of the next record;

- Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.); a separate volume should be created for each piece of media delivered;

- The name of the data load file should mirror the name of the delivery volume, and should have a .DAT extension (i.e., ABC001.DAT); and

- The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.).

## Debbie Murphy

| | |
|---|---|
| **From:** | Dan Balhoff <balhoff@pbmbllc.com> |
| **Sent:** | Wednesday, August 10, 2016 10:57 PM |
| **To:** | Val Exnicios; 'Rick Holston'; 'Kerry J. Miller'; gev@holstonvaughan.com; 'Mandy Barton'; 'John Teague'; 'Richard Taylor'; 'Kasie Braswell'; 'Merino, Rene'; rherman@hhklawfirm.com; Arnold Levin; 'Lenny Davis'; 'Steve Martino'; 'Marci Jones'; 'Jimmy Faircloth'; 'Ann Saucer'; 'Gary Mason'; 'Christopher L Coffin'; 'Daniel Bryson'; 'Joel Rhine'; 'Gerald E Meunier'; 'Allison Grant'; 'Holly Werkema'; 'Russell Budd' |
| **Subject:** | CDW fee issue |

Friends:

As you know, the Court has appointed me as Special Master with respect to the pending attorney fee issues.  Here is an update:

- I have downloaded and have begun to review the following public record documents: 20293, 20309, 20336, 20337, 20338, 20340, 20341, 20343, 20344, 20346, 20347, 20348, 20349, 20350, 20351, 20354, 20355, 20356, 20357, 20376, 20380, 20382, 20383, 20384, 20390, 20392, 20394, 20396, 20397, 20398, 20407, 20411, 20413, 20415, 20417, 20430, 20433, 20435, and 20436.

- I do not have the relevant sealed documents.  By copy of this email, I am asking Lenny Davis to send me the sealed documents associated with the following record documents:  20293, 20396, 20398, and 20417.

- If anyone is aware of any filed documents (whether sealed or unsealed) that I should review other than those listed above, please forward them to me (and please send an email everyone copied on this email describing what you are sending to me).

- If, in the future, you file additional materials in the record that you would like me to consider, please simultaneously forward those materials to me by email.

- Although the Court has already appointed me, I intend to ask the Court to modify the order to clarify a few issues in accordance with Rule 53.  The most important of these: (1) an authorization for me to make ex parte communications; and (2) setting my compensation at $500/hour plus expenses.  Please let me know if you object to either of these provisions.

- I have met with Philip Garrett, and he has now given me access to his data.

- I have reviewed the motion to appoint Val Exnicios and Jimmy Faircloth as the objectors' co-liaison counsel (#20407).  It would be helpful to me to have liaison counsel speaking for the objectors.  I see, however, that there is some question about their potential compensation.  I hope to resolve this within the next week.

- Philip Garrett is continuing to submit invoices for his services (as he should).  I would like counsel to reflect upon whether the current responsibility for paying his invoices should be shared more broadly among the firms.  Please let me know your thoughts concerning this over the next few days.

- Once I have resolved the liaison counsel issue, I want to consider the appropriate concerning the scope of discovery.  The suit record (and by that I mean the entire suit record, not just the documents listed above), which is voluminous, along with Phil Garrett's database will provide a firm evidentiary foundation for my recommendation and Judge Fallon's decision.  I intend to give everyone the chance to conduct necessary and

appropriate discovery.  Nevertheless, I want everyone to reflect upon whether we can streamline proposed discovery to avoid unnecessary expenditure of time and money.

If I have missed any points that I need to address at this time, please let me know.

Thank you.

Dan Balhoff

---

**Attention:**
The information contained in this message and or attachments is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any system and destroy any copies.

**Thank You.**

---

# Debbie Murphy

| | |
|---|---|
| **From:** | Dan Balhoff <balhoff@pbmbllc.com> |
| **Sent:** | Monday, August 29, 2016 11:46 AM |
| **To:** | Val Exnicios; 'Rick Holston'; 'Kerry J. Miller'; gev@holstonvaughan.com; 'Mandy Barton'; 'John Teague'; 'Richard Taylor'; 'Kasie Braswell'; 'Merino, Rene'; rherman@hhklawfirm.com; Arnold Levin; 'Lenny Davis'; 'Steve Martino'; 'Marci Jones'; 'Jimmy Faircloth'; 'Ann Saucer'; 'Gary Mason'; 'Christopher L Coffin'; 'Daniel Bryson'; 'Joel Rhine'; 'Gerald E Meunier'; 'Allison Grant'; 'Holly Werkema'; 'Russell Budd' |
| **Subject:** | CDW fee issue |

Friends:

- I am hereby appointing Val Exnicios and Jimmy Faircloth as co-liaison counsel for the objectors. In so doing, I recognize that some of you have interests that are not entirely aligned with either the Fee Committee or co-liaison counsel. Therefore, I will reserve judgment concerning the third paragraph of co-liaison counsel's proposed order (R. Doc. 20407-1) (concerning compensation). I plan to circulate a written order reflecting this decision. In fact, I plan to circulate written dispositions, whether by order or recommendation, of all pending motions, so that you may ask the Court to review them if you choose to do so.

- Even though I am appointing co-liaison counsel, all recipients of this email should feel free to contact me if you have any thoughts that you would like to share with me. My cell phone number is 225-266-7881, and my email address is balhoff@pbmbllc.com.

- I am asking co-liaison counsel to determine if there is anyone who should receive this email that is missing from the recipient list. If so, I am asking co-liaison counsel to reach out to those individuals, and to let me know who they are.

- I anticipate that the Court will file a supplemental order in the next few days which clarifies my duties and authority in this matter. Among other things, I anticipate that the order will specifically allow me to review sealed materials and decide whether and under what circumstances such material will be shared with others.

- After I review the sealed material, I will be in a better position to frame the appropriate scope of written discovery.

- The parties undoubtedly will ask Philip Garrett to produce information as part of the discovery process. I intend to speak with Mr. Garrett about segregating the time that he devotes to this task. I have not yet decided whether to tax Mr. Garrett's costs (including his time) to the requesting party. I am interested in your thoughts concerning whether I should do so.

- I do not plan to allow depositions until at the parties have had a chance to conduct at least some written discovery (assuming written discovery is appropriate).

Thank you.

Dan Balhoff

---

**Attention:**
The information contained in this message and or attachments is intended only for the person or entity to which it is

1

addressed and may contain confidential and/or privileged material.  Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any system and destroy any copies.

**Thank You.**

## Debbie Murphy

| | |
|---|---|
| **From:** | Val Exnicios <vpexnicios@exnicioslaw.com> |
| **Sent:** | Monday, August 29, 2016 12:08 PM |
| **To:** | 'Dan Balhoff'; 'Rick Holston'; 'Kerry J. Miller'; gev@holstonvaughan.com; 'Mandy Barton'; 'John Teague'; 'Richard Taylor'; 'Kasie Braswell'; 'Merino, Rene'; rherman@hhklawfirm.com; Arnold Levin; 'Lenny Davis'; 'Steve Martino'; 'Marci Jones'; 'Jimmy Faircloth'; 'Ann Saucer'; 'Gary Mason'; 'Christopher L Coffin'; 'Daniel Bryson'; 'Joel Rhine'; 'Gerald E Meunier'; 'Allison Grant'; 'Holly Werkema'; 'Russell Budd' |
| **Subject:** | RE: CDW fee issue |

Dear SM Balhoff: Thank you! Jimmy and I will compare our list of objectors to your email distribution list above and reach out to any who did not receive your email and forward it to them. We look forward to working with you and with all Counsel towards a speedy and just discovery process so that you and Judge Fallon can have the information necessary to make an informed recommendation/determination of the appropriate percentage of primary counsel's fees that should be awarded to common benefit counsel for their work that benefited our clients, the CDW victims. Val

```
Val P. Exnicios, Esq.
Liska, Exnicios & Nungesser
Attorneys-At-Law
1515 Poydras Street, Suite 1400
New Orleans, LA 70112
Telephone: (504) 410-9611
Facsimile: (504) 410-9937
Cell: (504) 495-9666
```

The information contained in this email message is protected under the Electronic Communications Privacy Act, 18 U.S.C. 2310-2321, and may also be protected by attorney-client and/or the attorney/work product privileges. It is intended only for the use of the individual named above and the privileges are not waived by virtue of this having been sent by email. If the person actually receiving this email or any other reader of the email is not the named recipient, any use, dissemination, distribution, or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at 504-410-9611 and return the original message to us via email and must delete it from his or her computer.

---

**From:** Dan Balhoff [mailto:balhoff@pbmbllc.com]
**Sent:** Monday, August 29, 2016 10:46 AM
**To:** Val Exnicios; 'Rick Holston'; 'Kerry J. Miller'; gev@holstonvaughan.com; 'Mandy Barton'; 'John Teague'; 'Richard Taylor'; 'Kasie Braswell'; 'Merino, Rene'; rherman@hhklawfirm.com; 'Arnold Levin'; 'Lenny Davis'; 'Steve Martino'; 'Marci Jones'; 'Jimmy Faircloth'; 'Ann Saucer'; 'Gary Mason'; 'Christopher L Coffin'; 'Daniel Bryson'; 'Joel Rhine'; 'Gerald E Meunier'; 'Allison Grant'; 'Holly Werkema'; 'Russell Budd'
**Subject:** CDW fee issue

Friends:

- I am hereby appointing Val Exnicios and Jimmy Faircloth as co-liaison counsel for the objectors. In so doing, I recognize that some of you have interests that are not entirely aligned with either the Fee Committee or co-liaison counsel. Therefore, I will reserve judgment concerning the third paragraph of co-liaison counsel's proposed order (R. Doc. 20407-1) (concerning compensation). I plan to circulate a written order reflecting this decision. In fact, I plan to circulate written dispositions, whether by order or recommendation, of all pending motions, so that you may ask the Court to review them if you choose to do so.

- Even though I am appointing co-liaison counsel, all recipients of this email should feel free to contact me if you have any thoughts that you would like to share with me.  My cell phone number is 225-266-7881, and my email address is balhoff@pbmbllc.com.

- I am asking co-liaison counsel to determine if there is anyone who should receive this email that is missing from the recipient list.  If so, I am asking co-liaison counsel to reach out to those individuals, and to let me know who they are.

- I anticipate that the Court will file a supplemental order in the next few days which clarifies my duties and authority in this matter.  Among other things, I anticipate that the order will specifically allow me to review sealed materials and decide whether and under what circumstances such material will be shared with others.

- After I review the sealed material, I will be in a better position to frame the appropriate scope of written discovery.

- The parties undoubtedly will ask Philip Garrett to produce information as part of the discovery process.  I intend to speak with Mr. Garrett about segregating the time that he devotes to this task.  I have not yet decided whether to tax Mr. Garrett's costs (including his time) to the requesting party.  I am interested in your thoughts concerning whether I should do so.

- I do not plan to allow depositions until at the parties have had a chance to conduct at least some written discovery (assuming written discovery is appropriate).

Thank you.

Dan Balhoff

---

**Attention:**
The information contained in this message and or attachments is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any system and destroy any copies.

**Thank You.**

---

**Debbie Murphy**

| | |
|---|---|
| **From:** | Dan Balhoff <balhoff@pbmbllc.com> |
| **Sent:** | Sunday, September 18, 2016 10:49 PM |
| **To:** | Lenny Davis; 'Val Exnicios'; 'Rick Holston'; 'Kerry J. Miller'; gev@holstonvaughan.com; 'Mandy Barton'; 'John Teague'; 'Richard Taylor'; 'Kasie Braswell'; 'Merino, Rene'; Russ Herman; Arnold Levin; 'Steve Martino'; 'Marci Jones'; 'Jimmy Faircloth'; 'Ann Saucer'; 'Gary Mason'; 'Christopher L Coffin'; 'Daniel Bryson'; 'Joel Rhine'; 'Gerald E Meunier'; 'Allison Grant'; 'Holly Werkema'; 'Russell Budd' |
| **Cc:** | 'Brandy Sergi' |
| **Subject:** | RE: CDW fee issue |

Friends:

I spoke with Judge Fallon last week concerning process issues.  I then spoke with Val Exnicios and Jimmy Faircloth very briefly and told them that I wanted to circulate a case management order this weekend.  After reading Lenny Davis's email, I am willing to hold off until next weekend so that the parties may submit suggestions.

Thank you.

Dan Balhoff

---

**From:** Lenny Davis [mailto:LDAVIS@hhklawfirm.com]
**Sent:** Friday, September 16, 2016 2:19 PM
**To:** 'Val Exnicios' <vpexnicios@exnicioslaw.com>; Dan Balhoff <balhoff@pbmbllc.com>; 'Rick Holston' <rhh@holstonvaughan.com>; 'Kerry J. Miller' <kjmiller@bakerdonelson.com>; gev@holstonvaughan.com; 'Mandy Barton' <kab@bartonlawpractice.com>; 'John Teague' <jmt@johnteaguelaw.com>; 'Richard Taylor' <RichardTaylor@taylormartino.com>; 'Kasie Braswell' <kasie@braswellmurphy.com>; 'Merino, Rene' <rmerino@bakerdonelson.com>; Russ Herman <RHERMAN@hhklawfirm.com>; 'Arnold Levin' <alevin@lfsblaw.com>; 'Steve Martino' <SteveMartino@taylormartino.com>; 'Marci Jones' <m.jones@holstonvaughan.com>; 'Jimmy Faircloth' <jfaircloth@fairclothlaw.com>; 'Ann Saucer' <asaucer@baronbudd.com>; 'Gary Mason' <GMason@wbmllp.com>; 'Christopher L Coffin' <ccoffin@pbclawfirm.com>; 'Daniel Bryson' <Dan@wbmllp.com>; 'Joel Rhine' <jrr@rhinelawfirm.com>; 'Gerald E Meunier' <gmeunier@gainsben.com>; 'Allison Grant' <agrant@allisongrantpa.com>; 'Holly Werkema' <hwerkema@baronbudd.com>; 'Russell Budd' <RBUDD@BARONBUDD.COM>
**Cc:** 'Brandy Sergi' <bsergi@exnicioslaw.com>
**Subject:** RE: CDW fee issue

We received the below email. we recommend that each side provide by Friday September 23,2016 a proposed case management order to the Special master for consideration. We believe then the Special Master can see the respective sides views and the matter can proceed. Thanks and have a good weekend

Leonard A. Davis
Attorney at Law
Herman, Herman & Katz, L.L.C.
Herman  Gerel LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113

504-581-4892
504-561-6024(fax)

*This e-mail message contains confidential, privileged information intended solely for the addressee. Please do not read, copy, or disseminate it unless you are the addressee. If you have received it in error, please call us (collect) immediately at (504) 581-4892 and ask to speak with the message sender. Also, we would appreciate your forwarding the message back to us and deleting it from your system. Thank you.*

CONFIDENTIAL ATTORNEY WORK PRODUCT

---

**From:** Val Exnicios [mailto:vpexnicios@exnicioslaw.com]
**Sent:** Friday, September 16, 2016 10:14 AM
**To:** 'Dan Balhoff'; 'Rick Holston'; 'Kerry J. Miller'; gev@holstonvaughan.com; 'Mandy Barton'; 'John Teague'; 'Richard Taylor'; 'Kasie Braswell'; 'Merino, Rene'; Russ Herman; 'Arnold Levin'; Lenny Davis; 'Steve Martino'; 'Marci Jones'; 'Jimmy Faircloth'; 'Ann Saucer'; 'Gary Mason'; 'Christopher L Coffin'; 'Daniel Bryson'; 'Joel Rhine'; 'Gerald E Meunier'; 'Allison Grant'; 'Holly Werkema'; 'Russell Budd'
**Cc:** 'Val Exnicios'; 'Brandy Sergi'
**Subject:** RE: CDW fee issue

Dear Dan: This will confirm your teleconference this morning with Jimmy and I wherein you advised that you had recently conferred with His Honor Judge Fallon regarding the discovery sought in this matter and that you anticipated issuing an Order regarding the scope of discovery potentially this weekend.

    We sincerely appreciate your efforts to move this matter along as all are certainly eager to commence the discovery process in furtherance of the goal of securing the information necessary for you and Judge Fallon to make an informed recommendation/decision. We wish you a great and pleasant weekend and GO TIGERS!  Val & Jimmy

Val Patrick Exnicios, Esq.
Liska, Exnicios & Nungesser
Attorneys-At-Law
1515 Poydras Street
14th Floor, Ste. 1400
New Orleans, LA.  70112
Telephone: (504) 410-9611
Facsimile: (504) 410-9937
Cell: (504) 495-9666

This communication may contain information that is legally privileged, confidential or exempt from disclosure.  If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited.  Anyone who receives this message in error should notify the sender immediately by return e-mail and must delete it from his or her computer.  **Please note and be advised that Val P. Exnicios and all attorneys and support staff of Liska, Exnicios & Nungesser utilize email transmission as an ancillary support of traditional fax and US 1st Class Mail communication.  Email is not necessarily checked or reviewed at regular intervals and as such, can not and should not be relied upon for primary communication, service of pleadings, motions, and/or the like.**

---

**From:** Dan Balhoff [mailto:balhoff@pbmbllc.com]
**Sent:** Monday, August 29, 2016 10:46 AM
**To:** Val Exnicios; 'Rick Holston'; 'Kerry J. Miller'; gev@holstonvaughan.com; 'Mandy Barton'; 'John Teague'; 'Richard Taylor'; 'Kasie Braswell'; 'Merino, Rene'; rherman@hhklawfirm.com; 'Arnold Levin'; 'Lenny Davis'; 'Steve Martino'; 'Marci Jones'; 'Jimmy Faircloth'; 'Ann Saucer'; 'Gary Mason'; 'Christopher L Coffin'; 'Daniel Bryson'; 'Joel Rhine'; 'Gerald E Meunier'; 'Allison Grant'; 'Holly Werkema'; 'Russell Budd'
**Subject:** CDW fee issue

Friends:

- I am hereby appointing Val Exnicios and Jimmy Faircloth as co-liaison counsel for the objectors.  In so doing, I recognize that some of you have interests that are not entirely aligned with either the Fee Committee or co-liaison counsel.   Therefore, I will reserve judgment concerning the third paragraph of co-liaison counsel's proposed order (R. Doc. 20407-1) (concerning compensation).  I plan to circulate a written order reflecting this decision.  In fact, I plan to circulate written dispositions, whether by order or recommendation, of all pending motions, so that you may ask the Court to review them if you choose to do so.

- Even though I am appointing co-liaison counsel, all recipients of this email should feel free to contact me if you have any thoughts that you would like to share with me.  My cell phone number is 225-266-7881, and my email address is balhoff@pbmbllc.com.

- I am asking co-liaison counsel to determine if there is anyone who should receive this email that is missing from the recipient list.  If so, I am asking co-liaison counsel to reach out to those individuals, and to let me know who they are.

- I anticipate that the Court will file a supplemental order in the next few days which clarifies my duties and authority in this matter.  Among other things, I anticipate that the order will specifically allow me to review sealed materials and decide whether and under what circumstances such material will be shared with others.

- After I review the sealed material, I will be in a better position to frame the appropriate scope of written discovery.

- The parties undoubtedly will ask Philip Garrett to produce information as part of the discovery process.  I intend to speak with Mr. Garrett about segregating the time that he devotes to this task.  I have not yet decided whether to tax Mr. Garrett's costs (including his time) to the requesting party.  I am interested in your thoughts concerning whether I should do so.

- I do not plan to allow depositions until at the parties have had a chance to conduct at least some written discovery (assuming written discovery is appropriate).

Thank you.

Dan Balhoff

---

**Attention:**
The information contained in this message and or attachments is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any system and destroy any copies.

**Thank You.**

---

**Attention:**
The information contained in this message and or attachments is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is

prohibited. If you received this in error, please contact the sender and delete the material from any system and destroy any copies.

**Thank You.**

---

# Debbie Murphy

| | |
|---|---|
| **From:** | Jimmy Faircloth <jfaircloth@fairclothlaw.com> |
| **Sent:** | Tuesday, September 20, 2016 10:19 AM |
| **To:** | Dan Balhoff; Lenny Davis; 'Val Exnicios'; 'Rick Holston'; 'Kerry J. Miller'; gev@holstonvaughan.com; 'Mandy Barton'; 'John Teague'; 'Richard Taylor'; 'Kasie Braswell'; 'Merino, Rene'; Russ Herman; Arnold Levin; 'Steve Martino'; 'Marci Jones'; 'Ann Saucer'; 'Gary Mason'; 'Christopher L Coffin'; 'Daniel Bryson'; 'Joel Rhine'; 'Gerald E Meunier'; 'Allison Grant'; 'Holly Werkema'; 'Russell Budd' |
| **Subject:** | RE: CDW fee issue |

Special Master Balhof,

We appreciate your patience in allowing the parties a full and complete opportunity to state their positions regarding the course of discovery, but we disagree with Mr. Levin's suggestion that additional time is needed to argue about threshold issues that have been fully aired.  Interested parties have expressed their "respective views" many times on the need for and scope of discovery in written submissions to you and Judge Fallon, as well as in personal meetings and telephone calls with you. Our concern regarding the pace of this process is based on our desire to conduct adequate discovery prior to the anticipated hearing on the FC's Motion to Allocate so that objecting parties will be able to offer a meaningful challenge.  When we met, we discussed a potential schedule aimed toward an early 2017 hearing date.  Given that we have yet to even obtain documents – not even the time sheets or transcripts of PSC meetings - that target now seems overly ambitious.

To recap, on July 17, Objecting Primary Counsel filed their Motion For A Case Management Order Providing For Discovery, The Unsealing Of Records Regarding Common Benefit Fees, And The Appointment Of A Special Master, which included an attached 30(b)(6) Notice.  Our Memorandum to that motion included a detailed discussion of the areas we believe warrant discovery.  On July 29, at your request and in anticipation of our meeting at your office, Objecting Primary Counsel submitted to you a "Proposed Discovery Plan" detailing our position regarding the scope, timing, and format of discovery.  During the week of August 22 (delayed because of the flood), each side met with you, privately, to share their respective views regarding discovery. Finally, in follow-up to our meeting, on August 26 we submitted to you a list of documents that we consider necessary to initiating this process.  Unless you request otherwise, we will stand on our existing submissions, copies of which are attached.

Finally, we respectfully request that your case management order identify the particular motions and issues that are on the table for your consideration (e.g., Motion for Immediate Disbursement of Undisputed Fees, Doc 20434).  We do not want to burden you with questions, or gripes, about issues that are not before you.  Thank you,

Jimmy

Jimmy R. Faircloth, Jr.
**Faircloth, Melton & Sobel, LLC**
**jfaircloth@fairclothlaw.com**

_Alexandria Office_:
105 Yorktown Drive
Alexandria, LA  71303
Phone 318-619-7755
Fax 318-619-7744

_Baton Rouge Office_:

1

One American Place
301 Main St., Ste. 920
Baton Rouge, LA 70801
Phone 225-343-9535
Fax 225-343-9538

CONFIDENTIALITY STATEMENT

This electronic message contains information from Faircloth, Melton & Sobel, LLC, and is confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you have received this electronic message in error, please notify us immediately by telephone at (318) 619-7755.

**From:** Dan Balhoff [mailto:balhoff@pbmbllc.com]
**Sent:** Sunday, September 18, 2016 9:49 PM
**To:** Lenny Davis; 'Val Exnicios'; 'Rick Holston'; 'Kerry J. Miller'; gev@holstonvaughan.com; 'Mandy Barton'; 'John Teague'; 'Richard Taylor'; 'Kasie Braswell'; 'Merino, Rene'; Russ Herman; 'Arnold Levin'; 'Steve Martino'; 'Marci Jones'; Jimmy Faircloth; 'Ann Saucer'; 'Gary Mason'; 'Christopher L Coffin'; 'Daniel Bryson'; 'Joel Rhine'; 'Gerald E Meunier'; 'Allison Grant'; 'Holly Werkema'; 'Russell Budd'
**Cc:** 'Brandy Sergi'
**Subject:** RE: CDW fee issue

Friends:

I spoke with Judge Fallon last week concerning process issues.  I then spoke with Val Exnicios and Jimmy Faircloth very briefly and told them that I wanted to circulate a case management order this weekend.  After reading Lenny Davis's email, I am willing to hold off until next weekend so that the parties may submit suggestions.

Thank you.

Dan Balhoff

**From:** Lenny Davis [mailto:LDAVIS@hhklawfirm.com]
**Sent:** Friday, September 16, 2016 2:19 PM
**To:** 'Val Exnicios' <vpexnicios@exnicioslaw.com>; Dan Balhoff <balhoff@pbmbllc.com>; 'Rick Holston' <rhh@holstonvaughan.com>; 'Kerry J. Miller' <kjmiller@bakerdonelson.com>; gev@holstonvaughan.com; 'Mandy Barton' <kab@bartonlawpractice.com>; 'John Teague' <jmt@johnteaguelaw.com>; 'Richard Taylor' <RichardTaylor@taylormartino.com>; 'Kasie Braswell' <kasie@braswellmurphy.com>; 'Merino, Rene' <rmerino@bakerdonelson.com>; Russ Herman <RHERMAN@hhklawfirm.com>; 'Arnold Levin' <alevin@lfsblaw.com>; 'Steve Martino' <SteveMartino@taylormartino.com>; 'Marci Jones' <m.jones@holstonvaughan.com>; 'Jimmy Faircloth' <jfaircloth@fairclothlaw.com>; 'Ann Saucer' <asaucer@baronbudd.com>; 'Gary Mason' <GMason@wbmllp.com>; 'Christopher L Coffin' <ccoffin@pbclawfirm.com>; 'Daniel Bryson' <Dan@wbmllp.com>; 'Joel Rhine' <jrr@rhinelawfirm.com>; 'Gerald E Meunier' <gmeunier@gainsben.com>; 'Allison Grant' <agrant@allisongrantpa.com>; 'Holly Werkema' <hwerkema@baronbudd.com>; 'Russell Budd' <RBUDD@BARONBUDD.COM>
**Cc:** 'Brandy Sergi' <bsergi@exnicioslaw.com>
**Subject:** RE: CDW fee issue

We received the below email. we recommend that each side provide by Friday September 23,2016 a proposed case management order to the Special master for consideration. We believe then the Special Master can see the respective sides views and the matter can proceed. Thanks and have a good weekend

Leonard A. Davis
Attorney at Law
Herman, Herman & Katz, L.L.C.
Herman  Gerel LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
504-581-4892
504-561-6024(fax)

*This e-mail message contains confidential, privileged information intended solely for the addressee. Please do not read, copy, or disseminate it unless you are the addressee. If you have received it in error, please call us (collect) immediately at (504) 581-4892 and ask to speak with the message sender. Also, we would appreciate your forwarding the message back to us and deleting it from your system. Thank you.*

CONFIDENTIAL ATTORNEY WORK PRODUCT

---

**From:** Val Exnicios [mailto:vpexnicios@exnicioslaw.com]
**Sent:** Friday, September 16, 2016 10:14 AM
**To:** 'Dan Balhoff'; 'Rick Holston'; 'Kerry J. Miller'; gev@holstonvaughan.com; 'Mandy Barton'; 'John Teague'; 'Richard Taylor'; 'Kasie Braswell'; 'Merino, Rene'; Russ Herman; 'Arnold Levin'; Lenny Davis; 'Steve Martino'; 'Marci Jones'; 'Jimmy Faircloth'; 'Ann Saucer'; 'Gary Mason'; 'Christopher L Coffin'; 'Daniel Bryson'; 'Joel Rhine'; 'Gerald E Meunier'; 'Allison Grant'; 'Holly Werkema'; 'Russell Budd'
**Cc:** 'Val Exnicios'; 'Brandy Sergi'
**Subject:** RE: CDW fee issue

Dear Dan: This will confirm your teleconference this morning with Jimmy and I wherein you advised that you had recently conferred with His Honor Judge Fallon regarding the discovery sought in this matter and that you anticipated issuing an Order regarding the scope of discovery potentially this weekend.
        We sincerely appreciate your efforts to move this matter along as all are certainly eager to commence the discovery process in furtherance of the goal of securing the information necessary for you and Judge Fallon to make an informed recommendation/decision. We wish you a great and pleasant weekend and GO TIGERS!  Val & Jimmy

Val Patrick Exnicios, Esq.
Liska, Exnicios & Nungesser
Attorneys-At-Law
1515 Poydras Street
14th Floor, Ste. 1400
New Orleans, LA.  70112
Telephone: (504) 410-9611
Facsimile: (504) 410-9937
Cell: (504) 495-9666

This communication may contain information that is legally privileged, confidential or exempt from disclosure.  If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited.  Anyone who receives this message in error should notify the sender immediately by return e-mail and must delete it from his or her computer.  **Please note and be advised that Val P. Exnicios and all attorneys and support staff of Liska, Exnicios & Nungesser utilize email transmission as an ancillary support of traditional fax and US 1st Class Mail**

communication. Email is not necessarily checked or reviewed at regular intervals and as such, can not and should not be relied upon for primary communication, service of pleadings, motions, and/or the like.

---

**From:** Dan Balhoff [mailto:balhoff@pbmbllc.com]
**Sent:** Monday, August 29, 2016 10:46 AM
**To:** Val Exnicios; 'Rick Holston'; 'Kerry J. Miller'; gev@holstonvaughan.com; 'Mandy Barton'; 'John Teague'; 'Richard Taylor'; 'Kasie Braswell'; 'Merino, Rene'; rherman@hhklawfirm.com; 'Arnold Levin'; 'Lenny Davis'; 'Steve Martino'; 'Marci Jones'; 'Jimmy Faircloth'; 'Ann Saucer'; 'Gary Mason'; 'Christopher L Coffin'; 'Daniel Bryson'; 'Joel Rhine'; 'Gerald E Meunier'; 'Allison Grant'; 'Holly Werkema'; 'Russell Budd'
**Subject:** CDW fee issue

Friends:

- I am hereby appointing Val Exnicios and Jimmy Faircloth as co-liaison counsel for the objectors. In so doing, I recognize that some of you have interests that are not entirely aligned with either the Fee Committee or co-liaison counsel. Therefore, I will reserve judgment concerning the third paragraph of co-liaison counsel's proposed order (R. Doc. 20407-1) (concerning compensation). I plan to circulate a written order reflecting this decision. In fact, I plan to circulate written dispositions, whether by order or recommendation, of all pending motions, so that you may ask the Court to review them if you choose to do so.

- Even though I am appointing co-liaison counsel, all recipients of this email should feel free to contact me if you have any thoughts that you would like to share with me. My cell phone number is 225-266-7881, and my email address is balhoff@pbmbllc.com.

- I am asking co-liaison counsel to determine if there is anyone who should receive this email that is missing from the recipient list. If so, I am asking co-liaison counsel to reach out to those individuals, and to let me know who they are.

- I anticipate that the Court will file a supplemental order in the next few days which clarifies my duties and authority in this matter. Among other things, I anticipate that the order will specifically allow me to review sealed materials and decide whether and under what circumstances such material will be shared with others.

- After I review the sealed material, I will be in a better position to frame the appropriate scope of written discovery.

- The parties undoubtedly will ask Philip Garrett to produce information as part of the discovery process. I intend to speak with Mr. Garrett about segregating the time that he devotes to this task. I have not yet decided whether to tax Mr. Garrett's costs (including his time) to the requesting party. I am interested in your thoughts concerning whether I should do so.

- I do not plan to allow depositions until at the parties have had a chance to conduct at least some written discovery (assuming written discovery is appropriate).

Thank you.

Dan Balhoff

---

**Attention:**
The information contained in this message and or attachments is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is

prohibited. If you received this in error, please contact the sender and delete the material from any system and destroy any copies.

**Thank You.**

---

**Attention:**
The information contained in this message and or attachments is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any system and destroy any copies.

**Thank You.**

---

**Debbie Murphy**

| | |
|---|---|
| **From:** | Jimmy Faircloth <jfaircloth@fairclothlaw.com> |
| **Sent:** | Tuesday, September 20, 2016 2:18 PM |
| **To:** | Lenny Davis; Dan Balhoff; 'Val Exnicios'; 'Rick Holston'; 'Kerry J. Miller'; gev@holstonvaughan.com; 'Mandy Barton'; 'John Teague'; 'Richard Taylor'; 'Kasie Braswell'; 'Merino, Rene'; Russ Herman; Arnold Levin; 'Steve Martino'; 'Marci Jones'; 'Ann Saucer'; 'Gary Mason'; 'Christopher L Coffin'; 'Daniel Bryson'; 'Joel Rhine'; Sandy Duggan; 'Gerald E Meunier'; 'Allison Grant'; 'Holly Werkema'; 'Russell Budd' |
| **Subject:** | RE: CDW fee issue |
| **Attachments:** | 20394 - Primary Counsel's Motion for Discovery (with attachments).pdf; 20411 Opposition by FC to PC's Motion for discovery and CMO.pdf |

Here you go, along with a copy of FC opposition memo.

---

**From:** Lenny Davis [mailto:LDAVIS@hhklawfirm.com]
**Sent:** Tuesday, September 20, 2016 1:04 PM
**To:** Jimmy Faircloth; Dan Balhoff; 'Val Exnicios'; 'Rick Holston'; 'Kerry J. Miller; gev@holstonvaughan.com; 'Mandy Barton'; 'John Teague'; 'Richard Taylor'; 'Kasie Braswell'; 'Merino, Rene'; Russ Herman; 'Arnold Levin'; 'Steve Martino'; 'Marci Jones'; 'Ann Saucer'; 'Gary Mason'; 'Christopher L Coffin'; 'Daniel Bryson'; 'Joel Rhine'; 'Sandy Duggan'; 'Gerald E Meunier'; 'Allison Grant'; 'Holly Werkema'; 'Russell Budd'
**Subject:** RE: CDW fee issue

Would you please provide a copy of the July 17 submission. I am not sure I recall that one

Leonard A. Davis
Attorney at Law
Herman, Herman & Katz, L.L.C.
Herman  Gerel LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
504-581-4892
504-561-6024(fax)

*This e-mail message contains confidential, privileged information intended solely for the addressee. Please do not read, copy, or disseminate it unless you are the addressee. If you have received it in error, please call us (collect) immediately at (504) 581-4892 and ask to speak with the message sender. Also, we would appreciate your forwarding the message back to us and deleting it from your system. Thank you.*

CONFIDENTIAL ATTORNEY WORK PRODUCT

---

**From:** Jimmy Faircloth [mailto:jfaircloth@fairclothlaw.com]
**Sent:** Tuesday, September 20, 2016 9:19 AM
**To:** Dan Balhoff; Lenny Davis; 'Val Exnicios'; 'Rick Holston'; 'Kerry J. Miller'; gev@holstonvaughan.com; 'Mandy Barton'; 'John Teague'; 'Richard Taylor'; 'Kasie Braswell'; 'Merino, Rene'; Russ Herman; 'Arnold Levin'; 'Steve Martino'; 'Marci Jones'; 'Ann Saucer'; 'Gary Mason'; 'Christopher L Coffin'; 'Daniel Bryson'; 'Joel Rhine'; 'Gerald E Meunier'; 'Allison Grant'; 'Holly Werkema'; 'Russell Budd'
**Subject:** RE: CDW fee issue

Special Master Balhoff,

We appreciate your patience in allowing the parties a full and complete opportunity to state their positions regarding the course of discovery, but we disagree with Mr. Levin's suggestion that additional time is needed to argue about threshold issues that have been fully aired. Interested parties have expressed their "respective views" many times on the need for and scope of discovery in written submissions to you and Judge Fallon, as well as in personal meetings and telephone calls with you. Our concern regarding the pace of this process is based on our desire to conduct adequate discovery prior to the anticipated hearing on the FC's Motion to Allocate so that objecting parties will be able to offer a meaningful challenge. When we met, we discussed a potential schedule aimed toward an early 2017 hearing date. Given that we have yet to even obtain documents – not even the time sheets or transcripts of PSC meetings - that target now seems overly ambitious.

To recap, on July 17, Objecting Primary Counsel filed their Motion For A Case Management Order Providing For Discovery, The Unsealing Of Records Regarding Common Benefit Fees, And The Appointment Of A Special Master, which included an attached 30(b)(6) Notice. Our Memorandum to that motion included a detailed discussion of the areas we believe warrant discovery. On July 29, at your request and in anticipation of our meeting at your office, Objecting Primary Counsel submitted to you a "Proposed Discovery Plan" detailing our position regarding the scope, timing, and format of discovery. During the week of August 22 (delayed because of the flood), each side met with you, privately, to share their respective views regarding discovery. Finally, in follow-up to our meeting, on August 26 we submitted to you a list of documents that we consider necessary to initiating this process. Unless you request otherwise, we will stand on our existing submissions, copies of which are attached.

Finally, we respectfully request that your case management order identify the particular motions and issues that are on the table for your consideration (e.g., Motion for Immediate Disbursement of Undisputed Fees, Doc 20434). We do not want to burden you with questions, or gripes, about issues that are not before you. Thank you,

Jimmy

Jimmy R. Faircloth, Jr.
**Faircloth, Melton & Sobel, LLC**
**jfaircloth@fairclothlaw.com**

*Alexandria Office:*
105 Yorktown Drive
Alexandria, LA  71303
Phone 318-619-7755
Fax 318-619-7744

*Baton Rouge Office:*
One American Place
301 Main St., Ste. 920
Baton Rouge, LA  70801
Phone 225-343-9535
Fax 225-343-9538

CONFIDENTIALITY STATEMENT

This electronic message contains information from Faircloth, Melton & Sobel, LLC, and is confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you have received this electronic message in error, please notify us immediately by telephone at (318) 619-7755.

**From:** Dan Balhoff [mailto:balhoff@pbmbllc.com]
**Sent:** Sunday, September 18, 2016 9:49 PM
**To:** Lenny Davis; 'Val Exnicios'; 'Rick Holston'; 'Kerry J. Miller'; gev@holstonvaughan.com; 'Mandy Barton'; 'John Teague'; 'Richard Taylor'; 'Kasie Braswell'; 'Merino, Rene'; Russ Herman; 'Arnold Levin'; 'Steve Martino'; 'Marci Jones'; Jimmy Faircloth; 'Ann Saucer'; 'Gary Mason'; 'Christopher L Coffin'; 'Daniel Bryson'; 'Joel Rhine'; 'Gerald E Meunier'; 'Allison Grant'; 'Holly Werkema'; 'Russell Budd'
**Cc:** 'Brandy Sergi'
**Subject:** RE: CDW fee issue

Friends:

I spoke with Judge Fallon last week concerning process issues. I then spoke with Val Exnicios and Jimmy Faircloth very briefly and told them that I wanted to circulate a case management order this weekend. After reading Lenny Davis's email, I am willing to hold off until next weekend so that the parties may submit suggestions.

Thank you.

Dan Balhoff

**From:** Lenny Davis [mailto:LDAVIS@hhklawfirm.com]
**Sent:** Friday, September 16, 2016 2:19 PM
**To:** 'Val Exnicios' <vpexnicios@exnicioslaw.com>; Dan Balhoff <balhoff@pbmbllc.com>; 'Rick Holston' <rhh@holstonvaughan.com>; 'Kerry J. Miller' <kjmiller@bakerdonelson.com>; gev@holstonvaughan.com; 'Mandy Barton' <kab@bartonlawpractice.com>; 'John Teague' <jmt@johnteaguelaw.com>; 'Richard Taylor' <RichardTaylor@taylormartino.com>; 'Kasie Braswell' <kasie@braswellmurphy.com>; 'Merino, Rene' <rmerino@bakerdonelson.com>; Russ Herman <RHERMAN@hhklawfirm.com>; 'Arnold Levin' <alevin@lfsblaw.com>; 'Steve Martino' <SteveMartino@taylormartino.com>; 'Marci Jones' <m.jones@holstonvaughan.com>; 'Jimmy Faircloth' <jfaircloth@fairclothlaw.com>; 'Ann Saucer' <asaucer@baronbudd.com>; 'Gary Mason' <GMason@wbmllp.com>; 'Christopher L Coffin' <ccoffin@pbclawfirm.com>; 'Daniel Bryson' <Dan@wbmllp.com>; 'Joel Rhine' <jrr@rhinelawfirm.com>; 'Gerald E Meunier' <gmeunier@gainsben.com>; 'Allison Grant' <agrant@allisongrantpa.com>; 'Holly Werkema' <hwerkema@baronbudd.com>; 'Russell Budd' <RBUDD@BARONBUDD.COM>
**Cc:** 'Brandy Sergi' <bsergi@exnicioslaw.com>
**Subject:** RE: CDW fee issue

We received the below email. we recommend that each side provide by Friday September 23,2016 a proposed case management order to the Special master for consideration. We believe then the Special Master can see the respective sides views and the matter can proceed. Thanks and have a good weekend

Leonard A. Davis
Attorney at Law
Herman, Herman & Katz, L.L.C.
Herman  Gerel LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
504-581-4892
504-561-6024(fax)

*This e-mail message contains confidential, privileged information intended solely for the addressee. Please do not read, copy, or disseminate it unless you are the addressee. If you have received it in error, please call us (collect) immediately at (504) 581-4892 and ask to speak with the message sender. Also, we would appreciate your forwarding the message back to us and deleting it from your system. Thank you.*

CONFIDENTIAL ATTORNEY WORK PRODUCT

---

**From:** Val Exnicios [mailto:vpexnicios@exnicioslaw.com]
**Sent:** Friday, September 16, 2016 10:14 AM
**To:** 'Dan Balhoff'; 'Rick Holston'; 'Kerry J. Miller'; gev@holstonvaughan.com; 'Mandy Barton'; 'John Teague'; 'Richard Taylor'; 'Kasie Braswell'; 'Merino, Rene'; Russ Herman; 'Arnold Levin'; 'Lenny Davis'; 'Steve Martino'; 'Marci Jones'; 'Jimmy Faircloth'; 'Ann Saucer'; 'Gary Mason'; 'Christopher L Coffin'; 'Daniel Bryson'; 'Joel Rhine'; 'Gerald E Meunier'; 'Allison Grant'; 'Holly Werkema'; 'Russell Budd'
**Cc:** 'Val Exnicios'; 'Brandy Sergi'
**Subject:** RE: CDW fee issue

Dear Dan: This will confirm your teleconference this morning with Jimmy and I wherein you advised that you had recently conferred with His Honor Judge Fallon regarding the discovery sought in this matter and that you anticipated issuing an Order regarding the scope of discovery potentially this weekend.

      We sincerely appreciate your efforts to move this matter along as all are certainly eager to commence the discovery process in furtherance of the goal of securing the information necessary for you and Judge Fallon to make an informed recommendation/decision. We wish you a great and pleasant weekend and GO TIGERS!  Val & Jimmy

Val Patrick Exnicios, Esq.
Liska, Exnicios & Nungesser
Attorneys-At-Law
1515 Poydras Street
14th Floor, Ste. 1400
New Orleans, LA. 70112
Telephone: (504) 410-9611
Facsimile: (504) 410-9937
Cell: (504) 495-9666

This communication may contain information that is legally privileged, confidential or exempt from disclosure.  If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited.  Anyone who receives this message in error should notify the sender immediately by return e-mail and must delete it from his or her computer.  **Please note and be advised that Val P. Exnicios and all attorneys and support staff of Liska, Exnicios & Nungesser utilize email transmission as an ancillary support of traditional fax and US 1st Class Mail communication.  Email is not necessarily checked or reviewed at regular intervals and as such, can not and should not be relied upon for primary communication, service of pleadings, motions, and/or the like.**

---

**From:** Dan Balhoff [mailto:balhoff@pbmbllc.com]
**Sent:** Monday, August 29, 2016 10:46 AM
**To:** Val Exnicios; 'Rick Holston'; 'Kerry J. Miller'; gev@holstonvaughan.com; 'Mandy Barton'; 'John Teague'; 'Richard Taylor'; 'Kasie Braswell'; 'Merino, Rene'; rherman@hhklawfirm.com; 'Arnold Levin'; 'Lenny Davis'; 'Steve Martino'; 'Marci Jones'; 'Jimmy Faircloth'; 'Ann Saucer'; 'Gary Mason'; 'Christopher L Coffin'; 'Daniel Bryson'; 'Joel Rhine'; 'Gerald E Meunier'; 'Allison Grant'; 'Holly Werkema'; 'Russell Budd'
**Subject:** CDW fee issue

Friends:

- I am hereby appointing Val Exnicios and Jimmy Faircloth as co-liaison counsel for the objectors.  In so doing, I recognize that some of you have interests that are not entirely aligned with either the Fee Committee or co-

liaison counsel.  Therefore, I will reserve judgment concerning the third paragraph of co-liaison counsel's proposed order (R. Doc. 20407-1) (concerning compensation).  I plan to circulate a written order reflecting this decision.  In fact, I plan to circulate written dispositions, whether by order or recommendation, of all pending motions, so that you may ask the Court to review them if you choose to do so.

- Even though I am appointing co-liaison counsel, all recipients of this email should feel free to contact me if you have any thoughts that you would like to share with me.  My cell phone number is 225-266-7881, and my email address is balhoff@pbmbllc.com.

- I am asking co-liaison counsel to determine if there is anyone who should receive this email that is missing from the recipient list.  If so, I am asking co-liaison counsel to reach out to those individuals, and to let me know who they are.

- I anticipate that the Court will file a supplemental order in the next few days which clarifies my duties and authority in this matter.  Among other things, I anticipate that the order will specifically allow me to review sealed materials and decide whether and under what circumstances such material will be shared with others.

- After I review the sealed material, I will be in a better position to frame the appropriate scope of written discovery.

- The parties undoubtedly will ask Philip Garrett to produce information as part of the discovery process.  I intend to speak with Mr. Garrett about segregating the time that he devotes to this task.  I have not yet decided whether to tax Mr. Garrett's costs (including his time) to the requesting party.  I am interested in your thoughts concerning whether I should do so.

- I do not plan to allow depositions until at the parties have had a chance to conduct at least some written discovery (assuming written discovery is appropriate).

Thank you.

Dan Balhoff

---

**Attention:**
The information contained in this message and or attachments is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any system and destroy any copies.

**Thank You.**

---

**Attention:**
The information contained in this message and or attachments is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any system and destroy any copies.

**Thank You.**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE-MANUFACTURED        MDL NO. 2047
        DRYWALL PRODUCTS LIABILITY
        LITIGATION                  SECTION: L

        THIS DOCUMENT RELATES TO:   JUDGE FALLON

        ALL *CASES*                 MAG. JUDGE WILKINSON

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### PRIMARY COUNSEL'S MOTION FOR A CASE MANAGEMENT ORDER PROVIDING FOR DISCOVERY, THE UNSEALING OF RECORDS REGARDING COMMON BENEFIT FEES, AND THE APPOINTMENT OF A SPECIAL MASTER

NOW INTO COURT, through undersigned counsel, come the Objectors to the *Fee Committee's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Counsel and Individual Counsel's Fees Pursuant to PTO 28(F)*[1] (collectively, "Primary Counsel"),[2]  who for the reasons set forth in the accompanying Memorandum and attached exhibits, move this Court for a Case Management Order (1) allowing Primary Counsel to conduct limited discovery pertaining to the Fee Committee's requested allocation of fees, as initially requested in Parker Waichman LLP's opposition to the Allocation Motion (Doc. 20348); (2) requiring the unsealing of records evidencing the allocation urged by the FC on behalf of the PSC; and (3) appointing a special master to oversee discovery and to recommend an allocation appropriate under these unique circumstances.  In sum, Primary Counsel seek a fair process, one where both sides have equal access to relevant information regarding the alleged value of fees

---

[1] Doc. 20293, hereinafter referred to as the "Allocation Motion".

[2] Parker Waichman LLP (Doc. 20348); Baron & Budd, P.C., Allison Grant, P.A., Alters Law Firm, P.A. (Doc. 20353-3); Whitfield Bryson & Mason LLP, Pendley Baudin & Coffin, Rhine Law Firm, Luckey & Mullins (Doc. 20346); McCallum, Hoaglund, Cook & Irby, LLP (Doc. 20336); Alters Law Firm, P.A. (Doc. 20355; Morris Bart, LLC (Doc. 20392-2).

sought by the PSC, an equal opportunity to challenge the arguments of the opposition, and an

unbiased recommendation to the Court based on that evidence.

Respectfully submitted,

**FAIRCLOTH, MELTON & SOBEL, LLC**

By:     /s/ Jimmy R. Faircloth, Jr.
    Jimmy R. Faircloth, Jr. (LA #20645)
    jfaircloth@fairclothlaw.com
    Brook L. Villa (LA #31988)
    bvilla@fairclothlaw.com
    Franklin "Drew" Hoffmann (LA #35824)
    dhoffmann@fairclothlaw.com
    301 Main Street, Suite 920
    Baton Rouge, LA 70801
    Phone: (225) 343-9535
    Fax: (225) 343-9538

*Attorneys for Parker Waichman LLP*

**BARON & BUDD, P.C.**

By:     /s/ Russell W. Budd
    Russell W. Budd (TX #03312400)
    rbudd@baronbudd.com
    S. Ann Saucer (TX #00797885;
    LA #21368)
    asaucer@baronbudd.com
    3102 Oak Lawn Avenue, Suite 1100
    Dallas, TX 75219
    Phone: 214-521-3605
    Fax: 214-520-1181

**LISKA, EXNICIOS & NUNGESSER**

By:     /s/ Val Patrick Exnicios
    Val Patrick Exnicios, Esq.
    vpexnicios@exnicioslaw.com
    1515 Poydras Street
    14th Floor, Ste. 1400
    New Orleans, LA. 70112
    Phone: (504) 410-9611
    Fax: (504) 410-9937
    Cell: (504) 495-9666

*Attorneys for Whitfield Bryson & Mason*
*LLP, Pendley Baudin & Coffin, Rhine*
*Law Firm, and Luckey & Mullins*

**ALLISON GRANT, P.A.**

By:     /s/ Allison Grant
    Allison Grant (FL #858330)
    agrant@allisongrantpa.com
    14 SE 4th St
    Boca Raton, FL 33432-6111
    Phone: 561-994-9646
    Fax: 561-431-4627

**MCCALLUM, HOAGLUND, COOK & IRBY, LLP**

By: ___/s/ Eric D. Hoaglund___
    Eric D. Hoaglund
    ehoaglund@mhcilaw.com
    905 Montgomery Highway, Suite 201
    Vestavia Hills, Alabama 35216
    Phone: (205) 824-7767
    Fax: (205) 824-7768

**ALTERS LAW FIRM, P.A.**

By: ___/s/ Jeremy W. Alters___
    Jeremy W. Alters (FL #111790)
    jeremy@alterslaw.com
    Justin D. Grosz (FL #984000)
    justin@alterslaw.com
    Matthew T. Moore, Of Counsel (FL #70034)
    matthew@alterslaw.com
    1855 Griffin Road, Suite C470
    Dania Beach, FL 33004
    Phone: (305) 571-8550
    Fax: (305) 571-8558

**GIEGER, LABORDE & LAPEROUSE, LLC**

By: ___/s/ Victoria E. Emmerling___
    Andrew A. Braun (LA #3415)
    abraun@glllaw.com
    Victoria E. Emmerling (LA #33117)
    temmerling@glllaw.com
    701 Poydras Street, Suite 4800
    New Orleans, Louisiana 70139-4800
    Phone: (504) 561-0400
    Fax: (504) 561-1011

*Attorneys for Morris Bart, L.L.C.*

## CERTIFICATE OF SERVICE

    I hereby certify that the above and foregoing Motion has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 15th day of July, 2016.

               ___/s/ Jimmy R. Faircloth, Jr.___
                     OF COUNSEL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED<br>DRYWALL PRODUCTS LIABILITY<br>LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
| ALL *CASES* | MAG. JUDGE WILKINSON |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### PRIMARY COUNSEL'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A CASE MANAGEMENT ORDER PROVIDING FOR DISCOVERY, THE UNSEALING OF RECORDS REGARDING COMMON BENEFIT FEES, AND THE APPOINTMENT OF A SPECIAL MASTER

The Court has before it the *Fee Committee's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F)*,[3] to which twenty-three firms have objected (hereinafter, "Primary Counsel"). The FC urges the Court to make an unprecedented fee split between Primary Counsel and common benefit counsel based on a blatantly biased presentation of the law and facts, while keeping Primary Counsel in the dark and without the opportunity to fairly challenge the allegedly "inescapable truth that the vast majority of the meaningful, outcome-determinative work" was performed by common benefit counsel.[4] The FC invites the Court to disregard the limits of its authority to alter private

---

[3] That motion (Doc. 20293) and its supporting memorandum (Doc. 20293-1) are collectively referred to herein as the "Allocation Motion." Specifically, that motion seeks, on behalf of common benefit counsel, an award of 59.37% ($114,581,308.82) of the entire amount awarded by the Court for attorneys' fees ($192,981,363.35) (the "Global Fee Award"), leaving 40.63% ($78,400.054.53) for allocation among Primary Counsel.

[4] *Omnibus Response to Objections to the Fee Committee's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F) ("Omnibus Response")* (Doc. 20384-2), p. 34.

fee agreements[5] and to effectively take judicial notice that common benefit work is far more valuable than the work of Primary Counsel.

In PTO 28(F), this Court promulgated the equation for a pro rata distribution of fee compensation among Primary Counsel, all of whom have clients who contractually agreed to compensate their chosen counsel. Doc. 20282, p. 6. Because the method of distribution among Primary Counsel is settled, there is no need for discovery regarding Primary Counsel's fee.[6] Conversely, the PSC and common benefit counsel, as such,[7] lack a contractual right to compensation. Accordingly, they were required to file monthly time records. PTO 9, Doc. 147. These records and the resulting reports of the court-approved CPA, however, have been sealed from Primary Counsel, along with other evidence of the PSC's purported work, including the transcripts of PSC meetings during which the "common benefit" was allegedly formulated.[8] Primary Counsel now seek limited discovery, including unsealing of those records, pertaining to common benefit time and expenses.

---

[5] *See* Eldon E. Fallon, *Common Benefit Fees in Multi-District Litigation,* 74 La. L. Rev. 371, 379 (2014) ("*Common Benefit Fees*"); Charles Silver & Goeffrey P. Miller, *The Quasi-Class Method of Managing Multi-District Litigation: Problems and a Proposal,* 63 Vand. L. Rev. 107, 113 (2010); Aimee Lewis, *Limiting Justice: The Problem of Judicially Imposed Caps on Contingent Fees in Mass Actions,* 31 Rev. Litig. 209, 215 (2012).

[6] The FC attempts to defend its proposed allocation by raising the issue of which counsel will be paid for common benefit work and in what amounts (*see Omnibus Response,* Doc. 20384-2, pp. 15-16). However, this is a red herring because the Allocation Motion did not ask the Court to make an individual allocation order. The Allocation Motion only raises the issue of how all common benefit fund time compares to all primary counsel's time.

[7] Many firms fall into both categories. As the FC pointed out, several Objectors have performed Common Benefit Work (Doc. 20384-2, p. 11) and a few are members of the PSC (Doc. 20384-2, fn. 7.

[8] PTO 9 requires counsel to make monthly submissions of common benefit work or expenses to submit to the court-appointed CPA, Philip Garrett. Doc. 147. Garrett was then required to compile the submission and provide reports to Plaintiff's Liaison Counsel who would them submit them to the Court. "Submission of time and expense records to PG and the Court shall be considered as if submitted under seal." Doc. 147 at ¶ 3. Objectors have requested this information from Mr. Garrett, who has refused to provide the same absent approval by the Court and PSC. *See* Ex. A, Email String Between Exnicios and Garett regarding *Meeting on Chinese drywall fees and costs.*

The central issue before the Court concerns the division of the limited fee fund as between Primary Counsel and common benefit counsel; in particular, the Court must determine how much of the fee pie to allocate to common benefit counsel under the circumstances. The legitimacy of individual fee allocations within either group is ***not*** before the Court – a critical point that the FC doggedly disregards, while impugning the motives and efforts of many objectors. This case is unlike most mass tort fee disputes because the claimants are not implicated and the Court is being asked to alter private contractual fee agreements for the benefit of common benefit counsel. Compare *In re Vioxx Products Liability Litigation*, 760 F. Supp.2d 640 (E.D. La. 2010) (capping contingency fee agreements for the benefit of claimants before reaching the "taffy pull" among lawyers). The PSC did not mention its plan to cram-down Primary Counsel when it requested approval of the Global Fee Award. And no primary attorney could have possibly anticipated that his or her fee agreements would be altered so drastically, let alone for the benefit of paying a premium to common benefit counsel.

The value of fees due to common benefit counsel from the Global Fee Award is a fact intensive inquiry that involves consideration of the type, timing, volume and need for the common benefit work, and it must be measured against the contractual rights of Primary Counsel and the extraordinary work that Primary Counsel performed before, during and after the Global Fee Award was confected.[9] The procedure followed thus far, however, is hampering the ability of the Court to perform this inquiry because the role of the PSC has changed from a judicially-appointed champion for the common good of claimants to a self-interested litigant in a fee dispute among

---

[9] The Objections make clear that this was no ordinary mass tort proceeding for Primary Counsel. Nevertheless, Primary Counsel understands that the Court has already determined a formula for allocating fees among Primary Counsel. The only factor missing is the total allocation to Primary Counsel, which will be the remainder of the pie after the common benefit fee is determined.

lawyers.[10] Due Process demands that both sides in this "taffy pull" receive equal access to relevant information and an equal opportunity to be heard.

**I.    The Mandates of Due Process Warrant Limited Discovery and the Unsealing of Records.**

Due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner" before an individual is deprived of a property interest. *See Mathews v Elbridge,* 424 U.S. 319, 335, 96 S. Ct. 893, 903, 47 L. Ed. 2d 18 (1976).  While there is no particular standard for what process is due, the Supreme Court in *Mathews* set forth three factors to be balanced in determining whether a process will suffice in a given situation:

> [T]he specific dictates of due process generally require[ ] consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335; *see also Harry v. Colvin,* 819 F.3d 112, 115 (5th Cir. 2016).  The ultimate question is whether "given the nature and circumstances of the case . . . the parties [had] a fair opportunity to present relevant facts and arguments to the court, and to counter the opponents' submissions." *In re Thirteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litigation,* 59 F.3d 295, 302 (1st Cir. 1995) (quoting *Aoude v. Mobil Oil Corporation,* 862 F.2d 890, 894 (1st Cir. 1988); see also *In re Nineteen Appeals,* 982 F.2d at 611 (citing *Gorman v. University of R.I.,* 837 F.2d 7, 14 (1st Cir. 1988).

Specifically with regard to attorneys' fees, the Fifth Circuit has cautioned that when "a court chooses to hold a 'fee-determination hearing, the hearing format itself ha[s] to be fair.  In

---

[10] The bias of the FC is demonstrated foremost in its refusal to factor the legal rights and work product of Primary Counsel into its proposed methodology for allocating fees.

other words, when a judge constructs a process for setting fees, the process must contain at least

the procedural minima' of due process: notice and an opportunity to be heard." *In re High Sulphur*

*Content Gasoline Products Liability Litigation*, 517 F.3d 220, 231 (5th Cir. 20008) (quoting *In re*

*Nineteen Appeals*, 982 F.2d at 614 (1st Cir. 1992); citing *In re Fine Paper Antitrust Litigation*, 751

F.2d 562, 584 (3d Cir. 1984)). *See also Yamada v. Nobel Biocare Holding AG*, No. 14-55263,

2016 WL 3207650, at *7 (9th Cir. Apr. 20, 2016, amended June 9, 2016)) ("the Due Process Clause

requires that opposing counsel have access to timesheets relied on to support [a] fee order" and the

opportunity to "present whatever objections they might have concerning the fairness and

reasonableness of Plaintiffs' fee request").

    The First Circuit's decision in *In re Nineteen Appeals* (cited with approval by the Fifth

Circuit in *In re High Sulphur*, 517 F.3d at 231) is squarely on point.  In that case, the attorneys for

individual plaintiffs appealed the district court's allocation of fees between individual counsel and

common benefit counsel in an MDL proceeding.  The circuit court framed the contest as follows:

> One group of lawyers, appellants here, contend that the procedures
> followed by the district court in awarding attorneys' fees and
> directing cost reimbursement were fundamentally unfair, ignored the
> requirements of procedural due process, and constituted an abuse of
> discretion. Another group of lawyers, appellees here, vehemently
> deny these charges and seek to uphold the award.

982 F.2d at 605.  After applying the *Mathews* framework, the court found that appellants were

denied due process because the fee allocation proceeding was unfairly tilted in favor of the PSC -

"as unbalanced as a two-legged stool." *Id.* at 615.  The court was careful to point out that its

decision was primarily driven by the district court's use of a process that, itself, was not balanced

between the litigants: "In this instance, we cannot see how the court could fairly adjudicate this

dispute unless it afforded [individual counsel] a viable means (comparable to the means afforded

the PSC) of describing their contribution to the litigation, contrasting their contribution with the

PSC's contribution, and questioning the PSC members regarding their work." *Id.*

Following remand, the case returned to the First Circuit and the process utilized by the

district court on remand was challenged on due process grounds. *In re Thirteen Appeals Arising*

*Out of the San Juan Dupont Plaza Hotel Fire Litigation*, 56 F.3d 295 (1st Cir. 1995). On this

occasion, however, the appellate court found the process adequate where the district court

permitted discovery regarding the PSC and the opportunity for objectors to make a fair rebuttal:

> The Due Process Clause does not require freewheeling adversarial
> discovery as standard equipment in fee contests. *See Nineteen
> Appeals,* 982 F.2d at 614. This case exemplifies the wisdom of the
> rule. The district court did not shut off all discovery, and the
> procedures that the court employed—especially the compelled
> exchange of documentation—minimized the need for additional
> discovery by giving [primary counsel] the raw material that they
> needed to sift through the particulars of the PSC's fee application.
> In other words, the court ensured that [primary counsel] had access
> to all the data reasonably necessary to formulate their objections,
> including all the PSC members' time-and-expense submissions,
> summaries thereof, detailed accounts of the procedures used by the
> PSC to gather, review, and audit time records, and the working
> papers, correspondence, and documentation generated by the PSC's
> accountants during the compilation process. With this banquet of
> information spread before them, appellants then partook of the
> court's liberality in allowing them to formulate extensive written
> submissions.

56 F.3d at 303. In sum, the First Circuit reaffirmed that due process requires a level playing field

in a mass tort fee dispute.

Application of the *Mathews* factors in the instant matter likewise dictates that Primary

Counsel should have the same access as the FC to evidence relating to the allocation of fees and

an opportunity to fairly challenge the fee allocation requested by the FC. Stated differently,

Primary Counsel should have the same opportunity as the PSC to make a case regarding the extent

to which common benefit fees should be carved out of the fee pie. As it stands, the PSC is holding

the evidence and urging the Court to follow its lead, while ridiculing Primary Counsel for being

unaware of the true state of affairs and for drawing inferences based on bits and pieces of the

evidence.

A.   *The Private Interest*

It is settled that the right to payment of attorneys' fees is a constitutionally protected

property interest that cannot be taken or disposed of without providing due process to interested

parties. *See Fontana v. Barham*, 707 F.2d 221 (5th Cir. 1983). *See also In re Nineteen Appeals*,

982 F.2d at 613 ("the affected private interest is the monetary share of the funds due each [primary

attorney]"); *Rein v. Socialist People's Libyan Arab Jamahiriya,* 568 F.3d 345 354 (2nd Cir. 2009)

("In reallocating contractually negotiated fees among counsel in a case of this nature, a court is

disposing of a property interest.").

B.   *The Risks of an Inadequate Procedure*

Without a fair opportunity to test and challenge the purported factual underpinnings of the

FC's proposed allocation through additional discovery and the unsealing of records, Primary

Counsel face a very real and tangible risk of losing millions of dollars in fees.  Additionally, and

of equal importance, is the risk of offending, in the MDL context, the "traditional judicial standards

of transparency, impartiality, procedural fairness and ultimate judicial oversight. . . ." *In re High*

*Sulfur Content*, 517 F.3d at 227.

The Fifth Circuit has directed fee disputes "to be litigated openly" and for all parties to be

furnished information essential to challenge fee allocations. *Id.* at 230 and 232. In this case,

however, the process followed thus far has been undeniably "unbalanced". *In re Nineteen Appeals*,

982 F.2d at 615.  In particular, the PSC and FC had the benefit of reviewing all common benefit

time and expenses, meeting with common benefit counsel, and reviewing Mr. Garrett's reports.

The same information was not available to Primary Counsel. The Allocation Motion and response

demonstrate the exact nature of this unleveled playing field and the resulting inequities.  For example, the FC argues that Primary Counsel do not "take into account the untold exertions . . . necessary to administer the challenges presented by the settlements, including ongoing dialogues . . . regular meetings with representatives of Moss and homeowners (and their counsel) over remediation disputes, frequent interfaces with BrownGreer. . . , and related interplay with Mr. Kerry Miller, counsel for Knauf." *Omnibus Response*, Doc. 20384-2, pp. 19-20. Similarly, the FC openly admits that Primary Counsel has been kept in the dark by boasting that Primary Counsel "are likely unaware of the commitment that the PSC made to the Knauf Defendants in connection with the Knauf Settlement to continue to prosecute . . . claims against the Taishan Defendants. . . ." *Id.* at fn. 7.  Primary Counsel have a right to be informed and discover information regarding such "untold exertions" and secret agreements which are being used to bolster the FC's request.

The FC likewise repeatedly diminishes the work of Primary Counsel by claiming that common benefit counsel work was more labor intensive, had a more wide-spread impact and was more complex, challenging and daunting. *Id.* at p.3.  While Primary Counsel can generally deny these statements, any real analysis is impossible based of the information currently available to them.

Absent discovery and the review of documents filed under seal, Primary Counsel run an "intolerably great" risk of being "erroneously deprived of their property." *In re Nineteen Appeals*, 982 F.2d at 613.  As discussed more fully in the following subsection, there also is a serious risk of impugning the public confidence in the mass tort device, as cautioned by the Fifth Circuit in *In re High Sulphur*, 517 F.3d at 230.

The second *Mathews* factor is clearly satisfied here, as the FC attempts to effectively confiscate millions of dollars from Primary Counsel based on an unprecedented allocation of fees in favor of common benefit counsel.

**C.   *Public Interest***

There are two fundamental factors weighing on the public interest in a fee dispute in mass tort litigation.   First, the "substantial governmental interest in conserving scarce judicial resources." *In re Nineteen Appeals*, 982 F.2d at 614. Second, the need to protect the public's confidence in the judicial administration of such proceedings. As Your Honor has written, "the potential harm to the public's perception of the judicial process is especially acute in MDLs because of the large number of claimants involved.  Disproportionate results and inconsistent standards threaten to damage the public's faith in the judicial resolution of mass tort litigation by creating an impression of inherent unfairness." *Common Benefit Fees,* 74 La. L. Rev. at 380.  For this reason, the Fifth Circuit has instructed that allocation procedures should be consistent with "basic judicial standards of transparency and fairness."   *In re High Sulfur*, 517 F.3d at 227. "'[P]ublic confidence [in our judicial system] cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view.' . . . [P]ublicizing the process leading to attorneys' fee allocation may discourage favoritism and unsavory dealings among attorneys even as it enables the court better to conduct oversight of the fees. If the attorneys are inclined to squabble over the generous fee award, they are well positioned to comment – publicly – on each other's relative contribution to the litigation." *Id.* at 230 (internal citations omitted). "Attorneys' fees, after all, are not state secrets that will jeopardize national security if they are released to the public." *Id.*

In this case, the FC seeks an allocation that greatly strains (and arguably exceeds) the Court's authority to alter private fee agreements and that flips the traditional paradigm between primary counsel and common benefit counsel. Such an unprecedented allocation surely would discourage primary attorneys from pursuing mass tort cases. "Undercompensating attorneys who handle such litigation would result in too few meritorious private suits being brought and less competent representation in the cases that are brought. Overcompensating attorneys, however, would also be harmful, as it would encourage frivolous lawsuits and result in unfair recovery for injured litigants." *In re Vioxx*, 574 F.Supp.2d 606, 611 (E.D. La.2008), *on reconsideration in part*, 650 F.Supp.2d 549 (E.D. La. 2009). Perhaps even worse, such an allocation would create the appearance that the fox is now in charge of the hen house.

Under these circumstances, the public interest favors permitting Primary Counsel to conduct limited discovery and to challenge the FC's requested allocation on equal footing with the PSC.

**II.    Limited Discovery Is Necessary to Answer Targeted Questions Regarding the Fee Committee's Motion.**

As explained above, Due Process requires Primary Counsel to have a fair opportunity to counter the FC's Allocation Motion. In general, this includes "access to all the data reasonably necessary to formulate their objections, including all the PSC members' time-and-expense submissions, summaries thereof, detailed accounts of the procedures used by the PSC [and FC] to gather, review, and audit time records, and the working papers, correspondence, and documentation generated by [Mr. Garrett] during the compilation process." *In re Thirteen Appeals*, 56 F.3d at 303; *see also, In re High Sulphur*, 517 F.3d at 232 (requiring information such as hours, rates and processes for determining fees to be provided). Accordingly, Primary Counsel request limited discovery, on the following topics, as necessary to make a presentation to the Court

supporting their objections to the Allocation Motion.  Primary Counsel's proposed *Notice of*
*30(b)(b) Deposition & Request for Production*  is attached hereto as Exhibit B.

### A.      Does the lodestar include work pursuing Taishan?

Primary Counsel have objected that the FC's proposal improperly seeks compensation for
the PSC's (to date) unsuccessful efforts to recover from the Taishan Defendants.[11] This legal work
was neither reasonable nor necessary for recovery of the limited settlement funds at issue, yet there
is every reason to believe that this work is included in the FC's lodestar demand for common
benefit compensation:

- Philip A. Garrett's affidavit reporting the number of common benefit hours does
  not state that work pursuing non-settling Defendants was excised. In fact, Mr.
  Garrett does identify what *was* eliminated, and time pursuing non-settling
  defendants is not in the list of omitted time.[12]

---

[11] *See, e.g.,* Collins & Horsley, P.C.'s Br. in Supp. of Individual Counsel's Request to Allocate the Global Fee Award
Between Common Benefit Counsel and Individual Counsel and Obj. to the FC's Mot. to Determine the Allocation of
the Global Fee Award as Between Common Benefit Attorneys and Individual Counsel Fees Pursuant to PTO 28(F)
(Doc. 20351) ("Collins & Horsley Obj."), pp. 22, 33, 39-42; Baron & Budd, P.C., Allison Grant, P.A. and Alters Law
Firm, P.A.'s Obj. in Opp. to FC's Mot. to Determine the Allocation of the Global Fee Award as Between Common
Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F) (Doc. 20353-3) ("Baron & Budd Obj."), pp. 27-
28; *see generally* Parker Waichman LLP's Opp. to the FC's Mot. to Determine the Allocation of the Global Fee Award
as between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F), Request for Discovery,
Additional Briefing and a Contradictory Hearing (Doc. 20348-1) ("Parker Waichman Obj."), pp. 18-19.

[12] *See* Revised and Updated Aff. of Philip A. Garrett, C.P.A., Pursuant to PTO No. 28(F) (Doc. 20290-5) pp. 4-6 ¶¶9-
13.

- The Allocation Motion extols the value of the PSC's common benefit work, and in this context, seeks credit for what appears to be work pursuing non-settling Taishan, which has not contributed to the limited settlement funds at issue.[13]

- In its Omnibus Reply, the FC does not deny that it, by virtue of an under-the-table deal with the Knauf entities, is seeking compensation for pursuing non-settling Defendant Taishan, and once again claims credit for doing so.[14]

Therefore, the FC is seeking full compensation on behalf of the PSC for work that did *not* contribute to the limited fund while, at the same time, severely discounting Primary Counsel's work that *did contribute* to the limited fund. Accordingly, Primary Counsel seek discovery quantifying the degree to which the FC's proposal would divert settlement funds from Primary Counsel for the purpose of compensating the PSC and other common benefit counsel for legal work unnecessary to generating the limited settlement funds currently at issue.

**B.     Why does the FC's $1.1 Billion calculation exclusively credit the PSC and common benefit counsel for the work of third parties?**

The FC's calculations are riddled with "fuzzy math,"[15] and its Allocation Motion belabors distorted calculations to create the false illusion that its request would result in compensation at

---

[13] For example, the FC argues that "[s]eeking recovery from the German and Chinese corporate defendants in these proceedings necessitated the expenditure of considerable attorney effort and resources, particularly ... service of process ... and greatly extended the timeline of the litigation." Doc. 20290-4, p. 16. Taishan appears to be what the FC is referencing here. Knauf agreed to accept service on November 2, 2009, just five months after the MDL was created.  PTO 17. The first settlement with all Knauf defendants was reached in October of 2010. Thus, service of process problems did *not* "extend[] the timeline of litigation" (Doc. 20290-4, p. 16) for the Knauf settlement.

The FC also alleges that Primary Counsel were relieved of "costly and challenging foreign service efforts" and points to "translation and service of the complaints on foreign defendants, pursuant to the Hague Convention." Doc. 20290-4, p. 20. However, Knauf agreed to accept service. Again, the FC is alluding to Taishan.

[14] Omnibus Response, Doc. 20384-2, p. 16 (arguing that the common benefit counsel "aggressively pursue[d] the unsettled claims against Taishan and its affiliated companies").

[15] *See, e.g.,* Baron & Budd Obj. (Doc. 20353-3), pp. 16, 24-27.

the rate of 10.65% for common benefit fund work and 11.9% for primary counsel's work. However, compensation for primary counsel would in reality be much lower, possibly in the neighborhood of approximately 7%, were the FC's motion to be granted.[16]

Among the several "fuzzy math" issues is the FC's use of $1.1 billion as the benefit number to which the PSC's contingent multiplier applies; however, the Settlement Administrator uses $658,713,629.62 as the benefit conferred for the purposes of calculating Primary Counsel's fees. The FC's 10.65% request appears much lower and more reasonable than it is in reality because of its use of $1.1 billion as the settlement value as opposed to the actual benefit conferred, $658,713,629.62. To create the $1.1 billion figure, the FC credits Common Benefit counsel for the outside administrators, a curator, an ombudsman, inspectors, remediators, and even the Special Master. Such mathematical machinations are inaccurate and unprecedented. The $1.1 billion figure is grossly overinflated.[17] Discovery is appropriate to identify the factual basis, if any, for treating the work of the Special Master and third parties as a benefit bestowed uniquely by the PSC. Discovery is also appropriate to understand the PSC's valuation of the Knauf (and "interrelated and interdependent")[18] settlement(s) at the time the settlements were reached.

---

[16] As pointed out by Baron & Budd, P.C., that calculation is subject to debate and may be less than 11.9%. *See, e.g.,* Baron & Budd Obj. (Doc. 20353-3), p. 7 ("If the FC's Motion were granted, the undersigned would be receiving in attorneys' fees only 6.8% of the true benefit conferred upon our clients versus . . . ."). *See also, id.* at pp. 30-31.

[17] *See* Opp. of Pls. Represented by Milstein Adelman, LLP and Roberts and Durkee, LLP to the Mot. of the PSC FC for Allocation of the Global Fee Award between Common Benefit Fees and Individual Counsel Fees Pursuant to PTO 28(F) (Doc. 20337) ("Milstein Durkee Obj."), pp. 2-5; Collins & Horsley Obj. (Doc. 20351), pp. 25-29; Baron & Budd Obj. (Doc. 20353-3) at pp. 24-27.

[18] Omnibus Response (Doc. 20384-2), p. 1.

### C.     Does the lodestar include duplicative entries?

As noted in the objections, in order to determine whether a fee request is reasonable, the issue of potential duplicative billing must be resolved.[19] Because the time records are sealed from objectors, we cannot now identify the degree of duplication. Discovery on this issue is necessary to understand the degree to which the FC seeks to extinguish Primary Counsel's contract rights in order to pay the PSC for duplicative billing.

### D.     When was the PSC's work performed?

Several objections are based on the FC's surprising and inaccurate failure to acknowledge the yeoman's work performed by primary counsel.[20] For the most part, the PSC did not assist Primary Counsel inspecting clients' homes, ascertaining the manufacturer of the drywall, ascertaining the builder, supplier and installer, providing Knauf with documentation for purposes of qualifying for remediation, negotiating with Knauf for inclusion in the Pilot Program (as well as Options 2, 3 and compensation for Already Remediated Homes), negotiating terms sheets with Knauf with respect to condominiums, disputes arising during the remediation process, administering the claims process for the Global, Banner and INEX settlement, as well as the Other Loss Fund the claims, and thereby foisted an extraordinary amount of work solely upon Primary Counsel. Moreover, Primary Counsel had filed hundreds of cases before the MDL was even instituted, and the work of Primary Counsel in identifying the many defendants was used by the

---

[19]  Parker Waichman Obj. (Doc. 20348-1), pp. 18-19.

[20]  *See, e.g.,* Primary Counsel's Request to Allocate the Global Fee Award between Common Benefit Counsel and Primary Counsel and Obj. to the FC's Mot. to Determine the Allocation of the Global Fee Award as between Common Benefit Attorneys and Individual Counsel Fees Pursuant to PTO 28(F) (Doc. 20336) (Hoaglund Sexton), pp. 4-21; Collins & Horsley Obj. (Doc. 20351), pp. 5-21; Morgan & Morgan's Opp. to FC's Allocation Mot. and Mem. (Doc. 20354), pp. 4-7; Parker Waichman Obj. (Doc. 20348-1), pp. 14-18; Milstein Durkee Obj. (Doc. 20337), pp. 10-13; *see also* Opp. of Whitfield Bryson & Mason LLP, Pendley Baudin & Coffin, Rhine Law Firm, and Luckey & Mullins to FC's Mot. to Determine the Allocation of the Global Fee Award as between Common Benefit Fees and Individual Counsel Fees Pursuant to PTO 28(F) (Doc. 20346) ("Whitfield Bryson Obj."), pp. 4-6.

PSC when the MDL was subsequently created.[21] Thus, Primary Counsel performed the initial attorney work, as well as the bulk of the work after the Knauf and other settlements were finalized and approved.

In their omnibus response, the FC has taken the surprising, contrary position, proclaiming with great inaccuracy that the "cadre of common benefit counsel" allegedly "labor[ed] to administer these settlements," which is allegedly "[u]nlike the objectors."[22] The FC thereby admits that its lodestar includes post- settlement work, which it deems to be substantial.

Discovery therefore is necessary to discern when the common benefit work was performed. Attorney time from the PSC's inception through final approval of the settlement with Knauf and the other settling defendants should be relevant (as to the timeline). However, to the extent that the PSC seeks significant compensation for work performed *after* the settlements were reached (and its arguments indicate that it does), then this fact is discoverable, as it is doubtful that such work was truly necessary in generating the funds at issue.

**E.     How are the common benefit expenses being handled?**

Primary Counsel have challenged the FC's proposed handling of expenses.[23] The FC would grant the PSC disproportionately more to compensate them for all fees, a 2.65% bonus, and present and future expenses, while leaving Primary Counsel in the red for expenses advanced under contract. Primary Counsel are left without adequate compensation for their expenses, while, in stark contrast, the FC seeks to pay the PSC in advance for the cost of pursuing non-settling Taishan Defendants. This is inappropriate both because of the unfair disparate treatment and because

---

[21] *See, e.g.*, Baron & Budd Obj. (Doc. 20353-3), pp. 18-19; Parker Waichman Obj. (Doc. 20348-1), pp. 14-15; Collins & Horsley Obj. (Doc. 20351), p. 11.

[22] Omnibus Response (Doc. 20384-2), p. 1.

[23] *See, e.g.,* Whitfield Bryson Obj. (Doc. 20346), p. 21; Baron & Budd Obj. (20353-3), pp. 36-37.

Taishan-only costs cannot be paid out of the limited settlement funds. The funds at issue should compensate counsel for their work in generating the settlement – rather than work chasing after a different settlement.

Discovery is necessary on this issue, and the FC itself has suggested why this is so in its Omnibus Response to the objections. Specifically, the FC believes that "several objectors" are "unaware" of the FC's alleged reasons for advancing the PSC ten million dollars to pursue a different, non-settling defendant.[24] That the FC is using the claimed "unaware[ness]" of Primary Counsel highlights that Primary Counsel need discovery to present their objections to the Court.

### F.    How are pro se claims treated?

It is unclear whether the $658,713,629.92 number, which is the amount that the FC and PSC consider to be the total benefit provided by Primary Counsel, includes funds paid to the pro se claimants, and if so, who is receiving those. Targeted discovery on this discreet issue is appropriate.

<div align="center"><strong>CONCLUSION</strong></div>

Due process requires Primary Counsel to receive a fair and meaningful opportunity to oppose the FC's proposed fee allocation.  Accordingly, Primary Counsel respectfully request this Court to issue a case management order providing for targeted discovery, the unsealing of records pertaining to common benefit fees and expenses and the appointment of a special master to oversee the process and ultimately make an appropriate recommendation to the Court.

---

[24] Omnibus Response (Doc. 20384-2), p. 10 fn. 7.

Respectfully submitted:

**FAIRCLOTH, MELTON & SOBEL, LLC**

By: ___ */s/ Jimmy R. Faircloth, Jr.* ___
    Jimmy R. Faircloth, Jr. (LA #20645)
    jfaircloth@fairclothlaw.com
    Brook L. Villa (LA #31988)
    bvilla@fairclothlaw.com
    Franklin "Drew" Hoffmann (LA #35824)
    dhoffmann@fairclothlaw.com
    301 Main Street, Suite 920
    Baton Rouge, LA 70801
    Phone: (225) 343-9535
    Fax: (225) 343-9538

    *Attorneys for Parker Waichman LLP*


**BARON & BUDD, P.C.**

By: ___ */s/ Russell W. Budd* ___
    Russell W. Budd (TX #03312400)
    rbudd@baronbudd.com
    S. Ann Saucer (TX #00797885;
    LA #21368)
    asaucer@baronbudd.com
    3102 Oak Lawn Avenue, Suite 1100
    Dallas, TX 75219
    Phone: 214-521-3605
    Fax: 214-520-1181


**MCCALLUM, HOAGLUND, COOK & IRBY, LLP**

By: ___ */s/ Eric D. Hoaglund* ___
    Eric D. Hoaglund
    ehoaglund@mhcilaw.com
    905 Montgomery Highway, Suite 201
    Vestavia Hills, Alabama 35216
    Phone: (205) 824-7767
    Fax: (205) 824-7768

**LISKA, EXNICIOS & NUNGESSER**

By: ___ */s/ Val Patrick Exnicios* ___
    Val Patrick Exnicios, Esq.
    vpexnicios@exnicioslaw.com
    1515 Poydras Street
    14th Floor, Ste. 1400
    New Orleans, LA. 70112
    Phone: (504) 410-9611
    Fax: (504) 410-9937
    Cell: (504) 495-9666

    *Attorneys for Whitfield Bryson & Mason LLP, Pendley Baudin & Coffin, Rhine Law Firm, and Luckey & Mullins*


**ALLISON GRANT, P.A.**

By: ___ */s/ Allison Grant* ___
    Allison Grant (FL #858330)
    agrant@allisongrantpa.com
    14 SE 4th St
    Boca Raton, FL 33432-6111
    Phone: 561-994-9646
    Fax: 561-431-4627


**ALTERS LAW FIRM, P.A.**

By: ___ */s/ Jeremy W. Alters* ___
    Jeremy W. Alters (FL #111790)
    jeremy@alterslaw.com
    Justin D. Grosz (FL #984000)
    justin@alterslaw.com
    Matthew T. Moore, Of Counsel (FL #70034)
    matthew@alterslaw.com
    Design Center of the Americas
    1855 Griffin Road, Suite C470

Dania Beach, FL 33004
Phone: (305) 571-8550
Fax: (305) 571-8558

**GIEGER, LABORDE & LAPEROUSE, LLC**

By:   /s/ Victoria E. Emmerling
      Andrew A. Braun (LA #3415)
      abraun@glllaw.com
      Victoria E. Emmerling (LA #33117)
      temmerling@glllaw.com
      701 Poydras Street, Suite 4800
      New Orleans, Louisiana 70139-4800
      Phone: (504) 561-0400
      Fax: (504) 561-1011

      *Attorneys for Morris Bart, L.L.C.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Memorandum has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 15th day of July, 2016.

                    /s/ Jimmy R. Faircloth, Jr.
                       OF COUNSEL

**From:** pgarrett@garrettco.com [mailto:pgarrett@garrettco.com]
**Sent:** Saturday, July 09, 2016 7:01 AM
**To:** Val Exnicios
**Cc:** 'Chris Coffin'; 'Nicholas Rockforte'; gmason@wbmllp.com; jrr@rhinelawfirm.com; 'Daniel K Bryson'; 'Stan Baudin'
**Subject:** Re: Meeting on chinese drywall fees and costs

The PSC and the Court hired us and I would be more comfortable if you get their permission for my interview and to see if they want to attend or have any specific areas that are confidential.

Thanks

Philip A. Garrett, CPA
600 Northwoods Drive
Abita Springs, LA  70420
pgarrett@garrettco.com
Direct: 985-635-1500
Office: 985-746-9165

---

**From:** Val Exnicios <vpexnicios@exnicioslaw.com>
**To:** pgarrett@garrettco.com
**Cc:** 'Chris Coffin' <ccoffin@pbclawfirm.com>; 'Nicholas Rockforte' <nrockforte@pbclawfirm.com>;
gmason@wbmllp.com; jrr@rhinelawfirm.com; 'Daniel K Bryson' <dan@wbmllp.com>; 'Stan Baudin'
<sbaudin@pbclawfirm.com>
**Sent:** Tuesday, July 5, 2016 3:38 PM
**Subject:** RE: Meeting on chinese drywall fees and costs

Mr. Garrett: I was not referencing any Order of the Court but rather the filing by the PSC/FC relative to its Motion for attorneys' fees and costs. My original email provided the official record reference and the PSC's filing is a matter of public record since it was formally filed by the PSC into the record. I am unsure as to why it is necessary in your view to secure the permission of the Court and/or PSC in order for you to confer with us regarding this publicly filed document. Please advise as to your rationale as there is obviously nothing "confidential" about what the PSC chose to file into the public record. If you did not provide the information to the PSC for it to prepare the filing and/or are not otherwise the author of the filing or any information contained therein and/or are unfamiliar with any information or data contained therein, then please advise accordingly so that we may pursue consultation with whomever is in a position to provide explanation for the apparent confusing and/or contradictory data contained in the PSC's filing. Thank you, Val

Val Patrick Exnicios, Esq.
Liska, Exnicios & Nungesser
Attorneys-At-Law
1515 Poydras Street
14th Floor, Ste. 1400
New Orleans, LA.  70112
Telephone: (504) 410-9611
Facsimile: (504) 410-9937

1

Cell: (504) 495-9666

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by return e-mail and must delete it from his or her computer. **Please note and be advised that Val P. Exnicios and all attorneys and support staff of Liska, Exnicios & Nungesser utilize email transmission as an ancillary support of traditional fax and US 1st Class Mail communication. Email is not necessarily checked or reviewed at regular intervals and as such, can not and should not be relied upon for primary communication, service of pleadings, motions, and/or the like.**

---

**From:** pgarrett@garrettco.com [mailto:pgarrett@garrettco.com]
**Sent:** Saturday, July 02, 2016 10:34 AM
**To:** Val Exnicios
**Subject:** Meeting on CDW fees and costs

 Sorry we have not been able to speak.
I left you a voice message when you were in Paris that I would like to see the Court Order you referenced in your letter and would like you to get the OK from the PSC and the Court for me to speak to you since the Court has deemed various issues as confidential.

Please understand that I am not trying to be difficult but just cautious.

Thanks

Philip A. Garrett, CPA
600 Northwoods Drive
Abita Springs, LA  70420
pgarrett@garrettco.com
Direct: 985-635-1500
Office: 985-746-9165

<div align="center">

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

</div>

| | |
|---|---|
| IN RE:  **CHINESE-MANUFACTURED** | **MDL NO. 2047** |
| **DRYWALL PRODUCTS LIABILITY** | |
| **LITIGATION** | **SECTION: L** |
| **THIS DOCUMENT RELATES TO:** | **JUDGE FALLON** |
| **ALL** *CASES* | **MAG. JUDGE WILKINSON** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

<div align="center">

**NOTICE OF 30 (b)(6) DEPOSITION & REQUESTS FOR PRODUCTION**

</div>

TO:   Court Appointed Plaintiffs Steering Committee
through Court Appointed Liaison Counsel:
Russ Herman, Esq.
Herman, Herman & Katz
820 O'Keefe Avenue
New Orleans, LA 70130-3425

**PLEASE TAKE NOTICE** that undersigned counsel will take the testimony of the Court

Appointed Plaintiffs' Steering Committee (PSC) and/or Fee Committee (FC) through its/their

designee(s) as the person or persons most knowledgeable about the areas of inquiry and documents

noted on exhibits "A" & "B" attached hereto and made a part hereof,  pursuant to the Federal Rules

of Civil Procedure, for all purposes, including perpetuation, before a Notary Public or some other

person authorized by law to administer oaths, on the date(s) and time(s) to be agreed to by the

PSC/FC and undersigned counsel, at a location to be agreed to by the PSC/FC and undersigned

counsel, and/or as ordered by the Court in the absence of such agreement.

It is hereby requested that the PSC/FC designate one or more members or other persons

who consents to testify on its/their behalf regarding subjects identified in Exhibit "A," and

documents identified in Exhibit "B," as well as such other relevant knowledge as the witness(es)

may possess.

<div align="center">

1 of 3

</div>

In connection with this deposition, a Request for Production of Documents is served upon deponent requiring the production of these documents listed in Exhibit "B" *in native format*.

This testimony will be given before a court reporter, and will continue from day to day until all designated witnesses and topics are addressed and documents produced. All witnesses designated will also be called to testify to all relevant matters within their personal knowledge in addition to the collective knowledge of the PSC/FC, knowledge both known and reasonably available to the PSC and FC if not directly known.

Respectfully submitted:

**FAIRCLOTH, MELTON & SOBEL, LLC**

By: _____
    Jimmy R. Faircloth, Jr. (LA #20645)
    jfaircloth@fairclothlaw.com
    Brook L. Villa (LA #31988)
    bvilla@fairclothlaw.com
    Franklin "Drew" Hoffmann (LA #35824)
    dhoffmann@fairclothlaw.com
    301 Main Street, Suite 920
    Baton Rouge, LA 70801
    Phone: (225) 343-9535
    Fax: (225) 343-9538

    *Attorneys for Parker Waichman LLP*

**BARON & BUDD, P.C.**

By: _____
    Russell W. Budd (TX #03312400)
    rbudd@baronbudd.com
    S. Ann Saucer (TX #00797885;
    LA #21368)
    asaucer@baronbudd.com
    3102 Oak Lawn Avenue, Suite 1100
    Dallas, TX 75219
    Phone: 214-521-3605
    Fax: 214-520-1181

**LISKA, EXNICIOS & NUNGESSER**

By: _____
    Val Patrick Exnicios, Esq.
    vpexnicios@exnicioslaw.com
    1515 Poydras Street
    14th Floor, Ste. 1400
    New Orleans, LA. 70112
    Phone: (504) 410-9611
    Fax: (504) 410-9937
    Cell: (504) 495-9666

    *Attorneys for Whitfield Bryson & Mason*
    *LLP, Pendley Baudin & Coffin, Rhine*
    *Law Firm, and Luckey & Mullins*

**ALLISON GRANT, P.A.**

By: _____
    Allison Grant (FL #858330)
    agrant@allisongrantpa.com
    14 SE 4th St
    Boca Raton, FL 33432-6111
    Phone: 561-994-9646
    Fax: 561-431-4627

**MCCALLUM, HOAGLUND, COOK & IRBY, LLP**

By: _____
    Eric D. Hoaglund
    ehoaglund@mhcilaw.com
    905 Montgomery Highway, Suite 201
    Vestavia Hills, Alabama 35216
    Phone: (205) 824-7767
    Fax: (205) 824-7768

**ALTERS LAW FIRM, P.A.**

By: _____
    Jeremy W. Alters (FL #111790)
    jeremy@alterslaw.com
    Justin D. Grosz (FL #984000)
    justin@alterslaw.com
    Matthew T. Moore, Of Counsel (FL #70034)
    matthew@alterslaw.com
    Design Center of the Americas
    1855 Griffin Road, Suite C470
    Dania Beach, FL 33004
    Phone: (305) 571-8550
    Fax: (305) 571-8558

**GIEGER, LABORDE & LAPEROUSE, LLC**

By: _____
    Andrew A. Braun (LA #3415)
    abraun@glllaw.com
    Victoria E. Emmerling (LA #33117)
    temmerling@glllaw.com
    701 Poydras Street, Suite 4800
    New Orleans, Louisiana 70139-4800
    Phone: (504) 561-0400
    Fax: (504) 561-1011

*Attorneys for Morris Bart, L.L.C.*

## CERTIFICATE OF SERVICE

    I hereby certify that the above and foregoing Motion has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6 on this _____ day of July, 2016.


_____
OF COUNSEL

**EXHIBIT "A"**

1.    The person most knowledgeable regarding a full and complete recitation and specification of the particulars of the common benefit work claimed and including but not limited to, whether, and if so why, the PSC's claimed common benefit work includes time spent in prosecution of Taishan (and other non-settling Defendants) claims and if so, knowledge regarding all common benefit work performed in the subject Chinese Drywall (hereinafter CDW) litigation that was:

    A.  Unrelated to the prosecution, settlement and/or administration of claims specifically against Knauf and the other settling defendants (hereinafter collectively referred to as "Knauf") and

    B.  Directly related to the prosecution, settlement and/or administration of claims against Knauf.

2.    The person most knowledgeable regarding a full and complete recitation and specification of the particulars regarding any and all work performed by third parties (i.e., non PSC members and/or their associates and/or their staff) that is being claimed as common benefit work in the subject CDW litigation and any and all reasons why the PSC/FC asserts entitlement to compensation for the work of other third parties.

3.    The person most knowledgeable regarding a full and complete recitation and specification of the particulars regarding  any and all basis(es), legal, ethical or otherwise, upon which entitlement to $ 10,000,000.00 (Ten million dollars) from the Knauf settlement proceeds to fund prosecution of claims against Taishan and the non-settling defendants is asserted, thus reducing the total sum available to compensate fees and expenses of all common benefit and privately retained counsel from the Knauf settlement.

4.    The person most knowledgeable regarding a full and complete recitation and specification of the particulars regarding the value placed by the PSC on the Knauf settlement at the time the first settlement was negotiated and signed on or about December 20, 2011 and please state any and all reasons why the PSC believes the attorney fee payment negotiated and accepted by it was fair and adequate to compensate all fees, costs and expenses of common benefit counsel, and fees of primary counsel for the work performed.

5.    The person most knowledgeable regarding a full and complete recitation and specification of the particulars regarding the value placed by the PSC on the Knauf settlement with respect to post December 9, 2011 claims at the time the second settlement was negotiated and signed on or about August 12, 2013, and please state any and all reasons why the PSC believes the attorney fee and costs payment negotiated and accepted by it was fair and adequate to compensate all fees, costs and expenses of common benefit counsel, and fees of primary counsel for the work performed.

6.    The person most knowledgeable regarding a full and complete recitation and specification of the particulars regarding the total number of properties and the total square footage of

all properties known to the PSC to contain Knauf drywall at the time of the first Knauf settlement signed on or about December 20, 2011 and at the time of the second Knauf settlement signed on or about August 12, 2013 (i.e., post December 9, 2011).

7.     The person most knowledgeable regarding a full and complete recitation and specification of the particulars regarding what the PSC believed to be the valuation of the Other Loss Fund claims compensable pursuant to the first Knauf settlement at the time the settlement was signed on or about December 20, 2011, and please state the sum expected to, and that does currently, constitute any and all excess funds beyond that necessary to compensate the items of damages for which it was established.

8.     The person most knowledgeable regarding a full and complete recitation and specification of the particulars regarding why the PSC believes that the Knauf settlement attorneys' fee and cost sum should be utilized to compensate common benefit work unrelated to prosecution, settlement and/or administration of Knauf claims.

9.     The person most knowledgeable regarding a full and complete recitation and specification of the particulars regarding whether the sum the PSC believes constitutes the total benefit provided by individual counsel (i.e., $658,713,629.62) includes funds paid to pro se claimants and if so, the total amount thereof and how the PSC proposes to allocate any and all such funds.

10.    The person most knowledgeable regarding a full and complete recitation and specification of the particulars regarding the PSC's knowledge of any and all work performed by privately retained counsel at the time the PSC negotiated the Knauf attorney fee and cost settlement sum and the PSC's knowledge of said work currently.

11.    The person most knowledgeable regarding a full and complete recitation and specification of the particulars regarding the PSC's expenses and the amount reimbursed to date.

<div align="center">

**EXHIBIT "B"**

</div>

*Please produce the following **in native format**:*

### REQUEST FOR PRODUCTION # 1:

Please produce all time sheet(s), "daybook", calendar(s), and/or other record(s) of common benefit activities, appointments, and/or time spent covering the tenure of the time claimed as common benefit in the subject litigation, and including, but not limited to, all records of all time spent in the performance of common benefit work.

### REQUEST FOR PRODUCTION # 2:

Please produce any and all records substantiating the sums claimed in costs and/or expenses from the settlement with Knauf and/or any other settling defendant.

### REQUEST FOR PRODUCTION # 3:

Please produce a copy of all PTO 28 Exhibit A – Initial Affidavits For Compensation For Common Benefit Time And Reimbursement Of Expenses, and a copy of all Exhibit B – Second Affidavits In Connection With Request For Allocation Of Common Benefit Fee And Cost Award.

### REQUEST FOR PRODUCTION # 4:

Please produce all reports, spreadsheets, calculations, working papers and/or memoranda submitted to the PSC/FC by Phillip Garrett.

### REQUEST FOR PRODUCTION # 5:

Please produce all communications between Phillip Garrett and the PSC/FC relating to common benefit fees, the allocation of fees between common benefit fees and primary counsel fees and/or the disallowance of common benefit time or expenses.

### REQUEST FOR PRODUCTION # 6:

Please produce all emails to or from FC/PSC members discussing or relating to the allocation of fees between common benefit counsel and primary counsel.

### REQUEST FOR PRODUCTION # 7:

Please produce all emails to or from FC/PSC members discussing or relating to the claims against Taishan.

<div align="center">

1 of 2

</div>

**REQUEST FOR PRODUCTION # 8:**

Please produce all transcripts, agenda and minutes of PSC/FC meetings.

**REQUEST FOR PRODUCTION # 9:**

Please produce all records reflecting, evidencing or accounting for all voluntary assessments deposited pursuant to the Court Order dated March 24, 2011 (Doc. 8389) or the Court Order dated April 13, 2011 (Doc. 8545).

**REQUEST FOR PRODUCTION # 10:**

To the extent not produced in response to a previous Request for Production contained herein, please produce all documents, data and other materials relied on or prepared by the PSC/FC as evidence of or resulting in the proposed allocation of fees for common benefit counsel.

**REQUEST FOR PRODUCTION # 11:**

To the extent not produced in response to a previous Request for Production contained herein, please produce all documents, data and other materials relied on or prepared by the PSC/FC as evidence of or resulting in the proposed allocation of fees for primary counsel.

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  **CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047**<br><br>**SECTION: L** |
| **THIS DOCUMENT RELATES TO:** | **JUDGE FALLON** |
| **ALL *CASES*** | **MAG. JUDGE WILKINSON** |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### NOTICE OF SUBMISSION

PLEASE TAKE NOTICE that *Primary Counsel's Motion for a Case Management Order Providing for Discovery, the Unsealing of Records Regarding Common Benefit Fees, and the Appointment of a Special Master* filed by the following Primary Counsel is submitted for hearing on July 27, at 9:00 a.m. before the Honorable Eldon E. Fallon, United States District Court, Eastern District of Louisiana, in accordance with the Local Rules:

- Parker Waichman LLP;
- Whitfield Bryson & Mason LLP;
- Pendley Baudin & Coffin;
- Rhine Law Firm;
- Luckey & Mullins;
- Baron & Budd, P.C.;
- Alters Law Firm, P.A.;
- McCallum, Hoaglund, Cook & Irby, LLP;
- Allison Grant, P.A.; and,
- Morris Bart, LLC.

Respectfully submitted,

**FAIRCLOTH, MELTON & SOBEL, LLC**

By: ___/s/ *Jimmy R. Faircloth, Jr.*___
Jimmy R. Faircloth, Jr. (LA #20645)
jfaircloth@fairclothlaw.com
Brook L. Villa (LA #31988)
bvilla@fairclothlaw.com
Franklin "Drew" Hoffmann (LA #35824)

**LISKA, EXNICIOS & NUNGESSER**

By: ___/s/ *Val Patrick Exnicios*___
Val Patrick Exnicios, Esq.
vpexnicios@exnicioslaw.com
1515 Poydras Street
14th Floor, Ste. 1400
New Orleans, LA. 70112

dhoffmann@fairclothlaw.com
301 Main Street, Suite 920
Baton Rouge, LA 70801
Phone: (225) 343-9535
Fax: (225) 343-9538

*Attorneys for Parker Waichman LLP*

Phone: (504) 410-9611
Fax: (504) 410-9937
Cell: (504) 495-9666

*Attorneys for Whitfield Bryson & Mason LLP, Pendley Baudin & Coffin, Rhine Law Firm, and Luckey & Mullins*

**BARON & BUDD, P.C.**

By: ___/s/ Russell W. Budd_____
    Russell W. Budd (TX #03312400)
    rbudd@baronbudd.com
    S. Ann Saucer (TX #00797885;
    LA #21368)
    asaucer@baronbudd.com
    3102 Oak Lawn Avenue, Suite 1100
    Dallas, TX 75219
    Phone: 214-521-3605
    Fax: 214-520-1181

**ALLISON GRANT, P.A.**

By: ___/s/ Allison Grant_____
    Allison Grant (FL #858330)
    agrant@allisongrantpa.com
    14 SE 4th St
    Boca Raton, FL 33432-6111
    Phone: 561-994-9646
    Fax: 561-431-4627

**MCCALLUM, HOAGLUND, COOK & IRBY, LLP**

By: ___/s/ Eric D. Hoaglund_____
    Eric D. Hoaglund
    ehoaglund@mhcilaw.com
    905 Montgomery Highway, Suite 201
    Vestavia Hills, Alabama 35216
    Phone: (205) 824-7767
    Fax: (205) 824-7768

**ALTERS LAW FIRM, P.A.**

By: ___/s/ Jeremy W. Alters_____
    Jeremy W. Alters (FL #111790)
    jeremy@alterslaw.com
    Justin D. Grosz (FL #984000)
    justin@alterslaw.com
    Matthew T. Moore, Of Counsel (FL #70034)
    matthew@alterslaw.com
    Design Center of the Americas
    1855 Griffin Road, Suite C470
    Dania Beach, FL 33004
    Phone: (305) 571-8550
    Fax: (305) 571-8558

**GIEGER, LABORDE & LAPEROUSE, LLC**

By: ___/s/ Victoria E. Emmerling_____
    Andrew A. Braun (LA #3415)
    abraun@glllaw.com
    Victoria E. Emmerling (LA #33117)

temmerling@glllaw.com
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-4800
Phone: (504) 561-0400
Fax: (504) 561-1011

*Attorneys for Morris Bart, L.L.C.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Notice has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 15th day of July, 2016.

*/s/ Jimmy R. Faircloth, Jr.*
OF COUNSEL

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 |
| | SECTION: L |
| | JUDGE FALLON |
| | MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: *All cases* | |

## PRELIMINARY MEMORANDUM IN OPPOSITION TO PRIMARY COUNSEL'S MOTION FOR A CASE MANAGEMENT ORDER PROVIDING FOR DISCOVERY, THE UNSEALING OF RECORDS REGARDING COMMON BENEFIT FEES, AND THE APPOINTMENT OF A SPECIAL MASTER [DOC. 20394]

**MAY IT PLEASE THE COURT:**

Disappointingly, but not for the first time, self-designated "Primary Counsel" for certain objectors have chosen to ignore the established processes of this MDL in order to advance their interests. Just as they challenge the sufficiency of the total funds available for distribution after ignoring all opportunities to do so timely under Rule 23 of the Federal Rules of Civil Procedure, they now ignore the Local Rules of the Court governing motion practice, the process established under Pretrial Order 28(F) ("PTO 28(F)") in this MDL, and the expected practice in this Court for the handling of discovery matters, in filing a Motion for a Case Management Order Providing for Discovery, the Unsealing of Records Regarding Common Benefit Fees, and the Appointment of a Special Master [Doc. 20394]. Their motion should not be addressed by the Court until the PSC Fee Committee has been afforded the opportunity to oppose it in proper, fully-researched fashion.

The language of Local Rule 7.2 is mandatory with regard to the notice and time requirements for motions and requested hearings:

> **LR 7.2 Noticing Motions for Submission**
> Counsel filing a motion must, at the time of filing, notice it for submission within a reasonable time. Unless otherwise ordered by the court, motions **must be filed not later than the fifteenth day preceding the date assigned for submission and actual notice of the submission date must be given to opposing counsel at least fifteen days before the submission date,** regardless of which FRCP 5(b) service method is used. The motion and supporting memorandum must also be served with the notice.

L.R. 7.2 (emphasis added).  Objectors nonetheless chose to file their motion on Friday, July 15 with the request and expectation that it be heard on July 27, in violation of the mandatory 15-day notice/filing requirements of the Court.  They did so without even seeking leave of Court to deviate from the Local Rule mandate.

By proceeding in this way, objectors in turn triggered the Local Rule requirement for opposition memoranda, *to-wit*:

> **LR 7.5 Response and Memorandum**
> Each party opposing a motion must file and serve a memorandum in opposition to the motion with citations of authorities **no later than eight days before the noticed submission date.** If the opposition requires consideration of facts not in the record, counsel must also file and serve all evidence submitted in opposition to the motion with the memorandum.

L.R. 7.5 (emphasis added). But even as it files the instant, preliminary opposition in compliance with Local Rule 7.5, the Fee Committee submits that, on less than two (2) working days' notice, it is neither feasible nor reasonable to require that it research, prepare and file a comprehensive brief opposing the extraordinary relief sought by the objectors' motion on both factual and legal grounds.

2

The motion is procedurally improper in another respect.  The fee allocation question before the Court is governed by a series of carefully-considered pretrial orders entered in the record of this MDL, most recently PTO 28(F).  The latter specifies dates for the Fee Committee's allocation motion, any opposition memoranda, and the Fee Committee's reply to any oppositions filed. These dates, and the corresponding filings, now have passed; and yet, having filed a number of briefs pursuant to the Order and having already made therein the argument that additional information and discovery are needed, objectors depart from the orderly process established by Your Honor by triggering a new round of motion practice and briefing addressed to the fee allocation question.  The Fee Committee submits that repeated motions and briefing are unnecessary to address the discovery needs asserted by objectors, and were neither contemplated nor provided for under PTO 28(F).

Finally, the longstanding practice of this Court has been to encourage counsel to meet and confer on discovery issues and then, if still in disagreement, to raise these issues with the Court informally in order to see if problems can be resolved without the need for formal motion practice.  The objectors have disregarded this practice as well, even though it is one which has proven helpful to both the Court and counsel and one which has promoted efficiency in this and in other MDLs.

The fundamental question whether objectors are entitled to additional information and/or clarification relative to fee allocation before the Court rules on the issue, is one readily resolved without the formal and costly discovery structure and delays which would ensue if their motion were granted.  The Fee Committee, for example, already has expressed to objectors' counsel its willingness to facilitate a meeting with the objectors and Phil Garrett, in which Mr. Garrett might answer any questions about the deductions and calculations resulting in the current total of

3

available fees.   Toward this end, the Fee Committee already has requested that Mr. Garrett correlate the deductions from the settlement fee/cost funds at issue with specific Court orders and directives.   Although currently detained to attend to a family matter, Mr. Garrett is expected to provide this information on return, at which time it will be made part of the record and available to counsel for objectors.

No doubt there are a number of other simple actions and collaborations which might have secured the information allegedly needed by objectors, without imposing the significant burdens of expense and delay necessitated in what they propose by motion.   Rather than explore these possibilities, the objectors seek drastic relief which now must be opposed in the record, as both burdensome and unjustified in law and in fact.   In order to alleviate the notice problem created by the objectors' late filing, however, the Fee Committee requests that it be given the opportunity to present its full opposition through a supplemental memorandum, which it would propose be filed this Friday, July 22, 2016.

If the Court is agreeable, the Fee Committee further proposes that the July 27, 2016 hearing on its allocation motion be postponed, and the hearing scheduled for that day converted into a status conference with counsel for objectors and the Fee Committee.   Counsel then not only may have informal discussion to explore alternatives for information gathering and disclosure, but also enlist Your Honor's guidance on how to address the objectors' concerns in a more efficient and expeditious manner.

A proposed Order accordingly is submitted herewith (as Exhibit A) for the Court's consideration.   It both (a) continues the July 27 hearing on the Fee Committee's allocation motion, converting same into a status conference, and (b) sets a date (which, again, the Fee

4

Committee requests be no earlier than July 22, 2016) for the Fee Committee to file a supplemental memorandum in opposition to the objectors' motion.

Dated: July 19, 2016                              Respectfully submitted,

                                                  /s/ Russ M. Herman
                                                  Russ M. Herman (Bar No. 6819) (on the Brief)
                                                  Leonard A. Davis (Bar No. 14190) (on the Brief)
                                                  Stephen J. Herman (Bar No. 23129) (on the Brief)
                                                  Madelyn O. Breerwood (Bar. No. 35538) (on the Brief)
                                                  **HERMAN, HERMAN & KATZ, LLC**
                                                  820 O'Keefe Avenue
                                                  New Orleans, LA  70113
                                                  PH:  (504) 581-4892
                                                  FAX:  (504) 561-6024
                                                  ldavis@hhklawfirm.com
                                                  ***Plaintiffs' Liaison Counsel***
                                                  ***MDL 2047***

                                                  Arnold Levin (on the Brief)
                                                  Fred S. Longer (on the Brief)
                                                  Sandra L. Duggan (on the Brief)
                                                  Matthew C. Gaughan (on the Brief)
                                                  Levin, Fishbein, Sedran & Berman
                                                  510 Walnut Street, Suite 500
                                                  Philadelphia, PA 19106
                                                  PH:  (215) 592-1500
                                                  FAX:  (215) 592-4663
                                                  Alevin@lfsblaw.com
                                                  ***Plaintiffs' Lead Counsel***
                                                  ***MDL 2047***

                                                  Gerald E. Meunier (Bar. No. 9471) (on the Brief)
                                                  Rachel A. Sternlieb (Bar. No. 35338) (on the Brief)
                                                  Gainsburgh, Benjamin, David, Meunier
                                                   & Warshauer, LLC
                                                  2800 Energy Centre, 1100 Poydras Street
                                                  New Orleans, LA 70163-2800
                                                  Phone: (504) 522-2304
                                                  Fax: (504) 528-9973
                                                  gmenuier@gainsben.com

                                                  ***ON BEHALF OF THE FEE COMMITTEE***

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 19th day of July, 2016.

/s/ Leonard A. Davis
Leonard A. Davis, Esquire
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com

*Plaintiffs' Liaison Counsel*
*MDL 2047*

**Debbie Murphy**

| | |
|---|---|
| **From:** | Jimmy Faircloth <jfaircloth@fairc150thlaw.com> |
| **Sent:** | Friday, September 23, 2016 2:16 PM |
| **To:** | Dan Balhoff; Lenny Davis |
| **Cc:** | 'Val Exnicios'; 'Rick Holston'; 'Kerry J. Miller'; gev@holstonvaughan.com; 'Mandy Barton'; 'John Teague'; 'Richard Taylor'; 'Kasie Braswell'; 'Merino, Rene'; Russ Herman; Arnold Levin; 'Steve Martino'; 'Marci Jones'; 'Ann Saucer'; 'Gary Mason'; 'Christopher L Coffin'; 'Daniel Bryson'; 'Joel Rhine'; 'Gerald E Meunier'; 'Allison Grant'; 'Holly Werkema'; 'Russell Budd'; Brook Landry Villa |
| **Subject:** | FW: CDW - Proposed CMO by Objectors |
| **Attachments:** | Attachment A - ESI Metadata and Coding Fields.pdf; Attachment B - File Formats.pdf; Case Management Order (SM) from Objectors 9.23.16 FINAL REDLINE.docx; Case Management Order (SM) from Objectors 9.23.16 FINAL CLEAN.docx |

Special Master Balhoff,

Attached is the CMO proposed by the Objector group, using Lenny's format. For sake of comparison, we also attach a redline version, although it's hard to read. There are many differences, but the most significant can be summarized as follows:

1. Eliminated unnecessary historical information and editorial discriptions and comments;
2. Eliminated the section on Liaison Counsel. The issue of attorney time and pay for this exercise is not on the table.
3. Simplified and clarified the Sealed Documents section. Multiple Objectors want to review the documents.
4. Added a blank for you to set a hearing on the Motion to Distribute Undisputed Fees
5. Expanded the document production list to include the materials we previously identified
6. Added depositions of Mr. Levin, Mr. Herman, and Ms. Duggan, which we believe are necessary.
7. Lengthened timelines and the hourly limitation on depositions to account for the scope of information at issue and the number of Objectors. We pledge to be as streamed-lined as reasonably possible in the depositions by avoiding time spent on matters that can be proven by documents and by avoiding redundancy. It's our understanding that you plan to attend the depositions.

I trust that Lenny will point to these and other proposed changes as he deems necessary. Thank you,

Jimmy

Jimmy R. Faircloth, Jr.
**Faircloth, Melton & Sobel, LLC**
**jfaircloth@fairc150thlaw.com**

*Alexandria Office*:
105 Yorktown Drive
Alexandria, LA 71303
Phone 318-619-7755
Fax 318-619-7744

*Baton Rouge Office*:
One American Place
301 Main St., Ste. 920

Baton Rouge, LA  70801
Phone 225-343-9535
Fax 225-343-9538

CONFIDENTIALITY STATEMENT

This electronic message contains information from Faircloth, Melton & Sobel, LLC, and is confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you have received this electronic message in error, please notify us immediately by telephone at (318) 619-7755.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE: CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION                                          **MDL NO. 2047**

                                                    **SECTION: L**

                                                    **JUDGE FALLON**
                                                    **MAG. JUDGE WILKINSON**

THIS DOCUMENT RELATES TO:
*ALL CASES*
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## SPECIAL MASTER CASE MANAGEMENT ORDER NO. 1

By Order dated July 18, 2016 (entered July 19, 2016), Daniel J. Balhoff was appointed Special Master [Rec. Doc. 20410]. Thereafter, the Court clarified and supplemented that Order on August 30, 2016 [Rec. Doc. 20478]. The following Case Management Order is established to govern these proceedings before the Special Master:

**I.     SEALED DOCUMENTS**

The Special Master has been given access to all sealed documents. Except as provided herein, or as otherwise ordered by the Court or Special Master at a later date, all sealed documents shall remain confidential. All documents referenced in Section IV below shall be provided to Co-Liaison Counsel, Jimmy Faircloth, Jr. and Val Exnicios, who will distribute such documents to Objectors and may use such documents to address the limited issues before the Special Master. Objectors may voluntarily share documents filed under seal pertaining to them with Co-Liaison Counsel and other Objectors at their discretion.

1

II.    **PENDING MOTIONS**[1]

The following motions are pending before the Special Master:

A.    Villa Lago Plaintiffs' Motion for a Final Award of Attorneys' Fees and Reimbursement of Costs [Rec. Doc. 20347]. The Fee Committee has filed a response [Rec. Doc. 20383]. The Villa Lago Plaintiffs intend to file a reply brief prior to this matter being set for adjudication.

B.    The Fee Committee's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F) [Rec. Doc. 20293]. Further, the Special Master has received Primary Counsel's Request to Allocate the Global Fee Award Between Common Benefit Counsel and Primary Counsel and Objections to the Fee Committee's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Attorney and Individual Counsel Fees Pursuant to PTO 28(F) [Rec. Doc. 20336]. [List additional responses and objections] This matter is not yet ready for adjudication.

C.    Motion for Immediate Disbursement of Undisputed Fees [Rec. Doc. 20434]. Krupnick Campbell Malone filed a Joinder of Primary Counsel's Motion for Immediate Disbursement of Undisputed Fees [Rec. Doc. 20436]. The Fee Committee filed a Response in Opposition to Objecting Counsel's Motion for Immediate Disbursement of Undisputed Fees [Rec. Doc. 20440]. A Response was filed by Taylor Martino, P.C. to the Motion for Immediate Disbursement of

---

[1] The Special Master takes note that the Court has retained jurisdiction over certain motions [Rec. Docs. 20340 and 20341] that may impact on the sum of money to be set aside for Individually Retained Counsel.

Undisputed Fees [Rec. Doc. 20441] and the Fee Committee filed a Reply to the

Response of Taylor Martino P.C. [Rec. Doc. 20455].  A request was made for oral

argument on the Motion for Immediate Disbursement of Undisputed Fees.  The

Special Master will hear oral argument on the matter on_____,

2016 at _____, Louisiana.

D.    The Fee Committee's Motion to Approve the Amended Memorandum of

Understanding Regarding All Homebuilder Claims for Reimbursement of Counsel

Fees [Rec. Doc. 20467].  The Special Master will also take into consideration the

submission dated September 8, 2016 by Neal A. Sivyer of the Sivyer, Barlow &

Watson, P.A. law firm, the submission dated September 8, 2016 by Arnold Levin

of the Levin Fishbein Sedran & Berman law firm, and the submission dated

September 12, 2016, by Hilarie Bass of the Greenberg Traurig law firm.   In

addition, the Special Master will consider the anticipated motion of Mr. Sivyer to

be considered an "Active Builder" pursuant to the schedule set forth in the

September 9, 2016 letter of Arnold Levin and September 9, 2016 email of the

Special Master adopting the schedule therein.

## IV.    **DISCOVERY**

The Special Master has reviewed Primary Counsel's Motion for a Case Management Order

Providing for Discovery, the Unsealing of Records Regarding Common Benefit Fees, and the

Appointment of a Special Master [Rec. Doc. 20394], a Motion for Joinder and Adoption of the

Primary Counsel's Motion for a Case Management Order Providing for Discovery, the Unsealing

of Records Regarding Common Benefit Fees, and the Appointment to a Special Master [Rec. Doc.

20420] and a Motion and Order for Leave to File Reply to the Fee Committee and Class Counsel's

3

Response in Opposition to the "Motion for Appointment of Val Exnicios & Jimmy Faircloth as Objectors' Co-Liaison Counsel, Without Other Objector Opposition, and Without PSC/FC Objection (Except as to Proposed Fee Compensation Provision)" [Rec. Doc. 20424]. The Special Master now makes the following determinations regarding discovery:

A.   **Initial Document Production**

Objectors shall be entitled to the following initial written discovery without prejudice to their right to seek additional relevant documents once its review and analysis of the following documents are complete.

Within thirty (30) days of signing of this Case Management Order, Philip Garrett, CPA, shall produce to Co-Liaison Counsel for the Objectors (who shall distribute to Objectors), the Fee Committee and the Special Master the following, which shall remain confidential (except as provided herein):

1.   Documents referenced or relied upon by Philip A. Garrett, CPA, in preparing his Declarations submitted in connection with the Fee Committee's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F), including but not limited to all submissions of common benefit time and expenses submitted to Philip Garrett pursuant to Pre-Trial Orders Nos. 9, 9A and 28 including all initial submissions and all revised submissions submitted by any attorney or firm.

2.   All ledgers, reconciliations, accountings or lists of common benefit expenses, including all records of whether or not each expense has been reimbursed to date, including but not limited to:

4

     a.    Total Time and Held Costs from Inception of the Case to Present, which will include a report identifying total time by employee, time totals by firm and time totals by firm summary.

     b.    Held Costs Expense Reports.

     c.    Shared Costs Expense Reports.

3.    Lodestar reports (with current, inception and blended values) identifying the time totals for each billing employee or individual reporting common benefit time – sortable report from inception of the case to present, which identifies Lodestar information both from inception of the case to December 2013 and from January 2014 to present.

Within forty-five (45) days of signing of this Case Management Order, the Fee Committee and/or the Plaintiffs' Steering Committee shall produce to Co-Liaison Counsel for the Objectors (who shall distribute to Objectors), the Fee Committee and the Special Master the following, which shall remain confidential (except as provided herein):

1.    A copy of the completed and signed Initial Affidavits for Compensation for Common Benefit Time and Reimbursement of Expenses received by the Fee Committee pursuant to Step 2 of PTO 28.

2.    All transcripts, agenda and minutes of PSC meetings and FC meetings.

3.    All emails, written communications and other documents:

     a.    To the PSC or any member of the PSC requesting authorization to conduct common benefit work pursuant to Pre-Trial Order No. 9 (Doc. 147); or

       b.      From the PSC or any member of the PSC authorizing, requesting or denying common benefit work pursuant to Pre-Trial Order No. 9 (Doc. No. 147).

4.     All emails, written communications and other documents to, from or by FC member(s) or PSC member(s) discussing or relating to:

       a.      The allocation of fees between common benefit counsel and primary counsel;

       b.      The claims against Taishan and/or other non-settling defendants;

       c.      Whether a particular activity or expense was for the common benefit;

       d.      The allowance or disallowance of common benefit time or expenses; or

       e.      The value of all benefits conferred upon claimants by either common benefit counsel or individually retained counsel.

5.     All memoranda, reports, ledgers, spreadsheets, or other documents prepared by or with input from Sandra Duggan regarding, discussing or relating to:

       a.      Common benefit time and/or expenses,

       b.      Whether a particular activity or expense was for the common benefit;

       c.      The allowance or disallowance of common benefit time or expenses; or

       d.      The value of benefits conferred upon claimants by either common benefit counsel or individually retained counsel.

All documents shall be produced in native format of the original document. To the extent the document must be produced as an image:

1. The file produced should maintain the integrity of all source, application, embedded, related file system metadata, and extracted text.

2. No alteration shall be made to file names or extensions for responsive native electronic files. Electronic mail should include attachments.

3. Electronically Stored Information ("ESI") shall be produced in word searchable (OCR'd) TIFF files, Bates numbered with the metadata as set forth on **Attachment A** and in the format set forth on **Attachment B**.

ESI shall be produced on CD ROMs, DVD-Rs, external hard drives, flash drives or uploaded via secured FTP, as the volume of data requires.

B.    **Depositions**

Following the completion of the production of the written discovery as outlined above, the following Round 1 depositions may proceed subject to the guidelines contained below.

1.    **Deposition of Philip Garrett**

Upon Objectors' review of the documents produced in accordance with this Case Management Order, Objectors may depose Philip Garrett within one (1) month of the completion of the production of the written discovery, subject to the availability and schedule of Mr. Garrett. The deposition shall be limited to the following topics:

a.    The Declarations of Philip Garrett, CPA.

b.    Reports prepared by Philip Garrett, CPA.

c.    Documents produced by Philip Garrett, CPA.

The deposition of Mr. Garrett shall be scheduled at a mutually convenient time and location to Philip Garrett and shall last no more than twelve (12) hours. There shall be no more

7

than one (1) primary and one (1) secondary examining attorney for Objectors. Co-Liaison Counsel for the Objectors shall coordinate with all Objectors who shall have an aggregate allotted time of ten (10) hours to question Mr. Garrett, and the failure to allocate time among themselves or to enforce that allocation of time amongst themselves during the deposition shall not result in an extension of the deposition. Counsel who have individual or divergent positions which cannot be resolved by good faith negotiations with Co-Liaison Counsel for Objectors may examine Mr. Garrett limited to matters not previously covered, provided said counsel does not impede upon the ten (10) hour limitation set forth above. The Fee Committee shall be allocated time of two (2) hours to question Mr. Garrett. The Fee Committee will designate one (1) primary examiner.

## 2. Deposition of Fee Committee Chair and Co-Chair

The deposition of Arnold Levin (the Fee Committee Chair) and Russ Herman (the Fee Committee Co-Chair and Secretary) shall take place within one (1) month of the completion of the production of the written discovery regarding the following areas of inquiry:

a. The documents produced in response to Section IV.A. above and information contained within the those documents.

b. Paragraphs 1 through 10 of PTO 28 and PTO 28(F).

c. The Consolidated Joint Petition of the Fee Committee and the Plaintiffs' Steering Committee for A Global Award of Attorneys' Fees and Reimbursement of Expenses, Filed Pursuant to Pre-Trial Order No. 28 [Rec. Doc. 17700].

d. First Amendment to the Consolidated Joint Petition of the Fee Committee and the Plaintiffs' Steering Committee for A Global Award of Attorneys' Fees and Reimbursement of Expenses, Filed Pursuant to Pre-Trial Order No. 28 [Rec. Doc. 20205].

8

e.    The Fee Committee's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F) [Rec. Doc. 20293].

f.    The Fee Committee's Omnibus Response to Objections to the Fee Committee's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F) [Rec. Doc. 20384].

The deposition of the Fee Committee Chair and Co-Chair/Secretary shall be scheduled at a mutually convenient time and location and shall last no more than fourteen (14) hours each. There shall be no more than one (1) primary and one (1) secondary examining attorney for Objectors. Questioning attorneys may only ask non-duplicative questions. Co-Liaison Counsel for the Objectors shall coordinate with all Objectors who shall have an aggregate allotted time of twelve (12) hours to question each deponent, and the failure to allocate time among themselves or to enforce that allocation of time amongst themselves during the deposition shall not result in an extension of the deposition. Counsel who have individual or divergent positions which cannot be resolved by good faith negotiations with Co-Liaison Counsel for Objectors may examine the deponent limited to matters not previously covered, provided said counsel does not impede upon the twelve (12) hour limitation set forth above. The Fee Committee shall be allocated time of two (2) hours to question each of the deponents listed in this section. The Fee Committee will designate one (1) primary examiner.

### 3.    Deposition of Sandra Duggan

The deposition of Sandra Duggan shall take place within two (2) weeks of Arnold Levin or Russ Herman's deposition, whichever is later. Ms. Duggan will be subject to the following areas of inquiry:

a.   Interviews and/or meetings conducted with Common Benefit Counsel regarding time and expense submissions in this matter and any documents or memoranda prepared in connection therewith.

b.   The documents produced in response to Section IV.A. above and information contained within the those documents.

The deposition of the Sandra Duggan shall be scheduled at a mutually convenient time and location and shall last no more than fourteen (14) hours. There shall be no more than one (1) primary and one (1) secondary examining attorney for Objectors. Questioning attorneys may only ask non-duplicative questions. Co-Liaison Counsel for the Objectors shall coordinate with all Objectors who shall have an aggregate allotted time of twelve (12) hours to question Ms. Duggan, and the failure to allocate time among themselves or to enforce that allocation of time amongst themselves during the deposition shall not result in an extension of the deposition. Counsel who have individual or divergent positions which cannot be resolved by good faith negotiations with Co-Liaison Counsel for Objectors may examine the deponent limited to matters not previously covered, provided said counsel does not impede upon the twelve (12) hour limitation set forth above. The Fee Committee shall be allocated time of two (2) hours to question the deponent listed in this section. The Fee Committee will designate one (1) primary examiner.

**3.   Deposition of Plaintiffs' Steering Committee Designee**

Objectors may take the deposition of a designee of the Plaintiffs' Steering Committee following the depositions of the Mr. Levin, Mr. Herman and Ms. Duggan, provided that the deposition is not duplicative of the previous depositions. The Plaintiffs' Steering Committee shall designate at least one designee to testify as to the following areas of inquiry:

a. The documents produced in response to Section IV.A. above and information contained within the those documents.

b. Paragraphs 1 through 10 of PTO 28 and PTO 28(F).

c. The Consolidated Joint Petition of the Fee Committee and the Plaintiffs' Steering Committee for A Global Award of Attorneys' Fees and Reimbursement of Expenses, Filed Pursuant to Pre-Trial Order No. 28 [Rec. Doc. 17700].

d. First Amendment to the Consolidated Joint Petition of the Fee Committee and the Plaintiffs' Steering Committee for A Global Award of Attorneys' Fees and Reimbursement of Expenses, Filed Pursuant to Pre-Trial Order No. 28 [Rec. Doc. 20205].

The deposition of the Plaintiffs' Steering Committee shall be scheduled at a mutually convenient time and location and shall last no more than fourteen (14) hours which may be conducted over a period of two (2) days. There shall be no more than one (1) primary and one (1) secondary examining attorney for Objectors. Co-Liaison Counsel for the Objectors shall coordinate with all Objectors who shall have an aggregate allotted time of twelve (12) hours to question the deponent, and the failure to allocate time among themselves or to enforce that allocation of time amongst themselves during the deposition shall not result in an extension of the deposition. Counsel who have individual or divergent positions which cannot be resolved by good faith negotiations with Co-Liaison Counsel for Objectors may examine the deponent limited to matters not previously covered, provided said counsel does not impede upon the twelve (12) hour limitation set forth above. The Fee Committee shall be allocated time of two (2) hours to question the deponent. The Fee Committee will designate one (1) primary examiner.

### 4.   General Deposition Guidelines

Except as otherwise provided herein, all depositions pursuant to this Case Management Order shall be confidential to avoid disclosure to adverse parties in this ongoing litigation. While the deponent is being examined about any under seal document or the confidential information contained therein, persons other than Objectors (and their attorneys) and Co-Liaison Counsel for Objectors, or any other individual(s) to whom disclosure is not authorized as set forth above shall be excluded from the deposition, and the Court Reporter shall designate such testimony as confidential.[2]   Further, portions of the transcript designated as confidential shall only be made available to those parties who originally had access or who have access pursuant to this Case Management Order to the under seal documents or the confidential information contained therein. The deposition shall be stenographically recorded by a court reporter that shall administer the oath or the affirmation to the deponent and a written transcript by the court reporter shall constitute the official record of the deposition for purposes of Fed.R.Civ.P. 30(e).  All parties shall bear their own costs in securing copies of the deposition transcript.   Objectors (including their counsel) and Co-Liaison Counsel shall have the right to monitor the deposition, but not question the deponent, by telephone.

Additional discovery (written discovery or depositions) will be permitted only upon order of the Special Master for good cause.  A party requesting additional discovery shall send a letter to the Special Master of no more than four (4) pages describing the nature and grounds of such additional discovery.

---

[2]  *See In re Xarelto Prod. Liab. Litig.,* MDL 2592, Pretrial Order No. 23 (Deposition Guidelines) at 2 (E.D.La. Feb. 17, 2016).  Available at:
http://www.laed.uscourts.gov/sites/default/files/xarelto/Pretrial%20Order_23_0.pdf.

## V.   **MERITS ADJUDICATION**

At the conclusion of discovery, Counsel for the Objectors may submit a supplemental memorandum. Thereafter, the Fee Committee shall have fifteen (15) days to submit a response memorandum.  The Special Master will hold an evidentiary hearing on all outstanding issues regarding allocation of the global fee award no later than thirty (30) days from the Fee Committee's response memorandum.

New Orleans, Louisiana, this _____ day of _____, 2016.


_____
Special Master Dan Balhoff

## Attachment A: ESI Metadata and Coding Fields

| Field Name | Populated For (Email, Edoc, or Both) | Field Description |
|---|---|---|
| ProdBeg | Both | Control Numbers |
| ProdEnd | Both | Control Numbers |
| BegAttach | Both | Control Numbers (First production bates number of the first document of the family) |
| EndAttach | Both | Control Numbers (Last production bates number of the last document of the family) |
| PgCount | Both | Page Count |
| Custodian | Both | Custodian name (ex. John Doe) |
| Native File | Both | Native File Link |
| EmailSubject | Email | Subject line of email |
| DateSent | Email | Date email was sent |
| DateMod | Edoc | Date the document was modified |
| TimeSent | Email | Time email was sent |
| To | Email | All recipients that were included on the "To" line of the email |
| From | Email | The name and email address of the sender of the email |
| CC | Email | All recipients that were included on the "CC" line of the email |
| BCC | Email | All recipients that were included on the "BCC" line of the email |
| Attach | Email | The file name(s) of the attached documents |
| DateCreated | Edoc | Date the document was created |
| FileName | Both | File name of the edoc or email (for emails which are not attachments to another email this is the subject line of the email with its applicable extension) |
| Title | Edoc | Any value populated in the Title field of the document properties |
| Subject | Edoc | Any value populated in the Subject field of the document properties |
| Author | Edoc | Any value populated in the Author field of the document properties |
| DocExt | Both | File extension of the document |
| Text | Both | Text extracted from the email or edoc |

| Confidentiality | Both | Indicates if document has been designated as "Confidential" or "Highly Confidential" under the Protective Order |
|---|---|---|
| FileSize | Both | File size |
| Source | Both | Name of Party producing document |
| TextPath | Both | Filepath for OCR or extracted text files |
| MSGID | Email | Where applicable, Email system identifier assigned by the host email system. This value is extracted from parent message during processing |
| PST_OST_Filename | Email | Where applicable, Filename of PST or OST container from which email was collected |
| FilePath | Edoc | Original file/path of the location where the item resided at the time of preservation. This should include location, file name, and  file  source extension |
| Folder | Email | Where applicable, Folder location of the email within the PST or OST |
| AttachBates | Email | Bates numbers of the first pages of each attachment, separated by semi-colons |
| AttachCount | Email | Number of email attachments |
| AttachNames | Email | Names of the attachments as listed in the email, separated by semi-colons |
| DateReceived | Email | Date received |
| OutlookItemType | Email | Where applicable, Outlook item type, e.g., email, calendar item, contact, etc. |
| LastModBy | Edoc | Where applicable, Last person who modified a document |
| DocumentType | Both | Email, Edoc or Physical (for scanned documents) |
| HashValue | Both | MD5 or SHA1 hash value |
| Redacted | Both | "yes" if document was redacted |
| ProdVol | Both | Name of production media |
| Other Paths | Both | The full file paths, including file names, or in the case of emails, the folder names, of each copy of the document not being produced from this custodian, separate by semi-colons. |
| KrollControlNo | Both | Only for Clone Documents |

## Attachment B: File Formats

<u>Image Load Files</u>

- The name of the image load file should mirror the name of the delivery volume, and should have an .LFP extension (i.e., ABC001.LFP)

- The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.)

- There should be one row in the load file per TIFF image.

- Every image in the delivery volume should be contained in the image load file.

- The image key should be named the same as bates number of the page.

- Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.), *i.e.*, a separate volume should be created for each piece of media delivered.

- Files that are the first page of a logical document should include a "D" where appropriate. Files that are the first page of an attachment to an e-mail should include a "C" where appropriate.  Subsequent pages of all documents (regular document, e-mail, or attachment) should include a blank in the appropriate position.

```
IM,VN00000001,D,0,@29502601;295026001\0000;VN00000001.TIF;2
IM,VN00000002, ,0,@29502601;295026001\0000;VN00000002.TIF;2
IM,VN00000003, ,0,@29502601;295026001\0000;VN00000003.TIF;2
IM,VN00000004, ,0,@29502601;295026001\0000;VN00000004.TIF;2
IM,VN00000005,D,0,@29502601;295026001\0000;VN00000005.TIF;2
IM,VN00000006, ,0,@29502601;295026001\0000;VN00000006.TIF;2
IM,VN00000007, ,0,@29502601;295026001\0000;VN00000007.TIF;2
IM,VN00000008, ,0,@29502601;295026001\0000;VN00000008.TIF;2
IM,VN00000009,D,0,@29502601;295026001\0000;VN00000009.TIF;2
IM,VN00000010, ,0,@29502601;295026001\0000;VN00000010.TIF;2
```

Opticon Delimited File:

```
MSC000001,MSC001,D:\IMAGES\001\MSC000001.TIF,Y,,,3
MSC000002,MSC001,D:\IMAGES\001\MSC000002.TIF,Y,,,,
MSC000003,MSC001,D:\IMAGES\001\MSC000003.TIF,Y,,,,
MSC000004,MSC001,D:\IMAGES\001\MSC000004.TIF,Y,,,2
MSC000005,MSC001,D:\IMAGES\001\MSC000005.TIF,Y,,,,
```

Summation DII File:

```
@C HASIMAGE YES
@T EPRG036023 2
@D D:\FILES\PRODUCTION\CD0004\VOL0011\Images
```

EPRG036023.tif
EPRG036024.tif

Concordance Delimited Files:

þBegDocþþEndDocþþBegAttachþþEndAttachþþCustodianþ

- The data load file should use standard Concordance delimiters:

    o Comma – ¶ (ASCII 20)

    o Quote – þ (ASCII 254)

    o Newline – ® (ASCII174)

- The first record should contain the field names in the order of the data;

- All date fields should be produced in mm/dd/yyyy format;

- Use carriage-return line-feed to indicate the start of the next record;

- Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.); a separate volume should be created for each piece of media delivered;

- The name of the data load file should mirror the name of the delivery volume, and should have a .DAT extension (i.e., ABC001.DAT); and

- The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.).

**Debbie Murphy**

| | |
|---|---|
| **From:** | Dan Balhoff <balhoff@pbmbllc.com> |
| **Sent:** | Sunday, September 25, 2016 5:44 PM |
| **To:** | Lenny Davis; Jimmy Faircloth |
| **Cc:** | 'Val Exnicios'; 'Rick Holston'; 'Kerry J. Miller'; gev@holstonvaughan.com; 'Mandy Barton'; 'John Teague'; 'Richard Taylor'; 'Kasie Braswell'; 'Merino, Rene'; Russ Herman; Arnold Levin; 'Steve Martino'; 'Marci Jones'; 'Ann Saucer'; 'Gary Mason'; 'Christopher L Coffin'; 'Daniel Bryson'; Lillian Flemming; 'Joel Rhine'; 'Gerald E Meunier'; 'Allison Grant'; 'Holly Werkema'; 'Russell Budd'; Brook Landry Villa; Kate Robinson; pgarrett@garrettco.com |
| **Subject:** | RE: CDW - Proposed CMO by Objectors |
| **Attachments:** | 16-09-25 (Special Master CMO No.pdf |

Friends:

I am attaching my CMO.  As you can see, I did not try to anticipate every issue that may arise, and I wanted the discovery plan will have to be flexible enough to allow us react to unforeseen developments.

I am copying Phil Garrett on this email since Sections V (concerning document production) and VII (concerning depositions) mention him.  I would ask Phil to let me know whether he needs an extension with respect to document production.

Thank you.

Dan Balhoff

**From:** Dan Balhoff
**Sent:** Friday, September 23, 2016 4:13 PM
**To:** 'Lenny Davis' <LDAVIS@hhklawfirm.com>; Jimmy Faircloth <jfaircloth@faircloth­law.com>
**Cc:** 'Val Exnicios' <vpexnicios@exnicioslaw.com>; 'Rick Holston' <rhh@holstonvaughan.com>; 'Kerry J. Miller' <kjmiller@bakerdonelson.com>; gev@holstonvaughan.com; 'Mandy Barton' <kab@bartonlawpractice.com>; 'John Teague' <jmt@johnteaguelaw.com>; 'Richard Taylor' <RichardTaylor@taylormartino.com>; 'Kasie Braswell' <kasie@braswellmurphy.com>; 'Merino, Rene' <rmerino@bakerdonelson.com>; Russ Herman <RHERMAN@hhklawfirm.com>; 'Arnold Levin' <alevin@lfsblaw.com>; 'Steve Martino' <SteveMartino@taylormartino.com>; 'Marci Jones' <m.jones@holstonvaughan.com>; 'Ann Saucer' <asaucer@baronbudd.com>; 'Gary Mason' <GMason@wbmllp.com>; 'Christopher L Coffin' <ccoffin@pbclawfirm.com>; 'Daniel Bryson' <Dan@wbmllp.com>; Lillian Flemming <LFLEMMING@hhklawfirm.com>; 'Joel Rhine' <jrr@rhinelawfirm.com>; 'Gerald E Meunier' <gmeunier@gainsben.com>; 'Allison Grant' <agrant@allisongrantpa.com>; 'Holly Werkema' <hwerkema@baronbudd.com>; 'Russell Budd' <RBUDD@BARONBUDD.COM>; Brook Landry Villa <bvilla@faircloth­law.com>; Kate Robinson <krobinson@hhklawfirm.com>
**Subject:** RE: CDW - Proposed CMO by Objectors

Thank you.  As I stated previously, I will circulate my CMO Sunday by 5:00.

**From:** Lenny Davis [mailto:LDAVIS@hhklawfirm.com]
**Sent:** Friday, September 23, 2016 4:11 PM
**To:** Dan Balhoff <balhoff@pbmbllc.com>; Jimmy Faircloth <jfaircloth@faircloth­law.com>
**Cc:** 'Val Exnicios' <vpexnicios@exnicioslaw.com>; 'Rick Holston' <rhh@holstonvaughan.com>; 'Kerry J. Miller' <kjmiller@bakerdonelson.com>; gev@holstonvaughan.com; 'Mandy Barton' <kab@bartonlawpractice.com>; 'John Teague' <jmt@johnteaguelaw.com>; 'Richard Taylor' <RichardTaylor@taylormartino.com>; 'Kasie Braswell'

&lt;kasie@braswellmurphy.com&gt;; 'Merino, Rene' &lt;rmerino@bakerdonelson.com&gt;; Russ Herman
&lt;RHERMAN@hhklawfirm.com&gt;; 'Arnold Levin' &lt;alevin@lfsblaw.com&gt;; 'Steve Martino'
&lt;SteveMartino@taylormartino.com&gt;; 'Marci Jones' &lt;m.jones@holstonvaughan.com&gt;; 'Ann Saucer'
&lt;asaucer@baronbudd.com&gt;; 'Gary Mason' &lt;GMason@wbmllp.com&gt;; 'Christopher L Coffin' &lt;ccoffin@pbclawfirm.com&gt;;
'Daniel Bryson' &lt;Dan@wbmllp.com&gt;; Lillian Flemming &lt;LFLEMMING@hhklawfirm.com&gt;; 'Joel Rhine'
&lt;jrr@rhinelawfirm.com&gt;; 'Gerald E Meunier' &lt;gmeunier@gainsben.com&gt;; 'Allison Grant' &lt;agrant@allisongrantpa.com&gt;;
'Holly Werkema' &lt;hwerkema@baronbudd.com&gt;; 'Russell Budd' &lt;RBUDD@BARONBUDD.COM&gt;; Brook Landry Villa
&lt;bvilla@fairclothlaw.com&gt;; Kate Robinson &lt;krobinson@hhklawfirm.com&gt;
**Subject:** RE: CDW - Proposed CMO by Objectors

We are in receipt of the email from Jimmy Faircloth that came in at approximately 1:20 p.m. today containing a redline change to the Case Management Order submitted by the FC. We have also received the Special Master's email that came in minutes afterward requesting "any other thoughts" by 5 p.m. this afternoon. In an attempt to respond the following are some preliminary thoughts. Judge Fallon in his order stated there would be "limited discovery." Our proposal recognizes this and the Objectors does not. Several members of the Fee committee including Arnold Levin (travelling) and Russ Herman (involved in a court appearance) are not available at this time to provide their input. The FC stands by what it originally submitted as a proposed Case Management Order. We do not want delay and are looking forward to receiving the Special Masters Case Management Order over the weekend. However, please note the following as to what was submitted by the Objectors:

1.  The initial preamble section was placed into the FC proposed CMO in an effort to provide history and a preamble for the issuance of a CMO. We leave this decision solely to the discretion of the Special Master as to whether or not it belongs in the CMO.
2.  Section I Liaison Counsel for Objectors – The FC would appreciate clarification of the functions, duties and obligations that Co-Liaison Counsel for the Objectors are performing. Some attorneys have interests that are not entirely aligned with others and we are not certain what role the Liaison Counsel for the Objectors is to undertake. Further, the FC believes that those counsel who have not made an objection should not be incurring expenses for services performed by Liaison Counsel for the Objectors. Further, if Co-Liaison Counsel for the Objectors are to be performing some work that needs to be allocated or compensated by others some mechanism should be in place for recording time and expenses. Judge Fallon has previously entered PTO 9 for these purposes. With respect to compensation for Liaison Counsel for the Objectors the FC leaves this issue to the Court.
3.  Section II Sealed Documents – This issue will need to be decided by the Special Master. The FC does not believe that firms who have interests that are not aligned should be able to review sealed documents that have no bearing on their particular interest. Only those parties and their counsel that need access to particular sealed documents should be granted access. If a document is shared the party to whom it is shared should be required to agree to the same confidentiality.
4.  Section III Pending Motions – This section was included in an effort to help assist with the creation of a docket so that all parties would be able to track the various issues that are pending. The FC believes that all of the motions should be addressed after discovery and that setting them at this time is premature.
5.  Section IV Discovery – The proposal made by the objectors is burdensome, duplicative, onerous and unnecessary. The efforts undertaken for the common benefit should be well known to all parties and the court in the litigation. The written discovery to be provided by Mr. Garrett will assist in setting forth and describing the work performed by common benefit attorneys. That material coupled with the deposition of the FC designee should enable the parties to get a clear understanding of the common benefit work performed and the justification set forth by the FC in its proposed allocation between common benefit and individual counsel. The FC does not believe that prolonged discovery (both written documents and depositions) is in anyone's best interest as this matter should proceed. The scope of discovery at this time should be limited to the recommendation proposed by the FC and the basis of the objections by the objectors. The timeframe proposed by the objectors is very lengthy. Further there is no need for duplicative discovery in depositions as one FC designee should be sufficient to address the areas of inquiry. If for some reason additional discovery is needed the last paragraph of this section provides the right for any party to make application to the Special Master upon

good cause shown.  An example of the fishing expedition proposed by the objectors can easily be found by the number of hours proposed for depositions.  For instance, there is no need for Mr. Garrett's deposition to take 12 hours, no need for the FC designee deposition to take 12-14 hours each (and there are 3 individuals being requested and a designee making the depositions total well in excess of 40 hours).  Furthermore, the objectors have deleted any discovery of the objectors.  The objectors' deposition is necessary in order for there to be a full understanding of the efforts and work performed by counsel for individual claimants.  This information is critical in order to arrive at an equitable allocation between common benefit and individual counsel.  Finally, all depositions should be under seal and participants in the deposition should be required to be in person as telephonic participation only creates delay and further disruption.

6.   Section V Merits Adjudication – The FC believes this matter should not be prolonged and at the conclusion of discovery (which should be performed efficiently and promptly) the Special Master should set a hearing.  The type of hearing and any briefing in connection with any hearing can be addressed at a later date.

Leonard A. Davis
Attorney at Law
Herman, Herman & Katz, L.L.C.
Herman  Gerel LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
504-581-4892
504-561-6024(fax)

*This e-mail message contains confidential, privileged information intended solely for the addressee. Please do not read, copy, or disseminate it unless you are the addressee. If you have received it in error, please call us (collect) immediately at (504) 581-4892 and ask to speak with the message sender. Also, we would appreciate your forwarding the message back to us and deleting it from your system. Thank you.*
CONFIDENTIAL ATTORNEY WORK PRODUCT

**From:** Dan Balhoff [mailto:balhoff@pbmbllc.com]
**Sent:** Friday, September 23, 2016 1:22 PM
**To:** Jimmy Faircloth <jfaircloth@faircothlaw.com>; Lenny Davis <LDAVIS@hhklawfirm.com>
**Cc:** 'Val Exnicios' <vpexnicios@exnicioslaw.com>; 'Rick Holston' <rhh@holstonvaughan.com>; 'Kerry J. Miller' <kjmiller@bakerdonelson.com>; gev@holstonvaughan.com; 'Mandy Barton' <kab@bartonlawpractice.com>; 'John Teague' <jmt@johnteaguelaw.com>; 'Richard Taylor' <RichardTaylor@taylormartino.com>; 'Kasie Braswell' <kasie@braswellmurphy.com>; 'Merino, Rene' <rmerino@bakerdonelson.com>; Russ Herman <RHERMAN@hhklawfirm.com>; 'Arnold Levin' <alevin@lfsblaw.com>; 'Steve Martino' <SteveMartino@taylormartino.com>; 'Marci Jones' <m.jones@holstonvaughan.com>; 'Ann Saucer' <asaucer@baronbudd.com>; 'Gary Mason' <GMason@wbmllp.com>; 'Christopher L Coffin' <ccoffin@pbclawfirm.com>; 'Daniel Bryson' <Dan@wbmllp.com>; 'Joel Rhine' <jrr@rhinelawfirm.com>; 'Gerald E Meunier' <gmeunier@gainsben.com>; 'Allison Grant' <agrant@allisongrantpa.com>; 'Holly Werkema' <hwerkema@baronbudd.com>; 'Russell Budd' <RBUDD@BARONBUDD.COM>; Brook Landry Villa <bvilla@faircothlaw.com>
**Subject:** RE: CDW - Proposed CMO by Objectors

Friends:

Please let me know immediately (no later than 5:00 this afternoon) if you have any other thoughts.  I will circulate my product no later than Sunday afternoon at 5:00.

Thank you for all the hard work you have invested into this.

Dan Balhoff

---

**From:** Jimmy Faircloth [mailto:jfaircloth@fairclothlaw.com]
**Sent:** Friday, September 23, 2016 1:16 PM
**To:** Dan Balhoff <balhoff@pbmbllc.com>; Lenny Davis <LDAVIS@hhklawfirm.com>
**Cc:** 'Val Exnicios' <vpexnicios@exnicioslaw.com>; 'Rick Holston' <rhh@holstonvaughan.com>; 'Kerry J. Miller' <kjmiller@bakerdonelson.com>; gev@holstonvaughan.com; 'Mandy Barton' <kab@bartonlawpractice.com>; 'John Teague' <jmt@johnteaguelaw.com>; 'Richard Taylor' <RichardTaylor@taylormartino.com>; 'Kasie Braswell' <kasie@braswellmurphy.com>; 'Merino, Rene' <rmerino@bakerdonelson.com>; Russ Herman <RHERMAN@hhklawfirm.com>; 'Arnold Levin' <alevin@lfsblaw.com>; 'Steve Martino' <SteveMartino@taylormartino.com>; 'Marci Jones' <m.jones@holstonvaughan.com>; 'Ann Saucer' <asaucer@baronbudd.com>; 'Gary Mason' <GMason@wbmllp.com>; 'Christopher L Coffin' <ccoffin@pbclawfirm.com>; 'Daniel Bryson' <Dan@wbmllp.com>; 'Joel Rhine' <jrr@rhinelawfirm.com>; 'Gerald E Meunier' <gmeunier@gainsben.com>; 'Allison Grant' <agrant@allisongrantpa.com>; 'Holly Werkema' <hwerkema@baronbudd.com>; 'Russell Budd' <RBUDD@BARONBUDD.COM>; Brook Landry Villa <bvilla@fairclothlaw.com>
**Subject:** FW: CDW - Proposed CMO by Objectors

Special Master Balhoff,

Attached is the CMO proposed by the Objector group, using Lenny's format. For sake of comparison, we also attach a redline version, although it's hard to read. There are many differences, but the most significant can be summarized as follows:

1. Eliminated unnecessary historical information and editorial discriptions and comments;
2. Eliminated the section on Liaison Counsel. The issue of attorney time and pay for this exercise is not on the table.
3. Simplified and clarified the Sealed Documents section. Multiple Objectors want to review the documents.
4. Added a blank for you to set a hearing on the Motion to Distribute Undisputed Fees
5. Expanded the document production list to include the materials we previously identified
6. Added depositions of Mr. Levin, Mr. Herman, and Ms. Duggan, which we believe are necessary.
7. Lengthened timelines and the hourly limitation on depositions to account for the scope of information at issue and the number of Objectors. We pledge to be as streamed-lined as reasonably possible in the depositions by avoiding time spent on matters that can be proven by documents and by avoiding redundancy. It's our understanding that you plan to attend the depositions.

I trust that Lenny will point to these and other proposed changes as he deems necessary. Thank you,

Jimmy

Jimmy R. Faircloth, Jr.
**Faircloth, Melton & Sobel, LLC**
jfaircloth@fairclothlaw.com

*Alexandria Office:*
105 Yorktown Drive
Alexandria, LA 71303
Phone 318-619-7755
Fax 318-619-7744

*Baton Rouge Office:*
One American Place
301 Main St., Ste. 920
Baton Rouge, LA  70801
Phone 225-343-9535
Fax 225-343-9538

CONFIDENTIALITY STATEMENT

This electronic message contains information from Faircloth, Melton & Sobel, LLC, and is confidential or privileged. The information is intended to be for the use of the individual or entity named above. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this message is prohibited. If you have received this electronic message in error, please notify us immediately by telephone at (318) 619-7755.

---

**Attention:**
The information contained in this message and or attachments is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any system and destroy any copies.

**Thank You.**

---

**Attention:**
The information contained in this message and or attachments is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material.  Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any system and destroy any copies.

**Thank You.**

---

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE: CHINESE-MANUFACTURED                  MDL NO. 2047
DRYWALL PRODUCTS LIABILITY                   SECTION: L
LITIGATION

THIS DOCUMENT RELATES TO:                    JUDGE FALLON
*ALL CASES*                                  MAG. JUDGE WILKINSON

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## SPECIAL MASTER CASE MANAGEMENT ORDER NO. 1

By Order dated July 18, 2016 (entered July 19, 2016), Daniel J. Balhoff was appointed

Special Master [Rec. Doc. 20410].  Thereafter, on August 30, 2016, the Court clarified and

supplemented that Order [Rec. Doc. 20478].  The following Case Management Order is

established to govern these proceedings before the Special Master:

I.   **PENDING MOTIONS**

A.  The Court's supplemental order concerning the Special Master's appointment
    [Rec.Doc. 20140] stated that the Special Master should make recommendations
    concerning all pending attorneys' fee issues, citing the various iterations of Pre-Trial
    Order 28.

B.  The Court's supplemental appointment order further specifically referred two motions
    to the Special Master:

    - The Fee Committee's Recommendations Regarding the Allocation of the Global
      Fee Award as Between Common Benefit Fees and Individual Counsel's Fees
      Pursuant to PTO 28(F) [Rec. Doc. 20293].  Resolution of this motion must await
      the completion of discovery as described below, along with appropriate briefing
      and argument.

    - The Request of the Objectors for a Protocol for Discovery and the Appointment of
      Val Exnicios & Jimmy Faircloth as Objectors' Co-Liaison Counsel, Without Other
      Objector Opposition, and Without PSC/FC Objection (except as to Proposed Fee
      Compensation Provision) [Rec. Doc. 20407].  On September 6, 2016, the Court
      dismissed this motion as moot, with the understanding that the Special Master

1

would appoint Co-Liaison Counsel for the Objectors (as discussed below) [Rec. Doc. 20467].

C. In addition to the two motions referenced in the Court's supplemental appointment order, the Special Master is currently considering the following motions:

- Villa Lago Plaintiffs' Motion for a Final Award of Attorneys' Fees and Reimbursement of Costs [Rec. Doc. 20347]. The Fee Committee filed a response opposing this motion [Rec. Doc. 20383]. The Special Master will make a recommendation concerning this motion either in the near future or as part of more comprehensive recommendations in tandem with the resolution of Rec. Doc. 20293.

- The Fee Committee's Motion to Approve the Amended Memorandum of Understanding Regarding All Homebuilder Claims for Reimbursement of Counsel Fees [Rec. Doc. 20467]. On September 9, 2016, Mr. Arnold Levin circulated a letter on behalf of the Fee Committee proposing a schedule for the disposition of this motion. That same day, the Special Master adopted the proposed schedule. On September 23, 2016, the Special Master received a letter from Mr. Neal Sivyer (dated September 22, 2016) along with accompanying exhibits. The deadlines for responses are outlined in Mr. Levin's September 9. 2016 letter, referenced above.

D. The Special Master will confer with the Court to determine if there are any other filed motions which fall within the Special Master's assignment.

## II.   <u>CO-LIAISON COUNSEL FOR THE OBJECTORS</u>

The Special Master has appointed Mr. Val Exnicios and Mr. Jimmy Faircloth as Co-Liaison Counsel for the Objectors. Co-Liaison Counsel's sole responsibility is to facilitate communication among the Objectors and the other interested parties involved in this matter, including the Special Master. This appointment is not intended to restrict the Objectors' access to the Special Master in any way. The Special Master recognizes that not all of the Objectors' interests are fully aligned with those of Co-Liaison Counsel. Any Objector may contact the Special Master directly, and any Objector may file pleadings or submit memoranda to state positions in addition to the ones advanced by Co-Liaison Counsel.

### III.   <u>CONFERENCE WITH OBJECTORS</u>

If the Objectors wish, the Special Master is willing to host a joint conference in the near future either in person or by telephone with those Objectors who would like to participate.  The purpose of the conference would be to discuss the logistics of accomplishing discovery from the perspective of the Objectors.

### IV.   <u>SEALED DOCUMENTS</u>

The Special Master has been given access to all sealed documents.  Except as provided herein, or as otherwise ordered by the Court or Special Master at a later date, all sealed documents shall remain confidential.  Objectors to the Fee Committee's proposed fee allocation may share with Co-Liaison Counsel for the Objectors those documents filed under seal pertaining to those respective Objectors.  For instance, a document pertaining to The Alters Law Firm, P.A. (used in this example simply because it is the first law firm listed below) has been filed under seal.  The Alters Law Firm, P.A. may choose to share the document with Co-Liaison Counsel.  If so, Co-Liaison Counsel must ensure the document's continuing confidentiality.  These criteria apply to the following Objectors:

   a. The Alters Law Firm, P.A.[1]

   b. Baron & Budd, P.C.[2]

---

[1] *E.g.,* Appendix A to the Fee Committee's Omnibus Response to Objections to the Fee Committee's Motion to Determine the Allocation of the Global Fee Award As Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F) [Rec. Doc. 20384].

[2] *E.g.,* Appendix B to the Fee Committee's Omnibus Response to Objections to the Fee Committee's Motion to Determine the Allocation of the Global Fee Award As Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F) [Rec. Doc. 20384].

   c. Cohen, Milstein, Sellers & Toll, PLLC and Mrachek, Fitzgerald, Rose, Konopka, Thomas & Weiss, P.A.[3]

   d. Milstein, Adelman, Jackson, Fairchild & Wade, L.L.P. and Roberts & Durkee, P.A.[4]

   e. Morgan & Morgan[5]

   f. Parker Waichman, L.L.P.[6]

   g. Whitfield, Bryson & Mason, LLP[7]

   h. Morris Bart, L.L.C.[8]

---

[3] *E.g.*, Appendix C to the Fee Committee's Omnibus Response to Objections to the Fee Committee's Motion to Determine the Allocation of the Global Fee Award As Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F) [Rec. Doc. 20384].

[4] *E.g.,* Appendix D to the Fee Committee's Omnibus Response to Objections to the Fee Committee's Motion to Determine the Allocation of the Global Fee Award As Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F) [Rec. Doc. 20384].

[5] *E.g.,* Appendix E to the Fee Committee's Omnibus Response to Objections to the Fee Committee's Motion to Determine the Allocation of the Global Fee Award As Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F) [Rec. Doc. 20384].

[6] *E.g.,* Appendix F to the Fee Committee's Omnibus Response to Objections to the Fee Committee's Motion to Determine the Allocation of the Global Fee Award As Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F) [Rec. Doc. 20384].

[7] *E.g.,* Appendix G to the Fee Committee's Omnibus Response to Objections to the Fee Committee's Motion to Determine the Allocation of the Global Fee Award As Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F) [Rec. Doc. 20384].

[8] *E.g,* Appendix H to the Fee Committee's Omnibus Response to Objections to the Fee Committee's Motion to Determine the Allocation of the Global Fee Award As Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F) [Rec. Doc. 20384].

i. Pujol, Pryor & Irwin, L.L.C.[9]

Future filings that contain sealed documents applicable solely to a particular law firm may be shared with those parties (including their counsel) who originally had access to the under seal document or the confidential information contained therein so that the documents are handled in a like manner as set forth above absent further orders from the Special Master.

## V.   **INITIAL DOCUMENT PRODUCTION**

No later than October 6, 2016, Mr. Philip Garrett, CPA, shall produce to Co-Liaison Counsel for the Objectors, the Fee Committee, and the Special Master the following, which shall remain confidential (except as provided herein) and be provided under seal:

1. Documents referenced in the Declarations provided by Philip A. Garrett, CPA, for the Fee Committee's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F), and in addition, the following materials:

    a. Total Time and Held Costs from Inception of the Case to Present, which will include a report identifying total time by employee, time totals by firm and time totals by firm summary.

    b. Held Costs Expense Reports.

    c. Shared Costs Expense Reports.

    d. Lodestar reports (with current, inception and blended values) identifying the time totals by employee – sortable report from inception of the case to present, which identifies Lodestar information both from the period November 2000 to December 2013 and from January 2014 to present.

The Special Master will determine who will reimburse Mr. Garrett for his time producing documents in response to the Case Management Order.

---

[9] *E.g.,* The portion of the sealed exhibit attached to the Fee Committee's Statement of Position Regarding Pujol, Pryor and Irwin, LLC's Notice of Objection [Rec. Doc. 20415].

No later than October 6, 2016, the Fee Committee shall produce to Co-Liaison Counsel for the Objectors, the Fee Committee, and the Special Master the following, which shall remain confidential and shall be provided under seal:

1. A copy of the completed and signed Initial Affidavits for Compensation for Common Benefit Time and Reimbursement of Expenses received by the Fee Committee pursuant to Step 2 of PTO 28.

Either Mr. Garrett or the Fee Committee may ask for a reasonable extension of time if necessary.

## VI.   **REQUESTS FOR ADDITIONAL DOCUMENT PRODUCTION**

After the Initial Document Production phase is complete, the parties may request the production of additional documents. Those requesting the production of additional documents should be prepared to demonstrate that the requests are not duplicative and that they are pertinent to the issues before the Special Master, particularly those outlined in PTO 28(F) [Rec. Doc. 20293].

## VII.   **DEPOSITIONS**

In the event that the parties unanimously agree that they may proceed with one or more depositions before the completion of written discovery, they may do so.   Otherwise, the parties may begin scheduling depositions only after all written discovery is complete, or upon receiving leave from the Special Master.

Except as otherwise provided herein, all depositions pursuant to this Case Management Order shall be confidential to avoid disclosure to adverse parties in this ongoing litigation. While the deponent is being examined about any under seal document or the confidential information contained therein, persons other than Objectors (and their attorneys) and Co-Liaison Counsel for Objectors, or any other individual(s) to whom disclosure is not authorized as set forth above shall be excluded from the deposition, and the Court Reporter shall designate such testimony as

confidential.[10]  Furthermore, portions of the transcript designated as confidential shall only be made available to those parties who originally had access or who have access pursuant to this Case Management Order to the under seal documents or the confidential information contained therein. The deposition shall be stenographically recorded by a Court Reporter that shall administer the oath or the affirmation to the deponent and a written transcript by the court reporter shall constitute the official record of the deposition for purposes of Fed.R.Civ.P. 30(e).  All parties shall bear their own costs in securing copies of the deposition transcript.   Objectors (including their counsel) and Co-Liaison Counsel shall have the right to monitor the deposition, but not question the deponent, by telephone.

### A. Mr. Philip Garrett, CPA

Upon the Objectors' review of the documents produced in accordance with this Case Management Order, the Objectors may depose Mr. Philip Garrett, subject to the availability and schedule of Mr. Garrett and the Special Master (who will attend the deposition).  The deposition shall be limited to the following topics:

1. The Declarations of Philip Garrett, CPA.

2. Reports prepared by Philip Garrett, CPA.

3. Documents produced by Philip Garrett, CPA.

The deposition of Mr. Garrett shall be scheduled at a mutually convenient time and location to Philip Garrett and shall last no more than eight (8) hours (although the Special Master may choose to shorten or lengthen this time after further discussions with the parties).  Questioning attorneys may only ask non-duplicative questions. All Objectors who shall have an aggregate

---

[10] *See In re Xarelto Prod. Liab. Litig.,* MDL 2592, Pretrial Order No. 23 (Deposition Guidelines) at 2 (E.D.La. Feb. 17, 2016).  Available at:
http://www.laed.uscourts.gov/sites/default/files/xarelto/Pretrial%20Order_23_0.pdf.

allotted time of six (6) hours to question Mr. Garrett. The Special Master will coordinate with the Objectors in advance of the deposition to resolve any disputes concerning division of questioning time and/or responsibilities. The Objectors shall inform the Special Master of their agreed-upon division of questioning time and responsibilities at least 48 hours before the deposition. The Fee Committee shall be allocated time of two (2) hours to question Mr. Garrett. The Fee Committee will designate one (1) primary examiner. The Special Master will determine who will reimburse Mr. Garrett for his time preparing for and attending the deposition.

**B. Fee Committee Designee(s):**

The deposition of the Fee Committee Designee(s) shall take place after the completion of the deposition of Mr. Garrett, subject to the availability of the Fee Committee Designee and the Special Master (who will attend the deposition). The Fee Committee shall designate an appropriate representative of representatives to testify as to at least the following areas of inquiry:

1. Step Three:  Filing of a Joint Fee Petition and Step Five:  Establishment of Common Benefit and Individual Fees pursuant to PTO 28, as amended.  This area of inquiry is limited to paragraphs 1 through 10 of PTO 28 and PTO 28(F).

2. The Consolidated Joint Petition of the Fee Committee and the Plaintiffs' Steering Committee for A Global Award of Attorneys' Fees and Reimbursement of Expenses, Filed Pursuant to Pre-Trial Order No. 28 [Rec. Doc. 17700].

3. First Amendment to the Consolidated Joint Petition of the Fee Committee and the Plaintiffs' Steering Committee for A Global Award of Attorneys' Fees and Reimbursement of Expenses, Filed Pursuant to Pre-Trial Order No. 28 [Rec. Doc. 20205].

4. The Fee Committee's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F) [Rec. Doc. 20293].

5. The Fee Committee's Omnibus Response to Objections to the Fee Committee's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F) [Rec. Doc. 20384].

The Objectors may move the Special Master for the inclusion of additional deposition topics. If they do so, they should be prepared to demonstrate that the requests are not duplicative and that they are pertinent to the issues before the Special Master, particularly those outlined in PTO 28(F) [Rec. Doc. 20293].

The deposition of the Fee Committee Designee(s) shall be scheduled at a mutually convenient time and location and shall last no more than eight (8) hours (although the Special Master may choose to shorten or lengthen this time after further discussions with the parties). Questioning attorneys may only ask non-duplicative questions. All Objectors who shall have an aggregate allotted time of seven (7) hours to question Fee Committee Designee(s). The Special Master will coordinate with the Objectors in advance of the deposition to resolve any disputes concerning division of questioning time and/or responsibilities. The Objectors shall inform the Special Master of their agreed-upon division of questioning time and/or responsibility at least 48 hours before the deposition. At the conclusion of the Objectors' questioning, The Fee Committee shall be allocated time of one (1) hours to question the Fee Committee Designee. The Fee Committee will designate one (1) primary examiner.

**C. Additional Depositions of Fee Committee Members:**

As was previously stated, the Special Master will attend the deposition of the Fee Committee Designee(s). If the Special Master deems it appropriate, he will entertain requests for additional depositions of Fee Committee Members. Anyone requesting such depositions should demonstrate that the requested depositions are not duplicative and that they are pertinent to the issues before the Special Master, particularly those outlined in PTO 28(F) [Rec. Doc. 20293].

**D. Objectors' Designee:**

The deposition of the Objectors' Designee shall take place subject to the availability of the Objectors' Deposition Designee and the Special Master (who will attend the deposition). The Objectors shall designate one (1) representative to testify as to the following areas of inquiry:

1. The efforts and work performed by counsel for individual claimants who seek compensation for handling an individual Chinese drywall claim eligible in any of the various settlements.

2. Oppositions to the Fee Committee's Motion to Determine the Allocation of the Global Fee Award as Between Common Benefit Fees and Individual Counsel's Fees Pursuant to PTO 28(F) [Rec. Doc. 20293].

The deposition of the Objectors' Designee shall be scheduled at a mutually convenient time and location and shall last no more than four (4) hours. There shall be no more than one (1) primary and one (1) secondary examining attorney for the Fee Committee. Questioning attorneys may only ask non-duplicative questions. The Fee Committee shall have an aggregate allotted time of three (3) hours to question the Objectors' Deposition Designee. The Objectors shall be allocated time of one (1) hour to question the Objectors' Deposition Designee. The Special Master will coordinate with the Objectors in advance of the deposition to resolve any disputes concerning division of questioning time and/or responsibilities.

## VIII.   OTHER MATTERS

Additional discovery (written discovery or depositions) will be permitted only upon order of the Special Master for good cause. A party requesting additional discovery shall send a letter to the Special Master of no more than ten (10) pages describing the nature and grounds of such additional discovery. The letter should demonstrate that the requested discovery is not duplicative and that it is pertinent to the issues before the Special Master, particularly those outlined in PTO 28(F) [Rec. Doc. 20293].

The Special Master reserves the right to amend this Case Management Order as is appropriate.

Baton Rouge, Louisiana, this 25th day of September, 2016.

/s/ Daniel J. Balhoff
Special Master Daniel J. Balhoff