**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br><br>*Germano v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, **Case No. 09-6687 (E.D. La.);**<br><br>*Gross v. Knauf Gips, KG*, **Case No. 09-6690 (E.D. La.);**<br><br>*Wiltz v. Beijing New Building Materials Public Limited Co.,* **Case No. 10-361 (E.D. La.);**<br><br>*Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, **Case No. 11-1672 (E.D. La.);**<br><br>*Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, **Case No. 11-1395 (E.D. La.); and**<br><br>*Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, **Case No. 11-1673 (E.D. La.).** | **MDL NO. 2047**<br>**SECTION: L**<br>**JUDGE FALLON** |

**TAISHAN'S SECOND SUPPLEMENTAL RESPONSE TO PLAINTIFFS'**
**MOTION FOR CLASS DAMAGES**

**INTRODUCTION**

The PSC has dramatically changed their class-damages plan and claimant evidence over the last 18 months since the parties submitted proposed FOFCOLs. Those developments make it even more clear that the Court should deny the PSC's October 2014 Motion for Assessment of

Class Damages. The Motion—which was never amended—is substantively flawed and, what's more, the PSC has now abandoned the Motion and the recovery theories contained in it.

Both before and after the June 9, 2015 evidentiary hearing, Taishan exposed the numerous legal and methodological flaws in the Motion and catalogued the PSC's many material changes to their "class damages" scheme (necessitated by their many material mistakes). And since November 2015, the PSC has changed their claimant "class" and damages plan even more—so that now their "class damages" construct bears virtually no resemblance to the initial October 2014 request.

The PSC originally moved for a lump sum of $1.263 billion in three damages categories for approximately 3800 claimants; but they now seem to want only a ruling that their designated expert's revised 2015 cost/square foot methodology "is acceptable" as a basis for further proceedings to determine individualized damages on a claimant-by-claimant basis. Putting aside that claimant-by-claimant determinations are the antithesis of class-wide damages, the proffered methodology is wholly unacceptable for all the reasons exposed at the June 9, 2015 hearing and explained in Taishan's and BNBM's proposed FOFCOLs (collectively, "Defendants' FOFCOLs," Dkt. Nos. 19194 and 19198.)

In the various documents mutating their request, the PSC also seems to be asking for some vaguely described process to prove other facts and elements of claimant damages. The PSC now appears to seek an individual mini-trial for each claimant, which will permit the parties to litigate *all* alleged remediation damages in each individual proceeding, obviating any need for their illegal one-size-fits-all class methodology. The PSC's flawed formulaic construct violates controlling Fifth Circuit law and would deny Taishan its right to defend on damages in violation of *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011). If the PSC is still somehow seeking to use the class methodology for some sort of lump-sum calculation of tort damages for a class, then that too

would violate the plain Fifth Circuit law set forth in Defendants' FOFCOLs. Either way, the Motion cannot be granted.

That Taishan actually has no idea what the PSC proposes at this point proves that Taishan has been denied basic due process guaranteed by Rule of Civil Procedure 7. That rule requires all requests for judicial relief to be presented by way of noticed motion. Forsaking proper procedure, the PSC has preferred to metamorphose their damages requests by way of letters to the Court and footnotes in other filings. And, the PSC radically changed and then abandoned their "class list" in PX 79 (from the June 9 hearing). Subsequent events have revealed strong evidence that remarkably few claimants may still be class members (current property owners) and also still own the claims for any remediation damages.

In the end, the PSC is trying to nudge the Court far out on a legal limb to save some small portion of their ill-conceived class-damages construct. What has become abundantly clear—and what the PSC has all but conceded—is that damages here are not susceptible to class-wide determination, but must be adjudicated claim-by-claim. The Court should deny the PSC's attempt to save any remnant of the class-damages motion, enter Taishan's FOFCOL, and entertain motions for a process of individual adjudications of each claimant's damages, if any.

## PROCEDURAL HISTORY

On October 29, 2014, the PSC filed a motion for class damages. Dkt. No. 18086 ("Motion for Class Damages" or "Motion"). The motion asked for a lump-sum of $1,263,330,881.19, which had three components: (1) $782,944,292.37 for remediation costs; (2) $95,186,588.82 for

alternative living expenses; and (3) $385,200,000.00 for loss of use and enjoyment. *Id.* at 3.[1] The PSC sought those damages for 3,582 class members. *Id.* The PSC has never amended the Motion.

When Taishan returned to the litigation, it began identifying the legal and factual problems with the PSC's damages scheme. *See* Dkt. No. 19194 (Taishan's Proposed FOFCOL) at 7-13. Taishan identified errors leading up to the June 9, 2015 damages hearing and continued to do so after the hearing.

In admittedly direct response to those criticisms, the PSC repeatedly attempted to rectify their class damages categories, amount, designated expert and class list throughout 2015. The following chart tracks Taishan's many criticisms and the PSC's many changes to their class damages scheme:

| Date | Event | Impact |
|------|-------|--------|
| 4/2/15 | Taishan letter to PSC about stale plaintiff profile forms. | PSC updates profile forms. (*See* Dkt. No. 18612 at 2) |
| 4/6/15 | Taishan Emergency Motion to Compel Production of Information Relevant to Plaintiffs' Motion for Assessment of Class Damages (Dkt. No. 18598) | Taishan exposes PSC's Class Damages Motion claimant list as full of errors, including:<br><br>• The *Germano* claimants;<br>• Dismissed and opted-out claimants;<br>• Class properties with *only* Knauf drywall;<br>• Claimants who assert separate claims for the same property;<br>• Claimants who no longer own the property (and thus are not class members);<br>• Claimants with remediated property. |

---

[1] After filing the Motion for Class Damages, the PSC sent an amended class notice detailing the theories of recovery, the aggregate dollar amounts, and the methodologies in the damages motions and in the supporting affidavit of the first designated expert (Ronald Wright). Dkt. No. 18086-18 at 3. The PSC has made that amended class notice even more inaccurate than it was 18 months ago, both in substance and in application to alleged "class" members.

4

| | | |
|---|---|---|
| 4/7/15 | Hearing on Taishan's Emergency Motion to Compel Production | PSC acknowledges that they "will probably invite some revision and updating of the calculations" in the Wright Affidavit. (Dkt. No. 18697 at 20:5-21) |
| 4/13/15 | PSC Revised Trial Plan for the Assessment of Class Damages (Dkt. No. 18673) | PSC proposes new four-phase process for remediation damages. |
| 4/24/15 | PSC Second Revised Trial Plan for the Assessment of Class Damages (Dkt. No. 18753) | PSC proposes new five-phase process for remediation damages and a separate trial for "individualized damages." |
| 4/27/15 | PSC replaces Wright Affidavit with Inglis Affidavit (Dkt. No. 18877-2) | PSC reduces the number of class properties to 3,739 and removes LOUE damages from class process. |
| 5/1/15 | Taishan letter to PSC regarding deficiencies in damages discovery (*See* **Exhibit A**) | Taishan exposes that BrownGreer's spreadsheet is full of errors, including:<br><br>• The information is not verified;<br>• More than 1,100 claimants do not own the claimed property;<br>• Multiple claimants seek recovery for the same property;<br>• Many claimants do not know the drywall manufacturer or property square footage. |
| 5/8/15 | Taishan Response in Opposition to PSC Motion to for Class Damages (Dkt. No. 18877) | Taishan exposes that Inglis Affidavit is full of errors, including:<br><br>• Flawed methodology for remediation damages;<br>• Application of flawed methodologies to a class list that is still full of errors<br>• Not qualified for ALE opinion. |
| 5/15/15 | PSC replaces Inglis Affidavit with Inglis Declaration (Dkt. No. 19091-5) | PSC reduces the number of class properties to 2,888 and removes ALE damages. |
| 5/19/15 | Inglis Deposition (*See* Dkt. No. 19194 at ¶¶ 49 and 52) | Taishan exposes mistakes in Inglis' formula. |

| | | |
|---|---|---|
| 5/26/15 | BrownGreer Deposition (*See* Dkt. No. 19194 at ¶ 50) | Jacob Woody testifies that the class list still contains many errors, including properties that never contained Taishan drywall. |
| 6/4/15 | PSC serves another revised class list. (*See* **Exhibit B**) | PSC reduces the number of class properties to 2,714. |
| 6/8/15 | Inglis acknowledges mistakes in his formula. (*See* **Exhibit C**) | PSC serves another revised class list reducing remediation damages by $77 million. |
| 6/9/15 | PSC submits into evidence another revised class list (PX 79) | PSC reduces the number of class properties to 2,686. |
| 6/23/15 | Taishan Motion to Exclude PX 79 (Dkt. No. 19191) | Taishan reminds PSC that PX 79 still contains numerous errors, including:<br><br>• Duplicate entries;<br>• Class properties with *only* Knauf drywall;<br>• Claimants who no longer own the property.<br>• Class properties that have already been remediated. |
| 9/8/15 | PSC letter to Judge Fallon (Dkt. No. 19490-2) | PSC concedes that PX 79 contains significant errors that could reduce remediation damages by over $150 million.<br><br>PSC announces filing of a new complaint identifying over 800 properties that may not have been included in the Certified Class. |
| 10/5/15 | PSC Response in Opposition to Motion to Set a Briefing Schedule on Class Decertification (Dkt. No. 19572) | PSC abandons its request for a determination of class-wide remediation damages. |
| 11/6/15 | PSC Motion for Individual Damage Trials (Dkt. No. 19705) | PSC concedes that "individualized damages trials are the only procedures available" for claimants not in the class. |

6

| | | |
|---|---|---|
| 11/17/15 | PSC Reply in Support of Individual Damage Trials (Dkt. No. 19746) | PSC concedes that remediation damages for 744 claimants must be determined through individual trials, not the Inglis formula. |

Taishan does not know the PSC's current class-claimant count. But additional communications have revealed that the PSC's claimants are not a group of similarly situated individual current homeowners awaiting funds for future remediation of their average-sized, single-family residences. Rather, the PSC's claimant group includes:

- Former property owners no longer residing in and no longer owning the allegedly damaged property;

- Current property owners who have already remediated (and therefore know the exact cost of remediation);

- Non-occupying corporate owners of residential units;

- Owners of non-residential structures such as recreational buildings and churches.

## ARGUMENT

### I.   THE PSC HAS ABANDONED ITS PROPOSED FOFCOL

The Court cannot resolve the Motion for Class Damages merely by signing the PSC's Proposed FOFCOL from June 2015. That document is so severely factually wrong that even the PSC has walked away from most of it.

Centrally, the PSC has abandoned the sole purpose of their Proposed FOFCOL by withdrawing their request for aggregate class-wide remediation damages. As the PSC repeatedly stated, their intended purpose for the June 9 hearing was to determine the *amount* of class-wide remediation damages:

- Phase I is "assessment/quantification of class-wide damages for the remediation of drywall manufactured by the Taishan defendants…."[2]

---

[2] Dkt. No. 18753 (PSC Second Revised Trial Plan for the Assessment of Class Damages) at 2.

- "The question for June 9 is *solely* the amount owed to the plaintiff class…."[3]

- "[T]he issue before the Court is only the amount of damages which should be awarded to the Class."[4]

- The June 9 hearing "was intended to result in a present calculation…of class-wide remediation damages."[5]

The PSC Proposed FOFCOL sought $497,180,467 in aggregate remediation damages for the 2,686 "Taishan Properties" listed in PX 79. Dkt. No. 19197 at ¶¶ 200 and 203. But three months after the hearing, the PSC withdrew their request for aggregate remediation damages after discovering that it lacked evidentiary support.

On September 8, 2015, the PSC wrote a letter to the Court explaining the fatal flaws in PX 79—the primary basis for determining the amount of class damages. Dkt. No. 19490-2. The PSC conceded that the damages amount requested in their Proposed FOFCOL (which their expert George Inglis affirmed under oath at the June 9 hearing) "may potentially be reduced" by nearly $150 million (30%) because of "inadequate" verification of an unknown number of class properties. *Id.* at 2. The PSC subsequently withdrew their request for aggregate remediation damages. *See* Dkt. No. 19572 at n. 4; Dkt. No. 19705-1 at n. 2.

By withdrawing their request for aggregate class-wide remediation damages, the PSC has abandoned the relief sought in their Proposed FOFCOL. The PSC's removal of PX 79 as hopelessly inaccurate further guts their Proposed FOFCOL. Without PX 79, key sections of the PSC's Proposed FOFCOL concerning product identification, square footage, class members, and

---

[3] Dkt. No. 18958 (PSC Reply in Support of Motion for Assessment of Class Damages) at 38 (emphasis in original).

[4] Dkt. No. 19197 (PSC Proposed FOFCOL) at ¶ 158.

[5] Dkt. No. 19289-2 (PSC Sur-Reply to Defendants' Motion to Exclude PX 79) at 3.

8

class property have no evidentiary support and should be struck. Finally, the passage of time—18 months after the evidentiary hearing and submission of proposed FOFCOLs by the parties—has nullified much of the PSC's Proposed FOFCOL as simply old, wrong and stale. The PSC has acknowledged as much, both formally and informally, in the last year and a half.

## II. THE INGLIS METHODOLOGY IS FACTUALLY AND LEGALLY WRONG

So now all that is left of the PSC's Proposed FOFCOL is Inglis' methodology, which the PSC wants the Court to endorse in some sort of advisory manner. Taishan's Proposed FOFCOL explained the many fatal problems that prevent the Court from doing that:

- Inglis admittedly knew nothing about the specific properties and his methodology masked great factual disparities among those properties. Taishan FOFCOL ¶ 154;

- Reliance on Inglis' single method for remediation damages ignores state law differences on recovery of property damages. *Id.* ¶¶ 155-156;

- Fifth Circuit law prohibits using the Inglis method for an aggregate class award (if the PSC still intends that). *Id.* ¶¶ 146-153;

- Fifth Circuit law prohibits using the Inglis method for a fluid recovery. *Id.* ¶¶ 157-163;

- Fifth Circuit law prohibits Inglis' attempt to assess tort damages using extrapolation from averages and trial by formula. *Id.* ¶¶ 164-173;

- Fifth Circuit law prohibits assessing property damages with a per-square-foot formula. *Id.* ¶¶174-176;

- Fifth Circuit law prohibits extrapolation based on unrepresentative cases. *Id.* ¶¶ 177-181;

- Inglis lacked sufficient factual support for his methods, figures and assumptions. *Id.* ¶¶191-204;

- The ever-changing class list on which Inglis relied was not reliable. *Id.* ¶¶ 205-210.[6]

---

[6] *See also* BNBM FOFCOL (Dkt. No. 19198), ¶¶ 89-93, 101-04 ("Inglis at most performed an 'approximate estimate' with a substantial degree of inaccuracy, and did not perform the kind of detailed, property-specific estimate accepted in the industry for a reasonably reliable estimate of

And now subsequent events have made the Inglis method even more indefensible.

First, by removing the fatally flawed class list in PX 79 from these proceedings, the PSC has essentially pulled the evidentiary rug out from beneath Mr. Inglis and his method. He now has even less of a factual basis to support his (improper) use of averages from *Germano* and elsewhere.[7] Inglis claimed that most of the class properties were of average quality and "are more around the middle." Hearing Tr. 125:3-22. Unreliable as it was, now Inglis does not have even that hollow crutch to prop him up. Experts may not make assumptions that are not supported by a factual record. *See Hathaway v. Bazany*, 507 F.3d 312, 318-19 (5th Cir. 2007) (excluding testimony of expert who did not "offer any specific factual support for the reliability of his initial assumptions").

As it turns out, materials exchanged by the parties over the last year reveal that most properties are *not*, as Inglis erroneously assumed, average single-family homes around 2000 square feet. And Inglis' methodology is designed to apply only to class members defined as current property owners in need of remediation. But the landscape has changed so dramatically with the removal of PX 79 and the passage of time, that Inglis' opinions have no reliable evidentiary underpinning—indeed, they have no evidentiary underpinning at all. Based on the PSC's own submissions, it appears that the PSC does not even know who is still in their class anymore (if they ever did).

---

construction costs."); ¶¶ 94-96 ("Inglis has done nothing to demonstrate that the *Germano* properties are in fact representative of the entire class or that the sample size is sufficient to allow any statistically significant conclusions."); *id.* at ¶¶ 108-112 ("Plaintiffs cannot ignore that actual repair cost data is available, nor may the Court disregard Plaintiffs' duty to present the best evidence available in support of their damage request."); *id.* at ¶¶ 114-18 ("The Fifth Circuit has repeatedly held that courts may not award aggregated damages by lump sum or formula, but must assess tort damages for 'individuals, not groups.'")."

[7] At the June 9, 2015 hearing, Taishan proved how houses with the same square footage would have very different remediation costs. Taishan FOFCOL ¶¶ 125-130 (Layout A vs. Layout B).

10

That makes Inglis' prospective remediation estimation method even more unreliable. And in many cases, it is likely barred by law that requires that judicially awarded repair damages be measured by historical repair costs. *See, e.g., Volkswagen of America, Inc. v. Robertson*, 713 F.2d 1151, 1169 (5th Cir. 1983). Many (perhaps most) of the properties have already been remediated. The availability of actual cost data on a claimant-by-claimant basis obviates any need to rely on estimates. Indeed, reliance on estimates would be improper where actual costs can be established. (*See* BNBM FOFCOL ¶¶ 108-112). Because Inglis' method is even more unreliable, unsupported, unreasonable, and unusable than when the parties exchanged FOFCOLs in June 2015, the Court should not approve that method.

### III. THE PSC'S NEW PROPOSED LITIGATION PROCESS NEGATES THE INGLIS METHOD

The Court should reject the Inglis methodology not just because it is legally and factually bankrupt, but because it is also counterproductive and unnecessary given the PSC's current individualized claim-adjudication proposal. Although Taishan bears no such burden, the PSC criticized Taishan for offering "no alternate class-wide measure of remediation damages suffered by the Taishan Property Owners." Dkt. No. 19197 at ¶ 55. But since their Proposed FOFCOL, the PSC has offered the alternative of "individualized mini-trials" that they previously criticized (*id.*), and which makes the Inglis methodology inferior and irrelevant. Dkt. No. 19705-1 at 6; Dkt. No. 19746 at 2-3 (proposing "individual damages mini trails" for *each* claimant).

So the parties are now in agreement that individual assessment of each claim for remediation damages is necessary for purposes of determining product identification, square footage and set-off. *See* Dkt. No. 19197 at ¶¶ 201 and 202. The Court should not bless a formulaic approach to estimate remediation damages that is less accurate and less efficient—especially

because the unreasonable approach cannot apply to the many claimants who do not fit the characteristics of Inglis' faulty assumptions.

A defective formula will do more harm than good. The PSC offers no evidence—and there is none—that developing much more accurate individualized remediation estimates through on-site inspection would be costly and time-consuming. Taishan's expert testified that it would take "about a day" to develop an individualized remediation estimate based on an on-site inspection (Hr. Tr.180:12-14), and the PSC did not rebut that testimony. Taishan's expert also testified without rebuttal that the cost associated with the individualized estimate would be reasonable. (Hr. Tr.180:15-16). The PSC does not need the Court's blessing to use Mr. Inglis' formula to prove remediation damages in a particular case, if they choose to do so. Taishan would then bear its own costs to develop much more accurate and persuasive evidence based on property-specific estimates or actual repair costs, as the facts in a particular case (or the law in a particular state) may require.

## IV.   THE PSC'S PROPOSED LITIGATION PROCESS FAILS RULE 23 AND *DUKES*

The Court should reject the Motion for Class Damages also because the whole class enterprise violates plain Fifth Circuit law barring tort-damages-only classes and barring property-damage calculations by formula. Taishan previously catalogued the many other ways in which the PSC class violates Rule 23 and Fifth Circuit class-action law, and Taishan will seek a renewed briefing schedule on decertification.

But the PSC's efforts to morph the damages-recovery procedure have specifically further undermined the Motion for Class Damages for this heterogeneous collection of class members who were once identified, but now are unknown. Class issues never predominated over the real individual damages issues—even in October 2014 when the single Wright formula for all damages created an illusion of predominance. But now, by their own admission, the PSC has only one remaining allegedly common issue (remediation damages), and that one issue applies only to a

12

small fraction of the claimants they purport to represent. That single limited (allegedly) common issue does not predominate over the seven-plus individual damages categories, including individualized claims verification and set-offs that each class member admittedly must litigate under the PSC's new litigation plan.

To the extent the PSC intends to use the requested court "approval" of Inglis' methodology as some proof of remediation damage, then that class remedy is less predominant and superior to simply litigating remediation damages *ab initio* in each mini-trial. On the other hand, if the PSC hopes to use an "approved" Inglis formula to cut-off Taishan from litigating each class member's remediation damages, then that violates the Rules Enabling Act, which "forbids" class procedures that "'abridge, enlarge or modify any substantive right.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2561 (2011). That decision specifically prohibited classes "certified on the premise that [the defendant] will not be entitled to litigate its . . . defenses to individual claims." *Id.* Either way, the Court must deny the Motion.

### V. PSC'S REFUSAL TO AMEND THE CLASS DAMAGES MOTION VIOLATES RULE 7 AND DENIES TAISHAN DUE PROCESS

Finally, the PSC's serial attempts to change the relief requested in their Motion for Class Damages violate the most basic tenets of federal civil procedure. The Federal Rules obligate every litigant to make a request for judicial relief by written motion. Federal Rule of Civil Procedure 7(b)(1) ("A request for a court order must be made by motion."). That rule goes on to require that motions "(A) be in writing unless made during a hearing or trial, (B) state with particularity the grounds for seeking the order; and (C) state the relief sought."

The written-motion requirement provides minimum due process to a movant's opponents, ensuring that they are "informed and have a record of both the motion's pendency and the grounds on which the movant seeks an order." Charles Alan Wright, Arthur R. Miller, *Fed. Prac. & Proc.*

13

*Civ.* § 1191 (3d ed. 2016). For example, letters to district courts do not constitute motions under Rule 7. *See, e.g.*, *Kansas Pub. Employees Ret. Sys. v. Reimer & Koger Associates*, 165 F.3d 627, 630 (8th Cir. 1999).

The PSC has denied Taishan minimum due process. Rather than file any motion to amend their Motion for Class Damages, the PSC has mutated their damages request with letters to the Court and footnotes in other pleadings. The PSC's unauthorized crypto-amendments have created unfair confusion by failing to give Taishan sufficient notice of the relief requested in direct violation of the plain language of Rule 7. The Court should not countenance a process under which Taishan does not know which permutation the PSC intends to put before the Court.

## VI. CONCLUSION

The Court should ignore the PSC's improper attempts to change their requested relief, deny the original out-of-date October 2014 Motion, and enter Taishan's proposed FOFCOL, which still accurately catalogs the many legal and factual deficiencies with the lawless class damages request.

Dated: December 9, 2016

Respectfully submitted,

/s Michael P. Kenny  
Michael P. Kenny, Esq.  
Georgia Bar No. 415064  
Bernard Taylor, Esq.  
Georgia Bar No. 669625  
Christina Hull Eikhoff, Esq.  
Georgia Bar No. 242539  
David Venderbush, Esq.  
New York Bar No. 2920817  
ALSTON & BIRD LLP  
1201 West Peachtree Street  
Atlanta, Georgia 30309  
Phone: (404) 881-7000  
Fax: (404) 881-7777  
mike.kenny@alston.com  
*Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*

Alan Dean Weinberger
LA Bar No. 13331
HANGARTNER, RYDBERG & TERRELL, LLC
One Shell Square
701 Poydras St., Suite 310
New Orleans, Louisiana  70179
Phone:  (504) 434-6815
Fax: (504) 522-5689
aweinberger@hanrylaw.com
*Local Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*

15

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, by U.S. mail and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 9th day of December, 2016.

Michael P. Kenny, Esq.
Georgia Bar No. 415064
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
mike.kenny@alston.com
*Counsel for Taishan*
