## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:   CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | |

# EXHIBIT "3" TO

## DECLARATION OF RUSS M. HERMAN

# Agreement for Joint Venture

## Chapter 1 - General Provisions

In accordance with the Laws of the State of Ohio, USA and other relevant USA laws and regulations, the CHINA TRIUMPH INTERNATIONAL ENGINEERING CO., Ltd. (CTIEC) and Toledo Engineering Co., Inc. (TECO), adhering to the principle of equality and mutual benefit and through friendly consultations, agree to jointly invest to set up a joint venture enterprise in Toledo, Ohio, USA.

## Chapter 2 - Parties of the Joint Venture

Article 1

Parties of this contract are as follows:

Toledo Engineering Co., Inc. (hereinafter referred to as TECO), registered in USA, having its legal address as 3400 Executive Parkway, Toledo, Ohio 43606 USA.
Legal representative:
      Name:  Mr. Todd Seifried
      Position:  Vice President of Operations
      Nationality: U.S. Citizen

CHINA TRIUMPH INTERNATIONAL ENGINEERING CO. Ltd. Company
( hereinafter referred to as CTIEC), registered in China, having its legal address at 27F, no. 2000, Zhongshanbei Road, Shanghai, P.R. China
Legal representative:
      Name: Mr. SHOU PENG
      Position: Chairman
      Nationality: Chinese

## Chapter 3 - Establishment of the Joint Venture Company

Article 2

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

The name of the Joint Venture company is "CTIEC/TECO American Technology, LLC". The legal address of the joint venture company is 3400 Executive Parkway, Toledo, Ohio 43606 USA.

## Article 3

The Joint Venture company has the status of a legal person in the USA and is subject to the jurisdiction and protection of the State of Ohio's laws. All its activities shall be governed by Ohio's laws, decrees and other pertinent rules and regulations.

## Article 4

The organization form of the joint venture company is a limited liability company. Each party to the Joint Venture company is liable to the Joint Venture company within the limit of the capital subscribed by it. The profit, risks and losses of the joint venture company shall be shared by the parties in proportion to their contributions of the registered capital.

## Article 5

The purpose of the Joint Venture company is to market, sell and develop the technology and services of the Joint Venture partners, on the principle of equality and mutual benefits and to reach a higher level of production technique and technology for obtaining satisfactory economic benefits for the owners to the Joint Venture company.

## Article 6

The business scope of the Joint Venture company is to market and sell the partner's products and services and provide after-sale services to the glass manufacturing industry.

## Chapter 4 - Total amount of investment and the registered capital

## Article 7

The initial amount of investment of the Joint Venture company is ███████ U.S. Dollars.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Article 8

The initial capital of the Joint venture shall be contributed as follows:

TECO shall pay ████████ U.S. Dollars, accounting for ████;

CTIEC shall pay $250,000.00 US Dollars, accounting for ████.

Article 9

The initial capital of the Joint Venture company shall be paid in by TECO and CTIEC according to their respective proportion of their investment within 3 months after the day the business license is issued.

Article 10

In case any party to the Joint Venture intends to assign or to sell all or part of its share in the Joint Venture to a third party, consent shall be obtained from the other party. Approval from any other Authority is also necessary.

Should the other party of the Joint Venture not give its consent to the assignment or sell, the Joint Venture shall be liquidated.

## Chapter 5 - Responsibilities of Each Party to the Joint Venture

Article 11

TECO and CTIEC shall be respectively responsible for the following matters:

Responsibilities of TECO:

a. Handling of applications for the incorporation, approval, registration, business licenses and other matters concerning the establishment of the joint venture company from the relevant authorities in Ohio, USA.

b. Providing the Joint Venture company with office space and communication facilities etc. in its' Toledo offices at no charge/cost to the Joint Venture (or as little as the appropriate laws allow).

c. Assisting the Joint Venture company in providing management personnel as needed at no charge to the Joint Venture. All related costs of travel, sales, etc. shall be paid by TECO unless otherwise mutually agreed at no charge to the Joint Venture.

d. Assisting foreign partners and staff in applying for the entry visa and

processing their traveling matters.

e. Providing the initial investment as outlined herein.

f. Responsible for handling other matters entrusted by the Joint Venture company.

Responsibilities of CTIEC:

a. Getting China authorities approval of the Joint Venture Agreement.

b. Providing the Joint Venture company with office space and communication facilities, etc. in its' Shanghai, China offices at no charge/cost to the Joint Venture (or as little as the appropriate laws allow)

c. Assisting the Joint Venture company in providing management personnel as needed. All related costs of travel, sales, etc. shall be paid by CTIEC, unless otherwise mutually agreed.

d. Assisting foreign partners and staff in applying for the entry visa and processing their travel matters.

e. Providing the initial investment as outlined herein.

f. Responsible for handling other matters entrusted by the Joint Venture company.

## Chapter 6 - Business development

**Article 12**

The business of joint venture company will be developed ████████████ ████ and in other select markets, as mutually agreed. The pricing policies will be determined by the Board of Directors according to the international market.

**Article 13**

In order to provide service ████████████ or abroad, the Joint Venture company may use the sales offices of CTIEC in China or TECO, subject to the approval of relative Chinese department.

## Chapter 7 - Shareholder's Meeting

4

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## Article 14

The Company shall have a Shareholders' Meeting comprised by both Parties. The Shareholders' Meeting shall be the highest authority of the Company.

## Article 15

The Shareholders' Meeting shall exercise the following powers:

1. To decide on the Company's operational policies and investment plans;
2. To elect and replace directors and officers and decide on related matters;
3. To review and approve reports of the Board;
4. To review and approve reports of the officers;
5. To review and approve the Company's proposed annual financial budget and the audited final accounts;
6. To review and approve the Company's plans for profit distribution and recovery of losses;
7. To decide on increases in or reductions of the Company's registered capital;
8. To decide on issues such as merger, division, change in corporate form or dissolution and liquidation of the company;
9. To amend the Company's articles of incorporation;
10. Deciding to set up, merge or close branches or representative offices;
11. Other related matters provided in the articles of incorporation of the Company;
12. To decide to issue guarantees to whatever third parties.

## Article 16

Each party has the right to propose motions for the Shareholders' Meeting in writing. The matters raised in such motions, if falling within authority of the shareholders' meeting, shall be discussed at the Shareholders' Meeting and be decided by voting.

## Article 17

1) Shareholders' Meetings include regular meetings and interim meetings. Regular meeting shall be convened once a year.

   Shareholders' Meetings shall be convened by the Board. The Board shall inform the Shareholders of the date, place and agenda of the meeting in a

5

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

written notice, which may be attached with a form of proxy, at least fifteen (15) business days before the meeting is convened. The Shareholders (in person or through their appointed proxies) have the obligation to attend each Shareholders' Meeting duly convened.

The shareholders' meetings shall be presided over by the Chairman of the Board. If the Chairman is unable to perform his duties, the Vice-Chairman or another director designated by the Chairman to preside, any director appointed by the Board shall preside over the meeting. If no person is appointed by the Board to preside, a shareholder elected by the shareholders present at the meeting shall preside over the meeting. If for any reason the shareholder so elected is unable to preside over the meeting, another shareholder (or its appointed proxy) present at the meeting whose voting rights are the largest, shall preside over the meeting.

2) An interim Shareholders' Meeting shall be convened by the Chairman within fifteen days under any of the following circumstances.
   - shareholder(s) representing one-fourth or more of the voting rights so request;
   - one-third or more of the directors so request;
   - the board of supervisors so request;
   - the number of the directors is less than the quorum provided by the Contract or the Company Law; or
   - the un-recovered losses of the Company reach one-third of the Company's total registered capital.

3) Shareholders shall exercise their voting rights at Shareholders' Meetings in accordance with the proportions of their capital contribution. Except as otherwise provided in the Company Law, resolutions of the Shareholders' Meeting shall be adopted with affirmative votes from Shareholder(s) holding more than ▮▮▮▮▮▮▮ of all the voting rights of the Shareholders.

### Chapter 8 - The Board of Directors

6

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**Article 18**

The Shareholders shall establish the Board of Directors.

**Article 19**

The Board of Directors shall decide all major issues concerning the joint venture company.  Its functions and powers are as follows:

- deciding and approving the important reports submitted by the Chairman or other officers (for instance: business plan, annual business report, funds, loans, etc);
- submitting annual financial reports, budget of receipts and expenditures, distribution plan of annual profits to the Shareholders for approval;
- adopting major rules and regulations of the company.

**Article 20**

The Board of Directors shall consist of 4 directors, of which 2 shall be appointed by TECO, 2 by CTIEC.  The term of office for the directors is four years and may be renewed.  All decisions of the directors must be approved by three (3) or more directors.

**Article 21**

The Chairman of the Board of Directors is the legal representative of the Joint Venture.  The Chairman of the board and the vice chairman of the board shall be elected by the four directors.

**Article 22**

When appointing and replacing directors, a written notice shall be submitted to the Shareholders.

**Article 23**

The Board of Directors shall convene at least 1 meeting every year.  An interim meeting of the board of directors may be held based on a proposal made by at least two members of the board.

**Article 24**

The board meeting will be held in the principle offices in Toledo, Ohio USA, unless mutually agreed to be held elsewhere.

7

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

CTIEC-TECO 0003231

Article 25

The board meeting shall be called and presided by the chairman.  Should the chairman be absent, the vice chairman shall call and preside over the board meeting in accordance with the authorization in written form.

Article 26

The chairman shall give each director a written notice 30 days before the date of the board meeting. The notice shall cover the agenda, time and place of the meeting.

Article 27

Should the directors be unable to attend the board meeting, they may present a proxy in written form to the board.  In case the director neither attends nor entrusts others to attend the meeting, he will be regarded as abstaining in any decisions.

Article 28

The board meeting requires a quorum of at least 3 directors out of which at least 1 director was appointed by TECO and 1 director was appointed by CTIEC.  Without the above conditions the board of directors meeting is to be considered null and void.

Article 29

Detailed written records shall be made for each board meeting and signed by all the attending directors or by the attending proxy.  The record shall be made in the English language, but must be filed with both TECO and CTIEC.

Article 30

The following issues shall be passed by over two-thirds of the total number of directors.

1. Change in the purpose of the Joint Venture;
2. Change in the business management plan of the joint venture company;
3. Engagement of the officers of the Joint Venture company;
4. Proposals to the Joint Venture to reserve any proportion of the various

8

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

funds and direction of use.

Article 31

In case of graft, dereliction of duty, selfish behavior of any of the directors of the Board, which might cause any kind of loss or damage to the business or to the image of the Joint Venture, the director shall bear all the legal and economic responsibilities and can be immediately dismissed by the Shareholders.

## Chapter 9 - Business Management Organization

Article 32

The Board of Directors of the Joint Venture shall establish a management organization. It shall consist of at least the following officers:

    a. Chairman
    b. President
    c. Vice President-Sales and Marketing
    d. Chief Financial Officer

These officers shall be selected from and continue to be employees of the Shareholders. The officers shall be compensated by their employer.

Article 33

The Chairman is directly responsible to the board of directors. He shall carry out the decisions of the board of directors, organize and conduct the daily sales, technology and marketing efforts. The President shall assist the Chairman in his work and act as the agent of the Chairman during his absence and exercise the function of the Chairman.

Article 34

The Board of Directors shall decide on the major issues concerning the daily work of the joint venture company, which shall be executed jointly by the officers. Issues which need co-signatures shall be specifically stipulated by the Board of Directors.

Article 35

The term of office for the officers shall be one year, and may be renewed by the

invitation of the Board of Directors.

Article 36

At the invitation of the Board of Directors, the officers may concurrently be the Directors or other high-ranking personnel of TECO or CTIEC.

Article 37

The Chairman, President and other officers should hand any report in written form to the board of directors 60 days in advance if they want to apply for resignation.

Article 38

Unless otherwise approved by the Shareholders or the Board, the Chairman, the President, and any other officers may not hold posts or consult for any other economic organization which might be considered in competition with the Joint Venture.

## Chapter 10 - Purchase of Marketing Services

Article 39

In its purchase of required marketing and sales brochures or other advertising, the Joint Venture company shall give first priority to purchase in China where conditions are the same.

## Chapter 11 - Tax, Finance and Audit

Article 40

Joint venture company shall pay taxes in accordance with the stipulations of Ohio, the USA and Chinese law and other relative regulations.

Article 41

The joint venture company shall maintain its accounting at the office at its legal address, have accountants, work out financial rules and regulations according to Ohio, USA laws.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## Article 42

All vouchers and books of account shall be in the English language.  Financial statements and reports of the joint venture company shall be written in the English language and translated to Chinese by CTIEC.

## Article 43

Parties to the joint venture have the right to invite an auditor to undertake annual financial check and examination at the expense of the Joint Venture.  The joint venture company shall provide assistance for the audit and examination.

## Article 44

In the first three months of each fiscal year, the officers shall prepare the previous year's balance sheet, profit and loss statement and proposal regarding the disposal of profits, and submit them to the board of directors for examination.

## Article 45

The Joint Venture company shall prepare its regular reports to the shareholders and taxing authorities as required in accordance with laws of Ohio, USA.

## Chapter 12 - Duration, Termination and Liquidation

## Article 46

The duration of the Joint Venture company shall be perpetual, beginning from the day when business license is issued.

## Article 47

The Joint Venture may be terminated by the Shareholders whenever the parties to the joint venture agree unanimously that the termination of the joint venture is for the best interests of the parties.

## Article 48

The Parties shall commit themselves to develop the Joint Venture in order to reach

11

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

the agreed business scope and targets.

Either party shall have the right to terminate the Joint Venture in case any one of the following situations occurs:
- When the Joint Venture company has no way to continue operation due to failure of either party in implementing the obligations stipulated in this agreement;
- When the Joint Venture company is unable to obtain the business targets stipulated in this agreement due to breach of this agreement or the articles of association by either party.
- When the Joint Venture company fails to start the business activities according to the plan, due to the failure of either party in submitting the agreed amount of capital in the due period of the time stipulated in this agreement.
- When the Joint Venture company is affected by Force Majeure and fails to establish or continue normal operation.

Article 49

Upon the expiration or termination of the Joint Venture, the Board of Directors shall work out procedures and principles for the liquidation, nominate candidates for the liquidation committee, and set up the liquidation committee for liquidating the Joint Venture company's assets.

Article 50

The tasks of the liquidation committee are: to conduct thorough check of the property of the Joint Venture company, its claim and indebtedness; to work out the statement of assets and liabilities and list of property; to formulate a liquidation plan. All these shall be carried out upon the approval of the Board of Directors.

Article 51

The liquidation expenses and remuneration to the members of the liquidation committee shall be paid in priority from the existing assets of the Joint Venture company.

Article 52

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

CTIEC-TECO 0003236

The remaining profit after the clearance of debts of the Joint Venture company shall be distributed among the parties to the joint venture according to the proportion of each party's investment in the registered capital and shall be transferred to the Party's bank accounts in their countries in U.S. Dollars.

Article 53

Upon completion of the liquidation, the Joint Venture company shall submit a liquidation report to the appropriate authorities, go through the formalities for closing the operation and its business license, and, at the same time, make an announcement to the public.

Article 54

After winding up of the Joint Venture company, its account books shall be left in the care of the U.S. participant.

## Chapter13 - The Amendment, Alteration and Discharge of the Contract

Article 55

The amendment of this agreement or other appendixes shall come into force only after the written agreement is signed by TECO and CTIEC and approved by any applicable examination and approval authority.

Article 56

In case of inability to fulfill the agreement or to continue operation due to heavy losses in successive years as a result of force majeure, the duration of the Joint Venture and the agreement shall be terminated by the unanimous agreement of the Shareholders.

## Chapter14 - Force Majeure

Article 57

Should either of parties to the contract be prevented from executing the contract by

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

force majeure, such as earthquake, typhoon, flood, fire and war and other unforeseen events, and their happening and consequences are unpreventable and unavoidable, the prevented party shall notify the other party by cable without any delay, and within 15 days thereafter provide the detailed information of the events and a valid document for evidence issued by the relevant public notary organization for explaining the reason of its inability to execute or delay the execution of all or part of the contract.  Both parties shall, through consultations, decide whether to terminate the agreement or to exempt the part of obligations for implementation of the contract or whether to delay the execution of the contract according to the effects of the events on the performance of the contract.

## Chapter 15 - Applicable Law

Article 58

The formation of this agreement, its validity, interpretation, execution and settlement of the dispute shall be governed by the laws and resolved in the courts of the State of Ohio, USA.

## Chapter 16 - Settlement of Disputes

Article 59

Any disputes arising from the execution of, or in connection with this agreement shall be settled through friendly consultations between both parties.

## Chapter 17 - Writing

Article 60

The agreement shall be written both in a Chinese version and in an English version, even though the State of Ohio shall only recognize or apply the English version. The English version shall be the official, legal record of this agreement.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## Chapter 18 – Articles of Association

Article 61

The Articles of Association shall be written by the officers of the Joint Venture in compliance with the Laws of the State of Ohio, USA.

Article 62

The agreement shall come into force beginning on the date of the issuance of the business license or applicable certificate of incorporation.

Should notices in connection with any party's rights and obligations be sent by either TECO or CTIEC, they must be written and shall be also be required in the English language.  The legal addresses of TECO and CTIEC listed in this contract shall be the posting addresses.

Article 63

The agreement is first signed in English by the authorized representatives of both parties on the 30th of March, 2005.


For TECO
(signature)

_Scott Slater_

Printed Name

Signature

_Chairman_

Title


For CTIEC
(signature)

Printed Name

Signature

Title


15

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

— SALARY = 200,000 RMB ÷ 8.25
SALES PERSON FOR J.V.

①

ATTENDEES: PENG SHOW                           12-13-04
          WANG ZONGWEI          LIM, REC, FCP, RJN
          ZHANG JUN HONG        (DGH LETTER)

/ ...

SCHEDULE ?   12-13-04   TECO
             12-14-04   TECO —  ▮▮▮▮▮
                        11:00 AM   PLANT TOUR
                        3:00 PM    RETURN TO TECO
                        3:30 PM
             12-15-04   9:30 AM   TO AIR PORT

• CTIEC —            90% STATE OWNED
                     10% EMPLOYEES = MR. PENG 1%
                                     OF 10%
• CNBM — CHINA NATIONAL
         BUILDING MATERIAL Co. — MET. GROUP CO
         CTIEC SUBSIDARY

• JOINT VENTURE BETWEEN TECO & CTIEC MUST
  HAVE GOVERNMENT APPROVAL

✳  • QUESTION — TECO-CTIEC JOINT VENTURE,
     SINCE 90% CHINA GOV. OWNED
     WHAT IS EFFECT.
  • CTIEC TO BECOME A COMPANY LISTED ON
    STOCK EXCHANGE — HONG KONG
    OWNERSHIP IN FUTURE

" CTIEC = CATS SGEL ... CHINA " LUOYANG " PLANT

HIGHLY CONFIDENTIAL - RESTRICTED - SUBJECT TO PROTECTIVE ORDER

E. 6



I. OWNERSHIP OF CTIEC                                    12-13-04

o CNBM — 100% STATE OWNED NOW

o AFTER CNBM A LISTED STOCK CO.

    60% STATE OWNED

    40% PUBLIC, INTERNATIONAL CO, TECH. INSTITUTES

o CNBM OWNS 90% CTIEC SHARES

    THEREFORE, GOV. WILL OWN 54% OF CTIEC.
            (60% × 90% = 54%)

    • NEXT STEP   CTIEC MAY BECOME A 100%
            PRIVATE CO.

    CAPITAL OF CTIEC  60,000,000 RMB
                    — 7 TO 8 MILLION USD —

    • ADVANTAGES IF GOV. OWNERSHIP
            • FINANCING
            o GOV. SUPPORT
            •

    o COMPANIES PAY INCOME TAX

o CTIEC  INDEPENDENCE

    • LOAN          — REPORT TO GOV.
      OVERSEAS
    • INVESTMENT  — REPORT TO GOV.

    o ALL OTHER ACTIVITIES MANAGED BY SOC?


2. JOINT VENTURE CO.

    a. GET TO KNOW EACH OTHER

    b. STRATEGIC NEEDS FOR BOTH OF US

    c. DECIDE NOT TO COOPERATE WITH OTHER COMPANIES
        SIMILAR TO TECO. — TECO DOES NOT WANT .

HIGHLY CONFIDENTIAL – RESTRICTED - SUBJEC▮
        ▮CTIEC WORKING ▮▮ ▮▮▮



e. CTIEC — 63% CHINA, NATIONAL MARKET INCREASING
  — OWN TECHNOLOGY, COMPRESSION/VC'S ENG'R. CO.
  — GENERAL CONTRACTUL & ENG'R CO, IN FUTURE
  — LOWER COST THAN WEST 30% HIGHER THAN LOCAL CAMPUTERS ③
  — J.V. CO. CAN SELL @ HIGHER PRICE
  — J.V. CAN PROVIDE TOTAL LINE
f. TECO — SUPPLIER OR FURNANCE ONLY

12-13-04

CTIEC → TECO                    COMPETORS

J.V. COMPANY

AMERICAN CTIEC-TECO

GLASS INDUSTRY

CUSTOMER ORDER
   TO
1. J.V. COMPANY
2. CTIEC
3. TECO                         TARGET MARKETS

J.V. COMPANY

SALES COMPANY / OR 2 COMPANIES

INCORPORATED IN U.SA.

OFFICE IN TECO BUILDING

OFFICE @ CTIEC BUILDING

IF PROJECT REQUEST
   1. CTIEC-TECO MEET TO DISCUSS ←
      o TECHNOLOGY
      o COMMERICAL
   2. JOINT OFFER TO CUSTOMER

CUSTOMER        NEGOTIATE

NO      ?      YES

CTIEC & TECO OH & P IN EACH PROPOSAL

HIGHLY CONFIDENTIAL – RESTRICTED - SUBJECT TO PROTECTIVE ORDER

2004-12-13 Handwritten notes
- HIGHLY CONFIDENTIAL-RESTRICTED

CTIEC-TECO 0003158

④

12-13-04

TRAINING AT AN OPERATING FACTORY NOT RESOLVED
• VALUE OF PROJECT
    • DEPENDS ON MARKET NEED, IF J.V. REQUIRED OR NOT
        • SHENZHEN SOUTHERN FLOAT PROJECT IS TURN
            KEY PROJECT, DIVIDED SCOPE TECO ~ CTIEC
        • AT BEGINING DISCUSS WITH CUSTOMER IF HIGH
            TECHNOLOGY PROJECT OR NOT,
            FUTURE MORE PROJECTS HIGH TECHNOLOGY
            TO COMPUTE AGAINST ▮▮▮▮▮▮▮▮

-?-

RJN DISCUSSED PAST EXPERIANCE TECO HAD WITH
    BANGBOU INSTITUTE — ONE PROJECT ONLY WITH
    TECO.

QUESTIONS: 1. PERFORMANCE GUARANTEE GUARANTEED
                BY CTIEC & TECO
            2. SMALL PROFIT FOR JIV. CO.
            3. % OWNERSHIP ▮▮▮▮▮▮▮▮
               ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
                • SUBCONTRACT WORK TO CTIEC & TECO
                    PROFIT SPLIT BASED ON SPLIT
                    OF WORK

            • WRITE UP IDEA TO ESTABLISH J.V.
                • RESPONSIBILITY OF EACH PARTY
                • SCHEDULE TIME LINE

HIGHLY CONFIDENTIAL – RESTRICTED - SUBJECT TO PROTECTIVE ORDER

| From: | Scott Slater <ScottS@TECO.com> |
|---|---|
| Sent: | Thursday, September 25, 2014 10:49 AM |
| To: | 'zjteng@hotmail.com' |
| Cc: | Ruth Markwood <RuthM@TECO.com> |
| Subject: | CTIEC Outstanding Invoices & Items Owed to TECO |
| Attach: | CTIEC-TECO Attachments.pdf |

Dear Mr. Teng,

I am writing to you in response to your e-mail of September 4, 2014. We have revisited the same outstanding issues many times over the past two years. It is now time to resolve them, as we are all spending valuable time and resources to revisit these same issues again and again.

The first issue is the remaining balance of interest due from the New Jersey Institute. Your e-mail of September 4th said, "The remaining payment for New Jersey Institute will be remitted to you next week." To date, we still have not received this payment. The current balance due through September 26th is $2,729.51.

The second issue is the outstanding balance regarding the Xinyi commission of ▮▮▮▮▮▮ We have marked up your schedule to indicate the payments received (see attached). Please note your list of payments is greater than the agreed commission amount. The payment you indicate of ▮▮▮▮▮ on November 29, 2012, was not received by Toledo Engineering. We question if it should even be included, as the name appears as VIGLACERA. If we deduct this payment, the total agrees to the amount received of ▮▮▮▮▮ This amount is less than the ▮▮▮▮▮ agreed to by ▮▮▮▮▮. This being the amount that was deducted twice – here, and again in March of 2013. We are also attaching a schedule, previously provided by us, of payments received on the commission. Note that each payment had a fee deducted; the last one larger, which could account for the variance between ▮▮▮▮▮ and ▮▮▮▮▮.

The next issue is the payment outstanding of ▮▮▮▮▮ regarding the Taiwan Fiberglass Project. As Mr. Paulsen stated in his e-mail of August 19, 2014, there are two items that do not agree. In February, TECO received two payments for ▮▮▮▮▮. CTIEC states two payments were made of ▮▮▮▮▮ on May 12 and May 15, 2014. TECO only received one ▮▮▮▮▮ payment on May 15, 2014. The difference between the duplicate payment of ▮▮▮▮▮ and the missing payment ▮▮▮▮▮ is the outstanding balance of ▮▮▮▮▮. If CTIEC can provide proof from their bank that both of these transfers in May 2014 were sent to TECO's account, we can then research with our bank as to what may have happened to the additional transfer. Otherwise, we have no other option but to expect the payment of ▮▮▮▮▮.

The final outstanding issue is the May 15, 2014, authorization from Mr. Paulsen for a credit/deduction allowed of $12,262.00.

To recap the balance due, per the above explanation:

1)  Interest due on loan                                        $2,729.51
2)  Balance due on Xinyi commission                    (▮▮▮▮▮)
3)  Final payment on Taiwan Fiberglas                   ▮▮▮▮▮
4)  Deduction allowed for expenses paid by CTIEC for TECO   (12,262.00)

TOTAL Outstanding Balance                               ▮▮▮▮▮

I trust you will agree with the above reconciliation, and we look forward to an immediate transfer receipt of ▮▮▮▮▮. TECO has been more than patient regarding these outstanding amounts and we do not want to continue to revisit this old issue. If you are not in agreement with the above, please contact me to discuss a final resolution.

19

2014-09-25 104924 104926
- HIGHLY CONFIDENTIAL-RESTRICTED

Regards,

S. A. Slater
Chairman & CEO
---------------------------
Toledo Engineering Co., Inc.
3400 Executive Parkway
P.O. Box 2927
Toledo, Ohio 43606-0927  USA
Telephone (419) 537-9711
---------------------------
Website    www.teco.com
E-mail     scotts@teco.com
Telephone  (419) 537-9711
Fax        (419) 537-1369
=============================

CONFIDENTIALITY NOTICE: The documents accompanying this E-mail transmission contain confidential and privileged information. This information is intended to be for the use of the individual and/or entity named above.  If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of the contents of this E-mail transmission is strictly prohibited.  If you have received this communication in error, please notify us immediately by telephone, collect.  Thank you.

# Loan Amortization Schedule

**Enter values**

| | |
|---|---|
| Loan amount | $ 250,000.00 |
| Annual interest rate | 3.00 % |
| Loan period in years | 1 |
| Number of payments per year | 12 |
| Start date of loan | 3/12/2013 |
| Optional extra payments | |

**Loan summary**

| | |
|---|---|
| Scheduled payment | $ |
| Scheduled number of payments | 12 |
| Actual number of payments | 12 |
| Total early payments | $ |
| Total interest | $ 2,729.51 |

Lender name: CTIEC/TECO American Technologie

| Pmt No. | Payment Date | Beginning Balance | Scheduled Payment | Extra Payment | Total Payment | Principal | Interest | Ending Balance | Cumulative Interest |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 3/31/2013 | $ 250,000.00 | 0.00 | - | 0.00 | 0.00 | 416.80 | $ 250,000.00 | 416.80 |
| 2 | 4/30/2013 | $ 250,000.00 | 0.00 | - | 0.00 | 0.00 | 625.00 | 250,000.00 | 1,041.80 |
| 3 | 5/31/2013 | $ 250,000.00 | 0.00 | - | 0.00 | 0.00 | 625.00 | 250,000.00 | 1,666.80 |
| 4 | 6/30/2013 | $ 250,000.00 | 0.00 | - | 0.00 | 0.00 | 625.00 | 250,000.00 | 2,291.80 |
| 5 | 7/31/2013 | $ 250,000.00 | 0.00 | - | 0.00 | 0.00 | 625.00 | 250,000.00 | 2,916.80 |
| 6 | 8/31/2013 | $ 250,000.00 | 0.00 | - | 0.00 | 0.00 | 625.00 | 250,000.00 | 3,541.80 |
| 7 | 9/30/2013 | $ 250,000.00 | 0.00 | - | 0.00 | 0.00 | 625.00 | 250,000.00 | 4,166.80 |
| 8 | 10/31/2013 | $ 250,000.00 | 0.00 | - | 0.00 | 0.00 | 625.00 | 250,000.00 | 4,791.80 |
| 9 | 11/30/2013 | $ 250,000.00 | 0.00 | - | 0.00 | 0.00 | 625.00 | 250,000.00 | 5,416.80 |
| 10 | 12/31/2013 | $ 250,000.00 | 0.00 | - | 0.00 | 0.00 | 625.00 | 250,000.00 | 6,041.80 |
| 11 | 1/31/2014 | $ 250,000.00 | 0.00 | - | 0.00 | 0.00 | 625.00 | 250,000.00 | 6,666.80 |
| 12 | 2/28/2014 | $ 250,000.00 | 0.00 | - | 0.00 | 0.00 | 625.00 | 250,000.00 | 7,291.80 |
| 13 | 3/31/2014 | $ 250,000.00 | 0.00 | - | 0.00 | 0.00 | 625.00 | 250,000.00 | 7,916.80 |
| 14 | 4/30/2014 | $ 250,000.00 | 0.00 | - | 0.00 | 0.00 | 625.00 | 250,000.00 | 8,541.80 |
| 15 | 5/31/2014 | $ 250,000.00 | 0.00 | - | 0.00 | 0.00 | 625.00 | 250,000.00 | 9,166.80 |
| 16 | 6/20/2014 | $ 250,000.00 | 0.00 | - | 0.00 | 0.00 | 416.67 | 250,000.00 | 9,583.47 |
| 17 | 6/23/2014 | $ 250,000.00 | 0.00 | - | 256,875.00 | 250,000.00 | (6,875.00) | 2,708.47 | 2,708.47 |
| 18 | 6/30/2014 | $ 2,708.47 | 0.00 | - | 0.00 | 2,708.47 | 1.58 | 2,710.05 | 2,710.05 |
| 19 | 7/31/2014 | $ 2,710.05 | 0.00 | - | 0.00 | 2,710.05 | 6.78 | 2,716.82 | 2,716.82 |
| 20 | 8/31/2014 | $ 2,716.82 | 0.00 | - | 0.00 | 2,716.82 | 6.79 | 2,723.61 | 2,723.61 |
| 21 | 9/26/2014 | $ 2,723.61 | 0.00 | - | 0.00 | 2,723.61 | 5.90 | 2,729.51 | 2,729.51 |

会计分录序时簿

| 日期 | 摘要 | |
|---|---|---|
| 11/29/2012 | TOLEDO ENGINEERING CO INC: | █████████████ |
| 11/29/2012 | VIGLACERA仪器建设股份公司：土建安装（230057美元） | |
| 6/3/2013 | TOLEDO ENGINEERING CO INC: | █████████████ |
| 6/3/2013 | TOLEDO ENGINEERING CO INC: | |
| 6/3/2013 | TOLEDO ENGINEERING CO INC: | |

**CTIEC-TECO Attachments**

**CTIEC-TECO 0003002**

会计分录序时簿

| 科目名称 | 币别 | 原币金额 |
|---|---|---|
| 预付账款-越南VIGLACERA 420吨/天浮 美元 | | 230,057.00 |
| 预付账款-越南VIGLACERA 420吨/天浮 美元 | | |
| 预付账款/NORM LLC(阿塞拜疆水泥项目 美元 | | |
| 预付账款/NORM LLC(阿塞拜疆水泥项目 美元 | | |
| 预付账款 NORM LLC(阿塞拜疆水泥项目 美元 | | |

*(handwritten notes):*

on 9/27/12
on 11/9/12

we do not have this pymt.
5/28/13 rec'd
5/10/13
5/31/13 rec'd Less fee of 7.90?

NOT REC'D

Agreed amt of Commission

Page 2

**Payments Received from CTIEC**
**Regarding Xinyi**

| DATE RECEIVED | GROSS AMOUNT | LESS BANK FEES | NET RECEIVED |
|---|---|---|---|
| September 27, 2012 | $ ████ | $  15.00 | $ ████ |
| November  9, 2012 |  |  15.00 |  |
| May 16, 2013 |  |  12.00 |  |
| May 28, 2013 |  |  12.00 |  |
| May 31, 2013 |  |  22.90 |  |
| Total Received To Date | $ ████ | $  76.90 | $ ████ |
| Agreed Settlement Amount | ████ |  |  |
| Balance Due | $ ████ |  |  |



Toledo Engineering Co., Inc.                                          Glass Plant Engineers & Contractors

May 15, 2014

Mr. Teng Zujian
China Triumph International Engineering Co.
27F, Zhongqi Bldg., 2000 N. Zhongshan Rd.
Shanghai 200063
P.R. China

Dear Mr. Teng:

Please consider this credit note as authorization to deduct the following from an
upcoming payment to TECO.

1. TECO booth advance by CTIEC
   RMB 38178                              = $ 6,157.00    China Glass 2013

2. Cash advance to Fred Paulsen during the
   Glass Show in Shanghai
   RMB 10,000                            = $ 1,613.00

3. Payment of TECO hotel bill for the
   Kerry Hotel for the Shanghai Glass Show
   RMB 60,094                            = $ 9,692.00

4. Less duplicate deduction of payments on
   prior TECO booth for Beijing          = ($5,200.00)

Total credit/deduction allowed          $12,262.00

Regards,

F. C. Paulsen
Senior Member of the Board

KATHLEEN P. TRAYNOR
Notary Public – State of Ohio
My Comm. Expires Nov. 23, 2014

**CTIEC-TECO Attachments**                              **CTIEC-TECO 0003005**