FROM :GUBM-OXNARD                    FAX NO. :805-279-4667            Dec. 01 2005 12:02PM P3/5

3. Terms of Payment: Within 7 days after the contract is executed, Buyers shall open Irrevocable Letter of Credit at sight payable against Seller's draft drawn at sight on the opening bank accompanied by the commercial documents set out in paragraph 5. All bank charges outside U.S.A. are for the beneficiary's account. The L/C shall remain valid for negotiation freely at any bank until the 21st day after the date of shipment. (Opening Bank shall be Bank of America, National City Bank of New York or any bank confirmed by the seller.)

4. Shipping Mark: as per the buyer's notice before production.

5. Documents;
   1) Full set (i.e. 3/3 originals) of clean on board ocean bills of lading marked "Freight Prepaid". The bills of lading shall include the statement "no solid wood".
   2) Invoice in triplicate
   3) Packing List in triplicate, The packing list shall state "no solid wood"
   4) Certificate of Quality issued by Beijing New Building Materials Co, Ltd. Certifying that the ½" Regular wall board are produced and inspected in compliance with specifications of ASTM C 1396-04 standards.
   5) Copy of Telex/Fax to the Buyers advising particulars of shipment within 3 working day(s) after shipment is made.
   6) Certificate of Origin from the Chamber of Commerce.

6. Port of Shipment: Tianjin, China

7. Port of Destination: Los Angeles, U.S.A. Long Beach is a optional place as per Carrier's decision.

8. Latest date of shipment: January 10th, 2006 or the first vessel by the Carrier in January 2006.

9. Packing;
   1)    To be packed in a manner suitable for long distance ocean transportation, with appropriate protection against moisture, change of climate, and numerous handlings.

   2)    The ½" 4'X12' will consist of two 34 piece units strapped together into one 68 piece lift (stack).

   3)    All lifts will have a plastic cap over the tops, sides and ends, then drywall dunnage strapped to the tops, sides and ends. No solid wood packing will be permitted.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                          BNBMPLC0007431

4)   The Sellers shall mark each lift with a stenciled label that states the

tem, lift number, piece count, weight and measurement. International symbols for   protection from moisture, handling with care and this side up will also be stenciled on each unit as will a diagram showing how to load and unload with slings.

10.   Claims:   Within 90 days after the arrival of the commodity at destination, should the quality, specification, or quantity be found not in conformity with the stipulations of the contract, except those claims for which the insurance company or the carrier accept liability, the Buyers shall, on the strength of an inspection certificate issued by a recognized surveyor approved by the seller, have the right to claim for replacement with new commodity, or for economic compensations.

11   Arbitration: All disputes in connection with this contract or the execution thereof shall be settled amicably by negotiation. In case no settlement can be reached, the case under disputes may then be submitted to the " Foreign Trade Arbitration Commission of China Council for the Promotion of International Trade" for Arbitration.

12   Force Majeure: In case of force Majeure, the Seller shall not be held responsible for late   delivery or non-delivery of the goods but shall notify the Buyer by fax. If so requested by the buyer, a certificate issued by the China Council for the promotion of International Trade or any competent authorities.

13   Miscellaneous:
   a)   The tapered edge shall be 0.6-1.9mm in depth and 30-80mm in width.
   b)   The Ex Dock Duty & THC/Wharfage paid price is based on the offer and commitment from Star Shipping as requested by the Buyers.
   c)   If the import documents/formalities are not ready for unloading the goods when the vessel arrival at destination, the buyer will pay USD 20000 per day to the seller.

14   Any amendment, should be agreed by both sides, and shown on the original copy of sales contract.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

BNBMPLC0007432

FROM :GWBM OXNARD                    FAX NO. :805-278-4667          Dec. 01 2005 12:03PM P5/5

Sellers:

BEIJING NEW BUILDING MATERIALS CO., LTD.

*For and on behalf of*
北新建材 ( 集团 ) 有限公司
BEIJING-NEW BUILDING MATERIALS CO.,LTD.

*Authorized Signature(s)*

Buyers:

LARRY ROGERS          12-1-05

GREAT WESTERN BUILDING MATERIALS

12 –1– 05

BAOAN INTERNATIONAL INVESTMENT CO.,LTD.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    BNBMPLC0007433

# 代理出口协议书

日期:2005年 11 月 30 日

编号:

## 一、 缔约方:

1、 供货委托人（以下称甲方）： 北新集团建材股份有限公司

法定住所：北京市海淀区三里河路甲 11 号

邮政编码：

法定代表人：

电话：

传真：

开户银行：

帐号：

2. 出口商（以下称乙方）：北新建材（集团）有限公司

法定住所：北京市海淀区三里河路甲 11 号

邮政编码：100096

电 话：010-82918788

传 真：010-82912657

开户银行：

帐 号：

经双方友好协商，甲方委托乙方为其代理出口该批货物，现订协议如下：

## 二、 代理出口事项

1.货物名称：纸面石膏板；

2.规格和技术标准：同出口合同 E-GB25190；

3.数量：见出口合同 E-GB25190

4.价格：同出口合同 E-GB25190；

5.总价：US$431,827.2

6.国外采购商（以下简称外商）： **GREAT WESTERN BUILDING MATERIALS & BAOAN**

- 1 -

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

BNBMPLC0007434

INTERNATIONAL INVESTMENT CO., LTD.

7.装船期：2005 年 12 月 25-28 日

## 三、 签约

1.甲乙双方之间的关系为代理人与被代理人之间的关系，乙方与外商之间的关系为甲方代理人

与该外商之间的关系。该合同内所有条款(包括主要条款及附加条款)由甲方与外商自行确定，

乙方只履行代理甲方对外签订合同，不参与该合同内任何条款的确定与履行。

2.出口合同项下的全部风险和责任由甲方自行独立承担。

3.乙方在收到外商的合同款后，按照银行当日的汇率将外币折合成人民币在 7 日内支付给甲

方。

4. 乙方与外商签订的出口合同 E-GB25190 为本协议书不可分割的一部分。

## 四、 甲方责任

1. 负责与外商洽商和履行所有合同条款(包括主要条款及附加条款)，定好产品、规格、数量，并
   联系工厂组织货源。

2. 如果国家政策规定本协议第二条确定的货物在出口时，需要出口批文或出口许可证及相关的其
   他文件，甲方应向乙方提供其出口所必须的相应的出口批文或许可证及相关的其他文件，乙方
   应给予必要的协助。乙方对前述批文和文件不承担任何责任，包括但不限于，在合同已经签署，
   但甲方未获得前述文件的风险。

3. 负责租船运输等，承担海运费、报关费、出口货物商检费及熏蒸费、堆存费等出口过程中的相
   关费用。

4. 海运保险由外商负责，但甲方承担出险时保险公司免赔部分

5. 在货物出港后一个月内，甲方必须将生产厂家的增值税发票及出口退税缴税书(以乙方为抬头)
   提交乙方。如果甲方不能及时将这些单据给乙方，所有损失由甲方承担。

6. 甲方应承诺甲方进行的一切商业贸易行为是合法的，且向乙方提供的单据、 资料是真实的。
   如有违法、违章事件，由甲方负全部责任。

7. 由于产品质量不好，或外商信誉不好而产生的一切责任，经济损失都由甲方承担。

## 五、 乙方责任

1. 提供有效的核销单据，以乙方的名义对外出口。

2. 负责履行报关、发运、租船运输、商检等手续；



- 2 -

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

BNBMPLC0007435

3. 尽早办理核销、退税手续。

## 六、 费用及代理费

出口过程中发生的一切费用由甲方承担。乙方按照 RMB190102.68(人民币壹拾玖万壹佰零贰圆陆角捌分)向甲方收取出口手续费含乙方向 **BAOAN INTERNATIONAL INVESTMENT CO., LTD.** 支付的佣金人民币 **155556.5**（人民币壹拾伍万伍仟伍佰伍拾陆元伍角）。

## 七、 违约责任

协议双方的任何一方违反本协议的约定，给守约方造成损失，违约方应赔偿守约方损失。

## 八、 争议解决

本协议项下的争议应首先通过友好协商解决，如果不能通过友好协商解决，该协议应提交北京市法院解决。

## 九、协议生效及终止。

1. 本协议自甲、乙双方传真签字盖章之日起生效。

2. 本协议在买卖合同已履行完毕，经双方友好协商而终止。

3. 本协议一方或双方因不再具有中国法律规定的民事主体资格或具有其它资质及经营范围上的缺陷而终止，如因该等原因造成的本协议而终止，过错方须赔偿无过错方的损失。

甲方：

（签章）

乙方：北新建材（集团）有限公司

（签章）



CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER     BNBMPLC0007436

**Export Agency Agreement**

Date: November 30, 2005
Number:

I. Parties

1. Authorizing Supplier Party (Party A): Beijing New Building Materials Public Limited Company
Address: No. 11 Sanlihe Road, Haidian District, Beijing, P. R. China
Postcode:
Legal Representative:
Telephone:
Fax:
Name of bank:
Account number:

2. Exporter (Party B): Beijing New Building Material (Group) Co., Ltd
Address: No. 11 Sanlihe Road, Haidian District, Beijing, P. R. China
Postcode: 100096
Telephone: 010-82918788
Fax: 010-82912657
Name of bank:
Account number:

This agreement is entered into by Party A and Party B through friendly consultations, Party A hereby authorizes Party B as export agency for exportation of such goods as follows:

II. Authorized exportation Items

1. Name of goods: paper faced gypsum boards;
2. Specification and technological standards: same as contract no. E-GB25190;
3. Quantity: see contract no. E-GB25190;
4. Price: same as contract no. E-GB25190;
5. Total Value: US$ 431,827.2
6. Overseas Purchaser (Purchaser): GREAT WESTERN BUILDING MATERIALS & BAOAN INTERNATIONAL INVESTMENT CO., LTD.
7. Period of loading: December 25-28, 2005

III. Signing

1. The relationship between Party A and Party B is of principal and agency nature, the relationship between Party B and foreign party (Purchaser) is considered as the relationship between Agency of Party A and Purchaser. All terms in such agreement between Party B and Purchaser (including the main terms and additional terms) shall be determined between and by Party A and Purchaser; Party B merely signs agreements on

1

 BNBMPLC0007437

behalf of Party A to other parties, but does not participate in confirmation and performance of any terms in such agreements.

2. Party A is solely and independently responsible for all risks and liabilities under export agreements.

3. After Party B receives payment from Purchaser, Party B shall convert the foreign currency payment into Renminbi using the exchange rate on the payment date, and make payments to Party A within 7 days.

4.  The export agreement contract No. E-GB25190 signed between Party B and Purchaser forms an inseparable part of this agreement.

IV. Party A's responsibilities

1. Party A is responsible for negotiating and performing all terms of the agreement together with Purchaser (which includes main terms and additional terms); and confirming the right product, its specification, its quantity, and contacting factories for supplying goods.

2. If the PRC national policies or regulations require goods exported under Clause II to retain export approval or license certificate and relevant other documents for exportation purposes; Party A shall supply to Party B all necessary export approval or license certificate and relevant other documents, and Party B shall assist Party A if required. Party B is not responsible for applying for any aforementioned official documents, including but not limited to risks associated with the situation where Party A has not obtained such documents but agreement with other parties has already been signed.

3. Party A is responsible for the chartering ship for transportation, Party A is liable for ocean freight, customs declaration fee, export commodity inspection fee, fumigation charge, stocking charge and other fees related to the exportation process.

4. Purchaser is responsible for the cargo insurance, however Party A shall be liable for the part to which the insurance company is free from compensation.

5. Party A must supply Party B with manufacturer's Value Added Taxed invoice and its export tax refund certificate (with Party B's title head) after one month of cargo departure. If Party A cannot supply Party B with the aforementioned invoices, Party A shall be held liable for all losses.

6. Party A shall guarantee that all business and trade activities performed by Party A are legal, and all relevant invoices and information provided to Party B are genuine. If an incident which is illegal or against regulations has occurred, Party A shall be held liable for all responsibilities.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

BNBMPLC0007438

7. Party A shall be liable for all economic losses and liabilities incurred as a result of bad product quality or Purchaser's bad reputation.

V. Party B's responsibilities

1. Party B shall supply valid verification documents, and to conduct exportation in the name of Party B.

2. Party B is responsible for the process of customs declaration, cargo dispatch, chartering transport and commodity inspection etc.

3. Party B shall finish the verification and tax refund process as soon as possible.

VI. Fees and agency fees

Party A shall be liable for all fees incurred during the exportation process. Party B shall receive payment(s) from Party A equal to RMB 190, 102.68 as export processing cost, which includes commission paid by Party B to BAOAN INTERNATIONAL INVESTMENT CO., LTD of RMB 155,556.5.

VII. Breach

Any party who breaches terms of this agreement and caused losses to the non-breaching party shall pay compensation to the non-breaching party.

VIII. Dispute resolution

Disputes under this agreement shall be first resolved by friendly negotiations, if disputes cannot be resolved by friendly negotiations, such dispute shall be resolved in the Beijing courts.

IX. Effective date and termination date of the agreement

1. This agreement shall take effect as of it is duly signed and sealed by both parties by way of fax.

2. This agreement shall terminate at the end of performance of the Purchase agreement, and after friendly consultations by both parties.

3. If one party or both parties under this agreement loss(es) its objective civil action capability under the PRC law or suffer(s) deficiency in terms of its ability or operational scope, and caused termination of this agreement; the wrong-doing party shall pay compensation to the innocent party for its losses.

Party A: Beijing New Building Materials Public Limited Company
Sealed and signed

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                    BNBMPLC0007439

Party B: Beijing New Building Material (Group) Co., Ltd
Sealed and signed

4

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                    BNBMPLC0007440

# SALES CONTRACT

Contract No.: E-GB26024

Date: Feb 21, 2006

**Sellers: BEIJING NEW BUILDING MATERIALS PUBLIC LIMITED COMPANY**
Address: DEWAI XISANQI, BEIJING CHINA
Tel:+86-10-82918788 Fax: +86-10-82912657

**Buyers: GREAT WESTERN BUILDING MATERIALS**
301 Lombard St Oxnard, CA 93030
Tel: 001-(805) 277-4474; fax (805) 277-6019

**BAOAN INTERNATIONAL INVESTMENT CO., LTD.**
917 Village Oaks Drive Covina CA 91724
Tel: 001-(626)-338-4000; fax: 001-(626)-338-2500

The contract is made by and between the Buyer and the Seller. Whereby the Buyer agrees to buy and the Seller agrees to sell the under mentioned commodity according to the terms and conditions stipulated below:

1. Name of Commodity and Specifications, Quantity, and Unit Price :

| MARKS & NOS. | DESCRIPTION | UNIT | QTY. | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| | | | | CFR Los Angeles | CFR Los Angeles |
| | Gypsum Board (Regular) 4'×12'×1/2"/Piece | Kilo Sqft | 2822.4 | US$ 178 | US$502387.2 |
| | 5% more or less should be allowed | | | | |
| | **TOTAL** | | | | US$502387.2 |

2. Total Value of Contract: USD502387.2 Say US DOLLAR FIVE HUNDRED AND TWO THOUSAND THREE HUNDRED AND EIGHTY SEVEN CENTS TWENTY ONLY as defined above CFR Los Angeles with THC/Wharfage paid by the seller and loading charges onto the truck at Buyers' account.

3. Terms of Payment: Within 7 days after the contract is executed, Buyers shall open Irrevocable Letter of Credit at sight payable against Seller's draft drawn at sight on the opening bank accompanied by the commercial documents set out in paragraph 5.   All bank charges outside

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

BNBMPLC0007441

U.S.A. are for the account of the beneficiary.   The L/C shall remain valid for negotiation freely at any bank until the 21st day after the date of shipment. (Opening Bank shall be Bank of America, National City Bank of New York or any bank confirmed by the seller.)

4.   Shipping Mark:

5.   Documents:
   1)   Full set (i.e. 3/3 originals) of clean on board ocean bills of lading marked "Freight Prepaid".   The bills of lading shall include the statement "no solid wood".
   2)   Invoice in triplicate
   3)   Packing List in triplicate, The packing list shall state "no solid wood"
   4)   Certificate of Quality issued by BEIJING NEW BUILDING MATERIALS PUBLIC LIMITED COMPANY
   5)   Certifying that the ½" Regular wall board are produced and inspected in compliance with specifications of ASTM C 1396-04 standards.
   6)   Copy of Telex/Fax to the Buyers advising particulars of shipment within 3 working day(s) after shipment is made.
   7)   Certificate of Origin

6.   Port of Shipment: Tianjin, China

7.   Port of Destination: Los Angeles, U.S.A. Long Beach is an optional place as per Carrier's decision.

8.   Latest date of shipment: March 5th, 2006 according to the star shipping laycan time

9.   Packing:

   1)      To be packed in a manner suitable for long distance ocean transportation, with appropriate protection against moisture, change of climate, and numerous handlings.

   2)      The ½" 4'X12' will consist of two 34 piece units strapped together into one 70 piece lift (stack).

   3)      All lifts will have a plastic cap over the tops, sides and ends, then drywall dunnage strapped to the tops, sides and ends.   No solid wood packing will be permitted.

   4)      The Sellers shall mark each lift with a stenciled label that states the

      tem, lift

      number, piece count, weight and measurement.   International symbols for protection from moisture, handling with care and this side up will also be stenciled on each unit as will a diagram showing how to load and unload with slings.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    BNBMPLC0007442

10. Claims:    Within 90 days after the arrival of the commodity at destination, should the quality, specification, or quantity be found not in conformity with the stipulations of the contract, except those claims for which the insurance company or the carrier accept liability, the Buyers shall, on the strength of an inspection certificate issued by a recognized surveyor approved by the seller, have the right to claim for replacement with new commodity, or for economic compensations.

11   Arbitration: All disputes in connection with this contract or the execution thereof shall be settled amicably by negotiation. In case no settlement can be reached, the case under disputes may then be submitted to the " Foreign Trade Arbitration Commission of China Council for the Promotion of International Trade" for Arbitration.

12   Force Majeure: In case of force Majeure, the Seller shall not be held responsible for late delivery or non-delivery of the goods but shall notify the Buyer by fax. If so requested by the buyer, a certificate issued by the China Council for the promotion of International Trade or any competent authorities.

13   Miscellaneous:
   a)   The tapered edge shall be 0.6-1.9mm in depth and 30-80mm in width.
   b)   The Ex Dock Duty & THC/Wharfage paid price is based on the offer and commitment from Star Shipping as requested by the Buyers.
   c)   If the import documents/formalities are not ready for unloading the goods when the vessel arrival at destination, the buyer will pay USD 20000 per day to the seller.

14   Any amendment, should be agreed by both sides, and shown on the original copy of sales contract.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER          BNBMPLC0007443

02/23/2006  09:39   626-339-2500              BAOAN                    PAGE  05
         23/02 '06 THU 21:03 FAX 82812667                                            @005

Sellers:

BEIJING NEW BUILDING MATERIALS PUBLIC LIMITED COMPANY.

*For and on behalf of*
北新集团建材股份有限公司
BEIJING NEW BUILDING MATERIALS PUBLIC LIMITED COMPANY

*Authorized Signature*

Buyers: *Jim Moore, Controller  2-24-2006*

GREAT WESTERN BUILDING MATERIALS

*02/-24/06*

BAOAN INTERNATIONAL INVESTMENT CO.,LTD.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    BNBMPLC0007444

# CONTRACT

**THE SELLERS:**     **BEIJING NEW BUILDING MATERIALS CO., LTD.**
**NO. 16 WEST ROAD JIANCAICHENG XISANQI**
**HAIDIAN DISTRICT**
**BEIJING, CHINA 100096**
TEL: 86-10-8291-8788
FAX: 86-10-8291-2657
E-MAIL: bnbmusa@msn.com

**THE BUYERS:**     **WOOD NATION INC.**
**10740 PLANTATION BAY DRIVE**
**TAMPA, FLORIDA 33647**
TEL: 813-994-6499
FAX: 813-994-4497
E-MAIL: woodnation@verizon.net

**CONTRACT NUMBER:** WN6350

This contract is made by and between the Buyers and the Sellers, hereby the Buyers agree to buy and the Sellers agree to sell the under mentioned commodity according to the terms and conditions stipulated below:

1.     **COMMODITY:** Gypsum Drywall (hereafter referred to as the "Product").

2.     **COUNTRY OF ORIGIN AND MANUFACTURERS:** Peoples Republic of China

3.     **SIZE SPECIFICATIONS:**

   a)     The 'Regular' grade portion will be ½" in thickness, 4' in width and 12' in length.

   b)     The 'Ceiling' grade portion will be ½" in thickness, 4' in width and 12' in length.

   c)     The 'Type X' grade portion will be 5/8" in thickness, 4' in width and 12' in length.

4.     **GRADE STANDARDS:**

   a)     The ½" Regular and ½" Ceiling products shall be produced to American Society for Testing and Materials ("ASTM") C 1396-04 Standards. Each piece shall have 'ASTM C 1396-04' stamped on the back of each piece.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

BNBMPLC0007445

    b)   The 5/8" Type X will be UL certified and each piece will be marked accordingly.

5.    **PACKING:**

    a)   To be packed in a manner suitable for long distance ocean transportation, with appropriate protection against moisture, change of climate, and handling. The Sellers shall be liable for any damage of the commodity and expenses incurred on account of improper packing or improper protective measures taken by the Sellers in regard to the packing.

    b)   The ½" 4'X12' will consist of two 34 piece units strapped together into one 68 piece lift.

    c)   The 5/8" 4'X12' will consist of two 26 piece units strapped together into one 52 piece lift.

    d)   The Sellers shall mark each lift with a stenciled label that states the item, lift number, piece count, weight and measurement. International symbols for protection from moisture, handling with care and this side up will also be stenciled on each unit as will a diagram showing how to load and unload with slings.

6.    **SHIPPING MARK:** WN34

7.    **TIME OF SHIPMENT:** December 31, 2005 or sooner, as evidenced by on-board bills of lading.

8.    **QUANTITIES:**

    a)   122,808 pieces of ½" 4'X12' Regular +/- 2%

    b)   67,592 pieces of ½" 4'X12' Ceiling +/- 2%

    c)   49,972 pieces of 5/8" 4'X12' Type X +/- 2%

9.    **PRICE:**

    a)   USD $8.20 per piece for ½" 4'X12' Regular, CFR EX SHIP'S HOLD, PORT MANATEE, FLORIDA, USA

    b)   USD $8.23 per piece for ½" 4'X12' Ceiling, CFR EX SHIP'S HOLD, PORT MANATEE, FLORIDA, USA

    c)   USD $9.55 per piece for 5/8" 4'X12' Type X, CFR EX SHIP'S HOLD, PORT MANATEE, FLORIDA, USA

10.    **TOTAL VALUE:** Two million, forty thousand, five hundred and forty one dollars and no cents (USD$2,040,541) +/- 2%.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

Nov 16 05 07:37p        Wood Nation Inc            813 994 4497                p.4

11.    **PORT OF LOAD:** Tianjin, China

12.    **PORT OF DISCHARGE:** Port Manatee, Florida, USA

13.    **PAYMENT:** Within 7 days of contract signing, Buyers shall open an irrevocable Letter of Credit through "Bank of America, Trade Operations Office, USA" payable against Seller's draft drawn at sight on the Bank of America, Trade Operations Office, USA, accompanied by the commercial documents set out in paragraph 14. All bank charges at issuing bank are for the account of the applicant and all advising bank charges are for the account of the beneficiary. The L/C shall remain valid for negotiation freely at any bank until the 30th day after the aforesaid time of shipment.

14.    **DOCUMENTS:**

    a)    Full set (i.e. 3/3 originals) of clean on board ocean bills of lading marked "Freight Prepaid" made out to order blank endorsed notifying Buyer. The bills of lading shall include the statement "NO SOLID WOOD PACKING MATERIAL".

    b)    Signed invoice in 4 originals indicating contract number and shipping mark (in the case of more than one shipping mark, the invoice shall be issued separately), made out in details as per the relative contract.

    c)    Packing list in 4 originals, including lift count and piece count per lift. The packing list shall state "NO SOLID WOOD PACKING MATERIAL".

    d)    Certificate of Quality issued by Beijing New Building Materials Co.,Ltd. Certifying that the ½" Regular and the ½" Ceiling meets ASTM C 1396-04 standards, and that the 5/8" Type X is UL certified.

    e)    One original and two copies of the Certificate of Origin.

15.    **SHIPMENT:** December 31, 2005 or sooner.

16.    **SHIPPING ADVICE:** The Sellers shall, immediately upon the completion of the loading of the commodity, advise the Buyers by telex or fax of the contract no., commodity, quantity, trade term, invoiced value, gross weight, name of vessel and date of sailing etc.

17.    **DELIVERY OF DOCUMENTS:** The Seller shall, within 21 working days after shipment, deliver the original documents specified above directly to the Buyer's bank.

18.    **CLAIMS:** Within 30 days after the arrival of the commodity at destination, should the quality, specification, or quantity be found not in conformity with the stipulations of the contract, except those claims for which the insurance company or the carrier accept liability, the Buyers shall, on the strength of an inspection



CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

BNBMPLC0007447

certificate, have the right to claim for replacement with new commodity, or for compensation.

19.  **FORCE MAJEURE:** Should any of the following circumstances prevent either party from carrying out its obligations under the contract, namely: acts of civil or military authority; government acts, orders, or restrictions; earthquakes; or flood, the contract shall be extended for as long as the circumstances remain. In the event that these circumstances continue for more than 30 days, each party shall have the right to refuse to continue the performance of its obligations under the contract and, in such case; no party shall be entitled to indemnification from the other party for any loss it may sustain. In all cases, the party declaring force majeure is required to provide within 14 days acceptable documentation of the incident issued by the competent Government Authorities where the incident occurs as evidence thereof.

20.  **CARGO DAMAGE AT SEA:** Sellers shall be liable for the full value of any product damaged due to improper stowing. Buyers shall carry ALL RISK cargo insurance. In the event there is an insurance claim, both parties agree that the insurance deductible shall be paid by the Sellers.

21.  **BANKING CHARGES:** All the banking charges incurred by the Buyers shall be borne by the Buyers while all the banking charges incurred by the Sellers shall be borne by the Sellers.

22.  **GENERAL PROVISIONS:** This contract is subject to interpretation according INCOTERMS 2000. By signing this contract, previous correspondences and negotiations connected herewith shall be null and void. This contract comes into effect from signing date by fax; any amendment and additional clause to these conditions shall be valid only if made in written form and duly confirmed by both sides.

This contract shall come into effect immediately after each party has signed the contract (either by fax or original signature). It is the intent of both Buyers and Sellers to also sign four original copies; with each party holding two copies.

THE BUYERS:  WOOD NATION, INC.

BY: *Richard Hannan*                          DATE: *Nov. 16, 2005*

TITLE: *President*

THE SELLERS:  BEIJING NEW BUILDING MATERIALS CO., LTD.

BY: _____                          DATE: *NOV. 16, 2005*

TITLE: _____

For and on behalf of
北 新 建 材（集 团）有 限 公 司
BEIJING NEW BUILDING MATERIALS CO.,LTD.

................................................
*Authorized Signature(s)*

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

BNBMPLC0007448



# 代理出口协议书

日期：2005 年 11 月 16 日

编号：No.1

## 一、 缔约方：

1、 供货委托人（以下称甲方）： 北新集团建材股份有限公司

法定住所：北京市海淀区三里河路甲 11 号

邮政编码：

法定代表人：

电话：

传真：

开户银行：

帐号：

2. 出口商（以下称乙方）：北新建材（集团）有限公司

法定住所：北京市海淀区三里河路甲 11 号

邮政编码：100096

电 话：010-82918788

传 真：010-82912657

开户银行：

帐 号：

经双方友好协商，甲方委托乙方为其代理出口该批货物，现订协议如下：



## 二、 代理出口事项

1.货物名称：纸面石膏板；

2.规格和技术标准：同出口合同 WN6350；

3.数量：见出口合同 WN6350

4.价格：同出口合同，双方商议。

5.总价：USD$2040541.0

6.国外采购商（以下简称外商）：WOOD NATION INC

- 1 -

7.装船期：2005 年 12 月 10-20 日

## 三、 签约

1.甲乙双方之间的关系为代理人与被代理人之间的关系，乙方与外商之间的关系为甲方代理人与该外商之间的关系。该合同内所有条款(包括主要条款及附加条款)由甲方与外商自行确定，乙方只履行代理甲方对外签订合同，不参与该合同内任何条款的确定与履行。

2.出口合同项下的全部风险和责任由甲方自行独立承担。

3.乙方在收到外商的合同款后，按照银行当日的汇率将外币折合成人民币在 7 日内支付给甲方。

4. 乙方与外商签订的出口合同. WN6350 为本协议书不可分割的一部分。

## 四、 甲方责任

1. 负责与外商洽商和履行所有合同条款(包括主要条款及附加条款)，定好产品、规格、数量，并联系工厂组织货源。

2. 如果国家政策规定本协议第二条确定的货物在出口时，需要出口批文或出口许可证及相关的其他文件，甲方应向乙方提供其出口所必须的相应的出口批文或许可证及相关的其他文件，乙方应给予必要的协助。乙方对前述批文和文件不承担任何责任，包括但不限于，在合同已经签署，但甲方未获得前述文件的风险。

3. 负责租船运输等，承担海运费、报关费、出口货物商检费及熏蒸费、堆存费等出口过程中的相关费用。

4. 海运保险由外商负责，但甲方承担出险时保险公司免赔部分

5. 在货物出港后一个月内，甲方必须将生产厂家的增值税发票及出口退税缴税书(以乙方为抬头)提交乙方。如果甲方不能及时将这些单据给乙方，所有损失由甲方承担。

6. 甲方应承诺甲方进行的一切商业贸易行为是合法的，且向乙方提供的单据、 资料是真实的。如有违法、违章事件，由甲方负全部责任。

7. 由于产品质量不好，或外商信誉不好而产生的一切责任，经济损失都由甲方承担。



## 五、 乙方责任

1. 提供有效的核销单据，以乙方的名义对外出口。

2. 负责履行报关、发运、租船运输、商检等手续；

3. 尽早办理核销、退税手续。

-2-

## 六、 费用及代理费

出口过程中发生的一切费用由甲方承担。乙方按照 RMB40000.0(人民币肆万元整)向甲方收取出口手续费。

## 七、 违约责任

协议双方的任何一方违反本协议的约定，给守约方造成损失，违约方应赔偿守约方损失。

## 八、 争议解决

本协议项下的争议应首先通过友好协商解决，如果不能通过友好协商解决，该协议应提交北京市法院解决。

## 九、 协议生效及终止。

1. 本协议自甲、乙双方传真签字盖章之日起生效。

2. 本协议在买卖合同已履行完毕，经双方友好协商而终止。

3. 本协议一方或双方因不再具有中国法律规定的民事主体资格或具有其它资质及经营范围上的缺陷而终止，如因该等原因造成的本协议而终止，过错方须赔偿无过错方的损失。

甲方： (签章)



乙方: 北新建材（集团）有限公司 (签章)





- 3 -

**Export Agency Agreement**

Date: November 16, 2005
Number: No.1

I. Parties

1. Authorizing Supplier Party (Party A): Beijing New Building Materials Public Limited Company
Address: No. 11 Sanlihe Road, Haidian District, Beijing, P. R. China
Postcode:
Legal Representative:
Telephone:
Fax:
Name of bank:
Account number:

2. Exporter (Party B): Beijing New Building Material (Group) Co., Ltd
Address: No. 11 Sanlihe Road, Haidian District, Beijing, P. R. China
Postcode: 100096
Telephone: 010-82918788
Fax: 010-82912657
Name of bank:
Account number:

This agreement is entered into by Party A and Party B through friendly consultations, Party A hereby authorizes Party B as export agency for exportation of such goods as follows:

II. Authorized exportation Items

1. Name of goods: paper faced gypsum boards;
2. Specification and technological standards: same as sales contract no. WN6350;
3. Quantity: see sales contract no. WN6350;
4. Price: same as sales contract and based on mutual agreement;
5. Total Value: US$ 2,040,541.0
6. Overseas Purchaser (Purchaser): WOOD NATION INC
7. Period of loading: December 10-20, 2005

III. Signing

1. The relationship between Party A and Party B is of principal and agency nature, the relationship between Party B and foreign party (Purchaser) is considered as the relationship between Agency of Party A and Purchaser. All terms in such agreement between Party B and Purchaser (including the main terms and additional terms) shall be determined between and by Party A and Purchaser; Party B merely signs agreements on

1

BNBMPLC0007452

behalf of Party A to other parties, but does not participate in confirmation and performance of any terms in such agreements.

2. Party A is solely and independently responsible for all risks and liabilities under export agreements.

3. After Party B receives payment from Purchaser, Party B shall convert the foreign currency payment into Renminbi using the exchange rate on the payment date, and make payments to Party A within 7 days.

4.  The export agreement - sales contract No. WN6350 signed between Party B and Purchaser - forms an inseparable part of this agreement.

IV. Party A's responsibilities

1. Party A is responsible for negotiating and performing all terms of the agreement together with Purchaser (which includes main terms and additional terms); and confirming the right product, its specification, its quantity, and contacting factories for supplying goods.

2. If the PRC national policies or regulations require goods exported under Clause II to retain export approval or license certificate and relevant other documents for exportation purposes; Party A shall supply to Party B all necessary export approval or license certificate and relevant other documents, and Party B shall assist Party A if required. Party B is not responsible for applying for any aforementioned official documents, including but not limited to risks associated with the situation where Party A has not obtained such documents but agreement with other parties has already been signed.

3. Party A is responsible for the chartering ship for transportation, Party A is liable for ocean freight, customs declaration fee, export commodity inspection fee, fumigation charge, stocking charge and other fees related to the exportation process.

4. Purchaser is responsible for the cargo insurance, however Party A shall be liable for the part to which the insurance company is free from compensation.

5. Party A must supply Party B with manufacturer's Value Added Taxed invoice and its export tax refund certificate (with Party B's title head) after one month of cargo departure. If Party A cannot supply Party B with the aforementioned invoices, Party A shall be held liable for all losses.

6. Party A shall guarantee that all business and trade activities performed by Party A are legal, and all relevant invoices and information provided to Party B are genuine. If an incident which is illegal or against regulations has occurred, Party A shall be held liable for all responsibilities.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    BNBMPLC0007453

7. Party A shall be liable for all economic losses and liabilities incurred as a result of bad product quality or Purchaser's bad reputation.

V. Party B's responsibilities

1. Party B shall supply valid verification documents, and to conduct exportation in the name of Party B.

2. Party B is responsible for the process of customs declaration, cargo dispatch, chartering transport and commodity inspection etc.

3. Party B shall finish the verification and tax refund process as soon as possible.

VI. Fees and agency fees

Party A shall be liable for all fees incurred during the exportation process. Party B shall receive payment(s) from Party A equal to RMB 40,000 as export processing cost.

VII. Breach

Any party who breaches terms of this agreement and caused losses to the non-breaching party shall pay compensation to the non-breaching party.

VIII. Dispute resolution

Disputes under this agreement shall be first resolved by friendly negotiations, if disputes cannot be resolved by friendly negotiations, such dispute shall be resolved in the Beijing courts.

IX. Effective date and termination date of the agreement

1. This agreement shall take effect as of it is duly signed and sealed by both parties by way of fax.

2. This agreement shall terminate at the end of performance of the Purchase agreement, and after friendly consultations by both parties.

3. If one party or both parties under this agreement loss(es) its objective civil action capability under the PRC law or suffer(s) deficiency in terms of its ability or operational scope, and caused termination of this agreement; the wrong-doing party shall pay compensation to the innocent party for its losses.

Party A: Beijing New Building Materials Public Limited Company
Sealed and signed

Party B: Beijing New Building Material (Group) Co., Ltd

3

Sealed and signed

4

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    BNBMPLC0007455

# TRIORIENT TRADING, INC.

TWO STAMFORD PLAZA, 281 TRESSER BLVD , SUITE 1505, STAMFORD, CT  06901-3264
PHONE: 203-325-1001   FAX: 203-325-1020
E-MAIL: RHYLAND@TRIORIENT.COM

PURCHASE CONFIRMATION NO. 50590 – Rev 1                DATE MAR 02, 2006

**AGREES TO SELL:**      **BEIJING NEW BUILDING MATERIALS PUBLIC**
**LIMITED COMPANY**
NO  16 WEST ROAD,
JIANCAICHENG, HAIDIAN DISTRICT,
BEIJING 100096, CHINA
**(THE SELLER)**

**AGREES TO BUY:**      **TRIORIENT TRADING INC.**
TWO STAMFORD PLAZA,
281 TRESSER BLVD , - SUITE 1505
STAMFORD, CT 06901
U.S.A.
**(THE BUYER)**

WE HEREBY CONFIRM OUR PURCHASE SUBJECT TO THE FOLLOWING TERMS AND
CONDITIONS BOTH PARTIES AGREE TO AND THAT ARE SET FORTH WITHIN:

**ORIGIN**          :    CHINA

**MATERIAL**        :    GYPSUM BOARD, TAPERED EDGE.
230,045 SHEETS 4' X 12' X ½"
ACCORDING TO SPECIFICATION STANDARDS
ASTM C1396-04

**CERTIFICATION**   :    MILL CERTIFICATE INDICATING THAT THE ½" GYPSUM
BOARDS WERE MANUFACTURED IN ACCORDANCE TO
SPECIFICATION STANDARDS ASTM C1396-04

**PACKING**         :    A. THE GYPSUM BOARDS MUST BE PROPERLY
PALLETIZED, WRAPPED AND SEALED TO PROTECT THEM
AGAINST DAMAGE IN SHIPMENT.
B. THAT THE BOARDS (PIECES) ARE PACKED 68 BOARDS
(PIECES) PER PALLET AND MUST BE WRAPPED WITH
REJECTED BOARDS ON EACH SIDE SO TO PROTECT
AGAINST DAMAGE. PALLETS MUST BE CONSTRUCTED SO
AS TO ALLOW FOR FORKLIFT LOADING/UNLOADING
C. CARGO MUST BE PRE-SLUNG USING NYLON STRAPS.
NYLON STRAPS AND NYLON WIRES MUST BE SECURED
TO THE SLINGS SO THAT AFTER EACH LAYER IS
UNLOADED IT IS POSSIBLE TO GRAB THE SLINGS FOR THE
NEXT LAYER.
D. EACH PALLET MUST BE ENCLOSED WITH A PLASTIC
CAP COVER FROM TOP AND DOWN TO FURTHER PROTECT

Page 1 of 5

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                          BNBMPLC0007456

# TRIORIENT TRADING, INC.

TWO STAMFORD PLAZA, 281 TRESSER BLVD., SUITE 1505, STAMFORD, CT 06901-3264
PHONE: 203-325-1001      FAX: 203-325-1020
E-MAIL: RHYLAND@TRIORIENT.COM

**PURCHASE CONFIRMATION NO. 50590 – Rev 1**             DATE MAR 02, 2006

---

AGAINST MOISTURE. EACH PALLET MUST BE MARKED
FOR SIZE/WIDTH/THICKNESS
E. THE GYPSUM BOARDS MUST HAVE END TAPE AND
HAVE PRINTING ON THE BACK OF EACH AND EVERY
SHEET SHOWING THAT THEY WERE MANUFACTURED IN
CHINA ACCORDING TO ASTM C1396-04.
F. THERE IS NO SOLID WOOD MATERIALS USED IN ANY OF
THE PACKAGING OF THIS CARGO

**MARKING**             :       TRIORIENT
PORT OF PALM BEACH, FL
P.O. 50590 / 40283
DESCRIPTION: GYPSUM BOARD
GROSS WEIGHT: KGS/LBS
NET WEIGHT: KGS/LBS
SIZE: WIDTH/LENGTH/THICKNESS IN INCHES
MADE IN CHINA ACCORDING TO ASTM C1396-04

**PURCHASE PRICE**  :       UNIT PRICE $5.50/SHEET FOB L/S/D TIANJIN PORT, CHINA

**PURCHASE EXT**      :       USD1,265,247.50 (+/- 10%) FOB L/S/D TIANJIN PORT, CHINA

**PAYMENT**              :       BY IRREVOCABLE LETTER OF CREDIT PAYABLE AT SIGHT
FOR 100% OF THE INVOICE VALUE.

**ISSUING BANK**       :       RZB FINANCE LLC, NEW YORK, NY

**ADVISING BANK**     :       BANK OF CHINA – HEAD OFFICE
1 FU XING MEN NEI AVE,
WEST CITY DISTRICT,
BEIJING, CHINA
SWIFTCODE: BKCHCNBJ

**REMARKS**              :       ALL BANKING CHARGES OTHER THAN THOSE OF THE
ISSUING BANK ARE FOR THE ACCOUNT OF THE SELLER

**DOCUMENTS REQUIRED:**

1.  COMMERCIAL INVOICE IN ORIGINAL AND 3 COPIES

2.  FULL SET CLEAN ON BOARD OCEAN BILLS OF LADING.
(CHARTER PARTY BILL OF LADING ACCEPTABLE.)

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                   BNBMPLC0007457



# TRIORIENT TRADING, INC.

TWO STAMFORD PLAZA, 281 TRESSER BLVD , SUITE 1505, STAMFORD, CT  06901-3264
PHONE: 203-325-1001     FAX: 203-325-1020
E-MAIL: RHYLAND@TRIORIENT.COM

PURCHASE CONFIRMATION NO. 50590 – Rev 1                          DATE MAR 02, 2006

3. CERTIFICATE OF ORIGIN.

4. MILL CERTIFICATE INDICATING THAT THE ½" GYPSUM BOARDS WERE MANUFACTURED IN ACCORDANCE TO SPECIFICATION STANDARDS ASTM C1396-04.

5. CERTIFICATE OF QUANTITY, QUALITY AND CONDITION ISSUED BY SOCIETE GENERALE DE SURVEILLENCE (SGS) AT LOADING PORT CONFIRMING THE COUNT, QUALITY, CONDITION AND PACKAGING ARE IN GOOD ORDER.

6. SIGNED STATEMENT ISSUED BY MANUFACTURER INDICATING THIS LETTER OF CREDIT NUMBER STATING AS FOLLOWS:
A. THE GYPSUM BOARDS SHIPPED ARE PROPERLY PALLETIZED, WRAPPED AND SEALED TO PROTECT THEM AGAINST DAMAGE IN SHIPMENT.
B. THAT THE BOARDS (PIECES) ARE PACKED 68 BOARDS (PIECES) PER PALLET AND ARE WRAPPED WITH REJECTED BOARDS ON EACH SIDE SO TO PROTECT AGAINST DAMAGE. PALLETS ARE CONSTRUCTED SO AS TO ALLOW FOR FORKLIFT LOADING/UNLOADING.
C. CARGO HAS BEEN PRE-SLUNG USING NYLON STRAPS. NYLON STRAPS AND NYLON WIRES HAVE BEEN SECURED TO THE SLINGS SO THAT AFTER EACH LAYER IS UNLOADED IT IS POSSIBLE TO GRAB THE SLINGS FOR THE NEXT LAYER.
D. EACH PALLET IS ENCLOSED WITH A PLASTIC CAP COVER FROM TOP AND DOWN TO FURTHER PROTECT AGAINST MOISTURE. EACH PALLET IS MARKED FOR SIZE/WIDTH/THICKNESS.
E. THE GYPSUM BOARDS HAVE END TAPE AND HAVE PRINTING ON THE BACK OF EACH AND EVERY SHEET SHOWING THAT THEY ARE MANUFACTURED IN CHINA ACCORDING TO ASTM C1396-04.
F. THERE IS NO SOLID WOOD MATERIALS USED IN ANY OF THE PACKAGING OF THIS CARGO.

7. CERTIFICATE OF WARRANTY ISSUED AND SIGNED BY THE MANUFACTURER CERTIFYING THAT THE GYPSUM BOARDS MANUFACTURED ARE WARENTED TO BE FREE FROM DEFECTS IN MATERIALS AND WORKMANSHIP.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                                      BNBMPLC0007458

# TRIORIENT TRADING, INC.

TWO STAMFORD PLAZA, 281 TRESSER BLVD , SUITE 1505, STAMFORD, CT  06901-3264
PHONE: 203-325-1001      FAX: 203-325-1020
E-MAIL: RHYLAND@TRIORIENT.COM

PURCHASE CONFIRMATION NO. 50590 – Rev 1                    DATE MAR 02, 2006

8. BENEFICIARY'S FAX ADVICE ADVISING FULL SHIPMENT
   DETAILS.
9. BENEFICIARY'S SIGNED CERTIFICATE CERTIFYING THAT
   ONE FULL SET OF NON-NEGOTIABLE COPIES OF
   REQUIRED DOCUMENTS HAVE BEEN SENT TO APPLICANT
   (AT THE ABOVE ADDRESS) VIA COURIER SERVICE. COPY
   OF COURIER RECEIPT IS REQUIRED FOR NEGOTIATION.

| | | |
|---|---|---|
| **SHIPMENT** | : | LAYCAN MARCH 20 - APRIL 5, 2006 |
| **INSURANCE** | : | COVERED BY BUYER |
| **LOAD PORT** | : | TIANJIN PORT, CHINA |
| **DISCHARGE PORT** | : | PORT OF PALM BEACH, FL, USA |
| **INSPECTION** | : | SOCIETE GENERALE DE SURVEILLANCE (SGS) AT LOAD PORT |
| **STEM CONFIRMATION** | : | PER BNBM FAX |
| **DEMURRAGE / DESPATCH** | : | AS PER C/P, DESPATCH HALF OF DEMURRAGE RATE FOR LAYTIME SAVINGS. DEMURRAGE/DESPATCH TO BE SETTLED WITHIN 60 DAYS OF B/L DATE |

**ARBITRATION     :**
ALL DISPUTES IN CONNECTION WITH THIS CONTRACT AND THE EXECUTION
THEREOF SHALL BE SETTLED BY AMICABLE NEGOTIATIONS AND FRIENDLY
DISCUSSIONS BETWEEN BOTH PATRIES. IN CASE NO SETTLEMENT CAN BE
REACHED, THE CASE UNDER DISPUTE SHALL BE DETERMINED BY ARBITRATION
IN INTERNATIONAL COMMERCIAL ARBITRATION COURT IN LONDON, ENGLAND
ACCORDING TO THE REGULATIONS OF THE ABOVE COURT EXCEPT WHEN THEY
CAN BE RESOLVED BY THE GENERAL COURT PROCEDURE. THE INTERNATIONAL
ARBITRATION COURT'S DECISION TO BE FINAL AND BINDING FOR BOTH PARTIES

**CLAIM          :**
THE BUYER HAS THE RIGHT TO SUBMIT A CLAIM FOR QUALITY / QUANTITY
WITHIN 45 (FORTY-FIVE) DAYS FROM THE DATE OF DISCHARGE AT FINAL
DESTINATION AND 90 (NINETY) DAYS FOR HIDDEN DEFECTS.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    BNBMPLC0007459

# TRIORIENT TRADING, INC.

TWO STAMFORD PLAZA, 281 TRESSER BLVD., SUITE 1505, STAMFORD, CT 06901-3264
PHONE: 203-325-1001      FAX: 203-325-1020
E-MAIL: RHYLAND@TRIORIENT.COM

PURCHASE CONFIRMATION NO. 50590 – Rev 1                     DATE MAR 02, 2006

LAW                :
THIS AGREEMENT SHALL BE CONSTRUED AND TAKE EFFECT AS AN AGREEMENT
MADE IN ACCORDANCE WITH THE LAWS OF ENGLAND AND SHALL BE DEEMED
TO INCORPORATE THE APPROPRIATE PROVISIONS OF THE CURRENT EDITION OF
INCOTERMS.

**ENTIRE AGREEMENT:**
THIS REVISION SUPERCEDES ANY PREVIOUSLY DATED PURCHASE
CONFIRMATION. NOTWITHSTANDING ANYTHING CONTAINED IN ANY OTHER
AGREEMENT TO THE CONTRARY, THIS AGREEMENT CONTAINS THE ENTIRE
AGREEMENT BETWEEN THE PARTIES. ANY OTHER AGREEMENT SIGNED IN
CONNECTION WITH THIS TRANSACTION IS HEREWITH CONSIDERED NULL AND
VOID.

SIGNATURE AND DELIVERY TERMS SHALL HAVE THE MEANING ASSIGNED TO
THEM PURSUANT TO THE INTERNATIONAL REGULATIONS "INCOTERMS 2000"
UNLESS OTHERWISE AGREED BY THE PARTIES.

ALL AMENDMENTS AND ADDENDA TO THIS CONTRACT SHALL BE LEGALLY
VALID ONLY IN WRITING AND SIGNED BY THE AUTHORISED REPRESENTATIVES
OF BOTH PARTIES.

ANY SIGNATURE TO THIS CONTRACT TRANSMITTED BY FACSIMILE SHALL BE
DEEMED AS AN ORIGINAL.

THE TERMS AND CONDITIONS OF THIS CONFIRMATION ARE AGREED AND
ACCEPTED:


BEIJING NEW BUILDING MATERIALS
PUBLIC LIMITED COMPANY                          DATE:
SELLER


TRIORIENT TRADING, INC.
BUYER                                           DATE: 3-2-06

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                          BNBMPLC0007460

# TRIORIENT TRADING, INC.

TWO STAMFORD PLAZA, 281 TRESSER BLVD., SUITE 1505, STAMFORD, CT 06901-3264
PHONE: 203-325-1001      FAX: 203-325-1020

**PURCHASE CONFIRMATION NO. 50614**                    DATE  APR 26, 2006

---

| | | |
|---|---|---|
| **AGREES TO SELL:** | **BEIJING NEW BUILDING MATERIALS PUBLIC LIMITED COMPANY** | |
| | NO. 16 WEST ROAD, | |
| | JIANCAICHENG, HAIDIAN DISTRICT, | |
| | BEIJING 100096, CHINA | **ORIGINAL** |
| | **(THE SELLER)** | |

**AGREES TO BUY:**   **TRIORIENT TRADING INC.**
TWO STAMFORD PLAZA,
281 TRESSER BLVD , - SUITE 1505
STAMFORD, CT 06901
U.S.A
**(THE BUYER)**

WE HEREBY CONFIRM OUR PURCHASE SUBJECT TO THE FOLLOWING TERMS AND
CONDITIONS BOTH PARTIES AGREE TO AND THAT ARE SET FORTH WITHIN:

**ORIGIN**            :    CHINA

**MATERIAL**         :    GYPSUM BOARD (DRYWALL)
                          200,000 SHEETS
                          1/2" REG. x 4' x 12', TAPERED EDGE.
                          ACCORDING TO SPECIFICATION STANDARDS
                          ASTM C1396-04.

**ORIGINAL**              GYPSUM BOARD (DRYWALL)
                          100,000 SHEETS
                          5/8" TYPE X FIRE CODE x 4' x 12', TAPERED EDGE
                          ACCORDING TO SPECIFICATION STANDARDS
                          ASTM C1396-04 AND UL APPROVED.

**CERTIFICATION**    :    MILL CERTIFICATE INDICATING THAT THE 1/2" GYPSUM
                          BOARDS WERE MANUFACTURED IN ACCORDANCE TO
                          SPECIFICATION STANDARDS ASTM C1396-04 AND THAT
                          THE 5/8" GYPSUM BOARDS WERE MANUFACTURED IN
                          ACCORDANCE TO SPECIFICATION STANDARDS ASTM
                          C1396-04 AND UL APPROVED.

**PACKING**          :    A. THE GYPSUM BOARDS MUST BE PROPERLY
                          PALLETIZED, WRAPPED AND SEALED TO PROTECT THEM
                          AGAINST DAMAGE IN SHIPMENT
                          B. THAT THE 1/2"BOARDS (PIECES) ARE PACKED 68
                          BOARDS (PIECES) PER PALLET AND THAT THE

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    BNBMPLC0007461

# TRIORIENT TRADING, INC.

**TWO STAMFORD PLAZA, 281 TRESSER BLVD., SUITE 1505, STAMFORD, CT  06901-3264**
**PHONE: 203-325-1001     FAX: 203-325-1020**

**PURCHASE CONFIRMATION NO. 50614**                          DATE  APR 26, 2006

ORIGINAL

5/8"BOARDS (PIECES) ARE PACKED 52 BOARDS (PIECES) PER PALLET AND MUST BE WRAPPED WITH REJECTED BOARDS ON EACH SIDE SO TO PROTECT AGAINST DAMAGE. PALLETS MUST BE CONSTRUCTED SO AS TO ALLOW FOR FORKLIFT LOADING/UNLOADING.
C. CARGO MUST BE PRE-SLUNG USING NYLON STRAPS NYLON STRAPS AND NYLON WIRES MUST BE SECURED TO THE SLINGS SO THAT AFTER EACH LAYER IS UNLOADED IT IS POSSIBLE TO GRAB THE SLINGS FOR THE NEXT LAYER
D EACH PALLET MUST BE ENCLOSED WITH A PLASTIC CAP COVER FROM TOP AND DOWN TO FURTHER PROTECT AGAINST MOISTURE. EACH PALLET MUST BE MARKED FOR SIZE/WIDTH/THICKNESS
E  THE 1/2" GYPSUM BOARDS MUST HAVE END TAPE AND HAVE PRINTING ON THE BACK OF EACH AND EVERY SHEET SHOWING THAT THEY WERE MANUFACTURED IN CHINA ACCORDING TO ASTM C1396-04 AND THE 5/8" GYPSUM BOARDS MUST HAVE END TAPE AND HAVE PRINTING ON THE BACK OF EACH AND EVERY SHEET SHOWING THAT THEY WERE MANUFACTURED IN CHINA ACCORDING TO ASTM C1396-04 AND ARE UL APPROVED
F  PLYWOOD SHEETING IS USED BETWEEN LAYERS OF DRYWALL AND ARE THE SELLERS RESPONSIBLTY AND AT THE SELLER'S EXPENSE. FURTHERMORE, NO OTHER SOLID WOOD MATERIALS ARE USED IN THE PACKAGING OF THIS CARGO

**MARKING FOR      :**
**1/2" MATERIAL**

TRIORIENT
PORT OF PORT EVERGLADES, FL
P O  50614 / 41221
DESCRIPTION: GYPSUM BOARD
GROSS WEIGHT: KGS/LBS
NET WEIGHT: KGS/LBS
SIZE: WIDTH/LENGTH/THICKNESS IN INCHES
MADE IN CHINA ACCORDING TO ASTM C1396-04

ORIGINAL

**MARKING FOR      :**
**5/8" MATERIAL**

TRIORIENT
PORT OF PORT EVERGLADES, FL
P O. 50614 / 41221
DESCRIPTION: GYPSUM BOARD
GROSS WEIGHT: KGS/LBS
NET WEIGHT: KGS/LBS
SIZE: WIDTH/LENGTH/THICKNESS IN INCHES

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                    BNBMPLC0007462

# TRIORIENT TRADING, INC.

**TWO STAMFORD PLAZA, 281 TRESSER BLVD., SUITE 1505, STAMFORD, CT 06901-3264**
**PHONE: 203-325-1001     FAX: 203-325-1020**

PURCHASE CONFIRMATION NO. 50614                     DATE  APR 26, 2006

ORIGINAL    MADE IN CHINA ACCORDING TO ASTM C1396-04 AND UL
            APPROVED

**PURCHASE PRICE** : 1/2" REG. x 4' x 12' @ $5.50/SHEET FOB L/S/D TIANJIN PORT,
CHINA WOOD SHEETING INCLUDED
5/8" TYPE X FIRE CODE x 4' x 12' @ $7.20/SHEET FOB L/S/D
TIANJIN PORT, CHINA WOOD SHEETING INCLUDED

**PURCHASE EXT** : USD1,820,000 00 (+/- 10%) FOB L/S/D TIANJIN PORT, CHINA
WOOD SHEETING INCLUDED

**PAYMENT** : BY IRREVOCABLE LETTER OF CREDIT PAYABLE AT SIGHT
FOR 100% OF THE INVOICE VALUE

**ISSUING BANK** : RZB FINANCE LLC, NEW YORK, NY

**ADVISING BANK** : BANK OF CHINA – HEAD OFFICE
1 FU XING MEN NEI AVE ,     ORIGINAL
WEST CITY DISTRICT,
BEIJING, CHINA
SWIFT CODE: BKCHCNBJ

**REMARKS** : ALL BANKING CHARGES OTHER THAN THOSE OF THE
ISSUING BANK ARE FOR THE ACCOUNT OF THE SELLER

**DOCUMENTS REQUIRED:**

1. COMMERCIAL INVOICE IN ORIGINAL AND 3 COPIES

2. FULL SET CLEAN ON BOARD OCEAN BILLS OF LADING.
(CHARTER PARTY BILL OF LADING ACCEPTABLE.)

3. CERTIFICATE OF ORIGIN.

ORIGINAL   4. MILL CERTIFICATE INDICATING THAT THE 1/2" GYPSUM
BOARDS WERE MANUFACTURED IN ACCORDANCE TO
SPECIFICATION STANDARDS ASTM C1396-04 AND THAT
THE 5/8" GYPSUM BOARDS WERE MANUFACTURED IN
ACCORDANCE TO SPECIFICATION STANDARDS ASTM
C1396-04 AND UL APPROVED.

5. CERTIFICATE OF QUANTITY, QUALITY AND CONDITION
ISSUED BY SOCIETE GENERALE DE SURVEILLENCE (SGS)

Page 3 of 6



CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                          BNBMPLC0007463

# TRIORIENT TRADING, INC.

TWO STAMFORD PLAZA, 281 TRESSER BLVD., SUITE 1505, STAMFORD, CT 06901-3264
PHONE: 203-325-1001     FAX: 203-325-1020

PURCHASE CONFIRMATION NO. 50614                     DATE APR 26, 2006

AT LOADING PORT CONFIRMING THE COUNT, QUALITY, CONDITION AND PACKAGING ARE IN GOOD ORDER.

6.  PACKING/WEIGHT LIST ISSUED BY MANUFACTURER INDICATING THIS LETTER OF CREDIT NUMBER CERTIFYING THE FOLLOWING:
A. THE GYPSUM BOARDS SHIPPED ARE PROPERLY PALLETIZED, WRAPPED AND SEALED TO PROTECT THEM AGAINST DAMAGE IN SHIPMENT.
B. THAT THE 1/2" BOARDS (PIECES) ARE PACKED 68 BOARDS (PIECES) PER PALLET AND THAT THE 5/8" BOARDS (PIECES) ARE PACKED 52 BOARDS (PIECES) PER PALLET AND ARE WRAPPED WITH REJECTED BOARDS ON EACH SIDE SO TO PROTECT AGAINST DAMAGE. PALLETS ARE CONSTRUCTED SO AS TO ALLOW FOR FORKLIFT LOADING/UNLOADING.
C. CARGO HAS BEEN PRE-SLUNG USING NYLON STRAPS. NYLON STRAPS AND NYLON WIRES HAVE BEEN SECURED TO THE SLINGS SO THAT AFTER EACH LAYER IS UNLOADED IT IS POSSIBLE TO GRAB THE SLINGS FOR THE NEXT LAYER.
D. EACH PALLET IS ENCLOSED WITH A PLASTIC CAP COVER FROM TOP AND DOWN TO FURTHER PROTECT AGAINST MOISTURE. EACH PALLET IS MARKED FOR SIZE/WIDTH/THICKNESS.
E. THE 1/2" GYPSUM BOARDS HAVE END TAPE AND HAVE PRINTING ON THE BACK OF EACH AND EVERY SHEET SHOWING THAT THEY WERE MANUFACTURED IN CHINA ACCORDING TO ASTM C1396-04 AND THE 5/8" GYPSUM BOARDS HAVE END TAPE AND HAVE PRINTING ON THE BACK OF EACH AND EVERY SHEET SHOWING THAT THEY WERE MANUFACTURED IN CHINA ACCORDING TO ASTM C1396-04 AND ARE UL APPROVED.
F. PLYWOOD SHEETING IS USED BETWEEN LAYERS OF DRYWALL AND ARE THE SELLERS RESPONSIBILTY AND AT THE SELLER'S EXPENSE. FURTHERMORE, NO OTHER SOLID WOOD MATERIALS ARE USED IN THE PACKAGING OF THIS CARGO.

7.  CERTIFICATE OF WARRANTY ISSUED AND SIGNED BY THE MANUFACTURER CERTIFYING THAT THE GYPSUM BOARDS MANUFACTURED ARE WARENTED TO BE FREE FROM DEFECTS IN MATERIALS AND WORKMANSHIP.

ORIGINAL

ORIGINAL

Page 4 of 6

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                    BNBMPLC0007464

# TRIORIENT TRADING, INC.

TWO STAMFORD PLAZA, 281 TRESSER BLVD , SUITE 1505, STAMFORD, CT  06901-3264
PHONE: 203-325-1001     FAX: 203-325-1020

PURCHASE CONFIRMATION NO. 50614                    DATE  APR 26, 2006

8.   BENEFICIARY'S FAX ADVICE ADVISING FULL SHIPMENT
     DETAILS.
9.   BENEFICIARY'S SIGNED CERTIFICATE CERTIFYING THAT
     ONE FULL SET OF NON-NEGOTIABLE COPIES OF
     REQUIRED DOCUMENTS HAVE BEEN SENT TO APPLICANT
     (AT THE ABOVE ADDRESS) VIA COURIER SERVICE. COPY
     OF COURIER RECEIPT IS REQUIRED FOR NEGOTIATION.

ORIGINAL

| | | |
|---|---|---|
| **SHIPMENT** | : | M/V SAGA ADVENTURE: LAYCAN MAY 25 - JUNE 10, 2006 |
| **INSURANCE** | : | COVERED BY BUYER |
| **LOAD PORT** | : | TIANJIN PORT, CHINA |
| **DISCHARGE PORT** | : | PORT EVERGLADES, FL, USA |
| **INSPECTION** | : | SOCIETE GENERALE DE SURVEILLANCE (SGS) AT LOAD PORT |
| **STEM CONFIRMATION** | : | PER BNBM FAX |
| **DEMURRAGE / DESPATCH** | : | AS PER C/P, DESPATCH HALF OF DEMURRAGE RATE FOR LAYTIME SAVINGS. DEMURRAGE/DESPATCH TO BE SETTLED WITHIN 60 DAYS OF B/L DATE |

ORIGINAL

**ARBITRATION     :**
ALL DISPUTES IN CONNECTION WITH THIS CONTRACT AND THE EXECUTION
THEREOF SHALL BE SETTLED BY AMICABLE NEGOTIATIONS AND FRIENDLY
DISCUSSIONS BETWEEN BOTH PATRIES. IN CASE NO SETTLEMENT CAN BE
REACHED, THE CASE UNDER DISPUTE SHALL BE DETERMINED BY ARBITRATION
IN INTERNATIONAL COMMERCIAL ARBITRATION COURT IN LONDON, ENGLAND
ACCORDING TO THE REGULATIONS OF THE ABOVE COURT EXCEPT WHEN THEY
CAN BE RESOLVED BY THE GENERAL COURT PROCEDURE. THE INTERNATIONAL
ARBITRATION COURT'S DECISION TO BE FINAL AND BINDING FOR BOTH PARTIES.

**CLAIM     :**
THE BUYER HAS THE RIGHT TO SUBMIT A CLAIM FOR  QUALITY / QUANTITY
WITHIN 45 (FORTY-FIVE) DAYS FROM THE DATE OF DISCHARGE AT FINAL
DESTINATION AND 90 (NINETY) DAYS FOR HIDDEN DEFECTS

**LAW     :**

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    BNBMPLC0007465

# TRIORIENT TRADING, INC.

TWO STAMFORD PLAZA, 281 TRESSER BLVD., SUITE 1505, STAMFORD, CT 06901-3264
PHONE: 203-325-1001     FAX: 203-325-1020

**PURCHASE CONFIRMATION NO. 50614**                    DATE  APR 26, 2006

---

THIS AGREEMENT SHALL BE CONSTRUED AND TAKE EFFECT AS AN AGREEMENT
MADE IN ACCORDANCE WITH THE LAWS OF ENGLAND AND SHALL BE DEEMED
TO INCORPORATE THE APPROPRIATE PROVISIONS OF THE CURRENT EDITION OF
INCOTERMS.                    ORIGINAL

**ENTIRE AGREEMENT:**
THIS REVISION SUPERCEDES ANY PREVIOUSLY DATED PURCHASE
CONFIRMATION. NOTWITHSTANDING ANYTHING CONTAINED IN ANY OTHER
AGREEMENT TO THE CONTRARY, THIS AGREEMENT CONTAINS THE ENTIRE
AGREEMENT BETWEEN THE PARTIES. ANY OTHER AGREEMENT SIGNED IN
CONNECTION WITH THIS TRANSACTION IS HEREWITH CONSIDERED NULL AND
VOID.

SIGNATURE AND DELIVERY TERMS SHALL HAVE THE MEANING ASSIGNED TO
THEM PURSUANT TO THE INTERNATIONAL REGULATIONS "INCOTERMS 2000"
UNLESS OTHERWISE AGREED BY THE PARTIES.

ALL AMENDMENTS AND ADDENDA TO THIS CONTRACT SHALL BE LEGALLY
VALID ONLY IN WRITING AND SIGNED BY THE AUTHORISED REPRESENTATIVES
OF BOTH PARTIES

ANY SIGNATURE TO THIS CONTRACT TRANSMITTED BY FACSIMILE SHALL BE
DEEMED AS AN ORIGINAL.

THE TERMS AND CONDITIONS OF THIS CONFIRMATION ARE AGREED AND
ACCEPTED:

---

**BEIJING NEW BUILDING MATERIALS
PUBLIC LIMITED COMPANY
SELLER**                                        DATE:

---

**TRIORIENT TRADING, INC.
BUYER**                                        DATE: 4/26/06

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    BNBMPLC0007466

# Purchase/Supply Agreement

Place of Signature:Beijing, China

This Purchasing and Supplying Agreement (hereinafter referred to as the "Agreement") is entered into by and between Davis Construction Supply, LLC, a Florida corporation limited liability company having an office located at 20725 SW 46th Ave, Newberry, Florida 32669 ("Davis") and Beijing New Building Materials Public Limited Company, a P.R.C company which is located at No16 West Road Jiancaicheng Xisanqi Haidian District, Beijing 100096 China (BNBM PLC).

## RECITALS

A. Davis is a real estate development distribution company that utilizes gypsum board products in connection with its business activities.

B. BNBM PLC is in the business of manufacturing gypsum products and other products.

C. Davis desires to purchase gypsum board manufactured by BNBM PLC according to Davis' product specifications and in accordance with applicable ASTM and UL Standards, and BNBM PLC is willing to manufacture and sell those products according to the production capacity of BNBM PLC, subject to the terms and conditions set forth in this Agreement.

Now therefore, in consideration of the mutual covenants and promises contained herein, the receipt and sufficiency of which is hereby acknowledged, the parties, intending to be legally bound, agree as follows:

## 1. EFFECTIVE DATE AND TERM

This Agreement is effective as of the date of signature (hereinafter referred to as the "Effective Date"). The term of this Agreement shall be from the Effective Date until December 31, 2006 (hereinafter referred to as the "Term"). Ninety (90) days prior to the expiration of the Term, the parties shall meet and negotiate to sign a new agreement in good faith for the Agreement's renewal.

## 2. MANUFACTURING & PURCHASING

Manufacturing & Purchasing Requirements: Subject to the terms and conditions of this Agreement, BNBM PLC hereby agrees to manufacture and sell to Davis, all of Davis' requirements of gypsum board ("Products") are according to the production capacity during the Term of this Agreement.

Initial _____

Initial _____

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

BNBMPLC0007467

**2.1 Product Specifications:** All gypsum board products shall be designed and manufactured in full compliance and in strict accordance with ASTM 1396-04, ASTM 1264-05 and UL Standards.

**2.2. UL Approval:** BNBM PLC currently produces 5/8" Type X gypsum board with UL certification under the name of Beijing New Building Materials Co. Ltd (hereinafter referred to as " BNBM Co. Ltd"). BNBM PLC will transfer the UL certificate from BNBM Co. Ltd to BNBM PLC soon. After signing this agreement, BNBM PLC will immediately prepare and submit the application for UL Certificates under BNBM PLC's name for other products (5/8" Type C gypsum board, and 5/8" Type X-Moisture Resistant gypsum board) that Davis will purchase. Davis will assist the application for UL Certificates, and the costs will be paid by Davis. If the total contract amount purchased by Davis from March 15, 2006 through December 31, 2006 reaches or exceeds three million pieces of gypsum boards, the UL Certification costs paid by Davis will be reimbursed to Davis by BNBM PLC within 10 days.

**2.3 Product Type and Quantities:** The type and quantity of the Products purchased by Davis from BNBM PLC will be as follows:
  5/8" Type X gypsum board, 5/8" Type C gypsum board, 1/2" gypsum board, and 5/8" Type X-Moisture Resistant gypsum board All gypsum wall board shall be 4' by 12'. The purchasing ratio of the above four types are respectively as follows: 70%, 15%, 10%, and 5%.

Any changes by Davis to the types and purchasing ratio of the Products shall be provided to BNBM PLC in written form, and any additional cost caused by the changes will be solely borne by Davis. Due to the production and transportation situation, The Product type quantities and ratios of each and every order may be adjusted accordingly by BNBM PLC, provided that Davis shall be informed of and shall confirm Davis' acceptance of the adjusted percentages within ten (10) days after placing a purchase order.

**2.4. Packaging and Labeling.**
**2.4.1** BNBM PLC shall package and label all Products suitable for long distance sea shipment. All Products shall be stamped with the appropriate UL certification and the correct board designation (i.e.5/8" Type X gypsum board, 5/8" Type C gypsum board, or 5/8" Type X- Moisture Resistant gypsum board or ½" gypsum board).

**2.4.2** BNBM PLC will sell the products under its brand. On the end tapes of all products will be printed: Produced by BNBM PLC and distributed by Davis in USA.

**2.5** Notice of Delay or Defects. If it appears that BNBM PLC will not be able to meet Davis' requirements or BNBM PLC learns that any Product has not been manufactured in accordance with the specifications, BNBM PLC will immediately notify Davis thereof,

Initial: _SMD_                                    Initial: _____

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    BNBMPLC0007468

including the nature of the cause for delay, defect, or complaint, and any affected time schedule. Failure to notify Davis timely will be deemed a default under this Agreement.

## 3. PRICING AND PAYMENTS

### 3.1 Pricing

RMB 54.74 per sheet for 5/8"Type X gypsum board of 5/8".

RMB 42.67 per sheet for1/2"gypsum board

5/8" Type C gypsum board ( the price will be negotiated and confirmed by both parties in written form)

5/8" Type X Moisture Resistant gypsum board. (the price will be negotiated and confirmed by both parties in written form)

The price above is based on FOB under tackle China Port. These prices shall remain in effect through December 31, 2006. The sea freight and insurance fee etc. will be at Davis' expense. Partial shipments are allowed with notification to Davis fifteen (15) days prior to the schedule ship date for the order, but all the costs incurred by multi-shipment will   be at Davis's expense. In no instance shall Davis be required to accept a shipment of less than 150,000 boards. Both parties agree that, the purchase price of Davis' first purchasing of 200,000 boards of 5/8" Type X gypsum board ordered on November 18, 2005 is USD$12.0, including shipping costs and insurance during shipment. After signing this Agreement, the price for all future orders will be based on FOB under tackle China port.

### 3.2 Exchange Rate.

**3.2.1** The price is quoted on RMB. For the term of this agreement, any conversions will be made at the rate published by Bank of China on the day that BNBM PLC confirms DAVIS' purchasing order. (Order Day)

**3.2.2** If the exchange rate published by Bank of China on the day that the payments have been placed into BNBM PLC's account (Payment Day) increases more than 2% over the exchange rate on the Order Day and a loss occurs   to BNBM PLC, the loss over 2% should be at DAVIS' expense. If the difference of exchange rate between the payment date and the order date fluctuates within 2%, the expense will be at BNBM PLC's expense.

**3.3 Method of payment.** Payments for Products ordered under this Agreement shall be by irrevocable letter of credit at sight (sight draft). Davis will establish an irrevocable letter of credit at sight (sight draft) from a major United States bank in terms of partial shipment allowable, a sum in the amount of two million five hundred fifty thousand United States Dollars ($2,550,000.00).

Initial: _____ -          Initial: _____

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

BNBMPLC0007469

**3.4** If the manufacturing and packaging cost to BNBM PLC increases because of performing ASTM 1396-04, ASTM 1264-05, the cost will be at Davis' expense.

## 4. SHIPMENT DELIVERY & ACCEPTANCE

Davis shall place orders with BNBM PLC for Products by notifying BNBM PLC in writing in the form of a purchase order (hereinafter referred to as "Purchase Order"). Davis may submit such Purchase Orders via facsimile, overnight delivery, or electronic mail, or any other means as may be agreed upon between the parties from time to time. Each Purchase Order shall set forth the specific requirements of the Products including types, specifications, quantities, and total amount. The date for delivery of each shipment shall be negotiated. If there is adjustment according to section 2.3, The Products, specifications, quantities, and the time of shipment of every purchasing Order should be confirmed in writing to Davis by BNBM PLC.

## 5. WARRANTY

**5.1** All Products delivered to Davis from BNBM PLC shall be manufactured in accordance with all applicable ASTM1396-04, ASTM1264-05 and UL standards, but BNBM PLC shall have no responsibility or obligation to Davis or its customers' under warranty claims with respect to products that have been subjected to abuse, misuse, improper handling, alteration, or neglect.

**5.2** Davis will confirm the requirements for the packing and labeling before the production. Any accident material defects caused by the improper packaging or labeling by BNBM PLC will be the responsibility of BNBM PLC.

**5.3** BNBM PLC shall be responsible for any lawsuits and liabilities arising from a failure of the Products to meet the referenced ASTM and UL Standards.

**5.4 Acceptance:** Within sixty (60) days after arrival of the Product at the destination port, if the specifications of the Products do not confirm with this Agreement, Both parties will choose an independent inspector together to issue an inspection certificate. And Davis shall have the right to demand replacement or compensation from BNBM PLC.

## 6. EXCLUSIVE DISTRIBUTION

**6.1** Davis guarantees the total amount of orders for the year 2006 will be no less than four million five hundred thousand (4,500,000) pieces of gypsum board. In March, April and May,   Davis will purchase no less than 150,000 pieces per month. After BNBM PLC

Initial: _____   Initial: _____

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                    BNBMPLC0007470

obtains UL certifications   for the other 2   products, Davis will purchase over 400,000 pieces per month. After Davis has purchased the 150,000 boards per month for three months, UL certifications have been received, and payment of the deposit per provision 6.3, Davis will become the authorized exclusive distributor for the USA and Caribbean region.

**6.1.1** Although Davis agrees to purchase over 400,000 boards per month, BNBM PLC agrees to store in China free of charge, after receipt of the payment, a maximum of 100,000 boards that Davis is not ready to receive for a maximum of two months.

**6.2 Exceptions:**
**6.2.1** The region for Davis as the exclusive distributor shall consist of: the United States of America and the Caribbean region. The Caribbean region shall include only Puerto Rico, Virgin Island, Dominican Republic, and Haiti.

**6.2.2** From May 15, 2006 through the end of the Term of the contract, once Davis becomes the authorized exclusive distributor for BNBM PLC in the USA, for UL certified gypsum products only, other products of BNBM PLC are not included in this agreement.

**6.2.3** Retail distributors such as Home Depot, Lowe's, etc could buy any other products from BNBM PLC, but could not buy UL certified gypsum products from BNBM PLC.

**6.3** For obtaining the exclusive distributorship, Davis shall pay USD $1 million to BNBM PLC as a security deposit, which shall be paid within 10 days of receipt of UL certification for both products. If before December 31, 2006: the total purchase amount is no more than 3,000,000 pieces, the security deposit will not be returned; if the total purchase amount is between 3,000,000 and 4,000,000 pieces, USD$500,000 of the security deposit will not be returned; if the total purchase amount is between 4,000,000 and 4,500,000 pieces, USD$300,000 of the security deposit will not be returned. If more than 4,500,000 pieces are purchased, all of the deposit money will be returned within 10 days of meeting the above goals. This deposit is to guarantee that Davis will order a certain quantity of material and shall not be considered damages for a material breach for any reason. If the UL certifications are not received by May 15, the quantity required by BNBM PLC will be reduced by 400,000 pieces.
**6.4**   Davis's monthly Purchase Order commitment is contingent upon the prior month's Purchase Order being manufactured and delivered to port for shipment.   Further, BNBM PLC's failure to meet confirmed orders by both parties is not cause for BNBM PLC to deny an exclusive distributorship to Davis.
**7. TERMINATION**
**7.1 Termination.**
**7.1.1** Bankruptcy. This Agreement shall terminate automatically if either party becomes bankrupt or insolvent, whether by voluntary act of such party or otherwise.

Initial: _____                    Initial: _____

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    BNBMPLC0007471

### 7.1.2 Termination by BNBM PLC.

BNBM PLC shall have the right to terminate this Agreement in the event Davis materially breaches or defaults on any material obligation under this Agreement; provided, however, that BNBM PLC must provide written notice of material default or breach and thirty (30) days after receipt of such notice by Davis the default or breach remains uncured. BNBM PLC shall have the right to terminate this Agreement upon thirty (30) days written notice to Davis in the event Davis breaches or defaults on any material obligation under this Agreement; provided, however, Davis shall have thirty (30) days from its receipt of such notice to solve the problem.

### 7.1.3. Termination by Davis.

Davis shall have the right to terminate this Agreement in the event BNBM PLC materially breaches or defaults on any material obligation under this Agreement; provided, however, that Davis must provide written notice of material default or breach and thirty (30) days after receipt of such notice by BNBM PLC the default or breach remains uncured. DAVIS shall have the right to terminate this Agreement upon thirty (30) days written notice to BNBM PLC in the event BNBM PLC breaches or defaults on any material obligation under this Agreement; provided, however, BNBM PLC shall have thirty (30) days from its receipt of such notice to solve the problem.

**7.1.4** All damages arising out of a material breach and defaults of this agreement are confined to direct damages.

**7.2** If the United States local gypsum board manufacturers cut their Products prices sharply, which will influence Davis' price advantage, Davis has the right to inform BNBM PLC and terminate this Agreement with  written evidence and 30 days notice in advance. After which, Davis has no obligation to go on purchasing Products from BNBM PLC. However, Davis has the responsibility to pay for the orders already confirmed in writing by BNBM PLC.  Termination of this Agreement by Davis will also terminate the exclusive distributorship and per provision 6.3 the deposit will be released to BNBM PLC. Equally, BNBM PLC can also terminate the contract if there are big changes in domestic market and economic conditions with which BNBM PLC can not sustain such prices. However, if BNBM PLC terminates this agreement the deposit shall be returned to Davis according to provision 6.3.

**7.3** If UL certifications are not received until June 15, 2006, the total quantity required per 6.3 shall be decreased by 400,000 pieces. If UL certifications are not received by June 15, 2006, Davis shall have the right to terminate this Agreement in written form and shall have no further obligation to order Products from BNBM PLC.

Initial: _____          Initial: _____

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                    BNBMPLC0007472

**7.4** Upon termination of the exclusive distributorship per this Agreement, BNBM PLC has the right to sell all its products to any customer in the United States.

## 8. ASSIGNMENT

This agreement is personal to each of the parties and shall not be assigned without the express prior written consent of the other party, this consent shall not be unreasonably withheld. This agreement contemplates the expectation by both parties that Davis and BNBM PLC will remain in business throughout the Term of this Agreement. Nevertheless, each party is free to discontinue its business at any time by bona fide liquidation, sale or other disposition, either by sale of substantially all of the assets, the sale of all its corporate stock, or its merger or reorganization. Any attempted assignment in violation of this section shall be void and of no force or effect.

## 9. GENERAL

**9.1 No benefit to others.** The representations, warranties, covenants and agreements contained in this agreement are for the sole benefit of the parties hereto and their heirs, executors, administrators, legal representatives, successors and assigns and they shall not be construed as conferring any rights to any other persons.

**9.2 Relationship of Parties:** The relationship of BNBM PLC to Davis is that of an independent manufacturer and neither manufacturer BNBM PLC nor its agents or employees shall be considered employees of Davis. This agreement does not constitute and shall not be construed as authority for either party to act for the other partying in any capacity, except as provided herein.

**9.3 No rights in trademarks:**
**9.3.1** BNBM PLC acknowledges and agrees that no license or other grant to the use of any of Davis' name and/or trademarks contained in the labeling are granted under this Agreement except as required for the preformance of this Agreement. Neither during or after the termination of this Agreement shall BNBM PLC assert any claim to the name, trademarks or such goodwill or contest or oppose their validity. BNBM PLC shall not take any action that could be detrimental to the goodwill associated with Davis' name and trademarks.
**9.3.2** Davis acknowledges and agrees that no license or other grant to the use of any of BNBM's name and/or trademarks contained in the labeling are granted under this Agreement except as required for the performance of this Agreement. Neither during or after the termination of this Agreement shall Davis assert any claim to the name, trademarks or such goodwill or contest or oppose their validity. Davis shall not take any

Initial: _____   Initial: _____

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    BNBMPLC0007473

action that could be detrimental to the goodwill associated with BNBM's name and trademarks.

**9.4 Integration.** This Agreement constitutes the entire and only agreement between the parties and all prior negotiations, representations, agreements, and understandings are superseded hereby except for the Sales Contract previously agreed to on November 18, 2005 which shall remain in full force and effect. No agreements altering or supplementing the terms hereof may be made except by a written documents, bills of lading, purchase orders, or other similar documents that are materially different from these terms and conditions shall be binding upon either party unless evidenced in writing signed by a duly authorized officer of each party. No terms or provisions in any subsequent shipping documents, bills of lading, purchase orders, or other similar documents that are materially different from these terms and conditions shall be binding upon either party unless evidenced in writing by a duly authorized officer of each party.    Such terms or provisions not in compliance with this Section shall be of no force or effect.

**9.5 Notices.** Any notice required by this Agreement must be given by facsimile transmission confirmed by personal delivery, by overnight courier, or by prepaid, first class, certified mail, return receipt requested, addressed as follows:


Davis Construction Supply, LLC          Beijing New Building Materials Public
                                              Limited Company
Attention: Stefan M. Davis               Attention: Wang Bing
20725 SW 46TH Avenue                 No.16 West Road Jiancaicheng Xisanqi, Haidian
Newberry, Florida 32669                District BEIJING 100096 CHINA
Telephone:   ( 352)472-7773            Telephone: 0086-10-82918788
Facsimile:   ( 352)472-5969             Facsimile: 0086-10-82912657
Email:stefand@Davisandsons.com      Email: wb@bnbm.com.cn
Or other address as may be given from time to time under the terms of this notice
Provision.


**9.6 Counterparts and Translations.**   Due to the inability to identically translate this Agreement in English and Chinese, The Agreement shall be prepared and executed in English version and the translation is for convenience purposes only.   Any translated version of this document shall not be binding on the parties.

**9.7 Heading, Persons and Plurals.**   All Section headings contained in this Agreement are for convenience of reference only, do not form a part of this Agreement and shall not affect in anyway the meaning or interpretation of this Agreement. Words used herein, regardless

Initial: _SMD_                                    Initial: _____

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                              BNBMPLC0007474

of the number and gender specifically used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context requires. Any reference to a "person" herein shall include an individual, firm, corporation, partnership, trust, governmental authority or body, association, unincorporated organization or any other entity.

**9.8 Severability.** Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law. However, if any provision of this Agreement or the application of any provision to any party or circumstance shall be prohibited by or invalid under applicable law, such provision shall be reduced to such scope as is reasonable and enforceable if possible.

9.9 Arbitration. Any dispute, disagreement, claim or controversy between the parties arising out of or relating to the Agreement or the parties performance, hereunder (a "Disputed Matter") which cannot be resolved in a timely manner by consultations between the President duly authorized officers of each party shall be resolved by binding arbitration decided by a single arbitrator at Hong Kong International Arbitration Center in Hong Kong in accordance with rules of arbitration of the International Chamber of Commerce in English and Chinese language.   The parties will share the cost of the arbitration, subject to any final apportionment by the arbitrator. The written decision and reasons of the arbitrator, which shall be communicated to the parties not later than thirty (30) days after close of argument in the arbitration, will be final, conclusive, and binding on the parties.

**9.10 Force Majeure.** Should any of the following circumstances prevent either party from carrying out its obligations under the contract, namely:   acts of civil or military authority; government acts, orders, or restrictions; earthquakes; or flood, the contract shall be extended for as long as the circumstances remain.   In the event that these circumstances continue for more than 30 days, each party shall have the right to refuse to continue the performance of its obligations under the contract and, in such case; no party shall be entitled to indemnification from the other party for any loss it may sustain.   In all cases, the party declaring force majeure is required to provide within 14 days acceptable documentation of the incident issued by the competent Government Authorities where the incident occurs as evidence thereof.

Initial: _____            Initial: _____

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                    BNBMPLC0007475

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement effective as of the Effective date.

Davis Construction Supply, LLC          Beijing New Building Materials Public
                                                              Limited Company

By: _____          By: _____
Mr. Stefan M. Davis, its                        Mr. Wang Bing, its
Managing Member                              General Manager
March 12, 2006                                  March 12, 2006

Initial: _____          Initial: _____

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    BNBMPLC0007476

## AMENDMENT TO PURCHASE/SUPPLY AGREEMENT
## DATED MARCH 12, 2006

**Place of signature:  Beijing, China**

Through friendly negotiations between Davis Construction Supply, LLC (hereinafter referred to as "Davis") and Beijing New Building Materials public Limited Company (hereinafter referred to as "BNBM PLC") both parties agree to this Amendment to the Purchase/Supply Agreement dated March 12, 2006 (hereinafter referred to as the "Agreement").

1.  In paragraph 2.2, of the Agreement, **DELETE** "After signing this agreement, BNBM PLC will immediately prepare and submit the application for UL Certificates under BNBM PLC's name for other products (5/8" Type C gypsum board, and 5/8" Type X-Moisture Resistant gypsum board) that Davis will purchase. Davis will assist the application for UL Certificates, and the costs will be paid by Davis. If the total contract amount purchased by Davis from March 15, 2006 through December 31, 2006 reaches or exceeds three million pieces of gypsum boards, the UL Certification costs paid by Davis will be reimbursed to Davis by BNBM PLC within 10 days" **ADD** "Davis will prepare and submit the application for UL Certificates under BNBM PLC's name for other products (5/8" Type C gypsum board, and 5/8" Type X-Moisture Resistant gypsum board) that Davis will purchase. BNBM PLC will assist and execute the application and authorization forms for UL Certifications immediately, and the costs for UL Certifications will be paid by Davis. If the total contract amount purchased by DAVIS within the year of 2006 reaches or exceeds 4,500,000 pieces of gypsum boards, the UL certification costs paid by DAVIS will be reimbursed to DAVIS by BNBM PLC within 10 days."

2.  In paragraph 2.3, of the Agreement, **DELETE** "The type and quantity of the Products purchased by Davis from BNBM PLC will be as follows:  5/8" Type X gypsum board, 5/8" Type C gypsum board, 1/2" gypsum board, and 5/8" Type X-Moisture Resistant gypsum board All gypsum wall board shall be 4' by 12'. The purchasing ratio of the above four types are respectively as follows: 70%, 15%, 10%, and 5%."

3.  In paragraph 6.1, of the Agreement, **DELETE** "In March, April and May,  Davis will purchase no less than 150,000 pieces per month. After BNBM PLC obtains UL certifications  for the other 2 products, Davis will purchase over 400,000 pieces per month. After Davis has purchased the 150,000 boards per month for three months, UL certifications have been received, and payment of the deposit per provision 6.3. Davis will become the authorized exclusive distributor for the USA and Caribbean region."

Initial  _SMD_                        Initial  _____

1

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                        BNBMPLC0007477

**ADD** "For obtaining the exclusive distributorship, DAVIS shall pay a security deposit in an amount of USD$1 million to BNBM PLC's account, within 7 days after signing of the Amendment. Additionally, DAVIS agrees to purchase 4,500,000 sheets during 2006.However, this total amount is subject to provision 6.3 of the original Agreement and provision 7 of the Amendment. The exclusive distributorship shall come into force immediately upon BNBM PLC's receipt of this security deposit. BNBM PLC reserves the right to terminate the exclusive distributorship if DAVIS fails to open the L/C by the date and the monthly quantity as stipulated in Paragraph 6 of this Amendment. This termination shall not be regarded as breach of Agreement from BNBM PLC. "

4. In paragraph 6.1.1, of the Agreement, **DELETE** "over 400,000 boards per month," **ADD** "450,000 boards per month after May, 2006."

5. In paragraph 6.3, of the Agreement, **DELETE** "For obtaining the exclusive distributorship, DAVIS shall pay USD$1 million to BNBM PLC as a security deposit, which shall be paid within 10 days of the receipt of UL certification for both products."

6. Davis shall provide the Purchase Order and Letter of Credit for June's 450,000 board order by May 27, 2006. For all remaining 2006 Purchase Orders, Davis will provide the Purchase Order before the 10th day of every month for the next month's order. BNBM PLC shall confirm it's ability to produce the requested amount in the Purchase Order and request a change in the order, if required, within five working days after receiving the Purchase Order. Davis shall issue the Letter of Credit within five working days after confirmation is received. Should any of the timeframes referenced in this paragraph occur on a weekend or holiday an additional three days grace period will be allowed, for either party, and shall not be reason for termination of the exclusive distributorship. If Davis fails to issue the Letter of Credit within the above mentioned timeframe, BNBM PLC shall have the right to terminate the exclusive distributorship. Additionally, should Davis not purchase at least 450,000 sheets per month, BNBM PLC shall have the right to terminate the exclusive distributorship.

7. BNBM PLC shall have the right to sell a maximum of 500,000 sheets of 5/8"TYPE X during the months of JUNE, JULY, and AUGUST in 2006. Additionally, BNBM PLC shall notify DAVIS of the boat name, the port of discharge, anticipated delivery date and quantity. The 4,500,000 sheets required in the original Agreement shall be reduced by the actual number of sheets sold under this provision. Should BNBM PLC sell over 500,000 sheets of 5/8"TYPE X, BNBM PLC shall immediately return the USD $ 1 million security deposit to DAVIS.

8. DAVIS exclusive distributorship shall be for UL certified gypsum products only.

Initial _____                          Initial _____

2

This Amendment shall come into force at the date of signature and shall have the same binding force for the original Purchase/Supply Agreement. The Amendment shall hereby be made part of the original Purchase/Supply Agreement. Termination of the exclusive distributorship will not be grounds for termination of the original Purchase/Supply Agreement.

The Amendment Agreement will be signed in 4 copies as original copies. Two copies shall be preserved by DAVIS and other 2 copies shall be preserved by BNBM PLC.

Davis Construction Supply LLC

Beijing New Building Materials Public Limited Company

By: _____
Mr. Stefan M. Davis, its
Managing Member
May 15, 2006

By: _____
Mr. Wang Bing, its
General Manager
May 15, 2006

Initial _____

Initial _____

3

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

BNBMPLC0007479

# BNBM

## 出口产品订单

订单号: 石2006-3                                                                2006/3/3

| 编号 | 产品名称 | 产品规格 | 数 量 | 交货日期 | 备 注 |
|------|---------|---------|-------|---------|-------|
| 1. | 普通纸面石膏板（drywall） | 1/2"x4'x12'(12.7x1220x3660) | 230112张 | 3月25日左右，请按时交货。 | 工厂交货 |
| 技术要求 | | 12.7的板要求符合ASTM C1396-04 对应规格所要求的规定。单位重量<9.2kg/m2.，此点请务必注意，关系到最后的损益。<br>工厂出具符合ASTM的检测报告。<br>楔形边的标准要达到ASTM要求。 | | | |
| 包 装 | | 12.7的板68张做成一个整体包装中间以垫条分成两层各34�床。以塑料罩整体覆盖以防雨、防潮，塑料罩一定要压实，不得出现裸露部分。以石膏板包覆，边角封严，不得出现裸露。托盘不得使用实木，以免薰蒸,，要求足够结实，以承受多次叉车作业，适合长途海运。请严格要求，本合同有不恰当包装造成损坏的赔偿条款。<br>包装外面粘贴两份标签，一份标签附后。另一标签包含防潮保护、轻拿轻放、正面朝上等通用标识，要求两个大面均有以上两份标签。并且显示有关吊点等，吊点处所用护角要求加宽，以利吊装。每架板最下面加一张板做为保护，但不计算在供货数量内。 | | | |
| 唛 头 | | 12.7的drywall 板每张板背面打印：DRAGON BRAND DRYWALL PER  1/2" 4'X12'  ASTM C1396-04<br>MADE IN CHINA    09:45 18/06/2005<br><br>封边纸要求有如下内容：<br>普通板（drywall）: 1/2"x4'x12' DRYWALL | | | |
| 原合同(订单)编号 | | 50590/40283 | | | |
| 订货单位 | | Triorient trading  Inc | | | |

合同评定: 蔡凯 7/3 - 2006.

签发人: 刘院 7/3-06

# BNBM

## Export Products Order

Order No.: Shi 2006-3                                    March 3, 2006

| No. | Product name | Product specifications | Quantity | Delivery date | Remarks |
|-----|--------------|------------------------|----------|---------------|---------|
| 1 | Ordinary paper-faced gypsum board (drywall) | 1/2"x4'x12' (12.7x1220x3660) | 230112 pieces | Around March 25, please deliver on time | Delivery at the factory |

| | |
|---|---|
| Technical requirements | The 12.7 board must meet the requirements provided for the corresponding specification in ASTM C1396-04. Unit weight<9.2kg/m2. Please keep this in mind as this is important for the final profit/loss. |
| | The factory shall provide a test report about conformity with ASTM. |
| | The standard of the wedge-shaped edge shall meet the ASTM requirements. |
| Packaging | Sixty-eight pieces of the 12.7 board are packed together, with a strip in the middle separating the whole into two layers each containing 34 pieces. A waterproof and moistureproof plastic cover is wrapped outside. The plastic cover must be pressed solidly without any uncovered parts. It shall be covered with gypsum board, sealing well the edges and corners without any uncovered parts. |
| | The pallets shall not be made of solid wood to avoid fuming and heating process. The pallets must be solid enough to bear multiple forklift operations and long-distance marine transportation. Please strictly keep in line with the requirements. There are compensation terms in the contract in relation to damages due to improper packaging. |
| | There shall be two labels attached to the package. One is attached, the other with the universal signs such as moistureproof, handle with care, right side up, etc. The two larger sides shall both be attached with the above two labels. The lifting points shall also be shown. The protection angle used at the lifting points shall be widened for the convenience of lifting. There shall be a piece of board at the bottom of every pallet of boards for protection purpose, which is not calculated into the quantity of supply. |
| Shipping marks | On the back of every 12.7 drywall board, it shall print: |
| | DRAGON BRAND DRYWALL PER 1/2"x4'x12' ASTM C1396-04 |
| | MADE IN CHINA  09:45 18/06/2005 |
| | On the sealing paper, it shall print the following: |
| | Drywall: 1/2"x4'x12' DRYWALL |
| No. of the original contract (order) | 50590/40283 |
| Ordering Unit | Triorient Trading Inc |

Contract evaluation: CAI Kai  March 7, 2006

Approved by:  (illegible) March 7, 2006

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER          BNBMPLC0007495

2328 tt

## 事业部审批部分：

日期：　　2006-3-13

| 编号 | 产品名称 | 产品规格 | 数　量 | 交货日期 | 备　注 |
|------|---------|---------|--------|---------|--------|
| 1 | 普通板 | 3660*1220*12.7 | 230,045 张 | 3月20日-4月1日 | |
| 技术要求 | 12.7厚的普通板和吊顶石膏板应该按ASTM C36, ASTM C 1396-04 的要求进行生产。每张板后面应该印有"ASTM C 1396-04"标识。石膏板，楔型边确保紧密接缝。 | | | | |
| 包装要求 | A 石膏板应该合理分架、包装，封装，确保产品免遭海运损害。<br>B 每架68张石膏板，一架的每个面都要有防护板避免产品破损。托盘必须足够结实能够允许叉车装卸。<br>C 货物应使用尼龙吊带。尼龙吊带和尼龙绳应足够结实，当卸完一层货物后，能够继续卸下一层货物。<br>D 每架板必须用一张塑料板从上到下包装避免破损和潮湿。每架板应标出尺寸、宽度、厚度。<br>E 石膏板应有封边带，并且每张板后面标出为中国制造并且符合ASTM C 1396-04标准。<br>F 在任何货物的包装里都不含实木材料。 | | | | |
| 唛　头 | TRIORIENT<br>　PORT OF PALM BEACH, FL<br>　P. O 50590/40283<br>DESCRIPTON: GYPSUM BOARD<br>GROSS WEIGHT: KGS/LBS<br>NET WEIGHT: KGS/LBS<br>SIZE: WIDTH/LENGTH/THICKNETSS IN INCHES<br>MADE IN CHINA ACCORDING TO ASTM C1396-04 | | | | |
| 原合同号 | 50590-Rev 1 | | | | |

业务员：　　　　　　　　　　　　事业部主管：

21/3.

For Business Division to examine and approve

Date: March 13, 2006

| No. | Product name | Product specifications | Quantity | Delivery date | Remarks |
|-----|--------------|------------------------|----------|---------------|---------|
| 1 | Ordinary board | 3660x1220x12.7 | 230,045 pieces | March 20-April 1 | |
| Technical requirements | | The 12.7 ordinary board and gypsum board for ceiling must be produced meeting the requirements for ASTM C36, ASTM C 1396-04. On the back of each piece of board, it shall print "ASTM C 1396-04". The gypsum board and wedge-shaped edge shall be closely engaged. | | | |
| Packaging requirements | | A The board shall be properly separated, packed, sealed to avoid damage during ocean shipping.<br><br>B Sixty-eight pieces of the board are packed for each pallet, with a protecting board covering every side of which to avoid damage. The pallets must be solid enough to bear forklift operations.<br><br>C Nylon strips shall be used for the products. Nylon strips and ropes must be strong enough to be continually used for demounting the next layer of products after demounting one layer of the products.<br><br>D The boards of each pallet shall be wrapped with one plastic board to avoid moisture and damage. Each pallet of boards should be marked with size, width and thickness.<br><br>E The gypsum board shall have edge-sealing band and on the back of each board, it shall print: Made in China and meet the requirements of ASTM C 1396-04.<br><br>F There is no packing stuff made of solid wood. | | | |
| Shipping marks | | TRIORIENT<br>   PORT OF PALM BEACH, FL<br>   P.O. 50590/ 40283<br>DESCRIPTION: GYPSUM BOARD<br>GROSS WEIGHT: KGS/ LBS<br>NET WEIGHT: KGS/ LBS<br>SIZE: WIDTH/ LENGTH/ THICKNETSS IN INCHES<br>MADE IN CHINA ACCORDING TO ASTM C1396-04 | | | |
| No. of the original contract | | 50590-Rev 1 | | | |

Staff:                                                    Supervisor of Business Division

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                                 BNBMPLC0007497