**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047**<br>**SECTION: L**<br>**JUDGE FALLON** |
| **THIS DOCUMENT RELATES TO:**<br>**ALL ACTIONS** | |

**MEMORANDUM OF LAW IN SUPPORT OF
TAISHAN'S MOTION FOR PLAN
TO SATISFY TRANSLATION ORDER**

On January 8, 2016, this Court entered its Findings of Facts and Conclusions of Law from the November 17, 2015 Evidentiary Hearing (Rec. Doc. No. 19959) (the "Discovery FOFCOL"). The Court required Taishan, in part, to translate manually all of the documents produced from the custody of former Taishan employee Wenlong Peng since October 2015 (the "Translation Order"). As it turns out, fairness and due process require a plan other than the manual translation of every document encompassed by the Translation Order. This is so because of the huge volume and substantive irrelevance of the documents from that custodian (84,874 documents comprising 383,506 pages), almost all of which are irrelevant. The monetary and temporal costs of actually executing the Translation Order would be onerous and, more importantly, grossly disproportionate to the Discovery FOFCOL's other sanctions.

Taishan presented this information orally to the Court and the PSC before the Status Conference on January 23, 2017. The Court requested from Taishan an alternative plan for compliance. Taishan submits this Plan to avoid unnecessary harm and delay while still satisfying

the goals of the Translation Order. Taishan's proposed Plan fulfills the following objectives:

- Taishan has incurred and will continue to incur serious punishment for the Court's identified discovery violations;
- The PSC receives manual translations of all documents that are relevant to the issues in this MDL; and
- There is no delay in the adjudication of plaintiffs' claims and other pending motions.

Taishan's proposed Plan is fair, just and in the interest of the Court and all parties. It is also simple, and does not require involvement or oversight by a Special Master. Taishan urges the Court to approve this Plan to Satisfy Translation Order.

## RELEVANT BACKGROUND AND INFORMATION

### 1. *All Peng Documents Were Produced With No Screen for Relevance or Content.*

Several months after the PSC issued discovery requests to Taishan related to former employee Peng Wenlong ("Mr. Peng"), Taishan located Mr. Peng's laptop computer, and also gained access to multiple email accounts used by Mr. Peng. On October 13, 2015, the Court ordered Taishan to produce *every document* in Mr. Peng's custody—with no screen for responsiveness, relevance, or content. (Rec. Doc. 19611.) In essence, the entire universe of documents that that were currently or historically in Mr. Peng's possession, whether professional, personal, technical or otherwise, were turned over to the PSC. It amounted to a "data dump" of 84,874 unique documents, comprising 383,506 pages of random materials.

### 2. *The PSC Received All Peng Documents in Chinese with English Machine Translations Per Court-Ordered Conventions.*

The Peng documents were produced to the PSC no differently than all of the other discovery documents that have been produced to the PSC by Chinese defendants. The general conventions for production of Chinese-language documents were set by this Court on May 7,

2015—months before the Peng production was made. Earlier in the case, the Court rejected the PSC's demands that defendants manually translate original Chinese-language documents. Due to the time and cost burden of manually translating the volume of documents requested and produced, this Court held that the parties producing Chinese-language documents in discovery can produce them in their original language, with machine-generated Chinese-to-English translations. (Rec. Doc. 18911.) Taishan conformed to this convention when it produced all of the Peng documents in Chinese, with full machine-generated English translations. Therefore, the PSC received the Peng documents in the exact same manner that it has received all other productions from Taishan and the BNBM and CNBM entities in the regular course of discovery.

### 3. *The PSC Successfully Reviewed, Processed, and Used the Peng Documents*

Because of the established conventions for Chinese document productions in this case, the PSC developed an effective internal process for reviewing, vetting, and translating documents received from Chinese defendants. By way of example, in dozens of discovery depositions in this case, the PSC submitted as exhibits its own manually translated version of documents that were produced by a Chinese defendant. Occasionally, an opposing party may have noted an objection to some perceived error or ambiguity in the PSC's English translation. But most times, the PSC's English translation of a document was entered into the record without incident. The PSC knows how to review the documents it receives, and cull them for documents that it deems significant in some way.

The PSC successfully reviewed, processed, and vetted the entire Peng document production, and translated the documents that they identified as important. Indeed, the PSC used their own English translations of documents from the Peng production on several occasions:

- 36 exhibits to the deposition of Mr. Peng and as evidence in the evidentiary hearing related to the Peng discovery delay;

3

- 21 exhibits to briefing on CNBM Group's Motion to Dismiss under the Federal Sovereign Immunities Act;

- 13 exhibits to briefing on CNBM and BNBM jurisdictional motions to dismiss

The PSC is not "waiting" to find out what is in the Peng documents just as it did not wait to find out what was in any other document that has been produced by every Chinese defendant in this case. Manual translations have not been required for any of the discovery to date. The PSC's own well-established processes and practices disprove their unsupported protestations of paralysis until they receive manual translations from Taishan.

### 4. *Taishan Manually Translated at Its Own Expense the Priority Documents Requested by the PSC.*

By agreement of the parties and with this Court's approval, Taishan's obligations to satisfy the discovery sanctions outlined in the Discovery FOFCOL were stayed on January 27, 2016, and remained in a standstill for the remainder of 2016. However, during the standstill, the PSC and Taishan agreed that Taishan would manually translate documents from the Peng production that hit on certain search terms provided by the PSC (the "PSC's Priority Documents"). The search terms for the PSC's Priority Documents were the names of 37 witnesses that were deposed in this MDL, including multiple individuals from the CNBM and BNBM companies. The searches were performed in Chinese and English. After de-duplication, the number of PSC Priority Documents manually translated and produced was 193 documents comprising 1,019 pages. Those documents were produced to the PSC on May 17, 2016.

The effort to manually translate the PSC Priority Documents was expensive, and borne entirely by Taishan. Over the course of four months in 2016, at least 13 translators contracted by Alston & Bird worked full time on the project. Taishan's translation cost alone (excluding attorney supervision, data hosting and production expenses) was **$1,175,244**.

### 5. *Taishan's Attorney Review of Peng Production Finds Scant Relevance.*

Just as the application of the PSC's search terms yielded a relatively miniscule percentage of hits (a 0.23% hit rate), Taishan's own qualitative review[1] of every single one of the Peng documents found that hardly any of the documents ordered to be produced by the Court were actually relevant to the issues in this case. In fact, Taishan's own internal review found that only 330 of the documents were potentially relevant, and of those, 230 were privileged. That results in a hit rate for overall relevance of 0.39 percent, with a non-privileged production percentage of 0.12 percent. As one would expect from a production of every single document in a person's possession, the vast majority of documents were irrelevant and included things like junk email, technical files, advertising brochures, and personal correspondence.

### 6. *It Will Cost Millions to Manually Translate the Remaining 382,487 Pages*

After issuance of the Discovery FOFCOL, Taishan obtained quotes from multiple translation vendors in the U.S. and in China. The estimates were based on an assumption of translating 384,000 pages (the approximate size of the Peng production). All translation services estimated that the project would take *four months*, and all quoted the cost in terms of millions of dollars. At the low assumption range of an average of 200 words per page, the lowest quote from a U.S. vendor for basic (non-certified) translation was **$7,680,000.** At a reasonable higher assumption of 300 words per page, the same level of translation would cost **$11,520,000.** China-based vendors gave lower estimates, but still in the millions—approximately **$2.1** to **3.5** million USD based on a 200-300 word count per page. By contrast, the monetary fine imposed by the

---

[1] Like the PSC, Taishan's attorneys also rely on machine translations to screen and vet documents for relevance. For the same reasons set forth in this Motion, Taishan has not manually translated the Peng documents for its own purposes. It is cost-prohibitive and unnecessary.

5

Court's Discovery FOFCOL was **$40,000**, representing **$5,000** per month for the eight-month delay in production of Mr. Peng's documents. Considering that Taishan has already spent more than $1 million to translate the PSC Priority Documents, the complete execution of the current Translation Order will cost Taishan no less than $3 million in translation costs alone. That excludes, of course, the forthcoming reimbursement for the PSC's reasonable fees and costs associated with the Peng discovery delay—an amount the PSC has not yet specified.

## PROPOSED PLAN AND JUSTIFICATION

The foregoing facts show that the requirement to spend millions of dollars to a vendor to manually translate hundreds of thousands of pages of irrelevant documents that the PSC has already reviewed and vetted in this litigation would be disproportionate to the intended scope of the Court's penalty, and also a burdensome and unnecessary waste of resources. This is especially true because the PSC is now exploiting the issue—which was a non-issue for more than a year despite continued briefing on jurisdictional and other motions—to say that the case cannot proceed until this punitive (but fundamentally fruitless) exercise is completed.

### 1. *Taishan's Proposal for Additional Manual Translations*

As an alternative way to satisfy this Court's Translation Order, Taishan asks this Court to approve the following proposed plan:

1. Taishan will identify to the PSC all remaining non-privileged documents designated as "relevant" by Taishan's qualitative review ("Taishan Relevant Set"). If the PSC has already translated a document (for use as an exhibit or otherwise), the PSC can so indicate to Taishan to avoid superfluous translation.

2. To supplement the PSC Priority Documents, Taishan will translate manually all remaining non-privileged documents in the Taishan Relevant Set.

6

3. The PSC can sample its own set of the remaining documents to determine whether the remainder of the documents are relevant in any way. If the PSC identifies documents that are not in (1) the PSC Priority Documents, (2) the Taishan Relevant Set, and (3) the documents already translated and used by the PSC in these proceedings, but still reflect content relevant to the issues in this case, the PSC can identify those documents to Taishan for further good faith discussions in keeping with this Court's repeated admonitions. All facts and circumstances suggest that there will be few, if any, documents that could fall into that category.

This plan provides the PSC with additional manually translated documents from the Peng production that may be relevant to this case, but it avoids the fruitless and expensive manual translation of hundreds of thousands of pages of random documents that happened to be housed in Mr. Peng's computer and emails—documents such as junk mail, users manuals, online purchase receipts, and personal correspondence.

Further, it in no way absolves Taishan of suffering punishment for the delay in producing Mr. Peng's documents. On the contrary, Taishan has incurred over $1 million in translation costs to date for the PSC Priority Documents, and will incur significant additional financial sanctions in the form of the court fine and reimbursement of the PSC's reasonable fees and costs. To require Taishan to spend several more months and millions of dollars to translate irrelevant documents would be unduly burdensome and disproportionate to the other sanctions outlined in the Discovery FOFCOL. *See Insurance Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 707 (1982) ("An award of sanctions under Rule 37(b)(2)(A) must be both 'just' and 'fair', meaning that the conduct is sanctionable and that the sanction is appropriate to the wrong.").

### 2. *No Special Master Is Needed*

The PSC has suggested the need for the Court to appoint a Special Master, at Taishan's expense, to adjudicate a plan for translation of the Peng documents. That additional layer of bureaucracy is not necessary. The plan that Taishan proposes herein is simple and sensible, and can be effectuated through this Court's granting of this Motion. Introducing a stranger to these issues will be difficult and inefficient. Taishan opposes the appointment of a Special Master. However, in the event that the Court decides to appoint a Special Master, Taishan submits that the most effective person to fulfill that role would be Cal Mayo. Cal Mayo has served as a Special Master in this case in another role, and is already familiar with the MDL, the claims, the parties, and the attorneys. He has proven to be a quick and disciplined study. If any person must come into this case at this point to deal with this issue, it should be him.

### 3. *In Any Event, No Proceedings Should Be Delayed*

Even though the PSC has reviewed, processed, vetted and used documents from the entire Peng production, the PSC suggested that it cannot proceed with the Court's scheduled March 2, 2017 hearing on the defendants' motions for class decertification until it has received Taishan's manual translation of the entire Peng production—an exercise that would take months absent approval of Taishan's proposed Plan. The Court should reject the PSC's attempt to exploit this latent discovery issue to stall substantive progress in the case.

Documents from Mr. Peng have no plausible relationship to the decertification motions set for hearing[2] and cannot possibly affect the Defendants' decertification motions. Those motions

---

[2] As the Court noted at the status conference, the jurisdictional motions and the class damages motion are fully briefed and ripe for decision.

8

raise purely legal arguments, such as Fifth Circuit law that bars certification of class when liability is determined for a group of named plaintiffs. *Robertson v. Monsanto Co.*, 287 F. App'x 354, 363 (5th Cir. 2008). And more generally, the Rule 23 factors look to the **nature of the putative class members** and their claims—not to information from **defendants**. That is especially true here where the PSC has admitted that they must adjudicate individually almost all of the claimants' damages, so that individual issues predominate over the one alleged common one. *Corley v. Orangefield Ind. Sch. Dist.*, 152 F. App'x 350, 355 (5th Cir. 2005). The PSC has not articulated any specific type of document from Mr. Peng's files that would be meaningful to meet their burden to prove the Rule 23 factors. They cannot. The Court should deny any requests by the PSC to delay the briefing date for the PSC's opposition to the decertification motions or the March 2, 2017 oral argument date.

## CONCLUSION

For the foregoing reasons, the Court should approve Taishan's Plan to Satisfy the Translation Order.

Dated:  January 26, 2017

Respectfully submitted,

/s/ Michael P. Kenny
Michael P. Kenny, Esq.
Georgia Bar No. 415064
Bernard Taylor, Esq.
Georgia Bar No. 669625
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000

Fax: (404) 881-7777
mike.kenny@alston.com
*Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*

Alan Dean Weinberger
LA Bar No. 13331
HANGARTNER, RYDBERG & TERRELL, LLC
One Shell Square
701 Poydras St., Suite 310
New Orleans, Louisiana  70179
Phone:  (504) 434-6815
Fax: (504) 522-5689
aweinberger@hanrylaw.com
*Local Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, by U.S. mail and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 26th day of January, 2017.

/s/Christina Hull Eikhoff
Georgia Bar No. 242539
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
christy.eikhoff@alston.com
*Counsel for Taishan*