**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED<br>       DRYWALL PRODUCTS<br>       LIABILITY LITIGATION | )<br>)<br>)<br>) | MDL NO. 2047 |
| THIS DOCUMENT RELATES TO: | )<br>) | SECTION: L |
| *Sean and Beth Payton, et al.  v.*<br>*Knauf GIPS KG, et al.,* | )<br>)<br>) | JUDGE FALLON<br><br>MAG. JUDGE WILKINSON |
| Case No. 2:09-cv-07628 (E.D. La.) | ) | |
| _____ | ) | |

**PLAINTIFF, TRACY A. WAGNER'S NOTICE OF APPEAL**
**OF SPECIAL MASTER'S OPINION AND DECREE**

NOTICE IS GIVEN that Plaintiff, TRACY A. WAGNER ("Plaintiff"), by and through her undersigned counsel, appeals the Special Master's Opinion and Decree dated January 22, 2017, as follows:

1.      Plaintiff's affected property, located at 11896 SE Jupiter Inlet Way, Tequesta, Florida 33469, was remediated by Moss and Associates, LLC ("Moss") in accordance with the Knauf Settlement Agreement.

2.      Moss's remediation of the affected property commenced on or about February 22, 2012. The remediation of the affected property was delayed for 16 days due to roof leaks which became apparent as a result of Tropical Storm Isaac in August 2012.  The Martin County, Florida Building Department issued a Certificate of Occupancy for the affected property on December 14, 2012.

3.      Since that time, Plaintiff and Moss have been unable to agree upon significant issues relating to the quality and workmanship of the remediation.  The parties were in discussions regarding the unresolved issues regarding the remediation, but reached an impasse.

4.      On May 12, 2016, the undersigned contacted the Ombudsman, Louis Velez, for his assistance in resolving the disputes that have arisen between Plaintiff and Moss, pertaining to the quality and workmanship of the remediation performed by Moss at Plaintiff's affected property.  Both the homeowner and Moss provided documentation to Mr. Velez for his review.

5.      Stephanie C. Mazzola, Esq., counsel for Moss, contacted the Ombudsman and requested the Special Master's involvement in these disputes.  Moss argued that Wagner's claim was time-barred under the Court's CAP 2013-4 Order.  Both parties submitted position papers to Special Master, Daniel J. Balhoff, regarding the application of the CAP 2013-4 Order to Wagner's claim.

6.      On January 22, 2017, Mr. Balhoff released his Opinion and Decree (Exhibit "A").

7.      On February 3, 2017, the parties participated in a telephonic meet and confer in an attempt to resolve the remediation issues, as required by Section 4.2.9 of the Knauf Settlement Agreement, prior to filing this appeal.  The parties were unable to reach a resolution regarding the remediation issues.

8.      As detailed in Wagner's position paper attached hereto (Exhibit "B"), *even Moss admits* the CAP 2013-4 Order does not apply to Wagner's claim. But if it did (which Wagner does not concede), these facts constitute "good cause" as provided in the CAP 2013-4 Order. Specifically, Wagner directly, granularly and continuously worked with Moss for repair of the remediation damages from December 2012, prior to the issuance of a Certificate of Occupancy ("C.O."), through the date Wagner demanded mediation, with the expectation that there would

be a resolution. Wagner refused to sign Moss' Release, but only resorted to demanding mediation when *Moss* stated it was time to "move on and go to the special master...." Moss proactively engaged in the negotiation with Wagner long after the expiration of 90 days after the issuance of the C.O., and cannot now be allowed to claim that the Order (which does not even apply) somehow allows Moss to walk away from the job.

WHEREFORE, Plaintiff, TRACY A. WAGNER, respectfully requests this Court overturn the Special Master's Opinion and Decree, determine the CAP 2013-4 Order does not apply to the instant claim or determine Wagner has demonstrated good cause, and allow the Wagner claim to proceed, and for any further relief deemed appropriate.

Respectfully submitted,


 *s/* GREGORY S. WEISS
GREGORY S. WEISS (Fla. Bar No. 163430)
Mrachek, Fitzgerald, Rose,
Konopka, Thomas & Weiss, P.A.
505 S. Flagler Drive, Suite 600
West Palm Beach, FL 33401
Tel.: (561) 655-2250
Fax: (561) 655-5537
gweiss@mrachek-law.com
psymons@mrachek-law.com

*Attorneys for Tracy A. Wagner*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing has been served upon Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller and Harry Rosenberg, by email transmission, and upon all parties by electronically uploading the same to Lexis Nexis File and Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with procedures established in MDL 2047, on this 6th day of February, 2017.

_s/_ GREGORY S. WEISS
GREGORY S. WEISS (Fla. Bar No. 163430)

# EXHIBIT "A"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE -MANUFACTURED                MDL NO. 2047
DRYWALL PRODUCTS LIABILITY
LITIGATION                                  SECTION: L

                                            JUDGE ELDON FALLON
                                            MAGISTRATE WILKINSON

# Opinion and Decree

Tracy A. Wagner owns the property located at 18896 SE Jupiter Way, Tequesta, Florida.

Ms. Wagner submitted her property for remediation pursuant to Section 4.3.1 (Option 1) of the

Knauf Settlement Agreement.[1] On December 14, 2012, the Wagner property received its Certificate

of Occupancy.

Section 4.5.1.2.1 of the Knauf Settlement Agreement provides:

> In the event that a dispute arises between a KPT Property Owner [in
> this case, Ms. Wagner] and the Lead Contractor or Other Approved
> Contractor [in this case, Moss] over the Remediation Protocol for the
> individual KPT Property, such dispute shall be submitted to the
> Special Master who will resolve the dispute. The parties shall
> cooperate with the Special Master to resolve any disputes
> expeditiously and avoid, to the maximum extent possible, any delay
> in the remediation.

Several disputes arose between Ms. Wagner and Moss & Associates, LLC in the months

after the Certificate of Occupancy was received.  However, at the time, there was no deadline by

---

[1]Ms. Wagner notes that her property was originally submitted for remediation pursuant to
the Settlement Agreement for the Demonstration Remediation of Homes with KPT Drywall, which
had its own mediation provision.  However, the Knauf Settlement Agreement (at Section 1.1.2)
included within its class definition "any person or entity which has settled claims against the Knauf
Defendants under the Settlement Agreement for the Demonstration Remediation of Homes with
KPT Drywall ('Pilot Program') by executing both the Work Authorization and Release as defined
in the Pilot Program, whose Affected Property has been or will be remediated under the Pilot
Program."  Ms. Wagner falls within this definition, and thus is bound by the terms of the Knauf
Settlement Agreement and its attendant Claims Administration Procedures.

which the parties had to request mediation pursuant to Section 4.5.1.2.1.  This changed on October 1, 2013.  On October 1, 2013, the Settlement Administrator promulgated Claims Administration Procedure ("CAP") No. 2013-4.  The CAP stated that it applied "to remediations conducted pursuant to section 4.3.1 of the Knauf Settlement Agreement."  The CAP further stated:

> A Request for Mediation must be filed with the Special Master within 90 days of the receipt of the Certificate of Occupancy, as that term is defined in the Work Authorization Agreement, by the claimants.  The Special Master will not consider Requests for Mediation filed after the filing deadline, absent good cause shown.

The obvious purpose of this CAP was to adopt a procedure for winding down the settlement program.  A right to request mediation without any deadline whatsoever would result in a settlement administration with no end, including potential involvement by Moss, the Special Master, and the Court.  The CAP was designed to hasten finality to the process.

On September 28, 2016, the parties sent the Special Master a request for mediation.  On its face, the request is late pursuant to the terms of CAP No. 2013-4, because it is more than it was made more than 90 days after the Certificate of Occupancy.

This does not end the inquiry, though.  As was stated above, there was no 90-day deadline at the time the Certificate of Occupancy was received; indeed, there was no deadline at all.  If, for instance, the parties had requested mediation on September 30, 2013 (more than 90 days after the Certificate of Occupancy was received, but before the effective date of CAP No. 2013-4, the Special Master would be inclined to hold that he would have authority to mediate the matter.

But the facts here are different.  The parties waited until more than 90 days passed even after the effective date of CAP No. 2013-4 before requesting mediation.  If the Special Master holds that the 90-day deadline does not apply to matters such as the instant one, the result would be no

deadlines (and therefore no finality) for all similar disputes.  Such a result would undermine the desire for finality that underlies the adoption of CAP No. 2013-4.

Ms. Wagner  notes that the 90-day deadline is not absolute; it can be extended "for good cause shown."  Ms. Wagner does not claim that anything prevented her from requesting a mediation within the 90-day deadline.  Instead, Ms. Wagner points to several communications between herself and Moss (as well as their representatives/attorneys) in the months following December 14, 2012.  These communications continued well after CAP No. 2013-4's 90-day deadline.  However, in none of the communications did the parties agree to extend (or even intimate that they were agreeing to extend) the 90-day deadline.  Given this, the Special Master does not believe that he has the authority to extend the deadline.  Therefore, pursuant to CAP No. 2013-4, "[t]he Special Master will not consider [the] Request[] for Mediation."  Because of this conclusion, the Special Master does not need to address the other arguments of the parties.

Moss asks the Special Master to find that Ms. Wagner is in bad faith, and therefore is responsible for all costs associated with the requested mediation.  The Special Master concludes that Ms. Wagner was not in bad faith, and rejects Moss's request.

For the foregoing reasons, Ms. Wagner's request for mediation is rejected.  The parties will each be responsible for one-half of the costs associated with this matter.  The Special Master will circulate an invoice in the near future.


Dated: January 22, 2017                          /s/ Daniel J. Balhoff
                                                 Daniel J. Balhoff, Special Master

# EXHIBIT "B"

WEST PALM BEACH | STUART



MRACHEK
FITZGERALD
ROSE
KONOPKA
THOMAS
& WEISS, P.A.

L A W

**VIA EMAIL TRANSMISSION**

December 5, 2016

Daniel J. Balhoff, Esq.
Perry, Balhoff, Mengis & Burns, LLC
2141 Quail Run Drive
Baton Rouge, LA 70808

Re:   <u>In Re: Chinese-Manufactured Drywall Products Liability Litigation</u>
      Homeowner:           Tracy Wagner
      Claimant I.D.:        102234
      Affected Property:    18896 SE Jupiter Inlet Way, Tequesta, Florida 33469

Dear Mr. Balhoff,

We appreciate your focus and service as Special Master in this matter. The undersigned law firm represents Ms. Tracy Wagner regarding corrosive Chinese-Manufactured Drywall ("CDW") in her home located at 18896 SE Jupiter Inlet Way, Tequesta, Florida 33469 ("Wagner Residence"). This correspondence responds to Moss' November 8, 2016 correspondence claiming a CAP 2013-4 Order defense to the Wagner Residence claims, specifically refuting the same.

First, prior to the discovery of CDW, the Wagner Residence was a newly constructed high-end custom home (with a deep water dock) consisting of greater than 5,700 square feet. The appliances and finishes in the Wagner Residence were acquired at great expense, and prior to and throughout Moss' remediation under the Demonstration Remediation Program, Ms. Wagner attempted to convey to Moss that she would not sign off on the remediation until the Wagner Residence was completed to the same standard as Moss discovered it. The issues raised by Ms. Wagner are neither recent nor novel to Moss.

As you are aware, well prior to the issuance of a Certificate of Occupancy, Ms. Wagner provided Moss with comprehensive information from a licensed general contractor explaining in granular detail the issues with Moss' remediation. For example, on December 14, 2012, prior to the issuance of a Certificate of Occupancy, Ms. Wagner directly emailed Moss employee Rob Frankel, and Moss subcontractor Jason Stephens, a list of seven major issues that would need to be addressed. *See* the email attached as Ex. "A." The discussion regarding resolution of the issues with Moss' remediation of the Wagner Residence continued thereafter, and in the midst of it, on April 26 2013, Moss presented Ms. Wagner with a Homeowner Release of Contractor. Ms. Wagner refused to sign Moss' Release.

mrachek-law.com                    Office 561.655.2250 | Fax 561.655.5537
                                   505 South Flagler Drive, Suite 600 | West Palm Beach, Florida 33401

Daniel J. Balhoff, Esq.
December 5, 2016
Page 2

*See* the Release executed *by Moss* on April 26, 2013 as *"Homeowner Refuses to Sign"* attached as Ex. "B." At minimum, Moss was thereby well aware of Ms. Wagner's on-going and continuous claims. On July 28, 2013, in light of Moss' refusal to fix the issues raised in Ms. Wagner's December 14, 2012 demand, and Ms. Wagner's refusal to sign Moss' Release, Ms. Wagner presented Moss with a more comprehensive list of issues, this time including estimates for the needed revisions/repairs. *See* July 28, 2013 correspondence attached as Ex. "C."

The engaged negotiation between Moss and Ms. Wagner continued through a teleconference set by Moss, between Ms. Wagner, the undersigned and Moss, on November 21, 2013, a follow up walk-through by Moss on November 25, 2013, and Moss' counter-offer on December 4, 2013. *See* email correspondence attached as Composite Ex. "D." Simultaneous with this negotiation, Ms. Wagner discovered additional problems with Moss' remediation of the Wagner Residence. Therefore, on February 3, 2014, Moss emailed the undersigned regarding the status of Moss' last offer to repair, stating "we can move on and go to the special master if that is what they want" to which the undersigned responded that Ms. Wagner had "discovered additional issues since moving in and ... we will have to go to the special master." Again, these issues are no surprise to Moss.

Ms. Wagner and Moss have been engaged in an on-going discussion since prior to the issuance of a Certificate of Occupancy for the Wagner Residence, but Moss has disputed the scope of the needed repairs. Moss' argument that it can simply avoid Ms. Wagner's claims pursuant to the CAP 2013-4 Order is wholly without merit. By its own terms, and Moss' own admission, the CAP-2013-4 Order does not apply to the Wagner Residence. Moss cannot write in terms to the Order that do not exist. Even if it could, the Order provides at Para. 3(a) that the deadline to request mediation would be 90 days after receipt of a Certificate of Occupancy *"absent good cause shown"*. (emphasis added) These facts constitute "good cause." Ms. Wagner has continuously attempted to negotiate with Moss, from prior to the issuance of a Certificate of Occupancy, to avoid further litigation. Ms. Wagner refused to sign Moss' Release. Ms. Wagner only resorted to demanding mediation when Moss stated it was time to "move on and go to the special master...." Moss proactively engaged in the negotiation with Ms. Wagner long after the expiration of 90 days after the issuance of the Certificate of Occupancy, and cannot now be allowed to claim that the Order (which does not even apply) somehow allows Moss to walk away from the job. Therefore, Ms. Wagner respectfully requests that you deny Moss' argument and allow the mediation to proceed.

Should you desire further information please do not hesitate to ask.

Very truly yours,

*Gregory S. Weiss*

GREGORY S. WEISS
Signed in attorney's absence to expedite delivery.

GSW/pms
cc:   Mr. Mark Greenberg, Esq.
      Stephanie C. Mazzola, Esq.

# EXHIBIT "A"

**Patrice Symons**

| | |
|---|---|
| **From:** | Michael Gonzalez <mgonzalez@mossemail.com> |
| **Sent:** | Friday, January 04, 2013 3:01 PM |
| **To:** | Tatum Whiddon; Greg Weiss |
| **Cc:** | Robert Frankel; Tim Harris; Chris Krause |
| **Subject:** | FW: Wagner remediation concerns |
| **Attachments:** | Centro Collection - Living, Study, Landing, Master.pdf; Grand Prix Collection - Bed 2, Bed 3.pdf; Compare Centro & Grand Prix.pdf |
| **Importance:** | High |

Good afternoon Tatum,

I am just touching base to make sure that this information gets to Mrs. Bury.  The most important item is to obtain approval of the High-gloss trim that was punched out up stairs in the master bedroom prior to investing time and material in something that they may ultimately not be happy with.

Thank you,

*Michael Gonzalez*
*Assistant Project Manager* | **Moss & Associates**
o (954) 769-8183 | f (954) 563-8681 l m (561) 262-6334
7301 N. Andrews Ave | Suite 300, Fort Lauderdale, FL 33311

---

**From:** Michael Gonzalez
**Sent:** Friday, January 04, 2013 9:08 AM
**To:** 'Bury, Tracy (GE Healthcare)'
**Cc:** 'Jason Stephens'; Robert Frankel; Tim Harris; Chris Krause; Guy Reese; 'Mark Greenberg'; 'Tatum Whiddon (twhiddon@leopold-law.com)'; 'curtis kelley'
**Subject:** RE: Wagner remediation concerns
**Importance:** High

Good morning Mrs. Bury,

Curtis is currently working on the light fixture package and I have some information on the ceiling fans.  Please refer to the attached product data for the Monte Carlo Grand Prix and Centro Collections.  You will notice that the Centro Collection has a 70 watt motor that generates 5,948 CFM of airflow and is designed to turn standard fan blades.  The Grand Prix Collection has a 111 watt motor that generates 10,022 CFM of airflow and is designed to turn oversized fan blades.

I have reviewed this information and the photos of the fans in your home with the manufacturer and it was concluded that the fans outfitted with the bahama bent (oversized) blades are not intended to turn oversized blades.  The fans in bedroom #2 and #3, outfitted with standard blades, are the higher rated motors designed to turn oversized blades.  As noted during the walk through, the fans with the bahama blades do operate on 3 speeds however they are operating under excessive load hence the gradual acceleration.

Unfortunately the Work Authorization does not include the replacement of ceiling fans however the manufacturers recommendation is that you install the larger blades on the appropriate motors for maximum performance and efficiency.

I was at the home yesterday and took a look at the master bedroom paint now that it has been punched out.  Everything looks great!  The painters are proceeding with punching out the paint on the walls throughout the home however the trim and door paint punch is currently on hold until we receive acceptance.

Thank you,

*Michael Gonzalez*
*Assistant Project Manager* | **Moss & Associates**
o (954) 769-8183 | f (954) 563-8681 | m (561) 262-6334

---

**From:** Michael Gonzalez
**Sent:** Wednesday, January 02, 2013 10:38 AM
**To:** 'Bury, Tracy (GE Healthcare)'
**Cc:** 'Jason Stephens'; Robert Frankel; Tim Harris; Chris Krause; Guy Reese; 'Mark Greenberg'; 'Tatum Whiddon (twhiddon@leopold-law.com)'
**Subject:** RE: Wagner remediation concerns
**Importance:** High

Good morning and Happy New Year to everybody. Mrs. Bury, the trim in the Master Bedroom has been sanded and painted for your review and approval. Please advise as to your earliest availability to meet and review the trim finish and confirm acceptance.

Thank you,

*Michael Gonzalez*
*Assistant Project Manager* | **Moss & Associates**
o (954) 769-8183 | f (954) 563-8681 | m (561) 262-6334

---

**From:** Michael Gonzalez
**Sent:** Thursday, December 20, 2012 9:06 AM
**To:** 'Bury, Tracy (GE Healthcare)'
**Cc:** Jason Stephens; Robert Frankel; Tim Harris; Chris Krause; Guy Reese; Mark Greenberg; Tatum Whiddon (twhiddon@leopold-law.com)
**Subject:** RE: Wagner remediation concerns

Good morning Mrs. & Mr. Bury,

Thank you for taking the time to walk the home on Monday. I have added some additional notes and photos to the list of items below for added clarity. Please note that in addition to the items noted below there were concerns noted in your correspondence dated 12/14/2012 that were clarified/confirmed.

The original trim in the home was in fact finger jointed pine as evidenced by the photos provided and not poplar. This has been replaced like for like with exception of the tall crown. The tall crown was inspected on Monday and aside from the paint touch-ups Mr. Bury could not identify any defects and or imperfections in the material. As stated in the meeting, when installing large trim MDF material yields a higher quality finish than a finger jointed material being that the surface is free of joints, knots, and imperfections.

The original paint in the home was a Satin/Semi-gloss finish on the trim and doors, and Flat finish on the walls and ceilings. By utilizing a low sheen paint many imperfections in the substrate are hidden. The A/C closet doors up stairs had not been painted on the inside and the original finish on the doors was confirmed to have orange peeling and notable imperfections. By requesting a high gloss finish on these substrates, the existing finish of the doors has been enhanced. Moraca is in progress with lightly sanding and re-painting one door and a section of trim for your review and approval utilizing the gloss paint requested. If the expectation is to receive a perfectly smooth, high gloss finish, there will be an inherent upgrade cost associated with bringing the existing substrates up to the requested level. If the samples are acceptable, Moraca will continue with punching out the paint, otherwise the trim will be painted semi-gloss as per the terms of the Work Authorization.

Again, thank you for taking the time to review these items. We will continue to maintain the open line of communication to insure that all of your concerns are addressed.

*Michael Gonzalez*
*Assistant Project Manager* | **Moss & Associates**
o (954) 769-8183 | f (954) 563-8681 | m (561) 262-6334

---

**From:** Bury, Tracy (GE Healthcare) [mailto:Tracy.Bury@ge.com]
**Sent:** Thursday, December 20, 2012 12:00 AM
**To:** Michael Gonzalez
**Cc:** Jason Stephens; Robert Frankel; Tim Harris; Chris Krause; Guy Reese; Mark Greenberg; Tatum Whiddon (twhiddon@leopold-law.com)
**Subject:** RE: Wagner remediation concerns

Michael,
Thank you and your team for walking through the house with Mike and I yesterday.  Per our conversation:

1) The fans in the house are not operating properly and the motors need to be replaced.  Attached is original invoice for fans.
   > **No attachment.  I am in communication with the manufacturer to try and obtain the performance spec on the fans with the large blades installed for Knauf's review and consideration.**
2) The variable fan switches that Curtis installed for the fans are acceptable.
   > **OK**
3) The bathroom accessories should match the faucets.
   > **See attached photos of the original Master Bath faucet trim and bath accessories (photo 331, 334).  The faucets were replaced like for like, it appears that the current accessories are not the correct finish which will be corrected.**
4) The insta-hot in the morning bar doesn't match the faucets
   > **See attached photo of the pre-existing trim at the morning bar (photo 297).  The fixtures were replaced like for like.**
5) The baseboard behind the toilet in the Master Bath is jointed oddly and needs to be corrected
   > **This will be corrected.**
6) The baseboard at the morning bar should fit the cut of the cabinets
   > **Not sure what**
7) The trim piece on the breakfast bar should be one solid piece
   > **This will be corrected.**
8) Per Curtis, there are several lights in the home that need to be replaced.  I have attached my lighting schedule from the original build.  If you cannot find identical replacements, please let me know and I will make a choice.  Since the lights are part of a set.  If we cannot replace identical you would need to replace the entire set.
   > **No attachment.  Curtis will be in touch with you and I to coordinate selections and replacement as needed.**
9) The light over the kitchen island needs to be turned 90 degrees.  The lights should run parallel to the breakfast bar, not perpendicular.
   > **This will be corrected.  Photo of light originally parallel is attached (photo 103)**
10) The hallway in the Master was not originally all green.  Please refer to the paint schedule as the Arched Walls and Doorways should be Rich Cream
   > **This will be corrected.**
11) Per our discussion, we expect the paint job throughout the house to be of the same quality and finish as it was previously.  The walls should be free from defects such as the holidays, seams, roller marks and blemishes such as the ones that we pointed out to you.  The trim, casing, crown and doors should be smooth high gloss without texture, drips and runs such as those we pointed out to you.  Please feel free to correct one complete door and casing as a sample for us to review and approve before you invest further resources in rectifying the problem.
   > **The walls and paint are in progress with being punched out.  Moss/Moraca will correct any defects in the finish (roller marks, paint runs, etc.).  With reference to the high gloss finish on the trim, it was agreed by all parties that the previous finish on the trim and doors was satin/semi-gloss and not high gloss as was requested.  By upgrading to a high gloss finish any imperfections in the substrate (doors & finger joint molding) will be highlighted as is currently evident in the home.  Moss does not have any control over the existing finish of the substrate material.**
12) We decided that since the MDF crown was already up and removing could cause further damage to the home, we would agree to leave the crown material as is.  However, the paintwork on the crown also needs to be brought up to the level 5 finish that you stated has been provided.

Level 5 finish is with reference to the drywall walls and it was confirmed that the walls are in fact level 5.  The noted imperfections are paint punch items that are currently being addressed.

As Mike pointed out to Jason, it appears the marble floor in the living room has been damaged, however, it was difficult in the short time we had access to the home prior to it being cleaned, to determine the extent of the issue.  We agree to wait until Moss has finished the punch-out and allows a complete and thorough inspection to determine the extent of this and any other issue.  Please let me know if you have any questions.  **This was not reviewed with Moss reps, we will review preconstruction documentation and inspect after final clean has been performed.**

Sincerely,
Tracy Wagner Bury

---

**From:** Michael Gonzalez [mailto:mgonzalez@mossemail.com]
**Sent:** Monday, December 17, 2012 9:12 AM
**To:** Bury, Tracy (GE Healthcare)
**Cc:** Jason Stephens; Robert Frankel; Tim Harris; Chris Krause; Guy Reese
**Subject:** RE: Wagner remediation concerns

Yes, tomorrow at noon works for me.  I will see you guys there.

Thank you,

*Michael Gonzalez*
*Assistant Project Manager* | **Moss & Associates**
o (954) 769-8183 | f (954) 563-8681 l m (561) 262-6334

---

**From:** Bury, Tracy (GE Healthcare) [mailto:Tracy.Bury@ge.com]
**Sent:** Monday, December 17, 2012 9:07 AM
**To:** Michael Gonzalez
**Cc:** Jason Stephens; Robert Frankel; Tim Harris; Chris Krause; Guy Reese
**Subject:** RE: Wagner remediation concerns

Michael,
Thank you for your quick response.  My husband and I were at the house last Sunday to use the pool and noticed that, even though there were no workers in the home that day, the front door was not only unlocked, but open. (picture attached).  We went inside to make sure that everything was ok and that is when we saw the unacceptable elements previously noted.  If you are concerned about unauthorized entry, safety and liability, I recommend that you secure the home better.

Mike and I would look forward to walking through the home with you.  We are anxious to have this completed and would not have brought up these items if they were "substantially complete pending final punch out".  If you could "punch out" substandard material and turn orange peel finish back to smooth, we would not have mentioned it.  I'll be interested to see how you can "punch out" the poor workmanship on the drywall that has left visible tape lines and created paint flash.  We are not trying to be confrontational.  We simply want the home back with the same quality and finishes as it had before the remediation started.

Mike and I can be at the house at noon tomorrow to clarify these concerns.   Please confirm your availability.
Thank you,
Tracy Wagner Bury
561-262-7901

---

**From:** Michael Gonzalez [mailto:mgonzalez@mossemail.com]
**Sent:** Saturday, December 15, 2012 2:32 PM
**To:** Bury, Tracy (GE Healthcare)
**Cc:** Jason Stephens; Robert Frankel; Tim Harris; Chris Krause; Guy Reese
**Subject:** Re: Wagner remediation concerns

Ms. Bury, I am in receipt of the correspondence below and will look into the current status of each item to provide you with an accurate response.

If you refer to the Signed Work Authorization you will find that it states that the Contractor has control of the home once the remediation has commenced and the homeowner must schedule with Moss if they would like to enter the home. This is in the best interest of both Moss and the Homeowner. The home is an active construction site and there are safety and liability concerns with unauthorized entry to the home.

Please note, that the home has not been punched out by Moss and many of your comments are referencing work that is Substantially Complete pending final punch. How is your availability to meet at the home this coming Tuesday, Dec. 18, to review and clarify your concerns.

I look forward to hearing back from you.

Constructively Yours,

Michael Gonzalez
(561)262-6334


On Dec 15, 2012, at 10:47 AM, "Robert Frankel" <rfrankel@mossemail.com> wrote:

> Mike
> Please read below.
>
> Sent from my iPhone
>
> Begin forwarded message:
>
>> **From:** "Bury, Tracy (GE Healthcare)" <Tracy.Bury@ge.com>
>> **Date:** December 14, 2012 4:53:36 PM EST
>> **To:** "Rob Frankel (rfrankel@mossemail.com)" <rfrankel@mossemail.com>,
>> "JasonStephens (jstephens@moracabuilders.com)" <jstephens@moracabuilders.com>
>> **Subject: Wagner remediation concerns**
>>
>> Rob & Jason,
>>
>> Mike and I have returned from our trip, and inspected our home. We found several elements unacceptable and want to notify both of you that these are not small punch out items or easy fixes. Please remember that Mike is a State Certified Residential Contractor.
>>
>> The day the contractors came to bid on our home, we met every one of them at the door with a set of plans and all invoices from the original build. We informed them that we were going to take samples of all of the base board, crown molding, and carpeting. Mike took samples, sealed them in plastic with labels, and has them stored in a safe place. Specifically, Mike told them that, "We don't want a penny more than we are entitled and we won't stand for a penny less". Further, Mike stated, "if you think you are going to put MDF (Maximum Density Fiberboard) up as a replacement for the poplar crown, you are sadly mistaken, don't do it. Bid the job accordingly." Unfortunately, it appears that they did exactly what we told them not to do. They put up MDF crown throughout the house. This needs to be removed and replaced. We will not sign off on MDF, or any of the other items below.

Here is what needs to be immediately addressed:

1. The MDF crown needs to be taken down and replaced with poplar, which is what was there originally.
2. The trim has nail holes and paint runs and has been painted with a texture commonly called orange-peel, which is used to hide imperfections. The previous finish was smooth as is typically found in a home of this stature. Sloppy orange peel paint is unacceptable.
3. The doors in the house also were smooth doors. They are now high gloss with orange peel. It appears that there was improper preparatory measures taken prior to painting and the paint job is completely unsatisfactory. In addition to the incorrect texture, there are runs, missed spots, blemishes, particulates imbedded in the paint, overspray, etc.
4. The drywall in the home was not finished to a level 5 finish prior to painting. As a consequence, the paint job and finish throughout the home is simply not satisfactory. Pits, runs, blemishes, and other imperfections were not present before the remediation and will not be accepted now.
5. There is over spray on the door jambs. Additionally, it appears that the work area was not swept before spraying and the dust/dirt particles from the floor are now embedded in the paint on the doors and trim.
6. On several occasions we discussed that the ceiling fans were no longer operating to spec. The highest speed that the motor now operates at is less than the lowest speed used to be. It appears that the ceiling fans were replaced without rewiring or replacing the motors. In addition the wall switches that now operate the fans are simple on/off switches as opposed to the high-end variable switches that were there prior to demolition.
7. The main chandelier has not been rehung because the contractor broke one of the globes on it and is in the process of looking for a replacement. As we looked at the chandelier at eye level in the garage, it's apparent that all the copper wiring in it is completely black and corroded. I understand that the contract called for the lighting to be reset but it surprises me that they would re-hang something that is so obviously damaged and potentially a fire hazard.

This is a $1.5 million dollar property in a waterfront neighborhood. The workmanship being done, however, is more consistent with a $250,000 house. We simply want to enjoy our house as it was, and be able to sell it consistent with its prior quality and finishes. That is not possible, however, with the current repairs.

Rob & Jason, we would like to set up a time to have you both walk through the home with us. We think it will be apparent that our assertions above are not without merit and then you will be able to act accordingly. Thank you very much for your assistance in this matter, and please call me with any questions.

Sincerely,

*Tracy*

Tracy Wagner Bury, MBA
GE Healthcare -
Women's Health Ultrasound
National Sales Manager

T 888-431-7913
C 561-262-7901
E Tracy.Bury@ge.com

*** eSafe scanned this email for malicious content ***
*** IMPORTANT: Do not open attachments from unrecognized senders ***

# EXHIBIT "B"

## HOMEOWNER RELEASE OF CONTRACTOR

Name: TRACY WAGNER

Day Telephone: _____ Night Telephone: _____

Address: 18896 SE JUPITER INLET WAY

I/We, _____, certify that I/We am/are the owner(s) of the above listed property.

In consideration of the Substantial Completion of the Repair Work by the Contractor, I/We agree as follows:

1.  All defined terms in this Release will have the same meaning as those terms are defined in the Work Authorization I/We previously executed.

2.  Except for latent defects (hidden defects that cannot be discovered by reasonable inspection), warranty claims pursuant to the Work Authorization, claims arising from any and all liens related to the Repair Work, Punch List work listed on the attached Punch List, and/or claims for consequential damages as described in Paragraph 3 below, I/We hereby release the Contractor and its subcontractors, employees and agents of and from any and all claims or causes of action which arise out of, or relate in any way, to the Repair Work or the Work Authorization. This release covers all rights and causes of action of every kind, nature and description, which the undersigned ever had, now has/have and, but for this release, may have against the Contractor. This release binds the undersigned and his/her/their heirs, representatives and assignees.

3.  Notwithstanding any other provision of this Release, I/We do not waive claims against the Contractor for bodily injury or property damage caused by the Work Authorization and/or the Repair Work, except I/We waive all claims for such injury and/or damage that seek recovery of emotional distress (except for such emotional distress related to a bodily injury claims), loss of profits, loss of use, and/or diminution of property value damages. "Loss of Use" does not include loss of use during the Construction Duration as defined in the Work Authorization Agreement.

4.  Except for items noted on the Punch List, the Repair Work has been performed to my/our satisfaction and in accordance with the Schedule of Work.

SIGNATURE: HOMEOWNER REFUSES TO SIGN    DATE: 4/26/2013
PRINTED NAME: _____

SIGNATURE: _____    DATE: _____
PRINTED NAME: _____

MILESTONE #3 BUILDING FINAL   12/14/12

FILE COPY

# EXHIBIT "C"

July 28, 2013                                              Sent via U.S. Mail and E-mail

Moss & Associates
2101 North Andrews Avenue Ste 300
Fort Lauderdale, FL 33311Th

Attn:   Michael Gonzalez
        Assistant Project Manager

Re:    Tracy Wagner Pilot Home Remediation
       18896 SE Jupiter Inlet Way, Tequesta, FL 33469

Dear Michael,

As you know, Moss, and the subcontractors representing Moss, conducted the remediation of my home due to Chinese Drywall. Unfortunately, many of the repairs were either not done, were done inadequately, and/or caused ancillary damage. After our previous walkthrough, it was our understanding that these items were part of your punch list and would be addressed ASAP.  We have heard nothing further from Morocca or Moss on this and the extent of these issues has prohibited us from occupying the home. Since it appears that Moss has no intention of completing the remediation, I have solicited bids from other professionals. The following is the list of outstanding items, along with the costs to repair or remediate the issue. Attached are the supporting estimates that document these costs.

| # | ITEM | AMOUNT |
|---|------|--------|
| 1 | Repair defects in drywall finish | $ 9,150 |
| 2 | Repair & refinish marble floor damaged during remediation | $ 7,650 |
| 3 | Repair & refinish wood floor & handrails damaged during remediation | $ 3,460 |
| 4 | Finish kitchen cabinets & knee wall left incomplete / incorrect | $ 4,610 |
| 5 | Repaint due to incorrect color used & substandard workmanship | $ 60,000 |
| 6 | Repair garage doors, incl faux paint, damaged during remediation | $ 1,450 |
| 7 | Remove and replace incorrect trim material - not like for like | $ 30,175 |
| 8 | Remove & replace staircase trim improper install | $ 1,907 |
| 9 | Fix plumbing defects per bid | $ 1,410 |
| 10 | Replace driveway & entryway pavers due to damage | $ 7,705 |
| 11 | Reimburse homeowner for broken garage door sensor and motor | $ 128 |
| 12 | Replace damaged plantation shutters | $ 2,465 |
| 13 | Replace master bath mirror improper fit & damage during install | $ 699 |
| 14 | Replace California style closets per bid | $ 11,172 |
| 15 | Replace pitted handles and knobs in kitchen | $ 653 |
| 16 | Replace ceiling fan in living room damaged during remediation | $ 1,015 |
| 17 | Replace light fixture in MBR damaged during remediation & matching set | $ 1,042 |
| 18 | Replace entryway chandelier damaged during remediation & matching set | $ 5,240 |
| 19 | Replace sconce at back door damaged during remediaton | $ 134 |
| 20 | Finish electric in media floor, media & LR wall and at satellite dish | $ 550 |
|   |   | $ 150,615 |
| 21 | Replace double oven & warming drawer inoperable | TBD |

We are very anxious to move back into our home as soon as the remediation is complete and the home is fully operable. Please remedy these items within the next 30 days or provide me with the funds so that I can hire contractors to do the work. As you can see, the estimates are all from licenses contractors in the trade of the bid. I look forward to hearing from you.

Sincerely,

*Tracy A Wagner Bury*

Tracy A. Wagner
18896 SE Jupiter Inlet Way
Tequesta, FL 33469

Cc:  Greg Weiss, Esq.
      Mark Greenberg, Esq.

2013-07-30 02:33        Tracy Bury   561-748-5957 >>    18884650311
May 23 13 10:52a        Edward Bonardi                                    561 7435922              p.1          P 3/22

# *PROPOSAL*

*Proposal Date: 3/25/13*

## *BONARDI DRYWALL, INC.*

61 Willow Rd.
Tequesta, Fl. 33469
Office/Fax:(561)743-5922 Mobile:(561)373-5102

| Proposal Submitted To: | Work to be Performed at: |
|---|---|
| Michael Bury | Bury Residence |
| 19174 Se Fearnley Dr. | ~~19174 Se Fearnley Dr.~~  1 8896 SE JUPITER |
| Jupiter, FL. 33469 | Jupiter, FL. 33469          INLET WAY |

Project:

We hereby propose to furnish the materials and perform the labor necessary for the completion of finish of ceilings, and interior walls as per plans.

Drywall installed shall be to code. Level 5 Finish to be done in all troubled areas, including Master Bathroom ceiling , Living room ceiling and loft ceiling upstairs. Formal dining room, breakfast and kitchen ceilings. To repair Exposed tape joints, visible screw holes, lap joints where drywall joint compound was not sanded sufficiently, Paint Drips several other imperfections throughout house. Floor to be covered by owner. All work to be done on a time and material bases @ $50.00 hourly rate per man. Work area to be left broom clean.   Trash to be removed by contractor.   All work to be performed in a professional and timely manner.
Aprox. Hours to complete scope of work:  _170 hours to 180 hours_
Materials:  _$400.00_

Proposal Includes:

All materials guaranteed as specified and the above work performed in accordance with the drawings and specifications submitted for above work and completed in a substantial workmanlike manner for the sum of:

  _$9,150.00_    Dollars

Payment to be made as follows:
50% due at start of job.
50% due after drywall finish has been completed.
**Contract void after thirty (30) days of submittal.

Acceptance of Proposal:
The above prices, specifications, and conditions are satisfactory and are hereby accepted. You are authorized to complete this contract as specified. Payment will be made as outlined.

Date of Acceptance:_____

Signature:_____

Signature:_____

2013-07-30 02:34        Tracy Bury    561-748-5957 >>    18884650311                                    P 4/22



# Accurate Tile & Marble, Inc.

**2575 SE Federal Highway, Stuart, FL 34994**
Ph: (772) 220-8770    Fax: (772) 220-8772

## Proposal

| Date | Proposal # |
|------|-----------|
| 03/05/2013 | 10114 |

**Address**

Michael Bury Construction
19174 SE Fearnley Drive
Jupiter, FL  33469

| Location | Terms | Project |
|----------|-------|---------|
| 18896 Jupiter Inlet Way | 50% Deposit Required | Tequesta House |

| Description | Total |
|-------------|-------|
| • Intensive clean at all main area marble floors and bathroom floors to remove light scratches, etched marks and residue build up due to construction. To include sealing with 511 Impregnator. | 4,845.00 |
| • Removal, purchase and installation to repair broken pieces at the following areas:<br>Second Floor Stairwell Landing:  3 pcs<br>Garage hall:  3 pcs<br>Main Living Room:  2 pcs | 980.00 |
| • Labor and material to re-polish concrete floor at Garage are due to construction debris. | 1,800.00 |

Customer waives TCNA guidelines for expansion joints on finished floors.

| Total | $7,625.00 |
|-------|-----------|

Accepted By                                Accepted Date

# PROPOSAL

JJ KEANE FLOORING
2524 GENESSEE AVE
WEST PALM BEACH
FL 33409

PROPOSAL NO. [illegible]
SHEET NO. [illegible]
DATE [illegible]

PROPOSAL SUBMITTED TO:

NAME: MIKE BURY
ADDRESS: [illegible]
[illegible]
PHONE NO. [illegible]

WORK TO BE PERFORMED AT:

ADDRESS [illegible]
DATE OF PLANS [illegible]
ARCHITECT [illegible]

We hereby propose to furnish the materials and perform the labor necessary for the completion of [illegible]
[illegible]

[illegible] — 1600

[illegible] STAIRS — 1200
[illegible] STAIR [illegible] — 200

BURY PAYS

THE BUILDERS [illegible] — 1800
[illegible]
[illegible]

OFFICE FLOOR [illegible] — 760
[illegible]
OFFICE [illegible] — 600
ABRASIONS SAND AND FINISH

All material is guaranteed to be as specified, and the above work to be performed in accordance with the drawings and specifications submitted for above work and completed in a substantial workmanlike manner for the sum of FIVE THOUSAND TWO HUNDRED AND SIXTY Dollars ($ 5260 )

with payments to be made as follows: 1200
4060

Respectfully submitted [signature]

Per

Any alteration or deviation from above specifications involving extra costs will be executed only upon written orders, and will become an extra charge over and above the estimate. All agreements contingent upon strikes, accidents or delays beyond our control.

Note: This proposal may be withdrawn by us if not accepted within ____ days.

ACCEPTANCE OF PROPOSAL

The above prices, specifications and conditions are satisfactory and are hereby accepted. You are authorized to do the work as specified. Payment will be made as outlined above.

Signature ____________

Date of Acceptance: ____________ Signature ____________

2013-07-30 02:36          Tracy Bury    561-748-5957 >>    18884650311                                                P 6/22



April 16, 2013

Mike Bury
18896 Jupiter Inlet Way
Tequesta, Fl. 33469

Re: Service work request

Dear Mr. Bury

Thank you for request to have LaBella to repair the components for your kitchen cabinets and service your closet shelving. The two areas of the kitchen that were left incomplete are fixable. However, there is no guarantee that the finish can be matched exactly to the existing finish. Cherry wood naturally darkens with age and it is very difficult to match using new material.

Upon reviewing your closet shelving throughout the home, it is in my professional opinion that the quality of material furnished was inferior and flawed and does not qualify to the standards of even the most economical product available on the market. That coupled with substandard installation has caused a consistent repetition of the same problems with the shelving throughout the home. The edge banding is delaminating and damaged in several areas. Someone has previously tried to repair this but they were unsuccessful. The cam and post system used to assemble the shelving was forced to fit in several areas and the result is broken components. It is not easily replaced without dismantling the closet system entirely, ordering new parts and reassembling the closet shelving. Additionally the chance of finding this exact color match is very slim. It is a melamine veneer and without knowing the origination of manufacturer, there is no way to match the product.

I have attached a proposal that would bring the shelving back to a usable point. There is no guarantee the product will not have future problems. Please let me know if we can be of service to correct as best we can the issues at hand.

Respectfully

Greg Scirrotto
MGMR / Owner

3845 INVESTMENT LANE, STE. 1, WEST PALM BEACH, FL 33404
561-863-4966 - Fax 561-863-4956

2013-07-30 02:37        Tracy Bury    561-748-5957 >>    18884650311                                P 7/22



Home DESIGN

## Proposal

| Date: | 4/18/2013 | Designer | Greg Scirrotto | RT BURY | |
|---|---|---|---|---|---|
| Customer: | Mike Bury | | | | |
| Address: | 18896 Jupiter Inlet Way | | | | |
| City: | Jupiter Tequesta | State: Fl | | Zip: 33469 | |
| Phone: | | Fax: | | Cell: | |
| Contact | Mike Bury | | | Room: See list | |
| Job Name: | Bury | | | | |

| Item / Room | Description | Price |
|---|---|---|
| Kitchen Microwave Mask | Furnish and install matching microwave mask. Specie: Cherry. Finish: stain to match | $325.00 |
| Optional knee wall | Replace knee wall veneer, base molding and corner moldings | $1,270.00 |
| Closet shelving service | Service tech to repair, caulk and detail exisiting shelving.  Replace edge banding and damaged shelves. | $1,790.00 |
| | Note: Due to the nature of hardwoods and melamine veneers, LaBella cannot guarantee an exact match of the exisiting materials. | |

| Subcontractor Services | Cabinets | | $3,385.00 |
|---|---|---|---|
| | | | |
| | Sub Total | | $3,385.00 |
| | Service Labor | | $1,225.00 |
| | Total | | $4,610.00 |

**Special Notes**

Note: Due to the nature of hardwoods and melamine veneers, LaBella cannot guarantee an exact match of the existing materials.

3845 Investment Lane, Ste 1, West Palm Beach, FL 33404
WEB: 561-863-4966  FAX 561-863-4936  WWW.LABELLAHOMEDESIGN.COM

2013-07-30 02:37        Tracy Bury     561-748-5957 >>     18884650311                                      P 8/22



561-262-7718

May 20, 2013

# Proposal

To:

Bury Residence
18896 Jupiter Inlet Way
Tequesta, FL 33469

From:

Crown Custom Painting, Inc
3134 SE Orange Tree PL
Stuart, FL 34997

Detail of work:

Preparation Procedures:
1) Before any painting occurs, wall to wall carpet has to be removed in order to prep and paint the base boards throughout all rooms being repainted.
2) All ceiling fans and lighting (with the exception of high hats) need to be removed prior to painting.
3) All wood and tiled floors will be covered with heavy construction paper throughout the entire house.
4) All cabinetry and counters will be masked off in plastic and tape.
5) All windows will be masked off with plastic.
6) All electrical outlet covers will be removed and stored away for safety.
7) All railings will be covered.

Woodwork Painting Procedures:
1) All trim will be checked of nail holes improperly filled and corrected.
2) All trim (casings, crown molding, base boards, door and window casing, and doors) will be hand-sanded to remove the texture in the paint.
3) Repetitive coats of 'high-built' primer will be applied and periodically sanded with finer grits of sandpaper to create a smooth surface. The end result is to ensure that when the satin/semi-gloss enamel is applied it will have a uniformed sheen, as well as a, smooth appearance.
4) Multiple coats of satin/semi-gloss enamel will be applied, in between coats trim will be checked for smoothness and lightly sanded before the next coat is applied.

Walls and Ceilings Painting Procedures:
1) Walls and ceilings will be checked for deviations in surface by shining a high-powered spot lamp across the surface. Deviations will be filled and sanded to a uniformed surface.
2) All finished patches will be primed
3) Walls and ceilings will then be sanded in their entirety before painting.
4) All walls and ceilings will be painted by owner approved color and sheen

Total: $60,000.00

**Deposit 50%, mid-way 40%, final walk through balance 10%**
This proposal includes 40 hours of touchup; additional touchup will be $30.00 per man hour.

Partners On Design

385 Tequesta Drive Suite 5
Tequesta, FL 33469

# Estimate

| Date | Estimate # |
|------|------------|
| 5/10/2013 | 536 |

| Name / Address |
|----------------|
| Tracey Bury |
| 18896 Jupiter Inlet |
| Tequesta, FL 33469 |

| | Project |
|--|---------|
| | |

| Description | Qty | Rate | Total |
|-------------|-----|------|-------|
| Double Garage Doors/Repair & Faux To Match Existing Doors Process- Repair Damaged Doors From Staples, Bondo Areas Needed, Prime Base Coat & Faux. Final Step Acrylic Varnish. Start Date 5/27/13<br>60% Deposit Required | | 1,450.00 | 1,450.00 |

Please Make Check to Partners On Design

| | |
|--|--|
| **Subtotal** | $1,450.00 |
| **Sales Tax (0.0%)** | $0.00 |
| **Total** | $1,450.00 |

# Estimate

| Date | Estimate # |
|------|-----------|
| 5/8/2013 | 666 |

## ARTISAN-N-TRIM

P.O. BOX 2535
PALM CITY, FL 34991

**Name / Address**

BURY RES.

| | Lot Number/Project |
|--|--|
| | |

| Description | Cost | Total |
|-------------|------|-------|
| BURY RES.   18896 JUPITER INLET WAY  TEQUESTA FL. | 0.00 | 0.00 |
| LABOR AND MATERIAL TO REMOVE EXISTING  MDF CROWN IMPROPERLY INSTALLED PER CONTRACT "LIKE FOR LIKE" AND REPLACE WITH PRE PRIMED PINE CROWN MOLDING THAT WAS IN HOME PRIOR TO REMEDIATION. | 30,175.00 | 30,175.00 |
| LABOR PRICE TO INCLUDE MARBLE FLOORS TO BE COVERED WITH 4X8 MASSONITE SHEETS . | 0.00 | 0.00 |
| NOT RESPONSIBLE FOR DAMAGE TO DRYWALL OR PAINT. | 0.00 | 0.00 |

| **Total** | $30,175.00 |
|-----------|------------|

Signature

2013-07-30 02:37        Tracy Bury    561-748-5957 >>    18884650311                                                          P 11/22
        Mar.18.2013  10:00 AM                                                                PAGE.  1/  1

Jupiter Crown and Trim

5796 Urdea Road

Jupiter, Florida 33458

Estimate:

18896 Jupiter Inlet Way

Tequesta, Florida 33496

Scope of work:

Remove and replace blemished wood on stairs.

Materials................................................................................................ $657.00

Labor.................................................................................................$1250.00

TOTAL-------------------------------------------------------------------$1907.00

Thank You,

Jim Ghioto

Proposal                                                           Licensed and Insured
March 25, 2013                                                     State License #CFC1427312

# PG Plumbing, Inc
16216 90th St N
Loxahatchee, FL 33470
(561) 422-0777 Office
(561) 422-0777 Fax
(754) 224-4001 Mobile

We are pleased to submit the following proposal:

To:
Michael Bury Construction

Phone:

Fax/Email:
bigdadcornbread@aol.com

Job Name:
Private Residence

Job Location:
18896 Jupiter Inlet Way
Tequesta FL

Alterations and/or specifications are as follows:

Miscellaneous:
- ☑ Uncross hot and cold at island sink in kitchen
- ☑ Hook up refrigerator lines
- ☑ Replace cartridge at Jack and Jill tub valve as there is no water
- ☑ Install new faucet at morning sink master bathroom
- ☑ Replace hoses at master bathroom bidet
- ☑ Replace guts at master bathroom toilet
- ☑ Laundry tub drain improperly installed, reinstall properly

Materials will be "M" copper with PVC throughout for drain, waste and vent piping. All extras and change orders will be charged on a time and material basis. Proposal is valid for 30 days. All work performed in accordance with Florida Plumbing Codes. *Permit fee not included.* Plumber is not supplying fixtures.

PG Plumbing, Inc. proposes to furnish labor and material to complete in accordance the above agreement for the sum of: **$1,410** due in the following payment schedule: **100% ($1,410.00)** due upon completion.

_____            Acceptance of Proposal: _____
Patrick Greichen, Owner            Date of Acceptance: _____



**Deck & Drive, Inc.**
611 NE 3rd Street
Boynton Beach, FL 33435
561-789-1814 Cell
561-733-0115 Fax



www.deckanddrive.com
Lic. # CBC1255298

Date: 3/19/13                                        Proposal # 8152
**Submitted To:**                                    **Job Address:** 18896 SE JUPITER
Michael Bury Construction                            Same               INLET WAY
19174 SE Fearnley Drive                                                 TEQUESTA, FL
Jupiter, FL 33469                                                       33469
561-693-8795 Cell
bigdadcornbread@aol.com

---

**Description:**

DRIVEWAY, WALKWAY & FRONT ENTRY (approx. 1,410 sq. ft.)

1. Remove existing pavers due to damage from dumpster & construction.
2. Supply & install new replacement pavers similar to existing for driveway, walkway & front entry.
3. Supply & install approx. 7 ln. ft. of paver step.
4. Apply acrylic sealer to driveway, walkway & front entry pavers

   Notes:
   a. Existing pavers cannot be matched due to dye lot differences. Driveway, walkway & front entry pavers need to be replaced for those areas to look & be in the same condition as before the damage was done.
   b. Pavers may be walked on 2 hours after sealer application.
   c. Pavers may be driven on 24 hours after sealer application.
   d. Sprinklers should be turned off during clean & seal process.

Dennis Hines, President
Deck & Drive, Inc.

---

**Total: $6,080.00**

Scope of work includes only item(s) listed above.
Deck & Drive, Inc. is not responsible for underground utilities, irrigation or landscape.

Payment Due: 1/3 Deposit & balance due upon completion.
The above prices and specifications are hereby accepted.

Signature_____     Date_____



**Deck & Drive, Inc.**
611 NE 3rd Street
Boynton Beach, Fl. 33435
561-789-1814 Cell
561-733-0115 Fax



www.deckanddrive.com
Lic. # CBC1255298

Date: 3/19/13                                                            Proposal # 8153
**Submitted To:**                                                  **Job Address:**
Michael Bury Construction                                  Same
19174 SE Fearnley Drive
Jupiter, FL 33469
561-693-8795 Cell
bigdadcornbread@aol.com

---

**Description:**

---

FRONT ENTRY & WALKWAY DESIGN (approx. 200 sq. ft.)
  1. Remove existing pavers in walkway & front entry area as necessary.
  2. Supply & install custom design in walkway & front entry.
  3. Apply acrylic sealer to walkway & front entry pavers

  Notes:
  a. Pavers may be walked on 2 hours after sealer application.
  b. Sprinklers should be turned off during clean & seal process.


Dennis Hines, President
Deck & Drive, Inc.

---

**Total: $1,625.00**

Scope of work includes only item(s) listed above.
Deck & Drive, Inc. is not responsible for underground utilities, irrigation or landscape.

---

Payment Due: 1/3 Deposit & balance due upon completion.
The above prices and specifications are hereby accepted.

Signature_____ Date_____

*Left message 2-4 8*

## American - Palm Beach Garage Door Corporation

4675 Dyer Blvd., West Palm Beach, FL 33407
**1 (561) 844-6516**

### SERVICE ORDER

TO: *[handwritten, illegible]*
*[handwritten, illegible]*
*[handwritten, illegible]*

Needs *[illegible]* estimate on fixing
*[illegible handwritten text]*
*[illegible handwritten text]*
*[illegible handwritten text]*
*[illegible]*.                    *PAID VISA*

John 3-21-13
Small Door - Replaced Sensors - broken off
taped off with electrical tape

Big door -
Rail on opener is bent  Example L - 8ft        bolt  48
Has staples in header board - damaged          80
3rd and 4th sections - cloping long panel      128
14 x 18                                        MAR 3/21

SIGNATURE: *Mike Bury* *[illegible handwritten text]*

Signature constitutes acceptance of above service performed as being satisfactory- and that equipment has been left in good condition.

**GUARANTEE:** All materials used are of first quality and guaranteed for thirty days after date of repair.
Service by qualified technicians only.

THERE WILL BE A 1 1/2% PER MONTH OR AN EFFECTIVE RATE OF 18% PER YEAR CARRYING CHARGE
ON ALL PAST DUE INVOICES. THE CARRYING CHARGE WILL BE COMPUTED MONTHLY AND ADDED TO
YOUR STATEMENT. IF SELLER SUBMITS THIS INVOICE TO AN ATTORNEY FOR COLLECTION, THE CUS-
TOMER AGREES TO PAY ALL COLLECTION EXPENSES, INCLUDING REASONABLE ATTORNEY FEE AND
COURT COSTS.

## *California Designs, Inc.*
### *California Hardwood Shutters*

Showroom
12800 U.S. Highway One, Suite 110
Juno Beach, Florida 33408

(561) 625-5250 • Fax: (561) 625-8923
www.californiadesigns.com

| NAME / ADDRESS | PROPOSAL |
|---|---|
| Bury, Michael<br>18896 Jupiter Inlet Way<br>Tequesta, Fl. | |

| | DATE |
|---|---|
| | 3/13/2013 |

| PROJECT | PRODUCT |
|---|---|
| | Custom Shutters |

| DESCRIPTION | TOTAL |
|---|---|
| HUNTER DOUGLAS NEW STYLE HYBRID SHUTTERS | |
| | |
| All opening priced below have panels that are sagging and some louvers that are bowed. These panels appear to be slightly swollen and weak at the joints between the styles and top ands bottom rails, possible due to heat during storage.  There is no fix for these issues. | |
| | |
| All openings are three sided inside mounted L Frames with sill plates. | |
| | |
| Den<br>  Two windows joined at angle with four panels.<br>Price --- installed | 805.00 |
| Master Bath<br>  Two windows joined at angle with four panels.<br>Price --- installed | 670.00 |
| Master Bedroom<br>  One opening to get two panels.<br>  Two openings to get one panel each.<br>Price -- installed | 990.00 |
| | |
| TOTAL | 2,465.00 |
| 50% DEPOSIT, BALANCE DUE UPON COMPLETION OF INSTALLATION | |

**TOTAL** $2,465.00

TOTAL P.002

March 12, 2013



**BEACON**
**GLASS CO. INC.**
*Your Job Is Our Reputation*

#U-18492

Mike Bury Construction
FAX: 888-465-0311

Job: Emerald Key

We are pleased to provide the following quote:

*Supply and Install:*

| | |
|---|---|
| Replace mirror due to incorrect fit | |
| Master | $ 157.00 |
| Guest | $ 542.00 |

*Notes:*
1) Price includes tax and labor.
2) Price firm for 30 days.
3) 50% deposit (check or cash) required; balance due upon completion.

Thank you.

*Don Sirum*
Don Sirum

FAXED

620 NORTH OLD DIXIE HIGHWAY • JUPITER, FLORIDA 33458-4988 • (561) 746-1293 • FAX (561) 575-0561

# CALIFORNIA CLOSETS
## PURCHASE ORDER & CONTRACT

532 NW Mercantile Pl., Unit 108
Port St. Lucie, 34986
800.262.1503
772.785.8885
FAX: 561.277.2575

| | | | | | | |
|---|---|---|---|---|---|---|
| Customer Name: | **Mike Bury** | | | | | |
| Billing Address: | | | | | | |
| Subdivision | | | | Date: | | 21-Mar-13 |
| City, State, Zip: | | | | Designer: | | Kelly |
| Customer Cell: | | | | Install Date: | | |
| Customer Home: | | | | **Job Number:** | | 14597 |

| Description | Finish | Shelf | Hardware | Door/Drawer | Amount |
|---|---|---|---|---|---|
| **Her Master Walk-in** | Hardrock Maple | Standard | Br. Chrome | Captiva | $ 5,432.00 |
| **His Master Walk-in** | Hardrock Maple | Standard | Br. Chrome | Captiva | $ 5,363.00 |
| **Master Linen** | White | Standard | Br. Chrome | | $ 377.00 |
| **REPLACEMENT COST FOR MASTER CLOSET | | | | | $ |
| DAMAGED MATERIAL DUE TO | | | | | $ |
| SUBSTANDARD WOORKMANSHIP** | | | | | $ |
| ***REPLACEMENT OF LINEN IN | | | | | $ |
| ORGINAL FINISH, INCORRECT | | | | | $ |
| MATERIAL INSTALLED*** | | | | | $ |
| | | | | | $ |
| | | | | | $ |
| | | | | | $ |
| Is Install Address Same as Billing? | | | | | $ |

| | | | | |
|---|---|---|---|---|
| Installation Address: | 18896 Jupiter Inlet Way | Sub Total | $ | 11,172.00 |
| Subdivision: | Emerald Isles | | | |
| City, Zip: | Tequesta, FL  33469 | **Total** | **$** | **11,172.00** |
| Contact Name: | | Deposit | $ | 5,586.00 |
| Contact Number: | | 25% Due | | |
| Payment Method: | | First Day of Installation | $ | - |
| Number: | | Balance Due | | |
| Billing Address: | | At Installation | $ | 5,586.00 |

Property Built Prior to 1978?

| | |
|---|---|
| This proposal is void if not accepted by the Customer prior to: | **20-May-13** |

### Customer Acknowledgement

Upon the Standard Terms and Conditions described herein and attached as page 2, California Closets, (the Seller) proposes to furnish all materials, labor, equipment and supplies, except for painting, necessary to design and install customized closet(s) or other storage devices as detailed in the signed and approved plans which form a part of this contract. By signing this form below, the Customer accepts that this agreement and the terms contained herein along with the attached approved drawings shall be binding on the Customer and the Seller.

**The customer acknowledges that they are purchasing a customized, cut-to-order system, therefore, any changes in plans or design, or cancellation of the job by the customer after three days, may result in charges for already manufactured or ordered materials. Any change of the installation date by the customer must be made three (3) working days prior to the scheduled date. A surcharge of 10% of the total agreed price will result if less than three (3) working days notice has been given.**

**HOMES BUILT PRIOR TO 1978 MAY CONTAIN LEAD PAINT, OUR INSTALLERS ARE NOT PERMITTED BY EPA RENOVATING, REPAIR AND PAINTING FINAL RULE - 40 CFR 745, TO REMOVE ANY EXISTING MATERIAL OR REPAIR ANY PAINTED AREAS OF YOUR HOME. THIS MUST BE DONE BY AN EPA CERTIFIED COMPANY.**

I give California Closets permission to use any before/after pictures of my installation, my name, home city and state on their testimonial page. I understand that no other personal information will be used or shared with any other parties. I would also like to receive email updates about California Closets products, events, & promotions.

**ALL AREAS MUST BE EMPTY AND CLEARED OF ALL PERSONAL ITEMS PRIOR TO INSTALLATION.**
**OUR INSTALLERS ARE NOT ALLOWED TO HANDLE OR MOVE YOUR PERSONAL BELONGINGS.**

Customer Approval:_____   _____ Date:_____

Customer Approval:_____   _____ Date:_____

## ProdAssist

| | |
|---|---|
| **From:** | bigdadcornbread@aol.com |
| **Sent:** | Thursday, January 31, 2013 11:50 PM |
| **To:** | michelle@schrappers.com |
| **Cc:** | twhiddon@leopold-law.com; tracy.bury@ge.com |
| **Subject:** | Knob Photo |
| **Attachments:** | IMG_7513.jpg; text_0002.txt |

Hi Michelle,

Per our conversation today, I went to get you a photo of the round knob. I brought you the elongated handle in previously. As you can see the handle has pitting. Here is the count at the kitchen.

1. Long handle 20
2. Round handle in pictures 35

The Paralegal Tatum will be contacting you for the information.

Tatum Michelles information is as follows:

Michelle Egan
Email: michelle@schrappers.com
Phone 561-746-3827

Thank you both for your assistnce in this matter

Mike Bury
——Original Message——
From: 5616938795 <5616938795@vzwpix.com>
To: bigdadcornbread <bigdadcornbread@aol.com>
Sent: Thu, Jan 31, 2013 11:18 pm

*(Handwritten annotations:)*
— M758  $9⁸⁰ = 196
— M768  — 11.60  $406
$638¹²  tax
15⁰⁰  shpg
$653¹²

MIKE BURY—WAGNER
18896 Jupiter
Inlet
Way

1

2013-07-30 02:39      Tracy Bury    561-748-5957 >>    18884650311                                    P 20/22

**Leaf Lighting**
14125 U.S. 1
Juno Beach, Florida (FL)
33408
561-622-7087
561-622-6552

Date      11/8/2006
Invoice   J4449

Bill To:

dobbins, JOE
262 7899

Ship To:

PO No.

| Ordered | Shipped | Item Number | Description | Price | Total |
|---|---|---|---|---|---|
| | | | **label all boxes** | | |
| 1 | 1 | 5DS52RB | FAN MOTOR MEDIA rm | 100.00 | 100.00 |
| 2 | 0 | BAHAMA BENT 36 INCH | CUSTOM FOR DS MOTOR (outdoor | 495.00 | 990.00 |
| 2 | 1 | 5CY60OC | 60" WET RATED OUTDOOR | 299.00 | 598.00 |
| 1 | 1 | BAHAMA BENT 36 INCH | CUSTOM FOR DS MOTOR (80 IMEDIA | 495.00 | 495.00 |
| 1 | 1 | 5GP60RB | 60" INDOOR MOTOR living rm | 200.00 | 200.00 |
| 1 | 1 | BAHAMA BENT 40 INCH | CUSTOM FOR GRAN PRIX MOTOR (90INCHES-living rm | 595.00 | 595.00 |
| 2 | 0 | 5GP60RB | 60" INDOOR  spare bedrms | 200.00 | 400.00 |
| 2 | 1 | 5DS52RB | FAN MOTOR  office/master | 100.00 | 200.00 |
| 2 | 0 | BAHAMA BENT 36 INCH | CUSTOM FOR DS MOTOR (80 INoffice/master | 495.00 | 990.00 |

*plus Install 33' up*

11/8/2006    Visa           $4,864.92

| | |
|---|---|
| Sub Total | $4,568.00 |
| Sales Tax 6.50% | $296.92 |
| Total | $4,864.92 |
| Paid | $4,864.92 |
| Balance | $0.00 |

2013-07-30 02:39     Tracy Bury   561-748-5957 >>   18884650311                                      P 21/22

PROJECT: WAGNER
DATE: 5/23/06

## LIGHTING SCHEDULE

| ROOM | LIGHTING | QUANTITY | STORE # FINISH | LIST Per | TOTAL | ITEM QUOTE | QUOTE FINAL |
|---|---|---|---|---|---|---|---|
| Dining Room | Avalon 37"w x 32"h 12 Cand base | 1 | 216192 | $ 609.99 | $ 609.99 | 487.99 | 487.99 |
| Dining Room Sconce | Minka Folio 21, 22 1/4"H | | *1281-357 Iron Oxide | | | | |
| Breakfast Niche | Avalon 25.25"w x 19.5"h 6 Cand base | 1 | 61984 | 369.00 | $ 369.00 | 295.99 | 295.99 |
| Master Bath | Minka Destinations chandelier Aspen bath | 1 | 55184 Cognac patina | 160.00 | $ 160.00 | 303.99 | 303.99 |
| Master Bath Vanities | Minka Destinations 3 light bath Aspen bath | 2 | 55202 Cognac patina | 189.00 | $ 378.00 | 151.99 | 303.98 |
| Master Foyer | Minka Lineage Semi Flush | 1 | 993664 Iron Oxide | 160.00 | $ 160.00 | 247.99 | 247.99 |
| Above spiral stairs | Minka Lineage Semi Flush | 1 | 993664 Iron Oxide | 160.00 | $ 160.00 | 247.99 | 247.99 |
| Kitchen Island | Quoizel Kool Kitchens Bistro Island 2 light | 1 | 706841 Malaga | 340.00 | $ 340.00 | 271.99 | 271.99 |
| Kitchen Bar | Quoizel Kool Kitchens pendant | 3 | 706102 Malaga | 94.99 | $ 284.97 | 75.99 | 227.97 |
| Entryway | Kalco Tribecca 12 lights | 1 | 37021 Copper claret | 2,519.99 | $ 2,519.99 | 2015.99 | 2015.99 |
| Stairway | Kalco Tribecca 6 lights | 1 | 234490 Copper claret | 1,519.99 | $ 1,519.99 | 1215.99 | 1215.99 |
| Other Bath Vanities | Murray Feiss Tuscan Villa collection 3 light | 4 | 936905 | 149.00 | $ 596.00 | 119.99 | 479.96 |
| | Murray Feiss - Pg. 92 "Murray Feiss Little | Confirm | | | $ 7,917.91 | | |
| Living Room Sconces | Black Book", W81720 ORB | 4 | Confirm   Oil Rubbed Bronze | 100.00 | $ 400.00 | 67.99 | 271.96 |
| Outside lights | Trisyn dome 10"w x 20"h | 3 | 757772 | 139.99 | $ 419.97 | 111.99 | 335.97 |
| Outside Foyer | Trisyn Matching hanging entry drop down | 2 | Confirm | | | | 479.96 |
| | | | | | tax | | 427.47 |
| | | | | | TOTAL | | 6707.76 |

| ALTERNATES | LIGHTING | QUANTITY | STORE # FINISH | LIST Per | TOTAL | | |
|---|---|---|---|---|---|---|---|
| Outside lights | Kichler 3 light 33"h coat alum OR | 3 | 511977 | $ 479.00 | $ 1,437.00 | | |

KEY:
* Match finishes as closely to Bronze/Cognac patinas



| Item Number: | **TRO-B9221OR** |
|---|---|
| Manufacturer: | **Troy Lighting** |
| Department: | **Wall Sconces** |
| Category: | **Up Light** |
| Style: | **Wrought Iron** |
| Family: | **Avalon** |
| Finish: | **Old Rust** |
| Shade: | **Antique White** |
| Size: | **8" high x 5" wide x 7" ext.** |
| Bulbs: | **Requires (1) 60 watt Candelabra Base** |
| Item Detail: | **Hand-forged Iron** |
| Price: Retail $111.00 | **Our Price $74.00** |



+ installation

# EXHIBIT "D"

**Patrice Symons**

| | |
|---|---|
| **From:** | Gregory Weiss |
| **Sent:** | Friday, November 22, 2013 2:07 PM |
| **To:** | 'Guy Reese' |
| **Cc:** | 'Lenny Davis'; Chris Krause; Patrice Symons |
| **Subject:** | RE: Wagner Walkthrough confirm |

Thanks for the email. The clients will be there with their personal lawyer, but I will not be there. I am sure you have looked through the file and understand that there have been other walkthroughs that have not resulted in an outcome that was satisfactory to the clients. My hope is that we can close out all that we can close out, as quickly as possible. Thanks.

Greg

**From:** Guy Reese [mailto:GReese@mossemail.com]
**Sent:** Friday, November 22, 2013 1:47 PM
**To:** Gregory Weiss
**Cc:** 'Lenny Davis'; Chris Krause
**Subject:** Wagner Walkthrough confirm

Greg,

This is to confirm the Wagner walkthrough next Monday, November 25 at 2 pm at the residence.

Given the previous correspondence between our team and the homeowners, there may be a few points of contention that we disagree on, but we will be sure to have the documentation available to justify our position. If we can make a few things work on our end to appease them, we will certainly be sure to try and help them within reason.

Please be sure the homeowners will be present to discuss our action plan and what we feel is our responsibility to correct.

*Thanks,*

*Guy Reese*
*Vice President* | **Moss & Associates**
o (954) 769-8136 | m (954) 868-9838 | f (954) 524-5677
2601 N. Andrews Ave., Suite 500, Fort Lauderdale, FL 33311

1

**Patrice Symons**

| | |
|---|---|
| **From:** | Patrice Symons |
| **Sent:** | Tuesday, November 19, 2013 9:32 AM |
| **To:** | 'Zach Tapley'; Gregory Weiss |
| **Cc:** | Guy Reese; Chris Krause; Alex Rodriguez |
| **Subject:** | RE: Chinese Drywall MDL 2047 re Meetings with Moss (WAGNER) |
| **Attachments:** | 7-28-13 Ltr from client to Moss.pdf |

Dear Zach,

Attached please find a copy of Tracy Wagner's 7/28/13 letter sent to Moss, detailing the issues that need to be addressed.  **Additionally, Ms. Wagner said that your subcontractor pointed out that the door handles on the entry way door are completely corroded and need to be replaced.**

Thank you.

**Patrice Symons, Paralegal to Gregory S. Weiss, Esq.**
psymons@mrachek-law.com



**505 South Flagler Drive, Suite 600**
**West Palm Beach, Florida 33401**
**561.655.2250 Phone**
**561.655.5537 Fax**

CONFIDENTIALITY NOTE:  THE INFORMATION CONTAINED IN THIS TRANSMISSION IS LEGALLY PRIVILEGED AND CONFIDENTIAL, INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU RECEIVE A COPY OF THIS COMMUNICATION IN ERROR, PLEASE *IMMEDIATELY* (1) REPLY BY E-MAIL TO US. AND (2) DELETE THIS MESSAGE.

TAX DISCLOSURE NOTE:  To ensure compliance with requirements imposed by the Internal Revenue Service (Circular 230), we inform and advise you that any tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of (1) avoiding penalties that may be imposed under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any transactions or matters addressed herein.

**From:** Zach Tapley [mailto:ztapley@mossemail.com]
**Sent:** Tuesday, November 12, 2013 2:59 PM
**To:** Gregory Weiss
**Cc:** Patrice Symons; Guy Reese; Chris Krause; Alex Rodriguez
**Subject:** FW: Chinese Drywall MDL 2047 re Meetings with Moss
**Importance:** High

Good Afternoon Greg,

We have been made aware that your clients Tracy Wagner and Daniel Toth have been scheduled for the PSC meetings on the 21st of this month.  Can you please provide information on the issues which your clients wish to address in these meetings.  This information would be greatly appreciated.

Respectfully,

**Zachary Tapley**
*Project Engineer*| **Moss & Associates**
o (954) 769-8112  | f (954) 563-8681 | m (561) 400-2949

---

**From:** Chris Krause
**Sent:** Tuesday, November 12, 2013 2:42 PM
**To:** Zach Tapley
**Cc:** Guy Reese
**Subject:** FW: Chinese Drywall MDL 2047 re Meetings with Moss


Can you see what the agenda is for Toth and Wagner?

Chris Krause
Senior Project Manager | **Moss & Associates**
o 954-524-5678 | m 305-582-7235 | f 954-524-5677

---

**From:** Kate Robinson [mailto:krobinson@hhklawfirm.com]
**Sent:** Tuesday, November 12, 2013 12:21 PM
**To:** Phil Adams; Guy Reese; Chris Krause; Kerry Miller (kmiller@frilot.com); 'Spaulding, Kyle' (kspaulding@frilot.com)
**Cc:** Lenny Davis; Lillian Flemming
**Subject:** FW: Chinese Drywall MDL 2047 re Meetings with Moss

Please see below.  Mr. Weiss is scheduled for 12:30 p.m. by telephone.  I will forward the additional information when it is received.

---

**From:** Patrice Symons [mailto:PSymons@mrachek-law.com]
**Sent:** Wednesday, November 06, 2013 2:33 PM
**To:** Kate Robinson
**Cc:** Gregory Weiss
**Subject:** FW: Chinese Drywall MDL 2047 re Meetings with Moss

Dear Kate,

We have two clients who would like to participate in the November 21st meetings.  Would they be permitted to attend by phone, or must they travel to New Orleans?

Client:  Tracy Wagner
Affected property address:  18896 SE Jupiter Inlet Way, Tequesta, Florida 33469


Client:  Daniel Toth

2

<u>Affected property address</u>: 11039 Mueller Road, Fort Pierce, Florida 34945

I look forward to hearing back from you.

**Patrice Symons, Paralegal to Gregory S. Weiss, Esq.**
psymons@mrachek-law.com



MRACHEK
FITZGERALD
ROSE
KONOPKA
& DOW, P.A.

T R I A L   L A W Y E R S

**505 South Flagler Drive, Suite 600**
**West Palm Beach, Florida 33401**
**561.655.2250 Phone**
**561.655.5537 Fax**

<u>CONFIDENTIALITY NOTE</u>:  THE INFORMATION CONTAINED IN THIS TRANSMISSION IS LEGALLY PRIVILEGED AND CONFIDENTIAL. INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU RECEIVE A COPY OF THIS COMMUNICATION IN ERROR, PLEASE *IMMEDIATELY* (1) REPLY BY E-MAIL TO US, AND (2) DELETE THIS MESSAGE.

<u>TAX DISCLOSURE NOTE</u>:  To ensure compliance with requirements imposed by the Internal Revenue Service (Circular 230), we inform and advise you that any tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of (1) avoiding penalties that may be imposed under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any transactions or matters addressed herein.

**From:** Kate Robinson [mailto:krobinson@hhklawfirm.com]
**Sent:** Monday, November 04, 2013 3:12 PM
**To:** 'Allison Willett'; Andrew Cross (across@careydanis.com); Booth Gordon Samuels (booths@pittmandutton.com); Bruce Rogow (rogowb@nsulaw.nova.edu); 'Carolina Suarez'; Chris Seeger; Cindy St. Amant (C.StAmant@kanner-law.com); David Maglich (dmaglich@fergesonskipper.com); 'Dennis Reich'; Don Russo (DRusso@RussoPa.com); 'Donahue Roshawn'; 'Edward Rowan'; 'Erik Szabo'; 'Greg Vaughn'; Gregory Weiss; 'J.E. Cullens, Jr.'; Jamie Sanders (jamie@esw-law.com); 'Jason Smith'; 'Jean Hummel'; Josh Palmintier (jpalmintier@dphf-law.com); Karen S. McInnis (ksmcinnis@mcinnislawfirm.com); Kirk A. Patrick III (kpatrick@dps-law.com); Manuel Robert Comras (mrc@bclmr.com); 'Margaret Sunkel'; 'Mark Milstein'; Michael Flannery (mflannery@cuneolaw.com); 'Michael Long'; Mike Ryan (mryan@krupnicklaw.com); 'Natalie Rico'; 'Pete Albanis'; 'Rebecca Vaccariello'; Richard Serpe ; Richard W. Stimson (Rick.Stimson@comcast.net); Rick David Kriseman (rick@saunderslawyers.com); 'Rick Kriseman'; 'Robert Brown'; 'Robert C. Hilliard'; Robert J. Diliberto (diliberto@attorneys-louisiana.com); Robert K. Shelquist (rkshelquist@locklaw.com); Roberta Burns (rburns@torres-law.com); Roger E. Bloomfield (bloomfield_law@att.net); Russ Copeland (russ@citrinlaw.com); Ryan L. Thompson (rthompson@wgclawfirm.com); 'Ryan Scafidel'; 'Salvador Christina'; Sarah B. Dorger (sdorger@briskman-binion.com); Scott C. Harris (sch@lewis-roberts.com); Scott M. Galante (scott@gb-lawfirm.com); Scott R. Bickford (usdcedla@mbfirm.com); Scott W. Weinstein (sweinstein@forthepeople.com); Seth Smiley (seth@wolfelaw.com); Shelly Sanford (ssanford@sanfordbarlow.com); Stephen Skelly Kreller (ssk@krellerlaw.com); Steve Herman; 'Steve W. Mullins'; 'Stuart Barasch'; Tara Gilbreath (tgilbreath@gainsben.com); Thomas Allen Usury (ausry@uwmlaw.com); Thomas Pollard Diaz (tpdiaz@liskow.com); Thomas W. Busby (twb@rmlawcall.com); Timothy DePaula (tdepaula@mrsnola.com); Tom W. Thornhill (tom@thornhilllawfirm.com); Tonyn Melnichenko (melnichenko@fdazar.com); Travis R. Walker (traviswalker@traviswalkerlaw.com); Troy Rafferty (trafferty@levinlaw.com); W. Brian Collins (brian@collinsdowney.com); Walter Antin (bantin@bellsouth.net); William Anderson (wanderson@cuneolaw.com); Willie James Singleton (wjsingleton@singletonlaw.com); gev@holstonvaughan.com;
**Cc:** Lenny Davis; Vickie Lory; Lillian Flemming
**Subject:** Chinese Drywall MDL 2047 re Meetings with Moss

FROM: LEONARD A. DAVIS

Moss has advised that they are willing to meet on November 21 following the status conference with any counsel who would like to discuss issues regarding the remediation of homes. Furthermore, Knauf has advised that they too will participate in the meetings and will also address already remediated properties if there are outstanding issues. The goal of the meeting would be to try to resolve any disputes. Should you desire to schedule a meeting please let me know and we will prepare a calendar scheduling meetings at various time intervals immediately following the status conference. If you would like a meeting it will be essential for you to respond to this email by providing the following information:

1. Name of client
2. Affected property address
3. A listing of any issues to be discussed
4. If there is a dispute that has been ongoing please provide backup correspondence so we can share it with Moss and Knauf in advance of the meeting

Please let us hear from you within the next two weeks so we can begin scheduling meetings.

**Kate Robinson**
Legal Assistant to Leonard A. Davis
and Adam H. Weintraub
Herman, Herman & Katz, LLC
Herman Gerel, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
504-581-4892
504-561-6024 (fax)
krobinson@hhklawfirm.com
www.hhklawfirm.com

**PLEASE NOTE THAT MY E-MAIL ADDRESS HAS CHANGED.  PLEASE UPDATE YOUR CONTACT INFORMATION ACCORDINGLY.**

# CONFIDENTIAL ATTORNEY WORK PRODUCT

This e-mail message contains confidential, privileged information intended solely for the addressee.  Please do not read, copy, or disseminate it unless you are the addressee.  If you have received it in error, please call us (collect) immediately at (504) 581-4892 and ask to speak with the message sender.  Also, we would appreciate your forwarding the message back to us and deleting it from your system.  Thank you.

 Please consider the environment before printing this e-mail

CONFIDENTIAL ATTORNEY WORK PRODUCT
This e-mail message contains confidential, privileged information intended solely for the addressee.  Please do not read, copy, or disseminate it unless you are the addressee.  If you have received it in error, please call us (collect) immediately at (504) 581-4892 and ask to speak with the message sender.  Also, we would appreciate your forwarding the message back to us and deleting it from your system.  Thank you.

CONFIDENTIAL ATTORNEY WORK PRODUCT
This e-mail message contains confidential, privileged information intended solely for the addressee.  Please do not read, copy, or disseminate it unless

you are the addressee.  If you have received it in error, please call us (collect) immediately at (504) 581-4892 and ask to speak with the message sender.  Also, we would appreciate your forwarding the message back to us and deleting it from your system.  Thank you.

**Patrice Symons**

| | |
|---|---|
| From: | Guy Reese <GReese@mossemail.com> |
| Sent: | Wednesday, December 04, 2013 1:52 PM |
| To: | Gregory Weiss |
| Cc: | Patrice Symons; Lenny Davis; mark@markgreenberglaw.com; Chris Krause; Michael Gonzalez; Guy Reese |
| Subject: | Wagner home - Moss response to H/O requests |
| Attachments: | Residential Construction Performance Guidelines.xls |

Greg,

See our responses to the open issues within the Wagner home that was addressed during an inspection with the Wagner family and their personal attorney (Mark Greenberg) Monday, November 25 at 2:00 pm.

Please refer to the attached *Home Builder's Residential Construction Performance Guideline* that can bring some clarity to our position on some of the items and how the industry views an acceptable level of quality within the home. We have tabled this document with the Ombudsman as a source to draw on when opinions about obtaining an acceptable level of finish with certain items becomes subjective between the interested parties.

We offer the following:

- Drywall finish throughout the home – one of the larger points of contention in the home as evidenced by the homeowner provided punch notes and comments offered during the walkthrough. Our position is that the level of finish (standard Level 4), along with several attempts to punch the walls / ceilings to make the Wagner's pleased with the finish product, is an acceptable level of finish. The Wagner's commented on several occasions to look at certain areas from specific standing positions with natural light in the background to supplement their concerns. We stand behind the Performance Guideline notation for drywall texture that "any variations that are readily visible from a standing position facing the surface at a distance of **six (6) feet under normal lighting conditions** are considered excessive." Moss does not see any issues with the walls in its current condition and also challenges that the finish product far exceeds the existing condition of the wall texture when the home was handed over to Moss at the start of remediation. Moss has documentation that supports our position that the home had an "orange peel" texture and now has a smooth wall finish, which exceeds the "like-for-like" remediation requirements. No further action is necessary.

- Paint sheen / crown mold material – paint selections were provided by the homeowner that determined through the finish selection process (high-gloss Benjamin Moore paint specified) and was documented with the homeowner stating the change. MDF crown mold (not the original material) was necessary to provide the proper finish to obtain high-gloss sheen on the molding material. Brush marks were also questioned from looking at certain sections from varying positions that allowed natural light on the section in question. Moss feels that the finish product exceeds the "like-for-like" remediation requirements, with an upgrade in value with the high-gloss sheen, and sees no issues with the crown mold material or the finished look. The brush strokes cannot be determined by being "viewed from a standing position facing the surface at a distance of **six (6) feet under normal lighting conditions**" per the Performance Guidelines. No further action is necessary.

- Front entry door hardware – Moss agrees that the door hardware should have been replaced during the remediation of the home and will provide a credit to the homeowner to replace the hardware. (credit value: $2,500)

- Kitchen cabinet panel / closet laminate repair – Moss agrees to the repairs to the millwork items noted in the kitchen and master closet that were demonstrated at the walkthrough and will provide a credit to the homeowner to replace the items. (credit value: $250)

- Tile floor finish / polishing of floors – the tile floors are a tumbled stone which has a physical property of a pitted surface that contains a natural, earth tone to the floor with a "honed" or "matted" finish to the floor. Moss feels that the floor has been returned in acceptable condition as it was received at the start of remediation and has documentation to support the position. No further action is necessary.

1

- <u>Vanity bath lighting fixtures</u> – Moss agrees to the replacement of damaged lighting fixtures and <u>will provide a credit to the homeowner to replace the fixtures per the pricing sheet provided by the homeowners.</u>  (credit value:  $700)

- <u>Ceiling fan replacement</u> – the ceiling fans in question were reset <u>per the remediation protocol established in the bid scope and Moss has the documentation to support the position.</u>  No further action is necessary.

- <u>Garage door scuffs / dents</u> – repairs to the outer garage doors were not noted in the original punchlist walkthrough, however, <u>Moss will agree to provide a credit to refinish the faux finish on the garage panel that was apparently scuffed.</u>  (credit value for Faux finish: $800)

- <u>Refinish wood floor area</u> – Moss provided the necessary <u>protection to the wood floors as per the remediation protocol established in the bid scope and returned the floors in their original condition.</u>  Documentation was taken to support this position.  No further action is necessary.

- <u>Wet bar sink fixture and water dispenser does not match</u> – Moss has documentation to support that these fixtures were replaced as they were received and has the documentation to support the position.   No further action is necessary.

- <u>Paver scuffs at driveway</u> – Homeowner contends that proposed fix to reverse the tile is unacceptable due to the disparity in color and has requested a complete replacement of the driveway.  This can be corrected by performing a pressure cleaning / re-sealing of the pavers to give them a uniform appearance.  <u>Moss will offer a credit to pressure clean and re-seal the pavers</u>  (credit value:  $850)

- <u>Kitchen appliances (double oven / warming drawer)</u> – the appliances in question were not in the initial protocol (reset items) and are not covered in the standard one (1) year warranty package that replaced items received in standard sized homes.  <u>Moss contends that this is a non-issue per the protocol of the settlement agreement, but will offer a credit to the homeowner to replace the items in an effort to assist in turning the home over and appease the Wagner family.</u>  (credit value:  $8,000)

- <u>Delivery of the home</u> – the Wagner's also mentioned some confusion on their part as to the timeliness and delivery of the home, as they feel it was delivered several months past the due date it was to be delivered.  <u>Moss final position is to confirm that this home was substantially complete within the allotted timeframe established in the remediation protocol and has the supporting documentation to support the position.</u>

Given the history of this particular remediation, we felt that a credit offering for the items we have agreed to address will bring an amenable solution to the items in question.  Mr. Wagner stated several times during the walkthrough that he has the knowledge and resources within the construction industry, which can be called upon to take care of these items as he deems necessary.  We want the Wagner's to be happy with the home and feel that they can control this given the fair value we have offered to the acceptable items noted.

Given the effort that has been put forth to the remediation to this home and the time invested with the Wagner family, that this settlement offer is more than sufficient to have an amicable agreement in place contingent upon their agreement to all of the terms stated, as well as any other issues not brought to our attention that may arise on their side, that will give this issue complete closure for both parties.

Please note that the standard warranty will remain in effect per the settlement agreement and signed work authorization, but all other items will be considered closed contingent upon agreement to both parties to the settlement offer provided herein.

Let me know your client's response to the following, and if acceptable, I can have our legal counsel draft up the agreement and sent over for your review.

*Thanks,*

*Guy Reese*
*Vice President* | **Moss & Associates**

o (954) 769-8136 | m (954) 868-9838 | f (954) 524-5677
210 N. Andrews Ave., Suite 300, Fort Lauderdale, FL 33311

*Thanks,*

**Guy Reese**
*Vice President* | **Moss & Associates**
o (954) 769-8136 | m (954) 868-9838 | f (954) 524-5677
210 N. Andrews Ave., Suite 300, Fort Lauderdale, FL 33311



Finish standards referenced from the National Association of Home Builder's "Residential Construction Performance Guidelines" Fourth Edition 2011

| TOPIC | PROBLEM | PERFORMANCE GUIDELINE | NOTATIONS |
|---|---|---|---|
| Glass 4-4-5 | Glass surfaces are scratched | Glass surfaces will not have scratches visible from 10 feet under normal lighting conditions at the time of substantial completion of the project. | The Contractor and Owner should examine existing windows at kick off to document existing conditions. |
| Sliding Glass Doors 4-5-13 | A sliding patio door does not roll smoothly | Sliding patio doors will roll smoothly at the time of substantial completion.  Cleaning and maintenance necessary to preserve proper operation are the responsibility of the Owner. | The Contractor and Owner should examine existing sliding doors at kick off to document existing conditions. |
| Shower, tub and sink chips 7-2-4 | The surface of a sink, tub or shower is chipped. | Cracks and chips in surfaces of showers, bathtubs, and sinks are considered excessive if they are visible from 3 feet in normal lighting conditions at the time of substantial completion. | The Contractor and Owner should examine existing sliding doors at kick off to document existing conditions. |
| Stairs Treads and Risers 10-2-2 | Gaps exist between interior stair risers, treads, and or skirts | Gaps between adjoining parts that are designed to meet flush will not exceed 1/8 inch in width. | The use of a filler is an appropriate method to fill gaps 1/8 inch or less. |
| Trim and Moldings 10-3-2 | Nails are not properly set or nail holes are not properly filled. | After finishing, nails and nail holes will not be readily visible from a standing position facing the surface at distance of 6 feet under normal lighting conditions.  After painting or staining, putty colors will not exactly match variations in wood color. | |
| Trim and Moldings 10-3-6 | Hammer marks are visible on interior trim. | Hammer marks on interior trim will not be readily visible from a standing position facing the surface at a distance of 6 feet under normal lighting conditions. | |
| Cabinets 10-4-1 | Cabinets do not meet the ceiling or walls. | Gaps greater than 1/4 inch in width are considered excessive. | Does not apply on walls that are out of plumb. |
| Cabinets 10-4-2 | Cabinets do not line up with each other | Cabinet faces more than 1/8 inch out of line, and corners more than 3/16 inch out of line are considered excessive. | |
| Countertops 10-5-3 | Laminate countertops are visibly scratched | Laminate Countertops will be free of scratches visible from 6 feet under normal lighting conditions. | Minor imperfections and scratches will be more visible on dark, glossy tops. |
| Countertops 10-5-9 | A granite, marble, stone or solid-surface countertop has texture or color variations | Color variations in natural-surface products are acceptable.  Solid-surface variations in texture and color are covered by the manufacturers warranty. | |
| Drywall 10-6-2 | A nail pop, blister, or other blemish is visible on a finished wall or ceilling. | Any such blemishes that are readily visible from a standing position facing the surface at distance of 6 feet under normal lighting conditions are considered excessive. | |

MOSS

| TOPIC | PROBLEM | PERFORMANCE GUIDELINE | NOTATIONS |
|---|---|---|---|
| Drywall 10-6-4 | Joints protrude from the surface. | Any joints that are visible **from a standing position facing the surface at distance of 6 feet under normal lighting conditions** are considered excessive. | |
| Texture 10-6-6 | The texture of gypsum wallboard does not match. | Any variations that are readily visible from a standing position f**acing the surface at a distance of 6 feet under normal lighting conditions** are considered excessive. | |
| Sprayed or Textured Ceilings 10-6-8 | Sprayed or textured ceilings have uneven textures. | This is a common condition that occurs with randomly applied materials. | **No corrective action is reqired by the contractor**. |
| Paint 10-6-9 | Interior paint does not cover the underlying surface. | The surface being painted will not show through new paint when viewed from a **standing position facing the surface at distance of 6 feet under normal lighting conditions**. | |
| Paint 10-6-10 | An interior surface is spattered with paint | Paint splatters will not be readily visible on walls, woodwork, floors, or other interior surfaces when **viewed from a position facing the surface at a distance of 6 feet under normal lighting conditions**. | |
| Paint 10-6-11 | Brush and roller marks show on interior painted surfaces | Brush and roller marks will not be readily visible on interior painted surfaces when **viewed from a standing position facing the surface at a distance of 6 feet under normal lighting conditions**. | |
| Paint 10-6-12 | Lap Marks show in interior painted or stained areas. | Lap marks will not be readily visible on interior painted surfaces when **viewed from a standing position facing the surface at a distance of 6 feet under normal lighting conditions**. | |
| Hardwood Floors 11-3-5 | Voids or skips are observed in the floor finish. | Voids that are readily **visible from a standing position under normal lighting conditions** are considered excessive. | |
| Hardwood Floors 11-3-11 | Hardwood flooring has visible scratches and dents. | At the time of substantial completion, hardwood flooring will NOT have scratches and dents **visible from a standing position**. | **The Contractor and Owner should examine existing hardwood floors at kick off to document existing conditions.** |
| Tile 11-4-4 | A grout or mortar joint is not a uniform color | After the grout or mortar has cured, any color variation that is readily visible **from a standing position facing the surface at a distance of 6 feet under normal lighting conditions** is considered excessive. | |