UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED ) | |
|         DRYWALL PRODUCTS ) | MDL NO. 2047 |
|         LIABILITY LITIGATION ) | |
| ) | |
| THIS DOCUMENT RELATES TO: ) | SECTION: L |
| ) | |
| *Sean and Beth Payton, et al. v.* ) | JUDGE FALLON |
| *Knauf GIPS KG, et al.,* ) | |
| ) | MAG. JUDGE WILKINSON |
| Case No. 2:09-cv-07628 (E.D. La.) ) | |
|                                                  ) | |

## PLAINTIFFS, DANIEL AND GESSICA TOTH'S NOTICE OF APPEAL OF SPECIAL MASTER'S OPINION AND DECREE

NOTICE IS GIVEN that Plaintiffs, DANIEL AND GESSICA TOTH ("Plaintiffs"), by and through their undersigned counsel, appeal the Special Master's Opinion and Decree dated January 22, 2017, as follows:

1. Plaintiffs' affected property, located at 11039 Muller Road, Fort Pierce, Florida 34945, was remediated by Moss and Associates, LLC ("Moss") in accordance with the Knauf Settlement Agreement.

2. Moss's remediation of the affected property commenced on or about February 11, 2013. The St. Lucie County, Florida Building & Code Regulation Division issued a Certificate of Occupancy for the affected property on November 25, 2013.

3. Since that time, Plaintiffs and Moss have been unable to agree upon significant issues relating to the quality and workmanship of the remediation. The parties were in discussions regarding the unresolved issues regarding the remediation, but reached an impasse.

4. On May 12, 2016, the undersigned contacted the Ombudsman, Louis Velez, for his assistance in resolving the disputes that have arisen between Plaintiffs and Moss, pertaining to the quality and workmanship of the remediation performed by Moss at Plaintiffs' affected property. Both the homeowner and Moss provided documentation to Mr. Velez for his review.

5. On September 28, 2016, Stephanie C. Mazzola, Esq., counsel for Moss, contacted the Ombudsman and requested the Special Master's involvement in these disputes. Moss argued that Toth's claim was time-barred under the Court's CAP 2013-4 Order. Both parties submitted position papers to Special Master, Daniel J. Balhoff, regarding the application of the CAP 2013-4 Order to Toth's claim.

6. On January 22, 2017, Mr. Balhoff released his Opinion and Decree (Exhibit "A").

7. On February 3, 2017, the parties participated in a telephonic meet and confer in an attempt to resolve the remediation issues, as required by Section 4.2.9 of the Knauf Settlement Agreement, prior to filing this appeal. The parties were unable to reach a resolution regarding the remediation issues.

8. Plaintiffs should be eligible to mediate and resolve their claims against Moss pursuant to the "good cause" provision of Para. 3(a) of the CAP-2013-4 Order. As explained in Plaintiffs' position paper attached hereto (Exhibit "B"), Toth engaged Moss continuously regarding the needed repairs from prior to the issuance of a Certificate of Occupancy ("C.O."), until the date he demanded mediation. Toth reasonably believed that Moss would follow through its continuing promise to rectify the construction issues. Toth worked with Moss directly and through counsel, from November 2013, prior to the issuance of a C.O., through December 1, 2014, more than 10 months *after* the issuance of the C.O., culminating in a January 2015, request for a conference to discuss resolution. At minimum, there is good cause to allow a mediation of

2

the Toth Family Residence repair issues now. Toth and Moss were in a continuing discussion regarding the scope of the repairs, but could not come to agreement regarding the same. Moss and its subcontractors continually worked directly with Toth, and Toth in good faith believed he would be able to resolve his issues with Moss between first raising the issues and his demand for mediation.

WHEREFORE, Plaintiffs, DANIEL AND GESSICA TOTH, respectfully request this Court overturn the Special Master's Opinion and Decree, determine the CAP 2013-4 Order does not apply to the instant claim, or determine Toth has demonstrated good cause, and allow the Toth claim to proceed, and for any further relief deemed appropriate.

Respectfully submitted,

 *s/* GREGORY S. WEISS
GREGORY S. WEISS (Fla. Bar No. 163430)
Mrachek, Fitzgerald, Rose,
Konopka, Thomas & Weiss, P.A.
505 S. Flagler Drive, Suite 600
West Palm Beach, FL 33401
Tel.: (561) 655-2250
Fax: (561) 655-5537
gweiss@mrachek-law.com
psymons@mrachek-law.com

*Attorneys for Daniel and Gessica Toth*

## **CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that the above and foregoing has been served upon Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller and Harry Rosenberg, by email transmission, and upon all parties by electronically uploading the same to Lexis Nexis File and Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF system, which will send a notice of electronic filing in accordance with procedures established in MDL 2047, on this 6th day of February, 2017.

                                       *s/* GREGORY S. WEISS
                                     GREGORY S. WEISS (Fla. Bar No. 163430)

# EXHIBIT "A"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE -MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L<br><br>JUDGE ELDON FALLON<br>MAGISTRATE WILKINSON |

# Opinion and Decree

Daniel Toth owns the property located at 11039 Muller Road, Fort Pierce, Florida. Mr. Toth submitted his property for remediation pursuant to Section 4.3.1 (Option 1) of the Knauf Settlement Agreement. Section 4.5.1.2.1 of the Knauf Settlement Agreement provides:

> In the event that a dispute arises between a KPT Property Owner [in this case, Mr. Toth] and the Lead Contractor or Other Approved Contractor [in this case, Moss] over the Remediation Protocol for the individual KPT Property, such dispute shall be submitted to the Special Master who will resolve the dispute. The parties shall cooperate with the Special Master to resolve any disputes expeditiously and avoid, to the maximum extent possible, any delay in the remediation.

On October 1, 2013, the Settlement Administrator promulgated Claims Administration Procedure ("CAP") No. 2013-4. The CAP stated that it applied "to remediations conducted pursuant to section 4.3.1 of the Knauf Settlement Agreement." The CAP further stated:

> A Request for Mediation must be filed with the Special Master within 90 days of the receipt of the Certificate of Occupancy, as that term is defined in the Work Authorization Agreement, by the claimants. The Special Master will not consider Requests for Mediation filed after the filing deadline, absent good cause shown.

On December 10, 2013, the Toth property received its Certificate of Occupancy. On September 28, 2016, the parties sent the Special Master a request for mediation. The request is late pursuant to the terms of CAP No. 2013-4.

Mr. Toth notes that the 90-day deadline is not absolute; it can be extended "for good cause shown." Mr. Toth does not claim that anything prevented him from requesting a mediation within the 90-day deadline. Instead, Mr. Toth points to several communications between himself and Moss & Associates, LLC (as well as their representatives/attorneys) in the months following December 10, 2013. These communications continued well after CAP No. 2013-4's 90-day deadline. However, in none of the communications did the parties agree to extend (or even intimate that they were agreeing to extend) the 90-day deadline. Given this, the Special Master does not believe that he has the authority to extend the deadline. Therefore, pursuant to CAP No. 2013-4, "[t]he Special Master will not consider [the] Request[] for Mediation." Because of this conclusion, the Special Master does not need to address the other arguments of the parties.

Moss asks the Special Master to find that Mr. Toth is in bad faith, and therefore is responsible for all costs associated with the requested mediation. The Special Master concludes that Mr. Toth was not in bad faith, and rejects Moss's request.

For the foregoing reasons, Mr. Toth's request for mediation is rejected. The parties will each be responsible for one-half of the costs associated with this matter. The Special Master will circulate an invoice in the near future.

Dated: January 22, 2017  /s/ Daniel J. Balhoff
Daniel J. Balhoff, Special Master

# EXHIBIT "B"



**VIA EMAIL TRANSMISSION**

December 1, 2016

Daniel J. Balhoff, Esq.
Perry, Balhoff, Mengis & Burns, LLC
2141 Quail Run Drive
Baton Rouge, LA 70808

Re:  In Re: Chinese-Manufactured Drywall Products Liability Litigation
     Homeowner:        Daniel Toth
     Claimant I.D.:    102251
     Affected Property: 11039 Muller Road, Fort Pierce, Florida 34945

Dear Mr. Balhoff,

We appreciate your time and service in this matter. As you know, the undersigned law firm represents Mr. Danny Toth regarding his family's home located at 11039 Muller Road, Fort Pierce, Florida 34945 ("Toth Family Residence"). This correspondence responds to Moss' November 28, 2016 correspondence regarding the CAP 2013-4 Order. Specifically, this correspondence addresses why Mr. Toth's demand for mediation regarding the needed repairs to the Toth Family Residence is not precluded by the CAP-2013-4 Order.

Moss argues Mr. Toth's right to demand a mediation regarding the outstanding issues with Moss' remediation are precluded by the CAP-2013-4 Order. Moss overlooks the language of the Order, and the facts that have transpired; therefore, we respectfully request you allow the mediation to proceed. First, the Order provides at Para. 3(a) that the deadline to request mediation will be 90 days after receipt of a Certificate of Occupancy "*absent good cause shown*." (emphasis added) Mr. Toth engaged Moss continuously directly regarding the needed repairs to Moss' remediation, from prior to Mr. Toth's receipt of a Certificate of Occupancy, until the date he demanded mediation. Mr. Toth reasonably believed that Moss would follow through its continuing promise to rectify the construction issues at the Toth Family Residence.

Mr. Toth observed several problems with Moss' remediation of the Toth Family Residence well prior to the issuance of the Certificate of Occupancy. For example, on November 4, 2013, Mr. Toth directly emailed a picture to Moss employee Zach Tapley of a poorly installed light fixture (Exhibit "A" hereto). On November 21, 2013, prior to the issuance of a Certificate of Occupancy, the undersigned,

Daniel J. Balhoff, Esq.
December 1, 2016
Page 2

Mr. Toth and Moss had a telephonic meeting to discuss the significant problems with Moss' remediation of the Toth Family Residence. As Moss admits, on November 26, 2013, still prior to the issuance of a Certificate of Occupancy, Moss responded to Mr. Toth's complaints with a proposed list of repairs Moss was willing to make to attempt to fix the Toth Family Residence. On December 18, 2013, and January 3, 2014, both post-issuance of a Certificate of Occupancy, Moss provided additional proposed resolutions to the claims made November 21, 2013 (pre-issuance), in the form of additional repair lists Moss would perform at the Toth Family Residence.

On May 20, 2014, *more than 90 days* after the issuance of a Certificate of Occupancy, *Moss* again attempted to set a meeting to discuss a resolution to Mr. Toth's pre-issuance claims. At that time Mr. Toth was unwilling to accept Moss' proposed list of resolutions, but was having direct communications with Moss and Moss' subcontractors. For example, on November 26, 2014, and December 1, 2014, Mr. Toth corresponded directly with Moss employee Mike Bell regarding significant electrical problems (Exhibit "B" hereto). In fact, Moss' subcontractors continued to perform repair work at the Toth Family Residence during this time. In light of Moss' continuously unacceptable offers to settle and inability to completely repair issues though its subcontractors, Mr. Toth began putting together a library of photographs, a catalogue of issues, and acquire estimates for the cost of repairs. On January 28, 2015, weeks after Mr. Toth's last direct communication with Moss and months after Moss' last attempt to negotiate through counsel on May 20, 2014, the undersigned on behalf of Mr. Toth attempted to set a conference to discuss resolution, now having a complete list of repairs, a library of photographs and several estimates for repair. Thereafter, Moss rejected any further settlement attempts, and Mr. Toth demanded to mediate in the instant effort.

At minimum, there is good cause to allow a mediation of the Toth Family Residence repair issues now. Mr. Toth and Moss were in a continuing discussion regarding the scope of the repairs, but could not come to agreement regarding the same. Moss and its subcontractors continually worked directly with Mr. Toth, and Mr. Toth in good faith believed he would be able to resolve his issues with Moss, raised before the issuance of the Certificate of Occupancy, though this continuing discussion with Moss and Moss' subcontractors. Mr. Toth solely wants the Toth Family Residence to be habitable for his family, and returned to the fit and finish in which Moss found it before starting the CDW remediation. Therefore, Mr. Toth respectfully requests that you allow the mediation between Moss and Mr. Toth regarding the Toth Family Residence to proceed. Should you desire further information please do not hesitate to ask.

Very truly yours,

*Gregory S. Weiss*

GREGORY S. WEISS
Signed in attorney's absence to expedite delivery.

GSW/pms
cc:   Mr. Daniel Toth
      Stephanie C. Mazzola, Esq.

# EXHIBIT "A"

**From:** Danny Toth <danny_1stclassconstruction@yahoo.com>
**Date:** November 4, 2013 at 7:26:28 AM EST
**To:** Zach Tapley <ztapley@mossemail.com>
**Subject: Light shandaler**

Besides the lights being on look at this expensive chandelier propped up against the scaffolding
This is in the stairwell going up the stairs the chandelier hanging
Also the medallion above it is all scratched and was supposed to get repainted according to Botsford



Sent from my iPhone

# EXHIBIT "B"

**From:** Danny Toth <danny_1stclassconstruction@yahoo.com>
**Date:** November 26, 2014 at 8:33:06 PM EST
**To:** Mike Bell <mbell@mossemail.com>
**Subject: Generator/electric panel**

Mike
Power at the house went out tonight
A couple months back Apex electric sent a company here to fix the problem with the way the electric panel breakers were connected to the gas backup generator. My original complaint about the breakers was that all the reasons why we have a generator was for the kitchen
light,  refrigerator, water pump, upstairs bedrooms, upstairs bathrooms, upstairs closets and upstair a/c. The way they wired it was for nothing of above and when they came to fix this problem it's the same. The generator is on and running so we know this isn't the problem. All the landscape lights are on, hallway light work and exterior soffit lights works. Obviously this needs to be addressed again. Please call me when you can get this figured out. Thanks danny Toth
Happy thanksgiving


Sent from my iPhone

1

**From:** Danny Toth <danny_1stclassconstruction@yahoo.com>
**Date:** December 1, 2014 at 12:27:44 PM EST
**To:** Mike Bell <mbell@mossemail.com>
**Subject: Generator/electric panel**

Mike
Short time back I complied about the way the electric panel box was connected to generator. At this time you contracted electrician and asked them to reconfigure panel to generator to the rooms we needed to work when power went out and generator came on
This pass weekend power went out and when generator came on none of the areas we requested worked, the same areas came on as before when we complained,(soffit lights and landscape lighting)
Can you please have them come back and address this complaint once again?
Thanks
Danny

Sent from my iPhone