**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE: CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION                                                **MDL NO. 2047**

                                                           **SECTION: L**

                                                           **JUDGE FALLON**
                                                           **MAG. JUDGE WILKINSON**

**THIS DOCUMENT RELATES TO:**
*ALL CASES*
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFFS' STEERING COMMITTEE'S ALTERNATIVE SUGGESTION TO**
**TAISHAN'S PLAN TO SATISFY TRANSLATION ORDER**

NOW COMES, the PSC who respectfully submits that this Court issue an alternative order

to Taishan's translation plan.

**HISTORY GIVING RISE TO SANCTIONS**

Based on Taishan's in-conference statement, the Defendant contends that there "… is no

need to recount the history which resulted in the sanctions." The PSC disagrees. To ignore the

history which has given rise to sanctions would be equivalent to Professor Arnold Toynbee

ignoring the Barbarian Invasions of the Roman Empire in 250 AD. Indeed, Taishan's tactic here

is an attempted reversal of the playing field. In effect, Taishan seeks to shift the burden of sanction

from itself to the 3,000 homeowners who have yet to be compensated for Taishan's manufacture

and distribution of defective drywall.

After what can reasonably be described as a tortured history involving Wenlong Peng

("Peng"), the former employee / current consultant of Taishan Gypsum Co., Ltd. ("Taishan") and

Ta'ian Taishan Plasterboard Co., Ltd. ("TTP"), the story involving his documents and emails has still yet to end.[1]

After Mr. Peng clearly gave false testimony in 2012 about whether Taishan targeted customers in the U.S. for drywall sales, after Mr. Peng had in-depth involvement with the decision for Taishan to withdraw from this litigation, after Mr. Peng subsequently became a "consultant" to defendants specifically for this litigation, after Taishan intentionally delayed responding to Peng-related discovery, after Taishan acted in bad faith in keeping the whereabouts of Mr. Peng concealed, after Taishan finally produced some Peng-related documents (which were illegible machine translated), and even after this Honorable Court ordered Taishan to produce these Peng-related documents (translated accurately into English), the PSC has still yet to receive same.  It is against this backdrop of continued and repeated Taishan discovery abuse which the current matter should be viewed.

While Taishan has consistently engaged in a pattern of discovery abuse, the following chart recounts Taishan's web of intentional deceit specific to Mr. Peng:

| Date | Description | Source |
| --- | --- | --- |
| June 16, 2009 | PRESERVATION OF EVIDENCE - All parties and their counsel are reminded of their duty to preserve evidence that may be relevant to this action. | PTO #1, ¶14 at pp. 7-8 |
| November 20, 2009 | Entry of Default in *Germano*. | R. Doc. 487 |
| May 11, 2010 | The Court entered a Default Judgement against Taishan Gypsum, awarding damages to the plaintiffs in the amount of $2,609,129.99. | R. Doc. 3013 |

---

[1] Wenlong Peng's involvement in this litigation and interaction with the other Taishan-related defendants cannot be overstated. It began upon the receipt and acceptance of service through the Hague Convention and continued as Taishan appeared and participated  in the case, continued through the decision of Taishan and its parents to "withdraw" Taishan from this litigation, and continued even thereafter.

| Date | Description | Source |
|---|---|---|
| June 10, 2010 | TG filed a Notice of Appeal of the May 11, 2010 Default Judgment. | R. Doc. 3670 |
| June 2010 - September 2010 | Multiple emails show that **PENG Wenlong** is a primary (if not the primary) TG witness to many different aspects of the litigation, including alter ego, personal jurisdiction, and TG's decision-making re: whether or not to participate in the case. | *See e.g.*, Exhibit A-1 attached hereto (Privilege Log) at Entry Nos. 13, 34, 35 |
| September 24, 2010 | The PSC served upon TG and TTP Plaintiffs' First Set of Interrogatories and Request for Production of Documents Concerning Jurisdictional Issues | R. Docs. 6964-2, 6964-3 |
| April 7, 2011 | **Day 1 of first deposition** of **PENG Wenlong** (in Hong Kong) as a 30(b)(6) witness for TG & TTP (which degenerated into "chaos and old night"). | 9/9/2011 Order & Reasons at p. 5 (R. Doc. 10269) |
| April 8, 2011 | **Day 2 of first deposition** of **PENG Wenlong** (in Hong Kong) as a 30(b)(6) witness for TG & TTP (which degenerated into "chaos and old night"). | 9/9/2011 Order & Reasons at p. 5 (R. Doc. 10269) |
| May 3, 2011 | The PSC brings its 3rd motion to compel Taishan as a result of ongoing problems with depositions and document productions. The PSC's 1st motion to compel was filed on 1/12/2011 (R. Doc. 6964), and the 2nd was filed on 2/9/2011 (R. Doc. 7364). | R. Docs. 8685, 8685-1 |
| September 9, 2011 | This Honorable Court grants the PSC's motion to compel additional discovery from TG and TTP, and finds among other things that: "… Taishan is directed to expand its ESI search to those employees and directors in supervisory positions. … Once again, if Taishan diligently attempts these discovery searches and is unable to produce some or all of the requested information, it is to submit an affidavit under penalty of perjury or punitive action indicating insomuch." | 9/9/2011 Order & Reasons at p. 27 (R. Doc. 10269) |
| November 16, 2011 | Jia Tongchun (Chairman of the Board and General Manager of TG) files a Declaration, swearing to among other things: "I understand that this Court issued an Order dated September 9, 2011, wherein TG and Tai'an Taishan Plasterboard Co., Ltd. ("TTP") were ordered to take certain actions in relation to personal jurisdiction discovery ...  I understand these obligations, and have taken a number of steps to ensure that TG and TTP are fully compliant with the Court's Order." | 11/16/2011 Declaration of Jia Tongchun (R. Doc. 11211) |
| January 13, 2012 | **Second deposition** of **PENG Wenlong** in Hong Kong (continuing from 4/7-8/2011 - the first 2 days of deposition). | R. Doc. 15755 at p. 12. |
| September 4, 2012 | The Court finds (in *Germano*, *Gross*, *Mitchell*, and *Wiltz*) that personal jurisdiction is proper over TG & TTP, and denies defendants' motion to vacate default judgment. | R. Doc. 15755 |

| Date | Description | Source |
|---|---|---|
| February 1, 2014 – February 24, 2014 | Email Chain with JI Jieni, **PENG Wenlong**, Joe Cyr, Eugene Chen, JIA Tongchun, ZHANG Jianchun, DONG Chungang, Frank Spano<br>Email chain – case status, legal strategy, advice to client and/or client instructions concerning withdrawal from litigation/discharge of attorneys/attorney withdrawal | *See* Exhibit A-1 at Entry No. 112 |
| March 2014 | **PENG Wenlong** resigns from Taishan Gypsum.  JIA Toungchun testified that PENG left in February or March.  Regardless, even though he "left" Taishan, PENG would help handle matters related to the litigation because there was a "transition" period. | *See* Exhibit B-1 attached hereto (9/17/2015 JIA Dep.) 84:5-:11, 86:14-:22; *See also* Exhibit C-2 (attached hereto) CHE Dep. at 49:3-:21. |
| March 2014 (after PENG's Resignation) | **PENG Wenlong's** computer, as well as some files related to the Taishan Gypsum lawsuit is transferred for use to Che Gang. | *See* Exhibit B-1 (9/17/2015 JIA Dep.) at 45:5-19 |
| March 2014- March 2015 | **PENG Wenlong** 'volunteers' to help Taishan with the U.S. Lawsuit. PENG uses his computer for this role. | *See* Exhibit B-1 (9/17/2015 JIA Dep.) at 86:14-18 |
| March 2014 (after PENG's Resignation) | **PENG Wenlong** left his computer at Taishan.  It was not repurposed. | *See* Exhibit B-1 (9/17/2015 JIA Dep.) at 67:25-69:2[2] |
| May 20, 2014 | The U.S. Court of Appeals for the Fifth Circuit issues its opinion in *Gross*, *Mitchell*, and *Wiltz*, and AFFIRMS the District Court's jurisdictional rulings and preliminary default ruling relative to defendants TG and TTP. | *In re Chinese-Manuf. Drywall Prod. Liab. Litig.*, 753 F.3d 521 (5th Cir. 2014) |
| June 20, 2014 | The Court orders Taishan to appear on July 17, 2014 for a Judgment Debtor Examination. | R. Doc. 17774 |
| June 2014 – July 16, 2014 | Multiple emails re-confirm that **PENG Wenlong** is a primary (if not the primary) TG witness regarding CNBM entities' and BNBM entities' control of TG's decision-making regarding whether to remain involved in the litigation and/or appear for the court-ordered 7/17/2014 Judgment Debtor Examination. | *See e.g.*, Exhibit A-1 at Entry Nos. 127, 136, 141, 143, 154, 159-174, 181-182 |

---

[2] *Cf.*  Deposition of Jia Tongchun, 9/17/2015 ("Jia Dep."), 69:3-17 ("Q: When did you find out that Mr. Peng, as you stated, did not take his computer with him when he left?  A: When Mr. Peng left his employment, I personally – I really do not know that Mr. Peng's computer was brought away and would not be found.  Only on September the 11th did Mr. Che tell me that Mr. Peng's computer is nowhere to be found.  I was extremely angry and I told Mr. Che you have to inform the information department to look for the computer anywhere you can in Taishan Gypsum.  And finally, on around 10 something – after the 10th, it was found.  According to the information I have learned, the computer was subsequently being copied by a third party.") (Exhibit B-1 hereto).

| Date | Description | Source |
|---|---|---|
| July 17, 2014 | TG is held in civil and criminal contempt of court for refusing to appear for a Judgment Debtor Examination "in direct, willful violation of this Court's June 20, 2014 order", enjoined "Taishan, and any of its affiliates or subsidiaries, … from conducting any business in the United States until or unless it participates in this judicial process." | R. Doc. No. 17869 at pp. 2-3 |
| July 17, 2014 – September 2014 | Multiple emails re-confirm that **PENG Wenlong** is a primary (if not the primary) TG witness regarding CNBM entities' and BNBM entities' control of TG's decision-making regarding whether to remain involved in the litigation and/or how to handle the 7/17/2014 contempt order. | *See e.g.*, Exhibit A-1 at Entry Nos. 183, 189-191, 194-197, 204-207, 213-214, 221-226 |
| November 2014 - February 2015 | Multiple emails show that **PENG Wenlong** is a primary (if not the primary) TG witness regarding CNBM entities' and BNBM entities' control of TG's decision-making regarding the litigation. | *See e.g.*, Exhibit A-2 at Entry Nos.: 12598, 22210, 22211, 22197, 22301, 22306-22312, 33376, 36342-363450, 67976, 67991 |
| February 2, 2015 | "Employment Agreement" signed between Taishan and **PENG Wenlong** (more than 11 months after Mr. Peng left Taishan but continued to consult with on an "as needed" basis), provided that "[b]ased on Mr. Peng's full understanding of the Taishan Chinese drywall litigations in U.S., [Taishan] hires [Mr. Peng] to be the consultant for these cases" for the sum of 50,000 Yuan plus expenses. | 1/8/2016 FOFCOL (R. Doc. 19959 – attached hereto as Exhibit A-3) at p. 9, ¶30. |
| April/May 2015 | CHE Gang deposition preparation includes phone calls and conversations with **PENG Wenlong**. CHE testified that in order to prepare for his June deposition, "whenever there were matters that needed to be confirmed, I would call him [PENG]." | *See* Exhibit C-2 (attached hereto) Che Dep. at 106:4-107:10 |
| August 17, 2015 | E-mail from counsel for TG to the PSC in response to meet and confers, providing materials and a list of custodial e-mails searched by TG (**PENG Wenlong** NOT included). | *See* Exhibit D (attached hereto) at pp. 2 & 6. |
| August 24, 2015 | Counsel for Taishan informs the PSC during a Meet and Confer that **PENG's** laptop is unsearchable or otherwise incapable of providing responsive documents to the PSC's document requests. | *See* Exhibit E (attached hereto). |
| August 28, 2015 | The unavailability of **PENG's** computer was re-confirmed by counsel for TG during a meet and confer w/ the PSC. | *See* Exhibit G (attached hereto). |
| August 31, 2015 | Sworn declaration of Jia Tongchun, stating in pertinent part that: "Mr. Peng voluntarily left the employment of TG in March 2014, to pursue another career at a company unrelated | *See* Exhibit F (attached hereto) – 8/31/2015 JIA |

| Date | Description | Source |
|------|-------------|--------|
| | to TG, TTP, and to my knowledge … any BNBM or CNBM entity.  Mr. Peng never has told me the name of the company where he currently works …" | declaration (a/k/a JIA Exhibit 357) |
| September 10, 2015 | JIA learns the **PENG's** computer is 'missing', JIA orders that the computer be located. | *See* Exhibit B-1 (9/17/2015 JIA Dep.) at 84:5-15 |
| September 12, 2015 | **PENG's** computer is located in a warehouse by Taishan's Information Department – which was ordered by JIA to find the computer. | *See* Exhibit B-1 (9/17/2015 JIA Dep.) at 85:24-86:13; 1/8/2016 Order (Doc. 19959) at p. 13, ¶42. |
| September 12 or 13, 2015 | Taishan delivers **PENG's** computer to a third-party document production vendor where the contents are allegedly copied. | *See* Exhibit B-1 (9/17/2015 JIA Dep.) at 69:15-23 |
| September 13, 2015 | PSC emailed the Court and opposing counsel stating that a PSC-retained private investigator had discovered information about Mr. Peng's whereabouts and current employment, and claiming discovery misconduct by the defendants, and averring that the misconduct may require the Court to impose sanctions. The email contained several exhibits, including prior on-the-record representations from the defendants about Peng, and the report of the PSC's private investigator (relative to Peng). | *See* Exhibit B-3 (9/13/2015 email from R. Herman & A. Levin) |
| September 16, 2015 | Sworn declaration of Jia Tongchun for Clarification and Supplementation [of August 31, 2015 declaration], stating in pertinent part that: "I know that Peng Wenlong ('Mr. Peng') is currently employed at Shenyang Taishi Rock Wool Co., Ltd. ('Shenyang') [which is owned by a company he has ownership in and which is a shareholder of TG] …" and Jia goes on to state that his prior 8/31/15 declaration gave a "misimpression". | *See* Exhibit H (attached hereto) – 9/16/2015 JIA declaration (a/k/a JIA Exhibit 335) |
| September 17, 2015 | **PENG's** computer is at the information department of Taishan. | *See* Exhibit B-1 (9/17/2015 JIA Dep.) at 88:5-7 |
| September 18, 2015 | A third-party administrator is in custody of **PENG's** computer. The third party is in the process of imaging the hard drive so all documents can then be reviewed/checked against Chinese State Secrecy law. | *See* Exhibit B-2 (9/18/2015 JIA Dep. - statement of Bernard Taylor) at 294:9-295:6 |
| September 25, 2015 | After the 30(b)(6) depositions of Taishan had concluded, Taishan learned that Mr. Peng had a laptop. | 1/8/2016 Order (Doc. 19959) at p. 13, ¶42. |
| September 29, 2015 | Grant Thorton (Taishan's discovery vendor) imaged Mr. **PENG's** desktop computer hard drive and searched three of Mr. **PENG's** email addresses. | 1/8/2016 Order (Doc. 19959) at p. 13, ¶42. |

| Date | Description | Source |
|------|-------------|--------|
| October 8, 2015 | "Mr. Peng tendered his laptop to Mr. Che, and the vendor imaged that laptop [and] … each of three imaged drives were sealed into containers in the vendor's [Grant Thorton's] possession in China. | 1/8/2016 Order (Doc. 19959) at p. 13, ¶42. |
| October 13, 2015 | "At a 10/13/2015 status conference, the court ordered TG to produce from Mr. Peng's custodial files all non-privileged documents regardless of relevance to the contempt track or other issues in the litigation … on a rolling basis…." | 1/8/2016 Order (Doc. 19959) at p. 11, ¶37. |
| April 4, 2015 – November 12, 2015 | "From April 4, 2015, through November 4, 2015, Taishan produced on a rolling basis over 84,000 documents [more than 383,000 pages] from Mr. Peng's custodial files."  TG produced another 7 documents on 11/12/2015.  NOTE: *these documents were "machine translated" and basically illegible*. | 1/8/2016 Order (R. Doc. 19959) at p. 11, ¶38.  *See also*, Ex. I attached hereto (Production Log - TG) |
| November 12-14, 2015 | **PENG Wenlong** was deposed in New York City.  He testified, in pertinent part, as follows:<br><br>- He used his personal computer and deskop for Taishan business, including his work on the litigation.<br>- All the documents relating to the litigation are electronic and were on his computers and emails.<br>- He was told in 2010 to preserve documents for the litigation.<br>- He continued to serve as the litigation consultant with Taishan into 2015 when he gradually began to hand these responsibilities over to Mr. Che.<br>- He continued to use his laptop for business, including emails related to Taishan and the litigation, even after he left Taishan.<br>- He turned over his laptop, the only one he ever used for Taishan business, to Mr. Che in October 2015. | 1/8/2016 Order (R. Doc. 19959) at pp. 11-12, ¶40. |
| November 17, 2015 | An evidentiary hearing was held to address issues of spoliation, contempt, and/or adverse inferences relating to Taishan's discovery abuses, including allegations that Taishan knew of and refused or intentionally failed to disclose the current business relationships w/ and the location of Mr. Peng, and whether Taishan knew that Mr. Peng had documents and/or ESI but denied knowing the same or intentionally failed to disclose it and did not take proper measures to protect or collect these documents and/or computer-stored information. | 1/8/2016 Order (R. Doc. 19959) at pp. 13-14, ¶44<br>*See also*, R. Doc. 19745 |
| January 8, 2016 | The Court issued Findings of Facts and Conclusions of Law From the November 17, 2015 Evidentiary Hearing (" 1/8/2016 Order") finding, in pertinent part, as follows:<br><br>- "Taishan engaged in discovery abuses." (¶46) | 1/8/2016 Order (R. Doc. 19959) at pp. 15-18, ¶¶46, 54, 60 & 66a. |

7

| Date | Description | Source |
|------|-------------|--------|
|  | - "[T]he evidence is sufficient to support a finding of discovery abuses warranting sanctions." (¶54)<br>- "Taishan has conceded its failure to relay Mr. Peng's whereabouts and produce documents [and] [t]here is no justification for this failure." (¶60)<br>- "**All documents produced from Mr. Peng…accurately (non-machine) translated into English by Taishan and at Taishan's cost**." |  |
| May 17, 2016 | Taishan produced one hundred ninety three (193) manually translated (Peng-related) documents pursuant to the 1/9/2016 Order (R. Doc. 19959). | *See* Ex. I (All Chinese Defendants' Document Productions from April 2015 through December 2015).  *See also*, 1/8/2016 Order (Doc. 19959) at p. 18, ¶66a. |

Taishan's suggested document plan ignores and circumvents the Court's original 1/8/2016

(R. Doc. 19959) order, which was based on fact and law.

- Taishan consistently and repeatedly abused the discovery process in this litigation, even before the problems with Mr. Peng.[3]

- After failing to participate in trials, after being defaulted, and after losing all relevant appeals, Taishan "refused" to appear for the July 17, 2014 Judgment Debtor Exam.[4]

- As a result of Taishan refusing to appear at the July 17, 2014 Judgment Debtor Exam, this Honorable Court held Taishan "in comtempt of court, both criminally and civilly."[5]

---

[3] *See e.g.*, **Error! Main Document Only.** 1/12/2011 PSC's Motion to Compel Taishan (R. Doc. 6964), 2/9/2011 PSC's Motion Challenging Adequacy of Taishan's Discovery Responses (R. Doc. 7364), 5/3/2011 PSC's Motion to Compel Taishan (R. Doc. 8685), 8/24/2011 PSC's Renewed Motion Challenging Adequacy of Taishan's Discovery Responses (R. Doc. 10174), 9/9/2011 Order & Reasons [on PSC's various motions to compel] (R. Doc. 10269).

[4] *See* 7/17/2014 Order (R. Doc. 17869) at pp. 1-2.  *See also*, R. Doc. 17846.

[5] *Id*. at p. 2.  Moreover, the court held that Taishan's "refusal to appear is a direct contemptuous act occurring in open court after actual notice … [and] [s]uch disobedience of the Court's order harms both the many other parties in this case and the decorum of the Court."  *Id*.

- After Taishan "re-entered" the litigation (and after the BNBM and CNBM entities engaged in the litigation) in early 2015, this Court ordered (among other things) that: "Taishan must purge itself of contempt of court, [and since] neither Taishan nor BNBM/CNBM have demonstrated compliance with the injunction prong of the contempt order, (Rec. Doc. 17869) . . . the parties shall immediately commence discovery related to the relationship between Taishan and BNBM/CNBM, including whether affiliate and/or alter ego status exists. . .," and "Taishan and BNBM/CNBM SHALL participate in alter ego discovery."[6]

- From April 2015 through August 2015, the PSC repeatedly attempted to get from Taishan Mr. Peng's custodial files and his whereabouts (as critical components of the aforementioned discovery ordered by the court) - to no avail.[7]

- As of August 28, 2015, Taishan gave the PSC the impression that "Mr. Peng's laptop was unsearchable and/or incapable of providing responsive documents," and Chairman Jia issued a declaration under penalty of perjury that none of the defendants knew where Mr. Peng worked.[8]

- As a result of Taishan's discovery abuses, this Honorable Court was forced to hold a special hearing (on November 17, 2015) in order to get to the bottom of same.[9]

- After finding that "Taishan engaged in discovery abuses," and that "the evidence is sufficient to support a finding of discovery abuses warranting sanctions," on January 8, 2016 this Honorable Court ordered (among other things), that "[a]ll documents produced from Mr. Peng's computers and emails since October 2016 be accurately (non-machine) translated into English by Taishan and at Taishan's cost."[10]

Taishan's motion at issue masks the reality of Taishan's and other Defendants' conduct during the 8 months that the Peng deception continued, as well as Taishan's/TTP's discovery abuses and conduct during the years prior thereto. On April 6, 2015, Taishan produced Volume I of documents with machine translations which were mostly unintelligible (of course, this presented no problem to Defendants who clearly needed no translation to understand the words and import

---

[6] 3/17/2015 Minute Entry and Orders (R. Doc. 18493) at pp. 2-3.

[7] January 8, 2016 Findings of Facts and Conclusions of Law from the November 17, 2015 Evidentiary Hearing (Doc. 19959) (hereinafter "1/8/2016 Order") at p. 7, ¶24.

[8] 1/8/2016 Order (R. Doc. 19959) at pp. 7-8, ¶¶25-27.

[9] R. Doc. 19745. *See also*, 1/8/2016 Order (R. Doc. 19959) at pp. 13-14, ¶44.

[10] 1/8/2016 Order (R. Doc. 19959) at pp. 15-18, ¶¶46, 60 & 66a.

of the documents).  By November 6, 2015, Taishan had produced the last of its 23 volumes of documents, which exceeded 428,000 pages of barely intelligible machine translations.

During the same timeframe, BNBM produced 180,946 pages, BNBM group produced 69,011 pages; CNBM Co. produced 420,571 pages; CNBM Group 395,278 pages (a great many of these documents were also machine translated and had to be reviewed in an expedited process).  *See* Exhibit I.

Document review of Taishan documents was put on a fast track but document review of BNBM and CNBM Defendants continued.  As indicated in Taishan's brief, of the millions of document pages produced, only 260 documents could be used regarding Taishan CNBM BNBM depositions and pending issues.

Forced with the urgency of reviewing all Taishan documents for particular issues which included alter ego, jurisdiction, and contempt, the PSC processed as many documents as possible in preparation of the ongoing depositions which had been scheduled.  A dozen law firms sent more than 35 attorneys to the Herman law firm in New Orleans from April 15, 2015 through August 2015.  These attorneys (after a two-day orientation) reviewed machine translations over a period of several months - subject to supervision and further review.

As many as 7 Chinese interpreters and lawyers, fluent in Mandarin, were interviewed, recruited, and contracted through recommendation of local Law Schools.  Because it was extremely difficult to read the machine translations electronically, every page was sent to an IT expert and the coordinating paralegal to input, batch, and make searchable. Once that was done, all pages were sent for hard copy document production.  The process of review was laborious. Each lawyer was given 200-300 pages of documents.  Each document was marked as potentially

pertinent.  A second reviewing lawyer then reviewed each selected document.  And only then were documents given to a translator.  Following August 2015, the process of review was accomplished mostly by remote access as resources were marshaled toward briefing legal research and deposition preparation.

As to Taishan's claim of retroactive proportionality, we reject such notion out of hand. However, should proportionality become a consideration, the PSC requests that the Court consider that only 25% of the pages produced by the Defendants are subject to actual manual translation. Though Taishan claims exorbitant expenses, compliance with the Court's sanction order could have been ongoing during the suspension involved in the mediation process.  Further, the Chinese Defendant law firms have thousands of lawyers and thousands of interpreters at their disposal. We will accept Counsel Opposite's statement that their client never provided them with actual translations of documents.  But it is difficult to accept why a Defendant such as Taishan, faced with more than 3,000 claims, should not have provided its own lawyers with actual translations. One wonders how then the "relevancy and non-relevancy and scant relevancy" determinations could have been made on machine translations documents.

## CONCLUSION

### "OH! WHAT A TANGLED WEB WE WEAVE WHEN FIRST WE PRACTICE TO DECEIVE!"  (Sir Walter Scott)

Taishan intentionally wove thread after thread of lies together to create an intricate, convoluted web of deceit to the prejudice of Plaintiffs.  To untangle this twisted web, the following measures are warranted:

1.  Taishan should produce ALL Peng documents and full translation as originally ordered and as justified by the facts and the law;

11

2. Taishan should designate each document as relevant, scantly relevant, or irrelevant;

3. Taishan should produce all relevant and scantly relevant documents to the PSC in manual translation; and

4. The Court should consider the appointment at Taishan's expense of a special master to review each of the so-called alleged irrelevant documents to confirm their status.

Adopting the following measures will prevent Taishan from spinning falsehoods capable of

creating further entanglements of truth.

WHEREFORE, the PSC prays that this motion be GRANTED.

Dated: February 10, 2017                              Respectfully Submitted,

                                        BY: /s/ Russ M. Herman
                                             Russ M. Herman (La Bar No. 6819) (on the Brief)
                                             Leonard A. Davis (La Bar No. 14190) (on the Brief)
                                             Stephen J. Herman (La Bar No. 23129)
                                             Anne E. DeVaughn (La Bar No. 36432) (on the Brief)
                                             Herman, Herman & Katz, LLC
                                             820 O'Keefe Avenue
                                             New Orleans, LA 70113
                                             Phone: (504) 581-4892
                                             Fax: (504) 561-6024
                                             ldavis@hhklawfirm.com
                                             *Plaintiffs' Liaison Counsel MDL 2047*

                                             Arnold Levin (on the Brief)
                                             Fred S. Longer (on the Brief)
                                             Sandra L. Duggan (on the Brief)
                                             Matthew Gaughan
                                             Levin Sedran & Berman
                                             510 Walnut Street, Suite 500
                                             Philadelphia, PA 19106
                                             Phone: (215) 592-1500
                                             Fax: (215) 592-4663
                                             alevin@lfsblaw.com
                                             *Plaintiffs' Lead Counsel MDL 2047*

                                             Anthony Irpino (on the Brief)
                                             *Of Counsel to the PSC*

                                        **ON BEHALF OF THE PSC**

12

## CERTIFICATE OF SERVICE

   I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 10th day of February, 2017.

         Respectfully Submitted,

       BY: */s/ Leonard A. Davis*
         Leonard A. Davis
         Herman, Herman & Katz, LLC
         820 O'Keefe Avenue
         New Orleans, LA 70113
         Phone: (504) 581-4892
         Fax: (504) 561-6024
         ldavis@hhklawfirm.com

         *Plaintiffs' Liaison Counsel MDL 2047*