# EXHIBIT B-1

Confidential - Subject to Further Confidentiality Review

```
 1              UNITED STATES DISTRICT COURT
 2              EASTERN DISTRICT OF LOUISIANA
 3   ***********************************************
 4   IN RE:  CHINESE-MANUFACTURED   MDL NO. 2047
     DRYWALL PRODUCTS LIABILITY
 5   LITIGATION                     SECTION:  L
 6   THIS DOCUMENT APPLIES TO       JUDGE FALLON
     ALL CASES
 7                                  MAG. JUDGE WILKINSON
 8   ***********************************************
 9
             CONFIDENTIAL - SUBJECT TO FURTHER
10                 CONFIDENTIALITY REVIEW
11            Thursday, September 17, 2015
12                    —  —  —
13
14         Videotaped Deposition of TONGCHUN JIA,
15   VOLUME 1, held at Orrick, Herrington & Sutcliffe, LLP,
16   15 Queen's Road Central, 43rd Floor, Hong Kong,
17   commencing at 9:57 a.m., on the above date, before
18   Micheal A. Johnson, Certified Court Reporter (#29025),
19   Registered Merit Reporter and Certified Realtime
20   Reporter.
21
22                    —  —  —
23
24              GOLKOW TECHNOLOGIES, INC.
           877.370.3377 ph | 917.591.5672 fax
25                 deps@golkow.com
```

Golkow Technologies, Inc.                                Page: 1

Confidential - Subject to Further Confidentiality Review

```
 1    BY MR. LEVIN:
 2        Q     So there was a confidentiality agreement
 3    that you had him sign; am I correct?
 4        A     No.
 5        Q     So as I understand it when Mr. Peng left
 6    your employment he took his personnel file with him
 7    and you had no papers or any indicia left of his
 8    employment?
 9        A     When Mr. Peng left his employment for sure
10    he had taken away his personnel file.  However, during
11    the course of his work the information he had obtained
12    related to the US lawsuit had been left behind.
13        Q     And is that information in a file that's
14    readily available today?
15        A     Part of the information had already been
16    transferred to Mr. Che Gang and part of the
17    information may be kept in his computer.
18        Q     That would be in Mr. Peng's computer?
19        A     I think so.  It's his.
20        Q     Would he be taking -- would he have taken
21    his computer with him when he left your employment?
22        A     It is not allowed to take away one's
23    computer when the person left his employment.  But if
24    that person had purchased himself his personal
25    computer, it is allowed to be taken away.  But I don't
```

Confidential - Subject to Further Confidentiality Review

1    itself?
2              MR. TAYLOR:  Objection, form.
3    A    I can't be sure of that.
4    BY MR. LEVIN:
5    Q    Do you have an e-mail address?
6    A    I have an address.
7    Q    What is it?
8              THE INTERPRETER:  This is the
9        interpreter speaking.  The witness just wrote
10       THBMJTC.
11   BY MR. LEVIN:
12   Q    That's it?
13   A    That's it.  That's my e-mail address.
14   Q    Nothing else after that?
15   A    It's 163.
16   Q    Dot com?
17   A    Well, I'm not familiar with computer.  I
18   only know it is 163.
19   Q    Is it a fact, sir, that all the e-mail
20   addresses at Taishan end 163.com?
21   A    I can't be sure of that.
22   Q    Did Mr. Peng have an e-mail address while at
23   Taishan?
24   A    Absolutely, but I don't know.
25   Q    Did Mr. Peng take his computer with him when

Golkow Technologies, Inc.                          Page: 67

Confidential - Subject to Further Confidentiality Review

```
 1   he left Taishan?
 2        A      No.
 3        Q      Is the computer presently at Taishan?
 4        A      In Taishan.
 5        Q      Is the computer intact at Taishan?
 6               MR. TAYLOR:  Objection to form.
 7        A      I believe it's intact.
 8   BY MR. LEVIN:
 9        Q      Well, did you determine whether or not it
10   was intact before you came here today?
11        A      I did not.
12        Q      Was there a point in time, sir, when you
13   informed people that he had taken the computer with
14   him?
15        A      I don't understand what you just said.  Who
16   took it away?
17        Q      Did you ever tell anybody in the world that
18   Mr. Peng took his computer with him when he left
19   Taishan?
20        A      No.
21        Q      Did you ever tell anyone in the world that
22   Mr. Peng's computer was repurposed?
23        A      No.
24        Q      Did you ever tell anybody in the world that
25   Mr. Peng's computer was broken down and parts were
```

Confidential - Subject to Further Confidentiality Review

```
1    used in other computers?
2        A    No.
3        Q    When did you find out that Mr. Peng, as you
4    stated, did not take his computer with him when he
5    left?
6        A    When Mr. Peng left his employment, I
7    personally -- I really do not know that Mr. Peng's
8    computer was brought away and would not be found.
9    Only on September the 11th did Mr. Che tell me that
10   Mr. Peng's computer is nowhere to be found.  I was
11   extremely angry and I told Mr. Che you have to inform
12   the information department to look for the computer
13   anywhere you can in Taishan Gypsum.  And finally, on
14   around 10 something -- after the 10th, it was found.
15   According to the information I have learned, the
16   computer was subsequently being copied by a third
17   party.
18       Q    Who was the third party and when did you so
19   learn that?
20       A    Mr. Che told me that it was copied by a
21   third party.  Who is the third party?  It's the same
22   company that had provided you with the documents last
23   time, but I don't remember the name of the company.
24       Q    Who is Mr. Che?
25       A    Mr. Che Gang.
```

Confidential - Subject to Further Confidentiality Review

```
 1    it very seriously and motivated everybody that I can,
 2    the office people, the people in the information
 3    department to try to find that computer and the
 4    computer was found.
 5    BY MR. LEVIN:
 6        Q      So on September 11th your testimony is you
 7    found out the computer was missing and the computer
 8    was found.  On what day was it found, sir?
 9        A      The computer was found on the 12th.
10        Q      On September 12th?
11        A      Yes.
12        Q      So within two days of Chairman Jia saying
13    this is very important, we must find the computer,
14    your company found it in two days; am I correct?
15        A      Correct.
16        Q      And if I count, Mr. Peng left your employ in
17    February of 2014; am I correct?
18        A      It was in 2014, that's correct.
19        Q      And, in fact, it was in September of 2014?
20               MR. TAYLOR:  Before you answer, is there
21        something?  Arnie, are you asking the question?
22        Because the dates you gave seem off.
23               MR. LEVIN:  What's wrong with them?
24               MR. TAYLOR:  You said something happened
25        in September of 2014.  Did you mean
```

Golkow Technologies, Inc.                                   Page: 84

Confidential - Subject to Further Confidentiality Review

```
 1           September 2015?
 2              MR. LEVIN:  September 2015.
 3   BY MR. LEVIN:
 4      Q    Left your employ in September 2015 -- I'm
 5   sorry.  Mr. Peng left your employ in March of 2015 --
 6   2014?
 7              MR. TAYLOR:  2014.
 8              MR. LEVIN:  I had 2014 right.
 9              MR. TAYLOR:  Yeah, you had that right.
10              MR. LEVIN:  Yeah, I had half of it
11   right.
12   BY MR. LEVIN:
13      Q    Am I right?
14      A    Correct.
15      Q    And you knew that you had to preserve
16   evidence, did you not, because you had meetings and
17   told people that they had to preserve evidence; is
18   that correct, sir?
19      A    Correct.
20      Q    And until that time, from the time he left
21   your employ until September 12th, nobody at your
22   organization could find the computer; is that correct?
23      A    That's correct.
24      Q    And who was in charge of looking for the
25   computer during that period of time?
```

Confidential - Subject to Further Confidentiality Review

```
 1      A      I would like to make a statement in regard
 2   to this question.
 3      Q      I would like to get an answer to the
 4   question and then we'll discuss whether you can make a
 5   statement.
 6             MR. TAYLOR:  You can give your answer in
 7         regards to who found the computer -- or who was
 8         responsible for looking for and then you can
 9         explain whatever you need to explain.
10      A      Mr. Che Gang passed my instruction to the
11   information department to find the computer and our
12   information department found that computer in a
13   warehouse.
14             Mr. Peng Wenlong only resigned from
15   Taishan Gypsum in March of 2014 and ever since then he
16   had been assisting us with the litigation until March
17   of this year when he stopped working on it.  In this
18   period of time he had still been using that computer
19   with his consultancy work, so you can't say that we
20   started to look for his computer since March of 2014.
21   We had been looking for the computer in only the
22   recent months.
23   BY MR. LEVIN:
24      Q      When Mr. Peng ceased doing any consultancy
25   work for you, who, if anybody, did he give his
```

Confidential - Subject to Further Confidentiality Review

```
1    computer to?
2       A    As a common practice he should have given it
3    to Mr. Che Gang and the person in charge in the
4    information department.
5       Q    Did he give it to Mr. Che Gang?
6       A    He had transferred some documents to
7    Mr. Che Gang but have not given the computer to him.
8    That might have occurred.
9       Q    Where did you get that information from?
10           MR. TAYLOR:  Excuse me.  Did you finish
11      your answer?
12      A    I, as a personal witness, do not know
13   whether the two had ever communicated in regard to the
14   computer transfer.
15   BY MR. LEVIN:
16      Q    Didn't you ask Mr. Che Gang for information
17   of that nature before you came here today to testify?
18      A    I asked Mr. Che Gang and on the 11th he told
19   me that they had not found Mr. Peng Wenlong's
20   computer.  That's when I first learned that Peng
21   Wenlong's computer was not transferred to
22   Mr. Che Gang.  Ever since Mr. Peng Wenlong had stopped
23   assisting us with the litigation consultancy work in
24   March, he must have transferred a lot of materials to
25   Mr. Che Gang, otherwise Mr. Che Gang would not have
```

Golkow Technologies, Inc.                                    Page: 87

Confidential - Subject to Further Confidentiality Review

1   been able to assist us in responding to the lawsuit.

2   Q   Was this computer a desktop computer or a
3   laptop computer?

4   A   I did not check on that.

5   Q   Now, where is this computer now?

6   A   Now the computer is in the information
7   department of Taishan Gypsum.

8   Q   And what, if anything, is being done to it
9   there?

10  A   Are you referring to whether the computer is
11  still being used?  I don't understand this question.

12  Q   What are they doing with the computer?  Are
13  they retrieving information, using the computer?
14  What, if anything, are they doing?

15          MR. TAYLOR:  Objection to form.

16  A   They're using the computer.  Currently I
17  mean.

18  BY MR. LEVIN:

19  Q   They're using it, somebody has been assigned
20  that computer and is now presently using the computer
21  that had been missing all this time and found on
22  September 11th?

23  A   Nobody's using it.  It is a computer as an
24  evidence, for discovery of evidence.  It is just been
25  placed there.

Golkow Technologies, Inc.                                    Page: 88