# EXHIBIT B

VIRGINIA:   IN THE CIRCUIT COURT FOR THE CITY OF NORFOLK

IN RE:       THE FOLLOWING PENDING CHINESE DRYWALL CASES

Civil Docket Nos.:    CL10-35; CL10-37; CL09-7751; CL10-8202; CL09-6328

**OPINION AND ORDER ON MOTIONS *IN LIMINE*
AND DEMURRER TO COUNT V**

Plaintiffs in these consolidated actions are homeowners who seek damages resulting from the importation, sale and installation of defective Chinese drywall. The Complaints, as amended, allege that the drywall emits sulfide gases that create noxious odors and cause damage and corrosion to wiring and other items within their homes.

Plaintiffs have entered into a number of settlement agreements that are pending approval by the federal court overseeing the multi-district litigation relating to the Chinese drywall. The claims scheduled for trial in this court are against defendants who allegedly had no involvement in the importation, selection or sale of the defective Chinese drywall but who physically installed the drywall into the homes (herein referred to as the Installer Defendants).

Plaintiffs move *in limine* for (1) an order excluding evidence of negligence by any settling defendant; and (2) an order prohibiting Installer Defendants from arguing that they are not covered by the Building Code. The Installer Defendants demur to Count V – Negligence *Per Se*, arguing that they are not liable for any Code violations relating to the defective Chinese drywall.

As set forth herein, the Court GRANTS both Motions *in Limine* and OVERRULES the Demurrer to Count V.

I. **Motion *In Limine* to Exclude Evidence of Negligence of Settling Defendants**

In support of their motion to exclude negligence of other defendants, Plaintiffs rely on *Jenkins v. Payne*, 251 Va. 122, 465 S.E.2d 795 (1996) and *Atkinson v. Scheer,* 256 Va. 448, 508 S.E.2d 68 (1998). *Jenkins* held that two medical practitioners were not entitled to present opinion evidence that the negligence of a third defendant, against whom claims had been nonsuited following settlement, was the sole proximate cause of the patient's death. The Court did allow evidence establishing the facts surrounding the treatment of the patient by the nonsuited defendant, but it excluded expert opinion evidence as whether he had breached the standard of care. In *Atkinson,* the Court reversed a jury verdict for a defendant in a medical malpractice case who had been permitted to ask the plaintiff's expert witness whether another physician who had also treated the plaintiff committed acts of negligence. The Court found that such evidence could only be admitted if the defendant had proven that the settling doctor's negligence alone, without any contributing negligence in the slightest degree from the defendant, caused the plaintiff's injuries. Because the defendant had not met that burden, the opinion evidence regarding a breach of the standard of care by the settling doctor could not be admitted.

Evidence about the negligence of a third party is irrelevant unless that negligence constitutes an intervening, superseding cause of Plaintiffs' injuries. *Jenkins*, 251 Va. at 129. A defendant in an action for negligent injury "cannot escape liability for his own negligence merely by showing that another was also negligent." *Appalachian Power Co. v. Mitchell*, 145 Va. 409, 414, 134 S.E.558, 559 (1960).

Neither *Jenkins* nor *Atkinson* requires the Court to reject evidence about the facts and circumstances by which Chinese drywall came to be installed in Plaintiffs' homes. Those holdings prohibit the introduction of any opinion testimony regarding a breach of the standard of

care by a settling defendant, and they speak to the availability of a jury instruction on superseding and intervening cause. No evidence has been presented that would permit the Court to evaluate the applicability of any particular jury instruction, including the one regarding the superseding negligence of a third party that allegedly caused the plaintiffs' damages. Therefore, the Court does not rule on whether a particular jury instruction will be given.

The Motion *in Limine* is granted as to any opinion testimony about the negligence of any other defendant unless the Installer Defendants prove that such other negligence constituted a superseding cause of Plaintiffs' damages.

II. **Defendants' Demurrers to Negligence *Per Se* / Plaintiffs' Motion to Exclude Argument that Installer Defendants are not Covered by the Virginia Uniform Statewide Building Code**

Plaintiffs style their motion as a request for an order prohibiting the Installer Defendants from arguing or contending that they are not covered by the Virginia Uniform Statewide Building Code. Defendants' Demurrer to Count V of the Amended Complaint, which challenges the legal sufficiency of Plaintiffs' negligence *per se* claims, raises the same issue.

Plaintiffs included in their memorandum a factual narrative regarding the actions of the Installer Defendants. Although these facts are not pleaded in their Amended Complaint, the Installer Defendants have not challenged their accuracy or made the Court aware of any differences in their version of those facts. Therefore, for purposes of the motion, the Court will accept that the evidence at trial would show the following:

1. The drywall at issue was purchased by the general contractor from Venture Supply, Inc. Venture Supply had purchased the drywall in 2005 and 2006 from a Chinese company now known as Taishan Gypsum Company.

2. At the time of the sale, Venture asked Taishan to mark the drywall and the shipping documents to indicate that the drywall complied with standards issued by the American Society for Testing and Materials (ASTM). Taishan refused to allow this marking and insisted that the ASTM requirement be removed from the sale.

3

3. Venture acceded, and 150,000 sheets of 4 x 12.5 inch drywall were imported into Norfolk for sale and ultimately installation into Plaintiffs' homes.

4. The Chinese drywall installed in Plaintiffs' homes arrived in 2007 at the various work sites on pallets containing stacks of 50 or more sheets.

5. Any markings on the boards would have been almost completely concealed until someone pulled the boards off the pallet to prepare them for installation.

6. No defendant other than the Installer Defendants had the repeated, hands on, up close view of the boards.

7. Once installed, the side of the board where any notation about ASTM compliance would have appeared faced the interior of the wall and could not have been read by any code official. Thus, once installed, a code official would not have been able to determine that the boards lacked ASTM marking.

The Court has previously ruled, in an order dated March 29, 2010, that Plaintiffs may properly rely upon provisions in the Building Code to supply the statutory violation required for a negligence *per se* claim. Plaintiffs retain the burden of proving that they have suffered the type of harm against which the Building Code was designed to protect and that the Code violations proximately caused their losses before the jury will be instructed on negligence *per se*.

Both Plaintiffs and Installer Defendants set forth in detail the various provisions of the 2000 and 2003 Uniform Statewide Building Code that relate to this controversy, and the Court does not restate these many and various provisions herein. For the purposes of this motion, the Court assumes that all parties agree that the Building Code relevant to each home involved in this litigation required the following: "Unless otherwise required by the purchase agreement, each board or package shall have legibly marked thereon the following: the thickness, the name of the producer or supplier, the brand name (if any); and the ASTM designation for the product."

[1] ASTM Designation C36-97, ¶ 12.1 (Exhibit C to Ramirez Brief in Opposition, filed 11/13/12).

There appears to be no controversy that the Chinese drywall lacked ASTM markings. In *Appeal of Atlantic Homes, LLC* (Appeal No. 10-21, April 22, 2011), the State Building Code Technical Review Board considered an appeal by Atlantic Homes (one of the settling defendants in the instant litigation) of a Building Code violation notice. The Board ruled that the Chinese drywall did not comply with the Building Code because it was neither labeled ASTM compliant nor approved as a reliable and tested equivalent to ASTM labeled drywall. Plaintiffs identify that violation of the USBC as the basis for their negligence *per se* claim against the Installer Defendants.

1. Duty of the Installer Defendants

In support of their Demurrer to this count, and in opposition to Plaintiffs' motion to prevent them from arguing that they are not subject to relevant provisions of the Building Code, the Installer Defendants argue that they contracted only to install drywall that was already present on the construction site when they arrived and that they have no responsibility for any defects in the drywall itself. As they argue:

> A drywall installer is not responsible for the quality of the drywall installed in the home …There is nothing in the Code to indicate that an installer, who does not purchase, import, or manufacture drywall is responsible for its testing and marking.

Torres Memorandum, filed 11/6/12, at 2. Further:

> The standard of care applicable to Defendant's duty of care is limited to the scope of the work Defendant performed on Plaintiffs' homes. The scope of Defendant's work was merely the installation of drywall already purchased and delivered to

---

[1] Defendant Ramirez challenges the applicability of many of the Building Code provisions cited by Plaintiffs, and, in a footnote at page 7 of his Memorandum, does not concede that the standard quoted above applies to homes governed by the 2003 Building Code; but he does not furnish an alternative Code provision that would apply instead. The Court has heard no evidence about any individual home that would permit a determination about what Code version applies to a particular home. If the parties disagree about the applicability of any of the provisions that form the basis for the Court's decision, that must be brought to the attention of the Court to be resolved by an evidentiary hearing.

the job site; this was the only task he contracted to perform. Thus, Defendant's standard of care is measured by the USBC provisions governing installation of drywall. Therefore, Defendant may violate his duty of care only by improperly installing the drywall.

Ramirez Memorandum, filed 11/13/12, at 5.

The Installer Defendants cite no law that supports the arguments stated above. Likewise, Plaintiffs cite no law that squarely addresses who must be deemed the "violator" when non-compliant materials are included in new construction. The State Building Code Technical Review Board apparently did not address whether any other contractor involved with the installation of the drywall could or should be cited with a Building Code violation for his or her actions or inactions; that decision dealt only with the culpability of the builder.

The two applicable versions of the Virginia Uniform Statewide Building Code include broad language requiring compliance. The 2003 Virginia USBC provides at §112.1: "It shall be the duty of <u>any person</u> performing work covered by this code to comply with all applicable provisions of this code and to perform and complete such work so as to secure the results intended by the USBC." (emphasis added). The purpose of the USBC, in turn, is "to protect the health, safety and welfare of the residents of the Commonwealth of Virginia, provided that buildings and structures should be permitted to be constructed at the least possible cost consistent with recognized standards of health, safety, energy conservation and water conservation…" *Id.* at § 102.1.

The compliance requirement in the 2000 version states, "It shall be the duty of <u>every person</u> who performs work regulated by the USBC … to comply with the USBC." 2000 Virginia USBC at § 102.2 (emphasis added). Neither the 2003 nor the 2000 compliance language clarifies, however, which provisions of the USBC must be complied with by whom: are the installers responsible to make sure that they install only code-compliant drywall, whether or

6

not they had anything to do with procuring the drywall? Or must they only comply with installation procedures required by the Code with no responsibility for the fact that the drywall they are installing does not conform to standards?

With no controlling authority on either side of this question, the Court will "construe the Building Code broadly enough to give substantial effect to [the] manifest legislative purpose" of the Code. *Virginia Electric & Power Co. v. Savoy Constr. Co.*, 224 Va. 36, 44, 294 S.E.2d 811, 817 (1982). The Court concludes that the interpretation imposing responsibility on all of the contractors directly involved in the process by which defective material makes it into a building better accomplishes the remedial goals of the USBC, specifically, protecting the health, safety and welfare of Virginians. Even though the Installer Defendants did not bring the offending drywall to the job site, they certainly handled it and had a clear opportunity to apprehend the absence of required ASTM labeling. Their duty to ensure that their work was completed "so as to secure the results intended by the USBC" should have triggered some action on their part to confirm that the materials complied with the Code or were an approved equivalent. Their argument that such a responsibility would thwart the USBC's purpose of permitting construction at the least possible cost is not persuasive. To the contrary, hindsight clearly shows that the goal of containing costs would have been much better served if a knowledgeable contractor had thrown up a red flag before installing unmarked drywall.

   2. Code compliance of unmarked drywall

The Installer Defendants argue that the USBC and the ASTM standard incorporated therein, quoted *infra*, in fact permits unmarked drywall with the "unless" clause: "Unless otherwise required by the purchase agreement, each board or package shall have legibly marked thereon the following: the thickness, the name of the producer or supplier, the brand name (if

any); and the ASTM designation for the product." They argue that unmarked drywall would not have aroused any suspicion, because an installer is justified in concluding that the purchase agreement had contracted away that requirement.

Plaintiffs argue that the safety requirements of the Code may not be negotiated away at the whim of the contracting parties and that such an interpretation would fatally undermine those requirements. They contend that the "unless" clause instead recognizes the availability of an approval process for alternative materials or methods of construction not specifically authorized by the Code. Their argument finds support in the decision by the Technical Review Board in Appeal of Atlantic Homes, LLC, which concluded that the unmarked drywall violated the USBC with no discussion of an exception to that requirement if the purchase agreement allows for it to be unmarked.

The Court cannot harmonize the detailed safety requirements in the USBC with the all-consuming exception that Defendants urge. The USBC would be impotent if parties could contractually waive its provisions with impunity – especially where, as here, those waiving the requirements are not the people who have to live in the homes. Plaintiffs' interpretation, that parties may contract around a particular requirement only when the alternative has been approved according to the provisions of the Code, better accomplishes the remedial purposes of the Code. The Court accepts that interpretation and will not allow argument that the Code requirements were or may have been excused.

## CONCLUSION

The Court sustains both Motions *in Limine* and overrules Defendants' Demurrer.

Pursuant to Rule 1:13 endorsements by counsel are waived.

Parties are to submit written objections to this Order within ten days.

8

The Clerk is directed to send copies of this Order to all counsel of record.

ENTERED: 3 Dec 2012

_____
MARY JANE HALL, JUDGE