# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO:<br><br>*Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* Case No. 2:09-cv-6687 (E.D. La.) | |


## TAISHAN'S RESPONSE IN OPPOSITION TO PSC'S SUBSTITUTED MOTION TO ENFORCE THE COURT'S JULY 17, 2014 CONTEMPT ORDER AND INJUNCTION

Michael P. Kenny, Esq.
Georgia Bar No. 415064
Bernard Taylor, Esq.
Georgia Bar No. 669625
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
mike.kenny@alston.com
*Counsel for Taishan Gypsum Co., Ltd. And Tai'an Taishan Plasterboard Co., Ltd.*


Alan Dean Weinberger
LA Bar No. 13331
HANGARTNER, RYDBERG & TERRELL, LLC
One Shell Square
701 Poydras St., Suite 310
New Orleans, Louisiana  70179
Phone:  (504) 434-6815
Fax: (504) 522-5689
aweinberger@hanrylaw.com
*Local Counsel for Taishan Gypsum Co., Ltd. And Tai'an Taishan Plasterboard Co., Ltd.*

## TABLE OF CONTENTS

**RELEVANT BACKGROUND ON CONTEMPT PROCEEDINGS** ......................................2

**DEFENDANTS' CHALLENGES TO  PSC'S "ENFORCEMENT OF CONTEMPT ORDER"** .....................................................................................................................4

**LAW AND ARGUMENT** ...................................................................................................7

    **I.**    **The PSC's Private Prosecution of Contempt Is an Unlawful Deprivation of Due Process That Prevents the Court from Granting Plaintiffs' Motion** ......................................................................................7

        *A.*    *The "Further Penalty" of 25 Percent Profits Is a Criminal Contempt Sanction* ...........................................................................7

        *B.*    *An Interested Party's Private Prosecution of Criminal Contempt Is Prohibited* .........................................................................8

        *C.*    *The PSC's Investigation and Prosecution of Contempt Is Unlawful*...................................................................................11

    **II.**    **Taishan Did Not Violate the Contempt Order** .................................................14

    **III.**    **Taishan Cannot Be Liable For Actions of Other Parties**...............................17

**CONCLUSION** .................................................................................................................19

# TABLE OF AUTHORITIES

Page(s)

CASES

*Atkinson v. McLaughlin,*
    343 F. Supp. 2d 868 (D.N.D. 2004) ....................................................................................16

*Bhd. of Locomotive Firemen & Enginemen v. United States,*
    411 F.2d 312 (5th Cir. 1969) .............................................................................................11

*Crowe v. Smith,*
    151 F.3d 217 (5th Cir. 1998) ................................................ 1, 7, 8, 9, 10, 11, 12, 14

*Ex parte Terry,*
    129 U.S. 289 (1888) ............................................................................................................8

*Gen. Signal Corp. v. Donallco, Inc.,*
    787 F.2d 1376 (9th Cir. 1986) ...................................................................................12, 14

*Gompers v. Buck's Stove 7 Range Co.,*
    221 U.S. 418 (1911) ............................................................................................................7

*Hovey v. Elliott,*
    167 U.S. 409 (1897) ............................................................................................................2

*Howard Johnson Co., Inc. v. Khimani,*
    892 F.2d 1512 (11th Cir. 1990)........................................................................................13

*In the Matter of Hipp, Inc.,*
    895 F.2d 1503 ......................................................................................................... 9, 10, 13

*In re Davidson,*
    908 F.2d 1249 (5th Cir. 1990) ....................................................................1, 9, 10, 11, 12

*In re Dinnan,*
    625 F.2d 1146 (5th Cir. 1980) ....................................................................................12, 14

*In re Terrebone Fuel and Lube, Inc.,*
    108 F.3d 609 (5th Cir. 1997) .............................................................................................8

*International Union, United Mine Workers of America v. Bagwell,*
    512 U.S. 821 (1994) ............................................................................................................8

*Lamar Fin. Corp. v. Adams,*
    918 F.2d 564 (5th Cir. 1990) .............................................................................................7

*Meyer v. Brown & Root Const. Co.*,
    661 F.2d 369 (5th Cir. 1981) ............................................................................17

*Mink v. AAAA Dev. LLC*,
    190 F.3d 333 (5th Cir. 1999) ..................................................................... 15, 16

*Rogers v. Tennessee*,
    532 U.S. 451 (2001) ........................................................................................18

*TrafficSchool.com, Inc. v. Edriver Inc.*,
    653 F.3d 820 (9th Cir. 2011) ..........................................................................13

*Young v. United States ex rel. Vuitton Et Fils S.A.*,
    481 U.S. 787 (1987) .......................................................... 1, 7, 8, 9, 10, 11, 12, 13

**RULES**

Fed. R. Crim. P. 42 ..................................................................................... 10, 11

Fed. R. Crim. P. 65 ..............................................................................................6

**STATUTES**

15 U.S.C. § 1117(a) ...........................................................................................13

29 U.S.C. § 1292(a)(1) .........................................................................................6

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: | |
| *Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.,* Case No. 2:09-cv-6687 (E.D. La.) | |

## TAISHAN'S RESPONSE IN OPPOSITION TO PSC'S SUBSTITUTED MOTION TO ENFORCE THE COURT'S JULY 17, 2014 CONTEMPT ORDER AND INJUNCTION

The PSC's motion to enforce this Court's July 17, 2014 Contempt Order cannot be squared with fundamental constitutional due process.  Indeed, under directly applicable Fifth Circuit and Supreme Court law, the PSC's investigation and prosecution of contempt "violated [Taishan's] right to due process" because the PSC is an interested party representing Taishan's civil adversaries and wrongfully claims a stake in proceeds from the very contempt findings it seeks to enforce.  *Crowe v. Smith,* 151 F.3d 217, 228 (5th Cir. 1998) (reversing and vacating criminal contempt conviction); *see also Young v. United States ex rel. Vuitton Et Fils S.A.,* 481 U.S. 787, 790 (1987) (holding that "a party that is the beneficiary of a court order may not be appointed to undertake contempt prosecutions for alleged violations of that order").  Any contempt finding from that process would be *ipso facto* invalid.  *Id.  See In re Davidson*, 908 F.2d 1249, 1251 (5th Cir. 1990) (holding that "harmless error analysis is inappropriate" for "a *Young* violation").

But the Court can deny the motion to enforce without reaching the constitutional issues because, as a matter of fact, Taishan did not conduct business in the U.S. during the contempt period, and the PSC has no ***evidence*** that Taishan did.  Finally, there is no factual or legal basis to

hold Taishan liable for alleged violations by entities that the PSC alleges to be "affiliates," an undefined term in the Contempt Order.

### RELEVANT BACKGROUND ON CONTEMPT PROCEEDINGS

Taishan reentered this litigation on February 17, 2015. (Rec. Doc. 18352.) Taishan immediately complied with every aspect of this Court's July 17, 2014 Contempt Order. (Rec. Doc. 17869.) First and foremost, Taishan resumed participation in this judicial process, ending the coercive injunction that had prohibited Taishan from doing business in the United States while not participating in this lawsuit. (Rec. Doc. 19392 (noting that after "Taishan appeared anew in the litigation on February 17, 2015," the contempt period prohibiting business in the United States ended). As required by the Contempt Order, Taishan paid into the registry of the Court its $40,000 contempt penalty and paid to the PSC $15,000 in attorneys' fees. (Rec. Doc. 18448; 18508.) Although not required by the Contempt Order, Taishan satisfied the *Germano* judgment, the original source of the Contempt Order. (Rec. Doc. 18725.)

Ironically, the PSC spurned the very participation they had ostensibly demanded for so long from Taishan. The PSC moved to "*preclude* Taishan or any of its affiliates *from participating in proceedings*" until Taishan had "provided an accounting of 25% of the profits earned by the company or its affiliates for the year of the violation of the contempt order"—assuming a "violation" that Taishan never committed. (Rec. Doc. 18367-1.) The PSC's stratagem to use the prior contempt holding as a barrier to Taishan's reentry was unconstitutional, as the United States Supreme Court has held directly, unequivocally, and repeatedly for more than a century. *See Hovey v. Elliott*, 167 U.S. 409, 415 (1897). Taishan was allowed to participate.

But still the PSC refused to focus fully on the homeowners' claims. Instead, the PSC made the *ultra vires* request that this Court deputize the PSC, "both as advocates for their clients and as officers of the Court," (Rec. Doc. 18302-1, p. 11) to *find, investigate and prosecute* historical

2

violations of the business injunction by Taishan or any of its "affiliates."  The PSC described their

plan to assume the role of MDL special prosecutor as follows:

> [T]o conduct under the caption and authority of this MDL any and all discovery allowed by the Federal Rules of Civil Procedure, to determine whether or not there have occurred violations of the injunctive sanctions specified in the Court's Contempt Order [] with respect to any and all affiliates and subsidiaries listed in Attachment 2, and, if so, to seek a full accounting from the appropriate sources in order to quantify and enforce the percent-of-profits penalty specified in that order.

(Rec. Doc. 18534-1, p. 3.)  Untethered to the Constitution, the PSC took their prosecutorial zeal

one step further, claiming that their clients—not the Court—would receive the proceeds of any

contempt penalties ultimately assessed.  (*See* Rec. Doc. 18302 at p. 10 (claiming that "Under a

theory of unjust enrichment, a contempt plaintiff is entitled to defendant's profits." (quotations and

citation omitted)); Rec. Doc. 19531 at p. 47 (Mr. Levin: "Well, whether its civil or criminal

contempt, . . . the damages can go to the class.").

Motivated by their quixotic expectation of pecuniary reward, the PSC embarked on a

months-long, far-reaching effort to identify (1) all companies that might qualify as a Taishan

"affiliate" under their reading of the Contempt Order, and (2) any "business" done in the U.S. by

those companies during the 7-month life of the coercive injunction.  The PSC's wide-ranging

investigation of potential violations of the Contempt Order by non-parties has taken longer than

the contempt period itself.  Eleven months after starting its investigation, the PSC reported that it

had taken 37 days' worth of deposition testimony from party defendants across the U.S. and in

China, and subpoenaed and/or deposed an additional 26 non-parties across the country, including

the New Jersey Institute of Technology, Walmart Stores, Inc., JP Morgan Chase & Co., and

Morgan Stanley.  The PSC collected hundreds of thousands of pages of documents from these

entities.  As of early August 2015, when Defendants CNBM Group and CNBM moved for relief

from the PSC's contempt prosecution, the PSC reported that it had already invested "millions and millions of dollars" on its international investigation.[1]  (Rec. Doc. 19531 at p.60.)  Yet the PSC's investigation continued.

Exactly one year after first moving to "enforce" the contempt order (Rec. Doc. 18302), the PSC moved to substitute that motion with a new motion, including "the facts developed throughout the course of extensive discovery efforts undertaken by the PSC." (Rec. Doc. 20032 at p. 4.) Taishan hereby responds in opposition to the PSC's Substituted Motion.  (Rec. Doc. 20032-2.) The Substituted Motion asks the Court to enter a proposed order prepared by the PSC (1) identifying entities that the PSC alleges to be Taishan "affiliates" and "subsidiaries" subject to the Contempt Order, and (2) finding that those entities conducted business in the U.S. during the contempt period in violation of the Contempt Order.  (Substituted Motion at 106-07.)  Further, the PSC requests "a hearing" (3) to "determine the penalty owed by "Taishan and/or any of the Taishan Affiliates and Subsidiaries" and (4) "to determine an appropriate award of attorney's fees and costs associated with PSC's efforts undertaken in pursuit of enforcing the Contempt Order and Injunction." (*Id.* at 107.)

### DEFENDANTS' CHALLENGES TO
### PSC'S "ENFORCEMENT OF CONTEMPT ORDER"

From the time it reentered the MDL, Taishan, along with BNBM Group, BNBM PLC, CNBM, and CNBM Group, raised multiple challenges to curtail or stop the PSC's financially motivated pursuit of contempt sanctions.  All were denied.

---

[1] CNBM Group was subsequently dismissed from this action on grounds of sovereign immunity. (Rec. Doc. 20150.)

- **Taishan's Motion to Lift Order of Contempt by Showing Compliance** (March 9, 2015, Rec. Doc. 18449)

  Taishan showed the Court that it had resumed MDL participation and payment of penalty and fees, and requested to lift the Contempt Order so that the parties could tend to the underlying homeowner claims.

- **Taishan's Opposition to PSC's Motion to Enforce Contempt Order** (March 9, 2015, Rec. Doc. 18451)

  Taishan argued that the PSC's stated plan to "enforce" the Contempt Order unconstitutionally broadened the scope of the Contempt Order. Taishan also argued that enforcement of the criminal penalty of 25 percent of profits required due process under the Federal Rules of Criminal Procedure, and Fifth Circuit and U.S. Supreme Court precedent. Taishan urged the Court to reject the PSC's request to serve as a private contempt prosecutor to vindicate contempt, citing binding law prohibiting interested parties from prosecuting contempt. Taishan predicted (accurately), that the PSC's efforts to find, investigate and prosecute contempt violations would delay the proceedings and distract from the adjudication of the homeowners' claims.

- **Taishan, BNBM and CNBM Filings re Participation** (March 9, 2015, Rec. Doc. Nos. 18450, 18453, 18454, 18455; and March 16, 2015, Rec. Doc. 18480)

  In a series of filings related to the PSC's motion to preclude the participation of defendants, each of the Taishan, BNBM and CNBM defendants challenged the constitutionality of the PSC's application of the Contempt Order and request to "enforce" it.

- **BNBM and BNBM Group's Opposition to PSC's Motion to Enforce Contempt Order** (May 8, 2015, Rec. Doc. 18872)

  BNBM defendants challenged enforcement of the Contempt Order against themselves and other unnamed "affiliates."

- **CNBM Entities'[2] Motion to Clarify the July 17, 2014 Contempt Order, or in the Alternative to Vacate the Order to the Extent it Purports to Apply to [CNBM Entities]** (July 9, 2015, Rec. Doc. 19271)

  The CNBM Entities argued that the Contempt Order cannot apply to the CNBM Entities under Rule 65, and further that the contempt injunction is impermissibly vague and overbroad.  The CNBM Entities asserted that the PSC's private prosecutorial regime was a denial of due process, and the PSC's claims of entitlement to contempt penalties was unlawful.

- **BNBM and BNBM Group's Joinder of the CNBM Entities' Motion to Clarify or Vacate** (July 13, 2015, Rec. Doc. 19294)

  BNBM joined the CNBM Entities' motion.

- **Notice of Appeal by CNBM Entities, Joined by BNBM and BNBM Group** (Sept. 8, 2015, Rec. Doc. 19448; and Sept. 22, 2015, Rec. Doc. 19534)

  After this Court declined to clarify or vacate the Contempt Order, allowing the PSC's prosecution of contempt to continue, the moving parties sought Fifth Circuit review.  The PSC urged the Fifth Circuit to dismiss the appeal, arguing that appellate jurisdiction was not available under 29 U.S.C. § 1292(a)(1) because the injunction at issue was no longer in effect.  On November 17, 2015, the Fifth Circuit dismissed the appeal for lack of jurisdiction.  Judge Haynes stated in concurrence: "Judge Haynes concurs in this order but only because the Appellees have conceded that the injunction in question has expired, leaving only consideration of the scope of the injunction as it relates to past conduct and

---

[2] This motion was brought by the "CNBM Entities," self-defined as China National Building Materials Group Corporation, China National Building Materials Company, Ltd., China National Building Materials & Equipment Import & Export Corporation, CNBM (USA) Corporation, CNBM Forest Products (Canada) Ltd., China National Building Materials Investment Trading, and United Suntech, Inc.

identity of the entities covered (a puzzling inquiry in the context of contempt, but one that is not ripe for review at this point)." (Rec. Doc. 19648-1.)

## LAW AND ARGUMENT

### I.     The PSC's Private Prosecution of Contempt Is an Unlawful Deprivation of Due Process That Prevents the Court from Granting Plaintiffs' Motion

The Constitution compels the Court to deny Plaintiffs' Motion to Enforce because the PSC has engaged in an unconstitutional self-interested private prosecution of criminal contempt that "violated [Taishan's] right to due process by denying [it] an independent and impartial prosecutor for the manifestly criminal sanctions [to be] imposed." *Crowe v. Smith,* 151 F.3d 217, 227-228 (5th Cir. 1998) (citing *Young v. United States ex rel. Vuitton Et Fils S.A.,* 481 U.S. 787, 798-99 (1987)).

### A.     The "Further Penalty" of 25 Percent Profits Is a Criminal Contempt Sanction

At the threshold, the 25% "doing business" penalty is a manifestly criminal sanction. The Contempt Order itself announced that the Court held Taishan in "contempt of court, both criminally and civilly." (Contempt Order at 2.)  When the Court prohibited Taishan from conducting business in the U.S. "until or unless it participates in this judicial process," it was imposing a paradigmatic coercive *civil* contempt sanction that would (and did) end when Taishan came into compliance. *See Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir. 1990) (holding that a contempt order is civil if the court's purpose is to coerce the contemnor into compliance); *see also Gompers v. Buck's Stove 7 Range Co.*, 221 U.S. 418, 442 (1911) (a civil coercive sanction exists where a party "carries the keys of [its] prison in [its] own pocket" and can "end the sentence and discharge [it]self at any moment by doing what [it] had previously refused to do").

By sharp contrast to the civil compensatory and coercive features of the Contempt Order, the imposition of a "further penalty" (Contempt Order at p. 3) of one quarter of the contemnor's

7

annual profits is **criminal** in nature because it seeks to punish the offender for past conduct and vindicate the authority of the Court.  *See Crowe*, 151 F.3d at 227 ("If the purpose of the order is to punish the party whose conduct is in question or to vindicate the authority of the court, the order is viewed as criminal.") (quoting *In re Terrebone Fuel and Lube, Inc.*, 108 F.3d 609, 612 (5ᵗʰ Cir. 1997).  The Court cannot impose on Taishan a monetary penalty for criminal contempt without the general due process requirements of criminal procedure, including the right to an independent and impartial prosecutor.  *Crowe*, 151 F.3d at 228.

The $40,000 penalty for not appearing at the judgment-debtor hearing was a summary criminal contempt sanction, which the Court permissibly imposed without criminal procedure under a narrow exception for "direct contempts committed in its presence."  *Ex parte Terry*, 129 U.S. 289, 313-14 (1888). That narrow exception does not apply to the doing-business penalty, which seeks to punish "out-of-court disobedience to complex injunctions," making criminal protections "clearly 'necessary and appropriate to protect due process rights of parties and prevent the arbitrary exercise of judicial power.'"  *Crowe*, 151 F.3d at 228 (quoting *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821 (1994)).  The PSC wrongly points to Taishan's nonattendance at the judgment debtor hearing on July 17, 2014 as an "act which undoubtedly took place in open court" justifying "summary contempt."  (Substituted Motion at 95, 97-98.)  But the act that the PSC now seeks to punish is the out-of-court business activities of various entities across the U.S. for the seven-month period following entry of the Contempt Order, which cannot be subject to a summary adjudication

### B.     An Interested Party's Private Prosecution of Criminal Contempt Is Prohibited

Under plain Supreme Court and Fifth Circuit law, the PSC's investigation and prosecution of criminal contempt against a civil adversary is not permitted. *See Young*, 481 U.S. at 809;

*Crowe*, 151 F.3d at 228-229; *Davidson*, 908 F.2d at 1251; *In the Matter of Hipp, Inc.*, 895 F.2d 1503, 1509. These governing decisions all reversed criminal contempt judgments precisely because opposing counsel served as the private prosecutor of allegations of criminal contempt arising from the same civil lawsuit.

The Supreme Court held unequivocally that "counsel for a party that is the beneficiary of a court order may not be appointed to undertake contempt prosecutions for alleged violations of that order." *Young*, 481 U.S. at 790. *Young* reasoned that the civil opposing counsel's dual interests—serving the United States' interest in vindication of its courts and the civil plaintiffs' interests in extracting payments from the defendant—created insurmountable conflicts of interests that deprived the alleged contemnor of due process:

- "A [private] prosecutor may be tempted to bring a tenuously supported prosecution if such a course promises financial or legal rewards for the private client." *Id.* at 805.

- "A [private] prosecutor may be tempted to abandon a meritorious prosecution if a settlement providing benefits to the private client is conditioned on a recommendation against criminal charges." *Id.*

- The underlying civil claims "could have created temptation to use the criminal investigation to gather information of use in those suits, and could have served as bargaining leverage in obtaining pleas in the criminal prosecution." *Id.* at 806.

The *Young* court reversed the finding of contempt because a "prosecutor of a contempt action who represents the private beneficiary of the court order allegedly violated . . . is required by the very standards of the profession to serve two masters." *Id.* at 814.

9

The *Young* precedent bound the Fifth Circuit similarly to reverse and vacate contempt penalties issued against a civil defendant in the Western District of Louisiana. *Crowe*, 151 F.3d 217. The Fifth Circuit confirmed that "where criminal contempt is involved, there must actually be an independent prosecutor of some kind." *Id.* at 227-228. The Fifth Circuit had "no doubt" that, because a civil adversary "was in fact allowed to serve as a 'prosecutor,' the district court failed to follow the command of *Young*. *Id.* at 227. Moreover, the Fifth Circuit rejected as "of no moment" the argument that the appointment was not unconstitutional because the plaintiffs' attorney had "only investigated and presented the evidence" to the district court for the court's consideration and adjudication. *Id.* at 227-228.

The Fifth Circuit will not overlook the use of an interested party to prosecute contempt as harmless error. *In re Davidson*, 908 F.2d at 1251 (holding that "where, as here, there is a *Young* violation, harmless error analysis is inappropriate" (internal quotations and citations omitted)); *accord Matter of Hipp, Inc.*, 895 F.2d at 1509.

As Taishan argued less than a month after reentering the case (*see* Rec. Doc. 18451 at 10-12.), these constitutional requirement of an independent criminal-contempt prosecutor is written into Federal Rule of Criminal Procedure 42. That Rule expressly disfavors private prosecution of contempt and prohibits interested parties from having that important role. Rule 42(b) provides that "[t]he court must request that the contempt be prosecuted by an attorney for the government." Fed. R. Crim. P. 42. A court can appoint another attorney to prosecute the contempt only if "the government declines" or if "the interest of justice requires the appointment of another attorney." *Id.* But any non-governmental attorney cannot represent an interested party:

> Revised Rule 42(a)(2) now explicitly addresses the appointment of a "prosecutor" and adopts language to reflect the holding in *Young v. United States ex rel. Vuitton*, 481 U.S. 787 (1987). In that case the Supreme Court indicated that ordinarily the court should request that

an attorney for the government prosecute the contempt; only if that request is denied, should the court appoint a private prosecutor. ***The rule envisions that a disinterested counsel should be appointed to prosecute the contempt.***

*Id.*, committee note to 2002 amendment (emphasis added).  The Fifth Circuit agrees:

> It is the experience of this Court that the National Sovereign, through its chosen law officers, should be in control of criminal contempt proceedings. Only in this way can we have the assurances that the contentions, both factual and legal, of the prosecution are thought by responsible governmental officials to be the policy that the court should adopt.

*Bhd. of Locomotive Firemen & Enginemen v. United States*, 411 F.2d 312, 319-20 (5th Cir. 1969).

On this legal authority, Taishan urged the Court to reject the PSC's plan of "enforcement" as "a terrible idea that would thwart justice."  (Rec. Doc. 18451 at 12.)  Yet the PSC was allowed to proceed.  (Rec. Doc. 18493.)

### C.    The PSC's Investigation and Prosecution of Contempt Is Unlawful

The dual "contempt track" and "damages track" process that the PSC has pursued in this case is in many ways more egregious than the scenarios flatly rejected by the Supreme Court in *Young* and Fifth Circuit in *Crowe* and *Davidson*.  In those cases, the private-party prosecutions commenced ***after*** the underlying civil claims had been resolved.  *See Young*, 481 U.S. at 790-92 (alleged violation of permanent injunction in settlement of underlying claims); *Crowe*, 151 F.3d at 221 (alleged discovery violations discovered after settlement of the underlying claims); *In re Davidson*, 908 F.2d at 1250 (alleged violation of preliminary injunction more than a year after entry of judgment).  Here, however, the PSC's pursuit of civil damages and efforts to "enforce" the Court's contempt order have run ***concurrently,*** creating even greater concern for conflicts of interest than the less direct "temptations" identified by the higher courts.

The PSC's unconstitutional prosecution plan is also worse because—in contrast to the full jury trial in *Young* and in the bench trial in *Crowe*—the PSC's Substituted Motion does not propose even an evidentiary hearing on their proposed findings of contempt.  Instead, the PSC moves for this Court, on the PSC's submissions, to simply enter the PSC's own proposed order finding that certain entities were Taishan affiliates for purposes of the Contempt Order and violated the injunction by conducting business in the U.S. during the contempt period.  (Substituted Motion at 106-07.)  The only "hearing" requested by the PSC is "to determine the penalty owed by Taishan and/or any of the Taishan Affiliates and Subsidiaries," and "to determine an appropriate award of attorney's fees and costs associated with PSC's efforts undertaken in pursuit of enforcing the Contempt Order and Injunction."  (*Id.* at 107.)  The summary proceedings sought by the PSC are akin to the one-day show cause hearing condemned by the Fifth Circuit in *In re Davidson*.  908 F.2d at 1250-1251 ("No prosecution 'case' was put on other than [opposing counsel's] argument.").

The most flagrantly unconstitutional feature of the PSC's efforts has been their constant claim of entitlement to the penalties that the Court may impose for historic violations of the criminal injunction.  (*See* Rec. Doc. 19531 at p. 47 (Mr. Levin: "Well, whether its civil or criminal contempt, . . . the damages can go to the class.").  A civil litigant is not entitled to proceeds from criminal fines and contempt penalties.  *See, e.g., In re Dinnan*, 625 F.2d 1146, 1149 (5th Cir. 1980); *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986).  In *Young*, the Supreme Court rejected even the *appearance* of impropriety posed by the ancillary contractual award that attended a finding of contempt.  *See* 481 U.S. at 806.  Here, the PSC makes no bones about its unfounded expectations that any profits "penalty" will be payable to their clients, with

reimbursement of their prosecutorial attorneys' fees and costs to boot.[3]  (*See* Rec. Doc. 19531 at p. 47 (Mr. Levin: "Well, whether its civil or criminal contempt, . . . the damages can go to the class."; Substituted Motion at 106-07 (seeking "an appropriate award of attorney's fees and costs associated with PSC's efforts undertaken in pursuit of enforcing the Contempt Order and Injunction.")

No authority supports the PSC's claim to any contempt recovery.  Indeed, it brings the PSC even more squarely under *Young* as "a party that is the beneficiary of a court order" who "may not be appointed to undertake contempt prosecutions." 481 U.S. at 790. The cases the PSC cites to justify its pursuit of a share of defendants' profits all have one thing in common:  they involve trademark and patent disputes.  (Rec. Doc. 19354 at pp. 50-51.)  That unifying feature presents a critical distinction from this case.  In those cases, the injunction at issue prohibited a party from infringing on the opposing party's trademark or patent—the very heart of the claims at issue.  A contemptuous violation of that injunction deprived the opposing party of royalties or other remuneration, causing actual damage to the opposing party, and triggering a need for compensatory damages to the holder of the intellectual property in the form of disgorgement of profits "under a theory of unjust enrichment or, alternatively, an application of the Lanham Act. 15 U.S.C. § 1117(a) (1982 & Supp. 1989); *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1519 (11th Cir. 1990); *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 831 (9th Cir. 2011) (stating that the Lanham Act permits disgorgement of profits only as "compensation and not a

---

[3] The costs of the PSC's unconstitutional private prosecution, over the objections of Taishan and other parties, cannot be taxed to Taishan.  Under *Young* and its progeny, the PSC cannot even conduct this investigation and prosecution against Taishan.  The mere request for attorneys' fees from a private contempt prosecutor makes that attorney an unconstitutionally interested party with a potential financial benefit and invalidates the contempt prosecution.  *See In re Hipp*, 895 F.2d at 1508.

penalty" and affirming that plaintiffs' failure to produce any proof of past injury or compensation denied them any claim to defendants' profits).

It does not follow that the tort plaintiffs here are entitled to a profit-disgorgement penalty for violations of this criminal contempt injunction that is completely untethered from the underlying claims for damages.  Unlike the inapposite intellectual property holders in the cases on which they purport to rely, the plaintiffs here do not suffer a direct pecuniary loss resulting from the contemptuous behavior.  Just as the plaintiffs did not receive the $40,000 contempt fine Taishan paid to the registry of the Court, they will not receive the "further penalty" of 25 percent profits of any party subject to the Contempt Order found to have violated the business injunction.  *See, e.g., Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986); *In re Dinnan*, 625 F.2d 1146, 1149 (5th Cir. 1980).

The PSC's claim of entitlement to profits from alleged violations of the Court's injunction should be squarely rejected as a centrally unlawful component of the PSC's unconstitutional private prosecution of contempt.

## II.     Taishan Did Not Violate the Contempt Order

The Court should impose no penalty against Taishan because Taishan did not violate the Court's business injunction.  As a matter of law, the PSC's allegations fail to show a violation. The only competent evidence is that Taishan ***did not*** do business in the U.S. during the contempt period. The PSC's submissions to the contrary are facially and legally insufficient to meet any standard of proof, let alone the high "beyond a reasonable doubt" standard of proof that must be applied in this criminal contempt setting. *See Crowe*, 151 F.3d at 228.

14

The PSC alleges that at least 22 entities were somehow affiliated with Taishan and did business in the U.S. during the contempt period[4]. (*See* Substituted Motion.)  But the PSC makes only one allegation against Taishan itself.  Buried on pages 82-84 of the 112-page memorandum, the PSC states that BNBM, *Taishan*, CNBM Import & Export, CNBM International, and CNBM International Engineering all posted products on Alibaba.com, a China-based website for global wholesale trade, during the contempt period.  (Substituted Motion at pp. 82-84.)  According to the PSC, merely by having a presence on a globally available website to "advertise their products to ***potential*** buyers in the U.S. ***and elsewhere***," Taishan conducted business in the U.S. in violation of the Contempt Order.  (*Id.* at p. 83 (emphasis added).)  That is the only allegation by the PSC about an alleged "violation" by Taishan.

The PSC's only documentary submission related to Taishan's postings on Alibaba.com are ***undated*** printouts from the Alibaba website.  (Substituted Motion at 82, fn. 421.)  The PSC's Substituted Motion implicitly acknowledges that the Alibaba Internet postings were not captured during the contempt period by stating "a review of the Alibaba website reveals that the following entities ***currently*** post 'storefront' profiles to advertise their products."  (Substituted Motion at 83.)  But those undated printouts cannot possibly support a finding that Taishan conducted business in the U.S. in violation of the injunction, for several reasons.

First, as a matter of Fifth Circuit law, the mere presence on a website accessible in a geographic region (and elsewhere) does not constitute "conducting business" in that region.  See *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 337 (5th Cir. 1999) (holding that mere provision of an

---

[4] The contempt period commenced on July 17, 2014, the date the Contempt Order was entered, and ended on February 17, 2015, the date Taishan re-entered the litigation through appearance by its counsel. Rec. Doc. 18352; see also Transcript of November 9, 2015 Motions Hearing at p. 2 (describing the contempt period as "7/19/14 [*sic*] to 2/17/15.").

email address on an internet website permitting consumers to interact with nonresident company about its products does not support sufficient "doing business over the Internet" to exercise of personal jurisdiction over company); *see also Atkinson v. McLaughlin*, 343 F. Supp. 2d 868, 874 (D.N.D. 2004) (citing to *Mink* to find that defendant's website, which contained an email hyperlink to contact defendant, was not sufficient to find the website "interactive" or to confer personal jurisdiction).   If just being listed on a website meant "doing business," then every person, individual or corporate, that posts on the "world wide web" would be subject to the jurisdiction of every U.S. court on the mere basis of accessibility via the Internet.  But that is not the law; the Fifth Circuit requires purposeful transactions to satisfy due process. *Mink*, 190 F.3d at 336.

Therefore, to show a violation, the PSC has to show that Taishan engaged in purposeful transactions with the U.S., through Alibaba or otherwise, between July 2014 and February 2015. But no such transactions occurred.  And the undisputed evidence proves that "Taishan Gypsum Co., Ltd. And Tai'an Taishan Plasterboard Co., Ltd, and their subsidiaries have ***not done business of any kind in the United States*** in the stated timeframe."  (Taishan's Responses and Objections to the PSC's Supplemental Interrogatories, at p. 6 (emphasis added).)

The PSC's sweeping investigation developed no evidence to the contrary.  During the 30(b)(6) deposition of Taishan taken June 2-4, 2015, the PSC asked Taishan's representative about Taishan's awareness of the Contempt Order and business injunction, but never solicited any testimony about whether Taishan in fact conducted business in the U.S. during the contempt period.  (Transcript of the 30(b)(6) Deposition of Taishan Gypsum Co. Ltd., June 2, 2015, at pp. 146-151.)  Similarly, the PSC did not ask Taishan's Chairman, Tongchun Jia, or former employee, Wenlong Peng, if Taishan conducted business in the U.S. during the contempt period.  Nor did the

16

PSC solicit any testimony from any of Taishan's witnesses about Taishan's postings on Alibaba.com.

The Court should reject the PSC's implication that Taishan transacted with the U.S. in the contempt period based on the assertion that it has been "previously found in this litigation" that "Taishan's use of Alibaba to advertise its products . . . resulted in sales of Taishan's drywall to companies in the United States," with two footnoted citations.  (*Id.* at 83.)  The first is to *one of the PSC's own briefs* (filed in May 2012), which says nothing about Taishan's use of Alibaba.com.  The second is to a statement in the 2014 Fifth Circuit opinion on jurisdiction that a particular Florida construction company had "discovered Taishan through Alibaba.com" not during the contempt period, but at some point prior to being served with legal complaints in **2009**.  (*Id.* at 82, fn. 426).

That's it.  Nothing in the PSC motion (or elsewhere) establishes that Taishan pursued or completed any transactions with U.S. customers *during the seven-month contempt period* in 2014 and 2015—which is the only time period at issue.  Indeed, the only evidence is that Taishan did *not* conduct "business of any kind in the United States" in the contempt period.  Under any standard of proof, Taishan cannot be found to have violated the Contempt Order by conducting business in the U.S. during the contempt period.

### III.    Taishan Cannot Be Liable For Actions of Other Parties

Without evidence that Taishan directly violated the business injunction, Taishan should bear no liability for the conduct of any other entity. As the Defendants have repeatedly argued, the Contempt Order is impermissibly vague in several respects. (See Rec. Docs. 19271, 19294 19356, 19358); see also *See Meyer v. Brown & Root Const. Co.*, 661 F.2d 369, 373 (5th Cir. 1981) (holding that a contempt injunction "must simply be framed so that those enjoined will know what conduct the court has prohibited).  In appellate proceedings, Judge Haynes of the Fifth Circuit

highlighted some of those ambiguities as "a puzzling inquiry in the context of contempt." (Rec. Doc. 19648-1.) One additional impermissible vagueness arises to the extent that the Contempt Order can be read to make Taishan pay for any violation by "affiliates who violate the order." [5] Holding Taishan liable for other parties' actions is not justified by the facts or the law, and should not be enforced.

The 22 entities the PSC alleges to be "affiliates" of Taishan for purposes of the Contempt Order[6] are not in fact alter egos of Taishan. *See* Rec. Doc. 19271-1, pp. 6-9; Rec. Doc. 19538, pp. 4-5; Rec. Doc. 19527, pp. 40-45; Rec. Doc. 19646-1; Rec. Doc. 19649-3, pp. 23-34; Rec. Doc. 19664-1, pp. 12-14.

Nor as a matter of law can the activities of the 22 alleged affiliates be imputed to Taishan. The PSC cannot reply on the Court's later September 26, 2014 holding that "'CNBM, CNBM Group, BNBM, and BNBM Group are affiliates of Taishan'" as somehow retrospectively binding Taishan by the actions of those entities with respect to the earlier July 17, 2014 Contempt Order. (Substituted Motion at 11 (quoting Findings of Fact and Conclusions of Law with Respect to Plaintiffs' Omnibus Motion for Class Certification, Rec. Doc. 18028 ("Class FOFCOL")).) To use a later finding to give meaning and definition to the application of an earlier criminal contempt order is an improper *ex post facto* construction. *Rogers v. Tennessee*, 532 U.S. 451, 456, (2001) (holding that while the Constitution explicitly prohibits *ex post facto* application of criminal

---

[5] The Contempt Order is vague on its face as to the scope of the "profits" for calculating a 25 percent penalty, referring simply to "profits earned . . . for the year of the violation." The Court has subsequently suggested that the "profits" might be the net revenue from any U.S. business during the contempt period. (3/16/2015 Hrg. Trans. at 11:1-4 ("So I said don't do business in the United States until and unless you comply with the Court's order; and if you do, you are going to forfeit 25 percent of *the earnings that you make in violating the Court's order*.") (emphasis added).

[6] The PSC identifies the 22 entities on Attachment 1 to its Substituted Proposed Order, Rec. Doc. 20032-2.

legislation, "limitations on *ex post facto* judicial decisionmaking are inherent in the notion of due process").

The due process concerns are amplified because the Court based the Class FOFCOL "factual finding" not on evidence, but solely on deemed discovery admissions resulting from Taishan's *non-participation in the judicial proceedings* (Class FOFCOL at p. 14, ¶ 28.)  Indeed, it was not until after Taishan had announced its withdrawal from the case and the Court entered the Contempt Order that the PSC chose to serve the discovery requests that were later deemed admitted based on Taishan's (entirely predictable) failure to respond.  To use the PSC's activities during the contempt period to retroactively expand the scope and application of the Contempt Order itself would be the antithesis of due process.

Taishan should not bear liability for actions of other entities improperly pushed into the scope of the Court's Contempt Order by a zealously interested PSC.

## CONCLUSION

For the foregoing reasons, the Motion to Enforce should be DENIED.


Dated:  February 13, 2017

Respectfully submitted,

/s Michael P. Kenny
Michael P. Kenny, Esq.
Georgia Bar No. 415064
Bernard Taylor, Esq.
Georgia Bar No. 669625
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777

19

mike.kenny@alston.com
*Counsel for Taishan Gypsum Co., Ltd. And Tai'an Taishan Plasterboard Co., Ltd.*

Alan Dean Weinberger
LA Bar No. 13331
HANGARTNER, RYDBERG & TERRELL, LLC
One Shell Square
701 Poydras St., Suite 310
New Orleans, Louisiana 70179
Phone: (504) 434-6815
Fax: (504) 522-5689
aweinberger@hanrylaw.com
*Local Counsel for Taishan Gypsum Co., Ltd. And Tai'an Taishan Plasterboard Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, by U.S. mail and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 13th day of February, 2017.

/s/Christina Hull Eikhoff
Georgia Bar No. 242539
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
christy.eikhoff@alston.com
*Counsel for Taishan*