# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | CIVIL ACTION |
| | NO. 09-02047 |
| | SECTION "L" (5) |
| THIS DOCUMENT RELATES TO: ALL CASES | |

## ORDER & REASONS

Before this Court are (i) the CNBM Entities, joined by the BNBM Entities, Motion to Clarify the July 17, 2014 Contempt Order (R. Docs. 19271, 19294) and (ii) China National Building Material Investment Co. Ltd. ("CNBMI"), BNK International, LLC ("BNK"), and Jeffrey J. Chang's ("Chang") (collectively, the "Texas Litigants") Joint Request for Direction regarding the July 17, 2014 Order (R. Doc. 19311).  Having read the parties' briefs, heard the motion on oral argument, and reviewed the applicable law, the Court now issues this Order and Reasons.

**I.     MOTION TO CLARIFY THE CONTEMPT ORDER**

   **a.   BACKGROUND**

The Contempt Order at issue in the present motion (R. Doc. 17869) originated from Taishan's decision to cease active participation in the proceedings before this Court. Specifically, the Court issued the Contempt Order following Taishan's failure to appear for its debtor's examination in the *Germano* action in violation of a Court Order.  The Contempt Order stated the following:

> As a consequence of Taishan's refusal to appear at this Judgment Debtor Examination, in direct, willful violation of this Court's June 20, 2014 order, the Court holds Taishan in

**EXHIBIT 4**

> contempt of court, both criminally and civilly. This refusal to appear is a direct contemptuous act occurring in open court after actual notice of the proceedings. Such disobedience of the Court's order harms both the many other parties in this case and the decorum of the Court… In this massive suit, the harm from Taishan's noncompliance is high and requires strong sanctions to coerce compliance and restore integrity to these proceedings…

(R. Doc. 17869). In addition to requiring Taishan to pay $15,000 in attorneys' fees and $40,000 as a penalty for contempt, the Court enjoined Taishan and any of its affiliates or subsidiaries from conducting any business in the United States "until or unless it participate[d] in this judicial process." *Id.* If Taishan violated the injunction, it would be required to pay a penalty of 25% of the profits earned by the company "or its affiliates who violate the order, for the year of the violation." *Id.* Taishan appeared anew in the litigation on February 17, 2015 (R. Doc. 18352). It paid the judgment plus penalties and attorneys' fees. The remaining issue is whether it or any affiliates or subsidiaries did business in the United States during the period that Taishan was in contempt. Beginning in February and March 2015, the BNBM and CNBM entities entered their appearances in the litigation. On March 17, 2015, the Court ordered Taishan and the BNBM and CNBM Entities to participate in expedited discovery relating to "the relationship between Taishan and BNBM/CNBM, including whether affiliate and/or alter ego status exists" since the "Court cannot yet assess whether there is need to enforce the associated penalty of 25% profits." (R. Doc. 18493).

    **b. PRESENT MOTION**

The CNBM and BNBM Entities move the Court to clarify that the Contempt Order (the "Order" or "Injunction") does not apply to them or, to the extent the Order purported to do so, to vacate the Order in relevant part. The CNBM and BNBM Entities (the "Entities") make the following arguments in defense of their motion. First, the Entities argue that the Contempt Order cannot be said to apply to them because it was motivated solely by the inaction of

2

Taishan. Second, the Entities argue that the Contempt Order cannot apply to them because the Court cannot enjoin parties over which it has no jurisdiction. Third, the Entities argue that the Injunction is impermissibly vague and overbroad to the extent it purports to apply to them in that it neither defines "affiliate" nor specifies the business conduct that is enjoined.

   c. ANALYSIS

To begin, the Court agrees with the Entities in that it was not their precipitous act that lead to the Contempt Order. Rather, it was Taishan's action or inaction that led to the Contempt Order. That said, the Injunction specifically enjoined Taishan *and any of its affiliates or subsidiaries* from conducting business in the United States. At the time it issued the Injunction, the Court was concerned that if it merely held Taishan in contempt and required Taishan to pay damages, the Contempt Order alone would not stop Taishan from continuing to disregard the orders of the Court. The Court felt it was necessary to issue an injunction in order to keep Taishan in the litigation and punish Taishan for its earlier refusal to cooperate.

The Court issued the Contempt Order on July 17, 2014. On March 17, 2015, the Court ordered the parties to immediately commence discovery related to the relationship between Taishan and the BNBM and CNBM Entities, including whether affiliate and/or alter ego status exists. (R. Doc. 18493). This is the current stage of the litigation. The parties are conducting discovery as to whether or not Taishan did business in the United States during the contempt period, including whether Taishan did so through its affiliates or subsidiaries or as a single business enterprise in conjunction with the BNBM or CNBM Entities. Thus, the issues before the Court as they relate to the Contempt Order are as follows: (i) Who were Taishan's affiliates and/or subsidiaries during the contempt period; (ii) Was Taishan acting as an alter ego; and/or (iii) Was Taishan acting by means of a single business enterprise?

The Contempt Order is clear; it clearly applies to Taishan's subsidiaries and affiliates. If any of Taishan's affiliates or subsidiaries did business in the United States during the contempt period, it will have violated the Injunction and will be required to remit 25% of its earnings during that time. If Taishan did business in the United States during the contempt period, as an alter ego or by means of some common business enterprise, Taishan will be in violation of the Injunction and will be required to remit 25% of its profits. What is not *yet* clear is what entities are affiliates and/or alter egos of Taishan. These terms are not vague; rather, they are legal terms, requiring a legal determination. However, these legal determinations are factually pregnant. The presence or absence of a subsidiary, affiliate, alter ego, or common business enterprise status or relationship with Taishan is enshrouded in facts. This justifies the ongoing the discovery and perhaps requires an evidentiary hearing. Following a period of discovery and, if appropriate, an evidentiary hearing, the Court will make findings of facts and conclusions of law as to whether or not the CNBM or BNBM entities are alter egos, affiliates, or subsidiaries, and/or whether or not there is a common business enterprise. The Entities are correct in their assertion that the Court cannot hold them contempt if it lacks jurisdiction over them. Consequently, any evidentiary hearing related to the Injunction will be scheduled shortly after the jurisdictional ruling as the jurisdictional ruling may well affect any contempt proceeding.

Accordingly, **IT IS ORDERED** that the Motion to Vacate the Contempt Order is **DENIED**.

## II. JOINT REQUEST FOR DIRECTION REGARDING THE CONTEMPT ORDER

Relatedly, the Texas Litigants request that this Court provide direction regarding the effect, if any, of this Court's July 17, 2014 Contempt Order. By way of background, CNBMI

4

filed a lawsuit in Texas against BNK and Chang on July 30, 2014. *See China National Building Material Investment Co. Ltd. v. BNK International LLC and Jeffrey J. Chang*, Civ. Action No. 14-CV-00701-SS, in the United States District Court for the Western District of Texas, Austin Division (the "Texas Lawsuit"). On May 12, 2015, after learning of the Contempt Order, BNK and Chang filed *Defendants' Joint Motion to Dismiss as a Result of Apparent Injunction Against Plaintiff* in the Texas Lawsuit. On June 17, 2015, Judge Sparks issued an abatement order in the Texas Lawsuit and required the parties to submit a joint request to this Court "… seeking direction from the presiding judge in that case as to the effect of the Order, if any, on the…" Texas Lawsuit.

As stated above, it is premature for the Court to fully address the matters raised by the Texas Litigants. Judge Sparks appropriately abated the Texas Lawsuit. Ongoing discovery and a possible evidentiary hearing will determine whether CNBMI is an affiliate or subsidiary of Taishan. When such determination is made, the Court will be able to provide the appropriate direction to the Texas Litigants. Accordingly,

**IT IS FURTHER ORDERED** that the issues of (i) whether CNBMI is an affiliate or subsidiary of Taishan and (ii) whether CNBMI's Texas Lawsuit constitutes conducting business in the United States in violation of the Contempt Order be deferred until the relevant discovery and any necessary evidentiary hearing is completed.

New Orleans, Louisiana this 17th day of August 2015.

UNITED STATES DISTRICT JUDGE

5