Confidential - Subject to Further Confidentiality Review

Page 150

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

```
                                    )
                                    ) MDL No. 2047
IN RE: CHINESE-MANUFACTURED DRYWALL ) SECTION: L
PRODUCTS LIABILITY LITIGATION,      ) JUDGE FALLON
                                    ) MAG. JUDGE WILKINSON
```

VIDEOTAPED 30(b)(6) DEPOSITION OF JOHN SALAMANCA

VOLUME II

May 22, 2015

Seattle, Washington

***** Confidential *****

***** Subject to Further Confidentiality Review *****

EXHIBIT
11

GOLKOW TECHNOLOGIES, INC.

877.370.3377 ph | 917.591.5672 fax

deps@golkow.com

Confidential - Subject to Further Confidentiality Review

Page 154

1                    BE IT REMEMBERED that on Friday,

2    May 22, 2015, at 1201 Third Avenue, Seattle, Washington,

3    at 9:00 a.m., before Cindy M. Koch, Certified Court

4    Reporter, RPR, CRR, CLR, appeared JOHN SALAMANCA, the

5    witness herein;

6                    WHEREUPON, the following proceedings

7    were had, to wit:

8

9                    <<<<<< >>>>>

10

11                    (Exhibit No. 42 marked for

12                        identification.)

13

14                    THE VIDEOGRAPHER:  We are now on the

15   record.  My name is Nicholas Rapp.  I am a videographer

16   for Golkow Technologies.  Today's date is May 22nd, 2015,

17   and the time is 9:13 a.m.

18       This continued video deposition is being held at

19   1201 Third Avenue, Suite 3200, Seattle, Washington 98101,

20   concerning the matter of In Re Chinese-manufactured

21   Drywall Products Liability Litigation, Case No.

22   2:09-MD-02047-EEF-JCW for the U.S. District Court,

23   Eastern District of Louisiana.

24       The deponent is John Salamanca.

25       Counsel, could you please voice identify yourselves.

Confidential - Subject to Further Confidentiality Review

Page 155

1                         MR. GAUGHAN:  Yes.  Good morning.
2       Matthew Gaughan, from Levin Fishbein, on behalf of the
3       Plaintiff's Steering Committee.
4                         MR. WITTMAN:  Mark Wittman, counsel
5       for the deponent's employer, Western Wood Lumber.
6                         MR. PFAEHLER:  Kenneth Pfaehler,
7       Dentons US LLP, counsel for BNBM and BNBM Group.
8                         MR. CABOT:  Jason Cabot, from Orrick
9       Herrington & Sutcliffe, on behalf of CNBM Group, CNBM
10      Company, CNBM Forest Products Limited, and CNBM Forest
11      Products Canada Limited.
12                        THE VIDEOGRAPHER:  The court -- excuse
13      me.  Sorry.
14                        MR. GAUGHAN:  Go ahead.
15                        THE VIDEOGRAPHER:  The court reporter
16      is Cindy Koch, and may now swear in the witness.
17
18      JOHN SALAMANCA,        having been first duly sworn
19                             by the Certified Court Reporter,
20                             testified as follows:
21
22                        EXAMINATION
23      BY MR. GAUGHAN:
24   Q  Good morning, Mr. Salamanca.  I'm handing you what's been
25      marked as Exhibit 42 to your deposition.

Confidential - Subject to Further Confidentiality Review

```
 1      shipping --

 2   Q  (By Mr. Gaughan)  Yeah.

 3   A  -- no.  No.

 4   Q  How about to visit your tree farms or anything like that?

 5                  MR. CABOT:  Same objection.

 6                  THE WITNESS:  Yes.  We've had a

 7      representative from CNBM Forest Products Limited visit

 8      our log yard.

 9   Q  (By Mr. Gaughan)  Who was that?

10   A  Daniel.

11   Q  And was that during one of the visits we discussed

12      previously, where he came to your offices?

13   A  Yes.

14   Q  Okay.  And do you know when that was, that he actually

15      went out to the log yard?

16   A  Either late -- probably late second quarter 2014 or early

17      third quarter 2014.

18   Q  Do you have any knowledge of what compensation either

19      BNBM or CNBM Forest Products Canada would receive on any

20      of the agreements we looked at yesterday and today?

21                  MR. CABOT:  Objection.  Vague.

22                  MR. PFAEHLER:  Objection.  Compound.

23                  THE WITNESS:  No.

24   Q  (By Mr. Gaughan)  And has anyone from BNBM ever told you

25      what they actually do with these logs once they're
```

Confidential - Subject to Further Confidentiality Review

Page 189

1       shipped to China?

2   A   No.

3   Q   Do you have any independent knowledge of what they do

4       with the logs once they're shipped?

5   A   No.

6   Q   And how about with respect to the -- the logs that you

7       would -- you sold to CNBM Forest Products Canada?  Do you

8       have any knowledge of what they did with those logs once

9       they received them?

10  A   Ye- -- yes.

11  Q   Okay.  What --

12  A   I mean, just based on the documents that we've looked at,

13      I do know those logs were shipped to a third party, an

14      independent party, not . . .

15  Q   Do you have a sense of the total compensation that you've

16      received on the various contracts and -- that we looked

17      at today and yesterday with respect to BNBM?

18                  MR. PFAEHLER:  Objection to form.

19      Objections to form.

20                  THE WITNESS:  Yes.

21  Q   (By Mr. Gaughan)  And what is that?

22  A   Just based on the time period in question.

23  Q   Yes, the stuff we looked at yesterday and today.

24  A   Yeah --

25                  MR. PFAEHLER:  Objection to form.

Confidential - Subject to Further Confidentiality Review

1                          THE WITNESS:  Over two -- $2 million.

2   Q   (By Mr. Gaughan)  And that's for BNBM; correct?

3   A   Yes.

4   Q   Okay.  And how about for CNBM Forest Products Canada

5       Limited?

6                          MR. CABOT:  Same objection as

7       Mr. Pfaehler.

8                          THE WITNESS:  1 to 1.5 million.

9   Q   (By Mr. Gaughan)  I take it you never actually -- you

10      would never actually provide any compensation to BNBM as

11      part of any of your business dealings with that entity;

12      is that correct?

13  A   Correct.

14  Q   And is the same also true for CNBM Forest Products Canada

15      Limited?

16                         MR. CABOT:  Objection.  Vague.

17                         THE WITNESS:  Correct.

18  Q   (By Mr. Gaughan)  And you have no current contracts with

19      either BNBM or CNBM Forest Products Canada Limited; is

20      that correct?

21                         MR. PFAEHLER:  Objection.  Compound.

22                         THE WITNESS:  Correct.

23  Q   (By Mr. Gaughan)  Do you have any outstanding obligations

24      on any of your prior contracts?

25                         MR. CABOT:  Objection.

Confidential - Subject to Further Confidentiality Review

Page 191

1                        THE WITNESS:  No.

2    Q    (By Mr. Gaughan)  And are you aware of BNBM having any

3         bank accounts or real property or other assets in the

4         United States?

5    A    No.

6    Q    How about warehouse space?  Are you aware of any of that?

7    A    No.

8    Q    Are you aware of BNBM having any joint ventures with any

9         other companies in the United States?

10   A    No.

11   Q    How about CNBM?  Are you -- CNBM Forest Products Canada

12        Limited, excuse me.  Are you aware of them having any

13        bank accounts or real property or other assets in the

14        United States?

15   A    No.

16   Q    Are you aware of them having any warehouse space,

17        anything like that?

18   A    No.

19   Q    How about any joint ventures that involve CNBM Forest

20        Products Canada Limited in the United States?

21                       MR. CABOT:  Objection --

22                       THE WITNESS:  No.

23                       MR. CABOT:  -- vague.

24   Q    (By Mr. Gaughan)  I think I touched on this with BNBM,

25        but not CNBM.  But when did you first hear of CNBM Forest

Confidential - Subject to Further Confidentiality Review

Page 197

1     that have nothing to do with these two companies.

2  Q  (By Mr. Gaughan)  Can you answer the question?

3              MR. PFAEHLER:  It's a completely

4     improper question.

5              THE WITNESS:  Yes.

6              MR. PFAEHLER:  I don't know that

7     anyone could answer that.

8              MR. GAUGHAN:  And I'll pass the

9     witness.

10                         EXAMINATION

11    BY MR. PFAEHLER:

12 Q  Let's look at Exhibit 53, just to follow -- no.  Let's

13    start with 58.  We'll follow up with a question that --

14    that Mr. Gaughan just asked you a minute ago.

15              MR. GAUGHAN:  Where are we at?

16              MR. PFAEHLER:  58.

17 Q  (By Mr. Pfaehler)  Let me know when you have that in

18    front of you, Mr. Salamanca.

19 A  Yes.

20 Q  Mr. Salamanca, would you look at the -- at Page 116?

21 A  Okay.

22 Q  And we looked at this document, and this involved a

23    commission that was being wired by Western Wood to Jesse

24    Wu; is that correct?

25 A  I don't know if it went to Jesse Wu.

Confidential - Subject to Further Confidentiality Review

Page 198

1   Q   Well, let's go back to the first page then.  Let's look

2       at Page 114.

3   A   Okay.

4   Q   This is a contract from your business -- I'm sorry --

5       this is an email from your business records; correct?

6   A   Yes.

7   Q   And in this email, does Jesse email John and Michelle at

8       Western Wood and say, "Please check the attached

9       commission 10.  It is appreciated you can arrange it.

10      Thank you.  Best regards, Jesse"?

11          Did he write that?

12  A   Yes.

13  Q   And did John Tortorelli -- do I have that right?

14  A   Tortorelli.

15  Q   Tortorelli.  Thank you.

16          Did John email Jesse Wu on January 6th and say, "Hi,

17      Jesse.  We wired your commission payment today.  Happy

18      New Year"?

19                  MR. GAUGHAN:  Objection to form.  The

20      document speaks for itself.

21                  MR. PFAEHLER:  That's an interesting

22      objection for you to make after two days of asking these

23      questions.

24                  MR. GAUGHAN:  Well, it's ironic,

25      Counsel, because you're doing the same thing right now.

Confidential - Subject to Further Confidentiality Review

Page 199

1            MR. PFAEHLER:  Well, I have to do it,

2       Counsel, because you just mischaracterized this document

3       in the very last question you asked.  And the witness is

4       having some confusion, so we're going to walk through the

5       document.  That's a very different use of the documents

6       than you've been doing.

7    Q  (By Mr. Pfaehler)  Now, Mr. Salamanca, I'm sorry for that

8       exchange between counsel that you had to hear.

9          Did Mr. Tortelli -- Tortorelli, sorry, email Mr. Wu

10      on January 6th and say, "We wired your commission payment

11      today"?

12   A  Yes.

13   Q  And do you believe that in fact Mr. Tortorelli wired that

14      commission payment on January 6th?

15   A  Yes.

16   Q  Now, can we turn to Page 116.  Can you tell me what

17      Page 116 is?

18   A  These are instructions as to where the wire payment is to

19      be made to.

20   Q  To be made to or to be made from?

21   A  Well, who -- who's -- who -- who the beneficiary is for

22      the wire payment.

23   Q  Who's the beneficiary for the wire payment here?

24   A  The name -- first name is L-i-u, last name is

25      Q-i-u-m-e-i.

Confidential - Subject to Further Confidentiality Review

Page 200

1  Q   And who is L-i-u, Q-u -- Q-i-u-m-e-i?

2  A   That name, I don't know.

3  Q   And this wire is being sent to the Agricultural Bank of

4      China, Shanghai branch; right?

5  A   Yes.

6  Q   And we've looked at BNBM letters of credit, and they're

7      all from a bank called DBS; correct?

8                    MR. GAUGHAN:  Object to form.

9                    THE WITNESS:  Correct.

10 Q   (By Mr. Pfaehler)  You have no reason to believe that the

11     Agricultural Bank of China, Shanghai branch, has anything

12     to do with BNBM, do you?

13                    MR. GAUGHAN:  Object to form.

14                    THE WITNESS:  Correct.

15 Q   (By Mr. Pfaehler)  You have no reason to believe that

16     BNBM holds an account there, do you?

17 A   Correct.

18 Q   You have no reason to believe that this commission

19     payment has anything to do with BNBM, do you?

20                    MR. GAUGHAN:  Object to form.

21                    THE WITNESS:  Correct.

22 Q   (By Mr. Pfaehler)  In fact, Mr. Wu represents a number of

23     Chinese businesses in their dealings with Western Wood;

24     isn't that correct?

25                    MR. GAUGHAN:  Objection to form.

Confidential - Subject to Further Confidentiality Review

Page 201

1      Mischaracterizes the testimony.

2               THE WITNESS:  Can you --

3  Q  (By Mr. Pfaehler)  I'm asking a question.  Let me ask it

4      a different way.

5               MR. GAUGHAN:  Sure.

6  Q  (By Mr. Pfaehler)  I'll make this very clean.

7      Does Mr. Wu represent businesses other than BNBM in

8      his dealings with Western Wood?

9  A  Yes.

10  Q  And in fact, if we could turn to Exhibit 53.  Do you have

11      that in front of you?

12  A  Yes, I do.

13  Q  Exhibit 53 refers to contract with a company called

14      Sumec; correct?

15  A  Yes.

16  Q  Sumec is a bulk commodities trader, isn't it?

17               MR. GAUGHAN:  Object to form.

18               THE WITNESS:  I don't know.

19  Q  (By Mr. Pfaehler)  Confused about that?  Do you know who

20      Sumec is?  What's your understanding of who Sumec is?

21  A  Well, they're another customer of ours.

22  Q  Yeah.  And they have nothing to do with BNBM; right?

23               MR. GAUGHAN:  Object to form.  Lacks

24      foundation.

25               THE WITNESS:  Correct.

Confidential - Subject to Further Confidentiality Review

Page 202

```
 1   Q    (By Mr. Pfaehler)  I'm going to -- I'm going to show you,

 2        Mr. Salamanca, Sumec's website.

 3   A    Okay.  Well, based on this email -- based on that email,

 4        John was explaining to Jesse that Sam at Sumec was

 5        inquiring about Douglas fir.

 6   Q    Right.

 7   A    The same type of wood Jesse was inquiring about.

 8   Q    Yes.  And in fact -- let's go to --

 9                        MR. PFAEHLER:  Let's mark as

10        Exhibit -- what are we at?

11                        THE COURT REPORTER:  59.

12                        MR. PFAEHLER:  -- a group of emails.

13        It bears pages Western Wood 1 through Western Wood 85.

14                             (Exhibit No. 59 marked for

15                              identification.)

16   Q    (By Mr. Pfaehler)  Mr. Salamanca, before we go there, let

17        me show you a page.  This bears -- for the record, the

18        website is http://en.sumec -- S-u-m-e-c --

19        .com/html/2014/smyfw404/11.html.

20            And it says, "Bulk commodity trade," and identifies

21        one of the areas that Sumec bulk commodity trades in as

22        logs?

23                        MR. GAUGHAN:  And I'm going to raise

24        an objection to showing the witness a third-party website

25        that he has no knowledge of.
```

Confidential - Subject to Further Confidentiality Review

1   Q   (By Mr. Pfaehler)  Do you have any reason to believe that

2       the representation on this website by Sumec that they do

3       log imports is incorrect?

4   A   Say that --

5   Q   Do you have any reason to believe that Sumec, as they

6       represent, is not in the business of the bulk commodity

7       trade of, among other things, logs?

8   A   I'm --

9   Q   Do you have any reason to believe that Sumec does not

10      engage in the bulk importation of logs from the United

11      States?

12  A   Based on --

13                  MR. GAUGHAN:  Object to form.

14                  THE WITNESS:  Based on the website?

15  Q   (By Mr. Pfaehler)  Yes.  Any reason to believe that

16      website is inaccurate?

17  A   No.  I -- pretty accurate.

18                  MR. CABOT:  And, Counsel, I typed down

19      the Web address, but I think I may have gotten it wrong.

20                  MR. PFAEHLER:  I will give it again.

21                  MR. CABOT:  Sure.  Thanks.

22                  MR. PFAEHLER:

23      http://en.sumec.com/html/2014/smyfw_0404/11.html.

24                  MR. CABOT:  That time it worked.

25      Thanks.

Confidential - Subject to Further Confidentiality Review

Page 204

1          MR. PFAEHLER:  I might have had it

2    wrong the first time.

3  Q  (By Mr. Pfaehler)  Let's look at what we've marked -- was

4    that Exhibit 59?  Let's look at 59, and if you could turn

5    to Page 22.

6       And if you look at the top of Page 22, do you see an

7    email from Jesse to Western Wood?

8  A  Yes.

9  Q  And was that -- that email was sent, to your

10   understanding, to Mr. Tortorelli?

11 A  Yes.

12 Q  Am I pronouncing that right this time?

13 A  Yes.

14 Q  Thank you.

15      And do you see he says, "Hi, John, if Sam shi wants

16   to get some small DF to other ports I can accept.

17   Normally 200 cans per month to Shanghai is enough.  If I

18   want more I'll let you know in advance"?

19 A  Yes.

20 Q  And could you turn to -- can you turn to what was marked

21   as Exhibit 45, sir.

22 A  Okay.

23 Q  And this is an email exchange between Jesse Wu and

24   Michelle Zaun, to your understanding?

25 A  What was the number?  I'm sorry.

Confidential - Subject to Further Confidentiality Review

Page 205

1   Q   I'm sorry.  45 is what I wrote down.

2   A   Yeah, that's --

3                    MR. CABOT:  I think -- do you mean 43?

4                    MR. PFAEHLER:  It's --

5                    MR. CABOT:  That's 43.

6                    MR. PFAEHLER:  Let me try again.

7                    THE WITNESS:  Okay.

8   Q   (By Mr. Pfaehler)  Can you look at Exhibit 43.

9   A   Okay.  43.

10  Q   Thank you.

11        Do you see an email exchange between Mr. Wu and

12      Ms. Zaun?

13  A   Yes.

14  Q   And do you see he says, "Sorry, I am afraid that BNBM

15      can't issue this week on time, and you will have no LC

16      for loading.  So I let Shanghai Su Sen International

17      issue 100 cans first"?

18  A   Yes.

19  Q   And can you tell me who Shanghai Su Sen International

20      Trade Company is?

21  A   They are another customer of ours.

22  Q   And are you aware of any connection between them and

23      BNBM?

24  A   No.

25                    MR. GAUGHAN:  Object to form.

Confidential - Subject to Further Confidentiality Review

Page 206

1  Q  (By Mr. Pfaehler)  And they are issuing a separate letter

2     of credit, separate from BNBM's; correct?

3                       MR. GAUGHAN:  Object to form.

4                       THE WITNESS:  Yes.

5  Q  (By Mr. Pfaehler)  Can you go in Exhibit 59,

6     Mr. Salamanca --

7  A  Okay.

8  Q  -- for the big one I marked, can you turn to Page 63 with

9     me.

10 A  Okay.

11 Q  And can you tell me what Jesse is emailing Michelle about

12    in that email that's at the bottom of the page, sent on

13    February 12th at 4:58?  That's February 12, 2015, for the

14    record.

15 A  Oh, these are documents that were going from our bank,

16    U.S. Bank, to the China bank listed on each of these --

17    the three -- or the two particular -- to each of the

18    banks listed on each of these bookings.

19 Q  And these involve two different customers of Mr. Wu's, is

20    that correct, Sheng Wosheng and BNBM?

21 A  Yes.

22 Q  And --

23                       MR. GAUGHAN:  I'm going to object to

24    the form of that last question.

25 Q  (By Mr. Pfaehler)  Is Sheng Wosheng a short name for

Confidential - Subject to Further Confidentiality Review

1      China National Forest Products Company Shanghai Sheng

2      Wosheng?

3   A  Not that I'm aware.

4   Q  Do you believe it refers to some other company?

5   A  No.  I -- to me, Sheng Wosheng is the company.

6   Q  And do you have any reason to believe that Sheng Wosheng

7      has anything to do with BNBM?

8                    MR. GAUGHAN:  Object to form.

9                    THE WITNESS:  No.

10  Q  (By Mr. Pfaehler)  Mr. Salamanca, a couple times in your

11     deposition you referred to Mr. Wu as an employee of BNBM.

12     Do you have any reason to believe that he's employed

13     and -- as an employee of BNBM Group?

14  A  As BNBM Group.  That's --

15  Q  As somebody who's actually employed by and goes to work

16     every day for --

17  A  Oh.

18  Q  -- simply one employer, BNBM Group, BNBM PLC, or any

19     related entity?

20                   MR. GAUGHAN:  Object to form.

21                   THE WITNESS:  That's always been my

22     understanding.

23  Q  (By Mr. Pfaehler)  Do you believe you may have a

24     different understanding, having looked at a number of

25     emails this morning, where, for example, Mr. Wu is being

Confidential - Subject to Further Confidentiality Review

Page 208

1    issued a commission on something that does not appear to

2    have anything to do with BNBM?

3                        MR. GAUGHAN:  Object to form.

4                        THE WITNESS:  It's possible.

5    Q   (By Mr. Pfaehler)  And the fact that he is representing

6        or dealing with Western Wood on behalf of both Sheng

7        Wosheng and BNBM, would that suggest to you he's not an

8        employee of BNBM?

9                        MR. GAUGHAN:  Object to form.

10                       THE WITNESS:  It's possible.

11   Q   (By Mr. Pfaehler)  Do you have any knowledge that he is

12       employed by BNBM?

13   A   No.

14   Q   What was the basis for your testimony that he was

15       employed by BNBM?

16   A   Conversation -- conversation with Michelle and John --

17       Michelle Zaun and John Tortorelli.

18   Q   And what did Michelle Zaun and John Tortorelli tell you?

19   A   That they've always -- it's always been their

20       understanding that he's -- Jesse's been an employee at

21       BNBM.

22   Q   And what did they say was the basis for their

23       understanding?

24                       MR. GAUGHAN:  Object to form.

25                       THE WITNESS:  Just our standing

Confidential - Subject to Further Confidentiality Review

Page 209

1      relationship with BNBM.

2   Q   (By Mr. Pfaehler)  Did Jesse ever tell you or Mr. Wu --

3      I'm sorry, ever tell you, Mr. Salamanca, that he was an

4      employee of BNBM?

5   A   I don't think so.  I -- looking at the emails, I haven't

6      seen it.

7   Q   Have -- has Mr. Wu ever come here to the United States to

8      meet with you?

9   A   No.

10  Q   And have you ever gone to China or to Hong Kong or

11     Shanghai or anywhere to meet with him?

12  A   No.

13  Q   Do you speak with Mr. Wu on the phone?

14  A   No.  Mr. Tortorelli might.  I'm not -- I know he --

15     Mr. Tortorelli speaks to a couple of our Chinese people,

16     but I don't know if Jesse's one of them.

17  Q   Right before I started questioning, Mr. Gaughan asked you

18     whether all the documents that you were looking at this

19     morning had to do with timber contracts with BNBM and

20     CNBM, and you answered yes, and I was objecting.  I

21     thought the question was confusing, and maybe misleading.

22         We've just looked at a number --

23                 MR. GAUGHAN:  Move to strike.

24  Q   (By Mr. Pfaehler)  -- of documents --

25                 MR. PFAEHLER:  I oppose your motion.

Confidential - Subject to Further Confidentiality Review

Page 210

1    Q    (By Mr. Pfaehler)  We've just looked at a number of

2         documents that -- make sure we have a nice clean question

3         here.

4                        MR. GAUGHAN:  Go ahead.

5    Q    (By Mr. Pfaehler)  New question for you, Mr. Salamanca.

6              We've looked at a number of documents just in the

7         last few minutes that don't have to do with BNBM.  They

8         have to do with Sumec and Sheng Wosheng and --

9                        MR. GAUGHAN:  Object to form.

10   Q    (By Mr. Pfaehler)  -- Shanghai Su Sen.

11            Those have nothing to do with timber contracts with

12        BNBM or CNBM, do they?

13                       MR. GAUGHAN:  Object to form.

14                       THE WITNESS:  That's correct.

15   Q    (By Mr. Pfaehler)  Do you know a company called Hanton,

16        H-a-n-t-o-n?

17   A    H-a-n-t-o-n, no.  I'm familiar with H-o-n-t-o-n.

18   Q    Thank you.  That's what I meant to say.

19   A    Oh, okay.

20   Q    I'm -- I must be tired this morning.  I need more coffee.

21        So thank you.

22            Can you tell me what Honton -- is that the way to

23        say it, H-o-n-t-o-n?

24   A    Yes.

25   Q    Is that a word for today?  -- what Honton is?

Confidential - Subject to Further Confidentiality Review

Page 211

1   A   I know a company in China.  I know we've issued documents

2       to them before.

3   Q   And you've sold timber to that company through Mr. Wu;

4       correct?

5                MR. GAUGHAN:  Object to form.  Lacks

6       foundation.

7                THE WITNESS:  It -- I don't know

8       who -- who brokered the deal.

9   Q   (By Mr. Pfaehler)  Well, can you turn -- Counsel's

10      objected that there isn't foundation.  I think there's

11      some confusion on your part as well.  So let's turn in 59

12      to Page 9.

13               MR. GAUGHAN:  Page what?  I'm sorry.

14               MR. PFAEHLER:  9.  09.

15   Q   (By Mr. Pfaehler)  And if you could just look at Pages 9

16      and 10, Mr. Salamanca, and tell me when you've had a

17      minute to do that.

18   A   Yes, I've looked.

19   Q   Okay.  What do these pages refer to, sir, these emails?

20   A   An exchange between Jesse and Western Wood regarding

21      documents.

22   Q   And these are documents for a sale of logs to Honton?

23   A   Yes.  Yes, the sale was to Honton.  And it looks like

24      Honton held them -- took possession in LC to customers in

25      Qingdao.  But the -- Western Wood, the sale was to

Confidential - Subject to Further Confidentiality Review

Page 212

1        Honton.

2    Q   In the Exhibit 59, these -- and to your knowledge, Honton

3        has nothing to do with BNBM, does it?

4                    MR. GAUGHAN:  Object to form.

5                    THE WITNESS:  Yes, that's correct.

6    Q   (By Mr. Pfaehler)  Now, Exhibit 59 is an 85-page

7        collection of emails, and by my count, out of those 85

8        pages, only Pages 63 and 66 reference BNBM at all, or

9        CNBM.  Is that correct?

10                   MR. GAUGHAN:  I'm going to object to

11       form.  The document speaks for itself.

12                   THE WITNESS:  Correct.

13   Q   (By Mr. Pfaehler)  Thank you.

14           If we could turn to what Mr. Gaughan marked, if I

15       wrote it down right this time, as Western Wood 55, which

16       I have as an email with two attachments bearing Bates

17       Nos. 230 to 232.

18   A   Okay.

19   Q   Now, this was an email that Mr. Wu sent to Michelle Zaun

20       on July 17, 2014; is that correct?

21   A   July 14.

22   Q   I'm sorry.  Thank you.  That's an important correction.

23       I appreciate that.

24           July 14, 2014?

25   A   Yes.

Confidential - Subject to Further Confidentiality Review

Page 213

1  Q  And he was forwarding two offer sheets; is that correct?

2  A  Yes.

3  Q  And the first offer sheet is for the -- an offer to

4      Beijing New Building Materials Co. Limited of American

5      soft wood round logs, Douglas fir, 300 MBF, at 1005 per

6      MBF, total of $301,500; correct?

7  A  Yes.

8  Q  What was the offer issue date for that?

9  A  June 13, 2014.

10  Q  And what was the offer expiration date for that?

11  A  June 20, 2014.

12  Q  Now, Mr. Wu was forwarding this offer sheet to Michelle

13      on July 14th to provide her with a contract number; is

14      that correct?

15  A  Yes.

16  Q  And the same goes for Page 232, which was an offer with

17      Contract No. CZY0604?

18  A  Correct.

19  Q  And what was the issue date for that offer?

20  A  June 13, 2014.

21  Q  And what was the expiration date for that offer?

22  A  June 20, 2014.

23  Q  And in that contract, CZY0604, that was a contract that

24      was made in between June 13th and June 20, 2014; correct?

25  A  Yes.

Confidential - Subject to Further Confidentiality Review

1  Q   And Contract CZY0603, that was a contract that was made

2      between June 13th and June 20, 2014; correct?

3  A   Yes.

4                      MR. GAUGHAN:  I'm going to object on

5      the grounds that this document speaks for itself.

6          Can I just have a continuing objection on that

7      basis?

8                      MR. PFAEHLER:  No.  I'll actually

9      request that you make your objections --

10                     MR. GAUGHAN:  Okay.

11                     MR. PFAEHLER:  -- as we go along --

12                     MR. GAUGHAN:  I will do that.

13                     MR. PFAEHLER:  -- so I can respond to

14     them if I need to.

15                     MR. GAUGHAN:  Okay.

16                     MR. PFAEHLER:  Thank you, Counsel.

17                     MR. GAUGHAN:  Sounds good.

18 Q   (By Mr. Pfaehler)  Now, as we look at CZY0603, the

19     payment term calls for an irrevocable 100 percent letter

20     of credit; is that correct?

21 A   Correct.

22                     MR. GAUGHAN:  Objection.  The document

23     speaks for itself.

24 Q   (By Mr. Pfaehler)  Why does Western Wood require an

25     irrevocable letter of credit in such a contract?

Confidential - Subject to Further Confidentiality Review

Page 215

```
 1   A    That's just the way that U.S. Bank has informed us when
 2        setting up letter of credits.
 3   Q    Why does Western Wood like to have a letter of credit
 4        when it sells timber to China?
 5                    MR. GAUGHAN:  Object to form.
 6                    THE WITNESS:  To -- well, to us, it
 7        just confirms that the customer's bank has, you know, I
 8        guess backed the customer's demand for -- for money, and
 9        then once we get the approval -- or once our bank, U.S.
10        Bank, gets the approval, they review the letter of
11        credit.  And if they agree to it, then -- then we feel
12        pretty confident that that's -- that an order has been
13        executed and that we can start loading off that order.
14   Q    (By Mr. Pfaehler)  And is it true that Western Wood
15        relies on letters of credit in international transactions
16        because, as long as the documents it produces to the bank
17        are facially valid, that letter of credit will be paid
18        and those documents are presented, and you get the money,
19        and the buyer can't stop that payment from being made; is
20        that correct?
21                    MR. GAUGHAN:  Object to form.
22                    THE WITNESS:  Correct.  That's the
23        reason why we like letter of credits.
24   Q    (By Mr. Pfaehler)  Because, that way, you don't have to
25        worry once a contract is formed, and you've got timber
```

Confidential - Subject to Further Confidentiality Review

Page 216

```
 1        coming in, and you're loading timber on ships, about
 2        whether you'll be paid or not; right?
 3                      MR. GAUGHAN:  Object to form.
 4                      THE WITNESS:  Yes.
 5   Q    (By Mr. Pfaehler)  The buyer no longer controls the
 6        process, as long as you present facially valid documents;
 7        correct?
 8   A    Correct.
 9   Q    Nothing the buyer can do to stop that payment if the
10        documents you produce are facially valid; correct?
11                      MR. GAUGHAN:  Object to form.
12                      THE WITNESS:  Correct.
13   Q    (By Mr. Pfaehler)  Now, we looked at -- if we could go
14        all the way back to Exhibit 2.  But if you could keep
15        out --
16   A    Oh.
17   Q    -- Exhibit -- yeah, I'm going to ask you to sort of line
18        these up next to each other, if that's all right.
19            So Exhibit 2 is the offer sheet executed by BNBM;
20        correct?
21   A    Yes.
22   Q    And those were not actually forwarded on to you.  They
23        don't form part of the business records of Western Wood,
24        do they?
25                      MR. GAUGHAN:  Object to form.
```

Confidential - Subject to Further Confidentiality Review

Page 217

1                    THE WITNESS:  This --

2                    MR. PFAEHLER:  Let me try to ask a

3        better question.  That was a better question.

4    Q   (By Mr. Pfaehler)  The countersigned document that we're

5        looking at as Exhibit 2 was not forwarded to BN- -- to

6        Western Wood, was it?

7    A   Correct.

8                    MR. GAUGHAN:  Object to form.

9    Q   (By Mr. Pfaehler)  That doesn't form part of your

10       business records, does it?

11   A   No.  This was the -- yesterday was the first I have seen

12       this document.

13   Q   Thank you.

14                   MR. GAUGHAN:  Object to form of the

15       last question.

16   Q   (By Mr. Pfaehler)  But this document is the same contract

17       that was entered into between June 13th and June 20,

18       2014, that we looked at, at Page 231; correct?

19   A   Yes.

20   Q   And if we could look at Exhibit 16.  Exhibit 16 is the

21       letter of credit that was issued in connection with that

22       same contract; is that correct?

23   A   Correct.

24   Q   Can you tell me --

25                   MR. GAUGHAN:  Object to form.

Confidential - Subject to Further Confidentiality Review

Page 218

1    Q    (By Mr. Pfaehler)  -- when that letter of credit was

2         issued?

3    A    July 2, 2014.

4                        MR. GAUGHAN:  Object to the form.

5         Document speaks for itself.

6    Q    (By Mr. Pfaehler)  And it's an irrevocable letter of

7         credit?

8    A    Yes.

9    Q    Now let's turn to what Mr. Gaughan marked yesterday as

10        Exhibit 18.  And if I could ask you to turn to Page 454

11        in that exhibit.

12   A    Okay.

13   Q    This is an invoice that is delivered to the bank to draw

14        on the letter of credit that we looked at as Exhibit 16;

15        correct?

16   A    Correct.

17                        MR. GAUGHAN:  I don't mean to

18        interrupt, but what page are we on?

19                        MR. PFAEHLER:  I'm sorry.  Yeah,

20        calling attention to Page 454.

21                        MR. GAUGHAN:  Okay.  Thank you.

22                        MR. PFAEHLER:  Exhibit 18.

23   Q    (By Mr. Pfaehler)  And are you there with me?

24   A    Yes --

25                        MR. GAUGHAN:  Yes.

Confidential - Subject to Further Confidentiality Review

Page 219

1                    THE WITNESS:  Yes.

2    Q   (By Mr. Pfaehler)  And this is an invoice that's prepared

3        and provided to the bank to draw on the letter of credit;

4        right?

5    A   Yes.

6                    MR. GAUGHAN:  Object to form.

7    Q   (By Mr. Pfaehler)  And when you look at -- can you look

8        at the column "Payment Terms."

9            Do you see that?

10   A   Yes.

11   Q   And there's a number in there.

12           Do you see that?

13   A   Yes.

14   Q   Is that the letter of credit number for the letter of

15       credit that's Exhibit 16?

16   A   Yes.

17                   MR. GAUGHAN:  Object to form.

18       Document speaks for itself.

19   Q   (By Mr. Pfaehler)  And is that how this invoice was paid?

20   A   Yes.  It drew off the letter of credit.

21   Q   Thank you.

22           This invoice was not delivered to BNBM; correct?  It

23       was delivered to the bank to draw on the letter of

24       credit?

25   A   Yes.

Confidential - Subject to Further Confidentiality Review

Page 220

```
 1                        MR. GAUGHAN:  I object to the form of
 2        the last question.
 3    Q   (By Mr. Pfaehler)  You know, Mr. Gaughan asked a few
 4        questions about -- looking at invoices, more probable
 5        than not just this one, but a number of them.  And we
 6        looked at the invoices, and he asked you, with respect to
 7        them, when shipments were made.
 8    A   Yes.
 9    Q   And on this invoice, I believe your testimony -- anyone
10        can correct me if I get this wrong -- was that the
11        shipment was made on or about July 23, 2014?
12                        MR. GAUGHAN:  I'm just going to put an
13        objection here.  Obviously his prior testimony speaks for
14        itself, but I'll allow you to ask the question.
15                        MR. PFAEHLER:  Yeah, and fair
16        objection if I mischaracterize -- in fact, let me ask
17        this.
18    Q   (By Mr. Pfaehler)  There's a couple dates on this
19        invoice.  Because I don't want to get into a mess if I've
20        got your testimony from yesterday wrong, and goodness
21        knows I'm a little tired this morning.
22            But as you look at this, there's a couple dates that
23        have to do with shipping and arrival; correct?
24    A   Yes.
25    Q   And ETD you testified yesterday was the estimated time of
```

Confidential - Subject to Further Confidentiality Review

Page 221

1      departure; is that right?

2   A   Correct.

3   Q   It's not the actual time of departure on any of these

4      invoices, is it?

5   A   No.  That's correct.

6   Q   It might be, but it might not be; correct?

7   A   Correct.

8   Q   And the invoice date says July 19, 2014; right?

9   A   Yes.

10  Q   That's not a date that tells you that you know the

11     shipment was made on that date, is it?

12  A   That's correct.

13  Q   Okay.  When Mr. Gaughan was showing you invoices

14     yesterday and asking you about when goods had shipped,

15     were you basing your answers simply on the dates of the

16     invoice or the estimated time of departure date?

17               MR. GAUGHAN:  Object to form.

18               THE WITNESS:  Yes.

19  Q   (By Mr. Pfaehler)  And you weren't testifying that you

20     actually knew goods were put on a ship and sent on any

21     particular date, were you?

22               MR. GAUGHAN:  Object to form.

23               THE WITNESS:  Not -- not specific

24     dates.

25  Q   (By Mr. Pfaehler)  You would expect, in the ordinary

Confidential - Subject to Further Confidentiality Review

Page 222

1    course, that the date of shipping could be -- would be

2    sometime, in some range, around the dates that are stated

3    on the invoice; right?

4                        MR. GAUGHAN:  Object to form.

5                        THE WITNESS:  Correct.

6    Q   (By Mr. Pfaehler)  But you don't actually know when the

7        goods were loaded on a ship and when the ship sailed, do

8        you?

9                        MR. GAUGHAN:  Object to form.

10                       THE WITNESS:  Specifically, no.  I --

11       yeah.  I mean, the invoice date is usually the last

12       date -- is the date that the last container was sent to

13       the port.  From there, it's the port's discretion when

14       they load the containers on the vessels.

15   Q   (By Mr. Pfaehler)  Do you prepare the invoices,

16       Mr. Salamanca?

17   A   Yes.

18   Q   What triggers your preparation of an invoice?

19   A   So for this particular example, once we -- once we

20       know -- we load all the containers, we scan all the data,

21       and that gets transmitted to the -- Northwest Log

22       Scalers, which is -- you'll see their name on Page 447.

23           And they provide the -- provide us with a summary of

24       the containers for this particular booking, the container

25       number logs.  And once these summaries come in, that

Confidential - Subject to Further Confidentiality Review

Page 223

1       triggers us to start the process of providing the

2       invoices.

3    Q  And you don't actually know -- you're assuming that the

4       Northwest Log Scalers' manifest is accurate, but you

5       don't know that for a fact, do you?

6                   MR. GAUGHAN:  Object to form.

7                   THE WITNESS:  Oh, there -- it's

8       accurate because we keep track.  Also we know which

9       containers -- we write down the containers.  We know

10      which containers the drivers haul to the port and which

11      booking they belong to.

12   Q  (By Mr. Pfaehler)  So you have a way to check?

13   A  We double-check everything, yes.

14   Q  And is there a record in here that would show that in

15      the -- in here, I mean within, say, Exhibit 18?

16   A  To confirm --

17   Q  Yeah.

18   A  No.  There's no record.  I mean, if you want to -- the --

19      so the Northwest Log Scaling, on Page 447, that matches

20      up with Page 452, which is the manifest -- the bill of

21      lading from the -- the container company, Yang Ming.  So

22      you will -- you will find each container on Page 447, the

23      same as Page 452.

24   Q  They line up together.

25   A  Yes.

Confidential - Subject to Further Confidentiality Review

Page 224

1  Q   Say, let me ask you to look for a second, it should be

2      right there in your pile, at Exhibit 17, that Mr. Gaughan

3      showed you yesterday.

4  A   Okay.

5  Q   And if you could turn to Page 440 of that.  And this is

6      another invoice that you prepared to provide to the bank

7      to go on the letter of credit?

8  A   Yes.

9                  MR. GAUGHAN:  And what was the -- I'm

10     sorry; what was the document number again?

11                 MR. PFAEHLER:  Yes.  Exhibit 17,

12     Page 440.

13                 MR. GAUGHAN:  Thank you.

14                 MR. PFAEHLER:  You need a minute to

15     get there?

16                 MR. GAUGHAN:  No.  You can proceed.

17 Q   (By Mr. Pfaehler)  And can you tell me what the invoice

18     is here -- I'm sorry.  Let me try again.

19        Can you tell me what the invoice date is here?

20 A   July 11, 2014.

21                 MR. GAUGHAN:  Form.

22 Q   (By Mr. Pfaehler)  And that's the date that you would

23     have received the manifest from Northwest Log Scalers

24     that -- that the logs were in containers and on their way

25     to the port?

Confidential - Subject to Further Confidentiality Review

Page 225

1  A  Yes.

2  Q  And July 16th here was the estimated time of departure;

3     is that right?

4  A  Yes.

5  Q  And you're drawing on that same letter of credit that was

6     issued on July 2, 2014; correct?

7  A  Yes, correct.

8  Q  For a contract that was entered into between June 13th

9     and June 20, 2014; correct?

10 A  Yes.

11 Q  And that's how you received all the payments for all of

12    the shipments that were made on Contract CZY0603;

13    correct?

14 A  Yes.

15          MR. PFAEHLER:  I'm going to ask that

16    we take just a brief break now.  I won't have a whole lot

17    to do when we come back, but I need a moment.

18          THE WITNESS:  Okay.

19          THE VIDEOGRAPHER:  We are going off

20    the record.  The time is now 10:45 a.m.

21          (Recess.)

22          THE VIDEOGRAPHER:  Back on the record.

23    The time is now 10:56 a.m.

24    ////

25    ////

Confidential - Subject to Further Confidentiality Review

Page 226

1                    EXAMINATION (Continuing)

2       BY MR. PFAEHLER:

3    Q   Can I call your attention, Mr. Salamanca, to Page 44

4        through -- through 51 of Exhibit 59.

5            Are these communications between Mr. Wu and Western

6        Wood, I guess Michelle Zaun at Western Wood, about a

7        contract to sell 50 cans of timber to Mai Lin LC?

8    A   Yes.

9    Q   And if you would turn to Page 47, can you tell me what

10       Page 47 is.

11   A   This is a copy of a letter of credit.

12   Q   And is that a letter of credit for whom the applicant was

13       Shanghai Mai Lin International Trade Co. Limited?

14   A   Yes.

15   Q   And to your knowledge, does Shanghai Mai Lin

16       International Trade Co. Limited have anything to do with

17       BNBM?

18                    MR. GAUGHAN:  Object to form.

19                    THE WITNESS:  No.

20   Q   (By Mr. Pfaehler)  And Mr. Wu was the person negotiating

21       with Western Wood over this contract or contracts for

22       Shanghai Mai Lin?

23                    MR. GAUGHAN:  Object to form.

24                    THE WITNESS:  Yes.

25   Q   (By Mr. Pfaehler)  And, Mr. Salamanca, if I could ask you

Confidential - Subject to Further Confidentiality Review

Page 228

1     that testimony?

2  A  Yes.

3  Q  What did you mean by that?

4  A  Well, just based on the offer sheet here, it's -- we were

5     offering to Beijing New Building Materials Company

6     Limited 600,000 board feet of Douglas fir.

7  Q  And it wasn't your understanding that they were the

8     ultimate customer, was it?

9                    MR. GAUGHAN:  Object to form.

10                   THE WITNESS:  With them, it is my

11    understanding, they are the ultimate customer.

12 Q  (By Mr. Pfaehler)  What's the basis for that

13    understanding?

14 A  When the letter of credit comes in for the -- all our

15    documents -- invoices, the phytos, certificate of

16    origins -- are all directed to Beijing New Building

17    Materials.

18 Q  And the phytos and the certificates of origin and the

19    invoices and the other documents, they're prepared and

20    delivered to BNBM's bank to draw on the letter of credit;

21    correct?

22                   MR. GAUGHAN:  Object to form.

23                   THE WITNESS:  The invoice and packing

24    list is, yes.  The --

25 Q  (By Mr. Pfaehler)  And the phyto's also delivered under

Confidential - Subject to Further Confidentiality Review

Page 229

1        the letter of credit here; is that right?

2    A   No.  Our -- in our business practice, we prefer not to

3        have the phyto and certificate of origin included as part

4        of our -- included to the bank.  We send those directly

5        to -- to the customer.

6    Q   Okay.  And who did you send them to here?

7    A   For this particular one, I would have to get a copy of

8        that phyto.

9    Q   The letter of credit for Contract CZY0604 is Exhibit 10;

10       correct?

11   A   Yes.

12   Q   When was that letter of credit issued?

13   A   July 2, 2014.

14   Q   And it was an irrevocable letter of credit; is that

15       correct?

16   A   Yes.

17   Q   And if the terms provided in the letter of credit were

18       met by Western Wood, the payment had to be made on the

19       letter of credit; correct?

20                   MR. GAUGHAN:  Object to form.

21                   THE WITNESS:  Correct.

22   Q   (By Mr. Pfaehler)  If I could ask you to turn to

23       Exhibit 11 that Mr. Gaughan marked yesterday.

24   A   Okay.

25   Q   And could you turn to Page 396?

Confidential - Subject to Further Confidentiality Review

Page 230

1   A   Yes.

2   Q   And do I recall yesterday that you testified that

3       Page 396 was a page prepared by Hanjin Shipping Company?

4   A   Yes.

5   Q   And can you tell me what "empty start" means?  Do you

6       see, in the middle of the page, it says, "SSCO Hanjin

7       Shipping Co.; Vessel Name: Hanjin New York; Voyage No.:

8       0023W," and then "empty start" and "full start"?

9   A   Yes.  The empty start and full start, that's basically

10      the day we can start pulling containers to start loading

11      for this particular booking.  And the cutoff is the --

12      the date and time when the containers have to be inside

13      the port.

14  Q   Okay.  Now, when you say -- let me make sure I use the

15      words right -- start pulling containers to start loading,

16      what do you mean by that?

17  A   That means our -- our drivers can go to the port, give

18      them this booking number, SEA411592700, and then in

19      return they'll -- they can get a container off of that

20      booking.

21  Q   And on July 16th, the wood's already in the containers;

22      right?

23  A   On or around -- I mean, that's the first day we could

24      start loading into those containers.

25  Q   Would you expect, with respect to this shipment, that by

Confidential - Subject to Further Confidentiality Review

Page 231

1      July 16th the wood was already in the containers, or

2      mostly already in the containers?

3                      MR. GAUGHAN:  Object to form.

4                      THE WITNESS:  No.  Thirty-six

5      containers -- this probably would have been loaded over

6      three or four days.

7   Q  (By Mr. Pfaehler)  Into the containers, or the containers

8      onto the ship?

9   A  The -- well, for example, Cle Elum.  We might -- we might

10     only have nine drivers, and from Cle Elum, they can do --

11     they can only do two loads a day, so it might have been

12     over two days.  Because, if you have nine drivers, two

13     containers a day, 18 containers a day.

14  Q  Now, are the containers already loaded up at Cle Elum and

15     they just need to be moved?

16  A  Yes.  We pick -- we pick up the containers empty, and

17     then they get loaded in our yard and sent back to the

18     port.

19  Q  So by July 16th, the containers should be loaded and

20     sitting in Cle Elum; is that right?

21                     MR. GAUGHAN:  Object to form.

22                     THE WITNESS:  By -- no.  July 16th is

23     the first day we could start.

24  Q  (By Mr. Pfaehler)  To load the containers?

25  A  Yes.  But we have until July 24th to finish it.  So we --

Confidential - Subject to Further Confidentiality Review

Page 232

1       we might have -- we -- it's -- well, if you look here, at

2       the bottom, so the date, 7/7 --

3   Q   Right.

4   A   -- 7/21, those would have been the days that the

5       containers were pulled and returned.

6   Q   So five containers were pulled and returned on July 17,

7       2014?  I take that back.  Six containers?

8   A   Seven --

9   Q   Seven?

10  A   Yeah.

11  Q   You're right.  Thank you.

12                      MR. GAUGHAN:  Object to form.

13                      THE WITNESS:  And this is --

14                      MR. PFAEHLER:  Sorry for the "you're

15      right."

16  Q   (By Mr. Pfaehler)  But seven -- seven were pulled on

17      July 17th?

18  A   Yes.  At least.  This is not the full list of the -- the

19      36, so --

20  Q   It's only -- only a partial list?

21  A   Yes.

22  Q   Now, let's look at what Mr. Gaughan marked as Exhibit 12.

23          Do you have that in front of you?

24  A   Yes, I do.

25  Q   And if you could turn to Page 408.

Confidential - Subject to Further Confidentiality Review

Page 233

1   A   Okay.

2   Q   Is this an invoice that was submitted to the bank for

3       payment under the irrevocable letter of credit

4       No. 334-01-0007580?

5   A   Yes.

6                       MR. GAUGHAN:  Object to the form.

7   Q   (By Mr. Pfaehler)  And that letter of credit was issued

8       on July 2, 2014; is that correct?

9   A   Yes.

10  Q   Pursuant to Contract No. CZY0604 entered into between

11      June 13th and June 20, 2014?

12  A   Yes.

13  Q   And that would be true for all of the contracts that draw

14      on that letter of credit, and -- I'm sorry.  Strike that.

15      That would be true for all of the invoices that

16      present draws on that letter of credit under Contract

17      CZY0604?

18  A   Yes.

19                      MR. GAUGHAN:  Object to form.

20  Q   (By Mr. Pfaehler)  And if we could turn -- turn to the

21      document that was marked Exhibit 14 yesterday.

22  A   Okay.

23  Q   Page 426 is also an invoice presented to draw on that

24      same letter of credit?

25  A   Correct.

Confidential - Subject to Further Confidentiality Review

Page 234

```
 1                        MR. GAUGHAN:  Form.
 2   Q   (By Mr. Pfaehler)  And Page 429 is a bill of lading
 3       issued for logs that were being shipped under that same
 4       contract pursuant to that same letter of credit; correct?
 5   A   Correct.
 6                        MR. GAUGHAN:  Object to form.
 7   Q   (By Mr. Pfaehler)  Let's look, if we would, at Exhibit --
 8       I'd like you to pull up two exhibits, Exhibit 5 and
 9       Exhibit 6, that Mr. Gaughan marked yesterday.
10   A   Okay.
11   Q   Now, Exhibit 6 says that it's an offer sheet; correct?
12   A   6.  Yes.
13   Q   And it doesn't have a contract number typed into it in
14       any way, does it?
15   A   Correct.
16   Q   These offer sheets were created on a computer at Western
17       Wood; is that true?
18   A   Exhibit -- Exhibit 6, yes.
19   Q   And do you see somebody wrote on Exhibit 6, "YXJ01" --
20       I'm sorry.  Let me try again.
21           Somebody wrote on Exhibit 6 "YXJ010915."
22           Do you see that?
23   A   Yes.
24   Q   And I believe you said yesterday you believed that was
25       Michelle Zaun's notation?
```

Golkow Technologies, Inc. - 1.877.370.DEPS

Confidential - Subject to Further Confidentiality Review

Page 240

1      try to --

2   A   Yeah, that's -- that's --

3   Q   That's correct?

4   A   That's fair, yes.

5   Q   So Exhibit 6, in fact, is not a final contract that was

6       carried out between the companies; correct?

7                       MR. GAUGHAN:  Object to form.  Calls

8       for a legal conclusion.

9                       THE WITNESS:  Correct.

10  Q   (By Mr. Pfaehler)  Now I'd like you to turn, if you

11      would, to Exhibit 19, and also pull up Exhibit 4.

12  A   Okay.

13  Q   Is Exhibit 19 the offer sheet that goes with Exhibit 4,

14      the executed offer sheet CZY0705?

15                      MR. GAUGHAN:  Object to the form.

16                      THE WITNESS:  Yes, it would have --

17      yes.

18  Q   (By Mr. Pfaehler)  When was the offer issued?

19  A   July 7, 2014.

20  Q   When was the offer expiration date?

21  A   July 14, 2014.

22  Q   What we're looking at as Exhibit 4 then is a contract

23      that was entered into between July 7th and July 14,

24      2014?

25                      MR. GAUGHAN:  Object to form.

Confidential - Subject to Further Confidentiality Review

Page 241

1  Q  (By Mr. Pfaehler)  Is that correct?

2  A  Yes.  It was issued -- yes.

3  Q  During that period, between July 7th and July 14, 2014?

4  A  That's when it was issued, yes.

5  Q  And it called for an irrevocable letter of credit; is

6     that right?

7  A  Yes.

8  Q  And that irrevocable letter of credit was issued pursuant

9     to that contract?

10                    MR. GAUGHAN:  Object to form.

11                    THE WITNESS:  Yes.

12  Q  (By Mr. Pfaehler)  Let's turn to what was marked as

13     Exhibit 20.  Actually, if we could turn first to 21, but

14     keep 20 out.

15  A  Okay.

16  Q  21's the letter of credit that goes with this contract;

17     right?

18                    MR. GAUGHAN:  Object to form.

19                    THE WITNESS:  Yes.

20  Q  (By Mr. Pfaehler)  And it's letter of credit

21     No. 334-01-0007857?

22  A  Yes.

23  Q  Would you turn with me then to Exhibit 20, and turn to

24     Page 462.

25  A  Okay.

Confidential - Subject to Further Confidentiality Review

Page 242

1   Q   This is a draw on that letter of credit; correct?

2   A   Yes.

3   Q   Now, there's a contract number here that is -- says

4       "JT073014."

5           Do you see that?

6   A   Yes.

7   Q   Is that a mistake?

8   A   At the time, no.  This -- according to the terms of the

9       letter of credit, under 46 A on Page 467, it said -- it

10      says "Pre-" -- it just indicates that -- "Indicate

11      contract number," and "Attention:  Ms. Liling, fax."  Do

12      you see that?  "Indicate contract number."

13  Q   You're looking at 46 A?

14  A   Yes, at the top.

15  Q   Just give me one second, if you don't mind.

16  A   Okay.

17  Q   Yes.  Yes, I see that.

18  A   So at the -- usually LCs will have a contract number

19      included, but this particular one didn't, so to has- --

20      you know, to speed up the process of us trying to get

21      paid, I guess, we just put in a -- typed in our own

22      contract number.  So JT would -- you know, John

23      Tortorelli -- the date matches up with the LC date.

24          And then it was -- it was afterwards that Jesse gave

25      us a contract number to -- for the particular LC.

Confidential - Subject to Further Confidentiality Review

Page 243

1   Q   I see.  So that's a placeholder, as it were --

2   A   Yes.

3   Q   -- in this invoice.

4       And as a placeholder, it actually refers back to

5       Contract CZY0705?

6   A   Yes.

7   Q   Which was made between July 7th and July 14, 2014?

8   A   Yes.

9   Q   And in case I didn't ask it, this document we're looking

10      at, 462, is a draw on the irrevocable letter of credit

11      issued under that contract; right?

12                      MR. GAUGHAN:  Object to form.

13                      THE WITNESS:  Yes.

14  Q   (By Mr. Pfaehler)  And if I could ask you to turn to

15      Exhibit 22, Page 472.  The same question.  This is a draw

16      on a letter of credit issued pursuant to the contract

17      entered into between July 7th and July 14, 2014?

18                      MR. GAUGHAN:  Object to form.

19                      THE WITNESS:  Yes.

20  Q   (By Mr. Pfaehler)  And if we can turn to Exhibit 23,

21      Page 481.

22      Is this a draw on the same letter of credit?

23  A   Yes.

24                      MR. GAUGHAN:  Object to form.

25  Q   (By Mr. Pfaehler)  And if you turn to Page 483, the Yang

Confidential - Subject to Further Confidentiality Review

Page 244

 1        Ming bill of lading, that reflects, again, that these

 2        logs were being shipped under Contract CZY0705, and with

 3        payment under the same irrevocable letter of credit;

 4        correct?

 5   A    Yes.

 6                         MR. GAUGHAN:  Object to form.

 7   Q    (By Mr. Pfaehler)  And if we look at Exhibit third- --

 8        24 -- strike that.

 9            If we look at Exhibit 24, and turn again to

10        Page 491.  This, again, is a presentment for payment of

11        logs shipped under the same contract?

12   A    Yes.

13                         MR. GAUGHAN:  Object to form.

14   Q    (By Mr. Pfaehler)  And it's a draw on the same letter of

15        credit?

16   A    Correct.

17                         MR. GAUGHAN:  Object to form.

18   Q    (By Mr. Pfaehler)  If we look at Exhibit 27, are we again

19        looking at a draw on the letter of credit for logs that

20        were shipped under the same contract entered into between

21        July 7th and July 14, 2014?

22                         MR. GAUGHAN:  Object to form.

23                         THE WITNESS:  Yes.

24   Q    (By Mr. Pfaehler)  It's a draw on an irrevocable letter

25        of credit issued under that contract?

Confidential - Subject to Further Confidentiality Review

Page 245

1   A   Yes.

2                    MR. GAUGHAN:  Object to form.

3   Q   (By Mr. Pfaehler)  And if we could look at Exhibit 28,

4       Page 509.

5           Is this again an invoice that was presented to the

6       bank to draw on the irrevocable letter of credit issued

7       under the contract that was made between July 7th and

8       July 14, 2014?

9                    MR. GAUGHAN:  Object to form.

10                   THE WITNESS:  Yes.

11                   MR. PFAEHLER:  No further questions at

12      this time.  Thank you, sir.

13                   THE WITNESS:  Thanks.

14                   MR. GAUGHAN:  Are you going to have a

15      lot of questions, Counsel?

16                   MR. CABOT:  Probably 20 minutes, 30

17      minutes.

18                   MR. GAUGHAN:  Should we take a brief

19      break?  Is that okay?

20                   MR. PFAEHLER:  I wouldn't mind

21      stretching my legs if -- are you okay, John, if we take a

22      break?

23                   THE WITNESS:  Yes.

24                   THE VIDEOGRAPHER:  We are going off

25      the record.  The time is now 11:24 a.m.

Confidential - Subject to Further Confidentiality Review

Page 275

```
 1      STATE OF WASHINGTON )    I, Cindy M. Koch, CCR, RPR, CRR,
                            ) ss CLR, a certified court reporter
 2      County of Pierce    )    in the State of Washington, do
                                 hereby certify:

 3

 4
                That the foregoing deposition of JOHN D. SALAMANCA
 5      was taken before me and completed on May 22, 2015, and
        thereafter was transcribed under my direction; that the
 6      deposition is a full, true and complete transcript of the
        testimony of said witness, including all questions, answers,
 7      objections, motions and exceptions;
 8              That the witness, before examination, was by me
        duly sworn to testify the truth, the whole truth, and
 9      nothing but the truth, and that the witness reserved the
        right of signature;

10
                That I am not a relative, employee, attorney or
11      counsel of any party to this action or relative or employee
        of any such attorney or counsel and that I am not
12      financially interested in the said action or the outcome
        thereof;

13
                That I am herewith securely sealing the said
14      deposition and promptly delivering the same to
        Attorney Matthew C. Gaughan.

15
                IN WITNESS WHEREOF, I have hereunto set my
16      signature on the 26th day of May, 2015.

17

18

19

20

21

22

23                                  _____
                                    Cindy M. Koch, CCR, RPR, CRR, CLR
24                                  Certified Court Reporter No. 2357
                                    (Certification expires 06/09/15.)
25
```

# WESTERN WOOD, LLC

### 26719 State Route 410 E. Buckley, WA  98321 Phone (360)829-1020 Fax (360)829-1165
### OFFER SHEET     CZY0603

OFFERED TO:  Beijing New Building Materials Co. Ltd.

We, Western Wood, LLC, offer Fresh Cut American Softwood Round Logs as follows:
Commodity:     American Softwood Round Logs  – Douglas Fir 300MBF at $1005/MBF

| | |
|---|---|
| Total Amount: | USD  301,500 CNF Shanghai, China |
| Discharge Port: | Shanghai Port, China |
| Last Shipping Date: | July 31, 2014 |
| LC Expiry Date: | August 15, 2014 |
| Partial Shipment: | Allowed |
| Trans Shipment: | Allowed |
| Payment Terms: | By irrevocable 100% Letter of Credit in favor of |
| | Western Wood, LLC |
| | 26719 State Route 410 East Buckley, WA  98321 USA |
| Advised Through: | Swift Address USBKUS44SEA |
| | US Bank |
| | (Seattle International Department – Formerly US Bank Seattle, WA USA) |
| | 1420 - Fifth Avenue – 9th Floor |
| | Seattle, Washington 98101 USA |
| | Tel: (206) 344-3711  Fax: (206) 344-5374 |
| Reimbursement Bank: | In USA any Head Office or Branch Office |

Special Conditions:
1. Plus and/or minus 10% quantity or amount shipment acceptable
2. Late presentation of document acceptable
3. Multimodal Transport Documents are Acceptable
4. Third party shipper is allowed.

Best regards,
Western Wood, LLC

X *John Tortorelli*

X _____

John J. Tortorelli


Offer Accepted:
 Beijing New Building Materials Co. Ltd.


Name: _____

Date: _____

For and on behalf of
BEIJING NEW BUILDING MATERIALS CO., LTD.

*Authorized Signature(s)*

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

BNBM(Group)0002862

# WESTERN WOOD, LLC

**26719 State Route 410 E. Buckley, WA  98321 Phone (360)829-1020 Fax (360)829-1165**
**OFFER SHEET     CZY0604**

OFFERED TO:  Beijing New Building Materials Co. Ltd.

We, Western Wood, LLC, offer Fresh Cut American Softwood Round Logs as follows:
Commodity:     American Softwood Round Logs – Douglas Fir 600MBF at $980/MBF

| | |
|---|---|
| Total Amount: | USD  588,000 CNF Shanghai, China |
| Discharge Port: | Shanghai Port, China |
| Last Shipping Date: | July 31, 2014 |
| LC Expiry Date: | August 15, 2014 |
| Partial Shipment: | Allowed |
| Trans Shipment: | Allowed |
| Payment Terms: | By irrevocable 100% Letter of Credit in favor of |
| | Western Wood, LLC |
| | 26719 State Route 410 East Buckley, WA  98321 USA |
| Advised Through: | Swift Address USBKUS44SEA |
| | US Bank |
| | (Seattle International Department – Formerly US Bank Seattle, WA USA) |
| | 1420 - Fifth Avenue – 9th Floor |
| | Seattle, Washington 98101 USA |
| | Tel: (206) 344-3711  Fax: (206) 344-5374 |
| Reimbursement Bank: | In USA any Head Office or Branch Office |

Special Conditions:
1. Plus and/or minus 10% quantity or amount shipment acceptable
2. Late presentation of document acceptable
3. Multimodal Transport Documents are Acceptable
4. Third party shipper is allowed.

Best regards,
Western Wood, LLC

X *John Tortorelli*

X _____
John J. Tortorelli

**Offer Accepted:**
 Beijing New Building Materials Co. Ltd.

For and on behalf of
BEIJING NEW BUILDING MATERIALS CO., LTD.

Name: _____

Date: _____



# WESTERN WOOD, LLC
**26719 State Route 410 E. Buckley, WA  98321 Phone (360)829-1020 Fax (360)829-1165**
**OFFER SHEET CZY0705**

OFFERED TO:  Beijing New Building Materials Co.,Ltd.

We, Western Wood, LLC, offer Fresh Cut American Softwood Round Logs as follows:
Commodity:       American Softwood Round Logs  – Douglas Fir 870MBF at $950/MBF

| | |
|---|---|
| Total Amount: | USD  826,500 CNF Shanghai, China |
| Discharge Port: | Shanghai Port, China |
| Last Shipping Date: | September 30, 2014 |
| LC Expiry Date: | October 15, 2014 |
| Partial Shipment: | Allowed |
| Trans Shipment: | Allowed |
| Payment Terms: | By irrevocable 100% Letter of Credit in favor of |
| | Western Wood, LLC |
| | 26719 State Route 410 East Buckley, WA  98321 USA |
| Advised Through: | Swift Address USBKUS44SEA |
| | US Bank |
| | (Seattle International Department – Formerly US Bank Seattle, WA USA) |
| | 1420 - Fifth Avenue – 9th Floor |
| | Seattle, Washington 98101 USA |
| | Tel: (206) 344-3711  Fax: (206) 344-5374 |
| Reimbursement Bank: | In USA any Head Office or Branch Office |

Special Conditions:
1. Plus and/or minus 10% quantity or amount shipment acceptable
2. Late presentation of document acceptable
3. Multimodal Transport Documents are Acceptable
4. Third party shipper is allowed.

Best regards,
Western Wood, LLC

X *John Tortorelli*
X
John J. Tortorelli

Offer Accepted:

For and on behalf of
北京新建材集团有限公司
BEIJING NEW BUILDING MATERIALS CO., LTD.

Name: _____
*Authorized Signature (s)*

Date: _____



EXHIBIT
WW4
Salamanca

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

BNBM(Group)0002864

SEA4115927(1)
SEA4146384(1)
YCW388973
YCW388974

U.S. Bank National Association          SWIFT   : USBKUS44SEA
International Dept., PD-WA-T91N          Phone   : 206-344-3711
1420 Fifth Avenue, 9th Floor            Fax     : 206-344-5374
Seattle, WA  98101  U.S.A.

                        LETTER OF CREDIT
07/02/14   .            ADVISING COVER LETTER
                        *********************

WESTERN WOOD LLC
26719 STATE ROUTE 410
EAST BUCKLEY, WA 98321

Attn: JOHN TORTORELLI   FAX: 360.829.1165

        U. S. Bank Reference Number   ELCSEA143613
        Letter of Credit Number       334-01-0007590
        Applicant                     BEIJING NEW BUILDING MATERIALS CO.
        Issuing Bank                  DBS BANK (CHINA) LIMITED
                                      BEIJING BRANCH, UNIT 101, 2105-08
                                      FORTUNE FINANCIAL CENTER NO.5 EAST3
                                      RD RING ROAD BEIJING 100033 CHINA

Please be advised that we are in receipt of a new Letter of Credit that
will be transmitted electronically to you.
We will hold the original in our file for safekeeping.

This Letter of Credit is subject to the "Uniform Customs and Practice
for Documentary Credits" (2007 Revision), International Chamber of
Commerce Publication No. 600.

This is to serve solely as our advice to you of this Letter of Credit
and conveys no obligation or engagement on our part. Please examine
this Letter of Credit carefully. If you are unable to comply with its
terms and conditions, please contact your buyer immediately to arrange
for an amendment.

*When presenting documents for negotiation, please provide an EXTRA
 COPY of each required document for our records.

PLEASE NOTE: US Bank N.A. will only determine compliance of documents
presented in the English language except as follows. The name of a
person or entity, any stamps, legalization, or endorsements, shown on a
document may be in a language other than English.  Documents which show
pre-printed field headings in both English and a second language are
also acceptable.  Otherwise, such documents will require a certified
translation which shall be at your expense. US Bank will not be
responsible for any delays caused by obtaining such a translation.

Pursuant to U.S. Law, we are required to obtain, verify, and record
information that identifies parties to the transaction and we are
prohibited from issuing, transferring, accepting, or effecting payment
to any party or entity identified by the U.S. Dept. of Treasury
including any office and bureau thereof or subject to the denial of
export privileges by the U.S. Dept. of Commerce.

This electronic notification requires no signature.          AAZ7



TRANSACTION INFORMATION

Transaction Type:    Incoming 710 Advice of a Third Bank's or a Non-Bank's Documentary Credit
Sending Bank:        DBSSCNSHAXXX
                     DBS BANK (CHINA) LIMITED
                     (SHANGHAI BRANCH)
                     SHANGHAI CHINA
Input Session/Sequence: 4467/630543
Input Time/Date:     18:11 2014/07/02

Receiving Bank:      USBFUS44ASEA
                     U.S. BANK
                     (SEATTLE INTERNATIONAL DEPARTMENT)
                     SEATTLE,WA UNITED STATES
Output Time/Date:    05:11 2014/07/02
Session/Sequence:    2869/513706

TRANSACTION DETAIL

27:    Sequence of Total
       1/1
40B:   Form of Documentary Credit
       IRREVOCABLE
       WITHOUT OUR CONFIRMATION
20:    Sender's Reference
       334-01-0007580
21:    Documentary Credit Number
       334-01-0007580
31C:   Date of Issue
       2014/07/02
40E:   Applicable Rules
       UCPURR LATEST VERSION
31D:   Date and Place of Expiry
       2014/08/15 IN UNITED STATES
52D:   Issuing Bank
       DBS BANK (CHINA) LIMITED
       UNIT 101, 210S-08 FORTUNE FINANCIAL
       CENTER NO.5 EAST 3RD RING ROAD
       BEIJING 100033 CHINA
50:    Applicant
       BEIJING NEW BUILDING MATERIALS CO.
       LTD            LEVEL 9 BUILDING
       NO 4 SHOU TI NAN ROAD HAIDIAN
       DISTRICT BEIJING CHINA 00010
59:    Beneficiary
       WESTERN WOOD, LLC
       26719 STATE ROUTE 410 E.BUCKLEY
       WA 98321 USA
32B:   Currency Code, Amount
       USD 558,000.
41D:   Available With ... By ...
       ANY BANK
       BY NEGOTIATION
42C:   Drafts at ...
       90 DAYS AFTER SIGHT
42D:   Drawee
       DBS BANK (CHINA) LIMITED
       BEIJING BRANCH
43P:   Partial Shipments
       ALLOWED
43T:   Transhipment
       ALLOWED
44E:   Port of Loading/Airport of Departure
       ANY PORT OF USA
44F:   Port of Discharge/Airport of Destination
       SHANGHAI PORT CHINA
44C:   Latest Date of Shipment
       2014/07/31
45A:   Description of Goods and/or Services
       PRICE TERM: C F R SHANGHAI PORT CHINA

WW 000388

AMERICAN SOFTWOOD ROUND LOGS 600MBF USD568,000.00

46A:   Documents Required:
+ SIGNED COMMERCIAL INVOICE IN 3 ORIGINALS AND 3 COPIES.
+ PACKING LIST IN 3 ORIGINALS AND 3 COPIES.
+ FULL (3 ORIGINALS AND 3 COPIES) SET OF CLEAN ON BOARD OCEAN
BILLS OF LADING MADE OUT TO ORDER AND BLANK ENDORSED MARKED
''FREIGHT PREPAID'' NOTIFYING APPLICANT WITH FULL NAME AND
ADDRESS,INDICATE CONTRACT NO,AND ATTN:MR LILING,FAX:86-10-
62709756.

47A:   Additional Conditions
FOR ALL COMMUNICATION, PLEASE SEND SWIFT TO DBS BANK (CHINA)
LIMITED , BEIJING BRANCH (DBSSCNSBBJG) QUOTING OUR REFERENCE
334-01-0067580
+ ALL PARTIES TO THIS DOCUMENTARY CREDIT ARE ADVISED THAT THERE
ARE SPECIFIC SANCTIONS AND REGULATIONS IMPOSED AND ENFORCED BY
THE US, UN, EU AND OTHER GOVERNMENTAL AND/OR REGULATORY
AUTHORITIES AGAINST CERTAIN COUNTRIES, ENTITIES AND/OR
INDIVIDUALS. UNDER THESE MEASURES, THE BANK AND OTHER PARTIES
MAY BE UNABLE TO PROCESS OR ENGAGE IN TRANSACTIONS WHICH
INVOLVE A BREACH OF THE SANCTIONS AND THE AUTHORITIES MAY
REQUIRE DISCLOSURE OF INFORMATION. THE BANK ASSUMES NO
LIABILITY FOR REJECTING ANY PRESENTATION OF DOCUMENTS THAT MAY
VIOLATE THE AFORESAID CONDITION AND ANY LOSS, DAMAGES OR DELAY
ARISING DIRECTLY OR INDIRECTLY IN CONNECTION WITH THE AFORESAID
MATTERS.
+ 10/10 PERCENT MORE OR LESS BOTH IN QUANTITY SHIPPED AND CREDIT
AMOUNT DRAWN IS ACCEPTABLE.
+ NOTWITHSTANDING THE LC TENOR IN FIELD 42C, THE NEGOTIATING BANK
IS AUTHORISED TO CLAIM REIMBURSEMENT FROM REIMBURSING BANK AFTER
RECEIPT OF ACCEPTANCE MESSAGE FROM ISSUING BANK.
+ REIMBURSEMENT INTEREST WILL BE BORNE BY APPLICANT,THE MAXIMUM
FINANCING INTEREST IS USD50,000.00 AND ALL THE OTHER BANKING
CHARGES OUTSIDE THE ISSUING BANK'S COUNTRY INCLUDING
REIMBURSEMENT BANK CHARGES ARE FOR ACCOUNT OF BENEFICIARY.
+ REIMBURSING BANK: DBS BANK LTD. SINGAPORE SG.
+ THIRD PARTY SHIPPER IS ALLOWED.
+ MULTIMODAL TRANSPORT DOCUMENTS ARE ACCEPTABLE.
+ ON EACH DRAWING UNDER OUR LETTER OF CREDIT, A DISCREPANCY
FEE FOR USD60.00 (OR EQUIVALENT) PLUS RELATIVE CABLE CHARGES
WILL BE CHARGED AND DEDUCTED FROM OUR PAYMENT/THE REIMBURSEMENT
CLAIM ON THE DISCREPANT DOCUMENTS. ADDITIONAL FEE FOR USD25.00
WILL ALSO BE CHARGED ON EACH ADDITIONAL SET OF DOCUMENT (A
'SET' OF DOCUMENT WOULD INCLUDE ONE SET OF INVOICE PLUS
RELATIVE TRANSPORT DOCUMENTS) UNDER THE SAME DRAWING.
NOTWITHSTANDING ANY INSTRUCTIONS TO THE CONTRARY, THIS
CHARGES SHALL BE FOR THE ACCOUNT OF THE BENEFICIARY.
+ THE ISSUING BANK SHALL BE ENTITLED TO REQUIRE THE NOMINATED
BANK TO SEND COPIES OF ALL THE DOCUMENTS PRESENTED UNDER THE
CREDIT AND WHICH THE NOMINATED BANK HAS DETERMINED TO BE A
COMPLYING PRESENTATION. WERE THE DOCUMENTS THUS DETERMINED TO BE
COMPLYING LOST IN TRANSIT AFTER BEING SENT BY THE NOMINATED BANK,
THE ISSUING BANK SHOULD BE ENTITLED TO EXAMINE THE COPIES OF THE
DOCUMENTS TO DETERMINE IF THEY COMPLY WITH THE TERMS OF THE
CREDIT (EXCEPT FOR THE QUESTION OF ORIGINALITY) AND TO REFUSE
REIMBURSEMENT TO THE NOMINATED BANK SHOULD THE ISSUING BANK
DETERMINE THAT THE DOCUMENTS DO NOT COMPLY WITH THE TERMS OF THE
CREDIT. ARTICLE 35, TO THE EXTENT IT IS INCONSISTENT WITH THE
FOREGOING, IS EXPRESSLY EXCLUDED.
+ PLEASE BE INFORMED THAT SATURDAY AND SUNDAY ARE TO BE
CONSIDERED AS A NON-BANKING/NON-BUSINESS DAY FOR OUR TRADE
FINANCE PROCESSING / OPERATIONS UNIT ALTHOUGH OUR BANK MAY
OTHERWISE TO BE OPENED FOR OTHER BUSINESS.
+ ALL DOCUMENTS MUST BE ISSUED IN ENGLISH.

71B:   Charges
SEE 47A

48:   Period for Presentation
ALL DOCUMENTS MUST BE PRESENTED FOR
NEGOTIATION WITHIN 15 DAYS AFTER
DATE OF SHIPMENT BUT WITHIN

WW 000389

```
            VALIDITY OF THIS CREDIT
     49:    Confirmation Instructions
            WITHOUT
     78:    Instructions to the Paying/Accepting/Negotiating Bank
            + AN EXTRA COPY OF INVOICE, FORWARDER/APPLICANT'S CARGO RECEIPT
            OR BILL OF LADING OR AIR WAYBILL, IF APPLICABLE, MUST BE
            FURNISHED TO LC ISSUING BANK FOR OUR OWN RECORD.
            + DOCUMENTS TO BE DESPATCHED TO DBS BANK (CHINA) LIMITED ,
            BEIJING BRANCH UNIT 101, 2105-08 FORTUNE FINANCIAL CENTER NO.5
            EAST 3RD RING ROAD BEIJING 100033 CHINA THROUGH PRESENTING BANK
            IN ONE LOT BY DHL/COURIER SERVICES.
            + PRESENTING BANK MUST CERTIFY ON ITS COVERING SCHEDULE THAT THE
            AMOUNT OF EACH DRAWING HAS BEEN ENDORSED ON THE ORIGINAL CREDIT.
            + REIMBURSE YOURSELVES ON THE REIMBURSING BANK AT SIGHT BASIS
            AFTER RECEIPT OF ACCEPTANCE MESSAGE FROM ISSUING BANK.

            (END 710 Advice of a Third Bank's or a Non-Bank's Documentary Credit 334-01-0007580
Message)
```

YCH385646
YCH385648

U.S. Bank National Association
International Dept., PD-WA-T9IN
1420 Fifth Avenue, 9th Floor
Seattle, WA, 98101 U.S.A.

SWIFT   : USBKUS44SEA
Phone   : 206-344-3711
Fax     : 206-344-5374

LETTER OF CREDIT
07/02/14              ADVISING COVER LETTER
                  ****************************

WESTERN WOOD LLC
26719 STATE ROUTE 410
EAST BUCKLEY, WA 98321
Attn: JOHN TORTORELLI  FAX: 360.829.1166

U. S. Bank Reference Number    ELCSEA143617
Letter of Credit Number        334-01-0007599
Applicant                      BEIJING NEW BUILDING MATERIALS CO.
Issuing Bank                   DBS BANK (CHINA) LIMITED
                               BEIJING BRANCH, UNIT 101, 2105-08
                               FORTUNE FINANCIAL CENTER NO.5 EAST
                               3RD RING ROAD BEIJING 100033 CHINA

Please be advised that we are in receipt of a new Letter of Credit that
will be transmitted electronically to you.
We will hold the original in our file for safekeeping.

This Letter of Credit is subject to the "Uniform Customs and Practice
for Documentary Credits" (2007 Revision), International Chamber of
Commerce Publication No. 600.

This is to serve solely as our advice to you of this Letter of Credit
and conveys no obligation or engagement on our part. Please examine
this Letter of Credit carefully. If you are unable to comply with its
terms and conditions, please contact your buyer immediately to arrange
for an amendment.

*When presenting documents for negotiation, please provide an EXTRA
COPY of each required document for our records.

PLEASE NOTE: US Bank N.A. will only determine compliance of documents
presented in the English language except as follows. The name of a
person or entity, any stamps, legalization, or endorsements, shown on a
document may be in a language other than English.  Documents which show
pre-printed field headings in both English and a second language are
also acceptable.  Otherwise, such documents will require a certified
translation which shall be at your expense. US Bank will not be
responsible for any delays caused by obtaining such a translation.

Pursuant to U.S. Law, we are required to obtain, verify, and record
information that identifies parties to the transaction and we are
prohibited from issuing, transferring, accepting, or effecting payment
to any party or entity identified by the U.S. Dept. of Treasury
including any office and bureau thereof or subject to the denial of
export privileges by the U.S. Dept. of Commerce.

This electronic notification requires no signature.            AA27



WW 000432

TRANSACTION INFORMATION

Transaction Type:      Incoming 710 Advice of a Third Bank's or a Non-Bank's Documentary Credit
Sending Bank:          DBSSCNSHAXXX
                       DBS BANK (CHINA) LIMITED
                       (SHANGHAI BRANCH)
                       SHANGHAI CHINA
Input Session/Sequence: 4467/630545
Input Time/Date:       18:11 2014/07/02

Receiving Bank:        USBKUS44ASEA
                       U.S. BANK
                       (SEATTLE INTERNATIONAL DEPARTMENT)
                       SEATTLE,WA UNITED STATES
Output Time/Date:      05:11 2014/07/02
Session/Sequence:      2869/513711

TRANSACTION DETAIL

27:   Sequence of Total
      1/1
40B:  Form of Documentary Credit
      IRREVOCABLE
      WITHOUT OUR CONFIRMATION
20:   Sender's Reference
      334-01-0007599
21:   Documentary Credit Number
      334-01-0007599
31C:  Date of Issue
      2014/07/02
40E:  Applicable Rules
      UCPURR LATEST VERSION
31D:  Date and Place of Expiry
      2014/08/15 IN UNITED STATES
52D:  Issuing Bank
      DBS BANK (CHINA) LIMITED
      UNIT 101, 2105-08 FORTUNE FINANCIAL
      CENTER NO.5 EAST 3RD RING ROAD
      BEIJING 100033 CHINA
50:   Applicant
      BEIJING NEW BUILDING MATERIALS CO.
      LTD              LEVEL 5 BUILDING
      NO 4 SHOU TI NAN ROAD HAIDIAN
      DISTRICT BEIJING CHINA 00010
59:   Beneficiary
      WESTERN WOOD, LLC
      26719 STATE ROUTE 410 E.BUCKLEY
      WA 98321 USA
33B:  Currency Code, Amount
      USD 301,500.
41D:  Available With ... By ...
      ANY BANK
      BY NEGOTIATION
42C:  Drafts at ...
      90 DAYS AFTER SIGHT
42D:  Drawee
      DBS BANK (CHINA) LIMITED
      BEIJING BRANCH
43P:  Partial Shipments
      ALLOWED
43T:  Transhipment
      ALLOWED
44E:  Port of Loading/Airport of Departure
      ANY PORT OF USA
44F:  Port of Discharge/Airport of Destination
      SHANGHAI PORT CHINA
44C:  Latest Date of Shipment
      2014/07/31
45A:  Description of Goods and/or Services
      PRICE TERM: C F R SHANGHAI PORT CHINA

WW 000433

AMERICAN SOFTWOOD ROUND LOGS 300MBF USD301,500.00

46A:    Documents Required
        + SIGNED COMMERCIAL INVOICE IN 3 ORIGINALS AND 3 COPIES.
        + PACKING LIST IN 3 ORIGINALS AND 3 COPIES.
        + FULL (3 ORIGINALS AND 3 COPIES) SET OF CLEAN ON BOARD OCEAN
        BILLS OF LADING MADE OUT TO ORDER AND BLANK ENDORSED MARKED
        ''FREIGHT PREPAID'' NOTIFYING APPLICANT WITH FULL NAME AND
        ADDRESS,INDICATE CONTRACT NO,AND ATTN:MS LILING,FAX:86-10-
        68799756.

47A:    Additional Conditions
        FOR ALL COMMUNICATION, PLEASE SEND SWIFT TO DBS BANK (CHINA)
        LIMITED , BEIJING BRANCH (DBSSCNSHBJG) QUOTING OUR REFERENCE
        334,01-0007599
        + ALL PARTIES TO THIS DOCUMENTARY CREDIT ARE ADVISED THAT THERE
        ARE SPECIFIC SANCTIONS AND REGULATIONS IMPOSED AND ENFORCED BY
        THE US, UN, EU AND OTHER GOVERNMENTAL AND/OR REGULATORY
        AUTHORITIES AGAINST CERTAIN COUNTRIES, ENTITIES AND/OR
        INDIVIDUALS. UNDER THESE MEASURES, THE BANK AND OTHER PARTIES
        MAY BE UNABLE TO PROCESS OR ENGAGE IN TRANSACTIONS WHICH
        INVOLVE A BREACH OF THE SANCTIONS AND THE AUTHORITIES MAY
        REQUIRE DISCLOSURE OF INFORMATION. THE BANK ASSUMES NO
        LIABILITY FOR REJECTING ANY PRESENTATION OF DOCUMENTS THAT MAY
        VIOLATE THE AFORESAID CONDITION AND ANY LOSS, DAMAGES OR DELAY
        ARISING DIRECTLY OR INDIRECTLY IN CONNECTION WITH THE AFORESAID
        MATTERS.
        + 10/10 PERCENT MORE OR LESS BOTH IN QUANTITY SHIPPED AND CREDIT
        AMOUNT DRAWN IS ACCEPTABLE.
        + NOTWITHSTANDING THE LC TENOR IN FIELD 42C, THE NEGOTIATING BANK
        IS AUTHORISED TO CLAIM REIMBURSEMENT FROM REIMBURSING BANK AFTER
        RECEIPT OF ACCEPTANCE MESSAGE FROM ISSUING BANK.
        + REIMBURSEMENT INTEREST WILL BE BORNE BY APPLICANT,THE MAXIMUM
        FINANCING INTEREST IS USD30,000.00 AND ALL THE OTHER BANKING
        CHARGES OUTSIDE THE ISSUING BANK'S COUNTRY INCLUDING
        REIMBURSEMENT BANK CHARGES ARE FOR ACCOUNT OF BENEFICIARY.
        + REIMBURSING BANK: DBS BANK LTD. SINGAPORE SG.
        + THIRD PARTY SHIPPER IS ALLOWED.
        + MULTIMODAL TRANSPORT DOCUMENTS ARE ACCEPTABLE.
        + ON EACH DRAWING UNDER OUR LETTER OF CREDIT, A DISCREPANCY
        FEE FOR USD40.00 (OR EQUIVALENT) PLUS RELATIVE CABLE CHARGES
        WILL BE CHARGED AND DEDUCTED FROM OUR PAYMENT/THE REIMBURSEMENT
        CLAIM ON THE DISCREPANT DOCUMENTS. ADDITIONAL FEE FOR USD25.00
        WILL ALSO BE CHARGED ON EACH ADDITIONAL SET OF DOCUMENT (A
        'SET' OF DOCUMENT WOULD INCLUDE ONE SET OF INVOICE PLUS
        RELATIVE TRANSPORT DOCUMENTS) UNDER THE SAME DRAWING.
        NOTWITHSTANDING ANY INSTRUCTIONS TO THE CONTRARY, THIS
        CHARGES SHALL BE FOR THE ACCOUNT OF THE BENEFICIARY.
        + THE ISSUING BANK SHALL BE ENTITLED TO REQUIRE THE NOMINATED
        BANK TO SEND COPIES OF ALL THE DOCUMENTS PRESENTED UNDER THE
        CREDIT AND WHICH THE NOMINATED BANK HAS DETERMINED TO BE A
        COMPLYING PRESENTATION. WERE THE DOCUMENTS THUS DETERMINED TO BE
        COMPLYING LOST IN TRANSIT AFTER BEING SENT BY THE NOMINATED BANK,
        THE ISSUING BANK SHOULD BE ENTITLED TO EXAMINE THE COPIES OF THE
        DOCUMENTS TO DETERMINE IF THEY COMPLY WITH THE TERMS OF THE
        CREDIT (EXCEPT FOR THE QUESTION OF ORIGINALITY) AND TO REFUSE
        REIMBURSEMENT TO THE NOMINATED BANK SHOULD THE ISSUING BANK
        DETERMINE THAT THE DOCUMENTS DO NOT COMPLY WITH THE TERMS OF THE
        CREDIT. ARTICLE 35, TO THE EXTENT IT IS INCONSISTENT WITH THE
        FOREGOING, IS EXPRESSLY EXCLUDED.
        + PLEASE BE INFORMED THAT SATURDAY AND SUNDAY ARE TO BE
        CONSIDERED AS A NON-BANKING/NON-BUSINESS DAY FOR OUR TRADE
        FINANCE PROCESSING / OPERATIONS UNIT ALTHOUGH OUR BANK MAY
        OTHERWISE TO BE OPENED FOR OTHER BUSINESS.
        + ALL DOCUMENTS MUST BE ISSUED IN ENGLISH.

71B:    Charges
        SEE 47A

48:     Period for Presentation
        ALL DOCUMENTS MUST BE PRESENTED FOR
        NEGOTIATION WITHIN 15 DAYS AFTER
        DATE OF SHIPMENT BUT WITHIN

WW 000434

VALIDITY OF THIS CREDIT
49:    Confirmation Instructions
       WITHOUT
78:    Instructions to the Paying/Accepting/Negotiating Bank
       + AN EXTRA COPY OF INVOICE, FORWARDER/APPLICANT'S CARGO RECEIPT
       OR BILL OF LADING OR AIR WAYBILL, IF APPLICABLE, MUST BE
       FURNISHED TO LC ISSUING BANK FOR OUR OWN RECORD.
       + DOCUMENTS TO BE DESPATCHED TO DBS BANK (CHINA) LIMITED ,
       BEIJING BRANCH UNIT 101, 2105-08 FORTUNE FINANCIAL CENTER NO.5
       EAST 3RD RING ROAD BEIJING 100033 CHINA THROUGH PRESENTING BANK
       IN ONE LOT BY DHL/COURIER SERVICES.
       + PRESENTING BANK MUST CERTIFY ON ITS COVERING SCHEDULE THAT THE
       AMOUNT OF EACH DRAWING HAS BEEN ENDORSED ON THE ORIGINAL CREDIT.
       + REIMBURSE YOURSELVES ON THE REIMBURSING BANK AT SIGHT BASIS
       AFTER RECEIPT OF ACCEPTANCE MESSAGE FROM ISSUING BANK.

       [END 710 Advice of a Third Bank's or a Non-Bank's Documentary Credit 334-C1-0007599 .
Message]

WW 000435

# WESTERN WOOD, LLC

**26719 State Route 410 E. Buckley, WA  98321 Phone (360)829-1020 Fax (360)829-1165**
**wwlc1@msn.com**
**OFFER SHEET**



Offer Issue Date:      July 07, 2014
Offer Expiration Date:   July 14, 2014

OFFERED TO:  Beijing New Building Materials Co. Ltd.

We, WesternWood, LLC, offer Fresh Cut American Softwood Round Logs as follows:
Commodity:       American Softwood Round Logs – Douglas Fir 1160MBF at $950/MBF

Total Amount:        USD  1,102,000 CNF Shanghai, China
Discharge Port:       Shanghai Port, China
Last Shipping Date:    September 15, 2014
LC Expiry Date:       September 30, 2014
Partial Shipment:      Allowed
Trans Shipment:       Allowed
Payment Terms:       By irrevocable 100% Letter of Credit in favor of
                    Western Wood, LLC
                    26719 State Route 410 East Buckley, WA  98321 USA
Advised Through:      Swift Address USBKUS44SEA
                    US Bank
                    (Seattle International Department – Formerly US Bank Seattle, WA USA)
                    1420 - Fifth Avenue – 9th Floor
                    Seattle, Washington 98101 USA
                    Tel: (206) 344-3711   Fax: (206) 344-5374
Reimbursement Bank:   In USA any Head Office or Branch Office

Special Conditions:
1. Plus and/or minus 10% quantity or amount shipment acceptable
2. Late presentation of document acceptable
3. Multimodal Transport Documents are Acceptable
4. Third party shipper is allowed.

Best regards,
Western Wood, LLC

x _John Tortorelli_

John J. Tortorelli

Offer Accepted:
Beijing New Building Materials Co. Ltd.

X _____

Name: _____

Date: _____



WW 000457

8009647OD
SEA418669500
YCH391147
YCH393185
YCH410682
YCH401696

```
U.S. Bank National Association          SWIFT   : USBKUS44SEA
International Dept.. PD-WA-T9IN          Phone   : 206-344-3711
1420 Fifth Avenue, 9th Floor            Fax     : 206-344-5374
Seattle, WA  98101  U.S.A.

07/30/14              LETTER OF CREDIT
                   ADVISING COVER LETTER
                 *********************

WESTERN WOOD LLC
26719 STATE ROUTE 410
EAST BUCKLEY, WA 98321

Attn: JOHN TORTORELLI  FAX: 360.829.1165
```

```
U. S. Bank Reference Number      ELCSEA144454
Letter of Credit Number          334-01-0007857
Applicant                        BEIJING NEW BUILDING MATERIALS CO'
Issuing Bank                     DBS BANK (CHINA) LIMITED
                                 BEIJING BRANCH, UNIT 101, 2105-08
                                 FORTUNE FINANCIAL CTR. NO. 5 EAST
                                 ROAD, BEIJING, CHINA 100033
```

Please be advised that we are in receipt of a new Letter of Credit that
will be transmitted electronically to you.
We will hold the original in our file for safekeeping.

This Letter of Credit is subject to the "Uniform Customs and Practice
for Documentary Credits" (2007 Revision), International Chamber of
Commerce Publication No. 600.

This is to serve solely as our advice to you of this Letter of Credit
and conveys no obligation or engagement on our part. Please examine
this Letter of Credit carefully. If you are unable to comply with its
terms and conditions, please contact your buyer immediately to arrange
for an amendment.

*When presenting documents for negotiation, please provide an EXTRA
 COPY of each required document for our records.

PLEASE NOTE: US Bank N.A. will only determine compliance of documents
presented in the English language except as follows. The name of a
person or entity, any stamps, legalization, or endorsements, shown on a
document may be in a language other than English.  Documents which show
pre-printed field headings in both English and a second language are
also acceptable.  Otherwise, such documents will require a certified
translation which shall be at your expense. US Bank will not be
responsible for any delays caused by obtaining such a translation.

Pursuant to U.S. Law, we are required to obtain, verify, and record
information that identifies parties to the transaction and we are
prohibited from issuing, transferring, accepting, or effecting payment
to any party or entity identified by the U.S. Dept. of Treasury
including any office and bureau thereof or subject to the denial of
export privileges by the U.S. Dept. of Commerce.

This electronic notification requires no signature.          DHN7



EXHIBIT
WW21
Salamanca

WW 000465

TRANSACTION INFORMATION

Transaction Type:        Incoming 710 Advice of a Third Bank's or a Non-Bank's Documentary Credit
Sending Bank:            DBSSCNSHAXXX
                         DBS BANK (CHINA) LIMITED
                         (SHANGHAI BRANCH)
                         SHANGHAI CHINA
Input Session/Sequence:  4471/639811
Input Time/Date:         18:21 2014/07/30

Receiving Bank:          USBKUS44ASEA
                         U.S. BANK
                         (SEATTLE INTERNATIONAL DEPARTMENT)
                         SEATTLE,WA UNITED STATES
Output Time/Date:        05:22 2014/07/30
Session/Sequence:        2873/588649

TRANSACTION DETAIL

27:    Sequence of Total
       1/1
40B:   Form of Documentary Credit
       IRREVOCABLE
       WITHOUT OUR CONFIRMATION
20:    Sender's Reference
       334-01-0007857
21:    Documentary Credit Number
       334-01-0007857
31C:   Date of Issue
       2014/07/30
40E:   Applicable Rules
       UCPUPR LATEST VERSION
31D:   Date and Place of Expiry
       2014/10/15 IN UNITED STATES
52D:   Issuing Bank
       DBS BANK (CHINA) LIMITED
       UNIT 101, 2105-09 FORTUNE FINANCIAL
       CENTER NO.5 EAST 3RD RING ROAD
       BEIJING 100033 CHINA
50:    Applicant
       BEIJING NEW BUILDING MATERIALS CO.
       LTD   10/F BUILIDING 4 INTERNEST
       BUSINESS CENTER,NO.9 SOUTH ROAD
       SHOUTI HAIDIAN DIST,BEIJING
59:    Beneficiary
       WESTERN WOOD, LLC
       26719 STATE ROUTE 410 E.BUCKLEY
       WA 98321 USA
32B:   Currency Code, Amount
       USD 926,500.
41D:   Available With ... By ...
       ANY BANK
       BY NEGOTIATION
42C:   Drafts at ...
       90 DAYS AFTER SIGHT
42D:   Drawee
       DBS BANK (CHINA) LIMITED
       BEIJING BRANCH
43P:   Partial Shipments
       ALLOWED
43T:   Transhipment
       ALLOWED
44E:   Port of Loading/Airport of Departure
       ANY PORTS OF U.S.A.
44F:   Port of Discharge/Airport of Destination
       SHANGHAI PORT,CHINA
44C:   Latest Date of Shipment
       2014/09/30
45A:   Description of Goods and/or Services
       PRICE TERM: C F R SHANGHAI PORT,CHINA

WW 000466

AMERICAN SOFTWOOD ROUND LOGS 870MBF USD826,500.00

46A:  Documents Required
+ SIGNED COMMERCIAL INVOICE IN 3 ORIGINALS AND 3 COPIES.
+ PACKING LIST IN 3 ORIGINALS AND 3 COPIES.
+ FULL (3 ORIGINALS AND 3 COPIES) SET OF CLEAN ON BOARD OCEAN
BILLS OF LADING MADE OUT TO ORDER AND BLANK ENDORSED MARKED
''FREIGHT PREPAID'' NOTIFYING APPLICANT WITH FULL NAME AND
ADDRESS,INDICATE CONTRACT NO,AND ATTN:MS LILING,FAX:86-10-
68799756.
+ BENEFICIARY'S CERTIFIED COPY OF FAX/TELEX DISPATCHED TO THE
APPLICANT WITHIN 360 HOURS AFTER SHIPMENT, ADVISING NAME OF
VESSEL,B/L NO,SHIPPING DATE,CONTRACT NO,L/C
NO.,COMMODITY,QUANTITY AND VALUE OF SHIPMENT.

47A:  Additional Conditions
FOR ALL COMMUNICATION, PLEASE SEND SWIFT TO DBS BANK (CHINA)
LIMITED , BEIJING BRANCH DBSBCNSHBJG QUOTING OUR REFERENCE
334-01-0007857
+ ALL PARTIES TO THIS DOCUMENTARY CREDIT ARE ADVISED THAT THERE
ARE SPECIFIC SANCTIONS AND REGULATIONS IMPOSED AND ENFORCED BY
THE US, UN, EU AND OTHER GOVERNMENTAL AND/OR REGULATORY
AUTHORITIES AGAINST CERTAIN COUNTRIES, ENTITIES AND/OR
INDIVIDUALS. UNDER THESE MEASURES, THE BANK AND OTHER PARTIES
MAY BE UNABLE TO PROCESS OR ENGAGE IN TRANSACTIONS WHICH
INVOLVE A BREACH OF THE SANCTIONS AND THE AUTHORITIES MAY
REQUIRE DISCLOSURE OF INFORMATION. THE BANK ASSUMES NO
LIABILITY FOR REJECTING ANY PRESENTATION OF DOCUMENTS THAT MAY
VIOLATE THE AFORESAID CONDITION AND ANY LOSS, DAMAGES OR DELAY
ARISING DIRECTLY OR INDIRECTLY IN CONNECTION WITH THE AFORESAID
MATTERS.
+ 10/10 PERCENT MORE OR LESS BOTH IN QUANTITY SHIPPED AND CREDIT
AMOUNT DRAWN IS ACCEPTABLE.
+ NOTWITHSTANDING THE LC TENOR IN FIELD 42C, THE NEGOTIATING BANK
IS AUTHORISED TO CLAIM REIMBURSEMENT FROM REIMBURSING BANK AFTER
RECEIPT OF ACCEPTANCE MESSAGE FROM ISSUING BANK.
+ REIMBURSEMENT INTEREST WILL BE BORNE BY APPLICANT,THE MAXIMUM
FINANCING INTEREST IS USD80,000.00 AND ALL THE OTHER BANKING
CHARGES OUTSIDE THE ISSUING BANK'S COUNTRY INCLUDING
REIMBURSEMENT BANK CHARGES ARE FOR ACCOUNT OF BENEFICIARY.
+ REIMBURSING BANK: DBS BANK LTD. SINGAPORE SG.
+ THIRD PARTY SHIPPER IS ALLOWED.
+ MULTIMODAL TRANSPORT DOCUMENTS ARE ACCEPTABLE.
+ ON EACH DRAWING UNDER OUR LETTER OF CREDIT, A DISCREPANCY
FEE FOR USD60.00 (OR EQUIVALENT) PLUS RELATIVE CABLE CHARGES
WILL BE CHARGED AND DEDUCTED FROM OUR PAYMENT/THE REIMBURSEMENT
CLAIM ON THE DISCREPANT DOCUMENTS. ADDITIONAL FEE FOR USD25.00
WILL ALSO BE CHARGED ON EACH ADDITIONAL SET OF DOCUMENT (A
'SET' OF DOCUMENT WOULD INCLUDE ONE SET OF INVOICE PLUS
RELATIVE TRANSPORT DOCUMENTS) UNDER THE SAME DRAWING.
NOTWITHSTANDING ANY INSTRUCTIONS TO THE CONTRARY, THIS
CHARGES SHALL BE FOR THE ACCOUNT OF THE BENEFICIARY.
+ THE ISSUING BANK SHALL BE ENTITLED TO REQUIRE THE NOMINATED
BANK TO SEND COPIES OF ALL THE DOCUMENTS PRESENTED UNDER THE
CREDIT AND WHICH THE NOMINATED BANK HAS DETERMINED TO BE A
COMPLYING PRESENTATION. WERE THE DOCUMENTS THUS DETERMINED TO BE
COMPLYING LOST IN TRANSIT AFTER BEING SENT BY THE NOMINATED BANK,
THE ISSUING BANK SHOULD BE ENTITLED TO EXAMINE THE COPIES OF THE
DOCUMENTS TO DETERMINE IF THEY COMPLY WITH THE TERMS OF THE
CREDIT (EXCEPT FOR THE QUESTION OF ORIGINALITY) AND TO REFUSE
REIMBURSEMENT TO THE NOMINATED BANK SHOULD THE ISSUING BANK
DETERMINE THAT THE DOCUMENTS DO NOT COMPLY WITH THE TERMS OF THE
CREDIT. ARTICLE 35, TO THE EXTENT IT IS INCONSISTENT WITH THE
FOREGOING, IS EXPRESSLY EXCLUDED.
+ PLEASE BE INFORMED THAT SATURDAY AND SUNDAY ARE TO BE
CONSIDERED AS A NON-BANKING/NON-BUSINESS DAY FOR OUR TRADE
FINANCE PROCESSING / OPERATIONS UNIT ALTHOUGH OUR BANK MAY
OTHERWISE TO BE OPENED FOR OTHER BUSINESS.
+ ALL DOCUMENTS MUST BE ISSUED IN ENGLISH.

71B:  Charges
SEE 47A

WW 000467

```
48:    Period for Presentation
       ALL DOCUMENTS MUST BE PRESENTED FOR
       NEGOTIATION WITHIN 15 DAYS AFTER
       DATE OF SHIPMENT BUT WITHIN
       VALIDITY OF THIS CREDIT
49:    Confirmation Instructions
       WITHOUT
78:    Instructions to the Paying/Accepting/Negotiating Bank
       + AN EXTRA COPY OF INVOICE, FORWARDER/APPLICANT'S CARGO RECEIPT
       OR BILL OF LADING OR AIR WAYBILL, IF APPLICABLE, MUST BE
       FURNISHED TO LC ISSUING BANK FOR OUR OWN RECORD.
       + DOCUMENTS TO BE DESPATCHED TO DBS BANK (CHINA) LIMITED ,
       BEIJING BRANCH UNIT 101, 2105-08 FORTUNE FINANCIAL CENTER NO.5
       EAST 3RD RING ROAD BEIJING 100033 CHINA THROUGH PRESENTING BANK
       IN ONE LOT BY DHL/COURIER SERVICES.
       + PRESENTING BANK MUST CERTIFY ON ITS COVERING SCHEDULE THAT THE
       AMOUNT OF EACH DRAWING HAS BEEN ENDORSED ON THE ORIGINAL CREDIT.
       + REIMBURSE YOURSELVES ON THE REIMBURSING BANK AT SIGHT BASIS
       AFTER RECEIPT OF ACCEPTANCE MESSAGE FROM ISSUING BANK.

       {END 710 Advice of a Third Bank's or a Non-Bank's Documentary Credit 334-01-0007857
Message}
```

WW 000468

Outlook.com Print Message                                                      Page 1 of 1

<u>Print</u>                                                                    <u>Close</u>

## Fw: 中勇150柜花旗分成50+100

From: 吴国水 (jesse55@126.com)
Sent: Mon 7/14/14 9:36 PM
To:     wwlc1@msn.com
        2 attachments
        CZY0603.docx (22.3 KB) , CZY0604.docx (22.3 KB)


Hi Michelle,

plesse check the attached for contract number. if any question,plesse let me know.

Thank you!
jesse


--

************************************************************ 北新建材集团有限公司（BNBMG） BEIJING
NEW BUILDING MATERIALS CO., LTD. 地址：北京市海淀区首体南路9号主语国际4号楼10层 address：
10/F,Building 4, Interwest Business Center, No.9, South Road Shouti,Haidian District,Beijing, China (100048)
Phone&Tel：18651186051 Fex：010-68799756
************************************************************



EXHIBIT
WW 55
Salamanca
5/19/2015
WW 000230

# WESTERN WOOD, LLC

### 26719 State Route 410 E. Buckley, WA  98321 Phone (360)829-1020 Fax (360)829-1165
### OFFER SHEET     CZY0603

Offer Issue Date:        June 13, 2014
Offer Expiration Date:   June 20, 2014

OFFERED TO:  Beijing New Building Materials Co. Ltd.

We, WesternWood, LLC, offer Fresh Cut American Softwood Round Logs as follows:
Commodity:        American Softwood Round Logs – Douglas Fir 300MBF at $1005/MBF


Total Amount:            USD  301,500 CNF Shanghai, China
Discharge Port:          Shanghai Port, China
Last Shipping Date:      July 31, 2014
LC Expiry Date:          August 15, 2014
Partial Shipment:        Allowed
Trans Shipment:          Allowed
Payment Terms:           By irrevocable 100% Letter of Credit in favor of
                         Western Wood, LLC
                         26719 State Route 410 East Buckley, WA  98321 USA
Advised Through:         Swift Address USBKUS44SEA
                         US Bank
                         (Seattle International Department – Formerly US Bank Seattle, WA USA)
                         1420 - Fifth Avenue – 9th Floor
                         Seattle, Washington 98101 USA
                         Tel: (206) 344-3711   Fax: (206) 344-5374
Reimbursement Bank:      In USA any Head Office or Branch Office

Special Conditions:
1. Plus and/or minus 10% quantity or amount shipment acceptable
2. Late presentation of document acceptable
3. Multimodal Transport Documents are Acceptable
4. Third party shipper is allowed.


Best regards,                          **Offer Accepted:**
Western Wood, LLC                       Beijing New Building Materials Co. Ltd.


X *John Tortorelli*
X_____
John J. Tortorelli
                                       **Name:** _____

                                       **Date:** _____

WW 000231

# WESTERN WOOD, LLC

**26719 State Route 410 E. Buckley, WA  98321 Phone (360)829-1020 Fax (360)829-1165**
**OFFER SHEET     CZY0604**

Offer Issue Date:        June 13, 2014
Offer Expiration Date:   June 20, 2014

OFFERED TO:  Beijing New Building Materials Co. Ltd.

We, WesternWood, LLC, offer Fresh Cut American Softwood Round Logs as follows:
Commodity:        American Softwood Round Logs  – Douglas Fir 600MBF at $980/MBF

| | |
|---|---|
| Total Amount: | USD  588,000 CNF Shanghai, China |
| Discharge Port: | Shanghai Port, China |
| Last Shipping Date: | July 31, 2014 |
| LC Expiry Date: | August 15, 2014 |
| Partial Shipment: | Allowed |
| Trans Shipment: | Allowed |
| Payment Terms: | By irrevocable 100% Letter of Credit in favor of |
| | Western Wood, LLC |
| | 26719 State Route 410 East Buckley, WA  98321 USA |
| Advised Through: | Swift Address USBKUS44SEA |
| | US Bank |
| | (Seattle International Department – Formerly US Bank Seattle, WA USA) |
| | 1420 - Fifth Avenue – 9th Floor |
| | Seattle, Washington 98101 USA |
| | Tel: (206) 344-3711   Fax: (206) 344-5374 |
| Reimbursement Bank: | In USA any Head Office or Branch Office |

Special Conditions:
1. Plus and/or minus 10% quantity or amount shipment acceptable
2. Late presentation of document acceptable
3. Multimodal Transport Documents are Acceptable
4. Third party shipper is allowed.

Best regards,                                    **Offer Accepted:**
Western Wood, LLC                                 Beijing New Building Materials Co. Ltd.

X *John Tortorelli*
**X**_____
John J. Tortorelli

                                                 **Name:** _____

                                                 **Date:** _____

WW 000232