UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>**THIS DOCUMENT RELATES TO:**<br>*All Cases* | MDL No. 2:09-md-2047<br><br>SECTION L<br><br>JUDGE ELDON E. FALLON<br><br>MAGISTRATE JUDGE<br>JOSEPH C. WILKINSON, JR. |

**RESPONSE OF THE CNBM ENTITIES[1] TO THE PLAINTIFFS' STEERING COMMITTEE'S MOTION TO REMOVE CONFIDENTIALITY DESIGNATIONS**

China National Building Materials Co., Ltd., China National Building Materials & Equipment Import & Export Corp., CNBM Forest Products (Canada), CNBM (USA) Corp., and United Suntech Craft, Inc. (the "CNBM Entities") respond to the Plaintiffs' Steering Committee's December 21, 2016 motion to remove confidentiality designations (Rec. Doc. 20598, hereinafter the "Motion").[2]

**I.      INTRODUCTION**

The PSC asks for too much, while proving too little. Having abandoned midstream the meet and confer process required by PTO 16, the PSC prematurely asks the Court to remove **all** confidentiality designations on every document designated here as confidential: hundreds of

---

[1] China National Building Materials Co. Ltd., China National Building Materials & Equipment Import & Export Corp., CNBM Forest Products (Canada), CNBM (USA) Corp., and United Suntech Craft, Inc.

[2] The CNBM entities continue to, and hereby do, preserve all defenses, including lack of jurisdiction, both subject matter and personal, and in no way intend to or do waive or otherwise limit their ability to raise those defenses, whether by filing this opposition or any other act, filing appearance, or contention, either before or after this opposition, in this or any other litigation. *See, e.g.*, Rec. Doc. 18453, 18655.

- 1 -

documents and deposition transcripts. The PSC makes vague references to the public interest and rights of access to litigation, while repeatedly and baselessly asserting "there is **nothing** in these documents or transcripts" that is confidential and "simply **no** material" in them that justifies their continued protection. Motion at 4 (emphasis supplied). Doubling down on its exaggerations, the PSC incorrectly complains that it is unable to share these documents with their clients or other claimants' counsel so long as they are subject to the Court's general protection. But nowhere does the PSC offer a valid reason why this Court should now, more than a year after the documents were produced and depositions taken, and many months after the PSC abandoned its prior challenge to the designations, immediately remove **all** confidentiality protections. Indeed, the PSC does not even attempt to address the documents individually, preferring a blunderbuss approach as opposed to demonstrating why any particular document does not deserve protection as confidential. But the CNBM Entities have produced hundreds of thousands of pages of documents in response to the PSC's voluminous discovery demands, and have gone to great lengths to apply, on a document-by-document basis, proper confidentiality designations within those productions.

Nor does the PSC mention that when the PSC initially challenged the designations applied to the exhibits in the PSC's briefing, the CNBM Entities engaged in further good faith efforts to re-review the documents. From that process, the CNBM Entities removed designations from approximately 30 documents, while confirming the propriety of confidential designations on the remaining documents. The CNBM Entities explained that these documents contain sensitive information such as bank account numbers, non-public research and development reports, and the detailed non-public financial information of publicly- and privately-held companies, the disclosure of which would put these entities at a competitive disadvantage.

Yet, despite receiving the CNBM Entities' detailed explanations for the designations in early March 2016, the PSC made no response whatsoever for the next nine months -- until it filed the Motion just days before Christmas. The PSC's blanket demand that all documents be de-designated, while paying lip service to the "public interest" in unspecified confidential information, might lead one to question what purpose that motion has beyond litigation tactics. The Court should see the Motion for what it is, and sidestep this manufactured and unnecessary discovery "dispute." It should deny the Motion unless and until the PSC fulfills the requirements of PTO 16 in good faith. If the Court elects to review the merits of the PSC's Motion now, the initial justifications that the CNBM Entities already provided serve as ample reason to deny it. Rather than risk a claim of waiver, the CNBM Entities herein provide additional specific elaboration of their confidentiality designations.

**II.     DISCUSSION**

    **A.     The Motion Is Untimely And Premature.**

The PSC has long had the documents and deposition transcripts to which it now raises confidentiality objections. The documents were produced to the PSC in 2015, and the transcripts are from depositions that took place during that same year. The PSC used these materials as exhibits in its briefing responding to the CNBM Entities' motions to dismiss for lack of jurisdiction, the Foreign Sovereign Immunities Act, and to vacate the contempt order. These are all critical points: this is not a situation where the PSC does not have the documents, nor is it one where it has been unable to use them. It has them, and it has used them – in depositions, in motion practice, and in court proceedings. Yet the PSC did not object to confidentiality designations at the time they were asserted, instead waiting until February 2016, when it first questioned the confidentiality designation on hundreds of documents and deposition transcript excerpts.

Upon receiving these challenges, the CNBM Entities (and the now-dismissed CNBM Group) went to considerable effort to review each challenge. For some documents, the CNBM Entities agreed to remove confidential designations. For others, the CNBM Entities provided a detailed written explanation, on a document-by-document basis, informing the PSC of the grounds on which the materials were confidential and protected from public disclosure under PTO 16.[3] Despite receiving this information in early March 2016, the PSC did not discuss or even mention the documents further with the CNBM Entities until it filed this Motion after nine months of silence.

The untimeliness of the Motion notwithstanding, the PSC failed to adhere to the Court's instructions in PTO 16. As explained in paragraph 28, any party that objects to a confidential designation must first serve a written objection to the designation. The producing party is then obligated to respond, either agreeing to remove the designation, or providing the reasons that the documents should remain confidential. Where, as here, the objecting party does not agree with any remaining confidentiality designations, they must meet and confer. The objecting party must then provide written notice that the meet and confer efforts have ended. Only then can the objecting party move the Court for an order striking the designation.

Despite this clear instruction, the PSC has made no efforts to meet and confer with the CNBM Entities following receipt of the March 2016 designation explanations. By the clear wording of PTO 16, the PSC cannot seek judicial intervention until it has engaged in meaningful meet and confer efforts.

**B.    PTO 16 Does Not Prevent Plaintiffs And Their Counsel From Accessing The Documents.**

The PSC complains, for the first time, that the confidentiality designations prevent

---

[3] This correspondence is attached as Exhibit A.

- 4 -

sharing the documents with their clients and with counsel for other claimants. However, PTO 16 makes clear that a receiving party (which logically includes Plaintiffs and their counsel), may also disclose confidential information to counsel for claimants in other pending litigation alleging Chinese drywall-related injuries, so long as counsel agrees to be bound by the terms and conditions of PTO 16. Any confusion over such use of the documents would have been quickly removed had the PSC completed the meet and confer process. To the extent any confusion remains, the CNBM Entities do not object to the PSC sharing the documents with their clients, or with other claimants' counsel who agree to abide by the terms in PTO 16.

      **C.    The PSC Does Not Explain How The Documents Will Benefit The Public, Nor Does The PSC's Authority Support Public Disclosure.**

The only remaining ground for disclosure is the PSC's vague allegation that the public has a need to access hundreds of attachments. But the PSC merely pays lip service to the public interest, without explaining why these documents, the majority of which are unrelated to drywall litigation, are of such significance that they should be shared with anyone and everyone. And while the PSC lifts many a phrase from a medley of authorities, none of the PSC's cases speaks to the need to publicly disclose the documents at issue here. Finally, the PSC fails to explain why the public interest justifies disclosing documents that were properly designated as confidential under a valid protective order, where the Court has already determined good cause exists to protect the information from public disclosure.

Indeed, the PSC's very first authority, *Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981), is clear on its face that it doesn't support the PSC's arguments. As the case name suggests, *Doe* involves a motion for a protective order to shield the identity of plaintiffs in contentious litigation involving religion in public school. *Doe*, 653 F.2d at 182. Nowhere does *Doe* touch upon the propriety of confidentiality designations on documents attached to motions filed under

seal.  The PSC's remaining authority is similarly distinguishable.  *See In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001) (class members should have been entitled to access sealed bid auction employed to select lead counsel because "class members are not in a position to monitor the faithfulness of their self-appointed champion"); *Littlejohn v. Bic Corp.*, 851 F.2d 673, 682 (3d Cir. 1998) (newspaper obtained documents admitted into evidence at trial and released in open court without the defendant moving to seal the record); *Fed. Trade Comm'n v. Penn State Hershey Med. Ctr.*, 2016 WL 1242272 (M.D. Pa. Mar. 30, 2016) (court unsealed allegations in complaint brought by FTC and state AG to block merger of regional health care providers, finding that the allegations were limited to "the straightforward application of basic tenets of capitalism."); *Baxter Int'l, Inc. v. Abbot Labs.*, 297 F.3d 544, 545 (7th Cir. 2002) (rejecting stipulation to treat all documents as confidential without effort to separate genuinely secret documents from others in the same box or folder).

      The PSC gets closer to the present dispute in *Cruz v. City of Hammond*, 2015 WL 1525758 (E.D. La. April 2, 2015), but that case involves litigation against a public agency.  As the court noted, "the public's common law right of access to this court's records has particular application to this lawsuit involving a public entity that collects and spends tax dollars and to individuals who either presently or formerly occupied public offices."  *Id.* at *2.  This reasoning has no application against publicly- and privately-held foreign corporations.  And while the PSC's reliance on *Freeport McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Resource, Inc.*, 2004 WL 595236 (E.D. La. Mar. 22, 2004) is initially promising, it too falls short.  There, the Court reviewed a motion to quash a subpoena, and denied the motion on the grounds that the producing party had not adequately shown that the type of information sought by the subpoena was a trade secret or confidential research, development, or commercial information.  This

analysis does not apply where, as here, the producing party provides document-by-document level explanations supporting confidential treatment.

Finally, there is no public right of access to documents that are filed under seal pursuant to a valid protective order. The Court, via PTO 16, has already determined that good cause exists to protect from public disclosure information that would place the producing party at a competitive disadvantage. The burden then shifts back to the party seeking access, which must present "sufficiently compelling reasons why the sealed discovery information should be released." *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002); *United States v. Corbitt*, 879 F.2d 224, 228 (7th Cir. 1989). The PSC's vague assertions fall far short of meeting this standard.

### D. The Challenged Documents Are Properly Designated Confidential.

Even a cursory review shows that these documents are properly designated confidential pursuant to PTO 16 and Federal Rule of Civil Procedure 26.[4] For example, the majority of the documents contain bank account and wiring numbers, which the PSC cannot reasonably argue should be made public. Other documents contain non-public research and development plans, scientific developments, customer and supplier lists, and financial data including revenue information, all of which may be protected under Rule 26. *See* Fed. R. Civ. P. 26(c)(1); *Nutratech, Inc. v. Syntech (SPPF) Int'l, Inc.*, 242 F.R.D. 552, 555 n.4 (C.D. Cal. 2007). This information, if disclosed, has the distinct possibility of causing substantial economic harm. The PSC counters that a litigant cannot keep confidential "the salary they make . . . or the price they agreed to pay under a contract," arguing that business interests are not enough to maintain

---

[4] The CNBM Entities agree to waive confidentiality designations on the following documents: CNBMCO00143339-143423, CBNMCO00215626, CNBMCO00280477-79, PSC MTD Ex. 199 (2010 Joint Defense Agreement), and SUNTECH00000033-36.

confidentiality. Motion at 7. But as the PSC's authority points out, this information must only be revealed when it is "vital to claims made in litigation[.]" *Baxter*, 297 F.3d at 547. Nowhere does the PSC describe how any of the challenged materials, many of them mere invoices to or from companies with no involvement in the drywall business, are central to this litigation.

In short, the confidentiality designations, on their face, are proper, while the PSC has not done anything that would invoke an obligation by the CNBM Entities to show more pursuant to PTO 16. Even so, the CNBM Entities provide the following explanation of confidentiality on a document-by-document basis. For all the reasons described above, the Court need not get to this point to deny the Motion; indeed, at most, if the PSC was dissatisfied some twelve months ago, it should have sought to resolve its concerns in the way the Court directed, and these defendants would have continued their good faith discussions, and considered further waivers or redactions. While the CNBM Entities provide the information below out of respect for this Court and its processes, there should be no mistake: the PSC waited too long, ignored the Court's directives in bringing this motion, and seeks relief that is neither necessary nor justified.

### 1. Bank Accounts And Wiring Instructions

The overwhelming majority of challenged documents (230 out of 265 documents produced by the CNBM Entities)[5] contain bank account numbers, wiring instructions, and other financial account information that should not be released to the public. These documents are "highly confidential material that deserves secrecy to prevent any possible abuse of financial privacy." *Hausfeld v. Cohen Milstein Sellers & Toll, PLLC*, 2009 WL 3335930, at *3 (E.D. Pa. Oct. 14, 2009); *see also* Fed. R. Civ. P. 5.2(a)(4) (filings containing financial account numbers may include only the last four digits of the financial account number).

---

[5] The Bates Numbers for these documents are listed in Appendix B.

## 2. Confidential, Non-Public Corporate Information

Of the remaining documents, 30 contain confidential, non-public commercial information, the disclosure of which would place the CNBM Entities at a competitive disadvantage. This information, which includes trade secrets, non-public financial data, confidential research and development, customer and supplier lists, and sales and revenue information, is properly protected from public disclosure. Fed. R. Civ. P. 26(c)(1)(G); *see also Nutratech*, 242 F.R.D. at 555 n.4. Further, publication of confidential financial information could result in competitive harm, and protection is proper where the public has minimal interest in this information. *Apple Inc. v. Samsung Elec. Co., Ltd.*, 727 F.3d 1214, 1225 (Fed. Cir. 2013).

- CNBMCO00046759-46815: This document, titled "Research and Development Application Form, Project Name: PV Materials R&D Project," contains a lengthy and highly technical discussion of photovoltaic research and development, including specific R&D projects, performance comparisons, production method improvement efforts, raw materials sourcing issues, and a work plan. Disclosure of this sensitive material would reveal a considerable amount of non-public information to solar energy competitors.

- CNBMCO00076251-76290: This document, which the PSC's translation states is titled "CNBM Investment Company Limited, Notes of 2010 Annual Financial Statements" contains a significant amount of additional material from CNBM Investment Co., Ltd.'s 2010 Annual Financial Statement. CNBM Investment Co., Ltd., is a private company. The document contains non-public asset information including current investments, holdings, rate of return, and cash flow, as well as other data pertaining to the financial well-being of the company.

- CNBMCO00102014-102025: This document, which the PSC's translation states is titled "CNBM Co., Ltd.'s Tenth President's Office Meeting," consists of notes from an internal CNBM Company meeting. These notes describe, among other things, strategic business initiatives and goals relating to investment management, business operations, research and development (including manufacturing processes), and other matters relating to companies in which CNBM Company is invested.

- CNBMCO00216986-246994: This document, which the PSC's translation states is titled "Report on Submitting the Implementation Plan on the Three-year Objective of Legal Work of China National Building Material Company Limited and Its Subordinate Enterprises" contains a discussion of a Three Year Objective of Legal Work for CNBM Company and its subsidiary companies. This plan includes discussion of risk management practices.

- CNBMCO0324565:  This document, which the PSC's translation states is titled "Comprehensive Team of CNBM Listing Office" discusses non-public information on subsidiary real property holdings and status of property issues, including lease agreements as rents, financial transactions, and ongoing legal disputes.

- CNBMCO00327370: This document, which the PSC's translation states is titled "CNBM Co., Ltd. 6th Working Meeting" contains notes from an internal CNBM Company meeting describing strategic business initiatives and goals relating to investment management, business operation status, research and development, and other corporate matters.

- CNBMCO00339345: This document, which the PSC's translation states is titled "Comprehensive Team of CNBM Listing Office" contains strategic business plans to increase profitability, reduce production costs, and leverage brand popularity and market penetration for publicly- and privately-held subsidiary companies.

- CNBMCO00366842: This document, which the PSC's translation states is titled "CNBM Co. Ltd. Second Office Meeting" contains notes from an internal CNBM Company meeting describing subsidiary companies' production and operations, investment management, and project construction, including non-public research and strategic development decisions, and projected revenues and return on investments.

- CNBMFP00000046: This document, titled "Southern Yellow Pine Project" discusses operational and financial details of a lumber export project, including daily loading capacity, shipping capacity, transport time, terminal storage capacity, the costs associated with each, and several options for a business proposal.

- CNBMFP00000152: This document, titled "Meeting on Discussion of Southern Yellow Pine Project," contains meeting notes from a private company's non-public research regarding costs of shipment and operations, strategic business partnership options, risk assessment, and negotiation plans.

- CNBMFP00001663: This document, titled "2014 CNBM Forest Products, Ltd. Contracts Status Check Spreadsheet," contains a private company's non-public contract status information, including product and supplier costs, trade volumes, and projections.

- CNBMFP00001753: This document, which the PSC's translation states is titled "CNBM Forest Products Ltd." contains business strategy for a non-public company, including product analysis, review of potential and actual suppliers, business objectives, and trade volumes.  This document also contains a summary of ongoing worldwide business, including commodity type, sales volume, purchase price, marketing expenses, and profit analysis.

- CNBMFP00007680: This document, titled "SYP Cooperation Program" contains a non-public company's strategic business model, supplier list and information,

including pricing, payment, and shipping information.

- CNBMFP00045798-45839: This document, which the PSC's translation states is titled "CNBM Forest Products, Ltd. Auditor's Report" contains an audit of a non-public company's financial details, including assets and profits.

- CBMIE00025787: This document, which the PSC's translation states is titled "China National Building Materials & Equipment Import & Export Corporation – Table of US-related Business in 2014" contains a list of products, trade volume, pricing, payment method, customers, and suppliers.

- CBMIE00028128-282246: This document, which the PSC's translation states is titled "CNBM Import and Export Company CNBM International Corporation 2014 Annual Work Report" contains profit and loss statements for a non-public company, including assets, liabilities, labor costs, technical expenditures, and employee information.

- CBMIE00029535-29554: This document, which the PSC's translation states is titled "2014 Investigation Report on CNBM International" is a report containing financial data such as revenue, profits, assets, and liabilities for non-public company CNBM International.

- CBMIE00032577-32578:  This document, which the PSC's translation states is titled "CNBM Import and Export Company Sorting of American Business" contains a list of suppliers, products, inventory, and pricing.

- CBMIE00036914: This email contains internal discussion of litigation strategy and evaluation of possible settlement options.  It also includes frank assessment of potential business partners for developing new supply chains.

- CBMIE00039570: This email contains internal discussion of business ventures, including commodity type, price, shipping costs, and payment details.

- CBMIE00065970: This document is a confidential mediation submission prepared by counsel for China National Building Materials & Equipment Import & Export relating to lumber litigation in the state of Oregon.

- CNBMUSA00001509: This document, which the PSC's translation states is titled "2014 Summary Work Report of Sales Manager" contains non-public financial data including sales, revenues, and strategic market analysis.  The document discusses a customer's needs, and analyzes the advantages offered by competitors.

- CNBMUSA00009676-9706: This document, which the PSC's translation states is titled "Three Year Rolling Development Planning of CNBM International Corporation in 2015-2017" contains strategic business information including confidential accounting and financial information, asset values, revenue, and profit for a non-public company.

- CNBMUSA00009971-9990: This document, which the PSC's translation states is titled "CNBM International Metal Engineering Department Work Summary" is a non-public report containing analysis of business partners, market opportunities, product line finances, and marketing strategy.  The document contains sales and

  profit analysis for individual customers.

- CNBMUSA00024864-24888: This document, which the PSC's translation states is titled "Photovoltaic Department 1 Business Analysis Report" contains customer inquiries, product line and international market analysis for a non-public company.

- CNBMUSA00024907-24936: This document, which the PSC's translation states is titled "CNBM International Breeder Material Dept. Jan. to Sept. Business Analysis Report" contains customer information, product line, profit margin information, and international market analysis.

- CNBMUSA00024950-24961: This document, which the PSC's translation states is titled "CNBM International Adhesive Tape Dept. October Business Analysis Report" contains customer information, product line, profit margin information, and international market analysis.

- CNBMUSA00024964-24977: This document, which the PSC's translation states is titled "CNBM International Metal Engineering Department Business Analysis Report" contains customer information, product line, profit margin information, and international market analysis.

- SUNTECH00000042: This document sets forth meeting minutes for a non-public company, detailing a corporate restructuring. It includes analysis of loans, ownership structure, profit allocation, and company valuation.

- SUNTECH00000212-213: This email contains information regarding a non-public companies business endeavors, including employee compensation, market analysis, efforts to enter into a commercial relationship with a Canadian graphene company, and market risk analysis.

### E.    **CNBM Group Is Not Properly Subject To Discovery Motions.**

As part of its Motion, the PSC includes 13 documents produced by CNBM Group and deposition testimony from CNBM Group witnesses in its list of objections. As the Court recognized in its March 10, 2016 order (Rec. Doc. 20150), CNBM Group has sovereign immunity, and was properly dismissed from this litigation. As a sovereign, CNBM Group is immune not just from liability, but also from the costs, in time and expense, and other disruptions attendant to litigation. *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 849 (5th Cir. 2000). Setting aside whether CNBM Group should have been forced to endure discovery at all, having been dismissed, CNBM Group cannot now be required to return to

litigation to contest the PSC's untimely confidentiality objections, much less have its confidential documents made public in its absence.

## III.   CONCLUSION

The PSC has filed a blanket request that the Court strike confidentiality designations on hundreds of documents.  The PSC brought this request without completing the meet and confer process set forth by PTO 16, a troubling sign of the PSC's lack of good faith.  The PSC has similarly failed to explain why confidentiality should be removed now, more than a year after it received the documents.  The PSC presents broadly worded, superficial arguments that disclosure is in the public interest, but fails to provide any authority applicable to the present dispute.  And it seeks relief that is at least partly unnecessary, given the Court's pretrial order permitting more than adequate disclosure and use of materials produced in this matter.  While the Court might consider requiring the PSC to complete the meet and confer process it aborted a year ago, the PSC has forfeited those rights by its delay and misconduct.

For all these reasons, the Court should deny the PSC's thinly-veiled effort to further burden the CNBM Entities (and the now-dismissed CNBM Group) with the exercise of further contesting confidentiality.

Respectfully submitted,

/s/ L. Christopher Vejnoska

| | |
|---|---|
| L. Christopher Vejnoska (CA Bar No. 96082) | Ewell E. Eagan, Jr. (LA Bar No. 5239) |
| Ian Johnson (CA Bar No. 208713) | Donna Phillips Currault (LA Bar No. 19533) |
| Andrew Davidson (CA Bar No. 266506) | Alex B. Rothenberg (LA Bar No. 34740) |
| Jason Wu (CA Bar No. 279118) | GORDON, ARATA, MCCOLLAM, |
| Jason Cabot (CA Bar No. 288877) | DUPLANTIS & EAGAN, LLC |
| ORRICK, HERRINGTON & SUTCLIFFE LLP | 201 St. Charles Avenue, 40th Floor |
| The Orrick Building | New Orleans, LA 70170-4000 |
| San Francisco, CA  94105 | Tel: (504) 582-1111 |
| Tel.:  415-773-5700 | E-mail: eeagan@gordonarata.com |
| E-mail:  cvejnoska@orrick.com |             dcurrault@gordonarata.com |
|             ijohnson@orrick.com |             arothenberg@gordonarata.com |
|             adavidson@orrick.com | |
|             jmwu@orrick.com | |
|             jcabot@orrick.com | |
| | |
| James L. Stengel (NY Bar No. 1800556) | Eric A. Shumsky (D.C. Bar No. 477926) |
| Xiang Wang (NY Bar No. 4311114) | ORRICK, HERRINGTON & SUTCLIFFE LLP |
| Kelly Daley (NY Bar No. 4970117) | Columbia Center |
| ORRICK, HERRINGTON & SUTCLIFFE LLP | 1152 15th Street NW |
| 51 West 52nd Street | Washington, D.C. 20005 |
| New York, NY, 10019 | Tel: 202-339-8400 |
| Tel:  212-506-5000 | Email: eshumsky@orrick.com |
| Email:  jstengel@orrick.com | |
|              xiangwang@orrick.com | |
|              kdaley@orrick.com | |

Dated:  February 13, 2017

*Counsel for the CNBM Entities*

- 15 -

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **CNBM ENTITIES' RESPONSE TO THE PSC'S MOTION TO REMOVE CONFIDENTIALITY DESIGNATIONS** has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail and upon all parties by electronically uploading the same to File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on this 13th day of February, 2017.

/s/ L. Christopher Vejnoska

L. Christopher Vejnoska (CA Bar No. 96082)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105
Tel.:  415-773-5700
Fax.: 415-773-5759
E-mail:cvejnoska@orrick.com

*Counsel for the CNBM Entities*