# Exhibit B

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
| *Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al.*, Case No. 09-6687 (E.D.La.); | |
| *Gross, et al. v. Knauf Gips, KG, et al.*, Case No. 09-6690 (E.D.La.); | |
| *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*, Case No 10-361 (E.D.La.); | |
| *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1672 (E.D.La.); | |
| *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1395 (E.D.La.); | |
| *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11-1673 (E.D.La.) | |

## PLAINTIFFS' OPPOSITION TO TAISHAN DEFENDANTS' MOTION TO DECERTIFY THE CLASS PURSUANT TO RULE 23(c)(1)(C)

# TABLE OF CONTENTS

I.     **INTRODUCTION** ............................................................................................ 1

II.    **FACTUAL AND PROCEDURAL HISTORY** .............................................. 3

III.   **LEGAL STANDARDS** .................................................................................. 8

IV.   **LEGAL ARGUMENT** ................................................................................... 9

   **A.**   **This Court's Rule 23(a) Findings Made in 2014 Remain Well-Supported Today, Based on the Entire Record.** ......................................................................... 9

       **1.**   **Rule 23(a)(1) Numerosity.** ................................................................... 9

       **2.**   **Rule 23(a)(2) Commonality.** ............................................................... 9

       **3.**   **Rule 23(a)(3) Typicality.** .................................................................. 11

       **4.**   **Rule 23(a)(4) Adequacy.** .................................................................. 12

   **B.**   **The Court's 2014 Findings Regarding Rule 23(b) Remain Well Supported by the Record Today.** ...................................................................................................... 13

       **1.**   **Entitlement to Property Damages Satisfies the Rule 23(b)(3) Predominance Requirement.** .............................................................................................

       **2.**   **Plaintiffs Have Shown, and the Court Has Accepted, a Formulaic Methodology for Remediation Damages, and Other Individualized Damages Claims Do Not Disturb the Suitability of the Case For Class Certification.** ............................................. 14

          **a.**   **Plaintiffs' Remediation Damages Method is Formulaic and Reliable as this Court has Repeatedly Found.** ....................................................... 15

          **b.**   **Defendants Mischaracterize the Court's Use of the Germano and Hernandez Cases.** ...................................................................................... 18

          **c.**   **Property Damages are Recoverable under Each State's Law for Toxic Contamination of the Home.** ............................................................ 21

       **3.**   **Rule 23(b)(3) Superiority.** ................................................................ 25

V.    **CONCLUSION** ............................................................................................ 26

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AE Mktg. L.L.C. v. Jenkins-Baldwin Corp., Meralex, L.P.*,
  No. 3:07-CV-0321-F, 2012 WL 12871604 (N.D. Tex. Aug. 24, 2012) ................................11

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  133 S.Ct. 1184 (2013) ................................................................................................14

*Bell Atl. Corp. v. AT&T Corp.*,
  339 F.3d 294 (5th Cir. 2003) .....................................................................................24

*Bertulli v. Ass'n of Cont'l Pilots*,
  242 F.3d 290 (5th Cir. 2001) ..............................................................................12, 24

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ...................................................................................23

*Carlandia Corp. v. Rogers & Ford Constr. Corp.*,
  605 So. 2d 1014 (Dist. Ct. App. Fla. 1992) ...............................................................12

*Cason-Merenda v. VHS of Mich., Inc.*,
  296 F.R.D. 528 (E.D. Mich. 2013) .............................................................................16

*In re CertainTeed Fiber Cement Siding Litig.*,
  303 F.R.D. 199 (E.D. Pa. 2014) .................................................................................17

*In re Chinese Drywall Litig.*,
  No. 09-200,000 CA 42, 2009 WL 6408999 (Fla Cir. Ct. Dec. 18, 2009) .................22

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
  680 F. Supp. 2d 780 (E.D. La. 2010) .........................................................................22

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
  706 F. Supp. 2d 655 (E.D. La. 2010) ............................................................. *passim*

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
  MDL No. 2047, 2010 WL 1710434 (E.D. La. Apr. 27, 2010) ...................... *passim*

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
  MDL No. 2047, 2010 WL 8368083 (E.D. La. Feb. 17, 2010) ...................4, 7, 15, 16

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
  MDL No. 2047, 2014 WL 4809520 (E.D. La. Sept. 26, 2014) ...................... *passim*

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
  MDL No. 2047, 2015 WL 3603624 (E.D. La. June 5, 2015) ...........................................7, 15

*Corley v. Orangefield Indep. Sch. Dist.*,
  152 F. App'x 350 (5th Cir. 2005) .......................................................................................21

*Crutchfield v. Sewerage & Water Bd. of New Orleans*,
  829 F.3d 370 (5th Cir. 2016) .............................................................................................13

*In re Deepwater Horizon*,
  739 F.3d 790 (5th Cir. 2014) .......................................................................................12, 24

*In re Domestic Air Transp. Antitrust Litig.*,
  137 F.R.D. 677 (N.D. Ga. 1991) ........................................................................................17

*Exxon Shipping Co. v. Baker*,
  554 U.S. 471 (2008) ..............................................................................................................7

*Frow v. De La Vega*,
  82 U.S. 552 (1872) ........................................................................................................10, 11

*Greenhaw v. Lubbock Cty. Beverage Ass'n*,
  721 F.2d 1019 (5th Cir. 1983) ...........................................................................................24

*Gulbankian v. MW Mfrs., Inc.*,
  No. 10-10392-RWZ, 2014 WL 7384075 (D. Mass. Dec. 29, 2014) ...................................17

*Keating v. Compro Tax, Inc.*,
  No. 2:09 CV836, 2011 WL 3847182 (W.D. La. Aug. 30, 2011) ...........................................2

*Leon v. Diversified Concrete, LLC*,
  No. CV 15-6301, 2016 WL 6247674 (E.D. La. Oct. 26, 2016).............................................24

*Ludlow v. BP, P.L.C.*,
  800 F.3d 674 (5th Cir. 2015), *cert. denied,* 136 S.Ct. 1824 (2016)....................................8, 9

*In re Monumental Life Ins.Co.*,
  365 F.3d 408 (5th Cir. 2004) .............................................................................................19

*Mullins v. Direct Dig.*,
  795 F.3d 654 (7th Cir. 2015) .............................................................................................23

*Myers v. Powell*,
  No 12-2181, 2013 WL 3832414 (E.D. La. July 23, 2013) .............................................10, 21

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex., on Apr. 20, 2010*,
  910 F. Supp. 2d 891 (E.D. La. 2012)....................................................................................21

*Overseas Motors, Inc. v. Imp. Motors Ltd.*,
   375 F. Supp. 499 (E.D. Mich. 1974), *aff'd* 519 F.2d 119 (6th Cir. 1975) .............................10

*In re Park Cent. Glob. Litig.*,
   No. 09-cv-765, 2014 WL 4261950 (N.D. Tex. Aug. 25, 2014) .............................................21

*Rai v. Santa Clara Valley Transp. Auth.*,
   No. 5:12-CV-0043344-PSG, 2015 WL 860761 (N.D. Cal. Feb. 24, 2015) .........................16

*Reyes v. Julia Place Condo. Homeowners Ass'n*,
   No. 12-cv-2043, 2017 WL 430056 (E.D. La. Jan. 31, 2017) ...................................................9

*S. States Coop., Inc. v. Melick Aquafeeds, Inc.*,
   701 F. Supp. 2d 1348 (M.D. Ga. 2010) ................................................................................17

*Turner v. Murphy Oil USA, Inc.*,
   234 F.R.D. 597 (E.D. La. 2006) .....................................................................................10, 23

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S.Ct. 1036 (2016) ...........................................................................................8, 13, 14

*U.S. of Am. for Use of M-CO Constr., Inc. v. Shipco Gen., Inc.*,
   814 F.2d 1011 (5th Cir. 1987) ..............................................................................................14

*In re U.S. Foodservice Inc. Pricing Litig.*,
   No. 3:07-md-1894, 2011 WL 6013551 (D. Conn. Nov. 29, 2011) ......................................16

*In re Visa Check/MasterMoney Antitrust Litig.*,
   80 F.3d 124 (2d Cir. 2001) ...................................................................................................23

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ....................................................................................................9, 15

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
   45 F. Supp. 3d 724, 735-36 (N.D. Ohio 2014) ....................................................................16

*Williams v. Mohawk Indus., Inc.*,
   568 F.3d 1350 (11th Cir. 2009) ...........................................................................................23

**Rules & Statutes**

Advisory Committee's 2003 Note on subd. (c)(1) of Fed. Rule Civ. Proc. 23 .............................15

## I.      INTRODUCTION

The most salient feature of the Taishan defendants'[1] most recent motion to decertify the class (Rec. Doc. Nos. 20624, 20631, and 20632) is that it attempts to re-litigate issues decided preclusively long ago. Class certification turns on whether there are predominant issues that are amenable to class-wide evidence. This Court found in 2014, after presiding over the Chinese Drywall MDL for five years and two trials, that based on its experience with the facts and law governing the case, entitlement to property damages for homeowners who had defective Taishan Chinese Drywall in their homes was a predominant issue that could be resolved on a class-wide basis. Thus, in a lengthy and well-reasoned opinion, the Court found that this predominant issue and the surrounding facts and law of the case met the standards for Rule 23 certification. The Court further found in 2014 that such damage was amenable to formulaic proof – specifically, a formula to calculate class-wide remediation damages.

As to these central findings of the Court's 2014 class certification order, nothing has changed from 2014 until today. There have been no intervening changes in the fundamental facts of this case or the relevant law on class certification that would justify the defendants' request. Hence, while the Taishan defendants in default under Rule 55(b)(2)(B) have decided to defend themselves as to the quantum of damages they must pay, their litigation strategy is increasingly clear: By re-litigating factual and legal issues, they seek to indefinitely delay recovery for the victims of their wrongdoing, adding further to a story of "justice delayed" that already encompasses an additional three years since the Court's 2014 class certification ruling, as well as

---

[1] The "Taishan defendants" are comprised of the following entities: Taishan Gypsum Co., Ltd. (hereafter "Taishan"), Beijing New Building Materials Limited Co. (hereafter "BNBM"); Beijing New Building Materials Group Co., Ltd. (hereafter "BNBM Group"); China National Building Materials Co., Ltd. (hereafter "CNBM"); and Tai'an Taishan Plasterboard Co., Ltd. (hereafter "TPP"). *See* Rec. Doc. 18028 at ¶3. On March 10, 2016, the Court dismissed CNBM Group for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act (Rec. Doc. 20150).

the five years (2009-2014) during which the Taishan defendants purposely ignored these proceedings. The most recent version of such tactics resorts to the question of class certification, but ignores the fact that full-fledged litigation of all common issues is not, and cannot be, an objective in a Rule 55(b)(2) default proceeding. This provision of the federal rule affords a district court broad discretion to exercise its authority to accomplish the collection of the debt owed by the default judgment defendants. *Keating v. Compro Tax, Inc.*, No. 2:09 CV836, 2011 WL 3847182, at *2 (W.D. La. Aug. 30, 2011) ("Pursuant to Rule 55(b)(2), this Court has significant discretion over the determination of damages."). Here, that indebtedness already extends to each and every class member, and the superiority of execution of the indebtedness on a class-wide basis over any case-by-case approach is self-evident, in order to achieve the purpose of Rule 55. Moreover, this Court has already found that this case meets the Rule 23 class certification criteria, that entitlement to property damages is a common predominant issue, and that there exists a formulaic method to determine remediation damages. The superiority of a class proceeding over individual and redundant trials is clear, therefore, under Rule 23 as well as Rule 55.

This most recent decertification motion raises no issues that this Court has not heard or considered before, and, most importantly, it raises no credible argument to defeat Plaintiffs' entitlement to property damages on a class-wide basis (and the corresponding formula for remediation damages). These are predominant issues meriting certification of this class. The determination of remediation damages for the class is now the central dominant issue of this case under Rule 55, and its resolution will greatly contribute to the advancement and resolution of this long-delayed class proceeding. The defendants' motion should be denied.

2

## II.     FACTUAL AND PROCEDURAL BACKGROUND

The factual history of this case has been comprehensively set forth before by this Court in

its Findings of Fact and Conclusions of Law With Respect to Plaintiffs' Omnibus Motion for

Class Certification Pursuant to Rules 23(a)(1)-(4) and 23(b)(3) (Rec. Doc. No. 18028) (*In re*

*Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047, 2014 WL 4809520 (E.D.

La. Sept. 26, 2014) (hereinafter "Class FOFCOL"), as well as in the FOFCOL in both *Germano*

(Findings of Fact and Conclusions of Law (Rec Doc. No. 2380) (*In re Chinese-Manufactured*

*Drywall Prods. Liab. Litig.*, 706 F. Supp. 2d 655 (E.D. La. 2010)) (hereinafter "*Germano*

FOFCOL"), and *Hernandez* (Findings of Fact and Conclusions of Law (Rec. Doc. No. 2713) (*In*

*re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047, 2010 WL 1710434 (E.D.

La. Apr. 27, 2010)) (hereinafter "*Hernandez* FOFCOL"). This comprehensive history is now

incorporated herein by reference.

The record contains specific factual evidence relevant to this motion relating to the

universal nature of the defect of corrosive Chinese Drywall and the damage it causes to homes,

the universal scope of remediation necessary to repair the homes, and the standardized costs of

repair. Each of the three courts that have presided over Chinese Drywall litigation have found

that the Chinese Drywall at issue is defective. *See Germano* FOFCOL, 706 F. Supp. 2d at 664-

65; *Hernandez* FOFCOL, 2010 WL 1710434 at *4; Rec. Doc. No. 18086-2, Verdict Form,

*Seifert v. Banner Supply Co.* (the jury found Chinese Drywall defective and awarded remediation

damages); *Harrell v. S. Kendall Constr. Corp.*, No. 09-008401 (Fla. Cir. Ct. May 27, 2010)

("*Harrell* Order") (attached hereto as Exhibit A) at p. 11 ("The nature of the defect inheres in the

physical characteristics of the product itself: its potential to emit reduced sulfur gases which can

cause damage to certain metal surfaces and objects within the homes."); Opinion & Order on

Motions *In Limine* and Demurrer to Count V, *In re The Following Pending Chinese Drywall Cases*, CL10-35 (Va., Norfolk Cir. Ct. Dec. 3, 2012) at p. 5 (attached hereto as Exhibit B) citing Decision of the Review Board, *In re Appeal of Kimberly A. and Bryan Wood*, (Before the State Building Code Technical Review Board, April 22, 2011) (attached hereto as Exhibit C) ("The Review Board further finds that the use of imported [ Chinese ] drywall in the construction of the homes, due to the off-gassing of corrosive byproducts, created a permanent corrosive environment in the homes.").

The evidence from the class representatives' homes in this matter demonstrates the typical corrosive and damaging nature of Taishan Chinese Drywall on homes. The record shows that the class representatives' homes have or had corrosive Chinese Drywall in them. (*See* Exhibits D-H (filed under seal), Plaintiff Profile Forms and accompanying documents for class representatives Amorin (Exhibit D), Butzer (Exhibit E), McGinn (Exhibit F), Spencer (Exhibit G), and Everard (Exhibit H); *see also* 5/15/2015 Decl. of George J. Inglis in support of Plaintiffs' Reply Brief in Support of Motion for Assessment of Class Damages Pursuant to Rule 55(b)(2)(B) (under seal) at ¶4; 12/23/2016 Decl. of Ronald E. Wright (Rec. Doc. No. 20613-4) at ¶4 ("2016 Wright Decl."). This evidence also demonstrates the availability of product identification documentation. Furthermore, the PSC has collected similar supplemental product identification evidence for class members over the last 18 months to prepare for claims administration. Rec. Doc. No. 20613-2 at 18-21.

The scope of repair necessary to remediate a Chinese Drywall home to make it safe for habitation has been repeatedly established by this Court based on expert evidence subjected to cross-examination, as well as the evidence of independent third party national builders. Order and Reasons re Daubert (Rec. Doc. No. 1090) (*In re Chinese-Manufactured Drywall Prods.*

*Liab. Litig.*, MDL No. 2047, 2010 WL 8368083, at *4 (E.D. La. Feb. 17, 2010) (hereinafter "2010 Daubert Order")); *Germano* FOFCOL, 706 F. Supp. 2d. at 685-686 ("The scope of work is consistent with Chinese Drywall Remediation [done] by national builders…[Lennar Homes and Beazer Homes]"); *Id.* at 690-91; *Hernandez* FOFCOL, 2010 WL 1710434, at *7, 18. The purpose of the *Germano* trial was to determine the nature and scope of Chinese Drywall remediation for a representative sampling of properties (*Germano* FOFCOL, 706 F. Supp. 2d at 689-90; Class FOFCOL, 2014 WL 4809520, at *16), and the evidence presented for this purpose was based on the work of Ron Wright, P.E.'s firm's (and other experts') extensive investigation of Chinese Drywall-damaged properties, including long-term continuous observations of properties with Chinese Drywall (sampling and testing), scientific investigation of Chinese Drywall and the science of corrosion, practical construction experience (particularly the experience of national builders), and electric and building codes. *Germano* FOFCOL, 706 F. Supp. 2d at 671-87; June 9, 2015 Trial Tr. at 106:8-110:3; *see also Hernandez* FOFCOL, 2010 WL 1710434, at *10-18. The scope of work is the same for each type of home. *Germano* FOFCOL, 706 F. Supp. 2d at 689-90, June 9 Trial Tr. at 112:19- 113:2,; 157:8-18; 157:19-158:5; 159:21-160:1.

All three courts that have presided over Chinese Drywall trials have found that remediation is an appropriate remedy, and that repair of a contaminated house ends the cycle of unsafe housing and economic disruption and hardship for homeowners associated with the Chinese Drywall contamination. *Germano* FOFCOL, 706 F. Supp. at 664-65 690-91 (Virginia residents) ("Under these circumstances, the proper measure of damages is the cost of repair…"); *Hernandez* FOFCOL, 2010 WL 1710434, *7, 18 (Louisiana residents) ("Plaintiffs seek to have their home repaired and restored to a safe place for their family …. No reputable contractor

would accept leaving the risk of leaving copper and silver components in the plaintiff's home."); Rec. Doc. No. 18086-2, *Siefert* Verdict Form (attached hereto as Exhibit I) (Florida resident) (jury awarded the plaintiff Chinese Drywall homeowner remediation damages); Order Denying Defendant Banner Supply Co.'s Motion for Judgment in Accordance with Prior Motion for Directed Verdict, *Seifart v. Knauf*, (Fla. Cir. Ct. July 26, 2010) (attached hereto as Exhibit J) (affirming jury's damages award including remediation damages); Memorandum and Opinion, *In re All Pending Chinese Drywall Cases*, CL09-3105 (Va., Norfolk Cir. Ct. Mar. 29, 2010) (attached hereto as Exhibit K). Over 90% of the class members reside in one of these three states alone.

The remediation damages formula established in *Germano* and employed repeatedly since then in various states and different types of homes by Mr. Wright ultimately boiled down to a formula including terms for remediation base cost per square foot measure, local building factors at the zip code level, and the size of the home to be repaired measured in square feet. This type of damages methodology (square footage unit pricing) is generally accepted in the building trade literature, and utilizes the standardized RS Means building costs factors. *See* Plaintiffs' Trial Exhibit 27 (RS Means Estimating Handbook (3d Ed.) at xx-xxi) (attached hereto as Exhibit L); Defendants' Trial Exhibit 5 (How to Estimate with RS Means Data at 494-495) (attached hereto as Exhibit M); June 9 Trial Tr. at 111:7-24, 114:8-9, 115:5-116:2, 128:7-9, and 182:2-3. *Germano* FOFCOL, 706 F. Supp. 2d at 688 ("RS Means is a publication which compiles data on a national basis for cost to repair and replace building components."). As a standard building costs text describes it, "The [square footage costs estimates] are based on the premise that all building types can be distilled to a cost per SF of gross floor space." Exhibit M, at 494. Mr. Wright employed this basic premise of property damage evaluation in deriving the formula used.

This Court has upheld the scope-of-work expert opinions the formula is based on and the formula itself in the face of Daubert challenges. 2010 Daubert Order at 8-10; *Germano* FOFCOL, 706 F. Supp. at 685-86, 690-91; Order and Reasons re Daubert (Rec. Doc. No. 19092) (*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL No. 2047, 2015 WL 3603624, at *3 (E.D. La. June 5, 2015). The remediation damages formula requires a limited number of standardized inputs. This universal scope of work allowed for the use of standard costs for demolition and replacement drywall in the interior of buildings; it did not concern the exterior. June 9, 2015 Trial Tr. at 161:25-162:9; *see also* 157:8-158:8. The formulaic remediation damages of the homes of current owners is estimated to be over $375 million dollars.[2] Wright Decl. at 4. This Court has characterized the formulaic remediation damages methodology utilized by plaintiffs' experts as "virtually a mechanical task" (here based on square footage, local building factors, product identification, and $/square foot remediation base cost). Class FOFCOL, 2014 WL 4809520 at *15-16 ("Indeed, damages are simply calculated by using a mathematical formula similar to what the Court utilized in *Germano* and *Hernandez* (*i.e.* price per square foot to remediate X number of square feet in class members homes = damages).").

In considering class certification in 2014, this Court considered all of this evidence and expert testimony it had heard on damages in its two prior Chinese Drywall trials and pre-trial Daubert proceedings in *Germano* and *Hernandez*, in order to assess whether some forms of property damages could be determined on a class-wide basis. This Court was and remains extremely well-versed in the details of such damages methodologies and how experts used such

---

[2] In addition to these remediation damages, plaintiffs have provided the Court with their proposed trial plan that includes subsequent phases of damages calculations, some of which may also be tried on a class basis. For example, under Florida law, there are claims for punitive damages that are common to all Florida class members and may be tried as a class. *See, e.g., Exxon Shipping Co. v. Baker*, 554 U.S. 471, 479 (2008) (noting that a "mandatory class of all plaintiffs seeking punitive damages" was certified, resulting in an award of class-wide punitive damages during a Phase III trial).

methodologies. This robust evidentiary record and the Court's vast experience with the issues support the class certification ruling.

As a matter of procedural background, this Court entered default judgments against each of the defendants over the time frame 2011 to 2014. Rec. Doc. No. 20627-1, at 14. This Court granted class certification as to the claims against the Taishan defendants in September of 2014 (Class FOFCOL). The Taishan defendants filed a motion to decertify the class on May 8, 2015 (Rec. Doc. Nos. 18879, 18883, and 18885), and renewed the motion on January 5, 2017 (Rec. Doc. No. 20627). There is no Rule 23(f) interlocutory appeal right of a decision on a motion to decertify. *See Ludlow v. BP, P.L.C.*, 800 F.3d 674, 691 (5th Cir. 2015), *cert. denied,* 136 S.Ct. 1824 (2016).

Plaintiffs have consistently asked the court to exercise its discretion under both Rule 23 and Rule 55(b)(2) to establish the formula to be employed for remediation damages and establish a claims processing system to verify such claims. *See* May 15, 2015 Plaintiffs' Reply Brief in Support of Motion for Assessment of Class Damages Pursuant to Rule 55(b)(2)(B) (under seal) at 69; Rec. Doc. No. 19197, at 65; Rec. Doc. No. 19572-1, Rec. Doc. No. 19490-2, and Rec. Doc. No. 20613-2 at 9-10.

## III.   LEGAL STANDARDS

This Court has already articulated the legal standards for certification. *See* Class FOFCOL, 2014 WL 4809520, at *10-16. In that opinion, the Court noted the necessity of undertaking a "rigorous analysis" at the class certification stage, notwithstanding a default judgment, and proceeded to address each aspect of Rule 23 in accord with the prevailing standards. *Id.* at *10. These standards remain the same, as recent Supreme Court and Fifth Circuit authorities attest. *See e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036 (2016)

8

("*Tyson Foods*"); *Ludlow*, 800 F.3d at 682. Pursuant to Rule 23(c)(1)(C), in the absence of

intervening changes in the fundamental facts of the case or the relevant case law, there is no

basis to alter or amend the class certification ruling. *Reyes v. Julia Place Condo. Homeowners*

*Ass'n*, No. 12-cv-2043, 2017 WL 430056, at *2 (E.D. La. Jan. 31, 2017).

## IV. LEGAL ARGUMENT

### A. This Court's Rule 23(a) Findings Made in 2014 Remain Well-Supported Today, Based on the Entire Record.

#### 1. Rule 23(a)(1) Numerosity.

As noted in the 2014 Class FOFCOL, "the Fifth Circuit has generally set the threshold of

100 to 150 people" as satisfying numerosity under Rule 23(a)(1). Class FOFCOL, 2014 WL

4809520, at *11 (citing *Mullen v. Treasure Chest Casino LLC*, 186 F.3d 620, 624 (5th Cir.

1999)). In its opinion, this Court found that the class was comprised of active litigants consisting

of approximately 4,150 members, thus meeting the numerosity requirement. *Id*. That number is

slightly less today due to dismissals, and the defendants have not contested numerosity given that

there is no basis to do so. Thus, there is no reason to disturb the Court's finding that the Rule

23(a)(1) requirement is met.

#### 2. Rule 23(a)(2) Commonality.

In its 2014 Class FOFCOL, this Court found that class member entitlement to property

damages as a result of class members having their homes rendered uninhabitable by defective

Taishan Chinese Drywall was a common issue. Such a determination is common because "'it is

capable of classwide resolution – which means that determination of its truth or falsity will

resolve an issue that is central to the validity of each one of the [class member] claims in one

stroke.'" *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011)) ("*Dukes*"); *see*

*also Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 605 (E.D. La. 2006) (finding commonality of a few common, central issues affected all or most all of the class members).

Although this Court found that entitlement to property damages was a common issue based on the nature of the claim and the evidence here, the Court also found that commonality is enhanced in this case due to the fact that a liability *has already been* determined by this Court in the default judgments entered against each one of the Taishan Defendants. *See* Class FOFCOL, 2014 WL 4809520, at *3 (citing default judgments entered against Taishan, TPP, BNBM, BNBM Group, and CNBM). "A default judgment is a judgment on the merits that conclusively establishes the defendant's liability." *Myers v. Powell*, No 12-2181, 2013 WL 3832414, *4 (E.D. La. July 23, 2013) (citing *U.S. of Am. for Use of M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) ("*M-CO Constr.*")); *see also Overseas Motors, Inc. v. Imp. Motors Ltd.*, 375 F. Supp. 499, 516 (E.D. Mich. 1974), *aff'd* 519 F.2d 119 (6th Cir. 1975) (citing *Last Chance Mining Co. v. Tyler Mining Co.*, 157 U.S. 683, 691 (1985) ("[T]he party who defaults ought therefore to be given no greater protection from preclusion than one who simply fails in his proof."); Class FOFCOL, 2014 WL 4809520, at *15.

Defendants argue that, because there is at least one non-defaulted Defendant in each action, commonality is defeated because allegedly the non-defaulting Defendants are permitted to challenge liability and causation. (Rec. Doc. No. 20627-1 at 41-42). This argument presents a distinction without a difference because all of these defendants have been defaulted in one or more of the Omnibus Chinese Drywall class actions, each alleging the same causes of action. In any event, however, defendants mistake the holding in *Frow v. De La Vega*, 82 U.S. 552 (1872), which is silent on class actions (having been decided well before Rule 23 came into existence). In truth, *Frow* and its progeny only "contemplate whether to issue a default judgment in the first

10

instance." *AE Mktg. L.L.C. v. Jenkins-Baldwin Corp., Meralex, L.P.*, No. 3:07-CV-0321-F, 2012 WL 12871604, at *6 (N.D. Tex. Aug. 24, 2012), *aff'd sub nom. In re Heritage Org., L.L.C.*, 568 F. App'x 301 (5th Cir. 2014). Here, the defaults against the defendants were entered from 2011 to 2014.

Further, *Frow* stands only for the proposition that where two defendants are jointly liable, and one of them defaults, the remaining defendant must be allowed to adjudicate its case on the merits. Plaintiffs here do not claim that non-defaulting defendants are not entitled to adjudicate on the merits. However, all of these defendants have been defaulted, and the ability of non-defaulting defendants to challenge liability does not preclude class treatment. Instead, the common questions of whether the Taishan Chinese Drywall was defective, whether it caused damage to property, and whether the class is entitled to property damages are issues that satisfy the commonality element of Rule 23. Thus, there is no reason to disturb the Court's finding that the commonality requirement is met.[3]

### 3.      Rule 23(a)(3) Typicality.

In the 2014 Class FOFCOL, this Court found the claims of the class representatives were typical. Class FOFCOL, 2014 WL 4809520, at *13. Since the class representatives and all class members are current or former homeowners of houses containing defective corrosive Taishan Chinese Drywall, the Court found their claims depend "on the same factual predicate as to the manufacturer of the defective product, product identification, the mechanism of damage occurring in class members' homes, the need for remediation, the scope of remediation, the

---

[3] The PSC cited the well-pled allegations in the various class action complaints where defaults have been entered to demonstrate the specific ground for the asserted liability of each of the Taishan defendants. *See* May 15, 2015 Plaintiffs' Reply Brief in Support of Motion for Assessment of Class Damages Pursuant to Rule 55(b)(2)(B) (under seal) at n.68.

square footage costs of accomplishing the remediation, and alternative living expenses[4] during remediation." *Id.* Thus, there is no reason to disturb the Court's finding that the typicality requirement is met.

### 4. Rule 23(a)(4) Adequacy.

In the 2014 Class FOFCOL, the Court found the class representatives were adequate, in that they "have the same interest as class members in obtaining property damage relief from the Taishan Defendants." *Id.* at *14.[5] Further the Court found the class representatives "demonstrated their commitment to the litigation by subjecting their residences to screening inspections to establish product identification and the fact of corrosion damage," as well as completing court ordered discovery.[6] *Id.* The Court also found class counsel to be adequate, noting their experience and competence.[7] *Id.* These findings remain valid now, as they were when made in 2014, and thus there is no reason to disturb the Court's finding that the adequacy requirement is met.[8]

---

[4] An individualized determination approach to alternative living expense damages does not detract from the common theory of liability, and thus does not interfere with the typicality finding. *Bertulli v. Ass'n of Cont'l Pilots*, 242 F.3d 290, 297-98 (5th Cir. 2001) (finding the possibility of the need for individual damages determinations does not interfere with class certification); *see also In re Deepwater Horizon*, 739 F.3d 790, 815-16 (5th Cir. 2014) ("*Deepwater Horizon II*") (noting that individual damages issues are "not fatal to class certification" where common liability issues predominated).

[5] Defendants argue that the Amorins are not adequate class representatives (Rec. Doc. No. 20632 at p. 5) because their condominium association is listed to have the remediation claim. That is standard under Florida property law and in no way renders the Amorins inadequate class representatives. *Carlandia Corp. v. Rogers & Ford Constr. Corp.,* 605 So. 2d 1014 (Dist. Ct. App. Fla. 1992) (both the individual owner and the condominium association have standing to sue for construction defect).

[6] The record shows that the class representatives' homes have or had corrosive Taishan Chinese Drywall in them. *See* Exhibits D-H (filed under seal); *see also* 5/15/2015 Inglis Decl. at ¶4; 2016 Wright Decl. at ¶4.

[7] Defendants challenge the adequacy of Class Counsel appointed by this Court (Rec. Doc. No. 20627-1 at 47-50) based on an alleged conflict between the interests of the class and the enforcement of the contempt orders against Taishan. This argument is both speculative and premature as to its relationship to attorney fees, and nonsensical as to the baseless suggestion, unsupported by any case law, that the class does not have an interest in requiring the defendants to conduct its defense in this case in a manner that does not run afoul of the criminal laws.

[8] To the extent the Court wishes to consider an ascertainability requirement, such requirement is readily met here because all class members are named Plaintiffs and active litigants. Class FOFCOL, 2014 WL 4809520, at *1.

**B. The Court's 2014 Findings Regarding Rule 23(b) Remain Well-Supported by the Record Today.**

    **1.    Entitlement to Property Damages Satisfies the Rule 23(b)(3) Predominance Requirement.**

The main thrust of defendants' motion is that plaintiffs have failed to satisfy the predominance requirement of Rule 23. In the Fifth Circuit, as defendants note in Rec. Doc. No. 20627-1 at 13, "[a]t bottom, the [predominance] inquiry requires the trial court to weigh common issues against individual ones and determine which category is likely to be the focus of a trial." *Crutchfield v. Sewerage & Water Bd. of New Orleans*, 829 F.3d 370, 376 (5th Cir. 2016). But predominance does not require that every single issue in a case be tried at the same time; instead, as the Supreme Court recently held: "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) ***even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members***.'" *Tyson Foods*, 136 S. Ct. at 1045 (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–124 (3d ed. 2005)) (emphasis added).

In its 2014 Class FOFCOL, the Court noted that predominance is established where common answers to common questions are likely to "'drive the resolution of the [instant] litigation.'" 2014 WL 4809520, at *14 (quoting *Dukes*, 131 S. Ct. at 2551). Here, there is one major common question that takes precedence over all others: whether owners of homes ruined by Taishan Chinese Drywall are entitled to property damages. By virtue of default, the unequivocal answer to that question is: **yes**. The irrefutable entitlement of class members to receive just compensation for property damages is the predominant issue in this case, and it has already been decided, and liability found, by virtue of default judgments that apply to every defendant and every member of the class. All liability issues in these proceedings have been

determined under Rule 55(b)(2)(B). *See M-CO Constr.*, 814 F.2d at 1014; Class FOFCOL, 2014 WL 4809520, at *15. The issue of entitlement to property damages is precisely the type of "aggregation-enabling" issue described by the *Tyson* Court. *See Tyson Foods*, 136 S. Ct. at 1045 ("The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'") (citing 2 W. Rubenstein, Newberg on Class Actions § 4:49, pp. 195-96 (5th ed. 2012)). The Florida Circuit Court in *Harrell* also found, looking at highly similar facts, that the entitlement of Chinese Drywall homeowner class members to property damages was a predominant issue justifying class certification. Exhibit A, *Harrell* Order at 10-11 ("The proposed class satisfies Rule 1.220(b)(3)'s requirement that issues subject to generalized proof predominate over issues requiring individualized proof because the dominant, common question in each class member's case is whether the drywall installed in his or her house is defective."); *see also id.* at 13-14. Thus, there is overwhelming support for this Court's predominance finding and it should not be disturbed.

### 2. Plaintiffs Have Shown, and the Court Has Accepted, a Formulaic Methodology for Remediation Damages, and Other Individualized Damages Claims Do Not Disturb the Suitability of the Case For Class Certification.

Defendants next turn to damages, hoping to undermine the damages showing as another way to attack the Court's finding of predominance. As an initial matter this argument actually goes to the merits of the expert opinions this Court has already found admissible, which is not an appropriate issue to consider at class certification. Defendants ignore hornbook law that the focus of class certification is whether claims are amenable to proof using class-wide evidence, not whether the plaintiffs will win or lose the case on the merits. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S.Ct. 1184, 1194-95 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage…[T]he focus of Rule 23(b)(3) is on the

predominance of common *questions*...") (emphasis in original); Advisory Committee's 2003

Note on subd. (c)(1) of Fed. Rule Civ. Proc. 23 ("[A]n evaluation of the probable outcome on the

merits is not properly part of the certification decision."). In addition, defendants argue that the

Court improperly relied on *Germano* and *Hernandez* in adopting the property remediation

damages methodologies used in those cases and that the presence of some individualized

damages claims renders certification improper. All of these arguments must fail under basic Rule

23 and Rule 55 case law.

### a. Plaintiffs' Remediation Damages Method is Formulaic and Reliable as this Court has Repeatedly Found.

The formulaic remediation damages of the homes of current owners is estimated to be

over $375 million dollars[9], and how such damages are to be quantified under Rule 55(b)(2)

remains the dominant issue herein. This predominant question amply supports certification, and

its resolution will substantially advance the case. *Dukes*, 131 S. Ct. at 2551. Defendants criticize

and mischaracterize the Ron Wright (and George Inglis) expert remediation costs reports,

asserting that the remediation damages methodology is based on an inadequate statistical sample;

however, the remediation costs opinion is based on a square footage unit price formula grounded

in engineering areas of expertise – building repair costs, engineering, and corrosion science, not

statistics; and has met this Circuit's Daubert standards on multiple occasions. *See* Order and

Reasons re Daubert (Rec. Doc. No. 19092) (*In re Chinese-Manufactured Drywall Prods. Liab.

Litig.*, MDL No. 2047, 2015 WL 3603624, at *3 (E.D. La. June 5, 2015)); *see also* 2010 Daubert

Order); *Germano* FOFCOL, 706 F. Supp. 2d. at 671-72, 687 (endorsing Ron Wright expert

---

[9] *See* 2016 Wright Decl. at p. 10 ($377,963,390).

findings on scope of repair and the determination of base remediation costs). Thus, the record here is clear – there exists a formulaic damages methodology, and it is reliable.[10]

This square footage pricing method used by Plaintiffs' experts is identified and endorsed by building engineering literature cited by both sides. *See* Exhibits L & M; *see also* June 9, 2015 Trial Tr. at 111:7-24, 114:8-9, 115:5-116:2, 128:7-9, and 182:2-3. Courts recognize that damages estimates based on expertise in building engineering, as opposed to statistics, are admissible and reliable. *See e.g., In re U.S. Foodservice Inc. Pricing Litig.*, No. 3:07-md-1894, 2011 WL 6013551, at *16 (D. Conn. Nov. 29, 2011); *Rai v. Santa Clara Valley Transp. Auth.*, No. 5:12-CV-0043344-PSG, 2015 WL 860761, at *15 (N.D. Cal. Feb. 24, 2015); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 45 F. Supp. 3d 724, 735-36 (N.D. Ohio 2014) (rejecting defendant's arguments that the methodology of plaintiff's engineering expert was unreliable because it was not representative, particularly where the engineer had "called on his own experience in washer design for Whirlpool to support his conclusion that the design of the Duet machines led to a propensity to develop mold"); *see also Cason-Merenda v. VHS of Mich., Inc.*, 296 F.R.D. 528, 544 (E.D. Mich. 2013) (approving class certification based on damages

---

[10] Nevertheless, defendants argue that Mr. Wright's formulaic damages methodology will overcompensate owners of homes with corrosive Taishan Chinese Drywall. Rec. Doc. No. 20627-1. Remarkably, this argument is based on speculation made by Taishan's lawyers based on newspaper stories about persons who did limited "do it yourself" remediations for $15,000 per home. *Id.* at 39. These homeowners were forced to remove the contaminated drywall from their homes in any way they could, including an incomplete, improper or unsafe way, as the court system has taken so long to dispense justice, all due to the delay caused by defendants attempting to deny the innocent homeowners justice. As this Court has ruled on numerous occasions, this kind of incomplete and selective drywall remediation is dangerous and does not meet the scope of repair established by the experts in *Germano* and *Hernandez* and ratified by the Court, as well as the third-party expert witnesses from professional building companies. In fact, this Court granted a Daubert motion against the Knauf experts finding that an expert could not even advance such an approach as a reliable, safe, and sufficient method of remediation. *See* 2010 Daubert Order, 2010 WL 8368083, at *4 (excluding Knauf expert Dr. Perricone and all other Knauf experts from reliance on the use of XRF to detect individual sheets of Chinese Drywall in a home in order to carry out selective drywall remediation); *Germano* FOFCOL, 706 F Supp. 2d. at 685-686 ("The scope of work is consistent with Chinese Drywall Remediation [done] by national builders…[Lennar Homes and Beazer Homes]"). As the Court explained, such selective and incomplete remediation is not safe, *id.* at 686, and would simply prolong the hazard and lead to more safety risks, economic disruption and hardship, *id.* at 690-91; *Hernandez* FOFCOL, 2010 WL 1710434, at *7, 18. Plaintiffs are entitled to the full measure of remediation damages to actually repair the home and make it safe. *Id.*

16

expert's formula without requiring statistical sampling); *S. States Coop., Inc. v. Melick Aquafeeds, Inc.*, 701 F. Supp. 2d 1348, 1361 (M.D. Ga. 2010), *aff'd sub nom. S. States Co-op., Inc., v. Melick Aquafeeds, Inc.*, 476 F. App'x 185 (11th Cir. 2012) (fishery expert can use "simple arithmetic and algebra" to support his opinion); *accord In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677, 691-693 (N.D. Ga. 1991) ("The fact that the methodologies contain some form of averaging does not automatically render them methods of fluid recovery. On the contrary, Dr. Beyer's economic analysis evidences common impact and permits, with reasonable certainty, formulaic calculation of damages.").

The use of the RS Means standardized building costs databases as employed by Mr. Wright in his damages formula is also well-accepted. *Germano* FOFCOL, 706 F. Supp. 2d at 688 ("RS Means is a publication which compiles data on a national basis for cost to repair and replace building components."); *see, e.g., Gulbankian v. MW Mfrs., Inc.*, No. 10-10392-RWZ, 2014 WL 7384075, at *5 (D. Mass. Dec. 29, 2014) (noting that use of RS Means "as the starting point for calculating damages is widespread and accepted" and approving settlement that used RS Means in calculating damages for class of thousands of homeowners to repair defective windows over class member objections to the damages methodology); *In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 205 (E.D. Pa. 2014) (approving class action settlement which calculated amount of settlement payments for a class of thousands of claimants with damaged siding using RS means cost estimator and noting that "RS Means is a cost estimator that accounts for regional differences in labor and materials costs by using zip codes to factor in the specific costs of nearly any type of construction in a particular area of the country … It has been used in the construction/building industry for almost 40 years.").

17

   b.  **Defendants Mischaracterize the Court's Use of the *Germano* and *Hernandez* Cases.**

Faced with a robust record **consistently and repeatedly** identifying a formulaic and reliable method to calculate remediation damages, it is hardly surprising that the defendants in default seek to mischaracterize the record of these proceedings pertinent to class certification. In ruling on class certification, this Court embarked on a rigorous review to determine if the class certification criteria were met "notwithstanding the entry of a default judgment." Class FOFCOL, 2014 WL 4809520, at *10. As part of this review, the Court considered the evidence and expert testimony it had heard on damages in its two prior Chinese Drywall trials and pre-trial Daubert proceedings in *Germano* and *Hernandez*, in order to assess whether some forms of property damages could be determined on a class-wide basis. This Court was extremely well-versed in the details of such damages methodologies and how experts used such methodologies. In fact, in the earlier 2010 *Germano* proceeding, the Court rejected a *Daubert* challenge to Plaintiffs' property damages team of experts and explicitly relied on Mr. Wright in making its Findings of Fact as to the scope of uniform remediation and the $86/square foot base remediation cost. *See* 2010 Daubert Order, 2010 WL 8368083, at *4; *Germano* FOFCOL, 706 F. Supp. 2d at 671-72, 687-88. Mr. Wright is the same expert on whom Plaintiffs now rely for the determination of class-wide remediation damages. *See* 2016 Wright Decl. Similarly, in the *Hernandez* pretrial Daubert proceeding and trial, this Court heard evidence on a similar property damage methodology using Xactimate instead of RS Means (which was used in *Germano*), and found the methodology reliable, and later expressed the damage award as a square footage unit pricing measure. Class FOFCOL, 2014 WL 4809520, at *7. So in considering Plaintiffs' class certification papers in this matter, the Court's analysis was appropriately informed by its five years of experience with these damages issues, and supported the conclusion that class

18

remediation damages herein were amenable to a "calculation on a formulaic, square footage basis." *Id.* at *4. Nothing has intervened to undermine that conclusion.

This Court appropriately has characterized the formulaic remediation damages methodology utilized by plaintiffs' experts as "virtually a mechanical task" (here based on square footage, local building factors, product identification, and $/square foot remediation base cost), and also noted that such a method meets the aggregate proof requirements set out by the Fifth Circuit in *In re Monumental Life Insurance Company*, 365 F.3d 408, 419 (5th Cir. 2004). Class FOFCOL, 2014 WL 4809520, at *15-16 ("Indeed, damages are simply calculated by using a mathematical formula similar to what the Court utilized in *Germano* and *Hernandez* (*i.e.* price per square foot to remediate X number of square feet in class members' homes = damages).").

In their brief (Rec Doc. 20627-1 at 24-32), defendants nonetheless argue that the square footage/unit pricing methodology that the Court already has relied upon in its Class FOFCOL was one used to determine damages not for an entire class, but for seven individual homes in the 2010 *Germano* case. This argument is a "red herring" for several reasons: (1) it mischaracterizes what the Court held in its Class FOFCOL opinion regarding the availability of a formulaic damages method; (2) it purports to demonstrate (without any citation to the record) that it was impermissible for the Court to consider its familiarity with the facts and expert methods in prior Chinese Drywall proceedings to determine if some property damages could be proven on a class-wide basis; and (3) it ignores that the square footage unit pricing model used by Mr. Wright meets Fifth Circuit precedent for acceptable methods of aggregate proof. Class FOFCOL, 2014 WL 4809520, at *4-5, *15.

The *Germano* case was not a certified class proceeding; rather, it addressed seven intervenor claims for the simple reason that at the time of the hearing it did not need to be a class

hearing in order for the Court's objective to be pursued. The purpose of the *Germano* trial was to determine the nature and scope of Chinese Drywall remediation for a representative sampling of properties; and the evidence presented for this purpose consisted of a calculation formula derived by the expert Mr. Wright from his firm's extensive investigation of Chinese Drywall-damaged properties and building repair costs (including standardized costs of demolition and replacement drywall). The calculation methodology ultimately boiled down to a formula including terms for remediation base cost per square foot measure, local building cost factors at the zip code level, and the size of the home to be repaired measured in square feet.[11] This type of damages methodology (square footage unit pricing) is generally accepted in the building trade literature, and utilizes the standardized RS Means building costs factors. As a standard building costs text describes it, "The [square footage costs estimates] are based on the premise that all building types can be distilled to a cost per SF of gross floor space."[12] Mr. Wright employed this basic premise of property damage evaluation in deriving the formula used.

The *Germano* trial, then, proved the broad and useful application of an approach to remediation damages that could be employed for more than the seven intervenor claims presented. Thus, in certifying a class and carrying out it responsibility under Rule 55(b)(2)(B) to determine the amount of damages owed, this Court has now appropriately relied on its

---

[11] The *uniform* scope of work for Mr. Wright's square footage remediation formula was explicitly approved by this Court, after a challenge by the Knauf intervenors. *See Germano* FOFCOL, 706 F. Supp. at 671, 687-88. The scope of work used in the class proceeding was also established based on long-term continuous observations of properties with Chinese Drywall (including sampling and testing), scientific investigation of Chinese Drywall and the science of corrosion, practical construction experience (particularly the experience of national builders), and electric and building codes. *Id.* at 671-86; *Hernandez* FOFCOL, 2010 WL 1710434, at *10-17; *see also* June 9, 2015 Trial Tr. at 106:8-110:3. The remediation damages formula requires a limited number of standardized inputs. This universal scope of work allowed for the use of standard costs for demolition and replacement drywall in the interior of buildings, it did not concern the exterior. *Id.* at 161:25-162:9; *see also id.* at 157:8-158:8. The consistent scope of work used by Mr. Wright in *Germano* and many times since then by Mr. Wright and others in Chinese Drywall proceedings was based on historical experience and data in several states over several years of CDW remediation estimates. *Id.* at 127:190-128:19, 164:9-10. This formulaic methodology was approved again by the Court in 2015 in denying the Taishan defendants' Daubert motion.
[12] Exhibit M, at 494.

familiarity with the facts and damages associated with Chinese Drywall and the available methodologies to ascertain class-wide damages on a formulaic basis, consistent with Fifth Circuit precedent. Class FOFCOL, 2014 WL 4809520, at *4-5, *15.[13]

### c. Property Damages are Recoverable under Each State's Law for Toxic Contamination of the Home.

Defendants assert that state law variation on a variety of issues precludes certification.[14] Rec. Doc. No. 20627-1 at 18. As noted above, however, the predominant issue supporting class certification is entitlement to property damages, and each state involved in the class (particularly the 3 states that include more than **90%** of the class members – Louisiana, Florida, and Virginia) recognizes the availability of property damage remediation for the toxic contamination of the home. *See In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex., on Apr. 20, 2010*, 910 F. Supp. 2d 891, 926-27 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) (noting that common liability for property damages arising from a single cause warrants certification and collecting cases).[15]

Defendants further contend that remediation damages may not be the proper measure of damages for property owners in Florida or Louisiana. Rec. Doc. No. 20627-1 at 23. But this position simply is not the law. It is uniformly clear from the Chinese Drywall case law, including opinions written by Judge Fallon under Louisiana law and Virginia law, Judge Hall under

---

[13] This reasoning is entirely consistent with the Fifth Circuit jurisprudence which approves of a "suitable formula for calculation of damages" in the class context. *See Corley v. Orangefield Indep. Sch. Dist.*, 152 F. App'x 350, 355 (5th Cir. 2005) (citing *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 306 (5th Cir. 2003)); *see also In re Park Cent. Glob. Litig.*, 09-cv-765, 2014 WL 4261950, at *13 (N.D. Tex. Aug. 25, 2014) (noting that damages calculations need not be exact so long as any model supporting a plaintiffs damages case is consistent with its liability case and damages are capable of determination on a class-wide basis) (quotations omitted).

[14] Only state law issues related to damages are justiciable under a Rule 55(b)(2) proceeding. Issues based on liability, such as statute of limitations, have already been determined by the default judgment orders. Class FOFCOL, 2014 WL 4809520, at *15; *Myers v. Powell*, No 12-2181, 2013 WL 3832414, *4 (E.D. La. July 23, 2013) (citing *M-CO Constr.*, 814 F.2d at 1014).

[15] *See also* Ex. 53 to Rec. Doc. No. 18946 (May 15, 2015) (under seal).

Virginia law, and Judge Farina under Florida law, that remediation costs are recoverable for

Chinese Drywall homeowners based on the state property law applied to the facts of this case

and the policies and equites underlying this dispute. These courts all have found that the Chinese

Drywall homes are not livable due to the odors, the corrosion of copper and silver pipes and

electric circuits, and the risks of fire. *Germano* FOFCOL, 706 F. Supp. 2d at 664-65; *Hernandez*

FOFCOL, 2010 WL 1710434, at *4; Rec. Doc. No. 18086-2, Verdict Form, *Seifert v. Banner*

*Supply Co.* (the jury found Chinese Drywall defective and awarded remediation damages);

Exhibit A, *Harrell* Order, at p. 11 ("The nature of the defect inheres in the physical

characteristics of the product itself: its potential to emit reduced sulfur gases which can cause

damage to certain metal surfaces and objects within the homes."); Exhibit B citing Exhibit C

("The Review Board further finds that the use of imported [ Chinese ] drywall in the construction

of the homes, due to the off-gassing of corrosive byproducts, created a permanent corrosive

environment in the homes."). Consequently, these courts have found that remediation is an

appropriate remedy, and that repair of a contaminated house would not constitute "economic

waste," in that remediation ends the cycle of unsafe housing and economic disruption and

hardship for homeowners associated with the Chinese Drywall contamination.[16] *Germano*

FOFCOL, 706 F. Supp. 2d at 664-65, 690-91 ("Under these circumstances, the proper measure

of damages is the cost of repair…."); *Hernandez* FOFCOL, 2010 WL 1710434, at *7, 18

("Plaintiffs seek to have their home repaired and restored to a safe place for their family…No

reputable contractor would accept the risk of leaving copper and silver components in the

---

[16] For similar reasons (the risk of injury to health and property caused by corrosive Taishan Chinese Drywall), these same courts have found that the economic loss rule does not preclude tort claims arising in Chinese Drywall cases. *See* Order & Reasons, Rec. Doc. No. 741, *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 680 F. Supp. 2d 780, 799 (E.D. La. 2010); Order Denying Defendants' Motions to Dismiss Plaintiffs' Tort Claims Under the Economic Loss Rule, *In re Chinese Drywall Litig.*, No. 09-200,000 CA 42, 2009 WL 6408999 (Fla Cir. Ct. Dec. 18, 2009); Exhibit K at 10.

plaintiffs' home."); Exhibit I, Rec. Doc. No. 18086-2, *Siefert* Verdict Form (jury awarded the

plaintiff Chinese Drywall homeowner remediation damages); Exhibit J (affirming jury's

damages award including remediation damages).

Furthermore, variation of state law is a "manageability" issue and manageability alone is

not a sufficient grounds to deny certification. *Mullins v. Direct Dig.*, 795 F.3d 654, 663 (7th Cir.

2015) (noting "the well-settled presumption that courts should not refuse to certify a class merely

on the basis of manageability concerns."); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128

(9th Cir. 2017) (same); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d

Cir. 2001) (noting that failure to certify a class action under Rule 23(b)(3) solely on

manageability grounds is generally disfavored), *overruled on other grounds by In re Initial Pub.*

*Offerings Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006). Defendants assume that any variation in state

law renders a class action unmanageable, but this Court is not charged with "assessing whether

this class action will create significant management problems, but instead determining whether it

will create relatively more management problems than any of the alternatives." *Williams v.*

*Mohawk Indus., Inc.*, 568 F.3d 1350, 1358 (11th Cir. 2009) (internal citation omitted). Variation

in state law does not exist here as to the predominant property damages remediation claim; but,

assuming *arguendo* it did exist, such variability simply gives rise to a manageability concern,

and this would be a matter for the Court to handle under its broad Rule 55(b)(2)(B) and Rule 23

authority.

### d.  The Presence of Some Individualized Damages Issues Does Not Interfere with Predominance or Certification.

The formulaic remediation damages claim dominates the property damages claim in this

case, but there are other individualized damages claims such as personal property damages and

alternative living expenses. These individualized damages suffered by class members in the case

all flow from the common entitlement to property damages. *See Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 607 & n.6 (E.D. La. 2006) (common liability to the class for property damage from oil spill satisfies predominance requirement, even where individualized damages issues relating to mental anguish and personal injury would be subject to individualized inquiry); *see also Deepwater Horizon II*, 739 F.3d at 815 (predominance "based not on common issues of damages but on the numerous common issues of liability"). The presence of such issues in a case do not interfere with a finding of predominance or certification. Some individualized damages calculations "will not preclude a finding of predominance." *Leon v. Diversified Concrete, LLC*, No. CV 15-6301, 2016 WL 6247674, at *3 (E.D. La. Oct. 26, 2016); *Bertulli v. Ass'n of Cont'l Pilots*, 242 F.3d 290, 297-98 (5th Cir. 2001) (the need for some individual damages calculations is not a barrier to class certification); *Bell Atl. Corp. v. AT&T Corp.,* 339 F.3d 294, 306 (5th Cir. 2003) ("[R]elatively few motions to certify a class fail because of disparities in the damages suffered by the class members").[17] This hornbook law is simply ignored by defendants. Since the entitlement to property damages and the availability of a formulaic remediation damages method dominate this case, are supported by a robust record, and are ripe for the implementation of claims processing, the presence of other individualized damages claims does not detract from predominance. Thus, there is no reason to disturb the Court's finding that the predominance test is met.

---

[17] Plaintiffs propose that the remediation damages aspect of the property damages claim be the first priority of this 55(b)(2)(B) proceeding. That claim dominates this case. The staging of resolution of different damage claims is well accepted and within the Court's discretion. *Deepwater Horizon II*, 739 F.3d at 816; *Greenhaw v. Lubbock Cty. Beverage Ass'n*, 721 F.2d 1019, 1033 (5th Cir. 1983) (the court bifurcated the action with liability and formulaic damages to be determined first, and individualized damages to be determined in the second phase). Defendants question whether the product identification information reviewed by Brown Greer prior to 2015 is sufficient to proceed to claims administration. Rec Doc 20627-1 at 9, n.8. In fact Brown Greer did review the PPF for each Plaintiff, and the PPF typically included photographs and inspection reports. Since that time, the PSC has verified product identification for class members and requested some 260 plaintiffs to dismiss for lack of product identification, and those dismissals have been entered. Rec. Doc 20613-2 at 18-21.

3.      **Rule 23(b)(3) Superiority.**

This Court's 2014 Class FOFCOL found the class mechanism for this case to be the superior method to adjudicate this matter. 2014 WL 4809520, at *16. Judge Farina, looking at the same issue in Florida, found the class mechanism superior (Exhibit A at 14 ("A class action is also a superior device for adjudicating the effects of the Defendants' actions on the Class.")) and ultimately approved the class settlement and administered the class case through the distribution of funds and conclusion. This Court's 2014 decision was informed by the Court's experience with these claims, the Court's knowledge that the claims were meritorious, the fact that liability has been established by default judgment, the Court's familiarity with a formulaic approach to remediation damages, and the Court's concerns that common issues would need to be repeatedly tried at extreme expense to the parties and the judicial system if no class treatment was allowed. *Id.* These factors are pertinent and significant as ever.

The superiority of using Rule 23 to carry out this Rule 55(b)(2)(B) procedure to quantify and collect the debt owed to the class by the default judgment defendants is virtually unassailable. This is not a jury trial involving liability and damages, but a more limited proceeding with liability established. It is a default proceeding presided over by a Court with eight years of experience with this litigation, including the issues of controlling state law, the types of damages caused by corrosive Taishan Chinese Drywall, the necessary scope of repair, and damages methodologies. Further, there is a robust record already established as to the formulaic method to calculate remediation damages. And finally, there are thousands of homeowners who have been victimized by the default judgment defendants' purposeful abuse of this country's judicial system. These homeowners have waited as the Taishan defendants first walked out of the litigation in brazen disobedience of a Court order, and then re-appeared, not to

more efficiently move toward an accountability for their class-wide indebtedness, but rather to engage in repeated efforts to re-visit and re-litigate the law of the case and the facts of record. The Court surely is justified in using the full extent of its authority under Rule 23 and Rule 55 to now bring this litigation to a just conclusion. Thus, there is no reason to disturb the Court's finding that this case meets the superiority requirement.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny defendants' Motion to Decertify the Class Pursuant to Rule 23(c)(1)(C).


                                        Respectfully submitted,

Dated: February 13, 2017                /s/ Russ M. Herman_____
                                        Russ M. Herman, Esquire (Bar No. 6819) (on the
                                        brief)
                                        Leonard A. Davis, Esquire (Bar No. 14190) (on the
                                        brief)
                                        Stephen J. Herman, Esquire (Bar No. 23129) (on
                                        the brief)
                                        HERMAN, HERMAN & KATZ, L.L.C.
                                        820 O'Keefe Avenue
                                        New Orleans, Louisiana 70113
                                        Phone: (504) 581-4892
                                        Fax: (504) 561-6024
                                        LDavis@hhklawfirm.com
                                        *Plaintiffs' Liaison Counsel MDL 2047*

                                        Arnold Levin (on the brief)
                                        Fred S. Longer (on the brief)
                                        Sandra L. Duggan (on the brief)
                                        Matthew C. Gaughan (on the brief)
                                        LEVIN SEDRAN & BERMAN
                                        510 Walnut Street, Suite 500
                                        Philadelphia, PA 19106
                                        215-592-1500 (phone)
                                        215-592-4663 (fax)
                                        Alevin@lfsblaw.com
                                        *Plaintiffs' Lead Counsel MDL 2047*

Gerald E. Meunier (LA Bar No. 9471) (On the Brief)
GAINSBURGH, BENJAMIN, DAVID, MEUNIER & WARSHAUER, LLC
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Richard S. Lewis (on the brief)
Swathi Bojedla (on the brief)
HAUSFELD LLP
1700 K Street, NW, Ste. 650
Washington, DC 20006
Phone: (202) 540-7200
Fax: (202) 540-7201
rlewis@hausfeld.com

*Co-Counsel for Plaintiffs and PSC Member*