# EXHIBIT C

received
6|23|4

VIRGINIA:

BEFORE THE
STATE BUILDING CODE TECHNICAL REVIEW BOARD

IN RE:   Appeal of Kimberly A. and Bryan R. Wood (603 Mansion
Road); Keith and Elizabeth Berry (607 Mansion Road);
Dave and Jeri Johnson (609 Mansion Road) and David and
Psyche Page (102 Overlook Point)

Appeal Nos. 10-17, 10-18, 10-19 and 10-20

Hearing Date: <u>April 22, 2011</u>

<u>DECISION OF THE REVIEW BOARD</u>

I. PROCEDURAL BACKGROUND

The State Building Code Technical Review Board (Review Board)
is a Governor-appointed board established to rule on disputes
arising from application of the Virginia Uniform Statewide
Building Code (USBC) and other regulations of the Department of
Housing and Community Development.  See §§ 36-108 and 36-114 of
the Code of Virginia.  Enforcement of the USBC in other than
state-owned buildings is by local city, county or town building
departments.  See § 36-105 of the Code of Virginia.  An appeal
under the USBC is first heard by a local board of building code
appeals and then may be further appealed to the Review Board.  See
§ 36-105 of the Code of Virginia.  The Review Board's proceedings

are governed by the Virginia Administrative Process Act.  See §
36-114 of the Code of Virginia.

## II. CASE HISTORY

The appeal involves four homes constructed in York County
during a period of time between 2006 and 2008 by Atlantic Homes,
LLC (Atlantic), a licensed homebuilder.

In or around November of 2009, Atlantic sent correspondence
to the owners of the homes advising that the homes may contain
drywall which was imported from China and which was purported to
give off corrosive gasses harmful to the electrical and mechanical
systems of the homes.

The owners of the homes contacted the York County building
official requesting that action be taken under the USBC to require
the removal of the imported drywall and the replacement of the
electrical and mechanical systems in the homes.

Between February and June of 2010, the building official
corresponded with Atlantic concerning the application of the USBC
to the situation and addressing Atlantic's offer to the owners of
the homes to remove the drywall.

The outcome of the correspondence was an order by the
building official for Atlantic to submit proof that the drywall
complied with the standards listed in the USBC for wall materials
and a determination by the building official that the electrical

and mechanical components of the homes did not need to be replaced.

In July and August of 2010, both Atlantic and the owners of the homes filed appeals of the building official's determinations to the York County Board of Building Code Appeals (County appeals board). The County appeals board heard the appeals in September of 2010 and ruled to uphold the building official's determinations.

Both the owners and Atlantic further appealed to the Review Board.

Review Board staff conducted an informal fact-finding conference pursuant to the appeals to the Review Board, attended by the owners, Atlantic and the building official and their respective counsel. The appeal by Atlantic and by the owners were treated as separate appeals and given separate appeal number designations by Review Board staff. The appeal by Atlantic was designated as Appeal No. 10-21.

The appeal by Atlantic was limited in its scope to an appeal of whether the drywall in question complied with the standards for drywall in the USBC.

The issue identified for resolution by the Review Board in the appeal by the owners (which this decision of the Review Board addresses) was whether the electrical and mechanical components of

the homes were in violation of the USBC due to the effects of the drywall in question.

Subsequent to the informal fact-finding conference, a summary of the appeal was drafted by Review Board staff and distributed to the parties.  The parties were given opportunity to submit corrections, objections or additions to the staff summary, the submittal of additional documents for the record and the submittal of written arguments.  A hearing before the Review Board was then scheduled and held and was attended by all parties[1] and their respective counsel.

## III. FINDINGS OF THE REVIEW BOARD

The issue in the appeal is whether the USBC prohibits peripheral damage to a building caused by materials introduced during the construction of a building or caused by a violation of the USBC during the construction of a building.

York County and Atlantic argue that no such provisions exist and the building official's authority is limited to only addressing whether the drywall in question complies with the USBC.

The Review Board finds that Section 118 of the USBC addresses buildings which become unsafe during the construction process. The applicability of Section 118 ends once the certificate of occupancy is issued under the USBC.  While the introduction of the

imported drywall into the building environment during the construction process created the corrosive atmosphere eventually leading to the damage to the electrical and mechanical systems, the evidence indicates that the damage was not apparent until after the certificate of occupancies were issued; therefore, Section 118 is not applicable.

The Review Board further finds that Part III of the USBC, the Virginia Maintenance Code (VMC), requires the maintenance of buildings after construction is complete to achieve continued compliance with the codes a building was constructed under. As such, potential violations of the VMC exist in this situation as the electrical and mechanical systems show evidence of inadequate functioning or failure due to the corrosion caused by the presence of the imported drywall installed in the homes. However, enforcement of the VMC is at the option of a locality and York County representatives testified that York County has not elected to enforce the VMC.

The Review Board further finds that the use of the imported drywall in the construction of the homes, due to the off-gassing of corrosive byproducts, created a permanent corrosive environment in the homes. This fact raises the question of whether the homes fall within the Group R (residential) classification in the USBC,

---

[1] Owners Kimberly and Bryan Wood and David Page were not present; however, all owners were represented by counsel present.

which does not include buildings containing a corrosive interior environment.

Chapter 3 of the USBC[2] contains the criteria for classification of buildings.  Section 302.1 of the USBC requires the classification of all buildings to be in the occupancy classification or category which most nearly resembles the fire safety and relative hazard involved.  The occupancy category in Chapter 3 listed which would most nearly resemble a building which contains a corrosive interior environment would be either Group F (factory), where products involving corrosive materials may be manufactured, such as lead-acid batteries; Group S (storage), in which products which may give off corrosive byproducts may be stored; or Group H (high-hazard), where specific types of higher hazard processes or materials typically involved in industrial, factory or storage uses are identified.

As the permit issued for the homes by the York County USBC department assigned the Group R (residential) classification to the buildings, when the imported drywall was introduced into the buildings and the resulting interior environment corrosiveness caused damage to the electrical and mechanical systems, the classification of the buildings should have been changed based on

---

[2] All references to the USBC are to the current or 2009 edition.  The USBC incorporates the International Building Code (IBC) for technical requirements. The USBC uses the chapter and section numbering of the IBC.

the application of Section 302.1.  The USBC has a term for this situation known as "change of occupancy."  The term is defined as:

> "A change in the use or occupancy of any building or structure which would place the building or structure in a different division of the same group of occupancies or in a different group of occupancies; or a change in the purpose or level of activity within a building or structure that involves a change in application of the requirements of this code."

Section 103.3 of the USBC has specific provisions for change of occupancy situations and requires a permit to be obtained for the new use or occupancy from the local building department and requires compliance to be achieved with the new use and occupancy classification.

Whether the correct occupancy classification for the homes in question, after the interior environment became corrosive in nature, is in Group F, S or H, the provisions of the IBC and its referenced codes and standards would not permit the use of electrical and mechanical components whose functioning would be affected by the corrosive environment.  For instance, the International Mechanical Code, a referenced standard in Chapter 28 of the IBC, in Section 502, requires a mechanical exhaust system to be provided where dust or particles are present in such quantities to be a safety hazard.  Further, the National Electrical Code, a referenced standard in Chapter 27 of the IBC, contains many special provisions for wiring in hazardous or corrosive environments.

As Atlantic introduced the imported drywall into the homes during the construction process and the damage to the electrical and mechanical systems of the homes became apparent during the period of time after completion of the homes where violations of the USBC could be addressed by the building official, the Review Board finds that the correct application of the USBC in this situation is for the building official to cite Atlantic for being in violation of the USBC for a change of occupancy without obtaining proper permits and achieving compliance with the applicable provisions of the USBC for the new use or occupancy classification.

Atlantic then has the choice of removing the imported drywall from the homes and returning the electrical and mechanical systems to their original functionality and safety and obtaining a new certificate of occupancy for Group R, or to make the buildings comply with the USBC for the change of occupancy to the Group F, S or H classification, which would also require changing the electrical and mechanical systems to function properly in, and be protected from, the corrosive environment.

## IV. FINAL ORDER

The appeal having been given due regard, and for the reasons set out herein, the Review Board orders the decisions of the York County building official and County appeals board to be, and

hereby are, overturned, and the case is remanded to the building official for further determination of the appropriate classification and remedy for the change of occupancy of the homes.


_____
Chairman, State Technical Review Board


_____
June 17, 2011
Date Entered


    As provided by Rule 2A:2 of the Supreme Court of Virginia, you have thirty (30) days from the date of service (the date you actually received this decision or the date it was mailed to you, whichever occurred first) within which to appeal this decision by filing a Notice of Appeal with Vernon W. Hodge, Secretary of the Review Board.  In the event that this decision is served on you by mail, three (3) days are added to that period.