**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| **THIS DOCUMENT RELATES TO:**<br><br>*Germano v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 09-6687 (E.D. Va.);<br><br>*Gross v. Knauf Gips, KG*, Case No. 09-6690 (E.D. La.);<br><br>*Wiltz v. Beijing New Building Materials Public Limited Co.,* Case No. 10-361 (E.D. La.);<br><br>*Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 11-1672 (S.D. Fl.);<br><br>*Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 11-1395 (E.D. La.); and<br><br>*Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd.*, Case No. 11-1673 (E.D. Va.). | |

**BEIJING NEW BUILDING MATERIALS PUBLIC LIMITED COMPANY'S AND
BEIJING NEW BUILDING MATERIAL (GROUP) CO., LTD.'S
<u>REPLY IN SUPPORT OF MOTION TO DECERTIFY</u>**

Defendants Beijing New Building Materials Public Limited Company ("BNBM PLC") and Beijing New Building Material (Group) Co., Ltd. ("BNBM Group") (collectively the "BNBM Entities") submit this reply in support of their motion to decertify the *Amorin* class, submitted in part through the joinder and adoption of positions set forth in filings by other Defendants. (Rec. Docs. 18883, 20631).

In submitting this reply, the BNBM Entities do not waive and expressly reassert their jurisdictional objections as set forth in their pending Motions to Dismiss. (Rec. Docs. 19646, 19649). Indeed, the BNBM Entities submit that the Court should rule on the pending and fully briefed jurisdictional motions before addressing class or other issues, particularly since a finding that there is no jurisdiction as to the BNBM Entities will render many other pending issues moot.

## INTRODUCTION

The arguments set forth in the PSC's brief in opposition to the pending motions for decertification are without legal basis or evidentiary support. The Court's September 26, 2014 class certification Order was entered essentially without opposition, before the BNBM Entities had appeared in this litigation. Since then, however, there has been extensive discovery and evidence presented to the Court demonstrating conclusively that: (i) the Chinese Defendants are distinct legal entities, and there is no basis to treat the BNBM Entities as "alter-egos" of Taishan; (ii) the PSC cannot establish liability or damages against the BNBM Entities on a class-wide basis; and (iii) the Court lacks personal jurisdiction over the BNBM Entities. Moreover, the PSC cannot even establish the basic element of numerosity against the BNBM Entities because no plaintiffs claim to have been injured by BNBM Group drywall (it did not manufacture any). The PSC has at the most shown a relative handful of properties that supposedly contained BNBM PLC-manufactured drywall.

Nonetheless, the PSC continues to assert that class adjudication is permissible here. But the PSC scrupulously avoids any discussion of the evidence presented at the June 9, 2015 damages hearing, where the Chinese Defendants demonstrated that the PSC's supposed "formula" to calculate remediation damages is fundamentally flawed because it is (i) based solely on estimates and ignores actual costs incurred; (ii) wholly unreliable and fails to take into account such variations as location, internal configurations, fixtures and ceiling heights; and (iii) has no statistical validity whatsoever. Defendants proved at that hearing that the so-called "formula" is wildly unreliable in calculating damages on either an individual or an aggregate basis and cannot support a class-wide determination of damages.

Even putting aside whether the Court has jurisdiction over the BNBM Entities (it doesn't) or whether class treatment is appropriate for any of the Chinese Defendants (it isn't), the PSC has absolutely no basis for sweeping the BNBM Entities into a class proceeding involving thousands of properties that had no drywall from either entity, and where there is no common (or any) proof of BNBM PLC product defect or damages. To proceed as the PSC suggests would disregard the "rigorous analysis" needed to justify class certification. Instead, the Court must consider which class members have claims against which Chinese Defendant, as well as the process needed to determine liability and, if appropriate, damages. As demonstrated in the Chinese Defendants' prior submissions, and as further demonstrated here, the *Amorin* plaintiffs cannot sustain their Rule 23 burdens, and the class should be decertified.

## ARGUMENT

### I. The Class Is Not Sufficiently Numerous As To The BNBM Entities.

Requisite for any class certification is proof that "the proposed class [is] so numerous that the joinder of all members is impracticable. Plaintiffs are required to make more than a mere allegation that the class is too numerous to make joinder impracticable." *Chauvin v. Chevron*

2

*Oronite Co., LLC*, 263 F.R.D. 364, 368 (E.D. La. 2009).  In their notice of joinder, BNBM PLC and BNBM Group explained the numerosity requirement is not met here because fewer than 70 property owners identified "BNBM" or "Dragon Brand" drywall in their home.  (Rec. Doc. 18883, at 4-5).  In response, the PSC simply ignores the record, incorrectly claiming that "the defendants have not contested numerosity given that there is no basis to do so."  (Rec. Doc. 20652-2, at 9).  Beyond this puzzling denial, the PSC offers no argument supporting numerosity.

As the BNBM Entities demonstrated, ***fewer than 70 property owners*** of the more than 4,000 *Amorin* plaintiffs identified "BNBM" or "Dragon Brand" drywall in their home, and only a fraction of them have presented evidence of remediated damages falling within the class definition.  (Rec. Doc. 18028, Class FOFCOL, at ¶ 79 (limiting class to plaintiffs "asserting claims for remediated damages")).  The PSC has ***never*** disputed these numbers, despite its extensive review of the profile forms for each class member.  (Rec. Doc. 20652-2, at 9).

Fewer than 70 Plaintiffs does not satisfy the numerosity requirement.  *See Baroni v. BellSouth Telecomm, Inc*., No. 02-cv-009, 2004 WL 1687434, at *3-4 (E.D. La. Jul. 27, 2004) (holding proposed class of "sixty persons" insufficient); *see also* Rec. Doc. 18883, at 4-5 (citing cases).  Each potential class member is easily identifiable, all but two live in Florida, and each is a named plaintiff that has appeared in this suit and whose address is known.  (Rec. Doc. 18883, at 5-6).  *See Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980) ("Practicability of joinder depends on size of the class, ease of identifying its members and determining their addresses, facility of making service on them if joined and their geographic dispersion.").  Moreover, this is not a situation where the individual claims are so small that they would not be pursued in the absence of a class proceeding.  Each of the class members are litigants in their own right, with claims sufficiently large to justify litigating them even if class treatment is denied.  In these

circumstances, the numerosity test is not satisfied. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("[T]he Advisory Committee [for Fed. R. Civ. P. 23] had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.").

## II. The PSC Has Not Shown Common Issues Predominate Across The Class.

The PSC has not demonstrated that there are questions of law or fact, common to all class members, which predominate over individual determinations.

### A. BNBM PLC and BNBM Group Are Not Liable For Each Class Member's Claimed Damages.

In assessing whether class treatment is appropriate, the Court must consider whether Plaintiffs can prove liability and damages on a common basis that predominates over individual determinations. Fed. R. Civ. P. 23(b)(3). In making that assessment, the Court cannot alter the nature of the substantive proof required to prove up a claim for relief. *Amchem*, 521 U.S. at 613 ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure shall not abridge, enlarge or modify any substantive right[.]"). But in its zeal to force-fit this case into a class action mold, the PSC seeks to end-run its substantive proof requirements by eliminating its burden to prove liability as to non-defaulted defendants, and by relying on extrapolated damage even where actual cost data is available.

The PSC's arguments attempting to foreclose all inquiry into liability is astonishing and reveals the procedural roadblocks that prevent an award of class damages against BNBM PLC and BNBM Group. The PSC acknowledges that the *Amorin* class is comprised of at least six separate civil actions and that each action involves at least one non-defaulting Chinese Defendant. (Rec. Doc. 20652-2, at 10). The PSC also admits that it must establish liability as

4

well as damages as to any non-defaulting defendant. *Id*. at 11 ("Plaintiffs here do not claim that non-defaulting defendants are not entitled to adjudicate on the merits."). Thus, a final judgment in the six actions would therefore be premature because "judgment should generally not be entered against the defaulting defendant until the matter has been adjudicated as to all defendants." *Martinez v. Brownsville Doctors Hosp., LLC*, No. 12-cv-167, 2013 WL 12174046, at *2 (S.D. Tex. Aug. 29, 2013) (citing *Frow v. De La Vega*, 82 U.S. 552, 553 (1872)).

The logical conclusion from those undisputed points is that the PSC has not established liability *for each defendant in each action* and liability therefore is not a common issue among all class members, let alone a predominating one. The PSC, however, turns this self-evident proposition on its head and instead claims that "[a]ll liability issues in these proceedings have been determined under Rule 55(b)(2)(B)." (Rec. Doc. 20652-2, at 13-14). The PSC's basis for this assertion is founded on its filing of multiple "omnibus" complaints:

> Defendants argue that, because there is at least one non-defaulted Defendant in each action, commonality is defeated because allegedly the non-defaulting Defendants are permitted to challenge liability and causation. This argument presents a distinction without a difference because all of these defendants have been defaulted in one or more of the Omnibus Chinese Drywall class actions, each alleging the same causes of action.

*Id*. at 10. In other words, the PSC seeks to use the procedural mechanism of an omnibus complaint to eliminate the substantive requirement that it prove up liability as to each and every defendant in each and every action. That stands in direct contravention of the Rules Enabling Act, which prohibits the use or procedural rules to alter or modify any substantive rights. *Amchem*, 521 U.S. at 613.

A default in one action cannot—as a matter of constitutional law—foreclose a merits challenge in other actions. *See Universal Am. Barge Corp. v. J-Chem, Inc*., 946 F.2d 1131, 1136 (5th Cir. 1991) ("[T]he due process clause of the United States Constitution protects the right to

5

a full and fair hearing on an issue, and therefore collateral estoppel cannot be applied against a party as to issues not fully and fairly litigated."). The PSC's repeated labeling of separate actions as "omnibus" does not change this fact: "a case may have one operative pleading only; plaintiffs may not add to a complaint in piecemeal fashion." *Maffiola v. State Farm Ins. Co.*, No. 09-CV-287-VIS, 2009 WL 2983059, at *1 (W.D. Wis. Sept. 14, 2009); *see also Cherry v. D.B. Zwirn Special Opportunities Fund, L.P.*, No. 8:09-CV-33-T-33EAJ, 2009 WL 3231260, at *3-4 (M.D. Fla. Oct. 2, 2009) (vacating prior default in part because "[d]uring the firestorm of filings by Plaintiffs . . . the identity of the operative complaint was uncertain"). Plaintiffs cannot mix and match the various MDL cases in order to impose defaults on all defendants in every case or to preclude the BNBM Entities from defending the merits of cases where they have not defaulted.

Beyond that, the PSC's attempt to use any prior defaults against BNBM PLC or BNBM Group is invalid for lack of personal jurisdiction. *Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d 389, 393 (5th Cir. 2001); *see also* Rec. Docs. 19646-1, 19649-3. Although the PSC asserts that the BNBM Entities are subject to jurisdiction as "alter egos" of Taishan, the evidentiary record is to the contrary. (*See* Rec Docs. 19646-1, 19649-3). The PSC's sole basis for their "alter-ego" contentions at this point is their reliance on so-called "deemed admissions" by Taishan, which as a matter of law cannot be used to bind the BNBM Entities or impose alter-ego liability on them. *See Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997); *see also* Rec. Doc. 19646-1, at 5.

Finally, evidence presented to the Court—and not disputed by the PSC—shows neither BNBM Entity harmed any class member, much less on a class-wide basis. BNBM Group did not manufacture drywall during the relevant period, and there is no evidence that BNBM PLC's drywall was defective. The PSC has never presented evidence to contradict testing by the

6

Lawrence Berkley National Laboratory, working at the direction of the Consumer Products Safety Commission, which confirmed that BNBM PLC drywall emissions were within acceptable levels and on a par with U.S.-manufactured drywall. Because there is no class-wide proof of product defect, class members must show defects in BNBM PLC drywall on a case-by-case basis, thereby precluding Rule 23 treatment.

### B. The PSC Does Not Dispute The Need For Individual Damage Determinations.

The Fifth Circuit has made clear that the primary consideration in assessing the predominance requirement is whether the proceedings ultimately would "degenerat[e] into a series of individual trials." *Bell Atlantic Corp.*, 339 F.3d at 302 (quoting *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003)). The PSC does not dispute that non-remediation damages, such as alternative living expenses, loss of use, etc., must be made on an individualized, plaintiff-by-plaintiff basis. (Rec. Doc. 20652-2). The PSC has even represented to the Court—and the BNBM Entities do not disagree—that remediation damages, at least for some class members, must also be done on an individualized basis. (Rec. Doc. 19705-1, at 2 ("[T]he PSC requests that the Court consider, at this time, entering a trial schedule to determine individualized damages, which include the damages claims for those Class Members whose remediation and non-remediation claims were not considered at the June 9, 2015 hearing[.]")). In other words, the PSC has itself repeatedly conceded that "individualized damages trials" will be needed in any event. *See, e.g.*, Rec. Doc. 19705-1, at 2 ("[I]t is undisputed that individualized damages trials are the only procedures available to resolve and quantify these Class Members' damages."). In these circumstances, common issues do not predominate. And if individualized trials will be needed, it is hard to see how a Rule 23 class action is "superior to other available methods for fairly and efficiently adjudicating the

7

controversy." Fed. R. Civ. P. 23(b)(3).

The PSC does not and cannot explain why class treatment is appropriate when all parties agree each plaintiff ultimately must prove up non-remediation damages—and at least some class members must prove up *all* damages—through an individual trial. Remediation damages for a particular property can be more efficiently and accurately determined during those proceedings, along with the plaintiff's claim for other, non-remediation damages, where they can properly present proof of their actual remediation costs rather than relying on grossly unreliable extrapolations. *See infra*, Section II.C.2. Indeed, the PSC previously represented that resolving the "individualized damage claims . . . will require significant resources of the Parties and the Court." (Rec. Doc. 19705-1, at 6). As a result, the individual assessments needed for a damages award predominate over any issues common to the class, defeating class certification.

## C. The PSC Cannot Establish Remediation Damages For Each Class Member Through Proof Common To The Class.

The PSC ignores the impact of the June 9, 2015 damages hearing and the subsequent briefing and submissions relating to the proper calculation of remediation damages. Those proceedings have demonstrated that the PSC's estimate-based calculation for class remediation damages cannot stand. Damages must be calculated on a property-by-property basis using actual evidence, and class treatment of those inquiries is inappropriate. The Fifth Circuit has "repeatedly held that where fact of damage cannot be established for every class member through proof common to the class, the need to establish . . . liability for individual class members defeats Rule 23(b)(3) predominance." *Bell Atl. Corp.*, 339 F.3d at 302.

### 1. The PSC's Use Of *Germano* Damages Is Improper And Contrary to Precedent.

Notwithstanding the PSC's demonstrably incorrect assertion that the *Germano* properties

8

were "a representative sampling"[1] for the class, remediation damages simply cannot be calculated for thousands of properties across dozens of states using only a so-called "formulaic" and "mechanical" calculation based on damages in *Germano*.[2] (Rec. Doc. 20652-2, at 19-20).

First, the Court previously made clear the findings for the six *Germano* properties "only have a preclusive effect on those properties." (Rec. Doc. 576). The PSC's attempt to portray that action as a bellwether for class damages on properties nationwide is particularly without basis because neither BNBM PLC nor BNBM Group were parties to the *Germano* action and neither had an opportunity to defend on damages or anything else. Nor are those properties "representative" of the *Amorin* class in any way. As Dr. Marais explained during the June 9, 2015 hearing, the PSC has not shown it used a statistically valid sample size that was randomly selected from the entire class—an impossible feat given that each *Germano* property was located within a relatively discrete area of Virginia. (*See* Rec. Doc. 19198, at ¶¶ 67, 99-101).

Finally, representative sampling aside, the Fifth Circuit does not allow the use of damage estimates where actual costs and expenses are available. *See Cimino v. Raymark Indus., Inc*., 151 F.3d 297, 318-21 (5th Cir. 1998) (finding no "legally valid grounds on which the . . . damages suffered by one person may be determined . . . solely on the basis of the average of awards made to other persons in similar cases."). And despite the PSC's arguments, *Tyson Foods v.*

---

[1] The PSC claims Inglis and Wright allegedly based their calculations on a "representative sampling of properties" (*i.e*., *Germano* properties), but the PSC has presented no statistical evidence of a sufficiently sized random sample, and Dr. Marais' unrefuted testimony established that there was none. (Rec. Doc. 19198, at 20-21). Indeed, at the time of the damages hearing, the PSC took a directly contrary position and were emphatic that "statistical sampling . . . has no bearing on Inglis' damages estimate.") (Rec. Doc. 19062-1, at 2); *see also id*. at 12-13 (" Mr. Inglis' methodology does not, as a factual (or engineering) matter, employ sampling or extrapolation[.]"). The PSC's shifting positions are irreconcilable and only further emphasize the shortcomings in their class-wide damages calculations.

[2] The PSC conflates the Court's allowance of expert testimony subject to a *Daubert* challenge as the same as its acceptance and use of that testimony at trial or during a damages hearing. (Rec. Doc. 20652-2, at 20 n. 11 ("[Wright's] formulaic methodology was approved again by the Court in 2015 in denying the Taishan defendants' Daubert motion."). But they are not the same. *See Tunica Web Advertising, Inc. v. Barden Mississippi Gaming, LLC*, No. 03-cv-234-SA-JAD, 2008 WL 3833225, at *3 (N.D. Miss. Aug. 8, 2008) ("[A] ruling under *Daubert* does not mean that the Court will automatically accept the expert's opinion at trial.").

9

*Bouaphakeo*, 136 S. Ct. 1036 (2016), only reaffirmed that principle. In that case, the Supreme Court allowed the use of estimates to calculate class damages only "to fill an evidentiary gap created by the [defendant's] failure to keep adequate records." *Id*. at 1047. No evidentiary gap exists here, at least not one created by BNBM PLC or BNBM Group. Most of the plaintiff properties have been remediated, and the actual costs must be used to calculate damages, not extrapolated estimates.

The PSC has never articulated a reason why actual remediation cost data for each class member is not available and could not be used to calculate damages more precisely than Inglis' and Wright's ballpark estimate. That is, however, exactly what the Supreme Court and the Fifth Circuit require. *See, e.g.*, *Volkswagen of Am., Inc. v. Robertson*, 713 F.2d 1151, 1169 (5th Cir. 1983) ("Where invoices, statements, or records of accounts expended in the repair of damages are in the possession of plaintiff or are available or attainable, such records constitute the best evidence and should be offered in proof of plaintiff's claim."). Here again, the PSC is improperly attempting to use Rule 23 procedure to alter or modify substantive proof requirements, and that effort must be rejected. *Amchem*, 521 U.S. at 613.

**2. The PSC's Damages Calculations Are Demonstrably Wrong.**

Legal insufficiency aside, the PSC continues to press its Wright/Inglis remediation estimates even though it knows those estimates are inaccurate. Simply put, properties vary and the amount of drywall within a particular property varies, as well. But the PSC's estimates ignore those distinctions and "mechanically" calculate damages based only on under-roof, total square feet.

At the damages hearing, BNBM PLC and BNBM Group established that Mr. Inglis' damages estimates were unreliable. Mr. Pogorilich, an expert in construction estimating,

testified that remediation costs could only be accurately determined with a site-specific, individual inspection of each home property to determine the layout, the finishes, ceiling height, and other details. Neither Mr. Inglis nor Mr. Wright account for these factors in their formula.

Moreover, Dr. Marais, an expert in statistics, compared damages estimates for *Knauf* properties using Mr. Inglis' formula with that of actual remediation costs. Dr. Marais testified—and the PSC has never contradicted—that Mr. Inglis' formula overstated actual aggregate remediation damages by nearly 30% and was utterly inaccurate in projecting actual costs for each individual property, with wide variations. This outcome is not surprising given that Mr. Inglis failed to use a representative sample of properties for his calculation and failed to account for the obvious variations in each class property. As such, Mr. Inglis' formula is unacceptable and individual determinations for each class member is necessary.

### 3. The PSC Has Not And Cannot Refute The Difference In State Laws.

Variations in state law, which the PSC concedes exist, are not a "manageability" issue. This Court must consider the variations that would affect each class member and determine whether they "swamp any common issues and defeat predominance." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996). "Given the plaintiffs' burden, a court cannot rely on assurances of counsel that any problems with predominance or superiority can be overcome." *Id*.

The PSC insists there are no state law variations for remediation damages because the courts in *Germano* and *Hernandez* both permitted them. (Rec. Doc. 20652-2, at 21-22). But the availability of remediation damages in Virginia and Florida is only the tip of the iceberg. The PSC says nothing about the vast majority of states involved and does not dispute the extensive law presented in prior briefing demonstrating the numerous differences. (Rec. Doc. 20627-1, at 19-22). Moreover, even if a state does permit remediation damages, there are limits to such

11

damages and varying methods to calculate them. *Id*. The PSC does not address any of these issues. They have thus failed to refute that these state variations will "swamp" common issues among the class.

## CONCLUSION

WHEREFORE, for all the reasons set forth above, as well in briefing of BNBM PLC's and BNBM Group's prior notice of joinder, and in briefing from all other Chinese Defendants, BNBM PLC and BNBM Group respectfully request that the Court alter its prior certification order and decertify the *Amorin* class.

Dated: February 22, 2017

Respectfully submitted,

**DENTONS US LLP**

By: */s/ Michael H. Barr*
Michael H. Barr
New York Bar No. 1744242
Justin N. Kattan
New York Bar No. 3983905
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
michael.barr@dentons.com
justin.kattan@dentons.com

- AND -

Richard L. Fenton
Illinois Bar No. 3121699
Leah R. Bruno
Illinois Bar No. 6269469
233 South Wacker Drive
Suite 5900
Chicago, IL 60606-6306
Telephone: (312) 876-8000
Facsimile: (312) 876-7934
richard.fenton@dentons.com
leah.bruno@dentons.com

- AND -

C. Michael Moore
Texas Bar No. 14323600
Matthew T. Nickel
Texas Bar No. 24056042
2000 McKinney Ave, Suite 1900
Dallas, TX 75201
Telephone: (214) 259-0900
Facsimile: (214) 259-0910
mike.moore@dentons.com
matt.nickel@dentons.com

**- AND -**

**PHELPS DUNBAR LLP**
Harry Rosenberg
Louisiana Bar No. 11465
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Facsimile: (504) 568-9130
harry.rosenberg@phelps.com

*Attorneys for Beijing New Building Material (Group) Co., Ltd. and Beijing New Building Materials Public Limited Company*

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing **Beijing New Building Materials Public Limited Company's and Beijing New Material (Group) Co., Ltd.'s Reply In Support Of Motion To Decertify** has been served on Plaintiffs' Liaison Counsel, Leonard Davis, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this February 22, 2017.

                                                                                                  */s/*     Michael H. Barr