**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:   CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**THE PLAINTIFFS' STEERING COMMITTEE'S
REPLY TO RESPONSES AND OPPOSITIONS BY TAISHAN,
THE CNBM ENTITIES, BEIJING NEW BUILDING MATERIALS
PUBLIC LIMITED COMPANY, BEIJING NEW BUILDING MATERIAL
(GROUP) CO, LTD., AND JUSHI USA FIBERGLASS CO., INC. TO
MOTION TO REMOVE CONFIDENTIALITY DESIGNATION
WITH RESPECT TO DOCUMENTS PRODUCED BY AND TESTIMONY
OF THE TAISHAN DEFENDANTS AND THIRD PARTIES**

**MAY IT PLEASE THE COURT:**

The Plaintiffs' Steering Committee ("PSC") files this Reply to the various responses and oppositions filed by Taishan,[1] the BNBM Entities,[2] the CNBM Entities,[3] and Jushi USA Fiberglass Co., Inc. ("Jushi") (collectively referred to as the "Producing Parties"). These entities have improperly marked the documents they produced as Confidential or Highly Confidential-Restricted Information. The Producing Parties' assertions should be rejected by this Court.

---

[1] Taishan includes:  Taishan Gypsum Co., Ltd. ("TG") and its wholly-owned subsidiary and alter ego Taian Taishan Plasterboard Co., Ltd. ("TTP").

[2] The BNBM Entities include:   Beijing New Building Materials Public Limited Company ("BNBM PLC") and Beijing New Building Material (Group) Co., Ltd. ("BNBM Group").

[3] The CNBM Entities include: China National Building Materials Co. Ltd. ("CNBM"), China National Building Materials & Equipment Import & Export Corp. ("CNBM Import & Export"), CNBMIT Co., Ltd. ("CNBMIT"), CNBM Forest Products (Canada) Co., Ltd. ("CNBM Forest (Canada)"), CNBM USA Corp. ("CNBM USA"), United Suntech Craft, Inc. ("United Suntech").   On March 10, 2016, the Court dismissed China National Building Material Group Corporation ("CNBM Group") for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act (Rec. Doc. 20150).

It has been more than seven years into this litigation and the Chinese defendants continue to attempt to litigate under the laws of China.   It is time that the Chinese cloak of secrecy be lifted in these proceedings.   It is time the abused have answers and the public have the ability to see what we lawyers have witnessed.   It is time to recognize that the defendants have no sound reason to prevent disclosure of the documents at issue.   The disclosure of the documents are no longer prevented by the so-called Chinese Secrecy Law.   They have no proprietary interest or trade secret in their delivery of the defective drywall which is the subject of this litigation.

The Producing Parties' overbroad confidentiality designations act as nothing more than a blanket to cover relevant information required to be produced in the normal course of discovery. Confidentiality is not warranted for any of the challenged documents. The documents at issue include, primarily, articles of incorporation, meeting minutes, and annual reports, all of which are non-confidential by nature.   The Producing Parties offer no substantive insight into the undue burden, harassment, or annoyance, they would experience if these particular documents were made publicly available.   Further, they fail to meet their burden under Pre-Trial Order No. 16 ("PTO 16") and Federal Rule of Civil Procedure 26.   As it stands, their improper designations burden the PSC, prolong discovery, and deprive the public and, more importantly, 4,000 Chinese Drywall Plaintiffs from relevant information.

The Producing Parties assert that the PSC "gives no reason related to this litigation as to why the documents should be stripped of this protection." Rec. Doc. 20653 at 4 (emphasis in original).   The Producing Parties have failed to recognize the specific requirements of both the Federal Rules of Civil Procedure and PTO 16, which provide that the Producing Party bears the burden of appropriately designating documents.   The sheer quantity of documents involved is

especially important and the burden must remain with these Producing Parties.  *See Storage Technology Corp. v. Custom Hardware Engineering & Consulting, Inc.,* No. Civ.A. 02–12102–RWZ, 2003 WL 21975102, *1 (D. Mass. Aug.19, 2003) ("the burden is properly on [the designating party] to fix the problem" of improperly designating documents as confidential); *In re ULLICO Inc. Litig.,* 237 F.R.D. 314, 318 (D.D.C. 2006). The party seeking discovery protection bears the burden to show "the necessity of its issuance, which contemplates a particular and specific demonstration of fact[.]" *Cazaubon v. MR Precious Metals, LLC*, 14-2241, 2015 WL 4937888, at *2 (E.D. La. Aug. 17, 2015) (quoting *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir.1998)); *Francisco Mendoza, et al v. Old Republic Insurance Company, et al*, No. 16-17743, 2017 WL 636069, at *3 (E.D. La. Feb. 16, 2017) (citation omitted).

## I.  THE PSC HAS FULLY AND COMPLETELY COMPLIED WITH PRE-TRIAL ORDER NO. 16, INCLUDING MEET AND CONFER PROVISIONS

### A.  Taishan, the CNBM Entities and the BNBM Entities

Taishan's Response in Opposition to the PSC's Motion to Remove Confidentiality Designations [Rec. Doc. 20654] created further delay in these proceedings by once again asserting further meet and confers are necessary and that the PSC failed to complete the mandated meet-and-confer process pursuant to PTO 16.   Taishan acknowledges that "the PSC started" the procedures required by PTO 16, but asserts that it "did not finish" the procedures.   The CNBM Entities assert that the PSC "abandoned midstream the meet and confer process required by PTO 16," the PSC's motion is premature, the challenged documents are properly designated as confidential, and the PSC has exaggerated its inability to use the alleged confidential documents.   [Rec. Doc. 20658] In addition, the CNBM Entities assert that the PSC failed to address the documents individually. Further, they improperly attempt to shift their burden to the Plaintiffs.   The BNBM Entities then

3

pile on and assert, among other things, that the "PSC's motion is premature, unnecessary, and intended to do little more than to cast the Defendants in a negative light as the Court prepares its rulings on class damages and personal jurisdiction."   [Rec. Doc. 20653]   The reality of the situation is that the PSC undertook in good faith the requirements set forth in PTO 16.   Taishan, the CNBM Entities and BNBM Entities, however, failed to act accordingly and, therefore, the PSC's instant motion is the natural step for the PSC to take in order to comply with PTO 16.

The purpose of the PSC's motion is not to cast the Defendants in a negative light.   The record is replete with evidence of conduct (or the lack thereof) by Taishan, the CNBM Entities and BNBM Entities, about which the Court may draw its own conclusions. These Defendants have engaged in a pattern of obfuscation, designed to evade legal responsibility for their defective products shipped to the United States, including, but not limited to, (i) ignoring complaints properly served on them through the Hague Convention, (ii) sitting on the sidelines while default judgments were entered against them, (iii) allowing a $2.7 million judgment to be entered against Taishan in *Germano* on behalf of seven families, (iv) having Taishan and its wholly-owned subsidiary TTP enter their appearances in the litigation to contest personal jurisdiction over them and to vacate the *Germano* judgment against Taishan and a default judgment in *Mitchell*, with no intention of satisfying any valid judgment in the event they were unsuccessful, (v) appealing this Court's personal jurisdiction rulings to the Fifth Circuit, (vi) firing their national and local counsel, after having lost in the Fifth Circuit Court of Appeals, in all cases pending in the U.S. "immediately," as soon as the *Germano* judgment became final, and (vii) refusing to appear before Your Honor in open court for a judgment debtor examination.[4]

---

4  *See e.g.* transcript of 1/22/2015 Status Conference [Rec. Doc. 18276] [Contempt Ex. 1] at 20; Judgment Holding Defendant-Judgment Debtor in contempt of court, both criminally and civilly [Rec. Doc. 17869]; Defendants refusal

PTO 16 was issued by this Court on September 25, 2009 [Rec. Doc. 288].   Its purpose was "[t]o expedite the flow of discovery materials, facilitate the prompt resolution of disputes over confidentiality, protect material entitled to be kept confidential, and ensure that protection is afforded only to material entitled to such treatment, pursuant to the Court's authority under Fed.R.Civ.P. 26(c), and with the consent of the parties."   Unfortunately, the Producing Parties' litigation strategies negated the spirit of PTO 16.   Respectfully, it is time to now rule on the merits of the instant matter.

B.    **Jushi USA Fiberglass Co., Inc.**

Jushi also opposed the PSC's Motion, but did not provide any insight into the confidentiality designations at issue.   Jushi's objection is premised on a single due process argument: the PSC never served the motion on non-party Jushi.   Jushi's understanding of service requirements in this case is flawed. The PSC's service of the instant Motion satisfies all service requirements of PTO 6, as well as federal law.   On December 21, 2016, the PSC filed the instant Motion through File and Serve as required by PTO 6, paragraph 7: "…[A]ny document electronically served via File & Serve pursuant to this Order shall be deemed to have been served under the Federal Rules of Civil Procedure." (paragraph 7, PTO 6).   Furthermore, copies were provided to Defendants' Liaison

---

to appear and further participate in these proceedings [Rec. Doc. 17869] at 2 (citing statements by Taishan's counsel in open court and in a brief filed with the Court [Rec. Doc. 17846]); Orders handed down by CNBM Group to all subsidiaries advising them not to put money in any New York banks and not to use company email accounts but rather only their personal emails when communicating overseas for business purposes (*see* 7-11-2014 CNBM Group Resolution No. 17 of the 3rd Session of the Board of Directors of CNBM Group ("CNBM Group Resolution No. 17") [Contempt Ex. 5]; Taishan chose to ignore these proceedings for over a year and allowed multiple default judgments to be entered not only in *Germano* [Rec. Doc. 487], but also in other purported class actions in this MDL, including *Mitchell* [Rec. Doc. 277] and *Gross* [Rec. Doc. 7302]; Taishan's parent companies, CNBM Group, CNBM, BNBM Group and BNBM, ignored complaints properly served through the Hague Convention and also allowed multiple default judgments to be entered against them.   *See* Rec. Docs. 487, 3013, 17814, 17815 (Taishan Defaults), 17814, 17815 (TTP Defaults), *In re: Chinese-Drywall Products Liab. Litig.*, 2014 WL 4809520, *2-*3 (E.D. La. Sept. 26, 2014) discussing default judgments against Taishan and its affiliates and including chart of cases where these entities have been held in default; Court ordered second round of depositions of Taishan witnesses in Hong Kong under the Court's first-hand supervision.

Counsel, Harry Rosenberg.   At the time of filing, the PSC owed no distinct service duty to Jushi. Any deviation from this Court ordered streamlined service process would have violated court orders. PTO 6, paragraph 20, states: "Effective immediately, all service of documents filed in the MDL shall be made via File & Serve. Attorneys who fail to register will no longer receive service of documents filed in the MDL."

Jushi attempts to circumvent the service instructions outlined in PTO 6 to require a specific form of personal service under Fed. R. Civ. P. 45 because the confidential documents at issue were obtained using the subpoena power under that Federal Rule.   To purportedly support this attenuated service theory, Jushi cites to three cases.   In every case, the question presented is whether a court can compel a third-party to produce documents in the first place. *See Bounds v. Capital Area Family Violence Intervention Ctr., Inc.,* 314 F.R.D. 214, 217 (M.D. La. 2016)(considering the scope of a subpoena); *In re Domestic Drywall Antitrust Litig.,* 300 F.R.D. 234, 238 (E.D. Pa. 2014) (finding subpoena did not subject nonparty to undue burden, as it was subject to modifications and conditions of court's protective order); *Whitley v. Pinnacle Entm't, Inc.,* No. CV 15-595-BAJ-RLB, 2016 WL 6154938, at 1 (M.D. La. Oct. 21, 2016) (denying a Motion to Compel Production of Subpoenaed Documents due to defective personal service where the Louisiana Secretary of State failed to send a copy of the subpoena to the third-party by certified mail or otherwise).   None of these cases stands for the proposition that Rule 45 requires a heightened service standard for subpoenaed nonparties under these facts.   *See Select Creations, Inc. v. Paliafito America, Inc.,*   852 F. Supp. 740 (E.D. Wis. 1994) ("Nonparty need not be formally served with injunction to trigger aider and abettor liability for violating court order; all that is required is that aider and abettor be given fair notice that acting in concert with named defendants

subject them to contempt proceedings.").

There is no doubt of the legality of the underlying subpoena.   At the March 17, 2015 special hearing, the Court ordered an Expedited Oral and Videotaped Deposition of Jushi. On May 14, 2015, following the Court's directive and Rule 45, the PSC subpoenaed a representative of Jushi to appear with certain documents for a 30(b)(6) deposition. The PSC served notice of that deposition. At that time, Jushi raised no issue as to the service of the subpoena or request for documents related to the deposition. Only now does Jushi assert the PSC should have engaged in a heightened service process for all future motions concerning non-parties.   Jushi is no stranger to this litigation, and its due process arguments are meritless.   Jushi has been put on notice of confidentiality challenges almost a year ago, on February 22, 2016, when the PSC sent a courtesy letter to Jushi's counsel Michael McNamara that it objected to certain Jushi confidentiality designations.

## II.    THE   PSC   PROPERLY   CHALLENGED   THE   CONFIDENTIALITY DESIGNATIONS IN ACCORDANCE WITH PRE-TRIAL ORDER NO. 16

The entry of PTO 16 does not prevent any party from seeking further review pursuant to Fed.R.Civ.P. 26(c) (*see* paragraph 4 of PTO 16).   PTO 16 specifically addresses the designation of Confidential or Highly Confidential-Restricted Information.   Paragraphs 6 and 8 of PTO 16 are similar:

> 6. "Confidential Information" as used herein means any information that the Producing Party believes in good faith constitutes, reflects, discloses, or contains information subject to protection under Fed. R. Civ. P. 26(c) or other applicable law, whether it is a document (electronic or otherwise), information contained in a document, information revealed during a deposition or other testimony, information revealed in an interrogatory response, or information otherwise revealed. In designating discovery materials as Confidential Information, the Producing Party shall do so in good faith consistent with the provisions of this Protective Order and the rulings of the Court, and shall not be overly broad in designating information as Confidential Information under this Protective Order.

7

8. "Highly Confidential-Restricted Information" as used herein means any information that the Producing Party believes in good faith constitutes, reflects, discloses, or contains information subject to protection under Fed. R. Civ. P. 26(c) or other applicable law, and that contain highly sensitive and competitive information, the disclosure of which to persons other than those designated in this Protective Order would pose a substantial risk of serious harm, economic or otherwise, to the Producing Party. In designating discovery materials as Highly Confidential-Restricted Information, the Producing Party shall do so in good faith consistent with the provisions of this Protective Order and the rulings of the Court, and shall not be overly broad in designating information as Confidential Information under this Protective Order.

In two separate sentences, in both paragraphs 6 and 8 of PTO 16, the Court requires "good faith." Further, the Court specifically requires that the Producing Party's good faith designations "shall not be overly broad in designating information as Confidential Information." With these premises in mind, Taishan, the CNBM Entities, and the BNBM Entities have violated PTO 16. Without basis, they marked thousands of documents as confidential. PTO 16 provides the means and procedure to challenge those improper designations.

Paragraph 28 of PTO 16 sets forth the procedure for challenging or objecting to the priority of confidential designations. It requires that a party may object by serving a written objection on the Producing Party's counsel. This was done by the PSC on February 22, 2016, when the PSC notified Bernard Taylor and Alan Dean Weinberger (counsel for Taishan); Michael Barr, C. Michael Moore and Harry Rosenberg (counsel for the BNBM Entities); Christopher Vejnoska, James Stengel and Ewell Eagan, Jr. (counsel for the CNBM Entities); and Michael McNamara (counsel for Jushi), "that objections are made to the designation of certain materials as Confidential or Highly Confidential-Restricted." In its letter, the PSC requested that the Producing Parties that asserted confidentiality designations respond to such objections within ten (10) calendar days by either (a) agreeing to remove the designation; or (b) stating the reason(s) for such designation and

further, if a stated reason was given, that the Producing Party identify what "good cause" exists for the designation at issue and provide a complete explanation as to why the material is entitled to protection under the purported designation.   PTO 16 states that if the Objecting Party and Producing Party are subsequently unable to agree upon the terms and conditions of disclosure for the material(s) at issue after meeting and conferring, the Objecting Party may move the Court for an order striking the designation within ten (10) days after written notice that the parties meet and confer efforts have ended.

On May 11, 2016, Taishan's counsel responded to the PSC letter.   For the vast majority of documents, Taishan maintained its assertion that the materials were confidential and cited, among some of the reasons: "confidential shareholder resolution of a private company," "confidential corporate formation documents of a private company," "confidential meeting summary of a private company," or "confidential analysis regarding U.S. drywall litigation."   This was not a good cause identification, nor was it a complete explanation as to why the materials were entitled to confidential protection.   Furthermore, Taishan stated that it only waived confidentiality as to the English translations provided by the PSC and the portion of the original document that is translated in the exhibits listed by the PSC.   Taishan did not agree to waive confidentiality as to any untranslated or machine-translated portions of the original Chinese documents.   Taishan also did not agree to waive the confidentiality designations for any portions of depositions outside of the PSC's cited excerpts.   In an attempt to further delay matters, Taishan suggested an additional meet and confer process.

On March 3, 2016, the CNBM Entities agreed to remove translations for portions of certain documents identified in Exhibit "A" attached to the PSC February 22, 2016 letter. They refused to

release any confidentiality as to documents in Exhibit "B" and further refused to remove confidential designations as to the vast majority of the depositions identified in Exhibit "C" both of which were attached to the PSC February 22, 2016 letter.   The CNBM Entities continue to maintain their assertion that almost all documents are to remain confidential, citing reasons in only broad generalities as opposed to providing a complete explanation as to why the material is entitled to protection.   Though a brief reason may have been given in a chart listing the documents, the CNBM Entities failed to identify what good cause exists for the designation.   The CNBM Entities further continue their tactic of delay by suggesting additional meet and confer sessions.

Though the PSC first challenged BNBM confidentiality designations on August 25, 2015, and BNBM responded on September 11, 2015, due to the inadequate responses and in a further effort to comply with PTO 16, the PSC sent an additional request to the BNBM Entities' counsel in a letter dated February 22, 2016, again challenging improper designations.   In response, on March 18, 2016, the BNBM Entities provided a chart setting forth insufficient, short non-descript explanations, including designations: "internal company communication," "internal corporate communication designated as confidential at time of creation," "internal document relating to company strategy and decision making," and "discloses corporate strategy for a non-public company."   They failed to identify a good cause or explanation.   Essentially, the responses were non-responsive and designed to further delay the process.   In keeping with their *modus operandi,* they requested still more meet and confers.

The PSC has categorized the majority of the Producing Parties' various objections and has stated reasons for confidentiality by topic.   As set forth in Exhibit "B" attached hereto, the PSC has provided an explanation for each separate document and provided a response to the asserted

confidentiality objection set forth by the Producing Party.   Exhibit "B" further supports the PSC's

letter of February 22, 2016 that was sent to each Producing Party.

<u>**CATEGORIES OF OBJECTIONS BY PRODUCING PARTY DEFENDANT**</u>

**Taishan**
- Meeting minutes or resolutions of private company- 33 documents
- Documents regarding CDW litigation- 7 documents
- Documents regarding financial analysis/transactions- 7 documents

**CNBM**
- Info regarding non-public company- 23 documents
- Info regarding audits- 4 documents
- Contains bank account info- 8 documents
- Internal company documents- 7 documents

**BNBM- Responses to PSC's Challenges**
- Chinese regulatory requirements- 19 documents
- Info regarding Non-public company- 15 documents
- Internal company communications- 6 documents

**BNBM- Depos**
- Chinese regulatory requirements- 4 documents
- Info regarding Non-public company- 62 documents
- Internal company communications- 12 documents
- CNBM Group documents- 7 documents

**III.   <u>THE MATTER IS PROPERLY BEFORE THE COURT PURSUANT TO PRE-TRIAL ORDER NO. 16 AND IS RIPE FOR DETERMINATION</u>**

Based on the Producing Parties' intransigence, additional meet and confer sessions would

not be fruitful and would only serve to delay these proceedings.   At this point, the Court's

intervention is necessary pursuant to PTO 16.   There has been enough meet and confers.

Paragraph 28 of PTO 16 provides that when the Objecting Party files a motion "<u>the</u>

<u>Producing Party</u> shall have the burden of proving what 'good cause' exists for the designation at

issue and that the material is entitled to protection as Confidential or Highly Confidential-Restricted

11

Information under applicable law." (Emphasis supplied). The Producing Parties here have failed to comply.   In fact, they are attempting to rewrite PTO 16 by placing the burden on the PSC.   The Producing Parties have attempted to shift the burden to the PSC by not proving what "good cause" exists for the confidential designations.

Paragraph 28 of PTO 16 further provides that a Receiving Party does not waive its right to challenge a confidential designation by electing not to raise a challenge promptly after the original designation is disclosed and may challenge a designation at such time as the Receiving Party deems appropriate.   This is precisely what the PSC has elected to do.   Since February 22, 2016, the Court issued several stay orders and directed the parties to attempt to negotiate on other more pressing issues.   Even during the stay period, there were meetings and conversations that took place with Taishan, the CNBM Entities and the BNBM Entities, including those on April 19-20, 2016, May 19, 2016, May 24, 2016, June 21-22, 2016, July 12-14, 2016, July 25-26, 2016, August 9-10, 2016, August 29, 2016, September 20-21, 2016 and October 19, 2016.   Once it became apparent that the Producing Parties were not acting in good faith, the PSC elected to pursue its right to challenge the confidential designations.[5]

## IV.   THE RULE OF LAW EMBODIES OF EQUAL TREATMENT BEFORE THE LAW… IT IS FOUNDED ON A PREDICTABLE, TRANSPARENT SYSTEM…

Approximately 4,000 innocent property owners that have lived or are living day-in and day-out with Chinese manufactured drywall permeating their homes and their lives, are further buried under thousands and thousands of pages of documents produced in discovery and briefs submitted by Taishan, the CNBM Entities and the BNBM Entities.   So here we are, with Taishan, the CNBM

---

[5]  It is further noted that Taishan has failed to timely produce and update a confidentiality log required by paragraph 32 of PTO 16.

Entities, the BNBM Entities and those acting in active concert or participation with them, entangled arm-in-arm, in an agenda of deceit and dissembling which has given rise to sanctions and contempt. This Court should allow the litigants to be informed of full truth and not enable Chinese improper confidentiality assertions to continue to obscure the truth of over seven years of MDL litigation. If truth is a long-sought virtue, then the disclosure of materials, including the sanction materials (with full English translations), requires the removal of Confidential and Highly Confidential-Restricted Information designations.   Such disclosures are warranted under the facts and law of the case for they will reveal to innocent property owners, the public, Congress persons and Senators the history of this veiled litigation.   As Justice Lewis D. Brandeis stated "Sunlight is said to be the best disinfectants."   Harper's Weekly 1913 "What Publicity Can Do."

## V.   THE DOCUMENTS ALLEGED TO BE CONFIDENTIAL HAVE PREVIOUSLY BEEN REVIEWED AND DETERMINED NOT TO BE SECRET

On April 28, 2015, the Court was provided with Taishan Gypsum Co., Ltd.'s Discovery Status Report [Rec. Doc. 18765], which was a follow-up by Taishan to the April 24, 2015 telephonic hearing.  In the Discovery Status Report, Taishan advised that "Taishan, along with Defendants BNBM and CNBM, sought the expertise of an electronic discovery ('e-discovery') vendor with experience in U.S. federal court litigation involving companies based in China." Grant Thornton assigned U.S. Representatives for the collection and production of documents in the People's Republic of China and the Grant Thornton's U.S. and China teams developed collection and data processing protocols.   Taishan stated that "China's State Secrets Act ('SSA') requires that prior to any ESI leaving China, it must be reviewed and certified for clearance by Chinese lawyers.  Grant Thornton submitted collected ESI to a specially engaged Chinese law firm, Zhong Lun, which conducted its review on Taishan emails and certified all of them for

clearance." (Footnote omitted which stated "The non-email ESI from individual hard drives is still under review in China.")   Following this, Taishan's counsel advised in an email dated August 17, 2015 (see attached Exhibit "A"), "Please note that by operation of the Chinese States Secret Act, a determination of whether a document contains State secrets must be made by a qualified law firm in China, and such documents cannot leave the country.   As such, we at Alston & Byrd do not have access to the documents withheld, and cannot provide you to any more information about the documents other than what you have been given."

Additionally, on April 24, 2015, counsel for BNBM, in a telephone status conference, advised the Court:

> I can only tell you that this is a complicated process.   You need to find lots of people.   You need to find corporate hard drives, their hard drives.   You need to look at their personal emails.   Every one of those documents, before we can even touch them, even send them out of China, needs to be reviewed.   We have hired a specialist law firm in China to review all of these documents, every single page, page by page, for State secrets.   I'm gratified to tell Your Honor that very, very few, as is reported to us, have even triggered that.   I mean, we are talking about literally a handful of documents so far.

(Transcript page 6, line 18 through page 17, line 3.)

Furthermore, the BNBM Entities, in their Response in Opposition to the PSC's Emergency Motion to Compel Discovery filed April 14, 2015 [Rec. Doc. 18683], advised the Court "Since receiving the PSC's original document request, the BNBM Entities have already identified and gathered over 4,000 pages of responsive hard copy documents, which are in the process of being screened in compliance with the People's Republic of China's ('PRC') State Secrecy Laws and translated from Mandarin to English."   They further advised that they had engaged an e-discovery vendor with substantial experience in PRC State Secrecy Laws.   (*See* also Exhibit "C", Rec. Doc. 18683-3.)

14

As the Court is aware, the National Administration for the Protection of State Secrets, the State Secrecy Bureau of the People's Republic of China, is an institute of the State Council for the People's Republic of China that is responsible for the protection of classified information. The law on guarding State secrets defines those that concern:

1. Major policy decisions on State affairs;
2. The building of National Defense and in the activities of the armed forces;
3. Diplomatic activities and activities related to foreign countries and those to be maintained as commitments to foreign countries;
4. National economic and social development;
5. Science and technology;
6. Activities for preserving State security and the investigation of criminal offenses; and
7. Any other mattes classified as "State Secrets" by the National State Secrets Bureau.

Prior to any of the documents leaving China, all were reviewed to determine secrecy and confidentiality. Any sensitive information that required protection or confidentiality was restricted and classified. Each of the documents produced by the Producing Parties went through an extensive clearance process that required in depth investigations. As a result, the People's Republic of China has already determined that no confidential designations apply to any of these documents, and therefore, there is no basis for the Producing Parties in good faith to assert a Confidential or Highly Confidential-Restricted basis for any of the documents pursuant to PTO 16.

## VI. THE PRODUCING PARTIES' STATUS AS CHINESE CORPORATIONS DO NOT TRUMP THE FEDERAL RULES OF CIVIL PROCEDURE WHICH FAVOR DISCLOSURE

The Federal Rules of Civil Procedure govern this litigation and any reference to Chinese Law overtly or by innuendo and its applicability to discovery has no basis. Rule 26 of the Federal Rules of Civil Procedure applies. Rule 26(b)(2) defines the scope of discovery as any non-privileged matter that is relevant to the party's claim or defense and proportionate to the needs of

the case…unless otherwise limited by a court order.   The Rules of Discovery are to be interpreted with a "liberal spirit."   *Coughlain v. Lee*, 946 F2d 1152, 1159 (5th Cir. 1991) (quoting *Burns v. Thiokol Chem Corp.*, 483 F2d 300, 305 (5th Cir. 1973)).   PTO 16 further supports this position and directly incorporates Federal Rule of Civil Procedure 26(c) (see paragraphs 6 and 8 of PTO 16).

## VII.   THE ASSERTIONS OF CONFIDENTIALITY BY THE PRODUCING PARTIES DO NOT COMPORT WITH THE FEDERAL RULES OF CIVIL PROCEDURE

A party designating materials as "Confidential," "Confidential–Party's Eyes Only" or "Confidential–Attorneys' Eyes Only" carries the burden of proving that the information in question is within the scope of protection "afforded by Fed. R. Civ. P. 26(c) and this Order."   *Krueger v. Ameriprise Fin., Inc.*, No. CV 11-2781 (SRN/JSM), 2014 WL 12597948, at *2 (D. Minn. Oct. 14, 2014), *aff'd*, No. 11-CV-02781 SRN/JSM, 2015 WL 224705 (D. Minn. Jan. 15, 2015).

A party seeking protection under Rule 26(c) must provide specific facts demonstrating that protection of information is necessary, as opposed to "stereotyped and conclusion statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16 (1981) (citations omitted); *see* also *Baxter Intern., Inc. v. Abbott Laboratories*, 297 F.3d 544, 545 (7th Cir. 2002) ("[T]he parties' joint motion made no effort to justify the claim of secrecy. It was simply asserted, mostly on the basis of the agreement but partly on the ground that these are commercial documents. That won't do.") (citation omitted); *Arvco Container Corp. v. Weyerhaeuser Co.*, Civ. No. 1:08–548, 2009 WL 311125, at *8 (W.D. Mich. Feb. 9, 2009) (" '[V]ague and conclusory allegations of confidentiality and competitive harm are insufficient. The movant must make 'a particularized showing that the information sought is confidential' and come forward with 'specific examples' of competitive harm."); *In re Iowa Freedom of Info. Council*, 724 F.2d 658, 663 (8th Cir. 1983) ("Whether trade secrets are involved

16

or not, and whether their revelation will cause damage to someone, are questions of fact, to be decided [by the court] after receiving evidence.") Courts should not simply accept representations of interested counsel at face value, but should conduct a limited in camera review of documents alleged to contain trade secrets and other proprietary information. *In re Iowa Freedom of Info. Council,* 724 F.2d at 662–63. The court must then determine if good cause exists to keep the documents under seal.  *Healy v. I–Flow, LLC*, 282 F.R.D. 211, 215 (D. Minn. 2012); *Krueger*, 2014 WL 12597948, at *7.   In the instant matter, the Producing Parties have failed to meet their burden.   In essence, they have made broad conclusory statements in response to the PSC's letters of February 22, 2016.   The Producing Parties have failed to satisfy the burden required under PTO 16.

With respect to the largest category of objections pertaining to meeting minutes or resolutions of private company of which Taishan has 33 documents falling into that category, it is clear that the documents should not be deemed confidential.   The Court in *Krueger*, 2014 WL 12597948, at *3, held that meeting minutes are not confidential, acknowledged that according to plaintiffs, "central to that claim" are the committee agendas, minutes, actions and correspondence regarding committee actions which evidence how the fiduciaries discharged their duties. *Id.* There, Plaintiffs submitted that this evidence should not be hidden from the public, "especially from current and former participants in the Plan." *Id.* Plaintiffs contended that the documents did not reflect trade secrets or any information that would harm Defendant. For example, some of the documents dated back to 2005, and any "sensitive" information reflected in those documents was stale and lacking in commercial value. *Id.*, at *3.   Similarly, in this matter, most of the documents alleged to contain confidential information are stale and are from several years ago.   There are no

17

trade secrets.   There is substantial reason for the public to be able to have access to the documents, as many of them relate to the specific damages that are at issue in this litigation and the relationship between the various defendants in the litigation.

Many of the objections CNBM and BNBM assert are that the documents contain a confidentiality provision or were designated by CNBM Group as confidential and so the Producing Parties will respect that designation. As the Court recently held, "the sole existence of a third party's agreement cannot independently render a document confidential unless it comports with Rule 26(c)." *Riverkeeper v. Taylor Energy Co., LLC*, 309 F.R.D. 381, 387 (E.D. La. 2015). These documents lack any confidential information as per Rule 26(c) and neither BNBM nor CNBM have put forth any valid justification for such designation. Thus, the designations for these documents are improper.

Another category of documents the Producing Parties generically assert are confidential include company audits, financial statements, and other documents containing non-public information. Here, the Producing Parties fail to prove any alleged injury suffered if such documents were unsealed; rather, the designation is premised on the flawed notion that non-public company documents are *per se* confidential. "Simply showing that the information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records." *Pamlab, L.L.C. v. Brookstone Pharm., L.L.C.*, 2010 WL 4363870, at *3 (E.D. La. Oct. 22, 2010) (citation omitted); *see also Orthoflex, Inc. v. ThermoTek, Inc.*, 990 F.Supp.2d 675, 688 (N.D. Tex. 2013) ("The court cannot find any basis in the record to conclude that the trade secret privilege extends to [information about its sales, its profit margins, its financial statements, or information about its business relationships with other entities

].”). Moreover, “[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.” *Soule v. RSC Equip. Rental, Inc.*, 2012 WL 425166, at *2 (E.D. La. Feb. 9, 2012) (citation omitted). The PSC has no objection to redacting bank account numbers or other identifying account information, but the balance of the documents should be designated as non-confidential as the Producing Parties’ explanations fail to satisfy Rule 26(c)’s good cause requirement.

Attached as Exhibit “B” is a chart providing specific comments with respect to each of the documents at issue, which the Producing Parties claim to be Confidential or Highly Confidential-Restricted Information.   The PSC submits this to assist the Court in its analysis of each document, even though the burden of proof for confidentiality pursuant to PTO 16 rests with the Producing Party.

## VIII.   <u>CONCLUSION</u>

This Court should grant the Plaintiffs’ Steering Committee’s Motion to Remove Confidentiality Designations With Respect to Documents Produced by and Testimony of the Taishan Defendants and Third Parties.   The Producing Parties have improperly marked documents with confidential designations.   The Federal Rules of Civil Procedure and Pre-Trial Order No. 16 have been complied with by the PSC and based on the foregoing, there is substantial need and reason for the Court to remove any designation of confidentiality as to the documents challenged by the PSC.

Respectfully submitted,

Dated: February 22, 2017

/s/ Russ M. Herman
Russ M. Herman (LA Bar No. 6819) (On brief)
Leonard A. Davis (LA Bar No. 14190) (On brief)
Stephen J. Herman (LA Bar No. 23129)
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
*Plaintiffs' Liaison Counsel*
*MDL 2047*

Arnold Levin  (On brief)
Fred S. Longer (On brief)
Sandra L. Duggan (On brief)
Matthew C. Gaughan
Levin Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

## PLAINTIFFS' STEERING COMMITTEE

Dawn M. Barrios
Emma E. Kingsdorf (On brief)
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Robert M. Becnel
Becnel Law Firm, LLC
425 W. Airline Highway, Suite B
Laplace, LA 70068
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com
robbecnel@aol.com

Peter Prieto
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com

Bruce William Steckler
Steckler, LLP
12720 Hillcrest Road, Ste 1045
Dallas, TX 75230
Phone: (972) 387-4040
Fax: (972) 387-404
bruce@stecklerlaw.com

Jerrold Seth Parker
Parker Waichman, LLP
27300 Riverview Center Blvd.
Suite 103
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

James Robert Reeves
Reeves & Mestayer, PLLC
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@attorneys4people.com

Daniel K. Bryson
Whitfield, Bryson & Mason, LLP
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5002
dan@wbmllp.com

Ervin A. Gonzalez
Colson, Hicks, Eidson
255 Alhambra Circle, Penthouse
Cora Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
 Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
The Lambert Firm
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@thelambertfirm.com

Victor M. Diaz, Jr., Esquire
V.M. Diaz and Partners, LLC
119 Washington Ave, Suite 402
Miami Beach, FL 33139
Phone: (305) 704-3200
Fax: (305) 538-4928
victor@diazpartners.com

Richard J. Serpe, Esquire
Law Offices of Richard J. Serpe
Crown Center, Ste. 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmenuier@gainsben.com

**OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE**

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.W Suite 650
Washington, DC 20006
Phone: (202) 540-7200
Fax:   (202) 540-7201
rlewis@hausfeldllp.com

Anthony D. Irpino
IRPINO AVIN HAWKINS LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
airpino@irpinolaw.com

Andrew A. Lemmon
Lemmon Law Firm, LLC
P.O. Box 904
15058 River Road
Hahnville, LA 70057
Phone: (985) 783-6789
Fax: (985) 783-1333
andrew@lemmonlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, which will serve a notice of the uploading in accordance with the procedures established in MDL 2047, on this 22nd day of February, 2017.

/s/ Leonard A. Davis
Leonard A. Davis
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
Ldavis@hhklawfirm.com
Plaintiffs' Liaison Counsel
MDL 2047

*Co-counsel for Plaintiffs*

23