1              UNITED STATES DISTRICT COURT

2              EASTERN DISTRICT OF LOUISIANA

3    ****************************************************

4    IN RE:  CHINESE-MANUFACTURED  MDL NO. 2047

     DRYWALL PRODUCTS LIABILITY

5    LITIGATION                    SECTION:  L

6    THIS DOCUMENT APPLIES TO      JUDGE FALLON

     ALL CASES

7                                  MAG. JUDGE WILKINSON

8    ****************************************************

9

             CONFIDENTIAL - SUBJECT TO FURTHER

10               CONFIDENTIALITY REVIEW

11             Friday, September 18, 2015

12                   — — —

13

14        Videotaped Deposition of JIA TONGCHUN,

15   VOLUME 2, held at Orrick, Herrington & Sutcliffe, LLP,

16   15 Queen's Road Central, 43rd Floor, Hong Kong,

17   commencing at 9:11 a.m., on the above date, before

18   Micheal A. Johnson, Certified Court Reporter (#29025),

19   Registered Merit Reporter and Certified Realtime

20   Reporter.

21

22                   — — —

23

24        GOLKOW TECHNOLOGIES, INC.

        877.370.3377 ph | 917.591.5672 fax

25             deps@golkow.com

```
 1    A P P E A R A N C E S:
 2    COUNSEL FOR THE PLAINTIFF CLASS:
 3         LEVIN FISHBEIN SEDRAN & BERMAN
           BY:   SANDRA L. DUGGAN, ESQUIRE
 4               sduggan@lfsblaw.com.
                 ARNOLD LEVIN, ESQUIRE
 5               alevin@lfsblaw.com
           510 Walnut Street, Suite 500
 6         Philadelphia, Pennsylvania 19106
           (215) 592-1500
 7
 8         IRPINO LAW FIRM
           BY:  ANTHONY D. IRPINO, ESQUIRE
 9               airpino@irpinolaw.com
                 PEARL A. ROBERTSON, ESQUIRE
10               probertson@irpinolaw.com
           2216 Magazine Street
11         New Orleans, Louisiana 70130
           (504) 525-1500
12
13         HERMAN HERMAN & KATZ LLC
           BY:  RUSS M. HERMAN, ESQUIRE
14               rherman@hhklawfirm.com
           820 O'Keefe Avenue
15         New Orleans, Louisiana 70113
           (504) 581-4892
16
17    COUNSEL FOR TAISHAN GYPSUM COMPANY:
18         ALSTON & BIRD LLP
           BY:   BERNARD TAYLOR, SR., ESQUIRE
19               bernard.taylor@alston.com
                 CHRISTINA HULL EIKHOFF, ESQUIRE
20               christy.eikhoff@alston.com
           1201 West Peachtree Street
21         Atlanta, Georgia 30309-3424
           (404) 881-4496
22
23
24
25
```

```
 1    A P P E A R A N C E S:
 2    COUNSEL FOR TAISHAN GYPSUM COMPANY:
 3         ALSTON & BIRD LLP
           BY:  HELEN SU, ESQUIRE
 4         1950 University Avenue, Fifth Floor
           East Palo Alto, California 94303-2282
 5         (650) 838-2032
 6
      COUNSEL FOR BNBM DEFENDANTS:
 7
           DENTONS US LLP
 8         BY:  C. MICHAEL MOORE, ESQUIRE
                mike.moore@dentons.com
 9         2000 McKinney Avenue, Suite 1900
           Dallas, Texas 75201-1858
10         (214) 259-0902
11
           DENTONS LLP
12         BY:  TODD LIAO, ESQUIRE
                todd.liao@dentons.com
13         5th Floor The Center 989 Changle Road
           Shanghai, China 200031
14         +86 21 2315 6028
15
      COUNSEL FOR CNBM DEFENDANTS:
16
           ORRICK HERRINGTON & SUTCLIFFE LLP
17         BY:  JASON M. WU, ESQUIRE
                jmwu@orrick.com
18         405 Howard Street
           San Francisco, California 94105-2669
19         (415) 773-5986
20
21
22
23
24
25
```

```
 1    A P P E A R A N C E S:

 2    COUNSEL FOR THE STATE OF LOUISIANA:

 3         PERKINS COIE LLP
           BY:  DAVID L. BLACK, ESQUIRE
 4              dblack@perkinscoie.com
           1900 Sixteenth Street, Suite 1400
 5         Denver, Colorado 80202-5255
           (303) 291-2309

 6

 7         OFFICE OF THE ATTORNEY GENERAL STATE OF
           LOUISIANA
 8         BY:  L. Christopher Styron
                styron@ag.state.la.us
 9         1885 North Third Street
           Baton Rouge Louisiana 70802
10         (225) 326-6079

11

12    ALSO PRESENT:

13         TONI XU

14         SANDRA HERMAN

15         REGINA VALENTI

16         MELISSA BARDWELL, VIDEOGRAPHER

17         SUNNY WANG, MANDARIN INTERPRETER

18                        —— —— ——

19

20

21

22

23

24

25
```

```
1                        INDEX

                    JIA TONGCHUN

2                  September 18, 2015

3

4        PROCEEDINGS                        169

5

6    EXAMINATION OF JIA TONGCHUN:

7            BY MR. LEVIN            169

8            BY MR. TAYLOR          298

9            BY MR. LEVIN            299

10

11       REPORTER'S CERTIFICATE           300

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                      DEPOSITION EXHIBITS
                          JIA TONGCHUN
 2                      September 18, 2015
 3
     NUMBER              DESCRIPTION            MARKED
 4
     Exhibit 66-2    Handwritten Note on Post-it     247
 5                   Pad in Chinese
 6   Exhibit 162-1   BNBM Guarantees to and          254
                     Investments in Taishan
 7                   Gypsum- FRE 1006 Summary
                     Chart
 8
     Exhibit 323     Partial Translation of          273
 9                   CNBMPLC-E-0059965-0059966
10   Exhibit 355     Taishan Gypsum Company          269
                     Limited Communication Letter
11                   on Economic Responsibility
                     Audit and Financial-based
12                   Audit dated May 16, 2012
13   Exhibit 359     Motion to Hold Jia Tongchun     267
                     in Contempt
14
     Exhibit 394     Taishan Gypsum Board Sales to   249
15                   United States (Herman
                     Affidavit Exhibit 1)
16
     Exhibit 408-1   Partial Translation of the      261
17                   "Notice from Five Departments
                     Including the
18                   Organization Department of
                     the CPC Central Committee and
19                   the Ministry of
                     Human Resources and Social
20                   Security on Further
                     Strengthening the Services
21                   for
                     Management of Personnel Files
22                   of Mobile Personnel"
23   Exhibit 411     4/2/2015 Stepan Customer        233
                     Visit Report
24
     Exhibit 412     5/22/2015 Stepan Customer       234
25                   Visit Report
```

```
1                      DEPOSITION EXHIBITS
                          JIA TONGCHUN
2                       September 18, 2015

3

4   NUMBER                    DESCRIPTION                MARKED

5   Exhibit 416    Partial Translation of                 275
                   CNBMGRP00371516-371562
6                  Taishan Gypsum Company
                   Limited Comprehensive Risk
7                  Management Report for the
                   Year 2011

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

PREVIOUSLY MARKED EXHIBITS

| NUMBER | DESCRIPTION | REFERENCED |
|--------|-------------|------------|
| Exhibit 37 | ........................... | 225 |
| Exhibit 66 | ........................... | 245 |
| Exhibit 1-114 | ........................... | 214 |
| Exhibit 1-115 | ........................... | 214 |
| Exhibit 133-R | ........................... | 258 |
| Exhibit 150 | ........................... | 220 |
| Exhibit 1-261A | ........................... | 223 |
| Exhibit 1-261 | ........................... | 223 |
| Exhibit 1-304 | ........................... | 243 |
| Exhibit 1-304A | ........................... | 243 |
| Exhibit 332 | ........................... | 190 |
| Exhibit 356 | ........................... | 262 |
| Exhibit 1-26 | ........................... | 173 |
| Exhibit 1-26A | ........................... | 173 |

```
 1                      PROCEEDINGS
 2             THE VIDEOGRAPHER:  This begins disk 1 of
 3      Volume 2 of the deposition of Jia Tongchun.  The
 4      date today is September 18th, 2015.  Time now is
 5      approximately 9:11 a.m. and we are back on the
 6      record.
 7             MR. TAYLOR:  Arnie, as --
 8             MR. LEVIN:  Okay.  First you.
 9             MR. TAYLOR:  As I indicated earlier,
10      there are a couple of issues that Chairman Jia
11      would like to explain and correct or add to the
12      testimony he gave regarding when he -- Mr. Peng
13      told him not to say anything to anyone about
14      where he was working and another relative who
15      told him about where Mr. Peng was working.
16             MR. LEVIN:  Well, we'll apply the
17      wait-and-see doctrine.
18             MR. TAYLOR:  Do you want him to do it
19      now just so you don't --
20                      JIA TONGCHUN
21         having been previously sworn,
22            testified as follows:
23                      EXAMINATION
24   BY MR. LEVIN:
25      Q    Sir, good morning.  I remind you that you
```

1    are still under oath.  I understand from your counsel

2    that upon reflection you want to make some additional

3    statements on the record in these proceedings; am I

4    correct?

5        A    Yes.

6        Q    And these statements are being made after

7    you discussed them with your counsel, am I correct,

8    last night?

9        A    No.

10       Q    Is it your testimony that you have not told

11   your counsel about the -- these statements that you

12   intend to make on the record this morning?

13       A    I told my counsel this morning that my

14   statement made yesterday might not be clear.

15   Therefore, I would like to further express my

16   statement to make the record complete.

17       Q    Please do.

18       A    Yesterday my testimony said that when

19   Mr. Peng Wenlong left his employment he told me not to

20   tell others where he worked at.  When I said when he

21   left his employment, it was not quite accurate.  The

22   accurate time would be when Mr. Peng Wenlong had

23   refused to be the legal consultant of this litigation

24   in around March of this year.  Which is to say that

25   Mr. Peng Wenlong in March at the time he no longer was

1    the counsel -- consultant for the American litigation

2    case he mentioned it to me and told me not to tell

3    others where he worked at.  This is No. 1.

4                    No. 2, yesterday when I made the

5    statement when that I learned where Mr. Peng Wenlong

6    was working at, I said I remember during the festival

7    of last year a relative of mine told me that Mr. Peng

8    Wenlong worked at Shenyang Taishi Rock Wool Company.

9    This is an accurate statement but not quite complete.

10   A relative of mine by the name of Jia Xinfeng works at

11   Shenyang Taishi Rock Wool Company.  He's my nephew.

12   My wife is chairman of the board of directors of

13   Taishi Rock Wool.  He also told me in around the same

14   time that Mr. Peng Wenlong had arrived at Shenyang

15   Taishi Rock Wool to work.

16                    THE INTERPRETER:  The interpreter would

17         like to make a correction on the gender.

18         Rather, she.

19    A     It was in March or April when I first

20   learned where Mr. Peng Wenlong worked at last year.

21   This is an addition or separate correction on the

22   statement that I gave yesterday.

23                    THE INTERPRETER:  Interpreter would like

24         to correct the word statement -- replace the

25         word statement with testimony.

1    BY MR. LEVIN:

2        Q    Sir, last night or this morning did you read

3    the transcript of the testimony of yesterday?

4        A    No.

5        Q    So the statements you made today are just

6    based upon your recollection of facts as they occurred

7    in the past?

8        A    I don't know what is a meeting transcript,

9    but it is my personal recollection and I need to make

10   that correction.

11       Q    And yesterday when you testified, that was

12   your personal recollection also, wasn't it?

13       A    Correct.

14       Q    And when you furnished the two declarations,

15   they were based on your personal declarations, were

16   they not?

17       A    I don't understand that.

18       Q    And when you furnished the two declarations,

19   they were based on your personal recollections, were

20   they not?

21       A    Some of them are based on my personal

22   recollection while some of them are based on fact.

23       Q    And the facts were given to you by Mr. Che

24   Gang, who is your immediate inferior?

25                 MR. TAYLOR:  Objection to form,

1        misstates prior testimony.

2     A     Some of them came from Che Gang.

3   BY MR. LEVIN:



 9      Q      Could you tell us in what period of time

10   Dong Chungang represented Taishan?

11      A      When he was our legal counsel at the time of

12   the US litigation until this year, but I do not have a

13   clear recollection on the exact time period.

14   Approximately from 2011 to the beginning of 2015.

15      Q      And what led to his ceasing being counsel in

16   the beginning of 2015?

17      A      Because at the time Taishan Gypsum's board

18   of directors' meeting decided not to respond to the US

19   litigation, therefore his mission was completed.

20      Q      So his mission was completed when you

21   withdrew from the suit and did not appear at the

22   judgment creditors hearing; is that correct?

23              MR. TAYLOR:  Objection to form, calls

24       for legal conclusion.

25      A      Because after we have made the decision not

1    to respond to the lawsuit for a period of time

2    subsequent to that there were some things to be

3    followed up.  Therefore, maybe he maintained for a

4    period of time.

5    BY MR. LEVIN:

6        Q     But in any event when you ceased having

7    Mr. Dong Chungang as your legal representative is when

8    you chose not to appear at the judgment debtor

9    examination in the Eastern District of Louisiana

10   before Judge Fallon; is that correct?

11                 MR. TAYLOR:  Objection to form.

12       A     I really don't understand your question.

13   BY MR. LEVIN:

14       Q     Did you choose, you, your company, Taishan,

15   not to appear in the Eastern District of Louisiana at

16   a scheduled judgment debtor examination and then

17   withdrew from the suit?

18       A     Correct.

19       Q     Now, when Dong Chungang was representing

20   you, is it a fact that he was also representing BNBM

21   through that period of time?

22                 MR. TAYLOR:  Objection, form, requires a

23        legal conclusion of this witness.

24                 MR. MOORE:  Objection.

25       A     I'm aware of that he represents me, but I'm

1    not aware of that he represents BNBM.

2    BY MR. LEVIN:

3         Q     Well, in 2011 you were on BNBM's board, were

4    you not?

5         A     Yes.

6         Q     And did you have conversations from time to

7    time on the telephone with your lawyers, Hogan

8    Lovells, and others when BNBM was also present on the

9    line?

10        A     I don't have a clear recollection on that.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



1

2

3

4

5

6

7

8

9

10

11

12

13

14   BY MR. LEVIN:

15       Q      Before making the decision not to appear in

16   Louisiana at the judgment debtor exam and to discharge

17   Hogan Lovells and absent yourself from the litigation,

18   did you have to involve many high-level officers in

19   CNBM Group?

20                 MR. WU:  Objection, form.

21       A      No.

22

23

24

25



21     Q     So if I understand what you said, you said

22  you agree that it's not Mr. Jia who can make the

23  decision; is that correct?

24     A     Mr. Jia, I myself, cannot make an individual

25  decision on the substantial matter such as withdrawing

1    from the litigation.

2        Q     Who could make that decision?

3        A     The board of directors.

4        Q     And the board of directors was five

5    individuals, was it not?

6        A     Correct.

7        Q     And three of them were appointed by BNBM; is

8    that correct?

9        A     Correct.

10               MR. HERMAN:  We need a five-minute

11         recess, Arnold.

12               THE VIDEOGRAPHER:  Time now is 9:40 a.m.

13         We are off the record.

14               (Recess Taken From 9:40 a.m. To

15               9:45 a.m.)

16               THE VIDEOGRAPHER:  Time now is 9:45 a.m.

17         We are back on the record.

18    BY MR. LEVIN:

19        Q     Is it true, sir, that the high-level

20    officers in CNBM Group did not know the details and

21    the urgency of the case?

22               MR. WU:  Objection, form.

23        A     I don't know.

24    BY MR. LEVIN:

25        Q     Is it true, sir, that you and Mr. Peng have

1    urged them again and again to determine the urgency of

2    the case and the details of the case?

3                    MR. WU:  Objection, form.

4                    MR. TAYLOR:  And objection, foundation.

5         A    This description is inaccurate.  I cannot

6    answer it.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

15          Is it a fact, sir, that you informed

16   high-level officers at CNBM about the details of this

17   case and your desire to not appear at the judgment

18   debtor examination?

19                MR. WU:  Objection, form.

20                MR. TAYLOR:  Objection to form,

21        compound.

22      A    I would like you to ask a more accurate

23   question.

24   BY MR. LEVIN:

25      Q    Sir, I ask the questions the way it works

1    and you answer.  You don't pose questions to me.  I

2    would like to repeat that question to you and I

3    deserve an answer to it.

4                    MR. TAYLOR:  Objection to the --

5    BY MR. LEVIN:

6        Q    Is it a fact --

7                    MR. LEVIN:  I'm sorry, Sunny.

8                    MR. TAYLOR:  Objection to the

9        argumentative comments by counsel.

10   BY MR. LEVIN:

11       Q    My question, sir, is is it a fact, sir, that

12   you informed high-level officers of CNBM about the

13   details of this case and your desire for Taishan not

14   to appear at the judgment debtor examination?  Yes or

15   no?

16                   MR. TAYLOR:  Objection to form,

17       compound.

18                   MR. WU:  Objection, form.

19       A    No.

20   BY MR. LEVIN:

21       Q    Did you ever inform high-level officials of

22   CNBM of the facts of this case?

23                   MR. WU:  Objection, form.

24                   MR. TAYLOR:  Objection as to scope of

25       the 30(b)(6) dep and time.

```
 1                    THE INTERPRETER:  The interpreter needs

 2         to clarify with the witness.

 3      A    In that period of time it is a fact that I

 4   have requested BNBM's directors to hold a meeting.  I

 5   had also reported to CNBM's board of directors once

 6   regarding to the development of the case.

 7   BY MR. LEVIN:

 8      Q    Is it a fact, sir, that you reported to CNBM

 9   Group about the details of the case and your desire

10   for Taishan not to appear at the judgment debtor

11   examination?  Yes or no?

12                    MR. TAYLOR:  Objection to form --

13                    MR. WU:  Objection, form.

14                    MR. TAYLOR:  Objection to form,

15         compound.

16      A    In that meeting I had only reported the

17   development of the case.  I did not express as a minor

18   shareholder our desire of not participating in the

19   litigation as a fact.

20   BY MR. LEVIN:

21      Q    Are you speaking of the BNBM meeting or

22   the -- or a CNBM or CNBM Group meeting?

23      A    I am the chairman of the board of Taishan

24   Gypsum, TG.  What I can organize is a meeting of

25   Taishan Gypsum's board of directors.
```

1       Q      Listen to my question.  It had nothing to do

2   with your answer.  And I'm going to mark this and

3   we're going to go before Judge Fallon with it if you

4   don't give me answers, sir.

5                  MR. LEVIN:  I understand that you don't

6           like what I said, but we're going to be here all

7           day with one document because the witness is

8           playing games.  And I mean that, Mr. Taylor.

9                  MR. TAYLOR:  I understand what you're

10          saying, counsel.  And the witness is -- I think

11          the record is clear the witness is doing his

12          best to answer your questions and he will

13          continue to do that.

14  BY MR. LEVIN:

15      Q      Sir, you said you met with BNBM.  Before

16  July 7th, 2014, did you meet with BNBM's board of

17  directors and inform them of your decision not to

18  appear at the judgment debtor examination to discharge

19  your counsel and absent yourself from the litigation?

20                 MR. TAYLOR:  Objection to form,

21          compound.

22                 MR. MOORE:  Objection to form.

23      A      I did not speak to BNBM something similar to

24  that.

25  BY MR. LEVIN:

1      Q      Did you meet with the board of directors of

2   CNBM and inform them of your decision or your -- your

3   decision to not appear at the judgment debtor

4   examination, discharge your American attorneys, Hogan

5   Lovells, and absent yourself from the litigation?

6                  MR. WU:  Objection to form.

7                  MR. TAYLOR:  Objection to form,

8        compound.

9      A      I did not inform them; neither do I have the

10   authority to inform them the decision of Taishan

11   Gypsum.

12   BY MR. LEVIN:

13      Q      Did the board of directors have the

14   authority to inform them?

15                  MR. TAYLOR:  Objection, form.

16                  MR. WU:  Objection, form.

17      A      The word "inform" is usually referred to as

18   an instruction given by superior to his inferior

19   personnel.  It is very hard for me to understand that

20   word under the background of inferior personnel

21   informs his superior.

22   BY MR. LEVIN:

23      Q      Let's just talk in plain English or plain

24   Chinese.  Did you on behalf of your board or

25   individually inform CNBM of your intention to withdraw

1    from the suit, discharge your attorneys and absent

2    yourself from the jurisdiction?

3              MR. TAYLOR:  Objection to form,

4         compound.

5              MR. WU:  Objection, form.

6    A    First of all, I would like to make a

7    comment.

8    BY MR. LEVIN:

9    Q    I would like to get an answer and then you

10   can make a comment.

11             MR. LEVIN:  Would you instruct him,

12        Mr. Taylor.

13             MR. TAYLOR:  Hold on a second.  Tell the

14        witness that he can explain and make his comment

15        after he gives his answer.  He has a full right

16        to explain the basis for his answer.

17   A    I did not tell the opinion of the minority

18   shareholder Taishan or Taishan Gypsum to CNBM.

19   BY MR. LEVIN:

20   Q    Did you --

21             MR. TAYLOR:  Hold on.  Did he want to

22        explain anything after that?

23             MR. LEVIN:  What's there to explain?  He

24        answered the question.

25   A    My explanation is the use of the word

1    "inform" is improper.

2  BY MR. LEVIN:

3       Q     You would prefer for me to use the word

4  "tell" instead of the word "inform"; is that correct?

5       A     Correct.

6       Q     Then I will use the word "tell."

7       A     Yeah.

8       Q     Did you tell the board of directors at CNBM

9  Group at any point in time that you intended to not

10  appear at the judgment debtors hearing, discharge your

11  American attorneys and absent yourself, that is, TG,

12  from this litigation?

13            MR. TAYLOR:  Objection to form.

14            MR. WU:  Objection, form.

15       A    No.

16  BY MR. LEVIN:

17       Q     Did you discuss this subject matter with

18  Mr. Peng at any time?

19            MR. TAYLOR:  Objection to form.

20       A     I did discuss.

21  BY MR. LEVIN:

22       Q     And did you discuss with Mr. Peng the

23  reasons why you decided not to appear at the judgment

24  debtors examination in the Eastern District of

25  Louisiana?

1      A      Like I said, it was not my personal decision

2   but rather the decision of the board of directors to

3   withdraw from this litigation.

4      Q      Did you tell Mr. Peng the decision of the

5   board of directors to withdraw from the litigation?

6      A      I told him that.

7      Q      Now, did there come a time when you appeared

8   at the CNBM Group board and your decision not to

9   appear at the judgment debtor examination was

10  discussed?

11     A      I did attend a CNBM Group's board of

12  directors' temporary meeting and in the meeting I only

13  reported on the development of the US litigation.  I

14  did not report on whether or not we would withdraw

15  from the litigation.

16     Q      Had you ever appeared at a CNBM Group board

17  of directors' meeting before?

18              MR. WU:  Objection, form.

19              MR. TAYLOR:  Going back to the first --

20        the question before this one, we have a

21        translation objection.  There's a little delay

22        in that getting to me and I think we just agree

23        that we will raise those later and preserve

24        them.

25              MR. LEVIN:  Okay.  There's a question

1       pending.

2              MR. TAYLOR:  I think I may have

3       interrupted his answer actually.

4              THE INTERPRETER:  This is the

5       interpreter speaking.  The answer of the witness

6       to the prior question was no.

7    BY MR. LEVIN:

8       Q    So this was the first time that you ever

9    appeared before a board of directors' meeting of CNBM

10   Group; is that correct?

11      A    Correct.

12             MR. LEVIN:  Mark for identification Song

13      Exhibit 332.  This exhibit was previously

14      introduced during the Song deposition this week.

15   BY MR. LEVIN:

16      Q    You ever seen this document before?

17      A    No, I have not seen it.

18      Q    This is a China National Building Material

19   Group Corporation.  It's the document of the board of

20   directors.  It's titled Resolution No. 17 of the Third

21   Session of the Board of Directors of CNBM Group.  It

22   is China National Building Material Group

23   Corporation's Resolution of the Seventeenth Meeting of

24   the Third Session of the Board of Directors.  The

25   Chinese version shows signatures of the entire board

1    of directors.

2                    Is it a fact, sir, that the entire

3    board of directors signed this document --

4                    MR. TAYLOR:  Counsel --

5    BY MR. LEVIN:

6        Q    -- the directors of CNBM Group?

7                    MR. TAYLOR:  -- in this document the

8            Chinese version was created by your firm?

9                    MR. LEVIN:  No.

10                   MR. WU:  Objection, form.

11                   MR. TAYLOR:  Objection, form,

12           foundation.  And one other question, when you

13           say the Chinese translation -- or the English

14           translation of the Chinese was not created by

15           your firm, are you saying this -- the Chinese

16           was in the original --

17                   MR. LEVIN:  Yes, sir.

18                   MR. TAYLOR:  -- from CNBM?  And you-all

19           did the English translation?

20                   MR. LEVIN:  Yes.

21       A    Which document?  I don't see that.

22                   MR. LEVIN:  Bernard, do you want to show

23           him?

24                   MR. TAYLOR:  What's the question

25           about -- what's the page -- yeah.  Which Bates

1        number pages?

2             MR. LEVIN:  392949-393015, and

3        particularly 393000.

4             MR. TAYLOR:  You know what?  You're not

5        going to believe this, but half of the Bates

6        number is cut off here.

7             MS. EIKHOFF:  We can figure it out.

8             MR. TAYLOR:  Can you just show us where

9        it is because it's half -- oh, the highlight.

10       I'm just going to give him this one.

11            MR. LEVIN:  That's fine.

12            MR. TAYLOR:  Thank you, Pearl.

13   A    I see that.

14 BY MR. LEVIN:

15   Q    And you see that it was signed by the entire

16 board of directors of CNBM Group?

17            MR. WU:  Objection, form.

18   A    Frankly, I only know a few members of the

19 directors in CNBM board of directors.  A few of them I

20 can't be sure whether they are the directors or not.

21 I don't know whether all of the directors are included

22 here.

23 BY MR. LEVIN:

24   Q    The document says signature of board of

25 directors.  Is it your testimony that you don't know

 1    whether they are directors or not?

 2              MR. TAYLOR:  Objection, lack --

 3       A    Some of them are, but some of them I can't

 4    be sure of.

 5              MR. TAYLOR:  Objection, lacks

 6         foundation.

 7    BY MR. LEVIN:

 8       Q    So you do not accept the statement in this

 9    document made by CNBM Group that signatures of board

10    of directors are affixed to the document; is that

11    correct?

12              MR. TAYLOR:  Objection to form, lacks

13         foundation, there's been no showing that this

14         witness has ever seen this document before.

15              MR. WU:  Objection, form.

16       A    I only know three of the CNBM directors.  I

17    do not know the rest of the directors, so I can't...

18    BY MR. LEVIN:

19       Q    Did anybody --

20              MR. TAYLOR:  Did he finish his answer?

21         Sounds like he --

22       A    One of them I can't be sure that they are

23    directors.

24    BY MR. LEVIN:

25       Q    And that's even though their names are under

1    the title signature of board of directors, sir; is

2    that correct?

3                  MR. TAYLOR:  Objection to form.

4                  MR. MOORE:  Objection, form.

5                  MR. TAYLOR:  Lacks foundation.

6    BY MR. LEVIN:

7        Q    Can you answer the question.

8        A    That's correct.

9        Q    Now, sir, did anybody else from Taishan come

10   with you to this meeting of the board of directors of

11   CNBM Group?

12       A    I don't have a clear recollection on that.

13       Q    Did anyone from BNBM come with you to the

14   board of directors' meeting of CNBM Group?

15       A    There were people from BNBM and from CNBM.

16   I can't be sure if some of them are actually from

17   CNBM.

18       Q    Who were the people from BNBM that were

19   present at this meeting?

20       A    To my recollection Wang Bing was there.

21       Q    Anybody else?

22       A    Let me think about it.  Chen Yu.

23       Q    Chen Yu?  I know him.

24       A    Yes.

25                  THE INTERPRETER:  Can counsel repeat his

1          last comment.

2                    MR. LEVIN:  Chen Yu.

3                    THE INTERPRETER:  You know him did

4          counsel say?

5                    MR. LEVIN:  Yes, I know him.

6      A     I don't remember.

7  BY MR. LEVIN:

8      Q     Now, do you remember who else from Taishan

9  was with you?

10     A     I don't recall whether or not Mr. Peng

11 participated.

12     Q     Well, this was an important meeting, was it

13 not?

14                   MR. WU:  Objection, form.

15     A     I don't recall whether or not I participated

16 in this meeting.

17 BY MR. LEVIN:

18     Q     Were you present?

19     A     I don't have a clear recollection of that

20 either.  I don't have a clear recollection on whether

21 or not I had participated in a meeting prior to this

22 meeting or I had participated in this very meeting.

23 According to my personal judgment and understanding, I

24 had participated in the board of directors' meeting

25 prior to this one, but I have not participated in this

1    board of directors' meeting.

2        Q     Did you appear at that board of directors'

3    meeting at the request of CNBM Group?

4                   MR. TAYLOR:  Objection to form --

5                   MR. MOORE:  Objection, time frame.

6                   MR. TAYLOR:  -- time frame.

7                   MR. WU:  Same objection.

8        A     No.

9    BY MR. LEVIN:

10       Q     Did you just drop in?

11                  MR. TAYLOR:  Objection form.

12                  MR. WU:  Objection, form.

13                  MR. MOORE:  Objection, lack of time

14         frame.

15       A     I did receive the notice, but usually it was

16   BNBM rather than CNBM who would inform me to the

17   meeting.

18   BY MR. LEVIN:

19       Q     So it was unusual for CNBM Group to inform

20   you of such a meeting; is that correct?

21                  MR. TAYLOR:  Objection --

22                  MR. WU:  Objection, form.

23                  MR. TAYLOR:  -- lacks foundation.

24       A     CNBM did not inform me of this meeting.  And

25   I would like to say again, perhaps it was BNBM who

1    informed me to participate in this meeting.

2    BY MR. LEVIN:

3        Q     When was this meeting?

4        A     I don't remember this meeting.  According to

5    my recollection I participated in the prior CNBM's

6    board of directors' meeting.

7        Q     I'm speaking about the prior CNBM board of

8    directors' meeting.  When was that?

9        A     Perhaps a month or two months prior,

10   approximately.

11       Q     Prior to the meeting of the document that's

12   before you; is that correct?

13              MR. TAYLOR:  Objection to form.

14       A     Correct, according to my recollection.

15   BY MR. LEVIN:

16       Q     And it's my understanding that BNBM told you

17   to go to the CNBM Group meeting; is that correct?

18       A     Correct.

19       Q     And who at BNBM requested that you appear at

20   the CNBM Group meeting?

21       A     Wang Jingjing.

22       Q     And was Mr. Peng with you when they told you

23   to appear at the CNBMG meeting?

24              MR. TAYLOR:  Objection to form.

25       A     I'm not sure about that.

```
 1   BY MR. LEVIN:

 2        Q     Well, in any event, you did tell them about

 3   that, did you not?

 4                   MR. TAYLOR:  Objection to form.

 5        A     Tell what?

 6   BY MR. LEVIN:

 7        Q     That you were told by BNBM to appear at a

 8   CNBM Group board of directors' meeting.

 9        A     Correct.

10        Q     Now --

11        A     It told me to report on the status of the

12   case.

13                   THE INTERPRETER:  Interpreter needs to

14        clarify gender with witness.

15                   Upon clarifying with the deponent on the

16        gender whether the gender is it, he or she, here

17        is the witness's answer.

18        A     It was Wang Jingjing who told me to

19   participate in the board of directors' meeting.

20   BY MR. LEVIN:

21        Q     And I believe my question was did you tell

22   Mr. Peng that you were to appear at the CNBM Group

23   meeting?

24        A     I don't have a clear recollection on that.

25        Q     When you appeared at the meeting, did you
```

1   know why you were to appear?  Were you told why you

2   were to appear?

3       A      Because they wanted to learn the development

4   of the case.

5       Q      And when you appeared, you told them the

6   development of the case, did you not?

7               MR. TAYLOR:  Objection to form.

8       A      Correct.

9   BY MR. LEVIN:

10      Q      And is it a fact that you discussed the

11  issues of the development of the case with Mr. Peng

12  before you appeared at the board of directors' meeting

13  of CNBM Group?

14      A      I communicated with Mr. Peng.

15      Q      And discussed the matter at hand?

16              MR. TAYLOR:  Objection to form.

17      A      This one?  At hand meaning this one?

18  BY MR. LEVIN:

19      Q      No, the meeting that you attended.

20              MR. TAYLOR:  Objection to form.

21      A      Because at the time Mr. Peng was still

22  our -- because Mr. Peng at the time had already

23  resigned, but he was still one of our consultants and

24  he knew the status of the case more.  Therefore, in

25  many situations I would tell him and he would come

1    with me to participate.

2    BY MR. LEVIN:

3        Q      Did he come with you to participate this

4    time?

5        A      He participated -- I believe he participated

6    to my recollection.

7        Q      Now, sir, when you went to this meeting,

8    what did you tell the board of directors of CNBM Group

9    about the status of the litigation?

10       A      This can be a long statement.  Is it

11   necessary for me to elaborate in length?

12       Q      Let me ask it this way.  Let's start off

13   with this statement.

14              MR. TAYLOR:  You're withdrawing the

15         other question so he understands that.

16              MR. LEVIN:  I'll withdraw it right now.

17         I'll come back, believe me.

18   BY MR. LEVIN:

19       Q      Did you tell the board of directors that you

20   did not intend to appear at the judgment debtors

21   examination?

22       A      No.

23       Q      Did you tell the board of directors that you

24   intended to discharge your counsel, Hogan Lovells?

25       A      No.

1      Q      Did you tell the board of directors at CNBM

2  Group that you intended to leave the jurisdiction of

3  Louisiana and not partake in the litigation in the

4  Eastern District of Louisiana?

5                    MR. TAYLOR:  I have an objection and

6           clarification.  You, you're talking about

7           Taishan, right?

8                    MR. LEVIN:  Yes.  Yeah, I'm talking

9           about 30(b)(6), sir.

10                    MR. TAYLOR:  30(b)(6).  Okay.  And then

11           objection to form.  Requires a legal conclusion

12           of this witness.

13      A      No, I do not have the obligation to tell

14  them.

15  BY MR. LEVIN:

16      Q      Did your Department of Legal Affairs inform

17  CNBM Group that you -- that TG would not appear at the

18  judgment debtors examination?

19      A      No.

20                    MR. MOORE:  Objection, time frame.

21                    MR. LEVIN:  I'm speaking now of the

22           board of directors' meeting that he attended.

23                    MR. MOORE:  Okay.

24  BY MR. LEVIN:

25      Q      Did your Department of Legal Affairs inform

1    the board of directors of CNBM Group that you intended

2    to discharge your attorneys, your American attorneys?

3        A     No.

4        Q     Did your Department of Legal Affairs inform

5    the board of directors of CNBM Group that you intended

6    to leave the litigation and not partake in the Chinese

7    drywall litigation in the Eastern District of

8    Louisiana?

9              MR. TAYLOR:  Objection, form.

10       A     No.

11             MR. MOORE:  Objection, lack of

12        foundation to this line of questions.

13             MR. TAYLOR:  And, Arnie, I think you

14        used the word inform again, but that's all

15        right.

16   BY MR. LEVIN:

17       Q     Did you tell the board of directors of CNBM

18   Group that you intended to leave the litigation in the

19   Eastern District of Louisiana and not partake in that

20   litigation?

21       A     No, I do not have the right to tell them.

22       Q     When you appeared, did CNBMG know that you

23   intended not to appear at the judgment debtor

24   examination?

25             MR. TAYLOR:  Objection to form --

1            MR. WU:  Objection, form.

2            MR. TAYLOR:  -- requires speculation.

3     A    I don't know whether they -- whether or not

4  they know it.

5  BY MR. LEVIN:

6     Q    Did the board of directors of CNBM Group at

7  the time you appeared before them know that you

8  intended to discharge your American lawyers?

9            MR. TAYLOR:  Objection to form --

10           MR. WU:  Objection, form.

11           MR. TAYLOR:  -- requires speculation.

12    A    I don't know.  I don't know whether or not

13  they knew it.

14  BY MR. LEVIN:

15    Q    Did the board of directors of CNBM Group at

16  the time you appeared before them know that you

17  intended to absent yourself from the litigation in the

18  Eastern District of Louisiana?

19           MR. TAYLOR:  Objection, form --

20           MR. WU:  Objection, form.

21           MR. TAYLOR:  -- calls for speculation.

22    A    I don't know whether they knew it or not.  I

23  don't have the right to report to them this issue.

24  BY MR. LEVIN:

25    Q    Well, if you don't have the right to report

1    them to this issue, did you discuss the issue with

2    them at this time of your desire to not appear at the

3    judgment debtor examination?

4              MR. TAYLOR:  Objection to form.

5              MR. WU:  Objection, form.

6    A     I only reported to them the development of

7    this litigation on the side of Taishan Gypsum.  I did

8    not discuss anything other than that.

9    BY MR. LEVIN:

10   Q     Tell us with regard to this litigation in

11   the Eastern District of Louisiana what you did discuss

12   with them at that meeting.

13   A     I did not discuss.  I just reported the

14   development of the litigation and upon completion of

15   the report I left.  I left after the report.  I do not

16   know what decision they made.

17   Q     What report did you give them concerning the

18   litigation in the Eastern District of Louisiana?

19   A     It will require a long time.  Do I need to

20   answer?

21             MR. TAYLOR:  I think what he's saying is

22        going to take a long time if you want him to

23        give a full answer, everything he said.

24   BY MR. LEVIN:

25   Q     Please answer.  We can stay here till hell

1   freezes over.

2            MR. TAYLOR:  Objection to counsel's

3       argumentative statements and move to strike the

4       statements of hell freezing over.

5    A    May I answer now?

6   BY MR. LEVIN:

7    Q    Certainly.  I'll withdraw that question.

8   Come back to it.

9            Sir, take a look at Exhibit 332 and

10  look at Roman numeral III.

11           MR. TAYLOR:  Let me help him.  Is that

12      okay?

13           MR. LEVIN:  Certainly.  The Chinese

14      version.

15           MR. TAYLOR:  Now, that I can't help

16      with.

17           MS. EIKHOFF:  Should be highlighted.

18           MR. TAYLOR:  Is it highlighted?

19           MS. EIKHOFF:  Yeah.  I'll point it out.

20  BY MR. LEVIN:

21   Q    Sir, I'm just going to read you this.  Are

22  you aware of this statement made in this document,

23  this CNBM Group document that is before you as

24  Exhibit 332?

25           MR. WU:  Objection, form.

1      A     I see that.

2  BY MR. LEVIN:

3      Q     Do you agree with that that happened and

4  that was promulgated by CNBM Group after you met with

5  them?

6              MR. TAYLOR:  Objection to form, lacks

7         foundation, requires speculation of this

8         witness.

9              MR. MOORE:  Objection, form, confused

10        time frame.

11             MR. WU:  Objection, form.

12     A     It was the board of directors of Taishan

13 Gypsum that had made the decision that Taishan Gypsum

14 would not participate in the litigation and would

15 discharge Hogan Lovells law firm.

16             MR. TAYLOR:  Are you finished?

17 BY MR. LEVIN:

18     Q     Are you finished?

19     A     No.

20     Q     Go right ahead.

21     A     The decision was made including the

22 participation of the three directors from BNBM.

23             THE INTERPRETER:  Interpreter needs to

24        clarify with witness.

25             There's no change in the interpreter's

1          interpretation.

2     A     As for in what way did those three directors

3   report to CNBMG upon the return regarding the meeting,

4   that's their business.

5   BY MR. LEVIN:

6     Q     Who were these three --

7               MR. TAYLOR:  Hold on.  Are you finished?

8     A     As far as a decision like I said earlier, I

9   do not have the right to directly report to the board

10  of directors of CNBMG.

11  BY MR. LEVIN:

12    Q     Sir, who were the three BNBM directors who

13  made the report to the CNBM Group directors?

14              MR. WU:  Objection, form.

15              MR. MOORE:  Objection, lack of

16      foundation.

17    A     You already know the names of those three

18  BNBM directors.  Us directors and them together made

19  the decision to withdraw from the litigation.  As for

20  in what way did they convey their opinion to CNBM is

21  not something that --

22              THE INTERPRETER:  Interpreter needs to

23      clarify with witness.

24    A     It is not something that I can take hold of.

25              MR. TAYLOR:  Objection to form.

1    BY MR. LEVIN:

2        Q    Who were -- what are the names of the three

3    directors of BNBM?

4        A    Wang Bing, Chen Yu, Yang Yanjun.

5        Q    Now, I just want to read into the record

6    what paragraph 3 says for purposes of completion.  And

7    this is paragraph 3 of 332.

8                "Deliberated on and passed the

9    proposal on the event about gypsum board shipped in

10   the U.S. Main contents:  to agree with the report

11   circulated by the Department of Legal Affairs and the

12   attorney; and to respect Taishan Gypsum's decision not

13   to attend the Judgment Debtor Hearing on July 17,

14   2014, not to petition to the Supreme Court of the

15   United States for a certiorari and review regarding

16   the jurisdictional dispute, and not to participate in

17   the lawsuits on the merits in the U.S."

18               "This proposal was passed 11 votes in

19   favor, zero votes against, and zero votes abstained."

20               "For the proposals above, relevant

21   companies shall carry out relevant legal procedures

22   according to relevant provisions."

23               Sir, do you know anything about the

24   statement that I just read?

25               MR. TAYLOR:  Objection to form, lacks

1           foundation.  And we've obviously got a

2           translation issue here.  You used -- made your

3           statement in regards to the English --

4                     MR. LEVIN:  That's correct.

5                     MR. TAYLOR:  -- and she translated in

6           Chinese and we don't know if they link up.

7                     MR. WU:  Objection, form.

8     BY MR. LEVIN:

9           Q     You can answer, sir.

10          A     I totally understand in regard to the report

11    and to the expression of the statement.

12          Q     So you're aware that CNBMG voted 11 to zero

13    in support of your position -- of your request to

14    withdraw from the litigation, discharge your attorneys

15    and not partake in it anymore?

16                    MR. TAYLOR:  Objection to form --

17                    MR. MOORE:  Objection --

18                    MR. TAYLOR:  -- vague as to time.

19                    MR. MOORE:  Go ahead, sir.

20                    MR. WU:  Objection, form.

21                    MR. MOORE:  Objection, misconstrues the

22           prior testimony.

23          A     That's what the language says here.

24    BY MR. LEVIN:

25          Q     Were you aware they support -- are you aware

1    that they supported your decision, your 11 to zero?

2              MR. TAYLOR:  Objection to form.

3              MR. WU:  Objection, form.

4              MR. MOORE:  Objection, lack of time

5         frame.

6     A    I do not know the results of their votes,

7    but this is the statement --

8              THE INTERPRETER:  Interpreter would like

9         to reinterpret.

10    A    I do not know the results of their votes,

11   but this is the language of their statement.

12              MR. LEVIN:  Let's take a five-minute

13         break.

14              THE VIDEOGRAPHER:  Time now is

15         10:54 a.m.  We are off the record.

16              (Recess Taken From 10:54 a.m. To

17              11:09 a.m.)

18              THE VIDEOGRAPHER:  This begins disk 2 of

19         today's deposition.  Time now is 11:09 a.m.  We

20         are back on the record.

21   BY MR. LEVIN:

22    Q    Sir, now I want to go back to where I was

23   when you indicated that you would tell us what you

24   told CNBM Group's board of directors concerning your

25   litigation.  This is an appropriate time to do it.

1    Please tell us your report.

2        A     In the first half year of 2014 Hogan Lovells

3    informed me that the jurisdiction challenge failed and

4    whether or not an appeal were to be made -- was to be

5    made to the Supreme Court.  I felt been wronged and

6    extremely unfair for that matter.  We do not have the

7    intention to have our products occupy American market.

8    We also did not know that our gypsum board had been

9    sent to the United States.  The product gypsum board

10   is a product -- is a very heavy product with high

11   shipping costs.  The basic business knowledge make us

12   aware that this type of product is not suitable for

13   long-distance shipping.  A majority of our products

14   are sold to some distributors.  Under this

15   circumstance it is unfair for the United States court

16   to have made the decision of having jurisdiction over

17   us.

18              During the course of the case when

19   Hogan Lovells represented us it had expressed in

20   multiple occasions that we have a big chance of

21   winning the jurisdiction issue, but yet we failed.

22   Our product had been manufactured in China for 22

23   years.  The similar issue reflected by the American

24   customers, some of the clients had never happened in

25   that duration.  Our country's quality authority, the

1   technology supervisory bureau, had performed testings

2   in similar manner to our products.  We were not

3   informed that we should not manufacture products such

4   as these.  We've been treated unfairly.  I made a

5   summary statement as above to the board of directors'

6   meeting.  That's about it.

7        Q    Let's move on with regard to the document

8   that is in front of him.

9             MR. TAYLOR:  332?

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      Q     Was there fierce criticism by local minority

2   shareholders about the payment for US litigation?

3      A     Correct.

4      Q     Who were the majority shareholders?

5            MR. WU:  Objection, form.

6      A     BNBM.

7   BY MR. LEVIN:

8      Q     And who were the local minority

9   shareholders?

10     A     There are two parts that consist of the

11  local minority shareholders, being Guozi Company and

12  another part being some of the members among us 503

13  shareholders.

14

15

16

17

18

19

20

21

22

23

24

25













1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   BY MR. LEVIN:

1        Q      Show you Exhibit 150, sir.  Is it a fact,

2    sir, that on July 17th, 2014, you failed to appear in

3    the United States in the courtroom of Judge Fallon in

4    the Eastern District of Louisiana for a judgment

5    debtor examination?

6                MR. TAYLOR:  Objection to form.

7           Counsel, are you just asking from his knowledge

8           as a 30(b)(6) witness or from what's stated on

9           this?

10               MR. LEVIN:  His knowledge as a 30(b)(6)

11          witness.

12       A      Correct.

13   BY MR. LEVIN:

14       Q      And is it a fact, sir, that subsequent to

15   your failure to appear Judge Fallon entered an order

16   that's Exhibit 150 before you?

17       A      I don't know why Mr. Fallon had issued this

18   document.

19       Q      That was not my question.  Did he issue that

20   document?

21               MR. TAYLOR:  The record should reflect

22          that the document is in English --

23               MR. LEVIN:  Yeah.

24               MR. TAYLOR:  -- not in Chinese.  And

25          going back to the earlier answer to the

1          question, I just want to be sure that the

2          objection I made still stands.  I made an

3          objection to the form to the first question

4          before this one.

5    BY MR. LEVIN:

6       Q    My question was, were you aware that he

7    issued -- that Judge Fallon issued this contempt order

8    at -- on or about July 17th?

9               MR. TAYLOR:  Objection to form, lacks

10         foundation.

11      A    I'm aware of that Mr. Fallon had issued a

12   contempt order, but I don't know when he issued them.

13   BY MR. LEVIN:

14      Q    Sir, are you aware that the contempt order

15   ordered Taishan to pay 15,000 in attorneys' fees to

16   plaintiffs' counsel?

17              MR. TAYLOR:  Objection to form, lacks

18         foundation.

19      A    I'm aware of that.  I'm aware of that.

20   BY MR. LEVIN:

21      Q    Were you further aware that Taishan was

22   ordered to pay $40,000 as a penalty for contempt?

23              MR. TAYLOR:  Objection to form, lacks

24         foundation.

25      A    I'm aware of that.

1   BY MR. LEVIN:

2       Q      Were you further ordered that Taishan and

3   any of its affiliates or subsidiary were enjoined from

4   conducting any business in the United States until or

5   unless it participates in the judicial process and

6   that if Taishan violated that injunction, it must pay

7   a further penalty of 25 percent of the profits earned

8   by the company or its affiliates who violate the order

9   for the year of the violation?

10              MR. TAYLOR:  Objection to form, lacks

11          foundation and in order to answer required the

12          witness to arrive at and understand several

13          different legal conclusions.

14      A      I'm aware of similar -- I'm aware of there

15   is a content like this in the order.  We have

16   discussed and researched on the content.  We do not

17   know what "affiliate companies" mean.  We also do not

18   know what is a concept of US company.

19   BY MR. LEVIN:

20      Q      Was that order communicated to you by your

21   attorneys at Hogan Lovells, and particularly by Phoebe

22   Yan?

23              MR. TAYLOR:  Objection to form.

24      A      I don't have a clear recollection on who

25   communicated with us.



1

2

3

4      Q      When you received this order, did you take

5      any action to notify your affiliates or subsidiaries

6      as the order states?

7                    MR. TAYLOR:  Objection to form, lacks

8          foundation.

9                    MR. WU:  Objection, form.

10      A      I did not inform them immediately because we

11      do not have a complete understanding of affiliate

12      companies; therefore, I did not immediately make

13      arrangement.

14      BY MR. LEVIN:

15      Q      Well, if you didn't have an understanding at

16      that point in time of affiliates, you certainly had an

17      understanding of subsidiaries at that point in time,

18      didn't you, sir?

19                    MR. TAYLOR:  Objection, form,

20          argumentative.

21      A      I also did not understand subsidiaries.

22      BY MR. LEVIN:

23      Q      Well, did there come a time when you did

24      understand subsidiaries as embodied in that order?

25      A      I only understand the concept of son

1   companies and the concept of shareholding

2   relationships.  I cannot be sure of the concept of

3   subsidiaries.

4       Q     Did you --

5             MR. LEVIN:  Let's mark for

6         identification Exhibit No. 37.

7   BY MR. LEVIN:

8       Q     Are you familiar with Exhibit 37, sir?

9       A     I am familiar with these companies.

10      Q     That is a list that purports to represent

11  subsidiaries provided to us by your now-counsel

12  Bernard Taylor, Senior, and I might add that the

13  testimony of Che Gang said it was prepared by

14  yourself, Messrs. Che Gang and Mr. Taylor.  Is my

15  statement correct?

16      A     Yes.

17      Q     Did there come a time, if ever, when you

18  notified those subsidiaries of the contempt order?

19      A     Yes.

20      Q     And when was that, sir?

21      A     Approximately in February or March of this

22  year.

23      Q     So the subsidiaries were not notified of the

24  contempt order until February or March of 2015; is

25  that correct?

1       A       Correct.  Perhaps --

2                   THE INTERPRETER:  Interpreter needs to

3           clarify with witness.

4                   Upon clarifying with the witness, the

5           answer of the witness is "that is correct."

6   BY MR. LEVIN:

7       Q       Did Taishan, TG, comply with the contempt

8   order?

9                   MR. TAYLOR:  Objection to form, lacks

10          foundation, requires a legal conclusion of this

11          witness.

12      A       Complied.

13  BY MR. LEVIN:

14      Q       And did you comply from the time you

15  received it until the present?

16      A       Yes.

17                  MR. TAYLOR:  Same objection.

18  BY MR. LEVIN:

19      Q       What, if anything, caused you to notify,

20  that is, Taishan to notify its subsidiaries recently

21  of this contempt order?

22                  MR. TAYLOR:  Objection to form.

23      A       We issued the notice after we have had the

24  further understanding of the contempt order,

25  specifically the understanding of business activities

1    in the United States.

2    BY MR. LEVIN:

3        Q     Was that as a result of --

4               MR. TAYLOR:  He's got a -- he needs to

5        hit the rest room.

6               MR. LEVIN:  Okay.

7               THE VIDEOGRAPHER:  Time now is 12 p.m.

8        and we are off the record.

9               (Recess Taken From 12:00 p.m. To

10               1:03 p.m.)

11               THE VIDEOGRAPHER:  This begins disk 3 of

12        today's deposition.  Time now is 1:03 p.m. and

13        we are back on the record.

14    BY MR. LEVIN:

15        Q     Good afternoon, sir.

16        A     Hi.

17        Q     You indicated that in March of 2015 you

18    finally notified your subsidiaries of the contempt

19    order.  How did you do that?

20               MR. TAYLOR:  Objection to form.

21        A     According to our understanding, not to do

22    business with American companies anymore.

23    BY MR. LEVIN:

24        Q     Did you send them something in writing?

25        A     I did not have anything in writing, but I

1    made the requirements clear in the meetings.

2              THE INTERPRETER:  Interpreter needs to

3         clarify whether meeting is plural or singular

4         form with the witness.

5              Upon clarification, meeting will be

6         singular.

7    BY MR. LEVIN:

8       Q    Would you have a meeting with each

9    subsidiary that's identified in Exhibit 37?

10      A    No.  I've only told my deputy general

11   manager please pass down the information and tell them

12   not to do business with relevant companies in the

13   United States.

14      Q    How did your deputy general manager

15   effectuate your directive?

16      A    Some of my deputies are in charge of sales,

17   some in charge of supply, some in charge of

18   production.  They would pass down my comment to their

19   respective staff.

20      Q    Did they report back to you in writing that

21   they had effected your directive?

22              THE INTERPRETER:  This is the

23         interpreter speaking.  What's the definition of

24         "effected" in this context?

25   BY MR. LEVIN:

1      Q      Did they comply with your request?

2      A      No.

3      Q      How do you know they didn't comply with your

4   request?

5                  MR. TAYLOR:  We need to make sure

6          there's not a translation issue here.  We'll

7          figure it out.

8      A      Taishan Gypsum basically has very little

9   foreign businesses.  Therefore, it is very easy to be

10  passed down as well as to be executed.

11  BY MR. LEVIN:

12     Q      What did you do, if anything, to make sure

13  that your deputies complied with your request?

14     A      This is how the works are arranged usually.

15  They will execute it very well.

16     Q      But how do you cause yourself to be

17  satisfied that they executed it?  Did they have to

18  report to you and say that they did?

19     A      They would say they did.

20     Q      And do you keep a record of it to make sure

21  that you were in litigation and -- weren't you aware

22  that this may become an issue in the litigation?

23                  MR. TAYLOR:  Objection to form, lacks

24          foundation, requires a legal conclusion of this

25          witness and it's vague as to time.  Of course

1        compound.

2     A     I will not make a record and I don't think

3  it will be one of the issues in the delegation.

4              MS. EIKHOFF:  We have --

5              MR. TAYLOR:  Translation.

6              MS. EIKHOFF:  Translation.  Delegation?

7              THE INTERPRETER:  Litigation.

8  BY MR. LEVIN:

9     Q     Sir, with regard to Taishan itself, how did

10  you ensure yourself that your directive not to do

11  business in the United States was complied with?

12     A     Because they would tell us if they were to

13  go to the United States to do business.

14     Q     Would they do that in writing, telephone,

15  e-mail?  How would they communicate?

16     A     I almost hold a weekly meeting with all the

17  deputy general managers and in the meetings they would

18  report on the status.

19              THE INTERPRETER:  Interpreter needs to

20        clarify.

21     A     They would give me an oral report on the

22  status of the prior week and they would also give me

23  an oral report on their plans for the following week.

24  I would orally make arrangements of the works for them

25  so I would know.

1    BY MR. LEVIN:

2        Q    Who is Mr. Ren Xulian?

3        A    He's a deputy general manager of ours who is

4    in charge of the production.

5        Q    Did you inform him of the contempt order not

6    to do business in the United States?

7        A    Yes.

8        Q    And when did you so inform him?

9        A    Either in March or in April.  I forgot.

10       Q    Of this year, 2015?

11       A    Yes.

12       Q    Who is Mr. Wang Ruikun, W-a-n-g R-u-i-k-u-n?

13       A    He is the quality management department's

14   director of Taishan Gypsum.

15       Q    And did you inform him of the admonition not

16   to do business in the United States?

17       A    I did not inform him.  It would be

18   sufficient upon informing Ren Xulian.

19       Q    Who is Zhang, Z-h-a-n-g J-u-n-x-i-n-g?

20       A    Zhang Junxing is a manager of one of the

21   factories under TG.

22       Q    And did you inform him of the contempt

23   order?

24       A    I did not.

25       Q    Are you familiar with an American company

 1   that trades as Stepan, S-t-e-p-a-n, Company?

 2      A      I can't say I'm familiar with it, but I've

 3   heard of it.

 4      Q      And under what circumstances did you hear of

 5   it?

 6                  MR. TAYLOR:  This would definitely be as

 7         a 30(b)(6) witness, correct?

 8                  MR. LEVIN:  Yes.  Thank you, again.

 9      A      In around 2013.

10   BY MR. LEVIN:

11      Q      What business is Stepan in?

12      A      Perhaps the additives of gypsum board.

13      Q      And does your -- does Taishan do business

14   with Stepan on a regular basis?

15                  MR. TAYLOR:  Objection to form, requires

16         a legal conclusion of this witness.

17      A      No.

18   BY MR. LEVIN:

19      Q      Did you do business with them in the year

20   2014 and 2015?

21                  MR. TAYLOR:  Objection to form, requires

22         a legal conclusion of this witness.

23      A      In 2014 or 2015, but I don't remember the

24   specific time.  But it was in the beginning of either

25   2014 or 2015.  We've bought from Stepan's Shanghai

1  office once two types of testing agents, two tons per

2  type, total 4 tons.

3  BY MR. LEVIN:

4      Q    Sir, did you do business with them directly

5  during those periods of time?

6              MR. TAYLOR:  Objection to form, requires

7          a legal conclusion of this witness.

8      A    No.

9  BY MR. LEVIN:

10     Q    Did you do business indirectly through a

11 third party with those individual -- with that

12 company?

13             MR. TAYLOR:  Objection, form, lacks

14         foundation and requires a legal conclusion of

15         the witness.

16     A    I want to know who do you refer to when you

17 said "indirect"?

18 BY MR. LEVIN:

19     Q    Did you go another company to do business on

20 your behalf during that period of time?

21             MR. TAYLOR:  Objection to form.

22     A    No.

23             MR. LEVIN:  Let's mark for

24         identification Exhibit 411 and 412.

25             (Deposition Exhibit 411 marked.)

1                    (Deposition Exhibit 412 marked.)

2                    MR. LEVIN:  Let the record show that 411

3          is a Stepan customer visit report dated on or

4          about April 2015 and 412 is a customer -- Stepan

5          customer visit report dated on or about

6          May 2015.

7                    MR. TAYLOR:  Record should also reflect

8          that both Exhibit 411 and 412 are in English,

9          not in Chinese.

10   BY MR. LEVIN:

11        Q    Are you familiar with the subject matter of

12   those reports?  Have you reviewed them?

13        A    I don't know what are the descriptions of

14   these two documents.

15        Q    Well, let's read the short report that

16   Stepan made concerning visitations by Taishan

17   executives -- or employees.

18                    MR. TAYLOR:  Objection, lacks

19          foundation, misconstrues the content of the

20          document itself.

21                    MR. LEVIN:  Well, let me conduct my

22          deposition.

23                    MR. TAYLOR:  Sure.

24   BY MR. LEVIN:

25        Q    The report indicates that Ren Xulian and

1    Wang Ruikun visited Stepan and interfaced with Tony

2    Dou, D-o-u.  It's in English.  It also indicates,

3    "One, that Taishan's legal people can accept to use

4    both English and Chinese in the CDA.  Language,

5    Chinese and English.  If dispute, English would

6    prevail."

7                    It further indicates in paragraph 2,

8    and I want you to pay particular attention to what I

9    say here, "Taishan Gypsum will go on their lawsuit in

10   US.  Mr. Ren concerns that Taishan's cooperation will

11   be affected by this lawsuit.  He concerned -- he

12   concerned if both parties agreed with the agreement

13   but finally the business ban by the lawsuits he hopes

14   Stepan can check if US company can run business with

15   Taishan Gypsum."

16                   Are you aware from either Mr. Xulian

17   or Mr. Ruikun that that conversation took place with

18   Stepan?

19                   MR. TAYLOR:  Objection to form --

20                   MS. EIKHOFF:  Let her translate the

21            question.

22                   MR. TAYLOR:  Objection to form, lacks

23            foundation.  The document, both Exhibit 411 and

24            412 speaks for themselves and there's no way

25            that the record should reflect that the

1        documents are both -- both exhibits are in

2        English and so there's no way that the witness

3        can correct whether the document was read

4        appropriately by counsel.

5               MR. LEVIN:  I've only asked him -- my

6        question to the witness was are you aware that

7        the conversation took place, yes or no.  It has

8        nothing to do with the document.

9               MR. TAYLOR:  I understand.

10              MR. LEVIN:  I just read it from the

11       document.

12              MR. TAYLOR:  I understand.  But I'm just

13       saying it's -- my objection stands.  I don't

14       want to interrupt your questioning.

15              MR. LEVIN:  Did he answer my question?

16              MR. TAYLOR:  I don't think he responded.

17   A     I do not know.

18   BY MR. LEVIN:

19   Q     That was appearing on Exhibit 411 and the

20   document itself has been marked confidential by the

21   third-party witness.

22              Looking at 412, again, more

23   confidential, the document indicates there was a

24   visitation by Mr. Ren Xulian and it was attended by

25   Stepan by Tony Dou.  And I asked you whether you're

1    aware of this fact:  "Mr. Ren said that the Taishan

2    Company will go to court to deal with their lawsuit in

3    US government.  At this moment Taishan is very careful

4    with running business with US company.  Their lawyers

5    suggests them not to sign any agreement with any US

6    company.  So Mr. Ren said that they hold this CDA till

7    the situations get clear.  Taishan also don't want to

8    make trouble for Stepan."

9              Are you aware of that fact, sir?

10             MR. TAYLOR:  Objection, form, lacks

11        foundation -- I'm sorry, I did it again.

12             Objection to form, lacks foundation, is

13        vague as to time frame and the document of

14        course speaks for itself.

15    A    I don't know what Ren Xulian is expressing.

16    BY MR. LEVIN:

17    Q    Did you ever speak to Xulian -- Ren Xulian

18    concerning his business with Stepan?

19    A    I did not speak to him.  I only told him

20    that we cannot do any business with the Americans.

21    Q    And, sir, if he did do business with regard

22    to the Americans, he would be violating your

23    instructions and not what Taishan told him to do?

24             MR. TAYLOR:  Objection to form.

25    A    Please repeat.

1            THE INTERPRETER:  The interpreter will

2       repeat the interpretation.

3       A     Ren Xulian has not done business with

4  American company.  Taishan Company only purchased two

5  types of goods with two tons each from Stepan Shanghai

6  office.  At the time we were not able to confirm

7  whether the Shanghai office is or is not an American

8  company.  When we confirmed that Stepan is a company

9  of the United States registered in Shanghai, we

10  immediately refused to do business with this company.

11  BY MR. LEVIN:

12      Q     What was --

13            MR. TAYLOR:  Hold on.

14            MR. LEVIN:  I'm sorry.

15      A     The American injunction order only expressed

16  that we were not to do business with companies in the

17  United States.  We only learned whether or not the

18  company in Shanghai is an American company afterwards.

19  After we learned that, we immediately refused to do

20  business with the American Shanghai company.  I have

21  always thought up to date that the injunction from the

22  United States is only limited to not do business with

23  the companies within the United States.

24  BY MR. LEVIN:

25      Q     Do --

1               MR. TAYLOR:  Hold on.  He isn't

2      finished.

3      A     If an American company or a company from any

4  other country registered a company in China, which

5  Taishan does business with, I don't think it's in

6  violation of Judge Fallon's American order.  An

7  American company in China, for example, Apple who has

8  cell phone businesses, so is it to say that the staff

9  of Taishan can't even buy cell phones from them?

10  BY MR. LEVIN:

11     Q     You done?  Did Judge Fallon hold Apple in

12  contempt?

13               MR. TAYLOR:  Objection to form, requires

14      a legal conclusion of this witness.

15     A     I don't argue with you.  I only answer your

16  question.

17  BY MR. LEVIN:

18     Q     That was a question.  You may answer it.

19     A     No.

20

21

22

23

24

25







1

2               MR. TAYLOR:  Arnie, he wants to take a

3       break.

4               THE VIDEOGRAPHER:  Time now is 1:48 p.m.

5       We are off the record.

6               (Recess Taken From 1:48 p.m. To

7               2:01 p.m.)

8               THE VIDEOGRAPHER:  This begins disk 4 of

9       today's deposition.  Time now is 2:01 p.m.  We

10      are back on the record.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25











```
1
2
3
4                    (Deposition Exhibit 394 marked.)

5                    MR. LEVIN:  Next, Exhibit 394, which is

6          a summary chart pursuant to Federal Rule of

7          Evidence 1006 with the sales of Taishan Gypsum

8          boards to United States with supporting records

9          including TG's profile form.  It was originally

10         marked and accepted as a Herman affidavit -- as

11         Herman affidavit Exhibit 1.

12                   MS. EIKHOFF:  What do you mean was

13         accepted?

14                   MR. LEVIN:  Just put into evidence.

15                   MS. EIKHOFF:  In court or --

16                   MR. LEVIN:  In court.

17                   MS. EIKHOFF:  Okay.  He's saying a long

18         time ago.

19                   MR. LEVIN:  A long time ago.

20   BY MR. LEVIN:

21        Q    These documents which have been marked as

22   Exhibit 394 were submitted by the Plaintiffs Steering

23   Committee in connection with the personal jurisdiction

24   briefing before the court.

25                   MR. TAYLOR:  Is there a question or what
```

```
 1          you want him to do?

 2                   MR. LEVIN:  Yes.

 3   BY MR. LEVIN:

 4      Q    If you look through them, do they appear to

 5   be your sales data from your company?

 6                   MR. LEVIN:  Will you stipulate to that?

 7                   MR. TAYLOR:  No, of course not.

 8                   Objection to form, lacks foundation.

 9           Counsel, the only -- several problems of course.

10           But one is that some of this is in English and

11           some of it is in Chinese and it is voluminous.

12           It looks like -- I can only guess maybe more

13           than 100 pages or something.  I just don't think

14           he's going to be able to answer your question

15           today unless we can let him sit there and

16           translate what's --

17                   MR. LEVIN:  Let's see whether he can do

18           as best as he can with his product that came

19           into the United States.

20                   MR. TAYLOR:  It's your deposition.

21           You've got the right to pursue it.

22                   MR. LEVIN:  I'm pretty comfortable with

23           my deposition this last day or two.

24                   MR. TAYLOR:  That's right.  I

25           understand.
```

1   BY MR. LEVIN:

2        Q    Sir, do you recognize those type documents

3   as being generally business records of Taishan,

4   materials that are utilized by Taishan in the ordinary

5   course of their business, selling their product, kept

6   by Taishan in their files and authentically the

7   records of Taishan itself?  You don't have to look at

8   each one.  Just tell me whether they look like your

9   particular invoices.

10            MR. TAYLOR:  Objection to form.  It's a

11        composite exhibit prepared by the PSC that this

12        witness wouldn't be familiar with it and it

13        lacks foundation and, again, because much of it

14        is in English, there's no way that this witness

15        could verify and respond to the question.

16            MR. LEVIN:  Why don't we do it this way.

17        Let's take a look at TG 0001647, the very last

18        page of the document.

19            MR. TAYLOR:  Thank you.

20            MR. LEVIN:  Which has Chinese on it.

21            MR. TAYLOR:  Okay.  The last page they

22        want you to go to.  Take your time.

23            Go right ahead, sir.

24   BY MR. LEVIN:

25        Q    Is that, sir, one of your invoices?

1      A     May I ask you a question?

2      Q     Is that, sir, one of your invoices?

3             MR. TAYLOR:  Just that one page?

4             MR. LEVIN:  The one page.

5   BY MR. LEVIN:

6      Q     And it indicates the product sold to Venture

7   Supply, Inc., in Virginia?

8             MR. TAYLOR:  And I object to --

9         objection to form based upon the fact that it

10        exceeds the scope of the 30(b)(6) depositions

11        before -- of him as a 30(b)(6) witness in this

12        deposition and it exceeds the scope of the

13        deposition generally even as an individual

14        witness.

15             It appears like it's been -- it was

16        covered before already and so we're repeating

17        what's been done.

18             MR. LEVIN:  Then you should have no

19        objection to doing the next thing in 30 seconds.

20             MR. TAYLOR:  Well, just making the

21        record.

22             MR. LEVIN:  I understand.

23      A     This is our company's record, but I don't

24   know whether it went to Virginia or not.

25   BY MR. LEVIN:

```
 1       Q      The other forms are the same company forms,

 2   are they not, the invoices?

 3                    MR. TAYLOR:  Objection to form with the

 4         same objection I made -- for the same reasons.

 5                    Objection to form for the same reasons I

 6         asserted earlier.

 7       A      Other forms are different.  I can't make

 8   that judgment.

 9   BY MR. LEVIN:

10       Q      Well, were the other forms from business

11   records of Taishan?

12                    MR. TAYLOR:  Same objection.

13       A      If they're the same forms, I would believe

14   so.  But if they're different, especially if they're

15   in English, I can't be sure of that.

16   BY MR. LEVIN:

17       Q      Okay.  Let's move on.

18                    MR. LEVIN:  Let's mark 162-1.

19                    (Deposition Exhibit 162-1 marked.)

20                    MR. TAYLOR:  Do you want him to open?

21                    MR. LEVIN:  No, not right now.  Only if

22         he wants to.

23                    MR. TAYLOR:  He's going to tell you what

24         he wants.

25   BY MR. LEVIN:
```

1     Q     Sir, in your relations with BNBM, does BNBM

2   often guarantee Taishan's loans from lending

3   institutions?

4     A     Repeat that question.

5               THE INTERPRETER:  Interpreter will

6       repeat.

7     A     The question is unclear.  Borrowing loans

8   from other lending institutions requires a guarantee

9   from BNBM, that's a fact.

10  BY MR. LEVIN:

11    Q     And does Taishan have other entities

12  guarantee Taishan loans from lending institutions?

13    A     No.

14    Q     And is it a fact, sir, that in order for

15  Taishan to be successful and do the business that they

16  do and accomplish in the commercial world what they've

17  accomplished, these guarantees are the life's blood of

18  Taishan?

19               MR. TAYLOR:  Objection to form, lacks

20       foundation, is compound.

21    A     No.

22  BY MR. LEVIN:

23    Q     Could Taishan -- does Taishan have to borrow

24  money in order to engage in the business that Taishan

25  engages in?

1       A     Yes.

2       Q     And in order to borrow money, does Taishan

3    have to provide the lenders with guarantees?

4       A     Correct.

5       Q     And BM is the provider of those

6    guarantees -- BNBM is the provider of those

7    guarantees, aren't they?

8              THE INTERPRETER:  The interpreter will

9         reinterpret the prior questions asked.

10             MR. MOORE:  Objection, form.

11      A     Yes.

12   BY MR. LEVIN:

13      Q     Fine, we'll move on.

14             MR. TAYLOR:  Hold on.  He has a

15        question.

16      A     I would like to say something.

17             MR. TAYLOR:  You can only say it if

18        there's a question.  Does he need to clarify his

19        earlier question -- answer?

20             THE WITNESS:  I would like to explain to

21        them further regarding our financing regarding

22        our loans.

23             MR. TAYLOR:  Well, he's got a right to

24        explain his answer.

25      A     It is a fact that BNBM had provided

1    guarantee for Taishan.  But it is in compliance with

2    the requirements of Hong Kong public listing

3    companies.  CNBM is a Hong Kong public listing

4    company.

5              THE INTERPRETER:  Interpreter needs to

6         clarify.

7         A    CNBM is also the biggest shareholder of

8    BNBM.  Hong Kong Exchange's requirements say that the

9    son companies under it or any related shareholding

10   companies, when borrowing money externally it does not

11   allow other companies to provide the guarantees.  BNBM

12   provided Taishan with guarantee under this

13   circumstance.  Before 2005 Taishan Gypsum's guarantee

14   was provided by the surrounding enterprises of Tai'an

15   to each other.  After BNBM became a shareholder of

16   Taishan Gypsum in 2005 it required us to stop

17   guarantee between us and other companies.  If we were

18   to borrow money from the bank again, it will provide

19   guarantee for us.  This is a requirement of Hong Kong

20   Exchange as well as Shenzhen Exchange.  After --

21             THE INTERPRETER:  Interpreter needs to

22        clarify.

23        A    After BNBM holding shares in Taishan in 2005

24   it requires us to provide reverse guarantees.  In

25   certain years it will charge Taishan Gypsum a

1   guarantee fee.  Originally we were not willing to have

2   BNBM to provide guarantee for us.  We could receive

3   guarantee completely from the surrounding enterprises

4   as well as guarantee companies.  That's all.

5                    MR. LEVIN:  After all of that, I move to

6          strike everything that you've said as being

7          totally unresponsive to any question that I

8          asked.

9                    MR. TAYLOR:  And the record should

10         reflect that --

11                   MR. LEVIN:  He's answered the

12         question --

13                   MR. TAYLOR:  Let him finish.  The record

14         should reflect that the witness was explaining

15         his answer and so to the extent you move to

16         strike, we'll take that up at the appropriate

17         time.

18                   MR. LEVIN:  Absolutely.

19  BY MR. LEVIN:

20      Q    Sir, isn't it a fact that in 2005, 2006 and

21  2007 BNBM provided guarantees for Taishan?

22      A    It happens every year.

23      Q    And it happened in those years?

24      A    What years?

25      Q    2005, '6 and '7.

1      A      Correct.

2                    MR. LEVIN:  133-R.

3                    With regard to the last exhibit, 62-1,

4          we move admission of the same.

5                    MR. TAYLOR:  We object and -- to the

6          admission of the document and we'll make the --

7          as I think we've agreed in the past, we'll make

8          the ultimate decision regarding admissibility of

9          evidence, all objections are reserved, but we'll

10         make that decision [sic] before the court.

11                   (Discussion Off The Record.)

12    BY MR. LEVIN:

13     Q      Sir, have you ever seen that document

14    before?

15     A      No.

16     Q      The Chinese portion of it is at CNBM Group

17    9807.

18                   MR. TAYLOR:  Is there a question?

19                   MR. LEVIN:  Have you ever seen this

20         document before.

21                   MR. TAYLOR:  I thought he said he

22         hadn't.

23                   MR. LEVIN:  He did say no?

24                   MR. TAYLOR:  Yeah.

25                   MR. LEVIN:  He's losing his voice.

1   BY MR. LEVIN:

2       Q     Do you know the subject matter of the

3   document?

4       A     It appears to be a report of CNBM Group's

5   audit department.

6       Q     And who are CNBM Group auditing?

7       A     To the companies under it.

8       Q     And is Taishan being audited by CNBM Group?

9       A     Audited.

10      Q     Is that your --

11            MR. LEVIN:  Is that a response, Sunny?

12            THE INTERPRETER:  Yes.

13  BY MR. LEVIN:

14      Q     The question is yes or no.  Is Taishan being

15  audited as evidenced by this particular document by

16  CNBM Group?

17            MR. TAYLOR:  I think you need to give

18      him --

19      A     Yes.

20  BY MR. LEVIN:

21      Q     And are you familiar with the infractions

22  that CNBM Group found with regard to Taishan?

23            MR. TAYLOR:  Objection to form.

24      A     I'm familiar.

25  BY MR. LEVIN:

1      Q     And does this document reveal those

2   infractions?

3      A     They're revealed.

4            MR. TAYLOR:  I don't think -- let me

5         see.  What was the answer?

6            MR. LEVIN:  The answer was they're

7         reviewed and I'll follow through.

8            THE INTERPRETER:  The interpreter's

9         pronunciation is incorrect.  Revealed.

10           MR. LEVIN:  That's fine.

11  BY MR. LEVIN:

12     Q     How often has Taishan been audited by CNBM

13  Group since 2005?

14     A     I don't have a clear recollection.  At most

15  twice.

16     Q     Is it each and every year?

17     A     No.

18     Q     Twice in the last ten years?

19     A     At most twice.

20           MR. LEVIN:  Let's take five minutes now.

21        It will help expedite things.

22           THE VIDEOGRAPHER:  Time now is 2:51 p.m.

23        We are off the record.

24           (Recess Taken From 2:51 p.m. To

25           3:06 p.m.)

```
 1              THE VIDEOGRAPHER:  This begins disk 5 of

 2        today's deposition.  Time now is 3:06 p.m. and

 3        we are back on the record.

 4              MR. LEVIN:  Let's mark for

 5        identification 408-1.

 6              (Deposition Exhibit 408-1 marked.)

 7              MR. LEVIN:  For purposes of

 8        identification, yesterday we presented into

 9        evidence 408 and there was colloquy that it was

10        stale, there was no Department of Labor.  So

11        over the recess last night we have found a

12        document which we designate as 408-1, which is a

13        2014 document of the Ministry of Human Resources

14        and Social Security of the People's Republic of

15        China.  We marked that for identification as

16        part of the record and it speaks for itself and

17        we can move on.

18              MR. TAYLOR:  And my only objection is to

19        the PSC's lawyer's commentary.

20              MR. LEVIN:  Let's mark for

21        identification --

22              MR. MOORE:  Objection, form to the last

23        commentary.

24              MR. TAYLOR:  And there was no question

25        to witness?
```

```
 1                    MR. LEVIN:  There was no question.

 2                    I would like to mark for identification

 3          Exhibit 356.  This document is the Eighteenth

 4          Meeting of Third Board of Directors of China

 5          National Building Material Company.  This was

 6          submitted to the court for purposes of a

 7          clawback by CNBMG and the court has redacted

 8          portions of the document.

 9   BY MR. LEVIN:

10      Q    And I ask the witness whether he's ever seen

11   this document before?

12                    MR. TAYLOR:  Let me get into the Chinese

13          version.

14                    MR. LEVIN:  Do you want some time with

15          the document?

16                    MR. TAYLOR:  Yeah, I just want to make

17          sure he's looking at the Chinese version of the

18          document.  Just make sure.

19                    MR. LEVIN:  It is at 346630 on the

20          Chinese version.

21                    MR. TAYLOR:  That's where you want him

22          to look?

23                    MR. LEVIN:  Yes.

24   BY MR. LEVIN:

25      Q    And I call your attention to the last
```

 1   three -- the Chinese where it begins with Cao comment,

 2   I think whenever.  Jia Tongchun leaves the country.

 3   That's what I want to talk to the witness about.

 4              THE INTERPRETER:  This is the

 5      interpreter speaking.  What page is it?

 6              MR. LEVIN:  346630.

 7              THE INTERPRETER:  In English?

 8              MR. LEVIN:  In Chinese.

 9              THE INTERPRETER:  What page is it in

10      English?

11              MR. LEVIN:  Page 12 of 23 if you look on

12      the right -- upper right hand.

13              THE INTERPRETER:  Thank you.

14              MR. LEVIN:  You're on the right page,

15      Sunny.

16              THE INTERPRETER:  This is the

17      interpreter speaking.  There is no corresponding

18      translation for the English word "whenever" --

19              MR. LEVIN:  Okay.

20              THE INTERPRETER:  -- on the Chinese

21      version.

22              MR. LEVIN:  Why don't you just translate

23      the Chinese into English where -- the statement

24      of Mr. Cao about -- it's about Jia Tongchun.

25              THE INTERPRETER:  Translate from Chinese

1          back into English?

2                    MR. LEVIN:  Yeah, just so we have a

3          frame of reference because you said there's no

4          whenever.  I didn't know whether you could find

5          it.

6                    THE INTERPRETER:  I think --

7                    MR. LEVIN:  Do you have a suggestion,

8          Sunny?

9                    THE INTERPRETER:  Only there is a risk

10         if Jia Tongchun goes abroad.  Would counsel want

11         the interpreter to continue translation?

12                    MR. LEVIN:  Yeah, just continue those

13         three lines.

14                    THE INTERPRETER:  The legal system of

15         Papua, New Guinea and Australia are similar.

16         The interpreter is done with the interpretation

17         of Mr. Cao's comment.

18   BY MR. LEVIN:

19      Q    Well, the English version says, and this was

20   provided as non-redacted by the judge, that Mr. Cao

21   said, "I think whenever Jia Tongchun leaves the

22   country, there is risk.  The legal systems in Papua,

23   New Guinea and Australia are similar."  In words or

24   substance, is that what the Chinese version says?

25                    MR. TAYLOR:  Objection, the certified

1          interpreter and translator has already on the

2          record indicated that there is a considerable

3          difference between the Chinese version of what

4          Chairman Jia was saying and the English version.

5          The difference between if -- the use of the word

6          if and the use of the word whenever.

7                    THE INTERPRETER:  This is the

8          interpreter speaking.  In fact, the interpreter

9          will interpret in different wordings, but I

10         believe the substance of the translation is the

11         same.

12                   MR. LEVIN:  Well, maybe I can be

13         helpful.  This document was provided to us and

14         translated by the maker of the document, CNBM

15         Group, and they are the ones that translated it

16         as "I think whenever Jia Tongchun leaves the

17         country there is risk.  The legal systems in

18         Papua, New Guinea and Australia are similar."

19                   MR. TAYLOR:  Understood.  Same

20         objection.  Objection still stands.

21    BY MR. LEVIN:

22        Q    Who is Cao, C-a-o?

23        A    I would guess it's Cao Jianglin.  You have

24    it on the prior page.

25        Q    And what is his -- who is his employer and

1    what is his title?

2        A     Currently he's the general manager of CNBM

3    Group.

4        Q     And do you have any idea why Mr. Cao was

5    concerned about your risk of leaving the country?

6               MR. TAYLOR:  Objection, lacks

7          foundation.

8        A     For this issue I don't know why Mr. Cao had

9    said what he said.

10   BY MR. LEVIN:

11       Q     Do you trust Mr. Cao to be concerned about

12   you?

13              MR. TAYLOR:  Objection, lacks -- I'm

14          sorry.

15              THE INTERPRETER:  The interpreter

16          doesn't understand the question.

17   BY MR. LEVIN:

18       Q     Why is Cao --

19              MR. TAYLOR:  Was the question asked and

20          answered?

21              MS. ROBERTSON:  She didn't understand

22          the interpretation.

23              MR. TAYLOR:  I'm sorry.

24   BY MR. LEVIN:

25       Q     Why is Mr. Cao concerned about your travel

1   abroad?

2              MR. WU:  Objection, form.

3              MR. TAYLOR:  Objection, lacks

4        foundation, calls for speculation.

5   A     May I speculate?

6              MR. TAYLOR:  You're not required to

7        speculate in your testimony, but you can answer

8        the question in the way you --

9   BY MR. LEVIN:

10   Q     No.

11   A     Then I cannot answer this question.

12   Q     Was Mr. Cao concerned about your being

13   affected by legal process in another country?

14              MR. TAYLOR:  Objection to form --

15              MR. WU:  Objection, form.

16              MR. TAYLOR:  -- requires speculation.

17   A     I don't know.

18              MR. LEVIN:  Let's mark for

19        identification 359.

20              (Deposition Exhibit 359 marked.)

21   BY MR. LEVIN:

22   Q     Sir, I show you 359 which is a motion for

23   contempt filed against you and others which has not

24   been acted upon by Judge Fallon.  Having seen this

25   motion, do you believe that Mr. Cao was concerned

 1   about legal process because of this motion that is

 2   pending?

 3            MR. TAYLOR:  Objection to form.  The

 4        document is all in English and there's no

 5        foundation laid.  As a matter of fact, the

 6        foundation is just the opposite, that the

 7        witness does not read English.

 8            MR. LEVIN:  Well, just a narrative.

 9   BY MR. LEVIN:

10      Q    Are you aware, sir, that there's a motion

11   for contempt pending in the United States District

12   Court for the Eastern District of Pennsylvania -- boy,

13   I keep going back there -- United States District

14   Court for the Eastern District of Louisiana against

15   you?

16      A    I'm aware of the motion.

17      Q    Sitting here today, do you believe that

18   Mr. Cao was concerned about your ability to travel

19   abroad with this motion pending?

20            MR. TAYLOR:  Objection to form, requires

21        speculation.

22      A    I don't know.

23   BY MR. LEVIN:

24      Q    Let's move on.

25            MR. LEVIN:  Exhibit 355.

1                    (Deposition Exhibit 355 marked.)

2    BY MR. LEVIN:

3       Q     355 is a document produced by BNBM PLC

4    titled Taishan Gypsum Company, Limited communication

5    letter on economic responsibility audit and financial

6    base audit.

7                    Sir, have you ever seen this document

8    before?

9                    MR. TAYLOR:  Before he answers, I assume

10         he should start reading from 8152, the Chinese?

11                   MR. LEVIN:  Yeah.

12                   MR. MOORE:  Arnold, can you help me with

13         something here on this exhibit?  There's been so

14         many exhibits now.  Is this one that has been

15         translated, redlined, ruled on by the court or

16         is this just a new one that's come out?

17                   MR. LEVIN:  No -- no redline?

18                   MR. MOORE:  No redline, no ruling.

19                   MR. LEVIN:  No.

20                   MR. MOORE:  I'm going to need a moment

21         to take a look at this, Mr. Levin.  I'm going to

22         have to have a few minutes to review this

23         document.

24                   MR. TAYLOR:  Wait until he reviews it

25         before we go forward.

1              MR. MOORE:  Thank you.

2              MR. TAYLOR:  Let's take a minute.

3              MR. LEVIN:  Well, if he's reviewing

4         it --

5              MR. TAYLOR:  He may have some problem

6         with the translation.

7              MS. EIKHOFF:  Are you calling for a

8         break?

9              MS. ROBERTSON:  No, we're going to move

10        to another document.

11             MR. MOORE:  If you move to another

12        document, just give me a chance to review this.

13        That's all.

14             MR. LEVIN:  Do you mind us moving to

15        another document while you're reading that?

16             MR. MOORE:  I don't.  Unless it's

17        another one like this.

18             MR. LEVIN:  I really think in fairness

19        to you we ought to wait for the next document

20        because I think it should be before you when --

21        I'm sorry.  I was talking to him.  When we

22        review it.  I don't want -- I want you to have

23        the ability not to be looking at something when

24        something else you may be interested in --

25             MR. MOORE:  Well, just give me a few

1        minutes to scan through it.

2              MR. LEVIN:  Exactly.  That's all I'm

3        suggesting.  You're not taking much time out.

4              THE VIDEOGRAPHER:  Time is 3:28 p.m.  We

5        are off the record.

6              (Recess Taken From 3:28 p.m. To

7              3:30 p.m.)

8              THE VIDEOGRAPHER:  Time now is 3:30 p.m.

9        We are back on the record.

10   BY MR. LEVIN:

11       Q    I think my question to you, sir, was have

12   you ever seen this document before?

13       A    I have.

14       Q    And is it a fact, sir, that it is a CNBM

15   Group Economic Responsibility Audit of Taishan Gypsum

16   Company, Limited auditing group?

17       A    Correct.

18       Q    What is the Taishan Gypsum auditing group?

19   If you turn to the last page, that's where it's

20   stated, sir.

21       A    It doesn't have the word you just said.

22              THE INTERPRETER:  This is the

23        interpreter speaking.  The Chinese says group

24        instead of -- says unit instead of group -- or a

25        small group instead of group.

1    BY MR. LEVIN:

2        Q      What is the Taishan Gypsum Company, Limited

3    unit?

4        A      To cooperate with the work of CNBM Group's

5    auditing we established this auditing unit.

6        Q      Are you a member of the auditing unit?

7        A      I am not.

8        Q      Who is?

9        A      Relevant people in our audit department.

10       Q      Who is the head of your audit department in

11   May of 2012?

12       A      Cao.  I don't remember the person's name,

13   but she is a female by the name -- the last name of

14   Cao.

15       Q      Sir, was this audit designed --

16       A      Now I remembered.  Shao Ming.

17       Q      Sir, was this audit designed to audit

18   Taishan's significant operating activities and

19   business decision-making in order to quantify the

20   effectiveness of its decisions and to provide

21   quantitative bases for economic responsibility

22   evaluations?

23               THE INTERPRETER:  This is the

24        interpreter speaking.  Where is the counsel

25        reading from?

1                    MR. LEVIN:  From 8154.  Chinese 8153,

2          page 2 of 15.

3                    MR. TAYLOR:  Objection, lacks

4          foundation, calls for speculation.

5     A     I don't know the purpose of CNBM's auditing.

6     It only says to audit in accordance with the

7     requirement of the government.

8     BY MR. LEVIN:

9     Q     Well, that's -- they are auditing operation

10    activities and business decision-making, is that

11    correct, sir, yes or no?

12                   MR. WU:  Objection, form.

13                   MR. TAYLOR:  Objection to form,

14         foundation, argumentative, calls for

15         speculation.

16    A     I don't know.

17                   (Deposition Exhibit 323 marked.)

18                   MR. LEVIN:  323 redacted.  This document

19         was clawed back by BNBM PLC.  In its present

20         form it is the form that BNBM PLC has agreed to

21         as being the redacted form that they would

22         desire.  It will be the subject matter of a

23         motion, and for purposes of this proceeding it

24         is just being marked for identification.

25                   MR. MOORE:  That's fine.  Although,

```
1          Mr. Levin, let me say this on the record.
2          Obviously you're free to file your motion, but
3          we did -- I will make an effort to go through
4          the document and not redact certain portions of
5          it that I felt were not privileged.  So you're
6          free obviously to question the witness on those
7          portions today because we don't know how the
8          ultimate rulings are going to come out.  So I
9          just want to make that clear that if you choose
10         not to go forward and question the witness on
11         the portions that I did not redact, you know,
12         it's not going to be a basis to bring the
13         witness back.
14              MR. LEVIN:  It's at my risk?
15              MR. MOORE:  It's at your risk, yes, sir.
16              MR. HERMAN:  Well, on the record but
17         while there's an interruption, I don't accept
18         that it's anybody's risk.  If you redact
19         yourself your own document, that is, BNBM
20         redacts its own document and there's an
21         agreement among the parties on a redaction to
22         get it identified in an exhibit, it doesn't mean
23         that we're restricted at some future date after
24         the judge has ruled on the complete document
25         asking questions about it.
```

1                MR. MOORE:  Yeah, Mr. Herman, I don't

2        disagree with what you just said.  I'm saying in

3        the event -- we don't know how the judge is

4        going to rule.  In the event the judge is going

5        to rule that my redactions were appropriate,

6        then you would have had your opportunity today

7        to ask the witness about the parts that are not

8        redacted.  That's my only point.

9                MR. HERMAN:  That would cause us to

10       speculate as to what the judge is going to do

11       and I don't think it's a fair statement.

12                MR. MOORE:  And I'm not --

13                MR. HERMAN:  Be that as it may, you made

14       your position clear, I've made our position

15       clear.  And, Arnold, you're in charge.  You go

16       forward or don't go forward.  But I think we're

17       protected.

18                MR. MOORE:  I think both sides have made

19       their position clear.  Thank you.

20                MR. LEVIN:  Exhibit 416.

21                (Deposition Exhibit 416 marked.)

22                MR. LEVIN:  Perhaps we could take five

23       minutes and allow the witness to review.  Is

24       that okay with you, Bernard?

25                MR. TAYLOR:  That is absolutely fine.

```
 1              MR. LEVIN:  I think it will expedite

 2       things.

 3              MR. TAYLOR:  Just let him know where he

 4       should start.

 5              MR. HERMAN:  While the witness is

 6       reviewing I have another comment for the record.

 7       My comment is that documents produced after

 8       30(b)(6) witnesses for parties have been

 9       produced are certainly subject after the court's

10       ruled to question the 30(b)(6) witness on since

11       the production was delayed.

12              MS. DUGGAN:  And for the record, the PSC

13       prepared the translation that's attached to this

14       document and we've highlighted in the portions

15       in Chinese that were translated.

16              MS. EIKHOFF:  We were going to take a

17       break, right?

18              MR. LEVIN:  Yes.

19              THE VIDEOGRAPHER:  Time now is 3:43 p.m.

20       We are off the record.

21              (Recess Taken From 3:43 p.m. To

22              3:49 p.m.)

23              THE VIDEOGRAPHER:  Time now is 3:49 p.m.

24       We are back on the record.

25   BY MR. LEVIN:
```

1      Q      Sir, have you looked at this document which

2   has been marked for identification as 416?

3      A      I did.

4      Q      And this document was produced by CNBM

5   Group.  And on the title it says Taishan Gypsum

6   Company, Limited Comprehensive Risk Management Report

7   for the year 2011.  What is that?  What is a risk

8   management report?

9      A      In the ordinary course of business every

10  company every year would come up with a report stating

11  what are the risks for this year, what are the things

12  that need to be done and how to prevent.

13     Q      At Taishan this group is under your --

14  strike that.

15             At Taishan the comprehensive risk

16  management leadership group, whose chief is Chairman

17  Jia; is that correct, sir?

18             MR. TAYLOR:  Objection to form, vague as

19       to time frame.

20     A      It's me.

21  BY MR. LEVIN:

22     Q      And the work that you do is in accordance

23  with the requirements of CNBM Co., Limited; is that

24  correct?

25             MR. TAYLOR:  Objection to form, lacks

1        foundation.

2        A     No.

3   BY MR. LEVIN:

4        Q     Well, do you read paragraph 1, it says

5   according to the requirements by CNBM Co., Limited,

6   doesn't that set the protocol for the risk management?

7               MR. TAYLOR:  Objection to form.

8        A     Where does it say that?  I don't see that.

9   Where is it?

10               THE INTERPRETER:  The interpreter just

11         pointed for the witness on the Chinese version.

12        A     That is what the document says.  But every

13   enterprise in an ordinary situation would have come up

14   with a report like this.  CNBM Company, Limited

15   required us to write that in accordance with its

16   format and we wrote it based on its requirement.

17   BY MR. LEVIN:

18        Q     So BNBM, Limited required you to write that

19   the report was in accordance with the CNBM Co.,

20   Limited requirements?

21               MR. TAYLOR:  Objection to form,

22         misstates the witness's prior testimony.

23   BY MR. LEVIN:

24        Q     There's a question pending, sir.

25        A     No.

1       Q       I misheard you, sir.  It is CNBM Company,

2   Limited that required you to write the report in

3   accordance with the CNBM Company, Limited

4   requirements?

5                   MR. WU:  Objection, form.

6       A       Please re-ask the question.

7                   THE INTERPRETER:  The interpreter will

8       repeat.

9       A       No.

10  BY MR. LEVIN:

11      Q       Well, the report starts off, according to

12  the requirements by CNBM Co., Limited.  Did this

13  report comply with the requirements of CNBM Co.,

14  Limited?

15                  MR. WU:  Objection, form.

16                  MR. TAYLOR:  Is there a question?

17                  MR. LEVIN:  Yes.  Did this report comply

18      with the requirements of CNBM.

19                  MR. TAYLOR:  Okay.  Got it.  Thank you.

20      A       They did it according to some of the

21  requirements by BNBM Company, Limited.  Among those

22  requirements they required us to do that in accordance

23  with CNBM Company, Limited's requirements.  That's my

24  understanding.

25  BY MR. LEVIN:

```
 1      Q      Does CNBM Group issue opinions on the work

 2   arrangements of the comprehensive risk management

 3   group?

 4              MR. WU:  Objection, form.

 5      A      I don't know when.

 6   BY MR. LEVIN:

 7      Q      Ever?  Do they ever?

 8              MR. TAYLOR:  Objection to form.

 9              THE INTERPRETER:  Interpreter needs to

10        clarify gender in the witness's testimony.

11      A      CNBM's audit group required us to do it

12   according to CNBM's requirements.

13              THE INTERPRETER:  Interpreter needs to

14        clarify with witness.

15      A      For this risk management report nobody from

16   CNBM came to our company to tell us what to do.

17   BY MR. LEVIN:

18      Q      They just told you how to do it?

19              MR. TAYLOR:  Objection to form.

20      A      BNBM distributed a document requires us what

21   to do.

22   BY MR. LEVIN:

23      Q      Could you read at 371521 paragraph No. 2,

24   the plan of the comprehensive risk management work by

25   Taishan Gypsum in 2011.
```

```
 1                    MR. LEVIN:  Sunny, it may be --

 2                    MS. EIKHOFF:  One more page.

 3                    MR. TAYLOR:  There you are.

 4                    MR. LEVIN:  Strike my question.  It may

 5         be easier if the witness reviews the paragraph

 6         and then I read it in English.  The paragraph in

 7         Chinese begins at page 6, which is 1, to above.

 8                    THE INTERPRETER:  The interpreter didn't

 9         understand the instruction the paragraph in

10         Chinese begins at page 6, which is --

11                    MR. LEVIN:  Page 6.  It says 2.

12                    THE INTERPRETER:  The highlighted part?

13                    MR. LEVIN:  Yes.

14                    THE INTERPRETER:  The interpreter had

15         already pointed for the witness earlier on the

16         highlighted part that he's supposed to be

17         reading from.

18                    MR. TAYLOR:  I'm confused.  What page

19         are we starting from?  What's the Bates number?

20                    MR. LEVIN:  Our Bates number is 371521.

21                    MR. TAYLOR:  I see what the page says.

22                    MR. LEVIN:  And I'll read.  "(2), The

23         plan of the comprehensive risk management work

24         by Taishan Gypsum in 2011.  This plan is made

25         according to the requirements and the opinions
```

```
 1          on the work arrangements of the comprehensive

 2          risk management for the year 2011 (CNBM issuance

 3          [2011] No. 45) issued by China National Building

 4          Materials Group Corporation and is adjusted

 5          according to the actual situation of Taishan

 6          Gypsum.  The comprehensive risk management work

 7          is included in the annual work plan of operation

 8          and management to achieve the integration of

 9          risk management with daily operational

10          management."

11   BY MR. LEVIN:

12       Q    Did I read that correct, sir?  Is that what

13   the Chinese version says?

14               MR. TAYLOR:  She's got to interpret for

15          him.

16       A    That's what the document says.

17               MR. TAYLOR:  And we object on -- because

18          I couldn't tell if the translator was reading

19          the Chinese version or the English version.

20               THE INTERPRETER:  The interpreter is

21          reading from the Chinese version.

22               MR. TAYLOR:  And counsel read from the

23          English version so I just don't know if it's the

24          same.  I understand what's happening.  Just an

25          objection.
```

1            MR. LEVIN:  And as I understand it, the

2        witness has answered?

3            MR. TAYLOR:  It's only based upon what

4        the interpreter read to him.  We understand.

5            MR. LEVIN:  I heard an answer.

6            MR. TAYLOR:  Yeah, I think there was an

7        answer.

8   BY MR. LEVIN:

9    Q    The question was --

10            THE INTERPRETER:  The witness answered

11        "That's what the document says."

12   BY MR. LEVIN:

13    Q    Looking at 371557 and a table comparing the

14   significant important risks of 2010 and 2011 that

15   Taishan Gypsum assessed and confirmed in the chart in

16   the right-hand column says legal dispute risk and the

17   risk level is listed as significant.

18    A    Yes.

19    Q    And this is a report that your group

20   prepared?

21    A    Yes.

22    Q    And you are the chief of that group?

23    A    Yes.

24    Q    And do you have any other legal risks other

25   than this suit and related suits involving Chinese

1    drywall?

2                    MR. TAYLOR:  Objection to form, lacks

3          foundation, requires a legal conclusion by this

4          witness.

5      A    Other legal risks are quite minor.  This is

6    the most significant legal risk.

7    BY MR. LEVIN:

8      Q    And when you said "other," you're referring

9    to other than Chinese drywall litigation.  And it's

10   the Chinese drywall litigation that's a significant

11   risk; is that correct?

12                   MR. TAYLOR:  Objection to form.

13     A    Correct.

14   BY MR. LEVIN:

15     Q    Underneath that is financing and investment

16   management, and that's 371559.  Page 44 of the Chinese

17   version paragraph 4.  Could you read the Chinese

18   version to become familiar with it.

19     A    Yes.

20     Q    And I'll read the English from the

21   beginning.  "At the end of every year, according to

22   the anticipated operational activities of the entire

23   Group and the cash flow produced by the investment

24   activities in the coming year, the main office of the

25   Company would uniformly formulate financing plans

1    which include financing amounts and guarantee methods,

2    and submit them to BNBM PLC.  All financing activities

3    of the subsidiary companies must be appraised by main

4    office of the Company and approved by the general

5    shareholders' meeting of the Company, and after that

6    financing amounts shall be reasonably arranged, the

7    payment plan shall be formulated, the funds shall be

8    reasonably allocated and used according to the needs

9    of production and operation as well as the progress of

10   project completion, to ensure the smooth flow of

11   capital chain and the smooth progress of production,

12   operation, and project construction."

13            Is what I read true?

14   A     It is true.

15   Q     And the report goes on to say, "As to

16   investment, in order to ensure the safety of capital

17   the company's main office and subsidiaries may not

18   invest in any security or fund without authorization."

19            Who would you require authorization

20   from?

21   A     The company's headquarters, which is

22   referring to Taishan Gypsum Company.  Yes, the company

23   that I manage, it requires its headquarters'

24   authorization.

25   Q     Goes on to state, "As to project investment,

1    the technology development center shall uniformly

2    formulate project feasibility, report and budget and

3    investment plan report to BNBM PLC for archiving and

4    implementing upon the approval from the board of

5    directors and the general shareholders' meeting."

6                Is that correct?

7    A     Yes.

8    Q     And who are the general shareholder?

9    A     I'm one of the shareholders.

10   Q     Who are the other?

11   A     BNBM.

12   Q     Do we have, sir, Peng's complete residential

13   address today?

14              MR. TAYLOR:  Not yet.  We have what we

15         can give you and I think what we don't have

16         is --

17              MR. LEVIN:  Could you give us what you

18         have?

19              MR. TAYLOR:  Sure I will.  I'll give it

20         to you today before we leave here.

21              MR. HERMAN:  Can we get it on the record

22         since the judge has made the request?

23              MR. TAYLOR:  We can -- we can get it on

24         the record at some point.  I'll have to look it

25         up today and then see if we can get it on the

1          record today.

2                    MR. HERMAN:  Well, I'm mistaken.  I

3          thought -- and I could be wrong.  I thought in

4          our conversation with the judge --

5                    MR. TAYLOR:  He was going to give him

6          the --

7                    MR. HERMAN:  -- that Chairman Jia had

8          gotten permission from Mr. Peng --

9                    MS. EIKHOFF:  Hold on.

10                    MR. TAYLOR:  Hold on.  I'm trying to

11          make sure I've got my ducks in a row here.  If

12          you ask Chairman Jia, he can give you the

13          address.  I just wanted to be sure.  I don't

14          have the paper in front of me.

15   BY MR. LEVIN:

16     Q     Chairman Jia, what is your colleague -- your

17   ex-colleague Peng's complete residential address?

18     A     He did not tell me his complete residential

19   address.  I called him personally on the 12th of this

20   month.  He told me that his address is Shandong

21   Province, Taian City, Daiyue Huayuanzhou District.

22   That's all he told me.  Huayuanzhou District is a

23   residential district with about 10,000 residents.  It

24   is very easy to find him in this district.  If you

25   need me to assist in finding him, I can assist in

1    finding him.

2              MR. TAYLOR:  How about if we just tell

3         you that we're going to make every effort to

4         make sure we get a more specific street address

5         if indeed one exists?

6              MR. LEVIN:  Okay.  I accept your

7         statement.

8              MR. TAYLOR:  Whatever the address is,

9         we'll get a specific -- more specific address in

10        that area.

11             MR. HERMAN:  I have a question in light

12        of the fact that you represented to the judge --

13   A     I'm not finished yet.  I want to continue.

14             MS. EIKHOFF:  Wait, he's not finished.

15   A     Because in China it is okay to ask a general

16   residential address of somebody, but it is very

17   impolite to ask about the specific number of that

18   address.  Therefore, I did not further inquire in what

19   building, on what floor and what unit he lives.

20             MR. TAYLOR:  But as we've indicated on

21        the record, we will --

22             (Simultaneous Discussion Interrupted by

23        Reporter.)

24             MR. TAYLOR:  As I indicated to the judge

25        also, we will redouble our efforts to try to get

1        a more specific, more detailed address.  What we

2        have is what we have.

3                MR. HERMAN:  My recollection for the

4        record is that on September 17th at 9 p.m. Hong

5        Kong time it was represented to Judge Fallon and

6        the PSC that Mr. Peng's home address had been

7        given to Mr. -- Chairman Jia and would be

8        furnished to us and we're waiting for this

9        address for quite some time.  We've spent

10       substantial funds having an investigator attempt

11       to get the address and this is another matter

12       which we intend to bring to Judge Fallon

13       immediately upon our return and after I have

14       looked at the representations that are

15       transcribed that were made to Judge Fallon.

16               MR. TAYLOR:  Okay.

17               MR. HERMAN:  The impolite custom of one

18       person to another in light of 3 to 4,000 people

19       whom we represent who have been adversely

20       affected by a product over which Mr. Peng had

21       substantial knowledge is not a sufficient excuse

22       to fail to provide this address, in my view.  I

23       believe that we need to demand it on behalf of

24       our clients and demand it immediately.  And it

25       will be part of -- in the event that I recall

1        the transcript correctly, it will be part of

2        whatever motion practice we bring on this issue.

3                MR. TAYLOR:  Understood.

4                MR. LEVIN:  At this time I move the

5        admission of each and every exhibit which was

6        identified for the record in the two-day hearing

7        of Chairman Jia's testimony.

8                MR. TAYLOR:  And we object and reserve

9        the right to review the documents and confer

10       with the court regarding the ultimate decision

11       as to admissibility.

12               MR. LEVIN:  We will provide a list for

13       you of all those exhibits.  I'm keeping the

14       deposition open and the movement will be as to

15       each individual exhibit.

16               MR. TAYLOR:  Understood.  Thank you very

17       much.

18               MR. HERMAN:  We had some discussions

19       this morning before we began.  One discussion we

20       had with counsel opposite regarded the computer.

21       If I'm correct, we were advised that a computer,

22       and I assume the hard drive, cannot leave China;

23       that there are approximately five law firms in

24       China that have superintendents of

25       State-owned -- of State secrets that there's a

1       process that has to go through a review in order

2       for the materials that have been downloaded to

3       be produced.  We do not have an estimated date

4       of production, but learned counsel opposite has

5       indicated he'll provide us with his best

6       estimate after he confers.  We have requested

7       that that computer be turned over directly from

8       the third party that has custody of it now and

9       all the production that all -- to Alston & Bird

10      to be maintained separately until the court has

11      an opportunity to consider the matter and

12      appoint its own custodian.  Again, in connection

13      with PTO 1 we request that the hard drives and

14      the computers, desktop and otherwise, of

15      Mr. Peng and Taishan Gypsum and Mr. Peng's

16      computer at Taishan Gypsum be taken into custody

17      immediately by Alston & Bird in China in some

18      secure location.

19            In addition to that, three witnesses now

20      have indicated that they don't use e-mails, that

21      primarily they use text messages.  As far as I

22      understand, we have not yet received a text

23      message from any Taishan Gypsum employee.  We

24      have not received text messages from CNBM, CNBM

25      Group, BNBM or BNBM Group.  It is our view that

1         PTO 1 requires counsel for these parties not

2         only to produce relevant non-privileged material

3         but a privilege log as to such material and

4         machine translations of such material and that

5         they're always known to us to search hard drives

6         for text messages.  And thus far as far as we

7         have been told there's been no search in

8         particular for text messages.

9              In addition to that, we understood at

10        the discussion and argumentative with the court

11        on September 17th at 9:00 p.m. that Mr. Peng

12        would be produced as a witness and had agreed to

13        do so, and we ask that counsel confer with us,

14        agree on a date for Mr. Peng's appearance before

15        Judge Fallon in the city of New Orleans,

16        Louisiana before any hearing on November 7th so

17        that he may give his testimony under oath.

18             MR. TAYLOR:  Are you finished?

19             MR. HERMAN:  November 10th.

20             MR. TAYLOR:  Are you finished, sir?

21             MR. HERMAN:  Well, I'm finished with

22        that issue.

23             MR. TAYLOR:  Let me know when you're

24        going to stop talking.

25             MR. HERMAN:  There were other issues

```
 1          that were discussed this morning, affirmed from
 2          the PSC's point of advantage.  We are not
 3          interested in looking at Chairman Jia's medical
 4          records.  We are not interested in other parties
 5          seeing chairman Jia's medical records.  But
 6          under all the circumstances we believe that
 7          Chairman Jia's complete medical records from
 8          2005 to date, whether they be hospital records,
 9          herbal doctors' records, medical doctors'
10          records or other medical technician records, as
11          well as prescription records, be furnished to
12          Judge Fallon as soon as counsel for Alston &
13          Bird can arrange that they be sealed and only
14          under view by Judge Fallon.  Now I'm finished.
15               MR. TAYLOR:  I'm going to take it in
16          reverse order because I want to make sure I
17          remember everything.
18               First of all, in regards to the medical
19          records, what we represented is that we would
20          leave the issue to Judge Fallon to decide.  And
21          if he decides that the records should be
22          reviewed by him, then we will make every effort
23          to make sure --
24               MR. HERMAN:  I accept that explanation.
25               MR. TAYLOR:  Secondly, in regards to
```

1     Mr. Peng, we never said that Mr. Peng had agreed

2     to be produced.  What we said was that we were

3     in discussions with Mr. Peng and we're going to

4     continue those discussions.  And we think that

5     we will end up with -- we hope, and we think,

6     we'll end up with him.

7          MR. HERMAN:  I don't recall that that's

8     the way it was stated, but we'll check the

9     transcript.

10         MR. TAYLOR:  Check the transcript.  And

11    in regards to the desktop computer that we

12    identified last night and we talked about this

13    morning, if I understood what you said, we have

14    had a third-party administrator image the hard

15    drive and those documents are going through the

16    process that we already take them through.  We

17    don't intend to stop that process in order to

18    segregate those documents.  We want to get them

19    reviewed, get the State secret reviews done so

20    that we can get those documents to Mr. Peng and

21    so he can be ready to be deposed.

22         Now, in regards to the computer, though,

23    and we will investigate how we can somehow get

24    control and secure that computer because I think

25    that's appropriate and a good idea.

```
 1              In regards to firms that can perform a
 2       State secret review, I want to be sure that I
 3       didn't misspeak.  I probably said there's
 4       probably no more than three or four firms.  Let
 5       me say it better.  There's just very few firms
 6       that do it and I'm not -- I'm sure it's just
 7       very few.
 8              Was there anything else?  The street
 9       address, we're making our best efforts to get
10       that and hope we'll have it very, very soon.
11       Did I miss anything?
12              MR. HERMAN:  Yes, now one more issue
13       that you've covered that.  On the record you
14       indicated and we'll provide you with the record
15       that Taishan Gypsum would pay all of our
16       expenses if we came to Hong Kong to --
17              MR. TAYLOR:  Never said that.
18              MR. HERMAN:  Excuse me.  To depose
19       Chairman Jia.
20              MR. TAYLOR:  Talking about a long time
21       ago?
22              MR. HERMAN:  Yeah.  It was never
23       withdrawn.
24              MR. TAYLOR:  And you refused.
25              MR. HERMAN:  No, it was never withdrawn.
```

```
1                    MR. TAYLOR:  We'll have to discuss that
2           with the court.
3                    MR. HERMAN:  Yeah, I think we shall.
4                    MR. TAYLOR:  That's okay.
5                    MR. LEVIN:  Under the circumstances
6           you're changing your mind?
7                    MR. TAYLOR:  Oh, no, no.  I said we'll
8           discuss -- because I don't think I ever said
9           we'd pay all expenses.  We probably at that time
10          said we'd pay certain reasonable expenses.  And
11          that doesn't mean all expenses.  But we --
12          we'll -- and then you-all refused -- refused to
13          do it and you took up Mr. Peng -- I'm sorry,
14          Mr. Che and it wasn't until you agreed to take
15          Chairman Song that we agreed, okay, well, then,
16          Mr. -- Chairman Jia would -- we would agree to
17          make him available.  But we'll work this out.
18          If we can't work it out, we'll deal with it with
19          the court.  That's easy.
20                   MR. LEVIN:  This deposition remains open
21          for a number of reasons.  A lot of questions are
22          unanswered, a lot of information is in the
23          process of --
24                   MR. TAYLOR:  She's going to translate.
25                   MR. LEVIN:  I'm sorry.
```

1           MS. EIKHOFF:  Can we agree she does not

2      have to translate all of that?

3           MR. TAYLOR:  No.  Okay.

4           MR. HERMAN:  It could have been said

5      outside the presence of the witness anyway.

6           MR. TAYLOR:  Excellent, Counsel.

7           MR. LEVIN:  This deposition will remain

8      open --

9           MR. TAYLOR:  I hear that.

10           MR. LEVIN:  -- for a number of reasons.

11      The document production is incomplete, the

12      document production was late, delivered to us in

13      close proximity to the deposition.  Some of it

14      was in Chinese, incapable of our review.  There

15      are answer -- there are many questions still

16      remaining as Mr. Herman went over with you and

17      as such this -- we will -- this deposition

18      cannot be closed and must be -- remain open.

19           MR. TAYLOR:  I understand you put that

20      on the record.

21           Do we have someone who has more

22      questions for our witness.

23           MR. BLACK:  No, we've agreed that

24      this -- he asked the questions for us.

25           MR. TAYLOR:  I just have three

1           questions, then.

2                          EXAMINATION

3    BY MR. TAYLOR:

4        Q      Chairman Jia, do you recall looking at this

5    document?  It is STP 003665 and the document being

6    shown to you by counsel -- yeah, it's Exhibit 411 --

7    being shown to you by counsel for the PSC?  You recall

8    that earlier today?

9        A      I remember that.

10       Q      And you're familiar with Stepan, correct,

11   the Stepan Corporation?

12       A      I personally am not familiar with it.  Some

13   relevant personnel of the company are familiar with

14   the company -- with this company.

15       Q      As a 30(b)(6) witness you are familiar with

16   Taishan's familiarity with Stepan, correct?

17       A      Correct.

18       Q      What does Stepan manufacture, sir?

19       A      It is a company manufacturing gypsum

20   additives.

21             MR. TAYLOR:  Were you finished?

22   BY MR. TAYLOR:

23       Q      Has Taishan ever sold any Taishan drywall or

24   plasterboard containing Stepan additives to any of

25   its, that is, Taishan's, customers?

1     A     Ask again.  I am not clear about your

2  question.

3               THE INTERPRETER:  The interpreter can

4        repeat if you prefer.

5               MR. TAYLOR:  Go right ahead.

6     A     No.

7               MR. TAYLOR:  No further questions.

8                    FURTHER EXAMINATION

9  BY MR. LEVIN:

10    Q     Sir, do you know what the Stepan product is?

11    A     Gypsum additives.  I don't know about their

12  other products.

13    Q     Let's talk about that product.  What is its

14  use?

15    A     Its use is that Stepan claims by adding its

16  additive to the gypsum board it can result in having

17  the gypsum board be lighter in weight.

18    Q     So it's used for gypsum board, is it not?

19    A     Correct.

20               MR. LEVIN:  Thank you.

21               MR. TAYLOR:  That's it for us.

22               THE VIDEOGRAPHER:  Time now is 4:34 p.m.

23        Today's deposition consisting of five disks is

24        now concluded.

25               (Deposition Concluded At 4:34 p.m.)

```
 1                REPORTER'S CERTIFICATE

 2

 3        This transcript is valid only for a transcript

 4   accompanied by my original signature and original

 5   required seal on this page.

 6        I, Micheal A. Johnson, Certified Court Reporter

 7   (LA Certificate #29025) in and for the State of

 8   Louisiana, as the officer before whom this testimony

 9   was taken, do hereby certify that JIA TONGCHUN, after

10   having been duly sworn by me upon authority of

11   R.S. 37:2554, did testify as herein before set forth

12   in the foregoing 143 pages; that this testimony was

13   reported by me in the stenotype reporting method, was

14   prepared and transcribed by me or under my personal

15   direction and supervision, and is a true and correct

16   transcript to the best of my ability and

17   understanding; that the transcript has been prepared

18   in compliance with transcript format guidelines

19   required by statute or by rules of the board, and that

20   I am informed about the complete arrangement,

21   financial or otherwise, with the person or entity

22   making arrangements for deposition services; that I

23   have acted in compliance with the prohibition on

24   contractual relationships, as defined by Louisiana

25   Code of Civil Procedure Article 1434
```

1   and in rules and advisory opinions of the board;

2   that I have no actual knowledge of any prohibited

3   employment or contractual relationship, direct or

4   indirect, between a court reporting firm and any party

5   litigant in this matter nor is there any such

6   relationship between myself and a party litigant in

7   this matter.  I am not related to counsel or to the

8   parties herein, nor am I otherwise interested in the

9   outcome of this matter.

10

11          Signed this ___ day of _____, 2015.

12

13

14

15          _____

16          MICHEAL A. JOHNSON, RMR, CRR

17          Certified Court Reporter

18          LA Certified Court Reporter #29025

19

20

21

22

23

24

25

```
 1              ACKNOWLEDGMENT OF DEPONENT

 2

 3         I,_____, do hereby

 4   certify that I have read the foregoing pages and

 5   that the same is a correct transcription of the

 6   answers given by me to the questions therein

 7   propounded, except for the corrections or changes in

 8   form or substance, if any, noted in the attached

 9   Errata Sheet.

10

11         _____

12         JIA TONGCHUN                    DATE

13

14   Subscribed and sworn to before me this

15   _____ day of _____, 20 _____.

16   My commission expires: _____

17

18   Notary Public

19

20

21

22

23

24

25
```

1                      __  __  __  __  __  __

2                             ERRATA

                            __  __  __  __  __  __

3

4     PAGE    LINE    CHANGE

5     _____   _____   _____

6     _____   _____   _____

7     _____   _____   _____

8     _____   _____   _____

9     _____   _____   _____

10    _____   _____   _____

11    _____   _____   _____

12    _____   _____   _____

13    _____   _____   _____

14    _____   _____   _____

15    _____   _____   _____

16    _____   _____   _____

17    _____   _____   _____

18    _____   _____   _____

19    _____   _____   _____

20    _____   _____   _____

21    _____   _____   _____

22    _____   _____   _____

23    _____   _____   _____

24    _____   _____   _____

25    _____   _____   _____