Confidential - Subject to Further Confidentiality Review

1              UNITED STATES DISTRICT COURT

2              EASTERN DISTRICT OF LOUISIANA

3    *****************************************************

4    IN RE:  CHINESE-MANUFACTURED  MDL NO. 2047

     DRYWALL PRODUCTS LIABILITY

5    LITIGATION                   SECTION:  L

6    THIS DOCUMENT APPLIES TO      JUDGE FALLON

     ALL CASES

7                                MAG. JUDGE WILKINSON

8    *****************************************************

9

              CONFIDENTIAL - SUBJECT TO FURTHER

10                 CONFIDENTIALITY REVIEW

11              Monday, September 14, 2015

12                     — — —

13

14         Videotaped Deposition of SONG ZHIPING,

15   VOLUME 1, held at Orrick, Herrington & Sutcliffe, LLP,

16   15 Queen's Road Central, 43rd Floor, Hong Kong,

17   commencing at 9:06 a.m., on the above date, before

18   Micheal A. Johnson, Certified Court Reporter (#29025),

19   Registered Merit Reporter and Certified Realtime

20   Reporter.

21                              ┌─────────────────────┐
                                │     **CONTEMPT**    │
22                     — — —    │    **Exhibit 32**   │
                                └─────────────────────┘
23

24         GOLKOW TECHNOLOGIES, INC.

          877.370.3377 ph | 917.591.5672 fax

25              deps@golkow.com

Confidential - Subject to Further Confidentiality Review

```
 1   A P P E A R A N C E S:

 2   COUNSEL FOR THE PLAINTIFF CLASS:

 3        HERMAN HERMAN & KATZ LLC
          BY:  RUSS M. HERMAN, ESQUIRE
 4             rherman@hhklawfirm.com
          820 O'Keefe Avenue
 5        New Orleans, Louisiana 70113
          (504) 581-4892

 6

 7        LEVIN FISHBEIN SEDRAN & BERMAN
          BY:  SANDRA L. DUGGAN, ESQUIRE
 8             sduggan@lfsblaw.com.
               ARNOLD LEVIN, ESQUIRE
 9             alevin@lfsblaw.com
          510 Walnut Street, Suite 500
10        Philadelphia, Pennsylvania 19106
          (215) 592-1500

11

12        IRPINO LAW FIRM
          BY:  PEARL A. ROBERTSON, ESQUIRE
13             probertson@irpinolaw.com
               ANTHONY D. IRPINO, ESQUIRE
14             airpino@irpinolaw.com
          2216 Magazine Street
15        New Orleans, Louisiana 70130
          (504) 525-1500

16

17   COUNSEL FOR TAISHAN GYPSUM COMPANY:

18        ALSTON & BIRD LLP
          BY:  CHRISTINA HULL EIKHOFF, ESQUIRE
19             christy.eikhoff@alston.com
          1201 West Peachtree Street
20        Atlanta, Georgia 30309-3424
          (404) 881-4496

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1   A P P E A R A N C E S:
 2   COUNSEL FOR BNBM DEFENDANTS:
 3        DENTONS US LLP
          BY:  C. MICHAEL MOORE, ESQUIRE
 4            mike.moore@dentons.com
          2000 McKinney Avenue, Suite 1900
 5        Dallas, Texas 75201-1858
          (214) 259-0902
 6
 7        DENTONS LLP
          BY:  TODD LIAO, ESQUIRE
 8            todd.liao@dentons.com
          5th Floor The Center 989 Changle Road
 9        Shanghai, China 200031
          +86 21 2315 6028
10
11   COUNSEL FOR CNBM DEFENDANTS:
12        ORRICK HERRINGTON & SUTCLIFFE LLP
          BY:  L. CHRISTOPHER VEJNOSKA, ESQUIRE
13            cvejnoska@orrick.com
              JASON M. WU, ESQUIRE
14            jmwu@orrick.com
              ANDREW K. DAVIDSON, ESQUIRE
15            adavidson@orrick.com
          405 Howard Street
16        San Francisco, California 94105-2669
          (415) 773-5916
17
18        ORRICK HERRINGTON & SUTCLIFFE LLP.
          BY:  JAMES L. STENGEL, ESQUIRE
19            jstengel@orrick.com
          51 West 52nd Street
20        New York, New York 10019-6142
          (212) 506-3775
21
22
23
24
25
```

Confidential - Subject to Further Confidentiality Review

```
 1   A P P E A R A N C E S:

 2   COUNSEL FOR CNBM DEFENDANTS:

 3         ORRICK HERRINGTON & SUTCLIFFE LLP
           BY:  XIANG WANG, ESQUIRE
 4              xiangwang@orrick.com
                YALI HU, ESQUIRE
 5              yhu@orrick.com
           5701 China World Tower
 6         No. 1 Jianguomenwai Avenue
           Beijing 100004
 7         People's Republic of China
           +86 10 8595 5668

 8

 9   COUNSEL FOR THE STATE OF LOUISIANA:

10         PERKINS COIE LLP
           BY:  DAVID L. BLACK, ESQUIRE
11              dblack@perkinscoie.com
           1900 Sixteenth Street, Suite 1400
12         Denver, Colorado 80202-5255
           (303) 291-2309

13

14         OFFICE OF THE ATTORNEY GENERAL STATE OF
           LOUISIANA
15         BY:  L. Christopher Styron
                styron@ag.state.la.us
16         1885 North Third Street
           Baton Rouge Louisiana 70802
17         (225) 326-6079

18

19   ALSO PRESENT:

20         TONI XU

21         SANDRA HERMAN

22         REGINA VALENTI

23         MELISSA BARDWELL, VIDEOGRAPHER.

24         SUNNY WANG, MANDARIN INTERPRETER

25                             — — —
```

Confidential - Subject to Further Confidentiality Review

```
 1                        INDEX

                     SONG ZHIPING

 2              September 14, 2015

 3

 4      PROCEEDINGS                              8

 5

 6   EXAMINATION OF SONG ZHIPING:

 7           BY MR. HERMAN              11

 8

 9      REPORTER'S CERTIFICATE              110

10

11

           INFORMATION REQUESTED BY COUNSEL FOR CNBM

12

                   Page 40, Line 2

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                       DEPOSITION EXHIBITS
                            SONG ZHIPING
 2                       September 14, 2015
 3    NUMBER                 DESCRIPTION              MARKED
 4    Exhibit 55      China National Building           108
                      Material Company Limited 2009
 5                    Interim Report
 6    Exhibit 55-A    China National Building           109
                      Material Company Limited 2009
 7                    Interim Report (Chinese
                      Version)
 8
      Exhibit 306-1   Minutes of a meeting, BNBM         72
 9                    Document 130706 to 130707,
                      Dated December 12, 2014
10
      Exhibit 331     The Course of Events on           100
11                    Hiring Law Firms for the
                      Gypsum Board Litigation in
12                    the United States
13    Exhibit 331-1   6/3/2010 BNBM Document, Topic     105
                      of Meeting:  The Strategy for
14                    Responding to the Gypsum
                      Board Litigation in the
15                    United States
16    Exhibit 332     Resolution No. 17 of the           91
                      Third Session of the Board of
17                    Directors of CNBM Group
18    Exhibit 333     Partial Translation of             95
                      CNBMCO00080530-80587
19                    The Sixth Working Meeting,
                      Gist of Chairman Zhiping
20                    Song's Speech (Clawed Back)
21    Exhibit 351     Partial Translation of             65
                      CNBMCO00102014-102025
22                    The Tenth President's Office
                      Meeting
23
      Exhibit 356     The Eighteenth Meeting of the      79
24                    Third Board of Directors of
                      China National Building
25                    Material Company
```

Confidential - Subject to Further Confidentiality Review

```
 1                 PREVIOUSLY MARKED EXHIBITS
 2
     NUMBER              DESCRIPTION           REFERENCED
 3
     Exhibit 4      ...........................      34
 4
     Exhibit 4-A    ...........................      34
 5
     Exhibit 5      ...........................      42
 6
     Exhibit 6      ...........................      55
 7
     Exhibit 8      ...........................     102
 8
     Exhibit 61     ...........................      68
 9
     Exhibit 305-R  ...........................      70
10
     Exhibit 306-1  ...........................      72
11
     Exhibit 315-R  ...........................      50
12
     Exhibit 316-R  ...........................      52
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Confidential - Subject to Further Confidentiality Review

```
 1                    PROCEEDINGS
 2              THE VIDEOGRAPHER:  We are now going on
 3        the record.  My name is Melissa Bardwell,
 4        videographer here for Golkow Technologies.  The
 5        date today is September 14, 2015.  Time now is
 6        approximately 9:06 a.m.
 7              We are here for the videotaped
 8        deposition of Song Zhiping taken in the matter
 9        in reference of the Chinese Drywall Products
10        Liability Litigation.  The deposition is being
11        held in Hong Kong.
12              The court reporter today is Micheal
13        Johnson and counsel will be noted for the
14        stenographic record.
15                  (Interpreter sworn.)
16                  (Oath administered to the witness.)
17              MR. HERMAN:  Good morning, everyone.
18        There are a few matters that I'd like to discuss
19        on the record before we begin.  First of all, so
20        we have no controversy, the parties of CNBM and
21        CNBMG, and if I ask -- off the record, please.
22              THE VIDEOGRAPHER:  Time is 9:07 a.m.  We
23        are off the record.
24                  (Recess Taken From 9:07 a.m. To
25                  9:07 a.m.)
```

Confidential - Subject to Further Confidentiality Review

```
 1              THE VIDEOGRAPHER:  Time now is 9:08.  We
 2       are back on the record.
 3              MR. HERMAN:  Good morning, everyone.
 4       First of all, on behalf of Arnold Levin and
 5       myself of the PSC, we thank Orrick for its
 6       hospitality in making its offices available in
 7       Hong Kong.
 8              Secondly, we want to make sure that
 9       everyone understands that in the event that we
10       will use a document that's already been offered
11       in depositions, we'll provide the translator,
12       the witness and counsel for CNBM, CNBMG a copy
13       in English and in Chinese.
14              Now, I would like to understand who is
15       primarily going to represent BNBM and BNBMG at
16       the table.
17              MR. MOORE:  Mike Moore for Dentons
18       representing both of those companies.
19              MR. HERMAN:  And who is representing
20       Taishan Gypsum and TTP?
21              MS. EIKHOFF:  Christy Eikhoff of Alston
22       & Bird.
23              MR. HERMAN:  And who is representing the
24       Attorney General of Louisiana?
25              MR. BLACK:  David Black of Perkins Coie.
```

Confidential - Subject to Further Confidentiality Review

1          MR. STYRON:  Chris Styron, Attorney

2     General's office.

3          MR. HERMAN:  We will distribute new

4     exhibits to one counsel for each party as

5     identified in addition to copies to CNBM, CNBMG,

6     the witness, the interpreter and counsel.  If

7     there are some left over, you're welcome to it,

8     but I'm not going to guarantee it.

9          Secondly, I believe that we have an

10     agreement that if a dispute arises among or

11     between counsel, we'll reserve that dispute on

12     the record and we'll either try to resolve it

13     after the deposition or it will be referred to

14     the judge Thursday morning rather than calling

15     the judge at the equivalent of 10:00 at night.

16     And if everyone agrees to that, I think that's

17     the best way for us to proceed.

18          MR. VEJNOSKA:  Mr. Herman, I'm amenable

19     to that.  I saw that you have requested that the

20     judge do -- does meet with us at that time.

21     We'll have to see, I guess, if he actually can

22     do that.  I will tell you that at the time that

23     you have appointed, I will be on an airplane.

24     So we'll have to figure out a way to work around

25     that, but I suggest we can talk about that off

Confidential - Subject to Further Confidentiality Review

```
1         the record.
2               MR. HERMAN:  And the time and date was
3         at the judge's request given -- was at the
4         judge's request.
5               MR. VEJNOSKA:  Okay.
6               MR. HERMAN:  Okay.  The next issue is
7         that if a counsel representing a party has an
8         objection, that objection will stand for all
9         parties.  We'll advise the court reporter where
10        to mark suitably in the record either jointly or
11        independently at the time of the cause of some
12        dispute arises.  And we'll need those matters in
13        transcript form before the other rough
14        transcript is done so that all counsel can
15        review them in advance.
16                        SONG ZHIPING
17             having been first duly sworn,
18                 testified as follows:
19                        EXAMINATION
20   BY MR. HERMAN:
21        Q    Good morning, Chairman Song.
22        A    Good morning.
23        Q    Thank you.  As I understand it, since March
24   of 2005 you have been the chairman of the directors
25   and an executive director of CNBM Company PLC; is that
```

Confidential - Subject to Further Confidentiality Review

```
 1   correct?

 2       A     Correct.

 3       Q     And so from that date, March 2005, you have

 4   also been an executive director of CNBM Company PLC;

 5   is that correct?

 6       A     Yes.

 7       Q     Sir, since January 1996 you have been

 8   chairman of board of directors of BNBM Group; is that

 9   correct?

10       A     Yes.

11       Q     And, sir, since October 2005 is it correct

12   that you have been chairman of the board of directors

13   of CNBM Group?

14       A     Yes.

15       Q     During your deposition when I refer to

16   "CNBM," I am referring to CNBM Company PLC.  Is that

17   understood?

18       A     I understand.

19       Q     And during your deposition when I refer to

20   "BNBMG," I will be referring to BNBM Group.  Is that

21   understood?

22       A     I understand.

23       Q     And during your deposition when I refer to

24   "CNBMG," I will be referring to CNBM Group.  Is that

25   understood?
```

```
1        A     I understand.

2        Q     And during your deposition when I refer to

3   "BNBM," I will be referring to the BNBM public

4   company.  Is that understood?

5        A     I understand.

6        Q     And during your deposition when I refer to

7   Taishan Gypsum, I'm referring to Taishan Gypsum

8   Company, or TTP.  Is that understood?

9                MR. VEJNOSKA:  Objection.

10               MS. EIKHOFF:  I object to that too.

11       A     I would like to know what company you're

12   referring to when you said TTP.

13   BY MR. HERMAN:

14       Q     Taishan Plasterboard Company, Limited.

15       A     Tai'an Taishan Plasterboard Company.

16       Q     Limited.

17       A     I'm aware of the company Limited company.

18       Q     Are you familiar with the company known as

19   Shandong Taihe Building Material Company, a

20   shareholder of Taishan Gypsum?

21               THE INTERPRETER:  This is the

22          interpreter speaking.  The witness just asked

23          the interpreter to write down the name of the

24          company.  The interpreter would assume that the

25          witness would like the interpreter to write it
```

1          down in Chinese characters.

2                    MR. HERMAN:  No problem.

3                    THE INTERPRETER:  The interpreter just

4          wrote down the Chinese characters of Shandong

5          Taihe Building Material Company.

6     A     Did you say that this company owns Taishan

7     Company?

8     BY MR. HERMAN:

9     Q     No, I said it was a shareholder.

10    A     It is a shareholder of Taishan?  I'm not

11    sure.

12    Q     Is Taishan Gypsum Ping Shan a subsidiary of

13    Taishan Gypsum?

14                    THE INTERPRETER:  May the interpreter

15         have the spelling of Ping Shan?

16                    MR. HERMAN:  P-i-n-g S-h-a-n.

17                    MR. VEJNOSKA:  Objection, calls for a

18         legal conclusion.

19                    You may answer.

20                    THE INTERPRETER:  The interpreter needs

21         to clarify with the witness for his answer.

22                    Upon clarifying with witness, here's the

23         witness's answer.

24    A     I'm not sure.

25    BY MR. HERMAN:

Confidential - Subject to Further Confidentiality Review

```
1       Q     Is Taishan Gypsum Nantong, N-a-n-t-o-n-g, a

2  subsidiary of Taishan Gypsum?

3             MR. VEJNOSKA:  Same objection.

4       A     I'm not sure about Nantong's matter.

5  BY MR. HERMAN:

6       Q     Are you familiar with Taishan Gypsum

7  Shareholding Company?

8       A     Shareholding Company?

9       Q     Yes.

10      A     I'm not familiar with the company called

11 Shareholding Company.

12      Q     Is CNBMG the controlling shareholder of CNBM

13 through direct and indirect ownership?

14            MR. VEJNOSKA:  Objection, calls for

15       legal conclusion, vague and ambiguous.

16      A     CNBMG holds shares of CNBM.  It is a

17 shareholding company.

18 BY MR. HERMAN:

19      Q     In your public documents published by CNBM

20 Company, Limited in its annual reports, do those

21 documents, those public documents, refer to CNBM Group

22 as the controlling shareholder of China National

23 Building Material Company, Limited?

24            MR. VEJNOSKA:  Objection, compound.

25      A     I'm not sure what he's referring to when he
```

1    used the word controlling shareholder.  I'm not sure

2    what he meant by that.

3    BY MR. HERMAN:

4        Q    In your public documents of CNBM annual

5    reports, is CNBM Group referred to as the 70 percent

6    shareholder of BNBM Group Company, Limited?

7              MR. VEJNOSKA:  Objection, compound.

8        A    Yes.

9    BY MR. HERMAN:

10       Q    And in the published annual reports of CNBM

11   Company, is CNBM Group referred to as 100 percent

12   owner of China National Building Material Import &

13   Export Company?

14       A    Yes.

15             MR. VEJNOSKA:  Same objection.

16   BY MR. HERMAN:

17       Q    In your published reports -- annual reports

18   of China National Building Material Company, Limited,

19   is China National Building Material Company, Limited

20   referred to as the controller -- or controlling

21   shareholder of Beijing New Building Material Public,

22   Limited Company?

23             MR. VEJNOSKA:  Objection, compound.

24             MR. MOORE:  Objection, form.

25       A    I'm not sure.

Confidential - Subject to Further Confidentiality Review

1    BY MR. HERMAN:

2        Q     And in your published public documents and

3    annual reports, is Beijing New Building Material

4    Public, Limited Company stated as a 65 percent owner

5    of Taishan Gypsum Company, Limited, formerly known as

6    Shandong Taihe Dongxin Company, Limited?

7                    THE INTERPRETER:  May the interpreter

8          have the spelling of Taihe --

9                    MR. HERMAN:  D-o-n-g-x-i-n.

10                   MR. VEJNOSKA:  Objection, vague and

11         ambiguous, compound.

12       A     It is so according to my recollection.

13   BY MR. HERMAN:

14       Q     Is it correct that Taishan Gypsum Company

15   owns 100 percent of Taishan -- strike that.

16                   Is it true that Taishan Gypsum Company

17   owns 100 percent of Tai'an Taishan Plasterboard

18   Company, Limited?

19                   THE INTERPRETER:  May the interpreter

20         have the spelling of Tai'an Taishan?

21                   MR. HERMAN:  T-a-i apostrophe a-n,

22         Taishan, T-a-i-s-h-a-n.

23                   THE INTERPRETER:  Thank you.

24       A     I'm not sure.

25   BY MR. HERMAN:

Q What is the relationship between CNBM and CNBM Investment Company, Limited?

MR. VEJNOSKA: Objection, vague and ambiguous.

A CNBM Investment Company, the investment company, correct? CNBM is the shareholder of CNBM Investment Company.

BY MR. HERMAN:

Q What is the relationship between CNBM and China Triumph International Engineering Company, Limited?

MR. VEJNOSKA: Same objection.

A CNBM is the shareholder of China Triumph International Engineering Company, Limited.

BY MR. HERMAN:

Q What is the relationship between CNBM and China Fiberglass Company, Limited?

A CNBM is one of the shareholders of China Fiberglass Company, Limited.

Q What is the relationship between China National Building Material Company, Limited and Jushi Group Company, Limited?

MR. VEJNOSKA: Objection, vague and ambiguous.

A Jushi Group -- say again the question you

Confidential - Subject to Further Confidentiality Review

1    just asked.

2    BY MR. HERMAN:

3        Q      What is the relationship between China

4    National Building Material Company, Limited and Jushi

5    Group Company, Limited?

6                MR. VEJNOSKA:  Same objection.

7        A      China National Building Material Company,

8    Limited is a shareholder of China Fiberglass Company,

9    Limited and China Fiberglass Company, Limited is a

10   shareholder of Jushi Group Company, Limited.

11   BY MR. HERMAN:

12       Q      What is the percentage of shares owned by

13   CNBM of China Fiberglass Company, Limited?

14       A      Approximately around 33 percent.

15       Q      What is the percentage of shares owned by

16   CNBM in China Triumph International Engineering

17   Company, Limited?

18       A      91 percent.

19       Q      What is the percentage of shares which CNBM

20   owns in CNBM Investment Company, Limited?

21       A      100 percent.

22       Q      What is the percentage of shares which CNBMG

23   owns in CNBM?

24       A      Around 12 percent.

25       Q      And what percentage of indirect share

1    ownership does CNBM Group have in CNBM?

2              MR. VEJNOSKA:  Objection, vague and

3         ambiguous.

4      A    I don't know what you mean when you said

5    indirect.

6    BY MR. HERMAN:

7      Q    Are you familiar, Chairman Song, with your

8    published annual reports which refer to direct and

9    indirect ownership of CNBMG of CNBM?

10             MR. VEJNOSKA:  Objection, compound,

11        vague and ambiguous.

12     A    I'm aware that it directly owns 12 percent,

13   but BNBM Group, CNBM Import & Export Company and CNBM

14   Research Institute owns the shares of ownership of

15   CNBM.

16   BY MR. HERMAN:

17     Q    And does China Cinda, C-i-n-d-a, Asset

18   Management Company, Limited also own shares in China

19   National Building Material Company, Limited?

20     A    It does.

21     Q    China National Building Material Import &

22   Export Company owns what percentage of shares in CNBM

23   Forest Products, Limited?

24     A    I'm not sure.

25     Q    Are you aware that CNBM Forest Products,

 1    Limited is listed as a subsidiary of China National

 2    Building Material Import & Export Company in CNBM's

 3    published reports?

 4              MR. VEJNOSKA:  Objection, compound.

 5    A    I'm not sure about this.

 6    BY MR. HERMAN:

 7    Q    Is it correct that since the annual report

 8    of 2005 in every report published by CNBM annually you

 9    are listed in a biography?

10    A    I'm not sure if all of them have it.  Some

11    of them may have it.

12    Q    Isn't it true that since the publication of

13    CNBM annual reports from 2005 to the interim report of

14    2015 that Chairman Cao gives a director's report?

15              THE INTERPRETER:  May the interpreter

16       have the spelling of Chairman Cao.

17              MR. HERMAN:  C-a-o.

18              MR. VEJNOSKA:  Objection, compound.

19    A    Cao is not a chairman.

20    BY MR. HERMAN:

21    Q    Isn't it true that from the annual reports

22    of 2005 to the interim report of 2015 that Chairman

23    Cao has been president of CNBM?

24    A    Yes.

25    Q    And isn't it true that in every published

Confidential - Subject to Further Confidentiality Review

1    annual report of CNBM from 2005 to the interim report

2    of 2015 that president Cao's report follows the report

3    of Chairman Song?

4                MR. VEJNOSKA:  Objection, compound.

5       A    It is so according to my recollection.

6    BY MR. HERMAN:

7       Q    And since 2005 hasn't Chairman Cao been the

8    general manager of BNBMG?

9       A    Are you referring to 2005, I would like to

10   know?

11      Q    I'm referring to the year of the published

12   report of 2005 through the -- every annual report in

13   the interim report of 2015.

14               MR. VEJNOSKA:  Objection, compound.

15      A    We're referring to that he held a position

16   in CNBM or you have also mentioned BNBM Group.  I'm

17   not sure which one you're referring to.

18   BY MR. HERMAN:

19      Q    I'll withdraw the question and I'll ask the

20   question again.  Isn't it true that since 2005

21   Chairman Cao has been the general manager of BNBMG?

22               THE INTERPRETER:  This is the

23          interpreter speaking.  Did counsel say BNBM and

24          G?

25               MR. HERMAN:  No, BNBMG.

```
 1              THE INTERPRETER:  Thank you.

 2      A     No.

 3              MR. VEJNOSKA:  Mr. Herman, I'm sorry,

 4         may I interject for a moment?  Madam

 5         Interpreter, the realtime is down.  I want to

 6         know, is that making it difficult on you or are

 7         you okay?

 8              THE INTERPRETER:  It will be better if

 9         the realtime works, but I can still interpret

10         without referring to the realtime.

11   BY MR. HERMAN:

12      Q     Is it true that Chairman Cao has been on the

13   supervisory committee of CNBMG and serves as such in

14   2014 and 2015?

15              THE VIDEOGRAPHER:  We need to go off the

16         record for one second.  I'm sorry.

17              Time is 9:47 a.m.  We are off the

18         record.

19              (Recess Taken From 9:47 a.m. To

20         9:56 a.m.)

21              THE VIDEOGRAPHER:  This begins disk 2 of

22         today's deposition.  Time now is 9:56 a.m.  We

23         are back on the record.

24   BY MR. HERMAN:

25      Q     Sir, for the year 2014 you were chairman of
```

Confidential - Subject to Further Confidentiality Review

1    the board and you are chairman of the board now of

2    CNBM; is that correct?

3         A     2014?

4         Q     Yes.

5         A     Which company?

6         Q     CNBM.

7         A     2014?

8              THE INTERPRETER:  Interpreter needs to

9         clarify with witness.

10        A     I have been the chairman of the board of

11   directors of CNBM since 2005.

12   BY MR. HERMAN:

13        Q     Has Chairman Cao been on the board of

14   directors, executive board of directors, of CNBM since

15   2005?

16        A     Yes.

17        Q     Was Peng Shou an executive director and vice

18   president of CNBM in the years 2014 and today?

19              MR. VEJNOSKA:  Objection, compound.

20        A     Yes.

21   BY MR. HERMAN:

22        Q     Is it correct that Cui is a vice president

23   and executive director of CNBM in 2014 and today?

24              THE INTERPRETER:  May the interpreter

25        have the spelling of Cui?

```
 1                    MR. HERMAN:  Yes.  C-u-i, second word
 2           X-i-n-g-t-a-i.  And excuse my mispronunciation.
 3                    MR. VEJNOSKA:  Objection, compound.
 4      A      Executive director and vice president.
 5  BY MR. HERMAN:
 6      Q      And is it true that Chang is vice president
 7  and an executive director of CNBM in 2014 and today?
 8                    MR. VEJNOSKA:  Same objection.
 9      A      Yes.
10  BY MR. HERMAN:
11      Q      And is it also true that in 2014 and today
12  Chang is the secretary of the board of directors of
13  CNBM?
14                    MR. VEJNOSKA:  Same objection.
15      A      Yes.
16  BY MR. HERMAN:
17      Q      And in 2014 the strategic steering committee
18  of CNBM was composed of three individuals; is that
19  correct?
20      A      That's correct.
21      Q      And two of the individuals -- strike that.
22                    Is the strategic steering committee in
23  2015 also composed of three individuals, that is, of
24  CNBM?
25      A      Yes.
```

```
 1      Q     And is the strategic steering committee of

 2   CNBM served by Chairman Song who is chairman of the

 3   strategic steering committee and Cao?

 4                MR. VEJNOSKA:  Objection, vague and

 5           ambiguous.

 6      A     I am the convener of the strategic steering

 7   committee.

 8   BY MR. HERMAN:

 9      Q     And are you the convener, Chairman Song, of

10   CNBM strategic steering committee in 2014 and 2015?

11                MR. VEJNOSKA:  Objection, compound.

12      A     Yes.

13   BY MR. HERMAN:

14      Q     And President Cao of CNBM also is one of the

15   three individuals who has served and does serve on the

16   CNBM strategic steering committee in 2014 and 2015; is

17   that correct?

18                MR. VEJNOSKA:  Same objection.

19      A     Yes.

20   BY MR. HERMAN:

21      Q     And is it true that in 2014, Chairman Song,

22   you also served on the nomination committee of CNBM?

23      A     Yes.

24      Q     And is it also true that in 2014 you served

25   on -- as one of three members of the remuneration and
```

Confidential - Subject to Further Confidentiality Review

1    performance appraisal committee of CNBM?

2        A    No.  I was not.  Yes, I was one of them, but

3    I was not the convener.

4        Q    Do you still in 2015 serve on the nominating

5    committee of CNBM?

6        A    I do serve.

7        Q    And do you in 2015 also serve on the

8    remuneration and performance committee of CNBM?

9        A    I do serve.

10       Q    In the year 2006 who owned the Luneng mine?

11       A    I don't know.

12       Q    Have you ever been to the Luneng mine?

13       A    No.

14       Q    Have you ever been to the manufacturing

15   facility of Taishan Gypsum or its predecessor which

16   manufactured gypsum product that is the subject of

17   this lawsuit?

18            MS. EIKHOFF:  Objection, form.

19       A    I have visited the Taishan Gypsum board

20   company in Tai'an once.

21   BY MR. HERMAN:

22       Q    When was that visit?

23       A    I do not recall the accurate time, but I

24   went to visit before BNBM Company, Limited purchased

25   part of its shares.

```
1      Q     Isn't it true that you approved BNBM to
2   purchase controlling interest of 65 percent in Taishan
3   Gypsum?
4              MR. MOORE:  Objection, form.
5      A     It was a decision made by the board of
6   directors of BNBM Company, Limited.
7   BY MR. HERMAN:
8      Q     Yes.  Did you approve of that action?
9              MR. MOORE:  Same objection.
10     A     This matter does not necessarily require my
11  approval.
12  BY MR. HERMAN:
13     Q     Did you protest that acquisition in any way?
14             MR. VEJNOSKA:  Objection, foundation,
15      argumentative.
16     A     No, I did not protest.  I did not protest.
17  BY MR. HERMAN:
18     Q     Did you in your reports published annually
19  in CNBM praise the acquisition by BNBM of 65 percent
20  of Taishan Gypsum?
21             MR. VEJNOSKA:  Objection, compound,
22      vague and ambiguous.
23     A     I do not have a clear recollection on that,
24  but for that matter I did praise it, but I'm not sure
25  whether it was stated in the annual report or not.
```

Confidential - Subject to Further Confidentiality Review

```
1   BY MR. HERMAN:

2       Q     Following the acquisition by BNBM of a

3   controlling interest in Taishan of 65 percent in the

4   year 2006, did Taishan Gypsum show a substantial

5   increase in production?

6              MR. MOORE:  Objection, form.

7       A     Yes.

8   BY MR. HERMAN:

9       Q     And in 2007 did not Taishan Gypsum show a

10  substantial increase in production compared with the

11  year 2006?

12      A     I'm not sure about the specifics because

13  there had always been an increase in all these years.

14  They had been increasing their products in all these

15  years.

16      Q     Was the dollar sale of -- strike that.

17             Was the profit shown and reported in

18  the CNBM annual report of 2006 for Taishan a

19  substantial increase in profit over the year 2005?

20             MR. VEJNOSKA:  Objection, foundation,

21         vague and ambiguous.

22      A     I don't have a clear recollection.

23  BY MR. HERMAN:

24      Q     And in 2007 did CNBM in its annual report of

25  that year show that Taishan Gypsum had a substantial
```

Confidential - Subject to Further Confidentiality Review

1    increase in profit as compared to the year 2006?

2        A    I don't have a clear recollection on these

3    things.

4        Q    When did you -- strike that.

5             For how many years have you been in

6    communication with the Knauf, K-n-a-u-f, family of

7    Germany?

8             MR. VEJNOSKA:  Objection, foundation,

9        vague and ambiguous.

10       A    I don't have a clear recollection on the

11   specific time, but I remember while I was in BNBM I

12   have been to Iphofen, the headquarters of Knauf.  It

13   was about -- it was in about 1995 or 1996,

14   approximately.  I don't have a clear recollection on

15   that.

16   BY MR. HERMAN:

17       Q    And from May 1997 to March 2002 you were

18   chairman of the board of directors of BNBM; isn't that

19   true?

20       A    Until what time?  Since 1997, right?

21       Q    May 1997 through March 2002.

22       A    Yes.

23       Q    Have you had occasion since 2006 to meet

24   with an executive of the Knauf organization concerning

25   Chinese production of drywall?

Confidential - Subject to Further Confidentiality Review

```
 1       A      What year?

 2       Q      2006.

 3       A      In 2006 I met Knauf once.

 4       Q      Which Knauf did you meet?

 5       A      I don't know.  Perhaps is Baldwin Knauf.  I

 6   do not have a clear recollection on the name.

 7       Q      Did you recently in the last two years meet

 8   with Mr. Hans Ingenillem of Knauf?

 9       A      No.

10       Q      Have you ever met with Mr. Ingenillem?

11       A      Who is this person?

12       Q      He was the executive vice president of Knauf

13   in Germany.

14       A      I don't recall I have met the Knauf.

15       Q      Have you met Isabel Knauf?

16       A      I don't recall.  I only remember that I met

17   with Mr. Knauf in 2006.

18       Q      Was that Baldwin?

19       A      Well, perhaps in 2009 -- 2010 I met him

20   once.

21       Q      Did you meet them in China?

22       A      In Beijing.

23       Q      And in 2009 do you recall receiving a letter

24   from an executive of Knauf concerning the Chinese

25   drywall litigation in the United States?
```

Confidential - Subject to Further Confidentiality Review

1      A      I don't have a clear recollection on this

2    matter.

3      Q      Did you ever see Judge Eldon Fallon's order

4    of July 17th, 2014?

5      A      July 17th, I'm aware of this matter.

6      Q      Did you ever yourself direct any subsidiary

7    of CNBM not to do business in the United States during

8    the period from July 17, 2014, through March 25th,

9    2015?

10            MR. VEJNOSKA:  Objection, vague and

11        ambiguous, calls for a legal conclusion.

12     A      I don't think the word subsidiary is

13    definite.

14    BY MR. HERMAN:

15     Q      Did you direct any firm, corporation or

16    business in China not to do business in the United

17    States from July 17, 2014, through March 25, 2015?

18     A      No.

19     Q      Did you direct any other executive of CNBM

20    or BNBM to advise any other firm, corporation or

21    business in China not to do business in the United

22    States for the period of time between July 17, 2014,

23    and March 25, 2015?

24            MR. VEJNOSKA:  Objection, vague and

25        ambiguous.

1           MR. MOORE:  Objection, form.

2           Mr. Herman, I'm assuming we have our

3       same objection that one defendant is good for

4       all?

5           MR. HERMAN:  I stated that at the

6       inception of the deposition.

7           MR. MOORE:  I'm sorry, I didn't hear

8       that.  I apologize.

9           MR. HERMAN:  He answered the question?

10          MR. VEJNOSKA:  Yes, he said no.

11   A     No.

12          MR. HERMAN:  He didn't answer the

13      question?  I thought he did answer.

14   BY MR. HERMAN:

15   Q     Have you been made aware by any executive

16   officer or general manager of CNBM or BNBM that

17   certain firms, corporations and businesses of China

18   who were doing business in the United States before

19   July 17, 2014, continued to do business in the United

20   States from the period of July 17, 2014, through

21   March 25, 2015?

22          MR. VEJNOSKA:  Objection, vague and

23      ambiguous, compound, calls for legal conclusion.

24          MR. MOORE:  Objection, form.

25   A     I don't have a clear recollection on that.

```
 1              MR. HERMAN:  I am going to provide the

 2         witness and counsel and the interpreter with

 3         Exhibit 4, which is the 2005 annual report of

 4         CNBM, which is published in both English and

 5         Chinese.  The Chinese version is Exhibit 4-A.

 6              MR. VEJNOSKA:  Mr. Herman, we're getting

 7         close to your 10:30 announced break time.

 8              MR. HERMAN:  Okay.  We'll break now.  15

 9         minutes?

10              MR. VEJNOSKA:  Perfect.

11              THE VIDEOGRAPHER:  Time is 10:29 a.m.

12         We are off the record.

13              (Recess Taken From 10:29 a.m. To

14              10:48 a.m.)

15              THE VIDEOGRAPHER:  This begins disk 3 of

16         today's deposition.  Time now is 10:48 a.m.  We

17         are back on the record.

18    BY MR. HERMAN:

19      Q    Sir, would you please turn to Exhibit 4-A in

20    Chinese of the 2005 annual report of CNBM.  Now, do

21    you recall ever having read this report before it was

22    published publicly?

23      A    I don't recall, but I believe I have read

24    it.

25      Q    Would you look at page 2.  I am going to ask
```

1    you to read the first sentence on page 2.

2                    MR. VEJNOSKA:  Out loud or to himself?

3                    MR. HERMAN:  He can read it to himself.

4        A      To myself.  Okay.

5                    (Witness Reviews Document.)

6        A      I read it.

7    BY MR. HERMAN:

8        Q      In that sentence isn't parent, that is

9    p-a-r-e-n-t, CNBMG?

10                   THE INTERPRETER:  This is the

11          interpreter speaking.  Does counsel mean the

12          word "parent," p-a-r-e-n-t, in the sentence?

13                   MR. HERMAN:  Yes.

14       A      Yes.

15   BY MR. HERMAN:

16       Q      As I read the sentence, it reads with parent

17   BNBMG, CNBM Trading, Cinda and Building Materials

18   Academy as promoters (the company) was converted into

19   a joint stock limited company on March 28, 2005.

20                   THE INTERPRETER:  This is the

21          interpreter speaking.  Would counsel like the

22          interpreter to read it from the Chinese

23          version --

24                   MR. HERMAN:  Yes.

25                   MR. VEJNOSKA:  No.  Excuse me.

1           THE INTERPRETER:  -- or to interpret it

2       exactly as you said because there are some

3       different interpretations of the language?

4    BY MR. HERMAN:

5       Q    Let me ask another question, then.  Okay?

6           THE INTERPRETER:  Interpreter had

7       already interpreted what you said.

8    BY MR. HERMAN:

9       Q    What is meant by the word "parent" in your

10   view?

11      A    It was written by attorneys.

12      Q    I'm not asking what attorneys did, I'm

13   asking what you interpret yourself as the word

14   "parent."

15          MR. VEJNOSKA:  Objection, calls for a

16       legal conclusion, document speaks for itself.

17      A    I think the document had written very

18   clearly.  But I would like to say that to my knowledge

19   CNBMG is an equal investor as the other companies

20   here.

21   BY MR. HERMAN:

22      Q    What is meant by the word "parent" in your

23   view if it's written so clearly?

24          MR. VEJNOSKA:  Same objections,

25       argumentative.

```
 1      A      I don't think it's accurate.

 2  BY MR. HERMAN:

 3      Q      Did you at any time since 2005 after the

 4  publication of this report indicate in writing that

 5  page 2 was inaccurate in any way?

 6      A      I don't recall.

 7      Q      What is meant in your view by the word

 8  "promoters"?

 9              MR. VEJNOSKA:  Objection, vague and

10        ambiguous, calls for speculation, calls for

11        legal conclusion, document speaks for itself.

12              You may answer.

13      A      Promoter is the investor when the company is

14  established.

15  BY MR. HERMAN:

16      Q      At the beginning of the establishment of the

17  company?

18      A      Correct.

19      Q      Would you look at page 15, please.  Under

20  the words "Enhancing management and streamlining

21  organizations to optimize business process" is written

22  the words "BNBM, a subsidiary of the company."

23              Do you see those words?

24              MR. VEJNOSKA:  Madam Translator -- I'm

25        sorry, Madam Interpreter, it appears you have
```

Confidential - Subject to Further Confidentiality Review

1        reading from him from the Chinese version of the

2        document.

3              THE INTERPRETER:  The interpreter is

4        interpreting from Mr. Herman's question, not

5        reading from the Chinese version.  I'm actually

6        looking at the English version.

7              MR. VEJNOSKA:  Okay.  Thank you.  That

8        was my question.  I couldn't tell from here.

9        Thank you.

10              THE INTERPRETER:  You're welcome.

11    A    I see that.

12 BY MR. HERMAN:

13    Q    What is meant by the words "subsidiary of

14 the company"?

15              MR. VEJNOSKA:  Objection, calls for

16        legal conclusion, calls for speculation,

17        document speaks for itself.

18    A    This was also written by the attorneys.

19 BY MR. HERMAN:

20    Q    What, in your understanding, does that mean?

21              MR. VEJNOSKA:  Same objection.

22    A    It meant investment.  Investment.

23 BY MR. HERMAN:

24    Q    Please turn to page 30.  Excuse me, page 39.

25 Would you read aloud for the translator the sentence

Confidential - Subject to Further Confidentiality Review

1   under the words "transactions with parent group."

2       A     This paragraph; is that correct?

3              MR. HERMAN:  Would the interpreter

4          please interpret what the witness has said.

5              THE INTERPRETER:  This is the

6          interpreter speaking.  Would counsel like the

7          interpreter to read from the English version?

8          Would you like the interpreter to interpret

9          what --

10             MR. HERMAN:  First I would like the

11         interpreter --

12             THE INTERPRETER:  -- the witness said?

13             MR. HERMAN:  -- to interpret in English

14         what the witness has said.

15             THE INTERPRETER:  The interpreter will

16         need a moment.

17      A     Prior to the global offering the parent

18  company directly owns 26.54 percent of the equity

19  interest of this company and indirectly owns 68.22

20  percent of equity interest of this company.  The

21  parent company is the shareholder and promoter of this

22  company.  Therefore, according to the public listing

23  principal, the parent company and its subsidiary

24  companies constitute this company's affiliates.

25  BY MR. HERMAN:

Confidential - Subject to Further Confidentiality Review

1      Q      Would you turn to page 65.

2              MR. VEJNOSKA:  Would you mark that,

3         please.

4   BY MR. HERMAN:

5      Q      Chairman Song, do you agree that an

6   associate is an entity over which the group has a

7   significant influence and that is not a subsidiary?

8              THE INTERPRETER:  This is the

9         interpreter speaking.  Did counsel say page 65

10        or 55?

11             MR. HERMAN:  65.

12             MR. VEJNOSKA:  Objection, calls for

13        legal conclusion, calls for speculation, vague

14        and ambiguous.

15     A      This is a financial issue.

16  BY MR. HERMAN:

17     Q      As chairman of the board of directors of

18  CNBM isn't it true that you have the overall

19  responsibility of approving financial statements and

20  furnishing information to the company's CPA?

21             MR. VEJNOSKA:  Objection, foundation,

22        vague and ambiguous.

23     A      My issue is that sometimes it is the

24  financial staff who creates the financial statements.

25  I do not necessarily read through them carefully.

Confidential - Subject to Further Confidentiality Review

 1   BY MR. HERMAN:

 2       Q     Is an associate of CNBM a firm or

 3   corporation or business over which CNBM or CNBM Group

 4   has significant influence?

 5                   MR. VEJNOSKA:  Objection, asked and

 6           answered, calls for legal conclusion and

 7           speculation, vague and ambiguous.

 8       A     Both CNBM and CNBMG exercise their rights of

 9   shareholders.  Therefore, their significance --

10   significant influence is within those shareholder

11   rights.

12   BY MR. HERMAN:

13       Q     What, in your view, is the difference

14   between a related party to CNBM and an associate of

15   CNBM?

16                   MR. VEJNOSKA:  Objection, calls for

17           legal conclusion or expert opinion.

18       A     I believe CNBM is an equal shareholder with

19   other investors.  There is no difference.

20   BY MR. HERMAN:

21       Q     Have you in any public report of CNBM from

22   2005 through today ever issued a correction or

23   retraction of any statement in the publication of

24   CNBM's public report?

25                   MR. VEJNOSKA:  Objection, compound,

Confidential - Subject to Further Confidentiality Review

1           vague and ambiguous.

2      A      I don't recall.

3    BY MR. HERMAN:

4      Q      You don't recall ever having made a

5    retraction or an amendment to a public published

6    report of CNBM?

7      A      I don't recall.

8                 MR. VEJNOSKA:  I need to pose the same

9           objections.

10   BY MR. HERMAN:

11     Q      Would you look at Exhibit 5, the 2006 CNBM

12   annual report.  Would you please turn to page 13.

13   Under the words gypsum board's Taihe, T-a-i-h-e, what

14   was the increase in volume in millions of gypsum board

15   production in 2006 as compared to 2005?

16     A      74 million square meters.

17     Q      What was the sales volume of gypsum boards

18   by Taihe in 2006 as compared to 2005?

19                 MR. VEJNOSKA:  Objection, form.

20     A      In 2005, let me take a look.  There is no

21   sales volume here.

22   BY MR. HERMAN:

23     Q      I see sales volume in millions in 2005 108.1

24   and in 2006 191.0 under gypsum boards Taihe.

25                 MR. VEJNOSKA:  Objection, argumentative.

Confidential - Subject to Further Confidentiality Review

1      A      I think there is an error in translation.

2   This refers to sales volume, not sales amount.

3   BY MR. HERMAN:

4      Q      What was the difference in sales volume of

5   gypsum boards of Taihe between 2005 and 2006?

6      A      Sales volume increased.

7      Q      By how much?

8              MR. VEJNOSKA:  I was told there would be

9       no math, so objection.

10      A      It was increased by over 70 million square

11   meters.

12   BY MR. HERMAN:

13      Q      Are you aware that in 2006 Taihe shipped

14   manufactured Chinese drywall that ended up in the

15   United States of America?

16              MR. VEJNOSKA:  Objection, foundation.

17              MS. EIKHOFF:  Objection, foundation.

18      A      I'm not sure what they did at the time.

19   BY MR. HERMAN:

20      Q      Would you look at page 15.  Is that your

21   report and review of the year?

22      A      I see that.  That's correct.

23      Q      And are the words in your statement,

24   "remarkable progress in branding and marketing,"

25   correct?

Confidential - Subject to Further Confidentiality Review

```
 1        A       Where does it say that?

 2        Q       Well, I'm asking if it says that in the

 3   second sentence under the words Lightweight building

 4   materials segment, which words appear directly under

 5   Chairman Song's photograph.

 6        A       I see that.

 7        Q       Those are your words, correct?

 8        A       All these were written by the secretary of

 9   the board of directors.  I have read them.

10        Q       And they were published with the authority

11   of CNBM publicly, correct?

12        A       Yes.

13        Q       Would you turn to page 19.  Under the

14   heading "Review on the Group's lightweight building

15   materials business in 2006," do you see the words,

16   "The Company's subsidiary BNBM"?

17        A       Where is it?

18        Q       Under the words steady expansion of

19   nationwide industrial bases, and I'll read it,

20   quote -- in English.  "The Company's subsidiary BNBM

21   has identified sites for the construction of its

22   nationwide gypsum board industrial bases."

23        A       I see that.

24        Q       Those words are correct?

25        A       The word that you used for subsidiary is
```

Confidential - Subject to Further Confidentiality Review

1    different from the Chinese version here.

2       Q     What is the Chinese word?

3              THE INTERPRETER:  This is the

4         interpreter speaking.  Subsidiary can be

5         translated as subsidiary company or branches or

6         daughter company or son company.  So the

7         interpreter interpreted into the daughter -- the

8         son company instead of literally interpreted

9         into subsidiary company.  All the

10        interpretations are correct according to the

11        understanding of the interpreter.

12   BY MR. HERMAN:

13      Q     Would you look at page 19 again and the

14   words under "Branding enhancement to improve marketing

15   and corporate image," do you see the words, "'TAISHAN'

16   branded gypsum boards were also recognized as one of

17   'China's Renowned Products'"?

18      A     I see that.

19      Q     Are those words correct?

20             MR. VEJNOSKA:  Objection, vague and

21        ambiguous.

22             MR. MOORE:  Objection, form.

23      A     Not accurate.

24   BY MR. HERMAN:

25      Q     What --

```
1        A      It is the expression of -- it is a popular

2   expression of the Chinese.  Are you referring to the

3   word under the flag of?

4        Q      I'm referring to the words, "TAISHAN," in

5   capital letters, "branded gypsum boards were also

6   recognized as one of 'China's Renowned Products.'"

7        A      Correct.

8        Q      Now, would you please turn to page 25.

9   Under Acquisitions, "We acquired 42% equity interest

10  in Taihe on 30 April 2005 and 75% in Tianfeng on 31

11  March 2005"; is that correct?

12              MR. VEJNOSKA:  Objection, vague and

13         ambiguous.

14       A      I don't have a clear recollection on that.

15  BY MR. HERMAN:

16       Q      Do you see at page 25 in the CNBM annual

17  report that Taihe increased from 2005 to 2006

18  operating profit?

19       A      I see that.

20       Q      Is it true that the published annual

21  statement at page 25 indicates that Taihe increased

22  its operating profit from 72.1 RMB in millions to

23  141.6 RMB in millions from 2005 to 2006?

24       A      Correct.

25       Q      Would you look at page 26 of this report.
```

Confidential - Subject to Further Confidentiality Review

1    Does it indicate for year ended 31 December revenue

2    for gypsum boards increased from 2005 to 2006 by 67.2

3    percent?

4        A     Yes.

5        Q     Would you please turn to page 37.  Is it

6    true that the board of directors of CNBM makes

7    decisions on significant matters which include

8    business plans and investment proposals, the proposed

9    annual preliminary and final financial budget, the

10   debt and financial policies and proposals for

11   increases or reductions of the company's registered

12   share capital?

13               MR. VEJNOSKA:  Objection, compound,

14         vague and ambiguous.

15       A     That's what it says here.

16   BY MR. HERMAN:

17       Q     Do you agree with what it says there?

18               MR. VEJNOSKA:  Same objections.

19       A     Correct.  I don't think there is any

20   problem.

21   BY MR. HERMAN:

22       Q     Do you agree that the primary

23   responsibilities of the board of directors of CNBM is

24   to provide strategic guidance to the company and to

25   exercise effective supervision over the management?

1            MR. VEJNOSKA:  Same objection.

2      A     Where is it that you just said?

3  BY MR. HERMAN:

4      Q     The second sentence under Operation of the

5  Board, "The primary responsibilities of the Board are

6  to provide strategic guidance to the Company, exercise

7  effective supervision over the management."

8      A     The sentence is here, but subsequent to the

9  sentence there are two more sentences.

10      Q     Yes.  And my question is, do you agree that

11  the board provides strategic guidance to the company

12  and is to exercise effective supervision over the

13  management?

14            MR. VEJNOSKA:  Objection, calls for

15        legal conclusion, vague and ambiguous.

16      A     I agree.

17  BY MR. HERMAN:

18      Q     Would you turn to page 38 of the annual

19  report of 2006.  Under the section chairman and chief

20  executive officer, is it true that you are listed as

21  chairman of the company and Mr. Cao is listed as

22  president of the company?

23      A     Yes.

24      Q     And do you agree that the primary duties and

25  responsibilities of Chairman Song are chairing the

Confidential - Subject to Further Confidentiality Review

```
 1    general meetings and convening and holding board

 2    meetings and checking the implementation of board

 3    resolutions, signing the securities issued by the

 4    company, and other duties and powers authorized by the

 5    company's articles of association in the company?

 6              MR. VEJNOSKA:  Objection, vague and

 7         ambiguous, misstates the document.

 8    A     Yes.

 9    BY MR. HERMAN:

10    Q     Would you turn to page 73, please.  Chairman

11    Song, do you see a paragraph which states, "Directors'

12    Responsibility For the Consolidated Financial

13    Statements"?

14              Do you agree that the directors of

15    CNBM are responsible for the preparation and the true

16    and fair presentation of consolidated financial

17    statements?

18              MR. VEJNOSKA:  Objection, calls for

19         legal conclusion, rule of completeness.

20    A     It says here in Chinese comprehensive

21    financial statements.  I don't know what's the

22    difference between --

23              THE INTERPRETER:  Interpreter needs to

24         clarify with the witness.

25    A     What's the difference between unified report
```

1    and comprehensive report?

2    BY MR. HERMAN:

3        Q    Do you agree that the responsibilities of

4    the board of directors of CNBM is to report fairly and

5    accurately the financial matters in their financial

6    statements which are published publicly?

7                MR. VEJNOSKA:  Same objections.

8        A    Yes, I agree.

9                MR. HERMAN:  Would you please hand the

10            witness an exhibit which has already been

11            admitted in evidence 315-R.  Attached to it is

12            Chinese.

13    BY MR. HERMAN:

14        Q    And I'm going to direct your attention to

15    Bates number BNBMPLC-E-004836.  It's titled Roman

16    numeral IV, "Adjusted the industrial development

17    structure, and expanded the main business development

18    scale."

19                THE INTERPRETER:  This is the

20            interpreter speaking.  Would counsel like the

21            interpreter to read it off from the Chinese

22            version as I see it's a -- there's a redlined

23            version.

24                MR. HERMAN:  Well, I would like him to

25            read that paragraph that I just noted at 4836

Confidential - Subject to Further Confidentiality Review

1           yellowlined to himself and then I'll ask a

2           question about it.  And this document is dated,

3           for the record, March 23rd, 2007.

4      A     Which paragraph would you like me to read?

5  BY MR. HERMAN:

6      Q     Roman numeral IV, "Adjusted the industrial

7  development structure, and expanded the main business

8  development scale," and I believe it's yellowlined in

9  Chinese.

10     A     This is a report from Wang Bing.  Do you

11  want me to read it?

12              MR. HERMAN:  I would like the witness to

13         read that paragraph to himself and then I will

14         ask questions about it.

15     A     In order to further consolidate -- well,

16  okay, I'll read it to myself.

17              (Witness Reviews Document.)

18     A     I'm done reading it.

19  BY MR. HERMAN:

20     Q     Do you agree, Chairman Song, that in

21  August 2006 under the strong support of CNBM and under

22  the direct direction of Chief Song and Chief Cao, BNBM

23  further purchased 23 percent of equity of Shandong

24  Taihe which made the company's equity share in

25  Shandong Taihe increase up to 65 percent in total?

Confidential - Subject to Further Confidentiality Review

1      A     Under the direction of Chief Song and Chief

2   Cao, we did give directions for this work.

3                  MR. VEJNOSKA:  I'm just going to note

4           for the record that this is not a CNBM

5           translation of the document.  I understand its

6           genesis.

7                  MR. HERMAN:  I'm going to hand counsel

8           and the witness, translator 316-R, which is

9           already in evidence.

10                  MR. VEJNOSKA:  And for the record,

11          Mr. Herman, where we've had this conversation at

12          prior depositions, your references to any

13          documents being already in evidence of course we

14          don't agree that there's anything in evidence.

15          We do understand that you have marked them and

16          at the depositions you have stated that you are

17          moving them into evidence, but of course it is

18          our position as to all these documents that that

19          will have to await a judge's decision at the

20          time of trial as to what is or is not in

21          evidence.  I just wanted to be -- make that

22          clear again.  That's our position.

23   BY MR. HERMAN:

24      Q     Will the witness please refer to 316-R, the

25   document is 5889, produced by BNBM.

```
 1              MR. VEJNOSKA:  Again, for the record
 2        this is not a translation that CNBM Orrick's
 3        counsel provided so --
 4              MR. HERMAN:  It's not a what?
 5              MR. VEJNOSKA:  It is not a translation
 6        that CNBM has made in this document.  So we'll
 7        reserve all of our rights as to its accuracy.
 8   BY MR. HERMAN:
 9     Q    Read the portion that's yellowlined in
10   Chinese to himself.
11              (Witness Reviews Document.)
12     A    I'm done reading it.
13   BY MR. HERMAN:
14     Q    Do you see the words welcome speech on the
15   2008 BNBM annual marketing meeting?
16     A    I see that.
17     Q    And you see the words BNBM general manager
18   Bing Wang?
19     A    I see that.
20     Q    And did you appear at this meeting, Chairman
21   Song?
22     A    I don't recall, but from this I believe that
23   I have participated in a meeting.
24              MR. VEJNOSKA:  Move to strike based on
25        speculation.
```

```
 1   BY MR. HERMAN:

 2       Q    Do you -- do you agree with Bing Wang's

 3   statement that in 2007 under the correct leadership

 4   and strong support of CNBM and the correct decision

 5   making of the BNBM board of directors, BNBM, according

 6   to the requirements of CNBM Group's unified,

 7   modelized, streamlined, systemized and digitized

 8   management model fully implemented KPI Management and

 9   satisfactorily accomplished the three missions given

10   by the group?

11             THE INTERPRETER:  This is the

12        interpreter speaking.  Would counsel like me to

13        read from the English translation provided?

14             MR. HERMAN:  Yes, the one in which there

15        are written notes made by counsel for BNBM.

16       A    I agree with his statement.

17             MR. HERMAN:  It's 12:00 on the button.

18             THE VIDEOGRAPHER:  Time now is

19        11:59 a.m.  We are off the record.

20             (Recess Taken From 11:59 a.m. To

21             1:06 p.m.)

22             THE VIDEOGRAPHER:  This begins disk 4 of

23        today's deposition.  Time now is 1:06 p.m.  We

24        are back on the record.

25   BY MR. HERMAN:
```

Confidential - Subject to Further Confidentiality Review

```
 1      Q     Chairman Song, I direct your attention to

 2   Exhibit 6, the CNBM publicly published annual report

 3   of 2007.  Would you please look at page 10.  Is the

 4   structure reported at page 10 correct?

 5                MR. VEJNOSKA:  Objection, overbroad,

 6         compound.

 7                MS. EIKHOFF:  Objection as to time

 8         frame.

 9                MR. VEJNOSKA:  I adopt that objection,

10         vague and ambiguous.

11      A     The straight line between the parent company

12   and this company should be broken.  But let me take a

13   look.  This parent company owns these few companies.

14   Well, the structure should be correct.  The drawing

15   should be correct.

16   BY MR. HERMAN:

17      Q     Would you please look at page 14.  You see

18   gypsum board Taihe.  Do you agree that production

19   volume of gypsum board by Taihe increased

20   substantially from 189.6 million M2 in 2006 to

21   241.6 million M2 in 2007?

22                MR. VEJNOSKA:  Objection, foundation,

23         document speaks for itself.

24      A     Yes.

25   BY MR. HERMAN:
```

Confidential - Subject to Further Confidentiality Review

1        Q      Would you turn to page 15, the chairman's

2    statement of Chairman Song to the shareholders says,

3    in part, that the board and management company of the

4    company actively fulfilled a commitment to investors

5    and endeavored to assure a steady increase in

6    shareholders' return, thus building up a good image in

7    the capital markets.

8                     Is that a correct statement by you in

9    this report?

10                   MR. VEJNOSKA:  Objection, vague and

11        ambiguous.

12       A      Yes.  This was written by the secretary.

13   BY MR. HERMAN:

14       Q      And to your knowledge it's a correct

15   statement; is that true?

16                   MR. VEJNOSKA:  Same objection.

17       A      Correct.

18   BY MR. HERMAN:

19       Q      And has it not been one of your goals from

20   2005 to the current date to build up a good image in

21   capital markets for CNBM Company, Limited?

22       A      Yes.

23       Q      Would you please turn to page 17.  This

24   statement by Chairman Song is dated April 17, 2008.

25   Do you see that at the bottom of that page?

1      A      I see that.

2      Q      And part of what you have addressed is, "The

3   company will continue to strengthen branding to

4   enlarge market share of its gypsum board products and

5   brand influence."

6              Do you see those words?

7      A      I see that.

8      Q      And isn't it true that from 2005 through

9   April 17, 2008, one of your goals was to enlarge

10  market share of gypsum products and its brand

11  influence?

12             MR. VEJNOSKA:  Objection, vague and

13        ambiguous.

14     A      It is referring to the light building

15  material section that -- to increase the market share

16  and branding influence of the gypsum board of BNBM and

17  Taihe.

18  BY MR. HERMAN:

19     Q      Would you turn to page 29, please.  Do you

20  see the report that revenue from gypsum boards

21  increased 21.1 percent from 2006 to 2007?

22     A      I see that.

23     Q      Do you have any reason to question that

24  report?

25             MR. VEJNOSKA:  Objection, form.

Confidential - Subject to Further Confidentiality Review

```
 1      A      In fact, the revenue reflected in this

 2   report is referring to the revenue of BNBM.

 3   BY MR. HERMAN:

 4      Q      There was no report in 2007 of gypsum board

 5   revenue from Taishan Gypsum?

 6              MR. VEJNOSKA:  Objection, vague and

 7        ambiguous, foundation.

 8      A      Maybe the financial statements were

 9   consolidated.

10   BY MR. HERMAN:

11      Q      Why do you say that was BNBM reported

12   revenue and not a consolidated reported revenue from

13   BNBM and Taishan Gypsum?

14              MR. VEJNOSKA:  Objection, argumentative,

15        misstates testimony.

16      A      The revenue of BNBM includes the revenue of

17   BNBM in consolidation with revenue of Taishan Gypsum.

18   They are the same.

19   BY MR. HERMAN:

20      Q      In your investment -- did you make an

21   investigation at any time of the drywall lawsuits in

22   the United States?

23              MR. VEJNOSKA:  Objection, vague and

24        ambiguous.

25      A      Ever since I heard about the lawsuit in 2009
```

1    I have been getting information regarding to this

2    lawsuit.

3    BY MR. HERMAN:

4        Q     Did you ever question Wenlong Peng who was

5    one of the officials of Taishan Gypsum in 2006 and

6    2007?

7              MS. EIKHOFF:  Object to form, object to

8         foundation.

9        A     No, I'm not familiar with him.

10   BY MR. HERMAN:

11       Q     Are you familiar with Chairman Jia of

12   Taishan Gypsum?

13       A     I am familiar with him.

14       Q     Did you in your investigation after you

15   learned of lawsuits in 2009 question face to face

16   Chairman Jia of Taishan Gypsum about the lawsuits?

17             MR. VEJNOSKA:  Objection, foundation,

18        misstates testimony, vague and ambiguous.

19       A     I don't have a clear recollection.  I

20   believe I did ask him.

21   BY MR. HERMAN:

22       Q     Did you meet with a representative of Knauf

23   in 2009?

24       A     I don't have a clear recollection.  I have

25   met with Knauf once.  According to my recollection it

1    was in 2010.

2        Q      In 2010 to the best of your recollection did

3    you meet with Nikolaus Knauf?

4        A      I have met him in 2010.

5        Q      After you learned of the lawsuits in 2009

6    did you meet with a Knauf representative by the name

7    of Manfred Grundke?

8        A      I don't remember the name clearly, but when

9    I met with Knauf two of their managers were present.

10       Q      Was Thies, T-h-i-e-s, Knauf present at that

11   meeting?

12       A      I don't have a clear recollection on that.

13   I can't remember all of these names.  I just will

14   recognize them when I see them.

15       Q      Did you meet in 2009 or 2010 with David

16   Gregory from Knauf?

17       A      I only remember that when I met with Knauf

18   there were two managers present.  I do not remember

19   that I have met with other managers of Knauf.  I have

20   only met Knauf that one time.

21       Q      Did you meet -- or do you recall meeting on

22   that occasion with Mark Norris of Knauf?

23       A      I don't recall.

24       Q      Have you ever directed anyone who is an

25   officer or employee of CNBM Group or CNBM or BNBM

Confidential - Subject to Further Confidentiality Review

1    Group to meet with the Minister of Commerce of the

2    People's Republic of China in connection with the

3    gypsum lawsuits?

4                    MR. VEJNOSKA:  Objection, vague and

5         ambiguous, compound.

6        A    I did not direct anybody, but I'm aware that

7    the legal staff in CNBM had meetings with the

8    minister -- the Ministry of Commerce.

9    BY MR. HERMAN:

10       Q    Did you or did you direct any employee of

11   CNBMG, CNBM or BNBMG to communicate or meet with the

12   Ministry of Justice of the People's Republic of China

13   regarding the gypsum litigation?

14                   MR. VEJNOSKA:  Same objections.

15       A    I did not direct them, but I am aware of

16   that CNBM's legal department had met with the Ministry

17   of Justice.

18   BY MR. HERMAN:

19       Q    Did you or any employee of CNBMG, CNBM or

20   BNBMG meet with the Minister of Foreign Affairs

21   regarding the gypsum litigation in the United States?

22                   MR. VEJNOSKA:  Same objections.

23       A    Minister of Foreign Affairs?  I'm not sure.

24   BY MR. HERMAN:

25       Q    Did the Supreme Court of the People's

Confidential - Subject to Further Confidentiality Review

1    Republic of China advise that they would not enforce a

2    judgment in favor of US citizens in gypsum litigation

3    in the People's Republic of China?

4                    MR. VEJNOSKA:  Objection --

5                    THE INTERPRETER:  Interpreter needs to

6          reinterpret.

7                    MR. VEJNOSKA:  Objection, vague and

8          ambiguous.

9        A    I have not heard of that.

10   BY MR. HERMAN:

11       Q    Look at page 80 of the CNBM publicly

12   published report of 2007.  Did you and Director Cao

13   sign off on the consolidated balance sheet of CNBM as

14   of 31 December 2007?

15                   MR. VEJNOSKA:  Objection, vague and

16         ambiguous, compound, foundation.

17       A    I can't be sure whether or not I have signed

18   on it.

19   BY MR. HERMAN:

20       Q    Does your name appear on it?  Does

21   director --

22       A    It does appear on it.

23       Q    Does Director Cao's name appear on it?

24       A    Yes, it appeared.

25       Q    Did you ever direct anyone after publication

Confidential - Subject to Further Confidentiality Review

1    to change anything in the consolidated financial

2    statement?

3        A     No.

4        Q     To the best of your knowledge is the

5    consolidated financial statement as published publicly

6    true and correct to the best of your information and

7    belief?

8        A     This was created by the CPA firm which we

9    trust.

10       Q     To the best of your knowledge is it true and

11   correct?

12             MR. VEJNOSKA:  Objection, asked and

13       answered.

14       A     Because this was created by the CPA, I trust

15   it to be true.

16             THE INTERPRETER:  Interpreter needs to

17       clarify with witness.

18             The interpreter inquired of the witness

19       whether the word "it" means the CPA firm or the

20       CPA as individual.  The answer of the witness is

21       that I believe -- I trust the CPA firm to be

22       true.

23   BY MR. HERMAN:

24       Q     Do you recall a meeting in October 2007 with

25   yourself, Zhangli Chang, Bing Wang and Tongchun Jia?

Confidential - Subject to Further Confidentiality Review

```
 1      A      What time?

 2             MR. VEJNOSKA:  Objection, vague and

 3        ambiguous.

 4      A      October 2007?  I don't recall any meeting

 5   was held.

 6   BY MR. HERMAN:

 7      Q      Do you recall a meeting in October of 2007

 8   which addressed the relocation of the No. 1 BNBM

 9   gypsum production line using desulfurized gypsum?

10      A      I don't have a clear recollection.

11      Q      Do you recall a meeting in October 2007

12   which discussed guarantees of loans as between or

13   among BNBM, CNBM and Taishan Gypsum?

14             MR. VEJNOSKA:  Objection, vague and

15        ambiguous, compound.

16      A      I don't have a clear recollection.

17   BY MR. HERMAN:

18      Q      Do you have a recollection that in October

19   of 2007 a $1 million bonus was voted to Morgan Stanley

20   from CNBM?

21             THE INTERPRETER:  This is the

22        interpreter speaking.  Did counsel say "voted"

23        or "awarded"?

24             MR. VEJNOSKA:  He said "voted."

25             MR. HERMAN:  Either voted or awarded.
```

Confidential - Subject to Further Confidentiality Review

 1            MR. VEJNOSKA:  Objection, foundation,

 2       vague and ambiguous.

 3            MR. HERMAN:  I'm going to identify for

 4       the record CNBM Company 000102014 to 102025, a

 5       partial translation of the tenth president's

 6       office meeting on a Friday at 14 hours military

 7       time on the 16th floor conference room of CNBM

 8       building.  And I'll ask the interpreter to ask

 9       the witness if that refreshes his memory.

10            MR. VEJNOSKA:  Objection, vague and

11       ambiguous, foundation, improper refreshing of

12       recollection since nothing has been shown to the

13       witness.

14            I'm sorry for interrupting you.  You can

15       continue to answer.

16    A    I usually do not participate in the

17    president's office meeting.

18            (Deposition Exhibit 351 marked.)

19    BY MR. HERMAN:

20    Q    We're going to provide to you at this point

21    Exhibit 351.  October 12, 2007, a partial translation.

22    I would like you first to look at page 000102014.

23    A    I see that.

24            MR. VEJNOSKA:  Sorry.  Mr. Herman, I'm

25       just going to register for the record an

1           objection to the translation since this is the

2           first time we've seen it.  We have not provided

3           it.  I'll have no objection obviously to you

4           questioning the witness about the document,

5           especially if you read it in Chinese.

6    BY MR. HERMAN:

7           Q     Do you see that the tenth president's office

8    meeting was held on October 12th, 2007?

9           A     It is the same thing, this one?  I see that,

10   but I really can't remember a meeting that was held so

11   long ago.

12          Q     Who are the -- who is the host of that

13   meeting as listed on the report?

14          A     The host of that meeting is Zhou Zhangli.

15          Q     And is Chairman Song listed as attending?

16          A     Correct.

17          Q     And is Zhangli Chang listed as attending?

18          A     Yes.

19          Q     And is Bing Wang listed as attending?

20          A     Yes.

21          Q     And is Tongchun Jia listed as attending?

22          A     Yes.

23          Q     I would like to turn, if you would, to page

24   CNBM 102020, resolutions of the meeting.  Under item

25   No. 2 does it indicate that the gross profit rate of

Confidential - Subject to Further Confidentiality Review

1    Shandong Taihe was 26 percent?

2        A    Yes.

3        Q    If you would turn now to item No. 11 at

4    page 102023.

5        A    I see that.

6        Q    Does this refresh your memory that at that

7    meeting 1 million US dollars were awarded to Morgan

8    Stanley to commend that company's contribution to the

9    successful implementation of allotment of shares at

10   lightning speed and for their longstanding support of

11   CNBM?

12       A    I see that.  I recall there was such an

13   occasion.

14       Q    Would you then look at CNBM 102024.  Does it

15   indicate that the minutes of this meeting are to be

16   sent to CNBM Group, the directors, supervisors,

17   leaders of the main office and all departments of the

18   company and all companies of the stock company?

19       A    Yes.

20       Q    Would you go back to the first page 102014.

21   Excuse my mispronunciation, but does it show a

22   recorder of the meeting Xue'an, second word Chen?

23       A    Yes.

24       Q    Is that individual still employed by CNBM or

25   CNBMG?

Confidential - Subject to Further Confidentiality Review

```
 1     A     He is still in CNBM.

 2     Q     In what capacity does he serve?

 3           THE INTERPRETER:  The interpreter needs

 4     to clarify upon clarification with the witness.

 5     Instead of he, should be she.  The answer of the

 6     witness is I am not sure what position she holds

 7     right now.  She used to be Cao Jianglin's

 8     secretary.

 9           MR. HERMAN:  At this time we're going to

10     introduce into the deposition Exhibit 351,

11     partial translation in English and Chinese.

12           MR. VEJNOSKA:  Same objections as

13     previously stated.  Mr. Herman, I will say that

14     spelling the name doesn't really count as trying

15     to pronounce it.  So we have no -- there is no

16     problem with mispronunciation.  I don't blame

17     you.

18

19

20

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19   BY MR. HERMAN:

20      Q    How did you first learn of the litigation

21   involving the Chinese drywall -- gypsum drywall in the

22   United States?  Strike the question.

23                How did you first learn of the

24   litigation in the United States regarding Chinese

25   drywall?
```

```
1        A      Media told me about it and the personnel

2    from the legal department of CNBMG also told me about

3    it, but specifically if whether or not media had told

4    me first or the personnel at the legal department had

5    told me first, I do not have a clear recollection.

6                   MR. HERMAN:  Show the witness in English

7              and in Chinese Exhibit 305-R, which has been

8              previously introduced in Wang Bing's deposition

9              11157-11166.  It has the machine translation and

10             then an actual translation.  The edits in red

11             have been made by BNBM's counsel.

12   BY MR. HERMAN:

13       Q      Would you please turn to the first page

14   which is 11157 and it's -- the document's dated

15   April 16, 2014.  It's listed as a Beijing New Building

16   Material Public Limited Company shareholders general

17   meeting document, Beijing New Building Material Public

18   Limited company's annual general meeting of

19   shareholders.

20                   MR. VEJNOSKA:  For the record, we have

21             the same objection and reservation regarding

22             translations by other parties.

23   BY MR. HERMAN:

24       Q      Have you seen this document before?

25       A      No.
```

Confidential - Subject to Further Confidentiality Review

1      Q     Are you aware that in the regular course of

2   business BNBM provided guarantees of loans for Taishan

3   Gypsum Company, Limited?

4               MR. VEJNOSKA:  Objection, vague and

5         ambiguous, argumentative.

6      A     I'm not sure the financial issues between

7   them.

8   BY MR. HERMAN:

9      Q     Were you receiving regularly the annual

10  reports and interim reports and announcements of BNBM

11  from the years 2007 through date?

12              MR. VEJNOSKA:  Objection, compound,

13        vague and ambiguous, overbroad.

14     A     I'm not sure.  I don't remember receiving

15  their reports.

16  BY MR. HERMAN:

17     Q     Did you ever discuss with Wang Bing loans or

18  guarantees that BNBM was making to Taishan?

19              MR. VEJNOSKA:  Objection, foundation.

20     A     I don't remember having discussed with him

21  this issue.

22  BY MR. HERMAN:

23     Q     Did you ever discuss this issue with

24  Chairman Cao?

25              MR. VEJNOSKA:  Objection, foundation,

Confidential - Subject to Further Confidentiality Review

1        vague and ambiguous.

2     A     I don't remember having discussed with him.

3   BY MR. HERMAN:

4     Q     Do you recall that CNBM made loans and

5   guarantees during the period from 2006 to date in

6   favor of BNBM?

7     A     Please repeat.

8     Q     Yes.  Do you recall that CNBM made loans and

9   guarantees in favor of BNBM during the period of time

10   from 2005 to date?

11          MR. VEJNOSKA:  Objection, foundation,

12     compound.

13     A     I don't recall these issues because all of

14   these issues are financial issues.  I rarely inquire

15   issues like these.

16          MR. HERMAN:  Let's see Exhibit 306-1.

17   BY MR. HERMAN:

18     Q     This is minutes of a meeting, BNBM document

19   130706 to 130707, dated December 12, 2014.  Place of

20   meeting, meeting room No. 1, 15F; Guohai Plaza.

21   Attendees for CNBM Group listing two attendees and

22   BNBM listing six attendees.

23          What position --

24          MR. MOORE:  Mr. Herman, excuse me.  As

25     counsel for BNBM, I'm looking at this document.

```
 1         There are attorneys listed in the document on
 2         it.
 3                 MR. HERMAN:  Judge Fallon has ruled that
 4         this is not a privileged document.
 5                 MR. MOORE:  This has already been ruled
 6         upon?
 7                 MR. HERMAN:  Yes, it has.
 8                 MR. LEVIN:  Friday.
 9                 MR. HERMAN:  It was briefed by both
10         parties and ruled on Friday.
11                 MR. MOORE:  Well, we have a lot of that
12         to read.  Has the entire document been ruled on
13         by Judge Fallon, not redacted parts or anything
14         like that?
15                 MR. HERMAN:  Correct.
16                 MR. MOORE:  Go ahead.
17                 MR. HERMAN:  There are rulings on I
18         think two other documents with partial
19         redactions in advance if they -- whoever's
20         documents they are, I'll advise you before we
21         distribute.
22                 MR. MOORE:  Yeah, I just wanted to make
23         sure there's those number of documents.
24                 MR. HERMAN:  Not a problem.
25                 MR. MOORE:  Thank you, sir.
```

 1            MR. HERMAN:  You're welcome.

 2    BY MR. HERMAN:

 3        Q     Can you tell me with Jian Zhang what

 4    position or authority was held by that person in CNBM

 5    Group?

 6        A     He's a manager of business administration.

 7        Q     And Qiming Shi, what position did that

 8    individual hold in CNBM Group?

 9        A     Currently the vice director of legal affairs

10    office.

11        Q     And Bing Wang at the time was chairman of

12    the board of directors of BNBM; is that correct?

13        A     Yes.

14        Q     And Yu Chen was the general manager of BNBM

15    at the time?

16        A     Yes.

17        Q     And at that time BNBM owned 95 -- I'm sorry.

18    At that time BNBM owned 65 percent of the outstanding

19    shares in Taishan Gypsum, correct?

20        A     Yes.

21        Q     What was or is the Gypsum Board Matter

22    Response Office?

23            THE INTERPRETER:  This is the

24        interpreter speaking.  The interpreter

25        interpreted board as board of directors.

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. HERMAN:

 2       Q    Well, let me ask the question --

 3                 THE INTERPRETER:  The witness answer is

 4           there is no board of directors of gypsum.  It is

 5           the responding office.

 6   BY MR. HERMAN:

 7       Q    R-e-s-p-o-n-d-i-n-g office, the responding

 8   office?

 9                 THE INTERPRETER:  Does counsel want the

10           interpreter to spell it for -- in English?

11                 MR. HERMAN:  I didn't understand the

12           witness's answer.  It is the responding office;

13           is that correct?  Is that what the witness

14           answered?

15                 THE INTERPRETER:  This is the

16           interpreter speaking.  The witness used the word

17           responds or responding, response.

18   BY MR. HERMAN:

19       Q    Okay.  Where is that office located?

20       A    I'm not sure the specifics of this office.

21   From what is written here, it appears to be a meeting

22   rather than a office.

23       Q    If you would, let's turn to Roman numeral V

24   at page 0130707.

25       A    Is this the one you're referring to?
```

1    Q    The title is "Further Strengthening the

2  Communication with and the Report to Each Ministry and

3  Commission."

4    A    Yes.

5    Q    Do you see that Bing Wang and Jian Zhang and

6  Yu Chen were to organize a communication with the

7  Ministry of Justice, the Ministry of Commerce and the

8  Ministry of Foreign Affairs?

9    A    I see that.

10   Q    Did you know that they were organizing

11  communications to those ministries?

12   A    They were going to report to them.  What is

13  written here is to report.

14   Q    Did they report to you what they reported to

15  them?

16   A    They did not report to me.

17   Q    Have you seen the reports from CNBM or BNBM

18  or CNBM Group to and from the Ministry of Justice of

19  the People's Republic of China?

20        MR. VEJNOSKA:  Objection, foundation.

21   A    No.  The reports are in oral form, not in

22  written form.  They were reports by oral

23  communications.

24  BY MR. HERMAN:

25   Q    Did you receive any oral communications from

1    any employee of CNBMG, CNBM, BNBM, BNBMG regarding

2    discussions of communications orally with the Ministry

3    of Justice or the Ministry of Commerce?

4        A    I don't have a clear recollection.

5        Q    Do you have any recollection whether it's

6    clear or unclear of oral reports regarding the

7    Ministry of Justice?

8        A    I'm aware that they communicated and

9    reported to the foreign affairs ministry, the justice

10   ministry and the commerce ministry.  That I know.

11       Q    How do you know that?

12       A    Jian Zhang and others had mentioned to me

13   orally.

14       Q    Did they mention to you orally that the

15   Ministry of Justice or the Supreme Court of the

16   People's Republic of China would not accept service of

17   lawsuits from the United States in connection with the

18   gypsum matter?

19            MR. VEJNOSKA:  I'm going to direct the

20       witness that if any of those communications were

21       with members of his legal department, he is not

22       to disclose the contents of that.  Otherwise you

23       may answer the question.

24       A    I do not know in regard to the question you

25   just asked.

```
 1    BY MR. HERMAN:

 2         Q    Wasn't it reported to you by Yu Chen that --

 3    and Chairman Cao that the judgment of a federal court

 4    on the drywall matter in the United States would not

 5    be enforced in China?

 6                   MR. VEJNOSKA:  Objection, foundation,

 7         argumentative.

 8         A    I don't recall I have been told of such.

 9    BY MR. HERMAN:

10         Q    Weren't you in a meeting where that was

11    discussed?

12                   MR. VEJNOSKA:  Same objections.

13         A    I don't have a clear recollection on whether

14    or not it was discussed.

15    BY MR. HERMAN:

16         Q    Do you have an unclear recollection that

17    that matter was discussed in your presence?

18         A    What matter?

19         Q    The matter of a judgment in the United

20    States in gypsum not being enforced in China.

21                   MR. VEJNOSKA:  Objection, foundation,

22         now calling for speculation.

23         A    I don't recall.  I really do not recall that

24    anybody had mentioned this to me.

25                   MR. HERMAN:  The document was
```

Confidential - Subject to Further Confidentiality Review

```
 1              unprivileged by Judge Fallon.  We're going to

 2              offer it in the deposition at this point, 306-1.

 3                      MR. VEJNOSKA:  I apologize, Mr. Herman.

 4              I thought you were starting to go to another

 5              document.

 6                      MR. HERMAN:  No.  And what I'm going to

 7              do is it's 2:30.  We'll break till quarter till

 8              3.

 9                      MR. VEJNOSKA:  Perfect.  Thank you very

10              much.

11                      MR. HERMAN:  You're welcome.

12                      THE VIDEOGRAPHER:  Time now is 2:33 p.m.

13              We are off the record.

14                      (Recess Taken From 2:33 p.m. To

15                      3:01 p.m.)

16                      THE VIDEOGRAPHER:  This begins disk 5 of

17              today's deposition.  Time now is 3:01 p.m. and

18              we are back on the record.

19                      (Deposition Exhibit 356 marked.)

20                      MR. HERMAN:  This document is dated

21              August 15, 2014.  It's Exhibit 356.  It's a

22              document of CNBM Group.  It's the Eighteenth

23              Meeting of the Third Board of Directors of China

24              National Building Material Company convened by

25              Chairman Song Zhiping.
```

Confidential - Subject to Further Confidentiality Review

1           The privilege was asserted, argued and

2     overruled by Judge Fallon who redacted part of

3     the document.

4           I'll be asking the witness questions

5     from Exhibit 356 on the part of the document

6     that is not redacted at page 9 of 23 in English

7     CNBMGRP346624.

8           MR. VEJNOSKA:  Just to clarify the

9     record -- I'm sorry.  Just to be clear, Judge

10    Fallon upheld the privilege claim -- there's no

11    question.

12          Judge Fallon upheld the privilege claim

13    as to part of the documents and held that

14    another part should not be redacted.

15          MR. HERMAN:  And I will -- of course

16    I'll only ask questions about the part that

17    hasn't been redacted.

18  BY MR. HERMAN:

19     Q     Let's first look at the first page of the

20  document.  It says meeting location, second conference

21  room on 6F.  Whose conference room is that?  What

22  entity's conference room?

23     A     It is a conference room in the CNBM

24  building.

25     Q     And is this a meeting of the board of

Confidential - Subject to Further Confidentiality Review

1    directors of China National Building Material Company

2    or of China National Building Material Group?

3        A     This is a public conference room in the

4    building.  Anybody can hold a meeting there.

5        Q     That's not my question.  Is this a meeting

6    called as the third board of directors -- the

7    Eighteenth Meeting of the Third Board of Directors of

8    CNBM or CNBMG?

9        A     CNBMG.

10       Q     And you are the convener of this meeting; is

11   that correct?

12       A     I was the convener.

13       Q     And you were present and Chairman Cao was

14   present; is that correct?

15       A     General Manager Cao.

16       Q     I would like you now to turn to page 9 of

17   23.

18              THE INTERPRETER:  The interpreter would

19        like to correct -- to correct herself.  The

20        witness said yes, period, General Manager Cao

21        instead of just General Manager Cao.

22   BY MR. HERMAN:

23       Q     It's on page 346628.  And I'm going to -- I

24   would like the court reporter to read to the witness

25   the paragraph before the -- after the words report

Confidential - Subject to Further Confidentiality Review

```
1   regarding recent developments of plasterboards

2   exported to the United States that begins Zhang Jian.

3              THE INTERPRETER:  This is the

4         interpreter speaking.  From Jian to where?

5              MR. HERMAN:  Just that first paragraph.

6              MR. VEJNOSKA:  Mr. Herman, may I just --

7              MR. HERMAN:  Three sentences.

8              MR. VEJNOSKA:  May I just ask, are you

9         asking her to read the --

10             MR. HERMAN:  The Chinese.

11             MR. VEJNOSKA:  The Chinese.  Okay.

12             THE INTERPRETER:  The interpreter is

13        done with the reading.

14  BY MR. HERMAN:

15     Q    Does this refresh your memory that you were

16  present when it was discussed that the Supreme

17  People's Court had been inquired regarding this matter

18  by Chief Zhou of the Bureau of Policies and

19  Regulations?

20             THE INTERPRETER:  May the interpreter

21        have the spelling of chief --

22             MR. HERMAN:  C-h-i-e-f Z-h-o-u.

23             THE INTERPRETER:  Z-h-o-u?

24             MR. HERMAN:  Yes.

25     A    I still do not recall.  That's what it says
```

1   here.

2   BY MR. HERMAN:

3       Q     Well, does it refresh your memory that you

4   were present at a meeting in which it was said a

5   ruling in the United States would not be subject to

6   enforcement against domestic assets in China?

7               MR. VEJNOSKA:  Objection, asked and

8         answered, argumentative.

9       A     That was a discussion.  I do not recall now

10  what everybody has said.

11  BY MR. HERMAN:

12      Q     But do you recall the subject of the

13  discussion?

14              MR. VEJNOSKA:  Same objections.

15      A     I recall it was regarding the issue of

16  gypsum board and its updates.

17              MR. MOORE:  Mr. Herman, for the record

18        BNBM has not had an opportunity to check the

19        translation of this document.  It reserves the

20        right to do so.

21              MR. HERMAN:  All you have to do is

22        object.

23              MR. MOORE:  That's what I'm doing.

24              MR. VEJNOSKA:  And I'll note for the

25        record that this is the draft translation.  This

Confidential - Subject to Further Confidentiality Review

1           is not the final translation provided with the

2           motion.

3                   MR. HERMAN:  Just for the record, this

4           document was produced by CNBM Group and it bears

5           the CNBM Group Bates numbers on every page of

6           the Chinese.

7                   MR. VEJNOSKA:  No one's disputing that,

8           Mr. Herman.

9    BY MR. HERMAN:

10      Q     Was there an Eighteenth Meeting of the Third

11   Board of Directors of China National Building Material

12   Company Group on August 15, 2014, that you convened as

13   Chairman Song?

14                  MR. VEJNOSKA:  Objection, asked and

15           answered.

16      A     According to my recollection, that's

17   correct.

18   BY MR. HERMAN:

19      Q     And would you look at the attendees listed

20   on the first page.  For each attendee, would you give

21   the attendee's name to the court reporter and the

22   position and a statement of with whom that individual

23   entity is affiliated.  And then I would like the

24   court -- the translator to state it in English for the

25   record.

Confidential - Subject to Further Confidentiality Review

```
 1                    MR. VEJNOSKA:  Objection, compound,
 2         overbroad, calls for a narrative.
 3     A     Yao Yan is one of our deputy director of the
 4  board.
 5  BY MR. HERMAN:
 6     Q     Of CNBMG?
 7                    THE INTERPRETER:  Interpreter needs to
 8         clarify with witness.  Interpreter corrects her
 9         interpretation.
10     A     Yao Yan who is the deputy chair of the board
11  of directors.
12  BY MR. HERMAN:
13     Q     Of which company?
14     A     CNBMG.  Cao Jianglin is a director and
15  general manager of the group.  Ni Xiaoting is an
16  external director sent by SASAC.  Zhao Xiaogang is an
17  external director sent by SASAC.  Zhuang Laiyou is an
18  external director sent by SASAC.  Lu Xiaoqiang, an
19  external director sent by SASAC.  Zhu Yanfu, an
20  external director sent by SASAC.  Peng Xuefeng is an
21  external director sent by SASAC.  Wang Yumeng is a
22  staff director, currently is the president of the
23  union.  Zheng Lei is a director in the supervision
24  committee.
25     Q     The supervision committee of CNBMG?
```

Confidential - Subject to Further Confidentiality Review

```
 1      A      Yes.  Hao Zhenhua is the deputy director of

 2   the party.

 3      Q      The party is the Communist party of the

 4   People's Republic of China?

 5      A      Communist party, yes.  Guang Zhaoyu is the

 6   secretary of the board of the group.  Gan Zhiping is

 7   the office director of the board of directors.

 8      Q      Of?

 9      A      CNBMG.

10             MR. HERMAN:  Would you repeat what the

11          witness's answer just was, please.  I didn't

12          hear it.

13             THE INTERPRETER:  Gan Zhiping is the

14          office director of the board of directors of

15          CNBMG.

16      A      Guo Chaomin is the deputy general manager of

17   CNBMG.  Wu Jiwei is the general CPA of CNBMG.  Zhang

18   Jian is a manager of CNBMG's business administration

19   department.  Zhao Yanmin is the manager of the

20   financial department of CNBMG.  Wei Rushan is the

21   deputy manager of the investment department of CNBMG.

22   BY MR. HERMAN:

23      Q      Now, when it says that Chairman Song is the

24   convener, does that -- does that mean that you call as

25   Chairman Song the meeting to order?
```

Confidential - Subject to Further Confidentiality Review

```
1       A       It says host.  I hosted the meeting.

2       Q       When a meeting such as the Eighteenth

3   Meeting of the Third Board of Directors of the group

4   is called are various resolutions such as reported

5   here generally a part of the agenda?

6                   MR. VEJNOSKA:  Objection, vague and

7           ambiguous.

8       A       There are some resolutions made in the board

9   of directors' meeting.  There are also some

10  announcements made in the meeting without resolutions.

11  There are two types.

12  BY MR. HERMAN:

13      Q       Is that the complete answer?

14      A       It is a complete answer.

15      Q       This report of the meeting, is that a

16  regular type of business report that's published

17  internally regarding meetings such as this?

18                  MR. VEJNOSKA:  Objection, vague and

19          ambiguous, foundation.

20      A       You're referring to this report?

21  BY MR. HERMAN:

22      Q       Yes.

23                  MR. VEJNOSKA:  Same objections.

24      A       In fact, I have never seen this report

25  before.  This is a record.
```

Confidential - Subject to Further Confidentiality Review

1    BY MR. HERMAN:

2        Q      It's a record kept by the company?

3                 MR. VEJNOSKA:  Objection, foundation.

4        A      As I see it right now, it should not be a

5    record that is kept by the company.  If it were a

6    record that was kept by the company, I should have

7    been given to have a final review of that.  But since

8    I have never seen it, it should be an individual

9    personal record that was made by somebody attending

10   the meeting.

11   BY MR. HERMAN:

12       Q      And who is it that attends the meeting that

13   makes these records?

14                 MR. VEJNOSKA:  Objection, vague and

15         ambiguous, overbroad.

16       A      I'm not sure.  I'm not sure who made the

17   record.

18   BY MR. HERMAN:

19       Q      Well, if all the --

20       A      Because the record is a rough and the

21   language is not consistent.

22       Q      Because of all -- from all of the people

23   that are listed as attendees, whose responsibility was

24   it to make the rough notes of this meeting?

25                 MR. VEJNOSKA:  Objection, foundation,

1          calls for speculation.

2      A      A final resolution will result from a

3   meeting and that resolution would become an official

4   document only after each director had reviewed and

5   signed on the document.  When I look at the document

6   now, it appears to me a note made by somebody in the

7   board of directors' office who attended the meeting.

8   Therefore, it is not complete and not accurate.

9   BY MR. HERMAN:

10     Q      What is inaccurate about this record?

11              THE INTERPRETER:  The interpreter needs

12         to clarify with the witness.

13     A      There are a lot of places.

14  BY MR. HERMAN:

15     Q      Well, for each place that's inaccurate,

16  please tell us for the record under oath the

17  inaccuracies.

18              MR. VEJNOSKA:  Objection, compound,

19         overbroad, calls for speculation.

20     A      I don't have a clear recollection on that

21  because at the time it was a discussion that's been

22  recorded.  I believe the language in the record was

23  not accurate.

24  BY MR. HERMAN:

25     Q      Which language?

1           MR. VEJNOSKA:  Same objections.

2     A     I think there were inaccurate statements

3  throughout the record.  It is not a matter of which

4  sentence.  Which is to say that this is not an

5  official record.

6  BY MR. HERMAN:

7     Q     Is it inaccurate to your recollection that

8  Chief Zhou of the Bureau of Policies and Regulations

9  has inquired with the supreme people's court?

10          MR. VEJNOSKA:  Objection, asked and

11       answered.

12    A     I just said that I do not recall the

13  statement.

14  BY MR. HERMAN:

15    Q     Are you saying that it's inaccurate or that

16  you don't recall it?

17          MR. VEJNOSKA:  Objection, asked and

18       answered, argumentative.

19    A     For this paragraph I do not recall.

20          MR. HERMAN:  We offer in the deposition

21       Exhibit 356.  We call for the original minutes

22       from CNBMG's records which have not yet been

23       produced regarding the Eighteenth Meeting of the

24       Third Board of Directors of China National

25       Building Material Company.  And if necessary,

Confidential - Subject to Further Confidentiality Review

1          we'll hold the deposition open till someone that

2          was at that meeting or responsible for those

3          minutes can testify as to the accuracy of

4          minutes of that meeting.

5                    We now refer the witness to Exhibit 332.

6          It's a partial translation of CNBM Group

7          document 392949 to 393015.  And we direct the

8          witness first to CNBM Group 39300 which is --

9          which is Bates number 393000.

10                   (Deposition Exhibit 332 marked.)

11   BY MR. HERMAN:

12        Q    This says it's a resolution of the

13   Seventeenth Meeting of the Third Session of the Board

14   of Directors of CNBM Group.  It's dated July 11th,

15   2014.  I'll ask the witness to turn to item 3 at

16   393001.  I'll ask the witness to read in Chinese

17   paragraph 3 that begins "Deliberated on and passed the

18   proposal."

19        A    This is the paragraph, right?

20                   (Witness Reviews Document.)

21        A    I read it.

22   BY MR. HERMAN:

23        Q    You signed it, did you not?

24        A    Yes.

25        Q    You signed it, correct?

Confidential - Subject to Further Confidentiality Review

```
 1      A      Yes.

 2      Q      And Chairman Cao signed it, correct?

 3             MR. VEJNOSKA:  Objection, foundation,

 4        calls for speculation.

 5      A      General Manager Cao signed.  General

 6  manager.

 7  BY MR. HERMAN:

 8      Q      And you and every member attending for CNBM

 9  Group supported Taishan Gypsum's decision not to

10  attend the judgment debtor hearing on July 17, 2014;

11  isn't that correct?

12             MR. VEJNOSKA:  Objection, foundation,

13        argumentative, misstates the document.

14      A      It is not support but rather respect,

15  respect the decision made by Taishan Gypsum.

16  BY MR. HERMAN:

17      Q      Did every member of CNBM Group attending

18  that board of directors meeting vote to respect

19  Taishan Gypsum's decision not to attend the judgment

20  debtor hearing on July 17, 2014, not to petition to

21  the Supreme Court of the United States for a

22  certiorari and review regarding the jurisdictional

23  dispute and not to participate in the lawsuits on the

24  merits in the US?

25             THE INTERPRETER:  May the interpreter
```

Confidential - Subject to Further Confidentiality Review

```
 1          have the definition of "certiorari"?

 2               MR. HERMAN:  Certiorari means appeal in

 3          this context.

 4               MR. VEJNOSKA:  To the Supreme Court.

 5     A      This is a decision made by Taishan Gypsum.

 6  The directors of CNBM Group decided to respect this

 7  decision after discussion.

 8  BY MR. HERMAN:

 9     Q      Why did you have to respect it?  Could you

10  have disrespected it?

11     A      After hearing their report on their

12  decision, we expressed our respect to that.

13     Q      This record which you signed, is that an

14  official record of CNBM Group?

15               MR. VEJNOSKA:  Objection, vague and

16          ambiguous, calls for a legal conclusion.

17     A      This is one of our meeting resolutions.

18  BY MR. HERMAN:

19     Q      Is that a resolution in the ordinary course

20  of your business?

21     A      I don't understand what you mean by ordinary

22  course.

23     Q      Is it a record you generally maintain of

24  resolutions which are passed by the CNBMG board of

25  directors?
```

Confidential - Subject to Further Confidentiality Review

```
 1              MR. VEJNOSKA:  Objection, foundation,

 2       calls for speculation.

 3       A     Yes, we would maintain resolutions such as

 4   this one.

 5   BY MR. HERMAN:

 6       Q     And where would they be retained?

 7       A     To be kept in the board of directors

 8   meeting.

 9       Q     And who has the responsibility to maintain

10   control of these resolutions?

11              MR. VEJNOSKA:  Objection, foundation.

12       A     Board of directors meetings office would

13   maintain these resolutions.

14   BY MR. HERMAN:

15       Q     And who is in charge of that office?

16       A     I'm not sure who specifically keep those

17   record in that office.  I know that it is the office

18   was supposed to keep them.

19       Q     And what is the address of that office?

20              THE INTERPRETER:  Interpreter needs to

21       clarify with witness.

22       A     The office is located on the 23rd floor of

23   CNBM building where is the location of CNBMG.

24   BY MR. HERMAN:

25       Q     This document says it's resolution No. 17 of
```

1    the third session of the board of directors of CNBM

2    Group.  Are all of the resolutions for one year kept

3    in one place?

4        A     I believe they should be all kept in this

5    one place, the office of the board of directors

6    meeting.

7        Q     Thank you.

8              MR. HERMAN:  We're going to offer

9         Exhibit 332 in English and in Chinese.

10             The next exhibit is Exhibit 333 dated

11        June 11th, 2010, Sixth Working Meeting of CNBM

12        Company.  It's a partial translation of CNBMC

13        80530 to 80587.  It's the meeting room of the

14        16th floor of the CNBM building and it says a

15        gist of Chairman Zhiping Song's speech.

16             (Deposition Exhibit 333 marked.)

17   BY MR. HERMAN:

18       Q     Do you -- why don't you take your time

19   reading the document at pages 80553, 554 and 555 as

20   marked in yellow.

21             (Witness Reviews Document.)

22       A     I see that.

23   BY MR. HERMAN:

24       Q     Do you recall making this speech?

25       A     This is a record, but I do not remember

1    whether the record accurately reflected what I said.

2        Q    Did you use the term "black swan" effect?

3             MR. MOORE:  Objection, opportunity to

4        determine accuracy of translation.

5        A    I remember I have used the language.  It

6    refers to a matter of very small probability in regard

7    to the language black swan effect.

8             MR. VEJNOSKA:  And for the record, I

9        don't want to have to keep saying this, but I

10       will in this instance; that as a translation by

11       another party, we reserve our right to obligate

12       on all grounds to it.

13   BY MR. HERMAN:

14       Q    You do have before you a document in

15   Chinese; is that correct?

16       A    Yes.

17       Q    And it says on the bottom of that page that

18   you're holding in your hand CNBM Company 0 -- excuse

19   me.  CNBMC00080564; isn't that true?  I'm sorry.

20   Zero -- strike it.

21             Doesn't it say at the bottom of that

22   document in Chinese on the right corner

23   CNBMCO00080554?

24             MS. EIKHOFF:  Objection, argumentative.

25       A    80554, correct?

1    BY MR. HERMAN:

2        Q    Yes.

3        A    Yes.

4        Q    Okay.  What trade protectionism in the US

5    are you referring to in your speech?

6                MR. VEJNOSKA:  Objection, foundation,

7        argumentative.

8        A    This is an opinion.  This is an opinion in

9    media.

10   BY MR. HERMAN:

11       Q    Chinese media?

12       A    Yes.  There is such an opinion in Chinese

13   media.

14       Q    And whose sentiment is it to corrupt the

15   good name of China?

16                MR. VEJNOSKA:  Objection, calls for

17       speculation, foundation, argumentative, vague

18       and ambiguous.

19       A    I have read an article in a Chinese

20   newspaper called Can Kao Xiao Xi, which introduced the

21   gypsum board matter in America in length.  It has an

22   advertisement in the article.  On the advertisement it

23   says this house does not use gypsum board made in

24   China in that way to solicit business.

25   BY MR. HERMAN:

```
 1        Q      Who was soliciting business for gypsum not

 2   made in China?

 3                  MR. VEJNOSKA:  Objection, foundation,

 4        calls for speculation.

 5        A      That's not what I meant.  I mean, the houses

 6   built did not use Chinese gypsum board.  It is an

 7   advertisement.

 8   BY MR. HERMAN:

 9        Q      By whom?

10                  MR. VEJNOSKA:  Same objections.

11        A      I don't recall because it was a long time

12   ago.  I believe it was an advertisement made and

13   displayed in front of the houses built by an American

14   building company.  The photograph was taken and

15   published in Chinese media.  It was a public report.

16   You can find that newspaper.

17   BY MR. HERMAN:

18        Q      Do you have that newspaper?

19        A      I have read that before, but I have not kept

20   the newspaper.

21        Q      What did you mean that there were normal

22   communications between Chinese and US governments

23   about the gypsum board event?

24                  MR. VEJNOSKA:  Objection, foundation.

25        A      Where is it?
```

Confidential - Subject to Further Confidentiality Review

1                    THE INTERPRETER:  The interpreter just

2          pointed to the witness the Chinese version of

3          the sentence.

4      A      Because I know that there have been

5  communications in this regard between US consumers

6  committee and the Chinese technology supervision

7  committee.

8  BY MR. HERMAN:

9      Q      Are you referring to the US Consumer Product

10  Safety Commission?

11      A      Yes, but I'm not sure about the specifics.

12  However, I do know that China and America have had

13  communications on the issue of the gypsum board's

14  quality problem.

15                    MR. HERMAN:  We're going to offer in the

16          record of this deposition Exhibit 333.  We'll

17          offer the full document in Chinese.  We'll offer

18          the translation that's a partial translation and

19          the machine translation of the whole document,

20          all is produced by CNBM Company.

21                    MR. VEJNOSKA:  Just to clarify the

22          record, CNBM did not produce the partial

23          translation.

24                    MR. MOORE:  Same objections as

25          opportunity to determine the accuracy of

1       translation.

2              MR. HERMAN:  At this time we're going to

3       refer the witness to Exhibit 331 produced by

4       BNBM PLC, Bates numbers 59967 to 59977, titled

5       "The Course of Events on Hiring Law Firms for

6       the Gypsum Board Litigation in the United

7       States."

8              (Deposition Exhibit 331 marked.)

9              MR. HERMAN:  And we are going to direct

10      the witness to page 59975, topic of the meeting,

11      the strategy for responding to the gypsum board

12      litigation in the US at page 9 in Chinese of

13      BNBMPLC59975.

14             MR. VEJNOSKA:  Same objection and

15      reservation as to translation done by another

16      party.

17             MR. MOORE:  Mr. Herman, is this one that

18      was ruled upon by the court or not?

19             MR. HERMAN:  To my knowledge this page

20      that I'm referring to has not been ruled on by

21      the court.

22             MR. MOORE:  If it's a BNBM document that

23      deals with legal matters, then I haven't had a

24      chance --

25             MR. HERMAN:  I don't think it does and

```
 1        I've only got two days to deal with this.  We've

 2        got a reservation with Judge Fallon on Thursday

 3        morning.  If you want to claw it back, we'll ask

 4        him to rule on it Thursday morning, but we'll

 5        have to bring the witness back to testify.

 6             MR. MOORE:  I just haven't even had a

 7        chance to look at it.  So if there is issues

 8        here about privilege, I need to be careful about

 9        that and I just need a moment to look at it.

10             MR. HERMAN:  I think -- I understand

11        that you have a duty to be careful about it and

12        I understand exactly what you've said.  I do not

13        believe that this matter is privileged.  It

14        relates to a meeting between Mr. Knauf and

15        Chairman Song and relates that meeting and it's

16        something that this witness has already

17        testified that he did have a meeting but can't

18        remember the details and I'm only asking about

19        these two paragraphs dealing with that meeting.

20        I'm not asking about any other matters and I'm

21        not asking about anything that's legal advice.

22             MR. MOORE:  Right.  But just the

23        document itself there's a privilege issue.  May

24        I have just a few moments to look at that?

25             MR. HERMAN:  Let's take a five-minute
```

Confidential - Subject to Further Confidentiality Review

```
 1          recess now.

 2                    MR. MOORE:  Thank you.

 3                    MR. HERMAN:  You're welcome.

 4                    THE VIDEOGRAPHER:  Time is 4:08 p.m.  We

 5          are off the record.

 6                    (Recess Taken From 4:08 p.m. To

 7                     4:32 p.m.)

 8                    THE VIDEOGRAPHER:  This begins disk 6 of

 9          today's deposition.  Time now is 4:32 p.m.  We

10          are back on the record.

11     BY MR. HERMAN:

12          Q     I'm referring now to Exhibit 8, the 2009

13     annual report of CNBM which was published on

14     April 16th, 2010.  I'm just going to ask a couple of

15     questions from this report.

16                    If you would please turn to page 55.

17     Chairman Song, do you see at page 55 that JPMorgan was

18     a substantial shareholder of CNBM?

19                    MR. VEJNOSKA:  Objection, vague and

20          ambiguous.

21          A     I see that.

22     BY MR. HERMAN:

23          Q     And it indicates that JPMorgan owned

24     43 percent of the shares in CNBM.  Does that refer

25     only to H shares or to all shares?
```

Confidential - Subject to Further Confidentiality Review

```
1      A      Isn't it 13 percent?  I believe it is here.

2      Q      It may be.  I may have misread it.

3      A      It says 13.58 percent.

4      Q      Is that H shares or all shares?

5      A      H shares.

6      Q      And it says Morgan Stanley is a substantial

7   shareholder, and if I haven't misread it, 15.75

8   percent?

9                 MR. VEJNOSKA:  Objection, foundation.

10     A      Are you saying to add these two numbers

11  together?

12  BY MR. HERMAN:

13     Q      Yes.

14     A      If we add them together, that's correct.

15     Q      Let me go back to JPMorganChase.  I want to

16  make sure that I'm reading the percentage of shares

17  correctly for H shares.  28.07 percent, do you see

18  that?

19     A      I see that.

20     Q      And you see also for JPMorganChase .01

21  share?

22     A      Yes, I see that.

23     Q      And you see also for JPMorganChase 14.63

24  shares sent?

25     A      I see that.
```

```
 1      Q      And if you add them together, they're

 2   approximately rounded off 43 percent of H shares,

 3   correct?

 4      A      Correct.  Yes.

 5      Q      Now, if we look at percentage in total

 6   shares capital JPMorganChase and we add up 13.58, .003

 7   and 7.08, we're looking at a little bit more than 20

 8   percent percentage in total shares of CNBM; is that

 9   correct?

10      A      Yes.

11      Q      And Morgan Stanley would be more than 7 and

12   a half percent of total shares of CNBM, correct?

13      A      Yes.

14      Q      Do you recall in 2009 making a statement

15   that -- strike that.

16              At page 77 under material litigation

17   and arbitration there was no listing of the gypsum

18   litigation in the United States, correct?

19      A      Correct.

20      Q      And is it true that in September two

21   thousand -- strike that.

22              Is it true that in January 2009 after

23   JPMorgan reduced its stake in CNBM H shares, that

24   Chairman Song of CNBM responded that JPMorgan is still

25   an active supporter of CNBM and the transactions of
```

1    CNBM stocks by JPMorgan were normal?

2              MR. VEJNOSKA:  Objection, foundation.

3       A    I don't remember I have said that.  I forgot

4    it.

5    BY MR. HERMAN:

6       Q    Do you recall that --

7       A    Because there are many questions that were

8    asked by people.  I don't remember.

9       Q    Going to show you Exhibit 331-1.

10             (Deposition Exhibit 331-1 marked.)

11   BY MR. HERMAN:

12      Q    And ask you to -- this is a June the 3rd of

13   2010.  It's a BNBM document and at the top it says

14   attendees.  Would you read who the attendees are?

15             MR. MOORE:  Mr. Herman, before we go

16        into this, could we go ahead and state what

17        we've agreed to do on the record just so we have

18        it out?

19             MR. HERMAN:  Sure.

20             MR. MOORE:  I'll do it and if I'm

21        incorrect, you correct me.  With respect to Song

22        Exhibit 331 on behalf of my client BNBM PLC we

23        have -- are going to exercise the right to claw

24        back the entire document under attorney-client

25        and work product except for a portion of page

1          that is Bates numbered 0059975 and it's

2          essentially Roman numeral I of that page only

3          with the attendees at the top.  The parties have

4          made a copy of just that portion of Exhibit 331,

5          which is what we're going to use in the

6          deposition.  We claw back the rest of the

7          document in the entirety.  In the meantime,

8          we've had a chance because it's fairly short to

9          review your translation and we do not have

10         any -- we do not have any objection to the

11         accuracy of your translation of that portion.

12         But the page you're going to use if we could

13         mark it as some other number other than 331.

14              MR. HERMAN:  We marked it as 331-1.

15              MR. MOORE:  That's acceptable to me.

16         Did I correctly state what we've done here?

17              MR. HERMAN:  Yes.

18              MR. VEJNOSKA:  CNBM reserves its rights

19         and objections to the translation.

20    BY MR. HERMAN:

21         Q    Do you see that the attendees for CNBM Group

22    was Jian Zhang?

23         A    I see that.

24         Q    Do you see that the attendee for BNBM was

25    Bing Wang?

```
 1      A      Yes.

 2      Q      Do you see that the attendee for Taishan

 3  Gypsum was Tongchun Jia?

 4      A      I see that.

 5      Q      Now, is it accurate that Mr. Knauf visited

 6  Chairman Song and hoped that CNBM Group could offer a

 7  helping hand to them in responding to the United

 8  States drywall event?

 9      A      It is correct to my recollection.

10      Q      Is it correct that Chairman Song agreed that

11  CNBM Group should organize the response to the

12  litigation but that the purposes of the response are,

13  one, for the images of Chinese product and Chinese

14  enterprises; two, for the friendship with Mr. Knauf of

15  more than 30 years, reluctant to see the Knauf Company

16  fighting alone; three, insisting on the position that

17  our products do not have any problems.  We should

18  consider the situations as we deal with the

19  litigation.  The company may ask the Knauf Company to

20  help recommend attorneys for us and delay the

21  effectiveness of the judgment.

22             Is that an accurate report of Chairman

23  Song's representations at the meeting?

24      A      I don't have a clear recollection on that,

25  especially the wording about that our friendship with
```

Confidential - Subject to Further Confidentiality Review

1    Knauf for over 30 years.  I do not have a clear

2    recollection.  These are not accurate.  But as a

3    shareholder, I encouraged Taishan to actively respond

4    to the litigation.  That I remember.

5         Q     Just one other matter before we recess

6    today.  Exhibit 55 has not been introduced into

7    evidence yet.  It is a interim report of China

8    National Building Material Company, Limited.

9                MR. HERMAN:  And let's go ahead and

10        distribute that.

11               (Deposition Exhibit 55 marked.)

12   BY MR. HERMAN:

13        Q     It's dated for the period ending six months

14   June 30th, 2009.  I just have a few questions

15   regarding this document.  Was Chang Zhangli secretary

16   of the board of CNBM as of June 30th, 2009?  Page 2.

17        A     Yes.

18        Q     And was he authorized to have this interim

19   report publicly published and posted?

20        A     Yes.

21        Q     And as a matter of course, interim reports

22   every six months were released to be published

23   publicly by CNBM; is that correct?

24        A     Yes.

25        Q     We are going --

Confidential - Subject to Further Confidentiality Review

```
 1     A    The interim report is to be released in the

 2  middle of the year every half a year and an annual

 3  report is to be released in the end of the year.

 4              MR. HERMAN:  We are going to offer the

 5         entire Exhibit 55 in English and Chinese.  When

 6         we come tomorrow, we may have some questions on

 7         what we distributed.  And the Chinese version is

 8         55-A.

 9              (Deposition Exhibit 55-A marked.)

10              MR. HERMAN:  And we thank again the

11         Orrick firm for its hospitality and its good

12         offices.

13              MR. VEJNOSKA:  And the delicious lunch.

14              MR. HERMAN:  And we thank Chairman Song

15         for appearing and his attention and we wish

16         everyone a very good evening.

17              MR. VEJNOSKA:  Thank you, Mr. Herman.

18              THE VIDEOGRAPHER:  Time now is 4:55 p.m.

19         Today's portion of our deposition consists of

20         six disks is now concluded.

21              (Deposition Recessed At 4:55 p.m.)

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                REPORTER'S CERTIFICATE

 2

 3        This transcript is valid only for a transcript

 4   accompanied by my original signature and original

 5   required seal on this page.

 6        I, Micheal A. Johnson, Certified Court Reporter

 7   (LA Certificate #29025) in and for the State of

 8   Louisiana, as the officer before whom this testimony

 9   was taken, do hereby certify that SONG ZHIPING, after

10   having been duly sworn by me upon authority of

11   R.S. 37:2554, did testify as herein before set forth

12   in the foregoing 113 pages; that this testimony was

13   reported by me in the stenotype reporting method, was

14   prepared and transcribed by me or under my personal

15   direction and supervision, and is a true and correct

16   transcript to the best of my ability and

17   understanding; that the transcript has been prepared

18   in compliance with transcript format guidelines

19   required by statute or by rules of the board, and that

20   I am informed about the complete arrangement,

21   financial or otherwise, with the person or entity

22   making arrangements for deposition services; that I

23   have acted in compliance with the prohibition on

24   contractual relationships, as defined by Louisiana

25   Code of Civil Procedure Article 1434
```

```
 1    and in rules and advisory opinions of the board;

 2    that I have no actual knowledge of any prohibited

 3    employment or contractual relationship, direct or

 4    indirect, between a court reporting firm and any party

 5    litigant in this matter nor is there any such

 6    relationship between myself and a party litigant in

 7    this matter.  I am not related to counsel or to the

 8    parties herein, nor am I otherwise interested in the

 9    outcome of this matter.

10

11            Signed this ___ day of _____, 2015.

12

13

14

15            _____

16            MICHEAL A. JOHNSON, RMR, CRR

17            Certified Court Reporter

18            LA Certified Court Reporter #29025

19

20

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                   ACKNOWLEDGMENT OF DEPONENT

 2

 3            I,_____, do hereby

 4     certify that I have read the foregoing pages and

 5     that the same is a correct transcription of the

 6     answers given by me to the questions therein

 7     propounded, except for the corrections or changes in

 8     form or substance, if any, noted in the attached

 9     Errata Sheet.

10

11            _____

12            SONG ZHIPING                   DATE

13

14     Subscribed and sworn to before me this

15     _____ day of _____, 20 _____.

16     My commission expires: _____

17

18     Notary Public

19

20

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

1          — — — — — —

2                    ERRATA

              — — — — — —

3

4    PAGE   LINE    CHANGE

5    _____  _____   _____

6    _____  _____   _____

7    _____  _____   _____

8    _____  _____   _____

9    _____  _____   _____

10   _____  _____   _____

11   _____  _____   _____

12   _____  _____   _____

13   _____  _____   _____

14   _____  _____   _____

15   _____  _____   _____

16   _____  _____   _____

17   _____  _____   _____

18   _____  _____   _____

19   _____  _____   _____

20   _____  _____   _____

21   _____  _____   _____

22   _____  _____   _____

23   _____  _____   _____

24   _____  _____   _____

25   _____  _____   _____

Confidential - Subject to Further Confidentiality Review

```
 1              UNITED STATES DISTRICT COURT

 2              EASTERN DISTRICT OF LOUISIANA

 3   *****************************************************

 4   IN RE:  CHINESE-MANUFACTURED  MDL NO. 2047

     DRYWALL PRODUCTS LIABILITY

 5   LITIGATION                  SECTION:  L

 6   THIS DOCUMENT APPLIES TO    JUDGE FALLON

     ALL CASES

 7                              MAG. JUDGE WILKINSON

 8   *****************************************************

 9

              CONFIDENTIAL - SUBJECT TO FURTHER

10                 CONFIDENTIALITY REVIEW

11              Tuesday, September 15, 2015

12                     — — —

13

14         Videotaped Deposition of SONG ZHIPING,

15   VOLUME 2, held at Orrick, Herrington & Sutcliffe, LLP,

16   15 Queen's Road Central, 43rd Floor, Hong Kong,

17   commencing at 9:10 a.m., on the above date, before

18   Micheal A. Johnson, Certified Court Reporter (#29025),

19   Registered Merit Reporter and Certified Realtime

20   Reporter.

21

22                     — — —

23

24         GOLKOW TECHNOLOGIES, INC.

         877.370.3377 ph | 917.591.5672 fax

25            deps@golkow.com
```

Confidential - Subject to Further Confidentiality Review

```
 1    A P P E A R A N C E S :
 2    COUNSEL FOR THE PLAINTIFF CLASS:
 3         HERMAN HERMAN & KATZ LLC
           BY:  RUSS M. HERMAN, ESQUIRE
 4              rherman@hhklawfirm.com
           820 O'Keefe Avenue
 5         New Orleans, Louisiana 70113
           (504) 581-4892
 6
 7         LEVIN FISHBEIN SEDRAN & BERMAN
           BY:  SANDRA L. DUGGAN, ESQUIRE
 8              sduggan@lfsblaw.com.
                ARNOLD LEVIN, ESQUIRE
 9              alevin@lfsblaw.com
           510 Walnut Street, Suite 500
10         Philadelphia, Pennsylvania 19106
           (215) 592-1500
11
12         IRPINO LAW FIRM
           BY:  PEARL A. ROBERTSON, ESQUIRE
13              probertson@irpinolaw.com
                ANTHONY D. IRPINO, ESQUIRE
14              airpino@irpinolaw.com
           2216 Magazine Street
15         New Orleans, Louisiana 70130
           (504) 525-1500
16
17    COUNSEL FOR TAISHAN GYPSUM COMPANY:
18         ALSTON & BIRD LLP
           BY:  CHRISTINA HULL EIKHOFF, ESQUIRE
19              christy.eikhoff@alston.com
           1201 West Peachtree Street
20         Atlanta, Georgia 30309-3424
           (404) 881-4496
21
22
23
24
25
```

Confidential - Subject to Further Confidentiality Review

```
 1   A P P E A R A N C E S:
 2   COUNSEL FOR BNBM DEFENDANTS:
 3        DENTONS US LLP
          BY:  C. MICHAEL MOORE, ESQUIRE
 4            mike.moore@dentons.com
          2000 McKinney Avenue, Suite 1900
 5        Dallas, Texas 75201-1858
          (214) 259-0902
 6
 7        DENTONS LLP
          BY:  TODD LIAO, ESQUIRE
 8            todd.liao@dentons.com
          5th Floor The Center 989 Changle Road
 9        Shanghai, China 200031
          +86 21 2315 6028
10
11   COUNSEL FOR CNBM DEFENDANTS:
12        ORRICK HERRINGTON & SUTCLIFFE LLP
          BY:  L. CHRISTOPHER VEJNOSKA, ESQUIRE
13            cvejnoska@orrick.com
              JASON M. WU, ESQUIRE
14            jmwu@orrick.com
          405 Howard Street
15        San Francisco, California 94105-2669
          (415) 773-5916
16
17        ORRICK HERRINGTON & SUTCLIFFE LLP.
          BY:  JAMES L. STENGEL, ESQUIRE
18            jstengel@orrick.com
          51 West 52nd Street
19        New York, New York 10019-6142
          (212) 506-3775
20
21
22
23
24
25
```

Confidential - Subject to Further Confidentiality Review

```
 1   A P P E A R A N C E S:
 2   COUNSEL FOR CNBM DEFENDANTS:
 3         ORRICK HERRINGTON & SUTCLIFFE LLP
           BY:  SHELLEY ZHANG, ESQUIRE.
 4              szhang@orrick.com
                YALI HU, ESQUIRE
 5              yhu@orrick.com
           5701 China World Tower
 6         No. 1 Jianguomenwai Avenue
           Beijing 100004
 7         People's Republic of China
           +86 10 8595 5668
 8
 9   COUNSEL FOR THE STATE OF LOUISIANA:
10         PERKINS COIE LLP
           BY:  DAVID L. BLACK, ESQUIRE
11              dblack@perkinscoie.com
           1900 Sixteenth Street, Suite 1400
12         Denver, Colorado 80202-5255
           (303) 291-2309
13
14         OFFICE OF THE ATTORNEY GENERAL STATE OF
           LOUISIANA
15         BY:  L. Christopher Styron
                styron@ag.state.la.us
16         1885 North Third Street
           Baton Rouge Louisiana 70802
17         (225) 326-6079
18
19   ALSO PRESENT:
20         TONI XU
21         SANDRA HERMAN
22         REGINA VALENTI
23         MELISSA BARDWELL, VIDEOGRAPHER.
24         SUNNY WANG, MANDARIN INTERPRETER
25                        — — —
```

Confidential - Subject to Further Confidentiality Review

```
 1                      INDEX
                     SONG ZHIPING
 2                September 15, 2015

 3

 4        PROCEEDINGS                    122

 5

 6    EXAMINATION OF SONG ZHIPING:

 7            BY MR. HERMAN           122

 8            BY MR. BLACK           214

 9

10        REPORTER'S CERTIFICATE      226

11

12

          INFORMATION REQUESTED BY COUNSEL FOR CNBM

13

                      Page 128, Line 9

14                    Page 131, Line 12

                      Page 144, Line 14

15                    Page 148, Line 24

                      Page 156, Line 18

16                    Page 170, Line 7

                      Page 222, Line 13

17

18

          INFORMATION REQUESTED BY COUNSEL FOR PSC

19

                      Page 135, Line 1

20

21

          EXCERPT REQUESTED BY COUNSEL FOR PSC

22

                      Pages 189-193

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                    DEPOSITION EXHIBITS
                         SONG ZHIPING
 2                    September 15, 2015
 3
 4     NUMBER                 DESCRIPTION              MARKED
 5     Exhibit LA-1    State of Louisiana Second        216
                       Amended and Restated Petition
 6
       Exhibit 69      Translation of                   184
 7                     CNBMGRP00006228
                       Message from Wu, Wenkun to
 8                     gzp@cnbm.com.cn
 9     Exhibit 334     China National Building           172
                       Material Company Limited 2015
10                     Interim Report
11     Exhibit 334-A   China National Building           172
                       Material Company Limited 2009
12                     Interim Report (Chinese
                       Version)
13
       Exhibit 336     Translation of                   186
14                     CNBMGRP00002319
                       6/27/13 Message From Weibo
15                     Wang to Jing Wang
16     Exhibit 345     Table of Basic Information on     142
                       the Overseas Agencies Owned
17                     by the Enterprise and on the
                       Overseas Subsidiary
18                     Enterprises at the Third Tier
                       and Below
19
       Exhibit 346     CNBM Guarantees to BNBM - FRE     141
20                     1006 Summary Chart
21     Exhibit 388     Partial Translation of           196
                       CNBMGRP00330873-330934
22                     China National Building
                       Material Group Corporation
23                     Comprehensive Risk Management
                       Report of the Year 2010
24
25
```

Confidential - Subject to Further Confidentiality Review

```
 1                  DEPOSITION EXHIBITS
                       SONG ZHIPING
 2                  September 15, 2015

 3

 4    NUMBER               DESCRIPTION            MARKED

 5    Exhibit 392    Partial Translation of          209

                     CNBMCO00055606-55611

 6                   Present the People, the

                     Object, and the Mindset,

 7                   Integrate Strictness with

                     Reliability, and Change the

 8                   Work Style

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

1                    PREVIOUSLY MARKED EXHIBITS

2

   NUMBER               DESCRIPTION              REFERENCED

3

   Exhibit 11        ...........................      146

4

   Exhibit 11-A      ...........................      146

5

   Exhibit 12        ...........................      152

6

   Exhibit 13-A      ...........................      157

7

   Exhibit 13        ...........................      157

8

   Exhibit 16        ...........................      138

9

   Exhibit 90        ...........................      136

10

   Exhibit 215       ...........................      175

11

   Exhibit 263       ...........................      193

12

   Exhibit 264       ...........................      189

13

14

15

16

17

18

19

20

21

22

23

24

25

Confidential - Subject to Further Confidentiality Review

```
 1                      PROCEEDINGS

 2              THE VIDEOGRAPHER:  This begins disk 1 of

 3          Volume 2 of the deposition of Song Zhiping.

 4          Date today is September 15, 2015.  Time is

 5          approximately 9:10 a.m.  We are back on the

 6          record.

 7                      SONG ZHIPING

 8          having been previously duly sworn,

 9              testified as follows:

10                      EXAMINATION

11  BY MR. HERMAN:

12      Q     Good morning, Chairman Song.  Is it correct

13  that CNBM has guaranteed certain debts of BNBM?

14      A     I'm not sure.

15              THE REPORTER:  Would you remind the

16          witness he's still under oath, please.

17              (Witness reminded of oath.)

18  BY MR. HERMAN:

19      Q     Is it true that before BNBM guaranteed debts

20  of Taishan Gypsum, that the matter was reported in

21  advance to CNBM?

22              MR. VEJNOSKA:  Objection, foundation,

23          vague and ambiguous.

24      A     Please repeat.  I did not hear you clearly.

25              THE INTERPRETER:  The interpreter will
```

1          repeat for Chairman Song.

2     A     I'm not sure.

3  BY MR. HERMAN:

4     Q     Is it true that to your knowledge Wang Bing

5  was on both the boards of BNBM and Taishan when it

6  guaranteed the debts; that is, when BNBM guaranteed

7  the debts of Taishan?

8               MR. VEJNOSKA:  Objection --

9               MR. MOORE:  Objection, form.

10    A     I'm not sure about the matter of the

11 guarantee.  I don't know the matter of the guarantee,

12 but Wang Bing indeed is in both the board of BNBM and

13 Taishan.

14 BY MR. HERMAN:

15    Q     Are you aware that BNBM discussed the gypsum

16 litigation in its board meetings?

17               MR. VEJNOSKA:  Objection, foundation.

18    A     In the board of BNBM?

19 BY MR. HERMAN:

20    Q     Yes.

21    A     I'm not sure whether they had discussed or

22 not.

23    Q     Isn't it true that on the occasion that BNBM

24 had an investment plan for Taishan, BNBM communicated

25 that investment plan with CNBM first?

```
 1                  MR. VEJNOSKA:  Objection, foundation,

 2        vague and ambiguous.

 3     A     If it is within the scope of CNBM's

 4  shareholders' rights, it would be reported to CNBM.

 5  If it is not within the scope of the shareholders'

 6  rights, they can make their own decisions.

 7  BY MR. HERMAN:

 8     Q     Is BNBM a publicly listed company?

 9     A     It is a publicly listed company.

10     Q     Was BNBM a public listed company in 2006?

11     A     Yes.

12     Q     And has it remained a publicly listed

13  company since 2006?

14     A     Yes.

15     Q     Is CNBM a public listed company?

16     A     Yes.

17     Q     Has it been a publicly listed company since

18  2006?

19     A     March 2006.

20     Q     And it has continued to be a publicly listed

21  company since then; is that correct?

22     A     Yes.

23     Q     Are you familiar with language in annual

24  reports of publicly listed companies BNBM and CNBM

25  which characterize CNBM Group as the ultimate
```

```
 1    controlling shareholder?

 2              MR. VEJNOSKA:  Objection, compound,

 3         foundation, vague and ambiguous.

 4    A    I am more familiar with the language of

 5    CNBM.  However, for BNBM since I have left it for many

 6    years, therefore, currently I generally do not read

 7    its annual reports.

 8    BY MR. HERMAN:

 9    Q    Are you familiar with the term "ultimate

10    controller"?

11    A    I am familiar.

12    Q    Is CNBMG an ultimate controller of CNBM?

13              MR. VEJNOSKA:  Objection, calls for

14         legal conclusion, calls for speculation, vague

15         and ambiguous.

16    A    The word "ultimate controller" is a term

17    used by China Security Regulatory Commission.  I

18    believe CNBMG is a shareholder of CNBM.

19    BY MR. HERMAN:

20    Q    Does CNBMG have a controlling interest as a

21    shareholder in CNBM?

22              MR. VEJNOSKA:  Same objections.

23    A    CNBMG only exercises its shareholders'

24    rights over CNBM.  It does not go over any of its

25    shareholders' rights.
```

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. HERMAN:

 2       Q      What are the shareholder rights of CNBMG?

 3       A      The shareholders' rights are stipulated

 4   according to the company law.

 5       Q      And what are they?

 6              MR. VEJNOSKA:  Objection, calls for a

 7         legal opinion.

 8       A      Which is that it decides on the company's

 9   increasing of capital.

10   BY MR. HERMAN:

11       Q      What other --

12              THE INTERPRETER:  May the interpreter

13         have an answer to --

14              MR. VEJNOSKA:  We have his answer.  Just

15         trying to keep the room from shorting out.

16              (Discussion Off The Record.)

17              MR. HERMAN:  Can we go on?

18              THE INTERPRETER:  Yes, the interpreter

19         will reinterpret the answer of the witness.

20       A      Which is that it decides on the company's

21   increasing of capital, to dissolve of the company, the

22   company's sending of directors, and the company's

23   directors and other matters stipulated according to

24   the company law which I do not have a clear

25   recollection.
```

1  BY MR. HERMAN:

2     Q     As chairman of the board of directors of

3  CNBM, is it true that CNBM Investment is wholly owned

4  by CNBM?

5              MR. VEJNOSKA:  Objection, asked and

6        answered.

7     A     100 percent.  CNBM Company, Limited owns 100

8  percent of CNBM Investment Company.

9  BY MR. HERMAN:

10    Q     Would you explain for us the designations in

11 Chinese use in corporate business the terms "parent,"

12 "son," "daughter" and "grandson" and "granddaughter"?

13             MR. VEJNOSKA:  Objection, compound,

14       calls for legal opinion.

15    A     Yes, I can explain that.  The terms "parent

16 company," "son company" and "grandson company" are the

17 commonly used language by Chinese people.  However, it

18 does not correspond with the standard definitions

19 stipulated in the company law.  Therefore, when a

20 company is established, those terms should not be

21 used.

22 BY MR. HERMAN:

23    Q     Isn't the term "parent" defined in every

24 annual report made public by CNBM?

25             MR. VEJNOSKA:  Objection, compound.

Confidential - Subject to Further Confidentiality Review

1      A      I think so, but I have not reviewed it, but

2   I think so.

3   BY MR. HERMAN:

4      Q      Is CNBM the son of CNBMG?

5            MR. VEJNOSKA:  Objection, vague and

6         ambiguous, calls for a legal conclusion.

7      A      CNBMG holds shares of CNBM.  CNBMG is CNBM's

8   shareholder.  It is -- it's one of the shareholders.

9            MR. VEJNOSKA:  Please mark that

10        question.

11   BY MR. HERMAN:

12      Q      Is it also the parent of CNBM?

13            MR. VEJNOSKA:  Same objections.

14      A      Sometimes it is so described, but it is a

15   shareholder.

16   BY MR. HERMAN:

17      Q      And is CNBM a parent of CNBM Investment?

18            MR. VEJNOSKA:  Same objections.

19      A      CNBM is the shareholder of CNBM Investment.

20   BY MR. HERMAN:

21      Q      Is it also referred to as the parent of CNBM

22   Investment?

23            MR. VEJNOSKA:  Objection, vague and

24        ambiguous.

25      A      This is a commonly used language in China.

1   BY MR. HERMAN:

2       Q     As chairman of the board of directors of

3   CNBM, did you ever instruct or direct someone to

4   instruct CNBMI not to do business in the United States

5   of America during the contempt period July 17, 2014,

6   through March 25th, 2015?

7               MR. VEJNOSKA:  Objection, vague and

8           ambiguous, calls for legal conclusion.

9       A     No.

10  BY MR. HERMAN:

11      Q     Let's look again at Exhibit 332 which was

12  referred to yesterday.  Why did CNBM Group deem it

13  necessary to pass a resolution regarding Taishan's

14  report on what Taishan Gypsum was going to do in the

15  United States drywall case?

16              MR. VEJNOSKA:  Objection, asked and

17          answered, argumentative.

18      A     Because we believe that Taishan's absent of

19  the court is a substantial matter.

20  BY MR. HERMAN:

21      Q     Why did Taishan submit a report to CNBM

22  Group?

23              MS. EIKHOFF:  Objection, foundation.

24              MR. VEJNOSKA:  Objection, calls for

25          speculation.

Confidential - Subject to Further Confidentiality Review

1      A      Taishan did not submit such a report, but

2    made a report on site.

3    BY MR. HERMAN:

4      Q      Was Taishan invited to give a report to CNBM

5    Group?

6      A      I do not have a clear recollection on

7    whether they had or not of such a report, but in that

8    meeting it was Jia Tongchun who gave the report.

9      Q      If CNBM Group did not respect Taishan

10    Gypsum's decision, what alternatives did CNBM Group

11    have?

12              MR. VEJNOSKA:  Objection, calls for

13        speculation.

14      A      Each director had made his own voluntary

15    decision and a decision of the board was made through

16    everyone's voting.

17    BY MR. HERMAN:

18      Q      Are you familiar with any document in which

19    a Taishan Gypsum employee or executive indicated that

20    highly placed officials in CNBMG had to make the

21    decision as to what Taishan did regarding the US

22    gypsum lawsuit?

23              MR. VEJNOSKA:  Objection, foundation.

24      A      I'm not familiar with that.  However, our

25    decision is referring to that after they had made the

Confidential - Subject to Further Confidentiality Review

1    decision, each one of CNBMG's directors were to

2    express his position on that.

3    BY MR. HERMAN:

4        Q    Did CNBM Group as of July 11, 2014, have the

5    ability to reject Taishan's decision?

6        A    Taishan is an independent company and its

7    decision was made independently.  CNBM is Taishan's

8    biggest shareholder.  It only expresses its opinion as

9    a shareholder.  But whether or not Taishan would

10   listen to that opinion, the decision is theirs to

11   make.

12           MR. VEJNOSKA:  Please mark that.

13       A    I would also like to say that the resolution

14   of the board serves the purpose of expressing the

15   positions of each one of its directors on this

16   substantial matter, so that every directors' opinion

17   is recorded in the record so that serve the function

18   of future inquiry of such an opinion of the board.

19   BY MR. HERMAN:

20       Q    Are you familiar with the Enterprise Income

21   Tax Law of the People's Republic of China referred to

22   as capital E, capital I, capital T, capital L?

23           THE INTERPRETER:  This is the

24       interpreter speaking.  May the interpreter

25       inquire the definition of capital in your

Confidential - Subject to Further Confidentiality Review

1       question, Counsel?

2               MR. HERMAN:  I'll ask the question

3       again.

4    BY MR. HERMAN:

5       Q    Are you familiar with the Enterprise Income

6    Tax Law of the People's Republic of China referred to

7    as capital E, capital I, capital T, capital L?  The

8    word "capital" means capital letters.

9       A    I'm not quite familiar with it.

10      Q    Are you familiar with the Regulation on the

11   Implementation of the Enterprise Income Tax Law of the

12   People's Republic of China referred to as REITL?

13      A    I am not familiar.

14      Q    Isn't it true that in CNBM's annual publicly

15   published report tax information of taxes or deferral

16   of taxes is made part of those reports?

17              MR. VEJNOSKA:  Objection, compound.

18      A    I am not sure about these matters.

19   BY MR. HERMAN:

20      Q    Are you familiar with the law of the

21   People's Republic of China on the Administration of

22   Tax Collection referred to as capital A -- capital L,

23   capital A, capital T, capital C?

24      A    I'm not familiar.

25      Q    Are you familiar with the Detailed Rules on

Confidential - Subject to Further Confidentiality Review

1    Implementation of the Law of the People's Republic of

2    China on the Administration of Tax Collection referred

3    to as DRILATC?

4        A     I am not familiar.

5        Q     Do you yourself follow the tax rules and

6    liabilities of yourself personally as ordained by the

7    government of China?

8             MR. VEJNOSKA:  I'm going to object to

9        that question as calling for personal

10       confidential information.  It has no possible

11       relationship to this litigation.

12            MR. HERMAN:  Are you directing him not

13       to answer?

14            MR. VEJNOSKA:  I am.

15            MR. HERMAN:  Then I'm going to indicate

16       under 90, Exhibit 90 already in evidence, the

17       tax laws of China have defined under Chapter 2,

18       Reporting of Affiliation, the term "affiliation"

19       as it applies directly to this case.  I am not

20       asking this witness whether this -- any

21       information about his personal taxes.  I'm only

22       asking him if he follows the tax rules as laid

23       down by the government.

24            MR. VEJNOSKA:  By "follows," Mr. Herman,

25       perhaps this is where we're having a problem.

Confidential - Subject to Further Confidentiality Review

1    Do you mean does he track them?  Does he -- does

2    he --

3              MR. HERMAN:  No.

4              MR. VEJNOSKA:  -- observe --

5              MR. HERMAN:  Comply with them.

6              MR. VEJNOSKA:  -- personally?

7              MR. HERMAN:  Yes.

8              MR. VEJNOSKA:  You are asking for

9    personal information.

10             MR. HERMAN:  No, I'm not.  I'm only

11   asking if he personally complies with tax rules

12   ordained by the government of China.

13             MR. VEJNOSKA:  I don't know how you

14   possibly say that a question in which you use

15   the word --

16             MR. HERMAN:  If you direct him not to

17   answer, we'll take it up with the court.

18             MR. VEJNOSKA:  I would appreciate the

19   chance to finish my sentence.

20             MR. HERMAN:  Sure.  Go right ahead.

21             MR. VEJNOSKA:  I don't see how you

22   possibly say that a question that you say

23   includes directed to him the words "do you

24   personally" is not a question about his personal

25   conduct.  That is the basis for my objection.

Confidential - Subject to Further Confidentiality Review

```
 1              MR. HERMAN:  Please mark my question and
 2         the objections of counsel and my rejoinder and
 3         the further explanation of counsel and we'll
 4         need that printed out for us this evening.
 5    BY MR. HERMAN:
 6      Q    Does CNBM follow the tax laws ordained by
 7    the Chinese government with the governments of
 8    relevant countries and regions on the avoidance of
 9    double taxation?
10      A    I am not sure about the taxation laws.  In
11    Chinese companies matters such as this is usually
12    handled by the financial department.
13      Q    Who was in charge of the financial
14    department of CNBMG in the year 2014?
15              THE INTERPRETER:  The interpreter did
16         not finish her interpretation and interpreter
17         will continue.
18              MR. HERMAN:  I apologize.  Why don't we
19         finish the answer.
20      A    As the chairman of the board of the company
21    I direct everyone to abide the laws, but since you're
22    asking me details, I cannot answer that question.
23              THE INTERPRETER:  The interpreter now
24         will interpret counsel's question.
25      A    We have a general CPA by the name of Wu Ji
```

Confidential - Subject to Further Confidentiality Review

1    Wei who is in charge.

2    BY MR. HERMAN:

3        Q      Who was in charge of the financial

4    department of CNBM in the year 2014?

5        A      CNBM, the company, limited company?

6        Q      Yes.

7        A      Chen Xue An.

8        Q      Who was in charge of the finance department

9    of BNBMG in the year 2014?

10       A      Li Yuan.

11              MR. HERMAN:  I'm going to hand the

12          witness in English and Chinese Exhibit 90

13          previously introduced in this deposition, Notice

14          of the State Administration of Taxation on

15          Issuing the Measures for Implementation of

16          Special Tax Adjustments (for Trial

17          Implementation), Document Number 2 [2009] of the

18          State Administration of Taxation issued

19          January 8, 2009.

20   BY MR. HERMAN:

21       Q      And direct the witness's attention to the

22   Chinese at CNBM 08857.  It's marked in yellow on that

23   page.  And I would like the witness first to read it

24   in Chinese and continuing on page 8858.

25              MR. VEJNOSKA:  I'm going to object to

Confidential - Subject to Further Confidentiality Review

```
 1            the providence of this document.  It's from

 2            apparently, according to the header, the

 3            self-proclaimed China's leader and online legal

 4            research.  It does not appear to be from an

 5            official document.  And I don't know anything

 6            about who translated it or how.

 7                  When you're finished reading that to

 8            yourself, just indicate to Madam Interpreter and

 9            Mr. Herman will continue with his questions.

10       A    I don't understand what it is written here.

11   BY MR. HERMAN:

12       Q    Do you agree with the definition of the term

13   "affiliation" as one party directly or indirectly

14   holding at least 25 percent of the total shares of the

15   other party or 25 percent of the shares of both

16   parties are indirectly or directly held by the same

17   third party?

18                  MR. VEJNOSKA:  Objection, asked and

19            answered, based on his last answer calling for

20            speculation, calling for a legal expert or other

21            tax opinion which is he's not qualified to give.

22       A    I have not researched on this matter;

23   therefore, I'm not sure.

24   BY MR. HERMAN:

25       Q    Are you familiar with Judge Fallon's order
```

1    of July 17, 2014, in which he uses the word

2    "affiliate"?

3        A    They have reported the matter to me

4    regarding the use of the word "affiliate."

5        Q    I am going to show you Exhibit 16 in English

6    and Chinese as a -- and refer you to a portion of the

7    exhibit at page 970.

8        A    I don't see page 970.

9            MR. VEJNOSKA:  Neither do I, Mr. Herman.

10   BY MR. HERMAN:

11       Q    Refer the witness in Chinese to page 9 of

12   119, article 3.  Page 2 of the package.

13       A    Yes.

14       Q    Would you please read the first two

15   sentences of 3 in Chinese to the witness.

16       A    Do I need to read it out loud?

17            THE INTERPRETER:  The interpreter will

18        read it to the witness.

19            The interpreter has finished her reading

20        to the witness.

21   BY MR. HERMAN:

22       Q    Do you agree, Chairman Song, that the

23   controlling shareholder of China National Building

24   Material Company, Limited held 52.40 percent of shares

25   in BNBM as of March 17, 2009?

```
1     A     This is referring to the year 2009.  It
2  should be that in 2009, not in 2005 that CNBM owns the
3  company's 52.40 percent of the shares.
4     Q     Would you look at the fourth section.
5           MR. HERMAN:  Would the interpreter read
6        the first sentence of item 4 to Chairman Song.
7           THE INTERPRETER:  This is the
8        interpreter speaking.  The entire paragraph in
9        Chinese consists of one sentence.  Would counsel
10       like the interpreter to read according to the
11       English version from "actual controller" to
12       RMB3.7238bn?
13          MR. HERMAN:  Yes.
14          THE INTERPRETER:  The interpreter would
15       like to read it again.
16          The interpreter has finished her reading
17       to the witness.
18 BY MR. HERMAN:
19    Q     Do you agree that China National Building
20 Materials Group Corporation is the actual controller
21 of BNBM PLC as of March 17th, 2009?
22          MR. VEJNOSKA:  Objection, calls for
23       legal or other conclusion, vague and ambiguous,
24       calls for speculation.  And based on Madam
25       Interpreter's comments on the differences
```

Confidential - Subject to Further Confidentiality Review

1          between the English and the Chinese versions, we

2          reserve our rights regarding the translation.

3     A     I still have to answer the question, right?

4          MR. VEJNOSKA:  Yes, you should answer

5      the question.

6     A     I have already answered the question before.

7  The term "actual controller" is one of the terms used

8  by China Security Regulatory Commission.  However,

9  CNBMG is the shareholder of CNBM and at the same time

10  it is also the shareholder of CNBM Import & Export

11  Company as well as a shareholder of CNBM Academy.

12  BY MR. HERMAN:

13     Q     Chairman Song, are you aware that CNBM

14  Company, Limited guaranteed debts of BNBM PLC five --

15  six times in the year 2005?

16          MR. VEJNOSKA:  Objection, foundation.

17     A     I remember the guarantee, but not as for how

18  many times of the guarantee.

19  BY MR. HERMAN:

20     Q     Do you recall that CNBM Company, Limited

21  guaranteed debts of BNBM in the year 2006?

22     A     I don't have a clear recollection on that.

23     Q     Do you have a clear recollection that in the

24  year 2007 on three different occasions CNBM Company,

25  Limited guaranteed the debts of BNBM PLC?

Confidential - Subject to Further Confidentiality Review

1              MR. VEJNOSKA:  Objection, foundation.

2     A     I don't have a clear recollection, because

3  this is a matter handled among the financial staff.

4              MR. HERMAN:  We're going to offer at

5         this time Song Exhibit 346 and provide not only

6         Federal Rule of Evidence 1006 summary chart of

7         guarantees of BNBM PLC by CNBM Company, Limited

8         for the years 2005, 2006, 2007, and the backup

9         to counsel for CNBM, three copies, so that they

10         may have the opportunity to review same.  And we

11         will offer these in the deposition and counsel's

12         objections are reserved.

13              MR. VEJNOSKA:  Thank you, Mr. Herman.

14              MR. HERMAN:  You're welcome.

15              (Deposition Exhibit 346 marked.)

16              MR. HERMAN:  At this time we will hand

17         opposing counsel -- withdraw that.

18              Note for the record that the previously

19         identified exhibit has been furnished counsel

20         for all other parties.

21              At this time -- sorry.  At this time we

22         are going to hand to counsel for CNBM and

23         Chairman Song copies of Exhibit 345 in both

24         English, machine translation and Chinese as

25         produced by CNBM Group No. 28384.

Confidential - Subject to Further Confidentiality Review

```
 1              (Deposition Exhibit 345 marked.)

 2              MR. HERMAN:  Also distributed to other

 3        counsel.

 4   BY MR. HERMAN:

 5      Q    I would like to refer the witness to item 3,

 6   CNBM USA Corporation.  Chairman Song, can you confirm

 7   in accord with this chart produced by CNBM Group that

 8   CNBM International (USA) Corporation was a third-tier

 9   overseas subsidiary enterprise?

10      A    I don't know which company it is for.  It is

11   for the import and export company or the engineering

12   company?  What it is written is CNBM, but I'm not sure

13   which company exactly it is.

14      Q    Are you aware that it is a CNBM company?

15              MR. VEJNOSKA:  Objection, vague and

16        ambiguous.

17      A    Because these companies are either

18   third-tier or fourth-tier company, I'm not sure what

19   company had established these companies.

20   BY MR. HERMAN:

21      Q    Is it a third-tier company of CNBM Group?

22              MR. VEJNOSKA:  Objection, asked and

23        answered, vague and ambiguous.

24      A    I'm not sure because it also said below the

25   third tier, so I'm not sure whether it is the third
```

Confidential - Subject to Further Confidentiality Review

1   tier or the fourth tier.

2   BY MR. HERMAN:

3       Q      Would you look at item No. 8, UNITED SUNTECH

4   CRAFT INC.

5       A      Item No. 8.  It is in English.  Please

6   translate that into Chinese.

7                    THE INTERPRETER:  This is the

8            interpreter speaking.  Since the Chinese

9            translation only states its English name, the

10           interpreter will need the exact translation of

11           the English name of the company in Chinese.

12                   MR. HERMAN:  It is listed under 8 on the

13           CNBM Group-provided document in Chinese.

14      A      The company name is in English.  I don't

15   know what is that.

16  BY MR. HERMAN:

17      Q      Do you personally understand that this chart

18   produced by CNBM Group lists overseas subsidiary

19   enterprises at the third tier and below of CNBM Group?

20                   MR. VEJNOSKA:  For clarity of the

21           record, we're referring to the Chinese version.

22           We reserve our objections to the English

23           translation.

24      A      The terms "third tier" and "below third

25   tier" are also commonly used in China.  They refer to

Confidential - Subject to Further Confidentiality Review

1   that an invested company invested yet in another

2   company and the other invested company again invested

3   in another company.  So the word "tier" means the

4   investment pattern of the above.  It does not mean

5   grade.

6   BY MR. HERMAN:

7       Q    What does the word "grade" mean to you,

8   Chairman Song?

9            MR. VEJNOSKA:  Objection, vague and

10          ambiguous.

11      A    I did not say that.  It is what it is

12  written on it.  I was saying that it is not to be

13  understood as the word "grade."

14           MR. VEJNOSKA:  Would you mark that,

15          please.

16  BY MR. HERMAN:

17      Q    What is the word that it should be

18  understood as?

19           MR. VEJNOSKA:  Objection, vague and

20          ambiguous.

21      A    It is to be understood as the word "layer,"

22  which is referred to investment in layers.

23           MR. HERMAN:  10:30, we'll break for 15

24          minutes.

25           MR. VEJNOSKA:  Thank you, Mr. Herman.

Confidential - Subject to Further Confidentiality Review

```
 1              THE VIDEOGRAPHER:  Time now is

 2        10:31 a.m.  We are off the record.

 3              (Recess Taken From 10:31 a.m. To

 4              10:51 a.m.)

 5              THE VIDEOGRAPHER:  This begins disk 2 of

 6        today's deposition.  Time now is 10:51 a.m.  We

 7        are back on the record.

 8              MR. HERMAN:  In connection with this

 9        deposition, I have produced in the Deposition

10        Exhibit 345, CNBM Group 00028384, the English

11        translation, the machine translation and the

12        original Chinese and it was produced.

13              Counsel, I just introduced this in the

14        deposition.  I don't think you've objected yet.

15              MR. VEJNOSKA:  I was waiting for her

16        translation.  Thank you.

17              As I stated on the record yesterday, we

18        reserve our rights and all of our objections to

19        all documents offered in this and other

20        depositions.  In particular, I just want to be

21        clear given the description of the document that

22        the translation is one that was not provided by

23        CNBM or its counsel, and so we reserve our

24        rights to object to that as well.

25              MR. MOORE:  Same reservations for BNBM
```

1        companies as well.  Thank you.

2              MR. HERMAN:  I'm going to provide

3        counsel and the -- I'm going to provide counsel

4        for CNBM Exhibit 11, selections from the CNBM

5        annual report of 2012 and Exhibit 11-A, the

6        Chinese version.

7              We have already -- you need another

8        copy, Counsel?

9              MR. STENGEL:  No, we're fine.

10             MR. HERMAN:  The document has already

11       been introduced.

12  BY MR. HERMAN:

13       Q    I ask the witness to turn to page 3.  Is it

14  correct that as of the year 2012 CNBM became the

15  largest gypsum board producer in the world?

16       A    The CNBM invested BNBM had become the

17  largest gypsum board producer globally.

18       Q    Would the witness turn to page 4, please.

19  In the year 2012 were you chairman of the strategic

20  steering committee?

21       A    Yes.

22       Q    Were you also on the three-member nomination

23  committee?

24       A    Yes.

25       Q    And were you also on the three-member

Confidential - Subject to Further Confidentiality Review

1    remuneration and performance appraisal committee?

2        A     No.  Yes, I am in the remuneration and

3    appraisal performance committee.

4        Q     What does the strategic steering committee

5    do?

6        A     It creates the development direction of the

7    company as well as making strategic decisions.

8        Q     Would you give me an example of strategic

9    decisions made with regard to the Chinese gypsum

10   litigation in the United States.

11             MR. VEJNOSKA:  Objection, foundation,

12        argumentative.

13       A     The strategic steering committee did not

14   discuss the matter.

15   BY MR. HERMAN:

16       Q     Would you turn, please, to page 13.  Would

17   you review the shareholding structure of the group at

18   page 13.  And so there is no confusion and I don't

19   mislead anyone, "group" here, as I understand it,

20   means CNBM and not CNBM Group.  Is that correct?

21       A     Correct.

22       Q     The CNBM Group is described as parent on

23   this structure; is that correct?

24       A     The description is made in accordance with

25   the requirements of China's Security Regulatory

Confidential - Subject to Further Confidentiality Review

1    Commission.

2        Q     The word "company" on this chart refers to

3    CNBM Company PLC; is that correct?

4        A     Which company you're referring to?

5        Q     The word "company" with a direct line from

6    parent to company.

7        A     This company, this company it says -- it

8    refers to CNBM.

9        Q     The circle that refers to BNBM (lightweight

10   building materials), does that refer to BNBM Company,

11   Limited?

12       A     Yes.

13       Q     Does BNBM Company, Limited, either directly

14   or through subsidiaries, do business in the United

15   States of America?

16                 MR. MOORE:  Objection, form.

17                 MR. VEJNOSKA:  Calls for legal

18       conclusion.

19       A     I know that Taishan Gypsum, a shareholding

20   company of BNBM, had exported products to the United

21   States.  But whether the business was conducted in the

22   United States or the purchase was made in China and

23   sold in China, I'm not sure about that.

24                 MR. VEJNOSKA:  Please mark that.

25   BY MR. HERMAN:

Confidential - Subject to Further Confidentiality Review

```
 1       Q     Does China Fiberglass (glass fiber) do

 2   business in the United States of America through Jushi

 3   Group?

 4              MR. VEJNOSKA:  Objection, vague and

 5         ambiguous, calls for legal conclusion.

 6       A     I'm aware of that Jushi Group exports its

 7   glass fiber to the United States through its agency,

 8   but whether or not it does business on its own in the

 9   United States I do not know.

10   BY MR. HERMAN:

11       Q     What agency does Chairman Song refer to?

12       A     It means distribution -- distributor.  The

13   sales agency in the middle who purchased the products

14   from Jushi and sold it in the United States.

15       Q     Do you know the name of the distributor?

16              MR. VEJNOSKA:  Objection, vague and

17         ambiguous.

18       A     I don't have a clear recollection.

19   BY MR. HERMAN:

20       Q     Does OKorder advertise products of China

21   Fiberglass or Jushi for sale in the United States of

22   America?

23              MR. VEJNOSKA:  Objection, vague and

24         ambiguous.

25       A     I'm not sure.
```

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. HERMAN:

 2        Q     Does Alibaba advertise products of China

 3   Fiberglass or Jushi Group for sale in America?

 4               MR. VEJNOSKA:  Same objection.

 5        A     I'm not sure.

 6   BY MR. HERMAN:

 7        Q     Does China Triumph Engineering do business

 8   in the United States of America?

 9               MR. VEJNOSKA:  Objection, vague and

10          ambiguous, calls for legal conclusion.

11               THE INTERPRETER:  The interpreter would

12          like to clarify with deponent.

13        A     China Triumph Engineering Company does have

14   business in America.

15   BY MR. HERMAN:

16        Q     Does CNBM Investment do business in the

17   United States of America?

18               MR. VEJNOSKA:  Vague and ambiguous,

19          calls for legal conclusion.

20        A     I'm not sure.

21   BY MR. HERMAN:

22        Q     Turn to page 46.

23               MR. VEJNOSKA:  Is it 46, Mr. Herman,

24          because none of our copies have that?

25               MR. HERMAN:  I may have written it down
```

1        wrong.

2        A     I don't have 46.  Do you have 46?  I have

3    47.

4                 MR. VEJNOSKA:  I have no doubt

5          Mr. Herman will find it.

6    BY MR. HERMAN:

7        Q     I withdraw that question.

8                 Go to page 76.

9                 MR. VEJNOSKA:  If we tell you that none

10         of us has that page, can we move on, and if we

11         keep doing that throughout the deposition?

12   BY MR. HERMAN:

13       Q     Page 76.  Who made the decision not to list

14   the gypsum litigation as material litigation at

15   page 76?

16                 MR. VEJNOSKA:  Objection, foundation,

17         argumentative, calls for legal conclusion.

18       A     This was written by the attorney.

19   BY MR. HERMAN:

20       Q     Please turn to page 125.

21       A     125.

22       Q     Do you agree with the definition of "related

23   parties"?

24                 THE INTERPRETER:  This is the

25         interpreter speaking.  Would counsel like the

Confidential - Subject to Further Confidentiality Review

1          interpreter to read from the Chinese version --

2                    MR. HERMAN:  I would like to --

3                    THE INTERPRETER:  -- for the translation

4          of "related parties" because the word "related"

5          can be translated into many different words.

6                    MR. HERMAN:  Yes.

7                    MR. VEJNOSKA:  Objection, calls for

8          legal conclusion or other expert opinion.

9      A     This is an accounting language.  I'm not

10   quite sure about it.

11   BY MR. HERMAN:

12     Q     This language was authorized by the board of

13   directors of CNBM Company, Limited to be published

14   publicly in both English and Chinese; is that correct?

15     A     Yes.

16     Q     And it was published publicly in English

17   because CNBM has English-speaking shareholders of

18   H shares; isn't that correct?

19                    MR. VEJNOSKA:  Objection to the

20          foundation.

21     A     Correct.

22                    MR. HERMAN:  Exhibit 12, please.  We

23          hand to counsel for CNBM and the witness four

24          copies in English and in Chinese of the CNBM

25          2013 annual report already in evidence of

Confidential - Subject to Further Confidentiality Review

```
 1        depositions.
 2   BY MR. HERMAN:
 3        Q    Would you turn to page 72 of the CNBM annual
 4   2013 report identified as Exhibit 12.  Would you read
 5   the transactions with the parent group.
 6                (Witness Reviews Document.)
 7        A    I'm done reading it.
 8   BY MR. HERMAN:
 9        Q    Do you agree that CNBMG had a direct equity
10   interest of 12.35 percent and a total direct and
11   indirect equity interest of 44.10 percent in CNBM as
12   of the 2013 annual report?
13                MR. VEJNOSKA:  Objection, vague and
14        ambiguous.
15        A    Yes.
16   BY MR. HERMAN:
17        Q    Do you agree that as of the 2013 annual
18   report of CNBM that CNBMG was a controlling
19   shareholder of CNBM?
20                MR. VEJNOSKA:  Objection, calls for
21        legal or other expert opinion, vague and
22        ambiguous, foundation.
23        A    CNBMG is the shareholder of CNBM.
24   BY MR. HERMAN:
25        Q    Do you disagree with the word "controlling
```

Confidential - Subject to Further Confidentiality Review

```
1    shareholder"?

2              MR. VEJNOSKA:  Same objections.

3      A    The description may cause dispute or

4    different opinions.  I believe it is better to use the

5    word shareholder instead of the word controlling.

6    BY MR. HERMAN:

7      Q    Did you or anyone at your direction ever,

8    after the publication in English of the 2013 annual

9    report, instruct that the English words be changed to

10   reflect your opinion?

11             MR. VEJNOSKA:  Objection, argumentative,

12        foundation.

13     A    No.  The word "controlling shareholder" is

14   to be used under the instruction of China security --

15             THE INTERPRETER:  May the interpreter

16        have a moment?

17             MR. HERMAN:  Does the witness mean

18        Security Regulatory Bureau?

19             THE INTERPRETER:  This is the

20        interpreter speaking.  That's correct.  The

21        interpreter just suddenly forgot the translation

22        of the same.

23             MR. HERMAN:  Would the translator repeat

24        the witness's answer in English for the record.

25             THE INTERPRETER:  Yes.
```

1      A      The word "controlling shareholder" is to be

2   used under the instruction of China Security

3   Regulatory Commission.  Personally, I believe the word

4   "shareholder" is to be used instead of "controlling

5   shareholder."  In fact, it is actually a shareholder

6   instead of controlling shareholder.  I'll have to make

7   that clear to Mr. Russell to avoid any

8   misunderstanding for the word "controlling."

9   BY MR. HERMAN:

10     Q      Is it your view that the word controlling --

11   strike that.

12              Are you familiar with Chairman Cao's

13   report that he signed that he's fluent in English?

14              MR. VEJNOSKA:  Objection, foundation,

15       misstates the record.

16     A      General Manager Cao understands limited

17   English.  The English language such as this is very

18   complicated.  I don't believe he's able to master the

19   language accurately.

20   BY MR. HERMAN:

21     Q      Who masters the English language accurately

22   that's responsible for publishing publicly the 2013

23   CNBM report?

24              MR. VEJNOSKA:  Objection, argumentative.

25              MS. EIKHOFF:  Object to form.

Confidential - Subject to Further Confidentiality Review

```
 1      A     I'm not sure who would be able to master the

 2   language, but the annual report should have been

 3   written --

 4                THE INTERPRETER:  The interpreter would

 5        like to reinterpret.

 6      A     I'm not sure who would be able to master the

 7   language, but the annual report, I believe, was

 8   written by our attorney in Hong Kong.

 9   BY MR. HERMAN:

10      Q     Which attorney?

11      A     I don't know.

12      Q     Do you agree that CNBMG and CNBM and its

13   subsidiaries constitute connected persons of CNBM

14   under the listing rules?

15                MR. VEJNOSKA:  Objection, calls for

16        legal or other expert opinion, vague and

17        ambiguous.

18                Please mark the translation.

19      A     That's what is written here, but I believe

20   the word "affiliate" is a legal terminology.  It is

21   hard for me to use it properly.

22   BY MR. HERMAN:

23      Q     Is the word "affiliate" written in Chinese?

24      A     That's what the Chinese says.

25                MR. HERMAN:  Let's look at the 2014
```

Confidential - Subject to Further Confidentiality Review

```
1          annual report, Exhibit 13.  I'm going to hand to

2          counsel for CNBM four copies of the 2014 annual

3          report of CNBM, Exhibit 13, in English and in

4          Chinese.  13-A is the Chinese, 13 is the

5          English.

6     BY MR. HERMAN:

7          Q     Would you turn to page 4, please.  In the

8     year 2014, Chairman Song, were you chairman of the

9     board of CNBM?

10         A     Yes.

11         Q     Were the other directors -- executive

12    directors listed on page 4 the correct listing of

13    executive directors?

14         A     They're correct.

15         Q     And in 2014 were you the chair of the

16    three-person strategic steering committee?

17         A     Yes.

18         Q     And were you a member of the three-person

19    nomination committee in 2014?

20         A     Yes.

21         Q     And were you a member of the three-person

22    remuneration and performance appraisal committee?

23         A     Yes.

24         Q     Would you turn to page 5.  In 2014 were you

25    the authorized representative with Chang Zhangli of
```

Confidential - Subject to Further Confidentiality Review

1  the CNBM Company?  Would you turn to page 7.

2      A    Yes.

3      Q    Is the definition at page 7 of China

4  Composites Group Corporation, Limited correct?

5             MR. VEJNOSKA:  Objection, vague and

6        ambiguous.

7      A    It is correct.

8  BY MR. HERMAN:

9      Q    Is the definition of China Fiberglass

10  Company, Limited listed as China Fiberglass correct?

11             MR. VEJNOSKA:  Same objection.

12      A    It is correct.

13  BY MR. HERMAN:

14      Q    Does it correctly state that China Jushi is

15  China Jushi Company, Limited formerly known as China

16  Fiberglass?

17             MR. VEJNOSKA:  Same objection.

18      A    Yes.

19  BY MR. HERMAN:

20      Q    Is the listing of China Triumph as China

21  Triumph International Engineering Company, Limited

22  correct?

23             MR. VEJNOSKA:  Same objection.

24      A    That's correct.

25  BY MR. HERMAN:

Confidential - Subject to Further Confidentiality Review

```
 1      Q      Please turn to page 8 of the annual report

 2  of 2014.  Is the definition of CNBM Investment

 3  Company, Limited as "CNBM Investment" correct?

 4              MR. VEJNOSKA:  Same objection.

 5      A      Correct.

 6  BY MR. HERMAN:

 7      Q      Is the definition of CNBM Trading as China

 8  National Business Materials and Equipment Import &

 9  Export Corporation correct?

10              MR. VEJNOSKA:  Same objection.

11      A      It's correct.

12  BY MR. HERMAN:

13      Q      At page 8 does the Chinese version list

14  affiliate shareholder?

15      A      It does not appear on here.

16      Q      In the Chinese version how is the word

17  "shareholder" described at page 8?

18      A      Are you referring to this "controlling

19  shareholder"?

20      Q      Yes.

21      A      Controlling shareholder.

22      Q      At page 10 is Jushi Group the correct for

23  the Jushi Group Company, Limited?

24              MR. VEJNOSKA:  Objection, vague and

25          ambiguous.
```

1      A     Yes.

2   BY MR. HERMAN:

3      Q     Is the word Triumph Energy Saving correctly

4   a description of Shanghai Triumph Energy Saving

5   Engineering Technology Company, Limited?

6                Is the word -- at page 10 of the 2014

7   annual report, is China National Building Material

8   Group Corporation correctly described as the parent?

9                MR. VEJNOSKA:  Objection, vague and

10         ambiguous.

11      A     Yes, it is described as parent company, but

12   I have explained many times with Mr. Russell the

13   definition of parent company.

14   BY MR. HERMAN:

15      Q     Would you turn to page 44, please.  Would

16   you read to yourself, Chairman Song, the first four or

17   five sentences under Functions and Operation of the

18   Board.

19                (Witness Reviews Document.)

20      A     I'm done reading it.

21   BY MR. HERMAN:

22      Q     Do you agree that the board of directors of

23   CNBM Company is the highest decision-making authority

24   during the adjournment of the general meeting?

25      A     Yes.

Confidential - Subject to Further Confidentiality Review

```
1        Q      Would you look at page 45, please.  In the

2   annual report of 2014 of CNBM does it indicate that

3   your primary duties as chairman of the board of CNBM

4   include responsibilities of chairing and convening

5   general meetings, presiding over board meetings, and

6   organizing discussions on major business matters such

7   as corporate development strategy and business

8   philosophy, checking the implementation of board

9   resolutions and other duties?

10              MR. VEJNOSKA:  Objection, asked and

11          answered, compound.

12       A      Yes.

13   BY MR. HERMAN:

14       Q      Do you have the same duties as chairman of

15   CNBM Group in addition to other responsibilities?

16       A      The difference between my responsibilities

17   of CNBMG and my responsibilities of CNBM is that with

18   CNBMG I do not host the shareholders' general

19   meetings.

20              THE INTERPRETER:  Interpreter needs to

21          clarify with witness.

22       A      I also do not issue the stocks of the

23   company --

24              THE INTERPRETER:  The interpreter would

25          like to reinterpret.
```

Confidential - Subject to Further Confidentiality Review

```
 1        A     I also do not sign on the issuing of the

 2   stocks of the company because it is not a public

 3   listed company.

 4   BY MR. HERMAN:

 5        Q     Do you have the responsibilities in CNBMG of

 6   presiding over board meetings of the directors of

 7   CNBMG?

 8              THE INTERPRETER:  Interpreter would like

 9         to reinterpret.

10        A     I do preside over the board of directors'

11   meetings.

12   BY MR. HERMAN:

13        Q     Do you have the responsibility of organizing

14   discussion on major business matters such as corporate

15   development strategy and business philosophy for CNBM

16   Group?

17        A     Yes.

18        Q     As the chairman of the board of CNBM Group,

19   do you have the responsibility to implement -- or

20   check the implementation of CNBM Group board

21   resolutions?

22        A     Yes.

23        Q     Would you turn to page 47.

24        A     47?

25        Q     Yes.
```

Confidential - Subject to Further Confidentiality Review

```
1      A      I don't have it.

2      Q      Turn to page 51.  Is it true that the board

3   of directors of CNBM is responsible for the

4   preparation of the financial statements for each

5   financial year which gives a true and fair view of the

6   financial position of the group?

7      A      Yes.

8              MR. HERMAN:  We can stop.  It's almost

9          12:00.  And if we could try to resume at quarter

10         till 1, I think we can complete my interrogation

11         today and still provide some time for the State

12         of Louisiana to ask questions through their

13         representatives.

14             MR. VEJNOSKA:  And we've been -- and we

15         have raised this with both parties obviously

16         weeks in advance.  I just want to confirm that

17         we are not going to have a problem today with

18         the sharing of time, correct?  Right, Mr. Black.

19             MR. BLACK:  That's correct.

20             MR. VEJNOSKA:  Thank you.

21             THE VIDEOGRAPHER:  Time now is

22         11:59 a.m.  We are off the record.

23             (Recess Taken From 11:59 a.m. To

24         12:51 p.m.)

25             THE VIDEOGRAPHER:  This begins disk 3 of
```

Confidential - Subject to Further Confidentiality Review

1          today's deposition.  Time now is 12:51 p.m.  We

2          are back on the record.

3      BY MR. HERMAN:

4      Q      Would you please turn to page 84 of the 2014

5      annual report of CNBM at the -- the title is Material

6      Litigation and Arbitration.  Why was the explanation

7      of Taishan Gypsum litigation in US courts placed under

8      the title Material Litigation and Arbitration?

9      A      This is the opinion of the attorney.

10     Q      Which attorney?

11     A      Hong Kong attorney.

12     Q      And who was the Hong Kong attorney for CNBM

13     in 2014?

14     A      I don't know.  The attorney was hired by the

15     secretary of the board of directors.

16     Q      Do you know the name of the law firm hired

17     by the secretary of CNBM?

18     A      I'm not sure.  I have not dealt with them.

19     Q      Was it Chang Zhangli who was responsible to

20     hire the attorneys?

21     A      Yes.

22     Q      Do you know why in a statement of the

23     Taishan Gypsum litigation in the US the word

24     "criminal" was left out of the words "contempt"?

25                MR. VEJNOSKA:  Objection, calls for

Confidential - Subject to Further Confidentiality Review

1          speculation.

2      A     I don't know.

3  BY MR. HERMAN:

4      Q     Do you agree that in 2014 a civil action in

5  the gypsum litigation in the US was made on CNBM

6  through the Beijing Supreme People's Court in China?

7              MR. VEJNOSKA:  Objection, vague and

8        ambiguous.

9      A     Through Beijing?  I'm not clear about your

10  question.

11  BY MR. HERMAN:

12      Q     Question is, do you agree that CNBM Company,

13  Limited was served with a lawsuit involving gypsum in

14  litigation before the federal court and Judge Fallon?

15              MR. VEJNOSKA:  Objection, calls for

16        speculation.

17      A     I'm not sure when it was received.

18  BY MR. HERMAN:

19      Q     Was it received by CNBM?

20      A     I'm not sure.  I haven't seen it.

21      Q     You have never seen the Eduardo and Carmen

22  Amorin suit -- lawsuit which is stated at page 84 of

23  the annual report of CNBM in 2014?

24              MR. VEJNOSKA:  Object to the --

25      A     You're saying in the year 2014?  It was

Confidential - Subject to Further Confidentiality Review

```
 1   received -- it was received in 2014 through the court,

 2   but I have not seen it.  But it was received.

 3                 THE INTERPRETER:  This is the

 4        interpreter speaking.  The witness answered

 5        before the interpreter had the chance to

 6        interpret counsel's question.  Would counsel

 7        like the interpreter to interpret your question?

 8      A    Perhaps we have received it this year.  I do

 9   not have a clear recollection on that.  But anyways,

10   it was received.  Whether it is this year or last

11   year...

12   BY MR. HERMAN:

13      Q    On how many occasions did CNBM refuse to

14   accept the service of lawsuits involving Chinese

15   gypsum from the United States?

16                 MR. VEJNOSKA:  Objection, foundation,

17        argumentative.

18      A    I'm not sure about this matter.

19   BY MR. HERMAN:

20      Q    To your knowledge did any officer or

21   employee of CNBMG or CNBM communicate with the Supreme

22   People's Court that they should not accept service of

23   lawsuits in the gypsum litigation?

24                 MR. VEJNOSKA:  Objection, foundation,

25        vague and ambiguous.
```

Confidential - Subject to Further Confidentiality Review

```
 1      A     I'm not sure.

 2  BY MR. HERMAN:

 3      Q     Was it ever discussed in your presence that

 4  there was no treaty between China and the United

 5  States that required a Chinese corporation to receive

 6  service of a lawsuit originating in the United States?

 7      A     I don't have a clear recollection.

 8      Q     Do you have any recollection, whether clear

 9  or unclear?

10      A     Please repeat what you just said.

11      Q     Yes.  If you don't have a clear recollection

12  of any such discussion in your presence, do you have

13  an unclear recollection of such?

14            MR. VEJNOSKA:  Objection, vague and

15       ambiguous, calls for speculation.

16      A     I really can't recall.  I don't remember.

17  BY MR. HERMAN:

18      Q     Do you recall The Hague Convention being

19  discussed in your presence with respect to the gypsum

20  litigation in the United States?

21      A     It was not discussed.

22      Q     Do you know what The Hague Convention is?

23      A     I'm aware The Hague Convention, but not its

24  content.  I have heard The Hague Convention, but I do

25  not know its content.
```

Confidential - Subject to Further Confidentiality Review

```
 1      Q      To your knowledge did China enter as a
 2   signatory to The Hague Convention?
 3      A      I don't know because I'm not a legal
 4   professional, nor has any international litigation
 5   ever occurred.  Therefore, I'm not sure about things
 6   like this.
 7      Q      Would you turn to page 117.  Under the title
 8   Investments in Associates, would you please read to
 9   yourself at paragraph 2.5?
10              THE VIDEOGRAPHER:  Can we go off the
11          record for just one second.  Time is 1:06 p.m.
12          We are off the record.
13              (Recess Taken From 1:06 p.m. To
14              1:06 p.m.)
15              THE VIDEOGRAPHER:  Time now is 1:06 p.m.
16          We are back on the record.
17   BY MR. HERMAN:
18      Q      Would you look at paragraph 2.5 at page 117
19   of the 2014 annual report of CNBM, please.
20              (Witness Reviews Document.)
21      A      I see that.
22   BY MR. HERMAN:
23      Q      Do you agree that an associate of CNBM is an
24   entity over which CNBM has significant influence?
25              MR. VEJNOSKA:  Objection, calls for
```

1          legal conclusion, vague and ambiguous.

2      A    This is an accounting language.  I'm not

3   sure about it.

4   BY MR. HERMAN:

5      Q    Do you agree that CNBM -- strike that.

6               Do you agree that an associate is an

7   entity over which CNBM has significant influence?

8               MR. VEJNOSKA:  Objection, asked and

9          answered, calls for a legal or expert opinion.

10     A    I am still not sure about this.

11  BY MR. HERMAN:

12     Q    Do you see the word "associate" in

13  paragraph 2.5 in Chinese?

14     A    I see that.

15     Q    Did you ever ask what associate meant?

16              MR. VEJNOSKA:  Objection, argumentative.

17     A    In fact, we have not used this word before.

18  It is only a word became existent after it is public

19  listed in Hong Kong.

20              THE INTERPRETER:  Interpreter needs to

21          clarify with witness.

22              The interpreter needs to clarify with

23          the witness.

24     A    I am not sure about the word associates.  It

25  is a terminology used for Hong Kong public listed

Confidential - Subject to Further Confidentiality Review

```
 1    companies.  While in China we call this kind -- these

 2    kind of enterprises shareholding enterprises, which

 3    means that we have invested in these enterprises but

 4    we do not have the majority votes in the board of

 5    directors' meetings.  Therefore, we only call it a

 6    shareholding enterprise rather than associates.

 7                    MR. VEJNOSKA:  Would you mark that,

 8          please and --

 9                    MR. HERMAN:  And --

10                    MR. VEJNOSKA:  I'm sorry, Mr. Herman, I

11          just need to interpose an objection on the rule

12          of completeness since I have now discovered that

13          Section 2.5 goes on at some length on the next

14          page.

15    BY MR. HERMAN:

16        Q    Do you see the words significant influence

17    in paragraph 2.5 in Chinese?

18        A    I see that.

19        Q    Is your prior testimony that it was only

20    after March 2006 when CNBM became publicly listed that

21    the word "associates" was used?

22        A    Yes.

23        Q    Would you look at page 195, please.  Do you

24    see the word borrowings at the top of page 195?

25        A    Yes.
```

Confidential - Subject to Further Confidentiality Review

1      Q      Do you see the note that as of 31 December

2   2014 the following bonds and notes are still

3   outstanding?

4      A      I see that.

5      Q      Do you see that for BNBM the CNBM annual

6   report of 2014 lists 2014 first tranche short-term

7   commercial paper 600 million RMB?

8      A      I see that.

9      Q      Does that mean that BNBM had borrowed 600

10  million RMB on 11 March 2014 due in one year at

11  5.70 percent?

12             MR. VEJNOSKA:  Objection, calls for

13        speculation.

14     A      That's what is written on it.

15  BY MR. HERMAN:

16     Q      Why is that borrowing of BNBM listed in the

17  CNBM 2014 annual report?

18             MR. VEJNOSKA:  Objection, calls for

19        speculation, calls for expert opinion or legal

20        conclusion.

21     A      This is an accounting issue.  I believe it

22  is the requirements and explanations of the exchange.

23  BY MR. HERMAN:

24     Q      Did CNBM guarantee the loan of BNBM?

25             MR. VEJNOSKA:  Objection, calls for

Confidential - Subject to Further Confidentiality Review

1          speculation.

2      A      There have been guarantee, but I'm not sure

3    whether this is the guarantee.

4              (Discussion Off The Record.)

5              MR. HERMAN:  Please pass out -- no,

6        don't pass out.  Please hand out Exhibit 334,

7        the 2015 interim report of CNBM in English and

8        in Chinese.

9              (Deposition Exhibit 334 marked.)

10             (Deposition Exhibit 334-A marked.)

11             MR. HERMAN:  This is interim report of

12       CNBM --

13     A      I have read from 2005 and 2015.

14   BY MR. HERMAN:

15     Q      This is the interim report of CNBM made on

16   June 30th, 2015, and is Exhibit 334.  Would you please

17   look at page 39.  At this time in 2015 were you

18   chairman of the strategic steering committee?

19     A      Yes.

20     Q      And one of the other two members of the

21   committee was Chairman Cao, correct?

22     A      I'll have to take a look at it.  Oh, yes.

23     Q      Would you please read to yourself, Chairman

24   Song, the paragraph under the strategic steering

25   committee in the 2015 interim report of CNBM.

Confidential - Subject to Further Confidentiality Review

1              (Witness Reviews Document.)

2      A      I see that.

3    BY MR. HERMAN:

4      Q      Do you agree with the report of the duties

5    of the strategic steering committee?

6      A      I agree.

7      Q      Would a financing plan by CNBM of BNBM in

8    terms of loans or guarantees that consideration be

9    within the responsibilities of the strategic steering

10   committee?

11              MR. VEJNOSKA:  Objection, calls for

12        speculation.

13     A      The strategic steering committee do not

14   discuss that.  We do not discuss what was just said.

15   BY MR. HERMAN:

16     Q      Would you turn to page 94.

17     A      94.

18     Q      Under Contingent Liabilities and Litigation

19   for months ending -- six months ending June 30, 2015,

20   would you read the last sentence on page 94 to

21   yourself.

22     A      The last sentence.

23              (Witness Reviews Document.)

24     A      I see that.

25   BY MR. HERMAN:

1     Q     Who from Taishan Gypsum made the statement

2    that is reported there?

3     A     I'm not sure.  I believe it is the board of

4    directors of Taishan.

5     Q     At the time of this report in 2015, isn't it

6    true that BNBM had the right to select three of the

7    five directors of Taishan Gypsum?

8     A     I'm not sure how many directors they have

9    currently.

10     Q     Did BNBM have the right in 2015 to select a

11    number of the directors of Taishan Gypsum?

12            MR. MOORE:  Objection, form.

13     A     BNBM is the biggest shareholder of Taishan

14    Gypsum.  Of course BNBM's directors would be in the

15    board of directors of Taishan Gypsum.

16            MR. HERMAN:  Give me -- in connection

17       with the testimony of the witness, we offer the

18       2015 CNBM report, Exhibit No. 334 and in Chinese

19       334-A.

20            MR. VEJNOSKA:  Same response and

21       objections.

22            MR. HERMAN:  Let's go off the record for

23       five minutes, please.

24            THE VIDEOGRAPHER:  Time now is 1:30 p.m.

25       and we are off the record.

Confidential - Subject to Further Confidentiality Review

```
 1              (Recess Taken From 1:30 p.m. To

 2         1:38 p.m.)

 3              THE VIDEOGRAPHER:  This begins disk 4 of

 4         today's deposition.  Time is 1:38 p.m.  We are

 5         back on the record.

 6              MR. MOORE:  I have been handed a

 7         document which is marked as Song Exhibit 323

 8         entitled Course of Events on Hiring Foreign Law

 9         Firms For the Gypsum Board Litigation in the

10         United States, brief version of the related

11         meetings.  We're going to -- on behalf of my

12         clients BNBM Group and BNBM PLC we're going to

13         claw back this document pursuant to the court's

14         pretrial procedures and we're going to assert

15         that it's attorney-client privileged and work

16         product.  But I'm also happy to engage in

17         conversations with Arnold to see if there is

18         something that can be worked out on this as we

19         have on other documents.  Thank you.

20              MR. HERMAN:  I want to go forward with

21         Exhibit 215, BNBM Group document 444, 445, 446.

22         And I provided to counsel for CNBMG with a

23         machine translation and the Chinese originally

24         as produced and indicate for the record that

25         this matter -- this document was originally
```

1          clawed back but then it was ruled on as not

2          privileged.  The court did not deprivilege the

3          document as I stated.  It was deprivileged by

4          counsel who originally asserted privilege and

5          then withdrew it.  It's dated July 14, 2014.

6    BY MR. HERMAN:

7        Q     Can the witness tell me if Hui -- I'm sorry,

8    if Zhu, Hui is still employed by Beijing New Building

9    Material Group company, Limited?

10       A     I don't know this person.

11       Q     What is the enterprise management department

12   of Beijing New Building Material Group company,

13   Limited?

14       A     What do you mean?  I did not hear you

15   clearly.

16       Q     Do you see the words "enterprise management

17   department" on the document?

18       A     I see that.  But I don't know this Zhu Hui.

19       Q     What is the enterprise management

20   department?

21       A     Enterprise management department is a

22   department in enterprise management; for example,

23   production management.

24       Q     Would you turn, please, to page 445.  Would

25   you read to yourself the paragraph below Leaders of

Confidential - Subject to Further Confidentiality Review

1    the Company.

2              (Witness Reviews Document.)

3    BY MR. HERMAN:

4        Q    Chairman Song, do you understand that the

5    China National Building Material Group Corporation had

6    a meeting of international business risk prevention in

7    July 2014?

8        A    I'm not sure about this.

9        Q    What is it that you're not sure about?

10             THE INTERPRETER:  Interpreter needs to

11       clarify with witness.

12             Upon clarifying with the witness, the

13       interpreter would like to correct her

14       interpretation in the prior answer of the

15       witness.  The correct interpretation should be

16       "I do not know" instead of "I'm not sure."

17   BY MR. HERMAN:

18       Q    You were chairman of the board of directors

19   of CNBMG on July 11, 2014; is that correct?

20       A    Yes.

21       Q    And you were chair of the strategic

22   committee of CNBM on July 11, 2014, correct?

23       A    CNBM, you mean CNBM Company, Limited?

24       Q    That's what I said, yes.

25       A    Yes.

1      Q      And you were also chairman of BNBM Group on

2   July 11, 2014, correct?

3      A      Yes.

4      Q      And was the enterprise management

5   department, international business department, the

6   investment organization department, the finance

7   department all departments of BNBM Group?

8      A      Yes.

9      Q      And wasn't risk management one of the

10  obligations of the board of directors of CNBM on

11  July 11, 2014?

12     A      It is the obligation of the board of

13  directors, but this matter was not arranged by the

14  board of directors.

15     Q      Risk management is the responsibility of the

16  board of directors; isn't that true?

17           MR. VEJNOSKA:  Objection, asked and

18       answered.

19     A      The board of directors does have the

20  function of preventing risks, but it is mainly to be

21  implemented by the execution department of the company

22  as well as management of the company and all other

23  departments of the company.

24  BY MR. HERMAN:

25     Q      Would you look at item 2 -- No. 2, review

Confidential - Subject to Further Confidentiality Review

```
 1    fund accounts.  It is required to manage funds on a

 2    centralized mode, and to avoid depositing funds in

 3    banks that have branches in the State of New York,

 4    United States.

 5                   THE INTERPRETER:  This is the

 6          interpreter speaking.  Does counsel like the

 7          interpreter to read from the Chinese?

 8                   MR. HERMAN:  Yes.

 9      A     I see that.  I don't know.

10    BY MR. HERMAN:

11      Q     I haven't asked a question yet, but I will.

12                   The Group Corporation's requirement,

13    do you see those words?

14                   THE INTERPRETER:  This is the

15          interpreter speaking.  The interpreter

16          interpreted counsel's statement as a question

17          earlier.

18                   MR. MOORE:  My clients BNBM Companies

19          reserve the right to review this as to the

20          accuracy of the translation which we have not

21          had the opportunity to do.

22                   MR. HERMAN:  You produced it.

23                   MR. VEJNOSKA:  And we reserve our

24          rights.

25                   MR. HERMAN:  Let me get back to my
```

Confidential - Subject to Further Confidentiality Review

1        questions.  Okay?

2    BY MR. HERMAN:

3        Q     The Group Corporation's requirement, do you

4    see those words?

5        A     I see that.

6        Q     Is that BNBM Group or CNBM Group?

7        A     This refers to CNBM Group.

8        Q     And item No. 2 is avoiding depositing funds

9    in banks that have branches in the state of New York

10   United States a Group Corporation's requirement of

11   CNBM Group in order to put funds out of reach to

12   satisfy judgments in the United States against CNBM

13   Group or its affiliated or associated businesses?

14              MR. VEJNOSKA:  Objection, argumentative,

15         foundation, misstates the document.

16              MR. MOORE:  Objection, form.

17       A     It is written here clearly, but as for which

18   bank and where are the banks, I personally do not

19   know.  And I also do not know whether such meeting was

20   held.

21   BY MR. HERMAN:

22       Q     Does the document say under company's

23   current situation that the company has accounts in all

24   the big banks?

25              THE INTERPRETER:  The interpreter has

1          not finished her interpretation.  Here is the

2          continuation of the witness's answer to the

3          prior question.

4     A     I also do not know the situation regarding

5  the bank or information regarding the bank, whether it

6  is in New York or elsewhere.

7              THE INTERPRETER:  The interpreter will

8          interpret the last question asked by the

9          counsel.

10  BY MR. HERMAN:

11     Q     Do you see the column that says company's

12  current situation?

13     A     I see that.

14     Q     Does that refer to CNBM as the company?

15     A     The prior company was referring to CNBM.

16  However, this is referring to CNBM-invested companies

17  that is under CNBM as overseas enterprises.  It is --

18  they are not CNBMG's own company but rather CNBMG's

19  invested companies that are under CNBMG.  Excuse me, I

20  have misspoken.  I have misspoken.  I just saw that

21  this is a report of BNBMG.  So under the company's

22  current situation the company should -- refers to

23  BNBMG.

24     Q     It says the company has accounts in all the

25  big four banks.  Do you see that?

Confidential - Subject to Further Confidentiality Review

```
 1        A      I see that.

 2        Q      At the time of July 11th, 2014, did CNBM and

 3   BNBM have substantial funds in JPMorganChase Bank in

 4   the city of New York?

 5               MR. VEJNOSKA:  Objection, compound.

 6        A      I don't know.

 7   BY MR. HERMAN:

 8        Q      Do you know that in -- on July 11th, 2014,

 9   that JPMorganChase was a substantial shareholder of

10   CNBM?

11               MR. VEJNOSKA:  Objection, vague and

12         ambiguous.

13        A      I'm not sure how substantial is it, but

14   JPMorganChase Bank had always been holding shares of

15   CNBM.

16   BY MR. HERMAN:

17        Q      On July 11th, 2014, did BNBM or CNBM have

18   funds deposited in Morgan Stanley bank in New York

19   City?

20               MR. VEJNOSKA:  Objection, vague and

21         ambiguous.

22        A      As far as I know, CNBM -- well, are you

23   referring to CNBM Company, Limited or CNBM Group?

24   BY MR. HERMAN:

25        Q      Well, let's start with CNBM Company.
```

1      A      I don't know whether it has deposit or not

2    in the United States.

3      Q      Did CNBM Group on July 11, 2014, have

4    deposits of funds in Morgan Stanley in New York City?

5      A      CNBM Group does not have deposits of funds

6    overseas, including the United States.

7      Q      On July 11, 2014, did BNBM have deposits of

8    funds in Morgan Stanley in New York City?

9      A      I don't know.

10     Q      On July 11, 2014, was CitiBank a substantial

11   investor in CNBM?

12              MR. VEJNOSKA:  Objection, vague and

13        ambiguous.

14     A      I don't know.

15   BY MR. HERMAN:

16     Q      On July 11, 2014, did -- do you know if any

17   of the defendants in the gypsum litigation in the USA

18   had funds on deposit in a bank in New York City?

19     A      I don't know.

20     Q      Would you turn to the first page of

21   Exhibit 215.  Next to the e-mails that list BNBMG

22   would you state for the record the name of each

23   individual and what position they held on July 14,

24   2014, in BNBMG.  Please begin with Zhang Yi.

25     A      I know the names, but I don't know any of

Confidential - Subject to Further Confidentiality Review

1    their positions.  Even though I am the chairman of the

2    board of BNBM, but this company is operated by its

3    general manager.  They would only approach me when

4    there is a board of directors' meeting.

5        Q     Are all of these individuals whose names you

6    know employees of BNBMG?

7        A     I don't know, but I see that all of their

8    e-mails state BNBMG.  I do not know any of them.

9              MR. HERMAN:  In connection with the

10        testimony of the witness we offer Exhibit 215

11        into the deposition.

12             I'll provide counsel and the witness

13        with Exhibit 69, a machine translation and the

14        original Chinese dated February 15, 2011.  It is

15        a CNBMG document, the Chinese version produced

16        is 5228.

17             (Deposition Exhibit 69 marked.)

18   BY MR. HERMAN:

19        Q     Do you know Mr. Wu or Ms. Wu?

20        A     I do not know.

21        Q     Are you familiar with OKorder.com?

22        A     I know a website by the name of Yidan, but

23   I'm not familiar with the website he had just

24   mentioned because I do not use the Internet.

25        Q     Have you been told or have you heard that

1    OKorder.com was established to advertise and

2    merchandise building products of China?

3              MR. VEJNOSKA:  Objection, foundation.

4        A    I have heard of it.

5    BY MR. HERMAN:

6        Q    And have you heard of Yidan?

7        A    Yidan web, I have heard of it.

8        Q    Is it a website that's used to advertise and

9    merchandise products produced by CNBM and its

10   affiliates?

11             MR. VEJNOSKA:  Objection, vague and

12        ambiguous, calling for legal conclusion.

13       A    To my understanding Yidan is an E-commerce

14   website selling Chinese building material products to

15   overseas.

16   BY MR. HERMAN:

17       Q    To the United States of America?

18       A    I don't know.  I know that at the time they

19   sold it to the Middle East such as Dubai, et cetera.

20             MR. HERMAN:  We offer Exhibit 69 in the

21        deposition.

22             MR. VEJNOSKA:  Same objections and

23        reservations.

24             MR. HERMAN:  We provide counsel -- all

25        counsel with Exhibit 336, a machine translation

1           and a translation in Chinese.  It is dated

2           June 27th, 2013, and it is from CNBM Group 2319.

3                (Deposition Exhibit 336 marked.)

4    BY MR. HERMAN:

5        Q    Do you know the author of this e-mail?

6        A    It says here by a person called Wang Weibo.

7        Q    Does it say it's from the CNBMG financial

8    department?

9        A    Yes, that's what it says on it.

10       Q    Is it addressed to Wang Jing at cnbm.com.cn?

11       A    It was addressed to Wang Jing.

12       Q    Do you know who Wang Jing is?

13       A    I don't know.

14       Q    Is the subject BNBM Group cash dividend

15   transfer?  Is it a usual course of business for BNBM

16   Group to request instructions on transferring cash

17   dividends of CNBM Company to BNBMG?

18                MR. VEJNOSKA:  Objection, compound,

19          vague and ambiguous, foundation, calls for

20          speculation.

21       A    I see it says allocate of the funds.  It

22   does not say the word "transfer."  It is their

23   arrangement on the funds.  It is not a matter of

24   transfer, which is to arrange this fund to someone

25   else's fund such as to repay bank loans, et cetera.

1    It is an arrangement of their internal financial

2    department.  It is not a matter of transfer.

3    BY MR. HERMAN:

4        Q    Does that mean it is an arrangement where

5    BNBM Group and CNBM Company on the books of the

6    companies approve a monetary credit from CNBM Company,

7    Limited to BNBM Group?

8            MR. VEJNOSKA:  Objection, foundation,

9        calls for speculation, vague and ambiguous.

10           MR. MOORE:  Objection, form.

11       A    This is a financial issue.  It is something

12   to be dealt with by the financial personnels.  BNBMG's

13   dividends from CNBM is, first of all, to have arrived

14   at the book of CNBMG.  Financially it is to be

15   recorded as the income dividend of BNBMG, but perhaps

16   CNBM needs funds.  Therefore, CNBM would like it to,

17   first of all, transfer the cash to CNBM from the

18   books.

19           MR. HERMAN:  We'll offer Exhibit 336 in

20       the deposition.

21           MR. VEJNOSKA:  And I'll state with

22       regard to this document and the prior exhibit

23       our usual objection and reservations of rights

24       regarding the translation by another party.

25           Mr. Herman, we've been going between an

```
1              hour and a half and an hour and 45 minutes --

2                   MR. HERMAN:  Would you like to take a

3         recess, Counsel?

4                   MR. VEJNOSKA:  When it's convenient to

5         you I think --

6                   MR. HERMAN:  Another five minutes it

7         will be 2:30 and we can take a 15-minute break

8         or we can take it now.  Either way.

9                   MR. VEJNOSKA:  That's fine.

10                  Are you okay for another five minutes?

11                  MR. HERMAN:  Why don't we take it now.

12        Let's take a break now because if I get into the

13        next document, it's going to take a while.

14        Okay?

15                  THE WITNESS:  It doesn't matter.  It's

16        up to you to tell us when to take a break.

17                  MR. HERMAN:  Now is fine.

18                  THE VIDEOGRAPHER:  Time now is 2:25 p.m.

19        We are off the record.

20                  (Recess Taken From 2:25 p.m. To

21                  2:55 p.m.)

22                  THE VIDEOGRAPHER:  This begins disk 5 of

23        today's deposition.  Time now is 2:55 p.m.  We

24        are back on the record.

25                  MR. HERMAN:  I'm going to distribute
```

Confidential - Subject to Further Confidentiality Review

```
1              Exhibit 264 in English and Chinese, a Request

2              For Service Abroad of the Judicial and

3              Extrajudicial Documents.  It's addressed to

4              China National Building Material Group

5              Corporation (CNBM Group).

6    BY MR. HERMAN:

7         Q    I would like you to take a look at the

8    Chinese -- the materials in Chinese which are attached

9    and then I'll have some questions for you.

10             (Witness Reviews Document.)

11   BY MR. HERMAN:

12        Q    Were you aware before today that China

13   National Building Material Group Corporation in June

14   of 2011 refused to accept service of a lawsuit naming

15   China National Building Material Group Corporation as

16   a defendant in the Chinese gypsum drywall litigation

17   in the United States?

18        A    I don't have a clear recollection.

19        Q    Were you aware that on August 13, 2013, CNBM

20   Group refused to accept service of a lawsuit for

21   Chinese-manufactured drywall litigation in the United

22   States of America on the basis that the company had

23   nothing to do with the case?

24             MR. VEJNOSKA:  Objection, foundation.

25        A    I don't know.  As I'm looking at it, I don't
```

Confidential - Subject to Further Confidentiality Review

1    even know who signed on it.

2    BY MR. HERMAN:

3       Q     Were you aware that on April 9, 2014, CNBM

4    Group refused to accept service of papers in which it

5    has claimed that CNBM Group was a defendant in the

6    Chinese drywall litigation in the United States?

7                 MR. VEJNOSKA:  Same objection.

8       A     I don't know.

9    BY MR. HERMAN:

10      Q     Were you aware that in November 23rd, 2013,

11   CNBM Group refused to accept service of a lawsuit

12   naming them as a defendant in the Chinese drywall

13   gypsum litigation in the United States?

14                MR. VEJNOSKA:  Same objection.

15      A     I don't know.

16   BY MR. HERMAN:

17      Q     As chairman of the board of directors of

18   CNBM Group in 2010, 2011, 2013, 2014 no one reported

19   to you that there was an attempt to serve CNBM Group

20   with lawsuits and that they had been refused?

21                MR. VEJNOSKA:  Objection, compound.

22      A     The general counsel had told me about these

23   things, but specifically as to what matter the general

24   counsel had told me that they had nothing to do --

25                MR. VEJNOSKA:  I'm going to object --

Confidential - Subject to Further Confidentiality Review

```
 1            I'm going to ask you, ma'am, to please stop

 2            because I do not -- that is the disclosure of

 3            attorney-client privileged information.

 4    BY MR. HERMAN:

 5        Q    Who was the general counsel that told you

 6    these things?

 7                 THE INTERPRETER:  Interpreter needs to

 8            clarify with the witness.

 9                 Upon clarifying with the witness, the

10            interpreter would like to correct her earlier

11            use of the word general counsel.  It should be

12            interpreted as general advisory counsel.  The

13            deponent -- the witness also said the general

14            advisory counsel told me that it has nothing to

15            do with the company.

16    BY MR. HERMAN:

17        Q    And who was the general advisory counsel

18    that told you that?

19        A    Xu Jinhua.

20        Q    And the general advisory counsel, what law

21    firm did the general advisory counsel belong to?

22        A    He is CNBMG's general advisory counsel.

23        Q    And where is his office located?

24        A    He's retired.

25        Q    Where does he live?
```

Confidential - Subject to Further Confidentiality Review

```
1        A      Beijing.

2        Q      When did he retire?

3        A      Perhaps two years ago.  He retired in 2014.

4        Q      And did he have an office in CNBMG where

5   CNBMG has its offices?

6        A      Yes.

7        Q      And where -- what is the address of the

8   location of that office?

9        A      I don't have a clear recollection on that.

10   It is at the office location of CNBMG.

11        Q      And where is that?  What is that address?

12        A      It is at -- it is written here.

13        Q      It's written on the documents identified as

14   264, Exhibit 264; is that correct?

15        A      It is No. 17 Fuxing Road, Guohai Square.

16        Q      And that address was correct for your

17   general advisory counsel?

18        A      Yes.

19        Q      Who took his place?

20        A      Currently is Zhou Guoping.

21               MR. HERMAN:  We are going to reserve our

22         right to have a motion and brief on an exception

23         to privilege in connection with the advices

24         given, but we will not necessitate Chairman Song

25         to have to come back in the event that we're
```

Confidential - Subject to Further Confidentiality Review

```
 1      successful.  I'm going to assume that between
 2      counsel in the event that we're successful with
 3      privilege, we will send questions under the
 4      rules which will be sworn and answered by the
 5      witness and then transmitted to us.
 6              MR. VEJNOSKA:  I understand your
 7      position.  Thank you, Mr. Herman.
 8              MR. HERMAN:  You're welcome.
 9              I'll ask the court reporter to excerpt
10      for me all questions and answers relating to
11      Exhibit 264, counsel's objection as privileged,
12      and any response that I made to that objection
13      and to provide it simultaneously or at the same
14      time I get it to counsel for CNBM.
15              And we offer Exhibit 264.  I believe
16      it's already in evidence, but if it's not, I'm
17      going to offer it again.
18              Exhibit 263.  We provide to counsel for
19      CNBM, for the translator and the witness.
20  BY MR. HERMAN:
21      Q    Would you please review the Chinese
22  portions, Chairman Song, of Exhibit 263.
23      A    I see that.
24      Q    As chairman of CNBM Company, were you aware
25  that on June 27th, 2011, that CNBM refused to accept
```

Confidential - Subject to Further Confidentiality Review

1   the lawsuit naming it as a defendant in the United

2   States of America in the gypsum drywall litigation?

3                   MR. VEJNOSKA:  Objection, foundation.

4       A    I don't know.

5   BY MR. HERMAN:

6       Q    Were you aware that on June 30th, 2011, CNBM

7   refused to accept the lawsuit naming it as a defendant

8   in the Chinese drywall litigation in the United

9   States?

10                  MR. VEJNOSKA:  Same objection.

11      A    I don't know.

12  BY MR. HERMAN:

13      Q    Were you aware that on August 3rd, 2013,

14  CNBM refused to accept the lawsuit naming it as a

15  defendant in the Chinese drywall litigation in the

16  United States on the basis that CNBM had nothing to do

17  with the case?

18                  MR. VEJNOSKA:  Same objection.

19      A    I don't know.

20  BY MR. HERMAN:

21      Q    Were you aware that on April 9th, 2014, that

22  CNBM refused to accept service of the lawsuit naming

23  it as a defendant in the Chinese drywall case pending

24  in the United States?

25                  MR. VEJNOSKA:  Same objection.

Confidential - Subject to Further Confidentiality Review

```
 1      A     I don't know.

 2  BY MR. HERMAN:

 3      Q     Were you aware that CNBM Group on

 4  December 23rd, 2013, refused to accept the lawsuit

 5  naming it as a defendant in the Chinese drywall

 6  litigation in the United States?

 7            MR. VEJNOSKA:  Same objection.

 8      A     I don't know.

 9  BY MR. HERMAN:

10      Q     Were you aware that CNBM on April 9th, 2014,

11  refused to accept the lawsuit naming it as a defendant

12  in the Chinese drywall litigation in the United

13  States?

14            MR. VEJNOSKA:  Same objection, and asked

15        and answered.

16      A     I do not know.

17  BY MR. HERMAN:

18      Q     Did you discuss the issue with anyone?  I

19  don't want to know if it's a lawyer, what he said, I

20  just want to know if you discussed it with a lawyer.

21            MR. VEJNOSKA:  Mr. Song, you should

22        answer that question yes, no or if you don't

23        remember, say so.

24      A     I don't remember.

25  BY MR. HERMAN:
```

Confidential - Subject to Further Confidentiality Review

1        Q      When did you first become aware that CNBM

2   had refused to accept the lawsuits naming CNBM Company

3   as a defendant in the gypsum drywall cases pending in

4   the United States?

5        A      I don't remember.  It was a long time ago.

6   I've heard of it.

7               MR. HERMAN:  We're going to offer, if we

8         haven't, Exhibit 263.

9               (Deposition Exhibit 388 marked.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Confidential - Subject to Further Confidentiality Review



Confidential - Subject to Further Confidentiality Review



Confidential - Subject to Further Confidentiality Review



Case 2:09-md-02047-EEF-MBN Document 20688-33 Filed 02/23/17 Page 200 of 241
Confidential - Subject to Further Confidentiality Review



Golkow Technologies, Inc. Page: 200

Confidential - Subject to Further Confidentiality Review



Confidential - Subject to Further Confidentiality Review



Confidential - Subject to Further Confidentiality Review



Confidential - Subject to Further Confidentiality Review





Confidential - Subject to Further Confidentiality Review





Confidential - Subject to Further Confidentiality Review



Confidential - Subject to Further Confidentiality Review



15          MR. VEJNOSKA:  Same objections and

16      reservations.

17              (Deposition Exhibit 392 marked.)

18          MR. HERMAN:  Exhibit 392.  This will be

19      the last exhibit that I'll question the witness

20      from.  I know we're not used to having lawyers

21      say something like that and sticking to it, but

22      I plan to.  Please distribute the English and

23      Chinese version.

24              This is a document which very recently

25      was produced to us.  It is CNBM Company 55606 to

Confidential - Subject to Further Confidentiality Review

1        55611.  It says, "Main measures taken by the

2        leadership team of Taishan Gypsum at the special

3        democratic life meeting."

4   BY MR. HERMAN:

5        Q    I'll ask the witness to look first at page

6   No. 1.  It's been marked in yellow.

7             (Witness Reviews Document.)

8        A    I see that.

9   BY MR. HERMAN:

10       Q    Are the words written there in Chinese as

11  follows:  "Taishan Gypsum Company, Limited

12  (abbreviated below as 'Taishan Gypsum') is a

13  third-tier enterprise owned by the party committee of

14  CNBM Group and is the largest plasterboard enterprise

15  in the world with a production capacity of 1.5 billion

16  square meters, total assets of RMB 6 million [sic] and

17  more than 7,600 employees"?

18             MR. VEJNOSKA:  That's billion,

19        Mr. Herman.

20             MR. HERMAN:  That's correct.  I

21        misstated.  It's RMB 6 billion.

22       A    Yes.

23  BY MR. HERMAN:

24       Q    Do you see the words "Before the meeting,

25  Zhiping Song, secretary of the party committee and

1    chairman of the board of directors of the Group

2    Corporation, paid close attention and instructed Group

3    Corporation's circuit supervision team and the

4    activity office in person to fully play their role of

5    providing supervision and instruction and to ensure

6    that the special democratic life meeting held by the

7    leadership team of Taishan Gypsum is of high quality

8    and sets the benchmark for the enterprises owned by

9    the Group Corporation"?

10       A    I see that.

11       Q    According to the machine translation, this

12   matter was accomplished on July 9, 2014.  To the best

13   of your recollection, did you address before the

14   meeting as stated here in July of 2014?

15       A    I did not know.  I did not make a speech in

16   this meeting.  It does not say that I have made a

17   speech in the meeting.

18       Q    Did you make a speech before the meeting?

19       A    It does not say that I made a speech.  It

20   says that me as the secretary of the party committee

21   showed --

22            THE INTERPRETER:  The interpreter needs

23       a moment.

24            Interpreter will continue her

25       interpretation.

1      A     As the secretary of the party committee

2   cared about the democratic life meeting.  It does not

3   mean that I would make a speech in the meeting.

4   BY MR. HERMAN:

5      Q     The words in Chinese indicate that as

6   chairman of the board of directors of BNBM Group that

7   Chairman Song instructed the Group Corporation's

8   circuit supervision team?

9      A     This is a polite way to express it in China

10  because as the secretary of the party committee after

11  I -- after the meeting every party organization would

12  write something like this, not only Taihe.  This is a

13  document of Chinese communist party.

14     Q     So it's wrong too?  It's reported wrong or

15  incorrectly?

16              MR. VEJNOSKA:  Objection, argumentative,

17       misstates his testimony.

18     A     I don't think you have read it clearly.  In

19  the report it says, "Before the meeting Zhiping Song,

20  secretary of the party committee and chairman of the

21  board of directors of the Group Corporation, paid

22  close attention and instruction -- and instructed

23  group cooperation circuit supervision team and the

24  activity office" --

25              THE INTERPRETER:  Interpreter needs to

1            clarify with witness.

2      A      After the meeting was held, each department

3    would write something like that, which is to say that

4    Chairman Dong had instructed his such and such.  It is

5    not only limited to Taishan.

6                MR. HERMAN:  Thank you very much.  I

7           have no further questions at this time.  I'm

8           going to offer Exhibit 392.

9                MR. VEJNOSKA:  And I'll state again our

10          usual objections and reservations not only to

11          the offer of the document but the use of the

12          third-party translation.

13               MR. HERMAN:  I tender the witness.  If

14          you want to take a short break, I'll tender the

15          witness to the Louisiana Attorney General for

16          whatever our time is left.

17               MR. VEJNOSKA:  Thank you, sir.

18               MR. HERMAN:  I have 4:18.

19               MR. VEJNOSKA:  Appreciate your courtesy

20          for the witness, sir.

21               MR. HERMAN:  Well, I appreciate the

22          witness.  You have a very important job and I

23          appreciate the time that you have spent in your

24          being here.

25               THE VIDEOGRAPHER:  Time now is 4:18 p.m.

Confidential - Subject to Further Confidentiality Review

```
1              We are off the record.

2                   (Recess Taken From 4:18 p.m. To

3                   4:27 p.m.)

4                   THE VIDEOGRAPHER:  This begins disk 6 of

5         today's deposition.  Time now is 4:27 p.m.  We

6         are back on the record.

7                             EXAMINATION

8    BY MR. BLACK:

9         Q     Good afternoon, Chairman Song.  I am David

10   Black and I represent the State of Louisiana who has a

11   claim in this case.  Do you know where the state of

12   Louisiana is?

13        A     I'm not sure.

14        Q     Have you been to the state of Louisiana?

15        A     No.

16        Q     Do you understand that Judge Fallon's court

17   sits in New Orleans, which is in the state of

18   Louisiana?

19        A     I've heard of it.

20        Q     Do you know that there were storms in 2005

21   in the southeastern part of the United States

22   including the state of Louisiana that caused great

23   damage to property?

24        A     I know that.

25        Q     And for you in the materials business,
```

Confidential - Subject to Further Confidentiality Review

1    building materials business, storms like that present

2    a sales opportunity, don't they?

3              MR. VEJNOSKA:  Objection, argumentative.

4    A     In fact, Chinese gypsum board is something

5    very cheap.  It would not be shipped to the United

6    States to be sold.  Many American business people came

7    to China to purchase the gypsum boards.

8    BY MR. BLACK:

9    Q     Well, you're aware, are you not, from the

10   exhibit you just looked at, Exhibit 388, with

11   Mr. Herman that much Taishan Gypsum board made its way

12   into areas that were damaged by the hurricanes?

13             MR. VEJNOSKA:  Objection, foundation.

14             MS. EIKHOFF:  Objection, vague and

15        ambiguous.

16   A     I know that America had bought Taishan

17   Gypsum board, but I don't know where were they shipped

18   to specifically.

19   BY MR. BLACK:

20   Q     When did you first come to know or

21   understand that Taishan Gypsum board had been shipped

22   to Louisiana?

23   A     I learned it when America had started the

24   litigation.  At the time I thought why would the

25   gypsum board be sold to the United States.  It does

Confidential - Subject to Further Confidentiality Review

1    not make money anyways.

2        Q    In 2006 you were aware, were you not, of

3    increases in the sales of Taishan board in your

4    position as chairman of the board of the three

5    entities of which you're a chairman?

6        A    It was actually in Chinese market where

7    Taishan Gypsum board's sales had increased.

8        Q    You also became -- sorry.

9        A    Do you know what is the sales volume of the

10   Taishan Gypsum board today?  In China 1.4 billion

11   square meters are sold.  Therefore, I would not

12   connect the sales increase of Taishan Gypsum board to

13   its export to the United States.

14             MR. BLACK:  Let's mark as the first

15        exhibit that I have Exhibit 1 to Mr. Song, which

16        is a document that has Bates numbers -- produced

17        by BNBMPLC-E-160430 through 520.

18             (Deposition Exhibit LA-1 marked.)

19             MR. BLACK:  And I'll give a copy to the

20        interpreter, to opposing counsel, and I believe

21        we're distributing copies to everyone else.

22   BY MR. BLACK:

23        Q    Mr. Song, I will represent to you that this

24   is a -- apparently a copy that BNBM PLC made of the

25   State of Louisiana's petition for relief which has --

Confidential - Subject to Further Confidentiality Review

1    the most recent petition which has paragraphs in

2    English that correspond to the petition and

3    immediately beneath it are translations that

4    apparently BNBM made of each paragraph.

5                    Have you seen this before?

6                    MR. MOORE:  Objection, form, no

7           foundation for the question.

8                    THE INTERPRETER:  May the interpreter

9           ask counsel, did counsel say apparently BNBM

10          made of each paragraph means that BNBM

11          translated each paragraph?

12                   MR. BLACK:  Yes.

13                   THE INTERPRETER:  Thank you.  There's no

14          change on my interpretation.

15      A    What do you want to say?  Because it will

16    take me more than 40 minutes to read all of the

17    document.

18    BY MR. BLACK:

19      Q    Yes, it will, and I want to speak about two

20    paragraphs of the document.  But first I want to have

21    an answer as to whether you have seen the petition of

22    the State of Louisiana that the State of Louisiana has

23    filed in this litigation before today.

24                   MR. MOORE:  Objection, form, no

25          foundation for the question.

1        A      I have not seen it.

2   BY MR. BLACK:

3        Q      Have people at BNBM PLC briefed you on the

4   fact that the State of Louisiana has filed a petition

5   which names BNBM PLC, BNBM Group, CNBM and CNBM Group

6   as defendants?

7                   MR. MOORE:  Objection, form.

8        A      I don't have a clear recollection on that.

9   I only know that there are cases other than this case,

10  but I don't know what are the other cases.  Therefore

11  just now you said you would be talking about 40

12  minutes, then I realized there is an existence of such

13  a case.

14  BY MR. BLACK:

15       Q      Could you turn to the page of the petition

16  which has the Bates numbers at the bottom 160489.  And

17  I would like you to read paragraphs 187 and 188,

18  please.  It's two-sided.

19                  MR. VEJNOSKA:  I will find it for you.

20                  (Witness Reviews Document.)

21       A      Do you want me to read this paragraph and

22  that paragraph?

23  BY MR. BLACK:

24       Q      Yes.

25       A      I have read them.

Confidential - Subject to Further Confidentiality Review

```
 1      Q     Do you understand that there were victims of

 2   the hurricanes in 2005 in Louisiana that had Taishan

 3   drywall installed in their homes as part of the repair

 4   efforts?

 5              MR. VEJNOSKA:  Objection, foundation,

 6         vague and ambiguous.

 7              MR. MOORE:  Objection, form.

 8      A     I don't know.  Now I've read it.

 9   BY MR. BLACK:

10      Q     I'll represent to you that that has

11   occurred.  Taking that representation to be true, are

12   you aware that the State of Louisiana has instituted a

13   program to take out defective Taishan drywall from

14   these homes and pay for the homes to be rebuilt?

15              MR. VEJNOSKA:  Objection, move to strike

16         the prefatory statement, lacks foundation,

17         argumentative.

18              MS. EIKHOFF:  Object to form.

19              MR. MOORE:  Object to sidebar.

20      A     I see that's what it says here.

21   BY MR. BLACK:

22      Q     Do you understand that's part of the State's

23   claim in this case, reimbursement from Taishan for

24   changing out these homes, that Taishan has not because

25   they contain defective Taishan drywall?
```

Confidential - Subject to Further Confidentiality Review

```
1              MS. EIKHOFF:  Objection, foundation;

2         object to form.

3      A     From the information that I know, because I

4    don't really know the matter, this is the first time

5    that I have learned the matter just now.

6    BY MR. BLACK:

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review



Confidential - Subject to Further Confidentiality Review



Confidential - Subject to Further Confidentiality Review

1

2

3

4

5

6

7

8

9

10          Now, let me ask you a slightly

11    different question.  Where is your office as chairman

12    of the board of BNBM Group?

13       A     I do not have an office at BNBMG.  I only

14    have one office which is located at CNBMG.

15       Q     And from that office located at CNBMG, do

16    you perform your work as chairman of the board of

17    BNBMG?

18       A     Because I only attend the board of

19    directors' meeting at BNBMG, therefore, whenever they

20    hold a board of directors' meeting I would attend the

21    meeting in a temporary conference room in BNBMG.

22    Because Chinese government does not allow State-owned

23    enterprises to have more than one office.  It has to

24    be only one office.

25                MR. VEJNOSKA:  Mr. Black, it is 5:00.

1          Are we almost finished?

2                    MR. BLACK:  Two more questions.

3     BY MR. BLACK:

4        Q      From that office at CNBMG, do you also

5     perform your work as the chairman of CNBM?

6                    MR. VEJNOSKA:  Objection, vague and

7          ambiguous, foundation.

8        A      As for CNBM's office since I am also the

9     chairman of the board of CNBM; therefore, I am -- also

10    only perform my work whenever there is a board of

11    directors' meeting of CNBM.

12    BY MR. BLACK:

13       Q      And your office at CNBM Group is in the same

14    building as CNBM; is that correct?

15       A      Correct.

16       Q      Finally, last area.  Do you have an e-mail

17    address?

18                    MR. VEJNOSKA:  Objection, asked and

19          answered.

20       A      I have e-mail.

21    BY MR. BLACK:

22       Q      And does the e-mail address have -- what is

23    that e-mail address?

24       A      I have e-mail, but I don't often use it.  My

25    e-mail is szp@cnbm.com.

Confidential - Subject to Further Confidentiality Review

1      Q      You do not have an e-mail address with CNBM

2   Group or BNBM Group in it?

3      A      I only have this one e-mail, but I myself

4   have never used it.

5                 MR. BLACK:  I have no further questions.

6                 MR. VEJNOSKA:  Thank you, Mr. Black.

7                 THE VIDEOGRAPHER:  Time now is 5:03 p.m.

8            Today's portion of our deposition consists of

9            six disks is now concluded.

10                (Deposition Concluded At 5:03 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Confidential - Subject to Further Confidentiality Review

```
 1                    REPORTER'S CERTIFICATE

 2

 3        This transcript is valid only for a transcript

 4   accompanied by my original signature and original

 5   required seal on this page.

 6        I, Micheal A. Johnson, Certified Court Reporter

 7   (LA Certificate #29025) in and for the State of

 8   Louisiana, as the officer before whom this testimony

 9   was taken, do hereby certify that SONG ZHIPING, after

10   having been duly sworn by me upon authority of

11   R.S. 37:2554, did testify as herein before set forth

12   in the foregoing 116 pages; that this testimony was

13   reported by me in the stenotype reporting method, was

14   prepared and transcribed by me or under my personal

15   direction and supervision, and is a true and correct

16   transcript to the best of my ability and

17   understanding; that the transcript has been prepared

18   in compliance with transcript format guidelines

19   required by statute or by rules of the board, and that

20   I am informed about the complete arrangement,

21   financial or otherwise, with the person or entity

22   making arrangements for deposition services; that I

23   have acted in compliance with the prohibition on

24   contractual relationships, as defined by Louisiana

25   Code of Civil Procedure Article 1434
```

Confidential - Subject to Further Confidentiality Review

1    and in rules and advisory opinions of the board;

2    that I have no actual knowledge of any prohibited

3    employment or contractual relationship, direct or

4    indirect, between a court reporting firm and any party

5    litigant in this matter nor is there any such

6    relationship between myself and a party litigant in

7    this matter.  I am not related to counsel or to the

8    parties herein, nor am I otherwise interested in the

9    outcome of this matter.

10

11            Signed this ___ day of _____, 2015.

12

13

14

15            _____

16            MICHEAL A. JOHNSON, RMR, CRR

17            Certified Court Reporter

18            LA Certified Court Reporter #29025

19

20

21

22

23

24

25

Confidential - Subject to Further Confidentiality Review

```
 1                 ACKNOWLEDGMENT OF DEPONENT

 2

 3         I,_____, do hereby

 4    certify that I have read the foregoing pages and

 5    that the same is a correct transcription of the

 6    answers given by me to the questions therein

 7    propounded, except for the corrections or changes in

 8    form or substance, if any, noted in the attached

 9    Errata Sheet.

10

11         _____

12         SONG ZHIPING                    DATE

13

14    Subscribed and sworn to before me this

15    _____ day of _____, 20 _____.

16    My commission expires: _____

17

18    Notary Public

19

20

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

1            — — — — — —

2                    ERRATA

             — — — — — —

3

4      PAGE   LINE    CHANGE

5      _____  _____   _____

6      _____  _____   _____

7      _____  _____   _____

8      _____  _____   _____

9      _____  _____   _____

10     _____  _____   _____

11     _____  _____   _____

12     _____  _____   _____

13     _____  _____   _____

14     _____  _____   _____

15     _____  _____   _____

16     _____  _____   _____

17     _____  _____   _____

18     _____  _____   _____

19     _____  _____   _____

20     _____  _____   _____

21     _____  _____   _____

22     _____  _____   _____

23     _____  _____   _____

24     _____  _____   _____

25     _____  _____   _____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE:  CHINESE MANUFACTURED DRY WALL          : MDL No. 2047
PRODUCTS LIABILITY LITIGATION                           : Section L
                                                                          :
This Document Relates to                                       : JUDGE FALLON
ALL CASES                                                           : MAG. JUDGE WILKINSON

PEOPLE'S REPUBLIC OF CHINA

CITY OF _____Beijing_____

DECLARATION OF 杨颖（Ying YANG）

This is a declaration being made in accordance with and pursuant to 28 U.S.C. § 1746.

I, 杨颖（Ying YANG）, declare under penalty of perjury under the laws of the United States of America that the following statements are true and correct:

1. I am over eighteen (18) years of age, am competent to testify to the matters contained herein, and have personal knowledge of these facts.

2. I am director of translation division with Beijing Golden Olive Translation Center, and work in the office in Beijing, China.

3. I am fluent in the languages of Chinese and English.

4. I hereby certify that I prepared the English translation of the "ERRATA TO THE DEPOSITION OF SONG ZHIPING" ("ERRATA") in Chinese which was signed by Mr. SONG Zhiping, and when I translated the page/line numbers in the ERRATA, I reviewed the Transcript in English (see Attachment A) and the Chinese translation of the Transcript (see Attachment B) and confirmed that the contents in the Chinese translation of the Transcript as referred to by the page/line numbers indicated in the ERRATA in Chinese are corresponding to the contents in the Transcript in English as referred to by the page/line numbers indicated in the English translation of the ERRATA. I further certify that these copies of the ERRATA are true and accurate translations of one another.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 19, 2015



_____
Signature

_____
                                杨颖
Printed Name

路易斯安那州东区美国联邦地区法院

多地区合并诉讼案号：2:09-md-2047
关于：中国制造的石膏墙产品责任诉讼

宋志平的 2015 年 9 月 14 日-15 日庭外采证勘误表

| 页/行 | 记录 | 更正 | 理由 |
|---|---|---|---|
| 14:7 | 它是泰山的一个股东？<br>我不确定。 | 它是泰山的一个股东？对那件事我说不清楚。 | 翻译错误 |
| 14:15 | 我不确定。 | 至于这是不是它的子公司，我对这件事不太清楚。 | 翻译错误 |
| 20:8 | 中国建材研究机构 | 中国建筑材料科学研究总院 | 翻译错误 |
| 27:13 | 我曾经参观过在泰安市的泰山石膏板公司一次。 | 我曾经参观过在泰安市的泰山石膏股份有限公司一次。 | 澄清 |
| 27:17 | 购买了 | 收购了 | 翻译错误 |
| 28:7 | 这件事不必然需要我的批准。 | 这件事不需要我的批准。 | 翻译错误 |
| 29:9 | 具体情况我不确定，因为在所有的这些年中总是有增长。他们在所有这些年中一直在增加他们的产品。 | 具体情况我不确定，但他们的产量在所有这些年中一直在增长。 | 翻译错误 |
| 34:15 | 我不记得了，但我相信我已经看过了。 | 我不记得了。但我很有可能看过。 | 翻译错误 |
| 39:10-39:11 | 因此，根据公开上市规则，母公司及其子公司构成本公司的关联方。 | 因此，根据公开发售规定，母公司及其子公司构成本公司的相关方。 | 翻译错误 |
| 41:6-41:8 | 中国建材和中国建材集团都行使它们的股东权利。因 | 中国建材股份有限公司和中国建材集团都行使它们作为股东的权利。我认为，该影响是指 | 翻译错误 |

| | | | |
|---|---|---|---|
| | 此，它们的重要性——重大影响是在那些股东权利范围之内的。 | 随股东权利而来的股东权利影响范围内的影响。 | |
| 43:1 | 金额。 | 收入。 | 翻译错误 |
| 43:14 | 我不确定他们在那时做了什么。 | 我不知道他们那时做了什么。 | 翻译错误 |
| 55:8 | 这个母公司拥有这几个公司。 | 这个母公司持有这几个公司的股份。 | 翻译错误 |
| 59:13 | 我记不清了。我相信我确实问过他。 | 我记不清了。我很有可能问过他。 | 翻译错误 |
| 61:2 | 中国建材的法务人员会见过部长——商务部。 | 中国建材集团的法务人员会见过商务部。 | 澄清 |
| 61:9 | 中国建材的法务部 | 中国建材集团的法务部 | 澄清 |
| 64:3 | 我不记得开过任何会议。 | 我不记得开过什么会议。 | 翻译错误 |
| 66:14 | 那个会议的主持人是周张利（音）。 | 那个会议的主持人是曹江林。 | 澄清 |
| 67:13 | 学安 | 暄 | 翻译错误 |
| 67:13 | 陈 | 曾 | 翻译错误 |
| 71:4 | 我不确定……财务问题。 | 我不了解……财务上的事情。 | 翻译错误 |
| 86:1 | 郝振华是副主管。 | 郝振华是副秘书。 | 翻译错误 |
| 86:12 | 赵延敏是……经理。 | 赵延敏是……副经理。 | 翻译错误 |
| 87:5-6 | 公告 | 通报 | 澄清 |
| 131:3-131:6 | 中国建材是泰山最大的股东。它只是表达作为股东的意见。但是泰山是否听取这个意见，这是他们自己的决定。 | 中国建材股份拥有北新建材股份的股权，而北新建材是泰山最大的股东。中国建材股份不对泰山石膏直接表达意见。它只是表达它作为北新建材股东的意见。但是泰山是否听取这个意见，这是他们自己的决定。 | 澄清 |
| 139:2 | 公司 | 北新建材股份 | 澄清 |

| 154:2 | 这个描述可能导致争议或不同的看法。 | 这个描述可能导致不同的看法。 | 翻译错误 |
|---|---|---|---|
| 174:8–174:9 | 理所当然北新建材的董事任职于泰山石膏的董事会。 | 理所当然北新建材有权提名泰山石膏的若干董事。 | 澄清 |
| 184:1–184:2 | 北新建材 | 北新建材集团 | 澄清 |
| 187:7–187:10 | 北新建材集团从中国建材得到的股息是，首先，要到了中国建材集团的账上。从财务上，它被记作北新建材集团的股息收入，但也许中国建材需要资金。因此，中国建材想要首先从账上将现金转到中国建材。 | 北新建材集团从中国建材得到的股息将首先到北新建材集团账上。从财务上，它被记作北新建材集团的股息收入，但也许中国建材集团可能想要借入资金。因此，中国建材想要从账上将现金转到中国建材集团。 | 澄清 |
| 213:2 | 董主席 | 宋主席 | 翻译错误 |

庭外采证证人的确认书

本人，宋志平，在此证明我已阅读前述各页的内容，且前述的内容为我对其中提出的问题所做出的回答的正确记录，但对形式或实质内容的更正或改变除外。对形式或实质内容的更正或改变，如果有的话，在所附勘误表上进行备注。

宋志平                    日期

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MDL No. 2:09-md-2047
IN RE:  CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION

**ERRATA TO THE DEPOSITION OF SONG ZHIPING
TAKEN SEPTEMBER 14-15, 2015**

| Page/Line | Transcript | Change | Reason |
|---|---|---|---|
| 14:10-14:11 | It is a shareholder of Taishan?  I'm not sure. | Is it a shareholder of Taishan?  I am not able to speak clearly for that. | Interpretation error |
| 14:20-14:24 | I'm not sure. | I don't have clear knowledge of this matter as to whether this is its subsidiary. | Interpretation error |
| 20:13-20:14 | CNBM Research Institute | China Building Materials Academy | Interpretation error |
| 27:24 | purchased | acquired | Interpretation error |
| 27:19-27:20 | I have visited the Taishan Gypsum board company in Tai'an once. | I have visited the Taishan Gypsum  Co.  Ltd  in Tai'an once. | Clarification |
| 28:10-28:11 | This matter does not necessarily require my approval. | My approval is not required for this matter. | Interpretation error |
| 29:12-29:15 | I'm not sure about the specifics because there had always been an increase in all these years.  They had been increasing their products in all these years. | I'm not sure about the specifics but their production has been increasing for all these years. | Interpretation error |
| 34:23-34:24 | I don't recall, but I believe I have read it. | I don't recall.  But I probably read it. | Interpretation error |
| 39:22-39:24 | Therefore, according to the public listing principal, the parent company and its subsidiary companies constitute this company's affiliates. | Therefore, according to the public offering regulations, parent company and its subsidiary companies constitute related parties of this company. | Interpretation error |

| Page/Line | Transcript | Change | Reason |
|---|---|---|---|
| 41:8-41:11 | Both CNBM and CNBMG exercise their rights of shareholders. Therefore, their significance – significant influence is within those shareholder rights. | Both CNBM Company Limited and CNBM Group exercise their rights as shareholders. I think, the influence refers to influence within the scope of rights of shareholder influence that comes with the rights of shareholder. | Interpretation error |
| 43:2 | amount. | revenue. | Interpretation error |
| 43:18 | I'm not sure what they did at the time. | I do not know what they did at the time. | Interpretation error |
| 55:13 | This parent company owns these few companies. | This parent company holds shares of these few companies. | Interpretation error |
| 59:19-59:20 | I don't have a clear recollection.  I believe I did ask him. | I don't have a clear recollection.  I probably asked him. | Interpretation error |
| 61:7-8 | The legal staff in CNBM had meetings with the minister – the Ministry of Commerce. | The legal staff in CNBM Group had meetings with the Ministry of Commerce. | Clarification |
| 61:16 | CNBM's legal department | CNBM Group's legal department | Clarification |
| 64:4-64:5 | I don't recall any meeting was held. | I don't recall what meeting was held. | Interpretation error |
| 66:14 | The host of that meeting is Zhou Zhangli. | The host of that meeting is Cao Jianglin. | Clarification |
| 67:22 | Xue'an | Xuan | Interpretation error |
| 67:22 | Chen | Zeng | Interpretation error |
| 71:6 | I'm not sure the financial issues | I don't have knowledge about the financial matter | Interpretation error |
| 86:1 | Hao Zhenhua is the deputy director | Hao Zhenhua is the deputy secretary | Interpretation error |
| 86:19 | Zhao Yanmin is the manager | Zhao Yanmin is the deputy manager | Interpretation error |
| 87:10 | announcements | notifications | Clarification |

| Page/Line | Transcript | Change | Reason |
|---|---|---|---|
| 131:7-131:11 | CNBM is Taishan's biggest shareholder. It only expresses its opinion as a shareholder. But whether or not Taishan would listen to that opinion, the decision is theirs to make. | CNBM Company holds shares in BNBM Company, which is Taishan's biggest shareholder. CNBM Company does not express its opinion to Taishan directly. It only expresses its opinion as a shareholder of BNBM Company. But whether or not Taishan would listen to that opinion, the decision is theirs to make. | Clarification |
| 139:3 | Company's | BNBM Company's | Clarification |
| 154:3-154:4 | The description may cause dispute or different opinions. | The description may cause different opinions. | Interpretation error |
| 174:14-174:15 | Of course BNBM's directors would be in the board of directors of Taishan Gypsum. | Of course BNBM has the right to nominate some directors of Taishan Gypsum. | Clarification |
| 184:3 | BNBM | BNBM Group | Clarification |
| 187:13-187:19 | BNBMG's dividends from CNBM is, first of all, to have arrived at the book of CNBMG. Financially it is to be recorded as the income dividend of BNBMG, but perhaps CNBM needs funds. Therefore, CNBM would like it to, first of all, transfer the cash to CNBM from the Books. | BNBMG's dividends from CNBM will first arrive at BNBMG's book. Financially it is to be recorded as the income dividend of BNBMG, but perhaps CNBMG might want to borrow the fund. Therefore, CNBM would like it to transfer the cash to CNBMG from the book. | Clarification |
| 213:5 | Chairman Dong | Chairman Song | Interpretation error |

**Acknowledgement of Deponent**

I, Song Zhiping, do hereby certify that I have read the foregoing pages, and that the same is a correct transcription of the answers given by me to the questions therein propounded, except for the corrections or changes in form or substance, if any, noted in the attached Errata Sheet.

_____

**Song Zhiping**                                        **Date**



ORRICK, HERRINGTON & SUTCLIFFE LLP
THE ORRICK BUILDING
405 HOWARD STREET
SAN FRANCISCO, CALIFORNIA  94105-2669

*tel* +1-415-773-5700
*fax* +1-415-773-5759

WWW.ORRICK.COM

September 28, 2015

Jason Cabot
(415) 773-5605
jcabot@orrick.com

*VIA E-MAIL*

Kristie Martello
Supervisor of Case Management
Golkow Technologies Inc.
production @golkow.com

Re:    Depositions of Song Zhiping (September 14-15, 2015) and Peng Shou (September 16, 2015)
         Confidentiality Designations

Dear Ms. Martello:

As counsel for the China National Building Materials Entities, I write to you regarding the deposition of Song Zhiping, held on September 14-15, 2015, and the deposition of Peng Shou, on September 16, 2015.

The following excerpts from the deposition transcript of Song Zhiping should be designated Confidential:

- 50:14 - 54:16

- 63:24 – 69:18

- 70:6 – 102:3

- 105:9 – 108:4

- 129:11 – 130:16

- 141:21 – 144:22

- 177:6 – 187:19

- 196:10 – 213:6

- 220:8 – 223:10



ORRICK

Kristie Martello
September 28, 2015
Page 2

The following excerpts from the deposition transcript of Peng Shou should be designated
Confidential:

- 67:5 – 73:23

- 80:9 – 86:13

- 90:11 – 99:19

- 102:23 – 111:16

- 114:8 – 115:22

- 118:14 – 124:11

The following excerpts of the deposition transcript of Peng Shou should be designated Highly
Confidential:

- 74:10 – 80:6

- 86:16 – 90:8

- 99:20 – 100:16

- 101:24 – 102:20

- 113:4 – 114:6

- 116:25 – 118:11

Exhibits 368, 376, 377, 381, 399, 400, 401, and 402 to the Peng Shou deposition should be
designated Highly Confidential.

Thank you for your attention to this matter and for your ongoing service on this case.  Please let me
know if you have any questions.



ORRICK

Kristie Martello
September 28, 2015
Page 3

Sincerely,

*/s/ Jason Cabot*

Jason Cabot

cc:     Alan Weinberger - aweinberger@hanrylaw.com
        Harry Rosenberg - harry.rosenberg@phelps.com
        C. Michael Moore - mike.moore@dentons.com
        Gene R. Besen - gene.besen@dentons.com
        Richard L. Fenton - richard.fenton@dentons.com
        Leah R. Bruno - leah.bruno@dentons.com
        Michael H. Barr - michael.barr@dentons.com
        Justin N. Kattan - justin.kattan@dentons.com
        Bernard Taylor - bernard.taylor@alston.com
        Christina H. Eikhoff - christy.eikhoff@alston.com
        David Venderbush - david.venderbush@alston.com
        Michael P. Kenny - mike.kenny@alston.com
        Russ M. Herman - rherman@hhkc.com
        Sandra L. Duggan - sduggan@lfsblaw.com
        Frederick S. Longer - flonger@lfsblaw.com
        Arnold Levin - alevin@lfsblaw.com
        Leonard A. Davis - ldavis@hhklawfirm.com