Confidential - Subject to Further Confidentiality Review

```
 1            IN THE UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA
 2

                           - - -
 3

 4    IN RE:  CHINESE-MANUFACTURED :   MDL NO. 2047
      DRYWALL PRODUCTS LIABILITY    :   SECTION L
 5    LITIGATION                    :
                                    :   JUDGE FALLON
 6    THIS DOCUMENT APPLIES TO ALL  :
      CASES                         :   MAG. JUDGE WILKINSON
 7

 8                         - - -
 9                       VOLUME I
10                     CONFIDENTIAL -
         SUBJECT TO FURTHER CONFIDENTIALITY REVIEW
11

              Tuesday, November 17, 2015
12

                           - - -
13

14         Videotaped 30(b)(6) deposition of JUSHI USA
15    FIBERGLASS CO., LTD., through its designate, HSIN HUA
16    TANG, held at PILLSBURY WINTHROP SHAW PITTMAN, L.L.P.,
17    725 South Figueroa Street, Suite 2800, Los Angeles,
18    California, commencing at approximately 9:12 a.m.,
19    before Rosemary Locklear, a Registered Professional
20    Reporter, Certified Realtime Reporter and California CSR
21    (#13969).

22
                                          CONTEMPT
23                         - - -          Exhibit 64

24         GOLKOW TECHNOLOGIES, INC.
            877.370.3377 ph | 971.591.5672 Fax
25                   deps@golkow.com
```

Confidential - Subject to Further Confidentiality Review

```
 1   APPEARANCES:

 2

 3          LEVIN, FISHBEIN, SEDRAN & BERMAN
            BY:  MATTHEW C. GAUGHAN, ESQUIRE
 4          Mgaughan@lfsblaw.com
            510 Walnut Street, Suite 500
 5          Philadelphia, Pennsylvania 19106
            (215) 592-1500
 6          Appearing on behalf of the Plaintiffs (Plaintiffs'
            Lead Counsel, MDL 2047)

 7

 8
            STECKLER, L.L.P.
 9          BY:  BRUCE W. STECKLER, ESQUIRE
            Bruce@StecklerLaw.com
10          12720 Hillcrest Road, Suite 1045
            Dallas, Texas 75230
11          (972) 387-4040
            Appearing on behalf of the Plaintiffs' Steering
12          Committee

13

14          DENTONS US, L.L.P.
            BY:  MATTHEW T. NICKEL, ESQUIRE
15          matt.nickel@dentons.com
            2000 McKinney Avenue, Suite 1900
16          Dallas, Texas 75201-1858
            (214) 259-0900
17          Appearing on behalf of the BNBM Defendants

18

19          ORRICK, HERRINGTON & SUTCLIFFE, L.L.P.
            BY:  ANDREW K. DAVIDSON, ESQUIRE
20          adavidson@orrick.com
            The Orrick Building
21          405 Howard Street
            San Francisco, California 94105-2669
22          (415) 773-5700
            Appearing on behalf of the CNBM Defendants

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1   APPEARANCES:  (Continued)
 2
 3           ALSTON & BIRD, L.L.P.
             BY:  MACKENZIE (MACK) HELLER (KAHNKE), ESQUIRE
 4           (via telephone)
             mackenzie.heller@alston.com
 5           1201 West Peachtree Street, N.E.
             Atlanta, Georgia 30309-3424
 6           (404) 881-4828
             Appearing on behalf of the Defendant Taishan
 7           Gypsum Company
 8
 9           PILLSBURY WINTHROP SHAW PITTMAN, L.L.P.
             BY:  MICHAEL McNAMARA, ESQUIRE
10           michael.mcnamara@pillsburylaw.com
             BY:  QIAN HUANG, ESQUIRE
11           qian.huang@pillsburylaw.com
             1200 Seventeenth Street, N.W.
12           Washington, DC 20036-3006
             (202) 663-8000
13           Appearing on behalf of the Jushi entities and the
             Witness
14
15
                              - - -
16
17
     ALSO PRESENT:
18
19
             JIM LOPEZ, Video Operator
20
             SUNNY WANG, Interpreter
21
             EMILY ZHANG, Herman, Herman & Katz, L.L.C.
22
23
                              - - -
24
25
```

Confidential - Subject to Further Confidentiality Review

```
 1                    I N D E X

 2

 3    WITNESS                                    PAGE

 4

 5    HSIN HUA TANG

 6

 7              By Mr. Steckler               10

 8

 9                     - - -

10

11              EXHIBIT INDEX

12    NUMBER                                   MARKED

13

14    1          6-page copy of document      21
                 "October 13, 2015, 2015 Re-Notice
15               of Expedited Oral and Videotaped
                 Deposition Pursuant to the
16               Court's Directive During the
                 March 17, 2015 Special Hearing
17               and Minute Entry and Order
                 [Rec.doc.18493]," plus
18               attachments
19    1-A        1-page copy of document in    30
                 Chinese
20
      2          222-page copy of document     32
21               entitled "CNBM Annual Report,"
                 ALRMH-CNBM00003662 -
22               ALRMH-CNBM00003883
23    2-A        222-page copy of document     32
                 entitled "CNBM Annual Report,"
24               ALRMH-CNBM00003884 -
                 ALRMH-CNBM00004105
25
```

Confidential - Subject to Further Confidentiality Review

```
 1                  EXHIBIT INDEX (Continued)

 2    NUMBER                                      MARKED

 3

 4    3          3-page copy of E-mail dated       51
                 3/2/15 to Tiffany Chen and Erica
 5               Lin from Sara Szutu,
                 J-USA-0002643 -
 6               J-USA-0002643.00003

 7    4          22-page copy of document entitled 68
                 "Partial Translation of
 8               PSC00000387 - 00000513"

 9    4-A        127-page copy of document in      68
                 Chinese, PSC00000387 -
10               PSC00000513

11    5          2-page copy of document entitled  87
                 "South Carolina Secretary of
12               State:  Search Business Filings"

13    6          6-page copy of document entitled  93
                 "Jushi USA Roster,"
14               J-USA-0001109 -
                 J-USA-0001109.00006

15
      7          (Exhibit not marked)
16
      8          3-page copy of E-mail dated      105
17               2/10/15 to Chen Tiffany from
                 James Tang, J-USA-0002497 -
18               J-USA-0002497.00003

19    9          2-page copy of document entitled 136
                 "Translation of JushiUSA-0007882
20               - JushiUSA-0007882.00001"

21    9-A        3-page copy of document in       147
                 Chinese, JushiUSA-0007882.0001 -
22               JushiUSA-0007882.00003

23    10         2-page copy of document entitled 143
                 "Translation of JushiUSA-0011386
24               - JushiUSA-0011386.0001"

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                    EXHIBIT INDEX (Continued)
 2      NUMBER                                          MARKED
 3
 4      10-A          1-page copy of document entitled    143
                      "China Fiberglass Auditing Firm
 5                    12/8/2011 Meeting Memo,"
                      JushiUSA-0011386.0001
 6
        11            2-page copy of document entitled    149
 7                    "Translation of JushiUSA-0007513,
                      JushiUSA-0007513.0001"
 8
        11-A          2-page copy of document entitled    149
 9                    "Faithrich Enterprises Limited,"
                      JushiUSA-0007513.0001 -
10                    JushiUSA-0007513.0002
11      12            2-page copy of document entitled    150
                      "Translation of JushiUSA-0009619,
12                    JushiUSA-0009619.0001"
13      12-A          1-page copy of document in          150
                      Chinese, JushiUSA-0009619.0001
14
        13            2-page copy of document entitled    151
15                    "Translation of JushiUSA-0011521"
16      13-A          1-page copy of document in          151
                      Chinese
17
        14            2-page copy of document entitled    157
18                    "Translation of JushiUSA-0007305-
                      JushiUSA-0007305.0001"
19
        14-A          3-page copy of document in          157
20                    Chinese
21      15            2-page copy of document entitled    160
                      "Translation of JushiUSA-0010861-
22                    JushiUSA-0010861.0001"
23      15-A          1-page copy of document in          160
                      Chinese, JushiUSA-0010861.0001
24
25
```

Confidential - Subject to Further Confidentiality Review

```
 1                    EXHIBIT INDEX (Continued)
 2     NUMBER                                          MARKED
 3
 4     16            2-page copy of document dated        166
                     11/14/12 entitled "Certificate of
 5                   Amendment of Articles of
                     Incorporation," J-USA-0001157 -
 6                   J-USA-0001157.0002
 7     17            2-page copy of document entitled     173
                     "Translation of JushiUSA-0011029-
 8                   JushiUSA-0011029.0001"
 9     17-A          1-page copy of document in           173
                     Chinese, JushiUSA-0011029.0001
10
       18            4-page copy of E-mail dated          178
11                   7/24/14 to Tiffany Chen and
                     Elaine Leung from Zhao Yan,
12                   J-USA-0000661 -
                     J-USA-0000661.00004
13
       19            3-page copy of E-mail dated          182
14                   8/28/14 to Tiffany Chen and James
                     Tang from Maybal Wong,
15                   J-USA-0001123 -
                     J-USA-0001123.00003
16
       20            6-page copy of document entitled     184
17                   "Partial Translation of
                     JushiUSA-0010512 -
18                   JushiUSA-0010512.001"
19     20-A          5-page copy of E-mail dated          184
                     9/17/14 to Tiffany Chen,
20                   JushiUSA-0010512.0001 -
                     JushiUSA-0010512.0005
21
22
       (Exhibits retained by the court reporter and attached to
23     transcript.)
24
25                               - - -
```

Confidential - Subject to Further Confidentiality Review

1                    INSTRUCTIONS NOT TO ANSWER

2

3                         Page 135

4

5                            - - -

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Confidential - Subject to Further Confidentiality Review

```
 1              VIDEO OPERATOR:  We are now on the record.

 2         My name is Jim Lopez.  I'm a videographer for

 3    Golkow Technologies.  Today's date is November 17th,

 4    2015, and the time is approximately 9:12 a.m.

 5         This video deposition is being held in Los

 6    Angeles, California, in the matter of In Re:

 7    Chinese-Manufacturing Drywall Products Liability

 8    Litigation, MDL 2047, for the United States District

 9    Court, Eastern District of Louisiana.

10         The deponent is Hsin Hua Tang.

11         Counsel and all present, will you please

12    identify yourselves.

13         MR. STECKLER:  Bruce Steckler on behalf of the

14    Plaintiffs' Steering Committee.

15         MR. GAUGHAN:  Matthew Gaughan, also on behalf of

16    the Plaintiffs' Steering Committee.

17         MS. ZHANG:  Emily Zhang on behalf of HHS.

18         MR. NICKEL:  Matthew Nickel on behalf of BNBM

19    PLC, BNBM Group.

20         MR. DAVIDSON:  Andrew Davidson on behalf of CNBM

21    Group, CNBM Companies.

22         MS. HUANG:  Qian Huang on behalf of China Jushi,

23    Jushi Company, and Jushi USA.

24         MR. McNAMARA:  Michael McNamara from Pillsbury

25    for the same three parties as Ms. Huang.
```

Confidential - Subject to Further Confidentiality Review

```
 1            THE WITNESS:  Hsin Hua Tang.

 2            VIDEO OPERATOR:  All those on the line?

 3            MS. HELLER:  This is Mack Heller from Alston &

 4     Bird representing Taishan Gypsum Co.

 5            VIDEO OPERATOR:  Counsel will be noted on the

 6     stenographic record.

 7            The court reporter is Rosemary Locklear, who

 8     will now swear the interpreter, who then will swear in

 9     the witness.

10            SUNNY WANG, interpreter, having been duly sworn,

11     was examined and testified as follows:

12            HSIN HUA TANG, having been duly sworn, was

13     examined and testified as follows:

14            THE WITNESS:  (Through the interpreter)  Say

15     again?  I do not hear her clearly.

16            THE INTERPRETER:  The interpreter will repeat.

17            THE WITNESS:  Yes.

18                         EXAMINATION

19     BY MR. STECKLER:  (Through the interpreter)

20     Q.    Sir, could you please state your name for the

21     record.

22     A.    Hsin Hua Tang.

23     Q.    Do you also go by James Tang?

24     A.    Yes.

25     Q.    Do you work with Jushi USA?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A.      Yes.

 2   Q.      What is your title with the company?

 3   A.      Chairman of the board of directors.

 4   Q.      What other companies do you work for?

 5   A.      No.

 6   Q.      Are you on the board of any other companies?

 7   A.      Yes.

 8   Q.      What companies?

 9   A.      Let me think about it.

10           Is he saying in China or in the United States?

11   Q.      Both.

12   A.      All right.

13   Q.      Hengshi.

14   A.      In China there is a company called Hengshi,

15   spelling as H-E-N-G-S-H-I, and another company is called

16   Huamei, H-U-A-M-E-I.  I'm not quite sure about the

17   spelling.

18   Q.      Is that in China as well?

19   A.      Yes, I'm talking about China, first of all.

20           Hengshi and Huamei.

21           Is he saying that I am in the board of

22   directors?

23   Q.      Yes.

24   A.      And then let's talk about America.

25           In America there is Zhenshi, Z-H-A-N-S-H-I, USA
```

1    and then there is Jushi USA, J-U-S-H-I, and after that

2    is U-S-A.  That's it.

3    Q.       What Chinese companies are you a shareholder of?

4    A.       H-E-N-G-S-H-I and H-U-A-M-E-I.  And China

5    Fiberglass.  But I own very little, only 0.6 percent.  I

6    don't know, should I report that or not.

7    Q.       Any other companies?

8    A.       Not in the board of directors' meeting, neither

9    in the shareholders' meetings.

10           Oh.  And also in Hong Kong.  Hong Kong.  For

11   those in Hong Kong, I probably will need to sort it out.

12   I'll need to sort it out.  I don't quite recall the

13   English names.

14   Q.       Are there a number of shares that you own in

15   different Hong Kong Exchange companies?

16   A.       They're not in Hong Kong Exchange yet.

17   Q.       Are they PRC -- and when I mean PRC, I'm talking

18   People's Republic of China -- companies that have not

19   yet had initial offerings of their shares?

20   A.       That's correct.  They are not yet have had

21   initial offerings.

22   Q.       Okay.  And what -- and when I say "PRC," I'm

23   talking about People's Republic of China.

24           Do you understand that?

25   A.       I understand.

Confidential - Subject to Further Confidentiality Review

1   Q.      Yeah.

2   A.      Okay.

3   Q.      So what PRC companies do you hold shares of or

4   serve on the board of that have not yet had initial

5   public offerings of their shares?

6   A.      I have said Hengshi and Huamei.

7           In China; right?

8   Q.      Yes, sir.

9           You'd also mentioned some Hong Kong shares that

10  you may own.  I assume they would be on the Hong Kong

11  Exchange, or am I wrong about that?

12          MR. McNAMARA:  Object to the form.

13          THE WITNESS:  You are mistaken.  They are not

14  public listing companies.

15          THE INTERPRETER:  May the interpreter inquire of

16  the witness whether the company is plural or singular in

17  form?

18          MR. STECKLER:  It would be plural.  So let me --

19          THE INTERPRETER:  May I inquire?  Because in

20  Chinese it can be either plural, single or --

21          MR. STECKLER:  Understood.

22          THE INTERPRETER:  Upon clarification, the

23  companies Mr. Tang mentioned in his answer to the prior

24  question is in plural form.

25          MR. STECKLER:  Can you explain that to me?

Confidential - Subject to Further Confidentiality Review

1          THE INTERPRETER:  Oh, yes, sir.  This is the

2     interpreter speaking.

3          In Chinese, there is no single or plural form in

4     nouns; therefore, whenever the witness mention a -- a

5     noun that the interpreter perceive may cause confusion

6     because there is no specified single or plural form

7     included in his answer, the interpreter would need to

8     inquire of the witness.  The same with gender.  "She" or

9     "he" is the same word in Chinese so the interpreter

10    would also need to clarify with the witness, may that

11    come to play.

12         MR. STECKLER:  Okay.  So Hengshi and Huamei,

13    there are multiple companies that he owns -- multiple

14    Hengshi companies and multiple Huamei companies that he

15    owns shares in?  Is that what you're saying?

16         MR. McNAMARA:  Object to the form.

17         MR. STECKLER:  No?  Okay.  All right.

18         I'm not -- it's not that big a deal.  Let me

19    move on.  It's not that important of an issue.

20    BY MR. STECKLER:

21    Q.     Have you ever had your deposition taken before,

22    sir?

23    A.     Once.

24    Q.     Okay.  And when was that?

25    A.     At least over 10 or 20 years.  I do not recall.

1   It was quite a while ago.

2   Q.      And in what context were you being deposed?

3   A.      I don't understand it.

4   Q.      What was the case in which you were being

5   deposed about?

6   A.      There was a friend company that borrowed money

7   from me.  I was there to prove that the money was

8   borrowed, not invested.

9   Q.      What company and who represented you?

10  A.      I was there myself.  Nobody represented me.  I

11  was called to answer questions.

12  Q.      What was the name of the company?

13  A.      I do not recall.

14  Q.      Where --

15  A.      Yeah.  Yeah.  I do not recall.

16  Q.      Where was the deposition taken?

17  A.      It was somewhere in Downtown.  I do not recall.

18  Q.      Who is your friend?

19  A.      A person by the name of Liang, L-I-A-N-G.

20  Q.      Liang what?

21  A.      I do not recall.  It's a long time ago.  I do

22  not recall.  We usually would all -- always use Chinese

23  name; therefore, I do not recall.

24  Q.      Was he a close friend?

25  A.      I believe he would count as a close friend

Confidential - Subject to Further Confidentiality Review

1  because I could lend money to him; however, because he

2  did not return the money, therefore, we no longer had

3  contact.

4      THE INTERPRETER:  May the interpreter ask for

5  the gender of Liang that the deponent mentioned?

6      MS. HUANG:  Interpreter, I think the -- the

7  translation missed the one phrase.  Basically, he

8  considered this person as a close friend at that time

9  because he had borrowed money from him.

10      MR. STECKLER:  Are you objecting to the

11  interpretation?

12      MR. McNAMARA:  Yes.

13      MR. STECKLER:  Okay.  So may I ask that you

14  simply object to the interpretation and then I

15  can decide if it needs clarification or not?

16      MR. McNAMARA:  Well, it seems to --

17      MR. STECKLER:  I don't know.  I've never done

18  that before, but I'm a little concerned about

19  your lawyer objecting to the interpretation.

20      MR. McNAMARA:  Well, with something like this,

21  it seems that --

22      MR. STECKLER:  I understand.

23      MR. McNAMARA:  -- if he gives a long answer

24  and she just leaves something out, it would be

25  a -- make a clearer record if we can get that sorted

1  out on the spot.

2          MR. STECKLER:  Yeah.  But how do I know that

3  it's a clearer record or not?

4          MR. McNAMARA:  Well, she can agree or disagree.

5          MS. HUANG:  We can confirm with her.

6          MR. McNAMARA:  Yeah.

7          MR. STECKLER:  So you can object to the

8  interpretation and I guess I can ask for the

9  clarification or are you going to insist on the

10  clarification?

11          MR. McNAMARA:  I mean, I think if

12  she's --

13          MR. STECKLER:  I don't know, Mike.

14          MR. McNAMARA:  Right.  No.  I got it.  But

15  here's my thought, Bruce:  If she's -- if she

16  will agree --

17          I'm sorry, ma'am.  I didn't get your name.

18          THE INTERPRETER:  Sunny.

19          MR. McNAMARA:  Sunny.

20          THE INTERPRETER:  Uh-huh.

21          MR. McNAMARA:  If she agrees, then isn't it sort

22  of a more efficient and -- a more efficient process and

23  a clearer record --

24          MR. STECKLER:  I understand what you're

25  saying.

```
1              MR. McNAMARA:  -- if we just take care of that

2    on the spot?

3              MR. STECKLER:  Yeah.  Well, let's see how we go,

4    but I -- just logistics, I'm kind of interested in

5    seeing how this is going to go down.

6              MR. McNAMARA:  Fair enough.

7              Well, can we ask Sunny, do you agree with that

8    one?

9              MR. STECKLER:  Why wouldn't --

10             THE INTERPRETER:  After all the conversation, I

11   think it's better to --

12             MR. McNAMARA:  Lost track?

13             THE INTERPRETER:  -- have the deponent to

14   re-answer the question.

15             MR. McNAMARA:  Okay.

16             THE INTERPRETER:  And I'll reinterpret and have

17   the attorney check and see.

18             MR. McNAMARA:  Fair enough.  Okay.

19   BY MR. STECKLER:

20   Q.     Sir, if you don't understand my questions today,

21   will you let me know?

22   A.     Yes.

23   Q.     If you don't let me know that you don't

24   understand the question, I'm going to assume you

25   understand what I'm asking you.
```

Confidential - Subject to Further Confidentiality Review

```
 1          Is that fair?

 2   A.     All right.

 3   Q.     Is that a yes?

 4   A.     Yes.  Yes.

 5   Q.     Sir, do you understand you're under oath today?

 6   A.     Yes.

 7   Q.     You understand that you're giving your

 8   deposition in conjunction with a lawsuit filed regarding

 9   Chinese drywall in the United States District Court for

10   the Eastern District of Louisiana?

11   A.     Yes.

12   Q.     And you understand that your testimony today is

13   under oath, as if you were in front of a judge and jury,

14   in the context of this case.

15          MR. McNAMARA:  Object to the form.

16          THE INTERPRETER:  May the interpreter ask

17   counsel to hold his objection until she finished her

18   interpretation?

19          MR. McNAMARA:  Okay.

20          THE INTERPRETER:  And I shall, of course, the

21   interpreter will instruct your client not to answer a

22   question until your objection is lodged and

23   interpreted --

24          MR. McNAMARA:  Okay.

25          THE INTERPRETER:  -- also.
```

Confidential - Subject to Further Confidentiality Review

1          MR. McNAMARA:  Okay.

2          Object to the form.

3          THE WITNESS:  Please repeat.  It's too long.  I

4   don't quite understand.  Please repeat.

5          Yes.

6   BY MR. STECKLER:

7   Q.     And do you intend to be honest and truthful

8   today in answering the questions that I ask?

9          MR. McNAMARA:  Object to the

10  form.

11         THE WITNESS:  Do I need to answer or not to

12  answer?

13         I don't know.

14  BY MR. STECKLER:

15  Q.     You can answer, subject to his objection.

16  A.     All right.  But if he objects, I can also not to

17  answer the question; is that right?

18  Q.     No.  You can -- and I don't mean to tell you the

19  rules, and I'm sure Mr. McNamara can tell you, but if he

20  instructs you not to answer, then you should not answer.

21  If he objects, he's simply preserving his objection for

22  the record, to be decided upon later, if he chooses to

23  do so.

24         MR. McNAMARA:  That is correct.

25         So you can answer the question.

1          THE WITNESS:  All right.  Please repeat the

2    question he asked earlier.

3    BY MR. STECKLER:

4    Q.      Do you intend to be honest and truthful today in

5    answering the questions that I ask?

6    A.      Yes.  Yes.

7    Q.      I'm going to hand you what we're going to mark

8    as Exhibit Number 1 to your deposition, which is the

9    Notice for your appearance today.  It has certain

10   definitions and instructions as well as topics.

11          (Exhibit 1 was marked for identification.)

12          MR. McNAMARA:  And we will object to the

13   instructions and the definitions.

14          If you want me to give detail, I'm happy to, or

15   if you want me to merely object and then we'll preserve

16   it for later, that's okay with me too.  You can decide.

17          MR. STECKLER:  Counsel, you can do whatever you

18   think is best for your client.  I don't mind you

19   objecting to it, and you can act accordingly under the

20   Rules.

21          MR. McNAMARA:  Okay.  Well, I'll object to the

22   definition of entities related to Taishan on the grounds

23   that I have seen no evidence that --

24          MR. STECKLER:  Hold on.  Hold on.  Hold on.

25   Hold on.  Hold on.

1         You're now at the deposition going to assert

2    your objections to the Notice to the Deposition and the

3    contents of it in detail.

4         Is that your intention here?

5         MR. McNAMARA:  Well, I'm certainly going to give

6    you a couple of details that I think are important so we

7    have a clear record.

8         MR. STECKLER:  Why don't you just object to the

9    Notice, and then if you need to file something later,

10   that's fine.

11        MR. McNAMARA:  Okay.  That's what I was asking

12   you before so --

13        MR. STECKLER:  Okay.  I mean, I just said yeah,

14   you can -- if you want to object to it, that's fine.  I

15   mean, you didn't formally file an objection but I'm sure

16   there are parts of it you can object to.

17        MR. McNAMARA:  You wouldn't file an objection to

18   this anyway.  I don't think that's contemplated by the

19   Rules.

20        MR. STECKLER:  Well, you know what I'm saying.

21   You can actually --

22        MR. McNAMARA:  Yeah.

23        MR. STECKLER:  -- file something but still

24   proceed but -- that is done.

25        MR. McNAMARA:  Well, it's not contemplated.  You

1    just serve an objection, sure.

2         MR. STECKLER:  Mike, you can have the objections

3    at a later time as long as you don't interrupt the time

4    it's going to take to do this deposition.

5         MR. McNAMARA:  Fair enough.

6         MR. STECKLER:  Okay.

7    BY MR. STECKLER:

8    Q.     Have you seen --

9         THE INTERPRETER:  This is the interpreter

10   speaking.

11        Would the interpreter -- like the interpreter to

12   also interpret all the conversation colloquies between

13   the lawyers beside all objections?

14        MR. STECKLER:  I personally don't think it's

15   necessary, but that's your decision, Mike.

16        MR. McNAMARA:  Yeah.  Let's take that one at a

17   time.  And I don't think this one needs to be

18   interpreted so --

19        MR. STECKLER:  Okay.  Fair enough.

20   BY MR. STECKLER:

21   Q.     Have you seen this document before, sir?

22        MR. McNAMARA:  While he's doing that, you had

23   said before you were going to have translations of

24   documents.  Are you going to have a translation of this

25   into Chinese for him?

```
 1              MR. STECKLER:  No.

 2              MR. DAVIDSON:  Bruce, to save you some time, can

 3    we have the usual stipulation that an objection by one

 4    is an objection by all?

 5              MR. STECKLER:  Of course.

 6              MR. DAVIDSON:  Thank you.

 7              MR. STECKLER:  Mike, if it's going to take him

 8    several minutes to review each page of every document,

 9    would it be best to go off the record?

10              MR. McNAMARA:  I'll leave that to you.  I think

11    he's just about done with this one.

12              MR. STECKLER:  Okay.

13              MR. McNAMARA:  I don't know how many long

14    documents you have, but this one is pretty long so I

15    think it's fair for him to do that.

16              MR. STECKLER:  No.  I understand that.  But I

17    just don't want the appearance to be we're here for many

18    hours and he's just spent five to ten minutes reviewing

19    a document.

20              THE WITNESS:  It seems there weren't that much.

21    It seems that I've seen the pages in the front, but

22    there weren't that much.

23    BY MR. STECKLER:

24    Q.     Has this document been translated for you?

25              MR. McNAMARA:  I'm going to object to the form.
```

1           I'm not sure how he would know that necessarily.

2   That would depend on whether he has any knowledge of

3   English.

4           THE WITNESS:  Well, my English is indeed poor.

5   I cannot give you an overall answer on whether I have

6   seen this or not but I have read these pages in Chinese,

7   and these companies have nothing to do with me.

8           Are you trying to say that only if I receive a

9   Chinese translation, I would know upon the translation

10  of names of the company that whether I have anything to

11  do with those companies?

12          Is that what he's trying to say?

13          MR. STECKLER:  Objection.

14          THE WITNESS:  Okay.

15          MR. STECKLER:  Nonresponsive answer.

16  BY MR. STECKLER:

17  Q.      Sir, have you received a translation of this

18  document or not?

19  A.      I said the translation I have received, I'm not

20  sure if it is a complete translation or not, but part of

21  that, yes, I have received.

22          MR. McNAMARA:  So, Bruce, I'll tell you, we

23  translated this and we endeavored to translate the

24  entire thing and give it to him.  I can understand why

25  he's hesitant, because he doesn't speak English, so he's

```
 1   not really sure.

 2           MR. STECKLER:  Fair enough.

 3           MR. McNAMARA:  But, yes, we did --

 4           MR. STECKLER:  Okay.

 5           MR. McNAMARA:  -- translate it for him.

 6           MR. STECKLER:  All right.

 7   BY MR. STECKLER:

 8   Q.      So you understand your counsel says that he has

 9   provided you a translation of this document.

10   A.      Okay.

11   Q.      I'd like you to turn to Page 26 of this

12   document.

13           Do you understand that you've been designated as

14   a witness to give testimony today on behalf of Jushi

15   USA?

16           MS. HUANG:  Jushi USA.

17           MR. McNAMARA:  Object to the form.

18           And, Bruce, can we --

19           THE INTERPRETER:  Jushi USA, yeah.

20           MR. McNAMARA:  Can we be precise?  Jushi USA

21   Fiberglass Company, Limited?

22           MR. STECKLER:  Okay.

23           THE WITNESS:  All right.

24   BY MR. STECKLER:

25   Q.      Do you understand that, sir?
```

Confidential - Subject to Further Confidentiality Review

1   A.      I understand that today I testify on behalf of

2   Jushi USA.  That is correct.

3   Q.      Okay.  How many different entities are

4   associated with Jushi USA Fiberglass Company, Limited?

5           MR. McNAMARA:  Object to the form.

6           THE WITNESS:  What is associated?  Please have

7   him specify associated.

8   BY MR. STECKLER:

9   Q.      Are there any other Jushi USA companies other

10  than Jushi USA Fiberglass Company, Limited?

11          MR. McNAMARA:  Object to the form.

12          THE WITNESS:  No.

13          MR. McNAMARA:  Can you give me a moment to

14  object after she finishes translating, please.

15          THE INTERPRETER:  I'm sorry.  This is the

16  interpreter.

17          Are -- is counsel talking to the interpreter or

18  to the witness?

19          MR. McNAMARA:  I'm talking to him, but can you

20  interpret for me, please.

21          THE INTERPRETER:  Yeah.  Sure.

22  BY MR. STECKLER:

23  Q.      Sir, do you understand when I say "Jushi USA,"

24  I'm referring to during the course of this deposition

25  Jushi USA Fiberglass, Limited?

```
 1            MR. McNAMARA:  Company.

 2   BY MR. STECKLER:

 3   Q.      Company, Limited.

 4   A.      Please repeat.  I still don't understand him.

 5   Q.      During the course of this deposition --

 6            THE INTERPRETER:  The interpreter will repeat.

 7            MR. STECKLER:  I'm sorry.  Thank you.

 8            THE WITNESS:  All right.  Understood.

 9   BY MR. STECKLER:

10   Q.      Are you prepared to testify on behalf of Jushi

11   USA for the topics on Page 26, 27, and 28, of which you

12   have received a translation of from your counsel?

13            MR. McNAMARA:  Bruce, would it be okay if we put

14   our Chinese translation of this document in front of

15   him?

16            MR. STECKLER:  You're welcome to.

17   I --

18            MR. McNAMARA:  Okay.

19            MR. STECKLER:  You want to give us a copy?

20            MR. McNAMARA:  Do you have two copies?

21            MS. HUANG:  Oh.

22            THE WITNESS:  Page 26; right?

23            MR. STECKLER:  Yes.

24            MR. McNAMARA:  We're happy to, given that you're

25   not going to do anything about it.
```

Confidential - Subject to Further Confidentiality Review

```
 1              MR. STECKLER:  Let's take a break.

 2              MR. McNAMARA:  We might have one handy.

 3              VIDEO OPERATOR:  Did you say go off the record?

 4              MR. STECKLER:  Yeah.

 5              VIDEO OPERATOR:  With the approval of counsel,

 6    going off the record.

 7              The time is approximately 9:48 a.m.

 8              (Recess, 9:48-9:56 a.m.)

 9              VIDEO OPERATOR:  With the approval of counsel,

10    back on the record.

11              The time is approximately 9:56 a.m.

12    BY MR. STECKLER:

13    Q.      Sir, are you familiar with the deposition topics

14    on -- in the Notice for your deposition today?

15    A.      May I please have him repeat?  Are you talking

16    about this thing (indicating)?

17    Q.      Yes.

18    A.      Yes, I'm aware of it.

19    Q.      And you're pointing to a translation of the

20    Deposition Notice that's been provided to you by your

21    counsel; correct?

22    A.      Yes.

23    Q.      And your translation provides nine topics that

24    will be discussed during the course of this deposition.

25              Do you understand that?
```

Confidential - Subject to Further Confidentiality Review

1   A.      Yes.

2   Q.      Are you the person with Jushi USA most familiar

3   with these deposition topics?

4           MR. McNAMARA:  Object to the form.

5           THE WITNESS:  Yes.

6   BY MR. STECKLER:

7   Q.      And, sir, with your permission, I'm going to go

8   ahead and mark the translation in front of you as

9   Exhibit 2 to your deposition.

10          MR. STECKLER:  Is that okay, Counsel?

11          MR. McNAMARA:  Yes.

12          MR. GAUGHAN:  Do it 1-A, Bruce.

13          MR. STECKLER:  We'll do it 1-A.

14          (Exhibit 1-A was marked for identification.)

15  BY MR. STECKLER:

16  Q.      In addition, sir, did you have an opportunity to

17  review a translated version of Exhibit 1 to the

18  Deposition Notice, which is Judge Fallon's Minute Entry

19  Orders of July 17th, 2014?

20          MR. McNAMARA:  So, Bruce --

21          THE WITNESS:  Which one --

22          MR. McNAMARA:  Bruce, the answer to that --

23          THE WITNESS:  -- you're referring to, I do not

24  know.

25          MR. McNAMARA:  -- is yes, we have it here.

Confidential - Subject to Further Confidentiality Review

1   BY MR. STECKLER:

2   Q.      Your counsel is going to hand it to you.

3   A.      Yes, I have received this document from my

4   counsel.

5   Q.      Okay.  And when was the first time that you saw

6   Judge Fallon's Minute Entry Order dated July 17, 2014?

7   A.      This document?

8   Q.      Yes, sir.

9   A.      I have received this document from my counsel

10  approximately a few days ago.

11  Q.      And is that the first time that you've ever seen

12  this document?

13  A.      Yes.

14  Q.      Had you ever heard about Judge Fallon's Order of

15  July 17th, 2014, or Minute Entry Order prior to meeting

16  with your counsel a few weeks ago?

17          MS. HUANG:  Days.

18          MR. STECKLER:  A few days ago.  I apologize.

19          Thank you.

20          THE WITNESS:  I do not know.

21  BY MR. STECKLER:

22  Q.      So other than a few days ago, had you ever heard

23  that Judge Fallon had entered an Order against the

24  companies listed in the document in front of you?

25          MR. McNAMARA:  Object to the form.

Confidential - Subject to Further Confidentiality Review

1          THE WITNESS:  I do not know.

2    BY MR. STECKLER:

3    Q.     Are you familiar with China National Building

4    Material Company, Limited?

5    A.     I'm not familiar.

6    Q.     I'm going to refer China National Building

7    Material Company, Limited, as CNBM during this

8    deposition.

9          Do you understand that?

10   A.     What is it called?

11         THE INTERPRETER:  The interpreter will repeat.

12         THE WITNESS:  Okay.  I'm aware of that.

13   BY MR. STECKLER:

14   Q.     Have you ever heard of the company CNBM?

15   A.     I know China National Building Material Company,

16   the name.  I'm aware of the name.

17   Q.     Let me hand you what we're going to mark as

18   Exhibit 2 to your deposition, which is the 2014 annual

19   report of CNBM.  I'm going to provide you the Chinese

20   version and your counsel with the English version.

21         (Exhibit 2 was marked for identification.)

22         (Exhibit 2-A was marked for identification.)

23         MR. McNAMARA:  Do you have any extra copies?

24         So just for clarity, Bruce, are you marking --

25         MR. STECKLER:  I'm marking the whole document as

1   Exhibit Number 2 to the deposition.

2          MR. McNAMARA:  That's what I wanted to --

3          MR. STECKLER:  2-A will be the Chinese

4   translation.

5          MR. McNAMARA:  You mean -- I think you've got it

6   the other way around.

7          MR. STECKLER:  Or the other way around.  You're

8   right.

9          MR. McNAMARA:  Oh, no.  No.  You're right.

10          MS. HUANG:  This one is Chinese.

11          MR. McNAMARA:  2-A is Chinese.

12          MR. STECKLER:  2-A is Chinese, 2 will be the --

13          MR. McNAMARA:  Okay.  So I've got no copy of the

14   English, I've got two copies of the Chinese, I've got --

15          MS. HUANG:  This is English.

16          MR. McNAMARA:  Oh, that's English.

17          THE INTERPRETER:  May I have a copy of the

18   Chinese version as well?  Can I have a copy of

19   everything that deponent has?

20          MR. GAUGHAN:  You want the --

21          THE INTERPRETER:  I have the English one.  Thank

22   you.

23          Counsel, you want to switch with me?  Because

24   this one is marked.

25          MR. McNAMARA:  Oh, I don't need the marked one

Confidential - Subject to Further Confidentiality Review

1    because I don't want to walk away with it.

2          THE INTERPRETER:  You want it?

3          MR. STECKLER:  You can have it.

4    BY MR. STECKLER:

5    Q.    And let me represent to you, sir, the 2014

6    annual report of CNBM has previously been introduced

7    into the record in this case in other matters.

8          Let me ask you to turn to Page 1 of Exhibit 2 to

9    your deposition, sir, which is the contents.

10   A.    The contents?

11   Q.    Have you ever seen this document before?

12   A.    No.

13   Q.    And you'll notice in the contents it talks about

14   corporate profile, corporate information, definitions,

15   shareholding structure of the group, financial

16   highlights, et cetera.

17         Do you see that, sir?

18         MR. McNAMARA:  Object to the form.

19         THE WITNESS:  Are you referring to -- may I mark

20   on it?

21         MR. STECKLER:  Yes.

22         THE WITNESS:  Was counsel asking me the four

23   items on the document he had provided, which are

24   corporate profile, corporate information, definitions,

25   shareholding structures of the group?

Confidential - Subject to Further Confidentiality Review

```
 1              MR. STECKLER:  Yes.

 2   BY MR. STECKLER:

 3   Q.      Do you see that?

 4   A.      I see those four items --

 5   Q.      Okay.

 6   A.      -- on the contents.  Yes, I see them.

 7   Q.      In addition, one of the contents provides

 8   biographical details of directors, supervisors, and

 9   senior management; correct?

10   A.      I see that on the contents page, yes.

11   Q.      Have you ever reviewed this document in total

12   before?

13              MR. McNAMARA:  Hold on.

14              Object to the form.  Asked and answered.

15              THE WITNESS:  I have just seen the document when

16   you hand it over to me a few more minutes -- a few

17   moments ago.  I have not seen this document before.

18   BY MR. STECKLER:

19   Q.      I'd like you to look at the definitions, please,

20   on Page 7.

21              MR. McNAMARA:  Object to the form.

22              MR. STECKLER:  I haven't asked a question.  I

23   asked him to look at the definitions, Counsel.

24              MR. McNAMARA:  And I object to the form.

25              MR. STECKLER:  Okay.
```

Confidential - Subject to Further Confidentiality Review

1    BY MR. STECKLER:

2    Q.       Do you see the definition of China Fiberglass as

3    China Fiberglass Company, Limited?

4    A.       On Page 7 of the report he just provided I see

5    China Fiberglass refers to China Fiberglass Company,

6    Limited.  Yes, I see that.

7    Q.       Is that the company that you hold shares in?

8    A.       I am confused.  It says here China Fiberglass

9    and China Jushi, it's referring to China Jushi Company,

10   Limited, formerly known as China Fiberglass.  It should

11   be referring to the latter one.  I have approximately

12   0.6 percent of shares in China Jushi Company, Limited.

13   Q.       Which was formerly known as China Fiberglass; is

14   that correct?

15   A.       Yes.

16   Q.       And you understand when we refer to China Jushi

17   in the deposition, we're going to be referring to China

18   Jushi Company, Limited, formerly known as China

19   Fiberglass.

20   A.       Yes.

21   Q.       Under the definitions on Page 8 it talks about

22   company or CNBM.

23           Do you see that?

24   A.       There is no CNBM.  Where is CNBM?

25           MS. ZHANG:  (In Chinese.)

```
 1            THE WITNESS:  Oh, Chinese.  Right.  I was

 2   looking in the English version.  I couldn't find it.

 3            There are a lot of Chinese National Building

 4   Material companies.  I don't -- I don't know which one

 5   you're referring to.

 6   BY MR. STECKLER:

 7   Q.      Sir, you have the Chinese version in front of

 8   you, don't you?

 9   A.      Yes.

10   Q.      Okay.  And if we look down on the sixth

11   definition, it talks about company or CNBM and defines

12   it as China National Material Company -- China National

13   Building Material Company, Limited.

14            Do you see that?

15   A.      I see that.

16   Q.      Do you see the definition of controlling

17   shareholder.

18   A.      Item Number 9?

19   Q.      Yes.

20   A.      I see that.

21   Q.      And do you see that it says, controlling

22   shareholder will have the meaning ascribed thereto under

23   the listing rules?

24   A.      I see that.

25   Q.      Okay.  If you turn now to the next page, Page
```

Confidential - Subject to Further Confidentiality Review

1    10, the listing rules are defined as the rules governing

2    the listing of securities on the Stock Exchange, as

3    amended from time to time.

4           Do you see that?

5           MR. McNAMARA:  Object.  Object to the form.

6           THE WITNESS:  Is it that one?

7    BY MR. STECKLER:

8    Q.      It's four, the fourth one down, sir.

9    A.      Yes, I see that.

10   Q.      Okay.  And so if we want to find the meaning of

11   controlling shareholder on Page 8, we would need to look

12   at the listing rules that govern the securities on the

13   Stock Exchange, as amended from time to time.

14          Is that your understanding?

15          MR. McNAMARA:  Object to the

16   form.

17          Bruce, he testified he's never seen this

18   document before.

19          THE WITNESS:  It is beyond my capacity as of

20   this part.

21   BY MR. STECKLER:

22   Q.      Are you unable to understand that the listing

23   rules would provide the definition of controlling

24   shareholder?  Is that your testimony?

25          MR. McNAMARA:  Object to the form.

Confidential - Subject to Further Confidentiality Review

```
1            THE WITNESS:  Say again?  What was he asking me?

2            THE INTERPRETER:  The interpreter will

3    reinterpret.

4            THE WITNESS:  Because I've never studied this at

5    all, I can only answer that when he provided me with

6    this and asked me if I have seen this, I say I have seen

7    this.

8    BY MR. STECKLER:

9    Q.      Does it say that the meaning ascribed to

10   controlling shareholder can be found in the listing

11   rules in the document in front of you?

12           MR. McNAMARA:  Object to -- object.  Object to

13   the form.

14           THE WITNESS:  I don't understand.  I really

15   don't understand.  What does he mean?

16   BY MR. STECKLER:

17   Q.      You don't under -- do you know where to find the

18   definition or the meaning of controlling shareholders,

19   based upon the definitions on Page 8?

20           MR. McNAMARA:  Object to the form.

21           THE WITNESS:  It says here controlling

22   shareholder is referring to, has the meaning ascribed

23   thereof -- thereto under the listing rules.

24   BY MR. STECKLER:

25   Q.      So if I wanted to find the meaning of
```

Confidential - Subject to Further Confidentiality Review

1    controlling shareholder, I would have to look at the

2    listing rules.

3           Is that your understanding, sir?

4           MR. McNAMARA:  Object to the form.

5           THE WITNESS:  The company is China National

6    Building Material and then the controlling shareholder

7    has the meaning ascribed thereto under the listing

8    rules.

9           Controlling shareholder has the meaning ascribed

10   thereto under the listing rules, the rules governing the

11   listing of securities on the Stock Exchange.  I do not

12   understand the listing rules.  I just see that's what it

13   says here.

14          MR. STECKLER:  Right.

15   BY MR. STECKLER:

16   Q.     Assume with me that under Chapter 19A.14 of the

17   listing rules, a controlling shareholder means any

18   shareholder or other person or group of persons together

19   entitled to exercise or control the exercise of 30

20   percent or more of the voting power at general meetings

21   or who is in the position to control the composition of

22   the majority board of directors as a controlling

23   shareholder.

24          THE INTERPRETER:  May the interpreter know where

25   the counsel is reading from?

Confidential - Subject to Further Confidentiality Review

1          MR. STECKLER:  The listing rules.

2          MR. McNAMARA:  Can we see them?

3          MR. STECKLER:  Do you need to see them or can

4    you not look at the English that I just read from the

5    deal?  I'm not going to make them an exhibit.

6          MR. McNAMARA:  Well --

7          THE INTERPRETER:  Oh, yes, I could do that, but

8    there usually is the script with the translation.  I

9    thought that --

10          MR. STECKLER:  I don't have a translated

11    version.

12          THE INTERPRETER:  -- oral translation and --

13          MR. STECKLER:  Okay.  I'm happy to hand it to

14    the translator.

15          MR. McNAMARA:  Bruce, but --

16          THE INTERPRETER:  There's no translation?

17          MR. McNAMARA:  But hold on.

18          MR. STECKLER:  We --

19          MR. McNAMARA:  No, I have no idea what you're

20    talking about.  Are you referring to something

21    that you're going to take the position as a law you've

22    asked him to assume something?

23          MR. STECKLER:  Yes.  I'm asking him to assume

24    this definition, then I'm going to ask him questions

25    about it.

Confidential - Subject to Further Confidentiality Review

 1            MR. McNAMARA:  Based on what you assume, you --

 2            MR. STECKLER:  Right.  You're welcome to object.

 3    Feel free.

 4            Thank you.

 5            THE INTERPRETER:  The interpreter finished her

 6    interpretation.  Is there a question pending?

 7            MR. McNAMARA:  Yes.  Well, there's an objection.

 8    Beyond the scope of the Notice, well beyond it, and lack

 9    of foundation and improper assumption.

10    BY MR. STECKLER:

11    Q.     Do you understand when I refer to controlling

12    shareholder, that's the definition that I'm going to be

13    using?

14            MR. McNAMARA:  Same objection.

15            THE WITNESS:  Having said so much, I still do

16    not understand.

17            Do you have the translation of what he had just

18    said in this booklet?

19    BY MR. STECKLER:

20    Q.     I'm asking you to assume the definition of

21    controlling shareholder.

22            Do you understand that?

23            MR. McNAMARA:  Same objections.

24            THE WITNESS:  Because I knew nothing about the

25    definition of controlling shareholder before he had said

Confidential - Subject to Further Confidentiality Review

1    what he said; therefore, it is impossible for me to

2    understand; therefore, I do not know how to answer his

3    question.

4    BY MR. STECKLER:

5    Q.     I'm asking -- I'm telling you that the

6    definition of controlling shareholder that I will be

7    using today has the meaning that it is a person or group

8    of persons that exercise or control 30 percent more of a

9    company.

10          MR. McNAMARA:  I'll object on the same grounds

11   and add that it calls for a legal conclusion.

12          THE WITNESS:  Is he trying to have me answer

13   whether it is correct or not in regard to 30 percent

14   issue?

15          MR. STECKLER:  No; unless you're an expert in

16   the definition of controlling shareholder on the listing

17   exchange for Hong Kong.

18          MR. McNAMARA:  Bruce, why don't you just ask

19   him --

20          THE WITNESS:  I don't understand you.

21          MR. McNAMARA:  Why don't you ask him if it has

22   more than 30 percent?

23          MR. STECKLER:  Why don't you not

24   tell me how to do the deposition?  Okay?  And

25   let me go through this.

Confidential - Subject to Further Confidentiality Review

1          MR. McNAMARA:  Well, I just wanted to be fair.

2    And when you try to insert a definition that he's not

3    familiar with and obviously is uncomfortable with, it --

4    it's not fair.

5          MR. STECKLER:  I appreciate what you're

6    saying, but I'm going to be using terms today and you

7    will be objecting to every term until we have an

8    understanding.  I've been down this road before.

9          So when I use the term "controlling

10   shareholder," I'm telling him what I mean.  That's all

11   I'm doing.  I'm not asking him whether he agrees or

12   disagrees because I understand that he's not an expert

13   in the Hong Kong Exchange.  Okay?

14         MR. McNAMARA:  So is that a question?

15         MR. STECKLER:  I'm telling you that.

16   BY MR. STECKLER:

17   Q.     Sir, you're not an expert in the listing rules

18   of the Hong Kong Exchange, are you?

19   A.     I'm not.

20   Q.     Okay.  Do you see on Page 10 where it indicates

21   the name Jushi Group as Jushi Group Company, Limited?

22   A.     Yes, I see that on Item 2.

23   Q.     Yes.  Are you familiar with that company, sir?

24   A.     Yes.

25   Q.     And what is that company?

Confidential - Subject to Further Confidentiality Review

```
 1   A.      Jushi Group is the 100 percent parent company of

 2   Jushi USA.

 3   Q.      If we now look at Page 13, do you see where it

 4   says "Shareholding Structure of the Group"?

 5           MR. McNAMARA:  I'm going to object to the form.

 6           MR. STECKLER:  What's the basis?

 7           MR. McNAMARA:  He's never seen this document

 8   before.  You're asking him --

 9           MR. STECKLER:  I'm asking him if he sees on the

10   page where it says that.

11           MR. McNAMARA:  Right.  I see that.  But what's

12   the relevance of this document?

13           MR. STECKLER:  You can have -- I'll tell you

14   what:  You can have a continuing objection about this

15   document.  Okay?

16           MR. McNAMARA:  Okay.

17           MR. STECKLER:  Thank you.

18           MR. McNAMARA:  So --

19   BY MR. STECKLER:

20   Q.      Do you --

21           MR. McNAMARA:  So to the extent, just so

22   we're clear on the record, to the extent you ask

23   questions about anything in this document, I have a

24   continuing objection that --

25           MR. STECKLER:  That he's never seen it before.
```

Confidential - Subject to Further Confidentiality Review

1          MR. McNAMARA:  -- he's never seen it --

2          MR. STECKLER:  I --

3          MR. McNAMARA:  -- and there's no foundation for

4   anything.

5          MR. STECKLER:  I think he's testified to that.

6          MR. McNAMARA:  Okay.

7          MR. STECKLER:  And I think that it's interesting

8   that he's never seen it before, too, and I'm fine with

9   that.  Thank you.

10          THE INTERPRETER:  This is the interpreter

11   speaking.

12          Would counsel let the interpreter know if

13   counsels need the interpreter to interpret counsel's

14   objections?

15          MR. McNAMARA:  Yes, I think you should interpret

16   that.

17          THE INTERPRETER:  From?  Starting from?

18          MR. STECKLER:  Well, no, no, no.  I don't think

19   it's proper to be interpreting speaking objections.

20          MR. McNAMARA:  You asked me the basis.  That's

21   not a speaking objection.

22          MR. STECKLER:  Okay.  I did.  Fair enough.  Then

23   he's -- you're welcome to translate that.

24          MR. McNAMARA:  Back to when I objected to the

25   form and he asked me from the -- for the basis of the

Confidential - Subject to Further Confidentiality Review

1    objection.

2         THE INTERPRETER:  The interpreter finished her

3    interpretation.

4    BY MR. STECKLER:

5    Q.     Sir, do you see where it says "Shareholding

6    Structure of the Group" at the top of Page 13?

7    A.     Yes, I see that.

8    Q.     And if we look at Page 9 of the annual report,

9    group on the second line is defined as the company and,

10   except where the context otherwise requires, all its

11   subsidiaries.

12         Do you see that, sir?

13   A.     I see that.

14   Q.     And if you look on Page 8, company is defined as

15   CNBM, or China National Building Material Company,

16   Limited; correct?

17   A.     I see that.

18   Q.     Now, let's go to Page 13, sir.

19         This Shareholding Structure of the Group

20   indicates what percentage does the company own of China

21   Jushi?

22   A.     Is he asking me?

23   Q.     Yes.

24   A.     What company are you asking?

25   Q.     Do you see where it says "Company" at the top of

 1   this page, sir?

 2   A.      Parent company.

 3   Q.      No.  Where it says "Company," not parent.

 4           MS. HUANG:  (In Chinese.)

 5           MS. ZHANG:  If you don't mind?  Parent company.

 6           MR. STECKLER:  No.  Underneath it it says --

 7   yes.

 8   BY MR. STECKLER:

 9   Q.      Do you see that, sir?

10   A.      It says this company, yes.

11   Q.      Company.

12           And we know from the definitions that's CNBM;

13   correct?

14   A.      China Building Material.  Where is it?  I see --

15   Q.      On Page 8.

16   A.      -- the word "company" --

17   Q.      Yes.

18   A.      Company.

19   Q.      And we know from the definitions that that

20   company means CNBM; correct?

21   A.      I -- I believe so, but I don't see it here.

22   Q.      Well, let's go to the definitions again, sir, on

23   Page 8.

24   A.      Yeah.

25   Q.      Do you see where it says company would be the

Confidential - Subject to Further Confidentiality Review

1   same as CNBM?  The fifth one down, I believe?  Sixth one

2   down, I think.

3   A.      Yes.

4   Q.      Okay.

5   A.      Yes.

6   Q.      So on Page 13 under "Shareholding Structure of

7   the Group," what percentage does CNBM own of China

8   Jushi?

9   A.      The word is really small.  It seems to be 33 or

10  something like that.  I can't read it clearly.

11  Q.      Does it appear to be 33.82 percent?

12          MR. McNAMARA:  I think you might need to lend

13  him your glasses.

14          THE WITNESS:  Yes, that appears to be so.

15          MR. STECKLER:  Okay.

16          THE WITNESS:  Too small.  Too small.

17          MR. STECKLER:  All right.

18  BY MR. STECKLER:

19  Q.      And what percentage of China Jushi owns Jushi

20  Group, sir?

21  A.      100 percent.

22  Q.      Would you agree, based upon the definitions we

23  talked about earlier, that CNBM is the controlling

24  shareholder of China Jushi?

25          MR. McNAMARA:  Object to the form.

Confidential - Subject to Further Confidentiality Review

1          MR. DAVIDSON:  Objection.  Beyond the scope.

2          THE WITNESS:  First of all, this report which

3     handed over to me by this counsel is seen by me for the

4     first time.

5          Second of all -- second of all, he gave you a

6     word, it says something to the extent that above 30

7     percent of something, then you would be the controlling

8     party or something like that.

9          Number 3, based on what he had provided, based

10    on what he has said, and based on what he had asked me,

11    according to the document he had provided, what he said

12    about controlling shareholder is correct.

13    BY MR. STECKLER:

14    Q.    So based upon my definition, looking at Page 13,

15    it appears that CNBM is the controlling shareholder of

16    China Jushi; is that right?

17         MR. McNAMARA:  Object to the form.

18         THE WITNESS:  I cannot decide whether or not it

19    is correct, based on my level of understanding, but

20    according to the document he had provided, based on all

21    the information that attorney had provided, what he said

22    is correct.

23         MR. STECKLER:  Okay.

24         Nonresponsive except for where it begins, based

25    on the information.

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. STECKLER:

 2   Q.      Does it appear that China Jushi, by my

 3   definition, is the controlling shareholder of Jushi

 4   Group?

 5   A.      Say again?

 6           THE INTERPRETER:  The interpreter will repeat.

 7           THE WITNESS:  Yes.

 8   BY MR. STECKLER:

 9   Q.      And Jushi Group is the parent of Jushi USA; is

10   that right?

11   A.      Yes.

12           MR. STECKLER:  We're going to go to 2643.

13           (Exhibit 3 was marked for identification.)

14           MR. McNAMARA:  So your sticker was a little

15   bit --

16           MR. GAUGHAN:  A little bit.

17           MR. McNAMARA:  Well, I -- yeah.

18           MR. STECKLER:  Can I have the number?

19           MR. GAUGHAN:  Three.

20   BY MR. STECKLER:

21   Q.      Sir, I'm going to hand you what I've marked as

22   Exhibit Number 3 to your deposition.

23           THE INTERPRETER:  Do you have one for --

24           MR. STECKLER:  Translation for him?

25           MR. GAUGHAN:  We don't have a translation.
```

Confidential - Subject to Further Confidentiality Review

1          THE INTERPRETER:  Do you have another one for

2   the witness or for the interpreter?

3          MR. GAUGHAN:  I gave you the marked copy

4   and then --

5          MR. McNAMARA:  Here.

6          So am I right?  You only have this version, you

7   don't have a translated version?

8          MR. STECKLER:  Well, you'll look on Page 2 of

9   Exhibit 3, there is in -- it is in Chinese; am I

10  correct?

11         MR. McNAMARA:  Right.  But --

12         MR. STECKLER:  And on Page 3 it's also in

13  Chinese.

14         MR. McNAMARA:  Right.  But my question is --

15         MR. STECKLER:  And the first page did not have

16  any translation.

17         MR. McNAMARA:  No.  I understand that, Bruce.

18         MR. STECKLER:  And this -- and let me just go

19  through this.  So this is what we have.

20         MR. McNAMARA:  Okay.  So there's no -- you don't

21  have a copy that's going to --

22         MR. STECKLER:  Right.

23         MR. McNAMARA:  -- translate what I see as

24  English here --

25         MR. STECKLER:  Not for --

Confidential - Subject to Further Confidentiality Review

```
 1          MR. McNAMARA:  -- into Chinese.

 2          MR. STECKLER:  Not for this -- not for these --

 3   this exhibit.

 4          MR. McNAMARA:  Okay.

 5          MR. STECKLER:  We have for others.

 6          MR. McNAMARA:  Okay.

 7          MR. STECKLER:  Okay.

 8   BY MR. STECKLER:

 9   Q.     Have you --

10          MR. STECKLER:  I'm sorry.

11   BY MR. STECKLER:

12   Q.     Have you ever seen Exhibit 3 before?

13   A.     I have seen this page, but I did not pay

14   attention to the last page.  But I have seen this page.

15   Q.     Okay.  And this is a page Bates stamped

16   J-USA-0002643 to, and then it's subparts, 0002643.0003

17   (sic).

18          Do you see that?

19          MR. McNAMARA:  Bruce, I don't think he knows

20   what a Bates stamp is.

21          MR. STECKLER:  I'm doing it for the record.

22   It's not -- I know.

23          THE WITNESS:  Yes, I see that.

24          MR. STECKLER:  Okay.

25   BY MR. STECKLER:
```

Confidential - Subject to Further Confidentiality Review

```
 1   Q.      When you see those stamps at the bottom, that's

 2   going to indicate it's a document that has been produced

 3   to us by your counsel in connection with the request to

 4   the Notice for your deposition.

 5           Do you understand that?

 6   A.      I'm aware of that.

 7   Q.      Okay.  I'm going to use the term "business

 8   record" during the course of this deposition.

 9           Do you understand that?

10   A.      Say again?

11           THE INTERPRETER:  The interpreter will repeat.

12   BY MR. STECKLER:

13   Q.      I'm going to be using during the course of this

14   deposition the term "business record."

15           Do you understand that?

16   A.      I do not quite understand "business record."

17   Q.      When I use the term "business record" in this

18   deposition, that will mean a record that has been kept

19   in the ordinary course of business of Jushi USA that was

20   made at or near the time in which it is dated or by

21   someone with knowledge from the company and it was kept

22   in the regular practice of your business and it was not

23   altered by anybody.

24           Do you understand that?

25   A.      I understand.
```

Confidential - Subject to Further Confidentiality Review

 1   Q.      Yeah.  So is the exhibit that I've provided to

 2   you a business record of Jushi USA?

 3   A.      Yes.

 4   Q.      Okay.  I would like you to turn to the second

 5   page of Exhibit Number 3.

 6           Who is Ellie Shen?

 7   A.      She is a salesperson of Jushi Group in China.

 8           THE INTERPRETER:  The interpreter just inquired

 9   of the witness whether Ellie is male or female.  The

10   witness said she is female.

11   BY MR. STECKLER:

12   Q.      Who is Alan Gardiner?

13   A.      He is a COO -- COO of Jushi USA who had left the

14   employment and went back to Canada at present.

15   Q.      And you are copied on this E-mail; correct?

16   A.      Yes.

17   Q.      And who is Guoming Shen and Yang Li?

18   A.      Guoming Shen is a person in the strategic

19   department of Jushi Group.  The person after, Yang Li, I

20   do not know who this person is.

21   Q.      This E-mail is in both Chinese and English.

22           Do you see that?

23           MR. McNAMARA:  Object.

24           Sorry.

25           Object to the form.

Confidential - Subject to Further Confidentiality Review

```
 1          THE WITNESS:  Yes, I see that.

 2   BY MR. STECKLER:

 3   Q.     Could you read the E-mail in Chinese, please.

 4          MR. McNAMARA:  Just -- you're assuming -- I'm

 5   just --

 6   BY MR. STECKLER:

 7   Q.     Not for the record.  Just can you read it,

 8   please.

 9          MR. McNAMARA:  Okay.  But you're asking him to

10   read the portion of it that's in Chinese.

11          MR. STECKLER:  Yes.

12          MR. McNAMARA:  Okay.

13          THE WITNESS:  As you may know, Jushi Group is a

14   wholly owned subsidiary of China Fiberglass.  While the

15   controlling shareholder of China Fiber Class -- glass is

16   China National Building Materials Group Corporation,

17   therefore, Jushi Group is a state-owned company.

18   Currently CNBM requires its subsidiaries to review the

19   legal status of their subsidiaries and asked the

20   subsidiaries to provide some documents.

21          MR. DAVIDSON:  Object to the translation.

22          MR. McNAMARA:  Yeah.  Object to the translation

23   and, in particular, the word "controlling."

24          That is not what it says.  That is not what he

25   said.
```

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. STECKLER:

 2   Q.      Sir --

 3           THE INTERPRETER:  The --

 4           MR. STECKLER:  I'm sorry.  Go ahead.  Wait.

 5   Hold on.  You just --

 6           THE INTERPRETER:  The interpreter is reading

 7   from the document as it has been translated in the

 8   document, as has been stipulated before in other

 9   depositions.  I don't know.

10           MR. McNAMARA:  No, we did not stipulate to this

11   deposition.

12           So I expected that you were --

13           THE INTERPRETER:  So what do you want the

14   interpreter to do?

15           MR. McNAMARA:  Interpret what he read in

16   Chinese.

17           MS. HUANG:  Right.

18           MR. McNAMARA:  Do not read to us what

19   is written in English.

20           MS. HUANG:  Right.

21           THE INTERPRETER:  Okay.  There are --

22           MR. STECKLER:  This --

23           THE INTERPRETER:  -- many ways to interpret the

24   same word in Chinese.  So my interpretation may be

25   different from what had been translated in the written
```

 1   document but it may mean the same thing.  That's why

 2   it's been stipulated to read from it and then you, both

 3   counsels and both parties --

 4         MR. McNAMARA:  Right.

 5         MS. HUANG:  So we would --

 6         THE INTERPRETER:  -- can agree with the

 7   translator or not agree afterwards to avoid confusion.

 8         MR. STECKLER:  You are welcome to object to

 9   the --

10         MS. HUANG:  Please.

11         MR. STECKLER:  Hold on.  Excuse me.

12         You are welcome to object to the translation.

13   She translated what he read according to her

14   translation.

15         MR. McNAMARA:  I think we need clarity

16   on that because I don't think that's what happened.  I

17   think she read the English.

18         MS. HUANG:  Yeah.

19         MR. McNAMARA:  I think she had the

20   understanding --

21         THE INTERPRETER:  The interpreter read the

22   English.

23         MR. McNAMARA:  She had the understanding that

24   we had stipulated to that.

25         MS. HUANG:  She read the English in the E-mail.

Confidential - Subject to Further Confidentiality Review

```
 1              THE INTERPRETER:  Yes.  Because when -- when the

 2    written translation is presented to the interpreter, the

 3    interpreter would need some time --

 4              MR. McNAMARA:  Uh-huh.

 5              THE INTERPRETER:  -- not on the spot, to

 6    translate the document rather than reinterpret it on

 7    spot, because it's a written document, requires written

 8    translations.  Both parties should agree with the

 9    written translation before the interpreter -- asking the

10    interpreter to interpret on spot.  The interpreter will

11    need some time to translate the document --

12              MR. McNAMARA:  I understand.

13              THE INTERPRETER:  -- and certify it if that's

14    the case.

15              MR. McNAMARA:  That makes sense.

16              This is not a certified translation.  I think

17    there's been a --

18              MR. STECKLER:  Okay.

19              MR. McNAMARA:  -- miscommunication because it

20    was --

21              MR. STECKLER:  Understood.

22              MR. McNAMARA:  -- it was presented as if she

23    was --

24              MR. STECKLER:  Okay.

25              MR. McNAMARA:  -- interpreting what he had said
```

Confidential - Subject to Further Confidentiality Review

1    when, in fact, she had thought we were -- we had already

2    stipulated to it.

3           So I think if that's what you want, Bruce, I

4    suggest that you have him read it in Chinese again and

5    then have her interpret what he said, as opposed to

6    reading what's on the document.

7           MR. STECKLER:  Well, you know what?  The

8    document speaks for itself.

9    BY MR. STECKLER:

10   Q.      Sir, this is a document that's a business record

11   of Jushi USA; correct?

12   A.      Yes.  It is a document sent from China to the

13   United States.

14   Q.      And it's been sent by Ellie Chen of Jushi to you

15   and some other members of Jushi USA; correct?

16   A.      Yes.

17   Q.      And it indicates that Jushi Group is a wholly

18   owned subsidiary of China Fiberglass; correct?

19   A.      Yes.

20   Q.      And the document indicates that the controlling

21   shareholder of China Fiberglass is China National

22   Building Materials Group Corporation.

23          Do you see that?

24          MR. McNAMARA:  Object to the form.

25          I'll object to the form.

Confidential - Subject to Further Confidentiality Review

```
 1              THE WITNESS:  That's incorrect.  It says biggest

 2    shareholder but what you just said is controlling

 3    shareholder.

 4    BY MR. STECKLER:

 5    Q.      So China National Building Materials,

 6    CNBM, is the biggest shareholder of China Fiberglass.

 7            Is that what it says?

 8    A.      Yes.  China Fiberglass is a public listing

 9    company; therefore, it is a public listing company, not

10    a private company.  CNBM is only one of its shareholder,

11    its biggest shareholder.

12    Q.      Do you recall looking at the annual report of

13    2014 that's in front of you, sir?

14    A.      I see that.

15    Q.      Do you want -- I would like you to look at Page

16    8.

17              MR. McNAMARA:  Are you going to ask him about

18    the report or should he put it away?

19              MR. STECKLER:  You know what?  I'm trying to

20    figure this out with the characters, but --

21              MR. McNAMARA:  Okay.

22    BY MR. STECKLER:

23    Q.      Sir, who is Ellie Shen again?

24    A.      Where is it?

25    Q.      On your E-mail.
```

Confidential - Subject to Further Confidentiality Review

```
1   A.      She is an employee of China Jushi Group.

2   Q.      Which is the parent company of Jushi USA.

3   A.      Yes.

4   Q.      And does it say at the bottom that CNBM is

5   requiring its subsidiaries to review the legal status of

6   their subsidiaries?

7           MR. McNAMARA:  Are you asking him to read the

8   Chinese or read English?

9           MR. STECKLER:  I'm asking him if it says that.

10          THE WITNESS:  Based on the document written by

11  Ellie, an employee of Jushi Group, this Ellie wrote that

12  China Building Material is asking some documents from

13  its controlling subsidiaries.

14  BY MR. STECKLER:

15  Q.      And is it asking that the subsidiaries it

16  controls get information from their subsidiaries?

17  A.      I think people have different understandings in

18  the word "controlling."

19          China Fiberglass is a public listing company in

20  Shanghai.  It is a public company.

21          MR. STECKLER:  Object as nonresponsive.

22  BY MR. STECKLER:

23  Q.      Sir, I asked you if CNBM, as the controlling

24  company, is asking whether its subsidiaries and their

25  subsidiaries provide documents to them.
```

Confidential - Subject to Further Confidentiality Review

1           MR. McNAMARA:  Object to the form.

2           THE WITNESS:  I have been emphasizing all along

3   that it is not the controlling company but if, based on

4   this document, which is an E-mail written by an employee

5   and in connection to the question he had just asked,

6   that is correct.

7   BY MR. STECKLER:

8   Q.      So this E-mail does say that CNBM controls its

9   subsidiaries; correct?

10          MR. McNAMARA:  Object to the form.

11          THE WITNESS:  I have just said that's the

12  meaning of -- of what is written in this document.

13  BY MR. STECKLER:

14  Q.      And we talked about the definition of

15  controlling shareholder earlier that I gave you;

16  correct?

17          MR. McNAMARA:  Object to the form.

18          THE WITNESS:  Say again?  I didn't hear it

19  clearly.

20          Is he talking about this is a controlling

21  company and he had given me the definition of it?

22          MR. STECKLER:  Let me ask the question again.

23  BY MR. STECKLER:

24  Q.      Based upon the 2014 annual report, CNBM was a

25  controlling shareholder of China Jushi; correct?

Confidential - Subject to Further Confidentiality Review

```
 1              MR. McNAMARA:  Object to the form.

 2              Hold on.

 3              Object to the form.

 4              You can answer.

 5              THE WITNESS:  Based on the annual reports you

 6    had -- he had just handed over to me and based on what

 7    it says in it, that's correct.

 8    BY MR. STECKLER:

 9    Q.      And under the 2014 report, China Fiberglass --

10    China Jushi was formerly known as China Fiberglass;

11    correct?

12    A.      Correct.

13    Q.      And if we go to the first page of this E-mail,

14    which is in March 2nd of 2015, it's from Sara Szutu to

15    Tiffany Chen.

16              Do you see that?

17    A.      I see that.

18    Q.      Right.

19              Who is Tiffany Chen?

20    A.      Tiffany Chen is CFO of Jushi USA.

21    Q.      And who is Sara Szutu?

22    A.      She's an employee of Jushi USA.

23    Q.      And this E-mail was forwarded to both of those

24    employees; correct?

25    A.      Forwarded to?  Are you referring to me or
```

Confidential - Subject to Further Confidentiality Review

1   someone else?

2   Q.      Does the E-mail indicate that Sara Szutu

3   forwarded the E-mails below to Tiffany Chen and Erica

4   Lin?

5   A.      Szutu sent to them and then -- Szutu sent to

6   them.  Was I copied too?  It was copied to many people;

7   right?

8   Q.      You were copied on the E-mails on Exhibit 3,

9   weren't you?

10          MR. McNAMARA:  Object to the form.

11          THE WITNESS:  Yes.

12          MR. STECKLER:  Okay.

13  BY MR. STECKLER:

14  Q.      And were you aware that --

15          MR. STECKLER:  Is it Guoming Shen?

16          MS. ZHANG:  Guoming Shen.

17  BY MR. STECKLER:

18  Q.      -- that Guoming Shen told Ellie Shen and Alan

19  Gardiner that it was urgent and important work required

20  by CNBM to get information regarding the legal status of

21  the subsidiaries of Jushi Group?

22          MR. McNAMARA:  Objection to form.

23          THE WITNESS:  I don't see Guoming Shen's E-mail

24  here.

25          MR. STECKLER:  Okay.

```
1    BY MR. STECKLER:

2    Q.      Do you read English at all, sir?

3    A.      Yes, I do.  I do, but --

4    Q.      Okay.

5    A.      -- not comprehensively.

6    Q.      Okay.  Could you read after it says "Dear Alan"

7    in English what is written here, as best you can?

8            THE INTERPRETER:  This is the interpreter

9    speaking.

10           I assume the interpreter will be asked to

11   translate or interpret what the deponent said.  So is

12   there a stipulation or the interpreter would --

13           MR. STECKLER:  I'm --

14           THE INTERPRETER:  -- interpret what the deponent

15   said?

16           MR. STECKLER:  I don't think it needs

17   interpretation.  I'm asking him for his English, as best

18   as he can, to read what it says here.

19           MR. McNAMARA:  So you want him to read it in

20   English.

21           MR. STECKLER:  In English.

22           THE WITNESS:  This sentence?

23           MR. STECKLER:  Yes, sir.

24           THE WITNESS:  (In English)  Dear Alan, this is

25   urgent and important work required by CNBM.  P-L-S help
```

Confidential - Subject to Further Confidentiality Review

1   try to finish it ASAP.

2   BY MR. STECKLER:  (Through the interpreter)

3   Q.     What does that mean to you, sir?

4   A.     It's very urgent and important work that

5   required by CNBM.  Please try to -- try to finish it as

6   fast as you can.

7   Q.     And do you understand what information CNBM is

8   asking for?

9   A.     At the time I did not pay attention to these

10  issues.

11  Q.     Would you look at this and let me know what CNBM

12  is asking for, sir.

13  A.     It asks two things:  First of all, legal opinion

14  letter and -- and the company's registration

15  information.

16  Q.     And why are they asking Jushi USA to provide

17  that?

18         MR. McNAMARA:  Object to the form.

19  BY MR. STECKLER:

20  Q.     If you know.

21  A.     I do not know.

22  Q.     Did you comply or did the company comply with

23  this request?

24  A.     We did this in compliance with the requirement

25  of S-H-E-N, space, G-U-O-M-I-N-G of China Jushi Group.

Confidential - Subject to Further Confidentiality Review

```
 1          MR. McNAMARA:  Bruce --

 2          MR. STECKLER:  Do you want to take a break?

 3          MR. McNAMARA:  I need a break, yeah.

 4          MR. STECKLER:  Sure.

 5          VIDEO OPERATOR:  With the approval of counsel,

 6  going off the record.

 7          The time is approximately 11:16 a.m.

 8          (Recess, 11:16-11:28 a.m.)

 9          VIDEO OPERATOR:  With the approval of counsel,

10  back on the record.

11          The time is approximately 11:28 a.m.

12          This marks Recording Media File 2.

13          MR. STECKLER:  What exhibit are we on, please?

14          MR. GAUGHAN:  Four.

15          MR. STECKLER:  Okay.

16          (Exhibit 4 was marked for identification.)

17          (Exhibit 4-A was marked for identification.)

18  BY MR. STECKLER:

19  Q.    Sir, I'm now going to hand you what's Exhibit

20  Number 4 to your deposition, which I will represent to

21  you is the China Jushi Company, Limited, annual report

22  for the year 2014 in Chinese and I'm also going to

23  provide a translation of it to your counsel, at least

24  the relevant portions that we're going to discuss.

25          MR. GAUGHAN:  Four is actually the translation.
```

1          MR. STECKLER:  Oh.  Four will be -- 4 will be

2      the exhibit and 4-A will be the Chinese version in full.

3          MR. McNAMARA:  Okay.  So he needs 4-A

4      then.

5          MR. STECKLER:  I apologize.

6          MR. McNAMARA:  So that 4 is the translation

7      of part of it?

8          MR. STECKLER:  Well, yeah.  Because those will

9      be the parts that I'm going to ask questions about so

10     you, Counsel, can have it in English.

11         MR. McNAMARA:  I see.

12         MR. STECKLER:  Okay?

13         Here.  Use mine.

14     BY MR. STECKLER:

15     Q.      Have you ever seen this document before, sir?

16     A.      Not the entire document.

17     Q.      Okay.  But you have seen parts of this document;

18     correct?

19     A.      Because I just got it, I'll need to take a look

20     at it.

21         MR. McNAMARA:  And, Bruce, just for clarity, is

22     this something that we produced to you?  I don't -- you

23     know --

24         MR. STECKLER:  No.  No.

25         MR. McNAMARA:  Okay.  I'm just trying to keep

 1    track.  I see "PSC" all over this.

 2          MR. STECKLER:  Yes.  This is a document

 3    which is PSC00000387, which is the 2014 China Jushi

 4    annual report, which has previously been marked as

 5    an exhibit in other depositions in this case.

 6          MR. McNAMARA:  Okay.  So it's not out of our

 7    document production.

 8    BY MR. STECKLER:

 9    Q.    Do you understand that, sir?

10    A.    I'll need to take a look before I can tell what

11    parts I have read before.

12    Q.    Okay.  And that's fine.  And I will give you

13    time to look at it.

14          My question is -- or let me clarify -- you have

15    actually seen parts of this document before; is that

16    correct?

17    A.    Okay.  Because this document is very thick, I

18    don't know what are included in the document; therefore,

19    I guess I might have seen parts of it but I can't tell

20    before I read it.

21    Q.    Are you a shareholder in China Jushi, sir?

22          MR. McNAMARA:  Object to the form.

23          THE WITNESS:  I have said before and I have

24    answered this question before.

25

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. STECKLER:

 2   Q.      What's the answer?

 3           MR. McNAMARA:  Object.

 4           THE WITNESS:  Close to 0.6 percent.

 5           MR. STECKLER:  Okay.

 6   BY MR. STECKLER:

 7   Q.      So you are a 0.6 percent owner of shares in

 8   China Jushi; correct?

 9   A.      That's an approximate number.  That's correct.

10   Q.      And in front of you is the 2014 China Jushi

11   annual report; correct?

12           MR. McNAMARA:  Object to the form.

13           THE WITNESS:  The document I have received and

14   he had given to me is so.

15   BY MR. STECKLER:

16   Q.      And you're not sure whether you've seen parts of

17   this document or not.  Is that fair?

18   A.      Correct.

19   Q.      And China Jushi is listed on the Shanghai Stock

20   Exchange; is that right?

21           MR. McNAMARA:  Object to the form.

22           Object to the form.

23           THE WITNESS:  Yes.

24           MR. STECKLER:  Okay.

25
```

1    BY MR. STECKLER:

2    Q.      And it says on the front of the 2014 annual

3    report for China Jushi that the report is authentic,

4    accurate and complete and that there is no existence of

5    false records, misleading statements, or significant

6    omissions; is that right?

7            MR. McNAMARA:  Object to the form.

8            Bruce, can I get a continuing objection on this

9    as out of the -- as beyond the scope of the Notice?

10           MR. STECKLER:  Well, I disagree with that but

11   you have -- you can have that objection.

12           MR. McNAMARA:  I understand you're not

13   conceding --

14           MR. STECKLER:  Yeah.

15           MR. McNAMARA:  -- the objection but --

16           MR. STECKLER:  Okay.

17           MR. McNAMARA:  But so I don't have to keep

18   saying, object to the form, beyond the scope --

19           MR. STECKLER:  Sure.

20           MR. McNAMARA:  -- of the Notice.

21           THE WITNESS:  Yes, that's what it says there.

22   Yes.

23   BY MR. STECKLER:

24   Q.      And it says that the person in charge of China

25   Jushi Company is Jianglin Cao; correct?

Confidential - Subject to Further Confidentiality Review

```
 1          Wait.  I'm sorry.

 2          MS. ZHANG:  Jianglin Cao.

 3  BY MR. STECKLER:

 4  Q.      Jianglin Cao; correct?

 5  A.      China Jushi Public Listing Company's person in

 6  charge is Jianglin Cao.  That's correct.

 7  Q.      Do you know Mr. Cao?

 8  A.      Yes.

 9  Q.      How do you know him?

10  A.      I knew him when I was at Jushi Group and China

11  Jushi.

12  Q.      Does he hold a position with Jushi Group?

13  A.      He does not hold a position in Jushi Group.

14  Q.      Do you know whether he is an executive director

15  of CNBM?

16  A.      Okay.  CNBM is very complicated.  The CNBM they

17  said is very complicated, and I am not very clear about

18  that myself.

19  Q.      Okay.  Let's go to Page 87 of the annual report

20  of CNBM.

21          Do you see where Mr. Cao is listed as the

22  president and executive director of CNBM?

23  A.      I see that.

24  Q.      Okay.  And Mr. Cao is also the chairman of China

25  Jushi; correct?
```

Confidential - Subject to Further Confidentiality Review

1   A.      Yes.

2   Q.      And China Jushi owns 100 percent of Jushi Group;

3   correct?

4           MR. McNAMARA:  Object to form.

5           Object to the form.

6           THE WITNESS:  Say again?

7           Yes.

8           MR. STECKLER:  Okay.

9   BY MR. STECKLER:

10  Q.      Now, let's go back to the China Jushi annual

11  report of 2014.

12          I would like you to go to the page, I believe --

13  let's see.  Page 391 at the bottom right.

14          MS. HUANG:  Bates number 391.

15          MR. STECKLER:  391, yes.

16          MS. HUANG:  It's not this page number.  Bates

17  number.

18          MR. McNAMARA:  So -- yeah.  So hold on, Bruce.

19          I think there's two different sets of numbers.

20          MR. STECKLER:  It's Page 5 and it's 391 in the

21  translation.  It's Page -- I'm sorry.

22          THE WITNESS:  I got it.

23          MR. STECKLER:  Thank you.  Yes.

24  BY MR. STECKLER:

25  Q.      You'll see in the middle there's a heading and

1    it talks about the changes of holders of shares.

2           Do you see that?

3    A.     Yeah.

4    Q.     And on Number 6 it indicates that China National

5    Building Materials, Limited's shareholding ratio changed

6    to 36.15 percent.

7           Do you see that?

8    A.     It says 32.79 percent.  Are you talking about --

9    Q.     No.

10   A.     -- Point 5 or Point 6?

11   Q.     I'm talking under Number 6, Entry Number 6, in

12   2011.

13   A.     32.79 percent.

14   Q.     I see.  Okay.  I see.

15          Do you see where it says that?

16   A.     In the middle of the page, Point 6 under Bates

17   number 391.

18   Q.     Correct.

19          And it indicates that CNBM remained the

20   controlling shareholder of Jushi Group; correct?

21          MR. McNAMARA:  Object to the form.

22          Hold on.  Let me object.

23          Object to the form.

24          THE WITNESS:  Where is it?  I don't see that.

25

Confidential - Subject to Further Confidentiality Review

1   BY MR. STECKLER:

2   Q.      Page 5, Number 6 at the very end.

3          THE INTERPRETER:  The interpreter has indicated

4   to the witness where that is.

5          MR. STECKLER:  Okay.  Thank you.

6          THE WITNESS:  The company has 100 percent of

7   shares.  If each of two people owns 32.79 percent, I

8   wouldn't know who is the controlling shareholder;

9   therefore, to my understanding, a controlling

10  shareholder is somebody who owns more than 50 percent of

11  shares.  In addition to that, China Jushi is a public

12  company.

13         MR. STECKLER:  Object as nonresponsive.

14  BY MR. STECKLER:

15  Q.      Yes, I understand your point, sir, but China

16  National Building Materials, it says here, remained the

17  controlling shareholder of China Jushi; correct?  Of

18  Jushi Group.

19         MR. McNAMARA:  Object.

20         Hold on.

21         Object to the form.

22         THE WITNESS:  That's what the report says.

23  That's what the report says.

24         MR. STECKLER:  Okay.

25

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. STECKLER:

 2   Q.      So we're clear, the report says that CNBM

 3   remained the controlling shareholder of Jushi Group

 4   Company, Limited; correct?

 5   A.      Jushi Group.

 6   Q.      Yes.

 7   A.      It says here -- no, that's incorrect.  It says

 8   purchased 49 percent shares of Jushi Group, but the

 9   controlling shareholder should not be referring to Jushi

10   Group.

11   Q.      Who is the controlling shareholder referred

12   to here, then?

13           MR. McNAMARA:  Object to the form.

14           THE WITNESS:  According to the document of 2014

15   that's provided me by this counsel, my understanding I

16   believe is China Jushi instead of Jushi Group.

17   BY MR. STECKLER:

18   Q.      So China Jushi was the controlling shareholder

19   of Jushi Group.

20           Is that your understanding?

21   A.      Correct.

22   Q.      It indicates that CNBM's shareholding ratio

23   changed to 36.15 percent.

24           Do you see that?  I mean 30 -- it says 30 --

25           MS. ZHANG:  32.79.
```

Confidential - Subject to Further Confidentiality Review

1          MR. STECKLER:  32.79 percent.

2   BY MR. STECKLER:

3   Q.      Do you see that?

4   A.      That's what it says here.

5   Q.      And then it says that they remained the

6   controlling shareholder of the company.

7           Do you see that?

8   A.      I see that's what is written here.

9   Q.      Okay.  Now, let's go to Number 7, which refers

10  to 2014; correct?

11  A.      Number 7?

12  Q.      Yes.

13  A.      I see Number 7.

14  Q.      And it's discussing occurrences in 2014;

15  correct?

16  A.      Yes.

17  Q.      And it says that China Jushi issued shares to

18  purchase 49 percent shares of Jushi Group Company,

19  Limited; CNBM; Zhenshi Holding; Pearl Success

20  International; and Surest -- oh, strike that.  Let me

21  start over.  Excuse me.

22          MR. McNAMARA:  Are you okay?

23  BY MR. STECKLER:

24  Q.      In 2014 it indicates that China Jushi issued

25  shares; correct?

Confidential - Subject to Further Confidentiality Review

 1   A.      2014?

 2   Q.      Yes.

 3   A.      2014.  I don't see shares being issued in 2014.

 4   I believe shares were issued in 2011.  I don't see 2014.

 5   2011, rather.

 6           MR. STECKLER:  So explain this to me, then.

 7           MS. HUANG:  They made an agreement in 2011.

 8           MR. STECKLER:  Okay.

 9   BY MR. STECKLER:

10   Q.      Who is -- Zhenshi Holding, is that a country --

11   company you have an interest in?

12   A.      I do not have shares in Zhenshi Holding.

13   Q.      Pearl Success International.

14   A.      No.

15   Q.      How about Surest?

16   A.      Yes.  Yes.

17   Q.      What's your relationship with Surest?

18   A.      I'm its owner.

19   Q.      And at the end of this Section 7 it indicates

20   that CNBM again remains the controlling shareholder of

21   China Jushi; correct?

22   A.      According to the report, that is so, but I don't

23   think so.

24   Q.      Okay.  So you disagree with the China Jushi 2014

25   annual report, which is supposed to be authentic,

Confidential - Subject to Further Confidentiality Review

1  accurate and complete and not have false records,

2  misleading statements or significant omissions.

3  A.      The reason I do not think it is the controlling

4  shareholder is as follows:  There are nine directors in

5  the company's board of directors.  China National

6  Building Material, which is what they say CNBM, correct,

7  CNBM, only has four positions, which is less than half;

8  therefore, that is my point of view on it.

9  Q.      Okay.  So you disagree with the China Jushi

10  annual report of 2014, which indicates that CNBM is the

11  controlling shareholder of China Jushi.

12          MR. McNAMARA:  Object to the form.

13          THE WITNESS:  That's my personal point of view.

14  BY MR. STECKLER:

15  Q.      So China Jushi's annual report of 2014, in your

16  opinion, is not accurate and complete and is misleading

17  and has a significant omission; correct?

18          MR. McNAMARA:  Object to the -- object --

19  object.

20          THE WITNESS:  I object.  I don't think what you

21  said is my opinion.

22  BY MR. STECKLER:

23  Q.      So is it your opinion that the China Jushi

24  annual report of 2014 is just wrong?

25  A.      Your statement is not my opinion.

Confidential - Subject to Further Confidentiality Review

1  Q.     You're disagreeing with the statement contained

2  in Number 7 that indicates CNBM is the controlling

3  shareholder of China Jushi; correct?

4          MR. McNAMARA:  Object to the form.

5          THE WITNESS:  Correct.

6          MR. STECKLER:  Okay.

7          THE WITNESS:  I don't think so.

8          MR. STECKLER:  Okay.

9  BY MR. STECKLER:

10  Q.     So are you going to now contact Mr. Cao and tell

11  him that his annual report of 2014 is incorrect?

12          MR. McNAMARA:  Object to the form.

13          Object to the form.

14          THE WITNESS:  I don't have that intention.

15  BY MR. STECKLER:

16  Q.     This is a big mistake in a public annual report

17  of 2014 for China Jushi, isn't it?

18          MR. McNAMARA:  Object to the form.

19          THE WITNESS:  If 1,000 people had read this

20  report and two out of them disagreed with the report,

21  does it mean the report is false?

22  BY MR. STECKLER:

23  Q.     So it's your opinion that you're probably just

24  wrong about the report and the report is correct, I take

25  it, because it was made and prepared by Mr. Cao and

Confidential - Subject to Further Confidentiality Review

1    those people that have the most knowledge about China

2    Jushi for the annual report of 2014; correct?

3         MR. McNAMARA:  Object.  Object to the form.

4         THE WITNESS:  The correctness or incorrectness

5    are both based upon a standard, and it depends on the

6    perspective of your standard or my standard; therefore,

7    everyone has a different opinion.  I had only stated, as

8    I did earlier, my personal opinion on controlling

9    shareholder.

10   BY MR. STECKLER:

11   Q.    I appreciate your personal opinion, but if you

12   look at the first page, this annual report, it says the

13   content is from the board of directors, the supervisory

14   committee, and the senior management and staff of the

15   company.

16        Is that your understanding?

17        MR. McNAMARA:  Object to the form.

18        Bruce, this has nothing to do with Jushi USA.

19        MR. STECKLER:  I appreciate your speaking

20   objection.  It absolutely does.

21        Go ahead, sir.

22        THE WITNESS:  Please repeat his question.

23        THE INTERPRETER:  The interpreter will repeat

24   the counsel's question.

25        THE WITNESS:  As a witness today, I don't have

Confidential - Subject to Further Confidentiality Review

1    the capability to decide the correctness or

2    incorrectness of this report.  I will try my best to

3    answer the questions asked by this counsel honestly and

4    under oath.

5            MR. STECKLER:  Thank you, sir.

6    BY MR. STECKLER:

7    Q.      So based upon this 2014 annual report, which was

8    put together by the board of directors, the supervisory

9    committee, and the senior management staff of China

10   Jushi, it indicates that CNBM is the controlling

11   shareholder of China Jushi; correct?

12           MR. McNAMARA:  Object to the form.  Lack of

13   foundation.

14           Object to the form.  Lack of foundation.

15           THE WITNESS:  The report says China National

16   Building Material holds 33.82 percent of shares and

17   remains the controlling shareholder of the company.

18   That's what the report says.

19           MR. STECKLER:  Okay.

20   BY MR. STECKLER:

21   Q.      And you're a shareholder in China Jushi;

22   correct?

23   A.      Yes.

24   Q.      And if we go to 398 on the Bates stamps on the

25   right of Exhibit Number 4, would you look at Number 3

Confidential - Subject to Further Confidentiality Review

1   under 2014?

2           MR. McNAMARA:  I'm sorry.  What page?

3           MR. STECKLER:  398.

4           MR. McNAMARA:  I don't see any --

5           MS. HUANG:  The Chinese version.

6           MR. STECKLER:  12.  I'm looking at Chinese

7   version.

8           MR. McNAMARA:  Oh, you're reading off the

9   Chinese now, huh?

10          MR. STECKLER:  Yes.

11  BY MR. STECKLER:

12  Q.      Does this indicate that China Jushi has

13  established subsidiaries in 14 countries and regions,

14  including the United States?

15  A.      The more correct way to put it should be Jushi

16  Group.

17  Q.      But it doesn't say that, does it?

18  A.      I don't see that.  It doesn't say Jushi Group.

19  Q.      No.  It says China -- it refers to China Jushi

20  as doing business in the United States; correct?

21          MR. McNAMARA:  Object to form.

22          Hold on.  Hold on.  Hold on.

23          Object to the form.

24          THE WITNESS:  Jushi Group.  Jushi USA is 100

25  percent owned by Jushi Group.

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. STECKLER:

 2   Q.      So because Jushi Group, China Jushi -- strike

 3   that.

 4           Because China Jushi owns 100 percent of Jushi

 5   Group and Jushi Group owns 100 percent of Jushi USA, is

 6   that why this report is indicating business in the

 7   United States?

 8           MR. McNAMARA:  Object to the form.

 9           THE WITNESS:  Yes, what the attorney has said,

10   which is that China Jushi owns 100 percent of Jushi

11   Group and Jushi Group owns 100 percent of Jushi USA, is

12   correct.

13   BY MR. STECKLER:

14   Q.      And so if we look at Page, PSC Page 399, or Page

15   13 of the report, under Number 5 it talks about

16   projects.

17           Do you see that?

18   A.      Are you talking about --

19   Q.      There's a highlighted --

20   A.      -- this part (indicating).

21   Q.      -- portion on this.

22           Yes.  Do you see that, sir?

23   A.      Are you talking about this?

24   Q.      Where it says Jushi USA South Carolina

25   Fiberglass?
```

Confidential - Subject to Further Confidentiality Review

```
 1   A.      Okay.  This one.  I see that.

 2   Q.      Okay.  And Jushi USA is the company you're the

 3   CEO of; correct?

 4   A.      I'm the chairman of board.  That's correct.

 5   Q.      And one of the projects reflected in the 2014

 6   China Jushi annual report is a Jushi USA project in

 7   South Carolina; correct?

 8           MR. McNAMARA:  Bruce, just so we're clear,

 9   this -- I don't know the answer, but we established at

10   the beginning of the deposition that Jushi USA was

11   shorthand for Jushi USA Fiberglass Company, Limited, and

12   this on this page says Jushi USA South Carolina

13   Fiberglass Company, Limited.

14           MR. STECKLER:  That's the name of the project.

15           I know that the company changed its name later

16   on, in 2014 or '15, created a new entity, but I'm

17   looking at the annual report and just reading it as it

18   is.

19           MR. McNAMARA:  Well, I --

20   BY MR. STECKLER:

21   Q.      Do you see that?

22           Are you CEO of Jushi USA?  Yes?

23           MR. McNAMARA:  Object to -- hold on.

24           Object to the form.

25
```

Confidential - Subject to Further Confidentiality Review

1   BY MR. STECKLER:

2   Q.      Are you CEO of Jushi USA South Carolina too?

3   A.      That is a plan which had not been completed, and

4   in the future this company will become smaller and

5   smaller.

6           The South Carolina company will be another new

7   company.  And when that starts, I would have been

8   already retired.

9   Q.      And, in fact, you've filed, Jushi USA Fiberglass

10  Company, Limited, actually filed papers with the

11  Secretary of State of Carolina to do business in

12  September of 2012; correct?

13  A.      I'm not aware of that.

14  Q.      Well, let me go ahead and hand you what we're

15  going to mark as Exhibit Number -- is it 5 to your

16  deposition.

17          (Exhibit 5 was marked for identification.)

18          MR. STECKLER:  It's at the very end.

19          Can I just have a sticky?  I'll just do my own.

20  Have no patience for this.

21          I don't care.

22          MR. GAUGHAN:  So that's going to be 5, I think.

23  BY MR. STECKLER:

24  Q.      Do you see where it says Jushi USA Fiberglass

25  Company, Limited, at the top, sir?

Confidential - Subject to Further Confidentiality Review

```
 1   A.      I see that.

 2   Q.      Is that the company that you're the CEO of, sir?

 3   A.      Okay.  This is my first time seeing this

 4   document.

 5   Q.      Are you the CEO of Jushi USA Fiberglass Company,

 6   Limited, sir?

 7   A.      It was registered in Los Angeles.

 8   Q.      I understand.

 9           And, in fact, if you look underneath there, it

10   says that you're a California corporation; correct?

11   A.      Where is it?  I don't see it.

12   Q.      Under State of Incorporation, sir, right there.

13           It's California; correct?

14           MR. McNAMARA:  Are you -- yeah.  Do you want to

15   point -- do you have a Chinese translation of this

16   document, Bruce.

17           MR. STECKLER:  No.

18           MR. McNAMARA:  Okay.  So if you're going to ask

19   him about it, I think you should have --

20           MR. STECKLER:  I'm asking him some basic English

21   word that I know he's dealt with, like the word

22   "California," where he's lived for several years.

23           MR. McNAMARA:  Hey, you don't need to be nasty

24   about it, Bruce.

25           MR. STECKLER:  No, I'm not being nasty.  I'm
```

Confidential - Subject to Further Confidentiality Review

```
 1   just saying --

 2           MR. McNAMARA:  You're taking --

 3           MR. STECKLER:  I'm not asking him to read.  I'm

 4   asking him if it's his company and tell me.

 5           MR. McNAMARA:  Just be fair.  Point to -- point

 6   to the --

 7           MR. STECKLER:  I did.

 8           MR. McNAMARA:  -- language, read it.

 9           MR. STECKLER:  Excuse me.

10           I did.  And I intend to be as courteous as

11   possible for this witness.  I'm just trying to get

12   through this as quickly as possible.

13           And I apologize it's not in Chinese, sir, but I

14   won't ask you a detailed translation.

15           MS. HUANG:  I think at least if you would let

16   Michael finish his sentence, it would be nice.

17           MR. STECKLER:  I appreciate your help, Counsel.

18           THE WITNESS:  So it's my turn?

19           MR. STECKLER:  Yes, ma'am.

20           THE WITNESS:  First of all, I want to say that

21   this is my first time reading this document.

22           Number two, all the matters in relation to that

23   in South Carolina had been that China Jushi or Jushi

24   Group made contacts directly and they had never done

25   that through me; therefore, I have never seen this
```

Confidential - Subject to Further Confidentiality Review

```
 1   document before.

 2   BY MR. STECKLER:

 3   Q.       When was China Jushi beginning to make contacts

 4   in the United States regarding the South Carolina

 5   project?

 6   A.       I think two to three years ago.

 7   Q.       And the South Carolina project for China Jushi

 8   has been going on for, continuously for three years;

 9   correct?

10           MR. McNAMARA:  Object to the form.

11           THE WITNESS:  First of all, like I said, the

12   South Carolina project is a project that China and South

13   Carolina's government directly contact each other for.

14   I was not involved.

15   BY MR. STECKLER:

16   Q.       Well, you're familiar with Project Giant, aren't

17   you?

18   A.       What's the definition of familiar?

19   Q.       Well, what is Project Giant?

20   A.       It is that Jushi would establish a factory in

21   South Carolina of the United States.

22   Q.       And China Jushi has been involved in this

23   project, to the best of your knowledge, for about three

24   years; is that right?

25           MR. McNAMARA:  Object to the form.
```

```
 1              THE WITNESS:  Please make it clear.  Please

 2    specify.

 3              I don't quite understand his question.

 4    BY MR. STECKLER:

 5    Q.     For three years China -- is it your

 6    understanding -- strike that.

 7              Is it your understanding that for the past three

 8    years China Jushi has been involved in negotiations in

 9    setting up a fiberglass production plant in South

10    Carolina?

11              MR. McNAMARA:  Object to the form.

12              THE WITNESS:  I don't know whether or not they

13    had negotiated.  They did the study two or three years

14    ago but then they stopped.

15    BY MR. STECKLER:

16    Q.     Do you know why China Jushi would announce in

17    October of 2014 that they were opening a plant in South

18    Carolina?

19              MR. McNAMARA:  Object to the form.

20              THE WITNESS:  I don't know why they did that.

21    BY MR. STECKLER:

22    Q.     Who's responsible for the Jushi USA Website?

23    A.     There is no specific person in charge --

24    Q.     Are you aware --

25    A.     -- for Jushi's Website.
```

Confidential - Subject to Further Confidentiality Review

1  Q.      Are you aware that the Jushi USA Website

2  announces that they're putting together a distribution

3  center in South Carolina?

4  A.      I have not read the Website.  I do not know.

5  Q.      You're the CEO of Jushi USA Fiberglass Company,

6  Limited; correct?

7  A.      Not right now.

8  Q.      What's your position with Jushi USA now?

9  A.      The chairman of the board --

10  Q.      Okay.  You're the chair --

11  A.      -- while the CEO's name is W-U space Q-I-N-G

12  since March the 31st.

13  Q.      Of 2015?

14  A.      2015.  That's correct.

15  Q.      Why did it change in March of 2015?

16  A.      It appears to be that the Canadian by the name

17  of Alan had been working for over three years or four

18  years but had not met the requirement consistently of

19  the company.

20  Q.      My question is, you had to step down as CEO of

21  China -- of Jushi USA; correct?

22  A.      I used to hold that position.  That's correct.

23  Q.      And in March of 2015 you stepped down as CEO;

24  correct?

25  A.      Strictly, that's not the case.

```
 1              I believe in 2011, when the Canadian by the name
 2    of Alan came, he was the COO.  At the time I changed
 3    into the chairman of the board.
 4              From that point forward, the company have not --
 5    have not had a CEO.  We hope that Alan would perform
 6    well in his work and will change from COO to CEO;
 7    therefore, since his performance was not well, China had
 8    sent W-U space Q-I-N-G on March the 31st this year to
 9    become the CEO over here.
10    Q.     Let me hand you what we're going to mark as
11    Exhibit Number 6 to your deposition, sir.
12              (Exhibit 6 was marked for identification.)
13              MR. STECKLER:  It's Jushi USA 0002213.
14              MR. GAUGHAN:  2213.
15              MR. McNAMARA:  Yeah.
16    BY MR. STECKLER:
17    Q.     Is this a business record of --
18              MR. McNAMARA:  Hold on.
19    BY MR. STECKLER:
20    Q.     -- Jushi USA, sir?
21              MR. McNAMARA:  Wait.  Whoa.  Whoa.  Whoa.
22              I do not have a copy.  Can you give me a copy?
23              MR. GAUGHAN:  The one I have --
24              MS. HUANG:  Exhibit 6?
25              MR. STECKLER:  Here.  Go ahead.  Take my copy.
```

Confidential - Subject to Further Confidentiality Review

1              MR. McNAMARA:  And --

2              THE INTERPRETER:  Do you have a copy for the

3      interpreter?

4              MR. STECKLER:  No.  I'm sorry.  It's in English,

5      though.

6              I have one question.

7      BY MR. STECKLER:

8      Q.      Are you listed as the CEO -- well, strike that.

9              Is this a business record of Jushi USA, sir?

10     A.      What date?

11     Q.      I don't know, sir.  It's produced to us by your

12     counsel and Bates stamped at the bottom.

13             Do you see that?

14     A.      I just mentioned that I would tell the truth

15     under oath.  That's a fact.

16     Q.      So you would agree this is a business record of

17     Jushi USA; correct?

18     A.      What about I go back and check?  Is that okay?

19     Q.      So you don't know if this is a business record

20     of Jushi USA even though it has your markings on it and

21     it was produced to us by your counsel?

22     A.      Okay.  When they prepared this, I believe they

23     had omitted that I was the chairman.

24             MR. STECKLER:  Object as nonresponsive.

25

1    BY MR. STECKLER:

2    Q.      Is this a business record of Jushi USA, sir?

3    A.      According to this document and before I check

4    it, I believe it is possible true.

5    Q.      Well, do you think your counsel provided us with

6    a false business record of your company?

7    A.      I don't think so.

8    Q.      Okay.  Do you have any reason to believe this is

9    not a business record of your company?

10   A.      I did not say it is not.

11   Q.      Okay.

12   A.      I would have to confirm that.  Just like what I

13   said to the counsel earlier, look at Number 3, Alan

14   Gardiner, COO.

15   Q.      He stepped down in -- I'm sorry.  I apologize.

16   I didn't mean to cut you off.

17   A.      Okay.  I've already explained to counsel

18   earlier, Number 3, COO, Alan Gardiner.

19           THE INTERPRETER:  The interpreter needs to

20   clarify with deponent.

21           THE WITNESS:  When COO Alan approximately about

22   four years ago came to this company, he became COO and I

23   became the chairman of the board.

24           At the time, generally speaking, the company was

25   hoping Alan could perform well and become CEO;

Confidential - Subject to Further Confidentiality Review

```
 1   therefore, I explained earlier my opinion is I become

 2   the chairman of the board while the CEO's position is

 3   vacant, and we were hoping that COO Alan would perform

 4   well and we had kept the position open for him until the

 5   end of March this year.  He did not perform well;

 6   therefore, the new, current CEO by the name of W-U

 7   Q-I-N-G came.

 8           MR. STECKLER:  Okay.

 9   BY MR. STECKLER:

10   Q.      But according to this document, Exhibit Number

11   6, who is listed as CEO of Jushi USA?

12   A.      This document says it's me.

13   Q.      Okay.  And this is a business record of Jushi

14   USA; correct?

15           MR. McNAMARA:  Object to the form.

16           THE WITNESS:  Yes.

17           (Exhibit 7 was marked for identification.)

18   BY MR. STECKLER:

19   Q.      Let me hand you Exhibit Number 7.  This is

20   Bates stamped Jushi USA 0001109.

21           MR. McNAMARA:  Do you have a copy for us?

22           This is Number 7?

23           So, Bruce, you handed --

24           MS. HUANG:  Same thing?

25           MR. STECKLER:  It's a different number.
```

```
 1            MS. HUANG:  Oh.

 2            MR. McNAMARA:  Okay.  So did you mean to hand me

 3    all three copies or --

 4            MR. STECKLER:  To hand them down.

 5            MR. McNAMARA:  Okay.

 6            Is this 7?

 7            MR. STECKLER:  Yes.

 8    BY MR. STECKLER:

 9    Q.     Is this, too, a business record of Jushi USA?

10    A.     Isn't the two the same?

11    Q.     Yes.  But the stamps at the bottom right that

12    were produced by your attorney are different; correct?

13    A.     What stamp?

14            THE INTERPRETER:  The interpreter just pointed

15    to the stamp for the witness.

16            THE WITNESS:  The two are exactly the same.

17            MR. STECKLER:  Let me see.  I'm sorry.

18            Are they the same -- I'm sorry -- on the ones I

19    sent down?

20            Yes.  Okay.  Then let's -- can we back up on

21    Number 7?  I apologize.  Okay.

22            So thank you, sir.  I appreciate it.  That's why

23    I wear glasses.

24    BY MR. STECKLER:

25    Q.     So according to the business record on Exhibit
```

Confidential - Subject to Further Confidentiality Review

1  6, you're listed as CEO.  We talked about that; correct?

2  A.      Yes.

3  Q.      Okay.  And you've told me that you were chairman

4  of the board of Jushi USA Fiberglass Company, Limited,

5  too; correct?

6  A.      Yes.

7          MS. HUANG:  Excuse me.  Objection to

8  translation.

9          His English is "you are also," so "also" means

10  you hold both position.  That's the question.

11          MR. STECKLER:  No, I didn't -- I mean -- well,

12  strike that.

13          I understand your objection.

14          THE INTERPRETER:  The interpreter stood

15  corrected.

16          THE WITNESS:  Yes.  Yeah.

17          MR. STECKLER:  Okay.

18  BY MR. STECKLER:

19  Q.      You were unaware that Jushi USA Fiberglass, of

20  which you're either the chairman of the board or the

21  CEO, had filed corporate papers in South Carolina; is

22  that right?

23  A.      I don't know that.

24  Q.      Does it concern you that you're -- you, as

25  either chairman of the board or CEO of the company, is

Confidential - Subject to Further Confidentiality Review

```
 1    unaware that incorporation papers are being filed within

 2    the United States in another state other than

 3    California?

 4            MR. McNAMARA:  Object to the form.

 5            Bruce, I don't think this is an incorporation.

 6            Object to the form.

 7            THE WITNESS:  All right.  I've said it earlier.

 8    China had contacted them directly for the South Carolina

 9    project, which I'm not involved; therefore, I do not

10    know.

11    BY MR. STECKLER:

12    Q.     When you say "China," who are you referring to?

13    A.     Jushi Group.

14    Q.     So Jushi Group is directly doing the South

15    Carolina project; is that right?

16            MR. McNAMARA:  Object to the form.

17            THE WITNESS:  Yes.

18    BY MR. STECKLER:

19    Q.     But Jushi Group is using your name, at least

20    based upon --

21            MR. STECKLER:  Can I see that incorporation

22    document?

23            MR. McNAMARA:  It's not an incorporation

24    document, Bruce.

25            MR. STECKLER:  I'm sorry.
```

Confidential - Subject to Further Confidentiality Review

```
 1          MR. McNAMARA:  It's unclear to me exactly what

 2   it is but --

 3   BY MR. STECKLER:

 4   Q.      This Exhibit Number, we're going to call it

 5   Exhibit Number 5 to your deposition, which is from the

 6   South Carolina Secretary of State.

 7          MR. McNAMARA:  Let me -- he's got his copy of it

 8   there?  Why don't you --

 9          What's the question?

10          MR. STECKLER:  Okay.  So let's rephrase it.

11   BY MR. STECKLER:

12   Q.      So Jushi Group is handling the South Carolina

13   project; correct?

14          MR. McNAMARA:  Object to the form.

15   BY MR. STECKLER:

16   Q.      And based upon --

17   A.      Correct.

18   Q.      And based upon Exhibit 5, it appears that the

19   South Carolina Secretary of State has a Jushi USA filing

20   done in 2012.

21          Do you see that, sir?

22   A.      Please explain again.

23          MR. STECKLER:  Can you read it back?

24          THE WITNESS:  This is my first time seeing this

25   document today.
```

Confidential - Subject to Further Confidentiality Review

1          The case of setting up a factory in South

2     Carolina is not handled by me.

3     BY MR. STECKLER:

4     Q.      Is it handled by Jushi USA, sir?

5     A.      No.  It is Jushi Group who have been handling it

6     directly.

7     Q.      Do you know whether Jushi Group is using Jushi

8     USA Fiberglass Company, Limited, to do business in South

9     Carolina?

10          MR. McNAMARA:  Object to the form.

11          THE WITNESS:  Jushi USA does business in South

12     Carolina.  It has a warehouse.

13     BY MR. STECKLER:

14     Q.      So do you think that's why Jushi USA has filed

15     to do business in South Carolina?

16     A.      I'm not aware of this.

17     Q.      Okay.  Well, let's go back to the China Jushi

18     annual report, which is for 2014, and look at Page 399.

19          It references a Jushi USA South Carolina

20     Fiberglass Company.

21          Do you see that?

22          MS. ZHANG:  Page 13.

23          THE WITNESS:  Say the question again.

24          Yes.

25

Confidential - Subject to Further Confidentiality Review

 1   BY MR. STECKLER:

 2   Q.      And if we go to Page PSC0000402, under Number 4,

 3   Under New Business Intended to Launch -- do you see

 4   that?

 5           MR. McNAMARA:  Bruce, I don't see it on --

 6           MR. STECKLER:  That's because I'm reading the

 7   English in for Chinese.

 8           THE WITNESS:  I see that.

 9           MR. McNAMARA:  Whoa.  Whoa.  I lost track of

10   what's going on.  Where are you?

11           MS. HUANG:  It's on Page 16 of the report.

12           MR. McNAMARA:  So we're on Page 16 of the --

13           MS. HUANG:  Chinese report.

14           MR. McNAMARA:  -- of the Chinese report.  But

15   just for clarity, this is -- what you're asking about is

16   not on the English translation that you gave me?

17           MR. STECKLER:  I -- it is, Counsel.

18           MR. McNAMARA:  Where is it?

19           MR. STECKLER:  It's right in the middle of the

20   page, Counsel.

21           MR. McNAMARA:  I thought you -- you referenced a

22   heading.

23           MR. STECKLER:  I did, Counsel.

24           MR. McNAMARA:  You said a New Business --

25           MR. STECKLER:  New Business.

Confidential - Subject to Further Confidentiality Review

```
1              MR. McNAMARA:  -- Intended to Launch.

2              MR. STECKLER:  PSC00402, Counsel.

3              MR. McNAMARA:  Oh, okay.  I see it.  Yeah.

4     Okay.  Sorry.  Go ahead.

5              MR. STECKLER:  Can we please not interrupt the

6     questioning?

7              MR. McNAMARA:  Well, no.  I'm going to interrupt

8     if I need to follow along and I --

9              MR. STECKLER:  Everybody else is.

10             MR. McNAMARA:  Well, I'm sorry if I'm a little

11    slow.

12             THE WITNESS:  I see that.

13    BY MR. STECKLER:

14    Q.     Do you see where it indicates that China Jushi

15    is intending to construct a production line in the

16    United States?

17    A.     It says "intended."  "Intended" --

18    Q.     Correct.

19    A.     -- by meaning, is something is intended to be

20    done but not done.

21    Q.     And was Jushi USA working with China Jushi on

22    this project at all, as far as you know?

23    A.     To do what?

24    Q.     To build the production line in South Carolina.

25    A.     Sometimes when they needed to investigate
```

1   something, for example, they would give us an address

2   and ask us where can they purchase the raw material,

3   then they would tell us to make phone calls and ask

4   about the prices.

5   Q.      So was Jushi USA working with China Jushi on the

6   South Carolina project?  Yes or no?

7          MR. McNAMARA:  Object to the form.

8          THE WITNESS:  Please have the counsel define

9   "working with"; otherwise, I cannot answer him with yes

10  or no.

11  BY MR. STECKLER:

12  Q.      Was Jushi -- do you not understand what it means

13  to work with somebody?

14  A.      I mentioned just now that sometimes they would

15  give us some information, saying go ahead and ask about

16  this, this is the phone number, ask how much is it, and

17  we would help them on it.  If that's what is referred to

18  by the counsel as working with, then we did.

19  Q.      What's your definition of working with a

20  company?

21  A.      We would comply with instructions given to us by

22  Jushi Group and do things accordingly; therefore, we'll

23  follow their directions.  It is not working with.

24  Q.      I see.  So Jushi USA would comply with

25  instructions and follow the directions of Jushi Group;

Confidential - Subject to Further Confidentiality Review

```
 1   correct?

 2   A.      That's correct.

 3   Q.      Okay.  And let me hand you what we're going to

 4   mark as Exhibit Number 7.  I'm going to see if we have a

 5   translation.

 6           THE COURT REPORTER:  It should be 8.

 7           MR. STECKLER:  Oh, 8.

 8           Can we mark -- put an 8 on there?  I'm sorry.

 9           MR. McNAMARA:  Why don't you take it back from

10   him so you can make sure we don't get them confused.

11           MR. STECKLER:  Mr. Tang, may I?

12           (Exhibit 8 was marked for identification.)

13   BY MR. STECKLER:

14   Q.      Let me hand you what we're going to mark as

15   Exhibit 8 to your deposition.

16           Is this a business record of Jushi USA?

17   A.      Yes.

18   Q.      Okay.  Are you either copied on this E-mail or

19   referenced in this E-mail?

20   A.      Yes.

21   Q.      I apologize.  We don't have a translation of

22   this document.  It is in the native form that it was

23   produced to us.

24   A.      That's fine, because when this E-mail was

25   produced and they had already told me the Chinese
```

Confidential - Subject to Further Confidentiality Review

1    meaning of it in the company.

2    Q.      Okay.  And this E-mail was forwarded by you to

3    Miss Chen; correct?

4    A.      Yes.

5    Q.      And in bold it indicates that Jushi USA must

6    begin the movement to South Carolina.

7            Were you aware of that?

8    A.      Okay.  Alan wrote this letter according to his

9    own intention.  I told him you should ignore the matter

10   if Jushi Group did not ask you to do that.

11   Q.      Who's Mr., is it Zhang?

12           MS. ZHANG:  Zhang.

13           MR. STECKLER:  Zhang?

14           MS. ZHANG:  Yeah.  Correct.

15           THE WITNESS:  Where is it?

16           MR. STECKLER:  I'm sorry.  It's under Number 1.

17   It says, this was stated by Mr. Zhang, Zhang, Zhang.

18           MS. ZHANG:  Yes.

19           THE WITNESS:  He is the deputy chairman of the

20   board and the general manager of China Jushi Company.

21   BY MR. STECKLER:

22   Q.      And did he direct Jushi USA to move to South

23   Carolina?

24   A.      No.

25   Q.      Does Mr. Zhang direct activities of Jushi USA?

Confidential - Subject to Further Confidentiality Review

 1   A.      No.  I don't know what activities he's talking

 2   about.

 3           Okay.  This is one of the reasons why Alan was

 4   terminated of his employment, because he had always made

 5   his own decisions to do things without going through me

 6   and follow me.

 7   Q.      Did you speak to Mr. Zhang about what he wrote

 8   here in this E-mail?

 9   A.      I did not speak.

10   Q.      Okay.  This E-mail indicates that Mr. Zhang told

11   him Jushi USA must begin the movement to South Carolina.

12           Did you know that?

13           MR. McNAMARA:  Object to the form.

14           THE WITNESS:  I do not know.

15   BY MR. STECKLER:

16   Q.      Did you know that this E-mail indicates that

17   Jushi USA is going to support Project Giant, which you

18   told us was run by Jushi Group?

19   A.      The letter reflects Alan's opinion, which had

20   been all rejected.

21   Q.      Well, sir, I know you read some English.  It

22   says, "This was stated by Mr. Zhang" in the E-mail.

23           Did you know that?

24           MR. McNAMARA:  Object to the form.

25           THE WITNESS:  I do not know.  I do not know.

Confidential - Subject to Further Confidentiality Review

 1          MR. STECKLER:  Okay.

 2   BY MR. STECKLER:

 3   Q.     Let's go back to the China Jushi annual report

 4   of 2014, Bates stamp PSC0000414.

 5          Do you see where it says Information of

 6   Controlling Shareholders of China Jushi, sir?

 7   A.     Information of Controlling Shareholders, I see

 8   that, but I do not see China Jushi.  It is China

 9   National Building Material.

10   Q.     Excuse me, sir.  Under -- this is the China

11   Jushi annual report of 2014; correct?

12   A.     Yes.

13   Q.     Okay.  And then in Section IV under Number 1 it

14   talks about information of the controlling shareholders;

15   right?

16          MR. McNAMARA:  Object to the form.

17          THE WITNESS:  Yes, that's what it says there.

18   BY MR. STECKLER:

19   Q.     And what's the first name listed of a

20   controlling shareholder, sir?

21   A.     It says here it's a legal representative, the

22   legal person in charge --

23   Q.     And then what's the --

24   A.     -- is --

25   Q.     What's next to it to the right, sir?

Confidential - Subject to Further Confidentiality Review

1          MR. STECKLER:  I'm sorry.  I cut you off.  I

2     apologize.

3          THE WITNESS:  Where?  The first or the second

4     line?

5          MS. ZHANG:  The first line after the name.

6          MR. STECKLER:  The first line to the right after

7     it says "Name."

8          THE WITNESS:  China National Building Material

9     Company, Limited.

10          MR. STECKLER:  Okay.

11     BY MR. STECKLER:

12     Q.     And that's the name listed under controlling

13     shareholders of China Jushi; correct?

14     A.     That's what he said.

15     Q.     And who's the person in charge of CNBM,

16     according to this chart, sir?  What's his name?

17     A.      It says here in the second line, person in

18     charge or legal representative of the company is

19     Mr. Song, S-O-N-G, Z-H-I-P-I-N-G, space, S-O-N-G.

20     Q.      It also mentions information on controlling and

21     holding shares in other companies; correct?  The line --

22     the second-from-the-bottom line, sir?

23     A.      Information on controlling and holding shares in

24     other public companies that are listed domestically or

25     internationally during the reporting period, controlling

1    BNBM.

2            What was the question he asked me?

3    Q.      Yeah.  So it indicates that CNBM is also

4    controlling BNBM; correct?

5            MR. DAVIDSON:  Objection.  Form.

6            THE WITNESS:  It says controlling 45.2 percent

7    of BNBM.  That's what it says in here.  But I do not

8    know what is BN-something-something.

9            MR. STECKLER:  Okay.

10   BY MR. STECKLER:

11   Q.      And if we go underneath to the next page, 415,

12   PSC00000415, actually, it talks -- oh, go back to the

13   first page.  I'm sorry.  414.  I apologize.

14           It indicates information of the actual

15   controller.

16           Do you see that, sir?

17           MS. ZHANG:  On the bottom.

18           THE WITNESS:  Oh, okay.  Yes.

19   BY MR. STECKLER:

20   Q.      And under the actual controller in the China

21   Jushi 2014 annual report it indicates CNBM; correct?

22           MR. DAVIDSON:  Objection to form.

23           THE WITNESS:  China National Building Material

24   Group.  I don't know whether or not it is CNBM because

25   it is an abbreviation --

Confidential - Subject to Further Confidentiality Review

1           MR. STECKLER:  Right.

2           THE WITNESS:  -- and they have a lot of

3    companies --

4    BY MR. STECKLER:

5    Q.      So CN --

6    A.      -- which I'm not sure about.

7    Q.      So CNBM Group is a different company than CNBM

8    Company, Limited; right?

9    A.      All I know, they're very complicated.  I'm not

10   quite clear about that.  They should be different

11   companies.

12   Q.      Well, let's look at Page PSC00000416.

13           This is a graph of ownership and controlling

14   relationship between the company and actual controller;

15   correct?

16   A.      Yes.

17   Q.      And at the top it's indicated as SASAC; correct?

18   A.      Yes.

19   Q.      And SASAC, the arrow then points to CNBM Group

20   Corporation; correct?

21   A.      China National Building Material Group Company,

22   Limited.

23   Q.      And that arrow then points to CNBM Company;

24   correct?

25   A.      That's what the chart says, correct.  This is

```
 1    what I said.  I -- I'm confused about all that name,

 2    CNBM, or something like that.  Their names are all very

 3    similar to each other.

 4    Q.     And that creates a lot of confusion, doesn't it?

 5           MR. DAVIDSON:  Objection to form.

 6           THE WITNESS:  We don't know.

 7    BY MR. STECKLER:

 8    Q.     I mean, that's confused you here today, hasn't

 9    it?

10    A.     In regarding to the English abbreviation of CNBM

11    and BN-something that you just mentioned, I wouldn't

12    know which company is which.

13    Q.     All right.  And that's my --

14    A.     They probably need to be carefully compared.

15    Q.     And that's my point:  Because the names are so

16    similar, it creates a lot of confusion, doesn't it?

17           MR. DAVIDSON:  Objection to form.

18           THE WITNESS:  Correct.

19    BY MR. STECKLER:

20    Q.     And then it indicates that CNBM, there's an

21    arrow to China Jushi Company, Limited; correct?

22    A.     Under China National Building Material Company,

23    Limited, is an arrow and it says 33.82 percent and under

24    that is China Jushi Company, Limited.

25    Q.     And in this report we know that CNBM Company has
```

Confidential - Subject to Further Confidentiality Review

```
 1   been described as the controlling shareholder of China

 2   Jushi Company, Limited; correct?

 3          MR. McNAMARA:  Object to the form.

 4          THE WITNESS:  It says here 33.82 percent.

 5   BY MR. STECKLER:

 6   Q.     Do we need to go back to the chart, sir, where

 7   it indicated that CNBM was the controlling shareholder

 8   of China Jushi, to refresh your memory?

 9          MR. McNAMARA:  Object to the form.

10          THE WITNESS:  It's not necessary.

11          MR. STECKLER:  Okay.

12   BY MR. STECKLER:

13   Q.     You recall that the annual report of 2014 for

14   China Jushi described CNBM Company, Limited, as the

15   controlling shareholder of China Jushi; correct?

16          MR. McNAMARA:  Object to form.

17          THE WITNESS:  I see that in that report.

18          MR. STECKLER:  Okay.

19   BY MR. STECKLER:

20   Q.     Let's go to 493, PSC00000493.

21          MR. McNAMARA:  Bruce, I need to get something to

22   eat.

23          MR. STECKLER:  All right.  Let me finish this

24   line of questioning and then we can do that.

25
```

```
 1   BY MR. STECKLER:

 2   Q.      Please look at the very bottom, sir.

 3           What is this section about?

 4   A.      Repeat your question, please.

 5           THE INTERPRETER:  The interpreter will repeat.

 6           THE WITNESS:  It's the equity percentage that

 7   the subsidiaries of Jushi Group hold.

 8   BY MR. STECKLER:

 9   Q.      And this indicates, if we go to Page 494, or

10   PSC00000494, that Jushi USA is a subsidiary of China

11   Jushi.

12   A.      Yes.

13   Q.      And Jushi USA operates and is registered in the

14   State of California; correct?

15   A.      Yes.

16   Q.      And China Jushi has a 100 percent indirect

17   interest in Jushi USA Corporation; correct?

18   A.      Indirect?

19   Q.      Yes.

20   A.      China Jushi has Jushi Group's 100 percent share

21   and Jushi Group has Jushi USA's 100 percent share.

22   Q.      And that's my point is, the reason it says

23   indirect 100 percent ownership is because Jushi Group is

24   the company in between China Jushi and Jushi USA; is

25   that right?
```

1    A.      Yes.

2    Q.      Okay.  And if we then go to 0000503, under

3    Number 1 it talks about China Jushi establishing Jushi

4    US South Carolina.

5            Do you see that?

6            MR. McNAMARA:  Object to the form.

7            THE WITNESS:  Will establish Jushi US South

8    Carolina Fiberglass Company, Limited, in South Carolina.

9            MR. STECKLER:  Yeah.

10   BY MR. STECKLER:

11   Q.      Did --

12   A.      I see that.

13   Q.      Did that occur, to your knowledge?  Did they

14   create Jushi US South Carolina Fiberglass Company?

15   A.      Because this company has always been handled by

16   the Chinese company and the American company, therefore,

17   to the best of my knowledge up to date, it is not so.

18   Q.      What Chinese company and what American company

19   were involved?

20   A.      Your translation may not be correct just now.

21           This is referring to Chinese Jushi Group or --

22   or -- this is referring to Chinese Jushi or Jushi Group.

23   They contacted South Carolina directly.  South Carolina

24   may be the government.

25           I was not involved in this.  Based on what I

Confidential - Subject to Further Confidentiality Review

1  know right now, I don't think they have any agreement

2  existing.

3        MS. HUANG:  So I confirm, his original answer

4  did not say that it was the China and American companies

5  but, rather, without any American company involved.

6        THE INTERPRETER:  The interpreter stands by her

7  interpretation.

8        MR. McNAMARA:  So we'll object to that

9  interpretation, then.

10        MR. STECKLER:  Then you should do that directly.

11  BY MR. STECKLER:

12  Q.    Are you aware of American companies doing

13  business with China Jushi or Jushi Group other than

14  Jushi USA?

15        MR. McNAMARA:  Object to the form.

16        THE WITNESS:  Say again?

17        MR. STECKLER:  Read it back, please.

18        THE WITNESS:  Please explain.  American

19  companies, referring to Jushi USA or some other company?

20        MR. STECKLER:  Okay.

21  BY MR. STECKLER:

22  Q.    Jushi USA does business with and works with

23  Jushi Group and China Jushi; correct?

24  A.    Jushi USA purchase all goods from China from

25  Jushi Group, not from China Jushi.

Confidential - Subject to Further Confidentiality Review

```
 1   Q.      Okay.  Are you aware of any companies that Jushi

 2   Group or China Jushi does business with in the United

 3   States?

 4           MR. McNAMARA:  Object to the form.

 5           THE WITNESS:  In the business of fiberglass,

 6   Jushi USA is in charge of the entire U.S.A. market,

 7   while Jushi Group sometimes would purchase other things

 8   from the United States, for example, raw materials,

 9   chemical agent, or -- or --

10           THE COURT REPORTER:  I'm sorry.  What agents?

11           THE INTERPRETER:  Chemical agents.

12           THE WITNESS:  -- or some machines, which I do

13   not know.

14           MR. STECKLER:  Okay.  Let's take a break and

15   we'll --

16           VIDEO OPERATOR:  With the approval of counsel,

17   going off the record.

18           The time is approximately 1:20 p.m.

19           (Luncheon Recess, 1:20-2:12 p.m.)

20                   AFTERNOON SESSION

21           VIDEO OPERATOR:  With the approval of counsel,

22   back on the record.

23           The time is approximately 2:12 p.m.

24           This begins Recording Media 3.

25
```

1  BY MR. STECKLER:

2  Q.      Mr. Tang, when did you resign, or did you ever

3  hold the position of CEO?

4  A.      I did hold the position of CEO.

5          Strictly speaking, there was no official

6  announcement saying that I have stepped down from the

7  position of CEO.  I only became the chairman of the

8  board after that.

9  Q.      And when was that?

10  A.      In around 2011.

11  Q.      That you became chairman of the board?

12  A.      Yes.

13  Q.      Okay.  And who made --

14  A.      Jushi USA.

15  Q.      And who made you chairman of the board of Jushi

16  USA?

17  A.      Mr. Zhang, Z-H-A-N-G, the person in charge of

18  Jushi Group.

19  Q.      And did he make decisions as to who would be on

20  the board and who would not?

21  A.      Yes.

22  Q.      Would he be involved in making decisions as to

23  who was the CEO, CFO, and COO of Jushi USA?

24  A.      Yes.

25  Q.      Did he make the decision to fire Mr. Gardiner?

Confidential - Subject to Further Confidentiality Review

```
 1   A.      Yes.

 2   Q.      And did he make the decision to make you CEO or

 3   similar to CEO of Jushi USA?

 4   A.      Chairman of the board.

 5   Q.      Okay.  And he made you chairman of the board of

 6   Jushi USA.

 7   A.      Yes.

 8   Q.      And Mr. Zhang made Tiffany Chen CFO of Jushi

 9   USA; correct?

10   A.      Yes.

11   Q.      Where does Mr. Zhang live?

12   A.      China.

13   Q.      Okay.  I would like you to turn to the China

14   Jushi Company, Limited, annual report, PSC00000417.

15           Does this page list the directors, supervisors,

16   senior management, and employees of China Jushi?

17           MR. McNAMARA:  Object to the form.

18           THE WITNESS:  Yes.

19   BY MR. STECKLER:

20   Q.      And what position of China Jushi does Mr. Cao

21   hold?

22   A.      The chairman of the board.

23   Q.      Do you know if he also holds a position at Jushi

24   Group?

25   A.      No.
```

Confidential - Subject to Further Confidentiality Review

1   Q.      Mr. Zhang, is he the vice-president of the board

2   of directors and general manager of China Jushi?

3   A.      Yes.

4   Q.      And Mr. Zhang also -- strike that.

5           Does Mr. Zhang also serve on the board of Jushi

6   Group?

7           MR. McNAMARA:  Object -- sorry.  Object to the

8   form.

9           THE WITNESS:  Yes.

10  BY MR. STECKLER:

11  Q.      Does he, does Mr. Zhang, currently serve on the

12  board of Jushi Group?

13          MR. McNAMARA:  Object to the form.

14          MR. STECKLER:  What's the basis, Counsel?

15          MR. McNAMARA:  It's beyond the scope of the

16  Notice.  The Notice had nothing to do with Jushi Group

17  or China Jushi.  Also, lack of foundation.

18          THE WITNESS:  Could you repeat that?

19          MR. McNAMARA:  You haven't established that he

20  knows that.

21          THE WITNESS:  Yes.

22          MR. STECKLER:  Okay.

23  BY MR. STECKLER:

24  Q.      So you are aware that Mr. Zhang serves on the

25  board of directors for Jushi Group today; correct?

Confidential - Subject to Further Confidentiality Review

1          MR. McNAMARA:  Object.  Object to the form.

2          THE WITNESS:  Yes.

3    BY MR. STECKLER:

4    Q.      And based upon this document, Mr. Zhang also is

5    a vice-chairman of the board of directors of China

6    Jushi; correct?

7    A.      Yes.

8          MR. McNAMARA:  Bruce --

9    BY MR. STECKLER:

10   Q.      Is this the Mr. Zhang that appointed the board

11   of directors of Jushi USA, the CFO, the COO, and the

12   CEO, sir?

13         MR. McNAMARA:  You can answer.

14         THE WITNESS:  Mr. Zhang appointed the CEO, COO,

15   and the chairman of the board of Jushi USA.

16         THE INTERPRETER:  The interpreter needs to

17   clarify with deponent.

18         THE WITNESS:  He exercises the rights of Jushi

19   Group.

20         MR. McNAMARA:  So, Bruce, I think there's some

21   lack of clarity in the transcripts because when she

22   spelled the name after you asked the questions about --

23         MR. STECKLER:  Well, hold on real quick.

24         Okay.  Go ahead.

25         Do you want to -- can we go off the record,

1    please?

2          MR. McNAMARA:  That's fine.

3          VIDEO OPERATOR:  With the approval of counsel,

4    going off the record.

5          The time is approximately 2:22 p.m.

6          (Discussion off the record.)

7          VIDEO OPERATOR:  With the approval of counsel,

8    back on the record.

9          The time is approximately 2:23 p.m.

10   BY MR. STECKLER:

11   Q.     Do you know Mr. Cai Guobin?

12          MS. ZHANG:  Cai Guobin?

13          MR. STECKLER:  Cai, not Cai.  Cai.

14          THE INTERPRETER:  Cai.

15          MR. STECKLER:  Cai.

16          THE INTERPRETER:  Cai.

17          MR. STECKLER:  Cai and Cai.  Cai.  I got it.

18   Okay.  Sorry.

19   BY MR. STECKLER:

20   Q.     Do you know Mr. Cai?

21   A.     Yes.

22   Q.     And Mr. Cai is, according to this document, on

23   the board of directors of China Jushi; correct?

24   A.     Yes.

25   Q.     Does Mr. Cai also serve on the board of

Confidential - Subject to Further Confidentiality Review

1   directors or in a position with Jushi Group, that you're

2   aware of?

3          MR. McNAMARA:  Object to the form.

4          THE WITNESS:  No.

5   BY MR. STECKLER:

6   Q.     Have you met Mr. Cai in the United States?

7          MR. McNAMARA:  Object to the form.

8          THE WITNESS:  No.

9   BY MR. STECKLER:

10  Q.     Have you met Mr. Cao in the United States?

11         THE INTERPRETER:  This is the interpreter

12  speaking.

13         Did counsel mean C-A-O?

14         MR. STECKLER:  Yes.

15         THE INTERPRETER:  C, as in Charlie?

16         MR. STECKLER:  Cao.  Isn't that right?  Did I

17  pronounce it right?

18         MR. McNAMARA:  No.

19         MR. STECKLER:  I'm trying my best.

20         How about I just do the American pronunciations.

21         THE INTERPRETER:  Yeah, that's fine.

22         MR. STECKLER:  Is that okay?

23         THE INTERPRETER:  Yeah, that's better.

24         MR. STECKLER:  Okay.

25         MR. McNAMARA:  Object to the form.

Confidential - Subject to Further Confidentiality Review

1          THE WITNESS:  Yes.

2          MR. STECKLER:  Okay.

3     BY MR. STECKLER:

4     Q.      And when did you meet Mr. Cao in the United

5     States?

6          MR. McNAMARA:  I'm not sure that was right.

7          THE WITNESS:  2003.

8     BY MR. STECKLER:

9     Q.      Have you met Mr. Cao in the United States since

10    2003?

11         MR. McNAMARA:  Object to the form.

12         THE WITNESS:  After 2003?  No, I don't -- not

13    recall.

14    BY MR. STECKLER:

15    Q.      Have you met Mr. Zhang in the United States?

16         MR. McNAMARA:  Object to the form.

17         THE WITNESS:  Yes.

18    BY MR. STECKLER:

19    Q.      And when was the last time you met Mr. Zhang in

20    the United States?

21         MR. McNAMARA:  Object to the form.

22         THE WITNESS:  I believe two or three years ago.

23    BY MR. STECKLER:

24    Q.      Do you know Mr. Chang?

25         THE INTERPRETER:  Did counsel mean C-H-A-N-G?

1          MR. STECKLER:  I told you I -- yeah.

2          THE WITNESS:  Yes.

3    BY MR. STECKLER:

4    Q.     And does the 2014 annual report indicate that

5    Mr. Chang is a director of China Jushi?

6    A.     Yes.

7    Q.     Do you know if Mr. Chang holds a position with

8    Jushi Group?

9          MR. DAVIDSON:  Object to form.

10          THE WITNESS:  No.

11    BY MR. STECKLER:

12    Q.     Did you know that Mr. Cao is president and

13    executive director of CNBM?

14          MR. McNAMARA:  Object to the form.

15          THE WITNESS:  I know he is the general manager.

16    BY MR. STECKLER:

17    Q.     Did you know Mr. Chang is an executive director

18    of CNBM?

19          MR. McNAMARA:  Object to the form.

20          THE WITNESS:  I do not know.

21    BY MR. STECKLER:

22    Q.     And I'm talking about right now, in 2014.

23          Do you understand that?

24          MR. McNAMARA:  Same objection.

25          Is it still 2014?

Confidential - Subject to Further Confidentiality Review

```
1          MR. STECKLER:  Thank you.  Excuse me.

2          THE WITNESS:  You're talking about Mr. Chang?

3          MR. STECKLER:  Yes.  And I'm talking about 2014

4   and 2015.  I apologize.

5          THE WITNESS:  Mr. Chang is China Jushi's

6   director.  Whether or not he is the director of China

7   Building Material, I do not know.

8   BY MR. STECKLER:

9   Q.     Did you know that Mr. Chang in 2014 was the

10  vice-president of CNBM?

11         MR. McNAMARA:  Object.  Object to the form.

12         THE WITNESS:  I do not know.

13  BY MR. STECKLER:

14  Q.     Do you know --

15         MR. STECKLER:  How do you say this?  Yimin Li?

16         MS. ZHANG:  Yimin Li.

17  BY MR. STECKLER:

18  Q.     -- if Mr. Li is a member of Jushi Group at this

19  time?

20         MR. McNAMARA:  Object to the form.

21         THE WITNESS:  Which Li?

22         MR. STECKLER:  It's -- first of all, it's Page

23  418.  It's Yimin or --

24         MS. ZHANG:  Yimin.

25         MR. STECKLER:  Yimin?
```

Confidential - Subject to Further Confidentiality Review

```
1           MS. HUANG:  Oh, Yimin.

2           THE WITNESS:  This is -- the fifth?

3           MR. STECKLER:  Yes.

4           THE WITNESS:  -- person, Y-I-M-I-N-G L-I?

5           MS. ZHANG:  Yes.

6           MR. STECKLER:  Yes.

7           MS. ZHANG:  Without a G.

8           MR. STECKLER:  Without a G, though.  Y-I-M-I-N.

9           THE INTERPRETER:  Oh.  Okay.

10           The interpreter will repeat the question.

11           THE WITNESS:  What was the question about Mr.

12  Li?

13  BY MR. STECKLER:

14  Q.      Do you know him?

15  A.      I met him before.

16  Q.      Do you know if he holds a position with Jushi

17  Group?

18           MR. McNAMARA:  Object to the form.

19           THE WITNESS:  I do not know.

20  BY MR. STECKLER:

21  Q.      Who with Jushi Group other than Mr. Zhang do you

22  deal with?

23           MS. ZHANG:  Zhang.

24           MS. HUANG:  Zhang.

25           MS. ZHANG:  Do you mean Zhang or Chang?  Zhang?
```

Confidential - Subject to Further Confidentiality Review

```
 1              THE INTERPRETER:  Z-H-A-N-G.

 2              MR. McNAMARA:  I need to get an objection to the

 3      form before he answers that question.

 4              THE WITNESS:  Jushi Group?

 5              MR. STECKLER:  Yes.  Yes.

 6      BY MR. STECKLER:

 7      Q.      You mentioned Mr. Zhang as someone you dealt

 8      with at Jushi Group; correct?

 9              MR. McNAMARA:  Object to the form.

10      BY MR. STECKLER:

11      Q.      Who else would --

12      A.      Yes.

13      Q.      Yes.  Who would with Jushi Group have you taken

14      instruction from in your capacity with Jushi USA?

15              MR. McNAMARA:  Object to the form.

16              THE WITNESS:  Mr. Zhang.

17      BY MR. STECKLER:

18      Q.      Anyone else?

19              MR. McNAMARA:  Object to the form.

20              THE WITNESS:  No.

21      BY MR. STECKLER:

22      Q.      Are you the owner of Surest Financial?

23              MR. McNAMARA:  Object to the form.

24              THE WITNESS:  Yes.

25
```

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. STECKLER:

 2   Q.      Do you know how many shares Surest Financial has

 3   of China Jushi?

 4           MR. McNAMARA:  Object to the form.

 5           THE WITNESS:  Over 6 million shares.

 6   BY MR. STECKLER:

 7   Q.      Who is the owner of Pearl Success International?

 8           MR. McNAMARA:  Object to the form.

 9           THE WITNESS:  Can I see the characters?

10           MR. STECKLER:  I don't have characters.

11           MS. ZHANG:  If I am not wrong, it's (in

12   Chinese).  I mean the Pearl Company.

13           MS. HUANG:  Surest is two different entities.

14           MS. ZHANG:  I mean the Pearl Company.

15           MS. HUANG:  Pearl Company.

16           MR. McNAMARA:  Pearl and Surest.

17           THE WITNESS:  Okay.  I got it.

18           MR. STECKLER:  Okay.

19           THE INTERPRETER:  Interpreter will reinterpret

20   the question asked.

21           THE WITNESS:  I do not know.

22   BY MR. STECKLER:

23   Q.      Do you know who the owner of Zhenshi Group is?

24           MR. McNAMARA:  Object to the form.

25           THE WITNESS:  It seems that the company has a
```

Confidential - Subject to Further Confidentiality Review

1   lot of shareholders.  The main shareholder is Mr. Zhang.

2   BY MR. STECKLER:

3   Q.     Do you own shareholders of Zhenshi Group?

4          MR. McNAMARA:  Slavery is abolished.

5          THE WITNESS:  No.

6   BY MR. STECKLER:

7   Q.     Why did you form Surest Financial?

8          MR. McNAMARA:  Object to the form.

9          THE WITNESS:  To invest in Jushi Group.

10  BY MR. STECKLER:

11  Q.     Why did you have to create Surest Financial to

12  invest in Jushi Group?

13         MR. McNAMARA:  Object to the form.

14         MR. STECKLER:  What's the basis, Counsel?

15         MR. McNAMARA:  It's beyond the scope of the

16  Notice --

17         MR. STECKLER:  Okay.

18         MR. McNAMARA:  -- and there's no foundation.

19         THE WITNESS:  Do I need to answer his question?

20         MR. STECKLER:  Yes.

21         MR. McNAMARA:  Yes.

22         THE WITNESS:  Repeat the question.

23         Because in order to invent the company, we have

24  to have a company to invest in that company.

25

Confidential - Subject to Further Confidentiality Review

1   BY MR. STECKLER:

2   Q.      Why?

3           MR. McNAMARA:  Object to the form.

4           THE WITNESS:  To my knowledge, everybody is

5   doing that, to use a company to invest in another

6   company.

7   BY MR. STECKLER:

8   Q.      And where is Jushi Group based or incorporated?

9           MR. McNAMARA:  Object to the form.

10          THE WITNESS:  China.

11  BY MR. STECKLER:

12  Q.      And Surest Financial is a shareholder of Jushi

13  Group?

14          MR. McNAMARA:  Object to the form.

15          THE WITNESS:  (In English)  Okay.  Surest be the

16  chief group shareholder, then --

17          THE INTERPRETER:  Interpreter needs to clarify

18  with deponent.

19          THE WITNESS:  Surest Company invested in Jushi

20  Group, and then in 2011 China Jushi purchased 49 percent

21  of Jushi Group, and then Jushi Group became 100

22  percently (sic) owned by China Jushi.

23  BY MR. STECKLER:

24  Q.      So do you as an owner of Surest have an interest

25  in China Jushi now?

Confidential - Subject to Further Confidentiality Review

1          MR. McNAMARA:  Object to the form.

2          THE WITNESS:  Over 40 -- over 6 million of

3     Surest's share currently belongs to China Jushi.

4     BY MR. STECKLER:

5     Q.     What percentage share does Surest have of Jushi

6     Group?

7          MR. McNAMARA:  Object to the form.

8          THE WITNESS:  100 percent owned by China Jushi;

9     therefore, Jushi Group has no other shareholders besides

10    China Jushi.

11    BY MR. STECKLER:

12    Q.     And does Surest own shares in China Jushi?

13         MR. McNAMARA:  Object to the form.

14         THE WITNESS:  Does Surest own shares in China

15    Jushi?

16         MR. STECKLER:  Yes, sir.

17         THE WITNESS:  Yes.

18    BY MR. STECKLER:

19    Q.     What percentage does Surest own in China Jushi?

20         MR. McNAMARA:  Object to the form.

21         THE WITNESS:  Approximately 0.6 percent.

22         MR. STECKLER:  Okay.

23    BY MR. STECKLER:

24    Q.     Is Surest incorporated in the British Virgin

25    Islands?

Confidential - Subject to Further Confidentiality Review

```
 1           MR. McNAMARA:  Object to the form.

 2           THE WITNESS:  Yes.

 3  BY MR. STECKLER:

 4  Q.      Why?

 5           MR. McNAMARA:  Same objection.

 6           THE WITNESS:  What did he ask?

 7           THE INTERPRETER:  Should the interpreter just

 8  repeat the question?

 9           THE WITNESS:  It has to have a location.  If it

10  was incorporated in Hong Kong, you would have asked why

11  Hong Kong.

12  BY MR. STECKLER:

13  Q.      Where do you live, sir?

14  A.      In China and the United States.  Half and half.

15  Q.      Where is your residence in the United States?

16           MR. McNAMARA:  Object to the form.

17           THE WITNESS:  Los Angeles.

18  BY MR. STECKLER:

19  Q.      What's the street address, sir?

20           MR. McNAMARA:  Is that necessary, Bruce?  Why do

21  you need that?

22           MR. STECKLER:  Because every company that's

23  affiliated with him has the same address.

24           MR. McNAMARA:  Same business address?

25           MR. STECKLER:  Yes.
```

Confidential - Subject to Further Confidentiality Review

```
1            MR. McNAMARA:  So why is his personal address

2    relevant?

3            MR. STECKLER:  I don't have to answer the

4    question.

5            MR. McNAMARA:  Well, no, I think you do.

6    Because this is --

7            MR. STECKLER:  Because --

8            MR. McNAMARA:  -- sounding like harassment.  I

9    mean, you're --

10           MR. STECKLER:  No.  No.

11           MR. McNAMARA:  You're asking his personal

12   address?

13           MR. STECKLER:  Well, yeah, let's --

14           MR. McNAMARA:  He's a representative of the

15   company here.

16           MR. STECKLER:  Yes, it's true, he's a

17   representative of the company.  And we're going to two

18   things here:  We're going to jurisdiction and contempt.

19   We have --

20           MR. McNAMARA:  We're not a party.  I don't know

21   what you're talking about.  You subpoenaed us.

22           MR. STECKLER:  No.  You're -- that's exactly

23   right.

24           And as you can see by the testimony we've

25   elicited today, and this might come as a surprise to
```

1    you, but Jushi USA is run by -- is run by CNBM, okay, as

2    well as the other affiliates and entities and is doing

3    business in the United States.  You may not like that,

4    that's our position, and that's where we're headed.

5              MR. McNAMARA:  Okay.  I understand that's your

6    position, and you're wrong, but I still don't see what

7    the relevance of his personal address is.

8              MR. STECKLER:  And I appreciate what you're

9    saying, but I think it goes to doing business in the

10   United States.

11             MR. McNAMARA:  We've conceded all along that

12   Jushi USA does business --

13             MR. STECKLER:  You --

14             MR. McNAMARA:  -- in the United States.

15             MR. STECKLER:  You know what?  If you don't want

16   him to answer it, you can instruct him not to answer it.

17             MR. McNAMARA:  I'm going to instruct him not to

18   answer that.

19             MR. STECKLER:  Okay.

20             MR. McNAMARA:  That's out of bounds.

21             MR. STECKLER:  Okay.  It will come up in --

22   later on in the documents, I'm sure.

23             Should be a translated document as well on that.

24             MR. GAUGHAN:  Last one here.

25             MR. STECKLER:  Do you have the translation?

Confidential - Subject to Further Confidentiality Review

```
 1          MR. GAUGHAN:  Is that -- let me see it for a

 2   second.

 3          Kind of pull them apart, so you've got this one

 4   and then whatever this one will be, A.

 5          MR. STECKLER:  Did you look at the back of that?

 6          MR. GAUGHAN:  What's that?

 7          MR. STECKLER:  Look at it.

 8          MR. McNAMARA:  Do you want to take a break?

 9          MR. STECKLER:  No.  That's fine.

10          Here.  Let me just go ahead and do this.

11          Can I see those exhibits?

12          What number are we on now?

13          THE COURT REPORTER:  Nine.

14          MR. STECKLER:  Can you mark this as Exhibit

15   Number 9.

16          (Exhibit 9 was marked for identification.)

17          MR. GAUGHAN:  There's probably no match.  Is

18   that what you're telling me?

19   BY MR. STECKLER:

20   Q.     I'm going to hand you what I'm going to mark as

21   Exhibit Number 9 -- can you put that on there, please --

22   to your deposition.

23          MR. STECKLER:  Pass those down.

24   BY MR. STECKLER:

25   Q.     Is this a business record of Jushi USA?
```

Confidential - Subject to Further Confidentiality Review

1   A.      I will probably need a translation.

2           MR. McNAMARA:  Oh.  Did you only give him the

3   English version?

4           MR. STECKLER:  Yeah.

5           Do you have a translation?  I didn't have a

6   translation.

7           MR. McNAMARA:  But this says that it was -- I

8   think --

9           MR. STECKLER:  It says --

10          MR. McNAMARA:  -- we produced it in Chinese.

11          MR. STECKLER:  It says that.  I did not see it.

12  I'm asking Matt to look for it.

13          MR. GAUGHAN:  Yeah.

14  BY MR. STECKLER:

15  Q.      But let me represent to you, this was produced

16  to us by your counsel.

17          And my question to you is, is this a business

18  record of Jushi USA?

19          MR. McNAMARA:  Wait.

20          I'm going to object and -- because I don't think

21  that's what this is.  I think you're -- this is a

22  translation of part of a document that you say was

23  produced.

24          MR. STECKLER:  Hold on.  Are these your Bates

25  stamps at the top?

Confidential - Subject to Further Confidentiality Review

```
 1            MR. McNAMARA:  I see, "Translation of JushiUSA."

 2            MR. STECKLER:  What do you see underneath it,

 3    Counsel?

 4            MR. McNAMARA:  I see JushiUSA and then -- and a

 5    Bates number.

 6            This is -- this isn't something -- this is

 7    something that you must have created.  We didn't create

 8    anything that looks like this.

 9            MR. STECKLER:  Okay.

10    BY MR. STECKLER:

11    Q.    Let me ask you some questions.

12            So is it your testimony that -- well, let's let

13    the -- let's let him answer the question.

14            Is this a business record of Jushi USA, as far

15    as you know?

16            MR. McNAMARA:  Wait.

17            Bruce, you asked that and he said he needed a

18    translation.

19            THE WITNESS:  This is my first time seeing it.

20    BY MR. STECKLER:

21    Q.    Did Jushi Group purchase 100 percent of

22    Faithrich Enterprises, Limited, in 2011?

23            MR. McNAMARA:  Well, I'm going to object.

24            Are you asking him to read what's written --

25            MR. STECKLER:  No.
```

Confidential - Subject to Further Confidentiality Review

1          MR. McNAMARA:  -- on this page?

2          MR. STECKLER:  No.

3          MR. McNAMARA:  Because she's --

4          MR. STECKLER:  No.  I'm asking him a question,

5    Counsel.

6          MR. McNAMARA:  Well, right.  But this is very

7    misleading because the interpreter is leaning over and

8    showing him what's written on the page, making it

9    suggest to him like the question is what is written on

10   the page.

11         MR. STECKLER:  Are you impunging the interpreter

12   or are you going to let me ask the question?

13         MR. McNAMARA:  No.

14         MR. STECKLER:  So you think --

15         MR. McNAMARA:  I think if you want to ask the

16   next question independently --

17         MR. STECKLER:  I'm asking him a question.

18         MR. McNAMARA:  -- have him put the document down

19   and ask him the question.

20         MR. STECKLER:  Hold on.

21         MR. McNAMARA:  If he knows, he knows.

22         MR. STECKLER:  Hold on, Counsel.

23         Under what rule do I have to put the paper down

24   to not tell him a question?

25         I'm asking him a question, I have a document in

1    front of him, he answered it.  Now I'm asking questions.

2         I'm sorry you don't like the way I'm doing it.

3    Stop interrupting.

4         MR. McNAMARA:  No, absolutely not, Bruce.  If

5    this is a document that you created and you're going to

6    ask him to read as if it's fact, it's not fair.

7         MR. STECKLER:  I didn't ask him to read it.

8         Did I ask him to read it, Counsel?

9         MR. McNAMARA:  He effectively agreed to that.

10        MR. STECKLER:  Did I ask him to read it?

11        MR. McNAMARA:  If he -- if you're going to --

12   are you going to ask him about this document?

13        MR. STECKLER:  Did I ask him to read it?

14        MR. McNAMARA:  You effectively did, yes.

15        MR. STECKLER:  Did I ask him --

16        MR. McNAMARA:  Yes.

17        MR. STECKLER:  -- to read it?

18        MR. McNAMARA:  Yes, you did.

19        MR. STECKLER:  I did not ask him to read it.

20        MR. McNAMARA:  If you want to ask him a

21   question, you can ask him a question from his memory.

22        MR. STECKLER:  Counsel, you have just spent a

23   waste of time interrupting the record.  I'm sorry this

24   isn't going the way you like, but stop, please.

25

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. STECKLER:

 2   Q.    Did Jushi Group purchase 100 percent of

 3   Faithrich Enterprises, Limited, in 2011?

 4         MR. McNAMARA:  Object to the form.

 5         THE WITNESS:  Faithrich.  What Faithrich?  How

 6   do you spell it?

 7         MR. STECKLER:  Do you want me to spell Faithrich

 8   in English and you're going to tell him the characters?

 9         THE WITNESS:  In 2011, Jushi Group purchased a

10   company in Hong Kong or somewhere else, which I do not

11   recall.  Jushi purchased it from them.

12   BY MR. STECKLER:

13   Q.    Did Jushi Group purchase Gibson Enterprises,

14   Inc., in 2011?

15         MR. McNAMARA:  Object to the form.

16         THE WITNESS:  Jushi did purchase a company in

17   Hong Kong or elsewhere.  That company has 100 percent

18   share of Gibson Company.

19         MR. STECKLER:  Okay.

20   BY MR. STECKLER:

21   Q.    You're familiar with the transaction whereby

22   Jushi Group bought the Gibson Company?

23         MR. McNAMARA:  Object to the form.

24         THE WITNESS:  How should I say familiar or not?

25         I'm aware of that but I'm not sure about the
```

 1   details they discussed.

 2   BY MR. STECKLER:

 3   Q.      When did you first begin working for Jushi USA?

 4   A.      2011.

 5   Q.      And when were you hired in 2011 to begin working

 6   at Jushi USA?

 7   A.      Okay.  From the day Jushi USA was established.

 8   Q.      And when was the day that Jushi USA was

 9   established?

10   A.      I do not recall.

11   Q.      Do you remember what month?

12   A.      I do not recall.

13   Q.      Who established Jushi USA?

14   A.      Okay.  It was changed from Gibson to the name of

15   Jushi USA.

16   Q.      Who changed the name of Gibson to Jushi USA?

17   A.      Mr. Zhang of Jushi Group told us to change that.

18   Q.      And did you listen to Mr. Zhang of Jushi Group

19   and change the name of Gibson to Jushi USA?

20   A.      Yes.

21   Q.      And when did that occur?

22   A.      I believe either in 2011 or 2012.  I do not have

23   a clear recollection on that.

24           Upon receiving his instruction, I told them to

25   go ahead and do the thing because I did not have -- I

Confidential - Subject to Further Confidentiality Review

1   did not actually do the thing.

2   Q.      And was Jushi USA formed in the State of

3   California in the United States?

4   A.      Yes.

5          MR. STECKLER:  Put a sticker on it, please.

6          (Exhibit 10 was marked for identification.)

7          (Exhibit 10-A was marked for identification.)

8          MR. STECKLER:  The sticker -- oh, no.  The

9   exhibit sticker, please.

10         MS. ZHANG:  What's the number?  11?  10.

11  BY MR. STECKLER:

12  Q.      I'm going to hand you what we're going to mark

13  as Exhibit Number 10 and 10-A.

14         MR. STECKLER:  Here.  I've got this.

15         MR. McNAMARA:  So do you have the -- let me just

16  see what he's got here.

17         MR. STECKLER:  Why don't you look at a copy I

18  just gave you, Counsel.

19         MR. McNAMARA:  Well, I just want to make sure --

20  okay.  So let me see.  Just so -- because we didn't --

21  the copies that we have don't have any markings on them

22  so I don't know what is 10 and what is 10-A.

23         So each paperclipped thing is -- has two sheets.

24  One of them is -- first is Exhibit 10 in English and the

25  second is in Chinese and that's Exhibit 10-A; is that

```
 1   correct, Bruce?

 2        MR. STECKLER:  You'll have to look.  Your

 3   witness has the document we marked.

 4        MR. McNAMARA:  Okay.  So I could just be making

 5   it up.

 6        All right.  Go ahead.

 7   BY MR. STECKLER:

 8   Q.     Sir, is Exhibit 10 and 10-A, do they appear to

 9   be business records of Jushi USA?

10   A.     Yes.

11   Q.     And these are Bates stamped JushiUSA-0011386 and

12   0011386.0001.

13        Do you see that?

14        MR. McNAMARA:  Just for the record on that,

15   Bruce, we didn't actually put Bates stamps on the

16   document so, to the extent necessary, we'll verify that

17   those were the document identifier numbers that were

18   included in the metadata of the documents we produced to

19   you, which we produced in native form.

20        THE WITNESS:  Did he just ask me whether the

21   document's number is this number?

22        MR. STECKLER:  Yes, I did.  A long time ago.

23        THE WITNESS:  0001.

24        MR. STECKLER:  Yes.  Okay.

25
```

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. STECKLER:

 2   Q.      At the very top of the document it indicates

 3   "China Fiberglass Auditing Firm."

 4           Do you see that?

 5   A.      I see that.

 6   Q.      What is the China Fiberglass auditing firm that

 7   is being referred to here?

 8   A.      They did send, it seems, two people, 2 C.P.A.s,

 9   to the company for about four or five days and looked at

10   our annual report and to audit the goods in every one of

11   our warehouses.

12   Q.      In 2011, China Fiberglass -- well, strike that.

13           China Fiberglass is now called China Jushi.

14           Is that your understanding?

15           MR. McNAMARA:  Object to the form.

16           THE WITNESS:  Yes.

17           MR. STECKLER:  What's the basis, Counsel?

18           MR. McNAMARA:  Outside the scope of the Notice.

19           MR. STECKLER:  Okay.

20   BY MR. STECKLER:

21   Q.      And under Number 1 it indicates that China

22   Securities Regulatory Committee provides that

23   shareholders and subordinates that have interest in the

24   company shall be subject to supervision.

25           Can you tell me what that means?
```

Confidential - Subject to Further Confidentiality Review

```
 1    A.      I -- my understanding is that China Securities

 2    Regulatory Committee is an organization supervising

 3    public listing companies.  Then they would check and see

 4    whether the company is personally in charge or the

 5    company's shareholder would use other company, the

 6    subsidiaries of other company, to occupy the interest of

 7    China Fiberglass Company.

 8    Q.      And China Fiberglass Company, as now known as

 9    China Jushi and Jushi USA, is a subsidiary of that

10    company; correct?

11            MR. McNAMARA:  Object to the form.

12            THE WITNESS:  China Jushi is a subsidiary of

13    Jushi Group.

14    BY MR. STECKLER:

15    Q.      Actually, isn't China Jushi the parent of Jushi

16    Group?

17            MR. McNAMARA:  Object to the form.

18            THE WITNESS:  Under -- under China Jushi it owns

19    Jushi Group and under Jushi Group it owns Jushi USA;

20    therefore, my understanding is Jushi USA is the

21    subsidiary of Jushi Group and it is the grandson company

22    of China Jushi.

23    BY MR. STECKLER:

24    Q.      And Jushi USA has to report and be audited to

25    comply with China Jushi listing requirements.
```

Confidential - Subject to Further Confidentiality Review

1        Is that your understanding?

2        MR. McNAMARA:  Object to the form.

3        THE WITNESS:  Jushi USA would listen to the

4   instructions of Jushi Group.  We would provide whatever

5   documents they asked for.

6   BY MR. STECKLER:

7   Q.    Even if it was needed for China Jushi, formerly

8   known as China Fiberglass; correct?

9        MR. McNAMARA:  Object to the form.

10       THE WITNESS:  Yes.  As long as it is something

11  that is required of us from Jushi Group, we would

12  provide all to them.

13       MR. STECKLER:  Can I see the documents in front

14  of you, sir?  The one before that.  I believe it's

15  Exhibit Number 9.

16       Do you have that?

17       MS. ZHANG:  It's up here.

18       MR. STECKLER:  As part of Exhibit Number 9 I'm

19  going to provide you Exhibit 9-A, which is a translation

20  for your review.

21       (Exhibit 9-A was marked for identification.)

22  BY MR. STECKLER:

23  Q.    Is this a business record of Jushi USA, sir?

24  A.    This is my first time seeing it.  I don't think

25  it is in my record.

1    Q.     Do you know why your counsel would produce this

2    to us if it was not a record of Jushi USA?

3    A.     This is my first time seeing it.  I do not know.

4    Q.     Is this the type of record that would be kept in

5    the ordinary course of business of Jushi USA?

6    A.     It can't be because I have not seen this.

7    Q.     So you have seen every document that would be

8    considered a business record of Jushi USA; is that

9    right?

10         MR. McNAMARA:  Object to the form.

11         THE WITNESS:  How to say that?

12         Okay.  I would believe it is something I have

13   seen if it is something I have seen, but if you asked me

14   something I have not seen -- (In English)  I don't know

15   (Through the interpreter) -- I don't know.

16         MR. STECKLER:  I understand.

17   BY MR. STECKLER:

18   Q.     Does this record relate to the formation of

19   Jushi USA, to the best of your knowledge?

20         THE INTERPRETER:  May the interpreter clarify

21   with counsel the word "formation" here?

22         MR. STECKLER:  Creation.

23         THE INTERPRETER:  Thank you.

24         And there is no change in her interpretation.

25         THE WITNESS:  Whether it is related to the

Confidential - Subject to Further Confidentiality Review

1    formation of Jushi USA, yes, it appears to be so.

2    BY MR. STECKLER:

3    Q.    Is there anything in that document, based upon

4    your personal knowledge, that appears to be incorrect?

5    A.    I can't be sure about a lot of things, whether

6    there had been a meeting or not and whether those people

7    were present or not in the meetings.

8    Q.    I appreciate that.

9          Is there anything in the factual basis of that

10   memorandum that appears incorrect or not true, to the

11   best of your knowledge?

12   A.    Because this is my first time seeing this and I

13   did not attend the meeting, therefore, when I look at

14   it, I can only say that these people on there appear to

15   be the people in charge of China Jushi.

16   Q.    Okay.  Let me hand you what I'm going to mark as

17   Exhibit Number 11 to your deposition and 11-A.

18          (Exhibit 11 was marked for identification.)

19          (Exhibit 11-A was marked for identification.)

20   BY MR. STECKLER:

21   Q.    Do you know if this is a business record of

22   Jushi USA, sir?

23   A.    Yes.

24   Q.    This document indicates that, on Page 2 under

25   Number 2, that after January 1st, 2011, the profits of

Confidential - Subject to Further Confidentiality Review

1    United States Gibson Enterprises will be 100 percent,

2    will belong 100 percent to Jushi Group.

3            Was that correct?

4    A.      Yes.

5    Q.      I'm going to hand you what we're going to mark

6    as Exhibit Number 12 and 12-A to your deposition.

7            (Exhibit 12 was marked for identification.)

8            (Exhibit 12-A was marked for identification.)

9    BY MR. STECKLER:

10   Q.      Is this a business record of Jushi USA?

11   A.      Could you repeat the question?

12           THE INTERPRETER:  The interpreter will repeat

13   the question.

14           THE WITNESS:  No.

15   BY MR. STECKLER:

16   Q.      What is a Power of Attorney, as far as you know,

17   sir?

18   A.      It is that Mr. S-O-N-G cannot attend the meeting

19   and asked Mr. Cao, C-A-O, to attend the meeting.  That's

20   it.

21   Q.      Is he asking Mr. Cao to exercise his voting

22   rights?

23   A.      Yes, according to the three proposals mentioned

24   below.

25   Q.      And do these voting rights that are being

Confidential - Subject to Further Confidentiality Review

```
 1   exercised by Mr. Cao on behalf of Mr. Song and CNBM

 2   involve Jushi Group?

 3          MR. McNAMARA:  Object to the form.

 4          THE WITNESS:  Let me take a look at whether he

 5   represents China Jushi or Jushi Group.  I don't know.

 6          Yes.

 7          MR. STECKLER:  Thank you.

 8          (Exhibit 13 was marked for identification.)

 9          (Exhibit 13-A was marked for identification.)

10   BY MR. STECKLER:

11   Q.     Let me now have you look at what we're going to

12   mark as Exhibit 13 and 13-A to your deposition.

13          Are you ready for me to ask a question, sir?

14   A.     Okay.  Yeah.  Yeah.

15   Q.     Is this a business record of Jushi USA?

16   A.     This is a conclusion made by the C.P.A.s based

17   on the completion of that investigation.  This is not

18   conclusion made by us, Jushi USA.

19   Q.     Is it a business record, sir, in that it was

20   maintained in the course of the business of Jushi USA at

21   or around the time provided on here and kept in the

22   ordinary course of business by the company and has not

23   yet been changed in any way?

24          MR. McNAMARA:  Object to the form.

25          THE WITNESS:  This is also a document that I'm
```

Confidential - Subject to Further Confidentiality Review

```
 1   seeing for the first time here.

 2           To me, this document is possibly, was a

 3   conclusion made upon the completion of the two people

 4   whom we have just mentioned -- we had just mentioned,

 5   upon these two people's investigation.  But I was not

 6   informed of that beforehand.  I'm only seeing that right

 7   now.

 8           MR. STECKLER:  I appreciate that, sir.

 9           I'm going to object as nonresponsive.

10   BY MR. STECKLER:

11   Q.     Is this a record kept in the ordinary

12   course of business of Jushi USA, that being an audit

13   done by either China Jushi or Jushi Group?

14           MR. McNAMARA:  Object to the form.

15           THE WITNESS:  Was the attorney asking whether it

16   is a record that I've kept in the United States?  I did

17   not hear clearly.

18           MR. STECKLER:  Yes.

19           THE WITNESS:  What was he asking?

20           MR. STECKLER:  Yes.

21   BY MR. STECKLER:

22   Q.     Is this a record kept, is this a business record

23   kept in the ordinary course of business of Jushi USA,

24   since it's an audit that was done either at the

25   direction or for China Jushi or Jushi Group?
```

Confidential - Subject to Further Confidentiality Review

1          MR. McNAMARA:  Object to the form.

2          THE WITNESS:  First of all, it is not something

3     that we ourself have made.

4          Second of all, to my recollection, I don't think

5     that our company would have something like this because,

6     to my recollection, I have not seen this document.

7     BY MR. STECKLER:

8     Q.     Was this an audit done of Jushi USA?

9          MR. McNAMARA:  Object to the form.

10         THE WITNESS:  Yes.

11    BY MR. STECKLER:

12    Q.     Who did audits of Jushi USA and why?

13    A.     Jushi Group did auditing on all of its overseas

14    companies, including in the United States and other

15    countries.

16    Q.     And you didn't keep the documents regarding the

17    audits?

18    A.     Because we have auditing in the office of the

19    United States every year.  The C.P.A. in the United

20    States made the auditing.  The auditing made by the

21    C.P.A. of the United States is something we want.

22    Q.     And do you keep that auditing as part of your

23    business records?

24    A.     The auditing is not kept with me but kept with

25    the accountant.

Confidential - Subject to Further Confidentiality Review

1   Q.      So how did this audit miraculously appear in my

2   hands from your lawyer?

3           MR. McNAMARA:  Object to the form.

4           THE WITNESS:  I do not know.

5   BY MR. STECKLER:

6   Q.      Do you ask the C.P.A. that you hire to maintain

7   and keep copies of the audits, which would be the

8   business records of Jushi USA?

9   A.      Yes.

10  Q.      Is Exhibit Number 13 and 13-A one of those

11  documents, sir?

12          MR. McNAMARA:  Object to the form.

13          THE WITNESS:  Repeat that?

14          No.

15  BY MR. STECKLER:

16  Q.      So how is it that I miraculously received this

17  audited document from another company?

18          MR. McNAMARA:  Bruce, you asked that question.

19  He said he didn't know.  You've asked it several times.

20  I think it's time to move on.

21          MR. STECKLER:  I appreciate your help, Counsel.

22          MR. McNAMARA:  Object to the form.

23          THE WITNESS:  Because this is my first time

24  seeing it.

25

Confidential - Subject to Further Confidentiality Review

1  BY MR. STECKLER:

2  Q.     Do you know who the main office is on this

3  document?

4  A.     I do not know.

5  Q.     Under Number II it says, "The Importance of the

6  Businesses of Jushi USA."

7         Do you see that?

8  A.     It's not here.

9  Q.     I'm sorry?

10        MR. McNAMARA:  It's not on the copy that we

11  have.

12        MR. STECKLER:  At the very top does it say,

13  "Reply from the Main Office on the Audit Affairs of the

14  U.S.A. Company"?

15        MR. McNAMARA:  So, Bruce, when you said Number

16  2, I thought you meant Arabic 2, which is at the bottom.

17  It says, "Reasons for the fall of U.S. Dollar Exchange

18  Rate."

19        You were meaning Roman numeral II; is that

20  right?

21  BY MR. STECKLER:

22  Q.     Do you see under Roman numeral II where it says,

23  "The Importance of the Businesses of Jushi USA"?

24  A.     I see that.

25  Q.     Okay.  Who else would Jushi USA business be

Confidential - Subject to Further Confidentiality Review

```
 1   important to other than just Jushi USA?

 2   A.      Jushi Group has a sales quantity of about 1

 3   million tons per year.  Jushi USA last year, in 2014,

 4   had sold more than 7 million tons.

 5           THE INTERPRETER:  Interpreter correction:

 6   70,000 tons, more than 70,000 tons.

 7           THE WITNESS:  Which is about 7 percent.

 8   BY MR. STECKLER:

 9   Q.      So Jushi USA sold 70,000 tons in the United

10   States?

11   A.      Yes.  In 2014.

12   Q.      Where was the product from?

13   A.      Jushi Group.

14   Q.      And did you sell that product throughout the

15   United States?

16   A.      Yes.

17   Q.      And did you sell fiberglass from July --

18           MR. McNAMARA:  17th.

19   BY MR. STECKLER:

20   Q.      -- July 17th, 2014, to March --

21           MR. McNAMARA:  31.

22   BY MR. STECKLER:

23   Q.      -- 31st, 2015, in the United States?

24   A.      Yes.

25   Q.      And were the profits of Jushi USA's business in
```

1    the United States sent to Jushi Group?

2    A.      If the income is recorded as Chinese income,

3    income reflected from the accountant's financial

4    statement, but the money is kept in the company of Jushi

5    USA.

6    Q.      And that would include profits earned from

7    July 17th, 2014, to March 31st, 2015?

8    A.      Yes.

9    Q.      And during that period of time did you purchase

10   all the products from Jushi Group?

11   A.      Yes.

12           (Exhibit 14 was marked for identification.)

13           (Exhibit 14-A was marked for identification.)

14   BY MR. STECKLER:

15   Q.      Sir, I'm going to hand you what's been marked as

16   Exhibit 14 and 14-A to your deposition.

17           Is Exhibit Number 13 and 13-A -- oh, it's 14.

18   Strike that.

19           Are Exhibits Number 14 and 14-A business records

20   of Jushi USA?

21   A.      It does not belong to Jushi USA.

22   Q.      Do you believe this is a Jushi Group document,

23   sir?

24   A.      Yes.

25   Q.      And this document is a Resolution signed by

```
 1   Jushi Group's board of directors; is that right?

 2          MR. McNAMARA:  Object to the -- object to the --

 3   sorry.

 4          Object to the form.

 5          THE WITNESS:  Yes, it is --

 6   BY MR. STECKLER:

 7   Q.     How do you know that?

 8   A.     -- Jushi Group's because that's what it says

 9   there, Jushi Group.

10   Q.     And this document --

11   A.     But I --

12   Q.     I'm sorry.

13   A.     -- personally believe it is Jushi China

14   Fiberglass because Q-I-U space Z-H-O-N-G-W-E-I, C-A-I

15   space G-U-O-B-I-N, Z-H-O-U space S-E-N-L-I-N are all

16   directors from China Fiberglass, not Jushi Group.

17          THE INTERPRETER:  Interpreter needs to clarify

18   with deponent.

19          Upon clarifying with the witness, the

20   interpreter would like to take out the person by the

21   name of Q-I-U, space, Z-H-O-N-G-W-E-I and to add last

22   name C-A-O, first name J-I-A-N-G-L-I-N.

23   BY MR. STECKLER:

24   Q.     And while those gentlemen are with China

25   Fiberglass, this document indicates that they are on the
```

Confidential - Subject to Further Confidentiality Review

1   board of directors of Jushi Group Company, Limited;

2   correct?

3           MR. McNAMARA:  Object to the form.

4           THE WITNESS:  I don't know.

5           My opinion is that these three are the directors

6   of China Jushi.  That's to my own knowledge, because

7   this is not my document.

8   BY MR. STECKLER:

9   Q.      Well, I'm just asking your knowledge now.

10          Are these three gentlemen a member of, as far as

11  you know, China Fiberglass as well as Jushi Group?

12          MR. DAVIDSON:  Object to the form.

13          THE WITNESS:  I do not know because sometimes

14  they're really confusing to me.

15  BY MR. STECKLER:

16  Q.      Is that -- are they confusing because Jushi

17  Group and China Jushi have a lot of the same members of

18  the boards of directors?

19          MR. McNAMARA:  Object to the form.

20          THE WITNESS:  Okay.  To me, because my contact

21  is Mr. Zhang in Jushi Group and, of course, he's also

22  with China Jushi, but as for others, because we do not

23  have a lot of interactions, therefore, I'm not sure

24  about specifically whether the other people are the

25  directors or not.

Confidential - Subject to Further Confidentiality Review

1   BY MR. STECKLER:

2   Q.      In 2012, did Jushi USA have a warehouse in

3   Miami, Florida?

4   A.      Jushi USA had been having a warehouse in Miami

5   for quite a while.  I don't recall which year did they

6   move to South Carolina.

7   Q.      Does -- when -- did Jushi Group in 2014 up until

8   today have a warehouse in South Carolina?

9           MR. McNAMARA:  Object to form.

10          THE WITNESS:  Yes.

11  BY MR. STECKLER:

12  Q.      And did Jushi USA have a warehouse in 2014 up

13  until today in California?

14  A.      Yes.

15  Q.      Let me hand you what we're going to mark as

16  Exhibit Number 15 and 15-A.

17          (Exhibit 15 was marked for identification.)

18          (Exhibit 15-A was marked for identification.)

19  BY MR. STECKLER:

20  Q.      Have you ever seen this document before, sir?

21  A.      No.

22  Q.      So I take it you don't believe this is a

23  business record of Jushi USA?

24  A.      It is not.

25  Q.      And this is another Power of Attorney by CNBM to

1    Mr. Cao to attend a China Fiberglass meeting.

2         Is that your understanding?

3         MR. McNAMARA:  Object to the form.

4         THE WITNESS:  This is also my first time seeing

5    this document.

6         From the document that you handed to me, I see

7    Mr. S-O-N-G space Z-H-I-P-I-N-G entrusts Mr. C-A-O space

8    J-I-A-N-G-L-I-N to vote on his behalf of these two

9    proposals.

10   BY MR. STECKLER:

11   Q.    Is one of the proposals for Jushi Group Company,

12   Limited, to establish Jushi USA Fiberglass Company,

13   Limited?

14   A.    No.  It clearly states to establish Jushi USA

15   Fiberglass Company, Limited.  One moment.  Let me take a

16   look.

17        I believe the company is a newly established

18   company, not the company that we have currently.  As it

19   says, establish Jushi USA Fiberglass Company, Limited,

20   and to build a production line with an annual production

21   capacity of 100,000 tons alkali-free fiberglass.

22        Because this project has always been handled

23   between China and South Carolina directly, they don't

24   want us to get involved in this matter.

25   Q.    But this proposal is for Jushi Group Company,

Confidential - Subject to Further Confidentiality Review

```
 1    Limited, to establish Jushi USA Fiberglass Company,

 2    Limited, which is the exact name of the company that

 3    you're with.  Isn't that true?

 4            MR. McNAMARA:  Object to form.

 5            THE WITNESS:  One minute.

 6            MR. STECKLER:  Do you want to take a break and

 7    let you look at this?

 8            THE WITNESS:  All right.  I'd like to look

 9    into --

10            MR. STECKLER:  Sure.

11            THE WITNESS:  -- the document.

12            VIDEO OPERATOR:  Go off the record?

13            MR. STECKLER:  Yes, please.

14            VIDEO OPERATOR:  With the approval of counsel,

15    going off the record.

16            The time is approximately 3:57 p.m.

17            (Recess, 3:57-4:09 p.m.)

18            VIDEO OPERATOR:  With the approval of counsel,

19    back on the record.

20            The time is approximately 4:09 p.m.

21            This marks the beginning of recording File

22    Number 4.

23    BY MR. STECKLER:

24    Q.      This Power of Attorney in which Mr. Cao is voted

25    at the authority of CNBM is for the establishment of
```

Confidential - Subject to Further Confidentiality Review

```
1    Jushi USA Fiberglass Company, Limited, and to build a

2    production line; is that right?

3          MR. McNAMARA:  Object to the form.

4          THE WITNESS:  To my understanding, where it

5    says, "Establish Jushi U.S.A. Fiberglass Company

6    Limited," is not referring to our company currently in

7    California because in Exhibit 14-A that counsel had just

8    handed over to me Resolution Number 3 of the third

9    meeting of the fourth session of the board of directors

10   of Jushi Group Company, Limited, Number 1, deliberated

11   and passed the proposal on establishing a new production

12   line with an annual production capacity of 100,000 tons

13   of glass fiber in the United States.  It was agreed that

14   the company would establish a wholly owned subsidiary in

15   South Carolina, United States.

16          Number 2, the new company's name of the U.S.

17   project --

18          THE INTERPRETER:  The interpreter needs to

19   clarify with deponent.

20          THE WITNESS:  Total investment, equity funds.

21          So based on these two items of record in 14-A,

22   therefore, I believe the issue being discussed on 15-A,

23   Number 1, where it says, Jushi Group Company, Limited,

24   to establish Jushi USA Fiberglass Company, Limited, to

25   build a production line with an annual production of et
```

Confidential - Subject to Further Confidentiality Review

1    cetera, et cetera, this has been clearly reflected on

2    14-A, which is -- which is to establish a new company in

3    South Carolina; therefore, there is no relationship

4    between the project in South Carolina and Jushi USA.

5          MR. STECKLER:  Objection.  Nonresponsive.  Move

6    to strike all the testimony that doesn't respond one bit

7    to the question I asked.

8          THE WITNESS:  Please have him ask again.

9    BY MR. STECKLER:

10   Q.     Let me start off, Exhibit 14 and 14-A is dated

11   August 16th, 2012; correct?

12         MR. McNAMARA:  Object to the form.

13         THE WITNESS:  Yes, that's what I see from this

14   document he gave me.

15   BY MR. STECKLER:

16   Q.     And this is a meeting of Jushi Group Company,

17   Limited; correct?

18         MR. McNAMARA:  Object to the form.

19   BY MR. STECKLER:

20   Q.     Exhibit 15 and --

21   A.     Jushi Group, correct.

22   Q.     Exhibit 15 and 15-A is a Power of Attorney for

23   the meeting of the shareholders of China Fiberglass

24   Company, Limited, which is the parent of Jushi Group;

25   correct?

Confidential - Subject to Further Confidentiality Review

1          MR. McNAMARA:  Objection to the form.

2          THE WITNESS:  Repeat that.

3          THE INTERPRETER:  Interpreter will repeat.

4          THE WITNESS:  Yes.

5     BY MR. STECKLER:

6     Q.      This meeting of the parent company that CNBM

7     through its authorized representative, Mr. Cao, is

8     voting is on November 12th, 2012; correct?

9          MR. McNAMARA:  Object to the form.

10         THE WITNESS:  It's in November the 12th or 13th?

11    Oh, the 12th.  That's correct.  November the 12th.

12         Yes.

13    BY MR. STECKLER:

14    Q.      The proposal that's provided under Number 1 is

15    for Jushi Group Company, Limited, to establish Jushi USA

16    Fiberglass Company, Limited, and build a production

17    line; isn't that correct?

18         MR. McNAMARA:  Object to the form.

19         THE WITNESS:  This is a Chinese Power of

20    Attorney which had been translated into English.  What

21    I'm reading is from the Chinese version.

22    BY MR. STECKLER:

23    Q.      And the Chinese version is a proposal for Jushi

24    Group Company, Limited, to establish Jushi USA

25    Fiberglass Company, Limited, and to build a production

```
 1   line.

 2           Do you see that, sir?

 3           MR. McNAMARA:  Object to the form.

 4           THE WITNESS:  I see that, but there are two

 5   Chinese characters, S-H-E, space, L-I, which is to set

 6   up.  But our company had been in existence for a long

 7   time.  We wouldn't set it up.

 8           MR. STECKLER:  Okay.

 9   BY MR. STECKLER:

10   Q.     And this is dated, the meeting is for

11   November 12th and CNBM is directing this vote by Mr. Cao

12   on November 8th, 2012; correct?

13           MR. McNAMARA:  Object to the form.

14           THE WITNESS:  Yes.

15   BY MR. STECKLER:

16   Q.     Let me hand you what I'm going to mark as

17   Exhibit Number 16.

18           (Exhibit 16 was marked for identification.)

19           THE INTERPRETER:  Thank you.

20   BY MR. STECKLER:

21   Q.     Sir, this is a public document in the State of

22   California and it's dated November 14th, 2012, and

23   signed by yourself and Mr. Chen -- Mrs. Chen.

24           Do you see that?

25   A.     Yes.
```

1    Q.      This is two days after the China Fiberglass

2    meeting; correct?

3            MR. McNAMARA:  Object to the form.

4            THE WITNESS:  I believe we were before them.

5    They are on November 12th, we're also on November the

6    12th.  The stamp was placed on November the 11th.

7    BY MR. STECKLER:

8    Q.      I'm sorry, sir.  It says this was filed on

9    December 12th, 2012, in the top right.

10           Do you see that?

11   A.      Yes.

12   Q.      And the date of the document is November 14th,

13   2012; correct?

14   A.      Yes.

15   Q.      And the date of the Agreement and the filing of

16   the Agreement are all after the meeting in which Mr. Cao

17   on behalf of CNBM was directed to vote to establish

18   Jushi USA Fiberglass Company, Limited; correct?

19           MR. McNAMARA:  Object to the form.

20           THE WITNESS:  Yes.  But they are two matters and

21   they're not together because nobody told me to

22   immediately change to this name after that meeting

23   because changing the name had been discussed a long time

24   ago and we had always been in discussion of that because

25   we needed to discuss that with the attorneys as well as

Confidential - Subject to Further Confidentiality Review

1    a C.P.A., to close the original company and establish

2    anew or -- or -- or to continue.

3          We had investigated for a long period of time,

4    for about two months.  Upon receiving all the answers

5    from the attorney and the C.P.A., only then we knew we

6    needed to do as such.

7          MR. STECKLER:  I'm going to object as

8    nonresponsive after "yes."

9    BY MR. STECKLER:

10   Q.     Do you know how long the China Fiberglass

11   Company proposal had been made before it was voted upon?

12         MR. McNAMARA:  Object to the form.

13   BY MR. STECKLER:

14   Q.     And to be clear, that's the proposal to

15   establish Jushi USA, for Jushi Group Company, Limited,

16   to establish Jushi USA Fiberglass Company, Limited.

17         MR. McNAMARA:  Object to the form.

18         THE WITNESS:  The matter is a continuation from

19   14-A to 15-A.  14-A is a resolution of the board of

20   directors' meeting.

21         After the board of directors' meeting had passed

22   the resolution approval of establishing a wholly owned

23   subsidiary company in South Carolina, then, again,

24   through a meeting called shareholders' meeting, they,

25   first of all, must have a resolution of the board of

Confidential - Subject to Further Confidentiality Review

1    directors' meeting.  The shareholders' meeting can be

2    held only after it has passed the resolution of the

3    board of directors' meeting; therefore, there is a

4    continuation of the two documents.

5    BY MR. STECKLER:

6    Q.     So after the initial Jushi Group proposal was

7    made, then we had to wait for China Fiberglass to

8    approve the proposal, and that depended upon the vote of

9    CNBM; isn't that right?

10           MR. McNAMARA:  Object to the form.

11           THE WITNESS:  First of all, Jushi Group's board

12    of directors' meeting had to approve and then -- then it

13    has to receive the approval of the public listing

14    company's shareholders meeting, and then that's the

15    conclusion.

16           Whether it would be passed or not passed would

17    depend on the entire members of shareholders voting.  So

18    if there were a lot of voters at the time, depending on

19    the participants of the voters, if more people approved,

20    then it would be agreed upon, if not, it would not be

21    agreed upon.

22    BY MR. STECKLER:

23    Q.     And the controlling shareholder of China

24    Fiberglass was CNBM; correct?

25           MR. McNAMARA:  Object to the form.

Confidential - Subject to Further Confidentiality Review

```
 1              THE WITNESS:  I have always been expressing that

 2    it is the biggest shareholder, with 30 percent -- 33

 3    percent of shares.

 4              MR. STECKLER:  All right.

 5    BY MR. STECKLER:

 6    Q.        And after the proposal and the meeting, you

 7    signed the document dated November 14 in which you

 8    amended the Articles of Incorporation in California in

 9    which you made the name of the company Jushi USA

10    Fiberglass Company, Limited; correct?

11    A.        These are two things.

12              On December 14th, 2014, when the company's name

13    had been changed to Jushi USA Fiberglass Company,

14    Limited, I signed on it, but I am not aware of these two

15    meetings.

16    Q.        I appreciate that.

17              But the fact is clear, based upon the documents,

18    after the meeting in which CNBM directed Mr. Cao to vote

19    for Jushi Group to establish Jushi USA Fiberglass

20    Company, Limited, you then signed a document which was

21    filed in California changing the name of Gibson

22    Fiberglass to Jushi USA Fiberglass Company, Limited;

23    correct?

24              MR. McNAMARA:  Bruce, I don't know what you're

25    trying to do here.  This is just a waste of time.  He
```

1    said he's -- he is not aware of these two meetings.  Do

2    you want to --

3          MR. STECKLER:  Hey, look, Counsel, I know you

4    don't like the testimony.  Let him answer the question.

5    You can object.  But it's certainly not a waste of time.

6          MR. McNAMARA:  It is asked and answered, he's

7    given you the answer, he's given it again, he can give

8    it again, but you have spent a tremendous amount of time

9    asking him repeatedly about --

10         MR. STECKLER:  I'm sorry you don't like this.

11         MR. McNAMARA:  -- something he's told you he

12   didn't know.

13         MR. STECKLER:  I'm sorry you don't like it,

14   Counsel.

15         MR. McNAMARA:  He didn't have knowledge about

16   it, in the first place.

17         MR. STECKLER:  I'm going to pursue the line of

18   questioning.

19         MR. DAVIDSON:  Objection to form.

20         MR. McNAMARA:  And continue to waste time.

21         MR. STECKLER:  Thank you.  Because "objection to

22   form" would be more proper.

23         MR. McNAMARA:  I gave you a lot of leeway.

24         MR. STECKLER:  You're not the judge, Counsel.

25   Thank you.

1           MS. HUANG:  Nobody is, actually.

2           MR. STECKLER:  No, no one is.  Thank you.  I do

3      appreciate that.

4           I'm going to ask questions, let him answer.  If

5      you don't like the question, you can object to the form.

6           Please read it back.

7           THE WITNESS:  That is not so.  I have said just

8      now --

9           THE INTERPRETER:  Interpreter needs to clarify

10     with deponent.

11          THE WITNESS:  -- ever since Jushi Group in 2011

12     had become 100 percent shareholder of Gibson Company in

13     the United States after it purchased the company and Mr.

14     Zhang of Jushi Group told us to change it into Jushi USA

15     Company, because in that process we had to have the

16     attorney and C.P.A. to discuss about how to go about it,

17     after all the investigations have done we did this;

18     therefore, in fact, these two matters are separated.

19     BY MR. STECKLER:

20     Q.    So even though Jushi USA Fiberglass Company

21     began in 2011, you waited until two days after the

22     meeting in which CNBM voted to establish Jushi USA

23     Fiberglass Company, Limited, to change the name with the

24     State of California.  Isn't that the fact?

25          MR. McNAMARA:  Object to the form.

```
 1            THE WITNESS:  These are two matters with

 2   coincidence in dates.

 3   BY MR. STECKLER:

 4   Q.     So it's just a coincidence.  Is that --

 5   A.     Yes.

 6   Q.     Okay.

 7          (Exhibit 17 was marked for identification.)

 8          (Exhibit 17-A was marked for identification.)

 9   BY MR. STECKLER:

10   Q.     Let me hand you what's marked as 17 and 17-A to

11   your deposition.

12          Are you familiar with this document?

13   A.     My first time seeing it.  I just saw it.

14   Q.     Do you know whether this is a business record of

15   Jushi USA?

16   A.     It is not a business record of Jushi USA.

17   Q.     Were you aware that China National Building

18   Materials had to vote at shareholder meetings of

19   China Fiberglass to increase capital in Jushi Group

20   Company?

21          MR. McNAMARA:  Object to the form.

22          THE WITNESS:  Repeat that.

23          THE INTERPRETER:  Interpreter will repeat.

24          THE WITNESS:  I don't recall.  But upon reading

25   this, I don't know when but I have such an impression;
```

Confidential - Subject to Further Confidentiality Review

 1   however, I do not recall.

 2          MR. STECKLER:  Okay.

 3   BY MR. STECKLER:

 4   Q.     So it was your impression, though, not based

 5   upon this document but your own experience, that

 6   shareholders of China Fiberglass or China Jushi had to

 7   vote to increase capital for Jushi Group.

 8   A.     Jushi Group had to go through voting in order to

 9   increase its capital.  To my knowledge, that's the way

10   it is.

11   Q.     And Jushi Group obtained its capital from China

12   Fiberglass; correct?

13   A.     This is beyond my understanding.

14   Q.     I appreciate that.  And that's why I'm asking,

15   did you know whether China Fiberglass had to have

16   shareholder meetings and votes by shareholders to

17   increase capital to Jushi Group?

18   A.     According to their usual practice, yes, that

19   situation had happened.

20   Q.     And so it would be important for the biggest

21   shareholder of China Fiberglass to vote to authorize

22   those expenditures; correct?

23          MR. McNAMARA:  Object to the form.

24          MS. HUANG:  Object to the translation also.

25          THE WITNESS:  Repeat?

```
 1          MS. HUANG:  For the biggest shareholder is a

 2   singular one, not the plural.

 3          THE INTERPRETER:  This is the interpreter

 4   speaking.

 5          Was the statement directed to the interpreter?

 6          MS. HUANG:  Yes.

 7          MR. STECKLER:  Well, are you making an objection

 8   to the form of the question or the interpretation?

 9          MR. McNAMARA:  Both.

10          MS. HUANG:  I said object to the translation.

11          MR. STECKLER:  Okay.  And I'm going to let

12   the --

13          MR. McNAMARA:  And to the form.

14          MR. STECKLER:  And I'm going to let the

15   translation stand.

16          THE INTERPRETER:  But there is no single or

17   plural form in Chinese language.  The interpreter would

18   not have possibly used a plural form for shareholder.  I

19   don't understand.

20          MS. HUANG:  Well, duo man (phonetic), that's the

21   translation you presented.  When you add a "man," become

22   a plural.

23          THE INTERPRETER:  What about just let the --

24          MR. STECKLER:  Counsel, are you a certified

25   Chinese translator?
```

Confidential - Subject to Further Confidentiality Review

```
 1          THE INTERPRETER:  -- interpreter reinterpret

 2   that?  Because the interpreter does not recall how she

 3   translated the particular word some time ago.

 4          The interpreter will reinterpret.

 5          Thank you for --

 6          MS. HUANG:  Thank you.

 7          THE INTERPRETER:  -- bringing that to my

 8   attention.

 9          THE WITNESS:  The biggest shareholder of China,

10   Chinese Fiberglass -- can you repeat that?

11          THE INTERPRETER:  The interpreter will repeat.

12          THE WITNESS:  The shareholders' meeting would be

13   that everybody votes together; isn't that right?  And

14   then there would be a calculation how much shared equity

15   they have and then if those who agree is more than those

16   who disagree.

17   BY MR. STECKLER:

18   Q.     So it would be important for the --

19          MR. McNAMARA:  I'm not sure he was finished.

20          Was he finished?  Okay.

21          MR. STECKLER:  Are the two of you done objecting

22   to this question?

23          MR. McNAMARA:  I just wanted to make sure she

24   had finished.

25          MR. STECKLER:  You realize the transcript
```

Confidential - Subject to Further Confidentiality Review

 1   indicates just a litany of objections on this one

 2   question.

 3        MR. McNAMARA:  Some questions are objectionable.

 4        MR. STECKLER:  Right.  Are you done?

 5        MR. McNAMARA:  Yeah.

 6        MR. STECKLER:  Okay.

 7   BY MR. STECKLER:

 8   Q.    Does China Fiberglass have to -- strike that.

 9        As far as you know, does China Fiberglass have

10   to vote to authorize an increase in capital for Jushi

11   Group?

12        MR. McNAMARA:  Object to the form.

13        THE WITNESS:  China Fiberglass, are you talking

14   about shareholders' meeting or board of directors'

15   meeting?

16        MR. STECKLER:  Shareholder meeting.

17        THE WITNESS:  The vote has to be done.

18   BY MR. STECKLER:

19   Q.    And it would be important for the controlling

20   shareholder to issue a vote.

21        MR. McNAMARA:  Object to the form.

22        THE WITNESS:  They would all hope so.

23   BY MR. STECKLER:

24   Q.    Well, do you know how many shares have to vote

25   for a resolution to be passed for China Fiberglass?

Confidential - Subject to Further Confidentiality Review

1            MR. McNAMARA:  Object to the form.

2            THE WITNESS:  The total of all the shares by

3     those who attended the shareholders' meetings --

4     BY MR. STECKLER:

5     Q.      So do you know the rules of --

6     A.      -- for each --

7     Q.      I'm sorry.

8     A.      -- shareholders' meeting.

9     Q.      So do you know the rules of how many shares have

10    to vote for a resolution to be passed?

11    A.      I do not know.

12    Q.      You don't have any specific knowledge about

13    that, do you?

14    A.      Correct.

15            (Exhibit 18 was marked for identification.)

16    BY MR. STECKLER:

17    Q.      Let me hand you what I'm marking as Exhibit

18    Number 18 to your deposition.

19            Is this a business record of Jushi USA?

20            MR. McNAMARA:  Do you have a copy for us,

21    Counsel?

22            MR. STECKLER:  Oh, I'm sorry.

23            THE WITNESS:  This is a business letter sent by

24    Jushi Group to Jushi USA.

25

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. STECKLER:

 2   Q.     Is this a business record kept in the ordinary

 3   course of business of Jushi USA, as we discussed

 4   earlier?

 5   A.     Yes.

 6   Q.     Could you please look at 661.00003, which is the

 7   second-to-last page.

 8   A.     Yeah.

 9   Q.     Who is Maybal?

10   A.     Maybal is the manager of accounting department.

11   Q.     At Jushi USA?

12   A.     Yes.

13   Q.     And who is Zhao Yan or Yan Zhao?

14   A.     This is a letter sent by Jushi Group.

15          I do not know this person by the name of Y-A-N

16   space Z-H-A-O but I believe the person is an employee of

17   Jushi Group.

18   Q.     This E-mail references parent company's enhanced

19   internal control and prevent credit risk requirement on

20   Jushi Group.

21          Who is the parent, as far as you know?

22   A.     I think it is China Jushi.

23   Q.     Which was formerly China Fiberglass; correct?

24   A.     Yes.

25   Q.     Did China Jushi have systemized internal
```

Confidential - Subject to Further Confidentiality Review

1    controls and policies and procedures that it required

2    its subsidiaries and subsidiaries of subsidiaries to

3    follow?

4         MR. DAVIDSON:  Object to the form.

5         THE WITNESS:  Yes, my understanding is that

6    China Jushi requires Jushi Group and companies like us

7    and the companies below us to enhance internal control.

8    BY MR. STECKLER:

9    Q.    And is this a -- as far as you know, a unified

10   and integrated system that all of these related

11   companies must follow?

12   A.    I believe this business document was sent to

13   every one of its subsidiaries, but its purpose is mainly

14   to some of its overseas company but not us, the U.S.A.

15   company, because among all overseas company -- overseas

16   companies, we, U.S.A. company, had been operating very

17   honestly but some of them are not honest; therefore,

18   it -- it requires every company to control internally,

19   and that is why this had been sent.

20        MR. STECKLER:  I'm going to object as

21   nonresponsive because my question is whether China Jushi

22   required that Jushi Group and its subsidiaries follow

23   certain unified policies and procedures.

24        MR. McNAMARA:  Object to the form.

25        THE WITNESS:  Yes.

Confidential - Subject to Further Confidentiality Review

1        MR. McNAMARA:  So, Bruce, it's knocking on the

2   door of 5:00.

3        MR. STECKLER:  Do you want to take a break and

4   discuss this?

5        MR. McNAMARA:  I think a better approach is just

6   to say we'll go until 5:15 and end and then we'll break

7   it off.

8        I think now is probably a good time to break the

9   news to everyone in the room that we're going to be in a

10  different room tomorrow.

11       MR. STECKLER:  Well, hold on.  Stop.  We're on

12  the record.

13       MR. McNAMARA:  Okay.

14       MR. STECKLER:  Let's go off the record for a

15  second.

16       MR. McNAMARA:  Sure.

17       MR. STECKLER:  If you need to make a statement,

18  let me know.

19       VIDEO OPERATOR:  With the approval of counsel,

20  going off the record.

21       The time is approximately 4:57 p.m.

22       (Discussion off the record.)

23       VIDEO OPERATOR:  With the approval of counsel,

24  back on the record.

25       The time is approximately 5:00 p.m.

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. STECKLER:

 2   Q.      Let me hand you what we are going to mark as --

 3           MR. STECKLER:  What exhibit are we on now?

 4           MR. GAUGHAN:  19.

 5   BY MR. STECKLER:

 6   Q.      -- Number 19, which is Jushi USA-1123.

 7           (Exhibit 19 was marked for identification.)

 8   BY MR. STECKLER:

 9   Q.      Sir, is this a business record of Jushi USA?

10   A.      Yes.

11   Q.      I'm going to go ahead and mark that as Exhibit

12   Number 19 to your deposition.

13           In this E-mail is Jushi China requesting

14   information about employees?

15   A.      Let me take a look to see whether it is Jushi

16   Group or Jushi China.

17   Q.      Please.

18   A.      According to my understanding, usually we would

19   receive notices, instructions from Jushi Group.

20           I see that this letter was sent to the former

21   COO (sic), Alan, and Alan disagreed; therefore, I cannot

22   confirm whether it is China Jushi or Jushi Group.

23           MR. STECKLER:  I'm going to object as

24   nonresponsive.

25
```

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. STECKLER:

 2   Q.      Maybal is sending the E-mail to Alan and

 3   indicating that Jushi China is seeking information on

 4   the employees of Jushi USA; correct?

 5           MR. McNAMARA:  Object to the form.

 6           THE WITNESS:  Let me read it.  Let me examine

 7   it.

 8           From Alan to Maybal, August 28, 2014, 4:00,

 9   28th.

10           Anyway, I know that China sent it over and it is

11   our company's business letter.

12   BY MR. STECKLER:

13   Q.      When you say "China," you're talking about China

14   Jushi; correct?

15   A.      Jushi Group or China Jushi.  It's impossible for

16   me to know right now which one it is.

17   Q.      Okay.  And the reason I'm asking -- and I'm not

18   trying to confuse you -- is the English translation

19   indicates it's Jushi China, not Jushi Group.

20           MR. McNAMARA:  Object to the form.

21           THE WITNESS:  I don't know who wrote this.

22           The letter to Alan, I do not know who wrote

23   this.

24           MR. STECKLER:  It says it's from Maybal.

25           MR. McNAMARA:  Object to the form.
```

Confidential - Subject to Further Confidentiality Review

```
 1            THE WITNESS:  From the perspective of Maybal,

 2    since she is an accountant, it is impossible for her to

 3    distinguish whether it is China Group or -- whether it's

 4    China Jushi or Jushi Group that was asking for the

 5    information.  She only knew that China required that

 6    information.  If you were to ask her whether -- the

 7    differences between the two companies, she wouldn't

 8    know.

 9    BY MR. STECKLER:

10    Q.      How do you know that?

11    A.      Maybal worked in our company for more than 15

12    years.  I know her very well.

13    Q.      Is she no longer with the company?

14    A.      She is with the company.

15    Q.      Okay.  And based upon your experience, she just

16    doesn't understand these two company entities, as the

17    accountant for Jushi USA.

18    A.      To her, it's comparatively blurry.

19    Q.      Okay.  Let me hand you what we're now going to

20    mark as Exhibit --

21            MR. GAUGHAN:  20 and 20-A.

22    BY MR. STECKLER:

23    Q.      -- 20 and 20-A to your deposition.

24            (Exhibit 20 was marked for identification.)

25            (Exhibit 20-A was marked for identification.)
```

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. STECKLER:

 2   Q.      Is this a business record of Jushi USA, sir?

 3   A.      We don't have the Chinese version.

 4           Oh, this is it.  Sorry.

 5           MR. STECKLER:  Do you want the English version

 6   too?

 7           THE INTERPRETER:  If you have one.  If not,

 8   that's fine.

 9   BY MR. STECKLER:

10   Q.      Is this a business record of Jushi USA, sir?

11   A.      Yes.

12   Q.      And you were copied on this E-mail; correct?

13   A.      Yes.

14   Q.      And why is Cathay Bank asking you to answer

15   these questions?

16   A.      Because Chief Zhang of China Fiberglass Company

17   of Jushi Group came to the United States.

18           The first day he got off the airplane, while at

19   the meal, the CEO of this company was present together

20   to eat with Chief Zhang.

21           Jushi USA interacted with this bank for its

22   credit loan; therefore, they were chatting while eating;

23   therefore, the CEO of Cathay Bank wanted to be involved

24   in this loan.

25   Q.      And this loan involves the project in South
```

Confidential - Subject to Further Confidentiality Review

```
 1   Carolina; correct?

 2   A.      Yes.

 3           Look at the last page.  It says there the --

 4   rather, second to last.  In Point Number 1 it says, last

 5   time when Chief Zhang visited the United States --

 6   Q.      And --

 7           THE INTERPRETER:  Just one moment.

 8           MR. STECKLER:  Are we still in the middle of the

 9   answer?

10           THE INTERPRETER:  Yeah.  The interpreter hasn't

11   finished her interpretation.

12           MR. STECKLER:  Sorry, Sunny.

13           THE WITNESS:  -- he and Mr. Tang met and had

14   dinner with the chairman of Cathay Bank.

15           Now, while at dinner, they talked about this,

16   and this document is in relation to the matter.

17   BY MR. STECKLER:

18   Q.      And the Cathay Bank asked several questions

19   about the loan in which Tiffany and Maybal with Jushi

20   USA answered; correct?

21           THE INTERPRETER:  Tiffany and who?

22           THE COURT REPORTER:  Maybal.

23           THE WITNESS:  They have asked the question to a

24   relevant person in China whose name I do not know of the

25   question that Cathay Bank asked.
```

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. STECKLER:

 2   Q.      And Jushi USA employees are providing

 3   information regarding a loan for Project Giant in this

 4   E-mail; correct?

 5   A.      Which should be saying following the information

 6   given by the China headquarter and conveyed such

 7   information to Cathay Bank.

 8   Q.      So Jushi USA is acting as an intermediary

 9   between China Jushi and Jushi Group for the Project

10   Giant loan with Cathay Bank.  Is that fair?

11          MR. McNAMARA:  Object to the form.

12          THE WITNESS:  As far as I know, Director Ding on

13   first page is the CFO of Jushi Group.  We have always

14   been doing everything following the instructions of

15   Jushi Group.

16          MR. McNAMARA:  Bruce, it's just about 5:20 now.

17          MR. STECKLER:  I appreciate that.  Can I finish

18   the line of questions with this document?

19          MR. McNAMARA:  Well, I -- listen, we're already

20   past 5:15 so you can ask another question but we've got

21   to wrap it up.

22          MR. STECKLER:  I'm going to finish up the -- I'd

23   like to finish up the questions regarding this document,

24   Counsel.

25          MR. McNAMARA:  Well, it depends on how long.
```

 1    We're already past the time --

 2         MR. STECKLER:  Well, I don't --

 3         MR. McNAMARA:  -- when I told you we had to end.

 4         MR. STECKLER:  I appreciate that.  I'm not aware

 5    of, you know, a specific hard-and-fast deadline.  I was

 6    hoping we could finish this document.

 7         MR. McNAMARA:  Ask your next question.

 8         MR. STECKLER:  I will.

 9    BY MR. STECKLER:

10    Q.    And was it your understanding that the

11    information provided to Cathay Bank on behalf of Jushi

12    USA, Jushi Group, or China Jushi was true and accurate?

13    A.    Who provided to Cathay Bank?

14    Q.    Who provided -- that's a good question.

15         Who provided the answers to the questions 1

16    through 6 to Cathay Bank?

17    A.    Tiffany have had asked the CFO of J -- Jushi

18    Group the questions required by Cathay Bank, which is to

19    say that Cathay Bank raised these six points and told

20    Tiffany and Tiffany sent the E-mail to the CFO in China

21    and then CFO Ding, D-I-N-G, told her.

22    Q.    And if you look at Number 6, sir, the answer

23    provided with respect to the Jushi Group and the new

24    borrowing corporate entity, is that correct, as far as

25    you know as you sit here today?

Confidential - Subject to Further Confidentiality Review

1    A.      Yes.

2    Q.      And what is the date of this document, sir?

3    A.      September 2014.  I don't know what is date of

4    this document.  It says that on top, September the 16th,

5    so I'm not sure the E-mail subsequent to that is the

6    same E-mail.

7    Q.      It appears these E-mails occurred in September

8    of 2014, though; correct?

9    A.      Yes.

10           MR. McNAMARA:  I've got to go.

11           MR. STECKLER:  Yeah.  Let me just for the

12   record, we're going to reconvene at 8:00 a.m. tomorrow?

13           MR. McNAMARA:  Yes.  In a different room.

14           MR. STECKLER:  You don't want to continue

15   tonight, I understand that, and you want to end the depo

16   at what time tomorrow?

17           MR. McNAMARA:  11:45.

18           MR. STECKLER:  Okay.

19           MR. McNAMARA:  I'm going to check with and see

20   if somebody tells me that, based upon traffic, I should

21   leave at a different time, I'll let you know so you --

22           MR. STECKLER:  I appreciate that.

23           And as I've referenced to you, my hope is to

24   finish up.  I don't know that we can.  As you know,

25   there are some challenges with translations and

Confidential - Subject to Further Confidentiality Review

 1    communication.

 2          I can assure you we'll do our very best to

 3    finish up tomorrow but, if not, I will, respectfully,

 4    request to keep it open.  Hopefully, that will not be

 5    necessary, though.

 6          MR. McNAMARA:  Okay.

 7          MR. STECKLER:  All right?

 8          MR. DAVIDSON:  And speaking of translations,

 9    we'd like to reserve our right to challenge the

10    completeness and accuracy of the PSC's translations with

11    regard to Exhibits 4, 9, 10, 11, 12, 13, 14, 15, 17, and

12    20 and any that are offered tomorrow.

13          VIDEO OPERATOR:  All right.  With the approval

14    of counsel, this concludes today's video deposition.

15          Today's deposition consists of four recorded

16    files.  Today was Volume 1.

17          The time is approximately 5:24 p.m.

18          We are now off the record.

19          (Whereupon the deposition adjourned at 5:24

20    p.m.)

21                      TESTIMONY ADJOURNED

22

23

24

25

```
 1   STATE OF CALIFORNIA          )

 2   COUNTY OF LOS ANGELES        )

 3            I, ROSEMARY LOCKLEAR, a Certified Shorthand

 4   Reporter of the State of California, duly authorized to

 5   administer oaths pursuant to Section 2025 of the

 6   California Code of Civil Procedure, do hereby certify

 7   that

 8            HSIN HUA TANG, the witness in the foregoing

 9   deposition, was by me duly sworn to testify the truth,

10   the whole truth and nothing but the truth in the

11   within-entitled cause; that said testimony of said

12   witness was reported by me, a disinterested person, and

13   was thereafter transcribed under my direction into

14   typewriting and is a true and correct transcription of

15   said proceedings.

16            I further certify that I am not of counsel or

17   attorney for either or any of the parties in the

18   foregoing deposition and caption named, nor in any

19   way interested in the outcome of the cause named in

20   said deposition dated the_____ day of

21   _____, 2015.

22

23

24

25   ROSEMARY LOCKLEAR, RPR, CRR, CSR 13969
```

Confidential - Subject to Further Confidentiality Review

```
 1                    INSTRUCTIONS TO WITNESS

 2

 3

 4           Please read your deposition over carefully and

 5   make any necessary corrections.  You should state the

 6   reason in the appropriate space on the Errata Sheet for

 7   any corrections that are made.

 8           After doing so, please sign the Errata Sheet

 9   and date it.

10           You are signing same subject to the changes

11   you have noted on the Errata Sheet, which will be

12   attached to your deposition.

13           It is imperative that you return the original

14   Errata Sheet to the deposing attorney within thirty (30)

15   days of receipt of the deposition transcript by you.  If

16   you fail to do so, the deposition transcript may be

17   deemed to be accurate and may be used in court.

18

19

20

21

22

23

24

25
```

```
 1              E R R A T A

 2                - - - - - -

 3

 4   PAGE  LINE  CHANGE

 5   _____ _____ _____

 6   REASON:_____

 7

 8   PAGE  LINE  CHANGE

 9   _____ _____ _____

10   REASON:_____

11

12   PAGE  LINE  CHANGE

13   _____ _____ _____

14   REASON:_____

15

16   PAGE  LINE  CHANGE

17   _____ _____ _____

18   REASON:_____

19

20   PAGE  LINE  CHANGE

21   _____ _____ _____

22   REASON:_____

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                    ACKNOWLEDGEMENT OF DEPONENT

 2

 3

 4          I, _____, do hereby certify

 5    that I have read the foregoing pages, and that the same

 6    is a correct transcription of the answers given by me to

 7    the questions therein propounded, except for the

 8    corrections or changes in form or substance, if any,

 9    noted in the attached Errata Sheet.

10

11

12

13    _____

14    HSIN HUA TANG                              DATE

15

16    Subscribed and sworn

      to before me this

17    _____ day of _____, 20_____.

18

      My commission expires:_____

19

20    _____

      Notary Public

21

22

23

24

25
```

1                         LAWYER'S NOTES

2    PAGE LINE

3    _____    _____    _____

4    _____    _____    _____

5    _____    _____    _____

6    _____    _____    _____

7    _____    _____    _____

8    _____    _____    _____

9    _____    _____    _____

10   _____    _____    _____

11   _____    _____    _____

12   _____    _____    _____

13   _____    _____    _____

14   _____    _____    _____

15   _____    _____    _____

16   _____    _____    _____

17   _____    _____    _____

18   _____    _____    _____

19   _____    _____    _____

20   _____    _____    _____

21   _____    _____    _____

22   _____    _____    _____

23   _____    _____    _____

24   _____    _____    _____

25   _____    _____    _____

```
1              IN THE UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF LOUISIANA

2
                           - - -

3

4    IN RE:  CHINESE-MANUFACTURED :   MDL NO. 2047

     DRYWALL PRODUCTS LIABILITY   :   SECTION L

5    LITIGATION                   :

                                  :   JUDGE FALLON

6    THIS DOCUMENT APPLIES TO ALL :

     CASES                        :   MAG. JUDGE WILKINSON

7
                           - - -

8
                       VOLUME II

9
                     CONFIDENTIAL -

10      SUBJECT TO FURTHER CONFIDENTIALITY REVIEW

11           Wednesday, November 18, 2015

12                         - - -

13

14         Continued videotaped 30(b)(6) deposition of

15    JUSHI USA FIBERGLASS CO., LTD., through its designee,

16    HSIN HUA TANG, held at PILLSBURY WINTHROP SHAW PITTMAN,

17    L.L.P., 725 South Figueroa Street, Suite 2800, Los

18    Angeles, California, commencing at approximately 8:06

19    a.m., before Rosemary Locklear, a Registered

20    Professional Reporter, Certified Realtime Reporter and

21    California CSR (#13969).

22

23                         - - -

24             GOLKOW TECHNOLOGIES, INC.

          877.370.3377 ph | 971.591.5672 fax

25                   deps@golkow.com
```

Confidential - Subject to Further Confidentiality Review

```
 1    APPEARANCES:

 2

 3          LEVIN, FISHBEIN, SEDRAN & BERMAN
            BY:  MATTHEW C. GAUGHAN, ESQUIRE
 4          Mgaughan@lfsblaw.com
            510 Walnut Street, Suite 500
 5          Philadelphia, Pennsylvania 19106
            (215) 592-1500
 6          Appearing on behalf of the Plaintiffs (Plaintiffs'
            Lead Counsel, MDL 2047)

 7

 8
            STECKLER, L.L.P.
 9          BY:  BRUCE W. STECKLER, ESQUIRE
            Bruce@StecklerLaw.com
10          12720 Hillcrest Road, Suite 1045
            Dallas, Texas 75230
11          (972) 387-4040
            Appearing on behalf of the Plaintiffs' Steering
12          Committee

13

14          DENTONS US, L.L.P.
            BY:  MATTHEW T. NICKEL, ESQUIRE
15          matt.nickel@dentons.com
            2000 McKinney Avenue, Suite 1900
16          Dallas, Texas 75201-1858
            (214) 259-0900
17          Appearing on behalf of the BNBM Defendants

18

19          ORRICK, HERRINGTON & SUTCLIFFE, L.L.P.
            BY:  ANDREW K. DAVIDSON, ESQUIRE
20          adavidson@orrick.com
            The Orrick Building
21          405 Howard Street
            San Francisco, California 94105-2669
22          (415) 773-5700
            Appearing on behalf of the CNBM Defendants

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1   APPEARANCES:  (Continued)

 2

 3          ALSTON & BIRD, L.L.P.
            BY:  MACKENZIE (MACK) HELLER (KAHNKE), ESQUIRE
 4          (via telephone)
            mackenzie.heller@alston.com
 5          1201 West Peachtree Street, N.E.
            Atlanta, Georgia 30309-3424
 6          (404) 881-4828
            Appearing on behalf of the Defendants Taishan
 7          Gypsum Company

 8

 9          PILLSBURY WINTHROP SHAW PITTMAN, L.L.P.
            BY:  MICHAEL McNAMARA, ESQUIRE
10          michael.mcnamara@pillsburylaw.com
            BY:  QIAN HUANG, ESQUIRE
11          qian.huang@pillsburylaw.com
            1200 Seventeenth Street, N.W.
12          Washington, DC 20036-3006
            (202) 663-8000
13          Appearing on behalf of the Jushi entities and the
            Witness

14

15
                               - - -
16

17

    ALSO PRESENT:
18

19

            JIM LOPEZ, Video Operator
20

            SUNNY WANG, Interpreter
21

            EMILY ZHANG, Herman, Herman & Katz, L.L.C.
22

23
                               - - -
24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                      I N D E X
 2
 3   WITNESS                                      PAGE
 4
 5   HSIN HUA TANG
 6
 7              By Mr. Steckler              203
 8
 9                     - - -
10
11              EXHIBIT INDEX
12   NUMBER                                     MARKED
13
14     21        1-page copy of document entitled   206
                 "Translation of JushiUSA-0005950"
15
       21-A      1-page copy of document entitled   206
16               "Excel Spreadsheet
                 (JUSHIUSA-0005950) Produced
17               Natively," plus attachment
18     22        1-page copy of document entitled   218
                 "2014 Renewal Pricing and Loan
19               Condition with Cathay Bank,"
                 J-USA-0000281
20
       23        1-page copy of E-mail dated        227
21               11/2/14 to Maybal Wong from
                 Howard Yan, J-USA-0001711
22
       24        2-page copy of E-mail dated        230
23               11/12/14 to Tiffany Chen from
                 Maybal Wong, plus attachments,
24               J-USA-0001869 - J-USA-0001871
25
```

Confidential - Subject to Further Confidentiality Review

```
 1                    EXHIBIT INDEX (Continued)
 2     NUMBER                                          MARKED
 3
 4     25         6-page copy of document dated      233
                  4/21/14 entitled "Jushi Group
 5                Co., Ltd. Overseas Subsidiaries
                  Financing Requirements,
 6                Application Form,"
                  JushiUSA-0007142.0001 -
 7                JushiUSA-0007142.0006
 8     26         173-page copy of document dated    236
                  3/15 entitled "Beijing New
 9                Building Materials Public Limited
                  Company Annual Report 2014,"
10                BNBMPLC0003164 - BNBMPLC0003336
11     26-A       219-page copy of document in       236
                  Chinese, BNBMPLC0002945 -
12                BNBMPLC0003163
13     27         6-page copy of document entitled   247
                  "Key notes made by Chairman Zhang
14                at Jushi HQ in the Management
                  Meeting during Jushi Annual
15                Conference 2014," J-USA-0001580 -
                  J-USA-0001580.00007
16
       28         2-page copy of document dated      256
17                12/31/14 entitled "Income
                  Statement For The 12 Periods
18                Ended 12/31/2014,"
                  J-USA-0002461 -
19                J-USA-0002461.00002
20     29         2-page copy of document dated      257
                  12/31/14 entitled "Balance Sheet
21                As of 12/31/2014,"
                  J-USA-0002462 -
22                J-USA-0002462.00002
23
24
25
```

Confidential - Subject to Further Confidentiality Review

```
 1                    EXHIBIT INDEX (Continued)
 2    NUMBER                                            MARKED
 3
 4    30              17-page copy of document dated      258
                      12/31/14 entitled "Jushi USA
 5                    Fiberglass Co., Ltd., Independent
                      Auditor's Report and Financial
 6                    Statements," J-USA-0002460 -
                      J-USA-0002460.00017
 7
      31              1-page copy of E-mail dated         264
 8                    9/18/14 to Alan Gardiner and Sara
                      Szutu from Maybal Wong, plus
 9                    attachments, J-USA-0001344 -
                      J-USA-0001345.00020
10
      32              3-page copy of E-mail dated         274
11                    4/1/15 to Ellie Shen from Erica
                      Lin, J-USA-0002943 -
12                    J-USA-0002943.00003
13    33              4-page copy of document entitled    274
                      "Annual Meeting By Action By
14                    Unanimous Written Consent of
                      Board of Directors of Jushi USA
15                    Fiberglass Co., Ltd., A
                      California Corporation,"
16                    J-USA-0002944 -
                      J-USA-0002944.00004
17
      34              2-page copy of document entitled    274
18                    "Annual Meeting By Action By
                      Written Consent of Shareholders
19                    of Jushi USA Fiberglass Co.,
                      Ltd., A California Corporation,"
20                    J-USA-0002945 -
                      J-USA-0002945.00002
21
22
      (Exhibits retained by the court reporter and attached to
23    transcript.)
24
25                                  - - -
```

Confidential - Subject to Further Confidentiality Review

1          VIDEO OPERATOR:  We are now on the record.

2          My name is Jim Lopez.  I'm a videographer for

3   Golkow Technologies.  Today's date is November 18th,

4   2015, and the time is approximately 8:06 a.m.

5          This video deposition is being held in Los

6   Angeles, California, in the matter of In Re:

7   Chinese-Manufactured Drywall Products Liability

8   Litigation, MDL Number 2047, for the United States

9   District Court, Eastern District of Louisiana.

10          This is Volume II of the deponent Hsin Hua Tang.

11   Excuse me.

12          Counsel and all present, will you please

13   identify yourselves.

14          MR. STECKLER:  Bruce Steckler for the PSC.

15          MR. GAUGHAN:  Matthew Gaughan, also for the PSC.

16          MS. ZHANG:  Emily Zhang for PSC.

17          MR. NICKEL:  Matthew Nickel for BNBM PLC and

18   BNBM Group.

19          MR. DAVIDSON:  Andrew Davidson for CNBM Group

20   and CNBM Company.

21          MS. HUANG:  Qian Huang for the China Jushi,

22   Jushi Group, and Jushi USA.

23          MR. McNAMARA:  Mike McNamara for the same three

24   parties.

25          VIDEO OPERATOR:  Counsel will be noted on the

Confidential - Subject to Further Confidentiality Review

1    stenographic record.

2          The court reporter is Rosemary Locklear, and she

3    will now swear in the interpreter, who then will swear

4    in the witness.

5          MR. McNAMARA:  Do we need to re-swear them?

6    Can't they just remain under oath from yesterday?

7          MR. STECKLER:  I usually do that, yes.  I'm fine

8    with that.

9          Does anyone have an objection to that?

10         MR. McNAMARA:  No.

11         MR. STECKLER:  Okay.  Good.

12         SUNNY WANG, interpreter, previously sworn.

13         HSIN HUA TANG, having been previously duly

14   sworn, was examined and testified as follows:

15                EXAMINATION (Continued)

16   BY MR. STECKLER:  (Through the interpreter)

17   Q.    Good morning, Mr. Tang.

18   A.    Good morning.

19   Q.    I want to remind you today we're going to use

20   the same definitions that we used yesterday.

21         Do you understand that?

22   A.    I know that.

23   Q.    Okay.  The business record that we talk about

24   today will be a record made at or near the time it is

25   dated by someone you know and the record is kept in the

Confidential - Subject to Further Confidentiality Review

```
 1   ordinary course of business or practice of Jushi USA and

 2   is not altered.

 3           Do you understand that?

 4   A.      I know that.

 5   Q.      And the controlling shareholder is going to be a

 6   person or entity that controls more than 30 percent of

 7   the shares of a company.

 8           Do you understand that?

 9           MR. McNAMARA:  Object to the form.

10           THE WITNESS:  I do not understand.

11   BY MR. STECKLER:

12   Q.      You don't understand the term "controlling

13   shareholder" now?

14   A.      Before today, I did not understand what was the

15   percentage.  From my prior understanding, I thought

16   controlling shareholder would be someone who controls

17   more than half of the shares.  But yesterday the

18   attorney showed a document, I don't know where the

19   document came from, but it did mention a 30 percent;

20   therefore, I have not checked whether 30 percent is like

21   that.  And after I have confirmed that, I'll let you

22   know on whether I would change my opinion or not.

23   Q.      For purposes of your deposition today, when we

24   refer to controlling shareholder, I'm going to be

25   referring to a person or entity that controls more than
```

Confidential - Subject to Further Confidentiality Review

1   30 percent of the shares of a company.

2           Can we agree to that term being used today?

3           MR. McNAMARA:  Object to the form.

4           If it's the truth, he can agree to it, but if

5   it's not, he can't.

6           MR. STECKLER:  I'm not asking him to agree to

7   the truth.

8   BY MR. STECKLER:

9   Q.      I'm saying that's the definition we're going to

10  use today, and so do you understand that when I ask you

11  about controlling shareholder?

12          MR. McNAMARA:  Same objection.

13          THE WITNESS:  If, according to the United States

14  law, the controlling shareholder would be somebody who

15  holds 30 percent of shares, then I would agree.

16  BY MR. STECKLER:

17  Q.      I'm not asking you about --

18          MR. McNAMARA:  He wasn't finished, Bruce.

19  BY MR. STECKLER:

20  Q.      -- the laws of the United States.

21          MR. McNAMARA:  Bruce, he wasn't finished.  Let

22  him finish.

23          You can continue, Mr. Tang.

24          THE WITNESS:  Under that condition, I would

25  agree that attorney will temporarily use that term for

1    the purpose of today's meeting.

2    BY MR. STECKLER:

3    Q.      Sir, I'm not asking you for a legal opinion.

4            Do you understand that?

5            You're not a corporate law --

6    A.      I know that.

7    Q.      -- expert, are you?

8    A.      Correct.

9    Q.      I'm simply asking you to assume that for

10   purposes of this deposition when I refer to the term

11   "controlling shareholder," we're going to be referring

12   to a person or entity that controls more than 30 percent

13   of the shares of a company.

14           Do you understand that?

15           MR. McNAMARA:  Object to form.

16           THE WITNESS:  I understand.

17           MR. STECKLER:  Okay.

18   BY MR. STECKLER:

19   Q.      Let me hand you what we're going to mark as

20   Exhibit Number 21 to your deposition.

21           (Exhibit 21 was marked for identification.)

22           (Exhibit 21-A was marked for identification.)

23   BY MR. STECKLER:

24   Q.      Do you know if this is a business record of

25   Jushi USA?

Confidential - Subject to Further Confidentiality Review

1          And for the record, you're looking at 21-A,

2    which is the Chinese version.

3    A.     I have not seen this document in our Jushi USA

4    company.

5    Q.     What documents did you review for production in

6    this case responsive to the Subpoena that were business

7    records of Jushi USA?

8          MR. McNAMARA:  Object to the form.

9          THE WITNESS:  When I knew I was going to come to

10   testify, I started to recall the documents that I have

11   seen on my mind.

12         I have not seen this document.

13   BY MR. STECKLER:

14   Q.     Do you know whether all of the documents that

15   your attorney provided to us responsive to the Subpoena

16   that was issued by the plaintiffs in this case were

17   business records of Jushi USA?

18         MR. McNAMARA:  Object to the form.

19         THE WITNESS:  The obtaining of document was

20   through somebody that I do not know who had designated

21   to come to get from my computer and from Tiffany's

22   computer; therefore, when I look at this document that

23   is in front of me, I have not seen this document.

24   BY MR. STECKLER:

25   Q.     Who was the person that was designated to get

Confidential - Subject to Further Confidentiality Review

```
 1   information from your computer?

 2   A.      For this question, I do not remember the name;

 3   however, I don't know if it is okay to entrust the

 4   attorney to answer your question.

 5           MR. McNAMARA:  Bruce, we had a vendor, an

 6   E-discovery vendor, come and forensically harvest

 7   documents --

 8           MR. STECKLER:  Fair enough.

 9           MR. McNAMARA:  -- which I told you we were

10   doing.  I told you that it was going to be Mr. Tang and

11   Miss Chen.  And we used the search terms that you gave

12   us and applied them to the documents -- to the data that

13   was harvested from their documents.

14           MR. STECKLER:  So can I ask you --

15           MR. McNAMARA:  Sure.

16           MR. STECKLER:  -- is it fair to say that the

17   documents that we received from you all came from Jushi

18   USA computers that was gathered from this process that

19   you talked about?

20           MR. McNAMARA:  I think so.  But there have been

21   some quirks in the documents that you've shown him

22   where -- where I'm -- I know that there were some

23   documents that were inadvertently produced that were

24   outside of the Bates range that we then fixed -- I'm

25   sorry -- outside of the date range that we then fixed
```

Confidential - Subject to Further Confidentiality Review

1    and I am -- so -- and we also -- yeah, so the short

2    answer is, Bruce, is I don't actually know.  I'll have

3    to go back and verify that from the ones that you've

4    shown him.

5         MR. STECKLER:  Well, what I'd like to verify is

6    that the documents that were produced were business

7    records of Jushi USA.

8         MR. McNAMARA:  Yeah.  I don't know if we're ever

9    going to be able to make a blanket statement on that

10   because you're talking about thousands of documents, and

11   it's very easily conceivable that there were documents

12   that weren't business records that happened to be on

13   their computers or in their PST files that were captured

14   by the search terms.  I don't think we'd do that on a

15   blanket basis.

16        MR. STECKLER:  I understand that.  And that's

17   the issue with this deposition that I see having down

18   the road is the necessity to establish that each of the

19   documents that we have are business records of Jushi

20   USA, which may be more time-consuming.

21        If you want to reach an agreement that we can

22   somehow show you documents and you'd be willing to

23   stipulate they're business records, that would be easier

24   than going through records with him.

25        Would you be willing to do that?

```
 1              MR. McNAMARA:  I'll certainly consider it.  I

 2     mean, if you want to send documents our way and ask us

 3     whether they're business records, that's reasonable if

 4     you're talking about a handful of documents.  If you're

 5     talking about, you know, 3,000 or 10,000 documents, that

 6     becomes more complicated.

 7              MR. STECKLER:  Well, that's more than you

 8     produced.  But I would anticipate, you know, a universe

 9     of 30 to 50 documents, at the most, that we may need to

10     authenticate or to prove up as business records.

11              And if you're amenable to that agreement, it

12     would save a lot more time than us at the end of the day

13     having to, you know, try to go back and prove it up.

14              And we can work it out, hopefully, and, if

15     not --

16              MR. McNAMARA:  Sure.

17              MR. STECKLER:  -- you know, we can seek some

18     relief from the Court.  But I'd love to reach an

19     agreement with you, if possible.

20              MR. McNAMARA:  Sure.  We'll certainly consider

21     that.  I'll take a look at what you send, and if they're

22     business records, you know, we'll talk.  But I wouldn't

23     see a reason to --

24              MR. STECKLER:  And you also represent two other

25     entities; right?
```

1           MR. McNAMARA:  Yes.

2           MR. STECKLER:  China Jushi and Jushi Group.

3  So --

4           MR. McNAMARA:  Yes.

5           MR. STECKLER:  -- we may -- maybe that's the rub

6  here with some of these documents, that Mr. Tang, Tang

7  excuse me, does not understand so --

8           MR. McNAMARA:  It certainly could be.

9           And a question for you, because they haven't

10  been, neither of those entities has been subpoenaed, and

11  so one of my questions for you, which we can talk about

12  off the record, is, do you plan to do that and do you

13  plan to take depositions of those?

14           MR. STECKLER:  We can discuss what the necessity

15  of that -- the necessity of that based probably upon a

16  lot of the prove-up of records and documents.

17           MR. McNAMARA:  Okay.

18           MR. STECKLER:  All right?

19           Thank you for your agreement, Counsel.

20  BY MR. STECKLER:

21  Q.      Sir, I apologize for the side conversation, but,

22  hopefully, it will save us some time.

23           Do you know who controls Hengshi Fiberglass USA?

24           THE INTERPRETER:  This is the interpreter

25  speaking.

1        Did counsel say H-E-N-G-S-H-I?

2        MR. STECKLER:  Yes, ma'am.

3        THE WITNESS:  Zhenshi Holding, Z-H-E-N-S-H-I,

4   Holding.

5   BY MR. STECKLER:

6   Q.     And are you familiar with the company Hengshi

7   Fiberglass USA?

8   A.     I know that company.

9   Q.     And is Tiffany Chen involved in that company?

10  A.     Yes.

11  Q.     What is her position in Hengshi Fiberglass USA?

12         MR. McNAMARA:  Object to the form.

13         THE WITNESS:  She does not hold a position.

14  BY MR. STECKLER:

15  Q.     Who -- who is part of the management or board of

16  directors of Hengshi Fiberglass USA?

17         MR. McNAMARA:  Object to --

18  BY MR. STECKLER:

19  Q.     If you know.

20         MR. McNAMARA:  Object to the form.

21         THE WITNESS:  The CEO of Hengshi USA is Lewis

22  Stern, L-E-W-I-S S-T-E-R-N, but I'm not sure about the

23  correct spelling.

24  BY MR. STECKLER:

25  Q.     And where --

Confidential - Subject to Further Confidentiality Review

```
 1   A.       For the members of the board of directors, I
 2   would need to go back and check the document to know
 3   that.  I would need to check with Zhenshi,
 4   Z-H-E-N-S-H-I, Holding.
 5   Q.       Where is Hengshi Fiberglass USA located in the
 6   United States?
 7            MR. McNAMARA:  Object to the form.
 8            THE WITNESS:  In City of Irwindale.
 9            (In English)  Irwindale -- Irwindale.
10            (Through the interpreter)  I'll need to check
11   the detailed address to let you know.
12   BY MR. STECKLER:
13   Q.       Your company, Jushi USA, is also in Irwindale,
14   California; correct?
15   A.       Correct.  But Hengshi USA and Jushi USA are
16   located in two different buildings with two different
17   addresses.
18   Q.       Does Zhenshi Holding or Zhenshi Group, Hengshi
19   Fiber have offices in the United States, that you're
20   aware of?
21            MR. McNAMARA:  Object to the form.
22            THE WITNESS:  Please repeat.  I'll have to hear
23   it again.
24            THE INTERPRETER:  The interpreter will repeat.
25            THE WITNESS:  Yes.
```

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. STECKLER:

 2   Q.      Where -- strike that.

 3           Do you know where in the United States Zhenshi

 4   Holding and/or Zhenshi Group, Hengshi Fiberglass have

 5   offices in the United States?

 6           MR. McNAMARA:  Object to the form.

 7           THE WITNESS:  Like I said earlier, it -- it is

 8   in Irwindale, but I do not recall the name of the road.

 9   I can check and let you know.

10   BY MR. STECKLER:

11   Q.      Does Jushi USA work with Hengshi Fiberglass USA?

12   A.      No.

13   Q.      Does Jushi USA and Hengshi Fiberglass USA have

14   any similar employees, managers, supervisors, or board

15   of directors?

16           THE INTERPRETER:  This is the interpreter

17   speaking.

18           When counsel says "supervisors," did counsel

19   mean supervisor for the board of directors or supervisor

20   as a management title?

21           MR. STECKLER:  Supervisor as a management title,

22   board of directors separately.

23           THE INTERPRETER:  Thank you.

24           And there will be no change on the

25   interpretation.
```

Confidential - Subject to Further Confidentiality Review

```
 1            THE WITNESS:  Hengshi has its own company, its

 2     own office, its own employees, and Jushi has its own.

 3     These two companies are completely separated.  Others

 4     are completely different.

 5            And just now you asked about directors; right?

 6            MR. STECKLER:  Yes.

 7            THE WITNESS:  As of the directors, I'll have to

 8     go back and check documents to find out exactly who are

 9     the directors of Zhenshi USA and Hengshi USA, then I can

10     answer your question.  I cannot answer your question

11     right now.

12     BY MR. STECKLER:

13     Q.     Did you know that Mr. Zhang or Zhang, Z-H-A-N-G,

14     is on the board of directors of Zhenshi Holding?

15     A.     Yes.

16     Q.     Any other similar board of directors on Zhenshi

17     Holding and China Jushi that you're aware of other than

18     Mr. Zhang?

19     A.     Like I just said, I would need to check to find

20     out the details of the board of director of Zhenshi.

21            Upon checking that information, I will be able

22     to answer his question but, at present, it is impossible

23     for me exactly how many people there are.

24     Q.     Well, you just recalled now, based upon my

25     question, that Mr. Zhang was on the board of directors
```

Confidential - Subject to Further Confidentiality Review

1   of Zhenshi Holding.

2           Does that refresh your memory at all?

3   A.      Yes, Mr. Zhang is in the board of directors.  He

4   is the boss.

5   Q.      All right.  And he's also your boss.

6   A.      Yeah.  Because I am Jushi USA's employee.

7   Q.      And he works with China Jushi and is the

8   supervisor of China Jushi and Jushi Group; correct?

9           THE INTERPRETER:  May the interpreter inquire,

10  the word "supervisor" here meaning supervisor as the

11  title of management or supervisor as supervisor of board

12  of directors?

13          MR. STECKLER:  Supervisor of work as in what he

14  does, he supervises.

15          THE INTERPRETER:  Thank you.

16          THE WITNESS:  Mr. Zhang is the CEO of Jushi

17  Company and he is the boss of Zhenshi Group, but as of

18  what is his position in it, as far as I know, is the

19  chairman of Zhenshi Group.

20  BY MR. STECKLER:

21  Q.      Does Jushi USA have bank accounts in the United

22  States?

23  A.      Yes.

24  Q.      Does Jushi Group have bank accounts in the

25  United States?

```
 1            MR. McNAMARA:  Object to form.

 2            THE WITNESS:  Not as far as I know, but I do not

 3     know whether they have it or not over there, but we do

 4     not have it here.

 5     BY MR. STECKLER:

 6     Q.      Does China Jushi have bank accounts in the

 7     United States?

 8            MR. McNAMARA:  Object to form.

 9            THE WITNESS:  I do not know.

10     BY MR. STECKLER:

11     Q.      Does Jushi Group serve as a guarantor for loans

12     by Jushi USA?

13     A.      They used to, but it was either last year or the

14     year before last year, which I do not recall, when they

15     withdrew from being a guarantor.

16     Q.      So is it your testimony that at some point last

17     year, in 2014, Jushi Group was a guarantor of Jushi USA?

18            MR. McNAMARA:  Object to the form.

19            That's not what he said, Bruce.

20            THE WITNESS:  The exact time, I'm not sure

21     whether it was last year or the year before last year.

22     BY MR. STECKLER:

23     Q.      I'm going to hand you --

24            MR. McNAMARA:  Matt, do you mind if we -- sorry.

25     That's getting a little --
```

Confidential - Subject to Further Confidentiality Review

```
 1           MR. GAUGHAN:  Sorry.

 2           MR. McNAMARA:  Sorry, Bruce.  Go ahead.

 3    BY MR. STECKLER:

 4    Q.      Let me hand you what we're going to mark as

 5    Exhibit Number 22 to your deposition, which is in

 6    English.

 7           (Exhibit 22 was marked for identification.)

 8    BY MR. STECKLER:

 9    Q.      Do you know if this is a business record of

10    Jushi USA?

11    A.      Yes.

12    Q.      And this is entitled "2014 Renewal Pricing and

13    Loan Condition with Cathay Bank."  Is that your

14    understanding?

15           And I know it's in English, but you do read a

16    little bit of English; correct?

17           MR. McNAMARA:  Object.  Object to the form.

18           THE WITNESS:  Yes.

19    BY MR. STECKLER:

20    Q.      And on this document it indicates that Jushi

21    Group Company in 2014 was a guarantor; correct?

22           MR. McNAMARA:  Object to the form.

23           THE WITNESS:  Yeah.  Okay.  They used to be, but

24    recently, which I do not recall the details, whether it

25    was last year or the year before last year or this year,
```

```
 1   we told the bank that because Jushi Group is either

 2   unwilling or cannot to guarantee for their overseas

 3   subsidiary companies, therefore, accepted the

 4   requirement of the headquarters, which is the

 5   requirement of Jushi Group requiring us withdraw the

 6   guarantee from Jushi Group with Cathay Bank.  Otherwise,

 7   we would be prepared to change bank.  Therefore, Cathay

 8   Bank agreed with us to withdraw Jushi Group's guarantee.

 9          Above is what I know.

10   BY MR. STECKLER:

11   Q.     Based upon the document which is in front of

12   you, Exhibit Number 22, it appears that Jushi Group

13   ceased being a guarantor for Jushi USA probably after

14   2014.

15          Does that seem right to you now?

16          MR. McNAMARA:  Object to the form.

17          THE WITNESS:  From what I remember, it is most

18   probably that it happened in 2014, but I can check and

19   let you know exactly what day was that.

20   BY MR. STECKLER:

21   Q.     So is this document incorrect?

22   A.     Before we had withdrew the guarantee of Jushi

23   Group from Cathay Bank, that was completely correct but

24   afterwards, because it had been withdrawn, therefore,

25   I'll have to go back and check the time.
```

Confidential - Subject to Further Confidentiality Review

1  Q.      Okay.  And I understand you don't remember the

2  exact date or month; correct?

3  A.      Correct.

4  Q.      But based upon this document, in 2014 Jushi

5  Group was a guarantor for Jushi USA at some point.

6          MR. McNAMARA:  Object to the form.

7          THE WITNESS:  That's possible.

8  BY MR. STECKLER:

9  Q.      Did China Jushi ever act as a guarantor of Jushi

10 USA?

11 A.      I don't think so because, according to the rules

12 of public listing company in China, such company cannot

13 be a guarantor.

14 Q.      Where does Jushi USA have bank accounts?

15 A.      Repeat.

16         THE INTERPRETER:  The interpreter will repeat.

17         THE WITNESS:  As far as I can remember right

18 now, I'd say that, number one, the most important bank

19 is Cathay Bank, and we have another bank account which

20 is responsible for the payrolls payment.

21 BY MR. STECKLER:

22 Q.      Where is that?

23 A.      I don't quite recall.  It might be BOA or

24 someone else but I don't have a clear recollection on

25 that.  But I can check and let you know.

Confidential - Subject to Further Confidentiality Review

```
1   Q.      Any other bank accounts that you can think of?

2   A.      I can't think of anything else right now.

3   Q.      Does Jushi Group wire or send money to Jushi USA

4   for its operating costs?

5   A.      No.

6   Q.      You have never received a loan from Jushi Group?

7   A.      No.

8   Q.      And does Jushi USA send money to Jushi Group?

9   A.      Payment for goods, which is account payable.

10  Q.      Does Jushi Group -- I don't know the term in

11  Chinese -- float Jushi USA with product that it sends to

12  the United States for retail sale?

13          MR. McNAMARA:  Object to the form.

14          THE INTERPRETER:  This is the interpreter

15  speaking.

16          May the interpreter have the definition of

17  "float" here?

18  BY MR. STECKLER:

19  Q.      In other words, does Jushi US --

20          MR. STECKLER:  Let me just rephrase the

21  question.

22          THE INTERPRETER:  Thank you.

23  BY MR. STECKLER:

24  Q.      Does Jushi Group send products to Jushi USA

25  without requiring an immediate payment until the
```

1   products are sold?

2   A.      No.

3   Q.      Jushi USA is required to pay Jushi Group

4   immediately for all product shipped and delivered to

5   Jushi USA; is that right?

6   A.      Our payment term is two months, 60 days.

7   Q.      After delivery?

8   A.      There are two circumstances.  First circumstance

9   is to deliver goods directly from mainland China to the

10  customers.

11  Q.      So --

12          THE INTERPRETER:  Just give the interpreter a

13  moment.  My pen -- my pen is out of ink.

14          MR. STECKLER:  Oh.  Here.

15          THE INTERPRETER:  Thank you.

16          THE WITNESS:  Another circumstance would be that

17  the goods would be delivered to our warehouses first and

18  the goods will be delivered to nearby locations

19  according to the order.

20          THE INTERPRETER:  May the interpreter clarify

21  with deponent?

22          THE WITNESS:  And some goods would be kept in

23  the warehouse as security inventories.

24          As far as I know, the payment term is 60 days,

25  but I'm not quite sure whether there are different

Confidential - Subject to Further Confidentiality Review

1  calculations between the two.

2  BY MR. STECKLER:

3  Q.      And these three circumstances that you've talked

4  about, where Jushi Group ships to customers in the

5  United States, Jushi Group ships to Jushi USA, and where

6  Jushi Group ships to Jushi USA and then Jushi sends it

7  to customers, was that occurring in 2014 and 2015?

8  A.      Yes.

9  Q.      Before product was shipped to the United States,

10  would you have secured an order first or would you

11  maintain inventory in your warehouse?

12        MR. McNAMARA:  Object to the form.

13        THE WITNESS:  Okay.  Jushi Group would receive a

14  purchasing order from Jushi USA every month around the

15  20th to be -- the purchasing orders to be shipped the

16  following month.

17  BY MR. STECKLER:

18  Q.      And on some occasions Jushi Group would ship

19  directly to those customers; correct?

20  A.      There are two types of occasions in the order.

21  Number one, according to the direction of Jushi USA, the

22  goods will be shipped from Shanghai port to Jushi

23  USA-designated -- designated locations through Jushi

24  USA-designated shipping freight company.

25        The second circumstance would be that, according

Confidential - Subject to Further Confidentiality Review

1    to the direction of Jushi USA, the goods would be sent

2    to every warehouse of Jushi USA according to the

3    purchasing order issued for the following month in

4    around the 20th of each month by Jushi USA to --

5    through -- excuse me -- through Jushi USA-designated

6    shipping freight company.

7    Q.      And the shipments made from China were made by

8    Jushi Group.  They're the Chinese company sending the

9    products to the United States; correct?

10          MR. McNAMARA:  Object to the form.

11          THE WITNESS:  The transaction type that we have

12   with Jushi Group is F.O.B.; therefore, when the two

13   company handed over the goods in Shanghai and once the

14   goods are on board of the ship, the goods will belong to

15   Jushi USA.  In case any issues arise, at that moment the

16   responsibility would lay in Jushi USA.

17   BY MR. STECKLER:

18   Q.      And the goods on the ship are from Jushi Group;

19   correct?

20          MR. McNAMARA:  Object to --

21          THE WITNESS:  Yes.

22   BY MR. STECKLER:

23   Q.      And Jushi USA has distribution centers in

24   Columbia, South Carolina; Elkhart, Indiana; and

25   Irwindale, California?  Is that right?

Confidential - Subject to Further Confidentiality Review

```
1    A.      Yes, there are three.

2    Q.      And at one point you had a warehouse or

3    distribution center in Miami; correct?

4    A.      Yes.  In the very beginning, we did not have the

5    one in South Carolina but we had one in Miami.  But

6    because Miami is too far away and the shipping cost is

7    too expensive, later, the one in Miami is stopped and

8    transferred to South Carolina.

9    Q.      I'd like you to go back and look to the

10   organizational chart, please.

11           This chart indicates BNBM, paren, Group has an

12   interest in CNBM.

13           Do you see that?

14           MR. DAVIDSON:  Objection to form.

15           THE WITNESS:  According to the organization

16   chart provided to me by the attorney, I see China

17   National Building Material Group and then there is a

18   line leading to Beijing New Building Material Group and

19   in between there is a 65 percent.

20   BY MR. STECKLER:

21   Q.      Are you familiar with BNBM Group at all?

22   A.      What company is BNBM?

23   Q.      So you're not familiar with that company.

24   A.      I'm not familiar.

25   Q.      Is Zhenshi Holding Company a State-owned
```

Confidential - Subject to Further Confidentiality Review

```
 1   enterprise?

 2   A.      As far as I know, it is a 100 percent private

 3   company.

 4   Q.      Do you know or are you familiar with Beijing New

 5   Building Materials?

 6   A.      What you had just said, are you referring to

 7   BNBM as Beijing New Building Materials, the second one?

 8   Q.      No.  I'm asking if you're familiar with the

 9   company Beijing New Building Materials.

10   A.      I do not know.

11   Q.      You are familiar with CNBM, though, aren't you?

12   A.      Please redefine "familiar."

13   Q.      You know who the company is, don't you?

14           THE INTERPRETER:  Interpreter would like to

15   clarify with deponent.

16           THE WITNESS:  I know this company just in

17   general.  By "the company" I am referring to the third

18   company here, which is China National Building Material

19   Company.

20   BY MR. STECKLER:

21   Q.      Which, based upon this chart, appears to be the

22   controlling shareholder of China Fiberglass; correct?

23           MR. McNAMARA:  Object to form.

24           THE WITNESS:  According to the chart given to me

25   by the attorney, that is correct.
```

Confidential - Subject to Further Confidentiality Review

1   BY MR. STECKLER:

2   Q.      Let me hand you what I'm going to mark as

3   Exhibit Number 23.

4           We did not get a translation of this document

5   nor did we make one but I --

6           (Exhibit 23 was marked for identification.)

7   BY MR. STECKLER:

8   Q.      Who is Howard Yan?

9   A.      I don't know this person; however, I think he is

10  an employee of Jushi Group.

11  Q.      Is this a business record of Jushi USA?

12  A.      Yes.

13  Q.      In English, this E-mail says, this is an

14  instruction from management and CNBM, as this C.P.A.

15  firm is seeing some -- seeking some business overseas.

16          I have some questions.  If Howard Yan or Yan is

17  with Jushi Group, who is management?

18          MR. McNAMARA:  Object to the form.

19          THE WITNESS:  Okay.  Mr. Ding -- the possible

20  spelling is D-I-N-G -- is the CFO of Jushi Group.  I

21  believe Mr. Ding is their actual management.

22  BY MR. STECKLER:

23  Q.      Why would Tiffany and Maybal be getting

24  instruction from CNBM?

25          MR. DAVIDSON:  Object to the form.

1           MR. McNAMARA:  Object to the form.

2           THE WITNESS:  I just said Mr. Yan works at Jushi

3    Group.  We received Mr. Yan's letter, not a letter from

4    CNBM.  We have never received instructions from CNBM.

5    BY MR. STECKLER:

6    Q.     So this E-mail is incorrect.

7           MR. McNAMARA:  Object to form.

8           THE WITNESS:  This E-mail is correct, but from

9    Jushi Group.

10   BY MR. STECKLER:

11   Q.     So the fact that it says "instruction from

12   management and CNBM" is wrong.

13          MR. McNAMARA:  Object to the form.

14          THE WITNESS:  I did not approach anyone to

15   double-check whether this letter is true or false;

16   however, we have not changed the C.P.A. or the auditor

17   that we use each year for us in U.S.A.

18   BY MR. STECKLER:

19   Q.     So -- I'm sorry.

20   A.     Our C.P.A. had worked for us in our accounting

21   for about 13 or 15 years.  We have never changed our

22   C.P.A.  It is not that we would make such a change

23   whoever asks us --

24   Q.     So maybe you're --

25   A.     -- to make --

Confidential - Subject to Further Confidentiality Review

1   Q.      I'm sorry.

2   A.      -- the change.

3           THE INTERPRETER:  The interpreter corrects

4   herself:  Whoever instruct us to make the change,

5   rather.

6   BY MR. STECKLER:

7   Q.      So, sir, maybe you're wrong, based on this

8   document.  Maybe CNBM has given some instructions to

9   Jushi USA and you're just unaware of it.

10          MR. McNAMARA:  Object to the form.

11          THE WITNESS:  Yes, from the documents that I

12  have seen, I have never received any instructions from

13  CNBM.  But we reject any request of making changes from

14  Jushi Group from -- or from someone else.  We did not

15  make the change.

16  BY MR. STECKLER:

17  Q.      I'm not talking about your accountant, sir.  I'm

18  saying, maybe CNBM has given Jushi USA instructions and

19  you're just unaware of it as you sit here today.

20          MR. McNAMARA:  Object to the form.

21          THE WITNESS:  Maybe I'm unaware of.  I cannot

22  answer something that I'm unaware of.

23          MR. STECKLER:  Fair enough.

24  BY MR. STECKLER:

25  Q.      And this document indicates that CNBM was giving

 1    some instructions to Jushi USA; correct?

 2         MR. McNAMARA:  Object to the form.  Asked and

 3    answered.

 4         THE WITNESS:  The letter was sent by Mr. Yan.  I

 5    did not ask Mr. Yan whether it is true or false

 6    regarding the instructions of CNBM.

 7    BY MR. STECKLER:

 8    Q.    Let me hand you what we're going to mark as

 9    Exhibit Number 24 to your deposition.

10         (Exhibit 24 was marked for identification.)

11    BY MR. STECKLER:

12    Q.    And just so we're clear, it's Bates stamped 1869

13    and it's also got an attachment 1872 and it's a total of

14    four pages.

15         MR. McNAMARA:  So you want me to collate them so

16    it --

17         MR. GAUGHAN:  Yeah.  If you don't mind.

18         MR. McNAMARA:  All right.  I don't want to mess

19    things up and get it in the wrong order.  So this --

20         MR. STECKLER:  You're all on the record.  Do

21    you --

22         MR. McNAMARA:  Well --

23    BY MR. STECKLER:

24    Q.    Sir --

25         MR. McNAMARA:  Before --

Confidential - Subject to Further Confidentiality Review

1          MR. STECKLER:  Do you not have everything?

2          MR. McNAMARA:  Bruce, can we get copies?

3          MS. HUANG:  Can we get this sorted out first?

4          MR. McNAMARA:  Correct.  We do not have

5   everything.

6          MR. STECKLER:  Stop.  Please.  Let's go take a

7   break.

8          VIDEO OPERATOR:  Off the record?

9          MR. STECKLER:  I'm sorry.  You do have

10  everything.  It's an E-mail --

11          VIDEO OPERATOR:  Counsel, off the record?

12          THE COURT REPORTER:  Hold on.  Hold on.

13          MR. STECKLER:  Oh, I'm sorry.  I thought we were

14  going --

15          VIDEO OPERATOR:  Off the record.

16          The time is approximately 9:17 a.m.

17          (Recess, 9:17-9:28 a.m.)

18          VIDEO OPERATOR:  With the approval of counsel,

19  back on the record.

20          The time is approximately 9:28 p.m. (sic).

21  BY MR. STECKLER:

22  Q.      Mr. Tang, are these business records of Jushi

23  USA?

24  A.      Yes.

25  Q.      And does Jushi USA have to submit its 2014

1   financials to Jushi Group for purposes of reporting, or

2   China Jushi or China Fiberglass?

3           MR. McNAMARA:  Object to the form.

4           THE WITNESS:  We gave the prepared report, in

5   accordance with the requirement of Jushi Group, to their

6   designated recipient, which is the finance department of

7   Jushi Group Company, Limited.

8   BY MR. STECKLER:

9   Q.      And do you do that annually?

10  A.      According to the requirement of the accounting

11  department of Jushi Group, we do that every year.

12  Q.      And do you know if this is required because of

13  China Fiberglass and the Chinese Securities Regulatory

14  Commission?

15          MR. McNAMARA:  Object to the form.

16          THE WITNESS:  I did not check on this issue.  I

17  was simply following up in accordance with the

18  requirement of the financial department of Jushi Group.

19  BY MR. STECKLER:

20  Q.      So you just do what you're told and you don't

21  know all of the reasons why they're requesting this

22  information.  Is that fair?

23          MR. McNAMARA:  Object to form.

24          THE WITNESS:  I can't tell you whether I'm aware

25  or unaware of this matter because I have not

1  double-checked the matter in detail.

2  BY MR. STECKLER:

3  Q.      Let me hand you what we're going to mark as

4  Exhibit Number 25 to your deposition.

5          (Exhibit 25 was marked for identification.)

6          MR. STECKLER:  I want to make sure someone

7  doesn't have my highlighted copy, although I don't see

8  it.

9  BY MR. STECKLER:

10  Q.      Is this a business record, sir, of Jushi USA

11  Fiberglass?

12  A.      Yes.

13  Q.      And who signed this document as general manager?

14  A.      I think she is the CFO, Tiffany, Tiffany Chen.

15  Q.      And what is the date of this document, sir?

16  A.      April the 21st, 2014.

17  Q.      Are you familiar with a loan of $20 million?

18  A.      I know some of the information.

19  Q.      And what is this $20 million loan for that is

20  being guaranteed by Jushi Group?

21          MR. McNAMARA:  Object to the form.

22          THE WITNESS:  Because we have the document now,

23  I recall what the attorney had asked earlier in

24  regarding to the guarantee made by Jushi Group.

25          It was at this time when the 20 million loan was

Confidential - Subject to Further Confidentiality Review

1   being renewed that Jushi Group as a guarantor, a

2   guarantor, was removed.  And this 20 million loan is

3   used as a credit line for the cash flow of doing

4   business.

5   BY MR. STECKLER:

6   Q.     How long have you had a $20 million line of

7   credit with Cathay Bank?

8   A.     I believe approximately three or four years.

9   But what we have actually used is not as much as 20

10  million but, rather, around 13 million.

11  Q.     And those lines of credit and monies used were

12  guaranteed by Jushi Group during that period of time;

13  correct?

14         MR. McNAMARA:  Object to the form.

15         THE WITNESS:  As I had said to Mr. Attorney just

16  now, we removed Jushi Group as a guarantor at this

17  moment when we were renewing our credit line.

18  BY MR. STECKLER:

19  Q.     So who is now the guarantor of your line of

20  credit, sir?

21  A.     They did not ask for it anymore.  That request

22  was removed.

23  Q.     Why did Jushi Group decide not to be a guarantor

24  of your loan in the United States in 2014?

25         MR. McNAMARA:  Object to the form.

```
 1              THE WITNESS:  According to the instruction given

 2    to us by Jushi Group, that Jushi Group will no longer

 3    guarantee all of its overseas companies.

 4    BY MR. STECKLER:

 5    Q.      Did you ask why?

 6    A.      No.

 7    Q.      Why not?

 8    A.      We usually would not ask Mr. Zhang why when we

 9    receive instructions from him because he has a bad

10    temper.

11    Q.      Were you aware that CNBM had meetings

12    instructing its subsidiaries to remove and close all

13    bank accounts in the United States?

14              MR. DAVIDSON:  Objection to form.

15              MR. McNAMARA:  Object to form.

16    BY MR. STECKLER:

17    Q.      Were you aware --

18    A.      I do not know.

19    Q.      Okay.  I'm sorry.

20              Were you aware of meetings at CNBM or with China

21    Jushi in which it was discussed that they had to be

22    careful with entities in the United States doing

23    business in the United States and bank accounts in the

24    United States that occurred in 2014?

25              MR. DAVIDSON:  Objection to form.
```

Confidential - Subject to Further Confidentiality Review

 1            THE WITNESS:  I do not know that.

 2   BY MR. STECKLER:

 3   Q.      Did Mr. Zhang ever instruct you in 2014 or in

 4   2015 to stop doing business in the United States?

 5   A.      No.

 6   Q.      Let me hand you what we're going to mark as

 7   Exhibit Number 26 and 26-A to your deposition.

 8            (Exhibit 26 was marked for identification.)

 9            (Exhibit 26-A was marked for identification.)

10   BY MR. STECKLER:

11   Q.      It's previously been marked as an exhibit in

12   this case.  It's the 2014 annual report of Beijing New

13   Building Materials, Public Limited Company.

14            MR. NICKEL:  Counsel, at the outset of this line

15   of questions, I just want to raise for the record that

16   at the deposition where this was offered there was a

17   26-R that was also offered which contained red lines

18   that BNBM PLC provided to PSC in advance of the

19   deposition that the PSC signed off on that were used at

20   that deposition in lieu of some of these translations in

21   Exhibit 26.

22   BY MR. STECKLER:

23   Q.      Please turn to Page 36, sir.

24            I apologize.  Please start at Page 35 and go to

25   the fourth column over.

Confidential - Subject to Further Confidentiality Review

```
 1           Do you see that?

 2           MR. McNAMARA:  Which chart?  There are two.

 3           MR. STECKLER:  Hold on for a moment.

 4           So your counsel can get up to speed, Page 33 for

 5  you in English, Counsel.

 6           MR. McNAMARA:  Oh.

 7           MR. STECKLER:  It's the fourth column --

 8           MR. McNAMARA:  I see.

 9           MR. STECKLER:  -- second box down.  He's going

10  to --

11  BY MR. STECKLER:

12  Q.    I'm going to ask you, sir, on your page in

13  Chinese to please read the fourth column, second box on

14  Page 35 and 36.

15           MR. McNAMARA:  Object to form.

16           THE WITNESS:  All of them?

17           MR. STECKLER:  To yourself.  Just -- yes.  I

18  apologize.

19           THE WITNESS:  All of them all the way onto here

20  (indicating)?

21           MS. ZHANG:  Until the end?

22           MR. STECKLER:  Yes.

23           MS. ZHANG:  Yeah.

24  BY MR. STECKLER:

25  Q.    Just read that to yourself, sir.
```

Confidential - Subject to Further Confidentiality Review

```
1           If you'd like to take some time, we can go off
2   the record, if you need more time.
3   A.      Two minutes.
4           MR. STECKLER:  Okay.  Let's take a quick
5   two-minute break and let you read it.
6           VIDEO OPERATOR:  Off the record.
7           The time is approximately 9:45 a.m.
8           (Discussion off the record.)
9           VIDEO OPERATOR:  Back on the record.
10          The time is approximately 9:47 a.m.
11  BY MR. STECKLER:
12  Q.      Sir, did you have an opportunity to read in
13  Chinese from the BNB 2014 annual report about the
14  lawsuit in the United States District Court for the
15  Eastern District of Louisiana?
16  A.      Yes, I've just received a document given to me
17  by the attorney instructing me to read the second box in
18  Page 35 and the entire Page 36.  I'm done reading it.
19  Q.      And you also had an opportunity to read the
20  Minute Entry Order that was attached to your Notice from
21  the Court about the Contempt Order of Taishan; is that
22  correct?
23  A.      Yes, a few days ago my attorney handed over to
24  me this document and I read it.  But that document is in
25  English.
```

1   Q.      He gave you a translation, didn't he?

2   A.      There is no translation.

3   Q.      Sir --

4           MR. McNAMARA:  No.  I think he thinks the

5   translation is this.  I did give him a translation of

6   the --

7           MR. STECKLER:  Okay.

8           THE WITNESS:  Oh, I'm referring to this.  I --

9           MR. STECKLER:  We understand.

10          THE WITNESS:  -- don't have a detailed

11  translation for that.

12          MR. STECKLER:  Yes.

13  BY MR. STECKLER:

14  Q.      You read it in the original Chinese; right?

15  Okay.

16  A.      I do not recall, but I'll check it.  Okay?

17  Q.      No.  No.  No.  No.  Excuse me.  Excuse me.

18  Please.

19          You just read the original Chinese version of

20  the 2014 BNBM report on Page 35 and 36 in the column

21  that I directed you at; correct?

22          MR. McNAMARA:  Object to the form.

23          THE WITNESS:  Yes.  Yes.

24  BY MR. STECKLER:

25  Q.      And this column indicates that the Court told

Confidential - Subject to Further Confidentiality Review

1    Taishan and its related parties and subsidiaries to stop

2    doing business in the U.S. until they come back to

3    court.

4            Is that your understanding?

5            MR. McNAMARA:  Object to the form.

6            THE WITNESS:  Yes.

7    BY MR. STECKLER:

8    Q.     Do you see where it says kwon liang?

9            MS. ZHANG:  Guan liang.

10           MR. STECKLER:  Guan liang.

11           MR. McNAMARA:  I don't on the English version.

12           MS. HUANG:  Guan liang.

13           MR. McNAMARA:  Is that in that same box that

14   you --

15           THE WITNESS:  Yes.

16   BY MR. STECKLER:

17   Q.     And what does that mean?

18           MR. McNAMARA:  Object to the form.

19           THE WITNESS:  There are many different types of

20   interpretations for guan lian, G-U-A-N L-I-A-N.

21           In Chinese, guan lian means there is a

22   relationship and you are to connect the relationships.

23           MR. STECKLER:  Okay.

24   BY MR. STECKLER:

25   Q.     And if we now look on Page 43 --

Confidential - Subject to Further Confidentiality Review

1          MR. McNAMARA:  What page is that on the English

2   version?

3          MR. STECKLER:  Page 39.

4   BY MR. STECKLER:

5   Q.     If you look at -- if you look at the bottom

6   box -- I'm sorry.  I -- strike that.

7          If you look at the top box on your page,

8   under -- under Number 2, the first column, that's also

9   the word "guan liang"; right?

10         MR. McNAMARA:  Object to the form.

11         THE WITNESS:  Yes.

12  BY MR. STECKLER:

13  Q.     And underneath the term "guan liang," what

14  company is listed below it?

15         MR. McNAMARA:  Object to the form.

16         THE WITNESS:  From the document that was handed

17  over to me, in Chinese version I see, first of all,

18  China Jushi Company, Limited, and the second column on

19  the top, it says affiliate relationship.

20         MR. McNAMARA:  Object to the form and

21  translation.

22  BY MR. STECKLER:

23  Q.     And guan liang fang --

24         THE INTERPRETER:  May the interpreter know what

25  page it is in English?

Confidential - Subject to Further Confidentiality Review

```
 1              MS. ZHANG:  39.

 2              MR. STECKLER:  39, at the bottom under Number 2.

 3              MR. NICKEL:  Just again for the record, we would

 4    object to the interpreter reading anything from the

 5    English document that is not from the redlined portions

 6    of the exhibit that was initially offered at the BNBM

 7    PLC --

 8              MR. STECKLER:  I think she's using it for

 9    translation purposes, Counsel, not for actually reading

10    it.

11              MR. NICKEL:  Same objection.

12              THE WITNESS:  On Item Number 2, affiliates

13    relationship, it's -- it explains that this company,

14    parent company, this company, parent company's, joint

15    share companies.

16              MR. McNAMARA:  Object to the translation.

17    BY MR. STECKLER:

18    Q.    So, sir, guan liang fang means related party.

19          Is that your understanding?

20              MR. DAVIDSON:  Objection.  Form.

21              MS. ZHANG:  It means -- it means fang in the

22    translation.  Instead of guan liang, it means related

23    parties.  Guan liang fang means related party.

24              MR. STECKLER:  That was my question.  I'm sorry.

25              MS. HUANG:  So if guan liang fang is related
```

Confidential - Subject to Further Confidentiality Review

1   party, then guan liang should be translated as related.

2          MS. ZHANG:  Yeah.

3          MR. STECKLER:  Or as --

4          MS. HUANG:  Rather than affiliate.

5          MR. STECKLER:  Well, no.  That's what -- that's

6   the translation.  Don't put words in the mouth --

7          MS. HUANG:  I agree with the attorney, actually.

8          MR. STECKLER:  No, I'm not asking what you agree

9   with, I'm asking you, the testimony he gave is the

10  testimony he gave.

11         MR. McNAMARA:  And we objected.

12         MS. HUANG:  He read it in Chinese.

13         MR. McNAMARA:  Yeah.  He gave his testimony in

14  Chinese.

15         MR. STECKLER:  You don't like the answer, that

16  may be fine --

17         MR. McNAMARA:  No, we don't like --

18         MR. STECKLER:  -- but that's the translator's

19  decision, not yours.

20         MR. McNAMARA:  Yeah.  The answer is fine, it's

21  the interpretation of the translation that we --

22         MR. STECKLER:  Right.  You don't like the way

23  she translated the term.  It's the exact same term in

24  both.

25         THE INTERPRETER:  This is the interpreter

Confidential - Subject to Further Confidentiality Review

1    speaking.

2          The interpreter would just like to make sure,

3    should the interpreter read from the English

4    translation --

5          MR. STECKLER:  No.  Let me --

6          THE INTERPRETER:  -- or should the interpreter

7    interpret from her own understanding?

8          MR. STECKLER:  Let me strike that and start

9    over, if that's okay, Counsel.  I mean -- sorry -- not

10   Counsel.

11   BY MR. STECKLER:

12   Q.    Under Number 2 --

13         MR. NICKEL:  Bruce, before we do that, can we

14   clarify that for the interpreter?  Because I think my

15   objection prior to this was the interpreter should not

16   be reading from the English translation.

17         MR. STECKLER:  No.  No.  And I'm -- and that's

18   why I'm asking her not to do that.

19         THE INTERPRETER:  That's why the interpreter did

20   not read it.

21         MR. NICKEL:  And as to her question, I think the

22   answer is no, she should not read it.

23         MR. STECKLER:  And I'm not asking her to do

24   that.

25         MR. NICKEL:  Okay.  Thank you.

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. STECKLER:

 2   Q.      Under Roman numeral -- under Number 2, the word

 3   is "guan liang fang," which means related party.

 4           Is that your understanding, sir?

 5           MR. McNAMARA:  Object to the form.

 6           THE COURT REPORTER:  I'm sorry.

 7           Who was that who objected?

 8           MR. McNAMARA:  Me.

 9           THE WITNESS:  From what I see on this document,

10   my understanding, that it is the shareholding companies

11   of this company and parent company.

12   BY MR. STECKLER:

13   Q.      And this document indicates that China Jushi

14   Company is related to BNBM.

15           Is that your understanding?

16           MR. McNAMARA:  Object to the form.

17           THE WITNESS:  If the affiliate's relationship is

18   defined and clearly is stated as this company and

19   parent's companies shareholding companies, then I would

20   agree.

21   BY MR. STECKLER:

22   Q.      And this document indicates that China Jushi

23   Company is an affiliate; correct?

24           MR. McNAMARA:  Object to the form.

25           MR. NICKEL:  Objection to form.
```

Confidential - Subject to Further Confidentiality Review

```
 1            THE WITNESS:  I have said it earlier, and there

 2    is an explanation on the second point, which it says,

 3    under the second point's explanation, I believe what the

 4    attorney has said is correct.

 5    BY MR. STECKLER:

 6    Q.      And if China Jushi is an affiliate of BNBM,

 7    isn't it your understanding that China Jushi and its

 8    subsidiaries should not be doing business in the United

 9    States?

10            MR. McNAMARA:  Object to the form.

11            MR. NICKEL:  Objection.  Form.

12            THE WITNESS:  Ask again.  What is his question?

13            THE INTERPRETER:  The interpreter will repeat.

14            THE WITNESS:  First of all, I have only learned

15    recently the Notice from the Court and, second of all --

16    second of all, from the report the attorney gave to me

17    and the definition given in the report, to compare with

18    the Notice I had recently received from the Court, what

19    the attorney has said is reasonable.  That is my

20    personal understanding.

21    BY MR. STECKLER:

22    Q.      Now, let me ask you --

23            MR. STECKLER:  Can we take a quick break?  I'm

24    sorry.

25            VIDEO OPERATOR:  With the approval of counsel,
```

Confidential - Subject to Further Confidentiality Review

```
1   going off the record.

2           The time is approximately 10:03 a.m.

3           (Recess, 10:03-10:14 a.m.)

4           VIDEO OPERATOR:  With the approval of counsel,

5   back on the record.

6           The time is approximately 10:14 a.m.

7           This marks Recording File Number 2.

8   BY MR. STECKLER:

9   Q.      Sir, let me hand you what I'm going to mark as

10  Exhibit Number 27 to your deposition.

11          (Exhibit 27 was marked for identification.)

12  BY MR. STECKLER:

13  Q.      Is this a business record of Jushi USA?

14  A.      I'm not sure whether it is a business record of

15  Jushi USA or not, but when I learned about it, I see

16  that is a speech given by Mr. Zhang to the overseas

17  subsidiaries.  I participated in the meeting but I do

18  not know whether they had sent the document to the

19  U.S.A.

20  Q.      Have you seen this document before?

21  A.      I don't think I've read it.  But the content of

22  his speech is in Chinese, and I had participated in that

23  meeting.

24  Q.      Who else attends this meeting?

25  A.      The people in charge of Jushi Group's overseas
```

 1   companies.

 2   Q.      Okay.  Were you the only one from the United

 3   States that attended this meeting in China?

 4   A.      Three.

 5   Q.      Who else attended this meeting?

 6   A.      2014.  Well, this might be in 2015.  Is it 2014

 7   or 2015?  It is 2015.  Because participants are

 8   different for these two different years.

 9   Q.      And this report is summarizing occurrences over

10   the year 2014; is that right?

11   A.      There were three participants in both 2014 and

12   2015 but one of the three was different.

13           If this is for 2014, then the participants in

14   2014 were Alan, Sara, and I.  One of the person was

15   changed for the year 2015.

16   Q.      And was that person Alan?

17   A.      The person changed is the CEO of this year by

18   the name of W-U space Q-I-N-G.

19   Q.      Does China Jushi participate at the annual

20   conference?

21   A.      China Jushi?

22   Q.      Yes.

23   A.      This is a meeting of Jushi Group and its

24   overseas companies; therefore, all our participants are

25   from the overseas.

Confidential - Subject to Further Confidentiality Review

```
 1          There were ten companies or over ten companies,

 2    including those who sit on the stage are the leaders of

 3    Jushi Group.

 4          Sometimes, for example, Mr. Zhang, if he's

 5    sitting here today, I cannot answer the attorney to say,

 6    well, when he participated in the meeting, he

 7    participated as somebody from Jushi Group because, at

 8    the same time, he also holds a position in China Jushi;

 9    therefore, I can only explain that in that meeting he

10    participated as a leader of China Jushi.

11    Q.    I am -- I understand.

12          Because Mr. Zhang serves as both on the board of

13    China Jushi and on China Group; correct?

14          MR. McNAMARA:  Object to the form.

15          THE WITNESS:  For example, he represented Jushi

16    Group at this meeting, but if he were at China

17    Fiberglass or China Jushi, he would be attending with

18    another position.

19    BY MR. STECKLER:

20    Q.    And my point is, sir, is Mr. Zhang wears both

21    hats, both as being on the board of directors of China

22    Jushi and being on the board of directors of Jushi

23    Group; correct?

24    A.    That's my understanding currently, but you have

25    to still check in detail whether or not he is so
```

Confidential - Subject to Further Confidentiality Review

1    according to legal documents.  Because in China they

2    kept on changing, I -- I'm also not clear about that.

3    Q.      And when the same person serves on multiple

4    board of directors, it becomes confusing in which role

5    he is acting at a particular time, isn't it?

6            MR. McNAMARA:  Object to the form.

7            THE WITNESS:  It should be said that each time

8    when he is hosting a meeting, depending on the nature of

9    the meeting and what companies are involved, he would

10   represent the correct company with his position in the

11   company.

12   BY MR. STECKLER:

13   Q.      And in this meeting, whether he is with China --

14   Jushi -- China Jushi, which owns 100 percent of Jushi

15   Group, or whether he's with Jushi Group, he is

16   instructing the subsidiaries as to their business; is

17   that right?

18           MR. McNAMARA:  Object to the form.

19           THE WITNESS:  Correct.

20   BY MR. STECKLER:

21   Q.      And Mr. Zhang wants or Zhang wants the

22   subsidiaries of Jushi Group to be consistent in how they

23   conduct business throughout the world.

24           Is that your understanding?

25           MR. McNAMARA:  Object to the form.

```
 1            THE WITNESS:  Consistent.  Please explain what

 2    is consistent.

 3    BY MR. STECKLER:

 4    Q.      He wants all the subsidiaries to act in a

 5    unified manner in how they do business.

 6            MR. McNAMARA:  Object to form.

 7            THE WITNESS:  Yes.  Yes.

 8    BY MR. STECKLER:

 9    Q.      Jushi Group maintains an interest in how

10    accounts receivable are collected from its subsidiaries.

11    Is that true?

12            MR. McNAMARA:  Object to the form.

13    BY MR. STECKLER:

14    Q.      Isn't that true?

15            THE INTERPRETER:  May the interpreter ask the

16    definition of "interest" in the context of the question?

17            MR. STECKLER:  How about I re-ask it?

18            THE INTERPRETER:  Thank you.

19            MR. STECKLER:  Is that easier?

20    BY MR. STECKLER:

21    Q.      Does Jushi Group have requirements on how its

22    subsidiaries, such as Jushi USA, should collect its

23    accounts receivable?

24    A.      I want to clarify the question.

25            In this meeting Mr. Zhang instructed on the
```

1    account payable.  The account payable is referring to

2    the account payable of the subsidiaries selling to the

3    customers in overseas.

4    Q.     And does Jushi Group set forth certain

5    requirements that need to be met by its subsidiaries,

6    such as Jushi USA, whether it involves account payables

7    or account receivables?

8    A.     Yes.

9    Q.     And does Jushi Group direct control over the

10   quality and management of its subsidiaries, including

11   Jushi USA?

12          MR. McNAMARA:  Object to the form.

13          THE WITNESS:  Yes.

14   BY MR. STECKLER:

15   Q.     Does Jushi Group look over the financials of

16   Jushi USA?

17          MR. McNAMARA:  Object to the form.

18          THE WITNESS:  Please define "look over."

19   BY MR. STECKLER:

20   Q.     Does Jushi Group review the financials of Jushi

21   USA with respect to profit and loss?

22          MR. McNAMARA:  Object to the form.

23          THE WITNESS:  Every end -- in every end of the

24   year we would submit a report issued by the C.P.A. and

25   they would review this report.

```
 1  BY MR. STECKLER:

 2  Q.      Does Jushi Group direct its subsidiaries, such

 3  as Jushi USA, on cost-cutting measures that need to be

 4  undertaken?

 5          MR. McNAMARA:  Object to form.

 6          THE WITNESS:  Okay.  As far as I know, Jushi USA

 7  would report to them every year a total of the

 8  expenditure, but as far as we can control within the

 9  total number, that would be fine -- fine.

10  BY MR. STECKLER:

11  Q.      My point, though, is, Jushi Group can direct

12  Jushi USA to cut costs, if necessary, such as laying off

13  individuals or selling property, things like that;

14  correct?

15          MR. McNAMARA:  Object to the form.

16          THE WITNESS:  Yes.

17  BY MR. STECKLER:

18  Q.      Did you want to be involved in the Jushi USA

19  South Carolina production plant?

20          THE INTERPRETER:  This is the interpreter

21  speaking.

22          Is "you" plural or singular?

23          MR. STECKLER:  Singular.

24          THE INTERPRETER:  Oh, sorry.  This is the

25  interpreter.
```

Confidential - Subject to Further Confidentiality Review

1           The "you" meaning Mr. Tang himself or the

2     company?

3           MR. STECKLER:  Mr. Tang.

4           THE INTERPRETER:  Thank you.

5           THE WITNESS:  Absolutely not.  I want to retire.

6     BY MR. STECKLER:

7     Q.     To South Carolina?

8     A.     No.

9     Q.     Are individuals in Jushi USA in Irwindale,

10    California, involved in the production plant in South

11    Carolina?

12    A.     China directly deals with South Carolina's

13    government regarding the South Carolina case; however,

14    when the Chinese personnels arrived in the United

15    States, when there are needs such as transportation or

16    when they were not able to make phone calls to the

17    English-speaking manufacturers or they would need some

18    services, such as booking hotels, when the people who

19    came here did not have a sufficient level of English,

20    which would require us to be in the middle serving as

21    interpreters, we have done things like that.

22    Q.     And you do what you're told, as you said

23    earlier.

24           MR. McNAMARA:  Object to the form.

25           THE WITNESS:  Yes.

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. STECKLER:

 2   Q.      And when you say "China," are you talking about

 3   Jushi Group or China Jushi?

 4   A.      The people who came and we have received for the

 5   South Carolina business are the people from Jushi Group.

 6   Q.      Did you know that China Jushi and -- strike

 7   that.

 8           Did you know that CNBM in its documents has

 9   represented that it is involved in the fiberglass

10   business?

11           MR. McNAMARA:  Object to the form.

12           THE WITNESS:  It is the biggest shareholder of

13   China Jushi.

14   BY MR. STECKLER:

15   Q.      And it indicates in the documents that CNBM does

16   its fiberglass business through China Jushi.

17           Is that your understanding?

18           MR. McNAMARA:  Object to the form.

19           THE WITNESS:  I do not know that.  Only know

20   that it is our majority shareholder.

21           MS. HUANG:  Not -- not majority.

22           MR. STECKLER:  Excuse me.

23           MR. McNAMARA:  Object to the translation.

24           MR. STECKLER:  Do you want to object to the

25   translation?
```

Confidential - Subject to Further Confidentiality Review

```
 1            MS. HUANG:  Object to the translation, yeah.

 2   BY MR. STECKLER:

 3   Q.     Let me hand you --

 4            THE INTERPRETER:  Interpreter just wants to ask,

 5   what would counsel recommend to interpret?

 6            MS. HUANG:  He said, "da gudong."

 7            THE INTERPRETER:  Da gudong.

 8            MS. HUANG:  Da gudong.  The translation is the

 9   majority.  Da gudong is majority.

10            It used largest.

11            THE INTERPRETER:  Largest.

12            MS. HUANG:  Or big shareholder, not majority.

13            THE INTERPRETER:  What the interpreter was just

14   discussing can counsel regarding translation issues,

15   we're -- we're done.

16            MR. STECKLER:  I'm going to let the translation

17   just stand, and if they want to raise the objection, we

18   can address it at another time.

19            MR. McNAMARA:  Yeah.  We objected to the

20   translation.

21            MR. STECKLER:  Okay.  Fair enough.

22   BY MR. STECKLER:

23   Q.     Let me hand you what I'm going to mark as

24   Exhibits Number 28 and 29 to your deposition.

25            (Exhibit 28 was marked for identification.)
```

Confidential - Subject to Further Confidentiality Review

1          (Exhibit 29 was marked for identification.)

2          MR. STECKLER:  I don't think you need a copy of

3   this, Sunny, but you're welcome to have it.

4          MR. McNAMARA:  Hold on.

5          Do we have another copy of 28?

6          MR. STECKLER:  Here.  I've got --

7          MR. McNAMARA:  I need -- I've got 29.  I need

8   28.

9          MR. STECKLER:  Here.  Take -- here are two extra

10   copies.

11          MR. McNAMARA:  No.  I think we've got it now.

12   BY MR. STECKLER:

13   Q.    Sir, are these two exhibits, 28 and 29, business

14   records of Jushi USA?

15   A.    Yes.

16   Q.    Can I see your exhibit, please?

17          Is Exhibit 28 an income statement for Jushi USA

18   for the year 2014?

19   A.    Yes.

20   Q.    Is Exhibit 29 a balance sheet for Jushi USA for

21   the year 2014?

22   A.    Balance sheet, yes.

23   Q.    And is this a business record of Jushi USA

24   Fiberglass?

25   A.    Yes.

Confidential - Subject to Further Confidentiality Review

1   Q.      I'm going to hand you what we're going to mark

2   as Exhibit 30 to your deposition, which is entitled

3   Jushi USA Fiberglass Company Independent Auditor Report

4   and Financial Statements for December 31, 2014.

5           (Exhibit 30 was marked for identification.)

6   BY MR. STECKLER:

7   Q.      And it's Bates stamped 2460 and it goes from

8   2460 to 2460.00017.

9   A.      Yes.

10  Q.      Is this a business record of Jushi USA?

11  A.      Yes.

12  Q.      Is Jushi Group the sole supplier to Jushi USA?

13  A.      Yes.  But because the production of Jushi Group

14  is divided into three different factories, the products

15  manufactured by each factory is not necessarily the

16  completely same.

17          Therefore, we purchase from Jushi Group and then

18  different products may come from different factories of

19  Jushi Group but they are all factories under Jushi Group

20  but we'll make the payment, because they're from

21  different factories, therefore, we make payments to

22  different factories.

23          Therefore, to answer your question, according to

24  my understanding, is that we only purchase goods from

25  Jushi Group.

Confidential - Subject to Further Confidentiality Review

1   Q.      Okay.  Do we have Exhibit 4-A from yesterday

2   with us?  Okay.  Actually, excuse me.  It's 2-A.  I

3   apologize.

4           MR. McNAMARA:  What is that?

5           MR. STECKLER:  This is the CNBM 2014 annual

6   report.

7           This is the English version.  He has the Chinese

8   version.

9   BY MR. STECKLER:

10  Q.      Can I take a look at your exhibit, please, so I

11  can direct you to the correct page?

12          Thank you, sir.  Look at this page with this

13  heading and this in Chinese.  Thank you.

14          Sir, I'd like you to look at Page 27 of the CNBM

15  2014 annual report, which discusses the glass fiber

16  business.

17          Do you see that?

18  A.      Do you want me to just generally go through

19  this?

20  Q.      No.  I want you to -- do you see where I'm

21  talking about in the document?

22  A.      Page 912?  Is that the page?

23          MS. ZHANG:  Yes, that's correct.

24          THE WITNESS:  This one; right?

25          MR. STECKLER:  Yes, you're on the correct page.

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. STECKLER:

 2   Q.      And under fiberglass business --

 3   A.      Yes.

 4   Q.      Oh, sorry.

 5           Under fiberglass business it is discussing China

 6   Jushi; correct?

 7           MR. McNAMARA:  Object to the form.

 8           THE WITNESS:  Can you give me a minute to take a

 9   look?

10           MR. STECKLER:  Yes.

11   BY MR. STECKLER:

12   Q.      And then I'll re-ask my question.

13   A.      I'm done reading it.

14   Q.      The portion under the glass fiber business

15   section of the annual report discusses China Jushi;

16   correct?

17           MR. McNAMARA:  Object to the form.

18           THE WITNESS:  Yes.

19   BY MR. STECKLER:

20   Q.      Was Jushi Group involved in the production line

21   in Egypt?

22           MR. McNAMARA:  Object to the form.

23           THE WITNESS:  Because I am a person in the

24   United States, I don't know whether it was Jushi Group

25   or China Jushi.
```

Confidential - Subject to Further Confidentiality Review

```
1   BY MR. STECKLER:

2   Q.      Did you see at the annual meeting or learn at

3   the annual meeting that there was an Egypt -- Egyptian

4   production plant?

5           MR. McNAMARA:  Object to the form.

6           THE WITNESS:  Yes.

7   BY MR. STECKLER:

8   Q.      And this was at the Jushi Group meeting;

9   correct?

10          MR. McNAMARA:  Object to form.  Objection to

11  form.

12          THE WITNESS:  Yes.

13  BY MR. STECKLER:

14  Q.      And there is an Egyptian subsidiary of Jushi

15  Group; correct?

16          MR. McNAMARA:  Object to the form.

17          THE WITNESS:  I don't know whether it is a

18  subsidiary of China Jushi or Jushi Group.  I don't know

19  which one is it.

20  BY MR. STECKLER:

21  Q.      When you were at the Jushi Group meeting, they

22  discussed the Egyptian subsidiary, didn't they?

23          MR. McNAMARA:  Object to the form.

24          THE WITNESS:  They talked about Egyptian plant,

25  production and shipment.
```

Confidential - Subject to Further Confidentiality Review

1   BY MR. STECKLER:

2   Q.      And that was at the Jushi Group meeting?

3   A.      Yes.

4   Q.      And so you don't know the involvement of Jushi

5   Group or China Jushi in the project in Egypt.  Is that

6   fair?

7   A.      Yes.

8   Q.      But you're aware that China Jushi -- strike

9   that.

10          But you're aware that a fiberglass production

11  facility was built in Egypt; correct?

12          MR. McNAMARA:  Object to form.

13          THE WITNESS:  Correct.

14  BY MR. STECKLER:

15  Q.      And in this 2014 annual report of CNBM this

16  Egyptian production plant is being discussed; correct?

17          MR. McNAMARA:  Object to the form.

18          THE WITNESS:  Let me take a look to see where is

19  it because I just got this document.

20          Are you talking about this document?

21          MR. STECKLER:  Yes.

22          THE WITNESS:  Oh, let me take a look.

23          THE INTERPRETER:  May the interpreter have the

24  English version of the annual report for reference?

25          MR. STECKLER:  Here.

1        THE INTERPRETER:  The same page?

2        MR. STECKLER:  27.

3        MR. McNAMARA:  So I can't remember exactly what

4  we said yesterday, but we do not agree to the

5  translation, so I'll object to the extent she's going to

6  read from the English version as if it's the proper

7  translation.

8        MR. STECKLER:  I don't remember you objecting to

9  the translation of the business records of CNBM.

10       THE WITNESS:  From the report I just received, I

11  see the sentence, the alkali-free glass fiber -- fibery

12  pool kiln wire drawing production line with an annual

13  capacity of 80,000 tons in Egypt successfully commenced

14  operation.

15       MR. McNAMARA:  I'll object to the translation.

16  BY MR. STECKLER:

17  Q.     And is it your understanding that that is a

18  Jushi project --

19       MR. McNAMARA:  Object to the form.

20  BY MR. STECKLER:

21  Q.     -- whether it's Jushi Group or China Jushi?

22       MR. McNAMARA:  Object to the form.

23       THE WITNESS:  Yes.

24  BY MR. STECKLER:

25  Q.     And the discussion of the Egyptian plant that's

Confidential - Subject to Further Confidentiality Review

 1    either part of China Jushi, Jushi Group or a subsidiary

 2    is being discussed in the 2014 annual report of CNBM

 3    under Management Discussion and Analysis; correct?

 4              MR. McNAMARA:  Object to the form.

 5              THE WITNESS:  My position is too low to attend

 6    this meeting.  I did not attend the meeting; therefore,

 7    what I see reflected in the document is the same as what

 8    the attorney said.

 9              MR. STECKLER:  And that's really all I'm asking,

10    sir.  Okay?

11              (Exhibit 31 was marked for identification.)

12    BY MR. STECKLER:

13    Q.      Let me hand you what we are now going to mark as

14    Exhibit Number 31 to your deposition.  And for the court

15    reporter's convenience let's put Exhibit 2 back, and

16    2-A.

17              Sir, this document that I've handed you as

18    Exhibit 31 is an E-mail from Maybal Wong to Alan

19    Gardiner, Sara Szufu in which Tiffany Chen is copied

20    regarding a budget for 2015.

21              Do you see that?

22    A.      I see that.

23    Q.      Is the E-mail as well as the attachments, which

24    are 1345 to 1345.00020, business records of Jushi USA?

25    A.      One moment.  Let me take a look.

Confidential - Subject to Further Confidentiality Review

1        1345 to where?

2   Q.    All the way to the end, 1345.00020.

3   A.    Okay.  Let me check it immediately.

4        That should be correct, after I generally went

5   through this document.

6   Q.    The E-mails suggest that the budget for 2015 is

7   being sent out to Jushi China.

8        Is that the same as China Jushi?

9   A.    I have testified yesterday my understanding is

10  that Maybal -- Maybal and others only knew there is a

11  Jushi company in China but they do not know whether it

12  is Jushi Group or China Jushi, they only know a Jushi

13  company.

14       However, ever since we became a company 100

15  percent owned by Jushi Group in 2011, we had always been

16  belonging to Jushi Group and I -- and our work is in

17  accordance with the work of Jushi Group.

18  Q.    Is the confusion that your accountant, Maybal,

19  is having a result of the fact that China Jushi and

20  Jushi Group have the same name and some of the same

21  board of directors, such as Mr. Zhang?

22       MR. McNAMARA:  Object to the form.

23       THE WITNESS:  Because they are not yet at a

24  certain level in the company; therefore, nobody had ever

25  explained to them the inside of this matter because they

1   did not need to know.

2   BY MR. STECKLER:

3   Q.      And the names are very similar, too; right?

4           MR. McNAMARA:  Object to the form.

5           THE WITNESS:  Please explain what is "similar."

6           What is his definition of "similar"?

7   BY MR. STECKLER:

8   Q.      China Jushi and Jushi Group both have the word

9   "Jushi" in them; correct?

10  A.      Yes.

11  Q.      And Mr. Zhang works for or serves in a capacity

12  with both China Jushi and Jushi Group, too; right?

13          MR. McNAMARA:  Object to the form.

14          THE WITNESS:  Correct.  But I believe he only

15  receives one salary, not two salaries.

16  BY MR. STECKLER:

17  Q.      Are you sure?

18  A.      Because in China people such as him is not

19  allowed to receive two salaries.

20  Q.      Who doesn't allow that?

21  A.      I don't -- I don't know.

22  Q.      And Mr. Zhang also works for, is it Hengshi or

23  Zhenshi Holdings?

24          MR. McNAMARA:  Object to the form.

25          THE WITNESS:  What's your definition of "work"?

Confidential - Subject to Further Confidentiality Review

1   BY MR. STECKLER:

2   Q.     He serves on the board of directors for that

3   company, is that right, or does he work for the company?

4          MR. McNAMARA:  Object to the form.

5          THE WITNESS:  He's the chairman of the board.

6   BY MR. STECKLER:

7   Q.     So he's the chairman of the board of Zhenshi

8   Holding; correct?

9   A.     Yes.  Yes.

10  Q.     Chairman of the board of Jushi Group?

11         MR. McNAMARA:  Object to the form.

12         THE WITNESS:  He used to, but I don't know

13  whether or not he still is currently.  I wouldn't have

14  know if there had been any changes.  But he used to.

15  BY MR. STECKLER:

16  Q.     And Mr. Zhang is also on the board of directors

17  of China Jushi; correct?

18         MR. McNAMARA:  Object to the form.

19         THE WITNESS:  Yes.

20  BY MR. STECKLER:

21  Q.     And he is your boss.

22  A.     Yes.

23  Q.     Let me hand you Exhibit Number 3 from yesterday.

24         MR. McNAMARA:  Bruce, I don't have mine handy.

25  Can you tell me what that is so we can find it?

1          MR. STECKLER:  I don't have mine handy either.

2   I'm --

3          MR. McNAMARA:  Oh, I found it.

4          MR. STECKLER:  -- sort of flying blind.

5          MR. McNAMARA:  Okay.  We found it.

6   BY MR. STECKLER:

7   Q.      Do you recall this document, sir?

8   A.      Yes, I've read it.

9   Q.      And this is the document in which you were being

10  directed by CNBM to get a legal opinion on Jushi USA's

11  relationship with the parent company.

12         MR. McNAMARA:  Object to the form.

13         THE WITNESS:  I have received this document from

14  Eason of Jushi Group.  I was copied too.

15         MR. STECKLER:  Yes.

16         THE WITNESS:  Therefore, I did not receive this

17  document from the company the attorney had just

18  mentioned.

19  BY MR. STECKLER:

20  Q.      And I'm actually asking you, as the

21  corporate representative of the company, about this

22  document.

23         MR. McNAMARA:  Objection.

24         Is that a question?

25         THE WITNESS:  Me as what?

Confidential - Subject to Further Confidentiality Review

 1   BY MR. STECKLER:

 2   Q.      I'm aware that you were copied on it.  I just

 3   want to clarify.  This was an inquiry -- may I see the

 4   E-mail real quickly?

 5          This was an inquiry in which CNBM was asking

 6   Jushi USA to get a legal opinion to clarify its

 7   relationship with its parent and other related entities.

 8          MR. McNAMARA:  Object to the form.

 9          THE WITNESS:  What I have received is a letter

10   sent to me by Jushi Group.  I have not received a letter

11   from CNBM.

12          As for Eason of Jushi Group, I do not whether --

13   I do not know whether he had or had not received an

14   instruction from Jushi Group.  I did not check on that.

15          I can only in respond to the attorney's

16   question, I have received an inquiry from Jushi Group to

17   prepare something for it and I did the preparation.

18   BY MR. STECKLER:

19   Q.      If the E-mail references CNBM directing that

20   this information be obtained, do you have any reason to

21   disagree with that, as you sit here today on behalf of

22   Jushi USA?

23          MR. McNAMARA:  Object to the form.

24          THE WITNESS:  I agree that the letter I have

25   received is a letter sent to me by Jushi Group's Eason

Confidential - Subject to Further Confidentiality Review

```
 1    but I cannot prove that CNBM directed -- directed it.

 2    Therefore, my answer is I personally have not received

 3    any document from CNBM; therefore, in front of the

 4    attorney it's very hard for me to say that I have

 5    received its instruction.

 6    BY MR. STECKLER:

 7    Q.      Is it fair to say the document speaks for

 8    itself?

 9            MR. McNAMARA:  Object to the form.

10            THE WITNESS:  I don't understand the attorney's

11    question.

12    BY MR. STECKLER:

13    Q.      Is it fair to say that we just have to rely on

14    what document says for our interpretation because you

15    don't know any differently?

16            MR. McNAMARA:  Listen.  It's not saying

17    anything.

18            Object to the form.

19            THE WITNESS:  I cannot agree with your

20    statement.  I can only agree after I have

21    double-checked, but since I have not double-checked, I

22    cannot agree.

23            And I also am not willing to challenge whether

24    the letter sent to me by Jushi Group is authentic or

25    false -- false.
```

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. STECKLER:

 2   Q.      You testified earlier this was a business record

 3   of Jushi USA; correct?

 4           MR. McNAMARA:  Object to the form.

 5           THE WITNESS:  Yes.

 6   BY MR. STECKLER:

 7   Q.      Are you aware of this in any way having been

 8   altered or changed?

 9   A.      As my common sense, I don't believe it had been

10   altered, but as for whether or not it had indeed been

11   altered, you would have to find an investigator to draw

12   that conclusion.  How would I know?

13           But if I were to investigate on everything, I

14   could not finish the work of the day.

15   Q.      Can you think of any reason why someone would

16   put CNBM's name in there other than, in fact, it wasn't

17   the truth?

18           MR. McNAMARA:  Object to the form.

19           THE WITNESS:  I only believe that's what Eason

20   asked our company to do, but it is not what I'm in

21   charge of as for the matters above Eason.

22   BY MR. STECKLER:

23   Q.      Is Ethan a liar?

24           MR. McNAMARA:  It's not -- hold on.

25   It's not Ethan.  It's Eason, E-A-S-O-N.
```

Confidential - Subject to Further Confidentiality Review

```
1          MR. STECKLER:  Apologize.

2          THE INTERPRETER:  Eason.

3          MR. STECKLER:  Thanks, Counsel.

4          THE WITNESS:  I do not know.

5          MR. McNAMARA:  And I'll object to the form of

6    that question.

7          THE WITNESS:  If you even ask his mom, his mom

8    wouldn't have known either.

9    BY MR. STECKLER:

10   Q.     Has he ever been untruthful to you in your

11   business dealings with him?

12         MR. McNAMARA:  Object to the form.

13   BY MR. STECKLER:

14   Q.     As far as you know?

15   A.     Eason usually -- rarely deal with me directly.

16   But from the common sense that I have right now, I

17   cannot decide on whether he would lie or not.  But I

18   rather believe that everyone is honest.

19   Q.     And so, using your common sense, can we assume

20   that Ethan is -- Eason is being honest in this document?

21         MR. McNAMARA:  Object to the form.

22         THE WITNESS:  I cannot assume.  I'm only

23   following what his requirements are.

24   BY MR. STECKLER:

25   Q.     I guess you don't want to assume that because
```

Confidential - Subject to Further Confidentiality Review

1   people from Jushi Group don't usually tell the truth to

2   you in their business dealings.

3          Is that why?

4          MR. McNAMARA:  Object to the form.

5          Bruce, that's out of line.

6          THE WITNESS:  I do everything according to the

7   requirements of Jushi.

8          MR. STECKLER:  I understand that.

9   BY MR. STECKLER:

10  Q.     And my point to you is, you don't have any

11  reason, as we sit here today, to disagree with the

12  statement in the E-mail by Eason; correct?

13         MR. McNAMARA:  Object to the form.

14         THE WITNESS:  I can only agree upon personally

15  examine it.  I cannot take the responsibility of I

16  agreed before I've conducted such an examination.

17  BY MR. STECKLER:

18  Q.     And so what examination are you going to do to

19  find out if this is, in fact, true or not true?  Because

20  maybe all of these documents you've produced are untrue

21  without you doing a full-blown investigation.

22         MR. McNAMARA:  Object to the form.

23         THE WITNESS:  What the attorney said is very

24  correct, according to my way of practice.

25         What I needed to know, whether it is correct or

Confidential - Subject to Further Confidentiality Review

1    not in a document, is whether the document was sent by

2    Eason -- and I believe it was sent by Eason -- and,

3    second of all, what he wanted me to do, then I will do

4    that.

5            As for others that are not within my

6    responsibilities, I would not challenge anyone.  For

7    this part, whether it's true or it's false, since it has

8    nothing to do with my responsibility, therefore, I don't

9    go about to confirm that.

10   BY MR. STECKLER:

11   Q.     So all you know as you sit here today is this is

12   an E-mail that Jushi USA received from Jushi Group;

13   correct?

14   A.     This one?  Yes.

15   Q.     Let me hand you what we're going to mark as

16   Exhibits 32, 33, and 34 to your deposition.

17          (Exhibit 32 was marked for identification.)

18          (Exhibit 33 was marked for identification.)

19          (Exhibit 34 was marked for identification.)

20   BY MR. STECKLER:

21   Q.     Sir, is Exhibit 32 a business record of Jushi

22   USA?

23   A.     Yes.

24   Q.     And it's a three-page document; correct?

25   A.     Yes.

Confidential - Subject to Further Confidentiality Review

1   Q.      What is the purpose -- what's this document

2   about?

3   A.      Let me take a look.

4           I'm done reading it.

5   Q.      What's the purpose of this document?

6   A.      From what I see of the document, first of all,

7   the company nominates Chief H-E, Chief Z-H-A-N-G, and I

8   as the company's directors.

9   Q.      And -- I'm sorry.

10  A.      And, second of all, the meeting minutes.

11  Q.      Let me hand you Exhibit -- look at Exhibit 32

12  and 33.

13          Are those both business records of Jushi USA?

14  A.      Yes.

15  Q.      And 32 indicates Mr. Zhang is a director;

16  correct?

17  A.      I believe so.

18          MR. McNAMARA:  Bruce, just a heads-up.

19          MR. STECKLER:  Yeah, I'm aware.  We're close.

20  BY MR. STECKLER:

21  Q.      And how many members of Jushi USA -- how many

22  directors of Jushi USA are also with Jushi Group?

23          MR. McNAMARA:  Object to the form.

24          THE WITNESS:  One, Chief Zhang.

25

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. STECKLER:

 2   Q.      Now let's look at Exhibit 33.

 3           This is a consent of shareholders at an annual

 4   meeting that is signed or has the signature line for Mr.

 5   Zhang.

 6           Do you see that?

 7   A.      Yes, I see that.

 8   Q.      Why is --

 9   A.      The line is empty.

10   Q.      Yes.  Why would he be signing on behalf of

11   Faithrich Enterprises, Limited, a corporation formed in

12   the British Virgin Islands?

13           MR. McNAMARA:  Object to the form.

14           Bruce, just -- sorry for that.  I'm confused.

15           MR. STECKLER:  Sure.

16           MR. McNAMARA:  Where -- what are you reading

17   from?

18           MR. STECKLER:  The very last page, Page 2, of

19   the annual meeting dated -- it says this meeting is

20   written consent filed in the minute book --

21           MR. McNAMARA:  This is Exhibit 33?

22           MR. STECKLER:  I believe Page 2.

23           MR. McNAMARA:  I have Page 2 of Exhibit 33 is

24   not a signature block.  That's why I'm confused.

25           MR. STECKLER:  Oh.  Did I mess them up?
```

Confidential - Subject to Further Confidentiality Review

1          MR. McNAMARA:  The third page of Exhibit -- the

2   signature block on Exhibit 33 is Page 3.

3          MR. STECKLER:  Okay.  So then go to 32.  I

4   misspoke then.

5          Thank you.

6          MR. McNAMARA:  Exhibit 32?

7          MR. STECKLER:  Yeah.  I think we're on the same

8   page.

9          MR. McNAMARA:  The E-mail?

10          MR. STECKLER:  Yes.  No.

11          MR. McNAMARA:  Exhibit 32 is the E-mail.

12          MR. STECKLER:  Sir, may I have your exhibit,

13   please.

14          THE WITNESS:  (In English)  Which one?

15          MR. STECKLER:  This one (indicating).

16          Thank you.

17          MR. McNAMARA:  No.  That's 34.

18          MR. STECKLER:  34.  I'm sorry.  I misspoke.

19          Thank you, Counsel.

20   BY MR. STECKLER:

21   Q.     On Exhibit 34, why is there a signature line by

22   Mr. Zhang as acting on behalf of Faithrich Enterprises,

23   Limited, a corporation formed in the British Virgin

24   Islands?

25          MR. McNAMARA:  Object to the form.

Confidential - Subject to Further Confidentiality Review

1           MR. STECKLER:  What's the basis?

2           MR. McNAMARA:  Lack of foundation.

3           MR. STECKLER:  It's a Jushi USA document.

4  That's --

5           MR. McNAMARA:  Right.  But you haven't

6  established that he has any idea --

7           MR. STECKLER:  He's signing it.

8           MR. McNAMARA:  Well, it's not signed.  It could

9  be a draft that was later changed.

10           MR. STECKLER:  He said it's a business record.

11  I want to know -- oh, whatever.  I don't need to play

12  this game.

13           Go ahead.

14           THE WITNESS:  How about I go back and check on

15  that?  Because I did not personally handle this matter;

16  therefore, I do not know.

17           MR. STECKLER:  Okay.

18  BY MR. STECKLER:

19  Q.     You're the CEO of Jushi USA Fiberglass; correct?

20           MR. McNAMARA:  Object to the form.

21           THE WITNESS:  Used to.

22           MR. STECKLER:  Okay.

23  BY MR. STECKLER:

24  Q.     You're now the chairman of the board.

25  A.     Yes.

Confidential - Subject to Further Confidentiality Review

1   Q.      And are you involved in annual meetings of Jushi

2   USA Fiberglass Corporation?

3   A.      Yes.

4   Q.      And you would be involved in resolutions and

5   action by written consent of shareholders with respect

6   to Jushi USA Fiberglass?

7   A.      Say again?  I did not hear that clearly.

8           THE INTERPRETER:  The interpreter will repeat.

9           THE WITNESS:  Yes.

10  BY MR. STECKLER:

11  Q.      Are you familiar with the entity Faithrich

12  Enterprises, Limited?

13  A.      I'm not familiar with it.

14  Q.      And you don't know why Mr. Zhang would be

15  acting, purporting to act on behalf of Faithrich

16  Enterprises, Limited, a corporation formed in the

17  British Islands, involving a written consent of

18  shareholders of Jushi USA Fiberglass.

19          MR. McNAMARA:  Object to the form.

20  BY MR. STECKLER:

21  Q.      Is that right?

22          MR. McNAMARA:  Object to the form.

23          THE WITNESS:  I can guess that if his signature

24  is required, maybe he is the owner, but if I were to

25  testify before I check it, I could only say that I would

1   only know after I have checked it.

2   BY MR. STECKLER:

3   Q.      So is it fair to say you have absolutely no idea

4   why Mr. Zhang would be signing on behalf of Faithrich

5   Enterprises, a British Virgin Island company?

6   A.      According to my common knowledge, if he was

7   asked to sign, he must have a legal identity for the

8   signature, but I have not checked the fact yet.

9   Q.      Where is your office in China?

10  A.      I do not have an office in China.

11  Q.      You live half the year in China?

12  A.      Yes.  I live in Shanghai.

13  Q.      Do you use the Jushi Group's office,

14  offices, for business in China?

15  A.      No.

16          MR. McNAMARA:  Bruce, it's 11:33 now so --

17          MR. STECKLER:  One more question, and then I

18  understand that you want to end the depo and I'm going

19  to leave it open, and we can have a quick discussion.

20  BY MR. STECKLER:

21  Q.      Does Alan Gardiner still work for a Jushi Group

22  entity?

23  A.      He neither works for Jushi Group nor in the

24  United States.  He works in Jushi Canada.

25  Q.      So Alan Gardiner still works for a Jushi entity;

 1    correct?

 2           MR. McNAMARA:  Object.  You said there was one

 3    more question.  That's two.

 4           MR. STECKLER:  I wanted to clarify.  Sorry.

 5           THE WITNESS:  Jushi Canada is an overseas

 6    subsidiary of Jushi Group.

 7           MR. STECKLER:  Okay.

 8           Counsel, I understand that you want to blow out

 9    of here and you've got another commitment.

10           I would like to leave the deposition open and,

11    hopefully, you and I can reach some agreements on

12    documents and issues and then decide how to proceed.

13    But we're --

14           MR. McNAMARA:  Right.

15           MR. STECKLER:  We don't want to commit to

16    closing this.

17           MR. McNAMARA:  Right.  And I don't want to

18    commit to leaving it open so I'm not going to -- just

19    for the record not committing to that.

20           MR. STECKLER:  And I'm not suggesting that.  I'm

21    aware of your position.

22           MR. McNAMARA:  Okay.  Thank you.  I've got to

23    run.

24           VIDEO OPERATOR:  With the approval of counsel,

25    this concludes today's deposition.

1          Today's deposition consists of two recorded

2    files.  Today's deposition was Volume II.

3          We are now off the record.

4          (Whereupon the deposition adjourned at 11:34

5    a.m.)

6                    TESTIMONY CLOSED

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Confidential - Subject to Further Confidentiality Review

```
 1   STATE OF CALIFORNIA           )

 2   COUNTY OF LOS ANGELES         )

 3           I, ROSEMARY LOCKLEAR, a Certified Shorthand

 4   Reporter of the State of California, duly authorized to

 5   administer oaths pursuant to Section 2025 of the

 6   California Code of Civil Procedure, do hereby certify

 7   that

 8           HSIN HUA TANG, the witness in the foregoing

 9   deposition, was by me duly sworn to testify the truth,

10   the whole truth and nothing but the truth in the

11   within-entitled cause; that said testimony of said

12   witness was reported by me, a disinterested person, and

13   was thereafter transcribed under my direction into

14   typewriting and is a true and correct transcription of

15   said proceedings.

16           I further certify that I am not of counsel or

17   attorney for either or any of the parties in the

18   foregoing deposition and caption named, nor in any

19   way interested in the outcome of the cause named in

20   said deposition dated the_____ day of

21   _____, 2015.

22

23

24

25   ROSEMARY LOCKLEAR, RPR, CRR, CSR 13969
```

Confidential - Subject to Further Confidentiality Review

```
 1                   INSTRUCTIONS TO WITNESS

 2

 3

 4              Please read your deposition over carefully and

 5    make any necessary corrections.  You should state the

 6    reason in the appropriate space on the Errata Sheet for

 7    any corrections that are made.

 8              After doing so, please sign the Errata Sheet

 9    and date it.

10              You are signing same subject to the changes

11    you have noted on the Errata Sheet, which will be

12    attached to your deposition.

13              It is imperative that you return the original

14    Errata Sheet to the deposing attorney within thirty (30)

15    days of receipt of the deposition transcript by you.  If

16    you fail to do so, the deposition transcript may be

17    deemed to be accurate and may be used in court.

18

19

20

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                    E R R A T A

 2                    - - - - - -

 3

 4    PAGE  LINE  CHANGE

 5    _____  _____  _____

 6    REASON:_____

 7

 8    PAGE  LINE  CHANGE

 9    _____  _____  _____

10    REASON:_____

11

12    PAGE  LINE  CHANGE

13    _____  _____  _____

14    REASON:_____

15

16    PAGE  LINE  CHANGE

17    _____  _____  _____

18    REASON:_____

19

20    PAGE  LINE  CHANGE

21    _____  _____  _____

22    REASON:_____

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                ACKNOWLEDGEMENT OF DEPONENT

 2

 3

 4        I, _____, do hereby certify

 5   that I have read the foregoing pages, and that the same

 6   is a correct transcription of the answers given by me to

 7   the questions therein propounded, except for the

 8   corrections or changes in form or substance, if any,

 9   noted in the attached Errata Sheet.

10

11

12

13   _____

14   HSIN HUA TANG                          DATE

15

16   Subscribed and sworn
     to before me this

17   _____ day of _____, 20_____.

18
     My commission expires:_____

19

20   _____

     Notary Public

21

22

23

24

25
```

1                          LAWYER'S NOTES

2      PAGE LINE

3      _____    _____   _____

4      _____    _____   _____

5      _____    _____   _____

6      _____    _____   _____

7      _____    _____   _____

8      _____    _____   _____

9      _____    _____   _____

10     _____    _____   _____

11     _____    _____   _____

12     _____    _____   _____

13     _____    _____   _____

14     _____    _____   _____

15     _____    _____   _____

16     _____    _____   _____

17     _____    _____   _____

18     _____    _____   _____

19     _____    _____   _____

20     _____    _____   _____

21     _____    _____   _____

22     _____    _____   _____

23     _____    _____   _____

24     _____    _____   _____

25     _____    _____   _____



Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street NW | Washington, DC 20036-3006 | tel 202.663.8000 | fax 202.663.8007

Michael S. McNamara
tel: 202.663.9386
michael.mcnamara@pillsburylaw.com

December 3, 2015

<u>Via Electronic Mail</u>

Kristie Martello
Supervisor of Case Management
Golkow Technologies Inc.
One Liberty Place, Ste 5150
Philadelphia PA 19103
KMartello@golkow.com

Re:   *in re: Chinese-Manufactured Drywall Products Liability Litigation*,
Deposition of Hsin Hua Tang (Jushi USA Fiberglass Co., Ltd.) –
Nov. 17-18, 2015

Dear Ms. Martello:

I write to provide the designated redactions for the transcript and exhibits to the above referenced deposition of Hsin Hua Tang of Jushi USA Fiberglass Co., Ltd. in the Chinese Drywall MDL. Pursuant to Judge Fallon's Pretrial Order No. 16, we designate the following exhibits and deposition lines to be redacted from the transcript as either Confidential or Highly Confidential information.

<u>Exhibits</u>

| Exhibit | Designation |
|---|---|
| 3 | Confidential |
| 4 | Confidential |
| 4-A | Confidential |
| 6 | Highly Confidential |
| 7 | Highly Confidential |
| 8 | Highly Confidential |
| 9 | Confidential |
| 9-A | Confidential |
| 10 | Highly Confidential |
| 10-A | Highly Confidential |

| Exhibit | Designation |
|---|---|
| 17 | Highly Confidential |
| 17-A | Highly Confidential |
| 18 | Confidential |
| 19 | Confidential |
| 20 | Highly Confidential |
| 20-A | Highly Confidential |
| 21 | Confidential |
| 21-A | Confidential |
| 22 | Highly Confidential |
| 23 | Confidential |

Kristie Martello
December 3, 2015
Page 2

| Exhibit | Designation |
|---|---|
| 11 | Confidential |
| 11-A | Confidential |
| 12 | Highly Confidential |
| 12-A | Highly Confidential |
| 13 | Highly Confidential |
| 13-A | Highly Confidential |
| 14 | Highly Confidential |
| 14-A | Highly Confidential |
| 15 | Highly Confidential |
| 15-A | Highly Confidential |

| Exhibit | Designation |
|---|---|
| 24 | Confidential |
| 25 | Highly Confidential |
| 27 | Highly Confidential |
| 28 | Highly Confidential |
| 29 | Highly Confidential |
| 30 | Highly Confidential |
| 31 | Highly Confidential |
| 32 | Confidential |
| 33 | Confidential |
| 34 | Confidential |

**Transcript Lines**

Transcript lines are designated by indicating pages and lines as follows:

| Page | Lines | Designation |
|---|---|---|
| 5 | 4-10, 19-20 | Confidential |
| 5 | 13-18, 21-25 | Highly Confidential |
| 6 | 9-10 | Confidential |
| 6 | 1-8, 11-25 | Highly Confidential |
| 7 | 11-16 | Confidential |
| 7 | 7-10, 17-21 | Highly Confidential |
| 56 | 13-20 | Confidential |
| 60 | 20-22 | Confidential |
| 61 | 1-3 | Confidential |
| 62 | 4-6, 12-13, 15-16, 23-25 | Confidential |
| 63 | 8-9 | Confidential |
| 64 | 14-15 | Confidential |
| 65 | 18-21 | Confidential |
| 66 | 24-25 | Confidential |
| 67 | 1, 4-6, 13-15 | Confidential |
| 72 | 2-6, 24-25 | Confidential |
| 73 | 21-22 | Confidential |
| 74 | 25 | Confidential |
| 75 | 1, 4-6, 8, 10-13, 16-17, 19-20 | Confidential |

Kristie Martello
December 3, 2015
Page 3

| Page | Lines | Designation |
|------|-------|-------------|
| 76 | 2, 15-18 | Confidential |
| 77 | 2-4, 7-10, 14-16, 18-19, 22-25 | Confidential |
| 78 | 1, 5-6, 9-11, 13-14, 17-20, 24-25 | Confidential |
| 79 | 3-5, 19-21 | Confidential |
| 80 | 10-11 | Confidential |
| 81 | 2-3 | Confidential |
| 83 | 10-11, 15-18 | Confidential |
| 84 | 12-14, 19-20 | Confidential |
| 85 | 4-7, 24-25 | Confidential |
| 86 | 5-7, 12-13, 15-18 | Confidential |
| 87 | 2, 6-7 | Confidential |
| 89 | 22-25 | Confidential |
| 90 | 3-6, 8, 12-13, 16, 18-21, 23-24 | Highly Confidential |
| 91 | 5, 7-10, 13-14 | Highly Confidential |
| 95 | 21-25 | Highly Confidential |
| 96 | 1-7, 12 | Highly Confidential |
| 97 | 25 | Highly Confidential |
| 98 | 1, 19-21 | Highly Confidential |
| 99 | 8-9, 14-15 | Highly Confidential |
| 100 | 12-13 | Highly Confidential |
| 101 | 4-9, 14-15, 19-20 | Highly Confidential |
| 102 | 2-3,24-25 | Confidential |
| 103 | 1, 14-17, 19-20 | Confidential |
| 103 | 21-24 | Highly Confidential |
| 104 | 1-6, 15-17 | Highly Confidential |
| 106 | 5-6, 8-10, 22-23 | Highly Confidential |
| 107 | 3-6, 10-11, 16-18, 22 | Highly Confidential |
| 108 | 5-9, 13-14, 19-22 | Confidential |
| 109 | 6-13, 17-25 | Confidential |
| 110 | 1, 3-4, 6-7, 14-15, 20-21 | Confidential |
| 111 | 13-24 | Confidential |
| 112 | 20-25 | Confidential |
| 113 | 1-8, 13-15 | Confidential |
| 114 | 6-7, 10-11 | Confidential |
| 115 | 2-4, 7-8, 13-17, 23-24 | Confidential |
| 116 | 24-25 | Highly Confidential |

Kristie Martello
December 3, 2015
Page 4

| Page | Lines | Designation |
|---|---|---|
| 117 | 6 | Highly Confidential |
| 118 | 5-8, 15-25 | Confidential |
| 119 | 1-10 | Confidential |
| 121 | 10-12, 14-15 | Confidential |
| 125 | 4-5 | Confidential |
| 129 | 25 | Confidential |
| 130 | 1 | Confidential |
| 138 | 21-22 | Confidential |
| 141 | 2-3, 5, 7-14. 16-18, 22 | Confidential |
| 145 | 3, 6, 21-24 | Highly Confidential |
| 149 | 5-7 | Highly Confidential |
| 149 | 24-25 | Confidential |
| 150 | 1-2 | Confidential |
| 150 | 18-25 | Highly Confidential |
| 151 | 1-2, 16-18 | Highly Confidential |
| 152 | 3-5 | Highly Confidential |
| 155 | 5-6, 13-14, 17-18, 23 | Highly Confidential |
| 156 | 2-13 | Highly Confidential |
| 157 | 2-5, 9-11, 25 | Highly Confidential |
| 158 | 1 | Highly Confidential |
| 160 | 25 | Highly Confidential |
| 161 | 1, 6-26 | Highly Confidential |
| 162 | 1-3, 24-25 | Highly Confidential |
| 163 | 1-2, 4-17, 20-25 | Highly Confidential |
| 164 | 1-4, 16-17, 22-25 | Highly Confidential |
| 165 | 6-8, 14-17, 19-21, 23-25 | Highly Confidential |
| 166 | 1, 4-7, 10-12 | Highly Confidential |
| 167 | 16-18 | Confidential |
| 168 | 22-25 | Highly Confidential |
| 169 | 1-4 | Highly Confidential |
| 170 | 18-20 | Highly Confidential |
| 172 | 11-13, 20-23 | Confidential |
| 173 | 17-20 | Highly Confidential |
| 179 | 18-20 | Highly Confidential |
| 180 | 16-18 | Highly Confidential |
| 182 | 13-14, 20-22 | Confidential |

Kristie Martello
December 3, 2015
Page 5

| Page | Lines | Designation |
|------|-------|-------------|
| 185 | 14-25 | Highly Confidential |
| 186 | 1-6, 13-25 | Highly Confidential |
| 187 | 2-10, 12-15 | Highly Confidential |
| 188 | 10-25 | Highly Confidential |
| 189 | 1-8 | Highly Confidential |
| 199 | 14-17, 20-25 | Confidential |
| 199 | 18-19 | Highly Confidential |
| 200 | 4-7, 13-22 | Highly Confidential |
| 201 | 4-10 | Highly Confidential |
| 201 | 11-22 | Confidential |
| 217 | 11-17, 20-21 | Highly Confidential |
| 218 | 12-14, 20-21, 23-25 | Highly Confidential |
| 219 | 1-15, 17-25 | Highly Confidential |
| 220 | 1-5, 7-13, 17-25 | Highly Confidential |
| 221 | 1-12, 16-17, 24-25 | Highly Confidential |
| 222 | 1-11, 16-19, 22-25 | Highly Confidential |
| 223 | 1-12, 14-25 | Highly Confidential |
| 224 | 1-9, 11-19, 21-25 | Highly Confidential |
| 225 | 1-8 | Highly Confidential |
| 227 | 12-17 | Confidential |
| 228 | 11-12, 14-25 | Confidential |
| 229 | 1-9, 25 | Confidential |
| 230 | 1 | Confidential |
| 233 | 17-20, 22-25 | Highly Confidential |
| 234 | 1-13, 15-24 | Highly Confidential |
| 235 | 1-10, 20-24 | Highly Confidential |
| 247 | 16-19 | Highly Confidential |
| 250 | 21-23 | Highly Confidential |
| 251 | 1-5, 9-10, 21-23, 25 | Highly Confidential |
| 252 | 1-11, 15-16, 20-21, 23-25 | Highly Confidential |
| 253 | 2-4, 6-14 | Highly Confidential |
| 254 | 12-13 | Highly Confidential |
| 255 | 8-10, 15-16 | Confidential |
| 258 | 12-25 | Highly Confidential |
| 264 | 17-20 | Highly Confidential |
| 265 | 6-8 | Highly Confidential |

Kristie Martello
December 3, 2015
Page 6

| Page | Lines | Designation |
|------|-------|-------------|
| 268 | 9-11, 13-18 | Highly Confidential |
| 269 | 5-7, 9-22, 24-25 | Highly Confidential |
| 270 | 1-5 | Highly Confidential |
| 275 | 6-10, 15-16 | Confidential |
| 276 | 3-5, 19-20 | Confidential |
| 277 | 21-24 | Confidential |

Sincerely,

Michael S. McNamara

```
 1              IN THE UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA
 2

                             - - -
 3

 4   IN RE:  CHINESE-MANUFACTURED :   MDL NO. 2047

     DRYWALL PRODUCTS LIABILITY   :   SECTION L
 5   LITIGATION                    :

                                   :   JUDGE FALLON
 6   THIS DOCUMENT APPLIES TO ALL :

     CASES                         :   MAG. JUDGE WILKINSON
 7

                             - - -
 8

                         VOLUME II
 9

                       CONFIDENTIAL -
10        SUBJECT TO FURTHER CONFIDENTIALITY REVIEW

11              Wednesday, November 18, 2015

12                           - - -

13

14        Continued videotaped 30(b)(6) deposition of

15   JUSHI USA FIBERGLASS CO., LTD., through its designee,

16   HSIN HUA TANG, held at PILLSBURY WINTHROP SHAW PITTMAN,

17   L.L.P., 725 South Figueroa Street, Suite 2800, Los

18   Angeles, California, commencing at approximately 8:06

19   a.m., before Rosemary Locklear, a Registered

20   Professional Reporter, Certified Realtime Reporter and

21   California CSR (#13969).

22

23                           - - -

24              GOLKOW TECHNOLOGIES, INC.

          877.370.3377 ph | 971.591.5672 fax
25                    deps@golkow.com
```

```
 1   APPEARANCES:

 2

 3        LEVIN, FISHBEIN, SEDRAN & BERMAN
          BY:  MATTHEW C. GAUGHAN, ESQUIRE
 4        Mgaughan@lfsblaw.com
          510 Walnut Street, Suite 500
 5        Philadelphia, Pennsylvania 19106
          (215) 592-1500
 6        Appearing on behalf of the Plaintiffs (Plaintiffs'
          Lead Counsel, MDL 2047)

 7

 8
          STECKLER, L.L.P.
 9        BY:  BRUCE W. STECKLER, ESQUIRE
          Bruce@StecklerLaw.com
10        12720 Hillcrest Road, Suite 1045
          Dallas, Texas 75230
11        (972) 387-4040
          Appearing on behalf of the Plaintiffs' Steering
12        Committee

13

14        DENTONS US, L.L.P.
          BY:  MATTHEW T. NICKEL, ESQUIRE
15        matt.nickel@dentons.com
          2000 McKinney Avenue, Suite 1900
16        Dallas, Texas 75201-1858
          (214) 259-0900
17        Appearing on behalf of the BNBM Defendants

18

19        ORRICK, HERRINGTON & SUTCLIFFE, L.L.P.
          BY:  ANDREW K. DAVIDSON, ESQUIRE
20        adavidson@orrick.com
          The Orrick Building
21        405 Howard Street
          San Francisco, California 94105-2669
22        (415) 773-5700
          Appearing on behalf of the CNBM Defendants

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1   APPEARANCES:  (Continued)

 2

 3          ALSTON & BIRD, L.L.P.
            BY:  MACKENZIE (MACK) HELLER (KAHNKE), ESQUIRE
 4          (via telephone)
            mackenzie.heller@alston.com
 5          1201 West Peachtree Street, N.E.
            Atlanta, Georgia 30309-3424
 6          (404) 881-4828
            Appearing on behalf of the Defendants Taishan
 7          Gypsum Company

 8

 9          PILLSBURY WINTHROP SHAW PITTMAN, L.L.P.
            BY:  MICHAEL McNAMARA, ESQUIRE
10          michael.mcnamara@pillsburylaw.com
            BY:  QIAN HUANG, ESQUIRE
11          qian.huang@pillsburylaw.com
            1200 Seventeenth Street, N.W.
12          Washington, DC 20036-3006
            (202) 663-8000
13          Appearing on behalf of the Jushi entities and the
            Witness

14

15
                               - - -
16

17
     ALSO PRESENT:
18

19
            JIM LOPEZ, Video Operator
20
            SUNNY WANG, Interpreter
21
            EMILY ZHANG, Herman, Herman & Katz, L.L.C.
22

23
                               - - -
24

25
```

```
 1                    I N D E X

 2

 3   WITNESS                                    PAGE

 4

 5   HSIN HUA TANG

 6

 7            By Mr. Steckler               203

 8

 9                    - - -

10

11              EXHIBIT INDEX

12   NUMBER                                   MARKED

13

14   21        1-page copy of document entitled   206
               "Translation of JushiUSA-0005950"

15

     21-A      1-page copy of document entitled   206

16             "Excel Spreadsheet
               (JUSHIUSA-0005950) Produced

17             Natively," plus attachment

18   22        1-page copy of document entitled   218
               "2014 Renewal Pricing and Loan

19             Condition with Cathay Bank,"
               J-USA-0000281

20

     23        1-page copy of E-mail dated        227

21             11/2/14 to Maybal Wong from
               Howard Yan, J-USA-0001711

22

     24        2-page copy of E-mail dated        230

23             11/12/14 to Tiffany Chen from
               Maybal Wong, plus attachments,

24             J-USA-0001869 - J-USA-0001871

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                    EXHIBIT INDEX (Continued)
 2     NUMBER                                        MARKED
 3
 4     25          6-page copy of document dated      233
                   4/21/14 entitled "Jushi Group
 5                 Co., Ltd. Overseas Subsidiaries
                   Financing Requirements,
 6                 Application Form,"
                   JushiUSA-0007142.0001 -
 7                 JushiUSA-0007142.0006
 8     26          173-page copy of document dated    236
                   3/15 entitled "Beijing New
 9                 Building Materials Public Limited
                   Company Annual Report 2014,"
10                 BNBMPLC0003164 - BNBMPLC0003336
11     26-A        219-page copy of document in       236
                   Chinese, BNBMPLC0002945 -
12                 BNBMPLC0003163
13     27          6-page copy of document entitled   247
                   "Key notes made by Chairman Zhang
14                 at Jushi HQ in the Management
                   Meeting during Jushi Annual
15                 Conference 2014," J-USA-0001580 -
                   J-USA-0001580.00007
16
       28          2-page copy of document dated      256
17                 12/31/14 entitled "Income
                   Statement For The 12 Periods
18                 Ended 12/31/2014,"
                   J-USA-0002461 -
19                 J-USA-0002461.00002
20     29          2-page copy of document dated      257
                   12/31/14 entitled "Balance Sheet
21                 As of 12/31/2014,"
                   J-USA-0002462 -
22                 J-USA-0002462.00002
23
24
25
```

Confidential - Subject to Further Confidentiality Review

```
 1                    EXHIBIT INDEX (Continued)
 2     NUMBER                                        MARKED
 3
 4     30           17-page copy of document dated    258
                    12/31/14 entitled "Jushi USA
 5                  Fiberglass Co., Ltd., Independent
                    Auditor's Report and Financial
 6                  Statements," J-USA-0002460 -
                    J-USA-0002460.00017
 7
       31           1-page copy of E-mail dated       264
 8                  9/18/14 to Alan Gardiner and Sara
                    Szutu from Maybal Wong, plus
 9                  attachments, J-USA-0001344 -
                    J-USA-0001345.00020
10
       32           3-page copy of E-mail dated       274
11                  4/1/15 to Ellie Shen from Erica
                    Lin, J-USA-0002943 -
12                  J-USA-0002943.00003
13     33           4-page copy of document entitled  274
                    "Annual Meeting By Action By
14                  Unanimous Written Consent of
                    Board of Directors of Jushi USA
15                  Fiberglass Co., Ltd., A
                    California Corporation,"
16                  J-USA-0002944 -
                    J-USA-0002944.00004
17
       34           2-page copy of document entitled  274
18                  "Annual Meeting By Action By
                    Written Consent of Shareholders
19                  of Jushi USA Fiberglass Co.,
                    Ltd., A California Corporation,"
20                  J-USA-0002945 -
                    J-USA-0002945.00002
21
22
       (Exhibits retained by the court reporter and attached to
23     transcript.)
24
25                          - - -
```

Confidential - Subject to Further Confidentiality Review

1              VIDEO OPERATOR:  We are now on the record.

2              My name is Jim Lopez.  I'm a videographer for

3    Golkow Technologies.  Today's date is November 18th,

4    2015, and the time is approximately 8:06 a.m.

5              This video deposition is being held in Los

6    Angeles, California, in the matter of In Re:

7    Chinese-Manufactured Drywall Products Liability

8    Litigation, MDL Number 2047, for the United States

9    District Court, Eastern District of Louisiana.

10             This is Volume II of the deponent Hsin Hua Tang.

11   Excuse me.

12             Counsel and all present, will you please

13   identify yourselves.

14             MR. STECKLER:  Bruce Steckler for the PSC.

15             MR. GAUGHAN:  Matthew Gaughan, also for the PSC.

16             MS. ZHANG:  Emily Zhang for PSC.

17             MR. NICKEL:  Matthew Nickel for BNBM PLC and

18   BNBM Group.

19             MR. DAVIDSON:  Andrew Davidson for CNBM Group

20   and CNBM Company.

21             MS. HUANG:  Qian Huang for the China Jushi,

22   Jushi Group, and Jushi USA.

23             MR. McNAMARA:  Mike McNamara for the same three

24   parties.

25             VIDEO OPERATOR:  Counsel will be noted on the

1    stenographic record.

2           The court reporter is Rosemary Locklear, and she

3    will now swear in the interpreter, who then will swear

4    in the witness.

5           MR. McNAMARA:  Do we need to re-swear them?

6    Can't they just remain under oath from yesterday?

7           MR. STECKLER:  I usually do that, yes.  I'm fine

8    with that.

9           Does anyone have an objection to that?

10          MR. McNAMARA:  No.

11          MR. STECKLER:  Okay.  Good.

12          SUNNY WANG, interpreter, previously sworn.

13          HSIN HUA TANG, having been previously duly

14   sworn, was examined and testified as follows:

15                   EXAMINATION (Continued)

16   BY MR. STECKLER:  (Through the interpreter)

17   Q.     Good morning, Mr. Tang.

18   A.     Good morning.

19   Q.     I want to remind you today we're going to use

20   the same definitions that we used yesterday.

21          Do you understand that?

22   A.     I know that.

23   Q.     Okay.  The business record that we talk about

24   today will be a record made at or near the time it is

25   dated by someone you know and the record is kept in the

Confidential - Subject to Further Confidentiality Review

1    ordinary course of business or practice of Jushi USA and

2    is not altered.

3            Do you understand that?

4    A.      I know that.

5    Q.      And the controlling shareholder is going to be a

6    person or entity that controls more than 30 percent of

7    the shares of a company.

8            Do you understand that?

9            MR. McNAMARA:  Object to the form.

10           THE WITNESS:  I do not understand.

11   BY MR. STECKLER:

12   Q.      You don't understand the term "controlling

13   shareholder" now?

14   A.      Before today, I did not understand what was the

15   percentage.  From my prior understanding, I thought

16   controlling shareholder would be someone who controls

17   more than half of the shares.  But yesterday the

18   attorney showed a document, I don't know where the

19   document came from, but it did mention a 30 percent;

20   therefore, I have not checked whether 30 percent is like

21   that.  And after I have confirmed that, I'll let you

22   know on whether I would change my opinion or not.

23   Q.      For purposes of your deposition today, when we

24   refer to controlling shareholder, I'm going to be

25   referring to a person or entity that controls more than

Confidential - Subject to Further Confidentiality Review

1   30 percent of the shares of a company.

2          Can we agree to that term being used today?

3          MR. McNAMARA:  Object to the form.

4          If it's the truth, he can agree to it, but if

5   it's not, he can't.

6          MR. STECKLER:  I'm not asking him to agree to

7   the truth.

8   BY MR. STECKLER:

9   Q.     I'm saying that's the definition we're going to

10  use today, and so do you understand that when I ask you

11  about controlling shareholder?

12         MR. McNAMARA:  Same objection.

13         THE WITNESS:  If, according to the United States

14  law, the controlling shareholder would be somebody who

15  holds 30 percent of shares, then I would agree.

16  BY MR. STECKLER:

17  Q.     I'm not asking you about --

18         MR. McNAMARA:  He wasn't finished, Bruce.

19  BY MR. STECKLER:

20  Q.     -- the laws of the United States.

21         MR. McNAMARA:  Bruce, he wasn't finished.  Let

22  him finish.

23         You can continue, Mr. Tang.

24         THE WITNESS:  Under that condition, I would

25  agree that attorney will temporarily use that term for

Confidential - Subject to Further Confidentiality Review

1    the purpose of today's meeting.

2    BY MR. STECKLER:

3    Q.      Sir, I'm not asking you for a legal opinion.

4            Do you understand that?

5            You're not a corporate law --

6    A.      I know that.

7    Q.      -- expert, are you?

8    A.      Correct.

9    Q.      I'm simply asking you to assume that for

10   purposes of this deposition when I refer to the term

11   "controlling shareholder," we're going to be referring

12   to a person or entity that controls more than 30 percent

13   of the shares of a company.

14           Do you understand that?

15           MR. McNAMARA:  Object to form.

16           THE WITNESS:  I understand.

17           MR. STECKLER:  Okay.

18   BY MR. STECKLER:

19   Q.      Let me hand you what we're going to mark as

20   Exhibit Number 21 to your deposition.

21           (Exhibit 21 was marked for identification.)

22           (Exhibit 21-A was marked for identification.)

23   BY MR. STECKLER:

24   Q.      Do you know if this is a business record of

25   Jushi USA?

Confidential - Subject to Further Confidentiality Review

1          And for the record, you're looking at 21-A,

2    which is the Chinese version.

3    A.     I have not seen this document in our Jushi USA

4    company.

5    Q.     What documents did you review for production in

6    this case responsive to the Subpoena that were business

7    records of Jushi USA?

8          MR. McNAMARA:  Object to the form.

9          THE WITNESS:  When I knew I was going to come to

10   testify, I started to recall the documents that I have

11   seen on my mind.

12         I have not seen this document.

13   BY MR. STECKLER:

14   Q.     Do you know whether all of the documents that

15   your attorney provided to us responsive to the Subpoena

16   that was issued by the plaintiffs in this case were

17   business records of Jushi USA?

18         MR. McNAMARA:  Object to the form.

19         THE WITNESS:  The obtaining of document was

20   through somebody that I do not know who had designated

21   to come to get from my computer and from Tiffany's

22   computer; therefore, when I look at this document that

23   is in front of me, I have not seen this document.

24   BY MR. STECKLER:

25   Q.     Who was the person that was designated to get

Confidential - Subject to Further Confidentiality Review

1    information from your computer?

2    A.      For this question, I do not remember the name;

3    however, I don't know if it is okay to entrust the

4    attorney to answer your question.

5           MR. McNAMARA:  Bruce, we had a vendor, an

6    E-discovery vendor, come and forensically harvest

7    documents --

8           MR. STECKLER:  Fair enough.

9           MR. McNAMARA:  -- which I told you we were

10   doing.  I told you that it was going to be Mr. Tang and

11   Miss Chen.  And we used the search terms that you gave

12   us and applied them to the documents -- to the data that

13   was harvested from their documents.

14          MR. STECKLER:  So can I ask you --

15          MR. McNAMARA:  Sure.

16          MR. STECKLER:  -- is it fair to say that the

17   documents that we received from you all came from Jushi

18   USA computers that was gathered from this process that

19   you talked about?

20          MR. McNAMARA:  I think so.  But there have been

21   some quirks in the documents that you've shown him

22   where -- where I'm -- I know that there were some

23   documents that were inadvertently produced that were

24   outside of the Bates range that we then fixed -- I'm

25   sorry -- outside of the date range that we then fixed

1    and I am -- so -- and we also -- yeah, so the short

2    answer is, Bruce, is I don't actually know.  I'll have

3    to go back and verify that from the ones that you've

4    shown him.

5         MR. STECKLER:  Well, what I'd like to verify is

6    that the documents that were produced were business

7    records of Jushi USA.

8         MR. McNAMARA:  Yeah.  I don't know if we're ever

9    going to be able to make a blanket statement on that

10   because you're talking about thousands of documents, and

11   it's very easily conceivable that there were documents

12   that weren't business records that happened to be on

13   their computers or in their PST files that were captured

14   by the search terms.  I don't think we'd do that on a

15   blanket basis.

16        MR. STECKLER:  I understand that.  And that's

17   the issue with this deposition that I see having down

18   the road is the necessity to establish that each of the

19   documents that we have are business records of Jushi

20   USA, which may be more time-consuming.

21        If you want to reach an agreement that we can

22   somehow show you documents and you'd be willing to

23   stipulate they're business records, that would be easier

24   than going through records with him.

25        Would you be willing to do that?

Confidential - Subject to Further Confidentiality Review

```
 1            MR. McNAMARA:  I'll certainly consider it.  I

 2   mean, if you want to send documents our way and ask us

 3   whether they're business records, that's reasonable if

 4   you're talking about a handful of documents.  If you're

 5   talking about, you know, 3,000 or 10,000 documents, that

 6   becomes more complicated.

 7            MR. STECKLER:  Well, that's more than you

 8   produced.  But I would anticipate, you know, a universe

 9   of 30 to 50 documents, at the most, that we may need to

10   authenticate or to prove up as business records.

11            And if you're amenable to that agreement, it

12   would save a lot more time than us at the end of the day

13   having to, you know, try to go back and prove it up.

14            And we can work it out, hopefully, and, if

15   not --

16            MR. McNAMARA:  Sure.

17            MR. STECKLER:  -- you know, we can seek some

18   relief from the Court.  But I'd love to reach an

19   agreement with you, if possible.

20            MR. McNAMARA:  Sure.  We'll certainly consider

21   that.  I'll take a look at what you send, and if they're

22   business records, you know, we'll talk.  But I wouldn't

23   see a reason to --

24            MR. STECKLER:  And you also represent two other

25   entities; right?
```

Confidential - Subject to Further Confidentiality Review

```
 1            MR. McNAMARA:  Yes.

 2            MR. STECKLER:  China Jushi and Jushi Group.

 3  So --

 4            MR. McNAMARA:  Yes.

 5            MR. STECKLER:  -- we may -- maybe that's the rub

 6  here with some of these documents, that Mr. Tang, Tang

 7  excuse me, does not understand so --

 8            MR. McNAMARA:  It certainly could be.

 9            And a question for you, because they haven't

10  been, neither of those entities has been subpoenaed, and

11  so one of my questions for you, which we can talk about

12  off the record, is, do you plan to do that and do you

13  plan to take depositions of those?

14            MR. STECKLER:  We can discuss what the necessity

15  of that -- the necessity of that based probably upon a

16  lot of the prove-up of records and documents.

17            MR. McNAMARA:  Okay.

18            MR. STECKLER:  All right?

19            Thank you for your agreement, Counsel.

20  BY MR. STECKLER:

21  Q.    Sir, I apologize for the side conversation, but,

22  hopefully, it will save us some time.

23            Do you know who controls Hengshi Fiberglass USA?

24            THE INTERPRETER:  This is the interpreter

25  speaking.
```

Confidential - Subject to Further Confidentiality Review

```
1              Did counsel say H-E-N-G-S-H-I?

2              MR. STECKLER:  Yes, ma'am.

3              THE WITNESS:  Zhenshi Holding, Z-H-E-N-S-H-I,

4      Holding.

5      BY MR. STECKLER:

6      Q.      And are you familiar with the company Hengshi

7      Fiberglass USA?

8      A.      I know that company.

9      Q.      And is Tiffany Chen involved in that company?

10     A.      Yes.

11     Q.      What is her position in Hengshi Fiberglass USA?

12             MR. McNAMARA:  Object to the form.

13             THE WITNESS:  She does not hold a position.

14     BY MR. STECKLER:

15     Q.      Who -- who is part of the management or board of

16     directors of Hengshi Fiberglass USA?

17             MR. McNAMARA:  Object to --

18     BY MR. STECKLER:

19     Q.      If you know.

20             MR. McNAMARA:  Object to the form.

21             THE WITNESS:  The CEO of Hengshi USA is Lewis

22     Stern, L-E-W-I-S S-T-E-R-N, but I'm not sure about the

23     correct spelling.

24     BY MR. STECKLER:

25     Q.      And where --
```

Confidential - Subject to Further Confidentiality Review

1   A.      For the members of the board of directors, I

2   would need to go back and check the document to know

3   that.  I would need to check with Zhenshi,

4   Z-H-E-N-S-H-I, Holding.

5   Q.      Where is Hengshi Fiberglass USA located in the

6   United States?

7           MR. McNAMARA:  Object to the form.

8           THE WITNESS:  In City of Irwindale.

9           (In English)  Irwindale -- Irwindale.

10          (Through the interpreter)  I'll need to check

11   the detailed address to let you know.

12   BY MR. STECKLER:

13   Q.      Your company, Jushi USA, is also in Irwindale,

14   California; correct?

15   A.      Correct.  But Hengshi USA and Jushi USA are

16   located in two different buildings with two different

17   addresses.

18   Q.      Does Zhenshi Holding or Zhenshi Group, Hengshi

19   Fiber have offices in the United States, that you're

20   aware of?

21          MR. McNAMARA:  Object to the form.

22          THE WITNESS:  Please repeat.  I'll have to hear

23   it again.

24          THE INTERPRETER:  The interpreter will repeat.

25          THE WITNESS:  Yes.

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. STECKLER:

 2   Q.      Where -- strike that.

 3           Do you know where in the United States Zhenshi

 4   Holding and/or Zhenshi Group, Hengshi Fiberglass have

 5   offices in the United States?

 6           MR. McNAMARA:  Object to the form.

 7           THE WITNESS:  Like I said earlier, it -- it is

 8   in Irwindale, but I do not recall the name of the road.

 9   I can check and let you know.

10   BY MR. STECKLER:

11   Q.      Does Jushi USA work with Hengshi Fiberglass USA?

12   A.      No.

13   Q.      Does Jushi USA and Hengshi Fiberglass USA have

14   any similar employees, managers, supervisors, or board

15   of directors?

16           THE INTERPRETER:  This is the interpreter

17   speaking.

18           When counsel says "supervisors," did counsel

19   mean supervisor for the board of directors or supervisor

20   as a management title?

21           MR. STECKLER:  Supervisor as a management title,

22   board of directors separately.

23           THE INTERPRETER:  Thank you.

24           And there will be no change on the

25   interpretation.
```

1          THE WITNESS:  Hengshi has its own company, its

2   own office, its own employees, and Jushi has its own.

3   These two companies are completely separated.  Others

4   are completely different.

5          And just now you asked about directors; right?

6          MR. STECKLER:  Yes.

7          THE WITNESS:  As of the directors, I'll have to

8   go back and check documents to find out exactly who are

9   the directors of Zhenshi USA and Hengshi USA, then I can

10   answer your question.  I cannot answer your question

11   right now.

12   BY MR. STECKLER:

13   Q.     Did you know that Mr. Zhang or Zhang, Z-H-A-N-G,

14   is on the board of directors of Zhenshi Holding?

15   A.     Yes.

16   Q.     Any other similar board of directors on Zhenshi

17   Holding and China Jushi that you're aware of other than

18   Mr. Zhang?

19   A.     Like I just said, I would need to check to find

20   out the details of the board of director of Zhenshi.

21          Upon checking that information, I will be able

22   to answer his question but, at present, it is impossible

23   for me exactly how many people there are.

24   Q.     Well, you just recalled now, based upon my

25   question, that Mr. Zhang was on the board of directors

Confidential - Subject to Further Confidentiality Review

1   of Zhenshi Holding.

2          Does that refresh your memory at all?

3   A.     Yes, Mr. Zhang is in the board of directors.  He

4   is the boss.

5   Q.     All right.  And he's also your boss.

6   A.     Yeah.  Because I am Jushi USA's employee.

7   Q.     And he works with China Jushi and is the

8   supervisor of China Jushi and Jushi Group; correct?

9          THE INTERPRETER:  May the interpreter inquire,

10  the word "supervisor" here meaning supervisor as the

11  title of management or supervisor as supervisor of board

12  of directors?

13         MR. STECKLER:  Supervisor of work as in what he

14  does, he supervises.

15         THE INTERPRETER:  Thank you.

16         THE WITNESS:  Mr. Zhang is the CEO of Jushi

17  Company and he is the boss of Zhenshi Group, but as of

18  what is his position in it, as far as I know, is the

19  chairman of Zhenshi Group.

20  BY MR. STECKLER:

21  Q.     Does Jushi USA have bank accounts in the United

22  States?

23  A.     Yes.

24  Q.     Does Jushi Group have bank accounts in the

25  United States?

Confidential - Subject to Further Confidentiality Review

1        MR. McNAMARA:  Object to form.

2        THE WITNESS:  Not as far as I know, but I do not

3   know whether they have it or not over there, but we do

4   not have it here.

5   BY MR. STECKLER:

6   Q.    Does China Jushi have bank accounts in the

7   United States?

8        MR. McNAMARA:  Object to form.

9        THE WITNESS:  I do not know.

10  BY MR. STECKLER:

11  Q.    Does Jushi Group serve as a guarantor for loans

12  by Jushi USA?

13  A.    They used to, but it was either last year or the

14  year before last year, which I do not recall, when they

15  withdrew from being a guarantor.

16  Q.    So is it your testimony that at some point last

17  year, in 2014, Jushi Group was a guarantor of Jushi USA?

18       MR. McNAMARA:  Object to the form.

19       That's not what he said, Bruce.

20       THE WITNESS:  The exact time, I'm not sure

21  whether it was last year or the year before last year.

22  BY MR. STECKLER:

23  Q.    I'm going to hand you --

24       MR. McNAMARA:  Matt, do you mind if we -- sorry.

25  That's getting a little --

Confidential - Subject to Further Confidentiality Review

1          MR. GAUGHAN:  Sorry.

2          MR. McNAMARA:  Sorry, Bruce.  Go ahead.

3    BY MR. STECKLER:

4    Q.     Let me hand you what we're going to mark as

5    Exhibit Number 22 to your deposition, which is in

6    English.

7          (Exhibit 22 was marked for identification.)

8    BY MR. STECKLER:

9    Q.     Do you know if this is a business record of

10   Jushi USA?

11   A.     Yes.

12   Q.     And this is entitled "2014 Renewal Pricing and

13   Loan Condition with Cathay Bank."  Is that your

14   understanding?

15         And I know it's in English, but you do read a

16   little bit of English; correct?

17         MR. McNAMARA:  Object.  Object to the form.

18         THE WITNESS:  Yes.

19   BY MR. STECKLER:

20   Q.     And on this document it indicates that Jushi

21   Group Company in 2014 was a guarantor; correct?

22         MR. McNAMARA:  Object to the form.

23         THE WITNESS:  Yeah.  Okay.  They used to be, but

24   recently, which I do not recall the details, whether it

25   was last year or the year before last year or this year,

Confidential - Subject to Further Confidentiality Review

1   we told the bank that because Jushi Group is either

2   unwilling or cannot to guarantee for their overseas

3   subsidiary companies, therefore, accepted the

4   requirement of the headquarters, which is the

5   requirement of Jushi Group requiring us withdraw the

6   guarantee from Jushi Group with Cathay Bank.  Otherwise,

7   we would be prepared to change bank.  Therefore, Cathay

8   Bank agreed with us to withdraw Jushi Group's guarantee.

9           Above is what I know.

10  BY MR. STECKLER:

11  Q.      Based upon the document which is in front of

12  you, Exhibit Number 22, it appears that Jushi Group

13  ceased being a guarantor for Jushi USA probably after

14  2014.

15          Does that seem right to you now?

16          MR. McNAMARA:  Object to the form.

17          THE WITNESS:  From what I remember, it is most

18  probably that it happened in 2014, but I can check and

19  let you know exactly what day was that.

20  BY MR. STECKLER:

21  Q.      So is this document incorrect?

22  A.      Before we had withdrew the guarantee of Jushi

23  Group from Cathay Bank, that was completely correct but

24  afterwards, because it had been withdrawn, therefore,

25  I'll have to go back and check the time.

1    Q.      Okay.  And I understand you don't remember the

2    exact date or month; correct?

3    A.      Correct.

4    Q.      But based upon this document, in 2014 Jushi

5    Group was a guarantor for Jushi USA at some point.

6            MR. McNAMARA:  Object to the form.

7            THE WITNESS:  That's possible.

8    BY MR. STECKLER:

9    Q.      Did China Jushi ever act as a guarantor of Jushi

10   USA?

11   A.      I don't think so because, according to the rules

12   of public listing company in China, such company cannot

13   be a guarantor.

14   Q.      Where does Jushi USA have bank accounts?

15   A.      Repeat.

16           THE INTERPRETER:  The interpreter will repeat.

17           THE WITNESS:  As far as I can remember right

18   now, I'd say that, number one, the most important bank

19   is Cathay Bank, and we have another bank account which

20   is responsible for the payrolls payment.

21   BY MR. STECKLER:

22   Q.      Where is that?

23   A.      I don't quite recall.  It might be BOA or

24   someone else but I don't have a clear recollection on

25   that.  But I can check and let you know.

Confidential - Subject to Further Confidentiality Review

1   Q.      Any other bank accounts that you can think of?

2   A.      I can't think of anything else right now.

3   Q.      Does Jushi Group wire or send money to Jushi USA

4   for its operating costs?

5   A.      No.

6   Q.      You have never received a loan from Jushi Group?

7   A.      No.

8   Q.      And does Jushi USA send money to Jushi Group?

9   A.      Payment for goods, which is account payable.

10  Q.      Does Jushi Group -- I don't know the term in

11  Chinese -- float Jushi USA with product that it sends to

12  the United States for retail sale?

13          MR. McNAMARA:  Object to the form.

14          THE INTERPRETER:  This is the interpreter

15  speaking.

16          May the interpreter have the definition of

17  "float" here?

18  BY MR. STECKLER:

19  Q.      In other words, does Jushi US --

20          MR. STECKLER:  Let me just rephrase the

21  question.

22          THE INTERPRETER:  Thank you.

23  BY MR. STECKLER:

24  Q.      Does Jushi Group send products to Jushi USA

25  without requiring an immediate payment until the

1   products are sold?

2   A.      No.

3   Q.      Jushi USA is required to pay Jushi Group

4   immediately for all product shipped and delivered to

5   Jushi USA; is that right?

6   A.      Our payment term is two months, 60 days.

7   Q.      After delivery?

8   A.      There are two circumstances.  First circumstance

9   is to deliver goods directly from mainland China to the

10  customers.

11  Q.      So --

12          THE INTERPRETER:  Just give the interpreter a

13  moment.  My pen -- my pen is out of ink.

14          MR. STECKLER:  Oh.  Here.

15          THE INTERPRETER:  Thank you.

16          THE WITNESS:  Another circumstance would be that

17  the goods would be delivered to our warehouses first and

18  the goods will be delivered to nearby locations

19  according to the order.

20          THE INTERPRETER:  May the interpreter clarify

21  with deponent?

22          THE WITNESS:  And some goods would be kept in

23  the warehouse as security inventories.

24          As far as I know, the payment term is 60 days,

25  but I'm not quite sure whether there are different

1    calculations between the two.

2    BY MR. STECKLER:

3    Q.      And these three circumstances that you've talked

4    about, where Jushi Group ships to customers in the

5    United States, Jushi Group ships to Jushi USA, and where

6    Jushi Group ships to Jushi USA and then Jushi sends it

7    to customers, was that occurring in 2014 and 2015?

8    A.      Yes.

9    Q.      Before product was shipped to the United States,

10   would you have secured an order first or would you

11   maintain inventory in your warehouse?

12          MR. McNAMARA:  Object to the form.

13          THE WITNESS:  Okay.  Jushi Group would receive a

14   purchasing order from Jushi USA every month around the

15   20th to be -- the purchasing orders to be shipped the

16   following month.

17   BY MR. STECKLER:

18   Q.      And on some occasions Jushi Group would ship

19   directly to those customers; correct?

20   A.      There are two types of occasions in the order.

21   Number one, according to the direction of Jushi USA, the

22   goods will be shipped from Shanghai port to Jushi

23   USA-designated -- designated locations through Jushi

24   USA-designated shipping freight company.

25          The second circumstance would be that, according

Confidential - Subject to Further Confidentiality Review

1    to the direction of Jushi USA, the goods would be sent

2    to every warehouse of Jushi USA according to the

3    purchasing order issued for the following month in

4    around the 20th of each month by Jushi USA to --

5    through -- excuse me -- through Jushi USA-designated

6    shipping freight company.

7    Q.      And the shipments made from China were made by

8    Jushi Group.  They're the Chinese company sending the

9    products to the United States; correct?

10           MR. McNAMARA:  Object to the form.

11           THE WITNESS:  The transaction type that we have

12   with Jushi Group is F.O.B.; therefore, when the two

13   company handed over the goods in Shanghai and once the

14   goods are on board of the ship, the goods will belong to

15   Jushi USA.  In case any issues arise, at that moment the

16   responsibility would lay in Jushi USA.

17   BY MR. STECKLER:

18   Q.      And the goods on the ship are from Jushi Group;

19   correct?

20           MR. McNAMARA:  Object to --

21           THE WITNESS:  Yes.

22   BY MR. STECKLER:

23   Q.      And Jushi USA has distribution centers in

24   Columbia, South Carolina; Elkhart, Indiana; and

25   Irwindale, California?  Is that right?

Confidential - Subject to Further Confidentiality Review

1    A.      Yes, there are three.

2    Q.      And at one point you had a warehouse or

3    distribution center in Miami; correct?

4    A.      Yes.  In the very beginning, we did not have the

5    one in South Carolina but we had one in Miami.  But

6    because Miami is too far away and the shipping cost is

7    too expensive, later, the one in Miami is stopped and

8    transferred to South Carolina.

9    Q.      I'd like you to go back and look to the

10   organizational chart, please.

11           This chart indicates BNBM, paren, Group has an

12   interest in CNBM.

13           Do you see that?

14           MR. DAVIDSON:  Objection to form.

15           THE WITNESS:  According to the organization

16   chart provided to me by the attorney, I see China

17   National Building Material Group and then there is a

18   line leading to Beijing New Building Material Group and

19   in between there is a 65 percent.

20   BY MR. STECKLER:

21   Q.      Are you familiar with BNBM Group at all?

22   A.      What company is BNBM?

23   Q.      So you're not familiar with that company.

24   A.      I'm not familiar.

25   Q.      Is Zhenshi Holding Company a State-owned

Confidential - Subject to Further Confidentiality Review

 1   enterprise?

 2   A.      As far as I know, it is a 100 percent private

 3   company.

 4   Q.      Do you know or are you familiar with Beijing New

 5   Building Materials?

 6   A.      What you had just said, are you referring to

 7   BNBM as Beijing New Building Materials, the second one?

 8   Q.      No.  I'm asking if you're familiar with the

 9   company Beijing New Building Materials.

10   A.      I do not know.

11   Q.      You are familiar with CNBM, though, aren't you?

12   A.      Please redefine "familiar."

13   Q.      You know who the company is, don't you?

14           THE INTERPRETER:  Interpreter would like to

15   clarify with deponent.

16           THE WITNESS:  I know this company just in

17   general.  By "the company" I am referring to the third

18   company here, which is China National Building Material

19   Company.

20   BY MR. STECKLER:

21   Q.      Which, based upon this chart, appears to be the

22   controlling shareholder of China Fiberglass; correct?

23           MR. McNAMARA:  Object to form.

24           THE WITNESS:  According to the chart given to me

25   by the attorney, that is correct.

Confidential - Subject to Further Confidentiality Review

1   BY MR. STECKLER:

2   Q.      Let me hand you what I'm going to mark as

3   Exhibit Number 23.

4           We did not get a translation of this document

5   nor did we make one but I --

6           (Exhibit 23 was marked for identification.)

7   BY MR. STECKLER:

8   Q.      Who is Howard Yan?

9   A.      I don't know this person; however, I think he is

10  an employee of Jushi Group.

11  Q.      Is this a business record of Jushi USA?

12  A.      Yes.

13  Q.      In English, this E-mail says, this is an

14  instruction from management and CNBM, as this C.P.A.

15  firm is seeing some -- seeking some business overseas.

16          I have some questions.  If Howard Yan or Yan is

17  with Jushi Group, who is management?

18          MR. McNAMARA:  Object to the form.

19          THE WITNESS:  Okay.  Mr. Ding -- the possible

20  spelling is D-I-N-G -- is the CFO of Jushi Group.  I

21  believe Mr. Ding is their actual management.

22  BY MR. STECKLER:

23  Q.      Why would Tiffany and Maybal be getting

24  instruction from CNBM?

25          MR. DAVIDSON:  Object to the form.

```
 1            MR. McNAMARA:  Object to the form.

 2            THE WITNESS:  I just said Mr. Yan works at Jushi

 3    Group.  We received Mr. Yan's letter, not a letter from

 4    CNBM.  We have never received instructions from CNBM.

 5    BY MR. STECKLER:

 6    Q.    So this E-mail is incorrect.

 7            MR. McNAMARA:  Object to form.

 8            THE WITNESS:  This E-mail is correct, but from

 9    Jushi Group.

10    BY MR. STECKLER:

11    Q.    So the fact that it says "instruction from

12    management and CNBM" is wrong.

13            MR. McNAMARA:  Object to the form.

14            THE WITNESS:  I did not approach anyone to

15    double-check whether this letter is true or false;

16    however, we have not changed the C.P.A. or the auditor

17    that we use each year for us in U.S.A.

18    BY MR. STECKLER:

19    Q.    So -- I'm sorry.

20    A.    Our C.P.A. had worked for us in our accounting

21    for about 13 or 15 years.  We have never changed our

22    C.P.A.  It is not that we would make such a change

23    whoever asks us --

24    Q.    So maybe you're --

25    A.    -- to make --
```

Confidential - Subject to Further Confidentiality Review

1   Q.      I'm sorry.

2   A.      -- the change.

3           THE INTERPRETER:  The interpreter corrects

4   herself:  Whoever instruct us to make the change,

5   rather.

6   BY MR. STECKLER:

7   Q.      So, sir, maybe you're wrong, based on this

8   document.  Maybe CNBM has given some instructions to

9   Jushi USA and you're just unaware of it.

10          MR. McNAMARA:  Object to the form.

11          THE WITNESS:  Yes, from the documents that I

12  have seen, I have never received any instructions from

13  CNBM.  But we reject any request of making changes from

14  Jushi Group from -- or from someone else.  We did not

15  make the change.

16  BY MR. STECKLER:

17  Q.      I'm not talking about your accountant, sir.  I'm

18  saying, maybe CNBM has given Jushi USA instructions and

19  you're just unaware of it as you sit here today.

20          MR. McNAMARA:  Object to the form.

21          THE WITNESS:  Maybe I'm unaware of.  I cannot

22  answer something that I'm unaware of.

23          MR. STECKLER:  Fair enough.

24  BY MR. STECKLER:

25  Q.      And this document indicates that CNBM was giving

1    some instructions to Jushi USA; correct?

2          MR. McNAMARA:  Object to the form.  Asked and

3    answered.

4          THE WITNESS:  The letter was sent by Mr. Yan.  I

5    did not ask Mr. Yan whether it is true or false

6    regarding the instructions of CNBM.

7    BY MR. STECKLER:

8    Q.    Let me hand you what we're going to mark as

9    Exhibit Number 24 to your deposition.

10         (Exhibit 24 was marked for identification.)

11   BY MR. STECKLER:

12   Q.    And just so we're clear, it's Bates stamped 1869

13   and it's also got an attachment 1872 and it's a total of

14   four pages.

15         MR. McNAMARA:  So you want me to collate them so

16   it --

17         MR. GAUGHAN:  Yeah.  If you don't mind.

18         MR. McNAMARA:  All right.  I don't want to mess

19   things up and get it in the wrong order.  So this --

20         MR. STECKLER:  You're all on the record.  Do

21   you --

22         MR. McNAMARA:  Well --

23   BY MR. STECKLER:

24   Q.    Sir --

25         MR. McNAMARA:  Before --

1          MR. STECKLER:  Do you not have everything?

2          MR. McNAMARA:  Bruce, can we get copies?

3          MS. HUANG:  Can we get this sorted out first?

4          MR. McNAMARA:  Correct.  We do not have

5     everything.

6          MR. STECKLER:  Stop.  Please.  Let's go take a

7     break.

8          VIDEO OPERATOR:  Off the record?

9          MR. STECKLER:  I'm sorry.  You do have

10    everything.  It's an E-mail --

11         VIDEO OPERATOR:  Counsel, off the record?

12         THE COURT REPORTER:  Hold on.  Hold on.

13         MR. STECKLER:  Oh, I'm sorry.  I thought we were

14    going --

15         VIDEO OPERATOR:  Off the record.

16         The time is approximately 9:17 a.m.

17         (Recess, 9:17-9:28 a.m.)

18         VIDEO OPERATOR:  With the approval of counsel,

19    back on the record.

20         The time is approximately 9:28 p.m. (sic).

21    BY MR. STECKLER:

22    Q.     Mr. Tang, are these business records of Jushi

23    USA?

24    A.     Yes.

25    Q.     And does Jushi USA have to submit its 2014

1    financials to Jushi Group for purposes of reporting, or

2    China Jushi or China Fiberglass?

3            MR. McNAMARA:  Object to the form.

4            THE WITNESS:  We gave the prepared report, in

5    accordance with the requirement of Jushi Group, to their

6    designated recipient, which is the finance department of

7    Jushi Group Company, Limited.

8    BY MR. STECKLER:

9    Q.      And do you do that annually?

10   A.      According to the requirement of the accounting

11   department of Jushi Group, we do that every year.

12   Q.      And do you know if this is required because of

13   China Fiberglass and the Chinese Securities Regulatory

14   Commission?

15           MR. McNAMARA:  Object to the form.

16           THE WITNESS:  I did not check on this issue.  I

17   was simply following up in accordance with the

18   requirement of the financial department of Jushi Group.

19   BY MR. STECKLER:

20   Q.      So you just do what you're told and you don't

21   know all of the reasons why they're requesting this

22   information.  Is that fair?

23           MR. McNAMARA:  Object to form.

24           THE WITNESS:  I can't tell you whether I'm aware

25   or unaware of this matter because I have not

Confidential - Subject to Further Confidentiality Review

1   double-checked the matter in detail.

2   BY MR. STECKLER:

3   Q.      Let me hand you what we're going to mark as

4   Exhibit Number 25 to your deposition.

5           (Exhibit 25 was marked for identification.)

6           MR. STECKLER:  I want to make sure someone

7   doesn't have my highlighted copy, although I don't see

8   it.

9   BY MR. STECKLER:

10  Q.      Is this a business record, sir, of Jushi USA

11  Fiberglass?

12  A.      Yes.

13  Q.      And who signed this document as general manager?

14  A.      I think she is the CFO, Tiffany, Tiffany Chen.

15  Q.      And what is the date of this document, sir?

16  A.      April the 21st, 2014.

17  Q.      Are you familiar with a loan of $20 million?

18  A.      I know some of the information.

19  Q.      And what is this $20 million loan for that is

20  being guaranteed by Jushi Group?

21          MR. McNAMARA:  Object to the form.

22          THE WITNESS:  Because we have the document now,

23  I recall what the attorney had asked earlier in

24  regarding to the guarantee made by Jushi Group.

25          It was at this time when the 20 million loan was

Confidential - Subject to Further Confidentiality Review

1  being renewed that Jushi Group as a guarantor, a

2  guarantor, was removed.  And this 20 million loan is

3  used as a credit line for the cash flow of doing

4  business.

5  BY MR. STECKLER:

6  Q.     How long have you had a $20 million line of

7  credit with Cathay Bank?

8  A.     I believe approximately three or four years.

9  But what we have actually used is not as much as 20

10  million but, rather, around 13 million.

11  Q.     And those lines of credit and monies used were

12  guaranteed by Jushi Group during that period of time;

13  correct?

14        MR. McNAMARA:  Object to the form.

15        THE WITNESS:  As I had said to Mr. Attorney just

16  now, we removed Jushi Group as a guarantor at this

17  moment when we were renewing our credit line.

18  BY MR. STECKLER:

19  Q.     So who is now the guarantor of your line of

20  credit, sir?

21  A.     They did not ask for it anymore.  That request

22  was removed.

23  Q.     Why did Jushi Group decide not to be a guarantor

24  of your loan in the United States in 2014?

25        MR. McNAMARA:  Object to the form.

Confidential - Subject to Further Confidentiality Review

```
 1          THE WITNESS:  According to the instruction given

 2    to us by Jushi Group, that Jushi Group will no longer

 3    guarantee all of its overseas companies.

 4    BY MR. STECKLER:

 5    Q.     Did you ask why?

 6    A.     No.

 7    Q.     Why not?

 8    A.     We usually would not ask Mr. Zhang why when we

 9    receive instructions from him because he has a bad

10    temper.

11    Q.     Were you aware that CNBM had meetings

12    instructing its subsidiaries to remove and close all

13    bank accounts in the United States?

14          MR. DAVIDSON:  Objection to form.

15          MR. McNAMARA:  Object to form.

16    BY MR. STECKLER:

17    Q.     Were you aware --

18    A.     I do not know.

19    Q.     Okay.  I'm sorry.

20          Were you aware of meetings at CNBM or with China

21    Jushi in which it was discussed that they had to be

22    careful with entities in the United States doing

23    business in the United States and bank accounts in the

24    United States that occurred in 2014?

25          MR. DAVIDSON:  Objection to form.
```

Confidential - Subject to Further Confidentiality Review

```
 1              THE WITNESS:  I do not know that.

 2    BY MR. STECKLER:

 3    Q.      Did Mr. Zhang ever instruct you in 2014 or in

 4    2015 to stop doing business in the United States?

 5    A.      No.

 6    Q.      Let me hand you what we're going to mark as

 7    Exhibit Number 26 and 26-A to your deposition.

 8              (Exhibit 26 was marked for identification.)

 9              (Exhibit 26-A was marked for identification.)

10    BY MR. STECKLER:

11    Q.      It's previously been marked as an exhibit in

12    this case.  It's the 2014 annual report of Beijing New

13    Building Materials, Public Limited Company.

14              MR. NICKEL:  Counsel, at the outset of this line

15    of questions, I just want to raise for the record that

16    at the deposition where this was offered there was a

17    26-R that was also offered which contained red lines

18    that BNBM PLC provided to PSC in advance of the

19    deposition that the PSC signed off on that were used at

20    that deposition in lieu of some of these translations in

21    Exhibit 26.

22    BY MR. STECKLER:

23    Q.      Please turn to Page 36, sir.

24              I apologize.  Please start at Page 35 and go to

25    the fourth column over.
```

1         Do you see that?

2         MR. McNAMARA:  Which chart?  There are two.

3         MR. STECKLER:  Hold on for a moment.

4         So your counsel can get up to speed, Page 33 for

5   you in English, Counsel.

6         MR. McNAMARA:  Oh.

7         MR. STECKLER:  It's the fourth column --

8         MR. McNAMARA:  I see.

9         MR. STECKLER:  -- second box down.  He's going

10  to --

11  BY MR. STECKLER:

12  Q.    I'm going to ask you, sir, on your page in

13  Chinese to please read the fourth column, second box on

14  Page 35 and 36.

15        MR. McNAMARA:  Object to form.

16        THE WITNESS:  All of them?

17        MR. STECKLER:  To yourself.  Just -- yes.  I

18  apologize.

19        THE WITNESS:  All of them all the way onto here

20  (indicating)?

21        MS. ZHANG:  Until the end?

22        MR. STECKLER:  Yes.

23        MS. ZHANG:  Yeah.

24  BY MR. STECKLER:

25  Q.    Just read that to yourself, sir.

```
 1              If you'd like to take some time, we can go off

 2    the record, if you need more time.

 3    A.      Two minutes.

 4              MR. STECKLER:  Okay.  Let's take a quick

 5    two-minute break and let you read it.

 6              VIDEO OPERATOR:  Off the record.

 7              The time is approximately 9:45 a.m.

 8              (Discussion off the record.)

 9              VIDEO OPERATOR:  Back on the record.

10              The time is approximately 9:47 a.m.

11    BY MR. STECKLER:

12    Q.      Sir, did you have an opportunity to read in

13    Chinese from the BNB 2014 annual report about the

14    lawsuit in the United States District Court for the

15    Eastern District of Louisiana?

16    A.      Yes, I've just received a document given to me

17    by the attorney instructing me to read the second box in

18    Page 35 and the entire Page 36.  I'm done reading it.

19    Q.      And you also had an opportunity to read the

20    Minute Entry Order that was attached to your Notice from

21    the Court about the Contempt Order of Taishan; is that

22    correct?

23    A.      Yes, a few days ago my attorney handed over to

24    me this document and I read it.  But that document is in

25    English.
```

1   Q.      He gave you a translation, didn't he?

2   A.      There is no translation.

3   Q.      Sir --

4           MR. McNAMARA:  No.  I think he thinks the

5   translation is this.  I did give him a translation of

6   the --

7           MR. STECKLER:  Okay.

8           THE WITNESS:  Oh, I'm referring to this.  I --

9           MR. STECKLER:  We understand.

10          THE WITNESS:  -- don't have a detailed

11  translation for that.

12          MR. STECKLER:  Yes.

13  BY MR. STECKLER:

14  Q.      You read it in the original Chinese; right?

15  Okay.

16  A.      I do not recall, but I'll check it.  Okay?

17  Q.      No.  No.  No.  No.  Excuse me.  Excuse me.

18  Please.

19          You just read the original Chinese version of

20  the 2014 BNBM report on Page 35 and 36 in the column

21  that I directed you at; correct?

22          MR. McNAMARA:  Object to the form.

23          THE WITNESS:  Yes.  Yes.

24  BY MR. STECKLER:

25  Q.      And this column indicates that the Court told

1   Taishan and its related parties and subsidiaries to stop

2   doing business in the U.S. until they come back to

3   court.

4          Is that your understanding?

5          MR. McNAMARA:  Object to the form.

6          THE WITNESS:  Yes.

7   BY MR. STECKLER:

8   Q.     Do you see where it says kwon liang?

9          MS. ZHANG:  Guan liang.

10         MR. STECKLER:  Guan liang.

11         MR. McNAMARA:  I don't on the English version.

12         MS. HUANG:  Guan liang.

13         MR. McNAMARA:  Is that in that same box that

14  you --

15         THE WITNESS:  Yes.

16  BY MR. STECKLER:

17  Q.     And what does that mean?

18         MR. McNAMARA:  Object to the form.

19         THE WITNESS:  There are many different types of

20  interpretations for guan lian, G-U-A-N L-I-A-N.

21         In Chinese, guan lian means there is a

22  relationship and you are to connect the relationships.

23         MR. STECKLER:  Okay.

24  BY MR. STECKLER:

25  Q.     And if we now look on Page 43 --

Confidential - Subject to Further Confidentiality Review

1          MR. McNAMARA:  What page is that on the English

2     version?

3          MR. STECKLER:  Page 39.

4     BY MR. STECKLER:

5     Q.     If you look at -- if you look at the bottom

6     box -- I'm sorry.  I -- strike that.

7          If you look at the top box on your page,

8     under -- under Number 2, the first column, that's also

9     the word "guan liang"; right?

10          MR. McNAMARA:  Object to the form.

11          THE WITNESS:  Yes.

12     BY MR. STECKLER:

13     Q.     And underneath the term "guan liang," what

14     company is listed below it?

15          MR. McNAMARA:  Object to the form.

16          THE WITNESS:  From the document that was handed

17     over to me, in Chinese version I see, first of all,

18     China Jushi Company, Limited, and the second column on

19     the top, it says affiliate relationship.

20          MR. McNAMARA:  Object to the form and

21     translation.

22     BY MR. STECKLER:

23     Q.     And guan liang fang --

24          THE INTERPRETER:  May the interpreter know what

25     page it is in English?

Confidential - Subject to Further Confidentiality Review

1          MS. ZHANG:  39.

2          MR. STECKLER:  39, at the bottom under Number 2.

3          MR. NICKEL:  Just again for the record, we would

4    object to the interpreter reading anything from the

5    English document that is not from the redlined portions

6    of the exhibit that was initially offered at the BNBM

7    PLC --

8          MR. STECKLER:  I think she's using it for

9    translation purposes, Counsel, not for actually reading

10   it.

11         MR. NICKEL:  Same objection.

12         THE WITNESS:  On Item Number 2, affiliates

13   relationship, it's -- it explains that this company,

14   parent company, this company, parent company's, joint

15   share companies.

16         MR. McNAMARA:  Object to the translation.

17   BY MR. STECKLER:

18   Q.    So, sir, guan liang fang means related party.

19         Is that your understanding?

20         MR. DAVIDSON:  Objection.  Form.

21         MS. ZHANG:  It means -- it means fang in the

22   translation.  Instead of guan liang, it means related

23   parties.  Guan liang fang means related party.

24         MR. STECKLER:  That was my question.  I'm sorry.

25         MS. HUANG:  So if guan liang fang is related

1    party, then guan liang should be translated as related.

2          MS. ZHANG:  Yeah.

3          MR. STECKLER:  Or as --

4          MS. HUANG:  Rather than affiliate.

5          MR. STECKLER:  Well, no.  That's what -- that's

6    the translation.  Don't put words in the mouth --

7          MS. HUANG:  I agree with the attorney, actually.

8          MR. STECKLER:  No, I'm not asking what you agree

9    with, I'm asking you, the testimony he gave is the

10   testimony he gave.

11         MR. McNAMARA:  And we objected.

12         MS. HUANG:  He read it in Chinese.

13         MR. McNAMARA:  Yeah.  He gave his testimony in

14   Chinese.

15         MR. STECKLER:  You don't like the answer, that

16   may be fine --

17         MR. McNAMARA:  No, we don't like --

18         MR. STECKLER:  -- but that's the translator's

19   decision, not yours.

20         MR. McNAMARA:  Yeah.  The answer is fine, it's

21   the interpretation of the translation that we --

22         MR. STECKLER:  Right.  You don't like the way

23   she translated the term.  It's the exact same term in

24   both.

25         THE INTERPRETER:  This is the interpreter

1   speaking.

2          The interpreter would just like to make sure,

3   should the interpreter read from the English

4   translation --

5          MR. STECKLER:  No.  Let me --

6          THE INTERPRETER:  -- or should the interpreter

7   interpret from her own understanding?

8          MR. STECKLER:  Let me strike that and start

9   over, if that's okay, Counsel.  I mean -- sorry -- not

10  Counsel.

11  BY MR. STECKLER:

12  Q.     Under Number 2 --

13         MR. NICKEL:  Bruce, before we do that, can we

14  clarify that for the interpreter?  Because I think my

15  objection prior to this was the interpreter should not

16  be reading from the English translation.

17         MR. STECKLER:  No.  No.  And I'm -- and that's

18  why I'm asking her not to do that.

19         THE INTERPRETER:  That's why the interpreter did

20  not read it.

21         MR. NICKEL:  And as to her question, I think the

22  answer is no, she should not read it.

23         MR. STECKLER:  And I'm not asking her to do

24  that.

25         MR. NICKEL:  Okay.  Thank you.

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. STECKLER:

 2   Q.      Under Roman numeral -- under Number 2, the word

 3   is "guan liang fang," which means related party.

 4           Is that your understanding, sir?

 5           MR. McNAMARA:  Object to the form.

 6           THE COURT REPORTER:  I'm sorry.

 7           Who was that who objected?

 8           MR. McNAMARA:  Me.

 9           THE WITNESS:  From what I see on this document,

10   my understanding, that it is the shareholding companies

11   of this company and parent company.

12   BY MR. STECKLER:

13   Q.      And this document indicates that China Jushi

14   Company is related to BNBM.

15           Is that your understanding?

16           MR. McNAMARA:  Object to the form.

17           THE WITNESS:  If the affiliate's relationship is

18   defined and clearly is stated as this company and

19   parent's companies shareholding companies, then I would

20   agree.

21   BY MR. STECKLER:

22   Q.      And this document indicates that China Jushi

23   Company is an affiliate; correct?

24           MR. McNAMARA:  Object to the form.

25           MR. NICKEL:  Objection to form.
```

Confidential - Subject to Further Confidentiality Review

```
 1          THE WITNESS:  I have said it earlier, and there

 2   is an explanation on the second point, which it says,

 3   under the second point's explanation, I believe what the

 4   attorney has said is correct.

 5   BY MR. STECKLER:

 6   Q.      And if China Jushi is an affiliate of BNBM,

 7   isn't it your understanding that China Jushi and its

 8   subsidiaries should not be doing business in the United

 9   States?

10          MR. McNAMARA:  Object to the form.

11          MR. NICKEL:  Objection.  Form.

12          THE WITNESS:  Ask again.  What is his question?

13          THE INTERPRETER:  The interpreter will repeat.

14          THE WITNESS:  First of all, I have only learned

15   recently the Notice from the Court and, second of all --

16   second of all, from the report the attorney gave to me

17   and the definition given in the report, to compare with

18   the Notice I had recently received from the Court, what

19   the attorney has said is reasonable.  That is my

20   personal understanding.

21   BY MR. STECKLER:

22   Q.      Now, let me ask you --

23          MR. STECKLER:  Can we take a quick break?  I'm

24   sorry.

25          VIDEO OPERATOR:  With the approval of counsel,
```

1   going off the record.

2          The time is approximately 10:03 a.m.

3          (Recess, 10:03-10:14 a.m.)

4          VIDEO OPERATOR:  With the approval of counsel,

5   back on the record.

6          The time is approximately 10:14 a.m.

7          This marks Recording File Number 2.

8   BY MR. STECKLER:

9   Q.     Sir, let me hand you what I'm going to mark as

10  Exhibit Number 27 to your deposition.

11         (Exhibit 27 was marked for identification.)

12  BY MR. STECKLER:

13  Q.     Is this a business record of Jushi USA?

14  A.     I'm not sure whether it is a business record of

15  Jushi USA or not, but when I learned about it, I see

16  that is a speech given by Mr. Zhang to the overseas

17  subsidiaries.  I participated in the meeting but I do

18  not know whether they had sent the document to the

19  U.S.A.

20  Q.     Have you seen this document before?

21  A.     I don't think I've read it.  But the content of

22  his speech is in Chinese, and I had participated in that

23  meeting.

24  Q.     Who else attends this meeting?

25  A.     The people in charge of Jushi Group's overseas

1    companies.

2    Q.      Okay.  Were you the only one from the United

3    States that attended this meeting in China?

4    A.      Three.

5    Q.      Who else attended this meeting?

6    A.      2014.  Well, this might be in 2015.  Is it 2014

7    or 2015?  It is 2015.  Because participants are

8    different for these two different years.

9    Q.      And this report is summarizing occurrences over

10   the year 2014; is that right?

11   A.      There were three participants in both 2014 and

12   2015 but one of the three was different.

13          If this is for 2014, then the participants in

14   2014 were Alan, Sara, and I.  One of the person was

15   changed for the year 2015.

16   Q.      And was that person Alan?

17   A.      The person changed is the CEO of this year by

18   the name of W-U space Q-I-N-G.

19   Q.      Does China Jushi participate at the annual

20   conference?

21   A.      China Jushi?

22   Q.      Yes.

23   A.      This is a meeting of Jushi Group and its

24   overseas companies; therefore, all our participants are

25   from the overseas.

Confidential - Subject to Further Confidentiality Review

```
 1          There were ten companies or over ten companies,

 2   including those who sit on the stage are the leaders of

 3   Jushi Group.

 4          Sometimes, for example, Mr. Zhang, if he's

 5   sitting here today, I cannot answer the attorney to say,

 6   well, when he participated in the meeting, he

 7   participated as somebody from Jushi Group because, at

 8   the same time, he also holds a position in China Jushi;

 9   therefore, I can only explain that in that meeting he

10   participated as a leader of China Jushi.

11   Q.     I am -- I understand.

12          Because Mr. Zhang serves as both on the board of

13   China Jushi and on China Group; correct?

14          MR. McNAMARA:  Object to the form.

15          THE WITNESS:  For example, he represented Jushi

16   Group at this meeting, but if he were at China

17   Fiberglass or China Jushi, he would be attending with

18   another position.

19   BY MR. STECKLER:

20   Q.     And my point is, sir, is Mr. Zhang wears both

21   hats, both as being on the board of directors of China

22   Jushi and being on the board of directors of Jushi

23   Group; correct?

24   A.     That's my understanding currently, but you have

25   to still check in detail whether or not he is so
```

Confidential - Subject to Further Confidentiality Review

```
1    according to legal documents.  Because in China they

2    kept on changing, I -- I'm also not clear about that.

3    Q.     And when the same person serves on multiple

4    board of directors, it becomes confusing in which role

5    he is acting at a particular time, isn't it?

6           MR. McNAMARA:  Object to the form.

7           THE WITNESS:  It should be said that each time

8    when he is hosting a meeting, depending on the nature of

9    the meeting and what companies are involved, he would

10   represent the correct company with his position in the

11   company.

12   BY MR. STECKLER:

13   Q.     And in this meeting, whether he is with China --

14   Jushi -- China Jushi, which owns 100 percent of Jushi

15   Group, or whether he's with Jushi Group, he is

16   instructing the subsidiaries as to their business; is

17   that right?

18          MR. McNAMARA:  Object to the form.

19          THE WITNESS:  Correct.

20   BY MR. STECKLER:

21   Q.     And Mr. Zhang wants or Zhang wants the

22   subsidiaries of Jushi Group to be consistent in how they

23   conduct business throughout the world.

24          Is that your understanding?

25          MR. McNAMARA:  Object to the form.
```

Confidential - Subject to Further Confidentiality Review

```
 1          THE WITNESS:  Consistent.  Please explain what

 2   is consistent.

 3   BY MR. STECKLER:

 4   Q.     He wants all the subsidiaries to act in a

 5   unified manner in how they do business.

 6          MR. McNAMARA:  Object to form.

 7          THE WITNESS:  Yes.  Yes.

 8   BY MR. STECKLER:

 9   Q.     Jushi Group maintains an interest in how

10   accounts receivable are collected from its subsidiaries.

11   Is that true?

12          MR. McNAMARA:  Object to the form.

13   BY MR. STECKLER:

14   Q.     Isn't that true?

15          THE INTERPRETER:  May the interpreter ask the

16   definition of "interest" in the context of the question?

17          MR. STECKLER:  How about I re-ask it?

18          THE INTERPRETER:  Thank you.

19          MR. STECKLER:  Is that easier?

20   BY MR. STECKLER:

21   Q.     Does Jushi Group have requirements on how its

22   subsidiaries, such as Jushi USA, should collect its

23   accounts receivable?

24   A.     I want to clarify the question.

25          In this meeting Mr. Zhang instructed on the
```

Confidential - Subject to Further Confidentiality Review

1  account payable.  The account payable is referring to

2  the account payable of the subsidiaries selling to the

3  customers in overseas.

4  Q.     And does Jushi Group set forth certain

5  requirements that need to be met by its subsidiaries,

6  such as Jushi USA, whether it involves account payables

7  or account receivables?

8  A.     Yes.

9  Q.     And does Jushi Group direct control over the

10  quality and management of its subsidiaries, including

11  Jushi USA?

12         MR. McNAMARA:  Object to the form.

13         THE WITNESS:  Yes.

14  BY MR. STECKLER:

15  Q.     Does Jushi Group look over the financials of

16  Jushi USA?

17         MR. McNAMARA:  Object to the form.

18         THE WITNESS:  Please define "look over."

19  BY MR. STECKLER:

20  Q.     Does Jushi Group review the financials of Jushi

21  USA with respect to profit and loss?

22         MR. McNAMARA:  Object to the form.

23         THE WITNESS:  Every end -- in every end of the

24  year we would submit a report issued by the C.P.A. and

25  they would review this report.

 1  BY MR. STECKLER:

 2  Q.     Does Jushi Group direct its subsidiaries, such

 3  as Jushi USA, on cost-cutting measures that need to be

 4  undertaken?

 5         MR. McNAMARA:  Object to form.

 6         THE WITNESS:  Okay.  As far as I know, Jushi USA

 7  would report to them every year a total of the

 8  expenditure, but as far as we can control within the

 9  total number, that would be fine -- fine.

10  BY MR. STECKLER:

11  Q.     My point, though, is, Jushi Group can direct

12  Jushi USA to cut costs, if necessary, such as laying off

13  individuals or selling property, things like that;

14  correct?

15         MR. McNAMARA:  Object to the form.

16         THE WITNESS:  Yes.

17  BY MR. STECKLER:

18  Q.     Did you want to be involved in the Jushi USA

19  South Carolina production plant?

20         THE INTERPRETER:  This is the interpreter

21  speaking.

22         Is "you" plural or singular?

23         MR. STECKLER:  Singular.

24         THE INTERPRETER:  Oh, sorry.  This is the

25  interpreter.

 1          The "you" meaning Mr. Tang himself or the

 2    company?

 3          MR. STECKLER:  Mr. Tang.

 4          THE INTERPRETER:  Thank you.

 5          THE WITNESS:  Absolutely not.  I want to retire.

 6    BY MR. STECKLER:

 7    Q.    To South Carolina?

 8    A.    No.

 9    Q.    Are individuals in Jushi USA in Irwindale,

10    California, involved in the production plant in South

11    Carolina?

12    A.    China directly deals with South Carolina's

13    government regarding the South Carolina case; however,

14    when the Chinese personnels arrived in the United

15    States, when there are needs such as transportation or

16    when they were not able to make phone calls to the

17    English-speaking manufacturers or they would need some

18    services, such as booking hotels, when the people who

19    came here did not have a sufficient level of English,

20    which would require us to be in the middle serving as

21    interpreters, we have done things like that.

22    Q.    And you do what you're told, as you said

23    earlier.

24          MR. McNAMARA:  Object to the form.

25          THE WITNESS:  Yes.

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. STECKLER:

 2   Q.      And when you say "China," are you talking about

 3   Jushi Group or China Jushi?

 4   A.      The people who came and we have received for the

 5   South Carolina business are the people from Jushi Group.

 6   Q.      Did you know that China Jushi and -- strike

 7   that.

 8           Did you know that CNBM in its documents has

 9   represented that it is involved in the fiberglass

10   business?

11           MR. McNAMARA:  Object to the form.

12           THE WITNESS:  It is the biggest shareholder of

13   China Jushi.

14   BY MR. STECKLER:

15   Q.      And it indicates in the documents that CNBM does

16   its fiberglass business through China Jushi.

17           Is that your understanding?

18           MR. McNAMARA:  Object to the form.

19           THE WITNESS:  I do not know that.  Only know

20   that it is our majority shareholder.

21           MS. HUANG:  Not -- not majority.

22           MR. STECKLER:  Excuse me.

23           MR. McNAMARA:  Object to the translation.

24           MR. STECKLER:  Do you want to object to the

25   translation?
```

Confidential - Subject to Further Confidentiality Review

1          MS. HUANG:  Object to the translation, yeah.

2     BY MR. STECKLER:

3     Q.     Let me hand you --

4          THE INTERPRETER:  Interpreter just wants to ask,

5     what would counsel recommend to interpret?

6          MS. HUANG:  He said, "da gudong."

7          THE INTERPRETER:  Da gudong.

8          MS. HUANG:  Da gudong.  The translation is the

9     majority.  Da gudong is majority.

10          It used largest.

11          THE INTERPRETER:  Largest.

12          MS. HUANG:  Or big shareholder, not majority.

13          THE INTERPRETER:  What the interpreter was just

14     discussing can counsel regarding translation issues,

15     we're -- we're done.

16          MR. STECKLER:  I'm going to let the translation

17     just stand, and if they want to raise the objection, we

18     can address it at another time.

19          MR. McNAMARA:  Yeah.  We objected to the

20     translation.

21          MR. STECKLER:  Okay.  Fair enough.

22     BY MR. STECKLER:

23     Q.     Let me hand you what I'm going to mark as

24     Exhibits Number 28 and 29 to your deposition.

25          (Exhibit 28 was marked for identification.)

Confidential - Subject to Further Confidentiality Review

1           (Exhibit 29 was marked for identification.)

2           MR. STECKLER:  I don't think you need a copy of

3    this, Sunny, but you're welcome to have it.

4           MR. McNAMARA:  Hold on.

5           Do we have another copy of 28?

6           MR. STECKLER:  Here.  I've got --

7           MR. McNAMARA:  I need -- I've got 29.  I need

8    28.

9           MR. STECKLER:  Here.  Take -- here are two extra

10   copies.

11          MR. McNAMARA:  No.  I think we've got it now.

12   BY MR. STECKLER:

13   Q.     Sir, are these two exhibits, 28 and 29, business

14   records of Jushi USA?

15   A.     Yes.

16   Q.     Can I see your exhibit, please?

17          Is Exhibit 28 an income statement for Jushi USA

18   for the year 2014?

19   A.     Yes.

20   Q.     Is Exhibit 29 a balance sheet for Jushi USA for

21   the year 2014?

22   A.     Balance sheet, yes.

23   Q.     And is this a business record of Jushi USA

24   Fiberglass?

25   A.     Yes.

1   Q.      I'm going to hand you what we're going to mark

2   as Exhibit 30 to your deposition, which is entitled

3   Jushi USA Fiberglass Company Independent Auditor Report

4   and Financial Statements for December 31, 2014.

5           (Exhibit 30 was marked for identification.)

6   BY MR. STECKLER:

7   Q.      And it's Bates stamped 2460 and it goes from

8   2460 to 2460.00017.

9   A.      Yes.

10  Q.      Is this a business record of Jushi USA?

11  A.      Yes.

12  Q.      Is Jushi Group the sole supplier to Jushi USA?

13  A.      Yes.  But because the production of Jushi Group

14  is divided into three different factories, the products

15  manufactured by each factory is not necessarily the

16  completely same.

17          Therefore, we purchase from Jushi Group and then

18  different products may come from different factories of

19  Jushi Group but they are all factories under Jushi Group

20  but we'll make the payment, because they're from

21  different factories, therefore, we make payments to

22  different factories.

23          Therefore, to answer your question, according to

24  my understanding, is that we only purchase goods from

25  Jushi Group.

Confidential - Subject to Further Confidentiality Review

1   Q.      Okay.  Do we have Exhibit 4-A from yesterday

2   with us?  Okay.  Actually, excuse me.  It's 2-A.  I

3   apologize.

4           MR. McNAMARA:  What is that?

5           MR. STECKLER:  This is the CNBM 2014 annual

6   report.

7           This is the English version.  He has the Chinese

8   version.

9   BY MR. STECKLER:

10  Q.      Can I take a look at your exhibit, please, so I

11  can direct you to the correct page?

12          Thank you, sir.  Look at this page with this

13  heading and this in Chinese.  Thank you.

14          Sir, I'd like you to look at Page 27 of the CNBM

15  2014 annual report, which discusses the glass fiber

16  business.

17          Do you see that?

18  A.      Do you want me to just generally go through

19  this?

20  Q.      No.  I want you to -- do you see where I'm

21  talking about in the document?

22  A.      Page 912?  Is that the page?

23          MS. ZHANG:  Yes, that's correct.

24          THE WITNESS:  This one; right?

25          MR. STECKLER:  Yes, you're on the correct page.

1   BY MR. STECKLER:

2   Q.     And under fiberglass business --

3   A.     Yes.

4   Q.     Oh, sorry.

5          Under fiberglass business it is discussing China

6   Jushi; correct?

7          MR. McNAMARA:  Object to the form.

8          THE WITNESS:  Can you give me a minute to take a

9   look?

10         MR. STECKLER:  Yes.

11  BY MR. STECKLER:

12  Q.     And then I'll re-ask my question.

13  A.     I'm done reading it.

14  Q.     The portion under the glass fiber business

15  section of the annual report discusses China Jushi;

16  correct?

17         MR. McNAMARA:  Object to the form.

18         THE WITNESS:  Yes.

19  BY MR. STECKLER:

20  Q.     Was Jushi Group involved in the production line

21  in Egypt?

22         MR. McNAMARA:  Object to the form.

23         THE WITNESS:  Because I am a person in the

24  United States, I don't know whether it was Jushi Group

25  or China Jushi.

Confidential - Subject to Further Confidentiality Review

```
1   BY MR. STECKLER:

2   Q.      Did you see at the annual meeting or learn at

3   the annual meeting that there was an Egypt -- Egyptian

4   production plant?

5           MR. McNAMARA:  Object to the form.

6           THE WITNESS:  Yes.

7   BY MR. STECKLER:

8   Q.      And this was at the Jushi Group meeting;

9   correct?

10          MR. McNAMARA:  Object to form.  Objection to

11  form.

12          THE WITNESS:  Yes.

13  BY MR. STECKLER:

14  Q.      And there is an Egyptian subsidiary of Jushi

15  Group; correct?

16          MR. McNAMARA:  Object to the form.

17          THE WITNESS:  I don't know whether it is a

18  subsidiary of China Jushi or Jushi Group.  I don't know

19  which one is it.

20  BY MR. STECKLER:

21  Q.      When you were at the Jushi Group meeting, they

22  discussed the Egyptian subsidiary, didn't they?

23          MR. McNAMARA:  Object to the form.

24          THE WITNESS:  They talked about Egyptian plant,

25  production and shipment.
```

Confidential - Subject to Further Confidentiality Review

1   BY MR. STECKLER:

2   Q.      And that was at the Jushi Group meeting?

3   A.      Yes.

4   Q.      And so you don't know the involvement of Jushi

5   Group or China Jushi in the project in Egypt.  Is that

6   fair?

7   A.      Yes.

8   Q.      But you're aware that China Jushi -- strike

9   that.

10          But you're aware that a fiberglass production

11  facility was built in Egypt; correct?

12          MR. McNAMARA:  Object to form.

13          THE WITNESS:  Correct.

14  BY MR. STECKLER:

15  Q.      And in this 2014 annual report of CNBM this

16  Egyptian production plant is being discussed; correct?

17          MR. McNAMARA:  Object to the form.

18          THE WITNESS:  Let me take a look to see where is

19  it because I just got this document.

20          Are you talking about this document?

21          MR. STECKLER:  Yes.

22          THE WITNESS:  Oh, let me take a look.

23          THE INTERPRETER:  May the interpreter have the

24  English version of the annual report for reference?

25          MR. STECKLER:  Here.

Confidential - Subject to Further Confidentiality Review

```
 1              THE INTERPRETER:  The same page?

 2              MR. STECKLER:  27.

 3              MR. McNAMARA:  So I can't remember exactly what

 4    we said yesterday, but we do not agree to the

 5    translation, so I'll object to the extent she's going to

 6    read from the English version as if it's the proper

 7    translation.

 8              MR. STECKLER:  I don't remember you objecting to

 9    the translation of the business records of CNBM.

10              THE WITNESS:  From the report I just received, I

11    see the sentence, the alkali-free glass fiber -- fibery

12    pool kiln wire drawing production line with an annual

13    capacity of 80,000 tons in Egypt successfully commenced

14    operation.

15              MR. McNAMARA:  I'll object to the translation.

16    BY MR. STECKLER:

17    Q.     And is it your understanding that that is a

18    Jushi project --

19              MR. McNAMARA:  Object to the form.

20    BY MR. STECKLER:

21    Q.     -- whether it's Jushi Group or China Jushi?

22              MR. McNAMARA:  Object to the form.

23              THE WITNESS:  Yes.

24    BY MR. STECKLER:

25    Q.     And the discussion of the Egyptian plant that's
```

 1    either part of China Jushi, Jushi Group or a subsidiary

 2    is being discussed in the 2014 annual report of CNBM

 3    under Management Discussion and Analysis; correct?

 4              MR. McNAMARA:  Object to the form.

 5              THE WITNESS:  My position is too low to attend

 6    this meeting.  I did not attend the meeting; therefore,

 7    what I see reflected in the document is the same as what

 8    the attorney said.

 9              MR. STECKLER:  And that's really all I'm asking,

10    sir.  Okay?

11              (Exhibit 31 was marked for identification.)

12    BY MR. STECKLER:

13    Q.      Let me hand you what we are now going to mark as

14    Exhibit Number 31 to your deposition.  And for the court

15    reporter's convenience let's put Exhibit 2 back, and

16    2-A.

17              Sir, this document that I've handed you as

18    Exhibit 31 is an E-mail from Maybal Wong to Alan

19    Gardiner, Sara Szufu in which Tiffany Chen is copied

20    regarding a budget for 2015.

21              Do you see that?

22    A.      I see that.

23    Q.      Is the E-mail as well as the attachments, which

24    are 1345 to 1345.00020, business records of Jushi USA?

25    A.      One moment.  Let me take a look.

Confidential - Subject to Further Confidentiality Review

1          1345 to where?

2   Q.     All the way to the end, 1345.00020.

3   A.     Okay.  Let me check it immediately.

4          That should be correct, after I generally went

5   through this document.

6   Q.     The E-mails suggest that the budget for 2015 is

7   being sent out to Jushi China.

8          Is that the same as China Jushi?

9   A.     I have testified yesterday my understanding is

10  that Maybal -- Maybal and others only knew there is a

11  Jushi company in China but they do not know whether it

12  is Jushi Group or China Jushi, they only know a Jushi

13  company.

14         However, ever since we became a company 100

15  percent owned by Jushi Group in 2011, we had always been

16  belonging to Jushi Group and I -- and our work is in

17  accordance with the work of Jushi Group.

18  Q.     Is the confusion that your accountant, Maybal,

19  is having a result of the fact that China Jushi and

20  Jushi Group have the same name and some of the same

21  board of directors, such as Mr. Zhang?

22         MR. McNAMARA:  Object to the form.

23         THE WITNESS:  Because they are not yet at a

24  certain level in the company; therefore, nobody had ever

25  explained to them the inside of this matter because they

1    did not need to know.

2    BY MR. STECKLER:

3    Q.     And the names are very similar, too; right?

4           MR. McNAMARA:  Object to the form.

5           THE WITNESS:  Please explain what is "similar."

6           What is his definition of "similar"?

7    BY MR. STECKLER:

8    Q.     China Jushi and Jushi Group both have the word

9    "Jushi" in them; correct?

10   A.     Yes.

11   Q.     And Mr. Zhang works for or serves in a capacity

12   with both China Jushi and Jushi Group, too; right?

13          MR. McNAMARA:  Object to the form.

14          THE WITNESS:  Correct.  But I believe he only

15   receives one salary, not two salaries.

16   BY MR. STECKLER:

17   Q.     Are you sure?

18   A.     Because in China people such as him is not

19   allowed to receive two salaries.

20   Q.     Who doesn't allow that?

21   A.     I don't -- I don't know.

22   Q.     And Mr. Zhang also works for, is it Hengshi or

23   Zhenshi Holdings?

24          MR. McNAMARA:  Object to the form.

25          THE WITNESS:  What's your definition of "work"?

Confidential - Subject to Further Confidentiality Review

1  BY MR. STECKLER:

2  Q.    He serves on the board of directors for that

3  company, is that right, or does he work for the company?

4        MR. McNAMARA:  Object to the form.

5        THE WITNESS:  He's the chairman of the board.

6  BY MR. STECKLER:

7  Q.    So he's the chairman of the board of Zhenshi

8  Holding; correct?

9  A.    Yes.  Yes.

10  Q.    Chairman of the board of Jushi Group?

11        MR. McNAMARA:  Object to the form.

12        THE WITNESS:  He used to, but I don't know

13  whether or not he still is currently.  I wouldn't have

14  know if there had been any changes.  But he used to.

15  BY MR. STECKLER:

16  Q.    And Mr. Zhang is also on the board of directors

17  of China Jushi; correct?

18        MR. McNAMARA:  Object to the form.

19        THE WITNESS:  Yes.

20  BY MR. STECKLER:

21  Q.    And he is your boss.

22  A.    Yes.

23  Q.    Let me hand you Exhibit Number 3 from yesterday.

24        MR. McNAMARA:  Bruce, I don't have mine handy.

25  Can you tell me what that is so we can find it?

Confidential - Subject to Further Confidentiality Review

1           MR. STECKLER:  I don't have mine handy either.

2    I'm --

3           MR. McNAMARA:  Oh, I found it.

4           MR. STECKLER:  -- sort of flying blind.

5           MR. McNAMARA:  Okay.  We found it.

6    BY MR. STECKLER:

7    Q.     Do you recall this document, sir?

8    A.     Yes, I've read it.

9    Q.     And this is the document in which you were being

10   directed by CNBM to get a legal opinion on Jushi USA's

11   relationship with the parent company.

12          MR. McNAMARA:  Object to the form.

13          THE WITNESS:  I have received this document from

14   Eason of Jushi Group.  I was copied too.

15          MR. STECKLER:  Yes.

16          THE WITNESS:  Therefore, I did not receive this

17   document from the company the attorney had just

18   mentioned.

19   BY MR. STECKLER:

20   Q.     And I'm actually asking you, as the

21   corporate representative of the company, about this

22   document.

23          MR. McNAMARA:  Objection.

24          Is that a question?

25          THE WITNESS:  Me as what?

Confidential - Subject to Further Confidentiality Review

1   BY MR. STECKLER:

2   Q.     I'm aware that you were copied on it.  I just

3   want to clarify.  This was an inquiry -- may I see the

4   E-mail real quickly?

5          This was an inquiry in which CNBM was asking

6   Jushi USA to get a legal opinion to clarify its

7   relationship with its parent and other related entities.

8          MR. McNAMARA:  Object to the form.

9          THE WITNESS:  What I have received is a letter

10  sent to me by Jushi Group.  I have not received a letter

11  from CNBM.

12         As for Eason of Jushi Group, I do not whether --

13  I do not know whether he had or had not received an

14  instruction from Jushi Group.  I did not check on that.

15         I can only in respond to the attorney's

16  question, I have received an inquiry from Jushi Group to

17  prepare something for it and I did the preparation.

18  BY MR. STECKLER:

19  Q.     If the E-mail references CNBM directing that

20  this information be obtained, do you have any reason to

21  disagree with that, as you sit here today on behalf of

22  Jushi USA?

23         MR. McNAMARA:  Object to the form.

24         THE WITNESS:  I agree that the letter I have

25  received is a letter sent to me by Jushi Group's Eason

Confidential - Subject to Further Confidentiality Review

1   but I cannot prove that CNBM directed -- directed it.

2   Therefore, my answer is I personally have not received

3   any document from CNBM; therefore, in front of the

4   attorney it's very hard for me to say that I have

5   received its instruction.

6   BY MR. STECKLER:

7   Q.      Is it fair to say the document speaks for

8   itself?

9           MR. McNAMARA:  Object to the form.

10          THE WITNESS:  I don't understand the attorney's

11  question.

12  BY MR. STECKLER:

13  Q.      Is it fair to say that we just have to rely on

14  what document says for our interpretation because you

15  don't know any differently?

16          MR. McNAMARA:  Listen.  It's not saying

17  anything.

18          Object to the form.

19          THE WITNESS:  I cannot agree with your

20  statement.  I can only agree after I have

21  double-checked, but since I have not double-checked, I

22  cannot agree.

23          And I also am not willing to challenge whether

24  the letter sent to me by Jushi Group is authentic or

25  false -- false.

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. STECKLER:

 2   Q.     You testified earlier this was a business record

 3   of Jushi USA; correct?

 4          MR. McNAMARA:  Object to the form.

 5          THE WITNESS:  Yes.

 6   BY MR. STECKLER:

 7   Q.     Are you aware of this in any way having been

 8   altered or changed?

 9   A.     As my common sense, I don't believe it had been

10   altered, but as for whether or not it had indeed been

11   altered, you would have to find an investigator to draw

12   that conclusion.  How would I know?

13          But if I were to investigate on everything, I

14   could not finish the work of the day.

15   Q.     Can you think of any reason why someone would

16   put CNBM's name in there other than, in fact, it wasn't

17   the truth?

18          MR. McNAMARA:  Object to the form.

19          THE WITNESS:  I only believe that's what Eason

20   asked our company to do, but it is not what I'm in

21   charge of as for the matters above Eason.

22   BY MR. STECKLER:

23   Q.     Is Ethan a liar?

24          MR. McNAMARA:  It's not -- hold on.

25   It's not Ethan.  It's Eason, E-A-S-O-N.
```

```
 1              MR. STECKLER:  Apologize.

 2              THE INTERPRETER:  Eason.

 3              MR. STECKLER:  Thanks, Counsel.

 4              THE WITNESS:  I do not know.

 5              MR. McNAMARA:  And I'll object to the form of

 6   that question.

 7              THE WITNESS:  If you even ask his mom, his mom

 8   wouldn't have known either.

 9   BY MR. STECKLER:

10   Q.      Has he ever been untruthful to you in your

11   business dealings with him?

12              MR. McNAMARA:  Object to the form.

13   BY MR. STECKLER:

14   Q.      As far as you know?

15   A.      Eason usually -- rarely deal with me directly.

16   But from the common sense that I have right now, I

17   cannot decide on whether he would lie or not.  But I

18   rather believe that everyone is honest.

19   Q.      And so, using your common sense, can we assume

20   that Ethan is -- Eason is being honest in this document?

21              MR. McNAMARA:  Object to the form.

22              THE WITNESS:  I cannot assume.  I'm only

23   following what his requirements are.

24   BY MR. STECKLER:

25   Q.      I guess you don't want to assume that because
```

Confidential - Subject to Further Confidentiality Review

```
 1   people from Jushi Group don't usually tell the truth to

 2   you in their business dealings.

 3         Is that why?

 4         MR. McNAMARA:  Object to the form.

 5         Bruce, that's out of line.

 6         THE WITNESS:  I do everything according to the

 7   requirements of Jushi.

 8         MR. STECKLER:  I understand that.

 9   BY MR. STECKLER:

10   Q.     And my point to you is, you don't have any

11   reason, as we sit here today, to disagree with the

12   statement in the E-mail by Eason; correct?

13         MR. McNAMARA:  Object to the form.

14         THE WITNESS:  I can only agree upon personally

15   examine it.  I cannot take the responsibility of I

16   agreed before I've conducted such an examination.

17   BY MR. STECKLER:

18   Q.     And so what examination are you going to do to

19   find out if this is, in fact, true or not true?  Because

20   maybe all of these documents you've produced are untrue

21   without you doing a full-blown investigation.

22         MR. McNAMARA:  Object to the form.

23         THE WITNESS:  What the attorney said is very

24   correct, according to my way of practice.

25         What I needed to know, whether it is correct or
```

1   not in a document, is whether the document was sent by

2   Eason -- and I believe it was sent by Eason -- and,

3   second of all, what he wanted me to do, then I will do

4   that.

5          As for others that are not within my

6   responsibilities, I would not challenge anyone.  For

7   this part, whether it's true or it's false, since it has

8   nothing to do with my responsibility, therefore, I don't

9   go about to confirm that.

10  BY MR. STECKLER:

11  Q.     So all you know as you sit here today is this is

12  an E-mail that Jushi USA received from Jushi Group;

13  correct?

14  A.     This one?  Yes.

15  Q.     Let me hand you what we're going to mark as

16  Exhibits 32, 33, and 34 to your deposition.

17         (Exhibit 32 was marked for identification.)

18         (Exhibit 33 was marked for identification.)

19         (Exhibit 34 was marked for identification.)

20  BY MR. STECKLER:

21  Q.     Sir, is Exhibit 32 a business record of Jushi

22  USA?

23  A.     Yes.

24  Q.     And it's a three-page document; correct?

25  A.     Yes.

Confidential - Subject to Further Confidentiality Review

1   Q.      What is the purpose -- what's this document

2   about?

3   A.      Let me take a look.

4           I'm done reading it.

5   Q.      What's the purpose of this document?

6   A.      From what I see of the document, first of all,

7   the company nominates Chief H-E, Chief Z-H-A-N-G, and I

8   as the company's directors.

9   Q.      And -- I'm sorry.

10  A.      And, second of all, the meeting minutes.

11  Q.      Let me hand you Exhibit -- look at Exhibit 32

12  and 33.

13          Are those both business records of Jushi USA?

14  A.      Yes.

15  Q.      And 32 indicates Mr. Zhang is a director;

16  correct?

17  A.      I believe so.

18          MR. McNAMARA:  Bruce, just a heads-up.

19          MR. STECKLER:  Yeah, I'm aware.  We're close.

20  BY MR. STECKLER:

21  Q.      And how many members of Jushi USA -- how many

22  directors of Jushi USA are also with Jushi Group?

23          MR. McNAMARA:  Object to the form.

24          THE WITNESS:  One, Chief Zhang.

25

  1   BY MR. STECKLER:

  2   Q.      Now let's look at Exhibit 33.

  3           This is a consent of shareholders at an annual

  4   meeting that is signed or has the signature line for Mr.

  5   Zhang.

  6           Do you see that?

  7   A.      Yes, I see that.

  8   Q.      Why is --

  9   A.      The line is empty.

 10   Q.      Yes.  Why would he be signing on behalf of

 11   Faithrich Enterprises, Limited, a corporation formed in

 12   the British Virgin Islands?

 13           MR. McNAMARA:  Object to the form.

 14           Bruce, just -- sorry for that.  I'm confused.

 15           MR. STECKLER:  Sure.

 16           MR. McNAMARA:  Where -- what are you reading

 17   from?

 18           MR. STECKLER:  The very last page, Page 2, of

 19   the annual meeting dated -- it says this meeting is

 20   written consent filed in the minute book --

 21           MR. McNAMARA:  This is Exhibit 33?

 22           MR. STECKLER:  I believe Page 2.

 23           MR. McNAMARA:  I have Page 2 of Exhibit 33 is

 24   not a signature block.  That's why I'm confused.

 25           MR. STECKLER:  Oh.  Did I mess them up?

Confidential - Subject to Further Confidentiality Review

1          MR. McNAMARA:  The third page of Exhibit -- the

2   signature block on Exhibit 33 is Page 3.

3          MR. STECKLER:  Okay.  So then go to 32.  I

4   misspoke then.

5          Thank you.

6          MR. McNAMARA:  Exhibit 32?

7          MR. STECKLER:  Yeah.  I think we're on the same

8   page.

9          MR. McNAMARA:  The E-mail?

10          MR. STECKLER:  Yes.  No.

11          MR. McNAMARA:  Exhibit 32 is the E-mail.

12          MR. STECKLER:  Sir, may I have your exhibit,

13   please.

14          THE WITNESS:  (In English)  Which one?

15          MR. STECKLER:  This one (indicating).

16          Thank you.

17          MR. McNAMARA:  No.  That's 34.

18          MR. STECKLER:  34.  I'm sorry.  I misspoke.

19          Thank you, Counsel.

20   BY MR. STECKLER:

21   Q.     On Exhibit 34, why is there a signature line by

22   Mr. Zhang as acting on behalf of Faithrich Enterprises,

23   Limited, a corporation formed in the British Virgin

24   Islands?

25          MR. McNAMARA:  Object to the form.

Confidential - Subject to Further Confidentiality Review

```
1            MR. STECKLER:  What's the basis?

2            MR. McNAMARA:  Lack of foundation.

3            MR. STECKLER:  It's a Jushi USA document.

4   That's --

5            MR. McNAMARA:  Right.  But you haven't

6   established that he has any idea --

7            MR. STECKLER:  He's signing it.

8            MR. McNAMARA:  Well, it's not signed.  It could

9   be a draft that was later changed.

10           MR. STECKLER:  He said it's a business record.

11  I want to know -- oh, whatever.  I don't need to play

12  this game.

13           Go ahead.

14           THE WITNESS:  How about I go back and check on

15  that?  Because I did not personally handle this matter;

16  therefore, I do not know.

17           MR. STECKLER:  Okay.

18  BY MR. STECKLER:

19  Q.    You're the CEO of Jushi USA Fiberglass; correct?

20           MR. McNAMARA:  Object to the form.

21           THE WITNESS:  Used to.

22           MR. STECKLER:  Okay.

23  BY MR. STECKLER:

24  Q.    You're now the chairman of the board.

25  A.    Yes.
```

1  Q.     And are you involved in annual meetings of Jushi

2  USA Fiberglass Corporation?

3  A.     Yes.

4  Q.     And you would be involved in resolutions and

5  action by written consent of shareholders with respect

6  to Jushi USA Fiberglass?

7  A.     Say again?  I did not hear that clearly.

8         THE INTERPRETER:  The interpreter will repeat.

9         THE WITNESS:  Yes.

10  BY MR. STECKLER:

11  Q.     Are you familiar with the entity Faithrich

12  Enterprises, Limited?

13  A.     I'm not familiar with it.

14  Q.     And you don't know why Mr. Zhang would be

15  acting, purporting to act on behalf of Faithrich

16  Enterprises, Limited, a corporation formed in the

17  British Islands, involving a written consent of

18  shareholders of Jushi USA Fiberglass.

19         MR. McNAMARA:  Object to the form.

20  BY MR. STECKLER:

21  Q.     Is that right?

22         MR. McNAMARA:  Object to the form.

23         THE WITNESS:  I can guess that if his signature

24  is required, maybe he is the owner, but if I were to

25  testify before I check it, I could only say that I would

Confidential - Subject to Further Confidentiality Review

1    only know after I have checked it.

2    BY MR. STECKLER:

3    Q.      So is it fair to say you have absolutely no idea

4    why Mr. Zhang would be signing on behalf of Faithrich

5    Enterprises, a British Virgin Island company?

6    A.      According to my common knowledge, if he was

7    asked to sign, he must have a legal identity for the

8    signature, but I have not checked the fact yet.

9    Q.      Where is your office in China?

10   A.      I do not have an office in China.

11   Q.      You live half the year in China?

12   A.      Yes.  I live in Shanghai.

13   Q.      Do you use the Jushi Group's office,

14   offices, for business in China?

15   A.      No.

16           MR. McNAMARA:  Bruce, it's 11:33 now so --

17           MR. STECKLER:  One more question, and then I

18   understand that you want to end the depo and I'm going

19   to leave it open, and we can have a quick discussion.

20   BY MR. STECKLER:

21   Q.      Does Alan Gardiner still work for a Jushi Group

22   entity?

23   A.      He neither works for Jushi Group nor in the

24   United States.  He works in Jushi Canada.

25   Q.      So Alan Gardiner still works for a Jushi entity;

1    correct?

2          MR. McNAMARA:  Object.  You said there was one

3    more question.  That's two.

4          MR. STECKLER:  I wanted to clarify.  Sorry.

5          THE WITNESS:  Jushi Canada is an overseas

6    subsidiary of Jushi Group.

7          MR. STECKLER:  Okay.

8          Counsel, I understand that you want to blow out

9    of here and you've got another commitment.

10         I would like to leave the deposition open and,

11   hopefully, you and I can reach some agreements on

12   documents and issues and then decide how to proceed.

13   But we're --

14         MR. McNAMARA:  Right.

15         MR. STECKLER:  We don't want to commit to

16   closing this.

17         MR. McNAMARA:  Right.  And I don't want to

18   commit to leaving it open so I'm not going to -- just

19   for the record not committing to that.

20         MR. STECKLER:  And I'm not suggesting that.  I'm

21   aware of your position.

22         MR. McNAMARA:  Okay.  Thank you.  I've got to

23   run.

24         VIDEO OPERATOR:  With the approval of counsel,

25   this concludes today's deposition.

1          Today's deposition consists of two recorded

2    files.  Today's deposition was Volume II.

3          We are now off the record.

4          (Whereupon the deposition adjourned at 11:34

5    a.m.)

6                    TESTIMONY CLOSED

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    STATE OF CALIFORNIA            )

 2    COUNTY OF LOS ANGELES          )

 3           I, ROSEMARY LOCKLEAR, a Certified Shorthand

 4    Reporter of the State of California, duly authorized to

 5    administer oaths pursuant to Section 2025 of the

 6    California Code of Civil Procedure, do hereby certify

 7    that

 8           HSIN HUA TANG, the witness in the foregoing

 9    deposition, was by me duly sworn to testify the truth,

10    the whole truth and nothing but the truth in the

11    within-entitled cause; that said testimony of said

12    witness was reported by me, a disinterested person, and

13    was thereafter transcribed under my direction into

14    typewriting and is a true and correct transcription of

15    said proceedings.

16           I further certify that I am not of counsel or

17    attorney for either or any of the parties in the

18    foregoing deposition and caption named, nor in any

19    way interested in the outcome of the cause named in

20    said deposition dated the_____ day of

21    _____, 2015.

22

23

24

25    ROSEMARY LOCKLEAR, RPR, CRR, CSR 13969
```

Confidential - Subject to Further Confidentiality Review

```
 1                    INSTRUCTIONS TO WITNESS

 2

 3

 4           Please read your deposition over carefully and

 5    make any necessary corrections.  You should state the

 6    reason in the appropriate space on the Errata Sheet for

 7    any corrections that are made.

 8           After doing so, please sign the Errata Sheet

 9    and date it.

10           You are signing same subject to the changes

11    you have noted on the Errata Sheet, which will be

12    attached to your deposition.

13           It is imperative that you return the original

14    Errata Sheet to the deposing attorney within thirty (30)

15    days of receipt of the deposition transcript by you.  If

16    you fail to do so, the deposition transcript may be

17    deemed to be accurate and may be used in court.

18

19

20

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                    E R R A T A

 2                    - - - - - -

 3

 4    PAGE  LINE  CHANGE

 5    _____  _____  _____

 6    REASON:_____

 7

 8    PAGE  LINE  CHANGE

 9    _____  _____  _____

10    REASON:_____

11

12    PAGE  LINE  CHANGE

13    _____  _____  _____

14    REASON:_____

15

16    PAGE  LINE  CHANGE

17    _____  _____  _____

18    REASON:_____

19

20    PAGE  LINE  CHANGE

21    _____  _____  _____

22    REASON:_____

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                ACKNOWLEDGEMENT OF DEPONENT

 2

 3

 4        I, _____, do hereby certify

 5   that I have read the foregoing pages, and that the same

 6   is a correct transcription of the answers given by me to

 7   the questions therein propounded, except for the

 8   corrections or changes in form or substance, if any,

 9   noted in the attached Errata Sheet.

10

11

12

13   _____

14   HSIN HUA TANG                           DATE

15

16   Subscribed and sworn
     to before me this

17   _____ day of _____, 20____.

18
     My commission expires:_____

19

20   _____
     Notary Public

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

1                    LAWYER'S NOTES

2    PAGE LINE

3    _____    _____  _____

4    _____    _____  _____

5    _____    _____  _____

6    _____    _____  _____

7    _____    _____  _____

8    _____    _____  _____

9    _____    _____  _____

10   _____    _____  _____

11   _____    _____  _____

12   _____    _____  _____

13   _____    _____  _____

14   _____    _____  _____

15   _____    _____  _____

16   _____    _____  _____

17   _____    _____  _____

18   _____    _____  _____

19   _____    _____  _____

20   _____    _____  _____

21   _____    _____  _____

22   _____    _____  _____

23   _____    _____  _____

24   _____    _____  _____

25   _____    _____  _____