Confidential - Subject to Further Confidentiality Review

```
 1              UNITED STATES DISTRICT COURT

 2              EASTERN DISTRICT OF LOUISIANA

 3    ****************************************************

 4    IN RE:  CHINESE-MANUFACTURED  MDL NO. 2047

      DRYWALL PRODUCTS LIABILITY

 5    LITIGATION                    SECTION:  L

 6    THIS DOCUMENT APPLIES TO      JUDGE FALLON

      ALL CASES

 7                                  MAG. JUDGE WILKINSON

 8    ****************************************************

 9

              CONFIDENTIAL - SUBJECT TO FURTHER

10                  CONFIDENTIALITY REVIEW

11                 Tuesday, August 4, 2015

12                      — — —

13

14         Videotaped Deposition of JIANGLIN CAO,

15    VOLUME 1, held at Gordon Arata McCollam DuPlantis &

16    Eagan LLC, 201 St. Charles Avenue, Suite 4000,

17    New Orleans, Louisiana, commencing at 9:10 a.m., on

18    the above date, before Micheal A. Johnson, Certified

19    Court Reporter (#29025), Registered Merit Reporter and

20    Certified Realtime Reporter.

21

22                      — — —

23

24         GOLKOW TECHNOLOGIES, INC.

          877.370.3377 ph | 917.591.5672 fax

25              deps@golkow.com
```

**CONTEMPT
Exhibit 77**

Confidential - Subject to Further Confidentiality Review

```
 1    A P P E A R A N C E S:
 2    COUNSEL FOR THE PLAINTIFF CLASS:
 3        HERMAN HERMAN & KATZ LLC
          BY:  RUSS M. HERMAN, ESQUIRE
 4            rherman@hhklawfirm.com
              MADELYN M. O'BRIEN, ESQUIRE
 5            mobrien@hhklawfirm.com
          820 O'Keefe Avenue
 6        New Orleans, Louisiana 70113
          (504) 581-4892
 7
 8        LEVIN FISHBEIN SEDRAN & BERMAN
          BY:  SANDRA L. DUGGAN, ESQUIRE
 9            sduggan@lfsblaw.com
          510 Walnut Street, Suite 500
10        Philadelphia, Pennsylvania 19106
          (215) 592-1500
11
12        IRPINO LAW FIRM
          BY:  PEARL A. ROBERTSON, ESQUIRE
13            probertson@irpinolaw.com
              ANTHONY D. IRPINO, ESQUIRE
14            airpino@irpinolaw.com
          2216 Magazine Street
15        New Orleans, Louisiana 70130
          (504) 525-1500
16
17        GAINSBURGH BENJAMIN DAVID MEUNIER & WARSHAUER LLC
          BY:  RACHEL A. STERNLIEB, ESQUIRE
18            rsternlieb@gainsben.com
          1100 Poydras Street, Suite 2800
19        New Orleans, Louisiana 70163-2800
          (504) 522-2304
20
21
22
23
24
25
```

Confidential - Subject to Further Confidentiality Review

```
 1   A P P E A R A N C E S:
 2   COUNSEL FOR TAISHAN GYPSUM COMPANY:
 3        ALSTON & BIRD LLP
          BY:  ALIYYA Z. HAQUE, ESQUIRE
 4             aliyya.haque@alston.com
               (Via Speakerphone)
 5        1201 West Peachtree Street
          Atlanta, Georgia 30309-3424
 6        (404) 881-4412
 7
     COUNSEL FOR BNBM DEFENDANTS:
 8
          DENTONS US LLP
 9        BY:  KENNETH J. PFAEHLER, ESQUIRE
               kenneth.pfaehler@dentons.com
10        1301 K. Street, NW
          Suite 600, East Tower
11        Washington, D.C. 20005-3364
          (202) 408-6468
12
13        PHELPS DUNBAR LLP
          BY:  HARRY ROSENBERG, ESQUIRE
14             harry.rosenberg@phelps.com
          365 Canal Street, Suite 2000
15        New Orleans, Louisiana 70130-6535
          (504) 566-1311
16
17   COUNSEL FOR CNBM DEFENDANTS:
18        ORRICK HERRINGTON & SUTCLIFFE LLP
          BY:  L. CHRISTOPHER VEJNOSKA, ESQUIRE
19             cvejnoska@orrick.com
               ANDREW K. DAVIDSON, ESQUIRE
20             adavidson@orrick.com
               JASON M. WU, ESQUIRE
21             jmwu@orrick.com
          405 Howard Street
22        San Francisco, California 94105-2669
          (415) 773-5916
23
24
25
```

Confidential - Subject to Further Confidentiality Review

```
 1    A P P E A R A N C E S:
 2    COUNSEL FOR CNBM DEFENDANTS:
 3
           ORRICK HERRINGTON & SUTCLIFFE LLP.
 4         BY:  JAMES L. STENGEL, ESQUIRE
                jstengel@orrick.com
 5         51 West 52nd Street
           New York, New York 10019-6142
 6         (212) 506-3775
 7
           ORRICK HERRINGTON & SUTCLIFFE LLP
 8         BY:  XIANG WANG, ESQUIRE
                xiangwang@orrick.com
 9         5701 China World Tower
           No. 1 Jianguomenwai Avenue
10         Beijing 100004
           People's Republic of China
11         +86 10 8595 5668
12
           GORDON ARATA McCOLLAM DUPLANTIS & EAGAN LLP
13         BY:  EWELL E. EAGAN, JR., ESQUIRE
                eeagan@gordonarata.com
14         201 St. Charles Avenue, Suite 4000
           New Orleans, Louisiana 70170-4000
15         (504) 582-1111
16
      COUNSEL FOR THE STATE OF LOUISIANA:
17
           PERKINS COIE LLP
18         BY:  CRAIG M.J. ALLELY, ESQUIRE
                callely@perkinscoie.com
19         1900 Sixteenth Street, Suite 1400
           Denver, Colorado 80202-5255
20         (303) 291-2304
21
           OFFICE OF THE ATTORNEY GENERAL STATE OF
22         LOUISIANA
           BY:  L. Christopher Styron
23              styron@ag.state.la.us
           1885 North Third Street
24         Baton Rouge Louisiana 70802
           (225) 326-6079
25
```

Confidential - Subject to Further Confidentiality Review

```
 1   ALSO PRESENT:

 2        ALEX FAIA

 3        TONI XU

 4        MARK ANCALADE, VIDEOGRAPHER

          SUNNY WANG, MANDARIN INTERPRETER

 5                       — — —

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                        INDEX

                       JIANGLIN CAO

 2                     August 4, 2015

 3

 4       PROCEEDINGS                              9

 5

 6   EXAMINATION OF JIANGLIN CAO:

 7          BY MR. HERMAN               10

 8

 9       REPORTER'S CERTIFICATE               130

10

11

12       INFORMATION REQUESTED BY COUNSEL FOR CNBM

13                    Page 20, Line 1

                      Page 26, Line 5

14                    Page 67, Line 21

                      Page 93, Line 14

15

16

17

18

19

20

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                        DEPOSITION EXHIBITS
                             JIANGLIN CAO
 2                         August 4, 2015
 3
 4      NUMBER                    DESCRIPTION              MARKED
 5      Exhibit 1         Hogan Lovells Production of         97
                          Deprivileged Documents
 6
        Exhibit 13        2014 CNBM Annual Report             33
 7                        (English)
 8      Exhibit 13-A      2014 CNBM Annual Report             33
                          (Chinese)
 9
        Exhibit 23-1      Revised Summary Chart of            33
10                        Executives and Directors of
                          Defendants, with supporting
11                        Exhibits 1-36 (FRE 1006)
12      Exhibit 61        Knauf e-mail and letters to         68
                          Song Zhiping and Wang Bing,
13                        with attachments
14      Exhibit 150       July 17, 2014 Contempt Order       111
                          and Injunction
15
        Exhibit 265       CAO Jianglin - Timeline of          34
16                        Executive Positions (Work
                          History Chart)
17
        Exhibit 266       Translation of                      78
18                        CNBMCO00011382-83 (HSBC
                          Global Banking e-mail to CAO
19                        Jianglin and Chang Zhangli
                          dated October 21, 2010 re:
20                        Invitation to meet with
                          Knauf)
21
        Exhibit 267       Partial Translation of              54
22                        CNBMCO000598-605 Working
                          Report Cao Jianglin
23
24
25
```

Confidential - Subject to Further Confidentiality Review

```
 1                      DEPOSITION EXHIBITS
                           JIANGLIN CAO
 2                        August 4, 2015

 3

 4    NUMBER                  DESCRIPTION             MARKED

 5    Exhibit 268    Wall Street Journal Article        118
                     "U.S. China Dialogue Pays
 6                   Dividends"

 7    Exhibit 273    Partial Translation                 11
                     CNBMCO0000631-644
 8                   Qualification Review Form for
                     Professional and Technical
 9                   Positions

10
      Exhibit 276    Timeline of Taishan               119
11                   Affiliates Doing Business in
                     the United States During the
12                   Contempt Period

13    Exhibit 282    FRE 1006 Summary Chart of          56
                     Documents Signed by Cao
14                   Jianglin

15    Exhibit 290    Translation of                     83
                     BNBMPLC-E-0154862
16                   8/11/2011 BNBM Request to
                     CNBM re: TG's Board of
17                   Directors

18

19

20

21

22

23

24

25
```

```
 1                        PROCEEDINGS

 2              (August 4, 2015 at 9:10 a.m.)

 3              THE VIDEOGRAPHER:  We're now on the

 4      record.  My name is Mark Ancalade, the

 5      videographer with Golkow Technologies.  Today is

 6      August the 4th, 2015, at the time indicated on

 7      the video screen, which is 9:10.

 8              This deposition is being held at 201

 9      St. Charles Avenue, Suite 4000 in New Orleans,

10      Louisiana, taken in the matter of

11      Chinese-Manufactured Drywall Products Liability

12      Litigation being heard before the United States

13      District Court, Eastern District of Louisiana.

14              The deponent is Cao Jianglin.

15              The counsel will be noted on the

16      stenographic record.

17              The court reporter is Micheal Johnson.

18      Would you please swear in the interpreter and

19      the witness, sir.

20              (Interpreter sworn.)

21              (Oath administered to the witness.)

22                  JIANGLIN CAO,

23          having been first duly sworn,

24              testified as follows:

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                      EXAMINATION

 2   BY MR. HERMAN:

 3       Q     Good morning, sir.  I'm Russ Herman.  I

 4   represent the plaintiffs who have filed this lawsuit.

 5   As we go through your deposition, I am going to refer

 6   to Taishan Gypsum Company, Limited, Taihe Dongxin

 7   Company, Limited, or Taishan Plasterboard Company,

 8   Limited, as Taishan.

 9               I'm going to refer during your

10   deposition to Beijing New Building Materials Public

11   Limited Company as BNBM or BNBM PLC.

12               MR. PFAEHLER:  Objection, form.

13   BY MR. HERMAN:

14       Q     As we go through your deposition, I'm going

15   to refer to Beijing New Building Materials Group as

16   BNBM Group, BNBM Group.

17               During your deposition I will refer to

18   China National Building Materials Company, Limited, as

19   CNBM.

20               During your deposition I'm going to

21   refer to China National Building Materials Group as

22   CNBM Group, or CNBMG.

23               During your deposition I'm going to

24   refer to China Triumph International Engineering

25   Company, Limited, as either China Triumph or CTIEC.
```

Confidential - Subject to Further Confidentiality Review

```
 1                    The terms which I just described, are

 2    they understandable by you in connection with your

 3    deposition?

 4                    MR. VEJNOSKA:  Objection, compound,

 5          vague and ambiguous.

 6                    Mr. Herman, just to be clear, if you

 7          just say "CNBM" or "BNBM," I will object as

 8          vague and ambiguous on the ground that it raises

 9          the possibility of confusion.

10                    MR. PFAEHLER:  Mr. Herman, could we have

11          our usual agreement that one defendant's

12          objections will count for all?

13                    MR. HERMAN:  Of course.

14                    MR. VEJNOSKA:  Thank you.

15                    MR. HERMAN:  You're welcome.

16                    Would you distribute, please,

17          Exhibit 273.

18                    (Deposition Exhibit 273 marked.)

19    BY MR. HERMAN:

20      Q     Exhibit 273 is a partial translation of

21    documents produced by CNBM Company, 631 through 644,

22    "Qualification Review Form for Professional and

23    Technical Positions," titled on the first page of the

24    document.  The date of filing is August 17th, 2007.

25                    Sir, Chairman Cao, did you cause this
```

Confidential - Subject to Further Confidentiality Review

1    document to be filled out?

2              MR. VEJNOSKA:  Mr. Herman, just for the

3         sake of the record, I have pointed the witness

4         to the Mandarin version of the document.

5    A    What was your question?

6    BY MR. HERMAN:

7    Q    Chairman Cao, did you cause this document to

8    be filled out?

9    A    I don't have a clear recollection.

10   Q    Well, I would ask you, then, to review it as

11   it has your name on Bates number CNBMCO631 at the top.

12   A    I see that.

13             MR. HERMAN:  Has the witness answered

14        the question?

15             THE INTERPRETER:  This is the

16        interpreter speaking.  Yes.  The witness said,

17        "I see that."

18   BY MR. HERMAN:

19   Q    Did you cause this document to be filled

20   out?

21   A    Yes.

22   Q    Then I'll ask you to turn to Bates page

23   CNBMCO -- it's the second page of this document,

24   page 633.

25   A    I see that.

```
 1      Q      At the bottom of the page it says,

 2   "Knowledge of foreign language(s) and the extent of

 3   the knowledge:  English, proficient in listening,

 4   speaking, reading, and writing."

 5                  Is that correct?

 6      A      That's what is written on there.

 7      Q      Was it true when it was written?

 8                  MR. VEJNOSKA:  Objection, vague and

 9        ambiguous.

10                  You may answer.

11      A      I understand some.

12   BY MR. HERMAN:

13      Q      Is it not true that an exam in English was

14   waived?  You may refer to page 641.

15                  MR. VEJNOSKA:  Objection, foundation,

16        vague and ambiguous.

17      A      It is true.

18   BY MR. HERMAN:

19      Q      Now, at page 635, did you accurately report

20   your work experience as of August 17th, 2007?

21                  MR. VEJNOSKA:  Objection, foundation,

22        compound.

23      A      You said -- well, what specifically are you

24   referring to?

25   BY MR. HERMAN:
```

1       Q       Well, we'll cover it all.  As of

2   August 2007, did you accurately report as of that date

3   your relationship to China National Building Material

4   Group Corporation?

5       A       Are you actually asking what was my position

6   in CNBMG in August of 2007?

7       Q       No.  I'm asking you if what you reported

8   is -- was correct at the time you reported it.

9       A       At the time I was the board of director of

10  CNBMG.

11      Q       Did you report correctly your relationship

12  to China Fiberglass Company, Limited, on this report?

13      A       At the time I was the chairman of the board

14  of China Fiberglass Company, Limited, as is written on

15  there.

16      Q       At the time that you made this report, did

17  you report accurately your relationship to Beijing New

18  Building Material Public Limited Company?

19              MR. VEJNOSKA:  Objection, foundation,

20          vague and ambiguous.

21      A       Which BNBM are you talking about?  Is it

22  BNBM PLC or BNBM Group?

23  BY MR. HERMAN:

24      Q       At the time you made this report, did you

25  report accurately your relationship to Beijing New

Confidential - Subject to Further Confidentiality Review

```
 1    Building Material Public Limited Company?

 2                    MR. VEJNOSKA:  Same objections.

 3        A      In 2007 I was the chairman of the board of

 4    BNBM Company, Limited.

 5    BY MR. HERMAN:

 6        Q      At the time that you made this report, did

 7    you report your relationship to China National

 8    Building Material Company, Limited, correctly?

 9                    MR. VEJNOSKA:  Same objections.

10        A      Are you talking about CNBM PLC?

11    BY MR. HERMAN:

12        Q      At the time you made this report, did you

13    accurately report your relationship to China National

14    Building Material Company, Limited?

15                    MR. VEJNOSKA:  Same objections.

16        A      At the time I was the president of CNBM

17    Company, Limited.

18    BY MR. HERMAN:

19        Q      I would like you to turn to page 637.  Did

20    you, from 2004 to 2007, as stated in this report,

21    undertake reorganizing and getting CNBM Company,

22    Limited, listed?

23        A      I was one of the executors.

24        Q      Would you please look at the column that

25    says, "Achievements and Effects."  Did you report that
```

 1    CNBM Company, Limited, became the most important

 2    building material manufacturer platform of CNBM Group

 3    Corporation?

 4       A     That's what the report says.

 5       Q     This is your report, correct?

 6       A     This form was filled out in accordance with

 7    the formats of China human resources department.

 8       Q     Did you review it before it was submitted?

 9             MR. VEJNOSKA:  Objection, foundation.

10       A     I should've reviewed it according to my

11    recollection.

12    BY MR. HERMAN:

13       Q     I would like you to look for April 2005, the

14    first column that says, "Reorganizing Shandong Taihe"

15    as the, "Name of Professional and Technical Work

16    (Project achievements, and etc.)"

17       A     I see that.

18       Q     Is your report in the third column as to

19    "Achievements and Effects" a correct report that,

20    quote, "This project made BNBM Company successfully

21    control Shandong Taihe.  BNBM Company became the 'king

22    of China gypsum board' in all aspects including the

23    brand, the quality, the technology, and the scale.

24    After the reorganization, the rate of investment

25    return reached around 20% in the first year"?

```
 1       A     I see that.

 2              MR. PFAEHLER:  Objection.

 3              MR. VEJNOSKA:  I'm going to pose an

 4       objection.  Misstates the document.

 5              MR. HERMAN:  What's misstated in the

 6       document?

 7              MR. VEJNOSKA:  Are you asking me?

 8              MR. HERMAN:  Yes.

 9              MR. VEJNOSKA:  You said exercise --

10       "successfully controls."  That's not even what

11       your own translation says.

12              MR. HERMAN:  I'll repeat the question.

13  BY MR. HERMAN:

14       Q     Did you accurately report, quote, "This

15  project made BNBM Company successfully control

16  Shandong Taihe.  BNBM Company became the 'king of

17  China gypsum board' in all aspects including the

18  brand, the quality, the technology, and the scale.

19  After the reorganization, the rate of investment

20  return reached around 20% in the first year"?

21              MR. VEJNOSKA:  Same objection, same

22       misstatement of your own translation.

23              MR. PFAEHLER:  Objection,

24       misrepresenting the document.

25              MR. HERMAN:  Please read, Translator,
```

Confidential - Subject to Further Confidentiality Review

 1          the Chinese Mandarin last column at page 637 at

 2          the bottom to the witness.

 3                    MR. VEJNOSKA:  Mr. Herman, are you

 4          asking her to read it in Mandarin to the witness

 5          or to translate it for us?

 6                    MR. HERMAN:  No, to read it to the

 7          witness so that the witness can be asked a

 8          question by the translator.

 9                    (Document read in Mandarin.)

10  BY MR. HERMAN:

11      Q     Question is did you report that accurately

12  on this report?

13                    THE INTERPRETER:  The interpreter will

14          read the Mandarin documents now.

15                    (Document read in Mandarin.)

16                    MR. VEJNOSKA:  I'm going to object.  We

17          have an unintelligible record because he's been

18          asked -- you have read him something -- asked

19          her to read him something in Mandarin and we do

20          not have an English question.

21                    MR. HERMAN:  I did ask an English

22          question.

23                    MR. VEJNOSKA:  And I'm going to ask the

24          translator to then read the -- translate the

25          actual Mandarin that you just read to the

```
 1          witness into English so that we have a record.

 2                  MR. HERMAN:  Okay.

 3                  MR. VEJNOSKA:  Thank you.

 4                  MR. HERMAN:  You're welcome.

 5                  MR. VEJNOSKA:  Madam Translator, I think

 6          what we have asked --

 7                  THE INTERPRETER:  Would you like the

 8          interpreter to --

 9                  MR. VEJNOSKA:  Yes.

10                  THE INTERPRETER: -- interpret the

11          Chinese into English?

12                  MR. VEJNOSKA:  Please.

13                  THE INTERPRETER:  The interpreter will

14          start interpreting now.

15                  MR. VEJNOSKA:  Thank you very much.

16                  THE INTERPRETER:  You're welcome.  "This

17          project caused BNBM successfully controlled the

18          equity of Shandong Taihe BNBM in all aspects,

19          such as brand, quality, technology, and scale to

20          become the 'king of Chinese gypsum board.'  The

21          return rate, after its reorganization" -- the

22          interpreter would like to reinterpret the last

23          sentence.  "The return on investment rate for

24          the first year after its reorganization reached

25          around 20%."
```

Confidential - Subject to Further Confidentiality Review

1              MR. VEJNOSKA:  Would you mark that,

2         please.

3              MR. HERMAN:  Ask the witness if the

4         witness reported that information correctly.

5              MR. VEJNOSKA:  Objection, foundation.

6      A     By the time of the report, I was exercising

7   my position as chairman of the board of director of

8   BNBM.  What it says here, "control the equity of

9   Shandong Taihe," is actually referring to that we have

10  controlled the majority shares of Shandong Taihe; not

11  control Shandong Taihe, but rather obtained majority

12  shares of Shandong Taihe.

13  BY MR. HERMAN:

14     Q     Would you turn to page 640 of that document

15  under the title "Records of Books, Papers, and

16  Important Technical Reports."

17     A     I see that.

18     Q     Do you see the statement that this report by

19  you was independently written?

20              MR. VEJNOSKA:  Objection, foundation.

21              MR. PFAEHLER:  Additional objections.

22     A     That's what it says here.

23  BY MR. HERMAN:

24     Q     Why did you write this report?

25              MR. VEJNOSKA:  Objection, foundation.

Confidential - Subject to Further Confidentiality Review

1           MR. PFAEHLER:  Additional objections.

2      A     It says here on the document the year 2007

3  was the tenth year of -- BNBM became public listed

4  company.

5  BY MR. HERMAN:

6      Q     Is that why you wrote the document?

7           MR. VEJNOSKA:  Same objections.

8      A     In commemorate of BNBM had become a public

9  listed company for ten years, that's correct.

10  BY MR. HERMAN:

11     Q     Okay.  And would you look at the first page

12  of that document, exhibit page 631.  Was this a

13  qualification review form for professional and

14  technical positions?

15     A     That's what the form says.

16     Q     Do you disagree with that statement that

17  this form was a qualification review form for

18  professional and technical positions?

19     A     That's what the form says.

20     Q     Do you agree with what the form says?

21           MR. VEJNOSKA:  Objection, asked and

22        answered, vague and ambiguous, foundation.

23     A     That's what the form says.

24  BY MR. HERMAN:

25     Q     Did you ever amend, delete or change any of

Confidential - Subject to Further Confidentiality Review

1    the verbiage in this form after it was finalized?

2        A     I don't have a clear recollection.

3        Q     This document was produced to the plaintiffs

4    in this lawsuit, or lawsuits, from CNBM Company,

5    Limited.  Is this a document that's prepared in

6    connection with the business activities of either CNBM

7    Company, Limited, or BNBM Company, Limited?

8                    MR. VEJNOSKA:  Objection, compound,

9         vague and ambiguous, calls for a legal

10        conclusion.

11       A     Can you specify your question?

12   BY MR. HERMAN:

13       Q     Yes.  Is this document, Exhibit 273, part of

14   the business records of either -- CNBM Company,

15   Limited?

16                    MR. VEJNOSKA:  Objection, vague and

17        ambiguous, calls for a legal conclusion.

18       A     I still don't understand what you mean.

19   BY MR. HERMAN:

20       Q     Do you know what a business record is?

21                    MR. VEJNOSKA:  Same objection.

22                    MR. PFAEHLER:  Additional objections.

23       A     What is "business record"?  Provide me with

24   a definition.

25                    MR. HERMAN:  Okay.  Let's call the

Confidential - Subject to Further Confidentiality Review

```
1          judge.  I'm going to recess.  And please make --

2          please make a note of the questions and answers.

3          I want to get the judge on the phone.

4                THE VIDEOGRAPHER:  Do you want to go off

5          the record, sir?

6                MR. HERMAN:  Not with the judge, no.

7                THE VIDEOGRAPHER:  The video?

8                MR. HERMAN:  No.

9                MR. VEJNOSKA:  Do you want to excuse the

10         witness for this part of it?

11               MR. HERMAN:  I don't know why.

12               MR. VEJNOSKA:  I don't think he needs to

13         hear argument with the judge.  He's here to

14         provide testimony.

15               MR. HERMAN:  Are you asking me if the

16         witness may be excused?

17               MR. VEJNOSKA:  I'm telling you that I

18         would like to excuse the witness.

19               MR. HERMAN:  Okay.  It's your choice.

20               MR. VEJNOSKA:  Thank you.

21               (Witness excused.)

22               MR. EAGAN:  Russ, I've got a phone down

23         over here that's got a speaker.  I see you folks

24         have a lot of cell phones.  Whatever you want to

25         do is okay with me.
```

```
1                   MR. HERMAN:  What I want to do is get
2           the clerk on the phone and find out when the
3           judge can entertain this --
4                   MR. EAGAN:  Something's on the calling
5           line, so I suggest that phone in the corner is
6           available, if you want to call the clerk and get
7           the judge.
8                   MR. HERMAN:  Why don't we just...
9                   (The following proceedings held via
10          teleconference with Judge Fallon:)
11                  THE CLERK:  Good morning.  Judge
12          Fallon's chambers.
13                  MR. HERMAN:  Eliza, this is Russ Herman.
14                  THE CLERK:  Just a moment.
15                  MR. HERMAN:  Thank you.  Eliza, this is
16          Russ Herman.  I'm in a deposition with Tim
17          Eagan's office, with Chris Vejnoska and
18          Mr. Stengel representing the witness, Mr. Cao --
19          Chairman Cao, and we are going to need the judge
20          to give -- to listen and to give an instruction
21          at some point today to the witness.  And if you
22          can ask the judge or advise us as to when he may
23          entertain the issue, then we'll either do it now
24          or make a list of issues and we'll call the
25          judge with all the issues at whatever time he'd
```

Confidential - Subject to Further Confidentiality Review

1        like.

2                  THE CLERK:  Okay.  Fine.  Let me put you

3        on hold for one second.

4                  MR. HERMAN:  Sure.

5                  THE CLERK:  Can I have a number to call

6        you back at?

7                  MR. HERMAN:  Okay.  We're in Mr. Eagan's

8        office, and the number --

9                  MR. EAGAN:  582-1111.

10                 THE CLERK:  I'm sorry.  Can you say it a

11       little louder.

12                 MR. HERMAN:  582-1111.

13                 MR. EAGAN:  Ask for the board room.

14                 THE CLERK:  582-1111?

15                 MR. HERMAN:  Yes.

16                 MR. VEJNOSKA:  And ask for the board

17       room.

18                 MS. DUGGAN:  And ask for the board room.

19                 THE CLERK:  Board room.  Okay.

20                 MR. HERMAN:  I only have two days for

21       this deposition, so I'm going to ask the witness

22       to come back in and continue questioning the

23       witness until we know when the judge can

24       entertain us.

25                 THE CLERK:  Okay.  I'll talk to him as

Confidential - Subject to Further Confidentiality Review

1         soon as possible and get right back to you.

2                 MR. HERMAN:  Thank you.

3                 THE CLERK:  Okay.  Thanks.  Bye.

4                 (Teleconference ended.)

5                 MR. HERMAN:  I need you to mark the last

6         five questions and answers.

7                 (Witness re-enters conference room.)

8                 MR. HERMAN:  I'm going to offer in the

9         deposition --

10                (The following proceedings held via

11        teleconference with Judge Fallon:)

12                THE CLERK:  Good Morning, Judge Fallon's

13        chambers.

14                MR. HERMAN:  Yeah, this is Russ Herman.

15                THE CLERK:  Hey, Mr. Herman.

16                MR. HERMAN:  Chris is with us.  We told

17        the judge that we would call right back.

18                THE CLERK:  Okay.  So you want to speak

19        to the judge?

20                MR. HERMAN:  Yes.

21                THE CLERK:  Okay.  Just a moment.

22                JUDGE FALLON:  Hello, this is Judge

23        Fallon again.

24                MR. HERMAN:  Hello, Judge Fallon.  Good

25        morning.  We're in the deposition of Chairman

```
 1          Cao who currently we understand from records is

 2          the chairman of BNBM Group -- sorry, is

 3          currently the chairman of the supervisory

 4          committee of BNBM Group, and also is president

 5          of CNBM Company, Limited, and chairman of the

 6          supervisory committee of BNBM PLC.

 7              I'm questioning the witness from

 8          Exhibit 273 produced by CNBM Company, Limited,

 9          with its Bates number 631 to 644.  I've been

10          through a series of questions and I've asked the

11          witness, quote, "Do you know what a business

12          record is?"

13              Mr. Vejnoska objects, Mr. Pfaehler

14          objects, and the witness says, "What is a

15          business record?  Provide me with a definition."

16              I think that it's a nonresponsive

17          answer, and I would like the witness to respond

18          whether or not the document which he produced

19          and which CNBM produced, Exhibit 273, is a

20          business record of CNBM Company, Limited, or

21          BNBM Company, Limited.

22              MR. VEJNOSKA:  Your Honor -- Mr. Herman,

23          if you're finished --

24              JUDGE FALLON:  I understand the issue.

25          The business record deals with an evidence or an
```

Confidential - Subject to Further Confidentiality Review

```
 1          803(6).  It's records of regularly conducted

 2          activity.  I think the term "business records"

 3          is a technical term.  It's used by we lawyers,

 4          but oftentimes it's not -- when we use a

 5          business record, we mean that it's a record of

 6          regularly conducted activity kept in the course

 7          of -- in the regular course of business, and all

 8          of the definitions that come under 803(6), which

 9          is the records of regularly conducted activity,

10          we call it business records and therefore

11          they're introducible into evidence as an

12          exception to the hearsay rule.

13                But outsiders, they don't know the full

14          extent of business records.  I sustain the

15          objection, Counsel, of defendants.  I think the

16          way in handling it is to ask this witness what

17          is it -- is it kept in the regular course of

18          business?  Who kept it?  Who keeps it?  And go

19          into the definition that we use as a business

20          record.

21                The term "business records," we use it

22          so frequently that we think everybody knows.

23          But occasionally lawyers -- nonlawyers don't

24          know what exactly a business record is.  So I

25          will sustain the objection, but I will allow
```

Confidential - Subject to Further Confidentiality Review

```
 1          counsel to go into the definition of it.  Is

 2          this a record produced in the regular course of

 3          business?  Do you keep this in the regular

 4          course of business?  What do you do with it?

 5          Things of that sort.

 6               And then if it's -- it fits into the

 7          definition of the 803(6), it will be termed a

 8          business record and admissible.

 9               But from the standpoint of definition in

10          questioning a nonlawyer, I think you have to

11          explain what you're looking for.

12               MR. VEJNOSKA:  Your Honor, this is Chris

13          Vejnoska representing CNBM.  We obviously have

14          no problem and have had no problem with

15          Mr. Herman asking exactly the type of specific

16          factual questions that you have suggested.

17               Frankly, the witness just didn't know

18          exactly what business record meant other than --

19               JUDGE FALLON:  Gotcha.

20               MR. VEJNOSKA:  So thank you for your

21          ruling.

22               MR. HERMAN:  And I appreciate the

23          ruling.  Since I only have two days with this

24          witness and a lot of exhibits to identify, I was

25          trying to shortcut it.
```

```
 1                    JUDGE FALLON:  Yeah, I know.

 2                    MR. HERMAN:  We'll just move on.

 3                    JUDGE FALLON:  And I think counsel --

 4          both counsel has the understanding of that.

 5          We're trying to accommodate the chairman.  We're

 6          trying to accommodate the plaintiffs and counsel

 7          in general.  So let's see if we can deal with it

 8          so that it's more -- it's efficient but at the

 9          same time understandable from the plaintiffs --

10          from the witness' standpoint.  Thank you all,

11          both.

12                    MR. HERMAN:  Thank you, Judge.

13                    MR. VEJNOSKA:  Thank you, Judge.

14                    (Teleconference ended.)

15     BY MR. HERMAN:

16          Q    Would you look at Exhibit 273 in the

17     Mandarin.  Is this a document that was prepared in the

18     regular course of activity of CNBM?

19                    MR. VEJNOSKA:  Objection, foundation,

20          vague and ambiguous.

21          A    According to my recollection, the document

22     was prepared in the process of applying for senior

23     CPA.

24     BY MR. HERMAN:

25          Q    And where was this document maintained?  Who
```

 1   had copies of it?

 2      A     I believe the original of the document had

 3   been given to the People's Republic of China human

 4   resources department.

 5      Q     And where is the human resources department

 6   located in 2007?

 7      A     I don't know.

 8      Q     Today who is in charge of the human

 9   resources department?

10            MR. VEJNOSKA:  Objection, vague and

11        ambiguous.

12            For the PRC?

13   BY MR. HERMAN:

14      Q     Well, let's start with who's in charge of

15   the human resources department of CNBM Company,

16   Limited?

17      A     Are you talking about the human resources

18   department of the company?

19   BY MR. HERMAN:

20      Q     Yes.

21      A     Mr. Chang Zhangli is in charge of this

22   department as vice president.

23      Q     How long has he been in charge of this

24   department?

25      A     For a few years already.

1    Q    Is a copy of this document maintained in the

2  human resources department of CNBM Company, Limited?

3    A    I think so, but I'm not sure.

4    Q    I'd have to ask the person you just

5  mentioned in order to get an answer from someone that

6  may know more than you know?

7    A    Regarding what information?

8    Q    Regarding whether there is a document like

9  this, a copy of Exhibit 273, maintained in the CNBM

10  Company, Limited, human resources department.

11    A    Yes.

12    Q    Can you give me his address -- his business

13  address, please.

14    A    Chang Zhangli's work address.  Send it to

15  CNBM Company, Limited.  It is the same address as CNBM

16  Company, Limited.

17    Q    And what is that address?

18    A    Beijing City, Haidian District, Guohai

19  Square, CNBM Company, Limited.

20        MR. VEJNOSKA:  Mr. Herman, we've been

21      going for about an hour, but given the

22      interruption, I suggest maybe we go for a few

23      more minutes before we take a break unless you

24      want to take a break now.

25        MR. HERMAN:  No, I don't want to take a

Confidential - Subject to Further Confidentiality Review

 1          break yet, but I will in a moment.

 2                  I'm going to offer Exhibit 273 at this

 3          point.

 4                  We can take a break now.

 5                  THE VIDEOGRAPHER:  This is the end of

 6          tape 1.  We're now off the record at 10:13.

 7                  (Recess Taken From 10:13 a.m. To

 8                  10:26 a.m.)

 9                  THE VIDEOGRAPHER:  This is the beginning

10          of tape 2.  We're now back on the record.  The

11          time is 10:26.

12                  (Deposition Exhibit 13 marked.)

13                  (Deposition Exhibit 13-A marked.)

14                  (Deposition Exhibit 23-1 marked.)

15     BY MR. HERMAN:

16       Q    I would like to direct your attention to

17     Exhibit 13-A in Exhibit 13.

18                  MR. HERMAN:  We have copies for the

19          witness, for the interpreter and for counsel.

20          This will be easier to handle.  Tab 5.

21                  For the record, I've just handed the

22          witness Exhibit 13, 13-A, tab 5; also a

23          compilation in 23 -- Exhibit 23-1.

24     BY MR. HERMAN:

25       Q    I would like the witness to look, please, at

1    page 87 in Mandarin.

2        A      I see that.

3        Q      Would you please read page 87 to yourself,

4    sir.

5        A      Do you want me to read out loud?

6        Q      I would like you to read page 87 to yourself

7    where your name appears -- the paragraph in which your

8    name appears, Chairman Cao.

9                (Witness Reviews Document.)

10       A      I've read it.

11   BY MR. HERMAN:

12       Q      To the best of your present knowledge, is

13   the report under your name, Chairman Cao, in the

14   annual report of CNBM Company, Limited, at page 88

15   correct?

16                MR. VEJNOSKA:  Objection, compound.

17       A      Regarding my work experience, it is what it

18   is written on the report.

19                MR. HERMAN:  Would you please distribute

20        to counsel and the translator Exhibit No. 265.

21        Also please provide the witness with a copy.

22                (Deposition Exhibit 265 marked.)

23   BY MR. HERMAN:

24       Q      Is it true that -- from April 1998 to

25   October 2005, that you were BNBM Group vice chairman?

Confidential - Subject to Further Confidentiality Review

1      A     It is not completely correct.

2      Q     Would you please give it completely correct.

3      A     First of all, I was the assistant to the

4   general manager of BNBM Group, and afterwards I was

5   the deputy general manager, and after that I was the

6   general manager, and after that I was the deputy

7   chairman of the board.

8      Q     Is it true --

9            MR. PFAEHLER:  May I have -- before we

10        start on the next question, we would like to

11        object to Exhibit 265.  There's at least --

12        there's at least two factual matters in it that

13        are incorrect.

14           MR. HERMAN:  Okay.  Your objection's

15        noted.

16   BY MR. HERMAN:

17     Q     Is it true that -- from at least 2005

18   through date, that you have been chairman of CNBM

19   Investment Company?

20     A     Until August last year.

21     Q     Is it true that -- from some time in 2002

22   until the current date, that you have been chairman of

23   China Jushi, J-u-s-h-i, formerly known as China

24   Fiberglass?

25     A     Yes.

```
 1      Q       Is it true that, since September 2004 until

 2   the present time, you have been a director of China

 3   Composites?

 4      A       Yes.

 5      Q       Is it true that, since September 2004 to the

 6   present date, you have been a director of China

 7   Triumph?

 8      A       China Triumph Engineering Company, Limited,

 9   director, that's correct.

10      Q       Is it true that -- from October 2004 to

11   August 2009, that you were chairman of BNBM Company

12   PLC?

13              MR. PFAEHLER:  Objection to form.

14      A       BNBM Company PLC's chairman, that's correct.

15   BY MR. HERMAN:

16      Q       Is it true that -- during the years of 2005

17   and 2006, that you were vice chairman of BNBM Group?

18              MR. VEJNOSKA:  Objection, vague and

19       ambiguous.

20      A       The vice chairman of BNBM Group, that's

21   correct.

22   BY MR. HERMAN:

23      Q       Is it true that, in the years 2005 to 2011,

24   you were a supervisor of Taishan Gypsum?

25      A       According to my recollection, that is
```

Confidential - Subject to Further Confidentiality Review

1    correct.

2        Q      And is it true that, from 2005 to some time

3    in 2011, you were chairman of the supervisory

4    committee of Taishan Gypsum?

5        A      That is correct, according to my

6    recollection.

7        Q      And in 2005 is it true that you were general

8    manager of BNBM Group?

9        A      I'm sorry, which company's general manager?

10       Q      BNBM Group.

11       A      In 2005?

12       Q      Yes.

13       A      For a period of time, but I do not have a

14   clear recollection on the specific time.

15       Q      Is it true that, from some time in March of

16   2005 to the present date, that you were and are

17   executive director of CNBM Company, Limited?

18       A      Yes.

19       Q      Is it true that, from March 2005 to the

20   present time, you are and have been president of CNBM

21   Company, Limited?

22       A      You're referring to the president of the

23   company limited?

24       Q      Yes.

25       A      Yes.

```
 1      Q     Is it true that, from May 2005 to

 2  August 2009, you were secretary to the party committee

 3  of BNBM PLC?

 4              THE INTERPRETER:  May the interpreter

 5         inquire the deponent of a title that he just --

 6         he had just uttered?  May I?

 7              MR. HERMAN:  Yes.

 8      A     I was the secretary to the party committee,

 9  but I do not remember the specific time period.

10  BY MR. HERMAN:

11      Q     Is it true that, from August 2005 until

12  today, you have been chairman and are chairman of the

13  supervisory committee of BNBM Group?

14      A     Yes.

15      Q     Is it true that, from October 2005 to the

16  present date, you have been a director of CNBM Group?

17      A     Yes.

18      Q     Is it true that, from September 2007 to the

19  present date, you have been chairman of South Cement

20  Company?

21              MR. VEJNOSKA:  Objection, vague and

22         ambiguous.

23      A     Are you referring to South Cement Company,

24  Limited?

25  BY MR. HERMAN:
```

Confidential - Subject to Further Confidentiality Review

```
1      Q     Yes.

2      A     Yes.

3            MR. VEJNOSKA:  Same objection.

4   BY MR. HERMAN:

5      Q     Is it true that, from March 2009 through

6   today, you have been chairman of North Cement Company,

7   Limited?

8            MR. VEJNOSKA:  Objection, vague and

9        ambiguous.

10     A     Chairman of North Cement Company, Limited,

11  that's correct.

12  BY MR. HERMAN:

13     Q     Is it true that, from September 2009 through

14  today, you have been and are chairman of the

15  supervisory committee of BNBM PLC?

16           Is it true that, beginning in December

17  of 2011 to the present date, you have been a director

18  of China United Company, Limited?

19     A     The director of China United Cement Company,

20  Limited.

21     Q     Is it true that, since December 2011 to the

22  present date, you have been chairman of Southwest

23  Cement Company, Limited?

24           MR. VEJNOSKA:  Objection, vague and

25        ambiguous.
```

Confidential - Subject to Further Confidentiality Review

1      A      Chairman of Southwest Cement Company,

2    Limited, that's correct.

3    BY MR. HERMAN:

4      Q      In 2004 and 2005, were you chairman of the

5    supervisory committee of BNBM Company PLC?

6                 MR. PFAEHLER:  Objection to form.

7      A      I'm sorry, I did not hear you clearly.

8    BY MR. HERMAN:

9      Q      In the years 2004 and 2005, at any time were

10   you chairman of the supervisory committee of BNBM

11   Company PLC?

12                MR. PFAEHLER:  Objection.

13     A      Are you talking about BNBM PLC?

14   BY MR. HERMAN:

15     Q      Yes.

16                MR. PFAEHLER:  Same objection.

17     A      No.

18   BY MR. HERMAN:

19     Q      Do you know who was serving as chairman of

20   the supervisory committee of BNBM in the years 2004

21   and 2005?

22                MR. VEJNOSKA:  Objection, vague and

23          ambiguous.

24     A      Which BNBM you're referring to?

25   BY MR. HERMAN:

Confidential - Subject to Further Confidentiality Review

```
1        Q       BNBM Company.

2        A       Which BNBM Company?

3        Q       BNBM Company PLC.

4        A       Are you referring to the public listing

5   company?

6        Q       Yes.

7        A       I don't have a clear recollection on that.

8        Q       Since April 2014 to the present date, have

9   you been general manager of CNBM Group?

10       A       Yes.

11       Q       Were you chairman of CNBM Investment

12  Company, formerly known as BND Company, at the time

13  Judge Fallon issued, on July 17th, 2015, a contempt

14  order?  That's a misstatement of the question and I'll

15  withdraw the question and re-ask it.

16               Is it true that at the time Judge

17  Fallon issued a contempt order on July 17, 2014, that

18  you were chairman of the CNBM Investment Company,

19  formerly known as BND Company?

20               MR. VEJNOSKA:  Objection, vague and

21          ambiguous.

22       A       Were you asking whether I was the chairman

23  of CNBM Investment Company in July of 2014?

24  BY MR. HERMAN:

25       Q       Yes.
```

Confidential - Subject to Further Confidentiality Review

1           MR. VEJNOSKA:  Same objection.

2      A     Yes, but I resigned in August.

3  BY MR. HERMAN:

4      Q     When did you resign?

5      A     I do not remember clearly the exact time.

6      Q     Was it in October of 2014 that you resigned

7  as chair -- as chairman of CNBM Investments?

8           MR. VEJNOSKA:  Objection, asked and

9        answered, argumentative, vague and ambiguous.

10     A     What month and what company?

11  BY MR. HERMAN:

12     Q     October CNBM Investments in the year 2014.

13          MR. VEJNOSKA:  Same objections.

14     A     That's not correct.

15  BY MR. HERMAN:

16     Q     What is your best recollection of when you

17  retired as chairman of CNBM Investments in 2014?

18          MR. VEJNOSKA:  Objection, asked and

19        answered, vague and ambiguous.

20     A     I resigned from the position of chairman in

21  either July or August, but I do not have a clear

22  recollection on the exact time.

23  BY MR. HERMAN:

24     Q     Was it -- was your resignation from CNBM

25  Investment as chairman after Judge Fallon ruled and

Confidential - Subject to Further Confidentiality Review

```
 1   made a contempt order?

 2              MR. VEJNOSKA:  Objection, asked and

 3         answered.

 4      A    I don't have a clear recollection.

 5   BY MR. HERMAN:

 6      Q    Was it after July of 2014?

 7              MR. VEJNOSKA:  Objection, asked and

 8         answered.

 9      A    I don't have a clear recollection.

10   BY MR. HERMAN:

11      Q    Who took your place after you resigned?

12      A    The current chairman is a gentleman called

13   Cai Guobin.

14      Q    And where is his office in China today?

15      A    S-h-e-n-z-h-e-n, Shenzhen.

16      Q    And do you know the address of that office?

17      A    Shenzhen City, Luohu District, Guomao

18   building.

19      Q    Is it true that you were chairman of China

20   Jushi, J-u-s-h-i, at the time Judge Fallon issued a

21   contempt order on July 17, 2014?

22              MR. VEJNOSKA:  Objection, asked and

23         answered, vague and ambiguous.

24      A    I have always been the chairman of the board

25   of China Fiberglass Company, presently known as Jushi
```

Confidential - Subject to Further Confidentiality Review

```
 1   Company, ever since the year 2002 until present time.

 2   BY MR. HERMAN:

 3       Q     During what month in the year 2014 did you

 4   learn of the contempt order and injunction issued by

 5   Judge Fallon?

 6                 MR. VEJNOSKA:  Objection, foundation.

 7       A     According to my recollection it should be

 8   sometime in July or August.

 9   BY MR. HERMAN:

10       Q     Of 2014?

11       A     2014.

12       Q     After learning of the injunction order

13   issued by Judge Fallon, what notification, if any, did

14   you give to CNBM Investments, also known as BND

15   Company, of the injunctive order?

16       A     No.

17       Q     What notice -- after you learned of Judge

18   Fallon's injunction order in July of 2014, what notice

19   did you give to China Jushi of that injunctive order?

20                 MR. VEJNOSKA:  Objection, vague and

21         ambiguous.

22       A     No.

23   BY MR. HERMAN:

24       Q     After you learned of Judge Fallon's

25   injunction order in July of 2014, what notice did you
```

Confidential - Subject to Further Confidentiality Review

```
 1    give of the injunctive order to CNBM Company, Limited?

 2                    MR. VEJNOSKA:  Same objection,

 3          foundation.

 4        A     No.

 5    BY MR. HERMAN:

 6        Q     After you learned of the injunction order

 7    issued by Judge Fallon in July of 2014, what notice

 8    did you give to CNBM Group?

 9                    MR. VEJNOSKA:  Same objections.

10        A     No.

11    BY MR. HERMAN:

12        Q     After you learned of Judge Fallon's

13    injunctive order in July of 2014, what notice did you

14    give to BNBM Group?

15                    MR. VEJNOSKA:  Same objections.

16    BY MR. HERMAN:

17        Q     What related companies to CNBM Company did

18    you give notice of Judge Fallon's injunction of

19    July 2014?

20                    MR. VEJNOSKA:  Objection, vague and

21          ambiguous, calls for a legal conclusion.

22        A     I don't know the legal definition of

23    "related companies."

24    BY MR. HERMAN:

25        Q     Any company -- the definition I will give
```

Confidential - Subject to Further Confidentiality Review

1    you is any company in which CNBM Company held 25

2    percent of the stock.

3        A    When you said "CNBM," we're referring to the

4    group or the PLC?

5        Q    The PLC.

6        A    No.  No notices were given.

7        Q    After Judge Fallon issued his injunction in

8    July of 2014, what notice did you give to any related

9    companies of CNBM Group of the injunction?

10              MR. VEJNOSKA:  Objection, vague and

11        ambiguous, calls for a legal conclusion.

12              MR. PFAEHLER:  And asked and answered.

13       A    May I ask the legal definition of "related

14   companies"?

15   BY MR. HERMAN:

16       Q    Yes.  Any company in which CNBMG owned 25

17   percent the stock.

18       A    No.

19       Q    After Judge Fallon issued his injunction

20   order in July of 2014, what notice did you give BNBM

21   Group of the injunction order?

22              MR. PFAEHLER:  Objections.

23       A    No.

24   BY MR. HERMAN:

25       Q    After Judge Fallon issued the injunction

1    order of July 2014, what notice did you give of any

2    related party of BNBM PLC?

3              MR. VEJNOSKA:  Objection, vague and

4        ambiguous, calls for a legal conclusion.

5     A    May I ask what is "related company"?

6    BY MR. HERMAN:

7     Q    Company in which BNBM PLC owned at least 25

8    percent of the stock.

9     A    No.

10    Q    What subsidiaries, as defined in the CNBM

11   annual report, did you notify -- strike that.

12             What subsidiaries of CNBM in accord

13   with the definition in the CNBM PLC annual report did

14   you notify of Judge Fallon's injunctive order in

15   July 2014?

16             MR. VEJNOSKA:  Objection, vague and

17        ambiguous, calls for a legal conclusion.

18    A    I'm not sure the accurate legal meaning of

19   "subsidiaries" you just mentioned.

20   BY MR. HERMAN:

21    Q    As chairman of the supervisory committee of

22   BNBM Group in July 2014, what did you understand, in

23   your own knowledge, what subsidiaries there were of

24   BNBM Group in July of 2014?

25             MR. VEJNOSKA:  Same objection.

1       A      I'm not sure the legal definition of

2   "subsidiary companies."

3   BY MR. HERMAN:

4       Q      In July 2014 in what companies did CNBM

5   Company own a controlling interest?

6                  MR. VEJNOSKA:  Same objections.

7       A      Which CNBM you were referring to?

8   BY MR. HERMAN:

9       Q      CNBM Company.

10      A      We're referring to the group or the PLC

11  company?

12      Q      PLC.

13                 MR. VEJNOSKA:  Same objections.

14      A      May I ask the legal definition of

15  "controlling interest"?

16  BY MR. HERMAN:

17      Q      I'm not allowed to ask you the legal

18  definition.  I'm only allowed to ask you what your

19  understanding was of a subsidiary.

20                 MR. PFAEHLER:  Objection, vague and

21          ambiguous.

22                 MR. VEJNOSKA:  Calls for a legal

23          conclusion.

24      A      I'm not sure of the legal definition of

25  "subsidiary companies."

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. HERMAN:

 2       Q    What companies in which CNBM Company,

 3   Limited, did CNBM Company, Limited, own a stock

 4   interest in in July of 2014?

 5              MR. PFAEHLER:  Objection.

 6       A    We own 100 percent -- I'm sorry.  PLC

 7   company owns 100 percent of United Cement Company.

 8   According to my recollection, 70 percent of South

 9   Cement Company.  70 percent of Northern Cement Company

10   according to my recollection.  45 percent of BNBM

11   Company, Limited.  100 percent of China Compository

12   Company.  Approximately 90 percent of China Triumph

13   Engineering Company, but I do not have a clear

14   recollection on the exact percentage.  100 percent of

15   China Building Material Investment Company.

16   Approximately 34 percent of China Jushi Company.

17   That's all I can remember right now.

18   BY MR. HERMAN:

19       Q    Which of those companies did you send a

20   notice to about Judge Fallon's injunction of

21   July 2014?

22              MR. VEJNOSKA:  Objection, asked and

23         answered, compound.

24       A    No.

25   BY MR. HERMAN:
```

Confidential - Subject to Further Confidentiality Review

1      Q      In July of 2014 what companies did BNBM PLC

2  own an interest?

3      A      You're referring to BNBM PLC?

4      Q      Yes.

5      A      As far as I know it owns 65 percent shares

6  of Taishan Gypsum.  I don't have a clear recollection

7  on others.

8      Q      In July of 2014 what companies did BNBMG own

9  an interest in?

10             MR. PFAEHLER:  Objection, foundation.

11     A      BNBM Group?

12  BY MR. HERMAN:

13     Q      Yes.

14     A      It owns certain shares of CNBM Company,

15  Limited, but I do not have a clear recollection of the

16  exact number.

17     Q      Any other companies that BNBMG owned an

18  interest in in July of 2014?

19             MR. PFAEHLER:  Objection to form.

20     A      I don't know.

21  BY MR. HERMAN:

22     Q      In July of 2014 what companies did CNBM

23  Group own an interest in?

24     A      CNBMG directly or indirectly owns

25  approximately 44 percent of CNBM's shares.  CNBMG owns

```
 1    100 percent of the stocks of CNBM Research Institute.

 2    CNBM Group directly or indirectly owns 100 percent of

 3    BNBMG's shares.  CNBMG owns 100 percent of CNBM Import

 4    & Export Company.  This is as far as I can remember

 5    right now.

 6         Q     Other than CNBM -- strike that.

 7               Other than CNBM Company, Limited,

 8    which companies in which CNBMG owns stock did you

 9    notify of Judge Fallon's injunction of July 2014?

10         A     No.

11         Q     Was there any written directive or e-mail,

12    to your knowledge, in which companies owned by CNBMG

13    received Judge Fallon's injunctive order?

14               MR. VEJNOSKA:  Mr. Cao, I will instruct

15          you in answering that question, which you may

16          answer, to exclude any communications from or

17          with attorneys for those companies.

18               MR. HERMAN:  In that connection, if

19          there is some written communication or e-mail

20          from a CNBM Company, Limited, or CNBMG attorney,

21          we have not yet received a privilege log

22          specifying same and therefore it may be

23          necessary to recall a -- either Chairman Cao or

24          a 30(b)(6) representative in connection with

25          anything listed on a privilege log that relates
```

Confidential - Subject to Further Confidentiality Review

1        to this question.  So I'm going to have him --

2        give him professional courtesy.  As to intent,

3        I'm going to rephrase the question.

4    BY MR. HERMAN:

5        Q    Other than any attorney, do you know of any

6    written notice or e-mail that CNBMG gave to any

7    business in which it owned an interest of Judge

8    Fallon's injunction of July 2014?

9             MR. VEJNOSKA:  Objection, asked and

10        answered.

11        A    No.

12    BY MR. HERMAN:

13        Q    Do you know -- other than any attorney, do

14    you know of any written notice or e-mail that CNBM

15    Company, Limited, gave to any business in which it

16    owned an interest of Judge Fallon's injunction of

17    July 2014?

18             MR. VEJNOSKA:  Objection, asked and

19        answered.

20             MR. PFAEHLER:  And vague and ambiguous.

21        A    No.

22    BY MR. HERMAN:

23        Q    Do you know of -- other than a -- from an

24    attorney, do you know of any written notice or e-mail

25    that BNBMG gave to any business in which it owned an

1    interest of Judge Fallon's injunction of July 2014?

2              MR. VEJNOSKA:  Objection, asked and

3         answered.

4    A    No, according to what I know.

5  BY MR. HERMAN:

6    Q    Other than an attorney, do you know of any

7  written notice or e-mail that BNBM PLC gave to any

8  company in which it owned an interest of Judge

9  Fallon's injunction of July 2014?

10             MR. VEJNOSKA:  Objection, asked and

11        answered.

12             MR. PFAEHLER:  Vague, ambiguous and

13        confusing.

14   A    I don't know.

15             MR. VEJNOSKA:  Mr. Herman, when you

16        reach a convenient point, if we can take a very

17        brief break, that would be great.

18             MR. HERMAN:  Right now is fine.

19             MR. VEJNOSKA:  Thank you.

20             THE VIDEOGRAPHER:  This is the end of

21        tape 2.  We're now off the record, 11:34.

22             (Recess Taken From 11:34 a.m. To

23             11:50 a.m.)

24             THE VIDEOGRAPHER:  This is the beginning

25        of tape 3.  We're now back on the record.  The

1        time is 11:50.

2   BY MR. HERMAN:

3        Q    Chairman Cao, I understand I asked you a

4   question and I didn't wait for an answer, so I'm going

5   to -- may be a repetitive question --

6              MR. VEJNOSKA:  I'm sorry, it's too late,

7        Mr. Herman.

8              MR. HERMAN:  I know.  I know.

9              MR. VEJNOSKA:  Go right ahead.

10             MR. HERMAN:  Given my age, you know, I'm

11        very forgetful of many different things.

12  BY MR. HERMAN:

13       Q    Is it correct that, from some time in

14  September 2009 to the present day, you have been and

15  are chairman of the supervisory committee of BNBM PLC?

16       A    Yes.

17       Q    Thank you.

18             MR. HERMAN:  One or more of the counsel

19        on behalf of all counsel made an objection to

20        Exhibit 265, which was proper, so we're not

21        going to offer it.  And we'll conform that

22        exhibit to the witness' testimony under oath

23        here and we'll offer it at -- after it's been

24        conformed.

25             (Deposition Exhibit 267 marked.)

Confidential - Subject to Further Confidentiality Review

```
 1                  MR. HERMAN:  I would like to show the
 2          witness and all counsel Exhibit 267, which is a
 3          partial translation of CNBM Company document
 4          Bates numbers 598 to 605, and attached to it in
 5          Mandarin are the same pages.
 6                  (Witness Reviews Document.)
 7      A      I browsed through the document.
 8  BY MR. HERMAN:
 9      Q      Chairman Cao, did you author the work report
10  identified as Exhibit 267?
11      A      It was prepared by my office and reviewed by
12  me.
13      Q      Was it prepared about the time that it was
14  reviewed by you?
15      A      The office prepared it first and I reviewed
16  it afterwards.
17      Q      How soon after it was prepared did you
18  review it?
19      A      About within a week.
20      Q      Was it reviewed by you in your capacity as
21  an executive of CNBM Company?
22      A      Reviewed the report as the president of CNBM
23  Company, Limited, as well as other positions that I
24  hold.
25      Q      The document says in the report that it was
```

1    under the correct leadership of CNBM Group.  Who were

2    the members of the leadership of CNBM Group at the

3    time this was prepared?

4        A    CNBM Group, right?

5        Q    Correct.

6        A    The chairman of the board is Mr. Song

7    Zhiping.

8        Q    And is this the type of record which

9    normally is maintained by CNBM, CNBM Group?

10       A    Are you referring to this report?

11       Q    Yes.

12       A    This report is maintained by CNBM Company,

13   Limited.

14       Q    Would you look at --

15            MR. HERMAN:  Well, in connection with

16        the testimony of the witness, I'm going to offer

17        Exhibit 267.

18            MR. VEJNOSKA:  And, again, that -- as

19        before we reserve all of our objections until

20        the time that it needs to be decided on by the

21        court.

22            MR. HERMAN:  Sure.

23            MR. VEJNOSKA:  Thank you.

24            MR. PFAEHLER:  And we do as well.

25            (Deposition Exhibit 282 marked.)

Confidential - Subject to Further Confidentiality Review

```
 1              MR. HERMAN:  Let's distribute

 2       Exhibit 282.  And while we're distributing

 3       those, I'll make an identification for the

 4       record.

 5              Tab 1 are pages from the 2004 BNBM

 6       Annual Report.

 7              Tab 2 are pages from Exhibit 136, the

 8       2005 BNBM Annual Report.

 9              Tab 3 is previously introduced

10       Exhibit 14 from the 2006 BNBM Annual Report.

11              Tab 4 is Exhibit 15 from the BNBM Annual

12       Report of 2007.

13              Tab 5 is Exhibit 16 from the BNBM Annual

14       Report of 2008.

15              Tab 6 is Exhibit 25 from the May 28,

16       2010, CNBM Overseas Regulatory Announcement.

17              Tab 7 is previously introduced as

18       Exhibit 27.  It's from July 17, 2014, CNBM

19       Company, Limited, Voluntary Announcement.

20              Tab 8 is previously introduced as

21       Exhibit 29.  It's August 20th, 2014, CNBM

22       Company, Limited, Voluntary Announcement.

23              Tab 9 is previously introduced as

24       Exhibit 31 from the February 13, 2015, CNBM

25       Company, Limited, Announcement.
```

```
 1              And Tab 10 is Exhibit 33 from the CNBM

 2         Company, Limited, March 15, 2015, Announcement.

 3              And wherever I have given an exhibit

 4         number as -- for example, Exhibit 13 is also

 5         Exhibit 13-A, meaning it's both Chinese and

 6         English.

 7              MR. PFAEHLER:  On behalf of BNBM Group

 8         and PLC we object to this exhibit and -- on

 9         grounds, among other things, that it doesn't

10         meet F.R.E. 1006 and it's, at a minimum, vague

11         and confusing.

12              MR. HERMAN:  Your objection's noted.

13    BY MR. HERMAN:

14         Q    Would you please turn to BNBMPL page 99,

15    Beijing New Building Materials Public Limited Company

16    Annual Report 2004 published by the board of directors

17    March 4, 2005, and can you state for the record as to

18    whether you signed off on this BNBM report.

19              MR. VEJNOSKA:  Objection, vague and

20         ambiguous.  It's an incomplete document.

21         A    I don't have a clear recollection as of

22    whether I have signed or not.

23    BY MR. HERMAN:

24         Q    Did you review the document?

25              MR. VEJNOSKA:  Objection, vague and
```

Confidential - Subject to Further Confidentiality Review

1          ambiguous.

2      A     I am seeing it now.

3    BY MR. HERMAN:

4      Q     I'm sorry?

5      A     I am seeing it now.

6      Q     You're seeing the document now or you're

7    seeing your name now?

8      A     I see my name.

9      Q     And are you listed in your capacity as an

10   executive officer of BNBM?

11     A     At the time I was the chairman of the board

12   of this company.

13     Q     Was it prepared at the time or about the

14   time that it was issued?

15          MR. VEJNOSKA:  Objection, vague and

16       ambiguous.  Mr. Herman, just for clarity's sake,

17       you're showing him two or three pages that I'm

18       not clear whether you're asking him if these

19       pages were prepared at the time or if you're

20       trying to get him to talk about the full annual

21       report.

22          MR. HERMAN:  Well, I was trying to --

23       since I advised you in advance that I would be

24       asking from annual reports, rather than bring

25       out all the annual reports, I'm only asking very

Confidential - Subject to Further Confidentiality Review

1          limited questions to these pages.

2    BY MR. HERMAN:

3      Q      Let me ask the question a different way.

4    Isn't it true that BNBM Company -- PLC company in

5    March of each year issued an annual report for the

6    year before?

7      A      In approximately March or April, it is a

8    requirement of regulation of law to all the Chinese A

9    stock public listing companies.

10     Q      It is a requirement in March or April of a

11   following year to publish an annual report of the

12   prior year?

13     A      As far as I know that is a requirement of

14   the regulation of the Chinese public listed companies.

15     Q      And are the annual reports, as required of

16   BNBM PLC, maintained in the normal and ordinary course

17   of BNBM's business?

18              MR. VEJNOSKA:  Objection, vague and

19         ambiguous.

20     A      I don't understand your question.

21   BY MR. HERMAN:

22     Q      Are these annual reports of BNBM PLC kept in

23   the regular course of BNBM's activity?

24              MR. VEJNOSKA:  Same objection.

25     A      I still don't understand what you mean by

Confidential - Subject to Further Confidentiality Review

1    "kept."  Did you mean to be kept in the company?

2    BY MR. HERMAN:

3        Q      Maintained in the company.

4                MR. PFAEHLER:  Same objection.

5        A      This is a public report.

6    BY MR. HERMAN:

7        Q      And it's meant to be public?

8        A      This is a public report to the general

9    public according to the format provided by stock

10   exchange.

11       Q      Do you have any knowledge or recollection

12   that a BNBM annual report, once it was issued, was

13   removed from the public?

14       A      I don't know what you mean.

15       Q      Withdrawn.

16       A      Withdrawn?

17       Q      Do you have any knowledge that any BNBM PLC

18   annual report, once it was published, was withdrawn

19   from the public?

20       A      Not as far as I know.

21       Q      Now, did CNBM Company, Limited, publish

22   annual reports?

23       A      CNBM Company, Limited, is a public listed

24   company in Hong Kong according to the fixed format

25   provided by Hong Kong Stock Exchange.  And in

Confidential - Subject to Further Confidentiality Review

1    compliance with the Hong Kong Stock Exchange's

2    regulations, the company edited and compiled its

3    annual and intermedium report.

4        Q     And they're made public, correct?

5        A     Correct.

6        Q     Of your own knowledge, do you know of any

7    instance where -- in which a CNBM Company, Limited,

8    withdrew an annual or interim report after it was

9    published publicly?

10       A     Not as far as I know.

11       Q     To your knowledge, does CNBM publish

12   voluntary announcements?

13              MR. VEJNOSKA:  Objection, vague and

14         ambiguous.

15       A     The secretary of the board is in charge of

16   the company's regular announcements.

17   BY MR. HERMAN:

18       Q     To your knowledge, does CNBM Company,

19   Limited, publish overseas regulatory announcements?

20       A     Which announcements are you referring to?

21   That might help to refresh my recollection.

22       Q     I will point you towards it.  If you don't

23   have a present recollection, I will be happy to show

24   it to you.  But at this time I would like to know of

25   your own knowledge does CNBM Company, Limited, publish

Confidential - Subject to Further Confidentiality Review

```
 1    publicly voluntary announcements?

 2                 MR. VEJNOSKA:  Objection, vague and

 3         ambiguous, overbroad.

 4                 THE INTERPRETER:  Interpreter needs to

 5         clarify with deponent.

 6    A     It did.

 7  BY MR. HERMAN:

 8    Q     Do you, of your own knowledge, know of any

 9  voluntary announcement of CNBM Company, Limited, that

10  was withdrawn after it was published publicly?

11    A     I'm not sure.

12    Q     I would like you to look at tab 6.  It's in

13  Exhibit 25.  It's an overseas regulatory announcement.

14  And it's Bates numbers 5121, that's CNBM -- strike

15  that.

16                 It's AL-RMH-CNBM 5121 to 5127 and

17  AL-RMH-CNBM Bates 5121-A to 5127-A previously

18  introduced as Exhibit 25.  And I would like Chairman

19  Cao to look at page 5125.  And I'm asking the witness

20  to look at 5125-A.

21    A     I see that.

22    Q     At the time that this overseas regulatory

23  announcement was republished on May 28th, 2010, by

24  CNBM Company, Limited, it was from the board of

25  directors of CNBM; is that correct?
```

 1            MR. VEJNOSKA:  Objection, foundation.

 2            MR. PFAEHLER:  Further objections.

 3      A     Yes.

 4  BY MR. HERMAN:

 5      Q     And you were on the board of directors of

 6  CNBM Company, Limited, at the time that this overseas

 7  regulatory announcement was published; is that

 8  correct?

 9      A     In May 2010, yes, I was the -- member of

10  CNBM Company, Limited, board of directors.

11      Q     And at that time you were also a member of

12  BNBM Company, Limited, board of directors; is that

13  true?

14      A     According to my recollection, in May of 2010

15  I don't believe I was a director of BNBM Company,

16  Limited.

17      Q     Did you, as a member of the board of CNBM

18  Company, Limited, direct that there be any changes in

19  the publication of this overseas regulatory

20  announcement which was originally made by BNBM PLC?

21            MR. VEJNOSKA:  Objection, foundation.

22      A     I'm sorry, according to my understanding,

23  this is not a complete announcement.

24  BY MR. HERMAN:

25      Q     Let me ask the question again.  Did you, as

Confidential - Subject to Further Confidentiality Review

 1   a director of CNBM Material Company, Limited, direct

 2   any portion of the overseas regulatory announcement to

 3   be deleted?

 4              MR. VEJNOSKA:  Objection, asked and

 5         answered, foundation.

 6     A     This announcement was prepared by the

 7   secretary of the board of the company and the

 8   attorneys of the company.

 9   BY MR. HERMAN:

10     Q     Why does your name -- strike that.

11              When we come back from lunch, we'll

12   provide the full report and we'll -- of the overseas

13   regulatory announcement and we'll go through it page

14   by page.

15              But at this time I will ask you of

16   your own knowledge and your own recollection, from

17   2006 to date, have you requested that any annual

18   report of BNBM PLC be deleted?

19     A     No.

20     Q     To your knowledge, from 2006 to date, have

21   you requested that any CNBM Company, Limited, annual

22   report be deleted?

23     A     No.

24     Q     To your recollection, have you ever

25   requested that any interim report of BNBM PLC be

Confidential - Subject to Further Confidentiality Review

```
 1   deleted?

 2       A     No.

 3       Q     To your knowledge, have you ever requested

 4   that any CNBM Company, Limited, interim report be

 5   deleted?

 6       A     No.

 7       Q     Have you ever requested that any

 8   announcement -- public announcement of CNBM Company,

 9   Limited, be deleted?

10       A     No.

11       Q     To your knowledge, since 2006, have you ever

12   made a request that language in an annual report of a

13   company in which you were an executive be changed?

14             MR. VEJNOSKA:  Objection, compound,

15         overbroad.

16       A     Which company you're referring to?

17   BY MR. HERMAN:

18       Q     BNBM PLC.

19       A     No.

20       Q     Since 2006 have you ever recommended that

21   language in a CNBM Company, Limited, annual report be

22   changed?

23             MR. VEJNOSKA:  Objection, compound,

24         overbroad.

25       A     No.
```

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. HERMAN:

 2       Q     Since 2006 have you ever recommended that

 3   language in an interim report of BNBM PLC be changed?

 4               MR. VEJNOSKA:  Same objections.

 5       A     No.

 6   BY MR. HERMAN:

 7       Q     Since 2006 have you ever recommended that

 8   any interim report of CNBM PLC -- I'm sorry.

 9               Since 2006 have you ever recommended

10   that language in a CNBM Company, Limited, annual

11   report be changed?

12               MR. VEJNOSKA:  Objection, asked and

13         answered.

14       A     No.

15   BY MR. HERMAN:

16       Q     Since 2006 have you ever recommended that

17   announcements of CNBM Company, Limited, language be

18   changed?

19               MR. VEJNOSKA:  Objection, asked and

20         answered.

21               Would you mark this question, please.

22       A     No.

23               MR. HERMAN:  Okay.

24               MR. VEJNOSKA:  Go off the record.

25               MR. HERMAN:  Yeah.
```

Confidential - Subject to Further Confidentiality Review

```
 1                  THE VIDEOGRAPHER:  This is the end of

 2         tape 3.  We're now off the record at 12:36.

 3                  (Recess Taken From 12:36 p.m. To

 4                  1:41 p.m.)

 5                  THE VIDEOGRAPHER:  This is the beginning

 6         of tape 4.  We're now back on the record and the

 7         time is 1:41.

 8                  (Deposition Exhibit 61 marked.)

 9   BY MR. HERMAN:

10     Q    Exhibit 61 is Bates labeled KNAUFGIPS0165544

11   to 888 e-mail, from David Gregory of Knauf to Manfred

12   --

13                  MR. VEJNOSKA:  Live dangerously.  Go

14         ahead.  Take a shot.

15                  MR. HERMAN:  No, I know the name.

16                  MR. VEJNOSKA:  Grundke.

17   BY MR. HERMAN:

18     Q    To a Manfred Grundke and Hans Peter

19   Ingenillem dated May 18, 2009, and the attachments

20   include a letter to Song Zhiping KNAUFGIPS0160548 to

21   -550 and Wang Bing KNAUFGIPS01607721.  I only have

22   questions about two of these documents.  And the

23   translator and counsel may want to get those copies

24   out.  They are KNAUFGIPS0160720, a letter to Mr. Wang

25   Bing, dated May 15, 2009, and a letter to Mr. Song
```

1    Zhiping, chairman of the board, CNBM Material Group

2    Corporation, May 15, 2009.  They're each marked the

3    "Latest Development of the Plasterboard Incident in

4    the USA."

5              And I'll ask the witness to first look

6    at a letter addressed -- of May 15, 2009, from

7    KNAUFGIPS to Mr. Wang Bing, general manager of Beijing

8    New Building Material Group Company, Limited.

9              THE REPORTER:  Hold on.  I didn't get

10        the last.

11             MR. HERMAN:  From KNAUFGIPS, May 15,

12        2009, to Mr. Wang Bing, general manager of

13        Beijing New Building Material Group Company,

14        Limited, Latest Development of the Plasterboard

15        Incident in the USA.

16             MR. VEJNOSKA:  So that is the one that

17        starts on 160720; is that correct?

18             MR. HERMAN:  The Chinese --

19             MR. VEJNOSKA:  If we can tell him where

20        the Chinese version is, that would be good, if

21        there is one.

22             MR. HERMAN:  The Chinese is 0160717.

23    A     I only have 713 here.

24             MR. VEJNOSKA:  716 to 717.  716 to 723.

25        Let me -- I was going to say, would you look in

Confidential - Subject to Further Confidentiality Review

1          that one, Sandy.  It should be right at the very

2          end if it's there because I've got 720 starting

3          here.

4      A     I don't have it.

5             MS. DUGGAN:  717 was pulled out, but

6          that's the last page of it.

7             MR. VEJNOSKA:  719.

8             MS. DUGGAN:  717, 718 and 719.

9             MR. VEJNOSKA:  Yeah, it's not in this

10         stack.  And in my stack I only pulled out

11         starting with 720.  So the stack you just took

12         should have it at the very end, whatever there

13         is.  718 -- yes.

14     A     I have found it.

15            MR. VEJNOSKA:  It's like a treasure

16         hunt.

17    BY MR. HERMAN:

18     Q     I would like you, if you would, Chairman

19    Cao, to read to yourself Exhibit 61, May 15, 2009,

20    letter from KNAUFGIPS addressed to Wang Bing.

21     A     Is it in 717, 718 and 719?

22     Q     Correct.

23            (Witness Reviews Document.)

24     A     I have read it.

25    BY MR. HERMAN:

1      Q      In the year 2009, did Mr. Wang Bing forward

2    a copy of this letter to you?

3      A      No.

4      Q      In the year 2009, did Mr. Wang Bing e-mail

5    or correspond with you about the letter identified to

6    Mr. Wang Bing from Knauf?

7      A      Not through letters.

8      Q      Well, did he communicate through any other

9    way?

10     A      I do not read e-mails.  Nobody had told me

11   that this type of e-mails had been received.

12     Q      You had no oral communication in 2009 about

13   the letter from Wang Bing -- to Wang Bing from Knauf;

14   is that correct?

15     A      No.

16     Q      In 2009 did you have any communication from

17   anyone as to the Knauf letter to Wang Bing?

18     A      No.

19     Q      I ask you now to look at the May 15, 2009,

20   letter to Chairman Song Zhiping from Knauf.  It

21   begins --

22     A      It says 545, 546 and 547?

23     Q      Yes.

24             MR. VEJNOSKA:  Which are the -- could

25        you tell us the English language Bates numbers?

Confidential - Subject to Further Confidentiality Review

```
 1              MR. HERMAN:  Yes.  It's Bates numbers
 2        0160548, 549.
 3              MR. VEJNOSKA:  Thank you.  Sandy, I
 4        think I gave you back the front half of my
 5        stack.  Are you helping me?  Oh, thank you very
 6        much.
 7              (Witness Reviews Document.)
 8     A    I've read it.
 9  BY MR. HERMAN:
10     Q    In the year 2009, did Chairman Song forward
11  a copy of the Knauf letter of May 15, 2009, to you?
12     A    No.
13     Q    Did you ever receive by e-mail a copy of
14  this letter from Knauf to Chairman Song?
15     A    I do not read e-mails; therefore, I do not
16  know.
17     Q    Do you send e-mails?
18     A    I do not.
19     Q    Did you have an oral discussion with
20  Chairman Song Zhiping about the Knauf letter in the
21  year 2009?
22     A    No.
23     Q    In the year 2010, did you receive a copy of
24  the Knauf letter to Wang Bing?
25     A    No.
```

Confidential - Subject to Further Confidentiality Review

```
 1      Q    In the year 2010 did you receive a copy of
 2  the Knauf letter to Song Zhiping, Chairman Song?
 3      A    No.
 4      Q    In any year before 2014, were you ever shown
 5  by someone who was not a lawyer the Knauf letter to
 6  Wang Bing?
 7      A    No.
 8      Q    In any year from 2000 through 2013, did
 9  anyone not a lawyer provide you with a copy of the
10  Knauf letter to Song Zhiping?
11      A    No.
12      Q    Have you ever seen either letter before
13  today?
14      A    No.  I just read it.
15      Q    After suit was filed against BNBM PLC, when
16  did you first have knowledge that a suit had been
17  filed?
18              MR. VEJNOSKA:  Objection, vague and
19         ambiguous.
20      A    I'm not sure which lawsuit you're referring
21  to.
22  BY MR. HERMAN:
23      Q    When did you first have knowledge of any
24  lawsuit regarding an allegation of defective drywall
25  which was filed against BNBM PLC or others?
```

Confidential - Subject to Further Confidentiality Review

1     A     I first came to know lawsuit regarding

2  drywall was in the third or fourth quarter of 2009.

3     Q     Did you, yourself, go to any Taishan Gypsum

4  manufacturing plant to investigate the allegations of

5  defective drywall?

6     A     Up to today I have never visited any plants

7  of Taishan Gypsum.

8     Q     Up till today have you sent anyone on behalf

9  of CNBM Company, Limited, to a Taishan plant to

10  investigate allegations of defective drywall?

11    A     Which CNBM you're referring to?

12    Q     BNBM -- strike that.

13          CNBM Company, Limited.

14    A     Never.

15    Q     Up until today, have you sent anyone to

16  investigate at a Taishan plant an allegation of

17  defective drywall for BNBM PLC?

18          MR. PFAEHLER:  Objection to form.

19    A     I don't understand what you said.

20  BY MR. HERMAN:

21    Q     Have you ever sent someone to investigate a

22  Taishan Gypsum plant that manufactured alleged

23  defective drywall?

24    A     No.

25    Q     Did you ever notify anyone representing

Confidential - Subject to Further Confidentiality Review

1   JPMorganChase of Judge Fallon's injunction of July 14,

2   two thousand -- excuse me, July 17 of 2014?

3       A    I don't understand you.

4       Q    Did you communicate with JPMorganChase about

5   Judge Fallon's injunction of July 17, 2014?

6       A    No.

7       Q    Do you have an understanding in Mandarin of

8   the Chinese word "affiliate"?

9            MR. VEJNOSKA:  Objection, vague and

10       ambiguous, calls for a legal conclusion.

11      A    I don't understand the legal definition of

12  this word.

13  BY MR. HERMAN:

14      Q    Have you ever used the word "affiliate"?

15           MR. VEJNOSKA:  Objection, vague and

16       ambiguous, overbroad.

17      A    There are different interpretations of the

18  Chinese word "affiliate."

19  BY MR. HERMAN:

20      Q    Tell me what the different interpretations

21  are of the Chinese word "affiliate."

22           MR. VEJNOSKA:  Same objections.

23      A    The word "affiliate" you just said has a

24  legal definition which I do not understand.

25  BY MR. HERMAN:

```
1      Q     I am not asking you for a legal definition.

2  You have indicated that in the Chinese language the

3  word "affiliate" has different meanings.  I'm asking

4  you what those meanings are in the Chinese language.

5                 MR. VEJNOSKA:  Objection, foundation,

6           vague and ambiguous, calls for a legal

7           conclusion.

8      A     When it is in connection with legal

9  definitions, I do not want to speculate.

10  BY MR. HERMAN:

11      Q     I'm not asking you to speculate as to a

12  legal definition.  Your testimony is that in Chinese

13  "affiliate" has different meanings.  That's your

14  testimony.  I'm asking you what different meanings the

15  word "affiliate" has.

16      A     It depends on different contexts.

17      Q     Well, give me the different contexts.

18                 MR. VEJNOSKA:  Same objections.

19      A     I'm not a linguist.  I can only offer you

20  one example.

21  BY MR. HERMAN:

22      Q     Give me whatever example you can give me.

23      A     For example, you and me met today.  You and

24  me in Chinese are called related people.

25      Q     Well, have you -- haven't you used or
```

1    approved in public documents use of the word

2    "affiliate"?

3                    THE INTERPRETER:  The interpreter needs

4         counsel to clarify "used or approved."  What

5         does that mean?

6                    MR. HERMAN:  Documents he signed off on.

7                    THE INTERPRETER:  This is the

8         interpreter speaking, Counsel.  When you said

9         "affiliate," the interpreter literally

10        translated as affiliate.  Did you mean

11        affiliated company or just the word affiliate?

12                   MR. HERMAN:  Affiliated company is fine.

13                   THE INTERPRETER:  So the interpreter

14        will from this point onward interpret the word

15        "affiliate" to "affiliate company" in Chinese.

16        Is that okay?  Because in Chinese they're two

17        words, two different words.

18                   MR. HERMAN:  Sure.

19                   MR. VEJNOSKA:  I'm going to object to

20        that.  I think if he says affiliated company,

21        you should interpret that way, and if the

22        question is affiliate, you should interpret it

23        affiliate.

24    BY MR. HERMAN:

25        Q    Well, I'll ask the question, haven't you

1    used the term "affiliated company" or "affiliate

2    company" in public documents you have approved?

3              MR. VEJNOSKA:  Objection, compound,

4         vague and ambiguous, foundation, legal

5         conclusion.

6      A    I don't remember I have used it.  Can you

7    give me a specific example?

8    BY MR. HERMAN:

9      Q    Yes, and I will before the deposition

10   concludes.  But at this time you are not able to

11   answer from your own recollection and knowledge as to

12   whether you have used that term in a public document;

13   is that correct?

14             MR. VEJNOSKA:  Same objections, asked

15        and answered.

16     A    I don't remember I've used the word

17   "affiliate company" you just said.

18             (Deposition Exhibit 266 marked.)

19             MR. HERMAN:  Would you provide the

20        witness and the translator and his lawyer and

21        then distribute to everyone Exhibit 266, Bates

22        number 1182 to 1183 -- 11382 -- I'm sorry.

23        11382 to 11383.

24     A    The Chinese is on 382?

25   BY MR. HERMAN:

1      Q      No.  I've handed only the translation in

2    English.  Look at the Mandarin 11382 and 11383.

3      A      I see that 11382.

4              MR. VEJNOSKA:  And just so the record is

5          clear, it's the last two pages of this exhibit

6          because all the --

7              MR. HERMAN:  266, correct.

8              MR. VEJNOSKA:  Right.  Because all the

9          pages before that in English are 11382 as I see

10         them.  Or at least -- yes.  Thank you.

11     A      383 is in English.  Only 382 is in Chinese.

12   BY MR. HERMAN:

13     Q      Okay.  Let's look at 11382 in Chinese.

14   Would you review that, please.

15              (Witness Reviews Document.)

16     A      I have read it.

17   BY MR. HERMAN:

18     Q      Did you receive from HSBC Global Banking a

19   Knauf request to arrange a meeting with you in

20   November 2010 for a status update on the gypsum board

21   lawsuit in the United States?

22     A      No.

23     Q      Is your e-mail correctly stated as

24   czl@cnbm.com.cn, tcao@cnbm.com.cn?

25     A      The latter one is my e-mail address.

1      Q      And if you don't read e-mails, who reads

2    your e-mails for you?

3      A      My secretary --

4      Q      What is --

5      A      -- manages my e-mail on my behalf.

6      Q      And does she communicate orally what's in

7    the e-mails?

8      A      Sometimes.

9      Q      Does she send you summaries of what's in

10   your e-mails?

11     A      No.

12     Q      What is your secretary's name who was your

13   secretary in October of 2010?

14     A      October of 2010.  I don't have a clear

15   recollection of that.  It was either a gentleman by

16   the name of Zhang or a lady by the name of -- last

17   name of He.

18     Q      Are either of them still a secretary to you?

19     A      Ms. He is still my secretary today.

20     Q      And where is her office?

21     A      Next door to my office.

22     Q      And where is your office?

23     A      My office is in Guohai Square.

24     Q      What is the address of that building?

25     A      Beijing City, Haidian District, Guihai

Confidential - Subject to Further Confidentiality Review

1    Square.

2        Q    And when you indicate that your secretary's

3    office is next to yours, are you indicating that it's

4    in the same building on the same floor as your office?

5        A    Yes.

6        Q    Where are the personnel records that show

7    the dates of employments of the secretaries which you

8    testified to?

9            MR. VEJNOSKA:  Objection, vague and

10        ambiguous.

11        A    I don't understand you.

12   BY MR. HERMAN:

13        Q    Is there a secretary for -- is there a

14   personnel record for secretaries or documents that

15   show when they were hired?

16            MR. VEJNOSKA:  Same objection.

17        A    Yes, but I do not have a clear recollection.

18   BY MR. HERMAN:

19        Q    Where are those records kept?

20            MR. VEJNOSKA:  Same objection.

21        A    According to my recollection, their

22   employment contracts is under CNBM, Limited.

23   BY MR. HERMAN:

24        Q    And are the human resource department of

25   BNBM, Limited, responsible to maintain those personnel

Confidential - Subject to Further Confidentiality Review

```
 1   records?

 2               MR. VEJNOSKA:  Objection, foundation,

 3       vague and ambiguous.

 4       A    Did you say BNBM PLC?

 5   BY MR. HERMAN:

 6       Q    Yes.  I may have misheard, but that is what

 7   I said, BNBM PLC.

 8               MR. VEJNOSKA:  Same objections.

 9       A    Are you asking the relationship of my

10   secretaries' employment contract with BNBM PLC?

11   BY MR. HERMAN:

12       Q    Yes.  I'm asking where the contracts are

13   maintained.

14       A    It has nothing to do with BNBM PLC.

15       Q    Who is the employer of the secretary?

16               MR. VEJNOSKA:  Objection, asked and

17       answered.

18       A    According to my recollection, it is CNBM

19   Company, Limited.

20   BY MR. HERMAN:

21       Q    Does the human resources department of CNBM,

22   Limited, maintain employee employment records for the

23   secretaries?

24               MR. VEJNOSKA:  Objection, foundation.

25       A    Yes.
```

Confidential - Subject to Further Confidentiality Review

```
 1    BY MR. HERMAN:

 2        Q     Did you meet with any representative of

 3    Knauf Company in 2010?

 4        A     No.

 5        Q     To your knowledge, did Chairman Song meet

 6    with any representative of Knauf Company in the year

 7    2010?

 8        A     No.

 9        Q     Did your secretary ever, to your knowledge,

10    reply to the invitation of HSBC Global Banking to meet

11    with Knauf in November of 2010?

12        A     Not to my recollection because I did not

13    give the authorization.

14        Q     Were you asked for authorization?

15        A     No.

16        Q     After November 2010, did you have occasion

17    to meet with a representative of Knauf or KNAUFGIPS?

18        A     No.

19        Q     Have you ever seen this Exhibit 266, CNBM

20    Company 11382-83, before this deposition?

21        A     No.

22                    MR. HERMAN:  We'll offer Exhibit 266.

23                    (Deposition Exhibit 290 marked.)

24                    Would you please distribute to the

25                    witness Exhibit 290, BNBMPLC-E-0154862,
```

Confidential - Subject to Further Confidentiality Review

```
 1                    and in the Chinese BNBMPLC-E-0154862,

 2                    which is the last page of the exhibit.

 3                    (Witness Reviews Document.)

 4      A     I've read it.

 5   BY MR. HERMAN:

 6      Q     You see it's a "Request for Instructions on

 7   the Personnel Composition of Taishan Gypsum's New

 8   Session of the Board of Directors and the Supervisory

 9   Committee," dated August 11, 2011.

10      A     That's what the document says.

11      Q     Does this document indicate that you,

12   Chairman Cao, was one of three individuals elected as

13   supervisors of Taishan Gypsum?

14      A     That's what the document says.

15      Q     And were five individuals, including

16   Tongchun Jia, elected to Taishan's board of directors?

17      A     That's what the document says.

18      Q     Sorry.  Would you repeat that?

19      A     That's what the document says.

20      Q     Why was it necessary for China National

21   Building Material Company, Limited, to approve and

22   instruct on whether these elections were appropriate?

23                    MR. PFAEHLER:  Objection, form.

24      A     I'm not sure the source of this document.

25                    MR. PFAEHLER:  We note an objection to
```

Confidential - Subject to Further Confidentiality Review

```
 1          Exhibit 290 and in particular to this

 2          translation on the first page of the document.

 3   BY MR. HERMAN:

 4      Q     The source --

 5               MR. HERMAN:  Your objection's noted.

 6   BY MR. HERMAN:

 7      Q     The source of the document are the documents

 8   of BNBM PLC.  I'm going to ask my question again

 9   because I've answered your question.  Why was it

10   necessary for China National Building Material

11   Company, Limited, to, "Please approve and instruct on

12   whether this is appropriate"?

13               MR. VEJNOSKA:  Objection, foundation,

14          argumentative, misstates the document.  Don't

15          agree with the translation.

16   BY MR. HERMAN:

17      Q     Can you answer the question?

18      A     I'm sorry, repeat your question.

19      Q     Yes.  Why was it necessary for China

20   National Building Material Company, Limited, to,

21   "Please approve and instruct on whether this is

22   appropriate"?

23               MR. VEJNOSKA:  Same objections, and

24          specifically to the purported quotation.

25      A     My personal understanding is they have
```

Confidential - Subject to Further Confidentiality Review

```
 1   already held the board of directors meetings as well

 2   as shareholders meetings and made the decision.

 3   BY MR. HERMAN:

 4      Q      Who is "they"?

 5             MR. VEJNOSKA:  Same objections, add

 6          speculation.

 7      A      I quote.  It says, Taishan Gypsum held a

 8   shareholders meeting, board of supervisors meeting and

 9   the fifth session of the board of directors meeting

10   and supervisors committee meeting on August the 11th,

11   2011, and the following decisions were being made.

12             MR. HERMAN:  I'm going to ask the

13          official court reporter chosen by Judge Fallon,

14          since there seems to be a disagreement about the

15          interpretation of the Mandarin document 154862,

16          to please read her interpretation in English of

17          the document for the record.

18             MR. PFAEHLER:  I object to the question.

19          I don't believe she's an official court

20          reporter, and I'm not sure she's here to

21          translate documents for you, Mr. Herman.

22          There's a machine translation, page 2, that's

23          very different from the translation that's been

24          read.

25             MR. HERMAN:  Now I'll ask that the court
```

Confidential - Subject to Further Confidentiality Review

```
 1            reporter read the Mandarin in English so we have

 2            it in the record since there's a dispute.

 3                    MR. PFAEHLER:  Same objection.

 4                    MR. HERMAN:  Since the court -- excuse

 5            me -- has ruled that the official interpreter,

 6            appointed by the court, is the one who's

 7            interpretation the court will utilize.

 8                    MR. PFAEHLER:  Same objections.

 9                    MR. VEJNOSKA:  I would just add that I

10            certainly agree that she's been chosen to

11            translate the questions and the answers.  I am

12            not aware she's been chosen to translate each or

13            any document that someone wants to put in front

14            of her.  Nonetheless, why don't we just have her

15            do as you've asked, Mr. Herman, with our

16            objections registered.

17                    THE INTERPRETER:  Should the interpreter

18            interpret the Chinese exhibit on page 154862?

19                    MR. HERMAN:  Yes.

20                    THE INTERPRETER:  "Request for

21            Instruction on New Session of Taishan Gypsum

22            Board, Board of Directors, Board of Supervisors

23            Personnel Composition, CNBM Company, Limited:

24            BNBM Company, Limited (referred to as our

25            company)."
```

Confidential - Subject to Further Confidentiality Review

1          The interpreter would like to start

2     again.  "BNBM Company, Limited," open -- "BNBM

3     Company, Limited (hereinafter referred to as

4     'our company') controlling subsidiary company

5     Taishan Gypsum Company, Limited (hereinafter

6     referred to as Taishan Gypsum) held 2010

7     shareholders meeting, supervisors meeting and

8     the fifth session of board of directors meeting

9     and supervisors meeting on August 11, 2011.

10    Specific update is reported as follows:

11    According to the Company Law and the Article of

12    Association of the Company, the meetings had

13    elected Wang Bing, Jia Tongchun, Zhou Changxin,

14    Zhang Nailing, Yang Yangjun, five people, to be

15    the Company's board of directors, composite the

16    fifth board of directors of the company Jia

17    Tongchun is the chairman of the board.

18          "Cao Jianglin, Yan Xinjian, Wang Lifeng,

19    three people, are elected as the company's

20    supervisors, composites the fifth supervisors

21    committee of the company.  Cao Jianglin is the

22    chairman of the supervisors committee.

23          "Please instruct whether this is

24    appropriate!

25          "August 11, 2011."

Confidential - Subject to Further Confidentiality Review

1    BY MR. HERMAN:

2        Q     Now, as -- do you recall being elected in

3    2011 as chairman of the supervisory committee?

4        A     I don't have a clear recollection on that.

5        Q     Do you understand that the document relates

6    to BNBM Public Limited Company and Taishan Gypsum?

7               MR. VEJNOSKA:  Objection, vague and

8          ambiguous.

9        A     My personal understanding is -- my personal

10   understanding -- my personal understanding is that the

11   decision was made by Taishan Gypsum's shareholders

12   meeting, board of directors meeting and board of

13   supervisors meeting.

14   BY MR. HERMAN:

15       Q     Why, then, was China National Building

16   Material Company, Limited, required to approve that

17   election?

18               MR. VEJNOSKA:  Objection, calls for

19          speculation, argumentative, misstates the

20          document as just translated.

21               MR. PFAEHLER:  Objection, translation

22          that was just provided at your request,

23          Mr. Herman, did not include the words "approve."

24       A     My personal understanding is CNBM Company,

25   Limited, was only notified of the result.

Confidential - Subject to Further Confidentiality Review

```
 1              MR. HERMAN:  We offer Exhibit 290.

 2              MR. VEJNOSKA:  Mr. Herman, when you get

 3         to a convenient stopping place.

 4              MR. HERMAN:  We can break now.  Why

 5         don't we --

 6              THE VIDEOGRAPHER:  This is the end of

 7         tape 4.  We're now off the record at 2:47.

 8              (Recess Taken From 2:47 p.m. To

 9              3:03 p.m.)

10              THE VIDEOGRAPHER:  This is the beginning

11         of tape 5.  We're now back on the record.  The

12         time is 3:03.

13    BY MR. HERMAN:

14       Q    With reference to Exhibit 290, which you

15    have before you, the request for instructions on the

16    personnel composition of Taishan Gypsum's new session

17    of the board of directors and the supervisory

18    committee, is this the type of document that is

19    regularly transmitted, for example, to China National

20    Building Material Company, Limited, following an

21    election of Taishan directors and supervisors?

22              MR. VEJNOSKA:  Objection, foundation,

23         vague and ambiguous.

24       A    I'm not sure about this document.

25    BY MR. HERMAN:
```

Confidential - Subject to Further Confidentiality Review

1     Q     Well, are elections and reports of elections

2     regularly reported to parent companies?

3               MR. VEJNOSKA:  Same objection, legal

4          conclusion.

5     A     What are you referring to when you said

6     "parent companies"?

7     BY MR. HERMAN:

8     Q     Well, let's start with BNBM PLC.  Isn't that

9     a parent company of Taishan Gypsum?

10              MR. VEJNOSKA:  Objection, vague and

11         ambiguous, calls for a legal conclusion.

12    A     I'm not sure the legal definition of parent

13    company.

14    BY MR. HERMAN:

15    Q     Well, what is the relationship in your mind

16    between BNBM PLC and Taishan Gypsum?

17    A     BNBM Company, Limited, is the shareholder of

18    Taishan Gypsum Company.

19    Q     And this is the type of election that would

20    be reported from Taishan Gypsum to BNBM PLC?

21              MR. VEJNOSKA:  Objection, overbroad.

22    A     BNBM Company, Limited, exercises its right

23    as a shareholder in Taishan Gypsum's shareholders

24    meeting.

25    BY MR. HERMAN:

1      Q      And are these votes in the shareholders

2   meeting retained in some form?

3      A      I don't understand.

4      Q      Well, is a record kept of votes for

5   directors?

6      A      I'm sure there was, but I do not know the

7   details.

8      Q      Are those records that are kept in writing?

9             MR. VEJNOSKA:  Objection, vague and

10        ambiguous, overbroad, foundation.

11     A      I'm not sure the format of recording of the

12   shareholders meetings.

13   BY MR. HERMAN:

14     Q      I'm not asking the format.  I'm asking is it

15   in writing?

16             MR. VEJNOSKA:  Same objections.

17     A      I have never attended the shareholders

18   meeting; therefore, I'm not sure.

19   BY MR. HERMAN:

20     Q      Have you ever attended a shareholders

21   meeting of a company in which you were director?

22     A      I can only give you an example.  Because I

23   am the chairman of the board, therefore, I hosted the

24   shareholders meeting of China Jushi.

25     Q      Did you attend the shareholder meeting of

Confidential - Subject to Further Confidentiality Review

```
 1   CNBM Company, Limited?

 2              MR. VEJNOSKA:  Objection, vague and

 3       ambiguous.

 4    A     Sometimes I attended; sometimes I did not

 5   attend.  I do not attend every time.

 6   BY MR. HERMAN:

 7    Q     Did you ever attend, from the year 2010 to

 8   this date, a shareholder meeting of CNBM Group?

 9              MR. VEJNOSKA:  Objection, foundation.

10              THE INTERPRETER:  The interpreter needs

11       to clarify with the deponent.

12    A     CNBMG is a solely state-owned company and it

13   does not have a board of directors meeting.

14              MR. VEJNOSKA:  Could you mark that,

15       please.  Mr. Herman asked about shareholders

16       meetings.  That's...

17    A     I said CNBMG is a solely state-owned

18   company.  It does not have a shareholders meeting; it

19   is not that it does not have a board of directors

20   meeting.

21   BY MR. HERMAN:

22    Q     Have you ever attended a BNBM Group

23   shareholders meeting?

24    A     BNBM Group?  BNBM Group?

25    Q     Yes.
```

Confidential - Subject to Further Confidentiality Review

1      A      No.

2      Q      In the shareholder meetings that you've

3   attended, are votes recorded as to who's elected?

4                 MR. VEJNOSKA:  Objection, compound.

5      A      I would like to continue to use the example

6   I just gave in China Jushi.

7                 THE INTERPRETER:  Interpreter needs to

8         clarify whether the word deponent said,

9         attorney, is in singular or plural form.

10     A      Attorneys were present in the shareholders

11   meeting as witnesses and there were written records.

12   BY MR. HERMAN:

13     Q      And are written records maintained or are

14   they destroyed?

15                MR. VEJNOSKA:  Objection, vague and

16        ambiguous, compound.

17     A      I would like to continue to use the example

18   I just give in China Jushi, as record was kept by the

19   office of the board of directors meeting.

20   BY MR. HERMAN:

21     Q      Does BNBM Group, since you have been

22   chairman, maintain written records of board of

23   directors meetings?

24     A      Are you referring to BNBM Group?

25     Q      I'm referring to BNBM Group.

Confidential - Subject to Further Confidentiality Review

 1                MR. PFAEHLER:  Objection to form.

 2      A      I have never been the chairman of board for

 3   that company.

 4   BY MR. HERMAN:

 5      Q      Are you a chairman of the supervisory

 6   committee of BNBM Group?  Are there minutes kept of

 7   meetings of the supervisory committee?

 8                MR. PFAEHLER:  Objection to form.

 9      A      Yes.

10   BY MR. HERMAN:

11      Q      Are minutes kept, since you have been a

12   director of CNBM Group, of the meeting of directors?

13      A      CNBM Group?

14      Q      CNBM Group.

15      A      I'm not sure.

16      Q      As president of CNBM Company and as

17   executive director of CNBM Company, Limited, beginning

18   in 2005 has CNBM Company, Limited, kept minutes of

19   board of directors meetings?

20                MR. VEJNOSKA:  Objection, foundation.

21      A      Are you referring to the meeting minutes of

22   CNBM Company, Limited?

23   BY MR. HERMAN:

24      Q      Yes.

25                MR. VEJNOSKA:  Same objection.

1       A       There had been records to my recollection.

2   BY MR. HERMAN:

3       Q       Who is entrusted with the records of CNBM

4   Company, Limited, that reflect board of directors

5   meetings?

6       A       According to Chinese company law, as well as

7   articles of association of CNBM Company, Limited, the

8   documents of the board of directors meetings are kept

9   by the office of the board of directors.  The person

10  responsible for it is Mr. Chang Zhangli.

11      Q       And where is his office?

12      A       China Beijing, Haidian District, Gui --

13  excuse me, Guohai Square.

14      Q       Is that the same building where BNBM and

15  BNBMG have offices?

16              MR. PFAEHLER:  Objection, form.

17      A       I'm not sure the registered addresses of the

18  two companies of BNBMG and BNBM Company, Limited.

19  BY MR. HERMAN:

20      Q       Who's responsible for keeping the board of

21  directors minutes of BNBM PLC?

22              MR. PFAEHLER:  Objection to form,

23          foundation.

24      A       Are you referring to the board of directors

25  meeting of BNBM PLC?

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. HERMAN:

 2       Q     Yes.

 3               MR. PFAEHLER:  Same objection.

 4       A     I'm not sure.

 5   BY MR. HERMAN:

 6       Q     Who's responsible for keeping the records of

 7   the board of directors of BNBMG?

 8               MR. PFAEHLER:  Objection, foundation.

 9       A     I'm not sure.

10   BY MR. HERMAN:

11       Q     Let's look at --

12               MR. HERMAN:  I'm going to offer, if I

13         haven't, Exhibit 290.

14               (Deposition Exhibit 1 marked.)

15   BY MR. HERMAN:

16

17

18

19

20

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review



Confidential - Subject to Further Confidentiality Review

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19    BY MR. HERMAN:

20        Q      Were you also a director of CNBM Group in

21    July of 2014?

22        A      Yes.

23        Q      Did you meet with any executives of CNBM

24    Group in July of 2014 to discuss the lawsuits in the

25    United States regarding defective gypsum?

```
 1                    MR. VEJNOSKA:  Objection, vague and
 2         ambiguous.
 3      A     What time in 2014 and for what specific
 4   matter you're referring to?
 5   BY MR. HERMAN:
 6      Q     In July of 2014, did you meet with other
 7   officers of CNBM Group to discuss Taishan's position
 8   in cases in the United States of America before Judge
 9   Eldon Fallon involving defective gypsum board?
10                    MR. VEJNOSKA:  Same objection.
11      A     Who did I discuss Taishan's position?  Is
12   that your question?  Who did I discuss with Taishan's
13   position?
14   BY MR. HERMAN:
15      Q     Yes.  Who did you discuss the case before
16   Judge Fallon with?
17                    MR. VEJNOSKA:  Objection, foundation.
18      A     Are you referring to CNBM Group or CNBM,
19   Limited?
20   BY MR. HERMAN:
21      Q     CNBM Group.
22                    MR. VEJNOSKA:  Same objection.
23      A     I don't have a clear recollection as of
24   when, but my general counsel, Madame Zhou Geping, told
25   me the progress of the case.
```

 1   BY MR. HERMAN:

 2       Q    Who did you discuss -- what officers of

 3   CNBMG group did you discuss the Chinese drywall case

 4   pending before Judge Eldon Fallon in July of 2014?

 5               MR. VEJNOSKA:  Objection, vague and

 6          ambiguous, asked and answered.

 7       A    After Madame Zhou briefed me on the progress

 8   of the case, I briefed the chairman of the board,

 9   Mr. Song Zhiping.

10   BY MR. HERMAN:

11       Q    Who at CNBMG participated in a decision not

12   to have Taishan appear at a judgment debtor rule

13   ordered by Judge Fallon?

14               MR. VEJNOSKA:  Objection, foundation,

15          argumentative, vague and ambiguous.

16       A    As far as I know, Taishan Gypsum itself made

17   the decision.

18   BY MR. HERMAN:

19       Q    How many meetings did you attend about this

20   issue in July of 2014?

21               MR. VEJNOSKA:  Objection, foundation,

22          vague and ambiguous.

23       A    Which meeting?  What meeting you're

24   referring to?

25   BY MR. HERMAN:

Confidential - Subject to Further Confidentiality Review

```
 1      Q      Meetings about the lawsuit before Judge

 2  Fallon relating to defective gypsum drywall.

 3             MR. VEJNOSKA:  Same objection.

 4      A      There have been one board of directors

 5  meeting in mid July.

 6  BY MR. HERMAN:

 7      Q      And who attended the board of directors

 8  meeting in mid July?

 9      A      All directors.

10      Q      Who were the directors of CNBMG that

11  attended the meeting?

12      A      I'm not sure, but I believe all the

13  directors -- all the directors should have attended.

14      Q      Give me the names of the directors of CNBMG

15  in July of 2014.

16      A      To the best of my recollection, Mr. Song

17  Zhiping is the chairman of the board.  Madame Yao Yan

18  is the deputy chairman of the board.  I myself is the

19  director.  Mr. Wang Yumeng is the director of the

20  staff.  Six external directors.  I don't recall their

21  names at this moment.

22      Q      Did external directors attend the meeting of

23  the board of directors of CNBMG in July of 2014 to

24  discuss the case pending before Judge Fallon?

25      A      External directors attended this board of
```

Confidential - Subject to Further Confidentiality Review

1    directors meeting.

2        Q    Who has the minutes -- or where are the

3    minutes that showed who attended the meeting and

4    what -- strike that.

5             Who has the records that would show

6    who attended the CNBMG board of directors meeting in

7    July 2014 at which the case pending before Judge Eldon

8    Fallon was discussed?

9        A    It should be the board of directors office,

10   but I'm not sure.

11       Q    Who is in charge of those records in the

12   board of directors office?

13       A    I'm not sure.

14       Q    Well, tell me who the administrators, of

15   that office of CNBMG, are where records are kept.

16       A    Person in charge of the board of directors

17   office is Madame Guang Zhaoyu.

18       Q    Is that individual an attorney?

19       A    No.

20       Q    Where is that office physically located in

21   address and in a building?

22       A    China Beijing, Haidian District, Guohai

23   Square.

24       Q    And is there a particular building at the

25   square?

Confidential - Subject to Further Confidentiality Review

```
 1      A      It is a building.

 2      Q      What floor is the administrator of CNBMG

 3  records located?

 4      A      I don't know.

 5      Q      Is CNBM Company, Limited -- are its offices

 6  also located in that building?

 7      A      Yes.

 8      Q      What floor is the board -- does the board of

 9  directors meet in that building of CNBMG?

10      A      Which floor is the board of directors

11  meeting located?

12      Q      Yes.

13      A      There is a specific meeting room for the

14  board of directors meetings.

15      Q      On what floor?

16      A      Perhaps on the sixth floor.  Perhaps.

17      Q      Who keeps the records of what happens at

18  CNBM Group board of directors meetings in July of

19  2014?

20             MR. VEJNOSKA:  Objection, asked and

21        answered, foundation.

22      A      It's the board of directors meetings office.

23  BY MR. HERMAN:

24      Q      Is that different from the administrator's

25  office where the attendance records are kept of board
```

Confidential - Subject to Further Confidentiality Review

1    of directors meetings?

2        A      I don't understand your question.

3        Q      Where are the minutes of the July 14 meeting

4    kept physically of the board of directors of CNBM

5    Group?

6                MR. VEJNOSKA:  Objection, asked and

7           answered, foundation, now calling for

8           speculation.

9        A      The resolution of the board of directors

10   meeting on July the 14th?

11   BY MR. HERMAN:

12       Q      Sure.

13               MR. VEJNOSKA:  Same objections.

14       A      I don't remember there was a board of

15   directors meeting held on July the 14th.

16   BY MR. HERMAN:

17       Q      During the month of July when the board of

18   directors of CNBMG met to discuss the case before

19   Judge Eldon Fallon, who kept the minutes of what

20   happened during that meeting?

21               MR. VEJNOSKA:  Same objections.

22       A      The office of the board of directors

23   meeting.

24   BY MR. HERMAN:

25       Q      And who was the individual that kept what

1   happened at that meeting?

2              MR. VEJNOSKA:  Same objections.

3       A     I don't know who had been making the record.

4   BY MR. HERMAN:

5       Q     Were there any other meetings of the board

6   of directors of CNBMG in August of 2014 to discuss the

7   lawsuit pending before Judge Eldon Fallon?

8              MR. VEJNOSKA:  Objection, foundation.

9       A     According to my present recollection, there

10  should have been another board of directors meeting

11  held in August 2014 where we were updated on the

12  lawsuit of the gypsum drywall.

13  BY MR. HERMAN:

14      Q     Did all of the directors of CNBMG attend

15  that meeting to your best recollection?

16             MR. VEJNOSKA:  Objection, foundation,

17       calls for speculation.

18      A     I do not have a clear recollection.

19  BY MR. HERMAN:

20      Q     Did you attend that meeting?

21      A     I did attend.

22      Q     Did Chairman Song attend that meeting?

23      A     Chairman of the board Song Zhiping had also

24  attended the meeting.

25      Q     Did you in the year 2014 ever meet with

1    Chairman Jia of Taishan Gypsum to discuss the lawsuit

2    before Judge Fallon?

3        A     No.

4        Q     Did you ever meet with Wenlong Peng to

5    discuss the litigation before Judge Fallon?  Wenlong

6    Peng I believe is correct.

7        A     No.

8        Q     Do you know if -- did you attend -- strike

9    that.

10            Did you attend any meetings with BNBM

11   Company PLC executives to discuss the lawsuit pending

12   before Judge Fallon in the year 2014?

13            MR. VEJNOSKA:  Objection, vague and

14        ambiguous.

15       A     You're referring to me, with any executives

16   of BNBM?

17   BY MR. HERMAN:

18       Q     Yes.

19            MR. VEJNOSKA:  Same objection.

20       A     No.

21   BY MR. HERMAN:

22       Q     In the year 2014, did you meet with any

23   executive of BNBMG to discuss the lawsuit before Judge

24   Fallon?

25       A     No.

Confidential - Subject to Further Confidentiality Review

```
 1       Q     Were you in any CNBMG meetings before

 2   July 7, 2014, to discuss the case pending before Judge

 3   Fallon?

 4               MR. VEJNOSKA:  Objection, vague and

 5         ambiguous.

 6       A     What meeting are you referring to?

 7   BY MR. HERMAN:

 8       Q     I'm referring to a series of meetings in

 9   which there were reports about the case pending before

10   Judge Fallon.

11               MR. VEJNOSKA:  Same objection,

12         foundation.

13       A     I discussed with who?  Are you referring to

14   that?

15   BY MR. HERMAN:

16       Q     Well, I don't know.  I'm asking you.  Who

17   did you discuss the litigation with before Judge

18   Fallon?  And if it is a lawyer, I'm not going to ask

19   you what was discussed, only that it -- whether you

20   had discussions.  So I would like you to give me the

21   names of any individuals you discussed the litigation

22   with before July 7, 2014.

23       A     The general legal counsel of CNBMG reported

24   to me the updates of gypsum boards lawsuit sometime in

25   July.  I reported to chairman of the board Song
```

Confidential - Subject to Further Confidentiality Review

1    Zhiping.  CNBM Company's general legal counsel

2    Mr. Chang, C-h-a-n-g, reported to me.  I reported to

3    the chairman of the board of CNBM, Mr. Song Gianping.

4        Q    Did you ever request an employee of CNBMG to

5    meet with Chairman Jia about the lawsuit before Judge

6    Fallon?

7        A    No.

8        Q    Did you ever request an employee at BNBMG to

9    meet with Chairman Jia about the lawsuit pending

10   before Judge Fallon?

11       A    Did you say BNBMG?

12       Q    Yes.

13       A    I did not have the right to do so.

14       Q    Did you request any employee of CNBM,

15   Limited, company to meet with Chairman Jia about the

16   lawsuit before Judge Fallon?

17       A    No.

18       Q    Did you ever request anyone to meet with

19   Chairman Jia about the lawsuit pending before Judge

20   Fallon?

21       A    Anyone from what company?

22       Q    From any company.

23       A    No.

24       Q    Did you request anyone to meet with Wenlong

25   Peng about the litigation pending before Judge Fallon?

Confidential - Subject to Further Confidentiality Review

1      A      No.

2      Q      Are you aware now that the gypsum mined by

3   Taishan from the Luneng mine was used in the Taishan

4   gypsum which is the subject of lawsuits before Judge

5   Fallon?

6                  MR. VEJNOSKA:  Objection, foundation.

7      A      Are you asking if I know which mine Taishan

8   Gypsum had used?  Is that right?

9   BY MR. HERMAN:

10     Q      For gypsum board shipped to the United

11  States of America, yes.

12     A      I don't know.

13     Q      Have you ever been told or read a document

14  that gypsum from the Luneng mine was utilized in the

15  drywall which is the subject of the lawsuit before

16  Judge Fallon?

17     A      I don't know.

18                 MR. VEJNOSKA:  Mr. Herman, whenever you

19       reach a convenient place.

20  BY MR. HERMAN:

21     Q      Do you know where the Luneng mine is?

22     A      I don't know.

23     Q      Did you ever visit there?

24     A      No.

25     Q      I'm going to cover one more document and

Confidential - Subject to Further Confidentiality Review

1    then we can recess for about ten minutes if that's

2    okay.

3              MR. VEJNOSKA:  Okay.  If we can do it

4       quickly.

5              (Deposition Exhibit 150 marked.)

6    BY MR. HERMAN:

7       Q    Would you look at Exhibit 150.  I'm going

8    to -- it's already been in evidence as Exhibit 1

9    HL_26, but I'll reintroduce it in this deposition.

10   This is an order issued by Judge Eldon Fallon of the

11   United States District Court of the Eastern District

12   of Louisiana on July 17, 2014.

13      A    Do you have the Chinese translation?

14   BY MR. HERMAN:

15      Q    When were you first advised that Judge Eldon

16   Fallon of the Eastern District of Louisiana had issued

17   an order on July 17, 2014, ordering that Taishan and

18   any of its affiliates or subsidiaries is hereby

19   enjoined from conducting any business in the United

20   States until or unless it participates in this

21   judicial process?

22      A    To my recollection it was sometime in the

23   end of July or the beginning of August.

24      Q    And was this when the board of directors of

25   CNBMG had the second meeting regarding the litigation

1    before Judge Eldon Fallon?

2             MR. VEJNOSKA:  Objection, foundation.

3       A    Are you asking whether I became aware of

4    that before the board of directors meeting was held?

5    Is that what you mean?

6    BY MR. HERMAN:

7       Q    I'll restate the question and try to make it

8    clearer.

9             Was Judge Eldon Fallon's order of

10   injunction of July 17, 2014, discussed at a CNBMG

11   directors meeting?

12      A    The judge's order was reported.

13      Q    At a board of directors meeting of CNBMG?

14      A    Yes.

15      Q    In either July or August of 2014?

16      A    At the board of directors meeting in

17   July 2014, the board of directors was notified the

18   progress of Taishan Gypsum's lawsuit.  There was a

19   resolution by the board of directors meeting.  The

20   resolution states that it respects the opinion of CNBM

21   Company, Limited, as well as a decision of Taishan

22   Gypsum.  The board of directors meeting in August only

23   briefed on the progress of the lawsuit.  There was no

24   discussion nor there was resolution.

25      Q    And the August minutes of the CNBMG board of

1    directors meeting were written down by someone?

2         A      I'm not sure.

3         Q      Wasn't it usual for someone to write down

4    what happened at the board meetings?

5         A      To my current recollection, I believe

6    whatever that I have signed, it did exist.  However, I

7    do not remember whether I have signed CNBMG's board of

8    directors meeting.

9         Q      That's really not my question.  Let me try

10   to ask a better question.

11               MR. VEJNOSKA:  Mr. Herman, if we can

12          make this the last question before we take a

13          break, that would be great.

14               MR. HERMAN:  I can't -- depends on what

15          the witness says.  I'm not going to interrupt

16          this line of questioning.

17               MR. VEJNOSKA:  You said you were going

18          to show him one more document and you've shown

19          him two.

20               MR. HERMAN:  And this is the document

21          and I'm still questioning him on it.

22   BY MR. HERMAN:

23        Q      Was it normal practice for whatever happened

24   at a board of directors meeting to be recorded in

25   writing with regard to CNBMG and related to the

Confidential - Subject to Further Confidentiality Review

1    lawsuit pending before Judge Fallon?

2              MR. VEJNOSKA:  Objection, vague and

3         ambiguous, calls for speculation.

4    A    Usually there would be a written record of

5    board of directors meetings.  I did not see that;

6    therefore, I will not speculate.

7              MR. HERMAN:  Okay.  Start again in ten

8         minutes.

9              THE VIDEOGRAPHER:  This is the end of

10        tape 5 --

11             MR. HERMAN:  Wait, wait, wait.  I want

12        to offer Exhibit 150.  It's already been offered

13        in other depositions.  I offer it here.

14             THE VIDEOGRAPHER:  This is the end of

15        tape 5.  We're now off the record at 4:17.

16             (Recess Taken From 4:17 p.m. To

17             4:34 p.m.)

18             THE VIDEOGRAPHER:  This is the beginning

19        of tape 6.  We're now back on the record and the

20        time is 4:34.

21             MR. HERMAN:  Everyone ready?

22   BY MR. HERMAN:

23   Q    In the year 2014, did you travel to the

24   United States on business?

25   A    2014, no.

Confidential - Subject to Further Confidentiality Review

```
 1      Q     In 2013 did you travel to the United States
 2  on business?
 3      A     What's your definition of "on business"?
 4      Q     Did you travel to the United States of
 5  America in 2013 for any purpose whatsoever?
 6      A     To my recollection, I've been to the United
 7  States to conduct road shows for the company to become
 8  public listed, but I'm not sure.
 9      Q     Well, in the year 2013, didn't you travel to
10  New York in the United States of America and spend
11  four days between April 6th and April 9th in New York
12  for your company's meeting with investors?
13      A     What you just said may refer to the road
14  show I just said, but I'm not sure.  Can you provide
15  me with some kind of document to refresh my memory?
16      Q     Yes.  You have your passport with you?
17      A     No.
18      Q     You have your passport at the hotel?
19      A     In the hotel.
20      Q     I'm going to ask -- I'm going to ask you to
21  refer to your passport tonight for trips to New York
22  and Boston in 2013 and 2014 as the best evidence of
23  your travels to New York and Boston in 2013 and 2014
24  to meet with investors.  Will you agree to do that?
25              MR. VEJNOSKA:  Mr. Herman, we'll take
```

1         your request under advisement.  I've heard it.

2         We'll consider it.

3    BY MR. HERMAN:

4         Q    Let me ask the witness, after he confers

5    with counsel, to bring his passport with him tomorrow

6    when we commence.

7              MR. HERMAN:  I further am going to state

8         for the record as an officer of the court,

9         during a deposition or other court proceeding,

10        it would not be professional for an attorney to

11        ask a witness a question for which there's no

12        basis, and I do have a basis for asking the

13        question.  And at this point that's all I'll

14        say.

15   BY MR. HERMAN:

16        Q    Do you know who Wang Yang is?  W-a-n-g

17   Y-a-n-g.

18        A    There is a vice premier in China by the name

19   of Wang Yang.

20        Q    Do you -- have you ever met with him?

21        A    No.

22        Q    Are you aware that on July 18 -- strike

23   that.

24             Are you aware that on June 21st, 2015,

25   Wang Yang, the vice president of China, wrote a guest

Confidential - Subject to Further Confidentiality Review

1  editorial in English and published it in the United

2  States?

3              MR. VEJNOSKA:   Objection, misstates the

4     record.

5     A     Wang Yang is the vice premier in the State

6  Department of China.  He is not the vice president of

7  China.  I'm not -- I do not know this article.

8  BY MR. HERMAN:

9     Q    Are you aware that Wang Yang, the vice

10 premier in the State Department of China, made this

11 statement:  "the fact that over 95% of Chinese

12 businesses are privately owned or controlled, and that

13 state-owned enterprises are responsible for their own

14 operations, rather than being simply dictated to the

15 state"?

16             I'm going to withdraw the question

17 because I did not give the full context.

18             Are you aware that Wang Yang published

19 an editorial in English in the Wall Street Journal in

20 the United States of America in June of 2015 and said,

21 "Dialogue has also helped US leaders and the public

22 learn more about 21st-Century China.  For example, the

23 fact that over 95% of Chinese businesses are privately

24 owned or controlled, and that state-owned enterprises

25 are responsible for their own operations, rather than

1   being simply dictated to by the state"?

2           MR. VEJNOSKA:  Objection, asked and

3       answered.

4       A    I have not read this article.

5   BY MR. HERMAN:

6       Q    Do you agree that state-owned enterprises

7   are responsible for their own operations rather than

8   being simply dictated to by the state?

9           MR. VEJNOSKA:  Objection -- sorry.

10      A    I'm not sure about its meaning; therefore, I

11  do not want to speculate.

12  BY MR. HERMAN:

13      Q    Okay.

14          MR. HERMAN:  I'm going to offer -- as I

15      agreed with Chris and Harry that I would produce

16      this document, I'm going to offer it as

17      Exhibit 268.  I'm going to provide copies to

18      you.

19          (Deposition Exhibit 268 marked.)

20  BY MR. HERMAN:

21      Q    To your knowledge is Wang Yang a current

22  member of the 25-seat Politburo of the Peoples

23  Republic of China?

24          THE INTERPRETER:  This is the

25      interpreter speaking.  Will the counsel spell

Confidential - Subject to Further Confidentiality Review

```
 1          Politburo?

 2                  MR. HERMAN:  P-o-l-i-t-b-u-r-o.

 3                  MR. VEJNOSKA:  Objection, foundation.

 4      A     I know he is one of the committee members of

 5   the Politburo.

 6                  MR. HERMAN:  I'm going to offer at this

 7          time CAO -- that's Cao Exhibit 276, Timeline of

 8          Taishan Affiliates Doing Business in the United

 9          States During the Contempt Period (July 17, 2014

10          - March, 2015)," and I'll give counsel the

11          opportunity to review this document, and I'll

12          question the witness about it tomorrow.  At that

13          time -- for purposes of noting the record, I'll

14          offer it now, but I'm not going to ask the

15          witness a question about it -- questions about

16          it till tomorrow.

17                  (Deposition Exhibit 276 marked.)

18   BY MR. HERMAN:

19      Q     To your knowledge, is Wenlong Peng -- or was

20   Wenlong Peng a lawyer?

21      A     I don't know.

22      Q     Are you familiar with the law firm Hogan

23   Lovells?

24      A     I know the name.

25
```

Confidential - Subject to Further Confidentiality Review



Confidential - Subject to Further Confidentiality Review

17    BY MR. HERMAN:

18        Q    Were you ever given an opinion by an

19    attorney -- and I don't want to know what the opinion

20    was -- of the word "affiliates" or the word

21    "subsidiaries" in Judge Fallon's order of July 17,

22    2014?

23                MR. VEJNOSKA:  Objection.  I'm going to

24        instruct the witness, Mr. Herman, because your

25        question's too broad.  He certainly cannot find

Confidential - Subject to Further Confidentiality Review

1        out even if they had that discussion yesterday

2        with the client.  If you want to narrow it, I'll

3        consider allowing him to give you a yes or a no.

4               MR. HERMAN:  I'm not going to get into a

5        colloquy about it.  I think that's a speaking

6        objection.  It's not privileged.

7   BY MR. HERMAN:

8     Q    Did you talk to any lawyer about what was

9   meant in Judge Fallon's July 17, 2014, opinion by

10  Judge Fallon's use of the word "affiliates"?

11              MR. VEJNOSKA:  I'm going to object on

12       the basis of privilege.

13              You may answer that question yes or no,

14       Mr. Cao.

15    A    Yes.

16  BY MR. HERMAN:

17    Q    Did you discuss with any attorney the

18  meaning of Judge Fallon's use of the word

19  "subsidiaries" in Judge Fallon's order of July 17,

20  2014?

21              THE INTERPRETER:  May the interpreter

22       inquire counsel what he meant when he said

23       "subsidiaries"?  Did he mean "subsidiary

24       companies" or simply the word "subsidiaries"?

25  BY MR. HERMAN:

```
 1      Q     Going to refer to Judge Fallon's order,

 2   Exhibit 150, which has been previously introduced --

 3               THE INTERPRETER:  May the interpreter

 4         ask for the definition of "subsidiaries" that --

 5         included in counsel's question because in

 6         Chinese it can be translated subsidiary

 7         companies or subsidiaries?  Both are

 8         appropriate.

 9               MR. HERMAN:  The question is

10         subsidiaries as used in Judge Fallon's order.

11         Did the witness ask any attorney as to what was

12         meant by the word "subsidiaries" as spelled out

13         in Judge Fallon's order?

14               MR. VEJNOSKA:  Same objection on the

15         basis of attorney-client privilege.

16               You may answer that question yes or no.

17      A     Yes.

18   BY MR. HERMAN:

19      Q     When did you ask that question?

20               MR. VEJNOSKA:  Objection, lacks

21         foundation.

22      A     I don't recall.

23   BY MR. HERMAN:

24      Q     Was it in July or August of 2014?

25      A     I don't have a clear recollection.
```

Confidential - Subject to Further Confidentiality Review

```
 1        Q      Was it during the period of time from

 2   July 17, 2014, to March 25th, 2015, that you asked

 3   that question of an attorney?

 4               MR. VEJNOSKA:  Objection, lacks

 5          foundation.

 6               MR. PFAEHLER:  And asked and answered

 7          twice.

 8        A      Before today.

 9   BY MR. HERMAN:

10        Q      To the best of your personal recollection,

11   did you ask an attorney about the meaning of the word

12   "affiliates" in Judge Fallon's July 17, 2014, order

13   between the dates July 17, 2014, and March 25th, 2015?

14               MR. VEJNOSKA:  Objection, asked and

15          answered.

16               Again, on the basis of attorney-client

17          privilege, you may answer yes or no, if you

18          recall.

19               I want to be clear, since I'm dealing

20          with a Chinese witness, if the answer is, you

21          don't recall, that is also a permissible answer;

22          yes, no or you don't recall.

23               MR. HERMAN:  I'm going to object.

24          That's not only a speaking nonobjection but also

25          coaching the witness, of which we will take
```

Confidential - Subject to Further Confidentiality Review

1           exception and deal with it later.

2                   MR. VEJNOSKA:  It's my instruction to

3           him and I want it to be clear.  You don't need

4           to translate this if you're worried about the

5           witness understanding it.  I just didn't want to

6           suggest to him as someone unfamiliar with the

7           American judicial process that he could only

8           answer yes or no.

9                   MR. HERMAN:  You don't have to translate

10          this, but I'm sure learned counsel, who is a

11          top-notch, excellent counsel has already advised

12          this witness of that issue many times before

13          today.  I would like an answer to my question.

14                  MR. VEJNOSKA:  I appreciate the

15          testimony.

16     BY MR. HERMAN:

17        Q    So I will repeat the question.  To the best

18     of your personal recollection, did you ask an attorney

19     about the meaning of the word "affiliates" in Judge

20     Fallon's July 17, 2014, order between the dates of

21     July 17, 2014, and March 25, 2015?

22                  MR. VEJNOSKA:  Objection, asked and

23          answered.

24        A    I did ask, but I don't know when.

25                  MR. HERMAN:  It's 10 after 5.  Are

Confidential - Subject to Further Confidentiality Review

1    you -- can we start at 8 tomorrow and go to 6?

2    Want to step out?  I've asked the court reporter

3    to document for all of us the time of recesses

4    that we've had today, and I do have a full day,

5    I believe, of questioning for this witness

6    tomorrow.

7           MR. VEJNOSKA:  Okay.  Then I would ask

8    that -- I hope he documented that we were here

9    at 1:30 and we had to wait to start the

10   afternoon session.

11          MR. HERMAN:  Not for me.

12          MR. VEJNOSKA:  That's correct, it was

13   not for you.  And it was not for our side.  Yes,

14   why don't -- let's -- let's go off the record,

15   please.

16          THE VIDEOGRAPHER:  We're now off the

17   record at 5:09.

18          (Recess Taken From 5:09 p.m. To

19          5:12 p.m.)

20          THE VIDEOGRAPHER:  We're now back on the

21   record.  The time is 5:12.

22          MR. VEJNOSKA:  Mr. Herman, I have spoken

23   to the witness.  He's willing to deviate from

24   the 7-hour federal rule that we have followed in

25   these other cases.  He's willing to go from 9

```
 1        until 6 tomorrow.  I note that today we've taken

 2        either fewer or shorter breaks, I think, than

 3        we've taken in any other depositions that I'm

 4        aware of.  I think we've been scrupulous about

 5        trying to keep those to a minimum and we're also

 6        willing to try to do a shorter lunch tomorrow,

 7        maybe 45 minutes.

 8             As you -- as I noted, you and I were

 9        both back here I think in plenty of time, and

10        maybe if we can get the whole group more quickly

11        tomorrow, we can be ready to go.  So I hope that

12        that's an acceptable combination.

13             MR. HERMAN:  Yeah, I appreciate the

14        witness' accommodation and your accommodation

15        and we'll start at 9 tomorrow.  Hopefully,

16        depending upon how things go, we can conclude

17        this part of the deposition by 6 p.m. central

18        standard time tomorrow.  I want to make sure

19        that it's -- that time is okay with our

20        translator, our court reporters.  Okay?

21             We have a meet and confer scheduled.  We

22        should be able to get through that I think

23        fairly quickly.  You may want to release the

24        witness, the translator, the court reporters,

25        whatever.
```

Confidential - Subject to Further Confidentiality Review

```
 1                MR. VEJNOSKA:  All right.

 2                MR. HERMAN:  I don't feel that when we

 3        deal with each other, it's any necessity to have

 4        a court reporter take down --

 5                MR. VEJNOSKA:  I would love to have a

 6        videotape of you to take home with me.

 7                MR. HERMAN:  Let's do that and you and

 8        I -- you may ask the witness to, you know, be

 9        escorted to the hotel.  I'll be happy to sit

10        next to you, we can face each other --

11                MR. VEJNOSKA:  Wonderful.

12                MR. HERMAN:  -- and we can have a

13        videotape of our discussions if you prefer that.

14                MR. VEJNOSKA:  Perhaps you'll post it on

15        your Facebook page.

16                MR. HERMAN:  I don't have Facebook, I

17        don't have Twitter, but I'm certain that my wife

18        would love to post this videotape.

19                MR. VEJNOSKA:  I suspect it's a good

20        thing you don't have Twitter.

21                MR. HERMAN:  Yes.  It's excellent.

22        Excellent.

23                MR. VEJNOSKA:  All right.  Did you have

24        one more document or are we finished for the

25        day?
```

Confidential - Subject to Further Confidentiality Review

1            MR. HERMAN:  No, I'm going to offer --

2       reoffer Exhibit 1, Hogan Lovells 261 that I've

3       questioned the witness about.

4            MR. VEJNOSKA:  Okay.

5            MR. HERMAN:  That concludes what I have.

6            MR. VEJNOSKA:  Okay.  Thank you very

7       much.  Off the record.

8            THE VIDEOGRAPHER:  This is the end of

9       tape 6.  We're now off the record at 5:15.

10           (Deposition Recessed At 5:15 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Confidential - Subject to Further Confidentiality Review

```
 1                    REPORTER'S CERTIFICATE

 2

 3          This transcript is valid only for a transcript

 4     accompanied by my original signature and original

 5     required seal on this page.

 6          I, Micheal A. Johnson, Certified Court Reporter

 7     (LA Certificate #29025) in and for the State of

 8     Louisiana, as the officer before whom this testimony

 9     was taken, do hereby certify that JIANGLIN CAO, after

10     having been duly sworn by me upon authority of

11     R.S. 37:2554, did testify as herein before set forth

12     in the foregoing 133 pages; that this testimony was

13     reported by me in the stenotype reporting method, was

14     prepared and transcribed by me or under my personal

15     direction and supervision, and is a true and correct

16     transcript to the best of my ability and

17     understanding; that the transcript has been prepared

18     in compliance with transcript format guidelines

19     required by statute or by rules of the board, and that

20     I am informed about the complete arrangement,

21     financial or otherwise, with the person or entity

22     making arrangements for deposition services; that I

23     have acted in compliance with the prohibition on

24     contractual relationships, as defined by Louisiana

25     Code of Civil Procedure Article 1434
```

Confidential - Subject to Further Confidentiality Review

1    and in rules and advisory opinions of the board;

2    that I have no actual knowledge of any prohibited

3    employment or contractual relationship, direct or

4    indirect, between a court reporting firm and any party

5    litigant in this matter nor is there any such

6    relationship between myself and a party litigant in

7    this matter.  I am not related to counsel or to the

8    parties herein, nor am I otherwise interested in the

9    outcome of this matter.

10

11          Signed this ___ day of _____, 2015.

12

13

14          _____

15          MICHEAL A. JOHNSON, RMR, CRR

16          Certified Court Reporter

17          LA Certified Court Reporter #29025

18

19

20

21

22

23

24

25

```
 1                ACKNOWLEDGMENT OF DEPONENT

 2

 3           I,_____, do hereby

 4   certify that I have read the foregoing pages and

 5   that the same is a correct transcription of the

 6   answers given by me to the questions therein

 7   propounded, except for the corrections or changes in

 8   form or substance, if any, noted in the attached

 9   Errata Sheet.

10

11           _____

12           JIANGLIN CAO                    DATE

13

14   Subscribed and sworn to before me this

15   _____ day of _____, 20 _____.

16   My commission expires: _____

17

18   Notary Public

19

20

21

22

23

24

25
```

1          — — — — — —

2              ERRATA

            — — — — — —

3

4    PAGE    LINE     CHANGE

5    _____    _____    _____

6    _____    _____    _____

7    _____    _____    _____

8    _____    _____    _____

9    _____    _____    _____

10    _____    _____    _____

11    _____    _____    _____

12    _____    _____    _____

13    _____    _____    _____

14    _____    _____    _____

15    _____    _____    _____

16    _____    _____    _____

17    _____    _____    _____

18    _____    _____    _____

19    _____    _____    _____

20    _____    _____    _____

21    _____    _____    _____

22    _____    _____    _____

23    _____    _____    _____

24    _____    _____    _____

25    _____    _____    _____

```
 1              UNITED STATES DISTRICT COURT

 2              EASTERN DISTRICT OF LOUISIANA

 3    ****************************************************

 4    IN RE:  CHINESE-MANUFACTURED  MDL NO. 2047

      DRYWALL PRODUCTS LIABILITY

 5    LITIGATION                    SECTION:  L

 6    THIS DOCUMENT APPLIES TO      JUDGE FALLON

      ALL CASES

 7                                  MAG. JUDGE WILKINSON

 8    ****************************************************

 9

              CONFIDENTIAL - SUBJECT TO FURTHER

10                 CONFIDENTIALITY REVIEW

11                Wednesday, August 5, 2015

12                     — — —

13

14         Videotaped Deposition of JIANGLIN CAO,

15    VOLUME 2, held at Gordon Arata McCollam DuPlantis &

16    Eagan LLC, 201 St. Charles Avenue, Suite 4000,

17    New Orleans, Louisiana, commencing at 9:04 a.m., on

18    the above date, before Micheal A. Johnson, Certified

19    Court Reporter (#29025), Registered Merit Reporter and

20    Certified Realtime Reporter.

21

22                     — — —

23

24         GOLKOW TECHNOLOGIES, INC.

          877.370.3377 ph | 917.591.5672 fax

25              deps@golkow.com
```

Confidential - Subject to Further Confidentiality Review

```
 1   A P P E A R A N C E S:
 2   COUNSEL FOR THE PLAINTIFF CLASS:
 3       HERMAN HERMAN & KATZ LLC
         BY:  RUSS M. HERMAN, ESQUIRE
 4            rherman@hhklawfirm.com
              MADELYN M. O'BRIEN, ESQUIRE
 5            mobrien@hhklawfirm.com
         820 O'Keefe Avenue
 6       New Orleans, Louisiana 70113
         (504) 581-4892
 7
 8       LEVIN FISHBEIN SEDRAN & BERMAN
         BY:  SANDRA L. DUGGAN, ESQUIRE
 9            sduggan@lfsblaw.com
         510 Walnut Street, Suite 500
10       Philadelphia, Pennsylvania 19106
         (215) 592-1500
11
12       IRPINO LAW FIRM
         BY:  PEARL A. ROBERTSON, ESQUIRE
13            probertson@irpinolaw.com
              ANTHONY D. IRPINO, ESQUIRE
14            airpino@irpinolaw.com
         2216 Magazine Street
15       New Orleans, Louisiana 70130
         (504) 525-1500
16
17       GAINSBURGH BENJAMIN DAVID MEUNIER & WARSHAUER LLC
         BY:  RACHEL A. STERNLIEB, ESQUIRE
18            rsternlieb@gainsben.com
         1100 Poydras Street, Suite 2800
19       New Orleans, Louisiana 70163-2800
         (504) 522-2304
20
21
22
23
24
25
```

Confidential - Subject to Further Confidentiality Review

```
 1   A P P E A R A N C E S:
 2   COUNSEL FOR TAISHAN GYPSUM COMPANY:
 3        ALSTON & BIRD LLP
          BY:  JOSHUA L. BECKER, ESQUIRE
 4            josh.becker@alston.com
              (Via Speakerphone)
 5        1201 West Peachtree Street
          Atlanta, Georgia 30309-3424
 6        (404) 881-4732
 7
     COUNSEL FOR BNBM DEFENDANTS:
 8
          DENTONS US LLP
 9        BY:  KENNETH J. PFAEHLER, ESQUIRE
              kenneth.pfaehler@dentons.com
10        1301 K. Street, NW
          Suite 600, East Tower
11        Washington, D.C. 20005-3364
          (202) 408-6468
12
13        PHELPS DUNBAR LLP
          BY:  HARRY ROSENBERG, ESQUIRE
14            harry.rosenberg@phelps.com
          365 Canal Street, Suite 2000
15        New Orleans, Louisiana 70130-6535
          (504) 566-1311
16
17   COUNSEL FOR CNBM DEFENDANTS:
18        ORRICK HERRINGTON & SUTCLIFFE LLP
          BY:  L. CHRISTOPHER VEJNOSKA, ESQUIRE
19            cvejnoska@orrick.com
              ANDREW K. DAVIDSON, ESQUIRE
20            adavidson@orrick.com
              JASON M. WU, ESQUIRE
21            jmwu@orrick.com
          405 Howard Street
22        San Francisco, California 94105-2669
          (415) 773-5916
23
24
25
```

Confidential - Subject to Further Confidentiality Review

```
 1   A P P E A R A N C E S:
 2   COUNSEL FOR CNBM DEFENDANTS:
 3
         ORRICK HERRINGTON & SUTCLIFFE LLP.
 4       BY:  JAMES L. STENGEL, ESQUIRE
              jstengel@orrick.com
 5       51 West 52nd Street
         New York, New York 10019-6142
 6       (212) 506-3775
 7
         ORRICK HERRINGTON & SUTCLIFFE LLP
 8       BY:  XIANG WANG, ESQUIRE
              xiangwang@orrick.com
 9       5701 China World Tower
         No. 1 Jianguomenwai Avenue
10       Beijing 100004
         People's Republic of China
11       +86 10 8595 5668
12
         GORDON ARATA McCOLLAM DUPLANTIS & EAGAN LLP
13       BY:  EWELL E. EAGAN, JR., ESQUIRE
              eeagan@gordonarata.com
14       201 St. Charles Avenue, Suite 4000
         New Orleans, Louisiana 70170-4000
15       (504) 582-1111
16
     COUNSEL FOR THE STATE OF LOUISIANA:
17
         PERKINS COIE LLP
18       BY:  CRAIG M.J. ALLELY, ESQUIRE
              callely@perkinscoie.com
19       1900 Sixteenth Street, Suite 1400
         Denver, Colorado 80202-5255
20       (303) 291-2304
21
         OFFICE OF THE ATTORNEY GENERAL STATE OF
22       LOUISIANA
         BY:  L. Christopher Styron
23            styron@ag.state.la.us
         1885 North Third Street
24       Baton Rouge Louisiana 70802
         (225) 326-6079
25
```

```
 1   ALSO PRESENT:

 2        ALEX FAIA

 3        TONI XU

 4        MELISSA BARDWELL, VIDEOGRAPHER

          SUNNY WANG, MANDARIN INTERPRETER

 5                        ── ── ──

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                      INDEX

                  JIANGLIN CAO

 2                 August 5, 2015

 3

 4      PROCEEDINGS                      144

 5

 6   EXAMINATION OF JIANGLIN CAO:

 7          BY MR. HERMAN            144

 8

 9      REPORTER'S CERTIFICATE           256

10

11

12      INFORMATION REQUESTED BY COUNSEL FOR CNBM

13              Page 155, Line 5

                Page 193, Line 16

14              Page 204, Line 22

15

16

17

18

19

20

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                        DEPOSITION EXHIBITS
                             JIANGLIN CAO
 2                          August 5, 2015
 3
 4      NUMBER                DESCRIPTION              MARKED
 5      Exhibit        CNBM Trading Storefront on       223
        44-1(I)        Alibaba
 6
        Exhibit        CNBM International Corp.          224
 7      44-1(J)        Storefront on Alibaba
 8      Exhibit        CNBM International               224
        44-1(K)        Engineering Co. On Alibaba
 9
        Exhibit 73     Translation of                   225
10                     CNBMGRP00000668-672 Report on
                       the Rectification of the
11                     Relevant Issues re 2009
                       Annual Financial Final
12                     Account - CNBM Group.
                       Discusses CNBM International
13                     (USA)
14      Exhibit 144-2  FL Secretary of State            211
                       Business Certification for
15                     BNBM America and its Articles
                       of Association
16
        Exhibit 144-3  2001-2005 Uniform Business       211
17                     Reports of BNBM America from
                       FL Secretary of State
18
        Exhibit 144-4  FL Secretary of State            211
19                     Corporations Database Showing
                       Stoneworks Ownership
20
        Exhibit 215    Translation of                   237
21                     BNBM(Group)-E-0000444-446:
                       7/14/2014 Email from Zhu Hui
22                     to Zhang Yi, Chen Lingying,
                       Lu Kailong, Li Lin, Sun Yao,
23                     Zhao Jie, RE: "About the
                       meeting in the morning" and
24                     attaching "International Risk
                       Prevention"
25
```

```
 1                    DEPOSITION EXHIBITS
                         JIANGLIN CAO
 2                      August 5, 2015
 3
 4    NUMBER              DESCRIPTION           MARKED
 5    Exhibit 256    BNBM PLC Board of Supervisors    231
                     Meeting Minutes for the years
 6                   2004-2015
 7    Exhibit 258    NJIT Agreements and              189
                     Contracts, (7/31/13 PV
 8                   Materials Technology
                     Agreement; Collaborative
 9                   Graduate Certificate Program
                     Agreement; Second PV
10                   Technology Development
                     Agreement; Second
11                   Collaborative Graduate
                     Certificate Program
12                   Agreement)
13    Exhibit 261    CNBM Perfected Service           181
14    Exhibit 262    CNBM Group Perfected Service     180
15    Exhibit 270    CNBM Storefront on               220
                     Alibaba.com (8/15/14)
16
      Exhibit 270-1  CNBM Storefront on               220
17                   Alibaba.com (4/13/14)
18    Exhibit 271    Alibaba Gold Supplier            220
                     Services Agreement (accessed
19                   8/15/14 at
                     http://www.alibaba.com/about/
20                   agreement.html)
21    Exhibit 271-1  Alibaba.com Free Membership      220
                     Agreement (accessed 8/15/14
22                   at:
                     Http://news.alibaba.com/
23                   article/detail/help/100453670
                     -1-alibaba.com-free-
24                   membership-agreement.html
25
```

Confidential - Subject to Further Confidentiality Review

```
 1                      DEPOSITION EXHIBITS
                            JIANGLIN CAO
 2                        August 5, 2015
 3
 4   NUMBER               DESCRIPTION              MARKED
 5
     Exhibit 271-2   Terms and Rules: Highlights     220
 6                   on Member Conduct (accessed
                     8/15/14 at:
 7                   Http://www.alibaba,com/help/
                     safety_security/policies_
 8                   rules/membership_account/001.
                     htm
 9
     Exhibit 272     1/29/2015 New Orleans           220
10                   Advocate Articles: Alibaba,
                     Regulators At Odds Over Fake
11                   Goods
12   Exhibit 274     BNBM of America, Ltd. Filing    243
                     with the Oregon Secretary of
13                   State
14   Exhibit 275     Translation of                  244
                     BNBM(Group)-E-0006683 The
15                   Company Obtained
                     International Invention
16                   Patent for the First Time
17   Exhibit 277     Travel Plan for US Road Show    145
                     2013
18
     Exhibit 278     Travel Plan for US Road Show,   145
19                   CNBMCO008868-8869 Package
20   Exhibit 296     Partial Translation of          172
                     CNBMCO00000607
21
     Exhibit 297     Translation of                  234
22                   DNBMCO000065306 September 16,
                     2014 Email from Feng Zhang to
23                   Cao Jianglin and Chief Change
                     RE: Report Regarding BNBM's
24                   Private Placement at this
                     time
25
```

Confidential - Subject to Further Confidentiality Review

```
 1                    DEPOSITION EXHIBITS
                        JIANGLIN CAO
 2                     August 5, 2015

 3

 4    NUMBER                 DESCRIPTION              MARKED

 5
      Exhibit 298    US Entry Data                     166
 6
      Exhibit 300    Translation of CNBMCO00069453     232
 7
      Exhibit 301    Translation of                    245
 8                   CNBMGRP00182703
 9    Exhibit 301-1  Partial Translation of            245
                     CNBMGRP00182704-182711
10

11

12

13                 PREVIOUSLY MARKED EXHIBITS

14
      NUMBER               DESCRIPTION            REFERENCED
15
      Exhibit 90    ...........................        206
16

17

18

19

20

21

22

23

24

25
```

Confidential - Subject to Further Confidentiality Review

```
 1                    PROCEEDINGS

 2              THE VIDEOGRAPHER:  This begins disk 1 of

 3         volume 2 of the deposition of Cao Jianglin taken

 4         in reference to the Chinese-Manufactured Drywall

 5         Products Liability Litigation.

 6              The date today is August 5th, 2015.

 7         Time now is approximately 9:04 a.m.  We are back

 8         on the record.

 9              MR. HERMAN:  Thank you.  Good morning

10         and I do remind the witness that the witness is

11         still under oath.

12              (Witness reminded of his oath.)

13                   JIANGLIN CAO,

14           having been first duly sworn,

15             testified as follows:

16                   EXAMINATION

17   BY MR. HERMAN:

18      Q    Good morning, Chairman Cao.  Yesterday with

19   reference to Exhibit 268, an editorial by Wang Yang in

20   the Wall Street Journal, I asked you some questions.

21   I just have one more.  Are you aware that Xi Jinping

22   is scheduled for a state visit to the United States of

23   America in September?

24      A    I noticed such reports from the media.

25      Q    The spelling of the president's name is X-i
```

1   J-i-n-p-i-n-g.

2               Are you aware of what the state visit

3   entails?

4       A     I do not know.

5               MR. HERMAN:  Let's go off the record for

6       one moment.  We have --

7               THE VIDEOGRAPHER:  Time now is 9:07 a.m.

8       We are off the record.

9               (Recess Taken From 9:07 a.m. To

10              9:07 a.m.)

11              THE VIDEOGRAPHER:  Time now is 9:07 a.m.

12      We are back on the record.

13              (Deposition Exhibit 277 marked.)

14              (Deposition Exhibit 278 marked.)

15              MR. VEJNOSKA:  Mr. Herman, late

16      yesterday in the deposition, you requested

17      certain information about Mr. Cao's visits to

18      the United States and requested to see his

19      passport.  After the deposition we met and

20      conferred and you graciously agreed that you

21      would accept a list prepared by us of his entry

22      data into the United States, and I have such a

23      list which I hand to you now.  And I apologize,

24      we just created the list this morning, so I

25      don't have extra copies for everyone.

Confidential - Subject to Further Confidentiality Review

```
 1              MR. HERMAN:  That's not a problem.

 2        We'll mark the document with an exhibit number

 3        and we can, in a break, have it copied for

 4        everyone.

 5              MR. VEJNOSKA:  Terrific.

 6              MR. HERMAN:  Now, in connection with

 7        this, I indicated to the witness yesterday I had

 8        some material that brought forth the question,

 9        and I'm going to provide Exhibits 277 and 278 to

10        counsel because I really do like to follow the

11        rule that counsel's got to have some basis for

12        asking the question.

13              I'm going to direct you to -- first to

14        Exhibit 277, Bates numbers 8841 to 8842 as

15        produced by CNBM Company.  And in the metadata

16        at page 4, at 8841, it indicates a 2014 date

17        which is the reason that I asked about 2014 and

18        evidently it is, as indicated, a 2013 visit in

19        April, and on the passport of the document

20        you've handed me, April 13, 2013.

21              And I also have the Chinese versions of

22        Exhibit 277 at Bates number CNBM Company 841 --

23        8841 and 8842 attached.

24   BY MR. HERMAN:

25        Q     When you -- counsel, from your passport,
```

Confidential - Subject to Further Confidentiality Review

1  indicates you arrived in New York City on April 13th,

2  2013.  Do you recall how many days -- well, first of

3  all, on that trip did you spend any time in Boston

4  meeting with investors?

5      A     Are you referring to the road show in April

6  of 2013?

7      Q     Yes.

8      A     Usually I would stay in New York for two to

9  three days and Boston for one to two days, but for

10 this trip specifically, I do not have a clear

11 recollection.

12     Q     When did you depart for Beijing if you

13 arrived in New York City on April 13th, 2013?

14     A     It takes about 12 hours to fly from Beijing

15 to New York.

16     Q     Yes.  My question is, when -- this document

17 that your counsel has handed me shows that you arrived

18 in New York City on April 13th, 2013.  My question is,

19 when did you leave New York City for either Boston or

20 Beijing in April of 2013?

21     A     Are you referring to I leaving New York to

22 Boston or I leaving New York for Beijing?

23     Q     Well, first of all, did you leave New York

24 for Boston in April of 2013?

25     A     To my recollection I did go to Boston.

Confidential - Subject to Further Confidentiality Review

```
 1      Q      And when did you leave the United States

 2   after your road show trip in April 2013 to New York

 3   and Boston?

 4                  I'm going to repeat the question

 5   because it's either got a dangling participle or

 6   something syntax wrong.

 7                  In April of 2013 after you visited New

 8   York and Boston in connection with the 2013 annual

 9   road show, on what date did you leave the United

10   States of America?

11                  MR. VEJNOSKA:  Objection, foundation.

12      A      I don't have a clear recollection as of when

13   specifically I left the United States.

14   BY MR. HERMAN:

15      Q      Does your passport reflect when you left the

16   United States of America in April of 2013?

17      A      My recollection is that's -- when I leave

18   the United States, the United States customs would not

19   stamp on it.

20      Q      Are there any written communications as to

21   that trip?

22      A      Between who and who, please?

23      Q      Between you and your company or companies.

24      A      I was told by the secretary of the board of

25   directors the arrangement on the road show before I
```

Confidential - Subject to Further Confidentiality Review

```
 1    came.  I said, after the schedule comes out, please

 2    submit it to Chairman Song Zhiping for review.

 3         Q      After you returned to Beijing after your

 4    April 2013 road show, did you record any impressions

 5    as regards the road show?

 6         A      No.

 7         Q      Did you record any impressions of your

 8    activities in the 2013 annual road show on the flight

 9    back from the United States?

10         A      No.

11         Q      You indicated that your schedule was

12    arranged by the secretary of the board of directors.

13    Which board of directors?

14         A      CNBM Company, Limited.

15         Q      Did Zhangli Chang accompany you?

16         A      I'm sorry, I don't have a clear recollection

17    on that.

18         Q      For the record, who is Zhangli Chang?

19         A      He is the secretary of the company's board

20    of directors.

21         Q      CNBM Company, Limited, correct?

22         A      Yes.

23         Q      And did -- excuse my pronunciation -- Xue'an

24    Chen -- did Xue'an Chen attend the 2013 road show in

25    the United States?
```

Confidential - Subject to Further Confidentiality Review

1    A    Are you referring to the road show in April

2  of 2013?

3    Q    Yes.

4    A    I would like to explain that the road show

5  in April of 2013 was for the annual report of 2012.

6  Whether Mr. Chen Xuian [sic] had accompanied me to

7  attend, I do not recall at this moment.

8    Q    Do you recall whether Zhangli Chang attended

9  the 2013 road show in the United States if he did not

10  accompany you?

11    A    I'm sorry, I do not recall.

12    Q    Do you recall if Xue'an Chen, X-u-e-'-a-n

13  C-h-e-n, attended the 2013 road show even if he did

14  not accompany you?

15    A    I'm sorry, I don't have a clear recollection

16  on that.

17    Q    Where are the travel reimbursement vouchers

18  and reports for April 2013 for the company CNBM

19  Company, Limited, kept?

20        MR. VEJNOSKA:  Objection, foundation.

21    A    Are you talking about reimbursements on

22  expenses?

23  BY MR. HERMAN:

24    Q    Yes.

25        MR. VEJNOSKA:  Same objection.

Confidential - Subject to Further Confidentiality Review

1     A     In the finance department of CNBM Company,

2  Limited.

3  BY MR. HERMAN:

4     Q     Where in 2013 in April was the finance

5  department of CNBM Company, Limited, located?

6     A     China Beijing, Haidian District, Guohai

7  Square.

8     Q     Who was in charge of the finance department

9  of CNBM Company, Limited, in April of 2013?

10     A     At the time the general manager of the

11  finance department is Madame Pei Hongyan.

12     Q     Who is the manager of the finance department

13  of CNBM Company, Limited, today?

14     A     Today it is still Madame Pei Hongyan.

15     Q     And is Madame Pei's office in the same

16  building today that it was in April of 2013?

17     A     Yes.

18     Q     Now, referring to page 8841, the metadata

19  indicates revision number 5.  To your best

20  recollection, was the schedule listed on 8842 revised

21  so that your arrival in New York City was on

22  April 13th, 2013?

23          MR. VEJNOSKA:  Objection, foundation.

24     Move to strike the introductory statement.

25          You may answer.

Confidential - Subject to Further Confidentiality Review

```
 1      A     I'm not sure about the schedule, but the

 2   fact is the date that I arrived in the United States

 3   was in April, the 13th.

 4   BY MR. HERMAN:

 5      Q     Who was Xue'an -- sorry, Xue'an Chen

 6   employed by in April of 2013?  What company?

 7      A     I'm sorry, what time?

 8      Q     April 2013.

 9      A     CNBM Company, Limited.

10      Q     And what was his position in that company

11   on -- in April of 2013?

12      A     Vice president financial controller.

13      Q     Now, during the April '13 annual road show,

14   did representatives of BNBM Company PLC also attend

15   the 2013 annual road show?

16      A     Are you referring to the road show in

17   April 2013 in the United States?

18            MR. HERMAN:  Will the court reporter

19       read back my prior question.

20            (Question Read Back.)

21            MR. VEJNOSKA:  Objection, vague and

22       ambiguous.

23      A     No.

24   BY MR. HERMAN:

25      Q     Did Chairman Song attend the 2013 annual
```

Confidential - Subject to Further Confidentiality Review

1    road show in the United States?

2        A      No.

3        Q      Were any other individuals employed by CNBMG

4    in attendance at the 2013 annual road show in the

5    United States?

6        A      No.

7        Q      Did you meet with investors in the

8    April 2013 road show?

9        A      Yes.

10       Q      What -- or which investors do you recall

11   meeting with in the April 2013 road show?

12       A      I'm sorry, I don't have a clear recollection

13   on that.

14       Q      Did you meet with representatives of any

15   investment bank?

16       A      Yes.

17       Q      Which banks?

18       A      I don't have a clear recollection.

19       Q      Did you meet with any representative of

20   CitiBank, C-i-t-i Bank?

21       A      I don't have a clear recollection.

22       Q      Did you meet with any representative of

23   Morgan Stanley bank?

24       A      I don't have a clear recollection.

25       Q      Did you meet with any representative of

Confidential - Subject to Further Confidentiality Review

```
 1   JPMorganChase?

 2       A      I don't have a clear recollection.

 3       Q      Did you meet -- for what purpose did you

 4   meet investors?

 5              MR. VEJNOSKA:   Objection, vague and

 6          ambiguous.

 7       A      I met them to let them know the company's

 8   financial status for the prior year.  This is a common

 9   practice of all public listing companies.

10   BY MR. HERMAN:

11       Q      Did you meet with then-current investors

12   that held H shares in CNBM Company, Limited?

13       A      At the time I met with the investors, I did

14   not know whether those investors were or were not the

15   shareholders of CNBM's shares.  Neither did I know

16   whether or not they would invest in CNBM Company,

17   Limited.

18       Q      Where did the meetings take place in New

19   York City with investors or potential investors?

20       A      Most of the time in investors' own offices.

21       Q      Did you ever meet in a public place, such as

22   a hotel, during the April 2013 annual road show?

23       A      In the road show occasionally investors'

24   group meetings were held in hotels, but I do not have

25   a clear recollection on whether that happened in the
```

1    road show in April 2013.

2        Q     Did you meet with investors who held H

3    shares of CNBM Company, Limited, in Boston in the

4    United States during the April 2013 road show?

5                  MR. VEJNOSKA:  Would you mark the last

6        answer.

7        A     At the time I met with investors, I did not

8    know whether they were or not already shareholders of

9    CNBM Company, Limited.  I also did not know whether

10   they would invest in CNBM Company, Limited, in the

11   future.

12   BY MR. HERMAN:

13       Q     When you met with investors or potential

14   investors in the 2013 annual road show in April, was

15   there any mention by anyone of the lawsuit pending

16   before Judge Fallon?

17       A     In April of 2013 during the time of the road

18   show, I did not mention, neither that the lawsuit was

19   mentioned to me.

20       Q     Did any representative of CNBM Company,

21   Limited, in the meetings with investors and potential

22   investors in April of 2013 in New York, mention the

23   lawsuit pending before Judge Fallon?

24       A     I'm not sure.

25       Q     At the meeting in Boston during the 2013

1   annual road show in the United States, did anyone

2   mention the lawsuit pending before Judge Fallon, and

3   I'm speaking now of the April 2013 road show?

4       A    I did not mention the lawsuit, neither the

5   lawsuit was mentioned to me.

6       Q    Did any representative of CNBM Company,

7   Limited, mention the lawsuit pending before Judge

8   Fallon at the Boston investor meetings in April of

9   2013?

10      A    I'm not sure.

11      Q    At the New York meeting in April of 2013,

12  did you have an agenda of which meetings would take

13  place?

14      A    Are you referring to whether those meetings

15  were prearranged?

16      Q    I'm referring to whether there was any

17  advance agenda to take place during the 2013 April

18  meetings.

19      A    Are you referring to what were to be

20  discussed in the meetings?

21      Q    I'm referring to, at this point, where the

22  meetings would take place.

23      A    The addresses of the meetings were confirmed

24  prior to the meetings.

25      Q    Where are the confirmations of the meetings

Confidential - Subject to Further Confidentiality Review

1    that were to take place at the annual road show in the

2    United States during the month of April 2013?

3                    MR. VEJNOSKA:  Objection, foundation.

4        A    A certain investment bank arranged the

5    meeting.

6    BY MR. HERMAN:

7        Q    All the meetings?

8                    THE INTERPRETER:  The interpreter needs

9         to clarify with deponent whether the word --

10   BY MR. HERMAN:

11       Q    I'll restate the question.

12                   THE INTERPRETER:  -- "investment bank"

13        was plural or singular in his answer.

14   BY MR. HERMAN:

15       Q    I will repeat the question and rephrase it.

16                   At the road show in New York in April

17   of 2013, who or what investment bank arranged the

18   meetings?

19       A    I'm sorry, I don't have a clear recollection

20   on that.

21       Q    Who employed by CNBM Company, Limited,

22   received the meetings' dates and places from the

23   investment bank you can't remember?

24                   MR. VEJNOSKA:  Objection, foundation.  I

25        think from the interpreter's prior comment, may

Confidential - Subject to Further Confidentiality Review

1        misstate the record.

2                THE INTERPRETER:  This is the

3        interpreter speaking.  The interpreter did not

4        understand what the counsel objected about the

5        interpreter's prior comment.

6                MR. HERMAN:  Don't worry about it.  You

7        are the interpreter the court's appointed.

8    BY MR. HERMAN:

9        Q    And I'm going to repeat my question since

10   it's been interrupted with a speech.

11               Who, employed by CNBM Company,

12   Limited, received the meetings' dates and places from

13   the investment bank you can't remember?

14               MR. VEJNOSKA:  Same objections.

15       A    The investors relation administration

16   department of CNBM Company, Limited.

17   BY MR. HERMAN:

18       Q    Who was in charge of that department for

19   CNBM Company, Limited, in April of 2013?

20       A    According to my recollection, it was Madame

21   Zeng Xuan.

22       Q    And where is Madame Zeng Xuan currently in

23   charge of the investors relation administration

24   department of CNBM Company, Limited?

25               THE INTERPRETER:  This is the

Confidential - Subject to Further Confidentiality Review

1          interpreter speaking.  Did the counsel say

2          "where is Madame" --

3                    MR. HERMAN:  Where is Madame Zeng Xuan

4          currently in charge of investors relation

5          administration department of CNBM Company,

6          Limited?

7                    MR. VEJNOSKA:  Objection, vague and

8          ambiguous.

9                    MR. HERMAN:  It is vague and ambiguous

10         and I'm going to restate the question.

11    BY MR. HERMAN:

12         Q      Is Madame Xuan Zeng currently in charge of

13    the investors relation administration department of

14    CNBM Company, Limited?

15         A      Yes.

16         Q      And where is her office located?

17         A      China Beijing, Haidian District, Guohai

18    Square.

19         Q      Who prepared -- strike that.

20                    Were there materials prepared for CNBM

21    Company representatives to display or hand out to

22    investors or potential investors at the 2013 annual

23    road show?

24         A      There was a PPT prepared by the company's

25    finance department, investors relation administration

Confidential - Subject to Further Confidentiality Review

1   department and attorneys.

2       Q    Did you or any representative of CNBM

3   Company, Limited, display a PowerPoint presentation

4   during the 2013 annual road show to investors and

5   potential investors?

6                MR. VEJNOSKA:  Objection, asked and

7         answered.

8       A    A written PPT was given to them.

9   BY MR. HERMAN:

10      Q    Was it given to each potential or actual

11  investor?

12      A    The company material will be distributed to

13  the investors in each and every one of those meetings.

14      Q    Where are the meeting presentations for the

15  road show in 2013 in April maintained?

16      A    Investor relation administration department.

17      Q    Did you participate in road shows for CNBM

18  Company, Limited, before April of 2013?

19      A    Yes.

20      Q    And were those road shows in New York City?

21      A    In Hong Kong, Singapore, London and New

22  York, but I do not remember clearly the specifics.

23      Q    Are the materials that were distributed to

24  investors at those road shows also prepared by the

25  investor relations department of CNBM Company,

Confidential - Subject to Further Confidentiality Review

```
 1    Limited?

 2                MR. VEJNOSKA:  Objection, foundation and

 3         compound.

 4    A      Which occasion and what material?

 5    BY MR. HERMAN:

 6    Q      Well, let's start with nineteen -- 2012

 7    annual road show.  Did you attend that road show?

 8                MR. VEJNOSKA:  Objection, foundation.

 9    A      I don't have a clear recollection.

10    BY MR. HERMAN:

11    Q      Did you attend an annual road show in the

12    United States of America in the year 2011?

13    A      I do have an impression of that, but I am

14    not 100 percent sure of it.

15    Q      What is your impression of it?

16    A      Maybe I came.

17    Q      In the year 2010, did you attend a road show

18    in the United States of America?

19    A      I don't have a clear recollection.

20    Q      In the year 2009, did you attend a road show

21    in the United States of America?

22    A      I don't have a clear recollection.

23    Q      In the year 2008, did you attend a road show

24    in the United States of America?

25    A      I don't have a clear recollection.
```

Confidential - Subject to Further Confidentiality Review

```
1      Q     In the year 2007, did you attend a road show
2   in the United States of America?
3      A     I don't have a clear recollection.
4      Q     In the year 2006, did you attend a road show
5   in the United States of America?
6      A     Yes.
7      Q     Where did -- where was that road show?
8      A     The road show took place in New York, Boston
9   and San Francisco one after another.
10     Q     Did the investor relations department of
11  CNBM Company, Limited, prepare materials for investors
12  and potential investors in connection with the 2006
13  road show?
14     A     The road show in 2006 was for the purpose of
15  CNBM Company, Limited's IPO.  According to the spectus
16  --
17           THE INTERPRETER:  Interpreter needs to
18        check the dictionary for that word.  Give me a
19        minute.
20           MR. VEJNOSKA:  Madame Interpreter --
21           THE INTERPRETER:  Uh-huh.
22           MR. VEJNOSKA:  -- might the word be
23        "prospectus"?
24           THE INTERPRETER:  I think so,
25        prospectus.
```

Confidential - Subject to Further Confidentiality Review

1      A      According to prospectus it was prepared by

2  the investment bank and the company.

3             THE INTERPRETER:  Thank you.

4      A      And attorneys.

5  BY MR. HERMAN:

6      Q      And was that investment bank the Morgan

7  Stanley bank?

8      A      According to my recollection, it was Morgan

9  Stanley and CICC.

10     Q      From 2009 through 2014, were there global

11  road shows that CNBM Company, Limited, attended in the

12  United States of America at least once each year?

13             MR. VEJNOSKA:  Objection, compound.

14     A      During this period of time we publish an

15  annual report each year in Hong Kong, but I don't have

16  a clear recollection of whether we came to the United

17  States each time.

18  BY MR. HERMAN:

19     Q      Do you ever recall making a statement in

20  writing that from 2006 through 2009 there were at

21  least two road shows in the United States of America

22  for investors and potential investors?

23     A      I don't understand you.

24     Q      You attended a road show in the United

25  States of America, or some other event, after you

1    arrived in New York City on September 14th, 2013.

2        A    You're referring to when I came to America

3    in April 2013?  That was a road show.

4        Q    Sir, that's -- if I asked the question

5    improperly, I'm sorry.  I said after you arrived in

6    New York on September -- September 14, 2013, what

7    events did you attend?

8        A    Interim report road show.  Are you referring

9    to September of 2013?

10            MR. HERMAN:  Would the court reporter

11        please repeat my previous question -- the

12        translator.

13            THE INTERPRETER:  The interpreter will

14        repeat counsel's prior question.

15       A    The road show for the interim report of CNBM

16   Company, Limited.

17   BY MR. HERMAN:

18       Q    In what cities did you appear at in

19   September of 2013 in the United States of America?

20       A    According to my recollection it was New York

21   or Boston, but I'm not sure about Boston.

22       Q    And was the purpose of your meeting to meet

23   in the United States for investors and potential

24   investors in CNBM Company, Limited?

25            MR. VEJNOSKA:  Objection, vague and

Confidential - Subject to Further Confidentiality Review

1        ambiguous.

2        A       Similar to the prior situation.

3    BY MR. HERMAN:

4        Q       What investment banks attended?

5        A       I don't have a clear recollection.

6        Q       And are the records of that visit also

7    obtained at CNBM Company, Limited, as the records of

8    the April 2013 road show?

9        A       I would think so.

10       Q       And at any of those meetings in September of

11   2013, did any mention of the lawsuit pending before

12   Judge Fallon come up?

13       A       It was not mentioned.

14       Q       Was there any question from investors and

15   potential investors at those meetings in

16   September 2013 about lawsuits in the United States of

17   America?

18               MR. VEJNOSKA:   Objection, vague and

19          ambiguous, overbroad.

20       A       No.

21   BY MR. HERMAN:

22       Q       In the year 2013, at either road show, was

23   there a presentation by CNBM Company, Limited,

24   regarding investments in companies in the United

25   States in which CNBM Company, Limited, held a majority

Confidential - Subject to Further Confidentiality Review

```
 1    of the stock?

 2              MR. PFAEHLER:  Objection, form.

 3       A    I don't understand you.  I'm sorry.

 4    BY MR. HERMAN:

 5       Q    Did CNBM Company, Limited, in the year 2012,

 6    have investments in other companies located in the

 7    United States of America?

 8              MR. VEJNOSKA:  Objection, foundation,

 9         vague and ambiguous.

10       A    Are you saying CNBM Company, Limited,

11    invested in certain company in the United States?

12    BY MR. HERMAN:

13       Q    Yes.

14              MR. VEJNOSKA:  Same objections.

15       A    I don't know.

16              MR. HERMAN:  Can we take a break, ten

17         minutes.

18              THE VIDEOGRAPHER:  Time now is 10:19

19         a.m.  We are off the record.

20              (Recess Taken From 10:19 a.m. To

21              10:54 a.m.)

22              THE VIDEOGRAPHER:  This begins disk 2 of

23         today's deposition.  Time now is 10:54 a.m.  We

24         are back on the record.

25              (Deposition Exhibit 298 marked.)
```

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. HERMAN:

 2      Q    Good morning again, Mr. Song.  I said

 3   Mr. Song, I'm sorry.  Chairman Cao, good morning

 4   again.

 5               Before each counsel at the table is

 6   Cao Exhibit 298, which is a US entry data for Chairman

 7   Cao that counsel for CNBM Company, Limited, and CNBMG

 8   has provided with dates of April 13, 2013, arrived in

 9   New York City; September 14, 2013, arrived in New York

10   City; June 5, 2015, arrived in New York City; and

11   July 29, 2015, arrived in Los Angeles, California.

12               Chairman Cao, I would like you to look

13   at Exhibit 277, the 2013 annual road show in the

14   United States document, and I would like you to look

15   at CNBM Company 8841 and 8842, which are the last two

16   pages in Mandarin.

17               Is this the type of document which is

18   regularly prepared in connection with your road show

19   visits to the United States?

20      A    My personal understanding is that this is a

21   prearrangement and this is the way it is usually.

22               MR. HERMAN:  I'm going to offer Chairman

23         Cao -- it will be Plaintiffs' Exhibit 277, as an

24         English translation, and a -- the document as

25         received from CNBM Company in Mandarin, 8841,
```

Confidential - Subject to Further Confidentiality Review

```
1        8842.

2   BY MR. HERMAN:

3        Q     I show you Exhibit 278.  This is -- the

4   translation is CNBM Company 8868 to 8869.  For the

5   record, the metadata page 8868 has a Monday, August 4

6   at 15:17, military time, CST 2014.  And I'll ask if

7   this is, in fact, your travel plan for the road show

8   in 2013 in September as originally scheduled?

9        A     Where is it in Chinese?

10       Q     If you look at, sir, the last two pages,

11  8868 and then 8869.

12       A     My understanding is that 8868 is a

13  prearrangement.  The actual date is later than this.

14       Q     Yes.  In the year 2013, is this document a

15  preschedule for your September 2013 visit to the

16  United States in which you arrived in New York City on

17  September 14, 2013?

18       A     I can't make that judgment from the document

19  8868 because it did not reflect on the year.

20       Q     You did not make a trip to the United States

21  in the year 2014; is that correct?

22       A     No.

23       Q     How many -- no, you did not make a trip to

24  the United States in 2014?

25       A     I did not.
```

Confidential - Subject to Further Confidentiality Review

1    Q    Approximately how many days did you spend in

2    September of 2013 in the United States of America?

3    A    Approximately around a week.

4    Q    And during that week you were here as a

5    representative of CNBM Company, Limited?

6    A    As the president of CNBM Company, Limited.

7    Q    Did any other employees of CNBM Company,

8    Limited, attend any of those meetings in September of

9    2013?

10   A    I don't have a clear recollection.

11   Q    At the bottom of -- well, at page CNBMC at

12   8869, there also appears airfare costs, an

13   accommodation cost for Zhangli Chang and Xue'an Chen.

14   Does this reflect -- or refresh your recollection of

15   them attending in the United States of America in

16   September of 2013?

17   A    I'm not able to make a decision based on the

18   document 8869 as -- whether it is only a plan or it

19   actually happened.

20   Q    It doesn't reflect -- refresh your

21   recollection at all that one or both of these

22   gentlemen attended the presentations in the United

23   States of America in September of 2013?

24            MR. VEJNOSKA:  Objection, asked and

25       answered.

1      A      I'm sorry, I really do not recall.

2            MR. HERMAN:  I offer Exhibit 278, Bates

3         number CNBM Company 8868 to 8869.

4    BY MR. HERMAN:

5      Q      According to Exhibit 298 from your passport

6    information, you arrived in New York City on June 5th,

7    2015.  What was the purpose of your visit to the

8    United States of America in June 2015?

9      A      To meet with the company's attorney.

10     Q      Did you -- how long were you in the United

11   States of America on that occasion?

12     A      Less than a week.

13     Q      During that trip to the United States of

14   America that began on June 5, 2015, did you meet with

15   any investors that week?

16     A      No.

17     Q      Do you recall the names of the attorneys you

18   met with that week?  And I have no -- I'm not asking

19   you anything about the meetings themselves.  I'm just

20   asking you who the attorneys were by name whom you met

21   with.

22     A      Him and Mr. Wang, W-a-n-g.

23            MR. VEJNOSKA:  He pointed to me when he

24         said "him," for the record.

25   BY MR. HERMAN:

Confidential - Subject to Further Confidentiality Review

1      Q      Mr. Wang and Mr. Vejnoska.  Was Mr. Stengel

2   present?

3      A      Who is this person?

4      Q      Mr. Stengel is the one here who has no sense

5   of humor.

6              MR. VEJNOSKA:  Would you please mark

7         that question.  I would like to frame it for the

8         next partner meeting.

9              MR. HERMAN:  It's the question and the

10        response that you want framed.

11             THE WITNESS:  I'm sorry, Jimmy, I don't

12        know your English last name spelling.

13   BY MR. HERMAN:

14     Q      I'm glad that the witness has a sense of

15   humor.  According to Exhibit 298, you arrived in Los

16   Angeles, California, on July 29, 2015.  What was the

17   purpose of that meeting?

18     A      To prepare for the deposition.

19     Q      And you met with the same attorneys; is that

20   correct?

21     A      Him, Mr. Wang, Jimmy, Andrew over there, and

22   Jason.

23     Q      And not Mr. Vejnoska?

24             MR. VEJNOSKA:  He started with "him."

25             MR. HERMAN:  Okay.

1          MR. VEJNOSKA:  We have never tried to

2      teach him my last name.  I had to teach you my

3      last name yesterday, Mr. Herman.

4          MR. HERMAN:  Yes, you did, and --

5          MR. VEJNOSKA:  I appreciate --

6          MR. HERMAN:  I now understand your

7      vacation recently in California.

8     A    I'm sorry, I also don't know the last name

9   of Andrew.  I know Jason's last name, Jason Wu.

10         MR. VEJNOSKA:  Jason has an unfair

11      advantage over there.

12         MR. HERMAN:  It's okay.  Mr. Andrew's

13      name will be on the sign-up sheet from today.

14         I'm going to offer Exhibit 298 if I

15      haven't previously.

16         (Deposition Exhibit 296 marked.)

17         MR. HERMAN:  And I would like to

18      distribute to counsel and to the witness

19      Exhibit 296.  It is a partial translation of

20      CNBM Company from 607 to 620 Bates number, and

21      then there's a translation -- actually a full

22      translation, but I only have a question

23      regarding page 607, which has been -- I'm sorry,

24      615.  Page 615 on the translation.  And it's

25      Bates 60 -- strike that.  It's page 615 on the

```
 1              Mandarin as produced, and 607 on our
 2              interpretation and in this document there's not
 3              only a PSC translation followed by a machine
 4              translation followed by the Mandarin Chinese,
 5              which I ask the witness to look at at page 615,
 6              and if he would read the second paragraph that
 7              is highlighted in yellow at page 615.
 8                   (Witness Reviews Document.)
 9         A    I read it.
10    BY MR. HERMAN:
11         Q    The title of the document in our translation
12    is, quote, "Featured Article for the Large Historical
13    Document," quote -- or in italics -- "People of the
14    Special Economic Zone," by Jianglin Cao.  I've asked
15    you to read page 615 in the second paragraph.
16                   Did you -- our translation in quotes
17    is as follows:  "In Jianglin Cao's opinion, as a
18    company listed in Hong Kong, CNBM should be an
19    enterprise that is open, transparent, and responsible
20    for the investors."
21                   Was that your opinion?
22         A    I have never seen this article.
23         Q    Well, is that your opinion today, that it's
24    your opinion, as a company listed in Hong Kong, that
25    CNBM Company, Limited should be an enterprise that is
```

1    open, transparent and responsible for the investors,

2    end quote?

3        A    It is my opinion.

4        Q    Is it true that at the time this was

5    published, which we believe was some time in 2009, and

6    it's not dated -- so my question is, is it true that,

7    besides regular road shows twice a year, Jianglin Cao

8    often met with the investors who visited the CNBM

9    Company, Limited, and explained to these investors the

10   company's strategies and business development goals in

11   detail, end quote?

12            MR. VEJNOSKA:  I move to interpose a

13        motion to strike the preparatory remark.

14            THE INTERPRETER:  Interpreter needs the

15        deponent to repeat his answer.

16       A    As a common practice of public listing

17   company to receive investors, it's the responsibility

18   of mine as the president of the company.

19   BY MR. HERMAN:

20       Q    Is it true that before every road show,

21   Chairman Cao "would prepare the materials in person"?

22            MR. VEJNOSKA:  Objection, compound.

23       A    I don't understand your sentence.

24   BY MR. HERMAN:

25       Q    You don't understand the question, or you

1    don't understand the sentence in the document?

2       A     I don't understand your question.

3       Q     In the translation I have of Exhibit 296 at

4    page 219 -- excuse me.  In the copy I have of

5    Exhibit 296 at CNBM Company 15, it says, and I'm going

6    to quote it exactly, "Before every road show, Jianglin

7    Cao would prepare the materials in person, and would

8    stay up all night for several days."

9               Is that a true statement?

10              MR. VEJNOSKA:  Objection to form.

11      A     At every interim and annual road show, I, of

12   course, needed to review the annual reports prepared

13   by the CPA and the materials prepared by the company.

14   BY MR. HERMAN:

15      Q     And "by the company," you mean CNBM Company,

16   Limited?

17      A     Yes.

18      Q     And "by the accountant," do you mean the

19   outside certified public accountant firm employed by

20   CNBM Company, Limited?

21      A     Correct.

22      Q     Would you turn to CNBM Company page 607,

23   which is the first page of the Mandarin document

24   produced.  Would you read the title of that document.

25   What is the title of --

Confidential - Subject to Further Confidentiality Review

1      A     I see the title.

2      Q     Would you read it for the translator,

3   please.

4      A     "Special Featured Article of Large

5   Historical Document People of the Special Zone, Cao

6   Jianglin."

7      Q     Was this document, to your personal

8   knowledge, published either in Mandarin or in English?

9      A     I don't know.

10            MR. HERMAN:  Going to offer Exhibit 296.

11  BY MR. HERMAN:

12     Q     What is the quote, WeChat, end quote?

13            THE INTERPRETER:  This is the

14      interpreter speaking.  Did counsel say W-e

15      C-h-a-t?

16  BY MR. HERMAN:

17     Q     W-e, new word, C-h-a-t.

18     A     WeChat is a type of communication tool.

19     Q     You have indicated that you don't read

20  e-mails, but do you use the "WeChat" to communicate

21  and receive information in CNBM Company, Limited?

22     A     No, I don't.  I do not use it.

23     Q     You do not use "WeChat" for work or business

24  purposes; is that correct?

25     A     I do not use WeChat for work.

1      Q      Does Chairman Song ever communicate with you

2    through WeChat?

3      A      No.

4      Q      So do you mean that when you don't use

5    WeChat, you never initiate or receive information on

6    "WeChat"?

7                    MR. VEJNOSKA:  Objection, asked and

8         answered, misstates the record, and vague and

9         ambiguous.

10     A      I have never used WeChat for work.

11   BY MR. HERMAN:

12     Q      Do you have a communication device such as

13   an iPhone?

14                   MR. VEJNOSKA:  Objection, vague and

15        ambiguous.

16     A      Are you asking whether I use a cell phone?

17   BY MR. HERMAN:

18     Q      Yes.

19     A      I do.

20     Q      And what is your cell phone telephonic

21   number?

22                   MR. VEJNOSKA:  Did you interpret?

23                   THE INTERPRETER:  The interpreter did.

24                   MR. VEJNOSKA:  I'm going to object to

25        that question on the basis of confidentiality,

Confidential - Subject to Further Confidentiality Review

1          Mr. Herman.  I just don't see the propriety of

2          that question.

3                  MR. HERMAN:  I think it's quite proper.

4          He doesn't use WeChat.  He doesn't use e-mail.

5          I'm trying to find out how he communicates, and

6          I would like to know what the number is because

7          we called for the production of nonpersonal

8          messages that may be still retained in the

9          phone.

10                 MR. VEJNOSKA:  I think if you want that,

11         we're going to have to call the judge,

12         Mr. Herman.

13                 MR. HERMAN:  Well, I'm going to reserve

14         my right on it and move on.  We don't have a lot

15         of time today.

16                 MR. VEJNOSKA:  Understood.

17    BY MR. HERMAN:

18       Q    Do you send text messages on your

19    communication device?

20                 MR. VEJNOSKA:  Objection, vague and

21         ambiguous.

22       A    Are you asking whether I use my cell phone

23    to send messages or not?

24    BY MR. HERMAN:

25       Q    Yes.

Confidential - Subject to Further Confidentiality Review

```
 1      A     I do send text messages.

 2      Q     Do you send those messages to individuals

 3   employed at CNBM Company, Limited?

 4            MR. VEJNOSKA:  Objection, overbroad.

 5      A     I send text messages.  The text messages in

 6   my cell phone are both personal and for business.

 7   BY MR. HERMAN:

 8      Q     And do those text messages also include

 9   messages to employees of BNBM Company PLC?

10            MR. VEJNOSKA:  Same objection.

11      A     You're asking to the employees of BNBM

12   Company, Limited?

13   BY MR. HERMAN:

14      Q     Yes.

15      A     There have never been text messages for

16   work.

17      Q     Well, which text messages do you indicate

18   for business?

19            MR. VEJNOSKA:  Objection, vague and

20       ambiguous.

21      A     Can I provide you with an example?

22   BY MR. HERMAN:

23      Q     Sure.

24      A     For example, my general counsel, Madame Zhou

25   Guoping, would need to make a business trip and ask
```

Confidential - Subject to Further Confidentiality Review

1    for my approval.  I would say yes or no.

2        Q    Have you ever communicated in a text message

3    where the subject was the lawsuit before Judge Fallon?

4        A    Never.

5                MR. HERMAN:  All right.  Exhibit 262.

6                If I haven't offered Exhibit 296, I do

7        so now.

8                (Deposition Exhibit 262 marked.)

9    BY MR. HERMAN:

10       Q    At page 262 -- I'm sorry.  Strike that.

11               262 are three pages dated May 25th,

12   2010.  Who is Ma Genlin?

13       A    Mr. Ma Genlin is an employee of CNBM Group.

14       Q    And is he or was he deputy general manager

15   of the corporate management department of CNBM

16   Company, Limited?

17       A    I'm not sure about the position of Mr. Ma

18   Genlin in February of 2010.

19       Q    What is his position today?

20       A    I'm not sure whether he currently holds a

21   title or he is just an ordinary employee.

22       Q    Of CNBMG; that is, CNBM Group?

23       A    Yes.

24               MR. HERMAN:  I'm going to offer

25       Exhibit 262.

Confidential - Subject to Further Confidentiality Review

1                    (Deposition Exhibit 261 marked.)

2    BY MR. HERMAN:

3        Q      I would like you to look at Exhibit 261

4    dated February 25th, 2010, and ask you on that date if

5    Chang Che Li [sic] L-i, was vice president of China

6    National Building Material Company, Limited?

7        A      What page it is in Chinese?

8               THE INTERPRETER:  The interpreter just

9         pointed to the witness the last page of

10        Exhibit 261, if that is correct.

11              MR. HERMAN:  Yes.

12       A      You are saying Chang Zhangli?

13   BY MR. HERMAN:

14       Q      Yes.

15       A      What time, please?

16       Q      On February 25th, 2010.

17       A      At the time Mr. Chang Zhangli was vice

18   president of CNBM Company, Limited.

19              MR. HERMAN:  I'm going to offer

20        Exhibit 261.

21   BY MR. HERMAN:

22       Q      When were you first made aware of

23   Exhibit 261?

24              MR. VEJNOSKA:  Objection, foundation.

25       A      Today is my first time seeing it.

Confidential - Subject to Further Confidentiality Review

```
 1    BY MR. HERMAN:

 2        Q      When were you first made aware that CNBM

 3    Company, Limited, had been sued in the United States

 4    of America and received a summons relating to a

 5    lawsuit pending dealing with alleged defective gypsum

 6    board?

 7        A      Are you referring to when did I know the

 8    gypsum board lawsuit or when did I know that CNBM

 9    Company, Limited, was sued or when did I know the

10    matter about the summon?

11        Q      I'll ask the question separately.  When did

12    you know about the gypsum board lawsuit?

13              MR. VEJNOSKA:  Objection, vague and

14         ambiguous.

15        A      I learned the matter of gypsum board lawsuit

16    in or around of September 2009.

17    BY MR. HERMAN:

18        Q      When did you learn that CNBM Company,

19    Limited, had been sued in the United States regarding

20    gypsum board?

21        A      I don't recall.

22        Q      When did you first learn about the summons

23    that had been issued to CNBM Company, Limited?

24        A      Sometime in February of 2015.

25        Q      In February of 2010, did CNBM Group own
```

Confidential - Subject to Further Confidentiality Review

1    stock in CNBM Company, Limited?

2         A     Yes.

3         Q     Has CNBM Group continued to own stock in

4    CNBM Company to the present day?

5         A     Yes.

6         Q     In January of 2015, did CNBM Company,

7    Limited, own stock in China Triumph International

8    Engineering Company, Limited?

9         A     Are you asking whether CNBM Company,

10   Limited, owns stock of China Triumph International

11   Engineering Company?

12        Q     Yes.

13        A     At the time CNBM Company, Limited, owned

14   about 91 percent of the equity, not the stocks of

15   China Triumph International Engineering Company.

16             THE INTERPRETER:  May the interpreter

17        inquire the deponent of the word he just used,

18        "equity"?

19             MR. HERMAN:  Yes.

20             THE INTERPRETER:  Upon conferring with

21        deponent, the interpreter would like to make a

22        correction on the word "equity" to be corrected

23        to the word "share" -- "shares," rather.

24   BY MR. HERMAN:

25        Q     In 2015, this year, did CNBM Company,

Confidential - Subject to Further Confidentiality Review

1   Limited, continue to own shares in China Triumph

2   International Engineering Company, Limited?

3       A    Yes.

4       Q    And in -- are you able to say what

5   percentage of share ownership CNBM Company, Limited,

6   owned in China Triumph International Engineering

7   Company, Limited?

8       A    According to my recollection, approximately

9   91 percent.

10      Q    And are you aware that in 2015 there was an

11  existing business venture between China Triumph

12  International Engineering Company, Limited, of

13  Shanghai People's Republic of China and the New Jersey

14  Institute of Technology in the United States of

15  America?

16      A    I'm not sure.

17      Q    Are you aware -- strike that.

18           In this year is Peng Shou, P-o-n-g

19  [sic] S-h-o-u, a director of CNBM Company, Limited?

20      A    Yes.

21      Q    And is it true that in January of 2015, Peng

22  Shou was sent by CNBM Company, Limited, to the United

23  States of America to negotiate a second contract with

24  New Jersey Institute of Technology USA?

25           MR. VEJNOSKA:  Objection, foundation.

```
 1        A     I don't know.

 2   BY MR. HERMAN:

 3        Q     For how long has -- strike that.

 4              For how many years has Peng Shou been

 5   employed by CNBM Company, Limited?

 6              MR. VEJNOSKA:  Objection, foundation.

 7        A     I don't recall.

 8   BY MR. HERMAN:

 9        Q     Was Peng Shou a director of CNBM Company,

10   Limited, in the year 2014?

11        A     Yes.

12        Q     And was Peng Shou a director of CNBM

13   Company, Limited, in the year 2013?

14        A     Yes.

15        Q     And was Peng Shou president of the board of

16   directors of China Triumph International Engineering

17   Company, Limited, in 2013?

18        A     Yes.

19        Q     And is he still -- is Peng Shou still the

20   president of the board of directors of China Triumph

21   International Engineering Company, Limited?

22        A     Yes.

23        Q     Have you ever discussed with Peng Shou the

24   venture of China Triumph International Engineering

25   Company, Limited, and New Jersey Institute of
```

Confidential - Subject to Further Confidentiality Review

 1    Technology United States of America in the year 2013?

 2                THE INTERPRETER:  May the interpreter

 3         ask whether he had discussed with Peng Shou in

 4         the year 2013 or whether he had discussed with

 5         Mr. Peng Shou of the venture of the year 2013?

 6                MR. HERMAN:  I'll restate the question.

 7    BY MR. HERMAN:

 8      Q    At any time in the year 2013, did Chairman

 9    Cao speak with Peng Shou about the venture between

10    China Triumph International Engineering Company,

11    Limited, and the New Jersey Institute of Technology?

12      A    I don't recall.

13      Q    In the year 2014, did you have occasion to

14    speak with Peng Shou regarding the venture between

15    China Triumph International Engineering Company,

16    Limited, and the New Jersey Institute of Technology,

17    USA?

18                THE INTERPRETER:  May the interpreter

19         ask the -- ask counsel the word "institute"

20         here, whether it is referred to a research

21         institute or institute as a university because

22         there are two translations.

23                MR. HERMAN:  The title of it is "New

24         Jersey Institute of Technology, USA."

25                THE INTERPRETER:  Whether it is

Confidential - Subject to Further Confidentiality Review

1        institute as institute of research entity or

2        institute as institute of a type of university

3        or college.

4             MR. HERMAN:  I can only give you the

5        name.  The contract name is New Jersey Institute

6        of Technology, USA, an American public

7        university having its registered office in

8        Newark and is represented by Dr. Donald

9        Sebastian, senior vice president, research and

10       development.

11  BY MR. HERMAN:

12     Q    So my question is, at any time in the year

13  2014, did the witness have an occasion to discuss with

14  Peng Shou the agreement between China Triumph

15  International Engineering Company, Limited, and New

16  Jersey Institute of Technology, USA?

17             MR. VEJNOSKA:  Madame Interpreter, we

18       have the Chinese character name if --

19             THE INTERPRETER:  May I please take a

20       look because it cannot be translated without the

21       accurate Chinese characters.

22             MR. HERMAN:  That's fine.  I have no

23       problem with that.

24             MR. VEJNOSKA:  Does that help?

25             THE INTERPRETER:  Yes.

```
 1              MR. VEJNOSKA:  Okay.  And while we're
 2         doing it, Mr. Herman, can we go off the record
 3         for a second?
 4              THE VIDEOGRAPHER:  Just one second.
 5         Time is 12:07 p.m.  We're off the record.
 6              (Recess Taken From 12:07 p.m. To
 7              12:07 p.m.)
 8              THE VIDEOGRAPHER:  Time now is
 9         12:07 p.m.  We're back on the record.
10              THE WITNESS:  Please repeat your
11         question.
12    BY MR. HERMAN:
13      Q    Yes.  My question is, did you speak with
14    Peng Shou at any time in 2014 regarding the agreement
15    between CNBM Company -- strike that.
16              Did you speak with Peng Shou at any
17    time in the year 2014 regarding the venture between
18    China Triumph International Engineering Company,
19    Limited, and the New Jersey Institute of Technology,
20    USA?
21      A    I don't have that impression.
22      Q    Have you spoken with Peng Shou in the year
23    2015 about any matter regarding the agreement between
24    China Triumph International Engineering Company,
25    Limited, and the New Jersey Institute of Technology
```

1    USA?

2        A      I don't have an impression.

3        Q      Have you met with Peng Shou at any occasion

4    in the year 2014?

5        A      Yes.

6        Q      In connection with business or pleasure?

7        A      Mr. Peng Shou is a director.  Therefore, I

8    was able to see him in the board of directors meeting.

9        Q      In the board of directors meeting of CNBM

10   Company, Limited?

11       A      Yes.

12       Q      And in the year 2015 have you had occasion

13   to meet with him in a business connection?

14       A      Yes.

15               MR. HERMAN:  I'm going to introduce this

16          exhibit and then we'll go on break.

17               (Deposition Exhibit 258 marked.)

18               MR. HERMAN:  It's Exhibit 258.

19          Exhibit 258 in this litigation has the following

20          identifications:  It is Exhibit 9 to a contempt

21          chart already in evidence.  It is Exhibit 13,

22          which is Bates number NJIT 02654 through NJIT

23          02669, Exhibit 13, April 22nd, 2015, of the NJIT

24          deposition.  It also is Exhibit 10 on the

25          contempt chart previously introduced, which is

1           also NJIT Exhibit 28, Bates number 05797 through

2           Bates number NJIT 05809.  It is also Exhibit 16

3           in the contempt chart previously introduced as

4           NJIT Exhibit 25, NJIT 01661 through NJIT 02996,

5           and Exhibit 17 on the contempt chart NJIT,

6           Exhibit 30, Bates numbers NJIT 03508 through

7           NJIT 03519.

8                    I would offer it as Exhibit 258 to this

9           deposition.

10                   We're going to recess for --

11                   MR. VEJNOSKA:  We're breaking now.

12                   THE WITNESS:  May I have a lunch break

13          at the next break?

14                   THE VIDEOGRAPHER:  Time now is

15          12:15 p.m. and we're off the record.

16                   (Recess Taken From 12:15 p.m. To

17                   1:21 p.m.)

18                   THE VIDEOGRAPHER:  This begins disk 3 of

19          today's deposition.  Time now is 1:21 p.m.  We

20          are back on the record.

21                   MR. HERMAN:  Yesterday I distributed

22          Exhibit 276; it's a chart that -- it looks like

23          this.  It's a time line of Taishan affiliates

24          doing business -- it's a time line of Taishan

25          affiliates doing business in the US states

Confidential - Subject to Further Confidentiality Review

1        during the contempt period, Exhibit 276, and I

2        submit that the name affiliates is the name

3        we've given it and is not of legal significance

4        at this point until Judge Fallon makes a ruling.

5               MR. VEJNOSKA:  Do we have the official

6        exhibit?

7               MR. HERMAN:  We should.  Here, here's

8        another.

9               MR. VEJNOSKA:  Thanks.  In case you want

10       the witness to look.

11  BY MR. HERMAN:

12       Q    I'll just ask the witness questions about

13  companies reflected on the chart without reference to

14  any particular document.  There is a document

15  attached -- there is no document attached.

16               Are you familiar, Chairman Cao, with a

17  business called Toledo Engineering Company?

18       A    How do you spell it and where is it?

19       Q    Toledo Engineering Company is sometimes

20  referred to as TECO in an ongoing joint venture with

21  CTIEC.

22       A    I don't know this name.

23       Q    Are you familiar with Triumph -- China

24  Triumph International Engineering Company, Limited?

25       A    I know that.

Confidential - Subject to Further Confidentiality Review

1       Q       CNBM Company, Limited, directly holds a 91

2  percent interest in China Triumph International

3  Engineering Company, Limited; is that correct?

4       A       Correct.

5       Q       And China Triumph International Engineering

6  Company, Limited, and Toledo Engineering Company of

7  the United States had a joint venture in the year

8  2014; isn't that correct?

9       A       I don't have that impression.

10      Q       On March 30th, 2005, didn't Toledo

11  Engineering Company of the United States and China

12  Triumph International Engineering Company, Limited,

13  form a joint venture?

14      A       Two thousand and what?

15      Q       March 30th, 2005.

16      A       I don't have an impression of that.

17      Q       Isn't it true that CNBM Company Investment

18  is a majority interest owned in CNBM Company, Limited?

19      A       Yes.

20      Q       And did -- are you aware that CNBM

21  Investment had a business with BNK International and

22  Jeffrey Chang beginning in 2004?

23      A       I don't know.

24      Q       Are you aware that on July 31st, 2014, after

25  Judge Fallon issued an injunction, that China National

Confidential - Subject to Further Confidentiality Review

1  Building Material Investment Company sued BNK in the

2  state of Texas?

3      A     I don't know.

4      Q     What is Alibaba.com?

5      A     It is one of Chinese E-commerce companies.

6      Q     Are you aware that Taishan Gypsum has been

7  in business with Alibaba.com between July 17, 2014,

8  and August 2nd, 2015?

9      A     I don't know.

10     Q     Who owns BNBM Group?

11     A     Owned by China, state owned.

12     Q     Are you aware that BNBM Group was doing

13 business with Hull Forest Products of the United

14 States of America after Judge Fallon issued his

15 injunction of July 17, 2014?

16           MR. VEJNOSKA:  Would you mark the prior

17       question and answer.  I think we had a

18       translation error.

19           MR. PFAEHLER:  Objection to form,

20       assumes facts not in evidence and ambiguous and

21       vague with respect to doing business with -- or

22       in business with, pardon me.

23           MR. HERMAN:  I just want to point out to

24       counsel -- excuse me.  I just want to point out

25       to counsel that Western Wood Lumber Company's

Confidential - Subject to Further Confidentiality Review

```
1       deposition was taken.  BNBM Group, as I

2       understand it, was present and I'm not

3       attempting to state a fact that I don't know

4       about.

5              MR. PFAEHLER:  I was present at both

6       Western Wood's deposition.  I defended it for

7       BNBM Group and Hull Forest Products.  And the

8       facts as you stated with respect to Hull in that

9       question do not reflect the testimony given at

10      the Hull Forest Products deposition or the

11      exhibits that were introduced there.  Now, we've

12      laid that out in our filing with the court

13      yesterday.  You've got that in front of you.

14             MR. HERMAN:  You and I have a

15      disagreement so I'll just move on.

16             MR. PFAEHLER:  Yes, we do, sir.

17             THE INTERPRETER:  Counsel, do you need

18      the interpreter to interpret your objection and

19      the response to the objections?

20             MR. HERMAN:  No.

21             THE INTERPRETER:  Thank you.

22  BY MR. HERMAN:

23      Q    Are you aware that --

24             MR. PFAEHLER:  Well, wait a minute.  I

25      would request that the objections be
```

Confidential - Subject to Further Confidentiality Review

```
 1              interpreted.  The questions are being

 2              interpreted.  The objections should as well.

 3                      MR. HERMAN:  I withdrew the question.

 4                      MR. PFAEHLER:  I'm sorry, I didn't

 5              realize the question was withdrawn.

 6                      MR. HERMAN:  I'll ask the court --

 7              that's why I asked the court reporter to move

 8              on.  We have a difference, and I'm not going to

 9              burden this deposition with it.

10   BY MR. HERMAN:

11       Q    Are you aware that CNBM Group did business

12   with Plum Creek Timber Company --

13                      MR. VEJNOSKA:  Objection --

14   BY MR. HERMAN:

15       Q    -- after July 17, 2014?

16                      MR. VEJNOSKA:  Objection, vague and

17              ambiguous, calls for a legal conclusion.

18       A    Which CNBM Group you're referring to?

19   BY MR. HERMAN:

20       Q    I only know of one CNBM Group.

21                      MR. VEJNOSKA:  Same objections.

22       A    The headquarters of CNBM Group does not

23   conduct any business besides investment.

24   BY MR. HERMAN:

25       Q    Are you aware of any CNBM Group-related
```

Confidential - Subject to Further Confidentiality Review

1   company that did business with Plum Creek Timber

2   Company in the United States after July 17, 2014?

3              MR. VEJNOSKA:  Same objections.

4      A    I'm not sure what is the accurate and legal

5   definition of the phrase "related company" you just

6   mentioned; therefore, I do not speculate.

7   BY MR. HERMAN:

8      Q    Did CNBM Group do any business with Plum

9   Creek Timber Company in the United States after

10  July 14th -- 17th, 2014?

11             MR. VEJNOSKA:  Same objections, also

12         asked and answered.

13     A    CNBM Group headquarters does not conduct any

14  business besides investment.

15  BY MR. HERMAN:

16     Q    Who owns CNBM Forest Products (Canada)

17  Limited?

18             MR. VEJNOSKA:  Objection, vague and

19         ambiguous.

20     A    I don't know.

21  BY MR. HERMAN:

22     Q    Do you know if CNBM Forest Products is 100

23  percent owned by CNBM Company, Limited?

24             MR. VEJNOSKA:  Same objection, asked and

25         answered.

Confidential - Subject to Further Confidentiality Review

1    A    According to my recollection, CNBM Company,

2  Limited, does not hold interest in the company you

3  just mentioned.

4  BY MR. HERMAN:

5    Q    Do you know that China Triumph International

6  Engineering Company, Limited, on November 3rd, 2014,

7  had ongoing business with Sunpin Solar Development,

8  LLC?

9         MR. VEJNOSKA:  Objection, vague and

10       ambiguous.

11   A    I don't know.

12  BY MR. HERMAN:

13   Q    Do you know that China Triumph International

14  Engineering Company had ongoing business with Sunpin

15  Solar Development, LLC, and entered into agreements

16  for solar power projects in the United States that

17  involve Church Hill Solar Farm and Walmart stores

18  located in the United States?

19         MR. VEJNOSKA:  Same objection.

20   A    I don't know.

21  BY MR. HERMAN:

22   Q    Do you know that Sunpin Solar Development,

23  LLC, in the United States wired China Triumph

24  International Engineering Company, Limited,

25  $3,122,417.40 during the injunction period on

Confidential - Subject to Further Confidentiality Review

```
 1   March 16th, 2015?

 2            MR. VEJNOSKA:  Objection, foundation,

 3        misstates the record.

 4     A    I don't know.

 5   BY MR. HERMAN:

 6     Q    Are you aware that in 2004, CNBM Investment

 7   Company, Limited, entered into an agency agreement

 8   with BNK International, a Texas corporation, to sell

 9   hardwood flooring to Lumber Liquidators and shipped

10   hardwood flooring to Virginia, Michigan, Illinois, New

11   York, Delaware, Maryland, Nevada and Washington, D.C.?

12            MR. VEJNOSKA:  Objection, compound,

13        foundation.

14     A    I don't know.

15   BY MR. HERMAN:

16     Q    Are you aware that CNBM Group, Plum Creek

17   and Sumitomo, S-u-m-i-t-o-m-o, Forestry Company

18   entered into a memorandum of understanding for the

19   expansion of sales of North American forestry

20   products, which included logs and lumber, in the

21   Chinese market?

22            MR. VEJNOSKA:  Objection, asked and

23        answered, foundation.

24     A    I don't know.

25   BY MR. HERMAN:
```

1      Q      Are you aware that an agreement between CNBM

2    Group, Plum Creek Timber Company and Sumitomo Forestry

3    Company is still ongoing and relates to cooperation to

4    obtain logs from the states of Oregon and Washington

5    in the United States for sale to China?

6              MR. VEJNOSKA:   Same objections.

7      A      I don't know.

8    BY MR. HERMAN:

9      Q      Are you aware that CNBM Company, Limited,

10   CNBM International Corporation and CNBM Trading and

11   CNBM International Engineering Company maintained

12   storefronts on Alibaba.com during the injunction

13   period?

14             MR. VEJNOSKA:   Objection, compound.

15     A      I don't know.

16   BY MR. HERMAN:

17     Q      Are you aware that in September 2014, Murphy

18   Overseas USA, Astoria Forest Products shipped

19   5.1 million square feet of logs for CNBM Trading and

20   CNBM Forest of Canada to China in connection with a

21   settlement agreement reached in August 2014?

22     A      I don't know.

23     Q      Who owns the shares -- strike that.

24             Who owns the majority shares in 2014

25   of China National Building Materials and Equipment

Confidential - Subject to Further Confidentiality Review

1    Import & Export Company, also known as CNBM Trading?

2              MR. VEJNOSKA:  Objection, foundation.

3    A    I'm not sure about your question.

4    BY MR. HERMAN:

5    Q    Does CNBM Company, Limited, own any shares

6    in China National Building Materials and Equipment

7    Import & Export Company?

8    A    CNBM Group owns 100 percent of shares of a

9    company called CNBM Group Import & Export Company.

10   Q    Are you aware that Murphy Overseas USA,

11   Astoria Forest Products, during the injunction period,

12   paid CNBM Trading, that is also known as China

13   National Building Materials and Equipment Import &

14   Export Company, the sum of $2.25 million pursuant to a

15   settlement agreement?

16             MR. VEJNOSKA:  Objection, foundation.

17   A    Number one, I'm not aware of the payment

18   matter; number two, I'm not aware of the company you

19   just mentioned.

20   BY MR. HERMAN:

21   Q    Are you aware that Murphy Overseas USA,

22   Astoria Forest Products shipped 5.24 million square

23   feet of logs to China for China National Building

24   Materials and Equipment Import & Export Company?

25             MR. VEJNOSKA:  Objection, foundation.

Confidential - Subject to Further Confidentiality Review

1      A     I don't know.

2   BY MR. HERMAN:

3      Q     In the year 2014, did you hold any position

4   in CNBM Group?

5               MR. VEJNOSKA:  Objection, asked and

6         answered.

7      A     At a certain time in April of 2014, I

8   started holding the position of the general manager of

9   CNBM Group.

10  BY MR. HERMAN:

11     Q     And beginning as a general manager to the

12  present date, has CNBM Group invested in any business

13  operating in the United States of America?

14              MR. VEJNOSKA:  Objection, vague and

15        ambiguous.

16     A     CNBM Group itself has not invested in any

17  businesses in America.

18  BY MR. HERMAN:

19     Q     Has -- since you've become general manager,

20  has CNBM Group invested in any business which has

21  business interests in America?

22              MR. VEJNOSKA:  Same objection.

23     A     I'm not sure about your question.

24  BY MR. HERMAN:

25     Q     Did CNBM Group, since you have been general

1    manager, put any money into any business, corporation

2    or firm which does business in the United States of

3    America?

4              MR. VEJNOSKA:  Same objection.

5         A    Can you give me a case example?

6    BY MR. HERMAN:

7         Q    No, I'm asking you a question as a general

8    matter.  I'm just an affiliate of yours.

9              MR. VEJNOSKA:  We accept --

10             THE INTERPRETER:  This is the

11        interpreter speaking.  Did counsel say "I am

12        just an affiliate of yours"?

13             MR. HERMAN:  Yes.  I'm using the

14        witness' example from yesterday where he said

15        that he wanted to use an example, and he said I

16        was his affiliate.  So I'm saying to the

17        witness, whatever you meant by that, okay, I'm

18        your affiliate, but you have to answer my

19        question, which is, has CNBM Group, since you

20        have been general manager, invested in any firm,

21        business or corporation which does business in

22        the United States of America?

23             MR. VEJNOSKA:  Objection, move to strike

24        the argument and the preparatory remark.

25        Objection, vague and ambiguous, calls for a

1          legal conclusion.

2     A     Do I still need to answer the question?

3   BY MR. HERMAN:

4     Q     Yes.

5               MR. VEJNOSKA:  You may answer.

6     A     I still don't understand your question.

7   BY MR. HERMAN:

8     Q     Has CNBM Group invested funds in any

9   subsidiary of CNBM Group that's doing business in the

10  United States since April of 2014?

11              MR. VEJNOSKA:  Objection, vague and

12        ambiguous, foundation, calls for a legal

13        conclusion.

14    A     I don't have a clear recollection on what

15  were the investments CNBM Group had conducted, and

16  also what are the companies that have done business in

17  the United States.  I'm not sure about the legal

18  definition of "doing business."  Therefore, I do not

19  speculate.

20  BY MR. HERMAN:

21    Q     Who is the most knowledgeable employee of

22  CNBMG who can testify under oath as to investments

23  made in companies which are either controlled by or

24  related to CNBMG for the years 2014 and 2015?

25              MR. VEJNOSKA:  Objection, vague and

Confidential - Subject to Further Confidentiality Review

1          ambiguous, calls for a legal conclusion.

2     A    What are the definitions of "controlled" and

3     "related"?  I'm not sure about that.

4     BY MR. HERMAN:

5     Q    The definition of control or related company

6     is to own direct or indirect ownership of the share or

7     stock of any company.

8               MR. VEJNOSKA:  Objection, foundation,

9          incorrect legal standard.

10    A    This is your definition?

11    BY MR. HERMAN:

12    Q    No, it's the definition of the Chinese tax

13    code as published.

14               MR. VEJNOSKA:  Objection, foundation,

15          misstates the record.

16               MR. HERMAN:  The record has been clearly

17          stated in Exhibit 90 and introduced in evidence.

18    BY MR. HERMAN:

19    Q    But if you can answer my question, please

20    answer it.

21               MR. VEJNOSKA:  Same objections.  Please

22          mark the question.

23    A    I'm not sure the accurate legal definitions

24    of the words "controlled" and "related" you just

25    mentioned.

Confidential - Subject to Further Confidentiality Review

1    BY MR. HERMAN:

2        Q    Well, make it my definition.  My definition

3    is, did CNBMG own more than 25 percent, direct or

4    indirect, of a company which in 2014 invested in the

5    United States of America?

6               MR. VEJNOSKA:  Objection, vague and

7         ambiguous.

8        A    I'm very sorry.  I don't know whether your

9    definition is the accurate legal definition;

10   therefore, I will not speculate.

11   BY MR. HERMAN:

12       Q    Well, I don't care whether it's legal or

13   not.  It's my definition.  And I'm asking you if CNBMG

14   in 2014 invested in a company in which CNBMG owned,

15   directly or indirectly, 25 percent, and such company

16   was doing business in the United States of America?

17              MR. VEJNOSKA:  Objection, vague and

18        ambiguous, calls for a legal conclusion.

19       A    I still don't know the accurate legal

20   definition of "doing business."  Therefore, I will not

21   speculate.

22   BY MR. HERMAN:

23       Q    Does CNBM Company, Limited, pay taxes in the

24   People's Republic of China?

25       A    CNBM Company, Limited, is a law-abiding and

1    tax-paying company.

2       Q     Article 9 of Exhibit 90 already in evidence,

3    Notice of the State Administration of Taxing, defines

4    at Article 9, the term "affiliation," as mentioned in

5    Article 19, of the RIEITL and Article 51 of the

6    DRILATC, mainly refers to any of the following

7    relationships between an enterprise and other

8    enterprise, organizations or individuals.  One party

9    directly or indirectly holds at least 25 percent of

10   the total shares of the other party, or 25 percent of

11   the shares of both parties are directly or indirectly

12   held by the same party.  If one party indirectly holds

13   a share of another party through an intermediate

14   party, as long as it holds at least 25 percent of the

15   shares of the intermediate party, the proportion of

16   the other party's shares held by it shall be computed

17   on the basis of the other party's shares held by the

18   responsible party.

19              Now, I'm going to -- using the

20   language of the Chinese taxing authority, I'll

21   rephrase the question.

22              In 2014 did BNBMG directly or

23   indirectly hold at least 25 percent of the total

24   shares of another party?

25              MR. PFAEHLER:  Objection, form.

 1   BY MR. HERMAN:

 2       Q     The question is CNBMG.

 3                   MR. VEJNOSKA:  I move to strike

 4           everything except the one-sentence question as

 5           argumentative based on a translation from an

 6           online legal research group that I'm unaware of.

 7                   But you may answer the question.

 8       A     My answer is, first of all, this is the

 9   relationship of affiliation of incoming text -- tax.

10   I still don't understand the legal and accurate

11   definition.

12                   THE INTERPRETER:  The interpreter needs

13           to inquire of the deponent.

14       A     I still don't understand the accurate legal

15   definition of "affiliation."

16   BY MR. HERMAN:

17       Q     You are also --

18       A     Number two, this is a translation provided

19   by Beijing University Law English network; therefore,

20   I'm not sure whether this is authorized or legal

21   translation.

22       Q     Is that the complete answer?

23       A     Yes.

24       Q     Are you an accountant?

25       A     I used to.

Confidential - Subject to Further Confidentiality Review

1    Q    Will you tell me, please, what companies

2  CNBMG holds a 25 percent indirect or direct interest

3  in today?

4          THE INTERPRETER:  The interpreter needs

5      to inquire of the deponent.

6    A    Currently CNBMG itself owns 44 percent of

7  CNBM Company, Limited, through CNBM Import & Export

8  Company, BNBM Group, CNBM Science & Research

9  Institute.

10          CNBMG owns 100 percent of the CNBM

11  Import & Export Company.  CNBMG owns 100 percent of

12  shares of CNBM Science & Research Institute.

13          CNBM Group owns directly or through

14  CNBM Import & Export Company 100 percent of BNBMG's

15  shares.

16  BY MR. HERMAN:

17    Q    In 2014 or 2015, did CNBM Group invest funds

18  in any of those entities you just named?

19    A    Yes, but I do not have a clear recollection.

20    Q    Who would have the records of such

21  investments?

22    A    The general accountant of CNBMG would have

23  the record of the companies we had invested in in

24  recent one-and-a-half years.

25    Q    And does that general accountant have a

Confidential - Subject to Further Confidentiality Review

```
 1    name?

 2         A      Mr. Wu Jiwei.

 3         Q      And his office is in the same building that

 4    your office is in?

 5         A      Yes.

 6         Q      Are you familiar with the company BNBM of

 7    America, Inc.?

 8         A      I'm not familiar.

 9         Q      In January 5th, 2001, did you sign a

10    document filed with the Secretary of State of Florida

11    as a director of BNBM of America, Inc.?

12         A      I don't remember that I have signed that.

13         Q      Who is Yu, Xianfeng?

14         A      As far as I know, Mr. Yu Xianfeng is

15    currently the deputy general manager of BNBMG.

16         Q      Are you aware that he has signed as

17    president and director of BNBM of America, Inc.?

18         A      I don't know.

19                MR. PFAEHLER:  Objection to form.

20    BY MR. HERMAN:

21         Q      Are you aware that BNBM of America, Inc.,

22    was also incorporated in the state of Oregon in the

23    United States of America?

24                MR. VEJNOSKA:  Objection, foundation.

25         A      I don't know.
```

Confidential - Subject to Further Confidentiality Review

```
 1    BY MR. HERMAN:

 2        Q    Are you aware that Chairman Song also was an

 3    incorporator in BNBM of America, Inc., in the state of

 4    Florida?

 5               MR. VEJNOSKA:  Same objection.

 6               MR. PFAEHLER:  Objection to form.

 7        A    I don't know.

 8    BY MR. HERMAN:

 9        Q    Do you know Li, Jiang?

10        A    I don't know.

11        Q    Do you know Wei, Chunshan?

12        A    I don't know.

13        Q    Do you know Yu, Xianfeng?

14        A    I do.

15        Q    And who is that?

16        A    I have just answered you.  As far as I know,

17    he is currently the deputy general manager of BNBMG.

18        Q    Are you aware that you were listed as having

19    a post office box in Tampa, Florida, in connection

20    with BNBM of America, Inc.?

21               MR. VEJNOSKA:  Objection, foundation,

22         vague and ambiguous.

23    BY MR. HERMAN:

24        Q    You -- can you answer the question?

25        A    I don't know.
```

Confidential - Subject to Further Confidentiality Review

```
 1      Q      Do you know who Chunshan, new word, Wei is?

 2              MR. VEJNOSKA:  Objection, asked and

 3        answered.

 4      A      I don't know.

 5              (Deposition Exhibit 144-2 marked.)

 6              (Deposition Exhibit 144-3 marked.)

 7              (Deposition Exhibit 144-4 marked.)

 8  BY MR. HERMAN:

 9      Q      I'm going to show you Exhibit 144-2, dated

10  June 20, 2000; Florida Department of State; a

11  certificate, State of Florida, February 22nd, 2000; a

12  certificate of domestication signed by Yu Xianfeng,

13  president, dated June 20th of 2000; a certificate of

14  domestication, State of Florida, dated June 20th,

15  2000; the articles of incorporation of BNBM America,

16  Inc., dated June 20th, 2000.

17              Exhibit 144-3 dated January 5th, 2001,

18  filed with the Secretary of State of Florida, of

19  January 9th, 2002, from the Secretary of State of

20  Florida; a document dated at the top of January 21st,

21  2003, Secretary of State of Florida but with no date

22  or information other than some typewritten names; a

23  document dated February 11th, 2004, from the Secretary

24  of State of Florida; a document dated February 7,

25  2005, from the Secretary of State of Florida.
```

```
 1                   And Exhibit 144-4, Florida Department

 2    of State, Division of Corporation, dated 9 -- that is

 3    September 15, 2006.  And I have some very specific

 4    questions.  And those questions --

 5                   MR. VEJNOSKA:  Mr. Herman --

 6    BY MR. HERMAN:

 7        Q    -- only relate --

 8                   MR. VEJNOSKA:  Okay.  Go ahead.

 9    BY MR. HERMAN:

10        Q    -- only relate to your name on these

11    documents.  I'll ask you to start --

12                   MR. VEJNOSKA:  Mr. Herman, may I ask,

13          are these the documents that you represent to

14          the witness that he signed?

15                   MR. HERMAN:  Well, if I said he signed,

16          that's a misstatement.  He's designated in these

17          documents, but I do not believe there's a

18          signature of the witness in these documents.

19                   MR. VEJNOSKA:  Well, I appreciate that

20          because the record does reflect that you asked

21          him if he signed them.

22                   MR. HERMAN:  Well, I appreciate you

23          correcting me, and I have no signature of the

24          witness on these documents.  I do have

25          signatures from Yu Xianfeng on these documents
```

Confidential - Subject to Further Confidentiality Review

1           and Li Jiang on these documents and Chunshan Wei

2           on these documents, but I'm only going to ask

3           the witness specific questions about his name.

4      BY MR. HERMAN:

5           Q     I would like you to look at the first page

6      of 144-3.  Would you look at the first page of

7      Exhibit 144-3.  Do you see your -- do you see your

8      name printed there?

9           A     That's what the document says.

10          Q     Do you see the name of Yu Xianfeng printed

11     there?

12          A     Where is it?

13          Q     Above Chairman Song's name.

14          A     Yes, I see that.

15          Q     And you see Chairman Song's name printed

16     there?

17          A     I see that.

18          Q     And you see in the upper left-hand corner

19     the words "BNBM of America, Inc."?

20          A     I see that's what the document says.

21          Q     Would you turn to the next page, please.  Do

22     you see Chairman Song's name printed there?

23               MR. VEJNOSKA:  With your permission, I'm

24          pointing since they are in English.

25               MR. HERMAN:  Sure.

1    BY MR. HERMAN:

2        Q      And do you see your name printed there?

3        A      I see that.

4        Q      And do you see in the upper left-hand corner

5    "BNBM of America, Incorporated"?

6        A      I see that.

7        Q      Go to the fourth page of this exhibit, which

8    at the bottom says, "2/11/2004."  Do you see in the

9    upper left-hand corner "BNBM of America, Inc."?

10       A      I see that's what the document says.

11       Q      Under No. 10, officers and directors, do you

12   see the name of Song Zhiping typed?

13       A      I see that.

14       Q      And do you see your name typed under it?

15       A      I see that.

16       Q      And do you see the last name typed is "Xian

17   Feng Yu"?

18       A      I see those three words.

19       Q      And do you see in the left-hand corner under

20   BNBM of America, the principal place of business is

21   4900 W. Rio Vista Avenue, Tampa, Florida?

22              MR. VEJNOSKA:  Do you need assistance?

23          That is what Mr. Herman is referring to.  I

24          don't know if you can read it, but if you can

25          see it.

1      A      I see that.

2    BY MR. HERMAN:

3      Q      Would you turn to the next page, please.  Do

4    you see in the upper left-hand corner "BNBM of

5    America, Inc."?

6      A      I see that.

7      Q      And do you see the -- your name listed under

8    Chairman Song under "Officers and Directors"?

9      A      I see that.

10     Q      I would now like you to look at Exhibit 144.

11   It's titled Florida Department of State, Division of

12   Corporations.  And my question is, do you see the

13   event date filed was September 15, 2006?

14     A      Where is the date September the 15th?

15             MR. VEJNOSKA:  Would you like me to show

16       him?

17             MR. HERMAN:  Yes.

18     A      What does this date mean?

19   BY MR. HERMAN:

20     Q      Do you see the date?

21     A      I see the date.

22     Q      Do you see at the bottom of Exhibit 144-4

23   your name listed under Chairman Song's?

24     A      I see that.

25     Q      Do you know when shipments from Taishan of

Confidential - Subject to Further Confidentiality Review

1    drywall began being shipped to the United States of

2    America?

3              MR. VEJNOSKA:  Objection, foundation.

4        A    I don't know.

5    BY MR. HERMAN:

6        Q    Wasn't it before September 15th, 2006?

7              MR. VEJNOSKA:  Same objection, asked and

8          answered.

9        A    I don't know.

10   BY MR. HERMAN:

11       Q    Do you know if shipments were shipped from

12   the Taishan Gypsum Company or its predecessor, to the

13   United States of America in Virginia, Florida and

14   other states in the year 2006?

15       A    I don't know.

16       Q    Have you discussed BNBM America,

17   Incorporated, with Chairman Song?

18              MR. VEJNOSKA:  Objection, vague and

19          ambiguous.

20       A    Not according to my recollection.

21   BY MR. HERMAN:

22       Q    Have you discussed BNBM America,

23   Incorporated, with Yu Xianfeng?

24       A    Not according to my recollection.

25       Q    Did Yu Xianfeng, as president of BNBM and as

Confidential - Subject to Further Confidentiality Review

1    the signatory to one or more of these documents, put

2    your name on these documents without your permission?

3                    MR. PFAEHLER:  Objection, form.

4        A    I don't recall.

5    BY MR. HERMAN:

6        Q    Where did you study English?

7        A    At university.

8        Q    Which university?

9        A    Shanghai Economy and Financial University.

10       Q    How many years did you study English?

11       A    Four years.  But I did not spend the entire

12   four years in learning English.

13       Q    And as a result of your abilities in

14   English, wasn't a test in English waived?

15                   MR. VEJNOSKA:  Objection, asked and

16        answered.

17       A    What test waived?

18   BY MR. HERMAN:

19       Q    Any test in English waived.

20                   MR. VEJNOSKA:  Same objection, vague and

21        ambiguous.

22       A    I saw one during my testimony yesterday, but

23   I don't remember the others.

24                   MR. VEJNOSKA:  Mr. Herman, when you

25        reach a convenient stopping point, we've been

Confidential - Subject to Further Confidentiality Review

1          going for 90 minutes.

2                    MR. HERMAN:  Sure.

3                    MR. VEJNOSKA:  Thank you.

4                    MR. HERMAN:  Just this series of

5          questions and we'll stop.

6     BY MR. HERMAN:

7          Q     When you worked in New Guinea for six years

8     for BNBMG, did you speak English then?

9                    MR. VEJNOSKA:  Objection, vague and

10         ambiguous, overbroad.

11         A     I spoke a little bit.

12    BY MR. HERMAN:

13         Q     And have you spoke English since that time?

14                   MR. VEJNOSKA:  Same objections.

15         A     I would speak a little bit occasionally.

16                   MR. HERMAN:  That's all I have for now,

17         and I'm going to offer the -- 144-2, 144-3,

18         144-4 are the documents in deposition.

19                   MR. VEJNOSKA:  And, Mr. Herman, since

20         you have mentioned those, just for the record, I

21         want to say that I asked the question that I did

22         about signatures for my clarification.  I know

23         you are scrupulous about what you represent to

24         the witness.

25                   MR. HERMAN:  I appreciate it and it was

Confidential - Subject to Further Confidentiality Review

```
1          my error, and I'm often in error, but --

2                    MR. VEJNOSKA:  Never in doubt.

3                    MR. HERMAN:  -- never at fault.

4                    MR. VEJNOSKA:  Never at fault?

5                    MR. HERMAN:  Never at fault.

6                    MR. VEJNOSKA:  I heard you were never in

7          doubt.

8                    MR. HERMAN:  Never at fault.

9                    MR. VEJNOSKA:  Oh, okay.

10                   MR. HERMAN:  Yes, there's a reason for

11         that.  My imperfections are perfect.

12                   MR. VEJNOSKA:  I thought I was wrong

13         once, but I was wrong.

14                   MR. HERMAN:  Well, that's okay.  I

15         generally make more mistakes in five minutes

16         than you will make in your entire life.

17                   MR. VEJNOSKA:  You're very kind.

18                   MR. HERMAN:  Of course you have a long

19         way to go.

20                   MR. VEJNOSKA:  I hope.  Off the record,

21         yes, please.

22                   THE VIDEOGRAPHER:  Time now is 2:53 p.m.

23         We are off the record.

24                   (Recess Taken From 2:53 p.m. To 3:31

25                   p.m.)
```

Confidential - Subject to Further Confidentiality Review

1           THE VIDEOGRAPHER:  This begins disk 4 of

2      today's deposition.  Time now is 2:30 -- I'm

3      sorry, 3:31 p.m.  We're back on the record.

4  BY MR. HERMAN:

5      Q    Good afternoon, Chairman Cao.  Earlier today

6  I asked you if you were aware that China National

7  Building Materials Company, Limited, had an agreement

8  with Alibaba to promote or publish CNBM Company,

9  Limited's building materials in North America.  And

10 I'm going to show you CAO 270, CAO 271, CAO 271-1, CAO

11 271-2 and CAO 272.  These bear AL-RMH-CNBM Bates

12 numbers 9999 through 10017, and I represent that these

13 documents were not produced by CNBM but were obtained

14 by my law firm.

15           (Deposition Exhibit 270 marked.)

16           (Deposition Exhibit 270-1 marked.)

17           (Deposition Exhibit 271 marked.)

18           (Deposition Exhibit 271-1 marked.)

19           (Deposition Exhibit 271-2 marked.)

20           (Deposition Exhibit 272 marked.)

21 BY MR. HERMAN:

22     Q    I'm presenting these only for memoranda

23 purposes, and I have a few specific questions to ask

24 the witness and I'll just go through these questions.

25 I don't think they need translation because the court

Confidential - Subject to Further Confidentiality Review

1    reporter will translate some very precise one-sentence

2    questions.

3              Are you personally aware that CNBM

4    Company, Limited, utilized the services of Alibaba in

5    2014 and 2015?

6              There's a second part of the question

7    that I need to put in context.  In some depositions,

8    even where China National Building Materials is listed

9    and not listed as Company, Limited, not listed as

10   Group, and a logo appears next to it, we were advised

11   in other depositions that this is really CNBM Group

12   and not CNBM -- CNBM Company, Limited.  So actually --

13   I'm going to start over, having given that

14   explanation.

15             The first question is, does this logo

16   on the first page and the name apply to CNBM Company,

17   Limited, or to CNBM Group?

18             MR. VEJNOSKA:  Objection, vague and

19        ambiguous, potentially calls for speculation.

20   A    Are you referring to this logo?

21   BY MR. HERMAN:

22   Q    Yes.

23   A    This logo is used by CNBM Group as well as

24   CNBM Company, Limited.

25   Q    Okay.  If you would turn to Exhibit 270-1.

Confidential - Subject to Further Confidentiality Review

1    It's 1001, Bates number AL-RMH-CNBM1001.

2        A     This one?

3        Q     The body of this document states as follows:

4    "We, China National Building Material and Equipment

5    Import & Export Corporation (CNBM International), was

6    set up in 1985 as the sole trading affairs platform

7    and affiliate of China National Building Materials

8    Group Corporation (CNBM)."

9              Did both, to your knowledge, CNBM

10   Company, Limited, and CNBM Group, participate in 2014

11   and 2015 in a relationship with Alibaba?

12              MR. VEJNOSKA:  Move to strike the

13       preparatory statement.  Objection, vague and

14       ambiguous.

15       A     Is it your question whether CNBMG and CNBM

16   Company, Limited, has signed an agreement with

17   Alibaba?

18   BY MR. HERMAN:

19       Q     Yes.

20       A     As far as I know, CNBMG and CNBM Company,

21   Limited, had not signed an agreement like this with

22   Alibaba.

23       Q     Have they signed any agreements with

24   Alibaba?

25       A     Not as far as I know.

Confidential - Subject to Further Confidentiality Review

```
 1                    MR. HERMAN:  I'm not going to ask any

 2          more questions of this witness about these

 3          documents, but I am going to offer the documents

 4          in this deposition, documents 270 through 272,

 5          Bates numbers AL-RMH-CNBM9999 through 10017.

 6                    I don't have a translation of the news

 7          article that's attached.  I don't believe it's

 8          relevant to this witness as his testimony, and

 9          when the deposition's concluded, I'll remove it,

10          but I am providing it to counsel because it was

11          recently downloaded and attached to these

12          materials.

13                    Because I don't have Chinese

14          translations, I'm going to offer Exhibits

15          44-1(I) in English, which is CNBM and Equipment

16          Import.

17                    (Deposition Exhibit 44-1(I) marked.)

18                    MR. HERMAN:  I'm going to offer China

19          National Building Materials and Equipment Import

20          & Export Corporation, also known as CNBM Trading

21          Storefront with Alibaba, Exhibit 44-1, and it

22          purports to be advertising supplied by China

23          National Building Materials and Equipment Import

24          & Export Corporation to Alibaba for posting on

25          Alibaba website.  I offer Exhibit 44-1 [sic].
```

Confidential - Subject to Further Confidentiality Review

1        It also bears Exhibit 146 in the contempt

2        binder.

3                (Deposition Exhibit 44-1(J) marked.)

4                MR. HERMAN:  Exhibit 147 in the contempt

5        binder and Exhibit 44-1(J) to these depositions

6        is a CNBM International Corporation Storefront

7        advertisement in Alibaba, and I offer it in the

8        deposition.  There's no Chinese translation with

9        it.

10               MR. PFAEHLER:  Did you say 44-1(J)?

11               MR. HERMAN:  Yes, it's 44-1(J).

12               MR. PFAEHLER:  Do we have a copy --

13               MR. HERMAN:  I asked did everybody bring

14       it with them.  We previously had distributed it,

15       but you can make a copy when the deposition's

16       over if you'd like.

17               Exhibit 44-1(K) is a CNBM International

18       Engineering Company, Limited, Storefront

19       advertisement on Alibaba, and it is deposition

20       44-1(K) and I offer it.

21               (Deposition Exhibit 44-1(K) marked.)

22               MR. HERMAN:  We're going to pass out to

23       counsel Exhibit No. 73, and you're going to find

24       our translations on top and the Chinese or

25       Mandarin underneath, and the highlighted

1        portions have been -- on the Chinese copies have

2        been highlighted.

3                (Deposition Exhibit 73 marked.)

4                MR. HERMAN:  These documents were

5        produced by CNBMG, 668 to 672.  Those are the

6        Bates numbers.

7    BY MR. HERMAN:

8        Q    I'll ask the witness to please read the

9    highlighted portions in Chinese of CNBMGRP Bates 668

10   in Exhibit 73.

11               After the witness has read -- read all

12   of the highlighted portions, then I'll have a

13   question.

14               MR. PFAEHLER:  Counsel, is there a copy

15        for all counsel of this exhibit?

16               MR. HERMAN:  Of what?  You mean of

17        Exhibit 73?

18               MR. PFAEHLER:  Yes, thank you.

19               MR. HERMAN:  Sorry.  I thought you had

20        it.

21               MR. PFAEHLER:  As a courtesy, I would

22        like to have these before questions are asked

23        about it.

24               MR. HERMAN:  Sure.

25               MR. ALLELY:  The State would make the

Confidential - Subject to Further Confidentiality Review

```
 1          same request.

 2                  MR. HERMAN:  I'm sorry, somebody else

 3          said something.

 4                  MR. ALLELY:  I did.  It's Craig Allely

 5          on behalf of the State of Louisiana.

 6                  MR. HERMAN:  Do you want a copy?  Is

 7          that it?  I'm reading this --

 8                  MR. ALLELY:  I'm merely asking for the

 9          courtesy of being provided copies of exhibits.

10                  MR. HERMAN:  I thought that you -- I

11          thought that you were.

12                  MR. ALLELY:  No, sir, you were passing

13          out exhibits and said all counsel received them,

14          but we have not received any.

15                  MR. HERMAN:  I'm saying to you I

16          apologize.  I thought you did.

17                  MR. ALLELY:  Thank you, sir.

18                  MR. HERMAN:  There's no reason why you

19          shouldn't have it.  You're in attendance at the

20          deposition.

21                  MR. ALLELY:  Thank you.  I appreciate

22          that, sir.

23                  MR. HERMAN:  Give it to him.  It's not a

24          question.

25                  (Witness Reviews Document.)
```

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. HERMAN:

 2        Q     Have you seen this document before today?

 3        A     I don't remember that I've read it.

 4        Q     At page 670, Roman numeral III, do you see

 5   the words highlighted, "Our company was included in

 6   the consolidated scope in 2009, CNBM USA Corporation

 7   incurred a loss of RMB 1,137,700 yuan"?

 8        A     I see it says here China Building Material

 9   International USA Company.

10        Q     Do you see --

11        A     I read it.

12        Q     Do you see the words, "This subsidiary was a

13   wholly owned subsidiary invested and established in

14   2008 by our company"?

15        A     I see that's what the document said.

16        Q     Do you see the words "In 2010, we will put

17   more efforts on market development in the USA and

18   improve the company's profitability and gradually

19   reverse the business loss situation"?

20        A     I see that's what the report says.

21        Q     Were you aware before today that CNBM

22   International (USA) was a subsidiary of CNBM Group?

23             MR. VEJNOSKA:  Objection, foundation.

24        A     Did you say CNBM International (USA) was a

25   subsidiary of CNBM Group?
```

 1   BY MR. HERMAN:

 2        Q      Yes.

 3        A      According to my understanding, the language

 4   is not in there.

 5        Q      Do you see anywhere the words "USA"?

 6        A      I did.

 7        Q      Would you read in Chinese the sentence in

 8   which the word "USA" appears and the translator will

 9   translate it in English for the record.

10        A      Regarding to the rectification situation of

11   the loss of American company, our company in 2009 was

12   included in the consolidated reports scope

13   enterprises.  China Building Material International

14   USA Company had lost 1.137.7 -- 1 million 133 thousand

15   and 7 -- 1,137,700 yuan.  The subsidiary company is a

16   solely invested and owned subsidiary company of our

17   company in 2008.  It started operation in the year

18   2009.  It encountered the economic crisis in America,

19   the market was weak --

20             THE INTERPRETER:  The interpreter did

21        not understand the expression of Gangxin,

22        G-a-n-g-x-i-n.  May the interpreter inquire the

23        deponent?

24             MR. HERMAN:  Yes.

25             THE INTERPRETER:  Upon clarifying with

 1          the deponent the interpreter would like to

 2          continue her interpretation.

 3     A     The actual needs had increased.  The

 4  operational risks had increased.  A rectification

 5  status based on the principle of effectively prevents

 6  risks.  In the year 2010, it will gradually increase

 7  the development strength in American market, increase

 8  its own profitability, gradually reverse the status of

 9  loss.

10          I'm done reading the paragraphs.

11  BY MR. HERMAN:

12     Q     Would you please -- thank you.  Would you

13  please turn to the next highlighted portion.  It's

14  under Roman numeral V, page 671.

15     A     I'm here.

16     Q     Do you see the words, "Our company has 4

17  overseas subsidiaries, which include the Tier-2

18  subsidiaries CNBM International (USA)"?

19     A     I see the words in the report.

20     Q     Do you know where the home office in the

21  United States is the company CNBM International (USA)?

22          MR. VEJNOSKA:  Objection, foundation.

23     A     You're asking me where is CNBM International

24  (USA)'s office?

25  BY MR. HERMAN:

Confidential - Subject to Further Confidentiality Review

```
 1      Q     Yes.

 2      A     I don't know.

 3      Q     Am I correct in my understanding that CNBM

 4   International (USA) is a subsidiary wholly owned by

 5   CNBM Group?

 6      A     Please repeat.

 7            THE INTERPRETER:  The interpreter will

 8       repeat.

 9   BY MR. HERMAN:

10      Q     Am I correct that according to this

11   Exhibit 73, CNBM International (USA) is a wholly owned

12   subsidiary of CNBM Group?

13      A     That's not correct.

14      Q     Who owns CNBM International (USA)?

15            MR. VEJNOSKA:  Objection, vague and

16       ambiguous, calls for a legal conclusion.

17      A     According to my understanding to the

18   document, the word "our company" here is referring to

19   CNBM Import & Export Company.  According to my

20   understanding to the document, CNBM International

21   (USA) is 100 percent solely owned by CNBMG Import &

22   Export Company.

23   BY MR. HERMAN:

24      Q     And who owns CNBMG Import & Export Company?

25      A     CNBMG --
```

Confidential - Subject to Further Confidentiality Review

```
 1              MR. VEJNOSKA:  Sorry.  Same objections
 2        as before.
 3              MR. HERMAN:  Did the witness answer the
 4        question?
 5              MR. VEJNOSKA:  Yes.
 6    A     CNBMG owns 100 percent of CNBMG Import &
 7    Export Company's shares.
 8    BY MR. HERMAN:
 9    Q     Thank you.
10              MR. HERMAN:  I'm going to offer
11        Exhibit 73.
12              Please pass out Exhibit 256.
13              (Deposition Exhibit 256 marked.)
14              MR. HERMAN:  Please give one copy to
15        BNBM and BNBMG, and one copy to -- I'm sorry.
16        Two copies to counsel for CNBMG and CNBM, and
17        one copy for the witness and one copy for the
18        translator.  And now that the Attorney General
19        has requested a copy, give the Attorney General
20        of Louisiana a copy.  And if there's any copies
21        left, give them to other counsel.
22              Now, does everybody have a copy?
23              MR. PFAEHLER:  Yes, we do.
24              MR. ALLELY:  Yes, Mr. Herman.  Thank
25        you.
```

Confidential - Subject to Further Confidentiality Review

1           MR. HERMAN:  Okay.  I'm going to offer

2       as an exhibit, under Code of Evidence 1006, the

3       chart which is the first six pages of

4       Exhibit 256 and the supporting documentation

5       which goes from BNBMPLC 5245 to 5369.

6           MR. PFAEHLER:  Mr. Herman, we're going

7       to object to this exhibit as an improper summary

8       under F.R.E. 1006.

9           MR. HERMAN:  Objection's noted.

10          Let's distribute Exhibit 300.

11          (Deposition Exhibit 300 marked.)

12          MR. HERMAN:  It is CNBM Company 69453,

13      and the translation is on the second-to-last

14      page of the exhibit.  It contains PSC

15      translation followed by defendants' machine

16      translation followed by the Chinese original.

17      It's dated December 2013 -- on December 13,

18      2013.

19  BY MR. HERMAN:

20      Q    Is this document addressed to you, Chairman

21  Cao, in addition to others?

22      A    According to what the document says, it was

23  sent by the secretary of the board of directors to all

24  directors.

25      Q    Including you?

1     A     Yes.

2     Q     And it was sent by the secretary of what

3  company?

4     A     CNBM Company, Limited.

5     Q     And it refers to the seventh meeting of

6  China National Building Material Company, Limited's

7  third session of the board; is that correct?

8     A     Yes.

9     Q     Did you attend that meeting?

10    A     I do have an impression of that, but I

11 cannot be 100 percent sure.

12    Q     And do you see any language regarding a

13 proposal for continuing connected transactions for

14 three years with China National Building Materials

15 Group Corporation?

16    A     I see that.

17    Q     Do you see that you were requested to sign

18 or fax or mail signed resolutions before the

19 December 27, 2013, meeting?

20    A     I see that's what the document says.

21    Q     That's a normal conduct for directors, to

22 see in advance resolutions and sign and return them to

23 the secretary; is that correct?

24          MR. VEJNOSKA:  Objection, vague and

25     ambiguous, overbroad.

1      A     As far as I know, the ways of board of

2    directors meeting and resolutions in CNBM Company,

3    Limited, include on-site meeting, fax meeting, e-mail

4    meeting, direct delivery meeting.

5                    MR. HERMAN:  I offer Exhibit 300 in

6          connection with the deposition.

7                    Please give the witness -- please pass

8          out to the witness Exhibit 297 as a translation

9          of CNBM Company Bates number 65306.

10                    (Deposition Exhibit 297 marked.)

11                    MR. HERMAN:  The last page has the

12          Chinese as it was produced.

13    BY MR. HERMAN:

14      Q     Can you read the last page that's in

15    Chinese, please.

16                    (Witness Reviews Document.)

17      A     I see that.

18    BY MR. HERMAN:

19      Q     Is it addressed to Chief Cao and Chief

20    Chang?

21      A     That's what the e-mail says.

22      Q     And it is from Feng Zhang on September 16th,

23    2014?

24      A     That's what the e-mail says.

25      Q     Who are the 22 institutional investors

Confidential - Subject to Further Confidentiality Review

```
1    reflected in this document?

2       A     I haven't seen this document.  I don't know.

3       Q     Who reads your e-mails?

4             MR. VEJNOSKA:  Objection, asked and

5         answered.

6       A     My secretary.

7    BY MR. HERMAN:

8       Q     In September of 2014, who was authorized to

9    read your e-mails?

10            MR. VEJNOSKA:  Same objection.

11      A     My secretary.

12   BY MR. HERMAN:

13      Q     Was anybody else other than your secretary

14   authorized to read your e-mails?

15      A     No.

16      Q     Was your secretary authorized to reply to

17   your e-mails?

18            MR. VEJNOSKA:  Same objection.

19      A     Without my authorization she would not

20   reply.

21   BY MR. HERMAN:

22      Q     Under what circumstances was your secretary

23   instructed to report e-mails to you?

24            THE INTERPRETER:  Interpreter needs to

25         inquire deponent of his answer.
```

1     A     If I do not ask her in regarding to certain

2   issues, she would not voluntarily give me answers.

3   BY MR. HERMAN:

4     Q     Well, what issues would you ask her to tell

5   you about?

6               MR. VEJNOSKA:  Objection, vague and

7        ambiguous, overbroad.

8     A     If I wanted to know certain issues that I

9   wanted to know, I would ask her whether there were

10  e-mails regarding those issues.

11  BY MR. HERMAN:

12    Q     Did you ever ask your secretary for

13  e-mail --

14    A     Except personal e-mails, I have almost never

15  asked her regarding the work.

16    Q     Did you ever ask her at any time in 2014 to

17  report e-mails concerning the lawsuits in Judge

18  Fallon's court?

19    A     I have never asked her of that.

20    Q     With regard to Exhibit 297, Feng Zhang sent

21  you this e-mail, correct?  Received by your secretary,

22  correct?

23               MR. VEJNOSKA:  Objection, calls for

24        speculation.

25    A     The document says so, but I don't know

Confidential - Subject to Further Confidentiality Review

1    whether it was received or not.

2    BY MR. HERMAN:

3        Q    Well, I -- as an officer of the court, I

4    tell you that CNBM Company produced it to me, so

5    someone in CNBMC -- CNBM Company received it; isn't

6    that true?

7                MR. VEJNOSKA:  Objection, argumentative,

8            calls for speculation.

9        A    If any, that must be my secretary.

10               MR. HERMAN:  I'm going to offer

11           Exhibit 297.

12               Exhibit 215.  Would you please

13           distribute Exhibit 215.

14               (Deposition Exhibit 215 marked.)

15               MR. HERMAN:  Exhibit 215 is a

16           translation of a BNBM(Group)-E0000 page 444,

17           445, 446, and it's three pages long in

18           translation.  It's three -- two pages of

19           metadata.  It is two pages of machine

20           translation and three pages in Chinese as

21           received.

22               In the questioning I'll refer the

23           witness to Bates number 444, 445, and 446.

24    BY MR. HERMAN:

25        Q    Who is Zhu Hui, Z-h-u, H-u-i?

Confidential - Subject to Further Confidentiality Review

1    A    I don't know.

2    Q    Who is Lu, Kailong?

3    A    I don't know.

4    Q    Have you seen this document before?

5    A    No.

6    Q    Would you turn to the second page.  I

7   believe it's at page 445.  Do you see the words,

8   "Leaders of the company:"?

9    A    I see the language in the report.

10    Q    Do you see the words, "China National

11   Building Material Group Corporation held a meeting of

12   international business risk prevention in the morning

13   of July 11, 2014"?

14    A    I see that's what the document says.

15    Q    Do you see that, "The meeting mainly

16   introduced the international situations and existing

17   risks the Group Corporation would face in the process

18   of implementing the, 'Going Global' strategy"?

19    A    I see that.

20    Q    And do you see, "The meeting also reported

21   the progress of the US customers' lawsuit about the

22   gypsum boards exported from China"?

23    A    I see that.

24    Q    Under item No. 2, do you see the words, "and

25   to avoid depositing funds in banks that have branches

1    in the State of New York, United States"?

2        A     I see the words in the document.

3        Q     Do you see the words, "It is required to

4    prevent the top management of the upper level

5    enterprise from holding the position of overseas

6    enterprise legal person"?

7                    As of the meeting of July 11, 2014,

8    you were the general manager of CNBM Group; isn't that

9    true?

10       A     I was.

11       Q     Did you attend this meeting?

12       A     I don't have that impression.

13       Q     Did anyone report to you what happened at

14   the meeting?

15       A     I don't have that impression.

16       Q     As general manager of CNBM on July 11, 2014,

17   were you advised of CNBM Group Corporation's

18   requirements?

19              MR. VEJNOSKA:  Objection, vague and

20         ambiguous.

21       A     I don't have that impression.

22   BY MR. HERMAN:

23       Q     As CNBM Group's general manager on July 11,

24   2014, were you advised of the suggestions listed in

25   the document?

1      A      I don't have that impression.

2      Q      Was Lu, Kailong vice manager of the

3   international business department of BNBMG on July 14,

4   2014?

5      A      I don't know.

6      Q      Who were the directors of CNBMG Corporation

7   on July 11, 2014?

8              MR. VEJNOSKA:  Objection, asked and

9         answered.

10     A      In July of 2014, the chairman of the board

11  is Song Zhiping, vice chairman Yao Yan, director and

12  general manager Cao Jianglin, staff director Wang

13  Yumeng.  To my recollection there should be another

14  six external directors.  That's all I could remember

15  right now.

16  BY MR. HERMAN:

17     Q      With regard to the internal directors, did

18  any internal director of CNBMG discuss with you the

19  July 11, 2014, meeting?

20     A      I don't have that impression.

21     Q      If you would, look at the first page of the

22  document of those who were invited to attend this

23  meeting.

24     A      I don't understand this.

25             MR. PFAEHLER:  Objection, form.

```
 1   BY MR. HERMAN:

 2        Q     It says, does it not, to Zhang, Yi?  Is that

 3   correct?

 4        A     I don't understand.

 5        Q     Do you see e-mail addresses from Zhu, Hui to

 6   a series of individuals?

 7        A     That's what the e-mail says.

 8        Q     Okay.  Who is Zhang, Yi?

 9        A     I don't know.

10        Q     Who was -- or what position did Chen,

11   Lingying have with BNBMG?

12        A     I don't know this person.

13        Q     What position did Li, Lin have with BNBMG?

14        A     I don't know this person.

15        Q     What position did Sun, Yao have with BNBMG?

16        A     I don't know this person.

17        Q     What position did Zhao, Jie have with BNBMG?

18        A     I don't know this person.

19        Q     What position did Zhu, Hui have with BNBMG?

20        A     I don't know this person.

21              MR. HERMAN:  This was a document that

22         was clawed back on the basis of privilege during

23         the BNBM Group 30(b)(6) deposition or the BNBM

24         30(b)(6) deposition and as such we'll -- and

25         it's now been released from the privilege and we
```

Confidential - Subject to Further Confidentiality Review

```
 1          will request a meet and confer with counsel for

 2          BNBM and BNBMG regarding producing a witness who

 3          does know this document.  Thank you.

 4               We're going to offer Exhibit 215.

 5               MR. VEJNOSKA:  Mr. Herman, while

 6          you're -- Mr. Herman?

 7               MR. HERMAN:  Yes, I'm still here.

 8               MR. VEJNOSKA:  I didn't see you leave.

 9          While you are between documents, we are

10          approaching 5:00.  We have agreed, as you know,

11          to go late, to go to 6.  I don't know what your

12          intentions are.

13               MR. HERMAN:  It won't be necessary to go

14          to 6.  I'm not sure how much longer we will need

15          to go, but hopefully we -- if you want to take a

16          five-minute break, ten-minute break --

17               MR. VEJNOSKA:  Why don't we take --

18               MR. HERMAN:  -- why don't we do that and

19          maybe we can -- 20 minutes after the break at

20          5:30, I hope to conclude.

21               MR. VEJNOSKA:  Okay.  Why don't we just

22          take what one of my former colleagues used to

23          call it, a personal comfort break.

24               MR. HERMAN:  Oh, well, if it's for

25          personal comfort, no breaks.
```

Confidential - Subject to Further Confidentiality Review

```
 1                    MR. VEJNOSKA:  All right.

 2                    THE VIDEOGRAPHER:  Time now is 4:51 p.m.

 3            We are off the record.

 4                    (Recess Taken From 4:51 p.m. To 5:14

 5                    p.m.)

 6                    THE VIDEOGRAPHER:  This begins disk 5 of

 7            today's deposition.  Time now is 5:14 p.m.  We

 8            are back on the record.

 9                    (Deposition Exhibit 274 marked.)

10                    MR. HERMAN:  I'm going to show the

11            witness Exhibit 274.  One for the translator,

12            three for the witness' lawyers, and will you

13            hand the rest of these out one to a party,

14            please.  And now I don't have a copy.  Here,

15            here's another one.

16      BY MR. HERMAN:

17         Q    Were you ever involved in the business known

18      as BNBM of America, Limited, registered in the state

19      of Oregon?

20                    MR. VEJNOSKA:  Objection, vague and

21            ambiguous.

22         A    I don't have that impression.

23                    MR. HERMAN:  I am going to offer

24            Exhibit 274, business registry business name

25            search, state of Oregon, August 2nd, 2015, from
```

Confidential - Subject to Further Confidentiality Review

1            the Oregon Secretary of State's office.

2                  I'm going to pass to the witness, the

3            translator and counsel for the witness a total

4            of five copies of Exhibit 275.

5                  (Deposition Exhibit 275 marked.)

6                  MR. HERMAN:  Would you please distribute

7            the rest of -- the rest of these.

8                  The first page is a translation in

9            English, the second page is a machine

10           transcript, the third page is the Chinese and

11           it's a translation of BNBM Group document Bates

12           number E00683 and the -- both the machine

13           translation and the original document produced

14           in Mandarin have the same number.  The document

15           Exhibit 275 is three pages.  Another copy if

16           somebody should need it.

17                  According to the metadata, this document

18           was created on June 5th, 2014.

19     BY MR. HERMAN:

20        Q     To your knowledge -- strike that.

21                  Are you aware that BNBM Group has

22     patented inventions in the United States of America?

23        A     I don't know.

24        Q     Do you know whether CNBM Company, Limited,

25     has applied to the United States of America Patent

Confidential - Subject to Further Confidentiality Review

```
 1   Office for patents?

 2       A    CNBM Company, Limited, headquarters had

 3   never done that.

 4       Q    To your knowledge, has any CNBM Company,

 5   Limited, subsidiary applied to the United States

 6   Patent Office for a patent?

 7                 MR. VEJNOSKA:  Objection, vague and

 8           ambiguous, calls for a legal conclusion.

 9       A    I don't know the legal definition of

10   "subsidiary."

11   BY MR. HERMAN:

12       Q    To your knowledge, has any company with the

13   letters "CNBM" in it applied for a patent in the

14   United States Patent Office?

15       A    I don't know.

16                 MR. HERMAN:  I'm going to offer

17           Exhibit 275.

18                 Would you distribute Exhibit 301 and

19           301-1.

20                 (Deposition Exhibit 301 marked.)

21                 (Deposition Exhibit 301-1 marked.)

22                 MR. HERMAN:  As we all know, we

23           attorneys know, it's very dangerous to say you

24           have one last question.  Hopefully, though, I

25           have one last exhibit.
```

```
 1              First we'll -- I'm going to question the

 2         witness about CNBM Group, Bates number 182703,

 3         and attached to it is a metadata and one page of

 4         Chinese, which is the last page.  And I'll ask

 5         the witness to read to himself the last page in

 6         Chinese.

 7              Attached to Exhibit 301 is 301-1.  It's

 8         referred to as an attachment in 301.  And it

 9         is -- it is a PSC translation followed by a

10         machine translation followed by the original

11         Chinese-produced CNBM Group 182704 to CNBM Group

12         182706, 182707, 182708, 182709, 182710 and

13         182711.  And the witness' version in Chinese has

14         been yellow lined on Exhibit 301-1, and I'll ask

15         him to please read the highlighted portions of

16         Exhibit 301-1 after he's concluded reading

17         Exhibit 301.

18              (Witness Reviews Document.)

19     A    I've read it.

20  BY MR. HERMAN:

21     Q    Chairman Cao, would you look at the last

22  page of Exhibit 301.  Is it dated August 13th, 2014?

23     A    Yes.

24     Q    Is it titled "the Guiding Spirit of the

25  Special 'Going Out' Logistics and Trade Conference"?
```

1       A       That's what the document says.

2       Q       And was it e-mailed to your attention?

3       A       That's what the document says.

4       Q       And is the attachment titled "Chief Cao's

5   Speech on the 'Going Out' (Logistics and Trade)

6   Seminar.doc"?

7       A       That's what the document says.

8       Q       Where was your speech "Going Out" delivered?

9               MR. VEJNOSKA:  Objection, foundation.

10      A       According to my recollection, there was such

11  a seminar.

12  BY MR. HERMAN:

13      Q       Where was the seminar conducted?

14      A       According to my recollection, it was held in

15  the meeting room of CNBM Group.

16      Q       And did you give the speech on behalf of

17  CNBM Group?

18              MR. VEJNOSKA:  Objection, vague and

19        ambiguous.

20      A       I made a speech in the meeting.

21  BY MR. HERMAN:

22      Q       Who were you appearing for at that meeting

23  in which you gave the speech?

24      A       It represents both opinion as general

25  manager of CNBM Group and my personal opinion.

Confidential - Subject to Further Confidentiality Review

1      Q      And were any people attending that seminar

2   who were not employees of CNBM Group?

3      A      I don't have a clear recollection.

4      Q      Well, were any individuals -- strike that.

5             Were any investors in CNBM Company,

6   Limited, invited to hear your speech?

7      A      I don't have a clear recollection.

8      Q      Did you read and provide any instructions as

9   requested regarding your "Going Out" logistics and

10  trade seminar speech?

11            MR. VEJNOSKA:  Objection, vague and

12        ambiguous.

13     A      I don't understand your question.

14  BY MR. HERMAN:

15     Q      Do you see in -- on Exhibit 301 the words,

16  "The attachment is the Guiding Spirit of the Special

17  'Going Out' Logistics and Trade Seminar that we

18  organized from the content of your speech, please read

19  and provide instructions!"?

20            In accord with that request, did you

21  read and provide any instructions?

22            MR. PFAEHLER:  Objection, form.

23            THE INTERPRETER:  The interpreter would

24        like to restart interpretation.

25            MR. HERMAN:  Okay.

1       A       I have not seen this e-mail.

2    BY MR. HERMAN:

3       Q       Have you seen the attachment, Exhibit 301-1,

4    before?

5       A       I don't have a clear impression on that.

6       Q       Did your secretary report to you that a

7    request had been made for you to read and provide

8    instructions regarding the "Going Out" speech?

9               MR. PFAEHLER:  Objection to form.

10      A       I don't have an impression of that.

11   BY MR. HERMAN:

12      Q       Have you now had an opportunity to read the

13   version in Chinese, pages 182704 through 182711, Bates

14   numbers of CNBM Group at Exhibit 301-1?

15      A       I browsed through it.

16      Q       Do you recall making the "Going Out" speech?

17      A       I made speech.

18              MR. PFAEHLER:  Mr. Herman, may I ask

19         just for a point of clarification.  Your few

20         questions --

21              MR. HERMAN:  No.

22              MR. VEJNOSKA:  -- have referred to an

23         e-mail and a quote in the document, and we don't

24         see that in the -- anything that's here in

25         Exhibit 301-1.

Confidential - Subject to Further Confidentiality Review

1             MR. HERMAN:  I can explain it to you but

2       I can't understand it for you.

3             MR. PFAEHLER:  Okay.  You referred --

4             MR. HERMAN:  I have no idea what you're

5       talking about.

6             MR. PFAEHLER:  You referred in your

7       questions to an e-mail.  We don't have an e-mail

8       contained in 301-1 and you used a quote --

9             MR. HERMAN:  No, I didn't say that there

10      was an e-mail in 301-1.  I said there was an

11      e-mail in 301.  You have 301?

12            MR. PFAEHLER:  We weren't provided with

13      a copy of 301, only 301-1.

14            MR. HERMAN:  Oh, well, I apologize for

15      you.  Maybe we ran out.  You'll have to get one

16      from someone else.

17            MR. ROSENBERG:  We'll find it.  Thank

18      you.

19            MR. HERMAN:  I can assure you that we

20      printed 12 of every exhibit and --

21            MR. VEJNOSKA:  I'm giving --

22      Mr. Pfaehler, I'm passing down my copy so you

23      can take a look at it.

24            MR. PFAEHLER:  Thank you.

25            MR. HERMAN:  I'll not ask any more

Confidential - Subject to Further Confidentiality Review

1    questions until you've had an opportunity to

2    look at it.

3        MR. PFAEHLER:  I would request that if

4    documents are being introduced, that we be

5    provided copies.

6        MR. HERMAN:  Listen --

7        MR. PFAEHLER:  This is not the first

8    time --

9        MR. HERMAN:  I'm not going to hear that

10   from you in this deposition or any other.  I

11   made 12 copies of everything.  We have provided

12   more than we need to provide during depositions.

13   And you're arrogant and your words coming at the

14   end of a deposition are offensive to me.  It

15   infers that somehow intentionally your clients

16   have been ignored and I assure you that hasn't

17   happened.  Now, I'm not going to say another

18   word.  You can say whatever you want on this

19   record.

20       MR. PFAEHLER:  I am going to say --

21       MR. HERMAN:  Bring on whatever motions

22   you want.

23       MR. PFAEHLER:  I'm going to say what I

24   need to say now.  There was no cause for you to

25   raise your voice to me like that and to speak to

```
1        me the way you just did.  I don't know how many

2        copies you made of this document.  I didn't

3        infer anything.  I didn't suggest anything.  I

4        said we were not provided with one, and it's not

5        the first time today or in prior depositions

6        that has happened.  So whether you had 12 copies

7        and you just didn't give it to us, I don't know.

8        I infer nothing.  I simply asked that we be

9        provided with the copies before --

10              MR. HERMAN:  It is not my practice to

11       hold back documents from you or anybody else.

12              MR. PFAEHLER:  I did not say it was,

13       sir.  I said we simply request that we be given

14       those documents at this end of the table when

15       questions are being asked.

16              MR. HERMAN:  I have nothing further to

17       say to you.  Can we -- will you read the

18       document now and we can go on and conclude this.

19              MR. PFAEHLER:  I would like to read the

20       document, sir.  And I don't think there was any

21       need for you to turn on me the way you did.

22       I've treated you with respect for the last two

23       days, and I don't appreciate that, sir.

24              MR. HERMAN:  You and I have a different

25       view of what you said, the context and the way
```

1          you said it.

2                    MR. PFAEHLER:  The words -- fortunately,

3          sir, we have a record and we have a videotape.

4                    MR. HERMAN:  Yes, we do.

5                    MR. VEJNOSKA:  Mr. Herman, it seemed

6          like you were going on to Exhibit 301-1; is that

7          correct?

8                    MR. HERMAN:  I was.

9                    MR. VEJNOSKA:  Okay.  So maybe we can --

10                    MR. HERMAN:  I'm going to hold up till

11          counsel has the opportunity to read Exhibit 301.

12                    MR. PFAEHLER:  Thank you, Counsel.  I've

13          had a chance to read it.

14                    MR. HERMAN:  You're quite welcome.

15   BY MR. HERMAN:

16     Q    Would you turn to the last yellow marked

17   material at page CNBMGRP 182708.  It appears under

18   3 -- paragraph 3.

19     A    This paragraph 3?

20     Q    Yes.  Roman -- paragraph 3 of Roman numeral

21   III.  Page CNBM Group 182708.

22     A    I read it.

23     Q    Do you see the words written there, "The

24   issues that should be paid attention to for the work

25   of 'Going Out':  First, we should be determined."?

1    A    Yes.

2    Q    Do you see the words "Going Out" -- well,

3  first of all, to the best of your recollection, were

4  those words contained in your speech?

5    A    The three characters of "Going Out" was not

6  my mention but the words of Chinese leaders.  My

7  personal understanding of this is that Chinese

8  companies are to make investments in places outside of

9  China.

10    Q    Did you say in your speech that, "the three

11  basic models that Chief Song proposed in the report at

12  the semiannual meeting:  cross-border e-commerce plus

13  overseas warehouse, new type homes, and BNBM HOME"?

14    A    I have an impression of that, but I cannot

15  be 100 percent sure.

16    Q    Do you see those words in this document?

17    A    I see that.

18        MR. HERMAN:  I thank you very much for

19      your appearance here and I hope that you will

20      have a safe trip home.

21        In connection with the witness'

22      testimony, I offer Exhibit 301-1 and 301.

23        MR. VEJNOSKA:  And we thank you for your

24      courtesy throughout and for your

25      professionalism.

1          MR. HERMAN:  And you for yours.

2          THE WITNESS:  Thank you for not adding

3     the ten minutes of my cigarette time to the

4     deposition.

5          MR. VEJNOSKA:  And I think we're

6     finished.

7          THE VIDEOGRAPHER:  Time now is 5:50 p.m.

8     Today's deposition consisting of five disks is

9     now concluded.

10          (Deposition Concluded At 5:50 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Confidential - Subject to Further Confidentiality Review

```
1                    REPORTER'S CERTIFICATE

2

3          This transcript is valid only for a transcript

4     accompanied by my original signature and original

5     required seal on this page.

6          I, Micheal A. Johnson, Certified Court Reporter

7     (LA Certificate #29025) in and for the State of

8     Louisiana, as the officer before whom this testimony

9     was taken, do hereby certify that JIANGLIN CAO, after

10    having been duly sworn by me upon authority of

11    R.S. 37:2554, did testify as herein before set forth

12    in the foregoing 126 pages; that this testimony was

13    reported by me in the stenotype reporting method, was

14    prepared and transcribed by me or under my personal

15    direction and supervision, and is a true and correct

16    transcript to the best of my ability and

17    understanding; that the transcript has been prepared

18    in compliance with transcript format guidelines

19    required by statute or by rules of the board, and that

20    I am informed about the complete arrangement,

21    financial or otherwise, with the person or entity

22    making arrangements for deposition services; that I

23    have acted in compliance with the prohibition on

24    contractual relationships, as defined by Louisiana

25    Code of Civil Procedure Article 1434
```

Confidential - Subject to Further Confidentiality Review

1   and in rules and advisory opinions of the board;

2   that I have no actual knowledge of any prohibited

3   employment or contractual relationship, direct or

4   indirect, between a court reporting firm and any party

5   litigant in this matter nor is there any such

6   relationship between myself and a party litigant in

7   this matter.  I am not related to counsel or to the

8   parties herein, nor am I otherwise interested in the

9   outcome of this matter.

10

11          Signed this ___ day of _____, 2015.

12

13

14          _____

15          MICHEAL A. JOHNSON, RMR, CRR

16          Certified Court Reporter

17          LA Certified Court Reporter #29025

18

19

20

21

22

23

24

25

Confidential - Subject to Further Confidentiality Review

1                    ACKNOWLEDGMENT OF DEPONENT

2

3          I,_____, do hereby

4    certify that I have read the foregoing pages and

5    that the same is a correct transcription of the

6    answers given by me to the questions therein

7    propounded, except for the corrections or changes in

8    form or substance, if any, noted in the attached

9    Errata Sheet.

10

11          _____

12          JIANGLIN CAO                    DATE

13

14   Subscribed and sworn to before me this

15   _____ day of _____, 20 _____.

16   My commission expires: _____

17

18   Notary Public

19

20

21

22

23

24

25

1          — — — — — —

2                  ERRATA

           — — — — — —

3

4     PAGE   LINE    CHANGE

5     _____  _____   _____

6     _____  _____   _____

7     _____  _____   _____

8     _____  _____   _____

9     _____  _____   _____

10    _____  _____   _____

11    _____  _____   _____

12    _____  _____   _____

13    _____  _____   _____

14    _____  _____   _____

15    _____  _____   _____

16    _____  _____   _____

17    _____  _____   _____

18    _____  _____   _____

19    _____  _____   _____

20    _____  _____   _____

21    _____  _____   _____

22    _____  _____   _____

23    _____  _____   _____

24    _____  _____   _____

25    _____  _____   _____



## ORRICK

ORRICK, HERRINGTON & SUTCLIFFE LLP
THE ORRICK BUILDING
405 HOWARD STREET
SAN FRANCISCO, CALIFORNIA 94105-2669

tel +1-415-773-5700
fax +1-415-773-5759

WWW.ORRICK.COM

August 19, 2015

Jason M. Wu
(415) 773-5986
jmwu@orrick.com

*VIA E-MAIL*

Kristie Martello
Supervisor of Case management
Golkow Technologies Inc.
production @golkow.com

Re:    Deposition of Jianglin Cao (August 4-5, 2015) - Confidentiality Designations

Dear Ms. Martello:

As counsel for the China National Building Materials Entities, I write to you regarding the deposition of Jianglin Cao held on August 4-5, 2015.

Pursuant to orders from the Court designating select documents in this matter as Highly Confidential (Rec. Doc. Nos. 18836, 19243), the following documents marked as deposition exhibits at the deposition of Jianglin Cao should be designated as Highly Confidential:

- Exhibit 1 - Hogan Lovells Production of Deprivileged Documents

The following excerpts of the deposition transcript of Jianglin Cao should also be designated as Highly Confidential:

- 97:16-110:1

- 119:25-121:16

- 129:1-3

Thank you for your attention to this matter and for your ongoing service on this case.



ORRICK

Kristie Martello
August 19, 2015
Page 2

Sincerely,

Jason M. Wu

cc:     Alan Weinberger - aweinberger@hanrylaw.com
        Harry Rosenberg - harry.rosenberg@phelps.com
        C. Michael Moore - mike.moore@dentons.com
        Gene R. Besen - gene.besen@dentons.com
        Richard L. Fenton - richard.fenton@dentons.com
        Leah R. Bruno - leah.bruno@dentons.com
        Michael H. Barr - michael.barr@dentons.com
        Justin N. Kattan - justin.kattan@dentons.com
        Bernard Taylor - bernard.taylor@alston.com
        Christina H. Eikhoff - christy.eikhoff@alston.com
        David Venderbush - david.venderbush@alston.com
        Michael P. Kenny - mike.kenny@alston.com
        Russ M. Herman - rherman@hhkc.com
        Sandra L. Duggan - sduggan@lfsblaw.com
        Frederick S. Longer - flonger@lfsblaw.com
        Arnold Levin - alevin@lfsblaw.com
        Leonard A. Davis - ldavis@hhklawfirm.com

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309-3424

404-881-7000
Fax: 404-253-8869
www.alston.com

Bernard Taylor, Sr.                         Direct Dial: 404-881-7288                         Email: bernard.taylor@alston.com

September 11, 2015

VIA EMAIL

Kristie Martello
Supervisor of Case Management
Golkow Technologies Inc.
production@golkow.com

Re:     Deposition of Cao Jianglin – Confidentiality Designations

Dear Ms. Martello,

        As counsel for Taishan Gypsum Co. Ltd. and Tai'an Taishan Plasterboard Co.,
Ltd. ("Taishan"), I write to you regarding the deposition of Cao Jianglin in the Chinese
Drywall MDL (2:09-md-2047) in the Eastern District of Louisiana, which was conducted
in New Orleans from August 4 through August 5, 2015.

        Pursuant to the Court's pre-trial order on confidentiality (PTO 16), Taishan
submits the following confidentiality designations for the Deposition Transcript of Cao
Jianglin ("Cao Deposition").

        The following sections of the Cao Deposition and Exhibits are designated as
Highly Confidential and are to be redacted, as they discuss matters that are subject to an
Order from the Court designating them as such:

- Cao Deposition 97:15 through 98:21.

- Cao Deposition 119:22 through 121:16.

- Cao Deposition 129:1-3.

- Exhibit 1, including, but not limited to, the following specifically-referenced
  Bates Numbers:

    o Exhibit 1 (HL_26)

    o Exhibit 1 (HL_26a)

    o Exhibit 1 (HL_261)

---

Atlanta • Brussels • Charlotte • Dallas • Los Angeles • New York • Research Triangle • Silicon Valley • Washington, D C

September 11, 2015
Page 2

    o Exhibit 1 (HL_261a)

   • Any other attached Exhibit with Bates Number beginning with "HL"

   Please feel free to contact me if you have any questions regarding these confidentiality designations.

   Thank you for your dedicated work in preparing these transcripts.

        Sincerely,

        ALSTON & BIRD LLP

        Bernard Taylor, Sr.

cc:
Russ M. Herman, Esq.
Herman, Herman & Katz, LLC
820 O'Keefe Ave.
New Orleans, LA  70113
RHERMAN@hhklawfirm.com

Arnold Levin, Esq.
Levin, Fishbein, Sedran & Berman
510 Walnut St, Ste 500
Philadelphia, PA 19106
ALevin@LFSBLaw.com